IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

_____  )
                                     )
THE UNITED STATES OF AMERICA,        )
                                     )
            *Plaintiff*,             )
                                     )
      v.                             )   Case No. 2:13-CV-00193
                                     )
STATE OF TEXAS and JOHN STEEN,       )
in his official capacity as Secretary of State, )
STEVE MCCRAW, in his official capacity )
as Director of the Texas Department of Public )
Safety,                              )
            *Defendants*.            )
_____  )

**MOTION FOR INTERVENTION OF TRUE THE VOTE
AND MEMORANDUM IN SUPPORT**

True the Vote ("Proposed Intervener") respectfully moves this Court for leave to intervene pursuant to Federal Rule of Civil Procedure 24(a) and (b).[1] As grounds therefore, Proposed Intervener states as follows:

**I.    INTRODUCTION.**

In this case, Plaintiff asks the Court to enjoin the State of Texas from continuing to enforce Senate Bill 14, the state's requirement that registered voters establish they are who they say they are before they cast a ballot by means of a variety of state approved identification documents. Plaintiff seeks this relief on the grounds that the requirement that

---

[1]     A proposed Answer in Intervention is attached hereto as Exhibit 1.

1

voters establish identity through various documents violates Section 2 of the Voting Rights Act (42 U.S.C. § 1973), Section 12(d) of the Voting Rights Act, and violates rights contained in the Fourteenth Amendment and Fifteenth Amendment.

Proposed Intervener respectfully submits that Plaintiff is wrong and that Plaintiff lacks standing to assert any constitutional claims. Plaintiff also notably seeks to re-impose federal mandates on the entire state of Texas which the Supreme Court recently invalidated as unconstitutional in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013) under Section 3 of the Voting Rights Act.

Again, the Plaintiff is attempting to obtain a remedy which this Court does not have the jurisdiction to grant. This Court does not have the authority to impose statewide mandates on Texas to submit all future state, county and local election law changes to the Plaintiff for approval under Section 3 of the Voting Rights Act. Even if this Court were to agree that SB 14 violates federal law or is unconstitutional, this Court lacks power to impose new preclearance requirements on Texas that are permanent, affect counties and local governments, and most of all, are wholly unrelated to SB 14. It is undisputed that this Court may impose preclearance mandates on Defendants for any future voting change relating to voter identification documents, if liability is found, but not for all future Texas election law changes, and certainly not for all voting changes made by the thousands of sub-jurisdictions across Texas.

Proposed Intervener seeks to enter this lawsuit in order to demonstrate that SB 14 is consistent with federal law, and that any scheme to recapture Texas under the preclearance provisions of the Voting Rights Act must be weighed by this Court, sitting

as a court in equity, against the Plaintiff's history of court sanctions and abusive conduct in the preclearance process over the last two decades.  Proposed Intervener has a long history of publically defending SB 14 and played a significant role in the passage of the statute.  Intervention will ensure that the organizational interests and interests of the members and volunteers of True the Vote are adequately protected and preserved.

## II.   BACKGROUND.

Plaintiff filed its Complaint on August 22, 2013.  In its Complaint, Plaintiff alleges that the defendants are violating various federal statutes and asks this Court to declare that Texas enacted the voter identification requirement of SB 14 because Texas elected officials sought to discriminate against black and Hispanics.  Plaintiff asks this Court to declare that SB 14 violates the Fourteenth and Fifteenth Amendment, and provisions of the Voting Rights Act.  Plaintiff has asked this Court, as a remedy, to give Plaintiff the power to approve or reject all voting changes in Texas.

## III.   PROPOSED INTERVENER TRUE THE VOTE

True the Vote is a non-profit organization organized and headquartered in Houston, Texas, that seeks to restore truth, faith, and integrity to local, state, and federal elections.  True the Vote seeks to intervene in this action in its individual, organizational capacity.

As an integral part of its public interest mission to ensure the integrity of the nation's electoral system,[2] Proposed Intervener True the Vote conducts a wide variety of

---

[2] *See* True the Vote Mission Statement, available at http://truethevote.org/about/.

