IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>RICK PERRY, *et al.*,<br><br>        Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*,<br><br>        Plaintiff-Intervenors,<br><br>TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*,<br><br>        Movant-Intervenors,<br><br>    v.<br><br>STATE OF TEXAS, *et al.*,<br><br>        Defendants,<br><br>TRUE THE VOTE,<br><br>        Movant-Intervenor. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*,

        Plaintiffs,

v.

JOHN STEEN, *et al.*,

        Defendants.

Civil Action No. 2:13-cv-291 (NGR)

**UNITED STATES' OPPOSITION TO TRUE THE VOTE'S MOTION TO INTERVENE**

    The United States respectfully files this response opposing True the Vote's motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or to be granted permissive intervention under Rule 24(b)(1). True the Vote is not entitled to intervention as of right under Rule 24(a)(2) because it has failed to establish that it has a direct, substantial, and legally protectable interest that would be impeded or impaired by this action, and because even if it had such an interest, it has failed to show that the State would not adequately represent that interest. This Court should also exercise its discretion under Rule 24(b)(1) to deny permissive intervention to avoid the irrelevant and collateral issues True the Vote intends to pursue. Any interests True the Vote has in this litigation may be fully addressed through *amicus* participation.

    **I.**    **Background**

    The United States filed this action alleging that the State of Texas's photographic voter identification law, Senate Bill 14 (2011) ("SB 14"), violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973c, because it was enacted for the purpose, and has the result, of denying or abridging equal opportunities for Hispanic and African-American voters to participate in the political process. Compl. ¶¶ 67-70, PFR 1-PFR 3 (U.S. ECF No. 1). *See id.* ¶¶ 68-69. As a prophylactic remedy, the United States also requests that this Court retain jurisdiction and

1

subject Texas to coverage under Section 3 of the Voting Rights Act, 42 U.S.C. § 1973a. *See* Compl. ¶¶ 64-65, PFR 5.

Although the United States commenced this litigation little more than two months ago, administrative and judicial proceedings addressing whether SB 14 complies with the Voting Rights Act have been ongoing since July 25, 2011, culminating in the following findings by a three-judge court of the United States District Court for the District of Columbia: "(1) a substantial subgroup of Texas voters, many of whom are African American or Hispanic, lack photo ID; (2) the burdens associated with obtaining ID will weigh most heavily on the poor; and (3) racial minorities in Texas are disproportionately likely to live in poverty." *Texas v. Holder*, 888 F. Supp. 2d 113, 138 (D.D.C. 2012) (three-judge court), *vacated*, 133 S. Ct. 2886 (2013). Based on these findings, the Court concluded that SB 14 would violate Section 5 of the Voting Rights Act "because it would in fact have a retrogressive effect on Hispanic and African American voters." *Ibid*.

Although True the Vote did not participate in the Section 5 declaratory judgment action, it now seeks to intervene in the instant case and asserts a panoply of alleged interests in support of its request. As explained below, not only do none of these professed interests support intervention, they weigh heavily against it.

## II. Intervention as of right

### A. Legal standard

True the Vote may intervene as of right only if it meets the four prerequisites under Federal Rule of Civil Procedure 24(a)(2):

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a

>practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* ("*NOPSI*"), 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). The failure to satisfy even one of the four prerequisites precludes intervention as of right under Rule 24(a)(2). *Haspel & Davis Milling & Planting Co.*, 493 F.3d at 578. The party seeking to intervene bears the burden of proving each of these requirements. *Kneeland v. National Collegiate Athletic Assoc.*, 806 F.2d 1285, 1287 (5th Cir. 1987).

### B. True the Vote has not established that it may intervene as of right under Rule 24(a)(2)

True the Vote has failed to meet three of the four prerequisites imposed by Rule 24(a)(2), and therefore, is not entitled to intervention as of right. *See United States v. Florida*, No. 4:12-cv-285, Slip Op. at 3-4 (N.D. Fla. Nov. 6, 2012) (ECF No. 49) (Ex. 1) (holding that "True the Vote plainly [was] not entitled to intervene as of right" in the United States' lawsuit against the State of Florida for violations of the National Voter Registration Act; concluding that True the Vote failed to establish a sufficient interest in the case or to prove inadequacy of representation by Florida).

