# EXHIBIT B

Home » Agencies » Civil Rights Division » About » Voting

Civil Rights Division Home
About the Division
- Appellate
- Criminal
- Disability Rights
- Education
- Employment
- Federal Coordination and Compliance
- Housing and Civil Enforcement
- Office of Special Counsel for Immigration-Related Unfair Employment Practices
- Policy and Strategy
- Special Litigation
- Voting
  - Statutes We Enforce
  - Recent Activity
  - History of Voting Rights Laws
  - Policy and Guidance
  - Cases
How to File a Complaint
Press Room
Cases and Matters
Publications
Employment Opportunities
Civil Rights FOIA
Contact the Division

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General*    Washington, DC 20530

March 5, 2012

James E. Trainor III, Esq.
Beirne, Maynard & Parsons
401 West 15th Street, Suite 845
Austin, Texas 78701

Dear Mr. Trainor:

    This refers to the 2011 redistricting plan for the commissioners court, the reduction in the number of justices of the peace from nine to five and the number of constables from eight to five, and the 2011 redistricting plan for the justices of the peace/constable precincts for Galveston County, Texas, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c. We received your response to our December 19, 2011, request for additional information on January 4, 2012; additional information was received on February 6, 2012.

    We have carefully considered the information you have provided, as well as census data, comments and information from other interested parties, and other information, including the county's previous submissions. Under Section 5, the Attorney General must determine whether the submitting authority has met its burden of showing that the proposed changes have neither the purpose nor the effect of denying or abridging the right to vote on account of race or color or membership in a language minority group. *Georgia* v. *United States*, 411 U.S. 526 (1973); *Procedures for the Administration of Section 5 of the Voting Rights Act of 1965*, 28 C.F.R. 51.52(c). For the reasons discussed below, I cannot conclude that the county's burden under Section 5 has been sustained as to the submitted changes. Therefore, on behalf of the Attorney General, I must object to the changes currently pending before the Department.

    According to the 2010 Census, Galveston County has a total population of 291,309 persons, of whom 40,332 (13.8%) are African American and 65,270 (22.4%) are Hispanic. Of the 217,142 persons who are of voting age, 28,716 (13.2%) are black persons and 42,649 (19.6%) are Hispanic. The five-year American Community Survey (2006-2010) estimates that African Americans are 14.3 percent of the citizen voting age population and Hispanic persons comprise 14.8 percent. The commissioners court is elected from four single-member districts with a county judge elected at large. With regard to the election for justices of the peace and constables, there are eight election precincts under the benchmark method. Each elects one person to each position, except for Precinct 8, which elects two justices of the peace. The county has proposed to reduce the number of election precincts to five, with a justice of the peace and a constable elected from each.

    We turn first to the commissioners court redistricting plan. With respect to the county's ability to demonstrate that the commissioners court plan was adopted without a prohibited purpose, the starting point of our analysis is the framework established in *Village of Arlington Heights* v. *Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). There, the

**GENERAL INFORMATION CIVIL RIGHTS DIVISION VOTING SECTION**

**CONTACT**

You may contact the Voting Section at Voting.Section@usdoj.gov for general information concerning the Section's activities or to make a complaint concerning a voting matter. You may also use this address to request Voting Section records under the Freedom of Information Act. If you are making such a request, the phrase "Records request" should appear in the subject line.

For additional information, you may call 1-800-253-3931.

**MAILING ADDRESS**

All mail to the Voting Section must have the full address listed below:

Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530

Deliveries by overnight express service such as Airborne, DHL, Federal Express or UPS should be addressed to:

Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
Department of Justice
1800 G St., N.W.
Washington, DC 20006





Court provided a non-exhaustive list of factors that bear on the determination of discriminatory purpose, including the impact of the action on minority groups; the historical background of the action; the sequence of events leading up to the action or decision; the legislative or administrative history regarding the action; departures from normal procedures; and evidence that the decision-maker ignored factors it has otherwise considered important or controlling in similar decisions. *Id.* at 266-68.

   Based on our analysis of the evidence, we have concluded that the county has not met its burden of showing that the proposed plan was adopted with no discriminatory purpose. We start with the county's failure to adopt, as it had in previous redistricting cycles, a set of criteria by which the county would be guided in the redistricting process. The evidence establishes that this was a deliberate decision by the county to avoid being held to a procedural or substantive standard of conduct with regard to the manner in which it complied with the constitutional and statutory requirements of redistricting.

