IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. <br><br> TRUE THE VOTE, <br><br> Movant-Intervenor. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

               Plaintiffs,

        v.

JOHN STEEN, *et al.*,

               Defendants.

Civil Action No. 2:13-cv-291 (NGR)

## VEASEY-LULAC PLAINTIFFS' AND TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS' JOINT RESPONSE TO DEFENDANTS' ADVISORY REGARDING TRIAL SCHEDULE

In a novel filing called an "Advisory," Texas has asked the Court to change its ruling setting the trial for September 2014.  Texas has produced nothing but conjecture, and the Court should abide by its ruling.

This is a new idea from Texas.  Texas has known for more than two months that the Veasey-LULAC plaintiffs were seeking a September 2014, in order to make possible a ruling before the 2014 elections.  In numerous conversations and e-mail correspondence, this new idea from Texas never surfaced.  Nor did Texas raise any details about voter confusion during the Court's hearing on November 15, 2013.

Texas' delay in raising this point is not by itself a reason to deny the request, but it undermines the assertions in Texas' Advisory and the accompanying Declaration, and suggests those assertions are simply after-the-fact pretexts.

More seriously, Texas has produced nothing substantive to support its vague claims that confusion will result if this Court invalidates SB 14 and thereby returns Texas elections to the way they have always been conducted before this year.  Rather than presenting facts and specifics, Texas makes passing references to "manuals," "materials" and "training."  Except for

2

the mail ballots – which are discussed below – there is not a single specific example of what form or instruction would, in Texas' view, be fatally affected.

The opposite is true – if this Court were to strike down SB 14 and return elections to the traditional method, less confusion rather than more would result.  *See* Exhibit A, Declaration of Toni Pippins-Poole, Dallas County Elections Administrator.  The reason is obvious:  It takes less effort and confusion to undo a new requirement -- especially a complicated one – than to impose it.  In 2012, Texas told the district court in *Texas v. Holder* that it would need to have a ruling in August in order to be able to *implement* a totally new photo ID law in time for the Presidential elections in November 2012.  *See* Exhibit B hereto, Affidavit of Keith Ingram in *Texas v. Holder*.[1]  It stretches credulity for Texas now to say that a similar period is needed if it is to *shut down* SB 14 without substantial confusion.

In the 2012 case, the State filed a document claiming that in order to implement its new requirements, it would need time to: (1) educate voters that their voter registration certificates and non-photo identification were no longer sufficient for the purposes of identifying themselves; (2) allow voters who lacked one of the acceptable forms of identification some time, even if limited, to try to obtain it; (3) change forms, such as adding a place on the provisional ballot for indicating an ID problem; and (4) train poll workers on the limited number of IDs that were acceptable and on the meaning of "substantially similar." *See* Ex. B.

By contrast, a decision to halt SB 14's implementation will not require the same time or effort.[2]  To take one example, Keith Ingram states that "approximately 13 forms . . . were

---

[1] Even in *Texas v. Holder*, Mr. Ingram's affidavit was unreliable.  His affidavit filed in that case in early 2012 said the final or drop dead date by which the DC court needed to render its decision  was August 15, but the DC Court concluded that, based on his testimony at a hearing, that his real drop dead date was August 31. See Order of May 7, 2012 in *Texas v. Holde*r, No. 12-128 (D.D.C). Dkt. #107 at page 6.

[2] It is worth noting that Texas already has access to its old forms, presentations, etc., and a decision from this Court invalidating SB 14 would not require the State to spend significant time developing new forms and education

modified to implement the provisions of Senate Bill 14." Decl. Keith B. Ingram ¶ 5. One of those forms was the provisional ballot, which, in the Section 5 case, Ingram had identified as one of the forms that would need to be updated to implement SB 14. *See* Ex. B. Implementing the new law required the state to update the provisional ballot so that election workers could indicate a voter's lack of ID as the reason for casting a provisional ballot. *See* Ex. C, Affidavit of Provisional Voter.[3] But, putting aside how long it would actually take to update the form, a decision invalidating SB 14 would not require the State to change the form before the November 14 elections—it would simply render that check box superfluous.

Much of the time the State claimed it needed in 2012 was for the benefit of voters who would have to learn they needed more ID documentation and go get it.  If this Court were to issue a ruling in the Fall blocking SB 14, voters need only be told they do not have to go through the often-difficult process of acquiring new documentation.

There is one specific example of possible confusion described in the State's Advisory, but it is almost completely wrong.  This is the example of mail-in ballots, which Texas says will have problems because they are sent out at an early date.  Texas cites Mr. Ingram's affidavit in making the argument that a September 2, 2014 trial date creates "a strong potential for uncertainty for some voters who cast a mail-in ballot." Defs.' Advisory 4. The State cites dates by which mail-in voters must request ballots, and the dates on which such ballots are sent to military and overseas voters. The State then claims: "Any decision from this Court that would require the State to change what information these voters receive after the voters already received

---

materials. Such forms already exist and county election officials could "easily" implement the procedures in place before SB 14 went into effect.  *See* Exhibit A, Declaration of Toni Pippins-Poole, Dallas County Elections Administrator at ¶4.

