**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| _____ | |
| MARC VEASEY, JANE HAMILTON, SERGIO DELEON, FLOYD J. CARRIER, ANNA BURNS, MICHAEL MONTEX, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS, JOHN MELLOR-CRUMLEY, JANE DOE, JOHN DOE, LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), AND DALLAS COUNTY, TEXAS, ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs,* ) | |
| v. ) | CIVIL ACTION NO. |
| RICK PERRY, Governor of Texas; and JOHN STEEN, Texas Secretary of State, ) ) ) | 2:13-CV-193 (NGR) [Lead case] |
| *Defendants.* ) | |
| _____ ) | |
| UNITED STATES OF AMERICA, ) ) | |
| *Plaintiffs,* ) ) | |
| v. ) | CIVIL ACTION NO. |
| STATE OF TEXAS, JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, ) ) ) ) ) ) | 2:13-CV-263 (NGR) [Consolidated case] |
| *Defendants.* ) | |
| _____ ) | |
| TEXAS STATE CONFERENCE OF NAACP BRANCHES; and the MEXICAN AMERICAN LEGISLATIVE CAUCUS OF THE TEXAS HOUSE OF REPRESENTATIVES, ) ) ) ) ) | |
| *Plaintiffs,* ) | |
| v. ) | CIVIL ACTION NO. |
| JOHN STEEN, in his official capacity as Secretary of State of Texas; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, ) ) ) ) ) ) | 2:13-CV-291 (NGR) [Consolidated case] |
| *Defendants.* ) | |
| _____ | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Authorities ............................................................................................ ii

I.    The Claims Brought By Plaintiffs Burns, Ozias, and Mellor-
      Crumley Must Be Dismissed For Lack of Standing ............................. 1

      A.    A Person Possessing An Acceptable Photo ID Lacks
            Standing To Challenge Senate Bill 14 .......................................... 1

      B.    Carrier Lacks Standing Because State Law Exempts
            Voters With Disabilities From The Photo ID Requirement ......... 5

II.   The Organizations, Elected Officials, Community Organizers,
      and Dallas County Have Completely Misapprehended The
      Third-Party Standing Doctrine And Do Not Even Attempt To
      Satisfy Same. ...................................................................................... 6

III.  The Plaintiffs' ID-Disparity Theory Fails To State A Claim. ............... 10

      A.    The Plaintiffs Failed To Allege That Senate Bill 14 Will
            "Deny" Or "Abridge" Anyone's Right To Vote ............................ 10

      B.    The Text Of Section 2 Requires Only Facially Neutral
            Laws That Are Enforced In A Race-Neutral Manner. .............. 14

      C.    The Plaintiffs Claims of Purposeful Discrimination Are
            Facially Implausible. ................................................................ 16

      D.    By Citing The Holdings And Findings Of A Vacated
            Preclearance Decision By The U.S. District Court for the
            District of Columbia, Plaintiffs Invite This Court To
            Commit Reversible Error. .......................................................... 18

IV.   The United States and MALC Plaintiffs' Claims Against
      McGraw and The Veasey Plaintiffs' Claims Against Perry
      Should Be Dismissed .......................................................................... 19

Certificate of Service .......................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*ASARCO Inc. v. Kadish,*
    490 U.S. 605 (1989) ................................................................................ 2

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................. 16

*Bd. of Trustees of the Univ. of Ala. v. Garrett,*
    531 U.S. 356 (2001) .............................................................................. 14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................. 16

*Common Cause/Georgia v. Billups,*
    554 F.3d 1340 (11th Cir. 2009) .............................................................. 2

*Crawford v. Marion County Election Bd.,*
    553 U.S. 181 (2008) .............................................................. 10, 11, 12, 16

*Falcon v. General Telephone Co.,*
    815 F.2d 317 (1990) .............................................................................. 18

*Gonzalez v. Arizona,*
    677 F.3d 383 (9th Cir. 2012) (en banc) ................................................ 15

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ................................................................................ 8

*Hunt v. Washington State Apple Advertising Comm'n,*
    432 U.S. 333 (1977) ................................................................................ 6

*Ingraham v. Wright,*
    430 U.S. 651 (1977) ................................................................................ 1

*Kimel v. Fla. Bd. of Regents,*
    528 U.S. 62 (2000) ................................................................................ 14

*Lance v. Coffman,*
    549 U.S. 437 (2007) ................................................................................ 5

*LaRoque v. Holder,*
    650 F.3d 777 (D.C.Cir. 2011) ................................................................ 9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ......................................................................... 3

*Mandel v. Bradley,*
    432 U.S. 173 (1977) ......................................................................... 14

*Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.,* 721 F.2d 197 (7th Cir. 1983) ............................................... 4

*Miss. Republican Exec. Comm. v. Brooks,*
    469 U.S. 1002 (1984) ................................................................. 14, 15

*Mississippi State Chapter, Operation PUSH v. Allain,*
    674 F. Supp. 1245 (N.D. Miss. 1987), aff'd, 932 F.2d 400 (5th Cir. 1991) ............................................................................................. 11

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw,*
    719 F.3d 338 (5th Cir. 2013) ......................................................... 10

