UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, ET AL., | ) | CASE NO: 2:13-CV-00193 |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Corpus Christi, Texas |
| | ) | |
| RICK PERRY, ET AL., | ) | Friday, November 22, 2013 |
| | ) | |
| Defendants. | ) | (1:36 p.m. to 1:56 p.m.) |

TELEPHONIC STATUS HEARING

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE

Appearances:            See Next Page

Court Recorders:        Genay Rogan / Lori Cayce

Clerks:                 Brandy Cortez / Sylvia Syler

Court Security Officer: Adolph Castillo

Transcriber:            Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**TELEPHONIC APPEARANCES FOR:**

Plaintiffs:
    CHAD W. DUNN, ESQ.
    Brazil and Dunn
    4201 Cypress Creek Parkway
    Suite 530
    Houston, TX 77068

    ELIZABETH S. WESTFALL, ESQ.
    U. S. Department of Justice
    950 Pennsylvania Avenue, N.W.
    NWB Room 7125
    Washington, DC 20530

    MEREDITH BELL-PLATTS, ESQ.
    U.S. Department of Justice
    Civil Rights Division - Voting Section
    950 Pennsylvania Avenue, N.W. - NWB
    Washington, DC 20530

    ROLANDO L. RIOS, ESQ.
    115 E. Travis
    Suite 1654
    San Antonio, TX 78205

    JOHN ALBERT SMITH, III, ESQ.
    Office of the U.S. Attorney
    800 N. Shoreline Boulevard
    Suite 500
    Corpus Christi, TX 78401

Defendants:
    JOHN BARRET SCOTT, ESQ.
    Scott, Yung, L.L.P.
    208 N. Market Street
    Suite 200
    Dallas, TX 75202

    JOSEPH M. NIXON, ESQ.
    Beirne, Maynard and Parsons
    1300 Post Oak Boulevard
    Suite 2500
    Houston, TX 77056

**APPEARANCES FOR:**         (CONTINUED)


Movants:                    DANIELLE CONLEY, ESQ.
                            KELLY DUNBAR, ESQ.
                            Wilmer, Cutler, Pickering, et al.
                            1875 Pennsylvania Avenue, N.W.
                            Washington, DC 20006

                            NATASHA KORGAONKAR, ESQ.
                            NAACP Legal Def and Educational
                            Funds, Inc.
                            40 Rector Street
                            5th Floor
                            New York, NY 10006

                            LEAH ADEN, ESQ.
                            RYAN HAYGOOD, ESQ.
                            NAACP Legal Def and Educational
                            Fund, Inc.
                            40 Rector Street
                            5th Floor
                            New York, NY 10006

                            EZRA D. ROSENBERG, ESQ.
                            Dechert, L.L.P.
                            902 Carnegie Center
                            Suite 500
                            Princeton, NJ 08540-6531

1    **Corpus Christi, Texas; Friday, November 22, 2013; 1:36 p.m.**

2                              **(Call to Order)**

3          **THE COURT:**  Court calls Cause Number C-13-193, *Veasey*
4    *et al.* versus *State of Texas, et al.*

5          I apologize for all the confusion today.  Is everyone
6    -- can everyone hear okay or is there still some echoing going
7    on?  It's not going on on our end, on the Court's end.  Are you
8    all -- is anyone having trouble hearing?

9          **MR. RIOS:**  Very minor, your Honor.  We just have a
10   little echo, but I don't think it's --

11         **THE COURT:**  Okay.

12         **MR. RIOS:**  -- it will preclude us from going forward.
13   Not for me.

14         **THE COURT:**  All right.  Well, if there's an issue,
15   just let me know.  And I'm sorry about the time change.  I was
16   flying back from Houston today and we had really bad weather in
17   Corpus, and they wouldn't land the plane.  I almost ended up in
18   Harlingen, but they were finally -- after a couple hours in the
19   air, we finally landed.

20         But, anyway, I had set this status hearing to
21   address, the Defendants filed an advisory a few days ago, and I
22   noticed there were some responses filed yesterday by some of
23   the Plaintiffs.  So I wanted to address that.
24         Mr. Scott, do you want to proceed?  I guess the
25   position of the Defendants is that we prefer a 2015 date.

