**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| MARC VEASEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-00193 (NGR) |
| RICK PERRY, *et al.*, | |
| Defendants. | |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, | |
| Plaintiff-Intervenors, | |
| TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, | Civil Action No. 2:13-cv-00263 (NGR) |
| Plaintiff-Intervenors, | |
| v. | |
| STATE OF TEXAS, *et al.*, | |
| Defendants. | |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al*.,

       Plaintiffs,

  v.

JOHN STEEN, *et al.*,

       Defendants.

Civil Action No. 2:13-cv-00291 (NGR)

**TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *ET AL*.'S
<u>RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

LEGAL AND FACTUAL BACKGROUND ...................................................................2

    A.    The Constitution's Protections of Voting Rights and Guarantee of Equal Protection of the Laws ................................................................2

    B.    Section 2 of the Voting Rights Act ................................................3

    C.    Enactment of SB 14, Section 5 Litigation, and This Proceeding.............................3

STANDARD OF REVIEW ...........................................................................5

ARGUMENT ........................................................................................5

I.    THE TEXAS LEAGUE HAS STANDING AND A CAUSE OF ACTION...........................................5

    A.    The Texas League Has Sufficiently Alleged Prudential Standing..........................6

    B.    The Court Need Not Consider the Texas League's Prudential Standing...............8

    C.    Case Law Establishes that the Texas League Has a Cause of Action ....................9

II.    THE AMENDED COMPLAINT STATES SEPARATE CONSTITUTIONAL CLAIMS..........................9

    A.    Counts 2 and 3 Sufficiently Allege that SB 14 Is Racially Discriminatory...........10

    B.    Count 4 Sufficiently Alleges that SB 14 Unconstitutionally Burdens the Right to Vote......................................................................11

III.    THE AMENDED COMPLAINT STATES A VIOLATION OF SECTION 2 OF THE VRA.................13

CONCLUSION......................................................................................16

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 5

*Association of Community Organizations for Reform Now v. Fowler,*
    178 F.3d 350 (5th Cir. 1999) ..................................................................................... 6

*Burdick v. Takushi,*
    504 U.S. 428 (1992) ................................................................................................ 12

*Campbell v. Louisiana,*
    523 U.S. 392 (1998) ............................................................................................. 7, 9

*Chisom v. Roemer,*
    501 U.S. 380 (1991) ................................................................................................. 3

*Crawford v. Marion County Election Board,*
    472 F.3d 949 (7th Cir. 2007) ..................................................................................... 6

*Crawford v. Marion County Election Board,*
    553 U.S. 181 (2008) ..................................................................................... 3, 12, 13

*Dunn v. Blumstein,*
    405 U.S. 330 (1972) ........................................................................................... 2, 12

*Erickson v. Pardus,*
    551 U.S. 89 (2007) .................................................................................................. 5

*Funeral Consumers Alliance, Inc. v. Service Corporation International,*
    695 F.3d 330 (5th Cir. 2012) ..................................................................................... 8

*Garza v. County of Los Angeles,*
    918 F.2d 763 (9th Cir. 1990) .......................................................................... 2, 10, 11

*Gomillion v. Lightfoot,*
    364 U.S. 339 (1960) ................................................................................................. 2

*Gonzales v. Arizona,*
    677 F.3d 383 (9th Cir. 2012) ................................................................................... 14

*Havens Realty Corp. v. Coleman,*
    455 U.S. 368 (1982) ................................................................................................. 6

*Inclusive Communities Project, Inc.  v. Texas Department of Housing & Community Affairs,*
    No. 3:08-cv-055456, 2008 WL 5191935 (N.D. Tex. Dec. 11, 2008) ..................................... 10

*League of United Latin American Citizens v. Clements,*
    986 F.2d 728 (5th Cir. 1993) ................................................................................15

*Leal v. McHugh,*
    731 F.3d 405 (5th Cir. 2013) ..................................................................................5

*Matrixx Initiatives, Inc. v. Siracusano,*
    131 S. Ct. 1309 (2011)............................................................................................5

*McCormack v. National Collegiate Athletic Association,*
    845 F.2d 1338 (5th Cir. 1988) ...........................................................................7, 9

*Mississippi State Chapter, Operation Push v. Mabus,*
    932 F.2d 400 (5th Cir. 1991) ................................................................................14

*Morse v. Republican Party of Virginia,*
    517 U.S. 186 (1996)................................................................................................9

*National Solid Waste Management Association v. Pine Belt Regional Solid Waste
    Management Authority,*
    389 F.3d 491 (5th Cir. 2004) ..................................................................................8

*National Rifle Association of America v. McCraw,*
    719 F.3d 338 (5th Cir. 2013) ..................................................................................8

*Obama for America v. Husted,*
    697 F.3d 423 (6th Cir. 2012) ................................................................................12

*Powers v. Ohio,*
    499 U.S. 400 (1991)................................................................................................7

*Ruiz v. Estelle,*
    161 F.3d 814 (5th Cir. 1998) ..................................................................................8

*Shelby County v. Holder,*
    131 S. Ct. 2612 (2013)............................................................................................4

*Terrazas v. Clements,*
    581 F. Supp. 1329 (N.D. Tex. 1984) ....................................................................10

*Texas v. Holder,*
    888 F. Supp. 2d 113 (D.D.C. 2012) ..................................................................4, 15

*Thornburg v. Gingles,*
    478 U.S. 30 (1986)............................................................................................3, 13

