IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *et al.*,

        Plaintiffs,

v.

RICK PERRY, *et al.*,

        Defendants.

Civil Action No. 2:13-cv-193 (lead)
(consolidated w/ 2:13-cv-263)

## VEASEY-LULAC PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

    Plaintiffs Marc Veasey, Jane Hamilton, Sergio DeLeon, Floyd J. Carrier, Anna Burns, Michael Montez, Penny Pope, Oscar Ortiz, Koby Ozias, John Mellor-Crummey, Peggy Draper Herman, Evelyn Brickner, Gordon Benjamin, Ken Gandy, League of United Latin American Citizens ("LULAC") and Dallas County, Texas (hereafter the "Veasey-LULAC Plaintiffs") respectfully submit this memorandum in opposition to the Defendants' Motion to Dismiss the Veasey-LULAC Plaintiffs' Second Amended Complaint (ECF No. 130, hereafter Defs.' Second Mot. to Dismiss).[1]

---

[1] Defendants' Motion to Dismiss the Veasey-LULAC Plaintiffs' Second Amended Complaint claims the Plaintiffs filed their Second Amended Complaint "without seeking the Court's leave and adds new parties without filing a Plea in Intervention." Defs.' Second Mot. to Dismiss 2 n.1. At the most recent telephonic hearing before this Court (held before the scheduling order was entered), counsel for the Veasey-LULAC Plaintiffs advised the Court and the parties that they would be filing an amended complaint. A deadline of December 6, 2013 was set for doing so. During that same hearing, a separate discussion then took place in which it was agreed that further amendments of pleadings would be permitted until March 3, 2014, but any party seeking to do so must seek leave of Court, as required by Rule 15. Counsel for the Veasey-LULAC Plaintiffs understood this to mean that no leave was required for amended complaints filed on or before December 6, 2013. Because Defendants have a different understanding, and have indicated they "would not oppose either a Motion for Leave to Amend or a Plea in Intervention," we are filing, simultaneously with this Response, an uncontested motion for leave to amend so the Court need not have to address this issue. Also, Plaintiffs wish to note that, contrary to Defendants' statement in footnote 1, counsel for the Veasey-LULAC Plaintiffs did contact the attorneys for the State of Texas regarding this matter. Armand Derfner

I. **THE DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED FOR THE REASONS STATED IN PLAINTIFFS' PREVIOUS RESPONSE**

The Defendants' Motion to Dismiss the Veasey-LULAC Plaintiffs' Second Amended Complaint essentially repeats the arguments included in their first Motion to Dismiss (ECF No. 52). The Veasey-LULAC Plaintiffs have previously responded by providing argument and case authority to establish that they have standing and valid causes of action on which to challenge SB 14. For the reasons stated in Plaintiffs' previous response (ECF No. 91, hereafter Pls.' First Resp.), dismissal, particularly at this stage, is unwarranted, and Plaintiffs respectfully urge the Court to deny the Defendants' motion. Plaintiffs also wish to respond, however, to three arguments the Defendants re-emphasize from their earlier motion.

    A. Third Party Standing.

Defendants claim that Dallas County, LULAC, and the elected officials lack standing because they seek to raise the rights of third parties and have not satisfied the third party standing requirements. Defs.' Second Mot. to Dismiss 2. As previously asserted in the Veasey-LULAC Plaintiffs' response, *see* Pls. First Resp. 16-20, and in the Texas NAACP and MALC response, *see* MALC Resp. 14-15, ECF No. 88, these parties are not required to establish the elements of third party standing for the claims that they bring.[2] Indeed, numerous cases have allowed similar parties to challenge voting laws, including *Crawford v. Marion County Bd. of Elections*, 553 U.S. 181 (2008). *See* MALC Resp. 15 (collecting cases); Pls.' First Resp. 16-20 (discussing cases); *see also Bush v. Gore*, 531 U.S. 98 (2000) (allowing a presidential candidate to raise equal protection claims regarding the right to have votes counted equally). Defendants continue

---

spoke with Sean Flammer with the Texas Attorney General's office regarding this matter on December 16, 2013, and later that day Chad Dunn followed up with two telephone calls and a voicemail to Mr. Flammer.

[2] Nevertheless, as explained in Plaintiffs' first response, the Plaintiffs can satisfy the third-party standing requirements. Pls.' First Resp. 16 n.6, ECF No. 91.

to ignore that, in *Crawford*—a case closely analogous to this one in terms of standing—the issue of standing was explicitly raised, and the Supreme Court had no trouble finding that the Democratic Party had standing to challenge the voter ID law.[3]

    B.  <u>Reliance on *Texas v. Holder*</u>

The Defendants also reiterate their claim that "the plaintiffs continue to invite reversal by relying on findings of *Texas v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012)." Defs.' Second Mot. to Dismiss 3. But the contention that the Veasey–LULAC Plaintiffs are relying on *Texas v. Holder* is incorrect. Plaintiffs, of course, understand that the decision was vacated. *See* Second Am. Compl. ¶ 38, ECF No. 109. Instead, the Plaintiffs offer the findings of that three-judge court, which examined SB 14's likely impact, as illustrative of the facts in this case. Plaintiffs here have alleged and will prove by evidence in this Court many of the facts found by the D.C. Court.

