IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>RICK PERRY, *et al.*,<br><br>    Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>TEXAS LEAGUE OF YOUNG VOTERS<br>EDUCATION FUND, *et al.*,<br><br>    Plaintiff-Intervenors,<br><br>TEXAS ASSOCIATION OF HISPANIC<br>COUNTY JUDGES AND COUNTY<br>COMMISSIONERS, *et al.*,<br><br>    Plaintiff-Intervenors,<br><br>  v.<br><br>STATE OF TEXAS, *et al.*,<br><br>    Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

         Plaintiffs,

    v.

NANDITA BERRY, *et al.*,

         Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

         Plaintiffs,

    v.

STATE OF TEXAS, *et al.*,

         Defendants

Civil Action No. 2:13-cv-348 (NGR)

### United States' Motion to Compel the Production of Legislative Documents

In this action, the United States alleges that the State of Texas, through the actions of its legislature, violated Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, when it enacted Senate Bill 14 (2011) (SB 14) for the purpose, at least in part, to deny or abridge the equal opportunity of citizens to participate in the political process on account of race or membership in a language minority group.[1]  To that end, the United States has served discovery focused on the obtaining those facts necessary for this Court to ascertain the Texas legislature's motivation for enacting SB 14.  In their initial disclosures, Defendants acknowledged possession of relevant legislative documents not in the possession of the United States but withheld those documents

---

[1]  The United States separately alleges that SB 14 will result in the denial or abridgment of the right to vote on account of race or membership in a language minority group.

1

and incorporated over 2,900 pages of privilege logs from prior litigation.  *See* Defs. Initial

Disclosures at 33 (Ex. 1); *see also* Rev. Priv. Log (May 11, 2012) (Ex. 2); Supp. Priv. Log (May

21, 2012) (Ex. 3).  In response to the United States' first set of requests for production,

Defendants invoked similar objections and asserted that they would not conduct a search for

documents unless each legislator expressly declined to assert a state legislative privilege.  *See*

Def. Resp. & Obj. to U.S. 1st RFPs (Ex. 4); Email from John Scott, counsel for Defendants, to

Elizabeth Westfall, counsel for the United States (Jan. 29, 2014) (Ex. 5).

      Defendants have invoked a state legislative privilege, the attorney-client privilege, and a

state confidentiality provision as the basis to withhold this information, which includes numerous

communications concerning SB 14 and prior photographic voter identification proposals

amongst Lieutenant Governor David Dewhurst, Speaker Joe Straus, Senator Troy Fraser (Senate

sponsor of SB 14), Representative Patricia Harless (House sponsor of SB 14), and their top aides.

At this point, the United States is unaware of any alternative source for candid explanations of

the actions of key legislators.  Because the parties have been unable to resolve this matter, the

United States respectfully moves pursuant to Federal Rule of Civil Procedure 37 for an order

compelling Defendants to produce legislative documents and electronically stored information

(ESI).  For the reasons that follow, the privileges asserted by Defendants do not shield these

materials from discovery.

## I.      LEGAL STANDARD

      "A party seeking discovery may move for an order compelling . . . production[] or

inspection . . . if a party fails to respond that inspection will be permitted—or fails to permit

inspection—as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).  "[I]t is well settled

that parties may obtain discovery regarding any non privileged matter that is relevant to the

parties' claims or defenses." *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 246 (W.D. Tex. 2013) (citing Fed. R. Civ. P. 26(b)(1)).

Assertions of privilege limit the ability of a court to ascertain the truth of the opposing party's claim and must therefore be viewed with skepticism. *See, e.g.*, *United States v. Auster*, 517 F.3d 312, 315 (5th Cir. 2008). Moreover, "[a] party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

