IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

1

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NANDITA BERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-291 (NGR) |
| BELINDA ORTIZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants | Civil Action No. 2:13-cv-348 (NGR) |

**UNITED STATES' MOTION TO MODIFY THE SCHEDULING ORDER**

On November 22, 2013, this Court set a trial date of September 2, 2014, for these consolidated cases that challenge Senate Bill 14 (2011) (SB 14), which could allow a ruling on the merits prior to the November 4, 2014, general election. Scheduling Order at 1 (ECF No. 86). Promptly thereafter the United States, followed by Defendants, and then the other plaintiffs and plaintiff-intervenors served discovery, including requests for both the production of documents and for admissions. As detailed below, that process continues unabated. It is becoming increasingly apparent, however, that the time remaining under the current schedule is insufficient to complete the complex and time-consuming fact and expert discovery necessary to compile a sufficient record to allow this Court to resolve the issues presented in this case. The United States and the public interests it seeks to vindicate in enforcing the rights guaranteed by the Section 2 of the Voting Rights Act will be irreparably prejudiced if the parties are forced to proceed to trial on the current schedule. For the reasons set forth below, the United States respectfully requests that the Court modify the remaining litigation deadlines as set forth in the attached proposed order, which, although it postpones trial on merits until after November 4, 2014, it does set a definitive date for any party to file a motion for preliminary relief prior to that date.

## I.  FACTS

**A.    PROGRESS AND ACCOMPLISHMENTS DURING THE DISCOVERY PROCESS**

To date, the United States has served two requests for the production of documents, totaling 46 discrete requests and one request to admit 59 facts; Defendants have served two requests for production of documents, totaling 24 requests; several private plaintiffs and plaintiff-intervenors have served filed their own requests for documents seeking 25 categories of documents; and the United States, in conjunction with the private parties challenging SB 14 have

1

served a set of 28 interrogatories. Furthermore, all parties have exchanged their respective initial disclosures and collaborated to finalize pre-discovery agreements and protective orders that were necessary to facilitate complete discovery responses and disclosures.

The parties are also working toward a mutually agreeable approach of estimating the statistical effect of SB 14 on Texas voters. Beginning in December 2013, the United States engaged in discussions with the State of Texas regarding the exchange of state and federal data related to the impact of SB 14 on Texas voters. These discussions led to the United States and Texas's jointly filing a proposed supplemental protective order and accompanying analytical approaches earlier today. Joint Mot. (ECF No. 160). At the same time, the United States conducted parallel discussions with all other plaintiffs and plaintiff-intervenors on this approach. All of these negotiations have sought to obtain a single set of reliable data regarding Texas voters' possession of the forms of identification required for voting under SB 14, so that the parties during the trial and the Court during its consideration of the evidence may focus on the application and significance of these uncontested data to the parties' claims.

The process of comparing Texas's data with data maintained in federal databases is complex for both logistic and methodological reasons and requires careful planning to address privacy and data security concerns, as well as to ensure that the ultimate results will provide a reliable basis for expert analyses and this Court's decision. In finding that Texas had not met its burden in its request for judicial preclearance of SB 14 under Section 5 of the Voting Rights Act, the U.S. District Court for the District of Columbia noted that it was doing so without reliable expert evidence on the number of Texas registered voters who lacked one of the required forms of identification. *Texas v. Holder*, 888 F. Supp. 2d 113, 138 (D.D.C. 2012) (three-judge court), *vacated on other grounds*, 133 S. Ct. 2885 (2013). The court observed that the record was

incomplete because Texas had sought and received an expedited schedule at the expense of obtaining complete, uncontested data related to federal forms of identification. *Id*. at 120; *see also id*. at 132.

Under the proposed supplemental protective order, Proposed Order (ECF No. 160-1), the State would produce relevant extracts of all complete Texas databases only to the United States. Defendants, in turn, would effectively withdraw their request for the complete federal databases. None of the underlying data in the federal databases at issue would be released to any party. Instead, the United States would conduct the comparisons for all parties between: (a) the Texas voter registration database (consisting of over 13 million records) and its databases containing tens of millions of records regarding the holders of Texas-issued photographic identification and (b) the Texas voter registration database and the hundreds of millions of records in the federal databases containing information about holders of acceptable federal identification or disability determinations that qualify some individuals to apply for exemptions to the identification requirements of SB 14. The United States would provide all parties with the results of the comparisons. This would allow each party's experts, based on the results of the agreed-upon search criteria, to conduct their own analyses and form their own conclusions. This will set in place a process that is equitable, with all aspects visible to all parties, and should produce reliable results while minimizing the privacy and data security concerns involved in the search of several hundred million records, all of which contain personally identifying information.

