UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


| | | |
|---|---|---|
| MARC VEASEY, ET AL., | ) | CASE NO: 2:13-CV-00193 |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Corpus Christi, Texas |
| | ) | |
| RICK PERRY, ET AL., | ) | Wednesday, February 12, 2014 |
| | ) | |
| Defendants. | ) | (9:00 a.m. to 9:46 a.m.) |


STATUS CONFERENCE

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE


Appearances:             See Next Page

Court Recorder:          Genay Rogan

Clerk:                   Brandy Cortez

Transcriber:             Exceptional Reporting Services, Inc.
                         P.O. Box 18668
                         Corpus Christi, TX 78480-8668
                         361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>APPEARANCES FOR:</u>

Plaintiffs:                ARMAND DERFNER, ESQ.
                           P. O. Box 600
                           Charleston, SC 29402

                           CHAD W. DUNN, ESQ.
                           KEMBEL SCOTT BRAZIL, ESQ.
                           Brazil and Dunn
                           4201 Cypress Creek Parkway
                           Suite 530
                           Houston, TX 77068

                           J. GERALD HEBERT, ESQ.
                           191 Somervelle Street
                           #405
                           Alexandria, VA 22304

                           NEIL G. BARON, ESQ.
                           914 FM 517 Road, W.
                           Suite 242
                           Dickinson, TX 77539

                           EMMA SIMPSON, ESQ.
                           (No address provided)

United States              ANNA BALDWIN, ESQ.
of America:                U.S. Department of Justice
                           950 Pennsylvania Avenue, N.W.
                           NWB 7273
                           Washington, DC 20009

                           ELIZABETH S. WESTFALL, ESQ.
                           U. S. Department of Justice
                           950 Pennsylvania Avenue, N.W.
                           NWB Room 7125
                           Washington, DC 20530

                           DANIEL J. FREEMAN, ESQ.
                           U.S. Department of Justice
                           950 Pennsylvania Ave. NW
                           NWB 7123
                           Washington, DC 20009

                           ROBERT S. BERMAN, ESQ.
                           U.S. Department of Justice
                           950 Pennsylvania Avenue, N.W. - NWB
                           Washington, DC 20530

**APPEARANCES FOR:**              (CONTINUED)


United States                JOHN ALBERT SMITH, III, ESQ.
of America:                  Office of the U.S. Attorney
                             800 N. Shoreline Boulevard
                             Suite 500
                             Corpus Christi, TX 78401

Texas Association of         ROLANDO L. RIOS, ESQ.
Hispanic County Judges       115 E. Travis
and County                   Suite 1654
Commissioners:               San Antonio, TX 78205

                             PRESTON E. HENRICHSON, ESQ.
                             222 W. Cano
                             Edinburg, TX 78539

Oscar Ortiz, et al.:         JOSE GARZA, ESQ.
                             7414 Robin Rest Dr.
                             San Antonio, TX 78209

                             ROBERT W. DOGGETT, ESQ.
                             Texas Rio Grande Legal Aid
                             4920 North IH 35
                             Austin, TX 78751

                             MARINDA VAN DALEN, ESQ.
                             Texas RioGrande Legal Aid
                             531 E. St. Francis
                             Brownsville, TX 78520

State of Texas:              JOHN BARRET SCOTT, ESQ.
                             Scott, Yung, L.L.P.
                             208 N. Market Street
                             Suite 200
                             Dallas, TX 75202

                             STEPHEN R. KEISTER, ESQ.
                             Texas Attorney General
                             P.O. Box 12548
                             Capitol Station
                             Austin, TX 78711

**APPEARANCES FOR:**          (CONTINUED)


Texas League of Young          RYAN HAYGOOD, ESQ.
Voters Education Fund:         NAACP Legal Def and Educational
                              Fund, Inc.
                              40 Rector Street
                              5th Floor
                              New York, NY 10006

                              NATASHA KORGAONKAR, ESQ.
                              DEUEL ROSS, ESQ.
                              NAACP Legal Def and Educational
                              Funds, Inc.
                              40 Rector Street
                              5th Floor
                              New York, NY 10006

                              RICHARD F. SHORDT, ESQ.
                              Wilmer Cutler, et al.
                              1875 Pennsylvania Ave. NW
                              Washington, DC 20006

Mexican American              EZRA D. ROSENBERG, ESQ.
Legislative Caucus,           Dechert, LLP
et al.:                       902 Carnegie Center
                              Suite 500
                              Princeton, NJ 08540-6531

                              GARY BLEDSOE, ESQ.
                              316 W. 12th St.
                              Austin, TX 78701

                              AMY L. RUDD, ESQ.
                              Dechert, LLP
                              300 W. 6th St., Suite 2010
                              Austin, TX 78701

                              DANIEL COVICH, ESQ.
                              [Address not provided]

| | |
|---|---|
| 1 | **Corpus Christi, Texas; Wednesday, February 12, 2014; 9:00 a.m.** |
| 2 | **(Courtroom and telephonic appearances)** |
| 3 | **(Call to Order)** |
| 4 | **THE COURT:**  Court calls Cause Number C-13-193, |
| 5 | *Veasey, et al. versus State of Texas, et al.*  If the plaintiffs |
| 6 | will announce for the record, and we'll start.  Go ahead. |
| 7 | **MR. DUNN:**  Your Honor, this is Chadd Dunn on behalf |
| 8 | of the Veasey LULAC plaintiffs.  With me in the courtroom is |
| 9 | Armand Derfner and Neil Baron, and joining us by telephone are |
| 10 | Gerry Hebert, Scott Brazil, and Emma Simpson.  Good morning, |
| 11 | your Honor. |
| 12 | **THE COURT:**  Good morning.  So, you'll be doing the |
| 13 | speaking for the Veasey plaintiffs? |
| 14 | **MR. DUNN:**  Mr. Derfner and I will be doing the |
| 15 | speaking for our clients, your Honor. |
| 16 | **THE COURT:**  All right. |
| 17 | **MR. RIOS:**  Rolando Rios for the Hispanic Judges and |
| 18 | Commissioners, and I'll be doing the speaking today. |
| 19 | **THE COURT:**  Okay. |
| 20 | **MR. SMITH:**  Your Honor, on behalf of the United |
| 21 | States, John Smith with Robert Berman, Anna Baldwin, and |
| 22 | Elizabeth Westfall.  Ms. Berman will be doing the speaking -- |
| 23 | or I mean Ms. Baldwin will be doing the speaking for the United |
| 24 | States. |
| 25 | **THE COURT:**  All right. |

1          **MR. ROSENBERG:**  Good morning, your Honor.  Ezra

2   Rosenberg on behalf of the Texas State Conference of NAACP

3   Branches and MALC, and with me are Daniel Covich --

4          **MR. HENRICHSON:**  Good morning.  This is Preston

5   Henrichson appearing on behalf of Hidalgo County.

6          **THE COURT:**  Hidalgo County?  Okay.

