UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


MARC VEASEY, ET AL.,            )      CASE NO: 2:13-CV-00193
                               )
              Plaintiffs,      )            CIVIL
                               )
        vs.                    )      Corpus Christi, Texas
                               )
RICK PERRY, ET AL.,            )      Friday, February 14, 2014
                               )
              Defendants.      )      (10:36 a.m. to 10:57 a.m.)


HEARING

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE


Appearances:              See Next Page

Court Recorder:           Genay Rogan

Clerk:                    Brandy Cortez

Transcriber:              Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES FOR:**</u>


Plaintiffs:                      ARMAND DERFNER, ESQ.
                                 P. O. Box 600
                                 Charleston, SC 29402

                                 CHAD W. DUNN, ESQ.
                                 Brazil and Dunn
                                 4201 Cypress Creek Parkway
                                 Suite 530
                                 Houston, TX 77068

                                 J. GERALD HEBERT, ESQ.
                                 191 Somervelle Street
                                 #405
                                 Alexandria, VA 22304

                                 NEIL G. BARON, ESQ.
                                 914 FM 517 Road, W.
                                 Suite 242
                                 Dickinson, TX 77539

                                 EMMA SIMPSON, ESQ.

United States                    ANNA BALDWIN, ESQ.
of America:                      U.S. Department of Justice
                                 950 Pennsylvania Avenue, N.W.
                                 NWB 7273
                                 Washington, DC 20009

                                 BRUCE I. GEAR, ESQ.
                                 Department of Justice
                                 1800 G St. NW
                                 Washington, DC 20006

                                 MEREDITH BELL-PLATTS, ESQ.
                                 U.S. Department of Justice
                                 Voting Section-Civil Rights Div.
                                 950 Pennsylvania Ave., NW
                                 NWB 7259
                                 Washington, DC 20530

                                 DANIEL J. FREEMAN, ESQ.
                                 U.S. Department of Justice
                                 950 Pennsylvania Ave. NW
                                 NWB 7123
                                 Washington, DC 20009

**APPEARANCES FOR:**          (CONTINUED)


United States             ROBERT S. BERMAN, ESQ.
of America:               U.S. Department of Justice
                          950 Pennsylvania Avenue, N.W. - NWB
                          Washington, DC 20530


                          JOHN ALBERT SMITH, III, ESQ.
                          Office of the U.S. Attorney
                          800 N. Shoreline Boulevard
                          Suite 500
                          Corpus Christi, TX 78401

Texas Association of      ROLANDO L. RIOS, ESQ.
Hispanic County Judges    115 E. Travis
and County                Suite 1654
Commissioners:            San Antonio, TX 78205


                          PRESTON E. HENRICHSON, ESQ.
                          222 W. Cano
                          Edinburg, TX 78539


Oscar Ortiz, et al.:      JOSE GARZA, ESQ.
                          7414 Robin Rest Dr.
                          San Antonio, TX 78209


State of Texas:           JOHN BARRET SCOTT, ESQ.
                          Scott, Yung, L.L.P.
                          208 N. Market Street
                          Suite 200
                          Dallas, TX 75202


Texas League of Young     RYAN HAYGOOD, ESQ.
Voters Education Fund:     NAACP Legal Def and Educational
                          Fund, Inc.
                          40 Rector Street
                          5th Floor
                          New York, NY 10006


                          NATASHA KORGAONKAR, ESQ.
                          NAACP Legal Def and Educational
                          Funds, Inc.
                          40 Rector Street
                          5th Floor
                          New York, NY 10006

4

**APPEARANCES FOR:**           (CONTINUED)


Texas League of Young          RICHARD F. SHORDT, ESQ.
Voters Education Fund:         Wilmer Cutler, et al.
                               1875 Pennsylvania Ave. NW
                               Washington, DC 20006

                               M. HASAN ALI, ESQ.
                               Wilmer Cutler Pickering, et al.
                               1875 Pennsylvania Ave. NW
                               Washington, DC 20006

                               JONATHAN PAIKAN, ESQ.
                               SONYA LEBSACK, ESQ.

