IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NANDITA BERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-291 (NGR) |
| BELINDA ORTIZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants | Civil Action No. 2:13-cv-348 (NGR) |

**UNITED STATES' MOTION FOR PROTECTIVE ORDER TO LIMIT EXTENT OF DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

In this case, the United States alleges that Senate Bill 14 (2011) (SB14), which requires in-person voters to present specific forms of photographic identification as a prerequisite to cast a regular ballot, violates Section 2 of the Voting Rights Act because it "results in a denial or abridgment of the right . . . to vote on account of race [,] color, or [membership in a language minority group]." 42 U. S.C. § 1973(a).  Moreover, the United States alleges that the actions of the State of Texas support a finding that it intended such a result.

The parties have commenced discovery.  The United States has propounded a request for production of documents focused on the legislature's action in enacting the identification requirement and the manner in which various state agencies will implement it.

2

In contrast, much of the Defendants' First Request for Production (Defs. 1st RFP) seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, as required by Fed. R. Civ. P. 26(b)(1), on the issue that is before this Court, specifically whether SB 14 violates federal law. *See e.g.*, Defs. 1st RFP (Ex. 1). Moreover, by crafting definitions for the terms "you" and "your" and "electronically stored information" that vastly expand the scope of Requests 9-14, the State seeks this information from virtually every agency of the Executive Branch as well as the entire Legislative Branch of the federal government.

Because, as shown below, Defendants' production requests are not reasonably calculated to lead to the discovery of admissible evidence, the United States respectfully requests that this Court enter the accompanying order narrowing the scope of Defendants' requests to that permitted by the federal rules. *See* Fed. R. Civ. P. 26(b)(1), (c).

## I.  BACKGROUND

On December 4, 2013, the Defendants propounded their First Request for Production on the United States. The request noted that in responding to the fourteen requests:

> The terms "you" & "your" means [sic] the United States of America or any agent, department, agency, or other entity acting on its behalf or under its authority including but not limited to the Department of Justice, the Department of Defense, the United States Citizenship and Immigration Services, the Department of State, the United States Social Security Administration, the Department of Veteran's Affairs, the United States Census Bureau, the Department of Homeland Security, and Eric H. Holder, Jr., Attorney General of the United States and his agents, representatives, attorneys, experts, and other persons acting or purporting to act on Eric H. Holder, Jr's behalf.

Defs. 1st RFP at 3 (Ex. 1).

During the "meet and confer" conference calls between the United States and the Defendants held on December 12 and 19, 2013, the United States detailed the ways in which the

Defendants' definitions were overbroad and not reasonably calculated to lead to the discovery of admissible evidence and, as a result, imposed undue burdens and expenses on the United States. After the second meet and confer call, Defendants substituted the following language:

> The terms "you" and "your" means [sic] the Department of Justice; the Department of Defense; the United States Citizenship and Immigration Services; the Department of State; the United States Social Security Administration; the Department of Veteran's Affairs; the Department of Homeland Security; the United States Congress; Eric H. Holder, Jr., Attorney General of the United States and his agents, representatives, attorneys, experts, and other persons acting or purporting to act on Eric H. Holder, Jr.'s behalf; and Barack H. Obama, President of the United States and his agents, representatives, attorneys, experts, and other persons acting or purporting to act on Barack H. Obama's behalf.

Ltr. from David Whitley, counsel for Defendants, to Jennifer Maranzano, counsel for the United States at 2 (Dec. 20, 2013) (Ex..[1]

Although the Defendants' new definition removed some entities from the scope of the request, it not only still encompasses most of the federal government, but it added the Executive Office of the President and both houses of Congress. Such a definition would require the United States to search for information throughout most of its departments, agencies, offices, and bureaus and involves the review of electronically stored information, documents, and records maintained by thousands of federal employees including Members of Congress and the President

---

[1] Defendants' Second Request for Production of Documents includes yet a third similarly overbroad definition of "you" and "yours":

