IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-193 (NGR) |
| RICK PERRY, *et al.*, | |
| Defendants. | |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, | |
| Plaintiff-Intervenors, | |
| TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, | Civil Action No. 2:13-cv-263 (NGR) |
| Plaintiff-Intervenors, | |
| v. | |
| STATE OF TEXAS, *et al.*, | |
| Defendants. | |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

          Plaintiffs,

    v.

NANDITA BERRY, *et al.*,

          Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

          Plaintiffs,

    v.

STATE OF TEXAS, *et al.*,

          Defendants

Civil Action No. 2:13-cv-348 (NGR)

## JOINT NON-UNITED STATES PLAINTIFFS AND PLAINTIFF-INTERVENORS' SUPPLEMENTARY BRIEF IN SUPPORT OF UNITED STATES' MOTION TO COMPEL THE PRODUCTION OF LEGISLATIVE DOCUMENTS[1]

---

[1]  This brief is submitted on behalf of the following non-United States Plaintiffs and Plaintiff-Intervenors:  Texas State Conference of NAACP Branches, MALC, Marc Veasey, Floyd James Carrier, Anna Burns, Michael Montez, Penny Pope, Jane Hamilton, Sergio DeLeon, Oscar Ortiz, Koby Ozias, John Mellor-Crumley, Jane Doe, James Doe, League of United Latin American Citizens, Dallas County, Texas, Estela Garcia Espinosa, Lionel Estrada, Roxsanne Hernandez, La Union Del Pueblo Entero, Inc., Lydia Lara, Margarito Martinez Lara, Maximina Martinez Lara, Eulalio Mendez, Jr., Belinda Ortiz, Lenard Taylor, Hidalgo County, Maria Longoria Benavides, Texas House of Representatives, Texas Association of Hispanic County Judges and County Commissioners, Imani Clark, Michelle Bessiake, Crystal Owens, Aurica Washington, and the Texas League of Young Voters Education Fund (hereafter "Plaintiffs").

    The United States has moved to compel production of certain documents on the basis that Defendants' assertions of privilege are not applicable to the discovery sought in the context of this case.  *See* U.S. Mtn. to Compel, Doc. 162.  Rather than burden this Court with a separate motion, and in order to maintain the expedited pace of discovery, Plaintiffs through this supplementary brief join in support of the United States' motion to compel and ask that the Court apply its rulings on this motion to discovery propounded by all parties.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 3

I. THE COURT SHOULD GRANT THE MOTION TO COMPEL .................................... 3

    A. Texas Cannot Establish that the Need for Application of the Qualified
    Legislative Privilege Outweighs Plaintiffs' Need for Discovery to Prove
    Their Claim ....................................................................................................... 4

        1. The legislative privilege is a qualified one, subject to a balancing
        of interests test ....................................................................................... 4

        2. The balance of interests weighs decisively in favor of disclosure ............ 6

        3. There are ample indicia of discriminatory intent and purpose to
        support further discovery. ........................................................................ 9

    B. Texas Has Failed to Provide Sufficient Grounds for the Broad Assertion
    Of Any Other Privilege ................................................................................... 12

II. ALTERNATIVELY, THIS COURT CAN ELIMINATE ANY POTENTIAL
HARM TO THE LEGISLATIVE PROCESS BY ALLOWING DISCOVERY TO
PROCEED UNDER THE PROTECTIONS ESTABLISHED BY THE JOINTLY
ENTERED PROTECTIVE ORDER ............................................................................ 12

CONCLUSION .......................................................................................................... 14

## TABLE OF AUTHORITIES

CASES

*Baldus v. Members of the Wisconsin Gov't Accountability Bd.*,
2011 WL 6122542 (E.D. Wisc. Dec. 8, 2011)...............................................9, 11, 12

*Busbee v. Smith*,
549 F. Supp. 494 (D.D.C. 1982), *aff'd mem.* 459 U.S. 1166 (1983) ......................14

*Bush v. Martin*,
251 F. Supp. 484 (S.D. Tex. 1966) .......................................................................13

*Cano v. Davis*,
193 F. Supp. 2d 1177 (C.D. Cal. 2002) ................................................................11

*Comm. for a Fair and Balanced Map v. Illinois State Bd. of Elections*,
2011 WL 4837508 (N.D. Ill. Oct. 12, 2011).............................................8, 9, 11, 14

*Coughlin v. Lee*,
946 F.2d 1152 (5th Cir. 1991) ...............................................................................8

*Favors v. Cuomo*,
285 F.R.D. 187 (E.D.N.Y. 2012) .........................................................................13

*Georgia v. Ashcroft*,
539 U.S. 461 (2003)...............................................................................................12

*Graves v. Barnes*,
343 F. Supp. 704 (W.D. Tex. 1972).......................................................................13

*Hobart v. City of Stafford*,
784 F. Supp. 2d 732 (S.D. Tex. 2011) .....................................................................9

*Hodges, Grant & Kaufmann v. IRS*,
768 F. 2d 719 (5th Cir. 1985) .................................................................................8

*In re TXE Elec. Co.*,
2001 WL 688128 (Tex. App.—Dallas 2011, no pet. h.) ........................................13

