IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-193 (NGR) |
| RICK PERRY, *et al.*, | |
| Defendants. | |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, | |
| Plaintiff-Intervenors, | |
| TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, | Civil Action No. 2:13-cv-263 (NGR) |
| Plaintiff-Intervenors, | |
| v. | |
| STATE OF TEXAS, *et al.*, | |
| Defendants. | |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

          Plaintiffs,

      v.

NANDITA BERRY, *et al.*,

          Defendants.

Civil Action No. 2:13-cv-291 (NGR)

---

BELINDA ORTIZ, *et al.*,

          Plaintiffs,

      v.

STATE OF TEXAS, *et al.*,

          Defendants

Civil Action No. 2:13-cv-348 (NGR)

## Reply Memorandum in Support of United States' Motion to Compel the Production of Legislative Documents

The United States seeks to compel the production of documents relevant to its claim that the State of Texas violated Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, when its legislature enacted Senate Bill 14 (2011) (SB 14) for the purpose, at least in part, to deny or abridge the equal opportunity of citizens to participate in the political process on account of race or membership in a language minority group.  Mot. to Compel (ECF No. 162); *see also* Jnt. Pls. Br. (ECF No. 182).  Defendants contest neither the relevance nor the importance of these unique documents.  *See* Defs. Opp. (ECF No. 183).  Rather, Defendants claim a near-absolute state legislative privilege by conflating constitutional protections afforded to federal legislators and common law immunity against civil liability for legislative acts.

1

Under either the categorical approach set out in *United States v. Gillock*, 445 U.S. 360, 370-73 (1980), and reaffirmed in *Jaffee v. Redmond*, 518 U.S. 1, 14 (1996), or the multifactor analysis set out in *Perez v. Perry*, No. 5:11-cv-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge court), relevant legislative documents may not be shielded from discovery. Defendants also fail to address the bulk of the United States' arguments regarding claims of the attorney-client privilege and appear to abandon any claim of privilege based on Section 323.017 of the Texas Government Code. For the reasons that follow, the United States respectfully requests that the Court compel the production of legislative documents.

## I.   IMPORTANT FEDRAL INTERESTS IN UNIQUE EVIDENCE OF DISCRIMINATION IN VOTING REQUIRE DISCLOSURE.

The Supreme Court has held "that Rule 501 d[oes] not include a state legislative privilege." *Jaffee v. Redmond*, 518 U.S. 1, 14 (1996) (citing *United States v. Gillock*, 445 U.S. 360, 367-68 (1980)); *see also* Mot. to Compel at 6-7. Some courts have nonetheless applied a qualified privilege to legislative discovery. *See, e.g., Perez*, 2014 WL 106927, at *2; *see also* Mot. to Compel at 7-11. Whether this Court applies the categorical approach set out in *Gillock* and *Jaffee* or the balancing test articulated in multiple voting rights cases, including *Perez*, *Favors v. Cuomo*, 285 F.R.D. 187, 217-20 (E.D.N.Y. 2012), and *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989), any claim of state legislative privilege over disputed documents must fail.

*Gillock* declined to recognize a state legislative privilege in the context of a federal prosecution, but neither its text nor its logic is limited to criminal cases. Rather, the Court suggested that enforcement of federal criminal statutes was merely one important federal interest among many that overcome any comity concerns that might favor a privilege claim. *See Gillock*,

2

445 U.S. at 373 ("[W]here important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields."); *see also id.* at 372 (distinguishing a legislative immunity case as addressing "a civil action brought by a private plaintiff to vindicate private rights"). Moreover, in *Jaffee*, the Court affirmed that *Gillock* had categorically rejected a state legislative privilege, not merely the application of such a privilege in federal prosecutions. *See Jaffee*, 518 U.S. at 14; *id.* at 19 (Scalia, J., dissenting). Notably, *Jaffee* recognized a privilege in a civil suit but did not distinguish the refusal to recognize a privilege in *Gillock* based on *Gillock* having arisen in the criminal context. *See Jaffee*, 518 U.S. at 15.[1]

Defendants also fail entirely to address the multi-factor tests set out by the three-judge court in the Western District of Texas currently addressing statewide redistricting litigation, other than to note that the *Perez* court has yet to apply this framework. Defs. Opp. at 10. Thus, Defendants have not contested that the documents are relevant to the United States' claims, that the evidence is unavailable from other sources, that this litigation and the issues involved are serious, that the State's role in the litigation weighs in favor of disclosure, and that document discovery does not create a substantial practical burden on legislators. Mot. to Compel at 8-10. Therefore, the legislative documents that the United States seeks should be produced. *See, e.g.*, *Irvin*, 127 F.R.D. at 173-74.

