# EXHIBIT 4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF TEXAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 12-128 |
|  | ) (DST, RMC, RLW) |
| ERIC H. HOLDER, JR., *et al.* | ) |
| Defendants. | ) ) ) |

## ORDER ON MOTIONS TO COMPEL

The Attorney General and the Defendant-Intervenors move to compel the production of numerous documents and deposition testimony withheld by Texas on the basis of legislative and attorney-client privilege. The Defendants argue that 1) the legislative privilege should yield to the important federal interest in enforcing the Voting Rights Act ("VRA"), 42 U.S.C. § 1973c; 2) even if the state legislative privilege does not yield in all VRA cases, it should nonetheless be abrogated here give the "extraordinary" procedural irregularities associated with passing S.B. 14; 3) even if the state legislative privilege applies in this case, Texas' privilege assertions extend too far—even beyond the scope of the protections provided federal legislators under the Constitution's Speech or Debate Clause; and 4) Texas has failed to demonstrate that the attorney-client privilege properly shields a number of withheld documents. The Court will grant in part and deny in part the Defendants' motions.

### I. LEGISLATIVE PRIVILEGE STANDARD

In a federal action based upon federal question jurisdiction, federal privilege law controls. *See, e.g., In re Sealed Case*, 381 F.3d 1205, 1211 (D.C. Cir. 2004). Federal Rule of

1

Evidence 501 provides the federal standard for privileges: "The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege." Fed. R. Evid. 501. Federal common law has, for many years, recognized a legislative privilege. *See, e.g., Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) ("The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries."); *Barr v. Mateo*, 360 U.S. 564, 579 (1959) ("[A]bsolute legislative privilege dates back to at least 1399") (Warren, C.J., dissenting). This legislative privilege "was deemed so essential for representatives of the people that it was written into the Articles of Confederation and later into the Constitution [as the Speech or Debate Clause]." *Tenney*, 341 U.S. at 372.

Like the Constitution's Speech or Debate Clause, the legislative privilege provides a legislator not only immunity from suit, *see id.* at 372-75; *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 731-33 (1980); *Lake Country Estates, Inc. v. Tahoe Reg. Planning Agency*, 440 U.S. 391, 403-404 (1979), but also a testimonial and evidentiary privilege, *see Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977).[1] Unlike the Speech or Debate Clause, however, state legislative privilege cannot be

---

[1] *See also Jeff D. v. Otter*, 643 F.3d 278, 288-90 (9th Cir. 2011) (upholding protective order preventing the deposition of a non-party legislative budget analysis based on legislative privilege); *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 180-81 (4th Cir. 2011) ("Legislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes."); *Butnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) (local legislators are entitled to immunity and testimonial privilege for legislative acts); *Comm. for a Fair and Balanced Map v. Illinois State Bd. of Elections*, 2011 WL 4837508, at *11 (N.D. Ill. 2011) (denying motion to compel seeking "(1) information concerning the motives, objectives, plans, reports and/or procedures used by lawmakers to draw the 2011 Map; [and] (2) information concerning the identities of persons who participated in decisions regarding the 2011 Map" but holding that legislative privilege did not shield "objective facts" lawmakers relied on); *Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006) ("local legislators are protected by the testimonial privilege from having to testify about actions taken in the sphere of legitimate legislative activity"); *Rodriguez*

used to suppress evidence of legislative acts in a criminal prosecution, *United States v. Gillock*, 445 U.S. 360 (1980), and state and local legislators may "[i]n some extraordinary instances . . . be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege," *Arlington Heights*, 429 U.S. at 268. Additionally, because the state legislative privilege rests solely on federal common law

