**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| MARC VEASEY, JANE HAMILTON, SERGIO DELEON, FLOYD J. CARRIER, ANNA BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS, JOHN MELLOR-CRUMLEY, PEGGY HERMAN, EVELYN BRICKNER, GORDON BENJAMIN, KEN GANDY, LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), AND DALLAS COUNTY, TEXAS, *Plaintiffs,* ) ) ) ) ) ) ) ) ) ) ) ) | |
| v. | ) CIVIL ACTION NO. ) 2:13-CV-193 (NGR) |
| RICK PERRY, Governor of Texas; and JOHN STEEN, Texas Secretary of State, *Defendants.* | ) [Lead case] ) ) ) |
| | ) |
| UNITED STATES OF AMERICA, *Plaintiffs,* | ) ) ) |
| | ) |
| TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, IMANI CLARK, AURICA WASHINGTON, CRYSTAL OWENS, AND MICHELLE BESSIAKE, *Plaintiff-Intervenors,* | ) ) ) ) ) ) |
| | ) |
| TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, HIDALGO COUNTY, AND MARIA LONGORIA BENAVIDES, *Plaintiff-Intervenors,* | ) ) ) ) ) ) |
| v. | ) CIVIL ACTION NO. ) 2:13-CV-263 (NGR) |
| STATE OF TEXAS, JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, *Defendants.* | ) [Consolidated case] ) ) ) ) ) ) |

1

|  |  |  |
|---|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES; and the MEXICAN AMERICAN LEGISLATIVE CAUCUS OF THE TEXAS HOUSE OF REPRESENTATIVES, | ) ) ) ) ) ) |  |
| *Plaintiffs,* | ) |  |
| v. | ) ) ) | CIVIL ACTION NO. 2:13-CV-291 (NGR) [Consolidated case] |
| JOHN STEEN, in his official capacity as Secretary of State of Texas; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, | ) ) ) ) |  |
| *Defendants.* | ) ) |  |
| BELINDA ORTIZ, LENARD TAYLOR, EULALIO MENDEZ JR., LIONEL ESTRADA; ESTELA GARCIA ESPINOSA, ROXANNE HERNANDEZ, LYDIA LARA, MARGARITO MARTINEZ LARA, MAXIMINA MARTINEZ LARA, AND *LA UNION DEL PUEBLO ENTERO, INC.* | ) ) ) ) ) ) ) ) ) ) |  |
| *Plaintiffs,* | ) ) |  |
| v. | ) ) ) | CIVIL ACTION NO. 2:13-CV-348 (NGR) [Consolidated case] |
| STATE OF TEXAS; JOHN STEEN, in his Official capacity as Texas Secretary of State; And STEVE McCRAW, in his official capacity As Director of the Texas Department of Public Safety, | ) ) ) ) ) ) |  |
| *Defendants.* | ) |  |

## DEFENDANTS' RESPONSE TO THE
## UNITED STATES' MOTION FOR PROTECTIVE ORDER

**I.     The State Defendants' First Request For Production Is Reasonably Calculated To Yield Admissible Evidence.**

In response to DOJ's concerns, the Defendants have narrowed their first

request for production three times.  *Compare* ECF No. 180.2 (Defs. 1st RFP), *with*

2

ECF No. 180.3 at 3 (Ltr. from David Whitley, Counsel for Defs., to Jennifer Maranzano, counsel for U.S. (Dec. 20, 2013)), Ltr. from David Whitley, counsel for Defendants, to Elizabeth Westfall, counsel for U.S. at 1–2 (Mar. 11, 2014) (Ex. 1), *and* Ltr. from Avner Shaprio, counsel for U.S., to David Whitley, counsel for Defs. at 2 (Mar. 13, 2014) (Ex. 2).  The Defendants' most recent definition of "you" and "your" is targeted only to:

      (1)      DOJ Civil Rights Division
      (2)      DOJ Office of the Attorney General
      (3)      DOJ Office of the Deputy Attorney General
      (4)      DOJ Office of the Associate Attorney General
      (5)      Twenty Two Members of Congress who opposed SB 14 in the press and/or on the House floor

*See* Ex. 2.[1]

This most recent (and narrowest) definition of "you" and "your" has been carefully crafted to include only entities and individuals who are the most likely to possess relevant evidence, and it greatly minimizes burden on DOJ.  The Defendants cannot yield any more ground without losing access to evidence that may prove critical to their case.

