IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:13CV658 |
| PATRICK LLOYD MCCRORY, in his official capacity as Governor of North Carolina, et al., | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:13CV660 |
| THE STATE OF NORTH CAROLINA, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:13CV861 |
| THE STATE OF NORTH CAROLINA, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

<u>ORDER</u>

These cases come before the Court following a hearing held on February 21, 2014, regarding various discovery disputes and motions. The present Order addresses a Motion to

Quash filed by various state legislators on January 20, 2014, and a Motion to Compel filed by Plaintiffs on February 10, 2014, both raising issues of legislative immunity and legislative privilege.

This matter presently involves three consolidated cases. In the first case (1:13CV658), the North Carolina State Conference of the NAACP and other individuals and churches (collectively, "the NAACP Plaintiffs") challenge portions of recent North Carolina state legislation ("House Bill 589") pursuant to the federal Voting Rights Act, 42 U.S.C. § 1973, and pursuant to the Fourteenth and Fifteenth Amendments to the Constitution. In the second case (1:13CV660), the League of Women Voters of North Carolina and other individuals and groups (collectively, "the League Plaintiffs") raise similar challenges under the Voting Rights Act, 42 U.S.C. § 1973 and § 1973a, and under the Fourteenth Amendment. Finally, in the third case (1:13CV861), the United States of America, represented by the U.S. Department of Justice, ("the U.S. DOJ Plaintiff") also raises similar challenges pursuant to the Voting Rights Act, 42 U.S.C. § 1973. In all three cases, the claims are asserted against the State of North Carolina, the members or director of the State Board of Elections, and/or North Carolina Governor McCrory (collectively, "the Defendants").

On January 10, 2014, various state legislators filed a Motion to Quash, seeking to quash subpoenas served upon them that requested the production of various documents related to House Bill 589. The NAACP Plaintiffs and the League Plaintiffs subsequently filed a Motion to Compel on February 10, 2014, seeking to compel Defendants to produce similar documents that were withheld on the basis of claims of legislative immunity. These matters came before

the Court at the hearing on February 21, 2014. After hearing from the parties, the Court allowed both sides an additional period to file supplemental briefs related to the issues raised during the hearing. Those supplemental briefs were filed on February 26, 2014, and the Court has considered the matters raised in the supplemental briefing and during the hearing. Having considered the parties' contentions, the Court concludes that both motions should be granted in part and denied in part. Specifically, the Court concludes that while the judicially-created doctrine of "legislative immunity" provides individual legislators with absolute immunity from liability for their legislative acts, that immunity does not preclude all discovery in the context of this case; instead, claims of legislative immunity or privilege in the discovery context must be evaluated under a flexible approach that considers the need for the information in the context of the particular suit presented, while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process.

In reaching this conclusion, the Court notes first that while federal legislators enjoy the protections of the U.S. Constitution's Speech and Debate Clause, those Constitutional protections do not apply to state legislators. However, the courts have created doctrines of "legislative immunity" and "legislative privilege" to provide similar protections to legislators at the state and local levels. See Tenney v. Brandhove, 341 U.S. 367, 373 (1951); see also United States v. Gillock, 445 U.S. 360, 374 (1980). Under the common law doctrine of "legislative immunity," legislators are entitled to absolute immunity from civil claims against them arising out of their actions in a legislative capacity. Roberson v. Mullins, 29 F.3d 132, 134 (4th Cir. 1994). With respect to the parallel concept of "legislative privilege," courts have recognized that

"[l]egislative immunity not only protects state legislators from civil liability, it also functions as an evidentiary and testimonial privilege." Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 297 (D. Md. 1992). In this regard, "legislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes." EEOC v. Washington Suburban Sanitary Comm'n, 631 F.3d 174, 181 (4th Cir. 2011).

In applying these doctrines in the present case, the Court is guided in particular by the decision in Marylanders for Fair Representation, Inc. v. Schaefer, specifically in the approach set out by Judge Murnaghan and Judge Frederick Motz for the 3-judge panel in that case. See Marylanders, 144 F.R.D. at 302 n.19 (noting that the opinion by J. Murnaghan and J. Motz "reflects their majority, and thus prevailing, views" on the point addressed in their opinion). That opinion in Marylanders noted that "a less categorical, more flexible, approach" should be taken in shaping the scope of discovery in a case under the Voting Rights Act involving issues of legislative testimonial privilege, and in reaching this conclusion the majority stated:

