IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

Case 2:13-cv-00193 Document 215 Filed on 03/31/14 in TXSD Page 2 of 11

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NANDITA BERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-291 (NGR) |
| BELINDA ORTIZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants | Civil Action No. 2:13-cv-348 (NGR) |

### [Proposed] United States' Reply Memorandum in Support of Plaintiffs' Joint Motion to Enter an Amended Scheduling Order

Plaintiffs' Joint Motion to Enter an Amended Scheduling Order remains pending before the Court. Mot. to Modify (ECF No. 196). The United States provides this reply memorandum to address misrepresentations in Defendants' memorandum in opposition to that motion, Defs. Opp. at 4 (ECF No. 206), and in further support of the pending motion. For the reasons set forth in Plaintiffs' Joint Motion and the reasons that follow, the United States respectfully requests that the Court enter the proposed amended scheduling order (ECF No. 196-2).

Contrary to Defendants' assertions, the United States has consistently acted from the outset with dispatch to gather and analyze relevant evidence. Defendants have resisted those efforts steadfastly. Thus, the delay Defendants now decry is of their own making. Having only

1

just recently been given access to the state's databases, the interests of justice dictate that the United States have adequate time to analyze those data—something it has agreed to do on behalf of all parties. Moreover, the United States must be permitted reasonable and timely access to the other evidence necessary for its case, access that Defendants continue to resist. Granting the joint motion will aid this Court by helping to ensure that the case brought to trial on September 2, 2014 is fully developed, that the record is complete and reliable, and that defiance, recalcitrance, and delay by Defendants will not be permitted to impede the administration of justice in this case affecting fundamental voting rights.

## I. DISCOVERY OF STATE DATABASES

The United States has marshaled the resources of the Department of Justice and five other federal agencies to conduct a comprehensive database matching process on behalf of all parties. Arriving at this joint process was delayed for a month by Defendants' late-breaking demand that the United States orchestrate a global production agreement before Defendants would comply with discovery obligations. The United States acceded to that request and organized and negotiated a unified process for document production with all parties.

Counsel for the United States continue to coordinate database matching, providing feedback and technical assistance to federal agencies on a daily basis, but completion and quality control within the existing fact discovery deadline of May 2 is likely impossible. Moreover, expert reports that analyze the vast quantity of data produced by the comparison procedures require at least several weeks to draft, and a reasonable process of rebuttal and reply reports will sharpen the disputes between the parties to facilitate an orderly trial on a well-developed record.

### A. Database Discovery to Date

The United States requested production of the State of Texas's Election Administration Management (TEAM) database and multiple identification databases in the possession of the Texas Department of Public Safety on November 26, 2013. *See* U.S. 2d RFPs (Ex. 1) (field names redacted). However, during a December 12 meet and confer, Defendants notified the United States that counties had not yet uploaded data from the November 5, 2013 election into the TEAM database and would not be loaded until at least the end of the year. *See* Let. from Elizabeth Westfall, counsel for the United States, to John Scott, Counsel for Defendants (Dec. 18, 2013) (Ex. 2). The United States then provided an amended request for production that demanded disclosure of the databases as soon as the November 2013 data were available. *See* U.S. Am. 2d RFPs (Ex. 3) (fields redacted).

Defendants did not produce the requested databases thirty days after the United States served its amended request for production. Rather, Defendants served inappropriate objections and newly demanded that the United States negotiate a global production agreement between all parties. *See* Defs. Objs. to U.S. 2d Am. RFPs (Ex. 4); Email from David Whitley, counsel for Defendants, to Elizabeth Westfall, Counsel for the United States (Jan. 17, 2014) (Ex. 5).[1] Most notably, Defendants demanded that the United States convince the private plaintiffs to abandon any right to complete copies of state databases. The United States thus spent weeks

---

[1] Despite Defendants' agreement to produce the same databases in *Texas v. Holder* under a protective order similar to the one in effect in this case, Defendants claimed that "no adequate safeguards are currently in place to protect the disclosure of this information." Defs. Objs. to U.S. 2d Am. RFPs at 4-5. *But see* Consent Protective Order (ECF No. 105); Let. from David Whitley, Counsel for Defendants, to Elizabeth Westfall, Counsel for the United States (Feb. 19, 2014) (Ex. 6) (producing databases under Paragraph 2.1 of the original protective order). Defendants also asserted that their databases would have no probative value unless the United States were willing to produce the entirety of federal databases implicated by SB 14, despite the United States' explanation that that federal database matching could be conducted internally by federal agencies, as is now occurring. *See* Defs. Objs. to U.S. 2d Am. RFPs at 5.

3

spearheading negotiations between the parties on a joint process order governing data disclosure and comparisons. This time consuming and resource intensive process could have begun while the United States waited for Texas counties to upload November 2013 data to the TEAM database, but during that period, Defendants assured the United States that they would produce their databases, suggesting only potential objections to an unidentified subset of database fields. *See* Dec. 18 Let. at 1. Disputes between the parties persisted until this Court entered an order commencing database discovery on February 18. *See* Order (ECF No. 174).[2]

On February 19, 2014, Defendants finally produced the TEAM and DPS databases to the United States Attorney's Office for the Western District of Texas, in Austin—nearly three months after the United States first requested those data. *See* Feb. 19 Let. The United States spent the next week transferring the data, conducting quality control checks, and transforming the data to prepare it for implementation of the agreed-upon matching protocols and thus both minimize and speed the work of individual federal agencies. The United States sent documentation, sample programming code, and copies of the Texas databases to the federal agencies on February 26, and the agencies began receiving that information on February 27. At the same time, having had its first look at the DPS and TEAM databases, the United States finalized its proposed search protocols and provided that proposal to all parties on February 26,

---

[2] Defendants assert without evidence that they requested such an agreement on December 12, 2013, *see* Defs. Opp. at 4, but this is simply untrue. In a December 18 letter, the United States sought to memorialize the December 12 teleconference, and the letter contains no reference to any such request. *See* Dec. 18 Let. at 1. The United States offered Defendants an opportunity to supplement this letter, *see id.* at 2, but Defendants did not do so. Moreover, a January 17 email from counsel for Defendants to the United States makes clear that this request was newly made at that time; counsel for Defendants merely assumed that agreement would be reached easily. *See* Jan. 17 Email. As soon as Defendants demanded a global agreement as a precondition to compliance with their discovery obligations, the United States worked doggedly in pursuit of consensus, notwithstanding substantial disputes between Defendants and the private plaintiffs that did not concern the United States.

2014. At present, the federal agencies are engaged in extracting hundreds of millions of records from disparate databases, translating sample code into programming languages that interface with their individual data systems, and implementing dozens of matching comparisons between each record of a Texas registered voter and the relevant databases in their possession.

Rather than "foot dragging," the United States has pushed at every turn to accelerate the data matching process at the heart of its case. That the United States did not receive Defendants' data until February 19—rather than in early January when it first became available—is due solely to Defendants' own actions.

### B. Remaining Database Discovery

The five federal agencies continue to work to complete the matching protocol. Despite a preparatory process that began months ago, unanticipated problems have arisen and—thus far—been addressed. This in itself is not surprising or problematic, as the matching project and collaboration between the Department of Justice and the five federal agencies are a massive and novel undertaking. The United States will continue to oversee and manage the process of comparing records, which entails daily communication, troubleshooting, and coordination. Once agency matching is complete, the federal agencies must transport the data to counsel for the United States. The United States must then distribute the data on encrypted hard drives to counsel for each of the parties. Given the sensitivity of the millions of records and billions of matching outputs, the United States must transfer the data results consistent with its protocols for transmitting sensitive data to counsel for Defendants and counsel for each private plaintiff group. Thus, the United States continues to estimate that May 30, 2014 is the soonest that all federal agencies will be able to complete the database comparisons, along with necessary data preparation and programming, and that counsel for the United States will be able to provide the

5

comparison results to all parties. Subjecting this process to the existing May 2 deadline for completion of fact discovery would be all but certain to preclude completion of the database comparisons, despite the immense resources that the United States has committed to the project thus far.

## II. DISCOVERY OF LEGISLATIVE DOCUMENTS

As with database discovery, the United States' efforts to obtain Texas legislative documents essential to its intent claim have been delayed by Defendants' resistance and delay. Since the initial status conference, the United States has diligently sought Texas legislative documents from Defendants. However, Defendants' failure to advise the court and the parties, in a clear and timely manner, of their positions concerning possession, custody, and control of legislative documents has improperly delayed discovery. Under the circumstances, extension of the fact discovery deadline is reasonable.

### A. Legislative Discovery to Date

All parties to this case anticipated disputes regarding claims of a state legislative privilege over documents. *See* Jnt. Discovery/Case Mgmt. Plan at 6-7 (ECF No. 61). Defendants indicated in the Rule 26(f) Report their intent to assert such a privilege, and Plaintiffs indicated that they would likely move to compel at least a portion of the discovery withheld on those grounds. *Id.* Plaintiffs also stated that they intended to notice depositions of legislators but distinguished those legislators from "third parties." *Id.* at 8. Nonetheless, Defendants did not include in their disagreements concerning the discovery plan any suggestion that motions to compel and depositions by notice would not be the appropriate means by which to obtain legislative discovery. *See id.* at 9. By signing the Rule 26(f) Report, counsel for Defendants

6

represented an understanding that this Court would rely on these representations in entering its scheduling order. *Id.* at 11, 18.

Defendants served their initial disclosures on November 21, 2013, a week after this Court conducted the initial pretrial conference. Defendants therein conceded, "The State of Texas has in its possession but did not produce documents believed to be privileged and identified in privilege logs, incorporated by reference here, and previously produced in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012)." Defs. Initial Disclosures at 33 (ECF No. 165-5), thereby establishing that Defendant the State of Texas had relevant legislative documents in its possession and subject to ordinary party discovery. *See* Fed. R. Civ. P. 34(a)(1); *see also* Fed. R. Civ. P. 26(g)(1)(A).

The United States served a comprehensive set of document requests on Defendants just five days later, on November 26, 2013. *See* U.S. 1st RFPs (Ex. 7). The United States soon initiated a meet and confer, during which Defendants expressed no concerns regarding these requests for production. *See* Dec. 18 Let. at 1. On December 30, Defendants served a set of responses and objections and incorporated by reference documents it had produced to the United States during *Texas v. Holder* (including legislative documents) but produced no new documents. *See* Defs. Responses & Objs. to U.S. 1st RFPs (Ex. 8). On January 7, 2014, the United States sent search terms to be applied to legislative email found on Texas Legislative Council (TLC) servers, and Defendants immediately tested those search terms, establishing control over the relevant servers. *See* Email from David Whitley, counsel for Defendants, to Daniel Freeman, counsel for the United States (Jan. 10, 2014) (Ex. 9). On January 28, following a query regarding the status of the production, *see* Email from Daniel Freeman, counsel to the United States, to David Whitley, counsel for Defendants (Jan. 25, 2014) (Ex. 10), Defendants informed

7

the United States for the first time that they would not search for legislative email unless the relevant legislator agreed to waive any state legislative privilege. *See* Email from John Scott, counsel to Defendants, to Elizabeth Westfall, counsel to the United States (Jan. 29, 2014) (memorializing meet and confer) (ECF No. 162-6). Even at that point, however, Defendants never suggested that subpoenas were required to reach documents named in the initial disclosures or servers that Defendants agreed to search in the event of a non-assertion of any state legislative privilege.

The United States then prepared and filed the now-pending motion to compel, based on the understanding that Defendants would produce no additional legislative privilege logs. Mot. to Compel (ECF No. 162). In their opposition and sur-reply, Defendants did not suggest that the State of Texas no longer possesses the documents named in their initial disclosures or that TLC servers are outside of its possession, custody, or control. *See* Defs. Opp. Compel at 3-4, 21 (ECF No. 183); Defs. Sur-Reply Compel at 4 (ECF No. 190). Defendants first advanced this position at oral argument on March 5, 2014, necessitating yet another round of briefing. This Court rescheduled a March 26 hearing concerning the motion to compel for April 1, 2014.[3]

Again, the United States cannot properly be accused of "foot dragging." It has acted with diligence and haste.

---

[3] In an attempt to minimize further delay, and without conceding that subpoenas are required, the United States has also begun to issue subpoenas to legislators who reside in the Southern District of Texas, who have asserted a state legislative privilege, and who are individually represented by the Office of the Texas Attorney General, so that privilege disputes may be resolved without further briefing. To the extent that these legislators intend to move to quash subpoenas issued on or before March 25, the United States respectfully requests that this Court impose an April 8 deadline for such motions. The United States would agree to respond to any such motion by no later than April 15.

8

B.    **Remaining Legislative Discovery**

This Court has suggested that any state legislative privilege is qualified, and the United States contends that the importance of the federal interests at stake and the unique importance of the documents at issue here should overcome any such privilege. *See* Mot. to Compel at 3-11. Whether through party discovery or subpoenas, substantial document discovery remains.[4] Because the United States has diligently pursued these documents, and because Defendants have deliberately undermined Rule 26(a) and Rule 26(f) of the Federal Rules of Civil Procedure, this Court should permit adequate time for production of legislative documents and for the United States to depose legislators based on the contents of those documents.[5] The duration necessary hinges in part on whether this Court decides that subpoenas are necessary to obtain legislative documents, a decision that would yield further motion practice in this Court and would likely

---

[4] Defendants may not unilaterally declare document discovery to be sufficient because they produced a limited set of legislative documents in *Texas v. Holder*. Defs. Opp. at 5. Defendants withheld all internal legislative materials, and it is those materials that are mostly likely to contain evidence of discriminatory intent, particularly where the public legislative process proceeded through talking points. *See, e.g.*, *Texas v. United States*, 887 F. Supp. 2d 133, 165 (D.D.C. 2012) (three-judge court) ("The ostensible purpose of the markup was to consider amendments to the proposed plan, but the email suggests a very different dynamic at work."), *vacated*, 133 S. Ct. 2885 (2013); *see also* Mot. to Compel at 3-5.

[5] The fact that the United States has not yet begun taking depositions does not demonstrate any lack of diligence. Defs. Opp. at 3. Plaintiffs have noticed depositions of state officials concerning implementation of SB 14. *See* Notice of Deposition of the Office of the Texas Secretary of State (Ex. 11); Notice of Deposition of the Texas Department of Public Safety (Ex. 12); Notice of Deposition of the Office of the Texas Attorney General (Ex. 13); Notice of Deposition of the Texas Public Safety Commission (Ex. 14); Notice of Deposition of the Texas Department of Health Services (Ex. 15). The United States also deposed over a dozen Texas legislators in *Texas v. Holder*, and limited additional legislator depositions will be necessary in this case even in the absence of legislative documents to prompt further testimony. Obtaining judicial resolution of the legislative privilege issues, and recieving any documents, before beginning any legislative depositions is only reasonable. Notwithstanding Defendants' obstruction, the United States has also served interrogatories and requests for admissions and is continuing to develop fact and expert evidence to present to the Court in September. The United States has also served third party subpoenas seeking documents from 10 Texas counties.

also involve litigation in the U.S. District Courts for the Western, Northern and Eastern Districts of Texas.

### III. CONCLUSION

For the reasons set out in Plaintiffs' Joint Motion to Enter an Amended Scheduling Order and for the reasons set out above, the United States respectfully requests that this Court enter the proposed amended scheduling order attached to the instant motion. See Proposed Am. Scheduling Order (ECF No. 196-2). The additional time allotted for discovery under this schedule is necessary for Plaintiffs to provide the Court with a rigorous analysis of possession of relevant forms of identification by Texas voters, as well as other expert analysis that builds upon this fundamental question. In addition, additional time is necessary to complete the fact discovery process, particularly with regard to legislative discovery, to ensure that the record presented this Court is complete, accurate, and reliable.

Date: March 31, 2014

Respectfully submitted,

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division,
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

10