**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Corpus Christi Division**

| | |
|---|---|
| MARC VEASEY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:13-cv-00193 (NGR) |
| | ) |
| RICK PERRY, Governor of Texas, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:13-cv-00263 (NGR) |
| | ) Consolidated Case |
| STATE OF TEXAS, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:13-cv-00291 (NGR) |
| | ) Consolidated Case |
| JOHN STEEN, Secretary of State of Texas, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| BELINDA ORTIZ, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |

|  |  |
|---|---|
| v. | ) No. 2:13-cv-00348 (NGR) |
|  | ) Consolidated Case |
| STATE OF TEXAS, et al., | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

**BRIEF OF THE BIPARTISAN LEGAL ADVISORY GROUP OF THE
UNITED STATES HOUSE OF REPRESENTATIVES AS *AMICUS CURIAE***

In No. 2:13-cv-00263, Defendants are attempting to subject Non-Party the U.S. House of Representatives ("House") (and some of its Members, committees, and support offices) to discovery pursuant to Federal Rule of Civil Procedure 34 by the expedient of expansively defining Plaintiff "United States of America," in Defendants' discovery requests, to include the House (and some of its Members, committees, and support offices). Defendants' theory appears to be that, by so defining the plaintiff in their discovery requests, they can compel the Department of Justice ("DOJ"), as counsel for Plaintiff, to obtain responsive records from the House (and some of its Members, committees, and support offices).[1]

*Amicus curiae* the Bipartisan Legal Advisory Group of the United States House of Representatives submits this brief to register the House's objection to Defendants' position on this discrete discovery issue. (The House takes no position on the merits of the underlying claims being asserted in No. 2:13-cv-00263 or in any of the consolidated actions.) As we explain below, Defendants' effort to obtain Rule 34 discovery from the House (including its Members, committees, and support offices) fails for at least three reasons. *First*, the United States of

---

[1] As best we can tell, Defendants are not contending that their expansive definition of the plaintiff in their Rule 34 requests has the effect of joining the House (or any of its Members, committees, or support offices) as Plaintiffs in No. 2:13-cv-00263, separate and apart from Plaintiff United States of America. Indeed, insofar as we are aware, Federal Rule of Civil Procedure 19(a)(2) provides the only procedural mechanism by which a non-party can be joined as a plaintiff against its will. Defendants have not invoked Rule 19 which, in any event, is not applicable to the House (or its Members, committees, or support offices) here.

2

America, as the plaintiff in No. 2:13-cv-00263, is the federal government in its Executive Branch manifestation only; it is not, and does not include, the Legislative Branch of the federal government – or the Judicial Branch for that matter – both of which are separate and independent branches.  *See* U.S Const. arts. I-III.  Defendants cannot alter this constitutional fact by the manner in which they define the plaintiff in their discovery requests.  *Second*, the Executive Branch – both practically and as a matter of law – does not have possession, custody, or control of the records of the House (or its Members, committees, and support offices), which means that DOJ has zero ability to compel the House (or any of its Members, committees, and support offices) to produce records responsive to Defendants' Rule 34 discovery requests.  *Third*, if Defendants need to seek discovery from the House (or any of its Members, committees, or support offices), they may do so pursuant to Federal Rule of Civil Procedure 45, which is a satisfactory – and, more importantly, a procedurally proper – method of seeking such discovery.

## BACKGROUND

The issue now before the Court has developed as follows.

1. <u>Plaintiff's Document Request to Defendants</u>.  Plaintiff United States cast the first stone in this particular discovery dispute by seeking, on November 26, 2013, document discovery from Defendants.  *See* United States' First Set of Reqs. for Produc. of Docs. (docketed Feb. 24, 2014; document dated Nov. 26, 2013) (ECF 182-1) ("Plaintiff's RFP").  Plaintiff's RFP reflected DOJ's interest in obtaining state legislative records, *see id.* Reqs. 4, 41, 42, and we understand DOJ advised Defendants that it intended Plaintiff's RFP to apply to the state legislature and state legislators, a position it confirmed in a subsequent motion to compel.  *See* United States' Mot. to Compel the Produc. of Leg. Docs. at 1-2 (Feb. 11, 2014) (ECF No. 162) ("Plaintiff's Motion to Compel").

3

2. <u>Defendants' First Document Request to Plaintiff</u>.  On December 4, 2013, Defendants first sought document discovery from the United States.  *See* Defs.' First Req. for Produc. to Pl. United States of Am. (docketed Feb. 21, 2014; document dated Dec. 4, 201[3]) (ECF 180-2) ("Defendants' First RFP").[2]  Defendants' First RFP was directed to various Executive Branch agencies, but not to Congress, any Member of Congress, or any congressional entity, and the terms "you" and "your" were defined in a manner that excluded Congress, its Members, and congressional entities.  *Id.* Definitions ¶ 3.

3. <u>December 19, 2013 Meet and Confer</u>.  Subsequently, during a meet and confer session – to which the House and its counsel were not privy – Defendants redefined the terms "you" and "your" in Defendants' First RFP to include "the United States Congress."  Letter from G. David Whitley, Office of Tex. Att'y Gen., to Jennifer L. Maranzano, U.S. Dep't of Justice, at 2 (docketed Feb. 21, 2014; document dated Dec. 20, 2013) (ECF 180-3).

4. <u>Defendants' Second Document Request to Plaintiff</u>.  On February 3, 2014, Defendants again sought document discovery from the United States.  *See* Defs.' Second Req. for Produc. to Pl. United States of Am. (docketed Feb. 21, 2014; document dated Feb. 3, 2014) (ECF 180-4) ("Defendants' Second RFP").[3]  Defendants' Second RFP defines the terms "you" and "your" to include "the United States Congress."  *Id.* Definitions ¶ 1.

5. <u>Plaintiff's Motion to Compel</u>.  On February 11, 2014, the United States moved to compel the production of documents responsive to Plaintiff's RFP.  In that motion, as noted

---

[2] Defendants' First RFP was served on DOJ, as counsel for the "United States"; it was not served on the House, its Members, committees, support offices, or counsel.

[3] Defendants' Second RFP, like their First RFP, was served on DOJ, as counsel for the "United States"; it was not served on the House, its Members, committees, support offices, or counsel.

above, DOJ explicitly took the position that it was entitled to Rule 34 discovery from the state legislature and state legislators. *See* Pl.'s Motion to Compel at 1-2.[4]

6. Plaintiff's Motion for Protective Order. On February 21, 2014, the United States moved for a protective order with respect to Defendants' First RFP, seeking, among other things, to exclude the Legislative Branch of the federal government from the definition of "you" and "your" on the ground that Legislative Branch records were not relevant. *See* United States' Mot. for Protective Order to Limit Extent of Defs.' First Req. for Produc. of Docs. at 9-12 (Feb. 21, 2014) (ECF No. 180).

7. Defendants' Third Document Request to Plaintiff. On February 24, 2014, Defendants, for a third time, sought document discovery from the United States. *See* Defs.' Third Req. for Produc. to Pl. United States of Am. (Feb. 24 2014) ("Defendants' Third RFP"), attached as Ex. 1.[5] Defendants' Third RFP defines the terms "you" and "your" to include "the United States Congress," certain Senate entities, "the United States House of Representatives Judiciary Committee," and "the Office of the Legislative Counsel of the United States House of Representatives."[6] *Id.* Definitions ¶ 1.

---

[4] The House does not take a position on whether the state legislature or state legislators may be subjected to Rule 34 discovery in No. 2:13-cv-00263 as a matter of state or federal law. That issue is legally separate and distinct from the question of whether the House, its Members, committees, and/or support offices may be subjected to Rule 34 discovery here.

[5] Defendants' Third RFP, like their First and Second RFPs, was served on DOJ, as counsel for the "United States"; it was not served on the House, its Members, committees, support offices, or counsel.

[6] The Office of Legislative Counsel is established by statute as part of the House, *see* 2 U.S.C. § 281, and is charged with "advis[ing] and assist[ing] the House . . . and its committees and Members, in the achievement of a clear, faithful, and coherent expression of legislative policies," *id.* § 281a; *see also id.* § 281b (describing particular functions of office).

8. <u>March 11, 2014 Meet and Confer</u>. During a second meet and confer session on March 11, 2014 – to which the House and its counsel again were not privy – Defendants redefined the terms "you" and "your" in Defendants' First and Second RFPs to mean 19 current and former House Members and three United States Senators. *See* Letter from G. David Whitley, Ass't Dep'y Att'y Gen., Office of Tex. Att'y Gen., to Elizabeth S. Westfall, Trial Att'y, U.S. Dep't of Justice, at 2 (Mar. 11, 2014), attached as Ex. 2.

9. <u>Defendants' Supplemental Response to Motion to Compel</u>. On March 13, 2014, apparently in response to a direction from the Court, Defendants filed a supplemental response to Plaintiff's Motion to Compel. *See* Defs.' Supplemental Br. on the Nonparty Status of State Legislators (Mar. 13, 2014) (ECF No. 199). This supplemental brief explicitly linked Defendants' efforts to subject Congress to Rule 34 discovery to the United States' efforts to subject the state legislature and state legislators to Rule 34 discovery:

> If DOJ insists upon compelling Texas legislators' attendance at deposition, or seeking access to their privileged documents, the legislators must be subpoenaed, or else this Court must recognize that current Members of Congress are Plaintiffs in this case because "the United States" has sued in federal court.

*Id.* at 8.

10. <u>Defendants' Opposition to Motion for Protective Order</u>. On March 17, 2014, Defendants filed their opposition to Plaintiff's Motion for Protective Order; in that opposition, Defendants were even more explicit about the linkage. Noting that DOJ recently had issued subpoenas to certain members of the Texas legislature, Defendants stated:

> If the United States now agrees that individual members of the Texas Legislature are not parties in this case simply because the State of Texas is a Defendant, the Defendants would likewise agree that members of Congress are not parties. . . .

\*   \*   \*

> If this Court permits agents of the U.S. government to rummage through the files of Texas Legislators, then it should likewise ask relevant members of Congress to produce any relevant evidence in their custody. . . .

Defs.' Resp. to . . . Mot. for Protective Order at 6 n.2, 8 (Mar. 17, 2014) (ECF No. 200).

## ARGUMENT

While Defendants' candor regarding its effort to use the House to try to influence the outcome of a discovery fight with Plaintiff on a similar – albeit legally distinct – issue is admirable, its legal position is incorrect and the Court should reject it.

### I.  Plaintiff United States of America Is the Executive Branch of the Federal Government Only.

The Constitution establishes three separate and independent branches of the federal government, among other reasons, "in Order . . . to secure the Blessings of Liberty."  U.S. Const. pmbl.  This separation of powers principle, which is absolutely vital to our system of governance, "was not simply an abstract generalization in the minds of the Framers:  it was woven into the documents that they drafted in Philadelphia in the summer of 1787." *INS v. Chadha*, 462 U.S. 919, 946 (1983) (quoting *Buckley v. Valeo,* 424 U.S. 1, 124 (1976)); *see also, e.g.*, The Federalist No. 48 (James Madison) ("[T]he powers properly belonging to one of the departments [i.e., branches] ought not to be directly and completely administered by either of the other departments.  It is equally evident, that none of them ought to possess, directly or indirectly, an overruling influence over the others, in the administration of their respective powers.").

Case No. 2:13-cv-00263 was initiated pursuant to specific statutory authorization:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited [by certain federal voting rights provisions], the Attorney General may institute *for the United States, or in the*

7

> *name of the United States*, an action for preventive relief, including an application for a temporary or permanent injunction, restraining order, or other order, and including an order directed to the State and State or local election officials . . . .

42 U.S.C. § 1973j(d) (emphasis added).  That statutory authorization – and DOJ's action in filing the lawsuit in the name of the United States of America – is rooted constitutionally in the Take Care Clause:  "[The President] shall take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  Accordingly, the prosecution of this action, by its very nature, is a function and responsibility of the Executive Branch of the federal government only.  *See generally Morrison v. Olson*, 487 U.S. 654, 691 (1988) (law enforcement functions undertaken by Executive Branch officials); *United States v. Tingey*, 30 U.S. (5 Pet.) 115, 122 (1831) (in faithfully executing laws, "[President] is bound to avail himself of every appropriate means not forbidden by law").

It follows that the Legislative Branch (and the Judicial Branch) of the federal government are not part of the "United States of America" insofar as that term refers to the plaintiff in No. 2:13-cv-00263.  Defendants cannot alter this basic constitutional reality simply by asserting in their discovery papers that the plaintiff includes the Congress (or the House Judiciary Committee, or the House Office of Legislative Counsel, or 19 current and former House Members).

This proposition is so basic and so fundamental that few courts have had occasion to say it.  One that has is the district court in *United States v. Davis*, 140 F.R.D. 261 (D.R.I. 1992).  In that case, which is directly on point, the "United States of America" sued civilly under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 to recover funds expended by the federal government cleaning a Superfund site.  The defendants there, like Defendants here, sought to force DOJ to obtain House documents by conceptualizing "the

8

plaintiff, the United States, in very broad terms." *Id*. at 263. The district court flatly rejected the defendants' efforts to use Rule 34 in this manner:

> [The] defendants want information from a subcommittee of the House of Representatives. This is not a question of a different executive agency; this in fact is an entirely separate branch of the federal government. The three branches of the United States government function as separate and distinct entities. While it is true that the branches are not hermetically sealed, there must be a certain amount of independence between the three.

*Id.* The district court went on to point out that:

> The existence of the Speech [or] Debate Clause [U.S. Const. art. I, § 6, cl. 1] itself indicates the separate identity Congress has under the Constitution. No executive agency could claim such a privilege. In our case, neither the DOJ nor the EPA could advance Speech [or] Debate as a privilege, and yet the . . . defendants feel that the Subcommittee and the plaintiff are one and the same. This Court cannot agree.

*Id.*; *see also In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 117 F.R.D. 392, 393 (N.D. Tex. 1987) (United States, a party to the litigation, not required to produce materials from National Transportation Safety Board because of its status as independent federal agency); *cf. United States v. Weidman*, 572 F.2d 1199, 1207 (7th Cir. 1978) ("In speaking of statements 'in the possession of the United States,' we understand the statute [Jencks Act, 18 U.S.C. § 3500] to require production only of statements possessed by the prosecutorial arm of the federal government." (quoting *United States v. Dansker*, 537 F.2d 40, 62 (3d Cir. 1976))); *United States v. Trie*, 21 F. Supp. 2d 7, 25 n.17 (D.D.C. 1998) ("The Congress is not an 'agency,' and the DOJ has no obligation under *Brady* [*v. Maryland*, 373 U.S. 83 (1963),] to disclose information in the possession of Congress that is not also in the possession of the DOJ or [another Executive Branch agency]."); *United States v. Ehrlichman*, 389 F. Supp. 95, 97 (D.D.C. 1974) (both Jencks Act and *Brady* inapplicable because "testimony is not in the possession of the Government . . .

9

since the [House] Subcommittee is neither an investigative or a prosecutorial arm of the Executive branch nor an agency of the Government in any way involved in the offense or related transactions").

## II. The Executive Branch Does Not Have Possession, Custody, or Control of Congressional Records.

Rule 34 obligates a party to produce only those records in the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "[F]ederal courts have universally held that documents are deemed to be within the possession, custody, or control of a party for purposes of Rule 34 if the party has actual possession, custody, or control of the materials, or has the legal right to obtain the documents on demand." *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992) (emphasis omitted).[7] Here, with respect to congressional records, the Executive Branch has neither.

1. <u>No Actual Possession, Custody, or Control</u>. We can assure the Court – as has DOJ, *see* United States' Reply Mem. in Supp. of Its Mot. for Protective Order at 2, 5 (Mar. 25, 2014) (ECF No. 207-1) – that the Executive Branch does not have *actual* possession, custody, or control of the records of the House (or of its Members, committees, or support offices). *See, e.g.*,

---

[7] *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 566 (D. Kan. 1994) (same); *Scott v. Arex, Inc.,* 124 F.R.D. 39, 41 (D. Conn. 1989) (same); *Haseotes v. Abacab Int'l Computers, Inc.*, 120 F.R.D. 12, 14 (D. Mass. 1988) (same); *Buckley v. Vidal,* 50 F.R.D. 271, 274 (S.D.N.Y. 1970) (same); *see also, e.g.*, *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand."); *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-cv-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) ("[D]ocuments are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the suit.").

10

*Davis*, 140 F.R.D. at 263 ("Quite simply, the [congressional] documents . . . are not in the possession, custody, or control of the [Executive Branch plaintiff].").[8]

This is confirmed by numerous cases in which the Executive Branch has sought records from the Legislative Branch through some form of compelled process directed to the Member or congressional entity from whom or which it sought the records. *See, e.g.*, *In re Grand Jury Subpoena*, 584 F.3d 175, 177 (4th Cir. 2009) (federal grand jury issued subpoena to congressional staffer for congressional documents); *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1201 (D.C. Cir. 2009) (federal grand jury issued subpoenas to House Member's attorneys for congressional documents); *United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 655-56, 660-62 (D.C. Cir. 2007) (DOJ executed search warrant on Member's congressional office and seized congressional records); Order at 1, *United States v. McDade*, No. 96-1508 (3d Cir. July

---

[8] The House, by rule, has established policies to govern the maintenance and disposition of its records. *See, e.g.*, Rules VII.1, VIII, Rules of the House of Representatives, 113th Cong. (2013), *available at* http://clerk.house.gov/legislative/house-rules.pdf. Rule VII distinguishes between the records of committees and House officers, on the one hand, and Members' individual congressional office records, on the other. The former belong to the House and are subject to House rules regarding preservation, access, and archiving. *See* Rule VII.1. The latter belong to each Member individually. *See* Records Mgmt. Manual for Members, Office of Art & Archives, Office of the Clerk, U.S. House of Representatives 3 (2014) ("[T]he records generated by the Member's office belong to the Member."), attached as Ex. 3; H.R. Rep. No. 100-1054, at 14 (1988) ("Members' papers have been regarded as their personal property . . . ."); H.R. Rep. No. 99-994, at 5 (1986) (same). House Rule VIII governs the handling of "judicial or administrative subpoena[s] or judicial order[s] directing . . . the production or disclosure of any document relating to the official functions of the House." House Rule VIII.1.

These rules were adopted pursuant to the Rulemaking Clause, U.S. Const. art. I, § 5, cl. 2, which is a "broad grant of authority," *Consumer's Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1343 (D.C. Cir. 1975), *cert. denied*, 423 U.S. 1051 (1976), that sits "[a]t the very core of our constitutional separation of powers," *Walker v. Jones*, 733 F.2d 923, 938 (D.C. Cir.) (MacKinnon, J., concurring in part and dissenting in part), *cert. denied*, 469 U.S. 1036 (1984). They, therefore, "have the force of law." *Shape of Things to Come, Inc. v. Cnty. of Kane*, 588 F. Supp. 1192, 1193 (N.D. Ill. 1984). And ruling that House or House Member records are subject to some control by the Executive Branch would unconstitutionally intrude upon the House's rulemaking powers. *See United States v. Ballin*, 144 U.S. 1, 5 (1892).

12, 1996) ("*McDade* Order") (DOJ issued trial subpoena to House committee for congressional records), attached as Ex. 4. If the Executive Branch had actual possession, custody, or control of congressional records, none of these cases would have arisen because the Executive Branch officials simply would have taken the congressional records they wanted, rather than resorting to subpoenas and search warrants (and enduring the ensuing litigation).

    2. <u>No Legal Right to Obtain</u>. The Executive Branch also lacks any legal right to obtain congressional records on demand. This is confirmed by Defendants' (i) failure to identify any authority that purports to vest the Executive Branch with any such legal right; (ii) by basic separation of powers principles, *see supra* Argument, Section I; and, most importantly, (iii) by the Speech or Debate Clause ("for any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place").

    The Framers included the Speech or Debate Clause in the Constitution to "insure that the legislative function the Constitution allocates to Congress may be performed independently." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). "[T]he 'central role' of the Clause is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'" *Id.* (quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972), and *United States v. Johnson*, 383 U.S. 169, 181 (1966)).[9] Because "the guarantees of th[e] Clause are vitally important to our system of government," they "are entitled to be treated by the courts

---

[9] *See also Youngblood v DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003) ("Ensuring a strong and independent legislative branch was essential to the framers' notion of separation of powers . . . . The Speech or Debate Clause is one manifestation of this practical security for protecting the independence of the legislative branch . . . ."); *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980) ("Like the Speech or Debate Clause, the doctrine of separation of powers serves as a vital check upon the Executive and Judicial Branches to respect to the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen.").

with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). As a result, the Clause's protections are "absolute," *Eastland*, 421 U.S. at 501, 503, 507, 509-10 & n.16; *Gravel*, 408 U.S. at 623 n.14, and either unwaivable or virtually so, *see, e.g.*, *United States v. Helstoski*, 442 U.S. 477, 490-91 (1979) ("Assuming that [waiver] is possible, we hold that waiver can be found only after explicit and unequivocal renunciation of the protection. The ordinary rules for determining the appropriate standard of waiver do not apply in th[e Speech or Debate] setting.").

Among the absolute protections provided by the Clause is a non-disclosure privilege that not only protects Members against being compelled to testify about legislative matters, but also prevents them from being compelled to produce legislative records – including when it is the Executive Branch attempting to do the compelling. *See, e.g.*, *In re Grand Jury Subpoenas*, 571 F.3d at 1203 (quashing grand jury document subpoenas on Speech or Debate grounds); *Rayburn House Office Bldg.*, 497 F.3d at 655-56, 660-62 (holding that Executive Branch violated Clause when it seized Member's congressional records pursuant to search warrant); *McDade* Order (Ex. 4) at 1-2 (quashing DOJ trial subpoena for documents on Speech or Debate grounds); *see also Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 423 (D.C. Cir. 1995) (quashing civil document subpoena on Speech or Debate grounds); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859-61 (D.C. Cir. 1988) (same); *Gov't of the Virgin Islands v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985) (same).

In short, the Executive Branch cannot have a legal right to obtain congressional records on demand in the same constitutional universe inhabited by the Speech or Debate Clause.[10]

---

[10] Needless to say, the Speech or Debate Clause would not just disappear, even if Defendants succeeded in forcing DOJ to attempt to obtain congressional records. All that Defendants'
(*Continued . . .*)

### III.     Defendants Can Utilize Rule 45 to Seek Discovery from the House.

Finally, this Court should reject Defendants' effort to subject the House (and some of its Members, committees, and support offices) to Rule 34 discovery because Defendants have available to them a procedurally proper mechanism by which to conduct such discovery (if they really believe they need to seek access to congressional records).  Defendants informally can request congressional records, and, if the records they want are not forthcoming, they can issue subpoenas pursuant to Rule 45.  If that occurs here, the House recipients of any such subpoenas will respond as and when appropriate.

### CONCLUSION

For all the foregoing reasons, the Court should direct that the House (including its Members, committees, and support offices) is not subject to Rule 34 discovery in No. 2:13-cv-00263.

The House does not request argument time on this matter, although counsel is willing to appear – either personally or by telephone – if the Court believes that would be helpful.

---

success would engender is needless complication and confusion regarding the manner in which Speech or Debate privilege assertions would be raised and litigated.  And avoiding such complication and confusion is yet another reason why the Court should reject Defendants' misinterpretation of Rule 34.  *Cf. United States v. Granderson*, 511 U.S. 39, 47 n.5 (1994) (rejecting statutory interpretation that produced absurd result); *United States v. M/V Big Sam*, 693 F.2d 451, 455 (5th Cir. 1982) (same); *J.T. Thorpe Co. v. Am. Motorists*, No. 02-cv-4598, 2003 WL 23323005, at *5 (S.D. Tex. June 9, 2003) ("The Supreme Court has directed that it is the courts' obligation to construe statutes to avoid absurd results, if alternative interpretations are available and consistent with the legislative purpose." (brackets and quotation marks omitted)).

Respectfully submitted,

*/s/ Kerry W. Kircher*
KERRY W. KIRCHER, General Counsel
ATTORNEY-IN-CHARGE, DC Bar # 386816
WILLIAM PITTARD, Deputy General Counsel
TODD B. TATELMAN, Assistant Counsel
MARY BETH WALKER, Assistant Counsel
ELENI M. ROUMEL, Assistant Counsel
ISAAC B. ROSENBERG, Assistant Counsel

OFFICE OF GENERAL COUNSEL[11]
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Bldg.
Washington, D.C. 20515
202/225-9700 (phone)
202/226-1360 (fax)

*Counsel for the Bipartisan Legal Advisory Group of the United States House of Representatives*

March 31, 2014

---

[11]  Attorneys in the Office of General Counsel are "entitled, for the purpose of performing the counsel's functions, to enter an appearance in any proceeding before any court of the United States . . . without compliance with any requirements for admission to practice before such court." 2 U.S.C. § 130f(a).

## CERTIFICATE OF SERVICE

I certify that on March 31, 2014, I filed the foregoing Brief of the Bipartisan Legal Advisory Group of the United States House of Representatives as *Amicus Curiae* by CM/ECF, which I understand has notified by electronic mail all counsel of record.  Also, on March 31, 2014, I served the foregoing by first-class mail, postage prepaid, on the following non-CM/ECF user:

Robert M. Allensworth
B14522
BMRCC 251 N IL 37 S
Ina, IL  62846-2419
*Pro se*

*/s/ William Pittard*
William Pittard