UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 2:13-CV-193 |
| § | |
| RICK PERRY, *et al*, § | |
| § | |
| Defendants. § | |

## ORDER ON MOTION TO COMPEL

Before the Court is "United States' Motion to Compel the Production of Legislative Documents" (D.E. 162). Defendant, the State of Texas (Texas), objects to the requested discovery and defends the motion on the grounds that the United States's request is procedurally improper and the documents sought are protected by the legislative and attorney-client privileges. D.E. 183, 190, and 199. For the reasons set forth below, the United States' motion to compel is **GRANTED IN PART and DENIED IN PART**.

**I.     The United States is not required to serve individual legislators or the Texas Attorney General's Office with Rule 45 subpoenas for documents that are in Texas's possession.**

The parties disagree about the proper procedural vehicle for conducting discovery of legislative documents. The United States seeks to effect discovery pursuant to FED. R. CIV. P. 34 based on its claim that the documents sought are in the possession, custody, or control of Texas—a party to this litigation. Texas contends that Texas legislators are non-parties to this litigation so the United States must serve Rule 45 subpoenas on the

individual state legislators who are the authors or recipients of the documents the United States seeks. The Texas Office of the Attorney General (OAG) received the documents at issue from the legislators in connection with prior litigation between Texas and the United States involving the same voting rights claims now before this Court.

At a hearing held April 1, 2014, the Court announced its finding that although neither the OAG nor the state legislators are parties to the present lawsuit, the documents at issue are in Texas's possession, and because Texas is a party to the lawsuit, any documents in its possession are discoverable pursuant to Rule 34.[1,2] To the extent the United States seeks documents that are not in Texas's possession, they must subpoena the individual legislators for those materials under Rule 45.

The Court further ruled that the Texas Legislative Council (TLC) is an entity separate and apart from the State of Texas. Consequently, any documents of the TLC that are not already in the possession, custody, or control of Texas must be obtained through a Rule 45 subpoena. However, if documents are already in the possession of Texas, they may be obtained pursuant to Rule 34.

**II. Although a qualified legislative privilege exists, the United States's interest is of sufficient importance to compel the production of the requested legislative documents and ESI in a limited manner.**

---

[1] "A party may serve on any other party a request . . . to produce . . . items in the responding party's possession, custody, or control." FED R. CIV. P. 34(a)(1). As Plaintiffs point out, "the phrase 'possession, custody or control' is in the disjunctive and only one of the numerated requirements need be met." D.E. 189, p. 13 (citing *Soto v. City of Concord*, 162 F.R.D. 603, 619. (N.D. Cal. 1995)).

[2] The documents are discoverable subject to any applicable privileges, some of which are discussed below.

### A. The legislative privilege exists, but it is qualified.

The Supreme Court of the United States articulated a testimonial privilege for state legislators. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977). It severely limited, but did not foreclose, the possibility of piercing the privilege for state legislators in discriminatory-intent claims. *Id*. Subsequent cases have reinforced the qualified nature of the legislative privilege.[3] Accordingly, this Court recognizes the existence of a state legislative privilege but declines to adopt Texas's characterization of that privilege as absolute.

### B. Texas must produce documents and ESI in its possession for legislators who have waived the privilege.

The legislative privilege is not applicable to the documents of any legislator who voluntarily waives the privilege. Accordingly, the legislative privilege is waived as to the 37 legislators who voluntarily waived it. The privilege is also deemed to be waived as to the 17 legislators[4] who did not respond to defense counsel's inquiry regarding the assertion of the privilege.[5] Documents for these 54 legislators are subject to disclosure, and Texas is ordered to turn them over by April 8, 2014.

---

[3] *See Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95-96 (S.D.N.Y. 2003) (stating that legislative privilege, unlike legislative immunity, is not absolute); see also *Hobert v. City of Stafford*, 784 F.Supp.2d 732, 763 (S.D. Tex. 2011) (finding that a qualified privilege was appropriate for local legislators); *U.S. v. Gillock*, 445 U.S. 360, 373 ("Where important federal interests are at stake, such as the enforcement of federal statutes, comity yields.").

[4] Defense counsel has indicated that one of the legislators could not respond due to illness. D.E. 219-4, p. 2. The Court declines to make a determination on whether the privilege is waived as to that individual legislator at this time.

[5] The individual legislators are listed in the exhibits to D.E. 219.

### C. The balance of the privilege factors weighs in favor of disclosure.

According to Texas, 189 legislators have asserted the legislative privilege. As a qualified privilege, there is an established framework of five factors that courts have weighed in determining whether the legislative documents must be disclosed: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Perez v. Perry*, 2014 WL 106927, at *2 (S.D. Tex. Jan. 8, 2014).

"In considering these factors, the court's goal is to determine whether the need for disclosure and accurate fact finding outweighs the legislature's 'need to act free of worry about inquiry into [its] deliberations.'" *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011) (citing *ACORN v. County of Nassau*, 2009 WL 2923435, at *7 n. 2). On one hand, the importance of eliminating racial discrimination in voting—the bedrock of this country's democratic system of government—cannot be overstated. On the other hand, ensuring that legislators maintain the privilege of confidential communication with their aides, staff members, and other legislators in the discharge of their duties is vital to the legislative process. In seeking to strike the proper balance, this Court finds the five-factor analysis applied in *Perez* and *Committee for a Fair & Balanced Map* to be the appropriate rubric for determining when the legislative privilege should give way to the need for disclosure in **discovery**. As discussed below, the Court reserves the question whether the legislative

4 / 8

privilege should be pierced—making the products of discovery **admissible**—until the time of trial.

The Court finds that the first, third, and fourth factors weigh strongly in favor of disclosure. The evidence the United States seeks to compel is highly relevant to its claim because it bears directly on whether state legislators, contrary to their public pronouncements, acted with discriminatory intent in enacting SB 14. The federal government's interest in enforcing voting rights statutes is, without question, highly important, as noted above. Further, the state government's role is direct. The motive and intent of the state legislature when it enacted SB 14 is the crux of this Voting Rights Act case.

With respect to the second factor, the availability of other evidence, the United States insists that a concerted effort on behalf of SB 14's key supporters to coordinate talking points and refuse to publicly engage with the concerns of minority legislators about the bill's impact on minority populations has resulted in a situation where the documents sought are the only existing evidence of candid discussions about SB 14. Texas cautions that indulging the United States's assumption that the legislators' talking points do not reflect the true intent of the legislature is a dangerous activity and insists that *Arlington Heights* requires the United States to look to publicly available sources (e.g., public debates, legislative history, and floor speeches) to establish any discriminatory intent claim and not to what the individual legislators said amongst each other.

While recognizing that candid discussions among legislators may not be the only evidence that would allow the United States to prove its discriminatory intent claim, the Court holds that the second factor weighs slightly in favor of disclosure given the practical reality that officials "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority."[6]

Finally, with regard to the fifth factor—the possibility of future timidity among legislators—courts have long recognized that the disclosure of confidential documents concerning intimate legislative activities should be avoided.[7] The United States's characterization of the harm as "speculative" does not undermine the importance of preserving confidentiality of communication among legislators, their aides, and their staff members. Accordingly, the Court holds that the final factor weighs against disclosure.

The Court finds that the overall balance of factors weighs in favor of disclosure on a confidential basis. In serious litigation about important issues, the need for accurate fact finding is great. However, the extent to which inquiry into such sensitive matters is permitted should correspond with the degree to which the intrusion is absolutely necessary. Given the sensitive nature of the documents sought and the importance of preserving confidential communication among legislators, the Court is not inclined to fully pierce the legislative privilege at this point by authorizing complete and public disclosure of the documents and ESI at issue.

---

[6] *Smith v. Town of Clarkton N.C.*, 682 F.2d 1055, 1064 (4th Cir. 1982).

[7] *See Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *9 (citing *Rodriguez*, 280 F.Supp.2d at 102; *Kay v. City of Rancho Palos Verdes*, 2003 WL 25294710, at *14 (C.D. Cal. Oct. 10, 2003)).

However, because of the unique nature of this case, the significance of the subject matter of this litigation, and the importance of developing an accurate factual record, Texas is ordered to produce to the United States, under seal, all of the documents in its possession, custody, or control that it has withheld on the basis of legislative privilege by April 8, 2014. The Court concludes that the applicability of the privilege to specific, relevant documents is best addressed at the trial phase of this lawsuit.

The documents are to be designated as "highly confidential" and access is restricted to (1) attorneys-of-record, their associates, staff, and assistants working on this litigation, (2) experts and experts' staff, and (3) the Court.[8] Pursuant to FED. R. EVID. 502(d), the Court orders that the privilege protection is not waived by disclosure under this provision. If any party wishes to introduce a sealed document at trial, it must raise the issue with the Court beforehand. The Court will then decide whether to fully pierce the legislative privilege and admit the documents.

### III. Parties are to confer regarding the applicability of the attorney-client privilege to certain documents.

At the April 1st hearing, the Court advised Texas and the OAG that the attorney-client privilege would not automatically attach to all documents previously provided to them by the state legislators. In light of this ruling and the rulings set forth above, the parties are ordered to meet and confer regarding the documents Texas claims are protected from disclosure by the attorney-client privilege.

---

[8] *See* Consent Protective Order, D.E. 105, p. 6, ¶ 2.1.

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS IN PART** the United States's Motion to Compel, (D.E. 162), and **ORDERS** that the documents previously withheld on the basis of legislative privilege be produced for discovery under seal, marked "highly confidential" by April 8, 2014. The Court **DENIES IN PART** any request in the motion to pierce the legislative privilege in its entirety and reserves that question until the time of trial.

ORDERED this 3rd day of April, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE