# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, JANE HAMILTON, SERGIO DELEON, FLOYD J. CARRIER, ANNA BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS, JOHN MELLOR-CRUMLEY, PEGGY HERMAN, EVELYN BRICKNER, GORDON BENJAMIN, KEN GANDY, LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), AND DALLAS COUNTY, TEXAS, *Plaintiffs,* <br> v. <br><br> RICK PERRY, Governor of Texas; and JOHN STEEN, Texas Secretary of State, *Defendants.* | CIVIL ACTION NO. 2:13-CV-193 (NGR) [Lead case] |
| UNITED STATES OF AMERICA, *Plaintiffs,* <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, IMANI CLARK, AURICA WASHINGTON, CRYSTAL OWENS, AND MICHELLE BESSIAKE, *Plaintiff-Intervenors,* <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, HIDALGO COUNTY, AND MARIA LONGORIA BENAVIDES, *Plaintiff-Intervenors,* <br> v. <br><br> STATE OF TEXAS, JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, *Defendants.* | CIVIL ACTION NO. 2:13-CV-263 (NGR) [Consolidated case] |

|  | ) |  |
| --- | --- | --- |
| TEXAS STATE CONFERENCE OF NAACP BRANCHES; and the MEXICAN AMERICAN LEGISLATIVE CAUCUS OF THE TEXAS HOUSE OF REPRESENTATIVES, | ) ) ) ) ) ) |  |
| *Plaintiffs,* | ) |  |
| v. | ) ) ) | CIVIL ACTION NO. 2:13-CV-291 (NGR) [Consolidated case] |
| JOHN STEEN, in his official capacity as Secretary of State of Texas; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, *Defendants.* | ) ) ) ) ) |  |
|  | ) |  |
| BELINDA ORTIZ, LENARD TAYLOR, EULALIO MENDEZ JR., LIONEL ESTRADA; ESTELA GARCIA ESPINOSA, ROXANNE HERNANDEZ, LYDIA LARA, MARGARITO MARTINEZ LARA, MAXIMINA MARTINEZ LARA, AND *LA UNION DEL PUEBLO ENTERO, INC.,* | ) ) ) ) ) ) ) ) ) |  |
| *Plaintiffs,* | ) |  |
| v. | ) ) | CIVIL ACTION NO. 2:13-CV-348 (NGR) |
| STATE OF TEXAS; JOHN STEEN, in his Official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, | ) ) ) ) ) ) | [Consolidated case] |
| *Defendants.* | ) ) |  |

## DEFENDANTS' <span style="color:red">FIRST AMENDED</span> MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS RESPONSIVE TO THE DEFENDANTS' FIRST AND SECOND REQUESTS FOR PRODUCTION TO THE UNITED STATES

The Defendants respectfully seek an order from the Court compelling the United States to provide the State with documents and other electronically stored information delineated in Defendant's First Request for Production to Plaintiff

2

United States and in Defendant's Second Request for Production to Plaintiff United States. *See* Exhibit 1, (Defendant's First Request for Production to Plaintiff United States of America); Exhibit 2 (Defendant's Second Request for Production to Plaintiff United States of America). In response to the Defendants' requests, the United States objected to producing documents responsive to requests claiming privileges including a common interest doctrine and an investigatory and law enforcement privilege. *See* Exhibit 3 (Plaintiff United States' Responses and Objections to Defendants' First Request for Production to Plaintiff United States of America) at 5-6; Exhibit 4 (Plaintiff United States' Responses and Objections to Defendants' Second Request for Production to Plaintiff United States of America) at 5-6, 12.  The Defendants are unable to assess the United States' privilege claims in its response to Defendant's First Request for Production because the United States produced a privilege log that failed to meet the specificity requirements under Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

Defendants have gone to great lengths to confer with the United States about the deficiencies plaguing the United States' privilege log, in an effort to reach a resolution without the Court's involvement.  Unfortunately, Defendants are now left with no choice but to compel the production of the documents at issue.  Defendants initially notified the United States that its privilege log related to its Responses and Objections to Defendants' First Requests for Production was incomplete on February 20, 2014 and asked the United States to confirm whether or not its privilege log was, in fact, a final version for the documents produced with its

3

Responses and Objections to Defendants' First Requests for Production.  Exhibit 5 (Letter from David Whitley, counsel for Defendants, to Bruce Gear, counsel for the United States, Feb. 20, 2014).   Furthermore, in a phone call on February 24, 2014, Defendants expressed concern that the United States' entire privilege log fails to comply with the parties' Agreement Concerning Production Format, and in an email on March 27, 2014, Defendants reiterated this concern.  Exhibit 6 (Email from David Whitley, counsel for Defendants, to Elizabeth Westfall, counsel for the United States, March 27, 2014).  Again, on March 28, 2014, Defendants conferred with the United States about the United States' privilege log, and even provided the United States with an early draft of this motion that specified the deficiencies in the log and an opportunity to correct these deficiencies.  Exhibit 7 (Email from David Whitley, counsel for Defendants, to Elizabeth Westfall, counsel for the United States, March 28, 2014).

Unfortunately, however, the United States failed to take advantage of this generous opportunity and instead provided an amended privilege log with minimal improvements.  Exhibit  8 (Letter from Elizabeth Westfall, counsel for the United States, to David Whitley, counsel for Defendants, April 1, 2014) & Exhibit 9 (Amended Privilege Log of Plaintiff United States, for United States' Responses to Defendant Texas First Request for Production Served on Plaintiff).  While the United States addressed a few of the deficiencies in its original privilege log, the United States' amended privilege log continues to not only fall short of the

specificity requirements under Federal Rule of Civil Procedure 26(b)(5)(A)(ii), but also the agreed terms of the parties' Agreement Concerning Production Format.

The United States' assertions of these privileges are unfounded, and its failure to respond to the Defendants' discovery requests is not justified. The Defendants have raised these issues with the United States in an attempt to resolve these issues without involving the court, but the parties have failed to resolve the matter. As a result, the Defendants, under Federal Rule of Civil Procedure 37, move for an order compelling the United States to produce the documents and electronically stored information requested in Defendant's First and Second Requests for Production to Plaintiff United States of America.  In the alternative, the Defendants request that the documents at issue here be produced in a way similar to how this Court has already ordered the parties to conduct discovery of legislatively privileged documents in the possession of the Defendants.  That is, if the Court is unable to resolve the privilege issues concerning documents that are responsive to the Defendants' requests for production, the Court should order that the documents be produced subject to the protective order so that the Defendants can identify those documents that require this Court's further attention.

## I.    LEGAL STANDARD

Under the Federal Rules, a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection…if…a party fails to respond to that inspection will be permitted—or fails to permit inspection—as requested under Rule

34." FED. R. CIV. P. 37(a)(3)(B). The United States, as the party asserting the privileges, possesses the burden to show the documents are privileged. FED. R. CIV. P. 26(b)(5), *U.S. v. Newell,* 315 F.3d 510, 525 (5th Cir. 2002), *In re Santa Fe Int'l Corp.*, 272 F.3d 705710 (5th Cir. 2001). The United States has failed to meet this burden.

## II. PLAINTIFF, THE UNITED STATES, HAS ASSERTED IMPROPER OBJECTIONS TO THE DEFENDANTS' DISCOVERY REQUESTS.

Texas served the United States with its first set of Requests for Production on December 4, 2013 and its second set of Requests for Production on February 3, 2014. The United States served its responses on January 23, 2014 and on March 10, 2014, respectively, including a privilege log and a production log with is first response. In its responses, the United States made general objections and privilege assertions, including but not limited to, the attorney-client privilege, work product doctrine, deliberative process privilege, common interest doctrine, and investigatory and law enforcement privilege. Exh. 3 at 5-6; Exh. 4 at 5-6.  In short, it threw out just about every privilege in the book.  These general objections and privilege claims are improper.  The United States is required to state the specific objection or the specific privilege assertion for each request and cannot make blanket objections or blanket privilege claims. *See Ponola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) and *SEC v. First Fin. Grp. of Texas*, 659 F.2d 660, 668 (5th Cir. 1981). The United States also objected to specific requests and asserted specific privileges. These objections and privilege assertions are improper for the reasons expressed below.

6

III.    THE UNITED STATES' USE OF THE COMMON INTEREST DOCTRINE IS
        OVERBROAD AND THEREFORE IMPROPER.

The Fifth Circuit has consistently instructed district courts that the common interest doctrine is an "obstacle to truth seeking" and must be "construed narrowly to effectuate necessary consultation between legal advisers and clients." *Santa Fe, 272 F.3d at 710*; *In re Tinsel Grp., S.A.*, No. H-13-2836, 2014 WL 243410, at *3 (S.D. Tex. Jan. 22, 2014); *F.T.C. v. Think All Pub., L.L.C.,* No. 4:07-cv-011, 2008 WL 687456, at *1 (E.D. Tex. Mar. 11, 2008). And the Court of Appeals for the Fifth Circuit has never extended the common-interest doctrine to co-plaintiffs.  *Crosby v. Blue Cross Blue Shield of Louisiana*, No. 08-693, 2012 WL 5450040, at *4-5 (E.D. La. Nov. 7, 2012) (denying plaintiff's assertion of a "common legal interest" privilege given that plaintiff will not be "occupying a defensive posture" in the case and there is no Fifth Circuit authority extending the common interest doctrine to plaintiffs). Moreover, the common interest doctrine is not a separate privilege; rather the common-interest privilege protects otherwise privileged and confidential information that has been shared with a third-party with a common litigation interest.  *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003).

Defendants have on several occasions explained their position and the Fifth Circuit cases that support that position—initially in response to a letter from the United States that described its understanding of the doctrine and most recently when Defendants furnished the United States with an earlier draft of this motion. Although these communications made clear that Fifth Circuit law does <u>not</u> apply

the common-interest doctrine to communications between co-plaintiffs, the United States was given an opportunity to clarify its privilege log to substantiate the "predicate" privilege underlying its assertion of the common interest doctrine.  In response, documents that were previously logged as protected by the common-interest doctrine were deleted from the log.  Yet they have not been produced.  Since the Fifth Circuit does not extend the common interest doctrine to co-plaintiffs, and since the United States refuses to amend its privilege log to substantiate the predicate privilege, this Court should compel production of those documents.

The United States' assertion of the common interest doctrine is misplaced, and seeks to hide crucial documents that might shed light on the facts and reasons underlying the Plaintiffs' decision to file this lawsuit even though the Supreme Court has already determined that Voter ID laws are a lawful exercise of a state's prerogative to regulate elections.  This information becomes all the more critical when some Plaintiffs were members of the Texas Legislature and actively opposed passage of S.B. 14.  The State's First Requests for Production Nos. 9 and 10 request the following:

> (9) … all communications concerning SB 14, Senate Bill 62, House Bill 218 and House Bill 1706 between you and any other parties to this litigation, or between you and the Texas Legislature including but not limited to individual Texas Legislators and their staff or representatives during the State of Texas' 82nd Legislature, or any special session as well as any other parties to this litigation.

> (10) … all documents and electronically stored information exchanged between you and any individual or group regarding SB 14, including but not limited to communications between you and Members of the U.S. Congress, either past or present, their staff, or their representatives; communications between you and other members of the United States Executive Branch;

communications between you and members of the Texas Legislature, either past or present, and their staff or representatives; communications between you and any media outlets; or communications between you and any other parties to this litigation.

Exh. 1 at 6-7.

The United States asserted a general objection, as well as specific objections to Request for Production No. 9 and Request for Production No. 10, claiming responsive documents are protected by the common interest doctrine.  *See* Exh. 3 at 6, 15-18.  The United States asserted only a broad, general objection to Defendant's Second Request for Production to Plaintiff United States.  *See* Exh. 4 at 6.  In support of its invocation of the common interest doctrine, the United States cites *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985).  While *Hodges* recognizes that the common interest doctrine may extend a recognized privilege, like the attorney-client privilege, to communications shared with a third person who has a common legal interest regarding the subject matter of the communication, the court in that case narrowly construed the common interest doctrine to apply only to clients who are jointly-represented by the *same* attorney at the time of their attorney's communications to them.  *See id*.  Thus, *Hodges* fails to apply to the case at bar, where the United States is not jointly-represented and is not seeking to protect communications that fall within these parameters.

In further support of the common interest doctrine, the United States also cites *In re LTV Sec. Litig.*, 89 F.R.D. 595 (N.D. Tex. 1981).  In *LTV*, the court found that communications made by the defendant corporation's counsel in the presence of representatives of the corporation's financial auditor were protected by the common

9

interest doctrine, as both the corporation and its auditor had been subpoenaed and targeted as part of an SEC investigation into the corporation's activities at the time the communications were made. *LTV*, 89 F.R.D. at 604. The communications fell under the protection of the common interest doctrine, because the communications "were intended to facilitate representation in proceedings involving the SEC." *Id*. Thus, *LTV* applies the common interest privilege specifically to "communications made in the course of joint defense activities." *Id*. In the current case, the United States, a plaintiff, is not involved in joint defense activities.

The United States' misplaced reliance on the two cases discussed above provides an incomplete picture of how the courts apply the common interest doctrine in the Fifth Circuit. The common interest doctrine does not simply protect communications shared with any third person who has a common legal interest regarding the subject matter of the communication, as the United States suggests. *See* Exh. 3 at 6 and Exh. 4 at 6. Instead, Fifth Circuit precedent *very* narrowly construes the doctrine, and courts have exhibited significant restraint in broadening the boundaries of the common interest doctrine. *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003). The Fifth Circuit has repeatedly found that in civil cases the common interest doctrine applies to two specific forms of communication: (1) communication between *co-defendants* in actual litigation and their counsel, and (2) communications between potential *co-defendants* and their counsel. *Santa Fe*, 272 F.3d at 710. Specifically, Fifth Circuit Courts have recognized the common interest doctrine between co-defendants, an

insurer and insured, and a patentee and licensee. *Hill v. Hunt*, No. 3:07-CV-02020-O, 2008 WL 4108120, at *7 (N.D. Tex. Sept. 4, 2008) (citing *Power-One, Inc. v. Artesyn Techs., Inc.,* No.2:05-CV463, 2007 WL 1170733 at *406 (E.D. Tex. Apr. 18, 2007); *LTV*, 89 F.R.D at 604)).    Notably, however, the Fifth Circuit has never extended the common interest document to co-plaintiffs or potential co-plaintiffs. *Crosby v. Blue Cross Blue Shield of Louisiana*, No. 08-693, 2012 WL 5450040, at *4-5 (E.D. La. Nov. 7, 2012) (denying plaintiff's assertion of a "common legal interest" privilege given that plaintiff will not be "occupying a defensive posture" in the case and there is no Fifth Circuit authority extending the common interest doctrine to plaintiffs); *see Stanley v. Trinchard*, No. Civ.A. 02-1235, 2005 WL 399460, at *4 (E.D. La. Feb. 16, 2005) ("[I]n the Fifth Circuit, it [is] questionable whether the common interest doctrine extend[s] to plaintiffs.").

Instead, the Fifth Circuit has consistently instructed district courts that the common interest doctrine is an "obstacle to truth seeking" and must be "construed narrowly to effectuate necessary consultation between legal advisers and clients." *Santa Fe, 272 F.3d at 710*; *In re Tinsel Grp., S.A.*, No. H-13-2836, 2014 WL 243410, at *3 (S.D. Tex. Jan. 22, 2014); *F.T.C. v. Think All Pub., L.L.C.,* No. 4:07-cv-011, 2008 WL 687456, at *1 (E.D. Tex. Mar. 11, 2008).  In fact, there must be a palpable threat of litigation at the time of communication, rather than a mere awareness that one's conduct might someday result in litigation" before communications qualify for protection under the common interest doctrine. *Santa Fe*, 272 F.3d at 711.

In the current case, Defendants seek from Plaintiff, United States, the production of communications between the United States and other parties to the litigation, as well as between the United States and Texas Legislators, Members of the United States Congress, and media outlets. *See* Exh. 1 at 6-7.  The United States' status as plaintiff in this case and the Fifth Circuit's commitment to a narrow application of the privilege lend support to avoiding an extension of the common interest doctrine to plaintiffs and co-plaintiffs.  Thus, the United States' assertion of this doctrine is wholly inappropriate, as it would go against the great weight of authority in the Fifth Circuit and impose an intractable obstacle to truth-seeking in the case at hand.

Furthermore, as mentioned above, the common interest doctrine is not an independent privilege that can stand on its own, but is instead a conduit through which a privilege, such as attorney-client or work product, can be extended. *Ferko*, 219 F.R.D. 396 at 401 ("Despite its name, the common interest privilege is neither common nor a privilege.  Instead, it is an extension of the attorney-client privilege and of the work-product doctrine.").  Thus, a party seeking to apply the common interest doctrine must first identify the foundational evidence for the underlying privilege it is seeking to extend.  *See Ferko*, 219 F.R.D. 396 at 401 (holding that blanket assertions of work product, without any supporting facts, fail to prove "an underlying privilege that would give rise to the common interest doctrine"); *Hodges*, 768 F.2d at 721 (recognizing the need for additional evidence of an attorney-client relationship before properly extending the attorney-client privilege to cover a

claimed common legal interest).  The United States has failed to show that the documents they have withheld on the basis of the common interest doctrine are, at a foundational level, protected by attorney-client privilege or the work product protection.  Specifically, in its original privilege log, the United States asserted the common interest doctrine over twelve documents, yet failed to explain the predicate privilege in sufficient detail.  See Exhibit 10 at 2 (Privilege Log of Plaintiff United States, for United States' Response to Defendant Texas First Request for Production Served on Plaintiff).  The documents over which the United States asserted this common interest doctrine are emails between Meredith Bell-Platts, Deputy Chief of the Department of Justice's Voting Section, and J. Gerald Hebert; the descriptions of the documents provided on the privilege log merely state "Email from Bell-Platts to Hebert" or "Email from Hebert to Bell-Platts."  *Id*.  These descriptions do not even attempt to identify the foundational elements for an underlying attorney-client privilege or work product protection – a prerequisite to the proper assertion of the common interest doctrine.

Furthermore, by failing to provide a sufficient explanation of an underlying privilege, the United States fails to meet the requirement propounded by FED. R. CIV. P. 26(b)(5)(A)(ii) that a party asserting a specific privilege describe the nature of the documents withheld with enough specificity that other parties might evaluate the applicability of the claimed privilege or protection.  *See SmartPhone Tech., LLC v. Apple, Inc.*, No. 6:10cv74 LED-JDL, 2013 WL 789285, at *2-3 (E.D. Tex. Mar. 1, 2013).  The Court in *SmartPhone Tech* held SmartPhone's privilege log deficient,

noting that the boilerplate description of "discussion re anticipated litigation and strategy" provided insufficient information for another party to challenge the assertion of a common interest privilege. *Id*. at *3. In the case at hand, the United States' use of the boilerplate language, "Email from Bell-Platts to Hebert" (or vice versa), is no better, as it fails to provide enough information to establish an underlying privilege that the Defendants might then evaluate. Given the foregoing, the Defendants request the United States turn over all documents withheld on the basis of the common interest doctrine. When Defendants provided the United States an opportunity to amend its privilege log, the United States simply removed these items from the log. These documents need to be produced as they never were privileged.

## IV. THE CURRENT LITIGATION IS CIVIL, NOT CRIMINAL, MAKING THE UNITED STATES' INVESTIGATORY AND LAW ENFORCEMENT PRIVILEGE ASSERTION IMPROPER.

The Supreme Court has held that deterring voter fraud, even where the "record contains no evidence of any such fraud," is a 'legitimate' and 'important' interest supporting the passage of Voter ID laws. *Crawford v. Marion Co. Election Bd.*, 553 U.S. 181, 194-96 (2008). Despite this unequivocal pronouncement from the Supreme Court, the United States nevertheless continues to press the issue. Exhibit 11 (United States of America's Complaint) at 7. Other plaintiffs continue to press the issue as well. If other parties intend to proffer evidence regarding voter fraud, then Defendants have every right to seek whatever documents the United States' possess related to voter fraud. And there's good reason to think that the United States possesses such information. The Department of Justice, through the

Criminal Division's Public Integrity Section in Washington, D.C. and its U.S. Attorneys' Offices, is responsible for investigating and enforcing federal criminal laws that prohibit election fraud. *See* http://www.justice.gov/criminal/pin/.

Nevertheless, the United States asserted a general objection to Defendant's First Request for Production regarding internal documents covered by an investigatory and law enforcement privilege. *See* Exh. 3 at 6.  The State's Second Request for Production No. 10 requested the following:

> (10) … all documents and tangible things relating to any allegations (substantiated or unsubstantiated) of voter fraud in any national, state, or local election within the United States of America.  "Voter fraud" in this request includes, but is not limited to, in-person voter impersonation or attempted in-person voter impersonation.

Exh. 2 at 6.

The United States asserted a general objection, as well as specific objections to Defendant's Second Request for Production No. 10, regarding documents covered by an investigatory and law enforcement privilege.  *See* Exh. 4 at 5, 12.  In support of this assertion the United States cites *In re U.S. Department of Homeland Security*, 459 F.3d 565, stating that this case recognizes a law enforcement privilege. While *In re U.S Department of Homeland Security* does, in fact, recognize the existence of a law enforcement privilege, the court clearly limits the privilege to documents relating to ongoing *criminal* investigations. *In re U.S. Dep't Homeland Sec.* 459 F.3d 565, 569-70 n. 1 & 2 (5th Cir. 2006). Furthermore, after recognizing this fact, the court explains that the case will be remanded for an *in camera* inspection of the documents to determine whether the privilege applies. *Id*. at 570.

The court recommends the district court apply a ten factor test established in *Frankenhauser v. Rizzo* to assess the privilege. *Id*. Factor five of the *Frankenhauser* test, "whether party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question," and factor six, "whether the police investigation has been completed" reaffirms that the law enforcement privilege only applies in a criminal context. *See id*.

In further support of the law enforcement privilege, the United States cites *Tuite v. Henry*, 181 F.R.D. 175. *See* Exh. 3 at 6; Exh. 4 at 6. *Tuite* is a civil case, yet is similarly distinguishable from the instant matter because the document covered by the law enforcement privilege contained a criminal aspect. *Tuite v. Henry*, 181 F.R.D. 175, 175 (D.D.C.1998). In *Tuite*, attorneys for defendants in a criminal case discovered their conversations with their clients, located in a federal jail, were improperly recorded. *Id*. Once the attorneys (plaintiffs in the *Tuite* litigation) discovered the existence of the recordings, they filed a suit claiming the tapes violated federal wiretapping laws and the Constitution. *See id*. at 175-76. As a result of discovery of the recordings, the Department of Justice's Office of Professional Responsibility ("OPR") conducted an investigation to determine the individuals responsible for creating the recordings. *Id*. The OPR documented the investigation and the findings in a report. *Id*. The attorney plaintiffs sought production of this report; however, the court found it was protected by the law enforcement privilege. *Id*. The report from the OPR was conducted to investigate

the *potential illegal* actions of Department of Justice employees, a criminal action. *Id.*; *see also*, *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135, (C.A.D.C. 2000).

When the *Tuite* court applied the *Frankenhauser* factor six it noted "OPR has concluded its criminal inquiry into the alleged tapping of plaintiff's conversations with their clients," further establishing that the law enforcement privilege applies only in a criminal context. *Tuite*, 181 F.R.D. at 181. The court also stated that "[t]he report compiled by the ORP contains summaries of the investigation and witness interviews, the disclosure of which would reveal law enforcement techniques and investigative evaluations." *Id.* at 180. Again, this displays the application of the privilege in a criminal context, not a civil.

The United States also cites *McPeek v. Ashcroft*, 202 F.R.D. 332, in support of its law enforcement privilege assertion. Exh. 3 at 6; Exh. 4 at 6. At first glance *McPeek* offers support for the law enforcement privilege; however, this case is also distinguishable from the instant matter. *McPeek v. Ashcroft*, 202 F.R.D. 332, 336 (D.D.C. 2001). *McPeek* involved a report made by the OPR following its investigation of an employee's retaliation claim against Department of Justice employees for filing a sexual harassment complaint against the former Direct of Bureau of Prisons. *Id.* at 333. The court noted that the law enforcement privilege only applied beyond criminal actions in the context of the OPR report because of the specialized interests of the OPR, noting that the "interest is the same whatever the nature of the allegation [the Office of Professional Responsibility] investigates." *Id.* at 336. The current case involves the Department of Justice's Voting Rights

division, not the OPR. Moreover, *In re U.S. Department of Homeland Security* demonstrates that *McPeek* is not the current law in the Fifth Circuit nor does the Fifth Circuit take as an expansive approach by applying the privilege to civil matters. *In re U.S. Dep't Homeland Sec.*, 459 F.3d at 565; *McPeek,* 202 F.R.D. at 332.

The current case involves an allegation by the United States that the State of Texas violated Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.   The litigation involves no criminal allegations in any form.    Rather it involves the constitutionality of Senate Bill 14 (2011) ("S.B. 14") providing photographic identification requirements for registered voters to participate in Texas elections. In this context, there is no basis or possible justification for applying the law enforcement privilege that the United States attempts to claim. The United States' claim of investigatory or law enforcement privilege is thus improper. Consequently, the Defendants request the court to order the United States to produce all documents the United States improperly withheld under the investigatory and law enforcement privilege.

## V.   THE UNITED STATES' PRIVILEGE LOG FAILS TO MEET THE BURDENS REQUIRED UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(B)(5)(A).

The United States has failed to provide an adequate privilege log in conjunction with its Responses and Objections to Defendants' First Request for Production.  As the party asserting privilege, the burden falls on the United States to demonstrate the applicability of the claimed privilege to the documents being withheld.  *Newell,* 315 F.3d at 525.  Under the Federal Rules, a party asserting

privilege to withhold information otherwise discoverable must (1) expressly claim a specific privilege for the item or items withheld, and (2) describe the nature of the documents, communications, or tangible things withheld *with enough specificity that other parties might evaluate the applicability of the claimed privilege or protection.* *See* FED. R. CIV. P. 26(b)(5)(A)(ii); *SmartPhone Tech., LLC*, 2013 WL 789285, at *2. In fact, "[t]he Federal Rules essentially dictate that when a party claims privilege, it must provide a log that provides facts that 'would suffice to establish each element of the privilege or immunity that is claimed.'" *SmartPhone Tech. LLC*, 2013 WL 789285, at *2 (citing *Taylor Energy Co. v. Underwriters at Lloyds of London*, No. C.A. 09-6383, 2010 WL 3952208, at *1(E.D. La. Oct. 7, 2010)).

The purpose of the privilege log is to provide both the parties and the court with sufficient information to assess the applicability of the privilege or protection claimed. *Verret v. State Farm Fire & Cas. Co.*, 2014 WL 460933, *3-4 (E.D. La. Feb. 5, 2014); *Taylor Energy Co., LLC*, 2010 WL 3952208, at *1. Thus a privilege log should "not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, the purpose of its production, and a specific explanation of why the document is privileged or immune from discovery." *In re Royce Homes, LP*, 449 B.R. 709, 728 (Bankr. S.D. Tex. 2011) (citing *Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363-C-M2, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009)). Cursory or general descriptions and comments about the documents are insufficient to support a claim of privilege, as they fail to provide competent evidence of each element of the privilege claimed.

*Royce Homes,* 449 B.R. at 728; *see also U.S. v. Construction Prods. Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996) (holding that descriptions such as "Fax Re: DOL Findings" and "Letter Re: Customer Orders" do not provide enough information to support a privilege claim); *SmartPhone Tech., LLC,* 2013 WL 789285, at *3 (holding that boilerplate language such as "Discussion re anticipated litigation and strategy" is insufficient to allow a party to challenge the assertion of privilege without additional detail); *Taylor Energy Co.,* 2010 WL 3952208, at *2 (finding that vague descriptions such as "Email forwarding attorney client communication" and "Email forwarding attorney report" fall short of establishing adequate facts for a court or a party to determine whether the claimed privilege protects the document from disclosure).

Despite the opportunity to address the deficiencies present in the original privilege log, provided to the Defendants by the United States with its Responses and Objections to Defendant's First Request for Production, the United States made minimal adjustments to its privilege log and instead turned over an amended privilege log that remains deficient and unhelpful to Defendants. As the party withholding items based on asserted privileges and immunities, the United States bears the burden of providing sufficient information regarding the withheld documents such that other parties might assess the applicability of the claimed privileges and protections. The United States fails in this exercise, as some privilege log entries lack dates, and because the majority of the document descriptions contained in the privilege log fall far short of establishing the elements

of the privileges or immunities claimed.  Still other entries appear to be deleted altogether by the United States when Defendants offered them the chance to cure the deficiencies in their privilege log. Hypocritically, however, the United States has been quick to point out deficiencies in over 2,000 pages of privilege logs provided by the Defendants in response to the United States Requests for Production.  In the Motion Hearing held on March 5, 2014, the United States complained that Defendant's "privilege logs are not sufficiently specific."  Exhibit 12 (March 5, 2014 Motion Hearing, Portion of Transcript) at 60.  If the United States finds that Texas' privilege logs provide insufficient detail, Defendants would like to know what they think of their own privilege logs.  A brief comparison of the United States' privilege log and the Defendants' privilege simply highlights the minimal effort and vast deficiencies of the United States' privilege log.  *See* Exhibit 13 (Comparison of Excerpts from Plaintiff, the United States' privilege log and Defendants' privilege logs).

The Defendants cannot evaluate, based on the information currently provided in the log, the applicability of the claimed privileges and protections to the documents withheld by the United States.  For the convenience of the court and for the sake of saving time and space, the Defendants have attached as an exhibit a spreadsheet documenting the deficient entries in the United States current Privilege Log.  Exhibit 14 (Contested Document Privilege Claim Index).  While the Defendants point out below representative deficiencies for each privilege or

protection claimed, the attached exhibit provides a more comprehensive breakdown of which specific documents are at issue.

### A. The United States Fails to Establish the Elements of Attorney-Client Privilege.

The United States has claimed attorney-client privilege with respect to a handful of documents.  Under federal common law, the elements of the attorney-client privilege are:    (1) that a confidential communication was made; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.  *U.S. v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).  The burden lies with the party asserting the privilege to exhibit how each document satisfies all the elements of the privilege.  *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009).

Although the United States did add detail to many of its attorney client descriptions as requested by the State of Texas, the United States added a new assertion of the attorney client privilege over document USA_00057120[1] without providing sufficient information to establish the elements of the privilege so that the State of Texas might determine whether this document is in fact properly withheld.  The document at issue is an email from Timothy Mellett to Meredith Bell-Platts, who is identified as the Deputy Chief of the Voting Section.   The

---

[1] It appears the United States changed one of its privilege designations over USA_00057120 without changing or adding to any of the information provided in the corresponding privilege log entry.  In its original privilege log, the United States claimed work product protection over this document. However, upon being offered the opportunity to redo its privilege log, the United States apparently determined the work product protection was not strong enough and swapped it out for the attorney client privilege, which had not previously been asserted over this particular document.  To the extent the United States' claims of privilege over this document hinge on a work product assertion, the privilege should yield to Defendants' need to gather information in order to properly and adequately defend this lawsuit.

corresponding document description merely reads:  "Email from Timothy Mellett to Bell-Platts."  This limited description leaves the Defendants to wonder, does this document constitute confidential communication, is this document seeking or providing legal advice, how is this document covered by the attorney-client privilege?  This description, which is representative of the cursory nature of other privilege descriptions in the log, fails to allow the Defendants to discern whether the document is properly withheld on the basis of the attorney-client privilege.

## B. The United States Fails to Establish the Elements of the Work Product Doctrine.

Similarly, the United States fails in asserting the work product doctrine over numerous documents. The federal work product doctrine protects from discovery (1) documents and tangible items; (2) prepared by or for a party or that party's representative; (3) in anticipation of litigation or for trial.  FED. R. CIV. P. 26(b)(3). Furthermore, "[w]ork product immunity is not absolute," but instead is merely a qualified privilege.  *Flashmark Tech. LLC v. GTECH Corp.*, No. 206-CV-205, 2007 WL 2264765, at *2 (E.D. Tex. Aug. 6, 2007); *see Camco, Inc. v. Baker Oil Tools, Inc.*, 45 F.R.D. 384, 387 (S.D. Tex. 1968).  A party demonstrating "'substantial need of the materials in preparation for [its] case' and an inability 'without undue hardship to obtain the substantial equivalent' may discover factual and non-opinion work product that does not disclose the 'mental impressions, conclusions, opinions or legal theories of an attorney or other representative.'"  *Id*. (citing *Hodges*, 768 F.2d at 721).

Despite being given the opportunity to clean up its work product assertions, the United States fails in its second attempt to provide proper and sufficient assertions of the work product doctrine in its amended privilege log. Defendants graciously provided a draft motion to compel to the United States specifically pointing out that many of the document descriptions propounded by the United States in its initial privilege log fell far short of exhibiting that the items claimed as work product were prepared in anticipation of litigation. While the United States appropriately removed some of its work product assertions, it failed to make any substantive changes to the descriptions accompanying those documents over which it continues to assert work product protection.

Additionally, the United States continues to assert work product protection over numerous documents for which it has failed to provide a date. The lack of date to indicate when these documents were prepared or sent, particularly when coupled with the sparse document descriptions offered by the United States, makes it virtually impossible for the Defendants or the Court to make a reasonable determination as to whether these documents were prepared in anticipation of litigation or for trial. Thus, the Defendants are unable to determine whether or not these documents have been appropriately withheld.

For example, the United States claims work product protection over documents USA_00057590 and USA_00057594, both of which are undated and lack an author or a recipient. Exh. 9 & Exh. 10. The document description corresponding to USA_00057590 in both the United States' original privilege log

and amended privilege log reads:  "Portion of TX SOS forms AW 7-7 and 7-20 showing internal notes, File No. 2012-3260."  Similarly, the document description corresponding to USA_00057594 in both the United States' original privilege log and amended privilege log reads "Portion of TX SOS information showing internal notes, File No. 2012-3260."  That internal notes were made to a document fails to indicate that the document or its corresponding internal notes were prepared in anticipation of litigation or for trial.  Such cursory descriptions undermine the purpose of providing a privilege log by failing to provide the State of Texas and the Court with the information they need and deserve, pursuant to the Federal Rules, to assess the applicability of the work product protection claimed.  Despite the United States' failure to provide sufficient indication of this element of work product protection in its privilege log descriptions, even if the documents over which the United States claims work product protection were created or sent in anticipation of litigation, this qualified privilege should yield to Defendants' substantial need to gather materials to defend this lawsuit as Defendants' have no alternative way to obtain substantially equivalent materials.

Additionally, the United States has claimed work product protection over a number of documents categorized as "Voting Section attorney notes of phone call with a potential witness."  Exh. 9 at 2-3.  In its original privilege log, the United States failed to provide the identity for *any* of these potential witnesses.  Exh. 10 at 1-2.  The United States had no basis for withholding the identity of these potential witnesses based on a qualified work product protection. After multiple efforts to

25

address the deficiencies in the United States' privilege log, the United States ultimately furnished the identities of these potential witnesses for the first time on April 1, 2014. See Exhibits 9 at 2-3. All of the potential witnesses named are, in fact, Democratic members or former members of the Texas legislature and Congress, many of whom voiced opposition to S.B. 14 and undoubtedly possess knowledge of the intent and impact underlying SB 14, which are directly at issue in this litigation. It is absurd that Defendants are just now learning the identities of these potential witnesses, after multiple conversations with the United States and nearly four months after the United States provided its original privilege log. Defendants clearly have a substantial need for this type of information in order to put together a defense of this lawsuit, and as such, the United States' efforts to keep this information from Defendants are improper.

The United States, once again, has fallen short in its duty to provide sufficient information in its privilege log to allow the Defendants to evaluate the applicability of work product to the items withheld on that basis. Moreover, even if the documents over which the United States claims work product protection were created or sent in anticipation of litigation, this qualified privilege should yield to Defendants' substantial need for relevant evidence as Defendants' have no alternative way to obtain substantially equivalent materials. Defendants request production of these documents in their entirety subject to a protective order.

**C. The United States Fails to Establish the Elements of Deliberative Process Privilege.**

The United States asserted the deliberative process privilege over virtually every entry in the privilege log, and yet, the descriptions accompanying these entries fail to establish the elements of this asserted privilege. The deliberative process privilege protects documents that reflect the opinions, recommendations, and deliberations comprising the decision-making process of a governmental agency. *Dep't of the Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 2 (2001). For the deliberative process privilege to apply the document must be created before the final deliberation or decision is made, thus making the document pre-decisional. *NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 308 (D.D.C. 2009) and *FTC v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). However, a document that is pre-decisional is not always part of the deliberative process. *Id.* The document must also be deliberative and not purely factual. *Id.* Furthermore, for information to be protected under this privilege, the government bears the initial burden of proving the material is both pre-decisional and deliberative. *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999); *see Skelton v. U.S. Postal Svc.*, 678 F.2d 35, 38 (5th Cir. 1982) (recognizing that the deliberative process privilege protects "predecisional materials 'reflecting deliberative or policy-making processes'").

The United States cannot make a blanket assertion of deliberative process without pinpointing an agency decision or policy that is intended to be protected. *See Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. V. United States Dept. of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987). When asserting the deliberative

27

process protection, the privilege log description should show the document is "(1) pre-decisional; (2) deliberative; (3) [does] not 'memorialize or evidence' the agency's final policy; (4) [was] not shared with the public; and (5) cannot be produced in a redacted form." *Jackson Hosp. Corp.*, 257 F.R.D. at 309. Once again, the United States falls short of meeting its burden of establishing the elements of the asserted privilege and providing sufficient information for the parties and court to determine whether a privilege was properly invoked.

The majority of the United States' entries claimed as deliberative process contain a variation of the description provided for the withheld document Bates stamped as USA_00056816: "Portion of letter to Martin Frost, U.S. House of Representatives from Robert Raben, Assistant Attorney General, indicating internal distribution of copies." Exhs. 9 & 10. The information provided in this description, and the many similar descriptions accompanying documents withheld on the basis of the deliberative process privilege, fails to establish at least three of the requirements: establishing the communications are predecisional, establishing the communications are deliberative, and demonstrating the document cannot be produced in redacted form. *See Jackson Hosp. Corp.* 257 F.R.D. at 309.

The United States, after Defendants provided it with the opportunity to correct any deficiencies in its privilege log, sent an amended log with a cover letter explaining its assertions of deliberative process privilege. *See* Exh. 8. In the letter, the United States' cites *Cofield v City of LaGrange*, 913 F. Supp. 608 (D.D.C. 1997) as a basis for withholding documents that reflect the identities of the individuals

involved in the decision-making process because of the potential to harm that process. *See id.* at 1. However, this point does not excuse the United States' failure to demonstrate that the documents at issue are deliberative in nature and the information is not purely factual or that "the facts are 'inextricably intertwined' with the policy-making process." *Ryan v. Department of Justice*, 617 F.2d 781, 790 (D.C.Cir 1980). For the release of these documents to have any effect on the decision making process, one would have to know the relevant policy decision to effectively determine that the process would be impacted. The United States identified no policy decisions; therefore, no policy decision process can be inhibited by the production of these documents. The United States has been afforded ample opportunity to identify these policy decisions, but instead relies on blanket assertions. As a result, the United States fails to meet its burdens under both the Federal Rules of Civil Procedure and the Agreement Concerning Production Format.

Additionally, the Unites States makes no attempt to demonstrate that the documents at issue are unable to be produced in redacted form. In Ms. Westfall's letter she states:

> [t]he United States has asserted a deliberative process privilege as a ground for withholding or ***redacting*** in part those documents related to the Attorney General's determinations on submissions of voting changes under Section 5 of the Voting Rights Act, which include internal staff assignments, markings that identify recipients copied on documents, and transmittal and routing forms.

Exh. 8 at 1 (emphasis added). While Ms. Westfall points out the United States' reasoning for asserting a deliberative process privilege over documents that

identify internal distribution[2] in its amended privilege log, she also makes an important point, that the United States could have either withheld or redacted the privilege documents.  Here, the United States has made no showing in its original privilege log, its amended privilege log, or its accompanying cover letter why the United States could not and did not produce the documents in a redacted form. *See* Exhs. 8, 9 & 10. Again using example document USA_00056816, the proffered description:  "Portion of letter to Martin Frost, U.S. House of Representatives from Robert Raben, Assistant Attorney General, indicating internal distribution of copies," shows the United States' failure to comply both with the Federal Rules of Evidence and the Agreement Concerning Production Format.  The only portion of this document that arguably falls within the scope of deliberative process privilege is the notation indicating the specific Department of Justice employees to whom the underlying letter was distributed.  However, there is no conceivable argument that the underlying information, the actual letter that was sent to Congressman Frost, forms any part of the United States' deliberative process.  Moreover, the United States description of the document identifies no other basis for nondisclosure.  At a bare minimum, the United States should heed its own words and produce the document in redacted form. The United States was provided not one but two opportunities to correct this issue and failed.  As a result, these documents should be produced under a protective order allowing Defendants to adequately evaluate the privilege assertions and maintain the ever looming litigation deadlines.

---

[2] A point that Defendants continue to maintain is not sufficient to allow a document to be covered by a deliberative process privilege assertion based on the content of the United States' privilege logs.

**D. Any Potential Harm to the Deliberative Process of the United States Must Yield to Defendant's Need for Evidence to Properly Defend Against the Allegations in This Case.**

Even if this court finds that the deliberative process privilege applies to documents withheld by the Unites States, Defendants' need to such information as evidence in this case far outweighs any public policy interests supporting nondisclosure. The deliberative process privilege is qualified, not absolute. *U.S. v. American Tel. and Tel. Co.*, 524 F.Supp. 1381, 1386 n.14 (D.C.D.C. 1981); *Mainwright v. Washington Metropolitan Area Transit Authority*, 163 F.R.D. 391, 396 (D.D.C. 1995). The validity of the asserted privilege "depends upon a balance of the public interest in nondisclosure with the need for the information as evidence." *Id.* "This balancing, in turn, requires the Court to consider, in addition to the privilege itself, such matters as the degree to which the proffered evidence is relevant, the extent to which it may be cumulative, and the opportunity the party offering it may have to prove the particular facts by other means." *Id*.

The Department of Justice conducted an extensive, sixth-month investigation into the legislative intent of SB 14 and the bill's likely impact on minority voters. The DOJ conducted extensive telephone interviews with state and federal legislators opposed to the passage of SB 14, as well as several private individuals and groups, including parties to the instant suit, such as Congressman Marc Veasey.[3]  The United States also continues to withhold several dozen letter

---

[3] *See* Exhibit 9, Amended US Privilege Log, at 3 (describing undated, withheld document USA_00056516-24 as "Voting Section attorney notes of phone call with a potential witness, United States Congressman Marc Veasey"). While the United States also asserts attorney work product over

correspondences with state legislators, Congressmen, and private individuals regarding SB 14, voter identification laws in other states, and the 2006 Reauthorization of the Voting Rights Act.   Lastly, the United States claims deliberative process privilege over voting complaints received by the Department of Justice from undisclosed individuals.   *See* Exh. 9 at 3 (describing withheld document USA_00056525-64 as "Election 2006_Voting Complaints includes Voting Section attorney notes and the names of complainants").

The relevance of these materials is not serious disputed.   Statements by witnesses regarding the intent or impact of SB 14 bear directly on the claims being lodged against Defendants.   Similarly, the Department of Justice's past correspondence with individuals regarding voter identification laws in other states potentially contains highly relevant evidence regarding the existence and perception of voter fraud as well as analysis and information regarding the impact of voter identification requirements, issues which have been put directly at issue by the Unites States in this suit.   It is critical that Defendants be granted access to any information provided by individuals to the Department of Justice regarding the intent or impact of SB 14, as well as any information regarding the potential intent or impact of voter identification requirements in other states, in order to properly defend against the claims now being asserted by Unites States.

Further, the documents at issue are not cumulative of other evidence.   Many of the document withheld by the United States under a deliberative process

---

this document, it fails to establish the necessary elements for nondisclosure for the reasons described in section B.

privilege claim relate to individuals who have not been the subject of discovery either in this litigation or previously in *Texas v. Holder*. In some cases, the identities of these individuals have only recently been disclosed. Their statements have been closely guarded by the Department of Justice throughout discovery despite their clear relevance to the allegations in this case. Notably, several individuals interviewed by the Department of Justice were not identified until the United States provided Defendants with an updated privilege log on April 1, 2014.[4]

The information provided to the Department of Justice during its preclearance investigations is also not readily obtainable from other sources. Many of the individuals who willingly submit statements and information to the Department of Justice are unlikely to cooperate with Defendants absent an expensive and time-consuming subpoena process. Even assuming the nonparty individuals identified in the United States privilege log agreed to disclose all relevant information, it is unlikely the individuals could accurately reproduce the same information after several years. In the case of witness statements during telephone interviews, the likelihood that such information can be adequately reproduced is more doubtful still.

Lastly, the United States has not identified any substantial harm that the Department of Justice will suffer as a result of disclosure. The United States description of documents as "indicating internal distribution of copies" among

---

[4] Almost none of the individuals who interviewed or corresponded by letter with the Department of Justice have been identified in the United States' initial disclosures, despite the Unites States' contention that the information obtained from such individuals should be withheld as relating to the Department of Justice's internal deliberations regarding the agency's decision to deny preclearance of SB 14.

Department of Justice personnel appears to form the sole basis for the United States assertion of deliberative process privilege. *See, e.g.* Exh. 9 at 2 (describing withheld document USA_00056786-88 as "Portion of letter to Janet Reno United States Attorney General from J. Gerald Hebert indicating internal distribution of copies"). Counsel for the United States similarly mentions only the Department of Justice's interest in protecting the identities of the individuals involved in the agency's decision-making process as the impetus for nondisclosure of the vast majority of disputed documents. *See* Exh. 8 at 1. While the existence of internal routing notations on documents may arguably fall within the deliberative process privilege, which Defendants contest, the policy interest supporting nondisclosure in such instances cannot be said to outweigh Defendants' substantial need for information as evidence. *See U.S. v. American Tel. and Tel. Co.*, 524 F.Supp. at 1386 n.14. Balancing the United States interest in protecting the identity of individuals involved in the preclearance decision-making process, without more, cannot support the wholesale nondisclosure of potentially relevant documents. *See id.* Instead, Defendants competing interest in obtaining relevant information compels disclosure.

In the interest of expediency, the United States should produce all documents withheld on the basis of deliberative process privilege subject to a protective order. The parties may then seek a determinative ruling by the court if Defendants seek to introduce documents into evidence over which the United States has asserted deliberative process privilege.

**E. The United States Privilege Log Fails to Meet the Requirements of the Agreed Upon Agreement Concerning Production Format.**

Finally, the United States' privilege log not only fails to meet the established legal standards, but it also violates the Agreement Concerning Production Format for this litigation.  The agreement states, "[a]t a minimum the privilege log must contain . . . the privilege or privileges claimed and the basis for the assertion of privilege or protection."  Exhibit  15 (Agreement Concerning Production Format, ECF No. 61-6) at 8, ¶ 24).   Furthermore, "[t]he parties agree to provide sufficient information privilege logs to establish the elements of each asserted privilege." *Id*. at 9, ¶ 25 (citing T*aylor Energy Co.,* 2010 WL 3952208).  The United States has now had two opportunities to provide Texas with a privilege log that appropriately conforms to this agreement.   Yet instead of following the parameters of the agreement, the United States has provided an amended privilege log in which the majority of entries consist of cursory assertions, and fail to establish the elements of the asserted privileges and protections. Consequently, the Defendants request the court order the United States to produce the documents identified on Exhibit 14 which are all the entries in which the United States failed to provide adequate information in the privilege log.

## VI.   CONCLUSION

The Defendants respectfully request the Court to order the United States to produce the improperly withheld documents. More specifically, Defendants request the Court order the United States produce any document or electronically stored material withheld based on an assertion of the common interest doctrine or the

investigator and law enforcement privilege.  Further, the Defendants respectfully request the Court to order the United States to produce all documents identified as deficient by the Defendants in Exhibit 14 under a protective order.

Pursuant to Local Rule 7.1(c), a proposed order granting the requested relief is attached hereto.

Dated:  April ~~7~~14, 2014

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General
Southern District of Texas No. 1160600

*/s/ John B. Scott*
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
Southern District of Texas No. 10418
ATTORNEY-IN-CHARGE

G. DAVID WHITLEY
Assistant Deputy Attorney General
Southern District of Texas No. 2080496

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

COUNSEL FOR THE STATE OF TEXAS,
RICK PERRY, JOHN STEEN, and STEVE
MCCRAW

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that counsel for the Defendants have conferred with counsel for the United States regarding this motion.  At the time of filing, discussions regarding resolution of the issues in this motion are ongoing.

<u>*/s/ G. David Whitley*</u>
G. DAVID WHITLEY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April ~~7~~14, 2014, I served a true and correct copy of the foregoing document via the Court's ECF system to all counsel of record.


<u>*/s/ John B. Scott*</u>
JOHN B. SCOTT