IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, JANE HAMILTON, SERGIO DELEON, FLOYD J. CARRIER, ANNA BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS, JOHN MELLOR-CRUMLEY, PEGGY HERMAN, EVELYN BRICKNER, GORDON BENJAMIN, KEN GANDY, LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), AND DALLAS COUNTY, TEXAS, *Plaintiffs,* v. RICK PERRY, Governor of Texas; and JOHN STEEN, Texas Secretary of State, *Defendants.* | CIVIL ACTION NO. 2:13-CV-193 (NGR) [Lead case] |
| UNITED STATES OF AMERICA, *Plaintiffs,* TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, IMANI CLARK, AURICA WASHINGTON, CRYSTAL OWENS, AND MICHELLE BESSIAKE, *Plaintiff-Intervenors,* TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, HIDALGO COUNTY, AND MARIA LONGORIA BENAVIDES, *Plaintiff-Intervenors,* v. STATE OF TEXAS, JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, *Defendants.* | CIVIL ACTION NO. 2:13-CV-263 (NGR) [Consolidated case] |

1

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES; and the MEXICAN AMERICAN LEGISLATIVE CAUCUS OF THE TEXAS HOUSE OF REPRESENTATIVES,<br>    *Plaintiffs,*<br>v.<br><br>JOHN STEEN, in his official capacity as Secretary of State of Texas; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety,<br>    *Defendants.* | CIVIL ACTION NO.<br>2:13-CV-291 (NGR)<br>[Consolidated case] |
| BELINDA ORTIZ, LENARD TAYLOR, EULALIO MENDEZ JR., LIONEL ESTRADA; ESTELA GARCIA ESPINOSA, ROXANNE HERNANDEZ, LYDIA LARA, MARGARITO MARTINEZ LARA, MAXIMINA MARTINEZ LARA, AND *LA UNION DEL PUEBLO ENTERO, INC.*<br>    *Plaintiffs,*<br>v.<br><br>STATE OF TEXAS; JOHN STEEN, in his Official capacity as Texas Secretary of State; And STEVE McCRAW, in his official capacity As Director of the Texas Department of Public Safety,<br>    *Defendants.* | CIVIL ACTION NO.<br>2:13-CV-348 (NGR)<br>[Consolidated case] |

## MOTION TO QUASH SUBPOENAS OF CURRENT AND FORMER LEGISLATORS

The Office of the Attorney General (OAG) recently produced thousands of legislatively privileged documents to the Department of Justice. That document

2

production included every single legislatively privileged document that DOJ sought during (and apparently thought necessary to win) the voter-ID preclearance lawsuit, including all requested documents related to the passage of SB 14. A few weeks ago, DOJ subpoenaed documents from nine additional former and current legislators who were not the subject of discovery requests during the preclearance lawsuit.[1] DOJ's subpoena should be quashed because its demands far exceed the Court's recent holding on legislative privilege.

DOJ seeks documents from legislators that it previously deemed unnecessary of inquiry during its 8-month administrative preclearance investigation or the years of discovery and litigation during *Texas v. Holder*. And these document requests are much broader than the requests in the previous litigation, seeking documents related to legislative matters other than S.B. 14, such as every document on the topic of immigration, as well as campaign materials, which shed no light on the Legislature's official business or its reasons for passing SB 14. Those inquiries expose the potential harm of disclosing legislatively privileged documents. It is one thing to suggest that legislatively privileged documents regarding an election law are relevant enough to outweigh the potential harm caused by their disclosure because legislator's might envision a scenario in which documents related to an election law might be disclosed in a voting rights act case. It is quite another to suggest that the probative value (which approaches zero) of legislatively documents

---

[1] The subpoenas seek documents from a total of 13 legislators. Four of these legislators were the subject of discovery requests in the preclearance lawsuit, so their SB 14 related documents were produced to DOJ in early April. To the extent the subpoenas seek additional documents from these four legislators, they should be quashed. *See infra* Part II.

related to separate legislative matters outweighs the much greater potential harm of disclosing documents that are not even related to legislation at issue. A ruling that allows the Department of Justice to rummage around in the affairs of legislators that are unrelated to S.B. 14 interposes the very same federalism concerns that the U.S. Supreme Court found troubling about the Voting Rights Act's preclearance regime.

In sum, the subpoenas seek documents that are (1) less relevant or irrelevant; (2) unnecessary given the thousands of relevant documents in DOJ's possession; and (3) more likely to provoke future timidity by legislators who will be forced to recognize that their private papers, even those unrelated to a challenged law, are violable. *See Perez v. Perry*, 2014 WL 106927, at *2 (S.D. Tex. Jan.8, 2014). These three factors tip the balance against disclosure of these additional documents.

I. **THE COURT SHOULD QUASH THE THIRD-PARTY SUBPOENAS, WHICH SEEK DOCUMENTS FROM NINE LEGISLATORS, BECAUSE THE DEPARTMENT OF JUSTICE NOW HAS IN ITS POSSESSION ALL THE PRIVILEGED (AND UNPRIVILEGED) DOCUMENTS THAT WERE RESPONSIVE TO THEIR EXPANSIVE REQUESTS IN THE PRECLEARANCE CASE.**

Earlier this month, the Court set aside the legislative privilege, for purposes of discovery, for documents in Texas's possession, but it recognized that its power to do so was "severely limited" by the Supreme Court. *See Veasey v. Perry*, 2014 WL 1340077, at *1 (S.D. Tex. Apr. 3, 2014) (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977)). The Court's order instructs the parties that:

4

> The extent to which inquiry into such sensitive matters is permitted should correspond with the degree to which the intrusion is *absolutely necessary*.

*Id.*, at *3 (emphasis added).

The Department of Justice's subpoena fails to heed the Court's instruction. When this Court set aside the privilege for legislative documents from the preclearance lawsuit, DOJ obtained access to all the privileged documents and communications that it desired and was refused two years ago. DOJ's subpoena now seeks documents from nine additional legislators. But DOJ did not even bother to request documents from these legislators during the preclearance lawsuit. We do not understand why the very same trial team who represented the United States in the preclearance lawsuit now thinks that documents from these nine legislators have become "absolutely necessary." *Veasey*, 2014 WL 1340077, at *3.

The documents cannot be "absolutely necessary" when DOJ found them completely unnecessary only two years ago, and that suggests a different result under this Court's balancing test. *Veasey*, 2014 WL 1340077, at *2. The documents are unnecessary because DOJ now possesses every legislatively privileged document that it demanded in the preclearance trial. *Id.*, at *2 (considering "the availability of other evidence"). The documents also are irrelevant, as DOJ's actions in the prior case reveal. *Id.* (considering "the relevance of the evidence sought to be protected"). This Court held that legislative privilege yields when "absolutely necessary," but it never held that DOJ could

5

exploit that ruling to rummage through sensitive files that it previously found uninteresting.

## II. IN ANY EVENT, THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT IS AN EXCESSIVELY BROAD INQUIRY INTO SENSITIVE DOCUMENTS.

Even if the Court allows DOJ to subpoena documents *related to SB 14* from the nine additional legislators, it should modify the subpoena because DOJ's request to those legislators is excessively broad. Instead of seeking only relevant documents related to the passage of SB 14, DOJ's subpoena seeks irrelevant documents concerning (1) events that postdate the enactment of the challenged law, (2) unrelated subject matters such as immigration legislation,[2] and (3) documents related to past failed efforts by different Legislatures to enact voter ID laws. Specifically, DOJ seeks:

> (1) "All documents related to campaign communications, including but not limited to mailings, ads, websites, flyers, and correspondence, related to voter identification requirements or SB 14, made by or on behalf of any candidate for office in the State of Texas from January 1, to the present." *See* Subpoena ¶15.
>
> (2) "All documents related to campaign communications, including but not limited to mailings, ads, websites, flyers, and correspondence, related to immigration made by or on behalf of any candidate for office in the State of Texas from January 1, 2005, to the present." *See* Subpoena ¶16.
>
> (3) "All documents related to any and all efforts or consideration by the Legislature to amend SB 14 or to enact additional legislation related to the issuance of election identification certificates." *See* Subpoena ¶17.

---

[2] The Voting Rights Act prohibits discrimination on the basis of race or membership in a language minority with respect to voting. It does not bear on legislation that deals with immigration or laws that distinguish between persons of different immigration status. And, indeed, no Plaintiff in this lawsuit alleges that S.B. 14 impermissibly distinguishes between persons with different immigration statuses.

6

(4) "All documents related to any efforts or consideration by the Legislature to review or analyze the administration of the November 2012 general election, including any issues related to election integrity." *See* Subpoena ¶18.

(5) "All documents related to any proposal to amend or modify SB 14's requirements, or its implementation plans, so as to respond to the findings of the United States District Court for the District of Columbia in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012) (three-judge court), *vacated*, 133 S. Ct. 2886 (2013)." *See* Subpoena ¶21.

(6) "All documents related to any proposal to amend or modify SB 14's requirements, or its implementation plans, after May 27, 2011." *See* Subpoena ¶22.

If the Court runs these irrelevant and less-relevant demands through its balancing test, a very different answer obtains.

The first factor is "[t]he relevance of the evidence sought to be protected." *Veasey*, 2014 WL 1340077, at *2. This Court already has suggested that documentary evidence concerning the enactment of SB 14 is "highly relevant" to the United States' claim "because it bears *directly* on whether state legislators, contrary to their public pronouncements, acted with discriminatory intent in enacting SB 14." *Id.* (emphasis added). But the further in time and subject matter that DOJ is allowed to probe, the less relevant the documents become. Piercing the privilege for documents directly related to the challenged law might produce relevant documents, but demanding documents concerning future or separate lawmaking is an unwarranted intrusion into the legislative privilege. The same is true for failed attempts by previous Legislatures to pass voter ID legislation. Even

7

if such subjects were relevant in some minute way, their probative value cannot rise to the level of "absolute necessity" so as to justify piercing legislative privilege.

The second factor also tips the balance toward preserving legislative privilege. *Veasey*, 2014 WL 1340077, at *2 (considering "the availability of other evidence"). DOJ has all the privileged documents it demanded in the preclearance trial, and if the Court disagrees with our argument in Part I, then DOJ also will possess SB 14-related documents from nine additional legislators. That is already more privileged information than DOJ believed it needed in the prior lawsuit, and all that arguably has enough probative value to justify the burdens associated with piercing legislative privilege. DOJ should be able to prove its case with the thousands of privileged documents already produced, without the need to obtain the irrelevant and less-relevant documents named in the subpoena. These privileged documents say nothing of the public record for any other past or unrelated legislative activities that the plaintiffs find interesting.

The third and fourth factors remain unchanged. *Veasey*, 2014 WL 1340077, at *2 ("the seriousness of the litigation and the issues involved" and "the role of the government in the litigation").

But the fifth factor again tips the balance toward protecting the privilege. *See id.* (considering "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable"). It is arguable that legislators might anticipate voting rights litigation over election laws like voter ID, and therefore might be less disturbed by a discovery order on that

subject. But DOJ's subpoenas go much further and would blindside legislators in three significant respects. First, legislators cannot and should not expect discovery concerning documents generated after a challenged law takes effect. Second, they cannot expect discovery of communications on separate legislative actions (or inactions). Finally, although legislators *might* fear a worst-case scenario where their computers are searched and their legislative staff deposed with respect to election laws they have passed, they would never anticipate that lawyers for DOJ and for private litigants would seek documents from their campaign offices. For many legislators, such documents would predate their taking the oath of office for the first time, be irrelevant to the case, and remain highly personal. And many legislators would rightfully expect that private documents created in their personal capacity as candidates for office would not be subject to disclosure in a lawsuit brought against their official capacity. The privilege is hardly a privilege at all if every legislative communication, official and personal, that is tangentially related to voter ID in the minds of DOJ attorneys is discoverable and subject to review by a co-equal sovereign — even documents that it did not seek two years ago.

In seeking privileged documents from this Court, DOJ relied on the singular importance of the Voting Rights Act, and on the prior testimony of legislators concerning SB 14. But DOJ's latest request to pierce the privilege goes beyond SB 14, covering a wide array of legislative activity, such as routine laws granting state law enforcement authority to federal immigration agents, *see* SB 530; SB

9

150, that have nothing to do with the rights secured by the Voting Rights Act. In seeking a different ruling on legislative privilege from this Court than the one handed down in *Texas v. Holder*, DOJ has made much of the *Holder* court's focus on the federalism problems inherent in the preclearance regime. Yet they seek to introduce the very same constitutional problems that they claim animated that court's decision into the Section 2 inquiry by casting the discovery net to campaign matters and legislative subjects other than S.B. 14.

### III. PUTTING LEGISLATIVE PRIVILEGE ASIDE, THE SUBPOENA SHOULD BE QUASHED BECAUSE ITS DEMANDS ARE OVERLY BROAD AND UNDULY BURDENSOME.

As explained above, documents related to *the enactment of SB 14* may be relevant to the issues in this case. But DOJ's demands far exceed those categories, *see supra* at 5-6, and the Court should quash the subpoenas' efforts to obtain those irrelevant documents from third parties to this case, not simply because they are privileged but because their request is not reasonably calculated to lead to relevant information. FED. R. CIV. P. 45(d)(3)(A)(iv).

### IV. THE SUBPOENA SHOULD BE QUASHED BECAUSE IT DEMANDS DOCUMENTS PROTECTED BY THE ATTORNEY CLIENT PRIVILEGE.

The subpoena makes no effort to exclude communications protected by the attorney-client privilege or attorney work product. *See, e.g.*, Subpoena ¶ 2 (demanding "[a]ll documents related to communications between, among, or with you, [and] . . . the office of the Texas Attorney General"). The subpoena should be modified to exclude these privileged communications. *See* FED. R. CIV. P 45(d)(3)(A)(iii).

V.  **THE COURT SHOULD RECONSIDER ITS ADOPTION OF THE BALANCING TEST FROM *PEREZ V. PERRY*.**

While the nonparties understand the Court appears headed towards adopting the balancing test from *Perez v. Perry*, 2014 WL 106927, at *2 (S.D. Tex. Jan.8, 2014), in order to preserve the right to appellate review, the third-party legislators urge the court to reconsider the issue before additional legislators must bear the heavy burden of searching for and producing privileged and confidential documents. The non-party legislators adopt the Defendants' argument against application of the balancing test, *see* Doc. 183; Doc. 190, without rehashing it here.

Dated: April 25, 2014

> Respectfully submitted,
>
> GREG ABBOTT
> Attorney General of Texas
>
> DANIEL T. HODGE
> First Assistant Attorney General
>
> JONATHAN F. MITCHELL
> Solicitor General
>
> */s/ Arthur C. D'Andrea*
> ARTHUR C. D'ANDREA
> Assistant Solicitor General
>
> 209 West 14th Street
> P.O. Box 12548
> Austin, Texas 70711-2548
> (512) 475-0131
>
> COUNSEL FOR THE THIRD-PARTY LEGISLATORS

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2014, I served a copy of this document via the Court's electronic filing system to all counsel of record.

<u>/s/ Arthur C. D'Andrea</u><br>ARTHUR C. D'ANDREA