IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

               Plaintiffs,

      v.

NANDITA BERRY, *et al.*,

               Defendants.

Civil Action No. 2:13-cv-291 (NGR)

---

BELINDA ORTIZ, *et al.*,

               Plaintiffs,

      v.

STATE OF TEXAS, *et al.*,

               Defendants.

Civil Action No. 2:13-cv-348 (NGR)

## UNITED STATES' SUPPLEMENTAL BRIEF IN OPPOSITION TO THE MOTION TO QUASH

The United States seeks publicly disseminated campaign materials from certain current and former Texas legislators (hereinafter, "Legislators").  In moving to quash the United States' subpoenas, the Legislators argue that such campaign materials are not relevant to the United States' claim under Section 2 of the Voting Rights Act ("Section 2"), 42 U.S.C. 1973a.  ECF Nos. 251 & 264.  They are incorrect.  Decades of deeply-rooted Section 2 case law establishes that such campaign flyers and advertisements are critically relevant to the core issue before this Court.  Accordingly, this Court should order counsel for the Legislators to produce the contested documents forthwith.  Moreover, and for similar reasons, the United States respectfully requests that the Court reconsider its oral ruling granting the motion to quash as it pertains to the

1

subpoenas' request for immigration-related campaign material.   Such material—relied on by other courts in similar contexts—is highly relevant.

## LEGAL FRAMEWORK

Section 2 of the Voting Rights Act prohibits any State or political subdivision from imposing or applying a "voting qualification," "prerequisite to voting," or "standard, practice, or procedure" that "results in a denial or abridgment of the right of any citizen of the United States to vote on account of race[,] color[, or language minority status]."  42 U.S.C. § 1973(a).  A plaintiff establishes a violation of Section 2 by proving

> based on the totality of circumstances . . . that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a [protected class] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Id*. § 1973(b).  Determining whether, "based on the totality of the circumstances" the political process is "not equally open to participation" by members of a racial group or language minority under Section 2's results test, *id.* § 1973(b), "depends upon a searching practical evaluation of the past and present reality and on a functional view of the political process."  *Thornburg v. Gingles*, 478 U.S. 30, 44 (1986) (citations omitted).  The Senate Report to the 1982 amendments to Section 2 of the Voting Rights Act identifies a number of factors relevant to a court's evaluation of whether a challenged practice or procedure denies minority voters the same opportunity to participate in the political process as other citizens.  Most relevant here, the Senate Report specifically identifies "whether political campaigns have been characterized by overt or subtle racial appeals" as a factor that is potentially probative of whether minority voters

enjoy equal access to the political process.  S. Rep. No. 97-417, at 29 (1982).  Racial appeals in

campaigns are thus included with the following list of specifically enumerated factors:

1. the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process;
2. the extent to which voting in the elections of the state or political subdivision is racially polarized;
3. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;
4. if there is a candidate slating process, whether the members of the minority group have been denied access to that process;
5. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;
6. whether political campaigns have been characterized by overt or subtle racial appeals; and
7. the extent to which members of the minority group have been elected to public office in the jurisdiction.

*Id*. at 28-29.  The Senate Committee identified two additional factors that may be probative of a

plaintiff's Section 2 claim:

[8.] whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group; and

[9.] whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.

*Id*. at 29.  The Senate Committee indicated that this list was non-exhaustive and that no particular

factor, number of factors, or any particular combination of factors need be proved to sustain a

Section 2 claim.  *Id*.  The Fifth Circuit recognizes the critical relevance of the Senate Factors to

the analysis of Section 2 claims.  *See, e.g.*, *League of United Latin Am. Citizens, Council No.*

3

*4434 v. Clements*, 999 F.2d 831, 849 & n. 22(5th Cir. 1993) (en banc);  *Magnolia Bar Ass'n v. Lee*, 994 F.2d 1143, 1146-47 (5th Cir. 1993); *Miss. State Chapter, Operation Push v. Mabus*, 932 F.2d 400, 405 (5th Cir. 1991).  *See also Gingles*, 478 U.S. at 43 n.7 (establishing that the 1982 Senate Report is "the authoritative source for legislative intent" with respect to Section 2).

<u>**ARGUMENT**</u>

**A.  Campaign Materials Related to Voter Identification Requirements Are Relevant to the United States' Section 2 Claim.**

Paragraph 15 of the United States' subpoenas to the Legislators requests:

> All documents related to campaign communications, including but not limited to mailings, ads, websites, flyers, and correspondence, related to voter identification requirements or SB 14, made by or on behalf of any candidate for office in the State of Texas from January 1, 2005 to the present.

*E.g.*, Subpoena to Representative Harless at 6 (ECF No. 254-2).  Campaign materials such as those sought are an essential resource for the Court's analysis of whether "political campaigns have been characterized by overt or subtle racial appeals" as part of the totality of the circumstances analysis.  S. Rep. No. 97-417, at 29.[1]  The United States' complaint explicitly placed this Senate Factor at issue, alleging that the United States intends to prove that "racial appeals continue to characterize certain campaigns in Texas."  Compl. ¶ 39(d) (U.S. v. Tex. ECF No. 1).

Section 2 courts routinely analyze such materials and have noted the presence of racial appeals under Senate Factor 6 where the evidence included:

---

[1] For a comprehensive discussion of all evidence of Senate Factor 6 racial appeals relied on in published Section 2 decisions from 1982 to 2005, *see* Ellen Katz et al., *Documenting Discrimination in Voting: Judicial Findings Under Section 2 of the Voting Rights Act Since 1982*, 39 U. MICH. J.L. REFORM 643, 707-17 (2006).

4

- campaign materials and ads that were distributed by white candidates or their supporters and featured photos of racial minority campaign opponents[2] or otherwise identified their opponent's race;[3]

- campaign materials and ads that darkened the skin color of African-American candidates opposing white candidates,[4] as well as campaign literature that attempted to make white candidates appear dark-skinned;[5]

- campaign materials and ads warning that members of the minority community were poised to "take over" local governance;[6]

- campaign materials attempting to link minority candidates to controversial, and otherwise unrelated, minority figures;[7] and

- campaign materials and ads featuring an "us versus them" racialized sentiment.[8]

In addition to campaign materials and advertisements that draw attention to the race of the

candidates, Section 2 cases have also noted the presence of racial appeals based on the way that

---

[2] *See, e.g.*, *Southern Christian Leadership Conference v. Sessions*, 56 F.3d 1281, 1290 n.17 (11th Cir. 1995); *LULAC*, 999 F.2d at 879; *White v. Alabama*, 867 F. Supp. 1519, 124 (M.D. Ala. 1994); *Magnolia Bar Ass'n v. Lee*, 793 F. Supp. 1386, 1410 (S.D. Miss. 1992).

[3] *See, e.g.*, *Williams v. Dallas*, 734 F. Supp. 1317, 1339 (N.D. Tex. 1990).

[4] *United States v. Charleston County*, 316 F. Supp. 2d 268, 294-97 (D.S.C. 2003); *Ortiz v. Philadelphia*, 824 F. Supp. 514, 536-37 & n.20 (E.D. Pa. 1993).

[5] *Ortiz*, 824 F. Supp. at 537 n.20.

[6] *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 1041 (D.S.D. 2004); *Williams*, 734 F. Supp. 1348.

[7] *See, e.g.*, *Meek v. Metro. Dade Cnty.*, 805 F. Supp. 967, 981-82 (S.D. Fla. 1992).

[8] *Vecinos de Barrio Uno v. City of Holyoke*, 880 F. Supp. 911, 922 (D. Mass. 1995); *Jordan v. Winter*, 604 F. Supp. 807, 813 & n.8 (S.D. Miss. 1984).

campaign materials discussed issues such as crime,[9] subsidized housing,[10] school desegregation,[11] and—most importantly here—illegal immigration.[12]

As these cases show, the Legislators' claims that campaign communications about voter identification requirements have "no relevance" to this case are flatly incorrect. Leg. Supp. Br. at 3 (ECF No. 264). The documents sought are precisely those that can best illuminate whether political campaigns in Texas have featured racially charged rhetoric about voter identification requirements. They are absolutely relevant.[13]

That is especially so where, as here, the United States intends to prove that Texas's implementation and enforcement of SB 14 will interact with the social and historical legacy of intentional discrimination in Texas to deny equal opportunities for Hispanic and African-American voters to participate in the political process. The continued presence of racial appeals in Texas politics—and particularly any racial appeals about voter identification—would be

---

[9] *Goosby v. Hempstead*, 956 F. Supp. 326, 342 (E.D.N.Y. 1997) (racial appeal found from campaign brochure that warned of "urban crime spilling over the county border" and described the candidate as "a major opponent of those who seek to 'Queensify' North Valley Stream and its environs" ); *City of Holyoke*, 880 F. Supp. at 922.

[10] *Butts v. New York*, 614 F. Supp. 1527, 1531 (S.D.N.Y. 1985) ("Badillo's opponents distributed literature misrepresenting or emphasizing Badillo's position on issues said to have racial connotations, such as scatter site subsidized housing.").

[11] *Hempstead*, 956 F. Supp. at 342.

[12] *Garza v. Los Angeles Cnty.*, 756 F. Supp. 1298, 1341 (C.D. Cal.), *aff'd*, 18 F. 2d 763 (9th Cir. 1990).

[13] We note, contrary to the Legislators' assertion, courts have found the statements of individual legislators to be highly probative evidence in Voting Rights Act cases. *Busbee v. Smith*, 549 F. Supp. 494, 500 (D.D.C. 1982) (three-judge court) (declaring, on the way to finding that a reapportionment plan was purposefully discriminatory, that "Representative Joe Mack Wilson is a racist"), *aff'd*, 459 U.S. 1166 (1983).

highly probative of the fact that SB 14 developed in an electoral context that remains marred by the lingering effects of discrimination in voting.[14]

**B. Campaign Materials Related to Immigration Are also Relevant to the United States Section 2 Claim.**

The United States respectfully requests that the Court re-consider its oral ruling during the May 1, 2014, hearing to quash the request in Paragraph 16 of the United States' subpoenas to the Legislators.  That paragraph requests:

> All documents related to campaign communications, including but not limited to mailings, ads, websites, flyers, and correspondence, related to immigration made by or on behalf of any candidate for office in the State of Texas from January 1, 2005, to the present.

*E.g.*, Subpoena to Representative Harless at 6.  Under Section 2 case law, racial appeals are relevant even where the campaign material itself does not specifically discuss the practice challenged in the litigation.  That is so because of the breadth of evidence that courts typically consider under the totality of the circumstances analysis under the Senate Factors.

For instance, in a Section 2 case challenging a city's use of at-large elections, the Court considered campaign materials that featured "a teach the 'Spanish' English theme as an answer to increasing crime and vandalism" and included "a large picture of an Hispanic young man,

---

[14] The Legislators are incorrect in asserting that all such campaign material is "easily accessible" and "publicly available" through other sources.  ECF No. 264 at 4.  Campaign flyers and mailers distributed directly to voters are not publicly available.  Nor is it necessarily true that news outlets maintain copies of all past political advertisements.  The United States' subpoenas focus on the parties most likely to maintain the relevant documents.  By subpoenaing the Legislators themselves for these documents, the parties and the Court will avoid future disputes over whether certain materials were in fact associated with a particular candidate's campaign.

In addition, the Legislators' concern that the United States seeks "internal campaign communications" is misplaced.  The United States does *not* seek purely internal campaign communications.  Notwithstanding any lack of clarity in the transcript, the campaign communications that the United States seeks are ***external***, including "mailings, ads, websites, flyers, and correspondence" transmitted "by or on behalf of any candidate for office" to individual voters or the public.

7

cigarette dangling from his lips and the caption 'The people who really should read this, can't.'"
*Vecinos de Barrio Uno v. City of Holyoke*, 880 F. Supp. 911, 922 (D. Mass. 1995).  In *Garza v. Los Angeles County*, another Section 2 case challenging the use of at-large elections, the Court relied on the fact that an Anglo candidate had "distributed mailers which included [a Hispanic candidate's] photograph and alluded that [the Hispanic candidate] was sympathetic to undocumented aliens" in finding the presence of racial appeals.  756 F. Supp. 1298, 1341 (C.D. Cal.), *aff'd*, 18 F. 2d 763 (9th Cir. 1990).   As these cases demonstrate, campaign materials regarding immigration have vital relevance to a Section 2 claim.

Here, the United States intends to show that the push for voter ID in Texas occurred against a backdrop of dramatic growth in the State's Hispanic population, and that some supporters of voter ID argued that applicable bills would combat illegal immigration, strengthen border security, and prevent non-citizens from voting—notwithstanding the fact that non-citizens may obtain several of the requisite forms of identification under SB 14.  Campaign materials related to immigration are thus related directly to Senate Factor 6, and also provide important context for the United States' claim that SB 14 was enacted with a discriminatory purpose.

## CONCLUSION

The United States respectfully requests that this Court deny the Legislators' motion to quash with respect to Paragraph 15 of the subpoenas.  In addition, the United States respectfully requests that this Court reconsider its decision granting the Legislators' motion to quash with respect to Paragraph 16 of the subpoenas.

8

Date:  May 8, 2014

Respectfully submitted,

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

*s/ Anna M. Baldwin*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

9

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2014, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

John B. Scott
John Reed Clay, Jr.
Gregory David Whitley
Jonathan F. Mitchell
Sean Flammer
Stephen Ronald Keister
Office of the Texas Attorney General
john.scott@texasattorneygeneral.gov
reed.clay@texasattorneygeneral.gov
david.whitley@texasattorneygeneral.gov
jonathan.mitchell@texasattorneygeneral.gov
sean.flammer@texasattorneygeneral.gov
ronny.keister@texasattorneygeneral.gov

*Counsel for Defendants*

Chad W. Dunn
Kembel Scott Brazil
Brazil & Dunn
chad@bradzilanddunn.com
scott@bazilanddunn.com

J. Gerald Hebert
Emma Simson
Campaign Legal Center
ghebert@campaignlegalcenter.org
esimson@campaignlegalcenter.org

Neil G. Baron
Law Offices of Neil G. Baron
neil@ngbaronlaw.com

Armand Derfner
Derfner, Altman, & Wilborn
aderfner@dawlaw.com

Luiz Roberto Vera, Jr.
lrvlaw@sbcglobal.net

*Counsel for Veasey Plaintiffs*

Christina Swarns
Ryan P. Haygood
Natasha M. Korgaonkar
Leah C. Aden
Deuel Ross
NAACP Legal Defense and Educational
  Fund, Inc.
cswarns@naacpldf.org
rhaygood@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
Gerald J. Sinzdak
Lynn Eisenberg
M. Hasan Ali
Richard F. Shordt
WilmerHale LLP
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
Gerard.sinzdak@wilmerhale.com
Lynn.eisenberg@wilmerhale.com
hasan.ali@wilmerhale.com
richard.shordt@wilmerhale.com

*Counsel for Texas League of Young Voters
Plaintiff-Intervenors*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
ezra.rosenberg@dechert.com
amy.rudd@dechert.com

Wendy Weiser
Jennifer Clark
Myrna Pérez
Vishal Agraharkar
Brennan Center for Justice at NYU School of
    Law
wendy.weiser@nyu.edu
jenniferl.clark@nyu.edu
myrna.perez@nyu.edu
vishal.argraharkar@nyu.edu

Mark A. Posner
Sonia Kaur Gill
Erandi Zamora
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
sgill@lawyerscommittee.org
ezamora@lawyerscommittee.org

*Counsel for Texas State Conference of
NAACP Branches Plaintiffs*

Jose Garza
Marinda van Dalen
Robert W. Doggett
Peter McGraw
Texas Rio Grande Legal Aid, Inc.
jgarza@trla.org
mvandalen@trla.org
rdoggett@trla.org
pmcgraw@trla.org

*Counsel for Ortiz Plaintiffs*

Rolando L. Rios
Law Offices of Rolando L. Rios
rrios@rolandorioslaw.com

*Counsel for Texas Association of Hispanic
County Judges and County Commissioners
Plaintiff-Intervenors*

/s/ Anna Baldwin
Anna Baldwin
Voting Section
Civil Rights Division
U.S. Department of Justice
anna.baldwin@usdoj.gov

2