IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>            Plaintiffs,<br><br>     v.<br><br>RICK PERRY, *et al.*,<br><br>            Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>TEXAS LEAGUE OF YOUNG VOTERS<br>EDUCATION FUND, *et al.*,<br><br>            Plaintiff-Intervenors,<br><br>TEXAS ASSOCIATION OF HISPANIC<br>COUNTY JUDGES AND COUNTY<br>COMMISSIONERS, *et al.*,<br><br>            Plaintiff-Intervenors,<br><br>     v.<br><br>STATE OF TEXAS, *et al.*,<br><br>            Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

          Plaintiffs,

    v.

NANDITA BERRY, *et al.*,

          Defendants.

Civil Action No. 2:13-cv-291 (NGR)

---

BELINDA ORTIZ, *et al.*,

          Plaintiffs,

    v.

STATE OF TEXAS, *et al.*,

          Defendants.

Civil Action No. 2:13-cv-348 (NGR)

## UNITED STATES' MOTION FOR A PROTECTIVE ORDER FROM DEFENDANTS' RULE 30(B)(6) NOTICE OF DEPOSITION TO THE UNITED STATES OF AMERICA

On April 16, 2014, Defendants served a Rule 30(b)(6) Notice of Deposition on the United States. *See* Ex. A (Defs.' Not. of Rule 30(b)(6) Dep.).[1]  None of the thirty-nine topics listed are appropriate under the requirements of Federal Rules of Civil Procedure 26(b)(2)(C) and 30(b)(6). Nearly all of the topics are overly broad, cumulative, and unduly burdensome as well as generally irrelevant.  Several threaten to invade protected opinion work product of counsel for the United States.  Viewed individually and taken as a whole, the staggering breadth and marginal relevance of the topics listed can only be understood as intended to mire the United

---

[1] On April 18, 2014, Defendants served a materially similar, corrected version of this same notice. *See* Ex. B (Defs.' Corrected Not. of Rule 30(b)(6) Dep.).

States—and the Court—in time-consuming motion practice.   The service of such a Rule 30(b)(6) notice on the United States is, to our knowledge, unprecedented in decades of litigation under the Voting Rights Act.  The United States respectfully requests that the Court grant a protective order barring Defendants from continuing to seek Rule 30(b)(6) deposition testimony on each and every topic listed in the Notice.

## I.   LEGAL STANDARDS

### A.  Limitations on Discovery Pursuant to Fed. R. Civ. P. 26(b) and (c).

Pursuant to Fed. R. Civ. P. 26(b)(2)(C), a district court "must limit the frequency or extent of discovery otherwise allowed" under the Federal Rules where "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;  (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit."   For good cause, a court may issue a protective order "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding . . . discovery" outright or by "prescribing a discovery method other than the one selected by the party seeking discovery."  Fed. R. Civ. P. 26(c).

### B.  Standards for a Deposition Pursuant to Fed. R. Civ. P. 30(b)(6).

When a party seeks to depose a corporate or governmental entity, the Federal Rules require that the notice of deposition "describe with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6).  To allow Rule 30(b)(6) to function effectively, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."  *Kalis v.*

*Colgate-Palmolive Co*., 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) (citations omitted).  Such

particularity is required because an "overbroad Rule 30(b)(6) notice subjects the noticed party to

an impossible task.  To avoid liability, the noticed party must designate persons knowledgeable

in the areas of inquiry listed in the notice.  Where . . . the [deponent] cannot identify the outer

limits of the areas of inquiry noticed, compliant designation is not feasible."  *Reed v. Bennett*,

193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

Federal courts have recognized that "a designee need not be deposed on matters that are

more reasonably inquired into by other forms of discovery."  *Utica Mut. Ins. Co. v. LifeQuotes of

Am., Inc.*, No. 06-civ-0228-EFS, 2011 U.S. Dist. LEXIS 20100, at *7 (E.D. Wash. Feb. 10,

2011).[2]  In addition, courts have barred 30(b)(6) depositions where the noticed topics would

inevitably invade attorney work product protections.  *See EEOC v. McCormick & Schmick's

Seafood Rests., Inc*., 2010 U.S. Dist. LEXIS 61603, at *10-*17 (D. Md. June 22, 2010).[3]

## II. <u>ARGUMENT</u>

Each of Defendants' 30(b)(6) topics to the United States is improper, and nearly all of

them for multiple reasons.  The United States addresses the defects of each of the thirty-nine

topics below.

### A.    Topic 1 is So Overbroad and Irrelevant as to Appear Designed Solely to Harass and Burden the United States.

Topic 1 in Defendants' Notice requests the designation of a deponent to testify to:

---

[2] *See also Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255, 260 (M.D.N.C. 2010); *BB&T Corp. v. United States*, 233 F.R.D. 447, 448 (M.D.N.C. 2006); *Wilson v. Lakner*, 228 F.R.D. 524, 529 n.8 (D. Md. 2005).

[3] *See also SEC v. SBM Inv. Certificates, Inc.*, 2007 U.S. Dist. LEXIS 12685, at *62-*77 (D. Md. Feb. 23, 2007); *FTC v. U.S. Grant Res., L.L.C.*, 2004 U.S. Dist. LEXIS 11769, at *24-*25 (E.D. La. June 25, 2004);  *SEC v. Buntrock*, 217 F.R.D. 441, 444-45 (N.D. Ill. 2003); *SEC v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996, at *7-*9 (S.D.N.Y. Sep. 16, 1997); *EEOC v. HBE Corp*., 157 F.R.D. 465, 466 (E.D. Mo. 1994).

      1.      Administrative Preclearance of the law of any state, territory or outlying possession of the United States, or the District of Columbia.

The topic of the Attorney General's nationwide decisionmaking on administrative submissions over decades of time is patently overbroad and not relevant to the question at hand of whether SB 14 violates Section 2 of the Voting Rights Act.  The topic is improper on its face as it contains no meaningful time, geographic or subject matter limitations.  *See RM Dean Farms v. Helena Chem. Co*., No. 11-cv-00105, 2012 U.S. Dist. LEXIS 5830, at \*1-\*2 (E. D. Ark. Jan. 19, 2012).  Indeed, since initial passage of Section 5 of the Voting Rights Act of 1965, States have made many thousands of administrative preclearance submissions of voting changes to the Attorney General of the United States.  For example, the Department of Justice's website notes more than 556,268 voting changes submitted for review under Section 5 by covered jurisdictions (including states and local jurisdictions) from 1965 to 2013.  *See* http://www.justice.gov/crt/about/vot/sec_5/changes.php.  Preparing a deponent to testify on such a vast and open-ended topic would be impossible and pointless.

      Even if Defendants had attempted to comply with Rule 30(b)(6)'s reasonable particularity requirement and limited this topic to administrative preclearance of Texas's voting laws, or photo voter identification laws generally, a protective order would still be warranted. Not only are the standards under Section 5 and Section 2 of the Voting Rights Act distinct, *see Reno v. Bossier Parish Sch. Bd*., 520 U.S. 471, 483 (1997), it is black letter law that decisions reached in the Section 5 administrative review process are unreviewable in any court and unappealable.  *Morris v. Gressette*, 432 U.S. 491, 505-07 & n.24 (1977) ("Congress intended to preclude all judicial review of the Attorney General's exercise of discretion" in making preclearance decisions under Section 5 of the Voting Rights Act).  The irrelevance of the topic is

4

only highlighted by the fact that Texas is no longer subject to Section 5, after the decision in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013). The Attorney General's prior administrative determinations under Section 5 are thus not an appropriate or relevant subject of deposition inquiry here.

Notwithstanding the irrelevance of the Attorney General's determinations, in an effort to minimize discovery disputes, the United States has already produced thousands of pages from multiple preclearance submissions to Defendants in response to document requests made in this case and in *Texas v. Holder*. Indeed, the United States has already produced, in this case and in *Texas v. Holder,* the non-privileged contents of every Section 5 submission file regarding SB 14 as well as the submission files regarding certain other States' photo voter identification laws. Those prior productions make Defendants' push for even more discovery especially egregious. Because this virtually limitless topic serves no purpose other than burdening the United States, a protective order is warranted.

**B. Topics 3, 4, and 9 Would Inevitably Invade Attorney Work Product.**

In Topics 3, 4, and 9, Defendants request the designation of a deponent to testify to:

> 3. The United States of America's allegations in Paragraph 35 of its Federal Complaint that "SB 14 will disproportionately impact Hispanic and African-American voters in the State of Texas, resulting in their being disenfranchised at a greater rate than Anglo voters."

> 4. The United States of America's allegations in Paragraphs 67, 68 and 69 of its Federal Complaint that "SB 14…violat[es]" Section 2 of the Voting Rights Act as a "voting qualification or prerequisite to voting or any standard, practice, or procedure that has either the purpose or the result of denying or abridging the right to vote on account of race, color, or membership in a language minority group."

> 9. The United States of America's allegations in Paragraph 41 of its Federal Complaint that "[t]he political processes in the State of Texas…are not equally open to participation by African-American and Hispanic voters…"

5

These topics are among the legal conclusions that the United States intends to prove in this case. Such topics are unfit for a Rule 30(b)(6) deposition because they "constitute[] an impermissible attempt by defendant[s] to inquire into the mental processes and strategies" of the Department of Justice lawyers litigating this case on behalf of the United States. *SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992).[4]

Allowing a Rule 30(b)(6) deposition to proceed on these topics would permit Defendants to "ascertain how the [Department of Justice] intends to marshal the facts, documents and testimony in its possessions, and to discover the inferences that plaintiff believes properly can be drawn from the evidence it has accumulated." *Morelli*, 143 F.R.D. at 47. This is impermissible because the protections extended to privileged opinion work product include

> such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses. Such material is accorded almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases.

*Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (citations omitted). Attorney work product protections would be pierced for each of the three topics at issue regardless of whether they are characterized as pure issues of law, or as mixed issues of law and fact. Fundamentally, each such topic seeks to gather information originating from the United States' lawyers about the Department of Justice's legal theories and "intended lines of proof" in this case. *Id.*

---

[4] *See also EEOC v. McCormick & Schmick's Seafood Rests., Inc.*, 2010 U.S. Dist. LEXIS 61603, *10-*17 (D. Md. 2010); *SEC v. SBM Inv. Certificates, Inc.*, 2007 U.S. Dist. LEXIS 12685, *63 -*77 (D. Md. 2007); *FTC v. U.S. Grant Res., L.L.C.*, 2004 U.S. Dist. LEXIS 11769, *26-*28 (E.D. La. 2004); *SEC v. Buntrock*, 217 F.R.D. 441, 443-45 (N.D. Ill. 2003); *SEC v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996, *7-*9 (S.D.N.Y. 1997); *EEOC v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994).

6

In addition to the inevitable intrusion on attorney work product, allowing Defendants to take a Rule 30(b)(6) deposition on the United States' legal theories is functionally the same as allowing a deposition of opposing counsel.  *See* 28 U.S.C. § 516 (providing that "the conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General").  But the tactic of deposing opposite counsel is widely disfavored,[5] and is generally grounds for a protective order.  *See FTC v. U.S. Grant Res., L.L.C.*, No. 04-cv-596, 2004 U.S. Dist. LEXIS 11769, at *28 (E.D. La. June 25, 2004) ("because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26(c), Fed. R. Civ. P., protective order unless the party seeking the deposition can show both the propriety and the need for the deposition") (citations omitted).

Moreover, Rule 30(b)(6) is not the appropriate discovery device for this kind of material in any event.  Should Defendants wish to take further discovery on the United States' legal theories, contention interrogatories are the appropriate vehicle for doing so.  *Kinetic Concepts*, 268 F.R.D. at 260; *BB&T Corp.*, 233 F.R.D. at 448; *Wilson*, 228 F.R.D. at 529 n.8.

### C.  Topics 7 and 8 are vague and cumulative.

Topics 7 and 8 request the designation of a deponent to testify as to:

> 7. The Public Integrity Reports submitted to the Congress of the United States annually pursuant to the Ethics in Government Act of 1978, since 2004.

---

[5] *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999) ("depositions of opposing counsel are disfavored generally and should be permitted in only limited circumstances"); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (explaining that deposing opposite counsel "disrupts the adversarial system[,] . . . lowers the standards of the profession, . . . adds to the already burdensome time and costs of litigation[, and] . . . detracts from the quality of client representation"); *see also Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 n.2 (2d Cir. 1987) (noting that seeking discovery from opposing counsel is generally disfavored); *Johnstone v. Wabick*, 220 F. Supp. 2d 899, 901 (N.D. Ill. 2002) (same); *Marco Island Partners v. Oak Dev. Corp.,* 117 F.R.D. 418, 420 (N.D. Ill. 1987) (same).

> 8. The Ballot Access and Voting Integrity Initiative, which may also be known as the Ballot Integrity Initiative, for the 2002 general election and subsequent elections, implemented by the Public Integrity Section of the Criminal Division of the United States Department of Justice, in or around September 2002.

These topics generally concern federal criminal prosecutions by the United States Department of Justice.  The United States has already produced many of the reports that are the subject of topic 7—these reports are publicly available documents submitted to Congress by the Public Integrity Section of the Criminal Division of the Department of Justice.  Pursuant to the Ethics in Government Act of 1978, these reports discuss the Public Integrity Section's cases and other responsibilities.[6]

The Department of Justice's Ballot Access and Voting Integrity initiative ("BAVI") that is the subject of topic 8 includes internal training sessions attended by attorneys from the United States Department of Justice and agents from the Federal Bureau of Investigation, held beginning in 2002, and coordination and prioritization on the prosecution of various types of election crimes, including vote buying and absentee ballot fraud, and campaign financing offenses.[7]  The United States has already produced over 1000 pages of documents from presentations at multiple BAVI trainings and symposiums.

---

[6]  The reports include summaries of the activities of the Public Integrity Section's Election Crimes Branch, which handles "all election crime allegations other than those involving federal voting rights, which are handled by the Civil Rights Division. Specifically, the Branch supervises three types of election crime cases: (1) vote frauds, such as vote buying and absentee ballot fraud; (2) campaign-financing crimes, most notably under the Federal Election Campaign Act (FECA); and (3) patronage crimes, such as political shakedowns and misuse of federal programs for political purposes."  Ex. C (2012 PIN Report at p. 4).  Certain aspects of the reports have absolutely no relationship to the subject matter of this litigation.  *See, e.g.*, Ex. D (2007 PIN Report at pp. 5-6) (discussing multiple prosecutions regarding corruption in U.S. reconstruction efforts in Iraq).  The reports from 2007 forward are available on the Department's website.  *See* http://www.justice.gov/criminal/pin/.

[7] *See* Press Release, U.S. Department of Justice, "Fact Sheet: Department of Justice Ballot Access and Voter Integrity Initiative" (July 26, 2006), http://www.justice.gov/opa/pr/2006/July/06_crt_468.html.

Defendants' open-ended topics regarding publicly available reports and a long-running, widely-publicized federal criminal law enforcement initiative are vague, cumulative, overly broad, and unduly burdensome.  Defendants do not identify which prosecutions, statistics, or aspects of the reports or initiative that they wish to inquire about.  Absent such particularity, it is not possible to adequately select and prepare a deponent.

More fundamentally, however, neither of these topics addresses the only law at issue in this case—Texas's SB 14.  It is simply not the case that any and every document in the possession of the Federal government that has some relationship to "voter fraud," is somehow relevant to the claims in this case.  The information about voter fraud that is relevant to this case is information that Texas officials and the Texas Legislature considered during the course of passing a photo voter ID law.  The proper sources of that information are in Texas, not the federal government.  Neither the Public Integrity reports nor the BAVI documents have anything to do with the motivations behind SB 14, the requirements of SB 14, or effects on minority voters of SB 14.  However these topics might be formulated or re-formulated, they are of such attenuated relevance to this case that the burden imposed on the United States to prepare for such a deposition far outweighs the utility of this discovery.

**D.  Topics 2, 5, 6, and 10 are Vague, Overly Broad, and Unduly Burdensome.**

Topics 2, 5, 6, and 10 request the designation of a deponent to testify as to:

2. Enforcement of Section 2 of the Voting Rights Act.

5. The use of federal observers or examiners under the Voting Rights Act.

6. Election monitoring under the Voting Rights Act.

10. The Voting Section of the Civil Rights Division of the United States Department of Justice complaint in-take phone logs and data, as well as the Interactive Case Management (ICM) system, including but not limited to,

communications to and from vot1973c@usdoj.gov.

Topics 2, 5, and 6 are facially deficient because they lack both geographic and time period limitations.  *See RM Dean Farms*, 2012 U.S. Dist. LEXIS 5830 at *2.  Each is of such sprawling scope—addressing various aspects of enforcement of nationwide voting rights statute enacted in 1965 and enforced by the United States in hundreds of cases and, in the case of Section 2, by private parties in countless more cases—that adequate deposition preparation would again be impossible.  But even if Defendants had attempted to comply with Rule 30(b)(6) and narrowed these expansive topics, a motion for protective order would still be warranted.  The manner in which the Department of Justice carries out its statutory enforcement responsibilities under the Voting Rights Act is not at issue in this case.  As such, these topics are another improper attempt to depose opposing counsel regarding the nature and scope of the Department's enforcement priorities and prosecutorial discretion.  *See* supra at 5-7.

Topic 10 is likewise deficient as it lacks any time or subject matter limitations as to the "communications" at issue.  It is also flatly improper because it requests testimony using "including but not limited to" language.  *See Richardson v. Rock City Mech. Co.*, No. 3-09-0092, 2010 U.S. Dist. LEXIS 16647, at *18 (M.D. Tenn. Feb. 24, 2010) ("topics in a Rule 30(b)(6) notice are themselves overbroad if they include 'including but not limited to' language"); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005) (finding topics overbroad due to "including but not limited to" language and explaining that "[l]isting several categories and stating that the inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all").  Defendants cannot remedy these defects simply by narrowing Topic 10.  Again, the operative facts in this case do not concern complaints made to

the Department of Justice, but instead focus on the actions taken by Texas officials and the Texas Legislature and in passing and implementing SB 14.

Notwithstanding its general irrelevance, by May 16, 2014, the United States will have produced various information, including paper and email communications as well as phone complaint logs, using relevant keyword searches.  That discovery should fully meet any legitimate needs Defendants have.  Further discovery on this topic would be cumulative and unduly burdensome.  Defendants are not entitled to deposition testimony about actions taken or not taken by the Department in response to such communications, as those lines of questioning would inevitably raise deliberative process[8] and law enforcement privilege issues.[9]

### E.  Topics 11 Through 30 Are Overly Broad and Unduly Burdensome.

Taken together, Topics 11 through 30 seek testimony on every single substantiated or unsubstantiated instance of "election crime" or "voter fraud" nationwide since 2004.  The staggering breadth of the information sought is irreconcilable with a good faith request for Rule 30(b)(6) testimony.  Topics 11 through 20 seeks testimony related to "election crimes" including "any instance," "any allegation (substantiated or unsubstantiated)," "any investigation" "any prosecution" as well as "any potential prosecution" for "election crimes" in Texas or nationwide over the past decade.  Topics 21 through 30 repeat each of the prior topics but with respect to "any instance," "any allegation (substantiated or unsubstantiated)," "any investigation," "any prosecution" as well as "any potential prosecution" of "voter fraud" in Texas or nationwide since 2004.  Each of these virtually limitless topics runs afoul of Rule 30(b)(6) and Rule 26(b)(2).

---

[8] *See, e.g.*, *May v. Dep't of Air Force*, 777 F.2d 1012, 1014-15 (5th Cir. 1984); *SEC v. Cuban*, No. 3:08-cv-2050, 2013 WL 1091233, at *9 (N.D. Tex. Mar. 15, 2013).

[9] *See In re United States Dep't of Homeland Sec.*, 459 F.3d 565, 569-70 (5th Cir. 2006) (recognizing law enforcement privilege); *see also Tuite v. Henry*, 181 F.R.D. 175, 176-77 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999); *McPeek v. Ashcroft*, 202 F.R.D. 332, 336 (D.D.C. 2001).

As set out in the Definitions to the Notice, the term "Election Crimes" not only includes "any criminal form of voter fraud" but any form of "interference with or invalidation of election results" that are "prohibited by state or federal law."  Defendants' definition of "Voter Fraud" is equally vast.  It "includes, but is not limited to":

> (1) making or knowingly possession [sic] a counterfeit of an official election ballot; (2) signing a name other than one's own to a petition proposing an initiative, referendum, recall, or nomination of a candidate for office; (3) knowingly signing more than once for the proposition, question, or candidate in one election; (4) signing a petition proposing an initiative or referendum when the signer is not a qualified voter; (5) voting or attempting to vote in the name of another person; (6) voting or attempting to vote more than once during the same election; (7) intentionally making a false affidavit, swearing falsely, or falsely affirming under an oath required by statute regarding one's voting status, including when registering to vote, requesting an absentee ballot or presenting to vote in person; (8) registering to vote without being entitled to register; (9) knowingly making a materially false statement on an application for voter registration or re-registration; (10) voting or attempting to vote in an election after being disqualified or when the person knows that he/she is not eligible to vote; and/or (11) knowingly soliciting or encouraging a person who is not qualified to vote in an election.

Neither of these definitions, nor the topics that incorporate them, have meaningfully discernible limits, and thus violate Rule 30(b)(6).  Given the breadth of these topics, any good faith effort to comply with the Notice would involve gathering a decade's worth of information from representatives of not only the Criminal Division of the Department of Justice but also the nearly one hundred U.S. Attorney's offices, as well as dozens of FBI field offices, around the country. Requiring the United States to inventory all actual or possible election criminality in Texas or across the country is neither possible, nor of any practical benefit to resolving the issues before the Court.[10]  This case is about a single Texas law which addresses a single type of voter fraud—

---

[10] Instead, each of these topics invites needless diversion of the parties' and Court's  resources to litigate issues relating to the scope of the law enforcement privilege (especially as to "investigations" "allegations" and "potential prosecutions" of various offenses) for no apparent benefit to the resolution of

in-person voter impersonation in Texas.  The relevant information concerning voter fraud is that

which was presented to and considered by voter ID proponents in the Texas Legislature.  Texas

already has the relevant information on this topic squarely in its possession. This case is not

about every instance of election criminality under state or federal law (much less unsubstantiated

alleged criminality) around the country of which one or more Federal law enforcement officials

may be aware years after the passage of SB 14.

### F.  Topics 31-36 Have No Relevance to the Issues in this Case.

Topics 31 to 36 concern purported requirements to show photo identification to "enter

any Federal Building," "to board an aircraft," or "to enter a Court."  These topics seek testimony

on subjects "including but not limited to" the existence and details of any such requirements, the

intent behind such requirements, "any calculations, reports, audits, estimates projections or other

analyses done by commissioned by, or in the possession custody or control of the United States"

regarding the effects of such requirements.  In an attempt to make any of this relevant,

Defendants appended to a few of these topics a request for testimony that "includ[es] but [is] not

limited to" any form of analysis "done by or commissioned by the United States of America

relating to whether such requirements would have the effect of denying or abridging the right to

vote on account of race, color, or membership in a language minority group."

All of these topics are plainly overbroad, and those without the fig leaf purporting to

connect the topic to voting are of no relevance whatsoever.  But pasting in language related to

the Voting Rights Act does not render any of these topics proper or relevant.  Counsel for the

United States is unaware of any analysis relating to whether purported photo identification

the issues presented in this litigation.  *See In re United States Dep't of Homeland Sec.*, 459 F.3d at 569-
70.

requirements to enter Federal buildings, courts, or airplanes have any effect on the right to vote on account of race, color or language minority status.  There is no reason to burden the United States with sitting for a deposition in which its representative announces exactly that.

### G.  Topic 37 is Vague, Overly Broad, and Unduly Burdensome.

This topic requests designation of a deponent to testify about:

> 37. Any calculations, reports, audits, estimates, projections, or other analyses done by, commissioned by, or in the possession, custody, or control of, the United States of America, relating to the effect of SB 14 or any other law which requires photographic identification for voting, including but not limited to, calculations, reports, audits, estimates, projections, or other analyses done by or commissioned by, or in the possession, custody, or control of the United States of America, relating to the effect of SB 14 or any other law which contains a requirement to provide photographic identification for voting (1) on minority voters or on voters who are members of a language minority group, from 2004 to the Present; (2) on instances of Voter Fraud; and/or (3) on instances of Election Crimes.

This topic is both vague and overly broad, and also incorporates definitions that exceed the bounds of Rule 30(b)(6) for the reasons discussed above.  Like many of Defendants' other topics, it sweeps far beyond the scope of SB 14, to reports and analyses related to any number of other unidentified laws.  To the extent that the United States has any analyses about SB 14's effects that are not privileged, or do not constitute premature expert witness disclosures, they have already been produced, or are a matter of public record.  Additional reports on the impact of SB 14 on minority voters will be provided as part of expert discovery in accordance with the Scheduling Order.  ECF No. 231.  Defendants are not entitled to a Rule 30(b)(6) deposition to pierce work product protections and gather the thoughts and impressions of counsel for the United States regarding already-produced reports (such as expert reports from *Texas v. Holder*) about SB 14, *see* supra at 5-7,  nor to gain access to premature expert discovery in this case.

14

**H.    Topics 38 and 39 Are Not Appropriate Topics for 30(b)(6) Deposition of the United States In This Case.**

Topics 38 and 39 request designation of a deponent to testify regarding:

> 38.  Data relating to voter turnout in Texas, compiled by the United States of America, since 2004.

> 39.  Data relating to voter demographics in Texas, compiled by the United States of America, since 2004.

Information related to these topics is primarily within Defendants' possession, not the possession of the United States.  To the extent that the United States has such information, it is based on data that it publicly available (*e.g.*, census data), data from Texas itself (*e.g.*, information from the Texas Secretary of State's voter registration database), or expert analysis.  Given that such data is equally accessible to Defendants, or will be disclosed in due course as part of expert discovery, deposition on these topics would impose an undue burden on the United States. especially because the only information not already in Texas's possession is protected opinion work product regarding how counsel for the United States intends to marshal those publicly available facts.


### III. CONCLUSION

For the reasons set out above, the United States respectfully requests that this Court grant its request for a protective order.  Pursuant to Local Rule 7.4(D), a proposed order granting this motion is attached hereto.

15

Date:  May 12, 2014

                                                Respectfully submitted,

KENNETH MAGIDSON                    JOCELYN SAMUELS
United States Attorney                       Acting Assistant Attorney General
Southern District of Texas               Civil Rights Division

                                                *s/ Anna M. Baldwin*
                                                T. CHRISTIAN HERREN, JR.
                                                MEREDITH BELL-PLATTS
                                                ELIZABETH S. WESTFALL
                                                BRUCE I. GEAR
                                                JENNIFER L. MARANZANO
                                                ANNA M. BALDWIN
                                                DANIEL J. FREEMAN
                                                Attorneys, Voting Section
                                                Civil Rights Division
                                                U.S. Department of Justice
                                              950 Pennsylvania Avenue, N.W.
                                              Washington, D.C. 20530

16

## **CERTIFICATE OF CONFERRAL**

I hereby certify, pursuant to Fed. R. Civ. P 26(c)(1), that the United States has in good faith conferred with Defendants in an effort to resolve this dispute without court action.

_s/ Anna M. Baldwin_____
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

       I hereby certify that on May 12, 2014, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

John B. Scott
John Reed Clay, Jr.
Gregory David Whitley
Jonathan F. Mitchell
Sean Flammer
Stephen Ronald Keister
Office of the Texas Attorney General
john.scott@texasattorneygeneral.gov
reed.clay@texasattorneygeneral.gov
david.whitley@texasattorneygeneral.gov
jonathan.mitchell@texasattorneygeneral.gov
sean.flammer@texasattorneygeneral.gov
ronny.keister@texasattorneygeneral.gov

*Counsel for Defendants*

Chad W. Dunn
Kembel Scott Brazil
Brazil & Dunn
chad@bradzilanddunn.com
scott@bazilanddunn.com

J. Gerald Hebert
Emma Simson
Campaign Legal Center
ghebert@campaignlegalcenter.org
esimson@campaignlegalcenter.org

Neil G. Baron
Law Offices of Neil G. Baron
neil@ngbaronlaw.com

Armand Derfner
Derfner, Altman, & Wilborn
aderfner@dawlaw.com

Luiz Roberto Vera, Jr.
lrvlaw@sbcglobal.net

*Counsel for Veasey Plaintiffs*

Christina Swarns
Ryan P. Haygood
Natasha M. Korgaonkar
Leah C. Aden
Deuel Ross
NAACP Legal Defense and Educational
    Fund, Inc.
cswarns@naacpldf.org
rhaygood@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack

Gerald J. Sinzdak
Lynn Eisenberg
M. Hasan Ali
Richard F. Shordt
WilmerHale LLP
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
Gerard.sinzdak@wilmerhale.com
Lynn.eisenberg@wilmerhale.com
hasan.ali@wilmerhale.com
richard.shordt@wilmerhale.com

*Counsel for Texas League of Young Voters
Plaintiff-Intervenors*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
ezra.rosenberg@dechert.com
amy.rudd@dechert.com

Wendy Weiser
Jennifer Clark
Myrna Pérez
Vishal Agraharkar
Brennan Center for Justice at NYU School of
    Law
wendy.weiser@nyu.edu
jenniferl.clark@nyu.edu
myrna.perez@nyu.edu
vishal.argraharkar@nyu.edu

Mark A. Posner
Sonia Kaur Gill
Erandi Zamora
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
sgill@lawyerscommittee.org
ezamora@lawyerscommittee.org

*Counsel for Texas State Conference of
NAACP Branches Plaintiffs*

Jose Garza
Marinda van Dalen
Robert W. Doggett
Peter McGraw
Texas Rio Grande Legal Aid, Inc.
jgarza@trla.org
mvandalen@trla.org
rdoggett@trla.org
pmcgraw@trla.org

*Counsel for Ortiz Plaintiffs*

Rolando L. Rios
Law Offices of Rolando L. Rios
rrios@rolandorioslaw.com

*Counsel for Texas Association of Hispanic
County Judges and County Commissioners
Plaintiff-Intervenors*

/s/ Anna Baldwin
Anna Baldwin
Voting Section
Civil Rights Division
U.S. Department of Justice
anna.baldwin@usdoj.gov

4