UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


MARC VEASEY, ET AL.,           )      CASE NO: 2:13-CV-00193
                               )
            Plaintiffs,        )           CIVIL
                               )
     vs.                       )      Corpus Christi, Texas
                               )
RICK PERRY, ET AL.,            )      Wednesday, May 28, 2014
                               )      (8:56 a.m. to 9:24 a.m.)
            Defendants.        )      (2:55 p.m. to 3:34 p.m.)


TELEPHONIC STATUS CONFERENCE

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE


Appearances:              See Next Page

Court Recorder:           Genay Rogan

Clerk:                    Brandy Cortez

Transcriber:              Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES FOR:</u>


Marc Veasey, et al.:    CHAD W. DUNN, ESQ.
    Brazil and Dunn
    4201 Cypress Creek Parkway, Suite 530
    Houston, TX 77068

    ARMAND DERFNER, ESQ.
    P.O. Box 600
    Charleston, SC 29402

    J. GERALD HEBERT, ESQ.
    191 Somervelle Street
    #405
    Alexandria, VA 22304

    KEMBEL SCOTT BRAZIL, ESQ.
    Brazil and Dunn
    4201 Cypress Creek Parkway
    Suite 530
    Houston, TX 77068

    EMMA SIMPSON, ESQ.

United States
of America:    ANNA BALDWIN, ESQ.
    DANIEL FREEMAN, ESQ.
    ELIZABETH WESTFALL, ESQ.
    U. S. Department of Justice
    950 Pennsylvania Avenue, N.W.
    NWB Room 7125
    Washington, DC 20530

Mexican American
Legislative Caucus,
et al.:    EZRA D. ROSENBERG, ESQ.
    Dechert, LLP
    902 Carnegie Center, Suite 500
    Princeton, NJ 08540-6531

Oscar Ortiz, et al.:    ROBERT W. DOGGETT, ESQ.
    Texas Rio Grande Legal Aid
    4920 North IH 35
    Austin, TX 78751

    MARINDA VAN DALEN, ESQ.
    Texas Rio Grande Legal Aid
    531 E. St. Francis
    Brownsville, TX 78520

<u>**APPEARANCES FOR:**</u>    (CONTINUED)

| | |
|---|---|
| Texas Association of | ROLANDO L. RIOS, ESQ. |
| Hispanic County Judges | 115 E. Travis |
| and County | Suite 1654 |
| Commissioners: | San Antonio, TX 78205 |
| Texas League of Young | NATASHA KORGAONKAR, ESQ. |
| Voters Education Fund: | NAACP Legal Defendant and Educational |

Funds, Inc.
40 Rector Street
5th Floor
New York, NY 10006

RYAN HAYGOOD, ESQ.
NAACP Legal Def. and Educational Fund
40 Rector Street, 5th Floor
New York, NY 10006

KELLY DUNBAR, ESQ.

State of Texas:          JOHN BARRET SCOTT, ESQ.
                         Scott, Yung, L.L.P.
                         208 N. Market Street
                         Suite 200
                         Dallas, TX 75202

                         JOHN R. CLAY, ESQ.
                         Office of the Attorney General
                         P.O. Box 12548
                         MC 001
                         Austin, TX 78711

                         ARTHUR D'ANDREA, ESQ.
                         JENNIFER ROSCETTI, ESQ.

1       **Corpus Christi, Texas; Wednesday, May 28, 2014; 8:56 a.m.**

2                              **Call to Order**

3          **THE CLERK:**  Good morning, Counsel.  This is Brandy

4   with Judge Ramos's Court.  Do I have attorneys on the line for

5   the individuals, Veasey, et al.

6          **MR. DUNN:**  Yes.  Hi, good morning.  This is Chad Dunn

7   and with me is Armand Derfner, Emma Simpson, Gerry Hebert, Neil

8   Baron and Scott Brazil.

9          **THE CLERK:**  Thank you.  And then for the United

10  States who do I have present?

11         **MS. WESTFALL:**  Yes, this is Elizabeth Westfall for

12  the United States, and I have Dan Freeman and Anna Baldwin on

13  the line and some others who will not be participating.

14         **THE CLERK:**  Thank you.  And for the Mexican American

15  Legislative Caucus, Mr. Rosenberg?

16         **MR. ROSENBERG:**  Yes, I'm on the line and there may be

17  some others from my group, but I'll be doing the speaking.

18         **THE CLERK:**  Okay.  And then for Ortiz, et al, Ms. Van

19  Dalen?

20         **MS. VAN DALEN:**  Yes, ma'am, Mirinda Van Dalen and

21  Robert Doggett is on the line as well.

22         **THE CLERK:**  Thank you.  And for the Texas Association

23  of Hispanic County Judges, Mr. Rios or Mr. Henrickson?

24         **MR. RIOS:**  Rolando Rios is on the line, your Honor.

25         **THE CLERK:**  Thank you.  And for the Texas League of

1   Young Voters, Mr. Haygood?  Natasha?

2           **MR. HAYGOOD:**  Yes, ma'am, I'm here along with my

3   colleague, Natasha Korgaonkar.

4           **THE CLERK:**  Thank you.

5           **MR. DUNBAR:**  And Kelly Dunbar is on the line as well.

6           **THE CLERK:**  Thank you, Mr. Dunbar.

7           And for the State of Texas, Mr. Scott, Mr. O'Donnell

8   and Mr. D'Andrea.

9           **MR. SCOTT:**  John Scott and I'm here with a bunch of

10  others.  (indiscernible) talking --

11          **THE CLERK:**  Okay.

12          **MR. SCOTT:**  (indiscernible)

13          **THE CLERK:**  Okay.  Okay, I'm going to place you-all

14  on a brief hold and the Judge should be taking the bench in

15  just a moment.

16          **MR. SPEAKER:**  (indiscernible) some of this may be on

17  speaker.

18     **(A recess was taken from 8:57 a.m. to 9:00 a.m.)**

19          **THE COURT:**  Good morning.  The Court calls Cause

20  Number 2:13-00193, *Veasey, et al versus Perry, et al* and

21  Ms. Cortez will take roll call.

22          **THE CLERK:**  Your Honor, for the individuals Veasey,

23  et al we have Mr. Dunn, Mr.Derfner, Mr. Baron, Mr. Hebert,

24  Mr. Brazil and Ms. Simpson present, and they've already

25  announced for the record.

1          **THE COURT:**  Okay.

2          **THE CLERK:**  The United States we have Ms. Baldwin,

3   Mr. Freeman and Ms. Westfall present.

4          For the Mexican American Legislative Caucus we have

5   Mr. Rosenberg present.

6          For Ortiz, et al we have Mr. Doggett and Mr. Van

7   Dalen [sic] present.

8          For the Texas Association of Hispanic County Judges,

9   Mr. Rios is present.

10         For the Texas League of Young Voters we have

11   Mr. Haygood and Ms. Korgaonkar present.

12         And for the State of Texas we have Mr. Scott and

13   Mr. Clay present.

14         **THE COURT:**  All right.  This is, I guess, our 10-day

15   Status Hearing so I'm just going to go down the list of matters

16   that are pending and then at the end we can address anything

17   else that needs to be addressed.

18         But the first thing was the United States Request for

19   Judicial Notice.  That's been opposed by the Defendants, and

20   there was a Response filed.

21         Anything else from the Government on that issue?

22         **MS. BALDWIN:**  Your Honor, this is Ms. Baldwin for the

23   United States.

24         We would just say that the summaries which are the

25   only portions the Defendants appear to be contesting, are the

1    actual specific facts that are taken out of the underlying

2    attachments which they don't object to and identify the exact

3    -- exactly what Federal Rules the Government contemplates and,

4    in fact, those summaries (indiscernible) notices have been

5    taken in other cases with the State of Texas and we would

6    (indiscernible) well-established and appropriate in this case.

7              **THE COURT:**  Okay, what's the Defendants' objections

8    then, specific objection to the summaries?

9              **MR. CLAY:**  Your Honor, this is Reid Clay for the

10   State of Texas.

11             If there's limited information contained in the

12   little summaries that the United States has done then we don't

13   see what benefits or what need there is taking judicial notice

14   of their editorialized summaries if the Court is already going

15   to take judicial notice of the underlying Texas data which

16   they've already pinpointed where -- which parts of the Texas

17   data that they need for the Court to take judicial notice of --

18             **THE COURT:**  Okay, but what is the objections to the

19   summaries?  That they're not correct or what is the objection?

20             **MR. CLAY:**  No.  I guess, your Honor, the objection is

21   that there are a number of different ways that data could be

22   looked at, and (indiscernible) in any particular way is almost

23   by definition editorializing it and leaving some out by --

24   while looking at others and grouping certain categories of

25   information together.  It's --

1       **THE COURT:**  The Defense does not agree with the facts

2  set forth in the Summary, is that the objection?

3       **MR. CLAY:**  Yes, your Honor.

4       **THE COURT:**  So you're saying it's not correct as it's

5  been set out?

6       **MR. CLAY:**  Well, we're saying that there's a number

7  of different ways to --

8       **THE COURT:**  But is this one way to -- is this one way

9  to summarize it, or is it incorrect?

10       **MR. CLAY:**  Yes, that is one way to summarize it.

11       **THE COURT:**  Okay.  Court is going to grant the

12  Request for Judicial Notice.  I understand there may be a

13  different way that the Defendants will summarize that evidence,

14  is that correct or no?

15       **MR. CLAY:**  Yes, your Honor.

16       **THE COURT:**  Okay, so that Request is granted for

17  Judicial Notice of that matter presented by the United States.

18       Anything else on that issue?

19      **(No audible response)**

20       **THE COURT:**  Then we will move onto -- there is still

21  this -- and I think it was the timing on this, the Defendant's

22  First Amended Motion to Compel has been hanging out there.

23  I've inquired about it at our -- the hearings we've been

24  having.  I believe you-all were still working on that.

25       Is there anything left, or are we still waiting on

1    some -- I think it was the timing of the documents that were

2    going to be produced.

3            **MS. WESTFALL:**  Your Honor, this is Elizabeth Westfall

4    for the United States.

5            We did produce the documents and I believe we did a

6    full production.  I don't believe there are any remaining

7    disputes related to that Motion.

8            **THE COURT:**  Is that correct?  Who is speaking for the

9    Defendants on that?

10           **MS. ROSCETTI:**  Your Honor, this is Jennifer Roscetti

11   for the Defendants.

12           While the United States has some privilege, the

13   Defendants feel that there is no common interest in the Fifth

14   Circuit and we would take issue with them relying on that

15   privilege.

16           The case law is very, very clear *In RE:  Santa Fe* two

17   instances where common interest doctrine is applied so --

18           **THE COURT:**  Okay, so that's not -- has not been

19   resolved?  There's something that the Court needs to address on

20   this Motion to Compel?

21           **MS. ROSCETTI:**  Yes, your Honor, I believe so.

22           **THE COURT:**  Okay.  Then I need you-all to narrow that

23   for me, maybe provide just a -- well, it wouldn't be agreed,

24   but just provide a -- maybe a joint statement to the Court as

25   to what the issue is because I don't want to go through

1    everything when I may not need to, okay?

2              **MR. DERFNER:**  Yes.  Your Honor --

3              **THE COURT:**  Yes.

4              **MR. DERFNER:**  -- this is Armand Derfner on behalf of

5    Veasey, Plaintiffs.

6              We have a very specific interest in that common

7    interest question.  We've been talking with Defendants' Counsel

8    as well.  We are still talking.  We haven't reached any

9    agreement yet.  I frankly think we're not going to reach any

10   agreement.  We disagree very vehemently with what Ms. Roscetti

11   just said about the Fifth Circuit law and so we expect to file

12   something and take part in this issue which as of now affects

13   mostly the United States, although the communications involves

14   communications above, and will also very soon involve the

15   issues as to production that we make or don't they?

16             **THE COURT:**  Okay.  Well, I need probably no more than

17   10 pages from whoever is going to be involved in this, provide

18   one document to the Court regarding your different positions,

19   okay, as to exactly what the issue is.  Because I don't think

20   the entire Motion to Compel is on the table anymore, is that

21   right?

22             **MS. ROSCETTI:**  That is right, your Honor.  This is

23   Jennifer Roscetti.

24             **MR. DERFNER:**  Yeah, I think the main issue seems to

25   be common interest, and that's a big issue.

1          **THE COURT:**  Then provide one document to the Court

2     that sets out your different positions, no more than 10 pages,

3     and we may need -- we'll just get back on the phone on that.

4          **MR. DERFNER:**  And, your Honor --

5          **MS. WESTFALL:**  Your Honor --

6          **MR. DERFNER:**  -- I take it that means that

7     (indiscernible) of this issue should be stated in that

8     document?

9          **THE COURT:**  Yes.  Yes.

10         **MR. DERFNER:**  Thank you.

11         **MS. WESTFALL:**  Your Honor, this is Elizabeth

12    Westfall.  May I be heard --

13         **THE COURT:**  Yes.

14         **MS. WESTFALL:**  -- on this issue?

15         I think fundamentally we're happy to provide the

16    Court with the United States position on the common interest

17    doctrine, but I would like to point out that I think none of

18    the documents sought by the State have any relevance whatsoever

19    to this litigation.

20         We have been ordered by this Court to coordinate

21    amongst Plaintiffs and Plaintiff Intervenors on Interrogatories

22    and on Depositions and, therefore, we certainly have a common

23    interest.  But more fundamentally none of the documents that

24    the State seeks has any relevance to the claim or defenses

25    thereto in this litigation.

1          **THE COURT:**  Okay, well, you can set that out in your

2    position.  I'm going to assume the Defendants disagree with

3    that, and that's why this is still before the Court, is that

4    right, Ms. Roscetti?

5          **MS. ROSCETTI:**  Yes, your Honor.

6          **MR. DERFNER:**  And, your Honor, do you want to set a

7    timing date for that position paper or should we try it

8    ourselves?

9          **THE COURT:**  No.  Let's see, how about one week, June

10   4th.

11         When is our next meeting, Brandy?  Okay, do it by

12   June 4th, okay?

13         **MR. DERFNER:**  Thank you.

14         **MS. ROSCETTI:**  Thank you.

15         **THE COURT:**  All right, then I'm moving on.

16         There was -- parties were conferring on the United

17   States Motion for Protective Order regarding the 30(B)(6)

18   deposition.

19         Were you-all able to resolve that, or what issues are

20   left for the Court.

21         **MS. BALDWIN:**  Your Honor, this is Anna Baldwin for

22   the United States.

23         With respect to some of the topics we were able to

24   come to a resolution.  However, with respect to others the

25   parties are still negotiating.

1          It's my understanding if I could confirm with Texas

2   that Texas has raised as its issues with the Court today

3   regarding Topics 7 through 8 and 11 through 30, so I can

4   provide some context on that.

5          **MS. WILSON:**  Good morning, your Honor.  This is

6   Lindsey Wilson for the State of Texas.  Actually I think at

7   this time we're going to continue to confer with the United

8   States on all of the Topics and hopefully address them all at

9   one time with the Court, so we respectfully request time that

10  we can sort of deal with those issues to see if we can work

11  some more issues out.

12         **THE COURT:**  Okay, so you-all are still conferring on

13  that issue and we'll address that at our next Status Hearing,

14  is that correct, was it Ms. -- who was speaking for the

15  Government, Ms. Westfall?

16         **MS. BALDWIN:**  (indiscernible) Baldwin.  We're happy

17  to continue negotiating with the Defendants throughout regards

18  to (indiscernible).  We had talked many, many, many other forms

19  of discovery devices to get any information that could possibly

20  be considered relevant and we're happy to continue those

21  discussions.

22         **THE COURT:**  Right.  Okay, then we will address those

23  further at our next Status Hearing.

24         The next thing I had was after hours yesterday there

25  was a Motion to Quash by Senator Patrick.  It was just filed.

1    I don't know if there is anything that can be discussed to

2    narrow some of that or not.

3         **MR. FREEMAN:**  Your Honor, this is Dan Freeman on

4    behalf of the United States.  And the United States would be

5    happy to file a Response to that Motion on Monday.  I

6    respectfully request a hearing on Wednesday.

7         The Legislators have essentially called a halt to all

8    of that (indiscernible) of Legislators and their aides

9    notwithstanding the fact that those are the same category of

10   witnesses that the Defendants have listed on their initial

11   disclosures and that those are the same category of witnesses

12   that the State presented at trial in *Texas v Holder*.

13   Nonetheless, they have brought a Motion to Quash in another

14   district and brought this Motion for a Protective Order in this

15   Court.

16        The State of Texas asked for exactly the same relief

17   in *Perez v Perry*, a redistricting case and was denied in terms

18   of stopping all legislative depositions.  And the State of

19   Texas asked for the same, stopping all legislative efforts in

20   *Texas v Holder* and was denied.

21        The only difference here seems to be that they

22   believe that the United States is entitled to no further

23   discovery in this case and that cannot be the case given the

24   degree of discovery that's going on, the time that has passed

25   and (indiscernible) legal standard under Section 2.  And,

1    therefore, while the United States will be happy to file a

2    Response on Monday, we believe that it would be appropriate for

3    this Court to rule (indiscernible) must go forward on a date

4    that is agreeable between parties, and that any assertions of

5    any legislative privilege that might be raised with regard to

6    individual questions.  This is the same --

7         **THE COURT:**  Wait, I think that was a procedure that

8    was used in the -- what's the name of the case pending in San

9    Antonio, the redistricting?

10        **MR. FREEMAN:**  Your Honor, in *Perez v Perry* --

11        **THE COURT:**  *Perez,* yes.  Yeah.

12        **MR. FREEMAN:**  -- the procedure was to place the

13   entire deposition under seal, and then if a legislator were to

14   assert a State Legislator privilege certainly then that

15   deposition would be placed under seal.  In fact, no legislator

16   would be able to (indiscernible) in *Perez.*

17        In *Texas v Holder* the procedure --

18        **THE COURT:**  I thought -- I thought -- I'm sorry, I

19   thought that Court clarified that and gave them different

20   options as to how to proceed on matters they thought were

21   privileged, but I'll go back and look at that.

22        **MR. FREEMAN:**  Yes -- your Honor -- I'm sorry.

23   Subsequently, the Court did say that if a Legislator wished to

24   decline to answer they could; however, to my knowledge, and I'm

25   also Counsel of record on that matter, no Legislator has

1    invoked a State Legislative privilege or declined to answer a

2    question thus far in that litigation.

3              In *Texas v Holder* that was also the procedure that

4    was utilized when depositions went forward, and any claim of

5    privilege could be made and Legislators did decline to answer a

6    question on that basis, and as in ordinary litigation, if the

7    party making the deposition disagreed with that refusal to

8    answer then it -- then it just went to the Court.  And we

9    believe that given the small amount of time that is a proper

10   procedure to move forward on, not this blanket Protective Order

11   sought by the State.

12             **THE COURT:**  Okay.  Then it sounds like you want to

13   file your Response by Monday, with the hearing on Wednesday?

14             **MR. FREEMAN:**  (indiscernible).

15             **THE COURT:**  I'm going to start limiting your briefing

16   on these discovery issues to 10 pages.  If you need more than

17   that you need to seek a Leave.  I just -- I think most of what

18   you-all have to say can be done in 10 pages most of the time,

19   but I'm getting 20 and 30 pages and it's just too time-

20   consuming.  I don't think that's -- we're being efficient or

21   fruitful moving this case so --

22             **MR. FREEMAN:**  We're happy to do so, your Honor.

23             **MR. ROSENBERG:**  And, your Honor, if I may, Ezra

24   Rosenberg on behalf of MALC and Texas NAACP.

25             We join in the Department of Justice's request.  We

```
 1   just wanted to add the need for expedition on this given that

 2   we have until June 27th for the conclusion of fact discovery.

 3   Now all of the necessary depositions, and I forget how many

 4   notices were sent out, I believe somewhere between 12 --

 5          THE COURT:  Okay, hold on a second.  Hold on one

 6   second.  It's very staticy.  We're not catching that.  Hold on,

 7   let's see what we can do on our end.

 8      (Pause)

 9          THE COURT:  Okay, maybe if you could slow down.

10   We're getting a lot of static on this end, so if you can

11   backtrack a little bit.

12          MR. ROSENBERG:  Sure, is this better.

13          THE COURT:  Try again.

14          MR. ROSENBERG:  Sure.  Ezra Rosenberg for --

15          THE COURT:  Yes.

16          MR. ROSENBERG:  -- Texas NAACP and MALC.

17          I just wanted to support what Mr. Freeman said, and

18   just note again that all of the depositions now, all of the

19   legislative depositions have been stayed and we only have about

20   four or five weeks left of fact discovery, so it is so

21   important for this issue to be adjudicated as soon as possible.

22          THE COURT:  Okay, so we get a Response by June 2nd

23   and we have a hearing at 8:30 on June 4th, we should be able to

24   move on that, correct?

25          MR. ROSENBERG:  Thank you very much.
```

1           **MR. FREEMAN:**  And, your Honor, just a quick factual

2  clarification.  I've been informed that, in fact, one

3  Legislator has both a State Legislative privilege in *Perez v*

4  *Perry,* the reason he indicated he declined to answer

5  (indiscernible) procedures.  I apologize for what I stated

6  previously.

7           **THE COURT:**  Okay.

8           **MR. D'ANDREA:**  Your Honor, this is Arthur D'Andrea, a

9  State of Texas Legislator, may I speak?

10           **THE COURT:**  I'm sorry?  I'm sorry, who is this?  For

11  some reason we're having a little trouble on our end.

12           **MR. D'ANDREA:**  This is Arthur D'Andrea, I'm the one

13  who filed the Motion to Quash.

14           **THE COURT:**  Okay.

15           **MR. D'ANDREA:**  I'd just like to speak briefly on

16  this.  (indiscernible), but you expressed an interest in *Texas*

17  *v Holder* and what happened there is the District Courts told

18  them -- told the (indiscernible) they could not ask about

19  privileged matters, they could only ask about public matters

20  and so the depositions were wonderfully useful and sort of an

21  exercise in (indiscernible) and so I proposed and wanted to go

22  forward with that procedure.  You know, I think it would be a

23  waste of everyone's time to do something like that and I think

24  that's why the depositions are better off quashed.

25           **MR. FREEMAN:**  Your Honor, if I may respond?

1          **THE COURT:**  Yes.

2          **MR. FREEMAN:**  Mr. D'Andrea was not Counsel in *Texas v*

3   *Holder,* but those depositions were certainly necessary in order

4   to cross examine the witnesses that the State of Texas put

5   forward.

6          The State of Texas requested the exact same relief

7   that they requested for quashing (indiscernible) and quashing

8   legislative efforts in their entirety and I believe that was

9   denied.

10          **THE COURT:**  Yeah, I don't think -- I don't think it's

11   appropriate to quash the entire deposition.

12          The issue is going to be how we address the

13   privilege, I think is the point.

14          **MR. FREEMAN:**  Your Honor, if I may, to the extent

15   that your Honor believes that it would not be appropriate to

16   quash the depositions in entirety, the United States would

17   request an Order to that effect so that we may begin to

18   schedule these depositions.  We attempted to schedule

19   previously.  Counsel for the Legislators told us that he was

20   communicating with his client for --

21          **THE COURT:**  Okay, just stop right there.  So why

22   don't -- why don't -- I'll work on that and when we talk on

23   June 4th we need to discuss some dates for those depositions so

24   Defense needs to get with those witnesses and start getting

25   dates, correct?

1          **MR. D'ANDREA:**  Yes, your Honor.

2          **THE COURT:**  Okay.

3          **MR. FREEMAN:**  Thank you, your Honor.

4          **THE COURT:**  All right.  There was an emergency email

5    or an email sent this morning regarding a emergency issue.

6    Have you-all had a chance to discuss that?

7          **MR. DERFNER:**  Your Honor, this is Armand Derfner.

8          We still have not heard the first word from Texas so

9    we need to hear from them before trying to bother you.

10         **THE COURT:**  Okay.  Well, let's just kind of move it

11   along.  Who is speaking for Texas on that issue?

12         **MR. CLAY:**  Your Honor, this is Reid Clay for the

13   State of Texas.

14         We are still in conference with DOJ.  In fact, we

15   have a call scheduled for five minutes after this hearing ends

16   to continue discussions that we've been having with them about

17   the way in which this matching process is going to ultimately

18   be culminated and produced to all parties.

19         **THE COURT:**  Okay, so I don't need to address that

20   right now, correct?

21         **MR. DERFNER:**  No, but, your Honor, we don't

22   understand why they're not talking with us.

23         **THE COURT:**  Okay.  Why aren't you-all talking to

24   everybody that needs to be talked to?  Who is speaking for the

25   Defense?

1          **MR. CLAY:**  Your Honor, this is Reid Clay again for

2    the State of Texas.

3          The Department of Justice approached us as they drew

4    close to producing this data, and I suppose that the reason

5    that the conversation had ended between us and the Department

6    of Justice is simply because of the genesis of the conversation

7    was an email from DOJ to the State of Texas.

8          **THE COURT:**  Okay, well, it's time to start talking to

9    the private Plaintiffs, so are you-all willing to do that or do

10   I need to address that?

11         **MR. CLAY:**  Well, we can include it in this

12   conversation.

13         **THE COURT:**  Okay.  What else on that issue, then?

14         **MR. DERFNER:**  Your Honor, this is Armand Derfner

15   again.

16         Unfortunately, the history of this case is that even

17   if we don't get this resolved, we -- this is just a real time

18   sensitive issue.  Is it possible that you could set a default

19   time where you might have some time available if we can't

20   resolve it either this afternoon or tomorrow morning --

21         **THE COURT:**  I can -- I can schedule you at 3:00

22   o'clock today, probably not available tomorrow.  Tomorrow would

23   be up in the air.

24         **MR. DERFNER:**  That would be great.  Thank you, your

25   Honor.

1          **MS. BALDWIN:**  Your Honor --

2          **MR. DERFNER:**  (indiscernible)

3          **THE COURT:**  I'm sorry, who is trying to speak?

4          **MS. BALDWIN:**  I'm sorry, your Honor.  This is Anna

5   Baldwin for the United States.  We greatly appreciate you

6   scheduling the 3:00 o'clock time today.

7          Essentially we thought we had an understanding with

8   Texas about the scope of the data that we produced that was

9   based on the jointly filed document that the United States and

10  Texas have before this Court months ago, Number 160 which

11  discusses the information that the office was going to include.

12  We continued to work on that basis just in confirming that that

13  was going to be what happened.

14          Had Texas indicated that they did not wish for vast

15  amounts of information be disclosed to private Plaintiffs,

16  which we don't see any reason for that, but more fundamentally,

17  as well, (indiscernible) to occur this week absolutely

18  impossible because the data is ready to go with that

19  information included, so we missed that deadline because of the

20  -- would prejudice the entire cascading set of dates that

21  happened --

22          **THE COURT:**  Okay.  It's my understanding -- it's my

23  understanding right after this hearing you-all are going to

24  confer further and that's going to be the United States as well

25  as -- is it going to be Mr. Derfner for the private Plaintiffs?

1          **MR. DERFNER:**  I guess.  I'd be willing to --

2          **THE COURT:**  Well, who is going to participate in

3   this?  Let's get that straight?

4          **MR. DERFNER:**  Okay, Armand Derfner, Emma Simpson for

5   the private Plaintiffs.  Anybody else?

6      **(No audible response)**

7          **THE COURT:**  Okay.

8          **MR. DERFNER:**  We're happy to have anybody else join

9   in, but those two, at least, will begin.

10         **THE COURT:**  And then --

11         **MR. ROSENBERG:**  Your Honor, Ezra Rosenberg.  We'll

12   join also.

13         **THE COURT:**  All right.  And then, Ms. Baldwin, will

14   it be you from the United States?

15         **MS. BALDWIN:**  Amongst other colleagues, yes, your

16   Honor.

17         **THE COURT:**  Okay, and then with the State of Texas --

18   or the Defendants, Mr. Clay?

19         **MR. CLAY:**  Yes, it will be me, John Scott, and David

20   (indiscernible).

21         **THE COURT:**  And it's my understanding that's going to

22   -- going to happen right after our hearing, correct?

23         **MR. CLAY:**  Yes, your Honor.

24         **THE COURT:**  And then we'll get on the phone at 3:00

25   o'clock today to see if there's any issues remaining, and if

1  not just let Brandy know and we'll cancel the 3:00 o'clock,

2  okay?

3          **MS. BALDWIN:**  Thank you, your Honor.

4          **MR. CLAY:**  Thank you.

5          **THE COURT:**  What -- what else for this morning, and

6  then let me summarize.

7      **(No audible response)**

8          **THE COURT:**  If nothing else for this morning then I

9  granted the United States Request for Judicial Notice regarding

10  DE-252.

11          On the First Amended Motion to Compel you-all are

12  going to file a joint pleading or document or statement with

13  your different positions, no more than 10 pages by June 4th.

14          And we're going to have a hearing on June 6th --

15  Brandy, was that on June 6th, would that be at 8:30?

16          **MR. SPEAKER:**  It's actually June 4th.

17          **THE CLERK:**  June 4th at 8:30.

18          **THE COURT:**  That's -- I'm sorry, June 2nd then is

19  when the document is going to be filed with the Court with a

20  hearing on June 4th at 8:30, sorry.

21          Then you-all are continuing to confer on the Motion

22  for Protective Order regarding the Rule 30(B)(6) depositions.

23          And regarding the Motion to Quash, again, there will

24  be a response from the United States by June 2nd, and that will

25  also be addressed at the June 4th hearing.

1          You-all will continue discussing the issues with the

2    data base production of documents regarding that today and

3    we'll meet again at 3:00 o'clock on that issue.

4          Was there anything else?

5          **MR. DERFNER:**  Your Honor, this is Armand Derfner.

6          Just for clarification, initially you said you wanted

7    that 10-page document among State and party's positions on

8    common interest by June 4, but if you're going to have this

9    hearing --

10         **THE COURT:**  I'm sorry, I thought -- did we say -- I

11   have June 4th, too, but I think we're bumping it to June 2nd so

12   we can address it on June 4th.  Is that a problem or no?

13         **MR. DERFNER:**  No, that's why I wanted you to clarify.

14         **THE COURT:**  Okay, yeah.  What else?

15         **MR. FREEMAN:**  Your Honor, this is Dan Freeman.

16         Also you had stated that the parties should

17   meet/confer regarding dates for the legislative (indiscernible)

18   depositions.  Have subpoenas have been issued?

19         **THE COURT:**  Right.

20         **MR. FREEMAN:**  Thank you, your Honor.

21         **THE COURT:**  Because we're going to -- if you-all

22   haven't confirmed dates we'll address that on June 4th, that

23   Wednesday.

24         **MR. FREEMAN:**  Your Honor -- I'm sorry, your Honor.

25   Just -- I want to clarify (indiscernible) I'm hearing the right

1    thing.

2            My client -- (indiscernible) depositions have been

3    issued in other districts have asked that they invoke their

4    right to have those amended by the local Court, and so I'm

5    happy to sort of tentatively schedule that, but I hope -- it's

6    my understanding that the third parties may not invoke their

7    rights in those --

8            **THE COURT:**  No, I'm just dealing with whoever is

9    before me, whoever I have jurisdiction over, whoever I'm

10   discussing or we're discussing for this Court, that's what I'm

11   talking about, correct?

12           **MR. FREEMAN:**  Okay, thank you.  Understood, your

13   Honor.  And we'll be moving to transfer those Motions to Quash

14   to this Court.

15           **THE COURT:**  But in terms -- in terms of moving the

16   discovery along, there's no reason why you-all shouldn't start

17   talking about depo dates for everybody, correct?

18           **MR. FREEMAN:**  Yes.  We're happy to do so, your Honor.

19           **THE COURT:**  Okay.  All right.  All right, then we'll

20   see you at 3:00 o'clock.  Thank you, you are excused.

21           **MR. FREEMAN:**  Thank you so much.

22           **MS. BALDWIN:**  Thank you, your Honor.

23           **MR. SPEAKER:**  Thank you, your Honor.

24   //

25   //

1      (Proceeding was adjourned at 9:24 a.m. and reconvened at

2  2:55 p.m.)

3           THE CLERK:  . . . this Court.  For the individual

4  Veaseys, do I have Mr. Dunn present?

5      (No audible response)

6           For United States, Ms. Baldwin?

7           MS. BALDWIN:  Present.

8           THE CLERK:  Thank you.  And for the Mexican American

9  Legislative Caucus, Mr. Rosenberg?

10          MR. ROSENBERG:  Yes, present.

11          THE CLERK:  Thank you.  For Ortiz, et al., Mr. Garza?

12          MR. DOGGETT:  I'm sorry, Judge.  Robert Doggett.

13          THE CLERK:  Thank you, Mr. Doggett.  Is Ms. Van Dalen

14  with you?

15          MR. DOGGETT:  No, ma'am.  Sorry.

16          THE CLERK:  Okay.

17          For the Texas Association of Hispanic County Judges,

18  Mr. Rios?

19      (No audible response)

20          For the Texas League of Young Voters, Mr. Haygood or

21  Ms. Korgaonkar?

22          MR. HAYGOOD:  Yes, ma'am, we're both here.

23          THE CLERK:  Thank you.  And for --

24          MR. DUNBAR:  (indiscernible) Dunbar for the Texas --

25          THE CLERK:  I'm sorry?

1          **MR. HAYGOOD:**  Are we on the record (indiscernible)?

2          **MR. DUNBAR:**  Kelly Dunbar for the Texas League as

3   well.

4          **THE CLERK:**  And, okay, for the State of Texas,

5   Mr. Clay?

6          **MR. SCOTT:**  John Scott on for State of Texas.

7          **THE CLERK:**  Thank you, Mr. Scott.

8          Mr. Dunn, are you present or anybody for the

9   individuals?

10          **MR. DERFNER:**  This is Mr. Derfner on.

11          **THE CLERK:**  Mr. Derfner?

12          **MS. SIMPSON:**  This is Emma Simpson and Gerry Hebert.

13          **MR. SPEAKER:**  Okay.

14          **THE CLERK:**  Thank you.

15          Ms. Simpson, is Mr. Dunn going to appear, or is it

16   just going to be you and Mr. Hebert?

17          **MS. SIMPSON:**  Um, Mr. Derfner is also going to be

18   joining, but Mr. Dunn, I believe, is on an airplane.

19          **THE CLERK:**  Okay.  Thank you.

20          Who's going to be doing the speaking for the

21   individuals?

22          **MS. SIMPSON:**  Mr. Derfner is going to be taking the

23   lead.

24          **THE CLERK:**  Thank you.  And, then, for United States,

25   Ms. Baldwin, are you going to be taking the lead?

1          **MS. BALDWIN:**  Yes, ma'am.

2          **THE CLERK:**  Thank you.  And, then, for the Mexican

3  American Legislative Caucus, Mr. Rosenberg?

4          **MR. ROSENBERG:**  Yes.

5          **THE CLERK:**  For Ortiz, et al., Mr. Doggett?

6          **MR. DOGGETT:**  Yes, ma'am.

7          **THE CLERK:**  And for the Texas Association of Hispanic

8  County Judge, Mr. Rios, are you present?

9      **(No audible response)**

10         For the League of Young Voters, is it going to be

11  Mr. Haygood or Mr. -- or Ms. Korgaonkar?

12         **MR. HAYGOOD:**  Yes, just -- but it may -- it may also

13  be Mr. Kelly Dunbar as well.

14         **THE CLERK:**  Okay.  And, then, for the State of Texas,

15  Mr. Scott, are you going to be doing the speaking?

16      **(No audible response)**

17         Mr. Scott?

18         **MR. SCOTT:**  Yes.  I'm sorry.

19         **THE CLERK:**  That's okay.  Is anybody else going to

20  join you on the call?

21         **MR. SCOTT:**  I think I'm it.

22         **THE COURT:**  Okay.  Thank you.

23         I'm going to place you on a brief hold, and the judge

24  will take the bench in just a moment.  Counsel, if I could just

25  ask also if you could identify yourself before you speak so

1   Genay can get a clear record for transcript purposes.

2           And, Mr. Rios, are you present yet?

3       **(No audible response)**

4           **THE CLERK:**  Or Mr. Henrichson?

5       **(No audible response)**

6       **(Off the record from 2:58 p.m. until 3:00 p.m.)**

7           **THE CLERK:**  Mr. Rios, are you present for the

8   Association of County Judges?

9       **(No audible response)**

10          **THE CLERK:**  Mr. Henrichson?

11      **(No audible response)**

12          **THE CLERK:**  Mr. Donnell, are you present for the

13  State of Texas?

14          **MR. DONNELL:**  Yes.  Thank you.

15          **THE CLERK:**  Thank you.

16      **(Off the record from 3:00 p.m. until 3:01 p.m.**

17          **THE CLERK:**  Good afternoon, your Honor.  For the

18  individual Veasey plaintiffs we have Mr. Derfner, Mr. Hebert,

19  and Ms. Simpson.

20          For United States of America we have Ms. Baldwin.

21          For the Mexican American Legislative Caucus,

22  Mr. Rosenberg.

23          For Ortiz, et al., Mr. Doggett.

24          For Texas Association of County Judges, Mr. Rios.

25          For Texas League of Young Voters, Mr. Haygood, Ms. --

1   Mr. Dunbar, and Ms. Korgaonkar.

2           And for the State of Texas, Mr. Scott and

3   Mr. Donnell.

4           **THE COURT:**  All right.  Good afternoon.  Two-13-193,

5   *Veasey et al. versus Perry, et al.*  We had recessed this

6   morning.  The parties were going to confer further on the issue

7   of the database or production from that.  So, where are we?

8   Who's going to take the lead here?

9           **MR. DERFNER:**  This is Armand Derfner.  I guess I

10  might as well take the lead since I'm the one who brought it

11  up.  Yeah, we had a conversation this morning, and we wound up

12  further apart than we started.  Should I go -- go ahead, your

13  Honor?

14          **THE COURT:**  Yes.  Now, there were some filings

15  recently, and the State of Texas offered something.  Have you

16  seen that, Mr. Derfner?

17          **MR. DERFNER:**  I have.  I have.  And I appreciate

18  Mr. Scott making that offer, but --

19          **THE COURT:**  Okay.

20          **MR. DERFNER:**  -- if I understood it correctly, it's

21  not acceptable for two reasons.  And I just sent him back an e-

22  mail to that effect.

23          One reason is that it puts it -- no -- just where we

24  were yesterday when we thought the issue had first arisen, that

25  is, they would agree to provide the database fields that went

1    into the actual algorithms but nothing else.  And that's where

2    we thought -- that's where we thought that we were yesterday,

3    where they were going to give the -- the databases used in the

4    algorithm, but withhold the records, and that's why we got so

5    alarmed.  This morning when we talked we found out, no, no, no,

6    they wanted the whole -- the whole -- the whole business, to

7    withhold every single piece of data.  So, the fact that they've

8    come back and now are offering what we were complaining about

9    yesterday, it just doesn't work.

10            And I won't speak for the Department of Justice; they

11   can.  But my -- my sense is that the other part that Texas

12   would want, which is huge releases from the United States'

13   various federal agencies' databases, I'm sure would be

14   unacceptable to the Department of Justice.

15            So, what we're looking -- I'm sorry.

16            **MS. BALDWIN:**  If I could just join in on that point,

17   your Honor.  This is Ms. Baldwin.  On the -- what the

18   defendants have framed as a compromise is really no compromise

19   at all.  The United States had agreed to and has been operating

20   under the assumption that the TEAM data, the voter registration

21   data, which is public data, essentially, would be provided to

22   all parties in the litigation with the matching results from

23   other agencies' databases.  So, the DPS results would be

24   provided, but no underlying Texas DPS data would be provided,

25   in the same way that no underlying federal data would be

1    provided.  It would just be the match results along with the

2    voter registration information that would be given equally to

3    all parties save for the social security -- full social

4    security number, which would only go to the State of Texas.

5              What Texas has proposed as a compromise is, again, as

6    Mr. Derfner said, not -- not only some, you know, limited

7    information, which wasn't our understanding, but, more

8    fundamentally from the United States' perspective, it's

9    conditioning even that limited release on the same release of

10   information from the federal databases.  That is absolutely not

11   what the federal agencies have agreed to.  They would not agree

12   to that.  It would destroy the schedule we're operating under

13   and would likely generate all kinds of collateral litigation

14   because the State Department is simply not going to agree to

15   disclose the names and addresses literally of every passport

16   holder in the country, nor is the Department of Defense going

17   to agree to disclose the names and addresses of every holder of

18   military I.D. in the country.  It's a vast, vast disclosure of

19   information that would totally make a September 2nd trial

20   completely impossible.

21             **MR. DERFNER:**  But, your Honor -- this is Derfner

22   again.  It's also irrelevant, because what's -- what's at stake

23   here, what we're arguing about, is the TEAM database, which

24   stands for the Texas Election Administrative something or

25   other.  It's the voter registration database.  That's what we

1    are looking for.  We are not getting the DPS database, the

2    license to carry database, the drivers' license --

3              THE COURT:  Okay.  And --

4              MR. DERFNER:  We're not --

5              THE COURT:  And let me just ask.  Can I just ask:

6    What is it that Texas is saying they're not going to produce?

7    What is the issue?

8              MR. DERFNER:  Anything.  Anything out of the election

9    database.  Anything.

10             THE COURT:  Okay.  I guess, let -- Mr. Scott, why?

11   Nothing?

12             MR. SCOTT:  Your Honor -- and a little bit of

13   history, because we don't come here without a lot of history.

14   One of the things that Ms. Baldwin said on -- way back when in

15   (indiscernible) -- I think it was on our February 14th

16   conference -- was, to the Court, that the agreed portion --

17   "Well, your Honor" -- I'm quoting Ms. Baldwin -- "Our

18   understanding is that in, you know, the agreed portion that

19   would be entered, the data would be produced only -- but would

20   only be produced to the United States" -- continuing on that

21   same page; this is page nine.  Texas raised initially two

22   concerns.  One was that the data should only be produced to the

23   United States.  I understand that that concern is addressed in

24   the four corners of the agreed upon document.  When we came to

25   the Court and the original agreement that we worked out with

1  DOJ was blown up by the party plaintiffs that Mr. Derfner and

2  Mr. Dunn represent, they said that they didn't like the way it

3  was set up and didn't want to do it that way.  And, so, we went

4  through yet -- an enormous amount of effort to try and come up

5  with another agreement.  That was Document 174, which is the

6  order of this Court.  And it says that the complete Texas

7  database provided by defendant shall at all times remain in

8  sole custody of the United States.  It's -- there is not any

9  ambiguity.

10           **MR. DERFNER:**  Now, read the rest of that paragraph.

11           **MR. SCOTT:**  Well, it's paragraph two, your Honor,

12  of -- of document number 174.

13           **MR. DERFNER:**  Read the rest of it.  Read the rest of

14  it.

15           **MR. SCOTT:**  So, I think our position at least in this

16  case has been we have now extended an enormous amount of time,

17  an enormous amount of effort to preparing the defense of this

18  case based upon the fact that we were doing a matching of -- a

19  process to determine who the no-match list was.  That was the

20  algorithm process that was -- that was all -- that we discussed

21  back in January and February.  But this is the subject matter

22  of the Court's order of Jan- -- I'm sorry -- February 18th.  It

23  is -- we -- we forewent discovery.  We forewent discovery that

24  we had sought from the United States on different issues

25  relating to the databases.  We had come up with the matching

1    combinations as a result of these protocols that all parties

2    were able to produce and come up with whatever combination or

3    algorithm that they were asking the Department of Justice

4    search on all of these databases that were provided to the

5    United States of America.  We did that on a leap of faith

6    because we had an agreement and that we were going to go that

7    route.  We performed everything like we were supposed to under

8    the terms of that agreement.

9            **THE COURT:**  Okay.  But, so, what --

10           **MR. SCOTT:**  Now, all of a sudden, they want to attach

11   a copy of the complete TEAM database, which was never

12   envisioned by anybody in this case --

13           **MR. SPEAKER:**  (indiscernible)

14           **MR. SCOTT:**  -- and surely was not envisioned in the

15   Court's order, nor in any of the communications we had with the

16   Court back in (indiscernible).

17           **THE COURT:**  Okay.  And I guess, let me ask:  What is

18   the objection to producing that to a party to this litigation?

19           **MR. SCOTT:**  Well, it -- it is putting us at an

20   enormous disadvantage.  We have gone out and defended this case

21   based upon the (indiscernible) -- based upon what we saw the

22   algorithms that the parties presented to the Court.

23           **THE COURT:**  What is -- what is the objection?  Why is

24   it a problem to turn that over to another party to this case?

25           **MR. SCOTT:**  That allows them to manipulate our data

1    and puts us at a disadvantage by not having all the databases

2    of the United States of America to go back and see if we can

3    manipulate that data to come up with different results.  And,

4    so, if we're going to open the databases up for the State of

5    Texas and they're not going to be there, that's

6    (indiscernible).

7              THE COURT:  Okay.  Hold on.

8              MR. SCOTT:  That's (indiscernible).

9              THE COURT:  Hold on.  Hold on.  We're having -- hold

10   on.  We're having trouble hearing you, one; but maybe I have

11   this issue wrong.  I thought the issue is that whatever was

12   produced to the United States, the defendant is not wanting to

13   have the private plaintiffs have that.  Is that not correct?

14             MR. SCOTT:  That is the order of the Court.  Yes.

15   That was our order that we were -- it -- going back to that

16   time frame in February --

17             THE COURT:  Okay.  But --

18             MR. SCOTT:  -- we were ordered to produce the

19   databases before anybody introduced their algorithms by which

20   we were going to search.  So, we turned over complete

21   databases, with the understanding from the Court that we were

22   supposed to, and that when the parties did it, the Department

23   of Justice was going to hold on to those complete databases.

24   We also then went through that process where each party had

25   seven and 14 days, respectively, to produce their algorithms

1    that they were asking the Department of Justice to have

2    performed on those databases.

3            **THE COURT:**  Okay.

4            **MR. SCOTT:**  We have now defended this case four

5    months based upon those algorithms that were presented and we

6    thought were being run.  So, our objection is that we have

7    undertaken this case based upon the Court's order, Number 174,

8    and the algorithms that were (indiscernible) -- were produced

9    as a result of that, and we have attempted to try and cobble

10   together a defense that envisioned how parties would be using

11   that information.  So, now, all of a sudden, to say that our

12   databases that were ordered turned over before anybody did

13   their algorithms are now going -- now being produced in whole

14   to all of the party plaintiffs, without giving the defendant

15   even an opportunity to come up with another defense or start

16   working on a defense, seems, at the very least, objectionable.

17           **THE COURT:**  Okay.

18           **MS. BALDWIN:**  Your Honor, this is Ms. Baldwin, if I

19   may clarify the -- from our perspective, how this process

20   evolved.  So, the United States and defendants together filed a

21   joint proposed order to the Court at Document Number 160.  And

22   in that joint proposed order, paragraph two, which -- of

23   Document 160 -- says that:

24           "The complete Texas databases provided to defendant

25           shall at all times remain in the full custody of the

1           United States; the United States (indiscernible)

2           while it was working on this litigation.  Consistent

3           with paragraph 13 of this order, certain information

4           from the Texas Election Administrative Management

5           system database will be provided to other parties in

6           these consolidated cases at the conclusion of the

7           database comparison process below."

8      So, this is in a joint proposal that the United

9  States and defendants have jointly submitted.  Paragraph 13,

10 the referenced paragraph, goes on to very specifically spell

11 out that -- in 160 -- that:

12          "Algorithm responses will consist of copies of the

13          extract of the Texas Election Administrative

14          Management system database produced by defendants to

15          the United States, subject to the qualification

16          regarding social security account numbers, specified

17          in the next sentence, with the output of the

18          comparison algorithm or algorithms appended to

19          individual voter records.  Copies of the algorithm

20          responses produced to private plaintiffs and

21          plaintiff intervenors shall include social security

22          account numbers redacted to their final four digits."

23     And it goes on just to describe social security

24 numbers a little farther.  The upshot of this, your Honor, is

25 that the understanding that we had with the defendant, from our

1    view, after extensive conversation from the outset, is that the

2    algorithm responses have always been envisioned to include the

3    data that the United States requested and received from Texas

4    regarding voter registration with the matching outputs

5    essentially added on; envisioned that amidst the giant

6    spreadsheet you have all of the voter registration information,

7    and then the matching combination you have outputs appended on.

8    That's what we understood; that's what we negotiated; that's

9    what defendants jointly filed with us in 160.  Because there

10   was a dispute with the Veasey claimants essentially over

11   timing, of when the algorithm responses were going to be

12   produced -- your Honor may recall we had a dispute about

13   whether certain things were going to be run at the same time or

14   in seriatim order -- it led to a partial order that got the

15   ball rolling but didn't include all of the very same terms.

16   That particular paragraph that lays out in detail in Document

17   Number 160, paragraph 13, isn't re-included in 174.  But our

18   understanding is that was -- it wasn't included because it

19   wasn't controversial.  We all understood that TEAM would be

20   provided, save for the full social security number, to all

21   parties.  What would not be provided and what the protection

22   that Texas still got was that Texas didn't have to disclose its

23   driver license database, its concealed handgun database, its

24   personal identification database.  Those databases were only

25   disclosed to the United States, and they wouldn't be disclosed

1    to the private parties, notwithstanding the fact that they had

2    been disclosed in the prior litigation, in the same way that

3    the databases for the relevant federal I.D.'s, the passport

4    database that the State Department has, its military I.D.

5    database that the Department of Defense has, et cetera, those

6    would also not be disclosed.  Essentially, the federal agencies

7    would run the matching comparisons and the United States would

8    run for the federal data, to the voter registration data, and

9    piece those on, essentially, the voter registration file, in

10   the same manner that as between the Texas voter registration

11   file and the driver's license file the United States was

12   undertaking to do that comparison for all parties and provide

13   the core common files of voter registration lists, but not any

14   of the DPS driver license information.  So, in that way the

15   order envisioned treating the United States and Texas very

16   fairly in terms of protecting information about identification

17   holders, while at the same time providing all parties to the

18   litigation with access to the voter registration information,

19   which was produced to everyone in the prior litigation, and is

20   essentially subject to public records requests.

21          **THE COURT:**  All right.  Mr. --

22          **MR. DERFNER:**  Your Honor?  This is Armand Derfner.

23   Is it my turn?

24          **THE COURT:**  Sure.

25          **MR. DERFNER:**  Okay.  I -- I -- on the plaintiff --

```
 1  private plaintiffs' behalf, I agree a hundred percent with

 2  Ms. Baldwin's account of how this came to be and why the order

 3  means exactly what we think it means, which is that this --

 4  these documents are supposed to be -- these database fields are

 5  supposed to be turned over to us and subject to all the highly

 6  confidential provisions of the protective order.  But the

 7  important thing also is -- I think your Honor put your finger

 8  right on it when you asked Mr. Scott:  How is the state

 9  prejudiced when the United States has this information and the

10  only question is whether the private plaintiffs will have it as

11  well.  Mr. Scott says:  Well, we have been preparing our

12  defense, and we've counted on this and this and so forth.  But

13  if they're preparing the defense, they have to be preparing a

14  defense against the United States case, which involved showings

15  of racial and ethnic discrimination, which involved showing a

16  burden, and which are based on all of the database fields that

17  the United States got.  So, the question -- so, everything that

18  we might be doing if we get, as we think we should, access to

19  the information in those databases, is also stuff that the

20  United States is doing or that Mr. Scott's clients have to

21  prepare for a defense for.  So, the question is not are we

22  going to be -- is he going to have to prepare a new defense;

23  it's simply is he going to have to -- are we going to be able

24  to put on the case of -- a case of racial and ethnic

25  discrimination, show the burden, all of the things that are in
```

 1  our complaint, or are we going to be standing by the sideline

 2  with our thumb in our, you know, our mouth while the United

 3  States does the things that we would also like to do?  And

 4  that's the real question.  Mr. Scott has been on notice that

 5  these databases would be used by the Government to show burden,

 6  to show racial discrimination, ethnic discrimination, and yet

 7  when we asked him this morning -- or in earlier, you know,

 8  correspondence, they said:  Well, you don't need it.  Once you

 9  have the number of people who are known matches, you don't need

10  anything else.  The (indiscernible).  We quoted that e-mail in

11  our -- in our pleading today.

12          So, I think your Honor has it exactly right.  The

13  issue is not whether any new things are supposed to be done;

14  but are we going to be able to use the data that we had in the

15  first case, that the Justice Department has now, and that there

16  is no earthly reason for us not to have it so we can put on our

17  case.

18          **THE COURT:**  All right.

19          **MR. DERFNER:**  (indiscernible)

20          **THE COURT:**  Fine.  Final comments by Mr. Scott.

21          **MR. SCOTT:**  Sure.  Now, your Honor, and that's a

22  great revisionist history, but it doesn't comport with the

23  order; because the order specifically (indiscernible) -- the

24  order, 174, says:

25          "Consistent with paragraph five of this order,

 1            certain information from the Texas Election

 2            Administration Management system database will be

 3            provided to other parties."

 4       And it's set forth on paragraph five:

 5            "To facilitate this comparison process, the United

 6            States shall draft an algorithm for comparisons among

 7            and between the Texas databases and the federal

 8            databases."

 9       And, then, skipping over, your Honor, to paragraph

10  six, it says the Court was ordering:

11            "One algorithm for the United States and other

12            plaintiffs/plaintiff intervenors, and one algorithm

13            for the defendants."

14       So, this idea that they have not been working in

15  concert with one another is not something that -- well, first

16  of all, that's not what was envisioned early on by the Court.

17  We were led to believe, (indiscernible) the court order, that

18  the party plaintiffs and intervenors were working together to

19  come up with one set of (indiscernible) algorithms.  They have

20  provided those algorithms to us.  We have provided them our

21  algorithm, because we were allowed to do one set of algorithms.

22  Now they want to have the ability to go run different

23  algorithms and come up with different information from those

24  algorithms, for no reason for that other than to prejudice our

25  rights, to ability to defend ourselves in this case.

1            I mean, your Honor, they've all, I think, made some

2     argument that there are the -- these -- that it is all publicly

3     available.  I -- I don't believe that's actually correct.  I

4     don't think that that -- you know, the date of birth or a

5     social security number for each of these parties -- I mean for

6     each person who registered to vote in the State of Texas is

7     publicly available information.  And, so, I don't think that is

8     a correct statement either.  But that aside, if we're going to

9     be in the position where we're having to now turn over our

10    databases, we would simply ask the Court to do that which you

11    said several times before, which is:  If it's good for one

12    side, it's good for the other.

13            **MR. DERFNER:**  Your Honor, I just have one sentence,

14    if I may.

15            **THE COURT:**  Okay.

16            **MR. DERFNER:**  Mr. Scott thinks that an algorithm,

17    apparently, is just a -- something that sends back ones and

18    zeros and nothing else.  The whole point of the databases that

19    go into the algorithms and the related databases, which we --

20    as we've indicated, I think, are the street addresses, and if I

21    understood (indiscernible), are for us to be able, as the

22    Justice Department is able, as the State is able, to tell the

23    Court something about who's in the no-match category.  Because

24    just knowing that there's X number of no matches, that doesn't

25    tell us very much.  We need to know who's in there, where do

1   they live, what is the gender, what is their race, their

2   language, status, et cetera.  So, that's what it's about.

3         **MR. SCOTT:**  And, your Honor, to come into this last

4   at the eleventh hour and attempt to do this when we have a -- a

5   cutoff of the -- well, the databases are supposed to be

6   produced next week.  And when we've gone through -- and I'm

7   looking right now; the United States proposed matching

8   criteria.  We have combinations of A through M and G through L;

9   we have the federal database records without a Texas address;

10  we have federal database records with a Texas address.  Any of

11  the things that Mr. Derfner is talking about could have been

12  included on one of their proposed matching combinations.  To

13  the extent it was not, this is not the proper remedy, to come

14  up and put Texas at a disadvantage.

15        **MS. BALDWIN:**  Your Honor, if I may, this is

16  Ms. Baldwin.  I think there is some confusion.  The ability to

17  run other algorithms is algorithms  (indiscernible) comparing

18  who is a registered voter with the core underlying data for who

19  holds a state I.D. or a passport, a military I.D., a veteran's

20  card.  There is no ability to do that with these results.  This

21  is to understand who is affected, who doesn't have an I.D.,

22  because none of either the driver license database is being

23  produced from the State of Texas under the agreement, that's

24  not in dispute, nor is the federal data being produced.

25        More critically, also, your Honor, I just want to say

1   that at this juncture to pull back any of the data that the

2   United States has understood and planned for the production and

3   these datasets that are due to be produced to the parties this

4   Friday, there are fields from the TEAM database that are

5   essentially already built in to the data that's going to be

6   produced.  If we have to redo any of that data because Texas is

7   now saying:  No, no, no, no; this doesn't comport with the

8   protective order; you're not permitted to produce this

9   information, we will miss the deadline to produce that

10  information, and that deadline, that May 30th deadline, the

11  deadline on which every day for the remainder of the calendar

12  is built throughout the summer.  So, not only do we agree with

13  Mr. Derfner on the merits of providing the TEAM information, as

14  that was always envisioned, in that it's fundamentally fair,

15  and there is nothing prejudicial to the defendants about it, to

16  do anything less than that at this point, when that is what the

17  United States has planned for, based on our understanding, will

18  make us miss the database production deadline and will cause

19  parties to likely have to seek relief for many, many other

20  (indiscernible) deadlines, up to and including potentially the

21  trial deadline.

22          **MR. SCOTT:**  Your Honor, John Scott.  To allow them to

23  look at our materials, our databases, without (indiscernible),

24  without having an opportunity to review theirs is -- is just

25  unfair.  What is troubling really right now is, if I heard

1    Ms. Baldwin correct, is they have run a report that does not

2    comport to our agreement.  And our agreement is in 174,

3    Document 174.  And I -- people have the right to come back to

4    the Court and, obviously, ask for you to revise that.  Nobody

5    has done that.  We don't have such a motion in front of us

6    today.  It is simply trying to avoid coming in here, I guess,

7    and telling the Court that we violated its court order -- "we"

8    being the federal government -- and have compiled the

9    information we were not allowed to do.  If that's the case,

10   we'd like to know that as well.

11           **MR. DERFNER:**  I'll just say, of course, Mr. Scott's

12   reading of Document 174 is not our reading.  We don't think the

13   Court should be --

14           **MS. BALDWIN:**  And nor is it, of course, the United

15   States'.  The United States has been working quietly on behalf

16   of all parties to this litigation to undertake the database

17   comparison, and we have acted in good faith based on the

18   agreed-upon document that we jointly filed with defendants,

19   160, that laid out what the algorithm responses would consist

20   of, which is the information from TEAM.  We understood that

21   that agreement was something that carried over into Document

22   Number 174, and it's with that understanding that we have been

23   working very hard to produce the database comparison results

24   data that's to be produced to all of the parties in this

25   litigation.

1          **THE COURT:**  All right.  The Court's going to order

2   defendants to produce that TEAM database to the private parties

3   under the protective order.

4          What else needs to be specified here?

5          **MR. SCOTT:**  Your Honor, could we have, then, a ruling

6   on whether we would be gaining access to the United States'

7   databases?

8          **THE COURT:**  I would need --

9          **MR. SCOTT:**  In order to be able to attempt to cobble

10  a defense at this late hour?

11         **THE COURT:**  I would need to -- if you all want to

12  file something, or kind of like you all did some short memos

13  today, I'll be glad to address that, too.

14         **MR. SCOTT:**  I mean, we've done it just the same way

15  they did this.  We're trying to -- I mean, it appears that

16  they've violated the protective order, and now it's Texas'

17  (indiscernible).

18         **MR. SPEAKER:**  (indiscernible)

19         **MS. BALDWIN:**  Your Honor, we -- we strenuously --

20         **MR. DERFNER:**  The judge has ruled.  I think we're

21  done for the day.

22         **MS. BALDWIN:**  And, your Honor --

23         **MR. DONNELL:**  Well, it seems to me like that would be

24  up to the judge.

25         **THE COURT:**  Okay.  Well, what -- what -- I'm sorry.

1    I made a ruling, and now Mr. Scott has asked to be heard on an

2    issue.  So --

3              **MR. SCOTT:**  I -- part of our -- our request, your

4    Honor, was, as we came into this, was that we have the same

5    access, availability to the Department of Justice's or the

6    United States' databases we're now giving to the private

7    parties.  And as the Court's aware, if we read the Court's

8    order, it had those parties working together as one entity to

9    derive a -- their set of algorithms, and we would like the same

10   ability to have access to their information in order to do the

11   same thing.

12             **THE COURT:**  Okay.

13             **MS. BALDWIN:**  Your Honor, this is Ms. Baldwin.  To be

14   clear, no parties to this litigation, including the Department

15   of Justice, has had access to the underlying federal data.

16   Only the affected federal agencies have taken essentially the

17   voter registration database and done data comparisons to it.

18   The Department of Justice doesn't have the underlying field

19   information from the State Department or Defense Department,

20   just like the State of Texas doesn't.  All parties remain

21   exactly equally situated with respect to federal data, which is

22   no one has access to it.  Instead, we have access, and we will,

23   when the United States produces the algorithm responses, to the

24   batch results that were generated by the agencies taking the

25   voter registration database and comparing it internally so as

1    to protect that highly sensitive data and so as not to have to

2    involve this Court and the other parties in collateral

3    litigation over having to disclose that federal data, which is

4    simply not possible under the current time schedule and would

5    never be agreed to by the agencies.

6            **MR. SCOTT:**  And, your Honor, just for clarification

7    purposes, will -- did the Court order (indiscernible) to turn

8    over the nine-digit social security numbers --

9            **THE COURT:**  No, no, no.  I thought that was already

10   agreed to.

11           **MR. DERFNER:**  Right.  Yes.  We agreed that we don't

12   have that.

13           **THE COURT:**  Yes.

14           **MR. SCOTT:**  And, so, we don't produce any socials and

15   no date of births.

16           **MR. DERFNER:**  We don't need anything from Texas, your

17   Honor.  It's whether the United States can give us the data

18   that it has that it received from Texas.  We're not getting

19   anything more from Texas.

20           **THE COURT:**  Right.  So, what is Texas --

21           **MR. DONNELL:**  Are there any limitations on what the

22   Government can give to the private plaintiffs?

23           **THE COURT:**  Yeah, go -- please --

24           **MR. ROSENBERG:**  This is -- this is --

25           **THE COURT:**  Hold on.

```
 1            MR. ROSENBERG:  Yes, your Honor.

 2            THE COURT:  Counsel, you all need to identify

 3   yourself because the --

 4            MR. DONNELL:  I'm sorry.  This is Ben -- this is Ben

 5   Donnell.  I just wondered if there was any limitations on what

 6   the Government can share with the private plaintiffs based on

 7   our database.

 8            MR. ROSENBERG:  And, your Honor, this is Ezra

 9   Rosenberg, and the agreement has always been, and we stand by,

10   that we do not need the full social security numbers.

11            MS. BALDWIN:  And, your Honor, as well, this is

12   Ms. Baldwin.  What we had planned for, based on our prior

13   agreement, was that we would be disclosing the data from TEAM,

14   except for full line social security numbers, and we would not

15   be disclosing any of the other information from the state's

16   databases.  That's what we planned for.  The defendants need

17   not actually produce TEAM to the private plaintiffs.  It's

18   essentially included as part of our algorithm results, but it

19   was data produced from the State of Texas to the United States,

20   we have done some matching work, and along with those matching

21   results, that's included with the underlying voter registration

22   data file that we would be producing out.

23            MR. SCOTT:  And, I guess, could we get a written

24   order today, because I -- I want to make sure that we're not

25   in -- I'm having a little confusion following the events
```

1    lately.  So, is that -- is that possible we could get a written

2    order on this, your Honor?

3              **THE COURT:**  Uh, yes.  Why don't you all work on --

4              **MR. SCOTT:**  What our obligations are and how we're, I

5    guess, redoing the number 174.

6              **THE COURT:**  Yeah, but it sounds like there is still

7    some disagreement.  So, if you want to submit proposed orders,

8    I'll certainly come up with an order.  That way, if we need to

9    get back on the phone to clarify certain issues, we can do

10   that.  But my ruling right now, it sounds like what's being --

11   what has been produced to the United States, they can share

12   with the private plaintiffs.  Correct?

13             **MR. DERFNER:**  Yes.  That's our understanding, your

14   Honor.

15             **MR. SCOTT:**  Well, and --

16             **MR. DERFNER:**  (indiscernible)

17             **MR. SCOTT:**  And just for clarification, that is the

18   material that the USA is talking about producing in response to

19   the algorithm matches and no matches on that database, but not

20   relating to all of the driver's license records, all of the

21   concealed handgun records, nor the election I.D. records or --

22             **MR. SPEAKER:**  Wait, wait.  (indiscernible).

23             **MR. SCOTT:**  -- personal identifying information.

24             **MR. DERFNER:**  Your Honor, I think Mr. Scott perhaps

25   inadvertently is misstating what I understand.  What I

1   understand is that we -- what we're asking for, and what I

2   think I understood the Court to indicate, is that we get the

3   TEAM databases, that is, which are the election databases that

4   the department has; we do not get the full socials out of

5   those.  We get everything else out of the TEAM or election

6   databases.  We do not get anything from other state databases,

7   like the DPS database or the concealed handgun database --

8          **THE COURT:**  Correct.

9          **MR. DERFNER:**  -- do get everything out of the

10   election or TEAM database.

11          **THE COURT:**  Correct.

12          **MS. BALDWIN:**  And that's been the United States'

13   understanding the entire time, your Honor.

14          **THE COURT:**  Mr. Scott?

15          **MR. SCOTT:**  Again, Judge, whatever you order we'll

16   do.  I just -- I guess we -- procedurally, you would like us to

17   file an official motion, and -- if I'm hearing the Court -- on

18   gaining access to the United States' databases so we can at

19   least have an opportunity to defend ourselves that way, so --

20          **THE COURT:**  Yes.

21          **MR. SCOTT:**  -- whether it be by a motion to compel on

22   discovery that was submitted, Judge, six months ago or so; but

23   something in a formal document --

24          **THE COURT:**  Right.

25          **MR. SCOTT:**  -- versus the informal process we've used

1    today.

2              **THE COURT:**  Right.  Well, at least today I had

3    something to look at.  I mean, it wasn't formal, but there was

4    an e-mail that was sent, I addressed it at a status hearing

5    this morning, sounded like you all were going to discuss it

6    further, so we were then going to get together, and I got some

7    short little briefs.  I mean, that's just -- that's being more

8    helpful than me trying to just have you all argue on something

9    that wasn't before the Court right now and, you know, me trying

10   to make a hurried decision on it.  I think it would work

11   better.

12             **MR. DERFNER:**  Thank you, your Honor.

13             **THE COURT:**  Okay.  Nothing else; you're excused.

14             **MR. SCOTT:**  Thank you, Judge.

15        **(Proceeding was adjourned at 3:34 p.m.)**

16

17

18

19

20

21

22

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____                    **May 29, 2014**


TONI HUDSON, TRANSCRIBER