IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |
|---|---|
| MARC VEASEY, JANE HAMILTON, SERGIO DELEON, FLOYD J. CARRIER, ANNA BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS, JOHN MELLOR-CRUMLEY, PEGGY HERMAN, EVELYN BRICKNER, GORDON BENJAMIN, KEN GANDY, LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), AND DALLAS COUNTY, TEXAS, *Plaintiffs,* v. RICK PERRY, Governor of Texas; and JOHN STEEN, Texas Secretary of State, *Defendants.* | CIVIL ACTION NO. 2:13-CV-193 (NGR) [Lead case] |
| UNITED STATES OF AMERICA, *Plaintiffs,* TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, IMANI CLARK, AURICA WASHINGTON, CRYSTAL OWENS, AND MICHELLE BESSIAKE, *Plaintiff-Intervenors,* TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, HIDALGO COUNTY, AND MARIA LONGORIA BENAVIDES, *Plaintiff-Intervenors,* v. STATE OF TEXAS, JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, *Defendants.* | CIVIL ACTION NO. 2:13-CV-263 (NGR) [Consolidated case] |

1

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES; and the MEXICAN AMERICAN LEGISLATIVE CAUCUS OF THE TEXAS HOUSE OF REPRESENTATIVES,<br>    *Plaintiffs,*<br>v.<br><br>JOHN STEEN, in his official capacity as Secretary of State of Texas; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety,<br>    *Defendants.* | CIVIL ACTION NO.<br>2:13-CV-291 (NGR)<br>[Consolidated case] |
| BELINDA ORTIZ, LENARD TAYLOR, EULALIO MENDEZ JR., LIONEL ESTRADA; ESTELA GARCIA ESPINOSA, ROXANNE HERNANDEZ, LYDIA LARA, MARGARITO MARTINEZ LARA, MAXIMINA MARTINEZ LARA, AND *LA UNION DEL PUEBLO ENTERO, INC.*<br>    *Plaintiffs,*<br>v.<br><br>STATE OF TEXAS; JOHN STEEN, in his Official capacity as Texas Secretary of State; And STEVE McCRAW, in his official capacity As Director of the Texas Department of Public Safety,<br>    *Defendants.* | CIVIL ACTION NO.<br>2:13-CV-348 (NGR)<br>[Consolidated case] |
| PATRICIA HARLESS<br>    *Third-Party Movant,*<br>v.<br><br>MALC.,<br>    *Respondent.* | |

**THIRD PARTY SENATOR PATRICIA HARLESS'S ORIGINAL MOTION TO QUASH THE SUBPOENA FOR DEPOSITION**

The Movant, Representative Patricia Harless, urges the Court to quash a third-party subpoena for deposition issued by the Respondent, MALC. The subpoena demands that Representative Harless submit to oral examination under oath, for questioning concerning legislatively privileged thoughts and communications related to the passage of voter ID. The subpoena should be quashed because such testimony is barred by legislative privilege. *See* FED. R. CIV. P. 45(d)(3) ("[T]he court . . . must quash or modify a subpoena that . . . requires the disclosure of privileged or other protected matter, if no exception or waiver applies.").

The plaintiffs already have in their possession every relevant privileged and non-privileged document from every legislator who played an active role in passing the voter ID law. These include hundreds of privileged documents and emails from personal and work accounts of Governor Perry, Lt. Governor Dewhurst, Speaker Straus, former Speaker Craddick, SB 14's author in the Senate, SB 14's sponsor in the House, and every single member of the relevant House Committee. The plaintiffs have issued, nevertheless, subpoenas demanding *deposition testimony* from the following state officials:

(1) Lt. Governor Dewhurst
(2) Bryan Hebert, the Lt. Governor's general counsel
(3) Speaker Joe Straus
(4) Senator Dan Patrick
(5) Senator Robert Duncan
(6) Senator Troy Fraser
(7) Janice McCoy, Chief of Staff to Troy Fraser

3

    (8)     Senator Brian Birdwell
    (9)     Senator Tommy Williams
    (10)    Rep. Debbie Riddle
    (11)    Rep. Patricia Harless
    (12)    Colby Beuck, Chief of Staff to Rep. Harless

The legislative privilege should not further yield so that DOJ and the private plaintiffs may force these elected officials and their closest advisors to testify under oath about privileged matters.

Ordering the production of legislative documents has substantially intruded into the workings of the Texas Legislature. But ordering legislators to testify under oath is an intrusion that is different in kind. There is a big difference between forcing a legislator to produce privileged documents and forcing her to testify under oath about privileged conversations. Indeed, even courts that allow discovery into privileged documents have not hesitated, when it comes to oral testimony, to tell plaintiffs that enough is enough. *See* infra Part III. DOJ itself has acknowledged, earlier in this lawsuit, that oral testimony receives even more protection from the shield of legislative privilege than documents. *See* DOJ Reply Br. (Feb. 28, 2014) (Doc. 189) at 5-6 ("The instant motion seeks only to compel production of legislative documents . . . which presents a lesser burden on legislators than participation in depositions and testimony at trial.").

The parties in the above caption are the very same elected officials who hashed it out over voter ID in the political arena. One of the parties is Mexican-American Legislative Caucus (MALC), which is comprised of over 40 Texas legislators and chaired by Representative Trey Martinez Fischer, one of the most

outspoken critics of SB 14 in the House. Another party to this case is Congressman Marc Veasey, who was chair of the House Democratic Caucus when SB 14 passed over his objection. Having failed to defeat SB 14, Congressman Veasey has invoked Rule 45 to subpoena documents from his political opponents and to subpoena for deposition Senator Dan Patrick and Senator Tommy Williams. If the former chair of the Democratic Caucus is allowed to depose Senators Patrick and Williams, his lawyers will almost certainly demand to know who the senators talked to about voter ID, what they talked about, where they met, and why they voted for the bill. Federal courts should refuse to allow the losing party in a political battle to use civil discovery to spy on their political opponents.

**I.  BACKGROUND**

The Court already has held that legislative privilege applies in this case. Two months ago, the Department of Justice moved to compel the production of "a trove" of state legislators' files and emails that were in the possession of the Office of the Attorney General (OAG). These documents came into OAG's possession—as lawyer to the individual legislators—because they were collected during *Texas v. Holder*, No. 1:12-cv-00128 (D.D.C.), a 2012 lawsuit concerning the preclearance of Texas's voter ID law, which Texas ultimately won. Once the voter-ID law took effect, DOJ and private parties brought this separate challenge to the law.

This Court set aside the legislative privilege for the documents already in OAG's possession, but it held that its power and desire to do so were "severely limited" by the Supreme Court. *See Veasey v. Perry*, 2014 WL 1340077, at *1 (S.D.

5

Tex. Apr. 3, 2014) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977)).  Indeed, the Supreme Court held in *Arlington Heights* that civil litigants must prove "legislative purpose" by reference to the public record and circumstantial evidence, not by inspecting the papers of individual legislators, deposing them, and putting them on the stand:

> The legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports.  In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege.

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977); *see also Soon Hing v. Crowley*, 113 U.S. 703, 710 (1885) ("[T]he rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or infer[able] from their operation, considered with reference to the condition of the country and existing legislation.").

This Court cited *Arlington Heights* and instructed the plaintiffs that it would limit their discovery of legislators' files to those "absolutely necessary" to prove their case:

> The extent to which inquiry into such sensitive matters is permitted should correspond with the degree to which the intrusion is *absolutely necessary*.

*Veasey v. Perry*, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) (emphasis added).

Failing to heed this instruction, the Department of Justice and the Plaintiff-Intervenors began issuing waves of subpoenas for documents around the State,

6

seeking documents from legislators' office files, home computers, and campaign offices, all of which are completely unnecessary to prove their case and not probative given the Supreme Court's instruction that an individual legislator's thoughts are irrelevant to legislative purpose. The Court quashed, in part, the first wave of these subpoenas for documents from additional legislators. The Court allowed plaintiffs access documents related to SB 14, as well as prior and later voter ID laws, but refused plaintiffs' demand for documents from irrelevant sources or concerning irrelevant subjects, such as immigration and campaign materials. (Doc. 263). After the Court's most recent ruling, DOJ now has access to (1) every privileged document it requested in the preclearance lawsuit, plus (2) the documents of thirteen legislators from DOJ's first wave of subpoenas.

The plaintiffs cannot show that it is "absolutely necessary" that they depose state legislators to prove their case. A ruling that allows the DOJ to rummage around in the affairs of legislators and to force legislators to sit for questioning interposes the very same federalism concerns that the U.S. Supreme Court found troubling about the Voting Rights Act's preclearance regime.

## II. THE LEGISLATIVE PRIVILEGE SHIELDS A LEGISLATURE'S DELIBERATIVE PROCESS FROM CIVIL DISCOVERY.

The legislative privilege is a doctrine of federal common law derived from the U.S. Constitution's Speech and Debate Clause. *See Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967) (observing that "the doctrine of legislative immunity, having its roots as it does in the Speech or Debate Clause of the Constitution" shields legislators "engaged in the sphere of legitimate legislative activity") (citing

7

*Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). This common law privilege provides both immunity from suit and a testimonial privilege. *See, e.g., Schlitz v. Commonwealth of Virginia*, 854 F.2d 43, 45 (4th Cir.1988) (holding that where an inquiry into legislative motive "would require legislators to testify regarding conduct in their legislative capacity, the doctrine of legislative immunity has full force"). State legislators "are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) (Frankfurter, J.). The only instance where the Supreme Court has swept aside the legislative privilege was to allow a federal criminal prosecution of state legislators. *United States v. Gillock*, 445 U.S. 360, 373 (1980) (creating an exception to the privilege for federal criminal matters).

In many different contexts, including lawsuits under section 2 of the Voting Rights Act like this one, courts have held that privilege is extremely difficult to pierce. *See, e.g., Hall v. Louisiana*, No.12-657, ECF No. 277 (M.D. La. Apr. 23, 2014) (refusing to pierce the legislative privilege in a Voting Rights Act case because ""[f]ailure to afford protection to such confidential communications between lawmakers and their staff will not only chill legislative debate but also discourage earnest discussion with governmental walls."); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct.12, 2011) (quashing a subpoena of legislators based on legislative privilege in a Voting Rights Act case); *Goldstein v. Pataki*, 516 F.3d 50, 62 (2d Cir. 2008) (forbidding plaintiffs in an eminent-domain dispute to depose "pertinent

8

[state] government officials" and discover their "emails, confidential communications, and other pre-decisional documents" because this would represent "an unprecedented level of intrusion."); *Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006) ("local legislators are protected by the testimonial privilege from having to testify about actions taken in the sphere of legitimate legislative activity"); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 103 (S.D.N.Y. 2003) (denying motion to compel "to the extent that the plaintiffs seek information concerning the actual deliberations of the Legislature- or individual legislators-which took place outside [a non-legislative advisory group], or after the proposed redistricting plan reached the floor of the Legislature . . . ."); *cf. Mims v. Arrow Financial Services*, LLC, 132 S. Ct. 740, 752 (2012) ("[T]he views of a single legislator, even a bill's sponsor, are not controlling.").

Because a legislature cannot function without staff, legislative immunity also applies to legislative staff, officers, or other employees of a legislative body. *Dombrowski*, 387 U.S. at 85; *Tenney*, 341 U.S. at 378; *cf. Gravel v. United States*, 408 U.S. 606, 618 (1972). ("[T]he Speech and Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself."). The privilege belongs to the legislator, and it is the legislator's privilege to waive. *Id.*

### III. EVEN COURTS PIERCING THE LEGISLATIVE PRIVILEGE FOR DOCUMENT DISCOVERY HAVE REFUSED TO FORCE LEGISLATORS TO TESTIFY UNDER OATH.

Demanding that legislators and their staff testify under oath about the legislature's deliberate process is an "extraordinary" and unjustifiable use of civil discovery. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977) ("In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege."). Because a legislator's testimony will "frequently" be barred by privilege even in the "extraordinary" event they can be called to testify, the Supreme Court has cautioned district courts against compelling legislative testimony:

> This Court has recognized, ever since *Fletcher v. Peck*, 6 Cranch 87, 130-131 (1810), that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government. Placing a decisionmaker on the stand is therefore usually to be avoided.

*Arlington Heights*, 429 U.S. at 267 n.18.

Thus, even where privileged *documents* are produced, courts are reluctant to compel privileged *testimony*. *See, e.g.*, *Corporacion Insular de Seguros v. Garcia*, 709 F. Supp. 288, 297 (D.P.R. 1989) ("It does not follow . . . that because Dr. Aponte's [an aide to the President of the Senate of Puerto Rico] documents are discoverable that he himself is automatically subject to a deposition. The reason being that the Speech or Debate Clause provides for testimonial and use immunity."); *Rodriguez v. Pataki*, 280 F. Supp.2d 89, 96 (S.D.N.Y. 2003).

10

("Moreover, at least at this juncture, the plaintiffs are not seeking any depositions of legislators or their staffs. Accordingly, the narrow issue presented is whether Senator Bruno, Speaker Silver, and the other legislator-defendants are entitled to resist the limited discovery presently sought by the plaintiffs on the basis of the qualified legislative privilege."). Indeed, in this very case, while urging this Court to compel the production of privileged documents, DOJ acknowledged that the legislative privilege applies with greater force to oral testimony. *See* DOJ Reply Br. (Feb. 28, 2014) (Doc. 189) at 5-6 ("The instant motion seeks only to compel production of legislative documents . . . which presents a lesser burden on legislators than participation in depositions and testimony at trial.").

This is not the first time that the Department of Justice has sought to depose these legislators. DOJ previously demanded to depose many of these same legislators during the voter-ID preclearance lawsuit, which was brought under a separate section of the Voting Rights Act. *Texas v. Holder*, No. 1:12-cv-00128-RMC-DST-RLW (D.D.C.). The United States District Court for the District of Columbia refused absolutely to pierce the privilege for any documents or testimony. The court quashed the deposition of Lt. Governor Dewhurst entirely. *Texas v. Holder*, No. 1:12-cv-00128-RMC-DST-RLW (D.D.C. June 14, 2012) (Doc. 186) ("The vast majority of topics about which the Attorney General seeks to question [the Lieutenant Governor] are barred by the legislative privilege as set forth in our previous Orders. Moreover, the Attorney General has failed to show that the circumstances in this instance warrant abrogating the privilege."). The

court allowed DOJ to depose other legislators, but only on a very limited basis: DOJ was allowed to inquire about public statements that were a matter of public record, but it was not allowed to inquire about any privileged thought or communication.

To the extent that DOJ seeks to repeat those very limited depositions here, the subpoenas still should be quashed. DOJ has indicated its intent to use deposition testimony from these same legislators taken during preclearance lawsuit. Forcing the Legislators to sit for repetitive questioning when they have already voluntarily answered DOJ's questions is hardly appropriate.

The preclearance depositions reveal yet another reason why the Court should refuse to let these depositions go forward, even on a limited basis. Once the legislators are forced to appear for their deposition, they must answer *any* questions asked of them, absent an instruction not to answer on account of privilege. And the plaintiffs have demonstrated their willingness to allow the partisan bickering that attended the public debate over voter ID to spill into the depositions, subjecting State officials to undignified and extraneous questioning:

(1) From Daniel J. Freeman (DOJ) to Representative Harless:

> Q. Did Texans have more confidence in their elections when elections were limited on the basis of race? Harless Dep. at 129:16–17.

(2) From Nancy Abudu (ACLU) to Senator Williams:

> Q. Have you ever heard that African Americans in your district consider you to be racially biased against minorities? Williams Dep. at 237:1–3.

(3) From Nancy Abudu (ACLU) to Senator Williams:

> Q. And of [your] 12 or 15 employees, are any of them members of racial minorities? *Id.* at 209:11-12.

(4) From Adam Harris (Fried, Frank) to B. Brunson:

> Q. Are you aware of the assertions that the Lieutenant Governor campaign for this year's Republican nomination for the Senate have resort[ed] to bigotry? Brunson Dep. at 168:14-16.

(5) From Adam Harris (Fried, Frank) to B. Brunson:

> Q. And how would you characterize the Lieutenant Governor's position on immigration as opposed to Mr. Cruz's position on immigration? *Id.* at 167:1-3.

There is no purpose to allowing plaintiffs to depose, re-depose, and further harass these legislators and their staff when most of their questions will be shielded by privilege and the balance have been asked and answered. The Court should quash the subpoenas for deposition.

**IV. IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A PROTECTIVE ORDER FORBIDDING ANY INQUIRY INTO LEGISLATIVELY PRIVILEGED THOUGHTS OR COMMUNICATIONS.**

If the Court does allow plaintiffs to depose the legislators and their staff, it should adopt the approach of the District of Columbia and allow such deposition testimony on matters of public record only. As we explained above, DOJ has never been able to justify the "extraordinary" intrusion that would attend legislator depositions on privileged matters.

Dated: June 3, 2014

Respectfully submitted.

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

___/s/ Arthur C. D'Andrea_____
ARTHUR C. D'ANDREA
Assistant Solicitor General

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

COUNSEL FOR THE THIRD-PARTY
LEGISLATORS

## CERTIFICATE OF COMPLIANCE

I hereby certify that on June 2, 2014, I conferred with Amy Rudd, counsel for the United States, and she advised that the United States opposes this motion.


                        ___/s/ Arthur C. D'Andrea_____
                        ARTHUR C. D'ANDREA

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2014, I served a copy of this document via the Court's electronic filing system to all counsel of record.


                        _____/s/ Arthur C. D'Andrea___
                        ARTHUR C. D'ANDREA