# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, JANE HAMILTON, SERGIO DELEON, FLOYD J. CARRIER, ANNA BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS, JOHN MELLOR-CRUMLEY, PEGGY HERMAN, EVELYN BRICKNER, GORDON BENJAMIN, KEN GANDY, LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), AND DALLAS COUNTY, TEXAS, *Plaintiffs,* v. RICK PERRY, Governor of Texas; and JOHN STEEN, Texas Secretary of State, *Defendants.* | CIVIL ACTION NO. 2:13-CV-193 (NGR) [Lead case] |
| UNITED STATES OF AMERICA, *Plaintiffs,* TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, IMANI CLARK, AND MICHELLE BESSIAKE, *Plaintiff-Intervenors,* TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, AND HIDALGO COUNTY, *Plaintiff-Intervenors,* v. STATE OF TEXAS, JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, *Defendants.* | CIVIL ACTION NO. 2:13-CV-263 (NGR) [Consolidated case] |

1

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES; and the MEXICAN AMERICAN LEGISLATIVE CAUCUS OF THE TEXAS HOUSE OF REPRESENTATIVES,<br>    *Plaintiffs,*<br>v.<br><br>JOHN STEEN, in his official capacity as Secretary of State of Texas; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety,<br>    *Defendants.* | CIVIL ACTION NO.<br>2:13-CV-291 (NGR)<br>[Consolidated case] |
| BELINDA ORTIZ, LENARD TAYLOR, EULALIO MENDEZ JR., LIONEL ESTRADA; ESTELA GARCIA ESPINOSA, LYDIA LARA, MARGARITO MARTINEZ LARA, MAXIMINA MARTINEZ LARA, AND *LA UNION DEL PUEBLO ENTERO, INC.*<br>    *Plaintiffs,*<br>v.<br><br>STATE OF TEXAS, JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety,<br>    *Defendants.* | CIVIL ACTION NO.<br>2:13-CV-348 (NGR)<br>[Consolidated case] |

## DEFENDANTS' MOTION TO COMPEL
## THE PRODUCTION OF FEDERAL DATABASES

Defendants move this Court to compel the United States to produce databases and database dictionaries, in compliance with the Federal Privacy Act, 5 U.S.C. § 552a(b)(11) and subject to the Court's Consent Protective Order, ECF No.

2

105, in numbers 1 and 2 in Defendants' First Request for the Production of Documents to the United States. *See* Ex. 1.

**I. Introduction**

In this case, every single one of the Plaintiffs or Plaintiff-intervenors (collectively, "Plaintiffs") alleges, among other things, that SB 14 will result in the denial or abridgment of the right to vote on account of race or membership in a language minority group. *See e.g., U.S. v. Texas*, No. 2:13-cv-263 (S.D. Tex.), Doc. 1 para. 69 (consolidated with this case). But the plaintiffs have yet to identify a single person, regardless of race, that has or will be unable to vote because of S.B. 14. Instead of identifying actual cases in which Texas' voters have been unable to vote, plaintiffs seek to prove their case by attempting to demonstrate that many registered voters lack the requisite identification to vote under S.B. 14, and that those registered voters are disproportionately racial or language-group minorities. Such an analysis is likely beside the point, given the Supreme Court's pronouncement in *Crawford v. Marion County Election Board* that "the inconvenience of making a trip to the BMV, gathering up the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Crawford*, 553 U.S. 181, 198 (2008). Nevertheless, the plaintiffs, attempting to cobble together indirect evidence of a problem that doesn't exist, have resorted to the same flawed analysis of Texas databases used in *Texas v. Holder*. *See Texas v. Holder*, No. 1:12-cv-128 (D.D.C.) Doc. 340 (Aug. 30, 2012) (rejecting

expert studies because the resulting "no-match" list contained dead people, duplicates, and even voters who later proved to have the requisite identification).

The Defendants and the United States each objected to producing databases in this litigation. *See* Ex. 2 (Defendants' Objections and Responses to United States' Amended Second Request for Production of Documents); Ex. 3 (US Responses and Objections to Defendants' First Request for Production of Documents). Despite its objections, and in an attempt to maintain the September trial date, the Defendants engaged in an intense negotiation process with the Plaintiffs. The end result was ECF No. 174, which left the Defendants in a position of having a party-opponent in full custody of copies of the TEAM and DPS databases and making matches between those databases and federal databases on behalf of all parties. Yet the Defendants could not make their own matches between the Texas and federal databases because they were provided with no information from any federal databases. Instead, Defendants proffered algorithms without the benefit of accessing the previously sought federal databases. In exchange for Texas' cooperation, each of the parties agreed that Texas' databases would "at all times" remain in the "sole" custody of the United States. *See* ECF No. 174 at para. 2. In short, Texas was relieved of its burden of producing the sensitive information in its own databases to private parties.

## II. The United States Should Be Compelled to Produce Databases Relevant to the Plaintiffs' Claims in this Case.

In its initial disclosures, the United States acknowledged the presence of discoverable information contained in federal databases that concern "forms of

identification required by SB 14 and voters exempted from the photographic voter identification requirements of SB 14." *See* Ex. 4 (United States' Initial Disclosures at para. 65 (Nov. 21, 2013)). The defendants then served requests for production of databases and database dictionaries within the possession, custody, and control of those same federal agencies. *See* Ex. 5 (Defendants' First Request for Production of Documents Nos. 1 and 2 (Dec. 4, 2013). Fifty days later, in its objections to those requests, the United States asserted both general and specific objections to the requests based on the federal Privacy Act. *See* Ex. 3 (United States Responses and Objections to Defendants First RFPs (Jan. 23, 2014)) Gen. Obj. No. 14; Specific Obj. Nos. 1 and 2 (citing 5 U.S.C. § 552a).

Nothing in the federal Privacy Act prevents the entry of an order by this Court requiring the production of federal databases. Indeed, the Act explicitly states that "[n]o agency shall disclose any record which is contained in a system of records . . . unless disclosure of the record would be . . . [among other exceptions] pursuant to the order of a court of competent jurisdiction."[1, 2, 3] 5 U.S.C. § 552a(b)(11). If this Court were to order as such, it could do so under the current

---

[1] "Agency" is defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency[.]" See 5 U.S.C. § 552(a)(1); 552(f).

[2] "Record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph[.]" 5 U.S.C. § 552a(a)(4).

[3] "System of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual[.]" *Id.* at 552a(a)(5).

Protective Order governing this litigation, which deems any sensitive personal information as highly confidential. *See* ECF No. 105 (Consent Prot. Order (Dec. 5, 2013); *Laxalt v. McClatchy*, 809 F.2d 885, 889 (C.A.D.C. 1987) ("when the District Court considers a request for a Privacy Act order in the discovery context it must consider the use of protective orders."). In fact, considering this Court has already ordered the production of the Defendants' databases pursuant to both the Protective Order and the Discovery Order and Supplemental Protective Order, the production of federal databases under the same framework should be equally acceptable to the Court. *See* ECF No. 174 at para. 1 (ordering Defendants to produce contents of all fields requested in the United States' Amended Second Set of Requests for Production of Documents from the TEAM, DL, and CHL databases). And indeed, the Department of Justice has never provided any explanation as to why sensitive personal information contained in the federal databases could not be turned over under the confidentiality agreement it has previously agreed to and considered sufficient to protect the exact same type of information contained in Texas' database.

### III. The Defendants' Request for Federal Databases Is Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

In its initial disclosures, the United States acknowledged the presence of discoverable information contained in federal databases that concern "forms of identification required by SB 14 and voters exempted from the photographic voter identification requirements of SB 14." *See* Ex. 4 (United States' Initial Disclosures at 12 (Nov. 21, 2013)). The information Defendants seek goes directly to allegations

["

that are a common thread to the complaints filed by the plaintiffs in this case and form the basis of a central theory of their case. Such information is patently discoverable.

The United States assures this court that Texas has not identified how it could make use of this information. That of course is not the relevant standard. Texas is not required to divulge trial strategy or potential expert work product in order to gain access to information put at issue by the United States. Instead, the United States must show why otherwise discoverable information should not be disclosed. The United States has yet to provide any authority as to why information it admits may be discoverable is protected from disclosure other than to point to federal confidentiality statements, which explicitly permit disclosure of the requested information upon a court order. This Court clearly has the ability to require disclosure of such information, particularly where it was put at issue by the United States itself. The United States also seeks to hold Defendants hostage by threatening the trial date. Yet, it was the United States' decision to pursue an agreed discovery process only to jettison it upon the close of discovery. If successful, this would mark the second time that a federal court would choose a trial date over the disclosure of information that the Department of Justice claims is central to their case simply because the Department protested loudly.

## IV. This Discovery Is Critical in Light of the Parties' Broken Agreement and the Court's May 28, 2014 Ruling Allowing Plaintiffs and Intervenors Unfettered Access the TEAM Database.

In November, the United States served requests for production on the Defendants for certain fields from several databases. *See* Ex. 6 (United States Second Request for Production). The specific databases requested were the Texas Election Administration Management System ("TEAM") database from the Texas Secretary of State's Office ("SOS") and the Driver License ("DL") and Concealed Handgun License (CHL) databases from the Texas Department of Public Safety ("DPS"). On January 21, 2014, the Defendants served objections to the amended version of that request for production.[4] *See* Ex. 2 (Defendants' Objections and Responses to United States' Amended Second Request for Production (Jan. 21, 2014)).

The United States acknowledges that "[n]one of the participants in this case . . . has had access to the contents of the federal agency databases." ECF No. 300 at 5. Yet the United States has been, and continues to be, in possession of the underlying field information in the TEAM database and two DPS databases since February 19, 2014. *See* Ex. 7 (Letter of transmittal producing Texas Databases). The United States has now produced the extract of the TEAM database to every single one of the Defendants' party-opponents in this case. *See* ECF No. 305. Despite the fact that the United States is in possession of the entire universe of the Defendants' data that can be used to verify whether a registered voter has the

---

[4] The United States amended its Second Request for Production to specify it wanted data from the November 2013 statewide constitutional election, which changed the response deadline.

necessary form of ID to vote under SB 14, the Defendants have yet to see one single piece of information from the United States' databases. Of the databases that track the records of the forms of acceptable identification under SB 14, two are Texas Department of Public Safety databases, and five are United States databases. The current state of possession of databases in this case is as follows:

| Private Plaintiffs | TEAM |
|---|---|
| Defendants | TEAM, DL, CHL |
| United States | TEAM, DL, CHL, DOD, USCIS, State, SSA, DVA |

The United States is thus content to be the puppeteer of the data in this litigation without allowing the Defendants to see what is behind the curtain. That anyone would claim that the parties are in the exact same position in this case is unfathomable.

## V. Conclusion

Access to the federal databases is critical to analyze the reliability of any expert report produced in this litigation relying on the database matching procedures employed by the United States. Practically speaking, Defendants will be severely limited in their ability to assess and dispute individuals that the United States and the Plaintiffs assert lack photo ID. As an example, the TEAM and DPS databases contain numerous examples of inaccurate and incomplete data entries, presumably resulting from human error. A complete data dictionary of the fields contained in the federal databases, which the United States refuses to produce, would allow Defendants to assess whether additional searches would have or could have turned up a more accurate number of registered voters who lack photo ID. Defendants' ability to assess the methodology employed by the federal agencies

9

resulting in the match/no-match list is similarly frustrated without access to the underlying federal data.

Absent access to the federal databases, Texas will not be allowed to either present a complete defense or an accurate picture of anyone that the Plaintiffs might allege has been adversely affected by SB 14. The federal databases are the only source of information which might identify persons wrongfully labeled "no-matches."

Dated: June 10, 2014

        Respectfully submitted,

        GREG ABBOTT
        Attorney General of Texas

        DANIEL T. HODGE
        First Assistant Attorney General

        JONATHAN F. MITCHELL
        Solicitor General

        J. REED CLAY, JR.
        Special Assistant and Senior Counsel
        to the Attorney General
        Southern District of Texas No. 1160600

        JOHN B. SCOTT
        Deputy Attorney General for Civil Litigation
        Southern District of Texas No. 10418
        Texas State Bar No. 17901500
        ATTORNEY-IN-CHARGE

        */s/ G. David Whitley*
        G. DAVID WHITLEY
        Assistant Deputy Attorney General
        Southern District of Texas No. 2080496

        STEPHEN RONALD KEISTER
        Assistant Attorney General
        Southern District of Texas No. 18580

JENNIFER MARIE ROSCETTI
Assistant Attorney General
Southern District of Texas No. 224780

LINDSEY ELIZABETH WOLF
Assistant Attorney General
Southern District of Texas No. 2292940

FRANCES WHITNEY DEASON
Assistant Attorney General
Southern District of Texas No. 2302872

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

BEN A. DONNELL
Donnell, Abernethy & Kieschnick
555 N. Carancahua, Suite 1770
Corpus Christi, Texas 78401-0853
Southern District of Texas No. 5689

COUNSEL FOR THE STATE OF TEXAS, RICK PERRY, JOHN STEEN, and STEVE MCCRAW

## CERTIFICATE OF SERVICE

  I hereby certify that on June 10, 2014, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


        */s/ G. David Whitley*
        G. DAVID WHITLEY