IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

           Plaintiffs,

      v.

NANDITA BERRY, *et al.*,

           Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

           Plaintiffs,

      v.

STATE OF TEXAS, *et al.*,

           Defendants.

Civil Action No. 2:13-cv-348 (NGR)

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF FEDERAL DATABASES

The United States respectfully submits its opposition to Defendants' Motion to Compel the Production of Federal Databases, ECF No. 324.  Mere weeks before discovery closes, and contrary to the data production process previously ordered by this Court, Defendants now demand mammoth amounts of sensitive, legally protected information about tens of millions of persons, most of whom have no connection to Texas or this litigation.  The scope of Defendants' demands is staggering, and unprecedented in voting litigation.  Those demands not only threaten the personal privacy of millions of U.S. citizens, they also trigger profound data security and national security concerns.

Yet Defendants offer no support for their demands.  Nor can they.  And they provide no legal justification for nullifying this Court's carefully derived supplemental protective order, ECF No. 174, which established a structure to conduct sensitive data discovery "*so as to avoid the disclosure of certain information contained in federal databases that may implicate privacy and data security concerns.*" *Id.*

To the contrary, Defendants' current demands have been waived, cannot lead to admissible evidence, and are unduly burdensome.  Moreover, if Defendants are not barred from this unbounded hunt, their efforts will likely disrupt the trial schedule ordered by this Court, as the gravity of the privacy and data security issues at stake will require the United States to consider immediate appellate relief.

Pursuant to this Court's orders, Defendants already possess unprecedented amounts of data from searches that Defendants themselves designed of databases maintained by the U.S. Departments of Defense, State, and Veterans Affairs, as well as the Social Security Administration and U.S. Citizenship and Immigration Services.  Indeed, through this agreed process, Texas already has vast quantities of Federally-derived data showing precisely which

Texas registered voters are likely to have a form of Federal photo ID allowable under SB 14 or to be eligible to apply for a disability exemption under SB 14 from showing ID.  Accordingly, Defendants' motion should be denied.

## PROCEDURAL HISTORY

On December 2013, Defendants served their First Request for Production of Documents on the United States.  The first two requests are the subject of Defendants' motion to compel, in which Defendants sought:

1. "all fields in any database in your possession, custody or control, including but not limited to databases from: (1) Department of Defense; (2) United States Citizenship and Immigration Services; (3) Department of State; (4) United States Social Security Administration; (5) Department of Veteran's [sic] Affairs; (6) United States Census Bureau; and (7) Department of Homeland Security, that might show a person has a photographic identification acceptable for voting in Texas under current Texas law."

and

2. "all documents, electronically stored information, data, database dictionaries, codes, manuals, or software necessary to facilitate use of all databases requested in Request for Production No. 1."

*See* Defs.' First Req. for Prod., ECF No. 324-1.  The United States objected to these requests in January 2014, noting that disclosure of the hundreds of millions of records at issue was prohibited under the Privacy Act absent entry of a court order in compliance with the Act.  5 U.S.C. § 552a(b)(11).  *See* United States' Resps. and Objections, ECF No. 324-3.  Among other objections, the United States explained that the breadth of Federal data requested raised national security concerns, and that the requests were not, in any event, reasonably calculated to lead to the discovery of admissible evidence because they sought millions of records for persons "who are ineligible to vote in Texas, including those who are not current or former Texas residents and those who are not of voting age, and thus not subject to the photographic identification requirements of SB 14."  ECF No. 324-3 at 9.

2

Around the same time, the United States served database requests on Defendants, seeking particular fields from specific databases that Texas maintains with respect to Texas registered voters and holders of the forms of Texas-issued ID acceptable under SB 14.  *See* United States Second Set of Reqs. for Prod., ECF No. 324-6.  All parties entered into extensive negotiations as to how data productions would occur.  The United States and Defendants agreed that *no* data would be produced directly to any party from any Federal database.[1]  After further negotiations, all parties stipulated to the contents of the Discovery Order and Supplemental Protective Order that has governed database discovery in this case.  *See* ECF No. 174.[2]

The parties intended the Supplemental Protective Order to expedite and facilitate critical database discovery, without compromising privacy and data security concerns through unnecessarily broad disclosures of data irrelevant to this case.  Thus, the Supplemental Protective Order required Defendants "[1] to turn over databases requested in the United States' Amended Second Set of Requests for Production of Documents [2] for matches to be performed by the United States [3] ***so as to avoid the disclosure of certain information contained in federal databases that may implicate privacy and data security concerns***."  *Id.* (emphasis added).  The Supplemental Protective Order provided that the Texas databases would "at all times remain in the sole custody of the United States," but that "certain information from the Texas Election Administration Management [TEAM] System database will be provided to other parties in these consolidated cases at the conclusion of the database comparison process described [in the order]."  *Id.* at 3.

---

[1] *See* ECF Nos. 160 (joint motion by the United States and Defendants for entry of a database discovery order), ECF No. 160-1 (proposed order agreed upon by the Defendants and the United States).
[2] *See also* ECF No. 171 and 171-1 (notice of agreement and data discovery order agreed to by all parties).

Per the Supplemental Protective Order, both the Plaintiffs and Defendants drafted "algorithms"—essentially, lists of database-matching criteria—that each side wished to have run both between the Texas databases and between the Texas databases and the relevant Federal databases.  The purpose of this database matching was to determine which Texas registered voters have a photo ID required by SB 14, or are eligible to apply for an exemption under SB 14 from showing photo ID.  Thus, staff at the U.S. Departments of State, Defense, and Veterans Affairs, as well as at the United States Citizenship and Immigration Services and the Social Security Administration were provided with a copy of the TEAM voter registration database so that each Federal agency could run the "algorithms" that the Plaintiffs and the Defendants had requested.  Each Federal agency completed this process as instructed and the United States produced the database matching results to all parties on May 30.  *See* ECF No. 305.

The match results produced from each Federal agency detail, on a record-by-record basis, whether each of the more than thirteen million voters in the TEAM voter registration database "matched" according to either Plaintiffs' or Defendants' specified match criteria, with any record contained in the respective Federal databases.  Along with the match results, the United States provided all parties with detailed, sworn declarations from the technical staff who were personally involved in conducting the comparisons at each Federal agency documenting exactly the process that they undertook, in accordance with Plaintiffs' and Defendants' match requests. *See* Exs. A (State); B (Defense); C (VBA); D (VHA); E (SSA); and F (SSA).

Just before the May 30 production, Defendants argued that the match results produced to the private plaintiffs could *not* include data from the extract of the TEAM voter registration database that Defendants had produced to the United States.  The United States and other plaintiffs noted that providing TEAM data to the private plaintiffs was consistent with the

Court's Supplemental Protective Order at ECF No. 174.  *See* ECF Nos. 297, 300.  Following

argument and briefing, this Court confirmed that the private plaintiffs would receive the TEAM

database extract along with the database comparison results, and that "such action is consistent

with the Discovery Order and Supplemental Protective Order (ECF No. 174)."  *See* Order, ECF

No. 321, at 2-3.

## ARGUMENT

Defendants' eleventh-hour demands for the entirety of multiple federal agency databases

not only violate the Court's Supplemental Protective Order and the Federal Rules of Civil

Procedure, they also needlessly threaten the privacy interests of tens of millions of persons with

no connection to this case, and create unreasonable data and national security risks.  They must

be rejected.

Defendants make two arguments in support of their motion.  Each is specious:

- First, Defendants argue that production of the complete Federal databases will somehow lead
  to further discovery of admissible evidence, regardless of the fact that Defendants already
  possess the match results themselves; and

- Second, Defendants claim they are somehow prejudiced if they cannot now rummage through
  Federal agency databases containing hundreds of millions of records—many of which include
  highly sensitive medical and national security information—for millions of persons:  literally
  every single passport holder, military member, veteran and naturalized citizen in the United
  States, the vast majority of whom have no connection whatsoever to the State of Texas.

Defendants' arguments are wholly unsupported by any facts.  As discussed below,

Defendants' requests implicate profound privacy and security concerns while violating the

Supplemental Protective Order, certain Federal confidentiality statutes, and the plain terms of
Fed. R. Civ. P 26(b)(2)(C).

**A.   Defendants' Demands Violate This Court's Supplemental Protective Order and Needlessly Threaten the Privacy Rights of Millions of Persons.**

This Court's Supplemental Protective Order carefully balanced the parties' need for relevant information against the need to avoid unnecessary disclosure of sensitive information of millions of persons unconnected to this case.  It established a structure granting the parties access to relevant Federal agency data match results, while "avoid[ing] the disclosure of certain information contained in federal databases that may implicate privacy and data security concerns."  ECF No. 174.  Defendants' demands violate the Court's order.

Moreover, Defendants' demands for massive amounts of highly sensitive, personal Federal data threaten the very privacy and security interests the Order sought to protect. Defendants now seek "*all* fields in *any* database" that "*might* show" a person has a required SB 14 ID (emphasis added).  Thus, for example, Defendants seek the entirety of *any* Department of Defense database that reflects whether someone holds a military identification, despite the fact that disclosure of classified information contained in any such Department of Defense database is prohibited by law.  *See, e.g*., 18  U.S.C. § 798.  That request, at a minimum, raises acute national security concerns.  Likewise, by requesting *all* fields in databases that these Federal agencies maintain, Defendants seek vast troves of highly sensitive, protected information that are not only completely irrelevant, but simply cannot be lawfully disclosed in this case.[3]

---

[3] The following are illustrative, rather than exhaustive, examples of the prohibitions on disclosure that the Defendants' requests conflict with:
- The USCIS databases that that were searched for this case contain protected data regarding holders of Violence Against Women Act "T" and "U" non-immigrant status visas that cannot be lawfully disclosed in this litigation in light of 8 U.S.C. § 1367(a)(2).

As Defendants acknowledge, the federal Privacy Act prohibits releasing any of the information contained in the Federal databases, absent a court order that complies with the Act. 5 U.S.C. § 552a(b)(11).  But Defendants provide no basis for this Court to order such sweeping disclosures here.  *See Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders under the Privacy Act "should be evaluated by balancing the need for the disclosure against the potential harm to the subject of the disclosure").

**B. Defendants' Eleventh-Hour Demands Are Also Barred by Fed. R. Civ. P 26(b)(2)(C).**

Defendants argue that if they could now receive access to complete Federal database dictionaries, listing all fields available, as well as complete data from every possibly extant database, they *might* determine that they should request additional searches to be run, that *might* come up with different results than the searches that have already been completed.  This speculative argument is baseless.  Moreover, it is barred by Rule 26.

Rule 26(b)(2)(C)(ii), Fed. R. Civ. P., provides that discovery should be barred when a party "has had ample opportunity to obtain" discovery of the information sought.  This is the case here.  To address Defendants' initial request for the complete Federal database dictionaries, which raised serious data security concerns, the United States agreed to a provision at ECF No.

---

- The USCIS databases that were searched also contain a multitude of data elements unrelated to a person's naturalization status, including whether there are national security concerns connected to an individual.  Disclosure of such irrelevant information is completely unwarranted. Such mass disclosure—regardless of whether under a protective order—unnecessarily comprises national security.
- The Department of Veterans Affairs ("VA") databases searched contain health information protected under the Health Insurance Portability and Accountability Act's rules.  Disclosure of certain categories of health information in this case would violate the requirements of 45 C.F.R. § 164.502(b).  In addition, other kinds of protected health information contained in VA databases that were searched require a separate court order finding good cause for disclosure as to each individual record.  38 U.S.C. § 7332(b)(2)(D); 38 C.F.R. § 1.490.

7

160-1 that would have allowed Defendants to provide the United States "with a list of particular data elements that they may seek to incorporate into any algorithm (e.g., first or last name, mailing or residential address, gender, or date of birth)." ECF No. 160-1 at ¶ 8. The United States, in turn, committed to "provide Defendants with a list of fields from the relevant Federal databases that collect such information, as well as any formatting details on how such information is recorded in the Federal databases." *Id*. Nonetheless, Defendants made a tactical choice and decided to finalize their "algorithm" without such information. And Defendants agreed that such a provision did not need to be included in ECF No. 174. *See* ECF No. 171-1.

Defendants thus had the ample opportunity to discover the relevant contents of the Federal database dictionaries, and to formulate different searches. They chose not to. And having voluntarily waived the opportunity to request and receive such information, Defendants' last minute demands for a "do over" are barred by Rule 26(b)(2)(C)(ii).

## C. **By Agreement and Court Order, Defendants Already Possess All Relevant Information from Federal Databases.**

Defendants ignore a crucial point: all relevant Federal database information that is likely to lead to the discovery of admissible evidence has *already* been produced to Defendants (and all other parties) in accordance with the Supplemental Protective Order (ECF No. 174). *See also* June 6, 2014 Order, ECF No. 321. All parties have equal access to the matching information that all parties agreed constitutes the heart of this case. Thus, all parties now know which registered Texas voters are likely to possess state or Federal photo ID acceptable under SB 14, and which registered Texas voters are likely to be eligible to apply for an exemption from the requirements of SB 14 based on a Federally-determined disability. All parties are on equal footing in this regard. No further data is needed.

8

Indeed, based on the Defendants' own "algorithm," the Federal agencies have executed, and the United States has produced, the universe of information from the Federal databases Defendants themselves determined to be relevant.  Exactly as they requested, Defendants now know by name which of Texas's thirteen million registered voters match with records for holders of U.S. passports, military IDs, certificates of citizenship and naturalization, and federal disability determinations because they have the same social security number, or full name and date of birth.  Where relevant information existed in the Federal databases, Defendants have it. The remaining information in the Federal databases relates to types of personal information irrelevant to this case, and to records of tens of millions of persons with no connection whatsoever to SB 14 or the State of Texas.[4]

Accordingly, Defendants' demands are not reasonably calculated to lead to admissible evidence.  Fed. R. Civ. P. 26(b)(1).  Moreover, the burden and expense of producing the databases at issue in their totality is, at this point, incalculable.   Defendants' motion to compel should also be rejected because Rule 26(b)(2) requires the Court to bar discovery that is unduly "cumulative and duplicative," as well as discovery where "burden or expense . . . outweighs its likely benefit" in resolving the issues at stake.

**D.  <u>Defendants Will Not be Prejudiced by Denying Their Motion.</u>**

Defendants complain that the data matching process established by this Court (with the Defendants' consent), *see* ECF Nos. 171 and 174, is now suddenly unfair.  But Defendants do not dispute that *no litigant* in this case, including the U.S. Department of Justice, has had or will

---

[4] The Department of State's Passport database alone contains the records of approximately 120 million Americans, the vast majority of whom have no connection to Texas.  *See* http://travel.state.gov/content/passports/english/passports/statistics.html (providing overall and passport issuances by each State).  There is no reason to compromise their privacy interests.

9

have access to the underlying Federal databases Defendants now demand.  Counsel and experts for the United States in this case have not and will never have access to the underlying Federal agency databases or to the Federal data dictionaries.  Again, all parties are on equal footing in this regard.  And as required by the Supplemental Protective Order, the United States has disclosed all results of any comparison that was made in this case between a Texas database and a Federal database.  Every Federal agency has signed a sworn declaration that no other, undisclosed matches were undertaken, while also detailing the exact procedures that were used to conduct the database comparisons.  *See* Exs. A-F.  The United States has conducted this process fairly, transparently, and to the letter of the Court's orders.  No prejudice exists.

### E. <u>Granting Any Part of Defendants' Motion Would Cause Significant Delay.</u>

Defendants' request for this data threatens every succeeding date in this Court's Scheduling Order—up to and including trial.  Because of the gravity of the privacy and data and national security issues raised by Defendants' demands, the United States will explore all options, including seeking immediate appellate review, to block the release of the Federal databases at issue.  And the time needed for such a massive, technically-complicated undertaking is such that it would be impossible to complete—much less analyze—any further data productions under the existing schedule for expert disclosures and trial.  No need exists for such a burdensome, wasteful, intrusive, and ultimately meaningless exercise.

### <u>CONCLUSION</u>

For the reasons stated above, the United States' respectfully requests that Defendants motion to compel be denied.  Pursuant to Local Rule 7.4(D), a proposed order denying Defendants' motion is attached hereto.

Date:  June 16, 2014

Respectfully submitted,

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

_____*Anna M. Baldwin*_____
T. CHRISTIAN HERREN, JR.
RICHARD A. DELLHEIM
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-4196
Fax: (202) 307-3961

11

<u>**CERTIFICATE OF SERVICE**</u>

This certifies that I have this day filed the within and foregoing **United States'**

**Opposition to Defendants' Motion to Compel the Production of Federal Databases**

electronically using the CM/ECF system, which automatically sends notice and a copy of the

filing to all counsel of record through the Court's electronic filing system.

This 16th day of June, 2014.

<u>*s/ Anna M. Baldwin*</u>
ANNA M. BALDWIN
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
anna.baldwin@usdoj.gov