IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, et al., *Plaintiffs*, v. RICK PERRY, et al., *Defendants*. | ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 2:13-CV-193 (NGR) [Lead case] |
| UNITED STATES OF AMERICA, *Plaintiffs*, TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, et al., *Plaintiff-Intervenors*, TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, et al., *Plaintiff-Intervenors*, v. STATE OF TEXAS, et al., *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 2:13-CV-263 (NGR) [Consolidated case] |
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, et al., *Plaintiffs*, v. JOHN STEEN, et al, *Defendants*. | ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 2:13-CV-291 (NGR) [Consolidated case] |
| BELINDA ORTIZ, et al. *Plaintiffs*, v. STATE OF TEXAS, et al., *Defendants*. | ) ) ) ) ) ) ) ) CIVIL ACTION NO. 2:13-CV-348 (NGR) [Consolidated case] |

1

## NON-PARTY SENATORS' ORIGINAL MOTION TO QUASH STATE OF TEXAS' SUBPOENA FOR THE PRODUCTION OF DOCUMENTS, ASSERTION OF PRIVILEGE, AND FOR PROTECTIVE RELIEF

TO THE HONORABLE COURT:

Movants, eight non-party State Senators who all voted against the enactment of Senate Bill 14 ("SB 14"), move the Court to quash the subpoenas served on them by the State of Texas, Exhibit 1 to this motion, assert privileges against the production of documents sought by the subpoenas, and move the court for protective relief pursuant to Fed. R. 26 (b)(2)(C).

### I.
### SUMMARY

1. The subpoenas violate the separation of powers provision of the State of Texas Constitution. The subpoenas were issued by the executive branch to compel production of records of legislative work of members of the legislative branch in violation of *Tex. Const. Art. II; Veasey v. Perry, 2014 WL 1340077 (April 2014).*
2. The subpoenas violate the explicit prohibition against questioning members of the legislature about positions taken in their senatorial duties. *Tex. Const. Art. 3, § 21.*
3. The subpoenas are extraordinarily overbroad and are not calculated to lead to the discovery of relevant facts, in violation of Fed. R. 26(b)(1).
4. The subpoenas do not comply with Fed.R. 45 because the State imposes an undue burden by asking the Senators to track documents no longer in their possession or custody.
5. The subpoena violates the legislative privilege because it seeks information from Sneators who opposed the bill and cannot provide any relevant evidence on the motive and intent of SB 14.

### II
### FACTS AND BACKGROUND

Senators Rodney Ellis, Juan Hinojosa, Jose Rodriguez, Carlos Uresti, Kirk Watson, Royce West, John Whitmire and Judith Zaffirini have been served with an identical subpoena.

2

(See exhibit A). The subpoenas were issued by the State of Texas, Rick Perry, the Secretary of State and Steve McCaw (Director of the Governor's Office of Homeland Security). (collectively referred to as "Texas"or the "State")  Although the subpoenas were served at different times, agreements were reached with the State allowing them to file objections by June 18, 2014, jointly in this Court.

The subpoenas broadly seek all documents that the Senators have dating back to 2005 that relate, in any way, to the issue of voter identification.

Before the state served these subpoenas on the senators who *opposed* the enactment of SB 14, this court resolved a discovery dispute in which the United States moved to compel production of documents in the possession of the Texas Office of the Attorney General (OAG) that it had from the prior litigation of the voting rights claims.  As a result of the United States' discovery requests, this court heard the discovery dispute between the United States, a Plaintiff Intervenor, and the State of Texas, a defendant.   In order to determine which discovery requests were likely to lead to the discovery of relevant information, the Court had to determine what constituted the central issues in this litigation.  The Court determined that the "motive and intent" of the state legislature when it enacted SB 14 because motive and intent in enacting the bill and the bill itself are the "crux of this Voting Rights Act case, *Veasey v. Perry, 2014 WL 1340077 (April 3, 2014),* ruling that in this case the applicability of the legislative privilege is a fact question requiring a balancing of privilege factors.   The Court also determined that the United States had specifically sought documents that were "highly relevant" to its claim and the Court allowed discovery.

Nevertheless, the State then issued the non-party subpoenas herein to State Senators whose motive and intent, if anything, was to NOT enact SB 14 and to force them to look for

3

literally a decade's worth of records that have nothing to do with the proponents of SB 14's motive or intent to enact the bill. The State also records that are already in it's possession by virtue of its participation in the pre-clearance litigation of the same issue in *Texas v. Holder, 888 F. Supp 2d 113 (DDC 2012)*.

1. Three directives of the subpoenas (Items 1,2, & 13) broadly seek "all communications" on the subject of, relating to, voter identification, SB 14 or the comparable House Bills."
2. Three directives (Items 10,11, 12) seek "all communications regarding voter identification bills from the 2005, 2007, 2009 sessions."
3. One directive seeks "all communications" for the 2013 Texas legislative session.(Item 14).
4. In addition, items 6-9, seek research and investigation done on the issue of voter identification.
5. Items 15-20 seek to find documents related to all communications, whether they involved the Senator or not, related to the multiple lawsuits filed *subsequent* to the enactment of SB 14.

Unlike the prior issue presented to the court, the documents from the eight Movant Senators are unlikely to shed any light on the motive and intent of those who enacted the bill, and many of the document requests are facially overbroad, and as a result, apply to many documents that the State already has from other sources or could obtain because they are publically available.

### III
### ARGUMENT AND AUTHORITIES

1. **Constitutional Challenge to the State's Subpoena**
   A. **Separation of Powers Objection**

The Movants ask this Court to quash the subpoenas because the State's conduct violates the Texas Constitution separation of powers provision.

The Texas Constitution establishes the boundaries of authority for each branch of government. *Tex. Const. Art. II, §. 1* The Interpretative Commentary states that, "A fundamental principle of American constitutional jurisprudence, here expressed in Article II, is that the exercise of executive, legislative and judicial powers are to be vested in separate and independent organs of government." The Texas constitution limits what each branch can do and a Federal Court can neither enlarge nor modify the authority that each branch has under this Constitution. The Attorney General (OAG) seeks to use the federal court to do what a state court could not do – compel production of the working and collected records of individual legislators, (in this instance, Senators. This is an intrusion of the executive branch into the affairs of the legislative one. One Texas court has observed:

> The provision [Article II, § 1] is also violated when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.

See *Texas Dept. of Family and Protective Services v. Dickensheets*, 274 S.W. 3d 150 (Tex. App. –Houston[1st] 2008 (holding that legislative interference with prosecutorial discretion constituted a violation of separation of powers.)

This principle applies because subjecting Texas legislators to subpoenas from the Texas Attorney General's office clearly interferes with the legislator's ability to function. As this Court stated in its earlier opinion, "...courts have long recognized that the disclosure of confidential documents concerning intimate legislative activities should be avoided...." *Veasey v. Perry*, 2014 WL 1340077 (April 3, 2014).

The Court also recognized that the damage is not speculative. *Id.* The executive branch, if allowed to subpoena "all communications" known to the legislative branch on any given topic, can seriously disrupt the flow of government work regardless of which other branch's records,

legislative or judicial, it seeks to subpoena This subpoena and its extraordinary request for nine years worth of documents on "all communiciations" related to voter identification issues demonstrates the potential for abuse if an executive branch is allowed to use the power of court to demand all of the files of legislators.

## B. Speech and Debate Constitutional Objection

The Texas Constitution also states, "No member shall be questioned in any other place for words spoken in debate in either House." *Tex. Const. Art. I, § 21.* This provision restricts the State, through its executive branch, from questioning or challenging any member of the Senate for any position taken in the course of the legislative process. Courts that interpreted similar language of the Federal Constitution defined the extent of the "speech and debate" protection to include "other activities undertaken by members of Congress who are acting within a legitimate legislative sphere. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 502–503 (1975) (Senator's actions constitutionally protected from judicial scrutiny if such actions are in the legislative sphere. ) <u>Trunk v. City of San Diego</u>, 2007 WL 1110715 (S.D. Cal. Apr. 2, 2007) (speech and debate constitutional provision precludes deposition of legislator.).

In *Miller v. Transamerican Press, Inc.,* 709 F.2d 524, 529 (9th Cir.1983) a libel Plaintiff sought the deposition of a former congressman who invoked the speech and debate clause in the United States Constitution. The court noted that the Supreme Court has extended the speech and debate clause beyond words spoken on the floor of Congress to include activity that is within the "legitimate legislative sphere." *Miller v. Transamerican Press, Inc.,* 709 F.2d 524, 529 (9th Cir.1983). In denying a motion to compel testimony of a nonparty former legislator the 9th Circuit defined the legislative sphere to include activities that: (1) are an integral part of the

6

deliberative and communicative processes by which Members participate in House proceedings and (2) address proposed legislation. *Id.*

The speech and debate constitutional provision also protects legislators against requests for legislative documents. In *United Transportation Union v. Springfield Terminal Railway Company, 132 F.R.D. 4,* (D.Me. 1990) the court, citing the constitutional speech and debate clause, noted that legislators must be able to discuss and analyze issues related to pending legislation. Accordingly, it quashed a subpoena for internal congressional communication, "whether between legislators or between legislators and their aides." *Id.*

The court further noted: "The purpose of the clause would be ill-served if legislators and their staffs had to search through their internal correspondence, memoranda, notes and collective memories to determine whether a given document had a legislative, non-legislative, or mixed purpose. Much valuable time, energy, and attention would be diverted from important legislative tasks." *See Eastland* 421 U.S. at 503, 95 S.Ct. at 1821 and *United Transp. Union* at *132 F.R.D. 4, 6.* The court in *Brown & Williamson Tobacco Corp. v. Williams, 62 F3d. 408 (D.C. Cir. 1995),* reaching the same conclusion, quashed a subpoena filed by a tobacco company that sought to compel a congressman to produce records that had been stolen by a former employee. The Court concluded that the speech and debate clause protected legislators from subpoenas for documents related to legitimate legislative activities.

The Texas Constitution contains almost identical language and should be construed similarly. The interpretative commentary to the Texas Constitution confirms this by saying: "Very *nearly* in this language the privilege appears in the Constitution of the United States as belonging to the members of Congress and the Texas Constitution here incorporates the same privilege in terms almost the same as that used in the federal charter." Accordingly, this court

should enforce the Texas constitutional prohibition which restricts the State of Texas from using the judicial process to question or place demands on its legislators for matters pertaining to the deliberative and communicative processes pertaining to proposed legislation and quash the subpoenas. The policy rationale underlying the Texas constitution and the federal one compel the same result.

2. **The Subpoenas are Overbroad and Inconsistent with Rules 26 and 45.**

The subpoenas issued by the State are facially overbroad and seek information that is not relevant to any party's claim or defense or alternatively can be obtained from another source in a less burdensome matter. Rule 45 requires a party or attorney responsible for issuing a subpoena to take reasonable steps to not impose undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). When the serving party fails to take such reasonable steps, the court may quash the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iv).

Whether a subpoena is reasonable is a fact question for the court. *Williams v. City of Dallas*, 178 F.R.D 103 (N.D. Tex. 1998). Among the factors that the court may consider in determining whether there is an undue burden are "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id. at 109.* A facially overbroad subpoena is unduly burdensome. *Cmedia, LLC v. Lifekey Healthcare LLC*, 216 F.R.D. 387 (N.D. Tex. 2003). (holding that a request for "any evidence of communication..."is overbroad.)

Relevance for purposes of determining whether there is an undue burden within Rule 45 is measured by the standard set out in Rule 26(b)(1). Rule 26 allows discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1).

However, the court must limit the extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C). The court need only look at the types of information that the State claims that it needs from Movants to see how overbroad and burdensome the subpoenas are.

**A. Litigation Communication in this and other lawsuits.**

Items 15-20 seek "all documents…relating to all communications" the Senators possess related to this suit and also to the consolidated federal lawsuits (see Exhibit A 'Definitions of Federal Action') and the state action pending in the 398th Judicial District in Hidalgo County. The State also seeks documents that reflect *any* discussions between these nonparty Senators and the Department of Justice *and all documents provided to experts regarding pending litigation* as well as all communications with any of the parties to the other lawsuits. (Note that these are not Rule 26 requests for production that would be subject to the scheduling orders of the other litigation or even in this litigation but are subpoenas to nonparties not subject to such timetables.) There is no limit in these broad requests to sweep up "all documents" relating to "all communications" that "regard" the litigation. These requests are facially overbroad because they do not identify any type of document or topic with any particularity.

In addition, this broadly worded fishing expedition to obtain any conversations between the Movant Senators and anyone related to the litigation on any topic is not likely to lead to any evidence that sheds light on whether SB 14 has a racially discriminatory intent. Because the other lawsuits all involve challenges to the enacted Voter ID legislation any discussions by the Senators would have occurred long *after* the legislation had been drafted, voted on and enacted. Accordingly, these six items on the subpoena are not within the Rule 26 parameters.

### B. Underlying Data for the Senator's Opposition to SB 14

Items 6-9 request "all documents" that show consequences of requiring photo identification for voting. The requested documents include reports of the impact on minorities or calculations of such impact, or names of individual voters that have been affected by SB 14 or voter ID laws. The subpoena is not limited to any documents that the Senators uniquely have or had by virtue of their position but instead attempts to ascertain how much research each Senator has done to justify his or her opposition to voter identification laws. These are really political subpoenas, not discovery subpoenas, and as such are overbroad because they generically seek to determine what documents the Movant Senators accumulated during the debate and post SB14 enactment.

The Voter ID issue was studied by the legislature over multiple sessions. Many public hearings were held and many witnesses testified. Numerous documents were circulated in the process. Furthermore, evidence was presented and considered in *Texas v. Holder, 888 F. Supp 2d 113 (DDC 2012) (holding that after review of multiple reports and studies, state could not show that voter ID laws did not have retrogressive effect.)* There is no justification for demand that these eight Senators do the legwork to round up all the documents that were generated in the legislative or litigation process and that are now in the public domain in the hope that some of the information might be tangential to issues in this litigation. Furthermore, the documents showing the strategy the Senators used to oppose the bill or the requested items to determine what these eight Senators maintained in their files to justify their votes against SB 14 is not relevant to litigatgion in which, as this court has concluded, the crux is the motive and intent of enacted legislation.

These subpoenas also should be quashed pursuant to Fed. R. Civ. P. 26(b)(2)(C). There is no justification to put the litigation onus of researching these public issues on these nonparty

Senators who opposed the bill since the relevant inquiry is the intent and motivation of those legislators who enacted the bill. Discovery from those who opposed the bill will not provide any evidence on any material issue.

### C. Prior Bills from 2005-2009 Legislative Sessions.

Movants object that demands for information from prior sessions from previous legislative sessions are overbroad and not calculated to produce relevant documents. Items 10, 11, & 12 seek "all documents.... relating to all communications" regarding prior Voter ID bills that were considered in 2005, 2007, and 2009. The Movant Senators opposed the Voter ID legislation in each of those sessions. Any records they might find would not shed any light on the motives of the proponents of these bills or of the enacted bill. The requests are broadly worded to seek documents of communication regarding these bills and not limited in any way to any material fact pertinent to this case. .

### D. Subsequent Bills: 2013 Legislative Session

Item 14 seeks all communications in the Senators' possession related to voter identification proposals considered in the 2013 legislative session. There is no limit on the breadth or scope of this request. Any records the Movants might find would not shed any light on the motives of the proponents of bills filed in 2013 or of the enacted bill. The Senator Movants object to this request as being facially overly broad and not likely to lead to the discovery of relevant evidence of any material fact.

### E. General Requests for "All Communications"

Items 1-5 also are broad, sweeping requests for "all documents... relating to all communications on the subject of voter identification." The subpoenas are facially overbroad. These requests seek *all known documents of all communications* on the topic, including all

public statements made by the Movants, all drafts of any statements, all research done for any statements, as well as any communications regarding any amendments, regardless of whether they passed or failed. The requests are not limited to statements made by the Senators but instead seek documents of communications made by anyone from 2005 to the present, whether they occurred before or after the passage of SB 14 and regardless whether they were made by a constituent, news reporter, or lobbyist. The Senator Movants object that such a broadly worded request is not likely to lead to discovery of relevant evidence.

In addition to a general objection, the Movants specifically object to producing the following types of information:

### F. Constituent Communications

The Senators object to producing documents that reflect information or communications by their constituents or members of the public. Issues raised by individuals will not generate any evidence that is material to the motivations behind the enactment of SB 14. Furthermore, some of the documents contain personal information that should be protected from discovery because it is virtually certain that their names, addresses, and phone numbers are not pertinent to this litigation.

### G. Generally Available Public Information

The court may, under Rule 26, limit discovery when there is a less burdensome means of obtaining information. To the extent that the parties to this litigation need the testimony and evidence introduced at public hearings and in other litigation to which the State was or is a party, they can obtain the transcripts and information without issuing eight subpoenas to nonparty Senators. The Movant Senators ask the Court to use the authority granted in Rule 26 to protect

them from the subpoena which seeks to shift to them the responsibility for gathering publically available information.

### H. Missing Information

The Movant Senators move the Court to strike from the Subpoena the specific instruction as to documents that are missing or lost because Rules 26 and Rule 45 do not authorize a party to require a nonparty to provide information about nonretained documents. The subpoena states:

> If any document requested was, but is no longer, either in your possession, custody, or control, or in existence, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) has been otherwise disposed of and explain the circumstances surrounding the disposition and identify the names of those persons with knowledge of such circumstances.

This instruction would require the Senators to identify that information for all documents that they may have ever encountered but no longer have in their possession. For example, this would require the Senators to backtrack and find every speech they may have given to civic groups since 2005 that touched on the issue of voter identification and to find constituent information about every person who called or wrote about the issue. Each Senator then would have to explain the circumstances or reasons why the Senator did not keep a copy of such "communication." At the end of the day, this exercise in documenting the "lost" documents would not yield any information relevant or even pertinent to the material issues in this litigation.

This Court was previously provided an affidavit by Jon Heining, the general counsel for the Texas Legislative Counsel, regarding the document retention policy of the Texas legislature and the email policies. (Case 2:13-cv-00193 Document 183-1). He advised the Court that the legislators are only required to keep documents while they are administratively valuable, making

13

it unlikely that Senators kept documents related to bills that were voted down. Furthermore, Heining's affidavit indicates that emails are not maintained in the routine course of business longer than 33 days. Under these circumstances, the State's effort to require the Senators to identify every "missing or lost" communication would be an exercise in futility, certainly not one authorized by the Federal rules.

A copy of the Senate's document retention policy is attached as Exhibit B. This also shows that Senators are required to keep documents only as long as they deem the materials "administratively valuable." Under these circumstances, the State's subpoena creates an unjustified responsibility to back track and try to recreate all documents that may have existed that pertains broadly or specifically to the issue of voter ID legislation.

Accordingly, the Senators ask that this provision of the subpoena be struck in its entirety.

## IV. Legislative Privilege Applies without Exception to the Movant Senators

The Movant Senators also assert the legislative privilege, *Veasey v. Perry, 2014 WL 1340077(April 2014)*, as to the documents in their possession that include the internal communications between each Senator and his/her staff, consultants, and similarly aligned colleagues. The Movant Senators also move to protect their personal notes created solely for their work to oppose SB 14. Privilege logs detailing the particulars of the documents have been served on the parties. If the court finds it relevant to this case, the Senators are willing produce, in response to the subpoena, any responsive documents in their possession that are not subject to the legislative privilege because they were generally available to the public and the entire Senate. It is also important to note, that none of the subpoenaed Senators have any privileged documents authored by the proponents of SB14 or reflect communications by the proponents that discuss the motive or intent of the legislation. As such, the documents at issue in this subpoena,

14

protectected by the privilege are those that reflect each Senator's personal work papers, including the documents collected as part of developing his or her opposition to SB14.

This Court identified five factors that required scrutiny to determine whether an exception to the legislative privilege applied. *Veasey v. Perry, 2014 WL 1340077 (April 2014).* The five factors include: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Id.* Admittedly, the Court's analysis of the seriousness of the litigation and the role of the government is the same as in the previous case. However, Movants believe that the Court's factual analysis of the relevance and the availability of evidence factorsas applied to the eight Senators opposed to SB 14 requires a different evaluation, and leads to a fundamentally different conclusion. Finally, the Court's analysis of the fifth factor, the future impact on legislators, will be the same. In otherwords, the Court found that making an exception to the legislative privilege has a negative impact and should only be allowed when the evidence sought is highly relevant and not available elsewhere.

### A. The Subpoena is not limited to documents highly relevant to the racial discriminatory motive and intent of SB 14.

With regard to the relevance, the Movant Senators incorporate all of the previously discussed relevance objections. The subpoena at issue is so overly broad that it seeks a great deal of information that is not relevant to the racially discriminatory intent of SB14. Beyond that, the Movant Senators are inherently unable to provide information about the State's motive and intent because these Senators were not privy to the strategy sessions, the closed door meetings, and the emails where the substantive discussions of SB 14 occurred. Because of who

15

the State served with these subpoenas and the documents requested, this discovery dispute is fundamentally different than the previous one considered by the Court when it addressed the legislative privilege issues.

### B. The State has had the opportunity to retrieve many of the requested documents from the public record.

The State has had the opportunity to collect all available public records both in connection with this lawsuit and because of its involvement in the prior litigation. *See Texas v. Holder, 888 F. Supp 2d 113 (DDC 2012).* As a result, the State cannot say that it needs the files of those Senators who opposed SB 14 and it can only get this information from the Movant Senators. The testimony and positions taken at the public hearings is all available to the State.

### C. The State creates bad precedent by seeking the personal notes and memos from legislators.

The legislators who opposed SB 14 participated in the legislative process with the reasonable belief that their work product would be protected by the legislative privilege. If the State can subpoena their files in this case, then the legislators will be hesitant to email their staff, or write personal notes and their ability to participate in the process will be hampered in the future. As the Court previously noted, this weighs against disclosure. *Veasy v. Perry, 2014 WL 1340077 (S.D. Tex 2014).*

### V. Conclusion

The Movants ask this Court to:

A. Quash the State's subpoena of legislative files as a violation of the separation of powers provision in the Texas Constitution.`

B. Alternatively, quash the State's subpoena because it is a violation of the Texas Constitution's prohibition against questioning a Senator on a position taken in the legislature.

C. Alternatively, issue a Rule 26 protective order on the basis that the subpoena is facially overbroad, not likely to lead to the discovery of relevant evidence, seeks evidence that is cumulative of evidence of matters already in the possession of the State, or seeks information publically available .

D. In addition, issue an order striking the portion of the subpoena that requests the Senators to identify documents that are no longer in their custody and control.

E. Alternatively, quash the subpoena because the legislative privilege protects the information that the State seeks to obtain.

Respectfully submitted,

BISHOP LONDON & DODDS
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
512/479-5900
512/479-5934 (Facsimile)

BY: *Alice London*
Alice London
State Bar No. 15292000

AND

Office of the Attorney General
PO Box 12548
Austin, Texas 78711
512-936-1105
512- 936- (Facsimile)

BY: *David Talbot signed w/permission*
David A. Talbot, Jr.
State Bar No. 19618500
James B. "Beau" Eccles
State Bar No. 00793668

ATTORNEYS FOR NON-PARTY
SENATORS RODNEY ELLIS, JUAN
HINOJOSA, JOSE RODRIGUEZ,
CARLOS URESTI, KIRK WATSON,
ROYCE WEST, JOHN WHITMIRE AND
JUDITH ZAFFIRINI

### CERTIFICATE OF CONFERENCE

I certify that on June 16, 2014, I conferred with John Scott, Deputy Attorney General and he opposes the Motion to Quash. We agreed to have a subsequent conference after he has had time to review the privilege logs but at this point, the Motion to Quash is necessary.

CERTIFICATE OF SERVICE

I certify that on ___6-20-14___ a copy of **NON-PARTY SENATORS' ORIGINAL MOTION TO QUASH STATE OF TEXAS' SUBPOENA FOR THE PRODUCTION OF DOCUMENTS, ASSERTION OF PRIVILEGE, AND FOR PROTECTIVE RELIEF** was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to all counsel of record.

_/s/ Alice London_
Alice London