IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISITRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| Marc Veasey, Jane Hamilton, Sergio Deleon, Floyd J. Carrier, Anna Burns, Michael Montez, Penny Pope, Oscar Ortiz, Koby Ozias, John Mellor-Crumley, Peggy Herman, Evelyn Brickner, Gordon Benjamin, Ken Gandy, League Of United Latin American Citizens (LULAC), and Dallas County, Texas,  *Plaintiffs,*  v.  RICK PERRY, Governor of Texas and JOHN STEEN, Texas Secretary of State,  *Defendants.* | CAUSE NO. 2:13-CV-193 [Lead Case][1] |

**MOVANTS, NONPARTY STATE REPRESENTATIVES, MOTION TO QUASH SUBPOENAS AND MOTION FOR PROTECTION**

Texas State Representatives Alma A. Allen, Roberto R. Alonzo, Lon Burnam, Yvonne Davis, Jessica Farrar, Helen Giddings, Roland Gutierrez, Borris Miles, Sergio Munoz, Jr., Ron Reynolds, Chris Turner, and Armando Walle (collectively, "Movants"), all nonparties to this suit, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, file this Motion to Quash subpoenas served on them by Defendants, and would show as follows:

**BACKGROUND**

The underlying suit in which the subpoenas challenged here issued is a multi-party suit challenging Senate Bill 14, passed by the Texas Legislature during its 2011 Legislative Session. SB 14 is known as the Texas "Voter ID" bill, as the legislation imposes certain identification

---

[1] The subpoenas at issue were issued under the "lead suit," which is Cause No. 2:13-cv-00193. However, three other suits challenging SB 14—Cause Nos. 2:13-cv-263, 2:13-cv-291 and 2:13-cv-348—have been consolidated with the instant matte. *See* **Ex. 1** at Page 2 (defining "Federal Action" to include all four suits).

requirements on persons seeking to vote in Texas elections. As a matter of public record, all Movants either voted against SB 14 or would have voted against SB 14.[2]

The subpoenas at issue broadly seek production of all documents that the Movants possess dating back to 2005 that relate to the issue of voter identification. *See attached* **Ex. 1**.[3] More specifically, the subpoenas seek: "all communications" on the subject of, or relating to, voter identification, SB 14 or comparable House Bills; "all communications regarding voter identification bills from the 2005, 2007, 2009 sessions"; "all communications" for the 2013 Texas legislative session; any research or investigative materials on the issue of voter identification; and all communications, whether they involved Movants or not, related to various lawsuits filed subsequent to the enactment of SB 14. *See id.*

Before Defendants served subpoenas on Movants, this Court resolved a discovery dispute in which the United States moved to compel production of certain documents in the possession of the Texas Office of the Attorney General (OAG) that related to prior litigation of similar voting rights claims. *See* (Doc. 226) (Order on Motion to Compel). Because Defendants resisted production of the documents based on legislative privilege, this Court had to determine, among other things, whether the documents sought were relevant to the instant litigation. *Id.* at 4-5. In so doing, this Court held that the "motive and intent" of legislators who enacted SB 14 was the "crux of this Voting Rights Act case." *Veasey v. Perry*, 2014 WL 1340077 (April 3, 2014 S.D. Tex.). And, after balancing factors relevant to determining whether legislative privilege protected from disclosure the documents sought by the United States, this Court determined that the balance weighed in favor of requiring disclosure in that specific instance, because the United

---

[2] *See* Texas House Journal, May 16, 2011, SB 14 Record Vote and Statements of Vote available at: http://www.journals.house.state.tx.us/hjrnl/82r/pdf/82RDAY77FINAL.PDF#page=86

[3] Movants' understanding is that the subpoenas issued are identical, so only one example is attached here.

States sought documents that bore "directly on whether state legislators, contrary to their public pronouncements, acted with discriminatory intent *in enacting SB 14*." *Id.* (finding such documents to be "highly relevant" to the United States' claim) (emphasis added).

## SUMMARY OF ARGUMENT

The subpoenas should be quashed because every request contained in them is plainly overbroad such that the subpoenas impose an undue burden on Movants. The subpoenas seek up to a decade's worth of records that have nothing to do with the intent of the officials who voted to enact SB 14; as a result, the requests seek information that is in no way relevant to this case. Further, the requests are objectionable to the extent they seek documents that are either publically available or are just as likely to be in the State's custody and control. Finally, it cannot be disputed that Movants did not vote to enact SB 14. Accordingly, the documents requested from Movants are in no way relevant to determining whether those who enacted the SB 14 did so "with discriminatory intent." As such, the balance of factors here weighs in favor of finding that the requested documents are protected by legislative privilege.

## ARGUMENT & AUTHORITIES

### I.   Applicable Standard[4]

A court "must quash or modify a subpoena that…requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(iii); *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121,124 (E.D. Va. 2009). In addition, Federal Rule of Civil Procedure 45 provides that a court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iv). Further, pursuant to Federal Rule of Civil Procedure

---

[4] Pursuant to agreement of the parties, the Requesting party agreed to extend the time for filing objections to the subpoenas to July 2, 2014. Further, the Requesting party agreed that the "place for compliance" for each subpoena would be in the Corpus Christi division of the Southern District of Texas, such that this Motion may be heard by this Court pursuant to Rule 45(d)(3)(A).

26 a court may limit discovery if the burden or expense of the discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(2)(C)(iii). Rule 26(c) authorizes a court, for good cause shown, to protect a person from annoyance, embarrassment, oppression, or undue burden or expense. *See* FED. R. CIV. P. 26(c); *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 132 (E.D. Tex. 2003) (*citing United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). The Court must balance the competing interests of allowing discovery and protecting the parties from undue burdens. *Williams ex rel. Williams*, 210 F.R.D. at 579. In deciding whether to grant a motion for a protective order, this Court has significant discretion. *Ferko*, 218 F.R.D. at 133 (*citing Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)).

**II. The subpoenas impose an undue burden on Movants.**

As described below, the subpoenas issued to Movants must be quashed because they impose an undue burden, particularly in light of the fact that the documents sought are not relevant to the claims at issue in this case.

Whether a subpoena is reasonable is a fact question for the court. *Williams v. City of Dallas*, 178 F.R.D 103 (N.D. Tex. 1998). Among the factors that the court may consider in determining whether there is an undue burden are "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id*. at 109. The court must limit discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C). A facially overbroad subpoena is unduly burdensome. *Cmedia, LLC v. Lifekey Healthcare LLC*, 216 F.R.D. 387 (N.D. Tex. 2003) (holding request seeking "any evidence of communication" to be overbroad).

### A. Requests 1 to 5 are overbroad and seek information not relevant to the underlying litigation.

Requests 1-5 are broad, sweeping requests for "all documents… relating to all communications" on the subject of voter identification. *See* Ex. 1. These requests are not limited to statements made by the Movants but instead seek "all" communications made by *anyone* dating back to 2005, regardless of whether the communications occurred before or after the passage of SB 14 or were made by a person not involved in the passage of SB 14. The Movants expressly object to these requests because they are not likely to lead to the discovery of relevant evidence. Among other things, the State cannot show that "communications" made by, or directed towards, the Movants—each of whom had nothing to do with enacting SB 14—are in any way relevant to the matters in dispute in this case.

### B. Requests 6 to 9 are overbroad and seek documents equally available to the State.

Items 6 to 9 request "all documents" possessed by Movants that may discuss the possible consequences of requiring compliance with SB 14's identification requirement. *See* Ex. 1. These requests seek, among other things, reports concerning SB 14's impact on minorities and names of individual voters that have been affected by SB 14 or similar voter ID laws. Movants object to this request to the extent any such documents were produced in public hearings or filed with the Legislature during the course of the debates on SB 14, because any such documents are equally available to the State and Movants. To the extent these requests seek documents that may be possessed by Movants related to their *opposition* to SB 14, such documents are not relevant to the central question here of "whether state legislators…acted with discriminatory intent *in enacting* SB 14." (Doc. 226). Put simply, discovery on legislators who publically opposed, and voted against, SB 14 will not lead to the discovery of information relevant to the identified, material issue in this litigation.

**C. Requests 10 to 14 are overbroad and seek irrelevant information about legislation that is not the subject of the underlying suit.**

Movants expressly object to requests 10 through 14, which seek production of "all documents" from previous legislative sessions because they are overbroad and not calculated to lead to the discovery of any relevant information. Requests 10-14 seek "all documents…. relating to all communications" regarding myriad Voter ID bills, which were proposed but never enacted, that were considered by the Texas Legislature in 2005, 2007, 2009, 2011 and 2013. Again, as this Court has already recognized, documents sought from legislators are only relevant to the extent they concern the intent of those who enacted SB14. As a result, requests 10 to 14, which seek documents related to bills that were never enacted, are simply not relevant to the central issue in this litigation. Further, the requests are overbroad as they seek "all documents" related to a multitude of bills and the request are not limited in any way that relates to any material issue pertinent to this case.

**D. Requests 15 to 20 are overbroad and seek documents not relevant to this suit.**

Requests 15-20 in the subpoenas seek "all documents…relating to all communications" the Movants possess related to this suit, the consolidated federal lawsuits and related state suits. *See* Ex. 1. Defendants also seek documents that reflect *any* discussions between Movants and the Department of Justice, all documents provided to experts regarding pending litigation, as well as all communications with any of the parties to the other lawsuits. These requests are overbroad because they do not identify any type of document or topic with any particularity. In addition, this request for "all" conversations between the Movants and anyone related to this litigation, or the related litigation, on *any* topic is not likely to lead to evidence relevant to the central issue here of "whether state legislators…acted with discriminatory intent *in enacting* SB 14." (Doc. 226). That is, because the lawsuits referenced in requests 15 to 20 all involve challenges to SB

6

14 itself, any discussions that may have occurred between Movants and others about those lawsuits would necessarily have had to have occurred *after* SB 14 was enacted; as such, these requested communications can in no way provide evidence relevant to the issue of the Legislature's "intent in enacting" the challenged bill.

### III. Additional bases for quashing subpoenas.

In addition to the undue burden placed on Movants by the subpoenas, the subpoenas should also be quashed or modified for the following additional reasons:

#### A. The subpoenas seek documents equally accessible to the State.

The court may, under Rule 26, limit discovery when there is a less burdensome means of obtaining information. To the extent that the subpoenas request testimony and evidence introduced at public hearings or in other litigation, that information is equally available to the State from public sources. The Movants ask the Court to use the authority granted in Rule 26 to protect them from the subpoenas to the extent they seek to shift to Movants the responsibility for gathering such otherwise available information.

#### B. Information no longer possessed by Movants due to regular retention policies.

To the extent the subpoenas are not quashed entirely, the Movants move to strike from the subpoenas an instruction relating to documents that are missing or lost because Rules 26 and Rule 45 do not authorize a party to require a nonparty to provide information about non-retained documents. The subpoenas instruct Movants as follows:

> If any document requested was, but is no longer, either in your possession, custody, or control, or in existence, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) has been otherwise disposed of and explain the circumstances surrounding the disposition and identify the names of those persons with knowledge of such circumstances.

This instruction would require the Movants to identify this information for all documents that they may have ever possessed but no longer have in their possession. This burdensome exercise in documenting "lost" documents would not yield any information relevant or pertinent to the material issues in this litigation. This Court was previously provided an affidavit by Jon Heining, general counsel for the Texas Legislative Counsel, regarding the document retention policy of the Texas legislature and the email policies. *See* (Doc. 183-1). He advised that Texas legislators are only required to keep documents while they are administratively valuable, making it unlikely that Movants possesses documents related to bills that were voted down in past sessions. Furthermore, Heining's affidavit indicates that emails are not maintained in the routine course of business longer than 33 days. Under these circumstances, the State's instruction requiring Movants to identify every "missing or lost" communication—particularly given that the State seeks documents dating at least back to 2005—would impose a tremendous burden and ultimately be an exercise in futility, and is certainly not an instruction required by the Rules.

### C. The subpoenas seek documents protected by legislative privilege[5]

Movants assert legislative privilege as to documents in their possession that concern internal communications between each Movant and their legislative staff, consultants, or other agents, as well as to Movants' personal work papers. *Veasey v. Perry,* 2014 WL 1340077 (W.D. Tex. April 2014); *see also Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 421 (D.C. Cir. 1995) (affirming district court's quashing of subpoenas duces tecum issued to federal legislators and recognizing that "[a] party is no more entitled to compel congressional testimony—or a production of documents—than it is to sue congressmen"). Because Movants opposed SB 14,

---

[5] In prior proceedings, some of the Movants here either waived or were found to have waived legislative privilege, *but only with respect to documents already in the State's possession*. (Doc. 226) at 3. Because the subpoenas at issue here seek documents that the State does not already possess, legislative privilege as to these newly requested documents has not been waived in any respect.

Movants do not believe they uniquely possess documents that discuss the motive or intent of persons who voted to enact of SB 14.[6] Rather, the documents for which Movants seek to invoke legislative privilege either do not concern SB 14 or relate to Movants' *opposition* to SB 14.

This Court identified five factors that require scrutiny to determine whether an exception to the legislative privilege may apply. *Veasey v. Perry,* 2014 WL 1340077 (April 2014). These factors are: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Id.* The "relevance of the evidence" factor is dispositive here because Movants opposed the enactment of SB 14. As a result, any documents uniquely possessed by Movants are simply not relevant to the central issue in this case of "whether state legislators…acted with discriminatory intent *in enacting* SB 14." (Doc. 226). Accordingly, and contrary to this Court's prior ruling with respect to documents requested from those who did vote to enact SB 14, there is no basis for finding an exception to legislative privilege applies to the requests at issue here.

## CONCLUSION

For the reasons stated herein, Movants respectfully request that the Court GRANT this MOTION, quash the subpoenas issued to Movants by Defendants and, if the Court deems prudent, issue a protective order.

---

[6] Movants are in the process of reviewing possibly responsive documents and will produce an appropriate log of documents for which privilege is claimed once that review is completed.

Respectfully submitted,

DAVID TALBOT
Chief, Administrative Law Division

/s/ James "Beau" Eccles
JAMES "BEAU" ECCLES
Assistant Attorney General
Texas Bar No. 00793668
S.D. Tex. No. 310917
Office of the Attorney General - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2120
(512) 320-0667 FAX
beau.eccles@texasattorneygeneral.gov

Ross O. Peavey
Tex. Bar No. 24079118
BRADY & PEAVEY, P.C.
P.O. BOX 13132
Austin, Texas 78711
(512) 473-0003 Telephone

James R. "Jim" Dunnam
Tex. Bar No. 06258010
DUNNNAM & DUNNAM, LLP
4125 West Waco Drive
P.O. Box 8418
Waco, TX 76714-8418
Phone: 254-753-6437

*Attorneys for Movants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was filed electronically with the Court and delivered electronically on July 2, 2014 to all counsel registered on the CM/ECF system.

      /s/  James "Beau" Eccles
      JAMES "BEAU" ECCLES
      Assistant Attorney General