IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR
A PROTECTIVE ORDER FROM DEFENDANTS' RULE 30(B)(6) NOTICE OF
DEPOSITION TO THE UNITED STATES OF AMERICA**

Defendants' "Advisory" regarding their Rule 30(b)(6) Notice of Deposition to the United States (ECF No. 379) fails to show that any of the still-disputed topics are relevant and otherwise appropriate under the Federal Rules.  The topics at issue are vague and overly-broad, cumulative of discovery already produced, and irrelevant to any claim actually before the Court. Defendants' open-ended demands for testimony from the United States are unprecedented in litigation brought under the Voting Rights Act.  In most instances, they also collide with a host of governmental privileges.

For the reasons previously asserted in the United States' motion for a protective order (ECF No. 276), and as argued below, the United States respectfully requests that the Court grant the motion for a protective order as to all contested topics.

## **LEGAL STANDARD**

Rule 26(b)(1) sets out the permissible scope of discovery under the Federal Rules and provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  It further provides that "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."  Rule 26(b)(2)(C) in turn requires that courts "must limit the frequency or extent of discovery" where the discovery sought is "(i) . . .unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit[.]"  When issuing a protective order, the Court may prohibit certain discovery altogether; specify the terms of the discovery; or "forbid[] inquiry into certain matters[.]"  Fed. R. Civ. P. 26(c)(1)(A), (B), (D).

The Rules Advisory Committee notes to Rule 26 state that "[t]he Committee intends that the parties and the court focus on the *actual* claims and defenses involved in the action." Fed. R. Civ. P. 26 advisory committee's note (2000 Amendment) (emphasis added). Thus, "the court . . . has the authority to confine discovery to the claims and defenses asserted in the pleadings, and . . . the parties . . . have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Liese v. Indian River Cnty Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012) (quoting Fed. R. Civ. P. 26 advisory committee's note).

Rule 30(b)(6) imposes additional constraints. When a party seeks to depose a corporate or governmental entity, the Federal Rules require that the notice of deposition "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). To allow Rule 30(b)(6) to function effectively, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) (citations omitted). "Where . . . the [noticed party] cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Reed v. Bennett*, 193 F.R.D 689, 692 (D. Kan. 2000) (citations omitted).

## ARGUMENT

**1.  Topic 1 Remains Incurably Overbroad and Completely Irrelevant.**

Defendants have still failed to justify Topic 1, requesting a deponent on "Administrative Preclearance of the law of any state, territory or outlying possession of the United States, or the District of Columbia since 2004." Through this impossibly overbroad topic, Defendants seek a deponent to testify about the review of more than 2,100 administrative preclearance submissions under Section 5 of the Voting Rights Act made to the U.S. Attorney General over the course of a

2

decade by 16 different states. *See* Ex. A (Declaration of Robert S. Berman). A protective order as to this topic is justified for at least six separate reasons:

- First, Defendants fail to explain how the Attorney General's review of more than 2,100 different preclearance submissions—of laws entirely unrelated to SB 14, the majority of which were from states other than Texas—has any possible relevance to a claim in this case.

- Second, Defendants do not and cannot dispute the unbroken line of case law flowing from the Supreme Court's decision in *Morris v. Gressette* holding that the Attorney General's decision whether or not to object to a proposed voting change under Section 5 is discretionary and unreviewable. 432 U.S. 491, 504-07 (1977) ("Congress intended to preclude all judicial review of the Attorney General's exercise of discretion or failure to act."); *see also Reaves v. United States Dept. of Justice*, 355 F. Supp. 2d 510, 514 (D.D.C. 2005); *City of Rome v. United States*, 450 F. Supp. 378, 380-81 (D.D.C. 1978), *aff'd,* 446 U.S. 156 (1980); *Harris v. Bell*, 562 F.2d 772, 773-74 (D.C. Cir. 1977). Defendants' demand for testimony about the Attorney General's exercise of discretion under Section 5 is barred as a matter of law and, moreover, is irrelevant to any claim in this case.

- Third, the United States has already produced the entirety of the non-privileged portion of the Section 5 submission file on SB 14—including every one of the hundreds of written comments received, and detailed notes memorializing conversations with persons with comments on SB 14. Hence, Defendants already have all of the discoverable *facts* from the Section 5 process as it relates to SB 14.

- Fourth, Defendants concede that they seek no facts regarding SB 14 (all of which they already have), but instead say they want to explore the "procedures employed [by the Attorney General] during the preclearance process." Defs.' Advisory at 5. But the manner in which the

3

Attorney General evaluates particular facts in reaching a Section 5 decision is protected by the deliberative process privilege.  Indeed, the sole case Defendants cite—to argue that they are entitled to testimony on this topic—actually rejects as "wholly without merit" the argument that the deliberative process privilege does not apply to the Section 5 decision-making process. *Cofield v. City of LaGrange*, 913 F. Supp. 608, 616 (D.D.C. 1996) ("In arguing that the deliberative process privilege does not apply because the Attorney General's decisions are not subject to judicial challenge, the defendants fail to cite to any legal support. Their omission is for good reason: the argument is wholly without merit."). *Cofield* upheld the Department of Justice's assertion of deliberative process privilege and quashed the portion of the document subpoena at issue that sought Section 5 documents protected by the privilege. *Id*. at 615-17.

- Fifth, Defendants do not even try to explain how "the Section 5 preclearance process" is relevant to the statutory and constitutional claims raised here.  Instead, they argue that the preclearance "process" is discoverable because of the relief that the Plaintiffs seek under Section 3(c) of the Voting Rights Act.[1]  Defendants fail to explain how prior, unreviewable preclearance decisions under Section 5 relate to a possible forward-looking remedy under Section 3(c). Moreover, the relief to which the United States may be entitled if it prevails on the merits is irrelevant to the liability claims currently pending before the Court.  Rule 26(b)(1) ties the scope of discovery to claims and defenses at issue, not to the relief sought.  Defendants thus confuse a form of relief requested with the actual claims at issue.  *Cf. Furchtgott-Roth v. Wilson*, 09 Civ. 9877, 2010 U.S. Dist. LEXIS 92507 (S.D.N.Y. Aug. 31, 2010) ("An injunction is a form of

---

[1] Section 3(c) of the Voting Rights Act provides that if in a proceeding brought by the Attorney General or an aggrieved person "under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment" the court finds that "violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred" that the court "in addition to such relief as it may grant, shall retain jurisdiction for such period as it may deem appropriate" and may require a jurisdiction to preclear new voting changes with either the court or the Attorney General.  42 U.S.C. 1973a(c).

relief, not a separate cause of action"); *NAS Elecs. v. Transtech Elecs. PTE*, 262 F. Supp. 2d 134, 149 (S.D.N.Y. 2003) ("a preliminary injunction is a form or relief, and not a claim or a cause of action"). Should the Court find in favor of the United States on the merits of its Section 2 claim, it can then decide the propriety of further proceedings related to remedy, including any possible need for additional discovery.[2]

- Finally, the Attorney General's detailed procedures for how it has dealt with Section 5 submissions are publicly available from another source. *See* Procedures for the Administration of Section 5 of the Voting Rights Act of 1965, 28 C.F.R. Part 51.

Accordingly, Defendants' demand should be rejected pursuant to Rule 26(b)(2)(C) and a protective order should be granted as to Topic 1.

## B. Topics 2, 5, 6, and 10 Are Vague, Overly Broad, Unduly Burdensome and Fundamentally Irrelevant.

Defendants likewise cannot justify their requests for deposition testimony on Topics 2, 5 6, and 10. Those topics are:

> 2. Enforcement of Section 2 of the Voting Rights Act since 2004.
> 5. The use of Federal Observers or Examiners under the Voting Rights Act since 2004.
> 6. Election monitoring under the Voting Rights Act since 2004.
> 10. The Voting Section of the Civil Rights Division of the United States Department of Justice Complaint in-take phone logs and data, as well as the Interactive Case Management (ICM) system, including but not limited to, communications to and from vot1973c@usdoj.gov since 2004.

As to Topic 2, the manner in which the United States has exercised Section 2 prosecutorial discretion in other cases is irrelevant here. *Cf. United States v. Nixon,* 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide

---

[2] In the pending Texas statewide redistricting case, where the parties raising Section 2 claims also seek Section 3(c) relief, the Court has separated the liability and remedial phases. *See Perez v. Perry*, Order, May 29, 2014, ECF No. 1028 (W.D. Tex.) ("After the Court has reached a decision on liability, and depending on the outcome, the Court will then order the parties to return for the remedial phase of trial. At the remedial phase, the parties will present evidence and legal argument on proposed remedial plans and proposals for prospective Section 3(c) relief.").

5

whether to prosecute a case"). Defendants nonetheless claim that how the United States has enforced Section 2 is relevant because paragraph 15 of the United States' complaint cites six Supreme Court decisions documenting Texas's history of official discrimination in voting. This argument is illogical and incorrect. That the Supreme Court has noted facts establishing Texas's history of official voting-related discrimination in no way relates to how the Department of Justice has exercised its prosecutorial discretion regarding Section 2. And the reasons underlying the Department's exercise of discretion are, of course, privileged. They are also irrelevant to the claims at the heart of this case: whether the purpose or result of SB 14 is to deny African American and Hispanic voters in Texas equal access to the political process.

Defendants freely concede that their demands for testimony as to Topics 5 and 6 do not relate to any claim or defense in this case, but only to the relief sought by the United States. Defendants again confuse the relief requested with the actual claims before the Court. And, of course, the United States' past enforcement efforts are irrelevant to the issue of appropriate relief in this case.

Finally, Defendants also fail to justify Topic 10. Defendants state that the "pattern and priorities employed by the United States in responding to" complaints and communications is what they seek to discover. Defs.' Advisory at 6. But as the United States has repeatedly advised Defendants, it has already searched for all communications to and from the Voting Section regarding SB 14, voter fraud in the State of Texas, and allegations of in-person voter impersonation nationwide.[3] All responsive, non-privileged documents as to the SB 14-related

---

[3] Specifically, the United States searched the email address vot1973c@usdoj.gov—the address used for Section 5 submissions and comments—for any communications regarding SB 14 using search terms to include both the bill number and Section 5 submission number, as well as the terms "voter ID," "photo," and "identification." All relevant correspondence sent to this address regarding SB 14 made while the preclearance submission was pending with the Department of Justice was long ago produced during *Texas v. Holder*. Any further relevant correspondence sent to this address in 2012 and 2013 was produced as part of the initial disclosures in this case. The general email

6

communications and any allegations of voter fraud in Texas have been produced. No documents were found as to allegations of in-person voter impersonation in Texas or elsewhere in the nation. Further discovery is thus cumulative and unduly burdensome, and of no benefit to resolution of the issues at stake. Fed. R. Civ. P. 26(b)(2)(C). Questions about what the United States did in response to such communications are very likely to intrude upon deliberative process and law enforcement privileges. Such questions are also irrelevant to the claims at issue—claims that center on the actions taken by Texas officials and the Texas Legislature in passing and implementing SB 14. Hence, a protective order should be granted as to Topics 2, 5, 6 and 10.

C.  **Defendants Cannot Justify Their Limitless Request for Testimony on Every Possible Kind of Election Offense Nationwide.**

In what Defendants refer to as their "election integrity topics," they seek testimony covering virtually any and every possible violation of any state or Federal election law across the country (Topics 11-30); testimony about a decade's worth of publicly-available reports covering dozens and dozens of prosecutions—none of which were for in-person voter impersonation fraud (Topic 7); a long-running law enforcement initiative as to which they have already received

---

address to which members of the public may send complaints and inquiries to the Voting Section (voting.section@usdoj.gov) was searched from 2009 (the year of its initiation) through 2014 using the search term "fraud." All documents related to voter fraud in Texas to and from this email address were produced, and if the search had turned up any documents related to in-person voter impersonation fraud nationwide, those documents would have been produced, but there were none. This same email address was also searched using bill numbers and the Section 5 submission number for documents relating specifically to SB 14. In addition, Voting Section personnel reviewed files of citizen mail correspondence from 2005 to 2014 by hand. They searched for all documents related to voter fraud in Texas (which were produced where found), and searched for any documents related to in-person voter impersonation fraud nationwide (which yielded no responsive documents). Individual Department of Justice staff—from the Voting Section, as well as from the Civil Rights Division's Office of the Assistant Attorney General, and other senior leadership officials from the Department also had their email searched based on negotiated search terms that Defendants supplied that included a variety of search terms regarding SB 14 as well as the fraud-related terms "vot* AND (fraud OR impersona*)." Despite these extensive searches, and the comprehensive document production that resulted, Defendants claim that the United States' document production is somehow inadequate. Defs.' Advisory at 12 n.8. That claim is baseless. While Defendants imply the United States' production is somehow incomplete—essentially because an insufficient number of documents concerning voter fraud in Texas were produced—the United States cannot produce documents that do not exist.

hundreds of pages of documents (Topic 8); and testimony about any studies on the effect of voter identification laws on the incidence of voter fraud and election crimes, notwithstanding the fact that counsel for the United States has already informed Texas that it is not aware of any such studies (Topic 37).

Defendants' "Advisory" makes no attempt to argue how these vague and limitless topics comply with Rule 30(b)(6)'s reasonable particularity requirement or to explain how designation of witnesses on such boundless topics could even be possible.

Defendants also mischaracterize what facts the United States has put at issue in this case. In paragraph 29 and 40 of its Complaint, the United States focuses on the fact that the Texas Legislature and proponents of SB 14 during the legislative process "cited virtually no evidence during or after enactment of SB 14 that in-person voter impersonation . . . was a serious problem[.]" U.S. Compl. ¶ 29. This case is about what the Texas Legislature considered, knew, and should have known in passing SB 14—a single Texas law which addresses a single type of voter fraud— in-person voter impersonation. This case is emphatically not about any possible nationwide incidence of every kind of election criminality that is encompassed within the exceedingly broad definitions of "voter fraud" and "election crime" that Defendants included in their Rule 30(b)(6) Notice.

Indeed, no party or expert in this case has or could put at issue the massive amount of non-public information that Defendants seek in asking for nationwide testimony about "potential prosecutions" and "investigations" for the vast number of offenses that they list.[4] Instead,

---

[4] Such requests raise significant law enforcement privilege issues for no apparent benefit to the resolution of the issues at stake in the litigation. *In re United States Dep't of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006). Moreover, when and why the Executive Branch undertakes, or declines to undertake a prosecution, is privileged and discretionary. *See, e.g., Nixon*, 418 U.S. at 693 ; *Community for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986) ("The power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws . . . "); *United States v. Cox*, 342 F.2d 167, 171 (5th Cir.

information on actual Federal prosecutions is equally available to all parties through publicly-available Court documents. Even more to the point, the United States has repeatedly represented to Texas that it is unaware of a single instance in Texas or anywhere in the country where the Department of Justice has brought criminal charges for in-person voter impersonation (*i.e.*, use of the name of another person to obtain and vote a ballot while physically present at the polls) during the period encompassed by the Defendants' Rule 30(b)(6) Notice. To put this discovery dispute to rest, the United States attaches the sworn declaration of the Director of the Elections Crimes Branch of the Public Integrity Section of the Criminal Division of the Department of Justice. *See* Ex. B (Declaration of Richard Pilger). That declaration explains that, during the current Director's tenure from 2010 to the present, the Public Integrity Section has neither investigated nor consulted on any investigations that proceeded beyond a preliminary inquiry regarding voter impersonation anywhere in the country, including Texas. And while the Department has investigated and prosecuted a variety of election fraud offenses, there have been no apparent cases of in-person voter impersonation (*i.e.*, use of the name of another person to obtain and vote a ballot while physically present at the polls) charged by Department of Justice prosecutors anywhere in the United States, including the State of Texas, from 2004 to the present, the period covered by the Defendants' Rule 30(b)(6) Notice. *See* Ex. B. at ¶¶ 4 -7. As the United States has repeatedly advised the Defendants, as to in-person voter impersonation fraud in Texas—the only form of election fraud that has any possible relevance here—there are simply no additional facts to discover from the United States. Accordingly, a protective order should be granted as to topics 7, 8, 11-30, and 37.

---

1965) ("The discretionary power of the attorney for the United States in determining whether a prosecution shall be commenced or maintained may well depend upon matters of policy wholly apart from any question of probable cause.").

9

**D.    Defendants Are Not Entitled to Discovery Relating Only to Unasserted Claims or Defenses.**

Having failed to show that any of the topics at issue are relevant to the claims before the Court, Defendants assert—without explanation or factual support—that each of the contested topics "will relate to affirmative defenses and/or counterclaims that Defendants may propound." Defs.' Advisory at 13. Discovery relating to unpled claims or defenses, however, is improper. Absent a showing of good cause, discovery must focus *solely* on "the actual claims and defenses involved in the action." *See* Fed. R. Civ. P. 26 advisory committee's note (2000 Amendment). Parties thus "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Indian River Cnty Hosp. Dist.*, 701 F.3d at 355 (citations omitted). Federal courts have repeatedly barred discovery relating only to unasserted claims. *See, e.g.*, *Am. Roller Co. v. Foster-Adams Leasing*, No. 05-cv-3014, 2006 U.S. Dist. LEXIS 34075 at *8 (M.D. Ill. May 6, 2006) ("Defendants' attempt to discover evidence . . . for unasserted claims is improper."); *Kaiser Aluminum & Chem. Corp. v. Willis of Md., Inc*., No. 02-cv-0944, 2003 U.S. Dist. LEXIS 13002 at *9 (E.D. La. July 28, 2003) (granting motion for protective order where the deposition discovery sought was not relevant to any claim or defense, where the Defendant was seeking discovery as to an unpled defense).

Fact discovery in this case closed without Defendants asserting any affirmative defense or counterclaim. The only claims thus before this Court are those raised by Plaintiffs.[5]

## CONCLUSION

For the reasons set out above, the United States respectfully requests that the Court grant its motion for a protective order.

---

[5] Should Defendants actually assert a counterclaim, the United States likely would seek to bifurcate and stay proceedings on any such counterclaim given the imminence of the trial in this matter.

10

Date:  July 7, 2014

                                            Respectfully submitted,

KENNETH MAGIDSON                    JOCELYN SAMUELS
United States Attorney                      Acting Assistant Attorney General
Southern District of Texas                Civil Rights Division

                                            *Anna M. Baldwin*
                                            T. CHRISTIAN HERREN, JR.
                                            RICHARD A. DELLHEIM
                                            MEREDITH BELL-PLATTS
                                            ELIZABETH S. WESTFALL
                                            BRUCE I. GEAR
                                            JENNIFER L. MARANZANO
                                            ANNA M. BALDWIN
                                            DANIEL J. FREEMAN
                                            Attorneys, Voting Section
                                            Civil Rights Division
                                            U.S. DEPARTMENT OF JUSTICE
                                            950 Pennsylvania Avenue, N.W.
                                            Washington, D.C. 20530
                                            Telephone: (202) 305-4196
                                            Fax: (202) 307-3961

## **CERTIFICATE OF SERVICE**

This certifies that I have this day filed the within and foregoing **United States' Reply in Support of its Motion for a Protective Order From Defendants Rule 30(b)(6) Notice of Deposition to the United States of America** electronically using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record through the Court's electronic filing system.

This 7th day of July, 2014.

                                                *s/ Anna M. Baldwin*
                                                ANNA M. BALDWIN
                                                Attorney, Voting Section
                                                Civil Rights Division
                                                U.S. Department of Justice
                                                anna.baldwin@usdoj.gov