IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |

## MOTION TO COMPEL

The Texas League of Young Voters Education Fund and Imani Clark (together, the Texas League) seek an order compelling the Office of the Attorney General of Texas (OAG) to comply with a subpoena for documents and testimony, as modified by tentative narrowing agreements reached by OAG and the Texas League.[1]  The subpoena seeks to compel OAG to designate a witness for deposition regarding discrete topics and to produce limited documents relating to in-person voter fraud in Texas.[2]  This motion presents one legal question:  is evidence relating to in-person voter fraud in Texas, or the lack thereof, discoverable, including evidence after the May 2011 enactment of Texas's photographic voter identification law.  The answer is yes.

---

[1]  This motion is also filed on behalf of the Veasey-LULAC, Ortiz, and Texas NAACP-MALC plaintiff groups.

[2]  To facilitate this Court's review of these issues at the next status conference, the Texas League understands that OAG agreed to a briefing schedule for filing this motion to compel with the Court that would permit OAG to respond to this motion by July 17.

## BACKGROUND

The Texas League asserts that Senate Bill 14 (SB 14) violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.  The Texas League also alleges that SB 14 violates the U.S. Constitution based on two theories:  (1) that SB 14 reflects intentional racial discrimination in violation of the Fourteenth and Fifteenth Amendments; and (2) SB 14 severely burdens a discrete classes of vulnerable voters without a sufficient countervailing justification in violation of the Fourteenth Amendment.  *See* Am. Compl. ¶¶ 111-125 (Doc. No. 73).

Defendants the State of Texas, the Texas Secretary of State, and the Texas Department of Public Safety (collectively, Texas) have defended SB 14 as necessary to remedy in-person voter fraud.  Reply in Supp. of MTD, at 16-18 (Doc. No. 108).  To explore Texas's proffered justification for the law, the Texas League for nearly five months has sought to depose a representative of OAG, and associated documents.  There is no dispute that OAG was involved in both the enactment and the implementation of SB 14, and that OAG plays a key role in investigating and prosecuting voter fraud through the Special Investigations Unit (SIU), which is part of OAG.  *See* Criminal Investigations, Attorney General of Texas Greg Abbott, *available at* https://www.texasattorneygeneral.gov/ criminal/investigation.shtml.

On February 12, 2014, the Texas League served upon the State of Texas a notice of deposition of OAG, under Rule 30(b)(6), seeking testimony relating to voter fraud.  Nearly one month later, Texas informed the Texas League that the Rule 30(b)(6) notice was improper on the ground that OAG, although undoubtedly an office of the State of Texas, is a non-party to this suit.  This position is without merit.

Rather than burden the Court with that issue, the Texas League issued a subpoena on April 7, 2014, for testimony and documents to OAG as a non-party under Rule 45.  *See* Ex. 1.

1

OAG served objections and responses to the subpoena. *See* Ex. 2. Although it refused to produce any documents, OAG designated Mr. Forrest Mitchell—a state employee who had testified for the State in prior litigation involving SB 14 under Section 5 of the Voting Rights Act and whom the State designated in its initial disclosures in this case. *See* Ex. 3 at 7.

On May 2, 2014, counsel for the Texas League met and conferred with counsel for OAG (also counsel for the State in this case) about OAG's objections. The Texas League made clear that it is not interested in discovering information about confidential, on-going investigations. In addition, and in a good-faith effort to move these issues forward, the Texas League proposed to narrow substantially the documents requested to a discrete set of documents (subject to a right to ask for additional documents after the deposition) and suggested a modification to topics for which Mr. Mitchell would be designated.[3] Representatives of OAG voiced no objections to these proposals, and agreed to seek internal approval and to provide proposed dates for Mr. Mitchell's deposition.

On May 8, 2014, however, OAG changed its position and refused to designate anyone to discuss any topic. OAG's apparent position was that evidence of in-person voter fraud is not relevant to this litigation. After several attempts to resolve these new disagreements, counsel for the Texas League informed counsel for OAG that the Texas League was prepared to move to compel. At that time, OAG asked for an additional opportunity to meet and confer. Those discussions led, as the Texas League understood it, to an agreement to make Mr. Mitchell

---

[3] The Texas League requested the following documents—based largely on documents already produced by the State: updated SIU hours and budget for the last two years; an updated spreadsheet detailing election and voting fraud cases; an organizational chart for SUI; SIU budget or comparable documents for the last two years; public testimony or statements by Mr. Mitchell since Mr. Mitchell testified in the Section 5 litigation; updated policy statements or guidelines related to voter fraud investigations; updated reports on election law violations; and case documents for cases closed since Mr. Mitchell last testified.

available for already-designated topics subject to the narrowing condition that the deposition would focus on developments *since* Mr. Mitchell's previous testimony in the Section 5 litigation. A tentative deposition date was set for July 8 in Austin, Texas.

On June 26, 2104, OAG notified the Texas League that there was an "impasse" with respect to the discovery sought. OAG stated that Mr. Mitchell would not be made available to discuss *any* developments since SB 14 was enacted in 2011.

## ARGUMENT

Evidence about in-person voter fraud in Texas before and after enactment of SB 14 is relevant and discoverable. The Court should direct OAG to comply with the deposition notice and document requests, as modified by negotiations between the Texas League and OAG.

### A. The Documents and Testimony Sought are Likely to Lead to the Discovery of Admissible Evidence.

Texas has defended SB 14, in part, as a measure to combat in-person voting fraud. Evidence about in-person voter fraud—for example, its frequency and impact—is highly relevant in at least two respects. *First*, evidence of in-person voter fraud in Texas is relevant to whether SB 14 imposes an unjustified burden on the franchise. Count IV of the Texas League's amended complaint alleges that SB 14 imposes a severe and unequal burden on classes of Texas voters that is not justified by a countervailing state interest. *See* Am. Compl. ¶¶ 117-125. When a state imposes a disparate, racially discriminatory burden on the exercise of the franchise, the Equal Protection Clause requires a weighing of "the character and magnitude of the asserted injury" against the "precise interests put forward by the State … taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal quotations and citation omitted); *see Obama v. America v. Husted*,

697 F.3d 423, 429-436 (6th Cir. 2012); *Dunn v. Blumstein*, 405 U.S. 330, 336-337 (1972). Indeed, the Texas League's Fourteenth Amendment claim "involves a balancing of interests that must be supported by evidence on both sides." Order on Mot. to Dismiss at 29 (Doc. No. 388).

Whether there is or was ever a problem with in-person voter fraud in Texas is directly relevant to the application of that balancing test. The recent decision of a federal district court to enjoin Wisconsin's photo ID law emphatically confirms that point. *See Frank v. Walker*, --- F. Supp. 2d --, 2014 WL 1775432 (E.D. Wis. Apr. 29, 2014). That court focused heavily on evidence—or more precisely the lack of such evidence—of in-person voting fraud. As the court explained, "evidence introduced by the plaintiffs confirms that voter-impersonation fraud does not occur in Wisconsin." *Id.* at *7. This evidence was crucial to the court's assessment of the weight of the asserted interest. *See id.* at *6.[4]

*Second*, the Texas League alleges that SB 14 violates Section 2 of the VRA. *See* Am. Compl. ¶¶ 106-110. Section 2 prohibits any voting practice that "results in a denial or abridgement of the right of any citizen … to vote on account of race or color." 42 U.S.C. § 1973(a). A denial or abridgment occurs when, "based on the totality of circumstances, … the political processes … are not equally open to participation by [minority groups] in that its members have less opportunity than other members of the electorate to participate in the political process." *Id.* § 1973(b). Congress "spell[ed] out" the standard it "intended to codify" in the Senate Report accompanying its 1982 reauthorization of the VRA by providing a list of non-exclusive factors that guide judicial application of this standard. S. Rep. No. 97-417, at 27, 28-

---

[4] Any claim that *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), renders irrelevant evidence of in-person voter fraud seriously misreads that decision. *See Frank*, 2014 WL 1775432, at *6 (*Crawford* stands for the proposition that preventing fraud is a "legitimate state interest" but evidence, or the absence of evidence, of in-person voter fraud speaks to the "weight" of that interest in any case).

29 (1982). One of those factors is "whether the policy underlying" the "voting qualification … is tenuous." *Id.* at 29. Whether in-person voter fraud in Texas is or was ever a problem in Texas is thus relevant because it speaks to the stated justification for the policy—a justification that Texas maintains in this litigation today, and that Texas has not agreed to forego.

### B. Limited Post-Enactment Evidence Should Be Discoverable

The limited discovery sought about post-SB 14-enactment developments is also likely to lead to the discovery of admissible evidence. OAG's contrary provision that such evidence is categorically irrelevant is erroneous. *First*, targeted post-enactment discovery may lead to admissible evidence that either corroborates or undermines the State's purported interest in combating in-person voter fraud. The Supreme Court has recognized that post-enactment developments may be bear on the reasonableness of a prior legislative decision in multiple contexts. *See Tennessee v. Lane*, 541 U.S. 509, 524-25 & nn.6-8, 11, 13-14 (2004) (considering post-enactment evidence in deciding whether the Americans with Disabilities Act was a valid exercise of Congress's enforcement power under the Fourteenth Amendment); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 733-734 & nn.6-9 (2003) (citing discriminatory state laws after enactment in rejecting constitutional challenge to statute); *Gonzalez v. Raich*, 545 U.S. 1, 21 & n.31 (2005) (considering post-enactment evidence in reviewing exercise of Congress's Commerce Clause authority); *see also DynaLantic Corp. v. U.S. Dept. of Defense*, 885 F. Supp. 2d 237, 257 (D.D.C. 2012) (collecting authority for view that "nearly every circuit to consider the question has held that reviewing courts may consider post-enactment evidence" in considering constitutionality of federal statute). The same principle applies here. In particular, evidence of in-person voter fraud prior to and after SB 14 was enacted and enforced may be relevant to, among other things, the reasonableness and sincerity of the Legislature's perceived

5

or stated need to address in-person voter fraud and whether SB 14 was a reasonable, necessary, or effective means of accomplishing those objectives.

*Second*, post-enactment discovery is particularly appropriate here given the history of SB 14's enforcement. Because of the need for preclearance under Section 5, SB 14 was not enforced until June 27, 2013—nearly one year after Mr. Mitchell testified in the Section 5 litigation. Thus, at the very least, limited discovery is necessary to shed light on, among other things, any instances or allegations voting fraud between the time of Mr. Mitchell's testimony in the Section 5 litigation and June 27, 2013.

OAG's position that *any* evidence of developments in the wake of the enactment of SB 14 are categorically irrelevant and not discoverable is thus decidedly wrong. The Court should compel that Mr. Mitchell be designated to address limited post-enactment developments.[5]

\* \* \*

For these reasons, the Court should grant the Texas League's motion to compel.

---

[5] On June 30, 2014, the Texas League confirmed its intent to depose the OAG only with respect to those issues for which the OAG either designated Major Mitchell or agreed to designate Major Mitchell subject to limitations agreed upon during meet and confer. *See* Ex. 4. The proposed agreement included the intention to rely on Major Mitchell's Section 5 deposition for pre-enactment evidence. If Texas or the OAG will not agree to rely on the Section 5 record for pre-SB 14 evidence, then the deposition will cover the topics described in Ex. 4 with respect to both pre- and post-SB 14 evidence.

Respectfully submitted,

*/s/* Ryan P. Haygood
Ryan P. Haygood
Christina A. Swarns
Natasha M. Korgaonkar
Leah C. Aden
Deuel Ross
NAACP Legal Defense and Education Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
rhaygood@naacpldf.org
rhaygood@naacpldf.org
cswarns@naacpldf.org
nkorgaonkar@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Danielle Conley
Jonathan Paikin
Kelly P. Dunbar
Sonya L. Lebsack
Lynn Eisenberg
Tania C. Faransso
Richard F. Shordt
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
danielle.conley@wilmerhale.com
jonathan.paikin@wilmerhale.com
kelly.dunbar@wilmerhale.com

*Counsel for Plaintiff-Intervenors Texas League of Young Voters Education Fund, et al.*


Chad W. Dunn
Brazil & Dunn
chad@bradzilanddunn.com

J. Gerald Hebert
Law Offices of J. Gerald Hebert
ghebert@campaignlegalcenter.com

Luiz Roberto Vera, Jr.
lrvlaw@sbcglobal.net

Armand Derfner
Derfner, Altman, & Wilborn
aderfner@dawlaw.com

Neil G. Baron
Law Offices of Neil G. Baron
neil@ngbaronlaw.com

*Counsel for the Veasey Plaintiffs*

Ezra D. Rosenberg
Amy L. Rudd
Dechert LLP
ezra.rosenberg@dechert.com
amy.rudd@dechert.com

Wendy Weiser
Jennifer Clark
Vishal Agraharkar
Brennan Center for Justice at NYU School of Law
wendy.weiser@nyu.edu
jenniferl.clark@nyu.edu
vishal.argraharkar@nyu.edu

Mark A. Posner
Sonia Kaur Gill
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
sgill@lawyerscommittee.org

*Counsel for the Texas State Conference of the NAACP Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on 7/10/2014, I served a true and correct copy of the foregoing via electronic mail to all counsel of record.

/s/ Ryan P. Haygood
Ryan P. Haygood
NAACP Legal Defense and Education Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
rhaygood@naacpldf.org