UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| RICK PERRY, *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPPOSITION TO TEXAS LEAGUE OF YOUNG VOTERS' MOTION TO COMPEL**

The Office of the Attorney General ("OAG") appears before this party as a non-party for the sole purpose of responding to the Texas League of Young Voters' motion to compel. The Western District of Texas is the procedurally correct court for the Texas League of Young Voters' motion. In the inters of resolving this issue in an expedited manner, the OAG files this response in opposition.

The plaintiffs seek to compel testimony that they themselves refuse to provide.[1] Out of one mouth the plaintiffs bellow: "Discovery regarding voter fraud should be foreclosed!" Out of the other they shout: "Discovery of voter fraud must be compelled!" This divide and conquer litigation strategy has no principled foundation. Rather, it is nothing less than an attempt to use different litigants (that have been found to have a common interest and have coordinated discovery with one another) as a sword and a shield in discovery.

Correctly applied here, the rules of discovery allow for Defendants to obtain documents and testimony from the Department of Justice regarding voter fraud in Texas and across the United States. The reasons that such discovery is relevant and appropriate are detailed in the State's previous responses to the Department of Justice's protective order. Suffice it to say, that the Department of Justice, the

---

[1] Plaintiffs have carefully coordinated discovery related to in-person voter fraud. While the United States refuses to search for documents related to voter fraud in the very divisions of the Department that they themselves identified as the divisions knowledgeable on such matters and refuses to provide a witness to testify regarding the Department's investigation and prosecution of voter fraud, other Plaintiffs seek similar documents and testimony from the Office of the Attorney General. There is no principled basis for allowing such discovery from the OAG, while denying similar discovery from the United States.

federal government's authority for the investigation and prosecution of election crimes, may have information regarding voter fraud in the months and years leading up to the enactment of S.B. 14. That information would bear directly on the plaintiffs' allegations. Moreover, such discovery was neither produced nor made a part of the Court's record in *Texas v. Holder*, making the revelation of such information all the more important.

The discovery sought by the plaintiffs from the OAG is on different footing, however. Plaintiffs seek to supplement old discovery regarding pre-enactment in-person voter fraud with new discovery regarding post-enactment voting fraud. In *Texas v. Holder*, OAG provided all information—through both the production of documents and oral testimony—pertaining to pre-enactment voter fraud. For the most part, the plaintiffs rightly do not seek to rehash this already discovered territory. There is no need to. Plaintiffs are free to introduce documents disclosed in *Texas v. Holder* in this case (subject to any valid evidentiary objections). And the defendants have already offered to the plaintiffs the opportunity to use Major Mitchell's deposition testimony from *Texas v. Holder*.[2,3] For the reasons set forth below, discovery of post-enactment in-person voter fraud simply cannot have any bearing on the outcome of this. For all these reasons, the plaintiffs' motion to compel should be denied in its entirety.

## ARGUMENT

Plaintiffs claim that discovery regarding in-person voter fraud may produce information relevant to two of their claims: (1) the claim that the Legislature enacted S.B. 14 with a discriminatory purpose and (2) the claim that S.B. 14 violates the 14th Amendment because the limited burdens imposed by S.B. 14 outweigh the State's legitimate interest in preventing, deterring, and prosecuting voter fraud. Motion

---

[2] The plaintiffs confuse the defendants' refusal to give blanket approval to use *all* testimony from the *Texas v. Holder* with an objection to the use of Major Mitchell's deposition in this case. Motion to Compel, at 6 n.5 (ECF No. 395). In fact, the defendants have explicitly offered to allow the use of Major Mitchell's deposition testimony from *Texas v. Holder*. The defendants have not and will not object to the proper use of his prior testimony in *Texas v. Holder*.

[3] To quell any fears that the defendants might use evidence of post-enactment voter fraud without allowing the plaintiffs discovery on those same topics, Defendants also have offered to enter into a joint stipulation that no party will seek oral testimony from OAG regarding post-enactment in-person voter fraud. Plaintiffs declined.

at 1. For the reasons discussed below, the discovery regarding post-enactment in-person voter fraud is not relevant to either claim.

> **I.** **Evidence regarding in-person voter fraud that occurred after the enactment of S.B. 14 is not relevant to Plaintiffs' claim that S.B. 14 was enacted with a discriminatory purpose.**

Plaintiffs' theory that discovery of voter fraud in Texas may be probative of their discriminatory purpose claim appears to be connected to the belief that a demonstration that there was no known voter fraud around the time the Legislature enacted S.B. 14 would somehow negate public statements by the Legislature that Voter ID was enacted in part out of a desire to curb voter fraud. In other words, that demonstrating a lack of voter fraud somehow controverts the legislators' own statements that they had genuine concerns about voter fraud. This conclusion is mistaken for several reasons.

First, any lack of evidence of in-person voter fraud says little about whether such fraud is actually taking place. Plaintiffs falsely conclude that an absence of evidence is evidence of absence. It assumes that the OAG would surely know about voter fraud if it were in fact occurring. It's not hard to see why such an assumption is false. In-person voter fraud is notoriously hard to detect. Setting that aside, the OAG's Special Investigations Unit, unlike the Department of Justice, does not monitor elections or polling places, and thus does not "detect" voter fraud in the first instance. Furthermore, the OAG is but one of many agencies with investigatory and prosecutorial authority over violations of Texas Election Code. TEX. ELEC. CODE § 273.001. Any information the OAG has regarding voter fraud comes strictly through referrals, and thus does not come close to representing the full universe of incidents or allegations of voter fraud.

Second, any lack of evidence of voter fraud *within the OAG* says nothing of the individual legislators' state of mind. Put simply, legislators themselves might be aware of voter fraud of which the OAG is not aware. Moreover, one can genuinely believe that voter fraud occurs yet goes undiscovered. A Rule 30(b)(6) deposition allows an organization to provide witnesses to testify regarding that organization. The testimony provided speaks only to information known by the organization. Plaintiffs

cannot simply impute information known by OAG to the Legislature as a whole—or even particular legislators.

Third, even if Rule 30(b)(6) testimony from OAG could somehow provide evidence regarding the state of mind of particular legislators, it is still not probative. As the Defendants have repeatedly emphasized, the federal judiciary has made clear that the individual thought processes and motivations of individual legislators have no bearing on the purpose of a piece of legislation. *Soon Hing v. Crowley*, 113 U.S. 703, 710 (1885) ("[T]he rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or infer[able] from their operation, considered with reference to the condition of the country and existing legislation."); *Flemming v. Nestor*, 363 U.S. 603, 617 (1960) ("Judicial inquiries into Congressional motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed."); *Goldstein v. Pataki*, 516 F.3d 50, 62 (2d Cir. 2008) (forbidding plaintiffs in an eminent-domain dispute to depose "pertinent government officials" and discover their "emails, confidential communications, and other pre-decisional documents" because this would represent "an unprecedented level of intrusion."); *People ex rel. Wood v. Draper*, 15 N.Y. 532, 545 (1857) ("The courts cannot impute to the legislature any other than public motives for their acts."); *Stahm v. Klein*, 179 Cal. App. 2d 512, 518 (Dist. Ct. App. 1960) ("Any attempt . . . by the judiciary to define the personal thoughts of the legislator in voting for the passage of a law involves such delicate and frustrating problems that it has always been frowned upon.").

The plaintiffs' request for discovery of *post-enactment* in-person voter fraud is particularly puzzlingly. Post-enactment in-person voter fraud cannot possibly prove what the mental impression of legislators was years before the evidence ever existed. That's true both because the information would not have been available to the Legislature when S.B. 14 was enacted and because it would be impossible to tell whether the absence of any in-person voter fraud following the enactment of S.B. 14 was due to the success of Texas' voter identification law.

Because information regarding in-person voter fraud known by OAG cannot be relevant to plaintiffs' discriminatory purpose claim, the plaintiffs' motion to compel should be denied.

**II. Evidence regarding in-person voter fraud that occurred after the enactment of S.B. 14 is not relevant to Plaintiffs' 14th Amendment *Crawford* claim.**

The plaintiffs also contend that discovery of post-enactment in-person voter fraud is also relevant to their 14th Amendment claim that the burdens imposed by Voter ID are not justified by a sufficient state interest. But, notwithstanding the plaintiffs' representations to the contrary, the Supreme Court's decision in *Crawford v. Marion County Election Board* makes clear that even a complete absence of evidence regarding voter fraud does not undercut the "legitimate" and "important" interest in preventing voter fraud. 128 S. Ct. 1610, 1618-19 (2008) (upholding Indiana's voter identification bill even though "[t]he record contains no evidence of any such fraud actually occurring in Indiana at any time in its history").[4] Like Indiana, Texas has a legitimate and important interest in "counting only the votes of eligible voters" and that interest is not any less important simply because there might be an absence of evidence of in-person voter fraud occurring in Texas. That's because, as the Supreme Court made clear, "examples of such fraud in other parts of the country have been documented throughout this Nation's history" and because Texas has its own experience with fraudulent voting—though perpetrated using other types of fraud. *Id.* at 1619. Indeed, Texas has the dubious distinction of being the home of Ballot Box 13, which is perhaps the single most infamous incident of voter fraud in this country's history. Nowhere in the Supreme Court's opinion does the Court come close to announcing the legal proposition that plaintiffs now rely on to support their irrelevant discovery requests. Given that the evidence the plaintiffs seek can have no probative value regarding their claims, the discovery should be denied.

A simple thought experiment shows why plaintiffs' reading of *Crawford* cannot be right. Imagine that prior to 2011 it was a known fact that Texas was experiencing widespread in-person voter

---

[4] Plaintiffs claim that discovery of post-enactment in-person voter fraud is relevant to their *Crawford* claim is based upon the district court's decision in *Frank v. Walker* -- F. Supp. 2d --, 2014 WL 1775432 (E.D. Wis. Apr. 29 2014). That decision is not binding on this court. *Crawford* is. Yet the plaintiffs provide a single, conclusory statement regarding the Supreme Court's decision in *Crawford*, without pointing to any particular passage or explaining the Supreme Court's decision to uphold Indiana's voter ID law even though there was no evidence of in-person voter "occurring in Indiana *at any time* in its history." 128 S. Ct. at 1618-19.

fraud. The fraud was so rampant that even Attorney General Holder thought a voter ID bill made sense. After several years of implementation, it became apparent that the Texas Legislature had enacted the perfect voter ID bill because voter ID had successfully prevented or deterred 100% of all in-person voter fraud. Under the plaintiffs' misreading of *Crawford*, not only would this post-enactment evidence (or lack thereof) serve to diminish the state's interest in preventing voter fraud, but it might also render unconstitutional what was once a constitutional and sorely needed voter ID bill. Put simply, it is impossible to know whether post-enactment evidence is due to an effective voter ID statute or, as plaintiffs would surely claim, is due simply to the fact that such fraud does not occur. Thus, it cannot be probative of their 14th Amendment claim.

The plaintiffs' request for post-enactment discovery should be denied.

Dated: July 17, 2014

>Respectfully submitted,
>
>GREG ABBOTT
>Attorney General of Texas
>
>DANIEL T. HODGE
>First Assistant Attorney General
>
>JONATHAN F. MITCHELL
>Solicitor General
>
>J. REED CLAY, JR.
>Special Assistant and Senior Counsel
>to the Attorney General
>Southern District of Texas No. 1160600
>
>*/s/ John B. Scott*
>JOHN B. SCOTT
>Deputy Attorney General for Civil Litigation
>Southern District of Texas No. 10418
>Texas State Bar No. 17901500
>ATTORNEY-IN-CHARGE
>
>209 West 14th Street
>P.O. Box 12548
>Austin, Texas 70711-2548
>(512) 475-0131
>
>
>COUNSEL FOR THE OFFICE OF THE
>ATTORNEY GENERAL

7

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 17, 2014, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

                                      */s/ John B. Scott*
                                      JOHN B. SCOTT