**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MARC VEASEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| RICK PERRY, *et al*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE TO THE UNITED STATES' MOTION FOR**
**A PROTECTIVE ORDER**

Defendants file this Response to the United States' Motion for a Protective
Order from Defendants' Rule 30(B)(6) Notice of Deposition to the Department of
Justice's Office of Inspector General ("OIG") ("Motion") (Docket No. 355.)  For the
reasons explained below, Defendants respectfully request that the Court order the
United States to produce a deponent or deponents on the single Topic in the
Defendants' Notice of Intention to Take Oral Deposition of the Office of Inspector
General ("OIG Notice") (Ex. 1): *A Review of the Operations of the Voting Section of
the Civil Rights Division* (March 2013), authored by the Oversight and Review
Division, Office of the Inspector General, U.S. Department of Justice, *available at*
http://www.justice.gov/oig/reports/2013/s1303.pdf (the "OIG Report") (Ex. 2).

I.      **The Topic in the 30(b)(6) Notice Is Reasonably Calculated to Lead
        to Admissible Evidence**

        A.      **The Topic Relates to Affirmative Relief Sought by Plaintiffs
                in Their Complaints.**

The Plaintiffs have put the U.S. Department of Justice's Voting Section's enforcement of the Voting Rights Act, which the OIG Report reviews, directly at issue in their Complaints.[1]  (*See, e.g.*, Ex. 1, Complaint of the United States of America (hereinafter, "Complaint") at ¶¶ 43-60.)  All Plaintiffs request "bail-in" under the Voting Rights Act as a remedy, which would subject Texas to administrative preclearance for any future voting laws.  (*See, e.g.*, Complaint at ¶ 65 and Prayer for Relief at (5).).[2]  OIG's review of the historical selective enforcement and biases in the Voting Section's enforcement of the Voting Rights Act bears directly on the Voting Section's administration of the relief sought by the Plaintiffs in the future.  Moreover, the cases cited by the United States for the proposition that an agency's motives are not relevant to whether the state defendant has violated the law at issue miss the mark: "bail-in" is the remedy here.

If the United States and the other Plaintiffs did not wish to subject themselves to discovery on the historical enforcement of Sections 2 and 5 of the Voting Rights Act, they should not have specifically raised the issues in their allegations and prayers for relief.

---

[1]    These very same issues are involved in the Defendants' Notice of Intention to Take the Oral Deposition of the United States, which is the subject of a pending United States' Motion for a Protective Order.  (Docket No. 355.)  Accordingly, the United States' statement in this Motion that the OIG Notice does not relate to "any other issue pending before this Court" is simply incorrect.

[2]    *See also* Ortiz, *et al.* Plaintiffs' First Amended Complaint ("Ortiz Complaint"), at Prayer for Relief at (c); Veasey-LULAC Plaintiffs' Second Amended Complaint ("Veasey-LULAC Complaint") at ¶ 70 and Prayer for Relief; Texas State Conference of NAACP Branches, *et al.* Complaint for Declaratory and Injunctive Relief ("NAACP Complaint"), Prayer for Relief at (c); Amended Complaint in Intervention of Plaintiff-Intervenors The Texas League of Young Voters Education Fund, *et al.* ("TLYVEF Complaint") at ¶128; First Amended Complaint in Intervention of the Texas Association of Hispanic County Judges and County Commissioners, *et al.* ("HCJCC Complaint") at ¶ 78 and Prayer for Relief at (c).)

**B.** **The Topic Relates to Relief Sought, Allegations Made By Defendants In Their Answers.**

The OIG Report is also the subject of several of Defendants' Affirmative Allegations and Defenses. *See, e.g.,* Defendants' Corrected Answer to Plaintiff United States' Complaint ("Answer") (Docket No. 417) at Affirmative Defenses and Allegations ("ADs") ¶ 25-43. The OIG Report reflects serious and disturbing summary findings (after reviewing documents and conducting interviews) regarding the enforcement decisions made by the Voting Section of the Department of Justice. Specifically, the OIG Report suggests that the Voting Section does not enforce the Voting Rights Act in a race-neutral or depoliticized fashion, in conflict with the Fourteenth Amendment's equal protection mandate. (*See* Answer at ADs at 26.) These summary findings include:

- Multiple Voting Section career staff who told the OIG (1) "that they believed that the reason the voting-rights laws were enacted was to protect historic victims of discrimination and therefore the Section should prioritize its resources accordingly," and (2) that they believed the Voting Section should only pursue cases on behalf of traditional racial minorities. (*Id.* at 27-28) (internal citation omitted).

- Emails (which were not attached to the OIG Report) detailing "widespread and vehement opposition among career employees" to at least one enforcement action simply because the defendants were African-American. (*Id.* at 29) (internal citation omitted).

- Criticism of Voting Section staff that held different ideologically opposed views, including staff members making derisive comments regarding another attorney for participating in an enforcement action filed against African-Americans, including one such email (which was not attached to the OIG Report) referring to the attorney as a "klansman." (*Id.* at 30-32) (internal citation omitted).

- Complaints by staff members about election monitors being sent to investigate allegations that African-American political leaders were perpetrating absentee ballot fraud, not based on the weakness of

allegations, but according to an internal memorandum (which was not attached to the OIG Report) indicating that "such an investigation would take the Voting Section away from its traditional right-to-vote and access-to-the-polls focus" and "would undermine the willingness of members of the Black community to cooperate with the Voting Section." (*Id.* at 33-34) (internal citations omitted).

- Several suspicious practices in the Voting Section's hiring in 2010, which (1) ensured hires with liberal/Democratic backgrounds; (2) "increased the risk of violating merit system principles and creating perceptions that the Voting Section engaged in prohibited personnel practices, including use of a general civil rights/public interest criterion."; (3) included "the possible appearance that [the Voting Section] is searching for applicants who share political or ideological views common in the liberal civil rights community" which is "compounded by the fact that the 'commitment' that passes muster often is demonstrated through work with a small number of influential civil rights organizations."; (4) included the pass over of "candidates who had stellar academic credentials and litigation experience with some of the best law firms in the country, as well as with the Department."; and (5) included a "troubling" list  which apparently "was prepared in part for recruiting purposes," and which omitted "people widely perceived to be conservatives," without a "consistent explanation" from staff in the Voting Section . . . as to why that was the case".  (*See id.* at 36-43) (internal citations omitted).

Much of the United States' Motion is devoted to a relevance objection on the grounds that the Defendants, at the time of the Motion, had not yet filed Answers to the various Complaints.  The United States' objection is also based on the Court's previous denial, *without* prejudice, of Defendants' Motion to Take Judicial Notice of the OIG Report.  (Docket No. 272.)  The Defendants have now filed answers asserting various affirmative allegations and defenses relating to the OIG Report.  Moreover, when the Court denied Defendants' Motion for Judicial Notice, it explicitly noted that Defendants would be free to "bring it up later regarding specific portions…."    (05/15/2014 Hearing Tr. at 19:2-11.) Permitting deposition

testimony on the Report is one way to narrow to specific portions.  As Defendants have previously noted, the discovery standard is not, as the United States repeatedly states, "relevance" as the United Staites interprets it; rather, it is "reasonably calculated to lead to admissible evidence."  *See* FED. R. CIV. P. 26(b)(1) ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.")

## II.     The Deposition of OIG Is Appropriate Notwithstanding the Existence of the OIG Report, and the Burden of a Deposition of the OIG Does Not Outweigh its Benefit

As previously noted in Defendants' Advisory Regarding the 30(b)(6) Notice served on the United States (Docket No. 379) ("30(b)(6) Advisory"), deposition testimony is a uniquely binding and limiting discovery device, which an ordinary litigant is entitled to utilize.  *See F.D.I.C. v. Hays*, CIVASA92CA653EP, 1998 WL 1782547 (W.D. Tex. Jan. 9, 1998).  Government agencies "regardless of the level of government to which the agency belongs...," are to be treated as "ordinary litigants."  *S.E.C. v. Merkin*, 283 F.R.D. 689, 696, *objections overruled*, 283 F.R.D. 699 (S.D. Fla. 2012).  "The mere fact that it might be an [an agency] attorney preparing a government investigator as the designee instead of a private attorney preparing the client's current or former employees is not a meaningful distinction." *Id*.

Courts have previously permitted the deposition of government agencies and agents regarding investigative reports of other government agencies.  For example, in *Town of Grafton v. Pulte Homes of New England, LLC*, CIV. A. 12-10524-TSH,

2014 WL 2155035, *4 (D. Mass. May 21, 2014), the Court determined that "[i]nformation concerning how the [Massachusetts Office of the Inspector General] came to the conclusions stated in the [Inspector General's ["IG"]] Report is … relevant to both the [Plaintiff] Town's claims and the Defendants' defenses." Therefore, the Court concluded that the Defendants were "entitled to examine the basis for the [Plaintiff Town's] claims" by taking a deposition relating to the IG Report, which had also been produced to the deposing party. *Id.* Confidentiality concerns were addressed by the Court's protective order. *Id.* at *7. The Court specifically determined that because the IG Report "plays such a significant role in this case … Defendants' need for discovery outweighs the burden the production places on the OIG." *Id.*

Also, in *Marisol A., By her Next Friend, Forbes v. Giuliani*, 95 CIV. 10533 (RJW), 1998 WL 158948, *1 (S.D.N.Y. Apr. 1, 1998), the Governor of New York directed the Department of Social Services to investigate the Child Welfare Administration of New York City. The Court ordered that the State "designate witnesses with knowledge of the factual information furnished to [the Governor] on which his decisions were based", or, "if State defendants are unwilling or unable to comply with the foregoing direction that [the Governor] either furnish an affidavit concerning the issues identified above … or appear for an oral deposition at a time and place convenient to his schedule…." *Id.* Importantly, the United States cited this case in *Texas v. Holder* case in support of its Motion to Compel the deposition of Lieutenant Governor David Dewhurst (who will be deposed in this litigation). (*See*

6

Memorandum of Points and Authorities in Support of the Attorney General's Motion to Compel the Deposition of Lieutenant Governor David Dewhurst, *Texas v. Holder*, Case 1:12-cv-00128-RMC-DST-RLW, Docket No. 166-1, at 6.)   As Defendants stated in the 30(b)(6) Advisory, what is good for the goose is good for the gander.

### III.   The United States' Conclusory Privilege Claims Regarding the OIG Report Are Not Sufficient to Prevent A Deposition of OIG

The United States makes conclusory and broad-sweeping assertions that the OIG's testimony is protected by privilege, "including, but not limited to" the deliberative process privilege, the confidential informant privilege, and the investigatory files privilege.  (*See* Motion at 6.)  As Defendants noted in the 30(b)(6) Advisory, however, a government agency cannot "claim privilege preemptively, before any deposition question has been propounded."  *S.E.C.*, 283 F.R.D. at 696 (quoting *Elkins v. District of Columbia*, 250 F.R.D. 20, 27 (D.D.C. 2008) (granting a motion to compel a government 30(b)(6) deponent)); *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Commissioners*, 4:10-CV-2163 CEJ, 2011 WL 1899211, *3 (E.D. Mo. May 19, 2011) (Rejection invocation of the privilege in "a conclusory manner in an effort to avoid all discovery," and determining that a "mere assertion that the privilege applies, without more, is not sufficient to meet their burden.").

In addition, the deliberative process privilege is a qualified privilege, and does not apply when the subject matter of the discovery pertains to the "working law" of the agency, which is defined as "[t]he reasons for a decision made by an

agency, or a policy actually adopted [by the agency]." *Brennan Center for Justice at New York University School of Law v. U.S. Department of Justice*, 697 F. 3d 184, 196 (2d Cir. 2012) (internal citations and quotation marks omitted).  Nor does it apply when the motives and intent of the government agency are in question.  *See, e.g., Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ.*, 2:11-CV-02101-SHM, 2012 WL 6003540 (W.D. Tenn. Nov. 30, 2012) *supplemented*, 2:11-CV-02101-SHM, 2012 WL 6607288 (W.D. Tenn. Dec. 18, 2012) (internal citations omitted).  These "reasons" and "motives" are at the heart of the OIG Report.

Finally, the law enforcement privilege does not apply here.  *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570-71 (5th Cir. 2006) (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa. Mar.13, 1973) (unpublished) (developing the factors).  As noted in the 30(b)(6) Advisory, and as explained by the Court in *In re U.S. Dep't of Homeland Sec.*:

> The oft-cited *Frankenhauser* test consists of weighing the following ten factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case….Although a district court has considerable leeway in weighing the different factors, ... the failure to balance at all requires

> remand ... to consider the respective interest….*Several types of information probably would not be protected, including documents pertaining to: (1) people who have been investigated in the past but are no longer under investigation, (2) people who merely are suspected of a violation without being part of an ongoing criminal investigation, and (3) people who may have violated only civil provisions. Furthermore, the privilege lapses after a reasonable period of time… Therefore, the privilege lapses either at the close of an investigation or at a reasonable time thereafter based on a particularized assessment of the document.*

(emphasis added) (internal citations and quotation marks omitted). *See also Am. Civil Liberties Union v. Finch,* 638 F.2d 1336, 1344 (5th Cir. Mar.1981) ("Even the files of active law enforcement agencies lose their privileges after particular investigations become complete.").  Also, "[a]ny such issues must in any event be raised by an affidavit or declaration on personal knowledge by a responsible person within the agency (*i.e.,* not the litigation attorney) who has personally reviewed the documents and states the specific interests of law enforcement or public concern that would be injured by disclosure."  *Jean D. v. Cuomo*, 90 CIV. 0861 (SS), 1993 WL 276067, *1 (S.D.N.Y. July 20, 1993) (internal citations omitted).  Nor are OIG investigations treated as other law enforcement and investigatory reports.  *See Town of Grafton,* 2014 WL 2155035 at *6 (determining that Massachusetts' law enforcement privilege does not apply to "the internal work product of the OIG").

Here, applying the *Frankenhauser* factors, for the same reasons identified in Defendants' 30(b)(6) Advisory, the data sought by Defendants is largely historical. Defendants are not actual or potential defendants in any criminal proceeding likely to follow from the incident in question.  Since the information Defendants seek concerns final determinations as to priorities and patterns in prosecution,

government self-evaluation and consequent program improvement will not be affected, much less harmed. Nor have the Defendants received a sworn statement from anyone regarding the specific interests of law enforcement which would allegedly be injured here.

## IV.    CONCLUSION

For the reasons explained above, Defendants respectfully request that the Court deny the United States' Motion for a Protective Order as to the OIG Notice, and order OIG to produce a deponent on those topics.

Dated:        July 17, 2014

                                          Respectfully submitted,

                                          GREG ABBOTT
                                          Attorney General of Texas

                                          DANIEL T. HODGE
                                          First Assistant Attorney General

                                          JONATHAN F. MITCHELL
                                          Solicitor General

                                          J. REED CLAY, JR.
                                          Special Assistant and Senior Counsel
                                          to the Attorney General
                                          Southern District of Texas No. 1160600

                                          */s/ John B. Scott*
                                          JOHN B. SCOTT
                                          Deputy Attorney General for Civil Litigation
                                          Southern District of Texas No. 10418
                                          Texas State Bar No. 17901500
                                          ATTORNEY-IN-CHARGE

                                          G. DAVID WHITLEY
                                          Assistant Deputy Attorney General
                                          Southern District of Texas No. 2080496

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

JENNIFER MARIE ROSCETTI
Assistant Attorney General
Southern District of Texas No. 224780

LINDSEY ELIZABETH WOLF
Assistant Attorney General
Southern District of Texas No. 2292940

FRANCES WHITNEY DEASON
Assistant Attorney General
Southern District of Texas No. 2302872

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

BEN A. DONNELL
Donnell, Abernethy & Kieschnick
555 N. Carancahua, Suite 1770
Corpus Christi, Texas 78401-0853
Southern District of Texas No. 5689

COUNSEL FOR THE STATE OF TEXAS, RICK
PERRY, JOHN STEEN, and STEVE MCCRAW

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2014, a true and correct copy of the foregoing document was served via electronic mail to all counsel of record.

_/s/ John B. Scott_