UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISON

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-00193 |

### VEASEY-LULAC PLAINTIFFS' MOTION TO COMPEL INTERROGATORY RESPONSES

The Veasey-LULAC Plaintiffs move for an order compelling the defendants to answer nine interrogatories they have thus far refused to answer. The defendants' refusal is based on their assertion that the interrogatories exceed the 50 initially allocated to each side in this case. Specifically, in their view, some of the earlier interrogatories to which they responded were actually multiple interrogatories and should count as more than one. As discussed more fully below, defendants' assertion is incorrect. Plaintiffs and plaintiff-intervenors have served only 40 interrogatories, and the defendants have responded to only 31.

The Court should therefore compel the defendants to respond to the nine unanswered interrogatories. Alternatively, the Court could forgo analyzing and counting individual interrogatories and instead increase the cap it initially placed on the number of interrogatories, as it previously indicated it would consider doing.

1

## LEGAL STANDARD AND RELEVANT BACKGROUND

Rule 33 of the Federal Rules of Civil Procedure provides that, unless otherwise stipulated or ordered by a court, each party may serve 25 written interrogatories upon any other party. Fed. R. Civ. P. 33(a)(1). Partly to avoid subjecting the defendants to possibly hundreds of interrogatories, the Court gave each side 50 interrogatories, *i.e.* 50 interrogatories for all plaintiff parties combined, and 50 interrogatories for the defendants. The Court noted, however, that if the parties needed additional interrogatories, they could raise that issue with the court at a later time.

Over the course of discovery, the plaintiffs collectively served 40 interrogatories on the defendants. The defendants disputed the plaintiffs' count, however, and said many of the interrogatories should count as more than 1. The plaintiffs attempted to resolve this issue early, but to little avail.[1] Finally, on June 19, 2014, this issue became ripe when the defendants provided their responses and objections to the Plaintiffs' Third Set of Interrogatories. The defendants, in response to Interrogatory No. 2 of that set, stated that they refused to answer on the grounds that the plaintiffs had served more than 50 interrogatories. On the same ground, they have refused to answer the three interrogatories in the Fourth Set and the five interrogatories in the Fifth Set. (See Appendix 1 for the nine unanswered interrogatories).

---

[1] After the defendants took the position in their objections and responses to plaintiffs' first set of interrogatories (served on February 28, 2014) that several of the interrogatories were actually multiple interrogatories, the plaintiffs tried to address the issue without having to wait for an actual refusal to answer on these grounds. The plaintiffs shared their current position, including legal authority and analysis demonstrating why the first 28 interrogatories were single interrogatories, with the defendants in a letter dated April 28, 2014. Subsequently, the plaintiffs made several requests for the defendants to share their position on the total number of interrogatories served. Defendants declined to engage with the plaintiffs in discussions about the actual number of interrogatories served, stating only that plaintiffs had served more than the plaintiffs believed. As noted in the text, this issue later became ripe on June 19, 2014, when defendants refused to respond to an interrogatory on these grounds.

Since that time, the plaintiffs and defendants have attempted to resolve this dispute to avoid bringing it to the Court. Each side offered compromises, but the parties were ultimately unable to agree. Because the information sought in the nine unanswered interrogatories is highly pertinent to, and important for, resolving the Voting Rights Act and constitutional claims involved in this case, the plaintiffs now file this motion to seek an order compelling the defendants to answer the outstanding interrogatories.

## ARGUMENT

### I.     The Defendants Have Responded to Only Thirty-One Interrogatories

Plaintiffs have served a total of 40 interrogatories in this case.[2] Defendants, however, stopped answering after 31, claiming that these 31 are really 50. Defendants rely on a District of Columbia case, *Willingham v. Ashcroft*, 226 F.R.D. 57 (D.D.C. 2005), citing it in their objections and responses to the plaintiffs' interrogatory sets. That case, however, supports the plaintiffs' position.

The magistrate judge in *Willingham* held, correctly, that a new interrogatory begins when "a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it." 226 F.R.D. at 59. The several examples that the judge then walked through demonstrate that lines of inquiry are not to be construed as narrowly as the defendants have attempted to do here.

With respect to the first *Willingham* example, for instance, the judge explained:

*Interrogatory Number 3*. In this interrogatory, plaintiff begins by asking when Catherine Reeves ("Reeves") started working for the Office of Attorney Personnel Management and the number of disciplinary actions she decided since she came to that office. She then proceeds to inquire

---

[2] The interrogatories served are as follows: 28 (1st Set, 1/14/14); 2 (2d Set, 4/18/14); 2 (3d Set, 5/16/14); 3 (4th Set, 5/23/14); and 5 (5th Set, also 5/23/14).

> about every particular of each disciplinary action Reeves decided. Finally, she shifts once again to whether the disciplined employee thereafter filed a discrimination complaint and seeks all the particulars of the complaint, including it disposition.
>
> In my view, this interrogatory raises two distinct areas of inquiry: (1) Reeves' service, the record of what she did in the cases before her, and the particulars of those cases; and (2) whether the persons disciplined filed discrimination complaints and the particulars of those complaints. Hence, this interrogatory should be counted as two interrogatories.

226 F.R.D. at 59.

A look at the way defendants seek to count interrogatories in this case shows they are misapplying the precedent they cite. Indeed, if defendants' method of counting in this case were applied to the *Willingham* example above, that example would have been counted as at least three interrogatories rather than the two counted by that court.

To illustrate the ways that defendants are miscounting interrogatories, Plaintiffs first present here several of the more extreme examples of defendants' misapplication of *Willingham*. Plaintiffs then briefly summarize the issues relating to the other disputed interrogatories. The specific wording for each of the interrogatories that defendants claim are actually multiple interrogatories is included in Appendix 2.

The first example is Interrogatory 28 (First Set), which defendants believe should be two interrogatories. This interrogatory asks the defendants to: "Identify all Texas State and local public agencies and entities that issue or are authorized to issue photographic identification and state the eligibility requirements for obtaining a form of photographic identification from each such agency or entity." This is comparable to what the *Willingham* court called the first interrogatory, which covered both "the number of disciplinary actions she [Reeves] decided since she came to that office" <u>and</u> "every particular of each disciplinary action Reeves decided." It was only when the *Willingham*

4

interrogatory moved on to ask about discrimination complaints that disciplined employees had filed against Reeves (including full particulars) that the court said a second interrogatory had begun. By the same logic, Interrogatory 28 in this case obviously constituted a single line of inquiry—the eligibility requirements for photo IDs issued by state agencies.

The same error infects several other of defendants' claims. For instance, Interrogatory 10 (First Set) requests:

> In those instances when a voter appears to vote in person without required identification under Texas Election Code § 63.0101 (as amended by SB 14), detail the process and procedures that a poll official must follow to allow a person to cast a ballot (specifying which procedures result in a regular ballot and which procedures result in a provisional ballot), including identifying those steps in the process where a poll official may exercise his or her discretion as to the type of ballot that person would be entitled to cast.

Defendants objected on the grounds that this interrogatory contained two separate interrogatories: one about the process and procedures poll officials must follow to allow persons to cast ballots, and one about which of those steps allow poll officials to exercise their discretion regarding the type of ballot individuals may cast. Contrary to defendants' position, however, *Willingham* makes clear that this is a single line of inquiry regarding the process and procedures poll officials must follow when a person appears to vote without the required photo ID.

An even more erroneous application is Interrogatory 2 (Second Set). That interrogatory requested:

> As of April 18, 2014 (or any other named date since November 1, 2013), state the number of holders of non-expired Texas driver licenses or DPS personal identification cards who are (1) U.S. citizens for whom DPS records reflect that they have satisfied the current requirements for documentary proof of U.S. citizenship; (2) persons whom DPS records list as U.S. citizens but for whom the records do not reflect that they have satisfied the current requirements for

5

>documentary proof of U.S. citizenship; (3) persons for whom DPS records do not list a country of citizenship; and (4) persons for whom DPS records list a foreign country as the country of citizenship.

This interrogatory clearly represents a single line of inquiry regarding the numbers of individuals who have or have not satisfied the documentary proof of U.S. citizenship requirements for driver's licenses and personal ID cards. None of the subparts introduced lines of inquiry that were "separate and distinct" from those preceding them. Nevertheless, defendants claimed that this interrogatory contained four separate interrogatories. One might as well say that asking about the gender breakdown of the state's population is at least 2 interrogatories.

>To briefly summarize the disputed interrogatories:

- <u>Interrogatories 4, 5, 6 and 7 (First Set).</u>  Defendants say each of these interrogatories counts as three interrogatories, but each pursues a single line of inquiry: details regarding the process for obtaining one of the four DPS IDs.

- <u>Interrogatory 8 (First Set).</u>  Defendants call this interrogatory two, but it asks the particulars of instances of alleged in-person voter fraud since January 1, 2000. This is a single line of inquiry.

- <u>Interrogatory 10 (First Set).</u>  See earlier discussion.

- <u>Interrogatory 11 (First Set).</u>  Defendants treat this as four interrogatories, but it is only one. The interrogatory asks in detail what a poll official does when a voter appears with a photo ID. This constitutes a single line of inquiry.

- <u>Interrogatory 15 (First Set).</u>  Defendants treat this as two interrogatories because it asks the defendants to identify studies or analyses of which they are aware that examine the effects of SB 14 (or other photo ID proposals) on Texas voters and to include a description of those studies or analyses. This, however, is clearly a single line of inquiry regarding the studies or analyses of which defendants are aware.

- <u>Interrogatory 28 (First Set).</u>  See earlier discussion.

- <u>Interrogatory 1 (Second Set).</u>  This question asks what documents have been accepted to prove citizenship and the legal authority for the requirements. Defendants break this into two interrogatories, but there is a single line of inquiry

6

regarding the proof of citizenship requirements between January 1, 2006 and November 1, 2011.

- Interrogatory 2 (Second Set). See earlier discussion.

In an effort to strike a compromise with the defendants, the plaintiffs offered to withdraw two of their interrogatories in exchange for the defendants answering the remaining seven. The defendants countered by stating that at most they would offer to answer three of the remaining interrogatories. But that would in effect limit the plaintiffs to 34 interrogatories (the 31 defendants have already answered, plus three of the remaining interrogatories). That is simply too drastic a cut from the 50 interrogatories plaintiffs were originally allocated, and plaintiffs' unanswered interrogatories seek important and valuable information for resolving this case.[3] Because the plaintiffs have not come close to the 50-interrogatory cap, the Court should compel the defendants to answer the nine interrogatories that remain unanswered.[4]

## II. The Court Can Alternatively Raise the 50-Interrogatory Cap That It Initially Set

Instead of analyzing each of the contested interrogatories to determine the number served and answered, the Court could alternatively raise the 50-interrgoatory cap. As noted previously, Rule 33 of the Federal Rules of Civil Procedure ordinarily provides that each party may serve 25 interrogatories on any other party. To promote a manageable proceeding, this Court limited the number of interrogatories to 50 per side, but noted that the parties could later request more, if necessary:

---

[3] Even if the defendants were correct that one or even a few of the interrogatories are "multiple," which they are not, the total would not reach the 50 allowed.
[4] These are: Interrogatory 2 of the Third Set, Interrogatories 1-3 of the Fourth Set and Interrogatories 1- 5 of the Fifth Set.

> **Mr. Dunn:** Your Honor, we agree that a number of the parties having the burden of proof are likely to need additional interrogatories than others. What I would propose is that the parties live within the 50 that the Court suggested at this time and then when we come back in February, we can address having more as necessary.
>
> **The Court:** Or sooner if necessary but I'll set it at 50 interrogatories per side at this point and you can certainly urge the Court for more on that if necessary . . . .

Tr. Initial Status Conference, Nov. 15, 2013 (telephonic), at 37-38 (attached as Exhibit 1). Thus, the Court could exercise its discretion not to examine each contested interrogatory and could instead increase the number of interrogatories allowed. Such a decision would be reasonable in light of the complexity of this case, the number of issues involved, the number of parties involved, and the importance of the information sought in these interrogatories.

### III. The Defendants Should Be Ordered to Respond in Time for the Plaintiffs' Experts to Incorporate the Information Into Their Reports

The answers to the nine remaining interrogatories should have been provided in time for the plaintiffs' experts to incorporate the information into their initial reports and certainly in time for the experts to incorporate the information into any reply reports. Accordingly, the plaintiffs also request that the Court order the defendants to respond in a timely fashion. Specifically, under the second amended scheduling order (ECF No. 415), the plaintiffs request that the defendants provide responses by August 1, 2014. If this deadline is not feasible, plaintiffs request that the Court give the defendants a date certain (e.g. 14 days from entry of the proposed order) to respond and grant the plaintiffs leave to amend or supplement their reports as necessary.

## CONCLUSION

Plaintiffs pray for an order compelling the defendants to answer the disputed interrogatories.

Respectfully submitted,

 /s/ Chad W. Dunn
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
Brazil & Dunn
4201 Cypress Creek Parkway, Suite 530
Houston, Texas  77068
Telephone:  (281) 580-6310
Facsimile:   (281) 580-6362
chad@brazilanddunn.com
scott@brazilanddunn.com

J. Gerald Hebert
D.C. Bar No. 447676
Emma Simson
Maryland Bar
Campaign Legal Center
215 E Street NE
Washington DC 20002
Telephone (202) 736-2200
ghebert@campaignlegalcenter.org
esimson@campaignlegalcenter.org

Neil G. Baron
State Bar No. 01797080
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539
Telephone (281) 534-2748
Facsimile  (281) 534-4309
neil@ngbaronlaw.com

David Richards
State Bar No. 16846000

Richards, Rodriguez & Skeith, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701
Telephone (512) 476-0005
Facsimile  (512) 476-1513
daverichards4@juno.com

Armand G. Derfner
Derfner, Altman & Wilborn, LLC
P.O. Box 600
Charleston, S.C. 29402
Telephone (843) 723-9804
aderfner@dawlegal.com

*Attorneys for All Plaintiffs*

LUIS ROBERTO VERA, JR.
LULAC National General Counsel
State Bar No.  20546740
The Law Offices of Luis Vera Jr., and Associates
1325 Riverview Towers, 111 Soledad
San Antonio, Texas 78205-2260
Telephone (210) 225-3300
Facsimile (210) 225-2060
lrvlaw@sbcglobal.net

*Attorney for LULAC Plaintiffs*

## CERTIFICATE OF CONFERENCE

      I hereby certify that counsel for the plaintiffs have conferred with counsel for the defendants regarding this motion, and the parties were unable to reach an agreement on these matters.

                                       */s/ Chad W. Dunn*
                                       Chad W. Dunn

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 18, 2014, I served a true and correct copy of the foregoing document via the Court's ECF system to all counsel of record.

                                               */s/ Chad W. Dunn*
                                               Chad W. Dunn