UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| RICK PERRY, *et al*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' CORRECTED ANSWER TO THE VEASEY-LULAC
PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants John Steen, Nandita Berry,[1] and Rick Perry (collectively "Defendants") file this Corrected Answer to Marc Veasey, Jane Hamilton, Sergio DeLeon, Floyd J. Carrier, Anna Burns, Michael Montez, Penny Pope, Oscar Ortiz, Koby Ozias, John Mellor-Crummey, Peggy Herman, Evelyn Brickner, Gordon Benjamin, Ken Gandy, and League of United Latin American Citizens ("LULAC") (collectively, the "Veasey-LULAC Plaintiffs')' Second Amended Complaint (the "Complaint")[2]:

1.     Defendants deny the allegations in Paragraph 1.  Defendants deny the merits of the Veasey-LULAC Plaintiffs' lawsuit.

2.     Defendants deny the allegations in Paragraph 2.[3]

a.     (a) Defendants deny the allegations in Paragraph 2(a).

---

[1] The Veasey-Lulac Plaintiffs' Second Amended Complaint names John Steen as the Texas Secretary of State but he is no longer Secretary of State; Nandita Berry is now the Texas Secretary of State.
[2] Pursuant to the Court's Order on Defendants' Motions to Dismiss (Docket Nos. 385, 388), Dallas County has been dismissed as a Plaintiff in this action.
[3] For ease of reference, since the Complaint contains several numbered paragraphs with lettered subparagraphs, the Defendants' responses herein which are not preceded by a subparagraph letter refer to numbered allegations in the Complaint not preceded by a subparagraph letter.

b.     Defendants deny that the list referenced in Paragraph 2 (a) showed the number of voters who lack a type of identification specified by SB 14.  Defendants deny that the other allegations in Paragraph 2(b) are factual allegations to which a responsive pleading is required.  To the extent the other allegations in Paragraph 2(b) misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 2(b).

3.     Defendants deny the allegations in Paragraph 3.

4.     Paragraph 4 contains legal conclusions.  Defendants deny that Paragraph 4 contains factual allegations to which a responsive pleading is required. To the extent the allegations in Paragraph 4 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 4.

a.     Defendants deny that the allegations in Paragraph 4(a) are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 4(a) misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 4(a).

b.     Defendants deny that the allegations in Paragraph 4(b) are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 4(b) misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 4(b).

5. Paragraph 5 contains legal conclusions. Defendants deny that the allegations in Paragraph 5 are factual allegations to which a responsive pleading is required. To the extent that the allegations in Paragraph 5 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 5.

6. Defendants lack knowledge and information sufficient to form a belief regarding the allegations in Paragraph 6.

7. Paragraph 7

a. Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(a).

b. Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(b).

c. Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(c).

d. Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(d).

e. Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(e).

f. Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(f).

g. Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(g).

h.      Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(h).

i.      Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(i).

j.      Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(j).

k.      Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(k).

l.      Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(l).

m.      Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(m).

n.      Defendants lack knowledge and information sufficient to form a belief regarding the allegations in paragraph 7(n).

o.      Defendants lack knowledge and information sufficient to form a belief as to the allegations in paragraph 7(o).

p.      Defendants lack knowledge and information sufficient to form a belief as to the allegations in Paragraph 7(p).  Defendants further note that Dallas County is no longer a Plaintiff in this action.

8.      Paragraph 8

a.      Defendants deny that Paragraph 8(a) contains factual allegations to which a responsive pleading is required.  To the extent that the allegations in

Paragraph 8(a) misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 8(a).

      b.      Defendants deny the allegations in Paragraph 8(b).

      c.      Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff Burns "does possess a driver's license" or whether "the name on her driver's license does not match the full name on her voter registration certificate."  Defendants admit that a Texas driver's license is one form of identification specified by SB 14.  Defendants deny the remainder of the allegations in Paragraph 8(c).  Defendants affirmatively allege that SB 14 permits election officers to accept an individual for voting if, "under the standards adopted by the secretary of state...the voter's name on the documentation is substantially similar to but does not match exactly with the name on the list [of registered voters for the precinct]," and the vote "submits an affidavit stating that the voter is the person on the list of registered voters."  (Tex. Elec. Code § 63.001(c).)  Defendants further affirmatively allege that the name on one's voter registration certificate can be changed free of charge.

      d.      Defendants admit that a United States Passport is one form of identification specified by SB 14.  Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff Ozias possesses a passport. Defendants deny the remainder of the allegations in Paragraph 8(d). Defendants affirmatively allege that SB 14 permits election officers to accept an individual for voting if, "under the standards adopted by the secretary of state...the voter's name

on the documentation is substantially similar to but does not match exactly with the name on the list [of registered voters for the precinct]," and the vote "submits an affidavit stating that the voter is the person on the list of registered voters." (Tex. Elec. Code § 63.001(c).) Defendants further affirmatively allege that the name on one's voter registration certificate can be changed free of charge.

      e.     Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff Mellor-Crummey "does possess a driver's license" or whether "the name on his driver's license does not match the full name on his voter registration certificate." Defendants admit that a Texas driver's license is one form of identification specified by SB 14. Defendants deny the remainder of the allegations in Paragraph 8(e). Defendants affirmatively allege that SB 14 permits election officers to accept an individual for voting if, "under the standards adopted by the secretary of state...the voter's name on the documentation is substantially similar to but does not match exactly with the name on the list [of registered voters for the precinct]," and the vote "submits an affidavit stating that the voter is the person on the list of registered voters." (Tex. Elec. Code § 63.001(c).) Defendants further affirmatively allege that the name on one's voter registration certificate can be changed free of charge.

      f.     Defendants deny that an expired Texas driver's license is not a form of identification specified by SB 14, but admit that a Texas driver's license which has expired later than 60 days before the date of presentation is not a form of identification specified by SB 14. Defendants deny that Plaintiff Herman is not

qualified to vote absent a form of identification specified by SB 14.   Defendants affirmatively allege that there are exceptions in for voting by mail without a form of identification specified by SB 14 if it is not Plaintiff Herman's first time voting, or, if it is Plaintiff Herman's first time voting, Plaintiff Herman provide[d]/[s] a Driver's License or Social Security Number when she register[ed]/[s] to vote, or she was/is disabled, in the military, or living overseas (under the procedures adopted by the state of Texas pursuant to the federal Help America Vote Act of 2002 ("HAVA")),  as Plaintiff    Herman    is    over    65    years    old.    (*See* http://www.sos.state.tx.us/elections/voter/reqabbm.shtml.)   Defendants deny that obtaining an EIC involves "burdens."   Defendants lack knowledge or information sufficient to form a belief regarding other allegations in Paragraph 8(f).

g.     Defendants deny that Plaintiff Brickner was, or will be, unable to vote, was disenfranchised, or will be prevented from "casting an effective ballot in the future".   Defendants affirmatively allege that  there are exceptions in for voting by mail without a form of identification specified by SB 14 if it is not Plaintiff Brickner's first time voting, or, if it is Plaintiff Brickner's first time voting, Plaintiff Brickner provide[d]/[s] a driver's license or Social Security Number when she register[ed]/[s] to vote, or she was/is disabled, in the military, or living overseas (under the procedures adopted by the state of Texas pursuant to HAVA),  as Plaintiff Brickner is over 65 years old. Defendants admit that a United States Passport is one form of identification specified by SB 14.   Defendants affirmatively allege that SB 14 permits election officers to accept an individual for voting if,

"under the standards adopted by the secretary of state...the voter's name on the documentation is substantially similar to but does not match exactly with the name on the list [of registered voters for the precinct]," and the vote "submits an affidavit stating that the voter is the person on the list of registered voters." (Tex. Elec. Code § 63.001(c).)  Defendants further affirmatively allege that the name on one's voter registration certificate can be changed free of charge.  Defendants lack knowledge or information sufficient to form a belief regarding other allegations in Paragraph 8(g).

h.      Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 8(h).  Defendants affirmatively allege that ID cards issued by government agencies are among the forms of supporting identification that can be used to "obtain an EIC."  Defendants affirmatively allege that originals of birth certificates are free, and a certified copy costs $2 or $3 if the purpose of obtaining the certified copy of the birth certificate is to acquire an EIC.  *See* 25 T.A.C. § 181.22(t).  Defendants lack knowledge and information sufficient to form a belief about other allegations in Paragraph 8(h).

i.      Defendants deny that Plaintiff Gandy was, or will be, "unable to vote." Defendants admit that Plaintiff Gandy's "age permits him to vote absentee", by mail, without a form of identification specified by SB 14 if it is not his first time voting, or, if it is Plaintiff Gandy's first time voting, Plaintiff Gandy provide[d]/[s] a driver's license or Social Security Number when he register[ed]/[s] to vote, or he was/is disabled, in the military, or living overseas (under the procedures adopted by the state of Texas pursuant to HAVA). Defendants deny that an expired Texas

driver's license is not a form of identification specified by SB 14, but admit that a Texas driver's license which has expired more than 60 days before the date of presentation is not a form of identification specified by SB 14, though a Texas driver's license which is expired less than two years may be used as primary identification to obtain an EIC, and a Texas driver's license which is expired for longer than that may be used as supporting identification to obtain an EIC. Defendants deny that voting by mail is the equivalent of being a "second-class citizen" and deny that SB 14 "den[ies] [Plaintiff Gandy's] right to participate in elections in the same ways that others who possess SB 14 ID are able to participate." Defendants affirmatively allege that permitting individuals to vote by mail is intended to be a privilege and a convenience to those individuals who are eligible to vote by mail. Defendants lack knowledge and information sufficient to form a belief regarding other allegations in Paragraph 8(i).

j.     Defendants affirmatively allege that Dallas County is no longer a Plaintiff in this action. Defendants lack knowledge or information sufficient to form a belief as to what Dallas County "used to" do or what their "current ability" or "desire" is. Defendants deny the remainder of the allegations in Paragraph 8(j).

k.     Defendants lack knowledge or information sufficient to form a belief as to "LULAC's mission" or what it "conducts". Defendants deny the other allegations in Paragraph 8(k).

l.     Defendants deny the allegations in Paragraph 8(l).

9.     Paragraph 9

a.     Defendants admit the Rick Perry is the Governor of Texas.   The remainder of Paragraph 9(a) contains legal conclusions. Defendants deny that the other allegations in Paragraph 9(a) are factual allegations to which a responsive pleading is required.  To the extent that the other allegations in Paragraph 9(a) misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 9(a).

b.     Defendants deny that John Steen is the current Secretary of State of Texas, and affirmatively allege that the current Secretary of State of Texas is Nandita Berry.   The remainder of Paragraph 9(b) contains legal conclusions. Defendants deny that the other allegation in Paragraph 9(b) is a factual allegation to which a responsive pleading is required.  To the extent that the other allegation in Paragraph 9(b) misstates the law or is a factual allegation to which a responsive pleading is required, Defendants deny the other allegation in Paragraph 9(b).

10.     Defendants deny the allegations in Paragraph 10.   Defendants affirmatively allege that individuals seeking an EIC must go to either a permanent or temporary DPS location, mobile or county-based EIC units to obtain an EIC to obtain one of these documents, only to the extent renewal of a Texas driver's license or personal identification card is not available by mail.   Defendants further affirmatively allege that such mobile or county-based EIC units have been provided to counties or areas which have been identified as having large rural populations and/or which may contain a concentration of registered voters whose names may not match names in the DPS database of individuals who have a driver's license or

an identification certificate (otherwise known as a card), and/or which have requested the presence of a mobile EIC unit, since October 2013.  Defendants admit that U.S. passports, federal military IDs and citizenship certificates are only obtainable from certain agencies of the federal government. The other allegations in Paragraph 10 are legal conclusions to which no responsive pleading is required.  To the extent that the other allegations in Paragraph 10 misstate the law or are factual allegations, Defendants deny the other allegations in Paragraph 10.

11.     Defendants deny the allegations in Paragraph 11.

12.     Defendants deny the allegations in Paragraph 12.

13.     Defendants deny the allegations contained in Paragraph 13.

14.     Defendants deny that one can no longer qualify to vote at a voter registration office, and deny that voter registration offices "are now largely irrelevant in the voting process."   Defendants lack knowledge or information sufficient to form a belief as to the other allegations in Paragraph 14.

15.     Defendants deny the allegations in Paragraph 15.   Defendants affirmatively allege that the forms of identification specified by SB 14 may be obtained from permanent, continuous DPS offices or mobile or county-based EIC units, or from federal government agencies.  Defendants affirmatively allege that individuals seeking these documents, for example, must go to either a permanent or temporary DPS location or a mobile or county-based EIC unit to obtain one of these documents, only to the extent renewal of a Texas driver's license or personal identification card is not available by mail.  Defendants further affirmatively allege

that such mobile or county-based EIC units have been provided to counties or areas which have been identified as having large rural populations and/or which may contain a concentration of registered voters whose names may not match names in the DPS database of individuals who have a driver's license or an identification certificate (otherwise known as a card), and/or which have requested the presence of a mobile EIC unit, since October 2013.  Defendants affirmatively allege that driver license offices in certain counties have been open on Saturdays for purposes of obtaining EICs, at times since October 2013, and most driver license offices are open from Monday to Friday.  Defendants affirmatively allege that EICs have been made available later than 6 p.m. from certain EIC Mobile Units.

16.     Defendants admit that a military identification may be obtained without cost.  Defendants deny the remainder of the allegations in Paragraph 16. Defendants affirmatively allege that the Secretary of State has interpreted and implemented SB 14 by identifying certain documents which are acceptable forms of identification under SB 14, including, but not limited to, Naturalization Certificates, Passport Cards, and four specific forms of military identification, including, but not limited to a Department of Defense Common Access Card, Uniformed Services ID Cards, Department of Defense Civilian Retiree Cards, and Veterans Affairs ID Cards, some of which are available to voters who are not in active military service. Defendants affirmatively allege that there is no fee associated with obtaining an EIC.   Defendants affirmatively allege that an individual may obtain a Texas driver's license by, among other things, presenting a

drivers' license from another jurisdiction, without taking any examination. Defendants affirmatively allege that a Texas driver's license, costs $25 (new or renewal) only for an individual age 18-84.   Defendants affirmatively allege that a Texas driver's license for an individual age 85 or older (new or replacement) is $9, a Texas driver's license for an individual under age 18 is $16 (new), or $6 (renewal), and a replacement Texas driver's license is $11.   Defendants admit that obtaining a new personal identification card costs $16 for individuals age 59 and younger only; however, Defendants affirmatively allege that a replacement Texas personal identification card is $11, and a new or renewal personal identification card for an individual age 60 and older costs $6. (*See* http://www.txdps.state.tx.us/DriverLicense/fees.htm)   Defendants affirmatively allege that a Standard Concealed Handgun License is free, for example, for those currently serving in the military or whom have been honorably discharged within the last 365 days, and is $25 for individuals honorably discharged from military service, and costs less than $140 for several other groups of individuals.   (*See* https://www.txdps.state.tx.us/RSD/CHL/documents/CHLFeeSchedule.pdf).

17.   Defendants admit that there is no charge specifically attached to the issuance of an EIC, and that that EICs are stamped with the words "cannot be used as identification."   Defendants deny the remaining allegations in Paragraph 17.   A birth certificate, which can be used to obtain an EIC, is originally issued free of charge.   A certified copy costs $2 or $3 if the purpose of obtaining the certified copy of the birth certificate is to acquire an EIC.   *See* 25 T.A.C. § 181.22(t). As other

13

examples, Social Security Cards, Medicaid Cards, and school records do not cost money to obtain and are additional supporting documentation that can be used to obtain an EIC.

a. Defendants deny the allegations in Paragraph 17(a). Defendants affirmatively allege that a birth certificate is originally issued free of charge, and a certified copy costs $2 or $3 if the purpose of obtaining the certified copy of the birth certificate is to acquire an EIC. *See* 25 T.A.C. § 181.22(t). Defendants affirmatively allege that a Delayed Certificate of Birth can be obtained for individuals born in Texas and for whom a Birth Certificate was not issued at birth, for $2 or $3 if the purpose of obtaining the certified copy of the Delayed Certificate of Birth is to acquire an EIC. *See* 25 T.A.C. § 181.22(t).

b. Defendants deny the allegations in Paragraph 17(b).

18. Defendants deny the allegations in Paragraph 18.

19. Defendants deny the allegations in Paragraph 19.

20. Defendants deny the allegations in Paragraph 20.

a. Defendants admit that certain individuals may vote by mail, without a form of identification specified by SB 14 if it is not one's first time voting, or, if it is one's first time voting, if the voter provide[d]/[s] a driver's license or Social Security Number when s/he register[ed]/[s] to vote, or s/he was/is disabled, in the military, or living overseas (under the procedures adopted by the state of Texas pursuant to HAVA). Defendants deny the remainder of the allegations in Paragraph 20(a). Defendants affirmatively allege that permitting individuals to vote by mail is

intended to be a privilege and a convenience to those individuals who are eligible to vote by mail.

b.    Defendants admit that certain disabled citizens may vote in-person if they obtain a disability designation on their voter registration. Defendants deny the remainder of the allegations in Paragraph 20(b). Defendants affirmatively allege that the process to obtain the designation involves filling out a short form which includes the individual's name, address, VUID number and county, a statement that the individual does not have a valid form of photographic identification, and providing certain paperwork from the United States Social Security Administration and/or the United States Department of Veterans Affairs. Defendants further affirmatively allege that the criteria to obtain a disability designation is that either the Social Security Administration has determined that the individual has a disability, or, alternatively, the U.S. Department of Veterans Affairs has given the individual a disability rating of at least 50 percent. (Tex. Election Code § 13.002(i).)

c.    Paragraph 20(c) contains legal conclusions. Defendants deny that the other allegations in Paragraph 20(c) are factual allegations to which a responsive pleading is required. To the extent that the allegations in Paragraph 20(c) misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 20(c). Defendants affirmatively allege that the Secretary of State has interpreted and implemented SB 14 by identifying certain documents which are acceptable forms of identification under SB

14, including, but not limited to, Naturalization Certificates, Passport Cards, and four specific forms of military identification.

21.     Defendants deny the allegations in Paragraph 21.

22.     Defendants deny the allegations in Paragraph 22.

23.     Defendants lack knowledge and information sufficient to form a belief regarding the allegations in Paragraph 23.

24.     Defendants deny the allegations in Paragraph 24. Defendants affirmatively allege that there are regulations dealing with "substantially similar" names.

25.     Defendants deny the allegations in Paragraph 25.

26.     Defendants deny the allegations in Paragraph 26.

a.     Defendants lack knowledge or information sufficient to form a belief that "some voters have tried to update their information but these attempted updates have been unsuccessful and create new inconsistencies with other SB 14 qualifying IDs they possess." The other allegations in Paragraph 26(a) contain legal conclusions. Defendants deny that the other allegations in Paragraph 26(a) are factual allegations to which a responsive pleading is required. To the extent that the other allegations in Paragraph 26(a) misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 26(a).

b.     Defendants deny the allegations contained in Paragraph 26(b).

c.      Defendants admit that elderly or disabled voters may cast mail-in ballots.  Defendants deny the remainder of the allegations in Paragraph 26(c) and incorporate their response to the allegation in Paragraph 20.

27.     Defendants deny the allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28.

29.     Defendants deny the allegations in Paragraph 29.

30.     Defendants deny the allegations in Paragraph 30.

31.     Defendants lack knowledge or information sufficient to form a belief as to whether "African-Americans and Latinos are disproportionately found in the ranks of the poor population" and deny the remaining allegations in Paragraph 31.

32.     Defendants deny the allegations in Paragraph 32.  Defendants affirmatively allege that individuals seeking EICs, for example, may go to either a permanent or temporary DPS location or a mobile or county-based EIC unit to obtain an EIC, only to the extent renewal of a Texas driver's license or personal identification card is not available by mail.  Defendants further affirmatively allege that such mobile or county-based EIC units have been provided to counties or areas which have been identified as having large rural populations and/or which may contain a concentration of registered voters whose names may not match names in the DPS database of individuals who have a driver's license or an identification certificate (otherwise known as a card), and/or which have requested the presence of a mobile EIC unit, since October 2013.  Defendants affirmatively allege that driver license offices in certain counties have been open on Saturdays for purposes of

obtaining EICs, at times since October 2013, and most driver license offices are open from Monday to Friday.  Defendants affirmatively allege that EICs have been made available later than 6 p.m. from certain EIC mobile units.

33.    Defendants deny the allegations in Paragraph 33.

34.    Defendants deny the allegations in Paragraph 34.

35.    Defendants deny the allegations in Paragraph 35.

36.    Defendants deny the allegations in Paragraph 36.

37.    Defendants deny the allegations in Paragraph 37.

38.    Paragraph 38 contains legal conclusions.  Defendants deny that the allegations in Paragraph 38 are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 39 misstate the law or are factual allegations to which a response is required, Defendants deny the allegations in Paragraph 38.

39.    Defendants deny that Paragraph 39 contains any factual allegations to which a responsive pleading is required because *Texas v. Holder* speaks for itself.  To the extent that the allegations in Paragraph 39 misstate the law or are factual allegations to which a response is required, Defendants deny the allegations in Paragraph 39.  Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here.

40.    Defendants deny that Paragraph 40 contains any factual allegations to which a responsive pleading is required because *Texas v. Holder* speaks for itself.  To the extent that the allegations in Paragraph 40 misstate the law or are factual

18

allegations to which a response is required, Defendants deny the allegations in Paragraph 40.  Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here.

41.     Defendants deny that Paragraph 41 contains any factual allegations to which a responsive pleading is required because *Texas v. Holder* speaks for itself. To the extent that the allegations in Paragraph 41 misstate the law or are factual allegations to which a response is required, Defendants deny the allegations in Paragraph 41.  Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here.

42.     Defendants deny the allegations in Paragraph 42 in the second sentence of Paragraph 42.   Defendants deny that the allegations in the first sentence of Paragraph 42 referring to *Texas v. Holder* are factual allegations to which a responsive pleading is required because *Texas v. Holder* speaks for itself. To the extent that the allegations in the first sentence of Paragraph 42 misstate the law or are factual allegations to which a response is required, Defendants deny the allegations in Paragraph 42. Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here.

43.     Defendants admit that election fraud should be prevented.  Defendants admit that one form of election fraud is a person appearing at a polling place claiming to be another person.   Defendants admit that one stated purpose of SB14 was to address election fraud.   Defendants deny that the other allegations in Paragraph 43 are factual allegations to which a responsive pleading is required.  To

the extent that the other allegations in Paragraph 43 misstate the law or are factual allegations to which a response is required, Defendants deny the allegations in Paragraph 43.  Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

44.     Defendants deny the allegations in Paragraph 44.

45.     Defendants deny the allegations in Paragraph 45.

46.     Defendants deny the allegations contained in Paragraph 46.

47.     Paragraph 47 contains legal conclusions.  Defendants deny that the allegations in Paragraph 47 contain factual allegations to which a responsive pleading is required.  To the extent that the other allegations in Paragraph 47 misstate the law or are factual allegations to which a response is required, Defendants deny the allegations in Paragraph 47.  Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

48.     Defendants admit that all states, including Texas, have an interest in voter confidence in the election process, and that instilling voter confidence is important to increase voter participation.  Defendants deny the other allegations in Paragraph 48.

49.     Defendants admit that the State of Texas and its officials "have no legitimate interest in depressing or discouraging voter participation", and deny the remaining allegations in Paragraph 49.

50.     Defendants lack knowledge or information sufficient to form a belief as to whether "Texas is one of the lowest-ranking states in the nation for voter registration and voter turnout."  The remainder of Paragraph 50 contains legal conclusions.  Defendants deny that the remainder of the allegations in Paragraph 50 contain factual allegations to which a responsive pleading is required.  To the extent that the other allegations in Paragraph 50 misstate the law or are factual allegations to which a response is required, Defendants deny the allegations in Paragraph 50.

51.     Defendants deny the allegations in Paragraph 51.

52.     Paragraph 52 contains legal conclusions.  Defendants deny that Paragraph 52 contains factual allegations to which a responsive pleading is required.  To the extent the allegations in Paragraph 52 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the allegations contained in Paragraph 52.

53.     Defendants deny the allegation in the first sentence of Paragraph 53 and deny the allegation in the second sentence of Paragraph 53 as to what could have been done. Defendants deny that the other allegations in Paragraph 53 are factual allegations to which a responsive pleading is required, as the "D.C. court" decision referenced speaks for itself.  To the extent the allegations in Paragraph 53

21

misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the other allegations contained in Paragraph 53.

54. Defendants deny the allegations in Paragraph 54. Defendants affirmatively assert that the elderly and disabled individuals may vote by mail, without a form of identification specified by SB 14 if it is not one's first time voting, or, if it is one's first time voting, the individual provide[d]/[s] a driver's license or Social Security Number when he register[ed]/[s] to vote, or he was/is disabled, in the military, or living overseas (under the procedures adopted by the state of Texas pursuant to HAVA, and disabled individuals, as defined in SB 14, are exempt from SB 14, as provided in SB 14. Defendants affirmatively allege that a Delayed Certificate of Birth can be obtained for individuals born in Texas and for whom a Birth Certificate was not issued at birth, for $2 or $3 if the purpose of obtaining the certified copy of the Delayed Certificate of Birth is to acquire an EIC. *See* 25 T.A.C. § 181.22(t).

55. Defendants deny the allegations in Paragraph 55. The allegation referring to *Texas v. Holder*, 888 F. Supp. 2d 113 (2012) ("*Texas v. Holder*") contains a legal conclusion. Defendants deny that the allegation in Paragraph 55 referring to *Texas v. Holder* is a factual allegation to which a responsive pleading is required, as *Texas v. Holder* speaks for itself. To the extent that the allegations in Paragraph 55 misstate the law or are factual allegations to which a response is required, Defendants deny the allegations in Paragraph 55. Defendants affirmatively allege

that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here.

56.     Defendants deny the allegations in Paragraph 56.

57.     Defendants deny the allegations in Paragraph 57.

58.     Defendants deny the allegations in Paragraph 58.   Defendants affirmatively allege that individuals seeking an EIC must go to either a permanent or temporary DPS location, mobile or county-based EIC units to obtain an EIC to obtain one of these documents, only to the extent renewal of a Texas driver's license or personal identification card is not available by mail.   Defendants further affirmatively allege that such mobile or county-based EIC units have been provided to counties or areas which have been identified as having large rural populations and/or which may contain a concentration of registered voters whose names may not match names in the DPS database of individuals who have a driver's license or an identification certificate (otherwise known as a card), and/or which have requested the presence of a mobile EIC unit, since October 2013.

59.     Defendants deny the allegations in Paragraph 59.

60.     Defendants deny the allegations in Paragraph 60.

61.     Defendants deny the allegations in Paragraph 61.

62.     Defendants deny the allegations in Paragraph 62.

63.     Defendants deny the allegations contained in Paragraph 63.

64.     Defendants deny the allegations contained in Paragraph 64.

65.    Paragraph 65 contains a legal conclusion.  Defendants deny that the allegations in Paragraph 65 contain factual allegations to which a responsive pleading is required.  To the extent the allegations in Paragraph 65 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 65.

66.    Defendants deny the allegations in Paragraph 66.

67.    Defendants deny the allegations in Paragraph 67 and incorporate their responses to Paragraphs 49-62.  The allegation referring to *Texas v. Holder*, 888 F. Supp. 2d 113 (2012) ("*Texas v. Holder*") contains a legal conclusion.  Defendants deny that the allegation in Paragraph 67 referring to *Texas v. Holder* is a factual allegation to which a responsive pleading is required.  To the extent that the allegation in Paragraph 67 referring to *Texas v. Holder* misstates the law or are factual allegations to which a response is required, Defendants deny that allegation in Paragraph 67.  Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here.

68.    Paragraph 68 contains legal conclusions.  Defendants deny that the allegations are factual allegations to which a responsive pleading is required.  To the extent that the allegations misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the allegations. Defendants affirmatively allege that fifteen amendments to SB 14 were adopted by the Texas House of Representatives, ten of which were sponsored by House members who are members of a race or language minority group.

69.     Paragraph 69 contains legal conclusions.  Defendants deny that the allegations are factual allegations to which a responsive pleading is required.  To the extent that the allegations misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the allegations.

70.     Defendants deny the allegations in Paragraph 70.

71.     Defendants incorporate their responsive pleadings to the factual allegations "set forth above" referred to by the Plaintiffs in Paragraph 71.

72.     Paragraph 72 contains legal conclusions.  Defendants deny that Paragraph 72 contains factual allegations to which a responsive pleading is required.  To the extent Paragraph 72 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 72.

73.     Paragraph 73 contains legal conclusions.  Defendants deny that Paragraph 73 contains factual allegations to which a responsive pleading is required.  To the extent Paragraph 73 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 73.

74.     Defendants incorporate their responsive pleadings to the factual allegations "set forth above" referred to by the Plaintiffs in Paragraph 74.

75.     Paragraph 75 contains legal conclusions.  Defendants deny that Paragraph 75 contains factual allegations to which a responsive pleading is required.  To the extent Paragraph 75 misstates the law or contains factual

allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 75.

76.     Defendants incorporate their responsive pleadings to the factual allegations "set forth above" referred to by the Plaintiffs in Paragraph 76.

77.     Paragraph 77 contains legal conclusions.   Defendants deny that Paragraph 77 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 77 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 77.

78.     Defendants incorporate their responsive pleadings to the factual allegations "set forth above" referred to by the Plaintiffs in Paragraph 78.

79.     Paragraph 70 contains legal conclusions.   Defendants deny that Paragraph 79 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 79 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 79.

80.     Defendants deny the allegations in Paragraph 80.

81.     Defendants deny the allegations in Paragraph 81.

82.     Paragraph 82 contains legal conclusions.   Defendants deny that Paragraph 82 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 82 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the

allegations in Paragraph 82, and also respectfully incorporate their responses to Paragraphs 80 and 81 above.

83.     Paragraph 83 contains legal conclusions.   Defendants deny that Paragraph 83 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 83 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 83.

84.     Paragraph 84 contains legal conclusions.   Defendants deny that Paragraph 84 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 84 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 84.

85.     Defendants deny the allegations in Paragraph 85.

86.     Paragraph 86 contains legal conclusions.   Defendants deny that Paragraph 86 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 86 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 86.

87.     Defendants incorporate their responsive pleadings to the factual allegations "set forth above" referred to by the Plaintiffs in Paragraph 87.

88.     Paragraph 88 contains legal conclusions.   Defendants deny that Paragraph 88 contains factual allegations to which a responsive pleading is

required.   To the extent Paragraph 88 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 88.

89.    Paragraph 89 contains legal conclusions.   Defendants deny that Paragraph 89 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 89 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 89.

90.    Defendants incorporate their responsive pleadings to the factual allegations "set forth above" referred to by the Plaintiffs in Paragraph 90.

91.    Paragraph 91 contains legal conclusions.   Defendants deny that Paragraph 91 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 91 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 91.

92.    Paragraph 92 contains legal conclusions.  Defendants deny that "SB 14 requires a payment of money in order to vote", and deny that the remaining allegations in Paragraph 92 are factual allegations to which a responsive pleading is required.  To the extent that the remaining allegations in Paragraph 92 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 92.

93.     Paragraph 93 contains legal conclusions.   Defendants deny that Paragraph 93 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 93 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 93.

94.     Paragraph 94 contains legal conclusions.   Defendants deny that Paragraph 94 contains factual allegations to which a responsive pleading is required.   To the extent Paragraph 94 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 94.

## AFFIRMATIVE DEFENSES AND ALLEGATIONS

1.     Bail-in under Section 3(c) of the Voting Rights Act is an equitable remedy.  It would be both inequitable and unconstitutional to bail-in Texas because the enforcement regime underlying the plaintiffs' claims in this case relies on a history of partisan behavior by DOJ's Voting Section.  The constitutionality of the preclearance regime depends on a Justice Department that enforces the Voting Rights Act in a non-partisan manner that complies with the 14th Amendment's mandate of equal protection.  Imposing bail-in here would not be constitutional.

## The United States Department of Justice's Unconstitutional and Partisan Enforcement of the Voting Rights Act

2.     The Voting Section, Civil Rights Division of the Department of Justice has a long-standing history of partisan enforcement of the Voting Rights Act.

3.     The Department has advanced unconstitutional interpretations of the Voting Rights Act on multiple occasions over the last 20 years.

4.     The purpose and effect of these interpretations was partisan political gain and/or to require race conscious state action in violation of the 14th and 15th Amendments to the United States Constitution.

5.     During the 1990s, the Department used its preclearance enforcement powers under Section 5 of the Voting Rights Act to require states to racially gerrymander their redistricting plans to maximize the number of African-American elected officials. Such unequal enforcement of the Voting Rights Act runs afoul of the 14th Amendment because it elevates the rights and interests of a single racial group above those of other racial groups including Hispanics, Asians and Anglos.

6.     In *Miller v. Johnson*, 515 U.S. 900, 906-09 (1995), the Department repeatedly refused to preclear Georgia's decennial congressional redistricting plans until the state included an additional majority African-American district.

7.     The additional African-American district was challenged in court as a violation of the Fourteenth Amendment's equal protection mandate.  *Id.* at 909.

8.     The district court found that the "Justice Department had adopted a 'black maximization' policy under § 5" and determined that the additional African-American district was illegal.  *Id.* at 921.

9.      In reviewing the legality of Georgia's Eleventh Congressional District, the Supreme Court noted that "the Justice Department's implicit command that

States engage in presumptively unconstitutional race-based districting brings the Voting Rights Act . . . into tension with the Fourteenth Amendment." *Id*. at 927.

10.   In order to avoid the "troubling and difficult constitutional questions" raised by the Department's "black maximization" policy, the Supreme Court struck down Georgia's Eleventh Congressional District. *Id*.

11.   Even after the Supreme Court's admonishment in *Miller*, the Department of Justice has used its preclearance authority under the Voting Rights Act in constitutionally suspect ways, bringing further rebukes by the United States Supreme Court.

12.   In *Georgia v. Ashcroft*, the Department objected to Georgia's state senate redistricting plan.

13.   The Supreme Court rebuffed the Department's focus on a minority group's ability to elect a candidate of their choosing; that is, the Department's focus on guaranteeing electoral outcomes for a certain voters.

14.   In *Reno v. Bossier Parish School Board*, 538 U.S. 320 (2000), the Supreme Court rejected the Department's interpretation that Section 5 prohibits any discriminatory purpose. The Court found that such an interpretation raised serious concerns about Section 5's constitutionality.

**15.**   The Department has at times advised covered jurisdictions that compliance with Section 5 of the Voting Rights Act might be met by using non-partisan demographic statistics, rather than by guaranteeing election results.

16.     For instance, in 2001, the Department refused to preclear Texas' state House of Representatives map because "the number of districts in which the level of Spanish surnamed registration (SSRV) is more than 50 percent decreases by two as compared to the benchmark." *See* Letter from Ralph F. Boyd, Jr., Assistant Attorney General, Civil Rights Division, United States Department of Justice, to The Hon. Geoffrey Connor, Acting Secretary of State, State of Texas (Nov. 16, 2001), *available at* http://www.justice.gov/crt/records/vot/obj_letters/letters/TX /l_011116. php.

17.     But by February 2011, the focus on guaranteeing electoral outcomes for a subset of voters had resurfaced.  After the Texas Legislature had begun the process of redistricting, the Department released guidance instructing covered jurisdictions that the Section 5 inquiry "requires a functional analysis of the electoral behavior within the particular jurisdiction or election district."  Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act, 76 Fed. Reg. 7470, 7471 (Feb. 9, 2011).

18.     The guidance did not, however, explain how covered jurisdictions should perform the election analysis.

19.     In reality, this functional analysis of electoral behavior was nothing more than a crude comparison of historical election results in the state's existing redistricting plan (the "benchmark") with reconstituted election results under the State's proposed plan.

20.    The Department's electoral analysis eschewed objective, easily ascertained demographic statistics in favor of manipulating district lines to guarantee the outcome of future elections.  That interpretation re-raises the very same constitutional concerns that animated the Supreme Court's decision in *Georgia v. Ashcroft*.

21.    The Department's focus on election results, rather than non-partisan demographic statistics, is also incongruent with the Supreme Court's jurisprudence under Section 2 of the Voting Rights Act.

22.    As *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986), acknowledges and *Bartlett v. Strickland*, 556 U.S. 1, 13-17 (2009), later emphasized, Section 2 only compels states to create majority-minority districts where, among other things, a minority group represents a numeric majority of the voting age population in a compact area.

23.    Rather than interpret Section 5's nearly identical language to require a similar focus on non-partisan demographic statistics, the Department has repeatedly turned a blind-eye to the Supreme Court decisions in *Gingles* and *Bartlett*.

24.    The Department similarly rejected the Supreme Court's determination that Section 2 never compels a state to draw "coalition" districts (that is a district in which two or more minority groups make up more than 50% of the voting age population), charging that Texas could be obligated under Section 5 to maintain or draw coalition districts.  *Bartlett*, 556 U.S. at 19.

**The Office of the Inspector General's Report Concerning the Partisan Operations of the Voting Section**

25.    In March 2013, the Department's own Office of the Inspector General released its report reviewing the operations of the Voting Section of the Civil Rights Division.

26.    The report details a number of disturbing findings that raise serious questions regarding the motivations behind enforcement decisions made by the Voting Section and suggest that the Voting Section does not enforce the Voting Rights Act in a race-neutral fashion.

27.    According to the report, multiple Voting Section career staff "told the OIG that they believed that the reason the voting-rights laws were enacted was to protect historic victims of discrimination and therefore the Section should prioritize its resources accordingly." Oversight and Review Division, Office of the Inspector General, U.S. Department of Justice, *A Review of the Operations of the Voting Section of the Civil Rights Division* 44 (March 2013), *available at* http://www.justice.gov/oig/reports/2013/s1303.pdf. A copy of the report is attached hereto as Exhibit A.

28.    Some of these individuals, including a manager at the time, told OIG that they believed the Voting Section should only pursue cases on behalf of traditional racial minorities. *Id.* This sort of race-conscious enforcement of the Voting Rights Act conflicts with the Fourteenth Amendment's equal protection mandate.

29.     The Report also disclosed that OIG uncovered emails detailing "widespread and vehement opposition among career employees" to at least one enforcement action simply because the defendants were African-American.  *Id.*

30.     Voting Section staff that held different ideologically opposed views were sometimes criticized.  *Id.* at 253.

31.     Emails reviewed by OIG revealed that staff members made derisive comments regarding another attorney for participating in an enforcement action filed against African-Americans.  *Id.* at 123-24.

32.     One such email referred to the attorney as a "klansman."  *Id.* at 123.

33.     Staff members also complained about election monitors being sent to investigate allegations that African-American political leaders were perpetrating absentee ballot fraud.  *Id.* at 124-25.

34.     An internal memorandum revealed that staff members were not opposed based upon the weakness of the allegations, but rather because "such an investigation would take the Voting Section away from its traditional right-to-vote and access-to-the-polls focus" and that the investigation "would undermine the willingness of members of the Black community to cooperate with the Voting Section."  *Id.* at 124.

35.     The OIG Report also examined the Voting Section's hiring practices in 2010 and found several suspicious practices that appear to have been used to ensure hires with liberal/Democratic backgrounds.  *Id.* at 194 -222.

36.    The Report also stated that "the investigation identified several hiring practices that [OIG] believe[d] increased the risk of violating merit system principles and creating perceptions that the Voting Section engaged in prohibited personnel practices, including use of a general civil rights/public interest criterion." *Id.* at 220.

37.    The Report found that "the primary criterion used by the Voting Section hiring committee . . . resulted in a pool of select candidates that was overwhelmingly Democratic/liberal in affiliation." *Id.* at 222.

38.    Once such criterion was the applicants' civil rights "commitment." *Id.* at 218.

39.    OIG found that this "creates the possible appearance that [the Voting Section] is searching for applicants who share political or ideological views common in the liberal civil rights community" and that "[t]his perception is compounded by the fact that the 'commitment' that passes muster often is demonstrated through work with a small number of influential civil rights organizations." *Id.*

40.    The Report further found that "[i]f the Voting Section in fact prefers candidates with experience working with disenfranchised communities, for example, it should establish such work as one of its hiring criteria rather than subsuming it into a broad experience criterion that readily can be manipulated to assess one's commitment to political or ideological objectives and that adds marginal value to the hiring process." *Id.* at 220.

41.     The OIG Report also found that "the Voting Section passed over candidates who had stellar academic credentials and litigation experience with some of the best law firms in the country, as well as with the Department." *Id.*

42.     Finally, the OIG report detailed inconsistent explanations for a list that appeared to be prepared "in part" for recruiting purposes.  *Id.* at 218.

43.     The Report said the list was "troubling because it appeared the list was prepared in part for recruiting purposes, . . . people widely perceived to be conservatives were omitted from it, and staff in the Voting Section failed to provide a consistent explanation as to why that was the case." *Id.*

## The Department of Justice's Partisan Enforcement of the Voting Rights Act With Respect to Voter ID Laws.

44.     The Voting Section's internal dysfunction, partisan hiring practices and politically charged work environment have translated into the unequal and partisan enforcement of the Voting Rights Act with respect to Voter ID laws generally and with respect to S.B. 14 specifically.

45.     The Voting Section repeatedly delayed the preclearance of SB 14.

46.     Although the Attorney General is required by statute to rule on a preclearance submission with 60 days, instead it waited a full 60 days to request additional information.

47.     DOJ did not issue a decision on Texas' request until March 12, 2012, and cited as one basis for its objection the fact that the State "did not include evidence of significant in-person voter impersonation not already address by the state's existing laws"—something the Department never asked for.

48.     The Department's delay in issuing a preclearance ruling ultimately required the State to seek preclearance in the U.S. District Court for the District of Columbia if it had any hopes of implementing its law before the next statewide election date.

49.     Once in litigation, the Department refused to make available the federal databases to Texas—and even its own expert—which prevented Texas from properly addressing the same ID disparity theory that the Department rehashes in its complaint in this case.

50.     Texas was forced to either fight for access to the federal database or lose any hope of implementing its law in the next statewide election.

51.     Because Texas had the burden of proof in the preclearance lawsuit, the Department's litigation tactics ultimately worked to further block Texas' Voter ID law.

52.     Sixteen states have enacted photo-voter identification laws.  Wendy Underhill, Voter Identification Requirements:  Voter ID Laws, *National Conference of State Legislatures* (June 25, 2014), http://www.ncsl.org/research/elections-and-campaigns/voter-id.aspx#map.

53.     DOJ has not used Section 2 to challenge similar Voter ID laws enacted by Indiana, Georgia, Tennessee, Wisconsin, Ohio, Alabama, Arkansas, Alaska, Kansas, Mississippi, or South Carolina.

54. DOJ's decision to target only southern, Republican-led states that were previously covered by Section 5's preclearance regime provides clear evidence of the partisan and uneven enforcement now typical of the Voting Section.

55. Texas is the only state that DOJ alleges has purposely discriminated against minorities when enacting its Voter ID law.

56. DOJ's discovery inquiries in this case also evidence partisan motivations for this lawsuit.

57. DOJ has issued dozens of subpoenas to state legislators requesting campaign materials that have nothing to do with Voter ID and that, in some cases, were created long after Voter ID was enacted. This Court correctly rebuffed such requests.

58. ██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████

## **PRAYER FOR RELIEF**

Defendants pray that the Court issue a take-nothing judgment in favor of Defendants and against Plaintiffs and in issue an order denying Plaintiffs all relief sought.

Dated: July 18, 2014

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General
Southern District of Texas No. 1160600

*/s/ John B. Scott*
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
Southern District of Texas No. 10418
Texas State Bar No. 17901500
ATTORNEY-IN-CHARGE

G. DAVID WHITLEY
Assistant Deputy Attorney General
Southern District of Texas No. 2080496

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

JENNIFER MARIE ROSCETTI
Assistant Attorney General
Southern District of Texas No. 224780

LINDSEY ELIZABETH WOLF
Assistant Attorney General
Southern District of Texas No. 2292940

FRANCES WHITNEY DEASON
Assistant Attorney General

40

Southern District of Texas No. 2302872

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

BEN A. DONNELL
Donnell, Abernethy & Kieschnick
555 N. Carancahua, Suite 1770
Corpus Christi, Texas 78401-0853
Southern District of Texas No. 5689

COUNSEL FOR THE STATE OF TEXAS,
RICK PERRY, JOHN STEEN, and STEVE
MCCRAW

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2014, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


<u>*/s/ John B. Scott*</u>
JOHN B. SCOTT