# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| RICK PERRY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' CORRECTED ANSWER TO THE TEXAS STATE CONFERENCE OF NAACP BRANCHES AND THE MEXICAN AMERICAN LEGISLATIVE CAUCUS OF THE TEXAS HOUSE OF REPRESENTATIVES' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Defendants John Steen, Nandita Berry,[1] and Steve McCraw (collectively "Defendants") file this Corrected Answer to The Texas State Conference of NAACP Branches and the Mexican American Legislative Caucus of the Texas House of Representatives (collectively "the Texas NAACP and MALC")'s Complaint for Declaratory and Injunctive Relief (the "Complaint"):

1.  Paragraph 1 contains legal conclusions. Defendants deny that the Paragraph 1 contains factual allegations to which a responsive pleading is required. To the extent that Paragraph 1 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 1. Defendants deny the merits of the Texas NAACP and MALC's suit.

2.  Defendants deny the allegations in Paragraph 2.

---

[1] The Texas NAACP and MALC's Complaint for Declaratory and Injunctive Relief names John Steen as the Texas Secretary of State but he is no longer Secretary of State; Nandita Berry is now the Texas Secretary of State.

**3.** Defendants lack knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 3.[2]

    **a.** Defendants lack knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 3(a).

    **b.** Defendants deny the allegations in Paragraph 3(b).

    **c.** Defendants deny the allegations in Paragraph 3(c).

**4.** Defendants lack knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 4.

    **a.** Defendants lack knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 4(a).

    **b.** Defendants lack knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 4(b).

    **c.** Defendants deny the allegations in Paragraph 4(c).

5. Defendants deny that John Steen is the current Secretary of State of Texas, admit that he was sued in his official capacity, and affirmatively allege that the current Secretary of State of Texas is Nandita Berry. Defendants deny that the other allegations in Paragraph 5 are factual allegations to which a responsive pleading is required. To the extent the other allegations in Paragraph 5 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 5.

---

[2] For ease of reference, since the Complaint contains several numbered paragraphs with lettered subparagraphs, the Defendants' responses herein which are not preceded by a subparagraph letter refer to numbered allegations in the Complaint not preceded by a subparagraph letter.

6.      Defendants admit that Defendant Steve McCraw is the Director of the Texas Department of Public Safety ("DPS") and is sued in his official capacity, and that DPS issues some forms of photographic identification which Texas registered voters may use under SB 14 for in-person voting.   Defendants affirmatively allege that SB 14 also lists certain forms of federal identification as photographic identification that Texans may present to cast an in-person vote.

7.      Paragraph 7 contains legal conclusions.   Defendants deny that Paragraph 7 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 7 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 7.

8.      Paragraph 8 contains legal conclusions.   Defendants deny that Paragraph 8 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 8 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 8.

9.      Defendants admit that a "voter registration certificate…includes identifying information about the voter, including the voter's name, address, and birthdate."   The other allegations in Paragraph 9 contain legal conclusions. Defendants deny that the remainder of Paragraph 9 of the Complaint contains factual allegations to which a responsive pleading is required.   To the extent that the remainder of Paragraph 8 misstates the law or contains factual allegations to

which a responsive pleading is required, Defendants deny the remainder of the allegations in Paragraph 9.

10.     Paragraph 10 contains legal conclusions.   Defendants deny that Paragraph 10 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 10 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph10.

11.     Paragraph 11 contains legal conclusions.   Defendants deny that Paragraph 11 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 11 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph11.   Defendants affirmatively allege that under the procedures adopted by the state of Texas pursuant to the federal Help America Vote Act of 2002 ("HAVA"), under the law in force when SB 14 was enacted, each person voting absentee by mail, if it was his/her first time voting, had to include, with a returned ballot, a copy of a form of photographic identification listed in Tex. Election Code § 63.0101 as it then stood, to the extent the voter did not provide a driver's license or Social Security number on his/her voter registration form, unless the individual is disabled, in the military, or living overseas.

12.     Paragraph 12 contains legal conclusions.   Defendants deny that Paragraph 12 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 12 misstates the law or contains

factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 12.

13.     Defendant admits that SB 14 was enacted in 2011.  The remainder of Paragraph 13 contains legal conclusions.  Defendants deny that the remainder of Paragraph 13 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that the remainder of Paragraph 13 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the remainder of the allegations in Paragraph 13.  Defendants affirmatively allege that SB 14 provides for the presentation of seven, not six forms of identification, for in-person voting, subject to the exceptions as enumerated in the statute, and that SB 14 allows voters without these forms of identification may cast provisional ballots if they sign an affidavit described in Texas Election Code § 63.011.  Defendants further affirmatively allege that under the procedures adopted by the state of Texas pursuant to HAVA, each person voting absentee by mail, if it is his/her first time voting, has to include, with a returned ballot, a copy of a form of photographic identification listed in Tex. Election Code § 63.0101, as amended by SB 14, to the extent the voter did not provide a driver's license or Social Security number on his/her voter registration form, unless the individual is disabled, in the military, or living overseas.

14.     Paragraph 14 contains legal conclusions.  Defendants deny that Paragraph 14 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 14 misstates the law or contains

factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 14.

15.     Defendants deny the allegations in the last sentence of Paragraph 15, to the extent it assumes there are "costs" in obtaining documents which need to be presented to get an EIC.  Defendants affirmatively allege that EICs are free of charge.  Additionally, a birth certificate, which can be used to obtain an EIC, is originally issued free of charge.   As other examples, Social Security Cards, Medicaid Cards, and school records do not cost money to obtain and are additional supporting documentation that can be used to obtain an EIC.  Defendants further affirmatively allege that originals of birth certificates are free and a certified copy costs $2 or $3 if the purpose of obtaining the certified copy of the birth certificate is to acquire an EIC.  *See* 25 T.A.C. § 181.22(t).   The remainder of Paragraph 15 contains legal conclusions.   Defendants deny that the remainder of Paragraph 15 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that the remainder of Paragraph 15 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in the remainder of Paragraph 15.

16.     Paragraph 16 contains legal conclusions.   Defendants deny that Paragraph 16 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 16 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 16.

a. Paragraph 16(a) contains legal conclusions. Defendants deny that Paragraph 16(a) of the Complaint contains factual allegations to which a responsive pleading is required. To the extent that Paragraph 16(a) misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 16(a).

b. Paragraph 16(b) contains legal conclusions. Defendants deny that Paragraph 16(b) of the Complaint contains factual allegations to which a responsive pleading is required. To the extent that Paragraph 16(b) misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 16(b).

c. Paragraph 16(c) contains legal conclusions. Defendants deny that Paragraph 16(c) of the Complaint contains factual allegations to which a responsive pleading is required. To the extent that Paragraph 16 (c) misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 16 (c).

17. Paragraph 17 contains legal conclusions. Defendants deny that the allegations contained in Paragraph 17 are factual allegations to which a responsive pleading is required. To the extent Paragraph 17 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the

allegations in Paragraph 17. Defendants affirmatively allege that SB 14 provides for the presentation of seven, not six forms of identification, for in-person voting, subject to the exceptions as enumerated in the statute. Defendants affirmatively allege that pursuant to 1 T.A.C. § 81.71, "[i]f the voter casts a provisional ballot due to a determination by the election worker that the name on the presented ID document was not substantially similar to the name on the official list of registered voters, or the voter's identity cannot be verified from the provided identification, the voter is eligible to submit official documentation to the voter registrar to verify their identity," which includes "(1) a marriage license; (2) a court order reflecting change of name; (3) a letter from a licensed physician; or (4) affidavit stating that the person is the same person named in the identification provided."

18.     Paragraph 18 contains legal conclusions. Defendants deny that the allegations contained in Paragraph 18 are factual allegations to which a responsive pleading is required. To the extent Paragraph 18 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 18. Defendants affirmatively allege that pursuant to 1 T.A.C. § 81.71, "[i]f the voter casts a provisional ballot due to a determination by the election worker that the name on the presented ID document was not substantially similar to the name on the official list of registered voters, or the voter's identity cannot be verified from the provided identification, the voter is eligible to submit official documentation to the voter registrar to verify their identity," which includes "(1) a marriage license; (2) a court order reflecting change of name; (3) a letter from

a licensed physician; or (4) affidavit stating that the person is the same person named in the identification provided."  Defendants affirmatively allege that 1 TAC § 81.71 sets out standards to guide the election officers in making any "assessments" as to whether a name is "substantially similar," and individuals working the polls are also trained in the standards required to make the decisions.   Defendants specifically deny that the voter's ballot will be counted only if the voter subsequently presents one of the forms of photo identification required by SB 14 to the registrar within six days after the election and the registrar concludes that the names are "substantially similar"; the voter could subsequently present identification under a different name which matches the name on the registration list, or follow an alternative procedure as provided for in 1 TAC § 81.71, or, if the voter qualifies under one of the exceptions to the photographic identification requirement, as enumerated in SB 14.

19.    Paragraph 19 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 19 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 19 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 19.

20.    Paragraph 20 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 20 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 20 misstates the law or contains

factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 20.

21.     Defendants admit that Texas filed suit for judicial preclearance of SB 14 in the D.C. Court in January 2012.  The remainder of Paragraph 21 contains legal conclusions.  Defendants deny that the other allegations in Paragraph 21 contain factual allegations to which a responsive pleading is required, but, to the extent that the other allegations in Paragraph 21 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 21.

22.     Defendants admit that the D.C. court issued an order in August 2012. Defendants deny that the other allegations contained in Paragraph 22 are factual allegations to which a responsive pleading is required, as *Texas v. Holder*, 888 F. Supp. 2d 113, 138 (D.D.C. 2012) ("*Texas v. Holder*") speaks for itself.  To the extent that the other allegations in Paragraph 22 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 22.   Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

23.     Defendants deny that the allegations contained in Paragraph 23 are factual allegations to which a responsive pleading is required, as *Texas v. Holder*,

888 F. Supp. 2d 113, 138 (D.D.C. 2012) ("*Texas v. Holder*") speaks for itself.  To the extent that the allegations in Paragraph 23 misstate the law or are factual allegations to which a responsive pleading is required, Defendants the other allegations in Paragraph 23.   Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

24.     Defendants admit that the Supreme Court issued an order on June 25, 2013.  The other allegations in Paragraph 24 contain legal conclusions.  Defendants deny that the other allegations in Paragraph 24 are factual allegations to which a responsive pleading is required, as the Supreme Court's decision in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013) ("*Shelby County*") speaks for itself.   To the extent that the other allegations in Paragraph 24 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 24.

25.     Defendants admit the allegations in Paragraph 25.

26.     Defendants deny the allegations in Paragraph 26.

27.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 27.

28.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 28.

29.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 29.

30.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 30.

31.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 31.

32.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 32.

33.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 33.

34.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 34.

35.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 35.

36.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 36.

37.     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 37.

38.     Defendants deny the allegations in Paragraph 38.

39.     Defendants deny the allegations in Paragraph 39.

40.     Defendants deny the allegations in Paragraph 40.

41.     Defendants deny the allegations in Paragraph 41.

42.     Defendants deny the allegations in Paragraph 42.

43.     Defendants deny the allegations in Paragraph 43.

44.     Defendants lack knowledge or information sufficient to form a belief as to whether "Latino and African-American citizens disproportionately have a low socioeconomic status compared to white citizens", and deny the allegations in Paragraph 44 in all other respects.

45.     Defendants deny the allegations contained in Paragraph 45.

    a.  Defendants deny the allegations in Paragraph 45(a).  Defendants affirmatively allege that EICs are free of charge.  Additionally, a birth certificate, which can be used to obtain an EIC, is originally issued free of charge.   As other examples, Social Security Cards, Medicaid Cards, and school records do not cost money to obtain and are additional supporting documentation that can be used to obtain an EIC. Defendants further affirmatively allege that originals of birth certificates are free and a certified copy costs $2 or $3 if the purpose of obtaining the certified copy of the birth certificate is to acquire an EIC. *See* 25 T.A.C. § 181.22(t).

    b.  Defendants deny the allegations in Paragraph 45(b).  Defendants affirmatively allege that individuals seeking EICs may go to mobile or county-based EIC units to obtain an EIC.  Defendants further affirmatively allege that such mobile or county-based EIC units have been provided to counties or areas which have been identified as

having large rural populations and/or which may contain a concentration of registered voters whose names may not match names in the DPS database of individuals who have a driver's license or an identification certificate (otherwise known as a card), and/or which have requested the presence of a mobile EIC unit, since October 2013. Defendants affirmatively allege that EICs have been made available later than 6 p.m. and on Saturdays.

c. Defendants deny the part of the allegations in Paragraph 45(c) concerning what "many Texans" are "likely to have" to do. The other allegations in Paragraph 45(c) contain legal conclusions. Defendants deny that the other allegations in Paragraph 45(c) are factual allegations to which a responsive pleading is required, as the Supreme Court's decision in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013) ("*Shelby County*") speaks for itself. To the extent that the other allegations in Paragraph 45(c) misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 45(c).

46. Defendants admit that Texas election officials have publicized the photo identification requirements of SB 14, but deny the other allegations in Paragraph 46.

47. Defendants deny the allegations in Paragraph 47.

48. Defendants deny the allegations in Paragraph 48.

49.    Defendants deny the allegations in Paragraph 49.

50.    Paragraph 50 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 50 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 50 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 50.

51.    Paragraph 51 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 51 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 51 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 51.

52.    Defendants deny the allegations in Paragraph 52.

53.    Defendants deny the allegations in Paragraph 53.

54.    Defendants deny the allegations in Paragraph 54.

55.    Defendants deny the allegations in Paragraph 55.

56.    Defendants deny the allegations in Paragraph 56.

57.    Defendants deny the allegations in Paragraph 57.

58.    Defendants deny the allegations in Paragraph 58.

59.    Defendants deny the allegations in Paragraph 59.

60.    Defendants deny the allegations in Paragraph 60.

61.    Defendants deny the allegations in Paragraph 61.

62.    Defendants deny the allegations in Paragraph 62.

63.     Defendants deny the allegations in Paragraph 63.

64.     Defendants deny the allegations in Paragraph 64.

65.     Defendants deny the allegations in Paragraph 65.

66.     Defendants deny the allegations in Paragraph 66.   Defendants affirmatively allege that 15 amendments to SB 14 were adopted, at least ten of which were authored by members of a race or language minority group.

67.     Defendants deny the allegations in Paragraph 67.

68.     Defendants admit that Governor Perry signed SB 14 on May 27, 2011, but lack knowledge or information sufficient to form a belief as to the other allegations in Paragraph 68.

69.     Defendants deny the allegations in Paragraph 69.

70.     Defendants deny the allegations in Paragraph 70.

71.     Defendants deny the allegations in Paragraph 71.

72.     Defendants deny the allegations in Paragraph 72.   Defendants affirmatively allege that, for example, if a form of acceptable Military Identification under SB 14, a Department of Defense Common Access Card, has a "blue bar", indicating the individual is not a U.S. citizen, the training materials provided to election workers alert the worker that the individual may not be eligible for voting.

73.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 73, as Defendants do not know to which "press release" Plaintiffs are referring.

74.     Defendants deny the allegations in Paragraph 74.

75.     Defendants deny the allegations in Paragraph 75.

76.     Defendants admit that in-person voter impersonation includes a situation where an individual might seek to vote on Election Day or in early voting by falsely identifying herself or himself to the election officials as another individual who is registered to vote, and deny Paragraph 76 in all other respects.

77.     Defendants deny the allegations in the first sentence of Paragraph 77. Defendants lack knowledge or information sufficient to form a belief as to the other allegations in Paragraph 77.

78.     Defendants re-allege and incorporate by reference each and every response to the allegations contained in the preceding paragraphs as if set forth fully herein.

79.     Paragraph 79 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 79 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 79 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 79.

80.     Defendants deny the allegations in Paragraph 80.

81.     Paragraph 81 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 81 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 81 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 81.

82.     Defendants re-allege and incorporate by reference each and every answer to the allegations contained in the preceding paragraphs as if set forth fully herein.

83.     Paragraph 83 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 83 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 83 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 83.

84.     Paragraph 84 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 84 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 84 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 84.

85.     Defendants deny the allegations in the first sentence of Paragraph 85. The remainder of Paragraph 85 contains legal conclusions.  Defendants deny that the remaining allegations in Paragraph 85 are factual allegations to which a responsive pleading is required.  To the extent that the remainder of the allegations in Paragraph 85 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the remainder of the allegations in Paragraph 85.

86.     Paragraph 86 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 86 are factual allegations to which a responsive

pleading is required.  To the extent Paragraph 86 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 86.

87.    Defendants re-allege and incorporate by reference each and every answer to the allegations contained in the preceding paragraphs as if set forth fully herein.

88.    Defendants deny the allegations in Paragraph 88.

## AFFIRMATIVE ALLEGATIONS AND DEFENSES

1.    Bail-in under Section 3(c) of the Voting Rights Act is an equitable remedy.  It would be both inequitable and unconstitutional to bail-in Texas because the enforcement regime underlying the plaintiffs' claims in this case relies on a history of partisan behavior by DOJ's Voting Section.  The constitutionality of the preclearance regime depends on a Justice Department that enforces the Voting Rights Act in a non-partisan manner that complies with the 14th Amendment's mandate of equal protection.  Imposing bail-in here would not be constitutional.

**The United States Department of Justice's Unconstitutional and Partisan Enforcement of the Voting Rights Act**

2.    The Voting Section, Civil Rights Division of the Department of Justice has a long-standing history of partisan enforcement of the Voting Rights Act.

3.    The Department has advanced unconstitutional interpretations of the Voting Rights Act on multiple occasions over the last 20 years.

4.     The purpose and effect of these interpretations was partisan political gain and/or to require race conscious state action in violation of the 14th and 15th Amendments to the United States Constitution.

5.     During the 1990s, the Department used its preclearance enforcement powers under Section 5 of the Voting Rights Act to require states to racially gerrymander their redistricting plans to maximize the number of African-American elected officials. Such unequal enforcement of the Voting Rights Act runs afoul of the 14th Amendment because it elevates the rights and interests of a single racial group above those of other racial groups including Hispanics, Asians and Anglos.

6.     In *Miller v. Johnson*, 515 U.S. 900, 906-09 (1995), the Department repeatedly refused to preclear Georgia's decennial congressional redistricting plans until the state included an additional majority African-American district.

7.     The additional African-American district was challenged in court as a violation of the Fourteenth Amendment's equal protection mandate.  *Id.* at 909.

8.     The district court found that the "Justice Department had adopted a 'black maximization' policy under § 5" and determined that the additional African-American district was illegal.  *Id.* at 921.

9.      In reviewing the legality of Georgia's Eleventh Congressional District, the Supreme Court noted that "the Justice Department's implicit command that States engage in presumptively unconstitutional race-based districting brings the Voting Rights Act  . . .  into tension with the Fourteenth Amendment."  *Id.* at 927.

10.     In order to avoid the "troubling and difficult constitutional questions" raised by the Department's "black maximization" policy, the Supreme Court struck down Georgia's Eleventh Congressional District. *Id.*

11.     Even after the Supreme Court's admonishment in *Miller*, the Department of Justice has used its preclearance authority under the Voting Rights Act in constitutionally suspect ways, bringing further rebukes by the United States Supreme Court.

12.     In *Georgia v. Ashcroft*, the Department objected to Georgia's state senate redistricting plan.

13.     The Supreme Court rebuffed the Department's focus on a minority group's ability to elect a candidate of their choosing; that is, the Department's focus on guaranteeing electoral outcomes for a certain voters.

14.     In *Reno v. Bossier Parish School Board*, 538 U.S. 320 (2000), the Supreme Court rejected the Department's interpretation that Section 5 prohibits any discriminatory purpose. The Court found that such an interpretation raised serious concerns about Section 5's constitutionality.

**15.**     The Department has at times advised covered jurisdictions that compliance with Section 5 of the Voting Rights Act might be met by using non-partisan demographic statistics, rather than by guaranteeing election results.

16.     For instance, in 2001, the Department refused to preclear Texas' state House of Representatives map because "the number of districts in which the level of Spanish surnamed registration (SSRV) is more than 50 percent decreases by two as

compared to the benchmark." *See* Letter from Ralph F. Boyd, Jr., Assistant Attorney General, Civil Rights Division, United States Department of Justice, to The Hon. Geoffrey Connor, Acting Secretary of State, State of Texas (Nov. 16, 2001), *available at* http://www.justice.gov/crt/records/vot/obj_letters/letters/TX/l_011116.php.

17.    But by February 2011, the focus on guaranteeing electoral outcomes for a subset of voters had resurfaced. After the Texas Legislature had begun the process of redistricting, the Department released guidance instructing covered jurisdictions that the Section 5 inquiry "requires a functional analysis of the electoral behavior within the particular jurisdiction or election district." Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act, 76 Fed. Reg. 7470, 7471 (Feb. 9, 2011).

18.    The guidance did not, however, explain how covered jurisdictions should perform the election analysis.

19.    In reality, this functional analysis of electoral behavior was nothing more than a crude comparison of historical election results in the state's existing redistricting plan (the "benchmark") with reconstituted election results under the State's proposed plan.

20.    The Department's electoral analysis eschewed objective, easily ascertained demographic statistics in favor of manipulating district lines to guarantee the outcome of future elections. That interpretation re-raises the very

same constitutional concerns that animated the Supreme Court's decision in *Georgia v. Ashcroft*.

21.     The Department's focus on election results, rather than non-partisan demographic statistics, is also incongruent with the Supreme Court's jurisprudence under Section 2 of the Voting Rights Act.

22.     As *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986), acknowledges and *Bartlett v. Strickland*, 556 U.S. 1, 13-17 (2009), later emphasized, Section 2 only compels states to create majority-minority districts where, among other things, a minority group represents a numeric majority of the voting age population in a compact area.

23.     Rather than interpret Section 5's nearly identical language to require a similar focus on non-partisan demographic statistics, the Department has repeatedly turned a blind-eye to the Supreme Court decisions in *Gingles* and *Bartlett*.

24.     The Department similarly rejected the Supreme Court's determination that Section 2 never compels a state to draw "coalition" districts (that is a district in which two or more minority groups make up more than 50% of the voting age population), charging that Texas could be obligated under Section 5 to maintain or draw coalition districts.  *Bartlett*, 556 U.S. at 19.

**The Office of the Inspector General's Report Concerning the Partisan Operations of the Voting Section**

25.     In March 2013, the Department's own Office of the Inspector General released its report reviewing the operations of the Voting Section of the Civil Rights Division.

26.     The report details a number of disturbing findings that raise serious questions regarding the motivations behind enforcement decisions made by the Voting Section and suggest that the Voting Section does not enforce the Voting Rights Act in a race-neutral fashion.

27.     According to the report, multiple Voting Section career staff "told the OIG that they believed that the reason the voting-rights laws were enacted was to protect historic victims of discrimination and therefore the Section should prioritize its resources accordingly." Oversight and Review Division, Office of the Inspector General, U.S. Department of Justice, *A Review of the Operations of the Voting Section of the Civil Rights Division* 44 (March 2013), *available at* http://www.justice.gov/oig/reports/2013/s1303.pdf. A copy of the report is attached hereto as Exhibit A.

28.     Some of these individuals, including a manager at the time, told OIG that they believed the Voting Section should only pursue cases on behalf of traditional racial minorities. *Id.* This sort of race-conscious enforcement of the Voting Rights Act conflicts with the Fourteenth Amendment's equal protection mandate.

29.   The Report also disclosed that OIG uncovered emails detailing "widespread and vehement opposition among career employees" to at least one enforcement action simply because the defendants were African-American. *Id.*

30.   Voting Section staff that held different ideologically opposed views were sometimes criticized. *Id.* at 253.

31.   Emails reviewed by OIG revealed that staff members made derisive comments regarding another attorney for participating in an enforcement action filed against African-Americans. *Id.* at 123-24.

32.   One such email referred to the attorney as a "klansman." *Id.* at 123.

33.   Staff members also complained about election monitors being sent to investigate allegations that African-American political leaders were perpetrating absentee ballot fraud. *Id.* at 124-25.

34.   An internal memorandum revealed that staff members were not opposed based upon the weakness of the allegations, but rather because "such an investigation would take the Voting Section away from its traditional right-to-vote and access-to-the-polls focus" and that the investigation "would undermine the willingness of members of the Black community to cooperate with the Voting Section." *Id.* at 124.

35.   The OIG Report also examined the Voting Section's hiring practices in 2010 and found several suspicious practices that appear to have been used to ensure hires with liberal/Democratic backgrounds. *Id.* at 194 -222.

36.    The Report also stated that "the investigation identified several hiring practices that [OIG] believe[d] increased the risk of violating merit system principles and creating perceptions that the Voting Section engaged in prohibited personnel practices, including use of a general civil rights/public interest criterion." *Id.* at 220.

37.    The Report found that "the primary criterion used by the Voting Section hiring committee . . . resulted in a pool of select candidates that was overwhelmingly Democratic/liberal in affiliation." *Id.* at 222.

38.    Once such criterion was the applicants' civil rights "commitment." *Id.* at 218.

39.    OIG found that this "creates the possible appearance that [the Voting Section] is searching for applicants who share political or ideological views common in the liberal civil rights community" and that "[t]his perception is compounded by the fact that the 'commitment' that passes muster often is demonstrated through work with a small number of influential civil rights organizations." *Id.*

40.    The Report further found that "[i]f the Voting Section in fact prefers candidates with experience working with disenfranchised communities, for example, it should establish such work as one of its hiring criteria rather than subsuming it into a broad experience criterion that readily can be manipulated to assess one's commitment to political or ideological objectives and that adds marginal value to the hiring process." *Id.* at 220.

41.     The OIG Report also found that "the Voting Section passed over candidates who had stellar academic credentials and litigation experience with some of the best law firms in the country, as well as with the Department." *Id.*

42.     Finally, the OIG report detailed inconsistent explanations for a list that appeared to be prepared "in part" for recruiting purposes.  *Id.* at 218.

43.     The Report said the list was "troubling because it appeared the list was prepared in part for recruiting purposes, . . . people widely perceived to be conservatives were omitted from it, and staff in the Voting Section failed to provide a consistent explanation as to why that was the case." *Id.*

## The Department of Justice's Partisan Enforcement of the Voting Rights Act With Respect to Voter ID Laws.

44.     The Voting Section's internal dysfunction, partisan hiring practices and politically charged work environment have translated into the unequal and partisan enforcement of the Voting Rights Act with respect to Voter ID laws generally and with respect to S.B. 14 specifically.

45.     The Voting Section repeatedly delayed the preclearance of SB 14.

46.     Although the Attorney General is required by statute to rule on a preclearance submission with 60 days, instead it waited a full 60 days to request additional information.

47.     DOJ did not issue a decision on Texas' request until March 12, 2012, and cited as one basis for its objection the fact that the State "did not include evidence of significant in-person voter impersonation not already address by the state's existing laws"—something the Department never asked for.

48.     The Department's delay in issuing a preclearance ruling ultimately required the State to seek preclearance in the U.S. District Court for the District of Columbia if it had any hopes of implementing its law before the next statewide election date.

49.     Once in litigation, the Department refused to make available the federal databases to Texas—and even its own expert—which prevented Texas from properly addressing the same ID disparity theory that the Department rehashes in its complaint in this case.

50.     Texas was forced to either fight for access to the federal database or lose any hope of implementing its law in the next statewide election.

51.     Because Texas had the burden of proof in the preclearance lawsuit, the Department's litigation tactics ultimately worked to further block Texas' Voter ID law.

52.     Sixteen states have enacted photo-voter identification laws.  Wendy Underhill, Voter Identification Requirements:  Voter ID Laws, *National Conference of State Legislatures* (June 25, 2014), http://www.ncsl.org/research/elections-and-campaigns/voter-id.aspx#map.

53.     DOJ has not used Section 2 to challenge similar Voter ID laws enacted by Indiana, Georgia, Tennessee, Wisconsin, Ohio, Alabama, Arkansas, Alaska, Kansas, Mississippi, or South Carolina.

54.     DOJ's decision to target only southern, Republican-led states that were previously covered by Section 5's preclearance regime provides clear evidence of the partisan and uneven enforcement now typical of the Voting Section.

55.     Texas is the only state that DOJ alleges has purposely discriminated against minorities when enacting its Voter ID law.

56.     DOJ's discovery inquiries in this case also evidence partisan motivations for this lawsuit.

57.     DOJ has issued dozens of subpoenas to state legislators requesting campaign materials that have nothing to do with Voter ID and that, in some cases, were created long after Voter ID was enacted. This Court correctly rebuffed such requests.

58.     █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

## **PRAYER FOR RELIEF**

Defendants pray that the Court issue a take-nothing judgment in favor of Defendants and against Plaintiffs and in issue an order denying Plaintiffs all relief sought.

Dated: July 18, 2014

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General
Southern District of Texas No. 1160600

*/s/ John B. Scott*
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
Southern District of Texas No. 10418
Texas State Bar No. 17901500
ATTORNEY-IN-CHARGE

G. DAVID WHITLEY
Assistant Deputy Attorney General
Southern District of Texas No. 2080496

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

JENNIFER MARIE ROSCETTI
Assistant Attorney General
Southern District of Texas No. 224780

LINDSEY ELIZABETH WOLF
Assistant Attorney General
Southern District of Texas No. 2292940

FRANCES WHITNEY DEASON
Assistant Attorney General
Southern District of Texas No. 2302872

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

BEN A. DONNELL
Donnell, Abernethy & Kieschnick
555 N. Carancahua, Suite 1770
Corpus Christi, Texas 78401-0853
Southern District of Texas No. 5689

COUNSEL FOR THE STATE OF TEXAS,
RICK PERRY, JOHN STEEN, and STEVE
MCCRAW

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2014, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


<u>*/s/ John B. Scott*</u>
JOHN B. SCOTT