**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MARC VEASEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| RICK PERRY, *et al*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' CORRECTED ANSWER TO THE TEXAS LEAGUE OF
YOUNG VOTERS EDUCATION FUND AND IMANI CLARK'S AMENDED
<u>COMPLAINT IN INTERVENTION</u>**

Defendants the State of Texas, John Steen, Nandita Berry,[1] and Steve McCraw (collectively "<u>Defendants</u>") file this Corrected Answer to the Amended Complaint in Intervention of Plaintiff-Intervenors The Texas League of Young Voters Education Fund and Imani Clark, (collectively, "<u>TLYVEF</u>") (the "<u>Complaint</u>")[2]:

1.      Paragraph 1 contains legal conclusions.  Defendants deny that Paragraph 1 contains factual allegations to which a responsive pleading is required. To the extent that Paragraph 1 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 1. Defendants deny the merits of the TLYVEF's suit.

---

[1] The Complaint names John Steen as the Texas Secretary of State but he is no longer Secretary of State; Nandita Berry is now the Texas Secretary of State.
[2] Original Plaintiffs Aurica Washington, Crystal Owens, and Michelle Bessiake have withdrawn from this action with prejudice.  (Docket Nos. 237, 338.)

2.      Paragraph 2 contains legal conclusions.   Defendants deny that Paragraph 2 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 2 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 2.

3.      Paragraph 3 contains legal conclusions.   Defendants deny that Paragraph 3 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 3 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 3.

4.      Paragraph 4 contains legal conclusions.   Defendants deny that Paragraph 3 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 4 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 4.

5.      Paragraph 5 contains legal conclusions.   Defendants deny that Paragraph 5 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 5 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 5.

6.      Paragraph 6 contains legal conclusions.   Defendants deny that Paragraph 6 of the Complaint contains factual allegations to which a responsive

pleading is required.  To the extent that Paragraph 6 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 6.

7. Defendants admit that the United States of America is a Plaintiff in this action.

8. Defendants lack knowledge or information sufficient to form a belief regarding whether Ms. Clark is a citizen of the United States and a resident of Texas.  The other allegations in Paragraph 8 contain legal conclusions.  Defendants deny that the other allegations in Paragraph 8 are factual allegations to which a responsive pleading is required, but, to the extent that the other allegations in Paragraph 8 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 8.

9. Defendants lack knowledge or information sufficient to form a belief regarding the other allegations in Paragraph 9.

10. Defendants deny that acquiring the forms of photographic identification specified by SB 14 would be unduly burdensome for Ms. Clark, and lack knowledge or information sufficient to form a belief regarding the other allegations in Paragraph 10.

11. Defendants lack knowledge or information sufficient to form a belief regarding the allegations in Paragraph 11.

12. Defendants deny the allegations contained in Paragraph 12.

13.     Defendants lack knowledge or information sufficient to form a belief regarding whether Ms. Washington is a citizen of the United States and a resident of Texas.  Defendants deny that the other allegations in Paragraph 13 are factual allegations to which a responsive pleading is required, but, to the extent that Paragraph 13 misstates the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 13. Defendants affirmatively allege that Ms. Washington has withdrawn from this action with prejudice.

14.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 14.  Defendants affirmatively allege that Ms. Washington has withdrawn from this action with prejudice.

15.     Defendants deny that acquiring the forms of photographic identification specified by SB 14 would be "unduly burdensome" for Ms. Washington, and lack knowledge or information sufficient to form a belief regarding the other allegations in Paragraph 15. Defendants affirmatively allege that Ms. Washington has withdrawn from this action with prejudice.

16.     Defendants lack knowledge or information sufficient to form a belief regarding the allegations in Paragraph 16. Defendants affirmatively allege that Ms. Washington has withdrawn from this action with prejudice.

17.     Defendants deny the allegations in Paragraph 17.

18.     Defendants lack knowledge or information sufficient to form a belief regarding whether Ms. Owens is a citizen of the United States and a resident of

Texas. Defendants deny that the other allegations in Paragraph 18 are factual allegations to which a responsive pleading is required, but, to the extent that the allegations in Paragraph 18 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 18. Defendants affirmatively allege that Ms. Owens has withdrawn from this action with prejudice.

19.   Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 19. Defendants affirmatively allege that Ms. Owens has withdrawn from this action with prejudice.

20.   Defendants deny that acquiring the forms of photographic identification specified by SB 14 would be "unduly burdensome" for Ms. Owens, and lack knowledge or information sufficient to form a belief regarding the other allegations in Paragraph 20. Defendants affirmatively allege that Ms. Owens has withdrawn from this action with prejudice.

21.   Defendants lack knowledge or information sufficient to form a belief regarding the allegations in Paragraph 21. Defendants affirmatively allege that Ms. Owens has withdrawn from this action with prejudice.

22.   Defendants deny the allegations in Paragraph 22.

23.   Defendants lack knowledge or information sufficient to form a belief regarding whether Ms. Bessiake is a citizen of the United States and a resident of Texas. Defendants deny that the other allegations in Paragraph 23 are factual allegations to which a responsive pleading is required, but, to the extent that the

other allegations in Paragraph 23 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 23. Defendants affirmatively allege that Ms. Bessiake has withdrawn from this action with prejudice.

24.    Defendants lack knowledge or information sufficient to form a belief as to the other allegations in Paragraph 24.  Defendants affirmatively allege that Ms. Bessiake has withdrawn from this action with prejudice.

25.    Defendants deny that acquiring the forms of photographic identification specified by SB 14 would be "unduly burdensome" for Ms. Bessiake, and lack knowledge or information sufficient to form a belief regarding the other allegations in Paragraph 25. Defendants affirmatively allege that Ms. Bessiake has withdrawn from this action with prejudice.

26.    Defendants lack knowledge or information sufficient to form a belief regarding the allegations in Paragraph 26. Defendants affirmatively allege that Ms. Bessiake has withdrawn from this action with prejudice.

27.    Defendants deny the allegations in Paragraph 27.

28.    Defendants lack knowledge or information sufficient to form a belief regarding the allegations in Paragraph 28.

29.    Defendants deny the allegations in Paragraph 29.

30.    Defendants deny the allegations in Paragraph 30.

31.    Defendants deny the allegations in Paragraph 31.

32.    Defendants deny the allegations in Paragraph 32.

33.     Paragraph 33 contains legal conclusions.   Defendants deny that the allegations in Paragraph 33 are factual allegations to which a responsive pleading is required, but, to the extent that the allegations in Paragraph 33 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 33.

34.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 34.

35.     Defendants deny the allegations in Paragraph 35.

36.     Defendants admit the allegations in Paragraph 36.

37.     Defendants admit that Mr. Steen was sued in his official capacity. Defendants deny Paragraph 15 in all other respects.   Defendants affirmatively allege that the current Secretary of State of Texas is Nandita Berry.

38.     Defendants admit the allegations in Paragraph 38.   Defendants affirmatively allege that SB 14 also lists certain forms of federal identification as photographic identification that Texans may present to cast an in-person vote.

39.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 39.

40.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 40.

41.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 41.

42.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 42.

43.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 43.

44.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 44.

45.     Defendants admit that SB 14 was passed, but deny Paragraph 45 in all other respects.

46.     Defendants deny the allegations in Paragraph 46.

47.     Paragraph 47 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 47 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 47 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 47.  Defendants affirmatively allege that SB 14 contains exceptions to the photographical identification requirement, as enumerated in the statute, and that SB 14 allows voters without these forms of identification to cast provisional ballots if they sign an affidavit described in Texas Election Code § 63.011.  Defendants further affirmatively allege that the Secretary of State has interpreted SB 14 by identifying certain documents which are acceptable forms of identification under SB 14, including, but not limited to, Naturalization Certificates, Passport Cards, and four specific forms of military identification.

48.     Defendants deny the allegations in Paragraph 48.

49.     Defendants deny the allegations in Paragraph 49.

50.     Defendants deny the allegations in Paragraph 50.

51.     Defendants deny the allegations in Paragraph 51.

52.     Defendants deny the allegations in Paragraph 52.

53.     Defendants admit that preventing voter fraud was a stated purpose of the law.   The other allegations in Paragraph 53 contain legal conclusions. Defendants deny that the other allegations contained in Paragraph 53 are factual allegations to which a responsive pleading is required.  To the extent that the other allegations in Paragraph 53 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 53.

54.     Defendants deny the allegations in Paragraph 54.

55.     Defendants lack knowledge or information sufficient to form a belief as to whether communities of color in Texas are disproportionately poor and disproportionately lack transportation.  Defendants deny Paragraph 55 in all other respects.

56.     Defendants deny the allegations in Paragraph 56.

57.     Defendants deny the allegations in Paragraph 57.

58.     Defendants deny the allegations in Paragraph 58.

59.     Defendants lack knowledge or information sufficient to form a belief as to whether Black voters in Texas are disproportionately poor and disproportionately lack transportation.  Defendants deny Paragraph 59 in all other respects.

60.     Defendants deny the allegations in Paragraph 60.   Defendants affirmatively allege that EICs are free of charge.   Additionally, a birth certificate, which can be used to obtain an EIC, is originally issued free of charge.    As other examples, Social Security Cards, Medicaid Cards, and school records do not cost money to obtain and are additional supporting documentation that can be used to obtain an EIC.   Defendants further affirmatively allege that originals of birth certificates are free and a certified copy costs $2 or $3 if the purpose of obtaining the certified copy of the birth certificate is to acquire an EIC.  *See* 25 T.A.C. § 181.22(t). Defendants affirmatively allege that individuals seeking EICs may go to mobile or county-based EIC units to obtain an EIC.   Defendants further affirmatively allege that such mobile or county-based EIC units have been provided to counties or areas which have been identified as having large rural populations and/or which may contain a concentration of registered voters whose names may not match names in the DPS database of individuals who have a driver's license or an identification certificate (otherwise known as a card), and/or which have requested the presence of a mobile EIC unit, since October 2013.

61.     Defendants deny the allegations in Paragraph 61.   Defendants affirmatively allege that individuals seeking EICs may go to mobile or county-based EIC units to obtain an EIC.   Defendants further affirmatively allege that such mobile or county-based EIC units have been provided to counties or areas which have been identified as having large rural populations and/or which may contain a concentration of registered voters whose names may not match names in the DPS

database of individuals who have a driver's license or an identification certificate (otherwise known as a card), and/or which have requested the presence of a mobile EIC unit, since October 2013.

62.     Defendants deny the allegations in Paragraph 62.   Defendants affirmatively allege that individuals seeking EICs may go to mobile or county-based EIC units to obtain an EIC.   Defendants further affirmatively allege that such mobile or county-based EIC units have been provided to counties or areas which have been identified as having large rural populations and/or which may contain a concentration of registered voters whose names may not match names in the DPS database of individuals who have a driver's license or an identification certificate (otherwise known as a card), and/or which have requested the presence of a mobile EIC unit, since October 2013.

63.     Defendants deny the allegations in Paragraph 63.   Defendants affirmatively allege that EICs have been made available later than 6 p.m. and on Saturdays.

64.     Defendants deny the allegations in Paragraph 64.

65.     Defendants deny the allegations in Paragraph 65.   Defendants affirmatively allege that EICs have been made available later than 6 p.m. and on Saturdays.

66.     Paragraph 66 contains legal conclusions.   Defendants deny that the allegations contained in Paragraph 66 are factual allegations to which a responsive pleading is required.   To the extent that the other allegations in Paragraph 66

misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 66.

67.     Paragraph 67 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 67 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 67 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 67.  Defendants affirmatively allege that pursuant to 1 T.A.C. § 81.71, "[i]f the voter casts a provisional ballot due to a determination by the election worker that the name on the presented ID document was not substantially similar to the name on the official list of registered voters, or the voter's identity cannot be verified from the provided identification, the voter is eligible to submit official documentation to the voter registrar to verify their identity," which includes "(1) a marriage license; (2) a court order reflecting change of name; (3) a letter from a licensed physician; or (4) affidavit stating that the person is the same person named in the identification provided."

68.     Defendants deny the allegations in Paragraph 68.

69.     Paragraph 69 contains legal conclusions.  Defendants deny that the allegations contained in Paragraph 69 are factual allegations to which a responsive pleading is required.  To the extent Paragraph 69 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 69.

70.     Defendants admit the allegations in Paragraph 70.

71.     Defendants admit that the United States Attorney General interposed an objection in 2012.  Defendants deny that the other allegations in Paragraph 71 contain factual allegations to which a responsive pleading is required, as the Letter from Thomas E. Perez speaks for itself, but, to the extent that the other allegations in Paragraph 71 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 71, and affirmatively assert that Defendants do not agree with the United States Attorney General's objection.

72.     Defendants admit that Texas filed suit for judicial preclearance of SB 14 in the D.C. Court in January 2012, but deny that when filed, Texas had "failed to receive administrative preclearance."  The remainder of Paragraph 72 contains legal conclusions.  Defendants deny that the other allegations in Paragraph 72 contain factual allegations to which a responsive pleading is required, but, to the extent that the other allegations in Paragraph 72 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 72.

73.     Defendants admit that the D.C. court issued an order in August 2012.  Defendants deny that the other allegations contained in Paragraph 73 are factual allegations to which a responsive pleading is required, as *Texas v. Holder*, 888 F. Supp. 2d 113, 138 (D.D.C. 2012) ("*Texas v. Holder*") speaks for itself.  To the extent that the other allegations in Paragraph 73 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other

allegations in Paragraph 73. Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

74.     Defendants deny that the allegations in Paragraph 74 are factual allegations to which a responsive pleading is required, as *Texas v. Holder* speaks for itself. To the extent that Paragraph 74 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 74. Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

75.     Defendants deny that the allegations in Paragraph 75 are factual allegations to which a responsive pleading is required, as *Texas v. Holder* speaks for itself. To the extent that Paragraph 75 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 75. Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed

for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

76.   Defendants deny that the allegations in Paragraph 76 are factual allegations to which a responsive pleading is required, as *Texas v. Holder* speaks for itself.   To the extent that the other allegations in Paragraph 76 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 76.   Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

77.   Defendants deny that the allegations in Paragraph 77 are factual allegations to which a responsive pleading is required, as *Texas v. Holder* speaks for itself.   To the extent that Paragraph 77 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 77.   Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

78.   Defendants deny that the allegations in Paragraph 78 are factual allegations to which a responsive pleading is required, as *Texas v. Holder* speaks for

itself.   To the extent that Paragraph 78 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 78.   Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

79.   Defendants deny that the allegations in Paragraph 79 are factual allegations to which a responsive pleading is required, as *Texas v. Holder* speaks for itself.   To the extent that the other allegations in Paragraph 79 misstate the law or contain factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 79.   Defendants affirmatively allege that the Court's decision in *Texas v. Holder* has no precedential or persuasive value here. Defendants specifically deny any allegations or implications that SB 14 was passed for the purpose of or has the effect of discriminating on the basis of race or membership in a language minority group as is alleged in the Complaint.

80.   Defendants admit that the Supreme Court issued an order on June 25, 2013.  The other allegations in Paragraph 80 contain legal conclusions.  Defendants deny that the other allegations in Paragraph 80 are factual allegations to which a responsive pleading is required, as the Supreme Court's decision in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013) ("*Shelby County*") speaks for itself.   To the extent that the other allegations in Paragraph 80 misstate the law or are factual

allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 59.

81.  The allegations in Paragraph 81 contain legal conclusions. .Defendants deny that the allegations in Paragraph 81 are factual allegations to which a responsive pleading is required, as the Supreme Court's decision in *Shelby County* speaks for itself.   To the extent that the allegations in Paragraph 81 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 81.

82.  Defendants admit the allegations in Paragraph 82 to the extent that it refers to the principle that duly enacted voting law changes carry the full force and effect of law where no preclearance requirement applies.

83.  Defendants admit the allegations in Paragraph 83.

84.  Defendants deny the allegations in Paragraph 84.

85.  Defendants deny the allegations in Paragraph 85.

86.  The allegations in Paragraph 86 contain legal conclusions. .Defendants deny that the allegations in Paragraph 86 are factual allegations to which a responsive pleading is required.   To the extent that the allegations in Paragraph 86 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 86.

87.  Defendants deny the allegations in Paragraph 87.

88.  Defendants deny the allegations in Paragraph 88.

89.     Paragraph 89 contains legal conclusions.    Defendants deny that Paragraph 89 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 89 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 89.

90.     Paragraph 90 contains legal conclusions.    Defendants deny that Paragraph 90 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 90 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 90.

91.     Paragraph 91 contains legal conclusions.    Defendants deny that Paragraph 91 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 91 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 91.

92.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 92.

93.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 93.

94.     Paragraph 94 contains legal conclusions.    Defendants deny that Paragraph 94 of the Complaint contains factual allegations to which a responsive pleading is required.  To the extent that Paragraph 94 misstates the law or contains

factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 94.

95.    Defendants deny the allegations in Paragraph 95.

96.    Defendants deny that the allegations in Paragraph 96 are factual allegations to which a responsive pleading is required, as the Letter from Thomas E. Perez speaks for itself, but, to the extent that Paragraph 96 misstates the law or contains factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 96.

97.    Defendants deny that the allegations contained in Paragraph 97 are factual allegations to which a responsive pleading is required, as *Perez v. Perry*, No. 5:11-cv-360, Doc. 690 at 6 (W.D. Tex. Mar. 19, 2012) ("*Perez v. Perry*") speaks for itself.  To the extent that the other allegations in Paragraph 97 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 97.   Defendants affirmatively allege that the Court's decision in *Perez v. Perry* has no precedential or persuasive value here.

98.    Defendants deny that the allegations contained in Paragraph 98 are factual allegations to which a responsive pleading is required, as *Texas v. United States*, 887 F. Supp. 2d 133, 161 n. 31 (D.D.C. 2012) ("*Texas v. United States*") speaks for itself.  To the extent that the allegations in Paragraph 98 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 98.  Defendants affirmatively

allege that the Court's decision in *Texas v. United States* has no precedential or persuasive value here.

99.    Defendants deny that the allegations contained in Paragraph 99 are factual allegations to which a responsive pleading is required, as *Texas v. United States* speaks for itself.  To the extent that the allegations in Paragraph 99 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the other allegations in Paragraph 99.  Defendants affirmatively allege that the Court's decision in *Texas v. United States* has no precedential or persuasive value here.

100.    Defendants deny the allegations in Paragraph 100.

101.    Defendants deny the allegations in Paragraph 101.

102.    Defendants deny the allegations in Paragraph 102.

103.    Defendants deny the allegations in Paragraph 103.

104.    Defendants deny the allegations in Paragraph 104.

105.    Defendants deny the allegations in Paragraph 105.

106.    Defendants reallege and incorporate their responses set forth above.

107.    Paragraph 107 contains legal conclusions.  Defendants deny that the allegations in Paragraph 107 are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 80 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 107.

108.    Paragraph 108 contains legal conclusions.  Defendants deny that the allegations in Paragraph 108 are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 108 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 108.

109.    Defendants deny the allegations in Paragraph 109.

110.    Defendants deny the allegations in Paragraph 110, including each of the allegations in subparagraphs (1) through (14).

111.    Defendants reallege and incorporate their responses above.

112.    Paragraph 112 contains legal conclusions.  Defendants deny that the allegations in Paragraph 112 are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 86 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 112.

113.    Defendants deny the allegations in Paragraph 113.

114.    Defendants reallege and incorporate their responses set forth above.

115.    Paragraph 115 contains legal conclusions.  Defendants deny that the allegations in Paragraph 115 are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 115 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 115.

116.    Defendants deny the allegations in Paragraph 116.

117.    Defendants reallege and incorporate their responses set forth above.

118.    Paragraph 118 contains legal conclusions.  Defendants deny that the allegations in Paragraph 118 are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 118 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 118.

119.    Paragraph 119 contains legal conclusions.  Defendants deny that the allegations in Paragraph 119 are factual allegations to which a responsive pleading is required.  To the extent that the allegations in Paragraph 119 misstate the law or are factual allegations to which a responsive pleading is required, Defendants deny the allegations in Paragraph 119.

120.    Defendants deny the allegations in Paragraph 120.

121.    Defendants deny the allegations in Paragraph 121.

122.    Defendants deny the allegations in Paragraph 122.

123.    Defendants deny the allegations in Paragraph 123.

124.    Defendants admit that a stated purpose of SB 14 was to protect against voter fraud, and deny the remainder of the allegations in Paragraph 124.

125.    Defendants deny the allegations in Paragraph 125.

## AFFIRMATIVE ALLEGATIONS AND DEFENSES

1.    Bail-in under Section 3(c) of the Voting Rights Act is an equitable remedy.  It would be both inequitable and unconstitutional to bail-in Texas because the enforcement regime underlying the plaintiffs' claims in this case relies on a

history of partisan behavior by DOJ's Voting Section.  The constitutionality of the preclearance regime depends on a Justice Department that enforces the Voting Rights Act in a non-partisan manner that complies with the 14th Amendment's mandate of equal protection.  Imposing bail-in here would not be constitutional.

## The United States Department of Justice's Unconstitutional and Partisan Enforcement of the Voting Rights Act

2.     The Voting Section, Civil Rights Division of the Department of Justice has a long-standing history of partisan enforcement of the Voting Rights Act.

3.     The Department has advanced unconstitutional interpretations of the Voting Rights Act on multiple occasions over the last 20 years.

4.     The purpose and effect of these interpretations was partisan political gain and/or to require race conscious state action in violation of the 14th and 15th Amendments to the United States Constitution.

5.     During the 1990s, the Department used its preclearance enforcement powers under Section 5 of the Voting Rights Act to require states to racially gerrymander their redistricting plans to maximize the number of African-American elected officials. Such unequal enforcement of the Voting Rights Act runs afoul of the 14th Amendment because it elevates the rights and interests of a single racial group above those of other racial groups including Hispanics, Asians and Anglos.

6.     In *Miller v. Johnson*, 515 U.S. 900, 906-09 (1995), the Department repeatedly refused to preclear Georgia's decennial congressional redistricting plans until the state included an additional majority African-American district.

7.     The additional African-American district was challenged in court as a violation of the Fourteenth Amendment's equal protection mandate.  *Id.* at 909.

8.     The district court found that the "Justice Department had adopted a 'black maximization' policy under § 5" and determined that the additional African-American district was illegal.  *Id.* at 921.

9.     In reviewing the legality of Georgia's Eleventh Congressional District, the Supreme Court noted that "the Justice Department's implicit command that States engage in presumptively unconstitutional race-based districting brings the Voting Rights Act . . . into tension with the Fourteenth Amendment."  *Id.* at 927.

10.    In order to avoid the "troubling and difficult constitutional questions" raised by the Department's "black maximization" policy, the Supreme Court struck down Georgia's Eleventh Congressional District. *Id.*

11.    Even after the Supreme Court's admonishment in *Miller*, the Department of Justice has used its preclearance authority under the Voting Rights Act in constitutionally suspect ways, bringing further rebukes by the United States Supreme Court.

12.    In *Georgia v. Ashcroft*, the Department objected to Georgia's state senate redistricting plan.

13.    The Supreme Court rebuffed the Department's focus on a minority group's ability to elect a candidate of their choosing; that is, the Department's focus on guaranteeing electoral outcomes for a certain voters.

14.     In *Reno v. Bossier Parish School Board*, 538 U.S. 320 (2000), the Supreme Court rejected the Department's interpretation that Section 5 prohibits any discriminatory purpose. The Court found that such an interpretation raised serious concerns about Section 5's constitutionality.

**15.**    The Department has at times advised covered jurisdictions that compliance with Section 5 of the Voting Rights Act might be met by using non-partisan demographic statistics, rather than by guaranteeing election results.

16.     For instance, in 2001, the Department refused to preclear Texas' state House of Representatives map because "the number of districts in which the level of Spanish surnamed registration (SSRV) is more than 50 percent decreases by two as compared to the benchmark." *See* Letter from Ralph F. Boyd, Jr., Assistant Attorney General, Civil Rights Division, United States Department of Justice, to The Hon. Geoffrey Connor, Acting Secretary of State, State of Texas (Nov. 16, 2001), *available at* http://www.justice.gov/crt/records/vot/obj_letters/letters/TX/l_011116. php.

17.     But by February 2011, the focus on guaranteeing electoral outcomes for a subset of voters had resurfaced.  After the Texas Legislature had begun the process of redistricting, the Department released guidance instructing covered jurisdictions that the Section 5 inquiry "requires a functional analysis of the electoral behavior within the particular jurisdiction or election district."  Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act, 76 Fed. Reg. 7470, 7471 (Feb. 9, 2011).

18.     The guidance did not, however, explain how covered jurisdictions should perform the election analysis.

19.     In reality, this functional analysis of electoral behavior was nothing more than a crude comparison of historical election results in the state's existing redistricting plan (the "benchmark") with reconstituted election results under the State's proposed plan.

20.     The Department's electoral analysis eschewed objective, easily ascertained demographic statistics in favor of manipulating district lines to guarantee the outcome of future elections.  That interpretation re-raises the very same constitutional concerns that animated the Supreme Court's decision in *Georgia v. Ashcroft*.

21.     The Department's focus on election results, rather than non-partisan demographic statistics, is also incongruent with the Supreme Court's jurisprudence under Section 2 of the Voting Rights Act.

22.     As *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986), acknowledges and *Bartlett v. Strickland*, 556 U.S. 1, 13-17 (2009), later emphasized, Section 2 only compels states to create majority-minority districts where, among other things, a minority group represents a numeric majority of the voting age population in a compact area.

23.     Rather than interpret Section 5's nearly identical language to require a similar focus on non-partisan demographic statistics, the Department has

repeatedly turned a blind-eye to the Supreme Court decisions in *Gingles* and *Bartlett*.

24.     The Department similarly rejected the Supreme Court's determination that Section 2 never compels a state to draw "coalition" districts (that is a district in which two or more minority groups make up more than 50% of the voting age population), charging that Texas could be obligated under Section 5 to maintain or draw coalition districts.  *Bartlett*, 556 U.S. at 19.

**The Office of the Inspector General's Report Concerning the Partisan Operations of the Voting Section**

25.     In March 2013, the Department's own Office of the Inspector General released its report reviewing the operations of the Voting Section of the Civil Rights Division.

26.     The report details a number of disturbing findings that raise serious questions regarding the motivations behind enforcement decisions made by the Voting Section and suggest that the Voting Section does not enforce the Voting Rights Act in a race-neutral fashion.

27.     According to the report, multiple Voting Section career staff "told the OIG that they believed that the reason the voting-rights laws were enacted was to protect historic victims of discrimination and therefore the Section should prioritize its resources accordingly."  Oversight and Review Division, Office of the Inspector General, U.S. Department of Justice, *A Review of the Operations of the Voting Section of the Civil Rights Division* 44 (March 2013), *available at*

http://www.justice.gov/oig/reports/2013/s1303.pdf.   A copy of the report is attached hereto as Exhibit A.

28.    Some of these individuals, including a manager at the time, told OIG that they believed the Voting Section should only pursue cases on behalf of traditional racial minorities.   *Id.*   This sort of race-conscious enforcement of the Voting Rights Act conflicts with the Fourteenth Amendment's equal protection mandate.

29.    The Report also disclosed that OIG uncovered emails detailing "widespread and vehement opposition among career employees" to at least one enforcement action simply because the defendants were African-American.   *Id.*

30.    Voting Section staff that held different ideologically opposed views were sometimes criticized.   *Id.* at 253.

31.    Emails reviewed by OIG revealed that staff members made derisive comments regarding another attorney for participating in an enforcement action filed against African-Americans.   *Id.* at 123-24.

32.    One such email referred to the attorney as a "klansman."   *Id.* at 123.

33.    Staff members also complained about election monitors being sent to investigate allegations that African-American political leaders were perpetrating absentee ballot fraud.   *Id.* at 124-25.

34.    An internal memorandum revealed that staff members were not opposed based upon the weakness of the allegations, but rather because "such an investigation would take the Voting Section away from its traditional right-to-vote

and access-to-the-polls focus" and that the investigation "would undermine the willingness of members of the Black community to cooperate with the Voting Section." *Id.* at 124.

35.     The OIG Report also examined the Voting Section's hiring practices in 2010 and found several suspicious practices that appear to have been used to ensure hires with liberal/Democratic backgrounds. *Id.* at 194 -222.

36.     The Report also stated that "the investigation identified several hiring practices that [OIG] believe[d] increased the risk of violating merit system principles and creating perceptions that the Voting Section engaged in prohibited personnel practices, including use of a general civil rights/public interest criterion." *Id.* at 220.

37.     The Report found that "the primary criterion used by the Voting Section hiring committee . . . resulted in a pool of select candidates that was overwhelmingly Democratic/liberal in affiliation." *Id.* at 222.

38.     Once such criterion was the applicants' civil rights "commitment." *Id.* at 218.

39.     OIG found that this "creates the possible appearance that [the Voting Section] is searching for applicants who share political or ideological views common in the liberal civil rights community" and that "[t]his perception is compounded by the fact that the 'commitment' that passes muster often is demonstrated through work with a small number of influential civil rights organizations." *Id.*

40.     The Report further found that "[i]f the Voting Section in fact prefers candidates with experience working with disenfranchised communities, for example, it should establish such work as one of its hiring criteria rather than subsuming it into a broad experience criterion that readily can be manipulated to assess one's commitment to political or ideological objectives and that adds marginal value to the hiring process." *Id.* at 220.

41.     The OIG Report also found that "the Voting Section passed over candidates who had stellar academic credentials and litigation experience with some of the best law firms in the country, as well as with the Department." *Id.*

42.     Finally, the OIG report detailed inconsistent explanations for a list that appeared to be prepared "in part" for recruiting purposes.  *Id.* at 218.

43.     The Report said the list was "troubling because it appeared the list was prepared in part for recruiting purposes, . . . people widely perceived to be conservatives were omitted from it, and staff in the Voting Section failed to provide a consistent explanation as to why that was the case." *Id.*

**The Department of Justice's Partisan Enforcement of the Voting Rights Act With Respect to Voter ID Laws.**

44.     The Voting Section's internal dysfunction, partisan hiring practices and politically charged work environment have translated into the unequal and partisan enforcement of the Voting Rights Act with respect to Voter ID laws generally and with respect to S.B. 14 specifically.

45.     The Voting Section repeatedly delayed the preclearance of SB 14.

46.     Although the Attorney General is required by statute to rule on a preclearance submission with 60 days, instead it waited a full 60 days to request additional information.

47.     DOJ did not issue a decision on Texas' request until March 12, 2012, and cited as one basis for its objection the fact that the State "did not include evidence of significant in-person voter impersonation not already address by the state's existing laws"—something the Department never asked for.

48.     The Department's delay in issuing a preclearance ruling ultimately required the State to seek preclearance in the U.S. District Court for the District of Columbia if it had any hopes of implementing its law before the next statewide election date.

49.     Once in litigation, the Department refused to make available the federal databases to Texas—and even its own expert—which prevented Texas from properly addressing the same ID disparity theory that the Department rehashes in its complaint in this case.

50.     Texas was forced to either fight for access to the federal database or lose any hope of implementing its law in the next statewide election.

51.     Because Texas had the burden of proof in the preclearance lawsuit, the Department's litigation tactics ultimately worked to further block Texas' Voter ID law.

52.     Sixteen states have enacted photo-voter identification laws.  Wendy Underhill, Voter Identification Requirements:  Voter ID Laws, *National Conference*

*of State Legislatures* (June 25, 2014), http://www.ncsl.org/research/elections-and-campaigns/voter-id.aspx#map.

53.    DOJ has not used Section 2 to challenge similar Voter ID laws enacted by Indiana, Georgia, Tennessee, Wisconsin, Ohio, Alabama, Arkansas, Alaska, Kansas, Mississippi, or South Carolina.

54.    DOJ's decision to target only southern, Republican-led states that were previously covered by Section 5's preclearance regime provides clear evidence of the partisan and uneven enforcement now typical of the Voting Section.

55.    Texas is the only state that DOJ alleges has purposely discriminated against minorities when enacting its Voter ID law.

56.    DOJ's discovery inquiries in this case also evidence partisan motivations for this lawsuit.

57.    DOJ has issued dozens of subpoenas to state legislators requesting campaign materials that have nothing to do with Voter ID and that, in some cases, were created long after Voter ID was enacted. This Court correctly rebuffed such requests.

58.    

## **PRAYER FOR RELIEF**

Defendants pray that the Court issue a take-nothing judgment in favor of Defendants and against Plaintiffs and in issue an order denying Plaintiffs all relief sought.


Dated: July 18, 2014


Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

J.        REED        CLAY,        JR.
Special   Assistant   and   Senior   Counsel
to the Attorney General
Southern District of Texas No. 1160600

*/s/ John B. Scott*
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
Southern District of Texas No. 10418
Texas State Bar No. 17901500
ATTORNEY-IN-CHARGE

G. DAVID WHITLEY
Assistant Deputy Attorney General
Southern District of Texas No. 2080496

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

33

JENNIFER MARIE ROSCETTI
Assistant Attorney General
Southern District of Texas No. 224780

LINDSEY ELIZABETH WOLF
Assistant Attorney General
Southern District of Texas No. 2292940

FRANCES WHITNEY DEASON
Assistant Attorney General
Southern District of Texas No. 2302872

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

BEN A. DONNELL
Donnell, Abernethy & Kieschnick
555 N. Carancahua, Suite 1770
Corpus Christi, Texas 78401-0853
Southern District of Texas No. 5689

COUNSEL FOR THE STATE OF TEXAS,
RICK PERRY, JOHN STEEN, and STEVE
MCCRAW

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2014, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


_/s/ John B. Scott_
JOHN B. SCOTT