IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) <br> (Consolidated Action) |

**UNITED STATES' MOTION TO DETERMINE THE
SUFFICIENCY OF DEFENDANTS' RESPONSES TO THE UNITED STATES'
CORRECTED SECOND SET OF REQUESTS FOR ADMISSION**

Pursuant to Rule 36(a)(6) of the Federal Rules of Civil Procedure, Plaintiff United States of America respectfully moves to determine the sufficiency of Defendants' responses to the United States' Corrected Second Set of Requests for Admission.

To conserve resources and expedite trial, the United States served on Defendants a set of Requests for Admission ("RFAs") dealing principally with racially polarized voting patterns in Texas, as well as certain Census data.  (The RFAs and their associated attachments are attached as **Exs. 1-6**, hereto.)  The majority of those RFAs related to racially polarized voting analyses performed by the State of Texas, through its Office of the Texas Attorney General, and produced to the United States in prior litigation. *See Racially Polarized Voting Analysis* (Tex. OAG, May 18, 2011) (Ex. 2).  The existence of racially polarized voting in Texas is relevant to this case, s*ee Veasey v. Perry*, No. 13-cv-193, 2014 WL 3002413,  at *19, *22 (S.D. Tex. July 2, 2014), and the RFAs reiterated key facts contained in the State of Texas's own racially polarized voting analyses.

Rather than admit or deny the RFAs posed, however, Defendants merely repeated a series of boilerplate objections and stated for all but two RFAs that they lacked "sufficient knowledge to admit or deny" the RFAs, including those drawn from the Defendants' own official analyses. And not only did Defendants deny the numerous RFAs regarding their detailed polarized voting analyses, they also refused to authenticate their own documents containing those analyses, despite the fact that nearly every page of those analyses plainly identifies the documents' origin: the "Office of the Attorney General-State of Texas."

Defendants' blanket denials, objections, and disclaimers to virtually all 770 of the United States' RFAs are unjustified and improper—especially because most of the RFAs refer to documents and facts generated and previously produced by the State of Texas itself. Under these extraordinary circumstances, this Court should enter an order deeming each request admitted by Defendants.

## I.   INTRODUCTION

On May 23, 2014, the United States served its Corrected Second Set of Requests for Admission upon Defendants. *See* **Ex. 1**. The requests covered the following general topics:

| Request Number(s) | General Subject of Request(s) |
|---|---|
| 1-13 | Authenticity of Exhibit A to the RFAs, *Racially Polarized Voting Analysis* (Tex. OAG, May 18, 2011), re: Texas Senate Plan 148; author; creation; distribution |
| 14-23 | Authenticity of Exhibit B to the RFAs, *Racially Polarized Voting Analysis* (Tex. OAG, Apr. 27, 2011), re: Board of Education Plan 120; author; creation; distribution |
| 24-33 | Authenticity of Exhibit C to the RFAs, *Racially Polarized Voting Analysis* (Tex. OAG, Apr. 29, 2011), re: Texas House of Representatives Plan 283; author; creation; distribution |
| 34-43 | Authenticity of Exhibit D to the RFAs, *Racially Polarized Voting* |

| Request Number(s) | General Subject of Request(s) |
|---|---|
|  | *Analysis* (Tex. OAG, Jul. 1, 2011), re: Texas Congressional Plan 185; author; creation; distribution |
| 44 | Texas's initiation of the *Texas v. United States* (D.D.C.) litigation in 2011 "by and through its state Attorney General, Greg Abbott." |
| 45-717 | Facts regarding racially polarized voting in recent Texas elections as detailed in an analysis conducted by the Texas Office of the Attorney General, and as reflected in Ex. A to the RFAs. |
| 718-743 | Facts concerning racially polarized voting in Texas elections. |
| 744-745 | Texas Secretary of State's use of Spanish surname data from the Census Bureau |
| 746-747 | Use of Spanish surname data from the Census Bureau during the course of 2011 redistricting by the Texas Legislative Council and the Texas Office of the Attorney General. |
| 748 | Authenticity of Exhibit E to the RFAs, *Data for 2011 Redistricting in Texas* (Tex. Leg. Council) |
| 749-50 | Information regarding Sid Miller's candidacy for Texas Agricultural Commissioner in 2014 and any legal requirements to file campaign treasurer appointments with the Texas Election Commission |
| 751-770 | Authenticity of Census data regarding Texas population |

Defendants served their objections and responses to the United States' RFAs on June 26, 2014. *See* **Ex. 7**. As to all but two of the 770 RFAs (Nos. 744 and 745), which they specifically and unambiguously denied, Defendants lodged an introductory paragraph of formulaic objections to each RFA[1] and then, subject to those objections, stated, "Defendants do not have sufficient knowledge to admit or deny; therefore the Defendants deny this request."

---

[1] The objections generally began with an assertion that certain obvious terms such as "during the pendency," "regarding Texas Senate Plan 148," "produced to the United States," "dated [*mm/dd/yyyy*]," "all general elections for statewide office in Texas since [*yyyy*]," "Republican candidate," "non-Hispanic white persons," "2000 census," and "made available to members of the Texas Legislature" were "vague,
(Cont'd…)

3

The first four documents that the United States requested that Texas authenticate—each of which states on its face (and every page therein) that it was created by "Office of the Attorney General-State of Texas"—were produced to the United States from named-party "State of Texas" in *Texas v. United States*, No. 11-cv-1303 (D.D.C.).[2]

The vast majority of the United States RFAs concern these documents, which Defendants now refuse to authenticate. They also refuse to admit facts that are either evident on the face of those documents, or were already the subject of sworn Rule 30(b)(6) testimony by the Office of the Texas Attorney General in the *Texas v. United States* litigation.[3] The last exhibit is a

---

ambiguous and confusing[,] rendering this request fairly difficult to admit or deny." Often, Defendants did not even bother to pick out specific language they contended was vague; they just objected generally to "the language used in this request." That is improper. "Merely stating that a discovery request is vague or ambiguous, without specifically stating how it is so, is not a legitimate objection to discovery." *U.S. Commodity Futures Trading Comm'n v. Am. Derivatives Corp.*, No. 1:05-CV-2492, 2007 WL 1020838, at *3 (N.D. Ga. Mar. 30, 2007). Next, Defendants—i.e., the State of Texas and several of its officials—generally objected to the request because it called for them "to make an admission with respect to documents or information the interpretation of the conduct, actions, work product, strategy, thought processes and data interpretation of a non-party to this cause of action, the Office of the Texas Attorney General," on the grounds that any such admission would be "based on conjecture and speculation by the Defendant and/or hearsay, not based upon knowledge of facts." (To be clear: the Texas Attorney General is a constitutional officer of the State of Texas, and his lawyers are required to represent the State and its officials in litigation. *See* Tex. Const. art. 4 § 22; Tex. Gov't Code § 402.021. Indeed, attorneys from the Office of the Texas Attorney General have specifically appeared on Defendants' behalf in this litigation.) If a request made reference to a document that was not attached to the RFAs, but was nevertheless readily available to Defendants, they objected that the non-attached document made the request "difficult to fairly admit or deny." Finally, Defendants typically tacked on a boilerplate objection that the request was irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

[2] The *Texas v. United States* litigation was filed by the State of Texas, "by and through its attorney General Greg Abbott" against the United States and Eric H. Holder Jr., in his official capacity as Attorney General of the United States. In that case, Texas sought preclearance under Section 5 of the Voting Rights Act of statewide redistricting plans for the Texas State Board of Education, the Texas House of Representatives, the Texas Senate, and the Texas delegation to the United States House of Representatives, adopted by the State after the 2010 Census. *See Texas v. United States*, No. 11-cv-1303, Compl. at 1 (ECF No. 1) (D.D.C. Jul. 19, 2011), attached as **Ex. 8**.

[3] For example, RFAs 1-9, 15-19, 24-28, and 34-38, seeking admissions relating to the fact that Exhibits A–D were created by staff of the Texas Office of the Attorney General, using a program written by Joshua Zahn of the Legal Technical Support Division of the Texas Office of the Attorney General, all

(Cont'd…)

publicly available document created by the Texas Legislative Council, an arm of the Texas Legislature.[4] In other words, Defendants know exactly what these documents are and are intimately familiar with their contents.

Defendants' manifold and reflexive denials – unfastened to any reasonable inquiry – are incredible on their face. They abrogate Rule 36. And unremedied, they will surely and unnecessarily tax the resources of the parties and this Court by requiring the United States to prove at trial what Defendants now know to be true through their own documents, but refuse to admit.

## II.  LEGAL STANDARD

"Rule 36 allows parties to narrow the issues to be resolved at trial by identifying and eliminating those matters on which the parties agree." *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1121 (5th Cir. 1991); *see also* Fed. R. Civ. P. 36 advisory committee notes (1970) ("Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."). A party is entitled to serve RFAs on any matter within the scope of Rule 26(b)(1) relating to "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). If a party does not admit an RFA, it must either "specifically deny it or state in detail why [it] cannot truthfully admit or

---

flow from sworn deposition testimony that Mr. Zahn has already provided as the OAG's Rule 30(b)(6) designee in *Texas v. United States*. *See* Deposition of the Designated Representative of the Office of the Attorney General of Texas (Joshua Zahn) 15:17- 22:10; 48:5-50:13 (Oct. 18, 2011), attached as **Ex. 9**.

[4] *See* http://www.tlc.state.tx.us/redist/data/data.html.

deny it." Fed. R. Civ. P. 36(a)(4).  Additionally, "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made a reasonable inquiry and that the information it knows *or can readily obtain* is insufficient to enable it to admit or deny." *Id.* (emphasis added).

Although a party may assert objections to an RFA, *see* Fed. R. Civ. P. 36(a)(5), they must be specific and genuine. "Gamesmanship in the form of non-responsive answers . . . or quibbling objections can result in the request being deemed admitted or in a post-trial award of monetary sanctions *without* prior opportunity to correct the deficiency." *House v. Giant of Maryland LLC*, 232 F.R.D. 257, 262 (E.D. Va. 2005) (emphasis in original).  Indeed, "extensive" use of a boilerplate objection violates Rule 36(a). *Old Reliable Wholesale, Inc. v. Cornell Corp.*, No. 5:06-CV-02389-DDD, 2008 WL 2323777, at *1 (N.D. Ohio Jun. 4, 2008).  Additionally, when a lengthy boilerplate objection is followed by an answer, the Court should disregard the objection as ineffective and instead analyze the answer given. *Old Reliable Wholesale* at *2; *see also Porto Venezia Condominium Ass'n, Inc. v. WB Fort Lauderdale, LLC*, No. 11–60665–CIV, 2012 WL 7635868, at *4 (S.D. Fla. Aug. 13, 2012) (practice of objecting then responding to interrogatories is disfavored, and court need not consider such objections) (collecting cases).

### III.   ARGUMENT

Defendants' formulaic objections and blanket disavowals of knowledge are improper. This Court should therefore reject the empty boilerplate and focus instead on Defendants' substantive claims of lack of knowledge or information. *Old Reliable Wholesale*, 2012 WL 7635868, at *2; *Porto Venezia Condominium Ass'n*, 2012 WL 7635868, at *4.  As explained below, Defendants' claims of lack of knowledge or information as to all but two RFAs reflect no effort whatsoever to inquire into the facts and information readily obtainable to them, as required

6

by Rule 36(a)(4). Given the imminence of trial, the unique circumstance that the underlying documents attached to the RFAs were generated and produced by the State itself, and given the Defendants' exceptional and unreasonable lack of responsiveness to relevant and reasonable requests for admissions here, the Court should order that Defendants' responses to the RFAs be deemed admitted.

### A. Defendants' Repeated and Mechanical Assertions of "Lack of Knowledge" Disregard Rule 36's "Reasonable Inquiry" Requirement.

Pursuant to Rule 36(a)(4), "an answering party must conduct a reasonable inquiry and answer a[n] RFA if the information is readily obtainable, even though the answering party has no personal knowledge of the facts." *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 330 (E.D. Ky. 2006) (collecting cases); *see also Loudermilk v. Best Pallet Co.*, No. 08-CV-06869, 2009 WL 3272429, at *1 (N.D. Ill. Oct. 8, 2009). The reasonable inquiry must be supported by specific facts, as detailed in the response to the RFA; it does not suffice simply to invoke the "reasonable inquiry" language of the rule. *Asea, Inc. v. Southern Pacific Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981); *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996); *Loudermilk*, 2009 WL 3272429, at *1. Accordingly, a respondent's claimed lack of knowledge or information that fails to allege a reasonable inquiry fails as a matter of law. *See, e.g., Han v. Food and Nutrition Serv.*, 580 F. Supp. 1564, 1566 (D. N.J. 1984) (RFA response that fails to allege and specify any reasonable inquiry undertaken is inadequate on its face).

Defendants' responses here reflect *no* reasonable inquiry into the matters raised by the RFAs. They are thus inadequate on their face and equivalent to no response at all. *Id.* But even if the Court were to look beyond the facial inadequacy of Defendants' responses, it is clear that Defendants failed to make any reasonable inquiry based on information known or reasonably

available to them. That is because the Defendants *generated* each of the five documents attached to the United States' RFAs and *produced* those documents to the United States in the *Texas v. United States* (D.D.C.) litigation. All of these documents are, therefore, in the possession of Defendants' counsel and are readily available to Defendants.

For example, exhibits A-D are nonprivileged analyses of racially polarized voting created by the Office of the Texas Attorney General, in connection with the Texas statewide redistricting process in 2011. Exhibit E is a public document prepared by the Research Division of the Texas Legislative Council for use in the 2011 Texas statewide redistricting process. The bulk of the RFAs ask questions about or arising out of these five documents. The remaining RFAs ask questions about the parties to previously filed voting litigation involving Texas and the United States (RFA No. 44), the application of Texas campaign finance laws to a particular candidate (RFA Nos. 749-50), and the existence of certain Census data relating to Texas (RFA Nos. 751-770).

It would strain credulity for Defendants to argue that they have made a reasonable inquiry into information known or reasonably available to them when they have already disavowed knowledge of documents and information it (and its lawyers) already possess, including documents created by the Office of the Texas Attorney General itself. "A reasonable inquiry means that a party has to ask their counsel, and if their counsel knows the answer, they need to use that information to admit or deny" the RFA. *Stark-Romero v. Nat'l R.R. Passenger Co.*, 275 F.R.D. 551, 558 (D.N.M. 2011); *see also Adkins Energy, LLC v. Farmland Mut. Ins. Co.*, No. 04 C 50482, 2009 WL 1259344, at *6 (N.D. Ill. May 6, 2009) (party has duty to inquire with former counsel if needed to acquire necessary knowledge to respond to RFA). In addition to inquiring with counsel, a reasonable inquiry may also require a party to consult with current or

former employees and agents, and even some third parties. *See, e.g., Brown v. Arlen Mgmt. Corp.*, 663 F.2d 575, 580 (5th Cir. 1981) (failure of responding party to consult with former employee in answering RFA was "incomprehensible" and supported magistrate's ruling deeming RFA admitted without further opportunity to cure or amend answer); *Two Guys Recycling, LLC v. Will Transport, Inc.*, No. 11-0048, 2011 WL 4502658, at *7 (W.D. La. 2011) ("A reasonable inquiry includes an investigation and inquiry of employees, agents, and others who conceivably and realistically may have information which would enable the respondent to fashion the appropriate response."); *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 304 (M.D.N.C. 1998) ("[A] party must make inquiry of a third party when there is some identity of interest manifested, such as by both being parties to the litigation, a present or prior relationship of mutual concerns, or their active cooperation in the litigation, and when there is no manifest or potential conflict between the party and the third party.").

These tenets are particularly applicable where, as here, a governmental agency creates the documents at issue, produces them in one federal voting rights litigation, and then, in a subsequent federal voting rights litigation, disavows all knowledge of them, including their authenticity. Indeed, the majority of documents at issue here are not merely *available* to the Texas Attorney General, they were in fact *created by* the Texas Attorney General, and say so on every page. That Texas produced those very documents in *Texas v. United States* makes its present disavowal of them here particularly inappropriate.

### B. Given the Imminence of Trial and Defendants' Unreasonable and Unresponsive Conduct, Defendants' Insufficient RFA Answers Should Be Deemed Admitted.

Where an RFA answer "discloses no valid objection to the requests, no good excuse for the failure to answer them, and no showing that the respondent had made a reasonable inquiry to

9

ascertain their truth," the associated request for admission "must stand as admitted under the requirements of Rule 36." *Seals v. Wiman*, 304 F.2d 53, 64 (5th Cir. 1962), *cert. denied sub nom Wiman v. Seals*, 372 U.S. 915 (1963), *and cert. denied*, 372 U.S. 924 (1963); *accord Brown*, 663 F.2d at 580.

Although Rule 36(a)(6) states that courts retain discretion to deem an insufficiently answered request admitted or to order that an amended answer be served, this Court should—given the imminence of trial and the exceptional nature of Defendants' unreasonable and unresponsive conduct here—deem the Defendants' improper answers to be admissions. Defendants' facially insufficient answers to 768 of 770 of the RFAs, coupled with their palpable failure to make a reasonable inquiry regarding matters within their knowledge (and abject disavowal of documents they created and produced in prior litigation with the United States), justify this Court deeming the United States' RFAs admitted without further opportunity for correction or amendment by Defendants. *See Two Guys Recycling*, 2011 WL 4502658, at *7–9 (deeming series of improperly answered RFAs admitted); *In re Cantu*, No. 08–70260, 2009 WL 1257151, at *4 (Bankr. S.D. Tex. May 4, 2009) (same); *Wagner v. BellSouth Telecommunications, Inc.*, No. 07-604-RET-SCR, 2008 WL 3386821, at *2 (M.D. La. Aug. 8, 2008) (same).

## IV.  CONCLUSION

For the foregoing reasons, the United States respectfully submits that the United States' Motion to Determine the Sufficiency of Defendants' Responses to the United States Corrected Second Set of Requests for Admission should be GRANTED. Pursuant to Local Rule 7.4(D), a proposed order granting the United States' motion is attached hereto.

**CERTIFICATE OF CONFERRAL**

I hereby certify, pursuant to Fed. R. Civ. P 26(c)(1), that the United States has in good faith conferred with Defendants in an effort to resolve this dispute without court action.

*s/ Bradley E. Heard*
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice

Date: August 8, 2014

Respectfully submitted,

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

MOLLY J. MORAN
Acting Assistant Attorney General
Civil Rights Division

*s/ Bradley E. Heard*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
RICHARD A. DELLHEIM
ELIZABETH S. WESTFALL
BRUCE I. GEAR
BRADLEY E. HEARD
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-4196
Fax: (202) 307-3961
E-mail: Bradley.Heard@usdoj.gov

## CERTIFICATE OF SERVICE

This certifies that I have this day filed the within and foregoing **United States' Motion to Determine the Sufficiency of Defendants' Responses to the United States Corrected Second Set of Requests for Admission** electronically using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record through the Court's electronic filing system.

This 8th day of August, 2014.

> *s/ Bradley E. Heard*
> BRADLEY E. HEARD
> Attorney, Voting Section
> Civil Rights Division
> U.S. Department of Justice
> bradley.heard@usdoj.gov