IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF TEXAS, <br> Office of the Attonery General <br> 209 W. 14th Street <br> Austin, Texas 78701, | ) <br> ) <br> ) <br> ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA <br> and ERIC H. HOLDER, JR. in his <br> official capacity asAttorney General <br> of the United States, | ) <br> ) <br> ) <br> ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO SECTION 5 OF THE VOTING RIGHTS ACT OF 1965 AND REQUEST FOR THREE-JUDGE COURT

The State of Texas, by and through its Attorney General Greg Abbott, seeks a declaratory judgment that its recently enacted redistricting plans for the State Board of Education (the SBOE Plan), the Texas House of Representatives (the House Plan), the Texas Senate (the Senate Plan), and the United States House of Representatives (the Congressional Plan) fully comply with Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c (Section 5). The State's redistricting plans have neither the purpose nor will they have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. This complaint is filed under the assumption that Section 5 complies with the United States Constitution. The State reserves all applicable legal claims in light of the U.S. Supreme Court's

decision in *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 129 S.Ct. 2504, 2511-13 (2009) (raising serious questions regarding the constitutionality of Section 5), and pending this Court's decisions in *Shelby County, Ala. v. Holder*, No. 10-00651, (D.D.C.), and *Laroque v. Holder*, No. 10-00561 (D.D.C.). *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

## PARTIES

1. Plaintiff, the State of Texas, is a state of the United States and brings this action on behalf of itself and its citizens. Texas is subject to the preclearance requirements of Section 5 of the Voting Rights Act of 1965, as amended and codified at 42 U.S.C. § 1973c.

2. Defendants are the United States of America and Eric H. Holder, Jr., in his official capacity as Attorney General of the United States. Attorney General Holder is principally responsible for administering Section 5 of the Voting Rights Act and is a necessary party to these proceedings.

## JURISDICTION AND VENUE

3. This action is brought pursuant to Section 5 of the Voting Rights Act, under which this Court is authorized to declare Plaintiff's redistricting plans compliant with Section 5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2

4. Venue is proper in this Court pursuant to Section 5 of the Voting Rights Act. 42 U.S.C. § 1973c.

## FACTS

5. According to the 2010 Census data, Texas' population increased to 25,145,561, entitling it to 36 representatives in the United States House of Representatives (an increase of 4).

6. The population growth in Texas resulted in the malapportionment of preexisting electoral districts in the SBOE, the House, the Senate, and the Congressional Plans.

7. Consequently, the 82nd Texas Legislature recently reapportioned the electoral districts for the SBOE, the House, the Senate, and the United States House of Representatives.

8. This is a lawsuit for judicial preclearance under 42 U.S.C. § 1973c (Section 5 of the Voting Rights Act) and is entitled to review by a three-judge court.

9. Simultaneous with the filing of this action, Plaintiff has made a complete, but informal, submission—for all four redistricting plans—to the U.S. Department of Justice (DOJ) in order to facilitate and expedite disposition of this matter (the Submission). The Submission tracks and mirrors the DOJ's administrative pre-clearance process. A copy of the Submission is attached. Attachment 1.

3

## State Board of Education Redistricting Plan

10.    Texas' State Board of Education (SBOE) consists of 15 members, each of whom represents a single-member district.

11.    After the release of the 2010 Census data, the 82nd Legislature reapportioned the SBOE districts to equalize population.

12.    The SBOE Plan, H.B. 600, was passed by the Legislature on May 6, 2011 and became law on May 18, 2011. The SBOE Plan will become effective on August 29, 2011. Maps depicting the former and revised SBOE districts are attached. Attachment 2.

13.    On July 19, 2011—as explained above—Texas provided to the DOJ all of the documents and data necessary for the Attorney General to confirm that the SBOE redistricting plan complies with Section 5 and is entitled to preclearance. A copy of the State's submission is attached to this Complaint and incorporated herein for the Court's convenience.

14.    The Submission explains that the SBOE redistricting plan, as compared to its previous benchmark, maintains or increases the ability of minority voters to elect their candidate of choice in each district protected by Section 5.

15.    Specifically, the benchmark plan (i.e., the preexisting SBOE districting plan) included three districts (Districts 1, 2 and 3) where Hispanic voters were able to elect their candidate of choice and two districts (Districts 4 and 13) where African-American voters were able to elect their candidate of choice. The Plan maintains those five districts while enhancing the Hispanic

4

Voting Age Population (HVAP), the Hispanic Citizen Voting Age Population (HCVAP ) and the Spanish Surname Voter Registration (SSVR ) in both Districts 1 and 3.

<div align="center">State House of Representatives Redistricting Plan</div>

16.     The Texas House of Representatives (the House) is divided into 150 single-member districts.

17.     After the release of the 2010 Census data, the 82nd Legislature was required by law, TEX. CONST. art. 3, § 26, to reapportion the Texas House districts.

18.     The House Plan, H.B. 150, was passed by the Legislature on May 23, 2011 and became law on June 17, 2011.  Maps depicting the former and current House districts are attached. Attachment 3.

19.     The House Plan will become effective on August 29, 2011.

20.     On July 19, 2011—as explained above—Texas informally provided the DOJ all of the documents and data necessary for the Attorney General to confirm that the House redistricting plan fully complies with Section 5 and is entitled to preclearace.  A copy of the Submission is attached to this Complaint and incorporated herein for the Court's convenience.

21.     The Submission explains that the House Plan, as compared to its previous benchmark, maintains or increases the ability of minority voters to elect their candidate of choice in each district protected by Section 5.

22.     Specifically, as detailed in the chart below, the current House redistricting plan maintains or increases the number of districts at or above

<div align="center">5</div>

key thresholds for relevant metrics used to determine whether a minority voting population is able to elect its candidate of choice:

|  | BENCHMARK | HB 150 |
|---|---|---|
| HVAP[1] (greater than 60%) | 30 | 30 |
| HCVAP[2] (greater than 50%) | 30 | 30 |
| SSVR[3] (greater than 50%) | 29 | 30 |
| BVAP[4] (greater than 40%) | 11 | 12 |

## State Senate Redistricting Plan

23.     The Texas Senate is divided into 31 single-member districts.

24.     After the release of the 2010 Census data, the 82nd Legislature was required by law, TEX. CONST. art. 3, § 25, to reapportion the Senate districts.

25.     The Senate Plan, S.B. 31, was passed by the Legislature on May 23, 2011 and became law on June 17, 2011.  Maps depicting the former and current Senate districts are attached. Attachment 4.

26.     The Senate Plan will become effective on August 29, 2011.

27.     On July 19, 2011—as explained above—Texas informally provided the DOJ all of the documents and data necessary for the Attorney General to confirm that the Senate redistricting plan fully complies with Section 5 and is

---

[1] Hispanic Voting Age Population.
[2] Hispanic Citizen Voting Age Population.
[3] Spanish-Surname Voter Registration.
[4] Black Voting Age Population.

6

entitled to preclearance. A copy of the Submission is attached to this Complaint and incorporated herein for the Court's convenience.

28. The Submission explains that the Senate Plan, as compared with its previous benchmark, maintains or increases the ability of minority voters to elect their candidate of choice in each district protected by Section 5.

29. Specifically, there are seven Senate districts (Districts 6, 19, 20, 21, 26, 27 and 29) in the benchmark map and in the Senate Plan with a Hispanic Voting Age Population (HVAP) greater than 60%. Additionally, there are two districts (Districts 13 and 23) in the benchmark and the Senate Plan with a Black Voting Age Population (BVAP) of over 40%. All nine of these districts will continue to elect the minority voters' candidate of choice under the Plan.

## Congressional Redistricting Plan

30. According to the 2010 Census data, Texas' population increased to 25,145,561, entitling the State to 36 representatives in the U.S. House of Representatives (an increase of 4).

31. Due to this growth in population and the apportionment of four additional seats to Texas, the State was required to reapportion its congressional districts after the release of the 2010 Census data.

32. The Legislature adjourned its regular session on May 30, 2011 without reapportioning Texas' congressional districts.

33. A special session was convened on May 31, 2011, the Legislature passed the Congressional Plan, S.B. 4, on June 24, 2011, and the Plan was

7

signed into law on July 18, 2011. Maps depicting the former and current congressional districts are attached. Attachment 5.

34.     On July 19, 2011—as explained above—Texas informally provided the DOJ all of the documents and data necessary for the Attorney Genral to confirm that the Congressional Plan fully complies with Section 5 and is entitled to preclearance.     A copy of the Submission is attached to this Complaint and incorporated herein for the Court's convenience.

35.     The Submission explains that the Congressional Plan, as compared with its previous benchmark, maintains or increases the ability of minority voters to elect their candidate of choice in each district protected by Section 5.

36.     With regard to the African-American communities, the Congressional Plan increases by one the number of congressional districts with a Black Voting Age Population (BVAP) of over 40% and also contains one district with 37.6% BVAP.

37.     In addition, there are seven majority-minority districts both in the benchmark map and in the Congressional Plan with a Hispanic Voting Age Population (HVAP) greater than 60% (and one new seat with an HVAP over 50%).

## COUNT I

38.     The allegations in Paragraphs 1-15 are reincorporated here.

39.     The SBOE Plan does not retrogress and "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of

8

race or color" or membership in a language minority. 42 U.S.C. § 1973c. In all respects, it complies with Section 5 of the Voting Rights Act.

40.     Plaintiff is entitled to a judgment that the SBOE Plan fully complies with Section 5 of the Voting Rights Act and may be implemented immediately.

## COUNT II

41.     The allegations in Paragraphs 1-9 and 16-22 are reincorporated here.

42.     The House Plan does not retrogress and "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color" or membership in a language minority. 42 U.S.C. § 1973c. It therefore complies with Section 5 of the Voting Rights Act.

43.     Plaintiff is entitled to judgment that the House Plan fully complies with Section 5 of the Voting Rights Act and may be implemented immediately.

## COUNT III

44.     The allegations in Paragraphs 1-9 and 23-29 are reincorporated here.

45.     The Senate Plan does not retrogress and "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color" or membership in a language minority. 42 U.S.C. § 1973c. It therefore complies with Section 5 of the Voting Rights Act.

46.     Plaintiff is entitled to judgment that the Senate Plan fully complies with Section 5 of the Voting Rights Act and may be implemented immediately.

## COUNT IV

47.     The allegations in Paragraphs 1-9 and 30-37 are reincorporated herein.

48.     Texas' Congressional Plan does not retrogress and "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color" or membership in a language minority. 42 U.S.C. § 1973c. It therefore complies with Section 5 of the Voting Rights Act.

49.     Plaintiff is entitled to judgment that the Congressional redistricting plan fully complies with Section 5 of the Voting Rights Act and may be implemented immediately.

## DEMAND FOR JUDGMENT

Plaintiff respectfully requests the following relief from the Court:

A. Convene a three-judge court pursuant to 42 U.S.C. § 1973c;

B. Enter declaratory judgment that the SBOE, House, Senate, and Congressional redistricting plans neither have the purpose nor will have effect of denying or abridging the right to vote on account of race, color, or membership in a language minority and otherwise fully comply with Section 5 of the Voting Rights Act.

C. Enter a declaratory judgement that the SBOE, House, Senate, and Congressional redistricting plans may be implemented immediately.

10

D. Grant Plaintiff such other and further relief as may be proper and appropriate.

Dated:     July 19, 2011                    Respectfully Submitted,

                                            GREG ABBOTT
                                            Attorney General of Texas

                                            DANIEL T. HODGE
                                            First Assistant Attorney General

                                            BILL COBB
                                            Deputy Attorney General for Civil Litigation

                                            DAVID C. MATTAX
                                            Director of Defense Litigation

                                            DAVID SCHENCK
                                            Deputy Attorney General for Legal Counsel
                                            J. REED CLAY, JR.
                                            Special Assistant and Senior Counsel
                                            to the Attorney General

                                            209 W. 14ᵗʰ St.
                                            PO Box 12548
                                            Austin, TX  78711-2548
                                            (512) 936-1342

11

# ATTACHMENT 1

# State of Texas
# Informal Submission
# Act of June 24, 2011, 82nd Leg., 1st C.S., S.B. 4
# United States Congress

This document outlines the information provided in the State of Texas' informal submission of S.B. 4 (the "Plan") to the Department of Justice. While this is not a formal submission, the State of Texas is nonetheless providing all information which would normally be contained in a submission pursuant to 28 C.F.R. §§ 51.27 and 51.28. This document either provides the information requested or references the relevant attachment where the information is located.

## Section 51.27 (a) – Copy of Plan

A copy of the Plan may be found online at http://gis1.tlc.state.tx.us/download/Congress/PLANC185.pdf and is included as **Attachment 1**.

## Section 51.27(b) – Copy of Plan Currently in Effect

A copy of Texas' current United States House of Representatives districts can be found online at http://gis1.tlc.state.tx.us/download/Congress/PLANC100.pdf and is included as **Attachment 2.** That plan is referred to herein as "benchmark plan" or "C100" in the electronic reports.

## Section 51.27(c) – Statement of Change Requested

The Plan makes changes to all 32 of the State's preexisting congressional districts, and it also creates the 4 new congressional districts that were allocated to Texas after the decennial census. Reports and maps have been included in the submission and detail those changes. The Texas Legislature redrew the State's congressional districts to accommodate the creation of new districts and to ensure existing districts reflect equal representation in the wake of divergent population growth within various regions of the state over the last ten years.

## Section 51.27(d) – Person Submitting Change

Greg Abbott
Texas Attorney General
209 W. 14th Street
Austin, Texas 78701

(512) 463-2191 - office
(512) 936-0545 - fax
greg.abbott@oag.state.tx.us

**Section 51.27(e) and (f)**: Not applicable

**Section 51.27(g) – Body Responsible for Change**

The body responsible for passing the Plan was the 82nd Texas Legislature.

**Section 51.27(h) – Statutory Authority for Change**

Redistricting of the state's congressional districts has always been and continues to be a legislative responsibility under the general legislative power granted by article 3, section 1 of the Texas Constitution. Because of an increase in the State of Texas' population between 2000 and 2010, the State is entitled to four additional congressional districts, increasing its U.S. House of Representatives delegation from 32 to 36 members. Accordingly, Texas' benchmark plan was malapportioned and in violation of the U.S. Supreme Court's "one person, one vote" standard. A more detailed discussion of the process the Legislature undertook can be found in **Section 51.28(f)**.

**Section 51.27(i) and (j) – Date Change Adopted and Effective Date of Change**

The Plan became law on July 18, 2011 and will become effective on September 28, 2011.

**Section 51.27(k) – Statement of Nonimplementation**

The Plan has not been implemented.

**Section 51.27(l)  - Affected Jurisdiction**

The Plan affects the entire jurisdiction of the State of Texas.

**Section 51.27 (m) and (n) – Reason for and Effect of Change**

**Background**

According to the 2010 federal decennial census, the State of Texas has a population of 25,145,561. In December 2010, the State was notified that it will be allocated 36 U.S. House of Representatives districts, a gain of 4 congressional seats. Each of those 36 districts is ideally populated at 698,488.

2

The 82nd Texas Legislature convened its regular session on January 10, 2011 and adjourned on May 30, 2011 without enacting legislation creating congressional districts. The Governor called the Legislature into a special session on May 31, 2011 to address, among other initiatives, congressional redistricting.

## Statewide Impact on Minority Voters

The Texas Legislature's goals during the redistricting process were to equalize population as required by the "one-person, one-vote" principle, avoid pairing incumbents, preserve city lines and preserve the cores of prior districts when possible.[1] The State's resulting redistricting plan created an additional majority-minority district.

The Plan adopted by the Legislature fully complies with all applicable state and federal laws and neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. The Plan does not retrogress racial or language minorities' ability to effectively exercise their electoral franchise.

From a statewide perspective, the State's congressional redistricting plan does not retrogress minority voting rights. All but one of the preexisting congressional districts were overpopulated, some by as much as 50.6% over the ideal population. The districts were redrawn to accommodate population growth while also maintaining, to the greatest extent possible, the cores of existing districts. Both the benchmark map and the Plan contain seven districts where Hispanic Voting Age Population (HVAP) exceeds 60%. The Plan also creates a new district with greater than 50% HVAP.

The Texas Legislature's congressional plan also increases – from one to two districts – the number of congressional districts with a Black Voting Age Population (BVAP) over 40%. It also includes one district which contains 37.6% BVAP. Election data indicate that these three districts (Districts 9, 18 and 30) preserve or increase African-American voters' ability to elect their candidate of choice.

**New Districts.** Of the four new congressional districts, the Legislature created one new district (District 35) that is very likely to elect Hispanic voters' candidate of choice. That district joins communities from Travis and Bexar Counties and results in a district that contains 58.3% HVAP, 51.9% Hispanic Citizen Voting Age Population (HCVAP)[2]

---

[1] *See* http://www.journals.house.state.tx.us/hjrnl/821/pdf/82C1DAY08SUPPLEMENTFINAL.pdf.

[2] The Fifth Circuit has unequivocally held that HCVAP is the population base that should be considered to determine whether a minority group satisfies the first *Gingles* requirement in a vote dilution claim. *See Campos v. City of Houston*, 113 F.3d 544, 548 (5th Cir. 1997) ("We hold that courts evaluating vote dilution claims under section 2 of the Voting Rights Act must consider the citizen voting-age population of the group challenging the electoral practice when determining whether the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district."); *see also Session v. Perry*, 298 F. Supp. 2d 451, 494 n.133 (E.D. Tex. 2004) ("This circuit, along with every other circuit to consider the question, has concluded that the relevant voting population for Hispanics is citizen voting age population."), *reversed on other grounds, LULAC v. Perry*, 548 U.S. 399, 429 (2006)

3

and 45.0% Spanish Surname Voter Registration (SSVR).[3] As was stated on the record during public redistricting committee hearings and the floor debate, the concept of this district was originally presented by the Mexican American Legal Defense and Educational Fund ("MALDEF ") in Public Plan C122. In fact, on the day the Legislature passed the Plan, a Hispanic state representative from San Antonio publicly stated that he was considering running for the new congressional seat. The Democratic State Representative publicly stated that he believes the district will survive legal challenges and that it is a "blessing in disguise for two cities that really complement each other, that are intertwined."[4] The other three new congressional districts, which were created in high growth areas throughout the state, are located in East Texas (District 36), North Texas (District 33), and South Texas (District 34).

**Dallas County and Tarrant County.** Dallas County's population grew at a much slower rate than the rest of the state over the last decade. While the overall State population increased at a rate of 20.6%, Dallas County's population growth was only 6.7%. In contrast, Tarrant County grew at a higher rate than the state as a whole. During the course of the legislative process, the Legislature discussed and debated whether a new majority-minority seat could be created in the Dallas/Fort Worth region. No plans were publicly submitted for consideration that successfully created a compact Hispanic-majority district for Dallas/Fort Worth. The Hispanic population in the region is too scattered to accommodate a compact district. Additionally, the area's Hispanic population suffers from low citizenship numbers and low voter registration. Ultimately, the newly created District 33 was drawn to accommodate population growth in Tarrant County and thus contains 558,265 Tarrant County residents.

**South and West Texas.** Due to the high concentration of Hispanic population in South and West Texas, the districts in that region inevitably have high HVAP numbers.

---

(commenting (but not holding) in dicta that using HCVAP to determine Hispanic electoral opportunity "fits the language of § 2 because only eligible voters affect a group's opportunity to elect candidates"). For information about how the State of Texas calculates HCVAP, please see the Texas Legislative Council's website: http://www.tlc.state.tx.us/redist/pdf/CitizenshipAddendum.pdf.

[3] According to the Texas Legislative Council:

Spanish surname voter registration, also reported in the secretary of state's Statewide Voter Database, is generated using a comparison to the 2000 Census Bureau List of Spanish Surnames. While most sources agree that the match between people who have Spanish surnames and those who consider themselves Hispanic is relatively good in Texas (the Census Bureau estimates a 90 percent correlation for the state), the reported number of registered voters with Spanish surnames is not a precise measure of Hispanic voter registration. Some people who consider themselves Hispanic do not have surnames that are included in the Spanish surname file and will be missed by the Spanish surname matching technique. Others, who have surnames that are included in the Spanish surname file but do not consider themselves Hispanic, will be incorrectly counted as Hispanic registered voters.

http://www.tlc.state.tx.us/redist/pdf/Data_2011_Redistricting.pdf.

[4] "Castro to Take on Doggett for New Congressional Seat " The Texas Tribune, June 24, 2011, *available at* http://www.texastribune.org/texas-politics/2012-congressional-election/castro-to-take-on-doggett-for-congressional-seat/.

4

The South and West Texas districts — Districts 15, 16, 20, 23, 28, and 34 — all contain over 60% HVAP. District 35 contains 58.3% HVAP.

One of the state's newly created districts, District 34, is largely comprised of former District 27. Election data indicate that District 34 will more consistently elect the Hispanic community's candidate of choice than did the former District 27. The newly redrawn District 27 is made up of excess population from surrounding districts and more accurately reflects the electoral history of communities contained in the district.

The Plan increases District 23's HVAP, SSVR and HCVAP. Because the Legislature wanted to keep District 20 wholly contained within Bexar County[5] — which is consistent with the district's historical core — and also wanted to ensure that new District 35 had adequate population to provide the Hispanic community with the ability to elect its candidate of choice, the Plan results in very small reductions in demographic metrics from District 20's benchmark. However, minority voters' ability to elect their candidate of choice in District 20 is not adversely impacted in the Plan. The following chart shows the relative Hispanic population metrics in Districts 20, 23 and 35.

|  | HVAP (Benchmark) | HVAP (SB 4) | HCVAP (Benchmark) | HCVAP (SB 4) | SSVR (Benchmark) | SSVR (SB 4) |
|---|---|---|---|---|---|---|
| District 23 | 62.8 | 63.8 | 58.4 | 58.5 | 52.6 | 54.8 |
| 20 | 71.5 | 69.3 | 63.8 | 62.9 | 59.2 | 56.3 |
| 35 | n/a | 58.3 | n/a | 51.9 | n/a | 45.0 |

**Harris County.** Over the last decade, Harris County's population grew at a slightly slower pace than the State's overall population. Under the benchmark plan, Harris County contains two congressional districts that elect the African-American community's candidate of choice and one district that elects the Hispanic community's candidate of choice. The Plan maintains these districts. Although several demonstration plans were filed by legislators seeking to create new minority districts in Harris County, none of those plans managed to create new minority-controlled districts without causing retrogression in other established districts.[6]

## Section 51.27(o) Pending Litigation

The following litigation involving the state's newly enacted redistricting plans is currently pending:

---

[5] This was a request of the incumbent Congressman.

[6] See C168 by Representative Carol Alvarado, which attempted to create a new Hispanic congressional district in Harris County. However, Rep. Alvarado's plan proposed a new district that only contained 42.5% SSVR and 41.1% HCVAP. Further, to achieve even these Hispanic population statistics in the proposed new congressional district, the plan reduced District 29's SSVR from 52.6% to 35.5% and its HCVAP from 56% to 38.6%.

5

| Name | Cause No. & Venue |
|---|---|
| *Consolidated:* <br> Perez, et al. v. State of Texas, et al; <br> Texas Latino Redistricting Task Force et al. v. Perry, et al; <br> MALC v. State of Texas, et al. | SA-11-CA-360-OLG-JES-XR <br> W.D. Tex. San Antonio <br> Three Judge Court: Garcia, Smith, Rodriguez |
| Teuber v. State of Texas , et al. | SA-11-CA-0572-OLG-JES-XR <br> W.D. Tex. San Antonio <br> Three Judge Court: Garcia, Smith, Rodriguez |
| Teuber v. State of Texas, et al. | CV-11-0270 <br> 397th District Court, Grayson County, Texas |
| MALC v. State of Texas, et al. | No. 7:11-cv-144 <br> S.D. Texas - McAllen Division (Judge Crane) |
| Barton et al. v. State of Texas & Hope Andrade | 11-20238-CV <br> 13th District Court, Navarro County, Texas |
| Barton et al. v. State of Texas & Hope Andrade | 11-20263-CV <br> 13th District Court, Navarro County, Texas |
| Washburn v. State of Texas & Hope Andrade | Cause No. CV 110921 <br> 397th District Court, Grayson County, Texas |
| Washburn v. State of Texas & Hope Andrade | Cause No. CV 110931 <br> 397th District Court, Grayson County, Texas |
| John "Canica" Limon, et al. v. Rick Perry, et al. | D-1-GN-11-001611 <br> 351st Judicial District Court, Travis County, Texas |
| Bianca Garcia, et al. v. Rick Perry, et al. | D-1-GN-11-001612 <br> 419th Judicial District Court, Travis County, Texas |
| Rodriguez, et al. v. State of Texas, et al. | 1:11-cv-00451 <br> W.D. Tex. Austin Division <br> Three Judge Court: Yeakel, Smith, Garcia |
| Morris v. State of Texas, et al. | 11-cv-2244 <br> S.D. Tex. Houston Division <br> (Judge Rosenthal) |
| Quesada, et al. v. Rick Perry and Hope Andrade | 11-cv-592 <br> W.D. Texas. San Antonio Division <br> (Judge Garcia) |

## Section 51.27(p) - Prior Preclearance

The State's benchmark congressional plan was ordered by a three-judge court in the United States District Court for the Eastern District of Texas on August 4, 2006. The district court's order was predicated on the United States Supreme Court's decision in *League of United Latin American Citizens v. Perry,* 548 U.S. 399 (2006). A copy of the Court's opinion may be found at http://www.tlc.state.tx.us/redist/pdf/LulacvPerryOpinion.pdf.

## Section 51.28 (a) (b) and (d) – Demographic Information, Maps and Election Returns (Attachment 3)

1. **Election Data** folder – Same election data is used for all plan types – provided once
   a. Zipped files for each of the last five election cycles; returns, voter registration (VR), and turnout (TO) by County/ VTD.
      i. **2002_Election.zip**
         (1) ***2002_Democratic_Primary_Election_Returns.csv***
         (2) ***2002_Democratic_Primary_Election_VRTO.csv***
         (3) ***2002_Democratic_Runoff_Election_Returns.csv***
         (4) ***2002_Democratic_ Runoff _Election_ VRTO.csv***
         (5) ***2002_Republican_Primary_Election_Returns.csv***
         (6) ***2002_Republican_Primary_Election _ VRTO.csv***
         (7) ***2002_Republican _Runoff_Election_Returns.csv***
         (8) ***2002_Republican _Runoff_Election_ VRTO.csv***
         (9) ***2002_General_Election_Returns.csv***
         (10) ***2002_General_Election_ VRTO.csv***
         (11) ***readme.txt***
      ii. **2004_Election.zip** - contains same reports as in 2002_Election.zip
      iii. **2006_Election.zip** - contains same reports as in 2002_Election.zip; also includes the special general and runoff for the court-ordered congressional districts.
      iv. **2008_Election.zip** - contains same reports as in 2002_Election.zip
      v. **2010_Election.zip** - contains same reports as in 2002_Election.zip
2. **PlanC100** folder

   a. **PlanC100 Reports** folder
      i. **2002_Election** folder
         (1) ***2002_Democratic_Primary_ RED225 .pdf*** and ***.xls***
         (2) ***2002_Democratic_Runoff_ RED225 .pdf*** and ***.xls***
         (3) ***2002_Republican_Primary_ RED225 .pdf*** and ***.xls***
         (4) ***2002_Republican _Runoff _ RED225 .pdf*** and ***.xls***
         (5) ***2002_General_Election_ RED225 .pdf*** and ***.xls***
      ii. **2004_Election** folder- contains same reports as in 2002_Election folder
      iii. **2006_Election** folder - contains same reports as in 2002_Election folder; also includes the special general and runoff for the court-ordered congressional districts.
      iv. **2008_Election** folder - contains same reports as in 2002_Election folder
      v. **2010_Election** folder - contains same reports as in 2002_Election folder
      vi. ***VTD level VR_SSVR_TO (RED 216.pdf*** and ***.xls)*** - includes voter registration, Spanish surname voter registration, and turnout by district and VTD for the 2010 gubernatorial election
      vii. ***ACS HCVAP Special Tab(RED 106)*** - Citizen Voting Age Population) (HCVAP) from the 2005-2009 ACS (DOJ Special Tabulation)
      viii. ***District Population Analysis with Counties (RED 100)*** – contains plan deviation statistics and verification information and district population data
      ix. ***Population and Voter Data (RED 202)***
      x. ***Incumbents (RED 350)***

7

          xi.     **Compactness Analysis (RED 315)**
          xii.    **Split Cities by District (RED 130)**

   b.    **PlanC100 Maps** folder -- 28 CFR Sec. 51.28(b)1-6
          i.      Maps of state and split counties with districts
          ii.     n/a
          iii.    Maps of split counties with racial/ethnic shading by VTD
          iii.    Maps of split counties with Spanish Surname voter registration by VTD
          iv.    Maps of split counties with natural boundaries and geographic features
          iv.    Maps of split counties with cities
          v.     n/a
          vi.    n/a

3.    **PlanC185** folder - same as **PlanC100** folder

4.    **Shapefiles** folder
   a.    Shapefiles of all 54 public Texas Congressional plans
   b.    **blk.zip**--block equivalency file (.csv) for PlanC100 and PlanC185

5.    **Two Plan Comparison Reports**
   a.    Two Plan by Incumbent (RED 335)
   b.    Plan Overlap Analysis (RED 340)

## Section 51.28(f) - Publicity and Participation

The Texas Legislature began the process of developing and debating the U.S. House of Representatives plan almost a year before the map was finally passed and signed into law. The Texas House of Representatives and the Texas Senate conducted numerous hearings throughout the State during the legislative interim period that preceded the 82nd Legislative Session. In the House of Representatives, hearings were conducted by both the House Committee on Redistricting and the House Committee on Judiciary and Civil Jurisprudence. The date and city where each public hearing was held are detailed in the following list:

| | |
|---|---|
| 6/2/2010 | Joint Hearing: House Redistricting and House Judiciary and Civil Jurisprudence **(Austin)** |
| 6/21/2010 | Joint Hearing: House Redistricting Subcommittee on **San Antonio** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/19/2010 | Joint Hearing: House Redistricting Subcommittee on **McAllen** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/20/2010 | Joint Hearing: House Redistricting Subcommittee on **Laredo** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/21/2010 | Joint Hearing: House Redistricting Subcommittee on **Corpus Christi** Redistricting and House Judiciary and Civil Jurisprudence |

8

| 8/16/2010 | Joint Hearing: House Redistricting Subcommittee on **El Paso** Redistricting and House Judiciary and Civil Jurisprudence |
| 8/18/2010 | Joint Hearing: House Redistricting Subcommittee on **Lubbock** Redistricting and House Judiciary and Civil Jurisprudence |
| 9/20/2010 | Joint Hearing: House Redistricting, House Judiciary and Civil Jurisprudence Subcommittee on **Dallas** Redistricting and Senate Select Committee on Redistricting |
| 9/21/2010 | Joint Hearing: House Redistricting Subcommittee on **Tarrant County** Redistricting, House Judiciary and Civil Jurisprudence |
| 9/22/2010 | Joint Hearing: House Redistricting Subcommittee on **Richardson/UT-Dallas** Redistricting and House Judiciary and Civil Jurisprudence |
| 10/18/2010 | Joint Hearing: House Redistricting Subcommittee on **Beaumont** Redistricting and House Judiciary and Civil Jurisprudence |
| 10/20/2010 | Joint Hearing: House Redistricting Subcommittee on **Marshall** Redistricting and House Judiciary and Civil Jurisprudence |
| 11/17/2010 | House Redistricting Subcommittee on **Austin** Redistricting |
| 11/20/2010 | Joint Hearing: Subcommittee of Judiciary and Civil Jurisprudence and Senate Select Committee on Redistricting (**Houston**) |

**In** the Texas Senate, hearings were conducted by the Senate Select Committee on Redistricting:

| 9/1/2010 | **Austin** |
| 9/20/2010 | Joint Hearing: House Redistricting, House Judiciary and Civil Jurisprudence Subcommittee on Downtown **Dallas** Redistricting and Senate Select Committee on Redistricting |
| 10/4/2010 | **Amarillo** |
| 10/5/2010 | **Midland** |
| 10/21/2010 | **Edinburg** |
| 11/4/2010 | **San Antonio** |
| 11/20/2010 | Joint Hearing: Subcommittee of Judiciary and Civil Jurisprudence and Senate Select Committee on Redistricting (**Houston**) |

Members of the public were not limited to speaking on any particular map during the interim hearings. Prior to each interim hearing, the Senate Select Committee on Redistricting notified elected officials in the area and encouraged them to widely disseminate information about the hearing. The committee office has retained the notification e-mails that were sent. Once the Texas Legislature began the redistricting process by holding interim hearings, the House Committee on Redistricting created an e-mail contact database to notify interested members of the public about upcoming legislative hearings. That database, which ultimately included over 200 community leaders, advocacy groups, and election officials, fostered public participation by ensuring interested parties received regular communications about the redistricting process throughout the legislative session.

9

During each House interim hearing, it was announced that the public record on the hearings would remain open until December, 2010, in order to give the public ample time to provide written comments to the committees.

Pursuant to House and Senate rules, every legislative hearing notice, redistricting plan submitted by members of the public, and proposed amendments to redistricting maps were posted on the Texas Legislative Council's redistricting website, www.tlc.state.tx.us/redist/redist.html. All public plans were accessible through DistrictViewer.[7] The Texas Legislative Council also maintained two RedAppl[8] terminals which were available for public use during normal business hours.

The Texas Legislature could not begin the map drawing process until the U.S. Census Bureau released block-level population data to Texas on February 17, 2011. During the regular session, the House Committee on Redistricting conducted a public hearing to solicit input from the public on congressional redistricting. That hearing was held on April 7, 2011. As explained above, the 82nd Legislature adjourned on May 30, 2011 without passing legislation reapportioning the United States House of Representatives districts. On May 31, 2011, the Governor called a special session. Shortly thereafter, congressional redistricting was added to the list of initiatives eligible for consideration by the Legislature during the special session.

Senator Kel Seliger and Representative Burt Solomons jointly released a public plan (C125) on May 30, 2011.

The Senate Select Committee on Redistricting held a public hearing on June 3 to consider congressional redistricting plan C125. Later that day, after hearing testimony from interested members of the public, the Plan was voted out of committee. The full Senate considered the Plan on June 6 and passed it the same day with 18 ayes and 12 nays.

The House Committee on Redistricting held a public hearing on June 2, 2011 to consider C125. After the Senate passed the Plan on June 6, 2011, the House Redistricting Committee considered the Senate Bill on June 9, 2011. During that hearing, the House Redistricting Committee considered and adopted amendments to the Senate Bill before voting the State's proposed plan out of committee. On June 14, 2011, the House of Representatives set the bill on the calendar and passed it to engrossment. The vote on second reading was 93 ayes and 48 nays. The following day, June 15, 2011, the House of Representatives passed the Plan on third reading with a vote

---

[7] DistrictViewer is the Texas Legislative Council's Internet-based application that interactively displays all public maps and reports. It is available to anyone with Internet access and includes access to all benchmark plans, as well.
[8] RedAppl is the Texas Legislative Council's district modeling software. It was installed in legislators' offices as well as in public terminals in the Texas Legislative Council's offices.

of 93 ayes and 47 nays. The full Senate voted on June 20, 2011 to concur with the changes made to the Plan by the House of Representatives and send it to the Governor for signature.

Notice for all hearings was provided in compliance with the Rules of the Texas House of Representatives and the Texas Senate. The following links include hearing notices, minutes, and witness lists for each of the hearings on the Plan:

<div align="center">

House Redistricting Committee Hearings

Hearing on April 7

</div>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011040709001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011040709001.PDF
Witness List
http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C0802011040709001.PDF

<div align="center">

Hearing on June 2

</div>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011060210451.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011060210451.PDF
Witness List
http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C0802011060210451.PDF

<div align="center">

Hearing on June 9

</div>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011060909001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011060909001.PDF

<div align="center">

Senate Select Committee on Redistricting

Hearing on June 3

</div>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C6252011060309001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C6252011060309001.PDF
Witness List
http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C6252011060309001.PDF

## 51.28(g)(1) – Public Availability of Submission

On July 19, 2011, the Attorney General issued a press release informing the public that the State filed a declaratory judgment action seeking preclearance of the Plan from the United States District Court for the District of Columbia. The State's press release also announced that this informal submission was provided to DOJ. A copy of that press release can be found online at www.texasattorneygeneral.gov. Members of the public

were informed that they may provide comment by contacting the Office of the Attorney General via e-mail at redistricting@oag.state.tx.us or via telephone at (800)252-8011.

## 51.28(g)(2) – Electronic Availability of Data

The Attorney General has made the data included in this submission available on the OAG's website at www.texasattorneygeneral.gov.

## 51.28(h) – Minority Group Contacts

The following individuals reside in the State of Texas and are familiar with the proposed change and were active in the political process by which the Plan was adopted:

Nina Perales
Mexican American Legal Defense and Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Luis Figueroa
Mexican American Legal Defense and Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Gary Bledsoe
Texas NAACP
1107 E. 11th Street, Suite A
Austin, Texas 78702
(512) 322-9547

The Honorable Mike Villarreal
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0532

The Honorable Stefanie Carter
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0454

The Honorable Eric Johnson
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0586

The Honorable Ruth Jones McClendon
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0708

The Honorable Ryan Guillen
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0416

The Honorable Aaron Peña
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0426

The Honorable Mario Gallegos, Jr.
Texas Senate
P.O. Box 12068
Austin, Texas 78711
(512) 463-0106

The Honorable Carlos Uresti
Texas Senate
P.O. Box 12068
Austin, Texas 78711
(512) 463-0119

13

# State of Texas
# Informal Submission
## Act of May 23, 2011, 82nd Leg., R.S., S.B. 31
## Texas State Senate

This document outlines the information provided in the State of Texas' informal submission of S.B. 31 (the "Plan") to the Department of Justice. While this is not a formal submission, the State of Texas is nonetheless providing all information which would normally be contained in a submission pursuant to 28 C.F.R. §§ 51.27 and 51.28. This document either provides the information requested or references the relevant attachment where the information is located.

## Section 51.27 (a) – Copy of Plan

A copy of the Plan may be found online at
http://gis1.tlc.state.tx.us/download/Senate/PLANS148.pdf and is included as **Attachment 1.**

## Section 51.27(b) – Copy of Plan Currently in Effect

A copy of the current State Senate districts can be found online at http://gis1.tlc.state.tx.us/download/Senate/PLANS100.pdf and is included as **Attachment 2.** The Texas Senate's preexisting redistricting plan is referred to herein as "benchmark plan" or "S100" in the electronic reports.

## Section 51.27(c) – Statement of Change Requested

The Plan makes changes to all 31 of Texas' state senatorial boundaries. Reports and maps have been included in the submission and detail those changes.

## Section 51.27(d) – Person Submitting Change

Greg Abbott
Texas Attorney General
209 W. 14th Street
Austin, Texas 78701
(512) 463-2191 - office
(512) 936-0545 - fax
greg.abbott@oag.state.tx.us

## Section 51.27(e) and (f): Not applicable

1

## Section 51.27(g) – Body Responsible for Change

The body responsible for passing the Plan was the 82nd Texas Legislature.

## Section 51.27(h) – Statutory Authority for Change

Article 3, section 28 of the Texas Constitution directs the Legislature to reapportion the State's senatorial districts in the first regular session that convenes after the U.S. Census Bureau publishes decennial census data. Pursuant to that authority, the Texas Legislature introduced and passed the Plan. A more detailed discussion of the process the Legislature undertook can be found in **Section 51.28(f)**

## Section 51.27(i) and (j) – Date Change Adopted and Effective Date of Change

The Plan became law on June 17, 2011 and will become effective on August 29, 2011.

## Section 51.27(k) – Statement Regarding Implementation

The Plan has not been implemented.

## Section 51.27(l) – Affected Jurisdiction

The Plan affects the entire jurisdiction of the State of Texas.

## Section 51.27 (m) and (n) – Reason for and Effect of Change

### Background

The Texas Senate is divided into 31 districts. Based on the State's population of 25,145,561, Senate districts with perfectly equalized population would each contain 811,147 residents. Because of divergent population growth in various regions of the State, the benchmark plan currently has an overall population deviation of 46.1%. The Texas Senate district that experienced the most growth currently exceeds the ideal population by 203,880, while the most under populated district is 170,140 under the ideal population. This high variation necessitated the redrawing of the State Senate boundaries. The Plan has an overall population deviation of 8.04%, which is less than the 9.71% deviation that occurred after redistricting in 2001. The most populated state senate district, District 3, exceeds the ideal population by 4.00%. The least populated, District 28, is 4.04% under the ideal population.

2

The Legislature's stated goals during the redistricting process were to equalize population among districts and produce a fair and legal map.[1] The Plan adopted by the Legislature fully complies with all applicable state and federal laws and neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. The Plan does not retrogress racial or language minorities' ability to effectively exercise their electoral franchise.

## Statewide Impact on Minority Voters

On a statewide level, the proposed Plan avoids retrogression of minority voting rights. Both the benchmark map and the Plan contain seven Senate districts (Districts 6, 19, 20, 21, 26, 27 and 29) where Hispanic Voting Age Population ("HVAP") is greater than 60%. Similarly, both the benchmark and the newly enacted maps have two Senate districts (Districts 13 and 23) where Black Voting Age Population ("BVAP") exceeds 40%. Election data indicate that, under the Plan, these districts will continue to elect the minority voters' candidates of choice. Eight of these nine minority districts in the benchmark plan are currently under populated. Only District 20 is over populated. The combined population shortfall of these minority Senate districts was 580,252. Despite the difficulties associated with those districts' under population, the Texas Legislature managed to largely maintain the demographic metrics within these districts.

**South Texas.** Districts 20 and 27 remained largely unchanged between the benchmark and the Plan. District 21 was under populated by almost 60,000 residents and therefore needed additional population. In order to add the necessary population, District 21 was extended north. In the resulting district, Hispanic voters will be able to continue electing their candidate of choice. In fact, their voting strength has been increased.

**Harris County.** Under the benchmark plan, Harris County's Senate districts were both heavily under and over populated. District 6 had to gain almost 170,000 new residents. This was accomplished while both retaining the district wholly within Harris County and maintaining the District's Spanish Surname Voter Registration ("SSVR")[2] at 50.5%. District 13 was under populated by over 80,000 residents. Nonetheless, the Legislature

---

[1] *See* http://www.journals.senate.state.tx.us/sjrnl/82R/pdf/82RSJ05-17-FA.pdf.

[2] According to the Texas Legislative Council's website:

> Spanish surname voter registration, also reported in the secretary of state's Statewide Voter Database, is generated using a comparison to the 2000 Census Bureau List of Spanish Surnames. While most sources agree that the match between people who have Spanish surnames and those who consider themselves Hispanic is relatively good in Texas (the Census Bureau estimates a 90 percent correlation for the state), the reported number of registered voters with Spanish surnames is not a precise measure of Hispanic voter registration. Some people who consider themselves Hispanic do not have surnames that are included in the Spanish surname file and will be missed by the Spanish surname matching technique. Others, who have surnames that are included in the Spanish surname file but do not consider themselves Hispanic, will be incorrectly counted as Hispanic registered voters.

http://www.tlc.state.tx.us/redist/pdf/Data_2011_Redistricting.pdf.

was able to populate District 13 within .3% of the ideal population and still increase the BVAP from 43.2% to 44.3%.

## Section 51.27(o) Pending Litigation

The following litigation involving the state's newly enacted redistricting plans is currently pending:

| Name | Cause No. & Venue |
|---|---|
| *Consolidated:*<br>*Perez, et al. v. State of Texas, et al;*<br>*Texas Latino Redistricting Task Force, et al. v. Perry,*<br>*et al; MALC v. State of Texas, et al.* | SA-11-CA-360-OLG-JES-XR<br>W.D. Tex. San Antonio<br>Three Judge Court: Garcia, Smith, Rodriguez |
| *Teuber v. State of Texas, et al.* | SA-11-CA-0572-OLG-JES-XR<br>W.D. Tex. San Antonio<br>Three Judge Court: Garcia, Smith, Rodriguez |
| *Teuber v. State of Texas, et al.* | CV-11-0270<br>397th District Court, Grayson County, Texas |
| *MALC v. State of Texas, et al.* | No. 7:11-cv-144<br>S.D. Texas - McAllen Division (Judge Crane) |
| *Barton et al. v. State of Texas & Hope Andrade* | 11-20238-CV<br>13th District Court, Navarro County, Texas |
| *Barton et al. v. State of Texas & Hope Andrade* | 11-20263-CV<br>13th District Court, Navarro County, Texas |
| *Washburn v. State of Texas & Hope Andrade* | Cause No. CV 110921; 397th District Court, Grayson County, Texas |
| *Washburn v. State of Texas & Hope Andrade* | Cause No. CV 110931; 397th District Court, Grayson County, Texas |

| John "Canica" Limon, et al. v. Rick Perry, et al. | D-1-GN-11-001611<br>351st Judicial District Court, Travis County, Texas |
|---|---|
| Bianca Garcia, et al. v. Rick Perry, et al. | D-1-GN-11-001612<br>419th Judicial District Court, Travis County, Texas |
| Rodriguez, et al. v. State of Texas, et al. | 111-cv-00451<br>W.D. Tex. Austin Division<br>Three Judge Court, Yeakel Smith, Garcia |
| Morris v. State of Texas, et al. | 11-cv-2244<br>S.D. Tex. Houston Division<br>(Judge Rosenthal) |
| Quesada, et al. v. Rick Perry and Hope Andrade | 11-cv-592<br>W.D. Texas. San Antonio Division<br>(Judge Garcia) |

## Section 51.27(p) Prior Preclearance

The benchmark state senate plan was submitted to the Department of Justice for preclearance in 2001. The DOJ precleared the 2001 State senate map without objection.

## Section 51.28 (a) (b) and (d) - Demographic Information, Maps and Election Returns (Attachment 3)

1. **Election Data** folder – Same election data is used for all plan types – provided once
   a. Zipped files for each of the last five election cycles; returns, voter registration (VR), and turnout (TO) by County/ VTD.
      i. **2002_Election.zip**
         (1) **2002_Democratic_Primary_Election_Returns.csv**
         (2) **2002_Democratic_Primary_Election_VRTO.csv**
         (3) **2002_Democratic_Runoff_Election_Returns.csv**
         (4) **2002_Democratic_ Runoff_Election_ VRTO.csv**
         (5) **2002_Republican_Primary_Election_Returns.csv**
         (6) **2002_Republican_Primary_Election _ VRTO.csv**
         (7) **2002_Republican _Runoff_Election_Returns.csv**
         (8) **2002_Republican _Runoff_Election_ VRTO.csv**
         (9) **2002_General_Election_Returns.csv**
         (10) **2002_General_Election_ VRTO.csv**
         (11) **readme.txt**

5

           ii.     **2004_Election.zip** - contains same reports as in 2002_Election.zip

           iii.    **2006_Election.zip** - contains same reports as in 2002_Election.zip; also includes the special general and runoff for the court-ordered Congressional districts.

           iv.    **2008_Election.zip** - contains same reports as in 2002_Election.zip

           v.    **2010_Election.zip** - contains same reports as in 2002_Election.zip

2.    **PlanS100** folder

    a.    **PlanS100 Reports** folder
        i.    **2002_Election** folder
           (1)    *2002_Democratic_Primary_RED225 .pdf* and *.xls*
           (2)    *2002_Democratic_Runoff_ RED225 .pdf* and *.xls*
           (3)    *2002_Republican_Primary_ RED225 .pdf* and *.xls*
           (4)    *2002_Republican _Runoff_ RED225 .pdf* and *.xls*
           (5)    *2002_General_Election_ RED225 .pdf* and *.xls*
        ii.    **2004_Election** folder- contains same reports as in 2002_Election folder
        iii.    **2006_Election** folder - contains same reports as in 2002_Election folder; also includes the special general and runoff for the court-ordered Congressional districts.
        iv.    **2008_Election** folder - contains same reports as in 2002_Election folder
        v.    **2010_Election** folder - contains same reports as in 2002_Election folder
        vi.    *VTD level VR_SSVR_TO (RED 216.pdf* and *.xls)* - includes voter registration, Spanish surname voter registration, and turnout by district and VTD for the 2010 gubernatorial election
        vii.    *ACS HCVAP Special Tab(RED 106)* - Citizen Voting Age Population) (HCVAP) from the 2005-2009 ACS (DOJ Special Tabulation)
        viii.    *District Population Analysis with Counties (RED 100)* – contains plan deviation statistics and verification information and district population data
        ix.    *Population and Voter Data (RED 202)*
        x.    *Incumbents (RED 350)*
        xi.    *Compactness Analysis (RED 315)*
        xii.    *Split Cities by District (RED 130)*

    b.    **PlanS100 Maps** folder -- 28 CFR Sec. 51.28(b)1-6
        i.    Maps of state and split counties with districts
        ii.    n/a
        iii.    Maps of split counties with racial/ethnic shading by VTD
        iii.    Maps of split counties with Spanish Surname voter registration by VTD
        iv.    Maps of split counties with natural boundaries and geographic features
        iv.    Maps of split counties with cities
        v.    n/a
        vi.    n/a

3.    **PlanS148** folder - same as **PlanS100** folder
4.    **Shapefiles** folder
    a.    Shapefiles of all 32 public Texas Senate plans

6

b.    **blk.zip**--block equivalency file (.csv) for PlanS100 and PlanS148

5.    **Two Plan Comparison Reports**

a.    Two Plan by Incumbent (RED 335)

b.    Plan Overlap Analysis (RED 340)

## **Section 51.28(f) Publicity and Participation**

The Texas Legislature began the process of developing and debating the Texas Senate Plan almost a year before the map was finally passed and signed into law. The Texas House of Representatives and the Texas Senate conducted numerous hearings throughout the state during the legislative interim period that preceded the 82nd Legislative Session. In the House of Representatives, hearings were conducted by both the House Committee on Redistricting and the House Committee on Judiciary and Civil Jurisprudence. The date and city where each public hearing was held are detailed in the following list:

| | |
|---|---|
| 6/2/2010 | Joint Hearing: House Redistricting and House Judiciary and Civil Jurisprudence **(Austin)** |
| 6/21/2010 | Joint Hearing: House Redistricting Subcommittee on **San Antonio** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/19/2010 | Joint Hearing: House Redistricting Subcommittee on **McAllen** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/20/2010 | Joint Hearing: House Redistricting Subcommittee on **Laredo** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/21/2010 | Joint Hearing: House Redistricting Subcommittee on **Corpus** Christi Redistricting and House Judiciary and Civil Jurisprudence |
| 8/16/2010 | Joint Hearing: House Redistricting Subcommittee on **El Paso** Redistricting and House Judiciary and Civil Jurisprudence |
| 8/18/2010 | Joint Hearing: House Redistricting Subcommittee on **Lubbock** Redistricting and House Judiciary and Civil Jurisprudence |
| 9/20/2010 | Joint Hearing: House Redistricting, House Judiciary and Civil Jurisprudence Subcommittee on Downtown **Dallas** Redistricting and Senate Select Committee on Redistricting |
| 9/21/2010 | Joint Hearing: House Redistricting Subcommittee on **Tarrant** County Redistricting, House Judiciary and Civil Jurisprudence |
| 9/22/2010 | Joint Hearing: House Redistricting Subcommittee on **Richardson/UT-Dallas** Redistricting and House Judiciary and Civil Jurisprudence |
| 10/18/2010 | Joint Hearing: House Redistricting Subcommittee on **Beaumont** Redistricting and House Judiciary and Civil Jurisprudence |
| 10/20/2010 | Joint Hearing: House Redistricting Subcommittee on **Marshall** Redistricting and House Judiciary and Civil Jurisprudence |
| 11/17/2010 | House Redistricting Subcommittee on **Austin** Redistricting |

| 11/20/2010 | Joint Hearing: Subcommittee of Judiciary and Civil Jurisprudence and Senate Select Committee on Redistricting **(Houston)** |

In the Texas Senate, hearings were conducted by the Senate Select Committee on Redistricting:

| 9/1/2010 | **Austin** |
| 9/20/2010 | Joint Hearing: House Redistricting, House Judiciary and Civil Jurisprudence Subcommittee on **Dallas** Redistricting and Senate Select Committee on Redistricting |
| 10/4/2010 | **Amarillo** |
| 10/5/2010 | **Midland** |
| 10/21/2010 | **Edinburg** |
| 11/4/2010 | **San Antonio** |
| 11/20/2010 | Joint Hearing: Subcommittee of Judiciary and Civil Jurisprudence and Senate Select Committee on Redistricting **(Houston)** |

During the Senate Select Redistricting Committee's hearings in communities across the state, members of the public were not limited to speaking on any particular map proposal. Prior to each interim hearing, the Senate Redistricting Committee notified the elected officials in the area and encouraged them to widely disseminate information about the hearing. The committee office has retained e-mails that were sent notifying local officials about the interim hearings.

Every legislative hearing notice, redistricting plan submitted by members of the public, and proposed amendments to redistricting maps were posted on the Texas Legislative Council's redistricting website, www.tlc.state.tx.us/redist/redist.html, and all public plans and amendments were accessible through DistrictViewer.[3] The Texas Legislative Council also maintained two RedAppl[4] terminals, which were available to the public for their use during normal business hours.

The Texas Legislature could not begin the map-drawing process until the U.S. Census Bureau released block-level population data to Texas on February 17, 2011. The Senate Redistricting Committee conducted proactive outreach with interested parties. Meetings were held with members of the senate, their staff, and outside groups. During the time that elapsed between the Census Bureau's release of Texas' population data and the public posting of the committee's proposed Senate map, Committee Chairman Kel Seliger released his statewide proposal on May 11, 2011 (S107). The Redistricting Committee held public hearings on May 12, 2011 and May 13, 2011. On May 13, 2011, the committee voted out Plan S125.

---

[3] DistrictViewer is the Texas Legislative Council's Internet-based application that interactively displays all public maps and reports. It is available to anyone with Internet access and includes access to all benchmark plans, as well.

[4] RedAppl is the Texas Legislative Council's district modeling software. It was installed in legislators' offices as well as in public terminals in the Texas Legislative Council's offices.

On May 17, 2011, the Senate took up S125 and passed the map by a vote of 29 to 2. Only Sen. Wendy Davis[5] and Sen. Rodney Ellis voted against the map.

Proper notice for all hearings was provided in compliance with the Rules of the Texas House of Representatives and the Texas Senate. The following links include hearing notices, minutes, and witness lists for each of the hearings on the proposed Plan:

### Senate Select Committee on Redistricting
Hearing on May 12, 2011

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C6252011051209001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C6252011051209001.PDF
Witness List
http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C6252011051209001.PDF

Hearing on May 13, 2011

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C6252011051308001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C6252011051308001.PDF

### House Redistricting Committee Hearings
Hearing on May 18, 2011

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011051811001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011051811001.PDF

## 51.28(g)(1) Public Availability of Submission

On July 19, 2011, the Attorney General issued a press release informing the public that the State filed a declaratory judgment action seeking preclearance of the Plan from the United States District Court for the District of Columbia. The State's press release also announced that this informal submission was provided to DOJ. A copy of that press release can be found online at www.texasattorneygeneral.gov. Members of the public

---

[5] Under the benchmark plan, Senate District 22 was under populated and needed to draw excess population from a neighboring county. The northern boundary of District 22 abuts District 10, which is currently represented by Sen. Davis. Because District 22 was under populated, the Plan shifts population from District 10 into District 22. The resulting makeup of District 10 is consistent with the district's historical election performance. When the committee considered how to add population to District 22, it worked to keep communities of interest whole. As a result, District 10 is a more Fort Worth-centric district — an additional 137,402 Fort Worth residents were moved to District 10 — thereby preserving the core of the district within the City of Fort Worth.

were informed that they may provide comment by contacting the Office of the Attorney General via e-mail at redistricting@oag.state.tx.us or via telephone at (800)252-8011.

## 51.28(g)(2) Electronic Availability of Submission

The Attorney General has made the data included in this submission available on the OAG's website at www.texasattorneygeneral.gov.

## 51.28(h) Minority Group Contacts

The following individuals reside in the State of Texas, are familiar with the proposed change, and were active in the political process by which the Plan was adopted:

Nina Perales
Mexican American Legal Defense and
Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Luis Figueroa
Mexican American Legal Defense and
Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Gary Bledsoe
Texas NAACP
1107 E. 11th Street, Suite A
Austin, Texas 78702
(512) 322-9547

The Honorable Mike Villarreal
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0532

The Honorable Stefanie Carter
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0454

The Honorable Eric Johnson
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0586

The Honorable Ruth Jones McClendon
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0708

The Honorable Ryan Guillen
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0416

10

The Honorable Aaron Peña
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0426

The Honorable Mario Gallegos, Jr.
Texas Senate

P.O. Box 12068
Austin, Texas 78711
(512) 463-0106

The Honorable Carlos Uresti
Texas Senate
P.O. Box 12068
Austin, Texas 78711
(512) 463-0119

11

# State of Texas
# Informal Submission
# Act of May 23, 2011, 82nd Leg., R.S., H.B. 150
# Texas House of Representatives

This document outlines the information provided in the State of Texas' informal submission of H.B. 150(the "Plan") to the Department of Justice. While this is not a formal submission, the State of Texas is nonetheless providing all information which would normally be contained in a submission pursuant to 28 C.F.R. §§ 51.27 and 51.28. This document either provides the information requested or references the relevant attachment where the information is located.

## Section 51.27 (a) – Copy of Plan

A copy of the Plan may be found online at http://gis1.tlc.state.tx.us/download/House/PLANH283.pdf and is included as **Attachment 1**.

## Section 51.27(b) – Copy of Plan Currently in Effect

A copy of the current State House of Representatives districts can be found online at http://gis1.tlc.state.tx.us/download/House/PLANH100.pdf and is included as **Attachment 2.** The Texas House of Representatives' preexisting redistricting plan is referred to herein as "benchmark plan" or "H100" in the electronic reports.

## Section 51.27(c) – Statement of Change Requested

The Plan makes changes to all 150 of Texas' State House of Representatives district boundaries. Reports and maps have been included in the submission and detail those changes.

## Section 51.27(d) – Person Submitting Change

Greg Abbott
Texas Attorney General
209 W. 14th Street
Austin, Texas 78701
(512) 463-2191 - office
(512) 936-0545 - fax
greg.abbott@oag.state.tx.us

**Section 51.27(e) and (f)**: Not applicable

## Section 51.27(g) Body Responsible for Change

The body responsible for passing the Plan was the 82nd Texas Legislature.

## Section 51.27(h) – Statutory Authority for Change

Article 3, section 28 of the Texas Constitution directs the Legislature to reapportion the State's House districts in the first regular session that convenes after the U.S. Census Bureau publishes decennial census data. Article 3, section 26 of the Texas Constitution also requires that when a county contains sufficient population to make up one or more whole districts, those districts shall be created entirely within that county. Pursuant to that authority, the Texas Legislature introduced and passed the Plan. A more detailed discussion of the process the Legislature undertook can be found in **Section 51.28(f)**.

## Section 51.27(i) and (j) – Date Change Adopted and Effective Date

The Plan became law on June 17, 2011 and will become effective on August 29, 2011.

## Section 51.27(k) – Statement Regarding Implementation

The Plan has not been implemented.

## Section 51.27(l) – Affected Jurisdiction

The Plan affects the entire jurisdiction of the State of Texas.

## Section 51.27 (m) and (n) – Reason for and Effect of Change

### Background

The Texas House of Representatives is divided into 150 districts. Based on the State's population of 25,145,561, House districts with perfectly equalized population would each contain 167,637 residents. Population shifts over the last decade have resulted in wide variations among the House districts in the benchmark plan, with the largest district, District 70, at 79.4% over the ideal population. The smallest district, District 103, is 30.0% under the ideal population.

The Legislature's stated goals[1] were to equalize population, abide by the state constitutional requirement that preserves county lines,[2] avoid pairing incumbents when

---

[1] *See* http://www.journals.house.state.tx.us/hjrnl/82R/pdf/82RDAY63SUPPLEMENT.pdf.
[2] *See* TEX. CONST. art. 3, § 26.

possible, respond to the public and advocacy groups when appropriate, and maintain communities of interest. All of these goals were accomplished in the Plan that ultimately passed the Legislature and was signed into law.

The Plan adopted by the Legislature is in compliance with all applicable state and federal laws and neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. The Plan does not retrogress racial or language minorities' ability to effectively exercise their electoral franchise.

In the Plan, the districts have an overall population deviation of 9.92%, with the smallest district 4.9% under the ideal population and the largest district 5.02% over the ideal population.

In response to population shifts within the state, the Legislature created seven new districts in high-growth areas and eliminated seven districts in areas with slowing or negative growth. These population shifts resulted in the pairing of incumbents. In order to give each paired member of the House a fair chance at re-election, the unavoidable pairings in the Plan all involve House members of the same party (*i.e.,* 6 pairings were Republican-Republican and one was Democrat-Democrat).

Throughout the legislative process, the author of H.B. 150 made numerous comments from the floor of the House of Representatives urging members from various regions of the State to work together to produce regional "member-driven maps," which could be incorporated into the larger statewide map.

## **Statewide Impact on Minority Voters**

The makeup of the Hispanic population in Texas complicates the traditional analysis of what constitutes a "performing minority district." The American Community Survey's estimates indicate that roughly 11% of the State's residents are non-citizens.[3] As a result, a majority-Hispanic House district, particularly in urban areas with extremely high concentrations of non-citizen Hispanics, will not necessarily elect the Hispanic community's candidate of choice on a consistent basis. This is the case because a majority Hispanic Voting Age Population in these districts includes individuals who are not eligible to vote. Likewise, Hispanic citizens of voting age within a district may not register to vote in the same concentrations as non-Hispanic white and African American citizens. Accordingly, merely populating a district with 50% HVAP is an inadequate basis upon which to expect that the district will elect the Hispanic community's candidate of choice. As a result, for the purpose of determining retrogression or creating

---

[3] *See* http://factfinder.census.gov/servlet/ADPTable?_bm=y&-geo_id=04000US48&-context=adp&-ds_name=ACS_2009_1YR_G00_&-tree_id=309&-_lang=en&-_caller=geoselect&-format=.

3

replacement districts, the Legislature regarded 50% HVAP as an inadequate basis to determine the Hispanic community's ability to elect its candidate of choice.

Guidance provided by the Department of Justice ("DOJ" or the "Department") indicates that "the Attorney General does not rely on any predetermined or fixed demographic percentages at any point in the assessment."[4] Nevertheless, some critics of the Plan take an overly simplistic, and frankly incorrect, view of the term "retrogression." These critics incorrectly claim that the fact that the Plan contains two fewer districts at the 50% HVAP level as compared to the benchmark is in and of itself retrogressive. However, due to the high percentage of non-citizens, coupled with disparate voting patterns, a higher, 60% HVAP threshold — in conjunction with reviewing HCVAP,[5] SSVR,[6] and the district's actual electoral performance — is a more appropriate standard under which to review Texas' districts for compliance with Section 5.

Even if the 50% HVAP threshold were adopted as an inflexible standard, the loss of two districts at the 50% level would not constitute retrogression when those specific districts are analyzed. Those districts (District 144 and District 33) are specifically addressed within the analysis below.

The State's 2001 Section 5 submission to DOJ for state House districts noted that the African American population had grown less rapidly than the population of other racial and ethnic groups within the state. This slower-growth trend continued to hold true over the last decade. In 2011, the Legislature faced a substantial challenge maintaining the Black Voting Age Population (BVAP) in the 11 benchmark districts. All but 2 of the

---

[4] Guidance Concerning Redistricting under Section 5 of the Voting Rights Act, 76 Fed. Reg. 7470 (Feb. 8, 2011).
[5] The Fifth Circuit has unequivocally held that HCVAP is the population base that should be considered to determine whether a minority group satisfies the first *Gingles* requirement in a vote dilution claim. *See Campos v. City of Houston*, 113 F.3d 544, 548 (5th Cir. 1997) ("We hold that courts evaluating vote dilution claims under section 2 of the Voting Rights Act must consider the citizen voting-age population of the group challenging the electoral practice when determining whether the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district."); *see also Session v. Perry*, 298 F. Supp. 2d 451, 494 n.133 (E.D. Tex. 2004) ("This circuit, along with every other circuit to consider the question, has concluded that the relevant voting population for Hispanics is citizen voting age population."), *reversed on other grounds, LULAC v. Perry*, 548 U.S. 399, 429 (2006) (commenting (but not holding) in dicta that using HCVAP to determine Hispanic electoral opportunity "fits the language of § 2 because only eligible voters affect a group's opportunity to elect candidates"). For information about how the State of Texas calculates HCVAP, please see the Texas Legislative Council's website: http://www.tlc.state.tx.us/redist/pdf/CitizenshipAddendum.pdf.
[6] According to the Texas Legislative Council:

> Spanish surname voter registration, also reported in the secretary of state's Statewide Voter Database, is generated using a comparison to the 2000 Census Bureau List of Spanish Surnames. While most sources agree that the match between people who have Spanish surnames and those who consider themselves Hispanic is relatively good in Texas (the Census Bureau estimates a 90 percent correlation for the state), the reported number of registered voters with Spanish surnames is not a precise measure of Hispanic voter registration. Some people who consider themselves Hispanic do not have surnames that are included in the Spanish surname file and will be missed by the Spanish surname matching technique. Others, who have surnames that are included in the Spanish surname file but do not consider themselves Hispanic, will be incorrectly counted as Hispanic registered voters.

http://www.tlc.state.tx.us/redist/pdf/Data_2011_Redistricting.pdf.

4

11 benchmark districts with a BVAP over 40% were under populated. The Legislature maintained those districts and actually increased — by one — the number of districts with a BVAP over 40%. Statistical studies demonstrate that the African American population tends to register to vote in higher percentages and turn out to vote at a higher rate than the Hispanic population.[7] A district with approximately 40% BVAP historically will elect the African-American community's candidate of choice.

Statewide, the comparison between the benchmark and the Plan shows the following number of districts:

|  | BENCHMARK | HB 150 |
|---|---|---|
| HVAP (greater than 60%) | 30 | 30 |
| HCVAP (greater than 50%) | 30 | 30 |
| SSVR (greater than 50%) | 29 | 30 |
| BVAP (greater than 40%) | 11 | 12 |

Neither Hispanic nor Black voting strength retrogresses in the Plan.

### Regional Impact on Minority Communities

**South and West Texas.** El Paso County is apportioned 5 districts in the Plan. The high concentration of Hispanic residents results in districts with unavoidably high levels of HVAP. All 5 El Paso districts in both the benchmark and the Plan are populated with over 60% HVAP.

The same situation exists in Hidalgo County. Hidalgo County is entitled to 4+ districts (four districts wholly contained within the county plus excess population shared with a neighboring county). The districts in Hidalgo County all contain over 75% HVAP in both the benchmark and the Plan. HCVAP and SSVR numbers are also generally high in that area.

---

[7] "[T]he Latino population suffers from participation rates lower than those of non-Hispanic black and white populations, in terms of both voter registration and election day turnout. While turnout rates among Hispanics are lower than those among whites and blacks, low registration rates among eligible voters pose the biggest problem. Only 58% of eligible Latino voters were registered to vote in 2004, compared to 75% of whites and 69% of blacks. Experts attribute these low participation rates to the fact that, like African-Americans, Hispanics are disproportionately young, less educated, and less affluent— all attributes that traditionally dampen political participation. For Hispanics, these factors are exacerbated by language barriers. The combined effect of low voter eligibility and participation is devastating: Only 18% of all Hispanics voted in 2004, compared to 51% of whites and 39% of blacks, and Hispanics only contributed 6% of all the ballots cast on election day." Alvaro Bedoya, Note, *The Unforeseen Effects of Georgia v. Ashcroft on the Latino Community*, 115 YALE L.J. 2112, 2128-29 (2006).

5

**Nueces County.** In 2001, Nueces County was apportioned 2 seats wholly contained within the county and a portion of a third district. According to the 2010 census, Nueces County grew at a substantially slower rate than the state as a whole, and the county's population of 340,223 no longer entitles it to more than 2 districts.[8] As a result, the portion of the county contained in the third district needed to be redistributed into the two remaining Nueces County districts. This loss of one state representative seat necessarily caused the pairing of two incumbents. The paired incumbents are Representative Raul Torres (R) in District 33 and Representative Connie Scott (R) in District 34. Nueces County now has two districts, both of which are wholly contained within its boundaries – Districts 34 and 32. Pursuant to the requirements in article 3, section 26 of the Texas Constitution, the Legislature adhered whenever possible to the Texas constitutional requirement that county lines should be preserved. In this case, adding a third district to Nueces County would have broken county lines in violation of the state constitutional rule.

Under the Plan, the Legislature strengthened Hispanic voters' influence in one of Nueces County's two remaining districts. Under the benchmark plan, neither District 32, District 33, nor District 34 was consistently electing Hispanic voters' candidate of choice. Election data indicate that District 34 will now consistently elect the Hispanic community's candidate of choice.

Nueces County as a whole contains 36.7% Anglo VAP and 56.8% HVAP. No map was publicly submitted to the Legislature that drew two performing Hispanic districts without violating the county line rule mandated by article 3, section 26 of the Texas Constitution.[9]

|  | HVAP (BENCHMARK) | HVAP (HB 150) | SSVR (BENCHMARK) | SSVR (HB 150) | HCVAP (BENCHMARK) | HCVAP (HB 150) |
|---|---|---|---|---|---|---|
| Former District 33 | 61.9 | ____ | 55.3 | ____ | 60.5 | ____ |
| District 34 | 61.6 | 67.7 | 53.8 | 60.8 | 58.4 | 64.7 |

---

[8] Dividing Nueces County's population of 340,233 by the ideal district size (167,637) yields the number of seats Nueces County is entitled to: 2.0285. This number was rounded down to two whole districts since the remaining population could easily be distributed among the two districts and keep them within the allowed deviation statewide.
[9] Representative Roberto Alonzo's proposed amendment (Plan H115, H164) achieved two performing districts within Nueces County. However, the Alonzo amendment, which was submitted on behalf of MALDEF, was withdrawn before it was brought to a vote on the House floor. Further, the Alonzo amendment violated the Texas Constitution's county line rule, because it split Nueces County's Anglo population into a third district that exceeded the county's geographical limits. Representative Trey Martinez-Fischer presented a plan on behalf of the Mexican American Legislative Caucus which split Nueces County into 5 legislative districts, also violating the state constitutional county line rule.

| District 32 | 37.2 | 45.9 | 33.2 | 37.3 | 35.3 | 44.2 |
|---|---|---|---|---|---|---|

**Harris County.** Under the benchmark plan, Harris County had 25 House districts. Although Harris County did experience growth between 2000 and 2010, its growth did not keep pace with the rest of the state. Growth in Harris County was 20.3%, while the state as a whole grew at a rate of 20.6%. Based on the U.S. Census Bureau's 2010 population data, Harris County is entitled to either 24 or 25 districts. Dividing Harris County's population of 4,092,459 by the ideal district size (167,637) yields the number of districts Harris County is entitled to: 24.4126. Accordingly, and in compliance with section 26, Article III, of the Texas Constitution (requiring districts be apportioned to large counties based on the federal census "as nearly as may be"), the Legislature chose to apportion 24 House districts to Harris County and create a district elsewhere in the state where population growth was higher. This elimination of a district necessitated the pairing of two incumbents in Harris County.

### Harris County Pairing

| | HVAP (BENCHMARK) | HVAP (HB 150) | SSVR (BENCHMARK) | SSVR (HB 150) | HCVAP (BENCHMARK) | HCVAP (HB 150) |
|---|---|---|---|---|---|---|
| District 137[10] | 59.8 | 55.3 | 22.0 | 24.3 | 25.8 | 26.4 |
| Former District 149[11] | 30.2 | — | 15.9 | — | 19.0 | — |

The Texas Legislature proactively increased minority voting strength in one of Harris County's Hispanic House districts. At the request of the Mexican American Legal Defense and Educational Fund (MALDEF), the Legislature increased both SSVR and HCVAP to over 50% from 40.0% and 42.1%, respectively, in House District 148.[12]

After the House Redistricting Committee passed a proposed statewide redistricting plan, the Harris County delegation offered an amendment during the debate on the House floor that impacted the African American communities in Harris County. Under the amendment, which received bipartisan support from minority and Anglo House

---

[10] Under the benchmark plan, District 137 also contained 13.7% Anglo VAP, 14.6% BVAP, and 13% Other VAP.

[11] Under the benchmark plan, District 149 also contained 26.6% Anglo VAP, 16.2% BVAP and 6.2% Other VAP.

[12] *See Hearing on H.B. 150 Before the House Comm. on Redistricting, 82nd Leg., R.S.* (April 15, 2011). http://www.house.state.tx.us/video-audio/committee-broadcasts/committee-archives/?committee=080&session=82.

members, Black VAP percentage was slightly reduced in two of four performing districts. However, the members of the Harris County delegation agreed to the amendment because it did not negatively affect Black voters' ability to elect their candidate of choice in any district.[13] The following districts were affected:

| District | BVAP (BENCHMARK) | BVAP (HB 150) |
|----------|------------------|---------------|
| 139 | 47.2 | 42.1 |
| 141 | 42.8 | 50.0 |
| 142 | 40.8 | 42.9 |
| 147 | 39.2 | 38.2 |

Finally, under the Plan, one Harris County district (District 144) drops below the 50% HVAP level. Under the benchmark, District 144, which is represented by a Republican, contains 50.3% HVAP. However, the CVAP in the district was 35.1% and the SSVR was 31.5%. The Plan decreases HVAP to 48.5% but does not change the overall characteristics of the district. Election data confirm that House District 144 was not a performing district for Hispanic voters under the benchmark – nor is it under the Plan.

**Dallas County.** Between 2000 and 2010, Dallas County's population only increased by 6.7%, while the state population grew at a rate of 20.6%. Dallas County grew much more slowly than the rest of the state, and equalizing population within each district required that two of the County's House Districts be eliminated. As a result, Dallas County was apportioned 14, rather than 16, districts. Under the benchmark plan, every district in Dallas County except for District 109 was under populated according to the U.S. Census Bureau's 2010 population data. Despite this challenge, the Plan maintains four districts with a BVAP over 40% and two districts with an HVAP over 65%. All four benchmark districts that were paired under the Plan are represented by Republican legislators.

**Tarrant County.** Based on population growth, Tarrant County was apportioned an additional district. As a result, Tarrant County's House delegation rose from 10 to 11 legislators. The Plan contains a new district, District 101, which contains 32.5% HVAP, 27.0% BVAP and 24.6% Anglo VAP.

The House proactively increased minority voting strength in one of Tarrant county's performing Hispanic districts. At the request of MALDEF, the SSVR and HCVAP in District 90 were increased from 47.2% and 48.0%, respectively, to 50.1% SSVR and 49.7% HCVAP.

---

[13] *See* House Journal Supplement, pages S206-S208,
http://www.journals.house.state.tx.us/hjrnl/82R/pdf/82RDAY63SUPPLEMENT.pdf .

## Section 51.27(o) Pending Litigation

The following litigation involving the state's newly enacted redistricting plans is currently pending:

| Name | Cause No. & Venue |
|------|-------------------|
| _Consolidated:_<br>Perez, et al. v. State of Texas, et al.;<br>Texas Latino Redistricting Task Force, et al. v. Perry, et al; MALC v. State of Texas, et al. | SA-11-CA-360-OLG-JES-XR<br>W.D. Tex. San Antonio<br>Three Judge Court: Garcia, Smith, Rodriguez |
| Teuber v. State of Texas, et al. | SA-11-CA-0572-OLG-JES-XR<br>W.D. Tex. San Antonio<br>Three Judge Court: Garcia, Smith, Rodriguez |
| Teuber v. State of Texas, et al. | CV-11-0270<br>397th District Court, Grayson County, Texas |
| MALC v. State of Texas, et al. | No. 7:11-cv-144<br>S.D. Texas - McAllen Division<br>(Judge Crane) |
| Barton et al. v. State of Texas & Hope Andrade | 11-20238-CV<br>13th District Court, Navarro County, Texas |
| Barton et al. v. State of Texas & Hope Andrade | 11-20263-CV<br>13th District Court, Navarro County, Texas |
| Washburn v. State of Texas & Hope Andrade | Cause No. CV 110921; 397th District Court, Grayson County, Texas |
| Washburn v. State of Texas & Hope Andrade | Cause No. CV 110931; 397th District Court, Grayson County, Texas |
| John "Canica" Limon, et al. v. Rick Perry, et al. | D-1-GN-11-001611<br>351st Judicial District Court, Travis County, Texas |

9

| Bianca Garcia, et al. v. Rick Perry, et al. | D-1-GN-11-001612<br>419th Judicial District Court, Travis County, Texas |
|---|---|
| Rodriguez, et al. v. State of Texas, et al. | 1:11-cv-00451<br>W.D. Tex. Austin Division<br>Three Judge Court: Yeakel, Smith, Garcia |
| Morris v. State of Texas, et al. | 11-cv-2244<br>S.D. Tex. Houston Division<br>(Judge Rosenthal) |
| Quesada, et al. v. Rick Perry and Hope Andrade | 11-cv-592<br>W.D. Texas. San Antonio Division<br>(Judge Garcia) |

## Section 51.27(p) – Prior Preclearance

The Texas House of Representatives map that forms the basis of the benchmark plan was submitted to the DOJ for section 5 preclearance in 2001. The Department objected to three House districts. A three-judge court, convened in the United States District Court for the Eastern District of Texas, modified the legislature's state house plan to address DOJ objections. The resulting plan modified and approved by the federal court is the benchmark plan. The court's opinion can be found at http://www.tlc.state.tx.us/redist/pdf/housepc.pdf and the Final Judgment can be found at http://www.tlc.state.tx.us/redist/pdf/finalorderhouse.pdf.

## Section 51.28 (a) (b) and (d) – Demographic Information, Maps and Election Returns (Attachment 3)

1.  **Election Data** folder – Same election data is used for all plan types – provided once
    a.  Zipped files for each of the last five election cycles; returns, voter registration (VR), and turnout (TO) by County/ VTD.
        i.  **2002_Election.zip**
            (1)  ***2002_Democratic_Primary_Election_Returns.csv***
            (2)  ***2002_Democratic_Primary_Election_VRTO.csv***
            (3)  ***2002_Democratic_Runoff_Election_Returns.csv***
            (4)  ***2002_Democratic_ Runoff_Election_ VRTO.csv***
            (5)  ***2002_Republican_Primary_Election_Returns.csv***
            (6)  ***2002_Republican_Primary_Election _ VRTO.csv***
            (7)  ***2002_Republican _Runoff_Election_Returns.csv***
            (8)  ***2002_Republican _Runoff_Election_ VRTO.csv***
            (9)  ***2002_General_Election_Returns.csv***
            (10) ***2002_General_Election_ VRTO.csv***

          (11)    *readme.txt*

     ii.    **2004_Election.zip** - contains same reports as in 2002_Election.zip

     iii.   **2006_Election.zip** - contains same reports as in 2002_Election.zip; also includes the special general and runoff for the court-ordered Congressional districts.

     iv.    **2008_Election.zip** - contains same reports as in 2002_Election.zip

     v.    **2010_Election.zip** - contains same reports as in 2002_Election.zip

2.    **PlanH100** folder

    a.    **PlanH100 Reports** folder
       i.    **2002_Election** folder
          (1)    *2002_Democratic_Primary_RED225 .pdf* and *.xls*
          (2)    *2002_Democratic_Runoff_ RED225 .pdf* and *.xls*
          (3)    *2002_Republican_Primary_ RED225 .pdf* and *.xls*
          (4)    *2002_Republican _Runoff_ RED225 .pdf* and *.xls*
          (5)    *2002_General_Election_ RED225 .pdf* and *.xls*
       ii.    **2004_Election** folder- contains same reports as in 2002_Election folder
       iii.   **2006_Election** folder - contains same reports as in 2002_Election folder; also includes the special general and runoff for the court-ordered Congressional districts.
       iv.    **2008_Election** folder - contains same reports as in 2002_Election folder
       v.    **2010_Election** folder - contains same reports as in 2002_Election folder
       vi.    *VTD level VR_SSVR_TO (RED 216.pdf* and *.xls)* - includes voter registration, Spanish surname voter registration, and turnout by district and VTD for the 2010 gubernatorial election
       vii.   *ACS HCVAP Special Tab(RED 106)* - Citizen Voting Age Population) (HCVAP) from the 2005-2009 ACS (DOJ Special Tabulation)
       viii.  *District Population Analysis with Counties (RED 100)* – contains plan deviation statistics and verification information and district population data
       ix.    *Population and Voter Data (RED 202)*
       x.    *Incumbents (RED 350)*
       xi.    *Compactness Analysis (RED 315)*
       xii.   *Split Cities by District (RED 130)*

    b.    **PlanH100 Maps** folder -- 28 CFR Sec. 51.28(b)1-6
       i.    Maps of state and split counties with districts
       ii.    n/a
       iii.   Maps of split counties with racial/ethnic shading by VTD
       iii.   Maps of split counties with Spanish Surname voter registration by VTD
       iv.    Maps of split counties with natural boundaries and geographic features
       iv.    Maps of split counties with cities
       v.    n/a
       vi.    n/a

3.    **PlanH283** folder - same as **PlanH100** folder

4.    **Shapefiles** folder
    a.    Shapefiles of all 111 public Texas House plans
    b.    *blk.zip*--block equivalency file (.csv) for PlanH100 and PlanH283

5.    **Two Plan Comparison Reports**
    a.    Two Plan by Incumbent (RED 335)

     b.    Plan Overlap Analysis (RED 340)

## **Section 51.28(f) – Publicity and Participation**

The Texas Legislature began the process of developing and debating the Texas House of Representatives Plan almost a year before the map was finally passed and signed into law. The Texas House of Representatives and the Texas Senate conducted numerous hearings throughout the State during the legislative interim period that preceded the 82nd Legislative Session. In the House of Representatives, hearings were conducted by both the House Committee on Redistricting and the House Committee on Judiciary and Civil Jurisprudence. The date and city where each public hearing was held are detailed in the following list:

| | |
|---|---|
| 6/2/2010 | Joint Hearing: House Redistricting and House Judiciary and Civil Jurisprudence **(Austin)** |
| 6/21/2010 | Joint Hearing: House Redistricting Subcommittee on **San Antonio** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/19/2010 | Joint Hearing: House Redistricting Subcommittee on **McAllen** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/20/2010 | Joint Hearing: House Redistricting Subcommittee on **Laredo** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/21/2010 | Joint Hearing: House Redistricting Subcommittee on **Corpus Christi** Redistricting and House Judiciary and Civil Jurisprudence |
| 8/16/2010 | Joint Hearing: House Redistricting Subcommittee on **El Paso** Redistricting and House Judiciary and Civil Jurisprudence |
| 8/18/2010 | Joint Hearing: House Redistricting Subcommittee on **Lubbock** Redistricting and House Judiciary and Civil Jurisprudence |
| 9/20/2010 | Joint Hearing: House Redistricting, House Judiciary and Civil Jurisprudence Subcommittee on **Dallas** Redistricting and Senate Select Committee on Redistricting |
| 9/21/2010 | Joint Hearing: House Redistricting Subcommittee on **Tarrant County** Redistricting, House Judiciary and Civil Jurisprudence |
| 9/22/2010 | Joint Hearing: House Redistricting Subcommittee on **Richardson/UT-Dallas** Redistricting and House Judiciary and Civil Jurisprudence |
| 10/18/2010 | Joint Hearing: House Redistricting Subcommittee on **Beaumont** Redistricting and House Judiciary and Civil Jurisprudence |
| 10/20/2010 | Joint Hearing: House Redistricting Subcommittee on **Marshall** Redistricting and House Judiciary and Civil Jurisprudence |
| 11/17/2010 | House Redistricting Subcommittee on **Austin** Redistricting |
| 11/20/2010 | Joint Hearing: Subcommittee of Judiciary and Civil Jurisprudence and Senate Select Committee on Redistricting **(Houston)** |

In the Texas Senate, hearings were conducted by the Senate Select Committee on Redistricting:

9/1/2010    **Austin**

| 9/20/2010 | Joint Hearing: House Redistricting, House Judiciary and Civil Jurisprudence Subcommittee on Downtown **Dallas** Redistricting and Senate Select Committee on Redistricting |
|-----------|---|
| 10/4/2010 | **Amarillo** |
| 10/5/2010 | **Midland** |
| 10/21/2010 | **Edinburg** |
| 11/4/2010 | **San Antonio** |
| 11/20/2010 | Joint Hearing: Subcommittee of Judiciary and Civil Jurisprudence and Senate Select Committee on Redistricting **(Houston)** |

Pursuant to House and Senate rules, every legislative hearing notice, redistricting plan submitted by members of the public, and proposed amendments to redistricting maps were posted on the Texas Legislative Council's redistricting website, www.tlc.state.tx.us/redist/redist.html, and all public plans and amendments were accessible through DistrictViewer.[14] The Texas Legislative Council also maintained two RedAppl[15] terminals which were available to the public for their use during normal business hours.

Once the Texas Legislature began the redistricting process by holding interim hearings, the House Committee on Redistricting created an e-mail contact database to notify interested members of the public about upcoming legislative hearings. That database, which ultimately included over 200 community leaders, advocacy groups, and election officials, fostered public participation by ensuring interested parties received regular communications about the redistricting process throughout the legislative session. Prior to each interim hearing, the Senate Committee on Redistricting notified the elected officials in the area and encouraged them to widely disseminate information about the hearing. The committee office has retained the notification e-mails that were sent. During each House interim hearing, it was announced that the public record on the hearings would remain open until December 2010, in order to give the public ample time to provide written comments to the committees.

The Texas Legislature could not begin the map drawing process until the U.S. Census Bureau released block-level population data to Texas on February 17, 2011. On March 24, 2011, the House Committee on Redistricting held a public hearing to solicit additional input from the public about the upcoming reapportionment of Texas House of Representatives districts. On April 13, 2011, Chairman Burt Solomons publicly released an initial plan (H113) for public and legislative consideration.

---

[14] DistrictViewer is the Texas Legislative Council's Internet-based application that interactively displays all public maps and reports. It is available to anyone with Internet access and includes access to all benchmark plans, as well.

[15] RedAppl is the Texas Legislative Council's district modeling software. It was installed in legislators' offices as well as in public terminals in the Texas Legislative Council's offices.

In addition to holding a public hearing and seeking public comment before a House plan was introduced, the Redistricting Committee and the Speaker of the House's staff conducted a proactive outreach effort in order to ensure interested parties had an opportunity to participate in the redistricting process. During the two months that elapsed between the census data's release and the introduction of H113, leadership and staff held several meetings with House members from both parties. Multiple meetings were also held with groups that represent minorities' interests such as MALDEF and the Mexican American Legislative Caucus (MALC). Several of MALDEF's recommended changes were incorporated into the plan that was ultimately passed and signed into law. The staff proactively contacted the NAACP of Texas in an effort to schedule a meeting, but the outreach efforts were unsuccessful. On the House floor, Chairman Solomons repeatedly encouraged members from various regions of the State to work collaboratively to jointly submit regional redistricting proposals. The committee took all of these regional proposals into consideration when it crafted the new House plan.

After H113 was publicly posted on DistrictViewer, two public hearings were held by the House Redistricting Committee. Chairman Solomons laid out a committee substitute plan (H134) during the first hearing, which was on Friday April 15, 2011. The second hearing convened on Sunday, April 17, 2011. The committee held one meeting during the week and one on the weekend so that members of the public would have opportunities to participate in the process both during the five-day work week and during a weekend.

The committee held a third formal meeting on Tuesday, April 19, 2011. During that meeting, the committee considered several amendments before approving an amended map and sending it to the House floor for the entire Chamber's consideration. On April 19, 2011, the House Calendars Committee scheduled the committee-approved plan, H153, for second reading on the House floor.[16] H153 was debated on April 27, 2011. The proceedings were transcribed.[17] A record vote was taken, and the Plan passed with 92 yeas and 54 nays. Two Democrats voted for the plan – Representative Eiland and Representative Guillen. The House's engrossed version, H283, was sent to the Senate for consideration. The Senate Redistricting Committee held a public hearing on the bill on May 6, 2011, and the bill passed in the Senate, without amendments, on May 17, 2011 by a vote of 22 yeas and 9 nays on second reading and 25 yeas and 6 nays on third reading.

Notice of all hearings was provided in compliance with the Rules of the Texas House of Representatives and the Texas Senate. The following links include hearing notices, minutes, and witness lists for each of the hearings on the Plan:

---

[16] Pursuant to the Texas Constitution, a bill must be read on three separate occasions. The first reading is when a bill is introduced and referred to committee. The second and third reading, as referenced above, are when the full House considers passage of the legislation.

[17] See http://www.journals.house.state.tx.us/hjrnl/82R/pdf/82RDAY63SUPPLEMENT.pdf.

<center>House Redistricting Committee Hearings
Hearing on April 15</center>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011041512001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011041512001.PDF
Witness List
http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C0802011041512001.PDF

<center>Hearing on April 17</center>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011041714001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011041714001.PDF
Witness List
http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C0802011041714001.PDF

<center>Hearing on April 19</center>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011041911001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011041911001.PDF

<center>Senate Select Committee on Redistricting
Hearing on May 6</center>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C6252011050609001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C6252011050609001.PDF
Witness List
http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C6252011050609001.PDF

<center>Hearing on May 13</center>

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C6252011051308001.PDF
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C6252011051308001.PDF

## 51.28(g)(1) – Public Availability of the Submission

On July 19, 2011, the Attorney General issued a press release informing the public that the State filed a declaratory judgment action seeking preclearance of the Plan from the United States District Court for the District of Columbia. The State's press release also announced that this informal submission was provided to DOJ. A copy of that press release can be found online at www.texasattorneygeneral.gov. Members of the public

15

were informed that they may provide comment by contacting the Office of the Attorney General via e-mail at redistricting@oag.state.tx.us or via telephone at (800)252-8011.

## 51.28(g)(2) – Electronic Availability of Data

The Attorney General has made the data included in this submission available on the OAG's website at www.texasattorneygeneral.gov.

## 51.28(h) – Minority Group Contacts

The following individuals reside in the State of Texas, and are familiar with the proposed change, and were active in the political process by which the Plan was adopted:

Nina Perales
Mexican American Legal Defense and
Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Luis Figueroa
Mexican American Legal Defense and
Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Gary Bledsoe
Texas NAACP
1107 E. 11th Street, Suite A
Austin, Texas 78702
(512) 322-9547

The Honorable Mike Villarreal
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0532

The Honorable Stefanie Carter
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0454

The Honorable Eric Johnson
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0586

The Honorable Ruth Jones McClendon
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0708

The Honorable Ryan Guillen
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0416

The Honorable Aaron Peña
Texas House of Representatives
P.O. Box 2910
Austin, Texas  78768-2910
(512) 463-0426

The Honorable Mario Gallegos, Jr.
Texas Senate
P.O. Box 12068
Austin, Texas 78711
(512) 463-0106

The Honorable Carlos Uresti
Texas Senate
P.O. Box 12068
Austin, Texas 78711
(512) 463-0119

# State of Texas
# Informal Submission
# Act of May 6, 2011, 82nd Leg. R.S., H.B. 600
# State Board of Education

This document outlines the information provided in the State of Texas' informal submission of H.B. 600 (the "Plan") to the Department of Justice. While this is not a formal submission, the State of Texas is nonetheless providing all information which would normally be contained in a submission pursuant to 28 C.F.R. §§ 51.27 and 51.28. This document either provides the information requested or references the relevant attachment where the information is located.

## Section 51.27 (a) – Copy of Plan

A copy of the Plan may be found online at
http://gis1.tlc.state.tx.us/download/SBOE/PLANE120.pdf and is included as **Attachment 1.**

## Section 51.27(b) – Copy of Plan Currently in Effect

A copy of the current State Board of Education (the "SBOE" or the "Board") districts can be found online at http://gis1.tlc.state.tx.us/download/SBOE/PLANE100.pdf and is included as **Attachment 2.** The SBOE's preexisting map is referred to herein as "benchmark plan" or "E100" in the electronic reports.

## Section 51.27(c) – Statement of Change Requested

The Plan makes changes to the boundaries of all 15 SBOE districts.[1]

## Section 51.27(d) – Person Submitting Change

Greg Abbott
Texas Attorney General
209 W. 14th Street
Austin, Texas 78701
(512) 463-2191 - office
(512) 936-0545 - fax
greg.abbott@oag.state.tx.us

## Section 51.27(e) and (f): Not applicable

---

[1] *See* http://www.journals.house.state.tx.us/hjrnl/82R/html/82RDAY56FINAL.htm.

## Section 51.27(g) – Body Responsible for Change

The body responsible for passing the Plan was the 82nd Texas Legislature.

## Section 51.27(h) – Statutory Authority for Change

While no state constitutional provision or state statute requires the reapportionment of SBOE districts at any particular time, Texas laws governing the Board assume the districts will be redrawn after each federal decennial census.[2] Likewise, since the 2010 federal decennial census revealed significant population deviations among the SBOE districts, the equal protection clause of the 14th Amendment to the U.S. Constitution requires that the Board's districts be redrawn.

## Section 51.27(i) and (j) - Date Change Adopted and Effective Date of Change

The Plan became law on May 18, 2011 and will become effective on August 29, 2011.

## Section 51.27(k) – Statement Regarding Implementation

The Plan has not been implemented.

## Section 51.27(l) – Affected Jurisdiction

The Plan affects the entire jurisdiction of the State of Texas.

## Section 51.27 (m) and (n) – Reason for and Effect of Change

### Background

The SBOE is established by the Texas constitution and Texas statutes and is composed of 15 members elected from single-member districts. The Board's members serve for four-year terms, which are staggered following the reapportionment of the districts.[3] The Board adopts rules and establishes policies that govern a wide range of educational programs and services provided by Texas public schools. The Commissioner of Education, who is appointed by the Governor, serves as chief executive officer of the Board and supervises the administration of Board rules through the Texas Education Agency (TEA).

Together the Board, the Commissioner, and the TEA facilitate the operation of a vast public school system with 1,237 school districts and charter schools, more than 8,450 campuses, more than 640,000 educators and staff, and more than 4.8 million

---

[2] *See* Tex. Education Code §7.104 (Vernon 2006).

[3] *See Id.*

2

schoolchildren. The SBOE establishes and promotes goals for the public school system and adopts and promotes four-year plans for meeting those goals.[4]

The State of Texas is divided into 15 SBOE districts. Based on the state's population of 25,145,561, SBOE districts with perfectly equalized population would each contain 1,676,371 residents. The shifts in population among the districts, as evidenced by the release of the U.S. Census Bureau's 2010 population data, required that the Legislature change SBOE districts' preexisting boundary lines. Under the benchmark plan, the smallest district, District 15, was 12.4% under the ideal size. The most over populated district was District 10, which was 17.2% over the ideal population.

The Legislature's stated goals during the SBOE redistricting process were to equalize population, maintain communities of interest, reduce the number of split counties, reduce the number of split school districts, avoid pairing incumbents, and respond to the public testimony and input that was received during the interim and the legislative session.[5] All of these goals were accomplished in the Plan that ultimately passed the Legislature. Under the State's Plan, SBOE districts have an overall deviation of 5.85%. The largest district (District 9) is 2.07% over the ideal population, and the smallest district (District 10) is 3.78% under the ideal population.

The Plan adopted by the Legislature fully complies with all applicable state and federal laws and neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. The Plan does not retrogress racial or language minorities' ability to effectively exercise their electoral franchise.

The Legislature undertook an extensive outreach effort during the legislative interim and also conducted numerous hearings during the Legislative session. The details of those efforts are explained under **Section 51.28(f)** of this submission.

## Statewide Impact on Minority Voters

The benchmark plan included three districts (Districts 1, 2 and 3) where the Hispanic community was historically able to elect the candidate of its choice. It also contained two districts (Districts 4 and 13) where the African-American community was historically able to elect its candidate of choice. The Plan maintains minority voting strength in those five districts while increasing Hispanic Voting Age Population

---

[4] *See* Tex. Education Code §7.102 (Vernon 2006).

[5] *See* http://www.journals.house.state.tx.us/hjrnl/82R/html/82RDAY56FINAL.htm.

("HVAP"), Hispanic Citizen Voting Age Population ("HCVAP")[6] and Spanish Surname Voter Registration ("SSVR")[7] in both Districts 1 and 3.

The benchmark plan contained SBOE districts that split 161 school districts. Among the Legislature's stated goals during the SBOE redistricting process was reducing the number of split school districts. The proposed Plan contains only 148 school district splits. The Legislature also endeavored to reduce the number of counties and cities that were unnecessarily divided by SBOE district lines. Also, the Plan does not pair any incumbent SBOE members.

**Regional Impact.** Under the benchmark plan, the Hispanic Voting Age Population (HVAP) is above 50% in three South Texas districts (Districts 1, 2 and 3). Election data indicate that the minority community in each of those districts was able to elect its candidate of choice. The Plan passed by the Legislature increases various Hispanic population metrics in Districts 1 and 3. In District 2, the HVAP, HCVAP and SSVR dip only slightly. However, a review of historic election data confirms that this change will not affect the minority community's ability to elect its candidate of choice.

The benchmark plan contains two districts where African-American communities historically elect their candidates of choice (Districts 4 and 13). District 4 in Harris County was significantly under populated and therefore needed an additional 150,000 new residents. The Legislature was able add the necessary population, while at the same time only reducing the Black Voting Age Population (BVAP) by .2%. A review of historical election data confirms that the minority community's candidate of choice will

---

[6] The Fifth Circuit has unequivocally held that HCVAP is the population base that should be considered to determine whether a minority group satisfies the first *Gingles* requirement for a vote dilution claim. *See Campos v. City of Houston*, 113 F.3d 544, 548 (5th Cir. 1997) ("We hold that courts evaluating vote dilution claims under section 2 of the Voting Rights Act must consider the citizen voting-age population of the group challenging the electoral practice when determining whether the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district."); *see also Session v. Perry*, 298 F. Supp. 2d 451, 494 n.133 (E.D. Tex. 2004) ("This circuit, along with every other circuit to consider the question, has concluded that the relevant voting population for Hispanics is citizen voting age population."), *reversed on other grounds, LULAC v. Perry*, 548 U.S. 399, 429 (2006) (commenting (but not holding) in dicta that using HCVAP to determine Hispanic electoral opportunity "fits the language of § 2 because only eligible voters affect a group's opportunity to elect candidates"). For information about how the State of Texas calculates HCVAP, please see the Texas Legislative Council's website: http://www.tlc.state.tx.us/redist/pdf/CitizenshipAddendum.pdf.

[7] According to the Texas Legislative Council's website:
   Spanish surname voter registration, also reported in the secretary of state's Statewide Voter Database, is generated using a comparison to the 2000 Census Bureau List of Spanish Surnames. While most sources agree that the match between people who have Spanish surnames and those who consider themselves Hispanic is relatively good in Texas (the Census Bureau estimates a 90 percent correlation for the state), the reported number of registered voters with Spanish surnames is not a precise measure of Hispanic voter registration. Some people who consider themselves Hispanic do not have surnames that are included in the Spanish surname file and will be missed by the Spanish surname matching technique. Others, who have surnames that are included in the Spanish surname file but do not consider themselves Hispanic, will be incorrectly counted as Hispanic registered voters."

http://www.tlc.state.tx.us/redist/pdf/Data_2011_Redistricting.pdf.

4

consistently continue to prevail in District 4. District 13 in Dallas County was also highly under populated in the benchmark plan. As a result, District 13 needed more than 180,000 new residents. The Legislature was able to add the necessary population while only slightly reducing the district's BVAP by 0.8%. A review of historical election data indicates that the minority communtity's candidate of choice will consistently continue to prevail in District 13.

## Section 51.27(o) – Pending Litigation

The following litigation involving the state's newly enacted redistricting plans is currently pending:

| Name | Cause No. & Venue |
|---|---|
| Consolidated:<br>Perez, et al. v. State of Texas, et al;<br>Texas Latino Redistricting Task Force et al. v. Perry, et al.; MALC v. State of Texas, et al. | SA-11-CA-360-OLG-JES-XR<br>W.D. Tex. San Antonio<br>Three Judge Court: Garcia, Smith, Rodriguez |
| Teuber v. State of Texas, et al. | SA-11-CA-0572-OLG-JES-XR<br>W.D. Tex. San Antonio<br>Three Judge Court: Garcia, Smith, Rodriguez |
| Teuber v. State of Texas, et al. | CV-11-0270<br>397th District Court, Grayson County, Texas |
| MALC v. State of Texas, et al. | No. 7:11-cv-144<br>S.D. Texas - McAllen Division (Judge Crane) |
| Barton et al. v. State of Texas & Hope Andrade | 11-20238-CV<br>13th District Court, Navarro County, Texas |
| Barton et al. v. State of Texas & Hope Andrade | 11-20263-CV<br>13th District Court, Navarro County, Texas |
| Washburn v. State of Texas & Hope Andrade | Cause No. CV 110921; 397th District Court, Grayson County, Texas |
| Washburn v. State of Texas & Hope Andrade | Cause No. CV 110931; 397th District Court, Grayson County, Texas |
| John "Canica" Limon, et al. v. Rick Perry, et al. | D-1-GN-11-001611<br>351st Judicial District Court, Travis County, Texas |

| Bianca Garcia, et al. v. Rick Perry, et al. | D-1-GN-11-001612<br>419th Judicial District Court, Travis County, Texas |
|---|---|
| Rodriguez, et al. v. State of Texas, et al. | 1:11-cv-00451<br>W.D. Tex. Austin Division<br>Three Judge Court: Yeakel, Smith, Garcia |
| Morris v. State of Texas, et al. | 11-cv-2244<br>S.D. Tex. Houston Division<br>(Judge Rosenthal) |
| Quesada, et al. v. Rick Perry and Hope Andrade | 11-cv-592<br>W.D. Texas. San Antonio Division<br>(Judge Garcia) |

## Section 51.27(p) – Prior Preclearance

The benchmark plan's preexisting SBOE districts stem from a November 2, 2001 order by a three-judge court convened in the case of *Miller v. Cuellar,* Cause No. 3-01CV1072-G (N.D. Tex.). Because the benchmark plan's districts were drawn by a federal court, it was not subject to preclearance by the Department of Justice. A copy of the district court's order is attached as **Attachment 3.**

## Section 51.28 (a) (b) and (d) – Demographic Information, Maps and Election Returns (Attachment 4)

1. **Election Data folder**
   a.   Zipped files for each of the last five election cycles; returns, voter registration (VR), and turnout (TO) by County/ VTD.
      i.   **2002_Election.zip**
         (1)   ***2002_Democratic_Primary_Election_Returns.csv***
         (2)   ***2002_Democratic_Primary_Election_VRTO.csv***
         (3)   ***2002_Democratic_Runoff_Election_Returns.csv***
         (4)   ***2002_Democratic_ Runoff_Election_ VRTO.csv***
         (5)   ***2002_Republican_Primary_Election_Returns.csv***
         (6)   ***2002_Republican_Primary_Election _ VRTO.csv***
         (7)   ***2002_Republican _Runoff_Election_Returns.csv***
         (8)   ***2002_Republican _Runoff_Election_ VRTO.csv***
         (9)   ***2002_General_Election_Returns.csv***
         (10)  ***2002_General_Election_ VRTO.csv***
         (11)  ***readme.txt***
      ii.  **2004_Election.zip** - contains same reports as in 2002_Election.zip
      iii. **2006_Election.zip** - contains same reports as in 2002_Election.zip; also includes the special general and runoff for the court-ordered congressional districts.
      iv.  **2008_Election.zip** - contains same reports as in 2002_Election.zip

<ol start="2" type="1">
<li>
v.   **2010_Election.zip** - contains same reports as in 2002_Election.zip

**PlanE100** folder

<ol type="a">
<li>
**PlanE100 Reports** folder
<ol type="i">
<li>**2002_Election** folder
<ol type="1">
<li>*2002_Democratic_Primary_RED225 .pdf* and *.xls*</li>
<li>*2002_Democratic_Runoff_ RED225 .pdf* and *.xls*</li>
<li>*2002_Republican_Primary_ RED225 .pdf* and *.xls*</li>
<li>*2002_Republican _Runoff_ RED225 .pdf* and *.xls*</li>
<li>*2002_General_Election_ RED225 .pdf* and *.xls*</li>
</ol>
</li>
<li>**2004_Election** folder- contains same reports as in 2002_Election folder</li>
<li>**2006_Election** folder - contains same reports as in 2002_Election folder; also includes the special general and runoff for the court-ordered congressional districts.</li>
<li>**2008_Election** folder - contains same reports as in 2002_Election folder</li>
<li>**2010_Election** folder - contains same reports as in 2002_Election folder</li>
<li>*VTD level VR_SSVR_TO (RED 216.pdf* and *.xls)* - includes voter registration, Spanish surname voter registration, and turnout by district and VTD for the 2010 gubernatorial election</li>
<li>*ACS HCVAP Special Tab(RED 106)* - Citizen Voting Age Population) (HCVAP) from the 2005-2009 ACS (DOJ Special Tabulation)</li>
<li>*District Population Analysis with Counties (RED 100)* – contains plan deviation statistics and verification information and district population data</li>
<li>*Population and Voter Data (RED 202)*</li>
<li>*Incumbents (RED 350)*</li>
<li>*Compactness Analysis (RED 315)*</li>
<li>*Split Cities by District (RED 130)*</li>
</ol>
</li>
<li>
**PlanE100 Maps** folder -- 28 CFR Sec. 51.28(b)1-6
<ol type="i">
<li>Maps of state and split counties with districts</li>
<li>n/a</li>
<li>Maps of split counties with racial/ethnic shading by VTD</li>
<li>Maps of split counties with Spanish Surname voter registration by VTD</li>
<li>Maps of split counties with natural boundaries and geographic features</li>
<li>Maps of split counties with cities</li>
<li>n/a</li>
<li>n/a</li>
</ol>
</li>
</ol>
</li>
<li>**PlanE120** folder - same as **PlanE100** folder</li>
<li>
**Shapefiles** folder
<ol type="a">
<li>Shapefiles of all 14 public SBOE plans</li>
<li>*blk.zip*--block equivalency file (.csv) for PlanE100 and PlanE120</li>
</ol>
</li>
<li>
**Two Plan Comparison Reports**
<ol type="a">
<li>Two Plan by Incumbent (RED 335)</li>
<li>Plan Overlap Analysis (RED 340)</li>
</ol>
</li>
</ol>

## Section 51.28(f) Publicity and Participation

The Texas Legislature began the process of developing and debating the State Board of Education Plan almost a year before the map was finally passed and became law. The Texas House of Representatives and the Texas Senate conducted numerous hearings throughout the State during the legislative interim period that preceded the 82nd Legislative Session. In the House of Representatives, hearings were conducted by both the House Committee on Redistricting and the House Committee on Judiciary and Civil Jurisprudence. The date and city where each public hearing was held are detailed in the following list:

| | |
|---|---|
| 6/2/2010 | Joint Hearing: House Redistricting and House Judiciary and Civil Jurisprudence (**Austin**) |
| 6/21/2010 | Joint Hearing: House Redistricting Subcommittee on **San Antonio** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/19/2010 | Joint Hearing: House Redistricting Subcommittee on **McAllen** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/20/2010 | Joint Hearing: House Redistricting Subcommittee on **Laredo** Redistricting and House Judiciary and Civil Jurisprudence |
| 7/21/2010 | Joint Hearing: House Redistricting Subcommittee on **Corpus Christi** Redistricting and House Judiciary and Civil Jurisprudence |
| 8/16/2010 | Joint Hearing: House Redistricting Subcommittee on **El Paso** Redistricting and House Judiciary and Civil Jurisprudence |
| 8/18/2010 | Joint Hearing: House Redistricting Subcommittee on **Lubbock** Redistricting and House Judiciary and Civil Jurisprudence |
| 9/20/2010 | Joint Hearing: House Redistricting, House Judiciary and Civil Jurisprudence Subcommittee on **Dallas** Redistricting and Senate Select Committee on Redistricting |
| 9/21/2010 | Joint Hearing: House Redistricting Subcommittee on **Tarrant County** Redistricting, House Judiciary and Civil Jurisprudence |
| 9/22/2010 | Joint Hearing: House Redistricting Subcommittee on **Richardson/UT-Dallas** Redistricting and House Judiciary and Civil Jurisprudence |
| 10/18/2010 | Joint Hearing: House Redistricting Subcommittee on **Beaumont** Redistricting and House Judiciary and Civil Jurisprudence |
| 10/20/2010 | Joint Hearing: House Redistricting Subcommittee on **Marshall** Redistricting and House Judiciary and Civil Jurisprudence |
| 11/17/2010 | House Redistricting Subcommittee on **Austin** Redistricting |
| 11/20/2010 | Joint Hearing: Subcommittee of Judiciary and Civil Jurisprudence and Senate Select Committee on Redistricting (**Houston**) |

In the Texas Senate, hearings were conducted by the Senate Select Committee on Redistricting:

| | |
|---|---|
| 9/1/2010 | **Austin** |
| 9/20/2010 | Joint Hearing: House Redistricting, House Judiciary and Civil Jurisprudence Subcommittee on Downtown **Dallas** Redistricting and Senate Select Committee on Redistricting |
| 10/4/2010 | **Amarillo** |

8

| | |
|---|---|
| 10/5/2010 | **Midland** |
| 10/21/2010 | **Edinburg** |
| 11/4/2010 | **San Antonio** |
| 11/20/2010 | Joint Hearing: Subcommittee of Judiciary and Civil Jurisprudence and Senate Select Committee on Redistricting **(Houston)** |

Every legislative hearing notice, redistricting plan submitted by members of the public, and proposed amendments to redistricting maps were posted on the Texas Legislative Council's redistricting website, www.tlc.state.tx.us/redist/redist.html, and were accessible through DistrictViewer.[8] The Texas Legislative Council also maintained two RedAppl[9] terminals, which were available to the public for their use during normal business hours.

Once the Texas Legislature began the redistricting process by holding interim hearings, the House Committee on Redistricting created an e-mail contact database to notify interested members of the public about upcoming reapportionment of SBOE districts. That database, which ultimately included over 200 community leaders, advocacy groups, and election officials fostered public participation by ensuring interested parties received regular communications throughout the legislative session. During each House interim hearing, it was announced that the public record on the hearings would remain open until December, 2010, in order to give the public ample time to provide written comments to the committees.

The Texas Legislature could not begin the map drawing process until the U.S. Census released block-level data to Texas on February 17, 2011. On March 15, 2011, the House Committee on Redistricting held a hearing to solicit additional input from the public about the upcoming reapportionment of the SBOE. The Chairman of the committee released Plan E101 publicly on March 22, 2011. On March 25, 2011, the committee held a public hearing to consider the committee substitute to HB 600. Public testimony was taken at that hearing. On April 1, 2011 the committee held a formal meeting to consider the bill, and it was voted out of committee.

The bill was considered on the floor of the House on April 14, 2011 and again on April 15, 2011 before it passed out of the House on third reading with a vote of 104 ayes to 34 nays. Three statewide substitute plans were offered as floor amendments, but they were tabled because they paired incumbents and Legislators expressed concern that the amendments might reduce minority voting strength in certain districts in favor of other districts.

---

[8] DistrictViewer is the Texas Legislative Council's Internet-based application that interactively displays all public maps and reports. It is available to anyone with Internet access and includes access to all benchmark plans, as well.

[9] RedAppl is the Texas Legislative Council's district modeling software. It was installed in legislators' offices as well as in public terminals in the Texas Legislative Council's offices.

On April 27, 2011 the Senate Committee on Redistricting held a public hearing to consider the Plan and receive public input. The bill was voted out of committee and considered by the full Senate on April 29, 2011. When the Texas Senate passed the proposed SBOE plan, only 3 Senators voted against the Plan.

Proper notice for all hearings was provided in compliance with the Rules of the Texas House of Representatives and the Texas Senate. The following links are for the hearing notices, minutes, and witness lists for each of the hearings on the proposed Plan:

### House Redistricting Committee Hearings:
Hearing on March 15, 2011

Notice

http://www.legis.state.tx.us/tlodocs/82R/schedules/html/C0802011031509001.htm

Minutes

http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011031509001.PDF

Witness List

http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C0802011031509001.PDF


Hearing on March 25, 2011


Notice

http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011032509001.PDF

Minutes

http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011032509001.PDF

Witness List

http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C0802011032509001.PDF


Hearing on April 1, 2011 at 3:00pm


Notice

http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011040115001.PDF

Minutes

http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011040115001.PDF


Hearing on April 1, 2011 at 7:30pm


Notice

http://www.capitol.state.tx.us/tlodocs/82R/schedules/pdf/C0802011040119301.PDF

Minutes

http://www.capitol.state.tx.us/tlodocs/82R/minutes/pdf/C0802011040119301.PDF

Senate Committee on Redistricting Hearings:
Hearing on April 27, 2011

Notice
http://www.capitol.state.tx.us/tlodocs/82R/schedules/html/C6252011042708001.HTM
Minutes
http://www.capitol.state.tx.us/tlodocs/82R/minutes/html/C6252011042708001.HTM
Witness List
http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/html/C6252011042708001.HTM

## 51.28(g)(1) Public Availability of Submission

On July 19, 2011, the Attorney General issued a press release informing the public that the State filed a declaratory judgment action seeking preclearance of the Plan from the United States District Court for the District of Columbia. The State's press release also announced that this informal submission was provided to DOJ. A copy of that press release can be found online at www.texasattorneygeneral.gov. Members of the public were informed that they may provide comment by contacting the Office of the Attorney General via e-mail at redistricting@oag.state.tx.us or via telephone at (800)252-8011.

## 51.28(g)(2) Electronic Availability of Submission

The Attorney General has made the data included in this submission available on the OAG's website at www.texasattorneygeneral.gov.

## 51.28(h) Minority Group Contacts

The following individuals reside in the State of Texas, are familiar with the proposed change, and were active in the political process by which the Plan was adopted:

Nina Perales
Mexican American Legal Defense and
Education Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Luis Figueroa
Mexican American Legal Defense and
Education Fund

110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Gary Bledsoe
Texas NAACP
1107 E. 11th Street, Suite A
Austin, Texas 78702
(512) 322-9547
The Honorable Mike Villarreal

Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0532

The Honorable Stefanie Carter
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0454

The Honorable Eric Johnson
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0586

The Honorable Ruth Jones McClendon
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0708

The Honorable Ryan Guillen
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0416

The Honorable Aaron Peña
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0426

The Honorable Mario Gallegos, Jr.
Texas Senate
P.O. Box 12068
Austin, Texas 78711
(512) 463-0106

The Honorable Carlos Uresti
Texas Senate
P.O. Box 12068
Austin, Texas 78711
(512) 463-0119

# ATTACHMENT 2



State Board of Education Districts
Current Districts (2011-2012)
PLANE100
COUNTIES
PLANE100
BURNET
BLANCO
HAYS
WILLIAMSON
TRAVIS
CALDWELL
BASTROP
LEE
EL PASO
HUDSPETH
KENDALL
BANDERA
BEXAR
COMAL
GUADALUPE
MEDINA
ATASCOSA
WILSON
MONTAGUE
COOKE
GRAYSON
FANNIN
WISE
DENTON
COLLIN
HUNT
PARKER
TARRANT
DALLAS
ROCKWALL
KAUFMAN
HOOD
JOHNSON
ELLIS
MONTGOMERY
LIBERTY
WALLER
HARRIS
CHAMBERS
FORT BEND
BRAZORIA
GALVESTON
JIM HOGG
BROOKS
STARR
HIDALGO
KENEDY
WILLACY
CAMERON



State Board of Education Districts
H.B. 600 as Enacted, 82nd Legislature
PLANE120
COUNTIES
PLANE120
BURNET
WILLIAMSON
10
BLANCO
TRAVIS
5
BASTROP
HAYS
CALDWELL
1
EL PASO
HUDSPETH
KENDALL
BANDERA
COMAL
5
GUADALUPE
3
BEXAR
1
WILSON
ATASCOSA
MEDINA
Map ID 5000
05/19/11 12:32:30
Texas Legislative Council
12163
2010 Census
PLANE120
2011-04-28 08:58:21
MONTAGUE
15
COOKE
GRAYSON
FANNIN
WISE
14
DENTON
COLLIN
12
HUNT
ROCKWALL
9
11
TARRANT
PARKER
DALLAS
13
KAUFMAN
HOOD
JOHNSON
14
ELLIS
MONTGOMERY
LIBERTY
8
7
6
10
WALLER
HARRIS 4
CHAMBERS
7
FORT
BEND
BRAZORIA
GALVESTON
JIM HOGG
BROOKS
KENEDY
STARR
3
WILLACY
2
HIDALGO
CAMERON

# ATTACHMENT 3



State House Districts
82nd Legislature (2011-2012)
PLANH100
COUNTIES
PLANH100
BURNET
WILLIAMSON
BLANCO
TRAVIS
HAYS
BASTROP
CALDWELL
EL PASO
HUDSPETH
KENDALL
BANDERA
COMAL
MEDINA
GUADALUPE
BEXAR
WILSON
ATASCOSA
MONTAGUE
COOKE
GRAYSON
FANNIN
WISE
DENTON
COLLIN
HUNT
PARKER
TARRANT
ROCKWALL
DALLAS
KAUFMAN
HOOD
JOHNSON
ELLIS
MONTGOMERY
LIBERTY
HARRIS
WALLER
FORT BEND
CHAMBERS
BRAZORIA
GALVESTON
JIM HOGG
BROOKS
KENEDY
STARR
WILLACY
HIDALGO
CAMERON
Map ID 5000
2010 Census
PLANH100 2001-11-25 16:40:10
Texas Legislative Council



State House Districts
Enacted by the 82nd Legislature, 2011
PLANH283
COUNTIES
PLANH283
BURNET
WILLIAMSON
TRAVIS
LEE
BLANCO
BASTROP
HAYS
CALDWELL
HUDSPETH
EL PASO
KENDALL
COMAL
BANDERA
GUADALUPE
BEXAR
WILSON
MEDINA
ATASCOSA
MONTAGUE
COOKE
GRAYSON
FANNIN
WISE
DENTON
COLLIN
HUNT
TARRANT
ROCKWALL
PARKER
KAUFMAN
DALLAS
HOOD
JOHNSON
ELLIS
MONTGOMERY
LIBERTY
HARRIS
WALLER
FORT BEND
BRAZORIA
CHAMBERS
GALVESTON
JIM HOGG
BROOKS
KENEDY
STARR
WILLACY
HIDALGO
CAMERON
Map ID 5000
07/07/11 14:20:59
Texas Legislative Council
14290
2010 Census
PLANH283
2011-04-28 17:04:29

# ATTACHMENT 4



State Senate Districts
82nd Legislature (2011-2012)
PLANS100



State Senate Districts
Enacted by the 82nd Legislature, 2011
PLANS148
COUNTIES
PLANS148
BURNET
WILLIAMSON
5
BLANCO
24
14
TRAVIS
LEE
25
HAYS
21
BASTROP
CALDWELL
29
EL PASO
HUDSPETH
KENDALL
24 BANDERA
25
COMAL
GUADALUPE
26
BEXAR
19
WILSON
21
ATASCOSA
MEDINA
Map ID 5000
07/07/11 14:21:10
Texas Legislative Council
14291
2010 Census
PLANS148
2011-05-17 13:50:31
MONTAGUE
COOKE
GRAYSON
FANNIN
30
WISE
DENTON
12
COLLIN
8
HUNT
16
ROCKWALL
PARKER
DALLAS
2
10
9
23
KAUFMAN
TARRANT
22
HOOD
JOHNSON
ELLIS
MONTGOMERY
3
LIBERTY
4
7
HARRIS
WALLER
18
15
17
6
CHAMBERS
FORT
BEND
13
11
BRAZORIA
GALVESTON
JIM HOGG
BROOKS
KENEDY
STARR
21
20
WILLACY
HIDALGO
27
CAMERON

# ATTACHMENT 5



U.S. Congressional Districts
112th Congress (2011-2012)
PLANC100

COUNTIES
PLANC100



U.S. Congressional Districts
Passed by the 82nd Legislature, 2011
PLANC185
COUNTIES
PLANC185
14280
2010 Census
PLANC185 2011-06-15 10:04:31
BURNET
WILLIAMSON
TRAVIS
BLANCO
HAYS
CALDWELL
BASTROP
EL PASO
HUDSPETH
KENDALL
BANDERA
MEDINA
BEXAR
COMAL
GUADALUPE
ATASCOSA
WILSON
MONTAGUE
COOKE
GRAYSON
FANNIN
WISE
DENTON
COLLIN
HUNT
PARKER
TARRANT
DALLAS
ROCKWALL
KAUFMAN
JOHNSON
ELLIS
HOOD
WALLER
MONTGOMERY
LIBERTY
FORT BEND
HARRIS
CHAMBERS
BRAZORIA
GALVESTON
JIM HOGG
BROOKS
STARR
KENEDY
HIDALGO
WILLACY
CAMERON

JS-44
(Rev. 2/11 DC)

**CIVIL COVER SHEET**

N - 11-1303  RMC

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| State of Texas, Office of the Attorney General | United States of America and Eric Holder, Jr., in his official capacity as Attorney General of the United States |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Travis County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David Schenck, Deputy Attorney General for Legal Counsel
J. Reed Clay, Jr., Special Assistant and Senior Counsel
209 W. 14th Street
PO Box 12548
Austin, TX 78711-2548
512-936-1342

ATTORNEYS (IF KNOWN)

Case: 1:11-cv-01303
Assigned To : Collyer, Rosemary M.
Assign. Date : 7/19/2011
Description: 3-Judge Court

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

②

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus - Alien Detainee | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ⊙ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☒ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U S C Section 1973c (Section 5)

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23 | DEMAND $ _____ JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|---|

DATE   July 18, 2011     SIGNATURE OF ATTORNEY OF RECORD _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence. Use 11001 to indicate plaintiff is resident of Washington, D C, 88888 if plaintiff is resident of the United States but not of Washington, D C, and 99999 if plaintiff is outside the United States

III.   CITIZENSHIP OF PRINCIPAL PARTIES This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II

IV.   CASE ASSIGNMENT AND NATURE OF SUIT The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case

VI.   CAUSE OF ACTION Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause

VIII.   RELATED CASES, IF ANY If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form