IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION
TO COMPEL THE UNITED STATES TO PRODUCE EXPERT
DISCLOSURES AND THE UNITED STATES TO PRODUCE DOCUMENTS**

The United States respectfully opposes the Defendants' Motion to Compel the United States to Produce Expert Disclosures and Documents Responsive to Defendants' Fourth Requests for Production (ECF No. 454). As set out below, the United States has fully complied with its expert disclosure obligations and has already provided all discoverable materials that Defendants have requested.

## LEGAL STANDARD

Rule 26(a)(2)(B) sets out the disclosures that must be made for all expert witnesses providing written reports. Among other requirements, written expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming" those opinions. Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). Rule 26(b)(4) protects certain expert materials from disclosure. Specifically, Rule 26(b)(4) protects from disclosure "drafts of any report or disclosures required under Rule 26(a)(2), regardless of the form in which the draft is recorded." As the 2010 Advisory Committee Notes explain, the purpose of the provisions of Rule 26(b)(4) is to protect against "discovery regarding draft expert disclosures or reports[.]"

## ARGUMENT

On June 27, 2014, when the United States provided its initial expert reports, it produced, as "facts or data considered by" Dr. Ansolabehere, a dataset of all registered voters in Texas, showing whether each Texas voter had matched, according to the United States' database matching algorithm, to any qualifying record in state and federal databases for each specific form of allowable SB 14 ID. For each voter, the dataset produced by the United States on June 27 showed whether the voter was matched or not matched to 1) DPS Driver License records; 2) the DPS Personal ID records; 3) DPS Conceal Handgun Licensee Records; 4) DPS Election

1

Identification Certificate Records; 5) U.S. State Department Passport Records; 6) USCIS Certificate of Citizenship and Naturalization Records; 7) U.S. Department of Veterans Affairs Veterans Identification Card Records; and 8) U.S. Department of Defense Military ID Card Records.  The dataset further listed, on a voter-by-voter basis, whether or not the voter was an overall Match or No-Match as to any qualifying state or Federal identification record.  In addition, the dataset listed whether the voter had already received a disability exemption from showing ID as recorded in the TEAM voter registration database, as well as whether the voter matched to records from the Social Security Administration or U.S. Department of Veterans Affairs regarding disability status that could qualify that voter for an exemption from showing ID under SB 14.

In addition to this Match/No-Match information, the dataset provided identifying information for each registered voter in the TEAM voter registration database, as well as Census and race estimate information from Catalist, LLC, a firm that provides election-related information.  The attached codebook lists all information, as well as the source of that information, that was provided for each registered Texas voter as part of the United States' June 27 expert disclosure data production.  *See* Ex. A.  This document lays out the complete nature of the Match/No-Match data that Defendants received.  All data relied on in Dr. Ansolabehere's Match/No-Match analyses is set forth in this dataset.[1]  Thereafter, Defendants' expert, Dr. Melvin Hood, conducted all of his database matching analysis using the file received from the United States' expert Dr. Ansolabehere and Dr. Hood reported no issues doing so.

---

[1] The United States provided updated versions of this dataset following Defendants' July 23, 2014, production of 3.1 million records that they had failed to provide in the original February 2014 production from DPS, as well as following the receipt, on August 1, 2014, of written deposition answers from DPS regarding certain Driver License and Personal ID card statuses.

Notwithstanding the fact that Dr. Hood easily replicated Dr. Ansolabehere's results, with both Dr. Hood and Dr. Ansolabehere using the same file—Defendants now seek "all iterations of Dr. Stephen Ansolabehere's 'No Match' list of registered Texas voters he identifies as lacking any acceptable identification to vote in his expert report." Specifically, Defendants argue that they "are entitled to see any and all iterations of Dr. Ansolabehere's work—not simply the final product."[2] ECF No. 454 at 3.

All of Dr. Ansolabehere's analyses can be replicated from the data already provided. Defendants concede that they have the final dataset on which Dr. Ansolabehere's analysis relied. What Defendants now seek are non-final working drafts. Any such draft datasets are explicitly protected from disclosure by Rule 26(b)(4). *See* Fed. R. Civ. P. 26(b)(4) (protecting from disclosure "drafts of any report or *disclosures required under Rule 26(a)(2)*, *regardless of the form in which the draft is recorded*) (emphasis added).

During the August 6 hearing, however, Defendants indicated that they are seeking a standalone list noting those voters identified by the United States as not matching to any qualifying identification record. To be clear, Dr. Ansolabehere has not previously created such a standalone No Match list. While Dr. Hood's report suggests he had no trouble using Dr. Ansolabehere's dataset—which fully meets all expert disclosure requirements under Rule 26— for the clarity of the record and the convenience of the Court, the United States is willing to request that Dr. Ansolabehere create a final standalone version of his No Match list, which the

---

[2] In addition, the United States long ago provided the data sets that Dr. Ansolabehere created regarding the matches between TEAM and the DPS databases. Those were matching results were produced on May 30, in accordance with this Court's scheduling order. *See* ECF No. 305 (United States' Notice of May 30 Data Production); *see also* ECF No. 321 (June 6 Order Regarding Data Production).

United States will produce along with Dr. Ansolabehere's Reply Report.[3]  Finally, Defendants raise an issue with respect to data from Catalist, LLC.  Because the TEAM voter registration database contains no self-reported race information, one of the methods that Dr. Ansolabehere used to identify racial disparities in rates of SB 14 ID possession was to use race estimates provided by Catalist.  The United States has provided an expert report from Yair Ghitza, the chief scientist at Catalist.  As Mr. Ghitza's expert report explains, these estimations are based on a statistical model that uses information about a person's name and sex in combination with census information about where that person lives to determine the person's likely race and ethnicity.  In addition to assigning an estimated race, Catalist also provides confidence scores for each individual's race estimation.  The United States has put forward Mr. Ghitza as an expert so that Catalist's methodologies may be explored and validated in discovery and at trial.

      Defendants have all data that the United States and Dr. Ansolabehere have received from Catalist.  The actual contents of all Catalist data that Dr. Ansolabehere considered and relied on were produced on June 27, as is made clear in Exhibit A.  In addition, the United States also produced to Defendants a copy of the native version of the Catalist data that was provided to Dr. Ansolabehere.  As explained in Mr. Ghitza's report, Catalist has extensively validated the accuracy of its race estimations by comparing them with self-reported race information from states that collect such information for their voter rolls.  To the extent that Defendants seek this validation data, the United States is willing to explore appropriate ways to produce that information.  Catalist does not, however, possess or control all underlying datasets that form the basis of the race estimations.  As Mr. Ghitza's report explains, Catalist does not combine all

---

[3] In their motion to compel, Defendants raised for this first time—without previously conferring with the United States—a request for any version of the Match/No Match data relied upon by Dr. Gerald Webster.  The United States has produced that data.

underlying data elements for the race estimations itself. Instead, it relies on a computer program developed by a third party. The data that Catalist possesses regarding its race estimations is limited to the validation data, and to data variables that it inputs into the program (full name, census state, census county, census tract, census block group, and age) and the results produced by that computer program. The United States has already produced all inputs that Catalist used in this case as well as Catalist's results. *See* Ex. A. Thus, there is no further Catalist race data to produce.

## CONCLUSION

For the reasons stated above, the United States' respectfully requests that Defendants motion to compel be denied. Pursuant to Local Rule 7.4(D), a proposed order denying Defendants' motion is attached hereto.

Date:  August 12, 2014

                Respectfully submitted,

KENNETH MAGIDSON           MOLLY J. MORAN
United States Attorney            Acting Assistant Attorney General
Southern District of Texas        Civil Rights Division

                                        *Anna M. Baldwin*
                                        T. CHRISTIAN HERREN, JR.
                                        RICHARD A. DELLHEIM
                                        MEREDITH BELL-PLATTS
                                        ELIZABETH S. WESTFALL
                                        BRUCE I. GEAR
                                        BRADLEY E. HEARD
                                        JENNIFER L. MARANZANO
                                        ANNA M. BALDWIN
                                        DANIEL J. FREEMAN
                                        Attorneys, Voting Section
                                        Civil Rights Division
                                        U.S. DEPARTMENT OF JUSTICE
                                        950 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20530
                                        Telephone: (202) 305-4278
                                        Fax: (202) 307-3961

## **CERTIFICATE OF SERVICE**

This certifies that I have this day filed the within and foregoing **United States' Opposition to Defendants' Motion to Compel** electronically using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record through the Court's electronic filing system.

This 12th day of August, 2014.

*s/ Anna M. Baldwin*
ANNA M. BALDWIN
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
anna.baldwin@usdoj.gov
