# Exhibit 7

```
                                                              1
     IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF COLUMBIA

STATE OF TEXAS            )
                          )
                          )
VS.                       )  NO. 12-CV-128
                          )  (DST, RMC, RLW)
                          )
ERIC H. HOLDER, JR.,      )
In his official           )
Capacity as Attorney      )
General of the United     )
States, ET AL             )

*******************************************************
ORAL DEPOSITION OF MAJOR FORREST MITCHELL
*******************************************************
     ANSWERS AND DEPOSITION OF MAJOR FORREST MITCHELL, a
witness called by the United States taken before Janalyn
Reeves, Certified Shorthand Reporter for the State of
Texas, on the 15th day of June, 2012, between the hours
of 9:30 a.m. and 5:46 p.m., in the offices the United
States Department of Justice, 816 Congress Street, Suite
1000, Austin, Texas, pursuant to the agreement of
counsel for the respective parties as hereinafter set
forth.
```



Toll Free: 800.211.DEPO
Facsimile: 202.296.8652

Suite 350
1425 K Street NW
Washington, DC 20005
www.esquiresolutions.com

66

1      have concurrent jurisdiction.
2           Q.  Are they authorized to take the lead on any of
3      these particular investigations, prosecutions?
4           A.  I believe that in the case of
5      multi-jurisdictional elections, the answer would be yes.
6           Q.  All right.  And I believe you've answered this in
7      a general way.  Does the SIU prosecute the cases that it
8      investigates?
9           A.  Oh, no, sir.
10          Q.  So let's talk about that structure a little bit.
11     Your unit, the SIU, conducts the investigations.  How
12     does it then, shift to the prosecution stage?
13          A.  At the completion of our investigation, we would
14     prepare an investigative packet with statements,
15     reports, supporting documentation, it could be recorded
16     interviews, those kinds of things.  And that would be
17     presented to the local district attorney, county
18     attorney or to the criminal prosecutions division.
19          Q.  And did you produce these election investigation
20     packets to your attorney, to your attorney in this case?
21          A.  In the scope of this?
22          Q.  Yes.
23          A.  No.
24          Q.  All right.  And you said something in your
25     answer, and I want to kind of flesh that out a little


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 202.296.8652

Suite 350
1425 K Street NW
Washington, DC 20005
www.esquiresolutions.com

1       Q.  Okay.  And when you say, "electronically
2   published," do you publish these spread sheets on any
3   particular system?  Do you make them publicly available?
4       A.  If I could explain?
5       Q.  Sure.
6       A.  I maintain an Excel spread sheet that has three
7   different books.  One book is specifically for
8   referrals.  One book is specifically for prosecution
9   resolved.  And one book is for charges pending.  And
10  then I publish to a PDF any one of those three books or
11  a combination of all three or all three.
12      Q.  And when you say, "publish to a PDF," where does
13  that go?
14      A.  It could go to somebody in our open records
15  division who has requested a copy.  It could go to our
16  intergovernmental relations division.
17      Q.  So if a news agency wanted a copy of your spread
18  sheets, then that would be published and released to the
19  news agency?
20      A.  Yes, sir.
21      Q.  Okay.  When news -- have news agencies made
22  request for your spread sheets in the past?
23      A.  Yes, sir.
24      Q.  And other than the spread sheet, do you provide
25  them with any additional information?



Toll Free: 800.211.DEPO
Facsimile: 202.296.8652

Suite 350
1425 K Street NW
Washington, DC 20005
www.esquiresolutions.com

                                                                         104

1     been the spread sheet that was provided to
2     Representative Anchia?
3         A.  Yes, that would be incorrect.
4         Q.  That would be incorrect?
5         A.  I'm sorry.  This would not be the spread sheet
6     that was provided to Representative Anchia.
7         Q.  It would have only included the 2011 referrals?
8         A.  Up to the most current, at the time of the
9     request.
10        Q.  And I believe I asked you and I'm sorry if I did,
11    do you recall when you provided him a copy -- there were
12    multiple occasions, but in 2011, do you recall the time
13    period you provided to him these spread sheets?
14        A.  It may have preceded the legislative session and
15    it would have -- but we can provide him continuous
16    updates.  So he made multiple request.
17        Q.  And you said, "it may have preceded the
18    legislative session."  Could it have been during the
19    legislative session?
20        A.  Yes, sir.
21        Q.  Okay.  All right.  Do you know if he got a copy
22    of the March 12, 2012 version?
23        A.  I don't know.
24        Q.  You don't know.  Okay.  So turning your attention
25    back to Exhibit 584, I believe, which is the press


Toll Free: 800.211.DEPO
Facsimile: 202.296.8652

Suite 350
1425 K Street NW
Washington, DC 20005
www.esquiresolutions.com

149

1    investigations between 2002 to 2004, you would not be
2    able to do that?
3        A.  I don't know.
4        Q.  Is it fair to say that in preparation for this
5    deposition you didn't look at any files, either
6    electronic or paper, between 2002 up to 2004?
7        A.  I was able to query all of our election cases
8    which was through our system -- which showed me cases
9    from 2004 to present.
10       Q.  So is that a yes or no?  I'm sorry.
11       A.  I did not look at any files -- investigative case
12   files from 2002 to present -- or to 2004.
13       Q.  So we're still working with the 320 number, which
14   would be reflective of 2004 to the present, correct?
15       A.  No.  Actually that number would be -- that time
16   frame -- the 320 encompasses --
17       Q.  2002?
18       A.  2002 to the present.
19       Q.  Now, I'm sorry.  I talked over you.  That was
20   2002 to the present?
21       A.  Yes, sir.
22       Q.  I think we're getting there.  All right.  So of
23   the 320 referrals from all sources to the OAG's office
24   from 2002 to the present, how many of those were
25   investigated?


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 202.296.8652

Suite 350
1425 K Street NW
Washington, DC 20005
www.esquiresolutions.com

150

```
 1        A.   I believe 186.
 2        Q.   Okay.  Of those 186 referrals that were
 3   investigated from 2002 to the present, how many of those
 4   dealt with voter impersonation at the polling place?
 5        A.   I can clearly identify four.
 6        Q.   And you've done that already on the record?
 7        A.   Yes, sir.
 8        Q.   Other than those four, are you aware of any
 9   others?
10             MR. SWEETEN:  And you're asking allegations,
11   just so I'm clear.
12             MR. GEAR:  No.  I'm asking about
13   investigations.
14             MR. SWEETEN:  Investigations.  Okay.
15        A.   There are more.  But those four are the ones that
16   were charged.  I do not know the number off the top of
17   my head for the other ones that weren't charged.
18        Q.   (By Mr. Gear)  And as we've -- as you've
19   testified before, that a referral can come into your
20   office and not result in a charge, correct?
21        A.   That's correct.
22        Q.   And that they can come in your office and not be
23   supported by, either the facts of the law, would that be
24   accurate?
25        A.   That's correct.
```



Toll Free: 800.211.DEPO
Facsimile: 202.296.8652

Suite 350
1425 K Street NW
Washington, DC 20005
www.esquiresolutions.com

                                                                         186

1      A.  No, sir.  She was not prosecuted.
2      Q.  So the allegation was not substantiated?
3      A.  No, sir.  She is a non-citizen.  However, we
4   didn't think that she had the mens rea.  Because someone
5   led her to believe that as a resident she could vote in
6   an election.
7      Q.  So tell me what the facts are.  What did you
8   find?  Did you investigate the case?
9      A.  I didn't personally.  But one of my investigators
10  did.
11     Q.  And who was the investigator?
12     A.  Sergeant Jennifer Bloodworth.
13     Q.  And can you tell me what the facts of the
14  investigation found?
15     A.  Specific to that non-citizen or generally as a
16  whole?  Because it's a substantial case.
17     Q.  Let's talk about the substantial case.  And we're
18  talking about, just so this is clear, we're talking
19  about Dallas County, the 2010 primary election, correct?
20     A.  Yes, sir.
21     Q.  And there was one individual that was ultimately
22  investigated?
23     A.  No, sir.  There were multiple individuals that
24  were investigated.  And those -- many of those
25  individuals are indicated in the prosecution's and



Toll Free: 800.211.DEPO
Facsimile: 202.296.8652

Suite 350
1425 K Street NW
Washington, DC 20005
www.esquiresolutions.com