# Exhibit 8

1

```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                CORPUS CHRISTI DIVISION

MARC VEASEY, et al.,      )
                          )
     Plaintiffs,          )
                          )
VS.                       ) CIVIL ACTION
                          ) NO. 2:13-CV-348 (NGR)
RICK PERRY, et al.,       )
                          )
     Defendants.          )
```

*************************************************************

ORAL DEPOSITION OF

MAJOR FORREST MITCHELL

AUGUST 12, 2014

*************************************************************

ORAL DEPOSITION OF MAJOR FORREST MITCHELL, produced as a witness at the instance of the Plaintiff-Intervenors and duly sworn, was taken in the above-styled and numbered cause on August 12, 2014, from 9:11 a.m. to 2:00 p.m., before Jodi Cardenas, RPR, CSR in and for the State of Texas, reported by computerized stenotype machine at the Office of the Attorney General of Texas, 209 West 14th Street, 7th Floor, Austin, Texas, pursuant to the Federal Rules of Civil Procedure.

                                                               60

1    describe to me how alleged Election Code violations get
2    referred to SIU?
3         A.   Yes, sir, I can.
4         Q.   Thank you.
5         A.   There are a number of different ways they may
6    be referred to the Attorney General's office.  Probably
7    the largest portion of cases are direct referrals from
8    the elections division of the secretary of state's
9    office.  A portion of the cases could be direct
10   referrals from a district or a county attorney in any of
11   the jurisdictions in Texas.  Or it could be a referral
12   from another law enforcement agency such as a sheriff's
13   department, the Texas rangers, FBI, any -- any type of
14   organization, any kind of law enforcement organization.
15   And then, finally, some of the referrals that we receive
16   are from elections administrators themselves.
17        Q.   And when you say election administrators, those
18   are the county officials or municipal officials involved
19   with running the elections?
20        A.   Yes, sir.  It depends on the jurisdiction
21   whether or not they would be an elections administrator
22   or the county clerk or the county tax
23   assessor/collector.
24        Q.   And do I understand Texas law correctly that
25   referrals could also come from voters directly in

1      Q.   (BY MR. DUNBAR)  Help me understand this
2   process.  And I guess I -- I apologize if I missed it
3   before in the testimony.  The referral comes in to the
4   director, deputy director, is scanned and entered, is
5   then sent to the special investigations unit.  I'm just
6   trying to understand where in this process someone might
7   say, "Wait a minute, this referral doesn't seem worthy
8   of investigation."
9      A.   I'll give you an example.
10     Q.   Please.
11     A.   We did receive a referral from the secretary of
12  state's office, and the allegations of misconduct in the
13  particular election that was involved exceeded the
14  criminal statute of limitations.  So the offense that
15  may have been identified was a misdemeanor offense.
16  Let's say, hypothetically, it was mishandling of a
17  mail-in ballot, and it was an election that occurred
18  three years ago.  That statute of limitations is two
19  years.  So there's no reason for us to investigate
20  something that has no criminal violations to it.
21     Q.   I appreciate -- thank you for that example.
22              Who -- who within the hierarchy is most
23  likely to make that type of decision?
24     A.   Well, it's -- it's a decision that would be
25  made by the captain, the major, and potentially the

68

1    deputy director and the director.
2         Q.   And is there -- are there guidelines -- written
3    guidelines that deal with the criteria that should be
4    used to decide whether a referral is worth
5    investigation?
6         A.   No.  There's not a -- a point system where a
7    specific criteria which to -- which specifically says
8    these are the ones we will investigate or not, other
9    than that there was a -- we have made a decision that we
10   wouldn't investigate Class C misdemeanors.  That's kind
11   of an administrative policy.
12        Q.   And is that type of decision -- is that written
13   down somewhere in policy guidance, or is that more --
14   kind of an informal decision that's made?
15        A.   I apologize.  I don't recall.
16        Q.   So as far as you're aware, there are no
17   statutes or regulations that would govern when SIU is
18   required to actually investigate a referral from the
19   secretary of state's office?
20              MR. CLAY:  Objection; form, foundation.
21              THE WITNESS:  It's my understanding that
22   under the Texas Elections Code that if the secretary of
23   state's office believes that criminal conduct has
24   occurred in an election, that they may send a referral
25   to the Attorney General's office for an investigation.

139

1  Q. And for my clarification, which -- which page
2  does the second part of the referral spreadsheet start
3  on?
4  A. The second portion of the referral -- the
5  second categorization starts on Page 15 of the document
6  which is identified as TX I.R. 000247.
7  Q. Thank you.
8      And the second part -- the second part
9  that begins on I.R. 000247, to make sure I understand
10 your testimony, would be referrals from other sources
11 other than the secretary of state's office?
12 A. Correct.
13 Q. Okay. Starting with the --
14 A. If I could expand on that.
15 Q. Please.
16 A. I'm sorry. It's not -- it's more than just
17 referrals. It is allegations that this office had been
18 made aware of. It may not be a full referral. For
19 instance, you may see that some of these may be a voter.
20 A voter may have called our office and made us aware of
21 an allegation of misconduct. It may not have resulted
22 in an investigation as previously testified.
23 Q. I see. So the -- the hypothetical voter that
24 we were talking about earlier that just might call AOG's
25 hotline and say, "I want to report voting fraud," I

                                                        141

1    spreadsheet correctly in that regard?
2        A.   Yes.
3        Q.   Okay.  So everything -- everything that's on
4    this spreadsheet as of February 18th, 2014 was still in
5    some stage of investigation.  Is that correct?  Or would
6    this -- let me rephrase.
7             Would this spreadsheet encompass referrals
8    that have come over and then a decision has been made,
9    either not to investigate or not to prosecute?
10       A.   This spreadsheet reflects the referrals that
11   would be made to this office and what the originating
12   source was and what the date of that referral was.
13       Q.   So if I'm looking to take, for example, the
14   Angelina 2010 primary election referral, which has an
15   SOS referral date of 3/22/12, its presence on this
16   spreadsheet doesn't suggest that is as it continues to
17   be a pending investigation.  Am I understanding that
18   right?
19       A.   That spreadsheet does not reflect a disposition
20   of any investigation.
21       Q.   So this could -- it would -- this entry would
22   remain on your spreadsheet, even if your -- even if your
23   investigators had decided this case isn't -- there's
24   nothing to this case, or it's not worth prosecuting?
25       A.   This -- the referrals will never be removed