## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| RICK PERRY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' OPPOSITION TO THE UNITED STATES' MOTION TO DETERMINE THE SUFFICIENCY OF DEFENDANTS' RESPONSES TO THE UNITED STATES' CORRECTED SECOND SET OF REQUESTS FOR ADMISSION

The United States served Defendants with over 770 Requests for Admission ("RFAs"), which are replete with characterizations and references to documents created by third parties.[1] (*See* Ex. 1.)  All but a tiny portion of these RFAs are directed at, or concern information generated by two third parties which this Court explicitly ruled are not parties to this litigation, the Texas Attorney General's Office ("OAG") and the Texas Legislative Council ("TLC"), approximately one month before Defendants were served with the RFAs. (*See* Ex. 4.) The RFAs in large part ask Defendants to agree to the United States' characterizations of over 6000 pages of documents which were neither produced in this Section 2 litigation, nor the *Texas v. Holder* litigation concerning SB 14 (the "Section 5 Voter ID Case"), nor which relate to SB 14 or any voter identification laws.

---

[1] The United States misnumbered its Requests for Admission, and, accordingly, after the first RFA 326, the following RFA is a second RFA 324, and the RFAs continue in sequence from that second RFA 324 up to RFA 770. (*See* Ex. 1.)

The only two RFAs which sought information from a named party to this litigation, the Texas Secretary of State, were answered fully by the Defendants, to which the United States apparently does not object.   (*See* Motion at 10).[2] Defendants responded to the remaining approximately 768 RFAs with several objections tailored to each RFA, as well as a statement that "[s]ubject to and without waiving the above objections, and as demonstrated above, the Defendants do not have sufficient knowledge to admit or deny; therefore, the Defendants deny this request."   Accordingly, these RFAs have, on their face, been properly denied, notwithstanding the fact that Defendants lack sufficient knowledge to admit or deny them.   Moreover, Defendants' statement is almost identical to the "lacks knowledge or information sufficient to admit or deny and therefore denies," responses given by the United States to at least 22 of the only 42 RFAs served by Defendants on the United States.   (*See* Ex. 3.)   For the reasons explained below, Defendants' responses to the 770-plus RFAs are sufficient, and the Court should deny the United States' request to deem them admitted.[3]

## I.   Information From the OAG and the TLC:   RFAs 1-717; 746-47, 748

This Court's April 3, 2014 Order determined that the OAG and TLC are not parties to this litigation, and that information sought from them which was not

---

[2]   Confusingly, however, the United States does not separate out these two RFAs in its request to deem the RFAs admitted.   (*See* Motion at 10; Ex. 2 at RFAs 744 and 745.)

[3]   If the Court finds that any of Defendants' responses to the RFAs are insufficient, Defendants stand on their denials.   The Court should not countenance the United States' pleas to deem admitted the RFAs due to the "imminence" of trial; the United States was served with Defendants' Objections and Responses to the RFAs on June 26; it is not Defendants' fault that the United States chose to raise these issues at this late date.   If the Court is not willing to allow Defendants to stand on their denials, Defendants respectfully request an opportunity to amend their answers to the RFAs.

already in the possession, custody, or control of Defendants from the Section 5 Voter ID Case, needed to be obtained by subpoena.  (*See* Ex. 4.) This notwithstanding, almost 750 of the RFAs propounded on Defendants concern information which was allegedly created and generated by the OAG and TLC, which have not been produced in either this case or the Section 5 Voter ID Case, but were allegedly produced in a 2011 litigation involving redistricting (the "Redistricting Litigation" and "Redistricting Documents").[4]

A.  *Requests to Admit Information In Control of Third Parties Are Inappropriate*

While the Court's Order required Defendants to turn over documents already in the OAG's possession from the Section 5 Voter ID Case, it also required any new discovery on OAG and the TLC to be served via subpoena.  (*See* Ex.4 at 2.)  The documents at issue here were from the Redistricting Litigation, not the Section 5 Voter ID Case.  Moreover, requests for documents, which may be obtained from third parties, are different forms of discovery than party discovery devices, such as Requests for Admission.  *See Haggie v. Coldwell Banker Real Estate Corp.*, CIV A 404CV111-M-A, 2007 WL 1452495 (N.D. Miss. May 15, 2007) (citation omitted).[5] Nor can an attorney be  required to answer interrogatories, for example, about the

---

[4] Defendants note that the Redistricting Documents attached to the United States' RFAs to Defendants do not contain any bates-numbers.

[5] Specifically, the *Haggie* court determined "a party cannot be forced to admit or deny facts testified to by a third party as to which the responding party has no personal knowledge.  Because requests for admissions can have dire consequences, the responding party's duty to obtain information is no broader than that owed in responding to interrogatories; *i.e.*, generally limited to obtaining information from persons and entities of which it has actual control…" *Id.* at *2 (citations omitted). Any "reasonable inquiry" under Fed. R. Civ. P. 36 does not "require the defendant to make judgments or put itself in the shoes of another unrelated defendant.  In other words, a real estate company is not required to expend time, energy, and money to inquire as to the veracity of a request for admission regarding information that the bank, its employees, a mortgage lender, its employees, or an appraiser may have had or what those individuals may have thought or done in the course of closing a loan for the sale of a specific property. *Id.* at *4(citations omitted).

3

affairs of other clients represented by that attorney. *Nissei America, Inc. v. Cincinnati Milacron, Inc.*, 95 F.R.D. 471, 475 (N.D. Ill. 1982)[6]  To deem the bulk of the RFAs here admitted would permit the United States to eschew utilizing proper third party discovery devices. *See Pressure Sys. Int'l, Inc. v. Airgo IP , L.L.C.*, SA-07-CV-0498 FB(NN), 2007 WL 4198430 (W.D. Tex. Nov. 26, 2007); *BB Buggies, Inc. v. Bad Boy, Inc.*, 1:12-CV-00057 KGB, 2014 WL 936430 (E.D. Ark. Mar. 10, 2014) (noting "these matters [ ] may be explored through additional written discovery requests or deposition.").

The United States itself objected to several of Defendants' RFAs on the grounds that information is not "readily available to the United States" because it is "in possession of" various third parties, answering for eight that it lacked information sufficient to admit or deny, and therefore denied.  (*See* Ex. 3 at  RFAs 5, 6, 8 , 9, 22, 23, 26, 27, 28, 29, 30,  31, 40, 41.).[7]  Moreover, several of the United States' responses to Defendants' RFAs for which it "lack[s] knowledge" sufficient to admit

---

[6] The Courts in the non-Fifth Circuit cases cited by the United States for the proposition that an attorney's knowledge can form a basis to respond to Requests for Admission did not deem the Respondent's answers admitted, instead, they gave the responding parties an opportunity to respond to the RFAs.  See *Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 551, 557 (D.N.M. 2011); *Adkins Energy, LLC v. Farmland Mut. Ins. Co.*, 04 C 50482, 2009 WL 1259344 (N.D. Ill. May 6, 2009).  Moreover, the *Stark-Romero* court determined "Requests for admissions are rarely useful in twenty-first century complex commercial litigation, and are mostly helpful to authenticating documents or getting the most basic factual stipulations. Requests for admissions are useful when there is an admission, but not very useful when there is not a clear admission. The third sentence is made under rule 11, which is probably the best end to request-for-admission disputes; to read a requirement that the answering party describe in detail the reasonable inquiry only promotes satellite litigation with little benefit."  Accordingly, 770 plus Requests for Admission do not appear to be in line with what that Court considered appropriate for this century.

[7] In none of those objections did the United States explicitly say it "made a reasonable inquiry"; it just referred to its objections in responding, which is exactly what Defendants have done here. Moreover, as the United States did not hesitate to assert in its own objections to Defendants' RFAs regarding documents (unless a denial supported their case), a document may speak for itself. (*See* Ex. 3 at RFAs 3, 25, 32, 33, 34, and 36) (concerning the Texas Election Code, REAL ID Act, the Texas public legislative record, and the Supreme Court's Order in *Texas v. Holder*).

or deny are based on "vagueness" of very similar terms they used.  As this Court has said many times before, what is good for the goose is good for the gander, and the United States should not hold Defendants to any different standard than it held itself in responding to Defendants' RFAs.[8]  Defendants address these requests by category below.

### B. RFAs 1-43 and 748

The United States contends that RFAs 1-43 and 748 relate to the "authenticity" of the five Redistricting Documents.  The suggestion that 44 RFAs can be related to the "authentication" of five documents grossly oversimplifies RFAs 1-43, and 748, and ignores that they seek admissions to the characterizations of documents which not only were created by third parties, but also speak for themselves.  For example, RFA 10 requests Defendants to "[a]dmit that the document attached as Exhibit A, entitled 'Racially Polarized Voting Analysis', regarding Texas Senate Plan 148 and dated 5/18/2011, was made available to members of the Texas Legislature."  (Ex. 2 at RFA 10; *see also* RFAs 11-13, 20-23, 30-33, 40-43.)  There is no way that Defendants should be expected to have knowledge of what their counsel may or may not have shared with entities this Court has also determined are third parties, before SB 14 was even signed into law.  RFA 748 asks Defendants to "[a]dmit that Exhibit E is a true and correct copy of a document created by the Texas Legislative

---

[8] Defendants understand, for example, that counsel for the Veasey-LULAC Plaintiffs, Chad Dunn, is General Counsel of the Texas Democratic Party and accordingly represents the Texas Democratic Party.  Defendants would hardly expect the Court to compel the Veasey-LULAC Plaintiffs to respond to party discovery requests such as RFAs and Interrogatories directed at Mr. Dunn, requesting authentication of documents created by him or the Texas Democratic Party, simply because the Texas Democratic Party is his client in addition to the Veasey-LULAC Plaintiffs.

Council entitled 'Data for 2011 Redistricting in Texas." (Ex. 2 at RFA 748.) This document has absolutely nothing to do with voter identification laws on its face, and again, asks Defendants to authenticate a document allegedly created by a third party.

C. *RFA 44*

RFA 44 asks Defendants to admit to a statement contained in a pleading in the 2011 litigation relating to redistricting filed by the "State of Texas", which is not attached to the RFAs, and which speaks for itself. Moreover, a statement in one lawsuit is not an admission in another, and thus, to the extent the United States is asking Defendants to admit to the truth of a statement in a prior litigation, that is improper. *See Univ. Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991); *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F. 3d 319, 329 (5th Cir. 2001).

D. *RFAs 45-717*

The United States characterizes RFAs 45-717 as "[f]acts regarding racially polarized voting in recent Texas elections as detailed in an analysis conducted by the Texas Office of the Attorney General, and as reflected in Ex. A to the RFAs." First, the document speaks for itself. Also, the United States uses various undefined terms in these over 670 RFAs, including "Hispanic", "Black", and "Anglo."[9] The United States itself objected to the terms "Anglo" and "Hispanic"

---

[9] For example, RFA 45, which is similar to RFAs 46-326, but for the reference to different Senate districts, and different elections, and, in some cases "Hispanic" instead of "Black" voters, requests an admission that "for Texas Senate District 1, as drawn under PlanS148, the Office of the Texas Attorney General estimated that a higher percentage of Anglo voters than of Black voters cast

"registered voters" and "voters" in its own responses to Defendants' RFAs which employed those terms, as "vague", asserting that the use of such words rendered it unable to admit or deny the RFA.  (*See* Ex. 3 at RFAs 17, 18, and 19.)

Nor was the redistricting Plan, S148, referenced in these RFAs, attached as an exhibit.  As the United States points out in its own objections to Defendants' RFAs, where an RFA is vague and ambiguous, it does not have to be answered.  (*See*, *e.g.*, Ex. 3 at 2 (citing *Dubin v. E.F. Hutton Group, Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y. 1989)).[10]

*E.  RFAs 746 and 747*

RFAs 746 and 747 request admissions from Defendants to the use of "Spanish Surnames", "as set out in the 2000 Census Bureau List of Spanish Surnames", which is not attached, allegedly by the TLC and the OAG during "2011 redistricting" to "identify voters."  Defendants objected to these terms as "vague."

---

ballots in the 2002 General election.  *See* Ex. A"   The RFA following RFA 326, the second RFA 324, requests an admission that "for Texas Senate District 1, as drawn under PlanS148, the Office of the Texas Attorney General estimated that the majority of Black voters casting ballots and the majority of Angle voters casting ballots preferred different candidates in the 2002 General Election contest for Governor."  The second RFA 325 which follows the second RFA 324, requested Defendants to admit that non-party OAG "for Texas Senate District 1, as drawn under Plan S148, the Office of the Texas Attorney General estimated that the majority of Black voters casting ballots preferred the Hispanic Democratic candidate while the majority of Anglo voters casting ballots preferred the Anglo Republican candidate in the 2002 General Election contest for Governor. *See* Ex. A."  RFAs 326-717 are similar to the second RFAs 324 and 325, concerning various other candidates for various elected offices in various elections in various Senate Districts, and the preferences of Black, Anglo, and Hispanic voters vis-à-vis these elections and candidates.

[10] Defendants also properly objected to these RFAs on relevance grounds.  While "[t]he extent to which voting in the elections of the state or political subdivision is racially polarized" is one of the "Senate Factors" referenced by this Court in its order on Defendants' Motion to Dismiss, *Veasey v. Perry*, No. 13-cv-193, 2014 WL 3002413 (S.D. Tex. July 2, 2014), Defendants have previously asserted that the application of those factors is unconstitutional, and reassert that here for preservation purposes.  Furthermore, Defendants cannot know whether a third party's interpretation of "racially polarized voting" has the same meaning as is used in the Senate Factors, and responding to the RFAs would require Defendants to make a legal conclusion on behalf of a third party.

Notably, the United States, in its objections to Defendants' RFAs, also objected to "Hispanic surname", and "identified" as vague terms, stating it was unable to admit or deny an RFA because of the use of "identified", and objecting that the use of "Hispanic surname" rendered it difficult to answer another RFA. (*See* Ex. 3, at RFAs 1, 2.)[11]  Deeming Defendants' responses to RFAs 746 and 747 admitted would be inequitable when the United States cannot admit to knowing the meanings of those terms.

## II.    RFAs 718-739: Vague Assertions Regarding Participation of African-American, Hispanic, Spanish Surnamed, and Anglo Voters in Various "Primary Elections"

For the same reasons the United States' references to "African American," "Hispanic," "Spanish Surnamed," and "Anglo" in RFAs 45-717 and RFAs 746-747 render the RFAs vague, RFAs 718 – 739 ask the Defendants to admit to the levels of participation of African American, Hispanic, Spanish Surnamed, and Anglo voters in the "Democratic Party" and "Republican Party" primary elections in various years, as well as the political parties of the candidates members of these various

---

[11] In fact, the United States objected that various RFAs were "overly broad, vague and ambiguous, rendering it difficult to fairly admit or deny",  because the following terms were "not defined" and "subject to multiple interpretations: "Hispanic surname" (RFA #1); "impossible"; "identified" (RFA #2); "Georgia…Voter ID law" (RFA #4), "Georgia's Voter ID law"; "voter turnout" (RFA # 5, 6, 8, 9); "Indiana's Voter ID" (RFA #7); "Indiana's Voter ID Law" (RFA #8, 9); "investigated and substantiated" (RFA #10); "attempted to determine" (RFA #s 12, 13, 14, 15, 16); "Hispanic registered voters"; "possess"; "Anglo registered voters" (RFAs # 17, 18);  "qualify"; "Anglo voters" (RFA #19); "proof of citizenship" (RFA #24); "in-person voter fraud" (RFA # 27); "public legislative record," "preserving public confidence", "a purpose" (RFA # 32);  "Texas public legislative record"; "racially discriminatory rhetoric" (RFA #33) ; "2 elections" (RFA # 35) ; "issue" and "free of charge" (RFA # 37); "can vote" (RFA # 38); "mobile outreach program"; "purposes" and "additional opportunities" (RFA # 39); "monetary cost", "birth certificate" purposes" (RFA # 40); ""very popular" (RFA 42). (*See* Ex. 2.) In response to at least 9 of these RFAs, the United States gave no answer beyond its objections, and a statement that it lacked knowledge to admit or deny, and therefore denied. In at least two responses, the US does not identify the specific portion or language in the RFA it finds vague or ambiguous. (*See id.*, Response to RFA 11, 22.)

groups have voted in in "all general elections for statewide office in Texas since 2006." They do not reference any documents at all. There are additional vague and ambiguous terms; "statewide primary elections" and "chose to participate." In addition, the United States itself objected to the relevance of voter turnout by racial group and voter preferences in response to Defendants' RFAs, and stated that they "lack[ed] knowledge or information sufficient to admit or deny and therefore deny" the following requests, also asserted that the "request[s]…seek [ ] an admission that is not likely to lead to the discovery of admissible evidence"[12]

### III.   The RFAs which Call for Legal Conclusions  - RFAs 749-50

RFAs 749-50 would require Defendants to admit to legal conclusions and information regarding a candidate for office who is not a party to this litigation. As cited by the United States in their own responses to Defendants' RFAs, "Rule 36 cannot be used to compel an admission of a conclusion of law." (*See* Ex. 3 at 3, citing *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F. Supp. 2d 942, 959 (S.D. Tex. 2010).)

### IV.   RFAs 751-770 – The RFAs which Ask Defendants to Admit to Census Data Generated By An Arm of the United States

RFAs 751-770 ask Defendants to admit to various characterizations of certain Census and American Community Survey data, which is generated by the United States Census Bureau, not Defendants. No documents or data are attached to the

---

[12] *See* Ex. 3, at RFAs 5, 6, 8, 9 (asking the United States to admit or deny that voter turnout in Georgia and Indiana for Hispanic and African-American citizens voting age population has increased since the implementation of those states' Voter ID laws), and 11 (asking the United States to admit or deny that a "majority of Texas registered voters are in favor of SB 14").

RFAs in support of the United States Census figures.[13]  They also contain terms which Defendants find vague, including "Non-Hispanic white persons," "non-Hispanic black persons," and "Hispanic persons,"[14]  Defendants also properly objected that the requests contained expert analysis more appropriately addressed by experts.  Absent more information, Defendants cannot properly answer these RFAs.

## V.    CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny the United States' Motion.

Dated: August 22, 2014

                                      Respectfully submitted,

                                      GREG ABBOTT
                                      Attorney General of Texas

                                      DANIEL T. HODGE
                                      First Assistant Attorney General

                                      JONATHAN F. MITCHELL
                                      Solicitor General

---

[13] While the requests refer to various exhibits to ECF 252, which was a request for judicial notice of other census and ACS data, there is no explanation as to why those references are relevant here, and, as Defendants objected, may be calling on Defendants to make an admission as to a legal pleading.

[14] The United States itself in responding to Defendants' RFAs, made Objections to providing information regarding possession of documents which are issued by the United States, which can be used as a form of identification to vote in Texas, or used to obtain a form of identification to vote, on relevance and vagueness grounds (and a lack of geographic limitations).  (*See* Ex. 3 at RFAs 17 and 18.)  If the United States will not admit to statistical data about documents issued by it, Defendants should not in turn be forced to admit to statistical data from a United States agency.

J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General
Southern District of Texas No. 1160600

*/s/ John B. Scott*
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
Southern District of Texas No. 10418
Texas State Bar No. 17901500
ATTORNEY-IN-CHARGE

G. DAVID WHITLEY
Assistant Deputy Attorney General
Southern District of Texas No. 2080496

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

JENNIFER MARIE ROSCETTI
Assistant Attorney General
Southern District of Texas No. 224780

LINDSEY ELIZABETH WOLF
Assistant Attorney General
Southern District of Texas No. 2292940

FRANCES WHITNEY DEASON
Assistant Attorney General
Southern District of Texas No. 2302872

STEPHEN LYLE TATUM, JR.
Assistant Attorney General
Southern District of Texas No. 2338090

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

11

BEN A. DONNELL
Donnell, Abernethy & Kieschnick
555 N. Carancahua, Suite 1770
Corpus Christi, Texas 78401-0853
Southern District of Texas No. 5689

COUNSEL FOR THE STATE OF TEXAS,
RICK PERRY, JOHN STEEN, and STEVE
MCCRAW

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2014, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


_/s/ John B. Scott_
JOHN B. SCOTT