UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


MARC VEASEY, ET AL.,            )      CASE NO: 2:13-CV-00193
                               )
              Plaintiffs,      )             CIVIL
                               )
      vs.                      )       Corpus Christi, Texas
                               )
RICK PERRY, ET AL.,            )      Wednesday, August 27, 2014
                               )
              Defendants.      )      (9:01 a.m. to 10:23 a.m.)


PRETRIAL CONFERENCE


BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE




Appearances:              See Next Page

Court Recorder:           Genay Rogan

Clerk:                    Brandy Cortez

Court Security Officer:   Adrian Perez

Transcriber:              Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES FOR:</u>

Plaintiffs:                          CHAD W. DUNN, ESQ.
                                     Brazil and Dunn
                                     4201 Cypress Creek Parkway, Suite 530
                                     Houston, TX 77068

                                     J. GERALD HEBERT, ESQ.
                                     Attorney at Law
                                     191 Somervelle Street #405
                                     Alexandria, VA 22304

Mexican American                     EZRA D. ROSENBERG, ESQ.
Legislative Caucus,                  AMY L. RUDD, ESQ.
et al.:                              Dechert, LLP
                                     902 Carnegie Center, Suite 500
                                     Princeton, NJ 08540-6531

Texas State Conference               MARK A. POSNER, ESQ.
of NAACP Branches:                   Lawyers' Committee for Civil Rights
                                     1401 New York Avenue, NW
                                     Suite 400
                                     Washington, DC 20005

Texas League of Young                NATASHA KORGAONKAR, ESQ.
Voters Education Fund:               RYAN HAYGOOD, ESQ.
                                     NAACP Legal Defendant and Educational
                                     Funds, Inc.
                                     40 Rector Street
                                     5th Floor
                                     New York, NY 10006

                                     DANIELLE CONLEY, ESQ.
                                     Wilmer Cutler Pickering, et al.
                                     1875 Pennsylvania Avenue, NW
                                     Washington, DC 20006

State of Texas:                      JOHN B. SCOTT, ESQ.
                                     J. REED CLAY, JR., ESQ.
                                     Office of the Attorney General
                                     P. O. Box 12548
                                     Austin, TX 78711

                                     JENNIFER ROSCETTI, ESQ.
                                     LINDSEY WOLF, ESQ.
                                     BEN DONNELL, ESQ.
                                     DAVID WHITLEY, ESQ.
                                     ARTHUR D'ANDREA, ESQ.
                                     WHITNEY DEASON, ESQ.

<u>APPEARANCES FOR (Cont'd):</u>

United States                 BRADLEY HEARD, ESQ.
of America:                   DANIEL J. FREEMAN, ESQ.
                              ELIZABETH S. WESTFALL, ESQ.
                              U. S. Department of Justice
                              950 Pennsylvania Avenue, N.W.
                              NWB Room 7125
                              Washington, DC 20530

                              JOHN A. SMITH, III, ESQ.
                              Office of the U.S. Attorney
                              800 N. Shoreline Blvd.
                              Suite 500
                              Corpus Christi, TX 78401

                              RICHARD DELLHEIM, ESQ.

Texas Association of          ROLANDO L. RIOS, ESQ.
Hispanic County Judges        115 E. Travis
and County                    Suite 1654
Commissioners:                San Antonio, TX 78205

Oscar Ortiz, et al.:          ROBERT DOGGETT
                              MARINDA VAN DALEN, ESQ.
                              Texas Rio Grande Legal Aid
                              4920 North IH 35
                              Austin, TX 78751

Non-Party Senators and        STEPHEN TATUM, ESQ.
Representatives:              JAMES ECCLES, ESQ.
                              ALICE LONDON, ESQ.

4

1       **Corpus Christi, Texas; Wednesday, August 27, 2014; 9:01 a.m.**

2                              **Call to Order**

3              **THE COURT:**  You can be seated.  The Court calls Cause

4       Number 2:13-00193, *Veasey, et al versus Perry, et al.*

5              The Plaintiffs will announce for the record.

6              **MR. DUNN:**  Good morning, your Honor.  This is Chad

7       Dunn and Gerry Hebert present in the courtroom on behalf of

8       Veasey LULAC Plaintiffs.

9              My co-Counsel, Armand Derfner and Emma Simpson

10      (Phonetic) are on the telephone and will not be speaking.

11             **THE COURT:**  All right.

12             **MR. ROSENBERG:**  Good morning, your Honor.

13             **THE COURT:**  Good morning.

14             **MR. ROSENBERG:**  Ezra Rosenberg on behalf of the Texas

15      State Conference of NAACP Branches and MALC (Phonetic), and

16      with me are Mark Posner and Vionette (Phonetic) Perez, and Amy

17      Rudd.

18             **THE COURT:**  Thank you.

19             **MS. VAN DALEN:**  Good morning, your Honor, Marinda --

20      excuse me, I'm sorry.  Good morning, your Honor.

21             **THE COURT:**  Good morning.

22             **MS. VAN DALEN:**  Marinda Van Dalen, Texas Rio Grande

23      Legal Aid on behalf of the Ortiz Plaintiffs.  With me today is

24      my co-Counsel, Robert Doggett.

25             **THE COURT:**  Okay.

1          **MR. HAYGOOD:**  Good morning, your Honor.

2          **THE COURT:**  Good morning.

3          **MR. HAYGOOD:**  Ryan Haygood for the Texas League of

4    Young Voters and Imani Clark.  I'm here with my colleagues,

5    Natasha Korgaonkar and Danielle Conley, and Kelly Dunbar is

6    also on the telephone.

7          **THE COURT:**  All right.

8          **MR. DELLHEIM:**  Good morning, your Honor.

9          **THE COURT:**  Good morning.

10         **MR. DELLHEIM:**  Richard Dellheim for the United

11   States.  With me at Counsel table is Elizabeth Westfall,

12   Bradley Heard and Daniel Freeman.

13         **THE COURT:**  All right.

14         **MR. SCOTT:**  Your Honor, John Scott along with the

15   rest of the State of Texas.

16         **THE COURT:**  Okay.

17         **MR. SCOTT:**  Representatives of the State of Texas.

18         **THE COURT:**  Okay, in the courtroom.

19         Okay.  We're here for a Final Pretrial Conference

20   regarding this matter.  And, I think, Mr. Scott, there was an

21   issue regarding the use of the non-party legislators' document,

22   and I thought we'd address that first so then we could move to

23   the issues regarding the parties only.

24         **MR. SCOTT:**  Sure, your Honor.  And I don't know that

25   I heard any of the other folks on the line.  Reed Clay from our

1    office is going to carry the water on that one for the

2    argument, but our -- I don't know if Ms. London is on the line

3    or --

4            **MS. LONDON:**  I'm right here, your Honor.

5            **MR. SCOTT:**  A pleasure, Alice.

6            **THE COURT:**  Okay.  I just -- I got an email on that

7    yesterday I believe, and I don't know much about what's going

8    on other than an email was sent to Brandy regarding you-all

9    wanted to present this issue to the Court today about the use

10   of documents regarding these non-party legislators.

11           **MR. SCOTT:**  I think that's right, your Honor.  I

12   think, so from a little bit of perspective, there is the issue

13   that's still out there, I think -- I believe later in the

14   hearing today the United States is going to tee up the

15   legislative privilege issue regarding a bunch of the folks that

16   voted for the Bill.  These are a group of Senators and

17   Representatives that were on the opposite side of that Bill.

18           And our position is Legislature acts as a body and

19   so, really, if we're going to let one side of the documents in

20   before the Court for its review, we'd like the Court to get the

21   full picture of the information out there.  So that is the

22   background behind it, I guess, the Senate documents, and then

23   there's another group of us, the House documents.

24           Ms. London is representing the State Senators, I

25   believe is correct, but the House votes are being represented

7

1    by some folks from a (indiscernible) unit out of the O of AG

2    and two other attorneys, I don't know if they're related.

3              **THE COURT:**  Are they here?

4              **MR. ECCLES:**  Your Honor, this is James Beau Eccles.

5    I've joined on the line, and we are representing the -- the

6    non-party State Representatives, at least a number of them, and

7    I can name them if you wish?  But we are the ones who submitted

8    Docket Number 386, which was a Motion to Quash the Subpoenas

9    initially.

10             **THE COURT:**  Okay.  So what are you-all presenting to

11   the Court today regarding these non-party Legislators?

12             **MR. SCOTT:**  Well, your Honor, we --

13             **MS. LONDON:**  Judge, I'm prepared, since it's my

14   Motion --

15             **THE COURT:**  Okay, you can approach.

16             **MS. LONDON:**  -- to start the presentation.  I've got

17   a --

18             **THE COURT:**  And I don't know exactly what the issue

19   is today so you can start from there.  All I got was an email

20   saying "We want to put something on the record about the use of

21   these nonparties' documents."

22             **MR. SCOTT:**  Well, we --

23             **MS. LONDON:**  And -- and, Judge, I've got a book that

24   has the pertinent --

25             **THE COURT:**  Okay.

8

1          **MS. LONDON:**  -- documents where I think we are, and

2     I'll give you the procedural background so you understand the

3     context of the decision that we're asking you to make.

4               I represent today six Senators and, for the record,

5     that's Senators Watson, West, Whitmire, Ellis, Uresti and

6     Zaffirini, and on the cover of your book I have the -- the

7     chart so you can see the six Senators.

8               Procedurally, in June of 2014, the State served these

9     Senators and some others with a subpoena asking for all

10    documents in their possession related to voter ID.

11              Within two to three weeks in July of 2014 these

12    Senators filed a Motion to Quash, a Motion for Protective

13    Order, but at the same time they produced all nonprivileged

14    documents.  They also provided detailed privilege logs for all

15    documents that they were asserting a legislative or attorney-

16    client privilege.

17              The hope was that with the offer of the privilege

18    logs we'd be able to narrow our discussion to some documents

19    that actually pertained to the issues before the Court.

20              The Court set a hearing on my Motion to Quash and the

21    Motion for Protective Order in August, and on the eve of that

22    hearing we reached an agreement, and the agreement is in your

23    notebook that I've put in front of you that essentially said we

24    would follow the Court's dictate in its opinion that it issued

25    related to the Department of Justice's similar request for

1    documents.

2           But what we would do is we would provide all of the

3    documents, we would make them highly confidential, attorneys'

4    eyes only so that the State could actually look at the

5    documents and say which ones it actually needed so that we

6    could come before the Court and only use the Court's time for

7    the actual documents.

8           And then it was contemplated that the State would

9    give us the opportunity by giving us two days' notice of those

10   documents they intended to use so we could then address the

11   legislative privilege in an actual context, not a theoretical.

12   These are the documents that need to come in at trial; here's

13   why they're relevant, so that the Senators could weigh whether

14   they wished to waive the privilege as to a particular document

15   pertinent to a particular issue.

16           When the deadline came to -- for the State to

17   designate which documents, and to give you some context, we're

18   talking, I'm guesstimating somewhere between 8 and 10,000 pages

19   of documents.  When the time came for the State to designate

20   the documents it intended to use, you'll see on the first page

21   of your notebook the letter where they designated -- of the

22   eight Senators, they have designated six Senators' documents,

23   but they designated 100 percent of the 8 to 10,000 pages.

24           So that -- under the agreement we reached is that we

25   would then come to the Pretrial today to discuss the specific

1   admissibility of the documents that are at issue between these

2   parties.  So procedurally that's the context.

3            And I want to say, first of all, I have been told by

4   some of the parties that the -- there's been a great deal of

5   discussion about what's good for the goose is good for the

6   gander, and I want to take that to heart and refer to the

7   Court's opinion because we agree in that the opinion and the

8   language I'm referring to is also in the notebook and I've

9   highlighted the specific language.  The Court has said there is

10  a legislative privilege, we don't need to retread that ground;

11  that it's a qualified privilege, we don't need to retread that

12  ground.

13           The Court has said there are five factors that the

14  Court must look at and we agree that while the Court believes

15  those five factors applied, when looking at the proponents of

16  the Bill, those five factors, likewise, should apply to the

17  opponents of the Bill, and -- and just to put it in context, I

18  represent six Senators who all voted against the voter ID law,

19  and the documents that are being sought are documents of people

20  who opposed the legislation that is being challenged in this

21  Court.  And whether they have a legislative privilege should be

22  put to the same test as the proponents of the Bill, and those

23  five factors as mentioned in the Court's Opinion, really three

24  of the factors, I believe, the Court will decide the same way

25  for this hearing.

1          But there are two factors that are different,

2     substantially different.  One is the relevance of the documents

3     and, secondly, the availability of the other evidence.  And I

4     think the relevance gets down to the very important sentence in

5     the Court's Opinion, which if you look at the third page of the

6     Opinion, the Court put the task to the parties seeking the

7     documents which, in this case, that was the United States.  And

8     the Court said "That the evidence that the United States --

9     United States seeks to compel is highly relevant to its claim"

10    and that was the test that the Court used.

11          Well, that is the test that, likewise, should be

12    equally applied here today, and the question is can Texas prove

13    that the evidence it seeks, the 8 to 10,000 pages, is highly

14    relevant to any specific claim it is making in this case?

15          And what about the State's case depends upon the

16    Court understanding what the Senators who opposed the

17    legislation did?  Why does it make a difference that those

18    whose strategy failed, who did not prevail, what difference

19    does it make to any issue that this Court has to decide?

20    That's the relevance test.

21          So here we are, we have six Senators who voted

22    against the Bill, and on the cover of your notebook I have put

23    together a chart so you can kind of get a context for this,

24    none of the -- none of the 10,000 pages of -- none of the

25    documents of any of these six Senators appears on the State's

1    Exhibit List in this case.  They have not identified that they

2    intend to use any of those documents specifically in the trial

3    next week.

4         **THE COURT:**  Okay, so why are we talking about them?

5         **MR. SCOTT:**  Your Honor, none of these documents --

6    well, first of all, the Court puts this decision upon Texas

7    being able to get these documents and even attempt to review

8    these documents until last week, I think -- I'm sorry, the week

9    before last.  So we were in the position of not even having the

10   chance to go through these documents, and instead of putting

11   all of these documents into the exhibit list, we wanted to

12   thumb through these documents and we will go through and then

13   when we see something it -- your original Order was it's up to

14   the parties then to present it to the Court to make a ruling

15   whether legislative privilege applies or not before we attempt

16   to introduce it into evidence.  To put it on the Exhibit List

17   means we're attempting to produce -- to introduce it into

18   evidence.  Our reading of your Order is really very clear,

19   until we get a ruling on the legislative privilege we're not to

20   attempt to introduce this -- any of these matters to the Court

21   for -- as evidence, i.e. mark them as exhibits or potential

22   exhibits, and so that's why none of these are marked as

23   exhibits.

24        **THE COURT:**  So you don't know if you're using any of

25   this stuff yet?

1          **MR. SCOTT:**  No, we know -- we know a number of these

2     things.  For instance, there are documents in here from a

3     relevance standpoint.  One of the arguments that the Plaintiffs

4     -- the party Plaintiffs are making in this case is that there

5     was this concerted strategy to get this Bill through the

6     Legislature.

7          Well, we find through these documents there was a

8     concerted strategy on the part of the Defendants which one

9     would expect in a legislative body to try and oppose the

10    passage of this Bill, for example, the interaction of the

11    Department of Justice, it appears inferentially that there was

12    some --

13         **THE COURT:**  But what does that matter to the issue

14    that's before the Court?

15         **MR. SCOTT:**  Well, it matters when we're talking about

16    the Senate factor as it is that some -- that their experts are

17    saying that it was part and parcel of the State's strategy on

18    the purpose or intent of the statute itself; that some of these

19    legislators who had a steel-minded purpose to enact a statute

20    which would disproportionately affect minorities.

21         What we see is the normal legislative process going

22    on behind the scenes in the body and, at the end of the day, a

23    Bill being passed out of that body.

24         **THE COURT:**  All right.  Ms. London?

25         **MS. LONDON:**  And the difficulty I have is if Mr.

1    Scott has specific documents that --

2            **THE COURT:**  Right, that's -- I mean, it's

3    inefficient, I think, for me to try to really address this

4    right now --

5            **MS. LONDON:**  Yeah, and --

6            **THE COURT:**  -- unless I have specific documents that

7    we're looking at.

8            **MS. LONDON:**  And our agreement was that he would give

9    me notice of the specific documents so we could use the Court's

10   time only for those specific discussions of relevance, not

11   academically, not theoretically, but actual.

12           **THE COURT:**  Yeah.  I'm not going to address this

13   right now until I know what we're dealing with.

14           **MS. LONDON:**  And so, Judge, in terms of our agreement

15   that we would get it done at Pretrial --

16           **THE COURT:**  Then you-all can visit further when I

17   finish if you-all would like to do that.  And I'm available all

18   day.  I just kind of don't want to waste time on matters that

19   you-all need to discuss further.

20           **MR. SCOTT:**  And we can limit the universe greatly --

21   what we had as part and parcel of that agreement was by noon on

22   Monday we would let them know which documents, and so any

23   documents we did not identify by noon of this past Monday we

24   had waived our ability to even attempt to try and get

25   legislative privilege looked at on that.

1          **MS. LONDON:**  I am happy to look at any documents.

2     I'm here from Austin.  It was not -- I don't have enough of a

3     role to be here for trial.  If we want to address specific

4     documents this afternoon I'm happy to do that.

5          **MR. SCOTT:**  I'll dedicate the rest of my afternoon to

6     it.

7          **THE COURT:**  Okay.  I'm going to proceed with the

8     Final -- the other matters.  You-all can certainly visit, I

9     mean, I don't know how long we're going to be at it, and then

10    I'm available the rest of the week except Friday probably, if

11    we need to continue matters.  Right, Brandy?

12         **THE CLERK:**  Yes, your Honor.

13         **THE COURT:**  I think we've got matters set on Friday?

14         **THE CLERK:**  Yes, your Honor.

15         **THE COURT:**  So --

16         **MR. ECCLES:**  Then, your Honor, if I may interject?

17    This is James Eccles, as well, from the  -- from Austin and I

18    represent some of these people -- the Defendants that are in

19    the exact same posture as the State Senators that are wanting

20    to suppress it.

21         **THE COURT:**  Okay.

22         **MR. ECCLES:**  And we have the exact same issues, and I

23    certainly would like to be able to address not only legislative

24    privilege, but before that -- after that, the admissibility,

25    trying to get at that, I don't believe that it can pass a

16

1   threshold of relevance.

2          **THE COURT:**  I know, we're kind of past the law here.

3   I need to look at specific documents that are wanting to be

4   opened or disclosed, and I don't think you-all are ready for

5   that at this point, it sounds like to me, you-all need to

6   confer further.  All right?  So if there's nothing else on that

7   matter I'm going to proceed.

8          There are several Motions pending and the first one

9   I'll take up is I guess is the United States' Motion to admit

10  deposition and trial testimony from the *Texas versus Holder*

11  case.  And there was no response filed, but it's my

12  understanding that's opposed?  Is that correct?

13         **MR. FREEMAN:**  Yes, your Honor, it's our understanding

14  it's opposed as well, although we have not received a response

15  proffer from the Defendants to the substance of the Motion.

16         Your Honor, there are two categories of evidence that

17  are at issue in this Motion.  The first consists of depositions

18  taken during *Texas v Holder*, and under Rule 32(a)(8) of the

19  Federal Rules of Civil Procedure:

20             "Prior deposition testimony for unavailable witnesses

21             may be used in a later action involving the same

22             subject matter between the same parties or their

23             representatives or successors in interest to the

24             extent as if they were taken in the later action."

25             Now Defendants have agreed, and all parties have

1   agreed in this litigation to waive the 100 mile rule with

2   regard to the availability of witnesses, and so it's the

3   position of the United States that there is no remaining

4   impediment to admitting depositions that were taken during

5   *Texas v Holder.*

6          **THE COURT:**  And I thought we had discussed this at

7   one of our Status Hearings.  Was it just regarding certain

8   witnesses that there was an agreement on?  Or was there no

9   agreement on any witnesses?

10         **MR. FREEMAN*:*  Your Honor --

11         **THE COURT:**  I just thought this came up at some

12  point.

13         **MR. FREEMAN*:*  -- the parties were conferring over a

14  long period of time attempting to resolve this.  I believe in

15  August the ultimate decision by Defendants and Mr. Clay can

16  speak to it, was that they were not going to agree to the

17  admission of any prior depositions or testimony taken in *Texas*

18  *v Holder.*

19         **THE COURT:**  But wasn't there some discussion about

20  limiting some depositions to new matters which then led me to

21  believe that well, then, the prior testimony is going to come

22  in?

23         **MR. FREEMAN*:*  Yes, your Honor.

24         **THE COURT:**  But I don't know if that was only

25  regarding certain witnesses or in general?

1       **MR. FREEMAN***:*  With regard to -- with regard to Major

2  Mitchell there was certainly discussion that Major Mitchell

3  would only be deposed with regard to matters not previously

4  addressed in his testimony in *Texas v Holder*.

5       Moreover, with regard to the legislators, there were

6  multiple arguments made that legislators should not be made to

7  sit for repetitive questioning when they had already answered

8  the same questions in *Texas v Holder*.  As a result --

9       **THE COURT:**  So it's certain witnesses that there was

10  an agreement that prior testimony would come in?

11       **MR. FREEMAN***:*  The agreement was specifically, I

12  believe, with regard to Major Mitchell, but that was not a

13  United States witness and it -- but Mr. Rosenberg has

14  represented that that's the case.

15       **THE COURT:**  I thought early on, even before the Major

16  Mitchell issue there was some discussion about the efficiency

17  of using some prior -- and, you know, I may be wrong, but I

18  thought that was discussed.

19       **MR. CLAY:**  Your Honor, there was -- there were -- we

20  have engaged, as Mr. Freeman has just stated, we engaged in a

21  lot of conversations about the use of deposition testimony at

22  trial.

23       One of the things that we were able to agree on some

24  time ago, which we presented to you, was that we would be able

25  to designate a portion of the depositions taken in this case

```
 1   for use at trial.

 2              We never reached an agreement regarding the use of

 3   Section 5 depositions --

 4              THE COURT:  Okay.

 5              MR. CLAY:  -- and if -- your Honor, we did not file a

 6   response, but we would point out that a very analogous case to

 7   this is the Rueston (phonetic) case in San Antonio in which

 8   case they allowed the use of Section 5 depositions for

 9   impeachment purposes only, but not as evidence.  And I think

10   one of the -- one of the glaring differences between this case

11   and that case is in that case a request was made before

12   discovery was even really initiated, giving the parties an

13   attempt to understand the universe of depositions that might

14   have been used in that case, and even in that case the San

15   Antonio Court said "No, we're not going to use Section 5

16   depositions at trial in this case.  If you want testimony

17   regarding this stuff, then you can -- then you need to retake

18   the depositions or tread new ground," and that is, I think --

19   doing it here, after discovery has already closed, then making

20   the decision to use Section 5 depositions for any purpose other

21   than impeachment doesn't make a whole lot of sense since we

22   don't have the opportunity to retake depositions or cross

23   examine the witnesses that they propose to introduce into

24   evidence.

25              MR. FREEMAN:  Your Honor, if I could I -- it's
```

1    necessary for me to correct the record because Mr. Clay has

2    misstated what has occurred in *Perez v Perry*.

3           Just yesterday in *Perez v Perry* litigation that I'm

4    Counsel for the United States in, the Court said that it would

5    take under advisement the United States' continuing request to

6    admit similar deposition testimony in that case.  The Court has

7    not rejected the use of deposition testimony in that case.

8           What has happened, and which I will address later, is

9    that the Court has said it would not admit trial testimony from

10   *Texas v United States*, the analogous case in the District Court

11   for the District of Columbia with regard to the redistricting

12   because the Court in San Antonio was not going to limit the

13   number of trial hours for which it was available, and so we're

14   in a very different circumstance.

15          But with regard to the deposition testimony, which I

16   would like to address first and to complete my presentation, no

17   such decision has yet been made by the San Antonio Court and

18   I'm happy to provide the Court with a copy of the transcript

19   from yesterday's closing arguments if that's necessary.

20          With regard to the deposition testimony here,

21   precisely the same intent questions that were presented in --

22          **THE COURT:**  Okay, they're already at closing and they

23   still don't know if they're using depo testimony?

24          **MR. FREEMAN:**  That's correct, your Honor.

25          **THE COURT:**  Okay.

1        **MR. FREEMAN***:*  Um --

2        **MR. CLAY:**  And, your Honor, we're happy to supplement

3   the record also with the Orders from that Court because we have

4   different understandings.

5        **THE COURT:**  I don't need the Orders in that Court.

6   We are where we are now and we just need to make a decision

7   based upon what's before this Court regarding this case.

8        **MR. CLAY:**  Okay.

9        **MR. FREEMAN***:*  Okay, and with regard -- with regard to

10  these depositions, precisely the same questions are before this

11  Court with regard to the intent question, and the parties here

12  have had precisely the same motive to cross examine the

13  witnesses in this case as they had in the prior case, and so

14  Fifth Circuit precedent in both *Battle versus Memorial*

15  *Hospital,* 228 F3d 544, and *United States v MacDonald,* 837 F2d

16  1287, to guide this Court to find that the deposition testimony

17  taken in the prior action is equally admissible in this case as

18  a deposition that was taken in this case.

19        If the Court has no further questions, then --

20        **THE COURT:**  Okay.  What is the intent on using the

21  deposition testimony?  I know at some point we had discussed --

22  maybe it wasn't deposition testimony, it was that the parties

23  were going to give the Court maybe a declaration of a witness.

24  That witness would then be available for cross examination.

25  But was that just declaration, not depo testimony?

1          **MR. FREEMAN***:*  Your Honor, I believe that was with the

2   idea that we would perhaps present some witnesses via pre-filed

3   Direct testimony, and then make them available for Cross

4   examination.

5          **THE COURT:**  But when you're saying "Direct

6   testimony," we're not -- you-all were not talking about

7   deposition testimony?

8          **MR. FREEMAN***:*  No, we're not, your Honor,

9          **THE COURT:**  That we're going to do it in the form of

10  a declaration or --

11         **MR. FREEMAN***:*  Yes, your Honor.

12         **THE COURT:**  Mr. Rosenberg?

13         **MR. ROSENBERG:**  Your Honor, just to clarify, we did

14  -- the parties did agree, as Mr. Freeman said, that any

15  deposition taken in this case can be admitted as if the

16  witnesses testified live with that reference to the 100 mile

17  rule.

18         **THE COURT:**  Okay.

19         **MR. SCOTT:**  And I believe the Court also has led us

20  -- and I think the parties have an understanding, that we're

21  still going to have the ability to introduce declarations of

22  witnesses that are going to be called live to try and cut down

23  on the scope of the amount of testimony and the time that we

24  spend in Court.

25         **THE COURT:**  Uh-huh (yes.)  Okay.  All right.

1          **MR. CLAY:**  Your Honor, just a few points.  The issues

2    in that -- Rule 32 allows for the use of prior testimony from

3    other cases only in certain circumstances.  The parties need to

4    be the same.  The parties are not the same here.  Some of the

5    parties are, but some of them are not; a lot of them are not.

6          The issues need to be the same.  A lot of the issues

7    in this case are very different from the ones in Section 5, and

8    another in the Section 5 case, and another very large

9    difference is the burden of proof is different.

10         Now Mr. Freeman pointed out one issue in which there

11   might be some overlap, although I'm not sure I entirely agree

12   with him, and that is on the issue of whether or not intent or

13   purpose of the legislature.  That's the only real issue that

14   there -- that is there is any overlap on, so to the extent that

15   any deposition testimony from that case should be allowed in

16   this case would be on a single issue and one issue only.

17         **THE COURT:**  But isn't that this whole case?  Why

18   would we be discussing other matters that aren't relevant to

19   the case here?

20         **MR. CLAY:**  I would love for that to be the only claim

21   in this case, but I think that there's a --

22         **THE COURT:**  Well, I mean, I guess my point is aren't

23   we going to limit it to the issues that are involved in this

24   case, and if there was something from that prior testimony that

25   involved issues in this case, then you're looking at the same

24

1    subject matter?

2         **MR. CLAY:**  And, again, I think that Rule 32 only

3    allows it when the parties are the same, and I don't think --

4    and even with respect to purpose, in part because of the burden

5    of proof, but in part because of Section 5 and the Department's

6    interpretation of Section 5, that the intent question is not

7    squarely the same as it is in this case, and so I think we're

8    running into -- frankly, I just don't think Rule 32

9    contemplates the use of that testimony in this case because it

10   talks about the same parties and the same issues, and that's

11   just simply not the case here.

12        **THE COURT:**  Okay.

13        **MR. FREEMAN:**  Your Honor, if I may just make a couple

14   quick additional points.  Rule 32 specifically permits the use

15   of deposition testimonies between the same parties or their

16   representatives or successors in interest, and here the United

17   States is the successor in interest to Attorney General Holder

18   and the State of Texas is, indeed, the same party.

19        Moreover, the subject matters are sufficiently

20   similar that the use -- the utility of the depositions is

21   clear.  While the retrogression standard under Section 5 does

22   not apply here, the same types of evidence go toward the

23   Results Test under Section 2.  It's, perhaps, quite similar to

24   using a deposition taken in a matter regarding a car crash in

25   both a criminal proceeding and a subsequent civil proceeding.

1    There's -- there's no reason to force someone to take the

2    deposition again, which is exactly why we would not want to

3    retread the same ground and we would want to use the same

4    depositions in this case.

5          If not permitted to put forth these depositions we

6    would have to call numerous legislators, including Bill

7    proponents who we did not intend to call and we would have to

8    seek leave for additional hours in our case-in-chief because

9    Bill proponents such as -- such as the House Sponsor of SB-14

10   are not likely to actually be called in this case, but their

11   testimony through deposition would be sufficient, at least for

12   the United States' purposes.

13         **THE COURT:**  Okay.

14         **MR. CLAY:**  Just one final point, your Honor.  I think

15   Mr. Freeman has just admitted that the issues aren't the same

16   here.  I mean, he just -- he just explained to the Court that

17   the retrogression standard is not the standard here and, yes,

18   some of the facts may be relevant to the two standards, but

19   they are different standards, and that's the problem with using

20   deposition testimony from another case and in a case like this,

21   so I just don't think Rule 32 applies, your Honor.

22         **THE COURT:**  All right, thank you.  Anyone further to

23   speak to that?

24      **(No audible response)**

25         **THE COURT:**  The Court is going to grant the Motion to

1    admit the deposition trial testimony from the prior -- the

2    *Texas versus Holder* case finding --

3         **(Voices overlap)**

4              **MR. SCOTT:**  Your Honor --

5              **MR. SPEAKER:**  Your Honor --

6              **THE COURT:**  It involves the same subject matter and

7    the same parties.

8              **MR. FREEMAN*:*  I'm sorry, but --

9              **THE COURT:**  And it would be more efficient for this

10   Court.

11             **MR. FREEMAN*:*  There's the second issue of the prior

12   trial testimony.  I apologize, I broke things up.

13             **THE COURT:**  Okay.  I was trying -- covering that.

14             **MR. FREEMAN*:*  Yes.

15             **THE COURT:**  It goes under a different rule.

16             **MR. SCOTT:**  Before we move onto that, and so we were

17   able to do our counter-destinations and (indiscernible) that

18   prior record we would respond and give the Court a more

19   accurate picture, just to cover it --

20             **THE COURT:**  Yes, absolutely.

21             **MR. SCOTT:**  (indiscernible) picture.

22             **MR. FREEMAN*:*  Thank you, your Honor.

23             With regard to the prior trial testimony, Rule 32

24   does not apply, and so the United States has sought leave to

25   introduce that prior testimony under Rule 807.  The standard

1  under Rule 80 --

2          **THE COURT:**  Is it the same argument?  I know it's a

3  different rule, 807, but I've read the briefing and the same

4  argument from the Defense.

5          **MR. CLAY:**  Yes, your Honor.

6          **THE COURT:**  Yeah, so the Court has granted the Motion

7  in its entirety --

8          **MR. FREEMAN:**  Thank you.

9          **THE COURT:**  -- unless there's anything further

10  specifically to the Rule 807 you-all want to put on the record.

11          So anything else on that Motion?

12      **(No audible response)**

13          **THE COURT:**  Okay.  Then the other pending Motion was

14  the United States' Motion to admit the declarations of County

15  officials from various counties.  That was DE-492; that was

16  filed Friday.  I don't see a response.  My understanding it's

17  opposed?

18          **MR. FREEMAN:**  Yes, your Honor, it's me again.  With

19  regard to the 44 declarations, these are the declarations

20  offered by objective neutral officials who work in individual

21  counties and have made agreements with the State to accept

22  applications for the election identification certificates that

23  are created under SB-14 and these -- these declarations simply

24  set out the locations, the hours, the number of applications

25  they have received, the number of applications that they have

1    accepted, and the parties attempted to meet and confer over a

2    lengthy period and the State eventually offered to agree to the

3    admission of 43 of the 44, and the United States did not

4    present one of them.  And the United States simply did not see

5    a rationale to exclude the last declaration given that it

6    similarly presents, under Rule 807, the trustworthiness that is

7    required, presents material relevant to a material fact, and it

8    is more probative than the reasonable alternative, which would

9    be a parade of these individual officials from across the State

10   who would come in and testify for just a few minutes as to when

11   their office accepts EIC applications, that they've accepted

12   one, two, none, and that -- and the hours that they're open,

13   and so under the Fifth Circuit case law in the District Courts

14   within the Fifth Circuit there's little motive for truth or

15   falsity, the materials at issue are simple and they go to the

16   witness's personal knowledge, and there's no reason to direct

17   these witnesses to come to Court to present this testimony.

18           **THE COURT:**  All right.  Mr. Clay, are you speaking on

19   that?

20           **MR. CLAY:**  Your Honor, I will be -- the first point I

21   would make is that Rule 807 is -- is very clear, it's only to

22   be used in rare exceptional circumstances, and those

23   circumstances aren't met here.

24           The Advisory Committee about this Rule has said that

25   it does not contemplate an unfettered exercise of judicial

1    discretion, and part of the problem here is that they've had

2    these declarations for months, and not until last week were we

3    really notified that they intended to offer them into evidence

4    at trial.  Had we known before the close of fact discovery it

5    might have allowed us the opportunity that is contemplated

6    under Rule 807 to counter the declarations, so we didn't have

7    the opportunity --

8           THE COURT:  So you-all think there's some information

9    -- the State is contesting the facts set out here, do you think

10   they're not correct or do you have reason to believe that they

11   are not correct?

12          MR. CLAY:  We don't have the ability -- we do not

13   know whether they're correct which is part of the -- which is

14   part of the problem.  And we've also offered that we would

15   provide the MOUs between DPS and the local counties, which they

16   refused to do or refused to accept, and in one of these

17   declarations, in particular, I think goes to the

18   trustworthiness issue and that is of Carlos Segura.  Most of

19   these --

20          THE COURT:  Which one is that one?

21          MR. CLAY:  It is on the Docket -- it's Page 44 out of

22   130 on the Docket.

23          (Counsel confer)

24          THE COURT:  45?

25          MR. CLAY:  It's Page 44 is what it says on mine --

1          **THE COURT:**  Okay.

2          **MR. CLAY:**  44 of 130.  You'll notice that Carlos

3    Segura is -- his declaration is different than the others, and

4    the others list their employment, who they are employed by,

5    what their title is, and then they say, "As part of my

6    responsibilities I accept and process applications for EICs."

7          Well, Carlos Segura is not that person evidently and,

8    again, I don't know whether -- who is or who isn't, but

9    evidently, based on his declaration, he is not the person who

10   accepts and processes the applications in that county, and so

11   there's an extra element -- a foundational element here that's

12   problematic with Carlos Segura's, but -- but just with regard

13   to all of the declarations you'll see that they're very similar

14   and they appear to have been at least helped or aided by

15   somebody in the Department of Justice because they're

16   essentially identical and they span counties across all over

17   Texas.

18         **THE COURT:**  But how do you -- how do you say "we're

19   open from this time to this time," we don't have that in so

20   many different ways?

21         **MR. CLAY:**  I'm sorry?

22         **THE COURT:**  I mean, there's only a certain way to say

23   "our offices are open Monday through Friday from this time to

24   this time, I am the Elections Administrator, or I am X."

25   There's not a whole lot of different ways to present this

1    information that is set forth in these declarations.

2              **MR. CLAY:**  And I agree, and --

3              **THE COURT:**  It's pretty basic.

4              **MR. CLAY:**  And we would like to provide the Court

5    with evidence of -- regarding the State's EIC Program.  We

6    think that's very important for the Court's consideration.

7              **THE COURT:**  But isn't that a different issue than

8    what I'm looking at right now?  You can certainly argue that as

9    to what you want me to do there, but all I'm considering right

10   now is this Motion to allow these declarations to be admitted,

11   not whether any other evidence should come in or -- so, really,

12   what I'm looking at is the trustworthiness of this.  It seems

13   to be pretty basic facts, simple information, it could be

14   easily contested.  I mean, I don't know if the State really

15   thinks there's some misinformation here about the hours of

16   operation, what they do, what's happened, whether they're not

17   disinterested -- you know, whether there are interested

18   witnesses here.  I --

19             **MR. CLAY:**  Your Honor, I think all of the above, and

20   it's not -- it's not that we think that they're not

21   disinterested or we think that they're misrepresenting their

22   hours; it's that we don't know if we were never given the

23   opportunity to cross examine these people.  I mean, this is a

24   perfect example of when deposition notices could have gone out

25   here in fact discovery.  We didn't even know these existed

1   until after the close of fact discovery, and so we just don't

2   have the reasonable opportunity to counter this that's

3   contemplated by Rule 807.

4           **MR. FREEMAN***:*  Your Honor, if I may very quickly

5   correct the record with regard to that.  These declarations

6   were provided as an exhibit to the Expert Declaration of Dr.

7   Jerry Webster, and so the State received copies of these in

8   June.  Fact discovery has continued in this matter through, I

9   believe, there is still one remaining outstanding legislator

10  deposition that will occur tomorrow.

11          Moreover, these are individuals who have, as Mr. Clay

12  just stated, contracted with the State in order to participate

13  in the EIC Program.  They are certainly aware of these

14  individuals' identities.  However, the information provided by

15  the State on its web site does not provide a variety of the

16  information provided in these declarations, including the hours

17  when the EIC applications are accepted, with physical locations

18  and the like, and that is precisely why we needed to present

19  this information with regard to the efficacy of the program.

20  The extent that the State wishes to offer information regarding

21  the contracts that are between the State and these individuals,

22  we will certainly address that information when they present

23  it.

24          **MR. CLAY:**  And, your Honor, this Court said, the

25  Scheduling Order is very clear, fact discovery cut off at the

1   end of June, which was before we were provided these

2   declarations.

3          And if the Court is inclined to enter these into

4   evidence we would ask that it take a harder look at Carlos

5   Segura who has a foundational problem and does not appear to

6   have personal knowledge of the program.

7          **THE COURT:**  Okay.  Do you want to address Mr.

8   Segura's declaration?

9          **MR. FREEMAN:**  Sure, absolutely.  If you'll give me

10  just one moment to retrieve Mr. Segura's declaration from my

11  computer?  Or if Mr. Clay would give me the courtesy of letting

12  me see the copy that he had had on the podium just one moment

13  before?

14     **(Pause, Counsel confer)**

15         **THE COURT:**  Do you want the Court's copy?

16         **MR. FREEMAN:**  I'll have it in just one moment, your

17  Honor.

18         **MR. CLAY:**  I'm sorry, your Honor, I would provide it

19  but I do have annotations on my copy.

20         **MR. FREEMAN:**  I have it, your Honor.

21         **THE COURT:**  Well, I don't, if you want to use the

22  Court's copy.

23         **MR. FREEMAN:**  Thank you, your Honor.  Mr. Segura, I

24  believe, is the Elections Administrator of Frio County and so

25  because Frio County has two individuals who have received

1    training from DPS to accept and process EIC applications, he

2    supervises those two individuals and, thus, was able to provide

3    via his personal knowledge the information that those two

4    individuals would collectively have; thus it was more efficient

5    to provide one declaration than two with regard to Frio County,

6    so that should resolve any foundational issues that Mr. Clay

7    may raise.  Otherwise, this declaration is very similar to the

8    others as we have discussed.  He states his position, he states

9    the location that accepts EIC applications in Frio County, he

10   states the number of EIC applications that they have accepted,

11   which is zero, and he states the publicity efforts that Frio

12   County has made with regard to EIC applications, which are

13   none, and so it's merely the same material and the United

14   States sees no reason to distinguish Mr. Segura's declaration

15   from the other declarations that are currently before the

16   Court.

17           **THE COURT:**  All right.  The Court is going to grant

18   the Government's Motion to admit the declarations of the County

19   officials except as to the declaration of Carlos Segura.

20           Anything else on that Motion?

21           **MR. FREEMAN:**  No, your Honor.

22           **THE COURT:**  All right.  Then we have the Government's

23   Motion to Strike, and then there's a Joint Motion by the other

24   Plaintiffs also to Strike the Defendants' affirmative

25   allegations and defenses.  And, you know, after reading the

1   briefing, yeah, I agree that these matters that were set forth

2   as affirmative defenses or allegations is not relevant to what

3   we're going to be trying.  I think the -- the Defense appears

4   to agree to that, what -- there's a question as to whether they

5   may be relevant to the equitable relief sought, but I don't

6   think that's an issue for the trial that we're going to start

7   next week.

8         So I don't think I really need to hear anything

9   further.  My inclination, I'm going to deny the Motion to

10   Strike, but the parties are not to address those issues in this

11   trial that we're going to start on September 2nd is the way I

12   read the briefing.

13         **MR. CLAY:**  Your Honor, is that without prejudice?

14         **THE COURT:**  I'm not striking it, I'm just saying it's

15   not coming in for this trial.

16         **MR. CLAY:**  Oh, okay, I'm sorry.  I misheard it.

17   Thank you.

18         **THE COURT:**  So I've denied the Motion to Strike.  But

19   if there's something I missed let me know and we can discuss it

20   further, but that's the way I read the briefing that appeared

21   to be agreed to on that matter.

22         **MR. HEARD:**  Your Honor, just to -- just to be

23   clear --

24         **THE COURT:**  Well, maybe not agreed to, the Government

25   wanted me to strike it all.  But I just -- I'm striking it for

1   the purposes of the trial starting September 2nd, I'm not

2   making a decision as to whether it's relevant to any equitable

3   relief sought.

4          **MR. HEARD:**  Indeed, your Honor, thank you.  And I

5   just wanted to clarify also that the Court is not -- is not

6   going to take up their alternative Motion to relief to amend

7   their Complaint?

8          **THE COURT:**  Not at this time.

9          **MR. HEARD:**  Okay.  Thank you, ma'am.

10         **THE COURT:**  Okay.  All right, is that all on that,

11  and that was DE-456 and 462?

12    **(No audible response)**

13        **THE COURT:**  So I believe the last Motion pending is

14  the Government's Motion to determine the sufficiency of the

15  Defendants' responses to the request for admissions by the

16  Defendants.

17      I issued a short Order on that yesterday just

18  granting that Motion in part regarding the authenticity of the

19  documents.  That's a lot of documents.  I think you-all need to

20  sit and visit about that, and I believe that's what the Order

21  tells you-all to do is to confer.

22        **MR. HEARD:**  That was our understanding of the Order,

23  your Honor.  I believe that Ms. Baldwin and Counsel for Texas

24  will be conferring sometime after the hearing today.

25        **THE COURT:**  And you-all -- yes, you-all can confer

1    today and then I'm available if you-all can narrow it down for

2    me.

3         **MR. HEARD:**  Thank you.

4         **THE COURT:**  Any other Motions pending, and I think

5    some remaining Motions have already been mooted or you-all had

6    discussed that with Brandy as to they were no longer -- it was

7    not necessary for the Court to address anything further?

8         **MR. FREEMAN***:  Your Honor, there is still the United

9    States -- excuse me, the Plaintiffs' Joint Motion to unseal a

10   select universe of the legislative documents?

11        **THE COURT:**  Okay.

12        **MR. FREEMAN***:  And just to bring to the Court's

13   attention with regard to the Motion with regard to Request for

14   admission, the State of Texas conceded yesterday in oral

15   argument in *Perez v Perry* that racially polarized voting does

16   exist as an empirical matter in all counties in the State

17   except, I believe, with regard to Nueces County and Kleberg

18   County, and so the issues with regard to the RFA should be

19   relatively easy to resolve at this point.

20        **THE COURT:**  Okay.  Well, you-all are going to talk

21   about that, right?

22        **MR. FREEMAN:**  Yes.  Your Honor, and this is ECF

23   Number 503, the Joint Motion to Unseal.

24        Your Honor, the United States and the private

25   Plaintiffs and Plaintiff Intervenors jointly seek to unseal a

1   very limited universe of legislative documents for use at

2   trial, along with the expert report --

3           **THE COURT:**  Can I just say something real quick?

4           **MR. FREEMAN:**  Yes.

5           **THE COURT:**  The only response I saw didn't really

6   appear to be an objection.  It appeared to be, is that all you

7   have, well, go for it.  So I wasn't sure -- is Mr. D'Andrea on

8   the line?

9           **MR. D'ANDREA:**  I'm right here.

10          **THE COURT:**  Oh, I'm sorry, I didn't see you.  That's

11  the way I read your response.

12          **MR. D'ANDREA:**  We think the Court is in a tough

13  position with the balancing test, because I understand the

14  Court's balancing test.  You balance the importance of the

15  documents to Plaintiffs' case, and their availability

16  elsewhere, against the harm it will inflict.  And it will

17  inflict a chill, in fact, as we explained.  Now, I think that,

18  as we've said before, a lot of the harm has been done, but

19  there is still more harm to be done if the Court admits that

20  into the record.  And on the other side of the ledger is very

21  little, your Honor, because these documents mean so little to

22  their case, both because there is so little substance and

23  because they are now available elsewhere since your Honor has

24  just let in tens of thousands of pages of legislative

25  depositions from Section 5, along with other stuff.  The record

1    in this case will already fill three law clerk's boxes on

2    appeal.  I just don't see a reason to let anymore --

3            **THE COURT:**  Okay.  And let me just say something.  On

4    the depositions, they're not just all coming in.  It's excerpts

5    as to what is going to be presented in this trial.  That's the

6    way I'm seeing things.

7            **MR. FREEMAN:**  Yes, your Honor, it will only be

8    excerpts, designations, from those depositions.

9            **THE COURT:**  Mr. Scott?

10           **MR. SCOTT:**  Well, that's one of the real concerns we

11   have is making sure once we open the door to -- once the door

12   was opened to this thing, any of this information coming in,

13   there was a complete trial that took place in order to paint

14   the correct picture, and that's why we stood and said the thing

15   about the counter designations.  The information that the Court

16   will need to make, and whatever courts look at the ultimate

17   Judgment this Court makes --

18           **THE COURT:**  You-all have an obligation to try your

19   case.  I am the jury, I am the fact-finder, so you need to

20   present your evidence and not just throw a bunch of stuff.

21   There is some case out there -- I think it regards summary

22   judgment evidence -- that says judges are not like pigs looking

23   for truffles in briefs.  And, you know, that implies very much

24   so here.  You can't just throw a bunch of depositions and

25   evidence at this Court.  You need to try your case.

1    **MR. FREEMAN:**  Yes, your Honor.  And we intend to both

2   try our case in Court and, to the extent that it is useful to

3   the Court, we will point to specific page and line citations in

4   those depositions in our Proposed Findings of Fact so that this

5   Court may --

6           **THE COURT:**  You're not bringing in all the

7   depositions.

8           **MR. FREEMAN:**  No.

9           **THE COURT:**  You are presenting to the Court the

10   evidence you want the Court to consider.

11          **MR. FREEMAN:**  Yes, your Honor, absolutely.

12          **THE COURT:**  Okay.

13          **MR. FREEMAN:**  With regard to the legislative

14   privilege issue, however, the limited universe of documents

15   that the United States seeks to bring in are certainly relevant

16   to the claims before this Court.  We are somewhat hamstrung in

17   our ability to discuss exactly why these documents are

18   probative, because we are in open court and they remain under

19   seal.  However, as set out in the United States' briefing,

20   there are -- we set out just a few of the specific instances

21   under which the United States and the Plaintiffs, as well as

22   the expert historians in this case, believe that these

23   documents are highly probative of the intent of the

24   legislature.  The standard is not whether or not there is a

25   smoking gun or racist statement.  The standard is whether they

1    are probative, highly probative perhaps, of the intent of the

2    legislature and whether the legislature intentionally is

3    enacting a bill that it knows is going to have a harmful effect

4    on Latino and African American voters, and that's what the

5    documents at issue show.

6              With regard to any potential chilling effect, these

7    are very similar documents to what were produced in *Perez v*

8    *Perry*.  In the briefing, we provided an exact parallel between

9    some of the documents that have been placed under seal here and

10   documents that were openly produced in *Perez*.  And the two

11   thousand -- there is no evidence before this Court, no actual

12   evidence, that the 2013 re-redistricting process conducted by

13   the Texas Legislature was in any way hindered by the fact that

14   depositions were taken in *Perez v Perry*; the fact that there

15   was large-scale document productions in that case.

16             And so we believe that there is no real evidence

17   that, as the Court in *United States v Irvin* found, the

18   occasional use of these types of documents in highly important

19   cases where there is an important federal interest in

20   vindicating the rights of Latino and African American voters

21   throughout the state, is going to truly chill legislative

22   deliberation.

23             Moreover, the fact that counsel for the legislators

24   filed his brief without placing it under seal shows that these

25   are not real concerns.  And so we believe that this limited

1    universe of documents and the documents that are relied upon in

2    Professor Davidson and Professor Lichtman's reports, as well as

3    the limited deposition designations for testimony that was

4    freely given in depositions should be allowed to go.  And we

5    are not moving to compel anything that -- when legislators

6    declined to answer questions based on legislative privilege.

7              THE COURT:  So you're just looking at what is set

8    forth on Page 4 of your motion; just documents regarding those

9    bullet points?

10             MR. FREEMAN:  No, your Honor, it's a somewhat larger

11   universe of documents than that.  That was provided merely as a

12   sample.

13             THE COURT:  Okay.  Well, I --

14             MR. FREEMAN:  I believe Exhibit --

15             THE COURT:  I need to know.  I mean, we're going back

16   to the first thing I discussed here.  I need to know exactly

17   what it is you-all are looking to unseal.

18             MR. FREEMAN:  Your Honor, Exhibit 1 to the motion was

19   the list -- was the -- sorry -- the Plaintiffs and Plaintiff

20   Intervenors' Joint Exhibit List.  On that list, there are

21   designated documents that have been designated as highly

22   confidential; those that are designated highly confidential

23   because of their legislative origin.

24             THE COURT:  There is a list here.  It has thousands

25   of documents.  So I need to know which ones you're talking

43

1    about.

2              **MR. FREEMAN:**  Your Honor, I could read that into the

3    record.  I do have that list if that would be useful.  If the

4    Court would like me to provide the digital copies of all one

5    hundred and --

6              **THE COURT:**  Are you talking about the Exhibit 1?

7              **MR. FREEMAN:**  Yes.

8              **THE COURT:**  Which part of that?  I mean, all of that?

9              **MR. FREEMAN:**  No, your Honor.

10             **THE COURT:**  Everything that is set there?

11             **MR. FREEMAN:**  No, your Honor.

12             **THE COURT:**  Well, that's what I'm asking.

13             **MR. FREEMAN:**  That is Plaintiffs and Plaintiff

14   Intervenors' complete Joint Exhibit List.  I believe there is

15   column on that list that says whether something has been marked

16   as highly confidential and that column, unfortunately, includes

17   both documents that are highly confidential because of the

18   legislative privilege designation --

19             **THE COURT:**  Which documents are you seeking to unseal

20   I guess is the better question?

21             **MR. FREEMAN:**  Let me go back to the computer very

22   quickly, your Honor.

23        **(Pause)**

24        Your Honor, the parties are seeking to unseal the

25   expert Declarations of Professor Davidson and Professor

 1   Lichtman so that those experts will be allowed to testify in

 2   open court.

 3              In addition, the parties are seeking to unseal those

 4   -- I believe, the depositions of -- the designated portions of

 5   depositions of 11 legislators whose depositions were taken in

 6   this case that were either in part or in whole under seal.

 7              And if the Court will give me just one moment.

 8              **THE COURT:**  Okay.  Let me ask this.

 9              **MR. FREEMAN:**  Sure.

10              **THE COURT:**  What you set forth on Page 4, those

11   bullet points, --

12              **MR. FREEMAN:**  Yes.

13              **THE COURT:**  -- those documents regarding those issues

14   have been discussed with the defense?

15              **MR. FREEMAN:**  Yes.

16              **THE COURT:**  And there's --

17              **MR. FREEMAN:**  Counsel for the legislators,

18   Mr. D'Andrea, said that the -- we met and conferred, and that

19   the legislators were, as a general matter, not going to consent

20   to unsealing any of these materials.

21              **MR. D'ANDREA:**  No, your Honor, my -- I'm sorry, Dan,

22   I interrupted you.

23              **MR. FREEMAN:**  Sure.

24              **MR. D'ANDREA:**  I would add that my understanding was

25   what we were consenting to was the huge list of all the

1    depositions and every confidential exhibit that was on the

2    list.

3                **THE COURT:**  Again, you need specifics --

4                **MR. D'ANDREA:**  Right.

5                **THE COURT:**  -- as to what they're seeking to unseal.

6                **MR. D'ANDREA:**  But, I mean, I looked at a lot of

7    those documents and some are going to lack foundation, some

8    weren't brought up in the deposition and so we don't know what

9    they are, some were --

10               **THE COURT:**  I'm not going to sit here and pick

11   through each.  That's something you-all need to discuss.

12               **MR. FREEMAN:**  Your Honor, I'm happy to discuss the

13   documents one by one with Mr. D'Andrea if that's necessary.

14   And to the extent that the State --

15               **THE COURT:**  Well, I mean, do you want to discuss it

16   one by one with me?

17               **MR. FREEMAN:**  Uh.

18               **THE COURT:**  I don't think so.

19               **MR. FREEMAN:**  So, to the extent that the Court wishes

20   --

21               **THE COURT:**  I don't want to.

22               **MR. FREEMAN:**  So what I would -- what is perhaps not

23   going to be possible is to discuss the Declarations of

24   Dr. Davidson and Dr. Lichtman, given that those Declarations

25   are not -- they're not an exhibit; they're not the same type of

1    material.

2              **THE COURT:**  Are they testifying at trial?

3              **MR. FREEMAN:**  They are, your Honor.  Well, they will

4    if they are allowed to.  There is the concern that the material

5    that they have relied upon has been placed under the highly

6    confidential designation.

7              **MR. SCOTT:**  Your Honor, this is where I think the

8    United States and State of Texas Defendants, the people I

9    represent, are with a unified voice.  To the extent there is a

10   legislative privilege that's gone by the Court that decides

11   there is no more legislative privilege, we believe wipe the

12   thing out, let's get the whole record and parties can bring

13   anything they want here.  Mr. D'Andrea and Mr. Eccles and

14   Ms. London represent those legislators.  That's a different

15   issue.  So I want to make sure the Court is clear on what the

16   roles of the parties are.

17             I want the full record in the Court.  There are

18   attorneys out there, who differ from the position of me, that

19   represent those individual legislatures.  But from the State of

20   Texas, we want the whole record entered.

21             **MR. FREEMAN:**  Your Honor, and there's a very

22   different type of motion that the United States and the

23   Plaintiffs, the private Plaintiffs, have made versus what

24   Mr. Scott is saying, because we are looking only at a very

25   narrow subset.

1          **THE COURT:**  But this is my problem.  I need to know

2    what it is you're looking to unseal, which documents, which

3    exhibits, how they're going to play out, how they're relevant

4    to the case.  It may be we need to do it, you know, through the

5    trial.  I'm not sure because I don't know how much you're

6    talking about.  How time consuming that's going to be, I don't

7    know, for the Court to address.  But that's what I'm looking

8    at.  We can't talk in generalities anymore.  This, you know,

9    documents related to X, Y, and Z.  Which documents are we

10   seeking to unseal so the Court can look at those in relation to

11   the testimony, what's relevant, what, you know, looking at all

12   the factors as to whether they should be unsealed or not.  I

13   don't think I can do that with just, oh, we want to look at,

14   you know, unsealed matters regarding X.  What documents and how

15   many are they that I need to review and look at and make a

16   determination on that?  It's really an issue.  I mean, I

17   thought, and I didn't go through all the documents because I

18   thought, one, it would be a waste of time; two, I wasn't really

19   sure there was an objection in the manner it was phrased.  So I

20   thought, well, I'm not going to spend my limited time going

21   through a bunch of documents that I'm not really sure which

22   ones are at issue.  And maybe, you know, we're not talking on

23   the same page.  I don't know.

24          **MR. FREEMAN:**  Your Honor, to the extent that

25   Mr. D'Andrea is now willing to withdraw his blanket objection

1    to any introduction, I'm happy to speak with him.  And to the

2    extent that this Court does wish to engage in any in-camera

3    review, I have the complete list of documents here and we can

4    submit electronic copies to the Court in a secure fashion,

5    either by filing them under seal or by emailing them to

6    Ms. Cortez.

7            THE COURT:  When you're saying -- did you submit

8    those to the -- all I'm seeing here is an Exhibit List that

9    goes on for like thousands of exhibits.

10           MR. FREEMAN:  Your Honor, there's a column on that

11   Exhibit List marking which of those documents has been

12   designated as highly confidential, and it's those documents.

13           THE COURT:  So the ones that have "yes" are the ones

14   you are seeking --

15           MR. FREEMAN:  Yes, your Honor.

16           THE COURT:  -- to unseal?  And how many are those out

17   of those thousands?

18           MR. FREEMAN:  One hundred and twenty three, your

19   Honor, by my count.

20           THE COURT:  And those have been specifically

21   discussed with Mr. D'Andrea?

22           MR. FREEMAN:  I met and conferred --

23           THE COURT:  See.

24           MR. FREEMAN:  -- with Mr. D'Andrea on the phone --

25           THE COURT:  He's saying no.

1    **MR. FREEMAN:**  -- and Mr. D'Andrea told me that the

2    legislatures were not going to be willing to unseal any

3    documents.  And so it was my understanding that any further

4    attempt to meet and confer would be futile.  To the extent that

5    that has changed, I am more than willing to discuss individual

6    documents with Mr. D'Andrea.

7    **MR. D'ANDREA:**  I'd also be happy to have a lunch date

8    and do that.

9    **THE COURT:**  Okay.

10    **(Laughter)**

11    So maybe what we'll do -- maybe you-all can do it

12    today at lunch so we can kind of finalize all this and wrap it

13    up.  So you-all are going to discuss that further.

14    I need to just see, here's what it is you -- these

15    documents are -- and it may be that I need to wait and hear

16    some testimony as to how they play out and come in and how

17    they're relevant to the case so that I can apply the factors.

18    **MR. FREEMAN:**  Your Honor, may I just ask,

19    specifically, how the Court would like to handle the testimony

20    of Dr. Davidson and Dr. Lichtman in that case?

21    **THE COURT:**  What's the issue?

22    **MR. FREEMAN:**  Regarding the testimony that they've

23    offered, and as well as with regard to --

24    **THE COURT:**  So they were deposed?

25    **MR. FREEMAN:**  They were deposed in this case, yes.

1   But their reports rely, as they are -- Dr. Davidson is a

2   sociologist who is, perhaps, the leading expert on the history

3   of discrimination in voting in Texas.  Dr. Lichtman, I believe,

4   is a political scientist, and they have both relied heavily on

5   the documents that have been produced under seal in this case

6   in order to provide the Court with a full picture of their

7   analysis of the intent of the legislature under pending SB14.

8           THE COURT:  Okay.  So what's the question for the

9   Court?

10          MR. FREEMAN:  The question is whether they will be

11  permitted to testify in open court, given that their analysis

12  touches on the documents?

13          THE COURT:  Well, why don't you-all discuss the

14  documents, see what's at issue, and then maybe we can discuss

15  it further?

16          MR. FREEMAN:  Okay.

17          THE COURT:  Those are part of the documents of the

18  123?

19          MR. FREEMAN:  It's my understanding they are but I am

20  not 100 percent certain.  I believe that my co-counsel would,

21  perhaps, know better.  If you'll give me just one moment your

22  Honor?

23      **(Pause)**

24          MR. SPEAKER:  Just so you know, I can hear it over

25  here on the speaker.

1       (Laughter)

2            MR. FREEMAN:  It's nothing that exciting.

3       (Laughter)

4            Your Honor, it's my understanding that it's a

5  somewhat broader universe than the 123 documents, but it's what

6  those historians believe to be appropriate.

7            THE COURT:  So have you-all discussed it with the

8  defense yet?

9            MR. FREEMAN:  Again, we can -- perhaps Mr. D'Andrea

10  can review those Declarations and let me know if there's a

11  problem.

12            MR. D'ANDREA:  Some of this is a matter of timing.

13            MR. SCOTT:  And, no --

14            MR. D'ANDREA:  It's not too late for that --

15            MR. SCOTT:  No, and this is where they're

16  interconnected, your Honor, because to the extent those experts

17  are now relying upon documents that are highly confidential and

18  been provided by one side, does their opinion change at all if

19  they are given access to these documents that were also a part

20  of that legislative body?  And so that's how they all kind of

21  intertangle, from our position.

22            THE COURT:  You know, my problem is I don't know what

23  those documents are and unless you-all are going to be specific

24  in what you're presenting to the Court, you know, I'm not

25  comfortable ruling on matters.

1          MR. FREEMAN:  Okay.  Your Honor, I guess --

2          THE COURT:  So I understand you-all are going to

3    discuss it further, give specifics to the Court, and then I'll

4    be glad to rule on that.

5          MR. FREEMAN:  Apparently, my co-counsel has alerted

6    me that nearly all of the designations of legislator

7    depositions have also been marked as highly confidential, and

8    so -- and my co-counsel has cautioned me that it may not be

9    possible to ask Mr. D'Andrea to review the entirety of those

10   deposition transcripts prior to the commencement of trial.

11         THE COURT:  Okay.  Isn't that what final pretrial is

12   for, that we should be flushing this out?  And I just feel like

13   you-all are still speaking in generalities at the final

14   Pretrial Conference.  That's not efficient.

15         MR. FREEMAN:  Okay.

16         THE COURT:  I just -- unless I'm missing something,

17   that's the point.  We now have all these exhibits.  Where's the

18   rub?  What's the problem?  These are agreed to; these are not.

19   And I know you-all are still working on that and you-all are

20   supposed to provide objections to witnesses and exhibits on

21   Friday, so we can't address that today.

22         But I just think this is a sensitive issue, it's a

23   critical issue, and I can't just be making rulings without

24   really knowing what it is before the Court.

25         MR. FREEMAN:  Your Honor, we will endeavor, as much

1  as possible, to narrow the disputes before the Court.  It was

2  our prior understanding that there was a blanket objection, and

3  we're very glad to hear that there no longer is.  And we will

4  do our best to --

5          THE COURT:  But, you know what?  Even when there's a

6  blanket objection, you have to go through each one if you're

7  going to ask me to rule on it, right?

8          MR. FREEMAN:  We'll do our best, your Honor.

9          THE COURT:  I'd just rather not do it if you-all

10  haven't done it together yet, okay.

11          MR. FREEMAN:  We'll endeavor to do our best.  Thank

12  you.

13          THE COURT:  Thank you.

14          So, any other motions pending?

15          MS. WOLF:  Your Honor, this is Lindsey Wolf for the

16  State of Texas.  More of as a housekeeping matter, docket entry

17  469, which was the Defendants' Motion to Compel the Production

18  of Documents from various non-United States Plaintiffs, is

19  still pending.  However, we've made very, very much progress

20  with the Plaintiffs in working on Stipulations and we're still

21  hammering out the final details and we expect that those will

22  be filed with the Court, but for housekeeping purposes that is.

23          THE COURT:  That's still pending?

24          MS. WOLF:  Yes.

25          THE COURT:  Is that the -- are those the only motions

 1   then that are alive?

 2           **MR. DUNN:**  Your Honor, this is Chad Dunn on behalf of

 3   the Veasey/LULAC Plaintiffs.  We still have a motion concerning

 4   the amicus status of Dallas County, though we're holding that

 5   until there is an actual pleading to file and we'll confer with

 6   the State before we raise it again.

 7           **THE COURT:**  Okay.  So no other motions for the Court

 8   to rule on today, correct?

 9           **(No audible response)**

10           Let's see.  So, let's move on to the logistics of the

11   trial.  And I think in some of our status hearings we talked --

12   the parties asked for 40 hours per side, which would include

13   opening and closing.  I'm going to make a suggestion and then I

14   am open to comments, but I think we need to strive to get eight

15   hours of actual trial testimony each day, which I think would

16   have us working from 8:00 a.m. to 12:00 p.m., 1:00 p.m. to

17   6:00 p.m., mid-morning break, mid-afternoon break.  That gives

18   us, you know, maybe another 30 minutes to play with.  But by

19   6:00 o'clock, if we haven't gotten our eight hours in, we're

20   going to continue working until we get the eight hours in.

21   That's my proposal, but I am open for comments and suggestions.

22           **MR. ROSENBERG:**  Good morning, your Honor, --

23           **THE COURT:**  Good morning.

24           **MR. ROSENBERG:**  -- Ezra Rosenberg.  Starting with the

25   last thing your Honor mentioned, I think the eight hours would

 1    work great for us.  We've tried to put together a schedule and

 2    we want to make sure that there is no down time for your Honor.

 3    We were working on a seven hour schedule, but we can easily

 4    adjust that.  And we would make sure that we would fill up any

 5    possible dead time with highlighting the deposition

 6    designations that we think are of particular importance.

 7            One point that I do want to address.  You mentioned

 8    the closings in 40 hours.

 9            **THE COURT:**  Or maybe we should talk about it.  How

10    much time are you-all looking at for opening and closing, and

11    then maybe I can budge on that?

12            **MR. ROSENBERG:**  Well, openings, if your Honor wished

13    them, we thought they would be relatively short, but that would

14    count against our 40 hour time.  The closings, we thought your

15    Honor would set that at the -- you know, towards the end of the

16    trial but then that would not be within the 40 hours.

17            **THE COURT:**  Okay.  But any idea, just a rough idea,

18    as to how long the closing might be?

19        **(No audible response)**

20            And I'm not going to hold you to it.  I'm just trying

21    to plan here.

22        **(Pause)**

23            **MR. ROSENBERG:**  Plaintiffs would be comfortable with

24    two hours total for closing.

25            **MR. SCOTT:**  Your Honor, our idea probably would have

1   been maybe a lot closer to, like, oral arguments in the Court

2   of Appeals, obviously.  So, you know, maybe 10 to 15 minutes

3   and then answer any questions the Court has to clarify.

4           **THE COURT:**  Okay.

5           **MR. SCOTT:**  And then go through that process.

6           **THE COURT:**  So two to three hours for the whole thing

7   probably, for the whole closing.  That's fine.

8           **MR. SCOTT:**  Sure.

9           **THE COURT:**  All right.  And the opening?  I'm sorry,

10  what did you say on the opening?

11          **MR. ROSENBERG:**  Openings we thought would be

12  relatively short and perhaps a total of a half hour for

13  Plaintiffs.

14          **THE COURT:**  Okay.

15          **MR. SCOTT:**  That's more than adequate.

16          **MR. ROSENBERG:**  And we're happy if the State wants to

17  use less time.

18      **(Laughter)**

19          **THE COURT:**  Well, I'd be happy if everyone uses less

20  time, but --

21          **MR. ROSENBERG:**  Yeah.

22      **(Laughter)**

23          **THE COURT:**  Okay.  So what else were you going to

24  discuss on that?

25          I know that the Defendants in particular had

1  mentioned about having to do some offers of proof.  That would

2  have to be done outside those eight hours, so I don't know how

3  much you're looking at in total.

4         **MR. SCOTT:**  And I don't know either, your Honor.

5         **THE COURT:**  Okay.

6         **MR. SCOTT:**  It depends on what the Court rules.

7  Hopefully, we don't use any of that time.

8         **THE COURT:**  I thought there was some particular

9  issues, though, that maybe I had made rulings on --

10        **MR. SCOTT:**  I think there are.

11        **THE COURT:**  -- that you asked about.

12        **MR. SCOTT:**  Yes, I think there are some matters that

13 we've been limited in discovery that we will go through some

14 witnesses and establish a record on that.  We're also going to

15 try and do that probably through some deposition testimony and

16 some -- at least with regards to some of those areas.  So we'll

17 try and reduce that as much as possible, but if we could tell

18 the Court maybe the day before; if you want to set up a day

19 where just like we get finished early in a day, great, we'll

20 tee it off on that.

21        **THE COURT:**  Okay.

22        **MR. SCOTT:**  We compartmentalized as much as possible.

23        Eight to 12:00 p.m. and 1:00 p.m. to 6:00 p.m. was

24 what you proposed, right?

25        **THE COURT:**  Yes.  I think that's how we get our eight

1    hours in, with a little break in the morning and a little break

2    in the afternoon and one hour for lunch and a little fudge

3    time.

4           **MR. SCOTT:**  And we're willing to go Saturdays and

5    Sundays if need be, your Honor, --

6           **(Laughter)**

7           -- to get more time in there and to get through it.

8    Not that we don't love Corpus; we do.

9           **THE COURT:**  We can play it by ear and see where we

10   are.

11          **MR. SCOTT:**  Okay.

12          **MR. ROSENBERG:**  Yeah, I think we would -- we haven't

13   really called everybody, but I think we'd have to play that by

14   ear.

15          **THE COURT:**  Okay.

16          **MR. ROSENBERG:**  And I did want to bring up a couple

17   other logistic issues if your Honor will --

18          **THE COURT:**  Okay.

19          **MR. ROSENBERG:**  One, the -- I think the existing

20   Orders anticipate a Supplemental Findings of Fact based upon

21   late discovery on September 2nd.  We conferred with the State

22   and I think all Plaintiffs would be agreeable that any

23   supplementation of the Findings of Fact await the conclusion of

24   trial and that towards the end of the trial we'll confer and

25   see if that should be done 48 hours, 72 hours, after trial.

1    But we'll reach something that works for everybody.

2            THE COURT:  All right.

3            MR. SCOTT:  Otherwise, we're giving you a bunch more

4    paper that's useless.

5            MR. ROSENBERG:  Yeah.

6            THE COURT:  I agree.

7            MR. ROSENBERG:  Next, I think, on exhibits we're

8    going to provide the Court with three copies of exhibits on a

9    CD.

10           THE COURT:  And can I just ask, because there was --

11   the Exhibit Lists that were provided -- and I know you-all

12   still are conferring on objections.  There's thousands of

13   exhibits, so what -- I mean, what can I expect, what are we

14   looking at; types of objections or categories or?

15           MR. ROSENBERG:  Yeah, that's a great question your

16   Honor.  I think what we have to do in order to make life easier

17   for your Honor is after we exchange our objections, immediately

18   get on the phone with each other and see if we can narrow it

19   down to the bare minimum.  So, there is just too many exhibits

20   for your Honor to have to deal with and I think we will

21   certainly approach it from the Plaintiffs' side reasonably, and

22   I'm assuming that the State will approach it from their side

23   reasonably.

24           MR. SCOTT:  Yes.

25           THE COURT:  All right.  And witnesses in the same

60

 1    situation I guess?

 2            **MR. ROSENBERG:**  Deposition designations, same thing.

 3    We will -- as soon as we get the objections and the cross

 4    designations we will sit down and try to narrow the universe.

 5            **THE COURT:**  But even -- I think there's going to be

 6    some objection to the Witness Lists, correct?

 7            **MR. ROSENBERG:**  Uh.

 8            **THE COURT:**  Or, no.  I thought that's what I was

 9    hearing somewhere, --

10            **MR. ROSENBERG:**  I don't think so.

11            **THE COURT:**  -- as to certain --

12            **MR. ROSENBERG:**  I've not heard of that.

13            **THE COURT:**  Okay.  I thought you-all were going to --

14            **MR. ROSENBERG:**  And we have agreed that we will tell

15    each other who our next -- who are witnesses are 24 hours in

16    advance.

17            **THE COURT:**  And I guess the ones that you-all are

18    going to call, or present by Declaration, for the direct

19    testimony or deposition -- the ones you-all are going to

20    present by document or by paper on the direct and then they're

21    going to be available for cross, correct.  When will we be

22    getting that or when am I going to be getting those

23    Declarations?

24            **MR. SCOTT:**  That's something that was a bit troubling

25    from my standpoint.  On the Exhibit List, the Plaintiffs have

1  added a bunch of Declarations and I don't view a Declaration as

2  an exhibit and so I would assume that it's not a part of the

3  record until the person sits down on the bench and in the

4  stand.  And so, I guess the process would be the night before

5  they would let us know.  We've agreed to exchange who we're

6  going to be calling the day before.

7  **MR. ROSENBERG:**  Yeah.

8  **THE COURT:**  I know.  You just need to consider my

9  time in having to review that before they get on.

10  **MR. ROSENBERG:**  And, your Honor, I think that --

11  **MR. SCOTT:**  So two or three days?

12  **(Pause)**

13  **MR. ROSENBERG:**  Yeah, I think that pretrial directs

14  would be due today and I don't think we're filing any pretrial

15  directs.

16  **THE COURT:**  No pretrial directs?

17  **MR. ROSENBERG:**  The Declarations -- the ones that I

18  know, other than Declarations that Mr. Freeman addressed

19  earlier, primarily from our side are the expert Declarations,

20  which your Honor already has.

21  **THE COURT:**  Okay.

22  **MR. ROSENBERG:**  And the idea there is that the expert

23  will come on the stand, probably highlight certain issues, but

24  not everything in the Declaration, but everything in the

25  Declaration is open to cross-examination.

1      **MR. SCOTT:**  Yes.

2      **THE COURT:**  Okay.  And there is a lot of those, so I

3  just need some sort of timeline, I guess, as to how we're going

4  to proceed.  Obviously, you-all are going to be letting each

5  other know which witnesses are going to be called the next day,

6  but even if you can give me a couple of days heads up it would

7  be helpful.

8      **MR. ROSENBERG:**  We're happy to.  You know, as I said,

9  we've been working on our schedule --

10      **THE COURT:**  Okay.

11      **MR. ROSENBERG:**  -- and we will give your Honor -- if

12  your Honor wants two days, three days advance, knowing that

13  there might be some slippage depending on --

14      **THE COURT:**  Right.

15      **MR. ROSENBERG:**  You know, we've been trying to

16  estimate how long Mr. Scott is going to spend cross examining

17  our people and things like that.

18      **THE COURT:**  So the Plaintiffs are not going to

19  present direct evidence then, just the Declarations; direct

20  evidence in terms of filing --

21      **MR. ROSENBERG:**  Pretrial directs.

22      **THE COURT:**  -- pretrial direct.

23      **MR. ROSENBERG:**  No.

24      **THE COURT:**  No.  The defense?

25      **MR. SCOTT:**  No.

1          **THE COURT:**  Okay.

2          **MR. SCOTT:**  The only Declarations we would --

3          **THE COURT:**  Okay.  I was concerned there was just

4   going to be a lot of that that I was going to have to be

5   reviewing before the witnesses took the stand before they were

6   cross examined, so that doesn't look like it 's going to be a

7   big issue then.

8          **MR. ROSENBERG:**  No.

9          **THE COURT:**  Okay, good.

10          **MR. ROSENBERG:**  Deposition designations, we've

11   exchanged the original ones.  The counter designations are due,

12   I guess, today.

13          **MR. SCOTT:**  No, they're due Friday.

14          **MR. ROSENBERG:**  Friday.  As I said, we will try to --

15          **MR. SCOTT:**  Some are due today and then Friday is the

16   objections.

17          **MR. ROSENBERG:**  Right.

18          **MR. SCOTT:**  Yes.

19          **MR. ROSENBERG:**  But we will try to narrow the

20   universe for your Honor.

21          We're going to add -- each side is going to add the

22   counters to the highlighted copies that we'll provide your

23   Honor.  We'll color code it so you can tell direct designation

24   from counter.

25          We're going to provide your Honor with a full set of

1   condensed transcripts for both parties, with the highlighted

2   designations if that works.  And if there's anything else your

3   Honor needs in that regard, please let us know and we'll

4   endeavor to do whatever.

5            In terms of video depositions, there are going to be

6   some video depositions.  And people can correct me if I'm wrong

7   but I'm not sure if we have an agreement yet exactly how that's

8   going to be provided in terms of whether -- maybe your Honor

9   has a preference.  Would you like to see let's say Plaintiffs'

10  video designations and then that stops and then Defendants come

11  with their counter designations on video?

12          **THE COURT:**  I'm fine either way.  Some parties prefer

13  if they're presenting their case they want to do all their

14  excerpts and then the other party follows up.  If you-all want

15  to get together and present the whole thing, I'm open to

16  either.  If you-all don't agree, you know, let me know and I'll

17  make a ruling.

18          **MR. ROSENBERG:**  Okay.

19          **THE COURT:**  But I tend to allow the party presenting

20  the case to present his case as he sees fit.

21          **MR. ROSENBERG:**  Great.  Thank you, your Honor.  And

22  we will work with Ms. Cortez to make sure that the video

23  formats and everything work with whatever system your Honor

24  has.

25            And are there any other questions that we might

1    answer?

2         **THE COURT:**  Anything else from anyone on the

3    presentation of the case?

4         **MR. SCOTT:**  The Court adding the universe of the

5    prior Section 5 is an aspect that's a little bit of a surprise

6    from our perspective, and so we'll do -- I don't want to do --

7    I'm cognizant of the hog analogy and I'm not ever trying to go

8    down that path.

9         **THE COURT:**  All I'm saying is you're trying your case

10   to this Court and you need to, as if a jury was here and you

11   were calling a witness or you were going to present deposition

12   and you might read page and line or whatever it was.  I'm not

13   telling you to, you know, you're going to take up that time.

14   You-all are going to present it to the Court.  But you need to

15   let me know what it is.  I mean, I know at one of the status

16   conferences you-all asked, do we just submit the entire

17   depositions, or I don't know what the question was.  That's not

18   the way you try a case.  So try your case like I'm, you know, a

19   sole juror here, but like you're trying it to a jury.  It's

20   going to be massive.  It's going to be a lot.  You need to

21   advocate well, and this is not advocating well.  You're a fact

22   finder, find it yourself.

23       **(Laughter)**

24         **THE COURT:**  Right?

25         **MR. SCOTT:**  And, your Honor, I think --

1        **THE COURT:**  You-all are all very well experienced.  I

2   know we're not going to do that, but you know I'm a little

3   concerned about some of that happening because of the

4   limitation on the amount of time.  But that's not going to be

5   helpful to anybody's case.

6        **MR. SCOTT:**  And we have back-end loaded this so there

7   has not been any time from all the parties' standpoints.  So

8   everybody has been in depositions.  I know that a 12 hour week

9   of sleep has been a great week over the last three weeks.  And

10  so I think that from our perspective we're trying to make sure

11  that we've also got a good record for the appellate level.  And

12  so I think that's something that all the parties share is an

13  understanding of why we're not trying to dump an enormous

14  amount of data on you.  We just want to make sure that the

15  record is clear, whoever ends up looking at this thing.

16       **MR. ROSENBERG:**  Yeah.

17       **THE COURT:**  Well, you're not going to try your case

18  like that.

19       **MR. SCOTT:**  Okay.

20       **THE COURT:**  You're not just going to dump evidence

21  for appeal.  You're trying -- this is a trial.  We're at the

22  District Court level, you are making your presentation of the

23  evidence, and we're not dumping evidence on the fact finder.

24       **MR. SCOTT:**  And so, from that standpoint, your Honor,

25  is it the Court's view that our -- any designation relating to

1    the entire Section 5 transcript -- again, it's three rooms --

2    are due today or are they due Friday or is that something we

3    can have a rolling leeway to try and kind of parse through and

4    get you the best stuff available?

5              THE COURT:  Well, have the Plaintiffs designated?

6              MR. ROSENBERG:  We have designated from the Section 5

7    case in support of specific --

8              THE COURT:  And you've provided that already?

9              MR. ROSENBERG:  Yeah, in support of specific findings

10   of fact.

11             THE COURT:  Well, I suspect that's going to limit

12   your --

13             MR. SCOTT:  Okay.

14             THE COURT:  -- what you're looking at.

15             MR. SCOTT:  We'll throw it in there, your Honor.

16             MR. ROSENBERG:  And just so it's clear, as I

17   understand, your Honor wants us to read into the record before

18   your Honor those aspects of the deposition designations that we

19   feel we need to support our case?

20             THE COURT:  I don't know that you need to read into

21   the record; you need to just give me that portion or you need

22   to just highlight that portion.  I realize with your 40 hours

23   you are limited, and that's what you-all were trying to save on

24   that.  So, you know, you present your case as you see fit, you

25   know, what would be better for the fact finder to realize and

1    connect as to what's important about this evidence that's being

2    presented.  You know, if I'm just reading something here -- you

3    know, you present your case as you think is best.  You can

4    present that to me without reading it into the record.  I just

5    -- I guess my point is I don't want the entire deposition;

6    here, this is what we would have presented if we had called the

7    witness.

8            **MR. ROSENBERG:**  No.

9            **THE COURT:**  That's --

10           **MR. ROSENBERG:**  We are not doing that, your Honor.

11           **THE COURT:**  Okay.

12           **MR. SCOTT:**  I just want to make sure on - -

13           **THE COURT:**  And don't let your appellate lawyers talk

14   you into doing that.

15       **(Laughter)**

16           Who are they so I can peg them?

17       **(Laughter)**

18           **MR. DONNELL:**  It's not me.

19           **MR. SCOTT:**  It's not me.

20           I just want to make sure that there are some

21   designations in that entire record.  I think when that door

22   opens, and it's open now, in order for this Court to have a

23   full understanding of what is getting presented by their

24   designation, I don't want you to be surprised by the sheer

25   volume, which was obviously --

1      **THE COURT:**  You-all have 40 hours, so the Plaintiffs

2  are going to -- you know, we'll see where it takes us.

3      **MR. SCOTT:**  Okay.

4      **THE COURT:**  I think that should kind of limit matters

5  by your time limit.

6      **MR. HEBERT:**  Your Honor, Gerry Hebert for the

7  Veasey/LULAC Plaintiffs.  I just want to -- we have factored

8  into our 40 hours of time selecting certain deposition excerpts

9  that -- and we actually took it from a comment your Honor made

10  at one of the earlier hearings, that there's a lot of documents

11  and you're not going to be able to read everything so we need

12  to present you, the fact-finder, with the specifics.  So, in

13  those instances, we have built into our 40 hours time to

14  actually read some of the depositions.

15      **THE COURT:**  I think that's the best thing.

16      **MR. HEBERT:**  Okay.  We do too.

17      **THE COURT:**  You know.  And Mr. Scott is saying yes

18  too, so --

19      **MR. SCOTT:**  Absolutely.

20      **THE COURT:**  Okay.

21      **MR. SCOTT:**  We're going to show you the gold nuggets.

22  We're not going to --

23      **THE COURT:**  You're not going to make me --

24      **MR. SCOTT:**  -- make you dig around.

25      **THE COURT:**  -- dig for truffles?

1      **(Laughter)**

2           Buried in here, it would be evidence.

3      **(Laughter)**

4           But anyway.  All right.

5           Anything else on the logistics?

6      **(No audible response)**

7           Or any other matter?

8           You-all have got a lot of conferring to do, so I

9      don't know what you-all plan.

10          **MR. DUNN:**  Again, Chad Dunn, your Honor.  I didn't

11     understand some comments earlier.  Are we supposed to come back

12     after lunch or do you want us to set up a call tomorrow?

13          **THE COURT:**  I am available if you-all need the Court

14     to make some rulings, so we can move on.  I just don't know how

15     long it's going to take you-all to confer.  Ms. London is here.

16     You-all need to address her issue first.

17          **MR. SCOTT:**  I told Ms. London that's the first thing.

18          **THE COURT:**  Okay.

19          **MR. SCOTT:**  I'm going to immediately meet with her.

20          **MR. DUNN:**  Would it make sense then to --

21          **MS. LONDON:**  Can we tentatively agree to a time to

22     come back because I'm hopeful, since our agreement was that

23     they're supposed to identify what they're actually going to

24     use, that we could.

25          **THE COURT:**  Okay.  It's 10:20 a.m.  You-all want to

1    come back at 1:00 o'clock?  I mean, do you-all think you-all

2    will get it done before noon?

3           **MR. SCOTT:**  Do you think we can go through that many

4    pages?

5           **THE COURT:**  How about a status at 11:45 a.m.?

6    Status?

7           **MS. LONDON:**  I have no idea what you have.  I have no

8    idea how many of the documents you intend to use.  That's the

9    point.

10          **THE COURT:**  Why don't you-all come back at 1:30 p.m.

11   and it's going to be like a status to see where you-all are at?

12          **MR. SCOTT:**  And if we've got some resolved, or close

13   to it, we'll let the Court know.

14          **THE COURT:**  Just let Brandy know.

15          **MR. FREEMAN:**  Your Honor, is it possible -- with

16   regard to the legislative documents, I'm not sure how long it

17   will take.  If we're not able to resolve it today, would it be

18   possible to get on the phone in order to address whatever

19   outstanding issues there are?

20          **THE COURT:**  Yes.  You-all are going to start

21   conferring now?

22          **MR. FREEMAN:**  Yes, absolutely your Honor.

23          **THE COURT:**  Why don't we do a status by the end of

24   the day for you-all, or 3:00 o'clock?

25          **MR. FREEMAN:**  I currently plan to be on a plane at

1    3:00 o'clock, but if --

2              **THE COURT:**  Okay, well when are you going to visit?

3              **MR. FREEMAN:**  -- I need to change the plan I need to.

4              **THE COURT:**  This is a serious matter.

5              **MR. FREEMAN:**  Absolutely, your Honor.

6              **THE COURT:**  When are you going to visit with him?

7              **MR. DUNN:**  Your Honor, can I make a proposal perhaps?

8              **THE COURT:**  Yes.

9              **MR. DUNN:**  Should we just schedule a phone conference

10   maybe tomorrow at 1:30 p.m. and then they can confer up until

11   then, and they'll have a hard deadline and nearly -- or, a

12   little more than 24 hours for us all to talk, because there is

13   also a deposition this afternoon.

14             **MR. ROSENBERG:**  Right.  We have a witness who flew

15   in.

16             **THE COURT:**  I don't mind doing that, but this is the

17   whole point -- and I know you-all are still doing depositions

18   and everything else -- is we're going to start eating into our

19   trial time if we don't resolve all these matters.  That's what

20   final Pretrial Conference is for, to limit the matters that are

21   going to have to be addressed during the trial, and this is

22   massive stuff, lots of exhibits.

23             **MR. SCOTT:**  And, your Honor, from my perspective, we

24   go back to the advisory we filed with the Court very early when

25   we set up the schedule.  From the Texas standpoint, the most

1    important thing is the impact on the upcoming November

2    elections and the early cycling.  So I appreciate the Court

3    saying that we don't want to get into that trial time, and

4    that's why we're willing to go seven days a week, and if the

5    Court says 14 hours a day we'll do that.  We do not want

6    confusion in the elections as a result of the impending matters

7    in this case.  So that's our magic goal going into this.

8    Everything else becomes secondary from our standpoint.

9            **THE COURT:**  Okay.  I don't mind doing a conference

10   call at 1:30 tomorrow.  We're not talking about Ms. London's

11   issue, because you-all are going to address that now.

12           **MR. SCOTT:**  Yes.

13           **THE COURT:**  And we're going to convene this afternoon

14   for a status hearing.

15           But on the other issues the problem is I'm not going

16   to have a heads up to start making rulings tomorrow afternoon,

17   right?

18           **MR. ROSENBERG:**  Right.

19           **THE COURT:**  We're going to confer about where you-all

20   are at?

21           **MR. ROSENBERG:**  Yeah, well, and particularly in terms

22   of exhibits or deposition designations we're not going to even

23   be there until Friday anyway.

24           **THE COURT:**  I just -- you-all are going to start

25   eating into the trial time next week, but that's fine if you-

```
 1   all want to confer and then we convene for that phone status

 2   conference at 1:30 tomorrow.

 3                MR. ROSENBERG:  Okay.  Thank you, your Honor.

 4                THE COURT:  Any other comments?

 5             (No audible response)

 6                Okay.  If nothing further, then you're excused.

 7                MR. DUNN:  Thank you, your Honor.  So we are coming

 8   back here, though, today on the other issue?

 9                MR. ROSENBERG:  No.

10                MR. DUNN:  Okay.

11                THE COURT:  Well, that -- I don't think that's your

12   issue, right?  I think it's Mr. Scott and Ms. London.

13                MR. SCOTT:  We're going to knock that out right now.

14                THE COURT:  I don't know who else is going to stay

15   for that, but they're going to go discuss that and they're

16   going to come back.  She needs to hammer that out.

17                MR. ROSENBERG:  Yeah, okay.

18                MR. DONNELL:  Thanks your Honor.

19             (Discussion held off the record)

20                THE COURT:  Everyone is going to go off to confer and

21   we're going to have a phone conference tomorrow at 1:30 p.m.

22             (Discussion held off the record)

23                MR. DUNN:  I'm sorry to be -- your Honor, does that

24   mean Ms. London and Mr. Scott are to be here at 1:30 for a

25   hearing today or are they just supposed to let you know by
```

1   1:30?

2           **THE COURT:**  She wants the issue resolved, so they're

3   going to go confer and if I can resolve that issue I'm

4   resolving it.  I don't think it really --

5           **MR. DUNN:**  It doesn't affect me.

6           **THE COURT:**  Okay.  If it doesn't affect you, you

7   don't have to be here.

8           **MR. DUNN:**  Okay.

9       **(This proceeding was adjourned at 10:23 a.m.)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____                    August 29, 2014_


                    TONI HUDSON, TRANSCRIBER