UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, ET AL., | ) | CASE NO: 2:13-CV-00193 |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Corpus Christi, Texas |
| | ) | |
| RICK PERRY, ET AL., | ) | Wednesday, August 27, 2014 |
| | ) | (2:03 p.m. to 2:06 p.m.) |
| Defendants. | ) | (2:06 p.m. to 2:47 p.m.) |

STATUS CONFERENCE

(SEALED PORTION OMITTED)

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE

Appearances:            See Next Page

Court Recorder:         Genay Rogan

Clerk:                  Brandy Cortez

Court Security Officer:  Adrian Perez

Transcriber:            Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

<u>APPEARANCES FOR:</u>

Plaintiffs:                          CHAD W. DUNN, ESQ.
                                     Brazil and Dunn
                                     4201 Cypress Creek Parkway, Suite 530
                                     Houston, TX 77068

                                     J. GERALD HEBERT, ESQ.
                                     Attorney at Law
                                     191 Somervelle Street #405
                                     Alexandria, VA 22304

Mexican American                     EZRA D. ROSENBERG, ESQ.
Legislative Caucus,                  AMY L. RUDD, ESQ.
et al.:                              Dechert, LLP
                                     902 Carnegie Center, Suite 500
                                     Princeton, NJ 08540-6531

Texas State Conference               MARK A. POSNER, ESQ.
of NAACP Branches:                   Lawyers' Committee for Civil Rights
                                     1401 New York Avenue, NW
                                     Suite 400
                                     Washington, DC 20005

Texas League of Young                NATASHA KORGAONKAR, ESQ.
Voters Education Fund:                RYAN HAYGOOD, ESQ.
                                     NAACP Legal Defendant and Educational
                                     Funds, Inc.
                                     40 Rector Street
                                     5th Floor
                                     New York, NY 10006

                                     DANIELLE CONLEY, ESQ.
                                     Wilmer Cutler Pickering, et al.
                                     1875 Pennsylvania Avenue, NW
                                     Washington, DC 20006

State of Texas:                      JOHN B. SCOTT, ESQ.
                                     J. REED CLAY, JR., ESQ.
                                     Office of the Attorney General
                                     P. O. Box 12548
                                     Austin, TX 78711

                                     JENNIFER ROSCETTI, ESQ.
                                     LINDSEY WOLF, ESQ.
                                     BEN DONNELL, ESQ.
                                     DAVID WHITLEY, ESQ.
                                     ARTHUR D'ANDREA, ESQ.
                                     WHITNEY DEASON, ESQ.

<u>APPEARANCES FOR (Cont'd)</u>:

United States                   BRADLEY HEARD, ESQ.
of America:                     DANIEL J. FREEMAN, ESQ.
                                ELIZABETH S. WESTFALL, ESQ.
                                U. S. Department of Justice
                                950 Pennsylvania Avenue, N.W.
                                NWB Room 7125
                                Washington, DC 20530

                                JOHN A. SMITH, III, ESQ.
                                Office of the U.S. Attorney
                                800 N. Shoreline Blvd.
                                Suite 500
                                Corpus Christi, TX 78401

                                RICHARD DELLHEIM, ESQ.

Texas Association of            ROLANDO L. RIOS, ESQ.
Hispanic County Judges          115 E. Travis
and County                      Suite 1654
Commissioners:                  San Antonio, TX 78205

Oscar Ortiz, et al.:            ROBERT DOGGETT
                                MARINDA VAN DALEN, ESQ.
                                Texas Rio Grande Legal Aid
                                4920 North IH 35
                                Austin, TX 78751

Non-Party Senators and          STEPHEN TATUM, ESQ.
Representatives:                 JAMES ECCLES, ESQ.
                                ALICE LONDON, ESQ.

1    <u>**Corpus Christi, Texas; Wednesday, August 27, 2014; 2:03 p.m.**</u>

2                          **(Call to order)**

3          **THE COURT:**  The Court calls Cause Number 2:13-cv-193,

4    *Veasey, et al. versus Perry, et al.*  And we're here on a status

5    regarding the issue of the records of the non-party

6    representatives.

7          **MR. SCOTT:**  Your Honor, John Scott for the

8    Defendants.  We have two examples.  We've gone through a bunch

9    of documents and narrowed a bunch of the scope, so we were

10   trying to maybe get a little guidance from the Court on that to

11   narrow the scope further on the rest of the documents.  Ms.

12   London has agreed to visit about anything that -- depending

13   upon how you rule today --

14         **THE COURT:**  Okay.

15         **MR. SCOTT:**  -- on the rest of the documents, so we

16   get a little bit of a flavor.  And with your permission, if I -

17   - be okay if I give this two to the Court?

18         **MS. LONDON:**  And, Judge, I'm sorry, but I disagree

19   with the characterization that that's what we're doing.  I want

20   to be real clear procedurally where we are.  We're not offering

21   examples.  What has happened here is we had an agreement; and

22   to the extent that I'm asking the Court to enforce the

23   agreement, I want to be clear.  The agreement was that we would

24   tender these highly confidential documents in seal and that the

25   State would designate what they intended to use.  Once they --

5

1          THE COURT:  Have we gotten there?

2          MS. LONDON:  Yes.

3          THE COURT:  What they intended to use.

4          MS. LONDON:  Well, yes.  Originally they said a

5   hundred percent.  Today they gave me about 700 to -- 760 to 800

6   pages that they intend to use.  Of the 800 pages or so that

7   they've given me, I've had the opportunity to review 542 pages.

8   I'm going to suggest that we go senator by senator.  With

9   regard to Senator Ellis, I have reviewed all of the documents

10  that they have said they intend to use.  We reached an

11  agreement that Bates -- Ellis Bates Numbers 49 through 66, they

12  will not use.

13         MR. SCOTT:  That's correct.

14         MS. LONDON:  They will -- they have also agreed that

15  Ellis documents Bates Number 3478 through 3482, they will not

16  use.

17         MR. SCOTT:  That's correct.

18         MS. LONDON:  So with regard to Senator Ellis, we are

19  not down to examples.  We are down to exactly two documents.

20         THE COURT:  Okay.

21         MS. LONDON:  And we are asking the Court to rule on

22  those two documents.  And then after that, with regard to

23  Senator Ellis, we are done.

24         THE COURT:  Okay.  What is it then?

25         MR. SCOTT:  So the two documents, your Honor, are

6

1    Bates Number 1171 through 1172, and that's RE-PRIV 1171 to

2    1172, and that's one that's -- at the top it has "Gmail" on it.

3    This is a document that I believe was asserted a legislative

4    privilege at first, and there may be some other objections.

5    Our obvious interest in this is in a number of areas, but

6    specifically in the one, two, three, four, fifth paragraph.

7    This morning the Court introduced -- or allowed I believe 43

8    declarations to come in relating to the number if EICs issued.

9    This document, second sentence --

10        **(Sealed portion omitted)**

11            **THE COURT:**  Okay, where are you?  Paragraph five on?

12            **MR. SCOTT:**  Paragraph one, two, three, four, five,

13    yes, your Honor.

14            **THE COURT:**  On 1171?

15            **MR. SCOTT:**  Page 1171.

16            **THE COURT:**  Okay, I see.

17            **MR. SCOTT:**  Second sentence.  And also the --

18            **THE COURT:**  Can I write on this?  Is this extra?

19            **MR. SCOTT:**  Yes, yes --

20            **THE COURT:**  Okay.

21            **MR. SCOTT:**  -- that's your copy, your Honor.

22            **MS. LONDON:**  And, Judge, so the record is clear, we

23    are offering these documents under seal.  And so by having this

24    discussion, we're not waiving --

25            **THE COURT:**  Okay.

1    **MS. LONDON:**  And if it would for me to state my

2  objections first --

3    **THE COURT:**  Go ahead.

4    **MS. LONDON:**  -- so that you can have the parameter.

5  This is a document that was in Senator Ellis's file.  It is

6  written by a person who is not going to be a witness in this

7  case.  It is an opinion by someone whose opinion I think has no

8  relevance to any --

9    **THE COURT:**  Who is it in relation to --

10    **MS. LONDON:**  Sondra Haltom (phonetic) is with the

11  Democratic party.

12    **THE COURT:**  So it was written by her to the Senator?

13    **MS. LONDON:**  It appears to be written -- Senator

14  Ellis has it because David Edmondson is his general counsel.

15  So this was written in 2011 by someone with the Democratic

16  party expressing her opinion to the general counsel of Senator

17  Ellis.

18    **THE COURT:**  Okay.  Let me read it real quick.  Okay,

19  anything further?

20    **MS. LONDON:**  So, Judge, essentially this is -- gets

21  to exactly -- well, let me start off by saying there are two

22  sets of objections here.  One is general relevance.  There is

23  nothing in this document that is evidentiary as to an ultimate

24  decision that the Court needs to make on motive and intent as

25  to Senate Bill 14.  And that's just a general relevance

1    objection.  And then secondly, there is a hearsay objection

2    that this is an email that my client can say yes, it is an

3    authentic email they got, but it is going to ultimately be a

4    hearsay statement by Sondra Haltom.

5              **THE COURT:**  Okay.

6              **MS. LONDON:**  Then you get to the legislative

7    privilege argument, which this is part of the work product that

8    Senator Ellis had in formulating his deliberative process of

9    how he was going to vote.  And the theme that you have on all

10   of my arguments is you have a guy who voted against Senate Bill

11   14, and how he got there, who persuaded him, why he got there,

12   it's our position has no relevance.  And if we're going to do

13   the goose and gander thing, the State has to show that this

14   document has relevance to their claim.  And our position is

15   that this document does not have relevance to their claim.

16             **THE COURT:**  Anything further, Mr. Scott?

17             **MR. SCOTT:**  Well, your Honor, the universe of Texas

18   documents where a legislative privilege has been asserted has

19   been because there was communication between legislators and/or

20   their staff about matters that were then pending or proposed to

21   be pending.  That is a hundred percent of that universe of

22   documents.  Some of the documents that are being attempted to

23   be released by the Department of Justice and is going to be

24   something I think for tomorrow's hearing -- or tomorrow's

25   conference call with them is a category of documents that fall

1   all within that universe.  What this is, is a document that

2   involves a multitude -- multiple people that are not part of

3   the legislature, not part of the legislative staff of anyone

4   that's in the legislature, and it deals with something from

5   Senator Ellis who has been listed on the witness list and who's

6   expected to be testifying live in this case.  It goes to the

7   fact of implementation.  One of their contingents that they're

8   making is something's wrong with the way this bill is being

9   implemented because there's no EICs being issued.  This is one

10  piece of evidence relating to impeachment of Senator Ellis and

11  statements we believe he may be saying during the course of

12  this trial.  And it also makes reference to something that

13  seems to be a common thing amongst a lot of the documents,

14  which is the plan.  Not real sure what "the plan" is.  We're

15  still going through the documents to try and determine what

16  "the plan" is that the senators had.  But to the extent there

17  is a plan out there to help effectuate the -- to stop passage

18  of it or to help provide information to the Department of

19  Justice to stop the implementation of SB 14, we think that goes

20  to the heart of some of the issues that have been raised by the

21  Plaintiffs in this case.  So I guess number one is, it doesn't

22  qualify as a legislative privileged document.  The fact that

23  someone asserted legislative privilege over this document is

24  absolutely incorrect use of the word -- of the privilege.  And

25  then it goes to the heart of being able to impeach a potential

1   witness, a person who's identified that's going to testify live

2   at trial.

3           **THE COURT:**  Okay.  I guess that is the question.  How

4   -- it may not come in at trial because it may not be relevant.

5   It may be hearsay.  But where does it fit into the legislative

6   history privilege -- or legislative privilege?

7           **MR. SCOTT:**  Well, I think from the legislative

8   history, it's not part of --

9           **THE COURT:**  No, I'm --

10          **MR. SCOTT:**  -- it's -- oh, not me.

11          **THE COURT:**   Yeah, I'm --

12          **MR. SCOTT:**  Okay, sorry.

13          **THE COURT:**  -- asking Ms. London.

14          **MS. LONDON:**  Yeah.  Senator Ellis relied on a variety

15  of people to formulate his strategy to oppose Senate Bill 14.

16  He relied -- and part of his deliberative process was that he

17  spoke to the people that he wanted information from, and this

18  is one of the people that he collected information from.  And I

19  think the legislative privilege is designed to allow

20  legislators to deliberate, formulate their process, collect

21  information, without being questioned about that or having to

22  turn over their documents regarding it.

23          **THE COURT:**  But does it cover information -- I would

24  see this as coming from like a third party, not someone within

25  the staff or the office of the Senator.

1          **MS. LONDON:**  This was -- David Edmonson is his staff.

2          **THE COURT:**  But he's not the one that --

3          **MS. LONDON:**  And he is --

4          **THE COURT:**  He just forwarded this.

5          **MS. LONDON:**  No, he --

6          **THE COURT:**  Or no?

7          **MS. LONDON:**  This is sent -- David Edmonson has had

8    contact with the Democratic party.  He's collecting information

9    for the Senator.  She responds by sending her opinion and her

10   information to the Senator's staff.  And it's in his file,

11   which they have subpoenaed, and they are now trying to use it

12   to impeach him.  That is exactly what the legislative privilege

13   is supposed to protect against.  It's supposed to allow

14   senators to collect information, do their research, communicate

15   with who they want, formulate their strategy.  And in this

16   case, Senator Ellis had a failed strategy.  He voted against

17   it, he didn't win.  So it -- I mean, I think the Court has

18   multiple options here to say if Mr. Scott is correct, that it's

19   not from the legislature, then what relevance does it have to

20   the Court's decision of motive and intent.  If it's not from

21   the legislature, how does it inform this Court about what the

22   legislature was doing or not doing?  And if it is related to

23   the legislature, it's privileged as part of what Senator Ellis

24   was doing to establish his position.  And even at that, Senator

25   Ellis, who voted against it, I mean, understanding his

 1   rationale --

 2            **THE COURT:**  Right, but I think that's a relevance

 3   issue.  Is it a legislative privilege matter?

 4            **MS. LONDON:**  Oh, I understand what you're saying.

 5            **THE COURT:**  You see what I'm saying?

 6            **MS. LONDON:**  I understand.

 7            **THE COURT:**  Yeah.

 8            **MS. LONDON:**  Judge, you're asking does this qualify

 9   for the privilege?

10            **THE COURT:**  Right.

11            **MS. LONDON:**  Okay.  I think it --

12            **THE COURT:**  Because that's the whole thing.  That's

13   what we're sealing -- has been matters that are -- should be

14   protected by the legislative privilege.  I mean, it's a whole

15   different thing whether it's going to be admissible at trial or

16   not.

17            **MS. LONDON:**  So procedurally these documents have --

18   are -- there's a motion for protective order and it's whether

19   or not in response to the subpoena we have to turn them over.

20   If you decide they're not relevant, then we don't have to turn

21   them over, and that's what we're here today about.

22            **THE COURT:**  So they've been turned over --

23            **MS. LONDON:**  Only --

24            **THE COURT:**  -- and been reviewed but sealed, so yes.

25            **MS. LONDON:**  Only for the purpose of enabling you to

13

1   -- enabling us to make the arguments on the protective order.

2   In other words --

3           **THE COURT:**  Okay.

4           **MS. LONDON:**  -- I let them have the documents so we

5   could have intelligent conversations on the protective order.

6   And if you rule that they're not relevant, then I don't have to

7   turn it over to the subpoena if --

8           **THE COURT:**  Yeah, I got it.  I was confused in my --

9           **MS. LONDON:**  Yeah, it is confusing.

10          **THE COURT:**  Okay, anything further from the State?

11          **MR. SCOTT:**  I think not, your Honor.

12          **THE COURT:**  The Court's going to -- if it's a motion

13  for protective order on the part of Senator Ellis, if that's

14  what's before the Court, the Court's granting that.

15          **MR. SCOTT:**  And it's on this document, your Honor.

16          **THE COURT:**  On eleven -- was that 72?

17          **MR. SCOTT:**  It's 1171 and 1772.

18          **THE COURT:**  It's 1171.  I haven't looked at 72 yet.

19          **MR. SCOTT:**  And, your Honor, so that we make a clear

20  record, we would like to put a copy of that that has been

21  offered, that the Court is not going to allow the Defendants to

22  make use of this document at time of trial.  Is that correct?

23  Am I understanding the ruling correctly?

24          **THE COURT:**  That is correct.  So what are you asking,

25  that this be sealed and put -- and made a part of the record?

1          **MR. SCOTT:**  Yes.

2          **THE COURT:**  Okay.

3          **MR. SCOTT:**  And -- or if it would be easier for us to

4    submit something to the Court to the extent we get documents

5    that fall into that category, a submission of documents that we

6    attempted to introduce as part of the record and the Court

7    denied their use, just so that we've got a complete record.

8          **THE COURT:**  Okay, that's fine.

9          **MR. SCOTT:**  Is that okay?

10         **THE COURT:**  I'm fine with that.

11         **MS. LONDON:**  Yes.

12         **MR. SCOTT:**  Are you okay with that?

13         **MS. LONDON:**  Yes.

14         **THE COURT:**  Okay.  So then I'm looking at 1706 now.

15         **MR. SCOTT:**  Yes.  And it's another of these documents

16   which occurred after passage, just like 1171, so it was after

17   passage of the bill.  We see no attorney work product, nor was

18   there an attorney-client issue.  It is a 2013 email from Mr.

19   Dunn recommending that Senator Ellis send a letter that says as

20   follows, relating to (indiscernible) with the Department of

21   Public Safety and also Bud Kennedy, who is a newspaper person

22   up in Fort Worth, the *Star-Telegram*, a political commentator.

23   And so we're -- we don't see that this document falls within

24   the legislative privilege as we understand that term.

25         **MS. LONDON:**  Judge, my objection on this one is in

1    fact attorney-client.  You can see that Brandon -- the top part

2    of 1706, Brandon Dudley is identified as legal counsel, and he

3    is communicating with Chad Dunn.  And I'm prepared to put Mr.

4    Dunn on the stand, but at this point, Chad Dunn is acting as an

5    attorney for Senator Ellis.  And so you have Chad Dunn

6    communicating with Chief of Staff Legal Counsel.  And so -- and

7    David Edmondson, who's on page 1707, is also an attorney

8    working for Senator Ellis.  And so my objection is attorney-

9    client.

10          **MR. SCOTT:**  Well, so, that's a new argument today.

11   Does -- so that I can understand I guess the cycle of arguments

12   for this document, legislative privilege is no longer an

13   assertion.  If that's the case, then let me switch the

14   attention to the -- if we could figure that out, I guess.

15          **THE COURT:**  But it sounds like it's an attorney-

16   client privilege issue.

17          **MS. LONDON:**  Yes.

18          **MR. SCOTT:**  So attorney-client privilege would be

19   related to a scope of work, and I don't see that anything is

20   identified in this document that would say that.  It simply

21   seems that it's a response to a tweet by Bud Kennedy of the

22   Fort Worth Star-Telegram relating to voter ID glitch.  "The

23   Texas Department of Public Safety confirms that voter ID --

24   voter card applicants are checked first for warrants, so anyone

25   with an unpaid ticket can vote."

1          **THE COURT:**  Can't.

2          **MR. SCOTT:**  Or can't vote, question mark.  And then,

3     "We need to dog (phonetic) into this this a.m.  If true, do a

4     letter to head of BPS and to DOJ or something as soon as

5     possible."  Again, this would simply be something that would

6     probably be used to go to the credibility of the witness,

7     depending upon what Senator Ellis attempts to testify to in

8     this case.

9          **MS. LONDON:**  But he's getting advice from his lawyers

10    on an issue, and I think this is a document that we could

11    properly assert attorney-client privilege.  As to -- and I am

12    prepared to put Mr. Dunn on the stand to address the scope of

13    work and the scope of his legal relationship with Mr. Ellis.

14         **THE COURT:**  You --

15         **MR. SCOTT:**  I mean, if Mr. Dunn says on the record to

16    the Court that he did this, we'll do it as a snapback document

17    and we'll give the document back --

18         **THE COURT:**  Okay.

19         **MR. SCOTT:**  -- if this was under -- taken as

20    attorney.

21         **MR. DUNN:**  Your Honor, I've represented Senator Ellis

22    for more years than I've been able to count today.  I presented

23    him for his deposition in the Section 5 photo ID case.  I have

24    presented him for deposition in the redistricting cases.  And

25    he routinely contacts me on various legal matters, including

1  photo ID, redistricting, and virtually any kind of legislative

2  matter that might become -- that he might want legal advice on.

3          **MR. SCOTT:**  Good enough.  I've handed him back my

4  copy of the document, your Honor.

5          **THE COURT:**  All right, so that's agreed to.

6          **MR. SCOTT:**  Yes.  There are a load of other

7  documents.  Let us take another minute to go through --

8          **THE COURT:**  Okay.

9          **MR. SCOTT:**  -- these because they may resolve a lot

10  of -- they are very similar documents.  And as long --

11          **THE COURT:**  So that was Senator Ellis, right?  Just

12  those two.

13          **MR. SCOTT:**  Yes.

14          **MS. LONDON:**  We have completed Senator Ellis.

15          **THE COURT:**  Okay.

16          **MR. SCOTT:**  So Senator Zaffirini is the next set of

17  documents.  But with the guidance of how the Court has ruled on

18  that, is that -- I want to make sure that I'm not trying to do

19  the job of the Court for you --

20          **THE COURT:**  Okay.

21          **MR. SCOTT:**  -- but I want to try and simplify stuff

22  as much as possible to the extent that the Court is of the

23  opinion that there are documents of opponents who voted against

24  SB 14 are not going to be relevant in this matter.  I don't

25  want to go through --

1          THE COURT:  I --

2          MR. SCOTT:  -- every one of these documents with the

3    Court and looking --

4          THE COURT:  You know, I really -- I didn't think this

5    was, but I don't know what you have.

6          MR. SCOTT:  Okay.  Well then let's go --

7          THE COURT:  You know, I kind of think, yeah, you are

8    starting a little bit behind with -- if they were opponents of

9    the bill, but I don't know what's in there.

10          MR. SCOTT:  Okay.

11          THE COURT:  I don't know what the -- you know, I

12    can't just -- I don't think I can state generally at this point

13    -- Brandy, do you want to return those, that way you don't hold

14    onto them?

15      **(Mr. Scott/Ms. London confer)**

16          THE COURT:  Were you all going to discuss these

17    further, or ready?

18          MS. LONDON:  I believe we have an agreement on some

19    of these, so let me enter the agreement on the record and that

20    will help you cut this back substantially.  With regard to

21    Senator Zaffirini, we have agreed that the State will not use

22    Zaffirini 17, 21, 25, 28, 31, or 34.

23          MR. SCOTT:  That's correct.

24          THE COURT:  Okay.

25          MS. LONDON:  With regard to Zaffirini 75 through 105,

1    the State is withdrawing their intention to use those documents

2    as well.

3              **MR. SCOTT:**  That's correct.

4              **THE COURT:**  Okay.

5              **MS. LONDON:**  With regard to documents 116 to 113 --

6              **MR. SCOTT:**  Hundred and six.

7              **MS. LONDON:**  -- 106.

8              **THE COURT:**  Wait, 106?

9              **MS. LONDON:**  106 to --

10             **THE COURT:**  To?

11             **MS. LONDON:**  -- 113, the State withdraws their

12   intention to use those documents.

13             **MR. SCOTT:**  That's correct.

14             **MS. LONDON:**  With regard to documents 114 through

15   119, the State withdraws their intention to use those documents

16   as well.

17             **MR. SCOTT:**  That's correct.  Your Honor, the first

18   document -- for clarification on the record, on Ellis document

19   privilege RE-1171 and 1172, the Court found that that's a

20   legislative privilege document from production.  I was going to

21   get clarification if I could, please.

22             **THE COURT:**  I did, yes.

23             **MR. SCOTT:**  Okay.  And so the first document to tee

24   up is 120 to 121, your Honor.

25             **THE COURT:**  One -- I'm sorry, one what?

1          **MR. SCOTT:**  JZ-PRIV 120, 121.

2          **THE COURT:**  Okay.

3          **MS. LONDON:**  And 124 is a duplicate, so you ought to

4     put those three together.

5          **THE COURT:**  One-20, 121, and 124.

6          **MS. LONDON:**  And 124.

7          **THE COURT:**  Okay.

8          **MR. SCOTT:**  And it is a 2009 email between Senator

9     Zaffirini and a man named George Shipley.  Mr. Shipley is a

10    consultant who gives advice on public relations matters, and it

11    is correspondence on how to deal at least part in parcel in

12    this one on the issue of -- and I believe it's the first use of

13    the term, "It's a poll tax" (phonetic) on page 120.  Given that

14    it was an individual that's not a legislator or a member of the

15    legislative staff of Senator Zaffirini, we do not believe this

16    is -- or any other legislator, we do not believe this falls

17    within the legislative privilege.

18         **THE COURT:**  Okay.

19         **MS. LONDON:**  Judge, you can see that from Zaffirini

20    120, that Senator Zaffirini is communicating to George Shipley,

21    who's a consultant, asking for talking points.  And this is

22    part of her deliberative process where she is collecting

23    information to formulate her strategy, albeit a failed one, and

24    she -- that led her to vote against it.  The email from George

25    Shipley to her is -- you know, my legislative privilege

1    argument on the one hand is that she's collecting information,

2    this is someone she's consulting with, she's getting -- putting

3    together her documents and that is why this document turns out

4    in her file.  Setting the legislative privilege aside, we also

5    filed a motion for protective order because this is exactly the

6    kind of political search where you have somebody trying to

7    reach into the legislator's files to get political information

8    that is not going to play one -- make one bit of difference in

9    this lawsuit, but it has political benefit.  And they're trying

10   to get this discussion about Dohearst (phonetic) and the

11   craziness and the anti GOP stuff.  But none of that is relevant

12   to any issue in this lawsuit, and so we have the relevant issue

13   there, we have the hearsay objection and -- let me just stick

14   with the relevance objection because we're talking about a

15   protective order issue here.  And the legislative privilege, if

16   you believe the legislative privilege applies, then you get to

17   the five-factor analysis, and it has to be highly relevant, and

18   I don't think this is highly relevant to any issue that the

19   State intends to advance.

20        **THE COURT:**  Okay.  You want to address the relevance

21   issue?

22        **MR. SCOTT:**  Well, I don't -- I think it's the tense

23   (phonetic) of those issues.  We have no burden in this case.

24   The burden is on the party Plaintiffs in this case to prove

25   that those senator factors -- senate factors have been met

1  theoretically, and they have witnesses that they're going to

2  offer in this case to say how this was something that was

3  steamrolled over the party opponents, and the party opponents

4  did not have an opportunity to form any type of opposition to

5  it.  Clearly this shows that the parties were working.  And, in

6  fact, they have questioned each of the legislatures on bills as

7  far back to 2004 about what efforts they made and were

8  undertaken -- I'm sorry, 2005 forward.  This is yet another of

9  those situations where this is an ongoing political battle, and

10  it shows that the parties on both sides were exercising as --

11  everything at their disposal to come up and form --

12        **THE COURT:**  I was just going to say, is that in

13  dispute?  I mean, are these senators going to come say they

14  didn't do anything at all to try to oppose this?

15        **MR. SCOTT:**  I think that that is part and parcel --

16        **THE COURT:**  Well --

17        **MR. SCOTT:**  -- of the argument, that they've been

18  steamrolled by having an emergency order lifted.

19        **THE COURT:**  At this time, I'm holding that this

20  document is protected by the legislative privilege, and I will

21  not order it produced based on relevance.  Okay.

22        **MR. SCOTT:**  The next document is 127 to 148, your

23  Honor.

24        **THE COURT:**  Okay.

25        **(Mr. Scott/Ms. London confer)**

1          **MR. SCOTT:**  And a lot of this is, again, I think

2    interaction between Senator Zaffirini and George Shipley.  And

3    it's comments about talking points, again, collectively sets

4    out strategies that they -- and actually talks about

5    specifically SB 14.  A number of the talking points that

6    they've come up with are matters that they -- are common themes

7    in this case.  And specifically on page 136 of that document,

8    your Honor, and 137, these are their talking points.  These are

9    still the talking points of this lawsuit.  This is -- if you

10   wanted to look at a summary of the depositions that have been

11   taken in this case, those are the issues.  A lot of these

12   documents show that there was a preplanned and organized effort

13   with both the Department of Justice as well as with the

14   senators who opposed this legislation to orchestrate different

15   talking points, different amendments, different issues to try

16   and stop it which, again, is just part of the legislative

17   process.  I understand that.  But these are issues that they've

18   raised, and these issues counterbalance the materials that

19   they're presenting and say -- and I think with a bad light they

20   try and paint -- for instance, Colby Beuck, who is -- was

21   Senator Fraser's Chief of Staff, and paint that he -- I'm

22   sorry, Senator Harless's Chief of Staff at the passage of SB

23   14, and they paint the fact that he had talking points.  In

24   fact, that was one of the things that's up for the Court

25   tomorrow, I think on the other legislative documents is that

1    specific thing.  This is a counterbalance for that whole issue.

2         **THE COURT:**  But it's not relevant to the issue that -

3    - before the Court as to whether SB 14 violates the law, right?

4         **MR. SCOTT:**  Well, but it is relevant to the senate

5    factors, right?  From the senate factors to the extent -- we're

6    -- I'm trying to understand, I guess, a little more guidance in

7    this -- on this standpoint.  There is one set of facts that

8    have been developed by the Plaintiffs.  That is not the

9    complete story of the body, the legislative body.  I mean,

10   that's where the legislative privilege derives from.  The

11   public record was supposed to be what everybody looks to.  We

12   are not going to be deciding this case based upon the public

13   debate and the public record.  We're -- it looks like we're

14   getting down below that once we've gotten into the legislative

15   documents of all the proponents of the bill.  These are simply

16   the other side of that legislative body and the documents that

17   they also had going on underneath that was part of the process

18   by which the case -- I mean, by which SB 14 was ultimately

19   passed.

20        **THE COURT:**  Okay.

21        **MS. LONDON:**  I think the George Shipley documents,

22   it's a consultant that Senator Zaffirini relied on.  I think

23   the connection between this consultant and Zaffirini and

24   Zaffirini and the Democratic strategy is too attenuated to be

25   relevant.  And the fact that she collected this as part of her

1   deliberative process is something she's entitled to do.  And so

2   what I don't see Mr. Scott pointing to is any specific language

3   in any of this that is highly relevant to any issue that the

4   Court has to decide.  I mean, there's no question that

5   Zaffirini consulted with a variety of people, no question she

6   voted against it, no question that she took in a lot of

7   opinions.  But at the end of the day, it's not -- that's her

8   legislative privilege, and I don't see that there's something

9   highly relevant to anything that Mr. Scott needs to prove at

10  trial that is in these documents.

11          **THE COURT:**  All right, same ruling by the Court.  The

12  Court finds these documents are protected by the legislative

13  privilege and the Court's not going to order that they be

14  produced finding -- or based on a lack of relevance -- high

15  relevance, I guess I should say.  Okay.

16          **MR. SCOTT:**  Next is 149 to 154.  This is another set

17  of documents that specifically -- if I could incorporate for

18  the Court --

19          **THE COURT:**  And I'm sorry, 149 through what?

20          **MR. SCOTT:**  154.

21          **THE COURT:**  Okay.

22          **MS. LONDON:**  And my objection is attorney-client.

23  You can see it's from Ray Martinez, who's general counsel.

24          **MR. SCOTT:**  And so originally I think this was

25  asserted as a legislative privilege document.

1          **THE COURT:**  So if it's attorney-client privilege?

2          **MR. SCOTT:**  If it's attorney-client privilege, and

3     they're asserting that is, then I --

4          **THE COURT:**  Okay.

5          **MR. SCOTT:**  -- yield to it and take it off the table.

6          **THE COURT:**  All right.

7          **MS. LONDON:**  One-55 to 172 is again a consultant's

8     work.  Harold Cook was a consultant to many of the democratic

9     senators.  He wrote extensively about what he thought the

10    points were that the senators need to make and how they should

11    try and defeat the bill, and it's essentially the same

12    arguments as the George Shipley that we urged before.

13         **THE COURT:**  Yeah.  Anything different on that, Mr.

14    Scott?

15         **MR. SCOTT:**  Well, I think this also sets out --

16    here's an outside political commentator who is a big

17    commentator down in the Austin area on party politics and the

18    political matters.  Here is a commentary from him that all

19    members will vote against the voter ID bill.  I mean, this idea

20    that this is somehow something that was last minute again is --

21    the evidence doesn't support that.  Every bit of this document

22    and every bit of all these documents goes to the heart of the

23    fact that these party opponents had an opportunity to address

24    the issues, and it was all about politics.  It was a hundred

25    percent about politics.  And so this -- the talking points --

1   and I will go into a little more detail on a couple of the

2   other persons who are identified within this document -- but

3   they talk about people to bring out as experts in the case.  So

4   Mr. Chandler Badenson (phonetic) is identified on page 159 of

5   this document, on potential expert witnesses, backgrounds,

6   suggested questions.  Toby Moore (phonetic) is someone who

7   works for the Department of Justice and organized a number of

8   the experts in this case, is identified by Harold Cook as

9   someone in this 2009 memorandum as somebody to help organize

10   expert witnesses and suggested questions.  He is somebody who

11   has worked in concert with every one of these folks that are

12   coming in here to testify.  The Brennan Center is someone who

13   is a participant in this litigation, again, on page 159.  Mr.

14   Hebert and his fine history is identified in this document on

15   page 160.  Here's the question starting on page 161 for

16   purposes of the hearings that were held on voter ID.  Those

17   same hearings are the substance of the foundation for a number

18   of their experts who are here to testify in this case.  They've

19   been identified, they're part and parcel of their report,

20   they've been provided at least a portion of the picture; and,

21   again, we should be able to cross examine those folks on

22   documents we just now found out about.  And absent this Court

23   saying this document is not subject to a legislative privilege,

24   again, this is not a communication between legislators or their

25   staffs about pending litigation -- about pending legislation.

1    This is an outside political consultant lining up people to

2    help the opponents of the voter ID laws that were proposed.

3            **MS. LONDON:**  That -- the characterization of Harold

4    Cook, let me add this fact.  He was the Senate Caucus Director

5    for the Democrats, so he is staff in a sense.  And secondly, I

6    would defer to Mr. Dunn, but I do not believe that it is true

7    that there's any expert who has relied on or reviewed or seen

8    this document.  I think that is incorrect.

9            **MR. DUNN:**  These documents, that is a correct

10   statement.  None of the experts have seen these documents, and

11   they've only been produced and made --

12           **THE COURT:**  Same ruling, which is subject to the

13   legislative privilege and Court's not going to order it

14   produced based on relevance.

15           **MR. SCOTT:**  Your Honor, from the standpoint of -- for

16   just housekeeping matters, will this be something at least from

17   a -- doing the offer of proof as well to the different

18   witnesses that afternoon or that evening, we'll be able to go

19   ask them some questions on these documents under the sealed

20   process?

21           **THE COURT:**  I know that Defendants have brought up in

22   the past they're going to need to -- wanted to present some

23   evidence through an offer of proof.  And, I mean, I --

24           **MR. SCOTT:**  I think we're getting into that, right.

25           **THE COURT:**  That's going to be allowed, but I don't

1   know what you're going to --

2          **MR. SCOTT:**  Okay.

3          **THE COURT:**  You know, I don't know what you're going

4   to have.  That's what I was asking earlier when we were doing -

5   - talking about logistics, is what are we looking at in terms

6   of volume?

7          **MR. SCOTT:**  And this is one of those areas.  I didn't

8   know how the Court was going to rule on the legislative

9   privilege issue.  So the next set is 155 to 172; is that right?

10  Oh, it's now -- the last set is skipping over to Document 179,

11  your Honor.  And it goes through 183, although I see Mr.

12  Martinez's name on that, so this may not be a legislative

13  privilege.

14         **MS. LONDON:**  It's attorney-client.

15         **MR. SCOTT:**  And so if this is attorney-client, then I

16  take Ms. London's word for that and I'll hand it back to you as

17  well.

18         **THE COURT:**  Okay.

19         **MR. SCOTT:**  That is all that group of documents that

20  we worked our way through.

21         **MS. LONDON:**  And so this will help us to I think

22  narrow what we have left --

23         **THE COURT:**  Okay.

24         **MS. LONDON:**  -- which becomes a lot more manageable.

25  I think we made it halfway through the documents.  And so what

 1    I would request is that we be able to confer and finish

 2    tomorrow if there are any documents we can't reach agreement

 3    on.

 4              THE COURT:  That's fine.  What time do you all want

 5    to -- would you give this back to them, Brandy?  What time do

 6    you want to confer tomorrow with the Court -- or to meet --

 7    conference with the Court?

 8              MR. SCOTT:  You want to -- let's --

 9              MS. LONDON:  First thing in the morning?

10              MR. SCOTT:  Yeah, that's good.  You want to try and

11    get out early, I would think, so --

12              MS. LONDON:  I would like to --

13              MR. SCOTT:  Ten o'clock, 9:00 o'clock, 8:00 o'clock?

14              THE COURT:  Yeah, tomorrow we're good.  Ten o'clock

15    will be good.

16              MR. SCOTT:  Okay.

17              MS. LONDON:  We will work diligently --

18              THE COURT:  Okay.

19              MS. LONDON:  -- to narrow this down.

20              MR. SCOTT:  Thank you, your Honor.

21              THE COURT:  Now, I won't have the documents because

22    you all are taking them.  I don't know --

23              MR. SCOTT:  No, no.  I -- we'll be -- I'm here

24    through --

25              THE COURT:  Okay.  So you're --

1          **MR. SCOTT:**  -- the next 24 --

2          **THE COURT:**  -- going to be here in Court so --

3          **MR. SCOTT:**  Yes.  I'll have --

4          **THE COURT:** -- you'll have the documents?

5          **MR. SCOTT:**  -- the documents and I'll --

6          **THE COURT:**  Okay.

7          **MR. SCOTT:**  -- bringing those with us.

8          **THE COURT:**  But you're leaving, right?

9          **MS. LONDON:**  No, no.  I --

10          **THE COURT:**  Oh?

11          **MS. LONDON:**  -- am going to stay over.

12          **THE COURT:**  Okay.

13          **MS. LONDON:**  I'm just going to wear the same clothes,

14   but I will stay over because I appreciate --

15          **MR. SCOTT:**  I'm going to --

16          **MS. LONDON:**  -- appreciate the tight schedule

17   everyone's on.

18          **THE COURT:**  Okay, very good then.  We'll see you all

19   at 10:00.

20          **MR. DUNN:**  Your Honor, may I deal with one issue that

21   -- so there's no confusion here?  If -- my representation that

22   these experts haven't seen these documents is accurate.

23   They're in fact stamped "attorneys' eyes only."  And so we

24   wouldn't show them to the expert.  But if Mr. Scott's going to

25   be doing an offer of proof with the experts in the afternoon,

1    then we think it's only fair the experts see them in advance so

2    they can read them and develop whatever opinion they might

3    have.

4         **THE COURT:**  Okay.  If you're going to do that, let

5    them know.

6         **MR. SCOTT:**  And I -- realistically, I'm just going to

7    go through and say that, "You didn't get this, you didn't get

8    this, you didn't get this" --

9         **MS. LONDON:**  Well --

10        **MR. DUNN:**  Okay.

11        **MR. SCOTT:**  (indiscernible)

12        **MS. LONDON:**  -- Judge, this was a subpoena issue.

13   And if you have ruled there's a legislative privilege, then I

14   in theory have not turned them over to him and, therefore, he

15   can't use them.

16        **MR. SCOTT:**  From the standpoint of a record, absent

17   them being in the record, there's no way to establish for the

18   Court of Appeals what they've looked at and whether there is --

19        **THE COURT:**  I think what I have ruled -- those

20   specific documents probably have to be sealed with the Court,

21   what I've looked at and ruled on.  But I don't know about you

22   showing them to experts.  They can be in the record, sealed --

23        **MS. LONDON:**  Right.

24        **THE COURT:**  -- based on the Court's ruling just to

25   have the record for appeal.

1          **MR. SCOTT:**  And let me visit with my appellate guys

2    and see --

3          **THE COURT:**  Okay.  But you all --

4          **MR. SCOTT:**  -- what the best way to do that is.

5          **THE COURT:**  -- I didn't keep anything, so that's what

6    you had said you would provide in a sealed --

7          **MR. SCOTT:**  Yes.

8          **THE COURT:**  -- manner.

9          **MS. LONDON:**  And with that regard, the notebook that

10   I --

11         **THE COURT:**  You want it back?

12         **MS. LONDON:**  Yes, please.

13         **THE COURT:**  Okay.

14     **(Mr. Scott/Ms. London confer)**

15         **THE COURT:**  I don't have anything.  I've been

16   specifically giving everything back.  I don't want --

17         **MS. LONDON:**  Thank you.

18         **MR. SCOTT:**  The hot potato.

19         **THE COURT:**  -- anything.

20         **MS. LONDON:**  Okay.

21         **MR. DUNN:**  So, your Honor, we don't plan to be here,

22   Mr. Hebert and I, tomorrow.

23         **THE COURT:**  Okay.

24         **MR. HEBERT:**  May I follow up, your Honor.  This is

25   Gerry Hebert for the Veasey Plaintiffs.  In Mr. Scott's

34

1   representation that he's simply going to use the documents with

2   the potential experts and say -- I think the offer of proof

3   should simply be under seal --

4          THE COURT:  I know.  I think I just addressed that

5   and said I think it needs to be in the record under sealed what

6   I've addressed, but I don't think they would then be discussed

7   with witnesses.

8          MR. SCOTT:  And I'm going to visit with my appellate

9   guys and see what they think the best form to make sure we're

10  protected on appeal and that you all have got -- then we may

11  not even have to do the offer of proof.

12         THE COURT:  Yeah.  I mean, I think it has --

13         MR. HEBERT:  That's easy.

14         THE COURT:  -- in the record sealed --

15         MR. SCOTT:  Sure.

16         MR. HEBERT:  Yes.

17         THE COURT:  -- for appellate purposes, but I don't

18  think we go beyond that.  So, okay, anything else for today?

19         MR. SCOTT:  I think that's got it from the State's

20  standpoint.

21     (Judge/ERO confer)

22         THE COURT:  We didn't really discuss -- there was one

23  little portion you mentioned, but do we need to seal the

24  hearing?  There was one little comment made --

25         MR. SCOTT:  I read one thing out of it.

EXCEPTIONAL REPORTING SERVICES, INC

1          **THE COURT:**  -- read -- you read one little thing out

2    of that first sheet.  If you all want to seal that.

3          **MR. SCOTT:**  It's up to you.

4          **THE COURT:**  About the -- I don't know that we need to

5    seal the whole hearing because we were just really talking in

6    terms of numbers.

7          **MR. SCOTT:**  There's the exact quote.

8          **MR. DUNN:**  I think just the section that was quoted.

9    Perhaps if the transcript's ordered --

10         **MS. LONDON:**  Yeah.

11         **MR. DUNN:**  -- we'll -- we could be delivered, just

12   the attorneys, preliminary copy, we'll mark just that section.

13         **THE COURT:**  Yeah.  I guess we can seal that, right,

14   Genay?  Just that comment that was read.  But other than that,

15   we just referred to the exhibit number.

16         **MS. LONDON:**  Correct.

17         **THE COURT:**  Okay.  So that's what we'll do, ordered

18   sealed regarding that comment.

19         **MR. SCOTT:**  So from a clarification standpoint, if we

20   see stuff that is attorney-client -- from an attorney, my hunch

21   is if they represent to me, I think we can do that with a

22   simple offer to the Court, and that's going to be sufficient

23   from our standpoint.  But --

24         **THE COURT:**  I mean, if you're not going to ask for

25   the Court to --

1         **MR. SCOTT:**  Go through that.

2         **THE COURT:**  -- analyze whether it -- that privilege

3 applies --

4         **MR. SCOTT:**  Yes.

5         **THE COURT:**  -- or not, then --

6         **MR. SCOTT:**  Yes, okay.  So to the extent we see

7 something we don't think, we're still -- I didn't want to -- I

8 think we want to make sure we're correct.

9         **THE COURT:**  If you don't think it's attorney-client

10 privilege, you need to let the Court know --

11         **MR. SCOTT:**  Absolutely.

12         **THE COURT:**  -- so I can make a --

13         **MR. SCOTT:**  Absolutely.

14         **THE COURT:**  -- decision on that.  All right?

15         **MR. SCOTT:**  Yes.

16         **THE COURT:**  Okay.  So is that clear?

17         **MR. SCOTT:**  Yes.

18         **THE COURT:**  If there's nothing else, you're excused.

19         **MR. SCOTT:**  Thank you.

20         **(This proceeding was adjourned at 2:47 p.m.)**

21

22

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____                    _August 29, 2014_


TONI HUDSON, TRANSCRIBER