```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                      CORPUS CHRISTI DIVISION




MARC VEASEY, ET AL.,            )      CASE NO: 2:13-CV-00193
                                )
               Plaintiffs,      )              CIVIL
                                )
      vs.                       )        Corpus Christi, Texas
                                )
RICK PERRY, ET AL.,             )      Thursday, August 28, 2014
                                )      (10:00 a.m. to 10:26 a.m.)
               Defendants.      )      (10:26 a.m. to 10:44 a.m.)


                       STATUS CONFERENCE

                  (SEALED PORTION OMITTED)


           BEFORE THE HONORABLE NELVA GONZALES RAMOS,
                  UNITED STATES DISTRICT JUDGE




Appearances:            See Next Page

Court Recorder:         Genay Rogan

Clerk:                  Brandy Cortez

Transcriber:            Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

2

<u>APPEARANCES FOR</u>:

Plaintiffs:                    CHAD W. DUNN, ESQ.
                               Brazil and Dunn
                               4201 Cypress Creek Parkway, Suite 530
                               Houston, TX 77068

                               J. GERALD HEBERT, ESQ.
                               Attorney at Law
                               191 Somervelle Street #405
                               Alexandria, VA 22304

Mexican American              EZRA D. ROSENBERG, ESQ.
Legislative Caucus,           Dechert, LLP
et al.:                       902 Carnegie Center, Suite 500
                               Princeton, NJ 08540-6531

Texas League of Young         KELLY DUNBAR, ESQ.
Voters Education Fund:        DANIELLE CONLEY, ESQ.
                               Wilmer Cutler Pickering, et al.
                               1875 Pennsylvania Avenue, NW
                               Washington, DC 20006

State of Texas:               JOHN B. SCOTT, ESQ.
                               J. REED CLAY, JR., ESQ.
                               Office of the Attorney General
                               P. O. Box 12548
                               Austin, TX 78711

                               JENNIFER ROSCETTI, ESQ.
                               BEN DONNELL, ESQ.
                               STEPHEN TATUM, ESQ.

United States                 DANIEL J. FREEMAN, ESQ.
of America:                   ELIZABETH S. WESTFALL, ESQ.
                               U. S. Department of Justice
                               950 Pennsylvania Avenue, N.W.
                               NWB Room 7125
                               Washington, DC 20530

Oscar Ortiz, et al.:          MARINDA VAN DALEN, ESQ.
                               Texas Rio Grande Legal Aid
                               4920 North IH 35
                               Austin, TX 78751

Non-Party Senators and        ALICE LONDON, ESQ.
Representatives:

3

1      **Corpus Christi, Texas; Thursday, August 28, 2014; 10:00 a.m.**

2           **THE COURT:**  All right.  Good morning.

3           The Court calls Case Number 2-13-CV-193, *Veasey, et*

4    *al., versus Perry, et al.*

5           You had continued to discuss the matter of the

6    nonparty legislators' documents?

7           **MR. SCOTT:**  We have, your Honor.  And we've also,

8    thanks to Ms. London's herculean effort, which is greatly

9    appreciated by the State of Texas -- thank you very much on the

10   record -- we have been able to really narrow the scope of the

11   issues.  But I think we have a couple of clarifications from

12   yesterday's record to make sure that the record is correct.

13          **MS. LONDON:**  To make sure that the Bates number

14   issues are correct, I've prepared four exhibits.  And Exhibit

15   Number 1 contains the Bates numbers for the documents that were

16   produced on June 24th, 2014, by the nonparty senators, Ellis,

17   Hinojosa, Rodriguez, Uresti, Watson, Whitmire, West, and

18   Zaffirini, that were produced without an assertion of privilege

19   or objection.

20          And those Bates numbers are contained on Exhibit

21   Number 1.

22          Exhibit Number 2 is a letter from Mr. Scott to myself

23   with the Bates numbers that are from the privilege log of the

24   documents that were -- where a privilege was asserted, and it

25   represents a hundred percent of the documents and their Bates

4

1    number that contained the total universe of the privilege

2    documents.

3            And the -- what the Court should note is that the

4    privilege documents that are listed here, the Bates numbers

5    have the word "PRIV" on them.  And so a Rodney Ellis, for

6    example, privilege document would have "RE PRIV," and then the

7    number, which is to be distinguished from those on Exhibit

8    Number 1, which would just be Rodney Ellis, RE, and the number.

9            **THE COURT:**  Okay.

10           **MS. LONDON:**  And so Exhibit Number 2 is all of the

11   documents that were identified as privileged.

12           Pursuant to our argument of -- and Exhibit Number 2

13   reflects about 6,812 pages of documents that were -- privilege

14   was claimed.

15           Pursuant to our argument, the State identified the

16   documents out of the privilege log that they chose -- that they

17   intend to use, and that is contained on Exhibit Number 3, and

18   it is a two-page -- it's a double-sided document that reflects

19   about 800 pages that the State intends to use, and although the

20   Bates numbers are listed without the prefix "PRIV," we have an

21   agreement that it, in fact, refers to documents that are

22   privileged and should have the "PRIV."

23           And pursuant to the agreement, this is the total

24   universe of documents in Exhibit 3 that could be used at trial.

25           Exhibit Number 4, then, is a subset of documents that

5

1    were a subset of Exhibit 3 that are the documents that are

2    either being withdrawn for usage by the State or being

3    submitted to the Court to be ruled on.

4            And so this Exhibit Number 4 reflects a subset of

5    documents that, based on the Court's rulings or the fact that

6    the parties withdrew them, would be subtracted from Exhibit

7    Number 3.

8            And there are approximately 209 pages reflected on

9    Exhibit Number 4.

10           **MR. SCOTT:**  Your Honor, that is correct, except with

11   one minor alteration.  On Exhibit 4, included right now, though

12   I ask that it be scratched out is --

13           **MS. LONDON:**  Well, it -- that's (indiscernible)

14           **MR. SCOTT:**  -- one document.

15           **MS. LONDON:**  Yes.  Yes, that -- I would agree with

16   that.

17           **MR. SCOTT:**  And so I'm going to scratch that out.  Is

18   that okay?

19           **MS. LONDON:**  That is correct.

20           **THE COURT:**  So on Exhibit 4, it's documents -- the

21   200 pages or whatever -- it's documents that have been

22   withdrawn by the State, State is not interested in presenting

23   them anymore, and they're --

24           **MS. LONDON:**  Or they have been submitted to the Court

25   for a ruling.

1          **THE COURT:**  Right.  But for my purposes, the only

2  thing that's going to be placed in the record under seal is

3  what I've looked at, and ruled on, and said is not coming in.

4          **MS. LONDON:**  And that --

5          **MR. SCOTT:**  That's correct.

6          **THE COURT:**  Yes.  Okay.

7          **MS. LONDON:**  And I believe we will collaborate and

8  make sure we have an accurate group of documents to submit

9  under seal --

10          **THE COURT:**  Okay.

11          **MS. LONDON:**  -- that meet that --

12          **THE COURT:**  Okay.

13          **MS. LONDON:**  -- that requirement.

14          **THE COURT:**  Very good.

15          **MR. SCOTT:**  And so we're just going to do that

16  submission after we start trial --

17          **THE COURT:**  Right.

18          **MR. SCOTT:**  -- so that she's had an opportunity to

19  review those, and when you say we're ready to go, we'll --

20          **THE COURT:**  Okay.

21          **MR. SCOTT:**  -- make an offer of proof on those.

22          **THE COURT:**  That's all that's coming in is what I've

23  looked at and ruled on.

24          **MR. SCOTT:**  Yes, ma'am.

25          **THE COURT:**  Yes.

7

1            **MS. LONDON:**  Right.

2            **MR. SCOTT:**  Yes, ma'am.

3            **THE COURT:**  Okay.

4            **MS. LONDON:**  And on Exhibit Number 4, as Mr. Scott

5   indicated, we have just crossed out JZ PRIV 000234 to 278.

6   That is a document that is not withdrawn by the State or ruled

7   on by the Court.  We are putting it back into the 800 or so

8   pages that should be --

9            **MR. SCOTT:**  Usable.

10           **MS. LONDON:**  -- on the -- usable.  And that's

11  reflected on Exhibit Number --

12           **THE COURT:**  Okay.

13           **MS. LONDON:**  -- 4.  So --

14           **THE COURT:**  That -- and those --

15           **MS. LONDON:**  -- with Mr. Scott's --

16           **THE COURT:**  -- are agreed to?

17           **MS. LONDON:**  -- agreement, we'll submit these

18  exhibits to be admitted for this hearing.  And for the Court's

19  benefit, if we start underneath the crossed out line, that will

20  give you the list of documents that we're looking at today.

21           **THE COURT:**  Okay.

22           **MR. SCOTT:**  Which is (indiscernible).  And I'm going

23  to pass off to Mr. Tatum, your Honor.

24           **THE COURT:**  All right.  And you all -- is there,

25  like, a copy for me to look at of the -- these exhibits I need

8

1   to look at?

2          **MR. TATUM:**  Yes, your Honor.  Your Honor, if you'd

3   like, I can give you all of them that we're going to talk about

4   right here --

5          **MS. LONDON:**  And I --

6          **THE COURT:**  Sure.

7          **MR. TATUM:**  -- in one fell swoop.

8          **MS. LONDON:**  I need a copy as well.

9          **MR. TATUM:**  Yeah, I've got one for you as well.

10         **THE COURT:**  Okay.

11         **MS. LONDON:**  Okay.

12         **THE COURT:**  So this is the rest of the senators' --

13  let's see.  Which senators does the -- what you just presented

14  to me, is this the rest?  There were how many, six, that --

15         **MS. LONDON:**  There are one, two, three, four, five,

16  six, seven, eight, nine, ten, eleven more documents --

17         **THE COURT:**  Okay.

18         **MS. LONDON:**  -- and that would be the completion of

19  Zaffirini, Senator Watson, Uresti, and Whitmire.

20         **THE COURT:**  Okay.  So this Exhibit 4 is what we're

21  dealing with under the --

22         **MS. LONDON:**  Exactly.

23         **THE COURT:**  -- marked-out portion, so -- okay.  So

24  the first one, then, JZ Privilege 324 through 329, correct?

25         **MR. TATUM:**  Yes, your Honor.  And if I may, before we

1    go into these documents piecemeal, if I may make a quick

2    statement about what we'll be talking about here today?

3            Your Honor, as the Court has recognized, the motive

4    and intent of the Legislature that enacted SB 14 is the crux of

5    this case.  And, in short, the -- it's Defendants' position

6    that the motive and intent of the -- of those legislatures who

7    have -- legislators who opposed SB 14, which motive and intent

8    is evidenced in the documents we're talking about today, is no

9    less relevant than the motive and intent of those legislators

10   who supported and enacted --

11           **THE COURT:**  Okay.  And how is that?

12           **MR. TATUM:**  -- SB 14.

13           **THE COURT:**  What is the State's position on how that

14   is as relevant?

15           **MR. TATUM:**  Well, your Honor, first of all, the

16   reason that the legislators in question received subpoenas in

17   the first place was that, you know, each of them was directly

18   involved in both the creation and debate of SB 14.  In fact,

19   some senators proposed amendments that were eventually adopted

20   into the language of SB 14.  For instance, the substantially

21   similar language, I believe, was proposed by a democratic

22   legislator who eventually voted against the bill.

23           And, secondly, each of the legislators that received

24   subpoenas from us was identified by the Plaintiffs as a

25   potential witness with personal knowledge of SB 14 and the

1    motivations behind it.

2             And I believe that's telling that the Plaintiffs

3    themselves believed that these legislators had something to

4    offer in the way of the intent behind SB 14.

5             And if I may refer --

6             **THE COURT:**  But was it their intent or the intent of

7    those who passed it that they were going to be testifying

8    about?

9             **MR. TATUM:**  Defendants would argue that it's the

10   intent of the Legislature as a whole that produced SB 14.

11            And if I may, you know, a lot of the arguments --

12   I've kind of made a summation of the arguments that Defendants

13   have made in ECF Numbers 399 and 433.  Those were our Responses

14   to Plaintiffs' Motion to Quash these documents.

15            So for further detail about this, I would refer the

16   Court to those documents.

17            And, in short, as we're going to cover today when we

18   go over these documents, we believe that the -- you know, the

19   footprints of these legislators that we're talking about, you

20   know, they're all over this bill, just the same as the

21   legislators who voted for it.  And I think that's going to come

22   out as we go through these documents.

23            **THE COURT:**  Okay.  So we're looking at the first

24   bunch, 324 to 329, correct?

25            **MS. LONDON:**  That's correct.

1          **MR. TATUM:**  Yes, ma'am.  And for the record -- and

2    you can correct me if I'm wrong -- Documents JZ PRIV 0000234 to

3    278, per our agreement, that will not be -- that is not

4    something that we'll be seeking the Court's ruling on.  That

5    was previously listed, I believe, in material you might have

6    had yesterday, but we've talked about that one and agreed we're

7    not going to deal with that.

8          **THE COURT:**  I'm sorry.  Which numbers?

9          **MS. LONDON:**  It's the one that's crossed out on --

10         **THE COURT:**  Okay.  Yes.  Yes.

11         **MS. LONDON:**  -- Exhibit Number 4.

12         **THE COURT:**  Yes.  We've moved on to --

13         **MR. TATUM:**  Okay.

14         **THE COURT:**  -- 324 to 329, correct?

15         **MR. TATUM:**  Yes, ma'am.

16         **MS. LONDON:**  Judge, this document, 324, is a document

17   out of Judith Zaffirini's file.  And pertinent to what

18   Mr. Tatum has just told you, Judith Zaffirini has not been

19   identified as a witness who will testify in this trial either

20   by the Plaintiffs or the Defendants.  So she will not be

21   testifying.

22         This is out of her file.  It's dated March 10th,

23   2009, well before the enactment of Senate Bill 14.  It is a

24   document from Harold Cook, which, as we established yesterday,

25   was the director of the Senate Caucus.  And it reflects a

1    legislative, deliberative process that reflects Senator

2    Zaffirini's -- what she collected in order to make her choices

3    about how she was going to proceed in 2009.

4           I do not believe the State has established high

5    relevance to its case regarding the issues before the Court on

6    Senate Bill 14.  It does not mention, as Mr. Tatum just

7    articulated, any of the amendments or any of the involvement in

8    Senate Bill 14.  And it does not reflect on any of the motive

9    or intent related to the issues that are before the Court.

10          And on that basis, we would ask that this document --

11   the Protective Order be granted.

12          **THE COURT:**  All right.

13          **MR. TATUM:**  And, your Honor, this document was

14   created in relation to the iteration of SB 14 that immediately

15   preceded it.  This was created in 2009, and so it's the

16   Defendants' position that this document is direct evidence and

17   highly relevant evidence of the intent of those legislators who

18   opposed a voter ID bill of any kind.

19          Everything in here, you know, the -- on the first

20   page there, they reference a plan -- that's something that pops

21   up a lot -- a concrete plan or strategy that was developed to

22   oppose a voter ID law.  And, you know, that strategy -- if you

23   will picture a Newton's cradle, that strategy is directly

24   relevant to any strategy on the part of those who support SB

25   14.  They're related.  They interact with each other.

1           And so it's Defendants' position that this is direct

2     evidence, as those who oppose the bill, they're part of the

3     Legislature as one body who enacted SB 14, and this is a

4     strategy that we believe was probably evidence and probably

5     existent for -- during the enactment of SB 14.  And just

6     because it's not -- it didn't appear during the Legislature

7     that enacted SB 14 doesn't make it any less relevant.

8           **THE COURT:**  Okay.  Anything else?

9        **(No audible response)**

10          The Court finds the documents before the Court, those

11    324 through 329, is protected by the legislative privilege, and

12    the Court doesn't find it highly relevant to issues before the

13    Court, so the Court will grant the Protective Order.

14          Okay.  So we're 534 through 544?

15          **MR. TATUM:**  Yes, your Honor.

16          **MS. LONDON:**  Judge, this is a document that is an

17    e-mail from Ray Martinez, which is Judith Zaffirini's general

18    counsel, and as we discussed yesterday, makes it subject to the

19    attorney-client privilege.  And he is passing on a memo from

20    Harold Cook, which we've previously identified as the director

21    for the Senate Caucus.

22          And we would assert the attorney-client privilege and

23    the legislative privilege as to these documents, and we would

24    maintain that, with regard to the legislative privilege, the

25    State cannot establish any relevance to any issue before the

14

1    Court.

2         **THE COURT:**  Okay.

3         **MR. TATUM:**  And, your Honor, I'd first like to point

4    out that this document was not listed as covered by the

5    attorney-client privilege in the privilege log that was

6    provided to us.  It was only listed under a potential

7    legislative privilege.

8         I would also point out that this document was created

9    during the enactment -- or, I'm sorry -- just after the

10   enactment of SB 14.  And, again, it references a strategy, a

11   plan, which directly relates to the intent of the legislators

12   who opposed SB 14, which, in Defendants' eyes, is highly

13   relevant to the --

14        **THE COURT:**  Okay.  And I guess I'm still not clear

15   exactly what the State is saying as to how their plan, their

16   intent, is relevant to what's before the Court starting next

17   week in that trial.

18        **MR. TATUM:**  Yeah, well --

19        **THE COURT:**  I mean, just kind of -- spell it out for

20   me.

21        **MR. TATUM:**  Sure.  Again, the motive and intent

22   behind the enactment of SB 14 is --

23        **THE COURT:**  The enactment and the passing of that,

24   and this doesn't have to do with it being passed.  They were

25   opposed.

1          **MR. TATUM:**  Well --

2          **THE COURT:**  And the issue -- Texas is now before this

3   Court because they passed this SB 14.

4          **MR. TATUM:**  Yes, your --

5          **THE COURT:**  So --

6          **MR. TATUM:**  Yes, your Honor.  And --

7          **MR. CLAY:**  Your Honor, if I could make -- Reed Clay

8   for the State of Texas.

9          If I can make one point just to elaborate on what

10  Mr. Tatum had said?

11         What the Plaintiffs will want your Honor to do is

12  draw inferences from the actions of the people -- the

13  proponents of SB 14.  The -- those inferences will be that they

14  acted with a racist intent, but what these documents show are

15  another explanation and help shed light on what the proponents

16  of SB 14 were doing.

17         It -- when you're looking -- in order to explain what

18  -- to fully explain what the proponents of SB 14 were doing,

19  you have to see what they were reacting to and what they were

20  responding to.  These actions by opponents of SB 14 help

21  explain a different -- provide a different inference other than

22  the far-fetched inference that they were acting with a racial

23  or discriminatory intent.

24         And that's how they're relevant to explaining the

25  actions of the proponents of SB 14.

 1          **THE COURT:**  Okay.

 2          **MS. LONDON:**  And, Judge, if I can respond?

 3          That's a theoretical argument.  This document, JZ

 4  Privilege 00534, is a document that is dated 2011.  It is a

 5  document that is confidential, and it cannot shed any light on

 6  what the proponents of the bill were doing when they passed

 7  Senate Bill 14, because they would not have known about it, and

 8  it does not have to do with anything that happened.

 9          It has to -- it just doesn't shed any light on what

10  they would theoretically like it to shed light on.  They can't

11  point to any language in here that creates any information, nor

12  does it create any inference.

13          With regard to the procedural issue that Mr. Tatum

14  raised about the assertion of the attorney-client privilege, I

15  want to read into the record the agreement that brings us here

16  today.  Paragraph 6 of the agreement with the State says:

17          "The senators will have the right to assert the

18          legislative privilege and any other objection to the

19          use of the document at the time of pretrial of the

20          above-referenced cause."

21          And so we have -- we maintain the right to assert any

22  objection or privilege; and if nothing else, we would snap back

23  this document, because it is attorney-client privilege.

24          **THE COURT:**  I'm not going to pass on the attorney-

25  client privilege.  The Court is just going to find it is

1   protected, same as the other document, by the legislative

2   privilege.  The Court is going to grant the Protective Order

3   based on the relevance issue.

4        Okay.  So we're on to the next one, which is 545

5   through 555.

6        **MS. LONDON:**  Judge, this is an e-mail dated September

7   13th, 2011.  It is from Harold Cook to Sondra Haltom, and

8   yesterday we identified Sondra Haltom as a Texas Democratic

9   Party employee.

10        And this is a document that, you can see from the

11   heading at the top of the page, was in -- was received -- or is

12   in Judith Zaffirini's file, and her e-mail.  And, again, this

13   is part of her deliberative -- her legislative privilege per

14   her deliberative process, and it explains what she was doing in

15   making her decisions and her strategy.

16        And we assert the legislative privilege.

17        **THE COURT:**  Okay.

18        **MR. TATUM:**  And, again, your Honor, I would reference

19   language in this document that refers to a plan -- a

20   coordinated plan on the part of those who oppose SB 14,

21   particularly in quotes there, "everything but the kitchen sink,

22   objection letter, and reaction to the voter ID law."

23        Though that -- though this document was created after

24   the enactment and passage of SB 14, I think it's clear evidence

25   of the legislators who opposed it -- of their intent that

18

1    existed during that Legislature.

2           So for reasons already stated, Defendants believe

3    that this is a -- this is a highly relevant document, and would

4    ask that we be able to use it.

5           **THE COURT:**  Same ruling.  The Court finds it's

6    protected by the legislative privilege, and is going to grant

7    the Protective Order based on the relevance.

8           All right.  Next?  The list says, I believe, 745, but

9    I have two nine -- I have "KPW."

10          **MS. LONDON:**  JZ PRIV 000745, I believe, has been

11   withdrawn by the State.

12          **THE COURT:**  Okay.

13          **MS. LONDON:**  They do not intend to use that document.

14          **THE COURT:**  So we're moving on to 219 to 220 under

15   Watson?

16          **MR. TATUM:**  Yes, your Honor.

17          **THE COURT:**  Okay.  What is this?

18          **MS. LONDON:**  PRIV 000219 is an e-mail from Harold

19   Cook dated April 23rd, 2007.  It is to Celinda Provost, who is

20   Senator Watson's chief of staff.

21          And this is his advice regarding an approach they

22   might take to Senate Bill 1467 that was proposed by Janet back

23   in 2007.  And we would assert the legislative privilege and

24   suggest that it is not highly relevant.

25          **THE COURT:**  All right.

19

1          **MR. TATUM:**  Your Honor, this is from 2007.  It,

2   again, directly relates to a previous iteration of SB 14.  And

3   I think that emphasizes that the strategic plan held by those

4   who oppose a voter ID law was not created suddenly during the

5   enactment of SB 14.  It's something that has existed for years.

6   Obviously, it's something that proponents of SB 14 would have

7   known about and would have considered in their enactment of --

8   drafting and enactment of SB 14.

9          And for that reason, Defendants believe that this is

10  relevant to the Legislature as a whole's intent in enacting SB

11  14; and, therefore, believe it's highly relevant.

12         **THE COURT:**  Okay.  Same ruling.  The Court finds this

13  document is protected by the legislative privilege and will

14  grant the Protective Order based on the relevance.

15         Okay.  Then 242 through 243.

16         **MS. LONDON:**  Although KPW PRIV 00242 and 243 are

17  stapled together, I cannot represent to the Court necessarily

18  that they belong together, so let me address them separately.

19         PRIV 00242 is clearly a hard copy of an e-mail.  We

20  know it's a hard copy because it's got handwriting all over it.

21  And so it was in Senator Watson's file as a hard copy.  And it

22  is an e-mail that was in -- from -- part of it is from Steve

23  Scheibal to Harold Cook.

24         Steve Scheibal, for the record, is Kirk -- Senator

25  Watson's director of policy and communications, and so it is a

20

 1    staff communication.

 2            Harold Cook, within his e-mail, repeats an attorney's

 3    advice, Gerry Hebert, who the Court is familiar with.

 4            And so we are asserting a legislative privilege as to

 5    this document and attorney-client privilege as to the portion

 6    that refers to the advice given by Mr. Hebert.

 7            And, again, we suggest that it does not show

 8    relevance to any issue before the Court.

 9            **THE COURT:**  Okay.

10            **MR. TATUM:**  And, your Honor, this is a document, as

11    Ms. London said, it's a hard copy.  It was in a legislator's

12    file.  We don't know who made the notes on here, the

13    handwritten notes I'm referring to.  The source of those notes

14    is unclear, and yet the Plaintiffs would still like to withhold

15    this document under legislative privilege.

16            And I think I've covered all the reasons why we think

17    this is highly relevant as it pertains to the motive and intent

18    of SB 14.

19            Regarding the attorney-client privilege, with regard

20    to the e-mail there between Harold Cook and Steve Scheibal, the

21    -- I believe the attorney-client privilege is being asserted

22    based on a communication between Mr. Cook and Mr. Hebert, who's

23    referenced in that e-mail, but this is not a communication

24    between those two parties.  It is simply an e-mail from

25    Mr. Cook --

1        **(Sealed portion omitted from 10:26:35 to 10:26:55 a.m.)**

2        **MR. TATUM:**  -- you know, that -- in our view, this is

3  not a communication protected by the attorney-client privilege,

4  because that privilege was effectively pierced when Mr. Cook

5  communicated this content to Mr. Scheibal, who is not a party

6  to the original communication that's referenced there.

7        So we would argue that that e-mail is not protected

8  by the attorney-client privilege; and, furthermore, that this

9  document as a whole should not be protected by the legislative

10  privilege, given a number of problems with it, including the

11  fact that the source of the handwritten notes on there is

12  unclear.

13        **THE COURT:**  The Court finds that it's protected by

14  the legislative privilege and grants a Protective Order.

15        **MS. LONDON:**  And to the extent that Mr. Tatum has

16  read a portion of the e-mail into the record, we would ask that

17  that portion be sealed.

18        **THE COURT:**  All right.  Court orders it sealed.

19        Genay, are you -- are you clear on what needs to be

20  sealed?

21        **COURT RECORDER:**  Yes.

22        **THE COURT:**  Okay.  And we need to address 243?

23  There's another one stapled to it as 533.

24        **MS. LONDON:**  That should not be stapled --

25        **THE COURT:**  Separate, okay.

1          **MS. LONDON:**  That's a separate (indiscernible), so --

2          **MR. TATUM:**  Yeah, that's the next one, your Honor.

3          **THE COURT:**  So 243?

4          **MR. TATUM:**  Yeah.

5          **THE COURT:**  It's --

6          **MS. LONDON:**  This is a document that I can represent

7    to the Court clearly came from Senator Watson's files.  It is

8    clearly something in his file that reflects someone -- and it

9    may be -- it may be a continuation of the e-mail.

10         And so because the nature of it, we would assert the

11   legislative privilege, because it's in his file, it's part of

12   his work product, and clearly has no relevance to any issue

13   before the Court.

14         **THE COURT:**  So we don't really even know who, or

15   what, or what this is?

16         **MS. LONDON:**  We don't even know if it's related to

17   voter ID.

18         **MR. SCOTT:**  It sounds like it was something in the

19   legislator's file, so we're kind of -- that's -- it's an

20   authorization problem, obviously, that we're going to run into

21   on this document.  I don't --

22         **THE COURT:**  Yeah, I --

23         **MR. SCOTT:**  I think legislators end up with stuff in

24   their file and they don't know how it gets there.

25         **THE COURT:**  Anyway, go ahead.  Just go ahead if you

1   -- I'm just not sure -- I can't really figure out if that would

2   be protected by legislative history with the limit -- I mean --

3   you know, I keep wanting to say "legislative history" --

4   legislative privilege with the limited information before me.

5   I --

6            **MR. TATUM:**  And --

7            **THE COURT:**  -- don't know who, what --

8            **MR. TATUM:**  And I -- and --

9            **THE COURT:**  -- to see if it fits within the

10  parameters of the privilege.

11           **MR. TATUM:**   And I don't think that this document is a

12  continuation of the previous one.  I mean, obviously, it's up

13  in the air.  This document is just kind of hanging there,

14  but --

15           **THE COURT:**  Yeah, I don't think there's enough

16  information for the Court to make a finding that it's protected

17  by the legislative privilege.  You know, I'm not sure how

18  you're going to bring this in, because what is it?

19           But --

20           **MS. LONDON:**   In which case, then, my right to make

21  other objections, I would say this is not -- the subpoena

22  doesn't cover it, to the extent that it asks for documents that

23  pertain to voter ID.

24           And this document, although it may have been

25  physically in a file that says "voter ID," there's nothing that

1    really connects it to any of the voter ID legislation, and the

2    subpoena should not --

3              **THE COURT:**  I --

4              **MS. LONDON:**  -- reach to this document.

5              **THE COURT:**  I think what I'd like to do at this point

6    -- I don't find it's protected by the legislative history.

7              I say we keep it sealed.  When you -- when the

8    Defense wants to present it, I can deal with it then.  I don't

9    know if we could get you --

10             **MS. LONDON:**  The --

11             **THE COURT:**  -- on the phone at that point, or --

12             **MS. LONDON:**  That would be fine.

13             **THE COURT:**  I just don't know how it's going to fit

14   into the picture and what is going to happen.  But we'll keep

15   it sealed at this point.

16             **MR. SCOTT:**  Well, and for the record, your Honor, if

17   they're not going to be able to authenticate that, that goes to

18   the heart of being able to get it introduced.  I don't know how

19   we're going to get it --

20             **THE COURT:**  Well, I know.

21             **MR. SCOTT:**  -- authenticated --

22             **THE COURT:**  That's what I'm saying.  I don't know if

23   it's actually even going to come in initially for the Court,

24   but that's why I want to keep it sealed.

25             **MR. SCOTT:**  Okay.

1          **THE COURT:**  I don't think it's protected by the

2    legislative privilege, but I'm just a little concerned.  So I'd

3    prefer to keep it sealed.

4          **MR. SCOTT:**  Okay.

5          **THE COURT:**  And if the State is going to use it, we

6    can address that again.

7          **MS. LONDON:**  That gets us to KPW PRIV 000533, and

8    this is a March 6th, 2009, e-mail from Harold Cook to the

9    various staff members.  Steve Scheibal is Senator Watson's

10   communications and policy director.  And Harold Cook is simply

11   giving advice about a sign that the senators might post on

12   their committee walls, and giving them advice as part of their

13   legislative strategy.

14          So I assert the legislative privilege and suggest

15   that the State cannot meet a relevance to any issue before the

16   Court.

17          **THE COURT:**  Okay.

18          **MR. TATUM:**  Your Honor, to the extent that the

19   Legislature is not one body -- it would be that there's a

20   Senate and there's a House -- this document, again, produced in

21   relation to a previous iteration of SB 14 specifically

22   reference a message that the senators have been harping on;

23   that being, that the Senate has better things to do than voter

24   ID.

25          And I think that's clearly evidence of an intention

1    of the Senate as a whole, not necessarily those who support or

2    oppose SB 14.

3            And for that and other reasons that have already been

4    articulated, the State believes this is a highly relevant

5    document to the motive and intent behind the Legislature that

6    enacted SB 14.

7            **MS. LONDON:**  I guess it goes without saying all the

8    Harold Cook documents, although he gave advice, there is never

9    any indication in these documents that anybody took his advice;

10   and as advice given, it has no relevance unless somebody

11   actually did something.

12           **THE COURT:**  And the Court finds 533 of the Watson --

13   the Watson Document 533 is protected by the legislative

14   privilege and is going to grant the Protective Order.

15           Okay.  So we're onto Uresti --

16           **MR. TATUM:**  Yes, your Honor.

17           **THE COURT:**  -- 32.  Okay.  What is that?

18           **MR. TATUM:**  And by point of reference, your Honor, I

19   believe Senator Uresti has been designated to testify in this

20   case through Section 5 deposition testimony.

21           **THE COURT:**  Okay.  So what is this one?

22           **MS. LONDON:**  CU PRIV 00032 is an e-mail from Sondra

23   Haltom, who we've identified as a Texas Democratic Party

24   person, to Harold Cook.  And it has a CC to the staff members

25   of various senators.  Jason Hassay, for the record, is chief of

1   staff for Senator Uresti.  And you can see from the top that

2   he's printed out this e-mail as -- as within the purview of the

3   subpoena that was issued.

4          And, essentially, this is a document that was

5   considered by Senator Uresti's staff as part of their privilege

6   -- as part of their deliberative process, and as such we would

7   assert the legislative privilege and say that they cannot

8   establish any relevance of Ms. Haltom's opinion to any issue in

9   this case.

10          THE COURT:  Okay.

11          MR. TATUM:  And, your Honor, the State would respond

12  that, though this -- though this document was created after the

13  enactment of SB 14 and its passage, it allows for inferences

14  related to the intent of those legislators who opposed SB 14

15  during its consideration.

16          And, again, for reasons already articulated, we

17  believe that's highly relevant to this case.

18          THE COURT:  Okay.  The Court finds this document is

19  protected by the legislative privilege and is going to grant

20  the Protective Order.

21          So we're on to --

22          MS. LONDON:  The next document is CU PRIV 000154.

23  And this is an e-mail dated January 24th, 2011, from Brandon

24  Dudley, who is legal counsel for Senator Ellis, and he is

25  giving his opinion and his advice to the democratic staff

1    members for the democratic senators.  And this was part of what

2    went into their thought process and their legislative strategy,

3    and we assert the legislative privilege.

4              THE COURT:  All right.  Anything else?

5              MR. TATUM:  Your Honor, the State believes that this

6    document is particularly relevant, especially given that it was

7    created at the beginning of the consideration of SB 14 during

8    2011.

9              It also references specific amendments being

10   considered -- excuse me -- by Senator Ellis, amendments that

11   I'd referred to previously, showing that, you know, the

12   legislative process that creates any bill is a complex and

13   intertwined matter.

14             And for that reason, the intents of legislators who

15   oppose SB 14 is no less relevant than those who support it.

16             So, for that reason, the State believes this document

17   is highly relevant.

18             THE COURT:  The Court finds the documents is

19   protected by the legislative privilege and is going to grant

20   the Protective Order on 154.

21             MS. LONDON:  The next document, CU PRIV 000188, is a

22   duplicate --

23             THE COURT:  Yeah.

24             MS. LONDON:  -- on the first part.  In other words,

25   if you look at the bottom --

1        **THE COURT:**  Uh-huh.

2        **MS. LONDON:**  -- of the previous document, the e-mail

3  from Harold Cook to the Senate staff, it's the same -- same

4  e-mail at the top of 188.

5        **THE COURT:**  Yeah, I've just read the rest of it.  The

6  Court is going to also hold that that's protected by the

7  legislative privilege and grant the Protective Order.

8        So we are down to Whitmire?

9        **MS. LONDON:**  That is correct.

10       **THE COURT:**  Okay.  What is -- and I have all that

11  stapled together?

12       **MS. LONDON:**  It is one document.

13       **THE COURT:**  It's kind of one we've already seen,

14  correct, or no -- or looks --

15       **MS. LONDON:**  It is.  I believe it is.  It's the same

16  as Zaffirini 545, 555.

17       **THE COURT:**  Okay.  So same thing, appears to be.

18  Same ruling, then, protected by the privilege and Protective

19  Order is granted.

20       And that is all I have.  So I'm going to return what

21  you gave to the Court to review.

22       **MS. LONDON:**  And, Judge, the final agreement I have

23  with the State is they have agreed that if any of these

24  legislative privilege or any of the discovery issues are

25  appealed, that they will provide me notice of the appeal.

1        **MR. SCOTT:**  That's correct.  And we're also on the

2    record -- and I think we said this at the front end -- we're

3    going to submit -- before we submit our offer of proof on these

4    documents to the Court, which the Court will place under seal,

5    is our understanding --

6          **THE COURT:**  Yes.

7          **MR. SCOTT:**  -- we'll submit those to Ms. London for

8    her review and approval before we do so.

9          **THE COURT:**  Uh-huh.

10         **MR. SCOTT:**  The last thing -- I just want to make

11    sure, the documents in the two universes of Exhibits 3 and I

12    think 4 --

13         **THE COURT:**  And I'm going to admit those exhibits, if

14    I didn't.  I have them here, 1, 2, 3, and 4, for the --

15         **MR. SCOTT:**  So the --

16         **THE COURT:**  -- for the purposes of this hearing.

17      **(Exhibits Numbers 1, 2, 3, and 4 were received in**

18    **evidence)**

19         **MR. SCOTT:**  May I take a quick --

20         **THE COURT:**  Yes.

21         **MR. SCOTT:**  -- quick peak at -- and, your Honor, the

22    documents that the Court has not ruled on that are contained on

23    Exhibit 3, it is my understanding that counsel for the senators

24    is going to execute a declaration depending upon which offices

25    it is will have those executed to prove those documents up for

31

1    purposes of the business records for authentication.

2            They have not otherwise been ruled upon here.

3            **MS. LONDON:**  The agreement provides that we will

4    authenticate to the extent possible.

5            **MR. SCOTT:**  Yeah.

6            **MS. LONDON:**  Paragraph 7 of our agreement says that

7    the senators or the appropriate person from the senator's staff

8    will authenticate the document to the extent possible.

9            We will abide by that agreement.

10           **MR. SCOTT:**  Well, and I -- that's correct.  And we

11   just -- there were some other documents that were produced that

12   were not subject to -- no assertions of privileges, and there

13   were no agreements to the limitation of those documents.

14           And I just want to make sure that was true on the

15   record?

16           **MS. LONDON:**  That's Exhibit Number 1 --

17           **MR. SCOTT:**  Yes.

18           **MS. LONDON:**  -- are the documents produced --

19           **THE COURT:**  Okay.

20           **MS. LONDON:**  -- without objection --

21           **THE COURT:**  You all have --

22           **MS. LONDON:**  -- or privilege.

23           **THE COURT:**  -- copies of these exhibits?

24           **MS. LONDON:**  Yes, I have --

25           **THE COURT:**  Or do you need --

32

```
 1              MS. LONDON:  I have provided that --

 2              THE COURT:  Do you have a copy?  Okay.

 3              MS. LONDON:  I have provided that to Mr. Scott.

 4              THE COURT:  Okay.  So are we finished with this

 5   matter, then?  Okay.

 6              MR. SCOTT:  Yes, ma'am.

 7              THE COURT:  Thank you.  You're excused.

 8              MR. SCOTT:  There is one other thing that doesn't

 9   have to do with that issue, but there is --

10              THE COURT:  Okay.  The only thing is I don't know if

11   we have a Plaintiff here.

12              MR. SCOTT:  Oh, that's right.  We don't.

13              THE COURT:  But we can get somebody --

14              MR. SCOTT:  This is even better.

15              THE COURT:  -- on the line.

16              MR. SCOTT:  This is perfect.

17              THE COURT:  And --

18              THE CLERK:  Mr. Dunn, are you still present on the

19   line?

20              THE COURT:  Ms. London, you --

21              MR. DUNN:  Yes.

22              THE COURT:  Oh, okay.

23              MR. DUNN:  Yes, I am.

24              THE COURT:  Who is?

25              THE CLERK:  Mr. Dunn is on the line.
```

33

1          THE COURT:  Mr. Dunn, all right.

2          THE CLERK:  Mr. Dunn.

3          THE COURT:  Very good, then.  Go ahead.

4          MR. SCOTT:  Your Honor, there are some -- there's

5    some documents that are in the custody of the Secretary of

6    State's Office that they received from different counties,

7    where someone identifies themself as a non-U.S. citizen that

8    has registered to vote.  There is a process by which they can

9    identify themselves to the local counties.

10          That information is then sent to the Secretary of

11   State's Office on a, I think, a monthly basis, or as -- ad hoc

12   basis, once they -- those persons are identified.

13          We do not want to -- during the course of the trial,

14   that information may be attempted to be used on some of the

15   cross-examination of the witnesses.  It's thousands of people.

16   It should be confidential.  And I don't want to throw somebody

17   unnecessarily out there.

18          Is there -- is that something that the Court

19   envisions would be covered under the Protective Order?  Is

20   there a process by which we can redact the names of any

21   individuals?

22          THE COURT:  Have you --

23          MR. SCOTT:  House --

24          THE COURT:  You all haven't talked about this yet

25   with --

34

1    **MR. SCOTT:**  I have not visited with --

2    **THE COURT:**  Mr. Dunn, do you --

3    **MR. SCOTT:**  -- the other side.

4    **THE COURT:**  -- do you see an issue with --

5    **MR. DUNN:**  We have not talked about it yet.  No, I

6    don't see an issue with --

7    **THE COURT:**  Yeah.

8    **MR. SCOTT:**  Okay.

9    **MR. DUNN:**  I think we just need to talk to the State

10   about this, but I'm sure we can work out an arrangement.

11   **MR. SCOTT:**  Okay.

12   **THE COURT:**  Okay.  Why don't you all visit?  I -- it

13   doesn't sound like that should be a problem, doing what we need

14   to do to --

15   **MR. SCOTT:**  Thank you, your Honor.

16   **THE COURT:**  -- protect that.  Okay.  So --

17   **MR. SCOTT:**  That's part of --

18   **THE COURT:**  And we're going to be on at 1:30, right,

19   to address some other matters?

20   **MR. SCOTT:**  I believe that's with Mr. D'Andrea and

21   Mr. Freeman.

22   **THE COURT:**  Okay.

23   **MR. SCOTT:**  Thank you, your Honor.

24   **THE COURT:**  Thank you.

25   **MR. TATUM:**  Thank you.

1           **COURT REPORTER:**  Can I ask you to just get --

2           **THE COURT:**  Hold on one second.  Do you need

3    something, Genay?

4           **COURT REPORTER:**  Yes, a clarification on the

5    transcript of the sealed portion.  I have multiple parties --

6           **THE COURT:**  You can ask them.

7           **COURT REPORTER:**  I have multiple parties ordering the

8    transcript from yesterday and then today's hearing.  The sealed

9    portion, we can't -- do you want it filed under seal and then

10   included in the transcripts in the ordering party, or do you

11   want it left out of the transcript completely, the sealed

12   portion?

13          **MR. SCOTT:**  I'm agreeable to whatever Ms. London --

14          **MS. LONDON:**  I would like it left out of the

15   transcript.

16          **COURT REPORTER:**  Okay.

17          **MR. SCOTT:**  We're in agreement with that.

18          **THE COURT:**  So will the transcript reflect that we

19   have sealed something --

20          **COURT REPORTER:**  Sealed a portion --

21          **THE COURT:**  A portion of it?  Yeah.

22          **COURT REPORTER:**  Yes, it will get to that part and it

23   will say "sealed portion," and then we'll just leave it out,

24   and it will not be filed under seal --

25          **MR. SCOTT:**  If that's --

36

1          COURT REPORTER:  Okay.

2          THE COURT:  Thank you.

3          MR. SCOTT:  If that's her request, that's --

4          MS. LONDON:  Perfect.

5          MR. SCOTT:  -- we're perfect to join it.

6          COURT REPORTER:  Thank you.

7          THE COURT:  All right.

8          MS. LONDON:  Thank you.

9          MR. SCOTT:  Thank you.

10          THE COURT:  Mr. Donnell?

11          MR. DONNELL:  Your Honor, I have a problem unique to

12    me.  This is the best place in the courtroom to listen.  Do you

13    have any objections if I sit there from time to time?

14          THE COURT:  It shouldn't be a problem.  I've got a

15    couple of clerks that are probably going to be sitting right in

16    here.  We may pull out a couple of those chairs and put little

17    tables there.  We're trying to figure out what we're going to

18    do.

19          It shouldn't be a problem at all --

20          MR. DONNELL:  Well, I --

21          THE COURT:  -- but let me kind of figure out how

22    we're going to set up here.

23          MR. DONNELL:  You could --

24          THE COURT:  So --

25          MR. DONNELL:  You could hear --

(This proceeding was adjourned at 10:44 a.m.)


CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____          August 29, 2014_


TONI HUDSON, TRANSCRIBER