UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


MARC VEASEY, ET AL.,           )       CASE NO: 2:13-CV-00193
                               )
            Plaintiffs,        )              CIVIL
                               )
     vs.                       )       Corpus Christi, Texas
                               )
RICK PERRY, ET AL.,            )       Thursday, August 28, 2014
                               )       (1:29 p.m. to 1:50 p.m.)
_____Defendants.___)


MOTION HEARING


BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE



Appearances:                  See Next Page

Court Recorder:               Genay Rogan

Clerk:                        Brandy Cortez

Transcriber:                  Exceptional Reporting Services, Inc.
                              P.O. Box 18668
                              Corpus Christi, TX 78480-8668
                              361 949-2988



Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES FOR:</u>

Plaintiffs:                     CHAD W. DUNN, ESQ.
                                Brazil and Dunn
                                4201 Cypress Creek Parkway, Suite 530
                                Houston, TX 77068

                                J. GERALD HEBERT, ESQ.
                                Attorney at Law
                                191 Somervelle Street #405
                                Alexandria, VA 22304

                                EMMA SIMSON, ESQ.

Mexican American               EZRA D. ROSENBERG, ESQ.
Legislative Caucus,            Dechert, LLP
et al.:                        902 Carnegie Center, Suite 500
                                Princeton, NJ 08540-6531

Texas League of Young          KELLY DUNBAR, ESQ.
Voters Education Fund:          DANIELLE CONLEY, ESQ.
                                Wilmer Cutler Pickering, et al.
                                1875 Pennsylvania Avenue, NW
                                Washington, DC 20006

                                NATASHA KORGAONKAR, ESQ.
                                RYAN HAYGOOD, ESQ.
                                NAACP Legal Defendant and Educational
                                Funds, Inc.
                                40 Rector Street
                                5th Floor
                                New York, NY 10006

State of Texas:                BEN DONNELL, ESQ.
                                RODNEY KEISTER, ESQ.

United States                  DANIEL J. FREEMAN, ESQ.
of America:                    U. S. Department of Justice
                                950 Pennsylvania Avenue, N.W.
                                NWB Room 7125
                                Washington, DC 20530

Oscar Ortiz, et al.:           MARINDA VAN DALEN, ESQ.
                                Texas Rio Grande Legal Aid
                                4920 North IH 35
                                Austin, TX 78751

Non-Party Senators and         ARTHUR D'ANDREA, ESQ.
Representatives:

| | |
|---|---|
| 1 | **Corpus Christi, Texas; Thursday, August 28, 2014; 1:29 p.m.** |
| 2 | **(Call to Order)** |
| 3 | **THE COURT:**  Okay.  Court calls Cause Number 2:13-193, |
| 4 | *Veasey, et al versus Perry, et al.* |
| 5 | Who's on the phone, Brandy? |
| 6 | **THE CLERK:**  Your Honor, I took roll for you. |
| 7 | **THE COURT:**  Okay. |
| 8 | **THE CLERK:**  So -- |
| 9 | **THE COURT:**  Yes. |
| 10 | **THE CLERK:**  Yes -- we have Chad Dunn and Emma Simson |
| 11 | and Gerry Hebert for League of United Latin American.  For the |
| 12 | United States, it's Daniel Freeman.  For Mexican American |
| 13 | Legislative Caucus, we have Ezra Rosenberg.  For Ortiz, Marinda |
| 14 | Van Dalen.  For Texas League of Young Voters, we have |
| 15 | Mr. Haygood, Ms. Korgaonkar, Ms. Dunbar and Ms. Conley.  And |
| 16 | then the State of Texas, we have Ben Donnell in the courtroom |
| 17 | and Rodney Keister and I believe that's it. |
| 18 | **THE COURT:**  And Mr. D'Andrea -- |
| 19 | **THE CLERK:**  Yes. |
| 20 | **THE COURT:**  -- in the courtroom. |
| 21 | Okay.  I think we're here to follow up on a couple of |
| 22 | matters from yesterday -- well, I guess in particular, the |
| 23 | joint motion to unseal the documents and the testimony.  So |
| 24 | where are we on that?  Mr. Freeman? |
| 25 | **MR. FREEMAN:**  Thank you, your Honor.  Mr. D'Andrea, |

1    on behalf of the legislators, and I have spoken extensively and

2    we think that we have -- I don't want to speak for him.  So

3    please correct me if I'm speaking incorrectly but I think that

4    we arrived at a procedure that will allow us to resolve this

5    without going through every one of the documents with your

6    Honor but it will require some review.

7          Essentially, my understanding is the legislators are

8    unwilling to consent to unseal any of the documents but if your

9    Honor is going to review a few documents, Mr. D'Andrea and I

10   will again and see if we can agree that a number of the

11   documents are distinguishable and thus resolve either that they

12   will be unsealed or will not be unsealed based on your Honor's

13   rulings.

14         And then if there's any additional cleanup after

15   that, we would have to go back to the Court but because the

16   legislators are unwilling -- or unable to consent without a

17   ruling on any of their documents, we do need to go through a

18   few of the documents with your Honor this afternoon if your

19   Honor is willing to do that.

20         **THE COURT:**  Okay.  Mr. D'Andrea, is that correct?

21         **MR. D'ANDREA:**  Yes, your Honor, that is correct.  I

22   think -- I reviewed each of them in detail.  I think that with

23   the exception of possibly two categories, they are all the same

24   in my view and will -- should rise and fall together based on

25   what --

1          **THE COURT:**  Well, it's -- because I received here

2    this advisory regarding the Plaintiffs' joint motion to unseal

3    and there was -- a few of the exhibits were set out that -- is

4    that what we're going to discuss right now with the Court?

5          **MR. FREEMAN:**  That's the proposal that the United

6    States put forward --

7          **THE COURT:**  Okay.

8          **MR. FREEMAN:**  -- as a procedure that's

9    (indiscernible) at least move the ball forward.

10          **MR. D'ANDREA:**  And that's fine with me, your Honor.

11          **THE COURT:**  Okay.

12          **MR. KEISTER:**  Your Honor, if I may just make a

13    statement.  I'm Rodney Keister here for the Defendants and I

14    would just like to reiterate the statements Mr. Scott made

15    yesterday.  We're not here, of course, on behalf of the

16    legislators.  We're here on behalf of the Defendants.  And it's

17    our position, your Honor, that if the Court is going to unseal

18    any of the documents, the Court should unseal all the documents

19    because --

20          **THE COURT:**  Well, and I've been looking at them in

21    terms of relevance --

22          **MR. KEISTER:**  Yes, your Honor.

23          **THE COURT:**  -- that, you know, after I find if

24    they're protected by the privilege, then I think that's what we

25    did this morning --

6

1          **MR. KEISTER:**  Okay.

2          **THE COURT:**  **--** but we'll look at I think what was set

3     forth for the Court -- I mean, I just filed that earlier.  I

4     did get to look through some of it but not all of it.  So we're

5     just going to take up each exhibit one at a time.  Is that the

6     intention?  And you-all have already done --

7          **MR. FREEMAN:**  That would --

8          **THE COURT:**  I'm sorry?  Mr. Freeman?

9          **MR. FREEMAN:**  Oh, I was just going to say that would

10    be wonderful for the United States, your Honor.

11         **THE COURT:**  Okay.  Then I'm looking at Exhibit 3

12    which set forth in the advisory looks like it's some talking

13    points.

14         **MR. FREEMAN:**  Yes, your Honor.  And Exhibit 3 are the

15    talking points that have to do with the prior aeration

16    (phonetic) of Texas' voter ID requirements prior to SB14 and

17    the reason that this document is highly probative is that it

18    sets out that some of the provisions in SB14 made certain that

19    there would be less of a chance of disenfranchising elderly,

20    poor or minority voters and that Texas turned around in the

21    next iteration and removed those protective provisions,

22    notwithstanding the fact that this document establishes that it

23    was aware that there would be a chance of disenfranchising

24    elderly, poor or minority voters if those protective provisions

25    were removed.  It goes directly to the legislators' knowledge

1    and to its intent.  (indiscernible) and in removing those

2    protective provisions.

3              **THE COURT:**  Okay.  Mr. D'Andrea?

4              **MR. D'ANDREA:**  Do you mind if I approach the podium,

5    your Honor?

6              **THE COURT:**  That's fine.

7              **MR. D'ANDREA:**  Yeah, I -- your Honor, I think I agree

8    with the Plaintiffs that this is probably as close to relevant

9    as the documents come.  So this is a good starting point to

10   extend this.  I think our answer -- our answer to that is this

11   is -- it's speculation from a staffer that this kind of law

12   might disenfranchise minorities and the representative to whom

13   this staffer reports testified in his deposition that he

14   reviewed the speculation and then extensively reviewed

15   empirical studies and decided his staffer's concerns were not

16   well-founded and I think the staffer himself said that he came

17   around to that point of view.

18              So I -- to the extent it's even relevant, it is

19   neutralized by the greater weight of evidence in this case and

20   I certainly don't think it rises to the level of highly

21   relevant.

22              **THE COURT:**  All right.  The Court is going to grant

23   the motion to unseal regarding this Exhibit 3 and I guess that

24   actually I should label -- it was Exhibit 3 to the motion.  It

25   is Texas 87007 through Texas 87014; is that right?

1          **MR. FREEMAN:**  Your Honor, it's been marked as

2  Plaintiffs' Exhibit 205.  That might be the easiest way to do

3  it.

4          **THE COURT:**  Well, I'm just looking at the numbers

5  that are before the Court.  So that's what was attached to the

6  motion.  If you-all want to submit something clarifying the

7  exhibits, you can but I don't have the other matter before me

8  right now.

9          **MR. DONNELL:**  Zero --

10          **MR. FREEMAN:**  Okay.  We're certainly happy to do

11  that, your Honor.

12          **MR. DONNELL:**  -- 00087007 through 87014.

13          **THE COURT:**  Yes, I think that's what I said.  Right,

14  Brandy?

15          **MR. D'ANDREA:**  Your Honor, I think -- with that

16  ruling, I think I can save us quite a bit of time this morning.

17          **THE COURT:**  Okay.  Do you want proceed?  Sure.

18          **MR. D'ANDREA:**  Dan, may I?

19          **MR. FREEMAN:**  Certainly.

20          **THE COURT:**  Yes, you may because I said you could.

21          **MR. D'ANDREA:**  Oh, I'm sorry, your Honor.  That's an

22  even higher authority.

23          **THE COURT:**  No, I'm kidding.

24          **MR. D'ANDREA:**  I think I can save us a lot of time

25  because I -- as I said, I do agree that that's about as close

```
 1    to relevant as their documents come which is why they put it in

 2    their motion and with the exception of two small categories

 3    that I'd like to discuss, I'm happy to stipulate that the

 4    documents are all the same.  Even though we maintain our

 5    objection to their admissibility, there is no difference.

 6              THE COURT:  Okay.

 7              MR. D'ANDREA:  There's two distinctions I'd like to

 8    raise, your Honor.  The first one is a single document that I

 9    think might not be privileged at all.  That is Plaintiffs'

10    Exhibit -- Plaintiffs' Exhibit 817 is a --

11              THE COURT:  Okay.  The only -- what I have before me

12    is the motion and the attachments.

13              MR. D'ANDREA:  Okay.

14              THE COURT:  So I don't know if you can refer to that.

15              MR. D'ANDREA:  It is not part -- it was not included

16    in the motion or the attachment but it is on their exhibit list

17    that --

18              THE COURT:  Okay.

19              MR. D'ANDREA:  -- your Honor was -- is admitting

20    except for, I think, a couple I'd like to raise with you.

21              THE COURT:  Okay.

22              MR. D'ANDREA:  It is on --

23              THE COURT:  I think we just need to clarify

24    something.  The only thing -- I understand from my ruling there

25    you-all can then have agreements or something but I cannot rule
```

1    on anything that's not before me and that kind of goes back to

2    I don't want all these documents thrown at me or offer of proof

3    all these documents when I have not had a chance to -- as long

4    as everyone's clear, I am ruling on what's before me.  The

5    lawyers then say, based on the Court's ruling, we believe it's

6    going to apply to all these and you-all want to go forward but

7    I don't think it's fair to the Court to propose, we're going to

8    submit all these as an offer of proof when I've not looked at

9    everything.

10          **MR. D'ANDREA:**  That is fair, your Honor, but if I

11   could -- if --

12          **THE COURT:**  Yes.

13          **MR. D'ANDREA:**  -- I have a copy of this one and if we

14   could sort this out, it would help me at great deal.

15          **THE COURT:**  If you have a copy for me to look at,

16   I'll be glad to look at it.  I'm saying, what was here -- I

17   don't have all your exhibits yet.  I have an exhibit list that

18   might as well be all the exhibits because it's like thousands

19   of pages but I have the motion to unseal.  I have the exhibits

20   that were attached to it.  I've been able to review some of

21   them that -- now that you-all narrowed it, I found it to be

22   more efficient than yesterday, me trying to go through

23   everything when I wasn't really sure where everyone stood.  So,

24   you know, I -- that's all I have right here.

25          **MR. D'ANDREA:**  And -- well, that's great.  I think if

1    we can -- I have this exhibit and if we can clean this up --

2          **THE COURT:**  Okay.

3          **MR. D'ANDREA:**  -- and one small issue, I think I --

4    the rest may be able to come in.

5          **THE COURT:**  Okay.

6          **MR. D'ANDREA:**  So the first one I'd like to hand your

7    Honor -- Dan, this is your Exhibit 817.

8          Your Honor, this is a scandalous handwritten note

9    that was produced from a bill book of a state representative.

10   It was given to the Plaintiffs.  The state representative was

11   asked about this note at her deposition.  She said that it is

12   not hers.  She didn't write it.  She doesn't know who wrote it.

13   It's not --

14         **THE COURT:**  Yeah, I -- and I -- like I said this

15   morning when we were discussing the other one, I can't tell

16   from this document if it would fall within the protective --

17         **MR. D'ANDREA:**  Okay.  And it is from -- I think it's

18   similar to that.  So -- and she also testified at her

19   deposition that people routinely -- the members of the public

20   routinely hand her notes and documents during the breaks at

21   committee meetings and that she shoves them in her bill book.

22   She said she's never seen it before and during production, she

23   just handed everything to the United States.

24         **THE COURT:**  I think the way we handled something like

25   this this morning was I don't -- I can't determine from the

1   face of it if it would fall within the legislative privilege.

2   I don't know how the Plaintiffs would get this in as it is

3   without being who'd it come from.  So we keep it sealed and if

4   the Plaintiffs try -- attempt to bring it in, they're going to

5   have to establish how this would come in under the evidentiary

6   rules but we keep it sealed at this point.  I just don't think

7   with this I can say this falls within the legislative

8   privilege --

9            **MR. D'ANDREA:**  Okay.  Thank you, your Honor.  I --

10            **THE COURT:**  -- because we don't know who it came

11   from.

12            **MR. D'ANDREA:**  -- with that, I think I can meet with

13   opposing counsel and we can get this done --

14            **THE COURT:**  Okay.

15            **MR. D'ANDREA:**  -- pretty fast.

16            **THE COURT:**  But you want to take that?

17            **MR. D'ANDREA:**  One -- can I raise one more thing?

18   And that is, there are eight exhibits that the United States --

19   and if you want the exhibits in front of you, then maybe we

20   can't get this done but I can represent to you that they're all

21   about the amendment process.

22            **THE COURT:**  Okay.

23            **MR. D'ANDREA:**  They're all about Republicans

24   examining the proposed amendments that the opposition to SB14

25   are going to bring.  And as I take it from the findings of

1    facts and conclusions of law that it would be the Plaintiffs'

2    position that the supporters of SB14 were faced with emulative

3    (phonetic) amendments to SB14 and yet in the face of those,

4    they refused to accept these good-faith amendments.

5           And if your Honor lets this group in, I would ask

6    your Honor to either exclude it based on your ruling yesterday

7    that this amendment process isn't entirely relevant or if your

8    Honor lets it in, I would ask you to please reconsider your

9    ruling yesterday that allowed some Democratic documents that

10   showed that this -- they weren't entirely good-faith emulative

11   amendments, that they were, in fact, an attempt to paper the

12   record for this very trial.

13         **MR. FREEMAN:**  Your Honor, this is Dan Freeman on

14   behalf of the United States.  I would just say that the intent

15   behind SB14 is shaped by those legislators who had control over

16   the legislative process, who voted down amendments and chose to

17   exclude them.  The intent behind the amendment is far less

18   relevant than the intent of those who chose to exclude the

19   proposed provision from the bill itself.  And so we would

20   maintain that materials that explain positions taken by bill

21   proponents by sponsors in the House and Senate are far more

22   relevant than the intent of those who made the decision to

23   offer the amendment.

24         **MR. D'ANDREA:**  Your Honor, if I may have a brief

25   rebuttal.  There's some truth to that except -- and I think

1    this is what makes it important.  At the depositions,

2    Lieutenant Governor Dewhurst, Senator Patrick, a lot of our

3    people testified that they knew at the time that many of these

4    emulative amendments were intended only to create a record and

5    that they weren't serious and that even if they accepted them,

6    the proposed amendment -- the people who proposed the

7    amendments would vote them down.

8            And they testified that some of those amendments they

9    felt were serious and that they joined those.  That is why, for

10   example, Senator Patrick joins Senator Hinojosa's recommend --

11   amendment to accept CHLs and it is why some senators joined --

12   some Republican senators joined Senator Wendy Davis' amendment

13   to accept substantially similar names.

14           When they felt that the amendment was offered in good

15   faith, they took it.  The bunch of last-minute amendments that

16   they felt were offered in bad faith and it turns out from these

17   documents that, in fact, they were right.

18           **MR. DUNN:**  Your Honor, this is Chad Dunn.  May I be

19   heard?

20           **THE COURT:**  Yes.  Yes.

21           **MR. DUNN:**  Just as a follow-up without getting into

22   details, we disagree with Mr. D'Andrea's characterization of

23   how two amendments in the Senate worked out but setting that

24   aside for now, I do want to note because I'm not sure it's

25   clear to the Court that the record as of yesterday and today

1   that the vast majority of the documents that the State wanted

2   from the opponents to the legislation -- I think it was some

3   800 pages -- are -- have been agreed to by Ms. London.  It was

4   just a handful of pages that were not agreed to and having had

5   the chance to look at at least some of -- many of those pages,

6   there's quite a bit of that evidence available to the State

7   about what the so-called plan was the State keeps referring to

8   and what the various amendments were.

9           So I just don't think that the few documents that the

10  Court's already ruled on -- and of course Ms. London is on her

11  way back to Austin -- ought to be reconsidered at this point.

12          **THE COURT:**  Yeah.

13          **MR. D'ANDREA:**  I'm certainly sorry.  I did not mean

14  to bring it up without the presence of Ms. London.  That was an

15  oversight on my part.  I just --

16          **THE COURT:**  Yeah.  I --

17          **MR. D'ANDREA:**  -- it's relevant to the task that Dan

18  and I have.

19          **MR. FREEMAN:**  Your Honor, perhaps we can set these

20  individual documents aside.  Mr. D'Andrea and I can discuss

21  what specific documents he's referring to and if necessary, we

22  can --

23          **THE COURT:**  Right.

24          **MR. FREEMAN:**  -- bring just this limited subject back

25  in front of the Court and provide the Court the actual

1    documents so that we're not speaking in the abstract.

2            **THE COURT:**  I think some of the deposition testimony

3    that was set forth in the advisory regarding -- regarded those

4    amendments.  So I'm not sure -- you-all can talk further about

5    what specific exhibits covers this but I'm inclined -- I think

6    I would grant the motion to unseal regarding exhibits that

7    cover the amendment issue.

8            **MR. FREEMAN:**  Your Honor, I --

9            **THE COURT:**  I don't have specific exhibits.  You-all

10   need to let me know what that is but just based on your general

11   argument, I would grant the motion to unseal regarding that

12   matter.

13           **MR. FREEMAN:**  And, your Honor, if you'd like to have

14   something concrete in front of you, the Williams deposition

15   excerpts that were Exhibit 10 to the motion to unseal addressed

16   the precise issue rejecting (indiscernible)

17           **THE COURT:**  Well, that's -- I had looked at that and

18   I think there was another one maybe that also addressed the

19   amendment issue.  So if that's -- if we're talking about that

20   generally and I don't have any specific exhibits before me, I

21   would grant the motion to unseal regarding that matter, that

22   topic.

23           **MR. D'ANDREA:**  May we raise the motion to reconsider

24   the ruling yesterday about the counter-bailing amendments

25   for --

1       **THE COURT:**  Not right now because I don't -- that

2  lawyer is not here.

3       **MR. D'ANDREA:**  Okay.  File it in the future, not at

4  this moment.

5       **THE COURT:**  Okay.  So what else -- what other area

6  then do you-all need some direction on?

7       **MR. D'ANDREA:**  That's it for me, your Honor.

8       **THE COURT:**  Okay.  So I think then you-all visit

9  again and we reconvene in the morning.  I've got some matters

10  in the morning.  So we may have to do it fairly early.

11       **MR. FREEMAN:**  What time works for you, your Honor?

12       **THE COURT:**  8:00 o'clock, Brandy?

13       **THE CLERK:**  Yes, your Honor.

14       **THE COURT:**  Okay.  Just to see where you-all are at

15  on the rest of the documents.  So anything else on that motion,

16  the motion to seal?

17       **MR. D'ANDREA:**  Thank you for the Court's time.

18       **THE COURT:**  Okay.

19       **MR. DONNELL:**  And I assume, your Honor, if the

20  parties resolve it, they can let Brandy know --

21       **THE COURT:**  Just let Brandy know.

22       **MR. DONNELL:**  -- that there's no need for 8:00

23  o'clock in the morning?

24       **THE COURT:**  Yes, definitely.

25       **MR. KEISTER:**  Your Honor, just one additional point

1    with respect to the documents that are going to be unsealed and

2    evidently by agreement.  We would request the opportunity to --

3    if necessary, to supplement our designations with appropriate

4    legislative documents that would set out the whole picture once

5    they -- once we know what documents are actually going to be

6    allowed.

7            THE COURT:  Okay.  I'm sure you-all can visit further

8    with the parties.  It shouldn't be a problem.

9            MR. KEISTER:  Okay.

10           THE COURT:  But you can address it with the Court if

11   you need to.

12           Can I give this back to you?

13           There was something else and I don't know if I said

14   that you-all could -- you-all had until Friday but what were we

15   doing with the United States motion to determine the

16   sufficiency of the responses regarding the request for

17   admissions?

18           MS. BALDWIN:  Your Honor, this is Anna Baldwin for

19   the United States.  Ms. Wolf and I have been conferring about

20   that and I hope to be able to present a resolution to the

21   Court.  We can certainly try and have that worked out by

22   tomorrow morning.

23           THE COURT:  Okay.

24           MR. DONNELL:  Judge --

25           THE COURT:  Yes.

1      **MR. DONNELL:**  -- I asked about that this morning.

2      **THE COURT:**  Okay.

3      **MR. DONNELL:**  It's my understanding that they were

4  almost there or were there and so there wouldn't be any need

5  for the Court to --

6      **THE COURT:**  Okay, that would be good.  And then I

7  believe Brandy sent you-all an email this morning regarding

8  claims that are left.  I just -- I don't want to be doing a lot

9  of extra work on the Court's part if --

10     **MR. ROSENBERG:**  Judge --

11     **THE COURT:**  -- there's things that we're not

12 proceeding on.

13     **MR. ROSENBERG:**  -- can I --

14     **THE COURT:**  Yes.

15     **MR. ROSENBERG:**  Your Honor, Ezra Rosenberg and we are

16 -- we hope to get a response within the hour.

17     **THE COURT:**  Okay, that's fine.

18     **MR. ROSENBERG:**  Thank you.

19     **THE COURT:**  Was there anything else pending from the

20 Plaintiffs?

21     **MR. FREEMAN:**  Not from the United States, your Honor.

22     **THE COURT:**  Okay.  Defendants?

23     **MR. KEISTER:**  No, your Honor.

24     **THE COURT:**  Okay.  Let me just ask.  I know -- I

25 think -- is it -- I'm kind of off on my days.  By tomorrow,

1   you-all were going to be looking at objections to exhibits.

2   I'm just trying to figure out -- and I think I asked this

3   yesterday -- the magnitude of that issue.  I mean, is it going

4   to affect a lot of the trial time or is it going to be

5   something we can rule on quickly through the trial?  I'm just

6   trying to get a feel as to what our weeks are going to be like.

7           **MR. ROSENBERG:**  Yeah.  Ezra Rosenberg again, your

8   Honor, and our hope is that it does not eat into the trial time

9   at all but not substantially.  We are hoping to have calls with

10  the State throughout the weekend starting tomorrow in attempts

11  to come to resolution as to both exhibit objections and

12  deposition designation objections so that we narrow the

13  universe of any problem.  We hope it's very few but we just are

14  not in a position to tell you if we are optimistic or not but I

15  should say I'm relatively optimistic and -- but we won't know

16  until we really start talking and I can't return until tomorrow

17  unfortunately.

18          **THE COURT:**  Okay.  Mr. Donnell?

19          **MR. DONNELL:**  I think there -- I think that's

20  substantially correct.  I inquired about the status of that and

21  I came away with the impression that the areas of possible

22  disagreement have been greatly narrowed so that, you know, I'm

23  probably more optimistic than counsel was but I think you'll

24  know well in advance on these issues but I predict that it's

25  one of the significant issues --

1           **THE COURT:**  Yeah.  I'm just -- you know, with it

2    being a bench trial, I'm okay addressing a lot of that during

3    the trial.  The problem is, as I said, I'd like to get eight

4    hours of trial testimony in.  So I'm just trying to get a feel.

5    Is there going to be so many exhibits we have to address that

6    we're going to be here until 10:00 o'clock at night because we

7    didn't get our eight hours?  You know, I was just trying to get

8    a feel for that but if you-all -- we don't know yet --

9           **MR. ROSENBERG:**  You know, I think that -- I'm hoping

10   that for a lot of the stuff where there would be objections

11   that we're basically going to be able to agree that -- and the

12   Court gives what weight the Court wanted to give to it so you

13   don't --

14          **THE COURT:**  Okay.

15          **MR. ROSENBERG:**  -- get tied up in those kinds of

16   arguments.  But, again, hopefully we'll have more clarity as we

17   can progress.

18          **THE COURT:**  Okay.  And the reason I asked is because

19   I said I think the exhibit list combined, we're looking at over

20   3,000 documents.  So that's why I'm concerned about it eating

21   trial time but, you know --

22          **MR. ROSENBERG:**  Right.

23          **THE COURT:**  -- maybe I don't need to be concerned

24   about that.  So we --

25          **MR. DONNELL:**  I can only say that I'm optimistic that

22

1    it will not become a problem.

2            THE COURT:  Okay.  Then if nothing further, we're

3    going to confer at 8:00 a.m. unless you-all let Brandy know

4    that the motion to unseal was further resolved.  Correct?

5            MR. D'ANDREA:  We'll get that done as soon as

6    possible.

7            THE COURT:  Okay.  You're excused then.  Thank you.

8    Oh, you-all are going to let me know about the causes of action

9    -- or the claims, correct?

10           MR. FREEMAN:  Yes.  We'll be sending something into

11   the court this afternoon.

12           THE COURT:  All right, thank you.  You're excused.

13           MR. SPEAKER:  Thank you, your Honor.

14           MR. SPEAKER:  Thank you, your Honor.

15       **(This proceeding ended at 1:50 p.m.)**

16

17

18

19

20

21

22

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.




_____          _August 29, 2014_


TONI HUDSON, TRANSCRIBER