UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, ET AL., | ) | CASE NO: 2:13-CV-00193 |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Corpus Christi, Texas |
| | ) | |
| RICK PERRY, ET AL., | ) | Friday, August 29, 2014 |
| | ) | |
| Defendants. | ) | (8:31 a.m. to 8:47 a.m.) |

MOTION HEARING

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE

Appearances:            See Next Page

Court Recorder:         Genay Rogan

Clerk:                  Brandy Cortez

Court Security Officer: Adrian Perez

Transcriber:            Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**

| | |
|---|---|
| Plaintiffs: | CHAD W. DUNN, ESQ.<br>Brazil and Dunn<br>4201 Cypress Creek Parkway, Suite 530<br>Houston, TX 77068<br><br>J. GERALD HEBERT, ESQ.<br>Attorney at Law<br>191 Somervelle Street #405<br>Alexandria, VA 22304<br><br>EMMA SIMSON, ESQ. |
| Mexican American Legislative Caucus, et al.: | EZRA D. ROSENBERG, ESQ.<br>Dechert, LLP<br>902 Carnegie Center, Suite 500<br>Princeton, NJ 08540-6531 |
| Texas League of Young Voters Education Fund: | KELLY DUNBAR, ESQ.<br>DANIELLE CONLEY, ESQ.<br>Wilmer Cutler Pickering, et al.<br>1875 Pennsylvania Avenue, NW<br>Washington, DC 20006 |
| State of Texas: | BEN DONNELL, ESQ.<br>RODNEY KEISTER, ESQ.<br>LINDSEY WOLF, ESQ.<br>ARTHUR D'ANDREA, ESQ. |
| United States of America: | DANIEL J. FREEMAN, ESQ.<br>ANNA BALDWIN, ESQ.<br>U. S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>NWB Room 7125<br>Washington, DC 20530 |
| Oscar Ortiz, et al.: | ROBERT DOGGETT, ESQ.<br>Texas Rio Grande Legal Aid<br>4920 North IH 35<br>Austin, TX 78751 |

1 **Corpus Christi, Texas; Friday, August 29, 2014; 8:31 a.m.**

2 **(Call to Order)**

3 **THE COURT:** Court calls Cause Number 2:13-193, *Veasey, et al. versus Perry, et al.*

5 Who's here for the plaintiffs?

6 **THE CLERK:** Your Honor, on the line for the plaintiffs is Chad Dunn and Emma Simson. For the United States, Anna Baldwin and Daniel Freeman. For NAACP, Ezra Rosenberg. Ortiz, et al., Robert Doggett. Texas League of Young Voters, Kelly Dunbar and Danielle Conley. For the State of Texas, in the courtroom, Lindsey Wolf, Ronnie Keister, Ben Donnell, and Arthur D'Andrea.

13 **THE COURT:** All right. I forgot there was another matter, so when I got the e-mail last night that you all had resolved the issue on the motion to unseal, I thought we were not having a hearing this morning, and I got here early to work on the matters that are set on the Court's docket this morning. So, what we have, then, before the Court still, the motion -- United States' motion to determine the sufficiency of defendants' responses to requests for admissions. So, what -- what is the issue there?

22 Ms. Baldwin?

23 **MS. BALDWIN:** Thank you, your Honor. Following the Court's order, we have conferred with the defendants in an attempt to resolve this in the most expeditious manner that we

1 could think of.  The bulk of the requests for admissions, as
2 the Court is aware, deal with racially polarized voting; and,
3 specifically, with the existence of racially polarized voting
4 as has been documented in analyses conducted by the Offices of
5 the Texas Attorney General.
6 　　　　　The ultimate fact that the United States is seeking
7 to (indiscernible) and was using the State of Texas's own
8 analyses as building blocks, facts, was the fact that racially
9 polarized voting exists in the State of Texas.  To move the
10 dispute forward, we're aware that just three days ago, in the
11 closing arguments in *Perez v Perry*, the State conceded the
12 existence of racially polarized voting in all counties but two
13 in the state.  And I'd just like to read the portion of that
14 transcript, because what we had proposed to defendants was just
15 that if we could all agree that the State wouldn't make an
16 objection to that portion of the closing argument, which is a
17 party admission and it doesn't need to even be agreed to, but
18 if the State, nonetheless, just to streamline matters, could,
19 we would not have a further dispute about the racially
20 polarized voting RFA's, or any of our RFA's, frankly, given the
21 Court's order already authenticated the documents.  But the
22 State wasn't able to agree to that, notwithstanding -- this is
23 the statement that was made in court to the three-judge panel
24 in *Perez* just three days ago, your Honor.
25 　　　　　**THE COURT:**  Well, did the evidence support that in

1  that case, or was that just argument?
2          **MS. BALDWIN:** It -- it -- the -- what the evidence
3  did support, and this is what the State literally said; this is
4  from the closing (indiscernible).
5          **THE COURT:** But I'm -- we're talking evidence here.
6  So, what did the evidence support in that case?
7          **MS. BALDWIN:** The evidence in that case, the position
8  of the State was that it was uncontested, that expert analysis
9  has shown that there's racially polarized voting, and quote, "I
10 don't think there is any dispute about that."
11         **THE COURT:** Okay.
12         **MS. BALDWIN:** And, so, we wanted, with an agreement
13 that, you know, the statement from the State, that quote:
14              "The State's position on whether racially polarized
15              voting exists in the state, as a factual matter,
16              defining 'racially polarized voting' as different
17              groups of voters preferring different candidates, as
18              a factual matter, it has been established that in
19              almost every area of the state, except Nueces and
20              Kleberg" -- which I will address in a second --
21              "which, as a matter of fact, in general elections,
22              Anglo voters tend to prefer different candidates than
23              African American and Latino voters. That's what the
24              expert analysis has shown. I don't think there is
25              any dispute about that."

1        And, so, with that party admission, we were content
2   if the State --
3        **THE COURT:** Okay. Let -- and I may be missing
4   something. Argument is not an admission, correct? That is not
5   evidence before a court. That's why I keep trying to focus on
6   the evidence; if there was no objection to the evidence, if it
7   was agreed to during the trial. But I'm a little concerned
8   when you're talking argument.
9        **MS. BALDWIN:** Your Honor, we view that as a party
10  admission. And, so, if the State could --
11       **THE COURT:** So, what the lawyers say is going to go
12  to a party admission, then, even though we always say what the
13  lawyers say is not evidence?
14       **MS. BALDWIN:** Well, that is the agreement that we
15  were trying to reach with the State, that if they would agree
16  that that was a party admission and it would come in in that
17  manner, then we would not have a dispute about the rest of the
18  polarized voting RFA's. The response from the State was:
19  Well, we'll agree to that if you let all of the expert
20  testimony from the State's expert about racially polarized
21  voting at trial and in deposition come in. That didn't seem to
22  us to be a streamlined approach. And, so, we're left -- given
23  that the State seemed to want to walk away from that admission
24  (indiscernible) --
25       **THE COURT:** Well, aren't they going to present that

1 anyway? Isn't that expert testimony going to be presented in
2 this trial, or no?
3    **MS. WOLF:** Your Honor --
4    **MS. BALDWIN:** Your Honor, it's separate expert
5 testimony from an expert who is solely the State's expert on
6 racially polarized voting. In the *Perez* case, where the United
7 States had its own separate expert on racially polarized
8 voting, and since, no, your Honor, that's, you know, reams and
9 reams of testimony from an entirely separate expert that we
10 weren't seeking to admit, we were just seeking to get the
11 streamlined facts of racially polarized voting.
12    So, without that agreement, where we're left is that
13 all of the RFA's, except for the ones regarding census
14 information that's already been authenticated and certain facts
15 regarding candidacy that were not pressing in terms of our case
16 in chief, remain disputed. So, that would be RFA's one through
17 743 and 746 and 747.
18    **THE COURT:** All right. Ms. Wolf?
19    **MS. WOLF:** Your Honor, I'd just like to clarify a
20 point for the record. I think the issue that the State had
21 with this United States proposal to utilize the closing
22 argument is that the closing argument is a statement which is
23 completely taken out of context in various forms of evidence
24 which were presented in a separate redistricting case. We've
25 gone to lengths to confer with the attorneys who worked on the

1  redistricting case, because I was not one of those attorneys,
2  so I don't have a complete grasp on the facts -- factual record
3  in that case, but my understanding was that the racially
4  polarized -- racially polarized voting as a Senate Factor is a
5  legal conclusion.  And, on top of that, it was a subject -- and
6  I think Ms. Baldwin admitted -- it was a subject of various
7  expert testimony in that case.  So, to ask the defendants in
8  this case or the Office of the Attorney General in this case to
9  make an admission as to a matter of law and as to a matter
10 which was the subject of multiple experts' testimony in another
11 case, we don't think that's appropriate in terms of an RFA.
12         **THE COURT:**  Okay.  So -- so, what are we doing with
13 these hundreds of requests for admissions, then?
14         **MS. WOLF:**  So, our -- you know, either we would be
15 willing to accept the United States' offer to -- to let that
16 closing in, for whatever it's worth, on the assumption that the
17 deposition transcript of our expert could come in -- and they
18 could counter-designate it, we're totally fine with that; or,
19 frankly, we -- we understand your Honor's order to authenticate
20 the five documents which were the bulk of -- subject of the
21 bulk of these RFA's, and we think that the documents, frankly,
22 speak for themselves, and there is some data that's contained
23 on the face of those documents, and I would -- I mean, I
24 think -- so, the majority of these RFA's are asking the
25 defendants to comb through approximately 6,000 pages of

1  documents and agree or disagree with the United States that the
2  document says what it says when, at the end of the day, the
3  document says what it says.  And, so, that's how we would
4  propose to address -- I believe it's approximately one through
5  717 all refer to those particular exhibits, with the exception
6  of 44, which is referring to a statement and a pleading.
7           As to -- there's a separate group, which is 718 to
8  743, and that group of RFA's is asking the defendants to admit
9  or deny, for example, as to the level of participation of
10 African American, Hispanic, Spanish surnamed and Anglo voters
11 in the Democratic Party and Republican Party primary elections
12 in various years, as well as the political parties of the
13 candidates members of those groups have voted in, in general
14 elections, statewide primary elections.  And I think the issue
15 that defendants have with that is, (a) we've -- we have again
16 gone back to the Secretary of State's office, and they do not
17 maintain voter turnout data.  So, that data, in terms of a
18 factual matter, our client doesn't have.  Whether or not in
19 redistricting there were estimates that were made by experts
20 using statistical methods, I think that there were, but, again,
21 I think that that is not the proper subject of a factual RFA;
22 and I don't think it would be fair to defendants to have to
23 admit those -- that particular group of RFA's when there is
24 no -- there's not even a document that's being referenced.
25          **THE COURT:**  All right.  Ms. Baldwin?

| | |
|---|---|
| 1 | **MS. BALDWIN:** Yes, your Honor. If I may, with |
| 2 | respect to, just very specifically, numbers 45 through 717 of |
| 3 | the RFA's, those RFA's all concern a single document, |
| 4 | Exhibit A, which is one of the racially polarized voting |
| 5 | analyses documents. |
| 6 | **THE COURT:** Okay. And the defendant has said the |
| 7 | document says what it says, and they have agreed to that. |
| 8 | **MS. BALDWIN:** It has -- well, it has charts in it, |
| 9 | your Honor, that -- that their position is essentially that |
| 10 | they're not going to admit, you know, putting the charts into |
| 11 | plain, clear sentences that says: In this district, in this |
| 12 | election, African Americans and Latino voters preferred |
| 13 | different candidates. In terms of a straightforward |
| 14 | presentation of the evidence, we think that it's perfectly |
| 15 | appropriate to render those charts into clear sentences and |
| 16 | have the defendants admit that that's, in fact, what it says so |
| 17 | that there's -- |
| 18 | **THE COURT:** Okay. Well, I don't agree with that. |
| 19 | So, what else? |
| 20 | **MS. BALDWIN:** With respect to the other facts, 718 to |
| 21 | 743, your Honor, those are all racially polarized voting facts |
| 22 | that, as Ms. Wolf just -- |
| 23 | **THE COURT:** I'm sorry; which ones were you referring |
| 24 | to? I'm sorry. |
| 25 | **MS. BALDWIN:** Seven eighteen through 743 -- |

1       **THE COURT:** Okay.

2       **MS. BALDWIN:** -- are separate facts that relate to
3  voter turnout and voter participation and also racially
4  polarized voting that are separate from the document itself.
5  Those are facts that it's -- that the defendants themselves
6  have -- have been relying on in the redistricting case.  Just
7  because there's not -- the Secretary of State doesn't maintain
8  that, there is no reason that the defendants shouldn't be
9  required to admit those facts.  They have had an opportunity;
10 we've served these requests for admissions months ago; and we
11 think that those should be deemed admitted because they were
12 improperly denied at the outset.

13      **MS. WOLF:** Your Honor, my understanding -- and,
14 again, this is almost a level of second-degree hearsay, because
15 this is coming from a conversation that I had with another OAG
16 attorney who worked on this matter, but my understanding was
17 that the State's expert in redistricting relied on Spanish
18 surnamed turnout estimates for the limited purpose of testing
19 an opinion on Hispanic voter turnout which was offered by the
20 plaintiff's expert.  So, for -- as a first level, my
21 understanding, that these RFA's are broader than what was
22 relied on in redistricting.  Notwithstanding that fact, I think
23 that these particular RFA's are calling for statistical data,
24 which is subject to different interpretations, which is subject
25 to different methodologies, and, frankly, Ms. Baldwin admitted

1  that the Secretary of State does not maintain hard, factual
2  data on these matters.
3          **THE COURT:**  Okay.  Are these all the documents, the
4  one through 743, I guess, or is there something else we need to
5  address?
6          **MS. BALDWIN:**  These are -- these are 718 through 743,
7  your Honor.
8          **MS. WOLF:**  Yes.
9          **THE COURT:**  Okay.  Court's going to deny the
10 Government's motion, then, I guess, from one through 743 at
11 this point.
12         What else do we need to discuss?
13         **MR. HEBERT:**  Your Honor, this is Gerry Hebert for the
14 Veasey-LULAC plaintiffs.  May I raise one matter very quickly?
15         **THE COURT:**  Yes.
16         **MR. HEBERT:**  We have been conferring with the State
17 of Texas lawyers, as well as Mr. D'Andrea, about unsealing
18 portions of three expert reports that we've submitted for
19 Drs. Lichtman, Cornish, and Herron.  And we've reach agreement;
20 the State has no objection.  Mr. D'Andrea, who I understand is
21 in the courtroom, so he can correct me if I'm wrong, he said
22 that the privileged documents cited in our expert reports
23 should be treated, in his eyes, as the same as the plaintiffs'
24 exhibits that the United States and Mr. Freeman worked out in
25 the stipulation and that, while he opposes, obviously,

1 unsealing the documents, he's willing to agree that those
2 documents that our experts cited can't be distinguished from
3 the ones that you've already unsealed. And, so, that
4 stipulation -- we'd just like it on the record so we can get
5 those three expert reports unsealed.
6     **THE COURT:** All right. Mr. D'Andrea?
7     **MR. D'ANDREA:** I agree with what Mr. Hebert said.
8     **THE COURT:** Okay. That's agreed and stipulated to,
9 then.
10     **MR. ROSENBERG:** Your Honor, Ezra Rosenberg. One
11 other housekeeping matter, also a matter of agreement. We, DOJ
12 and the other plaintiffs and the State have agreed that each
13 will -- each party will give the other side 48 hours' notice
14 instead of 24 hours' notice of their witnesses, so we will be
15 providing the State with the witnesses who we intend to call on
16 Tuesday, we will provide that to them on Sunday morning, and
17 the witnesses who we intend to call on Wednesday, we will
18 advise them on Monday morning. We will also include the
19 witnesses who we intend to present by video deposition. And,
20 for the Court's convenience, we will provide those lists
21 ex parte sometime today --
22     **THE COURT:** Okay.
23     **MR. ROSENBERG:** -- if that's okay with the Court.
24     **THE COURT:** That's fine.
25     **MR. ROSENBERG:** But we will -- I'm sorry?

1    **THE COURT:** I'm sorry.  I said that's fine.  I was
2 thinking for this case it was better to do more than one day in
3 advance, knowing that we may, you know, need to make some
4 changes, and definitely, you know, I'd appreciate advance
5 notice on that.
6    **MR. ROSENBERG:** Yeah; (indiscernible) prior to -- as
7 we said in court the other day, fill in deposition
8 designations, but since, you know, we don't know which will
9 come in on which day, the deposition designations themselves as
10 a whole, obviously, that universe, the State gets notice of.
11    **THE COURT:** Okay.  Mr. Donnell, were you going to say
12 something?
13    **MR. DONNELL:** I just -- what was going to be provided
14 ex parte?  I didn't understand.
15    **THE COURT:** To the Court, the -- the witnesses that
16 are going to be called.  That just gives me a little bit -- if
17 I need to start looking at some of -- whether they're experts,
18 or whatever it is --
19    **MR. DONNELL:** That's fine.
20    **THE COURT:** -- I have a heads up.  So, you all can do
21 that, too, the defense.
22    **MR. ROSENBERG:** And we will -- we will identify them
23 as experts or laymen just for your Honor's convenience.
24    **THE COURT:** Okay.  What else?  Anything else from the
25 plaintiffs this morning?

1 **MS. WESTFALL:** Your Honor, this is Elizabeth Westfall
2 for the United States. I have a very small issue, which is we
3 have trial techs and paralegals coming into the courtroom.
4 Would it be acceptable for them to be permitted to bring in
5 their cell phones into the -- into the courtroom?
6 **THE COURT:** Yes.
7 **MS. WESTFALL:** Thank you, your Honor.
8 **THE COURT:** Okay. What else? So, then, we're
9 probably not going to be conferring again, and we'll just get
10 together on Tuesday morning at 8:00 o'clock ready for openings
11 and straight into the evidence and -- correct? And you all are
12 still going to be conferring about exhibits, correct?
13 **MR. ROSENBERG:** Yeah, we -- we've already started
14 that process regarding -- this is Ezra Rosenberg again. We
15 will be continuing it throughout the weekend and hope that
16 there will be fairly little for your Honor to deal with in
17 terms of designations or exhibits.
18 **THE COURT:** Okay. Very good. Anything from the
19 defense?
20 **MR. DONNELL:** No, your Honor.
21 **THE COURT:** All right. We'll see you all Tuesday.
22 Have a good weekend.
23 **COUNSEL:** Thank you, your Honor.
24 **(Proceeding was adjourned at 8:47 a.m.)**
25

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____      September 2, 2014_

TONI HUDSON, TRANSCRIBER

EXCEPTIONAL REPORTING SERVICES, INC