Clerk, U.S. District Court
Southern District of Texas
FILED

OCT 20 2014

David J. Bradley, Clerk of Court

# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

October 14, 2014

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 14-41127    Marc Veasey, et al v. Rick Perry, et al
                     USDC No. 2:13-CV-193
                     USDC No. 2:13-CV-263
                     USDC No. 2:13-CV-291
                     USDC No. 2:13-CV-348

Enclosed is an opinion order entered in this case.

                              Sincerely,
                              LYLE W. CAYCE, Clerk

                              By: _____
                              Rhonda M. Flowers, Deputy Clerk

Ms. Leah Camille Aden
Mr. Vishal Agraharkar
Mr. Adam Warren Aston
Ms. Anna Baldwin
Mr. David J. Bradley
Ms. Jennifer Clark
Mr. Arthur Cleveland D'Andrea
Mr. Chad Wilson Dunn
Ms. Diana Katherine Flynn
Ms. Erin Helene Flynn
Mr. Jose Garza
Mr. J. Gerald Hebert
Mr. Preston Edward Henrichson
Mr. Robert Acheson Koch
Ms. Natasha M. Korgaonkar
Honorable Nelva Gonzales Ramos
Mr. Rolando Leo Rios I
Mr. John Barrett Scott
Mr. John Albert Smith III
Ms. Christina Swarns

Clerk, U.S. District Court
Southern District of Texas
FILED
OCT 20 2014
David J. Bradley, Clerk of Court

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
October 14, 2014
Lyle W. Cayce
Clerk

No. 14-41127

MARC VEASEY; JANE HAMILTON; SERGIO DELEON; FLOYD CARRIER; ANNA BURNS; MICHAEL MONTEZ; PENNY POPE; OSCAR ORTIZ; KOBY OZIAS; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; JOHN MELLOR-CRUMLEY; DALLAS COUNTY, TEXAS,

        Plaintiffs - Appellees

TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS,

        Intervenor Plaintiffs - Appellees

v.

RICK PERRY, in his Official Capacity as Governor of Texas; NANDITA BERRY, in her Official Capacity as Texas Secretary of State; STATE OF TEXAS; STEVE MCGRAW, in his Official Capacity as Director of the Texas Department of Public Safety,

        Defendants - Appellants

-----------------------------------------------

UNITED STATES OF AMERICA,

        Plaintiff - Appellee

TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND; IMANI CLARK,

        Intervenor Plaintiffs - Appellees

v.

STATE OF TEXAS; NANDITA BERRY, in her Official Capacity as Texas Secretary of State; STEVE MCGRAW, in his Official Capacity as Director of the Texas Department of Public Safety,

No. 14-41127

Defendants - Appellants

---

TEXAS STATE CONFERENCE OF NAACP BRANCHES; MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES,

    Plaintiffs - Appellees

v.

NANDITA BERRY, in her Official Capacity as Texas Secretary of State; STEVE MCGRAW, in his Official Capacity as Director of the Texas Department of Public Safety,

    Defendants - Appellants

---

LENARD TAYLOR; EULALIO MENDEZ, JR.; LIONEL ESTRADA; ESTELA GARCIA ESPINOSA; MARGARITO MARTINEZ LARA; MAXIMINA MARTINEZ LARA; LA UNION DEL PUEBLO ENTERO, INCORPORATED,

    Plaintiffs - Appellees

v.

STATE OF TEXAS; NANDITA BERRY, in her Official Capacity as Texas Secretary of State; STATE OF TEXAS; STEVE MCGRAW, in his Official Capacity as Director of the Texas Department of Public Safety,

    Defendants - Appellants

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before CLEMENT, HAYNES, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

No. 14-41127

Early voting in Texas begins on Monday, October 20. On Saturday, October 11—just nine days before early voting begins and just 24 days before Election Day—the district court entered a final order striking down Texas's voter identification laws. By this order, the district court enjoined the implementation of Texas Senate Bill 14 ("SB 14") of the 2011 Regular Session, which requires that voters present certain photographic identification at the polls. The district court also ordered that the State of Texas ("State") instead implement the laws that were in force before SB 14's enactment in May of 2011. Based primarily on the extremely fast-approaching election date, we STAY the district court's judgment pending appeal.

I.

SB 14 was signed into law on May 27, 2011, and its voter identification requirements became effective on January 1, 2012. 2011 Tex. Sess. Law Serv. Ch. 123 (West) (S.B. 14). These requirements have been implemented in at least three prior elections.

On June 26, 2013, this lawsuit challenging SB 14 was filed. On Thursday, October 9, 2014 the district court foreshadowed its ultimate judgment, issuing an opinion saying that it intended to enjoin SB 14. The lengthy, 143-page opinion followed a nine-day bench trial. The district court opined that SB 14 is unconstitutional and violates the Voting Rights Act. But it did not issue a final judgment.

On Friday, October 10, the State filed an advisory requesting that the district court enter a final, appealable judgment. When the district court declined to do so by close of business on Friday, October 10, the State filed a petition for writ of mandamus or, in the alternative, an emergency motion for stay pending appeal. Upon the entry of the district court's final judgment on Saturday, October 11, the State also filed a notice of appeal. Accordingly, we

3

No. 14-41127

construed the State's motion as an emergency motion for stay pending appeal and ordered that responses be filed within 24 hours. Five responses were filed.

## II.

A stay pending appeal "simply suspends judicial alteration of the status quo." *Nken v. Holder*, 556 U.S. 418, 429 (2009) (internal quotation marks and alteration omitted). We consider four factors in deciding a motion to stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 426. "The first two factors of the traditional standard are the most critical." *Id.* at 434.

## III.

This is not a run-of-the-mill case; instead, it is a voting case decided on the eve of the election. The judgment below substantially disturbs the election process of the State of Texas just nine days before early voting begins. Thus, the value of preserving the status quo here is much higher than in most other contexts.

### A.

The Supreme Court has repeatedly instructed courts to carefully consider the importance of preserving the status quo on the eve of an election. In the similar context of determining whether to issue an injunction,[1] the

---

[1] *See Nken*, 556 U.S. at 434 ("[T]here is substantial overlap between [the factors governing stays pending appeal] and the factors governing preliminary injunctions; not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." (internal citation omitted)).

4

Supreme Court held that, "[f]aced with an application to enjoin operation of voter identification procedures just weeks before an election, the Court of Appeals was required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). One of these considerations is that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Id.* at 4-5.[2]

Further, in the apportionment context, the Supreme Court has instructed that, "[i]n awarding or withholding immediate relief, a court is entitled to and *should* consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (emphasis added). Accordingly, "under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid." *Id.*

---

[2] In *Purcell*, the district court declined to enjoin a voter identification law on September 11, 2006. *Id.* at 3. The plaintiffs appealed and, on October 5, the Court of Appeals issued an injunction pending the outcome of the appeal. *Id.* The Supreme Court vacated the Court of Appeals' injunction on October 20. *Id.* at 5-6. Ultimately, the Supreme Court's action preserved the status quo of the state's voting laws leading up to the election, just as our decision here does today. *See id.* ("Given the imminence of the election and the inadequate time to resolve the factual disputes, our action today shall of necessity allow the election to proceed without an injunction suspending the voter identification rules."); *id.* at 5 ("In view of the impending election, the necessity for clear guidance to the State of Arizona, and our conclusion regarding the Court of Appeals' issuance of the order we vacate the order of the Court of Appeals.")

The Supreme Court itself has declined to interfere with a fast-approaching election, even after finding that the ballots unconstitutionally excluded certain candidates. *Williams v. Rhodes*, 393 U.S. 23, 34-35 (1968). The Court found on October 15, 1968 that:

> Certainly at this late date it would be extremely difficult, if not impossible, for Ohio to provide still another set of ballots. Moreover, the confusion that would attend such a last-minute change poses a risk of interference with the rights of other Ohio citizens, for example, absentee voters.

Id. at 35.

Here, the district court's decision on October 11, 2014 presents similar logistical problems because it will "be extremely difficult, if not impossible," for the State to adequately train its 25,000 polling workers at 8,000 polling places about the injunction's new requirements in time for the start of early voting on October 20 or even election day on November 4. The State represents that it began training poll workers in mid-September, and at least some of them have already completed their training. The State also represents that it will be unable to reprint the "election manuals that poll workers use for guidance," and so the election laws "will be conveyed by word of mouth alone." This "last-minute change poses a risk of interference with the rights of other [Texas] citizens," *Williams*, 393 U.S. at 35, because we can easily infer that this late retraining by word of mouth will result in markedly inconsistent treatment of voters at different polling places throughout the State.

In their response brief, the Veasey-LULAC plaintiffs concede that, "[u]nder the district court's injunction, perhaps some poll officials in some isolated precincts might mistakenly turn a registered voter away because the voter fails to comply with SB 14." They discount this concern because "this voter would also be disenfranchised were this Court to issue a stay." But they fail to recognize that inconsistent treatment of voters, even in just "some

6

isolated precincts," raises a significant constitutional concern, particularly when this disparate treatment is virtually guaranteed by the late issuance of the injunction.

B.

The Supreme Court has continued to look askance at changing election laws on the eve of an election. Just this term, the Supreme Court halted three Court of Appeals decisions that would have altered the rules of this fall's general election shortly before it begins. *See Frank v. Walker*, 14A352, 2014 WL 5039671 (U.S. Oct. 9, 2014); *North Carolina v. League of Women Voters of N. Carolina*, 14A358, 2014 WL 5026111 (U.S. Oct. 8, 2014); *Husted v. Ohio State Conference of N.A.A.C.P.*, 14A336, 2014 WL 4809069 (U.S. Sept. 29, 2014).

In *League of Women Voters*, on October 1, the Court of Appeals for the Fourth Circuit reversed the district court's denial of a preliminary injunction against North Carolina's "elimination of same-day registration and prohibition on counting out-of-precinct ballots" that were contained in a law that had been on the books since August of 2013. 14-1845, 2014 WL 4852113, at *1, 4 (4th Cir. Oct. 1, 2014). The dissent argued that the injunction should not be granted, partly because of the confusion it would cause in the fast-approaching election. *Id.* at *21-23 (Motz, J., dissenting). The Supreme Court stayed the resulting October 3rd injunction. *League of Women Voters*, 2014 WL 5026111.

In *Husted*, on September 24, the Court of Appeals for the Sixth Circuit affirmed the district court's September 4th grant of a preliminary injunction ordering "the restoration of additional early in-person . . . voting hours" that had been eliminated by a statute enacted in February of 2014 and effective on June 1, 2014. 14-3877, 2014 WL 4724703, at *1, 4 (6th Cir. Sept. 24, 2014). The Supreme Court stayed this injunction. 2014 WL 4809069.

No. 14-41127

In *Frank*, on September 12, the Court of Appeals for the Seventh Circuit issued a stay of a district court injunction imposed in April of 2014 that prevented the enforcement of Wisconsin's voter identification laws. 14-2058, 2014 WL 4494153 (7th Cir. Sept. 12, 2014), *reconsideration denied*, 14-2058, 2014 WL 4827118 (7th Cir. Sept. 26, 2014). Five judges dissented from the denial of rehearing en banc, arguing that changing the rules of the election at that late date was unreasonable, whatever the merits of Wisconsin's voter identification laws. 2014 WL 4827118, at *3-6 (Williams, J., dissenting from denial of rehearing en banc). The Supreme Court vacated the Court of Appeals' stay of the injunction, pending the outcome of Supreme Court proceedings. *Frank*, 14A352, 2014 WL 5039671.

While the Supreme Court has not explained its reasons for issuing these stays, the common thread is clearly that the decision of the Court of Appeals would change the rules of the election too soon before the election date. The stayed decisions have both upheld and struck down state statutes and affirmed and reversed district court decisions, so the timing of the decisions rather than their merits seems to be the key.[3] Moreover, Justice Alito's dissent from the stay in *Walker* casts some light on the Court's rationale: "There is a colorable basis for the Court's decision due to the proximity of the upcoming general election. It is particularly troubling that absentee ballots have been sent out without any notation that proof of photo identification must be submitted." *Frank*, 2014 WL 5039671, at *1 (Alito, J., dissenting).

Here, the district court's alterations to the Texas voting laws were made on October 11, 2014, even though the challenged laws became effective on January 1, 2012 and had already been used in at least three previous elections.

---

[3] The Court of Appeals' decision in *Husted* was stayed even though it affirmed a district court decision. This fact undermines the plaintiffs' argument that the main concern in *Purcell* was giving proper deference to district court decisions.

8

No. 14-41127

We must consider this injunction in light of the Supreme Court's hesitancy to allow such eleventh-hour judicial changes to election laws.

IV.

Particularly in light of the importance of maintaining the status quo on the eve of an election, we find that the traditional factors for granting a stay favor granting one here.

A.

First, the State has made a strong showing that it is likely to succeed on the merits, at least as to its argument that the district court should not have changed the voting identification laws on the eve of the election. The court offered no reason for applying the injunction to an election that was just nine days away, even though the State repeatedly argued that an injunction this close to the election would substantially disrupt the election process. As discussed in Section III above, the Supreme Court has instructed that we should carefully guard against judicially altering the status quo on the eve of an election. And, just this term, the Court has stepped in to prevent such alterations several times. We find that the State has made a strong showing that the district court erred in applying the injunction to this fast-approaching election cycle.

The other questions on the merits are significantly harder to decide, given the voluminous record, the lengthy district court opinion, and our necessarily expedited review. But, given the special importance of preserving orderly elections, we find that this factor weighs in favor of issuing a stay.

B.

The State will be irreparably harmed if the stay is not issued. "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419

9

(5th Cir. 2013); *accord Maryland v. King*, 133 S.Ct. 1, 3 (2012) (Roberts, Circuit Justice, in chambers); *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, Circuit Justice, in chambers); *Voting for Am., Inc. v. Andrade*, 488 Fed. App'x 890, 904 (2012) (unpublished). If the district court judgment is ultimately reversed, the State cannot run the election over again, this time applying SB 14. Moreover, the State has a significant interest in ensuring the proper and consistent running of its election machinery, and this interest is severely hampered by the injunction, as discussed in Section III above.

## C.

The individual voter plaintiffs may be harmed by the issuance of this stay.[4] But we find that this harm does not outweigh the other three factors. *See Planned Parenthood*, 734 F.3d at 419 ("While we acknowledge that Planned Parenthood has also made a strong showing that their interests would be harmed by staying the injunction, given the State's likely success on the merits, this is not enough, standing alone, to outweigh the other factors."). *Cf. Burdick v. Takushi*, 504 U.S. 428, 441 (1992) ("[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system."). Again, the first two factors are the most critical, *Nken*, 556 U.S. at 426, and we have already determined that these two factors favor granting a stay.

## D.

Finally, given that the election machinery is already in motion, the public interest weighs strongly in favor of issuing the stay. As explained in Section III above, the State represents that it will have to train 25,000 polling

---

[4] The State contends that no individual voter plaintiffs would actually be harmed by a stay. But, at this time, we decline to decide the fact-intensive question of which individual voter plaintiffs would be harmed.

10

No. 14-41127

officials at 8,000 polling stations about the new requirements. Inconsistencies between the polling stations seem almost inevitable given the logistical problem of educating all of these polling officials within just one week. These inconsistencies will impair the public interest.

V.

The State's emergency motion for stay pending appeal is GRANTED, as is its motion to file a brief exceeding page limits.

The State has also moved that we maintain its emergency motion for stay pending appeal under seal. The State's motion contains very few sensitive materials; instead, it cites and quotes a limited number of materials that were filed under seal in the District Court. Rather than maintain the entire motion under seal, the references to the sealed materials should instead be redacted by the State. The State's motion is GRANTED in that the unredacted version of the motion for stay pending appeal shall be maintained under seal. The State is DIRECTED to file a redacted version of its motion by October 15, 2014.

No. 14-41127

GREGG COSTA, Circuit Judge, concurring in the judgment:

The district court issued a thorough order finding that the Texas voter ID law is discriminatory. We should be extremely reluctant to have an election take place under a law that a district court has found, and that our court may find, is discriminatory. As always, however, we must follow the dictates of the Supreme Court. In two recent decisions, it stayed injunctions issued based on findings that changes in an election law were discriminatory. *See North Carolina v. League of Women Voters of N. Carolina*, 14A358, 2014 WL 5026111 (U.S. Oct. 8, 2014); *Husted v. Ohio State Conference of N.A.A.C.P.*, 14A336, 2014 WL 4809069 (U.S. Sept. 29, 2014). It also lifted the Seventh Circuit's stay of a district court's order in place since the spring that enjoined Wisconsin's voter ID law. *See Frank v. Walker*, 14A352, 2014 WL 5039671 (U.S. Oct. 9, 2014). I agree with Judge Clement that the only constant principle that can be discerned from the Supreme Court's recent decisions in this area is that its concern about confusion resulting from court changes to election laws close in time to the election should carry the day in the stay analysis. The injunction in this case issued even closer in time to the upcoming election than did the two out of the Fourth and Sixth Circuits that the Supreme Court recently stayed. On that limited basis, I agree a stay should issue.