**PL022**
**9/2/2014**
**2:13-cv-00193**

## The House Committee on Voter Identification & Voter Fraud, Select

82nd Legislature
March 7, 2011
During reading and referral of bills
3W.9

Pursuant to an announcement from the house floor and permission to meet during the reading and referral of bills on March 7, 2011, the House Committee on Voter Identification & Voter Fraud, Select met in a formal meeting and was called to order by the chair, Representative Bonnen, at 2:10 p.m.

The initial quorum call was answered as follows: Representatives Bonnen; Veasey; Aliseda; Harless; Hilderbran; Hochberg; and Taylor, Larry.

A quorum was present.

TX_00003089

USA_00016814

**House Committee on Voter Identification & Voter Fraud, Select**
3/7/2011

## SB 14

The chair laid out SB 14.

Representative Harless offered a complete committee substitute.

The chair recognized Representative Harless to explain CSSB 14.

The committee substitute was adopted without objection.

Representative Hilderbran moved that SB 14, as substituted, be reported favorably to the full house with the recommendation that it do pass and be printed.  The motion prevailed by the following record vote:

Ayes:                        Representatives Bonnen; Aliseda; Harless; Hilderbran; Taylor, Larry (5).

Nays:                       Representatives Veasey; Hochberg (2).

Present, Not Voting:   None (0).

Absent:                     Representatives Gutierrez; Pena (2).

At 2:15 p.m., on the motion of the chair and without objection, the meeting was adjourned subject to the call of the chair.


_____
Rep. Bonnen, Chair



_____
Steven Schar, Clerk


2

TX_00003090

USA_00016815

**PL023**
**9/2/2014**
**2:13-cv-00193**

## HOUSE OF REPRESENTATIVES

## NOTICE OF FORMAL MEETING

COMMITTEE:       Voter Identification & Voter Fraud, Select

TIME & DATE:     During reading and referral of bills
                 Monday, March 07, 2011

PLACE:           3W.9

CHAIR:           Rep. Dennis Bonnen

---

The committee will met to consider pending business.

Notice of this meeting was announced from the house floor.

---

1

TX_00003091

USA_00016816

PL024
9/2/2014
2:13-cv-00193

**The House Committee on Voter Identification & Voter Fraud, Select**
82nd Legislature
March 15, 2011
1:45 p.m.
E1.014

Pursuant to a notice posted on March 15, 2011, the House Committee on Voter Identification & Voter Fraud, Select met in a formal meeting and was called to order by the chair, Representative Bonnen, at 1:45 p.m.

The initial quorum call was answered as follows: Representatives Bonnen; Veasey; Aliseda; Harless; Hilderbran; Hochberg; and Pena.

A quorum was present.

TX_00002827

USA_00016817

**House Committee on Voter Identification & Voter Fraud, Select**
3/15/2011

Representative Hilderbran moved that the March 1, 2011 minutes for the House Committee on Voter Identification & Voter Fraud, Select be corrected. The corrected minutes were authorized without objection.

At 1:52 p.m., on the motion of the chair and without objection, the meeting was adjourned subject to the call of the chair.

_____
Rep. Bonnen, Chair

_____
Steven Schar, Clerk

2

TX_00002828

USA_00016818

PL025
9/2/2014
2:13-cv-00193

HOUSE OF REPRESENTATIVES

NOTICE OF FORMAL MEETING

```
COMMITTEE:     Voter Identification & Voter Fraud, Select
TIME & DATE:   1:45 PM, Tuesday, March 15, 2011
PLACE:         E1.014
CHAIR:         Rep. Dennis Bonnen
```

The committee will meet to take up pending business.

1

PL026
9/2/2014
2:13-cv-00193

82R11733 JRJ-D

By: Fraser, Birdwell, Carona, Deuell, Duncan,et al.          S.B. No. 14

     et al.

(Harless, Taylor of Galveston, Pena, Truitt,

                    A BILL TO BE ENTITLED
                          AN ACT
relating to requirements to vote, including presenting proof of
identification; providing criminal penalties.
       BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
       SECTION 1.  Section 13.002, Election Code, is amended by
adding Subsection (i) to read as follows:
       (i)  An applicant who wishes to receive an exemption from the
requirements of Section 63.001(b) on the basis of disability must
include with the person's application:
             (1)  written documentation:
                   (A)  from the United States Social Security
Administration evidencing the applicant has been determined to have
a disability; or
                   (B)  from the United States Department of Veterans
Affairs evidencing the applicant has a disability rating of at
least 50 percent; and
             (2)  a statement in a form prescribed by the secretary
of state that the applicant does not have a form of identification
acceptable under Section 63.0101.
       SECTION 2.  Section 15.001, Election Code, is amended by
adding Subsection (c) to read as follows:
       (c)  A certificate issued to a voter who meets the
certification requirements of Section 13.002(i) must contain an
indication that the voter is exempt from the requirement to present
identification other than the registration certificate before
being accepted for voting.
       SECTION 3.  Effective September 1, 2011, Subchapter A,
Chapter 15, Election Code, is amended by adding Section 15.005 to
read as follows:
       Sec. 15.005.  NOTICE OF IDENTIFICATION REQUIREMENTS.
(a)  The voter registrar of each county shall provide notice of the
identification requirements for voting prescribed by Chapter 63 and
a detailed description of those requirements with each voter
registration certificate issued under Section 13.142 or renewal
registration certificate issued under Section 14.001.
       (b)  The secretary of state shall prescribe the wording of
the notice to be included on the certificate under this section.
       SECTION 4.  Section 15.022(a), Election Code, is amended to
read as follows:
       (a)  The registrar shall make the appropriate corrections in
the registration records, including, if necessary, deleting a
voter's name from the suspense list:
             (1)  after receipt of a notice of a change in
registration information under Section 15.021;
             (2)  after receipt of a voter's reply to a notice of
investigation given under Section 16.033;
             (3)  after receipt of a registration omissions list and

USA_00016820

any affidavits executed under Section 63.006 [63.007], following an election;

    (4) after receipt of a voter's statement of residence executed under Section 63.0011;

    (5) before the effective date of the abolishment of a county election precinct or a change in its boundary;

    (6) after receipt of United States Postal Service information indicating an address reclassification;

    (7) after receipt of a voter's response under Section 15.053; or

    (8) after receipt of a registration application or change of address under Chapter 20.

    SECTION 5. Effective September 1, 2011, Subchapter A, Chapter 31, Election Code, is amended by adding Section 31.012 to read as follows:

    Sec. 31.012. VOTER IDENTIFICATION EDUCATION. (a) The secretary of state and the voter registrar of each county that maintains a website shall provide notice of the identification requirements for voting prescribed by Chapter 63 on each entity's respective website in each language in which voter registration materials are available. The secretary of state shall prescribe the wording of the notice to be included on the websites.

    (b) The secretary of state shall conduct a statewide effort to educate voters regarding the identification requirements for voting prescribed by Chapter 63.

    (c) The county clerk of each county shall post in a prominent location at the clerk's office a physical copy of the notice prescribed under Subsection (a) in each language in which voter registration materials are available.

    SECTION 6. Effective September 1, 2011, Section 32.111, Election Code, is amended by adding Subsection (c) to read as follows:

    (c) The training standards adopted under Subsection (a) must include provisions on the acceptance and handling of the identification presented by a voter to an election officer under Section 63.001.

    SECTION 7. Effective September 1, 2011, Section 32.114(a), Election Code, is amended to read as follows:

    (a) The county clerk shall provide one or more sessions of training using the standardized training program and materials developed and provided by the secretary of state under Section 32.111 for the election judges and clerks appointed to serve in elections ordered by the governor or a county authority. Each election judge shall complete the training program. Each election clerk shall complete the part of the training program relating to the acceptance and handling of the identification presented by a voter to an election officer under Section 63.001.

    SECTION 8. Chapter 62, Election Code, is amended by adding Section 62.016 to read as follows:

    Sec. 62.016. NOTICE OF ACCEPTABLE IDENTIFICATION OUTSIDE POLLING PLACES. The presiding judge shall post in a prominent place on the outside of each polling location a list of the acceptable forms of identification. The list must be printed using a font that is at least 24-point. The notice required under this section must be posted separately from any other notice required by state or federal law.

    SECTION 9. Section 63.001, Election Code, is amended by

USA_00016821

amending Subsections (b), (c), (d), and (f) and adding Subsections (g) and (h) to read as follows:

(b)  Except as provided by Subsection (h), on [On] offering to vote, a voter must present to an election officer at the polling place one form of identification described by Section 63.0101 [the voter's voter registration certificate to an election officer at the polling place].

(c)  On presentation of the documentation required under Subsection (b) [a registration certificate], an election officer shall determine whether the voter's name on the documentation [registration certificate] is on the list of registered voters for the precinct.  If in making a determination under this subsection the election officer determines that the voter's name on the documentation is substantially similar to but does not match exactly with the name on the list, the voter shall be accepted for voting under Subsection (d) if the voter submits an affidavit stating that the voter is the person on the list of registered voters.

(d)  If, as determined under Subsection (c), the voter's name is on the precinct list of registered voters and the voter's identity can be verified from the documentation presented under Subsection (b), the voter shall be accepted for voting.

(f)  After determining whether to accept a voter, an election officer shall return the voter's documentation [registration certificate] to the voter.

(g)  If the requirements for identification prescribed by Subsection (b) are not met, the voter may be accepted for provisional voting only under Section 63.011. For a voter who is not accepted for voting under this section, an election officer shall:

(1)  inform the voter of the voter's right to cast a provisional ballot under Section 63.011; and

(2)  provide the voter with written information, in a form prescribed by the secretary of state, that:

(A)  lists the requirements for identification;

(B)  states the procedure for presenting identification under Section 65.0541;

(C)  includes a map showing the location where identification must be presented; and

(D)  includes notice that even if all procedures are followed, there is no guarantee that the voter's provisional ballot will be accepted.

(h)  The requirements for identification prescribed by Subsection (b) do not apply to a voter who presents the voter's voter registration certificate on offering to vote and:

(1)  was 70 years of age or older on January 1, 2012, as indicated by the date of birth on the voter's voter registration certificate; or

(2)  is disabled and the voter's voter registration certificate contains the indication described by Section 15.001(c).

SECTION 10.  Section 63.0011(a), Election Code, is amended to read as follows:

(a)  Before a voter may be accepted for voting, an election officer shall ask the voter if the voter's residence address on the precinct list of registered voters is current and whether the voter has changed residence within the county.  If the voter's address is

USA_00016822

omitted from the precinct list under Section 18.005(c), the officer
shall ask the voter if the voter's residence, if [as] listed, on
identification presented by the voter under Section 63.001(b) [the
voter's voter registration certificate] is current and whether the
voter has changed residence within the county.

 SECTION 11.  Effective September 1, 2011, Chapter 63,
Election Code, is amended by adding Section 63.0012 to read as
follows:

 Sec. 63.0012.  NOTICE OF IDENTIFICATION REQUIREMENTS TO
CERTAIN VOTERS. (a)  An election officer shall distribute written
notice of the identification that will be required for voting
beginning with elections held after January 1, 2012, and
information on obtaining identification without a fee under Section
521.422, Transportation Code, to each voter who, when offering to
vote, presents a form of identification that will not be sufficient
for acceptance as a voter under this chapter beginning with those
elections.

 (b)  The secretary of state shall prescribe the wording of
the notice and establish guidelines for distributing the notice.

 (c)  This section expires September 1, 2017.

 SECTION 12.  Section 63.006, Election Code, is amended to
read as follows:

 Sec. 63.006.  VOTER WITH REQUIRED DOCUMENTATION [CORRECT
CERTIFICATE] WHO IS NOT ON LIST.  (a)  A voter who, when offering to
vote, presents the documentation required under Section 63.001(b)
[a voter registration certificate indicating that the voter is
currently registered in the precinct in which the voter is offering
to vote,] but whose name is not on the precinct list of registered
voters[,] shall be accepted for voting if the voter also presents a
voter registration certificate indicating that the voter is
currently registered:

 (1)  in the precinct in which the voter is offering to
vote; or

 (2)  in a different precinct in the same county as the
precinct in which the voter is offering to vote and the voter
executes an affidavit stating that the voter:

 (A)  is a resident of the precinct in which the
voter is offering to vote or is otherwise entitled by law to vote in
that precinct;

 (B)  was a resident of the precinct in which the
voter is offering to vote at the time the information on the voter's
residence address was last provided to the voter registrar;

 (C)  did not deliberately provide false
information to secure registration in a precinct in which the voter
does not reside; and

 (D)  is voting only once in the election.

 (b)  After the voter is accepted, an election officer shall:

 (1)  indicate beside the voter's name on the poll list
that the voter was accepted under this section; and

 (2)  enter the voter's name on the registration
omissions list.

 SECTION 13.  Section 63.009, Election Code, is amended to
read as follows:

 Sec. 63.009.  VOTER WITHOUT CERTIFICATE WHO IS NOT ON LIST.
A [(a)  Except as provided by Subsection (b), a] voter who does not
present a voter registration certificate when offering to vote, and
whose name is not on the list of registered voters for the precinct

USA_00016823

in which the voter is offering to vote, shall be accepted for provisional voting if the voter executes an affidavit in accordance with Section 63.011.

[(b) If an election officer can determine from the voter registrar that the person is a registered voter of the county and the person presents proof of identification, the affidavits required by Sections 63.007 and 63.008 are substituted for the affidavit required by Section 63.011 in complying with that section. After the voter is accepted under this subsection, an election officer shall also indicate beside the voter's name on the poll list that the voter was accepted under this section.]

SECTION 14. Section 63.0101, Election Code, is amended to read as follows:

Sec. 63.0101. DOCUMENTATION OF PROOF OF IDENTIFICATION. The following documentation is an acceptable form [as proof] of photo identification under this chapter:

(1) a driver's license or personal identification card issued to the person by the Department of Public Safety that has not [or a similar document issued to the person by an agency of another state, regardless of whether the license or card has] expired or that expired no earlier than 60 days before the date of presentation;

(2) a United States military identification card that contains the person's photograph that has not expired or that expired no earlier than 60 days before the date of presentation [form of identification containing the person's photograph that establishes the person's identity];

(3) a [birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity;

[(4)] United States citizenship certificate [papers] issued to the person that contains the person's photograph;

(4) [(5)] a United States passport issued to the person that has not expired or that expired no earlier than 60 days before the date of presentation; or

(5) a license to carry a concealed handgun issued to the person by the Department of Public Safety that has not expired or that expired no earlier than 60 days before the date of presentation

[(6) official mail addressed to the person by name from a governmental entity;

[(7) a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or

[(8) any other form of identification prescribed by the secretary of state].

SECTION 15. Section 63.011, Election Code, is amended by amending Subsections (a) and (b) and adding Subsection (b-1) to read as follows:

(a) A person to whom Section 63.001(g) [63.008(b)] or 63.009 [63.009(a)] applies may cast a provisional ballot if the person executes an affidavit stating that the person:

(1) is a registered voter in the precinct in which the person seeks to vote; and

(2) is eligible to vote in the election.

(b) A form for an affidavit required by this section must [shall] be printed on an envelope in which the provisional ballot

JA_001942

USA_00016824

voted by the person may be placed and must include:
        (1)  a space for entering the identification number of
the provisional ballot voted by the person; and
        (2)  a space for an election officer to indicate
whether the person presented a form of identification described by
Section 63.0101.
    (b-1)  The affidavit form may include space for disclosure of
any necessary information to enable the person to register to vote
under Chapter 13. The secretary of state shall prescribe the form
of the affidavit under this section.
    SECTION 16.  Section 64.012(b), Election Code, is amended to
read as follows:
    (b)  An offense under this section is a felony of the second
[third] degree unless the person is convicted of an attempt. In
that case, the offense is a state jail felony [Class A misdemeanor].
    SECTION 17.  Section 65.054, Election Code, is amended by
amending Subsection (b) and adding Subsection (e) to read as
follows:
    (b)  A provisional ballot shall [may] be accepted [only] if
the board determines that:
        (1)  [,] from the information in the affidavit or
contained in public records, the person is eligible to vote in the
election and has not previously voted in that election; and
        (2)  the person:
            (A)  meets the identification requirements of
Section 63.001(b) at the time the ballot was cast or in the period
prescribed under Section 65.0541; or
            (B)  executes an affidavit under penalty of
perjury stating that:
                (i)  the voter:
                    (a)  is indigent and is unable to
obtain proof of identification without the payment of a fee; or
                    (b)  has a religious objection to being
photographed; and
                (ii)  the voter has not been challenged and
voted a provisional ballot solely because the voter did not meet the
requirements for identification prescribed by Section 63.001(b).
    (e)  In this section, "indigent" has the meaning assigned by
Section 51.941(e), Government Code.
    SECTION 18.  Subchapter B, Chapter 65, Election Code, is
amended by adding Section 65.0541 to read as follows:
    Sec. 65.0541.  PRESENTATION OF IDENTIFICATION FOR CERTAIN
PROVISIONAL BALLOTS. (a)  A voter who is accepted for provisional
voting under Section 63.011 because the voter does not meet the
identification requirements of Section 63.001(b) may, not later
than the sixth day after the date of the election:
        (1)  present a form of identification described by
Section 63.0101 to the voter registrar for examination; or
        (2)  execute an affidavit described by Section
65.054(b)(2)(B) in the presence of the voter registrar.
    (b)  The secretary of state shall prescribe procedures as
necessary to implement this section.
    SECTION 19.  Section 66.0241, Election Code, is amended to
read as follows:
    Sec. 66.0241.  CONTENTS OF ENVELOPE NO. 4.  Envelope no. 4
must contain:
        (1)  the precinct list of registered voters;

USA_00016825

         (2)   the registration correction list;

         (3)   the registration omissions list;

         (4)   any statements of residence executed under Section 63.0011; and

         (5)   any affidavits executed under Section 63.006 [63.007] or 63.011.

     SECTION 20.  Section 521.422, Transportation Code, is amended by amending Subsection (a) and adding Subsection (d) to read as follows:

     (a)  Except as provided by Subsection (d), the [The] fee for a personal identification certificate is:

         (1)  $15 for a person under 60 years of age;

         (2)  $5 for a person 60 years of age or older; and

         (3)  $20 for a person subject to the registration requirements under Chapter 62, Code of Criminal Procedure.

     (d)  The department may not collect a fee for a personal identification certificate issued to a person who states that the person is obtaining the personal identification certificate for the purpose of satisfying Section 63.001(b), Election Code, and does not have another form of identification described by Section 63.0101, Election Code, and is:

         (1)  who is a registered voter in this state and presents a valid voter registration certificate; or

         (2)  who is eligible for registration under Section 13.001, Election Code, and submits a registration application to the department.

     SECTION 21.  Sections 63.007 and 63.008, Election Code, are repealed.

     SECTION 22.  Effective September 1, 2011:

         (1)  as soon as practicable, the secretary of state shall adopt the training standards and develop the training materials required to implement the change in law made by this Act to Section 32.111, Election Code; and

         (2)  as soon as practicable, the county clerk of each county shall provide a session of training under Section 32.114, Election Code, using the standards adopted and materials developed to implement the change in law made by this Act to Section 32.111, Election Code.

     SECTION 23.  The change in law made by this Act in amending Section 64.012(b), Election Code, applies only to an offense committed on or after January 1, 2012.  An offense committed before January 1, 2012, is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.  For purposes of this section, an offense is committed before January 1, 2012, if any element of the offense occurs before that date.

     SECTION 24.  Effective September 1, 2011, state funds disbursed under Chapter 19, Election Code, for the purpose of defraying expenses of the voter registrar's office in connection with voter registration may also be used for additional expenses related to coordinating voter registration drives or other activities designed to expand voter registration. This section expires January 1, 2013.

     SECTION 25.  Except as otherwise provided by this Act, this Act takes effect January 1, 2012.

USA_00016826

USA_00016827

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 82ND LEGISLATIVE REGULAR SESSION**
Revision 1

**March 21, 2011**

**TO:** Honorable Dennis Bonnen, Chair, House Committee on Voter Identification & Voter Fraud, Select

**FROM:** John S O'Brien, Director, Legislative Budget Board

**IN RE:** SB14 by Fraser (Relating to requirements to vote, including presenting proof of identification; providing criminal penalties.), **Committee Report 2nd House, Substituted**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB14, Committee Report 2nd House, Substituted: a negative impact of ($2,024,000) through the biennium ending August 31, 2013.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five-Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2012 | ($2,024,000) |
| 2013 | $0 |
| 2014 | $0 |
| 2015 | $0 |
| 2016 | $0 |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable Savings/(Cost) from *General Revenue Fund* 1 |
|---|---|
| 2012 | ($2,024,000) |
| 2013 | $0 |
| 2014 | $0 |
| 2015 | $0 |
| 2016 | $0 |

**Fiscal Analysis**

The bill would exempt certain disabled voters from presenting additional identification for voting, other than the voter registration certificate, if the voter submits written document from the United States Social Security Administration evidencing the applicant has a disability or the Department of Veterans Affairs evidencing the applicant has a disability rating of at least 50 percent along with a statement that the applicant does not have an acceptable form of identification. The bill would also require voter registration certificates to contain an indication that the disabled voter is exempted from presenting additional identification, other than the voter registration certificate, before being accepted for voting.

The bill would require the voter registrar of each county to provide a notice of identification requirements for voting with each initial voter registration certificate or renewal registration certificate issued. The Secretary of

USA_00016828

State (SOS) and the voter registrar of each county that maintains a website would be required to post on their websites, in each language in which voter registration materials are available, a notice of the identification requirements, and county clerks would be required to post a physical copy in each language voter registration materials are available. SOS would be required to prescribe the wording of these notices. SOS would also be required to establish a statewide effort to educate voters regarding the identification requirements for voting.

The bill would require training standards to include instructions on the acceptance and handling of the identification presented by a voter to an election officer and each election clerk would be required to complete this training.

The presiding judge at each polling place would be required to post in a prominent location outside of the location a list of the acceptable forms of identification and the list would have to be separate from any other notices. The Secretary of State would be required to prescribe the wording for written notifications of the identification requirements for voting beginning with elections held after January 1, 2012 and election officers would be required to provide this written notification of voting identification requirements to voters who do not meet identification requirements. This section would expire September 1, 2017.

The Secretary of State would be required to prescribe procedures for voters who provisionally vote without proper identification to present proof of identification to the voter registrar not later than the sixth day after the date of the election.

The Department of Public Safety (DPS) would be prohibited from collecting a fee for a personal identification certificate issued to a person who states that they are obtaining the personal identification certificate to meet voting identification requirements and does not have another form of acceptable identification and that person meets certain other voter registration criteria.

The bill would change an offense under this section after January 1, 2012 to a second degree felony from a third degree felony unless the person is convicted of an attempt, in which case, the offense would be a state jail felony instead of a Class A misdemeanor.

The bill would repeal Sections 63.007 and 63.008 of the Election Code related to voters with incorrect certificates who are not on the voter list and voters without certificates who are not on the voter list.

The Secretary of State (SOS) would be required to adopt the training standards and to develop training materials as soon as practicable after September 1, 2011. Each county clerk would be required to provide a session of training using the standards adopted by and the materials developed by SOS as soon as practicable as well.

The bill would expand the uses of state funds disbursed under Chapter 19 of the Election Code to include additional expenses related to coordinating voter registration drives or other activities designed to expand voter registration. This section would expire January 1, 2013.

Sections 3, 5, 6, 7, 11, 22, and 24 pertaining to providing notice of voter identification requirements, providing voter identification training, providing voter education to the public, and expanding the uses of voter registration funds would be effective September 1, 2011. The remainder of the bill would be effective January 1, 2012.

## Methodology

The fiscal impact of the bill excluding technology costs is estimated to be $2,000,000 million for fiscal year 2012 out of the General Revenue Fund. The estimate includes $0.5 million to research and develop ways to inform the public of the new identification requirements. Additional costs are estimated to be $1.5 million for media advertisements: television ($750,000), radio ($300,000), print ($300,000), and internet ($150,000). The Secretary of State indicates that federal funds associated with the Help America Vote Act (HAVA) may be available for use but the agency would first need to verify this with the federal government.

The Secretary of State would also be required to prescribe the wording for voter identification requirement notifications in each language voter registration materials are available and develop training materials on voter identification requirements. It is assumed that any fiscal implication associated with these responsibilities could be absorbed within existing resources.

The fiscal impact of expanding the uses of funds disbursed under Chapter 19 of the Election Code to include coordinating voter registration drives or other activities designed to expand voter registration is unknown because it is not known how many voter registration drives or other activities designed to expand voter

USA_00016829

registration would occur.

The fiscal impact of the revenue loss from the prohibition of DPS to collect a fee for a personal identification certificate issued to a person seeking the certificate for the purpose of voting is unknown because it is not known how many people would make a request for a personal identification certificate for voting.

**Technology**

The technology fiscal impact of the bill is estimated to be $24,000 for programming costs associated with creating an indicator on voter registration certificates for voters with certain disabilities. The notification would inform election officers at polling places that voters with certain disabilities are exempted from presenting additional identification other than the voter registration certificate. The Secretary of State indicates that federal funds associated with the Help America Vote Act (HAVA) may be available for use but the agency would first need to verify this with the federal government.

**Local Government Impact**

The bill would require counties to notify registered voters of changes online if the county maintains a website, at polling locations, and included with voter registration certificates. Election clerks would be required to undergo training regarding accepted forms of voter identification.

According to Texas Association of Counties (TAC), Tarrant County anticipated a one-time cost to reprint provisional balloting materials and provide new notices ($8,000); Bexar County stated that due to limited space on current registration certificates, larger cards would be necessary resulting in additional costs for cards, printing and postage ($381,256); however, Comal County reported the costs associated with the provisions of the bill could be absorbed within existing resources.

**Source Agencies:** 307 Secretary of State, 405 Department of Public Safety
**LBB Staff:** JOB, JT, MS, BTA, SD, KKR

USA_00016830

# BILL ANALYSIS

C.S.S.B. 14
By: Fraser
Voter Identification & Voter Fraud, Select
Committee Report (Substituted)

## BACKGROUND AND PURPOSE

Ensuring the integrity of the election process by allowing registered voters to vote and preventing ineligible voters from voting is one goal of the Texas election process. Using the voter registration certificate as a way for the voter to indicate, when offering to vote, that the voter is registered is a step forward toward ensuring the integrity of this process. However, relying on this method may provide opportunities for voter fraud as the voter registration certificate does not necessarily verify the identity of the person presenting the certificate. Options are limited for an election judge who, on being presented a voter registration certificate for voting, suspects the voter is not the person identified on the certificate. C.S.S.B. 14 attempts to further ensure the integrity of the election process by addressing requirements to vote, including presenting a form of photo identification.

## RULEMAKING AUTHORITY

It is the committee's opinion that this bill does not expressly grant any additional rulemaking authority to a state officer, department, agency, or institution.

## ANALYSIS

C.S.S.B. 14 amends the Election Code to require a voter, on offering to vote, to present to an election officer at the polling place one acceptable form of photo identification. The bill, in a provision establishing the regular procedure for accepting a voter, removes language relating to the requirement that the voter present the voter's voter registration certificate. The bill makes related conforming changes. The bill includes in the requirement to accept for voting a voter whose name is on the precinct list of registered voters that the voter's identity can be verified from the required form of documentation presented.

C.S.S.B. 14 establishes the following documentation as acceptable forms of photo identification for voting:

- a driver's license or personal identification card issued to the person by the Department of Public Safety (DPS) that has not expired or that expired no earlier than 60 days before the date of presentation;
- a United States military identification card that contains the person's photograph that has not expired or that expired no earlier than 60 days before the date of presentation;
- a United States citizenship certificate issued to the person that contains the person's photograph;
- a United States passport issued to the person that has not expired or that expired no earlier than 60 days before the date of presentation; or
- a license to carry a concealed handgun issued to the person by DPS that has not expired or that expired no earlier than 60 days before the date of presentation.

82R 14074
Substitute Document Number: 82R 11733

11.80.717

1

TX_00003589
USA_00016831

C.S.S.B. 14 removes the following documentation as acceptable proof of identification for voting:

- a driver's license or personal identification card issued to the person by DPS with no condition regarding its expiration;
- a document similar to a driver's license or personal identification card issued to the person by an agency of another state with no condition regarding its expiration;
- an unspecified form of identification containing the person's photograph that establishes the person's identity;
- a birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity;
- unspecified United States citizenship papers issued to the person with no condition regarding the person's photograph;
- official mail addressed to the person by name from a governmental entity;
- a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or
- any other form of identification prescribed by the secretary of state.

C.S.S.B. 14 requires an applicant for voter registration who wishes to receive an exemption from certain voter identification requirements on the basis of disability to include with the person's application written documentation from the United States Social Security Administration evidencing the applicant has been determined to have a disability or from the United States Department of Veterans Affairs evidencing the applicant has a disability rating of at least 50 percent, and a statement in a form prescribed by the secretary of state that the applicant does not have an acceptable form of identification. The bill requires a voter registration certificate issued to a voter who meets the certification requirements for a disability exemption to contain an indication that the voter is exempt from the requirement to present identification other than the registration certificate before being accepted for voting.

C.S.S.B. 14 makes voter identification requirements inapplicable to a voter who presents the voter's voter registration certificate on offering to vote and was 70 years of age or older on January 1, 2012, as indicated by the date of birth on the certificate, or is disabled and the certificate contains the indication that the voter is exempt from voter identification requirements on the basis of disability.

C.S.S.B. 14 establishes that a voter who, when offering to vote, presents the required identification documentation but whose name is not on the precinct list of registered voters must be accepted for voting if the voter also presents a voter registration certificate indicating that the voter is currently registered in the precinct in which the voter is offering to vote or in a different precinct in the same county as the precinct in which the voter is offering to vote and the voter executes an affidavit. The bill requires the affidavit to state that the voter is a resident of the precinct in which the voter is offering to vote or is otherwise entitled by law to vote in that precinct, was a resident of the precinct in which the voter is offering to vote at the time the information on the voter's residence address was last provided to the voter registrar, did not deliberately provide false information to secure registration in a precinct in which the voter does not reside, and is voting only once in the election. The bill includes entering the voter's name on the registration omissions list among the actions an election officer is required to perform after the voter is accepted.

C.S.S.B. 14 requires a voter to be accepted for voting if the election officer, in making a

82R 14074                                                                                           11.80.717
Substitute Document Number: 82R 11733

2

TX_00003590
JA_001950

TX_00003590

USA_00016832

determination of whether the voter's name on the documentation is on the list of registered voters for the precinct, determines that the voter's name is substantially similar to but does not match exactly with the name on the precinct list of registered voters and the voter submits an affidavit stating that the voter is the person on the precinct list of registered voters.

C.S.S.B. 14 requires an election officer to inform a voter who is not accepted for voting because of failure to present the required identification of the voter's right to cast a provisional ballot and provide the voter with written information, in a form prescribed by the secretary of state, that lists the requirements for identification; states the procedure for presenting identification; includes a map showing the location where identification must be presented; and includes notice that even if all procedures are followed, there is no guarantee that the voter's provisional ballot will be accepted. The bill includes in the required spaces on the form of the affidavit for casting a provisional ballot a space for an election officer to indicate whether the person presented an acceptable form of photo identification and makes conforming and nonsubstantive changes.

C.S.S.B. 14 authorizes a voter who is accepted for provisional voting because the voter does not meet the identification requirements, to present, not later than the sixth day after the date of the election, the required form of identification to the voter registrar for examination or execute in the presence of the voter registrar an affidavit under penalty of perjury stating that the voter is indigent and is unable to obtain proof of identification without the payment of a fee or has a religious objection to being photographed and the voter has not been challenged and voted a provisional ballot solely because the voter did not meet the identification requirements. The bill requires the secretary of state to prescribe procedures as necessary to implement the identification and affidavit requirements for such a provisional ballot. The bill provides for the meaning of "indigent" by reference to the Government Code.

C.S.S.B. 14 adds as a requirement for a provisional ballot to be accepted by the early voting ballot board the board's determination that the person meets the voter identification requirements at the time the ballot was cast or not later than the sixth day after the date of the election or executes an affidavit under penalty of perjury stating that the voter is indigent and is unable to obtain proof of identification without the payment of a fee or has a religious objection to being photographed and the voter has not been challenged and voted a provisional ballot solely because the voter did not meet the identification requirements .

C.S.S.B. 14 requires the voter registrar of each county to provide notice of the identification requirements for voting and a detailed description of those requirements with each original or renewal voter registration certificate issued and requires the secretary of state to prescribe the wording of that notice. The bill requires the secretary of state and the voter registrar of each county that maintains a website to provide notice of the identification requirements for voting on each entity's respective website in each language in which voter registration materials are available and requires the secretary of state to prescribe the wording of that notice. The bill requires the secretary of state to conduct a statewide effort to educate voters regarding the identification requirements for voting. The bill requires the county clerk of each county to post in a prominent location at the clerk's office a physical copy of the prescribed notice of the identification requirements for voting in each language in which voter registration materials are available. The bill requires the training standards adopted by the secretary of state for presiding or alternate election judges to include provisions on the acceptance and handling of the identification presented by a voter to an election officer and requires each election clerk to complete that part of the training program. The bill requires, as soon as practicable, that the secretary of state adopt the training standards and develop the training materials and the county clerk of each county provide a session of training using those standards and materials as required by the bill. The bill makes its provisions relating to notice by the registrar, education, and training regarding identification requirements for voting effective September 1, 2011.

C.S.S.B. 14 requires the presiding judge to post in a prominent place on the outside of each polling location a list of the acceptable forms of identification. The bill requires the list to be

82R 14074
Substitute Document Number: 82R 11733

11.80.717

TX_00003591
JA_001951

TX_00003591

USA_00016833

printed using a font that is at least 24-point. The bill requires the notice of acceptable forms of identification to be posted separately from any other notice required by state or federal law.

C.S.S.B. 14 increases the penalty for an illegal voting offense from a third degree felony to a second degree felony and increases the penalty for an attempted illegal voting offense from a Class A misdemeanor to a state jail felony. The bill makes this change applicable only to an offense committed on or after January 1, 2012.

C.S.S.B. 14 amends the Transportation Code to prohibit DPS from collecting a fee for a personal identification certificate issued to a person who states that the person is obtaining the certificate for the purpose of satisfying the requirement for photographic identification for voting and does not have another form of the required identification if the person is a registered voter in Texas and presents a valid voter registration certificate or is eligible for voter registration and submits a voter registration application to DPS. The bill makes a related conforming change.

C.S.S.B. 14 amends the Election Code to add a temporary provision, effective September 1, 2011, and set to expire September 1, 2017, requiring an election officer to distribute written notice of the identification that will be required for voting beginning with elections held after January 1, 2012, and information on obtaining a personal identification certificate from DPS without a fee, as provided by the bill, to each voter who, when offering to vote, presents a form of identification that will not be sufficient for acceptance as a voter beginning with those elections. The bill requires the secretary of state to prescribe the wording of the notice and establish guidelines for its distribution.

C.S.S.B. 14 adds a temporary provision, effective September 1, 2011, and set to expire January 1, 2013, to establish that state funds disbursed for the purpose of defraying expenses of the voter registrar's office in connection with voter registration may also be used for additional expenses related to coordinating voter registration drives or to other activities designed to expand voter registration.

C.S.S.B. 14 repeals the following provisions of the Election Code:

- Section 63.007, relating to a voter with an incorrect certificate who is not on the precinct list of registered voters
- Section 63.008, relating to a voter without a certificate who is on the precinct list of registered voters

**EFFECTIVE DATE**

Except as otherwise provided, January 1, 2012.

**COMPARISON OF ORIGINAL AND SUBSTITUTE**

C.S.S.B. 14 differs from the original by requiring an applicant for voter registration who wishes to receive an exemption from the identification requirements for voting on the basis of disability to include with the person's application written documentation from the United States Social Security Administration evidencing the applicant has been determined to have a disability or from the United States Department of Veterans Affairs evidencing the applicant has a disability rating of at least 50 percent and a statement in a form prescribed by the secretary of state that the applicant does not have an acceptable form of identification, whereas the original requires the applicant to include a certification from a physician that the person has a disability as defined under provisions of the Labor Code.

C.S.S.B. 14 differs from the original by requiring a list of acceptable forms of identification to be printed using a font that is at least 24-point, whereas the original requires both a notice and list

TX_00003592
JA_001952

TX_00003592

USA_00016834

relating to acceptable forms of identification to be printed using a font that is at least 24-point.

C.S.S.B. 14 differs from the original, in a provision requiring a voter to be accepted for voting if the voter's name is on the registered voters precinct list and the voter's identity can be verified from the presentation of a required form of identification, by specifying that the acceptance of the voter for voting is based on a determination by the election officer.

C.S.S.B. 14 differs from the original, in a provision requiring a voter whose name is not on the registered voters precinct list to be accepted for voting if, among other conditions, the voter presents a voter registration certificate indicating current registration in a precinct other than the one in which the voter is offering to vote, by specifying that the different precinct to which the provision applies is a precinct in the same county as the precinct in which the voter is offering to vote. The substitute differs from the original by requiring the election officer, after accepting the voter for voting, to enter the voter's name on the registration omissions list, whereas the original requires entry of the precinct of the voter's registration as indicated by the voter's registration certificate.

C.S.S.B. 14 adds a condition not in the original for the acceptance of a concealed handgun license as a form of photographic identification for the purpose of voting that the license has not expired or expired no earlier than 60 days before the date of presentation.

C.S.S.B. 14 adds a provision not in the original to include as a requirement that a provisional ballot be accepted if the voter meets the identification requirements at the time the ballot was cast. The substitute differs from the original, in the provision requiring an affidavit executed by the voter to provide the reasons the voter is unable to provide proof of identification, by specifying the affidavit states the voter has not been challenged and voted a provisional ballot solely because the voter did not meet the identification requirements, whereas the original specifies the voter has not been challenged or required to vote a provisional ballot for any other reason.

C.S.S.B. 14 adds a provision not in the original, as a condition for the prohibition against the Department of Public Safety collecting a fee for a personal identification certificate, that the person states the person does not have another acceptable form of identification.

C.S.S.B. 14 omits a provision in the original making the changes in law under the bill's provisions contingent on a specific appropriation for the implementation of the changes.

C.S.S.B. 14 differs from the original by making nonsubstantive changes.

TX_00003593
JA_001953

TX_00003593

USA_00016835

PL029
9/2/2014
2:13-cv-00193

HOUSE
RESEARCH
ORGANIZATION bill analysis     3/23/2011

SB 14
Fraser, et al. (Harless, et al.)
(CSSB 14 by Harless)

| | |
|---|---|
| SUBJECT: | Requiring a voter to present photo identification |
| COMMITTEE: | Voter Identification and Voter Fraud, Select — committee substitute recommended |
| VOTE: | (*After recommitted:*) <br> 6 ayes — Bonnen, Aliseda, Harless, Hilderbran, Peña, L. Taylor <br><br> 2 nays — Veasey, Hochberg <br><br> 1 absent — Gutierrez |
| SENATE VOTE: | On final passage, January 26 — 19-11 (Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini) |
| WITNESSES: | For — Rebecca Bradford, Texas Federation of Republican Women; Kenneth Buelter, Goliad County Republican Party; Russ Duerstine, Tom Green County G.O.P and Election Support Association of Tom Green County; William (Butch) Marsalis, Panola County Conservatives; Tonja "Michelle" Smith, Concerned Women for America; B.R. (Skipper) Wallace, Texas Republican County Chairman's Association; and 14 others representing themselves; (*Registered, but did not testify:* Allen Blakemore, Steven Hotze, Conservative Republicans of Texas; Catherine Engelbrecht, King Street Patriots; Travis Griffin, Republican Party of Texas; Cheryl Johnson, Sheryl Swift, Galveston County Tax Office; John Marler, Williamson County Liberty Alliance; Karen Marsalis, Panola County Republican Women; Bill Moore, Organizing for Liberty, Inc.; Linda Rogers, Texas Republican Co. Chairmen's Association; Jonathan Saenz, Liberty Institute; and 28 others representing themselves) <br><br> Against — Gary Bledsoe, Texas NAACP; Sumit DasGupta, Network of Asian American Organizations; Luis Figueroa, Mexican American Legal Defense and Educational Fund (MALDEF); Anita Privett, League of Women Voters of Texas; Sonia Santana, ACLU-TX; Tova Wang, DEMOS; Andrew Joseph; Ramey Ko; Justin Levitt; (*Registered, but did not testify:* Joseph Arabie, Rene Lara, Texas AFL-CIO; Juan Flores, La Fe Policy Research and Education Center; Anthony Gutierrez, Boyd Richie, Texas Democratic Party; Austin Kaplan, The Liberal Austin Democrats; Genevieve Van Cleve, Capital Area Democratic Women; David |

USA_00016836

SB 14
House Research Organization
page 2

Weinberg, Texas League of Conservation Voters; Mary Brown; Tracy Ekstrand; Huey Fischer; Katherine Haenschen; Kathleen Hill; Katrina Meredith)

On — Rebecca Davio, Department of Public Safety; Jessica Gomez, Disability Rights Texas, formerly Advocacy, Inc.; David Maxwell, Office of the Attorney General; Ann McGeehan, Elections Division, Office of the Secretary of State; John O'Brien, Legislative Budget Board; John Woods, Student Government, University of Texas at Austin; Brian Kemp; Toby Moore; Chris Ward; Thomas Wheeler

BACKGROUND: Current law requires a voter to present a voter registration certificate to an election officer before voting. If the voter's name is on the precinct list of registered voters, the voter is allowed to vote. A voter who does not present a voter registration certificate but whose name is on the precinct list of registered voters must be allowed to vote if the voter signs an affidavit stating that he or she does not have the certificate and presents one of the following forms of identification:

- a driver's license or personal identification card issued by the Department of Public Safety (DPS) or a similar document issued by an agency of another state, regardless of whether the license or card has expired;
- a form of photo identification that establishes the voter's identity;
- a birth certificate or other document confirming birth that is admissible in a court of law and establishes the voter's identity;
- U.S. citizenship papers or a U.S. passport;
- official mail addressed to the voter from a government entity;
- a copy of a current utility bill, bank statement, paycheck, government check, or other government document that shows the name and address of the voter; or
- any other form of identification prescribed by the secretary of state.

In 2002, Congress enacted the federal Help America Vote Act (HAVA) (42 U.S.C. sec. 15301 et seq.), which requires first-time voters registering by mail to present, with the registration application or at the polls, one of the following forms of identification:

- a current and valid photo identification (a copy if voting by mail); or

USA_00016837

SB 14
House Research Organization
page 3

- a copy of a current utility bill, bank statement, paycheck, government check, or other government document that shows the voter's name and address.

Voters who fail to produce the proper identification at the polls may cast a provisional ballot by executing an affidavit stating that the person is registered in the precinct and is eligible to vote. The local early voting ballot board verifies and counts provisional ballots within a week after the election. It examines the affidavits and may accept and count a provisional ballot only if it determines from the affidavit or public records that the person was eligible to vote and had not previously voted.

Under Election Code, sec. 64.012, illegal voting includes knowingly voting or attempting to vote more than once, when ineligible, when impersonating another person, or when marking another person's ballot without that person's consent. The offense is a third-degree felony (two to 10 years in prison and an optional fine of up to $10,000), and an attempted offense is a class A misdemeanor (up to one year in jail and/or a maximum fine of $4,000).

DIGEST:

CSSB 14 would require a voter to present to an election officer one form of photo identification at the polling place. Certain disabled voters and voters aged 70 years or older would be exempt from the photo ID requirement.

The bill would require advance notice of the identification requirements, voter education for the public, enhanced training for election judges and clerks, and provisional ballots for voters who lacked the necessary identification. It would enhance the penalties for illegal voting and authorize free DPS identification cards for voting.

**Acceptable photo identification.** Acceptable forms of photo ID would include:

- a driver's license or personal identification card issued by DPS that was current or had expired no more than 60 days earlier;
- a U.S. military identification card that contained a photograph that was current or had expired no more than 60 days earlier;
- a U.S. citizenship certificate that contained a photograph;
- a U.S. passport that was current or had expired no more than 60 days earlier; or

USA_00016838

SB 14
House Research Organization
page 4

- a concealed handgun license issued by DPS that was current or had expired no more than 60 days earlier.

A birth certificate or other document confirming birth, a utility bill, or a bank statement no longer would be an acceptable form of identification.

**Matching ID with registered voter names.** A voter whose name was on the list of registered voters for the precinct and who presented the documentation described above would be allowed to vote. If the election official decided that a voter's name on the documentation was substantially similar to, but not an exact match with, the name on the list, the voter would have to submit an affidavit stating that he or she was the person on the list before being allowed to vote.

A voter who presented the required documentation but was not on the list of registered voters for the precinct could vote if he or she presented a voter registration certificate proving current registration in that precinct or proving current registration in a different precinct but in the same county if accompanied by an affidavit stating that the voter:

- was a resident of the precinct in which he or she attempted to vote or was otherwise legally entitled to vote in that precinct;
- was a resident of the precinct when the residence information was provided to the voter registrar;
- did not deliberately provide false information to obtain registration in a precinct where the voter did not reside; and
- was voting only once in the election.

After accepting the voter, the election officer would have to indicate acceptance of the voter on the poll list and enter the voter's name on the registration omissions list.

**Exemptions.** The bill would exempt from the photo ID requirement disabled voters who had a voter registration certificate indicating they qualified for the exemption. A voter registration applicant requesting this exemption would have to provide written documentation from the U.S. Social Security Administration confirming disability or from the U.S. Department of Veterans Affairs showing a disability rating of at least 50 percent. The applicant also would have to provide a statement that he or she did not have a form of the required identification.

USA_00016839

SB 14
House Research Organization
page 5

The bill also would exempt from the photo ID requirement voters who were 70 years old by January 1, 2012, and who showed their voter registration certificates before voting.

**Notice and training.** Before the polls opened, the presiding judge would be required to post prominently outside of each polling place a list of the acceptable forms of photo ID. The information would have to be in at least 24-point font and separate from any other legally required notices.

Effective September 1, 2011, the secretary of state would have to develop training standards and materials on the acceptance and handling of photo ID as soon as practicable. The county clerk also would have to provide the training sessions for election judges and clerks as soon as practicable.

**Provisional ballots**. Voters who did not have a photo ID, in addition to those without a voter registration certificate who were not on the precinct list, would be allowed to cast a provisional ballot. The election officer would have to inform any voters not permitted to vote of their right to cast a provisional ballot and would have to provide in writing the identification requirements, the procedure for presenting the required identification, a map of where to present the identification, and notice that even if all procedures were followed, the provisional ballot would not necessarily be accepted.

A voter seeking to cast a provisional ballot would have to sign an affidavit stating that the voter was registered in the precinct and eligible to vote. The affidavit would have to include space for the election officer to indicate if the voter presented an acceptable form of photo ID.

A voter accepted for provisional voting for not having a photo ID would have six days after the election to present the required identification to a voter registrar for examination. Alternatively, the voter could execute an affidavit – under penalty of perjury – in the presence of a voter registrar claiming either indigence and inability to obtain identification without paying a fee or a religious objection to being photographed. The affidavit also would have to indicate that the voter was otherwise eligible to vote and had voted a provisional ballot solely because he or she lacked the required identification.

The early voting ballot board would have to accept a provisional ballot if it determined that in addition to being eligible to vote in the election, a voter

USA_00016840

SB 14
House Research Organization
page 6

met the identification requirements when the ballot was cast or within six days after the election, or if the voter executed the required affidavit.

**No charge for DPS ID for voters.** CSSB 14 would amend the Transportation Code, sec. 521.422 to prohibit DPS from collecting a fee for a personal identification certificate issued to an eligible voter who had requested the identification certificate to comply with the voter identification requirements and who did not have another form of the required identification.

**Illegal voting offense.** CSSB 14 would make illegal voting a second-degree felony (two to 20 years in prison and an optional fine of up to $10,000) rather than the current third degree felony. Attempted illegal voting would be a state jail felony (180 days to two years in a state jail and an optional fine of up to $10,000) rather than the current class A misdemeanor. The change in penalty for illegal voting would apply only to an offense committed on or after January 1, 2012.

**Voter education and notice of identification requirements**. Beginning September 1, 2011, each voter registrar would be required to notify voters of the identification requirements and describe those requirements when issuing each new or renewed voter registration certificate.

The secretary of state and the voter registrar of each county that maintained a website would have to provide online notice of the identification requirements. The secretary of state would be required to conduct a statewide effort to educate voters about the identification requirements, and each county clerk would be required to post prominently at the clerk's office a physical copy of the required notice.

Beginning September 1, 2011, an election officer would have to provide any voter who presented identification that did not comply with CSSB 14 with written notice of the identification requirements scheduled to begin with elections held after January 1, 2012, and information on how to obtain free identification. This section would expire September 1, 2017.

By September 1, 2011, state funds dispersed under Election Code, ch. 19 to finance voter registration also could be used for additional expenses related to coordinating or expanding voter registration. This section would expire January 1, 2013.

USA_00016841

SB 14
House Research Organization
page 7

The bill would repeal regulations related to voter registration certificate errors and would make conforming changes.

The bill would take effect January 1, 2012.

SUPPORTERS
SAY:

CSSB 14 is commonsense legislation that would strengthen the election process. The bill would deter voter fraud, keep ineligible voters from voting, make voting correspond with other transactions that require photo ID, and restore and enhance public confidence in elections, which would promote higher turnout. Requiring most voters to show a government-issued photo ID and increasing the criminal penalty for voter fraud would help ensure the integrity of elections. The bill would guarantee continued access to the polls by providing exceptions for certain voters such as seniors and disabled persons and by authorizing free ID cards for eligible voters who lack a photo ID. In its interim report to the 82nd Legislature, the Texas House Committee on Elections recommended the enactment of legislation requiring voters to present photo ID at the polls.

Voter fraud drives honest citizens out of the democratic process and breeds distrust of government. Many everyday circumstances require citizens to present a photo ID, including air travel and cashing a check. Such safeguards benefit our society and enhance our security. When the deceased or other unqualified individuals are on the voter rolls, illegal votes may be cast, canceling out legitimate votes. Although real, voter impersonation is hard to prove because of existing law. Election officials who lack the authority to dispute a voter's identity hesitate to accuse someone of voting illegally. Since voters are not required to prove their identities at the polls, anyone can vote with anyone else's voter certificate. This lax screening process makes it impossible to know how many ineligible voters slip through the system. Stricter requirements would prevent people from voting with fake voter registration certificates and from voting more than once.

Even a limited incidence of voter fraud could tip a close or disputed election. The perception of possible fraud contributes to low confidence in the system. While increasing the criminal penalties for voter fraud, CSSB 14 also would go a long way toward deterring and preventing voter fraud before it occurred by requiring photo identification.
If the public's faith in the legitimacy of elections is bolstered, voter turnout will increase. Indiana and Georgia have the strictest voter ID requirements in the country, but they experienced record voter turnout in

USA_00016842

Case 2:13-cv-00193 Document 660-28 Filed on 11/11/14 in TXSD Page 30 of 53
Case 1:12-cv-00128-RMC-DST-RLW Document 208-3 Filed 06/20/12 Page 155 of 245

SB 14
House Research Organization
page 8

2008, including among minorities. Georgia's voter turnout has been on the rise since 2004, and the state's voter ID law has not disrupted this upward trend.

Stricter identification requirements would not impose an unreasonable burden on voters, since the bill's requirements would be no more burdensome than the act of voting. Concerns about the bill's constitutionality are unfounded because the U.S. Supreme Court upheld Indiana's photo ID law in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008) when it ruled that requiring a photo ID imposes only a limited burden on a voter's rights and is justified by the state's interest in improving election procedures and deterring fraud. Furthermore, although voter ID laws in other states have been heavily litigated, plaintiffs have been unable to produce a single individual who either did not already have an ID or could not easily obtain one.

The bill's effective date of January 1, 2012, would allow sufficient time to educate citizens and election officials about the new requirements. Concerns about the cost of voter education should be assuaged by the secretary of state's prediction that ample federal HAVA funds exist for this purpose. Although cost is an important issue, the integrity of the election process is more precious than any dollar amount.

**OPPONENTS SAY:**

CSSB 14 would unnecessarily complicate election procedures and would disenfranchise voters by creating a substantial obstacle to the right to vote. Eligible voters should not be needlessly hassled by the state and discouraged or intimidated from exercising their fundamental right to vote without legitimate justification, yet there is no proof that the barriers to voting that this bill would erect are needed at all. This bill would be an extreme, costly solution in search of a problem not proven to exist.

There is little or no evidence of the voter fraud that this bill purports to address. No proof exists of organized, widespread voter fraud at the polls, and any recent individual cases of voter impersonation are anecdotal at best. A 2009 interim report by the Texas House Elections Subcommittee on Mail-in Ballot Integrity found no evidence of noncitizens abusing the electoral system. Furthermore, in its interim report to the 82nd Legislature, the Texas House Committee on Elections acknowledged that based on testimony from the Texas Attorney General's Office, evidence of voter fraud is lacking. Such findings show that the current law is working and that this bill is unnecessary and unjustified.

USA_00016843

SB 14
House Research Organization
page 9

According to a 2006 interim report by the Texas Senate State Affairs
Committee, almost all evidence of voter fraud involves mail-in ballots.
However, this bill would address only voter impersonation at the polls, not
mail-in balloting. Policymakers should examine empirical data to weigh
the tradeoffs between ballot security and ballot access before enacting
laws based on anecdotal data or hearsay.

Texas already has taken steps to minimize fraud by implementing
HAVA's requirements that each state cull its voter registration databases
and remove any voters who are deceased or are convicted of a felony.
Prospective voters already must prove their identity during the registration
process and must swear under penalty of perjury that they are U.S.
citizens.

Since the process of obtaining a photo ID is cumbersome and cost
prohibitive for some citizens, CSSB 14 would suppress voting among
eligible voters. Although voter turnout increased in Indiana and Georgia in
2008, this was attributable to the historic nature of that election rather than
enhanced public confidence caused by voter ID laws.

According to the Brennan Center for Justice, up to 12 percent of eligible
voters nationwide lack a photo ID. The percentage is even higher for
seniors, minorities, people with disabilities, low-income voters, and
students.  Many of those citizens find it hard to obtain such identification
because the required documentation — the ID required to obtain an ID —
often is difficult to get. In Texas, it costs more than $20 for a birth
certificate, which would effectively require some to pay for the right to
vote even if the photo ID itself were free.

Although the bill would allow those who need a photo ID to obtain one
from DPS without charge, those persons still would have to navigate the
state bureaucracy just to secure their right to vote. The bill would inhibit
from voting those in the rural areas of the state where citizens may have to
travel more than 100 miles to a DPS office. There is no DPS office in 77
of Texas' 254 counties. For such residents, voting by mail may not be an
option, because current law allows only those who will be away from their
county during Election Day or early voting or are sick or disabled, age 65
or older, or in jail to vote by mail. Furthermore, the bill would give
election workers too much power and pave the way for discrimination,
since poll workers might not administer identification procedures fairly or
correctly. Slight discrepancies among names or addresses on ID cards,

USA_00016844

SB 14
House Research Organization
page 10

voter registration cards, and the voting rolls – in addition to dated photographs on ID cards – could result in eligible citizens being denied the right to vote.

Although citizens must show proof of their identity when boarding an airplane or renting movies, these activities are not constitutional rights. This bill would give Texas one of most restrictive voter ID law in the nation. By unjustifiably and unduly burdening the exercise of a fundamental right, CSSB 14 would be open to invalidation as unconstitutional by going too far. Although the U.S. Supreme Court upheld Indiana's photo ID law, Indiana's law is less strict and allows voters to use a photo ID issued by any state or federal agency or by a state university. The U.S. Justice Department or a panel of three federal district judges in the District of Columbia are mandated by the Voting Rights Act to examine closely any changes to Texas' voting laws due to the state's history of voter suppression and could invalidate the bill for unjustifiably inhibiting minority voting rights.

The bill's fiscal note of $2 million does not accurately reflect its potential costs. The Legislative Budget Board acknowledged that the number of voters who would seek a free ID card is unknown. During a severe budget crisis, Texas should use its limited resources to investigate real voter fraud and vigorously prosecute violators rather than pursue a costly solution to a nonexistent problem.

OTHER
OPPONENTS
SAY:

Better alternatives exist to address potential election fraud. When executed properly, they would be less burdensome than a photo ID requirement. Signature comparison (comparing signatures used during voter registration and at the polls) has been used to determine legitimate mail-in ballots and could present a reliable alternative.

Texas should consider taking cues from states like Indiana, Michigan, and Georgia, whose less stringent voter ID laws contain photo ID alternatives such as student IDs, expired driver's licenses, or valid employee ID cards with photographs.

Voter turnout in Texas is abysmal, which unlike illegal voting is a proven and demonstrable problem. Texas should enact laws that encourage rather than suppress voting. Allowing voter registration on Election Day ("same-day" or "election-day" registration) has boosted voter turnout in some

USA_00016845

SB 14
House Research Organization
page 11

states. Since HAVA requires each state to create computerized voter lists that can be checked in "real time" for duplications and fraud, same-day registration not only would not increase voter fraud but actually would discourage it.

NOTES:             During floor consideration of SB 14 on March 21, the bill was recommitted to committee on a point of order. The committee reported the bill again, and the committee substitute is unchanged from the earlier version.

The committee substitute differs from the Senate-passed version by requiring disabled voters seeking an exemption to include documentation from the U.S. Social Security Administration or the U.S. Department of Veterans Affairs rather than from a physician. It also specifies that a concealed handgun license used as photo ID would have to be current or have expired no more than 60 days earlier. The substitute revised the language regarding the affidavit executed by a voter who could not provide proof of identification. It omitted a provision in the Senate version that would have made implementation of the bill contingent on a specific appropriation.

The bill's fiscal note anticipates a cost of $2 million in fiscal 2012 to inform the public of the new identification requirements. The secretary of state has indicated that federal HAVA funds may be available for this purpose, pending verification with the federal government. According to the Legislative Budget Board, the state's lost revenue from issuing free photo ID cards cannot be determined because the number of people who would apply for the free cards is unknown.

USA_00016846

Case 2:13-cv-00193 Document 660-28 Filed on 11/11/14 in TXSD Page 34 of 53
1:12-cv-00128-RMC-DST-RLW Document 208-3 Filed 06/20/12 Page 159 of
PL030
9/2/2014
2:13-cv-00193

# HOUSE JOURNAL

EIGHTY-SECOND LEGISLATURE, REGULAR SESSION

### PROCEEDINGS

THIRTY-EIGHTH DAY — MONDAY, MARCH 21, 2011

The house met at 11 a.m. and was called to order by the speaker.

The roll of the house was called and a quorum was announced present (Record 101).

Present — Mr. Speaker; Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Absent — Gutierrez.

The invocation was offered by Representative Landtroop.

The speaker recognized Representative Landtroop who led the house in the pledges of allegiance to the United States and Texas flags.

### REGULAR ORDER OF BUSINESS SUSPENDED

On motion of Representative Landtroop and by unanimous consent, the reading and referral of bills was postponed until just prior to adjournment.

### CAPITOL PHYSICIAN

The speaker recognized Representative Lozano who presented Dr. Luis Calo of Harlingen as the "Doctor for the Day."

TX_00002905
USA_00016847

Case 2:13-cv-00193 Document 660-28 Filed on 11/11/14 in TXSD Page 35 of 53
e 1:12-cv-00128-RMC-DST-RLW Document 208-3 Filed 06/20/12 Page 160 of
906    82nd LEGISLATURE — REGULAR SESSION

The house welcomed Dr. Calo and thanked him for his participation in the Physician of the Day Program sponsored by the Texas Academy of Family Physicians.

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 1).

## NOTICE OF WITHDRAWAL OF ELECTION CONTEST

Upon Representative D. Howard having recused herself from the proceedings and having absented herself from the house chamber, the speaker had read the following statement:

### NOTICE OF WITHDRAWAL
### OF ELECTION CONTEST FOR THE OFFICE
### OF THE TEXAS HOUSE OF REPRESENTATIVES, DISTRICT 48

To the Honorable Speaker of the House of Representatives for the State of Texas:

COMES NOW, Dan Neil, Contestant in the above-styled cause of action, against Donna Howard, Contestee, and files this Notice of Withdrawal of Election Contest.

WHEREFORE, PREMISES CONSIDERED, Contestant Dan Neil withdraws his contest in House District 48.

> Respectfully submitted,
> BEIRNE, MAYNARD & PARSONS L.L.P.
> Joseph M. Nixon
> State Bar No. 15244800
> James E. "Trey" Trainor, III
> State Bar No. 24042052
> 401 W. 15th Street, Suite 845
> Austin, Texas 78701
> Telephone: (512) 623-6700
> Facsimile: (512) 623-6701
>
> Donna Garcia Davidson
> State Bar No. 00783931
> ATTORNEY AND COUNSELOR AT LAW
> P.O. Box 12131
> Austin, Texas 78711
> Telephone: (512) 775-7625
> ATTORNEYS FOR DAN NEIL

## CERTIFICATE OF SERVICE

I certify that on the 18th day of March, 2011, a true and correct copy of the foregoing document has been sent via electronic mail and facsimile transmission to Donna Howard, by and through her attorneys at the law firm of Ray, Wood, & Bonilla, 2700 Bee Caves Road, Austin, Texas, 78746.

> Joseph M. Nixon

TX_00002906

USA_00016848

Case 2:13-cv-00193 Document 660-28 Filed on 11/11/14 in TXSD Page 36 of 53
e 1:12-cv-00128-RMC-DST-RLW Document 208-3 Filed 06/20/12 Page 161 of
Monday, March 21, 2011 HOUSE JOURNAL — 38th Day 907

Representative D. Howard was readmitted to the house chamber and announced present.

## HR 500 - PREVIOUSLY ADOPTED
### (by Hardcastle)

The chair laid out and had read the following previously adopted resolution:

**HR 500**, In memory of Texas Department of Public Safety Senior Corporal David Ralph Slaton of Bowie.

On motion of Representative Geren, the names of all the members of the house were added to **HR 500** as signers thereof.

## INTRODUCTION OF GUESTS

The speaker recognized Representative Hardcastle who introduced family members and friends of Senior Corporal David Ralph Slaton.

(Price in the chair)

## FIVE-DAY POSTING RULE SUSPENDED

Representative Gallego moved to suspend the five-day posting rule and all necessary rules to allow the Committee on Criminal Jurisprudence to consider **HB 2482** at 10:30 a.m. or upon final adjournment tomorrow in JHR 120.

The motion prevailed.

Representative S. Miller moved to suspend the five-day posting rule to allow the Committee on Homeland Security and Public Safety to consider **HB 1810** at 2 p.m. or upon final adjournment tomorrow in E1.026.

The motion prevailed.

## HR 939 - ADOPTED
### (by J. Davis)

Representative J. Davis moved to suspend all necessary rules to take up and consider at this time **HR 939**.

The motion prevailed.

The following resolution was laid before the house:

**HR 939**, Recognizing March 21, 2011, as World Down Syndrome Day.

**HR 939** was adopted.

## HR 530 - PREVIOUSLY ADOPTED
### (by Schwertner)

The chair laid out and had read the following previously adopted resolution:

**HR 530**, In memory of J. D. Thomas, Jr., of Georgetown.

On motion of Representative Woolley, the names of all the members of the house were added to **HR 530** as signers thereof.

TX_00002907
USA_00016849

Case 2:13-cv-00193 Document 660-28 Filed on 11/11/14 in TXSD Page 37 of 53
e 1:12-cv-00128-RMC-DST-RLW Document 208-3 Filed 06/20/12 Page 162 of
908                82nd LEGISLATURE — REGULAR SESSION

## INTRODUCTION OF GUESTS

The chair recognized Representative Schwertner who introduced family members of J. D. Thomas, Jr.

### HR 490 - PREVIOUSLY ADOPTED
### (by Gallego)

The chair laid out and had read the following previously adopted resolution:

**HR 490**, In memory of Joyce Ann Probst of Alpine.

On motion of Representative McClendon, the names of all the members of the house were added to **HR 490** as signers thereof.

### RESOLUTIONS ADOPTED

Representative Dutton moved to suspend all necessary rules to take up and consider at this time **HR 938** and **HR 947 - HR 951**.

The motion prevailed.

The following resolutions were laid before the house:

**HR 938** (by Martinez Fischer), Congratulating Erwin J. De Luna of San Antonio on the occasion of his retirement from the Texas Health and Human Services Commission.

**HR 947** (by Dutton), Congratulating Brian Wooten on completing the Men at Work program of Star of Hope in Houston.

**HR 948** (by Dutton), Congratulating Quinton Smith on completing the Motivational Work program of Star of Hope in Houston.

**HR 949** (by Dutton), Congratulating Elvin Adams on completing the Men at Work program of Star of Hope in Houston.

**HR 950** (by Dutton), Congratulating Christopher Rainer on completing the Men at Work program of Star of Hope in Houston.

**HR 951** (by Raymond), Congratulating Don Jose "Pepe" Diaz on his achievements as a charro.

The resolutions were adopted.

### HR 450 - ADOPTED
### (by Bohac and Farias)

Representative Bohac moved to suspend all necessary rules to take up and consider at this time **HR 450**.

The motion prevailed.

The following resolution was laid before the house:

**HR 450**, Congratulating Shelly Vasbinder and Manny Salazar III on their wedding.

**HR 450** was read and was adopted.

## INTRODUCTION OF GUESTS

The chair recognized Representative Bohac who introduced Shelly Vasbinder and Manny Salazar III.

## HR 733 - PREVIOUSLY ADOPTED
### (by Garza)

The chair laid out and had read the following previously adopted resolution:

**HR 733**, Recognizing March 22, 2011, as The University of Texas at Austin Plan II Honors Day.

## INTRODUCTION OF GUESTS

The chair recognized Representative Naishtat who introduced professors, students, and staff from The University of Texas at Austin Plan II Honors Program.

(Speaker in the chair)

## EMERGENCY CALENDAR
## SENATE BILLS
## SECOND READING

The following bills were laid before the house and read second time:

## CSSB 14 ON SECOND READING
### (Harless, L. Taylor, Peña, Truitt, T. Smith, et al. - House Sponsors)

**CSSB 14**, A bill to be entitled An Act relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

Representative Harless moved to postpone consideration of **CSSB 14** until 12:12 p.m. today.

The motion prevailed.

## GENERAL STATE CALENDAR
## HOUSE BILLS
## SECOND READING

The following bills were laid before the house and read second time:

## HB 314 ON SECOND READING
### (by Hardcastle)

**HB 314**, A bill to be entitled An Act relating to the designation of a portion of U.S. Highway 81 as the Corporal David Slaton Memorial Highway.

**HB 314** was passed to engrossment.

## POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

TX_00002909
JA_001969

## CSSB 14 ON SECOND READING
### (Harless, L. Taylor, Peña, Truitt, T. Smith, et al. - House Sponsors)

CSSB 14, A bill to be entitled An Act relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

CSSB 14 was read second time earlier today and was postponed until this time.

### CSSB 14 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE ANCHIA: I wanted to ask you a couple questions about **SB 14** and voter impersonation. You alluded to the fact that this bill deals with one specific type of voter fraud, correct?

REPRESENTATIVE HARLESS: Yes, potential voter fraud.

ANCHIA: And that's voter impersonation?

HARLESS: Yes.

ANCHIA: And how does—describe how voter impersonation works.

HARLESS: Someone shows up to the poll with a voter registration card that may not be theirs and passes a vote with that card.

ANCHIA: How often does that happen in the State of Texas, do you think?

HARLESS: I'm not advised.

ANCHIA: Do you have a guess? You've gone back and looked at interim reports and studies on this issue—

HARLESS: Under our current law, there's not really tools necessary to stop this type of voter fraud. In fact, most of this, in voter fraud, we may not even know about until after the election occurs. We have heard from many witnesses over the last couple of sessions who have testified that voter impersonation, in which people's IDs or voter registration card have been used and a vote passed in that person's name, is not uncommon.

ANCHIA: Did they provide any documented cases, or was it anecdotal?

HARLESS: There was information from the secretary of state, but really, we don't have the tools to effectively deter or detect this type of voter fraud.

ANCHIA: I find it interesting that you say that we don't have the tools in current law. Are you pretty familiar with the Election Code?

HARLESS: A little. I've learned more about it the last few months.

ANCHIA: Yeah, me too, me too. What is the penalty for voter impersonation?

HARLESS: As addressed in this bill?

ANCHIA: No, no. Current law.

HARLESS: I think—

ANCHIA: It's under Section 64.012 of the Election Code.

HARLESS: And it would be a second-degree felony, if they're caught?

TX_00002910

USA_00016852

ANCHIA:  Okay, so, under current law, just to be clear so the membership knows, it's actually a third-degree felony.  So it's two to 10 years in prison and up to $10,000 worth of fines.  And in the committee substitute, it's actually bumped up to a third-degree felony so there's a penalty enhancement from third degree to second degree, so increases in severity, and then there's also an increase, a correlating increase with the attempted voter impersonation that gets bumped up as well, from its current penalty to 180 days—it's a state jail felony—180 days to two years in state jail and an optional fine of $10,000.  So there are some pretty severe penalties both in current law and in your proposed bill.  Correct?  A felony?

HARLESS:  Yes.

ANCHIA:  And, in terms of risk-reward, how many votes can you change with one case of voter impersonation?

HARLESS:  How many votes can you change?

ANCHIA:  Yes.  You were very concerned about a legitimate voter being disenfranchised by someone conducting voter impersonation.  Is it a scalable model, or when you commit an act of voter impersonation, how many votes do you change?

HARLESS:  Representative Anchia, this is about restoring confidence in election process—

ANCHIA:  No, I understand that—

HARLESS:—one person, one vote, and to get off on the fraud argument or how often it happens or if it even happens—we will never agree on that.  The purpose of this legislation is that when you show up to vote, you prove who you say you are.  It's a very simple, narrowly defined bill and we could stay here all day long discussing the fraud, but that is not what this bill is about.  This bill is about protecting, deterring, and detecting possible fraud in elections.

ANCHIA:  You sure?  I'm trying to get at that, because you talked about voter impersonation in your layout, and I know the narrative changes, because when—you know, we studied this thing for eight years now, almost six years, seven years actually, and we haven't been able to find much said voter impersonation.  Clearly, to support the bill, your narrative has to change so now it's about integrity of elections, I understand that.  In going through the current—you said in your layout, we currently don't have tools to prevent this.  So, I was trying to get at the tools that are in current state law, and the first one is sort of the deterrent effect of risking a state jail felony, two to 10 years in jail, $10,000 worth of fines, to change what, one vote, right?  So we're talking about deterrent effect and risk, and my question to you was, is it scalable?  When you commit an act of voter impersonation, how many votes do you change?

HARLESS:  I think it's possibly scalable.  If you look at Representative Donna Howard's election and Dan Neil, I think that a decision was decided by, what, two votes?

ANCHIA:  Were there any cases of voter impersonation there?

TX_00002911

USA_00016853

HARLESS: I didn't follow it that closely.

ANCHIA: I believe that there weren't.

HARLESS: But when elections are won or lost on two votes, we need to put every check and balance we can to restore the public's confidence, and not only does it restore the public's confidence in the election, there's been documented evidence in the two states that have passed this more restrictive photo ID that voter turnout increases. When people have confidence that their vote counts, they are more apt to show up and vote.

ANCHIA: And those talking points are terrific—let's just try to stay on voter impersonation. Right, so you said you're not sure of how often it occurs, you believe the tools aren't in place, you acknowledge there's a pretty significant penalty for doing it, correct? A state jail felony—

HARLESS: As it should be.

ANCHIA: As it should be, correct, so there's a pretty significant penalty for doing it. Now, let's talk about voter impersonation at the polling location. Who's typically at the polling locations?

HARLESS: As far as administrators, or people showing up to vote?

ANCHIA: Yeah, under the Election Code, who's entitled to be at the polling locations?

HARLESS: There are the election judge, the election clerk, election officers—

ANCHIA: And it's your assertion today that those people are powerless to stop voter impersonation, correct?

HARLESS: Powerless is not the word I would use.

ANCHIA: You said helpless earlier, is that a better word? They don't have the tools?

HARLESS: They need some tools.

ANCHIA: Okay, well are you familiar with Section 32.075 of the Election Code?

HARLESS: I am not.

ANCHIA: Section 32.075 of the Election Code discusses the law enforcement duties and powers of the presiding judge, of an election judge, do you know what they are?

HARLESS: No, but I know you're going to tell me.

ANCHIA: Yeah, I will, because I just want to clear up the fact that you're concerned that there are no tools, so I'll read that portion of the Election Code. The presiding judge at a polling location can prevent violations of the Election Code at the polling place, and in performing those duties, the presiding judge has the power of a state district judge, including the power to issue an arrest warrant. Were you aware of that?

HARLESS: No.

TX_00002912

USA_00016854

ANCHIA: Do you think issuing an arrest warrant to stop some of this purported voter impersonation is a powerful tool?

HARLESS: I think that the testimony that we've heard and the articles that have been reported on over the last few years, there have been a number of election officers and election judges that said there were people that came in to vote, they had a voter registration, they returned and voted again with a different voter registration, and they felt they didn't have the tools—

ANCHIA: And none of those cases were documented, right? None of them.

HARLESS: They were reported on.

ANCHIA: They were reported, maybe complaints, possibly investigated by the attorney general, but none of them ever documented or conclusively prosecuted, correct?

HARLESS: I don't know if that's correct or not. It was not part of our testimony.

ANCHIA: But don't you think, having the power as an election judge to issue an arrest warrant to satisfy, to enforce the provisions of the Election Code—that's not—you claim that these people are helpless, they don't have the tools. But you don't think that's a tool?

HARLESS: I don't think it's a tool when they're not required to show a photo ID when they show up to vote that says they are who they—

ANCHIA: If you're an election judge and you know you have the power of a state district judge to issue an arrest warrant and you see somebody who is potentially committing voter impersonation, and you don't do anything about it, whose fault is that?

HARLESS: I think that is the legislature's fault—

ANCHIA: It's our fault?

HARLESS:—for not putting checks and balances in place that we can require voters to prove who they are when they show up to vote.

ANCHIA: Do you have—and I noticed you avoided presenting any evidence of voter impersonation in your layout—do you have any cases of voter impersonation?

HARLESS: I'm sure you know more about that than I do.

ANCHIA: Okay, okay. You're concerned about legitimate voters being disenfranchised, right? That's really important to you.

HARLESS: I am concerned about protecting the public's trust and the integrity in the elections process.

ANCHIA: I understand, as am I, as am I. And you believe that passage of this bill will restore confidence among members of the public in the voting process and restore integrity, correct? That's what you said in your layout?

HARLESS: I do.

ANCHIA: And you believe that?

TX_00002913
JA_001973

TX_00002913

USA_00016855

Case 2:13-cv-00193   Document 660-28   Filed on 11/11/14 in TXSD   Page 43 of 53
e 1:12-cv-00128-RMC-DST-RLW   Document 208-3   Filed 06/20/12   Page 168 of
914          82nd LEGISLATURE — REGULAR SESSION

HARLESS:  I do.

ANCHIA:  Why does it ignore mail-in ballots?

HARLESS:  This bill is only interested in one type of potential fraud, in-person voter fraud.

ANCHIA:  That's really interesting to me, because we've got a bill that addresses a narrow type of fraud that you even acknowledged you had no cases of.

HARLESS:  I did not say I have no cases.

ANCHIA:  Then give me a case.

HARLESS:  I said that they were not part of our testimony.

ANCHIA:  Did you run across a case?

HARLESS:  There was, media reported on it, but continue.

ANCHIA:  Okay, so you have no cases of voter impersonation?

HARLESS:  I have no cases we're going to discuss on the house floor.

ANCHIA:  So the author has no cases on the house floor of voter impersonation, you are, yet, very, very concerned about the integrity of elections.  Correct?  Yet this bill doesn't deal with the type of voter fraud that we've seen most prevalently in the State of Texas, which is mail-in ballots.  Correct?

HARLESS:  There are other pieces of legislation that—

ANCHIA:  Have you filed a bill on mail-in ballots?

HARLESS:  No, sir.

ANCHIA:  But you're concerned about legitimate votes that are cast being cancelled out by voter fraud, are you not?

HARLESS:  I am concerned about public confidence in the election and verifying that you are who you say you are when you show up to vote.  This is not the venue to discuss mail-in ballots.

ANCHIA:  Well, I think it is, because, if—now the narrative has changed.  Before it used to be, hey, we're really concerned about all these illegal aliens coming across the border and voting and then, when there was little to no evidence of that, then the narrative changed, and now it's the integrity of elections.  Well, the integrity of the elections, if you believe that narrative, also includes fraud that would cancel out a person's legitimately cast vote.  Am I correct?

HARLESS:  This is not the venue to discuss mail-in ballots.

ANCHIA:  Where do we discuss it?  Do we discuss it in the senate?  Do we discuss it in the back hall?

HARLESS:  On another piece of legislation, we can discuss it in all those places if you would like.

ANCHIA:  If you have opened the door to the integrity of elections, then I think it's fair game to discuss that type of fraud, which we actually do see in the State of Texas—

TX_00002914
USA_00016856

Case 2:13-cv-00193 Document 660-28 Filed on 11/11/14 in TXSD Page 44 of 53
e 1:12-cv-00128-RMC-DST-RLW Document 208-3 Filed 06/20/12 Page 169 of
Monday, March 21, 2011 HOUSE JOURNAL — 38th Day 513

HARLESS: I look forward to you bringing that bill to the Texas House.

ANCHIA:—which is specifically ignored by your bill. But this is really about a desire to make sure that legitimately cast votes are not counter balanced or offset, and to really restore integrity of elections. Why don't you do anything about mail-in ballots in your bill?

HARLESS: This bill is to address in-person possible voter fraud. I appreciate you bringing up the mail-in ballots, and I look forward to your bill that you will bring addressing that type of fraud.

ANCHIA: I actually chair the select committee on that, and I've had, in the past, mail-in ballot bills.

HARLESS: I think that's great legislation, I look forward to helping you with it.

ANCHIA: Here's the quandary for this body. If you say passing this bill is going to restore integrity of elections, you do nothing in this bill to deal with mail-in ballots and 70 percent of all the prosecutions by the attorney general have been mail-in ballots, then you're really not restoring integrity of elections because people, like they have for the last six years, will be reading about mail-in ballot fraud, mail-in ballot fraud, mail-in ballot fraud. Let's talk a little bit about the Voting Rights Act, if you don't mind. How much money is in the bill for informing Texans about the change in the law?

HARLESS: The fiscal note on the bill is $2,024,000.

ANCHIA: Okay, and where's that money going to come from?

HARLESS: That money is already appropriated in our base budget that Chairman Pitts presented. We have, officially, $43 million of HAVA funds, Help America Vote funds, leftover from past sessions, and we are pretty confident once we request the approval of use of those funds that we can use those funds to offset the costs of this fiscal note.

ANCHIA: And what is that request going to entail?

HARLESS: It entails writing to the department of elections assistance.

ANCHIA: The Elections Assistance Commission? The EAC?

HARLESS: Yes.

ANCHIA: And does it also require an amendment of our state plan?

HARLESS: I'm not advised.

ANCHIA: Okay, let me ask you about how those HAVA funds are going to be spent? How many of those HAVA funds that are appropriated in this bill are going to be dedicated to educating Latinos, African Americans, and Asians on the new photo identification requirement under **SB 14**?

HARLESS: The methodology and the fiscal note says that there will be $2 million for the fiscal year 2012 and an estimated half a million dollars to research and develop ways to inform the public on new identification requirements. Additional cost of $1.5 million in media advertising, television,

TX_00002915

USA_00016857

of—a breakdown of that: $750,000 on television, $300,000 in radio, and $300,000 in print, and internet of $150,000. The secretary of state indicates that federal funds associated with Help America Vote Act may be available for use, but the agency will need to verify that with the federal government once this is passed.

ANCHIA: And the Voting Rights Act covers the State of Texas, correct?

HARLESS: Excuse me?

ANCHIA: I'm sorry, the Voting Rights Act covers the State of Texas, correct?

HARLESS: Yes.

ANCHIA: And there are protected classes under the Voting Rights Act, correct?

HARLESS: Yes.

ANCHIA: So my question didn't relate generally to what the fiscal note said, it related specifically to Latinos and African Americans. I also included Asian Americans because of your home county, Harris County, has a significant Asian American population. So what percentages of the $2 million will be dedicated to those protected classes?

HARLESS: It is not broken out specifically in the bill. I think this bill will increase turnout and education among all voters.

ANCHIA: Okay, but there's nothing in your bill dealing specifically with Latinos or African Americans, correct?

HARLESS: It will increase turnout of all voters and education of all voters.

ANCHIA: But is there—I'll rephrase the question in case we don't understand—

HARLESS: I'm a blonde, and that happens.

ANCHIA: Is there anything in your bill that specifically requirs education of Latinos and African Americans covered under the Voting Rights Act? I'll throw in Asians as well.

HARLESS: The bill that we filed is modeled on the Georgia and Indiana legislation that have both been upheld by the U.S. Constitution and pre-cleared by the Department of Justice.

ANCHIA: Do you know what's in your bill?

HARLESS: I think I do, I've read it several times.

ANCHIA: If you know what's in your bill, then you can answer this question. Is there any funding specifically dedicated to Latinos, or African Americans, or Asians which are protected classes under the Voting Rights Act? I mean, it's either in there or it's not.

HARLESS: The funding in the bill provided education for all voters across the State of Texas.

ANCHIA: Okay, but not specifically, not specifically correct?

TX_00002916
JA_001976

HARLESS:  It does not specifically carve anything out.  This will increase voter turnout and education for all voters.

ANCHIA:  Will the educational materials and promotional materials be presented in English, Spanish, and Vietnamese, with respect to Harris County?

HARLESS:  They will be printed in the language that the counties are required to provide language in.

ANCHIA:  But there's nothing in your bill that specifically states that you will have bilingual Spanish, English, Vietnamese documents, correct?

HARLESS:  There was an amendment that was added in the senate that says the website in each language in which the voter registration materials are available.

ANCHIA:  Right, and the website is—

HARLESS:  Is that what you're asking?

ANCHIA:—slightly different, the website is a little bit different than the promotional and educational materials that are going to be distributed to people who may be in the protected classes.  So I was just trying to get at whether your bill includes anything related to promotional materials in English, Spanish, and Vietnamese.

HARLESS:  It allows for the printing in the language that the counties are required to on all the notices at the polling places and that the county registrar will provide.

ANCHIA:  And that language is in your bill?

HARLESS:  Yes.

ANCHIA:  Okay, can you tell me where?

HARLESS:  Well, Section 31.012—

ANCHIA:  On what page, really quickly.

HARLESS:  Page 3, under Section 5, talks about the languages.

ANCHIA:  In each language in which voter registration materials are available, I do see it in your bill.

HARLESS:  And that is also a requirement of the federal voter right act, I mean that's—

ANCHIA:  The Voting Rights Act?

HARLESS:  Right—

ANCHIA:  But, I'm asking a slightly different question.  Will the, for example, TV and radio, and additional notices that are above and beyond this section of your bill which is the posted notice, is TV and radio going to be done in multiple languages?

TX_00002917

USA_00016859

HARLESS: To my understanding, the testimony that we had in committee, where you were at, the secretary of state said that they would look at the best practices of other states and decide the best way to accommodate that, so I don't know that that specific question was answered from the testimony in committee. You were there.

ANCHIA: I don't believe it was. And I don't think it's included in the bill either.

HARLESS: The next question?

ANCHIA: What efforts will be made to ensure African Americans and Latinos will be able to access free identification documents? Will there be mobile units or any specific outreach?

HARLESS: There was no testimony on that.

ANCHIA: Yes, but what does your bill say?

HARLESS: There is no specifics in that. That will be up to the secretary of state to decide those procedures.

ANCHIA: Have you—I know you've done a lot of work on this bill, a lot of research. What academic studies have you run across to determine the number of minorities that lack required photo identification?

HARLESS: From all the testimony that we've had in committee, there was no possible way to determine that.

ANCHIA: And you're not aware of any academic studies—is what my question was asking—any academic studies that deal with that issue?

HARLESS: There are so many studies out there, that no, they all look the same in my head. And I only have this notebook, so I couldn't bring everything.

ANCHIA: Are you aware of any studies conducted by a state agency to project the number of voters that lack the required identification and what percentage of these voters are African American or Hispanic? Are you aware of any studies like that?

HARLESS: I did not see that in testimony.

ANCHIA: But, are you aware of any studies? Above and beyond the testimony?

HARLESS: No. Not advised.

ANCHIA: Why are the identification requirements of **SB 14** more restrictive than **SB 362** from last session? Is there any evidence to suggest something's changed?

HARLESS: We've had two additional years to see that photo ID is working in other states. We've also had two additional years to hear from the public on their concerns of the integrity of the ballot box. Only a true photo ID bill can deter and detect fraud at the polls and can protect the public's confidence in the election.

ANCHIA: Is it possible that Latinos and African Americans in Texas will be put in a worse position in terms of electoral power as a result of **SB 14**?

TX_00002918

USA_00016860

Case 2:13-cv-00193   Document 660-28   Filed on 11/11/14 in TXSD   Page 48 of 53
e 1:12-cv-00128-RMC-DST-RLW   Document 208-3   Filed 06/20/12   Page 173 of
Monday, March 21, 2011        HOUSE JOURNAL — 38th Day        5199

HARLESS: I believe with all my heart that this bill will increase turnout of all voters in the State of Texas.

ANCHIA: But what if you're wrong? Are there any safeguards in the bill to remedy the situation, for example, a Sunset provision, if we see that there's a substantial number of African Americans or Latinos that are disenfranchised by this bill?

HARLESS: In the two states that have passed this type of voter, similar bills to our bill, they have showed increase in election for the minorities, and I think that we will see the same results in Texas. This will increase turnout of all voters because of the restored confidence that their vote counts.

ANCHIA: Okay, and just to be clear, Indiana, which is one of the states, is not a Voting Rights Act covered jurisdiction, right? And Georgia, which is Voting Rights Act covered, doesn't have as large a Latino population as Texas, correct?

HARLESS: I have no idea.

ANCHIA: Okay, I would submit to you it doesn't. Is there any trigger mechanism for more funding or increased outreach if something does go wrong in the bill and it turns out Latinos and African Americans are disenfranchised?

HARLESS: The testimony of the LBB—

### REMARKS ORDERED PRINTED

Representative Anchia moved to print remarks between Representative Harless and Representative Anchia.

The motion prevailed.

### Amendment No. 1

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking the enacting clause (page 1, line 4).

Amendment No. 1 was withdrawn.

### Amendment No. 2

Representative Giddings offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:
(1) In the recital to SECTION 9 of the bill (page 5, line 1), strike "(g) and (h)" and substitute "(g), (h), and (i)".
(2) In SECTION 9 of the bill, in amended Section 63.001(b), Election Code (page 5, line 2), strike "Subsection (h)" and substitute "Subsection (h) or (i)".
(3) In SECTION 9 of the bill, following added Section 63.001(h), Election Code (page 6, between lines 23 and 24), add the following:
(i) A voter who would otherwise be accepted for voting under this chapter but for the requirements of Subsection (b) shall be accepted for voting if, instead of presenting the identification required by Subsection (b), the voter executes an affidavit under penalty of perjury that asserts that the voter's

TX_00002919
USA_00016861

proof of identification meeting the requirements of Subsection (b) has been stolen and the voter presents to an election officer a copy of an official police report, dated not earlier than the 45th day before the date on which the voter seeks to vote, alleging that the voter was a victim of an offense described by Sections 31.03 or 32.51, Penal Code. The voter may redact personal information on the police report relating to the voter, other than the voter's name, address, or date of birth. A police report presented under this section is not required to contain the voter's date of birth.

## CSSB 14 - POINT OF ORDER

Representative Martinez raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 32(c)(2) and Rule 4, Section 32(f) of the House Rules on the grounds that the bill analysis is incorrect.

The speaker sustained the point of order, speaking as follows:

Mr. Martinez raises a point of order under Rule 4, Section 32(c)(2) and Rule 4, Section 32(f) in that the bill analysis is substantially or materially misleading, specifically because the bill analysis refers to six business days while the text of the bill refers only to six days.

The chair has reviewed the bill and bill analysis and finds the reference in the bill analysis to be materially or substantially misleading in the context of the bill. The point of order is sustained.

**CSSB 14** was returned to the Select Committee on Voter Identification and Voter Fraud.

## LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence for today because of important business:

Gutierrez on motion of Burnam.

## COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Business and Industry will reconvene 10 minutes after adjournment today.

Ways and Means will reconvene 15 minutes after adjournment today.

Border and Intergovernmental Affairs, 2 p.m. today.

## ADJOURNMENT

Representative L. Taylor moved that the house adjourn until 10 a.m. tomorrow.

The motion prevailed.

The house accordingly, at 1:51 p.m., adjourned until 10 a.m. tomorrow.

TX_00002920
JA_001980

Case 2:13-cv-00193  Document 660-28  Filed on 11/11/14 in TXSD  Page 50 of 53
e 1:12-cv-00128-RMC-DST-RLW  Document 208-3  Filed 06/20/12  Page 175 of
Monday, March 21, 2011  HOUSE JOURNAL — 38th Day  521

---

### ADDENDUM

---

### MESSAGES FROM THE SENATE

The following messages from the senate were today received by the house:

**Message No. 1**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Monday, March 21, 2011

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**HCR 47**            Guillen               SPONSOR: Zaffirini
In memory of U.S. Army Private First Class Ira Benjamin Laningham IV of Zapata.

**SB 160**            Williams
Relating to the regulation of certain aggregate production operations by the Texas Commission on Environmental Quality; providing penalties.

**SB 173**            West
Relating to civil remedy of violations of certain municipal health and safety ordinances.

**SB 312**            Seliger
Relating to the exemption of certain electric cooperatives from certain regulations.

**SB 350**            Williams
Relating to the restructuring of fund obligations and accounts of the Texas Municipal Retirement System and related actuarial and accounting procedures.

**SB 361**            Duncan
Relating to indemnification provisions in construction contracts.

**SB 370**            Seliger
Relating to the authority of the Texas Water Development Board to provide financial assistance for certain projects if the applicant has failed to complete a request for information relevant to the project.

**SB 425**            Carona

TX_00002921
USA_00016863

Case 2:13-cv-00193   Document 660-28   Filed on 11/11/14 in TXSD   Page 51 of 53
e 1:12-cv-00128-RMC-DST-RLW   Document 208-3   Filed 06/20/12   Page 176 of
922          82nd LEGISLATURE — REGULAR SESSION

Relating to property and casualty certificates of insurance and approval of property and casualty certificate of insurance forms by the Texas Department of Insurance; providing penalties.

**SB 527**                          Fraser
Relating to projects funded through the Texas emissions reduction plan.

**SB 566**                          Williams
Relating to the regulation of the practice of public accountancy.

**SB 605**                          Rodriguez
Relating to the creation of an appellate judicial system for the Eighth Court of Appeals District.

**SB 781**                          Carona
Relating to the repeal of certain legislative oversight committees.

Respectfully,
Patsy Spaw
Secretary of the Senate

———————————

## APPENDIX

———————————

### STANDING COMMITTEE REPORTS

Favorable reports have been filed by committees as follows:

**March 17**

Criminal Jurisprudence - **HB 341, HB 350, HB 690**

Public Education - **HB 1703**

State Affairs - **HB 888, HB 1064, HB 1165**

Ways and Means - **HB 234, HB 252, HB 361**

**March 18**

Agriculture and Livestock - **HB 92**

Business and Industry - **HB 681**

Culture, Recreation, and Tourism - **HB 308, HB 790, HB 1301, HB 1346, HB 1843, HB 1844, HCR 33**

Higher Education - **HB 9, HB 10**

Licensing and Administrative Procedures - **HB 378, HB 457, HB 510, HB 1510**

Public Education - **HB 675, HB 861, HB 1130**

Public Health - **HB 549, HB 670**

State Affairs - **HB 51, HB 183, HJR 65**

TX_00002922
USA_00016864

Transportation - **HB 238**

Ways and Means - **HB 499**

## ENROLLED

March 17 - **HCR 10**, **HCR 28**

## SENT TO THE GOVERNOR

March 17 - **HCR 10**, **HCR 28**, **HCR 40**, **HCR 56**, **HCR 59**, **HCR 76**

## SENT TO THE SECRETARY OF THE STATE

March 17 - **HCR 58**

## SIGNED BY THE GOVERNOR

March 18 - **HCR 49**, **HCR 70**

TX_00002924
JA_001984

TX_00002924
USA_00016866