Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 1 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 90 of
PL042
9/2/2014
2:13-cv-00193

# SENATE JOURNAL

## EIGHTY-SECOND LEGISLATURE — REGULAR SESSION

### AUSTIN, TEXAS

### PROCEEDINGS

### FIFTY-SIXTH DAY
(Monday, May 9, 2011)

The Senate met at 11:13 a.m. pursuant to adjournment and was called to order by Senator Eltife.

The roll was called and the following Senators were present: Birdwell, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Ogden, Patrick, Rodriguez, Seliger, Shapiro, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

The Presiding Officer announced that a quorum of the Senate was present.

Pastor Billy Sanders, North Pointe Church, Copperas Cove, was introduced by Senator Birdwell and offered the invocation as follows:

Thank you and, as the Lord taught us to pray in Matthew 6:9-13, let us pray: Our Father which art in heaven, hallowed be Thy name. Thy kingdom come. Thy will be done in our State of Texas, as it is in heaven. Give us this day our daily bread and the wisdom to share it. And forgive us our debts and trespasses, as we forgive our debtors and those that have trespassed against us. And lead us not into the temptation to do our will, but deliver us from the evil that comes in being selfish. For Thine is the kingdom that we desire to pattern after and the power we need that comes to accomplish it and the glory and praise we give only to You, for ever and ever, in the name of the Father and of the Son and of the Holy Spirit, in the name of our lord and savior, Jesus Christ, we pray. Amen and amen.

Senator Whitmire moved that the reading of the Journal of the proceedings of the previous day be dispensed with and the Journal be approved as printed.

The motion prevailed without objection.

### INTRODUCTION OF
### BILLS AND RESOLUTIONS POSTPONED

The Presiding Officer announced that the introduction of bills and resolutions on first reading would be postponed until the end of today's session.

There was no objection.

## PHYSICIAN OF THE DAY

Senator Hegar was recognized and presented Dr. Kanaka Paladugu of Bastrop as the Physician of the Day.

The Senate welcomed Dr. Paladugu and thanked her for her participation in the Physician of the Day program sponsored by the Texas Academy of Family Physicians.

### SENATE RESOLUTION 916

Senator Lucio offered the following resolution:

WHEREAS, The Senate of the State of Texas takes great pleasure in recognizing the inaugural class of Bush School Capstone Scholars, a program developed by the George Bush School of Government and Public Service at Texas A&M University; and

WHEREAS, One of the school's cornerstones is the commitment to educate students to become principled leaders in public service; the primary means by which this commitment is realized is through the Capstone program, which is designed to test the knowledge and abilities students have developed through their previous classes and experiences; and

WHEREAS, The Legislature of the State of Texas is the institution in which the most challenging public policy issues of the day are debated and resolved; these scholars answered the call to public service and rose to the challenge of participating in the first Bush School Legislative Capstone program, bringing their skills and talents to bear in the 82nd Texas Legislature and learning firsthand how public policy is shaped; and

WHEREAS, The following scholars have demonstrated exceptional dedication and achievement during their service for the legislature:  James R. Close from Houston, serving in the office of Senator Eddie Lucio for the Committee on International Relations and Trade; D. Benjamin Maddox from San Antonio, serving in the office of Representative Diane Patrick; Nicolas D. Norboge from Wimberley, working as a legislative liaison with the Texas Transportation Institute; Brady D. Olsen from Haltom City, serving for the Legislative Budget Board; Katherine Vedlitz from College Station, serving in the House Democratic Caucus office; Michael Walter from Houston, serving for the House Committee on Homeland Security and Public Safety; and Craig Welkener from Allen, working as a legislative liaison with the Texas Transportation Institute; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 82nd Legislature, hereby commend these promising students for their remarkable service this session and wish them continued success as they prepare to become the leaders of our great state; and, be it further

RESOLVED, That a copy of this Resolution be prepared for them as an expression of esteem and appreciation from the Texas Senate.

SR 916 was read and was adopted without objection.

Case 2:13-cv-00193   Document 661-10   Filed on 11/11/14 in TXSD   Page 3 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 92 of
Monday, May 9, 2011          SENATE JOURNAL                    2069

## GUESTS PRESENTED

Senator Lucio was recognized and introduced to the Senate Bush School Capstone Scholars: James R. Close, Craig Welkener, Michael Walter, Brady D. Olsen, Nick Norboge, and Professor Ann Bowman.

The Senate welcomed its guests.

## HOUSE CONCURRENT RESOLUTION 139

The Presiding Officer laid before the Senate the following resolution:

**HCR 139**, In memory of former Texas secretary of state Myra McDaniel.

ELLIS

The resolution was read.

On motion of Senator Ellis, the resolution was considered immediately and was adopted by a rising vote of the Senate.

In honor of the memory of Myra McDaniel, the text of the resolution is printed at the end of today's *Senate Journal*.

## GUESTS PRESENTED

Senator Ellis was recognized and introduced to the Senate Reuben McDaniel, Jr., Joan Phillips, Diane Rhodes, Mike Rhodes, Lauren Eva Riley, and Joseph Ted Castleberry.

The Senate welcomed its guests and extended its sympathy.

## REMARKS ORDERED PRINTED

On motion of Senator Lucio and by unanimous consent, the remarks by Senators Ellis, Lucio, Watson, and West regarding **HCR 139** were ordered reduced to writing and printed in the *Senate Journal* as follows:

**Senator Ellis:** Thank you, Mr. President and Members. Myra McDaniel and her husband were two of the first people that I met when I came to Austin. She was a tremendous mentor and would open up her home to me and the likes of Ron Kirk when we were in law school. In fact, she opened her home up so much, I was about 50 pounds heavier as a result of going to their home on a regular basis. It was a tremendous loss for our state when Myra passed on. She certainly didn't look like she was 77, and from time to time, when I walk around the halls, I still think that I'm talking to her from time to time, because she did a great job of advising many of us around this Capitol. She died last February the 25th. It was a great loss, as I said. Members, we're joined today by her husband, Reuben McDaniel, Jr.; her daughter, Diane Rhodes; her son-in-law, Mike Rhodes; and sister-in-law, Joan Phillips; and grandchildren, Lauren and Joseph. Members, I'm just so glad to have known Myra McDaniel, and her memory does live on. And I hope that Members will take the time to give their condolences to her great family.

**Senator Watson:** Thank you very much, Mr. President. I just want to say thank you to Senator Ellis for bringing this resolution forward. I feel the same way. When Liz and I first got to Austin, Texas, back in the early '80s, Myra was already doing so

TX_00003193
USA_00017806

much, and so much a part of what was going on, and was someone that, for a young lawyer that hit this town and wanted to be involved in one way or another, she was always there, able to provide advice and counsel and do it in a way where you knew you were getting the kind of advice and counsel that would actually help you to succeed. Her work in government is going to be a lasting legacy. And it's going to be the kind of thing that those of us who seek out public service, will, I hope, from time to time, look back and ask if we're living up to that, doing it in a way that sometimes is far, far more quiet than what we tend to do today when we're involved in public service but done in such a way that when it gets real—I remember listening to her talk from time to time in a very quiet way, but it thundered in your ear what she was actually saying to you. I, my condolences go out to you. I know it must've been a wonderful, wonderful thing to have somebody who cared so deeply and loved so well as your family member. And, I'd be remiss if I didn't take a moment to thank you for loaning her to the people of the State of Texas and to Central Texas.

**Senator Lucio:** Thank you, Mr. President, and thank you, Senator Ellis, for bringing this important resolution to the floor to recognize one of Texas' best. She was such a lady. Great smile, and all of us who have served so many years in public service at one time or another get to know our Secretary of State. And it was just such a pleasure to converse with her. She was so bright and just so proactive about everything she did. And I'm happy to have an opportunity to publicly tell you that all of us in South Texas admired and respected Ms. McDaniel. Happy to have you here on the floor.

**Senator West:** Thank you very much, Mr. President, Members. You know, oftentimes, people live and they're not remembered. Myra lived and is remembered, not by just you as her family, not by just the legal community in which she was a giant, not by just a community that she lived in where she was a civic servant but by the great State of Texas. We remember her, not just as a Secretary of State, but as a Texan that many of us go to for advice and counsel and her quiet demeanor. Maybe she wasn't that way at home, but at least to us, her quiet demeanor, she would give thought to the question that was asked, and she was very deliberative in the advice that she gave. And in most instances, it was the correct advice. And so, I join the other Senators on this floor to pay tribute to a great wife, mother, sister, most of all, a great Texan. She will be remembered in perpetuity. Thank you.

### MESSAGE FROM THE HOUSE

HOUSE CHAMBER
Austin, Texas
Monday, May 9, 2011 - 1

The Honorable President of the Senate
Senate Chamber
Austin, Texas

Mr. President:

I am directed by the House to inform the Senate that the House has taken the following action:

TX_00003194
JA_002925

TX_00003194

USA_00017807

THE HOUSE HAS PASSED THE FOLLOWING MEASURES:

**HB 710**                    Walle
Relating to verification of identity of applicants for benefits under and prevention of duplicate participation in the financial assistance and supplemental nutrition assistance programs.

**HB 751**                    Lewis
Relating to the attendance by a quorum of a legislative standing committee at a caucus meeting.

**HB 1278**                   Coleman
Relating to regulation by a property owners' association of certain religious displays.

**HB 1418**                   Hughes
Relating to inmate litigation.

**HB 1788**                   Farias
Relating to capturing reptiles and amphibians by nonlethal means; providing a penalty.

**HB 2029**                   Flynn
Relating to the sale of a cemetery plot; providing penalties.

**HB 2197**                   Rodriguez, Eddie
Relating to the purchase of property as part of a homestead land bank program.

**HB 2329**                   Zedler
Relating to the confidentiality of certain information regarding victims of trafficking of persons and to the issuance and enforcement of protective orders to protect victims of trafficking of persons; providing penalties.

**HB 2610**                   Guillen
Relating to facilitating access to certain public assistance benefits programs and health care providers and services through a community-based navigator program and through promotoras and community health workers.

**HB 2678**                   Smith, Todd
Relating to driver training and education.

**HB 2704**                   Sheffield
Relating to a parent's right to object to physical fitness assessment of the parent's child by a school district.

**HB 2814**                   Hochberg
Relating to electronic voter registration.

**HB 3393**                   Hughes
Relating to the filing by a court reporter of an official transcript of a court proceeding.

**HB 3473**                   Gallego
Relating to a defense to prosecution for, the punishment for, and the civil and other consequences of committing the offense of prostitution.

**HB 3483**                   Christian
Relating to seller's disclosure regarding the presence of contaminants on residential real property.

**SB 132**                    Wentworth                    Sponsor: Flynn
Relating to registration with the Selective Service System of certain applicants for a driver's license or personal identification certificate.
(Amended)

**SB 1104**                   Jackson                      Sponsor: Smith, Wayne
Relating to the operation, powers, and duties of ship channel districts.

**SB 1107**                   Davis                        Sponsor: Howard, Charlie
Relating to the vaccination against bacterial meningitis of entering students at public and private or independent institutions of higher education.
(Amended)

**SB 1168**                   Carona                       Sponsor: Harper-Brown
Relating to the repeal of the certification process for personnel service owners and the regulation of personnel services.

**SB 1341**                   Seliger                      Sponsor: Elkins
Relating to the participation by a taxing unit in a suit to compel an appraisal review board to order a change in an appraisal roll.

**SB 1680**                   Ellis                        Sponsor: Murphy
Relating to certain evidence in a prosecution of fraud or theft involving Medicaid or Medicare benefits and to certain criminal procedures involving offenses in general.

Respectfully,

/s/Robert Haney, Chief Clerk
House of Representatives

### GUESTS PRESENTED

Senator Lucio was recognized and introduced to the Senate a delegation from Pharr-San Juan-Alamo North High School.

Senator Lucio was again recognized and introduced to the Senate Harmony Science Academy students serving as Honorary Senate Pages today: Luis Ong, Leigh Mata, Abelina Reves, Amairani Benavides, and Antonio Beltran.

The Senate welcomed its guests.

### CONCLUSION OF MORNING CALL

The Presiding Officer at 11:41 a.m. announced the conclusion of morning call.

### SENATE BILL 980 WITH HOUSE AMENDMENT

Senator Carona called **SB 980** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Floor Amendment No. 1**

Amend **SB 980** (house committee report) in SECTION 3 of the bill, in added Section 52.002(d)(2), Utilities Code (page 4, line 2), between "law" and the semicolon, by inserting ", the applicability of Chapter 66, or a requirement to make a payment under Chapter 66".

TX_00003196
JA_002927

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 7 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 96 of
Monday, May 9, 2011      SENATE JOURNAL      2073

The amendment was read.

Senator Carona moved to concur in the House amendment to **SB 980**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

### SENATE BILL 501 WITH HOUSE AMENDMENT

Senator West called **SB 501** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

### Floor Amendment No. 1 on Third Reading

Amend **SB 501** on third reading, in SECTION 1 of the bill, in added Section 2.003, Human Resources Code (page 4, line 16), by striking "and private".

The amendment was read.

Senator West moved to concur in the House amendment to **SB 501**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

### (President Pro Tempore Ogden in Chair)

### COMMITTEE SUBSTITUTE
### SENATE BILL 303 ON SECOND READING

On motion of Senator Nichols and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSB 303** at this time on its second reading:

**CSSB 303**, Relating to health care services provided or paid by a hospital district.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

### COMMITTEE SUBSTITUTE
### SENATE BILL 303 ON THIRD READING

Senator Nichols moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 303** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1866 ON SECOND READING

Senator Davis moved to suspend the regular order of business to take up for consideration **CSSB 1866** at this time on its second reading:

**CSSB 1866**, Relating to the selection of providers of professional services by governmental entities.

The motion prevailed.

Senators Birdwell, Carona, Harris, Huffman, Nelson, Nichols, Patrick, and Shapiro asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSSB 1866** by striking Sections 1 and 2 of the bill and replacing with the following new Sections 1 and 2 to read as follows:

SECTION 1. Section 2254.003, Government Code, is amended by adding Subsection (a-1) to read as follows:

(a-1) Unless inconsistent with the criteria in Subsection (a), a governmental entity selecting a provider of or awarding a contract for professional services may consider:

(1) the impact on the entity's ability to comply with laws, rules, or policies regarding, as applicable:

(A) historically underutilized or minority-owned businesses;

(B) small business development programs; and

(C) any other contracting program approved by the entity that relates to (A) or (B); and

(2) the locations of the provider's or group or association of providers' places of business where the work will be performed if, in the entity's governing body's judgment, the location of the places of business where the work will be performed will impact the most efficient and economical provision of the services.

SECTION 2. Section 2254.004, Government Code, is amended by adding Subsection (a-1) to read as follows:

(a-1) Unless inconsistent with the criteria in Subsection (a), a governmental entity selecting a provider of or awarding a contract for architectural, engineering, or land surveying services may consider:

(1) the impact on the entity's ability to comply with laws, rules, or policies regarding, as applicable:

(A) historically underutilized or minority-owned businesses;

(B) small business development programs; and

(C) any other contracting program approved by the entity that relates to (A) or (B); and

(2) the locations of the provider's places of business where the work will be performed if, in the entity's governing body's judgment, the location of the places of business where the work will be performed will impact the most efficient and economical provision of the services.

The amendment to **CSSB 1866** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

TX_00003198
JA_002929

TX_00003198

USA_00017811

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 9 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 98 of
Monday, May 9, 2011 SENATE JOURNAL 2073

On motion of Senator Davis and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1866** as amended was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment except as follows:

Nays: Birdwell, Carona, Harris, Hegar, Huffman, Nelson, Nichols, Patrick, Shapiro.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1866 ON THIRD READING

Senator Davis moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1866** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 25, Nays 6.

Yeas: Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Ogden, Rodriguez, Seliger, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Carona, Harris, Nichols, Patrick, Shapiro.

The bill was read third time and was passed by the following vote: Yeas 22, Nays 9.

Yeas: Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Hinojosa, Jackson, Lucio, Ogden, Rodriguez, Seliger, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Carona, Harris, Hegar, Huffman, Nelson, Nichols, Patrick, Shapiro.

## HOUSE BILL 610 ON SECOND READING

On motion of Senator Seliger and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 610** at this time on its second reading:

**HB 610**, Relating to certain notices sent by the Texas Commission on Environmental Quality.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

## HOUSE BILL 610 ON THIRD READING

Senator Seliger moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 610** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

TX_00003199
JA_002930

TX_00003199
USA_00017812

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1386 ON SECOND READING

Senator Lucio moved to suspend the regular order of business to take up for consideration **CSSB 1386** at this time on its second reading:

**CSSB 1386**, Relating to the refusal to register motor vehicles by a county assessor-collector or the Texas Department of Motor Vehicles.

The motion prevailed.

Senators Jackson and Nelson asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment except as follows:

Nays:  Hegar, Jackson, Nelson.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1386 ON THIRD READING

Senator Lucio moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1386** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 29, Nays 2.

Yeas:  Birdwell, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Lucio, Nichols, Ogden, Patrick, Rodriguez, Seliger, Shapiro, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays:  Jackson, Nelson.

The bill was read third time and was passed by the following vote:  Yeas 28, Nays 3.

Yeas:  Birdwell, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hinojosa, Huffman, Lucio, Nichols, Ogden, Patrick, Rodriguez, Seliger, Shapiro, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays:  Hegar, Jackson, Nelson.

## HOUSE BILL 1806 ON SECOND READING

Senator Hegar moved to suspend the regular order of business to take up for consideration **HB 1806** at this time on its second reading:

**HB 1806**, Relating to fishing tournament fraud; providing penalties.

The motion prevailed.

Senator Shapiro asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Nays: Shapiro.

### HOUSE BILL 1806 ON THIRD READING

Senator Hegar moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 1806** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 1.

Nays: Shapiro.

### COMMITTEE SUBSTITUTE
### SENATE BILL 905 ON SECOND READING

Senator Patrick moved to suspend the regular order of business to take up for consideration **CSSB 905** at this time on its second reading:

**CSSB 905**, Relating to the application of certain concealed handgun license laws to statewide elected officials, certain current and former members of the legislature, and certain federal and state employees.

The motion prevailed by the following vote: Yeas 25, Nays 6.

Yeas: Carona, Deuell, Duncan, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Patrick, Seliger, Shapiro, Uresti, Van de Putte, Watson, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Davis, Ellis, Ogden, Rodriguez, Wentworth.

The bill was read second time and was passed to engrossment by the following vote: Yeas 25, Nays 6. (Same as previous roll call)

### COMMITTEE SUBSTITUTE
### SENATE BILL 905 ON THIRD READING

Senator Patrick moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 905** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 25, Nays 6.

Yeas: Carona, Deuell, Duncan, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Patrick, Seliger, Shapiro, Uresti, Van de Putte, Watson, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Davis, Ellis, Ogden, Rodriguez, Wentworth.

The bill was read third time and was passed by the following vote: Yeas 25, Nays 6. (Same as previous roll call)

**(Senator Eltife in Chair)**

### HOUSE BILL 571 ON SECOND READING

Senator Williams moved to suspend the regular order of business to take up for consideration **HB 571** at this time on its second reading:

**HB 571**, Relating to the regulation of certain aggregate production operations by the Texas Commission on Environmental Quality; providing penalties.

The motion prevailed.

Senator Nelson asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Nays: Nelson.

### HOUSE BILL 571 ON THIRD READING

Senator Williams moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 571** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 30, Nays 1.

Nays: Nelson.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 1. (Same as previous roll call)

### SENATE CONCURRENT RESOLUTION 32
### ON SECOND READING

Senator Seliger moved to suspend the regular order of business to take up for consideration **SCR 32** at this time on its second reading:

**SCR 32**, Expressing opposition to federal regulation of intrastate water resources.

The motion prevailed.

Senators Ellis, Uresti, Watson, and Zaffirini asked to be recorded as voting "Nay" on suspension of the regular order of business.

The resolution was read second time and was adopted by the following vote: Yeas 27, Nays 4.

Yeas: Birdwell, Carona, Davis, Deuell, Duncan, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Ogden, Patrick, Rodriguez, Seliger, Shapiro, Van de Putte, Wentworth, West, Whitmire, Williams.

Nays: Ellis, Uresti, Watson, Zaffirini.

TX_00003202
## JA_002933

TX_00003202

USA_00017815

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 13 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 102 of
Monday, May 9, 2011          SENATE JOURNAL          2079

## COMMITTEE SUBSTITUTE
## SENATE BILL 1334 ON SECOND READING

Senator Deuell moved to suspend the regular order of business to take up for consideration **CSSB 1334** at this time on its second reading:

**CSSB 1334**, Relating to the dismissal of complaints against property tax professionals.

The motion prevailed.

Senator Nichols asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment except as follows:

Nays: Nichols.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1334 ON THIRD READING

Senator Deuell moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1334** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 30, Nays 1.

Nays: Nichols.

The bill was read third time and was passed by the following vote:  Yeas 30, Nays 1.  (Same as previous roll call)

## SENATE BILL 1895 ON SECOND READING

On motion of Senator Hegar and by unanimous consent, the regular order of business was suspended to take up for consideration **SB 1895** at this time on its second reading:

**SB 1895**, Relating to director elections and powers of the Texana Groundwater Conservation District.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

## SENATE BILL 1895 ON THIRD READING

Senator Hegar moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **SB 1895** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1809 ON THIRD READING

Senator Lucio moved to suspend the regular order of business to take up for consideration **CSSB 1809** at this time on its third reading and final passage:

**CSSB 1809**, Relating to a study by the comptroller of public accounts of the economic impact of the Texas-Mexico border wall in the State of Texas.

The motion prevailed by the following vote: Yeas 23, Nays 8.

Yeas: Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Gallegos, Hegar, Hinojosa, Huffman, Jackson, Lucio, Ogden, Rodriguez, Seliger, Uresti, Van de Putte, Watson, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Fraser, Harris, Nelson, Nichols, Patrick, Shapiro, Wentworth.

The bill was read third time.

Senator Lucio offered the following amendment to the bill:

**Floor Amendment No. 1 on Third Reading**

Amend **CSSB 1809** (senate committee printing) on third reading by inserting the following new SECTION and renumbering subsequent SECTIONS accordingly:

SECTION ____. This Act does not make an appropriation. A provision in this Act that creates a new governmental program, creates a new entitlement, or imposes a new duty on a governmental entity is not mandatory during a fiscal period for which the legislature has not made a specific appropriation to implement the provision. This section does not apply if this Act does not require an appropriation.

The amendment to **CSSB 1809** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1 on Third Reading.

On motion of Senator Lucio and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1809** as amended was finally passed by the following vote: Yeas 22, Nays 9.

Yeas: Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Gallegos, Hinojosa, Huffman, Jackson, Lucio, Ogden, Rodriguez, Seliger, Uresti, Van de Putte, Watson, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Fraser, Harris, Hegar, Nelson, Nichols, Patrick, Shapiro, Wentworth.

## HOUSE BILL 1832 ON SECOND READING

On motion of Senator Williams and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 1832** at this time on its second reading:

**HB 1832**, Relating to the law governing the Lower Neches Valley Authority; providing authority to issue bonds.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 1832 ON THIRD READING

Senator Williams moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 1832** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 2785 ON SECOND READING

On motion of Senator Shapiro and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 2785** at this time on its second reading:

**HB 2785**, Relating to the creation of the Select Committee on Economic Development.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 2785 ON THIRD READING

Senator Shapiro moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 2785** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### MOTION TO PLACE
### HOUSE BILL 2360 ON SECOND READING

Senator Ogden moved to suspend the regular order of business to take up for consideration **HB 2360** at this time on its second reading:

**HB 2360**, Relating to the creation of the Corn Hill Regional Water Authority; providing authority to issue bonds.

Senator Ogden withdrew the motion to suspend the regular order of business.

### CONGRATULATIONS EXTENDED

Senator West was recognized and, on behalf of the Senate, extended congratulations for the Dallas Mavericks' win over the Los Angeles Lakers.

TX_00003205

JA_002936

TX_00003205

USA_00017818

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 16 of 42
1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 105 of
2082                    82nd Legislature — Regular Session            36th Day

## CONFERENCE COMMITTEE ON HOUSE BILL 1555

Senator Ellis called from the President's table, for consideration at this time, the request of the House for a conference committee to adjust the differences between the two Houses on **HB 1555** and moved that the request be granted.

The motion prevailed without objection.

The Presiding Officer asked if there were any motions to instruct the conference committee on **HB 1555** before appointment.

There were no motions offered.

Accordingly, the Presiding Officer announced the appointment of the following conferees on the part of the Senate: Senators Ellis, Chair; Shapiro, Whitmire, Patrick, and Huffman.

### (President in Chair)

### SENATE RESOLUTION 935

Senator Fraser offered the following resolution:

BE IT RESOLVED by the Senate of the State of Texas, 82nd Legislature, Regular Session, 2011, That Senate Rule 12.03 be suspended in part as provided by Senate rule 12.08 to enable the conference committee appointed to resolve the differences on Senate Bill 14 (requirements to vote, including presenting proof of identification; providing criminal penalties), to consider and take action on the following matters:

(1) Senate Rule 12.03(1) is suspended to permit the committee to change text not in disagreement in proposed SECTION 11 of the bill, in added Section 63.0012(a), Election Code, to read as follows:

(a) An election officer shall distribute written notice of the identification that will be required for voting beginning with elections held after January 1, 2012, and information on obtaining identification without a fee under Chapter 521A, Transportation Code, to each voter who, when offering to vote, presents a form of identification that will not be sufficient for acceptance as a voter under this chapter beginning with those elections.

Explanation: This change is necessary to update the cross-reference to reflect the addition of Chapter 521A, Transportation Code.

(2) Senate Rule 12.03(1) is suspended to permit the committee to change text not in disagreement in proposed SECTION 14 of the bill, in amended Section 63.0101(1), Election Code, to read as follows:

(1) a driver's license, election identification certificate, or personal identification card issued to the person by the Department of Public Safety that has not [or a similar document issued to the person by an agency of another state, regardless of whether the license or card has] expired or that expired no earlier than 60 days before the date of presentation;

Explanation: This change is necessary to update the list of acceptable forms of identification to reflect the addition of election identification certificates in Chapter 521A, Transportation Code.

TX_00003206

USA_00017819

Case 2:13-cv-00193   Document 661-10   Filed on 11/11/14 in TXSD   Page 17 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 106 of
Monday, May 9, 2011          SENATE JOURNAL          2039

(3) Senate Rule 12.03(1) is suspended to permit the committee to change text not in disagreement in proposed SECTION 17 of the bill, in added Section 65.054(b)(2)(B), Election Code, to read as follows:

(B) notwithstanding Chapter 110, Civil Practice and Remedies Code, executes an affidavit under penalty of perjury that states the voter has a religious objection to being photographed and the voter has consistently refused to be photographed for any governmental purpose from the time the voter has held this belief; or

Explanation: This change is necessary to clarify the religious objection exception to the requirement that a voter have photo identification to vote.

(4) Senate Rule 12.03(1) is suspended to permit the committee to change text not in disagreement in proposed SECTION 18 of the bill, in added Section 65.0541(a), Election Code, to read as follows:

(a) A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election:

(1) present a form of identification described by Section 63.0101 to the voter registrar for examination; or

(2) execute an affidavit described by Section 65.054(b)(2)(B) or (C) in the presence of the voter registrar.

Explanation: This change is necessary to update the cross-reference to reflect the addition of Section 65.054(b)(2)(C), Election Code.

(5) Senate Rule 12.03(4) is suspended to permit the committee to add text on a matter not included in either version of the bill by adding the following new SECTION to the bill:

SECTION 20. Subtitle B, Title 7, Transportation Code, is amended by adding Chapter 521A to read as follows:

CHAPTER 521A. ELECTION IDENTIFICATION CERTIFICATE

Sec. 521A.001. ELECTION IDENTIFICATION CERTIFICATE. (a) The department shall issue an election identification certificate to a person who states that the person is obtaining the certificate for the purpose of satisfying Section 63.001(b), Election Code, and does not have another form of identification described by Section 63.0101, Election Code, and:

(1) who is a registered voter in this state and presents a valid voter registration certificate; or

(2) who is eligible for registration under Section 13.001, Election Code, and submits a registration application to the department.

(b) The department may not collect a fee for an election identification certificate or a duplicate election identification certificate issued under this section.

(c) An election identification certificate may not be used or accepted as a personal identification certificate.

(d) An election officer may not deny the holder of an election identification certificate the ability to vote because the holder has an election identification certificate rather than a driver's license or personal identification certificate issued under this subtitle.

TX_00003207
JA_002938

TX_00003207

USA_00017820

Case 2:13-cv-00193   Document 661-10   Filed on 11/11/14 in TXSD   Page 18 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 107 of
2084                    82nd Legislature — Regular Session                    36th Day

(e) An election identification certificate must be similar in form to, but distinguishable in color from, a driver's license and a personal identification certificate. The department may cooperate with the secretary of state in developing the form and appearance of an election identification certificate.

(f) The department may require each applicant for an original or renewal election identification certificate to furnish to the department the information required by Section 521.142.

(g) The department may cancel and require surrender of an election identification certificate after determining that the holder was not entitled to the certificate or gave incorrect or incomplete information in the application for the certificate.

(h) A certificate expires on a date specified by the department, except that a certificate issued to a person 70 years of age or older does not expire.

Explanation: This addition is necessary to provide election identification certificates to certain voters without charge to enable those voters to meet the photo identification requirements for voting.

**SR 935** was read and was adopted by the following vote: Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

## CONFERENCE COMMITTEE REPORT ON
## SENATE BILL 14 ADOPTED

Senator Fraser called from the President's table the Conference Committee Report on **SB 14**. The Conference Committee Report was filed with the Senate on Wednesday, May 4, 2011.

On motion of Senator Fraser, the Conference Committee Report was adopted by the following vote: Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

## BILLS AND RESOLUTIONS SIGNED

The President announced the signing of the following enrolled bills and resolutions in the presence of the Senate after the captions had been read:

**SB 18**, **SB 265**, **SB 378**, **SB 528**, **SB 653**, **SB 820**, **SB 877**, **SB 918**, **SB 1195**, **SB 1272**, **SB 1303**, **SB 1490**, **SB 1568**, **SB 1716**, **SJR 4**, **HB 15**, **HB 46**, **HB 906**, **HB 984**, **HB 1032**, **HB 1346**, **HB 1625**, **HB 2561**, **HCR 45**.

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 19 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 108 of
Monday, May 9, 2011 SENATE JOURNAL 2083

## SENATE BILL 201 WITH HOUSE AMENDMENTS

Senator Uresti called **SB 201** from the President's table for consideration of the House amendments to the bill.

The President laid the bill and the House amendments before the Senate.

### Floor Amendment No. 1

Amend **SB 201** (house committee report) as follows:

SECTION ____. Subchapter B, Chapter 23, Tax Code, is amended by adding Section 23.231 to read as follows:

Sec. 23.231. LIMITATION ON APPRAISED VALUE OF RESIDENCE HOMESTEADS OF CERTAIN VETERANS. (a) This section applies only to a residence owned by a veteran of the armed services of the United States who receives from the United States Department of Veteran Affairs or its successor a disability rating of fifty percent or greater that is donated by and legal title transferred from a charitable organization described by Section 11.11(c) of this code.

(b) For the purpose of appraising property that is donated and transferred as provided by subsection (a) and qualifies under Sections 11.13 or 11.131 of this code as a residence homestead, the chief appraiser shall appraise the property at 30 percent of its market value.

### Floor Amendment No. 1 on Third Reading

Amend Floor Amendment No. 1 to **SB 201** (second reading, as amended) by Callegari as follows:

(1) On page 1, line 11, strike "11.11(c)" and substitute "11.18(c)".

The amendments were read.

Senator Uresti moved that the Senate do not concur in the House amendments, but that a conference committee be appointed to adjust the differences between the two Houses on the bill.

The motion prevailed without objection.

The President asked if there were any motions to instruct the conference committee on **SB 201** before appointment.

There were no motions offered.

The President announced the appointment of the following conferees on the part of the Senate: Senators Uresti, Chair; Hinojosa, Wentworth, Birdwell, and Williams.

## SENATE BILL 893 WITH HOUSE AMENDMENT

Senator Whitmire called **SB 893** from the President's table for consideration of the House amendment to the bill.

The President laid the bill and the House amendment before the Senate.

TX_00003209

USA_00017822

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 20 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 109 of
2086                    82nd Legislature — Regular Session          56th Day

**Amendment**

Amend **SB 893** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED
AN ACT

relating to motor fuel quality and testing.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Subsection (c), Section 12.020, Agriculture Code, is amended to read as follows:

(c)  The provisions of law subject to this section and the applicable penalty amounts are as follows:

| Provision | Amount of Penalty |
|---|---|
| [Chapter 41 | not more than $5,000] |
| Chapters 13, 14A, 17, 18, 19, 41, 46, 61, 72, 73, 74, 76, 94, 95, 101, 102, 103, 121, 125, 132, and 134 | not more than $5,000 |
| [Subchapter B, Chapter 71 | |
| [Chapter 19 | |
| [Chapter 76 | not more than $5,000] |
| Subchapters A, B, and C, Chapter 71 | |
| [Chapters 72, 73, and 74] | not more than $5,000 |
| Chapter 14 | not more than $10,000 |
| Chapter 1951, Occupations Code | not more than $5,000 |
| Chapter 153, Natural Resources Code | not more than $5,000. |

SECTION 2.  Subsection (a), Section 17.052, Agriculture Code, is amended to read as follows:

(a)  Except as provided by Subsection (b), a distributor, supplier, wholesaler, or jobber of motor fuel may not deliver to an outlet in this state a motor fuel mixture that contains ethanol or methanol exceeding one percent by volume of the mixture unless, at the time of the delivery of the mixture, the person also delivers to the outlet receiving the delivery[:

[(1)  signs required by Section 17.051 in a number sufficient for the dealer receiving the mixture to comply with that section; and

[(2)]  a manifest, bill of sale, bill of lading, or other document evidencing delivery of the mixture, that[:

[(A)]  includes a statement containing:

(1) [(i)]  the percentage of ethanol or methanol contained in the mixture; and

(2) [(ii)]  the types and percentages of any associated cosolvents contained in the mixture[; and

[(B)  evidences delivery of the signs required under Subdivision (1)].

SECTION 3.  Section 17.053, Agriculture Code, is amended to read as follows:

Sec. 17.053.  RECORD OF DELIVERY DOCUMENTS; INSPECTION AUTHORIZED.  (a)  Each dealer shall keep a copy of each document required to be delivered to the dealer by Section 17.052 until the <u>fourth</u> [first] anniversary of the

TX_00003210

USA_00017823

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 21 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 110 of
Monday, May 9, 2011 SENATE JOURNAL 2089

delivery date. [~~During the first 60 days following delivery of a fuel mixture subject to this chapter, the dealer shall keep a copy at the station or retail outlet where the motor fuel was delivered.~~]

(b) Each distributor, supplier, wholesaler, and jobber of motor fuel shall keep [~~at the person's principal place of business~~] a copy of each document required to be delivered to the dealer by Section 17.052 until the <u>fourth</u> [~~first~~] anniversary of the delivery date.

(c) The commissioner or an authorized representative of the commissioner may inspect documents described by this section. <u>On written notice presented by the commissioner or an authorized representative of the commissioner to any employee at a dealer's station or retail outlet or mailed to the principal place of business of a dealer, distributor, supplier, wholesaler, or jobber, the dealer, distributor, supplier, wholesaler, or jobber shall provide the commissioner or authorized representative of the commissioner with the documents described by this section within the period specified in the notice.</u>

(d) The commissioner by rule may:

(1) <u>require each dealer, distributor, supplier, wholesaler, and jobber to maintain and make available to the department:</u>

(A) <u>invoices, receipts, or other transmittal documents or records, including electronically stored information, showing or describing the purchase, sale, delivery, or distribution of motor fuel;</u>

(B) <u>invoices, receipts, work orders, reports, or other documents, including electronically stored information, showing or describing the installation, maintenance, or repair of:</u>

(i) <u>motor fuel dispensing devices; and</u>

(ii) <u>any equipment used in connection with motor fuel dispensing devices to record, display, or produce receipts or audit trails concerning the purchase, sale, delivery, or distribution of motor fuel; and</u>

(C) <u>any record or other document related to the sampling and testing of motor fuel purchased, sold, delivered, or distributed by the dealer, distributor, supplier, wholesaler, or jobber; and</u>

(2) prescribe:

(A) [~~(1)~~] the manner of filing documents <u>or records</u> required to be kept under this section <u>or by department rule</u>; and

(B) [~~(2)~~] the time, place, and manner of inspection of the documents <u>or records.</u>

SECTION 4. Section 17.054, Agriculture Code, is amended by amending Subsection (c) and adding Subsection (d) to read as follows:

(c) The commissioner or an authorized representative of the commissioner may inspect a document required to be kept under this section. <u>On written notice presented by the commissioner or an authorized representative of the commissioner to any employee at a dealer's station or retail outlet or mailed to the dealer's principal place of business, the dealer shall provide the commissioner or authorized representative of the commissioner with the documents described by this section within the period specified in the notice.</u>

(d) <u>The commissioner by rule may:</u>

TX_00003211
JA_002942

TX_00003211

USA_00017824

Case 2:13-cv-00193  Document 661-10  Filed on 11/11/14 in TXSD  Page 22 of 42
e 1:12-cv-00128-RMC-DST-RLW  Document 209-2  Filed 06/20/12  Page 111 of
2088                    82nd Legislature — Regular Session              56th Day

(1)  require each dealer to maintain and make available to the department:

(A)  invoices, receipts, or other transmittal documents or records, including electronically stored information, showing or describing the purchase, sale, delivery, or distribution of motor fuel;

(B)  invoices, receipts, work orders, reports, or other documents, including electronically stored information, showing or describing the installation, maintenance, or repair of:

(i)  motor fuel dispensing devices; and

(ii)  any equipment used in connection with motor fuel dispensing devices to record, display, or produce receipts or audit trails concerning the purchase, sale, delivery, or distribution of motor fuel; and

(C)  any record or other document related to the sampling and testing of motor fuel purchased, sold, delivered, or distributed by the dealer; and

(2)  prescribe:

(A)  the manner of filing documents or records required to be kept under this section or by department rule; and

(B)  the time, place, and manner of inspection of the documents or records.

SECTION 5.  Section 17.071, Agriculture Code, is amended to read as follows:

Sec. 17.071.  MINIMUM MOTOR FUEL QUALITY AND TESTING STANDARDS.  (a)  The department by rule shall adopt minimum motor fuel quality and testing standards for motor fuel that is sold or offered for sale in this state.  The standards must comply with the nationally recognized minimum standards established by:

(1)  the American Society for Testing and Materials[, as those standards existed on September 1, 2009], for motor fuels other than motor fuels blended with ethanol; and

(2)  the National Institute of Standards and Technology, [as those standards existed on September 1, 2009, other than the standard vapor to liquid ratio specification] for motor fuels blended with ethanol.

(b)  The department may adopt rules as necessary to bring about uniformity between the standards established under this subchapter and the nationally recognized standards described by Subsection (a).

SECTION 6.  Section 17.073, Agriculture Code, is amended to read as follows:

Sec. 17.073.  STOP-SALE ORDER; SHUTDOWN OF DISPENSING DEVICES.  (a)  If the department has reason to believe that motor fuel is in violation of this chapter or a rule adopted under this chapter, or that the motor fuel is being sold or offered for sale in a manner that violates this chapter or a rule adopted under this chapter, the department may:

(1)  issue and enforce a written order to stop the sale of the motor fuel;

(2)  place on a device used to dispense the motor fuel a tag or other mark with the words "Out of Order"; or

(3)  stop the sale of the motor fuel and mark a device used to dispense the motor fuel as out of order.

TX_00003212
JA_002943

TX_00003212
USA_00017825

Case 2:13-cv-00193  Document 661-10  Filed on 11/11/14 in TXSD  Page 23 of 42
e 1:12-cv-00128-RMC-DST-RLW  Document 209-2  Filed 06/20/12  Page 112 of
Monday, May 9, 2011  SENATE JOURNAL  2089

(b) The department shall present an [the] order issued under this section to the dealer, distributor, jobber, supplier, or wholesaler who is in control of the motor fuel at the time the motor fuel or the dealer, distributor, jobber, supplier, or wholesaler of the motor fuel is inspected by the commissioner [is tested]. The person who receives the order may not sell [the] motor fuel subject to a stop-sale order or use a device on which the department has placed a tag or other mark under Subsection (a)(2) or (3) until the department determines that the motor fuel or device is in compliance with this chapter and department rules.

SECTION 7. Subsection (a), Section 17.155, Agriculture Code, is amended to read as follows:

(a) The department may impose an administrative penalty against a person regulated under this chapter who violates this chapter or a rule or order adopted under this chapter. An [Except as otherwise provided by this section, an] administrative penalty is imposed and collected in the manner provided by Section 12.020.

SECTION 8. Subsections (c) and (d), Section 17.051, and Subsections (b), (c), (d), (e), (f), (g), (h), and (i), Section 17.155, Agriculture Code, are repealed.

SECTION 9. The changes in law made by this Act apply only to an offense or other violation under Chapter 17, Agriculture Code, committed on or after the effective date of this Act. An offense or other violation committed before the effective date of this Act is governed by the law in effect when the offense or violation was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense or other violation was committed before the effective date of this Act if any element of the offense or violation was committed before that date.

SECTION 10. This Act takes effect September 1, 2011.

The amendment was read.

Senator Whitmire moved to concur in the House amendment to **SB 893**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

**COMMITTEE SUBSTITUTE**
**SENATE BILL 1581 ON SECOND READING**

Senator Ogden moved to suspend the regular order of business to take up for consideration **CSSB 1581** at this time on its second reading:

**CSSB 1581**, Relating to state fiscal matters related to public and higher education.

The motion prevailed.

Senators Ellis, Harris, Lucio, Nelson, Watson, and Zaffirini asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time.

Senator Eltife offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSSB 1581** (senate committee report) in SECTION 5.01 of the bill by striking proposed Section 63.0035, Education Code (page 2, line 54, through page 3, line 18), and substituting the following:

TX_00003213
JA_002944

Sec. 63.0035.  PARTIAL LIQUIDATION OF INSTITUTION'S SHARE; DISTRIBUTION OF FUND AFTER LIQUIDATION. (a)  Subject to appropriation of the appropriate amounts, the board of regents of The University of Texas System shall transfer to each institution that is entitled in a state fiscal year to receive a distribution from the permanent fund established under this subchapter a one-time liquidation distribution for the state fiscal year ending August 31, 2012, and, for that fiscal year and each subsequent fiscal year, a reduced annual distribution as provided by this section.

(b)  The board of regents of The University of Texas System, not later than November 1, 2011, shall:

(1)  calculate the amount of each liquidation distribution in accordance with this section; and

(2)  provide to all institutions entitled to receive a distribution from the permanent fund established under this subchapter written notice specifying:

(A)  the amount of the liquidation distribution to be made to each institution in the state fiscal year ending August 31, 2012; and

(B)  the amounts of the other distributions to be made in that fiscal year to each institution under this section from the per capita account and the formula account described by Subsection (c).

(c)  As soon as practicable after the beginning of the state fiscal year ending August 31, 2012, the permanent fund shall be segregated into two accounts, the per capita account and the formula account. Notwithstanding any other law, distributions in that fiscal year and in subsequent fiscal years shall be made in accordance with this section and not in accordance with Section 63.003(a). The amount segregated into the per capita account is equal to 70 percent of the total value of the fund at the end of the preceding state fiscal year. The formula account is composed of the remaining 30 percent of that total value at the end of that preceding fiscal year.

(d)  A liquidation distribution is an amount equal to one-third of the institution's fractional share of the value of the per capita account. An institution's fractional share of the per capita account is determined by multiplying the amount segregated into the per capita account by a fraction, the numerator of which is one and the denominator of which is the number of institutions that are entitled to receive a distribution from the permanent fund established under this subchapter.

(e)  In the state fiscal year ending August 31, 2012, and in each subsequent fiscal year, the annual amount appropriated for distribution from the investment of the per capita account shall be distributed in equal shares to each institution.

(e-1)  Subsection (e) does not apply to the amounts distributed as liquidation distributions in the state fiscal year ending August 31, 2012.

(f)  In each state fiscal year in which distributions are made from the per capita account under Subsection (e), the amount appropriated for distribution from the investment of the formula account shall be distributed in equal portions with respect to each of the following categories, with each institution receiving a share in each category proportionate to the amount that the institution spent in that category in the preceding state fiscal biennium as determined by the institution's annual financial report, compared to the total spending of all institutions listed in Section 63.002(c) in that category in the preceding biennium:

TX_00003214

USA_00017827

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 25 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 114 of
Monday, May 9, 2011 SENATE JOURNAL 2011

(1) instructional expenditures;

(2) research expenditures; and

(3) unsponsored charity care.

(g) Except as otherwise provided by this section:

(1) Section 63.003(b) applies to amounts appropriated for distribution under Subsections (e) and (f) of this section; and

(2) Sections 63.003(c) and (d) apply to amounts appropriated for distribution under Subsection (f) of this section.

(h) The comptroller in consultation with the board of regents of The University of Texas System shall establish procedures to implement this section. A liquidation distribution shall be made in accordance with those procedures and in consultation with the institutions receiving the liquidation distribution.

(i) Any direct costs associated with liquidation distributions, including discounts on investment dispositions and related expenses realized by the permanent fund, shall be deducted in equal portions from the amounts of the liquidation distributions. The procedures established under Subsection (h) must provide for the minimization of any costs associated with making the liquidation distributions considering the liquidity of the investment assets of the fund.

(j) Notwithstanding other provisions of this subchapter, the amount distributed to an institution under this section as a liquidation distribution is under the exclusive control of the governing board of the institution and may be used by the institution in any manner for any lawful purpose. The comptroller shall establish procedures to ensure that a liquidation distribution to Baylor College of Medicine is used for public purposes consistent with a contract in effect under Section 61.092.

SECTION ____. Section 63.003(d), Education Code, is amended to read as follows:

(d) For the purposes of this section or Section 63.0035, Baylor College of Medicine may receive funds [under Subsection (a)(2)] only if the institution provides the comptroller with an independently audited schedule of information that substantially complies with the reporting requirements issued by the comptroller for other eligible institutions [under Subsection (a)(2)]. Information under this subsection must be supplied not later than the time other eligible institutions are required to submit similar information.

The amendment to **CSSB 1581** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

Senator Birdwell offered the following amendment to the bill:

## Floor Amendment No. 2

Amend **CSSB 1581** (senate committee printing) as follows:

(1) In ARTICLE 4 of the bill, in the heading to ARTICLE 4, between "TUITION" and "EXEMPTIONS" (page 2, line 21), insert "RATES AND".

(2) In ARTICLE 4 of the bill, add the following appropriately numbered SECTIONS and renumber subsequent SECTIONS of ARTICLE 4 accordingly:

TX_00003215
JA_002946

Case 2:13-cv-00193  Document 661-10  Filed on 11/11/14 in TXSD  Page 26 of 42
e 1:12-cv-00128-RMC-DST-RLW  Document 209-2  Filed 06/20/12  Page 115 of
2092                82nd Legislature — Regular Session            56th  Day

SECTION 4.___. Section 54.052, Education Code, is amended by adding Subsection (c) to read as follows:

(c) Notwithstanding any other provision of this section, a person who is not authorized by law to be present in the United States may not be considered a resident of this state for purposes of this title.

SECTION 4.___. Section 54.055, Education Code, is amended by adding Subsection (c) to read as follows:

(c) Notwithstanding Subsection (a), an institution of higher education may not, on the basis of Section 54.052(c), reclassify as a nonresident of this state a student classified as a resident under Section 54.052(a)(3) if, not later than the beginning of the 2011-2012 academic year, the student has completed at least 30 semester credit hours at an institution of higher education.

SECTION 4.___. Except as provided by Section 54.055(c), Education Code, as added by this article, a public institution of higher education in this state may, for any semester or academic term, before the beginning of that semester or academic term, reclassify as a nonresident a student previously classified as a resident of this state by the institution or another public institution of higher education in this state before the enactment of Section 54.052(c), Education Code, as added by this article, if the student is not authorized by law to be present in the United States.

BIRDWELL      PATRICK<br>
HUFFMAN    WENTWORTH<br>
NELSON

The amendment to **CSSB 1581** was read.

Senator Birdwell withdrew Floor Amendment No. 2.

Senator Gallegos offered the following amendment to the bill:

**Floor Amendment No. 3**

Amend **CSSB 1581** as follows:

(1) In the recital to SECTION 4.01 of the bill (page 2, lines 22 and 23),  strike "Subsection (c), Section 54.214, Education Code, is amended" and substitute "Section 54.214, Education Code, is amended by amending Subsection (c) and by adding Subsection (c-1)"

(2) In SECTION 4.01 of the bill, on page 2, between lines 49 and 50, insert the following:

(c-1) Notwithstanding Subsection (c)(5), a person who previously received a tuition exemption under Section 54.214 remains eligible for an exemption if the person:

(1) is enrolled at an institution of higher education granting the exemption in courses required for teacher certification; and

(2) meets the eligibility requirements in (c) other than Subsection (c)(5).

The amendment to **CSSB 1581** was read.

On motion of Senator Ogden, Floor Amendment No. 3 was tabled by the following vote: Yeas 19, Nays 12.

TX_00003216<br>
JA_002947

TX_00003216

USA_00017829

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

Senator Zaffirini offered the following amendment to the bill:

## Floor Amendment No. 4

Amend **CSSB 1581** (Senate Committee Report) by adding the following appropriately numbered ARTICLE to the bill and renumbering subsequent ARTICLES of the bill appropriately:

ARTICLE ___. ADMINISTRATIVE MATTERS CONCERNING INSTITUTIONS OF HIGHER EDUCATION

SECTION ___.01. Section 51.003, Education Code, is amended by amending Subsection (b) and adding Subsection (f) to read as follows:

(b) The funds shall either be deposited in the depository bank or banks or invested as authorized by Chapter 2256, Government Code (Public Funds Investment Act). Funds that are to be deposited in the depository bank or banks must be deposited within seven days from the date of receipt by the institution [collection].

(f) Notwithstanding any other provision of this section, the governing board of each institution may maintain unsecured deposits in a foreign bank as necessary to support the institution's operations in a foreign country. The foreign bank must:

(1) be licensed and supervised by a central bank;

(2) be audited annually by an accounting firm that follows international financial reporting standards; and

(3) maintain a capital to total assets ratio that is not less than the greater of four percent or the minimum tier 1 capital to total assets ratio required for depository institutions insured by the Federal Deposit Insurance Corporation.

SECTION ___.02. Subchapter A, Chapter 51, Education Code, is amended by amending Section 51.005 and adding Sections 51.010, 51.011, and 51.012 to read as follows:

Sec. 51.005. REPORTS. Each institution of higher education [(a) True and full accounts shall be kept by the governing board and by the employees of the institution of all funds collected from all sources and of all sums paid out and the persons to whom and the purposes for which the sums are paid. The governing board] shall prepare [annually print] a complete annual financial report as prescribed by Section 2101.011, Government Code [of all the sums collected, all expenditures, and all sums remaining on hand. The report shall show the true condition of all funds as of the August 31 preceding as well as the collections and expenditures for the preceding year.

[(b) Reports under this section must be in a form approved jointly by the coordinating board and the comptroller. The accounting and classification procedures of each institution must be consistent with uniform procedures prescribed for that purpose by the coordinating board and the comptroller. The requirements imposed by the coordinating board and the comptroller must be designed to reduce paperwork and duplicative reports.

TX_00003217
JA_002948

TX_00003217

USA_00017830

[(e)  The  governing  board  shall  furnish  one  copy  of  the  report  each  to  the  governor,  comptroller  of  public  accounts,  state  auditor,  Texas  Higher  Education  Coordinating  Board,  Legislative  Budget  Board,  House  Appropriations  Committee,  Senate  Finance  Committee,  and  Legislative  Reference  Library.  A  copy  of  the  report  shall  be  submitted  to  the  comptroller  by  the  deadline  established  by  the  comptroller  or  the  General  Appropriations  Act  as  necessary  to  prepare  an  audited  comprehensive  financial  report.  The  governing  board  shall  retain  five  copies  of  the  report  for  distribution  to  legislators  or  other  state  officials  on  request].

Sec. 51.010.  COLLECTION OF DELINQUENT OBLIGATIONS.  If under the rules adopted by the attorney general under Chapter 2107, Government Code, an institution of higher education is not required to refer a delinquent obligation for collection to the attorney general, the institution is not required to expend resources for further collection efforts if, considering the amount, security, likelihood of collection, expense, and available resources, the institution determines that further collection should not be actively pursued.

Sec. 51.011.  DISPOSITION  OF  SMALL  CREDIT  BALANCES.  (a)  This section applies to a credit balance of less than $25 held by an institution of higher education that is presumed abandoned under Chapter 72, Property Code.

(b)  An institution of higher education may maintain an unclaimed money fund and transfer to that fund a credit balance to which this section applies.  A deposit to the unclaimed money fund does not affect the ownership of the amount deposited.  The institution shall:

(1)  adopt procedures for owners to make and receive payments of claims against the fund; and

(2)  maintain a database that permits members of the public to search for ownership of unclaimed funds.

(c)  The institution shall use the fund to pay the claims of persons establishing ownership of amounts transferred to the fund and shall hold and account for the unclaimed money fund as educational and general funds of the institution. If the fund balance is insufficient to pay a valid claim, the institution shall pay the claim from the institution's other educational and general funds.

(d)  Each fiscal year, after deducting funds sufficient to pay anticipated expenses of and claims against the unclaimed money fund, the institution shall use the balance of the fund as other educational and general funds of the institution.

(e)  In consultation with institutions of higher education, the comptroller by rule may establish minimum requirements for notice to owners of unclaimed money deposited in the unclaimed money fund and for charges for that notice. The rules may not provide stricter requirements than the comptroller applies for amounts of less than $25 in the custody of the comptroller under Chapter 74, Property Code.

(f)  If an institution of higher education maintains an unclaimed money fund under this section, Chapter 74, Property Code, does not apply to a credit balance to which this section applies.

Sec. 51.012.  PAYMENTS  BY  ELECTRONIC  FUNDS  TRANSFER  OR ELECTRONIC PAY CARD.  An institution of higher education may make any payment, including a payment of salary or wages, through electronic funds transfer or by electronic pay card.

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 29 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 118 of
Monday, May 9, 2011 SENATE JOURNAL 2033

SECTION __.03. Section 65.42, Education Code, is amended to read as follows:

Sec. 65.42. DELINQUENT ACCOUNTS; VENUE. A suit by The University of Texas System on its own behalf or on behalf of a component institution of The University of Texas System to recover a delinquent loan, account, or debt owed to The University of Texas System or a component institution of The University of Texas System must [may] be brought in Travis County.

SECTION __.04. Section 1231.001, Government Code, is amended by amending Subdivision (2) and adding Subdivision (3) to read as follows:

(2) "State security" means:

(A) an obligation, including a bond, issued by:

(i) a state agency;

(ii) an entity that is expressly created by statute and has statewide jurisdiction; or

(iii) an entity issuing the obligation on behalf of this state or on behalf of an entity described by Subparagraph (i) or (ii);

(B) an installment sale or lease-purchase obligation that is issued by or on behalf of an entity described by Paragraph (A) and that has:

(i) a stated term of more than five years; or

(ii) an initial principal amount of more than $250,000; or

(C) an obligation, including a bond, that is issued under Chapter 53, Education Code, at the request of or for the benefit of an institution of higher education [as defined by Section 61.003, Education Code,] other than a public junior college.

(3) "Institution of higher education" has the meaning assigned by Section 61.003, Education Code.

SECTION __.05. Section 1231.041, Government Code, is amended to read as follows:

Sec. 1231.041. APPROVAL OF STATE SECURITY. (a) Except as otherwise provided by this section, an [An] entity, including a state agency, may not issue a state security unless:

(1) the board approves the issuance; or

(2) the security is exempted under law, including a board rule adopted under Section 1231.022(2).

(b) A state security issued by an institution of higher education, or issued at the request of or for the benefit of an institution of higher education, is not subject to board approval unless the general revenue of the state is pledged to the payment of the security.

SECTION __.06. Section 74.001, Property Code, is amended by adding Subsection (c) to read as follows:

(c) This chapter does not apply to small credit balances held by an institution of higher education in an unclaimed money fund under Section 51.011, Education Code.

SECTION __.07. Section 51.923, Education Code, is amended to read as follows:

TX_00003219

USA_00017832

Sec. 51.923. QUALIFICATIONS OF CERTAIN BUSINESS ENTITIES TO ENTER INTO CONTRACTS WITH AN INSTITUTION OF HIGHER EDUCATION. (a) In this section:

(1) "Business entity" ["Corporation"] means any entity recognized by law through which business is conducted, including a sole proprietorship, partnership, firm, corporation, limited liability company, holding company, joint stock company, receivership, or trust [a corporation for profit organized under the laws of this state or under laws other than the laws of this state].

(2) "Governing board" has the meaning assigned by Section 61.003 [of this code].

(3) "Institution of higher education" has the meaning assigned by Section 61.003 [of this code].

(4) "Nonprofit corporation" means any organization exempt from federal income tax under Section 501 of the Internal Revenue Code of 1986 that does not distribute any part of its income to any member, director, or officer.

(b) A nonprofit corporation is not disqualified from entering into a contract or other transaction with an institution of higher education even though one or more members of the governing board of the institution of higher education also serves as a member, [or] director, officer, or employee of the nonprofit corporation.

(c) A business entity [corporation] is not disqualified from entering into a contract or other transaction with an institution of higher education even though one or more members of the governing board of the institution of higher education have an interest in the business entity, subject to Subsection (d) [also serves as a stockholder or director of the corporation provided that no member of the governing board owns or has a beneficial interest in more than five percent of the corporation's outstanding capital stock and further provided that the contract or transaction is:

[(1) an affiliation, licensing, or sponsored research agreement; or

[(2) awarded by competitive bidding or competitive sealed proposals].

(d) An institution of higher education is not prohibited from entering into a contract or other transaction with a business entity in which a member of the governing board of the institution of higher education has an interest if the interest is not a substantial interest or, if the interest is a substantial interest, the [described in this section if any] board member [having an interest described in this section in the contract or transaction] discloses that interest in a meeting held in compliance with Chapter 551, Government Code, and refrains from voting on the contract or transaction requiring board approval. Any such contract or transaction requiring board approval must be approved by an affirmative majority of the board members voting on the contract or transaction.

(e) For purposes of this section, a member of a governing board has a substantial interest in a business entity if:

(1) the member owns 10 percent or more of the voting stock or shares of the business entity or owns either 10 percent or more or $15,000 or more of the fair market value of the business entity;

(2) funds received by the member from the business entity exceed 10 percent of the member's gross income for the previous year;

TX_00003220
JA_002951

TX_00003220

USA_00017833

(3) the member is an officer of the business entity or a member of the governing board of the business entity; or

(4) an individual related to the member in the first degree by consanguinity or affinity, as determined under Chapter 573, Government Code, has an interest in the business entity as described by Subdivision (1), (2), or (3).

(f) A violation of this section does not render an action of the governing board voidable unless the contract or transaction that was the subject of the action would not have been approved by the governing board without the vote of the member who violated this section.

SECTION __.08. Section 51.9335, Education Code, is amended by amending Subsections (d) and (f) and adding Subsections (g) and (h) to read as follows:

(d) Subtitle D, Title 10, Government Code, and Subchapter B, Chapter 2254, Government Code, do not apply to the acquisition of goods and services under this section, except that an institution must comply with any provision of those laws, or a rule adopted under a provision of those laws, [To the extent of any conflict, this section prevails over any other law, including Chapters 2155, 2156, 2157, 2158, 2167, and 2170, Government Code, except a law or rule] relating to contracting with historically underutilized businesses or relating to the procurement of goods and services from persons with disabilities. An institution of higher education may, but is not required to, acquire goods or services as provided by Subtitle D, Title 10 [Chapters 2155, 2156, 2157, 2158, 2167, and 2170], Government Code.

(f) This section does not apply to professional services as defined by Section 2254.002, Government Code. Professional services shall be procured in accordance with Subchapter A, Chapter 2254, Government Code.

(g) An institution of higher education may adopt rules and procedures for the acquisition of goods or services.

(h) In any contract for the acquisition of goods and services to which an institution of higher education is a party, a provision required by applicable law to be included in the contract is considered to be a part of the executed contract without regard to:

(1) whether the provision appears on the face of the contract; or

(2) whether the contract includes any provision to the contrary.

SECTION __.09. Subchapter Z, Chapter 51, Education Code, is amended by adding Sections 51.9336 and 51.9337 to read as follows:

Sec. 51.9336. ELECTRONIC AND DIGITAL SIGNATURES. (a)  An institution of higher education or university system, as those terms are defined by Section 61.003, shall determine whether, and the extent to which, the institution or system will send and accept electronic or digital signatures to and from other persons and otherwise create, generate, communicate, store, process, use, and rely on electronic or digital signatures. The institution or system may adopt rules and procedures governing the use of electronic or digital signatures.

(b) To the extent of any conflict, this section prevails over Chapter 322, Business & Commerce Code, and rules and guidelines adopted under that chapter.

Sec. 51.9337. INTERAGENCY CONTRACTS FOR INFORMATION RESOURCE TECHNOLOGIES. (a) In this section, "institution of higher education" and "university system" have the meanings assigned by Section 61.003.

TX_00003221

USA_00017834

(b) Section 2054.119, Government Code, does not apply to an interagency contract for information resources technologies between two or more institutions of higher education or between an institution of higher education or university system and one or more state agencies, institutions of higher education, or university systems.

SECTION ___.10. Section 51.966, Education Code, is amended by amending Subsection (c) and adding Subsection (d) to read as follows:

(c) Section 612.002(b), Government Code, does not apply to an institution of higher education or university system purchasing insurance under this section.

(d) In [As used in] this section, "governing board," [and] "institution of higher education," and "university system" have the meanings assigned by Section 61.003.

SECTION ___.11. Subchapter C, Chapter 791, Government Code, is amended by adding Section 791.035 to read as follows:

Sec. 791.035. CONTRACTS WITH INSTITUTIONS OF HIGHER EDUCATION OR UNIVERSITY SYSTEMS. (a) A local government and an institution of higher education or university system may contract with one another to perform any governmental functions and services. If the terms of the contract provide for payment based on cost recovery, any law otherwise requiring competitive procurement does not apply to the functions and services covered by the contract.

(b) In this section, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION ___.12. Section 2054.008, Government Code, is amended by adding Subsection (c) to read as follows:

(c) A university system or institution of higher education must provide written notice to the Legislative Budget Board under Subsection (b) only if the cost of the major information system exceeds $1 million. In this subsection, "university system" has the meaning assigned by Section 61.003, Education Code.

SECTION ___.13. Section 2155.078(n), Government Code, is amended to read as follows:

(n) This section does not apply to an institution [a medical and dental unit] to which Section 51.9335, Education Code, applies or to an institution to which Section 73.115, Education Code, applies.

SECTION ___.14. Subchapter Z, Chapter 51, Education Code, is amended by adding Section 51.9611 to read as follows:

Sec. 51.9611. PAYROLL DEDUCTIONS FOR EMPLOYEES OF UNIVERSITY SYSTEM OR INSTITUTION OF HIGHER EDUCATION. (a) In this section, "institution of higher education" and "university system" have the meanings assigned by Section 61.003.

(b) The governing board of a university system, or of an institution of higher education that is not a component institution of a university system, may authorize employees of the system or institution, as applicable, to elect a payroll deduction for any purpose that the governing board determines serves a public purpose and benefits employees. The board may adopt policies and procedures governing payroll deductions under this section. A payroll deduction under this section is in addition to payroll deductions authorized by other law.

TX_00003222
USA_00017835

(c) A payroll deduction under this section must be at the written request of the employee, and the request must state the amount to be deducted and the entity to which the deducted amount is to be transferred. A payroll deduction is in effect until revoked in writing by the employee, but the policies and procedures of the system or institution, as applicable, may provide for enrollment periods.

(d) A system or institution may collect an administrative fee to cover the costs of making a deduction.

SECTION ___.15. Section 1601.004(a), Insurance Code, is amended to read as follows:

(a) In this chapter, "dependent," with respect to an individual eligible to participate in the uniform program under Section 1601.101 or 1601.102, means the individual's:

(1) spouse;

(2) unmarried child younger than 25 years of age; and

(3) child of any age who the system determines lives with or has the child's care provided by the individual on a regular basis if the child is mentally retarded or physically incapacitated to the extent that the child is dependent on the individual for care or support, as determined by the system, and:

(A) if the child is at least 25 years of age, the child's coverage under this chapter has not lapsed, and the child was enrolled as a participant in the health benefits coverage under the uniform program on the date of the child's 25th birthday; or

(B) if the child is a child of an individual eligible to participate as an employee under Section 1601.101, at the time of the individual's initial enrollment in health benefits coverage under the uniform program the child is at least 25 years of age and is enrolled in comparable coverage, as determined by the system, under the individual's previous health benefits coverage.

SECTION ___.16. Subchapter C, Chapter 1601, Insurance Code, is amended by adding Section 1601.111 to read as follows:

Sec. 1601.111. PROGRAMS PROMOTING DISEASE PREVENTION, WELLNESS, AND HEALTH. A system may establish premium discounts, surcharges, rebates, or a revision in otherwise applicable copayments, coinsurance, or deductibles, or any combination of those incentives, for an individual who participates in system-approved programs promoting disease prevention, wellness, and health.

SECTION ___.17. Section 1601.201(d), Insurance Code, is amended to read as follows:

(d) Subsection (c) does not prohibit a system from contributing, from money not appropriated from the general revenue fund, amounts in excess of the amount specified by that subsection for:

(1) an individual employed by the system in a position that as a condition of employment requires the individual to be enrolled as a student in the system in graduate level courses; or

(2) an individual who is a tenured faculty member with whom the system has entered into a phased retirement agreement under which the individual will work less than 60 hours a week for a specified period of time at the end of which the individual will retire.

TX_00003223
JA_002954

TX_00003223

USA_00017836

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 34 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12, Page 123 of
2100 82nd Legislature — Regular Session 56th Day

SECTION ___.18. Subchapter C, Chapter 61, Education Code, is amended by adding Section 61.0573 to read as follows:

Sec. 61.0573. PROJECTS EXEMPT FROM BOARD APPROVAL. (a) In this section, "project" means the acquisition of improved or unimproved real property or the construction, repair, or rehabilitation of a building or other facility.

(b) Board approval of a project at an institution of higher education is not required under Section 61.0572 or 61.058 if the institution notifies the board of the project and certifies to the board that:

(1) the institution meets the current published board standards applicable to the institution for space need, usage efficiency, deferred maintenance, and critical deferred maintenance or the board has approved the institution's plan to correct any deficiencies in the institution's compliance with those applicable standards;

(2) the project meets current published board standards applicable to the project for cost, efficiency, and space use;

(3) the project is identified on the institution's campus master plan, as submitted to the board; and

(4) the institution has no deficiencies according to the board's most recent facilities audit or the board has approved the institution's plan to correct any such deficiencies.

(c) The board's staff shall promptly review a certification submitted under Subsection (b) and notify the institution whether the certification is sufficient and whether the information certified is consistent with the records of the board. If the staff review determines that the certification is sufficient and that the information certified is consistent with the records of the board, the project is considered approved by the board.

(d) This section does not apply to a project that is a new branch campus or a new higher education center.

SECTION ___.19. Section 2166.302(c), Government Code, is amended to read as follows:

(c) Subsection (a) does not apply to a project constructed by and for the Texas Department of Transportation or an institution of higher education or university system. In this subsection, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION ___.20. Section 2166.403(c-1), Government Code, is amended to read as follows:

(c-1) For a project constructed by and for a state institution of higher education, the [governing body of the] institution shall, during the planning phase of the proposed construction for the project, verify [in an open meeting] the economic feasibility of incorporating into the building's design and proposed energy system alternative energy devices for space heating and cooling functions, water heating functions, electrical load functions, and interior lighting functions. The [governing body of the] institution shall determine the economic feasibility of each function listed in this subsection by comparing the estimated cost of providing energy for the function, based on the use of conventional design practices and energy systems, with the estimated cost of providing energy for the function, based on the use of alternative energy devices, during the economic life of the building.

TX_00003224
JA_002955

Case 2:13-cv-00193   Document 661-10   Filed on 11/11/14 in TXSD   Page 35 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 124 of
Monday, May 9, 2011          SENATE JOURNAL                    2109

SECTION __.21. Section 2167.001(b), Government Code, is amended to read as follows:

(b)  This chapter does not apply to:

(1)  radio antenna space;

(2)  residential space for a Texas Department of Mental Health and Mental Retardation program;

(3)  residential space for a Texas Youth Commission program;

(4)  space to be used for less than one month for meetings, conferences, conventions, seminars, displays, examinations, auctions, or similar purposes;

(5)  district office space for members of the legislature;

(6)  space used by the Texas Workforce Commission;

(7)  residential property acquired by the Texas Department of Housing and Community Affairs or the Texas State Affordable Housing Corporation that is offered for sale or rental to individuals and families of low or very low income or families of moderate income;

(8)  except as provided by Section 2167.007, [classroom and instructional] space for a university system or [an] institution of higher education; or

(9)  space leased by the Texas Veterans Commission to administer the veterans employment services program.

SECTION __.22. Section 33.06, Tax Code, is amended by adding Subsection (g) to read as follows:

(g)  If the ownership interest of an individual entitled to a deferral under this section is a life estate, a lien for the deferred tax attaches to the estate of the life tenant, and not to the remainder interest, if the owner of the remainder is an institution of higher education that has not consented to the deferral.  In this subsection, "institution of higher education" has the meaning assigned by Section 61.003, Education Code. This subsection does not apply to a deferral for which the individual entitled to the deferral filed the affidavit required by Subsection (b) before September 1, 2011.

SECTION __.23. Section 552.123, Government Code, is amended to read as follows:

Sec. 552.123.  EXCEPTION: NAME OF APPLICANT FOR CHIEF EXECUTIVE OFFICER OF INSTITUTION OF HIGHER EDUCATION. The name of an applicant for the position of chief executive officer of an institution of higher education, and other information that would tend to identify the applicant, is excepted from the requirements of Section 552.021, except that the governing body of the institution must give public notice of the name or names of the finalists being considered for the position at least 21 days before the date of the meeting at which final action or vote is to be taken on the employment of the person.

SECTION __.24. Section 95.006(b), Health and Safety Code, is amended to read as follows:

(b)  The advisory committee is composed of:

(1)  the following representatives appointed by the executive director of the office:

(A)  one representative of the office;

(B)  one representative of the Texas Education Agency;

(C)  one representative of the Texas Pediatric Society;

(D)  one representative of the American Diabetes Association;

(E)  [one representative who is a member of the board of regents of The University of Texas–Pan American;

[(F)] one school nurse representative from an urban school located within the boundaries of a regional education service center;

(F) [(G)] one parent or guardian of a child who resides within the boundaries of a regional education service center; and

(G) [(H)] one person with knowledge and experience in health care in school settings; and

(2)  the following representatives appointed by the chairman of the council:

(A)  one representative of the council;

(B)  one representative of the Texas Medical Association;

(C)  one school district administrator representative from a school district located within the boundaries of a regional education service center;

(D)  one school principal representative from a school district located within the boundaries of a regional education service center; and

(E)  one school nurse representative from a rural school located within the boundaries of a regional education service center.

SECTION ___.25. Sections 2.03(a) and (c), Chapter 670, Acts of the 72nd Legislature, Regular Session, 1991 (Article 4477-7j, Vernon's Texas Civil Statutes), are amended to read as follows:

(a)  On or after the effective date of this Act, the Commissioners Court of Gaines County shall appoint three persons, the governing body of the city of Seminole shall appoint two persons, and the governing body of the city of Seagraves shall appoint two persons to serve as initial directors of the district. The four persons appointed by the governing bodies of the cities of Seminole and Seagraves shall represent the municipalities within the county, and the three persons appointed by the Commissioners Court of Gaines County shall represent the unincorporated areas of the county. [In addition, the board of regents of The University of Texas System shall appoint one person to serve as an ex-officio, nonvoting director of the district.]

(c)  The Commissioners Court of Gaines County and the governing bodies of the cities of Seminole and Seagraves shall each appoint one initial director to serve a term expiring on May 1 of the first year after the year in which the original appointment is made. In addition, the Commissioners Court of Gaines County shall appoint two initial directors and the governing bodies of the cities of Seminole and Seagraves shall each appoint one initial director to serve terms expiring on May 1 of the second year after the year in which the original appointment is made. [The initial ex-officio member serves a term expiring on May 1 of the second year after the year in which the original appointment is made.] Successor directors serve two-year terms.

SECTION ___.26. Section 3.01(a), Chapter 670, Acts of the 72nd Legislature, Regular Session, 1991 (Article 4477-7j, Vernon's Texas Civil Statutes), is amended to read as follows:

(a)  The district is governed by a board of directors composed of seven voting members [and one ex-officio nonvoting member] who are appointed as provided by this Act. However, the district shall change to a system of electing the voting directors if:

TX_00003226

USA_00017839

(1) the Commissioners Court of Gaines County and the governing bodies of the cities of Seminole and Seagraves each pass a resolution calling for the election of the directors; or

(2) the board receives a petition signed by at least 150 registered voters of Gaines County calling for the election of the directors.

SECTION __.27. Section 51.403(d), Education Code, is amended to read as follows:

(d) For purposes of this subsection, "small classes" [Each institution shall file with its governing board and the coordinating board a small class report, excluding individual instruction courses, indicating department, course number, title of course, and the name of the instructor. "Small classes," for the purpose of this report,] are undergraduate-level courses with less than 10 registrations, and graduate-level courses with less than 5 registrations. No small classes shall be offered in any institution except as authorized by the appropriate governing board, within the guidelines established by the Coordinating Board.

SECTION __.28. Subchapter H, Chapter 51, Education Code, is amended by adding Section 51.406 to read as follows:

Sec. 51.406. EXPIRATION OF CERTAIN REPORTING REQUIREMENTS APPLICABLE TO INSTITUTIONS OF HIGHER EDUCATION AND UNIVERSITY SYSTEMS. (a) In this section, "university system" has the meaning assigned by Section 61.003.

(b) To the extent that any of the following laws require reporting by a university system or an institution of higher education, a university system or institution of higher education is not required to make the report on or after September 1, 2013, unless legislation enacted by the 83rd Legislature that becomes law expressly requires the institution or system to make the report:

(1) Section 7.109;
(2) Section 33.083;
(3) Section 51.0051;
(4) Section 59.07;
(5) Section 130.086;
(6) Section 325.007, Government Code;
(7) Section 669.003, Government Code;
(8) Section 2005.007, Government Code;
(9) Section 2052.103, Government Code;
(10) Section 2054.097, Government Code;
(11) Section 2101.011, Government Code;
(12) Section 2102.009, Government Code;
(13) Chapter 2114, Government Code; and
(14) Section 2205.041, Government Code.

(c) A rule or policy of a state agency, including the Texas Higher Education Coordinating Board, in effect on June 1, 2011, that requires reporting by a university system or an institution of higher education has no effect on or after September 1, 2013, unless the rule or policy is affirmatively and formally readopted before that date by formal administrative rule published in the Texas Register and adopted in compliance with Chapter 2001, Government Code. This subsection does not apply to:

TX_00003227

USA_00017840

(1) a rule or policy for which the authorizing statute is listed in Subsection (b);

(2) a rule or policy for which the authorizing statute is repealed on or before September 1, 2013, by legislation enacted by the legislature that becomes law; or

(3) a report required under any of the following laws:

(A) Section 51.005;

(B) Section 51.3062;

(C) Section 51.402;

(D) Section 56.039;

(E) Section 61.051(k);

(F) Section 61.059; or

(G) Section 62.095(b).

SECTION ___.29. Section 51.914, Education Code, is amended to read as follows:

Sec. 51.914. PROTECTION OF CERTAIN INFORMATION. (a) In order to protect the actual or potential value, the following information is [shall be] confidential and is [shall] not [be] subject to disclosure under Chapter 552, Government Code, or otherwise:

(1) all information relating to a product, device, or process, the application or use of such a product, device, or process, and all technological and scientific information (including computer programs) developed in whole or in part at a state institution of higher education, regardless of whether patentable or capable of being registered under copyright or trademark laws, that have a potential for being sold, traded, or licensed for a fee;

(2) any information relating to a product, device, or process, the application or use of such product, device, or process, and any technological and scientific information (including computer programs) that is the proprietary information of a person, partnership, corporation, or federal agency that has been disclosed to an institution of higher education solely for the purposes of a written research contract or grant that contains a provision prohibiting the institution of higher education from disclosing such proprietary information to third persons or parties; or

(3) the plans, specifications, blueprints, and designs, including related proprietary information, of a scientific research and development facility that is jointly financed by the federal government and a local government or state agency, including an institution of higher education, if the facility is designed and built for the purposes of promoting scientific research and development and increasing the economic development and diversification of this state.

(b) Information maintained by or for an institution of higher education that would reveal the institution's plans or negotiations for commercialization or research, or that consists of unpublished research results or data, is not subject to Chapter 552, Government Code, unless the information has been published, is patented, or is otherwise subject to an executed license, sponsored research agreement, or research contract or grant. In this subsection, "institution of higher education" has the meaning assigned by Section 61.003.

SECTION ___.30. Section 61.051(h), Education Code, is amended to read as follows:

TX_00003228
JA_002959

TX_00003228

USA_00017841

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 39 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 128 of
Monday, May 9, 2011 SENATE JOURNAL 2103

(h) The board shall make continuing studies of the needs of the state for research and designate the institutions of higher education to perform research as needed. The board shall also maintain an inventory of all institutional and programmatic research activities being conducted by the various institutions, whether state-financed or not. Once a year, on dates prescribed by the board, each institution of higher education shall report to the board all research conducted at that institution during the last preceding year. The submission by an institution of the institution's response to the National Science Foundation's annual Higher Education Research and Development Survey satisfies the requirements of this section. All reports required by this subsection shall be made subject to the limitations imposed by security regulations governing defense contracts for research.

SECTION __.31. Section 61.0582, Education Code, is amended by adding Subsection (f) to read as follows:

(f) This section does not apply to a university system that maintains an ongoing system-wide capital improvement program approved by the system's board of regents.

SECTION __.32. Section 130.152, Education Code, is amended to read as follows:

Sec. 130.152. CRITERIA FOR PROGRAMS FOR THE DISADVANTAGED. A junior college may develop programs to serve persons from backgrounds of economic or educational deprivation by submission of a plan based on the following criteria to the Texas Higher Education Coordinating Board[, Texas College and University System]:

(1) an instructional program that accommodates the different learning rates of students and compensates for prior economic and educational deprivation;

(2) an unrestricted admissions policy allowing the enrollment of any person 18 years of age or older with a high school diploma or its equivalent who can reasonably be expected to benefit from instruction;

(3) the assurance that all students, regardless of their differing programs of study, will be considered, known, and recognized as full members of the student body, provided that the administrative officers of a junior college may deny admission to a prospective student or attendance of an enrolled student if, in their judgment, the person [he] would not be competent to benefit from a program of the college, or would by the person's [his] presence or conduct create a disruptive atmosphere within the college not consistent with the statutory purposes of the college;

(4) [the submission of a plan for a financial aid program which removes to the maximum extent possible the financial barriers to the educational aspirations of the citizens of this state;

[(5) an annual evaluation report based on scientific methods and utilizing control groups wherever possible to be submitted to the coordinating board at the end of each school year, covering each remedial-compensatory course or program offered at the college;

[(6)] any other criteria consistent with the provisions of this subchapter specified by the coordinating board; and

(5) [(7)] a junior college must obtain approval of the coordinating board [Coordinating Board, Texas College and University System,] before offering any courses under the provisions of this Act.

TX_00003229

USA_00017842

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 40 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 129 of
2106                    82nd Legislature — Regular Session                    56th Day

SECTION ___.33. Section 401.042, Government Code, is amended by adding Subsection (c) to read as follows:

(c) In consultation with public institutions of higher education, the offices of the governor and the Legislative Budget Board shall review the forms for higher education legislative appropriations requests to identify opportunities to improve efficiency, provide better transparency of funding sources, eliminate unnecessary or duplicative requirements, and otherwise reduce the cost or difficulty of providing information related to appropriations requests.

SECTION ___.34. Subchapter L, Chapter 403, Government Code, is amended by adding Section 403.2715 to read as follows:

Sec. 403.2715. UNIVERSITY SYSTEMS AND INSTITUTIONS OF HIGHER EDUCATION. (a) In this section, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

(b) Except as provided by this section, this subchapter does not apply to a university system or institution of higher education.

(c) A university system or institution of higher education shall account for all personal property as defined by the comptroller under Section 403.272. At all times, the property records of a university system or institution of higher education must accurately reflect the personal property possessed by the system or institution.

(d) The chief executive officer of each university system or institution of higher education shall designate one or more property managers. The property manager shall maintain the records required and be the custodian of all personal property possessed by the system or institution.

(e) Sections 402.273(h), 403.275, and 403.278 apply to a university system or institution of higher education.

SECTION ___.35. Section 2101.0115(d), Government Code, is amended by adding Subdivision (4) to read as follows:

(4) "Institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION ___.36. Section 2101.0115, Government Code, is amended by adding Subsection (e) to read as follows:

(e) This section does not apply to an institution of higher education or university system.

SECTION ___.37. Section 2254.028(c), Government Code, is amended to read as follows:

(c) Subsection (a) [(a)(3)] does not apply to a major consulting services contract to be entered into by an institution of higher education other than a public junior college if the institution includes in the invitation published under Section 2254.029 a finding by the chief executive officer of the institution that the consulting services are necessary and an explanation of that finding.

SECTION ___.38. Section 2254.0301, Government Code, is amended to read as follows:

Sec. 2254.0301. CONTRACT NOTIFICATION. (a) A state agency shall provide written notice to the Legislative Budget Board of a contract for consulting services if the amount of the contract, including an amendment, modification,

TX_00003230
JA_002961

TX_00003230

USA_00017843

renewal, or extension of the contract, exceeds $14,000. The notice must be on a form prescribed by the Legislative Budget Board and filed not later than the 10th day after the date the entity enters into the contract.

(b) This section does not apply to a university system or institution of higher education. In this subsection, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION ___.39. Section 388.005(f), Health and Safety Code, is amended to read as follows:

(f) This section does not apply to a state agency or an institution of higher education that the State Energy Conservation Office determines [that], before September 1, 2007, adopted a plan for conserving energy under which the agency or institution established a percentage goal for reducing the consumption of electricity. The exemption provided by this section applies only while the agency or institution has an energy conservation plan in effect and only if the agency or institution submits reports on the conservation plan each year [calendar quarter] to the governor, the Legislative Budget Board, and the State Energy Conservation Office.

SECTION ___.40. Section 412.053, Labor Code, is amended by adding Subsection (c) to read as follows:

(c) This section does not apply to an institution of higher education or university system. In this subsection, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION ___.41. Section 31.153(d), Natural Resources Code, is amended to read as follows:

(d) Each state agency, other than an institution of higher education, annually at the time set by the division, shall furnish the Texas Historical Commission with a photograph and information that specifies and identifies the age of each building:

(1) that was acquired by the agency after the date of the preceding annual submission and that is at least 45 years old on the date of the current submission; or

(2) that is possessed by the agency and has become 45 years old since the date the information was previously submitted.

SECTION ___.42. (a) The following laws are repealed effective September 1, 2011:

(1) Section 51.216, Education Code;

(2) Sections 51.403(b) and (c), Education Code;

(3) Section 51.4033, Education Code;

(4) Section 61.0815, Education Code;

(5) Section 61.086, Education Code;

(6) Section 61.087(c), Education Code;

(7) Section 62.098, Education Code;

(8) Section 1434.054, Government Code;

(9) Section 2107.005, Government Code;

(10) Section 412.042(c), Labor Code; and

(11) Section 3.01(c), Chapter 670, Acts of the 72nd Legislature, Regular Session, 1991 (Article 4477-7j, Vernon's Texas Civil Statutes).

Case 2:13-cv-00193 Document 661-10 Filed on 11/11/14 in TXSD Page 42 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 131 of
2108                    82nd Legislature — Regular Session        56th Day

(b) The following provisions of the Education Code are repealed effective September 1, 2013:

    (1) Section 51.859;

    (2) Section 51.917(e);

    (3) Section 51.968(d);

    (4) Section 54.203(h);

    (5) Section 56.034(c);

    (6) Section 56.079(j);

    (7) Section 61.066(c);

    (8) Section 63.003(d);

    (9) Section 63.004;

    (10) Section 63.103;

    (11) Section 86.52(m);

    (12) Section 88.210;

    (13) Section 106.54;

    (14) Section 142.005;

    (15) Section 143.006;

    (16) Section 147.005;

    (17) Section 148.005; and

    (18) Section 153.008.

SECTION ___.43. (a) This section governs a conflict between this article and any other Act of the 82nd Legislature, Regular Session, 2011, without regard to the relative dates of enactment.

(b) If this article and any other Act repeal the same statute, the earlier effective date of repeal controls.

(c) If this article amends a statute that any other Act repeals, the repeal controls.

SECTION ___.44. Section 51.011, Education Code, as added by this article, applies to credit balances held by a public institution of higher education on or after the effective date of this article.

SECTION ___.45. This article takes effect immediately if this Act receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this article takes effect September 1, 2011.

The amendment to **CSSB 1581** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 4.

Senator Wentworth offered the following amendment to the bill:

## Floor Amendment No. 5

Amend **CSSB 1581** by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____. Subchapter H, Chapter 411, Government Code, is amended by adding Section 411.2031 to read as follows:

TX_00003232
JA_002963

TX_00003232
USA_00017845