Sec. 411.2031. CARRYING OF HANDGUNS BY LICENSE HOLDERS ON CERTAIN CAMPUSES. (a) For purposes of this section:

(1) "Campus" means all land and buildings owned or leased by an institution of higher education.

(2) "Institution of higher education" has the meaning assigned by Section 61.003, Education Code.

(3) "Premises" has the meaning assigned by Section 46.035, Penal Code.

(b) Except as otherwise provided by this section, a license holder may carry a concealed handgun on or about the license holder's person while the license holder is on the campus of an institution of higher education in this state.

(c) Except as provided by Subsection (d), an institution of higher education in this state may not adopt any rule, regulation, or other provision prohibiting license holders from carrying handguns on the campus of the institution.

(d) An institution of higher education in this state may establish rules, regulations, or other provisions concerning the storage of handguns in dormitories that are owned or operated by the institution and located on the campus of the institution.

(e) This section does not permit a license holder to carry a concealed handgun on or about the premises of a hospital maintained or operated by an institution of higher education. In this subsection, "hospital" has the meaning assigned by Section 241.003, Health and Safety Code.

(f) This section does not permit a license holder to carry a concealed handgun on the premises of a preschool, elementary school, or secondary school that is located on the campus of an institution of higher education if the institution gives effective notice under Section 30.06, Penal Code.

SECTION ____. Section 411.208, Government Code, is amended by amending Subsections (a), (b), and (d) and adding Subsection (f) to read as follows:

(a) A court may not hold the state, an agency or subdivision of the state, an officer or employee of the state, an institution of higher education, an officer or employee of an institution of higher education, a peace officer, or a qualified handgun instructor liable for damages caused by:

(1) an action authorized under this subchapter or a failure to perform a duty imposed by this subchapter; or

(2) the actions of an applicant or license holder that occur after the applicant has received a license or been denied a license under this subchapter.

(b) A cause of action in damages may not be brought against the state, an agency or subdivision of the state, an officer or employee of the state, an institution of higher education, an officer or employee of an institution of higher education, a peace officer, or a qualified handgun instructor for any damage caused by the actions of an applicant or license holder under this subchapter.

(d) The immunities granted under Subsections (a), (b), and (c) do not apply to an act or a failure to act by the state, an agency or subdivision of the state, an officer of the state, an institution of higher education, an officer or employee of an institution of higher education, or a peace officer if the act or failure to act was capricious or arbitrary.

(f) For purposes of this section, "institution of higher education" has the meaning assigned by Section 61.003, Education Code.

SECTION ____. Subchapter H, Chapter 411, Government Code, is amended by adding Section 411.209 to read as follows:

Sec. 411.209. LIABILITY INSURANCE PREMIUMS. An insurance company doing business in this state may not increase the amount of the liability insurance premiums charged to an institution of higher education in this state solely because license holders are permitted to carry handguns on campus under Section 411.2031.

SECTION ____. Section 46.03, Penal Code, is amended by amending Subsections (a) and (c) and adding Subsections (j) and (k) to read as follows:

(a) A person commits an offense if the person intentionally, knowingly, or recklessly possesses or goes with a firearm, illegal knife, club, or prohibited weapon listed in Section 46.05(a):

(1) on the physical premises of a school or educational institution, any grounds or building on which an activity sponsored by a school or educational institution is being conducted, or a passenger transportation vehicle of a school or educational institution, whether the school or educational institution is public or private, unless:

(A) pursuant to written regulations or written authorization of the institution; or

(B) the person possesses or goes with a concealed handgun that the person is licensed to carry under Subchapter H, Chapter 411, Government Code, and no other weapon to which this section applies, on the physical premises of an institution of higher education or in a passenger transportation vehicle of the institution;

(2) on the premises of a polling place on the day of an election or while early voting is in progress;

(3) on the premises of any government court or offices utilized by the court, unless pursuant to written regulations or written authorization of the court;

(4) on the premises of a racetrack;

(5) in or into a secured area of an airport; or

(6) within 1,000 feet of premises the location of which is designated by the Texas Department of Criminal Justice as a place of execution under Article 43.19, Code of Criminal Procedure, on a day that a sentence of death is set to be imposed on the designated premises and the person received notice that:

(A) going within 1,000 feet of the premises with a weapon listed under this subsection was prohibited; or

(B) possessing a weapon listed under this subsection within 1,000 feet of the premises was prohibited.

(c) In this section:

(1) "Institution of higher education" has the meaning assigned by Section 61.003, Education Code.

(2) [(1)] "Premises" has the meaning assigned by Section 46.035.

(3) [(2)] "Secured area" means an area of an airport terminal building to which access is controlled by the inspection of persons and property under federal law.

TX_00003234
JA_002965

TX_00003234

USA_00017847

Case 2:13-cv-00193   Document 661-11   Filed on 11/11/14 in TXSD   Page 3 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 134 of

Monday, May 9, 2011          SENATE JOURNAL          2119

(j) Subsection (a)(1)(B) does not permit a person to possess a concealed handgun, or go with a concealed handgun, on the premises of a hospital maintained or operated by an institution of higher education. In this subsection, "hospital" has the meaning assigned by Section 241.003, Health and Safety Code.

(k) Subsection (a)(1)(B) does not permit a person to possess a concealed handgun, or go with a concealed handgun, on the premises of a preschool, elementary school, or secondary school that is located on the physical premises of an institution of higher education. This subsection does not apply if the actor was not given effective notice under Section 30.06.

SECTION ____. Section 46.11(c)(1), Penal Code, is amended to read as follows:

(1) "Premises" has the meaning ["Institution of higher education" and "premises" have the meanings] assigned by Section 481.134, Health and Safety Code.

SECTION ____. Section 411.208, Government Code, as amended by this Act, applies only to a cause of action that accrues on or after the effective date of this Act. A cause of action that accrued before that date is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.

SECTION ____. Sections 46.03(a) and (c), Penal Code, as amended by this Act, apply only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

The amendment to **CSSB 1581** was read.

Question — Shall Floor Amendment No. 5 to **CSSB 1581** be adopted?

### GUESTS PRESENTED

Senator Patrick was recognized and introduced to the Senate Honorary Senate Page, Austin Landon, and his parents, Mr. and Mrs. Michael Landon, Jr.

The Senate welcomed its guests.

### AT EASE

The President at 3:06 p.m. announced the Senate would stand At Ease subject to the call of the Chair.

### IN LEGISLATIVE SESSION

The President at 3:25 p.m. called the Senate to order as In Legislative Session.

Question — Shall Floor Amendment No. 5 to **CSSB 1581** be adopted?

Senator West moved to table Floor Amendment No. 5.

The motion to table was lost by the following vote:  Yeas 12, Nays 19.

Yeas:  Davis, Ellis, Gallegos, Hinojosa, Lucio, Ogden, Rodriguez, Uresti, Van de Putte, Watson, West, Zaffirini.

TX_00003235

USA_00017848

Nays: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Patrick, Seliger, Shapiro, Wentworth, Whitmire, Williams.

Senator Davis offered the following amendment to Floor Amendment No. 5:

**Floor Amendment No. 6**

Amend Floor Amendment No. 5 to **CSSB 1581** as follows:

(1) In added Section 411.2031(a)(2), Government Code (page 1, line 10), strike ""Institution of higher education" and" and substitute ""Governing board," "institution of higher education," and".

(2) In added Section 411.2031(c), Government Code (page 1, line 18), strike "provided by Subsection (d)" and substitute "otherwise provided by this section".

(3) In added Section 411.2031, Government Code (page 1, between lines 25 and 26), insert the following subsection:

(e) An institution of higher education in this state may establish rules, regulations, or other provisions prohibiting license holders from carrying handguns on the campus of the institution if the governing board of the institution approves the rules, regulations, or other provisions by majority vote.

(4) In added Section 411.2031, Government Code (page 1, line 26), strike "(e)" and substitute "(f)".

(5) In added Section 411.2031, Government Code (page 2, line 2), strike "(f)" and substitute "(g)".

(6) In amended Section 411.208(a), Government Code (page 2, lines 12-13), strike "higher education, an officer or employee of an institution of higher education," and substitute "higher education that has not adopted rules under Section 411.2031 or an officer or employee of that institution,".

(7) In amended Section 411.208(b), Government Code (page 2, lines 22-24), strike "an institution of higher education, an officer or employee of an institution of higher education," and substitute "or institution of higher education that has not adopted rules under Section 411.2031 or an officer or employee of that institution,".

(8) In amended Section 411.208(d), Government Code (page 2, lines 29-31), strike "institution of higher education, an officer or employee of an institution of higher education," and substitute "institution of higher education that has not adopted rules under Section 411.2031 or an officer or employee of that institution,".

The amendment to Floor Amendment No. 5 to **CSSB 1581** was read.

On motion of Senator Wentworth, Floor Amendment No. 6 was tabled by the following vote: Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Patrick, Seliger, Shapiro, Wentworth, Whitmire, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Ogden, Rodriguez, Uresti, Van de Putte, Watson, West, Zaffirini.

Question recurring on the adoption of Floor Amendment No. 5 to **CSSB 1581**, the amendment was adopted by the following vote: Yeas 20, Nays 11.

TX_00003236

USA_00017849

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 5 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 136 of
Monday, May 9, 2011 SENATE JOURNAL 2113

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Whitmire, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Zaffirini.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 7**

Amend **CSSB 1581** (senate committee printing) by adding the following appropriately numbered ARTICLE to the bill and renumbering the remaining ARTICLES of the bill appropriately:

ARTICLE ___. FISCAL MATTERS CONCERNING DISCOUNTED UTILITY RATES FOR CERTAIN SCHOOLS AND INSTITUTIONS OF HIGHER EDUCATION

SECTION _____.01. Section 36.351, Utilities Code, is reenacted and amended to read as follows:

Sec. 36.351. DISCOUNTED RATES FOR CERTAIN SCHOOLS AND INSTITUTIONS OF HIGHER EDUCATION. (a) Notwithstanding any other provision of this title, each electric utility and transmission and distribution utility and, except as provided by Subsection (d-1), each municipally owned utility shall discount charges for electric service provided to a facility of a four-year state university, upper-level institution, Texas State Technical College, junior [or] college, independent school district, or open-enrollment charter school.

(b) The discount is a 20-percent reduction of the utility's base rates that would otherwise be paid under the applicable tariffed rate. The discount shall be provided either directly to an educational entity described by Subsection (a) or to a retail electric provider that also provides service to the educational entity.

(b-1) A retail electric provider that receives a discount under Subsection (b) shall apply the discount to an educational entity described by Subsection (a) as a credit in an amount equal to the amount of the discount. The commission may suspend, revoke, or amend the certificate of a retail electric provider that does not apply the discount as required by this subsection. The commission shall impose an administrative penalty on a retail electric provider that does not apply the discount as required by this subsection.

(c) An electric or municipally owned utility is exempt from this section if the 20-percent discount results in a reduction equal to more than one percent of the utility's total annual revenues.

(d) A municipally owned utility is exempt from this section if the municipally owned utility, on September 1, 1995, discounted base commercial rates for electric service provided to all four-year state universities or colleges in its service area by 20 percent or more.

(d-1) A municipally owned utility is exempt from the requirement to discount charges for electric service provided to a junior college, independent school district, or open-enrollment charter school.

TX_00003237

USA_00017850

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 6 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 137 of
2114          82nd Legislature — Regular Session          56th Day

(e) This section does not apply to a rate charged to an institution of higher education by a municipally owned utility that provides a discounted rate to the state for electric services below rates in effect on January 1, 1995, if the discounted rate provides a greater financial discount to the state than is provided to the institution of higher education through the discount provided by this section.

(f) An investor-owned electric utility may not recover from residential customers or any other customer class the assigned and allocated costs of serving an educational entity [a state university or college] that receives a discount under this section. After September 1, 2011, an investor-owned electric utility is subject to the requirements of this subsection unless a regulatory authority authorizes other ratemaking treatment.

(g) Each electric utility shall file tariffs with the commission reflecting the discount required under this section. The initial tariff filing is not a rate change for purposes of Subchapter C.

(h) This section has been in full force and effect since September 1, 1995, as to the discount required for electric service provided by an electric utility, including a transmission and distribution utility, or a municipally owned utility to a facility of a four-year state university, upper-level institution, Texas State Technical College, or college. Neither Section 63, Chapter 405 (S.B. 7), Acts of the 76th Legislature, Regular Session, 1999, nor the decision of the commission in the commission's Docket No. 35717 or any other ruling or order by the commission terminated or excused the continuing obligation of a transmission and distribution utility, any other electric utility, or a municipally owned utility to provide the discounts required by this section.

SECTION ____.02. This article takes effect immediately if this Act receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this article takes effect September 1, 2011.

The amendment to **CSSB 1581** was read.

On motion of Senator Ogden, Floor Amendment No. 7 was tabled by the following vote: Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

Senator Hegar offered the following amendment to the bill:

**Floor Amendment No. 8**

Amend **CSSB 1581** (senate committee printing) by adding the following appropriately numbered ARTICLE to the bill and renumbering subsequent ARTICLES and SECTIONS accordingly:

ARTICLE __. FISCAL MATTERS CONCERNING THE STATE
COMPRESSION PERCENTAGE

TX_00003238
JA_002969

TX_00003238

USA_00017851

Case 2:13-cv-00193   Document 661-11   Filed on 11/11/14 in TXSD   Page 7 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 138 of 2
Monday, May 9, 2011                SENATE JOURNAL                          2113

SECTION ____. Section 42.2516, Education Code, is amended by adding Subsection (b-2) to read as follows:

(b-2) If a school district adopts a maintenance and operations tax rate that is below the rate equal to the product of the state compression percentage multiplied by the maintenance and operations tax rate adopted by the district for the 2005 tax year, the commissioner shall reduce the district's entitlement under this section in proportion to the amount by which the adopted rate is less than the rate equal to the product of the state compression percentage multiplied by the rate adopted by the district for the 2005 tax year. The reduction required by this subsection applies beginning with the maintenance and operations tax rate adopted for the 2009 tax year.

HEGAR
ELTIFE

The amendment to **CSSB 1581** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 8.

Senator Hinojosa offered the following amendment to the bill:

**Floor Amendment No. 9**

Amend **CSSB 1581** (Senate Committee Printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. (a) Chapter 161, Health and Safety Code, is amended by adding Subchapter V to read as follows:

SUBCHAPTER V. FEE ON CIGARETTES AND CIGARETTE TOBACCO PRODUCTS
MANUFACTURED BY CERTAIN COMPANIES

Sec. 161.601. PURPOSE. The purpose of this subchapter is to:

(1) recover health care costs to the state imposed by nonsettling manufacturers;

(2) prevent nonsettling manufacturers from undermining this state's policy of reducing underage smoking by offering cigarettes and cigarette tobacco products at prices that are substantially below the prices of cigarettes and cigarette tobacco products of other manufacturers;

(3) protect the tobacco settlement agreement and funding, which has been reduced because of the growth of sales of nonsettling manufacturer cigarettes and cigarette tobacco products, for programs that are funded wholly or partly by payments to this state under the tobacco settlement agreement and recoup for this state settlement payment revenue lost because of sales of nonsettling manufacturer cigarettes and cigarette tobacco products; and

(4) provide funding for certain health-related institutions of higher education for any purpose the legislature determines.

Sec. 161.602. DEFINITIONS. In this subchapter:

(1) "Brand family" means each style of cigarettes or cigarette tobacco products sold under the same trademark. The term includes any style of cigarettes or cigarette tobacco products that have a brand name, trademark, logo, symbol, motto,

TX_00003239
USA_00017852

selling message, recognizable pattern of colors, or other indication of product identification that is identical to, similar to, or identifiable with a previously known brand of cigarettes or cigarette tobacco products.

(2) "Cigarette" means any product that contains nicotine and is intended to be burned or heated under ordinary conditions of use. The term includes:

(A) a roll of tobacco wrapped in paper or another substance that does not contain tobacco;

(B) tobacco, in any form, that is functional in a product that, because of the product's appearance, the type of tobacco used in the filler, or the product's packaging and labeling, is likely to be offered to or purchased by a consumer as a cigarette; or

(C) a roll of tobacco wrapped in any substance containing tobacco that, because of the product's appearance, the type of tobacco used in the filler, or the product's packaging and labeling, is likely to be offered to or purchased by a consumer as a cigarette.

(3) "Cigarette tobacco product" means roll-your-own tobacco or tobacco that, because of the tobacco's appearance, type, packaging, or labeling, is suitable for use in making cigarettes and is likely to be offered to or purchased by a consumer for that purpose.

(4) "Distributor" has the meaning assigned by Section 154.001 or 155.001, Tax Code, as appropriate.

(5) "Manufacturer" means a person that manufactures, fabricates, or assembles cigarettes for sale or distribution. For purposes of this subchapter, the term includes a person that is the first importer into the United States of cigarettes and cigarette tobacco products manufactured, fabricated, or assembled outside the United States.

(6) "Nonsettling manufacturer" means a manufacturer of cigarettes that did not sign the tobacco settlement agreement.

(7) "Nonsettling manufacturer cigarettes" means cigarettes manufactured, fabricated, assembled, or imported by a nonsettling manufacturer.

(8) "Nonsettling manufacturer cigarette tobacco products" means cigarette tobacco products manufactured, fabricated, assembled, or imported by a nonsettling manufacturer.

(9) "Tobacco settlement agreement" means the Comprehensive Settlement Agreement and Release filed on January 16, 1998, in the United States District Court, Eastern District of Texas, in the case styled The State of Texas v. The American Tobacco Co., et al., No. 5-96CV-91, and all subsequent amendments.

Sec. 161.603. FEE IMPOSED. (a) A fee is imposed on the sale, use, consumption, or distribution in this state of:

(1) nonsettling manufacturer cigarettes if a stamp is required to be affixed to a package of those cigarettes under Chapter 154, Tax Code;

(2) nonsettling manufacturer cigarettes that are sold, purchased, or distributed in this state but that are not required to have a stamp affixed to a package of those cigarettes under Chapter 154, Tax Code;

(3) nonsettling manufacturer cigarette tobacco products that are subject to the tax imposed by Section 155.0211, Tax Code; and

TX_00003240
JA_002971

TX_00003240

USA_00017853

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 9 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 140 of
Monday, May 9, 2011 SENATE JOURNAL 2179

(4) nonsettling manufacturer cigarette tobacco products that are sold, purchased, or distributed in this state but that are not subject to the tax imposed by Section 155.0211, Tax Code.

(b) The fee imposed by this section does not apply to cigarettes or cigarette tobacco products that are:

(1) included in computing payments due to be made by a settling manufacturer under the tobacco settlement agreement; or

(2) sold, purchased, or otherwise distributed in this state for retail sale outside this state.

(c) The fee imposed by this subchapter is in addition to any other privilege, license, fee, or tax required or imposed by state law.

(d) Except as otherwise provided by this subchapter, the fee imposed by this subchapter is imposed, collected, paid, administered, and enforced in the same manner, taking into account that the fee is imposed on nonsettling manufacturers, as the taxes imposed by Chapters 154 and 155, Tax Code, as appropriate.

Sec. 161.604. RATE OF FEE. (a) Except as provided by Subsection (b), the fee is imposed at the rate of 2.15 cents for:

(1) each nonsettling manufacturer cigarette; and

(2) each 0.09 ounce of nonsettling manufacturer cigarette tobacco product.

(b) On January 1 of each year, the comptroller shall increase the rate of the tax prescribed by Subsection (a) by the greater of:

(1) three percent; or

(2) the percentage increase in the most recent annual revised Consumer Price Index for All Urban Consumers, as published by the Federal Bureau of Labor Statistics of the United States Department of Labor.

Sec. 161.605. NONSETTLING MANUFACTURER CIGARETTES AND CIGARETTE TOBACCO PRODUCTS FOR RETAIL SALE OUTSIDE THIS STATE. (a) Except as provided by Subsection (b), a person may not transport or cause to be transported from this state nonsettling manufacturer cigarettes or cigarette tobacco products for retail sale in another state unless:

(1) the packages of the cigarettes or cigarette tobacco products bear the tax stamps of the state in which the cigarettes or cigarette tobacco products are to be sold and the stamps are affixed in accordance with the laws of that state; or

(2) if the state does not require a tax stamp, all excise taxes imposed on the cigarettes or cigarette tobacco products by the state in which they are to be sold have been paid in accordance with the laws of that state.

(b) A person is not required to affix a tax stamp of another state or pay the excise tax of another state before transporting the nonsettling manufacturer cigarettes or cigarette tobacco products out of this state if:

(1) the state the cigarettes or cigarette tobacco products are being transported to prohibits that action; and

(2) the cigarettes or cigarette tobacco products are being sold to a wholesaler licensed by that state.

Sec. 161.606. DISTRIBUTOR'S REPORT. (a) A distributor required to file a report under Section 154.210 or 155.111, Tax Code, shall, in addition to the information required by those sections, include in that required report, as appropriate:

TX_00003241

USA_00017854

(1) the number and denominations of stamps affixed to individual packages of nonsettling manufacturer cigarettes during the preceding month;

(2) the amount of nonsettling manufacturer cigarette tobacco products subject to the tax imposed by Section 155.0211, Tax Code, during the preceding month;

(3) the number of individual packages of nonsettling manufacturer cigarettes and the amount of nonsettling manufacturer cigarette tobacco products not subject to the tax imposed by Chapter 154, Tax Code, or Section 155.0211, Tax Code, sold or purchased in this state or otherwise distributed in this state for sale in the United States;

(4) the number of individual packages of nonsettling manufacturer cigarettes and the amount of nonsettling manufacturer cigarette tobacco products transported or caused to be transported outside this state during the preceding month;

(5) if Subdivision (4) applies, the name and address of the persons receiving the cigarettes or cigarette tobacco products outside this state; and

(6) any other information the comptroller considers necessary or appropriate to determine the amount of the fee imposed by this subchapter or to enforce this subchapter.

(b) The information required by Subsection (a) must be itemized for each place of business and by manufacturer and brand family.

(c) The requirement to report information under this section shall be enforced in the same manner as the requirement to deliver to or file with the comptroller a report required under Section 154.210 or 155.111, Tax Code, as appropriate.

(d) Information obtained from a report provided under Subsection (a) regarding cigarettes or cigarette tobacco products sold, purchased, or otherwise distributed by a nonsettling manufacturer may be disclosed by the comptroller to that manufacturer or to the authorized representative of the manufacturer.

Sec. 161.607. NOTICE AND PAYMENT OF FEE. (a) Each month, not later than the 20th day after the date the comptroller receives the information required by Section 161.606, the comptroller shall:

(1) compute the amount of the fee imposed by this subchapter that each nonsettling manufacturer owes for that reporting period based on that information and any other information available to the comptroller; and

(2) mail to each nonsettling manufacturer a notice of the amount of fees the manufacturer owes.

(b) Not later than the 15th day of the month after the month in which the comptroller mails a nonsettling manufacturer a notice under Subsection (a), the nonsettling manufacturer shall send to the comptroller the amount of the fee due according to the notice.

Sec. 161.608. DIRECTORY OF COMPLYING MANUFACTURERS. (a) The comptroller shall develop, maintain, and publish on the comptroller's Internet website a directory listing of all nonsettling manufacturers that have complied with this subchapter.

(b) The comptroller shall provide the list described by Subsection (a) to any person on request.

TX_00003242

USA_00017855

Sec. 161.609.  PREPAYMENT BEFORE OFFERING NONSETTLING MANUFACTURER CIGARETTES OR CIGARETTE TOBACCO PRODUCTS FOR SALE OR DISTRIBUTION IN THIS STATE. (a) If cigarettes or cigarette tobacco products of a nonsettling manufacturer are not offered for sale or distribution in this state on September 1, 2011, the nonsettling manufacturer may not offer those cigarettes or cigarette tobacco products for sale or distribution in this state after that date unless the manufacturer first prepays the fee imposed by this subchapter for sales of cigarettes and cigarette tobacco products that will occur in the first calendar month in which they are sold or distributed in this state.

(b)  The amount a nonsettling manufacturer is required to prepay under this section is equal to the greater of:

(1)  the rate prescribed by Section 161.604 in effect on that date multiplied by:

(A)  the number of cigarettes the comptroller reasonably projects that the nonsettling manufacturer will sell or distribute in this state during that calendar month; and

(B)  each 0.09 ounce of nonsettling manufacturer cigarette tobacco products the comptroller reasonably projects that the nonsettling manufacturer will sell or distribute in this state during that calendar month; or

(2)  $50,000.

(c)  The fee imposed by this section does not apply to cigarettes or cigarette tobacco products that are:

(1)  included in computing payments due to be made by a settling manufacturer under the tobacco settlement agreement; or

(2)  sold, purchased, or otherwise distributed in this state for retail sale outside this state.

(d)  The comptroller may require a nonsettling manufacturer to provide any information reasonably necessary to determine the prepayment amount.

(e)  The comptroller shall establish procedures to:

(1)  reimburse a nonsettling manufacturer if the actual sales or distributions in the first calendar month are less than the projected sales or distributions; and

(2)  require additional payments if the actual sales or distributions in the first calendar month are greater than the projected sales or distributions.

(f)  A nonsettling manufacturer shall pay the fee imposed by this subchapter in the manner provided by Section 161.607 beginning in the second calendar month in which the manufacturer offers the cigarettes or cigarette tobacco products for sale or distribution in this state.

Sec. 161.610.  REPORT TO ATTORNEY GENERAL BEFORE OFFERING NONSETTLING MANUFACTURER CIGARETTES OR CIGARETTE TOBACCO PRODUCTS FOR SALE OR DISTRIBUTION IN THIS STATE. (a) In addition to prepaying the fee required by Section 161.609, a nonsettling manufacturer described by Section 161.609(a) shall, before the date the cigarettes or cigarette tobacco products are offered for sale or distribution in this state, provide to the attorney general on a form prescribed by the attorney general:

(1)  the nonsettling manufacturer's complete name, address, and telephone number;

TX_00003243

USA_00017856

(2)  the date that the nonsettling manufacturer will begin offering cigarettes or cigarette tobacco products for sale or distribution in this state;

(3)  the names of the brand families of the cigarettes or cigarette tobacco products that the nonsettling manufacturer will offer for sale or distribution in this state;

(4)  a statement that the nonsettling manufacturer intends to comply with this subchapter; and

(5)  the name, address, telephone number, and signature of an officer of the nonsettling manufacturer attesting to all of the included information.

(b)  The attorney general shall make the information provided under this section available to the comptroller.

Sec. 161.611.  PENALTIES FOR NONCOMPLIANCE.  (a)  Cigarettes and cigarette tobacco products of a nonsettling manufacturer that has not complied with this subchapter, including full payment of the fee imposed by this subchapter, shall be treated as cigarettes or tobacco products for which the tax assessed by Chapter 154 or 155, Tax Code, as appropriate, has not been paid, and the manufacturer is subject to all penalties imposed by those chapters for violations of those chapters.

(b)  The comptroller shall provide to a nonsettling manufacturer, each distributor authorized to affix stamps under Chapter 154, Tax Code, and the attorney general a notice of the manufacturer's noncompliance with this subchapter if the manufacturer:

(1)  does not pay in full the fee imposed by this subchapter; or

(2)  is not included on the directory required by Section 161.608.

(c)  If a nonsettling manufacturer does not appear on the directory required by Section 161.608, or on receipt of the notice of a nonsettling manufacturer's noncompliance, a distributor may not:

(1)  pay the tax imposed by Chapter 154 or 155, Tax Code, as appropriate;

(2)  affix to a package of cigarettes the stamp required by Section 154.041, Tax Code; or

(3)  otherwise purchase, sell, or distribute cigarettes manufactured by the nonsettling manufacturer in this state.

(d)  If the comptroller determines that the nonsettling manufacturer that is the subject of a notice provided under Subsection (b) later complies with this subchapter, the comptroller shall provide to the nonsettling manufacturer, each distributor authorized to affix stamps under Chapter 154, Tax Code, and the attorney general a notice that the nonsettling manufacturer is in compliance with this subchapter.

Sec. 161.612.  APPOINTMENT OF AGENT FOR SERVICE OF PROCESS.  A nonsettling manufacturer shall appoint and engage a resident agent for service of process.

Sec. 161.613.  AUDIT OR INSPECTION. The comptroller or attorney general is entitled to conduct reasonable periodic audits or inspections of the financial records of a nonsettling manufacturer to ensure compliance with this subchapter.

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 13 of 42
1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 144 of

Monday, May 9, 2011 SENATE JOURNAL 2129

Sec. 161.614. REVENUE DEPOSITED IN PERMANENT HEALTH FUND. The revenue from the fee imposed by this subchapter shall be deposited in the state treasury to the credit of the permanent health fund under Subchapter A of Chapter 63, Education Code. The annual amounts deposited shall be distributed for any purpose the legislature determines and shall not be subject to the requirements of Chapter 63 of the Education Code.

Sec. 161.615. APPLICATION OF SUBCHAPTER. This subchapter applies without regard to Section 154.022, Tax Code, or any other law that might be read to create an exemption for interstate sales.

(b) Not later than September 30, 2011, a nonsettling manufacturer, as that term is defined by Section 161.602, Health and Safety Code, as added by this section, that is offering cigarettes or cigarette tobacco products for sale or distribution in this state on September 1, 2011, shall provide to the attorney general on a form prescribed by the attorney general:

(1) the nonsettling manufacturer's complete name, address, and telephone number;

(2) the date that the nonsettling manufacturer began offering cigarettes or cigarette tobacco products for sale or distribution in this state;

(3) the names of the brand families of the cigarettes or cigarette tobacco products that the nonsettling manufacturer offers for sale or distribution in this state;

(4) a statement that the nonsettling manufacturer intends to comply with Subchapter V, Chapter 161, Health and Safety Code, as added by this section; and

(5) the name, address, telephone number, and signature of an officer of the nonsettling manufacturer attesting to all of the included information.

(c) The attorney general shall make the information provided under Subsection (b) of this section available to the comptroller.

(d) Notwithstanding any other provision of this Act, this section takes effect September 1, 2011.

The amendment to **CSSB 1581** was read and was adopted by the following vote: Yeas 23, Nays 8.

Yeas: Birdwell, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Gallegos, Hegar, Hinojosa, Lucio, Nelson, Ogden, Rodriguez, Shapiro, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Zaffirini.

Nays: Fraser, Harris, Huffman, Jackson, Nichols, Patrick, Seliger, Williams.

Senator Williams offered the following amendment to the bill:

**Floor Amendment No. 10**

Amend **CSSB 1581** (Senate Committee Printing) by adding the following appropriately numbered ARTICLE to the bill and renumbering subsequent ARTICLES and SECTIONS accordingly:

ARTICLE ___. PROVISIONS RELATING TO CARRYING CONCEALED
WEAPONS BY LICENSE HOLDERS

SECTION ___.01 Section 46.03, Penal Code, is amended by adding Subsection (j) to read as follows:

(j) It is a defense to prosecution under Subsection (a)(1) that at the time of the commission of the offense the actor was:

(1) carrying a concealed handgun that the person was licensed to carry under Subchapter H, Chapter 411, Government Code; and

(2) attending a school district board of trustees meeting in an official capacity as:

(A) a member of the board of trustees; or

(B) the superintendent of the school district governed by the board of trustees.

SECTION ___.02. Section 46.035, Penal Code, is amended by adding Subsection (l) to read as follows:

(l) It is a defense to prosecution under Subsection (c) that at the time of the commission of the offense the actor was attending a school district board of trustees meeting in an official capacity as:

(1) a member of the board of trustees; or

(2) the superintendent of the school district governed by the board of trustees.

SECTION ___.03. Sections 46.03(j) and 46.035(l), Penal Code, as added by this Act, apply only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

The amendment to **CSSB 1581** was read.

Senator Williams withdrew Floor Amendment No. 10.

Senator Ellis offered the following amendment to the bill:

**Floor Amendment No. 11**

Amend **CSSB 1581** on page 3, between lines 18 and 19, by inserting Subsection (3) to read as follows and renumber the subsequent sections appropriately:

"(3)(a) The Joint Oversight Committee on Higher Education Governance, Excellence, and Transparency shall review tuition deregulation and make recommendations to the 83rd Legislature for its continuation or repeal. The report shall be submitted by January 1, 2013 to the Legislature.

(b) Section 54.0513, Education Code shall be repealed on September 1, 2013 unless the Legislature passes legislation to continue its existence."

The amendment to **CSSB 1581** was read.

On motion of Senator Ogden, Floor Amendment No. 11 was tabled by the following vote: Yeas 16, Nays 15.

Yeas: Birdwell, Carona, Duncan, Eltife, Estes, Harris, Hegar, Huffman, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Zaffirini.

Nays: Davis, Deuell, Ellis, Fraser, Gallegos, Hinojosa, Jackson, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Williams.

Senator Ogden offered the following amendment to the bill:

TX_00003246

USA_00017859

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 15 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 146 of
Monday, May 9, 2011 SENATE JOURNAL 2123

**Floor Amendment No. 12**

Amend **CSSB 1581** by striking ARTICLE 1 of the bill (senate committee printing, page 1, lines 12-40) and renumbering subsequent ARTICLES and SECTIONS of the bill accordingly.

The amendment to **CSSB 1581** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 12.

On motion of Senator Ogden and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1581** as amended was passed to engrossment by the following vote:  Yeas 21, Nays 10.

Yeas:  Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Hinojosa, Huffman, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Uresti, Wentworth, Whitmire, Williams.

Nays:  Davis, Ellis, Gallegos, Jackson, Lucio, Rodriguez, Van de Putte, Watson, West, Zaffirini.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1581 ON THIRD READING

Senator Ogden moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1581** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 25, Nays 6.

Yeas:  Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Uresti, Van de Putte, Wentworth, West, Whitmire, Williams.

Nays:  Davis, Ellis, Gallegos, Rodriguez, Watson, Zaffirini.

The bill was read third time and was passed by the following vote: Yeas 20, Nays 11.

Yeas:  Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Uresti, Wentworth, Whitmire, Williams.

Nays:  Davis, Ellis, Gallegos, Hinojosa, Jackson, Lucio, Rodriguez, Van de Putte, Watson, West, Zaffirini.

## CONFERENCE COMMITTEE ON HOUSE BILL 1

Senator Ogden called from the President's table, for consideration at this time, the request of the House for a conference committee to adjust the differences between the two Houses on **HB 1** and moved that the request be granted.

The motion prevailed without objection.

2124          82nd Legislature — Regular Session          56th Day

The President asked if there were any motions to instruct the conference committee on **HB 1** before appointment.

There were no motions offered.

Accordingly, the President announced the appointment of the following conferees on the part of the Senate: Senators Ogden, Chair; Nelson, Williams, Duncan, and Hinojosa.

(President Pro Tempore Ogden in Chair)

**COMMITTEE SUBSTITUTE**
**SENATE BILL 1213 ON SECOND READING**

On motion of Senator Carona and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSB 1213** at this time on its second reading:

**CSSB 1213**, Relating to consumer protections in the purchase of life settlement contracts; imposing penalties.

The bill was read second time.

Senator Carona offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSSB 1213** (senate committee printing) as follows:

(1) In SECTION 1.01 of the bill, in added Section 1111A.002(1), Insurance Code (page 1, line 25), strike "an individual" and substitute "a person".

(2) In SECTION 1.01 of the bill, in added Section 1111A.002(2), Insurance Code (page 1, line 32), strike ". A broker" and substitute "or estimates life expectancies for a life settlement contract. A broker who offers or attempts to negotiate a life settlement contract".

(3) In SECTION 1.01 of the bill, in added Section 1111A.002(7), Insurance Code (page 2, line 17), strike "producer" and substitute "agent".

(4) In SECTION 1.01 of the bill, in added Section 1111A.003(a), Insurance Code (page 6, lines 3-8), strike "If there is more than one owner on a single policy and the owners are residents of different states, the life settlement contract is governed by the law of the state in which the owner having the largest percentage ownership resides or, if the owners hold equal ownership, the state of residence of one owner agreed on in writing by all owners."

(5) In SECTION 1.01 of the bill, in added Section 1111A.003(b), Insurance Code (page 6, line 10), strike "prescribed by rule" and substitute "prescribed".

(6) In SECTION 1.01 of the bill, at the end of added Section 1111A.003, Insurance Code (page 7, between lines 45 and 46), insert the following:

(q) The business of life settlements constitutes the business of insurance.

(7) In SECTION 1.01 of the bill, in added Section 1111A.004(a)(6), Insurance Code (page 7, line 69), between "contract" and "that", insert "using a form".

(8) In SECTION 1.01 of the bill, in added Section 1111A.004(b), Insurance Code (page 8, line 15), strike "only after a hearing".

(9) In SECTION 1.01 of the bill, in added Section 1111A.006(d)(4), Insurance Code (page 9, line 20), between "another" and "provider", insert "licensed".

TX_00003248
JA_002979

TX_00003248

USA_00017861

(10) In SECTION 1.01 of the bill, strike added Section 1111A.007, Insurance Code (page 9, line 39, through page 11, line 23), and substitute the following:

Sec. 1111A.007. EXAMINATION. Subchapter B, Chapter 401, applies to a person engaged in the business of life settlements.

(11) In SECTION 1.01 of the bill, in added Section 1111A.011(c)(1), Insurance Code (page 11, line 55), strike "directly".

(12) In SECTION 1.01 of the bill, in added Section 1111A.012(a), Insurance Code (page 11, lines 61-65), strike "A provider shall provide in writing, in a separate document that is signed by the owner and provider, the following information to the owner not later than the date the life settlement contract is signed by all parties:" and substitute the following:

Not later than the fifth day after the date a provider receives the application for a life settlement contract, the provider shall provide, in a separate written document, the following information to the owner:

(13) In SECTION 1.01 of the bill, in added Section 1111A.013(c), Insurance Code (page 13, lines 57-58), strike "as described by Subsection (b)".

(14) In SECTION 1.01 of the bill, in added Section 1111A.014(e), Insurance Code (page 14, line 64), strike "producer" and substitute "agent".

(15) In SECTION 1.01 of the bill, in added Section 1111A.014(n), Insurance Code (page 15, lines 55-58), strike "The time covered under a group policy must be calculated without regard to a change in insurance carriers, provided the coverage has been continuous and under the same group sponsorship."

(16) In SECTION 1.01 of the bill, in added Section 1111A.014, Insurance Code (page 16, between lines 15 and 16), insert a new Subsection (o) to read as follows:

(o) For the purposes of Subsection (n)(1), time covered under a group policy must be calculated without regard to a change in insurance carriers, provided the coverage has been continuous and under the same group sponsorship.

(17) In SECTION 1.01 of the bill, in added Section 1111A.015, Insurance Code (page 16, line 29), between "RULES." and "The", insert "(a)".

(18) In SECTION 1.01 of the bill, at the end of added Section 1111A.015, Insurance Code (page 16, between lines 32 and 33), insert the following:

(b) The commissioner may not adopt a rule establishing a price or fee for the sale or purchase of a life settlement contract. This subsection does not prohibit the commissioner from adopting a rule relating to an unjust price or fee for the sale or purchase of a life settlement contract.

(c) The commissioner may not adopt a rule that regulates the actions of an investor providing money to a life or viatical settlement company.

(19) In SECTION 1.01 of the bill, in added Section 1111A.017(a)(1), Insurance Code (page 16, line 62), between "or" and "should", insert "reasonably".

(20) In SECTION 1.01 of the bill, in added Section 1111A.017(a)(4), Insurance Code (page 17, line 4), strike "sole".

(21) In SECTION 1.01 of the bill, in added Section 1111A.018(b), Insurance Code (page 17, line 45), strike "knowingly or intentionally".

(22) In SECTION 1.01 of the bill, strike added Section 1111A.019, Insurance Code (page 17, lines 61-66), and substitute the following:

TX_00003249
JA_002980

TX_00003249

USA_00017862

Sec. 1111A.019. MANDATORY REPORTING OF FRAUDULENT LIFE SETTLEMENT ACTS. A person engaged in the business of life settlements has a duty under Section 701.051 to report a fraudulent life settlement act.

(23) In SECTION 1.01 of the bill, strike added Sections 1111A.020 and 1111A.021, Insurance Code (page 17, line 67, through page 18, line 34).

(24) In SECTION 1.01 of the bill, in added Section 1111A.024(b), Insurance Code (page 19, line 35), strike "or criminal".

(25) In SECTION 1.01 of the bill, strike added Section 1111A.026(b), Insurance Code (page 19, lines 59-62), and substitute the following:

(b) A person who knowingly, recklessly, or intentionally commits a fraudulent life settlement act commits a criminal offense and is subject to penalties under Chapter 35, Penal Code.

(26) In SECTION 1.01 of the bill, at the end of added Chapter 1111A, Insurance Code (page 19, between lines 64 and 65), insert the following appropriately numbered section:

Sec. 1111A.___. APPLICABILITY OF OTHER INSURANCE LAWS. The following laws apply to a person engaged in the business of life settlements:

(1) Chapters 82, 83, 84, 101, 481, 541, and 701;

(2) Sections 31.002, 32.021, 32.023, 32.041, 38.001, 81.004, 86.001, 86.051, 86.052, 201.004, 401.051, 401.054, 401.151(a), 521.003, 521.004, 543.001(c), 801.056, and 862.052;

(3) Subchapter A, Chapter 32;

(4) Subchapter C, Chapter 36;

(5) Subchapter B, Chapter 404; and

(6) Subchapter B, Chapter 491.

(27) In SECTION 1.01 of the bill, redesignate sections, subsections, and cross-references in added Chapter 1111A, Insurance Code, appropriately.

The amendment to **CSSB 1213** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator Carona and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1213** as amended was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1213 ON THIRD READING

Senator Carona moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1213** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

TX_00003250
JA_002981

TX_00003250

USA_00017863

Case 2:13-cv-00193  Document 661-11  Filed on 11/11/14 in TXSD  Page 19 of 42
e 1:12-cv-00128-RMC-DST-RLW  Document 209-2  Filed 06/20/12  Page 150 of
Monday, May 9, 2011          SENATE JOURNAL          2129

## COMMITTEE SUBSTITUTE
## SENATE BILL 1616 ON SECOND READING

On motion of Senator West and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSB 1616** at this time on its second reading:

**CSSB 1616**, Relating to the collection, storage, preservation, retrieval, and destruction of biological evidence.

The bill was read second time.

Senator West offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSSB 1616** (Senate Committee Printing) as follows:

(1) In SECTION 1 of the bill, in added Article 38.43(b), Code of Criminal Procedure (page 1, line 44), between "preservation," and "or retrieval", insert "analysis,".

(2) In SECTION 1 of the bill, in amended Article 38.43, Code of Criminal Procedure (page 1, line 46, through page 2, line 21), strike amended Subsection (c) and substitute the following:

(c) An entity or individual described by Subsection (b) shall ensure that biological evidence collected pursuant to an investigation or prosecution of a felony offense or conduct constituting a felony offense is retained and [Except as provided by Subsection (d), material required to be preserved under this article must be] preserved:

(1) for not less than 40 years, or until the applicable statute of limitations has expired, if there is an unapprehended actor associated with the offense; or

(2) in a case in which a defendant has been convicted, placed on deferred adjudication community supervision, or adjudicated as having engaged in delinquent conduct and there are no additional unapprehended actors associated with the offense:

(A) until the inmate is executed, dies, or is released on parole, if the defendant is [was] convicted of a capital felony; [or]

(B) [(2)] until the defendant dies, completes the defendant's sentence, or is released on parole or mandatory supervision, if the defendant is sentenced to a term of confinement or imprisonment in the Texas Department of Criminal Justice;

(C) until the defendant completes the defendant's term of community supervision, including deferred adjudication community supervision, if the defendant is placed on community supervision;

(D) until the defendant dies, completes the defendant's sentence, or is released on parole, mandatory supervision, or juvenile probation, if the defendant is committed to the Texas Youth Commission; or

(E) until the defendant completes the defendant's term of juvenile probation, including a term of community supervision upon transfer of supervision to a criminal court, if the defendant is placed on juvenile probation.

(3) In SECTION 1 of the bill, in amended Article 38.43(d), Code of Criminal Procedure (page 2, lines 25 through 26), strike "the rules adopted under Subsection (c)(2)" and substitute "Subsection (c)".

TX_00003251

USA_00017864

(4) In SECTION 1 of the bill, in amended Article 38.43(f), Code of Criminal Procedure (page 2, line 40), between "adopt" and "rules", insert "standards and".

(5) In SECTION 1 of the bill, in amended Article 38.43, Code of Criminal Procedure (page 2, between lines 52 and 53), following amended Subsection (f), insert the following:

(g) The Department of Public Safety shall adopt standards and rules, consistent with best practices, relating to a person described by Subsection (b) that specify the manner of collection, storage, preservation, and retrieval of biological evidence.

(6) In SECTION 1 of the bill, in added Article 38.43(g), Code of Criminal Procedure (page 2, line 53), strike "(g)" and substitute "(h)".

(7) In SECTION 2(a) of the bill (page 2, line 58), strike "initial rules" and substitute "initial standards and rules".

(8) In SECTION 2(b) of the bill (page 3, line 10), strike "adopt the rules" and substitute "adopt the standards and rules".

(9) Strike SECTION 2(c) of the bill (page 3, lines 12 through 19) and substitute the following:

(c) The change in law made by Article 38.43, Code of Criminal Procedure, as amended by this Act, applies to biological evidence in the possession of an entity or individual described by Article 38.43(b), Code of Criminal Procedure, as amended by this Act, on the effective date of this Act, regardless of whether the evidence was collected before, on, or after the effective date of this Act.

(d) Notwithstanding Subsection (c) of this section, an entity or individual described by Article 38.43(b), Code of Criminal Procedure, as amended by this Act, is not required to comply with the standards and rules adopted under Article 38.43(g), Code of Criminal Procedure, as added by this Act, before January 1, 2013.

The amendment to **CSSB 1616** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator West and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1616** as amended was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1616 ON THIRD READING

Senator West moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1616** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

TX_00003252
JA_002983

TX_00003252

USA_00017865

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 21 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 152 of
Monday, May 9, 2011 SENATE JOURNAL 2139

## SENATE BILL 656 WITH HOUSE AMENDMENTS

Senator Huffman called **SB 656** from the President's table for consideration of the House amendments to the bill.

The President Pro Tempore laid the bill and the House amendments before the Senate.

**Amendment**

Amend **SB 656** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED

AN ACT

relating to the abolition of the Coastal Coordination Council and the transfer of its functions to the General Land Office.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 201.026(g), Agriculture Code, is amended to read as follows:

(g) In an area that the state board identifies as having or having the potential to develop agricultural or silvicultural nonpoint source water quality problems or an area within the "coastal zone" designated by the commissioner of the General Land Office [Coastal Coordination Council], the state board shall establish a water quality management plan certification program that provides, through local soil and water conservation districts, for the development, supervision, and monitoring of individual water quality management plans for agricultural and silvicultural lands. Each plan must be developed, maintained, and implemented under rules and criteria adopted by the state board and comply with state water quality standards established by the Texas Commission on Environmental Quality. The state board shall certify a plan that satisfies the state board's rules and criteria and complies with state water quality standards established by the Texas Commission on Environmental Quality under the commission's exclusive authority to set water quality standards for all water in the state.

SECTION 2. Section 33.004, Natural Resources Code, is amended by adding Subdivision (2-a) to read as follows:

(2-a) "Committee" means the Coastal Coordination Advisory Committee.

SECTION 3. Section 33.051, Natural Resources Code, is amended to read as follows:

Sec. 33.051. GENERAL DUTY. The board, the commissioner [council], the land office, and the network shall perform the duties provided in this subchapter.

SECTION 4. Section 33.052(a), Natural Resources Code, is amended to read as follows:

(a) The commissioner shall develop a continuing comprehensive coastal management program pursuant to the policies stated in Section 33.202 [of this code. The program is not effective until approved by a majority of the council under Section 33.204 of this code].

SECTION 5. Section 33.052(b), Natural Resources Code, as amended by Chapters 165 (S.B. 971) and 416 (H.B. 3226), Acts of the 74th Legislature, Regular Session, 1995, is reenacted and amended to read as follows:

Case 2:13-cv-00193   Document 661-11   Filed on 11/11/14 in TXSD   Page 22 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 153 of
2130          82nd Legislature — Regular Session          36th Day

(b) In developing the program, the land office shall act as the lead agency to coordinate and implement a comprehensive coastal management program [develop a long-term plan] for the management of uses affecting coastal natural resource areas, in cooperation with other state agencies that have duties relating to coastal matters[, including those agencies represented on the council]. The program shall implement the policies stated in Section 33.202 [of this code] and shall include the elements listed in Section 33.053 [of this code].

SECTION 6.  Section 33.052(e), Natural Resources Code, is amended to read as follows:

(e) This section does not add to or subtract from the duties and responsibilities of a state agency other than the land office, the commissioner [council], and the board.

SECTION 7.  Section 33.055, Natural Resources Code, is amended to read as follows:

Sec. 33.055.  PUBLIC HEARINGS TO CONSIDER COASTAL MANAGEMENT PROGRAM. In developing, reviewing, or amending the coastal management program, after due notice to affected persons and the public generally, the commissioner [and the council] shall hold or have held public hearings as the commissioner determines [and the council determine] to be appropriate.

SECTION 8.  Sections 33.204(a), (e), (f), and (g), Natural Resources Code, are amended to read as follows:

(a) The commissioner [council] by rule shall adopt goals and policies of the coastal management program. A goal or policy may not require an agency or subdivision to perform an action that would exceed the constitutional or statutory authority of the agency or subdivision to which the goal or policy applies.

(e) In conducting consistency reviews under Section 33.205 [of this code], the commissioner [council] shall receive and consider the oral or written testimony of any person regarding the coastal management program as the testimony relates to the agency or subdivision action or federal agency action or activity or outer continental shelf plan under review.  The commissioner [council] may reasonably limit the length and format of the testimony and the time at which it will be received. Notice of the period during which the testimony will be received shall be published in the Texas Register and in a newspaper of general circulation in each county directly affected by the matter under review before the commencement of that period. The commissioner [council] shall consider only the record before the agency or subdivision involved in the matter under review, the agency's or subdivision's findings, applicable laws and rules, any additional information provided by that agency or subdivision, and public testimony under this subsection, provided that if the agency or subdivision did not hold a hearing, make a record, or make findings, the commissioner [council] may hold a hearing and make findings necessary to a complete and thorough review.

(f)  [The land office shall assist the council in carrying out its duties. The council members may not receive compensation for services but may receive reimbursement for actual and necessary expenses.] The land office, in coordination with other agencies and subdivisions, shall prepare an annual report on the effectiveness of the coastal management program. [The land office shall submit the report to the council for approval.] On or before January 15 of each odd-numbered year, the land office shall send to the legislature each of the previous two annual reports.

TX_00003254
USA_00017867

(g) The commissioner [council] may award grants to projects that further the goals and policies of the coastal management program [council]. The commissioner [council] shall establish the procedures for making any determination related to awarding a grant.

SECTION 9. Section 33.2041, Natural Resources Code, is amended to read as follows:

Sec. 33.2041. COASTAL COORDINATION ADVISORY COMMITTEE [COMPOSITION OF COUNCIL; TERMS]. (a) The commissioner by rule shall establish the Coastal Coordination Advisory Committee to advise the commissioner on matters related to the coastal management program. The committee [council] shall consist of:

(1) a representative of each of the following entities designated by the presiding officer of that entity [ex officio members]:

(A) the land office [commissioner];

(B) the [presiding officer of the] Parks and Wildlife Department [Commission or a member of the commission designated by the presiding officer];

(C) the [presiding officer of the] Texas Commission on Environmental Quality [Natural Resource Conservation Commission or a member of the commission designated by the presiding officer];

(D) [a member of] the Railroad Commission of Texas [appointed by that commission];

(E) the [presiding officer of the] Texas Water Development Board [or a member of the board designated by the presiding officer];

(F) the [presiding officer of the] Texas Department of Transportation [Commission or a member of the commission designated by the presiding officer];

(G) [a member of] the State Soil and Water Conservation Board [appointed by that board]; and

(H) the [director of the] Texas [A&M University] Sea Grant College Program to serve as a nonvoting member; and

(2) the following members to be appointed by the commissioner [governor with the advice and consent of the senate to serve a two-year term]:

(A) a city or county elected official who resides in the coastal area;

(B) an owner of a business located in the coastal area who resides in the coastal area;

(C) a resident from the coastal area; and

(D) a representative of agriculture.

(b) The commissioner by rule shall establish the terms of office for and duties of committee members [terms of the positions on the council held by the city or county elected official who resides in the coastal area and the resident from the coastal area expire May 31 of each even-numbered year. The terms of the positions on the council held by the owner of a business located in the coastal area who resides in the coastal area and the representative of agriculture expire May 31 of each odd-numbered year].

(c) Chapter 2110, Government Code, does not apply to the size, composition, or duration of the committee [Appointments to the council shall be made without regard to the race, color, disability, sex, religion, age, or national origin of the appointees].

Case 2:13-cv-00193   Document 661-11   Filed on 11/11/14 in TXSD   Page 24 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 155 of
2132                    82nd Legislature — Regular Session          56th Day

SECTION 10. The heading to Section 33.205, Natural Resources Code, is amended to read as follows:

Sec. 33.205. CONSISTENCY WITH COASTAL MANAGEMENT PROGRAM; COMMISSIONER [COUNCIL] REVIEW.

SECTION 11. Section 33.205, Natural Resources Code, is amended by amending Subsections (b), (c), (d), (e), (f), (g), and (h) and adding Subsections (f-1) and (f-2) to read as follows:

(b) An agency or subdivision subject to the requirements of Subsection (a) shall affirm that it has taken into account the goals and policies of the coastal management program by issuing a written determination that a proposed agency or subdivision action described by Section 33.2051 or 33.2053 is consistent with the program goals and policies.

(c) The commissioner [council] may [not] review a proposed agency or subdivision action subject to the requirements of Subsections (a) and (b) [of this section] for consistency with the goals and policies of the coastal management program if [unless]:

(1) the consistency determination for the proposed action was contested by:

(A) a [council] member of the committee or an agency that was a party in a formal hearing under Chapter 2001, Government Code, or in an alternative dispute resolution process; or

(B) another [a council member or other] person by the filing of written comments with the agency before the action was proposed if the proposed action is one for which a formal hearing under Chapter 2001, Government Code, is not available; and

(2) a person described by Subdivision (1) [of this subsection] files a request for referral alleging a significant unresolved dispute regarding the proposed action's consistency with the goals and policies of the coastal management program[; and

[(3) any three members of the council other than the director of the Texas A&M University Sea Grant Program agree that there is a significant unresolved dispute regarding the proposed action's consistency with the goals and policies of the coastal management program and the matter is placed on the agenda for a council meeting].

(d) If consistency review thresholds are in effect under Section 33.2052, the commissioner [council] may not review a proposed action subject to the requirements of Subsections (a) and (b) for consistency with the goals and policies of the coastal management program unless the requirements of Subsection (c) are satisfied and:

(1) if the proposed action is one for which a formal hearing under Chapter 2001, Government Code, is available:

(A) the action exceeds the applicable thresholds and the agency's consistency determination was contested in a formal hearing or in an alternative dispute resolution process; or

(B) the action does not exceed the applicable thresholds but may directly and adversely affect a critical area, critical dune area, coastal park, wildlife management area or preserve, or gulf beach and a state agency contested the agency's consistency determination in a formal hearing; or

TX_00003256
JA_002987


TX_00003256

USA_00017869

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 25 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 156 of
Monday, May 9, 2011    SENATE JOURNAL    2139

(2) if the proposed action is one for which a formal hearing under Chapter 2001, Government Code, is not available to contest the agency's determination, the action exceeds the applicable thresholds.

(e) The commissioner [council] must consider and act on a matter referred under Subsection (c) or (d) before the 26th day after the date the agency or subdivision proposed the action. For purposes of this section, an action subject to the contested case provisions of Chapter 2001, Government Code, is proposed when notice of a decision or order is issued under Section 2001.142, Government Code.

(f) The commissioner [council] by rule shall establish a process by which an applicant for a permit or other proposed action described in Section 33.2053, or an agency or subdivision proposing an action, may request and receive a preliminary consistency review. The rules shall:

(1) create a permitting assistance group composed of representatives of committee [council] member agencies and other interested committee [council] members to coordinate the preliminary reviews; and

(2) require that the following written information be produced not later than the 45th day after the date of the request for preliminary review:

(A) a statement from each agency or subdivision required to permit or approve the project as to whether the agency or subdivision anticipates approving or denying the application;

(B) if an agency or subdivision intends to deny an application, the agency's or subdivision's explanation of the grounds for denial and recommendations for resolving the grounds in a way that would allow the application to be approved;

(C) if enough information is already available, a preliminary finding as to whether the project is likely to be found consistent with the goals and policies of the coastal management program; and

(D) if the project is likely to be found inconsistent with the goals and policies of the coastal management program, an explanation and recommendation for resolving the inconsistency in a way that would allow the project to be found consistent.

(f-1) Not later than January 1, 2012, the commissioner shall evaluate the functions, including any pending initiatives, membership, and usefulness of the permitting assistance group established under Subsection (f). The evaluation must include input from all members of the permitting assistance group and the committee. This subsection expires April 1, 2012.

(f-2) The commissioner may adopt rules as necessary to:

(1) restructure or abolish the permitting assistance group;

(2) expand the functions of the permitting assistance group; or

(3) add members to the permitting assistance group.

(g) The commissioner [council] by rule shall establish a process by which an individual or small business may request and receive assistance with filing applications for permits or other proposed actions described by Section 33.2053. The rules shall provide for:

(1) the coordination of preapplication assistance through the permitting assistance group; and

TX_00003257

USA_00017870

Case 2:13-cv-00193   Document 661-11   Filed on 11/11/14 in TXSD   Page 26 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 157 of
2134                    82nd Legislature — Regular Session              56th  Day

(2)  the provision of the following, by the permitting assistance group, to an individual or a small business, on request:

(A)  a list of the permits or other approvals necessary for the project;

(B)  a simple, understandable statement of all permit requirements;

(C)  a coordinated schedule for each agency's or subdivision's decision on the action;

(D)  a list of all the information the agencies or subdivisions need to declare the applications for the permits or other approvals administratively complete;

(E)  assistance in completing the applications as needed; and

(F)  if enough information is already available, a preliminary finding as to whether the project is likely to be found consistent with the goals and policies of the coastal management program.

(h)  If an agency, subdivision, or applicant has received a preliminary finding of consistency under Subsection (f)(2)(C) or (g)(2)(F) and a request for referral was filed on that action under Subsection (c)(2), the commissioner [council] may accept the request for referral only if the agency or subdivision has substantially changed the permit or proposed action since the preliminary finding was issued.

SECTION 12.  Section 33.2051(e), Natural Resources Code, is amended to read as follows:

(e)  The commissioner [council] may not review a proposed rule of the [Texas] Department of Agriculture.

SECTION 13.  Section 33.2052, Natural Resources Code, is amended to read as follows:

Sec. 33.2052.  CERTIFICATION OF AGENCY RULES; AGENCY ACTIONS CONSIDERED CONSISTENT. (a) The commissioner [council] by rule shall establish and may modify a process by which an agency may establish rules and rule amendments described by Section 33.2051 to the commissioner [council] for review and certification for consistency with the goals and policies of the coastal management program.

(b)  The process must provide that an agency may submit to the commissioner [council] consistency review thresholds for the agency's actions described in Section 33.2053. After the commissioner [council] certifies that an agency's rules are consistent and approves the agency's thresholds, the agency's consistency determination under Section 33.205(b) for an action is final and is not subject to referral and review, except as provided by Section 33.205(d).

(c)  The commissioner [council] by rule shall provide that the commissioner [council] may revoke a [its] certification under Subsection (b) if the commissioner [council] finds that an agency has:

(1)  implemented certified rules in a manner that conflicts with the goals and policies of the coastal management program; or

(2)  amended certified rules in a manner inconsistent with the goals and policies of the coastal management program.

SECTION 14. Sections 33.2053(j) and (k), Natural Resources Code, are amended to read as follows:

TX_00003258
JA_002989

TX_00003258
USA_00017871

Case 2:13-cv-00193  Document 661-11  Filed on 11/11/14 in TXSD  Page 27 of 42
e 1:12-cv-00128-RMC-DST-RLW  Document 209-2  Filed 06/20/12  Page 158 of
Monday, May 9, 2011          SENATE JOURNAL                    2133

(j)  An action to renew, amend, or modify an existing permit, certificate, lease, easement, approval, or other action is not an action under this section if the action is taken under a rule that the commissioner [council] has certified under Section 33.2052 and:

(1)  for a wastewater discharge permit, if the action is not a major permit modification that would:

(A)  increase pollutant loads to coastal waters; or

(B)  result in relocation of an outfall to a critical area;

(2)  for solid, hazardous, or nonhazardous waste permits, if the action is not a Class III modification under rules of the Texas [Natural Resource Conservation] Commission on Environmental Quality; or

(3)  for any other action, if the action:

(A)  only extends the period of the existing authorization and does not authorize new or additional work or activity; or

(B)  is not directly relevant to Sections 33.205(a) and (b).

(k)  The commissioner [council] shall establish a program boundary to limit the geographic area in which the requirements of Sections 33.205(a) and (b) apply. The boundary is the coastal facility designation line as defined by Appendix 1 to 31 TAC Section 19.2 as that appendix existed on the effective date of this section, as modified by Section 33.203(7). Except as provided by Subsections (f)(8)-(10), this subchapter does not apply to an agency action authorizing an activity outside the program boundary.

SECTION 15.  Section 33.206, Natural Resources Code, is amended to read as follows:

Sec. 33.206.  [COUNCIL] ACTION BY COMMISSIONER OR ATTORNEY GENERAL. (a)  A proposed action is consistent with the goals and policies of the coastal management program and approved by the commissioner [council] unless[, on the affirmative vote of at least two-thirds of the members of the council,] the commissioner [council] determines the action to be inconsistent with the coastal management program and protests the action.

(b)  If the commissioner [council] protests the proposed action, the commissioner [council] shall report the commissioner's [its] findings on the matter to the agency or subdivision. The report shall specify how the proposed action is inconsistent with the goals and policies of the coastal management program and include specific recommendations of the commissioner [council] regarding how the proposed action may be modified or amended to make it consistent with the program. Before the 21st day after the date the agency or subdivision receives the report, the agency or subdivision shall review the findings and recommendations and determine whether to modify or amend the proposed action to make it consistent with the goals and policies of the coastal management program and shall notify the commissioner [council] of its decision.

(c)  If an agency or subdivision does not modify or amend a proposed action to be consistent with the goals and policies of the coastal management program, the commissioner [council] shall request the attorney general to issue an opinion on the consistency of the proposed action with the coastal management program. The agency

TX_00003259
USA_00017872

or subdivision is stayed from taking the proposed action until the attorney general issues the opinion. The attorney general shall issue an opinion before the 26th day after the date the commissioner [council] requests the opinion.

(d) The commissioner [council] shall adopt guidance and procedural rules for the review of federal actions, activities, and outer continental shelf plans that incorporate the provisions of federal regulations governing those reviews. The guidance and rules shall provide that the commissioner [chair or any three members] may request additional information from a federal agency or additional time for review as provided by the federal regulations.

(e) The commissioner [council] shall review any federal action, activity, or outer continental shelf plan that the commissioner determines [any three members of the council agree] presents a significant unresolved issue regarding consistency with the goals and policies of the coastal management program [and place the matter on the agenda of a meeting of the council for review].

(f) [If an activity requiring an agency or subdivision action described by Section 33.2053 that falls below thresholds in effect under Section 33.2052 also requires an equivalent federal permit or license, the council may only determine the agency or subdivision action's consistency.] If an activity requiring an agency or subdivision action described by Section 33.2053 that falls above thresholds in effect under Section 33.2052 also requires an equivalent federal permit or license, the commissioner [council] may determine the consistency of the agency or subdivision action or the federal license or permit, but not both. The determination regarding the consistency of an action made by the commissioner [council] under this subsection constitutes the state's determination regarding consistency of the equivalent agency or subdivision action or federal action.

(g) Notwithstanding the other provisions of this subchapter, on request for referral, the commissioner may not review a consistency determination of the land office, the commissioner, or the board.  The commissioner shall refer a request for a review of the consistency of such an action to the attorney general not later than the second day after the date the commissioner receives the request. The attorney general shall determine whether the action is consistent with the goals and policies of the coastal management program in accordance with the applicable provisions of this subchapter governing determinations by the commissioner. If the attorney general determines the action to be inconsistent with the goals and policies of the coastal management program, the attorney general may protest the action in accordance with the provisions of this subchapter governing protests by the commissioner. A protest by the attorney general has the same effect as a protest by the commissioner. The attorney general may adopt rules as necessary to implement this subsection [If, after review, the council finds a proposed federal agency action or activity or outer continental shelf plan is inconsistent with the coastal management program, and the federal agency does not modify the action, activity, or outer continental shelf plan to achieve consistency with the program, the governor, with the assistance of the chair of the council, may seek mediation of the matter in accordance with federal law].

[(h) The council may not protest a proposed action by an agency or subdivision pertaining to an application filed with that agency or subdivision before the date the coastal management program is adopted.]

TX_00003260
JA_002991

TX_00003260

USA_00017873

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 29 of 42
1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 160 of
Monday, May 9, 2011 SENATE JOURNAL 2139

SECTION 16. Section 33.207, Natural Resources Code, is amended to read as follows:

Sec. 33.207. COMMISSIONER [COUNCIL] RECOMMENDATIONS. In addition to the report required by Section 33.206, the commissioner [council]:

(1) may periodically submit recommendations to an agency or subdivision designed to encourage the agency or subdivision to carry out its functions in a manner consistent with the coastal management program, including recommendations for methods to simplify governmental procedures and changes in applicable rules or statutes; and

(2) shall report to the legislature on:

(A) recommended statutory changes needed to make more effective and efficient use of public funds and provide for more effective and efficient management of coastal natural resource areas, including recommendations on methods to simplify governmental procedures;

(B) agency or subdivision actions that are not consistent with the coastal management program; and

(C) population growth of, infrastructure needs of, and use of resources on the coast.

SECTION 17. Sections 33.208(b) and (c), Natural Resources Code, are amended to read as follows:

(b) If the attorney general issues an opinion under Section 33.206(c) that a proposed agency or subdivision action is inconsistent with the coastal management program and the agency or subdivision fails to implement the commissioner's [council's] recommendation regarding the action, the attorney general shall file suit in a district court of Travis County to enforce this subchapter. The court shall consider the attorney general's opinion in determining whether the proposed action is consistent with the coastal management program.

(c) Notwithstanding the request of an opinion from, or the filing of suit by, the attorney general, the commissioner [council] and the agency or subdivision may enter into a settlement agreement with regard to the proposed agency or subdivision action. If the commissioner [council] and the agency or subdivision enter into a settlement agreement, the commissioner [council] may rescind the commissioner's [its] request for an opinion from the attorney general.

SECTION 18. Section 33.209, Natural Resources Code, is amended to read as follows:

Sec. 33.209. PROHIBITION ON SPECIAL AREA MANAGEMENT PLANS. The land office [council] may not develop or approve a special area management plan, including a plan for an area designated under the national estuary program.

SECTION 19. The following provisions of the Natural Resources Code are repealed:

(1) Section 33.004(13);

(2) Section 33.052(c);

(3) Section 33.203(20);

(4) Sections 33.204(b), (c), and (d);

(5) Section 33.2042;

(6) Section 33.2043;

TX_00003261

USA_00017874

Case 2:13-cv-00193   Document 661-11   Filed on 11/11/14 in TXSD   Page 30 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 161 of
2138                  82nd Legislature — Regular Session                  56th Day

(7)  Section 33.2044;

(8)  Section 33.2045;

(9)  Section 33.2053(g);

(10)  Section 33.211; and

(11)  Section 33.212.

SECTION 20.  (a)  Effective September 1, 2011, the Coastal Coordination Council is abolished and the powers and duties of the council are transferred to the General Land Office in accordance with Chapter 33, Natural Resources Code, as amended by this Act.

(b)  As soon as possible after the effective date of this Act, the presiding officers of the appropriate entities shall appoint the members of the Coastal Coordination Advisory Committee in accordance with Section 33.2041, Natural Resources Code, as amended by this Act.

(c)  All rules of the Coastal Coordination Council are continued in effect as rules of the General Land Office until superseded by a rule of the land office. A certification issued by the council is continued in effect as provided by the law in effect immediately before the effective date of this Act. A complaint, investigation, contested case, or other proceeding pending on the effective date of this Act is continued without change in status after the effective date of this Act. An activity conducted by the council is considered to be an activity conducted by the land office.

(d)  A reference in another law or an administrative rule to the Coastal Coordination Council means the General Land Office.

(e)  On September 1, 2011, or as soon as is possible after that date, the commissioner of the General Land Office shall adopt a comprehensive plan to ensure the smooth transition of all programs operated by the Coastal Coordination Council before September 1, 2011, from the council to the land office. During the transition, the General Land Office shall consult with the National Oceanic and Atmospheric Administration as necessary to ensure continued compliance with federal requirements and to maintain federal approval of the Texas Coastal Management Program.

(f)  All money, records, property, and equipment in the possession of the Coastal Coordination Council on September 1, 2012, shall be transferred to the possession of the General Land Office on September 1, 2012, or as soon as possible after that date.

SECTION 21.  This Act takes effect September 1, 2011.

## Floor Amendment No. 1

Amend **CSSB 656** (house committee printing) as follows:

(1)  In SECTION 11 of the bill, strike amended Section 33.205(c), Natural Resources Code (page 7, line 14, through page 8, line 10), and substitute:

(c)  The commissioner [council] may [not] review a proposed agency or subdivision action subject to the requirements of Subsections (a) and (b) [of this section] for consistency with the goals and policies of the coastal management program if [unless]:

(1)  the consistency determination for the proposed action was contested by:

(A)  a [council] member of the committee or an agency that was a party in a formal hearing under Chapter 2001, Government Code, or in an alternative dispute resolution process; or

TX_00003262
JA_002993

TX_00003262
USA_00017875

Case 2:13-cv-00193   Document 661-11   Filed on 11/11/14 in TXSD   Page 31 of 42
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 162 of
Monday, May 9, 2011        SENATE JOURNAL        2139

(B) another [a council member or other] person by the filing of written comments with the agency before the action was proposed if the proposed action is one for which a formal hearing under Chapter 2001, Government Code, is not available;

(2) a person described by Subdivision (1) [of this subsection] files a request for referral alleging a significant unresolved dispute regarding the proposed action's consistency with the goals and policies of the coastal management program; and

(3) any three members of the committee [council] other than the representative [director] of the Texas [A&M University] Sea Grant College Program agree that there is a significant unresolved dispute regarding the proposed action's consistency with the goals and policies of the coastal management program and the matter is referred to the commissioner for review [placed on the agenda for a council meeting].

(2) In SECTION 15 of the bill, in amended Section 33.206(d), Natural Resources Code (page 15, lines 16-17), strike "[chair or any three members]" and substitute "[chair] or any three committee members".

(3) In SECTION 15 of the bill, in amended Section 33.206(e), Natural Resources Code (page 15, lines 21-22), strike "the commissioner determines [any three members of the council agree]" and substitute "any three committee members [of the council] agree".

The amendments were read.

Senator Huffman moved to concur in the House amendments to **SB 656**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

### SENATE BILL 1153 WITH HOUSE AMENDMENTS

Senator Williams called **SB 1153** from the President's table for consideration of the House amendments to the bill.

The President Pro Tempore laid the bill and the House amendments before the Senate.

### Floor Amendment No. 1

Amend **SB 1153** by adding the following appropriately numbered SECTION to the bill;
SECTION ____. Section 39.4526, Utilities Code, is amended to read as follows:
(g) The commission shall be precluded from engaging any lobbyist, as defined in Section 305.003 of Texas Government Code, under Subsection (a).

### Floor Amendment No. 1 on Third Reading

Amend second reading Floor Amendment No. 1, **SB 1153**, as follows:
SECTION ____. Section 39.4526, Utilities Code, is amended to read as follows:
(f) [(g)] The commission shall be precluded from engaging any individual who is required to register under [lobbyist, as defined in ] Section 305.003 of the Texas Government Code [under Subsection (a)].

The amendments were read.

Senator Williams moved to concur in the House amendments to **SB 1153**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

TX_00003263
JA_002994

TX_00003263

USA_00017876

## SENATE BILL 1160 WITH HOUSE AMENDMENTS

Senator Seliger called **SB 1160** from the President's table for consideration of the House amendments to the bill.

The President Pro Tempore laid the bill and the House amendments before the Senate.

### Floor Amendment No. 1

Amend **SB 1160** (house committee printing) by inserting the following appropriately numbered SECTIONS and renumbering SECTIONS of the bill accordingly:

SECTION ____. The heading to Section 75.006, Civil Practice and Remedies Code, is amended to read as follows:

Sec. 75.006. LIABILITY LIMITED FOR ACTIONS OF FIREFIGHTER, FEDERAL LAW ENFORCEMENT OFFICER, OR PEACE OFFICER.

SECTION ____. Section 75.006, Civil Practice and Remedies Code, is amended by amending Subsection (a) and adding Subsections (c) and (d) to read as follows:

(a) In this section:

(1) "Federal law enforcement officer" means a law enforcement officer as defined by 5 U.S.C. Section 8331(20).

(2) "Firefighter" means a member of a fire department who performs a function listed in Section 419.021(3)(C), Government Code.

(3) [(2)] "Livestock" has the meaning assigned by Section 1.003, Agriculture Code.

(4) [(3)] "Peace officer" has the meaning assigned by Section 1.07, Penal Code, or other state or federal law.

(c) An owner, lessee, or occupant of agricultural land is not liable for any damage or injury to any person or property that arises from the actions of a peace officer or federal law enforcement officer when the officer enters or causes another person to enter the agricultural land with or without the permission of the owner, lessee, or occupant. The owner, lessee, or occupant of agricultural land is not liable for the damage or injury regardless of whether the damage or injury occurs on the agricultural land.

(d) The owner, lessee, or occupant of agricultural land is not liable for any damage or injury to any person or property that arises from the actions of an individual who, because of the actions of a peace officer or federal law enforcement officer, enters or causes another person to enter the agricultural land without the permission of the owner, lessee, or occupant.

(e) This section does not limit the liability of an owner, lessee, or occupant of agricultural land for any damage or injury that arises from a willful or wanton act or gross negligence by the owner, lessee, or occupant.

### Floor Amendment No. 1 on Third Reading

Amend Amendment No. 1 of **SB 1160** by amending Subsection (c) as follows:

(c) An owner, lessee, or occupant of agricultural land is not liable for any damage or injury to any person or property that arises from the actions of a peace officer or federal law enforcement officer when the officer enters or causes another

TX_00003264

USA_00017877

person to enter the agricultural land with or without the permission of the owner, lessee, or occupant,~~ The owner, lessee, or occupant of agricultural land is not liable for the damage or injury~~ regardless of whether the damage or injury occurs on the agricultural land.

The amendments were read.

Senator Seliger moved to concur in the House amendments to **SB 1160**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

### PERMISSION TO INTRODUCE BILLS

On motion of Senator Whitmire and by unanimous consent, Senate Rule 7.07(b) was suspended to permit the introduction of the following bills: **SB 1929**, **SB 1930**.

### SENATE BILLS ON FIRST READING

The following bills were introduced, read first time, and referred to the committees indicated:

**SB 1929** by Seliger
Relating to the application of the professional prosecutors law to the district attorney for the 287th Judicial District.
To Committee on Jurisprudence.

**SB 1930** by Nelson
Relating to the disclosure of the composition of hydraulic fracturing fluids used in hydraulic fracturing treatments.
To Committee on Natural Resources.

### HOUSE BILL ON FIRST READING

The following bill received from the House was read first time and referred to the committee indicated:

**HB 2295** to Committee on Business and Commerce.

### CONFERENCE COMMITTEE ON HOUSE BILL 1956

Senator Carona called from the President's table, for consideration at this time, the request of the House for a conference committee to adjust the differences between the two Houses on **HB 1956** and moved that the request be granted.

The motion prevailed without objection.

The President Pro Tempore asked if there were any motions to instruct the conference committee on **HB 1956** before appointment.

There were no motions offered.

Accordingly, the President Pro Tempore announced the appointment of the following conferees on the part of the Senate: Senators Carona, Chair; Eltife, Lucio, Harris, and Watson.

TX_00003265
JA_002996

TX_00003265

USA_00017878

### HOUSE BILL 3814 REREFERRED
### (Motion In Writing)

Senator Wentworth submitted a Motion In Writing requesting that **HB 3814** be withdrawn from the Committee on Intergovernmental Relations and rereferred to the Committee on Administration.

The Motion In Writing prevailed without objection.

### NOTICE GIVEN FOR
### LOCAL AND UNCONTESTED CALENDAR

Senator Eltife announced that a Local and Uncontested Calendar had been furnished to each Member of the Senate.  He then gave notice that the Local and Uncontested Calendar Session would be held at 8:00 a.m. tomorrow and that all bills and resolutions would be considered on second and third reading in the order in which they were listed.

### SENATE RULE 11.13 SUSPENDED
### (Consideration of Bills in Committees)

On motion of Senator Eltife and by unanimous consent, Senate Rule 11.13 was suspended to grant all committees permission to meet while the Senate is meeting today during the introduction of bills and resolutions on first reading and tomorrow during the Local and Uncontested Calendar Session.

### SENATE RULE 11.10(a) SUSPENDED
### (Public Notice of Committee Meetings)

On motion of Senator Lucio and by unanimous consent, Senate Rule 11.10(a) was suspended in order that the Committee on International Relations and Trade might meet today.

### MOTION TO RECESS AND ADJOURN

On motion of Senator Whitmire and by unanimous consent, the Senate at 4:46 p.m. agreed to recess, in honor of Timothy Moore and Fernando Meza, upon completion of the introduction of bills and resolutions on first reading, until 8:00 a.m. tomorrow for the Local and Uncontested Calendar Session.

The Senate further agreed to adjourn, in memory of Myra McDaniel, upon conclusion of the Local and Uncontested Calendar Session, until 11:00 a.m. tomorrow.

### HOUSE BILLS AND RESOLUTIONS ON FIRST READING

The following bills and resolutions received from the House were read first time and referred to the committees indicated:

**HB 8** to Committee on Business and Commerce.
**HB 122** to Committee on Jurisprudence.
**HB 257** to Committee on Finance.
**HB 300** to Committee on Health and Human Services.
**HB 442** to Committee on Transportation and Homeland Security.
**HB 528** to Committee on State Affairs.

TX_00003266

USA_00017879

**HB 577** to Committee on Health and Human Services.
**HB 595** to Committee on Criminal Justice.
**HB 654** to Committee on Finance.
**HB 673** to Committee on Transportation and Homeland Security.
**HB 742** to Committee on Education.
**HB 753** to Committee on Health and Human Services.
**HB 762** to Committee on State Affairs.
**HB 777** to Committee on Transportation and Homeland Security.
**HB 783** to Committee on Criminal Justice.
**HB 807** to Committee on Health and Human Services.
**HB 818** to Committee on Education.
**HB 826** to Committee on Education.
**HB 872** to Committee on Intergovernmental Relations.
**HB 961** to Committee on Criminal Justice.
**HB 970** to Committee on Economic Development.
**HB 971** to Committee on Business and Commerce.
**HB 1009** to Committee on Criminal Justice.
**HB 1033** to Committee on Economic Development.
**HB 1071** to Committee on Intergovernmental Relations.
**HB 1080** to Committee on Agriculture and Rural Affairs.
**HB 1090** to Committee on Intergovernmental Relations.
**HB 1111** to Committee on Jurisprudence.
**HB 1135** to Committee on State Affairs.
**HB 1178** to Committee on Economic Development.
**HB 1226** to Committee on State Affairs.
**HB 1315** to Committee on Economic Development.
**HB 1335** to Committee on Education.
**HB 1354** to Committee on State Affairs.
**HB 1389** to Committee on Criminal Justice.
**HB 1395** to Committee on Transportation and Homeland Security.
**HB 1456** to Committee on Business and Commerce.
**HB 1500** to Committee on Open Government.
**HB 1502** to Committee on State Affairs.
**HB 1517** to Committee on Transportation and Homeland Security.
**HB 1604** to Committee on International Relations and Trade.
**HB 1610** to Committee on Education.
**HB 1616** to Committee on State Affairs.
**HB 1619** to Committee on Intergovernmental Relations.
**HB 1649** to Committee on Intergovernmental Relations.
**HB 1678** to Committee on State Affairs.
**HB 1720** to Committee on Health and Human Services.
**HB 1723** to Committee on Criminal Justice.
**HB 1749** to Committee on Transportation and Homeland Security.
**HB 1772** to Committee on State Affairs.
**HB 1821** to Committee on Intergovernmental Relations.
**HB 1834** to Committee on Education.

**HB 1839** to Committee on Economic Development.
**HB 1840** to Committee on Agriculture and Rural Affairs.
**HB 1896** to Committee on Transportation and Homeland Security.
**HB 1930** to Committee on Criminal Justice.
**HB 1931** to Committee on Jurisprudence.
**HB 1942** to Committee on Education.
**HB 1983** to Committee on Health and Human Services.
**HB 1985** to Committee on Jurisprudence.
**HB 1988** to Committee on Criminal Justice.
**HB 1992** to Committee on Agriculture and Rural Affairs.
**HB 2048** to Committee on Finance.
**HB 2052** to Committee on State Affairs.
**HB 2061** to Committee on Health and Human Services.
**HB 2077** to Committee on Natural Resources.
**HB 2100** to Committee on Intergovernmental Relations.
**HB 2109** to Committee on Health and Human Services.
**HB 2127** to Committee on Agriculture and Rural Affairs.
**HB 2160** to Committee on Intergovernmental Relations.
**HB 2172** to Committee on State Affairs.
**HB 2173** to Committee on State Affairs.
**HB 2195** to Committee on Transportation and Homeland Security.
**HB 2205** to Committee on Intergovernmental Relations.
**HB 2220** to Committee on Intergovernmental Relations.
**HB 2284** to Committee on Business and Commerce.
**HB 2285** to Committee on Criminal Justice.
**HB 2366** to Committee on Education.
**HB 2367** to Committee on Jurisprudence.
**HB 2371** to Committee on Transportation and Homeland Security.
**HB 2374** to Committee on Criminal Justice.
**HB 2396** to Committee on Transportation and Homeland Security.
**HB 2477** to Committee on State Affairs.
**HB 2549** to Committee on Government Organization.
**HB 2576** to Committee on Health and Human Services.
**HB 2577** to Committee on Criminal Justice.
**HB 2584** to Committee on Intergovernmental Relations.
**HB 2604** to Committee on Business and Commerce.
**HB 2636** to Committee on Health and Human Services.
**HB 2651** to Committee on Transportation and Homeland Security.
**HB 2655** to Committee on Business and Commerce.
**HB 2663** to Committee on Natural Resources.
**HB 2671** to Committee on Transportation and Homeland Security.
**HB 2699** to Committee on Business and Commerce.
**HB 2703** to Committee on Health and Human Services.

**HB 2723** to Committee on State Affairs.
**HB 2735** to Committee on Criminal Justice.
**HB 2742** to Committee on Agriculture and Rural Affairs.
**HB 2761** to Committee on Intergovernmental Relations.
**HB 2784** to Committee on Economic Development.
**HB 2810** to Committee on Finance.
**HB 2826** to Committee on Natural Resources.
**HB 2872** to Committee on Transportation and Homeland Security.
**HB 2882** to Committee on State Affairs.
**HB 2899** to Committee on Jurisprudence.
**HB 2903** to Committee on Health and Human Services.
**HB 2940** to Committee on Health and Human Services.
**HB 2947** to Committee on Open Government.
**HB 2948** to Committee on Transportation and Homeland Security.
**HB 2949** to Committee on Jurisprudence.
**HB 2969** to Committee on Natural Resources.
**HB 2972** to Committee on Intergovernmental Relations.
**HB 2973** to Committee on State Affairs.
**HB 2993** to Committee on Criminal Justice.
**HB 3002** to Committee on Natural Resources.
**HB 3071** to Committee on Natural Resources.
**HB 3078** to Committee on State Affairs.
**HB 3085** to Committee on Health and Human Services.
**HB 3090** to Committee on Natural Resources.
**HB 3096** to Committee on Intergovernmental Relations.
**HB 3109** to Committee on Natural Resources.
**HB 3116** to Committee on Business and Commerce.
**HB 3117** to Committee on Business and Commerce.
**HB 3134** to Committee on Natural Resources.
**HB 3135** to Committee on Education.
**HB 3145** to Committee on Health and Human Services.
**HB 3161** to Committee on State Affairs.
**HB 3182** to Committee on Finance.
**HB 3197** to Committee on Health and Human Services.
**HB 3269** to Committee on Natural Resources.
**HB 3278** to Committee on Education.
**HB 3298** to Committee on Transportation and Homeland Security.
**HB 3311** to Committee on Jurisprudence.
**HB 3329** to Committee on Business and Commerce.
**HB 3337** to Committee on State Affairs.
**HB 3346** to Committee on Criminal Justice.
**HB 3391** to Committee on Natural Resources.
**HB 3395** to Committee on Government Organization.
**HB 3396** to Committee on Criminal Justice.
**HB 3457** to Committee on Intergovernmental Relations.
**HB 3468** to Committee on Education.

**HB 3506** to Committee on Education.

**HB 3573** to Committee on Business and Commerce.

**HB 3582** to Committee on State Affairs.

**HB 3689** to Committee on Higher Education.

**HB 3722** to Committee on Transportation and Homeland Security.

**HB 3724** to Committee on Health and Human Services.

**HB 3771** to Committee on Transportation and Homeland Security.

**HB 3796** to Committee on Jurisprudence.

**HB 3808** to Committee on Agriculture and Rural Affairs.

**HB 3811** to Committee on Intergovernmental Relations.

**HB 3846** to Committee on Intergovernmental Relations.

**HCR 86** to Committee on Government Organization.

**HCR 98** to Committee on Agriculture and Rural Affairs.

**HCR 133** to Committee on Government Organization.

**HJR 63** to Committee on Intergovernmental Relations.

### CO-AUTHORS OF SENATE BILL 471

On motion of Senator West, Senators Deuell, Rodriguez, and Uresti will be shown as Co-authors of **SB 471**.

### CO-AUTHOR OF SENATE BILL 1360

On motion of Senator Harris, Senator Patrick will be shown as Co-author of **SB 1360**.

### CO-AUTHOR OF SENATE BILL 1866

On motion of Senator Davis, Senator West will be shown as Co-author of **SB 1866**.

### RESOLUTIONS OF RECOGNITION

The following resolutions were adopted by the Senate:

### Memorial Resolutions

**SR 943** by Watson, In memory of David M. Himmelblau of Austin.

**HCR 116** (Harris), In memory of the Reverend Clinton Roderick Dobson of Arlington.

### Congratulatory Resolutions

**SCR 53** by Watson, Recognizing the Texas Heritage Songwriters' Association for fostering and preserving Texas culture.

**SR 939** by Harris, Recognizing The University of Texas at Arlington women's tennis team for winning the Southland Conference championship title.

**SR 940** by Watson, Recognizing Abundant Life Community Baptist Church of Austin on the occasion of the dedication of its new location.

**SR 941** by Watson, Recognizing Central Health, CommUnityCare, and The University of Texas at Austin School of Nursing for creating a nurse practitioner residency program.

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 39 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 170 of
Monday, May 9, 2011 SENATE JOURNAL 2149

**SR 942** by Watson, Recognizing the Austin Jokers Fast Pitch Softball Team on the occasion of its 50th anniversary.

**SR 944** by Lucio, Recognizing Silver Ribbon Community Partners for its service to the elderly and disabled citizens of Hidalgo and Starr Counties.

### RECESS

Pursuant to a previously adopted motion, the Senate at 4:55 p.m. recessed, in honor of Timothy Moore and Fernando Meza, until 8:00 a.m. tomorrow.

---

## APPENDIX

---

### COMMITTEE REPORTS

The following committee reports were received by the Secretary of the Senate in the order listed:

May 9, 2011

BUSINESS AND COMMERCE — **SB 995**

TRANSPORTATION AND HOMELAND SECURITY — **CSHB 563**, **HB 1251**, **CSHB 1112**, **CSSB 1611**, **CSSB 1572**, **CSSB 197**, **HB 993**, **HB 885**, **HB 591**, **CSSB 1402**

VETERAN AFFAIRS AND MILITARY INSTALLATIONS — **SB 1645**, **CSSB 1493**

EDUCATION — **CSSB 975**

CRIMINAL JUSTICE — **HB 27**, **HB 3000**, **HB 1779**, **HB 1770**, **HB 1567**, **HB 1566**, **HB 988**, **HB 1573**, **HB 1344**, **SB 1787**, **SB 578**

TRANSPORTATION AND HOMELAND SECURITY — **CSSB 1485**

STATE AFFAIRS — **HB 184**, **HB 1503**, **HB 1570**, **HB 1789**, **HB 2144**, **HB 2277**, **HB 2920**, **HB 3255**

ECONOMIC DEVELOPMENT — **CSSB 1175**

INTERGOVERNMENTAL RELATIONS — **CSHB 345**

FINANCE — **CSSJR 14**, **CSSB 516**

BUSINESS AND COMMERCE — **CSSB 1309**

### BILLS ENGROSSED

May 6, 2011

**SB 546**, **SB 1113**, **SB 1214**, **SB 1417**, **SB 1543**, **SB 1584**, **SB 1729**, **SB 1806**, **SB 1905**

TX_00003271
USA_00017884

## BILLS AND RESOLUTIONS ENROLLED

May 6, 2011

**SB 18, SB 265, SB 378, SB 528, SB 653, SB 820, SB 877, SB 918, SB 1195, SB 1272, SB 1303, SB 1490, SB 1568, SB 1716, SJR 4, SR 924, SR 928, SR 929, SR 930, SR 931, SR 932, SR 933, SR 934, SR 936, SR 937**

## SENT TO SECRETARY OF STATE

May 9, 2011

**SJR 4**

## SENT TO GOVERNOR

May 9, 2011

**SB 18, SB 265, SB 378, SB 528, SB 653, SB 820, SB 877, SB 918, SB 1195, SB 1272, SB 1303, SB 1490, SB 1568, SB 1716**

Case 2:13-cv-00193 Document 661-11 Filed on 11/11/14 in TXSD Page 41 of 42
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 172 of
Monday, May 9, 2011 SENATE JOURNAL 2149

**In Memory**

**of**

**Myra McDaniel**

**House Concurrent Resolution 139**

WHEREAS, The State of Texas lost an admired public servant and civic leader with the death of former secretary of state Myra McDaniel of Austin on February 25, 2010, at the age of 77; and

WHEREAS, Born in Philadelphia on December 13, 1932, the former Myra Atwell was the daughter of Eva and Toronto Atwell; she attended the prestigious Philadelphia High School for Girls and earned her bachelor's degree in English from the University of Pennsylvania; after her marriage to Reuben McDaniel, she became the proud mother of two children, Diane and Reuben; and

WHEREAS, Mrs. McDaniel began her career as a management analyst and served in administrative positions at Baldwin Wallace College in Ohio and at Indiana University; in 1975, she completed her law degree at The University of Texas School of Law and she went on to work in the office of the Texas attorney general; she became chief of the taxation division in 1979 and then worked as counsel for the Railroad Commission before entering private practice in Midland; and

WHEREAS, In 1984, Governor Mark White appointed Mrs. McDaniel as his general counsel; she became the first African American secretary of state in Texas history two years later, and her intellect, integrity, and wisdom greatly benefited her fellow citizens; treating all those around her with thoughtfulness and respect, she won the loyalty of her staff and set a sterling example of leadership during her three-year tenure; and

WHEREAS, This esteemed woman continued to serve as a mentor and role model after returning to private practice, and in 1995, she became one of the first African American women to lead a major law firm, Bickerstaff, Heath, Smiley, Pollan, Kever, and McDaniel, as managing partner; over the course of her distinguished legal career, she served as counsel for Austin Community College and Capital Metro, and she continued to work part-time for Bickerstaff Heath well into her seventies; and

WHEREAS, Deeply committed to her community, Mrs. McDaniel won numerous awards for her contributions; she served on the boards of St. Edward's University, Seton Hospital, the Episcopal Seminary of the Southwest, and many other organizations; a valued member of St. James Episcopal Church, she served as a senior warden and edited the church newsletter; more than a mere fan of the UT women's basketball team, she generously shared her time and expertise with young athletes, offering special encouragement over the years to those interested in pursuing law degrees; and

WHEREAS, Myra McDaniel inspired innumerable people through her remarkable achievements and unyielding dedication to public service, and her positive influence will continue to resonate in the myriad lives she touched in the years to come; now, therefore, be it

RESOLVED, That the 82nd Legislature of the State of Texas hereby pay special tribute to the memory of Myra McDaniel and extend sincere condolences to the members of her family: to her husband, Reuben R. McDaniel, Jr.; to her children, Diane Rhodes and Reuben McDaniel III; to her seven grandchildren and two great-grandchildren; and to her many other relatives and friends; and, be it further

RESOLVED, That an official copy of this resolution be prepared for her family and that when the Texas House of Representatives and Senate adjourn this day, they do so in memory of Myra McDaniel.

ELLIS

TX_00003274

USA_00017887