PL043
9/2/2014
2:13-cv-00193

# HOUSE JOURNAL

## EIGHTY-SECOND LEGISLATURE, REGULAR SESSION

### PROCEEDINGS

SEVENTY-SEVENTH DAY — MONDAY, MAY 16, 2011

The house met at 11 a.m. and was called to order by the speaker.

The roll of the house was called and a quorum was announced present (Record 1104).

Present — Mr. Speaker; Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Absent, Excused — Huberty; Muñoz.

The invocation was offered by Craig Curry, pastor, First Baptist Church, Dripping Springs, as follows:

Dear Heavenly Father, I thank you for the opportunity you have given us to live in the United States of America and the great State of Texas. Thank you also for our leaders, for we are grateful for their service. I pray a special prayer for the leaders of the Texas House of Representatives, that you will guide each one in every way and that you will bless them and their families for their willingness to serve.

Help all of us to be mindful of others. Help us to recognize when someone is down, discouraged, or weak so that we might be able to reach out and help. Help us also to have the kind of love, compassion, and forgiveness that you have.

TX_00003095
USA_00017888

I also lift up to you this legislative session today. I pray for a spirit of unity throughout the dialogue of this session and as decisions are reached. May your presence be here in this place, leading, guiding, and directing every leader that is present. I lift up this prayer in your name. Amen.

The speaker recognized Representative Darby who led the house in the pledges of allegiance to the United States and Texas flags.

### LEAVES OF ABSENCE GRANTED

The following members were granted leaves of absence for today because of important business in the district:

Huberty on motion of Schwertner.

Muñoz on motion of Raymond.

### CAPITOL PHYSICIAN

The speaker recognized Representative Alonzo who presented Dr. Thomas Shima of Dallas as the "Doctor for the Day."

The house welcomed Dr. Shima and thanked him for his participation in the Physician of the Day Program sponsored by the Texas Academy of Family Physicians.

### BILLS AND RESOLUTIONS SIGNED BY THE SPEAKER

Notice was given at this time that the speaker had signed bills and resolutions in the presence of the house (see the addendum to the daily journal, Signed by the Speaker, House List No. 30).

### HR 2020 - NOTICE OF INTRODUCTION

Pursuant to the provisions of Rule 13, Section 9(f) of the House Rules, the speaker announced the introduction of **HR 2020**, suspending the limitations on the conferees for **SB 14**.

### HR 1368 - PREVIOUSLY ADOPTED
### (by Lucio)

The chair laid out and had read the following previously adopted resolution:

**HR 1368**, Congratulating Herbert A. Miller, Jr., of Austin on his receipt of a 2011 Texas Exes Teaching Award.

(Kleinschmidt in the chair)

### INTRODUCTION OF GUESTS

The chair recognized Representative Lucio who introduced Herbert A. Miller, Jr., and his wife, Joy.

### HR 1466 - ADOPTED
### (by Naishtat)

Representative Naishtat moved to suspend all necessary rules to take up and consider at this time **HR 1466**.

The motion prevailed.

TX_00003096
JA_003007

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 3 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 176 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 3979

The following resolution was laid before the house:

**HR 1466**, Honoring the Texas Teen Safe Driving Coalition, commemorating May as National Youth Traffic Safety Month, and recognizing May 16, 2011, as Texas Teen Safe Driving Day.

**HR 1466** was adopted.

### HCR 163 - ADOPTED
### (by Pickett)

Representative Pickett moved to suspend all necessary rules to take up and consider at this time **HCR 163**.

The motion prevailed.

The following resolution was laid before the house:

**HCR 163**, Convening a joint memorial session to honor Texans killed while serving in the Global War on Terrorism, commemorating Memorial Day 2011, and paying tribute to all those who have died in the service of the United States.

**HCR 163** was adopted.

On motion of Representative Pickett, the names of all the members of the house were added to **HCR 163** as signers thereof.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 11:40 a.m. today, in 3W.15, to set a calendar.

Permission to meet was granted.

### COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Calendars, 11:40 a.m. today, 3W.15, for a formal meeting, to set a calendar.

### HR 1729 - PREVIOUSLY ADOPTED
### (by Ritter)

The chair laid out and had read the following previously adopted resolution:

**HR 1729**, Commemorating the 125th anniversary of the Lumbermen's Association.

### HR 1986 - ADOPTED
### (by Mallory Caraway)

Representative Mallory Caraway moved to suspend all necessary rules to take up and consider at this time **HR 1986**.

The motion prevailed.

The following resolution was laid before the house:

TX_00003097
JA_003008

TX_00003097
USA_00017890

**HR 1986**, Congratulating Amber Pickens of Dallas on her acceptance to The Juilliard School.

**HR 1986** was adopted.

(Speaker in the chair)

### HR 1488 - PREVIOUSLY ADOPTED
### (by Nash)

The chair laid out and had read the following previously adopted resolution:

**HR 1488**, In memory of Lawrence Alvin Allen, Sr., of Houston.

On motion of Representative Thompson, the names of all the members of the house were added to **HR 1488** as signers thereof.

### INTRODUCTION OF GUESTS

The speaker recognized Representative Nash who introduced family members of Lawrence Alvin Allen, Sr., husband of Representative Allen.

(Frullo in the chair)

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Eissler requested permission for the Committee on Public Education to meet while the house is in session, at 2 p.m. today, in 3W.15, to consider pending business.

Permission to meet was granted.

### COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Public Education, 2 p.m. today, 3W.15, for a formal meeting, to consider pending business.

Public Health, during lunch recess today, 1W.14, for a formal meeting, to consider pending business.

Judiciary and Civil Jurisprudence, upon adjournment today, Desk 35, for a formal meeting, to consider pending business.

Economic and Small Business Development, 6 p.m. tomorrow, 200 Lee Barton Drive, Austin, for a work session.

### HR 1979 - ADOPTED
### (by Pickett)

Representative Pickett moved to suspend all necessary rules to take up and consider at this time **HR 1979**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1979**, Honoring James Perry of El Paso for his contributions to his community.

**HR 1979** was adopted.

TX_00003098
JA_003009

TX_00003098

USA_00017891

On motion of Representative Pickett, the names of all the members of the house were added to **HR 1979** as signers thereof.

### SCR 45 - PREVIOUSLY ADOPTED
### (Sheffield - House Sponsor)

The chair laid out and had read the following previously adopted resolution:

**SCR 45**, Recognizing Otto P. Scharth on the occasion of his 88th birthday.

On motion of Representative Pickett, the names of all the members of the house were added to **SCR 45** as signers thereof.

### INTRODUCTION OF GUESTS

The chair recognized Representative Sheffield who introduced Otto P. Scharth and members of his family.

### RECESS

At 12:03 p.m., the chair announced that the house would stand recessed until 1:15 p.m. today.

### AFTERNOON SESSION

The house met at 1:15 p.m. and was called to order by the speaker.

### LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence for the remainder of today to attend a funeral:

C. Anderson on motion of Kleinschmidt.

### HR 1605 - ADOPTED
### (by Huberty)

Representative S. Davis moved to suspend all necessary rules to take up and consider at this time **HR 1605**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1605**, Welcoming members of the Northeast Christian Academy community to the State Capitol on May 16, 2011.

**HR 1605** was adopted.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Cook requested permission for the Committee on State Affairs to meet while the house is in session, during bill referral today, in 1W.14, to consider **SB 669**, **SB 760**, **SB 1219**, **SB 1270**, **SB 1605**, **SB 1743**, **SB 1907**, **SJR 26**, and pending business.

Permission to meet was granted.

## FIVE-DAY POSTING RULE SUSPENDED

Representative Cook moved to suspend the five-day posting rule to allow the Committee on State Affairs to consider **SB 669**, **SB 760**, **SB 1219**, **SB 1270**, **SB 1605**, **SB 1743**, **SB 1907**, **SJR 26**, and pending business during bill referral today in 1W.14.

The motion prevailed.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

State Affairs, during bill referral today, 1W.14, for a formal meeting, to consider **SB 669**, **SB 760**, **SB 1219**, **SB 1270**, **SB 1605**, **SB 1743**, **SB 1907**, **SJR 26**, and pending business.

## POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

### SB 420 ON SECOND READING
### (V. Taylor - House Sponsor)

**SB 420**, A bill to be entitled An Act relating to determining eligibility for indigent health care.

**SB 420** was read second time on May 12 and was postponed until 7 a.m. May 13.

## SB 420 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE V. GONZALES: Mr. Taylor, when the bill was heard in committee, I remember there were a couple of versions of it. One of the versions that had caused concern that I questioned you about was whether or not if you have a county person, they provide indigent care, and somebody happens to show up there that has a sponsor, but they haven't revealed that they have a sponsor, and the person doesn't ask, and it falls through the cracks—they don't ask the person about sponsorship. Is the county going to be denied indigent care funds because one of their employees made a mistake? Is this the version of the bill that would have allowed for funds to be cut and not provided to the county?

REPRESENTATIVE V. TAYLOR: No, it is not, Madam Chairwoman.

V. GONZALES: So, this is the one—this is after the substitute, where we're not—I think your substitute was the one that was the most offensive, I guess, to us, and then you went back to your original one, correct?

V. TAYLOR: Correct. This is the version as filed, and was passed out of the senate on their local calendar with bipartisan support, that has nothing to do with funding for indigent care programs. It merely empowers indigent care programs for counties that have them to decide for themselves if they want to deem the income and assets for U.S. citizen sponsors for resident legal aliens for eligibility purposes.

TX_00003100

USA_00017893

V. GONZALES: Okay, and the other concern that had been raised was whether or not they are already authorized to do this, because federal law and the form that they sign says if you're a sponsor, you're agreeing to provide for the person you're sponsoring, for the immigrant you're sponsoring. And so, if federal law already has that in the contract between them—whether or not it's applicable to the counties—

V. TAYLOR: Right. There is a question, as you point out, and this law puts that question to rest. It says absolutely the counties have the right to do this. And I think you and I've—and I appreciate you. We've had long conversations, both in public and in private about this, and it is my belief, should the State of Texas choose, it can tell counties they cannot deem the income and assets for U.S. citizen sponsors for resident legal aliens. But this, I think, is more consistent with what the federal government intended in 1882, and with subsequent updating to their laws, that U.S. citizen sponsors are indeed responsible for the health care of the people they bring to this country. And I would submit that is not only a legal obligation, as clearly documented in the affidavit support, but also a moral obligation. If you're going to bring someone into this country, sponsor them, and be responsible for them, I think it is incumbent on that U.S. citizen to truly be responsible for them and let them try to go fend for themselves.

V. GONZALES: Well, and I'm not trying to say if you agreed in a document that you'd do so, that you shouldn't do so. My concern is that we, as Representative Walle was mentioning earlier, we don't want people that are truly indigent to not be able to get care that they need. I know there are some exceptions; I think, even under the contract, that you can't deny certain things to people, certain types of care. But we don't want people who are truly ill to not be able to receive the care that they need, because there's going to be a requirement that asks for documents as to whether or not they've been sponsored. Another point that I wanted to ask—another question that I wanted to ask is, only the person that signs the sponsor form, their assets would be looked at, right? Not the spouse?

V. TAYLOR: That's correct. And some resident legal aliens have multiple sponsors, and so then every sponsor could be deemed by the county. And again, if the county wants to—we're not telling the counties what to do, we are allowing them to do something that they can almost certainly do by federal law.

V. GONZALES: Okay, and again for intent purposes, there is no punishment aspect here, that a county is going to lose funding, is that correct?

V. TAYLOR: No, there is no reference to any funding in this bill.

### REMARKS ORDERED PRINTED

Representative V. Gonzales moved to print remarks between Representative V. Taylor and Representative V. Gonzales.

The motion prevailed.

TX_00003101
JA_003012

TX_00003101

USA_00017894

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 8 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 181 of
3976                    82nd LEGISLATURE — REGULAR SESSION

## LEAVES OF ABSENCE GRANTED

The following member was granted leave of absence for the remainder of today because of important business in the district:

Smithee on motion of Keffer.

The following member was granted leave of absence temporarily for today to attend a meeting of the Conference Committee on **HB 1**:

Zerwas on motion of Hamilton.

### SB 420 - (consideration continued)

**SB 420** was passed to third reading by (Record 1105): 100 Yeas, 37 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eiland; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Menendez; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Torres; Truitt; Villarreal; Weber; White; Woolley; Workman; Zedler.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Miles; Naishtat; Quintanilla; Reynolds; Rodriguez; Thompson; Turner; Veasey; Walle.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent, Excused, Committee Meeting — Zerwas.

Absent — Castro; Christian; Guillen; King, T.; Pickett; Raymond; Vo.

### STATEMENTS OF VOTE

I was shown voting no on Record No. 1105. I intended to vote yes.

Anchia

I was shown voting yes on Record No. 1105. I intended to vote no.

Menendez

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 9 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 182 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 3979

When Record No. 1105 was taken, I was in the house but away from my desk. I would have voted yes.

Raymond

### CSSB 652 ON SECOND READING
### (Bonnen - House Sponsor)

**CSSB 652**, A bill to be entitled An Act relating to governmental entities subject to the sunset review process.

**CSSB 652** was read second time on May 12 and was postponed until 7:30 a.m. May 13.

Representative Ritter moved to postpone consideration of **CSSB 652** until 9 a.m. tomorrow.

The motion prevailed.

### SB 1338 ON SECOND READING
### (Geren - House Sponsor)

**SB 1338**, A bill to be entitled An Act relating to the membership, powers, and duties of the State Preservation Board.

**SB 1338** was read second time on May 10 and was postponed until 8 a.m. May 13.

**Amendment No. 1**

Representative Geren offered the following amendment to **SB 1338**:

Amend **SB 1338** by striking page 2, line 26, through page 3, line 15.

Amendment No. 1 was adopted.

**SB 1338**, as amended, was passed to third reading.

### SB 5 ON SECOND READING
### (Branch - House Sponsor)

**SB 5**, A bill to be entitled An Act relating to the administration and business affairs of public institutions of higher education.

**SB 5** was read second time on May 12 and was postponed until 10 a.m. May 13.

Representative Branch moved to postpone consideration of **SB 5** until 9 a.m. tomorrow.

The motion prevailed.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 1:50 p.m. today, in 3W.9, to set a calendar.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Calendars, 1:50 p.m. today, 3W.9, for a formal meeting, to set a calendar.

### BILLS AND RESOLUTIONS SIGNED BY THE SPEAKER

Notice was given at this time that the speaker had signed bills and resolutions in the presence of the house (see the addendum to the daily journal, Signed by the Speaker, Senate List No. 27).

### GENERAL STATE CALENDAR
### SENATE BILLS
### SECOND READING

The following bills were laid before the house and read second time:

### SB 118 ON SECOND READING
### (Menendez and Naishtat - House Sponsors)

**SB 118**, A bill to be entitled An Act relating to a court's authority to order a proposed patient to receive extended outpatient mental health services.

**SB 118** was passed to third reading.

### SB 156 ON SECOND READING
### (V. Gonzales - House Sponsor)

**SB 156**, A bill to be entitled An Act relating to health care data collected by the Department of State Health Services and access to certain confidential patient information within the department.

**Amendment No. 1**

Representative D. Howard offered the following amendment to **SB 156**:

Amend **SB 156** (house committee report) as follows:

(1) In the recital to SECTION 4 of the bill, amending Section 108.013, Health and Safety Code (page 2, line 11), between "Subsections" and "(k)", insert "(a-1),".

(2) In SECTION 4 of the bill, immediately following amended Section 108.013(a), Health and Safety Code (page 2, between lines 18 and 19), insert the following:

(a-1) The department to the extent practicable as determined by the department may coordinate the reporting of data under this chapter and the reporting of data under Subchapter A, Chapter 161, to increase the efficiency of the department and reduce the department's costs in collecting and maintaining data. Any disclosure or release of data regarding the immunization registry established under Subchapter A, Chapter 161, must conform to the requirements of that subchapter.

TX_00003104
JA_003015

(3) In SECTION 4 of the bill, in added Section 108.013(k), Health and Safety Code (page 4, line 13), following the period, add "The department may disclose to any program within the department nonidentifying summary statistics related to the immunization registry established under Subchapter A, Chapter 161, that do not individually identify an individual."

(4) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Sections 161.007(a), (a-2), (b), (b-1), (c), and (d), Health and Safety Code, are amended to read as follows:

(a) The department, for the primary purpose of establishing and maintaining a single repository of accurate, complete, and current immunization records to be used in aiding, coordinating, and promoting efficient and cost-effective communicable disease prevention and control efforts, shall establish and maintain an immunization registry. The executive commissioner of the Health and Human Services Commission by rule shall develop guidelines to:

(1) protect the confidentiality of patients in accordance with Section 159.002, Occupations Code;

(2) inform the individual or the individual's legally authorized representative about the registry and that registry information may be released under Section 161.00735; and

(3) [require the written or electronic consent of the individual or the individual's legally authorized representative before any information relating to the individual is included in the registry;

[(4)] permit the individual or the individual's legally authorized representative to request that the individual's information be removed from [withdraw consent for the individual to be included in] the registry[; and

[(5) determine the process by which consent is verified, including affirmation by a health care provider, birth registrar, regional health information exchange, or local immunization registry that consent has been obtained].

(a-2) An individual's legally authorized representative or the individual, after the individual has attained 18 years of age, may submit a request [consent] in writing or electronically for the individual's information to be removed from [remain in] the registry [after the individual's 18th birthday and for the individual's subsequent immunizations to be included in the registry. The written or electronic consent of the minor's legally authorized representative as described by Section 161.0001(1-e)(A) must be submitted to the department before the individual's 18th birthday. The written or electronic consent of the individual or the individual's legally authorized representative as described by Section 161.0001(1-e)(B) or (C) must be submitted to the department not later than the individual's 19th birthday. The consent of the representative or individual is valid until the individual or the individual's legally authorized representative withdraws consent in writing or electronically. The department may not include in the registry the immunization information of an individual who is 18 years of age or older until written or electronic consent has been obtained as provided by

TX_00003105

USA_00017898

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 12 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-2 Filed 06/20/12 Page 185 of
3980    82nd LEGISLATURE — REGULAR SESSION

this subsection]. The department shall coordinate with the Texas Education Agency to distribute materials described in Section 161.0095(a)(2) to students and parents through local school districts.

(b) Except as provided by Section 161.0071, the immunization registry must contain information on the immunization history that is obtained by the department under:

(1) this section of each individual for whom immunization information [consent] has been obtained, unless the individual or the individual's legally authorized representative has requested that the individual's information be removed from the registry in accordance with guidelines adopted under Subsection (a) [or (a-3), as applicable];

(2) Section 161.00705 of persons immunized to prepare for or in response to a declared disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency;

(3) Section 161.00706 of first responders or their immediate family members; and

(4) Section 161.00735 of persons evacuated or relocated to this state because of a disaster.

(b-1) The department shall remove from the registry information for any individual for whom [consent has been withdrawn. The department may not retain individually identifiable information about any individual:

[(1) for whom consent has been withdrawn;

[(2) for whom a consent for continued inclusion in the registry following the end of the declared disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency has not been received under Section 161.00705(f);

[(3) for whom a request to be removed from the registry has been received under Section 161.00706(e);

[(4) for whom consent for continued inclusion in the registry following the end of a disaster has not been received under Section 161.00735(f); or

[(5) for whom] a request to remove information from the registry has been received under this subchapter [Section 161.00735(g)].

(c) A payor that receives data elements from a health care provider who administers an immunization to an individual younger than 18 years of age shall provide the data elements to the department. A payor is required to provide the department with only the data elements the payor receives from a health care provider. A payor that receives data elements from a health care provider who administers an immunization to an individual 18 years of age or older may provide the data elements to the department. The data elements shall be submitted in a format prescribed by the department. [The department shall verify consent before including the reported information in the immunization registry. The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

(d) A health care provider who administers an immunization to an individual younger than 18 years of age shall provide data elements regarding an immunization to the department. A health care provider who administers an

TX_00003106
USA_00017899

Case 2:13-cv-00193   Document 661-12   Filed on 11/11/14 in TXSD   Page 13 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-2   Filed 06/20/12   Page 186 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          3981

immunization to an individual 18 years of age or older may submit data elements regarding an immunization to the department. The data elements shall be submitted in a format prescribed by the department. [~~The department shall verify consent before including the information in the immunization registry. The department may not retain individually identifiable information about an individual for whom consent cannot be verified.~~]

SECTION ____. Sections 161.00705(e) and (f), Health and Safety Code, are amended to read as follows:

(e) The executive commissioner of the Health and Human Services Commission by rule shall determine the period during which the information collected under this section must remain in the immunization registry following the end of the disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency. <u>Requests for removal of information from the registry under Subsection (f) may be made only at the expiration of the retention period established by department rule under this subsection.</u>

(f) Unless an individual or the individual's legally authorized representative [~~consents~~] in writing or electronically <u>requests that</u> [~~to continued inclusion of~~] the individual's information <u>be removed from</u> [~~in~~] the registry, the department shall <u>maintain</u> [~~remove~~] the immunization records collected under this section <u>in</u> [~~from~~] the registry on expiration of the period prescribed under Subsection (e).

SECTION ____. Sections 161.0071(a) and (b), Health and Safety Code, are amended to read as follows:

(a) The first time the department receives registry data for an individual [~~for whom the department has received consent~~] to be included in the registry, the department shall send notice to the individual or the individual's legally authorized representative disclosing:

(1) that providers and payors may be sending the individual's immunization information to the department;

(2) the information that is included in the registry;

(3) the persons to whom the information may be released under Sections 161.00735(b) and 161.008(d);

(4) the purpose and use of the registry;

(5) the procedure to exclude an individual from the registry; and

(6) the procedure to report a violation if an individual's information is included in the registry after exclusion has been requested [~~or consent has been withdrawn~~].

(b) The [~~On discovering that consent to be included in the registry has not been granted or has been withdrawn, the~~] department shall exclude [~~the individual's immunization records~~] from the registry<u>,</u> and any other registry-related department record that individually identifies the individual, <u>the immunization record of any individual from whom a request for exclusion has been received by the department.</u>

SECTION ____. Sections 161.00735(c) and (e), Health and Safety Code, are amended to read as follows:

TX_00003107

USA_00017900

(c) The department may receive immunization information from a health authority of another state or from a local health authority in another state if the department determines that residents of that state have evacuated or relocated to this state in response to a disaster. The department shall include information received under this subsection in the registry. [~~Notwithstanding Section 161.007, the department is not required to obtain written consent for the inclusion in the registry of information received under this subsection.~~]

(e) The executive commissioner of the Health and Human Services Commission, by rule, shall determine the period during which the information collected under Subsection (c) must remain in the immunization registry following the end of the disaster. The period must be the same as the period established under Section 161.00705(e). Requests for removal of information from the registry under Subsection (g) may be made only at the expiration of the retention period established by department rule under this subsection.

SECTION ____. Section 161.008(c), Health and Safety Code, is amended to read as follows:

(c) The department may obtain the data constituting an immunization record for an individual from a public health district, a local health department, the individual or the individual's legally authorized representative, a physician to the individual, a payor, or any health care provider licensed or otherwise authorized to administer vaccines. [~~The department shall verify consent before including the reported information in the immunization registry. The department may not retain individually identifiable information about an individual for whom consent cannot be verified.~~]

SECTION ____. Section 161.0095(a), Health and Safety Code, is amended to read as follows:

(a) The department shall develop:

(1) continuing education programs for health care providers relating to immunizations and the vaccines for children program operated by the department under authority of 42 U.S.C. Section 1396s; and

(2) educational information, for health care providers, health care clinics, hospitals, and any other health care facility that provides health care to children 14 to 18 years of age, relating to the immunization registry and the option for an individual or the individual's legally authorized representative to request removal [~~who is 18 years of age or older to consent to submission and retention~~] of the individual's information from [~~in~~] the immunization registry.

SECTION ____. Section 161.0107(c), Health and Safety Code, is amended to read as follows:

(c) The executive commissioner of the Health and Human Services Commission by rule shall specify:

(1) the fields necessary to populate the immunization registry[~~, including a field that indicates the patient's consent to be listed in the immunization registry has been obtained~~]; and

(2) the data standards that must be used for electronic submission of immunization information.

TX_00003108
JA_003019

TX_00003108

USA_00017901

SECTION ____. The following provisions of the Health and Safety Code are repealed:

(1) Sections 161.007(a-1), (a-3), and (e); and

(2) Section 161.00735(f).

SECTION ____. The changes in law made by this Act to Chapter 161, Health and Safety Code, apply only to immunization information received by the Department of State Health Services on or after the effective date of this Act. The information received by the department before the effective date of this Act is covered by the law in effect immediately before that date, and that law is continued in effect for that purpose.

(Zerwas now present)

**Amendment No. 1 - Point of Order**

Representative Simpson raised a point of order against further consideration of Amendment No. 1 under Rule 11, Section 2 and Rule 8, Section 4 of the House Rules on the grounds that the amendment is not germane to the bill and the amendment would change general law.

The point of order was withdrawn.

Amendment No. 1 was withdrawn.

**Amendment No. 2**

Representative S. King offered the following amendment to **SB 156**:

Amend **SB 156** (house committee printing) as follows:

(1) Strike page 1, lines 23 and 24 and substitute the following:

SECTION 3. Section 108.009, Health and Safety Code, is amended by amending Subsections (a), (c), and (h) and adding Subsections (a-1) and (d-1) to read as follows:

(a) The council may collect, and, except as provided by Subsections (c), [and] (d), and (d-1), providers shall submit to the council or another entity as determined by the council, all data required by this section. The data shall be collected according to uniform submission formats, coding systems, and other technical specifications necessary to make the incoming data substantially valid, consistent, compatible, and manageable using electronic data processing, if available.

(a-1) An ambulatory surgical center licensed under Chapter 243 is not required to submit data under this section.

(c) A rural provider or a hospital may, but is not required to, provide the data required by this chapter[. A hospital may, but is not required to, provide the data required by this chapter if the hospital:

[(1) is exempt from state franchise, sales, ad valorem, or other state or local taxes; and

[(2) does not seek or receive reimbursement for providing health care services to patients from any source, including:

[(A) the patient or any person legally obligated to support the patient;

TX_00003109
JA_003020

TX_00003109

USA_00017902

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 16 of 48
se 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 4 of 2
5984          82nd LEGISLATURE — REGULAR SESSION

[(B) a third-party payor; or

[(C) Medicaid, Medicare, or any other federal, state, or local program for indigent health care].

(d-1) A provider may elect not to participate in the data collection program under Subsection (a). The executive commissioner of the Health and Human Services Commission by rule shall establish procedures for making the election authorized by this subsection.

(2) Adding the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION _____. Chapter 108, Health and Safety Code, is amended by adding Section 108.0131 to read as follows:

Sec. 108.0131. NOTICE REQUIRED. (a) A provider who submits data under Section 108.009 shall provide notice to the provider's patients that:

(1) the provider submits data as required by this chapter; and

(2) the data may be sold or distributed to third parties.

(b) The department shall post on the department's Internet website a list of each entity that purchases or receives data collected under this chapter.

SECTION _____. Not later than December 31, 2011, the executive commissioner of the Health and Human Services Commission shall adopt rules as required by Section 108.009(d-1), Health and Safety Code, as added by this Act, establishing procedures to allow health care providers to make the election authorized by that subsection.

Amendment No. 2 was adopted by (Record 1106): 139 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Castro; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Burnam; Christian; Coleman; Hartnett; McClendon; Naishtat.

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 17 of 48
se 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 5 of 2
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 3983

### STATEMENT OF VOTE

When Record No. 1106 was taken, I was in the house but away from my desk. I would have voted yes.

McClendon

### FIVE-DAY POSTING RULE SUSPENDED

Representative Sheffield moved to suspend the five-day posting rule to allow the Committee on Defense and Veterans' Affairs to consider **SB 1493** and **SB 1737** at 9 a.m. tomorrow in E2.016.

The motion prevailed.

### COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Defense and Veterans' Affairs, 9 a.m. tomorrow, E2.016, for a public hearing, to consider **SB 1493** and **SB 1737**.

### SB 156 - (consideration continued)

**Amendment No. 3**

Representative D. Howard offered the following amendment to **SB 156**:

Amend **SB 156** (house committee report) as follows:

(1) In the recital to SECTION 4 of the bill, amending Section 108.013, Health and Safety Code (page 2, line 11), between "Subsections" and "(k)", insert "(a-1),".

(2) In SECTION 4 of the bill, immediately following amended Section 108.013(a), Health and Safety Code (page 2, between lines 18 and 19), insert the following:

(a-1) The department to the extent practicable as determined by the department may coordinate the reporting of data under this chapter and the reporting of data under Subchapter A, Chapter 161, to increase the efficiency of the department and reduce the department's costs in collecting and maintaining data. Any disclosure or release of data regarding the immunization registry established under Subchapter A, Chapter 161, must conform to the requirements of that subchapter.

(3) In SECTION 4 of the bill, in added Section 108.013(k), Health and Safety Code (page 4, line 13), following the period, add "The department may disclose to any program within the department nonidentifying summary statistics related to the immunization registry established under Subchapter A, Chapter 161, that do not individually identify an individual."

(4) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Sections 161.007(a), (a-2), (b), (b-1), (c), and (d), Health and Safety Code, are amended to read as follows:

(a) The department, for the primary purpose of establishing and maintaining a single repository of accurate, complete, and current immunization records to be used in aiding, coordinating, and promoting efficient and cost-effective

TX_00003111
JA_003022

TX_00003111

USA_00017904

Case 2:13-cv-00193  Document 661-12  Filed on 11/11/14 in TXSD  Page 18 of 48
se 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 6 of 2
5986        82nd LEGISLATURE — REGULAR SESSION

communicable disease prevention and control efforts, shall establish and maintain an immunization registry. The executive commissioner of the Health and Human Services Commission by rule shall develop guidelines to:

(1) protect the confidentiality of patients in accordance with Section 159.002, Occupations Code;

(2) inform the individual or the individual's legally authorized representative about the registry and that registry information may be released under Section 161.00735; and

(3) [require the written or electronic consent of the individual or the individual's legally authorized representative before any information relating to the individual is included in the registry;

[(4)] permit the individual or the individual's legally authorized representative to request that the individual's information be removed from [withdraw consent for the individual to be included in] the registry[; and

[(5) determine the process by which consent is verified, including affirmation by a health care provider, birth registrar, regional health information exchange, or local immunization registry that consent has been obtained].

(a-2) An individual's legally authorized representative or the individual, after the individual has attained 18 years of age, may submit a request [consent] in writing or electronically for the individual's information to be removed from [remain in] the registry [after the individual's 18th birthday and for the individual's subsequent immunizations to be included in the registry. The written or electronic consent of the minor's legally authorized representative as described by Section 161.0001(1-e)(A) must be submitted to the department before the individual's 18th birthday. The written or electronic consent of the individual or the individual's legally authorized representative as described by Section 161.0001(1-e)(B) or (C) must be submitted to the department not later than the individual's 19th birthday. The consent of the representative or individual is valid until the individual or the individual's legally authorized representative withdraws consent in writing or electronically. The department may not include in the registry the immunization information of an individual who is 18 years of age or older until written or electronic consent has been obtained as provided by this subsection]. The department shall coordinate with the Texas Education Agency to distribute materials described in Section 161.0095(a)(2) to students and parents through local school districts.

(b) Except as provided by Section 161.0071, the immunization registry must contain information on the immunization history that is obtained by the department under:

(1) this section of each individual for whom immunization information [consent] has been obtained, unless the individual or the individual's legally authorized representative has requested that the individual's information be removed from the registry in accordance with guidelines adopted under Subsection (a) [or (a-3), as applicable];

(2) Section 161.00705 of persons immunized to prepare for or in response to a declared disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency;

TX_00003112
JA_003023

TX_00003112
USA_00017905

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 19 of 48
se 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 7 of 2
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 3987

(3) Section 161.00706 of first responders or their immediate family members; and

(4) Section 161.00735 of persons evacuated or relocated to this state because of a disaster.

(b-1) The department shall remove from the registry information for any individual for whom [consent has been withdrawn.  The department may not retain individually identifiable information about any individual:

[(1) for whom consent has been withdrawn;

[(2) for whom a consent for continued inclusion in the registry following the end of the declared disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency has not been received under Section 161.00705(f);

[(3) for whom a request to be removed from the registry has been received under Section 161.00706(e);

[(4) for whom consent for continued inclusion in the registry following the end of a disaster has not been received under Section 161.00735(f); or

[(5) for whom] a request to remove information from the registry has been received under this subchapter [Section 161.00735(g)].

(c) A payor that receives data elements from a health care provider who administers an immunization to an individual younger than 18 years of age shall provide the data elements to the department.  A payor is required to provide the department with only the data elements the payor receives from a health care provider.  A payor that receives data elements from a health care provider who administers an immunization to an individual 18 years of age or older may provide the data elements to the department.  The data elements shall be submitted in a format prescribed by the department.  [The department shall verify consent before including the reported information in the immunization registry.  The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

(d) A health care provider who administers an immunization to an individual younger than 18 years of age shall provide data elements regarding an immunization to the department.  A health care provider who administers an immunization to an individual 18 years of age or older may submit data elements regarding an immunization to the department.  The data elements shall be submitted in a format prescribed by the department.  [The department shall verify consent before including the information in the immunization registry.  The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

SECTION ____.  Sections 161.00705(e) and (f), Health and Safety Code, are amended to read as follows:

(e) The executive commissioner of the Health and Human Services Commission by rule shall determine the period during which the information collected under this section must remain in the immunization registry following the end of the disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency.  Requests

TX_00003113
USA_00017906

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 20 of 48
se 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 8 of 2
5988    82nd LEGISLATURE — REGULAR SESSION

for removal of information from the registry under Subsection (f) may be made only at the expiration of the retention period established by department rule under this subsection.

(f)  Unless an individual or the individual's legally authorized representative [consents] in writing or electronically requests that [to continued inclusion of] the individual's information be removed from [in] the registry, the department shall maintain [remove] the immunization records collected under this section in [from] the registry on expiration of the period prescribed under Subsection (e).

SECTION ____.  Sections 161.0071(a) and (b), Health and Safety Code, are amended to read as follows:

(a)  The first time the department receives registry data for an individual [for whom the department has received consent] to be included in the registry, the department shall send notice to the individual or the individual's legally authorized representative disclosing:

(1)  that providers and payors may be sending the individual's immunization information to the department;

(2)  the information that is included in the registry;

(3)  the persons to whom the information may be released under Sections 161.00735(b) and 161.008(d);

(4)  the purpose and use of the registry;

(5)  the procedure to exclude an individual from the registry; and

(6)  the procedure to report a violation if an individual's information is included in the registry after exclusion has been requested [or consent has been withdrawn].

(b)  The [On discovering that consent to be included in the registry has not been granted or has been withdrawn, the] department shall exclude [the individual's immunization records] from the registry, and any other registry-related department record that individually identifies the individual, the immunization record of any individual from whom a request for exclusion has been received by the department.

SECTION ____.  Sections 161.00735(c) and (e), Health and Safety Code, are amended to read as follows:

(c)  The department may receive immunization information from a health authority of another state or from a local health authority in another state if the department determines that residents of that state have evacuated or relocated to this state in response to a disaster.  The department shall include information received under this subsection in the registry.  [Notwithstanding Section 161.007, the department is not required to obtain written consent for the inclusion in the registry of information received under this subsection.]

(e)  The executive commissioner of the Health and Human Services Commission, by rule, shall determine the period during which the information collected under Subsection (c) must remain in the immunization registry following the end of the disaster.  The period must be the same as the period established under Section 161.00705(e). Requests for removal of information from the registry under Subsection (g) may be made only at the expiration of the retention period established by department rule under this subsection.

TX_00003114
USA_00017907

Case 2:13-cv-00193  Document 661-12  Filed on 11/11/14 in TXSD  Page 21 of 48
se 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 9 of 2
Monday, May 16, 2011  HOUSE JOURNAL — 77th Day  3989

SECTION ____. Section 161.008(c), Health and Safety Code, is amended to read as follows:

(c) The department may obtain the data constituting an immunization record for an individual from a public health district, a local health department, the individual or the individual's legally authorized representative, a physician to the individual, a payor, or any health care provider licensed or otherwise authorized to administer vaccines. [The department shall verify consent before including the reported information in the immunization registry. The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

SECTION ____. Section 161.0095(a), Health and Safety Code, is amended to read as follows:

(a) The department shall develop:

(1) continuing education programs for health care providers relating to immunizations and the vaccines for children program operated by the department under authority of 42 U.S.C. Section 1396s; and

(2) educational information, for health care providers, health care clinics, hospitals, and any other health care facility that provides health care to children 14 to 18 years of age, relating to the immunization registry and the option for an individual or the individual's legally authorized representative to request removal [who is 18 years of age or older to consent to submission and retention] of the individual's information from [in] the immunization registry.

SECTION ____. Section 161.0107(c), Health and Safety Code, is amended to read as follows:

(c) The executive commissioner of the Health and Human Services Commission by rule shall specify:

(1) the fields necessary to populate the immunization registry[, including a field that indicates the patient's consent to be listed in the immunization registry has been obtained]; and

(2) the data standards that must be used for electronic submission of immunization information.

SECTION ____. The following provisions of the Health and Safety Code are repealed:

(1) Sections 161.007(a-1), (a-3), and (e); and

(2) Section 161.00735(f).

SECTION ____. The changes in law made by this Act to Chapter 161, Health and Safety Code, apply only to immunization information received by the Department of State Health Services on or after the effective date of this Act. The information received by the department before the effective date of this Act is covered by the law in effect immediately before that date, and that law is continued in effect for that purpose.

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 1).

## SB 156 - (consideration continued)

Amendment No. 3 failed of adoption by (Record 1107): 56 Yeas, 86 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Aycock; Burnam; Castro; Coleman; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Hopson; Howard, D.; Johnson; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Naishtat; Nash; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Scott; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle; Zerwas.

Nays — Aliseda; Anderson, R.; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Cook; Craddick; Creighton; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Howard, C.; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Murphy; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Sheets; Sheffield; Simpson; Smith, T.; Smith, W.; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Morrison; Shelton.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 1107. I intended to vote no.

Crownover

When Record No. 1107 was taken, I was in the house but away from my desk. I would have voted no.

Morrison

(Guillen in the chair)

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Deshotel requested permission for the Committee on Culture, Recreation, and Tourism to meet while the house is in session, at 3 p.m. today, in 1W.14, to consider **SB 252** and **SB 1841**.

Permission to meet was granted.

TX_00003116

USA_00017909

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 23 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 11 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 3991

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Culture, Recreation, and Tourism, 3 p.m. today, 1W.14, for a formal meeting, to consider **SB 252** and **SB 1841**.

### SB 156 - (consideration continued)

**SB 156**, as amended, was passed to third reading.

### SB 1811 - COMMITTEE ON CALENDARS RULE ADOPTED

Representative Hunter moved to suspend all necessary rules and, pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, moved to adopt the following rule governing floor consideration for **SB 1811**:

Each original amendment to **SB 1811** that will be offered during second reading consideration must be filed with the chief clerk not later than 2 p.m. on Tuesday, May 17.

(Speaker in the chair)

The motion to suspend all necessary rules prevailed and the Committee on Calendars rule was adopted by (Record 1108): 142 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Coleman; Rodriguez.

TX_00003117
JA_003028

TX_00003117

USA_00017910

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 24 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 12 of
3992          82nd LEGISLATURE — REGULAR SESSION

### SB 1581 - COMMITTEE ON CALENDARS RULE ADOPTED

Representative Hunter moved to suspend all necessary rules and, pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, moved to adopt the following rule governing floor consideration for **SB 1581**:

Each original amendment to **SB 1581** that will be offered during second reading consideration must be filed with the chief clerk not later than 2 p.m. on Tuesday, May 17.

The motion to suspend all necessary rules prevailed and the Committee on Calendars rule was adopted by (Record 1109): 142 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Coleman; Hancock.

### SB 23 - COMMITTEE ON CALENDARS RULE ADOPTED

Representative Hunter moved to suspend all necessary rules and, pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, moved to adopt the following rule governing floor consideration for **SB 23**:

Each original amendment to **SB 23** that will be offered during second reading consideration must be filed with the chief clerk not later than 2 p.m. on Tuesday, May 17.

The motion to suspend all necessary rules prevailed and the Committee on Calendars rule was adopted by (Record 1110): 143 Yeas, 0 Nays, 1 Present, not voting.

Case 2:13-cv-00193  Document 661-12  Filed on 11/11/14 in TXSD  Page 25 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 13 of
Monday, May 16, 2011        HOUSE JOURNAL — 77th Day        3993

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Coleman; Johnson.

### GENERAL STATE CALENDAR
#### (consideration continued)

### SB 322 ON SECOND READING
#### (Deshotel - House Sponsor)

**SB 322**, A bill to be entitled An Act relating to the requirements for reinsurance contracts covering title insurance policies issued in this state.

#### Amendment No. 1

Representative Deshotel offered the following amendment to **SB 322**:

Amend **SB 322** by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____. Subchapter A, Chapter 2502, Insurance Code, is amended by adding Section 2502.006 to read as follows:

Sec. 2502.006. CERTAIN EXTRA HAZARDOUS COVERAGES PROHIBITED. (a) A title insurance company may not insure against loss or damage sustained by reason of any claim that under federal bankruptcy, state insolvency, or similar creditor's rights laws the transaction vesting title in the insured as shown in the policy or creating the lien of the insured mortgage is:

(1) a preference or preferential transfer under 11 U.S.C. Section 547;

(2) a fraudulent transfer under 11 U.S.C. Section 548;

(3) a transfer that is fraudulent as to present and future creditors under Section 24.005, Business & Commerce Code, or a similar law of another state; or

TX_00003119

USA_00017912

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 26 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 14 of
3994          82nd LEGISLATURE — REGULAR SESSION

(4) a transfer that is fraudulent as to present creditors under Section 24.006, Business & Commerce Code, or a similar law of another state.

(b) The commissioner may by rule designate coverages that violate this section. It is not a defense against a claim that a title insurance company has violated this section that the commissioner has not adopted a rule under this subsection.

(c) Title insurance issued in or on a form prescribed by the commissioner shall be considered to comply with this section.

(d) Nothing in this section prohibits title insurance with respect to liens, encumbrances, or other defects to title to land that:

(1) appear in the public records before the date on which the contract of title insurance is made;

(2) occur or result from transactions before the transaction vesting title in the insured or creating the lien of the insured mortgage; or

(3) result from failure to timely perfect or record any instrument before the date on which the contract of title insurance is made.

(e) A title insurance company may not engage in the business of title insurance in this state if the title insurance company provides insurance of the type prohibited by Subsection (a) anywhere in the United States, except to the extent that the laws of another state require the title insurance company to provide that type of insurance.

SECTION ____. Section 2502.006, Insurance Code, as added by this Act, applies only to an insurance policy that is delivered, issued for delivery, or renewed on or after January 1, 2012. A policy delivered, issued for delivery, or renewed before January 1, 2012, is governed by the law as it existed immediately before the effective date of this Act, and that law is continued in effect for that purpose.

Amendment No. 1 was adopted.

**SB 322**, as amended, was passed to third reading.

**SB 328 ON SECOND READING**
**(Deshotel - House Sponsor)**

**SB 328**, A bill to be entitled An Act relating to notice of a hospital lien.

**SB 328** was passed to third reading.

**HB 1112 - HOUSE REFUSES TO CONCUR**
**IN SENATE AMENDMENTS**
**CONFERENCE COMMITTEE APPOINTED**

Representative Phillips called up with senate amendments for consideration at this time,

**HB 1112**, A bill to be entitled An Act relating to the authority and powers of regional mobility authorities.

Representative Phillips moved that the house not concur in the senate amendments and that a conference committee be requested to adjust the differences between the two houses on **HB 1112**.

TX_00003120
JA_003031

TX_00003120

USA_00017913

The motion prevailed.

The chair announced the appointment of the following conference committee, on the part of the house, on **HB 1112**: Phillips, chair; Fletcher, Harper-Brown, Lavender, and Pickett.

### HB 1956 - HOUSE DISCHARGES CONFEREES
### HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Thompson called up with senate amendments for consideration at this time,

**HB 1956**, A bill to be entitled An Act relating to appeal of an order of the Texas Alcoholic Beverage Commission or the commission's administrator refusing, canceling, or suspending a license or permit.

Representative Thompson moved to discharge the conferees and concur in the senate amendments to **HB 1956**.

The motion to discharge the conferees and concur in the senate amendments to **HB 1956** prevailed by (Record 1111): 142 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Coleman; Smith, T.

### Senate Amendment No. 1 (Senate Floor Amendment No. 1)

Amend **HB 1956** (senate committee printing) as follows:

(1) In Section 1 of the bill, in amended Section 11.67(b)(2), Alcoholic Beverage Code (page 1, line 21), strike "60" and substitute "20".

(2) In Section 2 of the bill, in amended Section 32.18(2), Alcoholic Beverage Code (page 1, line 42), strike "<u>60</u>" and substitute "<u>20</u>".

## SB 313 - REQUEST OF SENATE GRANTED
## CONFERENCE COMMITTEE APPOINTED

On motion of Representative Price, the house granted the request of the senate for the appointment of a Conference Committee on **SB 313**.

The chair announced the appointment of the following conference committee, on the part of the house, on **SB 313**: Price, chair; Ritter, D. Miller, Lucio, and Beck.

## SB 28 - REQUEST OF SENATE GRANTED
## CONFERENCE COMMITTEE APPOINTED

On motion of Representative Branch, the house granted the request of the senate for the appointment of a Conference Committee on **SB 28**.

The chair announced the appointment of the following conference committee, on the part of the house, on **SB 28**: Branch, chair; Hunter, Villarreal, D. Howard, and Patrick.

## SB 1420 - REQUEST OF SENATE GRANTED
## CONFERENCE COMMITTEE APPOINTED

On motion of Representative Harper-Brown, the house granted the request of the senate for the appointment of a Conference Committee on **SB 1420**.

The chair announced the appointment of the following conference committee, on the part of the house, on **SB 1420**: Harper-Brown, chair; Phillips, Pickett, Bonnen, and McClendon.

## HB 699 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Deshotel called up with senate amendments for consideration at this time,

**HB 699**, A bill to be entitled An Act relating to the Port Authority Advisory Committee and funding of port security, transportation, and facility projects and port studies.

Representative Deshotel moved to concur in the senate amendments to **HB 699**.

The motion to concur in the senate amendments to **HB 699** prevailed by (Record 1112): 143 Yeas, 1 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett;

TX_00003122

USA_00017915

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 29 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 17 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 3997

Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Alonzo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Eiland.

### Senate Committee Substitute

**CSHB 699**, A bill to be entitled An Act relating to the funding of port security, facility projects, and port studies.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 55.001(5), Transportation Code, is amended to read as follows:

(5) "Port security, transportation, or facility project" means a project that is necessary or convenient for the proper operation of a maritime port and that will improve the security, movement, and intermodal transportation of cargo or passengers in commerce and trade.

SECTION 2. Sections 55.002(a), (b), and (c), Transportation Code, are amended to read as follows:

(a) From money in the fund, the department shall fund:

(1) port security, transportation, or facility projects; and

(2) maritime port studies.

(b) The commission by rule may establish matching fund requirements for receiving money from the fund [department may not fund a port security, transportation, or facility project unless an amount at least equal to the amount provided by the department is invested in the project by a port authority or navigation district].

(c) Port security, transportation, or facility projects eligible for funding under this chapter include:

(1) construction or improvement of transportation facilities within the jurisdiction of a maritime port;

(2) the dredging or deepening of channels, turning basins, or harbors;

(3) the construction or improvement of wharves, docks, structures, jetties, piers, storage facilities, cruise terminals, or any facilities necessary or useful in connection with maritime port transportation or economic development;

TX_00003123
USA_00017916

Case 2:13-cv-00193   Document 661-12   Filed on 11/11/14 in TXSD   Page 30 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-3   Filed 06/20/12   Page 18 of
3998         82nd LEGISLATURE — REGULAR SESSION

(4)  the construction or improvement of facilities necessary or useful in providing maritime port security;

(5)  the acquisition of container cranes or other mechanized equipment used in the movement of cargo or passengers in international commerce;

(6)  the acquisition of land to be used for maritime port purposes;

(7)  the acquisition, improvement, enlargement, or extension of existing maritime port facilities; and

(8)  environmental protection projects that:

(A)  are required as a condition of a state, federal, or local environmental permit or other form of approval;

(B)  are necessary for the acquisition of spoil disposal sites and improvements to existing and future spoil sites; or

(C)  result from the undertaking of eligible projects.

SECTION 3.  Section 55.005(c), Transportation Code, is amended to read as follows:

(c)  Money in the fund may be appropriated only to the department to perform the department's powers and duties concerning maritime port transportation and economic development under this chapter and to pay the department's expenses incurred under this chapter.

SECTION 4.  Section 55.006(a), Transportation Code, is amended to read as follows:

(a)  The committee consists of seven members appointed by the commission. The members shall be appointed as follows:

(1)  one member from the Port of Houston Authority;

(2)  three members who represent maritime ports on the upper Texas coast; and

(3)  three members who represent maritime ports on the lower Texas coast.

SECTION 5.  Section 55.007, Transportation Code, is amended to read as follows:

Sec. 55.007.  DUTIES OF COMMITTEE. (a)  The committee shall:

(1)  prepare a maritime port mission plan;

(2)  review each project eligible to be funded under this chapter and make recommendations for approval or disapproval to the department;

(3)  every two years [maintain trade data information that will assist ports in this state and international trade;

[(4) annually] prepare a report on Texas maritime ports, with a list of projects that have been recommended by the committee, including:

(A)  the recommended funding level for each project; and

(B)  if staged implementation of the project is appropriate, the funding requirements for each stage; and

(4) [(5)]  advise the commission and the department on matters relating to port authorities.

(b)  The committee shall update the report on Texas maritime ports and shall submit the report not later than December 1 of each even-numbered year to the commission for distribution to:

TX_00003124

USA_00017917

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 31 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 19 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 3999

(1) the governor;
(2) the lieutenant governor; and
(3) the speaker of the house of representatives.

SECTION 6. Section 55.008, Transportation Code, is amended to read as follows:

Sec. 55.008. CAPITAL PROGRAM. (a) The committee shall prepare a two-year port capital program defining the goals and objectives of the committee concerning the development of maritime port facilities and an intermodal transportation system. The port capital program must include projects or studies submitted to the committee by any maritime port and recommendations for:

(1) the construction of transportation facilities connecting any maritime port to another transportation mode; and

(2) the efficient, cost-effective development of transportation facilities or maritime port facilities for the purpose of:

(A) enhancing international trade;
(B) enhancing security;
(C) promoting cargo flow;
(D) increasing cruise passenger movements;
(E) increasing maritime port revenues; and
(F) providing economic benefits to the state.

(b) The committee shall update the port capital program [annually] and shall submit the capital program not later than December [February] 1 of each even-numbered year to:

(1) the governor;
(2) the lieutenant governor;
(3) the speaker of the house of representatives; and
(4) the commission.

SECTION 7. This Act takes effect September 1, 2011.

### HB 2035 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Hamilton called up with senate amendments for consideration at this time,

**HB 2035**, A bill to be entitled An Act relating to the temporary relocation of an alcoholic beverage distributor's or wholesaler's premises during a period of emergency and delivery of alcoholic beverages to a distributor's or wholesaler's premises.

Representative Hamilton moved to concur in the senate amendments to **HB 2035**.

The motion to concur in the senate amendments to **HB 2035** prevailed by (Record 1113): 142 Yeas, 1 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver;

TX_00003125
USA_00017918

Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Howard, C.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Alonzo; Harless.

**Senate Committee Substitute**

CSHB 2035, A bill entitled to be An Act relating to the temporary relocation of an alcoholic beverage distributor's or wholesaler's premises during a period of emergency and delivery of alcoholic beverages to a distributor's or wholesaler's premises.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 41.01, Alcoholic Beverage Code, is amended by adding Subsection (c) to read as follows:

(c)  The holder of a carrier permit who transports liquor to the premises of a wholesaler, including to a location from which the wholesaler is temporarily conducting business under Section 109.62, shall provide to the consignee a shipping invoice that clearly states:

(1)  the name and address of the consignor and consignee;

(2)  the origin and destination of the shipment; and

(3)  any other information required by this code or commission rule, including the brands, sizes of containers, types, and quantities of liquor contained in the shipment and the actual shipping costs paid by the consignor.

SECTION 2. Section 107.02, Alcoholic Beverage Code, is amended by adding Subsection (a-1) to read as follows:

(a-1)  A person transporting beer to the premises of a distributor, including to a location from which the distributor is temporarily conducting business under Section 109.62, shall provide to the consignee a shipping invoice that clearly states:

(1)  the name and address of the consignor and consignee;

(2)  the origin and destination of the shipment; and

TX_00003126

USA_00017919

     (3) any other information required by this code or commission rule, including the brands, sizes of containers, and quantities of beer contained in the shipment and the actual shipping costs paid by the consignor.

     SECTION 3. Subchapter D, Chapter 109, Alcoholic Beverage Code, is amended by adding Section 109.62 to read as follows:

     Sec. 109.62. TEMPORARY RELOCATION OF DISTRIBUTOR OR WHOLESALER DURING EMERGENCY. (a)   In this section, "period of emergency" means a time during which weather, fire, earthquake, or other natural disaster, act of God, or catastrophe affects a distributor's or wholesaler's premises or an area of this state in a way that disrupts the distributor's or wholesaler's normal business operations to the extent that the business cannot receive deliveries at or make deliveries from the premises or perform necessary business operations at the premises.

     (b) During a period of emergency, a distributor or wholesaler may temporarily operate all or part of the distributor's or wholesaler's business from an alternate location, including storing alcoholic beverages, maintaining required records, receiving alcoholic beverages from suppliers, dispatching orders intended for sale to authorized purchasers, and performing any other function the distributor or wholesaler is authorized by this code to perform at the licensed or permitted premises. The alternate location is considered the distributor's or wholesaler's licensed or permitted premises, as applicable, for the purposes of this code.

     (c) A holder of a permit or license under Chapter 41, 42, or 68 may make deliveries to and pick up deliveries from the alternate location in the same manner as this code and commission rules provide for the distributor's or wholesaler's licensed or permitted premises.

     (d) A distributor or wholesaler who temporarily operates all or part of the distributor's or wholesaler's business from an alternate location as provided by Subsection (b) shall immediately notify the administrator, in writing, of the alternate location. The notice must include a statement affirming that the alternate location satisfies the requirements of Subsection (e).

     (e) The alternate location must be in an area where the sale of the applicable alcoholic beverages has been approved by a local option election or where the distributor or wholesaler had been operating under Section 251.77 or 251.78. If beer, ale, or malt liquor is handled at the alternate location, the alternate location must be in an area assigned to the distributor or wholesaler under Subchapters C and D, Chapter 102.

     (f) If the delivery vehicles operated by the affected distributor or wholesaler are wholly or partially disabled, the administrator may grant the distributor or wholesaler the authority to contract with another distributor or wholesaler for the temporary sharing of delivery vehicles. Authority granted under this subsection is in addition to authority granted under other provisions of this code to share delivery vehicles and warehouses.

     (g) A distributor's or wholesaler's authority to operate from an alternate location under this section expires on the first anniversary of the date the distributor or wholesaler commences business operations at an alternate location.

TX_00003127

USA_00017920

The administrator may grant the distributor or wholesaler a one-year extension of the authority to operate from an alternate location under this section, after which the distributor or wholesaler must apply for a license or permit for the alternate location in the usual manner.

SECTION 4. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2011.

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **CSHB 2035** (senate committee printing) as follows:

(1) In SECTION 1 of the bill, in added Section 41.01(c)(3), Alcoholic Beverage Code (page 1, lines 27-28), strike "and the actual shipping costs paid by the consignor".

(2) In SECTION 2 of the bill, in added Section 107.02(a-1)(3), Alcoholic Beverage Code (page 1, lines 40-41), strike "and the actual shipping costs paid by the consignor".

(3) In SECTION 3 of the bill, in added Section 109.62(e), Alcoholic Beverage Code (page 2, line 17), strike "an area assigned" and substitute "the area assigned".

### HB 1674 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Jackson called up with senate amendments for consideration at this time,

**HB 1674,** A bill to be entitled An Act relating to procedures for establishment, modification, and enforcement of child support obligations.

Representative Jackson moved to concur in the senate amendments to **HB 1674.**

The motion to concur in the senate amendments to **HB 1674** prevailed by (Record 1114): 143 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond;

TX_00003128

USA_00017921

Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Alonzo; Cain.

**Senate Committee Substitute**

CSHB 1674, A bill to be entitled An Act relating to procedures for establishment, modification, and enforcement of child support obligations.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 154.187(c), Family Code, is amended to read as follows:

(c) An employer who has received an order or notice under this subchapter shall provide to the sender, by first class mail not later than the 40th [30th] day after the date the employer receives the order or notice, a statement that the child:

(1) has been enrolled in the employer's health insurance plan or is already enrolled in another health insurance plan in accordance with a previous child support or medical support order to which the employee is subject; or

(2) cannot be enrolled or cannot be enrolled permanently in the employer's health insurance plan and provide the reason why coverage or permanent coverage cannot be provided.

SECTION 2. Section 154.303(b), Family Code, is amended to read as follows:

(b) The parent, the child, if the child is 18 years of age or older, or other person may not transfer or assign the cause of action to any person, including a governmental or private entity or agency, except for an assignment made to the Title IV-D agency under Section 231.104 or in the provision of child support enforcement services under Section 159.307.

SECTION 3. Section 156.401, Family Code, is amended by amending Subsection (a) and adding Subsection (a-2) to read as follows:

(a) Except as provided by Subsection (a-1), (a-2), or (b), the court may modify an order that provides for the support of a child, including an order for health care coverage under Section 154.182, if:

(1) the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of:

(A) the date of the order's rendition; or

(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; or

(2) it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 36 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 24 of
4604          82nd LEGISLATURE — REGULAR SESSION

(a-2)  A court or administrative order for child support in a Title IV-D case may be modified as provided under Section 233.013(c) to provide for medical support of a child.

SECTION 4. Section 157.162, Family Code, is amended by amending Subsection (c) and adding Subsection (c-1) to read as follows:

(c)  The movant may attach to the motion a [A] copy of a [the] payment record. The movant may subsequently update that payment record at the hearing. If a payment record was attached to the motion as authorized by this subsection, the payment record, as updated if applicable, [attached to the motion is evidence of the facts asserted in the payment record and] is admissible to prove:

(1)  the dates and in what amounts payments were made;

(2)  the amount of any accrued interest;

(3)  the cumulative arrearage over time; and

(4)  the cumulative arrearage as of the final date of the record.

(c-1)  A [show whether payments were made. The] respondent may offer [controverting] evidence controverting the contents of a payment record under Subsection (c).

SECTION 5. Sections 157.311(1) and (4), Family Code, are amended to read as follows:

(1)  "Account" means:

(A)  any type of a demand deposit account, checking or negotiable withdrawal order account, savings account, time deposit account, [money market] mutual fund account, certificate of deposit, or any other instrument of deposit in which an individual has a beneficial ownership either in its entirety or on a shared or multiple party basis, including any accrued interest and dividends; and

(B)  an [a life] insurance policy, including a life insurance policy or annuity contract, in which an individual has a beneficial ownership or [liability insurance] against which an individual may file [has filed] a claim or counterclaim.

(4)  "Financial institution" has the meaning assigned by 42 U.S.C. Section 669a(d)(1) and includes a depository institution, depository institution holding company as defined by 12 U.S.C. Section 1813(w), credit union, benefit association, [liability or life] insurance company, [money market] mutual fund, and any similar entity authorized to do business in this state.

SECTION 6. Section 157.317(a), Family Code, is amended to read as follows:

(a)  A child support lien attaches to all real and personal property not exempt under the Texas Constitution or other law, including:

(1)  an account in a financial institution;

(2)  a retirement plan, including an individual retirement account; [and]

(3)  the proceeds of an [a life] insurance policy, including the proceeds from a life insurance policy or annuity contract and the proceeds from the sale or assignment of life insurance or annuity benefits, a claim for compensation [negligence or personal injury], or a [an insurance] settlement or award for the claim for compensation, due to or owned by the obligor; and

TX_00003130
USA_00017923

(4)  property seized and subject to forfeiture under Chapter 59, Code of Criminal Procedure.

SECTION 7. Subchapter G, Chapter 157, Family Code, is amended by adding Section 157.3271 to read as follows:

Sec. 157.3271.  LEVY ON FINANCIAL INSTITUTION ACCOUNT OF DECEASED OBLIGOR. (a) Subject to Subsection (b), the Title IV-D agency may, not earlier than the 90th day after the date of death of an obligor in a Title IV-D case, deliver a notice of levy to a financial institution in which the obligor was the sole owner of an account, regardless of whether the Title IV-D agency has issued a child support lien notice regarding the account.

(b)  The Title IV-D agency may not deliver a notice of levy under this section if probate proceedings relating to the obligor's estate have commenced.

(c)  The notice of levy must:

(1)  identify the amount of child support arrearages determined by the Title IV-D agency to be owing and unpaid by the obligor on the date of the obligor's death; and

(2)  direct the financial institution to pay to the Title IV-D agency, not earlier than the 45th day or later than the 60th day after the date of delivery of the notice, an amount from the assets of the obligor or from funds due to the obligor that are held or controlled by the institution, not to exceed the amount of the child support arrearages identified in the notice.

(d)  Not later than the 35th day after the date of delivery of the notice, the financial institution must notify any other person asserting a claim against the account that:

(1)  the account has been levied on for child support arrearages in the amount shown on the notice of levy; and

(2)  the person may contest the levy by filing suit and requesting a court hearing in the same manner that a person may challenge a child support lien under Section 157.323.

(e)  A person who contests a levy under this section, as authorized by Subsection (d)(2), may bring the suit in:

(1)  the district court of the county in which the property is located or in which the obligor resided; or

(2)  the court of continuing jurisdiction.

(f)  The notice of levy may be delivered to a financial institution as provided by Section 59.008, Finance Code, if the institution is subject to that law or may be delivered to the registered agent, the institution's main business office in this state, or another address provided by the institution under Section 231.307.

(g)  A financial institution may deduct its fees and costs, including any costs for complying with this section, from the deceased obligor's assets before paying the appropriate amount to the Title IV-D agency.

SECTION 8.  Sections 158.203(b) and (b-1), Family Code, are amended to read as follows:

(b)  An employer with 50 [250] or more employees shall remit a payment required under this section by electronic funds transfer or electronic data interchange not later than the second business day after the pay date.

TX_00003131
JA_003042

Case 2:13-cv-00193  Document 661-12  Filed on 11/11/14 in TXSD  Page 38 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 26 of
4006        82nd LEGISLATURE — REGULAR SESSION

(b-1) An employer with fewer than 50 [250] employees may remit a payment required under this section by electronic funds transfer or electronic data interchange. A payment remitted by the employer electronically must be remitted not later than the date specified by Subsection (b).

SECTION 9. The heading to Section 158.503, Family Code, is amended to read as follows:

Sec. 158.503. DELIVERY OF ADMINISTRATIVE WRIT TO EMPLOYER; FILING WITH COURT OR MAINTAINING RECORD.

SECTION 10. Section 158.503, Family Code, is amended by amending Subsections (a) and (b) and adding Subsection (b-1) to read as follows:

(a) An administrative writ of withholding issued under this subchapter may be delivered to an [obligor, obligee, and] employer by mail or by electronic transmission.

(b) The Title IV-D agency shall:

(1) not [Not] later than the third business day after the date of delivery of the administrative writ of withholding to an employer, [the Title IV-D agency shall] file a copy of the writ, together with a signed certificate of service, in the court of continuing jurisdiction; or

(2) maintain a record of the writ until all support obligations of the obligor have been satisfied or income withholding has been terminated as provided by this chapter.

(b-1) The certificate of service required under Subsection (b)(1) may be signed electronically. [This subsection does not apply to the enforcement under Section 158.501(c) of a support order rendered by a tribunal of another state.]

SECTION 11. Section 231.015, Family Code, is amended to read as follows:

Sec. 231.015. INSURANCE REPORTING PROGRAM. (a) In consultation with the Texas Department of Insurance and representatives of the insurance industry in this state, including insurance trade associations, the Title IV-D agency by rule shall operate a program [to improve the enforcement of child support, including the use of child support liens under Chapter 157. The program shall provide for procedures, including data matches,] under which insurers [insurance companies] shall cooperate with the Title IV-D agency in identifying obligors who owe child support arrearages and [or who] are subject to liens for child support arrearages to intercept certain [liability] insurance settlements or awards for claims in satisfaction of the arrearage amounts.

(b) An insurer [insurance company] that provides information or responds to a notice of child support lien or levy under Subchapter G, Chapter 157, or acts in good faith to comply with procedures established by the Title IV-D agency under this section is not liable for those acts under any law to any person.

SECTION 12. Section 231.307, Family Code, is amended by amending Subsection (d) and adding Subsection (g) to read as follows:

TX_00003132
JA_003043

TX_00003132
USA_00017925

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 39 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 27 of
Monday, May 16, 2011        HOUSE JOURNAL — 77th Day        4007

(d) A financial institution providing information or responding to a notice of child support lien or levy provided under Subchapter G, Chapter 157, or otherwise acting in good faith to comply with the Title IV-D agency's procedures under this section may not be liable under any federal or state law for any damages that arise from those acts.

(g) This section does not apply to an insurer subject to the reporting requirements under Section 231.015.

SECTION 13. The heading to Section 232.0135, Family Code, is amended to read as follows:

Sec. 232.0135. DENIAL OF LICENSE ISSUANCE OR RENEWAL.

SECTION 14. Sections 232.0135(a), (b), (c), and (d), Family Code, are amended to read as follows:

(a) A child support agency, as defined by Section 101.004, may provide notice to a licensing authority concerning an obligor who has failed to pay child support for six months or more that requests the authority to refuse to accept an application for issuance of a license to the obligor or renewal of an existing [the] license of the obligor.

(b) A licensing authority that receives the information described by Subsection (a) shall refuse to accept an application for issuance of a license to the obligor or renewal of an existing [the] license of the obligor until the authority is notified by the child support agency that the obligor has:

(1) paid all child support arrearages;

(2) established with the agency a satisfactory repayment schedule or is in compliance with a court order for payment of the arrearages;

(3) been granted an exemption from this subsection as part of a court-supervised plan to improve the obligor's earnings and child support payments; or

(4) successfully contested the denial of issuance or renewal of license under Subsection (d).

(c) On providing a licensing authority with the notice described by Subsection (a), the child support agency shall send a copy to the obligor by first class mail and inform the obligor of the steps the obligor must take to permit the authority to accept the obligor's application for license issuance or renewal.

(d) An obligor receiving notice under Subsection (c) may request a review by the child support agency to resolve any issue in dispute regarding the identity of the obligor or the existence or amount of child support arrearages. The agency shall promptly provide an opportunity for a review, either by telephone or in person, as appropriate to the circumstances. After the review, if appropriate, the agency may notify the licensing authority that it may accept the obligor's application for issuance or renewal of license. If the agency and the obligor fail to resolve any issue in dispute, the obligor, not later than the 30th day after the date of receiving notice of the agency's determination from the review, may file a motion with the court to direct the agency to withdraw the notice under Subsection (a) and request a hearing on the motion. The obligor's application for license issuance or renewal may not be accepted by the licensing authority until the court rules on the motion. If, after a review by the agency or a hearing by the

TX_00003133
USA_00017926

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 40 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 28 of
4608          82nd LEGISLATURE — REGULAR SESSION

court, the agency withdraws the notice under Subsection (a), the agency shall reimburse the obligor the amount of any fee charged the obligor under Section 232.014.

SECTION 15. Section 232.014(a), Family Code, is amended to read as follows:

(a) A licensing authority may charge a fee to an individual who is the subject of an order suspending license or of an action of a child support agency under Section 232.0135 to deny issuance or renewal of license in an amount sufficient to recover the administrative costs incurred by the authority under this chapter.

SECTION 16. Section 233.012, Family Code, is amended to read as follows:

Sec. 233.012. INFORMATION REQUIRED TO BE PROVIDED AT NEGOTIATION CONFERENCE. At the beginning of the negotiation conference, the child support review officer shall review with the parties participating in the conference information provided in the notice of child support review and inform the parties that:

(1) the purpose of the negotiation conference is to provide an opportunity to reach an agreement on a child support order;

(2) if the parties reach an agreement, the review officer will prepare an agreed review order to be effective immediately on being confirmed by the court, as provided by Section 233.024;

(3) a party does not have to sign a review order prepared by the child support review officer but that the Title IV-D agency may file a review order without the agreement of the parties;

(4) the parties may sign a waiver of the right to service of process;

(5) a party may file a request for a court hearing on a nonagreed order not later than [at any time before] the 20th day after the date a copy of the petition for confirmation of the order is delivered to the party [filed]; and

(6) a party may file a motion for a new trial not later than [at any time before] the 30th day after an order is confirmed by the court.

SECTION 17. Section 233.013, Family Code, is amended by adding Subsection (c) to read as follows:

(c) Notwithstanding Subsection (b), the Title IV-D agency may, at any time and without a showing of material and substantial change in the circumstances of the parties, file a child support review order that has the effect of modifying an existing order for child support to provide medical support for a child if the existing order does not provide health care coverage for the child as required under Section 154.182.

SECTION 18. Section 1108.101, Insurance Code, is amended to read as follows:

Sec. 1108.101. ASSIGNMENT GENERALLY. (a) This chapter does not prevent an insured, owner, or annuitant from assigning, in accordance with the terms of the policy or contract:

(1) any benefits to be provided under an insurance policy or annuity contract to which this chapter applies; or

TX_00003134
USA_00017927

(2)  any other rights under the policy or contract.

(b)  A benefit or right described by Subsection (a) assigned by an insured, owner, or annuitant after a child support lien notice has been filed against the insured, owner, or annuitant by the Title IV-D agency continues to be subject to the child support lien after the date of assignment. The lien continues to secure payment of all child support arrearages owed by the insured, owner, or annuitant under the underlying child support order, including arrearages that accrue after the date of assignment.

SECTION 19.  Section 411.1271, Government Code, is amended by adding Subsection (b-1) and amending Subsection (c) to read as follows:

(b-1)  The office of the attorney general is entitled to obtain from the Department of Public Safety, the Federal Bureau of Investigation identification division, or another law enforcement agency criminal history record information maintained by the department or agency that relates to a person who owes child support in a Title IV-D case, as defined by Section 101.034, Family Code, for the purposes of locating that person and establishing, modifying, or enforcing a child support obligation against that person.

(c)  Criminal history record information obtained by the office of the attorney general under this section [Subsection (a) or (b)] may not be released or disclosed to any person except on court order or with the consent of the person who is the subject of the criminal history record information.

SECTION 20.  Section 34.04(a), Tax Code, is amended to read as follows:

(a)  A person, including a taxing unit and the Title IV-D agency, may file a petition in the court that ordered the seizure or sale setting forth a claim to the excess proceeds. The petition must be filed before the second anniversary of the date of the sale of the property. The petition is not required to be filed as an original suit separate from the underlying suit for seizure of the property or foreclosure of a tax lien on the property but may be filed under the cause number of the underlying suit.

SECTION 21.  Article 59.06(a), Code of Criminal Procedure, is amended to read as follows:

(a)  Except as provided by Subsection (k), all forfeited property shall be administered by the attorney representing the state, acting as the agent of the state, in accordance with accepted accounting practices and with the provisions of any local agreement entered into between the attorney representing the state and law enforcement agencies. If a local agreement has not been executed, the property shall be sold on the 75th day after the date of the final judgment of forfeiture at public auction under the direction of the county sheriff, after notice of public auction as provided by law for other sheriff's sales. The proceeds of the sale shall be distributed as follows:

(1)  to any interest holder to the extent of the interest holder's nonforfeitable interest; [and]

(2)  after any distributions under Subdivision (1), if the Title IV-D agency has filed a child support lien in the forfeiture proceeding, to the Title IV-D agency in an amount not to exceed the amount of child support arrearages identified in the lien; and

(3) the balance, if any, after the deduction of court costs to which a district court clerk is entitled under Article 59.05(f) and, after that deduction, the deduction of storage and disposal costs, to be deposited not later than the 30th day after the date of the sale in the state treasury to the credit of the general revenue fund.

SECTION 22. Section 233.017(c), Family Code, is repealed.

SECTION 23. Section 154.187(c), Family Code, as amended by this Act, applies to an order or notice received by an employer on or after the effective date of this Act. An order or notice received by an employer before the effective date of this Act is governed by the law in effect on the date the order or notice was received, and the former law is continued in effect for that purpose.

SECTION 24. Sections 156.401(a-2) and 233.013(c), Family Code, as added by this Act, apply to each child support order, regardless of whether the order was rendered before, during, or after the effective date of this Act.

SECTION 25. Section 157.162, Family Code, as amended by this Act, applies to a motion for child support enforcement filed on or after the effective date of this Act. A motion filed before the effective date of this Act is governed by the law in effect on the date the motion was filed, and the former law is continued in effect for that purpose.

SECTION 26. Section 158.203, Family Code, as amended by this Act, applies to child support payments withheld by an employer on or after the effective date of this Act.

SECTION 27. Section 158.503, Family Code, as amended by this Act, applies to an administrative writ of withholding issued on or after the effective date of this Act.

SECTION 28. Section 1108.101(b), Insurance Code, as added by this Act, applies to an assignment made on or after the effective date of this Act. An assignment made before the effective date of this Act is governed by the law in effect on the date the assignment was made, and the former law is continued in effect for that purpose.

SECTION 29. Article 59.06(a), Code of Criminal Procedure, as amended by this Act, applies to a sale of forfeited property that occurs on or after the effective date of this Act. A sale that occurs before the effective date of this Act is governed by the law in effect on the date the property was sold, and the former law is continued in effect for that purpose.

SECTION 30. This Act takes effect September 1, 2011.

### Senate Amendment No. 1 (Senate Floor Amendment No. 1)

Amend **HB 1674** (senate committee printing) by adding the following SECTIONS and renumbering subsequent SECTIONS appropriately:

"SECTION _____. Section 157.263, Family Code, is amended by adding Subsection (b-1) to read as follows:

(b-1) In rendering a money judgment under this section, the court may not reduce or modify the amount of child support arrearages but, in confirming the amount of arrearages, may allow a counterclaim or offset as provided by this title.

SECTION _____. Subchapter B, Chapter 231, Family Code, is amended by adding Section 231.124 to read as follows:

TX_00003136
JA_003047

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 43 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 31 of
Monday, May 16, 2011    HOUSE JOURNAL — 77th Day    401

Sec. 231.124. CHILD SUPPORT ARREARAGES PAYMENT INCENTIVE PROGRAM. (a) The title IV-D agency may establish and administer a payment incentive program to promote payment by obligors who are delinquent in satisfying child support arrearages assigned to the Title IV-D agency under Section 231.104(a).

(b) A program established under this section must provide to a participating obligor a credit for every dollar amount paid by the obligor on interest and arrearages balances during each month of the obligor's voluntary enrollment in the program. In establishing a program under this section, the Title IV-D agency by rule must prescribe:

(1) criteria for a child support obligor's initial eligibility to participate in the program;

(2) the conditions for a child support obligor's continued participation in the program;

(3) procedures for enrollment in the program; and

(4) the terms of the financial incentives to be offered under the program.

(c) The Title IV-D agency shall provide eligible obligors with notice of the program and enrollment instructions.

SECTION ____. Section 157.262, Family Code, is repealed.

SECTION ____. Subsection (b-1), Section 157.263, Family Code, as added by this Act, applies to a motion for enforcement of child support that is pending before a trial court on or filed on or after the effective date of this Act.

## HB 2271 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Anchia called up with senate amendments for consideration at this time,

**HB 2271**, A bill to be entitled An Act relating to the continuation and functions of the Texas Racing Commission, the abolishment of the Equine Research Account Advisory Committee, and the authority of Texas AgriLife Research; providing an administrative penalty.

(L. Taylor in the chair)

Representative Anchia moved to concur in the senate amendments to **HB 2271**.

The motion to concur in the senate amendments to **HB 2271** prevailed by (Record 1115): 120 Yeas, 20 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Burnam; Button; Callegari; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, S.; Davis, Y.; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, T.;

TX_00003137
USA_00017930

Kleinschmidt; Kolkhorst; Kuempel; Larson; Laubenberg; Legler; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Paxton; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Smith, T.; Smith, W.; Solomons; Strama; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Woolley; Workman; Zerwas.

Nays — Brown; Burkett; Cain; Carter; Davis, J.; Fletcher; Flynn; Hartnett; Howard, C.; Landtroop; Lavender; Lewis; Miller, S.; Patrick; Perry; Phillips; Simpson; Weber; White; Zedler.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Deshotel; King, S.; Marquez; Peña.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 1115. I intended to vote no.

Button

I was shown voting yes on Record No. 1115. I intended to vote present, not voting.

Y. Davis

I was shown voting yes on Record No. 1115. I intended to vote no.

Harless

When Record No. 1115 was taken, I was temporarily out of the house chamber. I would have voted yes.

S. King

I was shown voting yes on Record No. 1115. I intended to vote no.

Paxton

I was shown voting yes on Record No. 1115. I intended to vote no.

Solomons

### Senate Committee Substitute

**CSHB 2271**, A bill to be entitled An Act relating to the continuation and functions of the Texas Racing Commission, the abolishment of the Equine Research Account Advisory Committee, and the authority of Texas AgriLife Research; providing an administrative penalty.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 1.03, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by amending Subdivision (52) and adding Subdivisions (80) and (81) to read as follows:

TX_00003138
USA_00017931

Case 2:13-cv-00193  Document 661-12  Filed on 11/11/14 in TXSD  Page 45 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 33 of
Monday, May 16, 2011            HOUSE JOURNAL — 77th Day            4013

(52) "Performance" means the consecutive running of a specified number of greyhound races as determined by the commission [not more than 13 greyhound races].

(80) "Active license" means a racetrack license designated by the commission as active.

(81) "Inactive license" means a racetrack license designated by the commission as inactive.

SECTION 2. Section 2.071, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 2.071. CONFLICT OF INTEREST. (a)  A person may not be a member of the commission and may not be a commission employee employed in a "bona fide executive, administrative, or professional capacity," as that phrase is used for purposes of establishing an exemption to the overtime provisions of the federal Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.), if:

(1) the person is an [An] officer, employee, or paid consultant of a Texas trade association in the field of horse or greyhound racing or breeding; or

(2) the person's [may not be a member of the commission or an employee of the commission who is exempt from the state's position classification plan or is compensated at or above the amount prescribed by the General Appropriations Act for step 1, salary group 17, of the position classification salary schedule.

[(b) A person who is the] spouse is [of] an officer, manager, or paid consultant of a Texas trade association in the field of horse or greyhound racing or breeding [may not be a member of the commission and may not be an employee of the commission who is exempt from the state's position classification plan or is compensated at or above the amount prescribed by the General Appropriations Act for step 1, salary group 17, of the position classification salary schedule].

(b)  A person may not be a member of the commission or act as the general counsel to the commission if the person is required to register as a lobbyist under Chapter 305, Government Code, because of the person's activities for compensation on behalf of a profession related to the operation of the commission.

(c)  In [For the purposes of] this section, "Texas trade association" means [a Texas trade association is] a cooperative and voluntarily joined statewide [nonprofit] association of business or professional competitors in this state designed to assist its members and its industry or profession in dealing with mutual business or professional problems and in promoting their common interest.

SECTION 3. Article 2, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by adding Section 2.25 to read as follows:

Sec. 2.25. NEGOTIATED RULEMAKING AND ALTERNATIVE DISPUTE RESOLUTION PROCEDURES. (a) The commission shall develop and implement a policy to encourage the use of:

(1) negotiated rulemaking procedures under Chapter 2008, Government Code, for the adoption of commission rules; and

TX_00003139
USA_00017932

(2) appropriate alternative dispute resolution procedures under Chapter 2009, Government Code, to assist in the resolution of internal and external disputes under the commission's jurisdiction.

(b) The commission's procedures relating to alternative dispute resolution shall conform, to the extent possible, to any model guidelines issued by the State Office of Administrative Hearings for the use of alternative dispute resolution by state agencies.

(c) The commission shall:

(1) coordinate the implementation of the policy adopted under Subsection (a) of this section;

(2) provide training as needed to implement the procedures for negotiated rulemaking or alternative dispute resolution; and

(3) collect data concerning the effectiveness of those procedures.

SECTION 4. Sections 3.07(b) and (e), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), are amended to read as follows:

(b) The commission shall make rules specifying the authority and the duties of each official, including the power of stewards or judges to impose penalties for unethical practices or violations of racing rules. A penalty imposed by the stewards or judges may include a fine of not more than $5,000, a suspension for not more than one year, or both a fine and suspension. Before imposing a penalty under this subsection, the stewards and judges shall conduct a hearing that is consistent with constitutional due process. A hearing conducted by a steward or judge under this subsection is not subject to Chapter 2001, Government Code. A decision of a steward or judge is subject to review by the executive director, who may modify the penalty. A penalty modified by the executive director under this section may include a fine not to exceed $10,000, a suspension not to exceed two years, or both a fine and a suspension. A decision of a steward or judge that is not reviewed or modified by the executive director is a final decision. Any decision of a steward or judge may be appealed under Section 3.08(a) of this Act regardless of whether the decision is modified by the executive director. [If, in the opinion of the stewards or judges, the allowable penalties are not sufficient, the stewards or judges may refer the case to the commission for further action.]

(e) To pay the charges associated with the medication or drug testing, an association may use the money held by the association to pay outstanding tickets and pari-mutuel vouchers. If additional amounts are needed to pay the charges, the association shall pay those additional amounts. [If the amount held exceeds the amount needed to pay the charges, the association shall pay the excess to the commission in accordance with Section 11.08 of this Act.]

SECTION 5. Section 3.09(b), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

(b) The commission shall deposit the money it collects under this Act in the State Treasury to the credit of a special fund to be known as the Texas Racing Commission fund. The Texas Racing Commission fund may be appropriated only for the administration and enforcement of this Act. Any unappropriated money exceeding $750,000 that remains [remaining] in the [that special] fund at the close of each fiscal biennium shall be transferred to the General Revenue Fund

TX_00003140

USA_00017933

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 47 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 35 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 4013

and may be appropriated for any legal purpose. The legislature may also appropriate money from the General Revenue Fund for the administration and enforcement of this Act. Any amount of general revenue appropriated for the administration and enforcement of this Act in excess of the cumulative amount deposited in the Texas Racing Commission fund shall be reimbursed from the Texas Racing Commission fund not later than one year after the date on which the general revenue funds are appropriated, with [12 percent interest per year until August 31, 1993, and] 6-3/4 percent interest [thereafter] with all payments first attributable to interest.

SECTION 6. Sections 5.03(a) and (c), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), are amended to read as follows:

(a) An applicant for any license or license renewal under this Act must, except as allowed under Section 7.10 of this Act, submit to the commission a complete set of fingerprints of the individual natural person applying for the license or license renewal or, if the applicant is not an individual natural person, a complete set of fingerprints of each officer or director and of each person owning an interest of at least five percent in the applicant. The Department of Public Safety may request any person owning any interest in an applicant for a racetrack license to submit a complete set of fingerprints.

(c) A peace officer of this or any other state, or any district office of the commission, shall take the fingerprints of an applicant for a license or license renewal on forms approved and furnished by the Department of Public Safety and shall immediately deliver them to the commission.

SECTION 7. Article 6, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by adding Section 6.032 to read as follows:

Sec. 6.032. BOND. (a) The commission at any time may require a holder of a racetrack license or an applicant for a racetrack license to post security in an amount reasonably necessary, as provided by commission rule, to adequately ensure the license holder's or applicant's compliance with substantive requirements of this Act and commission rules.

(b) Cash, cashier's checks, surety bonds, irrevocable bank letters of credit, United States Treasury bonds that are readily convertible to cash, or irrevocable assignments of federally insured deposits in banks, savings and loan institutions, and credit unions are acceptable as security for purposes of this section. The security must be:

(1) conditioned on compliance with this Act and commission rules adopted under this Act; and

(2) returned after the conditions of the security are met.

SECTION 8. The heading to Section 6.04, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 6.04. ISSUANCE OF LICENSE[; BOND].

SECTION 9. Section 6.04, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by adding Subsections (a-1) and (a-2) to read as follows:

TX_00003141

USA_00017934

Case 2:13-cv-00193 Document 661-12 Filed on 11/11/14 in TXSD Page 48 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 36 of
4010          82nd LEGISLATURE — REGULAR SESSION

(a-1)  When all of the requirements of licensure for the applicant described in this article have been satisfied, the commission shall notify the applicant that the application is complete.

(a-2)  The commission shall make a determination with respect to a pending application not later than the 120th day after the date on which the commission provided to the applicant the notice required under Subsection (a-1) of this section.

SECTION 10.  Section 6.06(k), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

(k)  The commission shall review the ownership and management of an active [a] license issued under this article every five years beginning on the fifth anniversary of the issuance of the license.  In performing the review, the commission may require the license holder to provide any information that would be required to be provided in connection with an original license application under Article 5 of this Act or this article.  The commission shall charge fees for the review in amounts sufficient to implement this subsection.

SECTION 11.  Article 6, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by adding Sections 6.0601, 6.0602, and 6.0603 to read as follows:

Sec. 6.0601.  DESIGNATION  OF  ACTIVE  AND  INACTIVE RACETRACK LICENSES.  (a)  The commission shall designate each racetrack license as an active license or an inactive license.  The commission may change the designation of a racetrack license as appropriate.

(b)  The commission shall designate a racetrack license as an active license if the license holder:

(1)  holds live racing events at the racetrack; or

(2)  makes good faith efforts to conduct live racing.

(c)  The  commission  by  rule  shall  provide  guidance  on  what  actions constitute, for purposes of this Act, good faith efforts to conduct live racing.

(d)  Before the first anniversary of the date a new racetrack license is issued, the commission shall conduct an evaluation of the license to determine whether the license is an active or inactive license.

(e)  An  active  license  is  effective  until  the  license  is  designated  as  an inactive license or is surrendered, suspended, or revoked under this Act.

Sec. 6.0602.  RENEWAL OF INACTIVE RACETRACK LICENSE; FEES. (a)  The commission by rule shall establish an annual renewal process for inactive licenses and may require the license holder to provide any information required for an original license application under this Act.  An inactive license holder must complete  the  annual  renewal  process  established  under  this  section  until  the commission:

(1)  designates the license as an active license; or

(2)  refuses to renew the license.

(b)  In  determining  whether  to  renew  an  inactive  license,  the  commission shall consider:

(1)  the inactive license holder's:

(A)  financial stability;

TX_00003142
JA_003053

TX_00003142
USA_00017935