(B) ability to conduct live racing;

(C) ability to construct and maintain a racetrack facility; and

(D) other good faith efforts to conduct live racing; and

(2) other necessary factors considered in the issuance of the original license.

(c) The commission may refuse to renew an inactive license if, after notice and a hearing, the commission determines that:

(1) renewal of the license is not in the best interests of the racing industry or the public; or

(2) the license holder has failed to make a good faith effort to conduct live racing.

(d) The commission shall consult with members of the racing industry and other key stakeholders in developing the license renewal process under this section.

(e) The commission shall set and collect renewal fees in amounts reasonable and necessary to cover the costs of administering and enforcing this section.

(f) The commission by rule shall establish criteria to make the determinations under Subsections (c)(1) and (2).

Sec. 6.0603. DISCIPLINARY ACTION. (a) The commission by rule shall establish procedures for disciplinary action against a racetrack license holder.

(b) If, after notice and hearing, the commission finds that a racetrack license holder or a person employed by the racetrack has violated this Act or a commission rule or if the commission finds during a review or renewal that the racetrack is ineligible for a license under this article, the commission may:

(1) revoke, suspend, or refuse to renew the racetrack license;

(2) impose an administrative penalty as provided under Section 15.03 of this Act; or

(3) take any other action as provided by commission rule.

(c) The commission may not revoke an active license unless the commission reasonably determines that other disciplinary actions are inadequate to remedy the violation.

SECTION 12. Section 6.08(h), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

(h) Two percent of the breakage shall be allocated to the equine research account under Subchapter F, Chapter 88 [51], Education Code. The remaining 98 percent of the breakage shall constitute "total breakage" and shall be allocated pursuant to Subsections (i) and (j) of this section.

SECTION 13. The heading to Section 6.18, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 6.18. ANNUAL FEE FOR RACETRACK [TERM OF] LICENSE[; RESTRICTIONS ON RACETRACKS].

SECTION 14. Section 6.18(b), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

TX_00003143

USA_00017936

(b) The commission may prescribe a reasonable annual fee to be paid by each racetrack licensee. The fee must be in an amount sufficient to provide that the total amount of fees imposed under this section, together with the license fees prescribed under Section 5.01(b) of this Act and the renewal fees prescribed under Section 6.0602(e) of this Act, is sufficient to pay the costs of administering and enforcing this Act.

SECTION 15. Section 7.01, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 7.01. LICENSE REQUIRED. (a) Except as provided by this section, a [A] person may not participate in racing with pari-mutuel wagering other than as a spectator or as a person placing a wager without first obtaining a license from the commission. A person may not engage in any occupation for which commission rules require a license under this Act without first obtaining a license from the commission.

(b) The commission by rule shall categorize the occupations of racetrack employees and determine the occupations that afford the employee an opportunity to influence racing with pari-mutuel wagering. The rules must require the following employees to be licensed under this Act:

(1) an employee who works in an occupation determined by the commission to afford the employee an opportunity to influence racing with pari-mutuel wagering; or

(2) an employee who will likely have significant access to the backside of a racetrack or to restricted areas of the frontside of a racetrack.

(c) A racetrack licensed under this Act is responsible for ensuring that its employees comply with this Act and commission rules. The commission may impose disciplinary action against a licensed racetrack for violations of this Act and commission rules by its employees as provided by Section 6.0603 of this Act.

SECTION 16. Section 7.07, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by amending Subsection (a) and adding Subsection (a-1) to read as follows:

(a) A license issued under this article is valid for a period set by the commission not to exceed 36 months following the date of its issuance. It is renewable on application, satisfactory results of a criminal history information record check, and payment of the fee in accordance with the rules of the commission.

(a-1) The commission shall obtain criminal history record information on each applicant renewing an occupational license under this article. The commission shall ensure that criminal history record information is obtained on each license holder at least once every 36 months.

SECTION 17. Section 11.01, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by amending Subsection (a) and adding Subsection (a-1) to read as follows:

(a) The commission shall adopt rules to regulate wagering on greyhound races and horse races under the system known as pari-mutuel wagering. Wagering may be conducted only by an association within its enclosure. A person may not

TX_00003144

USA_00017937

Case 2:13-cv-00193  Document 661-13  Filed on 11/11/14 in TXSD  Page 3 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 39 of
Monday, May 16, 2011  HOUSE JOURNAL — 77th Day  4019

accept, in person, by telephone, or over the Internet, a wager for a horse race or greyhound race conducted inside or outside this state from a person in this state unless the wager is authorized under this Act.

(a-1) The commission may commission as many investigators as the commission determines necessary to enforce this Act and the rules of the commission. Each investigator shall take the constitutional oath of office and file it with the commission. Each commissioned investigator has the powers of a peace officer.

SECTION 18. Sections 11.04(a) and (c), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), are amended to read as follows:

(a) Only a person inside the enclosure where both live and simulcast race meetings are authorized may wager on the result of a live or simulcast race presented by the association in accordance with commission rules. Except as provided by this section, a person may not place, in person, by telephone, or over the Internet, a wager for a horse race or greyhound race conducted inside or outside this state. The commission shall adopt rules to prohibit wagering by employees of the commission and to regulate wagering by persons licensed under this Act.

(c) The commission shall adopt rules prohibiting an association from accepting a wager made on credit and shall adopt rules providing for the use of automatic banking machines within the enclosure. The commission shall limit the use of an automatic banking machine to [:

[(1)] allow a person to have access to only the person's checking account at a bank or other financial institution[; and

[(2) deliver no more than $200].

SECTION 19. Section 11.05, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 11.05. UNLAWFUL WAGERING. A person shall not wager on the result of a greyhound race or horse race in this state except as permitted by this Act. A person who is not an association under this Act may not accept from a Texas resident while the resident is in this state a wager on the result of a greyhound race or horse race conducted inside or outside this state.

SECTION 20. Section 18.01(a), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

(a) The Texas Racing Commission is subject to Chapter 325, Government Code (Texas Sunset Act). Unless continued in existence as provided by that chapter, and except as provided by Subsections (b) and (c) of this section, the commission is abolished and this Act expires September 1, 2017 [2011].

SECTION 21. Section 88.521(2), Education Code, is amended to read as follows:

(2) "Director" means the executive director of Texas AgriLife Research, formerly known as the Texas Agricultural Experiment Station.

SECTION 22. Sections 88.522(b), (c), (f), and (g), Education Code, are amended to read as follows:

TX_00003145

USA_00017938

Case 2:13-cv-00193   Document 661-13   Filed on 11/11/14 in TXSD   Page 4 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-3   Filed 06/20/12   Page 40 of
4020          82nd LEGISLATURE — REGULAR SESSION

(b)  The director shall administer the account through established procedures of Texas AgriLife Research, formerly known as the Texas Agricultural Experiment Station.

(c)  The comptroller shall periodically transfer the amounts specified by Sections [Section] 6.08(f) and (h), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), to the account.

(f)  Not more than 10 percent of the account may be spent each year on the cost incurred in the operation or administration of the [advisory committee or] account.

(g)  All money received by [the advisory committee or] the account under this chapter is subject to Subchapter F, Chapter 404, Government Code.

SECTION 23.  Section 88.525, Education Code, is amended by adding Subsections (a-1) and (b-1) and amending Subsection (b) to read as follows:

(a-1)  In awarding grants under this section, the director shall comply with the conflict of interest provisions of The Texas A&M University System.

(b)  The [With the advice of the advisory committee, the] director shall develop annually a request for proposals for equine research grants. Each proposal received may [must] be evaluated by a peer review committee appointed by the director and subject matter experts as necessary to evaluate the proposal. The peer review committee shall consider the applicant's research capacity and the relevance and scientific merit of the proposal and make recommendations to the director.

(b-1)  The director may award a grant to an applicant who proposes to commingle grant money awarded under this section with other sources of funding or proposes to conduct research that includes equine research.

SECTION 24.  Section 88.526(a), Education Code, is amended to read as follows:

(a)  The director shall prepare an annual report on equine research funded under this subchapter. The director shall distribute the report to the Texas Racing Commission and [the] members of the Texas horse racing industry [advisory committee]. The director shall make copies of the report available to interested parties.

SECTION 25.  Section 88.527, Education Code, is amended to read as follows:

Sec. 88.527.  CONFERENCE.   Texas AgriLife Research [The Texas Agricultural Extension Service] shall conduct an annual conference on equine research. Money from the equine research account shall be used to defray the costs of the conference. The conference must be designed to bring to the attention of the Texas horse racing industry the latest research results and technological developments in equine research. The director shall make the report created under Section 88.526 available at the conference.

SECTION 26.  The following sections of the Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes) are repealed:

(1)  Section 2.072;

(2)  Section 6.04(b);

(3)  Section 6.18(a); and

TX_00003146
JA_003057

TX_00003146

USA_00017939

Case 2:13-cv-00193  Document 661-13  Filed on 11/11/14 in TXSD  Page 5 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 41 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4021

(4) Section 7.02(a).

SECTION 27. The following sections of the Education Code are repealed:

(1) Section 88.521(1);

(2) Section 88.523;

(3) Section 88.5231;

(4) Section 88.5232;

(5) Section 88.524;

(6) Section 88.5245; and

(7) Section 88.525(c).

SECTION 28. (a)  Not later than September 1, 2012, the Texas Racing Commission shall designate each racetrack license as active or inactive as required by Section 6.0601, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), as added by this Act.

(b) The Texas Racing Commission by rule shall establish a staggered schedule and the procedure for the review of licenses required under Section 6.06(k), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), as amended by this Act.

(c) The Texas Racing Commission may adjust license renewal and review fees pursuant to the commission's authority to adjust fees under Section 5.01, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), and Section 6.0602, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), as added by this Act, to recover any money lost by the change in law made by this Act to Section 3.07(e), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes).

(d) As soon as practicable, the executive director of Texas AgriLife Research shall submit a report to the Texas Racing Commission as required by Section 88.526, Education Code, as amended by this Act.

SECTION 29. This Act takes effect September 1, 2011.

### HB 908 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Thompson called up with senate amendments for consideration at this time,

**HB 908**, A bill to be entitled An Act relating to the division of community property on dissolution of marriage.

Representative Thompson moved to concur in the senate amendments to **HB 908**.

The motion to concur in the senate amendments to **HB 908** prevailed by (Record 1116): 142 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown;

TX_00003147

USA_00017940

Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Kolkhorst; Reynolds.

### STATEMENT OF VOTE

When Record No. 1116 was taken, I was in the house but away from my desk. I would have voted yes.

Kolkhorst

**Senate Committee Substitute**

**CSHB 908**, A bill to be entitled An Act relating to the division of community property on dissolution of marriage.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Chapter 7, Family Code, is amended by adding Section 7.009 to read as follows:

Sec. 7.009.  FRAUD ON THE COMMUNITY; DIVISION AND DISPOSITION OF RECONSTITUTED ESTATE. (a) In this section, "reconstituted estate" means the total value of the community estate that would exist if an actual or constructive fraud on the community had not occurred.

(b) If the trier of fact determines that a spouse has committed actual or constructive fraud on the community, the court shall:

(1)  calculate the value by which the community estate was depleted as a result of the fraud on the community and calculate the amount of the reconstituted estate; and

(2)  divide the value of the reconstituted estate between the parties in a manner the court deems just and right.

(c)  In making a just and right division of the reconstituted estate under Section 7.001, the court may grant any legal or equitable relief necessary to accomplish a just and right division, including:

(1)  awarding to the wronged spouse an appropriate share of the community estate remaining after the actual or constructive fraud on the community;

(2)  awarding a money judgment in favor of the wronged spouse against the spouse who committed the actual or constructive fraud on the community; or

TX_00003148

USA_00017941

Case 2:13-cv-00193   Document 661-13   Filed on 11/11/14 in TXSD   Page 7 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-3   Filed 06/20/12   Page 43 of
Monday, May 16, 2011        HOUSE JOURNAL — 77th Day        4023

(3) awarding to the wronged spouse both a money judgment and an appropriate share of the community estate.

SECTION 2. The change in law made by this Act applies to a suit for dissolution of a marriage pending before a trial court on or filed on or after the effective date of this Act.

SECTION 3. This Act takes effect September 1, 2011.

### HB 1380 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Truitt called up with senate amendments for consideration at this time,

**HB 1380**, A bill to be entitled An Act relating to the graduate medical training requirements for certain foreign medical school graduates applying for a license to practice medicine in this state.

Representative Truitt moved to concur in the senate amendments to **HB 1380**.

The motion to concur in the senate amendments to **HB 1380** prevailed by (Record 1117): 142 Yeas, 1 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Shelton.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Coleman.

**Senate Committee Substitute**

**CSHB 1380,** A bill to be entitled An Act relating to the graduate medical training requirements for certain foreign medical school graduates applying for a license to practice medicine in this state.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 155.003(a), Occupations Code, is amended to read as follows:

(a) To be eligible for a license under this chapter, an applicant must present proof satisfactory to the board that the applicant:

(1) is at least 21 years of age;

(2) is of good professional character and has not violated Section 164.051, 164.052, or 164.053;

(3) has completed:

(A) at least 60 semester hours of college courses, other than courses in medical school, that are acceptable to The University of Texas at Austin for credit on a bachelor of arts degree or a bachelor of science degree;

(B) the entire primary, secondary, and premedical education required in the country of medical school graduation, if the medical school is located outside the United States or Canada; or

(C) substantially equivalent courses as determined by board rule;

(4) is a graduate of a medical school located in the United States or Canada and approved by the board;

(5) has either:

(A) successfully completed one year of graduate medical training approved by the board in the United States or Canada; or

(B) graduated from a medical school located outside the United States or Canada and has successfully completed two [~~three~~] years of graduate medical training approved by the board in the United States or Canada;

(6) has passed an examination accepted or administered by the board; and

(7) has passed a Texas medical jurisprudence examination as determined by board rule.

SECTION 2. Section 155.004, Occupations Code, is amended to read as follows:

Sec. 155.004. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR GRADUATES OF CERTAIN FOREIGN MEDICAL SCHOOLS. A license applicant who is a graduate of a medical school that is located outside the United States and Canada must present proof satisfactory to the board that the applicant:

(1) is a graduate of a school whose curriculum meets the requirements for an unapproved medical school as determined by a committee of experts selected by the Texas Higher Education Coordinating Board;

(2) has successfully completed[~~:~~

[~~(A) at least three years of graduate medical training in the United States or Canada that was approved by the board; or~~]

TX_00003150
JA_003061

TX_00003150

USA_00017943

Case 2:13-cv-00193   Document 661-13   Filed on 11/11/14 in TXSD   Page 9 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-3   Filed 06/20/12   Page 45 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4025

[(B)] at least two years of graduate medical training in the United States or Canada that was approved by the board [and at least one year of graduate medical training outside the United States or Canada that was approved for advanced standing by a specialty board organization approved by the board];

(3) holds a valid certificate issued by the Educational Commission for Foreign Medical Graduates; and

(4) is able to communicate in English.

SECTION 3. Section 155.005(a), Occupations Code, is amended to read as follows:

(a) To be eligible for a license under this chapter, an applicant who has been a student of a foreign medical school must present proof satisfactory to the board that the applicant:

(1) meets the requirements of Section 155.003;

(2) has studied medicine in a medical school located outside the United States and Canada that is acceptable to the board;

(3) has completed all of the didactic work of the foreign medical school but has not graduated from the school;

(4) has attained a score satisfactory to a medical school in the United States approved by the Liaison Committee on Medical Education on a qualifying examination and has satisfactorily completed one academic year of supervised clinical training for foreign medical students, as defined by the American Medical Association Council on Medical Education (Fifth Pathway Program), under the direction of the medical school in the United States;

(5) has attained a passing score on the Educational Commission for Foreign Medical Graduates examination or another examination, if required by the board;

(6) has successfully completed at least two [three] years of graduate medical training in the United States or Canada that was approved by the board as of the date the training was completed; and

(7) has passed the license examination under Subchapter B required by the board of each applicant.

SECTION 4. The changes in law made by this Act to Sections 155.003, 155.004, and 155.005, Occupations Code, apply only to an application for a license to practice medicine submitted to the Texas Medical Board on or after the effective date of this Act. An application for a license submitted before that date is governed by the law in effect on the date the application was submitted, and the former law is continued in effect for that purpose.

SECTION 5. This Act takes effect September 1, 2011.

### HB 843 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Geren called up with senate amendments for consideration at this time,

**HB 843**, A bill to be entitled An Act relating to the use of electronic means for the delivery of ad valorem tax bills to certain property owners and agents.

TX_00003151
USA_00017944

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 10 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 46 of
4026    82nd LEGISLATURE — REGULAR SESSION

Representative Geren moved to concur in the senate amendments to **HB 843**.

The motion to concur in the senate amendments to **HB 843** prevailed by (Record 1118): 137 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Carter; Castro; Chisum; Christian; Cook; Craddick; Creighton; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, V.; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Callegari; Coleman; Crownover; Driver; Lewis; Morrison; Thompson.

### Senate Committee Substitute

**CSHB 843**, A bill to be entitled An Act relating to the use of electronic means for the delivery of ad valorem tax bills to certain property owners and agents.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 1.07(a), Tax Code, is amended to read as follows:

(a) An official or agency required by this title to deliver a notice to a property owner may deliver the notice by regular first-class mail, with postage prepaid, unless this section or another provision of this title requires or authorizes a different method of delivery or the parties agree that the notice must be delivered as provided by Section 1.085.

SECTION 2. Section 31.01, Tax Code, is amended by amending Subsections (a), (g), (i-1), and (j) and adding Subsections (k) and (l) to read as follows:

(a) Except as provided by Subsections (f), [and] (i-1), and (k), the assessor for each taxing unit shall prepare and mail a tax bill to each person in whose name the property is listed on the tax roll and to the person's authorized agent. The assessor shall mail tax bills by October 1 or as soon thereafter as practicable. The assessor shall mail to the state agency or institution the tax bill

TX_00003152
USA_00017945

for any taxable property owned by the agency or institution. The agency or institution shall pay the taxes from funds appropriated for payment of the taxes or, if there are none, from funds appropriated for the administration of the agency or institution. The exterior of the tax bill must show the return address of the taxing unit. If the assessor wants the United States Postal Service to return the tax bill if it is not deliverable as addressed, the exterior of the tax bill may contain, in all capital letters, the words "RETURN SERVICE REQUESTED," or another appropriate statement directing the United States Postal Service to return the tax bill if it is not deliverable as addressed.

(g) Except as provided by Subsection (f) [of this section], failure to send or receive the tax bill required by this section, including a tax bill that has been requested to be sent by electronic means under Subsection (k), does not affect the validity of the tax, penalty, or interest, the due date, the existence of a tax lien, or any procedure instituted to collect a tax.

(i-1) If an assessor mails a tax bill under Subsection (a) or delivers a tax bill by electronic means under Subsection (k) to a mortgagee of a property, the assessor is not required to mail or deliver by electronic means a copy of the bill to any mortgagor under the mortgage or to the mortgagor's authorized agent.

(j) If a tax bill is mailed under Subsection (a) or delivered by electronic means under Subsection (k) [of this section] to a mortgagee of a property, the mortgagee shall mail a copy of the bill to the owner of the property not more than 30 days following the mortgagee's receipt of the bill.

(k) The assessor for a taxing unit shall deliver a tax bill as required by this section by electronic means if on or before September 15 the individual or entity entitled to receive a tax bill under this section and the assessor enter into an agreement for delivery of a tax bill by electronic means. An assessor who delivers a tax bill electronically under this subsection is not required to mail the same bill under Subsection (a). An agreement entered into under this subsection:

    (1) must:

        (A) be in writing or in an electronic format;

        (B) be signed by the assessor and the individual or entity entitled to receive the tax bill under this section;

        (C) be in a format acceptable to the assessor;

        (D) specify the electronic means by which the tax bill is to be delivered; and

        (E) specify the e-mail address to which the tax bill is to be delivered; and

    (2) remains in effect for all subsequent tax bills until revoked by an authorized individual in a written revocation filed with the assessor.

(l) The comptroller may:

    (1) prescribe acceptable media, formats, content, and methods for the delivery of tax bills by electronic means under Subsection (k); and

    (2) provide a model form agreement.

SECTION 3. This Act takes effect January 1, 2012.

TX_00003153
JA_003064

## HB 2376 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Hamilton called up with senate amendments for consideration at this time,

**HB 2376**, A bill to be entitled An Act relating to the regulation of plumbing.

Representative Hamilton moved to concur in the senate amendments to **HB 2376**.

The motion to concur in the senate amendments to **HB 2376** prevailed by (Record 1119): 105 Yeas, 37 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Berman; Bohac; Bonnen; Branch; Burnam; Button; Castro; Christian; Coleman; Cook; Crownover; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Frullo; Gallego; Garza; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Hunter; Isaac; Jackson; Johnson; King, P.; King, S.; King, T.; Kleinschmidt; Kuempel; Larson; Laubenberg; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Morrison; Naishtat; Nash; Oliveira; Orr; Otto; Paxton; Peña; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Ritter; Rodriguez; Schwertner; Scott; Sheets; Shelton; Smith, T.; Smith, W.; Solomons; Strama; Thompson; Torres; Turner; Veasey; Villarreal; Vo; Walle; Woolley; Workman; Zerwas.

Nays — Aycock; Beck; Brown; Burkett; Cain; Callegari; Carter; Chisum; Craddick; Creighton; Darby; Davis, S.; Fletcher; Flynn; Geren; Gooden; Harper-Brown; Howard, C.; Keffer; Kolkhorst; Landtroop; Lavender; Legler; Miller, S.; Murphy; Parker; Patrick; Perry; Phillips; Riddle; Sheffield; Simpson; Taylor, V.; Truitt; Weber; White; Zedler.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Hughes; Lewis.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 1119. I intended to vote no.

Button

I was shown voting yes on Record No. 1119. I intended to vote no.

Frullo

I was shown voting yes on Record No. 1119. I intended to vote no.

Paxton

I was shown voting yes on Record No. 1119. I intended to vote no.

T. Smith

TX_00003154

USA_00017947

**Senate Committee Substitute**

**CSHB 2376**, A bill to be entitled An Act relating to the regulation of plumbing.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Sections 1301.002(9-a) and (11), Occupations Code, are amended to read as follows:

(9-a) "Responsible master plumber" means a person licensed as a master plumber under this chapter who:

(A) allows the person's master plumber license to be used by one plumbing company for the purpose of offering and performing plumbing work under the person's master plumber license;

(B) is authorized to obtain permits for plumbing work;

(C) assumes responsibility for plumbing work performed under the person's license; [and]

(D) has submitted a certificate of insurance as required by Section 1301.3576; and

(E) has completed a training program required by Section 1301.3576.

(11) "Water supply protection specialist" means a person who holds an endorsement issued by the board to engage in [the inspection, in connection with health and safety laws, including ordinances, of]:

(A) customer service inspections, as defined by rule of the Texas Commission on Environmental Quality [the plumbing of a public water system distribution facility]; and [or]

(B) the installation, service, and repair of plumbing associated with the use and distribution use of rainwater to supply a plumbing fixture, appliance, or irrigation system [customer-owned plumbing connected to the water distribution lines of a public water system].

SECTION 2. Section 1301.304, Occupations Code, is amended by adding Subsection (d) to read as follows:

(d) Unless a threat to health or safety exists, the board may choose to not investigate a complaint in which the person filing the complaint and the person who is the subject of the complaint are engaged in litigation related to the subject matter of the complaint until the outcome of the litigation is finally determined if the board determines the complaint process is being abused.

SECTION 3. Section 1301.3565, Occupations Code, is amended by adding Subsections (a-1) and (e-1) and amending Subsection (b) to read as follows:

(a-1) A person may not design a multipurpose residential fire protection sprinkler system for installation under this section unless the person:

(1) is licensed under this chapter as a master plumber; and

(2) holds an endorsement issued under this section.

(b) The board shall issue an endorsement as a multipurpose residential fire protection sprinkler specialist to a person who:

(1) holds the license described by Subsection (a);

(2) applies to the board on a form prescribed by the board;

(3) pays a fee set by the board;

TX_00003155
JA_003066

(4)  presents evidence satisfactory to the board of successful completion of a training program approved by the board that provides the training necessary for the proper design and installation of a multipurpose residential fire protection sprinkler system as required by the applicable codes and standards recognized by the state; and

(5)  passes an examination required by the board.

(e-1)  Notwithstanding any other law, a master plumber who holds an endorsement under this section is not required to hold a license or registration issued by another state agency in order to design a multipurpose residential fire protection sprinkler system for installation under this section.

SECTION 4.  Section 1301.3576, Occupations Code, is amended to read as follows:

Sec. 1301.3576.  CERTIFICATE OF INSURANCE AND TRAINING FOR RESPONSIBLE MASTER PLUMBER. Before a master plumber works as a responsible master plumber [When a person is issued a master plumber's license], the master plumber [person] must:

(1)  provide the board with a certificate of insurance that meets the requirements of Section 1301.552; and

(2)  present evidence satisfactory to the board of successful completion of a training program approved or administered by the board regarding the laws and rules applicable to the operation of a plumbing business in this state [before the person works as a responsible master plumber].

SECTION 5.  Section 1301.552, Occupations Code, is amended to read as follows:

Sec. 1301.552.  CERTIFICATE OF INSURANCE FOR PLUMBING PERMIT IN POLITICAL SUBDIVISION. A political subdivision that requires a responsible master plumber or an agent of a responsible master plumber [plumbing contractor] to obtain a permit before performing plumbing in the political subdivision shall verify through the board's Internet website, or by contacting the board by telephone, that the responsible master plumber [plumbing contractor] has on file with the board a certificate of insurance. The certificate of insurance must:

(1)  be written by an insurer authorized to engage in the [a company licensed to do] business of insurance in this state or an eligible surplus lines insurer, as defined by Section 981.002, Insurance Code;

(2)  provide for commercial general liability insurance for the responsible master plumber for a claim for property damage or bodily injury, regardless of whether the claim arises from negligence or on a contract; and

(3)  provide coverage of not less than $300,000 for all claims arising in a one-year period.

SECTION 6.  Section 1301.3565, Occupations Code, as amended by this Act, applies only to the installation of a multipurpose residential fire protection sprinkler system that is designed on or after the effective date of this Act.  The installation of a multipurpose residential fire protection sprinkler system that is

TX_00003156

USA_00017949

designed before the effective date of this Act is governed by the law in effect immediately preceding the effective date of this Act, and the former law is continued in effect for that purpose.

SECTION 7. Not later than December 31, 2011, the Texas State Board of Plumbing Examiners shall develop the curriculum and adopt rules for the approval or administration of the training program required by Section 1301.3576(2), Occupations Code, as added by this Act.

SECTION 8. Section 1301.3576, Occupations Code, as amended by this Act, does not apply to a master plumber who, on or before January 1, 2012, provides the Texas State Board of Plumbing Examiners with a certificate of insurance that meets the requirements of Section 1301.552, Occupations Code, as amended by this Act, and that is effective on January 1, 2012.

SECTION 9. Section 1301.552, Occupations Code, as amended by this Act, applies only to a permit issued on or after the effective date of this Act. A permit issued before the effective date of this Act is governed by the law in effect on the date the permit is issued, and the former law is continued in effect for that purpose.

SECTION 10. This Act takes effect September 1, 2011.

(Speaker in the chair)

## HB 1405 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Hardcastle called up with senate amendments for consideration at this time,

**HB 1405**, A bill to be entitled An Act relating to provision by a health benefit plan of prescription drug coverage specified by formulary.

Representative Hardcastle moved to concur in the senate amendments to **HB 1405**.

The motion to concur in the senate amendments to **HB 1405** prevailed by (Record 1120): 142 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton;

TX_00003157

USA_00017950

Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Coleman; Driver; Lyne.

**Senate Committee Substitute**

CSHB 1405, A bill to be entitled An Act relating to provision by a health benefit plan of prescription drug coverage specified by formulary and to modifications of that coverage.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 1369.051(2), Insurance Code, is amended to read as follows:

(2) "Enrollee" means an individual who is covered under a [group] health benefit plan, including a covered dependent.

SECTION 2. Section 1369.052, Insurance Code, is amended to read as follows:

Sec. 1369.052. APPLICABILITY OF SUBCHAPTER. This subchapter applies only to a [group] health benefit plan that provides benefits for medical or surgical expenses incurred as a result of a health condition, accident, or sickness, including an individual, [a] group, blanket, or franchise insurance policy or insurance agreement, a group hospital service contract, or a small or large employer group contract or similar coverage document that is offered by:

(1) an insurance company;

(2) a group hospital service corporation operating under Chapter 842;

(3) a fraternal benefit society operating under Chapter 885;

(4) a stipulated premium company operating under Chapter 884;

(5) a reciprocal exchange operating under Chapter 942;

(6) a health maintenance organization operating under Chapter 843;

(7) a multiple employer welfare arrangement that holds a certificate of authority under Chapter 846; or

(8) an approved nonprofit health corporation that holds a certificate of authority under Chapter 844.

SECTION 3. Section 1369.053, Insurance Code, is amended to read as follows:

Sec. 1369.053. EXCEPTION. This subchapter does not apply to:

(1) a health benefit plan that provides coverage:

(A) only for a specified disease or for another single benefit;

(B) only for accidental death or dismemberment;

(C) for wages or payments in lieu of wages for a period during which an employee is absent from work because of sickness or injury;

(D) as a supplement to a liability insurance policy;

(E) for credit insurance;

(F) only for dental or vision care;

TX_00003158

USA_00017951

Case 2:13-cv-00193  Document 661-13  Filed on 11/11/14 in TXSD  Page 17 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 53 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4033

    (G) only for hospital expenses; or

    (H) only for indemnity for hospital confinement;

  (2) [a small employer health benefit plan written under Chapter 1501;

  [(3)] a Medicare supplemental policy as defined by Section 1882(g)(1), Social Security Act (42 U.S.C. Section 1395ss), as amended;

  (3) [(4)] a workers' compensation insurance policy;

  (4) [(5)] medical payment insurance coverage provided under a motor vehicle insurance policy; [or]

  (5) [(6)] a long-term care insurance policy, including a nursing home fixed indemnity policy, unless the commissioner determines that the policy provides benefit coverage so comprehensive that the policy is a health benefit plan as described by Section 1369.052;

  (6) the child health plan program under Chapter 62, Health and Safety Code, or the health benefits plan for children under Chapter 63, Health and Safety Code; or

  (7) a Medicaid managed care program operated under Chapter 533, Government Code, or a Medicaid program operated under Chapter 32, Human Resources Code.

  SECTION 4. Section 1369.054, Insurance Code, is amended to read as follows:

  Sec. 1369.054. NOTICE AND DISCLOSURE OF CERTAIN INFORMATION REQUIRED. An issuer of a [group] health benefit plan that covers prescription drugs and uses one or more drug formularies to specify the prescription drugs covered under the plan shall:

  (1) provide in plain language in the coverage documentation provided to each enrollee:

    (A) notice that the plan uses one or more drug formularies;

    (B) an explanation of what a drug formulary is;

    (C) a statement regarding the method the issuer uses to determine the prescription drugs to be included in or excluded from a drug formulary;

    (D) a statement of how often the issuer reviews the contents of each drug formulary; and

    (E) notice that an enrollee may contact the issuer to determine whether a specific drug is included in a particular drug formulary;

  (2) disclose to an individual on request, not later than the third business day after the date of the request, whether a specific drug is included in a particular drug formulary; and

  (3) notify an enrollee and any other individual who requests information under this section that the inclusion of a drug in a drug formulary does not guarantee that an enrollee's health care provider will prescribe that drug for a particular medical condition or mental illness.

  SECTION 5. Subchapter B, Chapter 1369, Insurance Code, is amended by adding Section 1369.0541 to read as follows:

  Sec. 1369.0541. MODIFICATION OF DRUG COVERAGE UNDER PLAN. (a) A health benefit plan issuer may modify drug coverage provided under a health benefit plan if:

TX_00003159

USA_00017952

(1) the modification occurs at the time of coverage renewal;

(2) the modification is effective uniformly among all group health benefit plan sponsors covered by identical or substantially identical health benefit plans or all individuals covered by identical or substantially identical individual health benefit plans, as applicable; and

(3) not later than the 60th day before the date the modification is effective, the issuer provides written notice of the modification to the commissioner, each affected group health benefit plan sponsor, each affected enrollee in an affected group health benefit plan, and each affected individual health benefit plan holder.

(b) Modifications affecting drug coverage that require notice under Subsection (a) include:

(1) removing a drug from a formulary;

(2) adding a requirement that an enrollee receive prior authorization for a drug;

(3) imposing or altering a quantity limit for a drug;

(4) imposing a step-therapy restriction for a drug; and

(5) moving a drug to a higher cost-sharing tier unless a generic drug alternative to the drug is available.

(c) A health benefit plan issuer may elect to offer an enrollee in the plan the option of receiving notifications required by this section by e-mail.

SECTION 6. Section 1369.055, Insurance Code, is amended to read as follows:

Sec. 1369.055. CONTINUATION OF COVERAGE REQUIRED; OTHER DRUGS NOT PRECLUDED. (a) An issuer of a [group] health benefit plan that covers prescription drugs shall offer to each enrollee at the contracted benefit level and until the enrollee's plan renewal date any prescription drug that was approved or covered under the plan for a medical condition or mental illness, regardless of whether the drug has been removed from the health benefit plan's drug formulary before the plan renewal date.

(b) This section does not prohibit a physician or other health professional who is authorized to prescribe a drug from prescribing a drug that is an alternative to a drug for which continuation of coverage is required under Subsection (a) if the alternative drug is:

(1) covered under the [group] health benefit plan; and

(2) medically appropriate for the enrollee.

SECTION 7. Section 1369.056(a), Insurance Code, is amended to read as follows:

(a) The refusal of a [group] health benefit plan issuer to provide benefits to an enrollee for a prescription drug is an adverse determination for purposes of Section 4201.002 if:

(1) the drug is not included in a drug formulary used by the [group] health benefit plan; and

(2) the enrollee's physician has determined that the drug is medically necessary.

TX_00003160
JA_003071

TX_00003160

USA_00017953

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 19 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 55 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 4055

SECTION 8. Section 1501.108(d), Insurance Code, is amended to read as follows:

(d) Notwithstanding Subsection (a), a small or large employer health benefit plan issuer may modify a small or large employer health benefit plan in accordance with Section 1369.0541 or if:

(1) the modification occurs at the time of coverage renewal;

(2) the modification is effective uniformly among all small or large employers covered by that health benefit plan; and

(3) the issuer notifies the commissioner and each affected covered small or large employer of the modification not later than the 60th day before the date the modification is effective.

SECTION 9. The change in law made by this Act applies only to a health benefit plan delivered, issued for delivery, or renewed on or after January 1, 2012. A health benefit plan delivered, issued for delivery, or renewed before January 1, 2012, is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.

SECTION 10. This Act takes effect September 1, 2011.

### HB 2360 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Schwertner called up with senate amendments for consideration at this time,

**HB 2360**, A bill to be entitled An Act relating to the creation of the Corn Hill Regional Water Authority; providing authority to issue bonds.

Representative Schwertner moved to concur in the senate amendments to **HB 2360**.

The motion to concur in the senate amendments to **HB 2360** prevailed by (Record 1121): 131 Yeas, 2 Nays, 1 Present, not voting.

Yeas — Aliseda; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Carter; Castro; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hopson; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Thompson; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zerwas.

TX_00003161

USA_00017954

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 20 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 56 of
4636          82nd LEGISLATURE — REGULAR SESSION

Nays — Hochberg; Zedler.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Allen; Callegari; Coleman; Deshotel; Frullo; Howard, C.; Naishtat; Oliveira; Peña; Rodriguez; Taylor, V.; Torres.

### STATEMENT OF VOTE

When Record No. 1121 was taken, I was in the house but away from my desk. I would have voted yes.

Torres

### Senate Amendment No. 1 (Senate Floor Amendment No. 1)

Amend HB 2360 (senate committee printing) as follows:

(1) In SECTION 1 of the bill, in added Section 8364.102, Special District Local Laws Code (page 2, line 40), strike "the powers and duties necessary to accomplish the purposes" and substitute "only the powers and duties necessary to accomplish the purposes stated under Section 8364.004".

(2) In SECTION 1 of the bill, strike added Section 8364.103, Special District Local Laws Code (page 2, lines 42-46), and substitute the following:

Sec. 8364.103. MUNICIPAL UTILITY DISTRICT POWERS AND DUTIES; LIMITATIONS. (a) Except as provided by Subsections (b) and (c), the authority has the powers and duties provided by the general law of this state, including Chapters 49 and 54, Water Code, applicable to municipal utility districts created under Section 59, Article XVI, Texas Constitution.

(b) The authority may not provide wastewater, drainage, solid waste disposal, or road facilities or services.

(c) The authority does not have any power that the member entities do not have.

### HB 1061 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Otto called up with senate amendments for consideration at this time,

HB 1061, A bill to be entitled An Act relating to the expiration of certain investment authority of the Teacher Retirement System of Texas.

Representative Otto moved to concur in the senate amendments to HB 1061.

The motion to concur in the senate amendments to HB 1061 prevailed by (Record 1122): 141 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen;

TX_00003162

USA_00017955

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 21 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 57 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4037

Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C); Howard, C.

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Mallory Caraway; Torres.

### STATEMENT OF VOTE

When Record No. 1122 was taken, I was in the house but away from my desk. I would have voted yes.

Torres

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **HB 1061** (senate committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS accordingly:

SECTION ____. Section 825.3012, Government Code, is amended by adding Subsection (b-1) to read as follows:

(b-1)  Notwithstanding Subsection (b) of this section and any provision of Section 825.301, before September 1, 2019, not more than 10 percent of the value of the total investment portfolio of the retirement system may be invested in hedge funds. This subsection expires September 1, 2019.

### HB 563 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Pickett called up with senate amendments for consideration at this time,

**HB 563**, A bill to be entitled An Act relating to the purposes and designation of a transportation reinvestment zone.

Representative Pickett moved to concur in the senate amendments to **HB 563**.

The motion to concur in the senate amendments to **HB 563** prevailed by (Record 1123): 143 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton;

TX_00003163
USA_00017956

Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes;
Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego;
Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen;
Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett;
Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.;
Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.;
Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender;
Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo;
Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.;
Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker;
Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond;
Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield;
Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor,
V.; Thompson; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White;
Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C); Carter.

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Torres.

### STATEMENT OF VOTE

When Record No. 1123 was taken, I was in the house but away from my
desk. I would have voted yes.

Torres

**Senate Committee Substitute**

**CSHB 563**, A bill to be entitled An Act relating to the purposes and
designation of a transportation reinvestment zone.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 222.105, Transportation Code, is amended to read as
follows:

Sec. 222.105. PURPOSES. The purposes of Sections 222.106 and 222.107
are to:

(1) promote public safety;

(2) facilitate the improvement, development, or redevelopment of
property;

(3) facilitate the movement of traffic; and

(4) enhance a local entity's ability to sponsor a transportation project
authorized under Section 222.104.

SECTION 2. Section 222.106, Transportation Code, is amended by
amending Subsections (b), (c), (g), (h), (i), (j), (k), and (l) and adding Subsections
(i-1) and (i-2) to read as follows:

(b) This section applies only to a municipality in which a transportation
project is to be developed [the governing body of which intends to enter into an
agreement with the department] under Section 222.104.

TX_00003164
JA_003075

TX_00003164

USA_00017957

Case 2:13-cv-00193  Document 661-13  Filed on 11/11/14 in TXSD  Page 23 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 59 of
Monday, May 16, 2011        HOUSE JOURNAL — 77th Day        4039

(c) If the governing body determines an area to be unproductive and underdeveloped and that action under this section will further the purposes stated in Section 222.105, the governing body of the municipality by ordinance may designate a contiguous geographic area in the jurisdiction of the municipality to be a transportation reinvestment zone to promote a transportation project [described by Section 222.104 that cultivates development or redevelopment of the area].

(g) The ordinance designating an area as a transportation reinvestment zone must:

(1) describe the boundaries of the zone with sufficient definiteness to identify with ordinary and reasonable certainty the territory included in the zone;

(2) provide that the zone takes effect immediately on passage of the ordinance and that the base year shall be the year of passage of the ordinance or some year in the future;

(3) assign a name to the zone for identification, with the first zone designated by a municipality designated as "Transportation Reinvestment Zone Number One, (City or Town, as applicable) of (name of municipality)," and subsequently designated zones assigned names in the same form, numbered consecutively in the order of their designation;

(4) designate the base year for purposes of establishing the tax increment base of the municipality;

(5) establish a [an ad valorem] tax increment account for the zone; and

(6) [(5)] contain findings that promotion of the transportation project will cultivate the improvement, development, or redevelopment of the zone.

(h) From taxes collected on property in a zone, the municipality shall pay into the tax increment account for the zone [an amount equal to] the tax increment produced by the municipality, less any amount allocated under previous agreements, including agreements under Chapter 380, Local Government Code, or Chapter 311, Tax Code.

(i) All or the portion specified by the municipality of the money deposited to a tax increment account must be used to fund the transportation project for which the zone was designated, as well as aesthetic improvements within the zone. Any remaining money deposited to the tax increment account may be used for other purposes as determined by the municipality [Money deposited to a tax increment account must be used to fund projects authorized under Section 222.104, including the repayment of amounts owed under an agreement entered into under that section].

(i-1) The governing body of a municipality may contract with a public or private entity to develop, redevelop, or improve a transportation project in a transportation reinvestment zone and may pledge and assign all or a specified amount of money in the tax increment account to that entity. After a pledge or assignment is made, if the entity that received the pledge or assignment has itself pledged or assigned that amount to secure bonds or other obligations issued to obtain funding for the transportation project, the governing body of the municipality may not rescind its pledge or assignment until the bonds or other obligations secured by the pledge or assignment have been paid or discharged.

TX_00003165
JA_003076

TX_00003165

USA_00017958

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 24 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 60 of
4040          82nd LEGISLATURE — REGULAR SESSION

(i-2) To accommodate changes in the limits of the project for which a reinvestment zone was designated, the boundaries of a zone may be amended at any time, except that property may not be removed or excluded from a designated zone if any part of the tax increment account has been assigned or pledged directly by the municipality or through another entity to secure bonds or other obligations issued to obtain funding of the project, and property may not be added to a designated zone unless the governing body of the municipality complies with Subsections (e) and (g).

(j) Except as provided by Subsections (i-1) and [Subsection] (k), a transportation reinvestment zone terminates on December 31 of the year in which the municipality completes [complies with] a contractual requirement, if any, that included the pledge or assignment of all or a portion of money deposited to a tax increment account or the repayment of money owed under an [the] agreement for development, redevelopment, or improvement of the project for [under Section 222.104 in connection with] which the zone was designated.

(k) A transportation reinvestment zone terminates on December 31 of the 10th year after the year the zone was designated, if before that date the municipality has not entered into a contract described in Subsection (i-1) or otherwise not used the zone for the purpose for which it was designated.

(l) Any surplus remaining in a tax increment account on termination of a zone may be used for other purposes as determined by [transportation projects of] the municipality [in or outside of the zone].

SECTION 3. The heading to Section 222.107, Transportation Code, is amended to read as follows:

Sec. 222.107. COUNTY TRANSPORTATION REINVESTMENT ZONES[; TAX ABATEMENTS; ROAD UTILITY DISTRICTS].

SECTION 4. Section 222.107, Transportation Code, is amended by amending Subsections (b), (c), (e), (f), (h), (i), (k), and (l) and adding Subsections (h-1) and (k-1) to read as follows:

(b) This section applies only to a county in which a transportation project is to be developed [the commissioners court of which intends to enter into a pass-through toll agreement with the department] under Section 222.104.

(c) The commissioners court of the county, after determining that an area is unproductive and underdeveloped and that action under this section would further the purposes described by Section 222.105, by order or resolution may designate a contiguous geographic area in the jurisdiction of the county to be a transportation reinvestment zone to promote a transportation project [described by Section 222.104 that cultivates development or redevelopment of the area] and for the purpose of abating ad valorem taxes or granting other relief from taxes imposed by the county on real property located in the zone.

(e) Not later than the 30th day before the date the commissioners court proposes to designate an area as a transportation reinvestment zone under this section, the commissioners court must hold a public hearing on the creation of the zone, its benefits to the county and to property in the proposed zone, and the abatement of ad valorem taxes or the grant of other relief from ad valorem taxes imposed by the county on real property located in the zone. At the hearing an

TX_00003166
JA_003077

TX_00003166
USA_00017959

Case 2:13-cv-00193   Document 661-13   Filed on 11/11/14 in TXSD   Page 25 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-3   Filed 06/20/12   Page 61 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day                 4041

interested person may speak for or against the designation of the zone, its boundaries, or the abatement of or the relief from county taxes on real property in the zone. Not later than the seventh day before the date of the hearing, notice of the hearing and the intent to create a zone must be published in a newspaper having general circulation in the county.

(f) The order or resolution designating an area as a transportation reinvestment zone must:

(1) describe the boundaries of the zone with sufficient definiteness to identify with ordinary and reasonable certainty the territory included in the zone;

(2) provide that the zone takes effect immediately on adoption of the order or resolution and that the base year shall be the year of passage of the order or resolution or some year in the future; [and]

(3) assign a name to the zone for identification, with the first zone designated by a county designated as "Transportation Reinvestment Zone Number One, County of (name of county)," and subsequently designated zones assigned names in the same form numbered consecutively in the order of their designation; and

(4) designate the base year for purposes of establishing the tax increment base of the county.

(h) The commissioners court by order or resolution may enter into an agreement with the owner of any real property located in the transportation reinvestment zone to abate all or a portion of the ad valorem taxes or to grant other relief from the taxes imposed by the county on the owner's property in an amount not to exceed the amount calculated under Subsection (a)(1) for that year. All abatements or other relief granted by the commissioners court in a transportation reinvestment zone must be equal in rate. In the alternative, the commissioners court by order or resolution may elect to abate a portion of the ad valorem taxes or otherwise grant relief from the taxes imposed by the county on all real property located in the zone. In any ad valorem tax year, the total amount of the taxes abated or the total amount of relief granted under this section may not exceed the amount calculated under Subsection (a)(1) for that year, less any amounts allocated under previous agreements, including agreements under Chapter 381, Local Government Code, or Chapter 312, Tax Code.

(h-1) To further the development of the transportation project for which the transportation reinvestment zone was designated, a county may assess all or part of the cost of the transportation project against property within the zone. The assessment against each property in the zone may be levied and payable in installments in the same manner as provided by Sections 372.016-372.018, Local Government Code, provided that the installments do not exceed the total amount of the tax abatement or other relief granted under Subsection (h). The county may elect to adopt and apply the provisions of Sections 372.015-372.020 and 372.023, Local Government Code, to the assessment of costs and Sections 372.024-372.030, Local Government Code, to the issuance of bonds by the county to pay the cost of a transportation project. The commissioners court of the county may contract with a public or private entity to develop, redevelop, or improve a transportation project in the transportation reinvestment zone,

TX_00003167

USA_00017960

including aesthetic improvements, and may pledge and assign to that entity all or a specified amount of the revenue the county receives from installment payments of the assessments for the payment of the costs of that transportation project. After a pledge or assignment is made, if the entity that received the pledge or assignment has itself pledged or assigned that amount to secure bonds or other obligations issued to obtain funding for the transportation project, the commissioners court of the county may not rescind its pledge or assignment until the bonds or other obligations secured by the pledge or assignment have been paid or discharged.  Any amount received from installment payments of the assessments not pledged or assigned in connection with the transportation project may be used for other purposes associated with the transportation project or in the zone.

(i)  In the alternative, to [To] assist the county in developing a transportation project [authorized under Section 222.104], if authorized by the commission under Chapter 441, a road utility district may be formed under that chapter that has the same boundaries as a transportation reinvestment zone created under this section.

(k)  A road utility district formed as provided by Subsection (i) may enter into an agreement [with the county to assume the obligation, if any, of the county] to fund development of a project [under Section 222.104] or to repay funds owed to the department [under Section 222.104].  Any amount paid for this purpose is considered to be an operating expense of the district.  Any taxes collected by the district that are not paid for this purpose may be used for any district purpose.

(k-1)  To accommodate changes in the limits of the project for which a reinvestment zone was designated, the boundaries of a zone may be amended at any time, except that property may not be removed or excluded from a designated zone if any part of the assessment has been assigned or pledged directly by the county or through another entity to secure bonds or other obligations issued to obtain funding of the project, and property may not be added to a designated zone unless the commissioners court of the county complies with Subsections (e) and (f).

(l)  Except as provided by Subsection (m), a tax abatement agreement entered into under Subsection (h), or an order or resolution on the abatement of taxes or the grant of relief from taxes under that subsection, terminates on December 31 of the year in which the county completes any contractual requirement that included the pledge or assignment of assessments [of money] collected under this section.

SECTION 5.  Subchapter E, Chapter 222, Transportation Code, is amended by adding Sections 222.108, 222.109, and 222.110 to read as follows:

Sec. 222.108.  TRANSPORTATION REINVESTMENT ZONES FOR OTHER TRANSPORTATION PROJECTS. (a)  Notwithstanding the requirement in Sections 222.106(b) and 222.107(b) that a transportation reinvestment zone be established in connection with a project under Section 222.104, a municipality or county may establish a transportation reinvestment zone for any transportation project. If all or part of the transportation project is subject to oversight by the department, at the option of the governing body of the municipality or county, the

TX_00003168

USA_00017961

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 27 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 63 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 4043

department, to the extent permitted by law, shall delegate full responsibility for the development, design, letting of bids, and construction of the project, including project inspection, to the municipality or county. After assuming responsibility for a project under this subsection, a municipality or county shall enter into an agreement with the department that prescribes:

   (1) the development process;

   (2) the roles and responsibilities of the parties; and

   (3) the timelines for any required reviews or approvals.

 (b) Any portion of a transportation project developed under Subsection (a) that is on the state highway system or is located in the state highway right-of-way must comply with applicable state and federal requirements and criteria for project development, design, and construction, unless the department grants an exception to the municipality or county.

 (c) The development, design, and construction plans and specifications for the portions of a project described by Subsection (b) must be reviewed and approved by the department under the agreement entered into under Subsection (a).

 (d) In this section, "transportation project" has the meaning assigned by Section 370.003.

 Sec. 222.109. REDUCTION PROHIBITED. (a) A municipality or county may not be penalized with a reduction in traditional transportation funding because of the designation and use of a transportation reinvestment zone under this chapter. Any funding from the department committed to a project before the date that a transportation reinvestment zone is designated may not be reduced because the transportation reinvestment zone is designated in connection with that project.

 (b) The department may not reduce any allocation of traditional transportation funding to any of its districts because a district contains a municipality or county that contains a transportation reinvestment zone designated under this chapter.

 Sec. 222.110. SALES TAX INCREMENT. (a) In this section, "sales tax base" for a transportation reinvestment zone means the amount of sales and use taxes imposed by a municipality under Section 321.101(a), Tax Code, or by a county under Chapter 323, Tax Code, as applicable, attributable to the zone for the year in which the zone was designated under this chapter.

 (b) The governing body of a municipality or county may determine, in an ordinance or order designating an area as a transportation reinvestment zone or in an ordinance or order adopted subsequent to the designation of a zone, the portion or amount of tax increment generated from the sales and use taxes imposed by a municipality under Section 321.101(a), Tax Code, or by a county under Chapter 323, Tax Code, attributable to the zone, above the sales tax base, to be used as provided by Subsection (e). Nothing in this section requires a municipality or county to contribute sales tax increment under this subsection.

TX_00003169

USA_00017962

(c) A county that designates a portion or amount of sales tax increment under Subsection (b) must establish a tax increment account. A municipality or county shall deposit the designated portion or amount of tax increment under Subsection (b) to the entity's respective tax increment account.

(d) Before pledging or otherwise committing money in the tax increment account under Subsection (c), the governing body of a municipality or county may enter into an agreement, under Subchapter E, Chapter 271, Local Government Code, to authorize and direct the comptroller to:

(1) withhold from any payment to which the municipality or county may be entitled the amount of the payment into the tax increment account under Subsection (b);

(2) deposit that amount into the tax increment account; and

(3) continue withholding and making additional payments into the tax increment account until an amount sufficient to satisfy the amount due has been met.

(e) The sales and use taxes to be deposited into the tax increment account under this section may be disbursed from the account only to:

(1) pay for projects authorized under Section 222.104, including the repayment of amounts owed under an agreement entered into under that section; and

(2) notwithstanding Sections 321.506 and 323.505, Tax Code, satisfy claims of holders of tax increment bonds, notes, or other obligations issued or incurred for projects authorized under Section 222.104.

(f) The amount deposited by a county to a tax increment account under this section is not considered to be sales and use tax revenue for the purpose of property tax reduction and computation of the county tax rate under Section 26.041, Tax Code.

SECTION 6. Sections 222.106(h), (i), (j), (k), and (l) and 222.107(h), (i), (k), and (l), Transportation Code, as amended by this Act, and Sections 222.106(i-1) and (i-2), 222.107(h-1) and (k-1), 222.108, and 222.109, Transportation Code, as added by this Act, apply to a transportation reinvestment zone that is governed by those sections designated before the effective date of this Act.

SECTION 7. This Act takes effect September 1, 2011.

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **CSHB 563** (senate committee report) in SECTION 5 of the bill, after added Section 222.110(f), Transportation Code (page 5, between lines 63 and 64), by adding the following:

(g) Not later than the 30th day before the date the governing body of a municipality or county proposes to designate a portion or amount of sales tax increment under Subsection (b), the governing body shall hold a public hearing on the designation of the sales tax increment. At the hearing an interested person may speak for or against the designation of the sales tax increment. Not later than the seventh day before the date of the hearing, notice of the hearing must be published in a newspaper having general circulation in the county or municipality, as appropriate.

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 29 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 65 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 4045

(h) The hearing required under Subsection (g) may be held in conjunction with a hearing held under Section 222.106(e) or 222.107(e) if the ordinance or order designating an area as a transportation reinvestment zone under Section 222.106 or 222.107 also designates a sales tax increment under Subsection (b).

## HB 1829 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Naishtat called up with senate amendments for consideration at this time,

**HB 1829**, A bill to be entitled An Act relating to the transfer to a mental hospital of a person admitted to a facility for emergency detention.

Representative Naishtat moved to concur in the senate amendments to **HB 1829**.

The motion to concur in the senate amendments to **HB 1829** prevailed by (Record 1124): 141 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Elkins; Morrison; Taylor, L.

### STATEMENT OF VOTE

When Record No. 1124 was taken, I was in the house but away from my desk. I would have voted yes.

L. Taylor

TX_00003171
JA_003082

TX_00003171
USA_00017964

**Senate Committee Substitute**

**CSHB 1829,** A bill entitled to be An Act relating to an application for emergency detention and to the transfer to a mental hospital of a person admitted for emergency detention.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 573.012, Health and Safety Code, is amended by adding Subsection (h-1) to read as follows:

(h-1) After the presentation of an application under Subsection (h), the judge or magistrate may transmit a warrant to the applicant electronically, if a digital signature, as defined by Article 2.26, Code of Criminal Procedure, is transmitted with the document.

SECTION 2. Section 573.022, Health and Safety Code, is amended by adding Subsection (c) to read as follows:

(c) A facility that has admitted a person for emergency detention under Subsection (a) or to which a person has been transported under Subsection (b) may transfer the person to an appropriate mental hospital with the written consent of the hospital administrator.

SECTION 3. This Act takes effect September 1, 2011.

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **CSHB 1829** (senate committee printing) by striking SECTION 1 of the bill and substituting the following:

SECTION 1. Section 573.012, Health and Safety Code, is amended by amending Subsection (h) and adding Subsection (h-1) to read as follows:

(h) A judge or magistrate may permit an applicant who is a physician to present an application by:

(1) e-mail with the application attached as a secure document in a portable document format (PDF); or

(2) secure electronic means, including:

(A) satellite transmission;

(B) [,] closed-circuit television transmission;[,] or

(C) any other method of two-way electronic communication that:

(i) [(1)] is secure;

(ii) [(2)] is available to the judge or magistrate; and

(iii) [(3)] provides for a simultaneous, compressed full-motion video and interactive communication of image and sound between the judge or magistrate and the applicant.

(h-1) After the presentation of an application under Subsection (h), the judge or magistrate may transmit a warrant to the applicant:

(1) electronically, if a digital signature, as defined by Article 2.26, Code of Criminal Procedure, is transmitted with the document; or

(2) by e-mail with the warrant attached as a secure document in a portable document format (PDF), if the identifiable legal signature of the judge or magistrate is transmitted with the document.

TX_00003172
JA_003083

TX_00003172

USA_00017965

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 31 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 67 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4047

## HB 3487 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative V. Taylor called up with senate amendments for consideration at this time,

**HB 3487**, A bill to be entitled An Act relating to regulations concerning certain service animals; providing a criminal penalty.

Representative V. Taylor moved to concur in the senate amendments to **HB 3487**.

The motion to concur in the senate amendments to **HB 3487** prevailed by (Record 1125): 143 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Torres.

### STATEMENT OF VOTE

When Record No. 1125 was taken, I was in the house but away from my desk. I would have voted yes.

Torres

### Senate Amendment No. 1 (Senate Floor Amendment No. 1)

Amend **HB 3487** (senate committee printing) in SECTION 1 of the bill by striking added Section 106.004, Business & Commerce Code (page 2, lines 3-7), and substituting the following:

Sec. 106.004. CIVIL PENALTY. The owner or operator of a commercial lodging establishment or restaurant that violates Section 106.002 is liable for a civil penalty in an amount not to exceed $200 for each violation.

## HB 848 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Guillen called up with senate amendments for consideration at this time,

**HB 848**, A bill to be entitled An Act relating to an agreement authorizing certain persons to make decisions regarding a child during an investigation of child abuse or neglect.

Representative Guillen moved to concur in the senate amendments to **HB 848**.

The motion to concur in the senate amendments to **HB 848** prevailed by (Record 1126): 143 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C); Dutton.

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian.

### Senate Committee Substitute

**CSHB 848**, A bill to be entitled An Act relating to an agreement authorizing certain persons to make decisions regarding a child during an investigation of child abuse or neglect.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 34.001, Family Code, is amended to read as follows:

Sec. 34.001. APPLICABILITY. This chapter applies only to:

(1) an authorization agreement between a parent of a child and a person who is the child's:

(A) [(1)] grandparent;

(B) [(2)] adult sibling; or

TX_00003174

USA_00017967

Case 2:13-cv-00193  Document 661-13  Filed on 11/11/14 in TXSD  Page 33 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-3   Filed 06/20/12   Page 69 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4049

    (C) [(3)] adult aunt or uncle; and
    (2) an authorization agreement between a parent of a child and the person with whom the child is placed under a parental child safety placement agreement.

SECTION 2. Chapter 34, Family Code, is amended by adding Section 34.0021 to read as follows:

    Sec. 34.0021. AUTHORIZATION AGREEMENT BY PARENT IN CHILD PROTECTIVE SERVICES CASE. A parent may enter into an authorization agreement with a relative or other person with whom a child is placed under a parental child safety placement agreement approved by the Department of Family and Protective Services to allow the person to perform the acts described by Section 34.002(a) with regard to the child:

    (1) during an investigation of abuse or neglect; or
    (2) while the department is providing services to the parent.

SECTION 3. This Act takes effect September 1, 2011.

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **CSHB 848** (senate committee printing) by adding new SECTION 2 (page one, between lines 24 and 25) to read as follows and renumbering subsequent SECTIONS appropriately:

SECTION 2. Subsection (c), Section 34.002, Family Code, is amended to read as follows:

    (c) An authorization agreement under this chapter does not confer on a relative of the child listed in Section 34.001 or a relative or other person with whom the child is placed under a child safety placement agreement the right to authorize the performance of an abortion on the child or the administration of emergency contraception to the child.

**HR 2020 - ADOPTED**
**(by Harless)**

The following privileged resolution was laid before the house:

**HR 2020**

BE IT RESOLVED by the House of Representatives of the State of Texas, 82nd Legislature, Regular Session, 2011, That House Rule 13, Section 9(a), be suspended in part as provided by House Rule 13, Section 9(f), to enable the conference committee appointed to resolve the differences on **SB 14** (requirements to vote, including presenting proof of identification; providing criminal penalties), to consider and take action on the following matters:

(1) House Rule 13, Section 9(a)(1), is suspended to permit the committee to change text not in disagreement in proposed SECTION 11 of the bill, in added Section 63.0012(a), Election Code, to read as follows:

    (a) An election officer shall distribute written notice of the identification that will be required for voting beginning with elections held after January 1, 2012, and information on obtaining identification without a fee under Chapter

TX_00003175

USA_00017968

521A, Transportation Code, to each voter who, when offering to vote, presents a form of identification that will not be sufficient for acceptance as a voter under this chapter beginning with those elections.

Explanation: This change is necessary to update the cross-reference to reflect the addition of Chapter 521A, Transportation Code.

(2) House Rule 13, Section 9(a)(1), is suspended to permit the committee to change text not in disagreement in proposed SECTION 14 of the bill, in amended Section 63.0101(1), Election Code, to read as follows:

(1) a driver's license, election identification certificate, or personal identification card issued to the person by the Department of Public Safety that has not [or a similar document issued to the person by an agency of another state, regardless of whether the license or card has] expired or that expired no earlier than 60 days before the date of presentation;

Explanation: This change is necessary to update the list of acceptable forms of identification to reflect the addition of election identification certificates in Chapter 521A, Transportation Code.

(3) House Rule 13, Section 9(a)(1), is suspended to permit the committee to change text not in disagreement in proposed SECTION 17 of the bill, in added Section 65.054(b)(2)(B), Election Code, to read as follows:

(B) notwithstanding Chapter 110, Civil Practice and Remedies Code, executes an affidavit under penalty of perjury that states the voter has a religious objection to being photographed and the voter has consistently refused to be photographed for any governmental purpose from the time the voter has held this belief; or

Explanation: This change is necessary to clarify the religious objection exception to the requirement that a voter have photo identification to vote.

(4) House Rule 13, Section 9(a)(1), is suspended to permit the committee to change text not in disagreement in proposed SECTION 18 of the bill, in added Section 65.0541(a), Election Code, to read as follows:

(a) A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election:

(1) present a form of identification described by Section 63.0101 to the voter registrar for examination; or

(2) execute an affidavit described by Section 65.054(b)(2)(B) or (C) in the presence of the voter registrar.

Explanation: This change is necessary to update the cross-reference to reflect the addition of Section 65.054(b)(2)(C), Election Code.

(5) House Rule 13, Section 9(a)(4), is suspended to permit the committee to add text on a matter not included in either version of the bill by adding the following new SECTION to the bill:

SECTION 20. Subtitle B, Title 7, Transportation Code, is amended by adding Chapter 521A to read as follows:

TX_00003176

USA_00017969

Case 2:13-cv-00193  Document 661-13  Filed on 11/11/14 in TXSD  Page 35 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 71 of
Monday, May 16, 2011        HOUSE JOURNAL — 77th Day        4051

## CHAPTER 521A. ELECTION IDENTIFICATION CERTIFICATE

Sec. 521A.001. ELECTION IDENTIFICATION CERTIFICATE. (a) The department shall issue an election identification certificate to a person who states that the person is obtaining the certificate for the purpose of satisfying Section 63.001(b), Election Code, and does not have another form of identification described by Section 63.0101, Election Code, and:

(1) who is a registered voter in this state and presents a valid voter registration certificate; or

(2) who is eligible for registration under Section 13.001, Election Code, and submits a registration application to the department.

(b) The department may not collect a fee for an election identification certificate or a duplicate election identification certificate issued under this section.

(c) An election identification certificate may not be used or accepted as a personal identification certificate.

(d) An election officer may not deny the holder of an election identification certificate the ability to vote because the holder has an election identification certificate rather than a driver's license or personal identification certificate issued under this subtitle.

(e) An election identification certificate must be similar in form to, but distinguishable in color from, a driver's license and a personal identification certificate.  The department may cooperate with the secretary of state in developing the form and appearance of an election identification certificate.

(f) The department may require each applicant for an original or renewal election identification certificate to furnish to the department the information required by Section 521.142.

(g) The department may cancel and require surrender of an election identification certificate after determining that the holder was not entitled to the certificate or gave incorrect or incomplete information in the application for the certificate.

(h) A certificate expires on a date specified by the department, except that a certificate issued to a person 70 years of age or older does not expire.

Explanation:  This addition is necessary to provide election identification certificates to certain voters without charge to enable those voters to meet the photo identification requirements for voting.

### HR 2020 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE HARLESS: This is a resolution to allow the voter ID conference committee to go outside the bounds to make clarifying corrections. The conference committee report creates a separate free photo ID for voting purposes called an election identification certificate.  The election identification certificate mirrors existing law and is essentially the same as a DPS personal ID card, except that an election ID may only be used for voting purposes.  Election IDs issued to voters 70 or older do not expire.  The added language ensures that the free ID issued by the DPS for voting will not impact the Texas Mobility Fund. Although TxDOT stated that the original language in **SB 14** would have not materially or significantly reduced the revenue to the mobility fund, the

conference committee made this clarification to eliminate any concerns. The conference committee report also clarified that a voter claiming religious exemption to show photo ID must have consistently refused to be photographed for any governmental purpose. This is to ensure those claiming this exemption are doing so for a legitimate reason.

REPRESENTATIVE BURNAM: Is this the privileged resolution that was placed on our desk first thing this morning?

HARLESS: Yes, sir.

BURNAM: And did you just give a thorough reading of what it does?

HARLESS: Yes, sir.

BURNAM: May I ask you a few questions about it for clarification?

HARLESS: Yes.

BURNAM: On line 15, you make reference to identification without a fee. Can you tell me how you are going to assure that there will be no fees and how it will be funded?

HARLESS: Okay, line 15, on page 1 of the resolution?

BURNAM: Correct.

HARLESS: Okay. DPS has said that there would be no fee in the bill itself in the conference committee report. Representative Anchia offered an amendment—which we have kept the provisions of in the bill—saying that any replacement card would be free of charge. Any original or replacement.

BURNAM: And where did you say it's funded now?

HARLESS: It's not funded now because it's a new form of ID. It's a new form of ID, it's not something that has been in the Transportation Code in the past.

BURNAM: Okay, so how's it going to be funded?

HARLESS: There's no fee for it.

BURNAM: No, no, how is DPS—I have legislative oversight on that committee. How is DPS going to pay for this?

HARLESS: I'm not advised to that.

BURNAM: So, are there maybe tens of thousands of new IDs that DPS is going to be required to provide, and we have not identified the funding for us to do that?

HARLESS: All the testimony and the 12 hours of communication we had on the floor on this bill stated that the thought process is, this population is very, very small. This only applies to the people that don't have one of the proof forms of identification which is the driver's license and ID card, a passport, a citizen certificate with a photo ID.

TX_00003178
JA_003089

TX_00003178

USA_00017971

Case 2:13-cv-00193  Document 661-13  Filed on 11/11/14 in TXSD  Page 37 of 48
e 1:12-cv-00128-RMC-DST-RLW  Document 209-3  Filed 06/20/12  Page 73 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4053

BURNAM:  Could we move on now to line 16?  I realize because this is a privileged resolution that I can't offer an amendment, but I was perplexed by your word choice on line 16 when you refer to the would-be, want-to-be, potential voter as someone who is—when offering to vote, don't you mean to say they are "attempting" to vote?

HARLESS:  This wording was done by the LBB, and I think that's what they mean—offering, attempt to vote.

BURNAM:  Well, I would suggest a more accurate portrayal, although maybe this is acceptable to the author, would be that "when voters are attempting to vote and are on the verge of being declined the opportunity to vote."  On line 17, "presents a form of identification that will not be sufficient," would you describe what will not be sufficient that has in the past been sufficient?

HARLESS:  It's my understanding that if they don't have one of the forms, the approved forms of identification that I mentioned previously—your driver's license, ID card, concealed hand gun, passport, citizenship paper with a picture, and a military ID.

BURNAM:  Then moving right along, thank you very much, on page 2, line 2, is the first reference to election identification certification.  There is an entire chapter on that beginning on page 3, line 18. Once again, I assume that you mean, on line 20, that "the department shall," you're referring to DPS?

HARLESS:  Yes.

BURNAM:  And, while you maintain that the fiscal note is minimal, there is nothing available attached to this privileged resolution. Why is that?

HARLESS:  I guess they assume there's not going to be a significant cost to the department.

### REMARKS ORDERED PRINTED

Representative Burnam moved to print remarks between Representative Harless and Representative Burnam.

The motion prevailed.

### MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 2).

### HR 2020 - (consideration continued)

### HR 2020 - POINT OF ORDER

Representative Walle raised a point of order against further consideration of **HB 2020** under Rule 13, Section 9(g)(5) of the House Rules on the grounds that a fiscal note was not included.

The speaker overruled the point of order.

**HR 2020** was adopted by (Record 1127): 99 Yeas, 45 Nays, 1 Present, not voting.

TX_00003179

USA_00017972

Yeas — Aliseda; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eiland; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; McClendon; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; Menendez; Miles; Naishtat; Oliveira; Peña; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Guillen.

### STATEMENT OF VOTE

When Record No. 1127 was taken, I was excused because of important business in the district. I would have voted no.

Muñoz

### SB 14 - ADOPTION OF CONFERENCE COMMITTEE REPORT

Representative Harless submitted the conference committee report on SB 14.

Representative Harless moved to adopt the conference committee report on SB 14.

The motion to adopt the conference committee report on SB 14 prevailed by (Record 1128): 98 Yeas, 46 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eiland; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett;

TX_00003180
USA_00017973

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 39 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 75 of
Monday, May 16, 2011 HOUSE JOURNAL — 77th Day 4053

Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Lyne.

## STATEMENTS OF VOTE

When Record No. 1128 was taken, I was excused because of important business. I would have voted yes.

Huberty

When Record No. 1128 was taken, I was absent because of important business in the district. I would have voted no.

Muñoz

## COMMITTEES GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, during bill referral today, in 3W.9, to set a calendar.

Permission to meet was granted.

Representative Branch requested permission for the Committee on Higher Education to meet while the house is in session, during bill referral today, in 3W.15, to consider pending business.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Calendars, during bill referral today, 3W.9, for a formal meeting, to set a calendar.

Higher Education, during bill referral today, 3W.15, for a formal meeting, to consider pending business.

## COMMITTEES GRANTED PERMISSION TO MEET

Representative Deshotel requested permission for the Committees on Business and Industry and Pensions, Investments, and Financial Services to meet while the house is in session, during bill referral today, in E2.026, to consider pending business.

Permission to meet was granted.

## PROVIDING FOR ADJOURNMENT

Representative Otto moved that, at the conclusion of the reading of bills and resolutions on first reading and referral to committees, the house adjourn until 10 a.m. tomorrow.

The motion prevailed.

## BILLS AND JOINT RESOLUTIONS ON FIRST READING AND REFERRAL TO COMMITTEES
## RESOLUTIONS REFERRED TO COMMITTEES

Bills and joint resolutions were at this time laid before the house, read first time, and referred to committees. Resolutions were at this time laid before the house and referred to committees. (See the addendum to the daily journal, Referred to Committees, List No. 1.)

(Flynn in the chair)

## ADJOURNMENT

In accordance with a previous motion, the house, at 5:22 p.m., adjourned until 10 a.m. tomorrow.

---

## ADDENDUM

---

### REFERRED TO COMMITTEES

The following bills and joint resolutions were today laid before the house, read first time, and referred to committees, and the following resolutions were today laid before the house and referred to committees. If indicated, the chair today corrected the referral of the following measures:

**List No. 1**

**HCR 160** (By Hughes), In memory of former state representative Dr. Bob Glaze.
To Rules and Resolutions.

**HCR 162** (By J. Davis), Congratulating the Space Center Intermediate Band in Houston on its receipt of a 2010 Sudler Cup.
To Rules and Resolutions.

TX_00003182

USA_00017975

Case 2:13-cv-00193   Document 661-13   Filed on 11/11/14 in TXSD   Page 41 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-3   Filed 06/20/12   Page 77 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4057

**HCR 164** (By Smithee), Honoring Jean Hilfiger of Saint-Nabord, France, for his courageous actions in assisting U.S. military forces in France during World War II.

To Rules and Resolutions.

**HR 1958** (By Muñoz), Encouraging school districts to employ certified librarians in elementary schools.

To Public Education.

**HR 1959** (By Muñoz), In memory of Border Patrol agent Eduardo Lee "Eddie" Vela of Mission.

To Rules and Resolutions.

**HR 1960** (By V. Gonzales), Congratulating Omar Ochoa of Austin on his graduation from The University of Texas School of Law.

To Rules and Resolutions.

**HR 1961** (By V. Gonzales), Congratulating Rolando Castaneda on his appointment as chief of the Edinburg Police Department.

To Rules and Resolutions.

**HR 1962** (By Castro), Commending Vice Admiral William H. McRaven for his distinguished service to the United States of America and congratulating him on his nomination to lead U.S. Special Operations Command.

To Rules and Resolutions.

**HR 1964** (By D. Miller), Congratulating Amanda Miller on her graduation from Texas A&M University.

To Rules and Resolutions.

**HR 1965** (By Menendez), Congratulating Eric Cooper, president and CEO of the San Antonio Food Bank, on his selection as the 2011 Executive Director of the Year by Feeding America.

To Rules and Resolutions.

**HR 1966** (By Flynn), In memory of the Reverend David Wilkerson of Lindale, the founding pastor of Times Square Church in New York City and best-selling author.

To Rules and Resolutions.

**HR 1967** (By Perry), Congratulating Dr. Patrick J. Hanford on the occasion of his installation as president of the Texas Osteopathic Medical Association.

To Rules and Resolutions.

**HR 1968** (By Gooden), Commemorating the dedication of the Terrell Veterans Memorial on Memorial Day 2011.

To Rules and Resolutions.

**HR 1969** (By Gooden), Congratulating Billie Sue Squires of Terrell on her retirement from American National Bank.

To Rules and Resolutions.

TX_00003183
USA_00017976

**HR 1970** (By Huberty), Congratulating Richard and Maureen Huberty on their 50th wedding anniversary.

To Rules and Resolutions.

**HR 1971** (By Kolkhorst), Urging the nation's commander in chief, the executive branch of the federal government, and the United States Congress to assign top priority to alleviating the backlog of disability claims by U.S. veterans.

To Defense and Veterans' Affairs.

**HR 1972** (By Craddick), Honoring Baylor University women's golf coach Sylvia Ferdon on her retirement.

To Rules and Resolutions.

**HR 1973** (By D. Miller), Commemorating the Gillespie County Fair and Festivals Association Barbecue Cook-off.

To Rules and Resolutions.

**HR 1974** (By Pitts), In memory of U.S. Army Private First Class Joel Ramirez of Waxahachie.

To Rules and Resolutions.

**HR 1975** (By Branch), Recognizing May 20, 2011, as GenTX Day.

To Rules and Resolutions.

**HR 1976** (By Branch), Congratulating James B. Bonham Elementary School in Dallas on its selection as a Blue Ribbon School.

To Rules and Resolutions.

**HR 1977** (By Button), Commemorating the 51st Biennial Chinese American Citizens Alliance National Convention to be held in Houston on July 27-30, 2011.

To Rules and Resolutions.

**HR 1978** (By Zerwas), Requesting the lieutenant governor and the speaker to create a joint interim committee to study the overall economic and systemic impact of Alzheimer's disease through 2017, including an inventory of public and private infrastructure and capacity and funds and systems to support and expand statewide planning and the activities of the Texas Alzheimer's Research Consortium.

To Public Health.

**HR 1980** (By Legler), Honoring country music star Mickey Gilley.

To Rules and Resolutions.

**HR 1982** (By Sheets), Congratulating Sarah Mason Thomas, Ashley Stallard, Nicole Johnson, and Savannah Still of Faith Academy in Marble Falls on winning titles at the 2010 and 2011 TAPPS Tennis State Championships.

To Rules and Resolutions.

**HR 1983** (By V. Gonzales), Congratulating Rosendo Hinojosa on his appointment as senior executive chief patrol agent of the U.S. Border Patrol Rio Grande Valley Sector.

To Rules and Resolutions.

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 43 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 79 of
Monday, May 16, 2011    HOUSE JOURNAL — 77th Day    4059

**HR 1984** (By Reynolds), Congratulating Constable Ruben Davis, who is celebrating 15 years of service with Fort Bend County.

To Rules and Resolutions.

**HR 1985** (By Bonnen), Congratulating Mike and Dorothy Kight on their 50th wedding anniversary.

To Rules and Resolutions.

**HR 1987** (By Truitt), Honoring the boys' soccer team of Carroll High School in Southlake on winning the 2010-2011 UIL 5A state championship.

To Rules and Resolutions.

**HR 1988** (By Eissler), In memory of U.S. Army Private First Class Kyle Matthew Holder of The Woodlands.

To Rules and Resolutions.

**HR 1989** (By Eissler), In memory of U.S. Marine Corps Corporal Jeffrey Warren Johnson of Tomball.

To Rules and Resolutions.

**HR 1990** (By L. Gonzales), Honoring the buddies and volunteers of the Miracle League of Austin.

To Rules and Resolutions.

**HR 1991** (By Hilderbran), Congratulating Kerrville Municipal/Louis Schreiner Field Airport on being named the 2011 General Aviation Airport of the Year by the Texas Department of Transportation aviation division.

To Rules and Resolutions.

**HR 1992** (By Margo), Congratulating Michelle Holguin, Diana Pahman, and Jarisma Rodriguez of El Paso Community College for having their scientific experiment selected for the final mission of the space shuttle Endeavour.

To Rules and Resolutions.

**HR 1993** (By Flynn), Congratulating country star and native Texan Miranda Lambert on her latest awards.

To Rules and Resolutions.

**HR 1994** (By Kleinschmidt), Congratulating the Round Top-Carmine Cubettes volleyball team on winning the 2010-2011 UIL 1A state championship.

To Rules and Resolutions.

**HR 1995** (By Hilderbran), Congratulating Clifton Fifer, Jr., on his receipt of an Outstanding Educator Award from the George Bush Presidential Library and Museum.

To Rules and Resolutions.

**HR 1996** (By Hochberg), Honoring Beckie Driver of Houston for her longtime service in the field of adult education.

To Rules and Resolutions.

**HR 1997** (By McClendon), Honoring Delores Ray Littlejohn George of San Antonio on her 75th birthday.

To Rules and Resolutions.

TX_00003185

USA_00017978

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 44 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 80 of
4060 82nd LEGISLATURE — REGULAR SESSION

**HR 1998** (By S. King), Commemorating the dedication of the William G. and Shirley Swenson Home in Abilene as a Recorded Texas Historic Landmark.

To Rules and Resolutions.

**HR 1999** (By Callegari), Congratulating Michael Callegari on his graduation from Strake Jesuit College Preparatory.

To Rules and Resolutions.

**SB 270** to Public Health.

**SB 516** to Ways and Means.

**SB 578** to Criminal Jurisprudence.

**SB 1164** to Pensions, Investments, and Financial Services.

**SB 1175** to Economic and Small Business Development.

**SB 1402** to Transportation.

**SB 1424** to Public Health.

**SB 1441** to Ways and Means.

**SB 1572** to Homeland Security and Public Safety.

**SB 1643** to Judiciary and Civil Jurisprudence.

**SB 1652** to State Affairs.

**SB 1658** to Homeland Security and Public Safety.

**SB 1826** to State Affairs.

**SB 1843** to Criminal Jurisprudence.

**SB 1926** to Public Health.

**SJR 14** to Ways and Means.

## SIGNED BY THE SPEAKER

The following bills and resolutions were today signed in the presence of the house by the speaker:

**House List No. 30**

**HB 205, HB 328, HB 1254, HB 1450, HB 1789, HB 1936, HB 2002, HB 2067, HB 2403, HB 2468, HB 2936, HCR 127, HCR 135, HCR 154, HCR 155**

**Senate List No. 27**

**SB 198, SB 250, SB 279, SB 529, SB 551, SB 748, SB 758, SB 1024, SB 1107, SB 1478, SB 1505, SCR 45, SCR 46, SCR 52, SJR 28**

## MESSAGES FROM THE SENATE

The following messages from the senate were today received by the house:

TX_00003186

JA_003097

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 45 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 81 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day          4061

**Message No. 1**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Monday, May 16, 2011

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**HB 27**                    Guillen                    SPONSOR: Ellis
Relating to the payment of fines and costs by defendants who are unable to pay the fines and costs in misdemeanor cases.

**HB 34**                    Branch                     SPONSOR: Shapiro
Relating to including in the public high school curriculum instruction in methods of paying for postsecondary education and training.
(Amended)

**HB 275**                   Pitts                      SPONSOR: Ogden
Relating to making an appropriation of money from the economic stabilization fund for expenditure during the current state fiscal biennium.
(Committee Substitute)

**HB 413**                   Aycock                     SPONSOR: Hegar
Relating to the confidentiality of certain information held by a veterinarian.
(Amended)

**HB 1028**                  Phillips                   SPONSOR: Estes
Relating to certain contact between a criminal defendant and the victim of the offense of which the defendant is convicted or a member of the victim's family.

**HB 1106**                  Johnson                    SPONSOR: West
Relating to providing certain information to a criminal defendant at the time the defendant is placed on deferred adjudication community supervision and at the time of the dismissal of certain proceedings against the defendant.

**HB 1123**                  Dutton                     SPONSOR: West
Relating to the regulation of athlete agents; providing administrative and criminal penalties.
(Amended)

**HB 1146**                  Kuempel                    SPONSOR: Carona
Relating to the registration and regulation of appraisal management companies; providing penalties.
(Committee Substitute)

**HB 1390**                  Deshotel                   SPONSOR: Estes

TX_00003187
JA_003098

TX_00003187
USA_00017980

Case 2:13-cv-00193 Document 661-13 Filed on 11/11/14 in TXSD Page 46 of 48
e 1:12-cv-00128-RMC-DST-RLW Document 209-3 Filed 06/20/12 Page 82 of
4662 82nd LEGISLATURE — REGULAR SESSION

Relating to retainage under certain construction contracts.

**HB 2229**      Coleman      SPONSOR: Ellis
Relating to the creation of the Texas HIV Medication Advisory Committee.

**HB 2277**      Eiland      SPONSOR: Williams
Relating to the sale, exchange, or replacement of life insurance and annuity contracts.
(Amended)

**HB 2457**      Davis, John      SPONSOR: Jackson
Relating to the Texas Enterprise Fund and the Texas emerging technology fund.
(Committee Substitute/Amended)

**HCR 100**      Branch      SPONSOR: Zaffirini
Commemorating the 100th anniversary of the founding of the Texas State University System.

**SB 1574**      Watson
Relating to the use of money in a tax increment fund to pay costs related to public improvements used for social services programs that promote the development or redevelopment of a reinvestment zone.

Respectfully,
Patsy Spaw
Secretary of the Senate

**Message No. 2**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Monday, May 16, 2011 - 2

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**SB 555**      Watson
Relating to the regulation of propane gas distribution retailers.

Respectfully,
Patsy Spaw
Secretary of the Senate

---

**APPENDIX**

---

Case 2:13-cv-00193   Document 661-13   Filed on 11/11/14 in TXSD   Page 47 of 48
e 1:12-cv-00128-RMC-DST-RLW   Document 209-3   Filed 06/20/12   Page 83 of
Monday, May 16, 2011          HOUSE JOURNAL — 77th Day                    4063

## STANDING COMMITTEE REPORTS

Favorable reports have been filed by committees as follows:

**May 13**

Border and Intergovernmental Affairs - **HCR 146**

Corrections - **SB 1489**

County Affairs - **SB 373**, **SB 954**, **SB 955**, **SB 1014**, **SB 1243**, **SB 1687**, **SB 1692**

Criminal Jurisprudence - **SB 377**, **SB 480**, **SB 519**, **SB 1010**, **SB 1103**, **SB 1331**

Culture, Recreation, and Tourism - **HCR 144**, **SCR 11**, **SCR 16**, **SCR 18**, **SCR 39**

Economic and Small Business Development - **SB 1736**

Environmental Regulation - **SB 615**, **SB 694**

Government Efficiency and Reform - **SB 1618**

Higher Education - **SB 36**, **SB 794**, **SB 1662**, **SB 1734**

Human Services - **SB 63**

Insurance - **SB 1054**, **SB 1213**

Land and Resource Management - **SB 1922**

Natural Resources - **HB 3866**, **SB 1895**

Ways and Means - **SB 267**, **SB 520**, **SB 540**

## ENGROSSED

**May 13** - **HB 9**, **HB 142**, **HB 278**, **HB 359**, **HB 550**, **HB 882**, **HB 1119**, **HB 1241**, **HB 1745**, **HB 1897**, **HB 2093**, **HB 2104**, **HB 2169**, **HB 2338**, **HB 2369**, **HB 2594**, **HB 3199**, **HB 3352**, **HB 3371**, **HB 3423**, **HB 3486**, **HB 3488**, **HB 3578**, **HB 3579**, **HB 3580**, **HB 3813**, **HB 3829**, **HB 3837**, **HB 3840**, **HB 3843**, **HB 3844**, **HB 3849**, **HB 3852**, **HB 3856**, **HB 3858**, **HB 3859**, **HB 3862**, **HCR 84**

**May 15** - **HB 19**, **HB 25**, **HB 31**, **HB 51**, **HB 96**, **HB 159**, **HB 161**, **HB 167**, **HB 189**, **HB 197**, **HB 230**, **HB 254**, **HB 326**, **HB 427**, **HB 452**, **HB 599**, **HB 629**, **HB 677**, **HB 680**, **HB 695**, **HB 720**, **HB 737**, **HB 804**, **HB 875**, **HB 892**, **HB 940**, **HB 963**, **HB 995**, **HB 1036**, **HB 1046**, **HB 1122**, **HB 1129**, **HB 1234**, **HB 1244**, **HB 1250**, **HB 1363**, **HB 1386**, **HB 1408**, **HB 1429**, **HB 1476**, **HB 1544**, **HB 1547**, **HB 1563**, **HB 1608**, **HB 1646**, **HB 1681**, **HB 1793**, **HB 1856**, **HB 1921**, **HB 1937**, **HB 1969**, **HB 2032**, **HB 2060**, **HB 2089**, **HB 2119**, **HB 2120**, **HB 2292**, **HB 2357**, **HB 2365**, **HB 2380**, **HB 2383**, **HB 2408**, **HB 2417**, **HB 2443**, **HB 2446**, **HB 2449**, **HB 2493**, **HB 2496**, **HB 2507**, **HB 2525**, **HB 2560**, **HB 2603**, **HB 2688**, **HB 2722**, **HB 2729**, **HB 2788**, **HB 2819**, **HB 2884**, **HB 2917**, **HB 2931**, **HB 2990**, **HB 3018**, **HB 3030**, **HB 3064**, **HB 3123**, **HB 3167**, **HB 3172**,

TX_00003189

USA_00017982

HB 3237, HB 3268, HB 3275, HB 3320, HB 3324, HB 3390, HB 3410,
HB 3422, HB 3439, HB 3453, HB 3461, HB 3462, HB 3474, HB 3542,
HB 3589, HB 3597, HB 3611, HB 3624, HB 3691, HB 3696, HB 3746,
HB 3747, HB 3754, HB 3812, HB 3833, HB 3841, HB 3842, HB 3845,
HB 3861

### ENROLLED

**May 13 - HCR 161**

**May 15 - HB 1450, HB 2403, HB 2468, HCR 135, HCR 154**