PL055
9/2/2014
2:13-cv-00193

# SENATE JOURNAL

## EIGHTY-FIRST LEGISLATURE — REGULAR SESSION

### AUSTIN, TEXAS

### PROCEEDINGS

**TWENTY-FIRST DAY**
(Tuesday, March 10, 2009)

The Senate met at 10:21 a.m. pursuant to adjournment and was called to order by the President.

The roll was called and the following Senators were present: Averitt, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Shapleigh, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

The President announced that a quorum of the Senate was present.

The Reverend Jacqueline Baker, Hyde Park Christian Church, Austin, offered the invocation as follows:

Gracious and loving God, for this time and place, we give thanks. For this day and this opportunity to work together in harmony and with hope for the future, we are grateful. For the privilege of being called to serve the public, we are ever mindful. May we ever realize the worth and place and value and purpose of each and every person. May we ever understand that the work we do also has worth and value and purpose, and with this in mind, let us join together to work side by side and shoulder to shoulder to meet the needs of those we are called to represent. Heart to heart and hand in hand let us respond to the challenges we face with innovative, creative solutions. Let us be determined not to become locked in negative or destructive patterns but instead finding new and courageous ways of working together and touching the future. With this in mind, help us to find common ground. Help us to seek a common goal and identify a common good. Help us to see all faces and hear all voices. Help us to work together, always mindful of the future and of the fact that our words and actions today make a real difference and that we are charged with the responsibility of planting seeds which will bear good fruit. May we ever realize that our presence here truly matters. May future generations look to us as an example of unity and constructive cooperation. May our children look to us as examples of peace and reconciliation. With humble hearts then, let us serve. With gracious and gentle spirits, let us work together. With mindful

TX_00002797
USA_00019065

and caring intent, let us seek the well-being of all those people, Your people, our people, all people that we are called to tend. We pray all these things in a spirit of love and service. Amen.

Senator Whitmire moved that the reading of the Journal of the proceedings of yesterday be dispensed with and the Journal be approved as printed.

The motion prevailed without objection.

### CO-AUTHOR OF SENATE BILL 362

On motion of Senator Fraser, Senator Nelson will be shown as Co-author of **SB 362**.

### PHYSICIAN OF THE DAY

Senator Huffman was recognized and presented Dr. Jimmy Clay Burns of West Columbia as the Physician of the Day.

The Senate welcomed Dr. Burns and thanked him for his participation in the Physician of the Day program sponsored by the Texas Academy of Family Physicians.

### RESOLUTIONS SIGNED

The President announced the signing of the following enrolled resolutions in the presence of the Senate: **SCR 18**, **SCR 29**, **SCR 31**, **SCR 36**, **HCR 46**.

### GUESTS PRESENTED

Senator Shapiro was recognized and introduced to the Senate a delegation of students from Hillcrest High School in Dallas.

The Senate welcomed its guests.

### GUESTS PRESENTED

Senator Carona was recognized and introduced to the Senate a delegation representing Young Professionals of Greater Dallas.

The Senate welcomed its guests.

### SENATE RESOLUTION 408

Senator Duncan offered the following resolution:

WHEREAS, Article III, Section 9, and Article IV, Section 16 of the Texas Constitution, and Article XIII of the Senate Rules recognize the existence of the Committee of the Whole Senate; and

WHEREAS, Pursuant to Senate Rule 7.06, the President referred Senate Bill 362, relating to voter identification requirements, directly to the Committee of the Whole Senate; and

WHEREAS, Senate Rule 13.01 provides that it is in order for the Senate at any time after bills and resolutions have been called to resolve itself into a Committee of the Whole Senate; and

WHEREAS, The Senate may adopt by resolution specific procedures to govern the operation of the Committee of the Whole Senate during its consideration of Senate Bill 362; now, therefore, be it

TX_00002798

USA_00019066

RESOLVED, That the Senate resolve itself into a Committee of the Whole Senate on Tuesday, March 10, 2009, at the conclusion of the morning call, for the consideration of Senate Bill 362; and, be it further

RESOLVED, That the Senate may meet as in Committee of the Whole Senate from day to day as necessary; and, be it further

RESOLVED, That the following procedures shall apply when in Committee of the Whole Senate for the duration of its consideration of Senate Bill 362:

1. The Committee shall afford reasonable opportunity to interested parties to appear and testify before the Committee.

2. The Chair shall require all parties appearing at the meeting to swear or affirm that the testimony they give to the Committee is true and correct.

3. The Chair may fix the order of appearance and time allotted for each witness unless a majority of the members present directs otherwise.

4. Senate Rules addressing access to the Senate Floor shall be enforced by the Chair while the Committee is meeting, except as follows:

(a) Witnesses appearing before the committee may be admitted to the floor of the Senate as their names are called by the Chair, and may remain only until their testimony is completed.

(b) Each Senator may be assisted by one employee of the Senate within the brass rail at any given time. The Sergeant-at-Arms shall provide seating next to a requesting senator for such authorized employees.

5. Senate Rule 3.04, relating to posters, placards, banners and signs, and Senate Rule 3.05 relating to applause, outbursts, and demonstrations shall be strictly enforced by the Chair. Subject to approval by the Chair, witnesses may use visual aids as necessary in the presentation of their testimony.

6. Senate Rule 3.01, relating to attire, shall not apply to witnesses.

**SR 408** was read and was adopted by the following vote: Yeas 19, Nays 12.

Yeas: Averitt, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

### REMARKS ORDERED PRINTED

On motion of Senator Van de Putte and by unanimous consent, all remarks regarding **SR 408** were ordered reduced to writing and printed in the *Senate Journal* as follows:

**President:** Senator Van de Putte, did you wish to, to rise on this?

**Senator Van de Putte:** Thank you Mr. President. I'd like to ask the author of the resolution a few questions.

**President:** Will Senator Duncan yield to Senator Van de Putte?

**Senator Duncan:** I yield.

TX_00002799

USA_00019067

**Senator Van de Putte:** Thank you, Senator Duncan, and thank you, Mr. President. Senator Duncan, your resolution is a culmination of a lot of discussions between our colleagues, both Democrats and Republicans, is it not?

**Senator Duncan:** Yes, Senator. I tried to collect ideas from everybody, about the, at least what should be in the resolution.

**Senator Van de Putte:** And, Senator, there came a point in the deliberations and the discussions, after which, consulting with my Democratic colleagues, I delivered a memo dated March the 3rd to you with respect to our specific requests. Is that not correct?

**Senator Duncan:** That's correct.

**Senator Van de Putte:** And, Senator Duncan, among those, we requested more time to prepare for this Committee of the Whole hearing on, at that time, in that memo we renewed our protests that the Texas Senate has no business taking up and considering voter identification legislation before addressing other issues of broad importance to Texans. Was that in the memo? Do you remember that?

**Senator Duncan:** I believe you mentioned something like that in your memo to me and others.

**Senator Van de Putte:** And, Senator Duncan, if, do you remember that back in the very first week of the session as the, my Republican colleagues in this Senate were changing the rules to make sure that voter ID would pass the Senate, that the Democratic colleagues voted unanimously to also take up as a special order, so that it would be easier to pass other pieces of legislation addressing the issues important to Texans?

**Senator Duncan:** I remember there was some discussion about that in the debate on January the 14th.

**Senator Van de Putte:** Do you remember, Senator Duncan, what those issues which we proposed were?

**Senator Duncan:** No, that was a long day, and I don't, I couldn't be specific to recite those to you.

**Senator Van de Putte:** Well, Senator Duncan, let me briefly state, they, Democrats unanimously supported and were unanimously voted down by the Republicans to make it easier for the Senate to pass legislation on the following issues:  full restoration of the Children's Health Insurance Program funding, lowering tuition costs, lowering homeowners' insurance rates, preventing foreclosures, economic development and job creation, funding our neighborhood public schools, and enhancing benefits for veterans. Does that refresh your memory a little bit? Do you remember what those issues were?

(Applause)

**Senator Duncan:** I remember discussions concerning that. And, Members, could I, and I think for the day, while we're talking about this–

**President:** (Gavel) It's probably going to be a long day, and the Chair is going to enforce respect for, so if, if we could not have reactions from the gallery, I'd appreciate it.

TX_00002800
JA_004186

TX_00002800

USA_00019068

Case 2:13-cv-00193  Document 662-1  Filed on 11/11/14 in TXSD  Page 5 of 30
se 1:12-cv-00128-RMC-DST-RLW  Document 211  Filed 06/20/12  Page 139 of
Tuesday, March 10, 2009  SENATE JOURNAL  449

**Senator Duncan:** Senator, I believe those issues were raised and those votes, whatever, if there were amendments that were added, I think they were not adopted by the body. I do know that the committees have been meeting and deliberating on those very issues all session long, and, typically, those kinds of bills take a while and they get to the floor in due course of time.

**Senator Van de Putte:** Thank you, Senator Duncan, and out of the issues that we, as Democrats and Republicans, brought forward as issues that were, seemed so important that it needed to be considered via a special order and considered by the full Senate Committee of the Whole, there was only one surviving issue from that discussion, was it not?

**Senator Duncan:** Well, I think so. This issue was the one that survived the debate.

**Senator Van de Putte:** So, the only issue that survived all of the special orders was the issue of voter identification. Is that not true?

**Senator Duncan:** I think that the bill, that the resolution, or at least the rule that was adopted, dealt with this this particular issue on special order, yes.

**Senator Van de Putte:** Senator Duncan, back to the memorandum and our requests that I delivered to you last week, I wanted to remind you that the first week to explain why that protest was made in the memo and why we were protesting the artificial elevation of this issue above all orders and, as all others, as something that somehow deserves all this attention. And that request, the one to give us more time to prepare for this hearing and, frankly, to give the Texas Senate more time to make progress on the other issues that today are in the back seat, in favor of this issue. What was the response to our request to give us more time and to put off the voter ID hearing today so that we could take up more important issues?

**Senator Duncan:** Well, I think that there was not a consensus to extend the time for hearing it. And I think I responded to you that Senator Fraser, I think, had visited each Member of the Senate, or at least provided a letter on February 26th, providing notice that he intended to take, request that this bill be taken up on this date. And then, also, a public notice was posted on March the 4th of the hearing. So, that's normally more, lot more time than we usually have for any sort of legislation that is going to be heard in public hearing during a legislative session and much more than is required by the rules.

**Senator Van de Putte:** And thank you, Senator Duncan, but, basically, our request was denied that we put other issues that are very important to the citizens of this state. The second request–

**Senator Duncan:** There wasn't a consensus to do that. I would agree with that.

**Senator Van de Putte:** Thank you. The second request in my memo was that in response to your original offer that each side be given three or four slots for expert witnesses, I had requested eight slots per side. Is that correct?

**Senator Duncan:** I think you, I think that's what is, I think your letter requested as many as eight, if I recall correctly. Let me get my glasses on, but I'll take your word for it.

TX_00002801

USA_00019069

Case 2:13-cv-00193  Document 662-1  Filed on 11/11/14 in TXSD  Page 6 of 30
se 1:12-cv-00128-RMC-DST-RLW  Document 211  Filed 06/20/12  Page 140 of
446                    81st Legislature — Regular Session              21st Day

**Senator Van de Putte:** And those eight people that I asked for are in the building today, some of whom have flown in from across the country, and they're still waiting to see if they'll be afforded the respect of their national stature on the associated issues that, that are demanding. They still don't know if they'll be able to, allowed to testify as an invited expert witness.

**Senator Duncan:** Well, Senator, I think I had asked you last night, and I think both the proponents of this issue and the opponents of the issue have, or the opposition, have submitted a list of witnesses to the Secretary of the Senate, and I think I have a list of that for everyone, and I think each one of your witnesses is listed on that. And, certainly, they will be considered invited testimony and will appear. It would be my plan, if this resolution is adopted, that those witnesses be allowed to testify at the front, and I would propose that we would allow alternating witnesses. In other words those, one in favor of the bill and one opposed to the bill, so that we get a good feel for this as we go through. So, yes, they will be allowed to testify.

**Senator Van de Putte:** Well, thank you for clarifying that, because as we stand here this morning, I wasn't sure how many expert witnesses that were going to be allowed–

**Senator Duncan:** Well, I apologize–

**Senator Van de Putte:** For us.

**Senator Duncan:** I thought I made clear that we really weren't going to limit–

**Senator Van de Putte:** Okay.

**Senator Duncan:** Try to limit that part of your testimony. But I think if you've got these eight, well, then that would be appropriate for us to move forward with those eight. I think the proponents of the legislation have less than that, but then after that, and what we want to know here, we have a lot of people that want to testify as well–

(Applause)

**Senator Duncan:** And so, we want to make sure and, and as you know, too, there's, and I want to talk a little bit about this, to make sure there's some understanding. We want those witnesses to testify, we want to have a good, high quality debate here with regard to this bill, yet, we really, one of the things that I am going to ask the Senate to, and the Sergeant to enforce as we go through, is that we not have applause or demonstrations in the gallery and that we strictly enforce that, so that out of respect for the witnesses who'll be testifying and out of respect for the time that we need to be able to deliberate this, this bill–

**Senator Van de Putte:** Thank you–

**Senator Duncan:** And the decorum of this, this beautiful Chamber.

**Senator Van de Putte:** Thank you, Senator Duncan. I'm glad to have an answer on that, and we certainly believe that the decorum of the Senate, and that our guests will be invited to give that testimony, and we are in accordance with your wishes that we adhere to the decorum of the Senate. Senator, the next request on my memo to you was that the Senate provide qualified legal representation to each side on this debate. There are many constitutional issues at stake. We already know from experience in Indiana and Georgia that the results of what this legislation might pass will go straight

TX_00002802
JA_004188

TX_00002802

USA_00019070

se 1:12-cv-00128-RMC-DST-RLW   Document 211   Filed 06/20/12   Page 141 of
Case 2:13-cv-00193   Document 662-1   Filed on 11/11/14 in TXSD   Page 7 of 30
Tuesday, March 10, 2009          SENATE JOURNAL                    447

to the U.S. Department of Justice and into the federal courts. We know that for a fact. And yet, we will not have, on both sides, any of this fight, a qualified legal representation. Is that true?

**Senator Duncan:** The party caucuses will not be provided qualified legal representation. That's correct. Or any legal, I mean, the Senate will not provide independent counsel for the party caucuses. That's correct.

**Senator Van de Putte:** Thank you, Senator. Next, we requested that a stenographer be provided to record all the proceedings of the Committee of the Whole testimony and deliberations, and the subsequent deliberations of the Texas Senate on this legislation. Because of the certainty of the Department of Justice and federal litigation on this, you indicated in your response that the prospects, that it looked good at the time. Are we now prepared with a stenographer to record these proceedings and include them in the committee report and in the *Senate Journal* in full?

**Senator Duncan:** Senator, that, we have worked and Secretary of the Senate's office and my staff have worked together to arrange for a stenographic, or stenographer to be present to record the official record of the hearing.

**Senator Van de Putte:** Thank you, at least that's one thing we got in our requests. Senator, I also wanted to, for the record, state that since we are in the Senate Chamber, that all the proceedings can be viewed currently on the Internet, as we normally do with video streaming. Since the Committee of the Whole will resolve, but will be so in this Chamber, will that free access to the public be accorded when we resolve into the Committee of the Whole?

**Senator Duncan:** Free access to the Chamber will be afforded, or to the gallery, as normal, with normal security procedures. There will also be an overflow room that will accommodate, if there is a need for that, will accommodate our guests here, too, and our constituents, and they can be watching this on TV at the same time. The process will also provide that when we call names for witnesses, we will try to make sure that each of the witnesses have an opportunity to arrive at the Chamber and be admitted. But as far as the floor, the Senate floor will remain under strict, you know, under our decorum rules that we normally abide by during a session of the Senate.

**Senator Van de Putte:** And, Senator Duncan, for the record, all of the proceedings now and the Committee of the Whole will be able to have that transparency of Texas public government, as it will be available live video streamed on the Internet?

**Senator Duncan:** I am not, I would assume that that's the case, and I understand that this will be done as our normal sessions are, under a live video stream, is what I'm advised.

**Senator Van de Putte:** So, Senator Duncan, that is an affirmative?

**Senator Duncan:** That's the nod I got (laughter), and I think you did, too.

**Senator Van de Putte:** Thank you, Senator Duncan. Senator, we requested in that memo that the Attorney General make himself available as a resource witness in the Committee of the Whole, and you responded at the time that you were doubtful. You said, given the fact that the Office of the Attorney General will represent the State of Texas in litigation, if any, arising out of this legislation, it would be inappropriate to

Case 2:13-cv-00193   Document 662-1   Filed on 11/11/14 in TXSD   Page 8 of 30
se 1:12-cv-00128-RMC-DST-RLW   Document 211   Filed 06/20/12   Page 142 of
448                          81st Legislature — Regular Session                21st Day

present the Attorney General at this time. Senator Duncan, is it true that the Attorney General or his designee testified at several points in the process during the 2001 redistricting hearings, which were sure to go to court?

**Senator Duncan:** Senator, I'm, I don't know. I don't recall and I wouldn't want to answer that without going back and looking at the record. I don't recall, but again, I haven't looked at the record to determine that.

**Senator Van de Putte:** And, Senator, isn't it also true that the Attorney General or his designee testified during the 2003 redistricting hearings, that were sure to go to court, and it was true that the Attorney General or his designee testified on this very same voter ID legislation in the last session of the Legislature?

**Senator Duncan:** Senator, I, again, I would have to go back and look at the records. I haven't done that. I understand it's generally a policy that they, if litigation is imminent on a piece of legislation, that they typically don't testify.

**Senator Van de Putte:** Well, Senator Duncan, I'm surprised, because suddenly we don't want our Attorney General to comment on anything that would go to court. And, Senator, with all due respect, the Attorney General is the state's lawyer. Don't you think it would be helpful for the state's lawyer, in the State Senate, to hear his views on the laws that we're about to change, so that, that he will have to defend?

**Senator Duncan:** Well, Senator, I think there's a process that normally and, I think, should always be involved, is that opinions of the attorney, the Attorney General has an opinion process for advising on issues that are before the, the body. I've always had a concern as the attorney, with the Attorney General appearing as a witness in a legislative deliberation or debate, if he is going to be the actual attorney who will representing the people of the State of Texas in litigation arising out of that. So, you know, typically just, I'm not going to speak for the Attorney General here, but I'll speak for myself, I think that the Attorney General is not a proper witness in a case where we know that the, and I think everyone has made it clear that whatever we do in resolution of this issue, if it is passed, that there will be a review by the court system and certainly with D.O.J., or through the preclearance process. So, I think that certainly litigation of some type is imminent. In my view, it would be inappropriate for the Attorney General to be a witness in that legislative debate.

**Senator Van de Putte:** Well, Senator Duncan, I know that for a fact the Attorney General did participate in this very same piece of legislation last year in the House and had his designee in the House hearings. I thought, now, I'm not an attorney, but I thought when something goes to litigation that that's why we have the solicitor general argue those cases, that it is standard practice. But, Senator Duncan, I believe you, but you may or may not know that the Senate Democrats faxed a letter to General Abbott late yesterday evening extending the request directly to him. And I guess you're not prepared to produce the Attorney General so that we can get the benefits of his experience after his office and he spent over 1.4 million tax dollars looking for the sort of voter fraud that this legislation would address and not getting a single conviction for that sort of fraud for his efforts. I just thought his experience in that would be relevant to what we're about to discuss. And so, you're not going to produce him, and he is ignoring our request.

TX_00002804

USA_00019072

Case 2:13-cv-00193   Document 662-1   Filed on 11/11/14 in TXSD   Page 9 of 30
se 1:12-cv-00128-RMC-DST-RLW   Document 211   Filed 06/20/12   Page 143 of
Tuesday, March 10, 2009          SENATE JOURNAL          449

**Senator Duncan:** Well, Senator, I'm not the author of the bill, nor, and, do I have the power to compel the Attorney General to appear. So, you know, I guess that would have to be my response to your question. I think that was a question. (Laughter)

**Senator Van de Putte:** Well, Senator Duncan, I really believe you when you say that you want to proceed in a constructive way, and I think all of our colleagues believe in your abilities. But to tell you the truth, out of all of the important requests regarding the ground rules, which we believe as important components toward representing our constituents, we've gotten our, a little more, I mean, we've got our extra expert witnesses and a court reporter, and that, I just wanted to note that might help explain why I think the Democrats will respectfully vote "No" on the resolution. But beyond the specifics of our request regarding the process for considering this bill, let me respectfully offer maybe an insight as to one of the reasons that, respectfully, we will vote "No" on this resolution. It's because, Senator Duncan, it's not about voter ID. I've always looked forward to the day when discrimination and voter suppression are things of the past. But the fact that we have to debate voter ID tells me that we aren't there yet. This voter ID bill echoes a history of voter suppression in our great state, but, unfortunately, it's not just minority voting rights that are threatened by the voter ID bill. The laws threaten seniors and lower income Texans who don't drive and don't have a photo ID and have no easy or free way to get one. Your proposals for debate are taken into consideration, but, Senator, the proposed voter ID law would force thousands of poll workers to enforce the new ID requirements, and this is just a recipe for catastrophe, for confusion that could deny a ballot to women and to students whose names or address and ID doesn't match on the name and address the voter rolls. Senator Duncan, are you aware that it's more likely for a person to be struck by lightning than to impersonate a voter?

**Senator Duncan:** I have–

**Senator Van de Putte:** And by–

**Senator Duncan:** Senator, I have no data to support that.

**President:** (Gavel)

**Senator Williams:** Mr. President.

**Senator Van de Putte:** By contrast, Senator Duncan, over a million Texans registered to vote who had no driver's license last year.

**Senator Williams:** Mr. President.

**Senator Van de Putte:** I will continue on my questions of Senator Duncan.

**President:** Senator Williams, for what purpose do you rise, Sir?

**Senator Williams:** Mr. President, I rise to request that you instruct the Sergeant-at-Arms to strictly enforce Rule 3.05, no applause, outburst, or other demonstration by any spectator shall be permitted during the Senate, session of the Senate, and that this rule shall be strictly enforced.

**President:** So ordered.

TX_00002805

USA_00019073

**Senator Van de Putte:** Thank you Mr. President. Senator Duncan, I, most of us take a photo ID for granted. There's no public policy reason for this, and I understand the difficulty that you've been placed with in offering this resolution. Because that partisanship alone is the reason voter ID was singled out to be considered outside the traditional Senate Two-thirds Rule. Senator Duncan, I know that you've put a lot of time into this resolution and into the requests and deliberate, but I hope you will understand why we will vote "No" on the resolution, not to disrespect you, but of our real need to unite to solve Texas' real problems. It's the special treatment of this voter ID bill that proves some politicians still don't get the message that the voters sent to us in this last election cycle. With all due respect, Senator Duncan, that's why we cannot support your resolution. That's why we cannot support this resulting process and ultimately why we cannot support the resulting legislation.

**Senator Duncan:** Thank you, Senator, and I appreciate your position, and I also, but I will say this, too, I also appreciate the fact that you have allowed me to sit down with you and members of your caucus, so that at least I can understand your concerns and, hopefully, we can have a very orderly hearing and treat our guests and each other with appropriate decorum. And I appreciate your approach here. Thank you very much.

**Senator Van de Putte:** Senator Duncan, following our conversations on this Senate floor today, and particularly our conversations about the court reporter, I'd like to move that the entirety of our dialogue this morning and the testimony that we will be hearing be reduced to writing and placed into the committee report for this legislation.

**President:** Would Senator Van de Putte approach the podium for a moment?

(Pause)

**President:** (Gavel) Senator Van de Putte, if I understand, you're going to withdraw your motion, and you're going to make a new motion.

**Senator Van de Putte:** Yes, Mr. President, if I could be allowed to–

**President:** You're recognized.

**Senator Van de Putte:** Ask questions of the Chairman? Senator Duncan, I know that it has been affirmed that all of this is proceedings today, and when we resolve into the Committee of the Whole, that this will be available for video streaming and accessibility and transparency to our Texans. And following our conversation earlier about a court reporter, I would like to move that the entirety of the dialogue and the questions that we have had here this morning be reduced to writing and placed into the journal. And at, then at the appropriate time when we resolve into the Committee of the Whole, that the discussion about the court reporter and what will be the record of the Committee of the Whole will be discussed at that time. Is that correct?

**Senator Duncan:** That's my understanding.

**Senator Van de Putte:** Thank you, Senator Duncan. I appreciate and I deeply respect you. I know that this is a difficult task, and I do not look forward to the day's proceedings.

TX_00002806

JA_004192

**Senator Duncan:** Well, thank you, Senator, and I look forward, though, to working with each and every one of you to try to resolve this through the committee in an orderly fashion. And I appreciate your help.

**President:** Senator Ellis, for what purpose do you rise, Sir?

**Senator Ellis:** Ask a couple of questions of Senator Duncan.

**President:** Will Senator Duncan yield to Senator Ellis?

**Senator Ellis:** Senator, Senator Van de Putte made reference to a request that the Attorney General come over. Now, if my memory serves me correctly, the last time we met in Committee of the Whole was on the issue of redistricting. And I'm relatively sure that the Attorney General or a representative did participate in those proceedings. So, I want to hone in on this a little bit more so I get a sense of if there's a precedent being established that if it's a matter that will possibly go to litigation, the Attorney General will not come. I saw in one of the press accounts that the Attorney General was asked not to come. Now, from you all's discussion, I got the impression that you couldn't speak for the Attorney General, and maybe the Attorney General was declining to come. So, my question is, did you ask that the Attorney General not come or not?

**Senator Duncan:** No, no. I, that's not my decision about whether or not the Attorney General comes or not. That's his.

**Senator Ellis:** Okay. So, as the–

**Senator Duncan:** His–

**Senator Ellis:** Presiding Officer–

**Senator Duncan:** His office is an independent office, and if he desires to be here, he can. If he desires not to be here, I would assume that he would not, not be compelled to come, as I understand the rules in a Committee of the Whole.

**Senator Ellis:** Okay.

**Senator Duncan:** My, what I have laid out would be my, my personal position would be is that if the Attorney General does have, if litigation is imminent with regard to legislation that we may be considering, that it would be inappropriate for the Attorney General to appear as a witness in the deliberations over that bill. And that's where my objections (inaudible, overlapping conversation)–

**Senator Ellis:** Well, if the Attorney General were not appearing as a witness, would you have any personal objection to the Attorney General appearing as a resource? You know, I'm thinking, Jessica's Law, last session, which was already the subject of a case pending before the United States Supreme Court. You know, whether Attorney General is there as a witness or not, I mean, I just think both sides ought to have some sense–

**Senator Duncan:** Senator, I think–

**Senator Ellis:** Of the law from our state's chief–

**Senator Duncan:** Either side is–

TX_00002807

USA_00019075

Case 2:13-cv-00193  Document 662-1  Filed on 11/11/14 in TXSD  Page 12 of 30
se 1:12-cv-00128-RMC-DST-RLW  Document 211  Filed 06/20/12  Page 146 of
432                    81st Legislature — Regular Session                    21st Day

**Senator Ellis:** Law enforcement officer.

**Senator Duncan:** I think, to answer your question, I think either side is entitled to extend an invitation to the Attorney General, and I think that being an independent elected official and the Attorney General, which is in the executive branch of the government, that he could respond accordingly, but–

**Senator Ellis:** Because I would hope–

**Senator Duncan:** That's as far as I'd go with it.

**Senator Ellis:** When we do start our proceedings that the Attorney General's office is listening, because I think that is important, whether it is the actual Attorney General or a representative. And I'm sure whether someone agrees with your position or mine on this issue, clearly, Members would give that office the respect that it deserves. But I just think on a issue that is important, that's controversial, whether it goes to court or not, where there are legal implications, both sides, before they cast a vote ought to get a sense of what our chief lawyer, the state's lawyer, regardless of what party that person is in, has to say about it. Because if not, I dare say that we start a precedent where the Attorney General would have a lot more time to focus on other things than giving us legal advice, because, as you know, there are many issues that come before this body, in committee or Committee of the Whole, or that are subject to end up in a court of law. And I just want to make sure that it's clear that you did not ask Attorney General not to come. So those press accounts that I have read on my BlackBerry in the last hour are apparently wrong, or there's a miscommunication there somewhere, because–

**Senator Duncan:** I can't believe there's any miscommunication in the world about in the media; they usually always get it right. But the, the answer to the question is, No, I did not request the Attorney General to refuse to appear.

**Senator Ellis:** Okay.

**Senator Duncan:** In fact, that's–

**Senator Ellis:** I would hope that if you get a call, because I'm certainly going to call. I mean, there are issues that I agree with the Attorney General on. Sometimes I may disagree, but he is my lawyer–(inaudible, overlapping conversation)

**Senator Duncan:** The only communication–

**Senator Ellis:** In the Senate.

**Senator Duncan:** The communication that I had with you or with Senator Van de Putte, Senator West, and others is my position on whether or not the Attorney General should appear, and that is clear as I can make it, and does state my–

**Senator Ellis:** I got it.

**Senator Duncan:** (Inaudible, overlapping conversation)

**Senator Ellis:** And so, for the record, I'm saying that he should come as a resource. As you know, last week when, when I was in Washington, my staff drafted a letter that I sent to our U.S. Attorney General, the initial draft said, come as a witness–

**Senator Duncan:** I think–

Case 2:13-cv-00193   Document 662-1   Filed on 11/11/14 in TXSD   Page 13 of 30
se 1:12-cv-00128-RMC-DST-RLW   Document 211   Filed 06/20/12   Page 147 of
Tuesday, March 10, 2009          SENATE JOURNAL          439

**Senator Ellis:**  And I said, I don't think so.

**Senator Duncan:**  Again, I'll reiterate.

**Senator Ellis:**  He can come as a resource. So, that's what our request is, that our Attorney General be here as a resource, and not just to our side, to both sides, whether it's him or someone from his office. So, I'm hoping that that can be worked out, and, to be honest with you, I think that'd be some bipartisan agreement, does not have to come as a witness, obviously, answer questions, but be our resource. Because if not, when we have your committee meetings of State Affairs on this floor on issues that oftentimes are going to end up in litigation as soon as the bill is signed, we want the Attorney General to give us input on both sides. So, I hope that happens today. In, on the second page, page 2 under 4(a), you have witnesses appearing in order be admitted to the floor. I mentioned to you when we were huddling at the President's desk a little earlier, I think this gives you enough discretion. And if not, I want to encourage some discretion so that if one of the experts invited from either side, after they testify, if it doesn't crowd the floor–I'm sure there'll be 31 Members here most of the time–but if it doesn't crowd the floor, I hope there'll be some leniency so we don't have to have someone run back from somebody's office, below us or above us, in case there's a question, that some Member thinks of something. I mean, not to fill up the floor and not to have them create a ruckus or a demonstration, anyway, but I hope that you'll have some flexibility on that, for both sides, for expert witnesses to come in.

**Senator Duncan:**  I will consider that as we go through. I don't think that's unreasonable. And I think that we'll, again, want to have a high quality debate on the issues.

**Senator Ellis:**  Under Section (b), 4(b), it says that we can have one employee of the Senate within the brass rail at any given time. I'm wondering are you going to be checking the ID, or how will you know that they are employees of the Senate?

**Senator Duncan:**  We–

**Senator Ellis:**  Government-issued ID.

**Senator Duncan:**  They can–

**Senator Ellis:**  Because I wanted to make sure all my staffers did–

**Senator Duncan:**  I–

**Senator Ellis:**  To poke at the idea, I was talking to Chairman Williams earlier about my wife not having an ID to get in here, so I just–

**Senator Duncan:**  The–

**Senator Ellis:**  Wanted to make sure.

**Senator Duncan:**  The rules of the Senate apply to that particular provision, and our staffs will be permitted if they have the green badge. And if they're on the floor, they'll have to have a green badge, other than our Sergeants, who have white badges. So, if you see a person on the floor without a green badge or a white badge, if you'll report that to the Chair or the Sergeant-at-Arms, we'll see that that is taken care of.

TX_00002809

USA_00019077

**Senator Ellis:** Well, let the record reflect that because I hope that, despite the fact that this bill can pass with a simple majority, I hope this is a deliberative process. So, anyone sitting by your desk, whether they have their ID or their green badge or their white badge, I, for one, would not object to them being here, because I want you to get all the good advice before you cast that bad vote, that you can get.

**Senator Duncan:** I usually—

**Senator Ellis:** Thank you.

**Senator Duncan:** Need all the advice I can get, Senator, and you usually give it to me. So, I appreciate the offer.

**President:** Senator West, for what purpose do you rise, Sir?

**Senator West:** Question of the author.

**President:** Will Senator Duncan yield to Senator West?

**Senator Duncan:** I yield.

**Senator West:** Senator Duncan, I'm going to follow up on some of the questions that Senator Ellis was raising as it relates to the Attorney General. Now, I think in the exchange between you and Senator Van de Putte, you said that you could not compel the Attorney General to come over and be a witness or a resource. Of the decision to not compel, invite, whatever the case may be, the Attorney General, is that a decision of the Chair, is that your personal preference, or do you believe that that is the preference of the committee?

**Senator Duncan:** Well, I believe that the ability or authority to compel by subpoena is not granted or does not exist in the Committee of the Whole. It only exists in standing committees, and so to the extent that one would wish to compel any witness to appear before the Senate Committee of the Whole, there is no authority granted in the rules for that.

**Senator West:** As it relates to the rules, I mean, I thought that the resolution, or at least some iteration of something I've seen as it relates to the procedure that we would be following, would be if there was not anything specific in the resolution, then we would follow the general rules of the Senate. Is that correct?

**Senator Duncan:** Well, no, that's not correct, and again, I'm going to, you know, I'm not going to give advisory opinions. I think it'd be inappropriate in the resolution with—

**Senator West:** I'm just trying—

**Senator Duncan:** Regard to—

**Senator West:** To figure out what rules we're going to go by.

**Senator Duncan:** The, well, the rules are in the, in the red book and—

**Senator West:** Okay.

**Senator Duncan:** I think it's Article 13, if I remember correctly—

**Senator West:** Okay.

TX_00002810

USA_00019078

Case 2:13-cv-00193   Document 662-1   Filed on 11/11/14 in TXSD   Page 15 of 30
se 1:12-cv-00128-RMC-DST-RLW   Document 211   Filed 06/20/12   Page 149 of
Tuesday, March 10, 2009          SENATE JOURNAL                         439

**Senator Duncan:** Of the–

**Senator West:** Alright.

**Senator Duncan:** And I'm sure you've studied it.

**Senator West:** So, if in Rule 13, or whatever the case may be, as in terms of the Committee of the Whole, it says that we will follow the other rules of the Senate, then that's what we'll do. Is that correct?

**Senator Duncan:** Well, I, we'll follow the rule, and we'll–

**Senator West:** Okay.

**Senator Duncan:** Look at the rule and see what it says.

**Senator West:** If there's, now, let me get back to the Attorney General.   Your apprehension, in terms of having the Attorney General over here, is based on a personal apprehension, or something that you claim that the committee wants to do?

**Senator Duncan:** Senator, as I stated, I think, to Senator Van de Putte, you know, I think any Member of the Senate or any side of this bill would be entitled to invite the Attorney General over as a witness or a resource. I think it's up to him to say yes or no on that. I don't think it's, we can compel him, in my personal opinion, I think it's always unwise if the Attorney General is going to be defending the State of Texas, or at least advancing the State of Texas' interest as expressed by this Legislature, not be a witness in the legislative debate.

**Senator West:** Okay. Would you go, do you have your Senate Rules with you?

**Senator Duncan:** Probably somewhere.

**Senator West:** I'd ask you to look at Senate Rule 11.20, Subsection (b).

**Senator Duncan:** What page?

**Senator West:** Page 89.

**Senator Duncan:** Eighty-nine.

**Senator West:** Eighty-nine. It appears as though, if I'm reading this correctly, a Committee Chair may summon the governing board or other representative of a state agency, state agencies or an executive branch of government, to appear and testify before the committee without issuing process, that being a subpoena, under Subsection (a).   The summons may be communicated in writing, orally, or electronically. Does that appear to give you the authority to do that, if you so decide to do it as the Chairman? (inaudible, overlapping conversation)

**Senator Duncan:** Senator, I've looked at that, and I'm familiar with that, and I don't believe that the committee, that the power to, the power to subpoena arises through the standing committees and not the Chair. This would authorize the Chair to, through the standing committees, to do that. But the Committee of the Whole in, as general, doesn't have, in my view, and I've looked at this, actually, the power to subpoena witnesses who appear before us in, in a–

**Senator West:** So, if–

**Senator Duncan:** In a committee, pure Committee of the Whole, as we're going into.

TX_00002811
USA_00019079

**Senator West:** So, if indeed there is authority to do it, would you communicate to the Attorney General the desire of the committee to appear before the committee?

**Senator Duncan:** Well, if the committee had, Committee of the Whole had authority to issue a subpoena, then the subpoena would have to be approved by the body, so–

**Senator West:** Well, this particular provision that I just mentioned is an alternative, though, to issuing a subpoena. It gives the Chair the, basically, the discretion to ask that a witness appear–

**Senator Duncan:** Well.

**Senator West:** Not by subpoenaing, just by, basically, the Chair communicating that you want him over.

**Senator Duncan:** Senator.

**Senator West:** That's an alternative method of getting–

**Senator Duncan:** Well–

**Senator West:** Him before the committee.

**Senator Duncan:** Let's look at it this way. I'm not in the Chair right now. I'm sitting out here with you, and so, it, I think it's inappropriate for me to make a ruling out here at, in the cheap seats, so–

**Senator West:** Okay, but you, you will–

**Senator Duncan:** Uhm–

**Senator West:** Well, then, alright then, alright, it's not right yet. Is that what you're saying?

**Senator Duncan:** Right.

**Senator West:** Alright. It soon will be right. Now, let me get back then to the procedures. Would you go with me to section, Rule 13.04 on page 97.

**Senator Duncan:** What page?

**Senator West:** Ninety-seven. That rule says the rules of the Senate, as far as applicable, shall be observed in the Committee of the Whole. What's your interpretation of that?

**Senator Duncan:** Well, I think that the, again, I'm not in the Chair at this point in time. I think I'll read the rule as it states, the rules of the Senate, as far as applicable, shall be observed in Committee of the Whole–

**Senator West:** Okay.

**Senator Duncan:** Session, or Whole Senate.

**Senator West:** And it seems as though, to the extent that we have specificity in the resolution, and the resolution we control, and to the extent that there's nothing in a resolution, the Senate Rules will control the procedure for the Committee of the Whole. That's the way that I read that. How do you read it?

**Senator Duncan:** Senator, I'm sure we'll have an opportunity to debate that if I'm in the Chair.

**Senator West:** I look forward to it. Thank you, Sir.

**President:** Senator Shapleigh, for what purpose do you rise, Sir?

**Senator Shapleigh:** Some questions of the author.

**President:** Will Senator Duncan yield to Senator Shapleigh?

**Senator Duncan:** I yield.

**Senator Shapleigh:** Senator, there've been a lot of questions about the participation of the AG and your personal feeling, obviously, prior to taking the Chair, that his testimony would present a conflict in any later litigation.

**Senator Duncan:** Well, Senator, that's my personal, my personal observation is that the Attorney General should not be a witness in a legislative debate over which he will have jurisdiction to defend the position of the state at future times.

**Senator Shapleigh:** Would you agree that if the Attorney General undertook a rather extensive investigation of voter fraud, that that file and his findings would be relevant to the benchmark which is essential to establish, in this case, to change current procedures in the Voting Rights Act?

**Senator Duncan:** Senator, I, you know, I would assume that if there were public records available of that particular, any sort of effort or initiative to understand voter fraud, that those would be available to the committee, and if requested, they would be made available.

**Senator Shapleigh:** And if we were to subpoena him or his deputy for the purpose of bringing those records here so that we could examine them during the course of this committee, that would be relevant to our proceedings on whether or not voter fraud exists in the State of Texas?

**Senator Duncan:** I don't know whether or not it would.

**Senator Shapleigh:** And would you agree that a Committee Chair could issue that subpoena for the purposes of the Committee of the Whole?

**Senator Duncan:** Senator, I, we have discussed this generally, and I think it would be inappropriate at this point in time to give you an advance, a ruling without bringing the issue formally before the body, and this would not be the right forum to do that in.

**Senator Shapleigh:** This proceeding is articulated in the Constitution itself, I believe in Section 16. We had some discussion of that when the special order was issued back in January, and I want to talk a little bit about the participation and your interpretation of how the Lieutenant Governor participates in the Committee of the Whole. In the Section 16, it states that the Lieutenant Governor, when in the Committee of the Whole, has the right to debate and vote on all questions. Does that right extend to amendments?

**Senator Duncan:** That would be an advisory opinion. We'd have to take that up at the time you wanted to raise it before the Committee of the Whole.

**Senator Shapleigh:** Okay. Thank you.

**President:** Senator Gallegos, for what purpose do you rise, Sir?

TX_00002813
JA_004199

TX_00002813

USA_00019081

**Senator Gallegos:** To ask questions of–

**President:** Will Senator Duncan yield–

**Senator Gallegos:** The author of–(inaudible, overlapping conversation)

**President:** To Senator Gallegos?

**Senator Duncan:** I yield.

**Senator Gallegos:** Senator Duncan, let me go back a little bit. During the redistricting process, almost 10 years ago, when I was Co-chair and Senator Fraser was Co-chair, and you oversaw the process in those redistricting hearings. Is that correct?

**Senator Duncan:** I was just a member of the committee in 2001.

**Senator Gallegos:** Okay. Well, you were a member of the committee?

**Senator Duncan:** Yes, Sir.

**Senator Gallegos:** Let me ask you this, because then, and it relates to the questions that Senator West and the initial request by Senator Van de Putte and some of the other questions as far as the process in this resolution that you have, is that whenever you take up an issue like a procedure that's going to tell Texans how they can or cannot vote or what they must do on how to vote, and under the Voting Rights Act, like redistricting is, is that during that process that we went all over the state, had numerous public hearings and dealings with redistricting and those issues relating to redistricting, that during that process that we were allowed legal representation on both sides. Is that correct?

**Senator Duncan:** Senator, I believe that both sides are entitled to employ at their own expense independent counsel to represent their interest or advise them in any way possible. I, I'm not at, I recall 2003 because I was directly involved in that, and I don't recall that in that process that the Senate provided independent counsel for the party caucuses.

**Senator Gallegos:** But there was legal counsel present?

**Senator Duncan:** There was legal–

**Senator Gallegos:** Yes or no.

**Senator Duncan:** The committee employed legal counsel, correct.

**Senator Gallegos:** Okay. Now, on as far as the, in going back to Senator West's inquiries, Senator Ellis' inquiries, and this procedure on this resolution that you're introducing right now, that when it comes to the Attorney General and that he was or his office was present at those hearings, is that yes or no?

**Senator Duncan:** I don't know.

**Senator Gallegos:** Well, I believe it was yes, and he was there. And I guess my concern, along with Senator Ellis, Senator West, Senator Van de Putte, and the other colleagues that agree with me, is that the Attorney General is the legal representative for the citizens of the State of Texas. Is that not correct?

TX_00002814

## JA_004200

TX_00002814

USA_00019082

Case 2:13-cv-00193   Document 662-1   Filed on 11/11/14 in TXSD   Page 19 of 30
se 1:12-cv-00128-RMC-DST-RLW   Document 211   Filed 06/20/12   Page 153 of
Tuesday, March 10, 2009          SENATE JOURNAL          439

**Senator Duncan:** Senator, and let me go back to the last question you had. I don't know if they were there or not, meaning physically present or observing. I don't recall them testifying in 2003. I would, somebody might want to correct me, but I just simply don't recall it. So–

**Senator Gallegos:** Well–

**Senator Duncan:** I'm sorry, I just want to make sure you–

**Senator Gallegos:** Well, and–

**Senator Duncan:** Understand my answer.

**Senator Gallegos:** And you know, I, I'm trying to think back, too. I believe they were.

**Senator Duncan:** A lot of water's been under the bridge. A lot of–

**Senator Gallegos:** I mean, and what we're seeing.

**Senator Duncan:** Water went under the bridge during that time.

**Senator Gallegos:** Understand me, Senator, overseeing a process like redistricting or voter ID or anything having to do with the Texans' right to vote, under the Voting Rights Act that, yeah, I mean, it's common sense you've got to have legal counsel there, especially when you're having public testimony and allow everybody that wants to testify in front of the committee that is overseeing redistricting, voter ID, or whatever the issue is, when under the Voting Rights Act, that an attorney should be present that's going to oversee the process, like was during those hearings that we had all over the state. Now, my second question is back to the Attorney General. Now, he is the attorney for the State of Texas, and in this process that we're fixing to go through, as soon as we oversee your resolution and the procedures, is there no way, you're introducing this resolution, that you can put in there, as the Attorney General of the State of Texas overseeing Texans' rights, that either he or a representative of his office should be there and oversee Texans' rights as we, not only the resolution that you are presenting here before the floor but also that their rights be overseen? He was elected to oversee and protect us as the Attorney General of the State of Texas. I feel he should be on this floor protecting all citizens' rights whether they're for the bill or against the bill. It, I mean, but I'm asking you if you can add that to your resolution.

**Senator Duncan:** Senator, I guess, if you had, I mean, you can offer an amendment if you wish, but I don't intend to add that to the resolution.

**Senator Gallegos:** Well, wouldn't you agree with me, is he not the Attorney General of the State of Texas?

**Senator Duncan:** Yes, I will. I will agree with that.

**Senator Gallegos:** Did he not litigate the redistricting issue that we passed on this floor? And wasn't he our legal counsel in that court case?

**Senator Duncan:** In–

**Senator Gallegos:** Well, then I feel, if this is going to go to court–

TX_00002815
USA_00019083

Case 2:13-cv-00193 Document 662-1 Filed on 11/11/14 in TXSD Page 20 of 30
se 1:12-cv-00128-RMC-DST-RLW Document 211 Filed 06/20/12 Page 154 of
460                    81st Legislature — Regular Session                    21st Day

**Senator Duncan:** What–

**Senator Gallegos:** He needs to be our legal counsel on this issue.

**Senator Duncan:** Okay.

**Senator Gallegos:** And then that's why I think that he should. If he doesn't show up, then he's neglecting his duties that the Attorney General of the State of Texas overseeing this emotional issue on how to tell Texans how to vote. Now, don't you agree with me that he is the Attorney General of the State of Texas and is legal counsel for the State of Texas here on, and us, on any issue that we bring up before the state, before this floor, or over in the House? Yes or no?

**Senator Duncan:** I don't know that I entirely agree. I think that there are certain duties that the Attorney General has that are much different from–(inaudible, overlapping conversation)

**Senator Gallegos:** Did he not litigate redistricting case for us?

**Senator Duncan:** Once we, once the state, once the Legislature approved a redistricting plan that became the law of the State of Texas, it was his duty to defend that law.

**Senator Gallegos:** Well, that's what I'm saying here. As soon as this becomes, if he doesn't oversee the process, he is the one that's going to oversee this process and do the litigation for us if this issue goes to court. Is that not true?

**Senator Duncan:** Well, I think it's our duty to pass the law, and it's his duty, then, to represent the state in court, with regard to that law.

**Senator Gallegos:** So, what you're telling me, you will entertain an amendment to have the Attorney General present before we lay out this bill?

**Senator Duncan:** No, that's not what I said. I said that if you want to offer an amendment, you can do so.

**Senator Gallegos:** So, you're telling–

**Senator Duncan:** I–

**Senator Gallegos:** Well, let me make this perfectly–

**Senator Duncan:** That I–

**Senator Gallegos:** Clear–

**Senator Duncan:** I would not vote for it, but–

**Senator Gallegos:** You're telling me and everybody on this Senate floor that if I or any of my colleagues produce an amendment, or at, or introduce an amendment to have the Attorney General here, that you're going to, are you going to deny me that right or any of my colleagues' rights?

**Senator Duncan:** Senator, is–(inaudible, overlapping conversation)

**Senator Gallegos:** Are you going to vote "Yes" or "No"?

TX_00002816

USA_00019084

**Senator Duncan:** When you call it up, I will, I would prefer the amendment or the resolution to go through as I have proposed it.

**Senator Gallegos:** Thank you, Senator.

### MESSAGE FROM THE HOUSE

HOUSE CHAMBER
Austin, Texas
March 10, 2009

The Honorable President of the Senate
Senate Chamber
Austin, Texas

Mr. President:

I am directed by the House to inform the Senate that the House has taken the following action:

THE HOUSE HAS PASSED THE FOLLOWING MEASURES:

**HCR 80,** Recognizing March 2009 as National Women's History Month.

**HCR 85,** Declaring March 10, 2009, as Matagorda County Day at the State Capitol.

**HCR 87,** Declaring March 10, 2009, Brazoria County Day at the State Capitol.

**SCR 30,** In memory of Jess M. Irwin, Jr.

Respectfully,

/s/Robert Haney, Chief Clerk
House of Representatives

### SENATE RESOLUTION 205

Senator Ogden offered the following resolution:

WHEREAS, The Senate of the State of Texas is pleased to recognize the Boys and Girls Clubs of Texas for the valuable contribution they make to the young people of this state; and

WHEREAS, Boys and Girls Clubs provide services to over 418,000 school-aged young people in 172 cities in Texas; their goal is to inspire all young people, especially those who need it most, to realize their full potential as productive, responsible, and caring citizens; and

WHEREAS, Through strong, evidence-based, and proven-effective youth development programs, leaders in the Boys and Girls Clubs stress character and leadership development, education and career advancement, and health and life skills; they encourage an appreciation for the arts and provide programs in sports, fitness, and recreation; and

WHEREAS, The programs promote a better self-image and improved educational, social, emotional, and cultural awareness while encouraging community involvement, strong moral values, and enhanced life management skills; and

WHEREAS, On March 10, 2009, one of eight finalists from Texas will be chosen as Texas State Youth of the Year to represent the State of Texas in the National Youth of the Year contest for Boys and Girls Clubs of America; and

TX_00002817
JA_004203

WHEREAS, Through the years, Boys and Girls Clubs have encouraged young people to aspire to the highest level of personal development and to become good citizens who are involved in their communities; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 81st Legislature, hereby commend Boys and Girls Clubs across Texas for the outstanding services they provide young people and their families; and, be it further

RESOLVED, That a copy of this Resolution be prepared for the organization as an expression of high regard from the Texas Senate.

**SR 205** was read and was adopted without objection.

### SENATE RESOLUTION 307

Senator Huffman offered the following resolution:

WHEREAS, Proud citizens from Brazoria County are coming to Austin on March 10, 2009, to celebrate Brazoria County Day at the Texas State Capitol, and this occasion provides an opportunity to pay tribute to this important region of the Lone Star State; and

WHEREAS, Located along the Gulf Coast, Brazoria County has been blessed with 20 miles of natural beach; encompassing both the Brazoria and San Bernard National Wildlife Refuges, this notable Texas county boasts spectacular flora and fauna as well as excellent opportunities for hunting and fishing; and

WHEREAS, Before being settled by members of Stephen F. Austin's "Old 300" colonists in the early 1820s, this geographically diverse region was inhabited by members of the Karankawa tribe; officially created in 1836, the county was the site of General Santa Anna's signing of the Treaties of Velasco that same year, which effectively granted Texas its independence; and

WHEREAS, Angleton, the county seat, was founded in 1890 and today is an award-winning Keep Texas Beautiful city which offers visitors a host of interesting attractions, including antique shops, parks, and the Brazoria County Historical Museum; the town's annual events include the Brazoria County Fair and Christmas on the Square; and

WHEREAS, The populous Brazosport area is home to more than 58,000 people who live in eight adjacent cities: Clute, Freeport, Jones Creek, Lake Jackson, Oyster Creek, Quintana, Richwood, and Surfside Beach; Brazosport's diverse economy includes chemical processing, shipping via its deepwater seaport, commercial fishing, and tourism; other sizable cities in Brazoria County include Alvin, the hometown of Baseball Hall of Famer Nolan Ryan, and Pearland, a center for the chemical and oil industries; and

WHEREAS, From the pioneer era to the present, Brazoria County has been home to industrious and innovative citizens, and their many contributions to the Lone Star State are truly worthy of recognition; now, therefore, be it

RESOLVED, That the Senate of the 81st Texas Legislature hereby recognize March 10, 2009, as Brazoria County Day at the State Capitol and extend a warm welcome to the citizens who have traveled to Austin to celebrate this occasion.

HUFFMAN
JACKSON

**SR 307** was read and was adopted without objection.

TX_00002818
JA_004204

## SENATE RESOLUTION 284

Senator Jackson offered the following resolution:

WHEREAS, The Senate of the State of Texas is pleased to recognize the Brazoria County Cavalry for its impressive support of the men and women of the armed forces, veterans, police officers, fire fighters, and emergency service responders; and

WHEREAS, Composed of more than 400 motorcyclists from Southeast Texas, the Brazoria County Cavalry provides gratitude and respect to those who serve our state and nation in military and public service; and

WHEREAS, The members of this exceptional organization show their dedication to those who serve by appearing in force at the homecoming of soldiers and at funerals of the fallen, offering support and admiration in times both joyful and solemn; and

WHEREAS, The members of the Brazoria County Cavalry put aside their own interests in the wake of Hurricane Ike to help repair and rebuild a fence in Angleton decorated with crosses representing each soldier killed in Iraq and Afghanistan; their generosity and pride of service embodies the ideals of our state and nation; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 81st Legislature, hereby commend the members of the Brazoria County Cavalry on their dedication to the men and women who serve our state and nation and extend to them gratitude and appreciation for their devotion and service; and, be it further

RESOLVED, That a copy of this Resolution be prepared for this outstanding organization as an expression of esteem from the Texas Senate.

JACKSON
HUFFMAN

**SR 284** was read and was adopted without objection.

## CONCLUSION OF MORNING CALL

The President at 11:55 a.m. announced the conclusion of morning call.

## AT EASE

The President at 11:56 a.m. announced the Senate would stand At Ease subject to the call of the Chair.

## IN LEGISLATIVE SESSION

The President at 12:35 p.m. called the Senate to order as In Legislative Session.

## COMMITTEE OF THE WHOLE SENATE

The President at 12:35 p.m. announced that the Senate would resolve into the Committee of the Whole Senate with President Pro Tempore Duncan presiding.

## IN LEGISLATIVE SESSION

The President called the Senate to order at 9:29 a.m. **Wednesday, March 11, 2009,** as In Legislative Session.

TX_00002819
JA_004205

## COMMITTEE OF THE WHOLE SENATE REPORT

Senator Duncan was recognized and reported that the Committee of the Whole Senate had met and reported **SB 362** to the Senate with the recommendation that it do pass and be printed.

## MOTION IN WRITING

Senator Fraser offered the following Motion In Writing:

Mr. President:

I move that **SB 362**, relating to voter identification requirements, be made a special order for Monday, March 16, 2009, and thereafter until disposed of on second and third readings.

FRASER

The motion prevailed by the following vote: Yeas 19, Nays 12.

Yeas: Averitt, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

## SENATE RESOLUTION 410

Senator Lucio offered the following resolution:

WHEREAS, Proud residents of the Mid-Valley region of Texas are gathering in Austin on March 11, 2009, to celebrate Mid-Valley Day at the State Capitol; and

WHEREAS, Located in the Rio Grande Valley, the Mid-Valley region includes the towns of Alamo, Donna, Mercedes, Progreso, Progreso Lakes, San Juan, and Weslaco; this area is a center for agribusiness, with farmers producing sugarcane, grains, and citrus fruit such as grapefruits and oranges; and

WHEREAS, The City of Alamo has been undertaking a far-reaching revitalization plan that has resulted in the construction of a new city hall, public library, and public works center; in addition, the town is making significant improvements to its infrastructure and fire department and police facilities; and

WHEREAS, Upholding the motto "the City with a Heart in the Heart of the Rio Grande Valley," Donna looks forward to the completion of the Donna International Bridge to Mexico; the eight-lane bridge is expected to bolster the city's economy because of the increased number of shoppers and tourists traveling to and from Mexico; and

WHEREAS, Mercedes has long been a major center for the processing and marketing of livestock, cotton, and vegetables, and it is also known for its boot makers and the shopping opportunities at the Rio Grande Valley Premium Outlets; the annual Rio Grande Valley Livestock Show and Rodeo draws more than 200,000 people to town each year, and the event provides valuable scholarship funds for 4-H and Future Farmers of America students; and

WHEREAS, In addition to being centers for the sugarcane business, Progreso and Progreso Lakes have been serving as gateways to the Rio Grande Valley since the opening of the Progreso-Nuevo Progreso International Bridge in 2003; and

TX_00002820<br>JA_004206

WHEREAS, Fast-growing San Juan is the home of the Virgen de San Juan del Valle Shrine, which attracts multitudes of pilgrims from throughout the United States and Mexico, and the town has also installed a landmark flagpole that pays tribute to the men and women who have served in the nation's armed forces; and

WHEREAS, The City of Weslaco has become a favorite destination for tourists, golfers, retirees, and birders and is the location of two important Texas A&M University research stations; the annual Onion Fest celebrates the development of the famous Texas 1015 onion in Weslaco, and this popular event brings many visitors to the city; and

WHEREAS, Throughout the Mid-Valley region, great emphasis is placed on the value of education, and one particularly striking example of the Mid-Valley's educational achievements came in December of 2008, when *U.S. News & World Report* ranked the Science Academy of South Texas in Mercedes among the nation's top 100 high schools; and

WHEREAS, The residents of this dynamic region of the Lone Star State are justifiably proud of their hard work, civic commitment, and innovative spirit, and their efforts have created a group of notable Texas communities that are well prepared to meet the challenges and opportunities of the future; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 81st Legislature, hereby recognize March 11, 2009, as Mid-Valley Day at the State Capitol and extend to the visiting delegation best wishes for an informative and enjoyable stay in Austin.

**SR 410** was read and was adopted without objection.

### GUESTS PRESENTED

Senator Lucio was recognized and introduced to the Senate Mid-Valley region Mayors Omar Vela, Pedro Contreras, Rudy Villarreal, Joel Quintanilla, and Buddy de la Rosa, accompanied by a delegation of citizens from the Mid-Valley region.

The Senate welcomed its guests.

### RESOLUTION SIGNED

The President announced the signing of the following enrolled resolution in the presence of the Senate: **SCR 30**.

### SENATE RESOLUTION 409

Senator Uresti offered the following resolution:

WHEREAS, The Senate of the State of Texas is pleased to join the citizens of Uvalde County and Texans across the state in celebrating March 11, 2009, as Uvalde County Day at the State Capitol; and

WHEREAS, Created by the Texas Legislature in the mid-1850s out of territory from Bexar County, Uvalde County was named for the Spanish governor of Coahuila, Juan de Ugalde, who had led troops to a decisive victory over Apache warriors in 1790; and

WHEREAS, The City of Uvalde is the county seat; founded by Reading W. Black in the 1850s, it is known for its four public plazas and its picturesque architecture; and

TX_00002821
JA_004207

TX_00002821

USA_00019089

WHEREAS, Uvalde County was home to Garner Army Air Field during World War II; the former airfield is now the site of Southwest Texas Junior College; and

WHEREAS, Known as the County of 1,000 Springs, Uvalde County is also a center for wool and mohair production, and its agricultural output plays a major role in the county's economy; and

WHEREAS, The citizens of Uvalde County are justly proud of its long and distinguished history and the many achievements its citizens have made to further the growth and progress of our state; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 81st Legislature, hereby commend the citizens of Uvalde County on their many contributions to our state and extend to them a heartfelt welcome to Austin for Uvalde County Day at the State Capitol; and, be it further

RESOLVED, That a copy of this Resolution be prepared in honor of this special day.

SR 409 was read and was adopted without objection.

## GUESTS PRESENTED

Senator Uresti was recognized and introduced to the Senate representatives of Uvalde County: Uvalde Mayor Cody Smith, County Commissioner Jesse Moreno, County Attorney John P. Dodson, Sheriff Charles Mendeke, and Uvalde Mayor Pro Tempore Raul T. Flores, accompanied by a delegation of citizens from Uvalde County.

The Senate welcomed its guests.

## SENATE RESOLUTION 412

Senator Zaffirini offered the following resolution:

WHEREAS, On March 11, 2009, people from across Atascosa County are traveling to the State Capitol to celebrate their community's heritage and to share with fellow Texans their history, traditions, and achievements; and

WHEREAS, The name Atascosa, derived from the Spanish word for boggy terrain, was used to describe the area as early as 1788; during the first part of the 19th century, this grassy prairie region of South Texas attracted Spanish, Mexican, and Anglo-American settlers, and by the time of the Texas Revolution, its ranching industry was flourishing; and

WHEREAS, In 1856, the region was sufficiently populated to be sectioned off from Bexar County; the original county seat at Navatasco was later permanently moved to the centrally located town of Jourdanton; and

WHEREAS, Situated next to the famous Camino Real, the county has long benefited from its proximity to major transportation arteries linking it with the Gulf Coast, the Rio Grande Valley, and Mexico, as well as other major population centers; and

WHEREAS, Atascosa County enjoys the economic benefits reaped by an abundance of natural resources and, blessed with productive range and irrigated farmland, the area is known for its farming and ranching industries; and

USA_00019090

Case 2:13-cv-00193   Document 662-1   Filed on 11/11/14 in TXSD   Page 27 of 30
se 1:12-cv-00128-RMC-DST-RLW   Document 211   Filed 06/20/12   Page 161 of
Tuesday, March 10, 2009                    SENATE JOURNAL                              469

WHEREAS, Proud of its ranching heritage, Pleasanton, the county's trading center, bills itself as the birthplace of the cowboy, a designation symbolized by a large bronze statue in front of city hall; in nearby Poteet, known to many as the Strawberry Capital of the World, a seven-foot, 1,600-pound monument to the fruit graces the front lawn of city hall, and a Strawberry Festival, the fourth-largest agricultural festival in the state, takes place in April; and

WHEREAS, Other resources such as oil and gas also play a significant role in the county's ongoing development, but the most important asset in the area's increasingly diverse economy is undoubtedly its industrious citizenry; and

WHEREAS, For more than a century, residents of Atascosa County have contributed to the economic and cultural development of Texas, and they are justifiably proud of their rich history; it is indeed appropriate that they be honored on this day; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 81st Legislature, hereby recognize March 11, 2009, as Atascosa County Day at the State Capitol and extend a warm welcome to all visitors from that fine county.

**SR 412** was read and was adopted without objection.

### GUESTS PRESENTED

Senator Zaffirini was recognized and introduced to the Senate Diana J. Bautista, Atascosa County Judge; Lon Gillespie, County Commissioner; Diane Gonzales, County Clerk; Michael Lambaria, Veterans County Service Officer; and Roger Garza, Pleasanton City Councilmember.

The Senate welcomed its guests.

### SENATE RESOLUTION 411

Senator Lucio offered the following resolution:

WHEREAS, Kingsville is truly an "All American City," having been founded on the Fourth of July in 1905; and

WHEREAS, Kingsville is home to the world-famous King Ranch, which developed the Santa Gertrudis and Quarter Horse breeds, produced the Triple Crown winner Assault, and has been a world leader in agriculture for over 150 years; and

WHEREAS, Kingsville is home to Texas A&M University–Kingsville and its world renowned Frank H. Dotterweich College of Engineering, Dick and Mary Lewis Kleberg College of Agriculture, Caesar Kleberg Wildlife Research Institute, and Irma Rangel College of Pharmacy; and

WHEREAS, The city is also known for producing the Star Ruby red grapefruit and its university has won seven National College Football Championships and has been the flagship of higher education in South Texas since 1925; and

WHEREAS, Kingsville is home to the nation's premier undergraduate pilot training facility, Naval Air Station Kingsville, which trains pilots in the United States Navy and Marine Corps; and

WHEREAS, Kingsville has volunteered its sons and daughters in defense of our nation through every major conflict in the past 100 years, including native son General Dickie Cavazos, the first person of Mexican-American descent to become a four star general in the United States Army; and

TX_00002823
USA_00019091

WHEREAS, Kingsville today is a thriving community with diversified industries powered by multiple energy sources, including oil and gas, uranium, and wind and solar power; and

WHEREAS, Kingsville's economy has continued to grow, creating new jobs, increased construction, an expanded tax base, and improved quality of life; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 81st Legislature, hereby declare March 11, 2009, to be Kingsville Day and urge all citizens of this state to join in recognizing the countless contributions that the City of Kingsville and Kleberg and Kenedy Counties have made to the growth and development of the region, the state, and the country; and, be it further

RESOLVED, That a copy of this Resolution be prepared in honor of this special day.

**SR 411** was read and was adopted without objection.

### GUESTS PRESENTED

Senator Lucio was recognized and introduced to the Senate Kleberg County Judge Pete De La Garza, accompanied by a delegation of citizens from Kleberg County.

The Senate welcomed its guests.

### RESOLUTIONS OF RECOGNITION

The following resolutions were adopted by the Senate:

### Memorial Resolutions

**SR 401** by Nelson, In memory of Vyarl Wayne Martin of Hurst.

**SR 407** by Ellis, In memory of John Cleveland Hooper of Columbus, Mississippi.

**SR 413** by Zaffirini, In memory of María Rosa Ramírez of Laredo.

### Congratulatory Resolutions

**SR 398** by Nichols, Congratulating Jean Paul Destarac of Tyler for being named a Distinguished Finalist by the Prudential Spirit of Community Awards program.

**SR 399** by Nichols, Congratulating Russell Frautschi and Katie Stark of Athens High School for advancing to the state University Interscholastic League debate competition.

**SR 402** by Nelson, Congratulating Jim McDermott for receiving a 2009 Lifetime Achievement Award for Staff Leadership from the National Council for Community Behavorial Healthcare.

**SR 403** by Nelson, Recognizing Richard Stephen Kitchen on the occasion of his retirement from the North Richland Hills Police Department.

**SR 404** by Nelson, Recognizing Theressa Bilger on the occasion of her retirement from the North Richland Hills Police Department.

**SR 405** by Deuell, Congratulating Patrick Foster of Sachse for being honored by the Prudential Spirit of Community Awards program.

**SR 414** by Shapiro, Recognizing Von William Byer for his work in Senator Shapiro's office.

**SR 415** by Shapiro, Recognizing Tara Korstad for her work in Senator Shapiro's office.

### Official Designation Resolution

**SR 400** by Nichols, Recognizing April 10, 2009, as Texas Folklore Society Day.

### RECESS

On motion of Senator Whitmire, the Senate at 9:54 a.m. recessed until 10:00 a.m. Friday, March 13, 2009.

---

### APPENDIX

---

### BILL ENGROSSED

March 9, 2009

**SB 643**

### RESOLUTIONS ENROLLED

March 9, 2009

**SCR 18**, **SCR 29**, **SCR 31**, **SCR 36**, **SR 369**, **SR 377**, **SR 383**, **SR 384**, **SR 385**, **SR 386**, **SR 387**, **SR 388**, **SR 389**, **SR 390**, **SR 391**, **SR 392**, **SR 393**, **SR 395**, **SR 396**

### SENT TO SECRETARY OF STATE

March 10, 2009

**SCR 36**

### SENT TO GOVERNOR

March 10, 2009

**SCR 18**, **SCR 29**, **SCR 31**

March 11, 2009

**SCR 30**

TX_00002825

USA_00019093

TX_00002826
JA_004212

TX_00002826

USA_00019094