Record Type: VOTER    Record ID: 9111295    Imaging Dept. ID: 236217278



CARL S. SMITH VOTER REGISTRAR
HARRIS COUNTY
P.O. BOX 3527
HOUSTON, TEXAS 77001

VOTER REGISTRATION CERTIFICATE
(CERTIFICADO DE REGISTRO ELECTORAL)

| CERTIFICATE NUMBER | VALID FROM | PRECINCT | SEX |
|---|---|---|---|
| 0911129-5 | 3- 1-80 | 661 | F |

438     C     0911129-5
KAPELKA JOYCE LAYOW

POSTMASTER-DO NOT FORWARD-RETURN POSTAGE GUARANTEED

MAY 21 1980

JUN 30 1980

KAPELKA JOYCE LAYOW
14318 Broadgreen
Houston, Texas 77079

Doc ID: 5735541   Page: 4 of 7

TX_00002430
JA_005189

TX_00002430

USA_00020071

Record Type: VOTER    Record ID: 9111295    Imaging Dept. ID: 236217278

**VOTER REGISTRATION APPLICATION** MAY 10 [...]

Certificate Number 0911129-5

KAPELKA JOYCE LAYOW

(For Official use only)    Election Pct. T

Mail or deliver to Tax Assessor-Collector of [...] every blank. "Effective on 30th day after deliv[...]

TYPE OR PRINT.

Social Security No.

Last name   KaPeLKa

First name (do not use husband's first name)   Joyce

Middle name   MArie

SEX   [M/F] F

Birth Date   4   28   46   Phone #

City   SyRACuse   or County

Birth Place   State   New YoRK   or Foreign Country

If naturalized, when or his location

If now registered in another Texas County   Name of County

Last Residence Address in County

City        Zip

Maiden name or [...]

PERMANENT RESIDENCE ADDRESS
7 SW 9 LuTeRsHAM

Street & apt # (not P.O. Box)

City   HousToN   Texas   77.77

Zip

MAILING ADDRESS IF DIFFERENT FROM ABOVE

Street or P. O. Box

City

State        Zip

I certify that the applicant is 18 years of age or over, is a citizen of the United States, has not all legal requirements, and holds legal residence in this county. I understand that the giving of false information to procure the registration of a voter is a felony.

SIGNATURE OF VOTER OR AGENT

[signature]

Husband-Wife-Mother-Father-Son-Daughter

The disclosure of social security number is voluntary only, is solicited by authority of Section 43a, Texas Election Code, and will be used only by election officials to maintain the accuracy and integrity of the registration records.

Doc ID: 5735541   Page: 6 of 7

Record Type: VOTER    Record ID: 9111295    Imaging Dept. ID: 236217278

# Paul Bettencourt

*Harris County Tax Assessor-Collector and Voter Registrar*

Date Mailed: August 22, 2000

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

KAPELKA JOYCE LAYOW
14318 BROADGREEN DR
HOUSTON TX 77079-6605
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

## VOTER REGISTRATION NOTICE

The addressee's name, Social Security number, and date of birth matched exactly with that of a record in the Social Security Death Index database. This indicates that the registered voter named in this notice is deceased.

Please respond by providing the information requested below. Please include your signature and your relationship to the voter in the space provided below. Upon the receipt of your response, we will update the record. This notice will not affect your Social Security benefits.

**WARNING:** This voter registration is subject to cancellation if an appropriate reply is not provided to the voter registrar by the 60th day after the date this notice is mailed (Texas Election Code Sec. 16.033 (c)).

If you have any questions, or if this information is inaccurate, please call our office at (713) 224-1919 as soon as possible. Our Web site at [www.tax.co.harris.tx.us] contains an updated Harris County Voter Registration database for your reference.

Thank you for your assistance.

Paul Bettencourt                    Marty Morrison
Voter Registrar, Harris County, Texas    Director of Voter Registration

I hereby confirm that KAPELKA JOYCE LAYOW is: ☐ 9/11/2·    KAPELKA JOYCE LAYOW

☑ Deceased.                                              09111295

☐ Not deceased and the information is inaccurate.

Signature _____    Date 08/23/0

My relationship to KAPELKA JOYCE LAYOW is: ___ Son

Please complete this form and return to:    **Paul Bettencourt**
                                            **Tax Assessor-Collector**
                                            **P. O. Box 3527**
                                            **Houston, TX 77253-3527**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
236217278

Doc ID: 5735541    Page: 1 of 7.

PublicData.Com [ SSA Death Master File Detail ]                                    Page 1 of 1

# PublicData.com

➡ *SSA Death Master File Detail*

| Name<br>KAPELKA,JOYCE M | Social Security Number | Verify/Proof<br>Death certificate<br>observed | Last Known ZIP<br>Code |
|---|---|---|---|
| Lump Sum Payment ZIP<br>Code | State/Country of<br>Residence<br><br>none found | Date of Birth<br>Sep 20 1946 | Date of Death<br>Jan 9 1998 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www7.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=11520433&...   5/2/2007

TX_00002433
JA_005192

TX_00002433

USA_00020074



TX_00002434

USA_00020075

FEB - 1 1993

OVER 65 PERMANENT EXEMPTION FROM JURY SERVICE

TEXAS DRIVER'S LIC. #_____ CERT # 0131202-4

TEXAS IDENTIFICATION #_____ CODE 2 DATE 1/15/93

NAME _____

LAST          FIRST          MIDDLE   TK29.93

ADDRESS 9255 Theysen Dr., Hov, TX  77080

DATE OF BIRTH 6-5-1911

PLACE OF BIRTH Valley Mills, Texas

IN ACCORDANCE WITH ARTICLE 6137a, REVISED CIVIL STATUTES OF
TEXAS, I AFFIRM THAT I AM OVER 65 YEARS OF AGE AND DESIRE A
PERMANENT EXEMPTION FROM JURY SERVICE ON THAT GROUND.

SIGNATURE T. D. Kitching   DATE Jan - 27-1993

Name on record Kitching, T.D.   Dep. V.T.A.

DEC 17 1979

370    C    0131202-4

KITCHING T D

JAN 11 1980

POSTMASTER-DO NOT FORWARD-RETURN POSTAGE GUARANTEED

CARL S. SMITH VOTER REGISTRAR
HARRIS COUNTY
P.O. BOX 3527
HOUSTON, TEXAS 77001

Name and mailing address (Nombre y dirección de correo)

0131202-4

APPLICATION FOR VOTER REGISTRATION CERTIFICATE
HARRIS COUNTY, TEXAS    316219    KITCHING T D

300256    300256    AGE 59   SEX X MALE    CONTROL NO

RESIDENT ADDRESS    VOTING PRECINCT

7816 AMELIA    299

HOUSTON

VOTER'S NAME    CORRECTIONS

KITCHING T D
7816 AMELIA
HOUSTON    TX

T. D. Kitching
SIGNATURE OF VOTER/AGENT
(CIRCLE ONE WHERE APPLICABLE)
HUSBAND  WIFE  FATHER  MOTHER  SON  DAUGHTER

TO COMPLETE APPLIC... OTHER SIDE MUST BE FILLED IN

Re:    KITCHING T D
Certificate #    0131Z0Z4 1

X-

Confirmation is hereby given that the person named above is:
Se da aquí confirmación que la antedicha persona nombrada a:

X Deceased/Fallecido

☐ Not deceased and the information is incorrect (No a fallecido y la información esta incorrecta)

Signature/Firma Pauline D Kitching   Date/Fecha Aug. 23. 1999

Relationship/Parentesco Wife.

PublicData.Com [ SSA Death Master File Detail ]                                      Page 1 of 1

# PUBLICDATA.com

➡ *SSA Death Master File Detail*

| Name<br>KITCHING,TOM D | Social Security Number | Verify/Proof<br>Report verified with a family member | Last Known ZIP Code<br>77080 |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of Residence<br>Unknown | Date of Birth<br>Jun 5 1911 | Date of Death<br>Jun 29 1996 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www7.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=51685015&...   5/2/2007



MAY 2 1 1993

65 PERMANENT EXEMPTION FROM JURY SERVICE

DRIVER'S LIC. # ____ VOTER CERT. # C/65,896-2

IDENTIFICATION # ____ CODE 2 DATE 5-18-93

LONGMIRE SYLVESTER M

LAST FIRST /MIDDLE

SS 211 Rose lane E -Houston TX 77076

OF BIRTH 7-1-23 045-8443

OF BIRTH Sterling, OKLA

CORDANCE WITH ARTICLE 2137a, REVISED CIVIL STATUTES OF
, I AFFIRM THAT I AM OVER 65 YEARS OF AGE AND DESIRE A
NENT EXEMPTION FROM JURY SERVICE ON THAT GROUND.

TURE S.H. Longmire DATE 5-21-93

on record Longmire S.H. Dep. Rudy Montez

---

326712 | APPLICATION FOR VOTER REGISTRATION CERTIFICATE | 016569
HARRIS COUNTY, TEXAS 347460

☐ CHECK HERE IF SERVICEMAN 32A212 | AGE 48 | SEX X MALE ☐ | LONGMIRE S H

| RESIDENCE: I CERTIFY THAT THE APPLICANT IS 18 YEARS OF AGE OR OVER A CITIZEN OF THE UNITED STATES, AND HAS RESIDED IN TEXAS MORE THAN 1 YEAR AND IN COUNTY AND CITY MORE THAN 30 MONTHS PRECEDING THE DATE OF THIS APPLICATION EXCEPT AS LISTED BELOW. I UNDERSTAND THAT THE GIVING OF FALSE INFORMATION TO PROCURE THE REGISTRATION OF A VOTER IS A FELONY. EXCEPTIONS: | RESIDENT ADDRESS | VOTING PRECINCT | CONTROL |
|---|---|---|---|
| | 211 E ROSE LANE | 321 | |
| | HOUSTON | (IF KNOWN) | |

| SHOW DATE OF ARRIVAL | MONTH | DAY | YEAR | VOTER'S NAME (MAIL CERTIFICATE TO THE FOLLOWING TEMPORARY ADDRESS IF IT IS NOT TO BE MAILED TO THE PERMANENT ADDRESS ABOVE.) | CORRECTIONS |
| * IN TEXAS LESS THAN 1 YEAR | | | | LONGMIRE S H | |
| * IN COUNTY LESS THAN 6 MOS. | | | | 211 E ROSE LANE | |
| IF IN CITY LESS THAN 6 MOS. | | | | HOUSTON        TX 77022 | |
| * IF UNDER 21, SHOW DATE OF BIRTH | | | | | |

IF UNDER 21 YEARS OLD, NEVER MARRIED AND MINORITY DISABILITIES HAVE NOT BEEN REMOVED BY COURT, GIVE NAME AND ADDRESS OF PARENTS OR GUARDIAN.

X X X X X X X X X X X X | X X X X X X X X X X X XX
NAME _____ ADDRESS _____ STREET

➤ S.H. Longmire

SIGNATURE OF VOTER/AGENT
HUSBAND WIFE FATHER MOTHER SON OR DAUGHTER ON
(CIRCLE ONE WHERE APPLICABLE)
TO COMPLETE APPLICATION ____ LLED IN

---

119826 | 119826 | APPLICATION FOR RENEWAL OF VOTER REGISTRATION
HARRIS COUNTY, TEXAS | CERTIFICATE NO. A193960

| AGE 51 | SEX X MALE ☐ FEMALE | DATE JAN 20 1975 |

FOR VOTING YEAR BEGINNING MARCH 1, 1975, AND SUCCEEDING THREE YEARS

STATEMENT:

| I CERTIFY THAT I AM A CITIZEN OF THE UNITED STATES AND AM STILL A QUALIFIED ELECTOR OF HARRIS COUNTY, TEXAS. BY RETURNING THIS SIGNED STATEMENT TO THE REGISTRAR, I WILL BE REGISTERED FOR THE THREE (3) SUCCEEDING VOTING YEARS BEGINNING MARCH 1, 1975. I UNDERSTAND THAT THE GIVING OF FALSE INFORMATION TO PROCURE THE REGISTRATION OF A VOTER IS A FELONY. | RESIDENT ADDRESS-DO NOT USE P.O. BOX | PRECINCT NO. |
|---|---|---|
| | 211 E ROSE LANE | |
| | HOUSTON | 321 |
| | VOTERS NAME: MAILING ADDRESS | CORRECTIONS |
| | LONGMIRE S H | |
| | 211 E ROSE LANE | |
| | HOUSTON TX 77022 | |

S.H. Longmire

SIGNATURE OF VOTER/AGENT
HUSBAND WIFE, FATHER MOTHER, SON OR DAUGHTER JANUARY 29

THIS STATEMENT MUST BE RETURNED TO THE VOTER REGISTRAR BY MARCH 1, 1975 FOR CONTINUOUS REGISTRATION
SEE OTHER SIDE

Case 2:13-cv-00193 Document 662-31 Filed on 11/11/14 in TXSD Page 10 of 25
Case 1:12-cv-00128-RMC-DST-RLW Document 213 Filed 06/20/12 Page 80 of 203
PublicData.Com [ SSA Death Master File Detail ]

Page 1 of 1

# PUBLICDATA.com

➡️ *SSA Death Master File Detail*

| Name<br>LONGMIRE,SYLVESTER<br>H | Social Security<br>Number | Verify/Proof<br>Report verified with a<br>family member | Last Known ZIP<br>Code<br>77076 |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of<br>Residence<br>Unknown | Date of Birth<br>Jul 1 1923 | Date of Death<br>Nov 15 1996 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www7.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=53921010&...  5/2/2007

TX_00002440

USA_00020081

TX_00002440
JA_005199

**Office of Beverly B. Kaufman, County Clerk, Harris County, Texas**
*Probate Court Inquiry System*

```
R.C.DOCKET.SUB.                    .APPLICANT'S        .ATTORNEY OF RECORD    .NATURE  .DATE OPEND.
C.T.NUMBER.DKT.STYLE OF PROBATE    .NAME AND ADDRESS   .AND ADDRESS           .OF PROC .MM DD YYYY.FILM CODE.
=========================================================================================================
1 2 287128 001 LONGMIRE SYLVESTER H'D' LONGMIRE JANE CORNELIA CAGLE CACTUS J     PW-LT   12-09-1996 646751620
               211 E ROSE LN           HOUSTON TX 77076     616 FM 1960 WEST #340 HOUSTON TX 77090
```

Total lines retrieved = 2 Lines displayed = 2

| Back to Inquiry | | Main Menu |

Case 1:12-cv-00128-RMC-DST-RLW   Document 213   Filed 06/20/12   Page 87 of 203



MCLEAN WILLIS H
1020503-7

Re: MCLEAN WILLIS H
Certificate # 10205037 1

**X-**

Confirmation is hereby given that the person named above is:

*Se da aqui confirmacion que la antedicha persona nombrado a:*

☒ Deceased/*Fallecido*

☐ Not deceased and the information is incorrect (*No a fallecido y la informacion esta incorrecto*)

Signature/*Firma* _Mdellechean_     Date/*Fecha* 8-31-99

Relationship/*Parentesco* _Widow_

---

```
DV 102050371
PREVIOUS TRANSACTION COMPLETE.  ENTER NEXT COMMAND.    DELETED RECORD
                                 ISSUE  11 01 76
> STAT/FLAG < D X > 00           EFDT < 08-03-99 >    UPDT 675 293 2 082499

SSNO <       >  SEX < M >        BRDT < 06-06-1921 >         TRACKING # C ST
                                                           < ARGENTINA 1 XX >
         DLNO <                  COFM < _____ >

NAME < MCLEAN_WILLIS_H_____ 2 >         ____ PCT < 0076 >   OPEN <      >

RADR < 11631 _ KIRKHOLLOW_DR____ ____ > MADR1 < _____ >
                                        MADR2 < _____ >
RCTY < HOUSTON    RZIP 77089-0000 >     MCZP < _____ 00000-0000 >
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 US/REP 022   TOM_DELAY___(R)_____
 ST/SEN 011   MIKE_JACKSON____(R)_____
 ST/REP 146   AL_EDWARDS___(D)_____
 COMM     1   EL_FRANCO_LEE___(D)_____
 JP/C    02   GARY_FREEMAN___JP--JO_ANN_DELGADO,_GEORGE_RISNER_____
 ST/BE   07   DAVID_BRADLEY___(R)_____ WTR _____
 SCH    021   PASADENA_ISD_____ RFPD _____
 CLG    047   SAN_JACINTO_CLGE_DISTRICT SPEC 966 #966_____
 CITY         _____ OTHR _____ <_>
```

TX_00002442
JA_005201

TX_00002442

USA_00020083

PublicData.Com [ SSA Death Master File Detail ]                    Page 1 of 1

# PublicData.com

➡*SSA Death Master File Detail*

| Name<br>MCLEAN, WILLIS H | Social Security Number | Verify/Proof<br>none found | Last Known ZIP Code<br>77089 |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of Residence<br>none found | Date of Birth<br>Jun 6 1921 | Date of Death<br>May 24 1995 |

*The detail view of this record will be recorded as one 'Detail look-up'.*



Record Type: VOTER    Record ID: 1154038    Imaging Dept. ID: 007155428

Return Address:
713-224-1919
CARL S SMITH, VOTER REGISTRAR
HARRIS COUNTY
P.O. BOX 3527
HOUSTON, TEXAS 77253-3527

Secretary of State's Office
Elections Division
1-800-252-VOTE

0115403-8

PRESORTED
FIRST CLASS MAIL
U S POSTAGE PAID
HOUSTON, TEXAS
PERMIT NO. 9495

VOTER REGISTRATION CERTIFICATE
(Certificado de Registro Electoral)
HARRIS COUNTY (Condado)

| Cert.No. (Núm. de Cert.) | Sex (Sexo) | Valid From (Válido desde) |
|---|---|---|
| 0115403-8 | M | 01-01-98 |

| Date of Birth (Fecha de nacimiento) | Prec.No.(Pct. Núm.) | Exp (Hasta) |
|---|---|---|
| 10-11-22 | 0271 | 12-31-99 |

Home and Permanent Residence Address (Nombre y dirección residencial permanente)

MIMS FRANK JR
3914 MADDEN LN
HO[...]

DO NOT CUT—FOLD ON DOTTED LINE
Favor de no cortar - Doble su certificado en la linea indicada

02[...]131    1    07

RETURN SERVICE REQUESTED

✼✼✼✼✼✼✼✼✼AUTOCR✼✼C-005
MIMS FRANK JR

!039 1197 28 12/23/97

CT
-1117

X
(sign)

007155428

Doc ID: 730944   Page: 1 of 1.

Record Type: VOTER     Record ID: 1154038     Imaging Dept. ID: 236217269



APPLICATION FOR VOTER REGISTRATION CERTIFICATE
HARRIS COUNTY, TEXAS

AGE 49    SEX [x] MALE    MIMS FRANK JR

RESIDENT ADDRESS

3914 MADDEN
HOUSTON

VOTER'S NAME

MIMS FRANK JR
3914 MADDEN
HOUSTON          Tx 77047

SIGNATURE OF VOTER / AGENT
Frank Mims Jr

TO COMPLETE APPLICATION OTHER SIDE MUST BE FILLED IN

Doc ID: 5735943    Page: 6 of 7.

TX_00002446
JA_005205

TX_00002446

USA_00020087

Record Type: VOTER   Record ID: 1154038   Imaging Dept. ID: 236217269



Doc ID: 5735943   Page: 4 of 7.

TX_00002447
JA_005206

TX_00002447

USA_00020088

Case 2:13-cv-00193 Document 662-21 Filed on 11/11/14 in TXSD Page 19 of 25
Case 1:12-cv-00128-RMC-DST-RLW Document 213-3 Filed 08/20/12 Page 95 of 203
Record Type: VOTER Record ID: 1734038 Imaging Dept. ID: 23621/269

| | | | MIMS FRANK JR | |
| | | | ~~0045483-0-~~ | DX |
| *CANCELLATION OF VOTER REGISTRATION* | | | CODE D/X | DATE 3-14-00 |

NAME  MIMS          FRANK          JR.
      Last Name     First Name     Middle Name

REASON  DECEASED - Per precinct Judge - precinct #0271. Found while working the March 14, 2000 Republican Primary Election. See Attached.

*Earline Bowens*                           AUG 2 4 2000
DEPUTY                                              EB

Doc ID: 5735943   Page: 1 of 7.

TX_00002448
JA_005207

TX_00002448

USA_00020089

Record Type: VOTER    Record ID: 1154038    Imaging Dept. ID: 236217269



Doc ID: 5755943    Page: 2 of 7.

TX_00002449
JA_005208

TX_00002449

USA_00020090

Record Type: VOTER    Record ID: 1154038    Imaging Dept. ID: 236217269



Doc ID: 5735945    Page: 3 of 7.

TX_00002450
JA_005209

TX_00002450

USA_00020091

# PUBLICDATA.com

➡ *SSA Death Master File Detail*

| Name<br>MIMS,FRANK | Social Security Number | Verify/Proof<br>none found | Last Known ZIP Code<br>77047 |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of Residence<br>none found | Date of Birth<br>Oct 11 1922 | Date of Death<br>Jan 26 1993 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www7.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=54121950&...   5/2/2007

**Votec Election Management System**

Mine Window

**Voter Update**

NEW | ADD | SAVE | EXIT | Scan / View | Prov Blts | Cancel | NVRA Dup | Notices / Polling Place | Districts / Reg Hist | View Vot Hist

| NVRA Source | Date Submitted | Status / Reason | | Precinct | Sub | CERT # |
|---|---|---|---|---|---|---|
| | | CD | DEC | 0291 | -- | 1688720 |

File Number | c1update | ID Compliant Y

| Last | First | Middle | Former | Suffix |
|---|---|---|---|---|
| MONROE | ROBERT | C | | |

Residence Address

| Street # | Fract | Dir | Name | Type | Dir | Unit Type | Unit # |
|---|---|---|---|---|---|---|---|
| 5935 | | W | BELLFORT | | | | |

City HO | Zip 77035 | Muni HOUSTON | Post Office HOUSTON | Address Exception CAN

Mail Address

Gender M | DOB 06/22/1931 | Former County | Former Resid

**Voting History for MONROE, ROBERT**

| Election | Date | Voting Codes | | Election Description |
|---|---|---|---|---|
| 1198 | 11/03/1998 | E | | GENERAL ELECTION |
| 1196 | 11/05/1996 | E | | GENERAL ELECTION |
| 0396 | 03/12/1996 | E | R | PRIMARY ELECTION |

SSN4

Birth Place

Signed? Y

Privacy | More

SN | PW Interest | ID Rcvd

10/13/1999 12:00 AM

List F9

Re:     MONROE ROBERT C
Certificate #    01688720 1

X-

Confirmation is hereby given that the person named above is:
*Se da aqui confirmación que la antedicha persona nombrado a:*

☒ Deceased/*Fallecido*   5-31-98

☐ Not deceased and the information is incorrect (*No a fallecido y la información esta incorrecto*)

Signature/*Firma*   Janie G. Monroe    Date/*Fecha*   8-18-99

Relationship/*Parentesco*

   Wife

| 345668 | APPLICATION FOR VOTER REGISTRATION CERTIFICATE | | | | 0168872-0 () |
|---|---|---|---|---|---|
| | HARRIS COUNTY, TEXAS | | | | |

☐ CHECK HERE IF SERVICEMAN OR STUDENT   345668   AGE 40   SEX: X MALE   MONROE ROBERT C -71   19 71

| | RESIDENT ADDRESS | VOTING PRECINCT | CONTROL NO. |
|---|---|---|---|
| | 5935 W BELLFORT | 022 | |
| | HOUSTON | (IF KNOWN) | |

RESIDENCE: I CERTIFY THAT THE APPLICANT IS 18 YEARS OF AGE OR OVER, A CITIZEN OF THE UNITED STATES, AND HAS RESIDED IN TEXAS MORE THAN 1 YEAR AND IN COUNTY AND CITY MORE THAN SIX MONTHS PRECEDING THE DATE OF THIS APPLICATION EXCEPT AS LISTED BELOW. I UNDERSTAND THAT THE GIVING OF FALSE INFORMATION TO PROCURE THE REGISTRATION OF A VOTER IS A FELONY.
EXCEPTIONS

VOTER'S NAME (MAIL CERTIFICATE TO THE FOLLOWING TEMPORARY ADDRESS IF IT IS NOT TO BE MAILED TO THE PERMANENT ADDRESS ABOVE.)

MONROE ROBERT C
5935 W BELLFORT
HOUSTON TX 77035

| | MONTH | DAY | YEAR |
|---|---|---|---|
| SHOW DATE OF ARRIVAL | | | |
| IF IN TEXAS LESS THAN 1 YEAR | | | |
| IF IN COUNTY LESS THAN 6 MOS. | | | |
| IF IN CITY LESS THAN 6 MOS. | | | |
| * IF UNDER 21, SHOW DATE OF BIRTH | | | |

CORRECTIONS

* IF UNDER 21 YEARS OLD, NEVER MARRIED, AND MINORITY DISABILITIES HAVE NOT BEEN REMOVED BY COURT, GIVE NAME AND ADDRESS OF PARENTS OR GUARDIAN

NAME X X X X X X X X X X X ADDRESS X X X X X X X X X X X XX
                                      STREET       CITY       ZIP CODE

➡ Robert C. Monroe
SIGNATURE OF VOTER / AGENT    TELEPHONE NUMBER
* HUSBAND    WIFE    MOTHER    SON OR DAUGHTER    ONLY
(CIRCLE ONE WHERE APPLICABLE)

TO COMPLETE APPLICATION OTHER SIDE MUST BE FILLED IN

TX_00002453
JA_005212

TX_00002453

USA_00020094

# PublicData.com

➡ *SSA Death Master File Detail*

| Name<br>MONROE,ROBERT C | Social Security<br>Number | Verify/Proof<br>Report verified with a family<br>member | Last Known ZIP<br>Code<br>77035 |
|---|---|---|---|
| Lump Sum Payment ZIP<br>Code | State/Country of<br>Residence<br>Unknown | Date of Birth<br>Jun 22 1931 | Date of Death<br>May 31 1998 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www3.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=53197348&... 5/2/2007

TX_00002454
JA_005213

TX_00002454

USA_00020095



Re:
Certificate #

NAVARRO EDWARD MEZA
2485Z278 1

X-

Confirmation is hereby given that the person named above is:
*Se da aquí confirmación que la antedicha persona nombrado a:*

☑ Deceased/*Fallecido*

☐ Not deceased and the information is incorrect *(No a fallecido y la información está incorrecta)*

Signature/*Firma*

Date/*Fecha*   0826-99

Relationship/*Parentesco*

WIFE

---

VOTER REGISTRATION APPLICATION *(SOLICITUD PARA REGISTRO DE VOTANTE)*
(Secs. 13.002, 13.122, V.

JUL 6 1986   JUL - 6 1986                                              2485227-9

For Official Use Only
Application Number          EDR

PLEASE COMPLETE ALL OF THE INFORMATION BELOW. PRINT IN INK OR TYPE.
*POR FAVOR COMPLETE LA SIGUIENTE INFORMACION, ESCRIBA EN LETRA DE MOLDE CON TINTA O ESCRIBA A MAQUINA.*

| Last Name *(Apellido)* | First Name (NOT HUSBAND'S) *(Nombre de Pila (NO DEL ESPOSO)* | Middle Name (if any) *(Segundo Nombre) (si tiene)* | Maiden Name *(apellido de Soltera)* |
|---|---|---|---|
| NAVARRO | Edward | MEZA | |

| Sex *(Sexo)* | Date of Birth *(Fecha de Nacimiento)* month, day, year *(el mes, el día, el año)* | Court of Naturalization *(Corte de Naturalización)* | Telephone Number (Optional) *(Número de Teléfono) (No obligatorio)* |
|---|---|---|---|
| F | MARCH 10-1922 | HOUSTON COURT | |

Permanent Residence Address: Street Address and Apartment Number. If none, describe location of residence. (Do not include, P.O. Box or Rural Rt.) *(Dirección de Residencia Permanente: Calle y Número de Departamento(s) si tiene, describa la localidad de su residencia. No incluya su caja postal o ruta rural.)*

721 Sa. Richey #6 PNS. TX. 77506

City, State, and ZIP: *(Ciudad, Estado, y Zona Postal)*
NES. 7536

Mailing Address: If mail cannot be delivered to your permanent residence address. *(Dirección Postal (si es imposible entregar correspondencia a su dirección residencial permanente.)*

P.O. BOX 4065

City, State, and ZIP: *(Ciudad, Estado, y Zona Postal)*
Pasadena, TX 77306

Social Security Number (Optional) *(Número de Seguro Social) (no obligatorio)*

County and Address of Former Residence *(Condado y Dirección de Su Residencia Previa)*
32355 HALSTE
CHICAGO IL. COOK COUNTY

Current Precinct Number (if known) *(Número de Precinto Actual) (si lo sabe)*

The applicant is a citizen of the United States and a resident of this county. Applicant has not been determined mentally incompetent by a final judgment of a court, Applicant has not been finally convicted of a felony or, if a felon, is eligible for registration under Section 13.001(a)(4) of the Texas Election Code. I affirm that the information provided is correct. I understand that the giving of false information to procure the registration of a voter is a felony. *(El suplicante es ciudadano de los Estados Unidos y es residente de este condado. Ninguna corte ha juzgado por sentencia definitiva que el suplicante tiene una incapacidad mental. El suplicante no ha sido probado culpable finalmente de un crimen, o, si es criminal, está elegible para registrarse para votar bajo las condiciones de la Sección 13.001(a)(4) del Código de Elecciones de Texas. Yo afirmo que la información provista está correcta. Yo entiendo que es un crimen dar información falsa con motivo de conseguir el registro de un votante.)*

x Edward M. Navarro

Signature of Applicant or Agent or Printed Name of Applicant if Signed by Witness
*(Firma del Suplicante o Agente, o Nombre del Suplicante En Letra de Molde Si Fue Firmado Por Un Testigo)*

Relationship of Agent
*(Parentesco del Agente)*

I, the witness for this person do affirm that I signed the document in the presence of the person who is unable to sign his/her name. *(Yo, el testigo para esta persona, certifico que yo firmé el documento ante la persona que no puede firmar su nombre.)*

Signature of Witness
*(Firma del Testigo)*

Printed Name of Witness
*(Nombre del Testigo En Letra de Molde)*

PublicData.Com [ SSA Death Master File Detail ]                                    Page 1 of 1

# PublicData.com

➡ *SSA Death Master File Detail*

| Name<br>NAVARRO,EDUARDO<br>M | Social Security<br>Number | Verify/Proof<br>Report verified with a<br>family member | Last Known ZIP<br>Code<br>77502 |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of<br>Residence<br>Unknown | Date of Birth<br>Mar 10 1922 | Date of Death<br>Aug 15 1996 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www7.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=36909112&...  5/2/2007

TX_00002457
JA_005216

TX_00002457

USA_00020098

| | | | | | | Notices | Districts | |
|---|---|---|---|---|---|---|---|---|
| NEW | ADD | SAVE EXIT | View | Prov Blts | Cancel | Polling Place | Reg Hist | View Vot Hist |

NVRA Source | Date Submitted | Status / Reason | Precinct | Sub | CERT #
CD DEC | 0109 | | 4538682
File Number | | ctupdate | ID Compliant Y

Last | First | Middle | Former | Suffix
ROGERS | L | C | |

Residence Address
Street # Fract Dir Name | Type Dir Unit Type Unit #
7505 CHARLIE
CityHO Zip 77088 Mun HOUSTON | Post Office HOUSTON | Address Exception CAN

Mail Address

Gender M DOB | Former County | [Former Resid]
SSN 4 | SSN4
City | State | DL# | Birth Place
Zip | Clear Mail Addr
Citizen? Y | Signed? Y
Registration 01/31/1976 Eligible 03/01/1976 | Jury Language Privacy | More
Transfer Effective 09/05/2000 | No TDL/ID No SSN PW Interest ID Rcvd

Comments | □ Election Role | Updated by 304 | 09/12/2000 12:00 AM

Agency or Source of registration for statistical purposes | Hst CRS

County clerk say
last voting History
11/4/1997

0453868-2        232963745

**APPLICATION FOR VOTER REGISTRATION CERTIFICATE**
HARRIS COUNTY, TEXAS   / 48895        ROGERS L C        0453868-2

☐ CHECK HERE IF SERVICEMAN OR STUDENT     102698   | AGE | 48 | SEX: | ☒ MALE |

RESIDENCE: I CERTIFY THAT THE APPLICANT IS 18 YEARS OF AGE OR OVER, A CITIZEN OF THE UNITED STATES, AND HAS RESIDED IN TEXAS MORE THAN 1 YEAR AND IN COUNTY AND CITY MORE THAN SIX MONTHS PRECEDING THE DATE OF THIS APPLICATION EXCEPT AS LISTED BELOW. I UNDERSTAND THAT THE GIVING OF FALSE INFORMATION TO PROCURE THE REGISTRATION OF A VOTER IS A FELONY.
EXCEPTIONS

| RESIDENT ADDRESS | VOTING PRECINCT | CONTROL NO. |
|---|---|---|
| 7505 CHARLIE HOUSTON | 109 | |

SHOW DATE OF ARRIVAL

| | MONTH | DAY | YEAR |
| IF IN TEXAS LESS THAN 1 YEAR | | | |
| IF IN COUNTY LESS THAN 6 MOS. | | | |
| IF IN CITY LESS THAN 6 MOS. | | | |

* IF UNDER 21 YEARS OLD, SHOW DATE OF BIRTH

VOTER'S NAME (MAIL CERTIFICATE TO THE FOLLOWING TEMPORARY ADDRESS IF IT IS NOT TO BE MAILED TO THE PERMANENT ADDRESS ABOVE)

ROGERS L C
7505 CHARLIE
HOUSTON        TX 77018

CORRECTIONS

NAME  X X X X X X X X X X   ADDRESS  X X X X X X X X X X X X X X

SIGNATURE OF VOTER/AGENT
* HUSBAND   WIFE   FATHER   MOTHER   SON OR DAUGHTER   ONLY
(CIRCLE ONE WHERE APPLICABLE)

L C Rogers   7505 Charlie   Houston 77018
STREET   CITY   ZIP CODE
TELEPHONE NUMBER

TO COMPLETE APPLICATION OTHER SIDE MUST BE FILLED IN

TX_00002459
JA_005218

TX_00002459

USA_00020100

FORMER REGISTRATION:
IF REGISTERED IN ANOTHER TEXAS COUNTY
DURING THE PRECEDING THREE YEARS
SOCIAL SECURITY NUMBER _____

NAME OF COUNTY _Harris_
RESIDENCE ADDRESS _750 S Harris St_
STREET OR ROUTE NO.
_Houston_  _77088_
CITY  ZIP CODE

MAIL OR DELIVER APPLICATION PROMPTLY TO COUNTY TAX ASSESSOR COLLECTOR OF YOUR HOME
COUNTY. APPLICATION MUST BE RECEIVED BY THE REGISTRAR
YOU WISH TO VOTE.

## INSTRUCTIONS

**Check information on
front carefully.**

**Make any changes in
name, address or other
information on the
front side of this
form. Please print.**

CARL S. :
TAX OFFICE
301 SAN JACINT
HOUSTON, TEXA . . . .

23296374 5

:ertifi-
for a
sign
the Affidavit on the bottom
left of the front side and
that a Certificate is returned
to you.

2808ε5ϸ0

**BEFORE REMAILING** be sure you have checked the correctness of the information and have signed the appli-
cation. YOUR APPLICATION CANNOT BE PROCESSED UNLESS PROPERLY SIGNED.

23296374 5

0453868-2

0453868-2          232963756

CORRECTION CARD

Last Name __ROGERS__   Pct. # __109__   Certificate # __0453868-2__

First Name __L.__   Sex __M__   Telephone _____   __7-5-85__
(do not use husband's first name)   __am__

Middle Name __C.__   Birthdate _____   Birthplace _____
(if married, give maiden name)

Permanent Residence Address __1505 Charlie__   __Houston   77088__
(Street & Apt. # (not P. O. Box)   (City)   (Zip Code)

Mailing address if different _____

By: __Cynthia Minton__   Social Security # _____
Deputy

Date: __07-02-15__   add SS#. Found while checking
S.O.S. Error Report 8-3885 NO.   doubles list for Pct. 109
10-2385   modify only

0453868-2        233431747

**Paul Bettencourt**
Harris County Voter Registrar
713-224-1919
P O Box 3527
Houston, Texas 77253-3527

Secretary of State's Office
Elections Division
1-800-252-VOTE (8683)

0453868-2

NON-PROFIT ORG
U.S. Postage
**PAID**
Houston, TX
Permit No. 9496

**RETURN SERVICE REQUESTED**

| Cert. No. (Núm. de Cert.) | Gender (Sexo) | Valid from (Válido desde) | | T.E.S. REP. (Repres. Imp. E.U.) | STATE SEN. (Sen. Estatal) | STATE REP. (Rep. Estatal) | COMM. PREC. (Com. Prec.) | JUST. PREC. |
|---|---|---|---|---|---|---|---|---|
| 0453868-2 | M | 01-01-00 | | 018 | 015 | 139 | 1 | 01 |

| Date of Birth (Fecha de Nacimiento) | Prec. No. (Pct. Núm.) | thru (hasta) | | Name and Mailing Address (Nombre y dirección de correo) |
|---|---|---|---|---|
| 00-00-00 | 0109 | 12-31-01 | | |

Name and Permanent Residence Address (Nombre y dirección residencial permanente)

ROGERS L C
7505 CHARLIE
HOUSTON TX 77088

X *Deceased* 1984

VOTER MUST PERSONALLY SIGN HIS/HER NAME IMMEDIATELY UPON RECEIPT, IF ABLE
(El votante debe firmar este tarjeta personalmente al punto de recibirla, si puede.)

**********AUTO**5-DIGIT 77088
ROGERS L C
7505 CHARLIE ST
HOUSTON TX  77088-7603

SEP 05 2000

R00561633

0453868-2          232963736

04538682

232963736

TX_00002463

USA_00020104

0453868-2          233434165

I hereby confirm that ROGERS L C is:

☒ Deceased.

☐ Not deceased and the information is inaccurate.

Signature _____   Date _____

My relationship to ROGERS L C is: _Wife_____

Please complete this form and return to:   **Paul Bettencourt**
**Tax Assessor-Collector**
**P. O. Box 3527**
**Houston, TX 77253-3527**

9/14/00

11/4/97 – last voted
per C.C. office

USA_00020105

# PUBLICDATA.com

➡*SSA Death Master File Detail*

| Name<br>ROGERS,L | Social Security Number | Verify/Proof<br>Report verified with a family member | Last Known ZIP Code<br>77088 |
|---|---|---|---|
| Lump Sum Payment ZIP Code<br>77088 | State/Country of Residence<br>Unknown | Date of Birth<br>Sep 11 1923 | Date of Death<br>Oct 15 1987 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www3.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=53198014&...  5/2/2007

TX_00002465
JA_005224

TX_00002465

USA_00020106

Case 1:12-cv-00128-RMC-DST-RLW Document 213 Filed 06/20/12 Page 113 of 203

Votec Election Management System - User is RED

Mine Window

Voter Update

NEW | ADD | SAVE | EXIT | Scan | View | Prov Bits | Cancel | NVRA Dup | Notices | Polling Place | Districts | Reg Hist | View Vot Hist

NVRA Source [redacted] Date Submitted Status CD Reason DEC Precinct 0100 Sub CERT # 11193695

File Number c1update ID Compliant Y

| Last | First | Middle | Former | Suffix |
|---|---|---|---|---|
| ROWE | JOHN | THOMAS | | |

Residence Address

| Street # | Fract | Dir | Name | Type | Dir | Unit Type | Unit # |
|---|---|---|---|---|---|---|---|
| 505 | | | BRIARWOOD | DR | | | |

City BA Zip 77520 Muni BAYTOWN Post Office BAYTOWN Address Exception CAN

Mail Address

Gender M DOB 05/13/1959 Former County Former Resid

Voting History for ROWE, JOHN

| Election | Date | Voting Codes | Election Description |
|---|---|---|---|
| 1198 | 11/03/1998 | E | GENERAL ELECTION |

SSN4

Birth Place BAYTOWN TX

Signed? Y

Privacy More

PW Interest ID Rcvd

10/13/1999 12:00 AM

Re: ROWE JOHN THOMAS III

Certificate # 11183685 1

-X-

Confirmation is hereby given that the person named above is:

Se da aquí confirmación que la antedicha persona nombrada a:

☒ Deceased/Fallecido Sept. 19, 1990

☐ Not deceased and the information is incorrect (No a fallecido y la información esta incorrecto)

Signature/Firma *John T Rowe Jr.*  Date/Fecha 8-30-99

Relationship/Parentesco *Father*

| Official use only | | VOTER REGISTRATION APPLICA... (Art. 5.13a) | | 1119369-5 |
|---|---|---|---|---|
| PCT (11) | EDR (12) | | ROWE JOHN THOMAS | |
| 101 | | | | |

If you are a new registrant or if you have changed your county of residence, complete all of the information below:

| To CHANGE registration information: |

Last Name (02) Rowe   First Name [not maiden name] (03) John   Middle Name (04) Thomas

Maiden Name (04)

If you are registered to vote and need to change any information on your certificate, complete the following and show only the changed information to the left.

BAYTOWN, HARRIS TEXAS   (M)

505 BRIARWOOD DR   BAYTOWN   77520

Certificate Number:

Last Name as it appears on certificate:

Today's Date:

Return your current registration certificate for correction, or if your certificate has been lost or destroyed, initial the box below.

*The disclosure of social security no. is voluntary only, is solicited by authority of Section 40b, Texas Election Code, and will be used only by election officials to maintain the accuracy and integrity of the registration records.

x *John Rowe*

(circle one) Husband · Wife · Mother · Father · Son · Daughter

11-10-99

TX_00002467

USA_00020108

Case 2:13-cv-00193 Document 662-21 Filed on 11/11/14 in TXSD Page 39 of 95
Case 1:12-cv-00128-RMC-DST-RLW Document 213 Filed 06/20/12 Page 115 of 203
PublicData.Com [ SSA Death Master File Detail ] Page 1 of 1

# PublicData.com

➡ *SSA Death Master File Detail*

| Name<br>ROWE, JOHN T | Social Security Number | Verify/Proof<br><br>none found | Last Known ZIP Code<br>77521 |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of Residence<br><br>none found | Date of Birth<br>May 13 1959 | Date of Death<br>Sep 19 1990 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www3.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=52383623&...  5/2/2007

TX_00002468
JA_005227

TX_00002468

USA_00020109



**Votec Election Management System - user is REDDITTE@VEMS**

Mine Window

**Voter Update [c1update 03.06]**

NEW | ADD | SAVE | EXIT | Scan | View | Prov Blts | Cancel | NVRA Dup | Notices | Polling Place | Districts | Reg Hist | View VotHist

NVRA Source [redacted] Date Submitted Status / Reason CD DEC Precinct 0291 Sub CERT# 37677119

File Number c1update ID Compliant Y

| Last | First | Middle | Former | Suffix |
|---|---|---|---|---|
| SKLAR | MENDEL | | | |

Residence Address

| Street # | Fract | Dir | Name | Type | Dir | Unit Type | Unit # |
|---|---|---|---|---|---|---|---|
| 5926 | | | SPELLMAN | RD | | | |

City HO Zip 77096 Muni HOUSTON Post Office HOUSTON Address Exception CAN

Mail Address

Gender M DOB 06/30/1919 Former County Former Resid

**Voting History for SKLAR, MENDEL [v_hist 03]**

| Election | Date | Voting Codes | Election Description |
|---|---|---|---|
| 1198 | 11/03/1998 | E | GENERAL ELECTION |

SSN4

Birth Place CITIZEN

Signed? Y

Privacy More

PW Interest ID Rcvd

10/17/2000 12:00 AM

Record Type: VOTER    Record ID: 37677119    Imaging Dept. ID: 236217250

Paul Bettencourt
*Harris County Tax Assessor-Collector and Voter Registrar*

Date Mailed: August 22, 2000

SKLAR MENDEL
5926 SPELLMAN RD
HOUSTON TX 77096-5841

### VOTER REGISTRATION NOTICE

The addressee's name, Social Security number, and date of birth matched exactly with that of a record in the Social Security Death Index database. This indicates that the registered voter named in this notice is deceased.

Please respond by providing the information requested below. Please include your signature and your relationship to the voter in the space provided below. Upon the receipt of your response, we will update the record. This notice will not affect your Social Security benefits.

**WARNING:** This voter registration is subject to cancellation if an appropriate reply is not provided to the voter registrar by the 60th day after the date this notice is mailed (Texas Election Code Sec. 16.033 (c)).

If you have any questions, or if this information is inaccurate, please call our office at **(713) 224-1919** as soon as possible. Our Web site at [www.tax.co.harris.tx.us] contains an updated Harris County Voter Registration database for your reference.

Thank you for your assistance.

Paul Bettencourt                    Marty Morrison
Voter Registrar, Harris County, Texas    Director of Voter Registration

I hereby confirm that SKLAR MENDEL is:    3767711 9

☑ Deceased.                                "X"

☐ Not deceased and the information is inaccurate.

Signature _Sandra Rae Sklar_    Date _8/31/2000_

My relationship to SKLAR MENDEL is:
_wife_

Please complete this form and return to:    Paul Bettencourt
                                            Tax Assessor-Collector
                                            P. O. Box 3527
                                            Houston, TX 77253-3527

236217250

Doc ID: 5735945    Page: 1 of 1.

Record Type: VOTER    Record ID: 3767119    Imaging Dept. ID: 236217241

VOTER REGISTRATIO
(SOLICITUD DE INSCRIPC

3,767711-9

Last Name                First Name
SKCAR                    MENDEL

Residence Address:
6928 SPELLMAN RD, HOUSTON, TX 770960000

Mailing Address, City, State and ZIP:

Date of Birth: month, day, year
06.30.1975

Check appropriate box: I am a United States Citizen    Yes    No

JUN 18 1997    JUL 18 1997    CLEAR LAKE - DPS    06 18 1997

X    mendel S blas

Doc ID: 5735946    Page: 1 of 2.

TX_00002471
JA_005230

TX_00002471

USA_00020112

PublicData.Com [ SSA Death Master File Detail ]                                          Page 1 of 1

# PublicData.com

➡ *SSA Death Master File Detail*

| Name<br>SKLAR,MENDEL | Social Security Number | Verify/Proof<br>Report verified with a family<br>member | Last Known ZIP<br>Code<br>77096 |
|---|---|---|---|
| Lump Sum Payment ZIP<br>Code | State/Country of<br>Residence<br>Unknown | Date of Birth<br>Jun 30 1919 | Date of Death<br>Jan 5 1998 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www7.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=48661234&...   5/2/2007

TX_00002472
JA_005231

TX_00002472

USA_00020113



Record Type: VOTER    Record ID: 20990974    Imaging Dept. ID: 220156774

FEB – 7 2001

hereby confirm that SMITH STELLA PRUDE is:

20990974

☑ Deceased.

☐ Not deceased and the information is inaccurate.

Signature _Gail French_    Date _02/04/01_

My relationship to SMITH STELLA PRUDE is: _daughter_

Pleas

220156774

Bettencourt
Assessor-Collector
. Box 3527
ston, TX 77253-3527

Doc ID: 3177405    Page: 1 of 1.

Case 2:13-cv-00193 Document 662-21 Filed on 11/11/14 in TXSD Page 46 of 95

Case 1:12-cv-00128-RMC-DST-RLW Document 213 Filed 06/20/12 Page 122 of 203

Record Type: VOTER   Record ID: 20990974   Imaging Dept. ID: 220156783

VOTER REGISTRATION APPLICATION

NEW

SMITH   STELLA   P   PRUDE

F   7-29-20  Urphals  Tx   11-5-80   340

2050 Little Cedar   Kingwood, Tex 77339

DEC 4 1980

x Stella Smith

Case 2:13-cv-00193 Document 662-21 Filed on 11/11/14 in TXSD Page 47 of 95
Case 1:12-cv-00128-RMC-DST-RLW Document 213 Filed 06/20/12 Page 123 of 203
PublicData.Com [ SSA Death Master File Detail ]
Page 1 of 1

# PUBLICDATA.com

➡ *SSA Death Master File Detail*

| Name<br>SMITH,STELLA | Social Security Number | Verify/Proof<br>Report verified with a family member | Last Known ZIP Code<br>77339 |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of Residence<br>Unknown | Date of Birth<br>Jul 29 1920 | Date of Death<br>Apr 9 1997 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www7.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=52037114&...  5/2/2007

TX_00002476

USA_00020117



**Votec Election Management System**

Mine Window

NEW | ADD | SAVE | EXIT | Scan / View | Prov Blts | Cancel | NVRA Dup | Notices / Polling Place | Districts / Reg Hist | View Vot Hist

| NVRA Source | Date Submitted | Status / Reason | Precinct | Sub | CERT # |
|---|---|---|---|---|---|
| | | CD / DEC | 0026 | | 26841015 |

File Number c1update ID Compliant Y

| Last | First | Middle | Former | Suffix |
|---|---|---|---|---|
| SPELL | BILLY | COLE | | |

Residence Address

| Street # | Fract | Dir | Name | Type | Dir | Unit Type | Unit # |
|---|---|---|---|---|---|---|---|
| 4440 | | | CLAY | | | | |

CityHO Zip 77023 Muni HOUSTON Post Office HOUSTON Address Exception CAN

Mail Address

Gender M DOB 02/01/1928 Former County Former Resid

**Voting History for SPELL, BILLY COLE**

| Election | Date | Voting Codes | Election Description |
|---|---|---|---|
| 1196 | 11/05/1996 | E | GENERAL ELECTION |

SSN

Birth Place SHIRO TX

Signed? Y

Privacy More

PW Interest ID Rcvd

08/24/1999 12:00 AM

Re:

SPELL BILLY COLE
26841015 1

Certificate #

X-

Confirmation is hereby given that the person named above is:

*Se da aqui confirmacion que la antedicha persona nombrada a:*

☒ Deceased/*Fallecido*

☐ Not deceased and the information is incorrect (*No a fallecido y la información esta incorrecto*)

Signature/*Firma*   _Roxelo Spell_        Date/*Fecha*  8-24-99

Relationship/*Parentesco*  _N./.e_

---

DV 26841015
PREVIOUS TRANSACTION COMPL

SPELL BILLY COLE
--26841015-5--

> STAT/FLAG < A _ > __                        DX       UPDT 000 255 1 090789

SSNO                          BRDT < 02-01-1928 >           CITY/CNTY  C ST
                                                       BRPL < SHIRO_____ 1 TX

                              COFM < GRIMES__ >

NAME < SPELL_BILLY_COLE__      2 >  10/26/91 DIED  PCT < 0026 >   OPEN <

RADR < 04440 _ CLAY_____ ____ > MADR1 < _____ >
                                     MADR2 < _____ >
RCTY < HOUSTON_____ RZIP 77028-0000 > MCZP < _____ 00000-0000
                           8/24/97

US/REP 029   GENE_GREEN_ (D)  #/ SPOKE TO NIECE
ST/SEN 006   MARIO_GALLEGOS_ (D)  /      8/3/99
ST/REP 145   RICK_NORIEGA_ (D)    PER JUNE GIBSON
COMM      2  JIM_FONTENO__ (D)
JP/C     06  VICTOR_TREVINO_JP--RICHARD_VARA_, ARMANDO_RODRIGUEZ_____
             731-467-4939

Ed Johnson To: voters                    Date: 7/4/1999 Time: 8:38:52 AM          Page 3 of 3

---

/04/99                death to call                      Page    2

| rt | name | bddt | Dec | Phone |
|----|------|------|-----|-------|
| 719345 | SESSION ANTOINETTE BROWN | 05231946 | 6/30/92 | |
| 841015 | SPELL BILLY COLE | 02011928 | 10/20/91 | |
| 856278 | FLANAGAN JEANETTE LOVE | 03311930 | 4/30/96 | |
| 680636 | BURDEN EDDA MEDLHAMMER | 12281943 | 8/26/98 | |
| 723013 | HARRIS EDWARD | 09111964 | 12/15/81 | |
| 795276 | GAFFNEY CARROLL COX | 05291922 | 12/30/92 | |
| 680945 | WEAVER MARY GREEN Husband | 06071919 | 5/30/90 | |
| 004434 | ZITTEL ROBERT JAMES | 09131921 | 8/17/97 | |

---

VOTER REGISTRATION APPLICATION
PLEASE COMPLETE ALL OF THE INFORMATION BELOW. PRINT IN INK OR TYP

26841015

Last Name *(Apellido)*  SPEll
First Name (NOT HUSBAN *(Nombre o Pital (NO DEL ESPOSO))*  BIllY
*(Segundo Nombre(si tiene))*  COLE
*(Apellido de Soltera)*

Sex *(Sexo)* M
Date of Birth *(Fecha de Nacimiento)* 2-1-28
Place of Birth *(Lugar de Nacimiento)* city or county *(ciudad o condado)* SHIRO TX
state or foreign country *(estado o país extranjero)*
County and Address of Former Residence *(Condado y dirección de su residencia previa)* GRIMES

Permanent Residence Address: Street Address and Apartment Number, City, State, and ZIP. If none, describe location of residence. (Do not include P.O. Box or Rural Rt.)*(Dirección de Residencia Permanente: Calle y número de Departamento, Ciudad, Estado, y Zona...)*
4440 CLAY HOUSTON TX

Mailing Address, City, State and ZIP: If mail cannot be delivered to your permanent residence
address. *(Dirección Postal: Ciudad, Estado y Zona Postal)(si es imposible entregar correspondencia a su dirección permanente)*
77028

The applicant is a citizen of the United States and a resident of this county. Applicant has not been finally convicted of a felony...
*Signature of Applicant or Agent or Printed Name of Appli...* X B.lly Co  8-08-00520

SEP 6 1989 -- OCT 6 1989

TX_00002478

USA_00020119

# PUBLICDATA.com

➡ *SSA Death Master File Detail*

| Name SPELL,BILLY C | Social Security Number | Verify/Proof none found | Last Known ZIP Code |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of Residence none found | Date of Birth Feb 1 1928 | Date of Death Oct 20 1991 |

*The detail view of this record will be recorded as one 'Detail look-up'.*

http://www3.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=54718706&...  5/2/2007

TX_00002479
JA_005238

TX_00002480

USA_00020121

| APPLICATION FOR VOTER REGISTRATION CERTIFICATE | | | | | | | | CO74671-9 |
| HARRIS COUNTY, TEXAS | | | | 585565 | | VANDERLYN J R | | |

| | 169192 | AGE | 55 | SEX: | X | MALE | | RESIDENT ADDRESS | VOTING PRECINCT | CONTROL NO. |

RESIDENT ADDRESS: 9039 HERRICK HOUSTON — VOTING PRECINCT 175

VOTER'S NAME (MAR CERTIFICATE TO THE FOLLOWING TEMPORARY ADDRE)

CASPER HERRICK R
HOUSTON        Tx

CORRECTIONS

Re:        VANDERLYN J R .
Certificate #        00746719 1

X-

Confirmation is hereby given that the person named above is:
*Se da aquí confirmación que la antedicha persona nombrado a:*

☑ Deceased/*Fallecido*

☐ Not deceased and the information is incorrect *(No a fallecido y in información esta incorrecto)*

Signature/*Firma*   Mrs. J.R. Vander Lyn        Date/*Fecha*  Aug. 18, 1998

Relationship/*Parentesco*

TX_00002481
JA_005240

TX_00002481

USA_00020122

Case 2:13-cv-00193 Document 662-21 Filed on 11/11/14 in TXSD Page 53 of 95
Case 1:12-cv-00128-RMC-DST-RLW Document 213 Filed 06/20/12 Page 149 of 203
PublicData.Com [ SSA Death Master File Detail ]                                    Page 1 of 1

# PublicData.com

➡ *SSA Death Master File Detail*

| Name<br>VANDERLYN,JOHN | Social Security Number | Verify/Proof<br><br>none found | Last Known ZIP Code<br>77025 |
|---|---|---|---|
| Lump Sum Payment ZIP Code | State/Country of Residence<br>Texas | Date of Birth<br>May 11 1916 | Date of Death<br>May 1983 |

*The detail view of this record will be recorded as one ‘Detail look-up’.*

http://www7.publicdata.com/cgi-win/pd.exe/Detail?db=USSSDM&ed=31&rec=53172402&...  5/2/2007

TX_00002482
JA_005241

TX_00002482

USA_00020123

TX_00002483

USA_00020124

TX_00002483
JA_005242

Office of Beverly B. Kaufman, County Clerk, Harris County, Texas
*Probate Court Inquiry System*

```
R.C.DOCKET.SUB.                .APPLICANT'S          .ATTORNEY OF RECORD   .NATURE   .DATE OPEND.
C.T.NUMBER.DKT.STYLE OF PROBATE .NAME AND ADDRESS     .AND ADDRESS          .OF PROC  .MM DD YYYY.FILM CODE.
.=.=.======.===.================.====================.====================.========.==========.=========.
1 2 185822 001 VANDERLYN JOHN R*D*  VANDERLYN DAISYNELLE  CARL LEE & FISHER   PRO W   05-27-1983 648832003
               4039 NERRICK         HOUSTON TX           1500 AUSTIN                  HOUSTON TX 77252
```

otal lines retrieved = 2 Lines displayed = 2

[ Back to Inquiry ]  [ Main Menu ]

**Texas** Voter Registration Application

Prescribed by the Office of the Secretary of State    VR17.08E.I2

| For Official Use Only |
|---|

Please complete sections by printing **LEGIBLY**. If you have any questions about how to fill out this application, please call your local voter registrar or the Secretary of State's Office toll free at 1-800-252-VOTE(8683), TDD 1-800-735-2989, www.sos.state.tx.us.

### 1 These Questions Must Be Completed Before Proceeding

Check one ☐ New Application   ☐ Change of Address and/or Name   ☐ Request for a Replacement Card

Are you a United States Citizen? ......................................................................... ☐ Yes  ☐ No

Will you be 18 years of age on or before election day? ................................... ☐ Yes  ☐ No

If you checked "no" in response to either of the above, do not complete this form.

Are you interested in serving as an election worker? ...................................... ☐ Yes  ☐ No

| 2 Last Name | First Name | Middle Name (If any) | Former Name |
|---|---|---|---|
| | | | |

| 3 Residence Address: Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address) | City | State |
|---|---|---|
| | | Zip Code |

| 4 Mailing Address: Street Address and Apartment Number. (If mail cannot be delivered to your residence address.) | City | State |
|---|---|---|
| | | Zip Code |

**5** Date of Birth: (mm/dd/yyyy)
☐☐ / ☐☐ / ☐☐☐☐

**6** Gender (Optional)
☐ Male  ☐ Female

**7** Telephone Number (Optional) Include Area Code
( )

**8** Texas Driver's License No. or Texas Personal I.D. No. (Issued by the Department of Public Safety)
☐☐☐☐☐☐☐☐☐

If no Texas Driver's License or Personal Identification, give last 4 digits of your Social Security Number
xxx-xx- ☐☐☐☐

☐ Check if you do not have a Texas Driver's License, or Texas Personal Identification No.

☐ Check if you do not have a Social Security Number

**9** I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both.

I affirm that I
- am a resident of this county and U.S. Citizen;
- have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

**X** _____

_____ / _____ / _____
Date

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date.

Exhibit 34

TX_00002484
JA_005243

TX_00002484

*Fold on line and seal before mailing*

For Assistance
Call your local Voter Registrar or
Office of the Secretary of State
Toll Free: *Si necesita asistencia
llame gratis al:*
1-800-252-VOTE(8683)
www.sos.state.tx.us



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

## BUSINESS REPLY MAIL
FIRST CLASS MAIL PERMIT NO. 4511 AUSTIN, TX



POSTAGE WILL BE PAID BY ADDRESSEE

REGISTRAR OF VOTERS
COUNTY COURTHOUSE
(CITY)                                    (ZIP CODE)

_____ , TX _____

*Fold on line and seal before mailing*

### Qualifications

- You must register to vote in the county in which you reside.

- You must be a citizen of the United States.

- You must be at least 17 years and 10 months old to register, and you must be 18 years of age by election day.

- You must not be finally convicted of a felony, or if you are a felon, you must have completed all of your punishment, including any term of incarceration, parole, supervision, period of probation, or you must have received a pardon.

### Identification Requirement

If you do not have a Texas driver's license or a social security number, you will be required to present identification when you vote in person or enclose a copy of such identification with your ballot if you vote by mail. Identification includes: a current and valid ID; a copy of a current utility bill; bank statement; government check; paycheck; or other government document that shows your name and address.

### General Information

- Your voter registration will become effective 30 days after it is received or on your 18th birthday, whichever is later. Your registration must be effective on or before an election in order to vote in that election.

- If you move to another county, you must re-register in the county of your new residence.

- You must provide your Texas driver's license or personal identification number. Only when you do not have a driver's license or personal identification number, then give the last four digits of your social security number or if you do not have any of these identification numbers, then you must indicate by checking the appropriate box on the application side.

**Este formulario está disponible en Español. Favor de llamar sin cargo a la oficina del Secretario de Estado al 1-800-252-8683 para conseguir una version en Español.**

TX_00002485
JA_005244

TX_00002485

USA_00020126



*Exhibit 35*

**Testimony before**
**Texas State Senate**
**Committee of the Whole**
**on Behalf of AARP-Texas**
**Given By**
**Daniel B. Kohrman,**
**Senior Attorney, AARP Foundation**
**March 10, 2009**

Good morning Senators, Chairman Duncan, Lt. Governor Dewhurst. My name is Daniel

Kohrman. I am a Senior Attorney with the AARP Foundation. The Foundation is the

charitable arm of AARP. I am a full-time legal advocate for AARP and AARP members,

and older persons generally. Among my responsibilities is representing the cause of

access to the ballot for older voters.

By way of background, I am one of the lawyers for voters – including older voters – in

litigation regarding state "photo ID" laws in Georgia and Arizona. Likewise, I have filed

briefs for AARP in several other cases concerning state "photo ID" laws. These include

*Crawford v. Marion County Election Board*, in which the U.S. Supreme Court considered

Indiana's "photo ID" law. They also include "photo ID" cases in Missouri and Michigan,

where the highest courts in both those states considered laws enacted there. At AARP I

have also defended federal and state campaign finance reform laws. And lest you get the

impression I am showing an interest in Texas for the first time today, I twice recently

1

TX_00002486

USA_00020127

filed briefs in Texas cases – including one voting case – that went up to the U.S Court of
Appeals for the Fifth Circuit. Before AARP I worked for a big law firm, a civil rights
organization and the U.S Department of Justice.

As you know, AARP members vote in very large numbers and are very proud of their
active participation in the political process at all levels – state, local and federal. I work
out of AARP headquarters in Washington, DC, but today I am appearing on behalf of
AARP of Texas, one of AARP's 53 state offices across the United States. Given the
intense partisanship that has developed around the issue of photo ID, I want to emphasize
that AARP is a nonprofit, *nonpartisan* organization dedicated to addressing the needs and
interests of Americans aged 50 and older. AARP has no interest in the partisan aspects of
the photo ID issue. What we do care about is representing the interests of older
Americans. With more than forty million members nationwide, and roughly 2.4 million
members here in Texas, AARP is the largest membership organization – in the U.S. and
in Texas – advocating on behalf of older persons and older voters.

I appreciate the opportunity to speak with you today about AARP's perspective on of
voter participation and voting fraud, and in particular, on the merits of the proposed
Texas "photo ID" bill.

At the outset, I want to identify AARP's overall perspective on voting issues. Above all,
AARP views the right to vote as the most basic right in our democratic system of

2

TX_00002487

USA_00020128

government. Everything else flows from that principle. In particular, our view is that politicians should tread carefully in the field of voting rights. Voting rights should not be casually restricted. That said, we understand that historically, and under our Constitution, the states are the principal source of laws and regulations in the area of voting. To be sure, federal authorities have stepped in from time to time to ensure fair procedures are followed, and the federal courts and the U.S. Department of Justice retain ongoing authority in these areas. Further, Congress has made clear in recent years – witness the Help American Vote Act (HAVA) and the National Voter Registration Act (NVRA), as well as actions of the federal Election Assistance Commission – that there are national minimum standards that all states must follow. But in our federal system, states have the primary obligation to make sure that elections are fair and reflect the will of the people. But we do not conclude from this that states should feel free to take whatever action is expedient. Where there is a need for action to protect the rights of voters, states have a duty to act there is a duty to let the people express their will. But absent such a need, states have a duty not to rush in, if doing so will impede the rights of voters. As it is said of doctors, so it is true in the field of voting and elections: "first, do no harm!"

AARP policy is clear. Whether at the federal level, the state level, or the local level, AARP encourages steps to engage all eligible voters in the electoral process. AARP, because of its mission and membership, is particularly concerned with facilitating voting for the 50+ population. To this end, AARP has partnered with numerous organizations over the years, including the League of Women's voters and "Rock the Vote" to

3

TX_00002488

USA_00020129

encourage eligible voters, of all ages, to participate in the electoral process. AARP has

for decades advocated for fair and simple procedures that help to encourage a high level

of voter participation among older Americans.

Chapter 13 of AARP's 2008 Policy Book states:

> In order to ensure that more Americans participate in the electoral process, people's confidence needs to be restored by an election system that is fair, accurate, accessible and secure. …
>
> Consistent with the constitutional right to vote and democratic principles, governments should aim to expand the franchise and enhance access to the ballot for those capable of voting. …

In particular, AARP policy declares that states should adopt        voter registration

procedures that are "fair, simple and readily accessible." Furthermore, and perhaps most

relevant here, AARP takes the position that states should adopt "procedures to detect and

prevent voter fraud that do not permit arbitrary and discriminatory reviews, ID

challenges, and misuse of provisional ballots in ways that discourage voter registration

and turnout or show partisan bias." We believe photo ID laws such as the laws adopted

in Georgia, Indiana, Arizona, and a few other states, as well as the proposal now before

you, raise precisely these concerns:

- the danger of "arbitrary and discriminatory reviews";

- the danger of 'arbitrary and discriminatory … ID challenges"; and

-  "the misuse of" – by virtue of excessive reliance on – "provisional

   ballots in ways that discourage voter turnout."

I am no expert in Texas politics, so I am reluctant to comment on the proposed bill's

TX_00002489
JA_005248

TX_00002489

USA_00020130

potential to provoke partisan bickering; however, that outcome seems evident from a

cursory review of press coverage in the last week. If these reports are correct, that is a

shame, because voters – certainly older voters – tell AARP they want the two parties to

work together to solve problems like healthcare and retirement security. They do not

want elected officials spending time in partisan fights for political advantage.

The last time AARP testified on the "photo ID" issue, in 2006, Amanda Fredericksen,

AARP-Texas Director of Advocacy, told the House Committee on Elections:

> In spite of [AARP's] efforts, voter turnout in Texas remains
> alarmingly low. In 2006, the last Gubernatorial election in Texas, only
> one in three registered voters cast [a] vote. In 2004, the last
> presidential election, just over half of all registered voters in Texas
> cast their [ballot]. These figures are even lower if you include the
> population that is eligible to vote but isn't registered. Given the low
> turnout rates in Texas and across the US, AARP would like to see
> lawmakers do more to encourage participation in the election process.
> Older individuals vote in disproportionately high numbers, (More than
> one half of the voters in the November 2006 election were over the
> age of 50.) … AARP believes fair and simple procedures help to
> maintain this high level of participation … .

The AARP Foundation has participated in litigation challenging state photo ID laws in

five states because we believe such laws discourage rather than encourage electoral

participation by older voters. Photo ID requirements pose variety of arbitrary barriers for

senior voters, many of whom have voted consistently for decades. ID requirements are

simple to meet for some, even many voters, but not for many other voters, especially

older ones.

5

TX_00002490

USA_00020131

This past Sunday, the Rio Grande Guardian reported that:

- one in five (20% of) senior women do not have a driver's license (according to the US Census Bureau);

- 18% of Americans over age 65 lack a driver's license (according to the Brennan Center for Justice in New York City); and

- 37% of Texans over age 80 do not have a driver's license (according to the Texas Conservative Coalition Research Institute).

Moreover, AARP conducted a survey in connection with the Indiana photo ID case that revealed 3% of those eligible over age 65 (or roughly 23,000 registered voters) had neither a driver's license nor a state-issued ID card (the ID needed to vote under state law); the share of registered voters age 75+ without either form of ID was double that: 6%.

In other states, the potentially disruptive impact of photo ID laws on electoral participation by registered voters likewise has been estimated to be quite large. In Georgia, AARP estimated, based on driver's license data from the Department of Motor Vehicles and voter registration data from the Secretary of State, that approximately 100,000 registered voters age 65 and over lack a driver's license. In Missouri, the Secretary of State in August 2006 "estimated that approximately 240,000 registered voters may not have the required photo ID and that the Department of Revenue's estimate

6

TX_00002491

USA_00020132

of the same was approximately 169, 215 individuals." *See Weinschenk v. State*, 203

S.W.3d 201 (Mo. 2006)

Perhaps the hardest thing to understand about photo ID laws is why public officials

would embrace measures posing a disproportionate share of difficulties for older voters,

who are those most reliable electoral participants. AARP's brief to the Supreme Court in

the Indiana photo ID case explained:

> Older Americans consistently demonstrate a strong commitment to the
> electoral process by exercising their right to vote more frequently than
> other age groups. In the 2004 presidential election, citizens 55 and
> older reported voting at a rate of 71.8%, as compared with a rate of
> 63.8% among all Americans. As the number of older Americans rises,
> and the life expectancy of the U.S. population increases, the influence
> of older voters on the electoral process has the potential to increase as
> well. This segment of the population is expected to grow rapidly
> during the coming years, as children born during the "baby boom"
> reach age 65 and beyond. By 2030, there will be 71.5 million potential
> older voters in the United States — nearly twice the number from
> 2005. *Id.* As a result, older voters likely will comprise a larger
> percentage of the electorate and play an increasingly important role in
> American electoral politics.

In the Georgia voter ID case, the district court twice enjoined implementation of strict

photo ID requirements because State officials had failed to take steps to reduce risks of

disenfranchising older voters, among others, who may not have had adequate time to

learn about and respond to new photo ID requirements. In 2006 the court concluded:

> The evidence in the record demonstrates that many voters who lack
> an acceptable Photo ID for in-person voting are elderly, infirm, or
> poor, and lack reliable transportation to a county registrar's office.
> For those voters, requiring them to obtain a Voter ID card in the

7

TX_00002492

USA_00020133

short period of time before the July 18, 2006, primary elections and
the corresponding primary run-off elections is unduly burdensome.

... for those citizens, the character and magnitude of their injury-the
loss of their right to vote-is undeniably demoralizing and extreme,
as those citizens are likely to have no other realistic or effective
means of protecting their rights.

*See Common Cause/Georgia League of Women Voters of Georgia, Inc. v. Billups*, 439
F.Supp.2d 1294 (N.D.Ga. 2006).

In the Missouri voter ID case, the State Supreme Court accepted the "[voter-]Plaintiffs[']"
claim that for many ... including the poor, elderly and disabled, ... hurdles to obtaining
the proper photo ID are not insignificant." In particular, the court recounted a series of
anecdotes reflecting difficulties of the sort many older voters may confront. These
include Ms. Weinschenk, who has cerebral palsy and was born out of state, and for whom
"obtaining a proper photo ID is a substantial burden because of her disability," because
she has difficulty securing records, such as a birth certificate, and moreover, whose
"disability prevents her from making a consistent signature mark, [so that] her signature
will not match the signature on her voter registration record. Thus, any provisional ballot
she casts will not be counted." For many older disabled persons, the burdens associated
with overcoming the access and mobility challenges that confront all voters who need
photo identification to vote are likely to be nothing short of insuperable. The personal
stories also included: "Ms. Amanda Mullaney [who] was born in Kentucky, and [whose]
current name does not match the name on her birth certificate because her parents were
not married at the time of her birth. Thus, to obtain the proper photo ID needed to vote,

8

TX_00002493
JA_005252

TX_00002493

USA_00020134

she will have to provide proof of her name change by means of either a certified court order or a certified amended birth certificate"; and "Ms. Maudie Mae Hughes [who]was born in Mississippi, [and whom] the state has repeatedly informed … that it does not have any record of her birth, thereby compounding her difficulties in obtaining the photo ID necessary to vote in Missouri." (Because of historical lack of access to health care, prior to the 1960s, many minority Americans in their 60s, 70s, and 80s are substantially more likely to have been born outside a hospital.)

In 2006 Ms. Fredricksen described the circumstances of Theresa Clemente and Valerie Williams, set forth in AARP's amicus brief in the Indiana photo ID case. I urge you to go back and re-read her testimony. In short, Ms. Clemente, an 80-year-old who sought a state-issued ID card so that she could vote, only succeeded – as many of her vintage very well might not – only by paying multiple fees, navigating a maze of public record laws, and making multiple trips to various public offices. Ms. Williams, a 61-year old social security recipient, was barred from voting in the lobby of her retirement home, as she has done in at least the last two elections, by poll workers whom she had known for years, because the forms of ID she had always used no longer were valid under the new voter ID law. These sorts of impediments to the franchise, for clearly eligible voters dedicated to exercising their constitutional rights, are insulting, cruel and unnecessary. And as Ms. Fredricksen told you several years ago, these are not isolated cases. If anything close remotely resembling eighteen percent of American citizens age 65 and above do not have current government-issued photo ID, many millions of seniors, and many millions more

9

TX_00002494

USA_00020135

between the ages of 50 and 65, including perhaps hundreds of thousands in Texas alone,

will be forced to jump through hoops for no discernible purpose. You have heard ample

testimony to the effect that there is little or no evidence of in-person voter fraud, and I

need not repeat this point, except to say there is even less evidence that older persons are

suspected of fraudulently impersonating eligible voters at the polls. But in light of the

absence of proof of fraud, especially among older voters, and further, given the high

participation rates of voting among older persons, as well as the high incidence of

difficulties obtaining ID documents among older persons, such as those with disabilities,

any photo ID law that fails to include extensive provisions to accommodate voters with

greater difficulties complying, including older voters, should be rejected out of hand as

unfair and unduly burdensome.


Before I close, I want to make some specific observations about the proposed Texas

photo ID bill.


My initial comment is that the bill does remarkably little to combat vote fraud – in its

many forms and flavors – for a bill that purports to be focused on combating that

supposed problem. Even if we agree to disagree about the existence of in-person voting

fraud – which to us seems as improbable as it is unreported – because of the high risks of

getting caught and the low return for each individual act of impersonation – we should be

able to agree that there are many forms of alleged vote fraud of which the Texas photo ID

10

TX_00002495

USA_00020136

bill aims at addressing only one.  The question arises, given the huge political fight this

has set off, is the benefit in reducing fraud worth the effort?  If not, why bother?


 The best that can be said for the pending photo ID bill is that it is not as bad as the laws

on the books in a few other states:  Indiana, Georgia and Arizona.


I want to put off for a moment a discussion of a few problems I see with the overall

approach of the proposed bill.  Before that I want to suggest some practical shortcomings.


**First, the proposed law does very little to educate the public about major changes in**

**voting requirements**.

The proposal relies almost exclusively on the individual voter registration process, in

section 1, to notify voters of new photo ID requirements.  Section two provides some

additional notice via websites of the Secretary of State and counties.  I understand less

than a third of Texas counties maintain websites.  The major problem here is that the bill

does nothing by way of affirmative public education; it is entirely passive and relies on

voters either to visit a state or county website with a notice of the new law or obtain

notice upon registering to vote or renewing an existing registration.  Yet in section 14 the

bill requires the new requirements to take effect within a matter of months.  AARP is

concerned that older voters are especially likely not to benefit from notice limited to

information provided with registration or re-registration, as voters who have gone the

longest without major changes in the registration process are least likely to be alerted by

11

TX_00002496

USA_00020137

changes announced in their semi-annual registration packet. This is especially the case as

the bill makes no specific provision how, and how prominently, notice is to be given to

voters in this manner.

 **Second, the lack of public education or public outreach plans or funding poses a**

**barrier to the timeline for implementation contemplated in the current proposal.**

The State should be doing its utmost to avoid situations whereby voters show up to vote

without the appropriate ID. Yet that will happen without very substantial public

education and outreach. And older voters, who are generally used to the current system,

are disproportionally likely to be tripped up by the new rules. In the Georgia case, the

State's failure to adopt and implement a robust public education and outreach program

caused the photo ID law to be enjoined twice. That seems a danger with this bill in its

current form. A related flaw is the lack of any provision for funds for public education

and outreach. If the State plans to notify voters about new photo ID rules when they

register to vote, which takes place on a two-year cycle, it would seem unfair to

implement new rules in early 2010, and indeed, prior to a time at least two years after the

law's effective date. Substantially more than two years would seem appropriate if the

proponents are serious about giving voters a reasonable chance to comply prior to the

next election after they are personally notified of the new rules. Another related defect

appears to be the lack of plans or funding for public outreach. For instance, there are no

provisions in the bill (e.g., in section 13) specifying which and how many offices will

issue new photo ID documents; nor is any provision made for special efforts to address

the needs of populations with limited mobility, such as older persons with disabilities,

12

TX_00002497
USA_00020138

including those residing in assisted living facilities or nursing homes. In the Georgia

voter ID case, state officials were enjoined from implementing a new photo ID law until

the could show outreach efforts (e.g., vehicles visiting areas underserved by DMV offices

to issue new photo ID documents).

**Third, heavy reliance of new photo ID rules via the internet is likely to adversely**

**affect older, low-income and minority voters and voters with disabilities.**

Although older persons generally, especially those in the workforce, are rapidly

becoming tech savvy, many older voters – including high percentages of those not now in

the workforce, of those with fixed and low incomes, of those with disabilities, and those

residing in low income areas of the state, or in assisted living arrangements or nursing

homes – are not likely to benefit from web-based notice of new photo ID rules.

Moreover, if web-based notice nevertheless continues to be a priority under the bill,

provision should be made to fund creation or improvement of websites for those counties

without them or without effective or user-friendly sites. In addition, the bill lacks

specific directions to the state and counties to give us assurance that web-based notice

would be done effectively and data would be conveyed in a sufficiently prominent

manner.

**Fourth, the bill lacks clarity in regard to training of persons most likely to interact**

**with voters in implementing new photo ID rules.**

Section 3 of the bill calls for additional training related to "acceptance and handling" of

ID "presented by a voter to an election officer," but according to the Senate Research

Center Bill Analysis only refers to training of election judges. Section 4 of the bill

13

TX_00002498

USA_00020139

expands training to election clerks. But neither provision nor any other provision of the

bill appears to apply to training of poll workers themselves. If this is the intent, this

appears to AARP to be a major defect, as these personnel would appear to be the ones

most likely to interact with voters in implementing new photo ID rules. Moreover, the

bill contains no provision for funds to train poll workers or election clerks.

**Fifth, the bill lacks clarity in regard to the timeline for training activities.**

Section 13 provides for implementation of training activities regarding new photo ID

rules "as soon as practicable." These four words recall an earlier four-word phrase –

"with all deliberate speed," from the Supreme Court's 1955 implementation decision in

*Brown v. Board of Education* – that came to be synonymous with "no time soon."


Finally, in regard to the substantive approach to voter eligibility reflected in the bill, I

have the following additional observations and concerns:

**Sixth, it is unclear why the bill precludes persons with a history of voting in a**
**precinct to vote there without a registration certificate without meeting new ID**
**rules.**

Sections 6 and 9 of the bill together hurt longtime voters – many of them likely to be

older voters – whose names appears on the voter rolls at a polling station, but who fail to

produce a registration certificate upon appearing to vote; under current law, they can sign

an affidavit and vote a regular ballot. Under the bill, they only may vote a provisional

ballot unless they also can produce new ID. This seems unnecessary, unlikely to deter or

prevent any fraud, and yet likely to impede voting by long-time, legitimate voters.

14

TX_00002499
JA_005258

TX_00002499

USA_00020140

Similarly, sections 6 and 7 of the bill together hurt the voting chances of persons with a registration certificate but whose names are "not on the precinct list of registered voters"; under current law, it appears they "shall be accepted for voting," however, under the bill, unless they have new qualifying ID they only can vote a provisional ballot.

**Seventh, the effectiveness of the bill's free photo ID provision is questionable.**

Section 12 of the bill forbids the Department of Public Safety from charging any person for a new photo ID "who states that the[y are] obtaining the personal identification for the sole purpose of satisfying [the new voting ID requirement]." AARP is concerned that the bill makes no provision for funding of "free" ID and that as a result, in current dire fiscal conditions, officials responsible for implementing the rule may have a disincentive to do so properly. For older voters on fixed incomes, the fees associated with obtaining government-issued identification are anything but trivial.

Once again, thank you for the opportunity to comment on the proposed photo ID bill.

15

TX_00002500
JA_005259

TX_00002500

USA_00020141

# Voter Education, Anderson County Workshop, 2008







TX_00002501
JA_005260

TX_00002501

USA_00020142



# Texas State Conference of NAACP Branches

1107 E. 11th St., Ste. A, Austin, TX 78702
Telephone: 512-322-9547 Fax: 512-322-0757

## STATEMENT OF GARY L. BLEDSOE, PRESIDENT TEXAS NAACP TO THE
## SENATE COMMITTEE OF THE WHOLE

### *March 10, 2009*

Good morning. My name is Gary Bledsoe and I am the President of the Texas NAACP. The NAACP is our Nation's oldest, largest and most widely-recognized grassroots civil rights organization in the United States. The NAACP has had units in Texas since 1915. We are a multi-racial organization, originally formed in 1909 by 6 whites and 2 blacks. We currently have more than 2,200 membership units with members in every state across the country and we have nearly 200 in Texas alone.

I would like to begin by thanking and commending this committee for holding this hearing. However, I hope that the pundits are wrong who have said recently that the testimony you hear today will be of no consequence. The NAACP is a non-partisan group and we try and work with members of both major political parties and others as well to advance our mission of eliminating inappropriate color distinctions in this county and advancing the interests and opportunities for racial and ethnic minorities.

In Texas there has been a sordid history of permitting African-Americans to vote. Back in the 1920's the NAACP fought racist laws of the Democratic Party that did not permit meaningful participation of persons of African-descent in the Democratic Party process. However instead of yielding to court decisions outside the State the authorities herein simply went about their segregation in different ways. Ultimately the United States Supreme Court had to invalidate the racist system of voting in the Democratic Party. And I can say that even though on paper we have had the opportunity to participate in elections across our State and have made significant gains, I am sad to report that racist acts seeking to suppress the African-American vote in our State continue. Many great Texans like Frank Robinson of Palestine in 1974 have died or suffered greatly because of the belief that African-Americans should be able to participate in the political process. And in recent years we have had hate crimes in Wharton to suppress minority turnout, use of police, newspapers and mailboxes in Tarrant County to intimidate Black voters, refusal to follow the law in Fort Bend County to permit African-American voters to vote and not accepting challenged ballots, purging people from voting rolls with no legitimate reason and in violation of the law while not processing voter registration applications in Waller County (we want to thank Attorney General Abbott for helping to right that particular situation), too few

TX_00002502

USA_00020143



# Texas State Conference of NAACP Branches

1107 E. 11th St., Ste. A, Austin, TX 78702
Telephone: 512-322-9547 Fax: 512-322-0757

ballots being issued in Dallas County on several different occasions for minority precincts, selection of inconvenient early voting cites for racial minorities or the refusal to permit voters to cast challenged ballots, the late publication of polling place changes, unexplained purges from voter rolls—and it goes on and on. We have held hearings in Dallas, Fort Worth, Houston and Texarkana and gotten individuals from many other locales to come forth. And then there is the strike force that we have that receives calls on election day and we can say that problems still persist and notably we have seen problems with both major parties but much more so one party compared to the other. The specific provisions in SB362 will cause more time for voters to remain in line, create longer lines and dissuade individuals from voting because problems like ensuring the proper numbers of ballots, etc. have not been cured. Besides that many persons do not have voter id cards and they do not have the kinds of documents that have been proposed for potential proof if a photo id is not available. What happens if a student in Waller County has a driver's license from Harris County and a Waller County voter registration card? With the continued history of that county and the State's refusal to get them in line with the law of the land, I would expect that many students would be disenfranchised. And it goes on and on and on. We have held many hearings around our state and done a number of voter intimidation strike force operations where we have identified that a problem still exists and we must remain vigilant in our attempts to ensure African-Americans in Texas are permitted to vote. This requirement is intimidating and will discourage many from voting who are racial and ethnic minorities.

Throughout our history, countless Americans have fought and died to protect the right of people across the globe to cast a free and unfettered ballot and to have that vote counted. We owe it to these men and women and their families to ensure that the right to vote is protected here at home. Ironically, this problem is not being addressed by the Legislature but another matter is that does not rise to the level of a serious problem from what we believe—voter fraud. To begin with I will say that we take this position based on the merits of the position and partisan matters are of no consequence to us. Back in 2003 when an unnecessary Voter Fraud law was proposed by Democrat Steve Wolens, we were vigorous in opposition to his bill. And today we feel the same way about this initiative. The Wolens bill, which became law, ended up presenting the exact kind of problem that we expected that it would become. Today if you go and vote and you are not registered to vote then you can already be prosecuted? And how many people will use someone's voter ID card to vote knowing that the other person may vote as well? It seems like there are internal fail-safes in the structure of the law that would mitigate against voter fraud.

TX_00002503
JA_005262

TX_00002503

USA_00020144



# Texas State Conference of NAACP Branches

1107 E. 11th St., Ste. A, Austin, TX 78702
Telephone: 512-322-9547 Fax: 512-322-0757

The NAACP has been in existence for 100 years, and since our inception we have fought for equal voting rights for all Americans. Sadly, our struggle is not yet complete as there is still voter suppression throughout the United States.

We are aware that Georgia had its voter id law cleared by the Department of Justice, however, it is clear to us that the previous Department of Justice unlike any other from previous administrations was intent on denying minorities the protections in voting rights and in other areas that were envisioned by the bi-partisan group that passed the Voting Rights Act in 1965. There was always a certain understanding that individuals had in regards to the role of the Department of Justice in protecting the interests of racial and ethnic minorities but this last Civil Rights Division ran out career employees and put people in positions of authority and influence and even regular attorney positions who were hostile to minority voting rights. As a result I would expect a more serious review of what Texas may submit. The United States Supreme Court has upheld the Indiana voting law but we must note that because of the uniqueness of Texas, its voting rights history, its history with language and racial minorities and the scope of the Voting Rights Act's application here that different questions will be raised. In this case what would happen is that the Department of Justice will have to make a review and if they decide against the State then the matter will go to the United States Supreme Court for review ultimately with the Department of Justice against the State of Texas.

We think a serious inquiry should be made to see if there is a problem in Texas. So far the evidence, like Royal Masset has been quoted as saying (Masset is a former Field Director for the Republican Party who is my old law school classmate) **is quite conclusive that there is just not the problem**. If there is a problem then a bi-partisan group should be asked to come up with what is the most narrowly tailored law to address the problem so that minority voting rights are not compromised

5. <u>Number of voters who have registered since 2006 without a driver's license number.</u>

Committee members asked for the number of voters who registered since January 1, 2006 without a driver's license. The agency queried its statewide file, which reflects the following data:

| | |
|---|---|
| Number of voters who registered with a TDL: | 2,419,188 |
| Number of voters who registered with a SSN: | 253,282 |
| Number of voters who registered with both: | 872,425 |
| Number of voters who registered without either: | 37,490 |

In addition, agency staff queried the entire statewide file, which reflects the following breakdowns concerning identification numbers for all voters:

| | |
|---|---|
| Number of voters with a TDL: | 5,601,219 |
| Number of voters with a SSN: | 2,352,829 |
| Number of voters with both: | 4,102,204 |
| Number of voters with neither number: | 809,041 |

*Exhibit 38*

TX_00002505
JA_005264

TX_00002505

USA_00020146

## THE FACTS: THE SPECIAL INVESTIGATIONS UNIT

Beginning in May, 2006, it was erroneously reported that the $1.4 million in federal funds were spent on election fraud enforcement. Those reports are false.

### Background: The SIU's Role and Investigative Efforts

In 2003, the OAG launched a Special Investigations Unit ("SIU"). Initially, that unit was funded by a Justice Department grant that is administered by the Governor's Office. However, contrary to those false reports, the SIU handles many types of cases, not just election fraud.

Among the cases handled by the SIU are:

- **El Dorado / YFZ Ranch** (three SIU investigators are currently assigned full-time to that case)
- **Texas Youth Commission**, including a case where a TYC officer was indicted for drug possesion (SIU investigators handled more than 840 abuse allegations)
- **Hurricane-related rapid response** efforts, including serving subpoenas on potential price gougers (note: SIU was not involved with Operation Safe Shelter)
- **Market manipulation and penny stock** fraud case that was jointly pursued with the Securities & Exchange Commission
- **ERCOT** case
- **Cyber Crimes** and **Fugitive Unit** assistance for combined arrests of over 100 cyber predators and child pornographers and more than 1,000 fugitives.
- **Identity Theft**
- **Public Corruption**, including the Bastrop County cases and the Potter County Sheriff case.
- **Money Laundering**, including investigations into the bulk transportation of drug currency; money couriers; and, money services businesses.
- **Election Fraud**

### SIU Funding

The initial $1.9 million DOJ grant was renewed for approximately $2.0 million. To date, $3.1 million in grant funding has been allocated to the SIU to pay for investigations into the above mentioned cases.[1] In addition to the SIU's grant funding, it also receives funding from the OAG's criminal justice budget.

To date, the OAG has resolved 22 election fraud prosecutions at a cost of $600,000. An additional eight election fraud indictments are pending. Approximately $100,000 has been spent on those eight cases. Of $700,000 spent on Election Code investigations, approximately $93,000 came from DOJ grants. DOJ grants are no longer used to fund the Special Investigations Unit. It is now funded with $1.5 million in general revenue each year.[2]

---

[1] The difference between the $3.9 million in allocated grant funding and the $3.1 million that has been spent reflects $800,000 in grant money that lapsed and was recaptured by the Governor's Office. The process is not a block grant, but rather a reward system wherein the Governor's Office pays expenses accrued by the grantee agency. So that $800k reflects dollars for which expenses were not incurred.
[2] CID's annual budget is $4.4 million. Of that $1.5 million is annually allocated to the SIU.

Exhibit 39

(Slip Opinion)   OCTOBER TERM, 2007   1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CRAWFORD ET AL. *v.* MARION COUNTY ELECTION BOARD ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 07–21.   Argued January 9, 2008—Decided April 28, 2008*

After Indiana enacted an election law (SEA 483) requiring citizens vot-
ing in person to present government-issued photo identification, peti-
tioners filed separate suits challenging the law's constitutionality.
Following discovery, the District Court granted respondents sum-
mary judgment, finding the evidence in the record insufficient to
support a facial attack on the statute's validity.  In affirming, the
Seventh Circuit declined to judge the law by the strict standard set
for poll taxes in *Harper* v. *Virginia Bd. of Elections*, 383 U. S. 663,
finding the burden on voters offset by the benefit of reducing the risk
of fraud.

*Held:* The judgment is affirmed.

472 F. 3d 949, affirmed.

JUSTICE STEVENS, joined by THE CHIEF JUSTICE and JUSTICE KEN-
NEDY, concluded that the evidence in the record does not support a fa-
cial attack on SEA 483's validity.  Pp. 5–20.

(a) Under *Harper*, even rational restrictions on the right to vote are
invidious if they are unrelated to voter qualifications.  However,
"even handed restrictions" protecting the "integrity and reliability of
the electoral process itself" satisfy *Harper*'s standard.  *Anderson* v.
*Celebrezze*, 460 U. S. 780, 788, n. 9.  A state law's burden on a politi-
cal party, an individual voter, or a discrete class of voters must be
justified by relevant and legitimate state interests "sufficiently
weighty to justify the limitation."  *Norman* v. *Reed*, 502 U. S. 279,

———————

*Together with No. 07–25, *Indiana Democratic Party et al.* v. *Rokita,
Secretary of State of Indiana, et al.,* also on certiorari to the same court.

Exhibit 40

TX_00002507
JA_005266

TX_00002507

USA_00020148

2          CRAWFORD v. MARION COUNTY ELECTION BD.

Syllabus

288–289. Pp. 5–7.

(b) Each of Indiana's asserted interests is unquestionably relevant to its interest in protecting the integrity and reliability of the electoral process. The first is the interest in deterring and detecting voter fraud. Indiana has a valid interest in participating in a nationwide effort to improve and modernize election procedures criticized as antiquated and inefficient. Indiana also claims a particular interest in preventing voter fraud in response to the problem of voter registration rolls with a large number of names of persons who are either deceased or no longer live in Indiana. While the record contains no evidence that the fraud SEA 483 addresses—in-person voter impersonation at polling places—has actually occurred in Indiana, such fraud has occurred in other parts of the country, and Indiana's own experience with voter fraud in a 2003 mayoral primary demonstrates a real risk that voter fraud could affect a close election's outcome. There is no question about the legitimacy or importance of a State's interest in counting only eligible voters' votes. Finally, Indiana's interest in protecting public confidence in elections, while closely related to its interest in preventing voter fraud, has independent significance, because such confidence encourages citizen participation in the democratic process. Pp. 7–13.

(c) The relevant burdens here are those imposed on eligible voters who lack photo identification cards that comply with SEA 483. Because Indiana's cards are free, the inconvenience of going to the Bureau of Motor Vehicles, gathering required documents, and posing for a photograph does not qualify as a substantial burden on most voters' right to vote, or represent a significant increase over the usual burdens of voting. The severity of the somewhat heavier burden that may be placed on a limited number of persons—*e.g.,* elderly persons born out-of-state, who may have difficulty obtaining a birth certificate—is mitigated by the fact that eligible voters without photo identification may cast provisional ballots that will be counted if they execute the required affidavit at the circuit court clerk's office. Even assuming that the burden may not be justified as to a few voters, that conclusion is by no means sufficient to establish petitioners' right to the relief they seek. Pp. 13–16.

(d) Petitioners bear a heavy burden of persuasion in seeking to invalidate SEA 483 in all its applications. This Court's reasoning in *Washington State Grange* v. *Washington State Republican Party,* 552 U. S. ___, applies with added force here. Petitioners argue that Indiana's interests do not justify the burden imposed on voters who cannot afford or obtain a birth certificate and who must make a second trip to the circuit court clerk's office, but it is not possible to quantify, based on the evidence in the record, either that burden's magnitude

TX_00002508

USA_00020149

Cite as: 553 U. S. ____ (2008)                3

Syllabus

or the portion of the burden that is fully justified. A facial challenge must fail where the statute has a "'plainly legitimate sweep.'" *Id.*, at ___. When considering SEA 483's broad application to all Indiana voters, it "imposes only a limited burden on voters' rights." *Burdick* v. *Takushi*, 504 U. S. 428, 439. The "precise interests" advanced by Indiana are therefore sufficient to defeat petitioners' facial challenge. *Id.*, at 434. Pp. 16–20.

(e) Valid neutral justifications for a nondiscriminatory law, such as SEA 483, should not be disregarded simply because partisan interests may have provided one motivation for the votes of individual legislators. P. 20.

JUSTICE SCALIA, joined by JUSTICE THOMAS and JUSTICE ALITO, was of the view that petitioners' premise that the voter-identification law might have imposed a special burden on some voters is irrelevant. The law should be upheld because its overall burden is minimal and justified. A law respecting the right to vote should be evaluated under the approach in *Burdick* v. *Takushi*, 504 U. S. 428, which calls for application of a deferential, "important regulatory interests" standard for nonsevere, nondiscriminatory restrictions, reserving strict scrutiny for laws that severely restrict the right to vote, *id.*, at 433–434. The different ways in which Indiana's law affects different voters are no more than different impacts of the single burden that the law uniformly imposes on all voters: To vote in person, everyone must have and present a photo identification that can be obtained for free. This is a generally applicable, nondiscriminatory voting regulation. The law's universally applicable requirements are eminently reasonable because the burden of acquiring, possessing, and showing a free photo identification is not a significant increase over the usual voting burdens, and the State's stated interests are sufficient to sustain that minimal burden. Pp. 1–6.

STEVENS, J., announced the judgment of the Court and delivered an opinion, in which ROBERTS, C. J., and KENNEDY, J., joined. SCALIA, J., filed an opinion concurring in the judgment, in which THOMAS and ALITO, JJ., joined. SOUTER, J., filed a dissenting opinion, in which GINSBURG, J., joined. BREYER, J., filed a dissenting opinion.

TX_00002509

USA_00020150

Cite as: 553 U. S. ____ (2008)                    1

Opinion of STEVENS, J.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 07–21 and 07–25

WILLIAM CRAWFORD, ET AL., PETITIONERS
07–21                           *v.*
MARION COUNTY ELECTION BOARD ET AL.

INDIANA DEMOCRATIC PARTY, ET AL., PETITIONERS
07–25                           *v.*
TODD ROKITA, INDIANA SECRETARY OF STATE,
ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[April 28, 2008]

JUSTICE STEVENS announced the judgment of the Court
and delivered an opinion in which THE CHIEF JUSTICE and
JUSTICE KENNEDY join.

At issue in these cases is the constitutionality of an
Indiana statute requiring citizens voting in person on
election day, or casting a ballot in person at the office of
the circuit court clerk prior to election day, to present
photo identification issued by the government.

Referred to as either the "Voter ID Law" or "SEA 483,"[1]
the statute applies to in-person voting at both primary and
general elections. The requirement does not apply to
absentee ballots submitted by mail, and the statute con-
tains an exception for persons living and voting in a state-

_____
[1] Senate Enrolled Act No. 483, 2005 Ind. Acts p. 2005.

TX_00002510

USA_00020151

2      CRAWFORD v. MARION COUNTY ELECTION BD.

Opinion of STEVENS, J.

licensed facility such as a nursing home. Ind. Code Ann.
§3–11–8–25.1(e) (West Supp. 2007). A voter who is indi-
gent or has a religious objection to being photographed
may cast a provisional ballot that will be counted only if
she executes an appropriate affidavit before the circuit
court clerk within 10 days following the election. §§3–
11.7–5–1, 3–11.7–5–2.5(c) (West 2006).[2] A voter who has
photo identification but is unable to present that identifi-
cation on election day may file a provisional ballot that
will be counted if she brings her photo identification to the
circuit county clerk's office within 10 days. §3–11.7–5–
2.5(b). No photo identification is required in order to
register to vote,[3] and the State offers free photo identifica-
tion to qualified voters able to establish their residence
and identity. §9–24–16–10(b) (West Supp. 2007).[4]
    Promptly after the enactment of SEA 483 in 2005, the
Indiana Democratic Party and the Marion County Democ-
ratic Central Committee (Democrats) filed suit in the
Federal District Court for the Southern District of Indiana
against the state officials responsible for its enforcement,
seeking a judgment declaring the Voter ID Law invalid

---

[2] The affidavit must state that (1) the person executing the affidavit is
the same individual who cast the provisional ballot on election day; and
(2) the affiant is indigent and unable to obtain proof of identification
without paying a fee or has a religious objection to being photographed.
Ind. Code Ann. §3–11–7.5–2.5(c) (West 2006). If the election board
determines that the challenge to the affiant was based solely on a
failure to present photo identification, the "county election board shall
. . . find that the voter's provisional ballot is valid." §3–11–7.5–2.5(d).

[3] Voters registering to vote for the first time in Indiana must abide by
the requirements of the Help America Vote Act of 2002 (HAVA), 116
Stat. 1666, described infra, at 8–9.

[4] Indiana previously imposed a fee on all residents seeking a state-
issued photo identification. At the same time that the Indiana Legisla-
ture enacted SEA 483, it also directed the Bureau of Motor Vehicles
(BMV) to remove all fees for state-issued photo identification for indi-
viduals without a driver's license who are at least 18 years old. See
2005 Ind. Acts p. 2017, §18.

TX_00002511

USA_00020152

Opinion of STEVENS, J.

and enjoining its enforcement. A second suit seeking the
same relief was brought on behalf of two elected officials
and several nonprofit organizations representing groups of
elderly, disabled, poor, and minority voters.[5] The cases
were consolidated, and the State of Indiana intervened to
defend the validity of the statute.

The complaints in the consolidated cases allege that the
new law substantially burdens the right to vote in viola-
tion of the Fourteenth Amendment; that it is neither a
necessary nor appropriate method of avoiding election
fraud; and that it will arbitrarily disfranchise qualified
voters who do not possess the required identification and
will place an unjustified burden on those who cannot
readily obtain such identification. Second Amended Com-
plaint in No. 1: 05–CV–0634–SEB–VSS (SD Ind.), pp. 6–9
(hereinafter Second Amended Complaint).

After discovery, District Judge Barker prepared a com-
prehensive 70-page opinion explaining her decision to
grant defendants' motion for summary judgment. 458
F. Supp. 2d 775 (SD Ind. 2006). She found that petition-
ers had "not introduced evidence of a single, individual
Indiana resident who will be unable to vote as a result of
SEA 483 or who will have his or her right to vote unduly
burdened by its requirements." *Id.*, at 783. She rejected
"as utterly incredible and unreliable" an expert's report
that up to 989,000 registered voters in Indiana did not
possess either a driver's license or other acceptable photo
identification. *Id.*, at 803. She estimated that as of 2005,
when the statute was enacted, around 43,000 Indiana

---

[5] Specifically, the plaintiffs were William Crawford, Joseph Simpson,
Concerned Clergy of Indianapolis, Indianapolis Resource Center for
Independent Living, Indiana Coalition on Housing and Homeless
Issues, Indianapolis Branch of the National Association for the Ad-
vancement of Colored People, and United Senior Action of Indiana.
Complaint in No. 49012050 4PL01 6207 (Super. Ct. Marion Cty., Ind.,
Apr. 28, 2005), p. 2.

4          CRAWFORD v. MARION COUNTY ELECTION BD.

Opinion of STEVENS, J.

residents lacked a state-issued driver's license or identifi-
cation card. *Id.,* at 807.[6]

A divided panel of the Court of Appeals affirmed. 472
F. 3d 949 (CA7 2007). The majority first held that the
Democrats had standing to bring a facial challenge to the
constitutionality of SEA 483. Next, noting the absence of
any plaintiffs who claimed that the law would deter them
from voting, the Court of Appeals inferred that "the moti-
vation for the suit is simply that the law may require the
Democratic Party and the other organizational plaintiffs
to work harder to get every last one of their supporters to
the polls." *Id.,* at 952. It rejected the argument that the
law should be judged by the same strict standard applica-
ble to a poll tax because the burden on voters was offset by
the benefit of reducing the risk of fraud. The dissenting
judge, viewing the justification for the law as "hollow"—
more precisely as "a not-too-thinly-veiled attempt to dis-
courage election-day turnout by certain folks believed to
skew Democratic"—would have applied a stricter stan-
dard, something he described as "close to 'strict scrutiny
light.'" *Id.,* at 954, 956 (opinion of Evans, J.). In his view,
the "law imposes an undue burden on a recognizable
segment of potential eligible voters" and therefore violates
their rights under the First and Fourteenth Amendments
to the Constitution. *Id.,* at 956–957.

Four judges voted to grant a petition for rehearing en
banc. 484 F. 3d 437 (CA7 2007) (Wood, J., dissenting from
denial of rehearing en banc). Because we agreed with
their assessment of the importance of these cases, we

---

[6] She added: "In other words, an estimated 99% of Indiana's voting
age population already possesses the necessary photo identification to
vote under the requirements of SEA 483." 458 F. Supp. 2d, at 807.
Given the availability of free photo identification and greater public
awareness of the new statutory requirement, presumably that percent-
age has increased since SEA 483 was enacted and will continue to
increase in the future.

TX_00002513

USA_00020154

Opinion of STEVENS, J.

granted certiorari. 551 U. S. ___ (2007). We are, however, persuaded that the District Court and the Court of Appeals correctly concluded that the evidence in the record is not sufficient to support a facial attack on the validity of the entire statute, and thus affirm.[7]

I

In *Harper* v. *Virginia Bd. of Elections,* 383 U. S. 663 (1966), the Court held that Virginia could not condition the right to vote in a state election on the payment of a poll tax of $1.50. We rejected the dissenters' argument that the interest in promoting civic responsibility by weeding out those voters who did not care enough about public affairs to pay a small sum for the privilege of voting provided a rational basis for the tax. See *id.,* at 685 (opinion of Harlan, J.). Applying a stricter standard, we concluded that a State "violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard." *Id.,* at 666 (opinion of the Court). We used the term "invidiously discriminate" to describe conduct prohibited under that standard, noting that we had previously held that while a State may obviously impose "reasonable residence restrictions on the availability of the ballot," it "may not deny the opportunity to vote to a bona fide resident merely because he is a member of the armed services." *Id.,* at 666–667 (citing *Carrington* v. *Rash,* 380 U. S. 89, 96 (1965)). Although the State's justification for the tax was rational, it was invidious because it was irrelevant to the voter's qualifications.

Thus, under the standard applied in *Harper,* even rational restrictions on the right to vote are invidious if they

---

[7]We also agree with the unanimous view of those judges that the Democrats have standing to challenge the validity of SEA 483 and that there is no need to decide whether the other petitioners also have standing.

Opinion of STEVENS, J.

are unrelated to voter qualifications. In *Anderson* v. *Celebrezze,* 460 U. S. 780 (1983), however, we confirmed the general rule that "evenhanded restrictions that protect the integrity and reliability of the electoral process itself" are not invidious and satisfy the standard set forth in *Harper.* 460 U. S., at 788, n. 9. Rather than applying any "litmus test" that would neatly separate valid from invalid restrictions, we concluded that a court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the "hard judgment" that our adversary system demands.

In later election cases we have followed *Anderson*'s balancing approach. Thus, in *Norman* v. *Reed,* 502 U. S. 279, 288–289 (1992), after identifying the burden Illinois imposed on a political party's access to the ballot, we "called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation," and concluded that the "severe restriction" was not justified by a narrowly drawn state interest of compelling importance. Later, in *Burdick* v. *Takushi,* 504 U. S. 428 (1992), we applied *Anderson*'s standard for "'reasonable, nondiscriminatory restrictions,'" 504 U. S., at 434, and upheld Hawaii's prohibition on write-in voting despite the fact that it prevented a significant number of "voters from participating in Hawaii elections in a meaningful manner." *Id.,* at 443 (KENNEDY, J., dissenting). We reaffirmed *Anderson*'s requirement that a court evaluating a constitutional challenge to an election regulation weigh the asserted injury to the right to vote against the "'precise interests put forward by the State as justifications for the burden imposed by its rule.'" 504 U. S., at 434 (quoting *Anderson,* 460 U. S., at 789).[8]

---

[8] Contrary to JUSTICE SCALIA's suggestion, see *post,* at 2 (opinion concurring in judgment), our approach remains faithful to *Anderson* and *Burdick.* The *Burdick* opinion was explicit in its endorsement and

TX_00002515

USA_00020156

Cite as: 553 U. S. ____ (2008)  7

Opinion of STEVENS, J.

In neither *Norman* nor *Burdick* did we identify any litmus test for measuring the severity of a burden that a state law imposes on a political party, an individual voter, or a discrete class of voters. However slight that burden may appear, as *Harper* demonstrates, it must be justified by relevant and legitimate state interests "sufficiently weighty to justify the limitation." *Norman*, 502 U. S., at 288–289. We therefore begin our analysis of the constitutionality of Indiana's statute by focusing on those interests.

## II

The State has identified several state interests that arguably justify the burdens that SEA 483 imposes on voters and potential voters. While petitioners argue that the statute was actually motivated by partisan concerns and dispute both the significance of the State's interests and the magnitude of any real threat to those interests, they do not question the legitimacy of the interests the State has identified. Each is unquestionably relevant to the State's interest in protecting the integrity and reliability of the electoral process.

The first is the interest in deterring and detecting voter fraud. The State has a valid interest in participating in a nationwide effort to improve and modernize election procedures that have been criticized as antiquated and inefficient.[9] The State also argues that it has a particular

---

adherence to *Anderson*, see 504 U. S., at 434, and repeatedly cited *Anderson*, see 504 U. S., at 436, n. 5, 440, n. 9, 441. To be sure, *Burdick* rejected the argument that strict scrutiny applies to all laws imposing a burden on the right to vote; but in its place, the Court applied the "'flexible standard'" set forth in *Anderson*. *Burdick* surely did not create a novel "deferential 'important regulatory interests' standard." See *post*, at 1–2.

[9] See National Commission on Federal Election Reform, To Assure Pride and Confidence in the Electoral Process 18 (2002) (with Honorary Co-chairs former Presidents Gerald Ford and Jimmy Carter).

TX_00002516

USA_00020157

8        CRAWFORD v. MARION COUNTY ELECTION BD.

interest in preventing voter fraud in response to a problem
that is in part the product of its own maladministration—
namely, that Indiana's voter registration rolls include a
large number of names of persons who are either deceased
or no longer live in Indiana.  Finally, the State relies on its
interest in safeguarding voter confidence.  Each of these
interests merits separate comment.

*Election Modernization*

Two recently enacted federal statutes have made it
necessary for States to reexamine their election proce-
dures.  Both contain provisions consistent with a State's
choice to use government-issued photo identification as a
relevant source of information concerning a citizen's eligi-
bility to vote.

In the National Voter Registration Act of 1993 (NVRA),
107 Stat. 77, 42 U. S. C. §1973gg *et seq.,* Congress estab-
lished procedures that would both increase the number of
registered voters and protect the integrity of the electoral
process.  §1973gg.  The statute requires state motor vehi-
cle driver's license applications to serve as voter registra-
tion applications.  §1973gg–3.  While that requirement has
increased the number of registered voters, the statute also
contains a provision restricting States' ability to remove
names from the lists of registered voters.  §1973gg–6(a)(3).
These protections have been partly responsible for inflated
lists of registered voters.  For example, evidence credited
by Judge Barker estimated that as of 2004 Indiana's voter
rolls were inflated by as much as 41.4%, see 458 F. Supp.
2d, at 793, and data collected by the Election Assistance
Committee in 2004 indicated that 19 of 92 Indiana coun-
ties had registration totals exceeding 100% of the 2004
voting-age population, Dept. of Justice Complaint in
*United States* v. *Indiana,* No. 1:06–cv–1000–RLY–TAB
(SD Ind., June 27, 2006), p. 4, App. 313.

In HAVA, Congress required every State to create and

TX_00002517

USA_00020158

Cite as: 553 U. S. ____ (2008)            9

Opinion of STEVENS, J.

maintain a computerized statewide list of all registered voters. 42 U. S. C. §15483(a) (2000 ed., Supp. V). HAVA also requires the States to verify voter information contained in a voter registration application and specifies either an "applicant's driver's license number" or "the last 4 digits of the applicant's social security number" as acceptable verifications. §15483(a)(5)(A)(i). If an individual has neither number, the State is required to assign the applicant a voter identification number. §15483(a)(5)(A)(ii).

HAVA also imposes new identification requirements for individuals registering to vote for the first time who submit their applications by mail. If the voter is casting his ballot in person, he must present local election officials with written identification, which may be either "a current and valid photo identification" or another form of documentation such as a bank statement or paycheck. §15483(b)(2)(A). If the voter is voting by mail, he must include a copy of the identification with his ballot. A voter may also include a copy of the documentation with his application or provide his driver's license number or Social Security number for verification. §15483(b)(3). Finally, in a provision entitled "Fail-safe voting," HAVA authorizes the casting of provisional ballots by challenged voters. §15483(b)(2)(B).

Of course, neither HAVA nor NVRA required Indiana to enact SEA 483, but they do indicate that Congress believes that photo identification is one effective method of establishing a voter's qualification to vote and that the integrity of elections is enhanced through improved technology. That conclusion is also supported by a report issued shortly after the enactment of SEA 483 by the Commission on Federal Election Reform chaired by former President Jimmy Carter and former Secretary of State James A. Baker III, which is a part of the record in these cases. In the introduction to their discussion of voter

TX_00002518

USA_00020159

10    CRAWFORD v. MARION COUNTY ELECTION BD.

Opinion of STEVENS, J.

identification, they made these pertinent comments:

> "A good registration list will ensure that citizens are
> only registered in one place, but election officials still
> need to make sure that the person arriving at a poll-
> ing site is the same one that is named on the registra-
> tion list. In the old days and in small towns where
> everyone knows each other, voters did not need to
> identify themselves. But in the United States, where
> 40 million people move each year, and in urban areas
> where some people do not even know the people living
> in their own apartment building let alone their pre-
> cinct, some form of identification is needed.
>
> "There is no evidence of extensive fraud in U. S.
> elections or of multiple voting, but both occur, and it
> could affect the outcome of a close election. The elec-
> toral system cannot inspire public confidence if no
> safeguards exist to deter or detect fraud or to confirm
> the identity of voters. Photo identification cards cur-
> rently are needed to board a plane, enter federal
> buildings, and cash a check. Voting is equally impor-
> tant." Commission on Federal Election Reform, Re-
> port, Building Confidence in U. S. Elections §2.5
> (Sept. 2005), App. 136–137 (Carter-Baker Report)
> (footnote omitted).[10]

---

[10] The historical perceptions of the Carter-Baker Report can largely
be confirmed. The average precinct size in the United States has
increased in the last century, suggesting that it is less likely that poll
workers will be personally acquainted with voters. For example, at
the time Joseph Harris wrote his groundbreaking 1934 report
on election administration, Indiana restricted the number of voters
in each precinct to 250. J. Harris, Election Administration in
the United States 208 (Brookings Institution 1934). An Elec-
tion Commission report indicates that Indiana's average number
of registered voters per polling place is currently 1,014. Election
Assistance Commission, Final Report of the 2004 Election Day
Survey, ch. 13 (Sept. 2005) (Table 13) (hereinafter Final Report)

TX_00002519

USA_00020160

Cite as: 553 U. S. ____ (2008)          11

Opinion of STEVENS, J.

*Voter Fraud*

The only kind of voter fraud that SEA 483 addresses is in-person voter impersonation at polling places. The record contains no evidence of any such fraud actually occurring in Indiana at any time in its history. Moreover, petitioners argue that provisions of the Indiana Criminal Code punishing such conduct as a felony provide adequate protection against the risk that such conduct will occur in the future. It remains true, however, that flagrant examples of such fraud in other parts of the country have been documented throughout this Nation's history by respected historians and journalists,[11] that occasional examples have surfaced in recent years,[12] and that Indiana's own experi-

_____

(prepared by Election Data Services, Inc.), online at http:// www.eac.gov/clearinghouse/clearinghouse/2004-election-day-survey (all Internet materials as visited Apr. 16, 2008, and available in Clerk of Court's case file). In 1930, the major cities that Harris surveyed had an average number of voters per precinct that ranged from 247 to 617. Election Administration in the United States, at 214. While States vary today, most have averages exceeding 1,000, with at least eight States exceeding 2,000 registered voters per polling place. Final Report, ch. 13 (Table 13).

[11] Infamous examples abound in the New York City elections of the late nineteenth century, conducted under the influence of the Tammany Hall political machine. "Big Tim" Sullivan, a New York state senator, and—briefly—a United States Congressman, insisted that his "repeaters" (individuals paid to vote multiple times) have whiskers:

"'When you've voted 'em with their whiskers on you take 'em to a barber and scrape off the chin-fringe. Then you vote 'em again with side lilacs and a moustache. Then to a barber again, off comes the sides and you vote 'em a third time with the moustache. If that ain't enough and the box can stand a few more ballots clean off the moustache and vote 'em plain face. That makes every one of 'em good for four votes.'" M. Werner, Tammany Hall 439 (1928).

[12] Judge Barker cited record evidence containing examples from California, Washington, Maryland, Wisconsin, Georgia, Illinois, Pennsylvania, Missouri, Miami, and St. Louis. The Brief of *Amici Curiae* Brennan Center for Justice et al. in Support of Petitioners addresses

TX_00002520

USA_00020161

12      CRAWFORD *v.* MARION COUNTY ELECTION BD.

ence with fraudulent voting in the 2003 Democratic primary for East Chicago Mayor[13]—though perpetrated using absentee ballots and not in-person fraud—demonstrate that not only is the risk of voter fraud real but that it could affect the outcome of a close election.

There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters.  Moreover, the interest in orderly administration and accurate recordkeeping provides a sufficient justification for carefully identifying all voters participating in the election process.  While the most effective method of preventing election fraud may well be debatable, the propriety of doing so is perfectly clear.

In its brief, the State argues that the inflation of its voter rolls provides further support for its enactment of SEA 483.  The record contains a November 5, 2000, newspaper article asserting that as a result of NVRA and

---

each of these examples of fraud.  While the brief indicates that the record evidence of in-person fraud was overstated because much of the fraud was actually absentee ballot fraud or voter registration fraud, there remain scattered instances of in-person voter fraud.  For example, after a hotly contested gubernatorial election in 2004, Washington conducted an investigation of voter fraud and uncovered 19 "ghost voters."  *Borders* v. *King Cty.*, No. 05–2–00027–3 (Super. Ct. Chelan Cty., Wash., June 6, 2005) (verbatim report of unpublished oral decision), 4 Election L. J. 418, 423 (2005).  After a partial investigation of the ghost voting, one voter was confirmed to have committed in-person voting fraud.  Le & Nicolosi, Dead Voted in Governor's Race, Seattle Post-Intelligencer, Jan. 7, 2005, p. A1.

[13] See *Pabey* v. *Pastrick,* 816 N. E. 2d 1138, 1151 (Ind. 2006) (holding that a special election was required because one candidate engaged in "a deliberate series of actions . . . making it impossible to determine the candidate who received the highest number of legal votes cast in the election").  According to the uncontested factual findings of the trial court, one of the candidates paid supporters to stand near polling places and encourage voters—especially those who were poor, infirm, or spoke little English—to vote absentee.  The supporters asked the voters to contact them when they received their ballots; the supporters then "assisted" the voter in filling out the ballot.

Cite as: 553 U. S. ____ (2008)          13

Opinion of STEVENS, J.

"sloppy record keeping," Indiana's lists of registered voters included the names of thousands of persons who had either moved, died, or were not eligible to vote because they had been convicted of felonies.[14]  The conclusion that Indiana has an unusually inflated list of registered voters is supported by the entry of a consent decree in litigation brought by the Federal Government alleging violations of NVRA.  Consent Decree and Order in *United States* v. *Indiana*, No. 1:06–cv–1000–RLY–TAB (SD Ind., June 27, 2006), App. 299–307.  Even though Indiana's own negligence may have contributed to the serious inflation of its registration lists when SEA 483 was enacted, the fact of inflated voter rolls does provide a neutral and nondiscriminatory reason supporting the State's decision to require photo identification.

*Safeguarding Voter Confidence*

Finally, the State contends that it has an interest in protecting public confidence "in the integrity and legitimacy of representative government."  Brief for State Respondents, No. 07-25, p. 53.  While that interest is closely related to the State's interest in preventing voter fraud, public confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process.   As the Carter-Baker Report observed, the "electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters."  *Supra,* at 10.

III

States employ different methods of identifying eligible voters at the polls.  Some merely check off the names of registered voters who identify themselves; others require

---

[14]Theobald, Bogus Names Jam Indiana's Voter List, Indianapolis Star, Nov. 5, 2000, App. 145.

TX_00002522

USA_00020163

14          CRAWFORD *v.* MARION COUNTY ELECTION BD.

Opinion of STEVENS, J.

voters to present registration cards or other documenta-
tion before they can vote; some require voters to sign their
names so their signatures can be compared with those on
file; and in recent years an increasing number of States
have relied primarily on photo identification.[15]  A photo
identification requirement imposes some burdens on
voters that other methods of identification do not share.
For example, a voter may lose his photo identification,
may have his wallet stolen on the way to the polls, or may
not resemble the photo in the identification because he
recently grew a beard.  Burdens of that sort arising from
life's vagaries, however, are neither so serious nor so
frequent as to raise any question about the constitutional-
ity of SEA 483; the availability of the right to cast a provi-
sional ballot provides an adequate remedy for problems of
that character.

The burdens that are relevant to the issue before us are
those imposed on persons who are eligible to vote but do
not possess a current photo identification that complies
with the requirements of SEA 483.[16]  The fact that most
voters already possess a valid driver's license, or some
other form of acceptable identification, would not save the
statute under our reasoning in *Harper,* if the State re-

---

[15] For a survey of state practice, see Brief for Texas et al. as *Amici
Curiae* 10–14, and nn. 1–23.

[16] Ind. Code Ann. §3–5–2–40.5 (West 2006) requires that the docu-
ment satisfy the following:

"(1) The document shows the name of the individual to whom the
document was issued, and the name conforms to the name in the
individual's voter registration record.

"(2) The document shows a photograph of the individual to whom the
document was issued.

"(3) The document includes an expiration date, and the document:

"(A) is not expired; or

"(B) expired after the date of the most recent general election.

"(4) The document was issued by the United States or the state of
Indiana."

TX_00002523

USA_00020164

Cite as: 553 U. S. ____ (2008)          15

Opinion of STEVENS, J.

quired voters to pay a tax or a fee to obtain a new photo identification. But just as other States provide free voter registration cards, the photo identification cards issued by Indiana's BMV are also free. For most voters who need them, the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting.[17]

Both evidence in the record and facts of which we may take judicial notice, however, indicate that a somewhat heavier burden may be placed on a limited number of persons. They include elderly persons born out-of-state, who may have difficulty obtaining a birth certificate;[18] persons who because of economic or other personal limitations may find it difficult either to secure a copy of their birth certificate or to assemble the other required documentation to obtain a state-issued identification; homeless persons; and persons with a religious objection to being photographed. If we assume, as the evidence suggests,

---

[17] To obtain a photo identification card a person must present at least one "primary" document, which can be a birth certificate, certificate of naturalization, U. S. veterans photo identification, U. S. military photo identification, or a U. S. passport. Ind. Admin. Code, tit. 140, §7–4–3 (2008). Indiana, like most States, charges a fee for obtaining a copy of one's birth certificate. This fee varies by county and is currently between $3 and $12. See Indiana State Department of Health Web page, http://www.in.gov/isdh/bdcertifs/lhdfees/toc.htm. Some States charge substantially more. Affidavit of Robert Andrew Ford, App. 12.

[18] As petitioners note, Brief for Petitioners in No. 07–21, p. 17, n. 7, and the State's "Frequently Asked Questions" Web page states, it appears that elderly persons who can attest that they were never issued a birth certificate may present other forms of identification as their primary document to the Indiana BMV, including Medicaid/Medicare cards and Social Security benefits statements. http://www.in.gov/faqs.htm; see also Ind. Admin. Code, tit. 140, §7–4–3 ("The commissioner or the commissioner's designee may accept reasonable alternate documents to satisfy the requirements of this rule").

TX_00002524

USA_00020165