Mr/Mme President and distinguished Senators,

I am Claire Oxley Gluck, from Boerne, in Kendall County. Thank you for this opportunity to testify on an issue of fundamental importance to our democracy: the right to vote.

My husband, who is Jewish, has often quoted a poem of Martin Niemoller, which I would now like to paraphrase to illustrate what is at stake:

*In Texas, they first disenfranchised the homeless, and I didn't speak up because I wasn't homeless.*

*Then they disenfranchised the poor and elderly, and I didn't speak up because I wasn't poor or elderly.*

*Then they disenfranchised the students, and I didn't speak up because I wasn't a student.*

*And then they disenfranchised me, and there was no one left who would speak up.*

So, I must now speak up.

We in this room are, for the most part, people of privilege. We are educated, and so we know how to fight for our rights. We have homes, and so we have addresses. We have cars and so we have driver's licenses. We would not be affected personally by Senate Bill 362. But with our privilege comes responsibility.

It is our duty to ensure that the no Texan is prevented from voting for lack of a government-issued photo ID.

It is important to reiterate that we all want fair elections: they are a cornerstone of our democracy. One element of fairness in elections is the *prevention of fraud*. An equally important element is *universal suffrage*.

The problem with S.B. 362 is that it would *reduce fairness*, rather than promoting it. This bill would hinder universal suffrage without addressing the main source of voter fraud. According to academic and nonpartisan studies, voter fraud is most likely to occur in absentee ballots, which would not be affected by this bill. Those studies indicate that it is extremely rare that a person would go to a polling place and vote using someone else's voter registration card.

I urge you not to pass S.B. 362. It poses a sure risk of disenfranchising legitimate voters in order to prevent a hypothetical risk of fraud that has not been shown to occur.

Thank you.

TX_00002623
JA_005382

TX_00002623

USA_00020264

## THE CASE FOR VOTER I.D. IN THE STATE OF TEXAS

I have served as a poll worker in all capacities (poll watcher, clerk, alternate judge, presiding judge) since the November, 2000 General Election. I have seen it all.

In that first election, I worked as a clerk at a poll in the Liberty Eylau community in Bowie County. The day was less than two hours old when a man in a unique Western shirt presented his voter registration card. I found his name on the roll and cleared him to vote. He did. The perfect voter, or so we thought.

We had two lines to speed the process. Imagine my surprise when I saw this same person reenter the poll about an hour later, getting in the other line. The Presiding Judge also recognized him, stared him down and he left in a hurry.

Later, the Presiding Judge and I concluded that this man was going to use his real picture I.D. to cast his ballot the second time. As the law stands now, I had no right to question his voter registration. With a voter I.D. law in place, this potential vote fraud could have been avoided.

Opponents of such a law believe the elderly, minorities, the handicapped and disabled would be disenfranchised. I disagree. This proposal would cut vote fraud, allowing everyone's vote to count. For every fraudulent cast vote, a legitimate one is cancelled out.

In the twenty-first century, everybody needs a photo I.D. If you can not or do not drive, you can get an I.D. card from the Department of Public Safety at a reasonable cost. There is a blind woman who votes at my poll nearly every election, who uses such a document. As a legally blind person, myself, I won't leave home without one. The excuse that people do not or can not get a photo I.D. is a non-starter.

Please consider passing the Voter I.D. bill for the reasons I have stated. Thank you.

Hazel Cotton
3725 Rio Grande Ave.
Texarkana, TX    75503
903-793-2015

3-9-09

My name is Kathy Hicks. I have been studying election irregularities since 1992 and a pollwatcher since 1996. I have a sworn affadavit from a Mr Ira Stewart of Bowie County that was made available to me threw American International Investigations out of De Leon Texas. On Mr Ira Stewarts absentee by mail application that he did not request the name Ira Stewart is filled in and the signature signed. There was no registration number on application by mail nor one filled in when stamped for a ballot to be sent out by mail. I would like to read you his statement.

In this incident where two different names are used in the absentee by mail application process and the voter registration number is not furnished by voter it is sure to cause confusion. If a photo Id was required to vote by mail the Integrity of the election process would Strengthen and those not requesting nor wanting to vote by mail would not receive a ballot. My grandparents are 86 an 87 yr of age an absolutely support SB 362.

Kathy Hicks
Texarkana TX 75501

TX_00002625
JA_005384
TX_00002625
USA_00020266

State of Texas

County of Bowie

## AFFIDAVIT

My name is IRA STEWART. I am above the age of 18 years and am of sound mind. I have personal knowledge of the facts stated herein under oath as follows:

I live at 104 BROWN in Texarkana, Bowie County, Texas.

I RECEIVED A ABSENTEE BALLOT IN THA MAIL. I DON'T REMEMBER HOW A BALLOT WAS SANT TO ME, OR WHY.

WILLIE RAY CAME BY MY HOUSE AND HAD ME SIGN THA BLANK BALLOT. I DID NOT FILL IN THA BALLOT, BUT I DID SIGN IT. Ms RAY THEN TOOK THE BALLOT AND TOLD ME SHE WOULD TAKE CARE OF IT. MR. DON PRAIZNOR WROTE THIS STATEMENT AT MY REQUEST.

This completes my statement.

Signed _____

March 23, 1996

Subscribed and sworn to be the undersigned authority on this the 23 day of March, 1996.

_____
Notary Public, Bowie County, Texas

TX_00002626

USA_00020267

**APPLICATION FOR BALLOT BY MAIL**
*(SOLICITUD PARA RECIBIR UNA BOLETA POR CORREO)*

COMPLETE ALL INFORMATION. PLEASE PRINT OR TYPE.
*(COMPLETE TODA LA INFORMACION. FAVOR DE ESCRIBIR EN LETRA DE MOLDE O A MAQUINA.)*

NAME *(Nombre)*

ORA Stewart **776**

RESIDENCE ADDRESS AS REGISTERED TO VOTE
*(Dirección de residencia de inscripción como votante.)*

04 Brown

Texarkana TX. 75501

address apartment number / city / state / ZIP
*(con número de departamento) / (ciudad) / (estado) / (zona postal)*

MAIL BALLOT TO (if different from above):
*(Favor enviar mi boleta a la siguiente dirección (si es distinta a la anterior))*

Same

address apartment number / city / state / ZIP

County Election Precinct number
*(Número de Precinto del Condado)*

Bowie 2A

Voter Registration number
*(Número de Registro de Votante)*

Note to provide this information does not invalidate the application.
*(El dar esta información no invalidará la solicitud.)*

**TYPE & DATE OF ELECTION**
*(Tipo y Fecha de Elección)*

Primary

3-12-96

☑ Check here if you wish to receive ballots for both the main election and runoff elections, if applicable.

☐ *(Haga una "✓" aqui si quiere recibir una boleta para la elección principal y otro boleta para la elección decisiva, si hay una.)*

Demo

Party Preference (Primary Election only)
*(Preferencia de Partido–Solamente en Elecciones Primarias)*

TELEPHONE NUMBER (OPTIONAL)
*(NUMERO TELEFONICO (FACULTATIVO))*

Prescribed by Secretary of State. 9/93
ELEC 02391

**YOU MUST CHECK THE REASON YOU ARE APPLYING FOR AN EARLY BALLOT.** *(DEBERA INDICAR LA RAZON POR LA CUAL SOLICITA UNA BOLETA DE VOTACION ADELANTADA.)*

1. ✓ 65 years of age or older. (65 años de edad o más.)

2. _____ Confinement in jail. (Detención carcelaria.)

3. _____ Disability. (Incapacitación.)

4. _____ Expected absence from county on election day and during clerk's regular office hours for the remainder of the early voting period. Application must be submitted from outside county if submitted after early voting in person has begun. YOUR BALLOT MUST BE MAILED TO AN ADDRESS OUTSIDE THE COUNTY.

**"I CERTIFY THAT THE INFORMATION GIVEN IN THIS APPLICATION IS TRUE, AND I UNDERSTAND THAT GIVING FALSE INFORMATION IN THIS APPLICATION IS A CRIME."** *("YO CERTIFICO QUE LA INFORMACION QUE DOY EN ESTA SOLICITUD ES VERDADERA, Y COMPRENDO QUE ES UN CRIMEN DAR INFORMACION FALSA SOBRE ESTA SOLICITUD.")*

X Ora Stewart

SIGNATURE OF APPLICANT (FIRMA DEL SOLICITANTE)

Signature of Witness, if required
*(Firma del Testigo, si es requerido)*

Print Full Name of Witness
*(Escriba en Letra de Molde el Nombre Completo del Testigo)*

Residence Address of Witness or Title of Witness if an Election Official *(Dirección Residencial del Testigo)*

---

**VOTER REGISTRATION APPLICATION (SOLICITUD PARA REGISTRO DE VOTANTE)**

PLEASE COMPLETE ALL OF THE INFORMATION BELOW. PRINT IN INK OR TYPE
*(POR FAVOR COMPLETE TODA LA SIGUIENTE INFORMACION. ESCRIBA EN LETRA DE MOLDE CON TINTA O ESCRIBA A MAQUINA)*

For Official Use Only
PCT 2A Cert. Num. **80309** EDR 11/3/88

| Last Name *(Apellido)* | First Name (NOT HUSBAND'S) *(Nombre de Pila) (NO DEL ESPOSO)* | Middle Name (if any) *(Segundo Nombre) (si tiene)* | Maiden Name *(Apellido de Soltera)* |
|---|---|---|---|
| Stewart | Ora Ora | | |

| Sex *(Sexo)* | Date of Birth *(Fecha de Nacimiento)* month, day, year *(el mes, el día, el año)* | Place of Birth *(Lugar de Nacimiento)* city or county *(ciudad o condado)* | state or foreign country *(estado o país extranjero)* | County and Address of Former Residence *(Condado y dirección de su residencia previa)* |
|---|---|---|---|---|
| M | 10-11-10 | Texarkana | TX | For 104 Brown |

Permanent Residence Address: Street Address and Apartment Number, City, State, and ZIP. If none, describe location of residence. (Do not include P.O. Box or Rural Rt.) *(Dirección de Residencia Permanente: Calle y Número de Departamento, Ciudad, Estado, y Zona Postal; si no hay, describa la localidad de su residencia. (No incluya su caja postal o ruta rural))*

104 Brown TX TX 75501

Mailing Address, City, State and ZIP: If mail cannot be delivered to your permanent residence address *(Dirección Postal, Ciudad, Estado y Zona Postal)(si es imposible entregar corresponden-cia a su dirección permanente)*

104 Brown

Social Security Number *(Número de Seguro Social)*

Telephone Number (Optional) *(Número de Teléfono) (no obligatorio)*

Precinct Number (if known) *(Número de precinto (si lo sabe))*

2A

The applicant is a citizen of the United States and a resident of this county. Applicant has not been convicted of a felony or, if so, is eligible for registration under Sec. 13.001(a)(4) of the Texas Election Code. I understand that the giving of false information to procure the registration of a voter is a misdemeanor. *(El solicitante es ciudadano de los Estados Unidos y es residente de este condado. El solicitante no ha sido convicto de un crimen, o, si es criminal, está elegible para registrarse para votar bajo las condiciones de la Sección 13.001(a)(4) del Código de Elecciones de Texas. Yo entiendo que es un delito menor dar información falsa con motivo de procurar el registro de un votante.)*

X Ora Stewart

Signature of Applicant or Agent or Printed Name of Applicant if Signed by Witness *(Firma del Solicitante o Agente, o Nombre del Suplicante En Letra de Molde Si Fue Firmado Por Un Testigo)*

Court of Naturalization, If Applicable *(Corte de Naturalización, Si Aplicable)*

U.S. OCT 13 1988

NON-AGENT ONLY (SOLO PARA AGENTE): Application may be filled out by any applicant not able to make his/her mark. Witness must sign and print valid registration application and must complete an ...

FOR WITNESS (PARA TESTIGO)

OCT 14 1988

Printed name *(Nombre En Letra de Molde)*

Relationship *(Parentesco)*

Address *(Dirección)*

The disclosure of social security number is voluntary. It is solicited by authority of Sec. 13.122 and will be used only to maintain the accuracy of the registration records. *(No es obligatorio dar el número de seguro social. Se solicita bajo la autoridad de la Sec. 13.122 y se usará solamente para mantener la exactitud de los archivos.)*

USA_0002268

TX_00002627

**APPLICATION FOR BALLOT BY MAIL**
*(SOLICITUD PARA RECIBIR UNA BOLETA POR CORREO)*

COMPLETE ALL INFORMATION. PLEASE PRINT OR TYPE.
*(COMPLETE TODA LA INFORMACION. FAVOR DE ESCRIBIR EN LETRA DE MOLDE O A MAQUINA.)*

NAME *(Nombre)*
2274
IRA Stewart

**RESIDENCE ADDRESS AS REGISTERED TO VOTE**
*(Direccion de residencia de inscripción como votante)*
104 Brown St
Texarkana Tex 75501

**MAIL MY BALLOT TO** (If different from above.)
*(Sirvase enviar mi boleta a la siguiente direccion (si es distinta a la anterior).)*
Same

County Election Precinct number
*Numero de Precinto del Condado*
Bowie 9

Voter Registration number
*Numero de Registro de Votante*
80309

**TYPE & DATE OF ELECTION**
*(Tipo y Fecha de Eleccion)*
General
Nov. 5, 1996

☐ Check here if you wish to receive ballots for both the main election and runoff elections, if applicable.

☐ *(Haga un "/" aqui si quiere recibir una boleta para la elección principal y otra boleta para la elección decisiva, si hay una.)*

Party Preference (Primary Election only)
*(Preferencia de Partido- Solamente en Elecciones Primarias)*

TELEPHONE NUMBER (OPTIONAL)
*NUMERO TELEFONICO (FACULTATIVO)*

**YOU MUST CHECK THE REASON YOU ARE APPLYING FOR AN EARLY BALLOT.** *(DEBERA INDICAR LA RAZON POR LA CUAL SOLICITA UNA BOLETA DE VOTACION ADELANTADA.)*

1. ✓ 65 years of age or older.  *(65 años de edad o más.)*
2. ____ Confinement in jail.  *(Detención carcelaria.)*
3. ____ Disability. *(Incapacitación.)*
4. ____ Expected absence from county on election day...

**SIGNATURE OF APPLICANT (FIRMA DEL SOLICITANTE)**

Signature of Witness, if required

Print Full Name of Witness

USA_0002269
TX_00002628

### INTERVIEW STATEMENT
### DORIS HARENE MILES

**Date of Interview:  November 26, 1996**
**Interviewed by:     Joe B. Horn**

Ms. Doris Harene Miles was interviewed at her residence located at
1601 Allen Lane, Apartment #103, Texarkana, Texas.  This interview
was tape recorded.  (See Transcript attached hereto).  Ms. Miles made
the following statements and representations:

Ms. Miles stated that she did not request or fill out an Application
for Ballot by Mail and she doesn't know why she received an Absentee
Ballot by mail.  She stated that Willie Ray got her to fill out the
Absentee Ballot and Ms. Ray put the postage stamp on it and took the
Ballot with her.  She further stated that she went to the polls to
vote and they would not allow her to vote.  They told her she had
already voted by mail.  Ms. Miles said that she told Willie Ray not
to bother her at home.  She stated that she likes to go to the polls
and vote.

**END INTERVIEW**

BY: _Joe B. Horn_ A-5281
　　　Joe B. Horn

American International Investigations
Lic. No. A-5281
817-893-3815

1

TX_00002629

USA_00020270

Donald Giles                                         March 03, 2009
340 CR 1224
Texarkana ,Texas 75501
903-838-2668

I  Donald Giles of 340 county road 1224 Texarkana, Texas 75501 , would
like to make this statement. Being of sound mind and body and willingly
making these  statements on my own free will .I would like to testify that
Texarkana City Council member Willie Ray has been my next door neighbor
since the year of 2000 outside the city limits.

I have been observing her reside at 574 county road 1224 daily. Our
property lines join each other and have had the opportunity to visit with her
on several occasions through the years .

Ms. Willie Ray first moved out here in the year 2000  , but had a single wide
home at the time. In the year 2007 Posey mobile home service located in
Texarkana installed her  a brand new double wide manufactured home  from
Investment Housing .

As the Texas election code and City Residence code for officers state I
myself who is Ms. Ray's next door neighbor of nine years cannot even vote
in the city elections much less be qualified for a City Council member.  I am
writing this statement for the proper authorities to look into these matters to
see if  Ms. Willie Ray is qualified under the Tx. Residency Election and City
codes to maintain and hold her City Council position. I would like
clarification on these matters to see if  Ms. Willie Ray has committed
perjury for signing sworn campaign documents  and falsifying her voter
registration location.

Sincerely ,
Donald Giles

*Donald Giles*

Exhibit 45

TX_00002630
JA_005389

TX_00002630

USA_00020271

Brenda Giles     March 03, 2009
340 CR 1224
Texarkana ,Texas 75501
903-838-2668

I Brenda Giles of 340 county road 1224 Texarkana, Texas 75501 , would
like to make this statement. Being of sound mind and body and willingly
making these  statements on my own free will .I would like to testify that
Texarkana City Council member Willie Ray has been my next door neighbor
since the year of 2000 outside the city limits.

I have been observing her reside at 574 county road 1224 daily. Our
property lines join each other and I can see her home from mine.

Ms. Willie Ray first moved out here in the year 2000  , but had a single wide
home at the time. In the year 2007 Posey mobile home service located in
Texarkana installed her  a brand new double wide manufactured home  from
Investment Housing .

As the Texas election code and City Residence code for officers state I
myself who is Ms. Ray's next door neighbor of nine years cannot even vote
in the city elections much less be qualified for a City Council member.  I am
writing this statement for the proper authorities to look into these matters to
see if  Ms. Willie Ray is qualified under the Tx. Residency Election and City
codes to maintain and hold her City Council position. I would like
clarification on these matters to see if  Ms. Willie Ray has committed
perjury for signing sworn campaign documents  and falsifying her voter
registration location.

Sincerely ,
Brenda Giles

*Brenda Giles*

# LEAGUE OF WOMEN VOTERS®
## OF TEXAS

Testimony
SB 362
Committee of the Whole Senate
March 10, 2009

The League of Women Voters of Texas supports full voter participation and opposes efforts that may create barriers blocking this participation. We have real concerns that SB 362 does create needless barriers to citizen voter participation and does not address the issue of election fraud.

It has been suggested that, with the requirement of a photo ID at the polling place, election fraud will be eliminated; however, Attorney General Greg Abbott, after a $1.4 million investigation, found only 26 minor cases of election fraud, mostly involving mail-in ballots. In all of these cases, a photo ID would not have reduced fraud.

If we are to rely on a driver's license for a photo ID, we find that those who do not have a driver's license are more likely to be elderly, disabled, poor, a member of a minority community, or have an illness that makes it unsafe to drive. Also, there are many Texas women who have both a valid voter registration card and a Texas driver's license, but the names do not match because of marriage or divorce. These women will be inconvenienced when they attempt to vote, and it is entirely possible it could keep some away from the polls.

Currently the Texas OnLine Poll Worker Training can be completed in 60 minutes or less. Section 3E of this training, **"Qualify Voters,"** indicates that there are 10 possibilities, with instruction on how to handle each one. What would it take to get this training expanded to include the many possibilities to look for while determining whether the photo and accompanying documents meet the photo ID requirements? The goal must be to provide training so that reasonable people will come to the same conclusion when qualifying voters.

Obviously there are costs to Texas in this bill that are not addressed. Some costs include issuing photo ID's for those who don't have them, writing and providing training, and making sure that each citizen knows about any changes that have been thrust upon them. Only 1/3 of the counties in Texas have websites that can get information to the citizens in their county.

Voting is the most fundamental expression of citizenship. Breaking down barriers to citizen voter participation, from literacy tests to the poll tax, has been a constant battle for those of us who believe that all citizens should be able to exercise their right to vote. We support full voting participation by all eligible Americans, not restrictions.

Thank you for the opportunity to share our views.

TX_00002632

USA_00020273



## *League of United Latin American Citizens*

**Testimony of**
**Rosa Rosales**
**National President**
**League of United Latin American Citizens**

**Before the**
**Texas State Senate Committee of the Whole**

**SB 362:**
**The Minority & Elderly Disenfranchisement Bill**

**March 10, 2009**

On behalf of the League of United Latin American Citizens, I thank the Texas State Senate Committee of the Whole for providing me the opportunity to discuss our concerns and opposition to Texas Senate Bill 362. We firmly believe that this legislation would disenfranchise hundreds of thousands of Texas voters, many of them minority and elderly. We also believe that this legislation will have little impact in reducing alleged in-person voting fraud which the bill is supposedly designed to prevent. As made clear by a two-year $1.4 million investigation by Attorney General Greg Abbott; in-person voting fraud is virtually non-existent in Texas under existing voting regulations.

My name is Rosa Rosales, and I am the National President of the League of United Latin American Citizens. LULAC is the largest and oldest Latino organization in Texas and in the United States. My organization advances the economic condition, educational attainment, political influence, health and civil rights of Hispanic Americans through community-based programs operating at more than 700 LULAC councils nationwide including over 200 here in Texas. Among many other activities, LULAC has sought to help Latinos become citizens and register to vote. Since our founding in 1929, we have also had to bring the State of Texas to court repeatedly for violating the voting rights of Latino citizens within the state. In the vast majority of these cases we have prevailed, costing the state millions of dollars in legal fees that could have been spent on education or other beneficial programs.

**2806 Fredericksburg Rd, #3 • San Antonio, TX 78201**

TX_00002633

USA_00020274

## League of United Latin American Citizens

Let me state for the record, that if the Texas legislature passes and the Governor signs legislation that is similar in nature to SB 362, LULAC will take the State of Texas to court yet again, we will prevail, and it will cost the state several million more dollars in legal fees at a time when Texas taxpayers can least afford it.

### A Solution in Search of a Problem

Texas Election Code already requires that voters at the polls prove their identity by showing their voter registration cards, driver's licenses or another identity document from a list created by this body. SB 362 requires additional burdensome identification at the polling place in order to prevent what its supporters claim is "wide-spread" voter fraud. However, the only kind of fraud that these additional voting requirements could possibly prevent is in-person voting fraud where an individual voter misrepresents their identity at the polls.

There is no question that election misconduct exists, including improper purges of eligible voters, distributing false information about when and where to vote, stuffing of ballot boxes, tampering with registration forms, voter intimidation at the polls and clerical errors. But the incidence of actual in-person voter fraud at the polls that SB 362 would supposedly prevent is extraordinarily rare. In fact the Brennan Center for Justice reviewed the allegations of in-person voter fraud made during the Supreme Court case *Crawford v. Marion County Election Board* and found that only a "handful out of hundreds of millions of votes" represented potential cases of in-person voter fraud. Closer to home, Texas Attorney General Greg Abbott could not find a single case of in-person voting fraud after a two-year $1.4 million investigation into fraud came up with only a handful of cases, none of which would have been prevented by SB 362.

### Restrictive Voter ID Requirements: A 21st Century Poll Tax

Restrictive voter ID requirements are more likely to disenfranchise people of color, the elderly, individuals with disabilities, rural voters, young people, the homeless, low-income people, frequent movers, married women, and persons in large households.

TX_00002634

USA_00020275

## League of United Latin American Citizens

As many as 11 percent of United States citizens – more than 30 million individuals – do not have government-issued photo identification. Eighteen percent of seniors, 25% of African-Americans, and 16% of Latinos lack a current government-issued photo ID. Citizens earning less than $35,000 per year are more than twice as likely to lack current government-issued photo identification as those earning more than $35,000.

SB 362 would require voters to pay for a photo ID, if they don't already have one. Getting the required forms of ID, such as drivers' licenses and passports, costs money and time away from work the value of which can easily exceed $500. In some cases, it takes ID to get ID — for example, a certified birth certificate may be required to obtain government-issued photo identification, but government issued photo identification may be required to get a certified birth certificate. As a result, not all eligible voters in this state can afford to purchase a photo ID, and many who can may have difficulty coming up with the documents needed to obtain one.

### SB 362 is Costly and Ineffective
The costs of re-training Texas poll workers, educating the public, providing free government-issued voter identification, and defending SB 362 in court would cost Texas millions of dollars while failing to improve the integrity of the electoral process. The Texas Senate should think twice about spending millions of taxpayer dollars to defend voter ID requirements that are unnecessary in the first place.

### SB 362 Violates Federal Law
The excessive voter identification requirements contained within SB 362 would likely violate several federal laws including the Help America Vote Act, the 24th Amendment, and the Voting Rights Act. Under Sec. 5 of the Voting Rights Act, Texas has the burden to prove that any voter ID plan it seeks to institute is not discriminatory. Yet the disproportionate number of Latinos and African Americans who do not have photo IDs makes it clear that SB 362 would "lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise" in the state of Texas.

— 3 —

TX_00002635

USA_00020276

## League of United Latin American Citizens

The available empirical research shows that although in-person impersonation fraud is an occurrence of extraordinary rarity, it has been used to justify legislation like SB 362 that appear to offer little benefit and impose substantial cost. The existing law in Texas has been successful in preventing in-person impersonation fraud; further measures are not only unnecessary, but risk compromising the integrity of our elections to the extent that they shut out eligible citizens.

Given its disproportionate impact on low-income, elderly, disabled and minority communities, the potential for SB 362 to skew election outcomes in Texas is huge. In fact, it is my belief that skewing elections…not eliminating fraud…is really what this bill is all about. I am deeply troubled that some elected leaders in this state would deliberately seek to discourage eligible citizens from participating in our democracy just to gain a partisan edge for themselves at a time when Texas men and women are giving their lives to preserve democracy half a world away. We should be doing everything we can to get more Texas citizens to the polls, not less. I urge all of you to vote no on SB 362 and get back to work on the pressing issues impacting our state.

Thank you.

— 4 —

TX_00002636

USA_00020277



7800 Shoal Creek Blvd., Suite 171-E
Austin, TX 78757
voice/tdd: 512.454.4816
intake: 800.252.9108
fax: 512.323.0902
drynders@advocacyinc.org
www.advocacyinc.org

**Testimony on SB 362**
**Senate Committee of the Whole**
**March 10, 2009**

My name is Dustin Rynders. I am an attorney with Advocacy, Inc, the statewide Protection &
Advocacy (P&A) system for Texans with disabilities. I am testifying today on behalf of both
Advocacy, Inc (AI) and the Disability Policy Consortium (DPC). Under the Help America Vote
Act (HAVA), AI is charged with ensuring individuals with disabilities enjoy "full participation
in the electoral process."[1] Both AI and the DPC oppose SB 362, which burdens Texas voters
with unnecessary and onerous identification (ID) requirements, risks disenfranchising hundreds
of thousands of voters with disabilities, and wastes resources that should be directed at real
problems facing the state.

Supporters of more restrictive identification requirements cite the *potential* for fraud, especially
among noncitizens, as the reason why more onerous ID requirements are needed. The only type
of potential fraud addressed by requiring photo identification is voter impersonation. There have
been no prosecutions for voter impersonation in the entire state of Texas and no prosecutions for
noncitizens trying to vote.[2] AI's own voter hotline and the complaints received by the Secretary
of State's office after the November 2008 election reveal the real problems in elections surround
poorly handled voter registration, lack of access to absentee ballot applications, voter
intimidation, inaccessible polling places, poorly trained poll workers, and violations of the right
to receive assistance. Texas should address these problems, instead of adding barriers to the
ballot box. Texas already has strong criminal laws already on the books to address any fraud that
is identified.[3]

**At least 8% or 1,270,268 voting age Texans do not have the two most common types of preferred
photo ID being requested by this bill.[4]**

---

[1] The Help America Vote Act of 2002 (HAVA), 42 U.S.C. § 15301-15545.

[2] *See*, Justin Levitt, THE TRUTH ABOUT VOTER FRAUD, The Brennan Center for Justice at New York University
School of Law available at http://brennan.3cdn.net/e20e4210db075b482b_wcm6ib0hl.pdf (accessed on 03/09/2009)
(Providing an analysis of allegations of voter fraud from across the county).

[3] *See*, TEX ELEC. CODE § 64.012 (2009) (making it a Class A misdemeanor with a penalty of up to a year in jail and
a $4,000 fine, to illegal vote by impersonation, vote more than once in an election, vote when a person knows they
are not eligible, or mark another's ballot without permission).

[4] The implementation of HAVA required that all new voter registration applications include a driver's license or
state identification number of any applicant who had such an ID. Through a public information request, Advocacy,
Inc. obtained the Secretary of State's data showing that showing that 8%, or 290,772 people, who have registered to
vote in Texas since January 1, 2006, did not have a driver's license or state identification card. The U.S. Census
reports that there are 15,878,347 voting age Texans, which means an estimated 1,270,268 do not have a driver's
license or state identification card.

TX_00002637

USA_00020278

Texans with disabilities are among the least likely to have a form of state-issued photo ID, because many do not drive or need photo ID for banking or other activities which others assist them with. While SB 362 allows those without photo identification to present two "current" non-preferred forms of identification, such as a utility bill and official piece of government mail, this provision does little to expand access in practical terms. After all, many people with disabilities are also less likely to have numerous forms of non-preferred identification. For example, many people with disabilities, who live with relatives, in group homes, or in nursing homes, do not have utilities in their own name. Even people who have two or more documents, such as a Social Security check or Medicaid cards, may have more trouble understanding the new requirements, keeping their records together, and remembering to bring the documents to the polling place when they have never needed them in the past.

And, even if they bring their documents, poll workers will have trouble with the new requirements. Can someone's identity be "verified" if their last name has changed due to marriage, or if their appearance has changed due to changes in weight or hair? Also, what makes a utility bill or bank statement "current"? Already many election complaints relate to poll worker error, and SB 362 would increase the possibility for additional error in future elections.

National studies show that more restrictive ID standards negatively affect turnout, especially among the elderly and those with disabilities.[5] Practically, if SB 362 passes, voter turnout among those with disabilities will decrease and more individuals will show up without the appropriate ID, forcing them to cast provisional ballots that will not be counted unless they can quickly obtain an ID and make another trip to provide it to the county.

To pass constitutional standards, the new ID requirement includes offering free photo IDs which would cost at least $4 million over five years. The identification expense of this legislation will be ongoing, because free photo identification will always have to be available. Additionally, millions more would be required to offer adequate voter training in our large state with many separate media markets. To get an idea of the public education expenditure that is required when election laws are changed, consider that the spent over $3.5 million in federal HAVA funds each year in voter education to introduce HAVA reforms such as accessible voting machines to the public.[6] With such a drastic change in election law, which requires education before arriving at the poll, much more would likely be required to adequately insure voters receive accurate information. This does not include the resources that will be spent trying to pre-clear this change in policy with the Department of Justice, or defend the bill against legal challenges. These funds and your time would better be spent on the real issues affecting Texas such as the need for improvements and reforms in education, health care, and the State School system.

---

[5] *See*, Thomas O'Neil, Tim Vercellotti. BEST PRACTICES TO IMPROVE VOTER IDENTIFICATION REQUIREMENTS PURSUANT TO THE HELP AMERICA VOTE ACT OF 2002 (June 28, 2006), available at http://www.eac.gov/clearinghouse/docs/eagletons-draft-voter-id-report/attachment_download/file. (comparing turnout among states with varying voter identification requirements. *But see*, David Muhlhausen and Keri Weber Silkich , Heritage Foundation, NEW ANALYSIS SHOWS VOTER IDENTIFICATION LAWS DO NOT REDUCE TURNOUT (basing its conclusions on less reliable respondent information instead of turnout data.)
[6] *See*, Election Assistance Commission, Reports on State Expenditures of HAVA Funds , available at http://www.eac.gov/program-areas/research-resources-and-reports/reports-on-state-expenditures-of-hava-funds-1/reports-on-state-expenditures-of-hava-funds-texas (accessed on 03/09/09).

TX_00002638

USA_00020279

Furthermore, the "free" ID that SB 362 provides is not necessarily free or readily available to all who would need it. It can be very difficult to come up with the documents that are required to get a photo ID. For example, even if you were able to leave your home to get a free photo ID, you would be expected to have a birth certificate, which can still be costly and difficult to obtain (especially if you were born in another state or not born in a hospital). In addition to a birth certificate, a person must produce another two official documents with their name and date of birth. Applicants also have to find accessible transportation to go get the location where their "free ID" is provided. In some areas, this can be a long journey without the benefit of public transportation.

Thank you for your attention and for considering the needs of voters with disabilities. I am happy to answer any questions you may have.

**Dustin Rynders**
Policy Specialist/ Attorney
Advocacy, Inc.
drynders@advocacyinc.org
Voice/TDD: (512) 454-4816
Fax: (512) 323-0902

# Testimony of Marsha Correira

Mrs. Amanda Jones of Bastrop County never drove a car and never had a driver's license. Nor a passport. But Mrs. Jones was fortunate to have a large, loving family network who took her to DPS and got her a photo identification card. If SB362 had been in effect last year, and if Mrs. Jones had been without family to take care of her needs, she would not have been able to vote in the 2008 elections. Mrs. Jones was in poor health and died shortly after casting her ballot by mail, at 110 years old.

The purchase of the State of Texas-provided i.d. card, and the purchase of the supporting documents to obtain that i.d. card, amounts to a fee to vote -- essentially, a poll tax. The burden and expense of acquiring these documents would be onerous for some voters, especially for the poor, minorities, the very young and senior citizens.

The poll tax was prohibited by the 24th Amendment to the U.S. Constitution in 1964. When some states continued to assess the poll tax, the U.S. Supreme Court held that a state which requires the payment of a fee to vote "violates the Equal Protection Clause of the Fourteenth Amendment." *Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966)

The Court continued, "Once the franchise is granted to the electorate, lines which determine who may vote may not be drawn so as to cause invidious discrimination." 383 U.S. 668. If SB362 passes, a lot of senior citizens who've voted for decades, will be disenfranchised. That's "invidious discrimination."

In a later paragraph, the Court stated, "The interest of the State, when it comes to voting registration, is limited to the fixing of standards related to the applicant's qualifications as a voter." 383 U.S. 668

In an earlier case, *Reynolds v. Simms* 377 U.S. 533; 561-562, the Court said, "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimipaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."

The Court, in *Harper*, reiterated, "...to repeat, wealth or fee paying has, in our view, no relation to voting qualifications; the right to vote is too fundamental to be so burdened or conditioned."

It is obvious that SB362 is an illegal attempt at voter suppression, an infringement of the right to vote. Please vote against this unconstitutional bill.

TX_00002640
JA_005399

Exhibit 49

TX_00002640

USA_00020281

# Testimony
## Of
## Rachel A. Hernandez
## Senate Committee of the Whole
## March 10, 2009

Hello.  My name is Rachel A. Hernandez; I reside at 718 Northstar Drive, San Antonio.  I am a member of Laborer's Local Union 1095 and am employed by Granada Homes, Inc. for 2 years.

I speak today in opposition to any legislation which would require voters to present additional identification in order to vote.

As a Resident Service Coordinator for Granada Homes, my job is to assist the residents who are all senior citizens (62 and older) with various daily issues.  I have found that approximately 30 percent of the complex population (of 250 residents) does not have valid identification; meaning that their licenses or identification is expired.  Renewal fees and difficulty with obtaining transportation to state offices is just a couple of reasons behind the lack of current identification.

We live in a time where voting and voter registration are at an all time high. Legislation which would create additional obstacles for senior citizens' right to vote is not equitable and poses no positive outcome for those who already struggle to have their voices heard.



**Travis County Voter Registrar**
**Nelda Wells Spears**

**Contact: Tina Morton 854-9706**

## <u>*Record Breaking Numbers!*</u>

# *40,000 Voter Registration Applications Processed In Time For Early Voting*

OCTOBER 17, 2008 AUSTIN – More than 40,000 applications have been entered into the county's voter registration records in time for the start of early voting on Monday, October 20. (retrieve deadline photos) Not only have they been entered, the vast majority have been validated by the Secretary of State TEAM system.

"We want everyone to know all applications have been entered in time for early voting. Also, we want them to know there is no question about the validity of voter records," stated Voter Registrar Nelda Wells Spears. "Our data uploads every day to the state-wide voter registration system called TEAM. TEAM verifies each registrant matching name and date of birth with Texas Driver's license data or Social Security data," she said.

The majority of applications were received on October 6 and 7. On the last day to register for the November election, Monday October 6, hundreds of volunteers registered voters all day and up until the midnight deadline.

Travis County now has 603,289 validated registered voters. There are 7734 pending validation from the TEAM system. Once validated, the total number of registered voters in Travis County will be 611,024 registered voters – a record breaking number! Based on the official number used for voting age population, the 2000 census data, the registration rate is 98%.

Certificates are mailed daily (retrieve image) with a final mailing of 9000 scheduled for Saturday. "We know voters are excited about voting based on the number of contacts we received, both by telephone and email," said Nelda Wells Spears. She adds, "Don't forget, if you don't have your voter certificate, you can cast a ballot with your driver's license or other form of identification." (retrieve ID list)

Anxious voters who wish to confirm their registration status make check online at www.traviscountytax.org/showVoterSearch.do . If a voter cannot find his or her record on the Travis County database, they may check the Secretary of State's database of all counties at https://voterinfo.sos.state.tx.us/voterws/viw/faces/SearchSelectionVoter.jsp

Contact Travis County Voter Registration at 854-9473 or www.traviscountytax.org for voter registration information and assistance. Retrieve Fact Sheet.

-30-



TX_00002642
JA_005401

Exhibit 51



# Southwest Voter Registration Education Project

**TESTIMONY OF THE SOUTHWEST VOTER REGISTRATION
EDUCATION PROJECT (SVREP) ON SB 362**

**Committee of the Whole Senate
81st Legislature Regular Session
Austin, Texas**

**Tuesday, March 10, 2009**

Testimony Prepared and Presented by
Lydia Camarillo
SVREP Vice President

**SVREP**
**National Office**
206 Lombard Street, 2nd Floor
San Antonio, Texas 78226
800-404-VOTE
210-922-0225
www.svrep.org

TX_00002643

USA_00020284

# THE TESTIMONY OF THE
# SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT (SVREP)
# ON SB 362

## 81st Legislature Regular Session
## Committee of the Whole Senate
## Austin, Texas

## Tuesday, March 10, 2009

Testimony Prepared and Presented by
Lydia Camarillo
SVREP Vice President

Greetings, Senate President Pro Tem Robert Duncan and Senators of the 81st Legislative session. I am Lydia Camarillo, Vice President for Southwest Voter Registration Education Project (SVREP), the largest and oldest nonpartisan, nonprofit organization of its kind with a simple mission to increase the number of Latino and other ethic communities who are registered to vote and participate in America's democracy as full and equal partners. Founded in San Antonio, Texas, by the late William C. Velásquez, SVREP has registered over 2.3 million Latino voters throughout Texas, the southwest and since 2000 the southeast. SVREP has won over 80 voting rights lawsuits and has prepared over 100,000 leaders to organize their communities. In *Gonzalez vs. Arizona,* Mexican American Legal Defense and Educational Fund (MALDEF) challenges in federal court the voter registration and identification provisions of Arizona's Proposition 200, SVREP is one of the plaintiffs for the case.

I am here to advise you of SVREP's strong opposition to SB362. SVREP opposes this bill because it would have a negative impact on Latino voter registration and potentially violate federal election laws including the Voting Rights Act, the National Voting Registration Act, and the Help America Vote Act. This bill will only serve to depress voter registration of Latino, other ethic communities, and the poor. For these reasons, SVREP opposes SB362 and urges your opposition. Texas legislators must take affirmative steps to promote the participation of American citizen's voting and participating in America's democracy and should in its wisdom

TX_00002644
JA_005403

TX_00002644

USA_00020285

oppose legislation that only serves to confuse citizens, contradict federal law, create undo financial burden to poor white, Latino and African American citizens who register to vote and creates undo financial burden to Texas counties. More over counties are facing financial shortfalls; this will create further financial burden to counties and the taxpayers.

SB362 is a bill that creates redundancy and multiple identification requirements for voters. SVREP believes that Texas law provides for proof of identification and this bill will only create confusion; create a more burdensome voting experience for both the voter and the poll workers. Texas law requires that voter registration applicants must affirmatively mark their US citizenship under penalty of perjury and submit their affidavit application either in person or by a business reply postcard. Elec. Code Section 13.121. In our extensive experience in registering voters, over the last 35 years, it is rare for a voter to have their naturalization, passport or birth certificate on hand when a voter registers to vote. Many eligible United States citizens have trouble accessing these documents at all, including senior citizens that have lost or had their documents damaged over time. Any extra steps in the registration process will only serve to needlessly disenfranchise voters.

Once the voter is registered, the voter should be able to vote at the polls with either a voter registration card or a range of identifying documents. Elec. Code 63.0101. The range of identification is meant to be broad and includes a person's utility bill and/or a bank statement because different voters have access to different documents. A voter that has had his or her wallet stolen, a voter that does not drive, or newly married and not updated his or her driver's license should not have their right to vote infringed upon.

SVREP's analysis of SB362 clearly reveals that this bill would only contradict the spirit of author's intent which we believe is to ensure that voter's rights are protected, facilitate the voting process and increase the universe of eligible voters who are voting and participating in America's democracy. The intent of this bill could only be to decrease the number of American citizens who take the opportunity to vote in Texas elections and it would be harmful to Latino voters.

Senate President Pro Tem Duncan and Members of the Committee of the Whole Senate, we urge you to oppose SB362. This bill will only suppress Latino, African American, and poor and elderly white voter registration and contradict Federal election laws. Respectfully submitted and thank you.

TX_00002645
JA_005404

TX_00002645

USA_00020286

**Testimony of the Mexican American Legal Defense and Education Fund
(MALDEF) on SB 362
Senate Committee of the Whole, March 10, 2008**

Chairman Duncan and Members of the Senate, I am Luis Figueroa, a Staff Attorney of
the Mexican American Legal Defense and Educational Fund, a non-partisan legal
organization founded in Texas in 1968 to defend and protect Latino civil rights, including
voting rights.

Under current law, Texas voters may vote at the polls by providing a vote registration
certificate or another identifying document including a driver's license, utility bill, birth
certificate, passport, naturalization certificate, bank statement, government check or
official mail. Election Code 63.008, 63.0101. SB 362 eliminates the ability to be
accepted for voting by using a voter registration card and requires either picture
identification card in the form of a driver's license, passport, employee identification
card, a student identification card or concealed handgun permit or two forms of non-
photo identification from a more extensive list.

The best information we have about the impact of voter identification laws comes from
the litigation in which MALDEF represents eligible voters who were turned away from
the polls as well as voter organizations. These cases include *Gonzalez v. Arizona* in
which MALDEF attorneys served as lead counsel for the plaintiffs.

Importantly, at the trial of this case, Arizona could not produce any example of
impersonation voter fraud to justify its voter ID law. The lack of any evidence of even a
single incident of impersonation voter fraud is consistent with the U.S. Supreme Court's
observation in the Indiana voter ID case that "the record contains no evidence of any such
fraud actually occurring in Indiana at any time in its history." *Crawford v. Marion
County Election Board*, 553 U. S. ____ (2008) (slip op at 11). What we have learned
about voter ID laws is that they are unsupported by real incidents of impersonation voter
fraud and are thus a solution in search of a problem.

Although unsupported by any evidence of a problem with voter impersonation, Arizona's
voter ID law has resulted in thousands of voters being turned away from the polls.
During these elections, a voter whose name was on the rolls but who could not provide
the required ID was given a conditional provisional ballot and told to return within five
days with ID or the ballot would not be counted.

Across three federal elections – the 2006 Primary Election, the 2006 General Election,
and the 2008 Presidential Preference Election -- 4,194 voters cast conditional provisional
ballots that were never counted because the voter could not provide the required ID. In
Texas 42,010 provisional ballots were cast in the 2008 General Election, but only 9,444
were counted. The Secretary of State is currently compiling how many were cast for lack
of identification under the current Texas voter identification law.

Because of Arizona's voter ID law, many perfectly eligible voters whose names were on the voter rolls found themselves suddenly unable to vote because of one problem -- they did not have the specific combination of documents required by the voter ID law. These citizens- all ages, races, party affiliations and income levels- did not represent a small wrinkle in the system. Their circumstances were not unique and are by no means exceptions to the rule. They are just like you or me, people in our family and our neighbors who, simply by leading normal lives, found themselves unable to participate in the democratic process.

For example,

- Karen Lewsader, a police officer and registered Republican, was forced to cast a conditional provisional ballot because her driver's license listed a different address than the voter rolls. She had previously moved and changed her address with the Motor Vehicles Department, but the practice of the agency is to change the records and not replace the physical driver's license unless the driver pays an additional fee. When she was at the poll Ms. Lewsader went back to her car to try to find another form of identification with the correct name and address so she could cast a regular ballot, but the vehicle registration information she found was under her husband's name. When the demands of her job prevented her from returning to the county to show additional ID, her vote was not counted.

- Kristopherlee Russell, a registered Democrat, was forced to cast a provisional ballot because his driver's license and the voter rolls listed him under different addresses. His license had the address from his time as a student at the University of Arizona. After graduation he went to the DMV to update his information, but did not pay for a replacement license. When he went to vote the voter rolls and his voter registration card listed Mr. Russell's new address. The registration card alone was not sufficient proof of identification, even when used in tandem with his license. Mr. Russell did not have any other acceptable form of identification on him at the time and ultimately cast a provisional ballot. Minutes after leaving the polling place he found his Vehicle Registration and Proof of Insurance information in his car and attempted to present them at the same polling place as proper forms of identification, but the poll workers did not allow him to change ballots. Mr. Russell's vote did not count.

- Caleb LaPorte is a technician who works in chemical pumps and mines in Phoenix. Poll workers gave him a provisional ballot because the address on his license did not match the address on the rolls, even though he brought a letter from the voting bureau that stated it received his change of address and that he could use the letter as a form of identification. Mr. LaPorte was living with his girlfriend in her apartment at the time, and all the utility bills were in her name. When a poll worker explained that any form of mail would suffice as identification for voting, Mr. LaPorte returned with the only mail he received at that address- junk mail. Upon showing the envelope to the poll workers, they

concluded it was not acceptable and gave him a conditional provisional ballot. The poll workers told Mr. LaPorte that the only way he could "cure" his ballot was to get a new driver's license. Mr. LaPorte did not have the time to do this before the deadline and his ballot was not counted.

- Georgia Morrison-Flores was a newlywed when she registered to vote and she registered under her married name. However, when she went to vote her maiden name on her driver's license did not match her married name under which she was registered. Because the names did not match, even though her valid ID showed her photo, birth date and first name, Ms. Morrison-Flores was turned away from the poll by an election worker who had been her childhood neighbor. Ms. Morrison-Flores was unable to cast a ballot of any kind, despite her status as a qualified voter.

Maricopa County, which includes the City of Phoenix and just over half the state's voters, performed an analysis of the partisan impact of the Arizona voter ID law. The analysis showed that voter ID had little to no partisan impact. In Arizona's 2008 Presidential Preference Election, 47% of the voters whose ballots went uncounted were Republicans and 53% were Democrats.

In Texas, because the bill imposes additional identification requirements, the bill will inevitably prevent some voters from casting a ballot on Election Day. The voter identification provision of SB 362 will prevent voters, who already receive a free voter registration certificate in the mail, from using that certificate when they go to vote. By removing the ability to present a document that every voter receives free of cost, and forcing voters to secure other forms of identification, most of which cost money, the voter identification provision of HB 218 imposes a modern "poll tax" in Texas. Although SB 362 requires that the Department of Public Safety (DPS) provide free identification certificates to voters under certain limited circumstances, SB 362 does not address the fact that DPS itself requires costly identification documents as a prerequisite for obtaining a state identification certificate. For example, a 20 year-old born in Texas who has no drivers' license would still have to produce either a passport or birth certificate to obtain a state identification certificate from DPS.[1] Thus, if SB 362 becomes law, Texas voters who do not have a photo ID or birth certificate on hand must either apply and pay for a new birth certificate, spend significant time and money to obtain either a passport or other government identity documents, or try to find two copies of others documents, such as bank statements or utility bills, when they may or may not be the person in their household who pays the bills. All of this must be done prior to going to vote.

A number of voters only have their voter registration card to demonstrate their qualification to vote. These voters include: elderly voters who no longer drive, non-drivers who live in urban areas, and students who possess their school identification card

---

[1]www.txdps.state.tx.us/administration/driver_licensing_control/pages/identification requirements.htm

TX_00002648

USA_00020289

that may not include a picture. By and large, the impact of this bill's state issued identification requirement will fall on the physically disabled, the elderly, and the poor. While many people cannot understand why a person would not have a driver's license or a state issued identification card, it is not that unusual.

The bill before the committee today would force these voters to take additional steps to acquire an acceptable form of identification or exclude these voters from voting altogether. In addition, because the bill would create longer lines at the polls and force some voters to return home for more documentation and then present themselves for voting a second time, the bill will discourage voters from exercising the franchise.

The bill also creates the likelihood that election officials will refuse to accept voters whose photo identifications list an address or name that does not match their address or name on the voter rolls. For example, a voter who changes addresses before his driver's license expires will have an address on that license that differs from the address in the voter rolls. If you want a license that reflects your new address, you have to pay additional funds. This fee is not addressed by the voter ID bill presented in today's hearing. The bill before the Committee today, because it is unclear about what to do when a voter's photo identification lists a different name from that on the voter rolls, introduces the possibility that voters will be turned away, or offered only provisional ballots, when this situation arises at the polls.

The cost estimate of implementing this bill could be exceedingly expensive in establishing new regulations and procedures, training elections officials, recreating and distributing voter education materials, and lost revenue from providing free state identification cards. A better use of the state monies is to maintain an effective statewide voter registration database accessible by election officials throughout the state and to focus on training poll workers and educating the public on their voting rights and responsibilities.

The result of the legislation might decrease voter turnout, create undue problems for voters and possibly result in the elimination of many votes from minorities and the poor who may not currently have an ID card. Every time we place a restriction on the fundamental right to vote, we are undermining it. Requiring voters to present specific type of proof of identity before voting will not necessarily deter voter fraud.

It is disheartening to see such a restrictive governmental response to an unproven "problem" of potential voter fraud. A good government seeks to limit the barriers to voting – and doesn't require more bureaucracy than it needs to carry out its functions. The bill before the Committee today places more burdensome requirements on voters, particularly the disable, elderly and the poor and lacks justification in any sufficient evidence of impersonation fraud by voters.

For these reasons, MALDEF opposes this bill and if it passes, will actively monitor the potential legal issues raised by this legislation. MALDEF urges the Committee to reject the voter identification provision of SB 362.

TX_00002649

USA_00020290

Some of Most people
right to vote before.

Do you know what the definition of illegal is? It is banned, forbidden, prohibited, unlawful, not legal, wrong, unjust, and unconstitutional. Even though it is unconstitutional, voter fraud has been committed. One reason, there may not be too many documented cases of voter fraud is because exactly that; it was fraud, some people got away with it.

I am a 54 yr old 3rd generation American, I've had a social security card since about the age of 14. But you see, one of these 3 is fake, yet they all look the same. It was easy to acquire, + it is accepted as valid. That means there could be a traitor somewhere. Right now, it is almost as easy to sometimes get by without having the legal right to vote.

A lot of people voted this Presidential Election, people who had never voted before. Yes I know a lot of people voted for the reason of who we would be voting for (UP TOP) they didn't love AMERICA until now, What a SHAME!

I feel now is the time for the Voter I.D., to prepare for the future. If you don't do it now, you will be voting for it later. You all have a a duty to us citizens as law makers, so do your job and make this a deterrent to prepare + to make it nearly impossible for voter fraud. Anyone who votes against it is not doing everything within their power for this great state within this great country, I believe they do not have this state best interest in mind.

Please Vote for Voter I.D.
SB 362

On the National level, the government says the system is broken on certain aspects of it; Do not make the same mistake.

Exhibit 54        PASS  SB 362        Thank You!

TX_00002650
JA_005409

TX_00002650

USA_00020291

To the Distinguished Members of the Texas Senate:

My name is Dr, Rod Fluker, Sr., and I am Executive Director for the Texas Association of Black Personnel in Higher Education. Today, I bring you greetings from our State Board of Directors and from Dr. Felicia Scott, TABPHE State President.

The Texas Association of Black Personnel in Higher Education, or "TABPHE," as we call it, is an educational organization of faculty, staff and administrators that number over 500 statewide. TABPHE was founded 36 years ago to address pertinent issues that impact African Americans in particular, and people of color in general. SB 362, or the "Voter ID Bill," causes our members, and many others grave concerns about the negative impact that the passing of such useless and harmless legislation will have on the voting rights of millions of already disenfranchised Texans.

We believe that laws should be created to promote civil living and/or to right a wrong. The Voter ID Bill does neither. Promoting civil living would mean to make it easier for Texans to vote, not make it more difficult. Adding new barriers such as additional ID requirements is likened to Negro poll taxes and voting competency tests used during the days of "Jim Crow Laws." So, this legislation works against promoting civil living.

This useless and harmful legislation also fails to right any wrong. The fact is that there is no evidence of significant voter fraud, period. Of the millions of votes cast in Texas during the last 6 years, voter impersonation is practically non-existent, both in Texas and across our nation.

Therefore, the Texas Association of Black Personnel in Higher Education, asks that all State Senators, both Republican and Democrat, as good ambassadors of the people of Texas, vote AGAINST Senate Bill 362. Thank you.

**Dr. Rod C. Fluker, Sr.**
Executive Director
Texas Association of Black Personnel in Higher Education
1700 Broadmoor Drive
Austin, Texas 78723
Travis County
flukerconsulting@hotmail.com
512-294-3292 (cell)

TX_00002651
JA_005410

Exhibit 55

TX_00002651

USA_00020292