Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 1 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 46 of 226
Hearing - Volume 3                                    April 6, 2009

488

 1     much because if your voter registration certificate is

 2     the same name as you're listed on the voter registration

 3     rolls, that issue may not come up with poll workers

 4     today but the strict answer is you're supposed to file a

 5     name change with the local voter registration.

 6                 CHAIRMAN SMITH:  And clarify this, under

 7     current law, can I not present any of the nonphoto --

 8     documents on the nonphoto list, it doesn't have to be

 9     the voter registration card?

10                 MS. MCGEEHAN:  Right.

11                 CHAIRMAN SMITH:  So, I can present an

12     envelope from a governmental entity, that's all I can

13     present?

14                 MR. SEPEHRI:  Yeah, addressed to you, that's

15     right.

16                 CHAIRMAN SMITH:  And that's sufficient?

17                 MR. SEPEHRI:  That would be.

18                 CHAIRMAN SMITH:  You don't have to have a

19     voter's registration card, you don't have to have a

20     driver's license, just an envelope; is that right?

21                 MS. MCGEEHAN:  That's correct.

22                 CHAIRMAN SMITH:  Okay.  And in that

23     instance, if junior is on my voter registration card and

24     junior is not on the envelope I lay down, what does the

25     poll worker do, current law?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006273

TX_00031631

USA_00021155

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 2 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 47 of 226
Hearing - Volume 3                                    April 6, 2009

489

1           MS. MCGEEHAN:  Well, the law doesn't require

2      an exact match.  So, it doesn't say that you have to

3      present identification that shows your name exactly as

4      it appears on the list of registered voters.

5           CHAIRMAN SMITH:  Okay.  So, there is some

6      exercise of discretion on their part to the extent there

7      is a typo or letter missing or a junior absent, et

8      cetera; is that right?

9           MS. MCGEEHAN:  That's correct.

10          CHAIRMAN SMITH:  So, is it fair to say under

11     current law there's a gray area on when the name is

12     enough different not to count versus enough similar to

13     count?

14          MS. MCGEEHAN:  Right.  I mean, yes.  I mean,

15     the poll worker makes that ultimate decision whether to

16     accept the voter or not.  And so, if they don't feel

17     like the voter is who they are claiming to be --

18          CHAIRMAN SMITH:  And that discretion is

19     there and is really kind of difficult to eliminate

20     whether we're talking about current law or whether we're

21     talking about the Senate Bill, there's no way to

22     eliminate that discretion?

23          MR. SEPEHRI:  To entirely eliminate

24     discretion?

25          CHAIRMAN SMITH:  Yes.  You wouldn't want to



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031632

USA_00021156

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 48 of 226
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 3 of 114
Hearing - Volume 3                                        April 6, 2009

490

```
 1        do -- you wouldn't want to have a bright line test that
 2        is so bright that if there was a letter different
 3        between one item and a number, they couldn't -- you
 4        wouldn't want that kind of a bright line test, would
 5        you?
 6                  MS. MCGEEHAN:  I wouldn't think so, knowing
 7        the kind of clerical errors out you there, but that's
 8        policy.
 9                  CHAIRMAN SMITH:  So, to some extent, in
10        order to advance best public policy, we have no choice
11        but to provide the poll workers with some degree of
12        discretion in looking at a name and considering the
13        extent to which it doesn't match.
14                  MR. SEPEHRI:  We want to be careful about
15        intruding on your domain in terms of what's good or bad
16        policy but I guess -- I think we're both saying that
17        it's hard to see an entire elimination of discretion
18        under old or new law.
19                  CHAIRMAN SMITH:  Okay.  Any other questions?
20                  REPRESENTATIVE DR. ALLEN:  Can I give an
21        example of this one?  This is my voter registration.  It
22        says Alma A. Allen.  I've changed my name.  This is my
23        birth certificate.  I was born Toliver.  I can't go back
24        and change my birth certificate.  I was not born Allen.
25        So, I can't change this, and the two -- neither look
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031633

USA_00021157

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 4 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 49 of 226
Hearing - Volume 3                                    April 6, 2009

491

 1    alike.

 2             So, if you were to look at this and you

 3    would not give me -- you would not let me vote if you

 4    didn't know my name was Toliver.  I have been Allen for

 5    52 years.  I can't change it.

 6             MR. SEPEHRI:  You're right, you can't change

 7    that, Dr. Allen, but I think it's possible under the

 8    wording of the proposed bill that a voter could come in

 9    with the two nonphoto IDs, have one, which is your birth

10    certificate that has whatever information that has on it

11    and then another ID that corroborates in part with your

12    birth certificate so that the poll worker might have

13    discretion to accept you even though your birth

14    certificate --

15             REPRESENTATIVE DR. ALLEN:  That's three IDs

16    then, three forms, one, two --

17             MR. SEPEHRI:  I believe under Senator

18    Frazier's bill that's up for consideration tonight, you

19    don't have to have your voter registration and -- it's

20    one photo ID or two nonphoto IDs, one of which could be

21    a voter registration card.

22             REPRESENTATIVE DR. ALLEN:  Okay.  So, if I

23    did this, I would have to bring something else.

24             MR. SEPEHRI:  Well, if you're not using a

25    photo ID, I believe under the current bill, you'd have



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031634

USA_00021158

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 5 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 50 of 226
Hearing - Volume 3                                      April 6, 2009

492

1      to have something else anyway.  You'd have to have two

2      nonphoto IDs.

3                  REPRESENTATIVE DR. ALLEN:  I'd have to have,

4      what, a light bill or something with my name on it?  No

5      picture?

6                  MR. SEPEHRI:  Well, whatever the list here

7      says in Section --

8                  REPRESENTATIVE DR. ALLEN:  It's giving you

9      some examples.

10                 MR. SEPEHRI:  Right.  Right.  Yes.

11                 CHAIRMAN SMITH:  Both documents you have

12     would be sufficient.

13                 UNIDENTIFIED SPEAKER:  Right there.

14                 REPRESENTATIVE DR. ALLEN:  These?

15                 UNIDENTIFIED SPEAKER:  Yes.

16                 REPRESENTATIVE DR. ALLEN:  I'm going to pass

17     them down there so you can just kind of visualize what

18     I'm talking about.  Don't get my Social off of there.  I

19     have no money in the bank.

20                 UNIDENTIFIED SPEAKER:  For the record, Dr.

21     Allen, I would let you vote.

22                 REPRESENTATIVE DR. ALLEN:  You would let me

23     vote?

24                 UNIDENTIFIED SPEAKER:  Yes, ma'am.

25                 REPRESENTATIVE DR. ALLEN:  I love you, too.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031635

USA_00021159

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 6 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 51 of 226
Hearing - Volume 3                                              April 6, 2009

493

1          CHAIRMAN SMITH:  Any other questions,

2     members, of the Secretary of State?

3               Representative Anchia.

4          REPRESENTATIVE ANCHIA:  Thank you.

5          I wanted to -- I wanted to ask you,

6     Mr. Sepehri, how you interpret the Allen fact pattern as

7     presented in light of the language in the Frazier bill

8     that says if the voter's identity can be verified from

9     the documentation presented.  Okay?

10          MR. SEPEHRI:  Sure.

11          UNIDENTIFIED SPEAKER:  How do you interpret

12     that language vis-à-vis certain -- her situation?  You

13     said there might be a construct in which you would vote.

14     Articulate that for me based on this language.

15          MR. SEPEHRI:  Sure, Representative Anchia.

16     I think this language would allow for a poll worker to

17     exercise some discretion in terms of determining whether

18     that poll worker thinks the ID presented enables that

19     person -- the poll worker to verify the voter's

20     identity.

21          And I think under this language, you could

22     have a voter come in with a birth certificate that has a

23     maiden name, a born name, and another piece of nonphoto

24     ID that has a married name and the poll worker

25     theoretically could look at this and look at both pieces



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006278

TX_00031636

USA_00021160

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 7 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 52 of 226
Hearing - Volume 3                                    April 6, 2009

494

1      of ID and see that the first name is the same, birthday

2      or some other information is the same on both pieces of

3      ID and determine that the person is who they say they

4      are and is entitled to vote.

5              On the other hand, the poll worker could go

6      the other direction, too.

7              REPRESENTATIVE ANCHIA:  So, it is purely

8      subjective at that point?

9              MR. SEPEHRI:  You know, I -- I don't --

10             REPRESENTATIVE ANCHIA:  I mean, what

11     objective criteria do we have under the voter's identity

12     can be verified from the documentation?

13             MR. SEPEHRI:  I don't know that the bill

14     provides a lot of criteria.

15             REPRESENTATIVE ANCHIA:  Right.  Right.  So,

16     there's very little guidance in the bill, in fact, on

17     how to deal with a situation like that, right?

18             MR. SEPEHRI:  I think that's fair.

19             REPRESENTATIVE ANCHIA:  And the outcome

20     could be as likely one way or the other?

21             MR. SEPEHRI:  Well, I wouldn't want to

22     speculate on the likelihood of the outcome one way or

23     the other, other than just to say it's possible in

24     either direction, I think.

25             REPRESENTATIVE ANCHIA:  So, if one piece



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006279

TX_00031637

USA_00021161

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 8 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 53 of 226
Hearing - Volume 3                                    April 6, 2009

495

1     of -- if one piece of documentation provided does not

2     have the name on the poll -- in the poll book but does

3     the other name, you think that -- you interpret this

4     language as allowing the -- allowing the poll worker to

5     accept that person to vote a regular ballot?

6              MR. SEPEHRI:  I think this language could be

7     read that way.

8              REPRESENTATIVE ANCHIA:  Okay.  Okay.  So, in

9     fact, you don't need -- you don't need a name match then

10    is your interpretation of this language?

11             MR. SEPEHRI:  Well, I think if a voter came

12    in and said this is my birth certificate and had another

13    document that had a married name and -- I mean, you

14    could -- a poll worker could look at those two documents

15    and theoretically under this language come to the

16    conclusion that the person coming to vote is the person

17    on the list.

18             REPRESENTATIVE ANCHIA:  What if the two

19    documents presented had different addresses and

20    different names?

21             MR. SEPEHRI:  Well, I mean, I think you're

22    getting into a situation where just depending on each

23    particular instance, a poll worker may or may not be

24    able to look at the two pieces of ID and conclude in

25    their opinion that the person is the same person and in



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031638

USA_00021162

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 9 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 54 of 226
Hearing - Volume 3                                          April 6, 2009

                                                            496

1     that case may not accept the voter.

2              I mean, I think we're getting a bit

3     hypothetical.  I did say I think it could be either way.

4     I don't think that, you know, it would be safe to assume

5     that someone coming in with a birth certificate with a

6     maiden name and a document that has a different surname

7     is automatically going to be accepted under this

8     language.

9              REPRESENTATIVE ANCHIA:  Okay.  Good.  Thank

10    you.

11             CHAIRMAN SMITH:  Question real quick.

12             Do you see the language in the Senate bill

13    in terms of the way in which the poll worker exercises

14    that discretion as being different than current law?

15             MR. SEPEHRI:  Well, I think probably to the

16    extent there's discretion under the current law,

17    probably not but I think this would be a good question

18    for Ann to expound on.

19             MS. MCGEEHAN:  The language in Senate Bill

20    362 is different than what appears in current law.  It

21    definitely puts a burden on the poll worker to verify

22    the documentation and verify that is the same person.

23             CHAIRMAN SMITH:  There could be discretion

24    under current circumstances that could be considered by

25    some, I think, as subjective but this bill certainly



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031639

USA_00021163

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 10 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 55 of 226
Hearing - Volume 3                                                    April 6, 2009

497

1    has, you know, affirmative language that places a duty

2    on poll workers that is not in current law, I think.

3                 MS. MCGEEHAN:  Right.

4                 CHAIRMAN SMITH:  So, you see the current law

5    language in terms of the extent to which it impacts the

6    discretion of the poll worker as being more likely to

7    result in the voter being able to vote than the Senate

8    Bill?

9                 MR. SEPEHRI:  Well, I think current law just

10   doesn't allow for -- current law, you either show up

11   with certain documents that are listed or you don't, and

12   depending on what you show up with, there's a decision

13   tree.

14                CHAIRMAN SMITH:  But they still compare that

15   language with the voter rolls, right?

16                MR. SEPEHRI:  They do, and that's why I

17   believe there is some discretion that is subjective

18   inherent in the --

19                CHAIRMAN SMITH:  If I show up on the voter

20   rolls I'm Todd Smith and I lay a driver's license down

21   for Barbara Jones doesn't mean I get to vote just

22   because I laid a driver's license down, right?

23                MR. SEPEHRI:  That's correct.

24                CHAIRMAN SMITH:  They're still exercising

25   that same type of discretion and comparing what I laid



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031640

USA_00021164

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 11 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 36 of 226
Hearing - Volume 3                                      April 6, 2009

                                                              498
1       down to what's on the roll?

2                    MR. SEPEHRI:  That's correct.  And it

3       doesn't even need to be as extreme as that.  I mean, as

4       you pointed out earlier, it can be a closer situation

5       than that.  And there's probably still some discretion

6       inherent in current law.

7                    CHAIRMAN SMITH:  Yeah.  So, do you think

8       that there's something about the language in current law

9       that is more voter friendly in terms of the vote

10      counting than what we're finding in the Senate Bill and

11      how it's being laid out?

12                   MS. MCGEEHAN:  I think the current law just

13      says if a voter comes in and presents their voter

14      registration certificate, that's the end of the story

15      and they get to vote.

16                   If the voter comes in and presents one of

17      the other forms of ID that's spelled out in the statute,

18      they get to vote.

19                   Now, if the poll worker thinks that they've

20      obtained it fraudulently, they might challenge that

21      voter later on but for purposes of accepting that voter

22      for voting, they're not really given any discretion to

23      go outside that document.

24                   CHAIRMAN SMITH:  As long as what, the names

25      match and the address match?  I mean, isn't there some



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031641

USA_00021165

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 12 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 57 of 226
Hearing - Volume 3                                                April 6, 2009

                                                                    499
1        basic requirement that the identification --

2                    MS. MCGEEHAN:  The poll worker is supposed

3        to review the signature on a voter registration

4        certificate with the way they sign in on the poll list.

5        That's in current law.

6                    CHAIRMAN SMITH:  Okay.

7                    MS. MCGEEHAN:  But if they present one of

8        the other forms of identification, there is no signature

9        comparison.

10                   UNIDENTIFIED SPEAKER:  Doesn't the -- if

11       they present another form of photo ID, is there not a

12       requirement that the name be at least similar to the

13       name on the voter registration, on the rolls?

14                   MS. MCGEEHAN:  Let me just look at the law

15       real quick here.

16                   In 63.0101, it simply says:  The following

17       documentation is acceptable as proof of identification

18       under this chapter, and then it lists that a driver's

19       license issued by DPS, a form of identification

20       containing the person's photograph that establishes the

21       person's identity, so, that's one form of ID where the

22       judge would have to make a decision, a birth

23       certificate, United States citizenship papers issued to

24       the person, United States passport, official mail

25       addressed to the person by name from a governmental



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006284

TX_00031642

USA_00021166

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 13 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 58 of 226
Hearing - Volume 3                                    April 6, 2009

500

1      entity.

2                  UNIDENTIFIED SPEAKER:  In looking at whether

3      one of those documents establishes identity, there would

4      be some exercise of discretion --

5                  MR. SEPEHRI:  Discretion.

6                  UNIDENTIFIED SPEAKER:  -- in terms of the

7      extent to which it matches what's on the rolls?

8                  UNIDENTIFIED SPEAKER:  Wouldn't that be only

9      in the case of the photo?  When you're talking identity,

10     wouldn't that be only in the case of the driver's

11     license that there's an affirmative determination of

12     identity?

13                 MS. MCGEEHAN:  The only one that the statute

14     points out is a form of identification containing the

15     person's photograph other than the -- not the TDL but if

16     it's just like a Sam's card or something like that, that

17     has to -- that's where the judge has discretion.

18                 UNIDENTIFIED SPEAKER:  But otherwise, it's a

19     presentment standard, correct?

20                 MS. MCGEEHAN:  I believe so.

21                 UNIDENTIFIED SPEAKER:  But even with the

22     presentment standard, there still is an exercise of

23     discretion on the part of the poll worker to determine

24     whether there's a sufficient match with what's on the

25     voter rolls, right?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006285

TX_00031643

USA_00021167

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 14 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 59 of 226
Hearing - Volume 3                                          April 6, 2009

501

1          MR. SEPEHRI:  I think we're saying it may

2    not necessarily be spelled out there but that certainly

3    if you get somebody that brings in a utility bill or

4    something where the name only half looks like the name

5    on the rolls, then that could be a situation where you

6    might have an exercise -- I think that's what --

7          MS. MCGEEHAN:  I think the answer to your

8    question is not directly addressed by current law.

9          CHAIRMAN SMITH:  Otherwise, you could lay

10   down anybody else's utility bill and be able to vote and

11   that's clearly not the law, that I can bring in anybody

12   else's utility bill, lay it down and vote or, you know,

13   lay down the utility bill of someone close to my name

14   but not the same person.

15          We're not ever going to get away from some

16   degree of exercise of discretion on the poll worker.

17          MR. SEPEHRI:  I think that's correct.

18          CHAIRMAN SMITH:  Representative Bohac.  I'm

19   sorry.

20          REPRESENTATIVE BOHAC:  I just had a

21   couple -- a few very quick questions that hopefully will

22   lend themselves to short answers.

23          On the -- let's say a person has their

24   maiden name on their voter registration card, so,

25   therefore, they're on the poll books with their maiden



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006286

TX_00031644

USA_00021168

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 15 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 60 of 226
Hearing - Volume 3                                    April 6, 2009

502

1    name, and they come and they don't have their card, like

2    most of us do not carry our card with us, you just show

3    your driver's license, and it has your married name on

4    there, is that person going to -- is their vote going to

5    be counted provisionally or are they going to be able to

6    vote a regular ballot under current law?

7                MS. MCGEEHAN:  In that situation, they come

8    in and there's going to be a photo, I guess, on their

9    driver's license, to be honest, the Election Code

10   doesn't really address that.  I mean, it -- it assumes

11   that when a voter changes their name, they're going to

12   do an address update.  So, it may be -- I know we've got

13   Harris County in the room.  I'd be interested to hear

14   what they have to say to that but that -- that question

15   is not specifically addressed.

16               REPRESENTATIVE BOHAC:  In other words, good

17   question.

18               MS. MCGEEHAN:  Yeah.

19               REPRESENTATIVE BOHAC:  Okay.  That means

20   it's a good question with regard to the Senate Bill,

21   too, because we're not addressing it in the code today

22   and we may not be addressing it in the Senate Bill

23   specifically either.

24               With regard to the photo ID, right now

25   you're required to have your registration card.  My



**ESQUIRE**
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006287

TX_00031645

USA_00021169

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 16 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 61 of 226
Hearing - Volume 3                                    April 6, 2009

503

1    parents believe they still have to have that voter

2    registration card.  So, they scurry about their house

3    every election cycle.  And I say:  Mom, dad, you don't

4    have to have that card.  Just go show your driver's

5    license.

6              And it's refreshing for people to know that

7    you just have to show an ID but, really, you have to

8    show more than an ID.  When you go in and show your

9    driver's license, you do have to sign something, right?

10             MR. SEPEHRI:  You have to sign something

11   saying that you're not in possession of your voter

12   registration certificate at that time at the polls.

13             REPRESENTATIVE BOHAC:  Right.  So, there

14   really is an extra step that you have to go through,

15   correct?

16             MS. MCGEEHAN:  Correct.

17             MR. SEPEHRI:  Yeah.

18             REPRESENTATIVE BOHAC:  And now here's the

19   third question.  Well, you have already answered that

20   with the discretion elements of the first -- of the

21   first question that I asked you, so, I'll pass.

22             REPRESENTATIVE HELFIN:  One of the gentlemen

23   that testified earlier showed us his voter ID card and

24   it was the size of a driver's license, had his photo on

25   it.  So, why don't we go to that?  It will fit in your



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006288

TX_00031646

USA_00021170

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 17 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 62 of 226
Hearing - Volume 3                                                    April 6, 2009

504

 1    wallet, fit in your purse.  I don't have to go home and

 2    beg my wife to tell me where I put it last year and that

 3    type thing.  So, wouldn't that be an effective system to

 4    kind of take care of all of these issues?

 5             MS. MCGEEHAN:  It would -- it would

 6    definitely, I guess, answer a lot of these questions.

 7    It would -- of course, it wouldn't address everybody

 8    because not everybody has a -- has been issued a

 9    driver's license or personal ID number but I don't know

10    what the statistics on that are.  So, there might need

11    to be other avenues to obtain those photos to put on the

12    certificates.

13             REPRESENTATIVE HELFIN:  How many registered

14    voters do we have in the state?

15             MS. MCGEEHAN:  It's a little under 13

16    million right now.

17             REPRESENTATIVE HELFIN:  And how many drivers

18    do we have in the state?

19             MS. MCGEEHAN:  I think it might be 16

20    million.  That's a -- that's a guess.  That might be a

21    couple of years old.

22             REPRESENTATIVE HELFIN:  Okay.  Just a

23    thought.

24             CHAIRMAN SMITH:  Representative Bohac.

25             REPRESENTATIVE BOHAC:  Mr. Chairman, just in



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031647

USA_00021171

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 18 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 63 of 226
Hearing - Volume 3                                    April 6, 2009

505

1    terms of an editorial comment, I really believe that

2    when people find out -- I realize this is a very

3    contentious debate and there's people on both sides but

4    I think when people find out that under whatever bill or

5    whatever iteration of the bill we pass, if we pass one,

6    that you merely have to show an ID to vote, I think that

7    is going to be freeing to so many people because they

8    honestly think that they have to have and can only have

9    that voter registration card.

10          And because it is so big, you don't carry it

11   in your wallet, you don't carry it in your car.  You

12   typically bury it in a drawer and people really scurry

13   about their house the day of the election or the day

14   they go to vote, and they can't find it anywhere.

15          So, in some respects, I believe voter ID is

16   going to be freeing for many people, to know that all

17   you have to do, you only have to present one thing, just

18   go show a photo ID that's a driver's license or a state

19   issued photo ID and you don't have to keep track of the

20   voter registration card.

21          Thank you.

22          CHAIRMAN SMITH:  Members, do you all want to

23   continue to ask them questions or do you want to ask

24   them to stay late and ask them at the very end of the

25   night if we have additional questions?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031648

USA_00021172

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 19 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 64 of 226
Hearing - Volume 3                                        April 6, 2009

506

1           REPRESENTATIVE DR. ALLEN:  I want to ask one

2     more question along that same line.

3           CHAIRMAN SMITH:  Just do it now?  We need to

4     do it now and let the witnesses wait or let the

5     witnesses come up and then finish with them at the very

6     end.

7           REPRESENTATIVE DR. ALLEN:  Okay.  I want to

8     ask this question.  Since we were on the picture ID with

9     the driver's license -- with the voter card that you

10    asked, the driver's license, at the DPS place, they

11    register voters, don't they?  All right.

12          MS. MCGEEHAN:  Yes.

13          REPRESENTATIVE DR. ALLEN:  That's the one

14    that has the camera in it and everything.  So, why can't

15    we put -- we put everything else on here.  Why couldn't

16    we put registered voter on here?  We have on the back

17    allergic to drugs, emergency contact numbers,

18    endorsements, restrictions, roadside assistance.  Why

19    couldn't we put on the driver's license registered

20    voter?

21          Grandfather it so every year when your

22    driver's license come up for renewal, we'll register

23    those people.  Then the next year we'll register -- if

24    you're new register to vote, we'll go through the

25    process, and it's one piece of paper, one document, one



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031649

USA_00021173

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 20 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 65 of 226
Hearing - Volume 3                                          April 6, 2009

507

1    thing you pay for.

2              MS. MCGEEHAN:  I think that's a bill you're

3    hearing tomorrow.  I think we just did a fiscal vote on

4    that bill.

5              UNIDENTIFIED SPEAKER:  Are you talking about

6    the bill to put the picture on the voter registration

7    card?

8              MS. MCGEEHAN:  Right.

9              UNIDENTIFIED SPEAKER:  That's Representative

10   Hopson.

11             MS. MCGEEHAN:  But he also had a provision

12   in there that said at the voter's option, DPS would have

13   to annotate the driver's license to show that they are

14   registered to vote.  I believe that's in Representative

15   Hopson's bill.

16             I think that could be done.  It would

17   require some coordination so that DPS sends the data to

18   the Secretary of State.  We send it to the county.  The

19   county sends it back, and then we would have to send

20   some message back to DPS that that voter did, in fact,

21   get registered.

22             REPRESENTATIVE DR. ALLEN:  Can't you do that

23   now?

24             MS. MCGEEHAN:  It's all doable now.  The

25   only thing is DPS doesn't know if you're registered or



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031650

USA_00021174

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 21 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 66 of 226
Hearing - Volume 3                                    April 6, 2009

508

1    not.

2             So, DPS gives you the opportunity to get

3    registered when you update your driver's license, and

4    then they pass all that to the state -- Secretary of

5    State and to the counties but then DPS never gets word

6    back if that voter registration was actually accepted

7    and that person was issued a voter registration

8    certificate.

9             REPRESENTATIVE DR. ALLEN:  One more kick in

10   the mouth, that's all.

11            MR. SEPEHRI:  I'm looking through

12   Representative Hopson's bill right now and I'm not --

13   maybe, Ann, you can help --

14            CHAIRMAN SMITH:  We'll discuss it in great

15   detail tomorrow.  You all are going to be with us,

16   aren't you?

17            MR. SEPEHRI:  Sure.  We'll be happy to --

18            CHAIRMAN SMITH:  Who -- anybody?

19            UNIDENTIFIED SPEAKER:  Let's bring in the

20   witnesses.

21            CHAIRMAN SMITH:  Okay.  I may have a

22   question or two for you at the end of the night.

23            MS. MCGEEHAN:  We'll be happy to stay.

24            CHAIRMAN SMITH:  All right.  Thank you.

25            MR. SEPEHRI:  We'll be back there.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031651

USA_00021175

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 22 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 67 of 226
Hearing - Volume 3                                          April 6, 2009

509

1              CHAIRMAN SMITH:  George Hammerlein

2       representing the Harris County Tax Office, is neutral on

3       the bill.

4              Do we have to turn the lights off?

5              I actually have some.

6              UNIDENTIFIED SPEAKER:  Members, a few

7       minutes of their presentation is some sort of a video

8       presentation.  Recess for 10 minutes.

9              (Recess.)

10             CHAIRMAN SMITH:  Please proceed.  Are you

11      going to do the film first?

12             MR. HAMMERLEIN:  No, sir.  I was going to

13      introduce myself and kind of explain what you're about

14      to see.

15             CHAIRMAN SMITH:  State your name and who you

16      represent.

17             MR. HAMMERLEIN:  My name is George

18      Hammerlein.  I'm with the Harris County Tax Office.  I'm

19      the director of voter registration.

20             The committee asked us to come and see if --

21      they asked us if there were any cases of what we thought

22      perhaps was votes that were cast in a questionable

23      manner that a requirement for a photo ID may have

24      prevented those questionable votes.

25             And so, we looked through some histories and



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031652

USA_00021176

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 23 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 68 of 226
Hearing - Volume 3                                    April 6, 2009

510

1        some files and came up with a few cases.  So, the first

2        case is story from the local NBC affiliate in Houston,

3        Texas.  And with that, I'll just show it.

4                  UNIDENTIFIED SPEAKER:  Can you repeat what

5        the committee asked you to do?  Can you --

6                  MR. HAMMERLEIN:  They asked us are -- do you

7        know of any --

8                  UNIDENTIFIED SPEAKER:  Who is they?

9                  MR. HAMMERLEIN:  Chairman Smith.

10                 UNIDENTIFIED SPEAKER:  Okay.  Chairman Smith

11       asked you to come and present information on --

12                 MR. HAMMERLEIN:  He said do you know were

13       there any cases that you have in Harris County that you

14       think that votes that were cast that probably should

15       have not been cast that a requirement for a photo ID

16       would have prevented or would have caught those votes.

17                 UNIDENTIFIED SPEAKER:  Okay.  And had you

18       provided any of this to Representative Smith previously,

19       any of this information?

20                 MR. HAMMERLEIN:  No, sir.

21                 CHAIRMAN SMITH:  Okay.  Okay.  Thank you.

22                 MR. HAMMERLEIN:  All right.  If this works,

23       we'll all be happy.

24                 (Tape played as follows:

25                 UNIDENTIFIED SPEAKER:  Reporter Amy Davis



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031653

USA_00021177

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 24 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 69 of 226
Hearing - Volume 3                                          April 6, 2009

511

```
 1        shows you how thousands of those voters could sway this

 2        election, voters who aren't even alive.

 3                    MS. GUIDRY:  All in all, a great person, a

 4        great woman.

 5                    MS. DAVIS:  Alexis Guidry credits her

 6        mother --

 7                    MS. GUIDRY:  Just a wonderful person.

 8                    MS. DAVIS:  -- for who she is today.

 9                    MS. GUIDRY:  As far back as I could

10        remember, they've always voted in the election.

11                    UNIDENTIFIED SPEAKER:  Are you here to vote?

12                    MS. DAVIS:  And the March, 2008 primary was

13        no exception.  Voting records show Alexis' mom, Gloria

14        Guidry, cast her ballot in person near her South Houston

15        home.

16                    MS. GUIDRY:  Which is very shocking, a

17        little unsettling.

18                    MS. DAVIS:  Unsettling because Guidry died

19        of cancer ten months before that March primary.

20                    MS. GUIDRY:  She would be outraged that

21        somebody would fraudulently cast a vote in her name.

22                    MS. DAVIS:  And Trent Seibert of Texas

23        Watchdog says you should be, too.

24                    MR. SEIBERT:  This is really concerning.

25        It's worrisome.
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006296

TX_00031654

USA_00021178

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 25 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 70 of 226
Hearing - Volume 3                                          April 6, 2009

512

1              MS. DAVIS:  Seibert has a nonpartisan news

2      group on the web.  Texas Watchdog compared Harris County

3      voter registration rolls with the Social Security death

4      index and found more than 4,000 matches, registered

5      voters that it appears are already dead.

6              UNIDENTIFIED SPEAKER:  It looks like Linda

7      voted.

8              MS. DAVIS:  Like Henderson Hill's late wife,

9      Linda.

10             MR. HILL:  I would like to know who did it

11     myself.

12             MS. DAVIS:  We don't know who used Linda

13     Hill's or Gloria Guidry's IDs to vote but we do know if

14     their names had been purged from voter rolls after they

15     died, using their IDs would not have worked.

16             MR. SEIBERT:  This is a red flag.  No matter

17     where you are, it should set off alarm bells.  Someone

18     needs to take a look at this.

19             UNIDENTIFIED SPEAKER:  We just kind of work

20     with the systems that we're allowed to.

21             MS. DAVIS:  And the county system to pull

22     deceased voters from the roll seem painfully primitive.

23     Employees pull obituaries from the newspaper and sort

24     through probate records for names matching those on the

25     roll but George Hammerlein says while fraud is a concern



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006297

TX_00031655

USA_00021179

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 26 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 71 of 226
Hearing - Volume 3                                        April 6, 2009

513

1    for his office, disenfranchising voters is a bigger one.

2              MR. HAMMERLEIN:  We do all we can but, you

3    know, we'd rather err on the side of leaving people on

4    the roll instead of taking them off inadvertently.

5              MS. DAVIS:  But could that cautious, better

6    safe than sorry standard sway an election some say will

7    be a close one?  Take a look.  Texas Watchdog found more

8    than 4,400 registered voters who appear to be deceased.

9    In 2000, George Bush won the presidential election by a

10   mere 537 votes in Florida.

11             MR. HAMMERLEIN:  We've never had any

12   evidence there's a concerted attempt at fraud.

13             MS. DAVIS:  But there is evidence the state

14   agency in charge of ensuring only eligible voters can

15   vote is not.  The state auditor's office conducted this

16   audit of the voter registration system at the Secretary

17   of State's office last November.  Auditors identified

18   more than 49,000 registered voters statewide who may

19   have been ineligible to vote.  23,000 may have been

20   deceased.  Another 23,000 possible felons.  And they

21   found more than 2,300 duplicate records for voters.  The

22   auditor did not find any instances in which potentially

23   ineligible voters actually voted but they wrote:

24   Although the Secretary of State's office has processes

25   to identify many ineligible voters and remove them from



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031656

USA_00021180

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 27 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 72 of 226
Hearing - Volume 3                                        April 6, 2009

                                                              514

 1      the state's voter registration list, improvements can be

 2      made.

 3              So, almost a year after this audit, we

 4      wanted to know if the Secretary of State has made any

 5      improvements.  No one from that office would talk to us

 6      on camera but the State's director of elections says

 7      while her office identifies possible ineligible voters,

 8      only the county here is authorized to cancel those

 9      voters.

10              UNIDENTIFIED SPEAKER:  We'd rather err on

11      leaving someone on the roll than taking someone off.

12              MR. SEIBERT:  If there's something wrong

13      here, if there's something amiss, this is the worst

14      election to have that happen.

15              MS. DAVIS:  And Guidry agrees.

16              MS. GUIDRY:  I don't think it's a matter

17      that she would take lightly, so, yeah, I think that she

18      would definitely do all that she could just to make sure

19      things were on the up and up.

20              MS. DAVIS:  We sent the information we

21      showed you to the director of elections in Austin.  She

22      said her office refers any credible allegation of

23      election fraud to the Attorney General for investigation

24      and she said the cases we presented would be felony

25      violations.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031657

USA_00021181

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 28 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 73 of 226
Hearing - Volume 3                                          April 6, 2009

515

1              Amy Davis, KPRC, Local 2.

2              UNIDENTIFIED SPEAKER:  Well, for more

3       information on how Texas Watchdog found dead voters on

4       the roll --

5              (End of news footage.)

6              MR. HAMMERLEIN:  We think, once again,

7       the -- that those two cases -- we can go into their

8       particulars but both of them, we do think if the

9       individual -- in both cases someone did sign in in the

10      county clerk's poll book with those people's names.

11             We do think if there would have been a photo

12      ID requirement that those two individuals probably would

13      have not had the opportunity to sign in and cast those

14      votes.  So, if you have any questions on that.

15             The other thing that you have in your file

16      folder are a list of 23 deceased voters, and as you read

17      across the column, you'll see they have a recorded date

18      of death and then after that, you can see where they did

19      register votes after that recorded date of death.  And a

20      couple of them are pretty active and voted twice.

21             And then we do have another -- a third case

22      of Janet Sheldon, who is a volunteer deputy registrar

23      that ended up pleading guilty, where she just filled out

24      a bunch of cards.  We think it was a class assignment at

25      her college, and she kind of got behind the times and



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031658

USA_00021182

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 29 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 74 of 226
Hearing - Volume 3                                          April 6, 2009

516

1      then I think right before the assignment was due, she

2      filled out a bunch of cards.

3              And some of them were she took current

4      registered voters and were moving them to other places.

5      So, in that case, if someone did -- if she did redirect

6      those voter registration cards to an address that

7      accepted them, then those people could have gone and

8      voted for those individuals.

9              And she did plead guilty to 61 counts of

10     voter fraudulent application fraud.  And with that, I'll

11     be glad to take any questions.

12             REPRESENTATIVE DR. ALLEN:  These are in one

13     precinct or --

14             MR. HAMMERLEIN:  No, ma'am.  They were

15     spread out.

16             REPRESENTATIVE DR. ALLEN:  They were spread

17     out?

18             MR. HAMMERLEIN:  Yes, ma'am, they were

19     spread around the county.

20             CHAIRMAN SMITH:  George, you heard the

21     testimony, I assume, in front of the elections committee

22     during the -- relating to Harris County.  Were you

23     involved in that?

24             MR. HAMMERLEIN:  No, sir, I didn't actually

25     attend that but I'm familiar tangentially with a lot of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031659

USA_00021183

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 30 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 75 of 226
Hearing - Volume 3                                              April 6, 2009

517

1      it.

2                   UNIDENTIFIED SPEAKER:  Okay.  Well, what I

3      have here in my notes is taken from that interim study.

4      And just sort of address this.  You have to some extent

5      but I have here in my notes 381 detailed cases of voter

6      fraud.  You mentioned the deputy voter registrar

7      submitted 61 voter registration cards in her own

8      handwriting.

9                   I have an indication here, at least it's

10     from the interim committee report, about 24 dead people

11     voting, one that died in 1983 and is still voting 13

12     years later and then something about a state

13     representative who had a church member fill out 175

14     voter registration cards.

15                  MR. HAMMERLEIN:  Yes, sir.  Yeah, that

16     was --

17                  UNIDENTIFIED SPEAKER:  Address any and all

18     of that to help us understand what you're referring to.

19                  MR. HAMMERLEIN:  I had just come in -- the

20     Amadi case was already going on when I came in to the

21     voter registration department.

22                  That was just a case in Representative

23     Hochberg's Democratic primary where he drew an opponent

24     and that individual, from the best we could tell, just

25     took a church list of particular Nigerian names and just



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031660

USA_00021184

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 31 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 76 of 226
Hearing - Volume 3                                    April 6, 2009

518

```
 1        tried to pack them all into State Representative
 2        District 137.
 3               And I guess he -- he was working on some
 4        bizarre assumption that they were all going to vote for
 5        him.  He kind of had a flaw in his plan where he forgot
 6        to tell them about it evidently because when these
 7        people started getting their voter registrations moved,
 8        they started calling our office going:  What are you --
 9               UNIDENTIFIED SPEAKER:  Real quickly, can he
10        explain before he gets too far along what are Nigerian
11        names?  He said there were Nigerian names.
12               MR. HAMMERLEIN:  That was what we were told
13        by the people that came into our office when they
14        started calling us, saying:  Hey, why did you move my
15        voter registration?
16               We go:  Well, because you have filled out a
17        voter registration application.
18               And they said:  If you'd like to challenge
19        it, come on in.
20               They came on in, and we finally realized
21        after about 13 people came in to testify that they were
22        all of Nigerian descent and they all went to a Nigerian
23        church.  So, it came from the actual people that came
24        in.
25               UNIDENTIFIED SPEAKER:  So, I'm still not
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031661

USA_00021185

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 32 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 77 of 226
Hearing - Volume 3                                              April 6, 2009

519

1    clear on what the allegation is.  Are you saying there

2    was a gentleman that was a friend of Scott's that --

3                MR. HAMMERLEIN:  No.  No.  No.  He was an

4    opponent in the Democratic primary.  And so, what he was

5    doing was -- they were all saying he was of Nigerian

6    descent as well, I guess, you know, recent immigrants

7    but all legal to vote and he was -- his plan was -- I

8    guess he was, you know, not as smart as he thought he

9    was -- was to move them from all around Harris County

10   into 137 into just a few voting locations that he would

11   have access to the cards, that you still had to put the

12   mailing address -- he was changing their mailing

13   addresses and their current address.

14               But, anyway, people became aware of their

15   voter registrations being changed and contacted our

16   office and then came in and actually signed affidavits.

17               The gentleman answered his phone, and the

18   district attorney set up an appointment for him to come

19   down, and he has never been heard of since.

20               UNIDENTIFIED SPEAKER:  What about the 24

21   dead people?

22               MR. HAMMERLEIN:  Actually, upon examination

23   with the Social Security department, that was the list

24   that you have now of 23.  One of those individuals, the

25   Social Security department since realized they had



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031662

USA_00021186

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 33 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 78 of 226
Hearing - Volume 3                                          April 6, 2009

520

1    the -- they had cancelled the spouse inadvertently, then

2    the individual and since then -- both -- unfortunately,

3    both members of that couple are deceased but upon closer

4    examination of bouncing back with the Social Security

5    department, they realized they had inadvertently knocked

6    off one of the people, the wrong individual.

7                    UNIDENTIFIED SPEAKER:  So, are you saying --

8    is it your testimony here today that with the exception

9    of 1 or 2 of those 24, those are people that are

10   confirmed to have been voted for after they died in

11   Harris County?

12                   MR. HAMMERLEIN:  Yes, sir.

13                   UNIDENTIFIED SPEAKER:  The key, Mr.

14   Chairman, is when?  I mean, those were all pre HAVA

15   cases, those 23?

16                   MR. HAMMERLEIN:  Yes, sir.

17                   UNIDENTIFIED SPEAKER:  I believe they're all

18   pre HAVA, correct?

19                   MR. HAMMERLEIN:  Yes, sir.

20                   UNIDENTIFIED SPEAKER:  And what about HAVA

21   would make that case less likely today?

22                   MR. HAMMERLEIN:  The voter registration --

23   are we referring to the voter registration requirements

24   itself?

25                   UNIDENTIFIED SPEAKER:  No.  No.  I'm



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031663

USA_00021187

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 34 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 79 of 226
Hearing - Volume 3                                      April 6, 2009

521

1       referring to the regular updates, death rolls.

2                    MR. HAMMERLEIN:  Oh, within the team system?

3                    UNIDENTIFIED SPEAKER:  Yeah, within teams

4       and then the statewide audit.

5                    MR. HAMMERLEIN:  That would be -- that is a

6       better tool to have than before.

7                    UNIDENTIFIED SPEAKER:  All right.  So, none

8       of those cases, Mr. Chairman, were post HAVA.

9                    MR. HAMMERLEIN:  But --

10                   UNIDENTIFIED SPEAKER:  Even though -- and I

11      was going to ask you something else but even though they

12      may have been post HAVA doesn't mean they didn't happen,

13      right?

14                   MR. HAMMERLEIN:  Right.  I mean, you can get

15      with the county clerk and, you know, we -- I think --

16      all those case, I think we found obituaries, put them in

17      there, and the county clerk will certify that they have

18      voted after those obituaries' dates.

19                   UNIDENTIFIED SPEAKER:  So, there were 20

20      plus voters who you all investigated or someone

21      investigated and found tat they were voted for after

22      they had passed?

23                   MR. HAMMERLEIN:  Yes.

24                   UNIDENTIFIED SPEAKER:  Okay.  And the reason

25      that, in my mind, is significant is one of the



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006306

TX_00031664

USA_00021188

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 35 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 80 of 226
Hearing - Volume 3                                    April 6, 2009

522

1    overwhelming arguments against anything to change has

2    been that that has never -- that doesn't happen.

3              Let me ask you on the Channel 2 News Houston

4    story that ran in October, I guess, of '08, what was the

5    results of those two situations where it was alleged, I

6    guess, that people voted for those who have passed?

7              MR. HAMMERLEIN:  Well, in both cases, the

8    Harris County clerk confirmed that people did sign in in

9    the poll book and the amount -- the amount of signatures

10   in the poll book and the amount of votes cast was

11   identical.  So, each signature did result in a vote.

12             The first one, Ms. Guidry had the first -- I

13   think it's in your packet.  Her first two -- the first

14   two numbers on her Social Security were different on her

15   voter registration application that she had put in

16   versus her actual Social Security number.  And so, even

17   if we would have done a Social Security run, that

18   wouldn't have caught it.

19             And then Ms. Hill's name never appeared with

20   any unique identifiers that -- so, there would have

21   never been a unique enough name to have been knocked off

22   because she never a Social Security number.

23             UNIDENTIFIED SPEAKER:  But it was -- so that

24   it was established that there were two individuals that

25   did go cast votes in those two individuals' names?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031665

USA_00021189

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 36 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 81 of 226
Hearing - Volume 3                                            April 6, 2009

523

1          MR. HAMMERLEIN:  Right.  Evidently, those

2     families thought so and, I mean, you can call the Harris

3     County clerk and they will say people signed in in those

4     poll books for those people --

5          UNIDENTIFIED SPEAKER:  Did they sign in --

6          MR. HAMMERLEIN:  -- on election day.

7          UNIDENTIFIED SPEAKER:  Did they sign in

8     under the assumed or the deceased's name?

9          MR. HAMMERLEIN:  Ms. Guidry's name is kind

10    of easier to make out.  The Hill is just --

11         UNIDENTIFIED SPEAKER:  Kind of a blur?

12         UNIDENTIFIED SPEAKER:  Did you rule out

13    mistake there?  In that study, did you rule out mistake,

14    somebody signing in in the wrong spot?

15         MR. HAMMERLEIN:  Well, it could have been --

16    if it was signed in in the wrong spot, there were still

17    the same amount of votes.

18         UNIDENTIFIED SPEAKER:  But did you rule out

19    mistake by poll workers there or did the Channel 2

20    investigation rule out mistake by poll workers there?

21         MR. HAMMERLEIN:  No.  I mean, I guess, you

22    know --

23         UNIDENTIFIED SPEAKER:  Do you know if they

24    ruled out mistake by poll workers there?

25         UNIDENTIFIED SPEAKER:  I think the fair



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031666

USA_00021190

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 37 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 82 of 226
Hearing - Volume 3                                        April 6, 2009

                                                            524

1      question is -- and I think he's asking a fair question

2      here but it kind of what I was saying earlier --

3               UNIDENTIFIED SPEAKER:  I'd like an answer to

4      it.  I'll let him finish.

5               UNIDENTIFIED SPEAKER:  But I think that

6      that's a fair question.  I'm glad you asked it because

7      it's the issue I tried to raise earlier with the

8      gentleman from NYU, which is if in this instance the

9      assumption is a mistake may have been made by someone,

10     which it certainly could have been, I don't feel that's

11     been the assumption we've used throughout the night when

12     we've talked to say the State of Georgia or anyone else

13     about provisional ballots and the number who weren't

14     counted and all.

15              In that instance -- in those instances, I

16     felt the assumption has been that those people were

17     wrongly not counted, whereas, is in instance, if we're

18     going to assume that there was a mistake made, wouldn't

19     that, in all fairness, need to be equalized across --

20              MR. HAMMERLEIN:  You're saying the benefit

21     of doubt should be cast the same?

22              UNIDENTIFIED SPEAKER:  The same across the

23     board because we don't know the answer on really any of

24     these questions except for some.  I guess in some you

25     could prove there was some degree of certainty or at



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031667

USA_00021191

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 38 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 83 of 226
Hearing - Volume 3                                        April 6, 2009

525

1    least within a court of law.

2              What -- what makes Harris County unique that

3    you all would have documented cases of people who have

4    deceased voting?  I mean, do we have these cases -- and

5    you're only here from Harris County.

6              MR. HAMMERLEIN:  Right.

7              UNIDENTIFIED SPEAKER:  Do you know of these

8    in other counties and why, if you don't, not that you

9    should, would it be here?

10             MR. HAMMERLEIN:  No.  I think it's just

11   mainly a numbers game.  If you have X amount, you know,

12   per whatever number are going to try to short circuit

13   the system, when you start to get up to a couple of

14   million people on the roll, then your odds are greater.

15             UNIDENTIFIED SPEAKER:  What did -- what was

16   the family's speculation as to how or why or -- someone

17   would have known to vote for these individuals, assuming

18   that's what did occur intentionally?  Any thoughts?

19             MR. HAMMERLEIN:  Yeah.  Our first -- if you

20   think you're kind of shocked, we were shocked.  They

21   came and interviewed us on a totally different process,

22   had to do with Acorn.

23             And when I say actually in the video that

24   there was no cases of fraud established, I was actually

25   talking about the Acorn because we had actually had a



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006310

TX_00031668

USA_00021192

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 39 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 84 of 226
Hearing - Volume 3                                        April 6, 2009

526

1    pretty good agreement with them and were working with

2    them and their attorney fairly well to ensure that

3    things went in an orderly fashion.

4              So, it's always fascinating to see how

5    things get clipped together.  When they aired this, we

6    were stunned because it had nothing to do with Acorn.

7    It had to do with these individuals.

8              So, the first time we ever became aware of

9    it was when the show aired, we did research, contacted

10   the two families and -- you know, to ask them for

11   guidance on documentation, and that's when we kind of

12   found out that their numbers -- one of them had no

13   Social Security and the other one, the number was

14   different.

15             UNIDENTIFIED SPEAKER:  So, then what you're

16   telling me is that, obviously, this was post HAVA and

17   even with HAVA, the difficulty that may have created

18   these opportunities wouldn't have been corrected through

19   HAVA?

20             MR. HAMMERLEIN:  I think it's a challenge

21   any time you have massive databases, it's just -- it's

22   not a perfect system and, you know, amazingly, I think

23   when there's a financial incentive like with Chase Bank,

24   they can get ATM card guys -- they've never made a

25   mistake on my account, right, but when it comes with



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031669

USA_00021193

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 40 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 85 of 226
Hearing - Volume 3                                           April 6, 2009

527

1    people -- multiple people punching in identity codes,

2    you know, the driver's license, Social Security bureau

3    and then our individuals as well getting good matches,

4    you know, if one person in the chain transposes a

5    number, then --

6              UNIDENTIFIED SPEAKER:  Well, I'll leave you

7    with this, and I do think it's extremely fair and

8    appropriate that as long as it's applied evenly, there

9    may have been innocent errors on both of these instances

10   but, again, if we're going to allow that as a

11   possibility, I think that possibility has to be allowed

12   in the case of other provisional ballots -- not other

13   but in provisional ballots and otherwise.  Wouldn't you

14   agree with that?

15             MR. HAMMERLEIN:  Yes.

16             UNIDENTIFIED SPEAKER:  Thank you.

17             CHAIRMAN SMITH:  Representative Anchia.

18             REPRESENTATIVE ANCHIA:  Thank you.

19             Mr. Hammerlein, I'm always -- I always enjoy

20   the testimony that comes from your office because it

21   usually starts with a big splash and big allegations,

22   then you look into it and, well, maybe it wasn't all it

23   was cracked up to be.

24             And we saw that with the 13 -- 315 cases of

25   ironclad noncitizen voting that we heard about, when we



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006312

TX_00031670

USA_00021194

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 41 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 36 of 226
Hearing - Volume 3                                      April 6, 2009

528

 1    looked into it, it wasn't 315.  It wasn't even 22.  Many

 2    of the people who were alleged to vote were actually

 3    U.S. citizens.

 4                And I know you didn't testified to that.

 5    That was, I guess, Mr. Bettencourt who testified to

 6    that.

 7                And then -- and then, you know, we look at

 8    these cases, first the pre HAVA cases of 23 -- or was

 9    it -- how many?

10                MR. HAMMERLEIN:  Yes, sir, 23.

11                REPRESENTATIVE ANCHIA:  23.  And what number

12    was testified to in the Senate by Mr. Johnson?  Do you

13    recall?  Is this a different number?

14                MR. HAMMERLEIN:  I believe he --

15                REPRESENTATIVE ANCHIA:  I guess it was 24 in

16    the Senate.

17                MR. HAMMERLEIN:  Right.

18                REPRESENTATIVE ANCHIA:  And you told me then

19    you -- you cross referenced that with Social Security

20    and it dropped down to 23.

21                MR. HAMMERLEIN:  Continued correspondence,

22    they admitted they had deleted -- or tagged the wrong

23    person, the wrong spouse.

24                REPRESENTATIVE ANCHIA:  There was a clerical

25    error.  So, we're down to 23.  And then we requested



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006313

TX_00031671

USA_00021195

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 42 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 87 of 226
Hearing - Volume 3                                          April 6, 2009

529

1       from your office the list of the 23 and noticed that

2       they were all pre HAVA.

3                   Let's talk really quickly about how you deal

4       with death information in your office and how post HAVA

5       the likelihood of dead voters is substantially

6       diminished.

7                   So, give me the process that you follow --

8       the sources of information that you get and how you

9       remove dead people from the voter rolls in Harris

10      County.

11                  MR. HAMMERLEIN:  All right.  The --

12                  REPRESENTATIVE ANCHIA:  Post HAVA.

13                  MR. HAMMERLEIN:  Yes, sir.  The first

14      overriding one will be updates from the Secretary of

15      State, and it's my understanding that they interact with

16      the Social Security death index multiple times a year.

17                  Then we have the -- the --

18                  REPRESENTATIVE ANCHIA:  And how often do you

19      get those reports from the Secretary of State?

20                  MR. HAMMERLEIN:  Well, it's done kind of on

21      a continual basis.

22                  REPRESENTATIVE ANCHIA:  Weekly?

23                  MR. HAMMERLEIN:  Yes, sir.  I mean, our

24      systems just kind of magically update from them every

25      night.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031672

USA_00021196

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 43 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 88 of 226
Hearing - Volume 3                                    April 6, 2009

530

1          REPRESENTATIVE ANCHIA:  But it's weekly they
2     send you the updates from the Secretary of State?
3               MR. HAMMERLEIN:  Yes, sir.
4               REPRESENTATIVE ANCHIA:  Okay.  Go ahead.
5               MR. HAMMERLEIN:  And then there is the
6     death -- death abstracts from courts, court probates,
7     documents that come from the Harris County office and
8     then the --
9               REPRESENTATIVE ANCHIA:  And how regularly do
10    those come?  Those come monthly, don't they?
11              MR. HAMMERLEIN:  I mean, I think we get
12    those almost weekly.  We get batches of them, yes, sir.
13              REPRESENTATIVE ANCHIA:  At least monthly.
14    If you get them weekly, that's good.  Okay.
15              MR. HAMMERLEIN:  And then we do the
16    laborious thing of -- there's a process I inherited and
17    it just kept going because it seems to work somewhat.
18    We go through the obituaries.
19              REPRESENTATIVE ANCHIA:  And thank you for
20    doing that, by the way.  That's good -- that's good
21    detective work.
22              MR. HAMMERLEIN:  And they -- the people look
23    and try to find a positive match as much as possible.
24    And then we send a dear family letter.  And I think they
25    have 60 days to respond and if they don't, then we'll



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006315

TX_00031673

USA_00021197

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 44 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 89 of 226
Hearing - Volume 3                                              April 6, 2009

531

 1      mark them in the deceased column.

 2                  REPRESENTATIVE ANCHIA:  And then you remove

 3      them from the rolls, right?

 4                  MR. HAMMERLEIN:  Yes, sir.

 5                  REPRESENTATIVE ANCHIA:  Okay.  So, the

 6      updates happen pretty regularly post HAVA.  And then

 7      overlaid on top of that is the state auditor who looks

 8      at the statewide database, right?  I mean, at another

 9      level above the county, you have a state auditor who

10      comes in for HAVA and audits the statewide database for

11      possibly deceased voters; is that not right?

12                  MR. HAMMERLEIN:  I'm not familiar with the

13      processes above the -- outside the Secretary of State

14      but I'll take your word for it.

15                  REPRESENTATIVE ANCHIA:  All right.  Well, it

16      was in the video that you presented.

17                  MR. HAMMERLEIN:  I know they did a -- I know

18      they did an analysis of all the team counties is what

19      the Secretary of State -- I mean, the AG's office and

20      the auditor worked out.

21                  REPRESENTATIVE ANCHIA:  The auditor and the

22      AG.  Right.  Right.  Right.  And do you recall in your

23      video how many possibly deceased voters were on the

24      list?

25                  MR. HAMMERLEIN:  I think they said 44,000,



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031674

USA_00021198

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 45 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 90 of 226
Hearing - Volume 3                                         April 6, 2009

532

1    something like that.  That's -- I think upon closer

2    examination, you'll find their analysis didn't include

3    like Harris County, Bexar County.  I don't think it

4    included Travis.

5              REPRESENTATIVE ANCHIA:  I think it included

6    all of the those.  We can call up the Secretary of

7    State.

8              MR. HAMMERLEIN:  Right.  My understanding,

9    it only included team counties.  We're called off line

10   counties, which is --

11             REPRESENTATIVE ANCHIA:  Okay.  I'm looking

12   at the Secretary of State's office nodding their head

13   that everybody was included.

14             MR. HAMMERLEIN:  That was every county?

15             REPRESENTATIVE ANCHIA:  It was statewide.

16   So, let's just assume everybody was in.  Do you recall

17   how many potential dead voters -- and again it was in

18   the video that you presented -- were removed from the

19   list?

20             MR. HAMMERLEIN:  No.  I mean, they -- I just

21   know the possible 4400 but, I mean, they would still

22   have to be explored.

23             REPRESENTATIVE ANCHIA:  It was 49,000 total.

24   Some of those were possible felons, right?

25             MR. HAMMERLEIN:  Right.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031675

USA_00021199

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 46 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 91 of 226
Hearing - Volume 3                                            April 6, 2009

533

1           REPRESENTATIVE ANCHIA:  And then you had

2      possible dead voters that were removed.  That was

3      something around -- I'll just split up since it was

4      almost 50,000, 25 and 25.

5           MR. HAMMERLEIN:  Right.

6           REPRESENTATIVE ANCHIA:  And then do you

7      recall how many of those 49,000 had voted?

8           MR. HAMMERLEIN:  I think they said they

9      didn't find any.

10          REPRESENTATIVE ANCHIA:  Zero.

11          MR. HAMMERLEIN:  Right.

12          REPRESENTATIVE ANCHIA:  All right.  So,

13     let's -- we talked about the 23 dead voters all pre HAVA

14     and that their system is in place to deal with that.

15          Let's talk really quickly about the -- the

16     Sheldon case and -- and we could also talk about

17     Dashwood case.  I know Mr. Johnson testified to that in

18     the Senate.

19          MR. HAMMERLEIN:  Yes.

20          REPRESENTATIVE ANCHIA:  Both of those relate

21     to voter registration fraud, correct?

22          MR. HAMMERLEIN:  Yes, sir.

23          REPRESENTATIVE ANCHIA:  And neither of those

24     relate to impersonation at the polls, correct?

25          MR. HAMMERLEIN:  No.  The -- I guess the



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031676

USA_00021200

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 47 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 92 of 226
Hearing - Volume 3                                              April 6, 2009

534

1    reason I thought they were significant is if it wouldn't

2    have been caught by -- because they were all -- they

3    came all together in the mail or one operator gets a

4    stack and they just see the same handwriting and same

5    signature over and over, that brought their attention to

6    it.

7              So, if it wouldn't have been a case like

8    that, they would have been processed and would have been

9    distributed and those cards would have been gone out

10   into the community and could have been acted upon.

11             REPRESENTATIVE ANCHIA:  And are you aware of

12   any correlation between voter registration fraud and in

13   person voter impersonation at the polls, any credible

14   studies?

15             MR. HAMMERLEIN:  No, sir, because, I mean,

16   there are no tools to do that that I'm aware of.

17             REPRESENTATIVE ANCHIA:  Well, there are

18   studies out there that suggest there's no correlation

19   but I was wondering if you were aware of that?

20             MR. HAMMERLEIN:  No, sir.

21             REPRESENTATIVE ANCHIA:  So, that is evidence

22   of voter registration fraud but not evidence of voter

23   impersonation at the polls, correct?

24             MR. HAMMERLEIN:  Yes, sir.

25             REPRESENTATIVE ANCHIA:  Okay.  And then the



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006319

TX_00031677

USA_00021201

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 48 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 93 of 226
Hearing - Volume 3                                    April 6, 2009

535

```
 1        Hochberg case -- because I probably can't pronounce the

 2        other name -- those were also voter registration fraud,

 3        correct?

 4                   MR. HAMMERLEIN:  Yes, sir.

 5                   REPRESENTATIVE ANCHIA:  None of them related

 6        to in person voter impersonation at the polls, correct?

 7                   MR. HAMMERLEIN:  No.

 8                   REPRESENTATIVE ANCHIA:  Because people tried

 9        to go to their regular precinct and they found that they

10        were registered to another precinct, right?

11                   MR. HAMMERLEIN:  Actually, most of them

12        found out before that -- they found out their voter

13        registration had been changed from their residence, and

14        they called us to say why are you doing this.

15                   REPRESENTATIVE ANCHIA:  But there were no

16        cases of in person voter fraud there, correct?

17                   MR. HAMMERLEIN:  Well, no.  That one we

18        actually exposed it before the election.

19                   REPRESENTATIVE ANCHIA:  Okay.  And then the

20        Dashwood case, I guess, are you familiar with the

21        Dashwood case?

22                   MR. HAMMERLEIN:  Yes, sir.

23                   REPRESENTATIVE ANCHIA:  There were -- there

24        was -- there were 121 voter registration cards requested

25        interestingly from El Paso for some reason --
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031678

USA_00021202

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 49 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 94 of 226
Hearing - Volume 3                                      April 6, 2009

536

1          MR. HAMMERLEIN:  Yes.

2          REPRESENTATIVE ANCHIA:  -- which is bizarre.

3          MR. HAMMERLEIN:  That is bizarre.

4          REPRESENTATIVE ANCHIA:  Not a very smart way

5     to do voter registration fraud, and at a false address,

6     correct?

7          MR. HAMMERLEIN:  Right, and that's what --

8     our mapping department caught it because they were

9     trying to place things and saying this doesn't -- we

10    can't attach them to a voting district because these

11    addresses don't match any district.

12         REPRESENTATIVE ANCHIA:  And that was also

13    voter registration fraud, correct?

14         MR. HAMMERLEIN:  Yes, sir.

15         REPRESENTATIVE ANCHIA:  And not in person

16    voter fraud.

17         MR. HAMMERLEIN:  Right.

18         REPRESENTATIVE ANCHIA:  So, let's talk about

19    these two new cases that were articulated.  I noticed --

20    what was the number that the Texas Watchdog group, the

21    guy that was really animated in the video, the guy who

22    was trying to sell products --

23         MR. HAMMERLEIN:  I think he said he had --

24    interesting because they attacked our office --

25         REPRESENTATIVE ANCHIA:  He was just very



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006321

TX_00031679

USA_00021203

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 50 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 95 of 226
Hearing - Volume 3                                    April 6, 2009

537

1    animated.  I think he's not credible because he alleged

2    4,000 and then ultimately there were 2, right?  And in

3    Dallas County, by the way, they alleged 6,000 and found

4    none.  So -- so --

5              MR. HAMMERLEIN:  Yeah, they attacked -- and

6    they were hard on our office, accusing us of being lacks

7    and --

8              REPRESENTATIVE ANCHIA:  Well, I think that's

9    unfair.  I think that's unfair.

10             MR. HAMMERLEIN:  So, I guess if we're

11   getting attacked from all sides, we're doing okay.

12             REPRESENTATIVE ANCHIA:  So, with respect --

13   so, with respect to the Guidry case, I noticed in the

14   packet that you provided us, there is -- there is no

15   photocopy of the signatures on the poll book, right?

16             MR. HAMMERLEIN:  Yes.

17             REPRESENTATIVE ANCHIA:  Did anybody go back

18   and look at those signatures to determine what they

19   said?  You said you saw the Hill signature?

20             MR. HAMMERLEIN:  I did.  We went up and

21   looked at both of them and --

22             REPRESENTATIVE ANCHIA:  But you didn't

23   present that in -- in our documents?

24             MR. HAMMERLEIN:  And we didn't get a copy of

25   them from the county clerk.  We just wanted to make



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006322

TX_00031680

USA_00021204

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 51 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 96 of 226
Hearing - Volume 3                                          April 6, 2009

538

```
 1     sure -- because we saw the story, it was one that

 2     actually happened and they went to the county clerk and

 3     they pulled out a poll book and started going through

 4     it.

 5              REPRESENTATIVE ANCHIA:  You said on the Hill

 6     signature, it was tough to tell what the signature said

 7     at all, correct?

 8              MR. HAMMERLEIN:  Yes, sir.

 9              REPRESENTATIVE ANCHIA:  And a poll worker --

10              MR. HAMMERLEIN:  It was kind of short, could

11     have been Hill.

12              REPRESENTATIVE ANCHIA:  Also could not have

13     been Hill, right?

14              MR. HAMMERLEIN:  Probably.

15              REPRESENTATIVE ANCHIA:  It was very

16     difficult to term is what your testimony is?

17              MR. HAMMERLEIN:  Yeah, they weren't getting

18     As in penmanship.

19              REPRESENTATIVE ANCHIA:  Okay.  Okay.  And in

20     the Hill case, did they also rule out the possibility

21     that -- of clerical error by the poll worker?  Clearly,

22     the poll worker didn't do a signature match, right?  I

23     mean, that's -- that would have been something under

24     current law that they could have done, correct, a

25     signature match?
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031681

USA_00021205

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 52 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 9 of 226
Hearing - Volume 3                                    April 6, 2009

539

1          MR. HAMMERLEIN:  Right.

2          REPRESENTATIVE ANCHIA:  If the allegation is

3    somebody showed up with somebody else's -- with

4    Mr. Hill's or Ms. Hill's Social Security card --

5          MR. HAMMERLEIN:  Right, I mean, if they

6    would have said we want to see your voter registration

7    card, see whether it matches but, to be honest, I've

8    never, ever seen that done for anyone.  You just go sign

9    in and just --

10          REPRESENTATIVE ANCHIA:  Alternatively, they

11    could have signed up with a driver's license, right?

12          MR. HAMMERLEIN:  Right.

13          REPRESENTATIVE ANCHIA:  I mean, it's

14    possible?

15          MR. HAMMERLEIN:  Sure.

16          REPRESENTATIVE ANCHIA:  So, we don't know in

17    that case how they voted, right?  And -- is that right?

18          MR. HAMMERLEIN:  Yes, sir.

19          REPRESENTATIVE ANCHIA:  We don't know -- we

20    don't know if, in fact, somebody came in voting for

21    Mr. Hill, we're not sure of that, correct?

22          MR. HAMMERLEIN:  No, I mean --

23          REPRESENTATIVE ANCHIA:  Because we can't

24    determine the signature, correct?

25          MR. HAMMERLEIN:  That's correct.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006324

TX_00031682

USA_00021206

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 53 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 98 of 226
Hearing - Volume 3                                      April 6, 2009

540

1               REPRESENTATIVE ANCHIA:  And we can't tell if

2      they used a voter registration card or a driver's

3      license, correct?

4               MR. HAMMERLEIN:  No, sir.

5               REPRESENTATIVE ANCHIA:  Okay.  In the case

6      of Gloria Guidry, did you have a chance to look at the

7      signature in the poll book?

8               MR. HAMMERLEIN:  Yes, sir.

9               REPRESENTATIVE ANCHIA:  Okay.  And tell me a

10     little bit about that.

11              MR. HAMMERLEIN:  That one does represent

12     that person's name a lot closer.

13              REPRESENTATIVE ANCHIA:  Okay.  Okay.  Were

14     there any other Guidrys?  Did you take a look to see if

15     there were any other Guidrys in the poll book at that --

16     was that election day or early voting, do you recall?

17              MR. HAMMERLEIN:  No, sir, I don't recall.  I

18     just remember looking at the sheet of paper.

19              REPRESENTATIVE ANCHIA:  Do you recall if

20     there were other --

21              MR. HAMMERLEIN:  Yes, sir.  Well, there was

22     another one above it.

23              REPRESENTATIVE ANCHIA:  Another Guidry above

24     it?

25              MR. HAMMERLEIN:  Their name was longer and



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006325

TX_00031683

USA_00021207

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 54 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 99 of 226
Hearing - Volume 3                                    April 6, 2009

541

1    then this one below it.

2            REPRESENTATIVE ANCHIA:  Was the signature

3    clearly not the one -- the signature for the one above

4    it?

5            MR. HAMMERLEIN:  I wouldn't have thought it

6    was the same but, I mean, it could have been if they

7    were devious people.

8            REPRESENTATIVE ANCHIA:  Were you able to

9    rule out clerical error in that -- in the Guidry case?

10           MR. HAMMERLEIN:  After the fact, it's tough

11   because you say -- I'm just picking a number but it was

12   like the county clerk says there's 102 signatures in the

13   book and 102 votes.

14           You know, we went by and if this person was

15   deceased and they signed in, then that -- and it's her

16   name next to her -- her printed name in the poll book,

17   then that's a problem.

18           REPRESENTATIVE ANCHIA:  Was there also a

19   signature in the -- for the Guidry directly above?

20           MR. HAMMERLEIN:  Yes, sir.

21           REPRESENTATIVE ANCHIA:  So, there -- and was

22   that a Guidry signature?

23           MR. HAMMERLEIN:  Yes, sir.

24           REPRESENTATIVE ANCHIA:  You're positive of

25   that?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006326

TX_00031684

USA_00021208

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 55 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 100 of 226
Hearing - Volume 3                                    April 6, 2009

542

```
1              MR. HAMMERLEIN:  Yes.

2              REPRESENTATIVE ANCHIA:  Okay.  And were

3       there any other Guidrys in the -- in the -- that polling

4       location or on that -- on the list?

5              MR. HAMMERLEIN:  On that sheet, I don't

6       believe so, sir.

7              REPRESENTATIVE ANCHIA:  Okay.  Okay.  Could

8       you provide copies of the signatures for our office?

9              MR. HAMMERLEIN:  Yes, sir.

10             REPRESENTATIVE ANCHIA:  I noticed they

11      weren't in here.  Thanks for your testimony today.

12             MR. HAMMERLEIN:  Sure.

13             CHAIRMAN SMITH:  Representative Bonnen --

14      I'm sorry -- Allen.  Allen.

15             REPRESENTATIVE DR. ALLEN:  I wanted to ask

16      you about this Harris County --

17             MR. HAMMERLEIN:  Yes, ma'am.

18             REPRESENTATIVE DR. ALLEN:  -- voter deceased

19      list.  I like for everybody to -- if you have it in your

20      hands, I'd like for you to look at it, please.

21             This happened over a period of 16 years,

22      counting up to 2009.  In 1994, you had one incident.  In

23      '95, no incidents.  In 1996, you had 7 incidents.  In

24      '97, none.  In '98, 11.  '98 seemed to be a popular

25      year.  '99, you had none.  2000, you had 1.  2001, you
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031685

USA_00021209

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 56 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 101 of 226
Hearing - Volume 3                                    April 6, 2009

543

1    had none.  '2, '3, '4, '5, '6, 2007, 2008, 2009, you had

2    none.

3              So, that totalled up to 23 deceased voters

4    voting over a period of 16 years from 1994 to 2009 to

5    today.  So, you had -- if you take 16 years and you

6    divide it by 23 deceased persons, you come up with an

7    average of 1.7 persons voting per year.  Stuff happens.

8    One a year.

9              MR. HAMMERLEIN:  Well, I -- I guess we could

10   establish a bottom threshold of potential voter fraud in

11   the legislature that's acceptable but I would think in

12   races like in Pasadena, Texas where they had three in a

13   row where it was either one vote, tied and then back to

14   one vote, that those people would probably think that we

15   use every safeguard possible to make sure we get an

16   accurate roll.

17             REPRESENTATIVE DR. ALLEN:  And I agree with

18   that.  I simply mean you're averaging one a year.  So,

19   it doesn't look as bad as that, and stuff happens.

20             Let me say something else, that if you look

21   in the registry of names there, there are 281 Linda

22   Hills in Texas.  281.  Mistakes happen.

23             There's a John Smith and a John Smith, Jr.

24   So, I don't know whether the John Smith signed onto the

25   John Smith, Jr.'s name.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006328

TX_00031686

USA_00021210

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 57 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 102 of 226
Hearing - Volume 3                                    April 6, 2009

544

1            So, clearly, some mistakes could have been
2    made here, and I ask -- purposely asked if these were in
3    one precinct.  So, if I was voting and these were spread
4    all over Harris County, the impact of 1 person -- 1.7
5    person's voting in 23 years -- in 16 years, it was not
6    like somebody was trying to get commit voter fraud.  I
7    mean, how many elections can you impact with 1.7 votes
8    over 16 years?
9            MR. HAMMERLEIN:  Well, once again, I guess
10    it's up to this body to establish the acceptable level
11    of fraudulent votes, and we'll be glad to work with it.
12            REPRESENTATIVE DR. ALLEN:  There's no
13    level -- there's no level of fraudulent votes that we
14    will accept.  I just wanted you to know that it
15    doesn't --
16            CHAIRMAN SMITH:  Representative Bohac.
17            REPRESENTATIVE BOHAC:  Welcome to the
18    committee.  It is late.  I'm going to be quick.
19            Are you familiar with the Progreso
20    Independent School District case that's in front of the
21    Attorney General's office now?
22            MR. HAMMERLEIN:  No, sir, I'm not.
23            REPRESENTATIVE BOHAC:  Can I explain it to
24    you?  And then I'm going to ask you some questions about
25    it.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031687

USA_00021211

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 58 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 103 of 226
Hearing - Volume 3                                        April 6, 2009

545

1              UNIDENTIFIED SPEAKER:  Well, now, that will

2      be a real informed -- real informed response but go

3      ahead.

4              REPRESENTATIVE BOHAC:  Well, it's related to

5      what we're testifying about here in general about voter

6      fraud.

7              It involves -- I'm not going to use the

8      people's names, although the names are common knowledge

9      because this is all public data.  It just says person

10     A's affidavit alleges that he was approached by person B

11     to vote illegally, using voter registration certificates

12     of three individuals.

13              This person states that he voted with one of

14     the certificate and received $10 from person A.

15              In another case in this same alleged

16     criminal conduct, it says person C, a poll watcher,

17     states that she observed a person she believed was

18     attempting to vote using another person's identity.

19              In another part of this criminal conduct

20     case, it says person D -- this is all the same case --

21     person D's affidavit alleging that person -- that person

22     E offered her money in exchange for her vote.  He also

23     allegedly offered her voter registration certificates in

24     other persons' names to use to vote and take care of her

25     traffic tickets if she assisted in illegal voting.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031688

USA_00021212

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 59 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 104 of 226
Hearing - Volume 3                                    April 6, 2009

546

1              I'm not making this up.

2              And then finally in this last paragraph here

3      it says person F served as a poll watcher.  In her

4      affidavit in the same Progreso Independent School

5      District case, in her affidavit, she claimed that she

6      saw election officials qualifying voters to vote without

7      presenting their certificates or any other form of

8      identification.

9              She also claims that she saw a voter attempt

10     to vote illegally using another person's certificate.

11             Now, being in the position that you are --

12     and I don't know what the outcome of this case is going

13     to be but these are pretty serious allegations, and

14     they're signed affidavits.  So, I don't know what the

15     ultimate outcome is going to be but do you think voter

16     ID, if we had voter ID, would help in any of these

17     cases?

18             MR. HAMMERLEIN:  Yeah.  I mean, this is

19     obviously speculation on my part but from the small

20     amount of information I've got from you, it does seem

21     like it would have added a level of security that's not

22     there now where you can just walk in with an orange card

23     and take it at face value.

24             I mean, if you had to have something to go

25     with it, even if -- even under current law if you just



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006331

TX_00031689

USA_00021213

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 60 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 105 of 226
Hearing - Volume 3                                    April 6, 2009

547

1    had to have an additional envelope or something, you

2    know, from a government agency would have added -- would

3    have put a big dent in this program if it is, you know,

4    as it's spelled out.

5              REPRESENTATIVE BOHAC:  And, likewise, if

6    there are indeed some few instances, as Dr. Allen

7    stated, there are just a handful of dead people who are

8    voting statewide, a voter ID would also help in those

9    particular cases as well, I would suspect that would be

10   the case because you're verifying the person who is

11   walking in is indeed the person who is voting?

12             MR. HAMMERLEIN:  Right.

13             REPRESENTATIVE BOHAC:  So -- and I know

14   you're neutral on the bill but it just seems to me that

15   in this discussion that we've had tonight, there's --

16   there's -- I believe there's some compelling reasons why

17   we may want to adopt voter ID as a policy for the State

18   of Texas.

19             And anyway, I appreciate you driving all

20   this way and making us aware of these particular

21   situations.

22             MR. HAMMERLEIN:  Thank you.

23             CHAIRMAN SMITH:  Representative Bonnen.

24             REPRESENTATIVE BONNEN:  On the cases of the

25   voter registration fraud that Representative Anchia



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031690

USA_00021214

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 61 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 100 of 226
Hearing - Volume 3                                    April 6, 2009

548

1    raised, was anyone successfully prosecuted in those

2    cases?

3                MR. HAMMERLEIN:  The only one that really

4    had something tangible was the Janice Sheldon case where

5    she pleaded guilty and then one of the other cases, when

6    the district attorney called him, he agreed to come in

7    and then moved --

8                REPRESENTATIVE BONNEN:  Never showed up?

9                MR. HAMMERLEIN:  Yeah, moved out of town.

10               REPRESENTATIVE BONNEN:  Now, I don't know

11   the cases by heart so what about the one where they

12   mailed them all in from El Paso or whatever and then --

13               MR. HAMMERLEIN:  I think that was turned

14   over to the El Paso authorities, and we've never heard

15   anything else.

16               REPRESENTATIVE BONNEN:  Let me ask you this

17   question:  Would it be fair to say that you need to have

18   a voter registration -- you don't have to but

19   wouldn't -- what would be the next step beyond voter

20   registration fraud?  Would that be an illegal vote?

21               MR. HAMMERLEIN:  You mean the next step from

22   illegal voter registration?

23               REPRESENTATIVE BONNEN:  If you successfully

24   illegally register people to vote, then what are you

25   doing?  What's next?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031691

USA_00021215

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 62 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 107 of 226
Hearing - Volume 3                                    April 6, 2009

549

1           MR. HAMMERLEIN:  Like -- it, obviously,
2      opens that door that wasn't open before.
3           REPRESENTATIVE BONNEN:  Not to put it to you
4      but to me -- and I'm not an election official but
5      wouldn't the logical next step then be to have people to
6      show up to cast votes in the names of the people they
7      illegally registered?
8           MR. HAMMERLEIN:  Well, that certainly offers
9      the opportunity.
10          REPRESENTATIVE BONNEN:  Okay.  So, in all
11     the instances that registration fraud was found, I guess
12     we should assume with the same vigor that every one of
13     those was intended to be an in person voter fraud?
14          MR. HAMMERLEIN:  Yeah, it's hard to read
15     intent but, I mean, if -- if properly executed --
16          REPRESENTATIVE BONNEN:  Then why else would
17     I do it?
18          MR. HAMMERLEIN:  If properly executed, I
19     guess it gives people the opportunity.
20          REPRESENTATIVE BONNEN:  Well, let me ask you
21     why some of those cases were not prosecuted because --
22     or you just don't know if they were or not?
23          MR. HAMMERLEIN:  Well, I don't think they
24     had enough to -- they couldn't reverse engineer to find
25     the individual.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031692

USA_00021216

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 63 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 108 of 226
Hearing - Volume 3                                          April 6, 2009

550

1           REPRESENTATIVE BONNEN:  It's hard to track

2     them down?

3           MR. HAMMERLEIN:  Right.

4           REPRESENTATIVE BONNEN:  Okay.  Thank you.

5           UNIDENTIFIED SPEAKER:  Is there any

6     correlation between voter registration fraud and in

7     person voter fraud?

8           MR. HAMMERLEIN:  Not that I'm aware of.

9           UNIDENTIFIED SPEAKER:  Okay.  In the El Paso

10    case, the Dashwood -- Dashwood was related to El Paso?

11          MR. HAMMERLEIN:  Yes, sir.  Yes, sir.

12          UNIDENTIFIED SPEAKER:  The referral was made

13    to the district attorney in Harris County or to the

14    district attorney in El Paso?

15          MR. HAMMERLEIN:  I want to say we gave it

16    to -- well, I know we gave it to the district attorney

17    in Harris County and I think they promptly, doing what

18    good bureaucrats do, shipped it to El Paso County.

19          UNIDENTIFIED SPEAKER:  And you don't know

20    the outcome one way or the other, whether they

21    prosecuted anything or not?

22          MR. HAMMERLEIN:  No, sir, not to my

23    knowledge.

24          UNIDENTIFIED SPEAKER:  So, we don't know for

25    a fact that they dropped it or we don't know for a fact



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031693

USA_00021217

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 64 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 109 of 226
Hearing - Volume 3                                    April 6, 2009

551

```
 1    if they prosecuted it?

 2              MR. HAMMERLEIN:  No, sir.  Our office has

 3    never been contacted back.

 4              UNIDENTIFIED SPEAKER:  And did you guys ever

 5    follow up?

 6              MR. HAMMERLEIN:  I haven't called out there

 7    and seen what's going on.

 8              UNIDENTIFIED SPEAKER:  Okay.  And you're

 9    testifying on the bill today, correct, not for it?

10              MR. HAMMERLEIN:  Yes, sir.  We'll be happy

11    to execute whatever election law you pass.

12              UNIDENTIFIED SPEAKER:  Okay.  On the cases

13    that you received earlier that I guess Representative

14    Bohac was talking about earlier, are you familiar with

15    those cases?

16              MR. HAMMERLEIN:  No, sir.

17              UNIDENTIFIED SPEAKER:  Okay.  Do you know if

18    they've -- if any of those affidavits have been cross

19    examined or not?

20              MR. HAMMERLEIN:  No, sir.  I --

21              UNIDENTIFIED SPEAKER:  Do you know the

22    conflict histories of any of the affiants in those

23    affidavits?

24              MR. HAMMERLEIN:  No, sir.  I have completely

25    uninformed speculation on this.
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006336

TX_00031694

USA_00021218

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 65 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 110 of 226
Hearing - Volume 3                                        April 6, 2009

552

```
 1              UNIDENTIFIED SPEAKER:  Okay.  Thank you.
 2              MR. HAMMERLEIN:  Yes, sir.
 3              CHAIRMAN SMITH:  Any other questions from
 4    the members of the committee?  Anybody?  Okay.
 5              REPRESENTATIVE DR. ALLEN:  Could you tell me
 6    how many DPS offices there are in Harris County to
 7    obtain IDs?
 8              MR. HAMMERLEIN:  No, ma'am.
 9              CHAIRMAN SMITH:  I'm being told that we'll
10    have DPS here tomorrow.
11              REPRESENTATIVE DR. ALLEN:  Okay.  We'll have
12    DPS here tomorrow.  I'll ask the question tomorrow.
13              Thank you.
14              CHAIRMAN SMITH:  Representative Veasey.
15              REPRESENTATIVE VEASEY:  What's your
16    position?
17              MR. HAMMERLEIN:  I'm the director of voter
18    registration for Harris County.
19              REPRESENTATIVE VEASEY:  Is that a partisan
20    position?
21              MR. HAMMERLEIN:  No.
22              REPRESENTATIVE VEASEY:  Are you a -- are you
23    a Democrat or a Republican when you're not working?
24              MR. HAMMERLEIN:  I'm a Houstonian.
25              REPRESENTATIVE VEASEY:  Okay.  But I mean,
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031695

USA_00021219

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 66 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 111 of 226
Hearing - Volume 3                                    April 6, 2009

553

1       what do you consider yourself?  Because what I'm trying

2       to establish here and what I don't understand is that

3       you testified that you will come in as a resource

4       witness; is that correct?

5                   MR. HAMMERLEIN:  Yes, sir.

6                   REPRESENTATIVE VEASEY:  And that you're

7       neutral on the bill.  So, where is the video that also

8       shows all of the voters that were -- that had tried to

9       register to vote legally in Harris County for this past

10      election cycle but that they were denied their right to

11      exercise --

12                  MR. HAMMERLEIN:  I'm not aware of any.

13      First, one, I wasn't asked to produce that and, two, I'm

14      unaware of any.

15                  REPRESENTATIVE VEASEY:  Yeah, but I'm -- if

16      you're a resource witness and you're here to --

17                  CHAIRMAN SMITH:  No.  That wouldn't be

18      accurate, Marc.  Certain people were asked by one side

19      to testify to certain issues and other people were asked

20      by the other side to testify.  He's not technically a

21      resource witness as is the Secretary of State.

22                  REPRESENTATIVE VEASEY:  Well, it sounds like

23      that he testified on behalf of the bill and -- and, you

24      know, in Harris County, I guess more than 13,000 voter

25      registration applicant hadn't been processed and this --



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031696

USA_00021220

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 67 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 112 of 226
Hearing - Volume 3                                      April 6, 2009

554

1           MR. HAMMERLEIN:  That's a nice -- that's a

2    nice thing to repeat.  When we got over 110,000 voter

3    registration applications on cut off and the two days

4    after cut off, yeah, obviously, they're not effective

5    for 30 days, and we can -- so that when early voting

6    starts within a couple of weeks after cut off, when

7    people say do you still have you haven't produced -- or

8    processed, well, absolutely we haven't processed them

9    but they wouldn't be eligible to vote anyway during

10   early voting because they turned them in on the cut off

11   day.

12           So, no one was denied the right to vote.

13           REPRESENTATIVE VEASEY:  And -- but -- and

14   see, the problem that I have is that the emphasis, once

15   again -- and I pointed this out earlier for the people

16   that actually came to speak on behalf of the voter ID

17   bill, the emphasis is always on, you know, the so-called

18   voter fraud or the so-called voter impersonation that we

19   still haven't seen any evidence of.

20           And what I'm asking you is that, you know,

21   you -- why is there not the same level of intensity

22   about all these voters that tried to register to vote in

23   Harris County that were denied the right to do so and

24   their applications were not processed?  Did you --

25           MR. HAMMERLEIN:  I just explained to you.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031697

USA_00021221

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 68 of 116
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 113 of 226
Hearing - Volume 3                                          April 6, 2009

555

1       I'll be glad to explain again if you're having a hard

2       time with it.

3                    REPRESENTATIVE VEASEY:  There was a story

4       that you put on the air a second ago that you just --

5                    MR. HAMMERLEIN:  Right.

6                    REPRESENTATIVE VEASEY:  -- put on video that

7       you put on the projector and there was another story

8       that showed how these applicants weren't being

9       processed, and what I'm saying is that the emphasis

10      seems to be on, you know, voter impersonation or

11      so-called voter impersonation but I don't see the same

12      side talking about, you know, the people that have been

13      disenfranchised.

14                   MR. HAMMERLEIN:  I'm not aware of anyone

15      that's been disenfranchised.  If you're aware of any

16      names that we can investigate --

17                   REPRESENTATIVE VEASEY:  Why did the

18      gentleman that was previously elected to oversee your

19      office, why did he resign shortly after being reelected,

20      after going out there campaigning, spending money?

21                   MR. HAMMERLEIN:  Actually, he didn't

22      campaign and he didn't spend any money.  I think C&Es

23      are available, and you can go check those with the Texas

24      Ethics Commission.

25                   REPRESENTATIVE VEASEY:  But he had to put



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031698

USA_00021222

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 69 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 114 of 226
Hearing - Volume 3                                    April 6, 2009

556

 1    his name on the ballot.

 2              MR. HAMMERLEIN:  He did about a year out

 3    from the election, and then his personal situations

 4    changed, and he got a job offer.

 5              REPRESENTATIVE VEASEY:  Why is it alleged

 6    that he --

 7              MR. HAMMERLEIN:  Well, I mean, people can

 8    allege anything, can't they?

 9              REPRESENTATIVE VEASEY:  According to what

10    you know as a Houstonian, as you stated you were

11    earlier --

12              MR. HAMMERLEIN:  Yes.

13              REPRESENTATIVE VEASEY:  -- and from the

14    articles that you've read in the HOUSTON CHRONICLE and

15    that you've seen on local media reports in Harris

16    County, tell me, to your best recollection, why is it

17    thought that your previous boss resigned?

18              UNIDENTIFIED SPEAKER:  What does it have to

19    do with voter ID?

20              REPRESENTATIVE VEASEY:  Well, because he

21    came and he showed this video.

22              UNIDENTIFIED SPEAKER:  He showed a video

23    produced by Channel 2 News in Houston, Texas.

24              REPRESENTATIVE VEASEY:  Okay.  I know but

25    I'm trying to ask -- I want to establish -- I want to



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031699

USA_00021223

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 70 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 115 of 226
Hearing - Volume 3                                    April 6, 2009

557

1    see your office put some emphasis on the other side.

2              MR. HAMMERLEIN:  Well, I encourage you to

3    come to our office --

4              REPRESENTATIVE VEASEY:  That's the point

5    that we're trying to make.

6              MR. HAMMERLEIN:  Well, I encourage you to

7    come to our office any day and you'll see the emphasis

8    we put on voter registration eight hours a day, five

9    days a week on processing hundreds of thousands of voter

10   registration cards.

11             REPRESENTATIVE VEASEY:  But you're not going

12   to tell me why your boss resigned -- why he allegedly

13   resigned?

14             MR. HAMMERLEIN:  Well, I don't think he

15   allegedly resigned.  I think he actually did resign but

16   he resigned to take a job in the private sector, which

17   he has now, and you can give him a call and ask him.

18             CHAIRMAN SMITH:  Just a question, there

19   was -- Mr. Representative Anchia was making the point

20   that he doesn't believe there's any correlation between

21   impersonation fraud and voter registration fraud.  Now,

22   unless I'm missing something, it's fair to presume that

23   when someone engages in voter registration fraud that

24   they do so with the intent to ultimately follow that up

25   with casting a fraudulent vote.  Is that reasonable?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031700

USA_00021224

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 71 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 110 of 226
Hearing - Volume 3                                    April 6, 2009

558

1              MR. HAMMERLEIN:  Yes, sir.  I mean, that

2      does seem like that would be the point of the drill.

3              CHAIRMAN SMITH:  Okay.  And if that's the

4      case, then the only question is is that fraud going to

5      occur by way of absentee ballot or by way of voter

6      impersonation, right?  Those are the two possibilities?

7              MR. HAMMERLEIN:  Yes, sir.

8              CHAIRMAN SMITH:  One of which --

9              UNIDENTIFIED SPEAKER:  Or both.

10             CHAIRMAN SMITH:  -- has a longer paper trail

11     established, that being absentee ballot, one of which

12     has a shorter paper trail.  So, in terms of making

13     assumptions, if we know people are in the public are out

14     there committing fraud with regard to registering

15     voters, there's certainly no reason to assume that they

16     ultimately would have cast an absentee ballot over

17     having voted in person.  You can make either assumption,

18     is that the agreement?

19             MR. HAMMERLEIN:  Yes, sir.

20             CHAIRMAN SMITH:  And so, you know, I don't

21     know that there's a correlation between that and either

22     type of potential fraud that would occur at that point

23     but I do think that to the extent that there is a lot of

24     evidence in front of this committee of voter

25     registration fraud, that is additional evidence of voter



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006343

TX_00031701

USA_00021225

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 72 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 117 of 226
Hearing - Volume 3                                    April 6, 2009

559

1    fraud of one type or another.  And, again, either side

2    can assume what they want to about which would have been

3    more likely to occur.

4              UNIDENTIFIED SPEAKER:  Let me ask you this

5    on voter registration fraud:  Why, in your professional

6    opinion, is -- what are you again?

7              MR. HAMMERLEIN:  Director of voter

8    registration.

9              UNIDENTIFIED SPEAKER:  Okay.  Why would

10   Dennis Bond in his argument say choose to fraudulently

11   register 500 or 30 or 18, pick the number of voters in

12   Brazoria or -- forget it -- Harris County, I'm going to

13   move up there and do that.  Why would I do that.

14             MR. HAMMERLEIN:  One would be if you're a

15   paid volunteer of an organization and you're either paid

16   by the card, which you're not supposed to be, but we

17   know they are, and then there's -- or they get a quota.

18   So, that's a financial incentive.

19             And then I guess there would always be the

20   incentive to actually affect the outcome of an election.

21             UNIDENTIFIED SPEAKER:  Which both would have

22   the same impact, though, wouldn't they, because even if

23   I'm getting paid, if I'm actually -- and I understand

24   the logic there, I'm doing it not because I even really

25   want to change the outcome of the election, I want to --



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006344

TX_00031702

USA_00021226

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 73 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 119 of 226
Hearing - Volume 3                                    April 6, 2009

560

1    and I'm not casting a net of accusation but I am

2    watching the news, which could be totally inaccurate for

3    all I know, the Acorn situation that was reported -- I

4    don't know if it's accurate -- that was what was

5    occurring that certain people needed to meet a certain

6    number of registrants, so they simply did that

7    fraudulently.

8           Those individuals may have not even cared if

9    someone showed up to vote but -- but what other reason

10   would there be?  That would be it, wouldn't there?

11          MR. HAMMERLEIN:  I would just think it would

12   be financial and political.

13          UNIDENTIFIED SPEAKER:  And that would be it,

14   though?

15          MR. HAMMERLEIN:  Those are the only two I

16   can think of.

17          UNIDENTIFIED SPEAKER:  And wouldn't -- even

18   if you're being paid -- and let's say Dennis Bond is

19   being paid by the Republican party of Texas to register

20   people to vote and I'm behind and so, I produce

21   fraudulent documents, wouldn't still then, though, the

22   whole activity, whether I behaved on my own within that

23   activity fraudulently, isn't the ultimate outcome of

24   that activity to then get people to vote to have more

25   ballots cast, correct?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031703

USA_00021227

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 74 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 119 of 226
Hearing - Volume 3                                            April 6, 2009

561

1           MR. HAMMERLEIN:  Seems like that would be

2     the logic.

3           UNIDENTIFIED SPEAKER:  Thank you.

4           CHAIRMAN SMITH:  Representative Anchia.

5           REPRESENTATIVE ANCHIA:  Yeah, Mr. Chairman,

6     just responding to the premise that you laid out, I

7     think the most constructive example is the one that Mr.

8     Hammerlein presented in the Sedgwick case.

9           What was the intent of Ms. Sedgwick in

10    engaging in voter registration fraud?  This is the one

11    case that we actually have prosecuted that he's

12    testified to.  What was the intent?  Was it to commit

13    voter fraud or what you testified to today?

14          MR. HAMMERLEIN:  Well, her testimony was

15    that she was behind in a college extra credit program.

16          REPRESENTATIVE ANCHIA:  And she made them

17    up, she went through the phone book?

18          MR. HAMMERLEIN:  Well, she made some of them

19    up and I think 25 of them were actually current

20    registered voters that she moved to new locations for

21    some reason.

22          REPRESENTATIVE ANCHIA:  Okay.  Was her

23    intent to get all of those people that she either made

24    up or current registered voters to vote in the election?

25    Did she testify to that?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031704

USA_00021228

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 75 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 120 of 226
Hearing - Volume 3                                         April 6, 2009

562

1           MR. HAMMERLEIN:  No.  She said she was doing

2     it just merely because of the academic requirement.

3           REPRESENTATIVE ANCHIA:  And I would submit,

4     Mr. Chairman, that there are academic studies on this

5     that I'd like to present to the -- to the committee,

6     including from the EAC, a draft report from the EAC that

7     I have here.  I'll get you the final report.  That

8     suggested there's absolutely zero correlation between

9     voter registration fraud and voter fraud.

10          And that's -- that's not a hypothetical.  We

11    have the one actual case that Mr. Hammerlein testified

12    to that has been prosecuted.

13          And then I'm happy to present -- because I

14    think the premise is incorrect to suggest that voter

15    registration fraud occurs for the purposes of --

16          CHAIRMAN SMITH:  You're not saying now that

17    there's zero correlation between voter registration

18    fraud and impersonation fraud, you're saying between

19    voter registration fraud and any kind of fraud?

20          REPRESENTATIVE ANCHIA:  No.  Let me clarify

21    that to suggest in person voting.

22          CHAIRMAN SMITH:  Okay.

23          UNIDENTIFIED SPEAKER:  And real quick, I

24    didn't make the suggestion that that's what it is.  I

25    made the suggestion that I find it hard to believe that



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006347

TX_00031705

USA_00021229

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 76 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 121 of 226
Hearing - Volume 3                                    April 6, 2009

563

1     there would be no next step intended.

2               CHAIRMAN SMITH:  So, Representative Anchia,

3     if you're not denying that there's a correlation between

4     voter registration fraud and voter fraud but you are

5     denying that there is a correlation between voter

6     registration fraud and voter impersonation fraud, then

7     I'm presuming that you believe there's a correlation

8     between voter registration fraud and absentee ballot

9     fraud?

10              REPRESENTATIVE ANCHIA:  I -- no, I don't

11    believe that but I believe there's a possibility.  I

12    don't believe that there is a correlation.  I think

13    there may be a possibility.

14              CHAIRMAN SMITH:  Okay.

15              Yes, Representative Bohac.

16              REPRESENTATIVE BOHAC:  George, one more

17    quick question.  You guys are the largest county in

18    Texas.  Have you all -- in your -- in your time as the

19    voter registration director -- is that the right term,

20    something like that?

21              MR. HAMMERLEIN:  Director of voter

22    registration.

23              REPRESENTATIVE BOHAC:  Director of voter

24    registration.  Have you ever seen a pattern of -- of

25    fraudulent voter registration from any group, any



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006348

TX_00031706

USA_00021230

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 77 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 122 of 226
Hearing - Volume 3                                        April 6, 2009

564

1    planned pattern of voter registration fraud where there

2    were names taken out of phone books or like we -- like

3    we heard in the past election cycle where there were

4    names made up?

5              MR. HAMMERLEIN:  Well --

6              REPRESENTATIVE BOHAC:  Have you ever seen

7    any systematic progression of that in your term?

8              MR. HAMMERLEIN:  I think the main -- the

9    main thing we did see in the last election that some

10   organizations under pressure for maybe financial

11   reasons, they -- you know, the same person would be

12   registered 10 times by the same individual on the same

13   day.

14             Of course, they're turned in in a big

15   bundle.  You know, they're hoping you don't catch them

16   and -- but, you know, our experience -- because we don't

17   really have systems to verify.  I mean, it's just --

18   with us, it's more sloppy work or inaccurate cards, then

19   we can -- because we don't have a little investigative

20   team in us.  We take them at face value and type them in

21   a computer, and we have a mapping program and they

22   either catch or they don't, and if they give us a

23   number, it will match hopefully with the Texas Secretary

24   of State or Social Security but if they mark both that

25   they have neither, they're automatically on the roll.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031707

USA_00021231

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 78 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 123 of 226
Hearing - Volume 3                                        April 6, 2009

565

```
 1            So, there is no way to verify those people
 2     ever, and if they say they're over 65.  So, you can come
 3     in, check I have no unique number identifiers, I'm over
 4     65, now send me my ballot by mail and you'll be good to
 5     go forever.
 6            CHAIRMAN SMITH:  Just in case there's
 7     anybody on the committee and anybody other than our last
 8     witness who cares, he is about 18 minutes over the
 9     allotted time.
10            UNIDENTIFIED SPEAKER:  I'm fine.
11            UNIDENTIFIED SPEAKER:  Just real quick and
12     here's my final question, so, if you check that you
13     don't have either, either the last four digits of the
14     Social or driver's license, you're automatically
15     registered in your office?
16            MR. HAMMERLEIN:  Yes, sir, under state
17     elections guidance -- I mean, that's the guidance we
18     get, yes.
19            UNIDENTIFIED SPEAKER:  So, everyone is
20     registered to vote regardless of whether or not they can
21     produce a four digit code --
22            MR. HAMMERLEIN:  Right.
23            UNIDENTIFIED SPEAKER:  -- or a driver's
24     license number?
25            MR. HAMMERLEIN:  And at current, we have
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006350

TX_00031708

USA_00021232

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 79 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 124 of 226
Hearing - Volume 3                                    April 6, 2009

566

```
1     about 130,000 registered voters with no unique
2     identifiers.
3                UNIDENTIFIED SPEAKER:  Out of 1.9 million
4     registered voters?
5                MR. HAMMERLEIN:  Approximately 1.9.
6                UNIDENTIFIED SPEAKER:  So, about 8 percent
7     of your registered voter database in this late hour that
8     there's nothing to tie that individual with a -- the
9     last four digits of their Social or driver's license
10    number?
11               MR. HAMMERLEIN:  No.
12               UNIDENTIFIED SPEAKER:  Okay.  Thank you.
13               CHAIRMAN SMITH:  Any other questions,
14    members?
15               Thank you very much.
16               Representative Helfin.
17               REPRESENTATIVE HELFIN:  I'm sorry.  Just
18    woke up.
19               If -- if the bill that's proposed was
20    adopted, would that cure that problem?
21               MR. HAMMERLEIN:  I -- I suppose it would add
22    an additional layer of security when people come into
23    the polls and they'd have to show identity.
24               REPRESENTATIVE HELFIN:  But as far as -- as
25    far as the registration process, this bill does nothing
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031709

USA_00021233

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 80 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 125 of 226
Hearing - Volume 3                                        April 6, 2009

567

```
 1     to address that?
 2               MR. HAMMERLEIN:  No, sir, I'm not aware of
 3     anything that it does to the registration process.
 4               REPRESENTATIVE HELFIN:  Okay.  Thank you.
 5               CHAIRMAN SMITH:  Any other questions,
 6     members?
 7               Thank you, Mr. Hammerlein.
 8               At this time --
 9               UNIDENTIFIED SPEAKER:  Mr. Chairman?
10               CHAIRMAN SMITH:  Yes.
11               UNIDENTIFIED SPEAKER:  I wanted to ask you
12     one more thing.  I think it will be a lot easier to
13     answer than why his boss quit his job but the
14     information that I read earlier about John Fund, I was
15     wondering if -- how I could get that submitted to the
16     record or could I just ask that it be submitted into
17     the --
18               CHAIRMAN SMITH:  I don't think there is a
19     record.
20               UNIDENTIFIED SPEAKER:  Okay.  I didn't know
21     if he was keeping the --
22               CHAIRMAN SMITH:  No.
23               UNIDENTIFIED SPEAKER:  Okay.
24               CHAIRMAN SMITH:  But you're welcome to
25     provide it to the members of the committee.
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006352

TX_00031710

USA_00021234

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 81 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 120 of 226
Hearing - Volume 3                                    April 6, 2009

568

1          UNIDENTIFIED SPEAKER:  Okay.  Thank you.

2          CHAIRMAN SMITH:  Yes?

3          UNIDENTIFIED SPEAKER:  I think if something

4    like that is going to be done, then Mr. Fund should be

5    contacted and let him give a response to it.  After all,

6    you know, he was -- he was kept late so that he didn't

7    have time to have -- be questioned, and I don't think

8    it's appropriate to enter something now that he's gone.

9          CHAIRMAN SMITH:  Well, we're not -- this is

10   not a court of law.  We're not entering something.  He's

11   just giving us a copy, and if anybody wishes to

12   contact --

13         UNIDENTIFIED SPEAKER:  I'm going to put a

14   copy in the filing cabinet in my office.

15         CHAIRMAN SMITH:  Anybody else?  Any other

16   questions, comments?

17         At this time the Chair calls Mr. Toby Moore.

18         Oh, I'm sorry, you're not him.

19         UNIDENTIFIED SPEAKER:  Mr. Chairman?

20         (Inaudible)

21         UNIDENTIFIED SPEAKER:  Happy birthday.

22         UNIDENTIFIED SPEAKER:  Mr. Chairman, just

23   for the record, Mr. Moore is from North Carolina and a

24   graduate of the University of North Carolina, Chapel

25   Hill, and I know he's been here all night instead of



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006353

TX_00031711

USA_00021235

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 82 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 127 of 226
Hearing - Volume 3                                          April 6, 2009

569

1      watching the game.

2                   UNIDENTIFIED SPEAKER:  Who won?

3                   UNIDENTIFIED SPEAKER:  I don't know the

4      answer to that and I hope you have it on TVO.

5                   UNIDENTIFIED SPEAKER:  I was able to watch

6      it in the back.

7                   CHAIRMAN SMITH:  Okay.  All right.  Well,

8      thank you for -- for agreeing to spend the evening with

9      us instead of watching your alma mater play in the

10     national championship.  That's a huge sacrifice.

11                  UNIDENTIFIED SPEAKER:  When I chose this

12     night for the committee, you can tell I'm not a college

13     basketball fan.  It's a nice reminder this is a football

14     state.

15                  CHAIRMAN SMITH:  Would you please state your

16     name and who you represent for the record.

17                  MR. MOORE:  My name is Toby Moore, project

18     director and elections research with Research Triangle

19     Institute.  I'm appearing on my own behalf, my own

20     capacity.

21                  CHAIRMAN SMITH:  Thank you.

22                  MR. MOORE:  I will try to be brief.  I've

23     given you my written testimony.  I think what the -- in

24     the interest of time, I'll tell you the three areas that

25     I thought I could be of most service to the committee



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006354

TX_00031712

USA_00021236

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 83 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 128 of 226
Hearing - Volume 3                                             April 6, 2009

570

1     and kind of go over very quickly some of the highlights

2     of what my written testimony is and then just turn to

3     questions because much of what -- some of what I'm

4     testifying has been covered in -- by other witnesses.

5              My background is I was at the Justice

6     Department, was geographer of the Justice Department in

7     the voting section from 2000 to 2006, and then for a

8     little more than a year was project manager for the

9     Carter-Baker Commission on Election Reform at the

10    American University, where I designed and implemented a

11    survey research project on voter ID that --

12              UNIDENTIFIED SPEAKER:  Excuse me.  What did

13    you do at the Justice Department from --

14              MR. MOORE:  I was geographer, a

15    redistricting expert.

16              And while at American, I designed and

17    implemented a survey research project on voter ID.

18              As it happens, in conjunction with a survey

19    research firm based here in Austin called Mustats, and

20    those results may be of interest to you.

21              The three areas that I think I can be of

22    most service, the -- to try to give you as an objective

23    a survey of the current research in the field as I can,

24    I know that you talked about some of that with Justin

25    and other witnesses about the impact on voter -- voter



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031713

USA_00021237

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 84 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 129 of 226
Hearing - Volume 3                                    April 6, 2009

571

1     ID on turnout and some of these other research projects.

2              Second, I think I can be of help in trying

3     to relate to you the challenges that you're going to

4     face in getting preclearance, whether you go through the

5     DOJ or through the DC court.

6              And finally, if it's of interest, I can more

7     fully describe the better ID proposal made by the

8     Carter-Baker Commission.

9              The research on impact of voter ID is not

10    what it should be.  I think the research community has

11    let down policy makers.

12             It was apparent in the Crawford Marion

13    decision in the Supreme Court and lower court's

14    frustration with the research community and the lack of

15    reliable studies.

16             Just briefly, because I know you've gone

17    over this already, two of the -- two of the methods to

18    try to get at this impact of voter ID were database

19    matches, which I think most people have moved away from

20    as unsatisfactory and which I think overstated the

21    impact of voter ID, and I think people are now turning

22    away from the modelling of turnout.

23             There's a new paper by (Inaudible) and

24    Robert Ericson that I think is well worth your looking

25    at that takes the bulk of the turnout studies, those



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031714

USA_00021238

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 85 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 130 of 226
Hearing - Volume 3                                          April 6, 2009

572

1    which found an impact and those which did not and I

2    think makes a pretty good argument for the fact that we

3    just lack the data and tools to be able to make good

4    inferences about the impact of these laws on turnout,

5    and that covers both things like the AC funded survey, a

6    very sophisticated study by Alvarez and Katz, the

7    Muhlhausen survey, all of these are well worth reading.

8           Where I think we are is that if we're going

9    to get at this question of who doesn't have ID, it's

10   probably going to be -- need to be done by sophisticated

11   and well funded surveys.

12          We don't have the type of survey that we

13   should have.  I think the best thing we have is actually

14   the one that I did at -- or started at least at AU with

15   Carter-Baker.

16          That survey found that in three states that

17   approximately 1.2 percent of registered voters lacked

18   IDs.  It was very low in Indiana where they already had

19   an ID law and had made great effort to get ID out.  It

20   went up to about 4 percent in Maryland where it was not

21   a large issue and they had a poor minority community.

22          But some of the things found in the study I

23   think are worth pointing out.

24          African Americans were more than four times

25   more likely than whites to lack photo ID.  There was not



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006357

TX_00031715

USA_00021239

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 86 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 131 of 226
Hearing - Volume 3                                              April 6, 2009

573

1      enough of a Hispanic sample to really make any

2      inferences but Hispanics, and we know almost nothing

3      about ID ownership with -- among Hispanics.

4               Interestingly, women made up nearly all of

5      those who did not have photo ID, which was a surprise to

6      everybody but nearly everyone who did not have a photo

7      ID was a woman.

8               Nearly all of those who lacked ID were

9      Democrats and 88 percent of those without photo ID had

10     household incomes below $25,000 a year.

11              Now, these are registered voters.  So, the

12     pool of people who are eligible voters but not

13     registered, I think we can pretty safely assume would

14     have somewhat higher rates of lacking photo ID.

15              And the really striking statistic about

16     women is doubly important because women, of course, go

17     through name changes that men don't typically go through

18     and face an additional obstacle and problems with

19     getting their documentation.

20              Applying the study at AU to Texas, I came up

21     with a very rough estimate that somewhere between 150,

22     162,000 and 400,000 registered voters or perhaps higher

23     is this pool of registered voters in Texas who don't

24     have ID, and it could be a good bit higher because of

25     our lack of knowledge about ID ownership among Hispanic



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006358

TX_00031716

USA_00021240

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 87 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 132 of 226
Hearing - Volume 3                                          April 6, 2009

574

1    citizens.

2              I think that's a conservative estimate but

3    the key, I think, is that there is a body of some

4    significant size that doesn't have a photo ID.

5              UNIDENTIFIED SPEAKER:  And what percentage

6    of -- I'm sorry, I'm not supposed to ask questions.

7              MR. MOORE:  I'm just trying to move through

8    this quickly.

9              The lack of knowledge in the research

10   community is really not Texas' problem.  Texas' problem

11   is the fact that the burden under Section 5 of the

12   Voting Rights Act is on the state to prove to the

13   Department of Justice or the DC court that their change

14   in law will not deny or bridge the right to vote on

15   account of race, color or membership.

16             Mr. Chairman, I was actually pleased to hear

17   your skepticism of the Bush administration's stewardship

18   of the civil rights division and the allegations of

19   politicalization.

20             CHAIRMAN SMITH:  I said some have alleged

21   that.  I wasn't taking a personal position but saying

22   that some people would feel that way.

23             MR. MOORE:  I think the AG's report that

24   came out very recently kind of makes it hard to avoid

25   that but the point I think being is that I don't think



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031717

USA_00021241

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 88 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 133 of 226
Hearing - Volume 3                                         April 6, 2009

575

1    that the Obama administration will necessarily see the

2    pre clearance of the Georgia laws in 2005 and 2006 as is

3    much of a precedent as it might in other circumstances.

4             So, I'm not sure that you're going to get

5    much comfort from that and also the analysis under

6    Section 5 of the Voting Rights Act is very different

7    from the constitutional claims that were presented in

8    the Indiana case.

9             So, I think it's going to be very

10   interesting to see how the Justice Department handles

11   any ID law that comes out of Texas because I think it

12   can be argued that there is -- they have not really had

13   a clean shot at it yet.  I don't know.  And that's -- my

14   opinion is that it's -- that there's not going to be as

15   much of a precedent as there would have been had the

16   allegations of politicalization not surfaced but that's

17   debatable.

18            What you're going to be expected, I think,

19   to show under Section 5 or to the DC court is -- and

20   from my reading of the bill, it seems to be a little

21   less developed than what came out of Georgia in 2006 or

22   what the Indian law was.

23            The law itself doesn't seem to address a lot

24   of the points that I think the Justice Department is

25   going to look for.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031718

USA_00021242

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 89 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 134 of 226
Hearing - Volume 3                                          April 6, 2009

576

1           I think the Justice Department is going to

2    expect Texas to have some knowledge of the number and

3    demographic makeup of affected voters.  We can talk a

4    little bit about exactly who those would be given the

5    smaller change in your law than in some of the other

6    laws.

7           Detailed and rough under public education

8    programs, I think the idea of delaying the law a cycle

9    or two to make -- have those take effect is a good one

10   and one that would be looked favorably upon.

11          Poll worker training is something that has

12   to be addressed specifically.  It's not something that

13   can be assumed to be done under existing structures.

14          There's evidence now -- the (Inaudible)

15   study that I think Representative Anchia has mentioned,

16   which found that poll workers are not applying ID laws

17   in an equitable manner.

18          And so, I think looking at -- having

19   something in the statute -- having something that, you

20   know, addresses that question is going to be important.

21          Programs to distribute required IDs, I do

22   think that the current provision in the Senate Bill for

23   free ID is inadequate compared to what other states have

24   done.  I think it's much stronger just to give everybody

25   a free photo ID and the state absorb that cost.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031719

USA_00021243

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 90 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 135 of 226
Hearing - Volume 3                                        April 6, 2009

577

1          Evidence of voter impersonation problems, I

2     think there's been a lot of attention paid to trying to

3     build that record.

4          And, finally, a detailed discussion of why

5     less retrogressive alternatives, including use of

6     affidavit fail-safes and provisional ballots were not

7     adopted.  I think those were all kind of things that the

8     analysts in the Justice Department are going to go

9     through piece by piece.

10          CHAIRMAN SMITH:  Take your time.  You're the

11     last one.  Nobody is waiting on you.  I don't want to --

12     don't worry about the clock.

13          MR. MOORE:  The -- and much of this has to

14     do with the cost, and the cost is going to be

15     considerable to the state.

16          Indiana, when considering this law,

17     estimated that providing free ID would cost the state

18     more than $700,000 annually in lost revenue and

19     additional expenses.

20          We've heard about Georgia's significant

21     investment in public education that they did after their

22     first law was rejected.  I think those are all things

23     the Justice Department is going to be expecting.

24          And, finally, as an additional cost, the

25     cost to do -- to get this evidence together, submit it



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031720

USA_00021244

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 91 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 138 of 226
Hearing - Volume 3                                      April 6, 2009

578

1      to the Court is going to be -- submit it to the Justice

2      Department is going to be expensive.  If you take it to

3      the DC court and defend it, it's going to be a more

4      drawn out and more expensive charge.  You'll have to pay

5      more lawyers.

6                  CHAIRMAN SMITH:  When you say drawn out, do

7      you mean more timely?

8                  MR. MOORE:  Yeah, it's going to take more

9      time to get it through the DC court.  It's a three-judge

10     panel.  You'd have to take -- you know, it's basically a

11     mini trial, and they'll put it on the rocket docket and

12     they'll move it through but it's still going to be more.

13                 UNIDENTIFIED SPEAKER:  How long do you

14     think -- how much more in terms of time in the DC?

15     That's my understanding where it's probably going.

16                 MR. MOORE:  Right.  If it went to the DC

17     court, I mean (Inaudible) could give you a better

18     estimate of that but it's, you know, six to nine months,

19     I would think and it's going to be much more expensive.

20     It's a more involved thing.

21                 UNIDENTIFIED SPEAKER:  And then after that,

22     you get the litigation, after you get the pre clearance,

23     if you get it?  And I'm asking the question because I'm

24     giving you more time.

25                 MR. MOORE:  No, that's all right.  I'm



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031721

USA_00021245

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 92 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 137 of 226
Hearing - Volume 3                                    April 6, 2009

579

1     just -- I mean, I think the conventional wisdom among

2     Section 5 states is to avoid DC court if at all possible

3     and, obviously, it's an alternative that states take up.

4              I mean, we did the Georgia v. Ashcroft case

5     that was tried before the DC court and it was not taken

6     to the Bush administration Justice Department but that

7     is certainly an option and it's one that states avail

8     themselves of.

9              It would be strange, I think, to do it on a

10    change in election law rather than a redistricting case

11    but it certainly can be done.

12             And, finally, the Carter-Baker law --

13    proposal, which I think has been talked about and I'll

14    be glad to answer any questions about it.  I don't speak

15    for the Commission any longer but was certainly involved

16    with trying to implement and explain their

17    recommendation, and it's a -- it's a little more

18    complicated than I think the advocates on either side

19    try to argue for.

20             Just to wrap up, I'll say that the

21    current -- the debate over the last four or five years

22    since I became involve in it has really been frustrating

23    because it hasn't moved from these polarized extremes in

24    which there's either an ID law or there's not an ID law.

25             And we talk about laws in Georgia and



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006364

TX_00031722

USA_00021246

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 93 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 138 of 226
Hearing - Volume 3                                      April 6, 2009

580

```
 1    Indiana and Texas and Arizona as if they were an ID law
 2    or not, and these are complicated laws, and they have a
 3    lot of nuance, Florida's, for instance, and there's a --
 4    there's ample room for -- for finding compromise in the
 5    middle, for finding provisions that address fears of
 6    fraud but also that take care of the -- I think all
 7    agree the very legitimate fears in the minority
 8    community that it will be used as a tool against them.
 9             So, I would, in wrapping up, just based on
10    my personal experience with these laws over the last
11    four years, is to encourage Texas to use creativity to
12    think through provisions of the law that can address
13    some of these shortcomings, these concerns and try to
14    come to a law that has wider support than what we've
15    seen passed on the partisan basis in Indiana, Georgia
16    and other states.
17             UNIDENTIFIED SPEAKER:  So, I take it from
18    your testimony that you -- in terms of the way
19    provisional ballots are handled, you do find the Florida
20    model to be preferable to Indiana and Georgia as -- or
21    at least certainly as far as Indiana is concerned and as
22    stated in the dissenting opinion of the Supreme Court
23    decision?
24             MR. MOORE:  Well, I'll say that I think the
25    way Florida handled it represented a way to try to get a
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006365

TX_00031723

USA_00021247

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 94 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 139 of 226
Hearing - Volume 3                                      April 6, 2009

581

1      bill -- a broader support and a fail-safe.  I mean, I'm

2      in favor of the affidavits.  I think that's -- because I

3      think in one way it produces a paper trail that you can

4      then go back and investigate impersonation.

5            I mean, if you require a photo ID but have

6      an affidavit fail-safe, then you have an affidavit from

7      everyone who didn't have an ID and that way if you

8      enforce it fairly, you can go back and use those to

9      determine if you have an broader impersonation problem

10     but I think provisionals is another way to do it.

11           UNIDENTIFIED SPEAKER:  And just to be clear,

12     the only difference between the way that Florida handles

13     it and letting anybody just sign an affidavit and

14     vote -- and, you know, the way I look at that it's

15     really just a -- it's almost a nudge in the direction of

16     obtaining and using and getting used to using the proper

17     prescribed identification because the only difference is

18     that in one mechanism these votes that a panel of -- of

19     the public look at and conclude that one signature is

20     not likely to be the same signature as the other

21     person's signature, that in one instance those votes

22     where a majority of this panel conclude is not likely to

23     be the signature of the same person, in one system, they

24     count and in the other system, they do not count, and

25     that really is the only difference between your top



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031724

USA_00021248

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 95 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 140 of 226
Hearing - Volume 3                                        April 6, 2009

582

```
 1        choice of how that is handled and how it is handled in

 2        Florida, would you not agree?  That's the difference?

 3              MR. MOORE:  Yeah, and I think it's a

 4        significant difference.  I think what I've seen it in

 5        and I think what Carter-Baker kind of suggests as well

 6        is that maybe there's a weigh station, maybe you can

 7        have an interim law with affidavits for provisional

 8        ballots that would allow you to better track those

 9        voters who don't have ID and then based on your

10        experience with that law, you could tighten it up or

11        loosen it as needed but given how little we know about

12        the pool of people who don't have the required ID, it's

13        a little bit -- I think a little frightening to --

14              UNIDENTIFIED SPEAKER:  Well, I mean, I don't

15        think there's anybody here that doubts that -- you know,

16        that those are accurate descriptions of the people who

17        do not have photo identifications and -- and that's why,

18        you know, I am not a proponent of the Indiana law.

19        But --

20              And let me ask this question:  When you

21        talked about the number -- your estimate of the number

22        of registered voters in Texas that do not have ID, what

23        percentage of the total registered voters --

24              MR. MOORE:  I took the 2008 registered

25        voters and applied the 1.2 percent that was found across
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031725

USA_00021249

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 96 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 141 of 226
Hearing - Volume 3                                          April 6, 2009

583

1      the three states and that's very rough but if you want

2      an idea of some kind of, I think, firmer number --

3               UNIDENTIFIED SPEAKER:  So, you believe

4      that -- tell me if I'm understanding what you're just

5      saying correctly -- you believe that 98.8 percent of the

6      voters already have the photo identification that is --

7      that would be required in this legislation?

8               MR. MOORE:  I think the number would be a

9      little lower in Texas than some of these other states

10     but it's in that neighborhood of 96, 97, 98 percent of

11     registered voters have ID.  I think it's very high.  And

12     I think four years ago, we thought it was much lower.

13              UNIDENTIFIED SPEAKER:  And I think some

14     people take that statistic of 2 or 3 or whatever it is

15     or 4 percent and get very flippant about it and go,

16     okay, it doesn't matter, it's insignificant.  And I just

17     want you to know that's not my attitude but I think it

18     is important to have some information about the extent

19     of the voters that are currently qualified even if we

20     were to adopt the Indiana law and require them to have a

21     photo ID, which I don't believe there's any chance will

22     occur.

23              Yes, Representative Bonnen.

24              REPRESENTATIVE BONNEN:  Now, are you for or

25     neutral?



# ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031726

USA_00021250

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 97 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 142 of 226
Hearing - Volume 3                                        April 6, 2009

584

1            MR. MOORE:  Neutral on the law.

2            REPRESENTATIVE BONNEN:  So, you're neutral

3     on this.  Okay.

4            You -- you've made the comment -- and I'm

5     just curious what number you would think it would need

6     to be -- that Georgia had a -- I forget the exact word.

7     It's unimportant.  But, you know, you said a good

8     number.  I mean, you didn't say that number but, you

9     know, a pretty decent number, which I believe was a

10    million dollars for voter education or whatever.  The

11    gentleman testified earlier and said that I was not

12    enough, you would guess, for the Justice Department.

13    And so, the population in Georgia is 9.5 million and

14    they did a million dollars.  Currently we're looking at

15    2 million in Texas.  Our population is about 23 million.

16    We pulled it up.  It was 23.5.

17            UNIDENTIFIED SPEAKER:  23.9.

18            REPRESENTATIVE BONNEN:  23.5.  Anyway, 24

19    million.  So -- so, what do you think that number should

20    be?

21            MR. MOORE:  Well, my comment was really not

22    so much about the number as it was the specificity that

23    you can give to the Justice Department to say this is

24    the type of education we're going to be doing and this

25    is the money that we've set aside to do it, in other



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031727

USA_00021251

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 98 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 143 of 226
Hearing - Volume 3                                    April 6, 2009

585

1    words, instead of a figure that's out there that says

2    we're just going to -- generally, we're going to give

3    this towards voter education or give this toward giving

4    IDs to people, the more specificity that you can give

5    and the more it shows a thought out program, the better

6    your chances of getting pre clearance are going to be.

7         REPRESENTATIVE BONNEN:  Another thing you

8    had commented on that maybe I don't understand but I

9    believe in the bill -- I mean, unless I'm wrong -- we

10   would give anyone who doesn't have an ID a free ID.

11        MR. MOORE:  That's not the way that I

12   see the -- the way that I read the provision.  The way

13   that I read the provision is if you only are going to

14   use your ID for voting -- now, I'm not saying that's not

15   enough -- that's up to you but the other state --

16        UNIDENTIFIED SPEAKER:  It's really not up to

17   us, actually.

18        MR. MOORE:  But the other states have said

19   photo IDs are free.  If you come in and get a photo ID,

20   we would have charged you for that before the bill but

21   now it's free.

22        And I think that particularly in Georgia

23   where Judge Murphy had serious problems with the poll

24   tax argument before, that has raised his concern

25   because, just to finish, he felt like that was a fee you



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031728

USA_00021252

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 99 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 144 of 226
Hearing - Volume 3                                          April 6, 2009

586

1    had to pay in order to vote, in other words, you had

2    to -- you had to pay that -- you had to pay a fee in

3    order to get the state document in order to vote, and he

4    felt that was close to a poll tax.  If the cards were

5    free, then it took away that argument.

6              REPRESENTATIVE BONNEN:  Right, and I

7    understand.

8              MR. MOORE:  Yeah.

9              REPRESENTATIVE BONNEN:  Ours says it's free

10   for the use of voting.

11             MR. MOORE:  The way I read the bill, someone

12   who went in to get a card and wanted to have another use

13   for it would probably feel compelled to pay the fee in

14   order to avoid saying that he was only going to use it

15   for voting.

16             REPRESENTATIVE BONNEN:  I think that's a

17   simple clarification.  So, assuming that clarification

18   is made, would that --

19             MR. MOORE:  If the clarification is that all

20   photo IDs are free, not necessarily licenses but you can

21   get a photo ID card for free, as Georgia and Indiana

22   did, yes, I think that would take care of that

23   particular --

24             REPRESENTATIVE BONNEN:  But only that one,

25   right?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006371

TX_00031729

USA_00021253

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 100 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 145 of 226
Hearing - Volume 3                                    April 6, 2009

                                                                587

1            I was curious -- and maybe I missed it --
2    you made the comment about allegations of
3    politicalization, you know.  Where do those come -- I
4    mean, what are you referring to?
5            MR. MOORE:  I think the best documentation
6    of that is in the DOJ's own report on possession of
7    hiring the Justice Department, and I think there's a
8    long record now of congressional testimony about
9    possession.  It's still debatable but my only point was
10   that I think in many ways the original 2005 Georgia pre
11   clearance, which is the key one, has been discredited
12   by a lot of people in the voting rights field, and I'm
13   not sure the Obama Justice Department necessarily see
14   that as the precedent it would under other
15   circumstances.
16           REPRESENTATIVE BONNEN:  I understand that.
17   I guess my concern was, first, the Justice Department is
18   supposed to not be political but, secondly, you know, I
19   know it's Dr. Allen's birthday but even if her birthday
20   wish were to wake up in a nonpolitical world tomorrow,
21   I'm not sure -- as much as you and I and the rest of us
22   would like to deliver that birthday wish to her, I'm not
23   sure how we do it.
24           So, if we're going to -- and I don't know
25   how you stop the politicalization, which I'd love to



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031730

USA_00021254

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 101 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 146 of 226
Hearing - Volume 3                                            April 6, 2009

588

1      see.  I mean, we saw a lot of politicalization here

2      tonight.  I mean, I --

3                MR. MOORE:  Well --

4                REPRESENTATIVE BONNEN:  I don't think you'll

5      ever pre clear anything.  I don't think you'll ever pre

6      clear a redistricting map.  I don't think you'll ever

7      pre clear any voting law issue if it has to be free of

8      politicalization because, unfortunately -- and I am very

9      disturbed by politicalization, quite frankly, it won't

10     end.

11               MR. MOORE:  Well, in all due respect, the

12     problems in the say 2005, 2007 Bush administration were

13     unprecedented and they were politicalization problems

14     and allegations that did not arise, for instance, under

15     the Reagan years and under a very conservative

16     administration of the civil rights division.

17               So, I think it was a unique and very

18     unfortunate and I think that it's becoming very well

19     documented but my only -- I think the only relevance to

20     this is that the civil rights division itself will see

21     the 2005 pre clearance as perhaps less of a precedent

22     than it would under other circumstances but I don't --

23     and I expect you will get a very professional and

24     nonpartisan hearing when you send your law to the civil

25     rights division.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031731

USA_00021255

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 102 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 147 of 226
Hearing - Volume 3                                    April 6, 2009

589

1          Yes, I don't think it was mortally wounded

2     and politically precise.  In fact, in the last few

3     years, the Bush administration itself acknowledged many

4     of the problems and started to move --

5          REPRESENTATIVE BONNEN:  Okay.  Thank you.

6          CHAIRMAN SMITH:  Tell me this, just as a --

7     on the legal issues, to what extent does the Supreme

8     Court opinion influence that review or provide any safe

9     harbors with regard to that process?

10         MR. MOORE:  On the legal basis, it's a

11    different analysis.  We're talking being retrogression

12    to the constitutional analysis.  I'm not going to say

13    that the Crawford opinion will not change the context in

14    which it's -- it's seen.  I mean, these are lawyers who

15    read those cases, and they are going to be influenced by

16    that decision but on a legal basis, on an analytical

17    basis, it's distinct, and this is a before and after

18    analysis of your law as it stands now and this is what's

19    going to be passed.

20         So, it's a distinct analysis but it happens

21    in a climate and certainly the Crawford case makes it --

22    makes ID laws kind of more legitimate in a general way

23    that can't help but impact and influence the pre

24    clearance process.

25         CHAIRMAN SMITH:  So, you're saying that even



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006374

TX_00031732

USA_00021256

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 103 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 148 of 226
Hearing - Volume 3                                              April 6, 2009

590

1      if our law is clearly less onerous or progressive,

2      depending on your perspective, than the Indiana law, you

3      still believe there is a possibility that it could be --

4            MR. MOORE:  I certainly think the Justice

5      Department -- for instance, under Section 5, as you

6      know, the burden is on Texas.  So, the Justice

7      Department, if it wanted to, could simply say Texas has

8      not met its burden and lodge an objection on that basis,

9      or the DC court could regardless of the laws or even

10     whether it believes -- and it's up to you to prove that

11     it's not retrogressive, not up to the Justice Department

12     or the DC court to produce it is.

13           CHAIRMAN SMITH:  Okay.  Yes, Representative

14     Anchia.

15           REPRESENTATIVE ANCHIA:  Yes.  Let's talk a

16     little bit about Carter-Baker, and if you could

17     reiterate for the committee your involvement in

18     Carter-Baker.

19           MR. MOORE:  I joined Carter-Baker in 2006

20     upon leaving the Justice Department in order to handle

21     the follow-up work, the implementation of their

22     recommendations.  So, I worked there for a little over a

23     year, pushing nonpartisan election administration,

24     trying to, you know -- developing and lending funding

25     for projects such as this and also working with



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031733

USA_00021257

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 104 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 149 of 226
Hearing - Volume 3                                          April 6, 2009

591

```
 1      legislatures and congress members.
 2                In the summer of 2006 there were
 3      congressional debates on federal ID law, and we worked
 4      with congress to try to inform them what the -- what the
 5      Carter-Baker proposal was.
 6                And I think it's important just to -- I
 7      mean, I think it's serving its purpose if it's being
 8      discussed in this hearing.  So, it's good to see that
 9      because that's really what its role was, to promote the
10      debate and the dialogue.
11                But there's some real differences between
12      what they proposed in their recommendation and what has
13      been implemented.
14                REPRESENTATIVE ANCHIA:  And during the --
15      now, the three sessions that we -- we're discussing
16      voter ID, Carter-Baker has been used as support for
17      voter ID on a piecemeal basis wherein people said, hey,
18      Carter-Baker recommended voter ID, let's do voter ID,
19      without acknowledging the remainder of the
20      recommendations.  And there were 87 recommendations,
21      were there not?
22                MR. MOORE:  Right.
23                REPRESENTATIVE ANCHIA:  And -- and after
24      what I think both President Carter and Secretary Baker
25      perceived as kind of a bastardization of Carter-Baker by
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006376

TX_00031734

USA_00021258

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 105 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 150 of 226
Hearing - Volume 3                                          April 6, 2009

592

 1      proponents of voter ID, they wrote a -- they co-wrote an

 2      op-ed in the NEW YORK TIMES stating that their intent

 3      had been misconstrued; is that not right?

 4                  MR. MOORE:  That's right.

 5                  REPRESENTATIVE ANCHIA:  And have you read

 6      that?

 7                  MR. MOORE:  Oh, yes.

 8                  REPRESENTATIVE ANCHIA:  September 23rd,

 9      2005.  In fact, I used it on the House floor, and I was

10      accused of misusing their words, and I tried to explain

11      to the person making the accusation that while, in fact,

12      these are their words -- and they said, and I'll quote,

13      and if you can offer some context after presenting this

14      quote, quote, "Until we have universal registration, we

15      cannot make having such an ID be a condition of voting,"

16      end quote.  Do you recall that part of the op-ed?  Can

17      you put it in a broader context of Carter and Baker and

18      voter ID?

19                  MR. MOORE:  Well, I think Carter and Baker

20      were very disappointed with the Georgia law in 2005,

21      which they thought was a not a very well thought out

22      bill.  I think they were more pleased with the 2006 law,

23      but I still don't think it came up to their

24      expectations.

25                  The Carter-Baker proposal was really a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031735

USA_00021259

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 106 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 151 of 226
Hearing - Volume 3                                          April 6, 2009

593

 1    compromise on the two extremes, and it really wanted us

 2    to move toward universal registration of all voters but

 3    more importantly for the state to take a very

 4    affirmative role in getting people registered to vote.

 5              Now, they didn't really come out all the way

 6    to universal registration but they really wanted the

 7    state to take an affirmative role, to go out and get

 8    people registered to vote and don't put it on their

 9    shoulders and, on the other hand, you're going to

10    improve security by having a photo ID requirement that

11    was tied to the real ID, the -- and kind of a quasi

12    national ID that everybody would have.

13              And -- but part of that, too, was that they

14    saw it happening at a national level.  They wanted to

15    replace what we still had, which was a patchwork of

16    state laws, which -- very dramatically by having a

17    national standard, and that has not come about at all.

18    So, they were really looking at it at the federal level

19    rather than piecemeal state laws.

20              REPRESENTATIVE ANCHIA:  And can you talk a

21    little bit about and give us some context for universal

22    registration?  Again, this is the follow up to

23    Carter-Baker when they were expressing frustration about

24    the implementation of only one leg of the stool, saying,

25    hey, we're doing more security but we're not doing more



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006378

TX_00031736

USA_00021260

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 107 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 152 of 226
Hearing - Volume 3                                    April 6, 2009

594

 1        access, and then they talk a year later -- I guess is

 2        this a year, maybe nine months later about universal

 3        registration.  What do they mean there?

 4               MR. MOORE:  Well, they thought that the real

 5        ID -- the post 911 emphasis on ID would be a mechanism

 6        to register people.  So, for instance, the proposals

 7        that have come up now post 2008 about moving towards

 8        universal registration through populating state voter

 9        registration lists through the DMV, through the

10        licensing list would be one way of moving toward

11        universal registration.

12               So, where by default people are registered

13        and then they're dropped off the list for these reasons

14        but their idea was -- and it's a little esoteric, I

15        think, was to use real ID and this standard ID as a way

16        to register everybody.  You go in to get your real ID

17        and you're registered and it shows up on your license,

18        and so, everybody -- you know, you -- and then the state

19        really takes on the obligation to go out and find

20        everybody and bring them in and register them and get

21        them the ID because they thought the real ID would be

22        something that everybody would have.

23               REPRESENTATIVE ANCHIA:  And -- and in the

24        absence of the implementation of universal registration,

25        can you talk a little bit about what your home state has



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006379

TX_00031737

USA_00021261

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 108 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 153 of 226
Hearing - Volume 3                                      April 6, 2009

595

1       done with same day registration during early vote?  And

2       let's put it in a Texas context and maybe you can draw

3       an analogy.  North Carolina, you can go and do -- you

4       can register early only during early vote.  Those votes,

5       I think, are provisional and --

6                   MR. MOORE:  No, they're regular.

7                   REPRESENTATIVE ANCHIA:  They're regular

8       votes, they're not provisional?  Are they -- are they

9       subject to review by ballot board?

10                  MR. MOORE:  No.  They're regular ballots.

11      It's like same day registration or election day

12      registration.  They walk in and register and vote the

13      same day.

14                  REPRESENTATIVE ANCHIA:  But only during

15      early vote?

16                  MR. MOORE:  That's right.

17                  REPRESENTATIVE ANCHIA:  And do they have to

18      submit some form of ID in North Carolina?

19                  MR. MOORE:  I'm not sure.  I actually live

20      in Virginia.  So, I'm not a North Carolina voter.

21                  REPRESENTATIVE ANCHIA:  Okay.  Okay.  You

22      just went to college there?

23                  MR. MOORE:  Well, I'm a native North

24      Carolinian and went to college there.

25                  REPRESENTATIVE ANCHIA:  Okay.  So, maybe



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006380

TX_00031738

USA_00021262

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 109 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 154 of 226
Hearing - Volume 3                                    April 6, 2009

596

 1      North Carolina -- does North Carolina represent one

 2      opportunity for a state to enhance access to

 3      registration and maybe offset some of the

 4      disenfranchising impact of a voter ID law?

 5              MR. MOORE:  Yes.  And one of the other ways

 6      that North Carolina would be a model is that North

 7      Carolina, like Texas, has really good election offices,

 8      and I work with election -- I work with the 55 election

 9      offices across the country and in the territories.  And

10      North Carolina and Texas, you know, we work with their

11      office, are two of the best in the country.

12              And so, your -- you know, you have an

13      election office that can handle these -- these things.

14      Not every state has the capacity to handle something

15      like same day registration.

16              REPRESENTATIVE ANCHIA:  Who is Robert -- Dr.

17      Robert Pastor.

18              MR. MOORE:  He was executive director of the

19      Carter-Baker Commission.

20              REPRESENTATIVE ANCHIA:  And he strongly

21      cautioned congress in March of 2009, just recently, just

22      last month, that if voter IDs become the entire part of

23      the solution, then they actually become part of the

24      problem.  Are you familiar with his congressional

25      testimony?  And would you think that that congressional



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00031739

USA_00021263

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 110 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 155 of 226
Hearing - Volume 3                                    April 6, 2009

597

 1    testimony is in line with the sentiments expressed by

 2    President Carter and Secretary Baker in their op-ed?

 3              MR. MOORE:  Yes.  And I think Dr. Pastor,

 4    who does a lot of international election work as well,

 5    has been frustrated by the polarization and the kind of

 6    myopic debate on ID and the unwillingness of people in

 7    both parties to see ID as a way to expand the franchise

 8    and increase security and improve elections overall.

 9              REPRESENTATIVE ANCHIA:  Thank you.

10              REPRESENTATIVE BOHAC:  Representative Bohac.

11    Is it your believe that most people who want to be

12    registered to vote are indeed registered to vote through

13    the access laws that we have now?

14              MR. MOORE:  I'm quite sure of it, yeah.

15              REPRESENTATIVE BOHAC:  So, if people want to

16    register to vote, they're probably more than likely

17    registered to vote?

18              MR. MOORE:  Yes.

19              REPRESENTATIVE BOHAC:  A moment ago, you

20    said that real ID would be something everyone has.

21    Assuming that Texas is a country and we mandate -- let's

22    just assume we were and we did say everybody should have

23    an ID, what -- what made Carter-Baker think that it

24    would be so?

25              MR. MOORE:  Well, I think you have to go



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006382

TX_00031740

USA_00021264

598

1    back to when Carter-Baker Commission was meeting and

2    coming up with these recommendations, and this was much

3    closer to 911 and the real ID had some momentum and the

4    resistance to it had not occurred yet.  So, I think

5    there was a belief that this was going to be a quasi

6    national ID implemented through the states.  I don't

7    think that is as realistic now or it seems that way now

8    as it was at the time.  So, I think that in a way they

9    kind of overestimated what real ID was going to be.

10              REPRESENTATIVE BOHAC:  But it just seems to

11   me that these same obstacles that this committee has

12   heard would be the same obstacles that would exist if

13   you called it a Texas ID or a real ID and if it were

14   free or it was not free.  There would be obstacles to

15   access.  I mean, I just see tension between the

16   Carter-Baker report, almost contradictions in some of

17   their concepts, in some of their reclarifications beyond

18   their initial report.

19              MR. MOORE:  Well, that certainly has been

20   one of the criticisms of the Carter-Baker

21   recommendation, particularly from the left, has been

22   that, and there are many people who felt that their

23   recommendation was not all that well thought out, that

24   it was a little bit, you know, off the wall but I think

25   that the core -- and I think they've had trouble



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_006383

TX_00031741

USA_00021265

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 112 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 157 of 226
Hearing - Volume 3                                           April 6, 2009

599

1   communicating their core principle, which was we will

2   trade security at the ballot in exchange for moving

3   toward a more universal registration.

4            REPRESENTATIVE BONNEN:  Right.  But you just

5   testified a moment ago that most of the people who

6   desire to be registered to vote are indeed registered to

7   vote, so, we really kind of have a hundred percent

8   registration in the strict sense that people who want to

9   be registered to vote are registered to vote.

10           MR. MOORE:  You asked me about are the bulk

11  of those people most of those people, and I said yes but

12  there are a lot of people who run into registration

13  problems, people who shift, for instance, their

14  registration from one jurisdiction to another and their

15  registration gets fouled up and then they can't vote a

16  regular ballot like they want.

17           And I think what they were looking at and I

18  think what the United States is moving toward is

19  something more like universal registration where you

20  have a transportable registration and where you're seen

21  to have -- you know, it's very hard to avoid being

22  registered, as opposed to now where the burden is on the

23  voter to keep their registration updated as they move,

24  if they have name changes, all of that.

25           So, I think that most people who -- yes,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031742

USA_00021266

Case 2:13-cv-00193 Document 663-8 Filed on 11/11/14 in TXSD Page 113 of 114
Case 1:12-cv-00128-RMC-DST-RLW Document 214 Filed 06/20/12 Page 158 of 226
Hearing - Volume 3                                          April 6, 2009

                                                              600

1       most people who want to be registered are registered but

2       I don't think that means that there's nothing to be

3       gained from expanding that and improving the

4       registration regime as well.

5                    REPRESENTATIVE BONNEN:  Okay.  Thank you.

6                    CHAIRMAN SMITH:  Did you see a material

7       difference between the letter that they wrote after the

8       report and the report itself?

9                    MR. MOORE:  The letter to the TIMES that was

10      published?

11                   CHAIRMAN SMITH:  Yes.

12                   MR. MOORE:  No.

13                   CHAIRMAN SMITH:  I read it and I didn't

14      really see any difference in that letter that -- versus

15      what I read in the report.  Do you think there's a

16      material difference?

17                   MR. MOORE:  No.  I think they have had

18      trouble communicating what was a compromise measure but

19      that's understandable because they were trying to do

20      something new, I think.

21                   CHAIRMAN SMITH:  So, you made it clear

22      earlier -- I believe you said that they did not come out

23      for universal registration, they encouraged people to

24      move toward more universal registration, would that be a

25      fair description of what they recommended?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_006385

TX_00031743

USA_00021267

Case 2:13-cv-00193  Document 663-8  Filed on 11/11/14 in TXSD  Page 114 of 114
Case 1:12-cv-00128-RMC-DST-RLW  Document 214  Filed 06/20/12  Page 159 of 226
Hearing - Volume 3                                    April 6, 2009

601

1            MR. MOORE:  Yeah.

2            CHAIRMAN SMITH:  And if -- if I'm reading it

3     correctly, I'm looking here at their letter and report,

4     I have read that additional editorial that they wrote

5     and, again, it seems to reflect what is in the report

6     itself but what it says here is:  We're recommending a

7     photo ID system for voters designed to increase

8     registration with a more affirmative and aggressive roll

9     for states in finding new voters and providing free IDs

10    for those without driver's licenses.  That's from

11    their -- the letter from the co-chairs summarizing

12    what's in the report, and they talk about mobile --

13    mobile voter units in the report itself and other -- I

14    suppose they're not intending to limit the mechanism or

15    the manner in which an individual state would engage in

16    aggressive efforts to register more voters.  Do you

17    think that's a fair --

18            MR. MOORE:  Yes.  I think you have to go

19    back to Jimmy Carter's experience overseas in countries

20    that do have universal registration or something more

21    close to it, and what I think their real idea was to

22    change our mindset away from putting the burden on the

23    voter to maintain their voter registration records to

24    putting it on the state to do that.

25            CHAIRMAN SMITH:  And, obviously, if we had



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00031744

USA_00021268