PL073
9/2/2014
2:13-cv-00193
Case 2:13-cv-00193 Document 663-19 Filed on 11/11/14 in TXSD Page 1 of 47
Case 1:12-cv-00128-RMC-DST-RLW Document 215 Filed 06/20/12 Page 152 of 221

# HOUSE OF REPRESENTATIVES
## NOTICE OF FORMAL MEETING

COMMITTEE:     Elections

TIME & DATE:   upon lunch recess
               Monday, May 11, 2009

PLACE:         House Chamber, Desk #69

CHAIR:         Rep. Todd Smith

PL074
Case 2:13-cv-09193   Document 663-19   Filed on 11/11/14 in TXSD   Page 23 of 47
Case 1:12-cv-00128-RMC-DST-RLW   Document 215   Filed 06/20/12   Page 153 of 221   9/2/2014
2:13-cv-00193

## The House Committee on Elections

81st Legislature
May 11, 2009
upon lunch recess
House Chamber, Desk #69

Pursuant to a notice posted on May 11, 2009, the House Committee on Elections met in a formal meeting and was called to order by the chair, Representative Smith, Todd, at 12:22 p.m.

The roll was answered as follows:

Present:        Representatives Smith, Todd; Pena; Allen; Anchia; Bohac; Bonnen; Brown, Betty; Harper-Brown; Heflin (9).

Absent:        None (0).

A quorum was present.

## SB 362

The chair laid out SB 362 as pending business.

The chair explained the measure.

Representative Harper-Brown moved that SB 362, without amendments, be reported favorably to the full house with the recommendation that it do pass and be printed. The motion prevailed by the following record vote:

Ayes:        Representatives Smith, Todd; Bohac; Brown, Betty; Harper-Brown; Heflin (5).

Nays:        Representatives Pena; Allen; Anchia; Bonnen (4).

Present, Not Voting:   None  (0).

Absent:        None  (0).

At 12:24 p.m., on the motion of the chair and without objection, the meeting was adjourned subject to the call of the chair.

_____
Rep. Smith, Todd, Chair

_____

Steven Schar, Clerk

TX_00003093

USA_00022177

PL075
9/2/2014
2:13-cv-00193

By:  Fraser, Estes, Nelson                    S.B. No. 362
     Nichols

                    A BILL TO BE ENTITLED

1                         AN ACT

2  relating to requiring a voter to present proof of identification.

3       BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

4       SECTION 1.  Subchapter A, Chapter 15, Election Code, is

5  amended by adding Section 15.005 to read as follows:

6       Sec. 15.005.  NOTICE    OF    IDENTIFICATION    REQUIREMENTS.

7  (a)  The voter registrar of each county shall provide notice of the

8  identification requirements for voting prescribed by Chapter 63 and

9  a  detailed  description  of  those  requirements  with  each  voter

10 registration certificate issued under Section 13.142 or renewal

11 registration certificate issued under Section 14.001.

12      (b)  The secretary of state shall prescribe the wording of

13 the notice to be included on the certificate under this section.

14      SECTION 2.  Subchapter A, Chapter 31, Election Code, is

15 amended by adding Section 31.012 to read as follows:

16      Sec. 31.012.  VOTER  IDENTIFICATION  EDUCATION.    (a)  The

17 secretary  of  state  and  the  voter  registrar  of  each  county  that

18 maintains  a  website  shall  provide  notice  of  the  identification

19 requirements for voting prescribed by Chapter 63 on each entity's

20 respective  website.   The  secretary  of  state  shall  prescribe  the

21 wording of the notice to be included on the websites.

22      (b)  The secretary of state, in cooperation with appropriate

23 nonprofit organizations as determined by the secretary of state and

24 with  each  party  whose  nominee  for  governor  in  the  most  recent

                              1

USA_00022178

S.B. No. 362

1  gubernatorial general election received 20 percent or more of the

2  total number of votes received by all candidates for governor in the

3  election, shall establish a statewide effort to educate voters

4  regarding the identification requirements for voting prescribed by

5  Chapter 63. The secretary of state may use any available funds,

6  including federal funds, for the purposes of this section.

7      SECTION 3. Section 32.111, Election Code, is amended by

8  adding Subsection (c) to read as follows:

9      (c) The training standards adopted under Subsection (a)

10  must include provisions on the acceptance and handling of the

11  identification presented by a voter to an election officer under

12  Section 63.001.

13      SECTION 4. Subsection (a), Section 32.114, Election Code,

14  is amended to read as follows:

15      (a) The county clerk shall provide one or more sessions of

16  training using the standardized training program and materials

17  developed and provided by the secretary of state under Section

18  32.111 for the election judges and clerks appointed to serve in

19  elections ordered by the governor or a county authority. Each

20  election judge shall complete the training program. Each election

21  clerk shall complete the part of the training program relating to

22  the acceptance and handling of the identification presented by a

23  voter to an election officer under Section 63.001.

24      SECTION 5. Chapter 62, Election Code, is amended by adding

25  Section 62.016 to read as follows:

26      Sec. 62.016. NOTICE OF ACCEPTABLE IDENTIFICATION OUTSIDE

27  POLLING PLACES. The presiding judge shall post in a prominent place

JA_007297

USA_00022179

S.B. No. 362

1   on the outside of each polling location a list of the acceptable
2   forms of photographic and nonphotographic identification.  The
3   notice and list must be printed using a font that is at least
4   24-point.
5        SECTION 6.  Section 63.001, Election Code, is amended by
6   amending Subsections (b), (c), (d), and (f) and adding Subsection
7   (g) to read as follows:
8        (b)  On offering to vote, a voter must present to an election
9   officer at the polling place either:
10            (1)  one form of identification listed in Section
11   63.0101(a); or
12            (2)  two different forms of identification listed in
13   Section 63.0101(b) [the voter's voter registration certificate to
14   an election officer at the polling place].
15        (c)  On presentation of the documentation required by
16   Subsection (b) [a registration certificate], an election officer
17   shall determine whether the voter's name on the registration
18   certificate is on the list of registered voters for the precinct.
19        (d)  If the voter's name is on the precinct list of
20   registered voters and the voter's identity can be verified from the
21   documentation presented under Subsection (b), the voter shall be
22   accepted for voting.
23        (f)  After determining whether to accept a voter, an election
24   officer shall return the voter's documentation [registration
25   certificate] to the voter.
26        (g)  If the requirements for identification prescribed by
27   Subsection (b) are not met, the voter may be accepted for

3

USA_00022180

S.B. No. 362

1  <u>provisional voting only under Section 63.011.  An election officer</u>
2  <u>shall inform a voter who is not accepted for voting under this</u>
3  <u>section of the voter's right to cast a provisional ballot under</u>
4  <u>Section 63.011.</u>

5      SECTION 7.  Effective January 1, 2010, Subsection (a),
6  Section 63.0011, Election Code, is amended to read as follows:

7      (a)  Before a voter may be accepted for voting, an election
8  officer shall ask the voter if the voter's residence address on the
9  precinct list of registered voters is current and whether the voter
10  has changed residence within the county.  If the voter's address is
11  omitted from the precinct list under Section 18.005(c), the officer
12  shall ask the voter if the voter's residence as listed on
13  <u>identification presented by the voter under Section 63.001(b)</u> [the
14  voter's voter registration certificate] is current and whether the
15  voter has changed residence within the county.

16      SECTION 8.  Subsection (a), Section 63.006, Election Code,
17  is amended to read as follows:

18      (a)  A voter who, when offering to vote, presents a voter
19  registration certificate indicating that the voter is currently
20  registered in the precinct in which the voter is offering to vote,
21  but whose name is not on the precinct list of registered voters,
22  shall be accepted for voting <u>if the voter's identity can be verified</u>
23  <u>from the documentation presented under Section 63.001(b)</u>.

24      SECTION 9.  Subsection (a), Section 63.007, Election Code,
25  is amended to read as follows:

26      (a)  A voter who, when offering to vote, presents
27  <u>documentation required under Section 63.001(b) that indicates</u> [a

4

USA_00022181

S.B. No. 362

1  ~~voter registration certificate indicating that~~] the voter is
2  currently registered in a different precinct from the one in which
3  the voter is offering to vote, and whose name is not on the precinct
4  list of registered voters, shall be accepted for voting if <u>the</u>
5  <u>voter's identity can be verified from the documentation and</u> the
6  voter executes an affidavit stating that the voter:

7  　　　　(1)  is a resident of the precinct in which the voter is
8  offering to vote or is otherwise entitled by law to vote in that
9  precinct;

10  　　　　(2)  was a resident of the precinct in which the voter
11  is offering to vote at the time that information on the voter's
12  residence address was last provided to the voter registrar;

13  　　　　(3)  did not deliberately provide false information to
14  secure registration in a precinct in which the voter does not
15  reside; and

16  　　　　(4)  is voting only once in the election.

17  　　　SECTION 10.  Section 63.0101, Election Code, is amended to
18  read as follows:

19  　　　Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.
20  <u>(a)</u>  The following documentation is <u>an</u> acceptable <u>form</u> [~~as proof~~]
21  of <u>photo</u> identification under this chapter:

22  　　　　(1)  a driver's license or personal identification card
23  issued to the person by the Department of Public Safety <u>that has not</u>
24  <u>expired or that expired no earlier than two years before the date of</u>
25  <u>presentation</u> [~~or a similar document issued to the person by an~~
26  ~~agency of another state, regardless of whether the license or card~~
27  ~~has expired~~];

5

USA_00022182

S.B. No. 362

1          (2)  a <u>United States military identification card that</u>
2  <u>contains  the  person's  photograph</u>  [~~form  of  identification~~
3  ~~containing the person's photograph that establishes the person's~~
4  ~~identity~~];
5          (3)  a [~~birth certificate or other document confirming~~
6  ~~birth that is admissible in a court of law and establishes the~~
7  ~~person's identity;~~
8          [~~(4)~~]  United States citizenship <u>certificate</u> [~~papers~~]
9  issued to the person <u>that contains the person's photograph</u>;
10          <u>(4)</u> [~~(5)~~]  a  United  States  passport  issued  to  the
11  person;
12          <u>(5)  a license to carry a concealed handgun issued to</u>
13  <u>the person by the Department of Public Safety; or</u>
14          (6)  [~~official  mail  addressed  to  the  person  by  name~~
15  ~~from a governmental entity;~~
16          [~~(7)~~]  a <u>valid identification card that contains the</u>
17  <u>person's photograph and is issued by:</u>
18              <u>(A)  an  agency  or  institution  of  the  federal</u>
19  <u>government; or</u>
20              <u>(B)  an  agency,  institution,  or  political</u>
21  <u>subdivision of this state.</u>
22      <u>(b)  The following documentation is acceptable as proof of</u>
23  <u>identification under this chapter:</u>
24          <u>(1)  the voter's voter registration certificate or a</u>
25  copy of a current utility bill, bank statement, government check,
26  paycheck, or other government document that shows the name and
27  address of the voter;

6

USA_00022183

S.B. No. 362

1        (2)  official mail addressed to the person by name from

2  a governmental entity;

3        (3)  a certified copy of a birth certificate or other

4  document confirming birth that is admissible in a court of law and

5  establishes the person's identity;

6        (4)  United States citizenship papers issued to the

7  person;

8        (5)  an original or certified copy of the person's

9  marriage license or divorce decree;

10        (6)  court records of the person's adoption, name

11  change, or sex change;

12        (7)  an identification card issued to the person by a

13  governmental entity of this state or the United States for the

14  purpose of obtaining public benefits, including veteran's

15  benefits, Medicaid, or Medicare;

16        (8)  a temporary driving permit issued to the person by

17  the Department of Public Safety;

18        (9)  a pilot's license issued to the person by the

19  Federal Aviation Administration or another authorized agency of the

20  United States;

21        (10)  a library card that contains the person's name

22  issued to the person by a public library located in this state; or

23        (11)  a hunting or fishing license issued to a person by

24  the Parks and Wildlife Department [or

25        [(8)  any other form of identification prescribed by

26  the secretary of state].

27      SECTION 11.  Subsection (a), Section 63.011, Election Code,

7

USA_00022184

S.B. No. 362

1  is amended to read as follows:

2       (a)  A  person  to  whom  Section  63.001(g)  [63.008(b)  or

3  63.009(a)] applies may cast a provisional ballot if the person

4  executes an affidavit stating that the person:

5            (1)  is registered voter in the precinct in which the

6  person seeks to vote; and

7            (2)  is eligible to vote in the election.

8       SECTION 12.  Section  521.422,  Transportation  Code,  is

9  amended by amending Subsection (a) and adding Subsection (d) to

10 read as follows:

11      (a)  Except as provided by Subsection (d), the [The] fee for

12 a personal identification certificate is:

13           (1)  $15 for a person under 60 years of age;

14           (2)  $5 for a person 60 years of age or older; and

15           (3)  $20 for a person subject to the registration

16 requirements under Chapter 62, Code of Criminal Procedure.

17      (d)  The department may not collect a fee for a personal

18 identification certificate issued to a person who states that the

19 person is obtaining the personal identification certificate for the

20 sole purpose of satisfying Section 63.001(b)(1), Election Code,

21 and:

22           (1)  who is a registered voter in this state and

23 presents a valid voter registration certificate; or

24           (2)  who is eligible for registration under Section

25 13.001, Election Code, and submits a registration application to

26 the department.

27      SECTION 13.  Effective January 1, 2010, Sections 63.008 and

8

USA_00022185

S.B. No. 362

1  63.009, Election Code, are repealed.

2      SECTION 14.  As soon as practicable after the effective date
3  of this Act:

4          (1)  the secretary of state shall adopt the training
5  standards and develop the training materials required to implement
6  the change in law made by this Act to Section 32.111, Election Code;
7  and

8          (2)  the county clerk of each county shall provide a
9  session of training under Section 32.114, Election Code, using the
10  standards adopted and materials developed to implement the change
11  in law made by this Act to Section 32.111, Election Code.

12      SECTION 15.  (a)  Except as provided by Subsection (b) of
13  this section, this Act takes effect January 1, 2010.

14      (b)  The changes in law made by Sections 1, 2, 3, 4, and 14 of
15  this Act take effect September 1, 2009.

9

JA_007304

USA_00022186

PL076
Case 2:13-cv-00193 Document 663-19 Filed on 11/11/14 in TXSD Page 13 of 47
Case 1:12-cv-00128-RMC-DST-RLW Document 215 Filed 06/20/12 Page 164 of 221 9/2/2014
2:13-cv-00193

| HOUSE | | SB 362 |
|---|---|---|
| RESEARCH | | Fraser, et al. |
| ORGANIZATION bill analysis | 5/23/2009 | (T. Smith) |

**SUBJECT:**     Requiring a voter to present proof of identification

**COMMITTEE:**   Elections — favorable, without amendment

**VOTE:**        5 ayes — T. Smith, Bohac, B. Brown, Harper-Brown, Heflin

                 4 nays — Peña, Allen, Anchia, Bonnen

**SENATE VOTE:** On final passage, March 18 — 19-12 (Davis, Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini)

**WITNESSES:**   For — Maria Martinez, Brent Munhofen, Immigration Reform Coalition of Texas; Fern McClaugherty, Maria O. Leach, Bea Whitlock, Objective Watchers of the Legal System; James Carter, Republican Party of Bell County; Skipper Wallace, Texas Republican County Chairs Association; Stephan Findley, Republican Party of Texas; Todd Rokita, State of Indiana; John Fund; and 14 individuals; (*Registered, but did not testify*: Tina Benkiser, Derek Ryan, Republican Party of Texas; Russell Duerstine, Tom Green County GOP; Louise Whiteford, Texans for Immigration Reform, Inc; Rebecca Forest, Immigration Reform Coalition of Texas; Ann Hettinger, Beverly Roberts, Concerned Women for America; Bet Pichardo, Village Republican Women's; Jonathan Saenz, Free Market Foundation; MerryLynn Gerstenschlager, Carolyn Galloway, Texas Eagle Forum; Edward Oden, Young Conservatives of Texas; Sarah Von Dran, Galveston Cty; Justin May, College Republicans of Texas; Fred Moses, Collin County Republican Party; Sheila Head, Rusk County Republican Party; Linda Rogers, Texas Republican County Chairmen's Association; and 129 individuals)

                 Against — Justin Levitt, Brennan Center for Justice at NYU School of Law; Mary Scott, AARP of Texas; Anita Privett, League of Women Voters of Texas; Rene Lara, Texas AFL-CIO; Joey Cardenas, Fidel Acevedo, LULAC; Roman Nick Pena, Texas LULAC Veterans Affairs Comm., National LULAC Veterans Affairs Comm.; Gary Bledsoe, Texas NAACP; Jenigh Garrett, NAACP Legal Defense and Educational Fund, Inc; Vickie Karp, Vote Rescue; Terri Burke, The ACLU of Texas; Vanessa Edwards Foster, Texas Gender Advocacy and Information Network; Ramey Ko, Organization of Chinese Americans; Kenneth

SB 362
House Research Organization
page 2

Koym, American International University, Dialogue-Producing
Consortium; Luis Figueroa, Mexican American Legal Defense and
Educational Fund; Lee Medley, United Steelworkers District Council;
Andy Wilson, Public Citizen, Common Cause; Lydia Camarillo, SVREP;
Randall Terrell, Equality Texas; Dustin Rynders, Advocacy, Inc.,
Disability Policy Consortium; Mary Naranjo, Texas Young Democrats,
College Democrats of America; Mark D. Hester, Brain Injury Association
of Texas; Diane Trautman; Randall Buck Wood; and 17 individuals;
(*Registered, but did not testify*: Catherine Blue, ACORN; Bill Stout, Green
Party of Texas; Jodi Park, The Coalition of Texans with Disabilities;
Michael Cunningham, Texas State Building and Construction Trades
Council, AFL-CIO; Karen Renick, Vote Rescue; John Courage, Common
Cause of Texas; Lorena Tule, Longhorn Native American Council,
LULAC, Latino Leadership; Rosa Rosales, Marcelo Tafoya, Maria
Acevedo, Alfredo C. Esparza, Carla Leyva, League of United Latin
American Citizens; Gyl Wadge, Mental Health American of Texas; Boyd
Richie, Texas Democratic Party; Philip Ruiz, Texas Democratic County
Chair Association, Caldwell County Democratic Party; Miriam Arellano,
Longhorn LULAC; Sonia Santana, Ruth Epstein, ACLU of TX; Yannis
Banks, Texas NAACP; Dallas L. Willis, CWA Union; Crystal Molina,
Brown County Election Administration and Voter Registration; Sharon
Shepard, Color of Change; Lilia Ruiz, Camino Real Mexican American
Democrats; Suzy Young, Brown County Elections Office; Amy Casso, La
Fe Policy Research and Education Center; Bruce Elfant; Ed Sills; and 56
individuals)

On — George Hammerlein, Harris County Tax Office; Eric Nichols,
Office of the Attorney General; John Sepehri, Ann McGeehan, Secretary
of State; and three individuals; (*Registered, but did not testify*: Sandra
Lackey, Texas Department of State Health Services-Vital Statistics Unit;
Margaret Spinks, Department of Public Safety; and one individual)

BACKGROUND:    Election Code, sec. 63.001 requires a voter to present a voter registration
certificate to an election officer when offering to vote at a polling place.
Sec. 63.008 establishes that a voter who does not present a voter
registration certificate when offering to vote, but whose name is on the list
of registered voters for the precinct, must be accepted for voting if the
voter executes an affidavit stating that the voter does not have the voter
registration certificate in the voter's possession at the polling place, and
the voter presents proof of identification in a form described in sec.
63.0101, including:

SB 362
House Research Organization
page 3

- a driver's license or personal identification card issued to the person by the Department of Public Safety (DPS) or a similar document issued to the person by an agency of another state, regardless of whether the license or card has expired;
- a form of identification containing the person's photograph that establishes the person's identity;
- a birth certificate or other documentation confirming birth that is admissible in a court of law and establishes the person's identity;
- U.S. citizenship papers or a U.S. passport issued to the person;
- official mail addressed to the person by name from a governmental entity;
- a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or
- any other form of identification prescribed by the secretary of state.

In 2002, Congress enacted the Help America Vote Act of 2002 (HAVA) (42 U.S.C. Sec. 15301 et seq.), a comprehensive law governing state electoral administration. Among other things, HAVA requires first-time registrants who register by mail and have not voted in a federal election — or in cases where a state does not have a computerized, statewide voter registration system — to present, with the registration materials or at the polls, any of the following forms of identification:

- a copy of a current and valid photo identification (the original if voting in person); or
- a copy of a current utility bill, bank statement, or government check, paycheck or other government document that shows the name and address of the voter.

No voter can be turned away at the polls for failure to produce identification, and voters without proper identification in every state have some form of recourse to cast a vote, such as a provisional ballot.

The 78th Legislature in 2003 enacted HB 1549 by Denny to implement changes necessary to Texas law for HAVA compliance.

DIGEST:    *(Rep. Smith intends to offer a complete floor substitute. The following analysis is of the floor substitute.)*

SB 362
House Research Organization
page 4

SB 362 would require a voter at the polling place to present to an election officer one form of photo identification or two different forms of non-photo identification.

The bill would require notice of the identification requirements and enhanced training for election judges. It would establish provisional ballot signature verification committees, enhance the penalties for illegal voting and tampering with voter registration applications, and make intentionally deceiving someone about acceptable forms of identification a crime. It also would authorize free Department of Public Safety ID cards for voting and would require the Secretary of State (SOS) to submit a report to the Legislature detailing reported violations related to deception regarding voter identification.

Acceptable forms of photo identification would include:

- a driver's license or personal ID card issued by DPS that was current or had expired no more than one year earlier;
- a U.S. military ID card that contained a photograph;
- a U.S. citizenship certificate that contained a photograph;
- a U.S. passport;
- a concealed handgun license issued by DPS that contained a photograph;
- a student ID card issued by a public or private institution of higher education that contained a photograph; or
- a valid ID card that contained a photograph and was issued by an agency or institution of the federal government; an agency, institution, or political subdivision of the state; or a tribal organization.

Acceptable forms of non-photo identification would include:

- the voter's voter registration certificate, under certain circumstances;
- a copy of a utility bill, bank statement, government check, paycheck or other government documents that showed the name and address of the voter and was not more than 90 days old;
- official mail addressed to the person by name from a governmental entity, excluding correspondence related to voter registration;
- a certified copy of a birth certificate or other legal document confirming birth;

SB 362
House Research Organization
page 5

- U.S. citizenship papers;
- an original or certified copy of the person's marriage license or divorce decree;
- court records of the person's adoption, name change, or sex change;
- an ID card issued to the person by a state or federal governmental entity for the purpose of obtaining public benefits;
- a temporary driving permit issued by DPS;
- a pilot's license issued by an authorized federal agency;
- a library card issued by a Texas public library that contained the person's name; or
- a hunting or fishing license issued by the Parks and Wildlife Department.

A voter registration certificate would not be an acceptable form of identification the first time a voter voted in an election if the voter did not include the voter's Texas driver's license number, the personal identification card issued by the Department of Public Safety, or the last four digits of the voter's social security number on the registration application, or if those numbers could not be verified by the secretary of state.

A voter whose identity was verified by presenting the documentation described above would be accepted for voting if the voter's name was on the precinct list of registered voters.

A voter whose identity was verified by presenting the documentation described above but who was not on the precinct list of registered voters could be accepted for provisional voting or could be accepted for voting if the election officer could determine from the voter registrar that the voter was registered in the county and the voter executed an affidavit stating that the voter was a resident of the precinct and eligible to vote. After the voter was accepted, the election officer would have to indicate this on the poll list and enter the voter's name on the registration omission list.

On election day, the presiding judge would be required to post in a prominent place on the outside of each polling place a list of the acceptable forms of photo and non-photo identification. The information would have to be in a font that was at least 24-point.

TX_00003639

USA_00022191

SB 362
House Research Organization
page 6

Effective September 1, 2009, the training standards for election judges
would have to include training on the acceptance and handling of the
required identification from voters.

**Provisional ballots**. A voter who did not present proof sufficient to meet
the identification requirements described above would be allowed to cast a
provisional ballot. A voter accepted for provisional voting would have six
days after the election to present the proof of identification to the voter
registrar for examination by the early voting ballot board.

For a voter who was not accepted for voting, the elections officer would
have to inform the voter of the voter's right to cast a provisional ballot and
provide the voter with written information that listed the requirements for
identification; stated the procedure for when and where to present the
required identification; included a map showing the location where
identification would have to be presented; and stated the procedure for
signature verification. The information would have to include notice that if
the voter returned to the registrar within the required time period and
presented identification, the voter would not have to rely on the signature
verification committee to determine if the ballot would be accepted.

A voter who was allowed to cast a provisional ballot because the voter did
not present the required identification would have to execute an affidavit
stating that the voter was a registered voter in the precinct and eligible to
vote. The affidavit would have to include space for the election officer to
indicate if the voter presented the required identification and what form
the identification was. Until January 1, 2013, the affidavit would have to
include a space for the person to note reasons the person's signature may
not match the signature on the voter registration application or other public
record.

A provisional ballot would be accepted by the early voting ballot board if
the board determined that the person was eligible and the voter met the
identification requirements at the time the person voted or within six days
after the election. For an election held on or before January 1, 2013, the
provisional ballot would be accepted if the voter presented one form of
non-photo ID and the signature verification committee verified the voter's
signature. This provision would not apply to a first-time voter whose voter
registration application did not include the number of the voter's driver's
license or DPS identification card or the last four numbers of the voter's
Social Security number and was not otherwise verified.

TX_00003640

USA_00022192

SB 362
House Research Organization
page 7

The bill would establish criteria for a bipartisan provisional ballot
signature verification committee and would establish the appointing
authority for each kind of election and the necessary steps for verifying
signatures. A committee would have at least five members.
Subcommittees would be authorized. The bill would set forth
qualifications for members, including that they be a qualified voter of the
area in which the election was being held. This provision would expire
January 1, 2013.

SB 362 would amend the Transportation Code, sec. 521.422, to prohibit
DPS from collecting a fee for a personal identification certificate issued to
an eligible voter who stated the ID certificate was to comply with the
identification requirements for voting.

SB 362 would make intentionally deceiving someone regarding acceptable
forms of identification required for voting a class A misdemeanor (up to
one year in jail and/or a maximum fine of $4,000). A violation would be
subject to criminal investigations and other enforcement proceedings
allowed under current law.

The bill also would amend the Penal Code, sec. 37.10(c) to make
tampering with a voter registration application a state jail felony (180 days
to two years in a state jail and an optional fine of up to $10,000), unless
the intent was to harm or defraud another, in which case the offense would
be a third-degree felony (two to 10 years in prison and an optional fine of
up to $10,000). The bill would also increase the penalty for illegal voting
from a third-degree felony to a second-degree felony (two to 20 years in
prison and an optional fine of up to $10,000), unless the person was
convicted of an attempt. In that case, the offense would be a state jail
felony, up from a class A misdemeanor.

**Voter education and notice of identification requirements.** Beginning
September 1, 2009, voter registrars of each county would be required to
provide notice of the identification requirements for voting and a detailed
description of those requirements with each initial and renewal voter
registration certificate issued.

The secretary of state and the voter registrar of each county that
maintained a website would have to provide notice of identification
requirements for voting on their websites. The secretary of state, in
cooperation with each party whose nominee for governor in the most

TX_00003641
JA_007311

TX_00003641

USA_00022193

SB 362
House Research Organization
page 8

recent gubernatorial general election received 20 percent or more of the votes, would establish a statewide effort to educate voters about the identification requirements for voting.

Beginning September 1, 2009, an election officer would have to distribute to voters who, when offering to vote, presented identification that would not comply with SB 362, written notice of identification that would be required for voting beginning with elections held after January 1, 2011, and information on how to obtain free identification. This section would expire September 1, 2011.

The bill would require the secretary of state to submit an annual report to the Legislature regarding the reported violations of the deceptive practices prohibited in the bill for the preceding year and sets forth the required elements of the report. The secretary of state would be authorized to withhold specific information if the disclosure would interfere with an ongoing investigation.

By September 1, 2009, Chapter 19 state funds used to finance voter registration also would be used for additional expenses related to coordinating and expanding voter registration. Only voter registrars could use these funds.

The change in law made by the bill would not take effect unless the Legislature appropriated to the SOS for the 2009-2011 fiscal biennium $3.75 million for voter registration and $3.75 million to fund voter education programs. Funds appropriated for voter registration could not be used until after the general election for state and county officers in November 2010. Voter registration activities would have to be race-neutral without regard to the socioeconomic status of the population and conducted by county employees. Voter registrars would be required to report to the SOS on the activities.

The bill would repeal sections related to voters whose names were not on the list of registered voters and would make conforming changes.

SB 362 would require the secretary of state to adopt training standards and materials, as soon as practicable, to implement the bill.

The bill would take effect January 1, 2011.

TX_00003642

USA_00022194

SB 362
House Research Organization
page 9

**SUPPORTERS SAY:**

SB 362 would protect and strengthen the electoral system by requiring voters to present identification at the polls. The bill would establish a uniform standard, reduce voter fraud, bring voting in line with other transactions that require proper identification, and raise the bar in restoring election integrity.

Because of the comprehensive nature of the bill, the law would not go into effect until January of 2011 in order to educate Texans on the new requirements. The bill would seek to ensure that voters who presented proper identification at a polling location but whose registration could not be confirmed, including due to clerical errors, could vote provisionally and have their votes counted. To help in the transition for the first two years of the new requirements, voters who did cast a provisional ballot and provided at least one form of acceptable non-photo ID could have their ballot considered by a signature verification committee. To enhance security, first-time voters who did not provide their driver's license numbers or personal ID numbers, or their social security numbers when registering to vote, or whose numbers could not be verified under existing law, would not be eligible to participate in the signature match process.

Voter fraud drives honest citizens out of the democratic process and breeds distrust of government. Many circumstances in everyday life require a photo ID, including air travel and cashing checks. Society has adapted to the requirements and benefited from the safeguards. When non-citizens, dead people, or otherwise unqualified individuals are on the voter roles, illegal votes will be cast, which cancels out legitimate votes. Stricter identification requirements would not impose an unreasonable burden on voters. Instead, they would protect the rights of citizens, restore confidence that legitimate votes are counted, and serve as a reasonable precaution to prevent ineligible people from voting. Guaranteeing the integrity of elections requires implementing security measures, and requiring identification from voters at the polls is a security measure. Proper identification is necessary to ensure that voters are who they say they are, that voters cast only one ballot each, and that ineligible voters — including illegal immigrants, felons, and persons using the names of deceased voters — are not allowed to vote. Cheating at the polls makes a mockery of the electoral process and dilutes the vote of every honest citizen.

SB 362
House Research Organization
page 10

In-person voting fraud is a problem in Texas but hard to detect and prevent
without a voter ID requirement. Election officials cannot discover voter
impersonation if they do not have the tools they need to detect it.
Currently, all that is needed to vote is a voter registration certificate, and
individuals are not required to show identification to register to vote.
Without a requirement that voters prove their identity at the polls, anyone
could vote with anyone else's voter certificate. Given these minimal
screening efforts, there is no way to know how many ineligible voters slip
through the system. Requiring voter identification at the polls would
prevent individuals from voting with fraudulent voter registration
certificates as well as double voting.

In May 2007, the Texas Conservative Coalition Research Institute
reported that Harris County cancelled 3,742 registered voters for non-
citizenship, with 683 of those cancellations occurring between 2000 and
2007. The non-citizens were discovered when they were called for jury
duty and claimed non-citizenship as an excuse not to serve. There is
nothing that would have prevented these non-citizens from voting.

While measures of fraud or multiple voting in U.S. elections are
comparatively rare, even a small amount of fraud could tip a close or
disputed election, and the perception of possible fraud contributes to low
confidence in the electoral system. For this reason, the Commission on
Federal Election Reform, led by former President Jimmy Carter and
former Secretary of State James A. Baker III, concluded that a properly
administered identification system could deter, detect, or eliminate several
potential avenues of fraud, such as multiple voting or voter impersonation.
The commission, which was formed to recommend ways to raise public
confidence in the electoral system, also expressed concern that differing
requirements from state to state could be a source of discrimination and
said that a single, uniform ID for voting purposes, along the lines of Real
ID, would be less discriminatory. It would ensure fair and equal treatment
of all voters.

Contrary to claims of those who oppose strict ID requirements for voters,
these laws do not suppress voter turnout but instead bolster the public's
faith in the legitimacy of elections and lead to better turnout. An analysis
of voter identification laws by the Heritage Foundation in 2007 concluded
that such requirements have virtually no suppressive effect on reported
turnout. As for claims that the millions of Americans who lack a driver's
license could be deterred from voting, it is difficult to assess accurately the

SB 362
House Research Organization
page 11

number of eligible voters who would be unable to vote because they lacked proper identification, according to the Heritage Foundation. Recent studies show there is a segment of society that is less likely to have a driver's license but the data do not indicate whether those individuals have some other form of ID or would be able to obtain it if state law changed.

Even though voter ID laws in other states have been heavily litigated, plaintiffs in every lawsuit filed against such requirements have been unable to produce a single individual who either did not already have an ID or could not easily get one.

The U.S. Supreme Court upheld last year the constitutionality of Indiana's long-disputed law requiring unexpired government-issued photo identification for voters at the polls. In *Crawford v. Marion County Election Board*, the court ruled that a requirement to produce photo ID imposes only a limited burden on voter's rights and is justified by the state's interest in restoring confidence in elections and deterring fraud. According to the National Conference of State Legislatures, 24 states ask all voters to show some form of identification at the polls. In three of these states — Florida, Georgia, and Indiana — voters must show a photo ID.

Those who claim that strict voter identification would suppress voter turnout among certain groups have been proved wrong because voter ID was a success in the November presidential election. The two states with the strictest voter ID requirements are Indiana and Georgia. Both require a government-issued photo ID. However, Georgia had the largest voter turnout in its history. In Indiana, the turnout of Democratic voters was the largest increase in Democratic turnout of any state in the country. According to the Joint Center for Political and Economic Studies, African-American turnout in the 2008 election was at an historic high.

The bill would not force anyone to bear great costs in obtaining the necessary identification. While many citizens undoubtedly would choose to present a Texas driver's license out of convenience, the bill would allow a voter to obtain a personal identification card at no cost. State and local authorities can educate voters about the forms of identification that they would have to bring to the polls, and even if there is some initial confusion, voters quickly would learn what they should bring to the polls in order to vote.

TX_00003645
JA_007315

TX_00003645

USA_00022197

SB 362
House Research Organization
page 12

**OPPONENTS
SAY:**

The voter ID requirements in SB 362 would create substantial obstacles for certain groups that disproportionately lack proof of identification, including the elderly, minorities, low-income voters, and disabled persons — and would require them to obtain such identification for the sole purpose of voting. By placing an extra burden on voters who were otherwise qualified to vote, the bill effectively would lead to the needless disenfranchisement of many voters. Claims that voter fraud make it necessary to enact such laws are not supported by evidence. In fact, the actual impact of stricter ID requirements would not be a reduction of voter fraud, but the suppression of legitimate votes. Citizens seeking to exercise their right to vote would be hassled and frustrated for no good reason.

While almost all voter fraud involves mail-in ballots, the bill would do nothing to make mail-in balloting more secure. Instead, it would attempt to address the nonexistent problem of voter impersonation at the polls. Policymakers should examine empirical data to weigh the tradeoffs between ballot security and ballot access before enacting voter ID requirements. Advocates for strict ID requirements say that there is widespread fraud that must be stopped no matter how many academic and governmental studies and investigations show that polling place fraud of the type sought to be prevented by the bill rarely occurs.

There is little to suggest that requiring photo ID would protect elections from fraud. There is no evidence of organized, widespread voter fraud at the polls, and cases of voter impersonation are anecdotal at best. In fact, after a five-year investigation of voter fraud, the U.S. Department of Justice revealed virtually no evidence of any organized effort to skew elections. It would be difficult to perpetrate the kind of fraud in an amount necessary to tip an election. It is riskier and less likely to swing an election than fraudulent mail-in ballots or hacking into voting machines.

Most allegations of non-citizen voting and "dead people" voting do not uncover evidence of a concerted effort to improperly influence elections. Evidence does show, however, that voter error and administrative and clerical errors often explain the allegations. Of all of the election related violations prosecuted in Texas over a six-year period, most of the cases involved mail-in ballots, campaign finance violations, unlawful conduct at a polling place, and ballot-related violations.

A study issued by Rutgers and Ohio State universities prepared for the federal Election Assistance Commission indicates that minorities could be

TX_00003646

USA_00022198

SB 362
House Research Organization
page 13

negatively affected by identification requirements and that voter
identification requirements should be limited to the minimum needed to
prevent duplicate registration and ensure eligibility. Similarly, advocates
for the disabled say that a more restrictive voter ID law would
disenfranchise many disabled Texans. Many people with disabilities do
not drive, have accessible transportation, or have ready access to requested
form of photo identification.

Many Americans mistakenly believe that almost all U.S. adults have a
driver's license, but according to the Carter-Baker Commission, an
estimated 12 percent of voting-age Americans, or 20 million people, do
not. So, thousands, perhaps millions, of eligible voters could be
disenfranchised. The percentage is even higher for seniors, women whose
names have changed, people of color, people with disabilities, low-income
voters, and students. Many of those citizens find it hard to get such IDs
because the underlying documentation — the ID one needs to get ID — is
often difficult to come by. There is also concern about the potential for
discrimination by poll workers who do not administer these procedures
fairly and voters being denied the right to vote because of discrepancies in
addresses and names between the ID and voter registration cards or voter
rolls.

A study by New York University's Brennan Center for Justice in 2006
found that 52 percent of married women do not have a birth certificate in
their current name and 18 percent of citizens over the age of 65 do not
have current government-issued photo ID. The costs, in both time and
money, of obtaining the necessary documents could deter voting, resulting
in lower voter turnout among those without easy access to government
offices.

In a 2007 Michigan Law Review article, George Washington University
law professor Spencer Overton wrote, "while a small amount of voter
fraud hypothetically could determine a close election, the exclusion of 20
million Americans who lack photo ID could erroneously skew a larger
number of elections."

Texas already has taken steps to lessen the threat of fraud, including the
implementation of HAVA requirements. Current registration requirements
are sufficient because prospective Texas voters must either establish their
identity during the registration process or when they show up at the polls
to vote. Registrants also must swear that they are U.S. citizens under

TX_00003647

USA_00022199

SB 362
House Research Organization
page 14

penalty of perjury. Falsely claiming citizenship and voting fraud are federal offenses. HAVA requires each state to cull its voter registration database lists by removing any voters who are deceased or lose their right to vote through felony conviction. States also are required to remove any voter who does not vote in two consecutive federal general elections and does not respond to a notice of removal, although no registrant may be removed solely for failing to vote.

While defenders of voter ID law claim it is justified because they perceive a need to bolster confidence in the electoral process, it would be better to educate the American electorate on the real problems. An essay in the Harvard Law Review last year reported that while more voters perceive that voter fraud occurs at least occasionally, this perception was not related to an individual's likelihood of turning out to vote.

In its interim report to the 80th Legislature, the House Committee on Elections did not find any non-citizen voting or voter impersonation and reported that overall, most allegations of election fraud that appear in the news or result in indictments are from early, mail-in ballots. Likewise, the Senate State Affairs Committee in its interim report to the 80th Legislature found that the highest concentration of voter fraud is in the vote-by-mail process. Although voter ID laws have been heavily litigated in other states, supporters of these laws have been unable to produce a single case of voter impersonation at the polls.

Similar legislation approved in several other states, including Missouri and Arizona and in Albuquerque, New Mexico, has been invalidated by the courts or is being challenged. In addition, while citizens are required to show proof of their identity in situations ranging from boarding an airplane and renting movies, none of those activities is a constitutional right. Texas should attempt to curb real voter fraud, vigorously investigate allegations of election fraud, and utilize the fullest extent of the law to prosecute violations, rather than enacting a law aimed at solving a nonexistent problem that would do far more harm than good by preventing or discouraging eligible voters from exercising their fundamental right to vote.

| | |
|---|---|
| OTHER OPPONENTS SAY: | Better alternatives exist to address potential problems targeted by voter ID requirements. When executed properly, they would impose less of a burden on eligible Americans than a mandatory ID requirement. The bill would not offer any redress for those who simply do not have the required |

TX_00003648

USA_00022200

SB 362
House Research Organization
page 15

identification. In those instances, signature comparison could be used. Most voters must offer a signature when registering to vote, and this signature is copied for use at the polls. When the voter appears to cast a ballot, he or she must sign the poll book. If the signatures matched, the voter could vote a regular ballot or a provisional ballot that would be counted later. Signature comparison has been used to determine legitimate mail-in ballots, and there is no reason to believe it would be any less reliable. In-person affirmation when a person appears to register to vote is another alternative. The registrant would stand before an election official and positively swear or sign an oath of affirmation that the voter was the person the voter claimed to be. Requiring a sworn statement before an official is an effective deterrent to deception.

Together with accurate cleansing of the registration rolls and the statewide databases that enable states to maintain one central list, citizens could rest assured that votes were being cast legally by eligible voters.

NOTES:    The fiscal note on the Senate-passed version of SB 362 anticipates a cost of $2 million in 2010 to establish a statewide effort to educate voters regarding the identification requirements for voting. The lost revenue for the free personal ID cards cannot be determined because it is unknown how many people would make the request.

During the 2005 regular session, the Legislature considered similar legislation requiring voters to show identification at the polls. HB 1706 by Denny passed the House, but died in the Senate State Affairs Committee. In 2007, HB 218 by B. Brown, passed the House, but died in the Senate.

By: Brown of Kaufman                              H.B. No. 218

A BILL TO BE ENTITLED

1                               AN ACT

2   relating to requiring a voter to present proof of identification.

3       BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

4       SECTION 1.  Section 63.001, Election Code, is amended by

5   amending Subsections (b), (c), (d), and (f) and adding Subsection

6   (g) to read as follows:

7       (b)  On offering to vote, a voter must present to an election

8   officer at the polling place the voter's voter registration

9   certificate and either:

10          (1)  one form of identification listed in Section

11  63.0101(a); or

12          (2)  two different forms of identification listed in

13  Section 63.0101(b) [to an election officer at the polling place].

14      (c)  On presentation of the documentation required by

15  Subsection (b) [a registration certificate], an election officer

16  shall determine whether the voter's name on the registration

17  certificate is on the list of registered voters for the precinct.

18      (d)  If the voter's name is on the precinct list of

19  registered voters and the voter's identity can be verified from the

20  proof presented, the voter shall be accepted for voting.

21      (f)  After determining whether to accept a voter, an election

22  officer shall return the voter's documentation [registration

23  certificate] to the voter.

24          (g)  If the requirements for identification prescribed by

80R1644 JRJ-F                       1

USA_00022202

H.B. No. 218

1   Subsection (b) are not met, the voter may be accepted for
2   provisional voting only under Section 63.011.

3       SECTION 2.  Section 63.006(a), Election Code, is amended to
4   read as follows:

5       (a)  A voter who, when offering to vote, presents a voter
6   registration certificate indicating that the voter is currently
7   registered in the precinct in which the voter is offering to vote,
8   but whose name is not on the precinct list of registered voters,
9   shall be accepted for voting if the voter's identity can be verified
10  from the proof presented.

11      SECTION 3.  Section 63.007(a), Election Code, is amended to
12  read as follows:

13      (a)  A voter who, when offering to vote, presents a voter
14  registration certificate indicating that the voter is currently
15  registered in a different precinct from the one in which the voter
16  is offering to vote, and whose name is not on the precinct list of
17  registered voters, shall be accepted for voting if the voter's
18  identity can be verified from the proof presented and the voter
19  executes an affidavit stating that the voter:

20          (1)  is a resident of the precinct in which the voter is
21  offering to vote or is otherwise entitled by law to vote in that
22  precinct;

23          (2)  was a resident of the precinct in which the voter
24  is offering to vote at the time that information on the voter's
25  residence address was last provided to the voter registrar;

26          (3)  did not deliberately provide false information to
27  secure registration in a precinct in which the voter does not

2

USA_00022203

Case 2:13-cv-00193 Document 663-13 Filed on 11/04/14 in TXSD Page 30 of 47

H.B. No. 218

1    reside; and

2              (4)  is voting only once in the election.

3         SECTION 4.  Section 63.008(a), Election Code, is amended to

4    read as follows:

5         (a)  A voter who does not present a voter registration

6    certificate when offering to vote, but whose name is on the list of

7    registered voters for the precinct in which the voter is offering to

8    vote, shall be accepted for voting if the voter executes an

9    affidavit stating that the voter does not have the voter's voter

10   registration certificate in the voter's possession at the polling

11   place at the time of offering to vote and the voter's identity can

12   be verified from the proof presented [voter presents proof of

13   identification in a form described by Section 63.0101].

14        SECTION 5.  Section 63.0101, Election Code, is amended to

15   read as follows:

16        Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.

17   (a) The following documentation is an acceptable form [as proof] of

18   photo identification under this chapter:

19              (1)  a driver's license or personal identification card

20   issued to the person by the Department of Public Safety that has not

21   expired or that expired no earlier than two years before the date of

22   presentation [or a similar document issued to the person by an

23   agency of another state, regardless of whether the license or card

24   has expired];

25              (2)  a United States military identification card that

26   contains the person's photograph [form of identification

27   containing the person's photograph that establishes the person's

3

USA_00022204

H.B. No. 218

1 identity];

2        (3)  a valid employee identification card that contains

3 the person's photograph and is issued by an employer of the person

4 in the ordinary course of the employer's business [birth

5 certificate or other document confirming birth that is admissible

6 in a court of law and establishes the person's identity];

7        (4)  a United States citizenship certificate [papers]

8 issued to the person that contains the person's photograph;

9        (5)  a United States passport issued to the person;

10        (6)  a student identification card issued by a public

11 or private institution of higher education located in Texas that

12 contains the person's photograph [official mail addressed to the

13 person by name from a governmental entity]; or

14        (7)  a license to carry a concealed handgun issued to

15 the person by the Department of Public Safety.

16   (b)  The following documentation is acceptable as proof of

17 identification under this chapter:

18        (1)  a copy of a current utility bill, bank statement,

19 government check, paycheck, or other government document that shows

20 the name and address of the voter;

21        (2)  official mail addressed to the person by name from

22 a governmental entity;

23        (3)  a certified copy of a birth certificate or other

24 document confirming birth that is admissible in a court of law and

25 establishes the person's identity;

26        (4)  United States citizenship papers issued to the

27 person;

4

USA_00022205

H.B. No. 218

1         (5) an original or certified copy of the person's

2 marriage license or divorce decree;

3         (6) court records of the person's adoption, name

4 change, or sex change;

5         (7) an identification card issued to the person by a

6 governmental entity of this state or the United States for the

7 purpose of obtaining public benefits, including veteran's

8 benefits, Medicaid, or Medicare;

9         (8) a temporary driving permit issued to the person by

10 the Department of Public Safety;

11         (9) a pilot's license issued to the person by the

12 Federal Aviation Administration or another authorized agency of the

13 United States;

14         (10) a library card that contains the person's name

15 issued to the person by a public library located in this state; or

16         (11) a hunting or fishing license issued to a person by

17 the Parks and Wildlife Department [or

18         [(8) any other form of identification prescribed by

19 the secretary of state].

20     SECTION 6. Section 63.011(a), Election Code, is amended to

21 read as follows:

22     (a) A person to whom Section 63.001(g), 63.008(b), or

23 63.009(a) applies may cast a provisional ballot if the person

24 executes an affidavit stating that the person:

25         (1) is a registered voter in the precinct in which the

26 person seeks to vote; and

27         (2) is eligible to vote in the election.

5

USA_00022206

H.B. No. 218

1    SECTION 7.  Section 521.422, Transportation Code, is amended
2  by amending Subsection (a) and adding Subsection (d) to read as
3  follows:
4    (a)  Except as provided by Subsection (d), the [The] fee for
5  a personal identification certificate is:
6        (1)  $15 for a person under 60 years of age;
7        (2)  $5 for a person 60 years of age or older; and
8        (3)  $20 for a person subject to the registration
9  requirements under Chapter 62, Code of Criminal Procedure.
10    (d)  The department may not collect a fee for a personal
11 identification certificate issued to a person who executes an
12 affidavit stating that the person is financially unable to pay the
13 required fee and:
14        (1)  who is a registered voter in this state and
15 presents a valid voter registration certificate; or
16        (2)  who is eligible for registration under Section
17 13.001, Election Code, and submits a registration application to
18 the department.
19    SECTION 8.  This Act takes effect September 1, 2007.

6

USA_00022207

Case 2:13-cv-00193 Document 663-18 Filed on 11/16/14 in TXSD Page 134 of 47

## LEGISLATIVE BUDGET BOARD
Austin, Texas

### FISCAL NOTE, 80TH LEGISLATIVE REGULAR SESSION
Revision 1

**April 16, 2007**

**TO:** Honorable Leo Berman, Chair, House Committee on Elections

**FROM:** John S. O'Brien, Director, Legislative Budget Board

**IN RE: HB218** by Brown, Betty (Relating to requiring a voter to present proof of identification.), **As Introduced**

> **Estimated Two-year Net Impact to General Revenue Related Funds** for HB218, As Introduced: an impact of $0 through the biennium ending August 31, 2009.

**General Revenue-Related Funds, Five-Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2008 | $0 |
| 2009 | $0 |
| 2010 | $0 |
| 2011 | $0 |
| 2012 | $0 |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable Revenue Gain/(Loss) from *TEXAS MOBILITY FUND* 365 |
|---|---|
| 2008 | ($177,060) |
| 2009 | ($177,060) |
| 2010 | ($177,060) |
| 2011 | ($177,060) |
| 2012 | ($177,060) |

**Fiscal Analysis**

The bill would amend Chapter 63 of the Election Code to require a voter to present qualifying identification, as described in the bill, in addition to a voter's registration certificate.

Qualifying identification would be one form of photo identification or two forms of proof of identification. Among the items that would constitute acceptable photo identification would be: a driver's license or personal identification card issued by the Texas Department of Public Safety (DPS) that had not expired, or expired no earlier than two years before the date presented.

The bill would amend Chapter 521 of the Transportation Code to prohibit DPS from collecting a fee for a personal identification certificate issued to a person who executed an affidavit stating that the person was financially unable to pay the required fee, and the person was a registered voter in the state or would be eligible for registration and would submit a registration application to DPS.

USA_00022208

The changes in law made by this bill relating to additional requirements for a registration application would apply only to an application for voter registration submitted on or after the effective date of the bill. This bill would take effect September 1, 2007.

The Department of Public Safety estimates that the provision of the bill that would exempt certain applicants from payment for an identification card would result in an annual revenue loss of $177,060 each fiscal year out of the General Revenue Fund. Additional costs to implement the provisions of the bill are expected to be minimal and could be absorbed within current resources.

**Methodology**

The revenue loss is determined by applying the percentage of the population below poverty level (16.2%) to the estimated number of persons that would register to vote (72,864), the estimated number of persons eligible to execute the affidavit that they are financially unable to pay the fee for an identification card would be 11,804 (72,864 X 16.2% = 11,804). If the fee were waived for these persons, the estimated revenue loss for the Texas Mobility Fund would be $177,060 for each fiscal year (11,804 x $15 = $177,060).

**Technology**

No significant impact to technology is anticipated.

**Local Government Impact**

No fiscal implication to units of local government is anticipated.

**Source Agencies:**  405 Department of Public Safety, 307 Secretary of State, 304 Comptroller of Public Accounts

**LBB Staff:** JOB, MN, MS

USA_00022209

# HOUSE OF REPRESENTATIVES
## NOTICE OF PUBLIC HEARING

COMMITTEE:    Elections

TIME & DATE:    2:00 PM or upon final adjourn./recess
Wednesday, February 28, 2007

PLACE:    E2.028

CHAIR:    Rep. Leo Berman

---

HB 101    Riddle / et al.
Relating to the procedures for registering to vote and accepting a voter at a polling place.

HB 218    Brown, Betty
Relating to requiring a voter to present proof of identification.

HB 265    Anchia
Relating to the registration of voters at a polling place and related procedures.

HB 266    Anchia
Relating to the designation of certain election days as state holidays.

HB 626    King, Phil
Relating to the procedures for registering to vote and accepting a voter at a polling place.

HB 1290    Macias
Relating to the appeal of a decision of the Texas Ethics Commission.

Bills will not necessarily be heard in the order that they are posted.

---

JA_007328

USA_00022210

JA_007329

USA_00022211

### The House Committee on Elections

80th Legislature
February 28, 2007
2:00 p.m. or upon final adjourn./recess
E2.028

## CORRECTED MINUTES

On March 14, 2007, the House Committee on Elections authorized the correction of the minutes for the meeting of the House Committee on Elections held on February 28, 2007. The following are the corrected minutes for that meeting:

Pursuant to a notice posted on February 23, 2007, the House Committee on Elections met in a public hearing and was called to order by the chair, Representative Berman, at 5:00 p.m.

The roll was answered as follows:

Present:            Representatives Berman; Bohac; England; Farias; Howard, Charlie (5).

Absent:            Representatives Anchia; Burnam (2).

A quorum was present.

(Representative Anchia now present.)

(Representative Burnam now present.)

## HB 265

The chair laid out HB 265.

The chair recognized Representative Anchia to explain the measure.

Representative Bohac offered a complete committee substitute.

Testimony was taken.  (See attached witness list.)

The chair recognized Representative Anchia to close on the measure.

The committee substitute was withdrawn without objection.

The bill was left pending without objection.

(Representative England now present.)

USA_00022212

## HB 1290

The chair laid out HB 1290.

The chair recognized Representative Macias to explain the measure.

Testimony was taken. (See attached witness list.)

The chair recognized Representative Macias to close on the measure.

The bill was left pending without objection.

(Representative Farias now present.)

## HB 266

The chair laid out HB 266.

The chair recognized Representative Anchia to explain the measure.

Testimony was taken. (See attached witness list.)

The chair recognized Representative Anchia to close on the measure.

The bill was left pending without objection.

(Representative Bohac now present.)

## HB218, HB626, HB101

The chair laid out HB218, HB626, HB101.

The chair recognized Representative Brown, Betty to explain HB 218.

The chair recognized Representative King, Phil to explain HB 626.

The chair recognized Representative Riddle to explain HB 101.

Testimony was taken. (See attached witness list.)

(Representative Bohac now present.)

The chair closed on  HB 626.

The chair recognized Representative Brown, Betty to close on HB 218.

USA_00022213

The chair recognized Representative Riddle to close on HB 101.

The bills were left pending without objection.

At 10:40 p.m., on the motion of Representative Anchia and without objection, the meeting was adjourned subject to the call of the chair.

_____
Rep. Berman, Chair

_____
Patrick Dudley, Clerk

USA_00022214

WITNESS LIST

Elections Committee

February  28, 2007 - 2:00 PM or upon final adjourn./recess

<u>HB  101</u>

|  | | |
|---|---|---|
| For: | Benkiser, Tina (Republican Party of Texas) | |

                    **For:**      Benkiser, Tina (Republican Party of Texas)

                                 Borden, Bill  (Self)

    Johnson, Ed  (Self)

    Wallace, Skipper (Texas Republican County Chairman's Association State Legislature Chairman)

**Against:**  Camarillo, Lydia (SVREP)

    Courage, John (True Courage Action Network)

    Figueroa, Luis (Mexican American Legal Defense & Education Fund (MALDEF))

    Flippin, Kenneth  (Self)

    Santana, Sonia (ACLU-TX)

    Smith, Bryson McCall (Coalition of Texans with Disabilities)

    Sperry, Teri (True Courage Action Network)

    Vanhoose, Laurie (Advocacy, Incorporated)

**On:**  McFarland, Adrienne (Texas Attorney General's Office)

    McGeehan, Ann (Texas Secretary of State - Elections Division)

Registering, but not testifying:

**For:**  Collins, Mary Ann  (Self)

    Colyandro, John (Texas Conservative Coalition)

    Duerstine, Russ (Tom Green County G.O.P.)

    Galloway, Carolyn (Texas Eagle Forum Citizens for Immigration Reform)

**Against:**  Arthur, Joy (People for the American Way)

    Bailey, Ken (Texas Democratic Party)

    Barrick, Susan  (Self)

    Champion, Mario (Latinos for Texas)

    Cody, Debra (City of College Station)

USA_00022215

Dean, Kathryn (ACLU)

Dorren, Perry  (Self)

Finch, Mary (League of Women Voters of Texas)

Gutierrez, Ysidro  (Self)

Harrell, Will (NAACP of Texas)

Hooks, Connie (City of College Station, Texas)

Jones, Johnnie  (Self)

Littles, Paula (Texas AFL CIO)

Milam, Toni (City of Buda)

Morstad, Tim (AARP)

Pacheco, Rosa E.  (Self and Gray Panthers)

Park, Jodi (Coaltion of Texans w/Disabilities/CTD)

Tafoya, Marcelo  (Self and Lulac (League of Latin American Citizens))

Woodford, Suzy (Common Cause Texas)

On:     Forte, Marty  (Self and Dallas County Republican Party)

Raborn, Steve  (Self and Tarrant County Elections)

HB  218

For:     Benkiser, Tina (Republican Party of Texas)

Borden, Bill  (Self)

Johnson, Ed  (Self)

Wallace, Skipper (Texas Republican County Chairman's Association State Legislature Chairman)

Against:  Camarillo, Lydia (SVREP)

Courage, John (True Courage Action Network)

Figueroa, Luis (Mexican American Legal Defense & Education Fund (MALDEF))

---

Against:  Flippin, Kenneth  (Self)

Santana, Sonia (ACLU-TX)

Smith, Bryson McCall (Coalition of Texans with Disabilities)

Sperry, Teri (True Courage Action Network)

Vanhoose, Laurie (Advocacy, Inc.)

On:     McFarland, Adrienne (Texas Attorney General's Office)

McGeehan, Ann (Texas Secretary of State - Elections Division)

JA_007334

USA_00022216

Registering, but not testifying:

For: Collins, Mary Ann  (Self)

Colyandro, John (Texas Conservative Coalition)

Duerstine, Russ (Tom Green County G.O.P.)

Galloway, Carolyn (Texas Eagle Forum
Citizens for Immigration Reform)

Against: Arthur, Joy (People for the American Way)

Bailey, Ken (Texas Democratic Party)

Barrick, Susan  (Self)

Champion, Mario M. (Latinos for Texas)

Cody, Debra (City of College Station)

Dean, Kathryn (ACLU)

Dorren, Perry  (Self)

Finch, Mary (League of Women Voters of Texas)

Gutierrez, Ysidro  (Self)

Harrell, Will (NAACP of Texas)

Hooks, Connie (City of College Station)

Jones, Johnnie  (Self)

Littles, Paula (Texas AFL CIO)

Milam, Toni (City of Buda)

Morstad, Tim (AARP)

Pacheco, Rosa  (Self and Gray Panthers)

Park, Jodi (Coaltion of Texans w/Disabilities/CTD)

Tafoya, Marcelo  (Self and Lulac (League of Latin American Citizens))

Woodford, Suzy (Common Cause Texas)

On: Forte, Marty  (Self and Dallas County Republican Party)

Raborn, Steve  (Self and Tarrant County Elections)

HB  265 - Committee Substitute  (Bohac)

For: Courage, John (True Courage Action Network)

Debeauvoir, Dana  (Self)

Figueroa, Luis (Mexican American Legal Defense & Educational Fund
(MALDEF)

Flippin, Kenneth  (Self)

JA_007335

USA_00022217

Harrell, Will (NAACP of Texas)

McCall Smith, Bryson (Coalition of Texans with Disabilities)

Santana, Sonia (ACLU-TX)

Vanhoose, Laurie (Advocacy, Inc.)

Against: Benkiser, Tina J. (Self and Republican Party of Texas)

Borden, Bill (Self)

Duerstine, Russ (Tom Green County G.O.P.)

Forte, Marty (Self and Dallas County Republican Party)

Wallace, Skipper (Texas Republican County Chairman's Association State Legislative Chairman)

On: Martinez, Ray (Tx. Conference of Urban Counties)

McGeehan, Ann (Texas Secretary of State - Elections Division)

Raborn, Steve (Self and Tarrant County Elections)

Registering, but not testifying:

For: Bailey, Ken (Texas Democratic Party)

---

For: Barrick, Susan (Self)

Brooks, Jeffrey E. (Texas Public Interest Research Group)

Camarillo, Lydia (SVREP)

Champion, Mario M. (Latinos for Texas)

Dean, Kathryn (ACLU)

Finch, Mary (League of Women Voters of Texas)

Gutierrez, Ysidro (Self)

Isaacson, Nathanael (People for the American Way)

Jones, Johnnie (Self)

Littles, Paula (Texas AFL CIO)

Park, Jodi (Coalition of Texans w/Disabilities/CTD)

Sperry, Teri (True Courage Action Network)

Tafoya, Marcelo (Self and Lulac (League of Latin American Citizens))

Woodford, Suzy (Common Cause Texas)

Against: Collins, Mary Ann (Self)

McElveen, Kenneth (Self)

USA_00022218

HB  266
     For:     Debeauvoir, Dana (County & District Clerks Legislative Cmte)
               Harrell, Will (NAACP of Texas)
               Littles, Paula (Texas AFL-CIO)

     Against:  Borden, Bill  (Self)
               Galloway, Bruce  (Self)
               Wallace, Skipper (Texas Republican County Chairman's Association State Legislative Chairman)

     On:     Martinez, Ray (Tx. Conference of Urban Counties)
               McGeehan, Ann (Texas Secretary of State - Elections Division)

Registering, but not testifying:
     For:     Bailey, Ken (Texas Democratic Party)
               Barrick, Susan  (Self)
               Champion, Mario M. (Latinos for Texas)
               Dean, Kathryn (ACLU)
               Figueroa, Luis (Mexican American Legal Defense & Education Fund)
               Flippin, Kenneth  (Self)
               Gutierrez, Ysidro  (Self)
               Isaacson, Nathanael (People for the American Way)
               Jones, Johnnie  (Self)
               Reeves, Stephen (Christian Life Commission)
               Santana, Sonia (ACLU-TX)
               Sperry, Terri (True Courage Action Network)
               Tafoya, Marcelo  (Self and Lulac (League of Latin American Citizens))
               Woodford, Suzy (Common Cause Texas)

     Against:  Collins, Mary Ann  (Self)

HB  626
     For:     Benkiser, Tina (Republican Party of Texas)
               Borden, Bill  (Self)
               Johnson, Ed  (Self)
               Wallace, Skipper (Texas Republican County Chairman's Association State Legislature Chairman)

USA_00022219

Against:   Camarillo, Lydia (SVREP)

Courage, John (True Courage Action Network)

Figueroa, Luis (Mexican American Legal Defense & Education Fund (MALDEF))

Flippin, Kenneth (Self)

Santana, Sonia (ACLU-TX)

---

Against:   Smith, Bryson McCall (Coalition of Texans with Disabilities)

Sperry, Teri (True Courage Action Network)

Vanhoose, Laurie (Advocacy, Inc.)

On:   McFarland, Adrienne (Texas Attorney General's Office)

McGeehan, Ann (TX Sec. of State - Elections Division)

Registering, but not testifying:

For:   Collins, Mary Ann (Self)

Colyandro, John (Texas Conservative Coalition)

Duerstine, Russ (Tom Green County G.O.P.)

Forte, Marty (Self and Dallas County Republican Party)

Galloway, Carolyn (Texas Eagle Forum Citizens for Immigration Reform)

Against:   Arthur, Joy (People for the American Way)

Bailey, Ken (Texas Democratic Party)

Barrick, Susan (Self)

Champion, Mario (Latinos for Texas)

Cody, Debra (City of College Station)

Dean, Kathryn (ACLU)

Dorren, Perry (Self)

Finch, Mary (League of Women Voters of Texas)

Gutierrez, Ysidro (Self)

Harrell, Will (NAACP of Texas)

Hooks, Connie (City of College Station)

Jones, Johnnie (Self)

Littles, Paula (Texas AFL CIO)

McElveen, Kenneth (Self)

Milam, Toni (City of Buda)

USA_00022220

Morstad, Tim (AARP)
Park, Jodi (Coaltion of Texans w/Disabilities/CTD)
Tafoya, Marcelo  (Self and Lulac (League of Latin American Citizens))
Woodford, Suzy (Common Cause Texas)

On:     Raborn, Steve  (Self and Tarrant County Elections)

HB  1290
On:     Ashley, Natalia Luna (Texas Ethics Commission)

Registering, but not testifying:
For:    Courage, John (True Courage Action Network)

USA_00022221