PL098
9/2/2014
2:13-cv-00193

# SENATE JOURNAL

## EIGHTIETH LEGISLATURE — REGULAR SESSION

## AUSTIN, TEXAS

## PROCEEDINGS

### SIXTY-SECOND DAY
(Tuesday, May 15, 2007)

The Senate met at 11:25 a.m. pursuant to adjournment and was called to order by the President.

The roll was called and the following Senators were present: Averitt, Brimer, Carona, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Jackson, Janek, Lucio, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Shapleigh, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

The President announced that a quorum of the Senate was present.

The Reverend Neal Terwilliger, First Baptist Church, Taylor, offered the invocation as follows:

"Enter into His gates with thanksgiving and into His courts with praise: be thankful unto Him, and bless His name. For the Lord is good; His mercy is everlasting; and His truth endureth to all generations." (Psalms 100:4-5) Eternal God, we come before You today with praise and with thankful hearts. We ask Your hand of blessing to be upon this Senate today. May You give wisdom and guidance to all in attendance today, that they may continue to lead this great state to be a place of love, peace, and prosperity. Allow us to dwell together in unity and like-mindedness that Your favor may continue to shine upon us. May we bless You and not forget all Your benefits to us, Your children. Eternal Father, hear our prayers, we pray. Amen.

Senator Whitmire moved that the reading of the Journal of the proceedings of yesterday be dispensed with and the Journal be approved as printed.

The motion prevailed without objection.

### CO-AUTHOR OF SENATE BILL 961

On motion of Senator Shapleigh, Senator Zaffirini will be shown as Co-author of **SB 961**.

### CO-AUTHORS OF SENATE BILL 1292

On motion of Senator Nelson, Senators Carona, Estes, Harris, and Lucio will be shown as Co-authors of **SB 1292**.

JA_008318

USA_00023200

## CO-AUTHOR OF SENATE BILL 1764

On motion of Senator Uresti, Senator Hinojosa will be shown as Co-author of **SB 1764**.

## CO-AUTHOR OF SENATE JOINT RESOLUTION 43

On motion of Senator Nelson, Senator Lucio will be shown as Co-author of **SJR 43**.

## CO-SPONSORS OF HOUSE BILL 14

On motion of Senator Nelson, Senators Ellis, Gallegos, Hinojosa, Shapleigh, Uresti, Van de Putte, Watson, West, Whitmire, and Zaffirini will be shown as Co-sponsors of **HB 14**.

## CO-SPONSOR OF HOUSE BILL 125

On motion of Senator Van de Putte, Senator Uresti will be shown as Co-sponsor of **HB 125**.

## CO-SPONSOR OF HOUSE BILL 1887

On motion of Senator Whitmire, Senator Patrick will be shown as Co-sponsor of **HB 1887**.

## CO-SPONSOR OF HOUSE BILL 3900

On motion of Senator Shapiro, Senator Van de Putte will be shown as Co-sponsor of **HB 3900**.

## CO-SPONSOR OF HOUSE BILL 3446

On motion of Senator Eltife, Senator Nelson will be shown as Co-sponsor of **HB 3446**.

## PHYSICIAN OF THE DAY

Senator Wentworth was recognized and presented Dr. Tamara Dominguez of San Antonio as the Physician of the Day.

The Senate welcomed Dr. Dominguez and thanked her for her participation in the Physician of the Day program sponsored by the Texas Academy of Family Physicians.

## MESSAGE FROM THE HOUSE

HOUSE CHAMBER
Austin, Texas
May 15, 2007

The Honorable President of the Senate
Senate Chamber
Austin, Texas

Mr. President:

I am directed by the House to inform the Senate that the House has taken the following action:

JA_008319

USA_00023201

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 3 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 38 of
Tuesday, May 15, 2007     SENATE JOURNAL     2063

THE HOUSE HAS PASSED THE FOLLOWING MEASURES:

**SCR 73,** Congratulating Eric R. Bittner for his selection as a 2007 Fellow by the John Simon Guggenheim Memorial Foundation.

**SJR 20,** Proposing a constitutional amendment providing for the issuance of additional general obligation bonds by the Texas Water Development Board to provide assistance to economically distressed areas.

THE HOUSE HAS CONCURRED IN SENATE AMENDMENTS TO THE FOLLOWING MEASURES:

**HB 421** (137 Yeas, 0 Nays, 2 Present, not voting)

**HB 716** (139 Yeas, 0 Nays, 2 Present, not voting)

**HB 2683** (130 Yeas, 11 Nays, 2 Present, not voting)

THE HOUSE HAS REFUSED TO CONCUR IN SENATE AMENDMENTS TO THE FOLLOWING MEASURES AND REQUESTS THE APPOINTMENT OF A CONFERENCE COMMITTEE TO ADJUST THE DIFFERENCES BETWEEN THE TWO HOUSES:

**HB 2261** (non-record vote)
House Conferees: Callegari - Chair/Aycock/Miles/O'Day/Taylor

Respectfully,

/s/Robert Haney, Chief Clerk
House of Representatives

### CONCLUSION OF MORNING CALL

The President at 11:30 a.m. announced the conclusion of morning call.

### COMMITTEE SUBSTITUTE
### HOUSE BILL 218 ON SECOND READING

Senator Fraser moved to suspend the regular order of business to take up for consideration **CSHB 218** at this time on its second reading:

**CSHB 218,** Relating to requiring a voter to present proof of identification.

The motion prevailed by the following vote: Yeas 19, Nays 9.

Yeas: Averitt, Brimer, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Jackson, Janek, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Van de Putte, Watson, West, Zaffirini.

Absent: Hegar, Uresti, Whitmire.

The bill was read second time.

### VERIFICATION OF VOTE

Senator Shapleigh called for a verification of the vote by which the regular order of business was suspended for **CSHB 218**.

JA_008320

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 4 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 39 of
2064          80th Legislature — Regular Session          62nd Day

The President instructed the Secretary of the Senate to call the roll.

The motion to suspend the regular order of business was lost by the following vote: Yeas 20, Nays 11. (Not receiving two-thirds vote of Members present)

Yeas: Averitt, Brimer, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Jackson, Janek, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

### BILLS AND RESOLUTIONS SIGNED

The President announced the signing of the following enrolled bills and resolutions in the presence of the Senate after the captions had been read:

**SB 453, SB 812, SB 883, SB 913, SB 978, SB 1229, SCR 74, SCR 78, HB 862, HB 864, HB 944, HB 1260, HB 1279, HB 1332, HB 1380, HB 1396, HB 1416, HB 1449, HB 1472, HB 1491, HB 1560, HB 1716, HB 1768, HB 1780, HB 1781, HB 1784, HB 1852, HB 1853, HB 1922, HB 1947, HB 1962, HB 1987, HB 2005, HB 2018, HB 2090, HB 2127, HB 2130, HB 2176, HB 2219, HB 2618, HB 2708, HB 2727, HB 2839, HB 3437, HCR 15, HCR 30, HCR 93, HCR 94.**

### (Senator Brimer in Chair)
### COMMITTEE SUBSTITUTE
### SENATE JOINT RESOLUTION 67 ON SECOND READING

On motion of Senator Ogden and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSJR 67** at this time on its second reading:

**CSSJR 67**, Proposing a constitutional amendment authorizing the legislature to permit the Texas Transportation Commission, subject to legislative review and approval, to designate the area adjacent to a state highway project as a transportation finance zone and dedicating the proceeds of the state sales and use taxes imposed in a transportation finance zone to the Texas Mobility Fund for certain purposes.

The resolution was read second time.

Senator Ogden offered the following amendment to the resolution:

**Floor Amendment No. 1**

Amend **CSSJR 67** in SECTION 1 of the bill, in proposed Subsection (e-1), as follows:

(1) On line 33, between "a" and "tax", insert "state"; and

(2) On line 40, strike "shall" and insert "may".

The amendment to **CSSJR 67** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

JA_008321

USA_00023203

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 5 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 40 of
Tuesday, May 15, 2007    SENATE JOURNAL    2005

Senator Watson offered the following amendment to the resolution:

**Floor Amendment No. 2**

Amend **CSSJR 67** as follows:

In SECTION 1 of the joint resolution, in proposed Subsection (e-1), between "the" and "proceeds" (committee printing page 1, lines 32-33), insert, "incremental increase, following the initiation of construction on the highway, in the".

The amendment to **CSSJR 67** was read.

Senator Watson withdrew Floor Amendment No. 2.

On motion of Senator Ogden and by unanimous consent, the caption was amended to conform to the body of the resolution as amended.

**CSSJR 67** as amended was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

### BILLS SIGNED

The Presiding Officer announced the signing of the following enrolled bills in the presence of the Senate after the captions had been read:

**HB 34, HB 35, HB 143, HB 208, HB 233, HB 365, HB 398, HB 402, HB 518, HB 522, HB 630, HB 632, HB 679, HB 732, HB 741.**

### COMMITTEE SUBSTITUTE
### SENATE JOINT RESOLUTION 67 ON THIRD READING

Senator Ogden moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSJR 67** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The resolution was read third time and was passed by the following vote:  Yeas 31, Nays 0.

### (President in Chair)

### HOUSE BILL 3564 ON SECOND READING

On motion of Senator Duncan and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 3564** at this time on its second reading:

**HB 3564**, Relating to the transfer of Angelo State University to the Texas Tech University System.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

USA_00023204

## HOUSE BILL 3564 ON THIRD READING

Senator Duncan moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 3564** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1038 ON SECOND READING

On motion of Senator Lucio and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSB 1038** at this time on its second reading:

**CSSB 1038**, Relating to the regulation of certain lease agreements in manufactured home communities.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1038 ON THIRD READING

Senator Lucio moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1038** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

## HOUSE BILL 75 ON SECOND READING

On motion of Senator Wentworth and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 75** at this time on its second reading:

**HB 75**, Relating to administrative and judicial review of certain decisions about public assistance benefits.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

## HOUSE BILL 75 ON THIRD READING

Senator Wentworth moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 75** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

JA_008323

USA_00023205

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 534 ON SECOND READING

On motion of Senator Seliger and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 534** at this time on its second reading:

**HB 534**, Relating to authorizing the lease or conveyance of certain real property owned by Amarillo College.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 534 ON THIRD READING

Senator Seliger moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 534** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 585 ON SECOND READING

On motion of Senator Deuell and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 585** at this time on its second reading:

**HB 585**, Relating to the jurisdiction of a probate court in certain guardianship proceedings.

The bill was read second time.

Senator Deuell offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **HB 585** by adding the following appropriately numbered section and renumbering the sections of the bill accordingly:

SECTION ___. Section 682A, Texas Probate Code, is amended by adding Subsections (a-1) and (a-2) to read as follows:

(a-1) Notwithstanding any other law, if the applicant who files an application under Subsection (a) of this section or Section 682 of this code is a person who was appointed conservator of a disabled child for whom a court obtains jurisdiction under Section 606(k) of this code, the applicant may present to the court a written letter or certificate that meets the requirements of Section 687(a) of this code.

(a-2) If, on receipt of the letter or certificate described by Subsection (a-1) of this section, the court is able to make the findings required by Section 684 of this code, the court, notwithstanding Section 677 of this code, shall appoint the conservator as

JA_008324

USA_00023206

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 8 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 43 of
2008            80th Legislature — Regular Session            62nd Day

guardian without conducting a hearing and shall, to the extent possible, preserve the terms of possession and access to the ward that applied before the court obtained jurisdiction under Section 606(k) of this code.

The amendment to **HB 585** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator Deuell and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**HB 585** as amended was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 585 ON THIRD READING

Senator Deuell moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 585** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 167 ON SECOND READING

On motion of Senator Hinojosa and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 167** at this time on its second reading:

**HB 167**, Relating to exempting a religious bible from attachment, execution, or other seizure for the satisfaction of debts.

The bill was read second time.

Senator Hinojosa offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **HB 167** (Senate committee printing) as follows:
(1) In SECTION 1, strike the recital (page 1, lines 11-12) and substitute the following:
Section 42.001, Property Code, is amended by amending Subsections (b) and (c) and adding Subsection (e) to read as follows:
(2) In SECTION 1, in amended Subsection (b), Section 42.001, Property Code (page 1, line 24), between "religion" and the period, insert the following:
that is seized by a creditor other than a lessor of real property who is exercising the lessor's contractual or statutory right to seize personal property after a tenant breaches a lease agreement for or abandons the real property
(3) In SECTION 1, following amended Subsection (c), Section 42.001, Property Code (page 1, between lines 28 and 29), insert the following:

JA_008325

USA_00023207

(e) A religious bible or other book described by Subsection (b)(4) that is seized by a lessor of real property in the exercise of the lessor's contractual or statutory right to seize personal property after a tenant breaches a lease agreement for the real property or abandons the real property may not be included in the aggregate limitations prescribed by Subsection (a).

The amendment to **HB 167** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator Hinojosa and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**HB 167** as amended was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 167 ON THIRD READING

Senator Hinojosa moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 167** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 389 ON SECOND READING

On motion of Senator Estes and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 389** at this time on its second reading:

**HB 389**, Relating to the eminent domain authority of Texas Woman's University.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 389 ON THIRD READING

Senator Estes moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 389** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### (Senator Brimer in Chair)

### HOUSE BILL 2322 ON SECOND READING

On motion of Senator Zaffirini and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 2322** at this time on its second reading:

USA_00023208

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 10 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 45 of
2070    80th Legislature — Regular Session    62nd Day

**HB 2322**, Relating to the rate of the hotel occupancy tax imposed by certain counties without a municipality.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 2322 ON THIRD READING

Senator Zaffirini moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 2322** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 1248 ON SECOND READING

On motion of Senator Jackson and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 1248** at this time on its second reading:

**HB 1248**, Relating to the sale of mixed beverages aboard certain passenger vessels.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 1248 ON THIRD READING

Senator Jackson moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 1248** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 2411 ON SECOND READING

On motion of Senator Ogden and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 2411** at this time on its second reading:

**HB 2411**, Relating to school district depositories.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

JA_008327

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 11 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 46 of
Tuesday, May 15, 2007          SENATE JOURNAL                         2071

### HOUSE BILL 2411 ON THIRD READING

Senator Ogden moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 2411** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### COMMITTEE  SUBSTITUTE
### HOUSE BILL 1157 ON SECOND READING

On motion of Senator Seliger and by unanimous consent, the regular order of business was suspended to take up for consideration **CSHB 1157** at this time on its second reading:

**CSHB 1157**, Relating to student services building fees at The University of Texas of the Permian Basin.

The bill was read second time.

Senator Seliger offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSHB 1157** in SECTION 1 of the bill, in added Subdivision (1), Subsection (b), Section 54.5332, Education Code (Senate committee report, page 1, line 23), by striking "$100" and substituting "$150".

The amendment to **CSHB 1157** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator Seliger and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSHB 1157** as amended was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### COMMITTEE  SUBSTITUTE
### HOUSE BILL 1157 ON THIRD READING

Senator Seliger moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSHB 1157** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

USA_00023210

## COMMITTEE SUBSTITUTE
## HOUSE BILL 2251 ON SECOND READING

On motion of Senator Duncan and by unanimous consent, the regular order of business was suspended to take up for consideration **CSHB 2251** at this time on its second reading:

**CSHB 2251**, Relating to advertising by certain insurers.

The bill was read second time.

Senator Duncan offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSHB 2251**, in SECTION 1 of the bill, in added Section 541.082, Insurance Code, by striking Subsection (a) (page 1, lines 15-32) and substituting the following:

(a)  In this section, "insurer" includes:
    (1)  a life insurance company;
    (2)  a health insurance company;
    (3)  an accident insurance company;
    (4)  a general casualty company;
    (5)  a mutual life insurance company or other mutual insurance company;
    (6)  a mutual or natural premium life insurance company;
    (7)  a Lloyd's plan;
    (8)  a county mutual insurance company;
    (9)  a farm mutual insurance company;
    (10)  a reciprocal or interinsurance exchange;
    (11)  a fraternal benefit society;
    (12)  a local mutual aid association;
    (13)  a health maintenance organization;
    (14)  a group hospital service corporation; or
    (15)  a multiple employer welfare arrangement that holds a certificate of coverage under Chapter 846.

The amendment to **CSHB 2251** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator Duncan and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSHB 2251** as amended was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

## COMMITTEE SUBSTITUTE
## HOUSE BILL 2251 ON THIRD READING

Senator Duncan moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSHB 2251** be placed on its third reading and final passage.

JA_008329

USA_00023211

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

## MESSAGE FROM THE HOUSE

HOUSE CHAMBER
Austin, Texas
May 15, 2007

The Honorable President of the Senate
Senate Chamber
Austin, Texas

Mr. President:

I am directed by the House to inform the Senate that the House has taken the following action:

THE HOUSE HAS PASSED THE FOLLOWING MEASURES:

**SB 61,** Relating to the performance of the functions of the governing body of a political subdivision in the event of a disaster.
(Committee Substitute)

**SB 903,** Relating to the continuation and functions of the Office of State-Federal Relations and the administrative attachment of that agency to the office of the governor.
(Committee Substitute/Amended)

**SB 908,** Relating to the continuation and functions of the State Office of Risk Management.
(Committee Substitute)

**SB 1031,** Relating to the administration of certain assessment instruments in public schools; providing a criminal penalty.
(Committee Substitute/Amended)

THE HOUSE HAS CONCURRED IN SENATE AMENDMENTS TO THE FOLLOWING MEASURES:

**HB 1850** (145 Yeas, 0 Nays, 1 Present, not voting)

**HB 2685** (84 Yeas, 56 Nays, 2 Present, not voting)

Respectfully,

/s/Robert Haney, Chief Clerk
House of Representatives

## HOUSE BILL 1194 ON SECOND READING

On motion of Senator Harris and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 1194** at this time on its second reading:

USA_00023212

**HB 1194**, Relating to indemnification of phlebotomists performing services under contract with the Texas Department of Criminal Justice.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 1194 ON THIRD READING

Senator Harris moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 1194** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 86 ON SECOND READING

On motion of Senator Ogden and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 86** at this time on its second reading:

**HB 86**, Relating to tuition rebates provided by general academic teaching institutions to students who participate in the Reserve Officers' Training Corps.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 86 ON THIRD READING

Senator Ogden moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 86** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1308 ON THIRD READING

Senator Wentworth moved to suspend the regular order of business to take up for consideration **CSSB 1308** at this time on its third reading and final passage:

**CSSB 1308**, Relating to the closing of a residential mortgage loan transaction and liability of certain persons involved in the appraisal process.

The motion prevailed by the following vote: Yeas 22, Nays 8.

Yeas: Averitt, Carona, Deuell, Ellis, Estes, Gallegos, Hegar, Janek, Lucio, Nelson, Ogden, Patrick, Seliger, Shapiro, Shapleigh, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays: Brimer, Duncan, Eltife, Harris, Hinojosa, Jackson, Nichols, Uresti.

Absent: Fraser.

The bill was read third time.

JA_008331

USA_00023213

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 15 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 50 of 2075
Tuesday, May 15, 2007          SENATE JOURNAL

Senator Wentworth offered the following amendment to the bill:

**Floor Amendment No. 1 on Third Reading**

Amend **CSSB 1308** in SECTION 2 of the bill as follows:

(1) In added Section 1103.406, Occupations Code (committee printing page 1, line 47), immediately following "who", add ", in connection with a residential mortgage loan,".

(2) In added Section 1103.406, Occupations Code (committee printing page 1, line 55), immediately following "appraisal." add "In this section, "residential mortgage loan" means a loan or agreement to extend credit made to a person and secured by a mortgage or lien on residential real property, including a refinancing or renewal of a loan secured by residential real property."

The amendment to **CSSB 1308** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1 on Third Reading.

Senator Wentworth offered the following amendment to the bill:

**Floor Amendment No. 2 on Third Reading**

Amend **CSSB 1308** (committee report) on page 1, lines 24-25 by striking "and the successors or assigns of the creditor or creditors." and inserting "who provided the residential mortgage loan funds used to close the loan."

The amendment to **CSSB 1308** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 2 on Third Reading.

On motion of Senator Wentworth and by unanimous consent, the caption was again amended to conform to the body of the bill as amended.

**CSSB 1308** as again amended was finally passed by the following vote: Yeas 22, Nays 8.

Yeas: Averitt, Carona, Deuell, Ellis, Estes, Gallegos, Hegar, Janek, Lucio, Nelson, Ogden, Patrick, Seliger, Shapiro, Shapleigh, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays: Brimer, Duncan, Eltife, Harris, Hinojosa, Jackson, Nichols, Uresti.

Absent: Fraser.

### HOUSE BILL 1972 ON SECOND READING

On motion of Senator Duncan and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 1972** at this time on its second reading:

**HB 1972**, Relating to requirements applicable to an attorney ad litem representing a child in a child abuse proceeding.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

USA_00023214

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 16 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 51 of
2076                    80th Legislature — Regular Session              62nd Day

## HOUSE BILL 1972 ON THIRD READING

Senator Duncan moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 1972** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

## COMMITTEE  SUBSTITUTE
## HOUSE BILL 195 ON SECOND READING

On motion of Senator Hegar and by unanimous consent, the regular order of business was suspended to take up for consideration **CSHB 195** at this time on its second reading:

**CSHB 195**, Relating to the transfer of certain abandoned or forfeited property to county or municipal agencies or school districts.

The bill was read second time.

Senator Hegar offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSHB 195** (Senate committee printing) as follows:

(1) On page 1, lines 13 and 14, strike "Article 59.06(b), Code of Criminal Procedure, is amended" and substitute "Article 59.06, Code of Criminal Procedure, is amended by amending Subsection (b) and adding Subsections (b-1) and (b-2)".

(2) On page 1, line 34, strike the colon and substitute the following:
shall maintain any automobile insurance coverage for the vehicle that is required by law.

(b-1)  If a loan is made by a sheriff's office or by a municipal police department, the commissioners court of the county in which the sheriff has jurisdiction or the governing body of the municipality in which the department has jurisdiction, as applicable, may revoke the loan at any time by notifying the receiving agency or district, by mail, that the receiving agency or district must return the loaned vehicle to the loaning agency before the seventh day after the date the receiving agency or district receives the notice.

(b-2)  An agency that loans property under this article shall:
(1)  keep a record of the loan, including the name of the agency to which the vehicle was loaned, the fair market value of the vehicle, and where the receiving agency will use the vehicle; and
(2)  update the record when the information relating to the vehicle changes.

(3)  On page 1 strike lines 35 through 39.

The amendment to **CSHB 195** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator Hegar and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

JA_008333

USA_00023215

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 17 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 52 of
Tuesday, May 15, 2007    SENATE JOURNAL    2077

**CSHB 195** as amended was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### COMMITTEE SUBSTITUTE
### HOUSE BILL 195 ON THIRD READING

Senator Hegar moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSHB 195** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 606 ON SECOND READING

On motion of Senator Shapiro and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 606** at this time on its second reading:

**HB 606**, Relating to certain election procedures for common school district board elections.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 606 ON THIRD READING

Senator Shapiro moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 606** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 2870 ON SECOND READING

On motion of Senator Harris and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 2870** at this time on its second reading:

**HB 2870**, Relating to member contributions to certain retirement, disability, and death benefit systems provided by certain cities and towns.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Absent: Ogden.

USA_00023216

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 18 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 53 of
2078                    80th Legislature — Regular Session                62nd Day

### HOUSE BILL 2870 ON THIRD READING

Senator Harris moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 2870** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 30, Nays 0.

Absent:  Ogden.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 0.  (Same as previous roll call)

### HOUSE BILL 486 ON SECOND READING

On motion of Senator Hegar and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 486** at this time on its second reading:

**HB 486**, Relating to the continuing education requirements for chiefs of police.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Absent:  Ogden.

### HOUSE BILL 486 ON THIRD READING

Senator Hegar moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 486** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 30, Nays 0.

Absent:  Ogden.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 0.  (Same as previous roll call)

### HOUSE BILL 2455 ON SECOND READING

On motion of Senator Seliger and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 2455** at this time on its second reading:

**HB 2455**, Relating to the absence of a student from public school for a required court appearance.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Absent:  Ogden.

USA_00023217

Case 2:13-cv-00193  Document 664-8  Filed on 11/11/14 in TXSD  Page 19 of 78
e 1:12-cv-00128-RMC-DST-RLW  Document 215-4  Filed 06/20/12  Page 54 of
Tuesday, May 15, 2007                SENATE JOURNAL                           2079

## HOUSE BILL 2455 ON THIRD READING

Senator Seliger moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 2455** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 30, Nays 0.

Absent: Ogden.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 0.  (Same as previous roll call)

## SENATE BILL 242 WITH HOUSE AMENDMENTS

Senator Shapiro called **SB 242** from the President's table for consideration of the House amendments to the bill.

The Presiding Officer, Senator Brimer in Chair, laid the bill and the House amendments before the Senate.

### Amendment

Amend **SB 242** by substituting in lieu thereof the following:

### A BILL TO BE ENTITLED
### AN ACT

relating to the transfer to the State Office of Administrative Hearings of contested cases involving the collection, receipt, administration, and enforcement of state taxes and fees by the comptroller.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subchapter A, Chapter 111, Tax Code, is amended by adding Section 111.00455 to read as follows:

Sec. 111.00455. CONTESTED CASES CONDUCTED BY TAX DIVISION OF STATE OFFICE OF ADMINISTRATIVE HEARINGS. (a)  The tax division of the State Office of Administrative Hearings shall conduct any contested case hearing as provided by Section 2003.101, Government Code, in relation to the collection, receipt, administration, and enforcement of:

(1)  a tax imposed under this title; and

(2)  any other tax, fee, or other amount that the comptroller is required to collect, receive, administer, or enforce under a law not included in this title.

(b)  The following are not contested cases under Subsection (a) and Section 2003.101, Government Code:

(1)  a show cause hearing or any hearing not related to the collection, receipt, administration, or enforcement of the amount of a tax or fee imposed, or the penalty or interest associated with that amount, except for a hearing under Section 151.157(f), 151.1575(c), 151.712(g), 154.1142, or 155.0592;

(2)  a property value study hearing under Subchapter M, Chapter 403, Government Code;

(3)  a hearing in which the issue relates to:

(A)  Chapters 72-75, Property Code;

(B)  forfeiture of a right to do business;

(C)  a certificate of authority;

USA_00023218

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 20 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 55 of
2080                          80th Legislature — Regular Session                          62nd  Day

(D)  articles of incorporation;

(E)  a penalty imposed under Section 151.7031;

(F)  the refusal or failure to settle under Section 111.101; or

(G)  a request for or revocation of an exemption from taxation; and

(4)  any other hearing not related to the collection, receipt, administration, or enforcement of the amount of a tax or fee imposed, or the penalty or interest associated with that amount.

(c)  A reference in law to the comptroller that relates to the performance of a contested case hearing described by Subsection (a) means the tax division of the State Office of Administrative Hearings.

SECTION 2.  Section 2003.0411(c), Government Code, is amended to read as follows:

(c)  Except as provided by Section 2003.101, to [To] be appointed a master administrative law judge, a person must have at least 10 years of general legal experience, must have at least six years of experience presiding over administrative hearings or presiding over hearings as a judge or master of a court, and must meet other requirements as prescribed by the chief administrative law judge.

SECTION 3.  Chapter 2003, Government Code, is amended by adding Subchapter D to read as follows:

## SUBCHAPTER D.  TAX DIVISION

Sec. 2003.101.  TAX DIVISION. (a)  The office shall establish a tax division to conduct hearings relating to contested cases involving the collection, receipt, administration, and enforcement of taxes, fees, and other amounts as prescribed by Section 111.00455, Tax Code.

(b)  An administrative law judge in the tax division is classified as a "master administrative law judge II."  Section 2003.0411 does not apply to this section.

(c)  If there are no cases in the tax division, and subject to the prior approval of the comptroller, an administrative law judge in the tax division may conduct hearings for other state agencies.  Before conducting a hearing for another state agency under this subsection, the tax division must notify the comptroller in writing. The notification must describe the case that will be heard and the administrative law judge who will conduct the hearing and must estimate the amount of time that the judge will spend on the case. The office shall reimburse the comptroller at an appropriate hourly rate for the time spent by the administrative law judge on the case.  The comptroller may revoke approval to conduct hearings for other state agencies under this subsection at any time.

(d)  To be eligible to preside at a tax division hearing, an administrative law judge, including a temporary administrative law judge contracted with under Section 2003.043, must:

(1)  be a United States citizen;

(2)  be an attorney in good standing with the State Bar of Texas;

(3)  have been licensed in this state to practice law for at least seven years;

(4)  have substantial experience in tax cases in making the record suitable for administrative review or otherwise; and

JA_008337

USA_00023219

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 21 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 56 of
Tuesday, May 15, 2007                    SENATE JOURNAL                              2081

(5) have devoted at least 75 percent of the person's legal practice to Texas state tax law in at least five of the past 10 years before the date on which the person begins employment in the tax division.

(e) Notwithstanding Section 2001.058, the comptroller may change a finding of fact or conclusion of law made by the administrative law judge or vacate or modify an order issued by the administrative law judge only if the comptroller:

(1) determines that the administrative law judge:

(A) did not properly apply or interpret applicable law, then existing comptroller rules or policies, or prior administrative decisions; or

(B) issued a finding of fact that is not supported by a preponderance of the evidence; or

(2) determines that a comptroller policy or a prior administrative decision on which the administrative law judge relied is incorrect.

(f) The comptroller shall state in writing the specific reason and legal basis for a determination under Subsection (e).

(g) An administrative law judge, on the judge's own motion or on motion of a party and after notice and an opportunity for a hearing, may impose appropriate sanctions as provided by Subsection (h) against a party or its representative for:

(1) filing of a motion or pleading that is groundless and brought:

(A) in bad faith;

(B) for the purpose of harassment; or

(C) for any other improper purpose, such as to cause unnecessary delay or needless increase in the cost of the proceeding;

(2) abuse of the discovery process in seeking, making, or resisting discovery; or

(3) failure to obey an order of the administrative law judge or the comptroller.

(h) A sanction imposed under Subsection (g) may include, as appropriate and justified, issuance of an order:

(1) disallowing further discovery of any kind or of a particular kind by the offending party;

(2) holding that designated facts be deemed admitted for purposes of the proceeding;

(3) refusing to allow the offending party to support or oppose a designated claim or defense or prohibiting the party from introducing designated matters in evidence;

(4) disallowing in whole or in part requests for relief by the offending party and excluding evidence in support of such requests; and

(5) striking pleadings or testimony, or both, wholly or partly, or staying further proceedings until the order is obeyed.

(i) For each hearing conducted under this section, an administrative law judge in the tax division shall issue a proposal for decision that includes findings of fact and conclusions of law. In addition, the proposal for decision must include the legal reasoning and other analysis considered by the judge in reaching the decision. Each finding of fact or conclusion of law made by the judge must be:

(1) independent and impartial; and

JA_008338

USA_00023220

(2)  based on state law and the evidence presented at the hearing.

(j)  The comptroller may not attempt to influence the findings of fact or the administrative law judge's application of the law except by evidence and legal argument.  An administrative law judge conducting a hearing under this subchapter may not directly or indirectly communicate in connection with an issue of fact or law with a party or its representative, except:

(1)  on notice and opportunity for each party to participate; or

(2)  to ask questions that involve ministerial, administrative, or procedural matters that do not address the substance of the issues or positions taken in the case.

(k)  Appearances in hearings conducted for the comptroller by the office may be by:

(1)  the taxpayer;

(2)  an attorney licensed to practice law in this state;

(3)  a certified public accountant; or

(4)  any other person designated by the taxpayer who is not otherwise prohibited from appearing in the hearing.

(l)  The comptroller is represented by an authorized representative in all hearings conducted for the comptroller by the office.

Sec. 2003.102.  SUNSET PROVISION.  (a)  The tax division is subject to Chapter 325 (Texas Sunset Act).

(b)  The Sunset Advisory Commission shall evaluate the tax division every two years and present to the legislature at each regular legislative session a report on that evaluation and the commission's recommendations in relation to the tax division.

(c)  The commission shall submit the first report required under this section to the 82nd Legislature.

(d)  During the regular legislative session at which the commission presented its report and recommendations, the legislature by law may continue the tax division as provided by that chapter for a period not to exceed two years.  If the tax division is not continued in existence as provided by that chapter, the tax division is abolished and this subchapter and Section 111.00455, Tax Code, expire on September 1 of the odd-numbered year in which the regular legislative session occurred.

Sec. 2003.103.  TIMELINESS OF HEARINGS. (a) The tax division shall conduct all hearings under this subchapter in a timely manner.

(b)  The tax division shall use every reasonable means to expedite a case under this subchapter when the comptroller requests that the division expedite the case.

(c)  This section is not intended to impair the independence of the office in conducting a hearing under this subchapter.

Sec. 2003.104.  CONFIDENTIALITY OF TAX DIVISION INFORMATION. (a) The office shall keep information that identifies a taxpayer who participates in a case under this subchapter confidential, including the taxpayer's name and social security number.

(b)  The provision of information to the office that is confidential under any law, including Section 111.006, 151.027, or 171.206, Tax Code, does not affect the confidentiality of the information, and the office shall maintain that confidentiality.

(c)  A hearing conducted under this subchapter is confidential and not open to the public.

JA_008339

USA_00023221

Sec. 2003.105. TAX DIVISION HEARINGS FEE. The office shall charge the comptroller a fixed annual fee rather than an hourly rate for services rendered by the office to the comptroller. The office and the comptroller shall negotiate the amount of the fixed fee biennially to coincide with the comptroller's legislative appropriations request.

Sec. 2003.106. COMPTROLLER'S PRIORITIES AND PUBLIC POLICY NEEDS. (a)  The comptroller shall provide input to the office to assist the office regarding the comptroller's priorities and public policy needs.

(b) This section is intended to assist the office in providing efficient service under this subchapter and is not intended to impair the independence of the office in conducting a hearing under this subchapter.

Sec. 2003.107. TAX DIVISION REVIEW. On request of the comptroller, the office shall provide the comptroller the following regarding the tax division:

(1) a list of the administrative law judges, including temporary administrative law judges, who have heard cases in the division in the past year;

(2) the qualifications of the judges; and

(3) any other information considered necessary by the comptroller in evaluating the performance of the judges hearing cases in the tax division.

Sec. 2003.108. REPORTS. (a)  The office shall provide the comptroller a monthly status report that lists pending cases and provides information on any case that exceeds the comptroller's time lines for issuing a proposal for decision or an agreed order.

(b) At least quarterly, the office shall review with the comptroller and appropriate staff of the office the status of pending cases under this subchapter.

(c) The office shall provide a quarterly report to the comptroller on services performed by the office for the comptroller under this subchapter.

Sec. 2003.109. RULES; EARLY REFERRAL.  (a) The comptroller may adopt rules to provide for the referral to the tax division of issues related to a case described by Section 111.00455, Tax Code, to resolve a procedural or other preliminary dispute between the comptroller and a party.

(b) After a referral under this section, the tax division shall docket the case and assign an administrative law judge under Section 2003.101.  If additional proceedings are required after the consideration of the procedural or other preliminary dispute, the tax division shall appoint the same administrative law judge to hear the case.

SECTION 4. The changes in law made by this Act that relate to the procedures governing a hearing before the tax division of the State Office of Administrative Hearings apply only to a case that is filed with the State Office of Administrative Hearings on or after the effective date of this Act. Procedures relating to a case filed with the State Office of Administrative Hearings before the effective date of this Act shall continue to be used in a hearing as those procedures existed immediately before the effective date of this Act, or as provided by an interagency cooperation contract entered into between the comptroller and the office in effect immediately before the effective date of this Act, and are continued in effect only for that purpose.

JA_008340

USA_00023222

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 24 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 59 of
2084                    80th Legislature — Regular Session                    62nd Day

SECTION 5.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

**Floor Amendment No. 1**

Amend **CSSB 242** by striking Section 2003.102 and substituting the following:
Sec. 2003.102.  SUNSET PROVISION.  (a) The tax division is subject to Chapter 325 (Texas Sunset Act).

(b) The Sunset Advisory Commission shall evaluate the tax division and present to the 82nd Legislature a report on that evaluation and the commission's recommendations in relation to the tax division.

(c) During the regular legislative session at which the commission presents its report and recommendations, the legislature by law may continue the tax division as provided by that chapter. If the tax division is not continued in existence as provided by that chapter, the tax division is abolished and this subchapter and Section 111.00455, Tax Code, expire on September 1 of the odd-numbered year in which the regular legislative session occurred.

The amendments were read.

Senator Shapiro moved to concur in the House amendments to **SB 242**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### SENATE BILL 156 WITH HOUSE AMENDMENT

Senator Shapiro called **SB 156** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Floor Amendment No. 1**

Amend **SB 156** (House committee printing) as follows:

(1)  In SECTION 1 of the bill, in proposed Section 531.458, Government Code (page 5, line 27), between "shall" and "contract" insert "hire or".

(2)  In SECTION 2(b) of the bill (page 8, line 6), strike "December 1, 2007" and substitute "September 1, 2008".

(3)  In SECTION 2 of the bill (page 8, between lines 9 and 10) insert the following:

(c)  Not later than December 1, 2008, the Health and Human Services Commission shall submit a report to the Senate Health and Human Services Committee, or its successor, and the House Human Services Committee, or its successor, regarding the implementation and status of the nurse-family partnership competitive grant program required by Subchapter M, Chapter 531, Government Code, as added by this Act.

(4)  In SECTION 2(c) of the bill (page 8, line 10), strike:

"(c) Not later than December 1, 2008" and substitute "(d) Not later than December 1, 2009".

The amendment was read.

USA_00023223

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 25 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 60 of
Tuesday, May 15, 2007          SENATE JOURNAL                        2083

Senator Shapiro moved to concur in the House amendment to **SB 156**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### HOUSE BILL 2439 ON SECOND READING

On motion of Senator Janek and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 2439** at this time on its second reading:

**HB 2439**, Relating to the functions of local mental health and mental retardation authorities.

The bill was read second time.

Senator Shapleigh offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **HB 2439** (Senate committee printing) as follows:

(1)  In SECTION 6 of the bill, in added Section 533.0359, Health and Safety Code (page 7, line 62), between "AUTHORITIES." and "In", insert "(a)".

(2)  In SECTION 6 of the bill, immediately following the text of added Section 533.0359, Health and Safety Code (page 7, between lines 65 and 66), insert the following:

(b)  The executive commissioner by rule shall prohibit a trustee or employee of a local mental health authority from soliciting or accepting from another person a benefit, including a security or stock, a gift, or another item of value, that is intended to influence the person's conduct of authority business.

The amendment to **HB 2439** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1 except as follows:

Absent:  Ogden.

On motion of Senator Janek and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**HB 2439** as amended was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Absent:  Ogden.

### HOUSE BILL 2439 ON THIRD READING

Senator Janek moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 2439** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 30, Nays 0.

Absent:  Ogden.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 0.  (Same as previous roll call)

JA_008342

USA_00023224

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 26 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 61 of
2080                    80th Legislature — Regular Session                62nd Day

## HOUSE BILL 1524 REREFERRED

Senator Zaffirini submitted a Motion In Writing requesting that **HB 1524** be withdrawn from the Subcommittee on Emerging Technologies and Economic Development and rereferred to the Committee on Business and Commerce.

The Motion In Writing prevailed without objection.

## HOUSE BILL 1952 REREFERRED

Senator Averitt submitted a Motion In Writing requesting that **HB 1952** be withdrawn from the Subcommittee on Emerging Technologies and Economic Development and rereferred to the Committee on Business and Commerce.

The Motion In Writing prevailed without objection.

## COMMITTEE SUBSTITUTE
## HOUSE BILL 1623 ON SECOND READING

On motion of Senator Carona and by unanimous consent, the regular order of business was suspended to take up for consideration **CSHB 1623** at this time on its second reading:

**CSHB 1623**, Relating to certain offenses and fees imposed for operating a motor vehicle or vessel in violation of law.

The bill was read second time.

Senator Carona, on behalf of Senator Ogden, offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSHB 1623**, after SECTION 5 of the bill, by adding new SECTION 6 to read as follows, and renumbering subsequent SECTIONS of the bill accordingly:

SECTION 6.  Section 521.457, Transportation Code, is amended by amending Subsections (e) and (f) and adding Subsection (f-1) to read as follows:

(e)  Except as provided by Subsection (f), an offense under this section is a Class C misdemeanor [punishable by:

    [(1)  a fine of not less than $100 or more than $500; and

    [(2)  confinement in county jail for a term of not less than 72 hours or more than six months].

(f)  If it is shown on the trial of an offense under this section that the person has previously been convicted of an offense under this section or an offense under Section 601.371(a), as that law existed before September 1, 2003, the offense is a Class B [A] misdemeanor.

(f-1)  If it is shown on the trial of an offense under this section that the person has previously been convicted twice or more of an offense under this section or an offense under Section 601.371(a), as that law existed before September 1, 2003, the offense is a Class A misdemeanor.

The amendment to **CSHB 1623** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1 except as follows:

Absent: Ogden.

JA_008343

USA_00023225

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 27 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 62 of
Tuesday, May 15, 2007          SENATE JOURNAL                    2087

Senator Estes offered the following amendment to the bill:

**Floor Amendment No. 2**

Amend **CSHB 1623** (Senate committee printing) as follows:
(1)  Strike SECTIONS 6 and 8 of the bill.
(2)  In Subsection (a), SECTION 10 of the bill, (page 3, lines 1-2), strike "Subject to Subsection (c) of this section, the" and substitute "The".
(3)  Strike Subsection (c), SECTION 10 of the bill (page 3, lines 10-19).
(4)  Renumber existing SECTIONS of the bill as appropriate.

The amendment to **CSHB 1623** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 2 except as follows:

Absent:  Ogden.

Senator Harris offered the following amendment to the bill:

**Floor Amendment No. 3**

Amend **CSHB 1623** as follows:
(1)  Strike SECTION 4 of the bill (committee printing page 1, line 43 through line 49) and substitute:
SECTION 4.  Section 521.054, Transportation Code, is amended by adding Subsection (d) to read as follows:
(d)  A court may dismiss a charge for a violation of this section if the defendant remedies the defect not later than the 20th working day after the date of the offense and pays an administrative fee not to exceed $20. The court may waive the administrative fee if the waiver is in the interest of justice.
(2)  Add the following appropriately numbered SECTIONS to the bill and renumber existing SECTIONS appropriately:
SECTION __.  Section 502.407(b), Transportation Code, is amended to read as follows:
(b)  A justice of the peace or municipal court judge having jurisdiction of the offense may:
(1)  dismiss a charge of driving with an expired motor vehicle registration if the defendant:
(A)  remedies the defect not later than the 20th [10th] working day after the date of the offense or before the defendant's first court appearance date, whichever is later; and
(B)  establishes that the fee prescribed by Section 502.176 has been paid; and
(2)  assess an administrative fee not to exceed $20 [$10] when the charge is dismissed.
SECTION __.  Section 521.026, Transportation Code, is amended to read as follows:

JA_008344

USA_00023226

Sec. 521.026. DISMISSAL OF EXPIRED LICENSE CHARGE. (a) A judge may dismiss a charge of driving with an expired license if the defendant remedies this defect within 20 [10] working days or before the defendant's first court appearance date, whichever is later.

(b)  The judge may assess the defendant an administrative fee not to exceed $20 [$10] when the charge of driving with an expired driver's license is dismissed under Subsection (a).

SECTION __. Section 548.605(b), Transportation Code, is amended to read as follows:

(b)  The court shall:

(1)  dismiss a charge of driving with an expired inspection certificate if:

(A)  the defendant remedies the defect within 20 [10] working days or before the defendant's first court appearance date, whichever is later; and

(B)  the inspection certificate has not been expired for more than 60 days; and

(2)  assess an administrative fee not to exceed $20 [$10] when the charge of driving with an expired inspection certificate has been remedied.

The amendment to **CSHB 1623** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 3 except as follows:

Absent:  Ogden.

On motion of Senator Carona and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSHB 1623** as amended was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Absent:  Ogden.

### COMMITTEE SUBSTITUTE
### HOUSE BILL 1623 ON THIRD READING

Senator Carona moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSHB 1623** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 30, Nays 0.

Absent:  Ogden.

The bill was read third time and was passed by the following vote:  Yeas 30, Nays 0.  (Same as previous roll call)

### COMMITTEE SUBSTITUTE
### HOUSE BILL 1251 ON SECOND READING

The Presiding Officer laid before the Senate **CSHB 1251** by Senator Wentworth on its second reading.  The bill had been read second time, amended, and further consideration postponed:

JA_008345

USA_00023227

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 29 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 64 of
Tuesday, May 15, 2007                    SENATE JOURNAL                         2089

**CSHB 1251**, Relating to a public agency's, county's, or municipality's authority to enforce a solid waste collection and transportation services franchise.

Question — Shall **CSHB 1251** as amended be passed to third reading?

### VOTE RECONSIDERED

On motion of Senator Shapleigh and by unanimous consent, the vote by which Floor Amendment No. 1 was adopted was reconsidered.

Question — Shall Floor Amendment No. 1 to **CSHB 1251** be adopted?

Senator Seliger offered the following amendment to Floor Amendment No. 1:

### Floor Amendment No. 2

Amend Floor Amendment No. 1 to **CSHB 1251** by striking the last sentence of amended Subsection (e), Section 364.034, Health and Safety Code, and substituting: Except as provided by Subsection (f), the governing body of a municipality may provide that a franchise it grants or a contract it enters into for solid waste collection and transportation services under this subchapter or under other law supersedes inside of the municipality's boundaries any other franchise granted or contract entered into under this subchapter.

The amendment to Floor Amendment No. 1 to **CSHB 1251** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 2 except as follows:

Absent: Ogden.

Senator Wentworth offered the following amendment to Floor Amendment No. 1:

### Floor Amendment No. 3

Amend Floor Amendment No. 1 to **CSHB 1251** in proposed Subsection (g), Section 364.034, Health and Safety Code, by striking: The exemption is effective only until the date the term of that contract expires according to the terms of that contract as provided on the date the requirement is adopted. This subsection does not exempt from the adopted requirement a person whose contract is extended, by option or otherwise, after the date the requirement is adopted.

The amendment to Floor Amendment No. 1 to **CSHB 1251** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 3 except as follows:

Absent: Ogden.

Question recurring on the adoption of Floor Amendment No. 1 to **CSHB 1251**, the amendment as amended was again adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1 as amended except as follows:

Absent: Ogden.

JA_008346

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 30 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 65 of
2090                    80th Legislature — Regular Session                  62nd  Day

On motion of Senator Wentworth and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSHB 1251** as again amended was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Absent: Ogden.

## COMMITTEE  SUBSTITUTE
## HOUSE BILL 1251 ON THIRD READING

Senator Wentworth moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSHB 1251** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 30, Nays 0.

Absent: Ogden.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 0.  (Same as previous roll call)

### SENATE BILL 377 WITH HOUSE AMENDMENT

Senator Janek called **SB 377** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Amendment**

Amend **SB 377** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED
AN ACT

relating to the electronic payment of certain taxes and the electronic filing of certain reports.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 111.0625, Tax Code, is amended to read as follows:

Sec. 111.0625. ELECTRONIC TRANSFER OF CERTAIN PAYMENTS. (a) Except as provided by Subsections (b) and (c), the [The] comptroller by rule shall require a taxpayer who paid $100,000 or more during the preceding fiscal year in a category of payments required under this title to transfer payments in that category by means of electronic funds transfer in accordance with Section 404.095, Government Code, if the comptroller reasonably anticipates the person will pay at least that amount during the current fiscal year.

(b)  The comptroller by rule shall require a taxpayer who paid $10,000 or more during the preceding fiscal year in the category of payments described by this subsection to transfer payments in that category by means of electronic funds transfer in accordance with Section 404.095, Government Code, if the comptroller reasonably anticipates the person will pay at least that amount during the current fiscal year. This subsection applies only to:

(1)  state and local sales and use taxes;

JA_008347

USA_00023229

Case 2:13-cv-00193  Document 664-8  Filed on 11/11/14 in TXSD  Page 31 of 78
e 1:12-cv-00128-RMC-DST-RLW  Document 215-4  Filed 06/20/12  Page 66 of
Tuesday, May 15, 2007          SENATE JOURNAL          2091

(2)  direct payment sales taxes;

(3)  gas severance taxes;

(4)  oil severance taxes;

(5)  franchise taxes;

(6)  gasoline taxes;

(7)  diesel fuel taxes;

(8)  hotel occupancy taxes;

(9)  insurance premium taxes;

(10)  mixed beverage gross receipts taxes;

(11)  motor vehicle rental taxes; and

(12)  telecommunications infrastructure fund assessments.

(c)  Notwithstanding Subsection (b), if the comptroller determines that the action is necessary to protect the state's interest or the interests of taxpayers, the comptroller by rule may:

(1)  apply the requirements of Subsection (b) to a category of payments not listed in Subsection (b); or

(2)  remove the requirements of Subsection (b) from a category of payments listed in Subsection (b).

(d)  A rule adopted under Subsection (b) or (c) must provide for a waiver from the requirements of that subsection for a taxpayer who cannot comply because of hardship, impracticality, or other reason.

(e)  The comptroller by rule may specify the types of electronic funds transfers a person must use to comply with this section. The rule may require a taxpayer to use different types of transfers for different payment amounts.

SECTION 2.  Section 111.0626, Tax Code, is amended by adding Subsection (b-1) to read as follows:

(b-1)  Notwithstanding any other law, the comptroller by rule may require a taxpayer who paid $50,000 or more during the preceding fiscal year to file reports electronically during the current fiscal year. A taxpayer filing a report electronically may use software provided by the comptroller or commercially available software that satisfies requirements prescribed by the comptroller.

SECTION 3.  (a)  Section 2 of this Act takes effect September 1, 2008.

(b)  Except as provided by Subsection (a) of this section, this Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

The amendment was read.

Senator Janek moved to concur in the House amendment to **SB 377**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### SENATE BILL 625 WITH HOUSE AMENDMENTS

Senator Janek called **SB 625** from the President's table for consideration of the House amendments to the bill.

The Presiding Officer laid the bill and the House amendments before the Senate.

JA_008348

USA_00023230

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 32 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 67 of
2092                    80th Legislature — Regular Session                    62nd Day

## Amendment No. 1

Amend **SB 625** as follows:

Amend Section 1, page 2 by adding new Section 562.0142(e):

(d) Notwithstanding any other provision of the law, this section applies only if the prescribing practitioner indicates on the prescription or in the directions of the prescription that the drug is for immunosuppressant therapy following a transplant as that term is defined by Section 562.0142(a).

## Floor Amendment No. 2

Amend **SB 625** as follows:

Amend Sec. 562.0142(b) on page 1, lines 22-23 by striking "notification of and the signed informed"

Amend Sec. 562.0142(c) on page 2, line 1 by striking subsection (c) and replacing it with the following:

(c) To comply with Subsection (b), a pharmacist shall notify a prescribing physician orally or electronically to secure permission to interchange an immunosuppressant drug or formulation of an immunosuppressant drug, brand or generic. The prescriber's authorization or denial of authorization shall be documented in writing by the pharmacist and by the prescriber.

## Floor Amendment No. 3

Amend **SB 625** as follows:

Amend Section 1, page 2 by adding new Section 562.0142(d):

(d) If a pharmacist does not have the same drug product by the same manufacturer in stock to refill the prescription, or if the prescriber is unavailable to give authorization, the pharmacist may dispense a drug product that is generically equivalent if the pharmacist, before dispensing the generically equivalent drug product

(1) notifies and receives consent from the patient, at the time the prescription is dispensed, to substitute the prescribed drug product; and

(2) notifies the prescribing physician of the drug product substitution orally or electronically at the earliest reasonable time, but not later than 72 hours after dispensing the prescription.

## Floor Amendment No. 4

Amend Floor Amendment No. 3 by Hopson to **SB 625** by striking "72" and substituting "24".

## Floor Amendment No. 5

Amend **SB 625** as follows:

On page 2, line 14, insert a new paragraph (d) as follows:

(d) This section only applies to a drug that is included on the list of narrow therapeutic index drugs as provided by Section 562.014, Occupations Code.

## Floor Amendment No. 1 on Third Reading

Amend **SB 625** on third reading by striking all below the enacting clause and substituting the following:

JA_008349

USA_00023231

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 33 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 68 of
Tuesday, May 15, 2007                    SENATE JOURNAL                    2093

SECTION 1. Section 562.014, Occupations Code, is amended to read as follows:

Sec. 562.014. [APPLICATION TO] NARROW THERAPEUTIC INDEX DRUGS. (a) Except as provided by this section, drug selection as authorized by this subchapter does not apply to the refill of a prescription for a narrow therapeutic index drug. The board, in consultation with the Texas Medical [State] Board [of Medical Examiners], shall by rule establish a list of narrow therapeutic index drugs to which this subsection applies. A prescription for a narrow therapeutic index drug may be refilled only by using the same drug product by the same manufacturer that the pharmacist last dispensed under the prescription, unless otherwise agreed to by the prescribing practitioner [physician]. If a pharmacist does not have the same drug product by the same manufacturer in stock to refill the prescription, the pharmacist may dispense a drug product that is generically equivalent if the pharmacist, before dispensing the generically equivalent drug product, notifies:

(1) the patient, at the time the prescription is dispensed, that a substitution of the prescribed drug product has been made; and

(2) the prescribing practitioner [physician] of the drug product substitution by telephone, facsimile, or mail, at the earliest reasonable time, but not later than 72 hours after dispensing the prescription.

(b) The board and the Texas Medical Board shall establish a joint committee to recommend to the board a list of narrow therapeutic index drugs and the rules, if any, by which this section applies to those drugs. The committee must consist of an equal number of members from each board. The committee members shall select a member of the committee to serve as presiding officer for a one year term. The presiding officer may not represent the same board as the presiding officer's predecessor.

(c) The committee shall make a recommendation to the board on whether to include a drug on the list of narrow therapeutic index drugs as required by Section 562.0142. In the event of a tie vote by the committee on whether to recommend that a drug listed in this subsection be included on the list of narrow therapeutic index drugs, the committee shall recommend to the board that the drug not be placed on the list. The committee shall consider for inclusion in the list of narrow therapeutic index drugs the following drugs:

(1) Tegretol/Tegretol XR (carbamazepine);

(2) Depakote/Depakote ER (valproic acid);

(3) Dilantin (phenytoin);

(4) Lamictal (lamotrigine);

(5) Zarontin (ethosuximide);

(6) Keppra (levetiracetam);

(7) Topamax (topiramate);

(8) Trileptal (oxcarbazepine);

(9) Zonegran (zonisamide);

(10) Felbatol (felbamate);

(11) Depakote DR;

(12) Depakote ER;

(13) Depacon;

(14) Depakote Sprinkles;

USA_00023232

(15)  Depakene;

(16)  Prograf;

(17)  Cellcept;

(18)  Neoral;

(19)  Rapamune; and

(20)  Sandimmune.

(d)  Subsection (c) and this subsection expire December 31, 2008.

SECTION 2.  Subchapter A, Chapter 562, Occupations Code, is amended by adding Sections 562.0141 and 562.0142 to read as follows:

Sec. 562.0141.  TRANSPLANT IMMUNOSUPPRESSANT DRUG PRODUCT SELECTION PROHIBITED. (a)  In this section:

(1)  "Immunosuppressant drug" means any drug prescribed for immunosuppressant therapy following a transplant.

(2)  "Interchange" means the substitution of one version of the same immunosuppressant drug, including a generic version for the prescribed brand, a brand version for the prescribed generic version, a generic version by one manufacturer for a generic version by a different manufacturer, a different formulation of the prescribed immunosuppressant drug, or a different immunosuppressant drug for the immunosuppressant drug originally prescribed.

(b)  A pharmacist may not interchange an immunosuppressant drug or formulation of an immunosuppressant drug, brand or generic, for the treatment of a patient following a transplant without prior consent to the interchange from the prescribing practitioner.

(c)  To comply with Subsection (b), a pharmacist shall notify a prescribing practitioner orally or electronically to secure permission to interchange an immunosuppressant drug or formulation of an immunosuppressant drug, brand or generic. The practitioner's authorization or denial of authorization must be documented by the pharmacist and by the practitioner.

(d)  If a pharmacist does not have the same drug product by the same manufacturer in stock to refill the prescription, or if the practitioner is unavailable to give authorization, the pharmacist may dispense a drug product that is generically equivalent if the pharmacist, before dispensing the generally equivalent drug product:

(1)  notifies and receives consent from the patient, at the time the prescription is dispensed, to substitute the prescribed drug product; and

(2)  notifies the prescribing practitioner of the drug product substitution orally or electronically at the earliest reasonable time, but not later than 24 hours after dispensing the prescription.

(e)  This section is only effective subject to the conditions established by Section 562.0142.

Sec. 562.0142.  ADOPTION OF RULES. (a) If, not later than October 1, 2007, a drug manufacturer requests that the joint committee under Section 562.014 conduct a hearing and make a recommendation to include a drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs, the joint committee shall make a recommendation to the board to enable the board to adopt a rule and issue findings not later than July 1, 2008.

JA_008351

USA_00023233

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 35 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 70 of
Tuesday, May 15, 2007        SENATE JOURNAL                    2095

(b)  If, not later than October 1, 2007, no drug manufacturer requests that the joint committee conduct a hearing and make recommendations to the board to include a drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs, Section 562.0141 expires October 1, 2007.

(c)  If all drug manufacturers that request, before October 1, 2007, the joint committee to conduct a hearing and make a recommendation to the board to include a drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs subsequently withdraw those requests before the date the joint committee makes a recommendation to include the drug on that list, Section 562.0141 expires effective on the date of the manufacturers' withdrawal of those requests.

(d)  If the joint committee receives a request under Subsection (a), the recommendation of the joint committee under that subsection may include the drugs listed in Section 562.014(c) or the joint committee may recommend that no drug should be added to the list of narrow therapeutic index drugs following the review by the joint committee.

(e)  If the joint committee receives a request under Subsection (a) and, not later than July 1, 2008, the board adopts a rule to include any drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs or determines by rule that no drug should be added to the list of narrow therapeutic index drugs, Section 562.0141 expires on July 1, 2008.

(f)  If the joint committee receives a request under Subsection (a) and the board does not before July 1, 2008, adopt a rule to include any drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs or determine by rule that no drug should be added to the list of narrow therapeutic index drugs, Section 562.0141 takes effect July 1, 2008.

(g)  If the joint committee receives a request under Subsection (a) and litigation or a request for an attorney general's opinion regarding this section, Section 562.014, or Section 562.0141 is filed by a drug manufacturer between the effective date of this section and July 1, 2008, the time limits established by Subsections (e) and (f) are tolled until the litigation is resolved or the attorney general renders an opinion.

(h)  For purposes of this section, notice of the following must be published in the Texas Register not later than the third business day after the date of occurrence:

(1)  a request by a drug manufacturer for inclusion of a drug on the list of narrow therapeutic index drugs;

(2)  withdrawal of a request described by Subdivision (1);

(3)  litigation described by Subsection (g);

(4)  resolution of litigation described by Subsection (g); and

(5)  a request for an attorney general's opinion described by Subsection (g).

SECTION 3.  Section 562.009, Occupations Code, is amended by adding Subsection (e) to read as follows:

(e)  If the prescription is for an immunosuppressant drug, as defined by Section 562.0141(a)(1), the pharmacist must comply with the provisions of Section 562.0141. This subsection expires if Section 562.0141 expires under the requirements of Section 562.0142.

JA_008352

SECTION 4. The Texas State Board of Pharmacy and Texas Medical Board shall establish the joint committee required by Section 562.014(b), Occupations Code, as added by this Act, not later than the 90th day after the effective date of this Act or September 1, 2007, whichever date occurs first.

SECTION 5.  This Act takes effect immediately if it receives a vote of two-thirds of all members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

**Floor Amendment No. 2 on Third Reading**

Amend **SB 625** on third reading by striking all below the enacting clause and substituting the following:

SECTION 1. Section 562.014, Occupations Code, is amended to read as follows:

Sec. 562.014. [APPLICATION TO] NARROW THERAPEUTIC INDEX DRUGS. (a) Except as provided by this section, drug selection as authorized by this subchapter does not apply to the refill of a prescription for a narrow therapeutic index drug. The board, in consultation with the Texas Medical [State] Board [of Medical Examiners], shall by rule establish a list of narrow therapeutic index drugs to which this subsection applies. A prescription for a narrow therapeutic index drug may be refilled only by using the same drug product by the same manufacturer that the pharmacist last dispensed under the prescription, unless otherwise agreed to by the prescribing practitioner [physician]. If a pharmacist does not have the same drug product by the same manufacturer in stock to refill the prescription, the pharmacist may dispense a drug product that is generically equivalent if the pharmacist, before dispensing the generically equivalent drug product, notifies:

(1)  the patient, at the time the prescription is dispensed, that a substitution of the prescribed drug product has been made; and

(2)  the prescribing practitioner [physician] of the drug product substitution by telephone, facsimile, or mail, at the earliest reasonable time, but not later than 72 hours after dispensing the prescription.

(b)  The board and the Texas Medical Board shall establish a joint committee to recommend to the board a list of narrow therapeutic index drugs and the rules, if any, by which this section applies to those drugs. The committee must consist of an equal number of members from each board. The committee members shall select a member of the committee to serve as presiding officer for a one year term. The presiding officer may not represent the same board as the presiding officer's predecessor.

(c)  The committee shall make a recommendation to the board on whether to include a drug on the list of narrow therapeutic index drugs as required by Section 562.0142. In the event of a tie vote by the committee on whether to recommend that a drug listed in this subsection be included on the list of narrow therapeutic index drugs, the committee shall recommend to the board that the drug not be placed on the list. The committee shall consider for inclusion in the list of narrow therapeutic index drugs the following drugs:

(1)  Prograf;

(2)  Cellcept;

(3)  Neoral;

JA_008353

USA_00023235

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 37 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 72 of

Tuesday, May 15, 2007                    SENATE JOURNAL                                2097

    (4)  Rapamune; and

    (5)  Sandimmune.

  (d)  Subsection (c) and this subsection expire December 31, 2008.

  SECTION 2.  Subchapter A, Chapter 562, Occupations Code, is amended by adding Sections 562.0141 and 562.0142 to read as follows:

  Sec. 562.0141.  TRANSPLANT IMMUNOSUPPRESSANT DRUG PRODUCT SELECTION PROHIBITED. (a)  In this section:

    (1)  "Immunosuppressant drug" means any drug prescribed for immunosuppressant therapy following a transplant.

    (2)  "Interchange" means the substitution of one version of the same immunosuppressant drug, including a generic version for the prescribed brand, a brand version for the prescribed generic version, a generic version by one manufacturer for a generic version by a different manufacturer, a different formulation of the prescribed immunosuppressant drug, or a different immunosuppressant drug for the immunosuppressant drug originally prescribed.

  (b)  A pharmacist may not interchange an immunosuppressant drug or formulation of an immunosuppressant drug, brand or generic, for the treatment of a patient following a transplant without prior consent to the interchange from the prescribing practitioner.

  (c)  To comply with Subsection (b), a pharmacist shall notify a prescribing practitioner orally or electronically to secure permission to interchange an immunosuppressant drug or formulation of an immunosuppressant drug, brand or generic. The practitioner's authorization or denial of authorization must be documented by the pharmacist and by the practitioner.

  (d)  If a pharmacist does not have the same drug product by the same manufacturer in stock to refill the prescription, or if the practitioner is unavailable to give authorization, the pharmacist may dispense a drug product that is generically equivalent if the pharmacist, before dispensing the generally equivalent drug product:

    (1)  notifies and receives consent from the patient, at the time the prescription is dispensed, to substitute the prescribed drug product; and

    (2)  notifies the prescribing practitioner of the drug product substitution orally or electronically at the earliest reasonable time, but not later than 24 hours after dispensing the prescription.

  (e)  This section is only effective subject to the conditions established by Section 562.0142.

  Sec. 562.0142.  ADOPTION OF RULES. (a) If, not later than October 1, 2007, a drug manufacturer requests that the joint committee under Section 562.014 conduct a hearing and make a recommendation to include a drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs, the joint committee shall make a recommendation to the board to enable the board to adopt a rule and issue findings not later than July 1, 2008.

  (b)  If, not later than October 1, 2007, no drug manufacturer requests that the joint committee conduct a hearing and make recommendations to the board to include a drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs, Section 562.0141 expires October 1, 2007.

USA_00023236

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 38 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 73 of
2098                80th Legislature — Regular Session                62nd Day

(c) If all drug manufacturers that request, before October 1, 2007, the joint committee to conduct a hearing and make a recommendation to the board to include a drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs subsequently withdraw those requests before the date the joint committee makes a recommendation to include the drug on that list, Section 562.0141 expires effective on the date of the manufacturers' withdrawal of those requests.

(d) If the joint committee receives a request under Subsection (a), the recommendation of the joint committee under that subsection may include the drugs listed in Section 562.014(c) or the joint committee may recommend that no drug should be added to the list of narrow therapeutic index drugs following the review by the joint committee.

(e) If the joint committee receives a request under Subsection (a) and, not later than July 1, 2008, the board adopts a rule to include any drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs or determines by rule that no drug should be added to the list of narrow therapeutic index drugs, Section 562.0141 expires on July 1, 2008.

(f) If the joint committee receives a request under Subsection (a) and the board does not before July 1, 2008, adopt a rule to include any drug listed in Section 562.014(c) on the list of narrow therapeutic index drugs or determine by rule that no drug should be added to the list of narrow therapeutic index drugs, Section 562.0141 takes effect July 1, 2008.

(g) If the joint committee receives a request under Subsection (a) and litigation or a request for an attorney general's opinion regarding this section, Section 562.014, or Section 562.0141 is filed by a drug manufacturer between the effective date of this section and July 1, 2008, the time limits established by Subsections (e) and (f) are tolled until the litigation is resolved or the attorney general renders an opinion.

(h) For purposes of this section, notice of the following must be published in the Texas Register not later than the third business day after the date of occurrence:

(1) a request by a drug manufacturer for inclusion of a drug on the list of narrow therapeutic index drugs;

(2) withdrawal of a request described by Subdivision (1);

(3) litigation described by Subsection (g);

(4) resolution of litigation described by Subsection (g); and

(5) a request for an attorney general's opinion described by Subsection (g).

SECTION 3. Section 562.009, Occupations Code, is amended by adding Subsection (e) to read as follows:

(e) If the prescription is for an immunosuppressant drug, as defined by Section 562.0141(a)(1), the pharmacist must comply with the provisions of Section 562.0141. This subsection expires if Section 562.0141 expires under the requirements of Section 562.0142.

SECTION 4. The Texas State Board of Pharmacy and Texas Medical Board shall establish the joint committee required by Section 562.014(b), Occupations Code, as added by this Act, not later than the 90th day after the effective date of this Act or September 1, 2007, whichever date occurs first.

USA_00023237

SECTION 5. This Act takes effect immediately if it receives a vote of two-thirds of all members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

The amendments were read.

Senator Janek moved to concur in the House amendments to **SB 625**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

**SENATE BILL 1659 WITH HOUSE AMENDMENT**

Senator Nichols called **SB 1659** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Amendment**

Amend **SB 1659** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED
AN ACT

relating to the transfer of the Texas State Railroad to, and the creation of, the Texas State Railroad Authority.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Title 4, Special District Local Laws Code, is amended by adding Subtitle D to read as follows:

SUBTITLE D. PARKS AND RECREATION
CHAPTER 4501. TEXAS STATE RAILROAD AUTHORITY
SUBCHAPTER A. GENERAL PROVISIONS

Sec. 4501.001. DEFINITIONS. In this chapter:

(1) "Authority" means the Texas State Railroad Authority.

(2) "Board" means the authority's board of directors.

(3) "Director" means a board member.

Sec. 4501.002. CREATION AND NATURE OF AUTHORITY. The Texas State Railroad Authority is a special district created under Section 59, Article XVI, Texas Constitution, for the development of parks and recreational facilities.

Sec. 4501.003. PURPOSES OF AUTHORITY. (a) The authority is created to:

(1) purchase, own, hold, lease, and otherwise acquire facilities or other property to operate and maintain the Texas State Railroad;

(2) continue and improve the operation of the Texas State Railroad as a public recreational, historical, and cultural resource;

(3) operate concessions, museums, campgrounds, and other facilities associated with the Texas State Railroad; and

(4) enhance, augment, and improve the historical, educational, and cultural benefits offered by the Texas State Railroad.

(b) The creation of the authority is necessary to promote, develop, encourage, and maintain employment, commerce, transportation, tourism, recreation, the arts, entertainment, economic development, and public welfare in Anderson and Cherokee Counties.

JA_008356

USA_00023238

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 40 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 75 of
2100          80th Legislature — Regular Session          62nd Day

Sec. 4501.004. FINDINGS OF BENEFIT AND PUBLIC PURPOSE. (a) The authority is created to serve a public use and benefit.

(b) All residents of this state will benefit from the works and projects provided by the authority.

(c) The creation of the authority is in the public interest and is essential to:

(1) further the public purposes of development and diversification of the economy of the state;

(2) eliminate unemployment and underemployment; and

(3) develop and expand commerce, tourism, recreation, historical awareness, education, and the arts.

(d) The authority will:

(1) promote the health, safety, and general welfare of residents, employers, employees, visitors, and consumers in Anderson and Cherokee Counties;

(2) preserve, maintain, and enhance the Texas State Railroad; and

(3) preserve, maintain, and enhance the economic health and vitality of Anderson and Cherokee Counties.

(e) The authority may not act as the agent or instrumentality of any private interest, even though the authority will incidentally benefit many private interests in addition to the paramount public interest.

Sec. 4501.005. GENERAL WATER DISTRICT LAW NOT APPLICABLE. Chapter 49, Water Code, does not apply to the authority.

[Sections 4501.006-4501.050 reserved for expansion]

SUBCHAPTER B. BOARD OF DIRECTORS

Sec. 4501.051. GOVERNING BODY; TERMS. (a) The authority is governed by a board of seven voting directors appointed under Section 4501.053, with three directors appointed by the City of Palestine, three directors appointed by the City of Rusk, and one director appointed by the other directors.

(b) Voting directors serve staggered three-year terms, with:

(1) as near as possible to one-third of the terms of directors appointed by each city or other political subdivision expiring September 1 of each year; and

(2) the term of the director appointed by the other directors expiring October 1 of each third year.

Sec. 4501.052. ELIGIBILITY. (a) To be qualified to serve as a director, a person must be at least 21 years of age.

(b) A voting director may not serve more than three consecutive terms.

(c) At least two of the three directors appointed by:

(1) the City of Palestine must reside in Anderson County; and

(2) the City of Rusk must reside in Cherokee County.

Sec. 4501.053. APPOINTMENT OF DIRECTORS. (a) Not later than August 31 of each year, by majority vote:

(1) the city council of the City of Palestine shall appoint as a voting director one person proposed by the mayor of Palestine; and

(2) the city council of the City of Rusk shall appoint as a voting director one person proposed by the mayor of Rusk.

(b) Not later than September 30 of every third year, by majority vote, the directors appointed under Subsection (a) shall appoint a seventh director.

JA_008357

USA_00023239

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 41 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 76 of
Tuesday, May 15, 2007          SENATE JOURNAL                    2101

Sec. 4501.054. NONVOTING DIRECTORS. (a) The following persons serve as nonvoting directors:

    (1) the mayor of the City of Palestine or a member of the city council of the City of Palestine designated by the mayor; and

    (2) the mayor of the City of Rusk or a member of the city council of the City of Rusk designated by the mayor.

(b) A nonvoting director is not counted in determining the board quorum.

Sec. 4501.055. VACANCIES. A board vacancy is filled in the same manner as the original appointment.

Sec. 4501.056. VOTING AUTHORITY OF PRESIDENT. The board president is a voting director but may vote only to break a tie. All other voting directors are entitled to one vote on any issue before the board.

Sec. 4501.057. OFFICERS. (a) Each year, the board shall elect from among the voting directors officers for the authority, including a president, a vice president, a secretary, and a treasurer.

(b) The president and the vice president may not be directors appointed by the same city.

[Sections 4501.058-4501.100 reserved for expansion]

SUBCHAPTER C. POWERS AND DUTIES

Sec. 4501.101. GENERAL POWERS. The authority has the powers necessary to accomplish any authority purpose, including the purposes specified in Section 4501.003.

Sec. 4501.102. CONTRACT TO MANAGE OR OPERATE AUTHORITY PROPERTY. The authority may contract with any person to manage or operate all or part of authority property.

Sec. 4501.103. COMPETITIVE BIDDING. (a) Except as provided by Subsection (b), the competitive bidding requirements for a municipality under Chapter 252, Local Government Code, apply to the authority.

(b) A contract with a private person under Section 4501.102 or 4501.104(2) is exempt from the competitive bidding requirements of Chapter 252, Local Government Code, or any other statute if the contract:

    (1) is entered into before the effective date of the Act creating this chapter;

    (2) is conditioned on the passage of the Act creating this chapter; and

    (3) is assigned by a party to the contract after the effective date of the Act creating this chapter.

Sec. 4501.104. GENERAL PROPERTY POWERS. The authority may:

    (1) acquire, own, lease, operate, construct, maintain, repair, improve, or extend improvements, equipment, or any other property necessary to accomplish an authority purpose; or

    (2) lease or otherwise convey authority property to private parties for an authority purpose.

Sec. 4501.105. CONDITIONAL TRANSFER OF PROPERTY. (a) A conveyance of authority property, including a lease, to a private operator or any other person must be conditioned on an obligation that the property must be used as provided by this section.

JA_008358

USA_00023240

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 42 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 77 of
2102                    80th Legislature — Regular Session                 62nd Day

(b) The conveyance must provide that ownership of authority property automatically reverts to the Parks and Wildlife Department if the authority or a private operator:

    (1)  does not use the property:

        (A)  to support the operations of the Texas State Railroad; or

        (B)  in a manner that primarily promotes a state public interest; or

    (2)  converts the Texas State Railroad to a static display.

Sec. 4501.106. SURPLUS PROPERTY. The authority, with the consent of the Parks and Wildlife Department, may dispose of surplus property, including by exchanging the surplus property with another person for other property, to improve the quality and usefulness of property used by the authority.

Sec. 4501.107. DISPOSITION OF PUBLIC PARKS AND RECREATIONAL LANDS; EXEMPTION FROM APPLICABILITY OF OTHER LAW. Chapter 253, Local Government Code, and Chapter 26, Parks and Wildlife Code, do not apply to the use, transfer, or other disposition of property by any method:

    (1)  to the authority by any person; or

    (2)  by the authority to any person.

Sec. 4501.108. NONPROFIT CORPORATION. (a) The board by resolution may authorize the creation of a nonprofit corporation to assist the authority in implementing a project or providing a service authorized by this chapter.

(b) The nonprofit corporation may implement any project and provide any service authorized by this chapter.

(c) The board shall appoint the board of directors of the nonprofit corporation.

Sec. 4501.109. AUTHORITY TO SUE AND BE SUED; IMMUNITY. (a) The authority may sue and be sued in this state.

(b) This section does not waive any governmental immunity that would otherwise apply to the authority.

[Sections 4501.110-4501.150 reserved for expansion]

SUBCHAPTER D. GENERAL FINANCIAL PROVISIONS

Sec. 4501.151. AD VALOREM TAXES PROHIBITED. The authority may not impose an ad valorem tax.

Sec. 4501.152. GRANTS; DONATIONS. The authority may accept grants and donations, including property, for any authority purpose.

Sec. 4501.153. GRANTS FROM OTHER TAXING AUTHORITY; CONTRACT. (a) A taxing authority in Anderson or Cherokee County may by contract grant to the authority:

    (1)  sales tax revenue received from a sale made on property owned, controlled, or leased by the authority or by a person with whom the authority contracts under Section 4501.102; or

    (2)  local hotel occupancy tax revenue received from a hotel located within one mile of a place where the Texas State Railroad loads or unloads passengers.

(b) The grant must serve a public purpose of the taxing authority making the grant.

USA_00023241

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 43 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 78 of
Tuesday, May 15, 2007      SENATE JOURNAL      2103

[Sections 4501.154-4501.200 reserved for expansion]

## SUBCHAPTER E. DISSOLUTION

Sec. 4501.201. DISSOLUTION OF AUTHORITY; OUTSTANDING DEBT. (a) The board may dissolve the authority regardless of whether the authority has debt.

(b) If the authority has debt when it is dissolved, the authority shall remain in existence solely for the purpose of discharging its debts. The dissolution is effective when all debts have been discharged.

SECTION 2.  Section 22.182, Parks and Wildlife Code, is repealed.

SECTION 3.  (a)  Not later than September 1, 2007:

(1)  the city council of the City of Palestine shall appoint three voting directors from three persons proposed by the mayor of Palestine to serve as directors under Subchapter B, Chapter 4501, Special District Local Laws Code, as added by this Act; and

(2)  the city council of the City of Rusk shall appoint three voting directors from three persons proposed by the mayor of Rusk to serve as directors under Subchapter B, Chapter 4501, Special District Local Laws Code, as added by this Act.

(b)  After the directors have been appointed under this section, the directors representing each city shall draw lots to determine which director from each city serves a term expiring:

(1)  September 1, 2008;

(2)  September 1, 2009; and

(3)  September 1, 2010.

(c)  Not later than September 30, 2007, the directors appointed under Subsection (a) of this section shall meet in open session and appoint a seventh director.  The seventh director shall serve a term expiring October 1, 2010.

SECTION 4.  (a) Not earlier than September 1, 2007, and on execution of the requirements of Section 5 of this Act, the following are transferred to the Texas State Railroad Authority:

(1)  the property described by Section 5 of this Act;

(2)  all obligations and liabilities of the Parks and Wildlife Department relating to the Texas State Railroad; and

(3)  all files and other records of the Parks and Wildlife Department kept by the department regarding the Texas State Railroad.

(b)  Before September 1, 2007, the Parks and Wildlife Department may agree with the Texas State Railroad Authority to transfer any property of the Parks and Wildlife Department to the Texas State Railroad Authority to implement the transfer required by this Act.

(c)  In the period beginning on the effective date of this Act and ending on execution of the requirements of Section 5 of this Act, the Parks and Wildlife Department shall continue to perform functions and activities under Section 22.182, Parks and Wildlife Code, as if that section had not been repealed by this Act, and the former law is continued in effect for that purpose.

SECTION 5.  (a)  Not later than October 1, 2007, the Parks and Wildlife Department shall transfer to the Texas State Railroad Authority, for the consideration described by Subsection (b) of this section, the property described by Subsection (d) of this section.

JA_008360

Case 2:13-cv-00193  Document 664-8  Filed on 11/11/14 in TXSD  Page 44 of 78
e 1:12-cv-00128-RMC-DST-RLW  Document 215-4  Filed 06/20/12  Page 79 of
2104                    80th Legislature — Regular Session              62nd Day

(b) Consideration for the transfer authorized by Subsection (a) of this section is an agreement between the parties that requires the Texas State Railroad Authority to use the property in a manner that primarily promotes a state public purpose. If the Texas State Railroad Authority does not use the property transferred under this Act in a manner that primarily promotes a state public interest, ownership of the property automatically reverts to the Parks and Wildlife Department.

(c) The Parks and Wildlife Department shall transfer the property by an appropriate instrument of transfer. The instrument of transfer must include a provision that:

(1) requires the Texas State Railroad Authority to use the property in a manner that primarily promotes a state public purpose;

(2) indicates that ownership of the property automatically reverts to the Parks and Wildlife Department if the Texas State Railroad Authority fails to use the property in that manner;

(3) authorizes the Texas State Railroad Authority to transfer the property to a private operator under conditions as provided by Section 4501.105, Special District Local Laws Code, as added by this Act;

(4) authorizes the Texas State Railroad Authority, with the consent of the Parks and Wildlife Department, to dispose of surplus property as provided by Section 4501.106, Special District Local Laws Code, as added by this Act; and

(5) transfers the right-of-way and trackage of the Texas State Railroad by a 99-year lease or a similar instrument under which fee ownership is retained by the State of Texas.

(d) The property to which Subsection (a) of this section refers is all real and personal property associated with the Texas State Railroad owned by the State of Texas, including:

(1) the right-of-way and trackage of the Texas State Railroad;

(2) all trains and other property used to operate the Texas State Railroad; and

(3) all equipment or other property of the Parks and Wildlife Department used for the administration of or related to the Texas State Railroad.

SECTION 6. The legislature finds that:

(1) proper and legal notice of the intention to introduce this Act, setting forth the general substance of this Act, has been published as provided by law, and the notice and a copy of this Act have been furnished to all persons, agencies, officials, or entities to which they are required to be furnished by the constitution and laws of this state, including the governor, who has submitted the notice and Act to the Texas Commission on Environmental Quality;

(2) the Texas Commission on Environmental Quality has filed its recommendations relating to this Act with the governor, lieutenant governor, and speaker of the house of representatives within the required time;

(3) the general law relating to consent by political subdivisions to the creation of districts with conservation, reclamation, and road powers and the inclusion of land in those districts has been complied with; and

JA_008361

USA_00023243

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 45 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 80 of
Tuesday, May 15, 2007        SENATE JOURNAL                          2105

(4)  all requirements of the constitution and laws of this state and the rules and procedures of the legislature with respect to the notice, introduction, and passage of this Act have been fulfilled and accomplished.

SECTION 7.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

The amendment was read.

Senator Nichols moved to concur in the House amendment to **SB 1659**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### SENATE BILL 288 WITH HOUSE AMENDMENT

Senator Nelson called **SB 288** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Amendment**

Amend **SB 288** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED
AN ACT

relating to the reporting of health care-associated infections at certain health care facilities and the creation of an advisory panel.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Subtitle D, Title 2, Health and Safety Code, is amended by adding Chapter 98 to read as follows:

CHAPTER 98.  REPORTING OF HEALTH CARE-ASSOCIATED INFECTIONS
SUBCHAPTER A.  GENERAL PROVISIONS

Sec. 98.001.  DEFINITIONS.  In this chapter:

(1)  "Advisory panel" means the Advisory Panel on Health Care-Associated Infections.

(2)  "Ambulatory surgical center" means a facility licensed under Chapter 243.

(3)  "Commissioner" means the commissioner of state health services.

(4)  "Department" means the Department of State Health Services.

(5)  "Executive commissioner" means the executive commissioner of the Health and Human Services Commission.

(6)  "General hospital" means a general hospital licensed under Chapter 241 or a hospital that provides surgical or obstetrical services and that is maintained or operated by this state. The term does not include a comprehensive medical rehabilitation hospital.

(7)  "Health care-associated infection" means a localized or symptomatic condition resulting from an adverse reaction to an infectious agent or its toxins to which a patient is exposed in the course of the delivery of health care to the patient.

(8)  "Health care facility" means a general hospital or an ambulatory surgical center.

JA_008362

USA_00023244

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 46 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 81 of
2100                  80th Legislature — Regular Session                  62nd Day

(9) "Infection rate" means the number of health care-associated infections of a particular type at a health care facility divided by a numerical measure over time of the population at risk for contracting the infection, unless the term is modified by rule of the executive commissioner to accomplish the purposes of this chapter.

(10) "Pediatric and adolescent hospital" has the meaning assigned by Section 241.003.

(11) "Reporting system" means the Texas Health Care-Associated Infection Reporting System.

(12) "Special care setting" means a unit or service of a general hospital that provides treatment to inpatients who require extraordinary care on a concentrated and continuous basis. The term includes an adult intensive care unit, a burn intensive care unit, and a critical care unit.

Sec. 98.002. APPLICABILITY OF OTHER LAW. Chapter 2110, Government Code, does not apply to the advisory panel created under Subchapter B.

[Sections 98.003-98.050 reserved for expansion]

SUBCHAPTER B. ADVISORY PANEL

Sec. 98.051. ESTABLISHMENT. The commissioner shall establish the Advisory Panel on Health Care-Associated Infections within the infectious disease surveillance and epidemiology branch of the department to guide the implementation, development, maintenance, and evaluation of the reporting system.

Sec. 98.052. MEMBERSHIP; TERM. (a) The advisory panel is composed of 16 members as follows:

(1) two infection control professionals who:

(A) are certified by the Certification Board of Infection Control and Epidemiology; and

(B) are practicing in hospitals in this state, at least one of which must be a rural hospital;

(2) two infection control professionals who:

(A) are certified by the Certification Board of Infection Control and Epidemiology; and

(B) are nurses licensed to engage in professional nursing under Chapter 301, Occupations Code;

(3) three board-certified or board-eligible physicians who:

(A) are licensed to practice medicine in this state under Chapter 155, Occupations Code, at least two of whom have active medical staff privileges at a hospital in this state and at least one of whom is a pediatric infectious disease physician with expertise and experience in pediatric health care epidemiology;

(B) are active members of the Society for Healthcare Epidemiology of America; and

(C) have demonstrated expertise in infection control in health care facilities;

(4) two professionals in quality assessment and performance improvement, one of whom is employed by a general hospital and one of whom is employed by an ambulatory surgical center;

(5) one officer of a general hospital;

(6) one officer of an ambulatory surgical center;

JA_008363

USA_00023245

(7) three nonvoting members who are department employees representing the department in epidemiology and the licensing of hospitals or ambulatory surgical centers; and

(8) two members who represent the public as consumers.

(b)  Members of the advisory panel serve two-year terms.

Sec. 98.053.  MEMBER ELIGIBILITY.  (a)  A person may not be a member of the advisory panel if the person is required to register as a lobbyist under Chapter 305, Government Code, because of the person's activities for compensation on behalf of a profession related to health care.

(b)  A person may not be a member of the advisory panel if the person is an officer, employee, or paid consultant of a Texas trade association in the field of health care.

Sec. 98.054.  OFFICERS.   The members of the advisory panel shall elect a presiding officer and an assistant presiding officer from among the members. The officers serve two-year terms.

Sec. 98.055.  COMPENSATION; EXPENSES.  Members of the advisory panel serve without compensation but are entitled to reimbursement of the travel expenses incurred by the member while conducting the business of the advisory panel from department funds, in accordance with the General Appropriations Act.

Sec. 98.056.  VACANCY.  A vacancy on the advisory panel shall be filled by the commissioner.

[Sections 98.057-98.100 reserved for expansion]

SUBCHAPTER C.  DUTIES OF DEPARTMENT AND ADVISORY PANEL; REPORTING SYSTEM

Sec. 98.101.  RULEMAKING.   (a)   The executive commissioner may adopt rules for the department to implement this chapter.

(b)  The executive commissioner may not adopt rules that conflict with or duplicate any federally mandated infection reporting program or requirement.

Sec. 98.102.  DEPARTMENTAL RESPONSIBILITIES; REPORTING SYSTEM.   (a)   The department shall establish the Texas Health Care-Associated Infection Reporting System within the infectious disease surveillance and epidemiology branch of the department. The purpose of the reporting system is to provide for:

(1)  the reporting of health care-associated infections by health care facilities to the department;

(2)  the public reporting of information regarding the health care-associated infections by the department; and

(3)  the education and training of health care facility staff by the department regarding this chapter.

(b)  The reporting system shall provide a mechanism for this state to collect data, at state expense, through a secure electronic interface with health care facilities.

(c)  The data reported by health care facilities to the department must contain sufficient patient identifying information to:

(1)  avoid duplicate submission of records;

(2)  allow the department to verify the accuracy and completeness of the data reported; and

JA_008364

USA_00023246

Case 2:13-cv-00193  Document 664-8  Filed on 11/11/14 in TXSD  Page 48 of 78
e 1:12-cv-00128-RMC-DST-RLW  Document 215-4  Filed 06/20/12  Page 83 of
2108          80th Legislature — Regular Session          62nd  Day

(3)  allow the department to risk adjust the facilities' infection rates.

(d)  The department shall review the infection control and reporting activities of health care facilities to ensure the data provided by the facilities is valid and does not have unusual data patterns or trends that suggest implausible infection rates.

Sec. 98.103.  REPORTABLE INFECTIONS.  (a)  A health care facility, other than a pediatric and adolescent hospital, shall report to the department the incidence of surgical site infections occurring in the following procedures:

(1)  colon surgeries;

(2)  hip arthroplasties;

(3)  knee arthroplasties;

(4)  abdominal hysterectomies;

(5)  vaginal hysterectomies;

(6)  coronary artery bypass grafts; and

(7)  vascular procedures.

(b)  A pediatric and adolescent hospital shall report the incidence of surgical site infections occurring in the following procedures to the department:

(1)  cardiac procedures, excluding thoracic cardiac procedures;

(2)  ventriculoperitoneal shunt procedures; and

(3)  spinal surgery with instrumentation.

(c)  A general hospital shall report the following to the department:

(1)  the incidence of laboratory-confirmed central line-associated primary bloodstream infections occurring in any special care setting in the hospital; and

(2)  the incidence of respiratory syncytial virus occurring in any pediatric inpatient unit in the hospital.

(d)  The department shall ensure that the health care-associated infections a health care facility is required to report under this section have the meanings assigned by the federal Centers for Disease Control and Prevention.

Sec. 98.104.  ALTERNATIVE FOR REPORTABLE SURGICAL SITE INFECTIONS.  A health care facility that does not perform at least an average of 50 procedures per month of the procedures listed in Section 98.103(a) or (b), as modified under Section 98.105, is not required to comply with the reporting requirements of Section 98.103 but instead shall report to the department the surgical site infections relating to the three surgical procedures most frequently performed at the facility, based on the list of surgical procedures promulgated by the federal Centers for Disease Control and Prevention's National Healthcare Safety Network or its successor.

Sec. 98.105.  REPORTING SYSTEM MODIFICATIONS.  Based on the recommendations of the advisory panel, the executive commissioner by rule may modify in accordance with this chapter the list of procedures that are reportable under Section 98.103 or 98.104.  The modifications must be based on changes in reporting guidelines and in definitions established by the federal Centers for Disease Control and Prevention.

Sec. 98.106.  DEPARTMENTAL SUMMARY.  (a)  The department shall compile and make available to the public a summary, by health care facility, of the infections reported by facilities under Sections 98.103 and 98.104.

JA_008365

USA_00023247

Case 2:13-cv-00193  Document 664-8  Filed on 11/11/14 in TXSD  Page 49 of 78
e 1:12-cv-00128-RMC-DST-RLW  Document 215-4  Filed 06/20/12  Page 84 of
Tuesday, May 15, 2007          SENATE JOURNAL          2109

(b)  The departmental summary must be risk adjusted and include a comparison of the risk-adjusted infection rates for each health care facility in this state that is required to submit a report under Sections 98.103 and 98.104.

(c)  In consultation with the advisory panel, the department shall publish the departmental summary in a format that is easy to read.

(d)  The department shall publish the departmental summary at least annually and may publish the summary more frequently as the department considers appropriate.

(e)  The executive commissioner by rule shall allow a health care facility to submit concise written comments regarding information contained in the departmental summary that relates to the facility.  The department shall attach the facility's comments to the public report and the comments must be in the same format as the summary.

(f)  The disclosure of written comments to the department by a health care facility as provided by Subsection (e) does not constitute a waiver of a privilege or protection under Section 98.109.

(g)  The department shall make the departmental summary available on an Internet website administered by the department and may make the summary available through other formats accessible to the public. The website must contain a statement informing the public of the option to report suspected health care-associated infections to the department.

Sec. 98.107.  EDUCATION AND TRAINING REGARDING REPORTING SYSTEM.  The department shall provide education and training for health care facility staff regarding this chapter.  The training must be reasonable in scope and focus primarily on:

(1)  the implementation and management of a facility reporting mechanism;

(2)  characteristics of the reporting system, including public reporting by the department and facility reporting to the department;

(3)  confidentiality; and

(4)  legal protections.

Sec. 98.108.  FREQUENCY OF REPORTING.  In consultation with the advisory panel, the executive commissioner by rule shall establish the frequency of reporting by health care facilities required under Sections 98.103 and 98.104. Facilities may not be required to report more frequently than quarterly.

Sec. 98.109.  CONFIDENTIALITY; PRIVILEGE.  (a)  Except as provided by Sections 98.106 and 98.110, all information and materials obtained or compiled or reported by the department under this chapter or compiled or reported by a health care facility under this chapter, and all related information and materials, are confidential and:

(1)  are not subject to disclosure under Chapter 552, Government Code, or discovery, subpoena, or other means of legal compulsion for release to any person; and

(2)  may not be admitted as evidence or otherwise disclosed in any civil, criminal, or administrative proceeding.

JA_008366

USA_00023248

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 50 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 85 of
2170                    80th Legislature — Regular Session                 62nd Day

(b)  The confidentiality protections under Subsection (a) apply without regard to whether the information or materials are obtained from or compiled or reported by a health care facility or an entity that has an ownership or management interest in a facility.

(c)  The transfer of information or materials under this chapter is not a waiver of a privilege or protection granted under law.

(d)  The provisions of this section regarding the confidentiality of information or materials compiled or reported by a health care facility in compliance with or as authorized under this chapter do not restrict access, to the extent authorized by law, by the patient or the patient's legally authorized representative to records of the patient's medical diagnosis or treatment or to other primary health records.

(e)  A department summary or disclosure may not contain information identifying a facility patient, employee, contractor, volunteer, consultant, health care professional, student, or trainee in connection with a specific infection incident.

Sec. 98.110.  DISCLOSURE WITHIN DEPARTMENT.  Notwithstanding any other law, the department may disclose information reported by health care facilities under Section 98.103 or 98.104 to other programs within the department for public health research or analysis purposes only, provided that the research or analysis relates to health care-associated infections.  The privilege and confidentiality provisions contained in this chapter apply to such disclosures.

Sec. 98.111.  CIVIL ACTION.  Published infection rates may not be used in a civil action to establish a standard of care applicable to a health care facility.

[Sections 98.112-98.150 reserved for expansion]

SUBCHAPTER D. ENFORCEMENT

Sec. 98.151.  VIOLATIONS. (a) Except as provided by Subsection (b), a general hospital that violates this chapter or a rule adopted under this chapter is subject to the enforcement provisions of Subchapter C, Chapter 241, and rules adopted and enforced under that subchapter as if the hospital violated Chapter 241 or a rule adopted under that chapter.

(b)  Subsection (a) does not apply to a comprehensive medical rehabilitation hospital as defined in Section 241.003.

(c)  An ambulatory surgical center that violates this chapter or a rule adopted under this chapter is subject to the enforcement provisions of Chapter 243 and rules adopted and enforced under that chapter as if the center violated Chapter 243 or a rule adopted under that chapter.

SECTION 2.  Not later than June 1, 2008, the Department of State Health Services shall establish the Texas Health Care-Associated Infection Reporting System as required under Chapter 98, Health and Safety Code, as added by this Act.

SECTION 3  (a)  As soon as practicable after the effective date of this Act, the executive commissioner of the Health and Human Services Commission shall adopt the rules and procedures necessary to implement Chapter 98, Health and Safety Code, as added by this Act.

(b)  As soon as practicable after the effective date of this Act, the commissioner of state health services shall appoint members to the Advisory Panel on Health Care-Associated Infections as required by Chapter 98, Health and Safety Code, as added by this Act.

JA_008367

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 51 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 86 of
Tuesday, May 15, 2007          SENATE JOURNAL                          2111

SECTION 4.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

The amendment was read.

Senator Nelson moved to concur in the House amendment to **SB 288**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### SENATE BILL 291 WITH HOUSE AMENDMENTS

Senator Nelson called **SB 291** from the President's table for consideration of the House amendments to the bill.

The Presiding Officer laid the bill and the House amendments before the Senate.

**Amendment**

Amend **SB 291** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED
AN ACT

relating to criminal history record information for guardianship proceedings and to lists of certain public guardians; providing a criminal penalty.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  The heading to Section 697A, Texas Probate Code, is amended to read as follows:

Sec. 697A. LIST OF CERTAIN PUBLIC GUARDIANS MAINTAINED BY COUNTY CLERKS OR GUARDIANSHIP CERTIFICATION BOARD.

SECTION 2.  Subsections (b) and (c), Section 697A, Texas Probate Code, are amended to read as follows:

(b)  Not later than February 1 of each year, the [The] Department of Aging and Disability Services[, if the department files an application for and is appointed to serve as guardian for one or more incapacitated persons residing in the county as provided by Subchapter E, Chapter 161, Human Resources Code,] shall submit [annually] to the Guardianship Certification Board a statement containing:

(1)  the name, address, and telephone number of each department employee who is or will be providing guardianship services to a ward or proposed ward on behalf of the department; and

(2)  the name of the county or counties in which each employee named in Subdivision (1) of this subsection is providing or is authorized to provide those services [county clerk the information required under Subsection (a) of this section for each department employee who is or will be providing guardianship services in the county on the department's behalf].

(c)  Not later than February 1 of each year, the county clerk shall submit to the Guardianship Certification Board the information received under Subsection (a) of this section during the preceding year.

SECTION 3.  Section 698, Texas Probate Code, is amended to read as follows:

JA_008368

USA_00023250

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 52 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 87 of
2112                    80th Legislature — Regular Session              62nd Day

Sec. 698.  ACCESS TO CRIMINAL HISTORY RECORDS.  (a)  Except as provided by Subsections (a-1) and (a-5) of this section, the [The] clerk of the county having venue over the proceeding for the appointment of a guardian shall obtain criminal history record information that is maintained by the Department of Public Safety or the Federal Bureau of Investigation identification division relating to:

(1)  a private professional guardian;

(2)  each person who represents or plans to represent the interests of a ward as a guardian on behalf of the private professional guardian;

(3)  each person employed by a private professional guardian who will:

(A)  have personal contact with a ward or proposed ward;

(B)  exercise control over and manage a ward's estate; or

(C)  perform any duties with respect to the management of a ward's estate;

(4)  each person employed by or volunteering or contracting with a guardianship program to provide guardianship services to a ward of the program on the program's behalf; or

(5)  any other person proposed to serve as a guardian under this chapter, including a proposed temporary guardian and a proposed successor guardian [an employee of the Department of Aging and Disability Services who is or will be providing guardianship services to a ward of the department].

(a-1)  The Department of Aging and Disability Services shall obtain criminal history record information that is maintained by the Department of Public Safety or the Federal Bureau of Investigation identification division relating to each individual who is or will be providing guardianship services to a ward of or referred by the department, including:

(1)  an employee of or an applicant selected for an employment position with the Department of Aging and Disability Services;

(2)  a volunteer or an applicant selected to volunteer with the Department of Aging and Disability Services;

(3)  an employee of or an applicant selected for an employment position with a business entity or other person that contracts with the Department of Aging and Disability Services to provide guardianship services to a ward referred by the department; and

(4)  a volunteer or an applicant selected to volunteer with a business entity or other person described by Subdivision (3) of this subsection.

(a-2)  The information in Subsection (a-1) of this section regarding applicants for employment positions must be obtained before an offer of employment, and the information regarding applicant volunteers must be obtained before the person's contact with a ward of or referred by the Department of Aging and Disability Services.

(a-3)  The information in Subsection (a-1) of this section regarding employees or volunteers providing guardianship services must be obtained annually.

(a-4)  The Department of Aging and Disability Services shall provide the information obtained under Subsection (a-1) of this section to:

(1)  the clerk of the county having venue over the guardianship proceeding at the request of the court; and

JA_008369

USA_00023251

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 53 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 88 of
Tuesday, May 15, 2007        SENATE JOURNAL                        2113

(2)  the Guardianship Certification Board at the request of the board.

(a-5)  Not later than the 10th day before the date of the hearing to appoint a guardian, a person may submit to the clerk a copy of the person's criminal history record information required under Subsection (a)(5) of this section that the person obtains from the Department of Public Safety or the Federal Bureau of Investigation not earlier than the 30th day before the date of the hearing.

(b)  The criminal history record information obtained under Subsection (a) or (a-5) of this section is for the exclusive use of the court and is privileged and confidential. The criminal history record information may not be released or otherwise disclosed to any person or agency except on court order or consent of the person being investigated. The county clerk may destroy the criminal history information records after the records are used for the purposes authorized by this section.

(b-1)  The criminal history record information obtained under Subsection (a-4) of this section is for the exclusive use of the court or Guardianship Certification Board, as appropriate, and is privileged and confidential. The information may not be released or otherwise disclosed to any person or agency except on court order or consent of the person being investigated. The county clerk or Guardianship Certification Board may destroy the criminal history record information after the information is used for the purposes authorized by this section.

(c)  The court shall use the information obtained under this section only in determining whether to:

(1)  appoint, remove, or continue the appointment of a private professional guardian, a guardianship program, or the Department of Aging and Disability Services; or

(2)  appoint any other person proposed to serve as a guardian under this chapter, including a proposed temporary guardian and a proposed successor guardian.

(c-1)  Criminal history record information obtained by the Guardianship Certification Board under Subsection (a-4)(2) of this section may be used for any purpose related to the issuance, denial, renewal, suspension, or revocation of a certificate issued by the board.

(d)  A person commits an offense if the person releases or discloses any information received under this section without the authorization prescribed by Subsection (b) or (b-1) of this section. An offense under this subsection is a Class A misdemeanor.

(e)  The clerk may charge a $10 [reasonable] fee [sufficient] to recover the costs of obtaining criminal history information records authorized by Subsection (a) of this section.

(f)  This section does not prohibit the Department of Aging and Disability Services from obtaining and using criminal history record information as provided by other law.

SECTION 4.  Section 411.1386, Government Code, is amended to read as follows:

Sec. 411.1386.  ACCESS TO CRIMINAL HISTORY RECORD INFORMATION: COURT CLERK; DEPARTMENT OF AGING AND DISABILITY SERVICES; GUARDIANSHIPS. (a) Except as provided by Subsections (a-1) and (a-5), the [The] clerk of the county having venue over a

USA_00023252

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 54 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 89 of
2114                    80th Legislature — Regular Session                    62nd Day

proceeding for the appointment of a guardian under Chapter XIII [13], Texas Probate Code, shall [is entitled to] obtain from the department criminal history record information maintained by the department that relates to:

    (1)  a private professional guardian;

    (2)  each person who represents or plans to represent the interests of a ward as a guardian on behalf of the private professional guardian; [or]

    (3)  each person employed by a private professional guardian who will:

        (A)  have personal contact with a ward or proposed ward;

        (B)  exercise control over and manage a ward's estate; or

        (C)  perform any duties with respect to the management of a ward's estate;

    (4)  each person employed by or volunteering or contracting with a guardianship program to provide guardianship services to a ward of the program on the program's behalf; or

    (5)  any other person proposed to serve as a guardian under Chapter XIII, Texas Probate Code, including a proposed temporary guardian and a proposed successor guardian.

    (a-1)  The Department of Aging and Disability Services shall obtain from the Department of Public Safety criminal history record information maintained by the Department of Public Safety that relates to each individual who is or will be providing guardianship services to a ward of or referred by the Department of Aging and Disability Services, including:

    (1)  an employee of or an applicant selected for an employment position with the Department of Aging and Disability Services;

    (2)  a volunteer or an applicant selected to volunteer with the Department of Aging and Disability Services;

    (3)  an employee of or an applicant selected for an employment position with a business entity or other person that contracts with the Department of Aging and Disability Services to provide guardianship services to a ward referred by the department; and

    (4)  a volunteer or an applicant selected to volunteer with a business entity or person described by Subdivision (3).

    (a-2)  The information in Subsection (a-1) regarding applicants for employment positions must be obtained before an offer of employment, and the information regarding applicant volunteers must be obtained before the person's contact with a ward of or referred by the Department of Aging and Disability Services.

    (a-3)  The information in Subsection (a-1) regarding employees or volunteers providing guardianship services must be obtained annually.

    (a-4)  The Department of Aging and Disability Services shall provide the information obtained under Subsection (a-1) to:

    (1)  the clerk of the county having venue over the guardianship proceeding at the request of the court; and

    (2)  the Guardianship Certification Board at the request of the board.

JA_008371

USA_00023253

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 55 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 90 of
Tuesday, May 15, 2007         SENATE JOURNAL                      2113

(a-5)  Not later than the 10th day before the date of the hearing to appoint a guardian, a person may submit to the clerk a copy of the person's criminal history record information required under Subsection (a)(5) that the person obtains from the department not earlier than the 30th day before the date of the hearing.

(b)  Criminal history record information obtained by a clerk under Subsection (a) or (a-5) is for the exclusive use of the court and is privileged and confidential [may be used only in determining whether to appoint, remove, or continue the appointment of a private professional guardian].

(c)  Criminal history record information obtained by a clerk under Subsection (a) or (a-5) may not be released or disclosed to any person or agency except on court order or with the consent of the person who is the subject of the information. The clerk may destroy the criminal history record information after the information is used for the purposes authorized by this section.

(d)  The criminal history record information obtained under Subsection (a-4) is for the exclusive use of the court or Guardianship Certification Board, as appropriate, and is privileged and confidential. The information may not be released or otherwise disclosed to any person or agency except on court order or consent of the person being investigated. The county clerk or Guardianship Certification Board may destroy the criminal history record information after the information is used for the purposes authorized by this section.

(e)  The court, as that term is defined by Section 601, Texas Probate Code, shall use the information obtained under Subsection (a), (a-4)(1), or (a-5) only in determining whether to:

(1)  appoint, remove, or continue the appointment of a private professional guardian, a guardianship program, or the Department of Aging and Disability Services; or

(2)  appoint any other person proposed to serve as a guardian under Chapter XIII, Texas Probate Code, including a proposed temporary guardian and a proposed successor guardian.

(f)  Criminal history record information obtained by the Guardianship Certification Board under Subsection (a-4)(2) may be used for any purpose related to the issuance, denial, renewal, suspension, or revocation of a certificate issued by the board.

(g)  A person commits an offense if the person releases or discloses any information received under this section without the authorization prescribed by Subsection (c) or (d). An offense under this subsection is a Class A misdemeanor.

(h)  The county clerk may charge a $10 fee to recover the costs of obtaining criminal history information records authorized by Subsection (a).

(i)  This section does not prohibit the Department of Aging and Disability Services from obtaining and using criminal history record information as provided by other law.

SECTION 5.  The change in law made by this Act:

(1)  by the amendment of Section 411.1386(a), Government Code, other than the addition of Subdivision (5) to that section, is made to conform to Section 698(a), Texas Probate Code, as that section existed immediately before the effective date of this Act;

JA_008372

(2)  by the amendment of Sections 411.1386(b) and (c), Government Code, and the addition of Section 411.1386(e), Government Code, other than the addition of Subdivision (2) and the reference to Sections 411.1386(a-4)(1) and (a-5), Government Code, is made to conform to Sections 698(b) and (c), Texas Probate Code, as those sections existed immediately before the effective date of this Act; and

(3)  by the addition of Section 411.1386(g), Government Code, other than the addition of the reference to Section 411.1386(d), Government Code, is made to conform to Section 698(d), Texas Probate Code, as that section existed immediately before the effective date of this Act.

SECTION 6.  This Act takes effect September 1, 2007.

**Floor Amendment No. 1**

Amend **CSSB 291** (House committee report) as follows:

(1)  In SECTION 3 of the bill, in Subsection (a), Section 698, Texas Probate Code (page 3, lines 5 through 9), strike amended Subdivision (5) and substitute the following:

(5)  any other person proposed to serve as a guardian under this chapter, including a proposed temporary guardian and a proposed successor guardian, other than the ward's or proposed ward's family member or an attorney [an employee of the Department of Aging and Disability Services who is or will be providing guardianship services to a ward of the department].

(2)  In SECTION 3 of the bill, in added Paragraph (2), Subsection (c), Section 698, Texas Probate Code (page 5, line 22), between "guardian" and the period, insert ", other than the ward's or proposed ward's family member or an attorney".

(3)  In SECTION 4 of the bill, in added Subdivision (5), Subsection (a), Section 411.1386, Government Code (page 7, line 11), between "guardian" and the period, insert ", other than the ward's or proposed ward's family member or an attorney".

(4)  In SECTION 4 of the bill, in added Paragraph (2), Subsection (e), Section 411.1386, Government Code (page 9, line 23), between "guardian" and the underlined period, insert ", other than the ward's or proposed ward's family member or an attorney".

The amendments were read.

Senator Nelson moved to concur in the House amendments to **SB 291**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### SENATE BILL 796 WITH HOUSE AMENDMENTS

Senator Janek called **SB 796** from the President's table for consideration of the House amendments to the bill.

The Presiding Officer laid the bill and the House amendments before the Senate.

**Amendment**

Amend **SB 796** by substituting in lieu thereof the following

A BILL TO BE ENTITLED
AN ACT

relating to split payments of ad valorem taxes.

JA_008373

USA_00023255

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 31.03, Tax Code, is amended by amending Subsection (b) and adding Subsection (d) to read as follows:

(b)  Except as provided by Subsection (d), the [The] split-payment option, if adopted, applies to taxes for all units for which the adopting taxing unit collects taxes.

(d)  The governing body of a taxing unit that has its taxes collected by another taxing unit that has adopted the split-payment option under Subsection (a) may provide, in the manner required by law for official action by the body, that the split-payment option does not apply to the taxing unit's taxes collected by the other taxing unit.

SECTION 2.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

**Floor Amendment No. 1**

Amend **CSSB 796** (House committee printing), in SECTION 1 of the bill, proposed Section 31.03(d), Tax Code (on page 1, line 9), between "(d)" and "The governing", by inserting "This subsection applies only to a taxing unit located in a county having a population of 250,000 or more that borders a county having a population of 3.3 million or more and the Gulf of Mexico."

The amendments were read.

Senator Janek moved to concur in the House amendments to **SB 796**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

**SENATE BILL 680 WITH HOUSE AMENDMENT**

Senator Williams called **SB 680** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Amendment**

Amend **SB 680** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED

AN ACT

relating to certain swimming pools as public nuisances in the unincorporated areas of counties.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 343.011(c), Health and Safety Code, is amended to read as follows:

(c)  A public nuisance is:

(1)  keeping, storing, or accumulating refuse on premises in a neighborhood unless the refuse is entirely contained in a closed receptacle;

USA_00023256

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 58 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 93 of
2118            80th Legislature — Regular Session            62nd Day

(2) keeping, storing, or accumulating rubbish, including newspapers, abandoned vehicles, refrigerators, stoves, furniture, tires, and cans, on premises in a neighborhood or within 300 feet of a public street for 10 days or more, unless the rubbish or object is completely enclosed in a building or is not visible from a public street;

(3) maintaining premises in a manner that creates an unsanitary condition likely to attract or harbor mosquitoes, rodents, vermin, or disease-carrying pests;

(4) allowing weeds to grow on premises in a neighborhood if the weeds are located within 300 feet of another residence or commercial establishment;

(5) maintaining a building in a manner that is structurally unsafe or constitutes a hazard to safety, health, or public welfare because of inadequate maintenance, unsanitary conditions, dilapidation, obsolescence, disaster, damage, or abandonment or because it constitutes a fire hazard;

(6) maintaining on abandoned and unoccupied property in a neighborhood[, or maintaining on any property in a neighborhood in a county with a population of more than 1.1 million,] a swimming pool that is not protected with:

(A) a fence that is at least four feet high and that has a latched and locked gate [that cannot be opened by a child]; and [or]

(B) a cover over the entire swimming pool that cannot be removed by a child;

(7) maintaining on any property in a neighborhood in a county with a population of more than 1.1 million a swimming pool that is not protected with:

(A) a fence that is at least four feet high and that has a latched gate that cannot be opened by a child; or

(B) a cover over the entire swimming pool that cannot be removed by a child;

(8) maintaining a flea market in a manner that constitutes a fire hazard;

(9) [(8)] discarding refuse or creating a hazardous visual obstruction on:

(A) county-owned land; or

(B) land or easements owned or held by a special district that has the commissioners court of the county as its governing body;

(10) [(9)] discarding refuse on the smaller of:

(A) the area that spans 20 feet on each side of a utility line; or

(B) the actual span of the utility easement; or

(11) [(10)] filling or blocking a drainage easement, failing to maintain a drainage easement, maintaining a drainage easement in a manner that allows the easement to be clogged with debris, sediment, or vegetation, or violating an agreement with the county to improve or maintain a drainage easement.

SECTION 2. Sections 343.013(c) and (d), Health and Safety Code, are amended to read as follows:

(c) A county may bring suit under this section to prohibit or control access to the premises to prevent a continued or future violation of Section 343.011(c)(1), (6), (9) [(8)], or (10) [(9)]. The court may grant relief under this subsection only if the county demonstrates that:

JA_008375

USA_00023257

Case 2:13-cv-00193  Document 664-8  Filed on 11/11/14 in TXSD  Page 59 of 78
e 1:12-cv-00128-RMC-DST-RLW  Document 215-4  Filed 06/20/12  Page 94 of
Tuesday, May 15, 2007                SENATE JOURNAL                      2119

(1) the person responsible for causing the public nuisance has not responded sufficiently to previous attempts to abate a nuisance on the premises, if the relief sought prohibits or controls access of a person other than the owner; or

(2) the owner of the premises knew about the nuisance and has not responded sufficiently to previous attempts to abate a nuisance on the premises, if the relief sought controls access of the owner.

(d)  In granting relief under Subsection (c), the court:

(1)  may not, in a suit brought under Section 343.011(c)(10) [343.011(e)(9)], prohibit or control access by the owner or operator of a utility line or utility easement to that utility line or utility easement; and

(2)  may not prohibit the owner of the premises from accessing the property but may prohibit a continued or future violation.

SECTION 3.  Section 343.021, Health and Safety Code, is amended to read as follows:

Sec. 343.021.  AUTHORITY TO ABATE NUISANCE.  If a county adopts abatement procedures that are consistent with the general purpose of this chapter and that conform to this chapter, the [A] county may abate a nuisance under this chapter:

(1)  by demolition or removal;

(2)  [or,] in the case of a nuisance under Section 343.011(c)(1), (9) [(8)], or (10) [(9)], by prohibiting or controlling [prohibition or control of] access to the premises; or

(3)  in the case of a nuisance under Section 343.011(c)(6), by:

(A)  prohibiting or controlling access to the premises and installing a cover that cannot be opened by a child over the entire swimming pool; or

(B)  draining and filling the swimming pool [, if the county adopts abatement procedures that are consistent with the general purpose of this chapter and that conform to this chapter].

SECTION 4.  Section 343.022, Health and Safety Code, is amended by amending Subsections (a), (c), and (e) and adding Subsection (f) to read as follows:

(a)  The abatement procedures adopted by the commissioners court must be administered by a regularly salaried, full-time county employee, but the prohibition or control of access to the premises to prevent a violation of Section 343.011(c)(1), (6), (9) [(8)], or (10) [(9)], or the removal or demolition of the nuisance, may be made by a person authorized by the person administering the abatement program.

(c)  The notice must state:

(1)  the specific condition that constitutes a nuisance;

(2)  that the person receiving notice shall abate the nuisance before the:

(A)  31st day after the date on which the notice is served, if the person has not previously received a notice regarding a nuisance on the premises; or

(B)  10th business day after the date on which the notice is served, if the person has previously received a notice regarding a nuisance on the premises;

(3)  that failure to abate the nuisance may result in:

(A)  abatement by the county;

(B)  assessment of costs to the person responsible for causing the nuisance when that person can be identified; and

JA_008376

Case 2:13-cv-00193 Document 664-8 Filed on 11/11/14 in TXSD Page 60 of 78
e 1:12-cv-00128-RMC-DST-RLW Document 215-4 Filed 06/20/12 Page 95 of
2120          80th Legislature — Regular Session          62nd Day

(C) a lien against the property on which the nuisance exists, if the person responsible for causing the nuisance has an interest in the property;

(4) that the county may prohibit or control access to the premises to prevent a continued or future nuisance described by Section 343.011(c)(1), (6), (9) [(8)], or (10) [(9)]; and

(5) that the person receiving notice is entitled to submit a written request for a hearing before the:

(A) 31st day after the date on which the notice is served, if the person has not previously received a notice regarding a nuisance on the premises; or

(B) 10th business day after the date on which the notice is served, if the person has previously received a notice regarding a nuisance on the premises.

(e) Except as provided in Subsection (f), the [The] abatement procedures must require a hearing before the county abates the nuisance if a hearing is requested. The hearing may be conducted before the commissioners court or any board, commission, or official designated by the commissioners court. The commissioners court may designate a board, commission, or official to conduct each hearing.

(f) A county may, before conducting a hearing, abate a nuisance under Section 343.011(c)(6) by prohibiting or controlling access to the premises on which the nuisance is located and installing a cover that cannot be opened by a child over the entire swimming pool, but only if the county conducts a hearing otherwise in accordance with Subsection (e) after the nuisance is abated.

SECTION 5. Section 343.0235, Health and Safety Code, is amended to read as follows:

Sec. 343.0235. USE OF COUNTY FUNDS. A county is entitled to use any money available under other law for a cleanup or remediation of private property to abate a nuisance described by Section 343.011(c)(1), (9) [(8)], or (10) [(9)].

SECTION 6. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

The amendment was read.

Senator Williams moved to concur in the House amendment to **SB 680**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

### SENATE BILL 1502 WITH HOUSE AMENDMENT

Senator Zaffirini called **SB 1502** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Amendment**

Amend **SB 1502** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED
AN ACT

relating to the adoption, increase, or abolition of a sales and use tax by an emergency services district.

JA_008377

USA_00023259

Case 2:13-cv-00193  Document 664-8  Filed on 11/11/14 in TXSD  Page 61 of 78
e 1:12-cv-00128-RMC-DST-RLW  Document 215-4  Filed 06/20/12  Page 96 of
Tuesday, May 15, 2007        SENATE JOURNAL                            2121

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 775.0751, Health and Safety Code, is amended by amending Subsections (c) and (d) and adding Subsection (c-1) to read as follows:

(c) Except as provided by Subsection (c-1), a [A] district may not adopt a tax under this section or increase the rate of the tax if as a result of the adoption of the tax or the tax increase the combined rate of all sales and use taxes imposed by the district and other political subdivisions of this state having territory in the district would exceed two percent at any location in the district.

(c-1) A district that otherwise would be precluded from adopting a sales and use tax under Subsection (c) may adopt a sales and use tax, change the rate of its sales and use tax, or abolish its sales and use tax at an election held as provided by Section 775.0752, if the board:

(1) excludes from the election and the applicability of any proposed sales and use tax any territory in the district where the sales and use tax is then at two percent; and

(2) not later than the 30th day after the date on which the board issues the election order, gives, for informational purposes, written or oral notice on the proposed imposition, increase, or abolition of the sales and use tax, including the reasons for the proposed change, to the commissioners court of each county in which the district is located.

(d) If the voters of a district approve the adoption of the tax or an increase in the tax rate at an election held on the same election date on which another political subdivision of this state adopts a sales and use tax or approves the increase in the rate of its sales and use tax and as a result the combined rate of all sales and use taxes imposed by the district and other political subdivisions of this state having territory in the portion of the district in which the district sales and use tax will apply would exceed two percent at any location in that portion of the district, the election to adopt a sales and use tax or to increase the rate of the sales and use tax in the district under this subchapter has no effect.

SECTION 2. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

The amendment was read.

Senator Zaffirini moved to concur in the House amendment to **SB 1502**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### CONFERENCE COMMITTEE ON HOUSE BILL 1270

Senator Van de Putte called from the President's table, for consideration at this time, the request of the House for a conference committee to adjust the differences between the two Houses on **HB 1270** and moved that the request be granted.

The motion prevailed without objection.

JA_008378

USA_00023260

The Presiding Officer, Senator Brimer in Chair, asked if there were any motions to instruct the conference committee on **HB 1270** before appointment.

There were no motions offered.

Accordingly, the Presiding Officer announced the appointment of the following conferees on the part of the Senate: Senators Van de Putte, Chair; Shapiro, Janek, Averitt, and Zaffirini.

### SENATE BILL 1867 WITH HOUSE AMENDMENTS

Senator Zaffirini called **SB 1867** from the President's table for consideration of the House amendments to the bill.

The Presiding Officer laid the bill and the House amendments before the Senate.

#### Floor Amendment No. 1 on Third Reading

Amend **SB 1867** on third reading by adding the following appropriately numbered SECTION to read as follows and renumbering subsequent SECTIONS accordingly:

SECTION ____. Subchapter E, Chapter 232, Local Government Code, is amended by adding Sections 232.108 and 232.109 to read as follows:

Sec. 232.108. PLAT REQUIREMENTS. (a) The commissioners court, in addition to having the authority to adopt rules under Section 232.101 and other authority granted by this chapter, may impose the plat requirements prescribed by Section 232.023. If the commissioners court imposes the plat requirements prescribed by Section 232.023, any rules adopted under Section 232.101 must be consistent with those requirements.

(b) If a county imposing the plat requirements prescribed by Section 232.023 is not described by Section 232.022(a):

(1) the document required by Section 232.023(b)(6) is not required to be in Spanish; and

(2) the plat requirements related to drainage shall be those authorized by Section 232.003(8) rather than those authorized by Section 232.023(b)(8).

Sec. 232.109. FIRE SUPPRESSION SYSTEM. In a subdivision that is not served by fire hydrants as part of a centralized water system certified by the Texas Commission on Environmental Quality as meeting minimum standards for water utility service, the commissioners court may require a limited fire suppression system that requires a developer to construct:

(1) for a subdivision of fewer than 50 houses, 2,500 gallons of storage; or

(2) for a subdivision of 50 or more houses, 2,500 gallons of storage with a centralized water system or 5,000 gallons of storage.

SECTION ____. Section 232.100, Local Government Code, is repealed.

#### Floor Amendment No. 2 on Third Reading

Amend **SB 1867** on third reading by adding the following appropriately numbered SECTION to read as follows and renumbering subsequent SECTIONS accordingly:

SECTION ____. Section 232.101(b), Local Government Code, is amended to read as follows:

JA_008379

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 63 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 98 of
Tuesday, May 15, 2007          SENATE JOURNAL                        2123

(b) Unless otherwise authorized by state law, a commissioners court shall not regulate under this section:

(1) the use of any building or property for business, industrial, residential, or other purposes;

(2) the bulk, height, or number of buildings constructed on a particular tract of land;

(3) the size of a building that can be constructed on a particular tract of land, including without limitation and restriction on the ratio of building floor space to the land square footage; [or]

(4) the number of residential units that can be built per acre of land;

(5) a plat or subdivision in an adjoining county; or

(6) road access to a plat or subdivision in an adjoining county.

The amendments were read.

Senator Zaffirini moved to concur in the House amendments to **SB 1867**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### SENATE BILL 66 WITH HOUSE AMENDMENT

Senator Zaffirini called **SB 66** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

### Floor Amendment No. 1

Amend **SB 66** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS accordingly:

SECTION ____.  Subchapter A, Chapter 143, Agriculture Code, is amended by adding Section 143.003 to read as follows:

Sec. 143.003.  CATTLE ON COUNTY ROAD WITH CATTLE GUARD. Cattle on a county road are not considered to be running at large if the county road:

(1)  separates two tracts of land under common ownership or lease; and

(2)  contains a cattle guard constructed as authorized under Section 251.009, Transportation Code, that serves as part of the fencing of the two tracts.

The amendment was read.

Senator Zaffirini moved to concur in the House amendment to **SB 66**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### COMMITTEE  SUBSTITUTE
### SENATE JOINT RESOLUTION 57 ON SECOND READING

On motion of Senator Williams and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSJR 57** at this time on its second reading:

**CSSJR 57**, Proposing a constitutional amendment providing for the issuance of general obligation bonds to finance educational loans to students and for authority to enter into bond enhancement agreements with respect to general obligation bonds issued for that purpose.

JA_008380

USA_00023262

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 64 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 99 of
2124                    80th Legislature — Regular Session                    62nd Day

The resolution was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment except as follows:

Absent: Ogden.

### COMMITTEE SUBSTITUTE
### SENATE JOINT RESOLUTION 57 ON THIRD READING

Senator Williams moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSJR 57** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 30, Nays 0.

Absent: Ogden.

The resolution was read third time and was passed by the following vote: Yeas 30, Nays 0. (Same as previous roll call)

### SENATE RULES SUSPENDED
### (Posting Rules)

On motion of Senator West and by unanimous consent, Senate Rule 11.10(a) and Senate Rule 11.18(a) were suspended in order that the Committee on Intergovernmental Relations might meet and consider the following bills today:

**HB 2782, HB 3988, HB 3989, HB 3998, HB 4016, HB 4017, HB 4018, HB 4046, HB 4056, HB 4073, HB 4079, HB 4083, HB 4084, HB 4104, HB 1742, HB 3038, HB 4113**.

### SENATE RULES SUSPENDED
### (Posting Rules)

On motion of Senator Duncan and by unanimous consent, Senate Rule 11.10(a) and Senate Rule 11.18(a) were suspended in order that the Committee on State Affairs might meet and consider the following bills tomorrow:

**SB 2041, HB 1847, HB 1977, HB 2467**.

### SENATE RULES SUSPENDED
### (Posting Rules)

On motion of Senator Lucio and by unanimous consent, Senate Rule 11.10(a) and Senate Rule 11.18(a) were suspended in order that the Committee on International Relations and Trade might meet and consider the following bills at his desk today:

**HB 2235, HB 3594**.

### SENATE RULES SUSPENDED
### (Posting Rules)

On motion of Senator Gallegos and by unanimous consent, Senate Rule 11.10(a) and Senate Rule 11.18(a) were suspended in order that the Subcommittee on Flooding and Evacuations might meet and consider the following bills today:

**SB 1228, SB 1583, HB 3698**.

JA_008381

USA_00023263

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 65 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 100 of
Tuesday, May 15, 2007        SENATE JOURNAL                    2123

## SENATE RULES SUSPENDED
### (Posting Rules)

On motion of Senator Zaffirini and by unanimous consent, Senate Rule 11.10(a) and Senate Rule 11.18(a) were suspended in order that the Subcommittee on Higher Education might meet and consider the following bills tomorrow:

**HB 1250**, **HB 1427**, **HB 3114**, **HB 3236**, **HB 3449**, **HB 3851**, **HB 589**, **HB 1213**, **SB 2049**.

## SENATE RULES SUSPENDED
### (Posting Rules)

On motion of Senator Ellis and by unanimous consent, Senate Rule 11.10(a) and Senate Rule 11.18(a) were suspended in order that the Committee on Government Organization might meet and consider the following bills today:  **HB 2426**, **HB 3560**.

## SENATE RULE 11.10(a) SUSPENDED
### (Public Notice of Committee Meetings)

On motion of Senator Watson and by unanimous consent, Senate Rule 11.10(a) was suspended in order that the Committee on Natural Resources might meet today at Senator Averitt's desk.

## SENATE RULES SUSPENDED
### (Posting Rules)

On motion of Senator Fraser and by unanimous consent, Senate Rule 11.10(a) and Senate Rule 11.18(a) were suspended in order that the Committee on Business and Commerce might meet and consider **HB 3440** today.

## HOUSE BILLS AND RESOLUTION ON FIRST READING

The following bills and resolution received from the House were read first time and referred to the committees indicated:

**HB 52** to Committee on Health and Human Services.
**HB 448** to Committee on Jurisprudence.
**HB 555** to Committee on Jurisprudence.
**HB 1646** to Committee on Jurisprudence.
**HB 1747** to Committee on Health and Human Services.
**HB 1775** to Subcommittee on Higher Education.
**HB 1919** to Committee on State Affairs.
**HB 2216** to Committee on Transportation and Homeland Security.
**HB 2403** to Committee on Intergovernmental Relations.
**HB 3147** to Committee on Business and Commerce.
**HB 3609** to Committee on Administration.
**HJR 30** to Committee on State Affairs.

## SENATE RULE 11.13 SUSPENDED
### (Consideration of Bills in Committees)

On motion of Senator Eltife and by unanimous consent, Senate Rule 11.13 was suspended to grant all committees permission to meet while the Senate was meeting today.

USA_00023264

## MOTION TO ADJOURN

On motion of Senator Whitmire and by unanimous consent, the Senate at 2:41 p.m. agreed to adjourn, upon completion of the introduction of bills and resolutions on first reading, until 11:00 a.m. tomorrow.

## AT EASE

The Presiding Officer, Senator Brimer in Chair, at 2:42 p.m. announced the Senate would stand At Ease subject to the call of the Chair.

## IN LEGISLATIVE SESSION

The President at 8:23 p.m. called the Senate to order as In Legislative Session.

## SENATE BILLS AND RESOLUTION ON FIRST READING

The following bills and resolution, filed on or before Friday, March 9, 2007, were introduced, read first time, and referred to the committees indicated:

**SB 165** by Carona
Relating to the rate of the state gasoline tax and diesel fuel taxes.
To Committee on Transportation and Homeland Security.

**SB 628** by Carona
Relating to expanding the application of the Texas Residential Construction Commission Act to include condominium apartments.
To Committee on Business and Commerce.

**SJR 25** by Carona
Proposing a constitutional amendment authorizing the legislature to dedicate certain motor fuel taxes to the Texas mobility fund.
To Committee on Transportation and Homeland Security.

## HOUSE BILLS AND RESOLUTIONS ON FIRST READING

The following bills and resolutions received from the House were read first time and referred to the committees indicated:

**HB 12** to Committee on Finance.
**HB 14** to Committee on Finance.
**HB 89** to Committee on State Affairs.
**HB 152** to Committee on Natural Resources.
**HB 209** to Subcommittee on Higher Education.
**HB 278** to Committee on Criminal Justice.
**HB 283** to Committee on Health and Human Services.
**HB 289** to Committee on Health and Human Services.
**HB 315** to Committee on Criminal Justice.
**HB 345** to Committee on Finance.
**HB 358** to Committee on Finance.
**HB 405** to Committee on Health and Human Services.
**HB 408** to Committee on Intergovernmental Relations.
**HB 430** to Committee on Criminal Justice.
**HB 431** to Committee on Criminal Justice.
**HB 454** to Committee on Education.

USA_00023265

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 67 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 102 of
Tuesday, May 15, 2007          SENATE JOURNAL                        2129

**HB 470** to Committee on Intergovernmental Relations.
**HB 525** to Committee on Jurisprudence.
**HB 539** to Committee on Intergovernmental Relations.
**HB 541** to Committee on Criminal Justice.
**HB 544** to Subcommittee on Higher Education.
**HB 573** to Committee on Intergovernmental Relations.
**HB 586** to Committee on Transportation and Homeland Security.
**HB 615** to Committee on Intergovernmental Relations.
**HB 646** to Committee on Finance.
**HB 649** to Committee on Criminal Justice.
**HB 670** to Committee on Jurisprudence.
**HB 773** to Committee on Jurisprudence.
**HB 777** to Committee on Criminal Justice.
**HB 778** to Committee on Jurisprudence.
**HB 831** to Committee on Intergovernmental Relations.
**HB 866** to Committee on Intergovernmental Relations.
**HB 1035** to Committee on Criminal Justice.
**HB 1084** to Committee on Finance.
**HB 1111** to Committee on Criminal Justice.
**HB 1113** to Committee on Criminal Justice.
**HB 1121** to Committee on Criminal Justice.
**HB 1123** to Committee on Criminal Justice.
**HB 1166** to Committee on Business and Commerce.
**HB 1168** to Committee on Health and Human Services.
**HB 1205** to Committee on Business and Commerce.
**HB 1264** to Committee on Criminal Justice.
**HB 1267** to Committee on Criminal Justice.
**HB 1275** to Committee on Veteran Affairs and Military Installations.
**HB 1357** to Committee on Criminal Justice.
**HB 1370** to Committee on Health and Human Services.
**HB 1385** to Committee on Health and Human Services.
**HB 1431** to Subcommittee on Higher Education.
**HB 1432** to Committee on Education.
**HB 1435** to Committee on Education.
**HB 1456** to Committee on Intergovernmental Relations.
**HB 1458** to Committee on Finance.
**HB 1481** to Committee on Jurisprudence.
**HB 1503** to Committee on Criminal Justice.
**HB 1606** to Committee on Finance.
**HB 1613** to Committee on State Affairs.
**HB 1614** to Committee on Health and Human Services.
**HB 1637** to Committee on Intergovernmental Relations.
**HB 1658** to Committee on Criminal Justice.
**HB 1671** to Committee on Intergovernmental Relations.
**HB 1673** to Committee on Natural Resources.
**HB 1675** to Committee on Education.

JA_008384

USA_00023266

**HB 1680** to Committee on Intergovernmental Relations.
**HB 1687** to Committee on Criminal Justice.
**HB 1749** to Committee on Business and Commerce.
**HB 1757** to Committee on Transportation and Homeland Security.
**HB 1786** to Committee on Health and Human Services.
**HB 1795** to Committee on Business and Commerce.
**HB 1801** to Committee on Criminal Justice.
**HB 1815** to Committee on Criminal Justice.
**HB 1833** to Committee on Government Organization.
**HB 1849** to Committee on State Affairs.
**HB 1903** to Committee on Jurisprudence.
**HB 1915** to Committee on Natural Resources.
**HB 1960** to Committee on Jurisprudence.
**HB 1978** to Committee on State Affairs.
**HB 1993** to Committee on Jurisprudence.
**HB 1997** to Committee on Criminal Justice.
**HB 2001** to Committee on Natural Resources.
**HB 2034** to Committee on Health and Human Services.
**HB 2043** to Committee on Criminal Justice.
**HB 2063** to Committee on Intergovernmental Relations.
**HB 2074** to Subcommittee on Higher Education.
**HB 2078** to Committee on Jurisprudence.
**HB 2091** to Committee on Intergovernmental Relations.
**HB 2099** to Committee on Intergovernmental Relations.
**HB 2100** to Committee on Criminal Justice.
**HB 2167** to Committee on Finance.
**HB 2184** to Committee on Intergovernmental Relations.
**HB 2201** to Committee on Jurisprudence.
**HB 2207** to Committee on Jurisprudence.
**HB 2256** to Committee on Health and Human Services.
**HB 2283** to Committee on Intergovernmental Relations.
**HB 2285** to Committee on Health and Human Services.
**HB 2293** to Committee on Government Organization.
**HB 2300** to Committee on Criminal Justice.
**HB 2365** to Committee on State Affairs.
**HB 2383** to Committee on Education.
**HB 2385** to Committee on Criminal Justice.
**HB 2399** to Committee on Education.
**HB 2402** to Committee on Intergovernmental Relations.
**HB 2414** to Committee on Natural Resources.
**HB 2460** to Committee on Government Organization.
**HB 2493** to Committee on State Affairs.
**HB 2496** to Committee on Finance.
**HB 2498** to Committee on Criminal Justice.
**HB 2501** to Committee on Jurisprudence.
**HB 2529** to Committee on Education.

JA_008385

USA_00023267

**HB 2532** to Committee on Education.
**HB 2540** to Committee on Health and Human Services.
**HB 2557** to Committee on Transportation and Homeland Security.
**HB 2560** to Committee on Education.
**HB 2561** to Committee on Natural Resources.
**HB 2563** to Committee on Education.
**HB 2564** to Committee on State Affairs.
**HB 2566** to Committee on Criminal Justice.
**HB 2608** to Committee on Natural Resources.
**HB 2622** to Committee on Transportation and Homeland Security.
**HB 2644** to Committee on Health and Human Services.
**HB 2646** to Committee on Education.
**HB 2653** to Committee on Intergovernmental Relations.
**HB 2660** to Committee on Business and Commerce.
**HB 2662** to Committee on Education.
**HB 2667** to Committee on State Affairs.
**HB 2701** to Committee on State Affairs.
**HB 2709** to Committee on Finance.
**HB 2723** to Committee on Business and Commerce.
**HB 2739** to Committee on State Affairs.
**HB 2740** to Committee on Intergovernmental Relations.
**HB 2785** to Committee on Finance.
**HB 2827** to Committee on Health and Human Services.
**HB 2862** to Committee on Transportation and Homeland Security.
**HB 2864** to Committee on Education.
**HB 2868** to Committee on Finance.
**HB 2884** to Committee on Criminal Justice.
**HB 2907** to Committee on Transportation and Homeland Security.
**HB 2909** to Committee on Intergovernmental Relations.
**HB 2935** to Committee on Health and Human Services.
**HB 2936** to Committee on Business and Commerce.
**HB 2982** to Committee on Finance.
**HB 3008** to Committee on Health and Human Services.
**HB 3035** to Committee on Health and Human Services.
**HB 3083** to Committee on Jurisprudence.
**HB 3093** to Committee on Business and Commerce.
**HB 3098** to Committee on Natural Resources.
**HB 3107** to Committee on Finance.
**HB 3168** to Committee on Natural Resources.
**HB 3171** to Committee on Education.
**HB 3184** to Committee on Health and Human Services.
**HB 3190** to Committee on Transportation and Homeland Security.
**HB 3195** to Committee on Intergovernmental Relations.
**HB 3197** to Committee on Jurisprudence.
**HB 3200** to Committee on Criminal Justice.
**HB 3202** to Committee on Education.

JA_008386

**HB 3220** to Committee on Natural Resources.
**HB 3223** to Committee on Intergovernmental Relations.
**HB 3232** to Committee on Intergovernmental Relations.
**HB 3248** to Committee on Intergovernmental Relations.
**HB 3261** to Committee on Health and Human Services.
**HB 3266** to Committee on Natural Resources.
**HB 3268** to Committee on Business and Commerce.
**HB 3282** to Committee on Finance.
**HB 3297** to Committee on Education.
**HB 3298** to Committee on State Affairs.
**HB 3299** to Committee on Intergovernmental Relations.
**HB 3300** to Committee on Natural Resources.
**HB 3358** to Committee on Business and Commerce.
**HB 3377** to Committee on Criminal Justice.
**HB 3378** to Committee on Natural Resources.
**HB 3382** to Subcommittee on Higher Education.
**HB 3396** to Committee on Veteran Affairs and Military Installations.
**HB 3407** to Committee on Intergovernmental Relations.
**HB 3417** to Committee on Intergovernmental Relations.
**HB 3431** to Committee on Natural Resources.
**HB 3439** to Committee on Intergovernmental Relations.
**HB 3441** to Committee on Transportation and Homeland Security.
**HB 3443** to Committee on Health and Human Services.
**HB 3470** to Committee on State Affairs.
**HB 3487** to Committee on Education.
**HB 3502** to Committee on Natural Resources.
**HB 3503** to Committee on Intergovernmental Relations.
**HB 3513** to Committee on Health and Human Services.
**HB 3521** to Committee on Criminal Justice.
**HB 3524** to Committee on Transportation and Homeland Security.
**HB 3541** to Committee on Government Organization.
**HB 3549** to Committee on Jurisprudence.
**HB 3575** to Committee on Health and Human Services.
**HB 3578** to Committee on Jurisprudence.
**HB 3583** to Committee on Intergovernmental Relations.
**HB 3584** to Committee on Criminal Justice.
**HB 3618** to Committee on Health and Human Services.
**HB 3624** to Committee on Natural Resources.
**HB 3647** to Committee on International Relations and Trade.
**HB 3659** to Committee on Criminal Justice.
**HB 3666** to Committee on Transportation and Homeland Security.
**HB 3693** to Committee on Business and Commerce.
**HB 3706** to Committee on Business and Commerce.
**HB 3709** to Committee on Intergovernmental Relations.
**HB 3735** to Committee on Health and Human Services.
**HB 3736** to Committee on Criminal Justice.

JA_008387

USA_00023269

**HB 3739** to Committee on Natural Resources.
**HB 3764** to Committee on Natural Resources.
**HB 3780** to Committee on Natural Resources.
**HB 3828** to Committee on Education.
**HB 3837** to Committee on Natural Resources.
**HB 3838** to Committee on Natural Resources.
**HB 3845** to Committee on Natural Resources.
**HB 3854** to Committee on Transportation and Homeland Security.
**HB 3858** to Committee on Criminal Justice.
**HB 3860** to Committee on Intergovernmental Relations.
**HB 3862** to Committee on Intergovernmental Relations.
**HB 3872** to Committee on Intergovernmental Relations.
**HB 3873** to Committee on Intergovernmental Relations.
**HB 3877** to Committee on International Relations and Trade.
**HB 3934** to Subcommittee on Higher Education.
**HB 3954** to Committee on Intergovernmental Relations.
**HB 3982** to Committee on Intergovernmental Relations.
**HB 3991** to Committee on Intergovernmental Relations.
**HB 4004** to Committee on Intergovernmental Relations.
**HB 4010** to Committee on Natural Resources.
**HB 4014** to Committee on Natural Resources.
**HB 4019** to Committee on Intergovernmental Relations.
**HB 4022** to Committee on Intergovernmental Relations.
**HB 4024** to Committee on Intergovernmental Relations.
**HB 4028** to Committee on Administration.
**HB 4032** to Committee on Natural Resources.
**HB 4053** to Committee on Natural Resources.
**HB 4057** to Committee on Natural Resources.
**HB 4060** to Committee on Intergovernmental Relations.
**HB 4069** to Committee on Intergovernmental Relations.
**HB 4072** to Committee on Intergovernmental Relations.
**HB 4093** to Committee on Intergovernmental Relations.
**HB 4095** to Committee on Intergovernmental Relations.
**HB 4097** to Committee on Intergovernmental Relations.
**HB 4098** to Committee on Intergovernmental Relations.
**HB 4100** to Committee on Natural Resources.
**HB 4101** to Committee on Natural Resources.
**HB 4109** to Committee on Intergovernmental Relations.
**HB 4110** to Committee on Intergovernmental Relations.
**HB 4112** to Committee on Natural Resources.
**HB 4114** to Committee on Natural Resources.
**HB 4122** to Committee on Natural Resources.
**HB 4123** to Committee on Intergovernmental Relations.
**HJR 37** to Committee on Finance.
**HJR 40** to Committee on Finance.
**HJR 93** to Committee on Finance.

USA_00023270

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 72 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 107 of
2132                80th Legislature — Regular Session                62nd Day

**HCR 12** to Committee on Government Organization.
**HCR 16** to Committee on Veteran Affairs and Military Installations.
**HCR 35** to Committee on State Affairs.
**HCR 111** to Committee on Administration.
**HCR 143** to Committee on Education.
**HCR 151** to Committee on Government Organization.
**HCR 187** to Committee on State Affairs.
**HCR 193** to Committee on Transportation and Homeland Security.
**HCR 201** to Committee on Government Organization.
**HCR 212** to Committee on Government Organization.

## CONFERENCE COMMITTEE REPORT ON
## SENATE BILL 426

Senator West submitted the following Conference Committee Report:

Austin, Texas
May 14, 2007

Honorable David Dewhurst
President of the Senate

Honorable Tom Craddick
Speaker of the House of Representatives

Sirs:

We, Your Conference Committee, appointed to adjust the differences between the Senate and the House of Representatives on **SB 426** have had the same under consideration, and beg to report it back with the recommendation that it do pass in the form and text hereto attached.

| | |
|---|---|
| WEST | HILL |
| ELLIS | HOCHBERG |
| NICHOLS | PUENTE |
| PATRICK | CREIGHTON |
| WENTWORTH | QUINTANILLA |
| On the part of the Senate | On the part of the House |

### A BILL TO BE ENTITLED
### AN ACT

relating to qualification for an ad valorem tax exemption for property used to provide low-income or moderate-income housing in the event of a change in ownership of the property as a result of a foreclosure sale.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 11.182, Tax Code, is amended by amending Subsection (j) and adding Subsection (k) to read as follows:

(j) An organization may not receive an exemption under Subsection (b) or [under Subsection] (f)[, as added by Chapter 1191, Acts of the 77th Legislature, Regular Session, 2001,] for property for a tax year [beginning on or after January 1, 2004,] unless the organization received an exemption under that subsection for the [that] property for any part of the 2003 tax year.

JA_008389

USA_00023271

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 73 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 108 of
Tuesday, May 15, 2007          SENATE JOURNAL          2139

(k)  Notwithstanding Subsection (j) of this section and Sections 11.43(a) and (c), an exemption under Subsection (b) or (f) does not terminate because of a change in the ownership of the property if the property is sold at a foreclosure sale and, not later than the 30th day after the date of the sale, the owner of the property submits to the chief appraiser evidence that the property is owned by an organization that meets the requirements of Subsections (b)(1), (2), and (4).  If the owner of the property submits the evidence required by this subsection, the exemption continues to apply to the property for the remainder of the current tax year and for subsequent tax years until the owner ceases to qualify the property for the exemption.  This subsection does not prohibit the chief appraiser from requiring the owner to file a new application to confirm the owner's current qualification for the exemption as provided by Section 11.43(c).

SECTION 2.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

The Conference Committee Report on **SB 426** was filed with the Secretary of the Senate on Monday, May 14, 2007.

## CONFERENCE COMMITTEE REPORT ON
## SENATE BILL 893

Senator Zaffirini submitted the following Conference Committee Report:

Austin, Texas
May 9, 2007

Honorable David Dewhurst
President of the Senate

Honorable Tom Craddick
Speaker of the House of Representatives

Sirs:

We, Your Conference Committee, appointed to adjust the differences between the Senate and the House of Representatives on **SB 893** have had the same under consideration, and beg to report it back with the recommendation that it do pass in the form and text hereto attached.

| | |
|---|---|
| ZAFFIRINI | RAYMOND |
| SHAPLEIGH | GUILLEN |
| CARONA | PHILLIPS |
| AVERITT | |
| WENTWORTH | |
| On the part of the Senate | On the part of the House |

## A BILL TO BE ENTITLED
## AN ACT

relating to international toll bridges in certain counties.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Subchapter A, Chapter 364, Transportation Code, is amended by adding Section 364.0001 to read as follows:

JA_008390

USA_00023272

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 74 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 109 of
2134                80th Legislature — Regular Session              62nd Day

Sec. 364.0001.  DEFINITION.  (a)  Except as provided by Subsection (b), in this chapter, "bridge" includes a bridge used by vehicles, pedestrians, or railroads, or a combination of vehicles, pedestrians, or railroads.

(b)  For the purposes of this chapter, "bridge" does not include a railroad bridge in a county with a population of more than 675,000.

SECTION 2.  Subchapter A, Chapter 364, Transportation Code, is amended by adding Section 364.004 to read as follows:

Sec. 364.004.  AGREEMENTS RELATING TO TOLL BRIDGE.  (a)  A county may enter into and make payments under an agreement with a private entity or another governmental entity to acquire, construct, maintain, or operate a toll bridge, including an international toll bridge, and a private or governmental entity in this state may enter into an agreement with a county for that purpose.

(b)  In connection with or in support of an agreement entered into under Subsection (a), the county may enter into a lease, an operating agreement, a service agreement, a license agreement, a franchise agreement, or a similar agreement with a private entity or another governmental entity.

(c)  This section does not apply to a county with a population of more than 675,000.

SECTION 3.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

The Conference Committee Report on **SB 893** was filed with the Secretary of the Senate.

### RESOLUTIONS OF RECOGNITION

The following resolutions were adopted by the Senate:

### Memorial Resolutions

**SR 1033** by Van de Putte, In memory of Audreyjane "Ajay" Castro of San Antonio.

**SR 1037** by Van de Putte, In memory of Vione "Red" Koepp of San Antonio.

**SR 1038** by  Van de Putte, In  memory  of  Fernando  D.  "Ferny"  Villarreal  of  San Antonio.

**SR 1045** by Hegar, In memory of Leslie Louis Appelt.

### Congratulatory Resolutions

**SR 1036** by  Seliger, Recognizing  Parmer  County  on  the  occasion  of  its  100th anniversary.

**SR 1039** by  Van de Putte, Recognizing  Tecla  Kramm  on  the  occasion  of  her retirement from the YMCA of Greater San Antonio.

**SR 1040** by  Van de Putte, Recognizing  Gloria  Jimenez  of  San  Antonio  on  the occasion of her retirement from AT&T Services, Incorporated.

**SR 1043** by  Shapiro, Recognizing  Bobbie  and  Elvin  Currie  on  the  occasion  of  their 50th wedding anniversary.

JA_008391

USA_00023273

**SR 1044** by Jackson, Recognizing Larry and Linda Cernosek on the occasion of their 30th wedding anniversary.

**SR 1046** by Fraser, Recognizing the City of Killeen on the occasion of its 125th anniversary.

**SR 1047** by Lucio, Congratulating contributors to the *Brownsville Herald* for receiving awards from the Texas Associated Press.

**SR 1048** by Lucio, Recognizing Norbert and Ruthie Ewers of Harlingen on the occasion of their 50th wedding anniversary.

**SR 1049** by Nelson, Congratulating the girls basketball team of Faith Christian School in Grapevine for winning a state championship.

**SR 1050** by Nelson, Commending Sister Margaret Ann Moser for her dedication to Ursuline Academy of Dallas.

**SR 1051** by Seliger, Commending Lauren Tipton for her work in the office of Senator Seliger.

**SR 1052** by Seliger, Commending Michael McKissack for his work in the office of Senator Seliger.

**SR 1053** by Seliger, Commending Nicole Monsibais for her work in the office of Senator Seliger.

**SR 1054** by Seliger, Commending Adam Blanchard for his work in the office of Senator Seliger.

**SR 1055** by Watson, Recognizing Metz Elementary School on the occasion of its 90th anniversary.

**SR 1056** by Watson, Commending Marcia Ball for her contributions to the music industry.

**SR 1057** by Watson, Recognizing Jennifer Hamilton on the occasion of her retirement from the Office of the Comptroller of Public Accounts.

**HCR 196** (Jackson), Honoring the Distinguished Graduates of La Marque High School of 2007.

**HCR 235** (Hinojosa), Honoring Sergeant Brian J. Burzynski of the Texas Rangers for investigating allegations of abuse at a Texas Youth Commission facility.

**HCR 252** (Hinojosa), Commending Isela Gutierrez and Will Harrell on their efforts regarding reforming the Texas Youth Commission.

## ADJOURNMENT

Pursuant to a previously adopted motion, the Senate at 8:40 p.m. adjourned until 11:00 a.m. tomorrow.

Case 2:13-cv-00193   Document 664-8   Filed on 11/11/14 in TXSD   Page 76 of 78
e 1:12-cv-00128-RMC-DST-RLW   Document 215-4   Filed 06/20/12   Page 111 of
2136                          80th Legislature — Regular Session                          62nd Day

---
**APPENDIX**
---

## COMMITTEE REPORTS

The following committee reports were received by the Secretary of the Senate in the order listed:

May 15, 2007

FINANCE — **CSSB 953**, **CSHB 3928**

NATURAL RESOURCES — **CSHB 2819**, **CSHB 3732**

BUSINESS AND COMMERCE — **CSHB 1038**

JURISPRUDENCE — **CSHB 1086**

FINANCE — **CSHB 621**, **CSHB 1634**

STATE AFFAIRS — **HB 155**, **HB 590**, **HB 842**, **HB 1005**, **HB 1170**, **HB 1179**, **HB 1268**, **HB 1446**, **HB 1572**, **HB 2015**, **HB 2248**, **HB 2462**, **HB 2589**, **HB 2664**, **HB 2718**, **HB 2765**, **HB 2882**, **HB 3619**, **SJR 68**

GOVERNMENT ORGANIZATION — **HCR 25**, **HB 387**, **HB 1788**, **HB 1789**, **HB 2427**

BUSINESS AND COMMERCE — **CSSB 1159**, **CSHB 1460**, **CSHB 2994**

INTERNATIONAL RELATIONS AND TRADE — **HB 2796**, **CSHB 3068**

GOVERNMENT ORGANIZATION — **HB 1297**

STATE AFFAIRS — **CSHB 27**, **CSHB 1290**, **CSHB 1921**, **CSHB 2549**, **CSHB 3105**

EDUCATION — **HJR 103**, **CSHB 120**, **CSHB 1374**, **HB 2171**, **HB 2371**, **HB 2504**, **HB 2626**, **CSHB 2639**, **HB 2834**, **HB 3092**, **HB 3259**

INTERGOVERNMENTAL RELATIONS — **HB 538**, **HB 738**, **HB 1561**, **HB 1764**, **HB 2095**, **HB 2406**, **HB 2591**, **HB 3410**, **HB 3731**

HEALTH AND HUMAN SERVICES — **HB 1082**, **HB 1373**, **HB 2132**, **HB 2313**, **HB 2580**, **HB 3473**

## SIGNED BY GOVERNOR

May 11, 2007

**SB 57**, **SB 91**, **SB 237**, **SB 393**, **SB 471**, **SB 584**, **SB 622**, **SB 904**, **SB 1315**, **SCR 57**, **SCR 69**

JA_008393

USA_00023275

### SENT TO GOVERNOR

May 15, 2007

**SB 453**, **SB 812**, **SB 883**, **SB 913**, **SB 978**, **SB 1229**, **SCR 74**, **SCR 78**

### FILED WITHOUT SIGNATURE OF GOVERNOR

May 15, 2007

**SB 1580**

USA_00023276

USA_00023277