

# The State of Texas

Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

John Steen
Secretary of State

## MEMORANDUM

TO:      County Clerks/Elections Administrators/Tax Assessors Collectors

FROM:    Keith Ingram, Director

DATE:    September 13, 2013

RE:      FAQs – Implementation of Senate Bill 14 ("Voter ID")

The Office of the Secretary of State has received numerous questions of the processes and procedures required for successful implementation of the "Voter ID" law. This advisory serves to answer questions we have received regarding implementation of Senate Bill 14 ("SB 14"), Act of May 18, 2011, 82nd Leg., R.S., Chapter 124.

### Frequently Asked Questions

1. **Voter Registration:** The implementation of SB 14 will not change the current registration process, or the current voter registration application. However, the new law does require that a voter's name on the Official List of Registered Voters (OLRV) match exactly or be "substantially similar" to the name listed on their identification used at the polling place. If a voter's name is not identical, but is "substantially similar," the voter will be required to initial an affidavit stating they are the same person. If the voter's names on the OLRV and identification are neither identical nor substantially similar, the voter will need to vote provisionally. Therefore, the Office of the Secretary of State suggests that voters check the name on the registration, and update their registration as necessary no later than 30 days prior to an election in which the voter will vote. This will ensure that any changes made are in effect for the election. Voters will be able to use the "Am I Registered?" feature (reached through the VoteTexas.gov website) to compare the name on the OLRV to their identification. If your county needs assistance or tips on how to provide outreach to voters that may be impacted, please contact the Office of the Secretary of State.

   a. What changes are being made to the Official List of Registered Voters (OLRV), the voter's certificate, and the "Am I Registered?" website to provide better assistance to voters?

      *Official List of Registered Voters* — The OLRV used to display an individual's former name if a middle name was not present in the voter's record. This has been corrected. The PDF version of the OLRV will now display a person's name in the following order: Last Suffix (if any), First Middle.

      CSV versions of the list will retain the individual fields, but the "Full Name" column has been updated to also display a person's name in the following order: Last Suffix (if any),



Δ π EXHIBIT 20
Deponent K.I.
4/23/14  Rptr
WWW.DEPOBOOK.COM

TEX00463237

MEMORANDUM
Page 2

First Middle. The Former name and the suffix will also be added as columns in the spreadsheet at the far end of each row.

*Voter Registration Certificate* – The Voter Registration Certificate has been updated. On the left hand side, where the residential address is displayed, the certificate (under current law) is required to show former name, if present. As such, the name on the certificate under residential address will show as follows: Last Suffix (if any), First Middle Former. On the right hand side of the certificate, under the mailing address the name will be displayed as First Middle Last, Suffix. The name listed with the mailing address will match what will be displayed on the OLRV.

*"Am I Registered?"* – The "Am I Registered?" site that can be found through VoteTexas.gov has also been updated, so that the name on the site matches what will be displayed on the OLRV. Therefore, a person may determine whether or not his/her name needs to be updated prior to heading to the polls. A link has been included to allow for voters needing to update their name to be redirected to Texas Online in order to more conveniently facilitate this update.

b. What happens if a person registers using the EIC as their TDL/ID?

The current live check process is the same. If a person has an EIC and attempts to submit a registration with that information, the person will fail the Live Check process and a Notice of Incomplete should be sent. If the person subsequently returns the same information within the 10-day period, then the person should be registered without live check and will go on the Official List of Registered Voters as an ID required voter.

c. If everyone is now required to show identification when voting in person, why do we need to keep the ID notation?

Individuals voting by mail are not, under SB 14, required to show identification when casting their ballot, unless the person did not pass live check. The Help America Vote Act ("HAVA"), passed in 2002, requires that a person registering to vote, yet not able to be verified by the state is required to show identification the first time the person casts a ballot. An individual with an ID notation next to his/her name requesting to vote in that election by mail would still be required to present an acceptable form of identification with the return of his/her ballot.

2. Identification Requirements at Polling Place: Under the provisions of SB 14, Texas voters are required to show identification with a photograph. § 63.001(a) and § 63.0101 TEX. ELEC. CODE (Vernon's 2011). Voters will no longer be able to use their voter registration certificates, birth certificates, or certain U.S. mail to check-in at the polling place. The good news is that a large number of voters already use their Texas driver's license to vote. However, the Office of the Secretary of State and the elections community will all need to work together to inform voters about the new requirements.

a. What forms of identification are acceptable?

Texas voters can show one of the seven following forms of ID to vote:
•Texas driver's license issued by the Texas Department of Public Safety (DPS)

TEX00463238

MEMORANDUM
Page 3

- Texas Election Identification Certificate issued by DPS
- Texas personal identification card issued by DPS
- Texas concealed handgun license issued by DPS
- United States military identification card containing the person's photograph
- United States citizenship certificate containing the person's photograph
- United States passport

With the exception of the U.S. citizenship certificate, the identification must be current or have expired no more than 60 days before being presented for voter qualification at the polling place.

Please see our seminar presentation for additional information. All poll workers will also need to complete a training program on accepting and handling identifications.

**If voter does not remember to bring a photo ID, they may cast a provisional ballot, and then appear at the voter registrar's office within six days of the election to show an acceptable ID or apply for an exemption. The voter may also choose to leave to obtain the ID (before casting a ballot) and return; this is likely to occur more during early voting.**

**No voter should be turned away from the polls for failing to provide photo ID.**

b. Is a person's voter registration certificate still required along with any of the seven types of identification requirements?

No. Voters are only required to show one of the seven forms of acceptable identification. However, if a voter has received a permanent exemption due to disability, they will need to show their registration certificate with the (E) notation, signifying that they have received the exemption.

c. Can a voter apply for and receive an Election Identification Certificate (EIC) if they have another valid form of acceptable ID?

No. The purpose of an EIC is to provide a picture ID to individuals that do not have one of the other six forms of acceptable ID. Therefore, if a voter already has a current and acceptable form of identification, they do not need an EIC.

However, there are situations where a voter may no longer need their driver's license/personal identification card, and do not have another form of acceptable identification for voting. In that case, a voter may surrender their driver's license to DPS, if they do not intend to renew it, and apply for an EIC. Also, if the voter's driver's license or personal identification card is expired, and they do not intend to renew, they may apply for an EIC.

d. Can a voter use a "temporary" license or identification issued by DPS?

Yes. When a person applies for a DPS issued ID, or renews online, they receive a paper "temporary" license/ identification card that contains a photograph. These temporary

TEX00463239

MEMORANDUM
Page 4

documents containing the individual's photograph, also known as a "receipt" can be used at the polls.

e. What if the voter has recently been honorably discharged from the armed forces of the United States and has a Texas driver's license that expired more than 60 days before presenting it at the polls. If the voter could not renew their license due to being out of the state, may they still vote?

Yes, under certain conditions. Current law provides that military personnel honorably discharged receive a 90 day extension from the date of discharge or after returning to Texas, to renew their driver's license.

In this situation, the voter will need to vote provisionally and then provide their discharge papers, proving they are entitled to the 90 day extension, to their Voter Registrar within 6 days of the election.

f. If a voter's military identification card does not expire, is it acceptable?

Yes. Certain identification cards issued by the Department of Defense do not expire. As an example, retirees receiving benefits receive a Uniformed Services ID Card that does not expire. Also, spouses of retirees that receive benefits receive a permanent ID card at the age of 75 years.

g. Can a voter show a Certificate of Naturalization issued by the United States Citizenship and Immigration Services (USCIS)?

Yes. The Secretary of State has researched the legislative intent of the language found in Section 63.0101(3) of the Texas Election Code, and has determined that the language "citizenship certificate" encompasses both Certificates of Citizenship and Certificates of Naturalization issued by USCIS. A Certificate of Naturalization is issued to an individual whose application for citizenship has been accepted, and who has taken the Oath of Allegiance.

h. Is a Passport Card issued by the U.S. Department of State acceptable?

Yes. A Passport Card is issued by the Department of State to allow for travel via land or sea between the United States and Mexico, Canada, the Caribbean and Bermuda. The Passport Card is smaller than a standard passport, being wallet size.

i. Does the new law require poll workers learn and verify security features of the seven acceptable forms of identification?

No. The ID presented by the voter should look like the images found in our training materials. We have worked with issuing authorities to provide what the acceptable forms of identification look like, and where information, such as name and expiration date, is located. Polling places are not required have technology to confirm the presence and authenticity of radio chips, holograms, or other security features.

TEX00463240

MEMORANDUM
Page 5

However, if an ID does not appear similar to the images found in the training materials, or there is a reasonable belief that the ID is not authentic, a poll worker may alert the election judge or early voting election officer for a determination. If upon further evaluation, that election official cannot determine the authenticity of the ID, the voter may vote provisionally or offer an alternate form of acceptable ID.

3. Verification of Voter's Identity at Polling Place: Senate Bill 14 requires poll workers to verify the voter's identity from the documentation provided. § 63.001(d) TEX. ELEC. CODE (Vernon's 2011). Please contact the Office of the Secretary of State if you need additional guidance on these issues.

a. Does the photograph on the voter's ID have to match their personal appearance at the polling place?

Yes. The purpose of Senate Bill 14 is to prevent voter fraud via impersonation of a registered voter. However, the Office of the Secretary of State has stated that the rule of thumb for poll workers is: "Can this photograph be that of the voter?" In other words, the Office knows and understands that people can change over time, and this should not be held against the voter.

DPS requires a new photograph every 6 years, and U.S. Passports expire every 10 years. During that time, the personal appearance of a voter may change, and poll workers should take this into consideration when looking at the photograph.

The Office also urges poll workers to use the "totality of circumstances" when verifying a voter's identity by also comparing addresses and dates of birth to the OLRV when processing a voter.

As an example, if the photograph on the ID generally looks like that of the voter, but the voter has changed hair color since the time the photograph was taken, a poll worker may also look at the address and date of birth to assist in verification.

If a poll worker reasonably believes that the photograph on the presented ID is not that of the voter, the voter may offer a different form of acceptable ID. As an example, a voter's passport photograph may have been taken more recently and may allow the poll worker to verify the voter's identity.

If the voter does not offer another form of ID, a poll worker should alert the election judge or early voting election officer for a final determination at the polling place. If that election official reasonably believes that photograph is not that of the voter, the voter may vote provisionally, and then visit their voter registrar within six days of the election to provide an acceptable form of ID that can be verified.

b. Does the address on the voter's ID have to match the address on the OLRV?

No. Under the new law, there is no requirement for the address on the OLRV to match the address presented on an acceptable form of identification. Further, some forms of

TEX00463241

acceptable identification do not have an address, e.g. military identification card, or Certificates of Citizenship or Naturalization.

However, a voter's address can be used in assisting a poll worker when verifying the identity of the voter. As an example, when comparing the name of the voter on their ID and the OLRV, an address can be used to determine that the names are "substantially similar."

c.  Does the gender listed on the identification have to match the person appearing at the polling place?

No. Under the new law, there is no requirement for the gender of the individual listed on their identification to match that of the voter appearing at the polls.

However, the Secretary of State understands that a voter from the transgendered community may have an ID that while unexpired and on the list of the seven acceptable forms of ID, may not contain a photograph that reflects their current appearance. The Secretary recommends that a poll worker use the "totality of the circumstances" when qualifying the voter by not just comparing a voter's image, but their name, address and date of birth in determining whether or not to accept the voter.

If the ID presented by the voter does not allow the poll worker to confirm their identity, the voter may offer another form of acceptable ID, should they choose. As stated above, there are many times when a voter may not appear as they do in their photograph due to the age of photograph. Therefore, a voter may offer another form of acceptable ID with a more recent photograph.

If the voter does not offer another form of acceptable ID, they should be offered a provisional ballot and provided with a Notice to Provisional Voter/Polling Place ID Receipt. Within six days of the election, the voter may visit their Voter Registrar and provide a certificate from a licensed physician, official documentation reflecting a name change, or other official documentation that will allow the voter registrar to verify the identity of the voter.

4.  Substantially Similar Name Procedure

a.  What is a "substantially similar name"?

A substantially similar name is one that is not identical between the ID and OLRV, but is substantially similar, meaning that names that are slightly different, are customary variations, have an initial, middle name, or former name, or have names in different fields.

b.  How does a voter update the name on the registration?

A voter may update the name on their registration via three methods:
1.  Completing a new voter registration card.
2.  Going to Texas Online and updating their registration.
3.  Completing a name change form.

MEMORANDUM
Page 7

Note: This is not a required step at the polling place to vote. This is something the voter may wish to do to help vote in the future.

c. Can a Statement of Residence be used to update a person's name at the polling place?

Yes, but if a statement of residence is used to update a voter's record, then in accordance with Section 63.0011(c)(2), the voter would have to provide to the election officer a statement including "all of the information that a person must include in an application to register to vote under Section 13.002." This means that the form would have to be completed in its entirety, including address.

d. What is the process for determining a "substantially similar name"?

Please see the training materials provided by the Office of the Secretary of State on the process for qualifying voters. However, the general procedure will be to review the voter's photo ID, and compare it to the OLRV. If the names are identical, the voter will proceed to the voting booth. If the names are "substantially similar" per Texas Administrative Code §81.71, the voter will initial the affidavit on the combination form and proceed to the voting ballot to vote a regular ballot. If the names are neither identical nor substantially similar, the voter will be offered a provisional ballot.

5. Permanent Disability Exemption to Photo Identification Requirement:

a. How does a voter apply for and receive a permanent exemption to the photo ID requirement?

A voter can use the form prescribed by the Office of the Secretary of State to make a Request for Disability Exemption. The voter will complete the form and attach copies of documentation from either the U.S. Social Security Administration indicating there has been a disability determination or the U.S. Department of Veteran Affairs evidencing the voter has at least a 50% disability rating.

b. Does the voter have to show their voter registration certificate with the (E) notation at the polling place?

Yes. The (E) notation next to the voter's name on the Official List of Registered Voters is not enough to permit that person to vote a full ballot. Sections 15.001 and 63.001 of the Texas Election Code require that a person who has been exempted due to disability must present the voter certificate with the (E) notation before being accepted for voting. If the voter has applied for an exemption, but not yet received his/her updated certificate, the voter may show the voter's current certificate. The voter would be able to vote provisionally, and it should be noted on the provisional ballot envelope that the voter showed a certificate without the (E) designation.. During the "cure" period, the voter registrar would need to confirm that he she has the paperwork on file for that individual and would then be able to "cure" the voter's ballot.

c. What if the voter loses their certificate and does not have another acceptable form of ID?

TEX00463243

MEMORANDUM
Page 8

Having the (E) notation next to the voter's name on the Official List of Registered Voters is not enough to permit that person to vote a full ballot. Sections 15.001 and 63.001of the Texas Election Code require that a person who has been exempted due to disability must present the voter certificate with the (E) notation before being accepted for voting. Without this certificate, the voter would be able to vote provisionally. During the "cure" period, the voter may take his/her supporting documentation to the voter registrar to request a replacement certificate and "cure" his/her ballot.

d. Does a voter have to apply for a disability exemption 30 days before an election?

No. However, if a voter does not have a certificate with the (E) designation at the time the voter presents himself/herself to vote, then the voter would only be eligible to cast a provisional ballot. In light of this, voter registrars are strongly encouraged to prioritize disability exemption requests during the thirty day window and get replacement certificates with the (E) designation out within 24 hours of receiving the request.

e. What happens if a voter votes provisionally because they did not apply for the exemption in time in order to receive his/her updated voter certificate?

The voter registrar, when reviewing provisional ballots, should be able to determine if the voter has received an exemption. If so, the voter registrar can appropriately mark the envelope before it is sent to the Early Voting Ballot Board. However, the voter may want to confirm that the voter registrar has received the application and supporting documentation. Applications for disability will be approved, as long as the completed application and accompanying documentation is received by the voter registrar.

f. Can a voter appear at their voter registrar's office during the cure period to complete a request for a permanent exemption (provided the person has the appropriate paperwork evidencing that he/she qualifies)?

Yes. A voter may apply for a permanent exemption during the "cure" period (within six days after the date of the election). The provisional ballot affidavit and Notice to Provisional Voter/Polling Place ID Receipt for a voter being granted this exemption would then be marked that the appropriate documentation has been supplied to the voter registrar and the ballot would be forwarded to the Early Voting Ballot Board.

g. Can a voter use their disability exemption in one county to vote a limited ballot in another county?

Yes. A voter presenting himself/herself to vote in a county in which the voter is voting via a limited ballot may use the certificate showing his/her disability exemption as an acceptable form of identification.

h. If a person with a disability exemption does vote a limited ballot, how should they be notified that their disability exemption will not transfer?

TEX00463244

MEMORANDUM
Page 9

The election worker would need to provide the voter with a notice indicating that the voter will need to apply for a disability exemption in the new county of registration in order to continue voting in this manner.

i.  What happens if a person voted previously in this county via limited ballot and declares that he/she was not informed that he/she needed to reapply for a disability exemption and has no other form of acceptable identification?

The voter may vote provisionally and then provide a request for disability exemption to the voter registrar in the county in which the person is registered to vote and has cast a provisional ballot within the "cure" period. This will serve to both "cure" the provisional ballot and update the voter's record for future elections.

j.  If a voter has a driver's license on file but then wants to claim a disability exemption, how do we handle that?

Process the exemption based on the information supplied by the voter and the request for disability exemption form. It is important to remember that voter information remains in the system indefinitely, meaning that a person may have registered with a driver's license that has expired but that driver's license would no longer be an acceptable form of photo identification for voting purposes. Section 13.002 of the Texas Election Code requires that a person must present documentation of their disability and sign a statement that the applicant does not have an acceptable form of identification. Thus, the appropriate course of action for a voter submitting the required documentation to request a permanent disability exemption in your county would be to grant that exemption solely upon the basis that the form has been completed and signed and the required written documentation is supplied.

k.  Does the disability exemption supersede the ID?

Yes. If a person submits documentation requesting a permanent exemption within the county, then the (E) – Exempt notation will appear on the Official List of Registered Voters in lieu of the ID notation. In this manner, the individual will also no longer be required to provide a copy of an ID when voting by mail.

Keep in mind that the exemption being requested is an exemption from having to show an acceptable form of photo identification when voting in person. In this instance, the form of identification this individual would present would be the voter certificate with the (E) notation following the VUID. This individual would not need to present photo identification in order to be permitted to vote a full ballot.

l.  Do I need original documentation from individuals requesting a permanent exemption due to disability?

No. In fact, the Office of the Secretary of State recommends that the voter registrar return original paperwork from the Social Security Administration or the Department of Veterans Affairs to the voter if it is provided with the application. In such cases the voter registrar should make a copy of the supporting documentation to be kept on file with the original

TEX00463245

"Request for Disability Exemption" form and return the original supporting documentation to the voter with the updated voter's certificate.

6. Temporary Exemption from Identification Requirements

   a. May a voter apply for a temporary exemption at the polling place?

   No. Section 65.0541 of the Texas Election Code requires a Request for Temporary Exemption to Photo Identification Requirement to be executed in the presence of the voter registrar. The voter must cast a provisional ballot, and appear at the voter registrar's office within six days of the election to complete an affidavit for the exemption.

   b. Must a voter apply for a temporary exemption 30 days before an election?

   No. In fact, the temporary exemption request may only be executed during the provisional ballot "cure period" in accordance with Section 65.0541 of the Texas Election Code.

   c. How do I process a voter who did not present identification at the polling place, votes provisionally, and appears at the voter registrar within the six day cure period to apply for a temporary exemption?

   Once the voter appears and completes the Request for Temporary Exemption to Photo Identification Requirement form due to a religious objection or natural disaster, the voter registrar will mark the provisional ballot envelope to reflect that the voter has executed the affidavit. Then, the voter registrar will attach the affidavit to the provisional ballot envelope for processing by the Early Voting Ballot Board. These affidavits remain with the provisional ballot envelopes as they are only good for the election in which the provisional ballot was cast.

   d. What if the voter claiming the temporary exemption due to religious objection has a driver's license number on file in their voter record?

   The voter registrar should process the exemption based on the information supplied by the voter at the time the exemption request is being made. It is important to remember that voter information remains in the system indefinitely, meaning that a person may have registered with a driver's license that has expired. Section 65.054 of the Texas Election Code requires a ballot to be accepted if the Early Voting Ballot Board determines that the person has executed an affidavit under penalty of perjury.

   e. Under what circumstances, if any, could a voter registrar reject a request for a temporary exemption?

   The current law provides no authority for a voter registrar to reject a temporary exemption request based on religious objection. However, if the voter registrar is able to determine that a natural disaster was not declared by the U.S. President or Texas Governor within the 45 days prior to the person voting, then the voter registrar would mark the provisional ballot

MEMORANDUM
Page 11

accordingly and include this information in the comments section of the form, and attach the form to the provisional ballot envelope for review by the Early Voting Ballot Board.

f.  What information do we need to determine if a natural disaster has been declared in our area? Does the voter need to supply any supporting documentation?

The Governor of Texas will declare a natural disaster through a proclamation. The Governor's proclamations can be found online here: http://governor.state.tx.us/news/proclamation/

The President of the United States will make a declaration through the Federal Emergency Management Agency (FEMA), and those declarations can be found online here: http://www.fema.gov/presidential-disaster-declarations

If you are unable to access the websites because of the disaster, contact the Office of the Secretary of State by phone for assistance.

g.  Are voter registrars required to keep a copy of the completed temporary exemption affidavit?

No.  All completed temporary exemption forms should be attached to the accompanying provisional ballot envelope and supplied to the Early Voting Ballot Board as this form becomes a part of the official election record in the county.

7.  Voter is not on the Official List of Registered Voters:

a.  If a person is not on the Official List of Registered Voters and presents himself/herself to vote, how is that person processed?

It is important to note that Senate Bill 14, when addressing a voter who is not on the Official List of Registered Voters, provides very specific directions regarding how to handle that voter. In effect, the voter registrar's duties and the County Clerk's duties should be considered as independent of one another. There are also two different scenarios that should be discussed: 1) if the voter has a valid registration certificate, **but** is not on the list and 2) if the voter does not have a valid certificate **and** is not on the list.

Under revised Section 63.006 of the Texas Election Code, if a voter has a registration certificate that is valid, but is not on the list, then the person is entered on the Registration Omissions List and is permitted to vote a regular ballot. The recommendation from the Office of the Secretary of State at the seminar was that the election worker could contact the voter registrar to ask whether or not the person is in the correct precinct and to check on the voter's status, as a courtesy to the voter. And, if information came to light that the person was cancelled erroneously, then the voter registrar could reinstate the voter immediately for future elections.  **But**, regardless of whether the voter registrar reinstates the voter, Senate Bill 14 permits that voter to vote a full ballot — not on the authority or word of the voter registrar over the phone that the person is eligible, but because Section 63.006 mandates it. The question then becomes "how does the voter registrar handle a

TEX00463247

MEMORANDUM
Page 12

voter having voted under such a scenario who was not in fact eligible to vote?" The Office of the Secretary of State is in the process of working on procedures to address that issue.

The second scenario falls under the Texas Election Code, Section 63.009: a voter without a certificate who is not on the list. Previously, the election worker would contact the voter registrar, and if the voter registrar reinstated the voter at that time, the person would be eligible to vote a regular ballot. Under the provisions of Senate Bill 14, however, this action is no longer an option. The revised Section 63.009 removes the language supporting this process and requires that a voter who is not in possession of a valid certificate and who is not on the list may only vote provisionally.

b. May the election workers contact the voter registrar in the Section 63.009 situation described above?

Yes. Election workers should confirm that a voter is presenting himself/herself in the correct precinct before proceeding to process the voter if the voter is not on the Official List of Registered Voters. If the voter registrar is able to determine the voter's residential address is in another precinct, the election worker will be able to redirect the voter accordingly. It should be noted that the voter will still need to show his/her certificate in the correct precinct (to establish registration status, not as a form of ID unless also using the (E) exemption).

c. Are there other types of questions that a Voter Registrar may expect to receive from an election worker?

Examples of the phone calls that may be received by the voter registrar from an election worker should be in keeping with phone calls that any voter may make on Election Day regarding presenting himself/herself to vote: Am I in the right precinct? What is my status? While the voter registrar may communicate this information to the election worker in order to better assist voters, it is important to note that information provided by the registrar will not have any bearing on whether or not that person is permitted to cast a ballot at that polling location.

d. If the voter should have not been cancelled, and is at the polling place, how should the situation be handled?

If a person should not have been cancelled, then the person must be reinstated. As a practical matter, the same method for clearing the original investigation or action that resulted in the cancellation should be the same method for initiating the reinstatement. In other words, if a person was cancelled after being investigated for being deceased, the person would need to orally respond to the registrar and then the registrar would generate a memo for the voter's file regarding the substance, date and circumstances surrounding the reinstatement.

e. How does Senate Bill 14 affect the reinstatement process?

Senate Bill 14 has no impact on the reinstatement process as it currently stands. Under Section 16.037 of the Texas Election Code, "if a voter registrar determines after

MEMORANDUM
Page 13

cancellation of a registration that the registration should not have been canceled, the registrar shall reinstate it." As before, the voter registrar may reinstate a voter at any point in time, and that reinstatement takes effect immediately. What does change, however, is that the reinstatement of the voter, even on Election Day or during early voting, is not something the voter registrar can attest to over the phone in real time to establish the registration status at the polling place. The reinstatement is still important in that it will help the voter in the future.

f.   What is the purpose of the "new" omissions list?

The omissions list will contain the list of names for those individuals who were not on the Official List of Registered Voters, but who were permitted to vote a full ballot because the person had both a valid certificate and proper identification as outlined in Section 63.0101 of the Texas Election Code when presenting himself/herself to vote.

g.   What happens when a voter shows up with a certificate, but has been cancelled? Wouldn't they appear on the omissions list?

Yes.   Under the Texas Election Code, Section 63.006, if a person presents a voter registration certificate indicating that the voter is currently registered in the precinct in which the voter is offering to vote and provides proper identification, then the person would be permitted to vote and placed on the omissions list.

h.   How are individuals on the omissions list processed?

As the voter registrar, it is important to note that just because a person receives a full ballot does not mean you should immediately reinstate the individual. Each person listed on the omissions list should be investigated to see whether they were cancelled erroneously. If the individual was cancelled in error, reinstate the voter and submit the voting history for that individual.

i.   How does the voter registrar handle the submission of voting history for someone on the omissions list who was not reinstated during my investigation?

TEAM will not accept voting history for a cancelled record. As such, best practice would be to reinstate the voter, submit the voting history, and then cancel the voter using the same cancellation reason for which the voter was originally cancelled. If the reason for original cancellation is unknown, then, for the time being, use Cancel 60. Be sure to include in the notes section documentation of the process you followed regarding this voter.

j.   Under the provisions of Senate Bill 14, is there a new classification of individuals who will be casting provisional ballots?

Yes. There are two:
1.   Section 63.001 of the Texas Election Code was amended to include voters unable to provide a proper form of identification when offering to vote.
2.   While this classification is not exactly new, Section 63.009 of the Code removed the election workers' ability to call the registrar and allow a voter without a certificate who is

MEMORANDUM
Page 14

not on the Official List of Registered Voters to vote a regular ballot. Under SB 14, every voter appearing without a voter certificate and not appearing on the Official List of Registered Voters will only be eligible to cast a provisional ballot.

k. How do I process a provisional ballot for a voter who voted provisionally because he/she did not have a certificate and was not on the Official List of Registered Voters?

The first step would be to confirm that the voter did in fact present an acceptable form of identification when presenting himself/herself to vote. This is indicated on the top left-hand side of the provisional ballot envelope on the back. If the voter did present a valid form of identification, then you would process the provisional ballot for the reasons that were checked on the left hand side as you traditionally would. If the voter did not present an acceptable form of identification, then the voter would need to bring in an acceptable form of identification. This would need to be verified in addition to any other reason selected on the provisional ballot envelope.

8. "Curing" the Voter

a. How do I process a provisional ballot for a voter who voted provisionally because the voter failed to present a proper form of identification?

It is important to note that the registrar will first need to determine the type of voter in order to determine what information is required to "cure" the provisional ballot. Below are the various voters included in this category and the appropriate documentation required:
1. A voter with a permanent disability exemption who did not have his/her certificate when offering to vote will be permitted to vote a provisional ballot. This voter would need to bring in his/her voter registration certificate with the disability exemption notation in order to "cure" the voter's identification.
2. A voter who did not have a proper identification. SB 14 extended the provisional time period for those individuals in this category to provide for a cure period that ends the sixth day after Election Day. During this time period, a voter may:
   a. Bring an acceptable form of identification to the voter registrar's office,
   b. Apply for a temporary exemption due to religious reasons or natural disaster, or
   c. Apply for a permanent disability exemption.

b. Is there a process that I should follow when a person brings in identification to cure his/her provisional ballot?

Yes. The voter registrar should follow the same process as the election worker:
1. Check the ID type and expiration date to confirm that it is a form of identification listed in Section 63.0101 of the Texas Election Code and that it did not expire any earlier than 60 days prior to the date of presentation. (It may be helpful to have a list on file in your office of each day of the provisional cure period and the date 60 days prior).
2. Confirm the voter's identity by evaluating the photograph and the name on the form of identification (Texas Election Code, Section 63.001(d)).
   a. If the person's identity is unable to be verified using the documentation the voter provides, you may allow the voter to present a second form of identification if available.

MEMORANDUM
Page 15

    b.  If the person's identify is able to be verified, indicate the voter has cured the improper identification on the provisional ballot.

c.  The voter provided identification to "cure" an improper form of ID; however, the name is substantially similar and not an exact match. How do I proceed?

The voter registrar will proceed in the same manner as an election worker would at the polling place. There is a similar name affidavit for the voter to initial on the "Provisional Voters Appearing to Voter Registrar During Cure Period" form. See sections 2 and 3 for more information.

d.  Are voter registrars required to be open on the weekends?

No. They are required to keep their normal office hours as outlined by Section 12.004 of the Texas Election Code. However, the Office of the Secretary of State recommend keeping track of the number of voters who voted provisionally so you have an approximate idea of the numbers you can expect to process, and plan accordingly.

TEX00463251

AW13-6
Prescribed by Secretary of State
Form revised 08/2013
Sections 13.002(i), 63.001(b), 63.0101, Texas Election Code



## REQUEST FOR DISABILITY EXEMPTION

To the Voter Registrar:

Pursuant to Section 13.002(i) of the Texas Election Code, I hereby request a permanent exemption in this county from the requirement to present identification other than the voter registration certificate at the time of voting on the ground that I have a disability and do not have any of the forms of identification listed in Section 63.0101 of the Texas Election Code. The acceptable forms of identification are: **a driver's license, election identification certificate, personal identification card or concealed handgun license issued by the Texas Department of Public Safety; United States Military identification card containing the person's photograph; United States citizenship certificate containing the person's photograph; or United States passport,** and with the exception of the United States Citizenship certificate, the identification presented for voter qualification at the polling place must be current or have expired no more than 60 days before it is presented.

I have attached written documentation from the United States Social Security Administration evidencing that I have been determined to have a disability or from the United States Department of Veterans Affairs evidencing that I have at least a 50 percent disability rating. I understand that the voter registrar will maintain this documentation with other records pertaining to my registration in this county, and that the exemption cannot be granted without this documentation. I further understand that if I move to a new county and register to vote in that county, I will have to submit a new disability exemption request and supporting documentation to the county in which I am registering.

| |
|---|
| Name |
| Residence Address (number and street) |
| City, State, Zip Code |

| VUID Number | County of Residence |
|---|---|
| | |

I certify that the information in this document is true and correct.

Sign
Here ▶ _____   Date ▶ _____

**Assistant/Witness**
If voter cannot sign, voter's mark must be witnessed. If voter cannot make a mark, witness must check here_____ . If the voter is unable to read and/or mark this form, the witness must fill out the information below.

X_____ / _____
Printed name and Signature of Witness

_____
Residence Address of person named above or title if being witnessed by the voter registrar's office.

| **For Office Use Only** | VUID # _____ | Proof of Disability Submitted?  ☐ Yes  ☐ No |
|---|---|---|
| | Voter Reg. Dept. Signature _____ | |
| | Date_____ | |
| | Comments: _____ | |

**PL297**
**9/2/2014**
**2:13-cv-00193**

**LWV**

**LEAGUE OF WOMEN VOTERS®**
OF TEXAS

October 13, 2011

Ann McGeehan
Director of Elections
Office of the Secretary of State
Austin, Texas 78711-2060

RE: RULE §81.71 Substantially Similar Name Standards

Dear Ms. McGeehan:

LWV-TX writes to express concern that proposed RULE §81.71 "Substantially Similar Name Standards" does not include sufficient guidance for election workers to make reasonable and consistent decisions on accepting voters and for voters to know prior to the election whether a photo ID will or will not be accepted. Regulations establishing substantially similar names were among the issues discussed when LWV-TX representatives met with you and others on September 1.

As proposed, the rule requires a determination by poll workers or voter registrars that the voter's name is either "slightly different from one of the name fields on the official list of registered voters," "a customary variation of the formal name," or "contains a middle or former name." This broad wording leaves much to the discretion of the specific individual making the determination. Under the proposed rule, we believe conscientious, reasonable election workers would vary in the decision about many specific situations. Some might interpret Brittany, Brittney, and Britney or Jose and Joseph as "slightly different" and accept the voter for a regular ballot; some might not. Some might accept Beto, Bob, and Rob as customary variations of Robert; others might accept Bob and Rob for Robert but not recognize Beto as a variation of Robert. How consistently would Alice Jones be accepted to vote a regular ballot if the name on her photo ID includes maiden name, Alice Smith Jones, but the name on the list of registered voters includes her middle name, Alice May Jones?

For fair elections, it is essential that decisions to accept voters be reasonable and uniform. These decisions should not depend on potential idiosyncrasies of the individual making the decision about a specific voter. LWV-TX is particularly concerned that the vague nature of the proposed rule may adversely affect women voters, because they are more likely to have changed names, and minority voters, because election workers may not be familiar with name variations customary within all minority communities.

It is also essential that Texas voters and voter assistance groups like LWV-TX fully understand the rule that will be applied at the polls. With adequate advance knowledge, voters can make changes to align the name on their photo ID with the name on their voter registration and smooth the process of voting for themselves, election workers, and all other voters. Without adequate advance knowledge, there will be unnecessary hassles for both voters and election staff as voters either seek name changes that should be unnecessary or fail to make needed changes in advance and are disenfranchised at the polls.

LWV-TX appreciates the opportunity to make our views known. If additional information is required, please contact LWV-TX Vice President Linda Krefting, lkrefting@att.net, 806-793-6136.

Sincerely,

Karen Nicholson
President, LWV-TX



Eyes Only

US_00001345

USA_00001347

| From: | Betsy Schonhoff |
|---|---|
| To: | Melanie Huff |
| Sent: | 1/2/2013 3:13:14 PM |
| Subject: | RE: Question - "Substantially Similar Name" |

Thank you! You are officially my hero!!!

Betsy Schonhoff

---

**From:** Melanie Huff
**Sent:** Wednesday, January 02, 2013 10:02 AM
**To:** Betsy Schonhoff
**Subject:** FW: Question - "Substantially Similar Name"

I will call Sarge on the issue.

---

**From:** Melanie Huff
**Sent:** Tuesday, January 01, 2013 8:11 AM
**To:** Betsy Schonhoff
**Subject:** RE: Question - "Substantially Similar Name"

I don't know where Sarge is going with this. The adminstrative rule is here, http://info.sos.state.tx.us/pls/pub /readtac$ext.TacPage?sl=R&app=9&p_dir=&p_rloc=&p_tloc=&p_ploc=&pg=1&p_tac=&ti=1&pt=4&ch=81&rl=71, but keep in mind that the rule was only scheduled to take effect if SB 14 has been precleared. (This was stated in the filings in the Texas Register, although you won't see an effective date in the rule itself as it appears in the Code today.)

You also need to keep in mind that the changes in the Election Code made by SB 14 do appear in the online Texas Statutes, and in the Texas Election Laws book put out by BI Company. But those changes were not implemented (because there was no preclearance) and you need to look at the pre-SB 14 statutes.

It is not currently the law that you need to have a "substantially similar" name on the ID you present to vote as appears in the official voter registration list. The purpose of the ID is to prove that you are you and if you are on the registered voter list for that precinct, you get to vote in that precinct.

BUT, a common occurrrence, a woman (Susan Smith) marries and changes her driver's license to read Susan Taylor. She does not change her voter registration, which continues to show "Susan Smith." What we used to do, without calling Austin, was to have the voter complete an SOR and if there was a match with birthdate or TDL or SSN, the voter would vote. (Election workers would have to call the office to read off the TDL or SSN because those don't appear ont he VR list.) We did not make a federal case out of it. It is also very common for people to have different variations on their names on their driver's license and in voter registration. For example: "Thomas James," "Thomas J.," "Tom," "T. James," or "T.J." We would accept any variation, but we would double check the birthdate (and TDL) just to make sure that we were checking off the right name on the list.

It appears to me that Sarge is making the classic mistake of "ensuring identity" and preventing voter fraud. It is not the purpose of the ID to ensure identity or to allow election workers to interrogate and investigate voter identity. I have tried to explain this to Sarge before, and it is a losing battle.

Melanie Huff

---

**From:** Betsy Schonhoff
**Sent:** Mon 12/31/2012 4:19 PM
**To:** Galveston - William Sargent (william.sargent@co.galveston.tx.us)
**Cc:** Melanie Huff; Betsy Schonhoff
**Subject:** Question



Sarge-

Good afternoon. I was looking for the section of code that you referenced in our discussion earlier, so that I could more adequately describe your question to Melanie and the legal department. But, I could not find it. I know that the question you posed was in relation to SB 14 and whether or not the name could be substantially similar to what is on the identification being used by the registered voter. Could you please provide us with a little more information and more direction on what you are trying to resolve, so that we can adequately address your question? I would greatly appreciate it.

Betsy Schonhoff

| | |
|---|---|
| **From:** | Elizabeth Winn |
| **To:** | Melanie Huff; Elec Legal; VRTeam; Kim Thole |
| **Sent:** | 8/16/2011 12:49:15 PM |
| **Subject:** | RE: Draft rule for Similar Name Standards |

We do not have much leeway in that controversial bill, but let me know what ideas you have in mind.
-----Original Message-----
From: Melanie Huff
Sent: Tuesday, August 16, 2011 12:48 PM
To: Elizabeth Winn; Elec Legal; VRTeam; Kim Thole
Subject: RE: Draft rule for Similar Name Standards

Proposed rule 81.71 focuses only on the similarity of names on the presented ID document and the official voter registration list, and this is consistent with 63.001(c) in SB 14.

However, I am concerned that an election worker might decide, for example, that "Mickey Smith" on the presented ID document is not the same as "Michelle R. Smith" on the voters registration list, even though the same address is on both the document and list and the birthdates are the same. (And I believe the birthdate is on all the required photo ID documents and the voter registration list.)

Do we need to say something about the other matching criteria before giving the election worker what is essentially unfettered discretion to compel a voter to vote provisionally because the election worker decides the names (alone) are not substantially similar?

Melanie H


-----Original Message-----
From: Elizabeth Winn
Sent: Monday, August 15, 2011 1:57 PM
To: Elizabeth Winn; Melanie Huff; Elec Legal; VRTeam; Kim Thole
Subject: RE: Draft rule for Similar Name Standards

here you go

-----Original Message-----
From: Elizabeth Winn
Sent: Monday, August 15, 2011 1:57 PM
To: Melanie Huff; Elec Legal; VRTeam; Kim Thole
Subject: RE: Draft rule for Similar Name Standards

Updated version. Great edits and great questions, MH. One of which will need to be discussed with John, as there is no great answer.

-----Original Message-----
From: Melanie Huff
Sent: Friday, August 12, 2011 12:30 PM
To: Elizabeth Winn; Elec Legal; VRTeam; Kim Thole
Subject: RE: Draft rule for Similar Name Standards

I have some (largely) technical suggestions to make to the rule, as well as some questions with respect to it.

I apologize in advance if my comments plow ground that has already been discussed and decided.


-----Original Message-----
From: Elizabeth Winn
Sent: Thursday, August 11, 2011 3:36 PM
To: Elec Legal; VRTeam; Kim Thole
Subject: Draft rule for Similar Name Standards



Δ π EXHIBIT 26
Deponent: K. I
Date: 4/23/14   Rptr____
WWW.DEPOBOOK.COM

TEX00460199

Not yet reviewed by Ann. Have not yet reviewed the form drafted by Karen.

TEX00460200

| From: | Caroline Geppert |
|---|---|
| To: | gael@gaelpharrison.com |
| Sent: | 10/21/2013 4:46:48 PM |
| Subject: | Re: Voter ID Problem |

Dear Ms. Harrison:

Thank you for your email.  In answer to your question, it is likely that the election officials at your polling place will determine that your name as it appears on your ID is "substantially similar" to your name as it appears on your photo ID.  Election officials have been instructed to review the ID presented by a voter and make a determination of whether the name on the ID exactly matches, is substantially similar to, or does not match the name as it appears on the official list of registered voters ("OLRV").  If a name does not exactly match but is "substantially similar" to the name on their list of registered voters, the voter will still be able to vote after initialing an affidavit stating that the voter is the same person on the list of registered voters.  The affidavit, referred to as the "similar name affidavit," is on the combination form/poll list that a voter signs after being qualified to vote, and the voter submits the affidavit by initialing the appropriate box on the combination form.  The voter may then proceed to vote as normal.

In determining whether the voter's name on the voter's ID and on the OLRV are "substantially similar," an election worker should consider a "totality of the circumstances, " such as whether information on the presented ID document matches elements of the voter's information on official list of registered voters, including the voter's residence address or date of birth, which may be strong indicators that the name on the presented ID document is substantially similar to the name on the official list of registered voters and vice versa.

Administrative rule 81.71 provides the following examples of "substantially similar" names:
1.  Name on presented ID is <u>slightly different</u> from one or more of the name fields on the official list of registered voters (e.g., there are minor spelling variations such as "Nanci Webber" versus, "Nancy Webber.");
2.  Name on presented ID or on the official list of registered voters is customary variation of the formal name, such as, for illustrative purposes only, Bill for William, or Beto for Alberto;
3.  Voter's name on the presented ID document contains an initial, a middle name, or a former name (such as the maiden name) that is not on the official list of registered voters; or
4.  A first name, middle name, former name, or initial of the voter's name that occupies a different field on the presented ID document than a first name, middle name, former name, or initial of the voter's name on the official list of registered voters.

Here is a chart that gives examples of similar names where former names, abbreviations, initials, etc. may be at issue:

| | |
|---|---|
| Lyndon Johnson | Lyndon Baines Johnson |
| William P. Clements, Jr. | Bill Clements |
| Willie Hugh Nelson | Willie Nelson |
| Audie Murphy | Audie L. Murphy |
| J. Roger Williams | Roger Williams |
| Earl C. Campbell | Earl Campbell |
| Carole Keeton Rylander | Carole Keeton Strayhorn |
| Sandra Day | Sandra Day O'Connor |
| Beyonce Knowles | Beyonce Knowles-Carter |

Δ π EXHIBIT 27
Deponent K.I
Date 4/23/14   Rptr
WWW.DEPOBOOK.COM

The voters listed above should be accepted for voting after initialing the substantially similar name affidavit.

TEX0031110

As an illustration of using a totality of the circumstances, review the information on this slide:



TEXAS SECRETARY OF STATE
OF STATE

# **Totality of the Circumstances**

- Claudia Alta "Lady Bird" Taylor Johnson

*Texas Driver License*

Lady Bird Johnson
123 Texas Way
Austin, Texas 71234

Date of Birth: 12/22/1912

Precinct 1 – Travis County
List of Registered Voters

Claudia Bird Taylor
123 Texas Way
Austin, Texas 71234

Date of Birth: 12/22/1912

10/21/2013        Texas Secretary of State Elections Division        10



In this example, the only name in common is "Bird," but the date of birth and residence address match. Thus, an election official could determine, under an examination of the totality of the circumstances, that the name on her ID and her name on the list of registered voters was substantially similar, and could allow Mrs. Johnson to vote after she initialed the similar name affidavit.

If, however, the election judge determines that a name cannot be considered substantially similar (i.e., is too different to accept for voting), then the voter would be given the opportunity to vote a provisional ballot. In order to have the provisional ballot counted, the voter will be required to visit the voter registrar's office within six calendar days of the date of the election to "cure" the ID problem, by presenting one of the acceptable forms of photo ID reflecting a closer match to the voter's name on the list of registered voters or some other official documentation, such as a marriage license or a court order reflecting a change of name.

For further information on the requirement for identification when voting, you may wish to review the following website: http://votetexas.gov/register-to-vote/need-id.

Finally, we would note that one way to avoid a problem at the polls is for a you to update your registration information to reflect your name as it appears on a form of acceptable ID. You may do this by:

Correcting your current voter registration certificate on the back and returning it to the Voter Registrar;

Filling out a new voter registration application form and checking the "change" box;

Changing your voter information at the same time you apply for or change your Texas driver's license; or

As long as you reside in the same county, changing your information online at the Secretary of State's Voter Registration Name/Address Change website. The screen will prompt you through the process, and the changes that you make will be forwarded to your county Voter Registrar for processing.

Although it is too late to make such a change for the upcoming November 5, 2013 election (the deadline to submit a change to effective for that election was October 7, 2013), changing the information now will insure that you will not encounter problems in other future elections. You also may wish to change or update your driver's license to reflect your full name. if you do not wish to change or update any identifying document, you should still be able to vote by initialing the substantially similar name affidavit each time you vote.

I hope this is helpful.

Sincerely,

Caroline Geppert
Staff Attorney – Elections Division

TEX0021115

Office of the Texas Secretary of State

1.800.252.VOTE (8683)

elections@sos.texas.gov | www.sos.state.tx.us

**VOTETEXAS.GOV**

POWERED BY THE *TEXAS SECRETARY OF STATE*

*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code. It is not intended to serve as a legal opinion for any matter. Please review the law yourself, and consult with an attorney when your legal rights are involved.*

---

**From:** Gael Harrison [mailto:gael@gaelpharrison.com]
**Sent:** Monday, October 14, 2013 10:19 PM
**To:** Elections Internet
**Subject:** Voter ID Problem

My name is Gael Plauche Harrison. My name is shown as Gael Plauche on my driver's license, my concealed carry permit, and my passport. My name is shown as Gael Harrison on the voting rolls. The two names are "substantially similar," only if the election worker focuses on the first name.

I have IDs with the last name of Harrison (such as a Medicare card and a State Bar of Texas card), but they do not have photos. I have none of the approved photo identifications with the name of Harrison.

I live in Grimes County, a small county in which the election workers at the polls know me. In fact, I have run for office in this county twice. I was once a precinct chair in Harris County. I have voted since I was 21, and I am now 65.

Will I be denied my right to vote for lack of an approved photo ID?

Thank you.

Gael Plauche Harrison

Attorney at Law

PO Box 1441

201 W Washington Ave

Navasota, Texas  77868

936-825-0888 office

936-825-0889 fax

*Board Certified--Civil Appellate Law*

*Texas Board of Legal Specialization*

## FALL 2013 Campaign $400,000 (all non-HAVA money)

Δ π EXHIBIT 28
Deponent K. I
Date 4/23/14 Rptr.
WWW.DEPOBOOK.COM

PL301
9/2/2014
2:13-cv-00193

I. Paid Media
   A. Used TV, Radio, Print and Online advertising
   B. Generated more than 25 million impressions
   C. Leveraged PSA to double budget, usually received a 1 for 1 match
   D. Reached 251 counties through TV or Radio*
   E. Targeted rural voters, African American voters, and Hispanics
   F. All paid media in English and Spanish
   G. Some print items also produced in Vietnamese and Mandarin

II. Earned Media
   A. Secretary Steen visited more than one dozen media markets across the state for events to promote voter education and knowledge of photo ID requirements(list below)
   B. press releases and op-eds from Secretary Steen sent and then printed throughout the state
   C. Info packets given to House and Senate members including draft releases about photo ID which were distributed and used across the state
   D. Radio tours where Secretary Steen called radio stations across the state for interviews publicizing the photo ID requirements, redistributed by DPS
   E. Media releases for all our EIC locations, and Houston Press Conference for EIC mobile station kickoff

III. Web Social Media
   A. frequent photo ID messages and reminders posted to our established VoteTexas twitter and facebook and reweeted through SOS twitter account
   B. updates of photo ID info and EIC locations on VoteTexas.gov
   C. VoteTexas app updated and reflected photo ID info
   D. Resources such as photo ID TV and Radio educational ads, posters, and other tools were added to the Resources Section of VoteTexas.gov and promoted to county election officials and other stakeholder groups and the media.

*The three counties not reached through TV or Radio are: Zavala, Crane, Terrell. These counties were reached through other efforts.

Places Secretary Steen Visited on photo ID education tour: San Antonio, Corpus Christi, Pharr, Fort Bend, Midland, Dallas, Fort Worth, Wichita Falls, Austin, Abilene, Eastland, Weatherford, Amarillo, Lubbock, Del Rio, Kingsville, Houston

Δ π EXHIBIT 29
Deponent K I
Date 4/23/14
Rptr
www.DEPOBOOK.COM

## 2014 Voter Education Campaign Phase 1- about $400,000 (HAVA)

PL302
9/2/2014
2:13-cv-00193

I.  Paid Media
- A. Used TV, Radio, Print and Online advertising
- B. Generated more than 14 million impressions
- C. Leveraged PSA to double budget, usually received a 1 for 1 match
- D. Targeted rural voters, African American voters, and Hispanics
- E. All paid media in English and Spanish
- F. The ads polled well in post-phase I research. When shown the TV ad, 4 out of 5 said they felt favorable to the TV ad and 3 out of 4 found the ad informative and easy to understand.

II.  Earned Media
- A. Secretary Berry visited more than 7 media markets across the state to promote voter education and knowledge of photo ID requirements
- B. press releases sent and printed throughout the state
- C. Secretary Berry wrote an op-ed which appeared in the Houston Chronicle.
- D. Radio tours where Secretary Steen called radio stations across the state for interviews publicizing the photo ID requirements
- E. Media releases for all our EIC locations, and Houston Press Conference for EIC mobile station kickoff

III.  Web and Social Media
- A. frequent photo ID messages  and reminders posted to our established VoteTexas twitter and facebook and reweeted through SOS twitter account
- B. early use of VoteTexas Instagram to encourage voting, role will be expanded in phase II of the campaign
- C. VoteTexas app updated and reflected photo ID info

## 2014 Voter Education Campaign Phase II- about $1.6 million (HAVA)

### Please note: Phase II is in the planning stage

Δ π EXHIBIT 30
Deponent  K.T
Date 4/23  Rptr
WWW.DEPOBOOK.COM

I.   Paid Media
   A.  continue to use TV, Radio, Print and Online advertising
   B.  focus outreach on Hispanic voters, African American Voters, rural voters and young voters
   C.  Will likely continue to use the same advertisements as phase I as those were well received and effective
   D.  May use other forms of paid media such as outdoor advertising and direct mail to get the word out

II.  Earned Media
   A.  Secretary Berry will continue to travel the state to promote voter education
   B.  PR efforts to remind people of May 10 and May 27 elections
   C.  we will continue to distribute and promote press releases sent and printed throughout the state
   D.  Op-eds from Secretary Berry and possibly other opinion leaders
   E.  Radio tours where Secretary Steen called radio stations across the state for interviews publicizing the photo ID requirements
   F.  Media releases for all our EIC locations
   G.  outreach and information kits to stakeholders such as faith groups, community groups, elected officials, appropriate opinion leaders
   H.  Special events to help promote VoteTexas resources

III. Web and Social Media
   A.  frequent photo ID messages  and reminders posted to our established VoteTexas twitter and facebook and reweeted through SOS twitter account
   B.  expanded use of Instagram account to compliment other social media activities
   C.  Continue to update and promote photo ID educational materials on VoteTexas.gov

Δ π EXHIBIT 31
Deponent_____
Date_____ Rptr._____
WWW.DEPOBOOK.COM

Texas Secretary of State, Paid Media Wrapup (TV, Radio + Print), September-October, 2013

**PL304**
**9/2/2014**
**2:13-cv-00193**

### Radio Flights

| Advertiser | Flight Dates | Market | Media | Station | Impressions | # Spots |
|---|---|---|---|---|---|---|
| Texas Secretary of State | 9/23-10/20 | Beaumont | Radio | KTCX-FM | 151,800 | 18 |
| Texas Secretary of State | 9/23-10/20 | Beaumont | Radio | KTCX-FM | 361,200 | 54 |
| Texas Secretary of State | 9/23-10/20 | Dallas | Radio | KHVN-AM | 198,400 | 42 |
| Texas Secretary of State | 9/23-10/20 | Dallas | Radio | KKDA-FM | 188,000 | 13 |
| Texas Secretary of State | 9/23-10/20 | Dallas | Radio | KRNB-FM | 188,000 | 13 |
| Texas Secretary of State | 9/23-10/20 | Dallas | Radio | KHVN-AM | 595,600 | 126 |
| Texas Secretary of State | 9/23-10/20 | Dallas | Radio | KKDA-FM | 804,010 | 83 |
| Texas Secretary of State | 9/23-10/20 | Dallas | Radio | KRNB-FM | 949,313 | 98 |
| Texas Secretary of State | 9/23-10/20 | Dallas | Radio | KKDA-FM | 416,606 | 28 |
| Texas Secretary of State | 9/23-10/20 | Houston | Radio | KMJQ-FM | 1,193,000 | 33 |
| Texas Secretary of State | 9/23-10/20 | Houston | Radio | KMJQ-FM | 3,173,000 | 99 |
| Texas Secretary of State | 9/23-10/20 | Killeen | Radio | KIIZ-FM | 88,400 | 26 |
| Texas Secretary of State | 9/23-10/20 | Killeen | Radio | KSSM-FM | 57,200 | 26 |
| Texas Secretary of State | 9/23-10/20 | Killeen | Radio | KIIZ-FM | 218,800 | 78 |
| Texas Secretary of State | 9/23-10/20 | Killeen | Radio | KSSM-FM | 150,800 | 78 |
| Texas Secretary of State | 9/23-10/20 | Statewide | Radio | TXSN | 782,000 | 5,950 |
| Texas Secretary of State | 9/23-10/20 | Statewide | Radio | TXSN | 625,600 | 2,360 |
| Texas Secretary of State | 9/23-10/20 | Tyler | Radio | KISX-FM | 141,200 | 34 |
| Texas Secretary of State | 9/23-10/20 | Tyler | Radio | KISX-FM | 331,900 | 102 |
| Totals | | | | | 10,616,529 | 9,261 |

### Cable TV Flights

| Advertiser | Flight Dates | Market | Media | Station | Impressions | # Spots |
|---|---|---|---|---|---|---|
| Texas Secretary of State | 9/30-10/27 | Abilene | Cable | 0187 Suddenlink/Abilene Interconnect | 50,565 | 221 |
| Texas Secretary of State | 9/30-10/27 | Beaumont | Cable | 0796 TW/Beaumont | 69,038 | 154 |
| Texas Secretary of State | 9/30-10/27 | Corpus Christi | Cable | 6819 TW/Corpus Christi | 44,000 | 196 |
| Texas Secretary of State | 9/23-10/20 | Dallas | Cable | 5334 TW/Dallas Interconnect | 3,062,106 | 227 |
| Texas Secretary of State | 9/30-10/27 | Dallas | Cable | 9806 TW/Dallas DirecTV | 592,069 | 158 |
| Texas Secretary of State | 9/30-10/27 | Houston | Cable | 5642 Comcast/Houston Interconnect | 4,478,264 | 366 |
| Texas Secretary of State | 9/30-10/27 | Houston | Cable | 9439 Comcast/DirecTV | 319,875 | 84 |
| Texas Secretary of State | 9/30-10/27 | Sherman-Ada | Cable | 1325 Cable One/Sherman | 58,279 | 396 |
| Texas Secretary of State | 9/30-10/27 | Shreveport | Cable | 8098 Suddenlink/Shreveport | 31,737 | 371 |
| Texas Secretary of State | 9/30-10/27 | Statewide | Cable | 9686 TW/Super G | 1,289,780 | 837 |
| Texas Secretary of State | 9/30-10/27 | Tyler | Cable | 8380 Suddenlink/Tyler | 171,119 | 331 |
| Texas Secretary of State | 9/30-10/27 | Victoria | Cable | 3130 Suddenlink/Victoria | 14,774 | 397 |
| Texas Secretary of State | 9/30-10/27 | Waco | Cable | 4900 TW/Waco | 105,213 | 196 |
| Texas Secretary of State | 9/30-10/27 | Wichita Falls | Cable | 8486 TW/Wichita Falls | 67,044 | 200 |
| Totals | | | | | 10,354,863 | 4,154 |

### Print

| Publication | Placement | Market | Media | Circulation | Run Dates |
|---|---|---|---|---|---|
| Dallas Post Tribune | 1/2 Page | Dallas | Print | 5,000 | 1 Run Before 10/19 |
| North Dallas Gazette | 1/2 Page | Dallas | Print | 6,500 | 1 Run Before 10/19 |
| LaVida News | 1/2 Page | Ft. Worth | Print | 35,000 | 1 Run Before 10/19 |
| Texas Metro News | 1/2 Page | Garland | Print | 1,481 | 1 Run Before 10/19 |
| Garland News | 1/2 Page | Garland | Print | 1,577 | 1 Run Before 10/19 |
| Houston Defender | 1/2 Page | Houston | Print | 22,000 | 1 Run Before 10/19 |
| Houston Suns | 1/2 Page | Houston | Print | 10,000 | 1 Run Before 10/19 |
| The Villager | 1/2 Page | Austin | Print | 6,000 | 1 Run Before 10/19 |
| San Antonio Observer | 1/2 Page | San Antonio | Print | 10,000 | 1 Run Before 10/19 |
| San Antonio Register | 1/2 Page | San Antonio | Print | 10,000 | 1 Run Before 10/19 |
| East Texas Review | 1/2 Page | East Texas | Print | 4,000 | 1 Run Before 10/19 |
| Dallas Examiner | 1/2 Page | Dallas | Print | 10,000 | 9/6, 9/20, 10/4, 10/18, 11/1 |
| Elite News | 1/2 Page | Dallas | Print | 4,200 | 10/12, 10/19, 10/26, 11/2 |
| Houston Forward Times | 1/2 Page | Houston | Print | 64,580 | 9/9, 9/26, 10/3, 10/17, 10/31 |

TEX00306416