indigent). In October of 2005, the U.S. District Court, Northern District of Georgia, struck down the Georgia law, in part, on the grounds that the fee for the digital ID cards amounted to an unconstitutional poll tax[43]. On July 12, 2006, Georgia's revised version of the same law[44] was also overturned in federal court[45], despite the fact that the Legislature tailored the new law to address the concerns of the same federal judge.

## Recommendations

Where courts have struck down the Georgia General Assembly's attempts to verify the identity of voters, the Texas Legislature could succeed just as the Arizona Legislature did. Efforts to increase voter turnout, such as the Motor Voter law and HAVA, are exercises in futility if the primary qualification to vote – citizenship -- is not guarded. Following are policy recommendations to be considered by the 80th Legislature.

### *Place Citizenship Status on Driver's Licenses and Texas Identification Cards*

Pursuant to the REAL ID Act of 2005 and the rules drafted by the U.S. Department of Homeland Security, the Texas Driver's License application process will change. By 2008, the Department of Public Safety will be required to verify the citizenship or legal residency status of all applicants for a Driver's License or Texas Identification Card. While the REAL ID Act lists certain fields that must appear on the new identity cards, the Act does not require the cards to list citizenship status. Senator McConnell's amendment to the Senate immigration bill would have done this. The Senate immigration bill was passed without Senator McConnell's amendment, meaning that the onus is on the Texas Legislature to require that DPS list on all Driver's Licenses and Texas Identification Cards whether or not the holder of the card is a United States citizen, just as it does with the height, weight and eye color of each person. Non-citizens who can prove they are in Texas legally will still be able to obtain a Driver's License or Texas Identification Card, but it will label them as non-citizens in order to prevent them from voting.

An applicant for a U.S. Passport must provide a birth certificate, naturalization papers, or other limited documents that *prove* citizenship. The standard for receiving a Driver's License or Texas Identification card should be no less. House Bill 1300 (79R) by Representative Joe Nixon provided a framework for implementing these reforms:

- ➢ Amend Transportation Code §521.101 by adding Subsection (c-1) to read: "The department shall on the face of a personal identification certificate a statement as to whether the holder is a citizen of the United States."
- ➢ Amend Transportation Code §521.121(a) so that a Texas driver's license must include "a statement as to whether the holder is a citizen of the United States."

---

[43] Darryl Fears, Washington Post, "Voter ID Law is Overturned", October 28, 2005; http://www.washingtonpost.com/wp-dyn/content/article/2005/10/27/AR2005102702171.html
[44] Georgia General Assembly, S.B. 84 http://www.legis.state.ga.us/legis/2005_06/pdf/sb84.pdf
[45] Errin Haines, Associated Press (printed in The Washington Times), "Ga. Judge Blocks Voter ID Law Enforcement", July 13, 2006;
http://hosted.ap.org/dynamic/stories/G/GEORGIA_VOTER_ID?SITE=DCTMS&SECTION=HOME&TEMPLATE=DEFAULT

➢ Add Subsection (i) to Transportation Code §521.142 so that the following are accepted by the Department of Transportation as proof of an applicant's United States citizenship:

> "(1) a driver's license or personal identification certificate, or a comparable document, issued by an agency or department of another state that states on its face that the holder of the driver's license, personal identification certificate, or comparable document is a United States citizen;
> (2) a certified photocopy of the applicant's birth certificate that verifies United States citizenship to the satisfaction of the department;
> (3) a valid United States passport issued to the applicant or a certified photocopy of the pertinent pages of a valid United States passport issued to the applicant that identify the applicant and show the passport number;
> (4) the originals of the applicant's United States naturalization documents or the number of the certificate of naturalization issued to the applicant; or
> (5) any other document or method of proof established under the federal Immigration Reform and Control Act of 1986."[46]

➢ Add Subsection (j) to Transportation Code §521.142 so that:

> "If under Subsection (i)(4) an applicant provides only the number of the applicant's certificate of naturalization, the department shall request the United States Citizenship and Immigration Services to verify that the certificate of naturalization was issued to the applicant. The department may issue a driver's license to the applicant only if the United States Citizenship and Immigration Services provides the verification."[47]

Additionally:

➢ Transportation Code, Chapter 521, Subchapter R should be amended to provide Driver's License and Texas Identification Card fee waivers for the indigent. Indigence should be verified by objective measures such as whether an individual qualifies for the Lone Star Card.

### Require Voters to Present a Driver's License or Texas Identification Card at their Polling Place

In order to vote, the Legislature should immediately require each voter to present a photo ID at their polling place.

As Senator McConnell, Mr. Bettencourt, and others have argued, Americans are frequently asked to show identification for even the most mundane daily activities:
- to rent a DVD,
- to check out a library book,
- to board an airplane,
- to buy alcohol or tobacco
- to belong to bulk retail clubs such as Sam's Club.

---

[46] House Bill 1300 (79R), by Representative Nixon.
[47] Ibid.

21

Additionally, with the passage of House Bill 164, the 79th Legislature required that products containing ephedrine or pseudoephedrine (most commonly known as Sudafed) be sold from behind the counter only. Furthermore, in order to purchase the cold medicines, the person making the purchase must show a Driver's License or other photo ID indicating the person is over sixteen years of age.

In each of those instances, an individual must present ID. The right to vote trumps all in importance. A worker at a polling place should be able to verify the identity of a voter just like a clerk at Blockbuster Video should be able to discern the identity of a person renting a movie. Additionally, workers at polling places must be sufficiently armed with the tools necessary to turn away non-citizens. A photo ID which lists citizenship status is the best means to achieve that end.

> ➤ Amend Election Code §63.001(b) so that, on offering to vote, a voter must present their voter registration certificate *and* a valid, unexpired Texas Driver's License or a valid, unexpired Texas Identification Card that proves the voter is a United States citizen.

### *Increase Funding to the Attorney General to Investigate Election Fraud*

The Special Investigations Unit (SIU) in the Office of the Attorney General currently assists local officials in investigating and prosecuting election fraud. The Legislature should appropriate funds to expand the activities of SIU beyond the investigation and prosecution of illegal votes cast by non-citizens, into areas such determining whether there are organized attempts to register voters in violation of the law. The sheer number of non-citizens removed from the voter rolls in Harris County warrants an investigation of the voter rolls in other counties. Such an investigation can and should be undertaken by the SIU.

### *Direct the Office of the Secretary of State to Undertake a Study of Fraudulent Voter Registration*

In the light of the number of individuals who have been removed from the voter rolls in Harris and Bexar counties, the Office of the Secretary of State should perform a statewide audit of voter rolls in order to verify the citizenship of all voters in Texas. The names of those who are found to be fraudulently registered should be turned over to county prosecutors in order for perjury proceedings to be initiated.

### *Secure Applications for Early Voting Ballots-by-Mail*

Requests for early voting ballots are handled much the same way as are voter registration applications: the veracity of the applicant is assumed and the request is processed on those merits. Requiring absentee voters to put a phone number on their absentee ballot request will give local officials a necessary tool to verify the request for an absentee ballot is actually being made by the person in question. Additionally, with voters providing either a Driver's License or Texas ID number, local officials will be able to verify the citizenship of *all* voters, as opposed to just those who vote in person.

22

> ➢ Amend Election Code §84.002 by adding the requirement that an application for an early voting ballot include the applicant's telephone number and either a Driver's License number or Texas Identification Card number.

*Cross-Check Voter Rolls against Death Records:*

The Department of State Health Services maintains a computer database of all birth and death records. Similarly, the Office of the Secretary of State maintains the master list of registered voters. Texas Election Code, Section 16.001 requires "local registrars of deaths" to share death records with voter registrars monthly. However the statute does not command the voter rolls be expunged. The two should be cross-checked twice a year, and all deceased persons should be immediately removed from the voter rolls.

> ➢ Amend Election Code §18.061 by adding subsection (f) to require the Secretary of State to conduct a semi-annual cross-check of the statewide computerized voter registration list against death records maintained by the Department of State Health Services for the purposes of expunging the voter rolls.

*Allow Responses to Jury Summons to Immediately Disqualify Voters*

The Harris and Bexar county voter registration officials discovered non-citizens on their voter rolls based on responses to jury summons. The Legislature should ensure that if a person returns a jury summons because he is not a citizen, he is automatically stricken from the voter rolls.

> ➢ Amend Election Code §16.0332 so that the registrar shall immediately cancel a voter's registration upon receipt of a returned jury summons that lists non-citizenship.

*Prohibit the Use of Matricula Consular Cards as a Form of Official Identification*

The Matricula Consular is a card issued to Mexican citizens by Mexican consular offices in the United States and elsewhere. The card is available to any Mexican citizen living outside Mexico, and is especially popular among illegal immigrants since the card is issued without taking immigration status into account.[48] The reliability of the Matricula Consular card as a dependable form of identification is often called into question. The Office of Congressman Gary Miller (R-CA) reported in September 2004 that:

> "According to the FBI, Matricula Consular cards are almost exclusively used by illegal aliens. Anyone here legally has valid identity documents they can present to open a bank account, such as driver's licenses, Social Security numbers, or passports."[49]

---

[48] "Consular I.D. Cards: Mexico and Beyond," Kevin O'Neil, Migration Policy Institute, April 2003.
[49] Matricula Consular Cards: Myth and Facts Behind the Mexican I.D. Cards, Office of Congressman Gary Miller, September 16, 2004.

23

Indeed, in his testimony before the House Judiciary Subcommittee, Steve McCraw, Assistant Director of the F.B.I.'s Office of Intelligence, and current Texas Homeland Security Director, pointed out that:

> "[T]he Government of Mexico issues the card to anyone who can produce a Mexican birth certificate and one other form of identity, including documents of very low reliability. Mexican birth certificates are easy to forge and they are a major item on the product list of the fraudulent document trade currently flourishing across the country and around the world...It is our belief that the primary reason a market for these birth certificates exists is the demand for fraudulently-obtained Matricula Consular cards."[50]

Given that the Matricula Consular card is clearly an unreliable form of identification, no state agency in Texas should be permitted to accept the card as evidence of a person's identity, a person's immigration status, or as a secondary or supporting proof of a person's identity.

> ➤ Legislation similar to House Bill 326 (79R) by Representative Tony Goolsby is recommended. Specifically, Section 521.142 of the Transportation Code should be amended, and a chapter should be added to the Government Code to prohibit the acceptance of Matricula Consular cards by state agencies.

H.B. 326 declared that any agency of the state that offers a public benefit or service, including the Texas Department of Transportation, and all applications for employment by a state agency:

> "[M]ay not accept, recognize, or rely on an identity document issued to the applicant by a consular office or consular official of another country, including a Matricula consular issued by a consular office of the United Mexican States located in this country, as primary, secondary, or supporting evidence of the identity of an applicant."[51]

## Answering Anticipated Objections

The Texas House of Representatives has already debated the essence of this proposal on May 2, 2005. House Bill 1706 would have required voters to identify themselves at polling places with either one form of photo ID or two forms of other identifying documents, including a utility bill or library card.

HB 1706 would not, however, have given officials the means to verify the citizenship of voters since most of the identifying documents are available to non-citizens. Nevertheless, the bill passed the House by a vote[52] of 78-67. Legislators preparing for the 80th Regular

---

[50] Testimony of Steve McGraw before the House Judiciary Subcommittee, June 26, 2003.
[51] Text of H.B. 327 (79R) by Representative Goolsby,
[52] 79th Legislature, May 3, 2005, House Bill 1706, H- 473 Third Reading and Final Passage

24

Session should take note of the arguments made against HB 1706, as many of them will likely be repeated.

Texas legislators can further benefit by examining arguments made against similar proposals made in other states. For example, one major objection is likely to be the cost of obtaining proof of citizenship (i.e. the cost of a registered birth certificate). Driver's License fees are $24 and the fee for a Texas ID Card is $15. Opponents will likely label the law an unconstitutional poll tax. For example, the American Civil Liberties Union (ACLU) argues that asking voters to identify themselves at a polling place has them "jump through unnecessary hoops to exercise their constitutionally-guaranteed right to vote[53]." The ACLU arguments against the Georgia voter ID law reads in part:

> "The racially disparate impact of the economic obstacles to obtain photo identification stemming from the cost of certain documentation, including certified copies of birth certificates, as well as the cost of taking time off work and traveling to obtain photo ID."[54]

The response to the ACLU argument: without minimal "hoops", such as an ID requirement, the constitutionally-guaranteed right to vote is no longer guaranteed if a citizen's vote is cancelled by a fraudulent vote. When fraudulent votes are cast, the legitimate votes of citizens are diluted.

First, Driver's License fees are currently waived for disabled veterans[55], meaning that at least one narrow class of citizens should face absolutely no economic impact in obtaining a Driver's License. That waiver could be expanded to the indigent. Furthermore, to fully counter the ACLU argument, counties could waive fees for certified copies of birth certificates.

Recall that the 2005 Georgia voter ID law carried a provision under which the indigent would be given a free identification card. However, the Georgia law did not define "indigent." Instead, the law allowed applicants for the ID to attest to their indigence. Despite the exemption for indigent voters, U.S. District Judge Harold L. Murphy struck down the law as an unconstitutional poll tax.

In Texas, several public social programs are designed to assist the indigent. Temporary Assistance for Needy Families (TANF), for example, gives aid to families earning 14% of the Federal Poverty Line (FPL)[56]. The Lone Star Card, used by the state to deliver food stamps and TANF assistance, is available to a family of four which nets no more than

---

[53] American Civil Liberties Union, "ACLU Challenges Albuquerque Voter ID Law" November 2, 2005; http://www.aclu.org/votingrights/access/21256prs20051102.html

[54] American Civil Liberties Union, "Civil Rights Groups Urge Department of Justice to Block New Georgia Photo ID Law", March 29, 2006; http://www.aclu.org/votingrights/er/24774prs20060329.html

[55] See Transportation Code §521.426, Disabled Veteran Exemption

[56] Health and Human Services Commission, Temporary Assistance for Needy Families; http://www.hhsc.state.tx.us/programs/TexasWorks/TANF.html

25

$1,613 in monthly income[57], or nearly 100% FPL. The Legislature need not create a new determination of indigence by which the Driver's License fee may be waived. Instead, the fee waiver can and should be linked to one of those government programs, which provide for a generally-accepted measure of the indigence of the applicant for an identity card. By basing the ID fee waiver on an existing program, the indigence of those receiving the waiver would not be based on the honor system, but would be verifiable.

Even without a waiver, however, the fee does not constitute an unjust barrier to the right to vote. For example, people of all income levels drive despite the fact that each county in Texas charges between $60 and $70 annual vehicle registration. The indigent marry and form families, despite the fact that counties charge between $30 and $40 for marriage licenses. Importantly, as of July 1, 2006, the federal government requires all applicants and recipients of Medicaid to prove their citizenship with a birth certificate, passport, or limited other documents. Furthermore, many citizens retain copies of their birth certificates, meaning that in those cases the cost to prove citizenship would be zero. For a citizen who has already obtained a passport, the cost to prove citizenship for voting purposes would be zero. Insuring our elections against fraud will not come without some cost, but the return on the investment is confidence that citizens' votes are not diluted by those of non-citizens.

Additionally, the following table compares the number of registered voters against the number of Driver's Licenses and Texas ID Cards:

| Registered Voters (Nov, 2005)[58] | 12,577,545 |
| Age 18+ Driver's Licenses (fy2005)[59] | 14,429,377 |
| Texas ID Cards (2006)[60] | 3,960,249 |

In fiscal year 2005, there were 14.4 million valid unexpired Driver's Licenses issued to Texans of voting age. In November of 2005, however, there were only 12.5 million registered voters. With 1.8 million more Driver's Licenses held by the voting age population than there are registered voters, the argument that the voter ID proposal will be a barrier to voting is a fallacy. Add in another 3,960,249 unexpired Texas Identification Cards in the state as of April, 2006[61] and 87% of the *total* state population (all ages) has some form of government identification card.

Another objection is based on the inconvenience of having to acquire a voter identification card. This objection is best illustrated by the Southwest Voter Registration Education Project (SVREP). On November 2, 2004, Arizona voters passed Proposition 200 which requires that persons registering to vote prove their citizenship. SVREP openly opposed the Arizona effort to verify citizenship of voters. In a release on its website, the group lists

---

[57] Health and Human Services Commission, The Food Stamp Program; http://www.hhsc.state.tx.us/programs/TexasWorks/foodstamp.html

[58] Office of the Secretary of State; http://www.sos.state.tx.us/elections/historical/70-92.shtml

[59] Department of Public Safety, Driver's License Division, review of Federal Highway Administration reports

[60] Department of Public Safety, Driver's License Division

[61] Claire McGuinness, Senior Staff Attorney, Drivers License Division, Texas Department of Public Safety; Submitted Thursday, July 13, 2006; response received Monday, July 17, 2006.

26

those who will be disenfranchised by the Arizona law. Non-drivers, people who have changed addresses, senior citizens, and disabled persons will all face "obstacles to registration", according to the SVREP[62]. The SVREP specifically argues that "[m]any senior citizens no longer drive cars and may have an expired driver's license[63]." That argument is based on the assumption that all elderly people are decrepit and all disabled people are completely dependent. The Attorney General of Texas and a long-serving State Representative are both disabled (Greg Abbott and Paul Moreno are wheel-chair bound) and one of the state's leading corporate executives is aged (T. Boone Pickens is now 78 years old and going strong as head of BP Capital Management).

Additionally, requiring voters to show a Driver's License or Texas ID Card at the polls can take effect immediately while the citizenship verification is phased in. Almost all Driver's Licenses held by the 18 year old and over population expire every six years, meaning that seven years after placing citizenship status on the Driver's Licenses, election workers will be able to verify the citizenship of all voters. In short, existing expiration dates for Driver's Licenses need not necessarily be invalidated by the citizenship verification requirement.

Nevertheless, to address the concerns of inconveniencing voters, notices can be sent to all registered voters as soon as the Governor signs the voter ID law. Assuming the 80th Legislature passes this proposal, and assuming the Governor signs the law in June 2007, voters would have well over one year to obtain the necessary identification for voting before the 2008 presidential election.

Expecting a Driver's License or other government identification from voters is not a barrier to voting. Granted, a handful of individuals may not have a government-issued ID. But elections are planned far in advance, giving the statistically few people without an ID plenty of time to obtain one. In Texas, early voting extends 14 days before the actual election date. Additionally, 87% of the total Texas population (which includes all ages) has either a Driver's License or Texas Identification Card.

Voting is the most important right in America, but it is also a responsibility. The government requires voters to register before receiving a ballot, therefore verifying the information they provide on their registration application is not a measure designed to prevent any *citizen* from voting. It is instead a measure designed to keep illegal aliens, non-citizens and people otherwise not qualified from voting and diluting the legitimate votes cast by citizens.

## Conclusion

With an estimated 500,000 illegal aliens entering the United States each year[64], Texas cannot afford to leave its election system susceptible to their fraudulent votes. Voting is the

---

[62] Voter Registration Education Project, "Harsh Voter Provisions in Arizona Proposition 200 Will Reduce Voting"; http://www.svrep.org/press_room/press_releases/06/prop_200_probs.html
[63] Ibid.
[64] Jeffrey S. Passel, Pew Hispanic Center, "The Size and Characteristics of the Unauthorized Migrant Population in the U.S." http://pewhispanic.org/files/reports/61.pdf

27