Meredyth (County Affairs, Urban Affairs, Elections, Land and Resource Management, and Pensions, Investments and Financial Services)

### Voter ID:
Supporters say requiring a Photo ID would protect and strengthen the electoral system by requiring voters to present identification at the polls. The bill would establish a uniform standard, reduce voter fraud, bring voting in line with other transactions that require proper identification, and raise the bar in restoring election integrity. Supporters are mainly Republicans.

Opponents say The voter ID requirements in would create substantial obstacles for certain groups that disproportionately lack proof of identification, including the elderly, minorities, low-income voters, and disabled persons — and would require them to obtain such identification for the sole purpose of voting. By placing an extra burden on voters who were otherwise qualified to vote, the bill effectively would lead to the needless. Opponents are mainly Democrats.

### Eminent Domain:
The Fifth Amendment to the U.S. Constitution prohibits the taking of private property for public use without just compensation, commonly referred to as the "takings clause." Texas Constitution, Art. 1, sec. 17 prohibits a person's property from being taken, damaged, or destroyed without consent for public use without adequate compensation.

In June 2005, the U.S. Supreme Court ruled in *Kelo v. City of New London*, 545 U.S. 469, that the proposed use of property by the city of New London, Conn. for a development project qualified as a "public use" within the meaning of the U.S. Constitution's takings clause. The Supreme Court said that the city's plan unquestionably served a public purpose and therefore ruled that it did not violate the takings clause.

The court ruled that promoting economic development is a traditional and long accepted government function and embraced the broader interpretation of public use as "public purpose" in upholding the city's actions.

The court also emphasized that nothing in its opinion precluded a state from placing further restrictions on the exercise of the takings power. Following the *Kelo* decision, the 79th Legislature, in its second called session in 2005, enacted SB 7 by Janek, which prohibits governmental or private entities from using eminent domain to take private property if the taking:
  1) confers a private benefit on a particular private party through the use of the property;
  2) is for a public use that merely is a pretext to confer a private benefit on a particular private party; or
  3) is for economic development purposes, unless economic development is a secondary purpose that results from municipal community development or municipal urban renewal activities to eliminate an existing affirmative harm on society from slum or blighted areas.

In 2007, the Legislature passed HB 1495, known as the Landowner's Bill of Rights. The Legislation charged the Attorney General with preparing a written bill of rights for an owner whose property could be acquired by a governmental or private entity through eminent domain. The bill of rights would inform property owners of their rights to:
  1) notice of the proposed property acquisition;
  2) a good faith effort to negotiate on the part of the entity proposing the use of eminent domain;
  3) an assessment of damages to the owner that would result from the acquisition; and


Straus
EXHIBIT NO. 5
K. FISHER

4) a hearing, including damage assessment, as provided in Property Code ch. 21, and the right to appeal any consequent judgment.

Entities with eminent domain power would be required to send or provide the bill of rights document to the person listed as the most recent owner prior to commencing negotiations for the acquisition of a property.

Proposition 11 appeared on the Constitutional Amendment ballot on 11-3-2009 and was passed by just over 80% support from Texas voters.
*What the Amendment does:*
   1) private property cannot be condemned for economic development purposes or the enhancement of tax revenues.
   2) Limit the use and ownership of property taken by eminent domain to either the state or the public at large.
   3) Requires new entities seeking the power of eminent domain to be approved by a two-thirds vote of the Legislature.
   4) Require condemnation for urban blight to address each particular property.

Some believe further reforms or protections are needed and will push this session for reforms such as offers to landowners that represent the fair market value of their property, compensation to owners for lost access to their property, disclosure of appraisals, damages paid for condemnation, payment of attorney's fees in condemnation proceedings, requiring a bona fide offer and the right of landowners to repurchase land not used for the purposes for which it was originally condemned are among some issues that have been mentioned and will likely be topics of legislation this session.

### County Affairs:
*Unfunded mandates:* Solomons has filed a bill to ban unfunded mandates to county and city governments among others, but excluding school districts.
*Employment of doctors by rural hospitals:* This issue was included in the interim charges for the County Affairs Committee after several bills filed last session were defeated or vetoed by the Governor. Rep. Leo Berman signed a letter of dissent to the County Affairs Interim Report disagreeing with the Committee's recommendation that the Texas Legislature should adopt measures that allow for the employment of doctors by rural hospitals.
*Incompatible land uses:* Each session counties push for more authority to regulate land use within and outside their boundaries.

### Urban Affairs:
*Meet and Confer Agreements:* Last session there were numerous bills filed to allowed meet and confer agreements, I anticipate similar legislation being filed this session as well, however, with the Republican super majority, these bills will likely go nowhere, but it's something to be aware of.
*TDHCA:* This agency went through Sunset Review in 2010, so I will monitor their Sunset Legislation. The Governor's Office may have specific plans for TDHCA.

### Elections:
*Voter ID:* As described above will be a big issue, however with the Republican super majority, I anticipate legislation passing this time. I think a straight photo ID requirement is the likely type of legislation that will pass this session.
*Campaign Finance reform:* In light of the Supreme Court case *Citizens United*, I anticipate some different types of campaign reform legislation including disclosure requirements and contribution limitations will come through Elections this session. In any given session there are usually different types of campaign finance issues that come through the Elections Committee.

**Land and Resource Management:** Eminent domain, as described above will be a big issue as many bills have already been filed. the Governor stated in his address to the House on opening day that eminent domain is now on the Emergency Call.

*Coastal Coordination Council:* The Coastal Coordination Council went through Sunset Review in 2010 and the Commission decided to abolish the Council and move its duties to the GLO. I will monitor the Sunset Legislation during session.

## Pensions:

*Benefit Design Changes:* Although state contribution changes occur in the Appropriations Committee, other benefit design changes will be discussed in the Pensions, Investments and Financial Services Committee. These possible changes include: the debate about whether to switch new and/or current state employees from a defined benefit pension to a defined contribution pension plan (like a 401k plan); possible changes to health benefits offered such as requiring state employees to pay some part of the health insurance premiums for themselves and dependants; or changing the retirement age/formulas.

*Payday Lenders:* A few bills were filed last session to regulate Payday lenders, which the industry aggressively opposed. There will be efforts to regulate payday lenders again this session.

*Debt Management and Debt Relief:* Last session there were numerous bills filed to further regulate debt management and debt relief agencies, which the industries aggressively opposed. There will be efforts to further regulate these industries this session as well.

### Interim Reports - significant recommendations only:

#### County Affairs Interim Report:

- Recommends The Texas Legislature should consider adopting limited and reasonable measures to protect against incompatible land uses in high growth areas outside of city jurisdiction.
- The Texas Legislature should consider granting counties optional authority to adopt regulations that would assess impact fees or "in lieu" fees for the proportional costs of widening or extending roads required to serve new development.
- The Texas Legislature should adopt measures that allow for the employment of doctors by rural hospitals.
- The Texas Legislature should adopt measures that remove barriers to the full utilization of Nurse Practitioners (NPs), Physician Assistants (PAs) and other health providers.
- The Texas Legislature should adopt measures that require Regional Councils of Governments to offer full board membership or ex-officio board membership to a member of the legislature on each of the Regional Council of Governments.

#### Urban Affairs Interim Report:

- Require Texas Department of Housing and Community Affairs, in consultation with the Texas Department of Rural Affairs and the Governor's office, to develop a comprehensive long-term disaster recovery plan. (Also a Sunset recommendation)
- Require the Governor to designate the State's lead agency for administering any potential long-term disaster recovery funding by May 1 of every even-numbered year. (Also a Sunset recommendation)
- Require cities, counties and councils of government to add a long-term recovery component to existing emergency management plans.

*Still waiting on the following reports: **Pensions, Investments and Financial Services; Elections and Land and Resource Management***

### Sunset Review Summary

Highly Confidential

**TSAHC:**
-Extend the Sunset Review date to 12 years rather than 6 years.
-Require the Corporation to include a range of enforcement options in its multifamily contracts to ensure developers provide safe and decent housing.
-Update standard Sunset across-the-board requirements for the corporation.

**TDHCA:**
-Require TDHCA, in consultation with the Texas Department of Rural Affairs and the Governor's Office, to develop a comprehensive long-term disaster recovery plan.
- Require the Governor to designate the State's lead agency for administering any potential long-term disaster recovery funding by May 1 of every even-numbered year.
-Remove required scoring for letters from legislators in the Housing Tax Credit Program.
-Improve oversight of the installation of manufactured homes.

**DIR:**
-Provide DIR with oversight to reduce costs and spend taxpayer funds more efficiently.
-Require use of tools to improve management and enforcement of major statewide contracts.
-Establish a new board at DIR with specific experience requirements to govern the agency.
-Transfer the information technology cooperative purchasing function to the Comptroller's office.
-Fund DIR directly with General Revenue and continue the agency for six years.

**Coastal Coordination Council:**
-Abolish the Coastal Coordination Council on September 1, 2011 and transfer its functions to the General Land Office, and require the General Land Office to establish, by rule, a Coastal Coordination Advisory Committee.

**Elections** Policy Advisor: Meredyth Fowler

*Voter ID:*

By way of background Section 5 of the Voting Rights Act states that a covered jurisdiction (such as Texas) may not implement a change in its election laws or practices *unless the jurisdiction demonstrates* the change will be free of any racially discriminatory purpose or effect. The burden is on the state to prove that the change in law will not have a discriminatory impact.

A covered jurisdiction must submit a proposed election law for formal approval to either the United States Department of Justice - Civil Rights Division or to the United States District Court for the District of Columbia (represented by a randomly chosen three-judge panel) for a declaratory judgment that the proposed law is acceptable. Both venues use the same standard of review (described above).

*Arguments for and against requiring a photo id to vote:*

One of the biggest issues this Legislative Session will be legislation requiring a photo id to vote. Legislation has been filed on this topic identifying acceptable forms of identification as well allowing for non-photo options. However, given the fact that Voter ID was declared an emergency by the Governor there is little doubt about passage. A straight photo ID requirement is likely to pass this session.

Not surprisingly, Republicans and Democrats are split politically on the issue, and the argument boils down to disenfranchisement vs. voter fraud. Supporters argue requiring a Photo ID would protect and strengthen the electoral system by requiring voters to present identification at the polls. The bill would establish a uniform standard, reduce voter fraud, bring voting in line with other transactions that require proper identification, and restore election integrity.

Opponents argue requiring a photo ID would create substantial obstacles for certain groups that disproportionately lack proof of identification, including the elderly, minorities, low-income voters, and disabled persons — and would require them to obtain such identification for the sole purpose of voting. By placing an extra burden on voters who were otherwise qualified to vote, Democrats argue the bill effectively would lead to the needless disenfranchisement of many voters. The party also argues claims that voter fraud make it necessary to enact such laws are not supported by evidence.

**Elections Interim Report**

**Charge One:** Study ways the state can enhance military and overseas voters' ability to obtain and return balloting materials and reduce burdens on those voters' exercise of their right to vote. *Joint Interim Charge with House Committee on Defense and Veterans Affairs.*

As a matter of background, soldiers from Texas, as well as from across the country have not been able to fully participate in the election process. Federal and state election laws and procedures have not protected the right of members of the military, their families and others living overseas to vote in local, state and federal elections.

Voting advocates have identified three major reasons why the laws of states like Texas do not currently give overseas military members enough time to vote: *Reliance on Mail Delivery of Ballots, Waiting Too Long to Distribute Ballots and Early Deadlines for Ballot Return.*

**Recommendations:**

Highly Confidential

Require election offices to transmit ballots to military and overseas voters at least 45 days before every federal, state and local election - including primaries, runoffs, special, and general elections; Provide for email delivery of blank ballots to all military and overseas voters upon request;

Allow the Federal Write-In Absentee Ballot, or FWAB, to be accepted for federal, state and local elections in Texas. While Texas has its own write-in absentee ballot, allowing voters to use the FWAB for all elections would simplify, standardize and streamline the voting process for Texans abroad; and

**Charge Two:** Examine the use of countywide polling places and compare voter turnout and the number of rejected provisional ballots in counties that use countywide polling places with similar counties that do not.

As a matter of background, the use of countywide voting locations in place of the traditional precinct polling place locations has been allowed to some extent since the legislature adopted a pilot program in 2005. Two more pilot programs have been authorized in 2008 and 2009.

**Recommendations:**
The committee agrees there is a need for statutory changes to the election code to expand the number of counties eligible for the program and to expand the list of eligible counties.

**Charge Three:** Examine the prevalence of fraud in Texas elections. Study new laws in other states regarding voter identification and recommend statutory changes necessary to ensure that only eligible voters can vote in Texas elections.

Jay Dyer, Deputy Attorney General for Government and External Affairs, testified that the Attorney General's (AG's) office has two divisions primarily responsible for election code enforcement. Since 2002, Mr. Dyer testified that the AG's office received 267 referrals of incidences of alleged illegal voting.

The prosecution of election fraud cases at the local level are generally handled by the district attorney for felony offenses and the county attorney for misdemeanors violations.

**Recommendations:**
The Elections Committee requiring voters to show photo identification in order to cast a ballot at the polls and recommend free identification cards be issued if the voter is registered in this state and is receiving the identification card with the express intent to vote. Legislation should provide for the education of voters on any changes enacted to current law.

**Charge Four:** Review the Texas campaign finance law in judicial races in light of the recent United States Supreme Court decision Caperton v. Massey. *Joint Interim Charge with House Committee on Judiciary and Civil Jurisprudence.*

By way of background, *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252 (2009) examines the point at which an elected judiciary may interfere with someone's right to a fair trial. Before *Caperton*, Texas Courts automatically rejected motions to recuse on the basis of campaign

donations in judicial races. After *Caperton*, Texas judges must hear recusal motions based on elected judicial campaign donations. This has created the need to readdress and reevaluate existing laws regarding judicial elections and to identify the necessary changes to ensure that Texas judges are in compliance with federal law.

In Texas, before *Caperton*, a litigant could not ask for a recusal based on judicial campaign contributions. Subsequent to the ruling by the U.S. Supreme Court, Texas courts must consider campaign contributions when deciding recusal motions.

**Recommendation:**
Texas legislature should consider legislation giving judges a clearer standard for when judicial recusal is required.

\*\*Legislation addressing this issue could go through the Elections Committee or through the Judiciary and Civil Jurisprudence Committee as this particular charge was a joint charge between the two committees.

**Sunset:**

N/A

## VOTER ID BILL SUMMARY
### SB14 (82R engrossed)

### SUMMARY

SB14 would give Texas arguably the strictest photo ID law in the country. A review of the US Supreme Court's approval of Indiana's photo ID law and the DOJ's approval of Georgia's photo ID law indicate that SB14 is likely to be upheld under both constitutional review and Section 5 Voting Rights Act review.

SB14 requires a voter to provide one of six acceptable photo IDs on election day (TX DL, DPS ID card, military ID, passport, citizenship certificate, or CHL), except that there is an opportunity to opt out of the photo ID requirement for people who are over age 70 when the law takes effect or who provide a signature affirming that they are disabled, indigent, or have a religious objection to being photographed and therefore cannot get a photo ID.

If a person does not have acceptable ID on election day, they may cast a provisional ballot and return to the voter registrar within six days with acceptable ID and have their ballot counted.

The criminal penalties for attempting to vote fraudulently are increased.

There are several provisions requiring training of poll workers and notice and education for the public in multiple languages and formats. The education and training efforts begin now, but the new ID requirements will not apply until the 2012 primary election. The Secretary of State has federal HAVA funds available to pay for the education and training efforts.

### SUBSTANTIVE PROVISIONS

- A voter must present an acceptable photo ID on election day:
    (1) TX DL (current or expired no more than 60 days)
    (2) ID card issued by DPS (current or expired no more than 60 days) - *provided free if requested by a voter*
    (3) military ID (current or expired no more than 60 days)
    (4) US passport (current or expired no more than 60 days)
    (5) US citizenship certificate
    (6) CHL (current or expired no more than 60 days)

- *Exception #1*: a voter who is 70 or older on 01/01/12 need only present a voter registration card on election day
- *Exception #2*: a voter who is disabled and has provided a physician certification of the disability to the registrar and received a registration card marked "Photo ID not required" need only present the registration card on election day
- *Exception #3*: indigent people and people with religious objection to being photographed may cast a provisional ballot on election day and return to the registrar within 6 days to sign an affidavit confirming their exempt status



Straus
EXHIBIT NO. 6
K. FISHER

- The name on the ID must be "substantially similar" to the name on the voter list. If a person does not have acceptable ID on election day, they may cast a provisional ballot and return to the voter registrar within six days with acceptable ID and have their ballot counted.

- All election workers must be trained in the new ID requirements. The SOS and counties must provide education and notice in multiple languages to voters, including signs at polling places, written notice included with registration cards, written notice to voters attempting to use unacceptable ID, educational materials on the SOS website, and a statewide education campaign organized by the SOS.

- The criminal penalty for voting fraudulently is increased from a third degree felony to a second degree felony, and the penalty for attempting to fraudulently vote is increased from a Class A misdemeanor to a state jail felony.

Highly Confidential

NEW (for Dem support)

① 63.001 (g) reqs detailed info be given to voters re: provisional voting.

② 63.0101 (a)(6) allows public or private college ID cards

③ increased penalty for illegal voting

④ allows ballot board to verify signature on provisional ballot or voter to return w/ ID w/in 2 business days. (no separate sig verification committee)

⑤ 31.012 and transition reg/allow voter registration efforts and education efforts

⑥ 2011 instead of 2010



Straus
EXHIBIT NO. 7
K. FISHER

HIGHLY CONFIDENTIAL

TX_00012065

## Talking Points Against Student ID Amendment

- There is no uniformity amongst Texas institutions of higher education for making student ID's.
    - Some do not have expiration dates.
    - Even after having SOS prescribe uniform requirements for student ID's, there is no guarantee that colleges and universities would comply.
    - This would make the student ineligible to vote even after relying on their institute of higher education.
- Students are still eligible to vote absentee in their home precinct.
- There is no assurance to the State that the persons who process student ID's are capable of providing the same type of security in issuing those ID's as the state or federal government would be in the types discussed in SB 14.
- Students should have the types of documents needed to procure a driver's license or ID card for attending their institution.
    - Birth certificate, DL, social security card, etc.
- Ease of forging student ID's.
- Allowing this type of identification would only cause confuse to poll workers because there are so many types.

***Flipside: out of state students would not be able to use their DLs.

Straus
EXHIBIT NO. 8
K. FISHER

CONFIDENTIAL

LEG00000795