3

activities to promote election integrity in Texas. It trains poll watchers who monitor elections for compliance with state and federal law. The monitors also identify and catalog possible instances of voting irregularities or fraud in the polling place, including potential voter impersonation or failure of election officials to verify the identity of voters. True the Vote also obtains and examines official lists of eligible voters and other voter registration data from states, counties, and localities across the United States, including the State of Texas, to carry out its various programs. As part of this program, True the Vote has identified significant numbers of ineligible voters who have been registered to vote in Texas. These include registered voters who profess on voter registration forms obtained by True the Vote *not to be United States citizens*.[3]

True the Vote also trains volunteers to review official lists of eligible voters and voter registration data and to compare these lists and data to other publically available data to identify possible inaccuracies and deficiencies. Registrations that appear to be duplicates or registrations of persons who are deceased, have relocated, or otherwise are ineligible to vote in a particular jurisdiction are flagged and citizen complaints are filed with the appropriate elections officials. This particular program is an integral part of True the Vote's public interest mission. The program has demonstrated that vast numbers of improper voter registrations remain on rolls across Texas, including voters who have died. This circumstance supports the need for SB 14.

---

[3] These improper registrations by non-citizens constitute criminal violations of federal law. True the Vote has brought some of these false registrations to the attention of the Plaintiff, yet Plaintiff has seemingly taken no action.

4

If Texas is prevented from validating the identity of voters attempting to vote, then the significant efforts to ensure that only eligible voters are participating in Texas elections is impaired.

True the Vote has made multiple criminal referrals to law enforcement agencies about ineligible voters who have appeared to register to vote, or have actually voted, including referrals to the Plaintiff. Rooting out and aiding the prosecution of election fraud is a core mission of True the Vote.

Failure to require photo identification impairs the ability of prosecutors to prosecute these voter fraud cases. In states without photo identification requirements, the accused can simply claim the person who voted under their name was not them. In states *with* photo identification requirements, the prosecutor can inform the fact-finder of the state's photo identification requirement, thus effectively foreclosing a defendant's false defense that the actual person who engaged in illegal conduct was someone else. A photo identification law deters voter fraud, but also helps prosecutors obtain convictions when it occurs.

If successful, Plaintiff's attempt to invalidate SB 14 will impair the ability of True the Vote to carry out its public interest mission of promoting election integrity in Texas.

## IV.     **MATTER OF RIGHT**

To intervene of right under Rule 24(a)(2), an applicant must meet the following requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the

5

> disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir.) (en banc) (*quoting International Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir. 1978)), *cert. denied*, 469 U.S. 1019, 105 S. Ct. 434, 83 L. Ed. 2d 360 (1984). Failure to satisfy any one requirement precludes intervention of right. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994); *Kneeland v. NCAA*, 806 F.2d 1285, 1287 (5th Cir.), *cert. denied*, 484 U.S. 817, 108 S. Ct. 72, 98 L. Ed. 2d 35 (1987). Proposed Interveners easily meet these criteria. Nonetheless, "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application…. [and] intervention of right must be measured by a practical rather than technical yardstick." *Texas E. Transmission Corp.*, 923 F.2d at 413 (*quoting United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 841 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 944, 96 S. Ct. 1684, 1684, 48 L. Ed. 2d 187, 187 (1976)). Allowing parties to intervene serves the interests of judicial efficiency, since intervention allows courts to resolve related disputes in a single action. *See Stallworth v. Monsanto Co.,* 558 F.2d 257, 265 (5th Cir. 1997).

### A.  Intervention is Timely.

Plaintiff filed its Complaint on August 22, 2013.  This motion to intervene is being submitted a mere month after Plaintiff initiated this action.  Accordingly, there is no delay and hence no prejudice to the existing parties.  *Stallworth*, 558 F.2d at 262.

(intervention request filed after one month was timely); *In re Babcock & Wilcox.*, 2001 U.S. Dist. LEXIS 23378 (E.D. La.) (five month delay not untimely); *Poynor v. Chesapeake Energy Ltd. P'ship (In re Lease Oil Antitrust Litig.)*, 570 F.3d 244, (5th Cir. Tex. 2009) (two year delay not untimely). However, Proposed Intervener *would* be prejudiced if it is not allowed to intervene, as they would be left without a reasonable opportunity to protect their interests. *Stallworth*, 558 F.2d at 264-65.

    **B.**  **Proposed Interveners Have a Direct and Protectable Interest.**

  If Texas is unable to verify the identity of proposed voters and if Texas and all sub-jurisdictions within Texas are forced to seek Plaintiff's approval before making any changes to laws affecting elections, True the Vote's members' and volunteers' confidence in the integrity of the election process will be undermined. Moreover, True the Vote's attempts to ensure that only eligible voters are casting ballots in Texas will be impaired.

  The organizational injury True the Vote may suffer is direct and protectable. An independent basis for organizational standing exists when a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals. *See generally Voting for Am., Inc. v. Andrade,* 888 F. Supp. 2d 816, 2012 U.S. Dist. LEXIS 108303, 2012 WL 3155566 (S.D. Tex. 2012) Furthermore, an organization has standing to sue on its own behalf if it "suffered an injury in fact" that was "fairly . . . trace[able] to the challenged action." *Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298 (5th Cir. 2000), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Thus, True the Vote will show that the enjoining of Texas to stop the enforcement of

SB14 will be an injury-in-fact, that that injury will be caused by Plaintiff, and that the requested relief will redress that injury. *See Lujan*, 504 U.S. at 560; *Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241 (5th Cir. 1994). The challenged acts will "frustrate and hamper" its ability to engage in its mission. *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, (S.D. Tex. 2012), *citing Havens v. Coleman*, 455 US 363, 379 (1982) (illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts), and those acts will be a "drain on [True the Votes] resources." *Cleburne Living Ctr. v. Cleburne*, 726 F.2d 191, 204 (5th Cir. Tex. 1984).

True the Vote may intervene on behalf of its members and volunteers to protect their interest in election integrity and to combat vote dilution because such an action is core to True the Vote's public interest mission. *Havens,* 455 U.S. at 379. As the Carter-Baker Report observed, the "'electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters.'" *Crawford, v. Marion County Election Bd.*, 553 U.S. 181, 197 (2008).

Furthermore, True the Vote's members and volunteers also have a direct and protectable interest in ensuring their votes are not diluted as a result of Plaintiff's actions. Vote dilution as "directly related to voting, the most basic of political rights, is sufficiently concrete and specific." *FEC v. Akins,* 524 U.S. 11, 25 (1998). That injury is both provable and traceable to the Plaintiff's actions.

### C. The Disposition in This Case Will Directly Affect Proposed Intervener

As described above in Sections III and IV.B., an unfavorable disposition in this action will directly harm True the Vote. An adverse Court ruling, either in the liability or the remedial phase of this case, will have a direct impact on True the Vote, and Proposed Intervener therefore has a "direct, substantial and legally protected interest" in the subject matter of this litigation. *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 452 (5th Cir. La. 1984).

### D. Adequacy of Representation.

The burden under this prong has been described as "minimal," as a party seeking to intervene needs to show only that representation of his interest may be inadequate. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972). Defendants' representation is inadequate to protect Proposed Intervener's interest for two reasons. First, in the previous case concerning SB 14, *Tex. v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012), Plaintiff conducted discovery about True the Vote's political and legislative activities, ostensibly to demonstrate that SB 14 was enacted by the Texas Legislature with an impermissible intent. Second, the Defendants do not possess the wellspring of data about improper voter registrations throughout Texas and other irregularities in the conduct of elections across Texas.

During litigation in the United States District Court for the District of Columbia regarding SB 14, Plaintiffs engaged in intrusive discovery regarding True the Vote's constitutionally protected political speech and legislative activities, particularly

9

pertaining to the enactment of SB 14. In that case, the United States pried into the Proposed Intervener's First Amendment rights of free association, rights to petition for redress and rights of political speech throughout depositions. This probe extended even to discussions between True the Vote members and Texas legislators. No objections were made to these inquiries by the Defendants in this case (who were also Plaintiffs in *Tex. v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012), the Section 5 case Texas initiated to obtain preclearance of SB14). Plaintiff's inquiries in the previous case were likely made because Plaintiff improperly considered constitutionally protected activities by True the Vote to be relevant to Plaintiff's allegation that SB 14 was enacted with a racially discriminatory purpose. Plaintiff has again made the allegation that SB 14 was enacted with a racially discriminatory purpose, and True the Vote's interest in defending its constitutionally protected activities, and rebutting Plaintiff's possible false inferences as to the intent of SB 14 may again be inadequately represented by the Defendant.

Second, in this case, Texas does not possess the wellspring of data which True the Vote has accumulated about ineligible voter registrations on the rolls in Texas and how these statewide problems with voter registrations provided a motivation for enactment of SB 14 other than the racially infused motivation Plaintiff alleges.[4] Indeed, Texas introduced no evidence in the previous case demonstrating that voter rolls in Texas are infested with ineligible, dead and duplicate voters. This is understandable, and cleanly

---

[4] In fact, the District Court in the District of Columbia placed essentially no weight whatsoever on data offered by Texas relating to other matters at issue. *See Tex. v. Holder*, 888 F. Supp. 2d 113, 127-129, (D.D.C. 2012), disregarding all expert statistical data by Texas. No data was offered by Texas regarding corrupted voter rolls or data about election irregularities derived from True the Vote election monitoring in the previous case.

demonstrates the inadequacy of Defendant's representation in the case before this Court. Naturally, Defendants are severely impaired in their ability to assert defenses regarding corrupted voter rolls, if not foreclosed, because doing so may constitute admissions that Defendants, or counties within Texas, are failing to comply with Section 8 of the National Voter Registration Act (42 U.S.C. § 1973gg-6).  If significant problems exist with voter registration rolls in Texas, Defendants are unlikely to say so because the Plaintiff has the power to sue Texas for failure to conduct adequate list maintenance. Nevertheless, inadequately maintained voter rolls provide a key purpose for enactment of SB 14 and the citizens of Texas have no advocate positioned to provide this Court with the data relating to faulty election administration True the Vote has accumulated, faulty administration that SB 14 would mitigate.

Moreover, Defendants cannot adequately represent the many local governments and interests which would be affected by an overbroad reading of Section 3 of the Voting Rights Act by this Court. The Plaintiff seeks to capture every single entity in the State of Texas for renewed preclearance obligations for every conceivable election law change, not just the voter identification requirements of SB 14. Renewed preclearance obligations would impose enormous costs on entities inadequately represented by the Defendants. Moreover, the damage to federalism by such an overbroad reading of Section 3 would not stop merely at the damage done to Defendants, but would extend across the state. Plaintiff's previous exercise of preclearance powers over these smaller governmental entities in Texas has been abusive and far beyond the scope of federal law. Proposed Intervener has a broad membership and volunteer base comprised of taxpayers

from these local governmental units which currently have no interests represented in this case. True the Vote represents the interests of volunteers and members in small communities in Texas who do not wish the outcome of this case to reassert federal power over all local election matters, a position the Defendants inadequately represent as statewide officials.

## V. IN THE ALTERNATIVE, PERMISSIVE INTERVENTION SHOULD BE GRANTED.

Fed. R. Civ. P. 24(b)(1) governs permissive intervention and provides:

> On timely motion, the Court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

As the Fifth Circuit has declared that permissive intervention under Fed. R. Civ. Proc. 24(b) requires a consideration of "whether the intervenors' interests are adequately represented by other parties" and whether they "will significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, (5th Cir. La. 1984). As demonstrated above, this test is satisfied here.

Rule 24(b)(3) also requires the Court to consider whether permissive intervention will cause undue delay or prejudice the adjudication of the rights of the existing parties. As described above, in this instance no prejudice or delay will result from intervention. Proposed Interveners intend to comply with the schedule already in place in this matter, and their participation will not affect the scheduling of this case in any way. Thus, at a

minimum, Proposed Interveners respectfully request that they be granted permissive intervention.

This is a cause of action and a remedy which the United States has no standing to seek. Constitutional violations must be redressed by aggrieved individuals, not the Voting Section of the Department of Justice.

## VII.  CONCLUSION.

For the forgoing reasons, Proposed Intervener respectfully requests that this Court grant them leave to intervene in this action.

Dated:  September 25, 2013               Respectfully submitted,


/s/ Joseph M. Nixon_____
Joseph M. Nixon – attorney-in-charge
State Bar No. 15244899
James E. ("Trey") Trainor, III
State Bar No. 24042052
**BEIRNE, MAYNARD & PARSONS, L.L.P.**
1300 Post Oak Boulevard, Suite 2500
Houston, TX 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527
Email: jnixon@bmpllp.com

J. Christian Adams
South Carolina Bar No. 7136
**ELECTION LAW CENTER, PLLC**
300 N. Washington Street
Suite 405
Alexandria, Virginia 22314
Telephone: (703) 963-8611
Email: adams@electionlawcenter.com
(*Pro Hac Vice application to be filed*)

## CERTIFICATE OF SERVICE

      I hereby certify that I did serve a copy of this Motion for Intervention of True the Vote and Memorandum in Support on all counsel who have made appearance in this case and consented to service by electronic means through the Electronic Case Filing system on this 25th day of September 2013.

                                            /s/ Joseph M. Nixon_____
                                            Joseph M. Nixon

1857269v.3 IMANAGE 106763