#### 1. True the Vote fails to assert the legal interest necessary to intervene as of right

True the Vote cannot satisfy either the second or third prerequisite for intervention under Rule 24(a)(2) because it has not shown that it has a "direct, substantial, legally protectable interest" in the action, *NOPSI*, 732 F.2d at 464, that may be impaired or impeded by the lawsuit. Although it claims an organizational interest in the outcome of this litigation, True the Vote fails to identify any specific organizational injury that it might suffer in the event this Court

3

determines that SB 14 violates federal law.[1] Mot. to Intervene at 7-8. Rather than proving an organizational injury, True the Vote simply makes vague and unsupported allegations that invalidation of SB 14 would frustrate and hamper its mission and drain its resources. It offers no factual support whatsoever for these bald assertions.

In addition, the alleged interests that True the Vote purports to raise on behalf of its funders and volunteers also fail to satisfy the requirements for intervention as of right. A voter's subjective confidence in the integrity of elections is not a sufficient basis for intervention as of right, both because it is a generalized interest that can be asserted by any voter, and because no voter can suffer a concrete and particularized injury resulting from it. *See United States v. Florida*, No. 4:12-cv-285, Slip Op. at 3-4 (N.D. Fla. Nov. 6, 2012) (ECF No. 49) (Ex. 1) (concluding that "confidence in the election process" is an interest shared by every registered voter in the state and that "[g]eneralized interests of this kind plainly do not afford a voter – or an organization with members who are voters – a *right* to intervene under Rule 24(a)")(emphasis in original); *see also Athens Lumber Co., Inc. v. Federal Election Comm.*, 690 F.2d 1364, 1366 (11th Cir. 1982).

Another generalized grievance that True the Vote asserts is that its funders and volunteers have an interest "in ensuring their votes are not diluted as a result" of unlawful voting that might be prevented by enforcement of SB 14. The possibility that illegal voting might be prevented by enforcement of SB 14 is, at best, speculative, but at any rate, a generalized interest in preventing such activity is insufficient to support intervention as of right. *See United States v. Florida*, *supra*, slip op. at 3 (rejecting identical claims by True the Vote and other movants for intervention)*; see also Taylor Commc'ns Grp. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 389 (5th Cir.

---

[1] True the Vote does not appear to assert that its role as a proponent of SB 14 provides a sufficient interest to support intervention of right, and the Supreme Court's recent decision in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), forecloses any such argument.

1999). "Assertions about what might happen do not establish an injury that is concrete and particularized." *Nat'l Alliance for Mentally Ill, St. Johns Inc. v. Bd. of Cnty. Comm'rs*, 376 F.3d 1292, 1295 (11th Cir. 2004) (internal quotation marks omitted).

In addition, True the Vote appears to assert on behalf of its funders and volunteers an interest in this litigation based on their status as taxpayers. *See* Mot. to Intervene at 11-12. It is a basic and longstanding principle that the expenditure of tax revenues on a disputed practice does not confer an interest on an individual taxpayer to challenge that practice. *See, e.g.*, *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442-43 (2011). True the Vote also appears to assert an even broader interest on behalf of its funders and volunteers: the right to litigate on behalf of local government units to which they pay taxes. Counties and municipalities elect governments to prosecute their interests, and unelected taxpayers may not claim to act on behalf of a city or town in which they reside. Therefore, True the Vote's funders and volunteers may not assert possible interests of the municipalities in which they reside to justify intervention as of right in this case.[2]

### 2. Any alleged legally valid interests are adequately represented

The final prerequisite for intervention under Rule 24(a)(2) is to show that the existing parties to the pending suit would not adequately represent the proposed intervenor's interests. "[W]hen the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party

---

[2] Finally, the United States notes that True the Vote cannot assert the interests of its "members," *see, e.g.*, Mot. to Intervene at 7-8, for the simple fact that it has no members. Article 4 of its Certificate of Formation states, "The corporation will not have members." Certificate of Formation, Tex. Sec'y of State Filing 801278527 (June 7, 2010) (Ex. 2). A Texas non-profit corporation may not declare funders to be members without meeting specific statutory requirements; True the Vote has failed to do so. *See* Tex. Bus. Orgs. Code §§ 3.009(1)-(2), 22.151(b), 22.153. True the Vote also does not demonstrate the "indicia of membership" that permit an organization without technical members to assert interests on behalf of associated third parties. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 345 (1977). Its funders do not elect its leadership and play no role in the organization's leadership. Rather, True the Vote's bylaws state that "the directors shall elect directors." Bylaws of KSP/True the Vote, art. II, § 2 (July 26, 2010) (Ex. 3).

demonstrates adversity of interest, collusion, or nonfeasance." *Kneeland,* 806 F.2d at 1288. The ultimate objective is limited to the outcome of the litigation, rather than the resolution of broader principles. *See Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007). The proposed intervenor bears the burden of proving inadequacy of representation. Moreover, every circuit to consider the question has held that a proposed intervenor must make an exacting showing of inadequacy when it shares the same objective as a government party. *Stuart v. Huff*, 706 F.3d 345, 351-52 (4th Cir. 2013); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *Daggett v. Comm'n on Governmental Ethics & Election Practices,* 172 F.3d 104, 111 (1st Cir. 1999); *Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982).

Even if True the Vote had established direct, substantial, and legally protectable interests, intervention as of right is not warranted because the State of Texas more than adequately represents any such interest. The position of the State of Texas and True the Vote regarding the defense of SB 14 and the need for Section 3 relief are essentially identical. In addition, the record from the Section 5 declaratory judgment action concerning this very same legislation has demonstrated that Texas has vigorously defended SB 14. The State's recent motion to dismiss the complaints challenging SB 14 filed in this case (ECF No. 52), including the United States' complaint, demonstrates that the State intends to continue to mount a vigorous defense in the instant action.

Moreover, True the Vote has not demonstrated and cannot demonstrate adversity of interest between itself and the State. True the Vote asserts that Texas made "[n]o objections" to inquiries in discovery regarding True the Vote's support for SB 14. Mot. to Intervene at 10. To the contrary, Texas vigorously objected to such questioning, and vigorously litigated in defense

6

of its claims of privilege regarding constituent communications, such as those with True the Vote in the Section 5 trial over SB 14.[3] Separate and apart from those facts, True the Vote need not be allowed to participate now to interpose objections to discovery requests that have not been served, but which it believes might be served in the future in this litigation.[4] Similarly, True the Vote suggests that Texas is "unlikely" to admit the presence of ineligible individuals on its voter rolls. Mot. to Intervene at 11. However, Texas did, in fact, make precisely such concessions regarding the presence of ineligible persons on its voter list during the Section 5 trial over SB 14.[5]

In addition, True the Vote argues that Texas cannot adequately represent the interests of local governments in avoiding the imposition of bail-in relief under Section 3. Mot. to Intervene at 11. Beyond the fact that True the Vote cannot represent the interests of local governments, *supra* at 5, there is every reason to believe that Texas will vigorously challenge the imposition of Section 3 relief at the remedy stage irrespective of the requested scope. Texas forcefully challenged the constitutionality of the preclearance requirement in the earlier Section 5 case over SB 14, participated as amicus in the *Shelby County* case challenging the constitutionality of

---

[3] *See, e.g.*, Deposition of Colby Beuck at 246:9-18 (May 14, 2012) (Ex. 4); Deposition of Patricia Harless at 186:19-187:4 (May 15, 2012) (Ex. 5). *See* Order, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. May 17, 2012) (three-judge court) (ECF No. 122) (Ex. 6). We note that no officer or director of True the Vote was deposed in the Section 5 litigation over SB 14.

[4] If any party seeks third-party discovery concerning communications by True the Vote's donors or volunteers, those individuals may seek to quash the relevant subpoenas. *See, e.g.*, Fed. R. Civ. P. 45(d)(3); *Phillips v. Automated Tel. Mgmt. Sys., Inc.*, 160 F.R.D. 561, 562 (N.D. Tex. 1994). If the parties seek discovery from the State that concerns communications with True the Vote, it may seek to intervene at that time and for the limited purpose of opposing such discovery. *See In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979).

[5] One of the State's two experts submitted a report that claimed that there are at least 57,718 deceased persons in the Texas voter registration database and acknowledged that the database contained at least 6,950 duplicate records. *See* Supplemental Expert Declaration of Thomas Sager at 2, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. June 11, 2012) (Ex. 7). *See also, e.g.*, Trial Tr. at 39:3-10 (July 13, 2012) (Ex. 8) (conceding the presence of "over 50,000 dead people" in Texas's voter registration database).

Section 5, and is presently vigorously resisting the imposition of a preclearance remedy under Section 3 of the Voting Rights Act in another court in Texas.[6]

Finally, True the Vote has not alleged, and certainly cannot demonstrate any collusion between the United States and the State in this matter. The parties' vigorous advocacy, both in the Section 5 declaratory judgment action as well as in this case, makes clear that any suggestion of collusion would be unfounded.

### III. Permissive intervention

#### A. Legal standard

The Court may grant permissive intervention on a timely motion to a party with a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention "'is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.'" *NOPSI*, 732 F.2d at 470-71 (quoting 7C Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1913) (alteration in original)). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). It is also proper to consider "whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit." *NOPSI*, 732 F.2d at 472 (internal quotation marks and citations omitted).

---

[6] *See* ECF 347 in *Texas v. Holder* (D.D.C.) (summary judgment motion by Texas challenging the constitutionality of the preclearance requirement of Section 5 of the Voting Rights act) (available at http://moritzlaw.osu.edu/electionlaw/litigation/documents/PlaintiffsMotionforSummaryJudgment_001.pdf); Amicus Brief of Texas in *Shelby County v. Holder* (S.Ct.) (amicus brief by Texas challenging the constitutionality of Section 5) (available at http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs-v2/12-96_pet_amcu_texas.pdf) and ECF 842 in *Perez v. Perry* (W.D. Tex.) (brief by Texas opposing the imposition of preclearance relief under Section 3 of the Voting Rights Act in Texas) (available at http://moritzlaw.osu.edu/electionlaw/litigation/documents/PerezDfdntsResp2PlntffsUSSec3.pdf).

## B.     <u>True the Vote has not established that permissive intervention is appropriate</u>

True the Vote's participation will prevent the efficient resolution of this case. For this reason, the Court should exercise its discretion to deny its motion for permissive intervention.

As set forth in True the Vote's motion to intervene, it seeks to participate to interpose objections to discovery requests that have not been served, but which it believes might be served (Mot. to Intervene at 9-10), to present information that it concedes has already been presented to both the United States and to the State of Texas, *id.* at 4 n.3, 5, 10 n.4, and to assert, among other non-germane allegations, that the United States has a "history of court sanctions and abusive conduct in the preclearance process," which is irrelevant to the Section 2 liability claims at issue.[7] *Id.* at 2-3. True the Vote's avowed intentions with respect to this litigation will needlessly expand the scope of discovery and related disputes and will delay timely resolution of this action. Moreover, as demonstrated during the Section 5 declaratory judgment action over SB 14, there is no evidence that the State of Texas will not vigorously present defenses to the Voting Rights Act claims at issue before this Court.

What True the Vote seeks would be a burdensome distraction from the merits of this case. Its participation would not contribute to development of a full and complete factual record necessary to support this Court's decision. To the contrary, it would divert the Court's attention to issues concerning True the Vote's numerous allegations of purported voter registration irregularities. Thus, True the Vote stands in stark contrast to the existing intervenors in this litigation, who provide a distinct local perspective and may also have access to relevant information not already in the possession of both plaintiff and defendants.

---

[7] Although these allegations are legally irrelevant and therefore outside the scope of this motion, the United States' response should in no way be interpreted as conceding True the Vote's characterizations.

9

### IV. The Court need not exclude True the Vote from all participation

Although the United States believes that True the Vote has not established the prerequisites to warrant intervention as of right and that permissive intervention is not appropriate, the Court, in its discretion, may allow interested parties or organizations to file briefs as *amicus curiae* at an appropriate point in the proceedings. Conversely, if the Court does grant intervention, the United States respectfully requests that it impose express conditions on True the Vote's participation in order to prevent it from delaying adjudication or unnecessarily burdening the existing parties. District courts may impose nearly any condition on a party permitted to intervene. *See* Fed. R. Civ. P. 24 Advisory Committee Note (1966) ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."); *Beauregard, Inc. v. Sword Services LLC*, 107 F.3d 351, 353 & n.2 (5th Cir. 1997) ("reasonable conditions may be imposed even upon one who intervenes as of right" and "virtually any condition may be attached to a grant of permissive intervention"). It is within this Court's discretion to foreclose litigation of irrelevant issues, and the United States respectfully requests that, if this Court were to grant intervention, it bar True the Vote from litigating irrelevant or extraneous issues as a condition of that intervention.

### V. Conclusion

For the reasons set out above, this Court should deny True the Vote's motion to intervene. The United States does not object to it being permitted to participate as *amicus* in this case. Pursuant to Local Rule 7.4, a proposed order denying the motion is attached hereto.

Date: October 30, 2013

<table>
<tr><td>

KENNETH MAGIDSON
United States Attorney
Southern District of Texas


JOHN A. SMITH III
Assistant United States Attorney
800 N. Shoreline, Suite 500
Corpus Christi, Texas 78401
(361) 903-7926

</td><td>

Respectfully submitted,

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

</td></tr>
</table>

11

## CERTIFICATE OF SERVICE

   I hereby certify that on October 30, 2013, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

John B. Scott
Office of the Texas Attorney General
john.scott@texasattorneygeneral.gov

*Counsel for Defendants*

Chad W. Dunn
Kembel Scott Brazil
Brazil & Dunn
chad@bradzilanddunn.com
scott@bazilanddunn.com

Neil G. Baron
Law Offices of Neil G. Baron
neil@ngbaronlaw.com

Armand Derfner
Derfner, Altman, & Wilborn
aderfner@dawlaw.com

Luiz Roberto Vera, Jr.
lrvlaw@sbcglobal.net

*Counsel for Veasey Plaintiffs*

Christina Swarns
Ryan P. Haygood
Natasha M. Korgaonkar
Leah C. Aden
NAACP Legal Defense and Educational
 Fund, Inc.
cswarns@naacpldf.org
rhaygood@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
WilmerHale LLP
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com

*Counsel for Texas League of Young Voters Plaintiff-Intervenors*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
ezra.rosenberg@dechert.com
amy.rudd@dechert.com

Wendy Weiser
Jennifer Clark
Vishal Agraharkar
Brennan Center for Justice at NYU School of
   Law
wendy.weiser@nyu.edu
jenniferl.clark@nyu.edu
vishal.argraharkar@nyu.edu

Mark A. Posner
Sonia Kaur Gill
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
sgill@lawyerscommittee.org

*Counsel for Texas State Conference of NAACP Branches Plaintiffs*

Joseph M. Nixon
Bierne, Maynard, & Parsons
jnixon@bmpllp.com

*Counsel for True the Vote Movant-Intervenor*

Rolando L. Rios
Law Offices of Rolando L. Rios
rrios@rolandorioslaw.com

*Counsel for Texas Association of Hispanic County Judges and County Commissioners Movant-Intervenor*

*/s/ Jennifer L. Maranzano*
JENNIFER L. MARANZANO
Voting Section
Civil Rights Division
Department of Justice
Jennifer.maranzano@usdoj.gov