   The evidence also indicates that the process may have been characterized by the deliberate exclusion from meaningful involvement in key deliberations of the only member of the commissioners court elected from a minority ability-to-elect precinct. For example, the county judge and several – but not all – of the commissioners had prior knowledge that a significant revision to the pending proposed map was made on August 29, 2011, and would be presented at the following day's meeting at which the final vote on the redistricting plans would be taken. This is particularly noteworthy because the commissioner for Precinct 3, one of two precincts affected by this particular revision, was one of the commissioners not informed about this significant change. Precinct 3 is the only precinct in the county in which minority voters have the ability to elect a candidate of choice, and is the only precinct currently represented by a minority commissioner.

   Another factor that bears on a determination of discriminatory purpose is the impact of the decision on minority groups. In this regard, we note that during the current redistricting process, the county relocated the Bolivar Peninsula – a largely white area – from Precinct 1 into Precinct 3. This reduced the overall minority share of the electorate in Precinct 3 by reducing the African American population while increasing both the Hispanic and Anglo populations. In addition, we understand that the Bolivar Peninsula region was one of the areas in the county that was most severely damaged by Hurricane Ike in 2008, and lost several thousand homes. The county received a $93 million grant in 2009 to provide housing repair and replacement options for those residents affected by the hurricane, and has announced its intention to spend most of the grant funds restoring the housing stock on Bolivar Peninsula. Because the peninsula's population has historically been overwhelmingly Anglo, and in light of the Census Bureau's estimated occupancy rate for housing units in the Bolivar Census County Division of 2.2 persons per household, there is a factual basis to conclude that as the housing stock on the peninsula is replenished and the population increases, the result will be a significant increase in the Anglo population percentage. In the context of racially polarized elections in the county, this will lead to the concomitant loss of the ability of minority voters to elect a candidate of choice to office in Precinct 3. *Reno* v. *Bossier Parish School Board*, 528 U.S. 320, 340 (2000) ("Section 5 looks not only to the present effects of changes but to their future effects as well.") (citing *City of Pleasant Grove* v. *United States*, 479 U.S. 462, 471 (1987)).

   That this retrogression in minority voting strength in Precinct 3 is neither required nor inevitable heightens our concern that the county has not met its burden of showing that the change was not motivated by any discriminatory purpose. Both Precincts 1 and 3 were underpopulated, and it would have been far more logical to shift population from a precinct that was overpopulated than to move population between two precincts that were underpopulated. In that regard, benchmark Precinct 4 was overpopulated by 23.5 percent over the ideal, and its excess population could have been used to address underpopulation in the other precincts. Moreover, according to the information that the county supplied, its redistricting consultant made the change based on something he read in the newspaper about the public wanting Bolivar Peninsula and Galveston Island to be joined into a commissioner precinct; but a review of all the audio and video

Report a Violation

Get a Job

Contact Us



STAY CONNECTED

Sign up for E-Mail Updates
Subscribe to News Feeds

Facebook          MySpace
Twitter           YouTube

commissioner precinct, but a review of all the audio and video recordings of the public meetings shows that only one person made such a comment.

Based on these factors, we have concluded that the county has not met its burden of demonstrating that the proposed commissioners court redistricting plan was adopted with no

discriminatory purpose. We note as well, however, that based on the facts as identified above, the county has also failed to carry its burden of showing that the proposed commissioners court plan does not have a retrogressive effect.

The voting change at issue must be measured against the benchmark practice to determine whether it would "lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise." *Beer* v. *United States*, 425 U.S. 130, 141 (1976). Our statistical analysis indicates that minority voters possess the ability to elect a candidate of choice in benchmark Precinct 3, and that ability has existed for at least the past decade.

As noted, the county's decision to relocate the Bolivar Peninsula from Precinct 1 into Precinct 3 had the effect of reducing the African American share of the electorate in Precinct 3, while increasing both the Hispanic and Anglo populations. In specific terms, the county decreased the black voting age population percentage from 35.2 to 30.8 percent and increased the Hispanic voting age population 25.7 to 27.8 percent, resulting in an overall decrease of 2.3 percentage points in the precinct's minority voting age population. There is sufficient credible evidence to prevent the county from establishing the absence of a retrogressive effect as to this change, especially in light of the anticipated and significant population return of Anglo residents to the Bolivar Peninsula, as discussed further above.

We turn next to the proposed reduction in the number of election precincts for the justice of the peace and constable, and the 2011 redistricting plan for the justices of the peace/constable precincts. With regard to the election for justices of the peace and constables, there are eight election precincts under the benchmark method. Each elects one person to each position, except for Precinct 8, which elects two justices of the peace. The county has proposed to reduce the number of election precincts to five, with a justice of the peace and a constable elected from each.

Our analysis of the benchmark justice of the peace and constable districts indicates that minority voters possess the ability to elect candidates of choice in Precincts 2, 3 and 5. With respect to Precincts 2 and 3, this ability is the continuing result of the court's order in *Hoskins* v. *Hannah*, Civil Action No. G-92-12 (S.D. Tex. Aug. 19, 1992), which created these two districts. Following the proposed consolidation and reduction in the number of precincts, only Precinct 3 would provide that requisite ability to elect. In the simplest terms, under the benchmark plan, minority voters in three districts could elect candidates of choice; but under the proposed plan, that ability is reduced to one.

In addition, we understand that the county's position is that the court's order in *Hoskins* v. *Hannah*, which required the county to maintain two minority ability to elect districts for the election of justices of the peace and constables, has expired. If it has, then it is significant that in the first

redistricting following the expiration of that order, the county chose to reduce the number of minority ability to elect districts to one. A stated justification for the proposed consolidation was to save money, yet, according to the county judge's statements, the county conducted no analysis of the financial impact of this decision. The record also indicates that county residents expressed a concern during the redistricting process that the three precincts electing minority officials were consolidated and the precincts with white representatives were left alone. The record is devoid of any response by the county.

In sum, there is sufficient credible evidence that precludes the county from establishing, as it must under Section 5, that the reduction of the number of justice of the peace/constable districts as well as the redistricting plan to elect those officials will not have a retrogressive effect, and were not motivated by a discriminatory intent.

Under Section 5 of the Voting Rights Act, the submitting authority has the burden of showing that a submitted change has neither a discriminatory purpose nor a discriminatory effect. *Georgia* v. *United States*, 411 U.S. 526 (1973); 28 C.F.R. 51.52. In light of the considerations discussed above, I cannot conclude that your burden has been sustained in this instance. Therefore, on behalf of the Attorney General, I must object to the county's 2011 redistricting plan for the commissioners court and the reduction in the number of justice of the peace and constable districts as well as the redistricting plan for those offices.

We note that under Section 5 you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed change neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. 28 C.F.R. 51.44. In addition, you may request that the Attorney General reconsider the objection. 28 C.F.R. 51.45. However, until the objection is withdrawn or a judgment from the United States District Court for the District of Columbia is obtained, the submitted changes continue to be legally unenforceable. *Clark* v. *Roemer*, 500 U.S. 646 (1991); 28 C.F.R. 51.10. To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action that Galveston County plans to take concerning this matter. If you have any questions, you should contact Robert S. Berman (202/514-8690), a deputy chief in the Voting Section.

Because the Section 5 status of the redistricting plan for the commissioners court is presently before the United States District Court for the District of Columbia in *Galveston County* v. *United States,* No. 1:11-cv-1837 (D.D.C.), we are providing the Court and counsel of record with a copy of this letter. Similarly, the status of both the commissioners court and the justice of the peace and constable plans under Section 5 is a relevant fact in *Petteway* v. *Galveston County*, No. 3:11-cv-00511 (S.D. Tex). Accordingly, we are also providing that Court and counsel of record with a copy of this letter.

Sincerely,

/ s /
Thomas E. Perez
Assistant Attorney General

U.S. DEPARTMENT of JUSTICE | 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001

JUSTICE.GOV

**ABOUT**
The Attorney General
Budget & Performance
Strategic Plans

**AGENCIES**

**BUSINESS & GRANTS**
Business Opportunities
Small & Disadvantaged Business
Grants

**RESOURCES**
Forms
Publications
Case Highlights
Legislative Histories

**NEWS**
Justice News
The Justice Blog
Public Schedule
Videos
Photo Gallery

**CAREERS**
Legal Careers
Interns, Recent Graduates, and Fellows
Diversity Policy
Veteran Recruitment

**CONTACT**

Site Map
A to Z Index
Archive
Accessibility
FOIA
No FEAR Act
Information Quality
Privacy Policy
Legal Policies & Disclaimers

For Employees
Office of the Inspector General
Government Resources
USA.gov
BusinessUSA

www.justice.gov/crt/about/vot/sec_5/ltr/l_030512.php 4/4