[3] *Available at* http://www.sos.state.tx.us/elections/forms/pol-sub/7-15f.pdf. We have also attached a copy of this affidavit of provisional voter as Exhibit C, printed from the Secretary of State's website.

information will likely cause confusion." *Id.* at 5. The problem with the State's conjecture of potential confusion is that SB 14 <u>does</u> <u>not</u> affect mail-in balloting at all for uniformed and overseas voters, or any of the other vast majority of voters casting a ballot by mail.  Indeed, the Texas Secretary of State's own website states in its 'Frequently Asked Questions' section that the new photo ID "requirement does not change the process for voting by mail." Required Identification for Voting in Person, VoteTexas.gov (last visited November 20, 2013).[4]  SB 14 only impacts a minute group of mail-in voters:  first-time voters casting a ballot by mail whose Texas driver's license number, or personal identification number, or last four digits of the their social security number could not be verified at the time the first-time voter registered.  That minute subset of voters simply get a Notice (attached as Exhibit D hereto) advising them of SB 14's ID requirements.  No other voters are affected or receive that Notice.   If SB 14 is enjoined or modified by the Court, this tiny subset of first-time voters receiving this Notice could simply be provided with notification that the ID requirements remain what they have been in the past, as the Dallas County Elections Administrator has suggested could be done in her Declaration.  Ex. A.[5]

The trial date set by the Court serves the interests of the people of Texas by affording an opportunity to have this very important case heard at the most opportune time, *i.e.,* before the new law is used in the major statewide and federal elections of 2014.  The State has not made any factual showing that its so-called administrative problems are real or outweigh the interests of the voters of this State.

---

[4]*Available at* <u>http://votetexas.gov/register-to-vote/need-id</u>.

[5] Ms. Pippins-Poole has stated: "If SB 14 is stopped, Dallas County will return to using the voter identification requirements the county has used since 2003.  Dallas County officials and employees could easily return to those requirements even if the county has prepared to conduct an election under the requirements of SB 14."

Because Texas has, despite substantial time to do so, failed to make such a factual showing, Texas' "Advisory" invitation to change the trial date should be declined.  The parties' time and resources should now be focused exclusively on conducting discovery and preparing the case for trial.

Respectfully submitted,

**BRAZIL & DUNN**

*/s/ Chad W. Dunn*
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
Brazil & Dunn
4201 Cypress Creek Parkway, Suite 530
Houston, Texas 77068
Telephone:  (281) 580-6310
Facsimile:   (281) 580-6362
chad@brazilanddunn.com
scott@brazilanddunn.com

J. Gerald Hebert (*Pro Hac Vice*)
D.C. Bar No. 447676
Campaign Legal Center
215 E Street, NE
Washington, DC 20002
Telephone (202) 736-2200 ext. 12
Facsimile (202) 736-2222
GHebert@campaignlegalcenter.org

Neil G. Baron
State Bar No. 01797080
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539
Telephone (281) 534-2748
Facsimile (281) 534-4309
neil@ngbaronlaw.com

David Richards
State Bar No. 16846000
Richards, Rodriguez &Skeith, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701
Telephone (512) 476-0005
Facsimile  (512) 476-1513
daverichards4@juno.com

Armand G. Derfner
Derfner, Altman &Wilborn, LLC
P.O. Box 600
Charleston, S.C. 29402
Telephone (843) 723-9804
aderfner@dawlegal.com

*Attorneys for Plaintiffs*

LUIS ROBERTO VERA, JR.
LULAC National General Counsel
State Bar No.  20546740
The Law Offices of Luis Vera Jr., and Associates
1325 Riverview Towers, 111 Soledad
San Antonio, Texas 78205-2260
Telephone (210) 225-3300
Facsimile (210) 225-2060
lrvlaw@sbcglobal.net

*Attorney for LULAC*

Craig M. Watkins
Dallas County District Attorney
State Bar No. 00791886
Teresa G. Snelson
Chief, Civil Division
Dallas County District Attorney's Office
State Bar. No. 08577250
411 Elm St. 5th Floor
Dallas, TX 75202
Phone 214-653-7358
Fax 214-653-6134
Teresa.Snelson@dallascounty.org

*Attorneys for Dallas County, Texas*

7

ROLANDO L. RIOS
115 E. Travis, Suite 1645
San Antonio, Texas 78205
Ph:      (210) 222-2102
Fax:     (210) 222-2898
SBN: 16935900
rios@rolandorioslaw.com

 /s/ *Rolando L. Rios*
ROLANDO L. RIOS

*Attorney for Intervenor County Judges and*
*County Commissioners*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2013, I served a copy of the foregoing on all counsel of record by filing a copy of the same in this Court's ECF system.  For those attorneys not receiving a copy via ECF, copies were served via email or first-class mail, postage prepaid.

*J. Gerald Hebert*
J. GERALD HEBERT