*New Creation Fellowship of Buffalo v. Town of Cheektowaga,*
    164 Fed. App'x 5 (2d Cir. 2005) ..................................................... 1

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ......................................................... 20

*Pennhurst State School and Hospital v. Halderman,*
    465 U.S. 89 (1984) ........................................................................... 4

*Powers v. Ohio,*
    499 U.S. 400 (1991) ..................................................................... 6, 7

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ........................................................... 3

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ......................................................................... 7

*Somers v. South Carolina State Election Comm'n,*
    871 F.Supp.2d 490 (D.S.C. 2012) ................................................... 9

*Texas Democratic Party v. Benkiser,*
    459 F.3d 582 (5th Cir. 2006) ........................................................... 9

*Texas v. Holder,*
    133 S. Ct. 2886 (2013) ................................................................... 18

*Texas v. Holder*,
    888 F. Supp. 2d 113 (D.D.C. 2012) ..................................................... 18

*Thomas v. Texas Dep't of Criminal Justice*,
    297 F.3d 361(5th Cir. 2002) ............................................................... 9

*United States v. Windsor*,
    133 S. Ct. 2675 (2013) ...................................................................... 18

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................... 6, 8

*Webster v. Fall*,
    266 U.S. 507 (1925) .......................................................................... 9

**Statutes**

25 TEX. ADMIN. CODE § 181.22 ............................................................ 12

42 U.S.C. § 1973(a) ........................................................................... 14

42 U.S.C. § 1973b(f)(2) ...................................................................... 14

TEX ELEC. CODE § 63.001(c) ................................................................. 1

TEX. ELEC. CODE § 13.002(i) ................................................................. 6

TEX. ELEC. CODE § 63.001(g) ............................................................... 12

TEX. ELEC. CODE § 63.001(h) ............................................................ 5, 12

TEX. GOV'T CODE § 401.041 ............................................................... 20

TEX. TRANSP. CODE § 521A.001 ........................................................... 12

**Other Authorities**

38 Tex. Reg. 7307-10 (2013) .............................................................. 12

Building Confidence in U.S. Elections § 2.5 (Sept. 2005) ............................ 17

Senate Bill 14 § 9(c) .......................................................................... 1

Senate Bill 14, § 1 ............................................................................. 5

I.    THE CLAIMS BROUGHT BY PLAINTIFFS BURNS, OZIAS, AND MELLOR-CRUMLEY MUST BE DISMISSED FOR LACK OF STANDING.

A.    A Person Possessing An Acceptable Photo ID Lacks Standing To Challenge Senate Bill 14.

Plaintiffs Anna Burns, Koby Ozias, and John Mellor-Crumley lack standing because they fail to allege that their photo identification is not "substantially similar" to the name on their voter-registration certificate.  Absent that allegation, these plaintiffs have no injury because they already possess an acceptable ID. Senate Bill 14 § 9(c); TEX ELEC. CODE § 63.001(c).

Plaintiffs offer three responses: (1) even voters with acceptable ID have standing to challenge Senate Bill 14; (2) state officials might misapply the "substantially similar" provision; and (3) the photo ID requirement will allegedly cause long lines and burden all voters in Texas.  Plaintiffs are triply incorrect.

1.    Voters with acceptable ID have no standing to challenge SB 14 because producing an ID for inspection by an election official is a minor inconvenience that does not amount to an Article III injury.  See *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (federal courts are not concerned with "de minimis" injuries); *New Creation Fellowship of Buffalo v. Town of Cheektowaga*, 164 Fed. App'x 5 (2d Cir. 2005) (unpublished) ("minor inconveniences" are "insufficient to satisfy the injury-in-fact requirement for Article III standing").

Plaintiffs complain that they are injured by "go[ing] through the process" of having an election official "contemplate" their IDs.  Veasey Resp. at 14.  But that is an insignificant "process" that millions of Texans conquer every day when they

write checks, use credit cards, board a plane, or buy beer.  If the chore of showing one's identification amounts to an injury, it is far too minor to invoke the limited jurisdiction of the federal courts.  Voters with a "substantially similar" ID lack standing for the same reason.  It is a minor inconvenience at worst to ask a voter to sign a 3" x 8" slip of paper confirming the voter's identity. These sorts of affidavits were a regular part of voting, even before SB 14, to account for name and address changes.  Any burden they impose is no more than a psychic injury arising from the voter's disagreement with SB 14, and such injuries are not cognizable in federal court.  *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 616 (1989) ("[G]rievances brought by concerned citizens are not cognizable in the federal courts.").

The Eleventh Circuit's decision to the contrary is wrongly decided, not binding on this court, and lacks the power even to persuade.  *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009) ("The inability of a voter to pay a poll tax, for example, is not required to challenge a statute that imposes a tax on voting.").  This "poll tax" analogy is the full extent of the panel's reasoning, and it makes little sense.  Being forced to pay fees, fines, or taxes to the government is the quintessential injury in fact.  And no governmental defendant would ever suggest that a plaintiff's *ability* to pay the tax matters for standing analysis.  But a plaintiff with an acceptable ID spends no money.  Instead of reaching into his left pocket to produce a voter registration card, as was previously required, John Mellor-Crumley is being asked to also produce a photo ID from his right. Comparing that "burden" to a poll tax is unhelpful and inflammatory.

2

2. Next, Burns, Ozias, and Mellor-Crumley defend their refusal to plead facts showing that the names on their photo identification and voter-registration certificate are not "substantially similar" under the standards established by the Secretary of State. Veasey Resp. at 13-14. In its opening brief, the State argued that plaintiffs could not survive a motion to dismiss by concealing the nature of the discrepancy. The plaintiffs' response still refuses to disclose the nature of the discrepancy, and the plaintiffs' lawyers appear unwilling even to sign their names to a brief stating that the names are not "substantially similar."

Instead the plaintiffs insist that "this Court must presume" that "the Plaintiffs' names on their identification and voter registration certificates are sufficiently different that they *could* be barred from voting under SB 14." Veasey Resp. at 13-14 (emphasis added). Plaintiffs acknowledge that a court considering a motion under 12(b)(1) may consider "the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts." Veasey Resp. at 9 (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). And the Court has an obligation take such steps to ensure itself that plaintiffs are not invoking its subject-matter jurisdiction with an injury that is merely "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The obligation to police jurisdiction does not rest with the Court alone. The lawyers also have a duty to assist the Court with that task, and the plaintiffs' refusal to tell the Court the nature of the discrepancy—a fact the Court needs in order to determine its jurisdiction—serves as reason alone to dismiss their claims

3

for lack of standing.  *See Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.*, 721 F.2d 197 (7th Cir. 1983) ("We therefore take this opportunity to remind the bar . . . that we have an independent obligation to police the constitutional and statutory limitations on our jurisdiction, and that counsel, as officers of the court, have a professional obligation to assist us in this task.").

Having failed to disclose the nature of the discrepancy, plaintiffs alleged injuries are nothing but conjecture and hypothesis.  They predict that poll workers will "no doubt" misapply or inconsistently apply state law and that "a voter whose name is deemed 'substantially similar' by one election official" might not "be deemed 'substantially similar' by a different official in future elections."   Veasey Resp. at 14.

The plaintiffs' predictions are incorrect as a matter of both federal and state law.  First, this Court has no jurisdiction to hear complaints about state officials' misapplication of state law.  *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 106 (1984).  If the plaintiffs are injured when a state official breaks state law, their remedy lies with the state courts.  *Id.*  Second, the plaintiffs' double conjecture about "a different official in future elections" gives the state too little credit.  State law already anticipates and addresses this concern.  The voter affidavit is also a change request form, directing the Secretary of State to update the voter's registration information to match their photo ID.  After the update, the Secretary of State sends the voter an updated registration certificate exactly matching their photo ID.

3.   Plaintiffs' third response is that the photo ID requirement will allegedly cause long lines and burden all voters in Texas.   Veasey Resp. at 15 ("[T]hese requirements could impose considerable burdens on voters, including all of the Plaintiffs here, as they will cause significant delays in the voting process.").   The State disagrees with the factual premise of plaintiffs' argument (and we think recent elections prove us right) but even if plaintiffs were correct, delays faced by all voters are a generalized grievance that plaintiffs lack standing to assert.   "We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437 (2007) (per curiam).

## B.   Carrier Lacks Standing Because State Law Exempts Voters With Disabilities From The Photo ID Requirement.

Carrier now says that his Veterans' Administration identification card does not have a photo, and promises to correct this mistake in a future amended complaint.   Veasey Resp. at 11 n.4.   But Carrier still lacks standing because state law exempts voters with disabilities from the photo ID requirement.   *See* Senate Bill 14, § 1; Tex. Elec. Code § 63.001(h).   Carrier responds that even with the exemption, he still must overcome "numerous hurdles" and "go to great and new lengths."   But the only thing he must do (if he hasn't already) is obtain a voter registration certificate (which all voters must obtain) that includes a disability notation.   And state law makes those certificates easy to obtain:   First, he must

5

provide written documentation from the United States Social Security Administration or from the United States Department of Veterans Affairs evidencing his disability and, second, he must state on a form that he does not have a photo ID that complies with SB 14. TEX. ELEC. CODE § 13.002(i). These inconveniences are minor compared to the ordinary burdens of registering and voting and do not create a case or controversy under Article III.

II.   **THE ORGANIZATIONS, ELECTED OFFICIALS, COMMUNITY ORGANIZERS, AND DALLAS COUNTY HAVE COMPLETELY MISAPPREHENDED THE THIRD-PARTY STANDING DOCTRINE AND DO NOT EVEN ATTEMPT TO SATISFY SAME.**

There are two ways an organization can establish Article III standing. First, there is "no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Second, "an association may have [associational] standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977).

Even if an organization (or any other litigant for that matter) establishes Article III standing, it still must clear a second hurdle: the prudential rule against litigants asserting the rights of third parties. "[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). This is the rule against third-party standing, and litigants may overcome the rule "provided three important criteria are satisfied":

[1] The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; [2] the litigant must have a close relation to the third party; and [3] there must exist some hindrance to the third party's ability to protect his or her own interests.

*Powers v. Ohio*, 499 U.S. 400, 410-11 (1991) (citations omitted); *accord Singleton v. Wulff*, 428 U.S. 106, 112-16 (1976).

There can be no doubt that the plaintiffs are asserting the voting rights of third parties — none of these entities vote — so even if the entity is itself injured by SB 14, it still must satisfy the *Powers* factors before it invokes the voting rights of third parties not before the Court.

The organizations, elected officials, community organizers, and Dallas County argue that the entity themselves will suffer economic harm, giving them an injury in fact.   *See* Veasey Resp. at 16-20 ("The Plaintiffs Are Injured Directly."); MALC Resp. at ("MALC h[as] made sufficient allegations of injury to [its] own activities to pass muster under Article III.").   But the plaintiffs' arguments stop there, showing only that they might satisfy first *Powers* factor.   *See Powers*, 499 U.S. at 410-11 ("[1] The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute;"). The plaintiffs make no effort to rebut the State's contention that they fail to satisfy the other two.   *But cf.* Veasey Resp. at 16 n.6 (justifying their a cursory treatment of the final two *Powers* factors with the explanation that "[w]e do not address this issue at length because these parties clearly have first party standing."). The plaintiffs refuse to take the Supreme Court at its word that a litigant must do more

7

than simply allege "first party standing" when it wants to assert the constitutional or statutory rights of a third party who is not before the court. *See Warth*, 422 U.S. at 511 (There is "no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate *whatever rights and immunities the association itself may enjoy*.") (emphasis added).

Plaintiffs insist that that an injury to the organization itself is enough, citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). MALC Resp. at 10-11; Veasey Resp. at 17. But *Havens Realty* is a unique exception that proves the rule. *Havens Realty* allowed an entity to assert the rights of others under the Fair Housing Act, despite the entity's failure to satisfy the last two *Powers* factors, because the Supreme Court had earlier held that "Congress intended standing under [FHA] § 812 to extend to the full limits of Art. III" and that "the courts accordingly lack the authority to create prudential barriers to standing [like the rule against third party standing] in suits brought under that section." *Havens Realty*, 455 U.S. at 372. "Thus," the Court concluded, "the sole requirement for standing to sue under § 812 is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury." *Id.*

The plaintiffs have not even attempted to identify a provision of the VRA stripping federal courts of the power to enforce prudential barriers to standing. Nor have the plaintiffs even attempted to cite a judicial decision interpreting the VRA in that manner. Indeed, at least two courts have enforced the rule against third-party

standing in a VRA case. *LaRoque v. Holder*, 650 F.3d 777, 781–82 (D.C.Cir. 2011) ("This prudential limitation is meant to avoid 'the adjudication of rights which those not before the Court may not wish to assert' and to ensure 'that the most effective advocate of the rights at issue is present to champion them.' "); *Somers v. South Carolina State Election Comm'n*, 871 F.Supp.2d 490, 497-98 (D.S.C. 2012) (three-judge court).

It does not matter if plaintiffs can point to cases where entities were allowed without objection to assert the rights of third parties in VRA cases. MALC Resp. at 15. Nor does it matter if plaintiffs can point to cases, such as *Texas Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006), where entities were allowed without objection to assert the rights of third parties in constitutional disputes generally. Veasey Resp. at 16-17. It was long ago settled that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see also Thomas v. Texas Dep't of Criminal Justice*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises.").

Finally, the plaintiffs urge the Court to ignore the fact that many of the parties in the caption may lack standing. *See* Veasey Resp. at 24 n.12 ("[O]nce it determines one of the Veasey-LULAC Plaintiffs has standing, does not need to engage in further analysis as to the standing of other Plaintiffs."); MALC Resp. at

9

10 n.3 ("[I]f one plaintiff has standing, 'there is no need to decide whether the other [plaintiffs] also have standing.'" (citation omitted)).  But as the State demonstrated in its opening brief, *see* Texas Mot. at 4 n.1, the Fifth Circuit has already rejected the plaintiffs' "buy one, get the rest free" theory of Article III.  The Supreme Court of the United States is free to end its Article III analysis when it satisfies itself that at least one plaintiff has standing.  *See, e.g, Crawford*, 553 U.S. at 189 n.7.  *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 198 (2008).  But federal district courts must police their dockets and dismiss parties who they know lack standing.  *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 n.3 (5th Cir. 2013) (Although federal courts can "avoid complex questions of standing in cases where the standing of others makes a case justiciable, it does not follow that . . . a court that *knows* that a party is without standing [can] nonetheless allow that party to participate in the case.") (emphasis in original).

## III. THE PLAINTIFFS' ID-DISPARITY THEORY FAILS TO STATE A CLAIM.

### A. The Plaintiffs Failed To Allege That Senate Bill 14 Will "Deny" Or "Abridge" Anyone's Right To Vote.

Senate Bill 14 does not "deny" or "abridge" the right to vote, because anyone who lacks photo identification can get an election-identification certificate.  State Mot. at 18.  Indeed, the plaintiffs failed to allege that *anyone* in Texas is unable to obtain a free election-identification certificate, and their responses to Texas's motion again fail to make any such claim.

Instead, the plaintiffs attack a strawman of their own invention.  The State does not contend, as DOJ suggests, *see* DOJ Resp. at 12-15, that a burden must be

impossible to overcome in all instances in order to qualify as a "denial or abridgement" of the right to vote.  But, at the very least, the burden must be insurmountable for *someone*.  And the burden certainly must be more than something the Supreme Court has already characterized as nothing more than "the usual burdens of voting."

To show that the right to vote has been abridged or denied, the plaintiffs must allege, at least, that someone's vote will not be counted because they are unable to obtain the free EIC.  Plaintiffs failed to identify any such a person in *Crawford*, in which some of the plaintiffs participated prominently as amici; they failed to identify any such person in the now-vacated preclearance lawsuit; and they failed to identify any such person here.  After all these years, they have nobody but anonymous placeholders named Jane and John Doe.[1]

The plaintiffs have no answer for the Supreme Court's pronouncement in *Crawford* that the inconvenience associated with obtaining photo identification is no more significant than "the usual burdens of voting." *See Crawford v. Marion County Election Bd.*, 553 U.S. 181, 198 (2008) (Stevens, J.) ("[T]he inconvenience of making a trip to the DMV, gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting."); *see also id.*

---

[1] In *Mississippi State Chapter, Operation PUSH v. Allain*, 674 F. Supp. 1245 (N.D. Miss. 1987), aff'd, 932 F.2d 400, 403 (5th Cir. 1991), on which the United States extensively relies, *see* DOJ Resp. at 13-15, the plaintiffs managed to produce many people whose vote was not counted because of the challenged practice.  *Id.* at 1255.  For example, in one precinct, the district court found that there were 56 voters whose vote was not counted because of the registration requirement, and that all 56 of the voters were black.  *Id.*  To make matters worse, several black candidates lost their election bids by margins of 56 votes or less.  *Id.*

at 209 (Scalia, J. concurring in the judgment).   The United States says that *Crawford* involved "very different claims, under very different facts and under a very different law," DOJ Resp. at 15, but the United States makes no attempt to explain why the Supreme Court's holding with respect to the burdens of obtaining a photo ID would be different under section 2 of the VRA instead of the Constitution.

And the United States' effort to factually distinguish *Crawford* falls flat.   The United States says that the Indiana law in *Crawford* was "far less restrictive" than SB 14.   But SB 14 is less restrictive than Indiana's law in important respects.   For instance, Indiana charged voters up to $12 for a copy of their birth certificate, *see Crawford*, 553 U.S. at 198 n.17, while Texas issues birth certificates for no more than $3 if a voter needs it to obtain an election-identification certificate. *See* 38 Tex. Reg. 7307-10 (2013) (to be codified as an amendment to 25 Tex. Admin. Code § 181.22).   Texas law also provides exceptions for the disabled.   Tex. Elec. Code § 63.001(h).   And like Indiana, Texas mitigates the inconvenience by offering election-identification certificates free of charge, *see* Tex. Transp. Code § 521A.001, and by allowing voters to cast provisional ballots if they appear at the polls without photo identification, *see* Tex. Elec. Code § 63.001(g).   The United States' only basis for calling Texas's law "far more restrictive" is the fact that Texas does not accept student IDs, which are issued by numerous universities, not by the Department of Public Safety.   It makes good sense to exclude these non-standardized forms of ID, which presumably is the reason that federal agencies also find student IDs an unacceptable form of identification, but will accept DPS-issued driver's licenses and

concealed-handgun licenses. *See* http://www.tsa.gov/traveler-information/acceptable-ids (instructing travelers to bring "Driver's Licenses or other state photo identity cards *issued by Department of Motor Vehicles*") (emphasis added). Furthermore, unlike the forms of ID currently accepted by SB 14, student IDs do not demonstrate that the ID holder is a resident of, and therefore eligible to vote in, Texas. DOJ offers no explanation as to why this aspect of Texas' law pushes it over the line of what is acceptable.

The United States also has no good answer for a question the State directly posed in its opening brief: "Surely the Attorney General does not believe that the Voting Rights Act requires every State to abolish in-person voting and allow everyone to vote by mail, as Oregon has done." *See* Texas Mot. at 20. The United States' and other the plaintiffs' theory compels that result. The United States' only response is to assert that the burden of obtaining a free photo ID is "far more significant" than the burden of getting to the polls on Election Day. DOJ Resp. at 16.

The Veasey plaintiffs attack a strawman of their own, but their invention is more pernicious than DOJ's. The State never suggested that "minority voters are not victims of voting discrimination because they are apathetic," *see* Veasey Resp. at 28. The State's argument, and the Supreme Court's holding in *Crawford*, is that obtaining a photo ID is no more difficult than "the usual burdens of voting" and, because of that fact, the plaintiffs have never been able to produce or allege the

existence of any person, of any race, who could not get a free EIC because of anything other than what may fairly be characterized as that person's choice.

**B.    The Text Of Section 2 Requires Only Facially Neutral Laws That Are Enforced In A Race-Neutral Manner.**

The text of section 2 of the VRA tracks the Fifteenth Amendment, prohibiting only laws that "result[] in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color," or "because he is a member of a language minority group." *See* 42 U.S.C. § 1973(a) (emphasis added); *id.* § 1973b(f)(2) (emphasis added).  As the State argued in its motion to dismiss, this statutory text forecloses disparate impact claims, and requires instead an allegation that a state law is facially discriminatory or is being enforced in a racially-discriminatory manner.  State Mot. at 21-26.

The United States ignores this text, a serious oversight when construing a statute designed to enforce the Fourteenth and Fifteenth Amendments.  *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) (holding that Congress must speak in clear and explicit language in order to enact extra-constitutional prohibitions).  Instead, the United States unjustifiably argues that "the Supreme Court has summarily affirmed the constitutionality of Section 2's results test."  *See* DOJ Resp. at 19-20 (citing *Miss. Republican Exec. Comm. v. Brooks*, 469 U.S. 1002 (1984)).  The holding of *Brooks* is far narrower than the United States claims.  It is true, as the United States argues, that summary affirmances "reject the specific challenges presented in the statement of jurisdiction." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977).  But the statement of

14

jurisdiction in *Brooks* does not control this case.   The statement first asks "[w]hether Section 5 and Section 2 as amended apply to redistricting decisions," like *Brooks*.   469 U.S. at 1003 (Stevens, J., concurring).   The central issue on appeal, then, was whether redistricting was outside the scope of the VRA. The fourth question presented, the one quoted by the United States' brief, assumes an answer to that central issue, asking "[w]hether Section 2, if construed to prohibit anything other than intentional discrimination on the basis of race *in registration and voting*, exceeds the power vested in Congress by the Fifteenth Amendment." *Id.* (emphasis added).   So the summary affirmance in *Brooks* holds only that Section 2 cannot be limited to intentional discrimination in *registration and voting* alone, to the exclusion of intentional discrimination in redistricting decisions.

Finally, the United States argues that it is "not basing its Section 2 claim solely on racial disparity rates," and that it intends to show that under the "totality of the circumstances," SB 14 results in discrimination on account of race.   DOJ Resp. at 17.   The United States is describing a disparate impact claim, which it apparently intends to press in addition to its claim of purposeful discrimination.  Of course the United States must allege "more than . . . an initial statistical disparity," s*ee, e.g.*, DOJ Resp. at 18.   They must also show that any observed statistical disparity in voting rates are *caused* by the challenged practice. *See, e.g., Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) (en banc) (upholding Arizona's voter ID law based on the district court's finding that "not a single expert testified to a causal connection between Proposition 200's requirements and the observed difference in

the voting rates of Latinos.").  Even when forced to prove that causal connection,

however, the United States' claim still sounds in disparate impact, and such claims

are foreclosed by the text of section 2.

### C.   The Plaintiffs Claims of Purposeful Discrimination Are Facially Implausible.

The plaintiffs cannot plausibly claim that the Texas Legislature passed SB 14

with the intent to discriminate against racial minorities. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court has endorsed voter ID laws as lawful devices for preventing

fraud.  *See Crawford*, 553 U.S. at 195-96 (discussing the United States' extensive

history of voter fraud).  Congress agrees "that photo identification is one effective

method of establishing a voter's qualification to vote and that the integrity of

elections is enhanced through improved technology." *Id.* at 193.  And prominent

veterans of the Executive Branch have also endorsed photo ID laws.   The

Commission on Federal Election Reform chaired by former President Jimmy Carter

and former Secretary of State James A. Baker III, concludes as follows:

> A good registration list will ensure that citizens are only registered in
> one place, but election officials still need to make sure that the person
> arriving at a polling site is the same one that is named on the
> registration list. In the old days and in small towns where everyone
> knows each other, voters did not need to identify themselves. But in
> the United States, where 40 million people move each year, and in
> urban areas where some people do not even know the people living in
> their own apartment building let alone their precinct, some form of
> identification is needed.
>
> There is no evidence of extensive fraud in U.S. elections or of multiple
> voting, but both occur, and it could affect the outcome of a close
> election. The electoral system cannot inspire public confidence if no
> safeguards exist to deter or detect fraud or to confirm the identity of

voters. *Photo identification cards currently are needed to board a plane, enter federal buildings, and cash a check. Voting is equally important.*

Building Confidence in U.S. Elections § 2.5 (Sept. 2005) (Carter–Baker Report) (emphasis added).  And, perhaps more importantly, an overwhelming majority of Texas voters support a Voter ID law.  A few months before SB 14's passage, a poll conducted by the University of Texas and the Texas Tribune revealed that an overwhelming 75 percent of Texas voters (including 63 percent of black respondents and 68 percent of Hispanic respondents) agreed that voters should be required to present a government-issued photo ID to vote.  *See* University of Texas / Texas Tribune, Texas Statewide Survey (Feb. 11-17, 2011), *available at* http://s3.amazonaws.com/static.texastribune.org/media/documents/uttt-SummaryDoc-day3.pdf.

Plaintiffs are free to disagree with these conclusions, reached by public servants representing all three branches of the United States government, and the overwhelming majority of Texas voters, but they cannot use their disagreement as evidence that the Texas Legislators who followed those conclusions acted with a racist purpose to suppress the minority vote.  *See, e.g.*, DOJ Compl. at 29 (alleging that the Texas Legislature was "motivated by discriminatory intent" because "voter ID proponents cited virtually no evidence during or after enactment of SB 14 that in-person voter impersonation — the only form of election fraud addressed by the identification requirements of SB 14 — was a serious problem or that the State's then-existing identification procedures had failed to prevent in-person voter impersonation.").

In the face of this deep and sustained support for Voter ID laws, the plaintiffs must offer something more than generalized allegations that irregular procedures were deployed and anti-immigrant views espoused.  DOJ Resp. at 23; MALC Resp. at 26-28; Veasey Resp. at 29; *Compare* Carter-Baker Report at § 2.5 (recommending the use of photo ID for voting), *with* Veasey Compl. ¶ 54 ("A well-known principal of law is that a person, such as these Defendants and the Texas legislature, is presumed to intend the natural consequence of their acts. By that standard, enactment of SB 14 was plainly intended to be racially and ethnically discriminatory.").  These glib allegations are insufficient to survive dismissal under *Twombly*.

### D. By Citing The Holdings And Findings Of A Vacated Preclearance Decision By The U.S. District Court for the District of Columbia, Plaintiffs Invite This Court To Commit Reversible Error.

The plaintiffs extensively rely on holdings and findings of *Texas v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012), which was vacated by the Supreme Court in *Texas v. Holder*, 133 S. Ct. 2886 (2013). *See, e.g.*, DOJ Resp. at 6-7, 11, 14, 16; Veasey Resp. at 27; MALC Resp. at 6; Veasey Compl. ¶¶27-31.  By relying on a district court decision that the Supreme Court vacated, plaintiffs invite reversal. *See United States v. Windsor*, 133 S. Ct. 2675, 2688 (2013) (explaining that when an opinion is vacated, "its ruling and guidance [are] also then erased.").

As the Fifth Circuit has instructed more than once, "[w]hen a judgment is vacated all is effectually extinguished." *Falcon v. General Telephone Co.*, 815 F.2d 317 (1990).  The *Falcon* court chided the appellant for "misconceiving" the nature of

vacatur, and held that "[w]hen the Supreme Court vacated Judge Hughes' decision, it swept away all that was tied to that judgment. This included all findings of fact . . . ." *Id.*

The plaintiffs' short-lived victory in an unconstitutional preclearance action was vacated by the Supreme Court.  Plaintiffs cannot reverse their defeat in the Supreme Court by goading this Court into adopting the District of Columbia's vacated holdings and findings.

IV.   **THE UNITED STATES AND MALC PLAINTIFFS' CLAIMS AGAINST MCGRAW AND THE VEASEY PLAINTIFFS' CLAIMS AGAINST PERRY SHOULD BE DISMISSED.**

The United States and MALC plaintiffs have failed to explain why Steve McCraw is a defendant in this case.  It is true that McCraw has authority over issuing EICs and over the locations and hours of DPS offices, *see* DOJ Resp. at 24-25, but it is not clear why that matters.  The plaintiffs are not seeking a structural injunction to reform Texas's voter ID program.  They are not asking this Court to order DPS to open more offices, to include cameras at more locations, or to stay open longer.  The plaintiffs are seeking a permanent injunction against the requirement that voters show ID at the polls.  What would an injunction against McCraw say?  Even if the Court finds that SB 14's photo ID requirement violates the VRA, the State still would be legally entitled to keep issuing free EICs, so long as the Secretary of State does not enforce the requirement that voters show photo ID at the polls.  Texas should remain free to issue EIC to any citizen who wants one and might prefer to use a photo ID to vote.  In the State's opening brief, we argued that the plaintiffs' claims against the Secretary of State were sufficient to give plaintiffs

19

all the relief they seek.  The plaintiffs' response fails to identify a single remedial action that they are seeking from McCraw.  Their claims against his office must be dismissed.

The Veasey plaintiffs have sued Governor Perry, but they have not shown that his office has any enforcement authority whatsoever under SB 14.  *Okpalobi* instructs that the proper defendant is someone "*specially charged* with the execution of a state enactment alleged to be unconstitutional."  *Okpalobi v. Foster*, 244 F.3d 405, 413 (5th Cir. 2001) (en banc) (emphasis in original).  *Okpalobi* dismissed Louisiana's governor from a lawsuit because he had no connection to the statute other than a generic duty to "take care that the laws are faithfully executed." *Id.* at 413-16.

The Veasey plaintiffs have shown nothing more than this same generic duty to faithfully execute the laws, plus another generic duty, in the Governor's role as "chief budget officer," to compile the entire biennial appropriation budget for the State.   TEX. GOV'T CODE § 401.041.   Nothing in the budget statute "specially charge[s]" the governor with execution or enforcement of SB 14, and the claims against his office must be dismissed.

Respectfully submitted.

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Solicitor General

ARTHUR C. D'ANDREA
RICHARD B. FARRER
JAMES P. SULLIVAN
Assistant Solicitors General

209 West 14th Street
P.O. Box 12548
Austin, Texas  78711-2548
(512) 936-1700

Dated:  December 6, 2013

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendants' reply brief was served via the *CM/ECF system* on December 6, 2013, to:

Armand Derfner
P O Box 600
Charleston, SC 29402
843-723-9804
Email: aderfner@dawlegal.com

Chad W Dunn
Brazil & Dunn
4201 Cypress Creek Pkwy, Ste 530
Houston, TX 77068
281-580-6310 / Fax: 281-580-6362
Email: chad@brazilanddunn.com
COUNSEL FOR PLAINTIFFS JANE HAMILTON, FLOYD CARRIER, ANNA
BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS,
JOHN DOE, JOHN MELLOR-CRUMLEY, DALLAS COUNTY, TEXAS, JANE
DOE, and LEAGUE OF UNITED LATIN AMERICAN CITIZENS

J Gerald Hebert
191 Somervelle Street #405
Alexandria, VA 22304
703-628-4673 / Fax: 703-567-5876
COUNSEL FOR PLAINTIFF MARC VEASEY

Kembel Scott Brazil
Brazil & Dunn
4201 Cypress Creek Parkway Suite 530
Houston, TX 77068
281-580-6310 / Fax: 281-580-6362
Email: scott@brazilanddunn.com

Neil G Baron
914 FM 517 Rd W Suite 242
Dickinson, TX 77539
281-534-2748 / Fax: 281-534-4309
Email: neil@ngbaronlaw.com
COUNSEL FOR PLAINTIFFS JANE HAMILTON, FLOYD CARRIER, ANNA
BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS,
JOHN DOE, JOHN MELLOR-CRUMLEY, DALLAS COUNTY, TEXAS, JANE DOE

Luis Roberto Vera, Jr
111 Soledad Ste 1325
San Antonio, TX 78205
210-225-3300 / Fax: 210-225-2060
Email: lrvlaw@sbcglobal.net
COUNSEL FOR LEAGUE OF UNITED LATIN AMERICAN CITIZENS

Elizabeth S Westfall
US Department of Justice
950 Pennsylvania Ave
NW NWB Rm 7125
Washington, DC 20530
202-305-7766
Email: elizabeth.westfall@usdoj.gov

Daniel J Freeman
US Department of Justice
950 Pennsylvania Ave NW
NWB 7123
Washington, DC 20009
202-305-4355 / Fax: 202-307-3961
Email: daniel.freeman@usdoj.gov

Jennifer L Maranzano
US Department of Justice
Civil Rights Division - Voting Section
950 Pennsylvania Ave, NW - NWB
Washington, DC 20530
800-253-3931
Email: jennifer.maranzano@usdoj.gov

John Albert Smith , III
Office of the US Attorney
800 N Shoreline Blvd  Ste 500
Corpus Christi, TX 78401
361-888-3111 / Fax: 361-888-3200
Email: john.a.smith@usdoj.gov

Meredith Bell-Platts
US Department of Justice
Voting Section - Civil Rights Division
950 Pennsylvania Ave, NW
NWB 7259
Washington, DC 20530

202-305-8051
Email: meredith.bell-platts@usdoj.gov
COUNSEL FOR CONSOLIDATED PLAINTIFF UNITED STATES OF AMERICA

Danielle Conley, Jonathan E Paikin, Kelly Dunbar, Sonya Lebsack
Wilmer Cutler et al
1875 Pennsylvania Avenue NW
Washington, DC 20006
202-663-6703
Email: danielle.conley@wilmerhale.com
Email: jonathan.paikin@wilmerhale.com
Email: kelly.dunbar@wilmerhale.com
Email: sonya.lebsack@wilmerhale.com

Christina A Swarns, Leah Aden, Natasha Korgaonkar, Ryan Haygood
NAACP Legal Defense and Educational Fund, Inc.
40 Rector St 5th Floor
New York, NY 10006
212-965-2200 / Fax: 212-229-7592
Email: cswarns@naacpldf.org
Email: laden@naacpldf.org
Email: nkorgaonkar@naacpldf.org
Email: rhaygood@naacpldf.org
COUNSEL FOR CONSOLIDATED PLAINTIFF TEXAS LEAGUE OF YOUNG
VOTERS EDUCATION FUND and IMANI CLARK

Amy L Rudd
Dechert LLP
300 W 6th St
Suite 2010
Austin, TX 78701
512-394-3000
Email: amy.rudd@dechert.com
COUNSEL FOR CONSOLIDATED PLAINTIFF MEXICAN AMERICAN
LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES, TEXAS
STATE CONFERENCE OF NAACP BRANCHES

Rolando L Rios
115 E Travis Ste 1645
San Antonio, TX 78205
210-222-2102 / Fax: 210-222-2898
Email: rrios@rolandorioslaw.com
COUNSEL FOR TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND
COUNTY COMMISSIONERS

24

Joseph M Nixon
Bierne Maynard & Parsons
1300 Post Oak Blvd
Ste 2500
Houston, TX 77056
713-871-6809
Fax: 713-960-1527
Email: jnixon@bmpllp.com
COUNSEL FOR TRUE THE VOTE

Robert M Allensworth
B14522
BMRCC 251 N IL 37 S
Ina, IL 62846-2419
PRO SE
INTERESTED PARTY

/s/ Jonathan F. Mitchell
Solicitor General