1  Court has given us a September 2014 date, but that's going to
2  create a problem.  We need something earlier if we're going to
3  do something in 2014, because of the logistical problems it
4  would create regarding the election.  But, if you want to
5  proceed on that, you can, Mr. Scott.
6          **MR. SCOTT:**  As your Honor mentioned very well, I
7  think from a practical standpoint, we're happy to go forward to
8  2014, we just think that that may create a lot of problems for
9  purposes of (Indiscernible).  That we have (indiscernible) as
10 well Court's  consideration.  So if we went in July I think
11 gives everybody sufficient time.  So our position is really not
12 to try and delay the trial, it is -- we're happy to have it go
13 forward earlier, if it's (Indiscernible) at all possible, the
14 problems that the Secretary of State's office (indiscernible)
15 advised.
16         **THE COURT:**  Okay.  Mr. Dunn, I believe, the Veasey
17 Plaintiffs and LULAC Plaintiffs filed a response to that.  Do
18 you want to proceed on your response?
19         **MR. DUNN:**  Thank you, your Honor.  This is Chad.  So,
20 as we predicted in the last hearing when we were talking about
21 the discovery process -- and it crawled and walked and jogged,
22 and run -- as soon your Honor entered the schedule and made
23 clear there's a September 2nd trial date, there was a flurry of
24 activity beginning with discovery, special experts and written
25 discovery and that sort of thing.  And it was very successful,

1  in my opinion, in getting this case moved along.

2         All of that, more or less, came to a stop when the
3  State filed its advisory petition asking for reconsideration of
4  the Court's earlier ruling.

5         Now, to point out, and we do this in the advisory,
6  that there is a couple of lines that the parties were put to
7  the task of working on in their schedule, presenting a Rule 26
8  Report, and none of these arguments had come up in the newest
9  advisory or advanced in any of those documents.

10         And obviously, we've got a difficult case to prepare
11  if we've got to reconsider each issue as we go down the line --
12  it really just doubles the effort on everybody's part,
13  including the Court's resources.  So as to the issue of having
14  the trial in July, we would note that in our advisory we
15  provided some background on the Section 5 case in D.C. where
16  the judges there considered testimony from Mr. Ingraham
17  (phonetic) and other information and determined that their
18  drop-dead date to implement SB-14 was August 30th of that prior
19  November election.  This was after Mr. Ingraham's had asserted
20  the drop-dead was really August 15.

21         So in order to implement the law, the D.C. court has
22  ruled that August 30th is the drop-dead date.  But we've laid
23  out, and we do so succinctly, with a declaration from somebody
24  who actually runs an election.  The individual county actually
25  has the responsibility to run the election.  It's true, they're

1   overseen by the Secretary of State's office but each county

2   does the activities in the election.  And an experienced

3   election administrator has provided a declaration to the Court

4   that demonstrates that if the Court were inclined to grant an

5   order in mid to late September and join the enforcement of SB-

6   14, that order could be given effect with relative ease,

7   especially considering how much easier it is to roll back these

8   extra requirements than it was in the D.C. case to implement

9   them for the first time, train the public and do all those

10  sorts of things that SB-14 is going to require.

11          So we think the Court's schedule is right on track.

12  Our fear is -- and frankly, we had some experience in the D.C.

13  case with the State using the scheduling process to jam up

14  discovery, (Indiscernible) database, sometimes, just things

15  like that, to use the schedule as an advantage in the

16  litigation.

17          And our fear is moving the trial date up to July is

18  an opportunity for the State to abuse some of the same

19  procedures that the D.C. courts tackled with in terms of

20  dilatory discovery behavior, and move up the trial date and so,

21  force the parties to trial without an accurate record.

22          We think the Court's made the right ruling and should

23  stick with it.

24          **THE COURT:**  All right.  Ms. Westfall?

25          **MS. WESTFALL:**  Yes, your Honor.  Thank you.  The

1  United States has now filed a response to the State's advisory
2  last night and we rest on our papers, but I just do want to
3  highlight a few things.  Two points that we made in our
4  response.  First of all, we continue to believe that we're in a
5  trial (Indiscernible) a decision to be issued by August 15,
6  2014, would be extraordinarily prejudicial to the United
7  States' ability to present its case.
8        We believe that the March 2015 trial date would best
9  serve the (Indiscernible) by having a fully developed record on
10 which this Court can make its findings.  And we proposed in our
11 response to the advisory an alternative under which the
12 scheduling order would include a date in either July or August
13 2014 by which the parties could file a motion for preliminary
14 relief, rather than to have a trial appearance at that time.
15       We think that's the best course of action and would
16 meet the needs and interests of all parties and the Court.
17       **THE COURT:**  And Mr. Rios, do you have anything
18 further to add?
19       **MR. RIOS:**  I would just add two comments, your Honor.
20 Obviously we associate ourselves with (indiscernible) client
21 but I would add that when we (indiscernible) on this case, the
22 dilatory tactics were pretty evident in that case in the State
23 of Texas, rather than going through the 60-day (indiscernible)
24 procedure, they went ahead and filed a lawsuit in the
25 (indiscernible) taking nine months.  And this tactic of trying

1  to use the election schedule to their advantage is something
2  that they've done in the past. And in that case backfired
3  (indiscernible) the election date which the Court has the
4  authority to do.
5         I don't believe that in any case this Court would
6  have to do this in this case because the issue in the voter ID
7  is much simpler than the rest of (indiscernible) in, who's what
8  position and so on.  But I've seen the forms that they've made,
9  that the State's made from the Borderline Pena (phonetic)
10 election in Edinburg.  And it's basically the same form we had
11 before (indiscernible) a few squares and box and initial
12 (indiscernible) interest in the names.  And I agree with
13 Mr. Dunn.  Very simple.  All you have to do, if the Court
14 issues an injunction, is let the election administrators know
15 that there's no voter ID required except the same
16 identification which has been in effect for the past years.
17 And I would urge the Court to maintain the decision made by
18 (Indiscernible).
19        **THE COURT:**  All right.  Mr. Nixon, I haven't ruled on
20 your intervention yet, so I guess you're just observing.
21        And is it Mr. Haygood that's going to speak or who's
22 speaking with that group?
23        **MR. HAYGOOD:**  Yes, it is, your Honor.  This is Ryan
24 Haygood --
25        **THE COURT:**  Okay.  Any --

1     **MR. HAYGOOD:** -- for the Texas League of Young
2 Lawyers. Your Honor, we rely on our position with the United
3 States. We do share the concern of the United States that
4 moving the trial date up even earlier than this Court's
5 September 24th date would be prejudicial to our ability to
6 fully explore and flesh out all of our claims and to have
7 evidence necessary to put forward the best case.
8     And we think that the United States' alternative
9 position of offering a preliminary injunction would serve the
10 interest of the parties here best and give an opportunity to
11 weight in there if there was an attempt to stop the
12 implementation of the voter ID message before the November
13 election.
14     **THE COURT:** Yeah. And I think we addressed that at
15 the IPTC already.
16     Mr. Rosenberg, anything further?
17     **MR. ROSENBERG:** No, other than to say that we also
18 support Ms. Westfall's position. I also note that I believe
19 that there's a trial that is going to occur in July or August
20 in the (Indiscernible) case and several of the attorneys who
21 are involved in this case will also will be in that so moving
22 the trial up to July just -- I think it would be not be
23 feasible in any event. So we support the position of the
24 Department of Justice.
25     **THE COURT:** All right. I'll give Mr. Scott the last

1 comments.

2 Anything else, Mr. Scott?

3 **MR. SCOTT:** Sure, your Honor. First would be
4 investigation of any (indiscernible) with the Court
5 (indiscernible) Tuesday or Thursday (indiscernible)
6 disclosures. I would also point out to everyone that there is
7 a South Carolina case that was filed in February of 2012 and
8 was tried in August of 2012. There was complete
9 (indiscernible) and so sometimes less than (indiscernible) 100
10 days the parties were able to (indiscernible) and I think
11 that's what everybody (indiscernible) in this case.

12 So, again, the purpose of our advisory was to inform
13 the Court of the (indiscernible) -- and we think we've done
14 that. We think the best way to avoid that is obviously
15 (indiscernible) but we'll throw it out there for the Court's
16 consideration.

17 **THE COURT:** All right. Court's going to keep the
18 September 2nd 2014 trial date. I do notice there is an issue
19 regarding expert designations. Plaintiffs were -- let's see,
20 proposing that a -- just a general expert report deadline be
21 set with then rebuttal reports and then replies, whereas
22 Defendant was proposing that the Plaintiffs designate their
23 experts, the Defendants would then designate their experts and
24 then the Plaintiffs could file a reply after that.

25 Anything on that from the -- who is going to take the

12

1  lead on that?  Mr. Dunn?  Ms. Westfall?
2          **MR. DUNN:**  This is Chad Dunn, your Honor.  The reason
3  we proposed to do a simultaneous expert designation is first,
4  that's what we did in the Veasey case; but second, since we are
5  trying to get the case done by September, it more or less
6  (indiscernible) 30, 25 days in a schedule to do that.  And
7  everybody knows, more or less what kind of analysis we're going
8  to do now.  Everybody still had an opportunity to do a rebuttal
9  report (indiscernible) so it just allowed (indiscernible) to
10 schedule better (indiscernible) appropriate.
11         **THE COURT:**  All right.  Mr. Scott?
12         **MR. SCOTT:**  Your Honor, (indiscernible) circuit,
13 we're simply asking the Court the right of most (indiscernible)
14 sequential designation of the experts to know who we're
15 responding to so it can (indiscernible) tweaking or to do
16 something different that we have the ability to do that and so
17 we'll (indiscernible) versus the simultaneous that the
18 Plaintiffs are asking.
19         **THE COURT:**  But wouldn't the providing for the
20 rebuttal and then replies kind of allow for that concern?
21         **MR. SCOTT:**  Well, it has this type of (indiscernible)
22 we have no burden (indiscernible) and have to present a report
23 and so that's really kind of what we're trying to avoid, I
24 guess.  One of the big issues is going to be the database
25 action and I think that's something that (indiscernible) the

1   Plaintiffs were offering to do and I think the (indiscernible)

2   as well but the question needs to be Texas is (indiscernible)

3   track to (indiscernible) with anyone on the voter registration

4   versus, for instance, South Carolina which in fact does

5   (indiscernible) that. And so you've got a little bit more

6   (indiscernible) this year. So we would simply ask to have --

7   let it proceed in a normal fashion in (indiscernible) and see

8   whether we want to have an expert to testify.

9   **THE COURT:** Okay. Mr. Dunn, anything further?

10  **MR. DUNN:** No, your Honor.

11  **THE COURT:** All right. I'm going to propose that we

12  set the deadlines for the experts as proposed by the

13  Defendants. So Brandy will set that out in the scheduling

14  order.

15  There was another issue that I had wanted to address

16  at the initial pretrial conference on. I'd like to get your

17  positions on it, and that's regarding the claims that have been

18  asserted. When the initial complaint was filed, we analyzed

19  it, went through it. I was trying to see if there was any

20  claims that were -- that might fall within the three-judge

21  panel. And then since then we've had some consolidated

22  actions. I've allowed, I believe, two interventions; there's

23  been an amended complaint. And I've gone back to analyze some

24  of the claims there. I thought there might be something in the

25  joint plan about this, there was not. Sometimes in another

1  voting rights case I had, the parties filed separate pleading
2  on that, and there's been none of that here.  So I just want to
3  get you-all's position on where we are with the claims and what
4  your position is regarding whether they trigger the three-judge
5  panel.
6            We'll start with Mr. Dunn.
7            **MR. DUNN:**  Yes, your Honor.  This is Chad Dunn.  So
8  typically voting right three-judge panels were brought up in
9  Section 5 abortion cases which now don't apply as a result of
10 the Supreme Court's decision (indiscernible) Shelby County
11 Alabama.  And then the reason the statewide redistricting cases
12 remained (indiscernible) proceeding is because there's a
13 (indiscernible) congressional (indiscernible) challenge the
14 statewide redistricting requires a three-judge court.  To my
15 knowledge and review of all the pleadings in this case, there
16 are no claims that require or allow under the congressional
17 statute the three-judge court so that would be our position.
18           **THE COURT:**  All right.  Ms. Westfall?
19           **MS. WESTFALL:**  Your Honor, I think we agree with
20 Mr. Dunn, but I would ask, based on the ruling that you just
21 made on the expert reports, that you consider extending the
22 time period between the State's expert rebuttal report which is
23 currently set for June 6th, and then the Plaintiffs' reply is
24 on June 13th, which is only a week.  I would ask that, on
25 behalf of the United States, you consider extending that

1  deadline so that we could -- so that the State --

2  **THE COURT:** Okay. What are you asking for, what day?

3  **MS. WESTFALL:** I'm just asking for, instead of May 9,

4  June 6th and June 13th, we would ask for May 9, May 30th, and

5  June 23, and that would make it --

6  **THE COURT:** Okay. Let me just see if there's any

7  objection to that.

8  Any objection to that, Mr. Scott?

9  **MR. SCOTT:** Well, your Honor, (indiscernible) we

10 would prefer (indiscernible) the June 6th date is fine. I have

11 no objection to giving them more time obviously on the reply.

12 **THE COURT:** Any objection from anyone else, any other

13 Plaintiffs? So we're looking at May 9th. I think we stay with

14 June 6th, and do you want June 23rd or June 30th, Ms. Westfall?

15 **MS. WESTFALL:** We are requesting June 23, but we

16 wanted to sort of make it more equitable between the period of

17 time between Plaintiffs' expert report being due and the

18 State's expert report which is why we wanted to move it --

19 **THE COURT:** Well, I know but then we need to make it

20 equitable for the State too. And we have Plaintiffs' expert

21 reports due May 9th. I've given the State of Texas June 6th,

22 that's almost 30 days later, so I think that's appropriate,

23 June 6th. So what are you asking for in terms of the reply?

24 **MS. WESTFALL:** For June 23, your Honor.

25 **THE COURT:** Okay. I don't think there's any

1 objection to that.  If there is, go ahead and speak now.  I
2 don't hear anyone.  So Brandy will set those schedules out.
3         Now, so, no, the United States' position then is that
4 this case has not triggered the claims presented here a three-
5 judge -- the requirement for a three-judge panel.  Correct,
6 Ms. Westfall?
7         **MS. WESTFALL:**  Your Honor, I'm terribly sorry, I'm
8 just trying to coordinate the position of the United States.
9 We are requesting that we have until June 30th --
10        **THE COURT:**  Okay.
11        **MS. WESTFALL:**  -- for the reply report for the expert
12 and my apologies (indiscernible) to talk over you.
13        **THE COURT:**  I'm trying to move on, but that's fine.
14 So we have May 9th, June 6th, and June 30th, correct?
15        **MS. WESTFALL:**  Correct.  My apologies, your Honor.
16        **THE COURT:**  No problem.  I don't hear anyone piping
17 in so I think those are fine.  All right.  I just want to be
18 clear then, Ms. Westfall, the United States' position on three-
19 judge panel?
20        **MS. WESTFALL:**  We don't think it is necessary or
21 warranted here.  We only have our Section 2 claim and so to the
22 extent the parties are weighing in on that issue, we remain --
23 we don't believe that a three-judge court is appropriate here.
24        **THE COURT:**  All right.  Mr. Rios?
25        **MR. RIOS:**  I agree, your Honor, (indiscernible) no

1  reason for a three-judge court as far as we're concerned.
2           **THE COURT:**  Okay.  So you agree.
3           Mr. Haygood?
4           **MR. HAYGOOD:**  Yes, your Honor.  That is our position
5  as well.
6           **THE COURT:**  Okay.  Mr. Rosenberg?
7           **MR. ROSENBERG:**  Yes, we agree.
8           **THE COURT:**  Mr. Scott?
9           **MR. SCOTT:**  I knew you'd get to me.  I was afraid of
10 that.  I don't -- I'm not really prepared to answer that.  I
11 apologize, your Honor.
12          **THE COURT:**  Well, that's okay.  I was going to say,
13 if you-all weren't prepared, I'd certainly give you some time
14 to brief that.  I just -- what I don't want to happen at this
15 point -- because when the lawsuit first came through I went
16 through, we analyzed it, tried to figure out what we needed to
17 do.  I just -- if at any point anyone thinks -- and I'll talk
18 to you in a second, Mr. Scott, about if you want some time to
19 look into it -- that something does trigger that, you-all need
20 to let me know, okay?  Because otherwise I'm going to operate
21 as though we're in the same position we've been from day one.
22          Now, Mr. Scott, you want some time to look into that?
23          **MR. SCOTT:**  Well, I was magically give an answer
24 electronically.  We don't need a three-judge panel.
25          **THE COURT:**  I'm sorry?  I'm sorry, I didn't catch

18

1 that.

2 **MR. SCOTT:** No three-judge panel, I just

3 electronically was given a message.

4 **THE COURT:** Okay. So everyone is in agreement right

5 now. But at any point as we go along our way here, anyone

6 feels differently, please let me know as soon as you can.

7 All right. Then is there anything else to address

8 today? I don't hear any --

9 **MR. SCOTT:** Not from the Defendant, your Honor.

10 **THE COURT:** All right. Well then Brandy will send

11 out the scheduling order. I think you-all had been working

12 back and forth on that and the only issue had been regarding

13 the expert designations. I think we've got that clear. So if

14 nothing else, you're excused. Thank you very much.

15 **(Counsel thank the Court)**

16 **(Proceeding was adjourned at 1:56 p.m.)**

17

18

19

20

21

22

23

24

25

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                December 18, 2013

TONI HUDSON, TRANSCRIBER

EXCEPTIONAL REPORTING SERVICES, INC