*Village of Arlington Heights v. Metro Housing Development,*
    429 U.S. 252 (1977)...................................................................................... *passim*

*Voinovich v. Quilter*,
   507 U.S. 146 (1993) .................................................................................. 3

*Washington v. Davis*,
   426 U.S. 229 (1976) .................................................................................. 2

**CONSTITUTIONAL PROVISIONS AND STATUTES**

U.S. Const.
   amend. XIV ................................................................................... *passim*
   amend. XV ................................................................ 1, 2, 3, 9, 10, 15

Voting Rights Act of 1965, 42 U.S.C.
   §§ 1973 *et seq.*. ....................................................................................... 3
   § 1973(a) ................................................................................................. 3
   § 1973a(c) ............................................................................................... 1
   § 1973(b) ................................................................................................. 3
   § 1973b(f)(2) ........................................................................................... 4
   § 1973c(a) ............................................................................................... 4

42 U.S.C. § 1983 ......................................................................................... 7, 9

**OTHER AUTHORITIES**

S. Rep. No. 97-417 (1982) ............................................................................ 3

DOJ Objection Letter 2011-2775 (Mar. 12, 2012) ...................................... 4

Federal Rules of Civil Procedure
   12(b)(1) ................................................................................................... 5
   12(b)(6) ................................................................................................... 5
   15(a) ........................................................................................................ 1

This case raises statutory and constitutional challenges to the racially discriminatory purpose and effect of Texas's photographic voter identification law on Black voters and other voters of color in the state. Specifically, the Texas League of Young Voters Education Fund and registered Black voters Imani Clark, Aurica Washington, Crystal Owens, and Michelle Bessiake (collectively "Plaintiff-Intervenors") allege that SB 14, Texas's restrictive voter ID law, denies and abridges the fundamental right to vote on account of race or color in violation of Section 2 of the Voting Rights Act; that SB 14 was enacted with a discriminatory purpose in violation of the Fourteenth and Fifteenth Amendments of the Constitution; and that SB 14 imposes severe and unjustified burdens on the voting rights of all voters in Texas lacking the required IDs in violation of the Fourteenth Amendment. Plaintiff-Intervenors therefore seek a declaratory judgment and an injunction against the enforcement of SB 14, and relief under Section 3(c) of the Voting Rights Act, 42 U.S.C. § 1973a(c). *See, e.g.*, Am. Compl. ¶¶ 1-4, 126 (ECF No. 73). Plaintiff-Intervenors respectfully submit this opposition to the motion to dismiss filed by Defendants the State of Texas, John Steen, and Steve McCraw, who are sued in their official capacities as Texas Secretary of State and Director of the Texas Department of Public Safety, respectively (collectively "Texas").[1]

---

[1]     The Court granted Plaintiff-Intervenors' motion to intervene (ECF No. 29) and docketed their complaint on September 20, 2013 (ECF No. 30). Texas moved to dismiss that and other complaints on October 25, 2013 (ECF No. 52) ("Texas Br."). In response, on November 14, 2013, Plaintiff-Intervenors filed an Amended Complaint (ECF No. 73) as of right under Federal Rule of Civil Procedure 15(a), giving Texas fourteen days to answer or to file a renewed motion to dismiss. Texas missed that deadline. On December 11, 2013, this Court granted Texas's unopposed motion to move out of time to dismiss the Amended Complaint (ECF No. 114), giving Plaintiff-Intervenors until January 2, 2014, to file this opposition. In its renewed motion to dismiss, Texas simply moved to dismiss "[f]or all the reasons explained in the State's original motion." Defs.' Mot. To Dismiss, at 2 (ECF No. 116) (incorporating prior motion). Because Texas failed to revise its prior arguments in light of Plaintiff-Intervenors' Amended Complaint, many of Texas's points have limited or no application to that complaint, as explained here.

## LEGAL AND FACTUAL BACKGROUND

A.     **The Constitution's Protections of Voting Rights and Guarantee of Equal Protection of the Laws**

This case involves the Constitution's protection of the right to vote, its prohibition on racial discrimination, and the intersection of the two.  The Fifteenth Amendment ensures that the right to vote "shall not be denied or abridged … by any State on account of race" or "color," and empowers Congress "to enforce" that mandate "by appropriate legislation."  U.S. Const. amend. XV; *see Gomillion v. Lightfoot*, 364 U.S. 339, 341 (1960).  The Fourteenth Amendment also proscribes laws enacted with a racially discriminatory purpose, including state laws that affect voting rights.  *See Washington v. Davis*, 426 U.S. 229, 241-242 (1976).  A law need not be enacted "solely [for] racially discriminatory purposes" to violate the Constitution; *Village of Arlington Heights v. Metro Housing Development*, 429 U.S. 252, 265 (1977); it is enough that "a discriminatory purpose [was] a motivating factor" in enacting the law, *id.* at 265-266.  Moreover, a finding of "intentional discrimination" does not require racial ill-will or "invidious motive." *Garza v. County of Los Angeles*, 918 F.2d 763, 778 & n.1 (9th Cir. 1990) (Kozinski, J., concurring and dissenting in part).  If a law is enacted with an intent to place unequal burdens on members of a minority group, that is sufficient.  *Id.*

The Constitution independently limits states' ability to enact voting restrictions that unequally affect voters, regardless of race.  "[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction."  *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972).  The constitutional guarantee of "equal protection" ensures that any "statute[] distributing the franchise" in a disparate manner receives "strict review."  *Id.* at 337.  Thus, "'before th[e] right (to vote) can be restricted, the purpose of the restriction and the

assertedly overriding interests served by it must meet close constitutional scrutiny.'"  *Id*. at 336; *accord Crawford v. Marion Cnty. Election Bd*., 553 U.S. 181, 189-191 (2008).

### B.        Section 2 of the Voting Rights Act

Pursuant to its constitutional authority to enforce the guarantees of the Fourteenth and Fifteenth Amendments, Congress enacted the Voting Rights Act of 1965 ("VRA"), 42 U.S.C. 1973 *et seq.*, "for the broad remedial purpose of ridding the country of racial discrimination in voting," *Chisom v. Roemer*, 501 U.S. 380, 403 (1991) (internal quotation marks and alterations omitted).  Section 2 of the VRA prohibits a state from adopting any voting practice that "results in a denial or abridgement of the right of any citizen … to vote on account of race or color."  42 U.S.C. § 1973(a).  Congress specified that such a denial or abridgment occurs when, "based on the totality of circumstances, it is shown that the political processes … are not equally open to participation by [minority groups] in that its members have less opportunity than other members of the electorate to participate in the political process."  *Id.* § 1973(b).  Section 2 thus reaches voting practices that, "'interact[ing] with social and historical conditions,' impair[] the ability of a protected class" to participate in the political process on an equal basis.  *Voinovich v. Quilter*, 507 U.S. 146, 153 (1993) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986)).[2]

### C.        Enactment of SB 14, Section 5 Litigation, and This Proceeding

In 2011, against the backdrop of substantial growth in Texas's communities of color— and in particular, the growth of Black and Latino communities—and with virtually no evidence that its then-current voter ID law was inadequate to prevent in-person voter impersonation or to

---

[2]        Congress "spell[ed] out" the standard it "intended to codify" in the accompanying Senate Report by providing a list of non-exclusive factors that should inform a court's evaluation of the totality of the circumstances, including a history of official discrimination in a state; the extent to which minorities face the effects of discrimination in areas such as education, employment, and health that affect their ability to participate in the political process; and the extent to which voting is racially polarized.  S. Rep. No. 97-417, at 27, 28-29 (1982).

ensure electoral integrity, Texas enacted SB 14, one of the most restrictive photo ID laws for in-person voting in the country.  Am. Compl. ¶¶ 45, 52-53.

At that time, Texas was required to comply with Section 5 of the VRA, 42 U.S.C. §§ 1973c(a), 1973b(f)(2), which required it to obtain preclearance from the Attorney General or a three-judge panel of the U.S. District Court for the District of Columbia for any changes to its voting procedures.  Texas first sought administrative preclearance for SB 14.  Am. Compl. ¶¶ 69-70.  The Attorney General denied Texas's request, finding that Texas had not shown that SB 14 would not be retrogressive with respect to Latino registered voters, and also finding that Texas had not provided any data as to the law's effect on African-American registered voters.  *Id.* ¶ 71.[3]  Texas next sought judicial preclearance.  *Id.* ¶ 72.  The three-judge court, after holding a week-long trial, unanimously denied preclearance, holding that SB 14 "'imposes strict, unforgiving burdens on the poor, and racial minorities in Texas [who] are disproportionately likely to live in poverty,'" *id.* ¶ 78 (quoting *Texas v. Holder*, 888 F. Supp. 2d 113, 144 (D.D.C. 2012)).

Texas's appeal of that decision was pending when the U.S. Supreme Court invalidated Section 4(b) of the VRA, rendering the preclearance process inoperative.  *Shelby County v. Holder*, 131 S. Ct. 2612, 2631 (2013).  Within hours of that decision, Texas announced that it would begin enforcing SB 14 despite both the Attorney General's and the three-judge court's

---

[3]    The Attorney General explained: "Even after submitting the data that show over 600,000 registered voters do not have either a driver's license or personal identification card issued by [the Texas Department of Public Safety ("DPS")]—and that a disproportionate share of those registered voters are Hispanic—the state has failed to propose, much less adopt, any program for individuals who have to travel a significant distance to a DPS office, who have limited access to transportation, or who are unable to get to a DPS office during their hours of operation.  This failure is particularly noteworthy given Texas's geography and demographics, which arguably make the necessity for mitigating measures greater than in other states."  DOJ Objection Letter 2011-2775, at 5 (Mar. 12, 2012).

findings as to its likely discriminatory effect on Black and other voters of color.  Am. Compl. ¶ 82.

Plaintiff-Intervenors brought this suit following Texas's decision to enforce SB 14.

## STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff "need only allege 'enough facts to state a claim to relief that is plausible on its face.'"  *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1322 n.12 (2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must accept all factual allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and where the complaint's "factual content … allows the court to draw the reasonable inference that the defendant is liable," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the motion to dismiss should be denied.  *See Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) ("'a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted'" (citation omitted)).

## ARGUMENT

Texas moves to dismiss the Texas League of Young Voters Education Fund (the "Texas League") from the case under Federal Rule of Civil Procedure 12(b)(1), and to dismiss Plaintiff-Intervenors' Amended Complaint for failure to state a claim under Rule 12(b)(6).  Texas's motion should be denied in all respects.[4]

## I.   THE TEXAS LEAGUE HAS STANDING AND A CAUSE OF ACTION.

Texas does not challenge the Article III standing of either the individual Plaintiff-Intervenors or the Texas League, but instead argues that organizational plaintiffs in the consolidated cases generally—including, presumably, the Texas League—lack prudential

---

[4]     Plaintiff-Intervenors incorporate by reference relevant arguments made by other plaintiffs and plaintiff-intervenors (*see* U.S. Opp., ECF No. 92 (Nov. 22, 2013); Veasey-LULAC Opp., ECF No. 91 (Nov. 22, 2013); and NAACP/MALC Opp., ECF No. 88 (Nov. 22, 2013)).

standing and are thus barred from enforcing the voting rights of their constituents and other voters in Texas.  *See* Texas Br. 9-16.  Texas's erroneous assertions regarding prudential standing, however, fail to address the Texas League's well-pleaded allegations, which satisfy the conditions for third-party standing.  Moreover, the Texas League's standing is not relevant in any event because the United States and individual Plaintiff-Intervenors have standing.  Texas's related contention that the Texas League lacks a cause of action fails for similar reasons.

A.      **The Texas League Has Sufficiently Alleged Prudential Standing.**

An "organization has standing [under Article III] where it devotes resources to counteract a defendant's allegedly unlawful practices."  *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 360 (5th Cir. 1999); *see also, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 368, 378-379 (1982); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd* 553 U.S. 181 (2008).  Here, there is no dispute that the Texas League has pleaded sufficient facts to establish Article III standing.  Among other things, "[e]nsuring that young voters have access to, and fully participate in, the electoral process" is one of the Texas League's "central aim[s]."  Am. Compl. ¶ 28.  However, "[b]ecause of … SB 14," the Texas League is "forced to divert its limited resources (financial and other) from fulfilling its core mission of registering and mobilizing young people of color to vote and to, instead, helping its existing base of voters secure one of SB 14's required photo IDs."  *Id.* ¶ 30; *see* ¶¶ 28-32.  That the Texas League has had to—and will continue to—devote significant resources to countermand the discriminatory effects of SB 14 is sufficient under *Fowler* and other precedent to provide Article III standing.

In response, Texas maintains that the Texas League lacks standing as a *prudential* matter on the theory that the organization seeks to vindicate the voting rights of third parties—here, the rights of young voters in Texas who have been and will continue to be denied the opportunity to vote as a result of SB 14.  *See* Texas Br. 9-12; Reply Br. 6-10 (ECF No. 108).  As Texas

concedes, however, that prudential bar is inapplicable where (1) the plaintiff itself has suffered an injury-in-fact; (2) the plaintiff has a "close relationship" to the third-party; and (3) the third party is hindered in asserting its own rights.  *Campbell v. Louisiana*, 523 U.S. 392, 398 (1998); *see McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988) (applying same rule to § 1983 litigation); Reply Br. 6-7 (citing these standards).

Each requirement is satisfied here by allegations in the Amended Complaint, none of which Texas addresses.  *First*, there is no dispute that the Texas League has pleaded an injury-in-fact.  *See supra* p. 6.  *Second*, the Texas League has alleged a "close relationship" with its constituents:  The Texas League shares with young voters in Texas a common, compelling interest in ensuring full and fair access to the electoral process.  *See* Am. Compl. ¶¶ 28, 34. Indeed, that is a core mission of the Texas League.  *Id*.; *see Campbell*, 523 U.S. at 398 (defendant and excluded juror had sufficiently close relationship to allow defendant to enforce rights of juror because both share a "common interest in eliminating discrimination").

*Finally*, the Texas League has alleged that "[p]ractical obstacles prevent … [its] constituents—college-enrolled young people of color, non-college-enrolled young people of color, and low-income young people"—from bringing suit in their own right.  Am. Compl. ¶ 35. Such voters lack the "financial and other resources that litigation requires."  *Id*.  These allegations are plausible and credible:  Given the complex, time-consuming, and often prohibitively expensive nature of Section 2 and constitutional litigation, young voters of color and student voters in Texas are unlikely to possess the substantial resources needed to pursue litigation to protect their voting rights.  *See Campbell*, 523 U.S. at 398 (excluded juror was hindered from bringing suit by the "economic burdens of litigation and the small financial reward available"); *see also Powers v. Ohio*, 499 U.S. 400, 414 (1991).

**B.      The Court Need Not Consider the Texas League's Prudential Standing.**

Although the Texas League has sufficiently pleaded prudential standing, this Court ultimately need not address the issue.  It is well settled that an intervenor need not independently have standing if it seeks the same "ultimate relief" as another party that does have standing.  *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998).  Here, the Texas League seeks the same relief as the United States—a permanent injunction against the enforcement of SB 14.  *Compare* Am. Compl. ¶ 127, *with* U.S. Compl. (*United States v. Texas*, No. 13-263, ECF No. 1) ¶ 4 & Prayer For Relief.  The Texas League thus does not need independent standing to participate fully in this lawsuit.  *See Ruiz*, 161 F.3d at 830-833; *Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 501 n.18 (5th Cir. 2004); *see also Arlington Heights*, 429 U.S. at 264 (similar).[5]

Texas's reliance (Br. 4, n.1; Reply Br. 9-10) on *National Rifle Association of America v. McCraw*, 719 F.3d 338, 344 n.3 (5th Cir. 2013), is not to the contrary.  The Fifth Circuit in *NRA* acknowledged the general rule that courts have "license to *avoid* complex questions of standing … where the standing of others makes a case justiciable."  719 F.3d at 344 n.3.  Only where a standing defect is patent—as was the case for two plaintiffs in *NRA* who challenged a law applicable to persons 18 to 20 years' old but who had turned 21 during the suit—must a court dismiss a party.  Such a defect is simply not present here (and certainly not obviously so), where the Texas League has sufficiently pleaded its standing to bring suit.

---

[5]      Moreover, the Texas League seeks the same relief as the individual Plaintiff-Intervenors (Ms. Clark, Ms. Washington, Ms. Owens, and Ms. Bessiake), rendering evaluation of the Texas League's standing particularly unnecessary.  All four individuals allege an injury-in-fact that is directly traceable to SB 14 and that would be redressed if SB 14 is enjoined.  *See Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 336 (5th Cir. 2012) (reciting Article III requirements); Am. Compl. ¶¶ 9, 10, 12, 14, 15, 17, 19, 20, 22, 24-25, 27.

### C.   Case Law Establishes that the Texas League Has a Cause of Action.

Texas also argues (Br. 12-16) that the private organizational plaintiffs—including, presumably, the Texas League—"have no cause of action to challenge" SB 14 under Section 2 of the VRA or 42 U.S.C. § 1983.  This line of argument is easily rejected.

To begin, Supreme Court precedent establishes that private parties have a cause of action under Section 2—a point that Texas concedes.  *See* Texas Br. 13 n.2; *see also Morse v. Republican Party of Virginia*, 517 U.S. 186, 232 (1996); NAACP/MALC Opp. 16-18 (collecting authority).  In addition, Section 1983 plainly creates a right of action.  *See* 42 U.S.C. § 1983.

Those rights of action also extend to organizations, in appropriate circumstances. Nothing in the text, structure, or purpose of Section 2 or Section 1983 supports Texas's contention that the causes of action are limited to *individual* plaintiffs.  Texas's cause-of-action argument (Br. 13, 15) is simply a restatement of its third-party standing objection.  As explained above, that objection is meritless:  Well-established authority holds that a party may bring a civil rights claim on behalf of a third party where, as here, *see supra* pp. 6-7, the conditions for third-party standing are satisfied.  *See, e.g.*, *Campbell*, 523 U.S. at 398; *McCormack*, 845 F.2d at 1341; *Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, No. 3:08-cv-055456, 2008 WL 5191935, at *6 (N.D. Tex. Dec. 11, 2008).

## II.   THE AMENDED COMPLAINT STATES SEPARATE CONSTITUTIONAL CLAIMS.

Plaintiff-Intervenors' Amended Complaint alleges that SB 14 violates the Constitution in two respects.  Counts 2 and 3 of the Amended Complaint allege that SB 14 is racially discriminatory in violation of the Fourteenth and Fifteenth Amendments.  Count 4 alleges that, apart from the statute's racially discriminatory purpose, SB 14 imposes concrete, severe, and unjustified burdens on certain Texas voters' right to vote in violation of the Fourteenth Amendment.  Each count properly sets forth viable constitutional claims.

### A.     Counts 2 and 3 Sufficiently Allege that SB 14 Is Racially Discriminatory.

The Amended Complaint sufficiently alleges that racial discrimination was a "motivating factor" in the enactment of SB 14 in violation of the Fourteenth and Fifteenth Amendments. *Arlington Heights*, 429 U.S. at 265-266.  The Supreme Court has identified several types of evidence that, in addition to direct evidence, bear on whether racial discrimination is a motivating factor in a law's enactment.  For example, "[t]he impact of the official action"—"whether it bears more heavily on one race than another"—may provide "an important starting point" for identifying discriminatory intent.  *Id.* at 266 (internal quotation marks and citation omitted).  Other sources of evidence include, "[t]he historical background of the decision," "[t]he specific sequence of events leading up to the challenged decision," and "[d]epartures from the normal procedural sequence[s]."  *Id.* at 267.

Here, Plaintiff-Intervenors' Amended Complaint contains numerous well-pleaded allegations that race was a motivating factor in the enactment of SB 14.[6]  Among other allegations, Plaintiff-Intervenors have alleged that the racially discriminatory effect of SB 14 on Black and other voters of color was entirely foreseeable (Am. Compl. ¶¶ 54-68); that the legislature's alleged justification for the law was tenuous (*id.* ¶ 113); that the enactment of SB 14 took place against a backdrop of substantial growth in Texas's communities of color (*id.* ¶¶ 45, 52-53); that exclusionary and irregular procedures were used to enact SB 14 (*id.* ¶¶ 48-50); that Texas has a long history of intentional state-sponsored discrimination against its citizens of color (*id.* ¶¶ 86-94); that SB 14 was passed by the same legislature found to have engaged in

---

[6]     A demonstration of discriminatory intent is also sufficient, although unnecessary, to establish a violation of Section 2.  *See e.g.*, *Terrazas v. Clements*, 581 F. Supp. 1329, 1347 (N.D. Tex. 1984) (three-judge panel) (applying *Arlington Heights* factors to a Section 2 purpose analysis); *see also Garza*, 918 F.2d at 771.  Thus, once the Court concludes that Plaintiff-Intervenors have sufficiently alleged Counts 2 and 3, it follows that Plaintiff-Intervenors have sufficiently alleged a claim under Section 2 (Count 1).

intentional, racially invidious practices in statewide redistricting (*id*. ¶¶ 97-102); and that race, color, and membership in a language minority group continue to be determinative factors in citizens' access to Texas's political process (*id*. ¶ 103 (listing factors)).  *See generally id*. ¶¶ 110, 113, 116 (summarizing allegations).  These detailed and specific allegations, to which Texas offers no rebuttal in its motion to dismiss, fully plead the constitutional violations alleged.

In response, Texas objects that it is not plausible that SB 14 is a "racist law" or that it was enacted by "racists."  Texas Br. 28, 29.  But these characterizations misapprehend the nature of the constitutional inquiry.  Plaintiff-Intervenors need not allege (much less prove) that SB 14 is a "racist law" without any conceivably legitimate purpose, or that all of SB 14's proponents had "racially nefarious" motives.  *Id*.  "Rarely can it be said that a legislature … made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one."  *Arlington Heights*, 429 U.S. at 265.  The Constitution therefore proscribes not only laws based "solely on racially discriminatory purposes," but also those where race was a "motivating factor."  *Id.*; *see supra* p. 2.  Moreover, a finding of "intentional discrimination" does not require a finding of "invidious motive."  *Garza*, 918 F.2d at 778 & n.1 (Kozinski, J., concurring and dissenting in part).  An intentional decision to impose disparate burdens on minority voters is sufficient, *id.*, and that—at a minimum—is what Plaintiff-Intervenors have alleged here, *see* Am. Compl. ¶¶ 113, 116.

## B.    Count 4 Sufficiently Alleges that SB 14 Unconstitutionally Burdens the Right to Vote.

Count 4 alleges that SB 14 imposes a severe and unequal burden on a class of potential Texas voters (for example, voters without a form of photo ID required by SB 14), and that this severe burden is not justified by a sufficient counterbalancing state interest.  *See* Am. Compl. ¶¶ 117-125.  These allegations state a violation of the Fourteenth Amendment wholly apart from

SB 14's racially discriminatory intent or effect. *See, e.g.*, *Obama for America v. Husted*, 697 F.3d 423, 429-436 (6th Cir. 2012) (holding that the Equal Protection Clause requires balancing when a law "places restrictions on the right to vote," and that defendants failed to establish sufficient justifications for burdens imposed by limiting in-person early voting); *see also Dunn*, 405 U.S. at 336-337; *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (courts must weigh "the character and magnitude of the asserted injury" against the "precise interests put forward by the State ... taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights" (internal quotation marks omitted)).

In response, Texas appears to argue that the Supreme Court's decision in *Crawford* categorically bars constitutional challenges to voter ID laws. *See e.g.*, Texas Br. 19, 30; Reply Br. 11.[7] This is an implausible reading of *Crawford.* The plurality in *Crawford* held that "the evidence in the record" with respect to the impact of Indiana's voter identification law on "*all* Indiana voters" was "[in]sufficient to support [plaintiffs'] facial attack." 553 U.S. at 189, 203. Indeed, the plurality acknowledged that the Indiana law might have a more severe burden on a "limited number of persons"—including those for whom obtaining an ID would be "economic[ally]" or practically difficult—but that the thin record before the *Crawford* Court did not permit a "quantif[ication]" of "the magnitude of the burden" sufficient to support "invalidat[ing] the statute in all its applications." *Id.* at 199-200; *see* U.S. Opp. 15-16. *Crawford* thus does not foreclose Plaintiff-Intervenors' claim, which alleges that SB 14 imposes a severe (and racially discriminatory) burden on a class of vulnerable voters that cannot be justified by a countervailing state interest, *see* Am. Compl. ¶¶ 52-53, 57-68, 117-125—allegations that

---

[7]    In moving to dismiss the Amended Complaint, Texas acknowledged (ECF No. 116, at 2) Plaintiff-Intervenors' burden-based Fourteenth Amendment claim but offered no argument as to why the claim should be dismissed at the pleading stage.

Plaintiff-Intervenors will prove through discovery and at trial.  Texas's contentions (Br. 19-20; Reply Br. 12) that preventing voter fraud is a legitimate state interest, and that SB 14 is less severe in certain respects than the Indiana law, do not speak to whether Texas will be able to show that the "'precise interests'" it seeks to advance justify the severity and nature of the burden that *this* law imposes on *this* class of Texas voters.  *Crawford*, 553 U.S. at 203.  These fact-intensive issues cannot be resolved against Plaintiff-Intervenors at the pleading stage.

III.   **THE AMENDED COMPLAINT STATES A VIOLATION OF SECTION 2 OF THE VRA.**

"The essence of a § 2 claim is that a certain electoral law … interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters" to participate in the electoral process.  *Gingles*, 478 U.S. at 47.  Whether a challenged practice violates Section 2 is based on a review of "the 'totality of the circumstances,'" in light of the Senate Factors—"a searching practical evaluation of the past and present reality and … a functional view of the political process."  *Id.* at 43, 45 (citations and internal quotation marks omitted); *see supra* p. 3 & n.2 (discussing Senate Factors); *see also* U.S. Opp. 8-10; NAACP/MALC Opp. 19-20.  A showing of discriminatory intent is not required to prove a Section 2 claim.  *See Gingles*, 478 U.S. at 35 ("discriminatory effect alone" is sufficient for a Section 2 violation); U.S. Opp. 19.

Plaintiff-Intervenors have adequately pleaded a Section 2 violation under these controlling standards.  Owing to the enduring effects of historical discrimination as well as the persistence of present-day inequalities in housing, education, and employment, Black and other voters of color disproportionally lack the limited forms of photo IDs required by SB 14 (Am. Compl. ¶ 57), and are disproportionally burdened in their ability to obtain an Election Identification Certificate ("EIC") (*id.* ¶ 59).  *See also id.* ¶¶ 109-110 (summarizing allegations).

Plaintiff-Intervenors further allege that the disparities in ownership of the IDs required by SB 14 are caused by state-sponsored racial discrimination and arise in an electoral context that has been infected by a history of such official discrimination persisting into the modern day; that racial discrimination undermines full participation of voters of color in Texas's electoral process; that the Texas state legislature is generally unresponsive to minority concerns, including during the consideration of SB 14 (Am. Compl. ¶ 50); and that electoral campaigns are marked by racial appeals and by racially polarized voting (*id.* ¶ 110).   Taken separately or read together, these allegations, accepted as true, amply state a claim for violation of Section 2.   *See Mississippi State Chapter, Operation Push v. Mabus*, 932 F.2d 400, 405 (5th Cir. 1991) (affirming a finding of a Section 2 violation based on the "totality of the circumstances").[8]

Texas advances two main arguments for the dismissal of Plaintiff-Intervenors' Section 2 claim, each of which the Court should reject.   *First*, Texas contends that SB 14 does not "deny" or "abridge" the right to vote under Section 2 because SB 14 provides for a "free [EIC]."   Reply Br. 11; *see* Texas Br. 18-20.   But as Plaintiff-Intervenors allege and will prove at trial, an EIC is not "free" (Am. Compl. ¶¶ 60-68), and, additionally, the process of obtaining one is more burdensome for Black and other voters of color than for white voters.   *See* Am. Compl. ¶¶ 59-60, 76-78; *see also* U.S. Opp. 11.   Texas's related argument (Br. 19-20)—that to be cognizable under Section 2, a burden must be *impossible* to overcome—is equally without merit.   As governing case law makes clear, a challenged law must "hinder [minority] citizens' ability to participate in the political process" to violate Section 2.   *Operation Push*, 932 F.2d at 409; *see also* U.S. Opp.

---

[8]     Texas cites (Reply Br. 15-16) *Gonzales v. Arizona*, 677 F.3d 383 (9th Cir. 2012), but *Gonzales* requires nothing more than that "based on the totality of the circumstances, ... the challenged voting practice results in discrimination on account of race," *id.* at 405.

12-15 (citing cases); NAACP/MALC Opp. 23-24 (same); *Texas v. Holder*, 888 F. Supp. 2d 113, 124 (D.D.C. 2012) (rejecting similar argument).

*Second*, Texas argues (Br. 21-28) that laws that merely "have a disparate impact … fail to allege a [S]ection 2 violation" and, if that were not so, "grave constitutional concerns" would arise.  Texas's constitutional theory is unconvincing,[9] but the Court need not address the theory because it rests on a misstatement of Plaintiff-Intervenors' allegations.  The Amended Complaint does not allege a Section 2 claim based solely on SB 14's disparate impact.  It instead alleges that SB 14 reflects intentional discrimination, and that existing racial disparities in ownership of the photo IDs required by SB 14 arise from and result in discrimination on account of race— which violates Section 2.  The latter claim is not based on a mere statistical disparity, but is based on a number of factors that inform the Section 2 inquiry.  *See* Am. Compl. ¶ 110 (summarizing allegations); *supra* p. 3 n.2 (discussing Senate Factors).  Whether Section 2 would "violate[] the Constitution" (Texas Br. 27) if it applied to a voting law that merely caused a racially disparate impact is therefore not presently before the Court.[10]

---

[9]    Texas's narrow reading of the scope of Congress's enforcement powers under the Fifteenth Amendment has been rejected by authority binding on this Court.  *See League of United Latin Am. Citizens v. Clements*, 986 F.2d 728, 760 (5th Cir. 1993) ("[T]he Supreme Court [has] summarily rejected the argument that Section 2 … 'exceeds the power vested in Congress by the Fifteenth Amendment.'" (quoting *Miss. Republican Exec. Comm. v. Brooks*, 469 U.S. 1002 (1984)); U.S. Opp. 19-20 (noting unanimity in the courts on this question).

[10]    For the reasons stated by the United States (Opp. 24-25) and others (NAACP/MALC Opp. 28), the Amended Complaint properly asserts claims against Mr. McCraw.

## CONCLUSION

For the foregoing reasons, the Court should deny Texas's motion to dismiss Plaintiff-Intervenors' Amended Complaint.  Pursuant to Local Rule 7.4(d), a proposed order denying the State's motion is attached.

December 30, 2013

Respectfully Submitted,

/s/ Ryan P. Haygood
Sherrilyn Ifill
  *Director-Counsel*
Christina A. Swarns
Ryan P. Haygood
  *Attorney-in-Charge*
Natasha M. Korgaonkar
Leah C. Aden
NAACP Legal Defense and Education Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006
Tel:  (212) 965-2200
Fax:  (212) 226-7592


Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
Gerard Sinzdak
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel:  (202) 663-6000
Fax:  (202) 663-6363


*Counsel for Texas League of Young Voters, et al.,*
*Plaintiff-Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2013, I served a true and correct copy of the foregoing via the Court's ECF-system on the following counsel of record:

Armand Derfner
P.O. Box 600
Charleston, SC 29402
843-723-9804
Email: aderfner@dawlegal.com

Chad W. Dunn
Brazil & Dunn
4201 Cypress Creek Pkwy, Ste. 530
Houston, TX 77068
281-580-6310 / Fax: 281-580-6362
Email: chad@brazilanddunn.com

J. Gerald Hebert
191 Somervelle Street #405
Alexandria, VA 22304
703-628-4673
Email: ghebert@campaignlegalcenter.org

Kembel Scott Brazil
Brazil & Dunn
4201 Cypress Creek Pkwy, Ste. 530
Houston, TX 77068
281-580-6310
Email: scott@brazilanddunn.com

Neil G. Baron
914 FM 517 Rd. W. Suite 242
Dickinson, TX 77539
281-534-2748
Email: neil@ngbaronlaw.com

Luis Roberto Vera, Jr.
111 Soledad, Ste. 1325
San Antonio, TX 78205
210-225-3300
Email: lrvlaw@sbcglobal.net

*Counsel for Veasey-LULAC Plaintiffs*

Elizabeth S. Westfall
US Department of Justice
950 Pennsylvania Ave. NW
NWB 7125
Washington, DC 20530
202-305-7766
Email: elizabeth.westfall@usdoj.gov

Daniel J. Freeman
US Department of Justice
950 Pennsylvania Ave. NW
NWB 7123
Washington, DC 20009
202-305-4355
Email: daniel.freeman@usdoj.gov

Jennifer L. Maranzano
US Department of Justice
Civil Rights Division – Voting Section
950 Pennsylvania Ave. NW – NWB
Washington, DC  20530
800-253-3931
Email: jennifer.maranzano@usdoj.gov

John Albert Smith, III
Office of the US Attorney
800 N. Shoreline Blvd. Ste. 500
Corpus Christi, TX 78401
361-888-3111
Email: john.a.smith@usdoj.gov

Meredith Bell-Platts
US Department of Justice
Voting Section – Civil Rights Division
950 Pennsylvania Ave. NW
NWB 7259
Washington, DC  20530
202-305-8051
Email: meredith.bell-platts@usdoj.gov

Anna Baldwin
US Department of Justice
950 Pennsylvania Ave. NW
NWB 7125
Washington, DC 20530
202-305-4278
Email: anna.baldwin@usdoj.gov

Robert S. Berman
US Department of Justice
950 Pennsylvania Ave. NW
NWB Rm 7125
Washington, DC 20530
202-514-8690
Email: Robert.berman@usdoj.gov

Bruce Gear
US Department of Justice
1800 G St. NW
Washington, DC 20006
202-353-0419
Email: bruce.gear@usdoj.gov

*Counsel for Plaintiff United States of America*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
300 W. 6th St.
Suite 2010
Austin, TX 78701
512-394-3000
Email: amy.rudd@dechert.com
Email: ezra.rosenberg@dechert.com

Michelle Yeary
Dechert LLP
902 Carnegie Ctr.
Ste. 500
Princeton, NJ 08540-6531
609-955-3277
Email: michelle.yeary@dechert.com

Wendy Weiser
Myrna Perez
Jennifer Clark
Vishal Agraharkar

Brennan Center for Justice at NYU School of Law
NYU School of Law
161 Avenue of the Americas
12th Fl.
New York, NY 10013
646-292-8310
Email: wendy.weiser@nyu.edu
Email: myrna.perez@nyu.edu
Email: jenniferl.clark@nyu.edu
Email: vishal.argraharkar@nyu.edu

Mark A. Posner
Erandi Zamora
Sonia Kaur Gill
Lawyers' Committee for Civil Rights
1401 New York Ave.
Ste. 400
Washington, DC 20005
202-662-8389
Email: mposner@lawyerscommittee.org
Email: ezamora@lawyerscommittee.org
Email: sgill@lawyerscommittee.org

*Counsel for Texas State Conference of
NAACP Branches Plaintiffs*

Rolando L. Rios
115 E Travis Ste. 1645
San Antonio, TX 78205
210-222-2102
Email: rrios@rolandorioslaw.com

*Counsel for Plaintiff-Intervenors
Texas Association of Hispanic
County Judges and County Commissioners*

John Barret Scott
Office of the Attorney General
209 West 14th Street
8th Floor
Austin, TX 78701
512-475-0131
Email: john.scott@texasattorneygeneral.gov

Gregory David Whitley
Office of the Attorney General
P.O. Box 12548

Austin, TX 78711-2548
512-475-3281
Email: david.whitley@texasattorneygeneral.gov

John Reed Clay, Jr.
Office of the Attorney General
P.O. Box 12548
MC001
Austin, TX 78711-2548
512-936-2541
Email: reed.clay@texasattorneygeneral.gov

Jonathan F. Mitchell
Office of the Texas Attorney General
209 West 14th St. (MC 059)
7th Floor
Austin, TX 78701
512-936-1695
Email: jonathan.mitchell@texasattorneygeneral.gov

Sean Flammer
Mail Stop 017-6
P.O. Box 12548
Austin, TX 78711-2548
512-475-4866
Email: sean.flammer@texasattorneygeneral.gov

Stephen Ronald Keister
Texas Attorney General
P.O. Box 12548
Capitol Station
Austin, TX 78711-2548
512-463-2197
Email: Ronny.Keister@texasattorneygeneral.gov

*Counsel for Defendants*

Joseph M. Nixon
Bierne Maynard & Parsons
1300 Post Oak Blvd.
Ste. 2500
Houston, TX 77056
713-871-6809
Email: jnixon@bmpllp.com

James Edwin Trainor, III
Beirne, Maynard & Parsons, L.L.P.

401 W. 15th St.
Ste. 845
Austin, TX 78701
512-623-6700
Email: ttrainor@bmpllp.com

*Counsel for Movant-Intervenor True The Vote*

/s/ Ryan P. Haygood
NAACP Legal Defense and Education Fund, Inc.
rhaygood@NAACPLDF.org