    C.  <u>Governor Perry As a Defendant</u>

Defendants again raise the issue of whether Governor Perry is a proper defendant. Defs.' Second Mot. to Dismiss 3. But, as Plaintiffs have shown, the Governor bears the requisite

---

[3] Defendants' Reply brief (ECF No. 108) cites two cases to support their claim that "at least two courts have enforced the rule against third-party standing in a VRA case." ECF No. 108, at 8. These cases are not binding authority and, in any event, do not appear to support Defendants' position. *LaRoque v. Holder*, 650 F.3d 777 (D.C. Cir. 2011), for instance, addressed whether a candidate had standing to challenge Section 5 of the Voting Rights Act as an intrusion on state sovereignty under the Tenth Amendment. The court held the candidate had direct standing to challenge the law because the Tenth Amendment protects state, as well as individual, rights. The court therefore did not address third-party standing requirements. More importantly, the case is also irrelevant to whether candidates and organizations have direct standing to challenge voting restrictions under the provisions at issue in this case. In *Somers v. South Carolina State Education Comm'n*, 871 F. Supp. 2d 490 (D. S.C. 2012) (three-judge court), the other case Defendants cite, the district court dismissed a candidate-plaintiff's challenge to an election procedure that affected military and overseas voters' ballots because she lacked standing. But *before* addressing whether she satisfied third-party standing to bring the claims on behalf of the voters, the court examined whether she had standing as a *candidate*. The court found she did not because she had not alleged any injury "to her as a candidate" in her pleadings, briefings, or oral argument. By contrast, the elected officials in this case allege injuries *as candidates*—*i.e.* that SB 14 requires them to divert campaign resources from their ordinary activities in order to ensure their supporters understand SB 14's requirements and have the requisite ID to vote. Defendants' citation to these cases is therefore unhelpful, especially in light of the numerous cases the plaintiff parties have cited, which allowed similar parties to pursue similar claims to the ones in this case.

connection to SB 14's enforcement. Pls.' First Resp. 20-23. Among other things, he appoints the Secretary of State, who serves at his pleasure and who has broad authority over all aspects of elections and SB 14's implementation. *Id.* For Defendants' motion to dismiss Governor Perry to succeed, they must show that he has had absolutely no consultation or anything else to do with any of the decisions regarding SB 14. If such a claim were made and verified by discovery of e-mails and other correspondence, the Governor could move for summary judgment, but his connection to SB 14's enforcement, including his role in appointing the Secretary of State, is enough to satisfy the pleading requirements for naming him as a defendant.

## II.     THE PLAINTIFFS HAVE PLEADED SUFFICIENT FACTS TO STATE A CLAIM FOR VIOLATIONS OF DUE PROCESS

The principal argument in Defendants' new motion to dismiss is a challenge to Plaintiffs' Count 5, which alleges additional violations of the Due Process Clause of the Fourteenth Amendment. The essence of Plaintiffs' claim in Count 5 is that SB 14 creates an election system that is fundamentally unfair. More specifically, Count 5 has two distinct aspects. First, it alleges that SB 14 violates due process by, among other things, failing to provide adequate standards of uniformity for the treatment of voters, vesting excessive and unbridled discretion in the hands of local officials who will administer SB 14, and arbitrarily picking and choosing which photo IDs are valid. Second Am. Compl. ¶ 85. Second, Count 5 further alleges that SB 14 violates due process because it deprives Plaintiffs and other already-registered Texans of the right to vote they currently possess as registered voters, without providing adequate notice, individual or otherwise. *Id.* ¶ 86.

Defendants appear to challenge only the latter claim regarding disfranchisement without notice. *See* Defs.' Second Mot. to Dismiss 3-4. In support, the Defendants argue that "the State has engaged in extensive outreach and education efforts" and that "in any event, litigants cannot

4

claim that the enactment of a statute violates procedural due process." *Id.* As to the Defendants' first statement—that the State has engaged in extensive outreach and education efforts—the statement recognizes this is a factual issue. *Id.* at 3. Thus, it is an inadequate basis on which to dismiss the claim. As to the second statement—that litigants cannot claim the enactment of a statute violates procedural due process—that statement is simply wrong.

To begin, one of the very cases Defendants cite for this proposition recognizes that the enactment of a statute can implicate procedural due process concerns if the law does not provide notice to those affected or an adequate "grace period." In *Atkins v. Parker*, 472 U.S. 115, 130 (1985), the Court explained "[a]ll citizens are presumptively charged with knowledge of the law," but the "presumption may be overcome in cases in which the statute does not allow a sufficient 'grace period' to provide the persons affected by a change in the law with an adequate opportunity to become familiar with their obligations under it." *Accord Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982) ("*Generally*, a legislature need do nothing more than enact and publish the law, *and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply*.") (emphasis added); *Hodel v. Irving*, 481 U.S. 704, 730 (1987) (Stevens, J., concurring) (explaining that legislatures can enact statutes "providing for the lapse, escheat, or abandonment of private property," but that these statutes "are only reasonable if they afford sufficient notice to the property owners and a reasonable opportunity to comply").[4]

The adequacy of a grace period or the necessity of providing notice must be considered in light of several factors, including the nature of the interest affected. For instance, legislatures have broad powers to regulate economic affairs, including property rights. *See Hodel*, 481 U.S.

---

[4] Defendants selectively quote from *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) to support their position. Defs.' Second Mot. to Dismiss 4. But *Logan* actually supports Plaintiffs' position. The restrictions imposed on the Plaintiffs' and already-registered voters' right to vote as a result of SB 14 involve procedural limitations on those rights and, like the timing requirement at issue in *Logan*, these restrictions must comply with due process.

at 713 (Stevens, J., concurring). As the Supreme Court explained in *Atkins*, "Congress had plenary power to define the scope and the duration of the entitlement to food-stamp benefits, and to increase, to decrease, or to eliminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program." 472 U.S. at 129. A voter's liberty interest in his or her right to vote, however, is fundamentally different from a person's property interest in continued receipt of welfare payments, and legislatures do not have plenary authority to change the right to vote by restricting its exercise or by diluting its effectiveness.

Another relevant consideration regarding the nature of the right affected is whether the right has vested or not. At issue in *Atkins*, for example, was a statutory change to a future interest—*i.e.* the value of the plaintiffs' 1982 welfare entitlements. 472 U.S. at 129. As the Court explained, the entitlements plaintiffs were awarded in 1981 "did not include any right to the maintenance of the same level of property entitlement." *Id.* Where vested rights are affected, however, the state has a greater obligation to provide notice or provide ample time for those affected to learn the law's requirements and comply with its mandates. *See, e.g.*, *Hodel*, 481 U.S. at 730 (Stevens, J., concurring). In the present case, already-registered voters in Texas had a vested interest in their existing voter registrations and the associated ability to vote in the state's elections, and SB 14 effectively revoked this vested right.

More still, determining whether a grace period is sufficient may require judgments about the groups affected by a law, how information is disseminated, the obstacles to compliance, and whether innocent people may be adversely affected in the absence of a longer time period. *See Texaco*, 454 U.S. at 532. Here, as Plaintiffs have specifically alleged, SB 14 deprives hundreds of thousands of Texas voters—especially minority, poor, disabled, and elderly voters—of their

right to vote by making their current registrations ineffective. Second Am. Compl. ¶¶ 2, 3, 11, 29-37, 39-40. Many of these people are likely unaware of the change, its impact on them, and the steps they must take to comply. *Id.* ¶¶ 21, 27, 60. Many will also face significant obstacles to ensuring their compliance with the law's stringent requirements. *Id.* ¶¶ 13-28. The State's enforcement of SB 14 during the November 2013 elections will also have done little to rectify the problem. The election was a low-turnout election, and many affected voters may not have participated in or paid attention to it. Thus, there is a high likelihood that if the State enforces SB 14 in upcoming elections, including the November 2014 elections, many innocent voters will be harmed by the lack of notice and an adequate grace period.

      How long a grace period must be will thus obviously vary according to the statute at issue and the facts. In *Atkins*, the Court rejected the plaintiffs' challenge to a statute affecting welfare benefits, which had included a 90-day grace period. 472 U.S. at 130-131. But in *Atkins*, the rights affected were substantially different and the government had even provided individual notice to those affected. In *Texaco*, the Court held that a two-year grace period for a statute extinguishing abandoned mineral rights "foreclose[d]" any argument that . . . mineral owners may not have had an opportunity to become familiar with its terms." 454 U.S. at 532. But, unlike *Texaco*, there has been no grace period for SB 14, SB 14 affects a fundamental right, and there is no allegation that the affected voters have abandoned their interests (*i.e.* their right to vote). The adequacy of the grace periods upheld in *Atkins* and *Texaco* thus have little bearing on the determination of an adequate grace period for implementing SB 14 or the necessity of providing notice, and Plaintiffs believe a substantially longer grace period is necessary here.

      As Plaintiffs allege in their complaint, SB 14 will deprive hundreds of thousands of voters of one of their most fundamental rights. The State has done so without conducting a

legitimate outreach and education effort to all potential voters and without providing notice to already-registered voters. Second Am. Compl. ¶ 60. In fact, the State has not even provided notice to the 795,555 voters on the State's own no-match list, whom the State already identified as likely to be deprived of the right to vote because they lack an SB 14 state-issued ID or because their ID does not match the name on the voter rolls. *Id.* Thus, in light of SB 14's complex and onerous requirements affecting a fundamental right, there must be notice or, at the very least, a significant grace period for voters to learn about the law's requirements and to satisfy its demands.[5] Indeed, Plaintiffs do not believe the State can implement the law during the statewide November 2014 elections and perhaps for longer, without violating due process.[6]

    In sum, the Court should deny the Defendants' motion to dismiss, including its motion to dismiss Count 5 in Plaintiffs' Second Amended Complaint. As noted previously, the Defendants' motion to dismiss the second amended complaint does not appear to contest Plaintiffs' claim that SB 14 violates the Due Process Clause because it is standardless, arbitrary, and discriminatory. Additionally, as discussed above, SB 14's enforcement violates the Due Process Clause because the Defendants have failed to provide adequate notice or a sufficient grace period. All these add up to serious due process concerns, making the due process cause of action eminently sound, and warranting denial of Defendants' motion to dismiss Count 5.

---

[5] Defendants claim the legislature followed the recommendation of the Carter-Baker Commission to adopt a photo-identification requirement. Defs.' Mot. to Dismiss, ECF No. 52, at 29. The Carter-Baker Commission, however, recommended that states adopting ID requirements allow voters to cast provisional ballots, which would be counted upon signature verification, for two federal elections. Building Confidence in U.S. Elections § 2.5 (Sept. 2005); *see Crawford*, 553 U.S. at 231 (Souter, J., dissenting) (criticizing Indiana's failure to justify its immediate implementation of a photo ID law and "conspicuously reject[] the Carter-Baker Report's phase-in recommendation aimed at reducing the burdens on the right to vote").

[6] Plaintiffs note that the remedy Plaintiffs seek for the violations alleged in paragraph 86 is simply to block implementation of SB 14 as long as needed to comply with due process, in contrast to the other causes of action in the Second Amended Complaint which challenge SB 14 as incurably invalid.

## CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that the Court deny the new motion in all respects.

        Respectfully submitted,

        **BRAZIL & DUNN**

        */s/ Chad W. Dunn*
        Chad W. Dunn
        State Bar No. 24036507
        K. Scott Brazil
        State Bar No. 02934050
        Brazil & Dunn
        4201 Cypress Creek Parkway, Suite 530
        Houston, Texas 77068
        Telephone: (281) 580-6310
        Facsimile: (281) 580-6362
        chad@brazilanddunn.com
        scott@brazilanddunn.com

        J. Gerald Hebert (*Pro Hac Vice*)
        D.C. Bar No. 447676
        Attorney at Law
        Campaign Legal Center
        215 E Street NE
        Washington DC 20002
        Telephone (202) 736-2200
        ghebert@campaignlegalcenter.org

        Neil G. Baron
        State Bar No. 01797080
        Law Office of Neil G. Baron
        914 FM 517 W, Suite 242
        Dickinson, Texas 77539
        Telephone (281) 534-2748
        Facsimile (281) 534-4309
        neil@ngbaronlaw.com

        David Richards
        State Bar No. 16846000
        Richards, Rodriguez & Skeith, LLP
        816 Congress Avenue, Suite 1200
        Austin, Texas 78701

Telephone (512) 476-0005
Facsimile  (512) 476-1513
daverichards4@juno.com

Armand G. Derfner
Derfner, Altman & Wilborn, LLC
P.O. Box 600
Charleston, S.C. 29402
Telephone (843) 723-9804
aderfner@dawlegal.com

*Attorneys for All Plaintiffs*

LUIS ROBERTO VERA, JR.
LULAC National General Counsel
State Bar No.  20546740
The Law Offices of Luis Vera Jr., and Associates
1325 Riverview Towers, 111 Soledad
San Antonio, Texas 78205-2260
Telephone (210) 225-3300
Facsimile (210) 225-2060
lrvlaw@sbcglobal.net

*Attorney for LULAC Plaintiffs*

Craig M. Watkins
Dallas County District Attorney
State Bar No. 00791886
Teresa G. Snelson
Chief, Civil Division
Dallas County District Attorney's Office
State Bar. No. 08577250
411 Elm Street, 5th Floor
Dallas, TX 75202-4606
Telephone (214) 653-7358
Facsimile (214) 653-6134
Teresa.Snelson@dallascounty.org

*Attorneys for Dallas County, Texas*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of January, 2014, I served a copy of the foregoing on all counsel of record by filing a copy of the same in this Court's ECF system.

                                      */s/ Chad W. Dunn*
                                      Chad W. Dunn