## II.   CONTEMPORANEOUS COMMUNICATIONS BETWEEN SUPPORTERS OF SB 14 ARE LIKELY PROBATIVE OF DISCRIMINATORY INTENT.

It is by now axiomatic that "[d]etermining whether invidious discriminatory purpose was a motivating factor[ in a decision] demands a sensitive inquiry into such circumstantial and direct evidence as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Further, "[l]egislation is frequently multipurposed: the removal of even a 'subordinate' purpose may shift altogether the consensus of legislative judgment supporting the statute." *McGinnis v. Royster*, 410 U.S. 263, 276-77 (1973). It is for exactly that reason that in cases under the Voting Rights Act, courts have recognized that the nonpublic communications between sponsors, key supporters, and top aides concerning the legislation at issue, such as SB 14 and predecessor Texas voter identification bills at issue here, may contain evidence that is highly probative of whether the legislation's passage was motivated, even in part, by a discriminatory intent. *See Reno v. Bossier Parish*, 520 U.S. 471, 488 (1997); *Garza v. County of Los Angeles*, 756 F. Supp. 1298, 1314-18 (C.D. Cal.), *aff'd*, 918 F.2d 763, 768 (9th Cir. 1990); *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989). Reliance on public statements alone undercuts the inquiry because it is rare for "officials acting in their official capacities [to]

3

announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority."  *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982).

Recent decisions demonstrate the utility of such discovery.  In *Perez v. Perry*, the court relied on legislator testimony to find that the same legislature that enacted SB 14 "may have focused on race to an impermissible degree" when crafting the 2011 Texas House redistricting plan.  Op. at 6, *Perez v. Perry* (*Perez I*), No. 5:11-cv-360 (W.D. Tex. Mar. 19, 2012) (three-judge court) (ECF No. 690) (Ex. 6).  Similarly, in *Texas v. United States*, the court relied in part on email exchanged among state legislators to conclude that that Texas's 2011 congressional redistricting plan "was motivated, at least in part, by discriminatory intent."  *Texas v. United States* (*Texas II*), 887 F. Supp. 2d 133, 161 & n.32 (D.D.C. 2012) (three-judge court), *vacated on other grounds*, 133 S. Ct. 2885 (2013).[2]  The state redistricting legislation at issue in these recent cases was enacted by the 82nd Texas Legislature, the same legislature that enacted SB 14.

When debating SB 14, key proponents did not speak to specific provisions included in or excluded from the bill or to the unusual procedures used to enact the legislation and instead limited their public testimony to coordinated talking points.[3]  The documents and ESI being

---

[2]  *See also id.* at 165 ("The ostensible purpose of the markup was to consider amendments to the proposed plan, but the email suggests a very different dynamic at work."); *id.* at 207 (describing "an email . . . explaining that 'certain data would be useful in identifying a nudge factor by which one can analyze which census blocks, when added to a particular district, especially 50–plus–1 majority-minority districts, help pull the districts total Hispanic pop[ulation] and the Hispanic [citizen voting age population] up to majority status, but leave the Spanish surnamed registered voters and turnout the lowest'").

[3]  For example, Senator Fraser and Representative Harless presented virtually identical views of the SB 14's intent.  Fraser: "Every fraudulent vote effectively st[eals] a legitimate vote.  Elections are too important to leave important to leave unprotected."  Tex. Sen. Comm. of the Whole Tr. at 29:7-10 (Jan. 25, 2011) (Ex. 7).  Harless: "Although . . . we may disagree on how much voter fraud takes place, just one fraudulent vote effectively steals one legitimate vote.  Elections are too important to leave this unprotected."  Tex. H. Floor Debate, Tr. at 6:10-14 (Mar. 21, 2011) (Ex. 8).

sought in discovery here would allow the Court to determine the credibility of legislative

sponsors who refused to respond in public to questions posed by minority legislators.  When

Senator Royce West, a black state senator, asked Senator Troy Fraser whether SB 14 would

"disproportionately affect African Americans and Hispanics," Senator Fraser merely replied,

"I'm not advised."  Sen. Comm. of the Whole, Tr. at 170:17-20.  When Representative Rafael

Anchía, an Hispanic state representative, asked Representative Patricia Harless whether she was

aware of any studies conducted by a state agency "to project the number of voters that lack the

required identification and what percentage of these voters are African American or Hispanic,"

she similarly responded, "No.  Not advised."  Tex. H.J., 82d Legis., Reg. Sess., at 918 (Ex. 9).

In fact, the Office of the Secretary of State conducted an analysis in January 2011, although the

study declined to estimate the racial distribution of registered voters lacking necessary

identification.  Deposition of Lee Guyette at 21:21-29:18, 71:24-72:14 (June 19, 2012) (Ex. 10).

## III.   DOCUMENTS HIGHLY RELEVANT TO A SECTION 2 INTENT CLAIM ARE NOT PROTECTED BY A STATE LEGISLATIVE PRIVILEGE.

"There can be no doubt that [the Supreme Court] has sanctioned intrusions by Congress,

acting under the Civil War Amendments, into the judicial, executive, and legislative spheres of

autonomy previously reserved to the States."  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455 (1976).

Where Congress has placed "government intent" at the heart of a cause of action, the United

States "has a compelling interest in discovery of evidence of such intent."  *Jones v. City of*

*College Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006).  Defendants' assertion of a state legislative

privilege is inappropriate because the important federal interest in prohibiting intentional

discrimination in voting and the uniquely probative nature of the withheld documents must

overcome a privilege claim based merely on theoretical interference in state lawmaking.  Neither

the Constitution, nor the United States Code, nor the rulings of the Supreme Court create a state legislative privilege; therefore, any such claim "is governed by federal common law." *Perez v. Perry* (*Perez II*), 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (three-judge court) (citing *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 93-94 (S.D.N.Y. 2003)).

### A. The Important Federal Interest in Eliminating Intentional Discrimination in Voting Overcomes Any Claim of State Legislative Privilege.

In *United States v. Gillock*, 445 U.S. 360 (1980), the Supreme Court held that state legislators are not afforded the absolute testimonial privilege held by members of Congress under the Speech or Debate Clause of the Constitution, U.S. Const. art. I, § 6, cl.1, and declined to recognize an analogous privilege for state legislators in federal criminal prosecutions. *See id.* at 370-73.[4]  Rather, the Court held that "where important federal interests are at stake . . . , comity yields" and no privilege is afforded to state legislators seeking to withhold relevant testimony or documents. *Id.* at 373.  Thus, no such privilege would be permitted to "impair the legitimate interest of the Federal Government in enforcing its criminal statutes," particularly in light of the mere "speculative benefit to the state legislative process." *Id*.

The reasoning that supports the categorical rejection of a state legislative privilege in *Gillock* is equally applicable in an action to enforce the prohibition on intentional discrimination in voting imposed by Section 2.  The importance of the United States' interest in the elimination of intentional discrimination in voting is beyond question.  The Fourteenth and Fifteenth Amendments guarantee citizens the right to vote free of discrimination on the basis of race.  That

---

[4]  *See also Jaffee v. Redmond*, 518 U.S. 1, 14 (1996) (describing *Gillock* as "holding that Rule 501 did not include a state legislative privilege"); *id.* at 19 (Scalia, J., dissenting) (describing *Gillock* as having rejected a "new privilege[]" "against disclosure of 'legislative acts' by [a ]member of [a ]state legislature); *Perez II*, 2014 WL 106927, at *2 ("[T]he legislative privilege for state lawmakers is, 'at best, one which is qualified.'" (quoting *Rodriguez*, 280 F. Supp. 2d at 100)).

right is "preservative of all rights." *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966).

Just as "the Government has a fundamental, overriding interest in eradicating racial

discrimination in education—discrimination that prevailed, with official approval, for the first

165 years of this Nation's history," *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983),

so too with respect to voting: "The governmental interest at stake here is compelling." *Id.*[5]

The State's position glosses over the critical distinction between legislative immunity and

recognition of a state legislative privilege.  Legislative immunity protects legislators against

personal liability for their "legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44,

48-54 (1998).  By contrast, this is a case brought by the United States in which no personal

liability is at stake, and individuals who are immune from suit may nonetheless be compelled to

testify in a related case. *Dennis v. Sparks*, 449 U.S. 24, 30 (1980).  The distinct concepts of

immunity and privilege rely on differing considerations and carry different requirements.

*Compare Tenney v. Brandhove*, 341 U.S. 367, 375-76 (1951) (requiring a clear statement to

override immunity), *with Gillock*, 445 U.S. at 373 (requiring only a strong federal interest to

trump any considerations that might warrant a privilege).

> **B.     The Relevance of the Documents and the Unavailability of Alternative
>          Discovery Weigh Against Recognizing a State Legislative Privilege.**

The United States has alleged that the State has engaged in intentional discrimination that

violates Section 2 and the voting guarantees of the Fourteenth and Fifteenth Amendments.

Compl. ¶¶ 26-42 (U.S. v. Tex. ECF No. 1).  These allegations of a statewide abridgment of the

---

[5] The authority of the federal government is "'at its maximum'" when the Executive "'acts
pursuant to an express or implied authorization of Congress.'" *E.g.*, *Crosby v. Nat'l Foreign Trade
Council*, 530 U.S. 363, 375 (2000) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635
(1952) (Jackson, J., concurring)).

right to vote on account of race motivated—at least in part—by a discriminatory intent overcome any interest that favors a state legislative privilege.

If this Court nonetheless determines that a state legislative privilege may exist under Rule 501, this Court should proceed to employ a case-by-case balancing test to determine whether the privilege precludes disclosure in this instance.  *See, e.g.*, *Perez II*, 2014 WL 106927, at *2.  Here the relevance under *Arlington Heights* of bill sponsors and proponents' contemporary statements, the unavailability of comparable evidence, and the importance of the United States' enforcement of Section 2 outweigh any theoretical concerns that may be advanced by the Defendants.  The three-judge court in *Perez v. Perry* recently articulated the five considerations that have been applied by several courts pursuing a case-by-case approach:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Perez II*, 2014 WL 106927, at *2 (citing *Rodriguez*, 280 F. Supp. 2d at 101).  The balance of the factors strongly supports overcoming any claim of privilege.  *See, e.g.*, *Irvin*, 127 F.R.D. at 173-74; *Favors v. Cuomo*, 285 F.R.D. 187, 217-20 (E.D.N.Y. 2012).  Particularly in Section 2 cases, "[t]he privilege must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'"  *Perez II*, 2014 WL 106927, at *1 (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

Legislative documents and ESI are relevant and vital to the United States' claim that SB 14 violates Section 2 because it has a discriminatory purpose.  Several courts, after declining to

8

recognize a state legislative privilege, have relied on legislative evidence to conclude that

legislation was enacted with an intent to discriminate on the basis of race.  *See Perez I* at 6;

*Texas II*, 887 F. Supp. 2d at 161 & n.32, 165, 178, 207; *Garza*, 756 F. Supp. at 1314-18.

      There is also no alternative source for evidence of the contemporaneous and candid

discussions of key legislative actors and their staff.  Defendants' initial disclosures and responses

to the United States' requests for production have failed to provide any non-public

communications between the authors, sponsors, and leading supporters of SB 14.[6]  Moreover,

the public statements of legislative sponsors reflect repetitive, almost verbatim adherence to

talking points and a refusal to engage publicly with the concerns of minority legislators.  *See*

*supra* Part II.  The "potentially unique nature" of internal documents and email, combined with

the absence of any alternative source for that evidence, weighs in favor of disclosure.  *Baldus v.*

*Members of Wis. Gov't Accountability Bd.* (*Baldus I*), No. 11-cv-562, 2011 WL 6122542, at *2

(E.D. Wis. Dec. 8, 2011) (three-judge court).

      The State of Texas, and specifically the Texas Legislature plays a central role in this

litigation.  As a result, Defendants have named legislators and their staff as prospective

witnesses.  *See* Def. Initial Disclosures at 3-6; *see also* Fed. R. Civ. P. 26(a)(1).  When combined

with the assertion of a state legislative privilege, this creates the potential for the improper use of

a privilege as both a sword and a shield.  *See, e.g.*, *Powell v. Ridge*, 247 F.3d 520, 525 (3d Cir.

2001) ("[T]he privilege they propose would enable them to seek discovery, but not respond to it;

---

[6] Defendant's privilege logs in this case adopt the State's representation in *Texas v. Holder* that all but one of the thirty legislators from whom the Attorney General sought documents in that case had asserted a state legislative privilege.  *See* Notice of Legislative Privilege Assertion, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. Apr. 24, 2012) (ECF No. 89) (Ex. 11).

take depositions, but not be deposed; and testify at trial, but not be cross-examined.  In short, they assert a privilege that does not exist.").

Finally, production of the documents and ESI at issue would not constitute a substantial burden on legislators and their staff.  The Supreme Court has discounted broad concerns regarding potential harm to the legislative process as largely "speculative."  *Gillock*, 445 U.S. at 373; *see also Baldus v. Members of Wis. Gov't Accountability Bd.* (*Baldus II*), 843 F. Supp. 2d 955, 959 (E.D. Wis. 2012) (three-judge court) ("[N]o public good suffers by the denial of privilege in this case.").  Such speculation is particularly unwarranted in Texas, where legislators have consistently testified in more than four decades of Voting Rights Act challenges to statewide enactments from *Bush v. Martin*, 251 F. Supp. 484 (S.D. Tex. 1966) (three-judge court), to the ongoing litigation in *Perez v. Perry*, No. 5:11-cv-360 (W.D. Tex. Mar. 19, 2012) (three-judge court) (ECF No. 690) (three-judge court).[7]

In sum, the first four factors set out in *Perez II* heavily outweigh the possibility of a chilling effect on Texas legislators and their aides.  *See, e.g.*, *Baldus I*, 2011 WL 6122542, at *2 (reviewing the factors set out above in statewide Section 2 litigation and concluding that "[a]llowing the plaintiffs access to these items may have some minimal future 'chilling effect' on the Legislature, but that fact is outweighed by the highly relevant and potentially unique nature of the evidence").  Furthermore, if such protection is necessary, the legislators' interests can be protected by designating responsive documents and ESI as highly confidential under the Consent

---

[7] Notably, even after the *Perez* court rejected the State of Texas's attempt to invoke the privilege on behalf of legislators, *see Perez I* at 2-3, no individual legislator elected to invoke a legislative privilege.  *See Perez III*, 2014 WL 106927, at *1.  A state court, however, did recognize a privilege for executive officials serving as members of the Legislative Redistricting Board in the post-2000 redistricting.  *See In re Perry*, 60 S.W.3d 857, 859 (Tex. 2001).

Protective Order.  *See* Consent Protective Order ¶ 2.1 (ECF No. 105).  The use of such responsive documents and statements can be further examined prior to their presentation at trial.

  **C.** ***Texas v. Holder* Does Not Control the Application of Any State Legislative Privilege in This Case.**

  In *Texas v. Holder*, the Attorney General moved to compel the production of documents that had been withheld by the State on the basis of a state legislative privilege, but the court compelled the production of only a portion of the contested documents.  *See* Order at 4-11, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. June 5, 2012) (three-judge court) (ECF No. 167).[8]  The court later explained that federalism concerns regarding the application of Section 5 only to those jurisdictions identified in Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), had "influenced [its] resolution of several discovery disputes."  *Texas v. Holder*, 888 F. Supp. 2d at 119 (citing *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 202 (2009)).  In applying unique aspects of the Section 5 framework, the court expressly recognized that "the applicable contours of the state legislative privilege may be drawn differently in a Section 5 case than in other contexts."  Order at 4 n.2, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. June 5, 2012) (three-judge court) (ECF No. 167).  The United States believes that the same considerations should not limit discovery under the nationwide non-discrimination requirements of Section 2 of the Voting Rights Act.

---

  [8]  The court had previously denied Texas's request for a protective order barring all legislative discovery and had granted in whole or in part multiple motions to compel legislative testimony and documents.  *See* Order (D.D.C. Apr. 20, 2012) (ECF No. 84); Order (D.D.C. May 17, 2012) (ECF No. 122); Order at 4 (D.D.C. May 17, 2012) (ECF No. 128); Order at 4-7 (D.D.C. May 28, 2012) (ECF No. 154).

IV.     **DEFENDANTS HAVE ASSERTED THE ATTORNEY-CLIENT PRIVILEGE OVER DOCUMENTS BEYOND THE SCOPE OF THE PRIVILEGE**

Defendants have not carried their burden to establish that the thousands of pages of documents and ESI over which they have asserted the attorney-client privilege warrant protection from discovery.  A party asserting the attorney-client privilege must prove each element of the privilege.  *United States v. Nelson*, 732 F.3d 504, 518 (5th Cir. 2013).  The privilege applies only if

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975).  Finally, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *E.g.*, *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010).  Thus, "[t]he privilege does not protect 'everything that arises out of the existence of an attorney-client relationship.'"  *Nelson*, 732 F.3d at 518 (quoting *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976)).

Defendants appear to have asserted the attorney-client privilege in every instance in which one party to a communication is a member of the bar.  *See, e.g.*, Supp. Priv. Log at 252 (withholding an email from the spokesman for the Lieutenant Governor to the Lieutenant Governor on which the Lieutenant Governor's deputy chief of staff, who is an attorney, was carbon copied).  However, the mere presence of an attorney does not place communications

12

under the aegis of the attorney-client privilege. The attorney-client privilege can attach only when the bar member is acting as the attorney for a client. *See, e.g.*, *Rush v. Columbus Mun. Sch. Dist.*, 234 F.3d 706, 2000 WL 1598021, at *2 (5th Cir. 2000) (unpub.); *In re Lindsey* (*Lindsey II*), 158 F.3d 1263, 1270 (D.C. Cir. 1998) (per curiam). In sum, Defendants appear to have asserted the attorney client privilege over communications between individuals who do not maintain an attorney-client relationship and over documents that do not concern an opinion on law, legal services, or assistance in a legal proceeding. None of these documents may be withheld from production.

### A.   Defendants Have Improperly Claimed an Attorney Client Privilege in the Absence of an Attorney-Client Relationship.

Defendants have withheld communications between multiple offices without establishing that an attorney employed by one legislator or official maintains an attorney-client privilege with a legislator who is not his or her employer. "One who wishes to assert the attorney-client privilege bears the burden of proving the existence of an attorney-client relationship." *United States v. Harrelson*, 754 F.2d 1153, 1167 (5th Cir. 1985)); *see also United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978).

The disclosure of documents between the offices of the Lieutenant Governor, the Speaker of the Texas House, and the Senate and House sponsors of SB 14 precludes any plausible claim of the attorney-client privilege. Defendants have withheld communications between Bryan Hebert, counsel for Lieutenant Governor Dewhurst; Meredyth Fowler, counsel for Speaker Straus; Janice McCoy, chief of staff to Senator Fraser; and Colby Beuck, chief of staff to

Representative Harless.  *See* Rev. Priv. Log at 154, 435; Supp. Priv. Log at 291.[9]  The inclusion

of any client confidences in these emails waives the attorney-client privilege because they

include staff from multiple members of the legislature with no plausible attorney-client

relationship between them.[10]

Defendants have also invoked the attorney-client privilege to withhold hundreds of pages

of communications between individual legislators or legislative aides and attorneys for the Texas

Legislative Council (TLC).  Attorneys for the TLC, however, cannot maintain an attorney-client

relationship with every one of the individual members of the Texas legislature.  *See Texas v.*

*United States* (*Texas I*), 279 F.R.D. 24, 34 (D.D.C. 2012) (finding no such relationship), *vacated*

*in part*, 2012 WL 1578390 (D.D.C. Jan. 6, 2012). The TLC is a state legislative agency, and its

statutory mandate does not authorize the provision of legal advice or the formation of an

individual attorney-client relationship.  *See* Tex. Gov. Code §§ 323.001, .006; *see also Texas I*,

279 F.R.D. at 34 ("The Texas Government Code expresses no such relationship or

expectation.").  It would not be possible ethically for a single TLC attorney to form attorney-

client relationships with legislators maintaining materially and directly adverse interests in a

substantially related matter absent express waiver, Tex. R. Prof'l Conduct 1.06, but that is

precisely the claim that Texas has made.  *See* TLC Priv. Log at 9 (Ex. 12) (describing

communications concerning voter identification between a TLC attorney and SB 14 sponsor

_____

[9]  The court in *Texas v. Holder* concluded that "the attorney-client privilege does not extend to
communications between attorneys and/or staff in the [Lieutenant Governor]'s office and state
legislators."  Order at 3-4, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. May 28, 2012) (three-judge court)
(ECF No. 154).  By reincorporating the privilege logs from the previous litigation, Defendants appear to
seek a different ruling from this Court over these documents.

[10] The common interest doctrine does not prevent wavier in these circumstances.  "[A] cognizable
common legal interest does not exist if a group of individuals seeks legal counsel to avoid conduct that
might lead to litigation, but rather only if they request advice to 'prepar[e] for future litigation.'"  *United*
*States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d at 710).

Representative Patricia Harless); *id.* at 141 (describing communications concerning voter

identification between the same TLC attorney and SB14 opponent Representative Rafael

Anchía).[11]

> **B.      The Attorney-Client Privilege Does Not Apply to Political, Strategic, or Policy Advice or to Communications That Do Not Reflect Client Confidences.**

Defendants' assertion of the attorney-client privilege, over nearly all communications

that include an attorney, reaches documents and ESI that are outside the substantive scope of the

privilege.  In some cases, Defendants claim the attorney-client privilege over documents and ESI

that appear to concern policy or strategy matters.  In others, Defendants claim the attorney-client

privilege over documents addressing publicly available legislative proposals.  The attorney-client

privilege does not apply to either set of documents.

As noted above, a prerequisite to coverage of the attorney-client privilege is that the

relevant communication was for the "purpose of securing primarily either (i) an opinion on law

or (ii) legal services or (iii) assistance in some legal proceeding." *In re Grand Jury Proceedings*,

517 F.2d at 670.  Because the communications sought here "essentially involves the giving of

political advice . . . , it is not privileged."  *Republican Party of N.C. v. Martin*, 136 F.R.D. 421,

426 (E.D.N.C. 1991)).  This limitation on the privilege applies even when the attorney is

employed by the client in the dual roles of political advisor and lawyer; no privilege applies

when such an attorney counsels his client on primarily political, rather than legal, matters.  *See In*

---

[11]  Even if an attorney-client relationship were to exist between TLC attorneys and individual legislators, to the extent that it is the role of the TLC to provide "neutral, objective analysis" to government actors, such analysis is not protected by attorney-client privilege. *Tax Analysts v. IRS*, 117 F.3d 607, 619 (D.C. Cir. 1997); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (distinguishing governmental inquiries into the legality of potential state action from a "private party seeking advice to protect personal interests").

*re Lindsey* (*Lindsey I*), 148 F.3d 1100, 1113 (D.C. Cir. 1998) (per curiam).  Nonetheless,

Defendants have asserted the privilege over documents that are political, such as

communications "regarding Voter ID polling data."  Supp. Priv. Log at 202.  Other withheld

documents concern policy matters, including several labeled "legislative policy advisor

memorandum."  Rev. Priv. Log at 126-127.  In most other cases, Defendants' privilege logs

consists of non-specific boilerplate assertions, such as the claim that a single email was "for the

purpose of giving or receiving legal advice."  Rev. Priv. Log at 107.  Because the bulk of the

legislative communications relevant to the claims in this case and responsive to the United

States' requests for production reflect policy and political concerns, the burden falls on

Defendants to establish that withheld documents do not focus on those subjects.  Defendants'

privilege logs fall short of that requirement, and an updated privilege log is necessary to establish

application of the privilege to most documents that Defendants could continue to withhold.

 Finally, Defendants have withheld documents that do not appear to include client

confidences, including analysis of the version of SB 14 that the Texas Senate passed.  *See* Rev.

Priv. Log at 127; Supp. Priv. Log at 4.  Defendants have also asserted the attorney-client

privilege over bill summaries of past photographic voter identification proposals.  *See* Supp.

Priv. Log at 184.  Because these documents merely provide an analysis of publicly available

information, they fall outside the protection of the attorney-client privilege.

## V.   SECTION 323.017 OF THE TEXAS GOVERNMENT CODE DOES NOT CREATE A FEDERAL EVIDENTIARY PRIVILEGE.

Defendants have also objected to requests for documents and ESI "protected from

disclosure by Texas Government Code § 323.017," Def. Resp. & Obj. to U.S. 1st RFPs, but

Defendants cannot assert a state statutory privilege in a federal court hearing a federal claim.

*See, e.g.*, *ACLU of Miss., Inc. v. Finch*, 638 F.2d 1342-45 (5th Cir. 1981). "The enforcement of federal law might be hamstrung if state-law privileges more stringent than any federal privilege . . . were applicable to all federal cases." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004). Even if a state law privilege were sufficient to establish a privilege under the federal common law in this case, Texas law is clear that exceptions from disclosure under the Public Information Act, such as Section 323.017, "do not create new privileges from discovery." Tex. Gov. Code § 552.005; *see also Texas I*, 279 F.R.D. at 34 ("Communications between the Texas Legislative Council and members of the Legislature are 'confidential.' They are not 'privileged.' The Texas Legislature knew the difference." (internal citations omitted)).[12]

## VI.    CONCLUSION

For the reasons set out above, the United States respectfully requests that this Court compel the production by Defendants of all documents and ESI withheld from production based on assertions of a state legislative privilege or a state confidentiality provision. In addition, the United States respectfully requests that this Court compel the production by Defendants of all documents and ESI improperly withheld under the attorney-client privilege and order Defendants to produce a new privilege log sufficient to establish that documents they continue to withhold meet all requirements of the privilege. Pursuant to Local Rule 7.1(c), a proposed order granting the requested relief is attached hereto.

---

[12] Texas is entitled to designate them as "Confidential" under the terms of the Protective Order in place in this litigation. *See* Consent Protective Order ¶ 1(o) (ECF No. 105).

Date:  February 11, 2014

Respectfully submitted,

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Local Rule 7.1(D)(1), I hereby aver that on February 11, 2014, I met and conferred with counsel for Defendants in an effort to obtain the requested discovery without court intervention.  Counsel cannot agree about the disposition of the instant motion.

<u>*/s/ Daniel J. Freeman*</u>
Daniel J. Freeman
Voting Section
Civil Rights Division
U.S. Department of Justice
daniel.freeman@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that on February 11, 2014, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

John B. Scott
John Reed Clay, Jr.
Gregory David Whitley
Jonathan F. Mitchell
Sean Flammer
Stephen Ronald Keister
Office of the Texas Attorney General
john.scott@texasattorneygeneral.gov
reed.clay@texasattorneygeneral.gov
david.whitley@texasattorneygeneral.gov
jonathan.mitchell@texasattorneygeneral.gov
sean.flammer@texasattorneygeneral.gov
ronny.keister@texasattorneygeneral.gov

*Counsel for Defendants*

Chad W. Dunn
Kembel Scott Brazil
Brazil & Dunn
chad@bradzilanddunn.com
scott@bazilanddunn.com

J. Gerald Hebert
Law Offices of J. Gerald Hebert
ghebert@campaignlegalcenter.org

Neil G. Baron
Law Offices of Neil G. Baron
neil@ngbaronlaw.com

Armand Derfner
Derfner, Altman, & Wilborn
aderfner@dawlaw.com

Luiz Roberto Vera, Jr.
lrvlaw@sbcglobal.net

*Counsel for Veasey Plaintiffs*

Christina Swarns
Ryan P. Haygood
Natasha M. Korgaonkar
Leah C. Aden
Deuel Ross
NAACP Legal Defense and Educational
    Fund, Inc.
cswarns@naacpldf.org
rhaygood@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
Gerald J. Sinzdak
Lynn Eisenberg
M. Hasan Ali
Richard F. Shordt
WilmerHale LLP
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
Gerard.sinzdak@wilmerhale.com
Lynn.eisenberg@wilmerhale.com
hasan.ali@wilmerhale.com
richard.shordt@wilmerhale.com

*Counsel for Texas League of Young Voters*
*Plaintiff-Intervenors*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
ezra.rosenberg@dechert.com
amy.rudd@dechert.com

Wendy Weiser
Jennifer Clark
Myrna Pérez
Vishal Agraharkar
Brennan Center for Justice at NYU School of
    Law
wendy.weiser@nyu.edu
jenniferl.clark@nyu.edu
myrna.perez@nyu.edu
vishal.argraharkar@nyu.edu

Mark A. Posner
Sonia Kaur Gill
Erandi Zamora
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
sgill@lawyerscommittee.org
ezamora@lawyerscommittee.org

*Counsel for Texas State Conference of
NAACP Branches Plaintiffs*

Jose Garza
Marinda van Dalen
Robert W. Doggett
Peter McGraw
Texas Rio Grande Legal Aid, Inc.
jgarza@trla.org
mvandalen@trla.org
rdoggett@trla.org
pmcgraw@trla.org

*Counsel for Ortiz Plaintiffs*

Rolando L. Rios
Law Offices of Rolando L. Rios
rrios@rolandorioslaw.com

*Counsel for Texas Association of Hispanic
County Judges and County Commissioners
Plaintiff-Intervenors*

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Voting Section
Civil Rights Division
U.S. Department of Justice
daniel.freeman@usdoj.gov