A close examination of the proposed order and attachments, which the United States and the State have requested the Court to enter, provides an insight into the analytical complexities that this case entails. We are prepared to discuss the merits of the proposed order in greater detail at the February 12, 2014, status hearing.

3

Finally, as the exchange of the initial disclosures confirmed, a significant portion of the factual underpinnings of this case had been previously presented as the State's request for judicial review of SB 14 under Section 5. The parties' familiarity with this information has allowed them to review the facts and incorporate them into their trial materials promptly.

## B. DELAYS AND DISPUTES DURING THE DISCOVERY PROCESS

At the same time, however, the litigants' familiarity with the documents and the discussions between the parties that have already ensued indicate that many of the same discovery disputes presented during the previous litigation—such as the applicability of the attorney-client privilege, whether a state legislative privilege exists, and if so, its scope in this case, and whether a state confidentiality law precludes discovery in federal litigation—will appear again. This Court will have to resolve each of these issues as well as several new ones before the parties can move forward on a significant portion of the discovery and trial preparation.

In their initial disclosures, Defendants acknowledged possession of relevant legislative and executive branch documents not in the possession of the United States, but withheld such documents and incorporated over 2,900 pages of privilege logs from the *Texas v. Holder* litigation. *See* Defs. Initial Disclosures at 33 (Ex. 1). Defendants responded to the United States' First Request for Production of Documents with a set of similar objections. *See* Def. Resp. & Obj. to U.S. First RFP (Ex. 2). Earlier today, the United States filed a Motion to Compel the Production of Legislative Documents that Defendants, through the incorporation of these pre-existing privilege logs, are asserting to be privileged. Motion to Compel (ECF No. 162).

Defendants have also failed to agree to conduct an adequate search for all relevant legislative documents.[1] On January 10, 2014, the United States provided Defendants with a list of specific legislators and requested a search of email that those legislators maintain on servers in the custody of the Texas Legislative Council, a state agency. Defendants have taken the position that they cannot search those common servers without obtaining individual legislators' consent. Defendants informed the United States that they sent a letter to each legislator at issue inquiring as to whether he or she is asserting a state legislative privilege or instead consents to the search, and requesting a response by February 7, 2014. During a telephone conference on January 28, 2014, regarding discovery matters, Defendants stated that had not begun to search for documents related to any legislators who had already consented at that time. According to a spreadsheet that Defendants provided later that day, more than 40 legislators had invoked legislative privilege and only one legislator had consent to search. Notwithstanding the United States' repeated requests for updated information, Defendants have not provided a list of legislators who affirmatively invoked the privilege before the February 7 deadline. Although Defendants have no basis on which to withhold relevant information maintained by the Texas Legislative Council's email servers, they have stated that they will take no further action or produce responsive documents based solely on the fact that a legislator has not yet responded to Defendants' inquiry.

Given the outstanding disputes regarding Defendants failure to search for and produce all relevant legislative documents that would be the focus of depositions for legislators and

---

[1] The Defendants may not rely only on the searches conducted in the *Texas v. Holder* (D.D.C.) litigation because, in that case, Texas searched for official legislative email and other legislative documents solely by delegating the search to the offices of individual Texas legislators. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). Just as Texas did not conduct any centralized searches of common email servers for legislators' documents there, Defendants have not done so to date in this case.

legislative staff, the United States believes that depositions would not be productive at this time. Because key proponents of SB 14 did not speak publicly to specific provisions included in or excluded from the bill or to the unusual procedures used to enact the legislation and instead limited their public testimony to coordinated talking points, candid documents are needed to probe those scripted statements. *See Elan Microelecs. Corp. v. Pixcir Microelecs. Co.*, No. 2:10-cv-14, 2013 WL 4101811, at *9 (D. Nev. Aug. 13, 2013); *see also* Mot. to Compel at 3-5.[2]

With regard to obtaining the data concerning voter registration, voter participation, and possession of state-issued photographic identification, the United States sought those data that reflected voter activity during the November 4, 2013, election, which was the first statewide election in which SB 14's requirements were enforced. Such data provide a useful starting point in analyzing the initial effect the law might have on voters appearing at the polls. As a result, any analysis of the laws' effect would not be reliable enough for the parties to rely upon until such time as that activity had been entered in the appropriate database. On December 12, 2013, Texas informed the United States that complete voter history from all of Texas's counties for the November 2013 election would not be reflected in its statewide voter registration database until the end of 2013. *See* Let. from Elizabeth Westfall, counsel for the United States, to John B. Scott, counsel for Defendants (Dec. 18, 2013) (Ex. 3). Therefore, the United States needed to wait at least until January 2014 to receive the completed data from Texas in order to begin comparing data. As discussed in the proposed supplemental protective order, Proposed Order at 1, the State will soon be able to provide data to the United States.

---

[2] In contrast, and notwithstanding the delayed productions from the Office of the Texas Secretary of State and the Texas Department of Public Safety, the United States served notices of Rule 30(b)(6) depositions on each of these agencies on February 7, 2014.

## II.  DISCUSSION

The United States' claim that the State of Texas's adoption and implementation of SB 14 has the purpose and will have the result of denying and abridging its citizens the right to vote on the basis of race or membership in a language minority group must be adjudicated on a fully developed record.  Despite the United States' best efforts, this cannot occur under the present schedule.[3]

### A.    THERE IS INADEQUATE TIME REMAINING UNDER THE CURRENT SCHEDULE

Under the current scheduling order, fact discovery is set to end on May 2, 2014, or in less than three months.  Plaintiffs' first expert reports are due immediately thereafter, on May 9, 2014.  The United States anticipates the number of expert reports to exceed ten; the United States itself currently anticipates presenting evidence from at least five experts, many of whom are relying on the results of the database comparison to complete their analyses.  Given the number and range of unresolved legal disputes, in addition to practical and technological challenges that still must be addressed, the United States would be irreparably prejudiced if forced to proceed to trial on the current schedule.

First, the disputes between the parties regarding the proper scope of Defendants' asserted privileges will need to be resolved.  Defendants continue to shield relevant documents behind an expansive assertion of legislative privilege.  As the United States has explained in its pending motion to compel, such documents may contain evidence that is highly probative of the United States' claim that SB 14 has a discriminatory intent and therefore violates Section 2.  *See, e.g.*,

---

[3]  As noted above, the court in the declaratory judgment action noted that the State of Texas, as the plaintiff, exercised its right to place obtaining an expedited trial date over other considerations.  *Texas v. Holder*, 888 F. Supp. 2d at 138.  Here, the United States as plaintiff seeks to remedy the shortcomings resulting from a truncated trial schedule; shortcomings that can only be overcome by having adequate time to develop a complete record.

7

*United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989).  The United States will not have sufficient time to receive, review, and develop the evidence necessary to take the depositions of key legislators and staff in the fewer than three months that remain for fact discovery, particularly in light of the likely interim before this court decides the pending motion.

Second, although the framework now exists for data comparison, that comparison remains to be undertaken.  After the United States receives the data from Texas, the data must be reviewed and processed into the appropriate format for each agency.  For most federal agencies, the coding and data preparation involved will be a multi-week process.  The federal agencies also must have adequate computational time to run the search under the identified criteria. Depending upon the complexity of the final search format, this too may be a multi-week process for certain agencies, given the many millions of records in the underlying databases, possible technical incompatibility among the diverse databases, and the computational power needed.

Distinctive features of Texas's registration system pose further complexities that will slow the process of obtaining the underlying information.  Unlike several other states that have faced challenges to similarly crafted laws, Texas's voter registration list does not contain racial information for registered voters, nor does it contain social security numbers for a large percentage of its voters.  The absence of a social security number significantly complicates the database matching process.  Finally, SB 14's requirements and exemptions also implicate more federal databases than other states' laws.  When combined with the sheer size of Texas's population, these factors also extend the time necessary for conducting the statistical analysis.

**B.   THE UNITED STATES' PROPOSAL FOR A NEW SCHEDULING ORDER**

The United States does not dispute the desirability of having some adjudication of the legality SB 14's requirements made in advance of the November 2014 Federal election. That

8

interest can, however, be fully addressed through a motion for preliminary injunction filed sufficiently in advance of the November 2014 election.  Indeed, in light of similar concerns, the district court presently hearing consolidated cases challenging North Carolina's photographic identification law and other changes to voting procedures adopted that process, setting a deadline for the filing of preliminary injunction motions well in advance of the November 2014 general election, while hewing to a schedule for expert discovery and trial in 2015.  *See* Scheduling Order, *N.C. State Conf. of the NAACP v. McCrory*, No. 13-cv-658 (M.D.N.C. Dec. 13, 2013) (ECF No. 39) (Ex. 4).

The United States is aware of no challenge to a photo voter identification law under Section 2 of the Voting Rights Act that has proceeded directly to trial under the sort of highly compressed schedule in place in this case.  For example, plaintiffs in *Jones v. Deininger*, No. 2:12-cv-00185 (E.D. Wis.), a Section 2 challenge to Wisconsin's voter identification law, filed their initial complaint on February 23, 2012, Compl. (ECF No. 1), and moved for a preliminary injunction on April 23, 2012, Mot. for Prelim. Inj. (ECF No. 19).  A judge in another case enjoined Wisconsin's voter identification law, and the parties in *Jones* proceeded to trial on November 4, 2013, almost 21 months after the filing of the initial complaint.  Civil Trial Minutes (ECF No. 103).

In *Gonzalez v. Arizona*, No. CV-06-1268 (D. Ariz.), the initial plaintiffs to challenge Arizona's Proposition 200 filed a complaint on May 9, 2006, including the allegation that the law violated Section 2 of the Voting Rights Act, and moved for a preliminary injunction concerning voter identification requirements.  Compl. (ECF No. 1); Mot. for Prelim. Inj. (ECF No. 7).  After preliminary decisions and appeals, the case returned for full adjudication in the district court.  The Court held a trial on the merits in July 2008, approximately 26 months after

the initial complaint was filed, and issued a decision on August 20, 2008. Findings of Fact and Conclusions of Law (ECF No. 1041).

In *Common Cause/Georgia v. Billups*, No. 4:05-cv-201 (N.D. Ga.), plaintiffs filed their complaint challenging the Georgia voter identification requirement under Section 2 as well as other grounds, on September 19, 2005, and simultaneously filed a motion for a preliminary injunction. Compl. (ECF No. 1); Mot. for Prelim. Inj. (ECF No. 2). Following preliminary decisions, appeals, and a temporary stay on the proceedings pending resolution of a state court challenge to the voter identification requirements, *see, e.g.*, Prelim. Inj. (ECF No. 47); Notice of Appeal (ECF No. 52); Order Granting Stay (ECF No. 146), the district court trial started on August 23, 2007, approximately 23 months after the case had been filed. Minute Entry (ECF No. 206). The Court issued its decision on September 6, 2007. Order (ECF No. 231).

The United States respectfully requests entry of following schedule to address the concerns raised above:

| | |
|---|---|
| Fact Discovery Closes: | July 11, 2014 |
| Deadline for Filing Preliminary Injunctions: | July 18, 2014 |
| Preliminary Injunction Responses Deadline: | August 1, 2014 |
| Preliminary Injunction Reply Deadline: | August 15, 2014 |
| Plaintiffs' Expert Reports: | August 29, 2014 |
| Defendants' Expert Rebuttal Reports: | September 19, 2014 |
| Plaintiffs' Expert Reply Reports: | October 3, 2014 |
| Expert Discovery Closes: | October 24, 2014 |
| Deadline for Dispositive and *Daubert* Motions | November 7, 2014 |
| Dispositive and *Daubert* Oppositions Due: | November 21, 2014 |

Pretrial Order: December 1, 2014

Pretrial Conference December 15, 2014

Trial Ready as of January 2015

Moving the close of fact discovery as proposed above will prevent the discovery regarding key questions of legislative intent from being unduly constricted based on the need to litigate Texas's assertions of privilege. This time period would also allow for the necessary federal and state data comparisons to be completed in advance of the deadline for filing of a preliminary injunction. The United States' proposal increases the time between the last expert report and the close of expert discovery, currently set at two weeks. This modification is based on the number of expert reports that the Court can reasonably expect to receive, as described above. The dates for dispositive and *Daubert* motions, set forth above, reflects the anticipated reliance that the parties will place on expert testimony. The United States respectfully submits that these dates will both allow sufficient time for the Court to resolve those evidentiary issues that have already surfaced and will be presented shortly as well as allow sufficient time to complete the necessary fact and expert discovery that will result in a complete record.

### III. CONCLUSION

For the reasons set out above, the United States respectfully requests that this Court compel modify the existing scheduling order. Pursuant to Local Rule 7.1(c), a proposed order granting the requested relief is attached hereto.

Date:  February 11, 2014

                                  Respectfully submitted,

KENNETH MAGIDSON            JOCELYN SAMUELS
United States Attorney             Acting Assistant Attorney General
Southern District of Texas          Civil Rights Division

                                  */s/ Anna M. Baldwin*
                                  T. CHRISTIAN HERREN, JR.
                                  MEREDITH BELL-PLATTS
                                  ELIZABETH S. WESTFALL
                                  BRUCE I. GEAR
                                  JENNIFER L. MARANZANO
                                  ANNA M. BALDWIN
                                  DANIEL J. FREEMAN
                                  Attorneys, Voting Section
                                  Civil Rights Division
                                  U.S. Department of Justice
                                  950 Pennsylvania Avenue, N.W.
                                  Washington, D.C. 20530

## **CERTIFICATE OF CONFERRAL**

      Pursuant to Local Rule 7.1(D)(1), I hereby aver that on February 11, 2014, my co-counsel and I met and conferred with counsel for the other plaintiffs, plaintiff-intervenors, and Defendants in an effort to reach consent regarding this request.  The Texas League of Young Voters Plaintiff-Intervenors and the Texas State Conference of NAACP Branches Plaintiffs join in this motion.  The Ortiz plaintiffs do not oppose this motion.  Defendants do not take a position on this motion.  The Veasey plaintiffs and Texas Association of Hispanic County Judges and County Commissioners Plaintiff-Intervenors oppose this motion.  In sum, counsel cannot agree about the disposition of the instant motion.

                                                    */s/ Daniel J. Freeman*
                                                    Daniel J. Freeman
                                                    Voting Section
                                                    Civil Rights Division
                                                    U.S. Department of Justice
                                                    daniel.freeman@usdoj.gov

## **CERTIFICATE OF SERVICE**

   I hereby certify that on February 11, 2014, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

John B. Scott
John Reed Clay, Jr.
Gregory David Whitley
Jonathan F. Mitchell
Sean Flammer
Stephen Ronald Keister
Office of the Texas Attorney General
john.scott@texasattorneygeneral.gov
reed.clay@texasattorneygeneral.gov
david.whitley@texasattorneygeneral.gov
jonathan.mitchell@texasattorneygeneral.gov
sean.flammer@texasattorneygeneral.gov
ronny.keister@texasattorneygeneral.gov

*Counsel for Defendants*

Chad W. Dunn
Kembel Scott Brazil
Brazil & Dunn
chad@bradzilanddunn.com
scott@bazilanddunn.com

J. Gerald Hebert
Law Offices of J. Gerald Hebert
ghebert@campaignlegalcenter.org

Neil G. Baron
Law Offices of Neil G. Baron
neil@ngbaronlaw.com

Armand Derfner
Derfner, Altman, & Wilborn
aderfner@dawlaw.com

Luiz Roberto Vera, Jr.
lrvlaw@sbcglobal.net

*Counsel for Veasey Plaintiffs*

Christina Swarns
Ryan P. Haygood
Natasha M. Korgaonkar
Leah C. Aden
Deuel Ross
NAACP Legal Defense and Educational
 Fund, Inc.
cswarns@naacpldf.org
rhaygood@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
Gerald J. Sinzdak
Lynn Eisenberg
M. Hasan Ali
Richard F. Shordt
WilmerHale LLP
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
Gerard.sinzdak@wilmerhale.com
Lynn.eisenberg@wilmerhale.com
hasan.ali@wilmerhale.com
richard.shordt@wilmerhale.com

*Counsel for Texas League of Young Voters Plaintiff-Intervenors*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
ezra.rosenberg@dechert.com
amy.rudd@dechert.com

Wendy Weiser
Jennifer Clark
Myrna Pérez
Vishal Agraharkar
Brennan Center for Justice at NYU School of Law
wendy.weiser@nyu.edu
jenniferl.clark@nyu.edu
myrna.perez@nyu.edu
vishal.argraharkar@nyu.edu

Mark A. Posner
Sonia Kaur Gill
Erandi Zamora
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
sgill@lawyerscommittee.org
ezamora@lawyerscommittee.org

*Counsel for Texas State Conference of NAACP Branches Plaintiffs*

Jose Garza
Marinda van Dalen
Robert W. Doggett
Peter McGraw
Texas Rio Grande Legal Aid, Inc.
jgarza@trla.org
mvandalen@trla.org
rdoggett@trla.org
pmcgraw@trla.org

*Counsel for Ortiz Plaintiffs*

Rolando L. Rios
Law Offices of Rolando L. Rios
rrios@rolandorioslaw.com

*Counsel for Texas Association of Hispanic County Judges and County Commissioners Plaintiff-Intervenors*

 

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Voting Section
Civil Rights Division
U.S. Department of Justice
daniel.freeman@usdoj.gov