7          **MR. ROSENBERG:**  And with me are Daniel Covich and Amy

8   Rudd.

9          **THE COURT:**  Okay.

10          **MR. HAYGOOD:**  Good morning, your Honor.  This is

11   Brian Haygood for the Texas League of Young Voters.  I'm joined

12   by my colleagues, Natasha Korgaonkar and Deuel Ross.  Also on

13   the telephone is Richard Shordt.

14          **MR. GARZA:**  Jose Garza with the Ortiz plaintiffs with

15   Marinda Van Dalen and Robert Doggett.  And I will be speaking

16   for the Ortiz plaintiffs, your Honor.

17          **THE COURT:**  Okay.  Is that everyone, all of the

18   groups?

19          **MR. SCOTT:**  Your Honor, John Scott on behalf of the

20   Texas defendants.  I have some folks standing by on the phone

21   in case there are some specific discovery issues status wise

22   that you'd like to get into.

23          **THE COURT:**  Okay.  Anyone else or anyone else present

24   by phone?

25          **(No audible response)**

1        Then, we'll proceed.  The Court has set this for a

2  status conference, I believe when we entered our scheduling

3  order, set this date for a status conference to maybe address

4  any discovery issues that needed to be looked at or anything

5  else.  And, of course, yesterday there were various things

6  filed right before this hearing.

7        The first matter was a joint motion by the United

8  States and the defendants to enter the discovery order and the

9  supplemental protective order that was attached to that motion.

10  And I understand there is some objections by the Veasey LULAC

11  plaintiffs, not so much to the substance of it, but the timing

12  or the sequence of how that is to play out.  So, if the United

13  States wants to take the lead on that?

14        Good morning.

15        **MS. BALDWIN:**  Good morning, your Honor.  Anna Baldwin

16  for the United States.

17        The supplemental protective order and discovery order

18  that the United States has moved together jointly with Texas

19  for entry deals with the production of state and federal

20  databases that will address core questions at the heart of this

21  case, namely, which and how many Texas voters have the forms of

22  ID required by SB 14.  So, both state forms of ID, like

23  driver's licenses and license to carry and identification --

24  election identification certificates, and the various federal

25  forms of ID.

1          This order sets in place a framework that we believe

2    addresses all of the necessary data security and privacy

3    concerns that both the State has with its databases and are

4    involved with the federal data, as well as, for the litigation

5    of this case, putting into place a process that is fair,

6    equitable, and transparent that will allow analysis of ID

7    possession rates.  The results of this --

8          **THE COURT:**  Well, why don't you explain the databases

9    and algorithms and how all that plays out.

10         **MS. BALDWIN:**  Okay.  Well, essentially, the process

11   that's envisioned in the United States' order, to bring the

12   Court to where we are today, immediately after the status

13   conference in which the scheduling order was set, the United

14   States served its request for databases from the State of

15   Texas.  Data wasn't able to be produced by the time that those

16   were first due in December because the United States requested

17   certain voter history and voter information that wouldn't have

18   been available until the end of December or beginning of

19   January.  At the same time, the State served request for

20   essentially the entirety of identifying information of people

21   who are holders of various federal forms of ID.  So, at the

22   point we're at right now, no data from either the State

23   defendants or the federal government has been produced.

24         Instead, what the parties have been working on, and

25   have been working diligently, beginning in December, the United

1    States and defendants have been negotiating a framework for the

2    exchange of the data.  So, as contemplated in the supplemental

3    protective order, one day after the order is entered, the

4    defendants would produce data, the complete extract of the

5    underlying databases, only to the United States.  After that

6    point -- and that's in, your Honor, paragraph one of the order

7    that we've proposed.  Paragraph five -- just to walk through

8    the kind of time frame highlights -- within seven days after

9    that, the Department of Justice would propose its search

10   algorithm to all parties.

11          And, your Honor, we use the word "algorithm" a lot,

12   but essentially what that means is the number and nature of

13   fields that the United States would be proposing to search on,

14   and more than just the fields, various data preparation and

15   cleanup steps, kind of soup to nuts, the recipe for how these

16   databases that don't exist to talk to one another normally will

17   be compared so that we can see who it looks like are holders of

18   these various forms of ID.  So, before the department can even

19   finalize its algorithm, although it's been working diligently

20   on that and has been in repeated communication with the federal

21   agencies to understand what their abilities are going to be, we

22   have to see the Texas data to see the completeness of that data

23   and to make any final adjustments to that algorithm.

24          So, we would disclose our algorithm to the other

25   parties; within 10 business days of disclosure of the

1    algorithm, other parties could propose modifications to the

2    algorithm; and that's in paragraphs six and seven of the

3    proposed order.  If defendants found that they didn't have

4    sufficient information to suggest modifications, they would

5    have an additional 10 business days in which to seek additional

6    information, including further information from the federal

7    databases about particular data elements that are contained in

8    different fields.  Within 14 days, as set out in paragraph

9    nine, of disclosure of the United States' algorithm, we would

10   hold a meet-and-confer to try and agree on one common search

11   process.  And then once -- ultimately, the order lays out that

12   there will be one set of search criteria for all plaintiffs,

13   and if there is not ability to come to an agreement, also one

14   run for the defendants.

15           The point of having a meet-and-confer process is that

16   even if we're going to have -- and this is a lot of the dispute

17   with the Veasey plaintiffs.  Even if there are going to be two

18   algorithms, there's still a lot of work that can be done to

19   make the process more efficient and ultimately get from where

20   we are now to producing data, where we could say, are there

21   common data preparation and data cleaning steps that we can all

22   agree to take so that the federal agencies can do this

23   complicated process quickly for, you know, both using common

24   steps for the United States and the defendants.  So, all of the

25   steps are made to try and get from where we are now, where no

1  data has been disclosed, to getting to a point where we have

2  one or two sets of data that all parties and their experts can

3  rely on to reach conclusions about which registered Texas

4  voters are, in fact, holders of the forms of ID at issue.

5          THE COURT:  And the Government's position, then, is

6  that all these steps are necessary?  We can't cut anything to

7  make this more efficient and quicker and --

8          MS. BALDWIN:  Your Honor, we believe that all of

9  these steps are, in fact, necessary.  Essentially, the Veasey

10 plaintiffs are proposing that the United States would go ahead

11 with searching with its algorithm, and when defendants are able

12 to finalize theirs, then we would start and -- you know, to

13 imagine that there is a two-track process.  And that idea is

14 really based on a misunderstanding of the capabilities of the

15 federal agencies at stake.  It's not as if once we start

16 running the United States' and the plaintiffs' algorithm that

17 there are at these other agencies -- at the Social Security

18 Admission, the Veteran's Admission, the State Department --

19 that there are other employees who aren't already involved in

20 processing the vast quantities of data for the United States

21 that could just be tapped and start running the same process.

22          In addition --

23          THE COURT:  So, they cannot be run at the same time?

24 Is that the position of the United States?

25          MS. BALDWIN:  It's our under -- it's not our

1  understanding that they could.  In addition, to the extent

2  that --

3         THE COURT:  Can they be run at the same time?  Or you

4  don't know.

5         MS. BALDWIN:  Right now we don't have final

6  algorithms, your Honor, so --

7         THE COURT:  Okay.  Could those be run at the same

8  time, both algorithms, or worked on at the same time?  And if

9  you don't know, that's okay --

10        MS. BALDWIN:  Right.  We --

11        THE COURT:  -- but it's something we'll need to find

12 out.

13        MS. BALDWIN:  We don't know definitively right now

14 for a couple of reasons, your Honor.  One, we don't have the

15 definitive search criteria that the United States is going to

16 run and that Texas would run.

17        THE COURT:  Right.

18        MS. BALDWIN:  And, so, in terms of Texas --

19        THE COURT:  But let's assume there's two separate;

20 you all can't agree one.

21        MS. BALDWIN:  Right.

22        THE COURT:  Can they go at the same time?

23        MS. BALDWIN:  So --

24        THE COURT:  Yes or no?  Or, "I don't know."

25        MS. BALDWIN:  The process that the United States is

13

```
 1   proposing is to try and figure out as many common elements of

 2   both to allow the data --

 3            THE COURT:  Okay.  I'm sorry.  I just -- because I

 4   may forget this.  Can they be run at the same time?

 5            MS. BALDWIN:  Computationally, the process that the

 6   United States has set out is trying to get to the point that it

 7   could be one large process, even if it's separate searches that

 8   both the defendants and the United States --

 9            THE COURT:  So, the answer is no, you can't do that

10   right now.

11            MS. BALDWIN:  I can't give a definitive answer right

12   now.

13            THE COURT:  So, "I don't know" is the answer.

14            MS. BALDWIN:  Yes, your Honor.

15            THE COURT:  Okay.

16            MS. BALDWIN:  But, in terms of starting the United

17   States' process and then separately starting a separate process

18   for the State of Texas, I have no reason to believe that that

19   is likely to result in final data being made available to the

20   parties and the Court any faster, because the agency personnel

21   and the computational time that would be involved, it's not as

22   if there are additional agency personnel who can necessarily

23   just be pulled in to start the same process over again.  If

24   those resources existed, they would be involved in the first

25   instance on working on the United States' and plaintiffs'
```

14

1   algorithm.

2           **THE COURT:**  Okay.

3           **MS. BALDWIN:**  Because, again, these are agencies that

4   this is already outside of their core focus, and they're having

5   to, you know, find the time and resources to work on this.

6           **THE COURT:**  So, the United States' position is that

7   nothing can be cut from the sequence of events; all of this

8   time period is necessary.

9           **MS. BALDWIN:**  Your Honor, some of the time periods,

10  you know, that are proposed in terms of the 10 days, 10

11  business days for defendants to make modifications, 10 business

12  days for them to seek additional information, those are time

13  frames that the defendants thought were necessary, but those

14  core time frames aren't changed in the Veasey proposal.  So,

15  those are common across all of the proposals.  At any rate, in

16  both the United States process and under the Veasey process, we

17  think neither of them would ultimately enable us to have

18  complete results under the current schedule that's in place.

19          **THE COURT:**  All right.  Anything from -- Mr. Scott,

20  do you want to add anything to that?  It was a joint motion.

21          **MR. SCOTT:**  Your Honor, the only thing I would add is

22  that this is a process that is a result of a shortcut.  We

23  don't believe ultimately the database match produces anything

24  that's going to be relevant.  This is the D.C. Circuit and

25  other courts have found, including the Supreme Court.  So,

1    ultimately, though, this is kind of our olive branch to try and

2    work out some resolution, because we don't really want to give

3    up all of the personally identifiable information in the DPS

4    database, nor the Secretary of State's database, so we've tried

5    to work -- and I think the DOJ has worked well with us -- to

6    get to this point.

7            So, other than that provision, I guess, to make sure

8    that the Court understands how much sensitive data is involved

9    in this, we're fine with whatever the DOJ says and the Court,

10   obviously, instructs us to do from this point forward.  But we

11   don't want the Court to be misunderstood -- or misunderstand us

12   that we somehow believe these results would be informative for

13   the Court ultimately.

14           **THE COURT:**  Okay.  All right.

15           Mr. Dunn?

16           **MR. DUNN:**  May it please the Court and counsel.  Good

17   morning.  Thank you, Judge.

18           I don't want to get ahead of the Court in terms of

19   where it wants to go on the subject matter, but I think the

20   issues as it pertains to the database match will be

21   substantially informed by the Court's decision on the trial

22   date.  I think there is a belief, at least among some counsel,

23   that there is flexibility still in the trial date, and when

24   there is finality to that decision, I think there will be

25   substantial motivation that some of these issues will work

16

1   themselves out.

2          **THE COURT:**  Well, that's our final date.  I mean, we

3   set a scheduling order, and I'm planning to try it then.

4          **MR. DUNN:**  All right.  Then, on the individual

5   issue -- first, to answer your Honor's question, we have our

6   own experts.  Obviously, they're not employees of the United

7   States Government, and, so, whatever bureaucratic limitations

8   exist there on doing this match at the same time, obviously,

9   we're not familiar with.  However, our experts say, from a

10  technical standpoint, it is possible to run multiple algorithms

11  at the same time on this data and that the computer technology,

12  although not as simple as what you might pick up at Best Buy,

13  is not exactly scarce and certainly would be vastly available

14  to the United States Government.

15         As to the individual changes that we think can be

16  made to the protective order to get this done in time for our

17  trial date, my co-counsel, Mr. Derfner, has been actively

18  involved with that, and, so, I'm going to hand the baton off to

19  him.

20         **MR. DERFNER:**  Thank you, your Honor.  I'm  Armand

21  Derfner.

22         We do believe that these processes can run together.

23  Obviously --

24         **THE COURT:**  And is that the main issue?  Is that the

25  contention, just getting these run so we can move forward?

1          **MR. DERFNER:**  Yes; although, frankly, I agree with --

2   with the State of Texas, in one sense, that I'm not sure how

3   much difference it's going to make in the end.  We know in the

4   end, no matter what the matches come out as, there is going to

5   be three-quarters of a million, a million, more than a million,

6   something like that, Texas registered voters who don't have a

7   match.  In the D.C. case, Texas took the position that there

8   were, I think, 780,000; the U.S. took the position there were

9   about a million more.  The number is going to be something like

10  that no matter what happens.  But we believe that a lot of

11  these things can be run together.

12          I would say, your Honor, if there is any question,

13  any uncertainty about whether this can be done, for that

14  reason, one of the things we gave you in the mountain of paper

15  that we blizzarded you with yesterday was -- the third document

16  is two separate orders.  And one order -- you would have to ask

17  the United States, but I think one order, the first order that

18  we would propose, has what we call the "agreed provisions."  In

19  other words, all the confidentiality and protective provisions

20  and getting the process started.  In other words, as

21  Ms. Baldwin says, once you sign an order that the State of

22  Texas would produce the DPS and whatever else databases within

23  one day and then the U.S. would present its formula, which is

24  really what the algorithm is, within a certain number of days,

25  and so that if you wanted to you could sign that first order,

1    get things started, have all the confidentiality provisions in

2    place, and that would -- if you wanted to, you could tell us

3    and the U.S. and Texas, and whoever, to see what we can figure

4    out about what's possible before signing a second order.  But

5    we believe it probably is possible.

6            We also believe, frankly, although we don't know

7    this, that a number of the times in the proposed orders could

8    be shortened.  For example, I think it says once the

9    department -- once the United States sends its formula in, then

10   I think everybody has 10 days.  I, frankly, believe that we'd

11   be able to agree with it in a very short period of time.  We

12   wouldn't need 10 days.  And I think a lot of those other times

13   can be shortened.  So, frankly, if the Court tells us to go

14   ahead and do it, I think it will get done.

15           **THE COURT:**  All right.  Then, Ms. -- oh.  I'm sorry.

16           **MR. RIOS:**  Just a -- Rolando Rios, your Honor, for

17   the Hispanic Judges and Commissioners.  Just a brief comment.

18           Probably half of the members of our association were

19   elected pursuant to the remedies that were imposed by Section 5

20   of the Voting Rights Act, the Voting Rights Act itself, keeping

21   the State from -- and the local jurisdictions -- from adopting

22   discriminatory election practices.  If this -- if this election

23   goes forward -- and that's what we're concerned about -- what

24   they're asking for is a trial after the election is conducted,

25   imposing a voting change, your Honor, that the three-judge

1    court has already found in D.C. discriminates against

2    minorities.  It's a real serious concern for our clients

3    because it will, in our view, impose enormous damage on the

4    community.  It would be the first time in 38 years that the

5    State adopts a -- imposes a voting change that hasn't been

6    approved by the Department of Justice, much less found to

7    violate the rights of minorities by a three-judge court in D.C.

8              We urge the Court to stay with the schedule that we

9    have in place.  It's a good schedule.  There is no reason why

10   we can't meet those deadlines.

11             Thank you, your Honor.

12             **THE COURT:**  Okay.  Let me let any of the other

13   intervenor plaintiffs or plaintiffs pipe in if they'd like to.

14             Mr. Garza or Mr. Haygood or Mr. Rosenberg?

15             **MR. GARZA:**  Your Honor, from the Ortiz plaintiffs,

16   we're sort of in a difficult position.  We'd like the trial to

17   move as quickly as possible and before the election, if

18   possible.  But our expert is relying on the results of the runs

19   that the Department of Justice is going to run, so we're sort

20   of in a difficult position on that.  Therefore, our position is

21   that, while we do not object to the motion, we don't join in

22   the motion.

23             **THE COURT:**  Okay.

24             **MR. ROSENBERG:**  And Ezra Rosenberg on behalf of Texas

25   NAACP and MALC.  And we are supportive of the Department of

20

1    Justice's position, and I wonder whether -- and I'm not the

2    person perhaps to give this information -- whether more

3    information is -- should be given perhaps on the complexity of

4    the databases that are in issue here.

5              **THE COURT:**  Okay.

6              **MR. ROSENBERG:**  Thank you.

7              **THE COURT:**  Mr. Haygood?

8              **MR. HAYGOOD:**  Good morning, your Honor.  Ryan Haygood

9    for the Texas League of Young Voters.

10             We do join in Mr. Rios's concern about the photo ID

11   measure going into effect in advance of this election, but we

12   are also very aware of the complexity of this case,

13   particularly with respect to the database issue and the

14   algorithm issue, which has not yet been resolved.  We have

15   joined the Department of Justice's motion to amend the schedule

16   recognizing, we think, that the preliminary injunction provides

17   an opportunity to stop the election if we can show the elements

18   of the preliminary injunction standard.  So, for that reason,

19   your Honor, we join the Department of Justice in the motion to

20   amend the schedule.

21             **THE COURT:**  All right.  I think that's everyone on

22   this side, then.

23             Ms. Baldwin, I mean, is there -- have you -- has the

24   Government had a chance to review what was submitted?  I

25   believe it was VE-161, Exhibit 3, which is the agreed

1   provisions that we could go forward on and then maybe discuss a

2   little bit later as to the complexities and what's doable and

3   feasible regarding running the matters at the same time?

4        **MS. BALDWIN:**  Your Honor, it's -- whether it's

5   running the matters at the same time or not, they both have to

6   be run.  And, frankly, based on the information that we have

7   from federal agencies and information that's already in the

8   record from the prior litigation, we have no reason to believe

9   that under our proposed order or the Veasey proposed order that

10  it can be done in an orderly manner under the present schedule.

11       **THE COURT:**  But there are some matters that are

12  agreed to that can get this rolling --

13       **MS. BALDWIN:**  Yes, ma'am.

14       **THE COURT:**  -- in terms of time frames.

15       **MS. BALDWIN:**  So --

16       **THE COURT:**  And that's what I'm trying to figure out.

17  Has the Government reviewed 161, Exhibit 3, which is what

18  Veasey plaintiffs are saying are agreed matters --

19       **MS. BALDWIN:**  Yes.

20       **THE COURT:**  -- that the Court can go ahead and sign,

21  let's go forward, you all discuss a little bit further.

22  Because what I'm hearing right now, we're not sure what can be

23  done in terms of what's feasible and what can actually be done

24  in terms of running those matters, it seems to be a little bit

25  up in the air.

1              **MS. BALDWIN:**  Your Honor, certainly there -- we could

2    move forward with Texas disclosing their data, the United

3    States moving forward with disclosing its algorithm.  However,

4    we're coming up on, in less than three months, the deadline for

5    the parties to file expert reports.  And the information that

6    we have from multiple federal agencies is that the process that

7    the United States itself wants to do would take between six to

8    eight weeks.  And, so, that's not six to eight weeks from --

9              **THE COURT:**  Okay.  And that's why we're kind of not

10   looking at -- hopefully, we don't have to there; we can do

11   something different.

12             **MS. BALDWIN:**  But, your Honor, this is -- the United

13   States, as plaintiff, respectfully, needs to build the record

14   on which it thinks it can prevail on this case.

15             **THE COURT:**  Yeah, I understand.  I understand.

16             **MS. BALDWIN:**  And that involves --

17             **THE COURT:**  I understand what's before the Court.

18   I'm just trying to get this discovery moving.

19             **MS. BALDWIN:**  Your Honor, respectfully, getting it

20   moving is one thing, and we can go ahead and start the process,

21   but how long it will actually take the federal agencies to code

22   the algorithm, to do the data preparation, to actually get the

23   results out, we don't think that those final steps are going to

24   be compatible with the schedule that's currently in place.

25             **THE COURT:**  Well, we have to work with the schedule

1    that's currently in place.  So, my question is:  Can I sign

2    this 161, Exhibit 3, as an agreed order to the provisions that

3    are agreed to regarding this joint motion that's before the

4    Court, or do you all need to look at that further?

5              **MS. BALDWIN:**  Your Honor, we need to get back to the

6    Court on that.

7              **THE COURT:**  Because there is no reason why what's

8    agreed to can't be ordered by the Court and we can proceed on

9    that.  And, then, if the issue is how this is going to be run

10   and what can be done, you know, we can address that more as

11   soon as possible.

12             **MS. BALDWIN:**  Your Honor, I'd respectfully request to

13   get back to the Court within 24 hours on that.

14             **THE COURT:**  Okay.  That's fine.

15             So, anything else on that joint motion, then?

16             **MR. DUNN:**  Well, your Honor --

17             **THE COURT:**  It's my understanding where we are, we're

18   going to try to get an agreed order in place, what can be

19   agreed to, and then there's going to be a couple issues left

20   hanging.

21             **MR. DUNN:**  Yes.  Your Honor, this is Chadd Dunn

22   again, for the record, on behalf of the Veasey LULAC

23   plaintiffs.

24             What I would propose, if it works with the Court's

25   schedule or if I could get the Court to entertain a proposal,

1  there are two serious outstanding issues that are holding up

2  discovery.  One of them, of course, is this database match; the

3  other one is this legislative privileged production of State e-

4  mails and documents.

5          **THE COURT:**  And that was just filed yesterday.  I'm

6  assuming the defense is going to want to respond to that.

7          **MR. SCOTT:**  I haven't even read it.

8          **THE COURT:**  Okay.

9          **MR. DUNN:**  And I don't intend to argue it.  I'm not

10 trying to do that now.  What I'm suggesting is that these

11 matters, both of these matters, the database match and the

12 legislative privilege matters, in the Section 5 case, also in

13 the statewide redistricting cases, both of them required court

14 intervention to resolve.  So, what I would propose so there is

15 no further delay is that, if possible, the Court set a hearing

16 in the next few weeks.  It could take evidence from actual

17 experts about what is technically possible on the database

18 match, and we could also debate the legislative privilege.

19         Now, in the meantime, what I would ask the Court to

20 do is order the State to go ahead and begin collecting these

21 documents.  They don't have to turn them over, but at least

22 that process can begin and they'll be collected, and then when

23 the Court can get around with its schedule, which I know is

24 compact -- when it can have the hearing, if it makes a decision

25 to require the State to turn over, that ought to be able to be

1  done in short order.  If it decides they're protected by

2  privilege, then, you know, the State at least was able to

3  review the documents that it had available to it in order to

4  answer the Court's question about the scope of the privilege.

5          **THE COURT:**  All right.

6          **MR. DUNN:**  So, that's the recommendation I make in

7  order to move things along.

8          **THE COURT:**  Well, let me do this.  You all are going

9  to work on an agreed order regarding that discovery plan or the

10  subject of the joint motion, so why don't we reconvene on a

11  phone conference Friday morning to see if you all were able to

12  get that done, to make sure that gets in place and that can get

13  signed, and then maybe set a hearing on the other matters,

14  how -- I guess the complexity of the databases and what needs

15  to be done, in two weeks?  Is that sufficient time for the

16  Government?

17         **MR. DUNN:**  To clarify, would we be --

18         **MS. BALDWIN:**  Yes, your Honor.

19         **MR. DUNN:**  Sorry.  Is this something that we would be

20  allowed or expected to bring our experts and offer evidence on

21  if the database issues aren't worked out by then?

22         **MS. BALDWIN:**  Your Honor, in the view of the United

23  States, it's, frankly, the database custodians from the federal

24  agencies who are going to have the only relevant information

25  on --

26

1          **THE COURT:**  Okay.  We'll --

2          **MS. BALDWIN:**  -- their internal processes.

3          **THE COURT:**  -- we'll start there.  Let's just start

4   there and we'll see where we are at that hearing.  So, no, at

5   this time.

6          But -- Brandy, you want to set a hearing Friday

7   morning?  I know we've got some matters set for --

8          **THE CLERK:**  At 10:30, your Honor.

9          **THE COURT:**  Ten thirty, Friday morning.  You all can

10  appear by phone.  You're welcome to be here in person.  I know

11  all of -- most of you are from out of town, so you all can

12  certainly appear by phone.  That's just to address the agreed

13  order.

14         And, then, two weeks for another status?  Or --

15         **THE CLERK:**  February 26th at 10:30.

16         **THE COURT:**  -- to address the issue of the databases.

17         When is that, Brandy?

18         **THE CLERK:**  February 26th.  It's a Wednesday, your

19  Honor, at 10:30.

20         **THE COURT:**  Okay.  And, then, the other matter that

21  the State hasn't had a chance to review -- and I just ran

22  through quick -- quickly last night -- is the motion to compel

23  the production of legislative documents.  When can the

24  defendants file a response to that?

25         **MR. SCOTT:**  Your Honor, I would -- if the Court's --

27

1    would be available, to give us at least 10 days?

2            THE COURT:  Okay.  And, then, that needs to be set

3    for a hearing, I suspect.

4            MS. BALDWIN:  Your Honor, would the United States

5    have the opportunity to file a reply?

6            THE COURT:  Yes.  Within three days?

7            MS. BALDWIN:  Yes, your Honor.

8            THE COURT:  So, where does that get us, Brandy, in

9    terms of time, if we give them 10 days to respond, another

10   three days?

11           THE CLERK:  We could set another conference on March

12   5th at 9:00 a.m.

13           THE COURT:  To discuss the legislative privilege?

14           THE CLERK:  The -- the compel.  Yes, your Honor.

15           THE COURT:  When is that?  March 5th?

16           THE CLERK:  Yes.  It's a Wednesday.

17           THE COURT:  So, we're going to set a hearing on the

18   motion to compel the production of legislative documents at

19   March 5th at -- what time did you say?

20           THE CLERK:  Nine thirty.

21           THE COURT:  Are there any issues with the times or

22   just -- speak up now so that --

23           MR. ROSENBERG:  Judge, one question; if there is any

24   non-redundant filings that any of the other plaintiffs or

25   plaintiffs' intervenors might want to make on the issue, may we

1    be permitted to do so, and, if so, on which date?

2          **THE COURT:**  Okay.  You're going to be responding or

3    something --

4          **MR. ROSENBERG:**  Well, we would be supportive of --

5          **THE COURT:**  -- or supplementing this --

6          **MR. ROSENBERG:**  -- of DOJ's position.

7          **THE COURT:**  Then, I would do it within this 10-day

8    time frame; which then you might want to respond further, the

9    State of Texas, but we'll just keep our 10 days and three days

10   at this point.

11         What else needs to be addressed?

12         **MR. RIOS:**  Your Honor, if I may just address the

13   Court.

14         There was a -- the Court was made aware of a state

15   proceeding on this issue in Hidalgo County.  That case was

16   settled on the condition that the County prosecute the

17   Hispanics' claims in this case and that Hidalgo County was

18   added in our amended complaint.

19         **THE COURT:**  Okay.

20         **MR. RIOS:**  And Preston Henrichson is on the line.

21   He's the County attorney --

22         **THE COURT:**  Okay.

23         **MR. RIOS:**  -- in this matter.  I just wanted to make

24   you aware of --

25         **THE COURT:**  Okay.

1      **MR. RIOS:**  -- what's going on with that.  Thank you.

2      **THE COURT:**  Anything else from the Government?

3      **MS. BALDWIN:**  Your Honor, would you like to hear

4  anything further on the United States' motion to modify, which

5  I understand we've been talking about?

6      **THE COURT:**  And that was filed after hours, so I

7  skimmed it this morning, quickly, so you -- you can address

8  that.  I think the issue is going to be you all are trying --

9  Government's trying to move or push back the trial in this

10  matter, and the plaintiffs, or at least most of them, it

11  appears, are opposed to that.  And I -- it all revolves around

12  this discovery issue as to what can get done, what can be

13  produced.

14      **MS. BALDWIN:**  Your Honor, yes.  It revolves around

15  what the United States thinks is going to be an adequate time

16  to present a complete record in this case on the core question

17  of, you know, which Texas residents are holders of which

18  various forms of ID, which, as we have been talking about, is a

19  complicated process; and also the legislative documents, which

20  are documents that are at the heart of the United States' claim

21  that this law was passed in part based on a discriminatory

22  intent.  So, we don't think that under the current schedule

23  it's possible to complete this complicated expert discovery or

24  this very time-consuming fact discovery within the allotted

25  three months.  Even on the legislative privilege issue, should

1    the Court rule in the United States' favor, defendants have to

2    search for the documents, they have to produce the documents,

3    we have to review the documents before we can even begin taking

4    depositions.

5              We think that the preliminary injunction that the

6    United States has proposed still addresses all parties' need

7    and interest in getting resolution of this case in advance of

8    the November elections.  It addresses all of those interests

9    while still allowing the United States to present a complete

10   record without prejudice to its claims.  Because at this point

11   the United States believes that if forced to continue this

12   trial on its -- the current schedule, the United States will be

13   irreparably prejudiced in its ability to present a complete

14   record.

15             **THE COURT:**  Okay.  And I remember that was briefly

16   addressed, the preliminary injunction issue, at the scheduling

17   order or the hearing we had trying to set this matter for a

18   hearing.  What was the issue at the preliminary --

19             **MR. DUNN:**  Well, there are several issues with the --

20   Chadd Dunn again, for the record, your Honor.

21             There are several issues with the preliminary

22   injunction solution.  One way or the other, this case is going

23   to be tried this year, whether it's called a P.I. or a final

24   judgment, and then it's going to go up on appeal, almost

25   certainly, to the United States Supreme Court, assuming they

1    agree to hear it.  And then there is going to be law made in

2    the case.  And there won't be another trial, in our belief.

3    So, the evidence that we put before this Court on however it's

4    decided needs to be as inclusive as possible.

5           So, if the Court is to say, well, fine, we'll allow

6    preliminary injunctions, what you've already heard is:  We

7    can't get the data together.  The motivation will no longer be

8    there to do the match, to get the legislative privilege issue

9    resolved, to get the e-mails produced, and to deal with these

10   other issues.  So, when the factual record is made, the one

11   that is ultimately going to be appealed to the circuit and the

12   Supreme Court the first time, it's going to be dramatically

13   limited.  That's issue number one.

14          Issue number two is that the Fifth Circuit, in

15   particular, in, for example, the *Voting for America versus

16   Andrade* case, two different opinions there; the *Planned

17   Parenthood versus Perry* case; has been consistent in the last

18   four to five years that a state statute really in no

19   circumstance should be enjoined or altered on a -- in a -- with

20   a preliminary injunction.  So, by requiring the parties to go

21   forward with a preliminary injunction, it is:  (a) truncating

22   and limiting the factual information that will go up on appeal

23   in this case; and (b) set up an impossible legal standard, at

24   least based upon current Fifth Circuit case law, wherein the

25   plaintiffs, if they're able to secure an injunction from this

1    Court, can retain it on appeal.

2              So, if there is going to be a factual hearing, it's

3    the Veasey plaintiffs' position that this Court needs to

4    maintain the schedule, make it clear to all parties there is no

5    daylight in the schedule, and then, with the resources of the

6    private parties, the United States, and the State, we'll work

7    through and be able to get these issues done.

8              The final thing I'll say is this.  My clients, I

9    know, have spent greater than $200,000 already on expert

10   analysis in this case.  I know many of the other parties to

11   this case -- and I am assuming the State and the United States

12   as well -- will be spending a like amount of money or more.  It

13   is not economically feasible for any of the parties to do this

14   analysis for a -- whether you call it a preliminary injunction

15   or something else -- this year, and then turn around and do it

16   again next year, even if there is something left to try after

17   the Court of Appeals and the Supreme Court decide the case.

18             Lastly, if the election is held in November of 2014

19   and a trial is to be held after November of 2014, it cannot be

20   held in January, because the State -- and this was a central

21   issue in the Pennsylvania photo ID case -- the State will then

22   argue that we've had a new election, we've issued all these so-

23   called free ID's, EIC's, and all of that data needs to be

24   incorporated into the expert analysis; otherwise, the Court is

25   working on stale information.  And what will result, then, is

1  the trial in this case won't be in January of 2015; instead it

2  will be in September of 2015; and the Court will be sitting

3  here in February of next year in the exact same position it's

4  in now.  We're just now waiting for data to come in from the

5  State, and now we have to begin the analysis and cross-

6  reference of such data.

7        So, for those variety of reasons, we think it's

8  important the Court maintain the schedule, make sure the

9  parties understand that that schedule is hard and that they're

10 expected to resolve their differences, and if adjustments need

11 to be made to the scheduling deadlines of discovery or experts,

12 we'll deal with those in a day-to-day basis.

13        **THE COURT:**  Okay.  Anyone else?

14        **MR. ROSENBERG:**  Ezra Rosenberg again for Texas NAACP

15 and for MALC.

16        And just to clarify, your Honor, I think there are

17 five groups of plaintiffs or plaintiffs' intervenors.  Three of

18 those five groups, I believe, have supported the Department of

19 Justice's motion; two of them have not.  And I know the others

20 may speak for themselves.  I think all of us, however, really

21 want to stress that we believe it's of paramount importance for

22 this case to be decided as soon as possible, but we want to

23 make sure that it's decided on as good a record as possible,

24 and that's our concern.  We think that the reasons set forth in

25 the Department of Justice's memoranda really do set forth

1    clearly why it's necessary for there to be a modification of

2    the schedule.  Having an ability for a preliminary injunction

3    hearing does allow for the possibility that there will be a

4    decision of moment in this case prior to the election, but the

5    important thing is that the record that ultimately goes up we

6    believe has to be as good and as deep as possible, and that's

7    why we support the Department of Justice's motion.

8           **THE COURT:**  But it sounds like one of the issues with

9    the preliminary injunction, the same issue we're having with

10   the trial, is the discovery and when it's going to be presented

11   for --

12          **MR. ROSENBERG:**  Is -- I'm sorry --

13          **THE COURT:**  -- for an injunction --

14          **MR. ROSENBERG:**  I didn't hear you, your Honor.  Is --

15          **THE COURT:**  It seems like the issue with the

16   preliminary injunction is the same issue we're having kind of

17   with the trial here, is the discovery, getting the discovery to

18   present at a hearing on an injunction.

19          **MR. ROSENBERG:**  Yeah; and as I understand it -- and I

20   think the Department of Justice can clarify -- as I understand

21   it, I think that the schedule they are proposing does

22   anticipate that the data results of the matching are concluded

23   prior to the preliminary injunction hearing.  What would not be

24   fully concluded would be the expert discovery.  That would be

25   the main block of discovery that would occur after the

35

1    preliminary injunction or a motion, if I'm correct.

2              **THE COURT:**  Okay.

3              **MR. ROSENBERG:**  Thank you.

4              **MS. BALDWIN:**  Your Honor, if I could just address

5    that brief point, that it's -- under the schedule the United

6    States has proposed, we do anticipate that the complete

7    database discovery would be perfectly possible to have that

8    done and completed in advance of the close of fact discovery

9    that we have proposed to close in July and that we also would

10   propose that all of the legislative privileged discovery, that

11   that would give us ample time.  The only thing that is staged

12   later is the deadline for expert reports.  That's not to say

13   that if any party wanted to go ahead and disclose earlier than

14   that, in conjunction with filing a preliminary injunction, that

15   they wouldn't be free to.  We don't envision the scenario at

16   all that Mr. Dunn is describing where there is an incomplete

17   record.  We anticipate that fact discovery would close before

18   the deadline for the preliminary injunctions to be due, that

19   the work the United States is describing can be done and

20   complete under the schedule that we're proposing so that those

21   parties who would like to go ahead on a preliminary injunction

22   have the benefit of a full record; those who would like to

23   continue the expert analysis and only disclose later also have

24   that option.

25              **MR. HAYGOOD:**  Your Honor, Ryan Haygood again for the

36

1    Texas League of Young Voters.

2           I just wanted to underscore a point that Mr. Dunn

3    made about the need for caution and a careful approach here,

4    given precisely that the Supreme Court is very likely to hear

5    this case and to consider, as they did in the Shelby County

6    case -- there the constitutionality of Section 5; here will be

7    whether Section 2's effects test can reach photo ID measures in

8    a constitutional way -- I think that issue alone underscores

9    the urgent need for us to have a careful and very cautious

10   approach to building a record that can be sustained on appeal

11   up and through and to the Supreme Court.

12          And the other issue, your Honor, is, just for

13   comparison, we litigate Section 2 cases in other states.  In

14   Georgia, for example, we have a county level Section 2

15   challenge.  We filed a complaint in August of 2011, got a

16   ruling just recently, about two and a half years later.  These

17   Section 2 cases are, as your Honor knows, very complex, very

18   fact intensive, and they take some time.  The Department of

19   Justice's papers reflect that other states -- for example, the

20   Wisconsin case is one that is likely to take some time; there

21   were other cases that took up to two years to resolve, or more,

22   in the Section 2 context; and I think that those principles

23   hold here, particularly given that we're dealing with a

24   statewide challenge with very complex database and algorithm

25   issues and other factual issues.

1      Thank you.

2          **THE COURT:**  All right.  Anyone else on --

3          **MR. HENDERSON:**  This is Preston Henderson

4   representing Hidalgo County.  I'm new to the case.  I've just

5   been listening.

6          I do want to emphasize that on behalf of the County

7   and our elections administrator we do have a need to get some

8   certainty as to what we have to do so that we can properly

9   process and properly administer the election in accordance with

10  the law and as determined by this Court, and we would urge

11  that, as Mr. Rios said, that we would like to get this resolved

12  as soon as possible so that we can be prepared to have an

13  orderly election, and I'm sure we speak for the other counties

14  in the state, as well, in that regard.

15         **THE COURT:**  All right.

16         **MR. HENDERSON:**  Thank you.

17         **THE COURT:**  Thank you.

18         **MR. SCOTT:**  Your Honor, the State of Texas is taking

19  no official position on the motion to modify.  We continue to,

20  I guess, reassert our position that we set forth in the

21  advisory to the Court, which is, whether the Court moves the

22  trial date up or moves the trial date back, whatever we do, we

23  would do -- we would request the Court do something with that

24  trial date so that the decision of this Court does not

25  interfere with the election scheduled in November.  And I want

38

1    to remind everybody elections are being done and have been held

2    under voter ID.  So, that's -- that's already the law of the

3    state.

4            And addressing the issue about discovery, the State

5    of Texas has produced over 500,000 documents so far in this

6    case.  Three hundred thousand -- 299,000 were resubmissions of

7    documents that were produced in the last case that was vacated

8    by the U.S. Supreme Court, but the remaining documents have

9    been produced, as well as there is a rolling production of

10   additional documents that will be done again today.  So, there

11   is a massive quantity of documents that have been produced.

12           And just briefly, on the legislative issue, we've

13   worked with the folks over at DOJ.  They've identified a

14   hundred and -- I'm sorry -- 251 different legislators that they

15   would have the State go through the legislature's Legislative

16   Council office and get into their archive files through their

17   computer.  They're -- while the issue of legislative privilege

18   is surely going to be applicable to the vast majority of those,

19   there are other technical issues that are going to be held --

20   and I know we're going to talk about that subsequently -- but

21   at least on the issue of the scheduling order, that is an

22   enormous amount of information that may be presented to the

23   Court in the form of additional privileges, in addition to the

24   some probably 1,500 pages of different privileged documents

25   that we've identified for the Court's review.

1          **THE COURT:**  All right.  Anyone else?

2      **(No audible response)**

3          So, I am going to review -- I just saw it this

4  morning -- the motion to modify scheduling order.  My general

5  feeling, I'm not inclined to move the trial date.  I will look

6  at that motion a little more carefully.

7          Anything else that needs to be addressed?

8          **MR. DUNN:**  Well, your Honor, may I reply briefly,

9  then --

10          **THE COURT:**  Yes.

11          **MR. DUNN:**  -- on the subject if the Court's still

12  entertaining it?  I do want to address this issue of what other

13  courts in other states have done on photo ID laws, because I'm

14  sure it was inadvertent, but the Department of Justice's

15  records makes this argument that, for example, in Wisconsin the

16  trial wasn't held until many months later.  And I just want to

17  point out that in Wisconsin a state court had enjoined the

18  photo ID law, so there wasn't the urgency for the federal court

19  to get forth with trial.  Also, the Department of Justice

20  points out that North Carolina, the federal judge addressing

21  the North Carolina challenge to the photo ID and other laws,

22  hasn't set trial till 2015.  I want to make sure the Court's

23  aware that the photo ID provision in the North Carolina law

24  doesn't go into effect until 2016.

25          And I also point out two other points on this issue

1    of we can, you know, take all of the time we need and -- and

2    people will just suffer the harm that all of these plaintiffs

3    agree will occur in the meantime.  It is -- it has been the

4    tradition and custom, at least in Texas, for federal courts to

5    address Section 2 and constitutional cases urgently.  For

6    example, the three-judge panel hearing the statewide

7    redistricting case in San Antonio tried a case involving all of

8    the senate, all of the house, all of the congressional maps,

9    in -- if my recollection is correct, and I'm fairly certain it

10   is -- in many fewer months than this schedule provides.  The

11   Section 5 case tried on this subject was filed in January,

12   tried the Monday after July 4th.  And, so, more time than that

13   even exists now in the schedule.  And there has been a

14   Section 2 trial on county redistricting in Galveston that was a

15   lawsuit filed in October, was -- was tried in January.

16          So, these things can be done, and what I heard the

17   Department of Justice tell the Court is that under their

18   proposed schedule we're going to be able to get everything done

19   by July anyway.  So, if we're going to get everything done by

20   July, why set up the decision that will ultimately be reviewed

21   by the appeals courts and the United States Supreme Court under

22   a preliminary injunction standard; why wait until January,

23   which really means later than January, and incorporate the new

24   election data?  So, since the Court is going to take a closer

25   look at that issue, I just wanted to make sure I had addressed

41

1    those.

2            **THE COURT:**  Okay.  And we'll address the motion to

3    modify at our conference, telephone conference, on Friday

4    morning.  So, I probably don't need a lot of responses on file.

5    But if I do -- if I deny it, which I'm inclined to do, just

6    generally, as I've read through it quickly -- I will go back

7    and look at it more carefully -- but that doesn't mean we can't

8    work with the other dates if we need to.

9            Okay.  Anything else for this morning from the

10   Government, the plaintiffs, the defense?

11       **(No audible response)**

12           **THE COURT:**  So, we will reconvene Friday morning

13   at -- was it 10:30, Brandy?

14           **THE CLERK:**  Yes, your Honor.

15           **THE COURT:**  And you're excused.

16         **MR. SPEAKER:**  Thank you, your Honor.

17       **(Proceeding was adjourned at 9:46 a.m.)**

18

19

20

21

22

23

24

25

## CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    February 14, 2014


                    TONI HUDSON, TRANSCRIBER