Mexican American              EZRA D. ROSENBERG, ESQ.
Legislative Caucus,           Dechert, LLP
et al.:                       902 Carnegie Center
                              Suite 500
                              Princeton, NJ 08540-6531

                              ERANDI ZAMORA, ESQ.
                              SONIA KAUR GILL, ESQ.
                              MICHELLE YEARY, ESQ.
                              JENNIFER CLARKE, ESQ.
                              Lawyers' Committee of Civil Rights
                              Under Law
                              1401 New York Ave., Suite 400
                              Washington, DC 20005

1    <u>Corpus Christi, Texas; Friday, February 14, 2014; 10:36 a.m.</u>

2              <u>(Courtroom and Telephonic Appearances)</u>

3                        <u>(Call to Order)</u>

4         **THE COURT:**  The Court calls Cause Number 2:13-193,

5    *Veasey, et al versus Perry, et al.*  Mr. Smith is present in the

6    courtroom.  So do you want to announce for the record?

7         **MR. SMITH:**  Your Honor, John Smith on behalf of the

8    United States.

9         **THE COURT:**  All right.  And then starting with the

10   Plaintiffs, if you-all want to announce for the record, we'll

11   go with the Veasey Plaintiffs and the LULAC Plaintiffs.

12        **MR. DUNN:**  Good morning, your Honor.  This is Chad

13   Dunn on behalf of Veasey/LULAC Plaintiffs.  On the call with me

14   is Armand Derfner, Neil Baron, Gerry Hebert and Emma Simpson

15   and on the issue of the protective order, Mr. Derfner will be

16   addressing that.

17        **THE COURT:**  All right.  The United States of America?

18        **MS. BALDWIN:**  Good morning, your Honor.  This is Anna

19   Baldwin and on the call with me today I have Robert Berman,

20   Meredith Bell-Platts, Daniel Freeman and Bruce Gear.

21        **THE COURT:**  All right.  Then the Mexican American

22   Legislative Caucus, also Texas House of Representatives and the

23   State Conference of NAACP Branches?

24        **MR. ROSENBERG:**  Yes, good morning, your Honor.  This

25   is Ezra Rosenberg.  I'll be taking the lead in all this.  With

6

1    me on the phone are Erandi Zamora and Sonia Gill.

2              THE COURT:  Okay.  And then the Texas League of Young

3    Voters Education Fund?

4              MR. HAYGOOD:  Good morning, your Honor.  This is Ryan

5    Haygood with my colleagues Natasha Korgaonkar, Jonathan Paikin,

6    Richard Shordt, Sonya Lebsack and Hasan Ali.

7              THE COURT:  All right, good morning.

8              And then Texas Association of Hispanic County Judges

9    and County Commissioners?

10             MR. RIOS:  Good morning, your Honor.  This is Rolando

11   Rios for the Hispanic Judges and Commissioners.

12             THE COURT:  All right.  And I think we --

13             MR. RIOS:  With me is Mr. -- Preston Henrichson is on

14   the line already, your Honor, for (indiscernible).

15             THE COURT:  Okay.  And we have one more group of

16   Plaintiffs, correct, the Espinosa Plaintiffs?

17             MR. GARZA:  Yes.  This is Jose Garza for Espinosa,

18   et al and I believe that Robert (indiscernible) and

19   (indiscernible) are also on the phone.

20             THE COURT:  Okay.  Any other Plaintiffs on the phone?

21             MR. ROSENBERG:  Your Honor, Ezra Rosenberg again.  I

22   understand both Michelle Yeary and Jennifer Clarke are also on

23   -- with me on behalf of MALC and the Texas NAACP.

24             THE COURT:  Okay.  And then the Defendants?

25             MR. SCOTT:  Your Honor, John Scott for the State of

7

1    Texas.

2         **THE COURT:**  Okay.  This is a status hearing.  We had

3    convened here on Wednesday.  It was to address the joint motion

4    to enter a discovery order and supplemental protective order

5    and I thought the United States and the months were aligned

6    with respect to that joint motion.  That's the way it was filed

7    but after reading the Government's -- or the -- I'm sorry --

8    Texas -- Defendant's response filed late yesterday, I'm not so

9    sure that motion is joint anymore.

10        But in any event, at the end of the hearing on

11   Wednesday, I asked the United States and the -- I'll refer to

12   them as the "Veasey Plaintiffs" because I had specifically

13   objected to certain portions of what had been submitted to the

14   Court to get together to see -- there were some agreed matters

15   in that proposed order.  What was at issue was a tinier

16   sequence of events as to how that was going to play out.

17        So I asked them to get together and see if the

18   parties could agree on an agreed order that would be submitted

19   to the Court so we could start the ball rolling.  Then the

20   United States filed a response yesterday agreeing to what the

21   Veasey Plaintiffs had proposed in -- I believe it was the

22   DE-161 Exhibit 3 regarding some initial steps to begin this

23   work but then the Defendants filed a response late yesterday

24   saying they had an issue with that because of some privacy

25   concerns, et cetera.

1          So I'm going to let the Government address what's at

2    issue here with trying to get an agreed order at least on the

3    matters that are agreed to.

4          **MS. BALDWIN:**  Your Honor, this is Anna Baldwin for

5    the United States.  Our understanding is that the motion -- the

6    underlying motion filed by the United States actually continues

7    to be a joint motion and the United States continues to support

8    that motion and urges the Court to adopt it in its entirety,

9    that motion --

10         **THE COURT:**  Okay.  All I wanted to address is what

11   can we agree to to get the ball rolling.

12         **MS. BALDWIN:**  Yes, your Honor.

13         **THE COURT:**  That's all.  What's the issue with the

14   agreed order?

15         **MS. BALDWIN:**  So with the agreed order, the United

16   States supports going ahead and entering the excerpts of --

17   from the supplemental protection order because we can't afford

18   to lose more time or have the process derailed by underlying

19   motion practice.  So, you know, we would support on behalf of

20   the United States having the Court go ahead and enter the

21   supplemental protection order excerpts to allow data to be

22   produced by the Texas within one business day after entering

23   the order and, you know, start the ball rolling on the process

24   of negotiating and finalizing the actual database comparison of

25   algorithms by the -- both Plaintiffs' side and Texas.

1           At the same time, if the database discovery process

2    is able to get moving once that order is entered, we're in

3    discussions and we'll remain in discussions with other parties

4    and --

5           **THE COURT:** Okay.  I guess my issue is, did you read

6    the response filed by the Defendants yesterday and is there

7    some way to address those?

8           **MS. BALDWIN:** Well, your Honor, our understanding is

9    that in, you know, the agreed portion that would be entered,

10   the data would only be produced to the United States.  We

11   believe that it's already --

12          **THE COURT:** Okay.  You think what's agreed to and

13   what the United States has agreed to as to what the Veasey

14   Plaintiffs have proposed addressed the Defendants' concerns,

15   correct?

16          **MS. BALDWIN:** As far as in terms of, you know -- and

17   I would understand it to be before Texas but in terms of --

18          **THE COURT:** I'm going to let them speak.  I'm just

19   trying to get the parties' positions here so we can get an

20   agreed order and start rolling.

21          **MS. BALDWIN:** So I believe that that order -- I

22   believe that Texas raised initially two concerns.  One is that

23   the data should only be produced by the United States.  I

24   understand that that concern is addressed in the four corners

25   of the agreed upon document.

1          **THE COURT:**  All right.

2          **MS. BALDWIN:**  Our second concern is a larger concern

3     about the fact that this was part of an entire negotiated

4     framework that was allowing Defendants to have adequate time to

5     ensure that they had input and that document -- it can't be to

6     that larger concern.  With that said, I can commit on behalf of

7     the United States that the United States is not walking away

8     from the commitment to run an algorithm drafted by the State of

9     Texas.  We think that's an essential part of us allowing --

10         **THE COURT:**  And that doesn't even address that.  I

11    think this agreed order -- proposed agreed order only addresses

12    these initial first steps to get things rolling.

13         **MS. BALDWIN:**  Yes, your Honor, and we think it's very

14    vital to get this going so as not to lose more time in the

15    process.

16         **THE COURT:**  All right.  Mr. Dunn?

17         **MR. DUNN:**  Your Honor, Mr. Derfner will be taking the

18    lead on that.

19         **THE COURT:**  Okay.

20         **MR. DERFNER:**  Thank you, your Honor.  On behalf of

21    Veasey Plaintiffs, I think the answer is that there really is

22    an agreement and that Texas' concerns are not real concerns at

23    this stage.  If we can just take a second and go over what the

24    concerns are and what all the parties already know.

25         The agreed order would cover 161-3, Pages 1 through

1    10 and what we've done there is to take verbatim the parts of

2    the U.S. and Texas joint order that really we think are agreed

3    to and specifically and then we -- but specifically Paragraphs

4    1 through 5 are there, the introductions.

5            Then -- and Paragraphs 14 through 26 which cover all

6    the protective and confidentiality portion plus a little piece

7    of Paragraph 9 which is also the confidentiality issue -- those

8    are all that is in the -- what we call the "agreed order."

9    Paragraphs 6 through 13, which have some schedules of -- are

10   taken out of that order.  So what we've got is the U.S./Texas

11   joint order -- a joint proposed order verbatim as set forth in

12   the scheduling portion after the first few sentences which is

13   the State of Texas producing the data and the U.S. coming back

14   with its proposed algorithm.

15           We did that in order to be as verbatim as possible.

16   What Texas has said is those are one -- Texas said in the first

17   sentence -- and this is copied from their papers.  It says they

18   can't agree to the Veasey Plaintiffs' schedule and then they

19   cite 161-3.  So that may suggest that, in fact, what they're

20   concerned about is the parts of the order that we took out

21   because we say we know they're not agreed to but they say,

22   number one, as Ms. Baldwin just said, they're concern is

23   there's -- that there may not be adequate protection in the

24   confidentiality issue and the confidentiality language that was

25   in the proposal -- the joint proposal of the U.S. actually is

12

1    in this 161-3, Page 1 through 10.

2              The second concern -- the Texas concern that -- about

3    later parts of the schedule and so I think those are also not

4    real concerns for this order.  So that's why I come back to the

5    notion that everything here really is agreed and to the extent

6    Texas says they're not, the reasons they give are not real

7    reasons for not agreeing to this part of the agreement.

8              **THE COURT:**  All right.  Mr. Rosenberg, anything on

9    this issue?

10             **MR. ROSENBERG:**  No, nothing further beyond what the

11   DOJ and Mr. Derfner said.

12             **THE COURT:**  Mr. Garza?

13             **MR. GARZA:**  Nothing further beyond the United States

14   renews its position.

15             **THE COURT:**  All right.  Ms. Haygood?

16             **MR. HAYGOOD:**  Yes.  There's nothing further here as

17   well.

18             **THE COURT:**  And Mr. Rios?

19             **MR. RIOS:**  We would (indiscernible) ourselves with

20   (indiscernible).  Thank you, your Honor.

21             **THE COURT:**  Are you on a landline, sir?

22             **MR. RIOS:**  Me?

23             **THE COURT:**  Yes.

24             **MR. RIOS:**  No, is there an echo, your Honor?

25             **THE COURT:**  Well, it's coming across very garbled.  I

1    think we're okay for now but I'll let you know if there's an

2    issue.

3              All right.  Mr. Scott, do you want to proceed?

4              **MR. SCOTT:**  Yes, ma'am.  Our concerns have been and

5    continue to be about privacy for us obviously and one of the

6    things -- while the first 161-3 will cover the issue, it does -

7    on the short term, it does not cover it on the long term.  By

8    that, I reference when we try to get our algorithms run, we may

9    run into problems with some other parties saying they want

10   portions of the discovery that would otherwise be protected or

11   privileged.

12             **THE COURT:**  Right.  And I think we probably can

13   discuss that later.  I'm just trying to get an agreed order on

14   the initial steps and start rolling.

15             **MR. SCOTT:**  And so our first part of this thing is we

16   worked out an agreement with the United States whereby they

17   didn't want to turn over their database.  We didn't want to

18   turn over ours.  We dealt with the system where they would run

19   all these things.  We have -- in fact, I think we're the only

20   party that has turned over our algorithm.  What we do not know

21   is whether the United States separate and apart from this has

22   the capability to run that algorithm and produce results from

23   that algorithm.  That's something that we visited with

24   Ms. Baldwin about this morning and I think the United States

25   understands that position that we've taken on that.

1          So we need to get some kind of affirmation.  We built

2   in safeguards in the 160 document that was provided to the

3   Court that assured us that we would -- even though this was

4   going to be done by one of our party opponents in this

5   litigation, would give us some assurances that we were getting

6   a fair shake in what they were being -- what was being run

7   would be done so in a fair way.

8          So we're back to the situation under the present

9   161-3 where Texas would unilaterally be providing its databases

10  to the party Plaintiffs who are suing it.  They would then be

11  allowed to start -- get a head start and start producing their

12  algorithm responses that they want to use in this lawsuit.

13  Texas would be put to the burden of having it analyzed it back

14  and tried to make an agreement between all the parties and then

15  would send that issue to the Court and once that done, then you

16  would give that information to the United States to have them

17  run it.  At that point in time whenever we got our documents,

18  we would be able to get our experts the information they need

19  to try to defend the statute.  So it puts us at a great

20  disadvantage.  One, it does not exist under the 160 document.

21          **THE COURT:**  Right.  And then -- I guess my problem

22  was 160 or whatever was submitted by -- in the joint motion

23  that was not agreed to, I was trying to get an order then on

24  what can be agreed to at this point --

25          **MR. SCOTT:**  Yes, ma'am.

1          **THE COURT:**  -- because -- only because it sounded

2     like we could do that.  Maybe we can't.

3          **MR. SCOTT:**  Well, and 160 I think was approved by

4     everybody for everything except for one thing.  One of the

5     things that the other -- I don't want to speak for the Veasey

6     Plaintiffs but my understanding from DOJ was that I think that

7     their main complaint was the timeframe, the --

8          **THE COURT:**  Right.

9          **MR. SCOTT:**  -- 18 weeks that it might be done.  Well,

10    the State of Texas has already provided its algorithm to the

11    United States.  I don't know if the Veasey folks have provided

12    their algorithm but we have provided it.  That was the thing

13    that looked like it might cause a great delay.  Well, that's

14    not even an issue.  We are the only party who has given an

15    algorithm out to everybody in the case.

16         So I guess they come up with a solution to a

17    nonexistent problem and so that's where we still find trouble

18    in not going forward on the 160 document because it should be

19    agreeable to everybody with the only question yet to be

20    resolved is the timeframe for the information and quite

21    frankly, I have no earthly idea how long it takes the

22    departments -- the various departments within the United States

23    organization to be able to run those things.  And I think --

24    you know, I didn't know anybody else other than DOJ that has

25    actually visited with those folks to come up with a meaningful

1   estimate of time.

2          **THE COURT:**  All right.  Mr. Derfner?

3          **MR. DERFNER:**  Yes.  I hear Mr. Scott's concern and I

4   think it -- I think that the mere fact that the second part of

5   the order that sets out the schedule would not be in there at

6   this time is not a problem.  What he's concerned about -- or

7   what he says he's concerned about -- and, you know, justifiably

8   so, is they want to make sure that they're going to have a

9   chance that their algorithm.  It's inconceivable to me that the

10  Court would allow a process that didn't give Texas --

11         **THE COURT:**  Right.  I mean, I --

12         **MR. DERFNER:**  -- a chance to run their algorithm.

13         **THE COURT:**  **--** I don't see that either.  I -- bottom

14  line, gentlemen and ma'am's, can we come to an agreement on

15  what's agreed to or not?

16         **MR. DERFNER:**  I think we can.

17         **THE COURT:**  Ms. Baldwin?

18         **MR. DERFNER:**  I think it's there.

19         **THE COURT:**  Well, I thought it was there too but --

20  anyway, Ms. Baldwin?

21         **MS. BALDWIN:**  The United States is agreeable to use

22  the excerpts from the protective order out of the first --

23         **THE COURT:**  Okay.  So I guess -- Mr. Scott, then what

24  is it exactly that you're not agreed to on 161-3?

25         **MR. SCOTT:**  Well, your Honor, I -- if we can get

1    assurances -- two-prong.  If we can get assurances that our

2    algorithm can be run at the same time that the United States

3    algorithm is run and then --

4            **THE COURT:**  Okay.  And -- let me just -- I'm sorry.

5    Let me just pipe in a little bit.  At the same time -- that's

6    kind of what I was addressing the other day and the Government

7    was going to see what could be done about that, I believe, and

8    we were going to set it for a status hearing.  So when you say

9    "at the same time," do you really mean at the same time or that

10   you're just wanting your algorithm run, too?

11           **MR. SCOTT:**  Well, I think for preferences, this is

12   what -- I think the latter is correct.  We want to make sure

13   it's run too but I think from visiting with Ms. Baldwin, we

14   think it's possible if not -- actually it's very probable that

15   all of the algorithms can be run at the same time.

16           **THE COURT:**  Which is what I was trying to get to at

17   the Wednesday hearing.

18           **MR. SCOTT:**  Yes, ma'am.  And so that's why we're --

19   we were confused on why the 160 order was not appropriate

20   because it sounded like we were at that point of being able to

21   confirm to everybody that we were able to go ahead and run

22   everything.

23           **THE COURT:**  I know but you know when I had the

24   hearing, the Government couldn't say that.  Remember, I kept

25   saying yes, no, I don't know and they couldn't really give me

1   an answer until at some point, they finally, I think, said we

2   don't know or can we have another hearing to figure that out

3   and I may be mixing some of the things there.  But do you

4   recall that whole discussion that I was trying to pinpoint the

5   Government, can this be done and the Government wasn't

6   cooperating with me?

7           **MS. BALDWIN:**  Your Honor, I'm happy to -- Ms. Baldwin

8   could clarify on that point if that would be helpful.

9           **THE COURT:**  Yes.

10          **MS. BALDWIN:**  So essentially the United States --

11  until we have an ultimate final algorithm from Texas and until

12  we have data from Texas to allow the United States to finalize

13  its own algorithm, we have to take those proposals to the

14  federal agents to give to their staff.

15          **THE COURT:**  I guess the point is that you -- that's

16  still not clear.  What Mr. Scott has a concern with is still

17  not clear as to whether that can be done?

18          **MS. BALDWIN:**  A definitive answer cannot be given,

19  your Honor.  However, what we would anticipate is if there are

20  certain steps that the United States and Texas can agree upon,

21  it is possible notwithstanding the fact that there would be two

22  different algorithms.  It may be possible for that to be run as

23  part of one computational process.  And the question --

24          **THE COURT:**  And I guess that's the point Mr. Scott --

25  that's the point that the Plaintiffs -- or Veasey Plaintiffs

1  are having -- would be the timeframe on that.  So, no, it

2  doesn't sound like the Government has said, yes, this can be

3  done.  Is that what you're hearing, Mr. Scott?

4        **MR. SCOTT:**  I -- yes, ma'am.

5        **THE COURT:**  Okay.  That was what I was hearing all,

6  you know, through the hearing on Wednesday.

7        **MR. SCOTT:**  If they could give -- if they would

8  simply say they agree to our algorithm now and that they will

9  run it, then I think we can insert that language and we're fine

10  with what is --

11       **THE COURT:**  It's going to be run anyway, right,

12 whether they agree to it or not because either you-all are

13 going to have one that you-all agree to or the Government is

14 going to have their own, right?

15       **MR. SCOTT:**  I haven't gotten that assurance.

16       **THE COURT:**  I'm sorry?  But why wouldn't -- I mean,

17 that would seem only fair.

18       **MR. SCOTT:**  Your Honor, it's not in the order.

19       **THE COURT:**  Because we're only doing the initial

20 steps in the order maybe, the agreed steps?

21       **MR. SCOTT:**  Well, the agreed steps start the process

22 for any --

23       **THE COURT:**  Okay.  So why isn't that in the order,

24 Mr. Derfner?

25       **MR. DERFNER:**  Pardon me?  Why isn't which in the

1    order?

2           THE COURT:  In the one that you-all proposed that the

3    Government -- United States has agreed to.  Mr. Scott's saying

4    what he's concerned about, running a Texas algorithm is not in

5    the order.

6           MR. DERFNER:  Okay.  The only reason it's not in the

7    order is that the order had all kinds of dates in it.  I think

8    we'd be happy to put a line in the order that says there's a

9    guarantee that Texas will have an opportunity to have its

10   algorithm run in some way or other.

11          THE COURT:  Does the United States agree to that?

12          MS. BALDWIN:  Your Honor, in principle, of course, we

13   agree that some -- that Texas is --

14          THE COURT:  Yes or no, can that be put in the agreed

15   order?

16          MS. BALDWIN:  The exact language would matter, your

17   Honor, but in concept, yes.

18          MR. DERFNER:  The Plaintiff would add more thing,

19   your Honor.  And, in fact, getting the process started is

20   three-quarters of the battle, just --

21          THE COURT:  Now, can we agree to that sentence that

22   Texas is wanting or whatever it is and it sounds like Mr. Dunn

23   is saying yes, certainly, no problem and then, United States,

24   do you propose different language then?  Let me know what it is

25   that can cover Mr. Scott's concern.

1          **MS. BALDWIN:**  Your Honor, I would happy to do so.

2    I'm not sure that I could so right now.

3          **THE COURT:**  Okay.  What is it?  What -- just give me

4    a kind of ballpark as to what you want -- the Government would

5    want.  I'm not pinning you down.  You-all can go back and forth

6    on it a little bit.

7          **MS. BALDWIN:**  In terms of the timeframe, your Honor,

8    the language.

9          **THE COURT:**  What Mr. Dunn has conceded that they

10   would be agreeing to put some sentence in there that appears to

11   alleviate Mr. Scott's concern.  So that's what I'm referring

12   to.  It sounds like if we can get that language in this

13   proposed agreed order, the Defendants would be okay with that.

14   Is that right, Mr. Scott?

15         **MR. SCOTT:**  Yes, ma'am, absolutely.

16         **THE COURT:**  Okay.

17         **MS. BALDWIN:**  And the United States would be happy to

18   work with the parties to come up with a sentence that would

19   address those concerns, your Honor.

20         **THE COURT:**  All right.  Well, shall we get on the

21   phone this afternoon and see if you-all have worked on that

22   sentence?

23         **MR. SCOTT:**  That's a good idea, yes, your Honor.

24         **THE COURT:**  Okay.  I have a matter set at 2:00.  If

25   you-all want to maybe at 3:00?  Is everyone available at 3:00?

22

1    I'm going to assume everyone is unless I hear a "No."  I don't

2    hear any "No's."  So you-all work on that order.  I would

3    really like to get an agreed order signed so we can get moving

4    on these matters and I will visit with you at 3:00 o'clock then

5    if nothing further.  Thank you.

6         **MR. SPEAKER:**  Thank you, your Honor.

7         **(This proceeding adjourned at 10:57 a.m.)**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

<u>February 19, 2014</u>

TONI HUDSON, TRANSCRIBER