> The terms "you" and "your" means the Department of Justice; the Department of Defense; the Federal Bureau of Investigation; the United States Citizenship and Immigration Services; the Department of State; the United States Social Security Administration; the Department of Veteran's Affairs; the Department of Transportation Security Administration; the Department of Homeland Security; the United States Congress; Eric H. Holder, Jr., Attorney General of the United States and his agents, representatives, attorneys, experts, and other persons acting or purporting to act on Eric H. Holder, Jr.'s behalf; and Barack H. Obama, President of the United States and his agents, representatives, attorneys, experts, and other persons acting or purporting to act on Barack H. Obama's behalf.

Defs. 2d RFP at 3 (Ex.2).

of the United States. There is a significant difference between the enormous amount of raw information that would have to be generated and reviewed based on Defendants' overly inclusive definitions, versus the limited amount of actual evidence that is either relevant to this case or designed to lead to the discovery of admissible evidence that would ultimately be uncovered. In practical terms, were the Defendants to narrow their existing broad definitions to federal entities actually likely to have discoverable information, such as the Civil Rights Division, we believe there would be no significant loss in the quantity of discoverable information Defendants would receive. The Defendants, however, refuse to narrow their definition of federal entities to be searched.

Second, the Defendants refuse to amend their definition of the term "electronically stored information" as utilized in their requests for production. Defs. 1st RFP at 3 (Ex. 1).[2] Defendants' definitions seeks a number of categories of electronic information and/or storage formats such as deleted files; temporary files; internet or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer activity logs; smart cards; and integrated-circuit cards that are neither permanently

---

[2] Defendants' definition provides:

"Electronically stored information. The term "electronically stored information" means electronic information that is stored in a medium from which it can be retrieved and examined. It includes, but is not limited to, all electronic files that are electronically stored.
(1) "Electronic file" includes, but is not limited to, the following: electronic documents, voicemail messages and files; e-mail messages and files; deleted files; temporary files; system-history files; Internet- or web-browser generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; metadata;
(2) "Electronic information system" refers to a computer system or network that contains electronic files and electronic storage.
(3) "Electronic storage" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, integrated-circuit cards (e.g., SIM cards)." Defs. 1st RFP at 3 (Ex. 1).

5

maintained by nor readily accessible to the Department of Justice. The United States informed the Defendants that under their definition of electronically stored information, the United States would have to conduct a forensic and manual review of the work computers and telephones of every federal government employee, agent, or representative covered by a request using that term.[3] Though informed of the United States' concerns with the overbreadth of their definition, the Defendants have nonetheless refused to amend it.[4]

Because the parties have been successful in resolving several other points concerning Defendants' First Requests for Production, the United States provided a partial response on January 23, 2014, and the Court has entered an agreed order that initiates the process for review of the large amounts of the relevant statistical data from the relevant federal entities (see, e.g., Discovery Order and Supplemental Protective Order entered February 18, (ECF 174)). We have been unable to achieve the same level of success, however, on the two points identified above. As a result of the Defendants' unwillingness to revise their current definitions for "you" and "your" and "electronically stored information," the United States must seek relief from this Court and request a protective order to limit the scope of Defendants' requests.

---

[3] The parties' Agreement Concerning Production Format focuses on the format for exchanging electronically stored information, not the types of information that will be searched. *See* Joint Report of the Rule 26(f) Meeting & Joint Discovery/Management Plan (ECF No. 61-6).

[4] Defendants' Second Request for Production of Documents includes a similar definition of the term "electronically stored information." *See* Defs. 2d RFP at 3 (Ex. 1).

## II. ARGUMENT

A party may only seek information through discovery "that is relevant to [its] claims or defenses" or is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). As shown below, by defining "you" and "your" in the manner described, the information sought by Defendants from the federal government falls outside both categories. Moreover, Defendants' definition of "electronically stored information," as applied to Defendants' requests, also runs afoul of the federal rules because "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case. . . ." Fed. R. Civ. P. 26(b)(2)(C).

The Supreme Court has encouraged district courts to exercise their discretion by reining in overly broad discovery requests. "[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

Moreover, the Supreme Court has firmly established that sweeping civil discovery requests of the type here directed to the Executive Office of the President (EOP) are generally inappropriate. *See Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 384-90 (2004). As *Cheney* recognized, "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Id.* at 385. Thus, courts must take special care to ensure that civil discovery requests do not intrude on the "public interest" in (1) "afford[ing] Presidential confidentiality the greatest protection consistent with the fair administration of justice"; and (2)

7

"protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Id.* at 382.  These same considerations render the burdens imposed on EOP by overbroad discovery demands of the type made by Texas here an especially "important factor" weighing heavily against their enforcement.  *Id.* at 385.

*Cheney*'s heightened standards leave no doubt that Texas's discovery requests addressed to EOP must be denied.  Those requests, particularly 9 and 10, are strikingly broad in scope, seeking *all* communications between the President of the United States or *any* other individuals or offices within EOP and *any* Member of Congress, *any* employee of the Department of Justice, Department of Defense; United States Citizenship and Immigration Services; Department of State; United States Social Security Administration; Department of Veterans Affairs; Department of Homeland Security, *any* current or former member of the Texas Legislature, *any* member of the media, or *any* party to this litigation.  In the absence of a heightened showing of relevance, not to mention specificity, these requests would impose a substantial and unjustified burden on EOP, impinging on its ability to perform its vital Executive functions, exactly what *Cheney* precludes.  542 U.S. at 385 (Executive's "constitutional responsibilities and status [are] factors counseling judicial deference and restraint in the conduct of litigation against it") (internal quotation marks and citation omitted).

As directed to EOP, therefore, Texas's discovery requests are an impermissible attempt to initiate an extensive fishing expedition through EOP's files and computer system, which would cause "unnecessary intrusion into the operation of the Office of the President," in clear violation of *Cheney*.  Thus, as it relates to document requests directed to EOP, having satisfied neither the ordinary standards governing those requests under Rule 26, nor the heightened and particularized

8

standards applicable to discovery requests addressed to EOP, Texas's discovery request must be denied.

In order to avoid such abuse, not just for the specialized concerns affecting the operations of the Executive Branch, but with regard to litigation in general, Rule 26(c)(1) details the various ways protective orders may appropriately limit discovery, including: (1) "prescribing a discovery method other than the one selected by the party seeking discovery;" and (2) "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(C), (D); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n. 27 (5th Cir. 1999) (citation omitted) ("As a general proposition, a district court can exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion.").

Here, the Defendants have crafted discovery requests that impose undue burden and expense by requiring the United States to gather, review, and produce voluminous and irrelevant documents solely because the requests contain terms that have been expansively defined. Thus, the Court should limit the scope of the requests' definitions of "you" and "your" and "electronically stored information" to conform to the federal rules.

### A. Defendants' definition of the terms "you" and "your" will not result in the discovery of relevant information nor is it reasonably calculated to lead to the discovery of admissible evidence.

Because the Defendants seek information that is outside the permissible scope of discovery, Requests 9-14, which rely on the inappropriate definitions, are necessarily unduly burdensome. The Defendants may not use a definition to expand the scope of discovery requests far beyond what is permitted under Rule 26(b)(1). *Diversified Products Corp. v. Sports Center Co.*, 42 F.R.D. 3, 4 (D. Md. 1967) (". . . the use of unreasonable 'definitions' may render the

9

interrogatories [or other discovery requests] so burdensome to the answering party and to the court, that objections to the entire series should be sustained with sanctions . . .").

For example, Request 9 states:

Please produce all communications concerning SB 14, Senate Bill 362, House Bill 218 and House Bill 1706 between you and any other parties to this litigation, or between you and the Texas Legislature including but not limited to individual Texas Legislators and their staff or representatives during the State of Texas' 82nd Legislature, or any special sessions as well as any other parties to this litigation.

Defs. 1st RFP at 6 (Ex. 1).

At a minimum, this obligates the United States to determine whether anyone employed by, representing, or acting on behalf of either one of the seven identified federal departments or agencies, the Congress, the Attorney General, or the President has communicated with a party to this litigation or with any member of the Texas Legislature regarding any of the eighty-three bills that fall within Defendants' definition of "SB 14."[5] Not only would such a search for responsive information be a massive undertaking involving the review of millions of communications, but the Defendants have no legitimate reason to believe that a search outside the Department of Justice, or even the Civil Rights Division, would lead to relevant evidence that relates to the claims or defenses as to the issue in this case—namely, whether SB 14 violates federal law. Compl. (*United States v. Texas*, Civ. No. 13-263 (S.D. Tex.), ECF No. 1) ¶¶ 66-70.

Although lengthy, the Defendants' definition of "you" and "your" is also impermissibly vague and ambiguous as to its possible scope. *Webster Motor Car Co. v. Packard Motor Car Co.*, 16 F.R.D. 350, 351 (D.D.C. 1954) (A discovery request "must be specific in order that it not

---

[5] Defendants explained that they intend the term "SB 14" in their requests for production to refer to 83 bills introduced in the Texas Legislature between 2005 and 2013. Ltr. from David Whitley to Jennifer Maranzano at 1-2 (Dec. 20, 2013) (Ex. 2).

be necessary for the party that is being examined to exercise discretion or judgment in determining what is intended or covered by the [request]"). For instance, the precise scope of those subject to the discovery by the phrase is unclear. Does the request cover all Department of Defense personnel including the Joints Chiefs of Staff or all Department of State employees including ambassadors? The United States should not be subjected to a definition that is so amorphous, indefinite, and broad. *Compare Tsangarakis v. Panama Steamship Co.*, 41 F.R.D. 219, 220 (E.D. Pa. 1966) (objections to vague interrogatories sustained); *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 59-60 (E.D. Pa. 1979) (request for "personnel policy" held improper because phrase susceptible to innumerable definitions); *see also* Fed. R. Civ. P. 34(b)(1)(A) (document request "must describe with reasonable particularity each item or category of items to be inspected").

The Defendants have asserted that because some of the United States' production requests have been directed at Texas state legislators and their staff who wrote, debated, and enacted SB 14, fairness demands that Defendants may seek discovery from all 535 Members of Congress, none of whom had any part in enacting SB 14 – a *state* law – during their tenure in Congress. Defendants' apparent argument that reciprocal discovery is warranted fails because Congress and the Texas State Legislature are not similarly situated for purposes of this litigation. Under the analytical standard set forth in *Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977), it is clear that discovery directed at the statements of Texas legislators and their staff could reasonably lead to the discovery of admissible evidence on the core issue of whether SB 14 was adopted with a discriminatory intent. It is equally clear that the same cannot be said for the statements by Members of

Congress and their staff. Simply put, the Texas legislature – not the United States Congress – enacted SB 14.

Moreover, under Rule 26(c), courts must "balance the competing interests of allowing discovery and protecting the parties . . . from undue burdens," and prohibit discovery where its burdens outweigh its likely benefit. *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003); *see also United States v. American Tel. & Tel. Co.*, 461 F.Supp. 1314, 1335 (D.D.C. 1978) (indicating that for most civil discovery, the Department of Justice has no obligation to provide discovery from the Congress because it is considered outside the Department's possession, custody, or control).

### B. Defendants' definition of electronically stored information encompasses information not reasonably accessible because of undue burden or cost.

The Defendants' definition of electronically stored information includes categories that, in the absence of good cause, should be off limits to both sides. "A party need not provide discovery of electronically stored information from sources that the party indentifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. 26(b)(2)(B). Electronically stored information not reasonably accessible may only be obtained in the course of discovery if the party seeking the discovery can "show[] good cause, considering the limitations of [the proportionality test of] Rule 26(b)(2)(C)." *Id.*; *see also In re Jemsek Clinic, P.A.*, No. 06-31766, 2013 WL 3994663, at *9 (Bankr. W.D.N.C. Aug. 2, 2013) (denying motion to produce all metadata for over 200,000 pages of documents in part due to the lack of proportionality between the need and the burden); *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, No. 12-2515, 2013 WL 3974535 (E.D. La. Aug. 2, 2013) (denying exhaustive forensic examination of computers in trademark infringement case where, despite "some

connection between the computers sought to be examined and the claims in th[e] lawsuit," the absence of proportionality weighed heavily against permitting the discovery).

In the attached declaration, Gary Wong, Deputy Executive Officer for the Civil Rights Division, describes how several categories included in Defendants' definition of electronically stored information cannot be reasonably accessed. Those categories include deleted files; temporary files; internet or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer activity logs; smart cards; and integrated-circuit cards. Decl. of Gary Wong (Feb. 21, 2014) (Ex. 4). Most of the information in these categories is not stored on a computer network. Thus, an information technology professional would have to go to each individual computer to obtain the information. Moreover, much of the information is stored in binary formats and cannot be searched by keyword. Consequently, this requires a manual review of files to determine whether they were responsive to the Defendants' discovery requests. *Id*. ¶19. Mr. Wong has estimated that, extracting the information would require an average of 38 hours per computer. *Id*. ¶15 For the information technology team to extract the information Defendants seek from of the relevant subset of the Civil Rights Division's computers and phones, he estimates would take a total of 1,536 hours. *Id*. Mr. Wong notes responding to the discovery requests would require assigning 25 percent of his staff to only that task for 245 work days or 49 work weeks. During this time, those staff members would be unable to do anything else to support the work of the Division. *Id*. ¶¶20-21.

The Defendants have not identified instances where the recovery of electronically stored information in any of these categories from the Civil Rights Division or any other entity within the federal government is likely to lead to admissible evidence, and nor have Defendants

indentified why there is good cause for such an exceptionally burdensome request for information that is not reasonably accessible.

Defendants' definition of "electronic storage information" is especially burdensome in Requests 10-14 because each of these requests also includes either the term "you" or "your." This combination requires the United States to conduct manual forensic reviews of the computers and telephone messages of thousands of government employees, agents, and representatives throughout the Executive and Legislative Branches. Such a burden is totally disproportionate to any benefit that the Defendants may derive from the search.

Request 14 states: "Please produce all documents and electronically stored information in your possession, custody or control identifying [sic] each registered voter in Texas that you contend has been unable to vote on account of his or her inability to obtain identification." Defs. 1st RFP at 8 (Ex. 1). Given the breadth of the Defendants' terms, the request could reasonably be interpreted as a search for all documents and electronically stored information, including information that must be forensically examined, associated with all individuals in the United States government who, at any time in the last five years, contended that a voter in Texas could not vote on account of his or her inability to obtain any type of identification. A complete response to such a request would involve expenditures of resources grossly disproportionate to any evidence relevant to the claims and defenses in this case.

It is likely that in Request 14, the Defendants are seeking information about instances where the Civil Rights Division contends voters have been unable to vote on account of an inability to obtain identification since the passage of SB 14 in 2011. Were that the request, the United States would provide responsive information. Because the Defendants remain unwilling

to revise or tailor the language of their request to make it more specific, however, a protective order is necessary to eliminate the vagueness of the requests and to narrow their scope.

### III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court issue a protective order narrowing the scope of the Defendants' First Request for Production to that contemplated by the federal rules. Pursuant to Local Rule 7.1(c), a proposed order granting the requested relief is attached.

.

Date: February 21, 2014

                                        Respectfully submitted,

| | |
|---|---|
| KENNETH MAGIDSON<br>United States Attorney<br>Southern District of Texas | JOCELYN SAMUELS<br>Acting Assistant Attorney General<br>Civil Rights Division<br><br>*/s/ Avner Shapiro*<br>T. CHRISTIAN HERREN, JR.<br>MEREDITH BELL-PLATTS<br>ELIZABETH S. WESTFALL<br>BRUCE I. GEAR<br>AVNER SHAPIRO<br>JENNIFER L. MARANZANO<br>ANNA M. BALDWIN<br>DANIEL J. FREEMAN<br>Attorneys, Voting Section<br>Civil Rights Division<br>Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530 |

CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(D), I hereby certify that on February 21, I conferred with counsel for the Defendants about this motion and that counsel cannot agree about the disposition of the motion.

/s/Avner Shapiro
Avner Shapiro (DC Bar No. 452475)
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Tel: 202-305-1840
avner.shapiro@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2014, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

John B. Scott
John Reed Clay, Jr.
Gregory David Whitley
Jonathan F. Mitchell
Sean Flammer
Stephen Ronald Keister
Office of the Texas Attorney General
john.scott@texasattorneygeneral.gov
reed.clay@texasattorneygeneral.gov
david.whitley@texasattorneygeneral.gov
jonathan.mitchell@texasattorneygeneral.gov
sean.flammer@texasattorneygeneral.gov
ronny.keister@texasattorneygeneral.gov

*Counsel for Defendants*

Chad W. Dunn
Kembel Scott Brazil
Brazil & Dunn
chad@bradzilanddunn.com
scott@bazilanddunn.com

J. Gerald Hebert
Law Offices of J. Gerald Hebert
ghebert@campaignlegalcenter.org

Neil G. Baron
Law Offices of Neil G. Baron
neil@ngbaronlaw.com

Armand Derfner
Derfner, Altman, & Wilborn
aderfner@dawlaw.com

Luiz Roberto Vera, Jr.
lrvlaw@sbcglobal.net

*Counsel for Veasey Plaintiffs*

Christina Swarns
Ryan P. Haygood
Natasha M. Korgaonkar
Leah C. Aden
Deuel Ross
NAACP Legal Defense and Educational
   Fund, Inc.
cswarns@naacpldf.org
rhaygood@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
Gerald J. Sinzdak
Lynn Eisenberg
M. Hasan Ali
Richard F. Shordt
WilmerHale LLP
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
Gerard.sinzdak@wilmerhale.com
Lynn.eisenberg@wilmerhale.com
hasan.ali@wilmerhale.com
richard.shordt@wilmerhale.com

*Counsel for Texas League of Young Voters Plaintiff-Intervenors*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
ezra.rosenberg@dechert.com
amy.rudd@dechert.com

Wendy Weiser
Jennifer Clark
Myrna Pérez
Vishal Agraharkar
Brennan Center for Justice at NYU School of Law
wendy.weiser@nyu.edu
jenniferl.clark@nyu.edu
myrna.perez@nyu.edu
vishal.argraharkar@nyu.edu

Mark A. Posner
Sonia Kaur Gill
Erandi Zamora
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
sgill@lawyerscommittee.org
ezamora@lawyerscommittee.org

*Counsel for Texas State Conference of NAACP Branches Plaintiffs*

Jose Garza
Marinda van Dalen
Robert W. Doggett
Peter McGraw
Texas Rio Grande Legal Aid, Inc.
jgarza@trla.org
mvandalen@trla.org
rdoggett@trla.org
pmcgraw@trla.org

*Counsel for Ortiz Plaintiffs*

Rolando L. Rios
Law Offices of Rolando L. Rios
rrios@rolandorioslaw.com

*Counsel for Texas Association of Hispanic County Judges and County Commissioners Plaintiff-Intervenors*

> */s/ Avner Shapiro*
> Avner Shapiro (DC Bar No. 452475)
> Voting Section
> Civil Rights Division
> U.S. Department of Justice
> Tel: 202-305-1840
> avner.shapiro@usdoj.gov