*James v. Harris County*,
237 F.R.D. 606 (S.D. Tex. 2006)............................................................................8

*Jones v. City of College Park*,
237 F.R.D. 517 (N.D. Ga. 2006)...........................................................................12

*Kay v. Rancho Palos Verdes*,
2003 WL 25294710 (C.D. Cal. Oct. 10, 2003).........................................................9

*Kilgarlin v. Martin*
252 F. Supp. 404 (S.D. Tex. 1966) .......................................................................13

## TABLE OF AUTHORITIES

*League of Women Voters of Florida v. Florida House of Representatives*,
  2013 WL 6570903 (Fl. Dec. 13, 2013) ...................................................................12

*McMillan v. Escambia Cnty.*,
  748 F.2d 1037 (5th Cir. 1984) .................................................................................6

*Perez v. Perry*,
  2014 WL 106927 (W.D. Tex. Jan. 8, 2014) ...........................................9, 12, 13, 18

*Perez v. Perry*,
  No. 11-CA-360, slip op. (W.D. Tex. Aug. 1, 2011) ..............................................17

*Perez v. Perry*,
  No. 11-CV-360, slip op. (W.D. Tex. Mar. 19, 2012) ...........................................11

*Perkins v. Gregg County*,
  891 F. Supp. 361 (E.D. Tex. 1995) ...........................................................................8

*Rodriguez v. Pataki*,
  280 F. Supp. 2d 89 (S.D.N.Y. 2003) ......................................................................8, 9

*Seamon v. Upham*,
  536 F. Supp. 931 (E.D. Tex. 1982) .........................................................................13

*Smith v. Clarkton*,
  682 F.2d 1055 (4th Cir. 1982) ..................................................................6, 12, 14

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966) ................................................................................................10

*Texas v. Holder*,
  888 F. Supp. 2d 113 (D.D.C. 2012) ..................................................................13, 14

*Texas v. United States*,
  279 F.R.D. 24 (D.D.C. 2012) ..................................................................................17

*United States v. Irvin*,
  127 F.R.D. 169 (C.D. Cal. 1989) ........................................................................10, 11

*Village of Arlington Heights v. Metropolitan Housing Corp.*,
  429 U.S. 252 (1977) ........................................................................................ passim

**STATUTES**

42 U.S.C. § 1973 ........................................................................................... passim

TEXAS GOVERNMENT CODE § 323.017 ...............................................................16

# INTRODUCTION

Defendants in this case have broadly, vaguely, and improperly asserted a wide range of overlapping privileges in response to requests for production of documents propounded by Plaintiffs that seek to prevent Plaintiffs from obtaining crucial evidence at the heart of this case: whether Senate Bill 14 ("SB 14") was enacted, at least in part, for the purpose of denying or abridging the right to vote on account of race or ethnicity in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 ("Section 2"), and the Fourteenth and Fifteenth Amendments of the United States Constitution.  Plaintiffs submit this supplementary brief in support of the motion of the United States to compel discovery of the improperly withheld documents.[2]

If allowed to stand, Defendants' objections would undermine the Court's ability to fully and accurately determine the intent and purposes underlying the Texas Legislature's adoption of SB 14.  Under Defendants' view, if non-public legislative record documents showed that the

---

[2]   Plaintiffs Texas NAACP and MALC served requests for production of documents on Defendants, requesting the same documents requested by the United States as well as several non-duplicative requests.  *See* U.S. 1st RFPs (Ex. 1); Texas NAACP/MACL RFPs (Ex. 2). Defendants' responses and objections to Plaintiffs Texas NAACP and MALC's requests were identical to those served on the United States.  *See* Def. Resp. & Obj. to Texas NAACP/MALC RFPs (Ex. 3); Def. Resp. & Obj. to U.S. 1st RFPs (Ex. 4 to U.S. Mtn. to Compel, Doc. 162). Namely, Defendants asserted legislative privilege, attorney-client privilege, and/or deliberative process objections to almost every one of Plaintiffs' requests and withheld thousands of pages of documents on those grounds.  *See* Exs. 1-3 to U.S. Mtn. to Compel, Doc. 162.  Defendants, for example, have asserted legislative privilege in response to requests for information on the State's plans regarding hours of operation and the location of offices eligible to issue SB 14 required photo IDs, including driver's licenses and personal identification cards, s*ee* Ex. 3 at 5-9, and for documents related to training to be offered regarding the provisions of SB 14, *see id.* at 15-16.

Defendants have not yet responded to the requests for production of Plaintiffs Texas League of Young Voters, *et al.*, which requested documents identical to those requested by the United States as well as, among other non-duplicative requests, documents sought by or presented to the Texas State Legislature regarding student identification cards used for voting purposes.  *See* TLYVEF 1st RFPs at 4, 8 (Ex. 4).  There is, however, no reason to believe that Texas's response and objections to the United States' discovery will be any different from those that will be filed in response to the discovery propounded Plaintiffs NAACP and MALC.

legislative leadership behind SB 14 had received factual information at odds with the leadership's public pronouncements about SB 14, those documents would be protected from disclosure.  Defendants also maintain that, if the legislative leadership behind SB 14 documented in non-public legislative records, the reasons underlying their decisions to circumvent established legislative procedures to expedite and ensure the passage of SB 14, those documents also would be protected from disclosure.  Indeed, under Defendants' view, if the legislative leadership behind SB 14 privately documented in non-public legislative records their expectation and understanding that SB 14 would suppress minority voter participation in elections, those documents also would be protected from disclosure.

Notwithstanding Defendants' position, courts have recognized the common sense proposition that officials "seldom, if ever, announce on the record that they are pursuing a particular course of action because of a desire to discriminate against a racial minority." *Smith v. Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982) (recognizing the difficulty of extrapolating from the legislative public record the discriminatory purpose in the context of a Fair Housing Act case).  Thus, although legislative deliberation of competing considerations is entitled to judicial deference, "racial discrimination is not just another competing consideration," requiring such deference.  *Village of Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 265 (1977) ("*Arlington Heights*").   In appropriate Section 2 and constitutional cases, as here, the production of non-public record legislative documents is critical to ensuring the discovery of the publicly unstated—but potentially invidious—purposes behind the legislation.

Indeed, there is no question that to make out a constitutional violation, which many Plaintiffs in this case have alleged, "[p]roof of [a] racially discriminatory intent or purpose *is required*."  *Arlington Heights*, 429 U.S. at 265 (emphasis added); *cf. McMillan v. Escambia*

*Cnty.*, 748 F.2d 1037, 1046 (5th Cir. 1984) (a showing sufficient to constitute a violation of the Fourteenth Amendment "is sufficient to constitute a violation of section 2").  The Supreme Court has thus recognized that litigants and courts must have access to evidence essential to proving that intent, including "highly relevant" sources such as "contemporary statements by members of the decision-making body, minutes of its meetings, or reports."  *Arlington Heights*, 429 U.S. at 268.

For the reasons stated by the United States, and further explained below, this Court should compel Defendants' production of these non-public legislative record materials.

<u>**ARGUMENT**</u>

## I.      THE COURT SHOULD GRANT THE MOTION TO COMPEL

Plaintiffs support and incorporate the United States' arguments in its motion to compel and support entry of the accompanying proposed order, Proposed Order, Doc. 162-1.  Plaintiffs write this supplementary brief to focus the Court's attention on the following points:

- The legislative privilege asserted by Defendants is qualified and must yield to the paramount governmental interest in protecting Texas citizens' right to vote free from racial and ethnic discrimination.

- The substantial claims in the Complaints and the public record raise, at a minimum, an indicia of discriminatory intent behind SB 14, and support the need for further discovery of the non-public legislative record.

- Discovery of the requested documents will not, as a practical matter, chill legislative deliberations.  Any such concerns by Defendants about the alleged "chilling effect" can be addressed through strict application of the agreed upon Protective Order throughout

discovery, *see* Consent Protective Order, Doc. 105, and the Court's discrete decision-making on the admissibility of particular documents where necessary.

**A.      Texas Cannot Establish that the Need for Application of the Qualified Legislative Privilege Outweighs Plaintiffs' Need for Discovery to Prove Their Claim**

Texas carries the burden both of establishing the applicability of a privilege that would prevent the discovery of relevant information, and of producing record evidence sufficient to establish a privilege with reasonable certainty. *Hodges, Grant & Kaufmann v. IRS*, 768 F. 2d 719, 721 (5th Cir. 1985) ("The burden of demonstrating [] applicability . . . rests on the party who invokes it."); *accord James v. Harris County*, 237 F.R.D. 606, 609 (S.D. Tex. 2006); *Perkins v. Gregg County*, 891 F. Supp. 361, 363 (E.D. Tex. 1995).  As discussed below, Texas cannot satisfy either burden here.

**1.      The legislative privilege is a qualified one, subject to a balancing of interests test.**

*First*, it is well settled that "federal courts apply federal common law, rather than state law, to determine the existence and scope of a privilege."  *See e.g. Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir. 1991). Thus, whether a state privilege of the sort asserted by Defendants exists is not relevant to the Court's inquiry.

*Second*, under the leading authority of *United States v. Gillock*, any state legislative privilege, such as that asserted by Defendants, is qualified.  "[W]here important federal interests are at stake," the interests underpinning the privilege may yield.  445 U.S. 360, 373 (1980); *see Comm. for a Fair and Balanced Map v. Illinois State Bd. of Elections,* 2011 WL 4837508, at *5 (N.D. Ill. Oct. 12, 2011) ("Under the federal common law, legislative privilege is qualified, not absolute, and may be overcome by a showing of need."); *Rodriguez v. Pataki,* 280 F. Supp. 2d 89, 95-96 (S.D.N.Y. 2003) ("Legislative privilege, . . . is not absolute. . . . Thus, courts have indicated

-4-

that, notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions.").

*Third*, to prevail in their assertion of privilege, Defendants must prove that the potential harm to the legislative process outweighs the governmental interest at stake.  Courts have articulated various, but similar, multi-factor tests to guide determination of this issue.  *See, e.g.*, *Perez v. Perry*, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (applying a five factor test);[3] *Kay v. Rancho Palos Verdes*, 2003 WL 25294710, at *18 (C.D. Cal. Oct. 10, 2003) (applying an eight factor test).[4]  In *Hobart v. City of Stafford*, 784 F. Supp. 2d 732 (S.D. Tex. 2011), this Court applied a broader two-factor test, explaining that, however the balancing test is phrased, it essentially amounts to a requirement that the court "weigh the federal interests at stake against the potential harm to the legislative process."  *Id.* at 765 & n.24.[5]

---

[3]   The five factor test applied in *Perez* was: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."  2014 WL 106927, at *2 (citing *Rodriguez*, 280 F. Supp. 2d at 101).

[4]   The eight factor test applied in *Kay* was:  "(1) the interest of the litigants, and ultimately of society, in accurate judicial fact finding; (2) the relevance of the evidence sought to be protected; (3) the availability or unavailability of comparable evidence from other sources; (4) the seriousness of the litigation and the issues involved; (5) the presence of issues concerning alleged governmental misconduct; (6) the role of the government in the litigation itself; (7) the possibility of future timidity by government employees; and (8) the federal interest in the enforcement of federal law."  2003 WL 25294710, at *18 (citing *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989)).

[5]   In prior litigation Texas has claimed that *dicta* in *Arlington Heights* created an "extraordinary circumstances" threshold that must be met before the court addresses whether the privilege can be abrogated.  This is not the law.  The *dicta* in *Arlington Heights* addressed a narrow issue—the calling of witnesses "to the stand at trial," 429 U.S. at 268—not discovery generally, and certainly not document discovery.  Moreover, the *dicta* in *Arlington Heights* did not create a heightened standard for overcoming privilege claims over and above the traditional tests.  Rather, the courts citing *Arlington Heights* have consistently applied the balancing test for discoverability of evidence over objections of legislative privilege.  *See, e.g.*, *Comm. for a Fair and Balanced Map*, 2011 WL 4837508, at *4; *Rodriguez*, 280 F. Supp. 2d at 95; *Baldus v.*

2. **The balance of interests weighs decisively in favor of disclosure.**

The United States has thoroughly explained how the balance of interests decisively tips the scales in favor of Texas's production of the withheld documents.  Plaintiffs agree that the balance of interests weighs in favor of production for several reasons.

*First*, in the context of Section 2 and related constitutional litigation, a state faces a steep burden to prove that the balance of interests favors the non-disclosure of evidence relevant to discriminatory purpose, particularly where, as here, Defendants lodge a wholesale objection to the disclosure of *any* evidence other than matters of public record.  The Fourteenth and Fifteenth Amendments and the Voting Rights Act stand at the pinnacle of our laws, moderating the intersection of the right most fundamental to the functioning of our democracy and the prohibition most essential to the constitutional guarantee of equality.  *See, e.g.*, *South Carolina v. Katzenbach*, 383 U.S. 301, 334 (1966) ("The Voting Rights Act was designed by Congress to banish the blight of racial discrimination in voting. . . ."); *Irvin*, 127 F.R.D. at 174 ("The federal interest in the present case is compelling. The Voting Rights Act forbids local practices that abridge the fundamental right to vote.  This Act requires vigorous and searching federal enforcement.").

*Second*, unlike other cases where the plaintiffs sought discovery from legislators on issues tangential to the litigation, here Plaintiffs seek discovery relating to the issue at the core of this case:  the true—not merely the stated—purpose behind SB 14.  A lawsuit under Section 2 of the Voting Rights Act, no less so a lawsuit brought directly under the Fourteenth and Fifteenth

---

*Members of the Wisconsin Gov't Accountability Bd.*, 2011 WL 6122542, at *1 (E.D. Wisc. Dec. 8, 2011); *Kay*, 2003 WL 25294710, at *14.  In any event, even if discovery over objections of legislative privilege were limited to "extraordinary circumstances," a balancing of the interests in the context of the claims in this case demonstrate the extraordinary circumstances that should give rise to production of non-public legislative record documents.

Amendments, "is not . . . 'the usual "deliberative process" case in which a private party challenges governmental action . . . and the government tries to prevent its decision-making process from being swept up unnecessarily into the public domain.'  Rather, 'the decisionmaking process . . . itself *is* the case[.]'"  *Comm. for a Fair and Balanced Map*, 2011 WL 4837508, *8 (emphasis in original)(citation omitted); *see also Baldus*, 2011 WL 6122542, at *1 (in a Voting Rights Act case, "proof of a legislative body's discriminatory intent is relevant and extremely important"); *Cano v. Davis*, 193 F. Supp. 2d 1177, 1181 (C.D. Cal. 2002) (three judge panel) (Reinhardt, J., concurring in part, dissenting in part) ("When a plaintiff must prove discriminatory intent on the part of a legislature, the statements of legislators involved in the process . . . may in some instances be the best available evidence as to legislative motive.").

Non-public statements of legislators and the documents they reviewed or drafted thus are key evidence in the determination of discriminatory purpose under Section 2 of the Voting Rights Act (and no less so under the Fourteenth and Fifteen Amendments of the United States Constitution).  *See, e.g.*, *Baldus*, 2011 WL 6122542, at *6  (Section 2 case:  "any documents or testimony relating to how the Legislature reached its decision on the 2011 redistricting maps are relevant to the plaintiff's claims as proof of discriminatory intent" and allowing a legislative aide to testify); *Irvin*, 127 F.R.D. at 174 ("the federal interest in enforcement of the Voting Rights Act weighs heavily in favor of disclosure"); *Comm. for a Fair and Balanced Map*, 2011 WL 4837508, at *4 (Section 2 case:  "To be sure, statements made by members of the decision-making body are relevant to show discriminatory intent."); *Perez v. Perry,* No. 11-CV-360, slip op. at 6 (W.D. Tex. Mar. 19, 2012) (No. 690) (Ex. 5) (court relied on legislator's deposition statement as evidence that decision-makers were "impermissibly focused on race in trying to

make the district more Republican" in Section 2 challenge).[6]  That some of this non-public legislative record evidence in the above-cited cases may have been produced voluntarily does not detract from the essential premise that this sort of evidence is highly relevant to showing discriminatory intent.

In reaching these decisions, courts have had little trouble in disposing of the claim that disclosure might have a chilling effect on legislative deliberations.  *See, e.g.*, *League of Women Voters of Florida v. Florida House of Representatives*, 2013 WL 6570903, at *1 (Fl. Dec. 13, 2013) (state court case involving Florida's constitutional prohibition against discrimination: "We therefore reject the Legislature's argument that requiring the testimony of individual legislators and legislative staff members will have a 'chilling effect' among legislators in discussion and participation in the reapportionment process, as this type of 'chilling effect' was the precise purpose of the constitutional amendment outlawing partisan political gerrymandering and improper discriminatory intent"); *Baldus*, 2011 WL 6122542, at *2 ("the plaintiffs['] access to these items may have some minimal future 'chilling effect' on the Legislature, but that fact is outweighed by the highly relevant and potentially unique nature of the evidence").

Here, the Court need not speculate as to hypothetical harms because any such harm is not merely speculative, but contrary to history.  The "harm" that courts generally are concerned with in assessing legislative privilege claims is "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."  *See, e.g.*, *Perez*, 2014 WL 106927, at *2.  For decades, however, Texas legislators have appeared at depositions and

---

[6]  *Cf. Georgia v. Ashcroft*, 539 U.S. 461, 471-75, 483 (2003) (finding testimony of legislators "significant" to Court's consideration of discriminatory effect of voting change in Section 5 action); *Smith*, 682 F.2d at 1064 (Fair Housing Act case); *Jones v. City of College Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006) (Title VII action: deposition testimony of officeholders appropriate where "government intent is at the heart of the issue in this case.").

-8-

trial in various contexts, including challenges under the Voting Rights Act, sometimes voluntarily. *See, e.g.*, *Bush v. Martin*, 251 F. Supp. 484, 495 (S.D. Tex. 1966); *Kilgarlin v. Martin* 252 F. Supp. 404, 423 (S.D. Tex. 1966); *Graves v. Barnes*, 343 F. Supp. 704, 714 (W.D. Tex. 1972); *Seamon v. Upham*, 536 F. Supp. 931, 1023 (E.D. Tex. 1982); *In re TXE Elec. Co.*, 2001 WL 688128, at *1 (Tex. App.—Dallas 2011, no pet. h.); *Texas v. Holder*, 888 F. Supp. 2d 113, 120-21 (D.D.C. 2012); *Perez*, 2014 WL 106927, at *1. These experiences have had no discernable "chilling effect" on legislators' deliberations, as those legislators have amassed a voluminous collection of thousands of pages of supposedly confidential materials relating to SB 14. Furthermore, disclosure has not stopped Texas itself from naming legislators and their staff as prospective witnesses in this litigation. *See* U.S. Mtn. to Compel at 9, Doc. 162. Texas legislators did not act with any demonstrable "timidity," belying any assertion of substantial harm to the legislative process. *See Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) ("[O]nce the privilege is invoked, the Court should not later allow the proponent of the privilege to strategically waive it to the prejudice of other parties.").

### 3. There are ample indicia of discriminatory intent and purpose to support further discovery.

As the Supreme Court observed in *Arlington Heights*, "racial discrimination is not just another competing consideration" of the sort typically entitled to judicial deference. "When there is a proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified." *Id.* at 266. Here, undoubtedly, there are indicia of discriminatory intent and purpose underlying passage and implementation of SB 14.

Thus, limiting proof of discriminatory purpose to public pronouncements made by SB 14's supporters, as Defendants would ask of the Court, would create the anomalous situation where states could avoid liability for imposing deliberately discriminatory voting legislation

merely by ensuring that legislators' self-serving, public statements masked any discriminatory purpose underlying the legislation. That would be a dangerous precedent to set.[7] Common sense dictates that those harboring a discriminatory intent would be wary of letting it be known. *See, e.g.*, *Clarkton*, 682 F.2d at 1064 (in Fair Housing Act case, recognizing that "[m]unicipal officials acting in their official capacity seldom, if ever, announce on the record that they are pursuing a particular course of action because of a desire to discriminate against a racial minority. Even individuals acting from invidious motivations realize the unattractiveness of their prejudices when faced with the public record.").

It also is well established that evidence of a particular decision-maker's individual intent in seeking to enact a voting change is relevant evidence in voting rights cases, particularly where that decision-maker played a key role in the enactment of the voting change. *See, e.g.*, *Busbee v. Smith*, 549 F. Supp. 494, 500 (D.D.C. 1982), *aff'd mem.* 459 U.S. 1166 (1983) (finding probative that the chairman of the Georgia General Assembly's House Redistricting Committee was motivated by a discriminatory purpose in exerting his authority during the process leading to Georgia's adoption of a congressional redistricting plan).[8]

Finally, the Court should reject Defendants' claim of legislative privilege where as here there are numerous indicia of discriminatory intent in the enactment of SB 14. *See Arlington*

---

[7] Even so, Plaintiffs would surely still be entitled to non-public communications between legislators and third-party analysts or constituents regarding legislators' intent or the effects of SB 14. *See Comm. for a Fair and Balanced Map*, 2011 WL 4837508, at *10 ("While legislators are certainly free to seek information from outside sources, they may not assume that every such contact is forever shielded from view.") (citation and internal alterations omitted).

[8] Plaintiffs agree with the argument of the United States that Section 2 cases do not present the same federalism concerns that prompted the three-judge panel in *Texas v. Holder* to limit discovery from Texas on the basis of legislative privilege. It is noteworthy, however, that even in Section 5 cases, discovery into individual legislator's motivations has been allowed.

[9] *See, e.g.*, Compl. for Declaratory and Injunctive Relief, *Texas State Conference of NAACP*

*Heights*, 429 U.S. at 266-68 (describing types of evidence indicative of discriminatory intent). For example, the Complaints in this case allege that pretextual rationales were offered by the bill's sponsors,[9] that the sponsors refused to respond in any substantive manner to questions from the floor directed to the discriminatory effect of the bill and instead provided only perfunctory non-responses,[10] that there was a racially charged atmosphere surrounding the bill's passage,[11] and legislative leaders refused to allow virtually any amendments ameliorating SB 14's discriminatory impact.[12]

Moreover, the legislative process leading to the adoption of SB 14 was riddled with procedural irregularities, which further strongly suggests an invidious purpose was at work.

- An amendment in January 2011 of Senate Rule 5.11(d) eliminated the need, applicable to all other legislation, for a two-thirds vote to bring "voter identification" legislation to the floor.  (McCoy Tr. 119:19-25, 121:8-17, (Ex. 6)).

- In January 2011, Governor Perry declared SB 14 to be an "emergency item"—an unusual occurrence which led to its passage within 60 days of the declaration.  (Harless Tr. 35:10-11 (Ex. 7); McCoy Tr. 145:4-13 (Ex. 6)).

---

[9]  *See, e.g.*, Compl. for Declaratory and Injunctive Relief, *Texas State Conference of NAACP Branches v. Steen*, 2:13-cv-00291 (S.D. Tex., filed Sept. 17, 2013) ("NAACP Compl.") at ¶¶ 65, 69-77; Compl., *United States v. Texas*, 2:13-cv-00263 (S.D. Tex., filed Aug. 22, 2013) ("U.S. Compl.") at ¶ 27; Amended Compl. of Texas League of Young Voters, *et al*. ("TLYVEF Am. Compl.") at ¶¶ 52-54 (Doc. 73).

[10]  *See* NAACP Compl. at ¶ 65; U.S. Compl. at ¶ 65.

[11]  *See* Amended Compl. (Doc. 4) at ¶¶ 1, 4, 51, 55; NAACP Compl. at ¶¶ 27-40, 49-53; U.S. Compl.at ¶¶ 15, 26.

[12]  *See* NAACP Compl. at ¶ 66; U.S. Compl. at ¶ 33; TLYVEF Am. Compl. at ¶ 56.

- SB 14 was assigned to the Select Committee on Voter Identification and Voter Fraud—a "fast-track" committee—and was the only piece of legislation assigned "fast-track" status in the 82nd Session of the Texas Legislature.  (Harless Tr. 35:6-36:13 (Ex. 7)).

- The Select Committee on Voter Identification and Voter Fraud considered only one bill, SB 14.  Rep. Harless testified that she was not aware of any other Select Committee that considered only one bill.  (Harless Tr. 36:18-37:6 (Ex 7)).

Under these circumstances, Defendants' assertions of privilege must yield.

### B.    Texas Has Failed to Provide Sufficient Grounds for the Broad Assertion Of Any Other Privilege

In addition to asserting legislative privilege, Defendants attempt to shield a substantial number of documents from discovery based on the attorney-client privilege and Section 323.017 of the Texas Government Code.  Plaintiffs join the United States in objecting to these assertions of privilege for the reasons set forth in the United States' Motion to Compel.

## II.    ALTERNATIVELY, THIS COURT CAN ELIMINATE ANY POTENTIAL HARM TO THE LEGISLATIVE PROCESS BY ALLOWING DISCOVERY TO PROCEED UNDER THE PROTECTIONS ESTABLISHED BY THE JOINTLY ENTERED PROTECTIVE ORDER

Plaintiffs fully endorse the United States' position that, categorically, Defendants' privilege assertions should be rejected.  However, to the extent that there is any question that material could arise that might prove an exception to the Court's categorical ruling, strict application of the jointly entered Protective Order throughout discovery would act as a safety-valve for Defendants, while at the same time allowing discovery to proceed without delay. Deeming material "Highly Confidential" under the Protective Order would provide Defendants with the opportunity to show later that particular documents or testimony—at the time it is sought to be offered into evidence—is of such a nature that, balancing the interests between the privilege and the litigants, the assertion of privilege is warranted.  Such an approach may be

particularly appropriate here because Defendants have asserted privilege wholesale over tens of thousands of documents, and a jointly entered into Protective Order is in place that would provide complete confidentiality to any disclosures.

Furthermore, while thus far the parties are dealing only with privilege objections raised in connection with *documents* requested from the legislature, once depositions commence, Plaintiffs anticipate that Defendants will interpose thousands of objections to questions asked of legislators, leading to another round of motions, many of which will involve disputes about testimony that may never be offered into evidence.   Given the tight discovery deadlines, Plaintiffs respectfully suggest that the Court institute the following protocol:

1.  Order the production of all documents, but require that the documents be treated as "Highly Confidential" under the Protective Order; and

2.  Order that legislators be deposed and required to answer all questions, but require that the depositions be treated as "Highly Confidential" under the Protective Order.  If the information disclosed in the deposition is sought to be admitted at trial, Defendants' preserve their privilege objections, if any remain consistent with the Court's order.

This approach is similar to that taken by two other district courts in recent cases. *See Texas v. United States*, 279 F.R.D. 24, 33-34 (D.D.C. 2012) (ordering production to the parties under seal of all documents as to which Texas claimed a legislative privilege, subject to further review before decision on admission of documents); *Perez v. Perry*, No. 11-CA-360, slip op. at 5-6 (W.D. Tex. Aug. 1, 2011) (No. 102) (Ex. 8) (ruling that assertion of legislative privilege prior to depositions would be "premature," and initially ordering legislators to "appear and testify even if it appears likely that the privilege may be invoked in response to certain

questions" and to "answer the question subject to the privilege" and *in camera* review).[13] Instituting the proposed protocol, which we offer only in the alternative, would allow for the expeditious conclusion of discovery and balances the interests of the parties of disclosure versus privilege.

## CONCLUSION

For the reasons stated above and in the brief of the United States, Plaintiffs request that the Court grant the United States' Motion to Compel, and apply its ruling to discovery propounded by all Plaintiffs.  Alternatively, Plaintiffs respectfully request that the Court allow all discovery, including depositions, to proceed, with all information disclosed as to which privileges are asserted to be deemed Highly Confidential under the Protective Order.

Respectfully submitted,


s/ Ezra Rosenberg
Ezra D. Rosenberg
Michelle Hart Yeary
Dechert LLP
902 Carnegie Center, Suite 500
Princeton, New Jersey 08540-6531
ezra.rosenberg@dechert.com

---

[13]   In *Perez*, the depositions of legislators proceeded under seal, until, as ultimately occurred, legislators waived the privilege and both deposition testimony and live testimony of legislators were used at trial.  *See* Tr. of Proceedings, at **165-66, 900-01 (Ex. 9).  The court recently modified the procedure to specify that counsel for the State could not, as Texas has done here, assert the privilege for the legislators, but that each legislator must do so individually.  2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014).  The modification gives the individuals the choice at depositions to testify in accordance with the protocol (and their testimony being sealed) or to refuse to testify and the court would take the issue under advisement. *Id.*

Steven B. Weisburd
Amy L. Rudd
Lindsey Cohan
Dechert LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701
lindsey.cohan@dechert.com

Wendy Weiser
Myrna Pérez
Vishal Agraharkar
Jennifer Clark
The Brennan Center for Justice at NYU Law School
161 Avenue of the Americas, Floor 12
New York, New York 10013-1205
wendy.weiser@nyu.edu
myrna.perez@nyu.edu
vishal.agraharkar@nyu.edu
jenniferl.clark@nyu.edu

Robert A. Kengle
Mark A. Posner
Sonia Kaur Gill
Erandi Zamora
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
mposner@lawyerscommittee.org

Clay Bonilla
Daniel G. Covich
The Law Offices of William Bonilla, P.C.
2727 Morgan Ave.
Corpus Christi, Texas 78405
claybonilla@hotmail.com
Daniel@bonillalaw.com

Gary Bledsoe
PotterBledsoe, L.L.P.
316 West 12th Street, Suite 307
Austin, Texas 78701
garybledsoe@sbcglobal.net

Robert Notzon
The Law Office of Robert Notzon
1502 West Avenue
Austin, Texas 78701
Robert@NotzonLaw.com

Jose Garza
Law Office of Jose Garza
7414 Robin Rest Drive
San Antonio, Texas 98209
garzapalm@aol.com

Kim Keenan
Marshall Taylor
Victor Goode
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215
Telephone: (410) 580-5120
kkeenan@naacpnet.org
mtaylor@naaacpnet.org
vgoode@naacpnet.org

*Counsel for Plaintiffs Texas State Conference of NAACP Branches, Mexican American Legislative Caucus of the Texas House of Representatives*

Christina A. Swarn
Ryan P. Haygood
Natasha M. Korgaonkar
Leah C. Aden
Deuel Ross
NAACP Legal Defense and Educational Fund, Inc.
40 Rector St, 5th Floor
New York, NY 10006
212-965-2200
cswarns@naacpldf.org
rhaygood@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
Gerard J. Sinzdak
Lynn Eisenberg
M. Hasan Ali
Richard F. Shordt
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
202-663-6006
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com

*Counsel for Plaintiff-Intervenors Texas League of Young Voters Education Fund et al.*

Jose Garza
Law Office of Jose Garza
7414 Robin Rest Dr.
San Antonio, TX 78209
210-392-2856
garzpalm@aol.com

Marinda van Dalen
Texas RioGrande Legal Aid, Inc.
531 East St. Francis St.
Brownsville, Texas 78529-5354
956-982-5540

Robert W. Doggett
Texas Rio Grande Legal Aid Inc
4920 North IH 35
Austin, TX 78751
512-374-2725
512-447-3940 (fax)
rdoggett@trla.org
mvandalen@trla.org

*Counsel for Plaintiff-Intervenors Estela Garcia Espinosa, Lionel Estrada, Roxsanne Hernandez, La Union Del Pueblo Entero, Inc. Lydia Lara, Margarito Martinez Lara, Maximina Martinez Lara, Eulalio Mendez, Jr., Belinda Ortiz, Lenard Taylor*

Rolando L Rios
Attorney at Law
115 E Travis, Ste 1645
San Antonio, TX 78205
(210-222-2102)
rrios@rolandorioslaw.com

*Counsel for Plaintiff-Intervenor Texas Association of Hispanic County Judges and County Commissioners*

Preston Edward Henrichson
Attorney at Law
222 W Cano
Edinburg, TX 78539
956-383-3535
956-383-3585 (fax)
preston@henrichsonlaw.com

Rolando L Rios
Attorney at Law
115 E Travis
Ste 1645
San Antonio, TX 78205
210-222-2102
210-222-2898 (fax)
rrios@rolandorioslaw.com

*Counsel for Plaintiff-Intervenor Hidalgo County*

Chad W. Dunn
Attorney-in-charge
K. Scott Brazil
Brazil & Dunn
4201 Cypress Creek Parkway, Suite 530
Houston, Texas  77068
Telephone:  (281) 580-6310
Facsimile:   (281) 580-6362
chad@brazilanddunn.com
scott@brazilanddunn.com

J. Gerald Hebert
Campaign Legal Center
215 E Street, NE
Washington, DC 20002
(202) 736-2200 ext. 12
(202) 736-2222 (fax)
GHebert@campaignlegalcenter.org
(Pro Hac Vice Motion Granted Dkt. #13)

Neil G. Baron
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539
(281) 534-2748
(281) 534-4309 (fax)
neil@ngbaronlaw.com

David Richards
Richards, Rodriguez & Skeith, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701
(512) 476-0005
(512) 476-1513 (fax)
daverichards4@juno.com

Armand G. Derfner
Derfner, Altman & Wilborn, LLC
P.O. Box 600
Charleston, S.C. 29402
Telephone (843) 723-9804
aderfner@dawlegal.com
(Pro Hac Vice Motion Granted Dkt. # 6)

*Attorneys for Plaintiffs Marc Veasey, Floyd James Carrier, Anna Burns, Michael Montez, Penny Pope, Jane Hamilton, Sergio DeLeon, Oscar Ortiz, Koby Ozias, John Mellor-Crummey, Jane Doe, James Doe, League of United Latin American Citizens ("LULAC") and Dallas County, Texas*

Luis Roberto Vera, Jr.
LULAC National General Counsel
The Law Offices of Luis Vera Jr., and Associates
1325 Riverview Towers, 111 Soledad
San Antonio, Texas 78205-2260
(210) 225-3300
(210) 225-2060 (fax)
lrvlaw@sbcglobal.net

*Attorney for LULAC*

Craig M. Watkins
Dallas County District Attorney
Teresa G. Snelson
Chief, Civil Division
Dallas County District Attorney's Office
411 Elm Street, 5th Floor
Dallas, TX 75202-4606
(214) 653-7358
(214) 653-6134 (fax)
Teresa.Snelson@dallascounty.org

*Attorneys for Dallas County, Texas*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2014, I served a true and correct copy of the foregoing via the Court's ECF system on all counsel of record.

/s/ Lindsey B. Cohan
Lindsey B. Cohan
State Bar No. 24083903
Dechert LLP
500 W. 6th Street, Suite 2010
Austin, TX 78701
Telephone:  (512) 394-3000
Facsimile:  (512) 394-3001
lindsey.cohan@dechert.com