Rather than acknowledging that any state legislative privilege is "at best, one which is qualified," *Perez*, 2014 WL 106927, at *2 (quoting *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100

---

[1] Defendants' contention that limiting a blanket rejection of a proposed privilege to the criminal context would be "unremarkable," Defs. Opp. at 14, is belied by the example they propose: the crime-fraud exception to the attorney-client privilege. The crime-fraud exception requires an evidentiary showing and is tailored to prevent abuse of the attorney-client privilege. *See United States v. Zolin*, 491 U.S. 554, 562-63 (1989); *In re Grand Jury Subpoena*, 419 F.3d 329, 335-36 (5th Cir. 2006). By contrast, *Gillock* rejected any state legislative privilege as an unnecessary impediment to important federal interests. *See* 445 U.S. at 370-73.

3

(S.D.N.Y. 2003)), Defendants rely on the absolute testimonial privilege held by members of

Congress under the Speech or Debate Clause of the Constitution, U.S. Const. art. I, § 6, cl.1, and

the common law immunity against civil liability for legislative acts.  *See* Defs. Opp. at 5-8.[2]  The

federal Speech or Debate Clause does not apply to state officials, *see Lake Country Estates, Inc.*

*v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404 (1979), and its underlying logic does not

support a federal privilege for state legislators, *see Gillock*, 445 U.S. at 368-70.  Moreover,

absolute immunity from civil suit is entirely distinct from possessing a privilege against

testifying as a witness when third parties are sued, let alone a privilege to preclude parties to such

a suit from producing vital documents.  *See Dennis v. Sparks*, 449 U.S. 24, 30 (1980); *Perez*,

2014 WL 106927, at *2; *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 763 (S.D. Tex. 2011).

Thus, while the common law limits inquiry into the motives of legislators to establish legislators'

civil liability, "judicial inquiry of legislative motive is not per se forbidden."  *Carver v. Foerster*,

102 F.3d 96, 104 (3d Cir. 1996); *see also United States v. O'Brien*, 391 U.S. 367, 383 n.30

(1968).[3]

---

[2] The following cases cited by Defendants concern only the Speech or Debate Clause:  *United States v. Helstoski*, 442 U.S. 477 (1979); *Gravel v. United States*, 408 U.S. 606 (1972); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856 (D.C. Cir. 1988); *Chastain v. Sundquist*, 833 F.2d 311 (D.C. Cir. 1987); *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973); *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007).  The reliance on such cases leads to baseless arguments, such as Defendants' claim that a state legislative privilege against the United States' discovery requests is necessary "'to preserve the constitutional structure of separate, coequal, and independent branches of government.'"  Defs. Opp. at 7-8 (quoting *Helstoski*, 442 U.S. at 491 (1979)).  Similarly, the following cases concern only common law legislative immunity, not a privilege from discovery:  *Bogan v. Scott-Harris*, 523 U.S. 44 (1998); *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719 (1980); *Tenney v. Brandhove*, 341 U.S. 367 (1951).

[3] Of the string of cases cited by Defendants for the proposition that numerous courts have enforced a state legislative privilege, Defs. Opp. at 6-7 & n.2, most show little more than what the United States acknowledged in its opening brief: some federal courts have applied a qualified legislative privilege.  *See, e.g., Jeff D. v. Otter*, 643 F.3d 278, 289-90 (9th Cir. 2011) (upholding assertion of a state legislative privilege following specific findings against a compelling interest in disclosure); *Comm. for a Fair and Balanced Map v. Ill. State Bd. of Elections*, No. 11-C-5065, 2011 WL 4837508, at *6 (N.D. Ill.

4

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252

(1977), sets forth a framework for evaluating intent in a case such as this and requires a

"sensitive inquiry into such circumstantial and direct evidence of intent as may be available" and

sets few, if any, limitations on this Court's ability to assess such evidence.  Defendants

erroneously claim that *Arlington Heights* restricts this Court to "determine whether a

discriminatory purpose exists by examining publicly available sources," Defs. Opp. at 11

(emphasis omitted), and requires "[a] showing of 'extraordinary instances' . . . before a state or

local decision maker can be forced to submit to discovery."  *Id.* at 15.  In fact, the language on

which Defendants rely states only that legislative "testimony frequently will be barred by

privilege."  *Arlington Heights*, 429 U.S. at 268.[4]  The instant motion seeks only to compel

---

Oct. 12, 2011) ("Given the federal interests at stake in redistricting cases, this court concludes that
common law legislative [privilege] does not entirely shield Non–Parties here.").  One case affirmed an
order requiring compliance with subpoenas, *see EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d
174 (4th Cir. 2011), and others expressly distinguished between testimony and document requests, *see,
e.g.*, *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 302 n.20 (D. Md. 1992)
(three-judge court).  Still others have been overruled or reversed or rely on overruled decisions.  *See
Schlitz v. Commonwealth of Virginia*, 854 F.2d 43, 46 (4th Cir. 1988), *overruled*, *Berkley v. Common
Council*, 63 F.3d 295 (4th Cir. 1995) (en banc); *Burtnick v. McLean*, 76 F.3d 611 (4th Cir. 1996); *Suhre v.
Bd. of Comm'rs*, 894 F. Supp. 927 (W.D.N.C. 1995), *rev'd*, 131 F.3d 1083 (4th Cir. 1997).  One
addressed the scope of waiver, rather than whether any privilege could be overcome by compelling
interests.  *See Cano v. Davis*, 193 F. Supp. 2d 1177 (C.D. Cal. 2002) (three-judge court) (per curiam).
Several remaining cases concern matters that do not implicate an important federal interest akin to
litigation brought by United States to enforce the guarantees of the Fourteenth and Fifteenth Amendments
with respect to discrimination in voting.  *See, e.g.*, *M. Secs. & Investments, Inc. v. Miami-Dade Cnty.*, No.
00-cv-1951, 2001 WL 1685515 (S.D. Fla. Aug. 14, 2011) (selection as bond underwriter); *Miles-Un-Ltd.*,
917 F. Supp. at 101 (challenge to moped regulation); *2BD Assocs. L.P. v. County Comm'rs*, 896 F. Supp.
528, 531 & n.1 (D. Md. 1995) (addressing zoning challenging and noting that "the passing of a zoning
ordinance can hardly be analogized to the unique nature of legislative redistricting").  Finally, a state's
decision to provide its officials a legislative privilege in state courts, *see In re Perry*, 60 S.W.3d 857 (Tex.
2001), does not compel an analogous privilege in federal court.  *See Gillock*, 445 U.S. at 368.

    [4]  Defendants also rely on the statement, "In some extraordinary instances the members might be
called to the stand at trial to testify concerning the purpose of the official action."  *Arlington Heights*, 429
U.S. at 268.  Because *Arlington Heights* set out a prospective framework for assessing claims of
discriminatory intent, and because a member of the Arlington Heights Village Board had been called to the
stand at trial, *see id.* at 270, the conditional "might" is best understood merely to suggest that such

production of legislative documents, which *Arlington Heights* does not address and which presents a lesser burden on legislators than participation in depositions and testimony at trial. *See, e.g.*, *Small v. Hunt*, 152 F.R.D. 509, 512-13 (E.D.N.C. 1994).[5]  Moreover, the Supreme Court has not addressed whether the dicta in *Arlington Heights* on which Defendants rely survived the subsequent decisions in *Gillock* and *Jaffee*.

Finally, Defendants fail to heed their own warning against overreliance on *Texas v. Holder*, *see* Defs. MTD Reply at 18-19 (ECF No. 108), in contending that discovery orders in that litigation should guide this Court's decision.  Defs. Opp. at 9.  The United States has not argued that the three-judge court "had insufficient information before it" to rule on Texas's assertion of a state legislative privilege.  *Id.*  Rather, the *Texas v. Holder* court repeatedly explained that federalism concerns regarding the application of Section 5 only to those jurisdictions identified in Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), had "influenced [its] resolution of several discovery disputes," including over legislative privilege. *Texas v. Holder*, 888 F. Supp. 2d 113, 119 (D.D.C. 2012) (three-judge court), *vacated*, 133 S. Ct.

---

testimony "might" occur in future cases as well.  It is the potential witness list that the Court deemed extraordinary, not a future court's decision to permit such a witness to testify.  Defendants imply that the Court meant to allow such testimony *only* in extraordinary instances, but the word *only* is absent from the text.  Moreover, Defendants' preferred construction renders the subsequent statement that "even then such testimony frequently will be barred by privilege" redundant.  *Id.* at 268.

[5]  In the event that the United States subsequently moves to compel legislative depositions, *see* Proposed Order at 2 (reserving right to move based on disclosed documents), in many cases there would be no compulsion regarding a legislator's decision to take the stand.  Defendants called legislators to testify in support of SB 14 in the United States District Court for the District of Columbia, and they have named seven legislators and three legislative aides in their initial disclosures.  *See* Defs. Initial Disclosures at 3-6 (ECF No. 162-2).  Thus, imposition of a broad legislative privilege would not prevent legislators from being "called to the stand at trial to testify concerning the purpose of the official action." *Arlington Heights*, 429 U.S. at 268.  Rather, it would allow Defendants to call legislators to testify concerning public statements while precluding effective cross-examination by Plaintiffs.  *See Powell v. Ridge*, 247 F.3d 520, 525 (3d Cir. 2001).

2886 (2013).[6]  Because Section 2 of the Voting Rights Act creates a uniform, nationwide bar on

intentional discrimination prohibited by the Fourteenth and Fifteenth Amendments and does not

mandate preclearance, no countervailing constitutional considerations arise in this case.[7]

Therefore, this Court should compel the production of documents that Defendants have withheld

based on assertions of legislative privilege.[8]

---

[6]  *See also id.* at 119; Order at 4-7, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. May 28, 2012) (ECF No. 154); Order at 4 n.2, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. June 5, 2012) (ECF No. 167).

[7]  Defendants suggest without citation that Section 2 of the Voting Rights Act imposes "well-recognized and constitutionally suspect burdens."  Defs. Opp. at 15-16 n.3.  Defendants' complaint rests with the Fourteenth and Fifteenth Amendments, not Section 2.  *See, e.g.*, *Rogers v. Lodge*, 458 U.S. 613, 617 (1982) (applying the same *Arlington Heights* standard to a constitutional voting rights claim that courts apply to a Section 2 intent claim).  Nor is there a constitutional foundation to any state legislative privilege.  *See Gillock*, 445 U.S. at 367.

[8]  Defendants' description of the treatment of legislative privilege claims in recent litigation concerning Texas's 2011 redistricting plans, Defs. Opp. at 8-10, is inaccurate.  Specifically, Defendants state that "DOJ has attempted to pierce the legislative privilege in all of its recent voting-rights disputes with Texas, but no court has ever ruled in its favor."  Opp Br. at 8.  This is simply not so.
      In *Perez v. Perry*, Texas moved for a blanket protective order barring legislative discovery, and the court denied the State's request, concluding that although federal common law recognizes "an evidentiary and testimonial privilege" for state legislators, any such privilege is "limited and qualified."  Order at 5, *Perez v. Perry*, No. 5:11-cv-128 (W.D. Tex. Aug. 1, 2011) (ECF No. 102) (Ex. 1).  Legislators did not invoke privilege in subsequent depositions and produced documents under seal.  Prior to trial, counsel for Texas represented to the Court that the State had contacted every legislator who was identified during depositions and that no such legislator had maintained a claim for legislative privilege.  *See* Trial Tr. at 901:7-21, *Perez v. Perry*, No. 5:11-cv-128 (W.D. Tex. Sept. 9, 2011) (Ex. 2).  Thus, the *Perez* Court was able to rely on legislative evidence in concluding that the Texas legislature "may have focused on race to an impermissible degree" when crafting the 2011 Texas House redistricting plan.  Op. at 6, *Perez v. Perry*, No. 5:11-cv-360 (W.D. Tex. Mar. 19, 2012) (three-judge court) (ECF No. 690) (*Veasey* ECF No. 162-7).
      In *Texas v. United States*, the court declined to recognize a state legislative privilege, concluding that "[t]here is no state legislative privilege identified in the Federal Rules of Evidence and the D.C. Circuit has never recognized one" under the common law.  *Texas v. United States*, 279 F.R.D. 24, 29 (D.D.C. 2012), *other part vacated*, 279 F.R.D. 176 (D.D.C. 2012); *see also* Order, *Texas v. United States*, No. 1:11-cv-1303 (D.D.C. Jan. 2, 2012) (ECF No. 129) (Ex. 3) (granting, in whole or in part, motions to compel).  Thus, the *Texas v. United States* court was similarly able to rely on emails between legislators and staff to conclude that Texas's 2011 congressional redistricting plan "was motivated, at least in part, by discriminatory intent."  *Texas v. United States* (*Texas II*), 887 F. Supp. 2d 133, 161 & n.32, 165, 207 (D.D.C. 2012) (three-judge court), *vacated*, 133 S. Ct. 2885 (2013).

II.     **THE ATTORNEY-CLIENT PRIVILEGE DOES NOT PROTECT THE DOCUMENTS SOUGHT BY THE UNITED STATES.**

Defendants do not contest the vast bulk of the United States' arguments concerning the attorney-client privilege. *See* Mot. to Modify at 12-16. This is not a "simple misunderstanding" resulting from Defendants' failure to produce accurate privilege logs. Def. Opp. at 21 & n.4. Rather, because Defendants asserted multiple privileges over numerous documents, the *Texas v. Holder* court had no need to reach many of the attorney-client privilege claims now before this Court. *See* Order at 12-14, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. June 5, 2012) (three-judge court) (ECF No. 167) (Ex. 4). *But see* Defs. Opp. at 9 (incorrectly asserting that the *Texas v. Holder* court "upheld the applicability of the . . . attorney-client privilege to the documents at issue"). Because these documents should not be withheld in this litigation based on any state legislative privilege, *see supra* Part I, this Court must reach the attorney-client privilege and should find that the privilege does not attach to documents where an attorney is merely carbon copied, Mot. to Compel at 12-13, to communications between multiple legislative offices, *id.* at 13-14, and to communications concerning policy or politics, *id.* at 15.

Defendants' defense of the attorney-client privilege over communications between legislators and the Texas Legislative Council (TLC) largely presumes the existence of an attorney-client relationship. There is no question that TLC attorneys have a duty of confidentiality to state legislators, as do non-attorneys employed by the TLC and other legislative staff. *See* Texas House Rule 2, explanatory note (quoted in Defs. Opp. at 19); *see also* Tex. Gov't Code § 323.017. However, mere intent that communications with a licensed attorney—who may be a spouse, friend, or colleague—remain confidential is insufficient to

establish the near-absolute protection of the attorney-client privilege. *See, e.g.*, *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975) (setting out elements).

The United States has never argued that TLC attorneys have acted unethically by assisting legislators with conflicting interests.[9]  Rather, the United Sates has consistently argued that no attorney-client relationship exists between each TLC attorney and each of the 186 members of the Texas legislature.  Mot. to Compel at 14.  "The Texas Government Code expresses no such relationship or expectation . . . and the habits of the years do not transform 'confidentiality' to avoid public inquiry into 'attorney-client privilege' when demanded as part of litigation."  *Texas v. United States*, 279 F.R.D. 24, 34 & n.13 (D.D.C. 2012), *vacated in part*, 279 F.R.D. 176 (D.D.C. 2012).[10]  "Generally, in the absence of evidence that the attorney knew a party had assumed he or she was representing it in a matter, the attorney has no affirmative duty to inform the party that he is not its attorney."  *SMWNPF Holdings, Inc. v. Devore*, 165 F.3d 360, 365 (5th Cir. 1999) (applying Texas law).  On the other hand, attorneys may represent clients with conflicting interests upon receipt of informed consent.  *See id.*  However, Defendants have offered no proof that legislators have given specific informed consent to enter attorney-client relationships attorneys who hold conflicting fiduciary duties to other legislators.

Even if attorneys employed by the TLC may maintain an attorney-client relationship with each and every Texas legislator, despite conflicting interests, communications with attorneys employed outside of the Legal Division are not within the scope of the attorney-client privilege.

---

[9]  Defendants' argument that the United States' position suggests unethical conduct by attorneys for the Judiciary Committee of the U.S. Senate is, at best, unclear.  *See* Defs. Opp. at 19-20.  Senate committee staff are appointed to assist individual members of a committee.  *See* Sen. R. XXVII, § 1.

[10]  The *Texas v. United States* court partially vacated this portion of its decision only after Texas agreed to produce the documents at issue and the United States declined to object to vacatur.  *See Texas v. United States*, 279 F.R.D. 176 (D.D.C. 2012).

Deborah Fulton, director of the Legal Division of the TLC, admits that numerous documents over which Defendants assert an attorney-client privilege concern communications between legislative offices and the Research Division of the TLC.  Fulton Decl. ¶ 4 (ECF No. 183-2). Ms. Fulton describes communications between the Research Division and legislators as "informational in nature," in stark contrast to communications with the Legal Division, which she describes as providing "professional, nonpartisan legal services."  *Id.* ¶¶ 3-4.  Because communications with staff of the Research Division, including staff who are attorneys, are not "for the purpose of obtaining legal advice," *King v. Univ. Healthcare Sys., LC*, 645 F.3d 713, 720 (5th Cir. 2011), they are not subject to the attorney-client privilege and must be produced.

### III.   DEFENDANTS HAVE NOT DEFENDED THEIR OBJECTION UNDER SECTION 32.017 OF THE TEXAS GOVERNMENT CODE.

The United States explained in its opening brief that Section 323.017 of the Texas Government Code does not create a privilege from discovery in a federal court hearing a federal statutory claim.  *See* Mot. to Compel at 16-17.  Defendants have not attempted to defend their prior objections to requests for documents and ESI "protected from disclosure by Texas Government Code § 323.017."  Def. Resp. & Obj. to U.S. 1st RFPs (ECF No. 162-5); *see also* Fed. R. Civ. P. 26(g)(1)(B)(i) (requiring certification that objections are non-frivolous). Therefore, this Court should order the production of any documents Defendants might otherwise withhold pursuant to Section 323.017.

### IV.   DEFENDANTS MUST UNDERTAKE A REASONABLE EFFORT TO GATHER AND PRODUCE DOCUMENTS AND ESI IN THEIR POSSESSION.

Defendants are in possession of a vast trove of legislative documents.  Some of these documents have been collected by counsel for Defendants and cataloged in thousands of pages of privilege logs.  *See* Rev. Priv. Log (May 11, 2012) (ECF No. 162-3); Supp. Priv. Log (May 21,

2012) (ECF No. 162-4); TLC Priv. Log (ECF No. 162-13).  Others are contained in email servers

maintained by the TLC or in the possession of the Texas State Library and Archives Commission

(TSLAC).  *See* Heining Decl. ¶¶ 5-7 (ECF No. 183-1).  Although many of these documents are

likely responsive to the United States' November 26, 2013, request for production of documents,

Defendants have not begun to search either TLC servers or state archives.  Rather, Defendants

assert that the United States must serve subpoenas on individual state legislators in order to

obtain any of the legislative documents at issue.  Defs. Opp. at 3-4, 21.

       The United States is not required to serve third-party subpoenas when requested

documents are in the possession, custody, or control of a party to this litigation.[11]  Under Federal

Rule of Civil Procedure 34(a)(1), a party may serve on any other party a request to produce

documents or electronically stored information in the responding party's "possession, custody or

control."  Defendants have conceded that they "ha[ve] in [their] possession but did not produce

documents . . . identified in privilege logs incorporated by reference" in their initial disclosures.

Defs. Initial Disclosures at 33 (ECF No. 162-2).  Defendants must produce these documents.

       Subpoenas are also not necessary in order to obtain documents in the possession of state

agencies such as the TLC and the TSLAC.  "The phrase 'possession, custody or control' is in the

disjunctive and only one of the numerated requirements need be met."  *E.g.*, *Soto v. City of*

---

[11]  The United States disagrees with the State's contention that the Texas legislature is not a
component of the State of Texas for purposes of litigation asserting that a statewide enactment violates
the Voting Rights Act, *see* Def. Opp. at 3-4, but this issue is rendered moot by Defendants' possession of
the documents at issue.  Notably, the State of Alabama was not a party to *Alabama Education Association
v. Bentley*, No. CV-11-S-761, 2013 WL 124306, at *12 (N.D. Ala. 2013), which addressed subpoenas
served on legislators because only executive branch officials had been named as defendants.  *See id.* at
*10-11.  "[T]he State," Defs. Opp. at 4, was also not a party to *Karcher v. May*, 484 U.S. 72 (1987).  The
only named defendants were "the New Jersey Department of Education, its Commissioner, and two
township boards of education."  *Karcher*, 484 U.S. at 75.  Finally, *Florida v. United States*, 886 F. Supp.
2d 1301 (N.D. Fla. 2012), did not address whether the state legislature is a component of the State of
Florida, let alone quash subpoenas on that basis that it is not.

*Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995); *see also* 8B Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2208.  Regardless of whether legislative offices are the legal custodian of their own records, Heining Decl. ¶ 4, the TLC possesses its own servers and has the practical ability to obtain the documents at issue.  *See Shell Global Solutions Inc v. RMS Engineering, Inc.*, No. 4:09-cv-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011); *cf. United States v. Miller*, 425 U.S. 435, 443 (1976) (holding that no Fourth Amendment search occurs when the government obtains information conveyed in confidence to third parties from those third parties).

The mere fact that legislators may maintain control of some of the same legislative documents subject to the United States' requests for production does not absolve Defendants of their responsibility to produce those documents, particularly as Defendants maintain that those legislators are non-parties.  "It is easier, and less costly, to move to compel a party to produce discoverable documents than to bring a motion to compel against a non-party in another jurisdiction."  *Lambert v. Liberty Mut. Fire Ins. Co.*, No. 13-23, 2013 WL 3864314, at *1 (M.D. La. July 24, 2013).  In fact, a subpoena to a third party may in some cases be quashed on the grounds that the documents at issue are obtainable from a party to the litigation.  *See Xcaliber Int'l Ltd. v. Ieyoub*, No. 04-69, 2006 WL 3412265, at *4 (E.D. La. Nov. 27, 2006).[12]

Finally, Defendants' assertion that they are technically incapable of searching email servers, *see* Def. Opp. at 21, is an unreasonable claim from a large organization in 2014.  Searches of email servers are the standard and routine method of conducting electronic

---

[12]  Even if this Court determines that issuance of subpoenas or an amended complaint is necessary to obtain legislative documents, the Court should resolve the privilege claims at issue in this motion.  The Office of the Texas Attorney General indicates it represents individual legislators in this matter as well, and resolution of issues regarding documents is necessary in order for depositions to proceed.

discovery.  *See, e.g.*, *Premier Dealer Servs., Inc. v. Duhon*, No. 12-1498, 2013 WL 5966123, at

*1 (E.D. La. Nov. 8, 2013) (describing order compelling a party to hire an IT consultant to

search servers for responsive emails); *Zubulake v. UBS Warburg LLC* (*Zubulake I*), 217 F.R.D.

309, 318 (S.D.N.Y. 2003) (describing "active, online data" as the most accessible form of data

storage).[13]  Microsoft Exchange, the software used by the TLC to maintain its email servers,

includes a component called In Place eDiscovery, which allows for a simultaneous search of all

mailboxes in a particularly organization or of multiple specific mailboxes, including primary and

archive mailboxes.  *See In-Place eDiscovery*, Microsoft TechNet Library, *at*

http://technet.microsoft.com/en-us/library/dd298021%28v=exchg.150%29.aspx.[14]  Thus, there is

no need for "three individuals to sequentially search 250 legislators' emails," Def. Opp. at 21.

Moreover, the parties have agreed to search terms to limit relevancy concerns.  Thus,

Defendants' claims regarding accessibility and efficiency are not credible.

## V.    CONCLUSION

For the reasons set out above, the United States respectfully requests that this Court grant

the United States' motion to compel the production of legislative documents.

---

[13]  Inversely, is well established that "it is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information." *Zubulake v. UBS Warburg LLC* (*Zubulake IV*), 229 F.R.D. 422, 432 (S.D.N.Y. 2004). Centralized and automated search processes are necessary to demonstrate the reasonableness of a party's discovery efforts under Rule 26(b) and the quality and consistency of the production and to overcome the inherent weaknesses of a manual search. *See* The Sedona Conference, *Commentary on Achieving Quality in the E-Discovery Process*, at 14-22 (2009); The Sedona Conference, *Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery*, 2007 Sedona Conf. J. 189, 199 (2007).

[14] In the prior version of Microsoft Exchange, this feature was called Multi-Mailbox Search.  *See Understanding Multi-Mailbox Search*, Microsoft TechNet Library, *at* http://technet.microsoft.com/en-us/library/dd335072%28v=exchg.141%29.aspx.  Mr. Heining's hearsay contention that Microsoft has disclaimed the viability of this feature, *see* Heining Decl. ¶ 7, is not credible, particularly without context.

Date:  February 28, 2014

Respectfully submitted,

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2014, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

John B. Scott
John Reed Clay, Jr.
Gregory David Whitley
Jonathan F. Mitchell
Sean Flammer
Stephen Ronald Keister
Office of the Texas Attorney General
john.scott@texasattorneygeneral.gov
reed.clay@texasattorneygeneral.gov
david.whitley@texasattorneygeneral.gov
jonathan.mitchell@texasattorneygeneral.gov
sean.flammer@texasattorneygeneral.gov
ronny.keister@texasattorneygeneral.gov

*Counsel for Defendants*

Chad W. Dunn
Kembel Scott Brazil
Brazil & Dunn
chad@bradzilanddunn.com
scott@bazilanddunn.com

J. Gerald Hebert
Emma Simson
Campaign Legal Center
ghebert@campaignlegalcenter.org
esimson@campaignlegalcenter.org

Neil G. Baron
Law Offices of Neil G. Baron
neil@ngbaronlaw.com

Armand Derfner
Derfner, Altman, & Wilborn
aderfner@dawlaw.com

Luiz Roberto Vera, Jr.
lrvlaw@sbcglobal.net

*Counsel for Veasey Plaintiffs*

Christina Swarns
Ryan P. Haygood
Natasha M. Korgaonkar
Leah C. Aden
Deuel Ross
NAACP Legal Defense and Educational
    Fund, Inc.
cswarns@naacpldf.org
rhaygood@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
Gerald J. Sinzdak
Lynn Eisenberg
M. Hasan Ali
Richard F. Shordt
WilmerHale LLP
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
Gerard.sinzdak@wilmerhale.com
Lynn.eisenberg@wilmerhale.com
hasan.ali@wilmerhale.com
richard.shordt@wilmerhale.com

*Counsel for Texas League of Young Voters*
*Plaintiff-Intervenors*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
ezra.rosenberg@dechert.com
amy.rudd@dechert.com

Wendy Weiser
Jennifer Clark
Myrna Pérez
Vishal Agraharkar
Brennan Center for Justice at NYU School of
    Law
wendy.weiser@nyu.edu
jenniferl.clark@nyu.edu
myrna.perez@nyu.edu
vishal.argraharkar@nyu.edu

Mark A. Posner
Sonia Kaur Gill
Erandi Zamora
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
sgill@lawyerscommittee.org
ezamora@lawyerscommittee.org

*Counsel for Texas State Conference of
NAACP Branches Plaintiffs*

Jose Garza
Marinda van Dalen
Robert W. Doggett
Peter McGraw
Texas Rio Grande Legal Aid, Inc.
jgarza@trla.org
mvandalen@trla.org
rdoggett@trla.org
pmcgraw@trla.org

*Counsel for Ortiz Plaintiffs*

Rolando L. Rios
Law Offices of Rolando L. Rios
rrios@rolandorioslaw.com

*Counsel for Texas Association of Hispanic
County Judges and County Commissioners
Plaintiff-Intervenors*

<u>*/s/ Daniel J. Freeman*</u>
Daniel J. Freeman
Voting Section
Civil Rights Division
U.S. Department of Justice
daniel.freeman@usdoj.gov

2