---

*v. Pataki*, 280 F. Supp. 2d 89, 103 (S.D.N.Y. 2003)( denying motion to compel "to the extent that the plaintiffs seek information concerning the actual deliberations of the Legislature-or individual legislators-which took place outside [a non-legislative advisory group], or after the proposed redistricting plan reached the floor of the Legislature . . . ."); *M Sec. and Invs., Inc. v. Miami-Dade Cnty., Fla.*, 2001 WL 1685515, at *2 (S.D. Fla. 2001) (legislative immunity protects against testimonial discovery); *Cano v. Davis*, 193 F. Supp. 2d 1177 (C.D. Cal. 2002) (granting protective order precluding depositions of state legislators in VRA redistricting case); *In re Perry*, 60 S.W.3d 857, 860 (Tex. 2001) ("Because the immunity doctrine serves important public purposes, courts have affirmed that the doctrine generally shields legislative actors not only from liability, but also from being called to testify about their legislative activities); *Miles-Un-Ltd., Inc. v. Town of New Shoreham*, 917 F. Supp. 91, 98 (D. N.H. 1996) ("The rationale for affording state, regional, and local legislators a testimonial privilege is as compelling as the rationale for providing immunity from civil liability."); *2BD Assocs. Ltd. P'ship. v. Cnty. Comm'rs for Queen Anne's Cnty.*, 896 F. Supp. 528, 531 (D. Md. 1995) ("[T]he doctrine [of legislative immunity] is twofold; it protects legislators from civil liability, and it also functions as an evidentiary and testimonial privilege. . . ."); *Marylanders for Fair Representation, Inc. v. Schafer*, 144 F.R.D. 292, 297 (D. Md. 1992) ("absolute legislative immunity" includes "an evidentiary and testimonial privilege") (citing *Schlitz v. Virginia*, 854 F.2d 43 (4th Cir. 1988), *rev'd on other grounds Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995)); *Florida v. United States*, No. 12-mc-00003 (N.D. Fla 2012) (denying motion to compel testimony and documents in VRA case); *cf. MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) ("A litigant does not have to name members or their staffs as parties to a suit in order to distract them from their legislative work. Discovery procedures can prove just as intrusive."); *but see In re Grand Jury*, 821 F.2d 946, 958 (3d Cir. 1987) ("Although we reject a qualified speech or debate privilege, our discussion does not preclude the possibility of a more narrowly tailored privilege for confidential deliberative communications" similar in scope to the deliberative process privilege); *Baldus v. Members of the Wis. Gov't Accountability Bd.*, No. 11-cv-562, 2011 WL 6122542 (E.D. Wis. 2011) (finding, without discussing *Tenney* or *Arlington Heights*, that the legislative privilege yielded to important interest of VRA); *East End Ventures, LLC v. Inc. Village of Sag Harbor*, 2011 WL 6337708 (E.D.N.Y. Dec. 19, 2011) (essentially equating legislative privilege with deliberative process privilege and finding the privilege inapplicable because the decision-making process was the subject of the litigation).

3

(while the privilege afforded federal legislators is enshrined in the Constitution), there may be additional circumstances where "reason and experience," Fed R. Evid. 501, dictate a narrower privilege for state legislators than that enjoyed by federal legislators. While this Court cites cases concerning the Speech or Debate Clause, it recognizes that their principles may be distinguishable in other circumstances.[2]

## II. LEGISLATIVE PRIVILEGE ANALYSIS

This Court has already found that the state legislative privilege is not abrogated in all VRA actions, and thus the Court rejects the Defendants' first argument. *See* Order, [Dkt. 84]. Similarly, the parties have already filed extensive briefing on whether there are "extraordinary instances" in this case that would support abrogating the legislative privilege. *See* [Dkts. 69, 79]. The current arguments raised by the defendants, focusing mainly on the irregular procedures used in adopting S.B. 14, largely reiterate the arguments we previously found insufficient and therefore fail to establish extraordinary instances. Accordingly, the Court need only address the Attorney General's final argument—that with respect to five categories of documents and testimony Texas has applied the state legislative privilege even broader than that provided for under the Speech or Debate Clause.

### A. Documents from Legislators Who Have Waived the Privilege

Neither party disputes that documents and testimonial evidence are available from legislators who have waived the legislative privilege. The parties appear to dispute which legislators have or have not waived the privilege. Although not entirely clear in the briefs, the

---

[2] In determining where to draw the contours of the legislative privilege in this case, the Court also recognizes that Section 5 imposes "substantial federalism costs," and the Court should attempt, where possible, to minimize "federal intrusion into sensitive areas of state and local policymaking." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 202 (2009). As such, the applicable contours of the state legislative privilege may be drawn differently in a Section 5 case than in other contexts.

4

dispute seems to center on a distinction between "formally" waiving a privilege and failing "formally" to assert one.

A party claiming the privilege bears the burden of establishing with reasonable certainty that the privilege applies. *In re Sealed Case*, 877 F.2d 976, 989 (D.C. Cir. 1989). Texas accepted deposition notices on behalf of individual legislators, as well as requests for discovery from state agencies. *See, e.g.* [Dkt. 89]. Accordingly, to the extent Texas is withholding the production of documents based on a legislative privilege, Texas must ensure that the legislator has, in fact, asserted the privilege. The Defendants need not obtain "formal" waivers from each legislator identified in the privilege logs. Accordingly, Texas is ordered to produce all documents based upon legislative privilege for any legislator who has not already asserted the privilege; failure to assert a privilege by now constitutes waiver.

### B. Communications with Constituents, Lobbyists, or Interest Groups

No legislative privilege, whether based on common law or the Speech or Debate Clause, covers every act a legislator performs. *See, e.g., United States v. Gravel*, 408 U.S. 606, 625 (1972) (Legislative privilege does not "extend[] beyond the legislative sphere. That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature.") Only conduct that is "part of, not merely related to, the due functioning of the legislative process [is] protected by the Speech or Debate Clause." *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 12 (D.C. Cir. 2006) (en banc) (internal quotation marks omitted). Accordingly, although "it may be integral to a Member's legislative goals . . . to send newsletters to constituents or deliver speeches outside of Congress to generate support for prospective legislation . . . such acts are 'political,' not 'legislative,' and therefore not protected

5

by the Speech or Debate Clause." *Id.* (quoting *United States v. Brewster*, 408 U.S. 501, 508 (1972)).

Although the line between "political" and "legislative" acts is not always easily drawn, the Court holds that communications between legislators and constituents, lobbyists, and interest groups are not entitled to protection under a legislative privilege. Accordingly, Texas must produce any and all such communications. Although the communications must be produced, questioning a legislator or staff about the communication, to the extent it would require the legislator to reveal his subjective motivations about SB 14 or any legislative activity with respect to the law, are covered by the privilege. *See, e.g., Otter*, 643 F.3d at 288-90; *Butnick*, 76 F.3d at 613*; Tenney*, 341 U.S. at 377("[t]he claim of an unworthy purpose does not destroy the privilege."); *Jewish War Veterans of the United States of America, Inc.*, 506 F. Supp. 2d 30, 47 (D.D.C. 2007) ("Inquiry into individual Members' 'motivations' for engaging in [legislative] acts is prohibited, even if those motivations are 'unworthy' or improper.")

### C. Public Statements and Materials

The Attorney General is correct that public statements and press releases by legislators are not protected by a legislative privilege because those acts are not essentially "legislative." *See, e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 126-27 (1979); *Doe v. McMillian*, 412 U.S. 306, 314-16 (1973); *McSurley v. McClellan*, 553 F.2d 1277, 1285-86 (D.C. Cir. 1976) (en banc). The Attorney General is incorrect, however, that questioning a legislator about the statements cannot be privileged. For instance, verifying that a public speech was given, where it was given, and even why it was given are all permissible questions that do not involve legislative activity. Questions, however, that seek to uncover (1) a legislator's motives with respect to a bill, or (2) legislative acts taken with respect to a bill (*e.g.,* investigations done

6

prior to proposing or supporting the bill, communications with other legislators or staff about the bill, bill drafting, etc.) are impermissible. *See, e.g., United States v. Helstoski*, 442 U.S. 477, 489 (Speech or Debate "Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.") (internal quotation marks omitted); *Otter*, 643 F.3d at 288-90; *Butnick*, 76 F.3d at 613*; Jewish War Veterans*, 506 F. Supp. 2d at 47.

It is a more difficult question to determine whether, as the Attorney General alleges, Texas must produce public information contained in a legislator's personal file. There is no dispute that the public information is not privileged. Texas, however, argues that disclosing public information from a legislator's file impermissibly reveals the legislator's thought process and what the legislator did and did not consider with respect to pending litigation. Texas' argument finds support in *Brown & Williamson Tobacco Corp v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) where the D.C. Circuit refused to enforce a subpoena seeking the production and inspection of documents Congress was considering with respect to a pending investigation. The court rejected "the proposition that the testimonial immunity of the Speech or Debate Clause only applies when Members or their aides are personally questioned." *Brown & Williamson*, 62 F.3d at 420. Instead, the Court stated that:

> Documentary evidence can certainly be as revealing as oral communications—even if only indirectly when, as here, the documents in question . . . do not detail specific congressional actions. But indications as to what Congress is looking at provide clues as to what Congress is doing, or might be about to do—and this is true whether or not the documents are sought for the purpose of inquiring into . . . legislative conduct or to advance some other goals . . . .

7

*Id.* Likewise, the fact that certain public or otherwise non-privileged information was considered by a Texas legislator in connection with legitimate legislative activities (*e.g.*, drafting, debating, or information gathering with respect to S.B. 14) is privileged.

This, however, does not mean that the Defendants have no access to the information or that a legislator can shield otherwise non-privileged information merely by placing it in his files. To the extent information is publicly available, Defendants may access the information just as the legislator did: from the public realm. Moreover, to the extent that Defendants' request for public information would reveal nothing about a legislator's deliberations or legislative activities, Texas must produce it. For example, although the privilege would cover a request for news articles on Voter ID contained in a legislator's files or referenced in his staff's emails (because a response to such a request would reveal what information the legislator considered in deliberating Voter ID legislation), it would not cover a request for copies of all press releases on voter ID legislation issued by the legislator. *Cf. ECDC Envtl., L.C. v. New York Marine & Gen. Ins. Co.*, 1998 U.S. Dist. LEXIS 8808 at * 44 (S.D.N.Y. 1998) ("If a document constitutes protected work product, the party possessing the document generally need not produce it—even if the document contains only factual information. However . . . the party seeking those facts may obtain them through other means of discovery . . . ."); *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 254 n.28 (D.C. Cir. 1977) ("[T]he deliberative process privilege directly protects advice and opinions and does not permit the nondisclosure of underlying facts unless they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process.")

8

### D. Communications within Executive Agencies

"[A] Member's gathering of information beyond the formal investigative setting is protected by the Speech or Debate Clause so long as the information is acquired in connection with or in aid of activity that qualifies as 'legislative' in nature." *Jewish War Veterans*, 506 F. Supp. 2d at 57. *See also McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976) (en banc) ("The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege . . . .") As such, a legislator's request for information to a State agency regarding pending legislation is subject to the legislative privilege and need not be produced. Similarly, agency responses and intra-agency communications regarding a legislator's request, including any factual information contained therein, need not be produced if production would necessarily reveal which legislator requested and received the information—for instance, if Defendant's request for production specifically sought communications between an agency and a particular legislator. However, to the extent that factual information is relevant to a discovery request seeking information in the agency's possession without specifying the legislator who requested or received the information (*i.e.*, a request for information possessed by DPS regarding Texas residents without driver's licenses, as opposed to a request for communications between DPS and Senator Fraser regarding Texas residents without driver's licenses), that information must be produced, with redactions where necessary to shield any reference to the individual legislator or staff who received or requested the information.[3]

---

[3] To the extent this ruling conflicts with the Order issued on May 28, 2012 [Dkt. 154], this ruling controls.

9

### E. Post-Enactment Communications

The Attorney General seeks to compel the production of documents and deposition testimony regarding communications that post-date the enactment of S.B. 14. For instance, Speaker of the House Joe Straus has withheld hundreds of pages of email communications among himself and/or his staff in preparation for speeches and other events. These documents not only post-date S.B. 14's enactment, but the speeches and events are "political" in nature. *See Jewish War Veterans*, 506 F. Supp. 2d at 53-54. Because the speeches and events are "political" in nature, "inter- and intra-office communications regarding" the speeches and events are not privileged and must be produced. *Id.* at 52. Similar post-enactment "confidential communications" involving a speech are also found in Representative Patricia Harless's files (TX_0007045-0007046). In addition to these documents, there are others that are not legislative activities with respect to enacting S.B. 14 (*e.g.*, "Copy of 82nd Legislature Wrap-Up presentation," communication between DOJ and SoS regarding preclearance dated seven months after S.B. 14 was enacted). Accordingly, Texas shall produce each of the documents identified by the Attorney General as post-enactment materials on page 4 of the Attorney General's Contested Document Index [Dkt. 136], Ex. 13.

Again, although the documents must be produced, that does not give Defendants license to inquire about otherwise privileged material. Questions about a post-enactment statement or documents that call for a response about legislative acts the legislator took prior to the enactment of S.B. 14 and prior Voter-ID bills and questions regarding the motivations of the legislator with respect to those bills are privileged.

### F. Depositions

With respect to deposition testimony, this Court has already ordered that foundational privilege questions are proper, as are questions regarding overall legislative purpose (as opposed to an individual legislator's motive with respect to the bill). *See* Order [Dkt. 122]. General questions about legislative procedure are also beyond the scope of the privilege. For instance, a general question about the purpose of the legislature's two-thirds rule would not be privileged, nor would general questions about the effect of a governor declaring that a bill is emergency legislation.[4] Questions, however, that seek evidence regarding a legislator's motivations with respect to a bill (*e.g.*, why a legislator voted a particular way, why a legislator supported or opposed different amendments, why a bill sponsor included different language in various Voter-ID bills, what factual information a legislator did or did not consider in supporting or opposing a bill, etc.) and questions about legislative acts legislators engaged in with respect to a bill (*e.g.*, voting, drafting, debating, information gathering, etc.) are properly subject to a privilege objection.

### III. ATTORNEY-CLIENT PRIVILEGE

Texas bears the burden of demonstrating that the attorney-client privilege applies to the contested documents. *See, e.g., In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998). To meet its burden, Texas must show:

---

[4] In this regard, Texas correctly allowed Senator Troy Fraser to answer questions regarding the general purpose of the two-thirds rule. *See* Def-Int Mot. to Compel [Dkt 134] at 12. Senator Fraser, however, claimed there was "no purpose for the two-thirds rule" and later stated that "[t]here's no such thing as a two-thirds rule." *See id.* at 12-13. Senator Fraser's answers were contradictory and obstructionist. As a result, he is ordered to re-sit for a deposition and is cautioned that further non-responsive answers will be subject to sanctions. Senator Fraser also must answer questions about the effects of a governor designating a bill as emergency legislation (although he need not answer questions regarding how and why SB 14 was designated as emergency legislation), and whether he was aware of any conversations regarding the timing of consideration of S.B. 14 (although he need not reveal the substance of those conversations).

11

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). Additionally, with respect to communications from an attorney to a client, Texas "must demonstrate with reasonable certainty that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." *Id.* at 99 (citations omitted).

The Attorney General contends that Texas has incorrectly asserted the attorney-client privilege over a number of documents. Specifically, the Attorney General argues that (1) the privilege log is insufficient to determine the propriety of the assertion of privilege over some documents; (2) some withheld documents do not implicate confidential client information; and (3) some withheld documents (and testimony) involve policy advice rather than legal advice.[5]

First, the Attorney General complains that the privilege log is insufficient to determine the propriety of the attorney-client privilege because in some cases the documents' source or recipient(s) is not listed. With respect to the documents authored by Don Clemmer and Clete Buckaloo, the privilege log states that the documents are "Confidential communication[s]

---

[5] The Court will not address the Attorney General's attorney-client privilege arguments over documents held by the Governor and the Texas Legislative Council in this Order. With respect to the Governor's Office, the Governor has asserted a deliberative process privilege over each of the documents at issue in these motions for which the Attorney General argues the attorney-client privilege is inappropriate. The Court need not determine the propriety of the attorney-client privilege unless it holds the deliberative process privilege is inapplicable. Additionally, Texas has produced an augmented privilege log with respect to the Texas Legislative Council. The Court will rule on Texas' claim for legislative privilege and attorney-client privilege with respect to those documents, as well as Texas' deliberative process privilege claim over the Governor's Office documents, in short order.

12

among Secretary of State and Office of the Attorney General of Texas made for the purpose of giving or seeking legal advice." The Court finds that the documents are sufficiently described to enable the Attorney General "to assess the claim [of privilege]," Fed. R. Civ. P. 26(b)(5)(A)(ii) and will not, based on "inadequate information" alone, compel the production of these communications. Additionally, with respect to the contested Office of the Attorney General and Secretary of State documents, the documents are withheld on the basis of *both* attorney-client privilege *and* work product privilege. Even if the Court were to find that Texas failed to meet its burden in establishing an attorney-client privilege, the Attorney General does not, in its motion to compel, challenge the propriety of the work product privilege. As such, the Court will not order the production of those documents.

Second, the Attorney General argues that Texas has failed to demonstrate that many of the withheld documents are based on confidential information. With respect to the following documents, Texas has failed meet its burden demonstrating that any communication from a lawyer to a client rested at least in part on a client's confidential disclosure: TX_00018852-18854; TX_00027426-27429.[6] Accordingly, the Court will order the production of those documents.

Third, the Attorney General contends that four categories of documents (documents from Senator Fraser, Speaker Strauss, Senator Tommy Williams, and Lt. Gov. David Dewhurst) contain policy advice rather than legal advice and therefore the attorney-client privilege is inapplicable. Like many of the other documents discussed, most of these documents

---

[6] The Attorney General complains that Texas has failed to establish the applicability of the attorney-client privilege over several documents for which Texas has also asserted one or more additional privileges (*e.g.,* TX_00056282; TX_00011948-11951). To the extent the Attorney General is not also contesting the propriety of the additional privilege(s) the Court need not analyze whether Texas has established that the attorney's response was based on confidential information from the client.

13

are withheld under multiple privileges (*e.g.*, attorney-client and legislative). Because the Court finds that the legislative privilege properly applies to Speaker Straus and Senator Williams' personal files regarding S.B. 14, the Court need not address the attorney-client privilege asserted with respect to these documents.

There are two sets of documents, however, not covered by the legislative privilege. First, there are contested documents from the Lt. Governor's office which this Court has already ordered Texas to produce. *See* Order [Dkt. 154] at 9. The second set of documents contains constituent communications and emails between John Williams (an attorney with Baker Botts) and Janice McCoy, Senator Fraser's chief of staff (TX_00009917-9968). As discussed *supra* the constituent communications and responses must be produced. With respect to the email correspondence between Ms. McCoy and Mr. Williams, Texas claims that the correspondence "was for the purpose of providing legal advice on Voter ID." Mot to Compel [Dkt. 136], Ex. 9 at 106. To the extent the correspondence is "legal" advice (as claimed) and not "policy" advice (as the Attorney General suggests) it is properly withheld. Texas shall review the emails and ensure that the advice is, in fact, legal. To the extent there is any policy advice in the communications, Texas shall redact the legal advice and produce the policy advice.[7]

Accordingly it is hereby

**ORDERED** that the Attorney General's Motion to Compel [Dkt. 136] and the Defendant-Intervenors' Motion to Compel [Dkt. 134] are **GRANTED** in part and **DENIED** in part; and it is

---

[7] Although the Court is unaware of facts that would establish an attorney-client relationship between Baker Botts and Senator Fraser, Defendants have not challenged Texas' assertion of attorney-client privilege on this ground.

14

**FURTHER ORDERED** that Texas shall, by no later than June 6, 2012, produce all documents withheld on the basis of legislative privilege for any legislator who has not already asserted legislative privilege; and it is

**FURTHER ORDERED** that Texas shall, by no later than June 6, 2012, produce all constituent, lobbyist, and interest group communications and legislator responses; and it is

**FURTHER ORDERED** that Texas shall, by no later than June 6, 2012, produce all documents identified by the Attorney General as post-enactment materials on page 4 of the Attorney General's Contested Document Index [Dkt. 136], Ex. 13; and it is

**FURTHER ORDERED** that Texas shall, by no later than June 6, 2012, review the email correspondence between Ms. McCoy and Mr. Williams (TX_00009917-9968) and produce any and all "policy" advice found therein; and it is

**FURTHER ORDERED** that Senator Fraser shall re-sit for a deposition on or before June 15, 2012 to provide non-evasive answers to questions regarding the substance and purpose of the two-thirds rule; the effect of a governor designating a bill as emergency legislation; and whether he was aware of any conversations regarding the timing of consideration of S.B. 14; and it is

**FURTHER ORDERED** that Texas shall review all intra-agency communications and State agency responses identified in the Attorney General's Contested Document Index, and by no later than June 7, 2012, produce 1) intra-agency communications regarding the legislator's request (redacted as necessary to shield the legislator's identity and request), and 2) factual information contained in any agency response that is relevant to any other discovery request (redacted as necessary and produced with new Bates numbers as necessary to shield which legislator requested and received the information); and it is

15

**FURTHER ORDERED** that Texas review the emails it produced on May 21, 2012 and produce any withheld emails that discuss overall legislative purpose (as opposed to individual legislator motivation), and any emails that discuss "political" activities (such as speech giving, fundraising, campaign events, etc.) by no later than June 8, 2012; and it is

**FURTHER ORDERED** that questions at deposition shall comply with the terms and restrictions set forth in this Order.


Date:  June 5, 2012                                         /s/
                                                    DAVID S. TATEL
                                                    United States Circuit Judge


                                                            /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge


                                                            /s/
                                                    ROBERT L. WILKINS
                                                    United States District Judge

16