      **A.**      **Defendants Are Entitled To Discovery From The Civil Rights Division, the FBI, the Criminal Division's Public Integrity Section, and the United States Attorneys' Offices.**

---

[1] This most recent definition of "you" and "your" is to apply only to Defendants' 1st RFP Nos. 9–14, which do not request information on voter fraud.  Defendants' 2nd RFP No. 10, while not using the term "you" and "your," does request information on voter fraud and should apply to, in addition to the members of Congress identified in Exhibit 2, the following Department of Justice agencies, including their attorneys, agents, experts, and support personnel: the Federal Bureau of Investigation, the Office of the Attorney General, the Deputy Attorney General, the Associate Attorney General, the Civil Rights Division, the Criminal Division's Public Integrity Section, and United States Attorneys' Offices.  *See* Ex. 1.

The United States is seeking discovery of the files relating to voter fraud investigations. *See* ECF No. 182.1 at 9 (U.S. 1st RFP No. 22). Further, the plaintiffs made clear during the March 5, 2014 hearing that by suing "The State of Texas," they have subjected every state governmental agency to discovery, including the Texas Legislature and the Texas Attorney General's Office. If files relating to voter fraud investigations are discoverable material in the hands of the Texas Attorney General, then they are discoverable material in the hands of the federal agencies similarly tasked with investigating voter fraud complaints. The Defendants seek discovery from the discreet agencies of DOJ that handle the very cases put at issue by the plaintiffs in this case—voter fraud. After consulting with DOJ, the Defendants have narrowed their definition of "you" and "your" as it applies to DOJ to include these discreet agencies.

The prevalence of voter fraud was put at issue by the United States. *See, e.g.*, DOJ Compl. at para. 29 (*U.S. v. Texas*, No 2:13-cv-263, ECF No. 1 (consolidated into this case)) (alleging that the Texas Legislature was "motivated by discriminatory intent" because "voter ID proponents cited virtually no evidence during or after enactment of SB 14 that in-person voter impersonation—the only form of election fraud addressed by the identification requirements of SB 14—was a serious problem or that the State's then-existing identification procedures had failed to prevent in-person voter impersonation."). DOJ cannot allege in its complaint that voter fraud is a Texas-sized myth, and then conceal from the Court and counsel all reports and investigations in its custody. That is especially so

when those reports were created by federal entities whose very purpose is to investigate voter fraud in Texas and throughout the United States.   *See, e.g.,* http://www.fbi.gov/about-us/investigate/corruption/election-crimes.

If voter fraud does not exist, then someone needs to tell the Department of Justice, which maintains a website with detailed instructions on reporting voter fraud to the FBI or the Civil Rights Division.   *See* http://www.justice.gov/opa/pr/2012/October/12-opa-1245.html.   When fraud is reported, it is prosecuted by the Public Integrity Section and the local U.S. Attorney's Office.   *See id.* ("The Criminal Division's Public Integrity Section and the Department's 94 U.S. Attorneys' Offices are responsible for enforcing the federal criminal laws that prohibit various forms of election fraud, such as vote buying, multiple voting . . . .")  The Defendants should have access to these reports and the resulting investigations.  Even DOJ's motion for a protective order seems to acknowledge this reality.  DOJ Mot. at 5 ("[W]ere the Defendants to narrow their existing broad definitions to federal entities actually likely to have discoverable information, such as the Civil Rights Division, we believe there would be no significant loss in the quantity of discoverable information Defendants would receive.").

**B.    Defendants Are Entitled To Discovery From The Texas Congressional Delegation And Four Additional Congresspersons Who Publically Opposed Voter ID laws.**

The Defendants are no longer seeking discovery from all individual congressperson, but we maintain our request that DOJ search all discreet parts of

DOJ that fall under the definition of "you" and "yours" for documents from any congressperson.[2]   Every single member of the Texas Democratic Congressional delegation has joined the debate over SB 14, denouncing the law as racist and ineffective, and urging their constituents to do the same.   In their speeches, they claim to possess studies criticizing SB 14; they claim to have discussed its allegedly onerous requirements with injured constituents; and they claim special knowledge about the complete and total absence of voter fraud in their own districts.   *See infra.*  This is all highly relevant and discoverable information.   And there is likely much more:  Having opposed SB 14 so prominently, these members of Congress certainly possess at least some dissenting material from constituents who claim to have witnessed voter fraud, or who harbor concerns for ballot integrity.   The Court should not allow the Texas Congressional delegation to stir the pot in their districts, and then present to this Court only that favorable evidence which floated to the top.

Congressman Lloyd Doggett, for example, is a vocal critic of SB 14.   He insists that SB 14 "is all about voter suppression" and repeatedly claims that voter fraud is a fabrication.   *See, e.g.*, http://doggett.house.gov/index.php/news/494-congressman-doggett-speaks-about-the-new-voter-id-law-in-texas  (arguing in a television interview that "we haven't had a big problem with voter fraud" and claiming that there were only 20 actionable complaints of voter fraud in the past

---

[2] On Friday, March 14, 2014, the United States served Rule 45 Subpoenas on twelve current and former members of the Texas Legislature.  If the United States now agrees that individual members of the Texas Legislature are not parties in this case simply because the State of Texas is a Defendant, the Defendants would likewise agree that members of Congress are not parties even though the United States initiated this litigation.

election).  Congresswoman Sheila Jackson Lee denounced SB 14 on the floor of the U.S. House, telling her colleagues that she "talked to many of our seniors" about SB 14, citing a 2008 study condemning voter ID laws, and accusing Texas lawmakers of passing SB 14 out of "ire" after President Obama's historic victory in 2008.  *See* Pete Kasperowicz, THE HILL (Jan. 24, 2012).  Congresswoman Eddie Bernice Johnson dedicated an entire town hall meeting to denouncing the purpose and effects of SB 14, expressing her concerns and soliciting input from constituents.  *See, e.g.*, http://www.youtube.com/watch?v=D5NSppdtEf0.   And Congressman Marc Veasey, of course, lent his name to the complaint in this very case.

In addition to the Texas Congressional Delegation, four other members of Congress have been outspoken critics of voter ID laws and likely have relevant evidence of the purpose and effect of such laws.   In their role as Party leaders, Senator Harry Reid and Speaker Nancy Pelosi have opposed ballot integrity measures, and they are most likely to have communicated with the Department of Justice about their concerns.  Senators Bob Casey and Kay Hagan both opposed voter ID laws in their respective States.  It is undisputed that Senator Hagan has been in communication with Attorney General Holder, "strongly encourage[ing] the Justice Department to immediately review North Carolina's [voter ID law]." *See, e.g.*, Ltr. from Kay Hagan to Eric Holder (Aug. 13, 2013) (Ex. 3).

There is another reason to suspect that these members of Congress have discoverable information concerning the purpose and effect of state voter ID laws.

In addition to making public statements against SB 14, these representatives have been debating several Voter ID initiatives in the U.S. House, where Republicans have proposed a Voter ID requirement for federal elections, and Democrats have proposed preempting state voter ID requirements.  Sean Lengell, *Battles over federal voter-ID laws heating up in Congress*, WASHINGTON TIMES (Sept. 18, 2012).

These members of Congress have repeatedly claimed to be in possession of evidence relevant to this case.  The Court should have little sympathy for high-ranking officials who make such claims when it suits them, and then argue in federal court that, as members of Congress, they have no reason to concern themselves with a state law like SB 14.  DOJ Mot. at 12 (ECF No. 180) ("Simply put, the Texas legislature – not the United States Congress – enacted SB 14.").  If this Court permits agents of the U.S. government to rummage through the files of Texas Legislators, then it should likewise ask relevant members of Congress to produce any relevant evidence in their custody — evidence which they have forcefully and publically claimed to possess.  Unlike the United States, Defendants have narrowed the list of congresspersons from whom they seek information from all members to only twenty two.  DOJ continues to seek discovery from nearly 250 current and former members of the Texas Legislature.

### C.     Defendants Are Entitled To Discovery From The Office Of The Attorney General, The Deputy Attorney General, And The Associate Attorney General.

No public official has claimed to know more about SB 14 purpose, or to know more about SB 14's effects, than the Attorney General of the United States.

Attorney General Holder has been long preoccupied with Texas's ballot integrity measures.  *See* Amy Bingham, *Eric Holder Dubs Texas Voter ID Law a 'Poll Tax'*, ABC News (Jul. 10, 2012) (quoting the Attorney General as saying that "Texas has – in many ways – been at the center of our national debate about voting rights issues.").  Indeed, from the beginning, the Attorney General has denounced SB 14 as a tool for disenfranchising 25% of black voters in Texas, and called it "a poll tax." *Id.*

We do not believe that the nation's chief law enforcement officer would make such claims without careful study of SB 14's purpose and effects.  And it is likewise reasonable to assume that Attorney General Holder's investigation of SB 14, like any other, has turned up evidence relevant to the issues in this case.  If it has, the agencies of DOJ that handle voter fraud or Voter ID cases—the Federal Bureau of Investigation, the Civil Rights Division, the Criminal Division's Public Integrity Section, and United States Attorneys' Offices—are likely to have discussed that evidence with the Office of the Attorney General, the Deputy Attorney General, or the Associate Attorney General, given the interest Voter ID laws have garnered at the highest levels of the Department of Justice.  At any rate, the Defendants narrowed its definition of "you" and "your" from the entire United States to the discreet parts of DOJ that are likely to have dealt with Voter ID.  This Court should not allow DOJ to cherry pick its best evidence for trial, while shielding any documents favorable to Texas.  *Cf. Brady v. Maryland*, 373 U.S. 83 (1963).

## II.     Defendants' Definition Of Electronically Stored Information Is Not Unduly Burdensome or Costly.

This dispute between the parties turns on what types of electronic storage media (e.g. network drives, computer hard drives, CDs, and DVDs) must be searched for responsive documents.  Initially the Defendants asked DOJ to search all the usual sources for relevant files, including local hard drives, but DOJ objected that the task was too burdensome.  DOJ assured us that any relevant information would be stored only on DOJ's computer network, and that department policy prohibited saving government files exclusively to local hard drives, DVDs, or CDs.  Based on this assurance, the Defendants agreed to limit their discovery requests to files stored on DOJ's network only.

DOJ is familiar with its own document management practices, but it could not assure us that members of Congress and their staff also refrain from saving files to their local hard drives.  Indeed, absent a policy to the contrary, it is our experience that many users prefer to save their files locally, where they can be easily accessed when working from home on a laptop, and where they are accessible even when the network goes down.  Without an assurance from DOJ, the Defendants could not agree to limit their requests to files stored on Congress's network only.  Having failed to reach an agreement on this point, the parties were forced to turn to the Court for resolution of this dispute.

It is very likely that relevant files in the possession of members of Congress are stored on their local hard drives, and that DOJ's proposal would deny the Defendants relevant information that may prove critical to their case.  On the other

side of the ledger, there is no good reason to deny the Defendants access to these files, as the additional searches should not prove burdensome.  When DOJ initially objected to searching local hard drives, it reasonably objected that its IT staff would be forced to search *thousands* of individual computers throughout the Executive Branch and Congress.  But now that the Defendants have agreed not to search any local hard drives in the entire Executive Branch, and also have agreed to limit their request to 22 members of Congress, the task of searching individual computers should be manageable with ease.

We understand the difficulty of producing electronic discovery from government computers, and at every turn we have considered and accommodated DOJ's requests that we narrow our search.  But asking DOJ to search the local hard drives of twenty two officials and their staff is not overreach, especially given the importance such documents may have to our case.  This sort of discovery request is routine in federal litigation, and the Defendants urge the Court to deny DOJ's motion for protective order.

Dated:  March 17, 2014

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General
Southern District of Texas No. 1160600

*/s/ John B. Scott*
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
Southern District of Texas No. 10418
ATTORNEY-IN-CHARGE

G. DAVID WHITLEY
Assistant Deputy Attorney General
Southern District of Texas No. 2080496

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

SEAN PATRICK FLAMMER
Assistant Attorney General
Southern District of Texas No. 1376041

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

COUNSEL FOR THE STATE OF TEXAS,
RICK PERRY, JOHN STEEN, and STEVE
MCCRAW

12

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2014, I served a true and correct copy of the foregoing document is being served via the Court's electronic filing system to all counsel of record.


*/s/ John B. Scott*
JOHN B. SCOTT