> The doctrine of legislative immunity (both in its substantive and testimonial aspects) itself embodies fundamental public policy. It insulates legislators from liability for their official acts and shields them from judicial scrutiny into their deliberative processes. The doctrine is a bulwark in upholding the separation of powers. It does not, however, necessarily prohibit judicial inquiry into legislative motive where the challenged legislative action is alleged to have violated an overriding, free-standing public policy. The Supreme Court has recognized that "[i]n some extraordinary instances the members [of a legislative body] might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 268, 97 S. Ct. 555, 565, 50 L.Ed.2d 450 (1977); see also South Carolina Educ. Ass'n v. Campbell, 883 F.2d 1251, 1259 (4th Cir.1989), cert. denied, 493 U.S. 1077, 110 S. Ct. 1129, 107 L. Ed.2d 1035 (1990) (recognizing that judicial inquiry into legislative motive is appropriate where "the very nature of the constitutional question requires an inquiry

into legislative purpose," quoting from United States v. O'Brien, 391 U.S. 367, 383 n. 30, 88 S. Ct. 1673, 1682 n. 30, 20 L. Ed. 2d 672 (1968), but not specifically holding that the inquiry may be made through legislators' testimony).

Marylanders, 144 F.R.D. at 304.[1] The court in Marylanders concluded that some discovery could be allowed in the context of a claim under the Voting Rights Act given the "unique nature of legislative redistricting and the fact that testimonial legislative immunity is not an absolute." Id. However, the court in Marylanders further noted that even when legislative motive is put at issue, legislators are protected from intrusive questioning regarding their legislative activities or motives, because of "the direct intrusion of such discovery into the legislative process." Id. at 305; see also Burtnick v. McLean, 76 F.3d 611 (4th Cir. 1996). The Fourth Circuit has subsequently confirmed the importance of legislative privilege in cases raising challenges to legislative budget enactments, where an individual claims that the budget was enacted based on an improper motive or purpose. See McCray v. Maryland Dep't of Transp., 741 F.3d 480, 487 (4th Cir. 2014) (noting that legislative immunity would preclude claims and related discovery with respect to legislative activity involved in enacting a budget, but would not preclude discovery related to non-legislative acts); EEOC v. Washington Suburban Sanitary Comm'n, 631 F.3d at 183 (noting that legislative privilege would preclude potential inquiry into motives for the "quintessentially legislative" act of passing a budget, but refusing to quash subpoenas that targeted administrative personnel decisions and did not require testimony of legislators or

---

[1] During the hearing on February 21, 2014, Defendants acknowledged that this "carve-out" would allow "more leeway" in discovery as to legislative motive in cases involving redistricting claims under the Voting Rights Act, as set out in Marylanders. However, Defendants argued that this "carve-out" should be limited only to redistricting cases under the Voting Rights Act, not the types of claims asserted here. However, the Court concludes that there is no basis to treat these claims differently, where they are all based on the Voting Rights Act and where the enactment of voting rules and requirements in both instances "involves the establishment of the electoral structure by which the legislative body becomes duly constituted." Marylanders, 144 F.R.D. at 304.

diversion of time away from legislative duties);  Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md., 684 F.3d 462, 468-69 (4th Cir. 2012) (upholding dismissal of First Amendment § 1983 claim raising challenge to legislative budget that was "facially valid," and refusing to "rely on alleged improper legislative motives to strike down an otherwise valid statute").

Nevertheless, as discussed in Marylanders, where Congress has acted to place legislative motive directly at issue, the judicially-created doctrine of legislative privilege should not absolutely preclude all discovery, as long as sufficient protection for legislators and legislative independence is preserved.  As noted in Marylanders, some may contend that "considerations of federalism and the separation of powers should have persuaded the Supreme Court and the Congress never to confer jurisdiction upon the federal courts" to review state voting laws. Marylanders, 144 F.R.D. at 305.  "However, that jurisdiction has been created, and we should not *de facto* abdicate our responsibility to exercise it. The promise having been made, we must provide an opportunity for its fulfillment. We should not simply rely upon bright line tests which have been developed in other contexts to bar virtually all discovery of relevant facts. Rather, we must accept the task . . . of closely monitoring the discovery process" and considering the testimonial and evidentiary issues presented.  Id.

Thus, the Court must consider the context of this suit under the Voting Rights Act in making a particularized determination of the extent of any privilege, balancing the need for obtaining the information with the impact on legislative sovereignty and the need to "insure that legislators are not distracted from or hindered in the performance of their legislative tasks." Doe

v. Pittsylvania Cnty., Va., 842 F. Supp. 2d 906, 916 n.6 (W.D. Va. 2012).  In undertaking this inquiry, the Court notes that many of the documents requested by the subpoenas and discovery requests involve communications with outside parties or are other documents that are considered public records under state law.  Requiring production of those documents is not unduly burdensome or invasive of the legislative process.  However, other categories of documents may require further scrutiny in balancing the competing interests.  In addition, the protections of the attorney-client privilege and work product doctrine can also be claimed by the individual legislators, and those issues have not been addressed in detail as to the specific requests presented.  In their briefing and at the hearing, Defendants requested the opportunity to be heard further as to the particular types or categories of documents involved, and Plaintiffs agreed that the parties would still need to address the various categories of documents on a more specific basis.  Therefore, the Court will direct the parties to meet and confer to determine what agreement can be reached regarding the requested documents and information, in light of the Court's general conclusions above, with respect to: (1) categories of documents that will be produced, including those outside the scope of a qualified legislative privilege or for which the privilege has been or will be waived; (2) categories of documents to be reflected on a privilege log claiming legislative privilege, attorney-client privilege, or work product protection, so that individual review and challenges can be raised; and (3) categories of documents that could be excluded from the privilege log requirement in order to provide the legislators with sufficient protection from unduly burdensome or invasive inquiry. Specifically as to the third category of documents, the Court notes that the parties agreed in their Electronic Discovery Agreement that

certain categories of documents and communications could be exempt from the privilege log requirement, particularly with respect to attorney-client communications in connection with this litigation. The Court notes that it may be appropriate to include a similar provision for attorney-client communications with individual legislators. The Court further notes that this protection from the privilege log requirement may also be particularly appropriate as to internal documents and communications that were created and circulated only by and between individual legislators and their staff, to prevent unwarranted intrusion and burdensomeness that would accompany even the preparation of a privilege log for these internal deliberations and communications.[2] It may also be that each individual legislator could specifically assert a privilege for these internal communications and deliberations by general category, without requiring an itemizing of all such documents. However, because the parties have not addressed in detail these potential categories, the Court will allow the parties an opportunity to attempt to reach an agreement in light of this Order, and to present any narrowed remaining disputes with respect to particular categories and types of documents for further resolution by the Court. To the extent any dispute remains as to particular categories of documents, the parties should submit a joint status report on or before April 7, 2014, and may submit individual briefing if necessary for consideration of any remaining issues. The joint status report should include deadlines for any agreed-upon

---

[2] As to these types of documents, the Court notes that the legislative privilege is similar to the "deliberative process privilege," but with the particular need to protect legislative sovereignty and prevent inquiry that would chill legislative action. Cf. Doe v. Nebraska, 788 F. Supp. 2d 975, 985-986 (D. Neb. 2011); Committee for a Fair and Balanced Map v. Illinois State Bd. of Elections, Case No. 11 C 5065, 2011 WL 4837508 (N.D. Ill. Oct. 12, 2011); Favors v. Cuomo, 285 F.R.D. 187, 210 and n.22 (E.D.N.Y. 2012).

production, deadlines for preparation of privilege logs, and a proposed briefing schedule to the extent needed as to any remaining, particular categories or issues still in dispute.[3]

Finally, the Court notes that, as discussed during the hearing, legislative immunity or privilege may be waived by any individual legislator. See Marylanders, 144 F.R.D. at 298. Therefore, by April 14, 2014, Defendants must notify Plaintiffs of the identity of any legislator on whom they will rely in response to any preliminary injunction motion, whether by affidavit, testimony, or documentary evidence otherwise subject to legislative privilege, in order to allow Plaintiffs sufficient time to undertake additional discovery with respect to any legislator waiving the legislative privilege.

IT IS THEREFORE ORDERED that the Motions to Quash and Motion to Compel are GRANTED IN PART AND DENIED IN PART to the extent that the Court will not quash the subpoenas in their entirety, nor will the Court compel responses to all of the Plaintiffs' requests, and instead the Court concludes that Defendants' claims of legislative immunity or privilege must be evaluated under a flexible approach that considers the need for the information while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process, as further set out above.

---

[3] It appears that documents in possession of the State would be subject to production pursuant to the discovery served in this case, while documents in the possession of individual legislators would be subject to production pursuant to the subpoenas, with the same limitations and protections noted above, so the Court has not distinguished between the two. To the extent any issues remain on this point, the parties may address those issues further if necessary in the joint status report.

IT IS FURTHER ORDERED that on or before April 7, 2014, the parties must file a joint report as set out above, presenting any narrowed remaining disputes with respect to particular categories and types of documents for further resolution by the Court.

FINALLY, IT IS ORDERED that on or before April 14, 2014, Defendants must notify Plaintiff of the identity of any legislator on whom they will rely in response to any preliminary injunction motion, whether by affidavit, testimony, or documentary evidence otherwise subject to legislative privilege, in order to allow Plaintiffs sufficient time to undertake additional discovery with respect to any legislator waiving the legislative privilege.

This, the 27th day of March, 2014.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge