PL461 9/2/2014
2:13-cv-00193



# Somervell County
## OUR COMMUNITY, OUR COMMITMENT.

CPANEL

Search...

| Home | County Offices | Other County Offices | County Information | Public Notices | Jobs |

| Financial Transparency | Elections | Transfer Station | County Directory |

**MAIN MENU**

Home

County Offices

Other County Offices

County Information

Public Notices

Jobs

Financial Transparency

**Elections**

Transfer Station

County Directory

# Election Results

\* Election results are unofficial until canvassed by the proper authority.

Results History:

2014 - MAY 27, 2014 REPUBLICAN PRIMARY RUNOFF ELECTION

2014 - MAY 27, 2014 DEMOCRATIC PRIMARY RUNOFF ELECTION

2014 - MAY 10, 2014 GLEN ROSE INDEPENDENT SCHOOL DISTRICT ELECTION

2014 - MAY 10, 2014 SOMERVELL COUNTY HOSPITAL ELECTION

2014 - MAY 10, 2014 SOMERVELL COUNTY WATER DISTRICT ELECTION

2014 - MARCH 4, 2014 REPUBLICAN PRIMARY ELECTION

2014 - MARCH 4, 2014 DEMOCRATIC PRIMARY ELECTION

2013

2011
2010

# 2014 ELECTION INFORMATION

## MAY 2014 ELECTIONS CALENDAR

**MAY 10, 2014 ELECTION:**

**GLEN ROSE ISD: SAMPLE**

# 2012 Voting Precinct Maps

CITY OF GLEN ROSE
SOMERVELL COUNTY

CPANEL

BALLOT

HOSPITAL DISTRICT: SAMPLE BALLOT

WATER DISTRICT:  SAMPLE BALLOT

## MAY 27, 2014 DEMOCRATIC & REPUBLICAN RUNOFF ELECTIONS:

### DEMOCRATIC          REPUBLICAN

SAMPLE BALLOT - PCT 1          SAMPLE BALLOT - PCT 1

SAMPLE BALLOT - PCT 2          SAMPLE BALLOT - PCT 2

SAMPLE BALLOT - PCT 3          SAMPLE BALLOT - PCT 3

SAMPLE BALLOT - PCT 4          SAMPLE BALLOT - PCT 4

## SOS REGARDING ID NAME MATCH

## Notice of Early Voting Location

The Early Voting location for future County Elections will still be within the County Annex; however, Early Voting will no longer be located in the vault area of the County Clerk's Office.

The Early Voting location will be in the County Annex Conference Room. The closest parking areas and entrances to the

## Election Information

Please click on desired information link below:
Absentee or By-Mail Voting
Voting Assistance
Voter Registration Cards



Conference Room are at 106 Elm
Street (old entrance to the post office) and 102
Vine St. (across from Hollywood
& Vine).

## MORE ARTICLES...

1. Absentee or By-Mail Voting
2. Voting Assistance

Start    Prev    1   **2**   Next   End                  Page 1 of 2

**YOU ARE HERE:**   HOME   ▶   ELECTIONS                ▲ TOP

**Applications by Month**

| Month | Count |
|-------|-------|
| **2013** | |
| Jul | 6 |
| Aug | 2 |
| Sep | 8 |
| Oct | 122 |
| Nov | 29 |
| **2014** | |
| Jan | 2 |
| Feb | 72 |
| Mar | 24 |
| Apr | 5 |
| May | 15 |
| **Grand Total** | **285** |

**Applications by Week**

| Week # | Count |
|--------|-------|
| **2013** | |
| 27 | 1 |
| 28 | 1 |
| 29 | 2 |
| 30 | 2 |
| 32 | 1 |
| 34 | 1 |
| 37 | 2 |
| 38 | 2 |
| 39 | 4 |
| 40 | 12 |
| 41 | 24 |
| 42 | 22 |
| 43 | 43 |
| 44 | 30 |
| 45 | 16 |
| 46 | 1 |
| 47 | 3 |
| **2014** | |
| 3 | 1 |
| 5 | 1 |
| 6 | 3 |
| 7 | 11 |
| 8 | 26 |
| 9 | 36 |
| 10 | 18 |
| 11 | 1 |
| 12 | 1 |
| 15 | 2 |
| 16 | 1 |
| 17 | 1 |
| 18 | 2 |
| 19 | 11 |
| 20 | 2 |
| 21 | 1 |
| **Grand Total** | **285** |

**Applications by Day of Week**

| Day of Week | Count |
|-------------|-------|
| **2013** | |
| Monday | 26 |
| Tuesday | 39 |
| Wednesday | 22 |
| Thursday | 30 |
| Friday | 29 |
| Saturday | 21 |
| **2014** | |
| Monday | 20 |
| Tuesday | 18 |
| Wednesday | 20 |
| Thursday | 33 |
| Friday | 14 |
| Saturday | 13 |
| **Grand Total** | **285** |

**Applications by Station Type & Status**

| | Count of EIC Number |
|---|---|
| **2013** | |
| **Invalid** | **13** |
| DL Office | 11 |
| Mobile | 2 |
| **Valid** | **154** |
| DL Office | 96 |
| Mobile | 58 |
| **2014** | |
| **Invalid** | **6** |
| DL Office | 6 |
| **Valid** | **112** |
| DL Office | 75 |
| Mobile | 24 |
| County Office | 12 |
| (blank) | 1 |
| **Grand Total** | **285** |

```
 1                UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF TEXAS
 2                   SAN ANTONIO DIVISION

 3    SHANNON PEREZ, ET AL,     )
                  Plaintiffs,   )
 4                              ) No. SA:11-CV-360
             vs.                )
 5                              ) San Antonio, Texas
      RICK PERRY, ET AL,        ) July 29, 2014
 6            Defendants.       )
      ------------------------

 7


 8       TRANSCRIPT OF PRETRIAL CONFERENCE AND CLOSING ARGUMENTS

 9         BEFORE THE HONORABLE ORLANDO L. GARCIA,
             THE HONORABLE XAVIER RODRIGUEZ,
10            UNITED STATES DISTRICT JUDGES,
            AND THE HONORABLE JERRY E. SMITH,
11              UNITED STATES CIRCUIT JUDGE

12    A P P E A R A N C E S :

13    FOR THE MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF
      REPRESENTATIVES:
14    Mr. Jose Garza
      1111 North Main Street
15    San Antonio, Texas 78212

16    FOR SHANNON PEREZ, ET AL:
      Richards Rodriguez & Skeith
17    Mr. David R. Richards
      816 Congress Avenue, Suite 1200
18    Austin, Texas 78701

19    Gray & Becker, P.C.
      Mr.  Richard Edwin Gray, III
20    900 West Avenue, Suite 300
      Austin, Texas 78701

21

22    FOR THE TEXAS LATINO REDISTRICTING TASK FORCE:
      Mexican American Legal Defense & Educational Fund
23    Mr. Ernest Herrera
      Ms. Denise Hulett
24    110 Broadway Street, Suite 300
      San Antonio, Texas 78205

25
```

Leticia Ornelas Rangel, CSR

```
1   FOR TEXAS STATE CONFERENCE OF NAACP BRANCHES, ET AL:
    Law Office of Robert Notzon
2   Mr. Robert Stephen Notzon
    1507 Nueces Street
3   Austin, Texas 78701

4   Southern Coalition for Social Justice
    Ms. Allison Jean Riggs
5   1415 West Highway 54, Suite 101
    Durham, North Carolina 27707
6
    FOR HOWARD JEFFERSON, EDDIE BERNICE JOHNSON, SHEILA
7   JACKSON-LEE AND ALEXANDER GREEN:
    Law Office of Gary L. Bledsoe & Associates
8   Mr. Gary L. Bledsoe
    316 West 12th Street, Suite 307
9   Austin, Texas 78701

10

11  FOR EDDIE RODRIGUEZ, CITY OF AUSTIN, ET AL:
    Law Office of Max Renea Hicks
12  Mr. Max Renea Hicks
    101 West Sixth Street, Suite 504
13  Austin, Texas 78701

14  FOR MARGARITA V. QUESADA, ET AL:
    J. Gerald Hebert, P.C.
15  Mr. J. Gerald Hebert
    191 Somervelle Street, Suite 405
16  Alexandria, Virginia 22304

17

18  FOR TEXAS DEMOCRATIC PARTY:
    Brazil & Dunn
19  Mr. Chad W. Dunn
    4201 FM 1960 West, Suite 530
20  Houston, Texas 77068

21

22

23

24

25
```

Leticia Ornelas Rangel, CSR

```
 1   FOR THE U.S. DEPARTMENT OF JUSTICE:
     Civil Rights Division
 2   Mr. Tim Mellett
     Mr. Bryan L. Sells
 3   Ms. Michelle A. McLeod
     Ms. Jaye Sitton
 4   Mr. Daniel Joshua Freeman
     950 Pennsylvania Ave., NW
 5   Room 7254-NWB
     Washington, DC 20530
 6


 7
     FOR THE DEFENDANTS, STATE OF TEXAS, ET AL:
 8   Attorney General's Office
     Mr. Patrick K. Sweeten
 9   Mr. Matthew H. Frederick
     Ms. Angela Colmenero
10   Ms. Jennifer Jackson
     Mr. Adam W. Aston
11   Mr. William T. Deane
     Ms. Summer Lee
12   Mr. Adam Bitter
     Michael B. Neill
13   P.O. Box 12548
     Austin, Texas 78711-2548
14

15   OFFICIAL COURT REPORTERS:
     Karl H. Myers
16   Leticia Rangel
     655 East Cesar Chavez Blvd.
17   San Antonio, Texas 78206
     Telephone:  (210) 244-5037
18

19

20

21

22

23

24
     Proceedings reported by stenotype, transcript produced by
25   computer-aided transcription.
```

Leticia Ornelas Rangel, CSR

1          P-R-O-C-E-E-D-I-N-G-S

2              JUDGE GARCIA:  Thank you.  You may be seated.  I

3    will assume everybody is here.  And I believe we left off

4    with the Department of Justice's cross examining Mr. Downton.

5    Is that right?  Is Mr. Downton here?

6              MR. SELLS:  No, Your Honor.  Mr. Downton,

7    Mr. Downton was finished.  We did not have additional

8    questions.  We will have additional questions for

9    Mr. Interiano, but he is coming on August 11th.

10             JUDGE GARCIA:  Okay.  Then at this--.

11             JUDGE SMITH:  So there's no more testimony today?

12             MR. SELLS:  Not today, Your Honor.

13             JUDGE SMITH:  It's all right.

14             JUDGE GARCIA:  And your through with Mr. Downton?

15             MR. SELLS:  Yes, Your Honor, we are.

16             JUDGE GARCIA:  And are you through with Mr.

17   Downton?

18             MR. SWEETEN:  We are.  Yes, Your Honor.

19             JUDGE GARCIA:  Okay.  All right.  That's good.

20             Yes, Mr. Garza.

21             MR. GARZA:  So I think the business for today, Your

22   Honor, is to do closing arguments and then to go into the

23   pretrial hearing on the congressional.

24             THE COURT:  Right.  Okay.  Let's begin then with

25   hearing arguments.  Who amongst the plaintiffs is going to

Leticia Ornelas Rangel, CSR

1    legal review at critical points in the process.

2           The plaintiffs' theory in this case is summed up by

3    Dr. Arrington.  The plaintiffs view all the evidence through

4    this lens.  They haven't proven that any part of the map

5    resulted from actual intentional racial discrimination, so

6    instead, they have tried to convince the Court that favoring

7    Republicans amounts to intentional racial discrimination, but

8    the Supreme Court has expressly rejected this proposition.

9           To prove -- and finally, to prove discriminatory --

10   a constitutional violation, the plaintiffs have to prove that

11   the '11 legislature set out to harm black and Hispanic voters

12   because they were black and Hispanic, not merely that the

13   legislature set out to protect Republicans and that it knew

14   minority voters preferred Democrats.  It is the plaintiffs'

15   burden to prove this, and they have failed to meet that

16   burden.

17          Thank you, Your Honor.

18          JUDGE RODRIGUEZ:  Just a couple of questions.

19          MR. SWEETEN:  Yes.

20          JUDGE RODRIGUEZ:  In what area of the state does the

21   State contest or not contest the existence of racially

22   polarized voting?

23          MR. SWEETEN:  I am going have to look to my notes

24   for that, Your Honor.  I believe in the deposition of -- I am

25   sorry -- in the testimony of Dr. Brischetto, we did have

415

```
 1    some -- actually, can I --
 2              JUDGE RODRIGUEZ:  You can get back to me on that.
 3              MR. SWEETEN:  I'm afraid I just don't have that at
 4    the tip of my tongue.
 5              JUDGE RODRIGUEZ:  And the second part of the
 6    question that you can answer later for me:  I thought in LULAC
 7    vs. Perry that the Supreme Court found racially polarized
 8    voting in west and south Texas and throughout the state.  So
 9    my question is, what has changed since then, if you are
10    arguing otherwise?
11              MR. SWEETEN:  Okay.  And I think, you know, I don't
12    think that we -- that there may be a couple of areas where we
13    don't think there is strong polarization.  I think, generally,
14    that we have agreed that there is --
15              JUDGE RODRIGUEZ:  And by letter or the next time we
16    meet, you can answer my questions.
17              MR. SWEETEN:  Okay.
18              JUDGE RODRIGUEZ:  And one other question.  You
19    didn't talk about HD 35 at all.  And to me, that sort of falls
20    under the same category as 117.  I mean, the Office of the
21    Attorney General did these exogenous tests, and you reduced
22    the percentages quite dramatically in those tests that you
23    ran.
24              MR. SWEETEN:  Well, if memory serves, I think where
25    it ended up was at 52-percent SSVR, and it had been -- I think
```

First Regular Session 114th General Assembly (2005)

PRINTING CODE. Amendments: Whenever an existing statute (or a section of the Indiana Constitution) is being amended, the text of the existing provision will appear in this style type, additions will appear in **this style type**, and deletions will appear in ~~this style type.~~
Additions: Whenever a new statutory provision is being enacted (or a new constitutional provision adopted), the text of the new provision will appear in **this style type**. Also, the word **NEW** will appear in that style type in the introductory clause of each SECTION that adds a new provision to the Indiana Code or the Indiana Constitution.
Conflict reconciliation: Text in a statute in *this style type* or ~~*this style type*~~ reconciles conflicts between statutes enacted by the 2004 Regular Session of the General Assembly.

## SENATE ENROLLED ACT No. 483

———

AN ACT to amend the Indiana Code concerning elections.

*Be it enacted by the General Assembly of the State of Indiana:*

SOURCE: IC 3-5-2-40.5; (05)SE0483.1.1. -->     SECTION 1. IC 3-5-2-40.5 IS ADDED TO THE INDIANA CODE AS A **NEW** SECTION TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: **Sec. 40.5. "Proof of identification" refers to a document that satisfies all the following:**
     **(1) The document shows the name of the individual to whom the document was issued, and the name conforms to the name in the individual's voter registration record.**
     **(2) The document shows a photograph of the individual to whom the document was issued.**
     **(3) The document includes an expiration date, and the document:**
       **(A) is not expired; or**
       **(B) expired after the date of the most recent general election.**
     **(4) The document was issued by the United States or the state of Indiana.**
SOURCE: IC 3-10-1-7.2; (05)SE0483.1.2. -->     SECTION 2. IC 3-10-1-7.2 IS ADDED TO THE INDIANA CODE AS A **NEW** SECTION TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: **Sec. 7.2. (a) Except as provided in subsection (e), a voter who desires to vote an official ballot at a primary election shall provide proof of identification.**

     **(b) Except as provided in subsection (e), before the voter proceeds to vote in a primary election, a member of the precinct election board shall ask the voter to provide proof of identification. The voter must produce the proof of identification before being permitted to sign the poll list.**
     **(c) If:**

**(1) the voter is unable or declines to present the proof of identification; or**

**(2) a member of the precinct election board determines that the proof of identification presented by the voter does not qualify as proof of identification under IC 3-5-2-40.5;**
**a member of the precinct election board shall challenge the voter as prescribed by IC 3-11-8.**

**(d) If the voter executes a challenged voter's affidavit under section 9 of this chapter or IC 3-11-8-22, the voter may:**

**(1) sign the poll list; and**

**(2) receive a provisional ballot.**

**(e) A voter who votes in person at a precinct polling place that is located at a state licensed care facility where the voter resides is not required to provide proof of identification before voting in a primary election.**

SOURCE: IC 3-11-8-25; (05)SE0483.1.3. -->      SECTION 3. IC 3-11-8-25 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 25. (a) **Except as provided in subsection (e), a voter who desires to vote an official ballot at an election shall provide proof of identification.**

**(b) Except as provided in subsection (e), before the voter proceeds to vote in the election, a member of the precinct election board shall ask the voter to provide proof of identification. The voter shall produce the proof of identification before being permitted to sign the poll list.**

**(c) If:**

**(1) the voter is unable or declines to present the proof of identification; or**

**(2) a member of the precinct election board determines that the proof of identification provided by the voter does not qualify as proof of identification under IC 3-5-2-40.5;**
**a member of the precinct election board shall challenge the voter as prescribed by this chapter.**

**(d) If the voter executes a challenged voter's affidavit under section 22 of this chapter, the voter may:**

**(1) sign the poll list; and**

**(2) receive a provisional ballot.**

---

**(e) A voter who votes in person at a precinct polling place that is located at a state licensed care facility where the voter resides is not required to provide proof of identification before voting in an election.**

**(f)** After a voter has passed the challengers or has been sworn in, the voter shall be ~~admitted to the polls.~~ ~~Upon entering the polls, the~~ **instructed by a member of the precinct election board to proceed to the location where the poll clerks are stationed. The** voter shall announce the voter's name to the poll clerks or assistant poll clerks. A poll clerk, an assistant poll clerk, or a member of the precinct election board shall require the voter to write the following on the poll list:

(1) The voter's name.

(2) The voter's current residence address.

~~(b)~~ **(g)** The poll clerk, an assistant poll clerk, or a member of the precinct election board shall:

(1) ask the voter to provide the voter's voter identification number;

(2) tell the voter the number the voter may use as a voter identification number; and

(3) explain to the voter that the voter is not required to provide a voter identification number at the polls.

~~(c)~~ **(h)** ~~This subsection applies after December 31, 2003.~~ The poll clerk or assistant poll clerk shall examine the list provided under IC 3-7-29-1 or IC 3-11-3-18 to determine if the county election board has indicated that the voter is required to provide additional personal identification under 42 U.S.C. 15483 and IC 3-7-33-4.5 before voting in person. If the list (or a certification concerning absentee voters under IC 3-11-10-12) indicates that the voter is required to present this identification before voting in person, the poll clerk shall advise the voter that the voter must present, **in addition to the proof of identification required under subsection (b),** a piece of identification described in subsection ~~(d)~~ **(i)** to the poll clerk.

(d) (i) This subsection applies after December 31, 2003. As required by 42 U.S.C. 15483, **in addition to the proof of identification required under subsection (b),** a voter described by IC 3-7-33-4.5 who has not complied with IC 3-7-33-4.5 before appearing at the polls on election day must present one (1) of the following documents to the poll clerk:

 (1) a current and valid photo identification; or

 (2) a current utility bill, bank statement, government check, paycheck, or government document that shows the name and address of the voter.

---

(e) (j) This subsection applies after December 31, 2003. If a voter presents a document under subsection (d), **(i),** the poll clerk shall add a notation to the list indicating the type of document presented by the voter. The election division shall prescribe a standardized coding system to classify documents presented under this subsection for entry into the county voter registration system.

(f) (k) This subsection applies after December 31, 2003. If a voter required to present documentation under subsection (d) **(i)** is unable to present the documentation to the poll clerk while present in the polls, the poll clerk shall notify the precinct election board. The board shall provide a provisional ballot to the voter under IC 3-11.7-2.

(g) (l) This subsection applies after December 31, 2003. The precinct election board shall advise the voter that the voter may file a copy of the documentation with the county voter registration office to permit the provisional ballot to be counted under IC 3-11.7.

(h) **(m)** This subsection does not apply to a precinct in a county with a computerized registration system whose inspector was:

 (1) furnished with a list certified under IC 3-7-29; and

 (2) not furnished with a certified photocopy of the signature on the affidavit of registration of each voter of the precinct for the comparison of signatures under this section.

In case of doubt concerning a voter's identity, the precinct election board shall compare the voter's signature with the signature on the affidavit of registration or any certified copy of the signature provided under IC 3-7-29. If the board determines that the voter's signature is authentic, the voter may then vote. If either poll clerk doubts the voter's identity following comparison of the signatures, the poll clerk shall challenge the voter in the manner prescribed by section 21 of this chapter.

(i) **(n)** If, in a precinct governed by subsection (h): **(m):**

 (1) the poll clerk does not execute a challenger's affidavit; or

 (2) the voter executes a challenged voter's affidavit under section 22 of this chapter or had executed the affidavit before signing the poll list;

the voter may then vote.

(j) **(o)** This section expires January 1, 2006.

SOURCE: IC 3-11-8-25.1; (05)SE0483.1.4. --> SECTION 4. IC 3-11-8-25.1 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 25.1. (a) This section applies after December 31, 2005.

 **(b) Except as provided in subsection (f), a voter who desires to vote an official ballot at an election shall provide proof of identification.**

---

 **(c) Except as provided in subsection (f), before the voter proceeds to vote in the election, a member of the precinct election board shall ask the voter to provide proof of identification. The voter shall produce the proof of identification before being permitted to sign the poll list.**

 **(d) If:**

 **(1) the voter is unable or declines to present the proof of identification; or**

 **(2) a member of the precinct election board determines that the proof of identification provided by the voter does not qualify as proof of identification under IC 3-5-2-40.5;**

**a member of the precinct election board shall challenge the voter as prescribed by this chapter.**

**(e) If the voter executes a challenged voter's affidavit under section 22 of this chapter, the voter may:**

    **(1) sign the poll list; and**

    **(2) receive a provisional ballot.**

**(f) A voter who votes in person at a precinct polling place that is located at a state licensed care facility where the voter resides is not required to provide proof of identification before voting in an election.**

~~(b)~~ **(g)** After a voter has passed the challengers or has been sworn in, the voter shall be ~~admitted to the polls. Upon entering the polls, the~~ **instructed by a member of the precinct election board to proceed to the location where the poll clerks are stationed. The** voter shall announce the voter's name to the poll clerks or assistant poll clerks. A poll clerk, an assistant poll clerk, or a member of the precinct election board shall require the voter to write the following on the poll list:

    (1) The voter's name.

    (2) Except as provided in subsection ~~(f),~~ **(l),** the voter's current residence address.

~~(c)~~ **(h)** The poll clerk, an assistant poll clerk, or a member of the precinct election board shall:

    (1) ask the voter to provide or update the voter's voter identification number;

    (2) tell the voter the number the voter may use as a voter identification number; and

    (3) explain to the voter that the voter is not required to provide or update a voter identification number at the polls.

**(i) The poll clerk, an assistant poll clerk, or a member of the precinct election board shall ask the voter to provide proof of identification.**

---

~~(d)~~ **(j)** In case of doubt concerning a voter's identity, the precinct election board shall compare the voter's signature with the signature on the affidavit of registration or any certified copy of the signature provided under IC 3-7-29. If the board determines that the voter's signature is authentic, the voter may then vote. If either poll clerk doubts the voter's identity following comparison of the signatures, the poll clerk shall challenge the voter in the manner prescribed by section 21 of this chapter.

~~(e)~~ **(k)** If, in a precinct governed by subsection ~~(c):~~ **(h):**

    (1) the poll clerk does not execute a challenger's affidavit; or

    (2) the voter executes a challenged voter's affidavit under section 22 of this chapter or executed the affidavit before signing the poll list;

the voter may then vote.

~~(f)~~ **(l)** Each line on a poll list sheet provided to take a voter's current address must include a box under the heading "Address Unchanged" so that a voter whose residence address shown on the poll list is the voter's current residence address may check the box instead of writing the voter's current residence address on the poll list.

SOURCE: IC 3-11-8-25.2; (05)SE0483.1.5. -->    SECTION 5. IC 3-11-8-25.2 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 25.2. (a) This section applies after December 31, 2005.

(b) The poll clerk or assistant poll clerk shall examine the list provided under IC 3-7-29-1 to determine if the county election board has indicated that the voter is required to provide additional personal identification under 42 U.S.C. 15483 and IC 3-7-33-4.5 before voting in person. If the list (or a certification concerning absentee voters under IC 3-11-10-12) indicates that the voter is required to present this identification before voting in person, the poll clerk shall advise the voter that the voter must present, **in addition to the proof of identification required by section 25.1(b) of this chapter,** a piece of identification described in subsection (c) to the poll clerk.

(c) As required by 42 U.S.C. 15483, **and in addition to the proof of identification required by section 25.1(b) of this chapter,** a voter described by IC 3-7-33-4.5 who has not complied with IC 3-7-33-4.5 before appearing at the polls on election day must present one (1) of the following documents to the poll clerk:

    (1) A current and valid photo identification.

(2) A current utility bill, bank statement, government check, paycheck, or government document that shows the name and address of the voter.

(d) If a voter presents a document under subsection (c), the poll

clerk shall add a notation to the list indicating the type of document presented by the voter. The election division shall prescribe a standardized coding system to classify documents presented under this subsection for entry into the county voter registration system.

(e) If a voter required to present documentation under subsection (c) is unable to present the documentation to the poll clerk while present in the polls, the poll clerk shall notify the precinct election board. The board shall provide a provisional ballot to the voter under IC 3-11.7-2.

(f) The precinct election board shall advise the voter that the voter may file a copy of the documentation with the county voter registration office to permit the provisional ballot to be counted under IC 3-11.7.

SOURCE: IC 3-11-8-25.5; (05)SE0483.1.6. -->     SECTION 6. IC 3-11-8-25.5 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 25.5. If an individual signs the individual's name and either:

(1) signs the individual's address; or
(2) after December 31, 2005, checks the "Address Unchanged" box;

on the poll list under section 25 **or 25.1** of this chapter and then leaves the polls without casting a ballot or after casting a provisional ballot, the voter may not be permitted to reenter the polls to cast a ballot at the election.

SOURCE: IC 3-11-8-29; (05)SE0483.1.7. -->     SECTION 7. IC 3-11-8-29 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 29. **(a) This section does not apply to a list kept by a poll clerk under section 10.5 of this chapter.**

**(b)** A precinct election board may not keep a poll list other than the poll list required by section 25 **or 25.1** of this chapter.

SOURCE: IC 3-11-10-1.2; (05)SE0483.1.8. -->     SECTION 8. IC 3-11-10-1.2 IS ADDED TO THE INDIANA CODE AS A **NEW** SECTION TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: **Sec. 1.2. An absentee voter is not required to provide proof of identification when:**

**(1) mailing, delivering, or transmitting an absentee ballot under section 1 of this chapter; or**
**(2) voting before an absentee board under this chapter.**

SOURCE: IC 3-11-10-22; (05)SE0483.1.9. -->     SECTION 9. IC 3-11-10-22 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 22. **(a)** If an absentee ballot is challenged under section 21 of this chapter, the absentee voter's application for an absentee ballot shall be considered as the affidavit required to be made by a voter when challenged at the polls while voting in person. ~~In all other respects~~

**(b) Except as provided in subsection (c),** the challenge procedure **under this section** is the same as though the ballot was cast by the

voter in person.

**(c) An absentee voter is not required to provide proof of identification.**

**(d)** If a proper affidavit is made that would entitle the absentee voter to vote if the absentee voter had personally appeared, then the absentee ballot shall be placed in the ballot box.

SOURCE: IC 3-11.5-4-16; (05)SE0483.1.10. -->     SECTION 10. IC 3-11.5-4-16 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 16. (a) If an absentee ballot is challenged under section 15 of this chapter, the absentee voter's application for an absentee ballot shall be considered as the affidavit required to be made by a voter when challenged at the polls while voting in person. ~~In all~~ ~~other respects,~~

**(b) Except as provided in subsection (c),** the challenge procedure **under this section** is the same as

though the ballot was cast by the voter in person.

    **(c) An absentee voter is not required to provide proof of identification.**

    ~~(b)~~ **(d)** If a proper affidavit by a qualified person in the form required by IC 3-11-8-22 is made that would entitle the absentee voter to vote if the absentee voter had personally appeared, the couriers shall return the affidavit to the county election board in the same envelope as the certificate returned under section 9 of this chapter.

    ~~(c)~~ **(e)** The absentee ballot cast by the challenged voter shall be counted if the county election board makes the findings required under section 11 of this chapter.

SOURCE: IC 3-11.7-2-3; (05)SE0483.1.11. -->      SECTION 11. IC 3-11.7-2-3 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 3. (a) The precinct election board shall affix to the envelope the challenger's affidavit and the affidavit executed by the provisional voter under section 1 of this chapter.

    **(b) The form of the envelope is prescribed under IC 3-6-4.1-14. The envelope must permit a member of a precinct election board to indicate whether the voter has been issued a provisional ballot as the result of a challenge based on the voter's inability or declination to provide proof of identification.**

    ~~(b)~~ **(c)** Except as provided in subsection ~~(c)~~ **(d)** and in accordance with 42 U.S.C. 15482, the precinct election board shall securely keep the sealed envelope, along with the affidavits affixed to the envelope, in another envelope or container marked "Provisional Ballots".

    ~~(c)~~ **(d)** This subsection applies to the sealed envelope and the affidavits affixed to the envelope of a provisional voter described in section 1(a)(3) of this chapter. As required by 42 U.S.C. 15482, the

precinct election board shall keep the sealed envelope or container separate from the envelope or container described in subsection ~~(b).~~ **(c).** The envelope or container described in this subsection must be labeled "Provisional Ballots Issued After Regular Poll Closing Hours".

SOURCE: IC 3-11.7-5-2; (05)SE0483.1.12. -->      SECTION 12. IC 3-11.7-5-2 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 2. (a) Except as provided in section 5 of this chapter, if the county election board determines that all the following apply, a provisional ballot is valid and shall be counted under this chapter:

    (1) The affidavit executed by the provisional voter under IC 3-11.7-2-1 is properly executed.

    (2) The provisional voter is a qualified voter of the precinct **and has provided proof of identification, if required, under IC 3-10-1 or IC 3-11-8.**

    (3) Based on all the information available to the county election board, including:

        (A) information provided by the provisional voter;

        (B) information contained in the county's voter registration records; and

        (C) information contained in the statewide voter registration file;

    the provisional voter registered to vote at a registration agency under this article on a date within the registration period.

    (b) If the provisional voter has provided information regarding the registration agency where the provisional voter registered to vote, the board shall promptly make an inquiry to the agency regarding the alleged registration. The agency shall respond to the board not later than noon of the first Friday after the election, indicating whether the agency's records contain any information regarding the registration. If the agency does not respond to the board's inquiry, or if the agency responds that the agency has no record of the alleged registration, the board shall reject the provisional ballot. The board shall endorse the ballot with the word "Rejected" and document on the ballot the inquiry and response, if any, by the agency.

    (c) ~~This subsection applies after December 31, 2003.~~ Except as provided in section 5 of this chapter, a provisional ballot cast by a voter described in IC 3-11.7-2-1(b) is valid and shall be counted if the county election board determines under this article that the voter filed the documentation required under

IC 3-7-33-4.5 and 42 U.S.C. 15483 with the county voter registration office not later than the closing of the polls on election day.
SOURCE: IC 3-11.7-5-2.5; (05)SE0483.1.13. -->     SECTION 13. IC 3-11.7-5-2.5 IS ADDED TO THE INDIANA

CODE AS A **NEW** SECTION TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: **Sec. 2.5. (a) A voter who:**

      **(1) was challenged under IC 3-10-1 or IC 3-11-8 as a result of the voter's inability or declination to provide proof of identification; and**

      **(2) cast a provisional ballot;**

**may personally appear before the circuit court clerk or the county election board not later than the deadline specified by section 1 of this chapter for the county election board to determine whether to count a provisional ballot.**

   **(b) Except as provided in subsection (c) or (e), if the voter:**

     **(1) provides proof of identification to the circuit court clerk or county election board; and**

     **(2) executes an affidavit before the clerk or board, in the form prescribed by the commission, affirming under the penalties of perjury that the voter is the same individual who:**

        **(A) personally appeared before the precinct election board; and**

        **(B) cast the provisional ballot on election day;**

**the county election board shall find that the voter's provisional ballot is valid and direct that the provisional ballot be opened under section 4 of this chapter and processed in accordance with this chapter.**

   **(c) If the voter executes an affidavit before the circuit court clerk or county election board, in the form prescribed by the commission, affirming under the penalties of perjury that:**

     **(1) the voter is the same individual who:**

        **(A) personally appeared before the precinct election board; and**

        **(B) cast the provisional ballot on election day; and**

     **(2) the voter:**

        **(A) is:**

          **(i) indigent; and**

          **(ii) unable to obtain proof of identification without the payment of a fee; or**

        **(B) has a religious objection to being photographed;**

**the county election board shall determine whether the voter has been challenged for any reason other than the voter's inability or declination to present proof of identification to the precinct election board.**

   **(d) If the county election board determines that the voter described in subsection (c) has been challenged solely for the**

**inability or declination of the voter to provide proof of identification, the county election board shall:**

     **(1) find that the voter's provisional ballot is valid; and**

     **(2) direct that the provisional ballot be:**

        **(A) opened under section 4 of this chapter; and**

        **(B) processed in accordance with this chapter.**

   **(e) If the county election board determines that a voter described in subsection (b) or (c) has been challenged for a cause other than the voter's inability or declination to provide proof of identification, the board shall:**

     **(1) note on the envelope containing the provisional ballot that the voter has complied with the proof of identification requirement; and**

     **(2) proceed to determine the validity of the remaining challenges set forth in the challenge**

**affidavit before ruling on the validity of the voter's provisional ballot.**

   **(f) If a voter described by subsection (a) fails by the deadline for counting provisional ballots referenced in subsection (a) to:**

      **(1) appear before the county election board; and**

      **(2) execute an affidavit in the manner prescribed by subsection (b) or (c);**

**the county election board shall find that the voter's provisional ballot is invalid.**

SOURCE: IC 3-11.7-5-3; (05)SE0483.1.14. -->     SECTION 14. IC 3-11.7-5-3 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 3. (a) If the board determines that the affidavit executed by the provisional voter has not been properly executed, that the provisional voter is not a qualified voter of the precinct, **that the voter failed to provide proof of identification when required under IC 3-10-1 or IC 3-11-8,** or that the provisional voter did not register to vote at a registration agency under this article on a date within the registration period, the board shall make the following findings:

      (1) The provisional ballot is invalid.

      (2) The provisional ballot may not be counted.

      (3) The provisional ballot envelope containing the ballots cast by the provisional voter may not be opened.

   (b) If the county election board determines that a provisional ballot is invalid, a notation shall be made on the provisional ballot envelope: "Provisional ballot determined invalid".

SOURCE: IC 9-24-16-10; (05)SE0483.1.15. -->     SECTION 15. IC 9-24-16-10 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 10. **(a)** The bureau may adopt rules under IC 4-22-2 and prescribe all forms necessary to

implement this chapter. **However, the bureau may not impose a fee for the issuance of:**

   **(1) an original;**

   **(2) a renewal of an; or**

   **(3) a duplicate;**

**identification card to an individual described in subsection (b).**

   **(b) An identification card must be issued without the payment of a fee or charge to an individual who:**

   **(1) does not have a valid Indiana driver's license; and**

   **(2) will be at least eighteen (18) years of age at the next general, municipal, or special election.**

SOURCE: IC 9-29-3-14; (05)SE0483.1.16. -->     SECTION 16. IC 9-29-3-14 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 14. (a) **Except as provided in IC 9-24-16-10,** the service charge for an identification card issued under IC 9-24 is fifty cents ($0.50) and one-half (1/2) of each fee collected as set forth in IC 9-29-9-15.

   (b) Fifty cents ($0.50) of each service charge collected under subsection (a) shall be deposited in the state motor vehicle technology fund established by IC 9-29-16-1.

SOURCE: IC 9-29-9-15; (05)SE0483.1.17. -->     SECTION 17. IC 9-29-9-15 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2005]: Sec. 15. **Except as provided in IC 9-24-16-10,** the fees for the issuance, renewal, or duplication of identification cards under IC 9-24-16 are as follows:

      (1) For a person at least sixty-five (65) years of age or a person with a physical disability and not entitled to obtain a driving license, two dollars ($2).

      (2) For any other eligible person, four dollars ($4).

SOURCE: ; (05)SE0483.1.18. -->

SOURCE: -->     SECTION 18. [EFFECTIVE JULY 1, 2005] **(a) It is the intent of the general assembly that no fee or charge be imposed for the issuance of:**

**(1) an original;**

**(2) a renewal of an; or**

**(3) a duplicate;**

**identification card to an individual described in subsection (b).**

**(b) An identification card must be issued without the payment of a fee or charge to an individual who:**

**(1) does not have a valid Indiana driver's license; and**

**(2) will be at least eighteen (18) years of age at the next general, municipal, or special election.**

**(c) Before January 1, 2006, the bureau of motor vehicles shall amend 140 IAC 8-3-20 to remove all fees and charges imposed for the issuance of an identification card to an individual described in**

**subsection (b).**

**(d) This SECTION expires January 1, 2006.**

---

**SEA 483 _ Concur**

---

Figure

Graphic file number 0 named seal1001.pcx with height 58 p and width 72 p Left aligned

---

---

# HOUSE JOURNAL

EIGHTY-SECOND LEGISLATURE, REGULAR SESSION

## PROCEEDINGS

FORTIETH DAY — WEDNESDAY, MARCH 23, 2011

The house met at 10 a.m. and was called to order by the speaker.

The roll of the house was called and a quorum was announced present (Record 105).

Present — Mr. Speaker; Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Absent, Excused — Eiland.

Absent — Cook.

The invocation was offered by William Eudy, pastor, Southside Church of Christ, Mineral Wells.

The speaker recognized Representative Lyne who led the house in the pledges of allegiance to the United States and Texas flags.

### LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence temporarily for today because of family business:

Eiland on motion of Landtroop.

## REGULAR ORDER OF BUSINESS SUSPENDED

On motion of Representative Lyne and by unanimous consent, the reading and referral of bills was postponed until just prior to adjournment.

## CAPITOL PHYSICIAN

The speaker recognized Representative Christian who presented Dr. Keith Miller of Center as the "Doctor for the Day."

The house welcomed Dr. Miller and thanked him for his participation in the Physician of the Day Program sponsored by the Texas Academy of Family Physicians.

(Cook now present)

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 1).

## HCR 118 - ADOPTED
### (by V. Taylor, et al.)

Representative V. Taylor moved to suspend all necessary rules to take up and consider at this time **HCR 118**.

The motion prevailed.

The following resolution was laid before the house:

**HCR 118**, Honoring Congressman Sam Johnson on the 38th anniversary of his release as a North Vietnamese Prisoner of War.

**HCR 118** was read and was adopted.

On motion of Representatives Sheets and Madden, the names of all the members of the house were added to **HCR 118** as signers thereof.

## INTRODUCTION OF GUEST

The speaker recognized Representative V. Taylor who introduced the Honorable Sam Johnson.

(Cain in the chair)

## FIVE-DAY POSTING RULE SUSPENDED

Representative Hunter moved to suspend the five-day posting rule and all necessary rules to allow the Committee on Calendars to set a calendar at 10:20 a.m. today in 3W.15.

The motion prevailed.

## COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 10:20 a.m. today, in 3W.15, to set a calendar.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Calendars, 10:20 a.m. today, 3W.15, for a formal meeting, to set a calendar.

### HR 1012 - ADOPTED
### (by Eissler)

Representative Eissler moved to suspend all necessary rules to take up and consider at this time **HR 1012**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1012**, Recognizing March 20-26, 2011, as Early College High School Week.

**HR 1012** was adopted.

### RESOLUTIONS ADOPTED

Representative Dukes moved to suspend all necessary rules to take up and consider at this time **SCR 28** and **SCR 29**.

The motion prevailed.

The following resolutions were laid before the house:

**SCR 28** (Dukes - House Sponsor), Commending Joe E. Gonzales for his career in education and for his contributions to the success of Austin Can! Academy.

**SCR 29** (Dukes - House Sponsor), Recognizing Austin Can! Academy, a dropout recovery charter high school serving at-risk students of Travis County.

The resolutions were read and were adopted.

### HR 828 - ADOPTED
### (by Truitt)

Representative Truitt moved to suspend all necessary rules to take up and consider at this time **HR 828**.

The motion prevailed.

The following resolution was laid before the house:

**HR 828**, Recognizing March 21 through 25, 2011, as Texas Retired Teachers Week.

**HR 828** was read and was adopted.

On motion of Representative Patrick, the names of all the members of the house were added to **HR 828** as signers thereof.

## INTRODUCTION OF GUESTS

The chair recognized Representative Truitt who introduced members of the Texas Retired Teachers Association, speaking as follows:

Mr. Speaker, members, this resolution provides an opportunity for this body to show our appreciation for our retired public educators who have provided an invaluable service to the people of this great state. We have some very special guests joining us today, both in the gallery and on the dais. We have TRTA representatives on the dais: Tim Lee, the executive director; Bill Barnes, TRTA legislative coordinator; Carlos Ortiz, state legislative chairman for District 20; Ms. Francis Plemmons, secretary/treasurer; and last but not least, my constituent and good friend, Bill Skinner, TRTA member and a dear friend. And joining us in the gallery are several members of TRTA that have taken the time to come to Austin to be with us today. I especially want to welcome those of you who are here from my district, and I'd ask you all to please stand up and be recognized. Thank you very much for being here.

Members, TRTA has a membership base of approximately 70,000 retirees that continually work to improve their local communities throughout the state. In 2010, TRTA members selflessly gave approximately 5.8 million hours of volunteer service, equivalent to a value of more than $121 million. For this, and the many other things they do, we are all forever indebted to them, to you. TRTA members will be visiting our offices this afternoon, and I encourage you and your staff to take the time to visit with them. TRTA members, we owe you a great deal of gratitude. Thank you for what you have done for our children. Thank you for what you have done for us. We understand what you are going through. We are listening. We are getting your hundreds of letters. We are reading them. We are hearing what you say. And please know, together we are going to get through this. Mr. Speaker, members, thank you for your consideration.

## REMARKS ORDERED PRINTED

Representative Lozano moved to print remarks by Representative Truitt on **HR 828**.

The motion prevailed.

## HR 812 - PREVIOUSLY ADOPTED
### (by White)

The chair laid out the following previously adopted resolution:

**HR 812**, Recognizing the Texas Forestry Association on the occasion of its seedling giveaway and commending association members for their reforestation efforts and advocacy.

On motion of Representatives White and Christian, the names of all the members of the house were added to **HR 812** as signers thereof.

## HR 147 - PREVIOUSLY ADOPTED
### (by Giddings)

The chair laid out and had read the following previously adopted resolution:

**HR 147**, Honoring the life of Dan S. Petty of Dallas.

On motion of Representative Branch, the names of all the members of the house were added to **HR 147** as signers thereof.

## INTRODUCTION OF GUESTS

The chair recognized Representative Giddings who introduced family members of Dan S. Petty.

## HR 857 - ADOPTED
### (by S. King)

Representative S. King moved to suspend all necessary rules to take up and consider at this time **HR 857**.

The motion prevailed.

The following resolution was laid before the house:

**HR 857**, Recognizing March 23, 2011, as Parent Association for the Retarded of Texas Day at the State Capitol.

**HR 857** was read and was adopted.

## HR 240 - ADOPTED
### (by Patrick, et al.)

Representative Patrick moved to suspend all necessary rules to take up and consider at this time **HR 240**.

The motion prevailed.

The following resolution was laid before the house:

**HR 240**, In memory of former Arlington mayor, U.S. representative, and Tarrant County judge Tom J. Vandergriff.

**HR 240** was read and was unanimously adopted by a rising vote.

On motion of Representatives Anchia and Nash, the names of all the members of the house were added to **HR 240** as signers thereof.

## INTRODUCTION OF GUESTS

The chair recognized Representative Patrick who introduced family members of the Honorable Tom J. Vandergriff.

## HR 739 - PREVIOUSLY ADOPTED
### (by Burkett)

The chair laid out and had read the following previously adopted resolution:

**HR 739**, Recognizing March 23, 2011, as Sunnyvale Day at the State Capitol.

## HR 979 - ADOPTED
### (by Keffer)

Representative Keffer moved to suspend all necessary rules to take up and consider at this time **HR 979**.

The motion prevailed.

The following resolution was laid before the house:

**HR 979**, Commending the firefighters of Texas and paying tribute to the volunteer firefighters who have died in the line of duty.

**HR 979** was adopted.

On motion of Representative C. Anderson, the names of all the members of the house were added to **HR 979** as signers thereof.

### HR 320 - PREVIOUSLY ADOPTED
### (by L. Gonzales)

The chair laid out and had read the following previously adopted resolution:

**HR 320**, Recognizing March 23, 2011, as Hutto Day at the State Capitol.

### INTRODUCTION OF GUESTS

The chair recognized Representative L. Gonzales who introduced a delegation from Hutto.

### HCR 114 - ADOPTED
### (by Craddick)

Representative Craddick moved to suspend all necessary rules to take up and consider at this time **HCR 114**.

The motion prevailed.

The following resolution was laid before the house:

**HCR 114**, Designating April 2011 as Distracted Driving Awareness Month in Texas.

**HCR 114** was adopted.

On motion of Representative Phillips, the names of all the members of the house were added to **HCR 114** as signers thereof.

### HR 564 - PREVIOUSLY ADOPTED
### (by Kuempel)

The chair laid out and had read the following previously adopted resolution:

**HR 564**, Congratulating the football team of the Byron P. Steele II High School in Cibolo on winning the UIL 5A Division II state championship.

On motion of Representative Kuempel, the names of all the members of the house were added to **HR 564** as signers thereof.

### INTRODUCTION OF GUESTS

The chair recognized Representative Kuempel who introduced players and coaches of the Byron P. Steele II High School football team.

### HB 3822 - PERMISSION TO INTRODUCE

Representative Workman requested permission to introduce and have placed on first reading **HB 3822**.

Permission to introduce was granted by (Record 106): 145 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Callegari; Carter; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Cain(C).

Absent, Excused — Eiland.

Absent — Castro; Kolkhorst.

### STATEMENT OF VOTE

When Record No. 106 was taken, I was temporarily out of the house chamber. I would have voted yes.

Kolkhorst

### HB 3823 - PERMISSION TO INTRODUCE

Representative Thompson requested permission to introduce and have placed on first reading **HB 3823**.

Permission to introduce was granted by (Record 107): 146 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer;

Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Cain(C).

Absent, Excused — Eiland.

Absent — McClendon.

## STATEMENT OF VOTE

When Record No. 107 was taken, I was in the house but away from my desk. I would have voted yes.

McClendon

### HR 980 - ADOPTED
### (by Sheffield)

Representative Sheffield moved to suspend all necessary rules to take up and consider at this time **HR 980**.

The motion prevailed.

The following resolution was laid before the house:

**HR 980**, Recognizing March 23, 2011, as Salad Day and commending the owner/operators of Texas McDonald's restaurants.

**HR 980** was adopted.

On motion of Representative D. Howard, the names of all the members of the house were added to **HR 980** as signers thereof.

### FIVE-DAY POSTING RULE SUSPENDED

Representative Cook moved to suspend the five-day posting rule to allow the Committee on State Affairs to consider **HB 162** 30 minutes after adjournment today in JHR 140.

The motion prevailed.

(Eiland now present)

(Speaker in the chair)

### EMERGENCY CALENDAR
### SENATE BILLS
### SECOND READING

The following bills were laid before the house and read second time:

## CSSB 14 ON SECOND READING
### (Harless, L. Taylor, Peña, Truitt, T. Smith, et al. - House Sponsors)

**CSSB 14**, A bill to be entitled An Act relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

### CSSB 14 - POINT OF ORDER

Representative Walle raised a point of order against further consideration of **CSSB 14** under Rule 6, Section 16 of the House Rules on the grounds that the calendar is ineligible for consideration.

The speaker overruled the point of order, speaking as follows:

Mr. Walle raises a point of order pursuant to Rule 6, Section 16 that the initial printing of the calendar contained an error that prevents further consideration. The chair has reviewed the original and revised calendar and finds that the purpose of Rule 6, Section 16 has been complied with. The point of order is respectfully overruled.

### CSSB 14 - POINT OF ORDER

Representative Walle raised a point of order against further consideration of **CSSB 14** under Rule 6, Section 16 of the House Rules on the grounds that the calendar is ineligible for consideration.

The speaker overruled the point of order, speaking as follows:

Mr. Walle raises a point of order under Rule 6, Section 16 on the grounds that the corrected calendar is not properly in order for consideration and is not eligible for consideration at this time. A similar error occurred in **HB 1111** during the 79th Legislature. In that case, an error was discovered and a new calendar was printed and considered after a two-hour layout. The chair noted in that case that the error in the calendar was corrected and was laid out more than two hours. The chair finds no violation under Rule 6, Section 16. The point of order is respectfully overruled.

### PARLIAMENTARY INQUIRY

REPRESENTATIVE GALLEGO: Mr. Speaker, just a parliamentary inquiry so that I, if you don't mind, can understand the line of reasoning behind the—Mr. Walle's point of order was that Rule 6, Section 16 doesn't provide, as I read the rule. The rule indicates that "deviations from the calendar as posted shall not be permitted, except that the Committee on Calendars shall be authorized to prepare and post, not later than two hours before the house convenes, a supplemental daily calendar." So the two-hour notice under the rules applies to the supplemental daily calendar, is that not correct?

SPEAKER STRAUS: Mr. Gallego, under Rule 6, Section 16, deviations from the calendar are permitted, if they are permitted by the Committee on Calendars.

GALLEGO: Mr. Speaker, the sentence reads "deviations from the calendars as posted shall not be permitted, except in the case of the supplemental calendar."

SPEAKER:  Mr. Gallego, the phrase "except" means there are deviations that are permitted.

GALLEGO:  But, the exception is listed, is it not, Mr. Speaker?  The exception is the supplemental daily calendar, which can be printed two hours before the house convenes.

SPEAKER:  Mr. Gallego, there was a printing error in this calendar that was discovered and it's been corrected.

GALLEGO:  The issue, Mr. Speaker, as I understand Mr. Walle's point of order, is that under the rules, revised calendars don't exist; supplemental calendars exist. And this was not remedied through a supplemental calendar, it was remedied so that the posting should—if we're going to do the supplemental calendar, and the posting, and the two-hour notice, then this was not a supplemental calendar which we all receive on our desks.  As the routine course of the house's business, we receive supplemental calendars.  And in this instance, we didn't receive a supplemental calendar, we received a revised calendar, which would seem to indicate that—I guess the difficulty for me is that you can't have it—the argument that you can't have it both ways.  If it is a supplemental calendar, and there is a two-hour notice, and there is a deviation, that's fine, but if the argument is that it's a revised calendar and all this revised calendar does is take the place of the first one, then it seems that that timing should relate back.  The posting notice should relate back, as well.

SPEAKER:  Thank you, Mr. Gallego, for your inquiry.  This is not the first time that a printing error has occurred in our calendars.  On May 15 of 1997, for instance, an error in the printing was corrected under the title "Corrected Daily House Calendar."  On May 20 of 1999, a correction was made under the "Corrected Daily House Calendar."  And, similarly, on Tuesday, July 19, 2005, the correction was made under "Revised Daily House Calendar."

### REMARKS ORDERED PRINTED

Representative Walle moved to print remarks between Representative Gallego and the speaker.

The motion prevailed.

### CSSB 14 - POINT OF ORDER

Representative Farrar raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 11 and Rule 4, Section 12 of the House Rules on the grounds that proper notice of the committee meeting was not given and the committee meeting was not open to the public.

The speaker overruled the point of order, speaking as follows:

Representative Farrar raises a point of order under Rule 4, Section 11 and 12. Representative Farrar indicates that the meeting of the Calendars Committee began at 10:07 p.m., and that the Capitol was closed and access to the meeting room may have been denied.  While the Calendars Committee did not begin meeting until 10:07 p.m., the meeting was initially posted for 9 p.m.  As noted on

the State Preservation Board website, the hours of the Capitol are normally between 7 a.m. and 10 p.m. but are extended during legislative sessions, including during house committee meetings. It appears that the provisions of Rule 4, Section 11, were complied with. The point of order is respectfully overruled.

### CSSB 14 - POINT OF ORDER

Representative Martinez Fischer raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 32(c) and Rule 4, Section 32(f) of the House Rules on the grounds that the bill analysis is incorrect.

The speaker overruled the point of order, speaking as follows:

Representative Martinez Fischer raises a point of order under Rule 4, Section 32 in that the bill analysis fails to discuss changes on page 11, line 7 and page 11, line 27 of the bill. Specifically, Representative Martinez Fischer argues that the bill analysis fails to compare the bill to existing law and fails to list revision on page 11, line 27 as an express repeal. The chair has reviewed the bill and the bill analysis. The chair finds that the language of the bill analysis is not materially or substantially misleading and that the bill analysis, which is a summary, accurately reflects the substance of the bill. The point of order is respectfully overruled.

### PARLIAMENTARY INQUIRY

REPRESENTATIVE MARTINEZ FISCHER: Thank you, Mr. Speaker—parliamentary inquiry.

SPEAKER STRAUS: State your inquiry.

MARTINEZ FISCHER: In the last part of your ruling you made reference to the bill analysis being a summary, did I hear that right?

SPEAKER: That's correct.

MARTINEZ FISCHER: Could you repeat that last line, would you indulge me? I couldn't hear back here.

SPEAKER: The bill analysis, which is a summary, accurately reflects the substance of the bill.

MARTINEZ FISCHER: And, Mr. Speaker, parliamentary inquiry.

SPEAKER: State your inquiry.

MARTINEZ FISCHER: As I read Rule 4, Section 32(c), I don't see—I don't see in the rules where members are given the opportunity to summarize the bill in the bill analysis. Fact is, I read Rule 4, Section 32(c), it says that the bill analysis must include in summary or section-by-section form a detailed analysis, not a summary analysis, a detailed analysis, and so did the chair misunderstand me when I made that argument? Is the chair under the impression that I am arguing that there should be a lesser standard than a detailed analysis? Because I didn't argue there should be a summary analysis—in fact, the rules are contrary to any

members providing a summary analysis, it says it must be detailed, it can be in a summary or a section-by-section form, but the analysis must be detailed. Is the chair in agreement with that reading of the rule, as I see it?

SPEAKER: The chair has applied the precedence from prior sessions.

MARTINEZ FISCHER: And what precedence would that be, Mr. Chairman, Mr. Speaker?

SPEAKER: For instance, Mr. Martinez Fischer, there's a precedent from the 81st Session.

MARTINEZ FISCHER: The 81st Session, would the chair be inclined as to tell me what day of the journal that was?

SPEAKER: It was May 20th, 2009.

MARTINEZ FISCHER: May 20th, 2009. Okay, now in chair's ruling—

SPEAKER: It was on **SB 865**.

MARTINEZ FISCHER: **SB 865**? Thank you, Mr. Speaker. In the chair's ruling, in effect, the chair is saying that if we—if there is an express strike-through on a bill that changes the current state of the law, there is no requirement under Rule 4, Section 32(c) or Rule 4, Section 32(c)(3) that requires a member to notify the body and the general public that we are expressly changing a legal standard.

SPEAKER: Rule 4, Section 32, Subsection (c), Subsection (2) requires a list of provisions expressly, expressly repealed by the bill or resolution.

MARTINEZ FISCHER: So, the chair's interpretation, which I would deem to be narrow—is it the chair's interpretation that what triggers an express statement of a repeal of a law is the words in a bill or resolution that says, this article or this section is expressly repealed? Is that how the chair interprets Rule 4, Section 32(c)(2)?

SPEAKER: Just one moment, Mr. Martinez Fischer. Mr. Martinez Fischer, the point of order that you raised did not point us to a section of the law that contained an express repeal.

MARTINEZ FISCHER: Then the chair may have misunderstood my point of order. Shall I reassert it, Mr. Chairman? Because I crystal clearly remember arguing to the chair that when you take two sections of the bill and take us from a discretionary standard and change it to a mandatory standard, the strike-through of the discretionary is a repeal of a statute—in fact, guts the statute—and then I argued secondarily that when you go from a "shall" standard to a "must" standard, you again are expressly repealing a statute by a strike-through and, in fact, you are gutting the existing law. I offered that, and if the chair did not analyze the point of order under that analysis, then I would like to raise that point of order again.

SPEAKER: Mr. Martinez Fischer, the chair has already ruled on the point of order. You are welcome to lodge another point and I will request, the chair would request that the exchange be reduced to writing and entered into the journal.

MARTINEZ FISCHER: I'm sorry, what about the last part, Mr. Speaker?

SPEAKER: I would request that the exchange between you and the chair be reduced to writing and entered into the journal.

MARTINEZ FISCHER: Thank you, Mr. Speaker, I was going to do the same thing. And so—but I don't have to raise another point of order—but the chair has suggested that portion of that argument was not considered by the chair because the chair was unaware that that was, that that objection was being raised, and if the chair has properly considered that, I'd like the chair to tell me there would be no need to raise an additional point of order.

SPEAKER: Mr. Martinez Fischer, the chair appreciates your arguments and the chair respectfully has overruled your point of order.

MARTINEZ FISCHER: I understand that Mr. Speaker, but on what grounds?

SPEAKER: That Rule 4, Section 32(c) has been complied with.

MARTINEZ FISCHER: In all aspects?

SPEAKER: And that the bill analysis is not substantially or materially misleading.

MARTINEZ FISCHER: And with regard to Rule 4, Section 32(c)(2), a repeal of a statute that's not explained in a detailed bill analysis, that's part of your ruling, as well?

SPEAKER: Yes, sir, it is.

MARTINEZ FISCHER: Thank you, Mr. Speaker.

### REMARKS ORDERED PRINTED

The speaker moved to print remarks between Representative Martinez Fischer and the speaker.

The motion prevailed.

### CSSB 14 - POINT OF ORDER

Representative Coleman raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 32(c) of the House Rules on the grounds that the bill analysis is materially or substantially misleading.

The speaker overruled the point of order, speaking as follows:

Mr. Coleman raises a point of order under Rule 4, Section 32. Specifically, the provision relating to the use of passports found on page 1 of the bill analysis is not sufficiently detailed enough continuously through the bill analysis. The chair has reviewed the bill and the bill analysis and finds that the provision complained of, relating to passports, is contained in the bill analysis and is not materially or substantially misleading. Accordingly, the point of order is respectfully overruled.

### CSSB 14 - POINT OF ORDER

Representative Martinez Fischer raised a point of order against further consideration of **CSSB 14** under Article III, Section 49-k of the Texas Constitution on the grounds that the bill reduces, rescinds, or repeals the Texas Mobility Fund.

The speaker overruled the point of order, speaking as follows:

Mr. Martinez Fischer raises a point of order under Article III, Section 49-k of the Texas Constitution.  Specifically, Mr. Martinez Fischer argues that the bill reduces, rescinds, or repeals authority to collect funds under the Texas Mobility Fund.  The chair has reviewed the argument, the question raised by Mr. Martinez Fischer was a provision that was constitutional whether any infirmity must be addressed in this bill or any bill if the bill is effective unless changed. It's precisely the type of constitutional points of order traditionally not ruled on.  The chair will continue that tradition and the point of order is respectfully overruled.

### PARLIAMENTARY INQUIRY

REPRESENTATIVE MARTINEZ FISCHER:   The chair, in his ruling, failed to indicate whether they found this to be a substantive challenge or a procedural challenge to the constitution and I'd like to know which it is.

SPEAKER STRAUS:  Mr. Martinez Fischer, the chair found that this deals with a substantive constitutional issue.

MARTINEZ FISCHER:   Mr. Speaker, parliamentary inquiry.

SPEAKER:  State your inquiry.

MARTINEZ FISCHER:   Is the constitutional article that says bills must be read on three several days, is that procedural or substantive?

SPEAKER:  That is a point of order that has traditionally been ruled on by the chair.

MARTINEZ FISCHER:  As procedural or substantive?

SPEAKER:  As a discussion of legislative procedure.

MARTINEZ FISCHER:  And Mr. Speaker, further inquiry, is the constitutional provision saying that all bills must pass both houses of the legislature, is that procedural or substantive?

SPEAKER:  Again, Mr. Martinez Fischer, that is a point of order that has been ruled on, on legislative procedure.

MARTINEZ FISCHER:  Okay, and the constitutional provisions related to the two-subject rule, is that also procedural, or is it substantive?

SPEAKER:  Mr. Martinez Fischer, in ruling on Article III, Section 49-k of the constitution, we found that that did not fall within classes of legislative procedures traditionally ruled on by the chair.

MARTINEZ FISCHER:  With respect to the substantive ruling of this chair, there was not a substantive claim made in the point of order, in fact, the point of order was launched because the procedure by which a bill comes to the floor that repeals, rescinds, or reduces constitutionally dedicated monies—my argument is, procedurally, no bill can come to the floor that does that unless they comply with the constitution, which requires them to explain how they plan to reallocate the monies they deprive from the mobility fund.  And so, procedurally, that is what my point is.  I'm not arguing the substantive matter, as to whether or not the Article III, Section 49 even applies in this instance.  I am saying—I am saying that procedurally, just like procedurally we read bills on three separate days, just like procedurally we pass bills out of the house and senate, this is also a procedure by which we bring bills to the floor that are in order and not in order.  And my procedural argument is that the bill is not in order, because procedurally it deprives the mobility fund of its dedicated source of funding, and the only way, procedurally, that we can proceed is if we allocate monies to replenish what we take.  I'm not arguing as to the substantive merits of that, I'm arguing that is a necessary step for a bill to be in order.  So if the chair wants to rule that procedurally I am overruled, I will sit down.  But my point of order is specific to this procedural component of the constitutional article and not the substantive interpretation.

SPEAKER:  Mr. Martinez Fischer, we have reviewed and heard your arguments, we've looked for precedent, there is none.  And the point of order is respectfully overruled and I'd be happy to take this exchange between me and you and have it entered into the journal.

MARTINEZ FISCHER:    We can put it on the journal, we can put it on a billboard, but we're here today, and just because there isn't precedent, that's not a reason to overrule the point of order.  And I will say that the reason why you may not find a precedent is that the creation of the mobility fund is relatively new and I think that only in two instances in our Texas Constitution do we place the procedural hurdle of protecting dedicated funds.  One is for the mobility fund, and one is for the rail relocation fund.  We have an obligation, as lawmakers, to not submit the full faith and credit of the State of Texas to bond holders when we take money that they are relying on to pay for construction bonds.  And so I'm not arguing the substantive part of that, I am wanting the chair to make a ruling that, procedurally, you do not have to replenish money that you procedurally take out of the mobility fund, not the substantive interpretation of the fund itself.  And so if the chair wants to put in its ruling we've reviewed the procedural argument and we find, procedurally, there's nothing there, then I will sit down.

SPEAKER:  Mr. Martinez Fischer, the chair will revise its ruling to include the arguments you've made, thank you.

MARTINEZ FISCHER:  So that will be, in fact, the chair's ruling?  Will the chair please read that ruling to me?

SPEAKER:  Point of order is respectfully overruled.

MARTINEZ FISCHER:  On procedural grounds?

SPEAKER: The chair has listened respectfully to your arguments and respectfully overrules your point of order.

MARTINEZ FISCHER: If the chair is making its ruling on the substantive interpretation of Article III, Section 49, then the chair has not heard my argument. My argument is on the procedural hurdle that exists with respect to Article III, Section 49. And so, procedurally, once again, Mr. Speaker, if there is an overruling of the procedural point of order, I will stand by the chair's ruling. But I need to hear that to be the chair's ruling.

SPEAKER: Mr. Martinez Fischer, the chair overrules on all grounds that you've raised. Thank you.

### REMARKS ORDERED PRINTED

Representative Martinez Fischer moved to print remarks between the speaker and Representative Martinez Fischer.

The motion prevailed.

(Geren in the chair)

Pursuant to Rule 5, Section 28 of the House Rules, Representative Anchia requested a second extension of speaking time on **CSSB 14**.

There being objection, the request was not granted.

**Amendment No. 1**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking the enacting clause (page 1, line 4).

Amendment No. 1 was withdrawn.

**Amendment No. 2**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) Strike SECTIONS 1 and 2 of the bill (page 1, line 5, through page 2, line 2) and renumber the remaining SECTIONS of the bill accordingly.

(2) In SECTION 9 of the bill, strike amended Section 63.001(b), Election Code (page 5, lines 2 through 6), and substitute the following:

(b) On offering to vote, a voter must present to an election officer at the polling place:

(1) one form of photo identification described by Section 63.0101; or

(2) the voter's voter registration certificate, accompanied by the affidavit described by Subsection (h) [to an election officer at the polling place].

(3) In SECTION 9 of the bill, strike added Section 63.001(h), Election Code (page 6, lines 15 through 23), and substitute the following:

(h) If the requirement for identification prescribed by Subsection (b)(1) is not met, an election officer shall notify the voter that the voter may be accepted for voting if the voter executes an affidavit under penalty of perjury stating that the voter is the person named on the voter registration certificate.

(4)  Strike SECTION 17 of the bill (page 11, line 24, through page 12, line 20) and substitute the following:

SECTION 17.  Section 65.054(b), Election Code, is amended to read as follows:

(b)  A provisional ballot shall [may] be accepted [only] if the board determines that:

(1)  [,] from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election; and

(2)  the person meets the identification requirements of Section 63.001(b) at the time the ballot was cast or in the period prescribed under Section 65.0541.

(5)  In SECTION 18 of the bill, strike added Section 65.0541(a), Election Code (page 12, line 24, through page 13, line 4) and substitute the following:

(a)  A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election, present a form of identification described by Section 63.0101 to the voter registrar for examination.

Amendment No. 2 was withdrawn.

**Amendment No. 3**

Representatives Giddings and Bonnen offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  In the recital to SECTION 9 of the bill (page 5, line 1), strike "(g) and (h)" and substitute "(g), (h), and (i)".

(2)  In SECTION 9 of the bill, in amended Section 63.001(b), Election Code (page 5, line 2), strike "Subsection (h)" and substitute "Subsection (h) or (i)".

(3)  In SECTION 9 of the bill, following added Section 63.001(h), Election Code (page 6, between lines 23 and 24), add the following:

(i)  A voter who would otherwise be accepted for voting under this chapter but for the requirements of Subsection (b) shall be accepted for voting if, instead of presenting the identification required by Subsection (b), the voter executes an affidavit under penalty of perjury that asserts that the voter's proof of identification meeting the requirements of Subsection (b) has been stolen and the voter presents to an election officer a copy of an official police report, dated not earlier than the 45th day before the date on which the voter seeks to vote, alleging that the voter was a victim of an offense described by Section 32.51, Penal Code. The voter may redact personal information on the report relating to the voter, other than the voter's name, address, or date of birth. A report presented under this section is not required to contain the voter's date of birth.

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Turner offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1) SECTION 9, page 5, line 3, after "election officer" add the following language:

in a county with more than 4 million people, whom meets the requirements as set out in Chapter 85, Section 85.009 Elections Code for early voting; and Chapter 32, Section 32.002 for non-early voting or any other election governed by Chapter 32.

(2) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 32, Sec. 32.002 (2)(c), Elections Code, is amended to read as follows:

(c) The presiding judge and alternate presiding judge must be affiliated or aligned with different political parties, subject to this subsection. Before July of each year in a county to which Subsection (a)(1) applies or before August of each year in a county to which Subsection (a)(2) applies, the county chair of a political party whose candidate for governor received the highest or second highest number of votes in the county in the most recent gubernatorial general election shall submit in writing to the commissioners court a list of names of persons in order of preference for each precinct who are eligible for appointment as an election judge. The county chair may supplement the list of names of persons until the 20th day before a general election or the 15th day before a special election in case an appointed election judge becomes unable to serve. The commissioners court shall appoint the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the same party as the state representative in the district where the voting place is located, and the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the other political parties list ~~party with the second highest number of votes in the precinct~~ as the alternate presiding judge. The commissioners court may reject the list if the persons whose names are submitted on the list are determined not to meet the applicable eligibility requirements.

(3) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 85, Elections Code, is amended to read as follows:

Sec. 85.009. ELECTION OFFICERS FOR GENERAL ELECTION FOR STATE AND COUNTY OFFICERS. (a) The county clerk shall select election officers for the main early voting polling place and any branch polling place from a list provided under Subsection (b), in a manner that provides equal representation to the extent possible for each political party holding a primary election in the county.

(b) Before July of each year, the county chair of each political party holding a primary election in the county shall submit in writing to the county clerk a list of names of persons in order of preference for each early voting polling place

who are eligible for selection as an election officer.  The county chair may supplement the list of names of persons until the 30th day before early voting begins in case an appointed election officer becomes unable to serve.

(1) The county clerk shall appoint the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the party with the highest number of votes in the county as the presiding election officer of that polling place and the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the party with the second highest number of votes in the county as the alternate presiding election officer of that polling place.

(2) The county clerk shall appoint additional election officers for each polling place in the manner described by Subsection (a).  The county clerk may reject the list if the persons whose names are submitted on the list are determined not to meet the applicable eligibility requirements.  as follows: The county clerk shall appoint the first person meeting the applicable eligibility requirements from the list submitted by the same political party as the state representative in the district where the voting place is located and the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the other political parties list as the alternate presiding judge.

Amendment No. 4 was withdrawn.

**Amendment No. 5**

Representative Hochberg offered the following amendment to **CSSB 14**:

Amend **CSSB 14** on page 5, line 14, by inserting "under standards adopted by the secretary of state" between "list" and the comma.

Amendment No. 5 was adopted.

**Amendment No. 6**

Representative Y. Davis offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) is amended as follows:
(1) Strike lines 12 thru 14 on page 6 and replace the following:

(D) includes notice that if all procedures are followed, the voter's provisional ballot will be accepted.

(Speaker in the chair)

Amendment No. 6 was withdrawn.

**Amendment No. 7**

Representatives Bonnen, Zedler, Simpson, Creighton, S. Miller, Lyne, Otto, Chisum, Madden, T. Smith, W. Smith, D. Miller, Jackson, Berman, Lewis, Hartnett, Landtroop, Kleinschmidt, J. Davis, Zerwas, Flynn, Crownover, Isaac, Parker, Larson, Orr, Hopson, Truitt, Brown, Scott, Morrison, V. Taylor, P. King, Callegari, S. King, Sheets, Laubenberg, L. Gonzales, Margo, Schwertner, Price, Harper-Brown, Driver, Shelton, Aliseda, Smithee, Aycock, Hancock, and Garza offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 9 of the bill, in added Section 63.001(h), Election Code (page 6, lines 17-21), by striking the following:

~~.~~

~~(1)  was 70 years of age or older on January 1, 2012, as indicated by the date of birth on the voter's voter registration certificate; or~~

~~(2)~~

**Amendment No. 8**

Representative Eiland offered the following amendment to Amendment No. 7:

Amend Amendment No. 7 by Bonnen by striking the text of the amendment and substituting the following:

Amend **CSSB 14** (house committee printing) in SECTION 9 of the bill, by striking added Section 63.001(h)(1), Election Code (page 6, lines 18-20), and substituting the following:

(1)  is considered elderly under rules adopted for this purpose by the executive commissioner of the health and human services commission, consistent with the definition of elderly used in the Government Code and the Penal Code; or

Representative Bonnen moved to table Amendment No. 8.

The motion to table prevailed by (Record 108): 99 Yeas, 50 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Peña; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

## Amendment No. 9

Representative Alonzo offered the following amendment to Amendment No. 7:

Amend Amendment No. 7 by Bonnen by striking the text of the amendment and substituting the following:

Amend **CSSB 14** (house committee printing) in SECTION 9 of the bill, in added Section 63.001(h), Election Code (page 6, line 18), by striking "70" and substituting "65".

### AMENDMENT NO. 9 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE ALONZO: Mr. Veasey, one of the reasons Mr. Eiland and myself brought up this amendment is to pay particular attention to part of our state which are 65 and over, and you pointed out—and it might seem easy to some people while anybody can vote—is that part of your argument? That nobody should be set aside, especially on this law, is that right?

REPRESENTATIVE VEASEY: That is exactly right and I think the point that everybody is missing is that if you were born in 1941, which is what this bill covers. When you were born, you were born into a time when it was legal to discriminate against African Americans and Hispanics, particularly here in this state. And you were routinely denied the right to vote if you were born during that time period and if you lived during that time period and those are the people we are trying to protect by making these amendments better. I do not want my grandmother who is 98 years old, who was born during a time of rampant discrimination. I do not want the people that know her at the school house at Como Elementary School when she goes to vote in Fort Worth, the people that know her, that have known her, those folks are now in their sixties and pushing 70-years-old and my grandmother used to baby-sit them and watch after them, they know who she is. And my grandmother does not have a current driver's license and luckily she usually votes by mail. But if it were an emergency and I needed to take her up to the school to vote, I would not want them to deny her the right to cast a ballot, particularly the people who have known her and know that she is not committing voter fraud. I do not want them to have the right to say no she cannot vote. That is absolutely un-American and ridiculous and discriminatory.

ALONZO: And you know talking about that, isn't it true the reason we set up the Voting Rights Act in the United States was because what part of the United States needed to be reminded and have another hammer to make sure people are allowed to vote. What part of the United States?

VEASEY: The south and Texas.

ALONZO: Right and we can argue for ages and time that it doesn't happen, but isn't it true after we did redistricting in 2003 the supreme court said there was discrimination here in Texas?

VEASEY: Now say that again, I'm sorry.

ALONZO:  That there was discrimination here in Texas after the supreme court ruled on our redistricting in San Antonio.

VEASEY:  Absolutely, rampant.

ALONZO:  And the reason we want to do this amendment, the reason we are for this amendment, and we're going to vote no on the Bonnen amendment is because the elderly should be protected.  The elderly, as pointed out, there is more of a chance that they're not going to renew their driver's license, is that right?

VEASEY:  Absolutely, if you don't have to drive, if you're on a fixed income, why would you go and spend money to get your driver's license renewed?  It may not be a problem in some areas but it surely is a lot—it surely would be a problem in many rural and urban areas, where people just don't have the same access to resources and same access to cash as others do, particularly for those who are sick and shut-in and rely on social services.

Representative Bonnen moved to table Amendment No. 9.

The motion to table prevailed by (Record 109): 98 Yeas, 50 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Peña; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Crownover.

### STATEMENT OF VOTE

When Record No. 109 was taken, I was in the house but away from my desk. I would have voted yes.

Crownover

### AMENDMENT NO. 7 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE VEASEY: Members, I want to speak against the amendment, because obviously the prior two amendments that were sent up trying to protect old people, to preserve their right, for it to be easy for them to vote, and I think that's all we're asking, is just for a little flexibility on this. We're getting absolutely none at all and I think that's unfortunate because when the bill was laid out, I was under the impression that there wouldn't be different amendments added that would make the bill even more adverse than it already is, and I think we're setting up a bad precedent by voting for this.

REPRESENTATIVE BERMAN: Mr. Veasey, I'm one of those old people that you're talking about. I'm 75, and I've got lots of friends who are 75, and they want to go to the polls and vote just like everybody else, and there are provisions in the bill for the disabled, if you can't get to the polls, there are provisions to vote. I thought it was ridiculous, really, to set a limit of 70. You know, I don't need any protection, and all my friends don't need any protection. I think Mr. Bonnen has got a great amendment.

VEASEY: I think everybody's circumstances are different. I think that's what makes the legislative perspective unique. Some people may live in a rural area and it may take a long time to reach certain areas to go vote. Some people, you know, may have been born during a time where they don't have access to certain documents to obtain driver's licenses and things of that nature. You know, everybody has a different story, a different perspective, our state has not always been as urban as it is now, it has not always been as integrated as it is now.

BERMAN: Well, you're absolutely right, but Ms. Harless has many, many points in the bill that will take care of everyone and any age group. And we don't want to discriminate on age—you're discriminating against me. I want to go to the polls and vote, I don't need to be exempt.

VEASEY: Well, that's different, Leo—you may not have been affected the same way, like my grandmother, my constituents that are African American. The laws that were passed back then may have not had the same adverse impact on you as a white male as they did on other people, and that's what this is about today.

BERMAN: That's true, but there are provisions in the bill that take care of that though.

(Geren in the chair)

Amendment No. 7 was adopted by (Record 110): 97 Yeas, 50 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop;

Larson; Laubenberg; Lavender; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Legler; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Peña; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Geren(C).

Absent — Gallego.

## STATEMENT OF VOTE

When Record No. 110 was taken, I was in the house but away from my desk. I would have voted no.

Gallego

## REMARKS ORDERED PRINTED

Representative Veasey moved to print remarks between Representative Alonzo and Representative Veasey and between Representative Berman and Representative Veasey.

The motion prevailed.

### Amendment No. 10

Representative Y. Davis offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking lines 12 through 14 of page 6 and substituting the following:

(D)  includes notice that if all procedures are followed and the voter is found to be eligible to vote in the election, the voter's provisional ballot will be counted.

Amendment No. 10 was adopted.

### Amendment No. 11

Representative Veasey offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  In SECTION 9 of the bill, in added Section 63.001(h)(1), Election Code (page 6, line 20), strike "or".

(2)  In SECTION 9 of the bill, following added Section 63.001(h)(2), Election Code (page 6, line 23), between "15.001(c)" and the period, insert the following:

; or

(3)  executes an affidavit under penalty of perjury stating that the voter is the same person named on the list of registered voters for the precinct

Representative Harless moved to table Amendment No. 11.

The motion to table prevailed by (Record 111): 99 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Geren(C).

Absent — Turner.

**Amendment No. 12**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  In SECTION 9 of the bill, in added Section 63.001(h)(1), Election Code (page 6, line 20), strike "or".

(2)  In SECTION 9 of the bill, following added Section 63.001(h)(2), Election Code (page 6, line 23), between "15.001(c)" and the period, insert the following:

; or

(3)  the election judge affirms that the judge knows personally

Representative Hancock moved to table Amendment No. 12.

The motion to table prevailed by (Record 112): 100 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.;

Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Gonzales, L.; Gonzalez; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Geren(C).

### Amendment No. 13

Representative Eiland offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 9 of the bill, in added Section 63.001(h), Election Code (page 6, line 20), strike "or".

(2) In SECTION $\overline{9}$ of the bill, following added Section 63.001(h)(2), Election Code (page 6, line 23), between "15.001(c)" and the period, insert the following:

; or

(3) executes an affidavit under penalty of perjury that asserts the voter does not have identification meeting the requirements of Subsection (b) as a result of a natural disaster declared by the president of the United States or the governor

Amendment No. 13 was adopted.

### Amendment No. 14

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 9 of the bill, in added Section 63.001(h), Election Code (page 6, line 20), strike "or".

(2) In SECTION $\overline{9}$ of the bill, in added Section 63.001(h), Election Code (page 6, line 23), between "15.001(c)" and the underscored period, insert the following:

"; or

(3) presents a paycheck or copy of another official employment document that includes the information of the voter's employer and informs the election officer that:

(A) the voter's employer does not permit the voter to be absent from work for the purpose of obtaining photo identification; and

(B) offices of the Department of Public Safety are not open for at least two consecutive hours outside of the voter's working hours

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 2).

## CSSB 14 - (consideration continued)

Amendment No. 14 was withdrawn.

## Amendment No. 15

Representative Martinez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 11 of the bill, in added Section 63.0012(a), Election Code (page 7, lines 15 and 16), strike "Section 521.422, Transportation Code," and substitute "Section 63.010".

(2) Strike SECTION 20 of the bill, amending Section 521.422, Transportation Code (page 13, line 18, through page 14, line 10).

(3) Add the following appropriately numbered SECTION to the bill and renumber the remaining SECTIONS of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.010 to read as follows:

Sec. 63.010. FEES PROHIBITED FOR CERTAIN FORMS OF IDENTIFICATION DOCUMENTATION. Notwithstanding any other law, an agency, institution, or political subdivision of this state may not charge any fee for the issuance of any document that may be used:

(1) as proof of identification under this chapter; or

(2) to obtain a document that may be used as proof of identification under this chapter.

(Speaker in the chair)

Representative Harless moved to table Amendment No. 15.

The motion to table prevailed by (Record 113): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel;

Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

**Amendment No. 16**

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 9 of the bill, in added Section 63.001(h), Election Code (page 6, line 20), strike "or".

(2) In SECTION 9 of the bill, in added Section 63.001(h), Election Code (page 6, line 23), between "15.001(c)" and the underscored period, insert the following:

"; or

(3) presents a paycheck or copy of another official employment document that includes the information of the voter's employer and informs the election officer that:

(A) the voter's employer does not permit the voter to be absent from work for the purpose of obtaining photo identification; and

(B) offices of the Department of Public Safety are not open for at least two consecutive hours outside of the voter's working hours

**AMENDMENT NO. 16 - STATEMENT OF LEGISLATIVE INTENT**

REPRESENTATIVE V. TAYLOR:  Mr. Speaker and members, I rise in opposition to this amendment.  This deals with people who already have jobs, and in order to have a job in this country, an individual must fill out an I-9 form. An I-9 form requires identification, so I'm not really sure where this is coming from because these people already had ID to get a job in the first place.  I move to table this amendment.

REPRESENTATIVE RAYMOND:  Repeat that, Mr. Taylor, because I didn't quite hear you, I apologize.

V. TAYLOR:  Sure.  For an individual, for a U.S. citizen—and there are, only U.S. citizens should be registered to vote in this state—to have a job, they must fill out an I-9 form for their employer.  To fill out an I-9 form, they have to have some form of identification.

RAYMOND:  Okay, so is there a scenario that you can envision, Mr. Taylor, where somebody went to work for you, let's say, 10 years ago, right, and they had to fill out the proper forms and show you the proper ID, etcetera, right?  Ten years ago.  Can you imagine that there would be an instance in this state of 25 million people where registered and eligible voters might, for some reason, 10 years later, might not have the ID required by this bill.  Could you imagine that scenario?

V. TAYLOR:  Yes.

RAYMOND:  Okay, so, you can imagine what I'm trying to get to here which is, you're exactly right.  If they work for Van Taylor, and they show up at the polling place, and they have a voter registration card, and they have something from Van Taylor, Inc. saying, you know, I did not provide them time to go get a new ID as required by this bill.

V. TAYLOR:  There was a question there somewhere, I'm sure.

RAYMOND:  Yes, I just said, you can imagine, then, if somebody worked for you, you hired them legally 10 years ago, some point since then they lost the ID, if this bill passes, this bill becomes law, they lost their ID, but Van Taylor, Inc. didn't give them time during the day to go get the ID that they needed.  You could also imagine, in a state of 25 million people, that there could be instances like that.

V. TAYLOR:  Well, in the example you just gave, there are opportunities for someone to get, you know, to get their driver's license either online, as many of us have done, or by mail.

RAYMOND:  I'm not sure you can go get your, the—what you're asking for in this bill—that you could get it online.

V. TAYLOR:  The original form of identification, which is what you would have to have for the I-9 form, since we're only talking about employed people who are U.S. citizens, you can—you have to show up in person to get your first driver's license, to get photo ID, to take your picture somehow, of course.  Subsequently, after we've gotten your picture, you can renew up to a number of times online or by mail.

RAYMOND:  So if you've had your driver's license for six years—stop the clock, please.

V. TAYLOR:  There's extensive training for poll workers and election judges on how to handle it when somebody doesn't have identification.  We already have—we have a provisional ballot system, but the supposition that you're making, that people may show up to the polls without ID—which could happen, and this bill envisions that and gives the voter the opportunity to take care of that, but your original premise that people who are employed in this state don't have photo ID doesn't hold up when you look at the federal requirement for the I-9 form.

RAYMOND: Well, it does, as you acknowledged a minute ago, that if somebody went to work for you 10 years ago, and you hired them legally, that 10 years later they might not have the ID that they had 10 years ago, they might have lost it. Would you—you acknowledged that earlier, would you acknowledge that now?

V. TAYLOR: I do.

RAYMOND: Finally, let me ask this, Mr. Taylor, you know what those of us who are opposed to this legislation are trying to do, we're trying to protect voter rights. You recognize that, right?

V. TAYLOR: Absolutely, as are the proponents of this bill. We seek to protect voting rights by protecting the 15th Amendment by making sure every vote counts. That's what this bill is ultimately about and we seek to do in our support of voter ID.

RAYMOND: Let me ask you a question, do you believe the Voting Rights Act is a good law?

V. TAYLOR: I believe the Voting Rights Act is a great thing to protect Americans' right to vote. All Americans, regardless of—

RAYMOND: So you believe the Voting Rights Act is still necessary?

V. TAYLOR: Yes.

RAYMOND: Is that because you believe discrimination still exists?

V. TAYLOR: I think the Voting Rights Act—there are many aspects of it to protect our ability to vote, protect the 15th Amendment—

RAYMOND: Protecting discrimination in the voting place though, if you believe it's a good law, if you believe discrimination in the voting place still exists?

V. TAYLOR: I'm not sure where you're going with this, chairman.

RAYMOND: No, no, I'm not going anywhere, it's very simple, this is about protecting voting rights and I asked you if you believed the Voting Rights Act was a good law and you said yes, right?

V. TAYLOR: This bill that we're debating right here on the floor is about voter identification at the polling stations when people vote in the State of Texas.

RAYMOND: And any time you deal with a law that has to do with voting, you have to take into consideration the rights of people to vote. Any time you deal with a law as comprehensive and big as this—as comprehensive and big as this—you have to take into account people's voting rights. You would agree with that, right?

V. TAYLOR: I think that it is important to remember that this bill is about making sure that the right people show up on election day and vote—

RAYMOND: That the right people show up on election day? Who are the right people?

V. TAYLOR:  The people who are registered to vote and can demonstrate that they are who they say they are through voter—through having proper voter identification.

RAYMOND:    Again, and I'll let you go after this, but I just want to establish—you and I have served on committee together, it's been great getting to know you.  You acknowledge that we still need the Voting Rights Act because the Voting Rights Act prevents discrimination in the polling place, and if you still think we need it, presumably, you believe there's still problems.

V. TAYLOR:  Mr. Chairman, as you well know, this type of legislation, this voter identification has been approved under the Voter Rights Act in other states.  I mean, this has already been litigated by other states.  But the point of your amendment, coming back to what I think you wanted to talk about here today, which is the ability of people who have jobs who somehow might not have identification—those people, in this country, who have jobs, have to fill out an I-9 form, and that requires identification.

RAYMOND:  And along those lines, according to the workforce commission, it says, in order to get an I-9 you have to have a voter registration card and a social security account number to get an I-9, which means those are the two things you need to get a photo ID.

V. TAYLOR:    That is—those are two possible accommodations for List A, excuse me, List B or List C.

RAYMOND:  That's what you need, so to get an I-9 you need a voter registration card, a social security card, so would you agree, then, that if somebody has a voter registration card, a social security card, they ought to be able to vote, too?  If they're registered to vote, obviously.

V. TAYLOR:  Clearly.

RAYMOND:  You do?  Then I can offer that amendment.  You want to tell Ms. Harless back there—

V. TAYLOR:  No.  I still think—look, we—it is important that we have a voter registration—a voter identification requirement in this state to make sure that when people show up to vote, they are who they say they are.  And—

RAYMOND:  Do you think that this will—do you think it is sufficient, as it is under law, that in order to get an I-9 card, which you hang this whole thing on, that all you need is a voter registration card and a social security number?  Do you think that's sufficient to get an I-9 card?  That's what the law is, do you agree with the law or do you disagree with it?

V. TAYLOR:  Mr. Chairman, this is a narrowly defined bill that is designed to make sure that the people who show up to vote are, in fact, who they say they are.  The fact is, it is too simple to steal a voter identification card and use that for in-person ballot fraud, I have witnessed it with my own eyes—we talked about this on Monday—in Representative Anchia's district, and I watched somebody walk in and say somebody took my voter registration card, I'm here to vote, and they had been denied the right to vote.

### REMARKS ORDERED PRINTED

Representative Raymond moved to print remarks between Representative V. Taylor and Representative Raymond.

The motion prevailed.

Representative V. Taylor moved to table Amendment No. 16.

The motion to table prevailed by (Record 114): 101 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### Amendment No. 17

Representative Dukes offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 9, line 21), strike "photo".

(2)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(3)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 17), following "presentation", insert:

; or

      (6)  a temporary driving permit issued to the person by the Department of Public Safety

(L. Taylor in the chair)

Representative Harless moved to table Amendment No. 17.

The motion to table prevailed by (Record 115): 99 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

**Amendment No. 18**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 14 of the bill, in amended Section 63.0101(1), Election Code (page 9, line 22), strike "personal identification card" and substitute "personal identification voter certificate [card]".

(2) In SECTION 20 of the bill, in the recital (page 13, line 19), strike "Subsection (d)" and substitute "Subsections (d) and (e)".

(3) In SECTION 20 of the bill, following added Section 521.422(d), Transportation Code (page 14, between lines 10 and 11), insert the following:

(e) The department shall designate a personal identification certificate issued to a person under this section a personal identification voter certificate.

(4) Add the following appropriately numbered SECTION to the bill and renumber the remaining SECTIONS of the bill accordingly:

SECTION ____. Section 1.005, Election Code, is amended by adding Subdivision (25) to read as follows:

(25) "Personal identification card" means a personal identification voter certificate issued by the Department of Public Safety.

Representative Harless moved to table Amendment No. 18.

The motion to table prevailed by (Record 116): 96 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Beck; Harper-Brown; Hughes.

## STATEMENTS OF VOTE

When Record No. 116 was taken, my vote failed to register. I would have voted yes.

Beck

When Record No. 116 was taken, I was in the house but away from my desk. I would have voted yes.

Harper-Brown

### Amendment No. 19

Representative Allen offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 14 of the bill, by striking amended Section 63.0101(1), Election Code (page 9, lines 22-27), and substituting the following:

(1)  a driver's license or personal identification card issued to the person by the Department of Public Safety [or a similar document issued to the person by an agency of another state], regardless of whether the license or card has expired;

Amendment No. 19 failed of adoption by (Record 117): 56 Yeas, 89 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Beck; Bohac; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Harless; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Paxton; Pickett; Quintanilla; Raymond; Reynolds; Riddle; Rodriguez; Simpson; Strama; Turner; Veasey; Villarreal; Vo; Walle; White.

Nays — Aliseda; Anderson, C.; Anderson, R.; Aycock; Berman; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Hamilton; Hancock; Hardcastle; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Murphy; Nash; Orr; Otto; Parker; Patrick; Peña; Perry; Phillips; Pitts; Price; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Thompson; Torres; Truitt; Weber; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Gooden; King, P.; Morrison.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 117. I intended to vote no.

Bohac

When Record No. 117 was taken, my vote failed to register. I would have voted no.

Gooden

I was shown voting yes on Record No. 117. I intended to vote no.

Paxton

**Amendment No. 20**

Representative Alonzo offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 14 of the bill as follows:

(1) In amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2) In amended Section 63.0101, Election Code (page 10, line 17), following "presentation", insert:

; or

(6) an identification card that contains the person's photograph and is issued or approved by this state

Amendment No. 20 was adopted.

**Amendment No. 21**

Representative Veasey offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1) In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2) In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:
; or

(6) a valid employee identification card that contains the person's photograph and is issued by an employer of the person in the ordinary course of the employer's business

Representative Harless moved to table Amendment No. 21.

The motion to table prevailed by (Record 118): 101 Yeas, 47 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

### STATEMENT OF VOTE

I was shown voting yes on Record No. 118. I intended to vote no.

Gutierrez

**Amendment No. 22**

Representative Gonzalez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:

; or

(6)  a valid identification card that contains the person's photograph and is issued by a tribal organization

Amendment No. 22 was withdrawn.

**Amendment No. 23**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:

; or

(6)  a student identification card issued by a public or private high school or institution of higher education that contains the person's photograph

Representative Phillips moved to table Amendment No. 23.

The motion to table prevailed by (Record 119): 99 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

**Amendment No. 24**

Representative Martinez Fischer offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2) In amended Section 63.0101, Election Code (page 10, line 17), following "presentation", insert:

; or

(6) a valid identification card that contains the person's photograph and is issued by this state

Representative Phillips moved to table Amendment No. 24.

The motion to table prevailed by (Record 120): 97 Yeas, 50 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Simpson; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Morrison.

**Amendment No. 25**

Representative Hernandez Luna offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 14 of the bill as follows:

(1) In amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2) In amended Section 63.0101, Election Code (page 10, line 17), following "presentation" insert:

; or

(6) a valid identification card that contains the person's photograph and is issued by:

(A) an agency or institution of the federal government; or
(B) an agency, institution, or political subdivision of this state

Representative Phillips moved to table Amendment No. 25.

The motion to table prevailed by (Record 121): 99 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

**Amendment No. 26**

Representative V. Gonzales offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1) In the recital to SECTION 15 of the bill (page 10, line 26), strike "Subsection (b-1)" and subsitute "Subsections (b-1) and (f)".

(2) In SECTION 15 of the bill, add the following after added Section 63.011(b-1), Election Code (page 11, between lines 18 and 19):

(f) In addition to the affidavit required by this section, a person who casts a provisional ballot under this section and is described by Section 65.054(b)(2)(B) may execute an affidavit under that section at the polling place. Forms for affidavits under Section 65.054(b)(2)(B) must be available at each polling place.

(3)  In SECTION 18 of the bill, in added Section 65.0541(a)(2), Election Code (page 13, line 4), between "presence of" and "the voter registrar", insert "an election officer at the polling place or".

### AMENDMENT NO. 26 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE HARLESS:   I wanted to clarify what our conversation was—you talked about having these affidavits at the polling place that they have to sign if they are casting a provisional ballot.  You're not in any way trying to cut out the photo ID requirements, are you?

REPRESENTATIVE V. GONZALES:  Not with this particular amendment.  This amendment would simply say, your bill already includes the requirement that an affidavit be signed if they have to fill out a provisional ballot.  All this would say is, let's make it available to them at the polling places, so that they don't have to be traveling to another location to fill out an affidavit.

HARLESS:  Right, so they show up at a polling place, and they don't have one of the subscribed forms of identification, and they fill out a provisional ballot and have to sign an affidavit.  You're saying that when they're at that polling place, if they want to cast the provisional ballot that requires affidavits signed, that that polling place should have those affidavits there on the location site.

V. GONZALES:  That's correct.

### REMARKS ORDERED PRINTED

Representative Harless moved to print remarks between Representative V. Gonzales and Representative Harless.

The motion prevailed.

Amendment No. 26 was adopted.

### Amendment No. 27

Representative Miles offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 5 of the bill, in added Section 31.012(b), Election Code (page 3, line 21), by adding after the period: "The statewide effort shall include education targeted at low-income and minority voters."

Amendment No. 27 was adopted.

### Amendment No. 28

Representatives Harper-Brown, Legler, Zerwas, Creighton, Orr, D. Miller, Sheffield, Jackson, Scott, Price, L. Taylor, P. King, Landtroop, Burkett, Weber, Isaac, Laubenberg, Huberty, Riddle, V. Taylor, Cain, Nash, Darby, Parker, Carter, C. Anderson, Crownover, Chisum, Madden, Hancock, Beck, W. Smith, Fletcher, Lewis, Margo, Workman, Button, R. Anderson, L. Gonzales, Sheets, Larson, White, and Kuempel offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  Strike SECTION 17 of the bill (page 11, line 24, through page 12, line 20) and substitute the following:

SECTION 17.  Section 65.054(b), Election Code, is amended to read as follows:

(b)  A provisional ballot shall [~~may~~] be accepted [~~only~~] if the board determines that:

(1)  [,] from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election; and

(2)  the person meets the identification requirements of Section 63.001(b) at the time the ballot was cast or in the period prescribed under Section 65.0541.

(2)  In SECTION 18 of the bill, strike added Section 65.0541(a), Election Code (page 12, line 24, through page 13, line 4) and substitute the following:

(a)  A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election, present a form of identification described by Section 63.0101 to the voter registrar for examination.

Amendment No. 28 was adopted by (Record 122): 107 Yeas, 40 Nays, 2 Present, not voting.

Yeas — Aliseda; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gonzales, V.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Marquez; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, V.; Torres; Truitt; Vo; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Burnam; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Thompson; Turner; Veasey; Villarreal; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Giddings.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 122. I intended to vote no.

Anchia

I was shown voting yes on Record No. 122. I intended to vote no.

V. Gonzales

I was shown voting yes on Record No. 122. I intended to vote no.

Marquez

I was shown voting yes on Record No. 122. I intended to vote no.

Rodriguez

**Amendment No. 29**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  In SECTION 18 of the bill, in added Section 65.0541(a), Election Code (page 12, line 27), strike "sixth" and substitute "seventh business".

(2)  Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____.  Section 65.051(a), Election Code, is amended to read as follows:

(a)  The early voting ballot board shall verify and count provisional ballots as provided by this subchapter not later than the ninth [seventh] day after the date of an election.

SECTION ____.  Section 67.003, Election Code, is amended to read as follows:

Sec. 67.003.  TIME FOR LOCAL CANVASS. (a) Except as provided by Subsection (b), each local canvassing authority shall convene to conduct the local canvass at the time set by the canvassing authority's presiding officer not earlier than the 10th [eighth] day or later than the 11th day after election day.

(b)  For an election held on the uniform election date in May, the local canvass must occur not later than the 11th day after election day and not earlier than the later of:

(1)  the third day after election day;

(2)  the date on which the early voting ballot board has verified and counted all provisional ballots after giving voters of provisional ballots the opportunity to present identification as provided by Section 65.0541, if a provisional ballot has been cast in the election; or

(3)  the date on which all timely received ballots cast from addresses outside of the United States are counted, if a ballot to be voted by mail in the election was provided to a person outside of the United States.

Amendment No. 29 was withdrawn.

**Amendment No. 30**

Representative Gonzalez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:

; or

(6)  a valid identification card that contains the person's photograph and is issued by a tribal organization

Amendment No. 30 was adopted.

**Amendment No. 31**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 20 of the bill, in amended Section 521.422(a), Transportation Code, by striking Subdivision (1) of that subsection (page 13, line 23), and substituting:

(1)  $10 [$15] for a person under 60 years of age;

Representative Harless moved to table Amendment No. 31.

The motion to table prevailed by (Record 123): 99 Yeas, 47 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — McClendon; Reynolds.

## STATEMENTS OF VOTE

When Record No. 123 was taken, I was in the house but away from my desk. I would have voted no.

McClendon

When Record No. 123 was taken, I was in the house but away from my desk. I would have voted no.

Reynolds

### Amendment No. 32

Representative Dukes offered the following amendment to **CSSB 14**:

Amend **CSSB 14** on page 13, line 27, by striking "may" and substituting "shall".

Amendment No. 32 was adopted.

### Amendment No. 33

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking SECTION 20 of the bill (page 13, line 18, through page 14, line 10) and substituting the following:

SECTION 20.  Section 521.422, Transportation Code, is amended to read as follows:

Sec. 521.422.  PERSONAL IDENTIFICATION CERTIFICATE FEE. [(a)] The department may not collect a fee for a personal identification certificate [is:

[(1) $15 for a person under 60 years of age;

[(2) $5 for a person 60 years of age or older; and

[(3) $20 for a person subject to the registration requirements under Chapter 62, Code of Criminal Procedure].

[(b) The department shall collect an additional fee of $1 for the issuance or renewal of a personal identification card to fund the Blindness Education, Screening, and Treatment Program established under Section 91.027, Human Resources Code, if the person applying for or renewing a personal identification card opts to pay the additional fee.

[(c) The department shall collect an additional fee of $1 for the issuance or renewal of a personal identification card, including a duplicate personal identification card or a personal identification card issued or renewed over the Internet or by other electronic means, to pay the costs of the Donor Education, Awareness, and Registry Program of Texas, established under Chapter 49, Health and Safety Code, and, subject to Section 113.104, Health and Safety Code, of the Texas Organ, Tissue, and Eye Donor Council, established under Chapter 113, Health and Safety Code, if the person applying for or renewing a personal identification card opts to pay the additional fee. The department shall remit fees collected under this subsection to the comptroller, who shall maintain the identity

~~of the source of the fees. Subject to appropriation, the department may retain~~
~~three percent of the money collected under this subsection to cover the costs in~~
~~administering this subsection.~~]

Amendment No. 33 was withdrawn.

**Amendment No. 34**

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1)  On page 15, line 11, insert the following new section and renumber the subsection appropriately:

SECTION 25.  This Act is legally unenforceable if it does not comply with Section 5, Section 203, and Section (4)(f)(4) of the Voting Rights Act.

### AMENDMENT NO. 34 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE HARLESS: Mr. Speaker, members, the Voting Rights Act either does or does not apply to various sections of this bill.  This is for the supreme court to determine and not the Texas Legislature.  I move to table.

REPRESENTATIVE RAYMOND:  Ms. Harless, do you believe the Voting Rights Act is a good law?

HARLESS: I do.

RAYMOND: So you believe there is still discrimination in the voting place?

HARLESS: I'm sorry?

RAYMOND: So you believe there is still discrimination in the voting place?

HARLESS: No, I do not think there is.

RAYMOND: Then why do you think the Voting Rights Act is a good law?

HARLESS: I think at the time, when it was passed, it was very effective.  Texas is a Section 5 state, it's going to have to go for pre-clearance either before the Department of Justice or the three federal judges in the District of Columbia. They will decide if we have met the standards of the Voting Rights Act.  This is not the venue for us to decide.  We've got the lines that they have drawn in the cases we have already seen.  We know that—we know the standards they've set, we've complied with that in our bill.  This is not the venue to have this—

RAYMOND: Are you telling me we don't need the Voting Rights Act anymore?

HARLESS: You're putting words into my mouth.

RAYMOND: I'm asking.  Do you believe we still need the Voting Rights Act?

HARLESS: I don't think this is the place to debate that.

RAYMOND: Yes ma'am, it is entirely the place to debate that.  Would you agree this is a major piece of legislation dealing with voting in the State of Texas?

HARLESS: I do.

RAYMOND:  And you do not believe that the Voting Rights Act should be discussed in this context?

HARLESS:  We have discussed it.

RAYMOND:  Okay, then let's continue to discuss it for a minute.  Do you believe the Voting Rights Act is still necessary?

HARLESS:  I believe we're still under the regulations of the Voting Rights Act.

RAYMOND:  I'm asking you, because you are the author of this very important bill, and I think this is very important for people to understand your intent.  Do you believe the Voting Rights Act is still necessary?

HARLESS:  As I've said before, this is a federal issue to be decided by the federal courts.  This isn't for us and the Texas Legislature to discuss right now.

RAYMOND:  Ma'am, you are dealing with legislation here—you are proposing a bill that would affect every single voter in the State of Texas, including minorities.  You would agree with that, right?

HARLESS:  Say that one more time.  It's hard to hear.

RAYMOND:  You are presenting a bill that would affect the voting rights of every voter in the State of Texas, including minorities, would you agree with that?

HARLESS:  I do not agree with that.

RAYMOND:  Really, your bill doesn't apply to minorities?

HARLESS:  I think we increase access to the polls by putting some checks and balances—that voters actually show ID, that they are who they are when they show up to vote in person.

RAYMOND:  I have a very simple question.  Does your bill apply to minorities in the State of Texas?

HARLESS:  My bill applies to everyone equally across the state.

RAYMOND:  Including minorities, is that right?

HARLESS:  Everyone.

RAYMOND:  Including minorities?

HARLESS:  All Texans.

RAYMOND:  Including minorities?

HARLESS:  All Texans.

RAYMOND:  Including minorities?

HARLESS:  All Texans.

RAYMOND:  You won't even acknowledge whether or not your bill affects—

HARLESS:  I said it applies to all Texans.

RAYMOND:  Including minorities, right?

HARLESS:  All Texans.  Every voter in the State of Texas.

RAYMOND:  Minorities are Texans, right?

HARLESS:  Do you want to go back and forth all day on this?  I've answered your question.

RAYMOND:  With all due respect, I feel like you are being flippant about something that's very important to millions of Texans.

HARLESS:  I absolutely don't mean to be flippant.  If I'm coming across that way I apologize.

RAYMOND:  It's a very simple question.

HARLESS:  And I gave you a very simple answer.  It applies to all Texans.

RAYMOND:  I'll ask you one more time.  Does your bill apply to minorities in the State of Texas?

REPRESENTATIVE VEASEY:  Mr. Raymond, why don't you think Representative Harless would answer your questions directly?  It was a very important question dealing with the Voting Rights Act.  We know that we are a Section 5 state.  I hope that she knows we're a Section 5 state if she's carrying this bill, and could you maybe elaborate on why she did not want to answer your question directly?

RAYMOND:  You know, it's hard to read someone else's mind.  But, I will tell you that in 2006, I'm not sure every member in here knows this, but in 2006 a man named George W. Bush signed into law the extension of the Voting Rights Act for 25 years and he said, "Although we've come a long way, there's still a ways to go."  And for the author of this bill not to acknowledge what a president from this state was willing to acknowledge a mere five years ago, and that is, the Voting Rights Act is still necessary.  And that her bill would in fact affect millions of Texans who are minorities and who are protected by Section 2 of the Voting Rights Act is troubling.  I mean I don't know what else to tell you, but I think that it should certainly give people pause to think about what's going on here.

VEASEY:  If you're the author of a bill like this that's going to drastically change election law in your state, don't you think you should have a good understanding of the Voting Rights Act and the history of the Act and why it was passed before you embark on a piece of legislation that could have the type of consequences that I believe this piece of legislation will have?

RAYMOND:  Well, I would expect that in the year 2011, but you just heard the exchange.  It was surprising and troubling to me that the author of this bill was not willing to acknowledge the importance of the Voting Rights Act and the fact that her bill would affect millions of Texans who are protected by it.

VEASEY:  You have a good amendment and because of all the good amendments that have been turned down tonight, we can see exactly where this bill is headed.  Thank you, Representative Raymond.

RAYMOND:  Thank you.

REPRESENTATIVE BERMAN:  Richard, you're a good guy, and Richard, are you a minority?

RAYMOND:  I am.

BERMAN: Is Mr. Veasey a minority?

RAYMOND: Yes, sir.

BERMAN: Are you both Texans?

RAYMOND: Yes, sir, we are.

BERMAN: Ms. Harless answered the question then. She said "all Texans."

RAYMOND: You know, Leo, and I'm glad you call me Richard, because I like for us to talk to each other in the—

BERMAN: Because I like you.

RAYMOND: You were listening to it, Leo, and you've been around 75 years, as you've just mentioned. She specifically would not answer, she specifically would not say, when I asked a simple question, "Will this affect minorities? Will your bill include minorities?" In other words, I'm a minority, is this going to apply to me? I'm going to need a voter ID to go vote, right?

BERMAN: Yes, but you're a Texan.

RAYMOND: No, but listen to it, Leo. You listen to us, you listen to us. I said well tell me, does this affect minorities? "It affects all Texans." Well, just if it would affect minorities—she wouldn't say it.

BERMAN: I think you hit her too hard, really.

RAYMOND: She's not a shrinking violet, she's a tough lady.

BERMAN: But she said "all Texans," and all Texans include every minority in Texas. Of course they do.

RAYMOND: Let me ask you, Leo. Do you believe this bill applies to minorities in the State of Texas?

BERMAN: Yes, I do.

RAYMOND: You see, you were willing to answer it.

BERMAN: But she didn't have to, she said "all Texans."

### REMARKS ORDERED PRINTED

Representative Raymond moved to print remarks between Representative Harless and Representative Raymond, between Representative Veasey and Representative Raymond, and between Representative Berman and Representative Raymond.

The motion prevailed.

Representative Harless moved to table Amendment No. 34.

The motion to table prevailed by (Record 124): 99 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.;

Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Burnam.

(Speaker in the chair)

## Amendment No. 35

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee report) in SECTION 5 of the bill, in added Section 31.012, Election Code (page 3, between lines 25 and 26), by inserting the following new Subsection (d) and relettering the subsequent subsections of added Section 31.012, Election Code, accordingly:

(d) Sections 203 and 14(f)(4) of the Voting Rights Act apply to this section.

### AMENDMENT NO. 35 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE RAYMOND:  Very simply, I guess I want to ask you, do you believe that this bill should comply with the Voting Rights Act?

REPRESENTATIVE PHILLIPS:  I believe that we need to follow the law and make sure that we comply with every constitutional requirement that is imposed on us as a body.  Now, what you're—this is a specific section and portion of the Voting Rights Act.  I don't know if those sections apply to this, that will be up to the—that will be up to, ultimately, the supreme court to determine, and that's who we need to let determine.  I don't think we need to by trying to second-guess what they do mean and don't mean and whether all of these provisions apply.

RAYMOND:  Well, let me ask, because I see a troubling pattern here—

PHILLIPS:  I can't hear you—

RAYMOND:  Let me ask, because I see a troubling pattern, simple question: Do you believe that the Voting Rights Act is a good law?

PHILLIPS: That is not a question before us. There are issues of whether all of the Voting Rights Act are necessary at this time. There are parts of it that have been important to transform elections in this nation.

RAYMOND: So you believe, so you don't believe the Voting Rights Act is necessary?

PHILLIPS: I'm not going to get into—

RAYMOND: This is important—we're—

PHILLIPS: Let me answer.

RAYMOND: Let me ask my question, and then you can answer.

PHILLIPS: You asked a question, then you answered a question, then you asked a question again—

RAYMOND: No, no, I'll ask—

PHILLIPS: —but you won't let me answer.

RAYMOND: Let me—because I didn't ask it clearly I think. Do you believe—do you believe—Mr. Phillips—

PHILLIPS: Go ahead, I'm waiting for your question.

RAYMOND: Let me ask this, you recognize that Texas is a protected—do you know or do you recognize that Texas is a protected state under the Voting Rights Act? Just yes or no.

PHILLIPS: Yes, I do. The federal government, under George Bush, they voted to extend the Voting Rights Act for 25 years; yes, they did.

RAYMOND: Okay, so you recognize that we're covered by that then?

PHILLIPS: And that's the whole point, we're covered by that and we don't need to say—you're trying to impose something on this bill from a federal perspective. We either are or we aren't.

RAYMOND: Exactly, and all I'm saying with this amendment—all I'm saying with this amendment—and this is why I'm baffled why you would move to table it, is that if we don't comply with the Voting Rights Act, it should not become law. Is it your position that if it does not comply with the Voting Rights Act it should still become law?

PHILLIPS: You're bringing sections in and saying this has to apply to every provision, and that's not the—

RAYMOND: No, no, no, no—

PHILLIPS: That's not what we need to do, we need to leave that for the federal government. I mean, for the courts to decide whether we comply. Because the lawyers have worked through this to craft this, and we do not want to do anything that's going to viol—so that's what we're going to do.

RAYMOND: This, very specifically, what you just said is not accurate, Larry. This amendment very specifically applies to one section of the bill.

PHILLIPS:  Right.

RAYMOND:  The voter identification education section.  That's all.  If you look at the amendment.

PHILLIPS:  You're asking to include, and say this section of federal law applies to what we're doing.  That's part of the—I don't know—I mean, from my perspective, I don't know that we need to be here saying, well, gosh, we want everything to apply to everything we do.  If it's covered by it, it's covered by it, Mr. Raymond.  We don't need to include it.  They'll determine that.

RAYMOND:  Surely—I want to make sure I'm hearing you right—surely you would want us to comply with federal voting rights?

PHILLIPS:  Mr. Raymond, that's exactly the point we've been making.

RAYMOND:  You do want us to comply with the—so, I'm clear, you do want this—you do, you do want this—

PHILLIPS:  No, we want to comply with federal law.  And that's exactly the intent and purpose of what we're doing here today in trying to comply with federal law.  That's why we're trying to keep this bill simple, and the whole procedure simple, instead of adding stuff to it that may trigger a section that does or does not apply.  I don't see the problem.

RAYMOND:  Well, you—again, are you saying that **SB 14**, the section that I—the voter identification education section—do you want it to comply with the federal voting rights laws?

PHILLIPS:  I want this to comply with federal laws, and if the voting rights laws that are in effect apply to this and they're constitutional, the supreme court will uphold it, and if they don't, they won't.

RAYMOND:  Well, then all my amendment says—

PHILLIPS:  Your amendment says this has to apply here, and that's something we're saying we're not going to start doing.  We could go through and say we want the entire constitution of the United States to apply to this law.  It either does, or it doesn't.  We don't need to do that as a state.  The federal government passes the laws that they do, and we're either going to follow those laws or not.  We either have to or we don't, and that's part of the debate that is going on across this nation of what we do and we do not want to—we don't want to incorporate—we're trying to stop federal laws that we don't agree with—

RAYMOND:  So, you believe that—so I'm clear—you believe that this section of the bill, which deals with language, right, voter identification education, and the words language are used in that section of the bill, you believe that they may not need to comply with the Voting Rights Act, is that correct?

PHILLIPS:  Either they—either do or they don't.

RAYMOND:  And if they don't, it should not—it should not—

PHILLIPS:  No, then you're starting to put a requirement or a hurdle that may or may not need to be there.

RAYMOND: Larry, how could you honestly look at me and say we're talking about—let me finish my question—how could you honestly look at me and say we have a major piece of legislation here and the section of the bill that deals with voter identification education and uses the words language, because, obviously in the State of Texas, there are people like my grandmother who didn't speak English, but who was a United States citizen her whole life, that that would not be covered and should not be covered by the Voting Rights Act? How can you honestly say that, Larry?

Again members, it is frustrating in the year 2011, to stand up here and be debating members of this legislature who do not want—who appear to me—do not want the Voting Rights Act to apply to this bill. It is disheartening, it is wrong, and I think in the end you will not prevail. We shall overcome.

### REMARKS ORDERED PRINTED

Representative Raymond moved to print remarks between Representative Phillips and Representative Raymond.

The motion prevailed.

Representative Phillips moved to table Amendment No. 35.

The motion to table prevailed by (Record 125): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### Amendment No. 36

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 18 of the bill, in added Section 65.0541(a), Election Code (page 12, line 27), strike "sixth" and substitute "seventh business".

(2) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 65.051(a), Election Code, is amended to read as follows:

(a) The early voting ballot board shall verify and count provisional ballots as provided by this subchapter not later than the ninth [seventh] day after the date of an election.

SECTION ____. Section 67.003, Election Code, is amended to read as follows:

Sec. 67.003. TIME FOR LOCAL CANVASS. (a) Except as provided by Subsection (b), each local canvassing authority shall convene to conduct the local canvass at the time set by the canvassing authority's presiding officer not earlier than the 10th [eighth] day or later than the 11th day after election day.

(b) For an election held on the uniform election date in May, the local canvass must occur not later than the 11th day after election day and not earlier than the later of:

(1) the third day after election day;

(2) the date on which the early voting ballot board has verified and counted all provisional ballots after giving voters of provisional ballots the opportunity to present identification as provided by Section 65.0541, if a provisional ballot has been cast in the election; or

(3) the date on which all timely received ballots cast from addresses outside of the United States are counted, if a ballot to be voted by mail in the election was provided to a person outside of the United States.

Representative Harless moved to table Amendment No. 36.

The motion to table prevailed by (Record 126): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Menendez; Woolley.

## RULES SUSPENDED

Representative Hunter moved to suspend all necessary rules to allow the Committee on Calendars to set a calendar at 6:45 p.m. today in 3W.15.

The motion prevailed.

## COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 6:45 p.m. today, in 3W.15, to set a calendar.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Calendars, 6:45 p.m. today, 3W.15, for a formal meeting, to set a calendar.

Transportation is rescheduled for 9 a.m. Monday, March 28.

## CSSB 14 - (consideration continued)

**Amendment No. 37**

Representative Hernandez Luna offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 9 of the bill, in amended Section 63.001(c), Election Code (page 5, line 17), by adding after the period "If in determining whether a voter's name is on the list of registered voters the election officer determines that the voter's name on the documentation does not match the name on the list, the voter shall be accepted for voting as otherwise required by this section if the voter submits an affidavit stating that the voter is the person on the list of registered voters and that the voter has legally changed the voter's name after marriage or divorce."

Amendment No. 37 failed of adoption by (Record 127): 49 Yeas, 99 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez;

Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Nays — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent — Bonnen.

**Amendment No. 38**

Representative Burnam offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 9 of the bill as follows:

(1) In amended Section 63.001(h), Election Code (page 6, line 20), strike "or".

(2) In amended Section 63.001, Elections Code (page 6, line 23), between "15.001(c)" and the period, insert the following:

; or

(3) a temporary driving permit issued by the Department of Public Safety following the revocation of a driver's license

Amendment No. 38 failed of adoption by (Record 128): 48 Yeas, 100 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Vo; Walle.

Nays — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac;

Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent — Villarreal.

### Amendment No. 39

Representatives Anchia and Strama offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) Strike SECTIONS 1 and 2 of the bill (page 1, line 5, through page 2, line 2) and renumber the remaining SECTIONS of the bill accordingly.

(2) In SECTION 9 of the bill, in amended Section 63.001(b), Election Code (page 5, line 2), strike "Except as provided by Subsection (h), on [On]" and substitute "On".

(3) In SECTION 9 of the bill, strike added Sections 63.001(g) and (h), Election Code (page 5, line 25 through page 6, line 23), and substitute the following:

(g) If the requirements for identification prescribed by Subsection (b) are not met, the voter may be accepted for provisional voting only under Section 63.011. An election officer shall provide a voter who presents the voter's voter registration certificate an affidavit to execute under penalty of perjury that, in addition to meeting the requirements of Section 63.011(a), states the voter is the person named on the voter registration certificate.

(h) For a voter who is not accepted for voting under this section, an election officer shall:

(1) inform the voter of the voter's right to cast a provisional ballot under Section 63.011; and

(2) provide the voter with written information, in a form prescribed by the secretary of state, that lists the requirements for identification.

(4) Strike SECTION 17 of the bill (page 11, line 24, through page 12, line 20) and substitute the following:

SECTION 17. Section 65.054(b), Election Code, is amended to read as follows:

(b) A provisional ballot shall [may] be accepted [only] if the board determines that, from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election and:

(1) the voter meets the identification requirements of Section 63.001(b) at the time the ballot was cast; or

(2)  the voter presented the voter's voter registration certificate with the affidavit described by Section 63.001(g) and the signature on the voter's provisional voting affidavit is substantially similar to the signature on the voter's voter registration application or other public record in the possession of the voter registrar.

(5)  Strike SECTION 18 of the bill (page 12, line 21, through page 13, line 6) and renumber the remaining SECTIONS accordingly.

### LEAVES OF ABSENCE GRANTED

The following members were granted leaves of absence temporarily for today to attend a meeting of the Committee on Calendars:

Bonnen on motion of Hancock.

Branch on motion of Patrick.

Cook on motion of Patrick.

Geren on motion of Hancock.

Hunter on motion of Patrick.

Keffer on motion of Hancock.

Kolkhorst on motion of Hancock.

Lucio on motion of Patrick.

Rodriguez on motion of Patrick.

Truitt on motion of Patrick.

### CSSB 14 - (consideration continued)

Representative Hancock moved to table Amendment No. 39.

(Bonnen and Truitt now present)

The motion to table prevailed by (Record 129): 94 Yeas, 47 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Isaac; Jackson; King, P.; King, S.; Kleinschmidt; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg;

Howard, D.; Johnson; King, T.; Lozano; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent, Excused, Committee Meeting — Branch; Cook; Geren; Hunter; Keffer; Kolkhorst; Lucio; Rodriguez.

(Cook and Rodriguez now present)

**Amendment No. 40**

Representative Menendez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered section and by renumbering the existing sections as appropriate:

SECTION ____. The provisions of this Act requiring a voter to provide a photo identification in order to be accepted for voting do not apply to an election held in a county in which the commissioners court of the county finds that the implementation of the photo identification requirement would be a financial burden on the county.

(Geren, Hunter, Keffer, Kolkhorst, and Lucio now present)

(Brown in the chair)

Representative Phillips moved to table Amendment No. 40.

The motion to table prevailed by (Record 130): 98 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Brown(C).

Absent, Excused, Committee Meeting — Branch.

Absent — Martinez.

(Branch now present)

**Amendment No. 41**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered section and by renumbering the existing sections as appropriate:

SECTION ____. Section 521.424, Transportation Code, is amended to read as follows:

Sec. 521.424. DUPLICATE LICENSE OR CERTIFICATE FEE. (a) Except as provided by Subsection (b), the [The] fee for a duplicate driver's license or duplicate personal identification certificate is $10.

(b) The department may not collect a fee for a duplicate personal identification certificate from a person who meets the requirements of Section 521.422(d).

Amendment No. 41 was withdrawn.

**Amendment No. 42**

Representative Walle offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 15.001, Election Code, is amended by amending Subsection (a) and adding Subsection (d) to read as follows:

(a) Each voter registration certificate issued must contain:

(1) the voter's name in the form indicated by the voter, subject to applicable requirements prescribed by Section 13.002 and by rule of the secretary of state;

(2) the voter's residence address or, if the residence has no address, the address at which the voter receives mail and a concise description of the location of the voter's residence;

(3) the month, day, and year of the voter's birth;

(4) the number of the county election precinct in which the voter resides;

(5) the voter's effective date of registration if an initial certificate;

(6) the voter's registration number;

(7) an indication of the period for which the certificate is issued;

(8) a statement explaining the circumstances under which the voter will receive a new certificate;

(9) a space for stamping the voter's political party affiliation;

(10) a statement that voting with the certificate by a person other than the person in whose name the certificate is issued is a felony;

(11) a space for the voter's signature;

(12)  a statement that the voter must sign the certificate personally, if able to sign, immediately on receipt;

(13)  a space for the voter to correct the information on the certificate followed by a signature line;

(14)  the statement: "If any information on this certificate changes or is incorrect, correct the information in the space provided, sign below, and return this certificate to the voter registrar.";

(15)  the registrar's mailing address and telephone number; [and]

(16)  the jurisdictional or distinguishing number for the following territorial units in which the voter resides, as determined by the voter registrar:

    (A)  congressional district;

    (B)  state senatorial district;

    (C)  state representative district;

    (D)  commissioners precinct;

    (E)  justice precinct;

    (F)  city election precinct; and

    (G)  school district election precinct; and

(17)  if applicable to the county in which the voter resides, the photograph of the voter to whom the certificate is issued.

(d)  The commissioners court of a county may adopt an order requiring the voter registrar to:

(1)  obtain a photograph of each county voter to include on the voter's voter registration certificate; or

(2)  issue to each county voter a voter registration identification card instead of a voter registration certificate containing the information required by this section and the voter's photograph.

SECTION ____.  Subchapter A, Chapter 31, Election Code, is amended by adding Section 31.013 to read as follows:

Sec. 31.013.  PHOTO IDENTIFICATION ACCESS. (a) The secretary of state shall establish methods for a voter registrar, if required, to obtain a photograph of each registered voter from a driver's license or other identification issued by the state to that voter for use on the voter's voter registration certificate or voter registration identification card.

(b)  For purposes of this section, the secretary of state may enter into agreements with the Department of Public Safety or other state agencies and governmental entities for assistance with assigning photographs to the appropriate voter's voter registration certificate or voter registration identification card.

SECTION ____.  (a) As soon as practicable after the effective date of this Act, the secretary of state shall establish, subject to Subsection (b) of this section, the method for obtaining photographs for use on voter registration certificates or voter registration identification cards required by Section 31.013, Election Code, as added by this Act.

(b) The method described by Subsection (a) of this section must allow for voter registration certificates or voter registration identification cards including photographs to be issued beginning with the general election for state and county officers held in 2012.

(2) In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(3) In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:

; or

(6) a voter registration certificate or voter registration identification card that contains the voter's photograph

Representative Phillips moved to table Amendment No. 42.

The motion to table prevailed by (Record 131): 95 Yeas, 52 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, J.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Simpson; Strama; Thompson; Turner; Veasey; Vo; Walle.

Present, not voting — Mr. Speaker; Brown(C).

Absent — Villarreal.

**Amendment No. 43**

Representative Rodriguez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.0091 to read as follows:

Sec. 63.0091. REGISTRATION AT POLLING PLACE; VOTING PROCEDURES. (a) This section applies to the conduct of voting and to the registration of voters notwithstanding and in addition to other applicable provisions of this code.

(b) A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted for voting in the precinct of the person's residence if, on the day the person offers to vote, the person:

(1) submits a voter registration application that complies with Section 13.002; and

(2) presents proof of identification in a form described by Section 63.0101 that also establishes the person's residence.

(c) Persons voting under this section shall be processed separately at the polling place from persons who are voting under regular procedures.

(d) The secretary of state shall prescribe the procedures necessary to implement this section and to ensure the proper and orderly conduct of elections.

Representative Phillips moved to table Amendment No. 43.

The motion to table prevailed by (Record 132): 96 Yeas, 50 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Truitt; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hartnett; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle; Weber.

Present, not voting — Mr. Speaker; Brown(C).

Absent — Marquez; Torres.

## STATEMENT OF VOTE

When Record No. 132 was taken, I was in the house but away from my desk. I would have voted no.

Marquez

(Speaker in the chair)

### Amendment No. 44

Representative Gallego offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____. The changes in law made by this Act do not apply to any county in which the Department of Public Safety of the State of Texas has not established a full service driver's license office.

Representative Harless moved to table Amendment No. 44.

The motion to table prevailed by (Record 133): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Villarreal; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### Amendment No. 45

Representative Anchia offered following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered section and by renumbering the existing sections as appropriate:

SECTION ____. Section 521.424, Transportation Code, is amended to read as follows:

Sec. 521.424. DUPLICATE LICENSE OR CERTIFICATE FEE. (a) Except as provided by Subsection (b), the [The] fee for a duplicate driver's license or duplicate personal identification certificate is $10.

(b) The department may not collect a fee for a duplicate personal identification certificate from a person who meets the requirements of Section 521.422(d).

Amendment No. 45 was adopted.

**Amendment No. 46**

Representative Martinez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____. Subchapter A, Chapter 521, Transportation Code, is amended by adding Section 521.007 to read as follows:

Sec. 521.007. NOTICE OF IDENTIFICATION FOR VOTING PURPOSES. The department shall provide notice to each applicant for an original or renewal driver's license or personal identification certificate that the department may not collect a fee for a personal identification certificate issued to a person who states that the person is obtaining the personal identification certificate for the purpose of satisfying Section 63.001(b), Election Code, and meets the requirements of Section 521.422(d).

Representative Harless moved to table Amendment No. 46.

The motion to table prevailed by (Record 134): 100 Yeas, 45 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eiland; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer;

McClendon; Menendez; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Alonzo; Deshotel; Miles; Peña.

### STATEMENTS OF VOTE

When Record No. 134 was taken, I was in the house but away from my desk. I would have voted no.

Deshotel

When Record No. 134 was taken, I was in the house but away from my desk. I would have voted yes.

Peña

### Amendment No. 47

Representative Alonzo offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____.  Chapter 63, Election Code, is amended by adding Section 63.0091 to read as follows:

Sec. 63.0091.  REGISTRATION AT POLLING PLACE; VOTING PROCEDURES.  (a) This section applies to the conduct of voting and to the registration of voters notwithstanding and in addition to other applicable provisions of this code.

(b) A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted for voting in the precinct of the person's residence if, on the day the person offers to vote, the person:

(1)  submits a voter registration application that complies with Section 13.002; and

(2)  presents proof of identification in a form described by Section 63.0101 that also establishes the person's residence.

(c)  Persons voting under this section shall be processed separately at the polling place from persons who are voting under regular procedures.

(d)  The secretary of state shall prescribe the procedures necessary to implement this section and to ensure the proper and orderly conduct of elections.

Amendment No. 47 was withdrawn.

### Amendment No. 48

Representatives Bonnen, Bohac, and T. Smith offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____. Every provision in this Act and every application of the provisions in this Act are severable from each other. If any application of any provision in this Act to any person or group of persons or circumstances is found by a court to be invalid, the remainder of this Act and the application of the Act's provisions to all other persons and circumstances may not be affected. All constitutionally valid applications of this Act shall be severed from any applications that a court finds to be invalid, leaving the valid applications in force, because it is the legislature's intent and priority that the valid applications be allowed to stand alone. Even if a reviewing court finds a provision of this Act invalid in a large or substantial fraction of relevant cases, the remaining valid applications shall be severed and allowed to remain in force.

Amendment No. 48 was adopted. (The vote was reconsidered later today, and Amendment No. 48 was adopted by Record No. 146.)

**Amendment No. 49**

Representative Alonzo offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.0091 to read as follows:

Sec. 63.0091. REGISTRATION AT POLLING PLACE; VOTING PROCEDURES. (a) This section applies to the conduct of voting and to the registration of voters notwithstanding and in addition to other applicable provisions of this code.

(b) A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted for voting in the precinct of the person's residence if, on the day the person offers to vote, the person:

(1) submits a voter registration application that complies with Section 13.002; and

(2) presents proof of identification in a form described by Section 63.0101 that also establishes the person's residence.

(c) Persons voting under this section shall be processed separately at the polling place from persons who are voting under regular procedures.

(d) The secretary of state shall prescribe the procedures necessary to implement this section and to ensure the proper and orderly conduct of elections.

Representative Harless moved to table Amendment No. 49.

The motion to table prevailed by (Record 135): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Frullo; Lucio.

### STATEMENTS OF VOTE

When Record No. 135 was taken, I was in the house but away from my desk. I would have voted yes.

Frullo

When Record No. 135 was taken, I was in the house but away from my desk. I would have voted no.

Lucio

**Amendment No. 50**

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Effective September 1, 2011, Subchapter C, Chapter 20, Election Code, is amended by adding Section 20.067 to read as follows:

Sec. 20.067. TRAVEL REIMBURSEMENT PROGRAM. (a) The Department of Public Safety shall establish and operate a travel reimbursement program, under which an individual who earns not more than 100 percent of the income standard established by applicable federal poverty guidelines may submit an application for reimbursement to the department to recover the expenses incurred by the individual in traveling to and from the department office to obtain a photo identification for purposes of voting.

(b)  The department shall reimburse an individual meeting the requirements described by Subsection (a).

(c)  The department shall adopt necessary rules to implement the program required by this section.

### AMENDMENT NO. 50 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE RAYMOND:  Mr. Phillips, you know that the State of Texas, in the last year, it was reported that we had an additional around half a million, or 428,000 more people, fell into poverty in the State of Texas, are you aware of that?

REPRESENTATIVE PHILLIPS:  We had a population that has continued to grow.  Yes, we have.

RAYMOND:  But last year it was reported, official figures reported that over 400,000 more people in the State of Texas fell under the poverty level.

PHILLIPS:  We have a much larger state and much more populous state.  That's correct.

RAYMOND:  Right, so we've got over four million people that I would call poor.  I mean this would be someone who earns, if you're an individual, someone who earned $10,800 year.  If you're a family of two, it'd be $14,000 a year.  Families of three, $18,000 a year.

PHILLIPS:  Mr. Raymond, we've clearly—clearly in the bill, it affords those who can't afford a voter ID card.  I think we're getting far afield from this legislation—

RAYMOND:  Well, here's what concerns me, and I hope would concern you.  Minorities in the State of Texas outnumber Anglos about three to one in terms of those who fall under the poverty level, all right?  So what I am seeking to do here is to help anyone who is poor, who would have a hardship being able to drive.  As I said, I grew up in Benavides, 26 miles from the closest office.  And there are a lot of people in Benavides, where I grew up, who are poorer than poor.  There are a lot of people who are from San Isidro, where my grandparents were, 33 miles away from the closest DPS office.  There are a lot of people out there who were poorer than poor, who are United States citizens, who are qualified and registered voters, but if this law were to pass, would have to go far away.  Now, I know you're not poor, but surely you recognize that that can be a hardship on people?  That, you know, when you had the poll tax and you had to pay a dollar or two dollars, people said, "Oh, a dollar, two dollars to be able to vote, that's not that much."  In this case, you're saying with your bill, that you're supporting here, that if it costs you $10 or $15 or $20 to travel to be able to go get what you need to get to allow you to vote, well then suck it up.  You're going to have to do it, if you want to vote.

PHILLIPS:  Mr. Raymond, for a long time people make decisions, they plan ahead and I don't think this is—

RAYMOND:  They plan ahead?

PHILLIPS: They plan ahead.

RAYMOND: They plan ahead to be poor?

PHILLIPS: No, they plan ahead when they need to register to vote and run into town. You're talking about traveling far when they're going to get services and so what you're doing is you're trying to create a certain class and I respectfully disagree that that's necessary here. You're talking about people traveling far and not being able to get there.

RAYMOND: Well, let me just ask you—you really believe that there will not be people in the State of Texas, because they are poor, who will not be able to afford to get what you're asking them to get to be able to vote?

PHILLIPS: And we've had some people here, from our own body, that testify about how important it is for the security and confidence in elections. And they will go and they proudly will obtain the right to vote.

RAYMOND: Would you just answer the question honestly, Larry?

PHILLIPS: No, I don't think so.

RAYMOND: You really believe, of the four million poor people in the State of Texas, two-thirds who are—nearly three-fourths, of which are minority. And that's why I believe this is aimed at minorities. You really believe that many of those people—you think they're all going to be able to vote?

PHILLIPS: No, I just think you're just raising an issue and I think it's a red herring. I think it's clear. The polls in this state show that minorities by a majority—

### REMARKS ORDERED PRINTED

Representative Raymond moved to print remarks by Representative Phillips and Representative Raymond.

The motion prevailed.

Representative Phillips moved to table Amendment No. 50.

The motion to table prevailed by (Record 136): 100 Yeas, 46 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner;

Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Dukes; Dutton; Eiland; Farias; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Deshotel; Farrar; Pickett.

### CSSB 14 - AMENDMENTS LIMITED

Representative Geren moved to limit amendments to **CSSB 14** to those pending on the speaker's desk.

The motion was seconded.

The motion to limit amendments prevailed.

### Amendment No. 51

Representative Gutierrez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____. Section 1.014, Election Code, is amended by adding Subsection (c) to read as follows:

(c)  The secretary of state shall reimburse each county for any cost incurred by the county in implementing the voter identification requirements under Section 63.001.

Representative Harless moved to table Amendment No. 51.

The motion to table prevailed by (Record 137): 99 Yeas, 47 Nays, 1 Present, not voting.

Yeas — Aliseda; Alvarado; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner;

Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Cain; Dutton; White.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 137. I intended to vote no.

Alvarado

When Record No. 137 was taken, I was in the house but away from my desk. I would have voted yes.

White

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Keffer requested permission for the Committee on Energy Resources to meet while the house is in session, at 1 p.m. tomorrow, in E2.036, to consider pending business.

Permission to meet was granted.

### FIVE-DAY POSTING RULE SUSPENDED

Representative Keffer moved to suspend the five-day posting rule to allow the Committee on Energy Resources to consider pending business at 1 p.m. tomorrow in E2.036.

The motion prevailed.

### COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

State Affairs meeting is cancelled.

Energy Resources meeting is cancelled.

### CSSB 14 - (consideration continued)

**Amendment No. 52**

Representative Castro offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____. Chapter 63, Election Code, is amended by adding Section 63.014 to read as follows:

Sec. 63.014. UNLAWFULLY REQUIRING PRESENTATION OF IDENTIFICATION. (a) Only an election officer may require a voter to present proof of identification at the polling place. A person, other than an election officer, who asserts that a voter must present proof of identification to the person in order to be allowed to vote or who for purposes of harassing a voter requests that the voter present proof of identification to the person, commits an offense.

(b) An offense under this section is a felony of the third degree unless the person is convicted of an attempt. In that case, the offense is a Class A misdemeanor.

(L. Taylor in the chair)

Representative Harless moved to table Amendment No. 52.

The motion to table prevailed by (Record 138): 99 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

**Amendment No. 53**

Representative Lucio offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) Add the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION _____. Section 521.124, Transportation Code, is amended to read as follows:

Sec. 521.124. TEMPORARY LICENSE[, ISSUED WITHOUT PHOTOGRAPH]. (a) The department may issue a temporary license without a photograph of the license holder[:

[(1)] to an applicant who is out of state or a member of the armed forces of the United States[; or

[(2) if the department otherwise determines that a temporary license is necessary].

(b) A temporary license issued under Subsection (a) is valid only until the applicant has time to appear and be photographed and a license with a photograph is issued.

(c) Except as provided by Subsection (a), a temporary license issued by the department must include the photograph of the person to whom the license is issued.

(d) If all application requirements are met, a temporary license must be issued by the department on the day of application.

(2) In SECTION 17 of the bill, in added Section 65.054(b)(2)(A), Election Code (page 12, line 7), between "Section 65.0541" and the underscored semicolon insert "or presents a temporary license issued by the Department of Public Safety that contains the voter's photograph in the period prescribed under Section 65.0541".

(3) In SECTION 18 of the bill, in added Section 65.0541(a)(1), Election Code (page 13, line 2), between "63.0101" and "to the voter registrar" insert "or a temporary license issued by the Department of Public Safety that contains the voter's photograph"

Amendment No. 53 was adopted.

**Amendment No. 54**

Representative Alvarado offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.014 to read as follows:

Sec. 63.014. SECRETARY OF STATE RECORDKEEPING. (a) The secretary of state shall keep detailed records showing, for the state and for each county and each election precinct, demographic information relating to:

(1) the eligible voters who were prevented from voting as a result of failing to meet the requirements for being accepted to vote; and

(2) the eligible voters who were required to file provisional ballots as a result of the requirements for being accepted to vote that include the number of those provisional ballots that were not counted.

(b) The secretary of state may adopt rules to implement this section, including rules requiring other state agencies and authorities holding elections to record information relevant to the record required by this section.

Representative Harless moved to table Amendment No. 54.

The motion to table prevailed by (Record 139): 98 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Margo.

**Amendment No. 55**

Representative Veasey offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered section to read as follows and by renumbering the existing sections as appropriate:

SECTION    . Chapter 63, Election Code, is amended by adding Section 63.0013 to read as follows:

Sec. 63.0013. USE OF VOTER REGISTRATION CERTIFICATE FOLLOWING CERTAIN ELECTIONS. (a) Following a general election for state and county officers, the secretary of state shall determine whether, throughout the state, a majority of the persons who were required to cast a provisional vote under Section 63.011 because the voter lacked the photo identification required by Section 63.001(b), were members of a racial or ethnic minority protected by Section 5 of the federal Voting Rights Act.

(b) If the secretary of state makes the determination under Subsection (a) that a majority of voters who lacked photo identification were members of a racial or ethnic minority, in all subsequent elections held in the state, a voter may be accepted for voting under Section 63.001(b) by providing the voter's voter registration certificate to an election officer at the polling place.

(c) The secretary of state shall prescribe procedures as necessary to implement this section.

### AMENDMENT NO. 55 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE LOZANO:  Representative Veasey, are you familiar with the supreme court decision that upheld the Indiana voter ID law?

REPRESENTATIVE VEASEY:  I am familiar with it, yes.

LOZANO:  And, do you recall that the justices, the 6-3 decision, the six in favor of upholding, didn't they make statements to that effect that if it was proven to disproportionately impact one racial or ethnic group, that then this issue should be revisited?

VEASEY:  Absolutely, and that is exactly what this amendment addresses.  It says that if there's discrimination that takes place, and we know that it would be discrimination if most of the people that were denied the right to vote were black and Hispanic, because Ms. Harless had said that that is not going to happen. That, in fact, people will have confidence in what is taking place during election process and that confidence will actually bolster turnout, so there's nothing to fear by this amendment.

LOZANO: Yes, okay, thank you.

VEASEY:  So, members, I give you a chance to come and stand with me, just in case real discrimination takes place, which, I think, probably will.  But here's your chance to prove, once and for all, that you will come and stand with me.  I move passage.

REPRESENTATIVE HARLESS:  Members, I'm not a big fan of talk radio. I don't listen to it, and I don't believe everything they say, but I move to table.

LOZANO:  Representative Harless, are you familiar with the supreme court decision in which the United States Supreme Court upheld the Indiana voter ID law?

HARLESS:  Yes.

LOZANO:  And are you familiar that was a 6-3 decision, six in favor of opposing the law?

HARLESS:  Yes.

LOZANO:  Are you familiar with the opinions issued—the majority opinion?

HARLESS:  The what?

LOZANO:  Are you familiar with the majority opinion that justices issued in the supreme court decision?

HARLESS:  Yes.

LOZANO:  Do you recall anywhere in there where the majority opinion said that even though upholding the integrity of the ballot was paramount, that if the law showed to be disproportionately impacting a minority group, then the issues should be revisited?

HARLESS:  Yes.

LOZANO: So wouldn't this amendment actually be an extension of what the majority of that supreme court held in that ruling?

HARLESS: In the *Marion v.—Crawford v. Marion County Election Board*, the court ruled the requirement to produce photo ID imposes only a limited burden on the voter and justifies by the states interest in restoring confidence in elections and deterring fraud.

VEASEY: Members, especially my friends on the other side of the aisle that are republican, I ask you to please join me in defeating Ms. Harless' motion to table and support this amendment. This is a very easy amendment. All it says is that if people have really been discriminated against that you will come and stand with me and that you will come and join me. That is the argument that is made over and over and over on the republican talk radio shows—on WBAP, that's what republican friends say—that if you can prove real discrimination, I will come and stand with you. Now, this amendment says that if the secretary of state determines that most of the people are denied the right to vote are black and Hispanic, that the law will no longer exist. Ms. Harless has said, over and over that that will not happen. That, in fact, more people will go out to vote, because they will have confidence in the voting process. So, why not accept this amendment, so we can move along, and we can all feel good that we stood up against discrimination.

LOZANO: Mr. Veasey, I understand the significance of this amendment, and I really hope everyone's listening, because this amendment could potentially save this bill from adverse actions from the United States Supreme Court. We should not, and I think you would agree, be sending out bills that are probably going to get overturned by the United States Supreme Court. Based on their ruling, this behooves us— it would behoove us to support this amendment. Based on the six justices in favor of the voter ID law in Indiana saying exactly what your amendment says, I think it would be in our best interest, in the house of representatives, to support this amendment. I strongly urge everyone to vote against tabling this amendment.

VEASEY: I think that this is the amendment that definitely follows the supreme court decision, and I also believe that this is the amendment that makes you feel good about not committing discrimination against your neighbor. Taking an overseas mission, or fellowshipping with the church across town once a year, and passing this bill is not the way to feel good. The way to feel good is to stand up for civil rights when you have the opportunity to. I move to defeat Ms. Harless' amendment—please vote no on the motion to table.

Representative Harless moved to table Amendment No. 55.

The motion to table prevailed by (Record 140): 99 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren;

Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Marquez.

## STATEMENT OF VOTE

When Record No. 140 was taken, I was in the house but away from my desk. I would have voted no.

Marquez

## REMARKS ORDERED PRINTED

Representative Lozano moved to print remarks between Representative Harless and Representative Lozano and between Representative Veasey and Representative Lozano.

The motion prevailed.

(Speaker in the chair)

**Amendment No. 56**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. The changes in law made by this Act do not take effect unless the comptroller certifies that the changes will not reduce the revenue made available to the Texas mobility fund under Section 49-k, Article III, Texas Constitution.

Representative Harless moved to table Amendment No. 56.

The motion to table prevailed by (Record 141): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Hopson; Riddle.

### STATEMENTS OF VOTE

When Record No. 141 was taken, my vote failed to register. I would have voted yes.

Hopson

When Record No. 141 was taken, I was in the house but away from my desk. I would have voted yes.

Riddle

**Amendment No. 57**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. This Act does not make an appropriation. This Act takes effect only if a specific appropriation for the implementation of this Act is provided in a general appropriations act of the 82nd Legislature.

Representative Harless moved to table Amendment No. 57.

The motion to table prevailed by (Record 142): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Howard, C.; Smith, W.

**Amendment No. 58**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by striking SECTION 25 of the bill (house committee printing, page 15, lines 11-12) and substituting the following:

SECTION 25.  Except as otherwise provided by this Act, this Act takes effect on the later of:

(1)  January 1, 2012; or

(2)  the date on which the secretary of state completes a study that:

(A)  provides an analysis, disaggregated by ethnicity and county, of the access to photo identification by state residents, including the availability of, location of offices for, and cost of obtaining the following:

(i)  a passport;

(ii)  a driver's license or personal identification card; and

(iii)  citizenship documents that include the person's photograph; and

(B)  provides an analysis of the potential impact on voter turnout if the changes in law made by this Act take effect based on:

(i)  aggregate turnout data at the county level; and

(ii)  individual-level survey data from current population surveys conducted by the United States Census Bureau for source data.

Representative Harless moved to table Amendment No. 58.

The motion to table prevailed by (Record 143): 101 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

**Amendment No. 59**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) Add the following appropriately numbered SECTION to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 1.005, Election Code, is amended by adding Subdivision (25) to read as follows:

(25) "Early voting ballot board" means the early voting and provisional voting ballot board.

(2) In the recital to SECTION 17 of the bill (page 11, line 25), strike "Subsection (b)" and substitute "Subsections (a) and (b)".

(3) In SECTION 17 of the bill, before amended Section 65.054(b), Election Code (page 11, between lines 26 and 27), add the following:

(a) The early voting and provisional voting ballot board shall examine each affidavit executed under Section 63.011 and determine whether to accept the provisional ballot of the voter who executed the affidavit.

Amendment No. 59 was adopted.

**Amendment No. 60**

Representative Reynolds offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered SECTION and renumbering the existing SECTIONS as appropriate:

SECTION ____. Effective January 1, 2012, Subchapter A, Chapter 61, Election Code, is amended by adding Section 61.015 to read as follows:

Sec. 61.015. ILLEGAL REMOVAL OF VOTER FROM CERTAIN DOCUMENTS. (a) An election officer commits an offense if the officer knowingly removes the name of an eligible voter from the list of registered voters or the poll list for a precinct.

(b) An offense under this section is a state jail felony.

Representative Hancock moved to table Amendment No. 60.

The motion to table prevailed by (Record 144): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Vo; Walle; White.

Present, not voting — Mr. Speaker(C).

Absent — Eiland; Villarreal.

**Amendment No. 61**

Representative Martinez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by inserting the following appropriately-numbered SECTION and updating any cross-references accordingly:

SECTION ____. The changes in law made by this Act do not apply to a lineal descendant of a person who was not permitted to vote:

(1) by law or party resolution adopted on or after January 1, 1923, in a primary election of any political party required by law to hold a primary because of the person's race, color, or previous condition of servitude; or

(2) by law or party resolution adopted after March 2, 1836, because of a presumption based on the person's race, nationality, or color.

Representative Harless moved to table Amendment No. 61.

The motion to table prevailed by (Record 145): 100 Yeas, 44 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Thompson; Turner; Veasey; Vo; Walle.

Present, not voting — Mr. Speaker(C); Anchia.

Absent — Eiland; King, T.; Strama; Villarreal.

### CSSB 14 - POINT OF ORDER

Representative Castro raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 32(c)(4) of the House Rules on the grounds that the bill analysis is incorrect.

The speaker overruled the point of order, speaking as follows:

Representative Castro raises a point of order against further consideration of **SB 14**. Specifically, he alleges the bill analysis violates Rule 4, Section 32 in that it fails to identify the effective dates of the bill, including a website providing notice of identification requirements. The chair has reviewed the bill and the bill analysis. The chair finds the bill analysis was not substantially or materially misleading as it relates to the effective date of the bill. The point of order is respectfully overruled.

### Amendment No. 48 - Vote Reconsidered

Representative Veasey moved to reconsider the vote by which Amendment No. 48 was adopted.

The motion to reconsider prevailed.

Amendment No. 48 was adopted by (Record 146): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Urban Affairs meeting is cancelled.

### CSSB 14 - (consideration continued)

### Amendment No. 62

Representative Strama offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking all below the enacting clause and substituting the following:

SECTION 1. Subchapter A, Chapter 31, Election Code, is amended by adding Section 31.012 to read as follows:

Sec. 31.012. ELECTION INTEGRITY TRAINING. The secretary of state shall annually conduct, in at least four different geographic regions of the state, election integrity training for election officers, law enforcement personnel, and prosecutors in detecting, investigating, and prosecuting instances of voter fraud in which a person impersonates another person for the purpose of voting.

SECTION 2. Subchapter A, Chapter 273, Election Code, is amended by adding Sections 273.005 and 273.006 to read as follows:

Sec. 273.005. ELECTION INTEGRITY TASK FORCE. Each district attorney or criminal district attorney shall create an election integrity task force to investigate and prosecute instances of voter fraud in which a person impersonates another person for purposes of voting.

Sec. 273.006. POST-ELECTION INTEGRITY AUDIT. (a) Following the general election for state and county officers, the county clerk of each county shall conduct a post-election integrity audit to examine and investigate any evidence of voter fraud in which a person impersonates another person for purposes of voting.

(b) The county clerk shall:

(1) not later than the 90th day after the date of the general election for state and county officers, file a report with the secretary of state and the commissioners court of the county providing details of the evidence collected in the audit; and

(2) refer any evidence of voter fraud collected under the audit to the county or district attorney with jurisdiction in the county.

SECTION 3. This Act takes effect September 1, 2011.

**Amendment No. 62 - Point of Order**

Representative Phillips raised a point of order against further consideration of Amendment No. 62 under Rule 11, Section 2 and Rule 11, Section 3 of the House Rules on the grounds that the amendment is not germane to the bill and the amendment would change the original purpose of the bill.

The point of order was withdrawn.

Representative Harless moved to table Amendment No. 62.

The motion to table prevailed by (Record 147): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg;

Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

**Amendment No. 63**

Representative Eiland offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking all below the enacting clause and substituting the following:

SECTION 1. Title 2, Election Code, is amended by adding Chapter 11A to read as follows:

CHAPTER 11A. VOTER IDENTIFICATION

Sec. 11A.001. APPLICABILITY. (a) Except as provided by Subsection (b), this chapter supersedes a provision of this code or a statute outside this code to the extent of any conflict.

(b) This chapter does not apply to the voter registration of a person who is 65 years of age or older. This subsection expires September 1, 2031.

Sec. 11A.002. DEFINITION. In this chapter, "department" means the Department of Public Safety.

Sec. 11A.003. VOTER IDENTIFICATION ISSUED BY DEPARTMENT. (a) The secretary of state shall adopt rules in conjunction with the department to establish a process by which the issuance of a driver's license or a personal identification card by the department is the sole means of voter identification for the purposes of being accepted for voting.

(b) The process established under this section must:

(1) phase out the use of voter registration certificates; and

(2) provide for the encryption of a person's voter registration number on the person's driver's license or personal identification card.

Sec. 11A.004. RULES. (a) The secretary of state shall adopt rules as necessary for the implementation and administration of this chapter.

(b) The department shall adopt rules as necessary for the implementation and administration of this chapter.

SECTION 2. Subchapter A, Chapter 12, Election Code, is amended by adding Section 12.007 to read as follows:

Sec. 12.007. CERTAIN ELECTION OFFICERS ARE VOTER REGISTRARS. An election officer serving a polling place for early voting by personal appearance is a deputy voter registrar and has the same authority as a regular deputy registrar.

SECTION 3. Section 65.054, Election Code, is amended by amending Subsection (b) and adding Subsection (b-1) to read as follows:

(b) Except as provided by Subsection (b-1), a [A] provisional ballot may be accepted only if the board determines that, from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election.

(b-1)  A provisional ballot cast under Section 85.0312 shall be accepted if the voter registrar determines the applicant is eligible for registration under Section 85.0312(d).

SECTION 4.  Subchapter B, Chapter 85, Election Code, is amended by adding Section 85.0312 to read as follows:

Sec. 85.0312.  REGISTRATION AT POLLING PLACE DURING EARLY VOTING.  (a)  A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted during early voting by personal appearance for voting the ballot for the precinct of the person's residence as shown by the identification presented if, on the day the person offers to vote, the person:

(1)  submits a voter registration application that complies with Section 13.002 to an election officer at the polling place; and

(2)  presents as proof of residence:

(A)  a Texas driver's license, including a temporary license or instruction permit, or personal identification card issued to the person by the Department of Public Safety that states the person's current address on the day the person seeks to vote; or

(B)  a utility bill addressed to the person dated not earlier than the 30th day before the date the person seeks to vote, and:

(i)  a Texas driver's license, including a temporary license or instruction permit, or personal identification card issued to the person by the Department of Public Safety, regardless of whether the address stated on the license or card is current on the day the person seeks to vote;

(ii)  a United States passport issued to the person; or

(iii)  a United States military identification card that contains the person's photograph.

(b)  The election officer shall make a copy of the proof of residence submitted under Subsection (a)(2) and attach it to the registration application. The election officer shall return the original proof of residence to the voter.

(c)  A person voting under this section shall vote a provisional ballot in the manner provided by Section 63.011 except that the person is not required to submit the affidavit under Section 63.011(a).

(d)  For each registration corresponding to a ballot cast under this section, the voter registrar shall review the application and copy of the proof of residence and determine whether the applicant is eligible for registration as provided by Subchapter C, Chapter 13.  The registrar shall inform the early voting ballot board of a determination made under this subsection.  A registration approved under this subsection takes effect on the date the vote was cast.

(e)  The secretary of state may by rule:

(1)  designate additional documents that a person may offer to prove the person's residence to register and vote under this section; and

(2)  prescribe procedures to implement this section.

SECTION 5.  Section 521.422, Transportation Code, is amended by amending Subsection (a) and adding Subsection (d) to read as follows:

(a) Except as provided by Subsection (d), the [The] fee for a personal identification certificate is:

(1) $15 for a person under 60 years of age;

(2) $5 for a person 60 years of age or older; and

(3) $20 for a person subject to the registration requirements under Chapter 62, Code of Criminal Procedure.

(d) The department may not collect a fee for a personal identification certificate issued to a person who states that the person is obtaining the personal identification certificate for the purpose of being accepted for voting and does not have another form of identification for that purpose, and:

(1) who is a registered voter in this state and presents a valid voter registration certificate; or

(2) who is eligible for registration under Section 13.001, Election Code, and submits a registration application to the department.

SECTION 6. Not later than January 1, 2012, the secretary of state and the Department of Public Safety shall adopt rules required to implement the changes in law made by this Act.

SECTION 7. This Act takes effect September 1, 2011.

Representative Harless moved to table Amendment No. 63.

The motion to table prevailed by (Record 148): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

## CSSB 14 - REMARKS

REPRESENTATIVE ALISEDA:  Members, Mr. Speaker, it is such an honor to be standing here representing my district as a state representative and supporting Representative Harless and this voter ID bill.  As I stated earlier today, I am a Mexican immigrant.  I came to this country at the age of four and became a United States citizen at the age of 17.  I want to show you what they use in Mexico to vote.  This is a Mexican, federally issued, biometric ID card.  It has on the front, a picture, on the back, a magnetic strip containing additional information, and a fingerprint.  I'm a proud American now, and using an ID to vote just makes common sense, and we need it here and need it now.  We need an ID in this country to do anything in today's society—to cash a check, to open a bank account, to do something as simple as rent a movie.  Americans expect it, Americans want it.  They want it because they want to believe their voting system is at least as safe as renting a movie at Blockbuster.

Do I believe that there are some Americans who do not vote because they feel it is useless because of fraud?  Yes.  How do I know that?  Because they have told me so.  I served this country for five years as a United States naval officer—my country.  I did not do that so some dead person could vote, or so that Mickey Mouse registered by ACORN could vote.  I served my home county, Bee County, as county attorney for eight years.  In 1990, as a young democrat county attorney, I had investigated and I had prosecuted voter fraud cases.  I actually had convictions.  I did not do that just to bring the perpetrators to justice.  I did it because my citizens needed to believe they had a clean and fair election system and that someone was fighting for that.  That is exactly why I strongly support this bill.

My district is comprised of seven counties south of San Antonio, west of Corpus Christi.  According to 2008 statistics, one county in my district, Goliad County, had more people registered to vote than persons eligible to vote.  Under current laws, the opportunity for fraud is there.  In 2008, a high-water mark for voter registration, Texas had an overall registration rate of 76 percent of eligible voters.  In McMullen County, another one of my counties, in 2008, we had a voter registration percent of 97.9, 21.4 percent above the state average.  The opportunity for fraud was probably there.  In Jim Wells County—some of you may have heard of Jim Wells County, that's the home of the infamous "Box 13."  In 2008, they had an eligible voter registration of 90.44 percent, or 14 percent above the state average.  The opportunity for fraud was probably there.  In 2004, in Bee County, we had a woman cast a ballot as if she was her deceased mother.  In 2007, the Texas State Auditors Office found that Texas had 49,049 registered voters who may have been ineligible to vote.  Of those, there were 23,500 voters on the rolls who were probably deceased.  Would voter ID probably have stopped them if they had tried to vote?  I think so.  There were also 2,359 voters identified as having duplicate records.  I believe voter ID would have helped there also.  In the voter ID committee, I heard testimony from election officials that in-person voter fraud had probably occurred and that they had witnessed it.  They testified that they had voters show up with multiple ID cards.  Do I believe voter fraud has

occurred?  Yes.  I believe that the majority of my constituents in my district, democrats, independents, and republicans want this, and I intend to vote for it and I ask that you do, also.

### REMARKS ORDERED PRINTED

Representative Peña moved to print remarks by Representative Aliseda.

The motion prevailed.

REPRESENTATIVE VEASEY:  Members, I'm not going to talk long. We've had a very, very long evening.  Of course, you know I'm in opposition of this bill, it discriminates and I think it will disenfranchise.  And I was just kind of thinking about the history of the Texas House of Representatives and what has changed over the last 100 years or so.  Obviously, the chamber has changed.  It wasn't too long ago that there were no African Americans or no Hispanics at all that served in this body and it was largely because of the discrimination that took place at the polling place.  And there was time when this body upheld certain segregationist policies that dealt with integrated schools and interracial marriage and other things like that, that obviously we would find despicable today.  But, what hasn't changed, even though the parties have changed, is that when it comes time to doing the right thing on decisions that largely involve race, that conservatives just cannot do the right thing. It's too hard.  People didn't do the right thing in regards to school desegregation, people just stuck with their communities.  People didn't want to go against, people thought they weren't going to be able to come back here when it dealt with segregation, when it dealt with whether our colleges and universities were going to be integrated.  People didn't do the right thing.  When it came time to take a stance on slavery, people couldn't do the right thing.  But I guarantee you, the people that served here in the 1950s and 60s, they'll look back and say, "You know what?  That was wrong.  When I was in the Texas Legislature, I should have done something.  I should have stood up.  I thought school segregation was right then.  I thought that segregated water fountains were right then.  I should have stood up and done the right thing."  And I can guarantee you, after this bill passes, and we see who is discriminated against and we see who suffers because of the strict requirements in this bill, that just like the people who served here in the 1950s, just like the people who served here in the in 1930s and the people who served here during reconstruction and before.  They had to look back in shame.  They didn't have a good story to tell their kids and their grandkids about how they dealt with the issue of race.  We are making the same mistake.

REPRESENTATIVE BURNAM:  Representative Veasey, you and I were raised on the west side of Fort Worth, is that correct?

VEASEY:  That is correct.

BURNAM:  And while you're younger than I, we have very similar experiences in and around the Lake Como community neighborhood and what they have endured over the years.  A couple of weeks ago, when we had the immigrant rights rally here, I was speaking in the crowd and I made mention to the fact of legislators of the 50s and 60s in Jim Crow times.  And I said, this session was

shaping up to be the most overtly racist session that I have witnessed in 25 or 30 years.  Do you think what we have seen and heard today bears up on my comment?

VEASEY:  I think that what is being done here today is no different from the things that were done here in the 50s, no different from the things that were done here previous to that.  The things that were done here during reconstruction or before.  I think it's horrible, I think it discriminates against people.  I think that we'll look back in shame and I think we'll all look back and say, that's wrong.  Because, people always do that.  There is not a person here that will say what happened in the 50s and what happened in the 60s was the right thing.  Back then everybody thought it was the right thing.  But nobody would say it's the right thing, today.  Back then it was very socially acceptable, it was the right thing to do.  As a matter of fact, if you weren't against school desegregation back in the 1950s, then you were seen as an oddity in your community.   You probably weren't invited to come back to the Lions Club.

BURNAM:   Mr. Veasey, you know I am extremely proud to have your grandmother and your mother as my constituents, and I bet you also know that they are extremely proud of you today.

VEASEY:  Thank you very much and I think it's time to close.  I want to thank my colleagues for joining me.  But, the people that will lose out, because of this bill, will mainly be Hispanics and blacks, poor, elderly, rural, and it's a shame that we are traveling back in history instead of moving forward and winning the future.

REPRESENTATIVE MARTINEZ:  The foundation has been laid and the bricks and the mortar to start the building of wall has commenced.  And although this is not a wall for a building, this is a wall built as yet another barrier, another obstacle, for minorities.  This voter ID bill, or should I say, this voter restriction bill, voter suppression bill, is one of the toughest in the country.  A bill that oppresses minorities and their right to vote.  A bill written and fortified on pure speculation.  For those members that have come up here and have talked about seeing voter fraud, why didn't you do anything about it?  Pure speculation, members.  Many of you who are in this chamber have never had the experience of not being served at a restaurant, or having to pick up the order at the back door, or being treated differently because of your race or the color of your skin.  I can still remember growing up and hearing my grandparents and my parents saying they couldn't go to the south side of town after 10 o'clock because of their race.  I can remember my grandfather saying that he couldn't pick up his order in a restaurant or be seated because he was Hispanic, because he was Mexican American.  And all this is, and all this happened because of their race.  This bill, members, is a personal attack on minorities.  This bill undermines every civil rights movement, the work of every civil rights leader, and most of all undermines every minority in this state.  Some members in this chamber can go back and check off your political agenda.  You've done what you've had to do, you're going to vote on this bill.  But to some of us, it is personal.  This is our voice, this is the voice of the minorities I represent in my district, the voice of

minorities across the State of Texas. And we are taking a stand against the continuous oppression and persecution that this bill brings. For the minority members in this house, I ask you to stand with me today. To members who care about the minorities you represent, I ask you to stand with me today, so we can together against the continued oppression, persecution, and voter suppression in this state.

REPRESENTATIVE REYNOLDS: Are you familiar with Proverbs 31:8-9?

MARTINEZ: I would like for you to please refresh my memory on that, Representative Reynolds.

REYNOLDS: Well, I would say that Proverbs 31:8-9 simply says, "Speak out for the one who cannot speak, for the rights of those who are doomed. Speak out, judge fairly, and defend the right of oppressed and needy people." Would you say that that scripture pretty much summarizes the sentiments of the statement that you made in opposition of this, **SB 14**?

MARTINEZ: Absolutely representative, and I'm on a roll if you give it to me, I'll recite it right now.

REYNOLDS: Proverbs 31:8-9. Thank you.

### REMARKS ORDERED PRINTED

Representative Martinez Fischer moved to print remarks by Representative Veasey and between Representative Reynolds and Representative Martinez.

The motion prevailed.

REPRESENTATIVE Y. DAVIS: Thank you, Ms. Harless, I just want to get on the record, because there had been some discussion with regard to the cost of the bill and funding for the bill. So, I'd like to ask you, if you could explain to me, who's going to pay for this legislation we're passing? What is your understanding—who will pay for it?

REPRESENTATIVE HARLESS: My understanding is that there is a $2,024,000 fiscal note on it. We have money in the general appropriations bill, and we have a contingency rider. There's HAVA funds available if we request them and we are approved.

Y. DAVIS: Is it your explanation that there are actually two riders then?

HARLESS: One—

Y. DAVIS: Okay, so you mentioned two, so it's just the one contingency rider that deals with HAVA funds, is that correct?

HARLESS: I don't remember mentioning two—there's only one rider.

Y. DAVIS: I'm sorry—

HARLESS: I don't remember mentioning two. There's only—there always has been— and there's only one rider.

Y. DAVIS: Okay, and so if those HAVA funds, and those HAVA funds represent federal funding from the Obama administration, is that correct?

HARLESS: Yes, they do.

Y. DAVIS: Okay, if those HAVA funds are not funded at the 2.024 level or if they are not funded at all, is there money for implementation of this bill, to your knowledge?

HARLESS: Yes.

Y. DAVIS: Okay, and could you explain what that funding source would be?

HARLESS: I think we have general appropriations funds set aside for the funding of this bill to educate voters.

Y. DAVIS: Okay, and is that a different rider than the one we just talked about?

HARLESS: In the appropriations bill that was laid out in January or February on page I-92, there is $39 million of HAVA funds and underneath the secretary of state and for this coming year and $9 million for the next year.

Y. DAVIS: So, it is your representation that we don't have to have the funds associated with this contingency law, but that they will be using funds that have already been received and will be used for a new program?

HARLESS: They're received and they're used for election training.

Y. DAVIS: But are they already obligated, or are they additional funds—they are existing funds that are not obligated, is that your understanding?

HARLESS: Yes.

Y. DAVIS: And so we, in fact, would not have to apply for this money under Rider No. 11, the contingency appropriations, based on what you just articulated, is that correct?

HARLESS: We have to ask for approval from the election administration to use those funds for this source. That was the testimony in committee.

Y. DAVIS: Okay, so we would—so, I guess I want to make sure I understand—your representation is that the secretary of state already has HAVA funds that have not been appropriated that we can utilize for this program, whether we get additional funds or not won't matter. Is that what you're saying?

HARLESS: I'm not on the finance committee, but I know what's in the appropriations bill. There is money there for that.

Y. DAVIS: Okay, but I want to make sure I'm asking it correctly, because in the bill that we're going to take up next week, are you suggesting that, based on that bill that—the bill that's going to come to us—funds have not been appropriated, so if we don't get new funds, we have funds available for this program.

HARLESS: If we don't get new funds, we already have the HAVA money sitting in the general revenue. The testimony in committee, secretary of state Ann McGeehan, stated that we have received some $2 million of HAVA funds. We have spent up to—whatever the difference is—that equals the $43 million, and that money is to be spent for election training. It's in the general appropriations

bill that Chairman Pitts laid out at the beginning of the session. I'm not sure what the next appropriations bill that we'll vote on will actually have in it, because I don't serve on Appropriations.

Y. DAVIS: Okay, for members—for those of us who don't serve on Appropriations either, I don't either, so I'm trying to understand where the money's going to come from, and to the extent that we don't need these funds, do we already have money allocated? I just want to make sure that I ask a question. If we don't get additional funds, will we have—will there be an issue with regard to this bill being passed down to our counties and they then are responsible to implement this without additional resources from the state?

HARLESS: The county passed what the secretary of state passes down, they receive funds for this, this is part of their normal duties. Every session, there are some election law changes. It is my understanding, from testimony from Harris County, that this has been their normal practice.

Y. DAVIS: This is a little bit more than normal practice because we're altering the entire process. And so, to the extent that this is a totally new program, the cost would be much greater than they traditionally would have as programs that were continuations of our existing program, wouldn't you say?

HARLESS: Yes, there was testimony in committee, the secretary of state spent a lot of time talking about what they wanted to do and what they would look to other states for best practices. They have budgets set aside every single year to enact new changes in election code.

Y. DAVIS: And my last question is, based on that deal, we really don't need this contingency rider? Is that what you're suggesting based on your comments?

HARLESS: It could be possible, but I didn't want to take any chance.

Y. DAVIS: Okay, but—and you're sure we don't have to worry about counties contacting us with regard to additional expenses for the implementing a new voter plan without having received money from the state? Is that your representation?

HARLESS: That is my understanding. The county receives money from the secretary of state that comes from the HAVA funds.

Y. DAVIS: That's a different question. My question is, based on implementing a new program, do we expect that the counties will incur additional costs to implement the new program that we will not fund?

HARLESS: I do not expect them to, but I cannot say for sure that they won't have additional costs.

Y. DAVIS: And if there are additional costs based on us passing this new bill, you're suggesting that the counties would then be responsible for those costs.

HARLESS: Excuse me, say that one more time.

Y. DAVIS: Are you suggesting that the counties could have additional costs associated with implementation of this program if we would not send funds to the counties for this program? Is that—

HARLESS:  The counties have additional costs on a lot of legislation we've passed, and a lot of it's election.  Every other session we pass new election laws that the county has to implement.  I don't know if they will with this bill.

Y. DAVIS:  Is it your intent that this bill would not put another—an additional cost on the counties with regard to implementation of this new program?

HARLESS:  I—that is my intent.

### REMARKS ORDERED PRINTED

Representative Y. Davis moved to print remarks between Representative Harless and Representative Y. Davis.

The motion prevailed.

REPRESENTATIVE L. GONZALES:  First of all, thank you.

HARLESS:  You're welcome.

L. GONZALES:  Thank you for all you've done, for all your hard work—we appreciate it very much.  I stand here before you as a very proud Latino, and I've got some questions for you.

HARLESS:  Okay.

L. GONZALES:  Is it your intention for this bill to disenfranchise ethnic minority voters?

HARLESS:  No, sir.

L. GONZALES:  Is it your intention, or anybody who has joint-authored or coauthored this bill, to disenfranchise ethnic minority voters?

HARLESS:  No, sir.

L. GONZALES:  Is it your intention for this bill to disenfranchise any voter, regardless of race, ethnicity, socioeconomic status, disability, age, or any combination thereof?

HARLESS:  No.

L. GONZALES:  Is it the intention of anybody who has joint-authored or coauthored this bill to disenfranchise any voter, regardless of race, ethnicity, socioeconomic status, disability, age, or any combination thereof?

HARLESS: No, it is not.

L. GONZALES:  So we are not targeting my Hispanic 86-year-old grandfather?

HARLESS:  No, we're not.

L. GONZALES:  So we are not targeting my Hispanic 84-year-old grandmother?

HARLESS:  No.

L. GONZALES:  Does this bill in any way disenfranchise any voter?

HARLESS:  No.

L. GONZALES: Would you agree that the heart and the soul of our republic is the elections process? That these results determine our policy makers, and the decisions they make, which affect our everyday lives, that it is imperative that the voters of Texas have confidence in the integrity of the elections process, and that **SB 14** goes a very long way to accomplish and secure this confidence?

HARLESS: I think it absolutely does.

### REMARKS ORDERED PRINTED

Representative L. Gonzales moved to print remarks between Representative Harless and Representative L. Gonzales.

The motion prevailed.

REPRESENTATIVE GARZA: Representative Harless, I wanted to echo the sentiments of Representative Gonzales. I come from the west side of San Antonio; my father was a first generation Hispanic who served in the military for over 20 years. And I came to this place, the house of representatives, to basically—the attitude that minorities, especially we, as Hispanics, are disabled in our ability to get an identification, a driver's license, to be able to do what it takes to exercise our right to vote, it's sometimes insulting. We have the ability and we have the right, and my father and many of the Hispanics that are here are examples that we are able, and we want to begin to proclaim the ability of our people to achieve the many things that we have as a race. So, I think the positive part is that we are able, and our people are able, to achieve these things that have been said that they're not able or disenfranchised or unable to do. And being a Texan and being Hispanic, I know that we are to overcome, and we have overcome, and we will continue to overcome. But to answer some of the questions that caused some confusion to some of the representatives, I wanted to ask you specifically, will this bill encourage voter participation by all Texans, regardless of race, ethnicity, socioeconomic status, their disability, their age, or any of the combinations thereof, by giving them confidence in the election process that Representative Aliseda spoke about?

HARLESS: I believe it will.

GARZA: And let me ask you again, with the passage of this bill, will all Texans, including those mentioned, have equal access to this election process with the passage of this bill?

HARLESS: Yes.

GARZA: So, the Hispanic voters in my district, House District 117, will have full confidence that their vote will count in a trustworthy election process?

HARLESS: Yes.

GARZA: And the African American voters in my district—they'll have full confidence that their vote will count in this trustworthy election process?

HARLESS: Yes.

GARZA:  Okay, and finally, every voter in my district of 117 in San Antonio, and every house district in the State of Texas, regardless of race, ethnicity, their socioeconomic status, their disability, age, or, again, any combination thereof, will have full confidence that their vote will count in a trustworthy election process.

HARLESS:  Absolutely, yes.

### REMARKS ORDERED PRINTED

Representative Garza moved to print remarks between Representative Harless and Representative Garza.

The motion prevailed.

REPRESENTATIVE COLEMAN:  Thank you, Ms. Harless, and you know you and I are really good friends.

HARLESS:  We are.

COLEMAN:  And I respect you greatly, and this is nothing personal to you.

HARLESS:  I know that, and I appreciate that.  Thank you, I feel the same.

COLEMAN:  Do you know if the members who said that they represent people of color, did they come from districts that are a majority of color?

HARLESS:  Say that one more time, the end part.

COLEMAN:  Do they come from the districts that are majority of color?  Do they have districts that are more people that are black and brown or other ethnicities than non black and brown?

HARLESS:  I can't answer that, Garnet.

COLEMAN:  Are they from majority minority districts?  This is important for the record.  You may not be able to answer it, but that is important for the record.

HARLESS:  I would say that they probably think that their district is majority minority.  I don't know that, I'm not advised of that.

COLEMAN:  Well, we're thinking it's not the case and they're speaking on behalf of their opinion, but in terms of how we do law in this state, it is based on the number of people who reside in a district and whether or not that is protected.  Ms. Harless, is that true?

HARLESS:  Say the last—

COLEMAN:  The Voting Rights Act.  Isn't that based on the number of people of color that reside in a district that are protected under the Voting Rights Act?

HARLESS:  I'm not advised.

COLEMAN:  Okay.  So the answer is yes.  You may not be advised, but I can tell you under the law that the answer is yes.  I'm advising you that is the case.

HARLESS:  Okay.

COLEMAN: Now, when you say that the individuals in this room did not believe that they were disenfranchised, is that because you didn't hear them or you didn't see them or you didn't know that was the majority of the sentiment of the people who represent majority minority districts that actually were making comment on this floor? I know you may not be advised, but I can tell you right now and you can see that the majority of them do believe that they were disenfranchised, and they are the majority of the people in this house that are districts' representatives from districts that are districts that are majority minority. Isn't that correct?

HARLESS: I think the record speaks for itself. They've testified on record. We have transcripts of it. A lot of the communication—

COLEMAN: The record speaks for itself, but it's clear that the members standing around me right now, and the members that have been there today actually did say that they believe this bill disenfranchised their constituents, and that disenfranchisement was a reason why they didn't want to vote for this bill and thought this bill needed to be changed. And, since you aren't advised I will let you know that is the case. Thank you, Ms. Harless, for doing such a great job on a difficult subject.

HARLESS: Thank you.

### REMARKS ORDERED PRINTED

Representative Coleman moved to print remarks between Representative Harless and Representative Coleman.

The motion prevailed.

**CSSB 14**, as amended, was passed to third reading by (Record 149): 101 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez;

Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### REASONS FOR VOTE

Numerous amendments to improve **SB 14** would have made the bill more fair by reducing the risk of disenfranchising eligible, registered Texas voters. Unfortunately, the majority rejected amendments to expand the types of photo identification acceptable for voting. They rejected an amendment that would have allowed voters to sign an affidavit swearing to their identity, and to cast a provisional ballot with the assurance that their ballot would be counted if the signature on the affidavit matched the signature on the voter registration file. The majority also voted against exemptions for seniors, the indigent, people with religious objections, and women who have had their names changed due to marriage or divorce. High school students over 18 will not be able to vote with their school IDs. College students legally registered in Texas will not be able to vote with out-of-state driver's licenses. In addition, this bill is a vast unfunded mandate on counties. **SB 14** also unconstitutionally and illegally raids the Texas mobility fund. In light of our historic budget shortfall, this bill is fiscally irresponsible. Finally, these disadvantages of the bill must be weighed against its purported advantages in terms of reducing voter impersonation. In the absence of evidence of voter fraud of a type that would be prevented by the provisions in this bill, it is clear that this bill would do more harm than good to the integrity of our elections system.

> Anchia, Castro, Dukes, Gallego, Hernandez Luna, Hochberg, D. Howard, Lozano, Lucio, Martinez, Martinez Fischer, McClendon, Muñoz, and Vo

Numerous amendments to improve **SB 14** would have made the bill more fair by reducing the risk of disenfranchising eligible, registered Texas voters. Unfortunately, the majority rejected amendments to expand the types of photo identification acceptable for voting. They rejected an amendment that would have allowed voters to sign an affidavit swearing to their identity, and to cast a provisional ballot with the assurance that their ballot would be counted if the signature on the affidavit matched the signature on the voter registration file. The majority also voted against exemptions for seniors, the indigent, people with religious objections, and women who have had their names changed due to marriage or divorce. High school students over 18 will not be able to vote with their school IDs. College students legally registered in Texas will not be able to vote with out-of-state driver's licenses. In addition, this bill is a vast unfunded mandate on counties. In light of our historic budget shortfall, this bill is fiscally irresponsible. Finally, these disadvantages of the bill must be weighed against its

purported advantages in terms of reducing voter impersonation. In the absence of evidence of voter fraud of a type that would be prevented by the provisions in this bill, it is clear that this bill would do more harm than good to the integrity of our elections system.

Menendez

Numerous amendments to improve **SB 14** would have made the bill more fair by reducing the risk of disenfranchising eligible, registered Texas voters. Unfortunately, the majority rejected amendments to expand the types of photo identification acceptable for voting. They rejected an amendment that would have allowed voters to sign an affidavit swearing to their identity, and to cast a provisional ballot with the assurance that their ballot would be counted if the signature on the affidavit matched the signature on the voter registration file.

Villarreal

### HB 4 - COMMITTEE ON CALENDARS RULE ADOPTED

Pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, Representative Hunter moved to adopt the following rule governing floor consideration of **HB 4**:

Section 1.   All original amendments that will be offered during second reading consideration of the bill must be filed with the chief clerk by 10 a.m. on Monday, March 28.

Section 2.   (a) During second and third reading consideration of the bill, any amendment that adds or increases an item of appropriation in the bill is not in order unless the amendment contains an equal or greater reduction in one or more items of appropriation in the bill from the fund or funds against which the appropriation is to be certified.

(b)  The provisions of this section do not apply to an amendment that makes an adjustment in an item of appropriations solely to correct a technical clerical error.

The Committee on Calendars rule was adopted by (Record 150): 144 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Orr; Otto;

Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent — Burnam; Deshotel; Guillen; Oliveira; Rodriguez.

### HB 275 - COMMITTEE ON CALENDARS RULE ADOPTED

Pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, Representative Hunter moved to adopt the following rule governing floor consideration of **HB 275**:

All original amendments that will be offered during second reading consideration of the bill must be filed with the chief clerk by 10 a.m. on Monday, March 28.

The Committee on Calendars rule was adopted by (Record 151): 147 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent — Burnam; Guillen.

### GENERAL STATE CALENDAR
### HOUSE BILLS
### SECOND READING

The following bills were laid before the house and read second time:

### HB 71 ON SECOND READING
### (by Martinez and Hughes)

**HB 71**, A bill to be entitled An Act relating to the fee charged for the Texas Airport Directory.

Representative Martinez moved to postpone consideration of **HB 71** until 9:59 a.m. Thursday, March 31.

The motion prevailed.

### HB 229 ON SECOND READING
### (by Solomons)

**HB 229**, A bill to be entitled An Act relating to the duties of the county tax assessor-collector and voter registrar regarding exemptions from jury service.

Representative Solomons moved to postpone consideration of **HB 229** until 9:59 a.m. Thursday, March 31.

The motion prevailed.

### HB 451 ON SECOND READING
### (by Lucio, Creighton, Branch, and Bohac)

**HB 451**, A bill to be entitled An Act relating to the creation of a Don't Mess with Texas Water program to prevent illegal dumping that affects the surface waters of this state.

**Amendment No. 1**

Representative Lucio offered the following amendment to **HB 451**:

Amend **HB 451** on page 1, between lines 22 and 23, by inserting:

(e) The Texas Department of Transportation shall post a sign that complies with program requirements at a major highway water crossing at the time a previously posted sign identifying the crossing or prohibiting dumping at the crossing is scheduled to be replaced.

Amendment No. 1 was adopted.

**HB 451**, as amended, was passed to engrossment by (Record 152): 122 Yeas, 21 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Beck; Bohac; Branch; Brown; Burkett; Burnam; Button; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Huberty; Hunter; Isaac; Jackson; Keffer; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Lewis; Lozano; Lucio; Mallory Caraway; Margo; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Patrick; Peña; Perry; Phillips; Pickett; Pitts; Price;

Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Torres; Truitt; Turner; Veasey; Vo; Walle; Weber; Woolley; Zerwas.

Nays — Anderson, C.; Aycock; Berman; Bonnen; Cain; Darby; Fletcher; Howard, C.; King, P.; Legler; Lyne; Madden; Miller, S.; Parker; Paxton; Shelton; Simpson; Smith, T.; White; Workman; Zedler.

Present, not voting — Mr. Speaker(C).

Absent — Eiland; Hughes; Johnson; Marquez; Thompson; Villarreal.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 152. I intended to vote no.

Flynn

I was shown voting yes on Record No. 152. I intended to vote no.

Phillips

I was shown voting yes on Record No. 152. I intended to vote no.

Weber

### FIVE-DAY POSTING RULE SUSPENDED

Representative Kolkhorst moved to suspend the five-day posting rule to allow the Committee on Public Health to consider the previously posted agenda and pending business at 8 a.m. March 24, in E2.030.

The motion prevailed.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Branch requested permission for the Committee on Higher Education to meet while the house is in session, during bill referral today, in E1.014, to consider the previously posted agenda.

Permission to meet was granted.

### COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Public Health, 8 a.m. March 24, E2.030, for a public hearing, to consider the previously posted agenda and pending business.

Energy Resources, 1 p.m. March 24, E2.036, for a public hearing, to consider pending business.

(Lozano in the chair)

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Deshotel requested permission for the Committee on Culture, Recreation, and Tourism to meet while the house is in session, during bill referral today, in E1.026, to consider pending business.

Permission to meet was granted.

## PROVIDING FOR ADJOURNMENT

Representative S. Davis moved that, at the conclusion of the reading of bills and resolutions on first reading and referral to committees, the house adjourn until 10 a.m. today, Thursday, March 24.

The motion prevailed.

## BILLS AND JOINT RESOLUTIONS ON FIRST READING
## AND REFERRAL TO COMMITTEES
## CORRECTIONS IN REFERRAL

Bills and joint resolutions were at this time laid before the house, read first time, and referred to committees. Pursuant to Rule 1, Section 4 of the House Rules, the chair at this time corrected the referral of measures to committees. (See the addendum to the daily journal, Referred to Committees, List No. 1.)

(V. Taylor in the chair)

## ADJOURNMENT

In accordance with a previous motion, the house, at 12:14 a.m. Thursday, March 24, adjourned until 10 a.m. today.

---

## ADDENDUM

### REFERRED TO COMMITTEES

The following bills and joint resolutions were today laid before the house, read first time, and referred to committees, and the following resolutions were today laid before the house and referred to committees. If indicated, the chair today corrected the referral of the following measures:

**List No. 1**

**HB 1295** (By Shelton), Relating to a pilot project to increase enrollee access to primary care services and simplify enrollment procedures under the child health plan program.
To Human Services.

**HB 1338** (By T. Smith), Relating to the requirement that a voter provide proof of citizenship when registering to vote.
To Elections.

**HB 1412** (By Chisum), Relating to requiring a voter to present proof of identification; providing penalties.
To Elections.

**HB 1458** (By Harless), Relating to requiring a voter to present proof of identification; providing penalties.
To Elections.

**HB 1533** (By Eiland), Relating to voter registration.
To Elections.

**HB 2665** (By P. King), Relating to abolishing the Texas Funeral Service Commission and the Texas State Board of Plumbing Examiners and transferring the functions of those agencies to the Texas Department of Licensing and Regulation.
To State Affairs.

**HB 2825** (By Otto), Relating to the investment management of the permanent university fund.
To Higher Education.

**HB 3166** (By Callegari), Relating to the abolition and consolidation of state agencies.
To Government Efficiency and Reform.

**HB 3167** (By Callegari), Relating to the repeal of occupational licensing requirements.
To Government Efficiency and Reform.

**HB 3168** (By Callegari), Relating to the operation of state agencies
To Government Efficiency and Reform.

**HB 3266** (By S. Miller), Relating to the audit of retail and mail order pharmacy claims of certain public employees.
To Insurance.

**HB 3413** (By Darby), Relating to the property and funding of the Texas Department of Motor Vehicles.
To Transportation.

**HB 3414** (By Darby), Relating to certain fiscal matters relating to the Department of Agriculture.
To Appropriations.

**HB 3415** (By Darby), Relating to the authority of the Texas Animal Health Commission to set and collect fees.
To Appropriations.

**HB 3416** (By Darby), Relating to eliminating a requirement that the Texas Alcoholic Beverage Commission transfer certain funds to the Department of Agriculture for the Texas Wine Marketing Assistance Program.
To Appropriations.

**HB 3417** (By Darby), Relating to state fiscal matters regarding business and economic development.
To Appropriations.

**HB 3418** (By Darby), Relating to state fiscal matters related to natural resources and the environment.
To Appropriations.

**HB 3419** (By Darby), Relating to state fiscal matters related to certain regulatory agencies.

To Appropriations.

**HB 3420** (By Darby), Relating to the fee on delivery of certain petroleum products.

To Appropriations.

**HB 3547** (By Alvarado), Relating to enforcement by a local government of fire safety standards at certain child-care facilities.

To Urban Affairs.

**HB 3569** (By Lucio), Relating to the review of certain documents by the attorney general; imposing certain fees.

To Government Efficiency and Reform.

**HB 3570** (By Smithee), Relating to insurance coverage requirements for certain amusement rides.

To Insurance.

**HB 3571** (By Phillips), Relating to the use of revenue sharing as a means of repayment of Texas Department of Transportation cost participation in a toll facility of a public entity.

To Transportation.

**HB 3572** (By S. King), Relating to the creation of the 1st Multicounty Court at Law composed of Fisher and Nolan Counties and the abolishment of the County Court at Law of Nolan County.

To Judiciary and Civil Jurisprudence.

**HB 3573** (By S. King), Relating to limiting the disclosure of certain information regarding certain charitable organizations, trusts, private foundations, and grant-making organizations.

To Business and Industry.

**HB 3574** (By Torres), Relating to the Texas Back to Work initiative.

To Economic and Small Business Development.

**HB 3575** (By Thompson), Relating to the operation of casino gaming in this state by federally recognized Indian tribes on certain land; providing penalties.

To Licensing and Administrative Procedures.

**HB 3576** (By Thompson), Relating to the operation of casino gaming in this state by federally recognized Indian tribes on certain land and by licensed operators at horse and greyhound racetracks and licensed locations; providing penalties.

To Licensing and Administrative Procedures.

**HB 3577** (By L. Gonzales), Relating to eligibility requirements for the Texas Educational Opportunity Grant.

To Higher Education.

**HB 3578** (By L. Gonzales), Relating to clarification of the authorized uses for loans under public institution of higher education emergency loan programs.

To Higher Education.

**HB 3579** (By L. Gonzales), Relating to repayment assistance for certain physician education loans.

To Higher Education.

**HB 3580** (By Frullo), Relating to the issuance of specialty license plates for surviving spouses of disabled veterans of the United States armed forces.

To Defense and Veterans' Affairs.

**HB 3581** (By Driver), Relating to authorizing the sale of beer by wineries.

To Licensing and Administrative Procedures.

**HB 3582** (By Harless), Relating to the allocation to a school district of the expenses of a joint election.

To Elections.

**HB 3583** (By Harless), Relating to the authority of local law enforcement authorities to enforce certain laws regulating coin-operated machines; providing criminal penalties.

To Licensing and Administrative Procedures.

**HB 3584** (By Strama), Relating to the Texas emerging technology fund.

To Technology.

**HB 3585** (By V. Taylor), Relating to the adoption of voting procedures necessary to implement the federal Military and Overseas Voter Empowerment Act.

To Elections.

**HB 3586** (By V. Taylor), Relating to unit operations for oil, gas, or oil and gas production or carbon dioxide storage.

To Energy Resources.

**HB 3587** (By Callegari), Relating to the functions of the Texas Guaranteed Student Loan Corporation.

To Higher Education.

**HB 3588** (By Coleman), Relating to the use of a county risk management pool by certain county and district officers instead of the execution of bonds.

To County Affairs.

**HB 3589** (By Hancock), Relating to claim-handling deadlines in the event of certain weather-related catastrophes or natural disasters.

To Insurance.

**HB 3590** (By Hancock), Relating to the cancellation of homeowners insurance policies.

To Insurance.

**HB 3591** (By D. Howard), Relating to the confidentiality of information obtained by a compliance office of an institution of higher education.

To Higher Education.

**HB 3592** (By D. Howard), Relating to the Lower Colorado River Authority.

To Natural Resources.

**HB 3593** (By W. Smith), Relating to providing notice of foreclosure to certain lien holders.

To Business and Industry.

**HB 3594** (By Aliseda), Relating to the termination of a volunteer deputy registrar for the submission of late or incomplete applications for voter registration.

To Elections.

**HB 3595** (By Chisum), Relating to energy efficiency goals and energy efficiency programs.

To Energy Resources.

**HB 3596** (By Hancock), Relating to public school finance and the allocation of state funds.

To Public Education.

**HB 3597** (By Larson), Relating to the powers and duties of certain public improvement districts.

To Urban Affairs.

**HB 3598** (By Huberty), Relating to the criminal registration procedure for a convicted arsonist.

To Criminal Jurisprudence.

**HB 3599** (By Garza), Relating to contracting with emerging fund managers by the State Board of Education for investment of the permanent school fund.

To Public Education.

**HB 3600** (By Garza), Relating to municipal and county authority to enforce a solid waste collection and transportation services franchise.

To Environmental Regulation.

**HB 3601** (By Garza), Relating to the issuance of cease and desist orders by the Texas Medical Board.

To Public Health.

**HB 3602** (By Garza), Relating to a restriction on permits authorizing direct discharges of waste or pollutants into water in certain areas associated with the Barton Springs segment of the Edwards Aquifer.

To Natural Resources.

**HB 3603** (By Garza), Relating to the distribution of money appropriated from a municipal court building security fund.

To Criminal Jurisprudence.

**HB 3604** (By Smithee), Relating to enforcement of certain insurance provisions in construction contracts.

To Business and Industry.

**HB 3605** (By Smithee), Relating to the payment of losses by the Texas Windstorm Insurance Association

To Insurance.

**HB 3606** (By Kuempel), Relating to the payment of development impact fees by certain political subdivisions or governmental entities.

To Urban Affairs.

**HB 3607** (By Kuempel), Relating to construction managers-at-risk used by local governments.

To Urban Affairs.

**HB 3608** (By Kuempel), Relating to a franchise tax credit for contributions to programs for at-risk youth.

To Ways and Means.

**HB 3609** (By Smithee), Relating to insurance premium and maintenance taxes, and payment of excess losses of the Texas Windstorm Insurance Association.

To Insurance.

**HB 3610** (By Thompson), Relating to periodic rate adjustments by electric utilities.

To State Affairs.

**HB 3611** (By Truitt), Relating to the administration of medications for persons with intellectual and developmental disabilities.

To Public Health.

**HB 3612** (By Turner), Relating to the administration of the Texas Save and Match Program to assist qualifying beneficiaries under the state's prepaid tuition plans and college savings plans and to the treatment of a beneficiary's assets under prepaid tuition plans and college savings plans in determining eligibility for student financial assistance and other assistance programs.

To Higher Education.

**HB 3613** (By Walle), Relating to the operation of the Texas Windstorm Insurance Association.

To Insurance.

**HB 3614** (By Hughes), Relating to the interest rate on a refund of ad valorem taxes made following the final determination of an appeal that decreases a property owner's tax liability.

To Ways and Means.

**HB 3615** (By Hughes), Relating to the authority of the chief appraiser of an appraisal district to increase the appraised value of property if the appraised value of the property was reduced in an appeal in a prior year.

To Ways and Means.

**HB 3616** (By Naishtat), Relating to designating October as Disability History and Awareness Month.

To Human Services.

**HB 3617** (By Madden), Relating to abolishing the Texas Commission on Fire Protection, the Commission on Jail Standards, and the Commission on Law Enforcement Officer Standards and Education and transferring certain of the powers and duties of those agencies to the newly created Public Safety Licensing Commission.

To Homeland Security and Public Safety.

**HB 3618** (By S. Miller), Relating to the regulation of restricted fireworks.

To County Affairs.

**HB 3619** (By S. Miller), Relating to the application of certain concealed handgun license laws to certain statewide elected officials and members of the legislature.

To Homeland Security and Public Safety.

**HB 3620** (By Isaac), Relating to changes in participation in public utility agencies.

To Natural Resources.

**HB 3621** (By Bonnen), Relating to the Gulf Coast Water Authority.

To Natural Resources.

**HB 3622** (By R. Anderson), Relating to liability for the death of a pet.

To Judiciary and Civil Jurisprudence.

**HB 3623** (By Darby), Relating to the environmental review of certain transportation projects by the Texas Department of Transportation.

To Transportation.

**HB 3624** (By Hochberg), Relating to the eligibility of educational aides for tuition exemptions at public institutions of higher education.

To Higher Education.

**HB 3625** (By Carter), Relating to a task force on school district administrative efficiency.

To Public Education.

**HB 3626** (By Kolkhorst), Relating to the Texas Economic Development Act.

To Ways and Means.

**HB 3627** (By Aliseda), Relating to the use of audio and visual recording devices in a polling place.

To Elections.

**HB 3628** (By Aliseda), Relating to the offense of unacknowledged assistance to a voter in completing an application for a ballot to be voted by mail.

To Elections.

**HB 3629** (By Shelton), Relating to abolishing the Department of Assistive and Rehabilitative Services and transferring its powers and duties to the Department of Aging and Disability Services and the Department of State Health Services.

To Human Services.

**HB 3630** (By Hunter), Relating to certain unprofessional conduct by a health care provider.

To Public Health.

**HB 3631** (By Branch), Relating to the imposition of certain conditions and limitations on the receipt of tuition and fee exemptions at public institutions of higher education.

To Higher Education.

**HB 3632** (By Hamilton), Relating to the effect on local regulation of the use and sale of fireworks.

To Land and Resource Management.

**HB 3633** (By Legler), Relating to participation in retirement programs by certain employees.

To Pensions, Investments, and Financial Services.

**HB 3634** (By Villarreal), Relating to including additional territory in the state in a junior college district.

To Higher Education.

**HB 3635** (By Dutton), Relating to the registration of and taxes and fees imposed on sexually oriented businesses; providing a civil penalty.

To Licensing and Administrative Procedures.

**HB 3636** (By Dutton), Relating to safety measures for culverts or other similar flood or drainage systems maintained by governmental entities.

To Urban Affairs.

**HB 3637** (By S. Miller), Relating to the regulation of equine dental technicians; providing penalties.

To Agriculture and Livestock.

**HB 3638** (By Hancock), Relating to telecommunications and the universal service fund.

To State Affairs.

**HB 3639** (By Pitts), Relating to state fiscal matters related to public and higher education.

To Appropriations.

**HB 3640** (By Pitts), Relating to the remittance and allocation of certain taxes and fees.

To Appropriations.

**HB 3641** (By Pitts), Relating to the remittance and allocation of gasoline and diesel fuel tax collections.

To Appropriations.

**HB 3642** (By Pitts), Relating to the dates on which franchise tax payments are due from certain taxable entities.

To Appropriations.

**HB 3643** (By Pitts), Relating to the remittance of mixed beverage taxes and taxes and fees on certain alcoholic beverages.

To Appropriations.

**HB 3644** (By Pitts), Relating to the creation and re-creation of funds and accounts in the state treasury, the dedication and rededication of revenue, and the exemption of unappropriated money from use for general governmental purposes.

To Appropriations.

**HB 3645** (By Pitts), Relating to state contributions made to fund the Teacher Retirement System of Texas and certain group benefits for retired school employees.

To Pensions, Investments, and Financial Services.

**HB 3646** (By Turner), Relating to the powers and duties of the Legislative Budget Board, including the receipt of reports by the board.

To State Affairs.

**HB 3647** (By Turner), Relating to directing payment, after approval, of certain miscellaneous claims and judgments against the state out of funds designated by this Act; making appropriations.

To Appropriations.

**HB 3648** (By Otto), Relating to state fiscal matters related to the judiciary.

To Appropriations.

**HB 3649** (By Otto), Relating to state fiscal matters related to law enforcement and criminal justice.

To Appropriations.

**HB 3650** (By Otto), Relating to cash payments provided to an inmate released on parole, mandatory supervision, or conditional pardon from the Texas Department of Criminal Justice.

To Appropriations.

**HB 3651** (By Otto), Relating to the appropriation of certain revenue for information technology projects.

To Appropriations.

**HB 3652** (By Otto), Relating to handling fees imposed by the comptroller for processing unclaimed property.

To Appropriations.

**HB 3653** (By Otto), Relating to the registration fee and registration renewal fee for lobbyists.

To Appropriations.

**HB 3654** (By Otto), Relating to the review of certain documents by the attorney general; imposing certain fees.

To Appropriations.

**HB 3655** (By Otto), Relating to the State Bar of Texas membership dues and minimum continuing legal education requirements for an attorney employed by the office of the attorney general.

To Appropriations.

**HB 3656** (By Otto), Relating to reimbursement to a county for payment to a person who reports for jury service.

To Appropriations.

**HB 3657** (By Otto), Relating to the collection of certain fees by the Commission on Jail Standards.

To Appropriations.

**HB 3658** (By Otto), Relating to the judicial and court personnel training fund.

To Appropriations.

**HB 3659** (By Otto), Relating to contributions by public retirement systems to the State Pension Review Board fund.

To Appropriations.

**HB 3660** (By Otto), Relating to requiring the secretary of state to publish the session laws of the legislature electronically and eliminating certain requirements for publishing and distributing volumes of the session laws.

To Appropriations.

**HB 3661** (By Otto), Relating to abolishing the state boot camp program.
To Appropriations.

**HB 3662** (By Otto), Relating to fees for process server certification.
To Appropriations.

**HB 3663** (By Otto), Relating to the use and management of the Texas preservation trust fund account.

To Appropriations.

**HB 3664** (By Otto), Relating to the calculation of the amount of state aid to be received by community supervision and corrections departments.

To Appropriations.

**HB 3665** (By Otto), Relating to state fiscal matters related to general government.

To Appropriations.

**HB 3666** (By Zerwas), Relating to state fiscal matters related to health and human services and state agencies administering health and human services programs.

To Appropriations.

**HB 3667** (By Peña), Relating to the establishment and administration of an employment verification compliance program, deterring the use of unauthorized foreign workers, imposing powers and duties on executive agencies, and providing for remedies.

To State Affairs.

**HB 3668** (By Callegari), Relating to certificates of public convenience and necessity for water or sewer services.

To Natural Resources.

**HB 3669** (By Carter), Relating to the funding for and user friendliness of the website operated by the Public Utility Commission of Texas to provide information regarding the power to choose retail electric providers.

To State Affairs.

**HB 3670** (By Carter), Relating to accreditation standards for child care training.

To Human Services.

**HB 3671** (By W. Smith), Relating to the development, financing, construction, and operation of toll projects.

To Transportation.

**HB 3672** (By Dutton), Relating to requiring the comptroller to provide notice to a person who will be regarded as a retailer or seller for purposes of sales and use tax.

To Ways and Means.

**HB 3673** (By Dutton), Relating to offers of settlement in civil cases.

To Judiciary and Civil Jurisprudence.

**HB 3674** (By Eiland), Relating to the use of unsworn declarations.

To Judiciary and Civil Jurisprudence.

**HB 3675** (By Eiland), Relating to assessments and taxes on subscription video service providers.

To State Affairs.

**HB 3676** (By Brown), Relating to procuring contracts for certain professional services by a governmental entity.

To State Affairs.

**HB 3677** (By Brown), Relating to the administrative fee charged by the Department of Information Resources to other entities for the purchase of certain commodity items.

To State Affairs.

**HB 3678** (By Brown), Relating to implementation of certain cost-saving measures for the Medicaid vendor drug program and child health plan program prescription drug benefits.

To Public Health.

**HB 3679** (By Martinez Fischer), Relating to a prohibition on the marketing of foods of minimal nutritional value on public school campuses.

To Public Health.

**HB 3680** (By Martinez Fischer), Relating to the types of food or beverages that may be sold to students on public school campuses.

To Public Health.

**HB 3681** (By Martinez Fischer), Relating to assessments of physical fitness of public school students and campus ratings based on that assessment.

To Public Education.

**HB 3682** (By Martinez Fischer), Relating to physical activity requirements applicable to public school students.

To Public Education.

**HB 3683** (By Martinez Fischer), Relating to hearings and appeals in connection with the insurance commissioner's disapproval of a property and casualty insurance rate.

To Insurance.

**HB 3684** (By Callegari), Relating to evaluating and providing for efficient government resource allocation.

To Government Efficiency and Reform.

**HB 3685** (By Aliseda), Relating to the collection and distribution of sales taxes and the hours of operation for certain retailers.

To Ways and Means.

**HB 3686** (By Brown), Relating to allowing certain identifiable communities in the extraterritorial jurisdiction of a municipality to incorporate.

To County Affairs.

**HB 3687** (By Perry), Relating to the closed formulary for workers' compensation pharmaceutical benefits.

To State Affairs.

**HB 3688** (By Hochberg), Relating to the collection of contributions by the Teacher Retirement System of Texas.

To Pensions, Investments, and Financial Services.

**HB 3689** (By Oliveira), Relating to the partnership agreement between The University of Texas at Brownsville and the Texas Southmost College District.

To Higher Education.

**HB 3690** (By Anchia), Relating to the boundaries and financing of a public improvement district.

To Urban Affairs.

**HB 3691** (By Gallego), Relating to the provision of certain programs and services by a community supervision and corrections department.

To Corrections.

**HB 3692** (By Gallego), Relating to peace officer interaction with persons with mental illness and to a person's incompetency to stand trial.

To Criminal Jurisprudence.

**HB 3693** (By Gallego), Relating to the supplemental compensation of certain local administrative district judges.

To Judiciary and Civil Jurisprudence.

**HB 3694** (By Gallego), Relating to certain requirements of sports officials by the University Interscholastic League.

To Public Education.

**HB 3695** (By Gallego), Relating to confidentiality of Class C misdemeanor records related to the conviction of a child.

To Criminal Jurisprudence.

**HB 3696** (By Gallego), Relating to concurrent state and federal legislative jurisdiction over units of the national park system in this state.

To Culture, Recreation, and Tourism.

**HB 3697** (By Gallego), Relating to the establishment of a Service to Texas requirement for undergraduate students at public institutions of higher education and the establishment of a Service to Texas program.

To Higher Education.

**HB 3698** (By Gallego), Relating to jurisdiction of district courts and criminal district courts in certain criminal proceedings.

To Criminal Jurisprudence.

**HB 3699** (By Turner), Relating to the disposal of nonparty compact low-level radioactive waste at the Texas Low-Level Radioactive Waste Disposal Compact waste disposal facility.

To Environmental Regulation.

**HB 3700** (By Larson), Relating to the conversion of a nontolled state highway or segment of the state highway system to a toll project.

To Transportation.

**HB 3701** (By Fletcher), Relating to the confidentiality of certain personal information.

To State Affairs.

**HB 3702** (By Raymond), Relating to sales and use tax imposed by boards of certain municipal transit departments.

To Ways and Means.

**HB 3703** (By Raymond), Relating to the use of certain aviation and air transportation-related tax proceeds for aviation facilities development.

To Ways and Means.

**HB 3704** (By Brown), Relating to the taxation of political subdivisions of the state.

To Ways and Means.

**HB 3705** (By Hamilton), Relating to the creation of the disaster reconstruction coordination office within the governor's office; creating the disaster contingency account.

To Homeland Security and Public Safety.

**HB 3706** (By Callegari), Relating to measures in anticipation of federal legislation that would recognize the sovereignty of the states by providing each state with autonomy in determining whether and to what extent certain federal programs or mandates would apply in that state.

To Select State Sovereignty.

**HB 3707** (By Christian), Relating to the waiting period for certain spouses filing for divorce on the grounds of insupportability.

To Judiciary and Civil Jurisprudence.

**HB 3708** (By Hochberg), Relating to the Early High School Graduation Scholarship Program.

To Public Education.

**HB 3709** (By Hochberg), Relating to reducing costs in public school extracurricular activities.

To Public Education.

**HB 3710** (By Lewis), Relating to filling vacancies in appellate judicial offices by appointment, partisan elections for all judicial offices, and nonpartisan elections for the retention or rejection for all judicial offices.

To Judiciary and Civil Jurisprudence.

**HB 3711** (By D. Howard), Relating to requirements for the coordinated admission program at The University of Texas at Austin.

To Higher Education.

**HB 3712** (By Giddings), Relating to the reporting of information by a school district relating to certain offenses committed by certain students.

To Public Education.

**HB 3713** (By Giddings), Relating to a grant program to promote good citizenship.

To Public Education.

**HB 3714** (By McClendon), Relating to the regulation of controlled substances and the establishment of an electronic system for monitoring controlled substances; providing criminal penalties.

To Public Health.

**HB 3715** (By Workman), Relating to standards applicable to propane distribution system retailers.

To Energy Resources.

**HB 3716** (By Guillen), Relating to the evaluation of applications for certain financial assistance administered by the Texas Department of Housing and Community Affairs.

To Urban Affairs.

**HB 3717** (By Guillen), Relating to fees for emergency first response service provided by certain counties.

To Border and Intergovernmental Affairs.

**HB 3718** (By Gutierrez), Relating to the sale of real property.

To Business and Industry.

**HB 3719** (By Gutierrez), Relating to truancy and the jurisdiction of justice courts

To Public Education.

**HB 3720** (By Turner), Relating to the transfer of housing funds from the Texas Department of Housing and Community Affairs to the Texas Veterans Commission.

To Defense and Veterans' Affairs.

**HB 3721** (By Patrick), Relating to formula funding for certain semester credit hours earned for dual course credit.

To Higher Education.

**HB 3722** (By Guillen), Relating to the boater education program at the parks and wildlife department.

To Culture, Recreation, and Tourism.

**HB 3723** (By Guillen), Relating to optional fees on the registration of a vehicle imposed by a county.

To Transportation.

**HB 3724** (By Guillen), Relating to the Chronic Kidney Disease Task Force

To Public Health.

**HB 3725** (By Guillen), Relating to the preservation and maintenance of the Alamo by the Texas Historical Commission.

To Culture, Recreation, and Tourism.

**HB 3726** (By Guillen), Relating to an annual report of the private entity granted care and custody of the Alamo.

To Culture, Recreation, and Tourism.

**HB 3727** (By Hilderbran), Relating to the computation of the property tax on temporary production aircraft.

To Ways and Means.

**HB 3728** (By Jackson), Relating to the composition of and powers and duties of the Commission on Jail Standards.

To County Affairs.

**HB 3729** (By Martinez), Relating to the expansion of extraterritorial jurisdiction in certain municipalities.

To Land and Resource Management.

**HB 3730** (By Martinez), Relating to the department of transportation's privatization of maintenance contracts.

To Transportation.

**HB 3731** (By Martinez), Relating to the accommodation of bicycles, pedestrians, and mass transit riders on streets and highways.

To Transportation.

**HB 3732** (By Martinez), Relating to the authority of a regional mobility authority to enter into a comprehensive development agreement.

To Transportation.

**HB 3733** (By Martinez), Relating to the creation of Texas Task Force 3 in the Rio Grande Valley.

To Homeland Security and Public Safety.

**HB 3734** (By Martinez), Relating to certain comprehensive development agreements of the Texas Department of Transportation.

To Transportation.

**HB 3735** (By Martinez), Relating to the composition of the Texas Commission on Fire Protection and the disposition of certain fees collected by the commission.

To Urban Affairs.

**HB 3736** (By Martinez), Relating to appointment of a department head of a fire or police department in certain municipalities.

To Urban Affairs.

**HB 3737** (By Martinez), Relating to broadcasting of athletic competitions sponsored or sanctioned by the University Interscholastic League.

To Public Education.

**HB 3738** (By Martinez), Relating to the designation of the Mid Valley Airport as the disaster relief headquarters for the Rio Grande Valley.

To Homeland Security and Public Safety.

**HB 3739** (By Morrison), Relating to exempting the sale of certain property used for research and development from the sales tax.

To Ways and Means.

**HB 3740** (By Guillen), Relating to the preservation and maintenance of the Alamo and the financial accountability and transparency of persons granted care and custody over certain historic state real properties.

To Culture, Recreation, and Tourism.

**HB 3741** (By Brown), Relating to an intercollegiate athletics fee at Texas A&M University.

To Higher Education.

**HB 3742** (By Schwertner), Relating to the environmental review of certain transportation projects by the Texas Department of Transportation

To Transportation.

**HB 3743** (By Workman), Relating to the rights, powers, functions, and duties of the West Travis County Municipal Utility District No. 5.

To Natural Resources.

**HB 3744** (By V. Gonzales), Relating to the reimbursement methodology used for certain services provided to Medicaid recipients.

To Public Health.

**HB 3745** (By Eiland), Relating to the participation of certain retirees under the proportionate retirement program in the Texas Public School Employees Group Benefits Program.

To Pensions, Investments, and Financial Services.

**HB 3746** (By Frullo), Relating to providing resources designed to combat crimes against children, especially crimes regarding child exploitation and child pornography trafficking involving the Internet.

To Criminal Jurisprudence.

**HB 3747** (By McClendon), Relating to the selection of certain members of the board of trustees of the Teacher Retirement System of Texas.

To Pensions, Investments, and Financial Services.

**HB 3748** (By Phillips), Relating to creating the division of forensic services; abolishing the Texas Forensic Science Commission and transferring certain duties of the commission and the Department of Public Safety to the division of forensic services.

To Homeland Security and Public Safety.

**HB 3749** (By Oliveira), Relating to establishing certain rights of an owner of the surface estate in land who does not own any interest in the mineral estate in the land in connection with the exploration for and production of the minerals.

To Energy Resources.

**HB 3750** (By Dutton), Relating to the waiver of sovereign immunity of a school district for certain claims arising from the provision of community education child care services.

To Judiciary and Civil Jurisprudence.

**HB 3751** (By Harper-Brown), Relating to the presiding officers of the early voting ballot board and a recount committee used in certain elections.

To Elections.

**HB 3752** (By Harper-Brown), Relating to a financial institution's action regarding certain withdrawals and deposits.

To Pensions, Investments, and Financial Services.

**HB 3753** (By P. King), Relating to the employment of physicians and other staff by certain municipal hospital authorities.

To Urban Affairs.

**HB 3754** (By Hilderbran), Relating to the powers and duties of the Office of Public Utility Counsel.

To State Affairs.

**HB 3755** (By Cook), Relating to management of certain metropolitan rapid transit authorities.

To Transportation.

**HB 3756** (By Carter), Relating to imposing liens for labor and materials provided by interior designers.

To Business and Industry.

**HB 3757** (By Callegari), Relating to the coordination of rural and small community initiatives.

To Economic and Small Business Development.

**HB 3758** (By Giddings), Relating to the issuance of citations to certain public school students on school property during regular school hours or on a vehicle owned or operated by a county or independent school district.

To Public Education.

**HB 3759** (By White), Relating to the criminal offenses for which and the circumstances under which certain communication devices may be detected and communications may be intercepted.

To Criminal Jurisprudence.

**HB 3760** (By Oliveira), Relating to home loans that are not federally related mortgage loans; providing civil penalties.

To Pensions, Investments, and Financial Services.

**HB 3761** (By Marquez), Relating to the treatment of and services provided to certain inmates in the custody of the Texas Department of Criminal Justice, to the provision of medical care to inmates in the custody of the department, to the release of inmates on parole and other forms of supervised release, and to certain other matters affecting the department.

To Corrections.

**HB 3762** (By Marquez), Relating to creating a transparent and deliberative process by which execution procedures are determined.

To Corrections.

**HB 3763** (By Marquez), Relating to the release of inmates in the custody of the Texas Department of Criminal Justice on parole or other forms of supervised release.

To Corrections.

**HB 3764** (By Marquez), Relating to the policies of the Texas Department of Criminal Justice regarding the use of, and treatment of inmates confined in, administrative segregation.

To Corrections.

**HB 3765** (By Pitts), Relating to the date on which certain payments are made by the state under the Foundation School Program.

To Appropriations.

**HB 3766** (By Pitts), Relating to the use of proceeds from a county jail's commissary operation.

To Appropriations.

**HB 3767** (By Pitts), Relating to the exemption from the sales and use tax for tangible personal property or a taxable service that is resold or otherwise transferred.

To Appropriations.

**HB 3768** (By Peña), Relating to a lien on a cause of action or claim of an individual who receives emergency medical services in certain counties.

To Judiciary and Civil Jurisprudence.

**HB 3769** (By Smithee), Relating to allowing driver education courses to be delivered by course providers.

To Public Education.

**HB 3770** (By Burkett), Relating to unstructured activity requirements for public elementary school students.

To Public Education.

**HB 3771** (By Harper-Brown), Relating to the authority of the Texas Department of Transportation to approve safety standards for high-speed rail; authorizing a fee.

To Transportation.

**HB 3772** (By Pitts), Relating to tax records.

To Appropriations.

**HB 3773** (By Pitts), Relating to the duties of the comptroller of public accounts to audit the Office of Court Administration's Collection Improvement Program.

To Appropriations.

**HB 3774** (By Pitts), Relating to the administration, collection, enforcement of various taxes and fees; providing penalties.

To Appropriations.

**HB 3775** (By Guillen), Relating to deer breeder operations; providing penalties.

To Culture, Recreation, and Tourism.

**HB 3776** (By Guillen), Relating to deer identification and deer breeder operations.

To Culture, Recreation, and Tourism.

**HB 3777** (By Gallego), Relating to collection, storage, and distribution of criminal history record information; providing penalties.

To Criminal Jurisprudence.

**HB 3778** (By Guillen), Relating to deer removal, destruction, and deer breeder operations; providing penalties.

To Culture, Recreation, and Tourism.

**HB 3779** (By Guillen), Relating to licensing of deer breeder operations; providing penalties.

To Culture, Recreation, and Tourism.

**HB 3780** (By Alonzo), Relating to compliance with rules, bylaws, and written policies adopted by a school district's board of trustees.

To Public Education.

**HB 3781** (By Naishtat), Relating to the maintenance by certain hospitals of records regarding certain uncompensated care costs.

To Public Health.

**HB 3782** (By Guillen), Relating to deer breeder operations; providing penalties.

To Culture, Recreation, and Tourism.

**HB 3783** (By Callegari), Relating to cost-saving and efficiency in government.

To Public Education.

**HB 3784** (By Callegari), Relating to the ethics and financial disclosure requirements and audits of certain governmental bodies.

To Government Efficiency and Reform.

**HB 3785** (By Callegari), Relating to a tax exemption for inactive oil and gas wells.

To Ways and Means.

**HB 3786** (By Craddick), Relating to the requirements for certain extensions of credit to consumers.

To Pensions, Investments, and Financial Services.

**HB 3787** (By Allen), Relating to the salary paid to certain professional employees of public schools.

To Public Education.

**HB 3788** (By Marquez), Relating to the authority of a county civil service commission to administer oaths and issue subpoenas; providing a penalty.

To County Affairs.

**HB 3789** (By Phillips), Relating to the development of toll projects through public-private partnerships.

To Transportation.

**HB 3790** (By Pitts), Relating to state fiscal matters.

To Appropriations.

**HB 3791** (By Pitts), Relating to the interest on certain tax refunds or credits.

To Appropriations.

**HB 3792** (By Burnam), Relating to municipal authority to regulate gas pipelines located within the municipality.

To Energy Resources.

**HB 3793** (By Phillips), Relating to the permissible uses of the state highway fund.

To Ways and Means.

**HB 3794** (By Burkett), Relating to disputes under insurance policies.

To Insurance.

**HB 3795** (By Elkins), Relating to authorized investments for governmental entities.

To Pensions, Investments, and Financial Services.

**HB 3796** (By Gallego), Relating to the composition of certain judicial districts.

To Judiciary and Civil Jurisprudence.

**HB 3797** (By Gallego), Relating to the validation of the creation, operation, and dissolution of, and certain acts related to, a venue project.

To Ways and Means.

**HB 3798** (By Martinez Fischer), Relating to the franchise tax, franchise tax rates and computation; alternative revenue sources and spending priorities for this state; certain taxes affecting businesses; making an appropriation; providing penalties.

To Ways and Means.

**HB 3799** (By S. Miller), Relating to timely filing of surplus lines policy; providing penalties.

To Insurance.

**HB 3800** (By Paxton), Relating to the licensing and regulation of professional fitness trainers; providing a penalty.

To Licensing and Administrative Procedures.

**HB 3801** (By S. Davis), Relating to the exception of certain personal information from disclosure under the public information law.

To State Affairs.

**HB 3802** (By S. Davis), Relating to liability of certain public utilities that allow recreational use of land that the public utility owns, occupies, or leases.

To Judiciary and Civil Jurisprudence.

**HB 3803** (By Phillips), Relating to the creation of the Cottonwood Municipal Utility District No. 2 of Grayson County; providing authority to impose a tax and issue bonds; granting a limited power of eminent domain.

To Natural Resources.

**HB 3804** (By Gallego), Relating to the creation of the Lajitas Utility District No. 1 of Brewster County; providing authority to impose taxes and issue bonds; granting a limited power of eminent domain.

To Natural Resources.

**HB 3805** (By Morrison), Relating to director elections and powers of the Texana Groundwater Conservation District.

To Natural Resources.

**HB 3806** (By Hardcastle), Relating to the authority of the board of directors of the Haskell County Hospital District to employ health care providers.

To County Affairs.

**HB 3807** (By Woolley), Relating to the option of providing electronic recordings of proceedings in the municipal court of record for the City of Houston.

To Judiciary and Civil Jurisprudence.

**HB 3808** (By T. King), Relating to fishing with certain archery equipment in certain counties.

To Culture, Recreation, and Tourism.

**HB 3809** (By Hardcastle), Relating to the authority of the board of directors of the Muenster Hospital District to employ physicians and other health care providers.

To County Affairs.

**HJR 12** (By Larson), Proposing a constitutional amendment providing that a member of the legislature or person holding a statewide elective office automatically vacates office on announcing a candidacy or becoming a candidate for another elective office before the final full year of the person's term of office.

To State Affairs.

**HJR 13** (By Legler), Proposing a constitutional amendment authorizing garnishment of wages for the recovery of fraudulently obtained unemployment benefits or of taxes or fees owed to the state.

To Economic and Small Business Development.

**HJR 14** (By Veasey), Proposing a constitutional amendment authorizing the legislature to create a social loan program.

To Human Services.

**HJR 15** (By Rodriguez), Proposing a constitutional amendment increasing the rates of taxes imposed on gasoline and diesel fuel, adjusting those rates annually for inflation, and dedicating certain revenue from those taxes to the design, construction, and maintenance of public roadways.

To Ways and Means.

**HJR 129** (By Naishtat), Proposing a constitutional amendment requiring a state senator or state representative to forfeit office on the final conviction of a felony.

To State Affairs.

**HJR 130** (By Branch), Meeting requirements of the United States Department of Education concerning federal student aid by naming private institutions of higher education in the State of Texas that are authorized to operate educational programs beyond secondary education, including programs leading to a degree or certificate.

To Higher Education.

**HJR 131** (By Rodriguez), Proposing a constitutional amendment allowing the expenditure of motor vehicle fuel taxes, registration fees, and federal reimbursement for those revenues for passenger rail, transit, and freight rail.

To Transportation.

**HJR 132** (By Landtroop), Proposing a constitutional amendment relating to the right to life beginning at fertilization.

To State Affairs.

**HJR 133** (By Gonzalez), Proposing a constitutional amendment authorizing a federally recognized Indian tribe in a county along the Texas-Mexico international border to conduct certain gaming activity on certain tribal lands.

To Licensing and Administrative Procedures.

**HJR 134** (By Oliveira), Proposing a constitutional amendment authorizing a county to regulate land development if approved by a majority vote in a countywide election.

To Land and Resource Management.

**HJR 135** (By Phillips), Proposing a constitutional amendment relating to an individual's or a religious organization's free exercise of religion.

To State Affairs.

**HJR 136** (By Price), Proposing a constitutional amendment providing that a legislator who is absent without excuse for an extended period during a legislative session vacates office and is not counted in determining a quorum of the applicable house of the legislature.

To State Affairs.

**HJR 137** (By Ritter), Proposing constitutional amendments relating to the funding of certain water projects.

To Natural Resources.

**HJR 140** (By Hunter), Proposing a constitutional amendment on the length of legislative terms and number of years a person may serve in the legislature.

To State Affairs.

**HJR 144** (By Raymond), Proposing a constitutional amendment regarding the dedication by general law of revenue of or money received by this state and money held in or deposited to an account or fund inside or outside the state treasury and the authorized expenditure or appropriation of revenue or money dedicated by general law.

To Ways and Means.

**HJR 145** (By Raymond), Proposing a constitutional amendment providing honesty in state taxation.

To Ways and Means.

**HJR 146** (By V. Taylor), Proposing a constitutional amendment to repeal the provision that requires the automatic resignation of certain county, municipal, or district officeholders if they become candidates for another office.

To Elections.

**HJR 147** (By Hamilton), Proposing a constitutional amendment authorizing the legislature to legalize and regulate the conduct of gaming in this state and authorizing the conduct of gaming by certain federally recognized Indian tribes.

To Licensing and Administrative Procedures.

**HJR 148** (By Ritter), Proposing a constitutional amendment relating to county delegation of authority regarding the disposition of county school lands and proceeds of a county permanent school fund.

To Public Education.

**HJR 149** (By Larson), Proposing a constitutional amendment to require the comptroller of public accounts to make a state revenue report after the first year of a state fiscal biennium and the governor to call a special session of the legislature if actual state revenue for that fiscal year was at least five percent less than projected revenue.

To Appropriations.

**HJR 150** (By Kleinschmidt), Proposing a constitutional amendment authorizing the legislature to provide for a four-year term for the chief appraiser of an appraisal district.

To Ways and Means.

**HJR 151** (By Thompson), Proposing a constitutional amendment authorizing the operation of casino games in this state by federally recognized Indian tribes on certain land.

To Licensing and Administrative Procedures.

**HJR 152** (By Thompson), Proposing a constitutional amendment authorizing the operation of casino games in this state by federally recognized Indian tribes on certain land and by licensed operators at horse and greyhound racetracks and licensed locations.

To Licensing and Administrative Procedures.

**HJR 153** (By Villarreal), Proposing a constitutional amendment authorizing the legislature to pass laws relating to junior college districts, including laws for the assessment and collection of taxes by a junior college district without the necessity of an election.

To Higher Education.

**HJR 154** (By Dutton), Proposing a constitutional amendment increasing the number of state senators from 31 to 41.

To State Affairs.

**HJR 155** (By Lewis), Proposing a constitutional amendment for filling vacancies in appellate judicial offices by appointment, for partisan elections for all judicial offices, and for subsequent nonpartisan retention elections for all judicial offices.

To Judiciary and Civil Jurisprudence.

**HJR 156** (By C. Howard), Proposing a constitutional amendment to require that taxation be fair and equal and that the full cash value of property, calculated only when property is purchased, constructed, or exchanged, be used for purposes of ad valorem taxation.

To Ways and Means.

**HJR 157** (By Phillips), Proposing a constitutional amendment limiting the purposes for which revenue from taxes on motor fuels and lubricants may be used.

To Ways and Means.

Pursuant to Rule 1, Section 4 of the House Rules, the chair corrects the referral of the following bills and resolutions:

**HB 16** (By Riddle), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 112** (By Harless), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 186** (By Perry), Relating to requiring a voter to present proof of identification; creating a penalty.

To Elections.

**HB 239** (By Parker), Relating to the offense of paying or receiving certain forms of compensation for facilitating the registration of voters; providing criminal penalties.

To Elections.

**HB 248** (By Chisum), Relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

To Elections.

**HB 250** (By Hilderbran), Relating to requiring a voter to present proof of identification; providing penalties.

To Elections.

**HB 369** (By Hochberg), Relating to procedures concerning verification of certain information submitted in a voter registration application.

To Elections.

**HB 401** (By T. Smith), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 539** (By C. Anderson), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 624** (By Bonnen), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 715** (By Hochberg), Relating to automatic voter registration on issuance or change of a driver's license or identification card by the Department of Public Safety.

To Elections.

**HB 1596** (By Isaac), Relating to documentation acceptable as proof of identification for voting.

To Elections.

**HB 1912** (By Bonnen), Relating to transferring the Texas Department of Rural Affairs to the Office of Rural Affairs within the Department of Agriculture and abolishing the board of the Texas Department of Rural Affairs.

To Government Efficiency and Reform.

## MESSAGES FROM THE SENATE

The following messages from the senate were today received by the house:

**Message No. 1**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Wednesday, March 23, 2011

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**SB 240**                 Huffman
Relating to examination requirements for certain applicants for a license to practice medicine.

**SB 313**                 Seliger
Relating to priority groundwater management areas.

**SB 411**                 Estes
Relating to the amount of wine certain wineries may sell directly to consumers.

**SB 461**                 Williams
Relating to the design and issuance of license plates for United States paratroopers.

**SB 493**                 Fraser
Relating to the idling of motor vehicles.

**SB 576**                 Eltife
Relating to reports filed with the comptroller regarding certain alcoholic beverage sales; providing a penalty.

**SB 777**                 Williams
Relating to re-creating the scholarship trust fund for fifth-year accounting students as a trust fund outside the state treasury.

**SB 832**                 Rodriguez

Relating to voter eligibility and registration in El Paso County Water Improvement District No. 1.

Respectfully,
Patsy Spaw
Secretary of the Senate

**Message No. 2**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Wednesday, March 23, 2011 - 2

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**SB 24**                Van de Putte
Relating to the prosecution, punishment, and certain criminal and civil consequences of offenses involving or related to the trafficking of persons and to certain protections for victims of those offenses.

**SB 144**                West
Relating to allowing a person who successfully completes a term of deferred adjudication community supervision to be eligible for a pardon.

**SB 181**                Shapiro
Relating to the calculation and reporting of water usage by municipalities and water utilities for state water planning and other purposes.

**SB 248**                Estes
Relating to the regulation of public grain warehouse operators.

**SB 329**                Watson
Relating to the sale, recovery, and recycling of certain television equipment; providing administrative penalties.

**SB 390**                Hegar
Relating to the continuing issuance of freshwater fishing stamps by the Parks and Wildlife Department.

**SB 524**                Hegar
Relating to the issuance of certain permits for the movement of oversize or overweight vehicles.

**SB 801**                Hegar
Relating to the authority of the seawall commission in Matagorda County to build and maintain recreational facilities near the seawall.

**SJR 9**                    West

Proposing a constitutional amendment authorizing the governor to grant a pardon to a person who successfully completes a term of deferred adjudication community supervision.

Respectfully,
Patsy Spaw
Secretary of the Senate

---

## APPENDIX

### STANDING COMMITTEE REPORTS

Favorable reports have been filed by committees as follows:

**March 22**

Appropriations - **HB 4**, **HB 275**

Border and Intergovernmental Affairs - **HB 397**, **HCR 68**

Defense and Veterans' Affairs - **HB 447**

Elections - **HB 174**, **HB 185**, **HB 1570**

Government Efficiency and Reform - **HB 682**

Judiciary and Civil Jurisprudence - **HB 149**, **HB 345**, **HB 372**, **HB 713**

State Affairs - **HB 12**, **HB 197**, **HB 804**

Ways and Means - **HB 645**, **HB 658**, **HB 843**, **HB 1040**

### ENGROSSED

**March 22** - **HB 314**

### ENROLLED

**March 22** - **HCR 47**

# TEXAS SECRETARY of STATE
## JOHN STEEN

# Acceptable Forms of Identification for Voting in Texas





TEX00310551

**T E X A S   S E C R E T A R Y   of   S T A T E**

**J O H N   S T E E N**

# Acceptable IDs

There are 7 forms of acceptable ID:
- — Texas driver license issued by the Texas Department of Public Safety (DPS)
- — Texas Election Identification Certificate issued by DPS
- — Texas personal identification card issued by DPS
- — Texas concealed handgun license issued by DPS
- — United States military identification card containing the person's photograph
- — United States citizenship certificate containing the person's photograph
- — United States passport.



TEX00310552

**TEXAS SECRETARY of STATE**
JOHN STEEN

# Texas Driver's License



Photograph: Texas law requires the ID to have a photograph of the voter.

Expiration Date: Per §63.0101 must be valid, or expired within 60 days.

Name: If the voter's name on list of registered voters in the precinct, does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.



TEX00310553

# TEXAS SECRETARY of STATE
## JOHN STEEN

# Texas Driver's License – Under 21



**Photograph**: Texas law requires the ID to have a photograph of the voter.

**Expiration Date**: Per §63.0101 must be valid, or expired within 60 days.

**Name**: If the voter's name on list of registered voters in the precinct, does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.

TEX00310554

# TEXAS SECRETARY of STATE
## JOHN STEEN

# Election Identification Certificate (EIC)



**Photograph**: Texas law requires the ID to have a photograph of the voter.

**Expiration Date**: Per §63.0101 must be valid, or expired within 60 days.

**Name**: If the voter's name on list of registered voters in the precinct, does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.

12/9/2013      Texas Secretary of State Elections Division      5

TEX00310555

TEXAS SECRETARY of STATE
JOHN STEEN

# Texas Personal Identification Card



**Photograph:** Texas law requires the ID to have a photograph of the voter.

**Expiration Date:** Per §63.0101 must be valid, or expired within 60 days.

Name: If the voter's name on list of registered voters in the precinct, does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.



# DPS Receipts

LOCATION 046
TIME STAMP 16:22:19
DATE STAMP 04/03/2013

ORGAN DONOR N
VOTER REGISTRATION  N

RECEIPT NUMBER: 40SDLA795205390



TEXAS DEPARTMENT OF PUBLIC SAFETY
TEMPORARY IDENTIFICATION CARD VALID UNTIL 07/16/2013

DL SERIAL NUMBER 36309744   CARD TYPE ID

COMMUNICATION IMPEDIMENT

NAME  SAMPLE
IMA TEST

ADDRESS
1234 ANYWHERE STREET
ANYWHERE, TX 78755

DATE OF BIRTH 11/21/1954   EXPIRATION DATE 11/21/2019
SEX M   HEIGHT 5'01"   ISSUANCE DATE 04/03/2013
EYE COLOR BRO

SIGNATURE _____

MAILING ADDRESS
1234 ANYWHERE STREET
ANYWHERE, TX 78755

EMPLOYEE _____

- For driver license related questions, please call 512-424-2600 or refer to the DPS website at www.dps.texas.gov or at www.texas.gov
- Your DL/ID Card will be processed and mailed within 30-60 days
- You must continue to carry this Temporary Permit until your new card is received
- For roadside assistance related to the following issues, please call 1-800-525-5555
  - Stranded with car problems
  - Hazardous road conditions
  - Debris in the roadway

EQUAL OPPORTUNITY EMPLOYER
COURTESY · SERVICE · PROTECTION

Page 1



TEX00310557

**TEXAS SECRETARY of STATE**

**JOHN STEEN**

# DPS Receipts

- Receipts are issued at DPS locations when you apply for a **driver's license, identification card, or EIC.**

- They are printed on letter sized paper.

- They are used until real card is received by individual in the mail.



TEX00310558

**TEXAS SECRETARY of STATE**

**JOHN STEEN**

# Concealed Handgun License



**Photograph**: Texas law requires the ID to have a photograph of the voter.

**Expiration Date**: Per §63.0101 must be valid, or expired within 60 days.

**Name**: If the voter's name on list of registered voters in the precinct, does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.



TEX00310559

**TEXAS  SECRETARY  of  STATE**

**JOHN  STEEN**

# U.S. Military Identification Cards

There are FOUR acceptable types of military ID cards:

1. Department of Defense (DoD) Common Access Card (CAC)
2. Uniformed Services ID Cards
3. DoD Civilian Retiree Cards
4. Veterans Affairs ID Cards



TEX00310560

# TEXAS SECRETARY of STATE
## JOHN STEEN

# DoD Common Access Card "CAC"



**NOTE**: The seals to the right of the picture will change according to branch of service.

TEX00310561

**TEXAS SECRETARY of STATE**
**JOHN STEEN**

# Voting in Texas with a CAC



Photograph: Texas law requires the ID to have a photograph of the voter.

Expiration Date: Per §63.0101 must be valid, or expired within 60 days.

Name: Per §63.001(c) if the voter's name appears on the list of registered voters in the precinct, but does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.



TEX00310562

TEXAS SECRETARY of STATE
JOHN STEEN

# Exception



- CACs with a blue bar across the name signify that the cardholder is a non-U.S. citizen, and <u>may not</u> be a qualified voter.

- Contractors will have a green bar, which will be sufficient for use if other qualifications are met.

TEX00310563

**TEXAS SECRETARY of STATE**

**JOHN STEEN**

# Uniformed Services ID Cards

- There are four versions of Uniformed Services ID Cards. All look similar, but are issued in four different colors.





TEX00310564

# TEXAS SECRETARY of STATE
## JOHN STEEN

# Voting in Texas with Uniformed Services ID Cards

Photograph: Texas law requires the ID to have a photograph of the voter.

Expiration Date: Per §63.0101 must be valid, or expired within 60 days. **However, not all cards expire-some will say "INDEF" for indefinitely.**



Name: Per §63.001(c) if the voter's name appears on the list of registered voters in the precinct, but does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.



12/9/2013     **Texas Secretary of State Elections Division**     15

TEX00310565

# TEXAS SECRETARY of STATE
## JOHN STEEN

# Uniformed Services ID Cards



Green – Generally for members of the Individual Ready Reserves and Inactive National Guard.



Blue – Generally for retirees, and members on Disability Retired Lists.



Pink – Generally for retired members of the Reserves and National Guard under the age of 60, and certain dependents.



Orange – Generally for certain dependents (active duty), Medal of Honor recipients, disabled veterans, and others.



TEX00310566

**TEXAS SECRETARY of STATE**

**JOHN STEEN**

# DoD Civilian Retiree Cards



Photograph: Texas law requires the ID to have a photograph of the voter.

Name: Per §63.001(c) if the voter's name appears on the list of registered voters in the precinct, but does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.

Expiration Date: Per §63.0101 must be valid, or expired within 60 days.

TEX00310567

# TEXAS SECRETARY of STATE
## JOHN STEEN

# Veteran Affairs ID Cards



Photograph: Texas law requires the ID to have a photograph of the voter.

Name: Per §63.001(c) if the voter's name appears on the list of registered voters in the precinct, but does not match exactly to the ID provided, a "Substantially Similar Name Affidavit" must be completed by the voter.

Veteran Affairs IDs do not expire.

TEX00310568

## TEXAS SECRETARY of STATE
### JOHN STEEN

# U.S. Certificate of Citizenship



REMEMBER – Certificates of Citizenship do not expire.



TEX00310569

**TEXAS SECRETARY of STATE**

**JOHN STEEN**

# U.S. Certificate of Naturalization



REMEMBER – Certificates of Naturalization do not expire.



TEX00310570

**T E X A S   S E C R E T A R Y   o f   S T A T E**

J O H N   S T E E N

# U.S. Passport







TEX00310571

**TEXAS SECRETARY of STATE**
**JOHN STEEN**

# U.S. Passport Card



- Allows entry from Canada, Mexico, the Caribbean, and Bermuda at land border crossings or sea ports-of-entry.
- Wallet Size.



TEX00310572

# T E X A S   S E C R E T A R Y   of   S T A T E
## J O H N   S T E E N

# Permanent Exemption

If a voter has applied for and received a permanent exemption to the photo ID requirement, they will provide a voter registration certificate with an (E) notation.



**NOTE**: Designation of (E) next to VUID Number.

Example: **1197099876 (E).**

---

12/9/2013          Texas Secretary of State Elections Division          23

TEX00310573

Contact Us       Find U.S. Embassies & Consulates

SEARCH 🔍

# Replace or Amend a Consular Report of Birth Abroad (CRBA)

**Only Those Listed Below Are Authorized to Replace or Amend a Consular Report of Birth:**

The individual whose birth is recorded on the document (if age 18 or older)

A parent (for minors under age 18) or legal guardian

An authorized government agency, or

A person with written authorization

On January 3, 2011, the Department of State began issuing a new Consular Report of Birth Abroad (FS-240). You may request multiple copies of this document at any time. As of December 31, 2010 the Certificate of Report of Birth (DS-1350) is no longer issued. All previously issued FS-240 and DS-1350 documents are still valid for proof of identity, citizenship and other legal purposes.

**All Consular Vital Records cost $50 per document.**

## To Replace a Consular Report of Birth Abroad (FS-240), You Must Submit:

1. A **notarized** written (or typed) request that includes all of the following information:

Full name of the child at birth

Any adoptive names of child

Child's date and place of birth

Any available passport information

Full names of parents

If known, the serial number of the FS-240

Signature of requester

Legal Guardian(s) Only: A copy of the court order granting guardianship

Requester's mailing address

Contact number of the requester

2. A copy of requester's **valid identification**

3. A **$50.00** check or money order

Make payable to **"Department of State"**

The Department will assume no responsibility for cash lost in the mail.

4. **Mail to:**

    Department of State

    Passport Vital Records Section

1150 Passport Services PL
6th Floor
Dulles, VA 20189-1150

*Overnight Delivery*

Send your request to our office using overnight delivery for quicker service. To have your records returned to you using overnight delivery, include an additional $14.85 with your request or a pre-paid envelope for the delivery service provider of your choice.

## To Amend a Consular Report of Birth Abroad (FS-240), You Must Submit:

1. A **notarized** written (or typed) request detailing the amendment or correction needed

2. Certified copies of documents **justifying the amendment** requested

Examples: foreign birth certificate, marriage certificate, court ordered adoption or name change, birth certificates of the adopting or legitimating parents, affidavits, etc.

3. The **original FS-240**, or

  A **replacement FS-240**, or

  A **notarized affidavit** stating the **whereabouts of the original FS-240**

4. A copy of requester's **valid identification**

5. A **$50.00** check or money order

Make payable to **"Department of State"**
The Department will assume no responsibility for cash lost in the mail.

6. **Mail to:**

  Department of State
  Passport Vital Records Section
  1150 Passport Services PL
  6th Floor
  Dulles, VA 20189-1150

Applicants who are requesting an Apostille to Consular Reports of Birth Abroad *only* should contact our office regarding this process.

*Overnight Delivery*

Send your request to our office using overnight delivery for quicker service. To have your records returned to you using overnight delivery, include an additional $14.85 with your request or a pre-paid envelope for the delivery service provider of your choice.

**To check the status of your FS-240 request,** call 202-485-8300.

## You may also be interested in obtaining:

Panama Canal Zone Birth Certificates and Death Certificates
Report of Death of an American Citizen Abroad
Certificate of Witness to Marriage (Outsite of the United States)

Privacy    Copyright & Disclaimer    FOIA    No FEAR Act Data    Office of the Inspector General    USA.gov    GobiernoUSA.gov

This site is managed by the Bureau of Consular Affairs, U.S. Department of State.

OMB No. 1615-0091 Expires 02/28/2015

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Instructions for Form N-565, Application for Replacement Naturalization/Citizenship Document**

## Instructions

Please read these instructions carefully to properly complete this form.  If you need more space to complete an answer, use a separate sheet of paper.  Write your name and Alien Registration Number (A-Number), if any, at the top of each sheet of paper and indicate the section and number of the item to which the answer refers.

### What Is the Purpose of This Form?

Form N-565, Application for Replacement Naturalization/ Citizenship Document, is used to apply to U.S. Citizenship and Immigration Services (USCIS) for a replacement of a:

1. Declaration of Intention;

2. Certificate of Naturalization;

3. Certificate of Citizenship;

4. Repatriation Certificate; or

5. To apply for a special certificate of naturalization as a U.S. citizen to be recognized by a foreign country.

**NOTE:** USCIS has no legal basis to change a name absent a legal document such as a marriage certificate, divorce decree, or a court ordered name change. In addition, USCIS is prohibited from making any changes to an incorrect date of birth if one has completed the naturalization/citizenship process and sworn to the facts, including the wrong date of birth.

### Who May File This Form N-565?

You may apply for a replacement:

1. If you have been issued a Certificate of Naturalization, Certificate of Citizenship, Declaration of Intention or Repatriation Certificate which has been lost, mutilated, or destroyed;

2. If your name has been changed by marriage or by court order after the document was issued and you seek a document in the new name; or

3. If you are a naturalized citizen desiring to obtain recognition as a citizen of the United States by a foreign country, you may apply for a special certificate for that purpose.

### General Instructions.

**Step 1. Fill Out the Form N-565.**

1. Type or print legibly in black ink.

2. If extra space is needed to complete any item, attach a continuation sheet, write your name  and Alien Registration Number (A-Number) (if any), at the top of each sheet of paper, indicate the Part and item number to which your answer refers, and date and sign each sheet.

3. Answer all questions fully and accurately. State that an item is not applicable with "N/A." If the answer is none, write "none."

**Step 2.  Initial Evidence Requirements.**

1. If you are applying for replacement of a mutilated document, you must attach the mutilated document.

2. If you are applying for a new document because your name has been changed, you must submit the original USCIS document and a copy of the marriage certificate or court order showing the name change.

3. If you are applying for a special certificate of naturalization, you must attach a copy of your naturalization certificate.

**Copies.** Unless specifically required that an original document be filed with an application, a legible photocopy may be submitted.  Original documents submitted when not required may remain a part of the record, and will not be automatically returned to you.

**Translations.** Any document containing a foreign language submitted to USCIS shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English.

███████████████

You **must** submit two identical color photographs of yourself taken within 30 days of the filing of this application. The photos must have a white to off-white background, be printed on thin paper with a glossy finish, and be unmounted and unretouched.

Passport-style photos must be 2" x 2." The photos must be in color with full face, frontal view on a white to off-white background. Head height should measure 1" to 1 3/8" from top of hair to bottom of chin, and eye height is between 1 1/8" to 1 3/8" from bottom of photo. Your head must be bare unless you are wearing a headdress as required by a religious denomination of which you are a member. However, your face must be visible. Using pencil or felt pen, lightly print your name and Alien Registration Number on the back of the photo.

███████████████

If you reside in **AL, AR, CT, DE, DC, FL, GA, KY, LA, MS, ME, MD, MA, NH, NJ, NM, NY, NC, SC, OK, PA, PR, RI, TN, TX, VA, VI, VT, WV**

Submit your N-565 to the USCIS Texas Service Center at:

> **DHS/USCIS**
> **Texas Service Center**
> **PO Box 851182**
> **Mesquite, TX 75185-1182**

If you reside in **AK, AZ, CA, CO, GU, HI, ID, IL, IN, IA, KS, MI, MN, MO, MT, NE, NV, ND, OH, OR, SD, UT, WA, WI, WY**

Submit your N-565 to the USCIS Nebraska Service Center at:

> **DHS/USCIS**
> **Nebraska Service Center**
> **PO Box 87565**
> **Lincoln, NE 68501-7565**

███████████████

The filing fee Form N-565 is **$345**, except there is no fee if you check **block 2 (d)** of **Part 2** of the form.

You may submit one check or money order for the application and other documents for which you are applying.

Use the following guidelines when you prepare your check or money order for the Form N-565 fee:

1. The check or money order must be drawn on a bank or other financial institution located in the United States and must be payable in U.S. currency; **and**

2. Make the check or money order payable to **U.S. Department of Homeland Security**.

NOTE: Please spell out U.S. Department of Homeland Security; do not use the initials "USDHS" or "DHS."

**How to Check If the Fees Are Correct**

Form N-565 fees and biometrics services fees are current as of edition date in the lower right corner of this page. However, because USCIS fees change periodically, you can verify if the fees are correct by following one of the steps below.

1. Visit the USCIS Web site at **www.uscis.gov**, select "FORMS," and check the appropriate fee; or

2. Telephone the USCIS National Customer Service Center at **1-800-375-5283** and ask for fee information. For TDD (hearing impaired) call: **1-800-767-1833**.

NOTE: If your Form N-565 requires payment of a biometrics services fee for USCIS to take your fingerprints, photograph or signature, you can use the same procedure to obtain the correct biometrics fee.

███████████████

**Rejection.** Any application that is not signed or not accompanied by the correct fee will be rejected with a notice that the application is deficient. You may correct the deficiency and resubmit the application. However, an application is not considered properly filed until accepted by USCIS.

**Initial processing.** Once the application has been accepted, it will be checked for completeness, including submission of the required initial evidence. If you do not completely fill out the form, or file it without required initial evidence, you will not establish a basis for eligibility and we may deny your application.

**Requests for more information or interview.** We may request more information or evidence or we may request that you appear at a USCIS office for an interview. We may also request that you submit the originals of any document. We will return these originals when they are no longer required.

**Decision.** If you establish eligibility for the document, your application will be approved and the document issued. Where appropriate, a special certificate of naturalization will be forwarded to the U.S. Department of State for delivery to a foreign government official. If your application is denied, you will be notified in writing of the reasons for the denial.

### USCIS Forms and Information

To ensure you are using the latest version of this form, visit the USCIS Web site at **www.uscis.gov** where you can obtain the latest USCIS forms and immigration-related information. If you do not have internet access, you may order USCIS forms by calling our toll-free number at **1-800-870-3676**. You may also obtain forms and information by telephoning our USCIS National Customer Service Center at **1-800-375-5283**. For TDD (hearing impaired) call: **1-800-767-1833**.

As an alternative to waiting in line for assistance at your local USCIS office, you can now schedule an appointment through the USCIS Internet-based system, **InfoPass**. To access the system, visit the USCIS Web site. Use the **InfoPass** appointment scheduler and follow the screen prompts to set up your appointment. **InfoPass** generates an electronic appointment notice that appears on the screen.

### Penalties

If you knowingly and willfully falsify or conceal a material fact or submit a false document with this request, we will deny the benefit you are filing for, and may deny any other immigration benefit.

In addition, you will face severe penalties provided by law, and may be subject to criminal prosecution.

### USCIS Privacy Act Statement

**AUTHORITIES:** The information requested on this form, and the associated evidence, is collected under the Immigration and Nationality Act, section 101, et seq.

**PURPOSE:** The primary purpose for providing the requested information on this form is to determine if you have established eligibility for the immigration benefit for which you are filing. The information you provide will be used to grant or deny the benefit sought.

**DISCLOSURE:** The information you provide is voluntary. However, failure to provide the requested information, and any requested evidence, may delay a final decision or result in denial of your form.

**ROUTINE USES:** The information you provide on this form may be shared with other Federal, State, local, and foreign government agencies and authorized organizations following approved routine uses described in the associated published system of records notices [DHS-USCIS-007 - Benefits Information System and DHS-USCIS-001 - Alien File (A-File) and Central Index System (CIS), which can be found at **www.dhs.gov/privacy**]. The information may also be made available, as appropriate, for law enforcement purposes or in the interest of national security.

### Paperwork Reduction Act

An agency may not conduct or sponsor an information collection and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. The public reporting burden for this collection of information is estimated at 55 minutes per response, including the time for reviewing instructions, completing and submitting the form. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: U.S. Citizenship and Immigration Services, Regulatory Coordination Division, Office of Policy & Strategy, 20 Massachusetts Avenue, NW, Washington, DC 20529-2140. OMB No. 1615-0091. **Do not mail your completed Form N-565 to this address.**

VSU - Remote Access Sites (A)

http://www.dshs.state.tx.us/vs/field/remote/aremote.shtm

Case 2:13-cv-00193  Document 669-22  Filed on 11/11/14 in TXSD  Page 179 of 404

PL469
9/2/2014
2:13-cv-00193



**Remote Access Offices - Anderson County through Austin County**

**Return to Remote Access list.**

## ANDERSON COUNTY

**ANDERSON COUNTY CLERK'S OFFICE**
500 North St., Rm 10
PALESTINE 75801
Phone (903) 723-7402

## ANDREWS COUNTY

**ANDREWS COUNTY CLERK**
215 N. W. 1st Street
P.O. Box 727
Andrews, TX 79714
Phone: (432) 524-1427

## ANGELINA COUNTY

**ANGELINA COUNTY CLERK'S OFFICE**
215 Lufkin Ave
LUFKIN 75901
Phone (936) 634-8339

## ARANSAS COUNTY

**Aransas County Clerks Office**
301 N. Live Oak Rm 101
Rockport, TX 78382
Phone: (361) 790-0122

## ARCHER COUNTY

**WICHITA FALLS/WICHITA COUNTY PUBLIC HEALTH DISTRICT**
1700 3rd Street
WICHITA FALLS 76301-2199
Phone (817) 761-7802

## ARMSTRONG COUNTY

No Remote Access site available at this time.

## ATASCOSA COUNTY

**ATASCOSA COUNTY CLERK'S OFFICE**
1 Courthouse Circle, Ste 102
JOURDANTON 78026
Phone (830) 769-2511

## AUSTIN COUNTY

**AUSTIN COUNTY CLERK'S OFFICE**
One East Main
BELLVILLE 77418
Phone (979) 865-5911 ext. 197

**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-Bailey County through Burnet County

**Return to Remote Access list.**

## BAILEY COUNTY

**BAILEY COUNTY CLERK**
300 S. First, Suite 200
MULESHOE 79347
Phone (806) 272-3044

## BANDERA COUNTY

No Remote Access site available at this time.

## BASTROP COUNTY

**Bastrop County Clerk**

803 Pine St # 112,

Bastrop, TX 78602

(512) 332-7234

## BAYLOR COUNTY

No Remote Access site available at this time.

## BEE COUNTY

**BEE COUNTY CLERK'S OFFICE**
105 West Corpus Street
Room 103
BEEVILLE 78102
Phone (361) 362-3245

## BELL COUNTY

**BELL COUNTY CLERK'S OFFICE**
P. O.Box 480
101 E. Central
BELTON 76513
Phone (254) 933-5165

**CITY OF TEMPLE**
City Registrar's Office
2 N. Main St.
P. O. Box 207
TEMPLE 76501
Phone (254) 298-5700

## BEXAR COUNTY

**SAN ANTONIO METROPOLITAN HEALTH DISTRICT**
George Whitfield Building
Municipal Records Facility
719 S. Santa Rosa

SAN ANTONIO 78205
Phone (210) 207-8815

## BLANCO COUNTY

No Remote Access site available at this time.

## BORDEN COUNTY

No Remote Access site available at this time.

## BOSQUE COUNTY

**BOSQUE COUNTY CLERK'S OFFICE**
P O Box 617
Meridian, TX 76665
Phone (254) 435-2201

## BOWIE COUNTY

**BOWIE COUNTY CLERK'S OFFICE**
P. O. Box 248
710 James Bowie Dr.
NEW BOSTON 75570
Phone (903) 628-6740

**CITY OF TEXARKANA**
P. O. Box 1967
220 TEXAS BLVD. (75501)
TEXARKANA 75504
Phone (903) 798-3900

## BRAZORIA COUNTY

**BRAZORIA COUNTY CLERK'S OFFICE**
111 E. Locust, Suite 2000
ANGLETON 77515
Phone (979) 864-1355

## BRAZOS COUNTY

**BRAZOS COUNTY CLERK**
P. O. Box 111
BRYAN 77806
Phone (979) 361-4126

**CITY OF BRYAN**
P. O. Box 1000
300 South Texas Ave.
BRYAN 77801
Phone (979) 209-5007

**CITY OF COLLEGE STATION**
1101 Texas Avenue S
COLLEGE STATION 77840
Phone (979) 764-3541

## BREWSTER COUNTY

**BREWSTER COUNTY CLERK'S OFFICE**
P. O. Box 119
ALPINE 79831
Phone (915) 837-3366

## BRISCOE COUNTY

**Briscoe County Clerks Office**
415 Main St.
SILVERTON 79257
Phone (806) 823-2134

## BROOKS COUNTY

No Remote Access site available at this time.

## BROWN COUNTY

**BROWN COUNTY CLERK'S OFFICE**
200 South Broadway
Brownwood, TX 76801
PHONE (915) 643-2594

## BURLESON COUNTY

**BURLESON COUNTY CLERK**
100 W. Buck St., Suite 203
CALDWELL 77836
Phone (979) 567-2329

## BURNET COUNTY

**BURNET COUNTY CLERK**
220 South Pierce St.
BURNET 78611
Phone (512) 756-5403

**Return to Remote Access list.**

*Last updated November 05, 2013*



Remote Access Offices-Caldwell County through Culberson County

**Return to Remote Access list.**

## CALDWELL COUNTY

**CALDWELL COUNTY CLERKS OFFICE**
110 S. Main Street
Lockhart, 78644
Phone (512) 398-1804

## CALHOUN COUNTY

No Remote Access site available at this time.

## CALLAHAN COUNTY

No Remote Access site available at this time.

## CAMERON COUNTY

CAMERON COUNTY CLERK'S OFFICE
964 East Harrison
P. O. Box 2178
BROWNSVILLE 78522-2178
Phone (956) 544-0817

CITY OF BROWNSVILLE
City Hall/Market Square
P. O. Box 911
BROWNSVILLE 78522-0911
Phone (956) 548-6001

CITY OF HARLINGEN
Vital Statistics
502 E. Tyler St
HARLINGEN, 78550
Phone (956) 216-5140
Fax (956) 428-0828

## CAMP COUNTY

No Remote Access site available at this time.

## CARSON COUNTY

CARSON COUNTY CLERK'S OFFICE

501 Main Street

P.O. Box 487

Panhandle, Texas 79068

806-573-3873

## CASS COUNTY

CITY OF ATLANTA

310 N. Louise
P.O.Box 669
ATLANTA 75551
(903) 796-7153

CASS COUNTY CLERK'S OFFICE
P. O. Box 449
Linded, Texas 75563
(903)756-5071

## CASTRO COUNTY

Castro County Clerks Office
100 East Bedford, Rm 101
Dimmitt 79027
Phone: (806) 647-3338

## CHAMBERS COUNTY

CITY OF BAYTOWN
Baytown Municipal Court
3120 N. Main
BAYTOWN 77521
Phone (281) 4251017

Chambers County

404 Washington.

Anahuac, Texas  77514

Phone: 409-267-2421

Fax: 409-267-8315

**www.co.chambers.tx.us**


## CHEROKEE COUNTY

CHEROKEE COUNTY CLERK'S OFFICE
P.O. Drawer 420
502 North Main
RUSK 75785
Phone (903) 683-2350

## CHILDRESS COUNTY

CHILDRESS COUNTY CLERK'S OFFICE
Courthouse Box 4
100 Avenue E NW
CHILDRESS 79201
Phone (940) 937-6143

## CLAY COUNTY

No Remote Access site available at this time.

## COCHRAN COUNTY

COCHRAN COUNTY CLERK'S OFFICE
Cochran County Courthouse, Room 102

MORTON 79346
Phone (806) 266-5450

## COKE COUNTY

No Remote Access site available at this time.

## COLEMAN COUNTY

COLEMAN COUNTY CLERK'S OFFICE
100 Live Oak St. Suite 105
Coleman Tx 76834

## COLLIN COUNTY

COLLIN COUNTY CLERK'S OFFICE
2300 Bloomdale Road, Suite 2104
McKINNEY 75071
Phone (972) 548-4154

DALLAS CITY HEALTH DEPARTMENT
City Hall
1500 Marilla, 1FN
DALLAS 75201
Phone (214) 670-3832

## COLLINGSWORTH COUNTY

No Remote Access site available at this time.

## COLORADO COUNTY

No Remote Access site available at this time.

## COMAL COUNTY

COMAL COUNTY CLERK'S OFFICE
100 Main Plaza, Suite 104
NEW BRAUNFELS 78130
Phone (830) 620-5513

## COMANCHE COUNTY

COMANCHE COUNTY CLERK'S OFFICE
Comanche County Courthouse
COMANCHE 76442
Phone (915) 356-2655

## CONCHO COUNTY

No Remote Access site available at this time.

## COOKE COUNTY

COOKE COUNTY CLERK'S OFFICE
Cooke County Courthouse
100 S. Dixon
Gainesville, TX 76240
Phone (940) 668-5420

## CORYELL COUNTY

No Remote Access site available at this time.

## COTTLE COUNTY

No Remote Access site available at this time.

## CRANE COUNTY

CRANE COUNTY AND DISTRICT CLERK
P O Box 578
201 W 6th St
Crane Tx 79731
Phone (915) 558-3581

## CROCKETT COUNTY

No Remote Access site available at this time.

## CROSBY COUNTY

CROSBY COUNTY CLERK'S OFFICE
P O Box 385
Corner of Aspen & Berkshire
CROSBYTON 79322
Phone (806) 675-2334

## CULBERSON COUNTY

No Remote Access site available at this time.

**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-Dallam County through Duval County

**Return to Remote Access list.**

## DALLAM COUNTY

No Remote Access site available at this time.

## DALLAS COUNTY

**DALLAS COUNTY CLERK'S OFFICE**
500 Main Street; Ste 200
DALLAS 75202
Phone (214) 653-7478

**DALLAS CITY HEALTH DEPARTMENT**
City Hall
1500 Marilla, 1FN
DALLAS 75201
Phone (214) 670-3832

## DAWSON COUNTY

**Dawson County Clerks Office**
North 1st and Main Street
Lamesa 79331
Phone: (806) 872-3778

## DEAF SMITH COUNTY

**DEAF SMITH COUNTY CLERK**
235 E. 3rd, Room 203
HEREFORD 79045
Phone (806) 363-7077

## DELTA COUNTY

**Delta County Clerk**
200 W. Dallas Ave.
COOPER 75432
Phone: (903) 395-4400 x-222

## DENTON COUNTY

**DENTON COUNTY CLERK'S OFFICE**
1450 E. McKinney Street
Denton, Tx. 76209
Phone (940) 349-2010

**FORT WORTH/TARRANT COUNTY PUBLIC HEALTH DEPARTMENT**
1800 University Dr.
FORT WORTH 76107
Phone (817) 871-8562

**DALLAS CITY HEALTH DEPARTMENT**
City Hall
1500 Marilla, 1FN

DALLAS 75201
Phone (214) 670-3832

**CITY OF GRAPEVINE**
P O Box 95104
200 S. Main
GRAPEVINE 76099
Phone (817) 410-3181

## DE WITT COUNTY

**De Witt County Clerk**
307 North Gonzales, Rm 100
Cuero 77954
Phone: (361) 275-3754

## DICKENS COUNTY

**Dickens County Clerk**
PO BOX 120
Dickens 79229
Phone: (806) 623-5531

## DIMMIT COUNTY

No Remote Access site available at this time.

## DONLEY COUNTY

**Donely County**
P.O. Drawer U
CLARENDON 79226
Phone: (806) 874-3436

## DUVAL COUNTY

**Duval County**
400 East Gravis
SAN DIEGO 78384
Phone: (361) 279-6271

**Return to Remote Access list.**

*Last updated November 05, 2013*

**TEXAS**
Department of
State Health Services

Remote Access Offices-Eastland County through Erath County

**Return to Remote Access list.**

# EASTLAND COUNTY

**EASTLAND COUNTY CLERK'S OFFICE**
100 West Main
P. O. Box 110
EASTLAND 76448
Phone (817) 629-1583

# ECTOR COUNTY

**ECTOR COUNTY CLERK'S OFFICE**
300 N. Grant, Room 111
P. O. Box 707
ODESSA 79761
Phone (432) 498-4130

# EDWARDS COUNTY

No Remote Access site available at this time.

# ELLIS COUNTY

**ELLIS COUNTY CLERK'S OFFICE**
P O Box 250
117 W Franklin
WAXAHACHIE 75165
Phone (972) 923-5070

# EL PASO COUNTY

**EL PASO COUNTY CLERK'S OFFICE**
City/County Bldg, Room 105
500 E. San Antonio St.
EL PASO 79901
Phone (915) 546-2071

# ERATH COUNTY

**ERATH COUNTY CLERK'S OFFICE**
Erath County Courthouse
STEPHENVILLE 76401
Phone (817) 965-1410

**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-Falls County through Frio County

**Return to Remote Access list.**

## FALLS COUNTY

No Remote Access site available at this time.

## FANNIN COUNTY

No Remote Access site available at this time.

## FAYETTE COUNTY

**FAYETTE COUNTY CLERK**
246 W. Colorado St.
LA GRANGE 78945
Phone (979) 968-3251

## FISHER COUNTY

**FISHER COUNTY CLERK'S OFFICE**
P.O.Box 368
ROBY 79543
Phone (915) 776-2401

## FLOYD COUNTY

**FLOYD COUNTY CLERK'S OFFICE**
105 SOUTH MAIN 101
FLOYDADA 79235
Phone (806)983-4900

## FOARD COUNTY

No Remote Access site available at this time.

## FORT BEND COUNTY

**FORT BEND COUNTY CLERK'S OFFICE**
P. O. Box 520
RICHMOND 77406-0520
Phone (281) 341-8685

**HOUSTON DEPARTMENT OF PUBLIC HEALTH**
8000 N. Stadium Dr.
HOUSTON 77054
Phone (713) 794-9070

## FRANKLIN COUNTY

**FRANKLIN COUNTY CLERK**
200 N. Kaufman Street
MOUNT VERNON 75457
Phone (903) 537-2342 x 2

## FREESTONE COUNTY

**FREESTONE COUNTY CLERK**

103 E. Main.
Fairfield 75840
Phone (903)389-2635

## FRIO COUNTY

**FRIO COUNTY CLERK'S OFFICE**

500 E. San Antonio #6
PEARSALL 78061
Phone (830) 334-2214

**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-Gaines County through Guadulupe County

**Return to Remote Access list.**

## GAINES COUNTY

**GAINES COUNTY CLERK**
Gaines County Courthouse
SEMINOLE 79360
Phone (432) 758-4003

## GALVESTON COUNTY

**Galveston County Health District**

9850A Emmett F. Lowry Expressway, Suite A102

Texas City, Texas 77921

Phone: 409 765-2595 or 409 765-2553

**CITY OF TEXAS CITY**
1801 9TH Avenue North
TEXAS CITY 77592-2608
Phone (409) 643-5905

## GARZA COUNTY

No Remote Access site available at this time.

## GILLESPIE COUNTY

No Remote Access site available at this time.

## GLASSCOCK COUNTY

No Remote Access site available at this time.

## GOLIAD COUNTY

No Remote Access site available at this time.

## GONZALES COUNTY

**GONZALES COUNTY CLERK**
P.O. Box 77
GONZALES 78629
Phone (830) 672-2801

## GRAY COUNTY

**GRAY COUNTY CLERK'S OFFICE**
205 North Russell, #200
P.O. Box 1902
Pampa, TX 79066
Phone (806) 669-8004

## GRAYSON COUNTY

**GRAYSON COUNTY CLERK'S OFFICE**

100 W. Houston, Suite 17

SHERMAN 75091

Phone (903) 813-4235

## GREGG COUNTY

**GREGG COUNTY CLERK'S OFFICE**

101 East Methvin, Suite 200

P. O. Box 3049

LONGVIEW 75606

Phone (903) 236-8430

## GRIMES COUNTY

No Remote Access site available at this time.

## GUADALUPE COUNTY

**GUADALUPE COUNTY CLERK'S OFFICE**

211 W. Court Street

SEGUIN 78155

Phone 210-945-9708

**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-Hale County through Hutchinson County

**Return to Remote Access list.**

## HALE COUNTY

**HALE COUNTY CLERK'S OFFICE**
500 Broadway #140
PLAINVIEW 79072-8050
Phone (806) 291-5261

## HALL COUNTY

**HALL COUNTY CLERKS OFFICE**
512 West Main St., Ste 8
MEMPHIS 79245
Phone (806)259-2627

## HAMILTON COUNTY

**HAMILTON COUNTY CLERK'S OFFICE**
101 East Main St.
HAMILTON 76531
Phone (254) 386-3518

## HANSFORD COUNTY

No Remote Access site available at this time.

## HARDEMAN COUNTY

No Remote Access site available at this time.

## HARDIN COUNTY

**HARDIN COUNTY CLERK'S OFFICE**
P.O. Box 38
300 Monroe Street
KOUNTZE, TX 77625
Phone (409) 246-5185

## HARRIS COUNTY

**HARRIS COUNTY CLERK'S OFFICE**
1001 Preston
HOUSTON 77002
Phone (713) 755-6438

**HOUSTON DEPARTMENT OF PUBLIC HEALTH**
8000 N. Stadium Dr.
HOUSTON 77054
Phone (713) 837-0311

**CITY OF BAYTOWN**
Baytown Municipal Court
3200 N. Main
BAYTOWN 77521
Phone (281) 425-1018

**CITY OF TOMBALL**
401 West Market Street
TOMBALL 77375
Phone (281) 351-5484

## HARRISON COUNTY

**HARRISON COUNTY CLERK'S OFFICE**
P. O. Box 1365
200 W. Houston
MARSHALL 75671
Phone (903) 935-8403

## HARTLEY COUNTY

No Remote Access site available at this time.

## HASKELL COUNTY

**Haskell County Clerk**

1 Avenue D #2

Haskell Texas 79521

Phone: 940-864-2451

## HAYS COUNTY

**HAYS COUNTY CLERK**
137 NORTH GUADALUPE STREET
SAN MARCOS 78666
Phone (512) 393-7330

**CITY OF SAN MARCOS**
630 E. Hopkins
SAN MARCOS 78666
Phone (512) 396-8086

## HEMPHILL COUNTY

**HEMPHILL COUNTY**
P.O. Box 867
CANADIAN 79014
Phone: (806) 323-6212

## HENDERSON COUNTY

**HENDERSON COUNTY CLERK'S OFFICE**
100 E. Taylor St. (Room 107)
ATHENS 75751

Phone (903) 675-6140

# HIDALGO COUNTY

### HIDALGO COUNTY CLERK
P. O. Box 58
EDINBURG 78540
Phone (956) 318-2100

### CITY OF EDINBURG
210 W. McIntire
P. O. Box 1079
EDINBURG 78540
Phone (956) 383-5661

### CITY OF HIDALGO
704 East Texano Drive
HIDALGO 78557
Phone: (956) 843-2286

### CITY OF MCALLEN
City Registrar's Office
221 S. 15th
MCALLEN 78501
Phone (956) 681-1195
Fax (956) 681-1194

### CITY OF MISSION
City Registrar's Office
900 Doherty
MISSION 78572
Phone (956) 580-8662

### CITY OF WESLACO
500 S. Kansas
WESLACO 78596
Phone (956) 968-3181

# HILL COUNTY

### Hill County Clerk's Office
P.O. Box 398
Hillsboro, TX 76645
Phone: (254) 582-4030

# HOCKLEY COUNTY

### HOCKLEY COUNTY
802 Houston St.
suite 213
LEVELLAND 79336
Phone (806) 894-3185

## HOOD COUNTY

**HOOD COUNTY CLERK'S OFFICE**
P O Box 339

201 W Bridge St.
GRANBURY 76048
Phone (817) 579-3222

Fax 817-408-3441

## HOPKINS COUNTY

**COUNTY CLERK'S OFFICE**
128 Jefferson, Suite C
Sulphur Springs, TX 75482
Phone: 903-438-4074

## HOUSTON COUNTY

**COUNTY CLERK'S OFFICE**
P. O. Box 370
CROCKETT, TX 75835
Phone: (936) 544-3255 Ext. 240

## HOWARD COUNTY

**HOWARD COUNTY CLERK'S OFFICE**
P. O. Box 1468
300 Main
BIG SPRING 79720
Phone (915) 264-2213

## HUDSPETH COUNTY

No Remote Access site available at this time.

## HUNT COUNTY

**HUNT COUNTY CLERKS OFFICE**
2500 Lee Street, 2nd Floor
P O Box 1316
GREENVILLE TX 75403-1316
Phone: 903-408-4130

## HUTCHINSON COUNTY

**HUTCHINSON COUNTY CLERK'S OFFICE**
P. O. Box 1186
500 Main
STINNETT 79083
Phone (806) 878-4002

**CITY OF BORGER**
P. O. BOX 5250
600 N. Main
BORGER 79008-5250
Phone (806) 273-0902

**Return to Remote Access list.**

*Last updated November 05, 2013*



Remote Access Offices-Irion County through Jones County

**Return to Remote Access list.**

## IRION COUNTY

No Remote Access site available at this time.

## JACK COUNTY

**JACK COUNTY CLERK**
100 Main Street
JACKSBORO 76458
Phone (940) 567-2111

## JACKSON COUNTY

**JACKSON COUNTY CLERK'S OFFICE**
115 West Main, Rm 101
EDNA 77957
Phone (361) 782-3563

## JASPER COUNTY

**JASPER COUNTY CLERK'S OFFICE**
Jasper County Courthouse
P O Box 2070
JASPER 75951
Phone (409) 384-2632

## JEFF DAVIS COUNTY

No Remote Access site available at this time.

## JEFFERSON COUNTY

**BEAUMONT CITY HEALTH DEPARTMENT**
950 Washington Blvd.
P. O. Box 3827
BEAUMONT 77704
Phone (409) 832-4000

**PORT ARTHUR CITY HEALTH DEPARTMENT**
449 Austin Ave
PORT ARTHUR 77640
Phone: (409) 983-8853

## JIM HOGG COUNTY

No Remote Access site available at this time.

## JIM WELLS COUNTY

**JIM WELLS COUNTY**
200 N. Almond
ALICE 78332
Phone: (361) 668-5702

# JOHNSON COUNTY

### JOHNSON COUNTY CLERK'S OFFICE

2 North Main Room 106 (zip 76031)
CLEBURNE
Phone (817) 556-6311

## JONES COUNTY

### JONES COUNTY CLERK'S OFFICE

12th & Commercial Streets
P. O. Box 552
ANSON 79501
Phone (325) 823-3762

### Abilene/Taylor County Public Health District

PO Box 2818 (79604)
850 N. 6th St.
Abilene 79601
Phone (325) 692-5600

**Return to Remote Access list.**

*Last updated November 05, 2013*

Case 2:13-cv-00193   Document 669-22   Filed on 11/11/14 in TXSD   Page 202 of 404



Remote Access Offices-Karnes County through Knox County

**Return to Remote Access list.**

## KARNES COUNTY

**KARNES COUNTY**
201 W. Calvert, Suite 100
KARNES CITY 78118
Phone: (830) 780-3938

## KAUFMAN COUNTY

**KAUFMAN COUNTY CLERK'S OFFICE**
Kaufman County Courthouse
KAUFMAN 75142
Phone (972) 932-4331 Ext. 1200

**DALLAS CITY HEALTH DEPARTMENT**
City Hall
1500 Marilla, 1FN
DALLAS 75201
Phone (214) 670-3832

**TERRELL CITY SECRETARY**
201 E Nash
TERRELL 75160
Phone (972) 551-6600 Ext. 227

## KENDALL COUNTY

No Remote Access site available at this time.

## KENEDY COUNTY

No Remote Access site available at this time.

## KENT COUNTY

**KENT COUNTY AND DISTRICT CLERK**
**P.O. Box 9**
**Jayton, TX 79528**
**Phone (806) 237-3881**

**P.O. Box 9Jayton, TX 79528Phone (806) 237-3881**

P.O. Box 9Jayton, TX 79528Phone (806) 237-3881

## KERR COUNTY

**KERR COUNTY CLERK'S OFFICE**
700 Main Street, Ste 122
KERRVILLE 78028
Phone (210) 792-2255

## KIMBLE COUNTY

No Remote Access site available at this time.

## KING COUNTY

No Remote Access site available at this time.

## KINNEY COUNTY

No Remote Access site available at this time.

## KLEBERG COUNTY

**KLEBERG COUNTY CLERK**
P.O. Box 1327
KINGSVILLE 78364
Phone: (361) 595-8548

**CORPUS CHRISTI-NUECES COUNTY DEPT OF PUBLIC HEALTH**
P O Box 9727 (78469)
1702 Horne Rd
CORPUS CHRISTI 78416
Phone (361) 851-7210

## KNOX COUNTY

No Remote Access site available at this time.

**Return to Remote Access list.**

*Last updated November 05, 2013*



Remote Access Offices-Lamar County through Lynn County

**Return to Remote Access list.**

## LAMAR COUNTY

**LAMAR COUNTY CLERK'S OFFICE**
119 N. Main
PARIS 75460
Phone (903) 737-2420

**CITY OF PARIS**
P. O. Box 9037
150 S.E. 1st (75460)
PARIS 75461
Phone (903) 784-1798

## LAMB COUNTY

No Remote Access site available at this time.

## LAMPASAS COUNTY

No Remote Access site available at this time.

## LA SALLE COUNTY

No Remote Access site available at this time.

## LAVACA COUNTY

**CITY OF YOAKUM**
900 Irvine Street
P. O. Box 738
Yoakum, Texas 77995-0738
Phone: 361-293-6321

## LEE COUNTY

**LEE COUNTY CLERK'S OFFICE**
200 S. Main Street
P. O. Box 419
GIDDINGS 78942
Phone (409) 542-3684

## LEON COUNTY

No Remote Access site available at this time.

## LIBERTY COUNTY

**Liberty County Clerks Office**
P.O. Box 369
Liberty 77575
Phone: (936) 336-4670

## LIMESTONE COUNTY

**LIMESTONE COUNTY CLERK'S OFFICE**

200 W. State Street

P. O. Box 350

GROESBECK 76642

Phone (254) 729-5504

## LIPSCOMB COUNTY

No Remote Access site available at this time.

## LIVE OAK COUNTY

No Remote Access site available at this time.

## LLANO COUNTY

No Remote Access site available at this time.

## LOVING COUNTY

No Remote Access site available at this time.

## LUBBOCK COUNTY

CITY OF LUBBOCK, CITY HALL

1625 13TH STREET RM 102,

LUBBOCK, TX 79401

806 775-2926

## LYNN COUNTY

No Remote Access site available at this time.


**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-McCulloch County through Motley County

**Return to Remote Access list.**

## MCCULLOCH COUNTY

No Remote Access site available at this time.

## MCLENNAN COUNTY

**WACO-MCLENNAN COUNTY PUBLIC HEALTH DISTRICT**
225 West Waco Dr.
WACO 76707
Phone (254) 750-5468

## MCMULLEN COUNTY

No Remote Access site available at this time.

## MADISON COUNTY

**MADISON COUNTY CLERK**
101 W. Main, Room 108
MADISONVILLE 77864
Phone (409) 348-2638

## MARION COUNTY

No Remote Access site available at this time.

## MARTIN COUNTY

No Remote Access site available at this time.

## MASON COUNTY

No Remote Access site available at this time.

## MATAGORDA COUNTY

**MATAGORDA COUNTY CLERK'S OFFICE**
1700 7th St., Room 202
BAY CITY 77414
Phone (409) 244-7680

## MAVERICK COUNTY

No Remote Access site available at this time.

## MEDINA COUNTY

**MEDINA COUNTY CLERK**
1100 16th Street, Room 109
HONDO 78861
Phone (830)741-6041

## MENARD COUNTY

No Remote Access site available at this time.

## MIDLAND COUNTY

**MIDLAND COUNTY CLERK**
P. O. Box 211
MIDLAND 79702
Phone (432) 688-1070

## MILAM COUNTY

**MILAM COUNTY CLERK/LOCAL REGISTRAR**
P.O. Box 1008
CAMERON 76520
Phone: (254) 697-7049

## MILLS COUNTY

No Remote Access site available at this time.

## MITCHELL COUNTY

**MITCHELL COUNTY CLERK**
349 Oak Street, Room 103
COLORADO CITY 79512
Phone (325) 728-3481

## MONTAGUE COUNTY

**Montague County Clerk**
P.O. Box 77
Montague 76251
Phone: (940) 894-2461

## MONTGOMERY COUNTY

**MONTGOMERY COUNTY CLERK'S OFFICE**
300 N. Main
P. O. Box 959
CONROE 77305-0959
Phone (409) 539-7885

**HOUSTON DEPARTMENT OF PUBLIC HEALTH**
8000 N. Stadium Dr.
HOUSTON 77054
Phone (713) 794-9070

**CITY OF TOMBALL**
401 West Market Street
TOMBALL 77375
Phone (281) 351-5484

## MOORE COUNTY

**Moore County Clerk' Office**
715 Dumas Ave, Room 107
Dumas 79029
Phone: (806) 935-2009

## MORRIS COUNTY

**MORRIS COUNTY CLERK'S OFFICE**
500 Broadnax St.

DAINGERFIELD 75638

(903) 645-3911

## MOTLEY COUNTY

No Remote Access site available at this time.

**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-Nacogdoches County through Orange County

**Return to Remote Access list.**

## NACOGDOCHES COUNTY

**NACOGDOCHES COUNTY CLERK'S OFFICE**
101 W. Main, Room 205
NACOGDOCHES 75961
Phone (409) 560-7733

## NAVARRO COUNTY

**NAVARRO COUNTY CLERK'S OFFICE**
300 W. 3rd Ave., Suite 101
CORSICANA 75110
Phone (903) 654-3035

## NEWTON COUNTY

No Remote Access site available at this time.

## NOLAN COUNTY

**NOLAN COUNTY CLERK'S OFFICE**
100 E. 3rd
Suite 108-A
SWEETWATER 79556
Phone (325) 235-2462

## NUECES COUNTY

**NUECES COUNTY CLERK'S OFFICE**
901 Leopard
P. O. Box 2627
CORPUS CHRISTI 78403
Phone (361) 888-0580

**CORPUS CHRISTI-NUECES COUNTY DEPT OF PUBLIC HEALTH**
P O Box 9727 (78469)
1702 Horne Rd
CORPUS CHRISTI 78416
Phone (361) 851-7210

## OCHILTREE COUNTY

**OCHILTREE COUNTY**
511 S. Main
PERRYTON 79070
Phone (806) 435-8039

## OLDHAM COUNTY

No Remote Access site available at this time.

## ORANGE COUNTY

**CITY OF ORANGE**
P. O. Box 520
803 W. Green Ave
ORANGE 77631
Phone (409) 886-3611


**Return to Remote Access list.**


*Last updated November 05, 2013*

Remote Access Offices- Palo Pinto County through Presidio County

**Return to Remote Access list.**

# PALO PINTO COUNTY

**CITY OF MINERAL WELLS**
115 Southwest 1st Ave
MINERAL WELLS 76068
Phone (940) 328-7702

**PALO PINTO COUNTY CLERK**
520 Oak Street
Palo Pinto, Tx 76484
Phone (940) 328-1277

# PANOLA COUNTY

**CITY OF CARTHAGE**
P. O. Box 400
812 W. Panola
CARTHAGE 75633
Phone (903) 693-3868

# PARKER COUNTY

**PARKER COUNTY CLERK'S OFFICE**
1112 Santa Fe Drive
P. O. Box 819
WEATHERFORD 76086-0819
Phone (817) 594-7461

**CITY OF MINERAL WELLS**
115 Southwest 1st Ave
MINERAL WELLS 76068
Phone (940) 328-7702

# PARMER COUNTY

No Remote Access site available at this time.

# PECOS COUNTY

**PECOS COUNTY CLERK'S OFFICE**
103 W. Callaghan
FORT STOCKTON 79735
Phone (432) 336-7555

# POLK COUNTY

**POLK COUNTY CLERK'S OFFICE**
P.O. Drawer 2119
101 W. Church
LIVINGSTON 77351
Phone (409) 327-6804

# POTTER COUNTY

Case 2:13-cv-00193  Document 669-22  Filed on 11/11/14 in TXSD  Page 212 of 404

**CITY OF AMARILLO**
P. O. Box 1971
509 E. 7th Avenue (79101)
AMARILLO 79105-1971
Phone (806) 378-9344

## PRESIDIO COUNTY

No Remote Access site available at this time.

**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-Rains County through Rusk County

**Return to Remote Access list.**

## RAINS COUNTY

No Remote Access site available at this time.

## RANDALL COUNTY

**CITY OF AMARILLO**
P. O. Box 1971
509 E. 7th Avenue (79101)
AMARILLO 79105-1971
Phone (806) 378-9344

**CITY OF CANYON**
301 16th Street
CANYON 79015
Phone (806) 655-5000

## REAGAN COUNTY

**REAGAN COUNTY CLERK'S OFFICE**
3rd At Plaza
P. O. Box 100
Big Lake, Texas 76932
Phone: 325-884-2442

## REAL COUNTY

No Remote Access site available at this time.

## RED RIVER COUNTY

`

**Red River County Clerks Office**
200 North Walnut Street
Clarksville 75426
Phone: (903) 427-2401

## REEVES COUNTY

**REEVES COUNTY CLERK**
100 East 4th Street
P.O. BOX 867
PECOS (915) 455-5467

## REFUGIO COUNTY

**REFUGIO COUNTY CLERK**
P.O. Box 704
REFUGIO, TX 78377
Phone: (361) 526-2721

## ROBERTS COUNTY

No Remote Access site available at this time.

## ROBERTSON COUNTY

No Remote Access site available at this time.

## ROCKWALL COUNTY

**ROCKWALL COUNTY CLERK'S OFFICE**
1101 Ridge Road, Suite 101
ROCKWALL 75087
Phone 972-882-0220

**DALLAS CITY HEALTH DEPARTMENT**
City Hall
1500 Marilla, 1FN
DALLAS 75201
Phone (214) 670-3832

## RUNNELS COUNTY

**Runnels County Clerk's Office** 613 Courthouse Square
Ballinger 76821
Phone: (915) 365-2720

## RUSK COUNTY

**RUSK COUNTY CLERK'S OFFICE**
P.O. Box 758
115 N. Main
HENDERSON 75653-0758
Phone (903) 657-0330

**Return to Remote Access list.**

*Last updated April 18, 2013*



Remote Access Offices-Sabine County through Swisher County

**Return to Remote Access list.**

## SABINE COUNTY

**SABINE COUNTY CLERK'S OFFICE**
P O Drawer 580
HEMPHILL 75948
Phone (409) 787-3786

## SAN AUGUSTINE COUNTY

**SAN AUGUSTINE COUNTY CLERK'S OFFICE**
100 West Columbia, Rm 106
SAN AUGUSTINE 75972
Phone (409) 275-2452

## SAN JACINTO COUNTY

No Remote Access site available at this time.

## SAN PATRICIO COUNTY

**CORPUS CHRISTI-NUECES COUNTY DEPT OF PUBLIC HEALTH**
P O Box 9727 (78469)
1702 Horne Rd
CORPUS CHRISTI 78416
Phone (361) 851-7210

## SAN SABA COUNTY

No Remote Access site available at this time.

## SCHLEICHER COUNTY

No Remote Access site available at this time.

## SCURRY COUNTY

**SCURRY COUNTY CLERK'S OFFICE** 1806 25th Street, Ste 300
Suite 300
SNYDER 79549
Phone (915) 573-5332

## SHACKELFORD COUNTY

No Remote Access site available at this time.

## SHELBY COUNTY

**SHELBY COUNTY CLERK'S OFFICE** P. O. Box 592
200 San Augustine
CENTER 75935
Phone (936) 598-3701

## SHERMAN COUNTY

No Remote Access site available at this time.

## SMITH COUNTY

**SMITH COUNTY**
200 E. Ferguson
TYLER 75701
Phone (903) 590-4670

**NORTHEAST TEXAS PUBLIC HEALTH DISTRICT**
815 North Broadway (75702)
P.O. Box 2039
TYLER 75710
Phone (903) 535-0030

## SOMERVELL COUNTY

**SOMERVELL COUNTY AND DISTRICT CLERK**
107 N.E. Vernon
P.O. Box 1098
GLEN ROSE 76043
Phone (254) 897-4427

## STARR COUNTY

**STARR COUNTY CLERK**
401 North Britton Avenue, Room 201
Star County Courthouse
Rio Grande City, Tx. 78582
Phone (956)487-8032

## STEPHENS COUNTY

**STEPHENS COUNTY CLERK**
200 W. Walker
BRECKENRIDGE 76424
Phone (254) 559-3700

## STERLING COUNTY

No Remote Access site available at this time.

## STONEWALL COUNTY

No Remote Access site available at this time.

## SUTTON COUNTY

No Remote Access site available at this time.

## SWISHER COUNTY

**SWISHER COUNTY & DISTRICT CLERK'S OFFICE**
Swisher County Courthouse
TULIA 79088
Phone (806) 995-3294

**Return to Remote Access list.**

*Last updated November 05, 2013*



Remote Access Offices-Tarrant County through Tyler County

**Return to Remote Access list.**

## TARRANT COUNTY

**TARRANT COUNTY CLERK'S VITAL RECORDS OFFICE**
200 Taylor St. Room 301
FORT WORTH 76102
Phone (817) 884-1195

**CITY OF ARLINGTON**
101 W. Abram St., 1st Floor
Arlington, TX 76010
(817) 459-6234

**CITY OF NORTH RICHLAND HILLS**
P. O. Box 820609
7301 N.E. Loop 820
NORTH RICHLAND HILLS 76180-0609
Phone 817-427-6061

**CITY OF GRAPEVINE**
P O Box 95104
200 S. Main
GRAPEVINE 76099
Phone (817) 410-3181

**CITY OF BEDFORD**
2000 Forest Ridge Drive
BEDFORD 76021
Phone (817) 952-2104

## TAYLOR COUNTY

**TAYLOR COUNTY CLERK'S OFFICE**
300 Oak st
ABILENE 79602
Phone (325) 674-1202

**ABILENE-TAYLOR COUNTY HEALTH CLINIC**
850 North 6th Street
ABILENE 79601
Phone (325) 692-5600

## TERRELL COUNTY

No Remote Access site available at this time.

## TERRY COUNTY

**TERRY COUNTY CLERK'S OFFICE**
500 W. Main, Room105
BROWNFIELD 79316
Phone (806) 637-8551

## THROCKMORTON COUNTY

No Remote Access site available at this time.

## TITUS COUNTY

**TITUS COUNTY CLERK'S OFFICE**
100 W. 1st, Suite 204
Mt. Pleasant, TX 75455
Phone (903) 577-6796

## TOM GREEN COUNTY

**TOM GREEN COUNTY CLERK'S OFFICE**
124 West Beauregard
SAN ANGELO 76903-5850
Phone (325) 659-6553

## TRAVIS COUNTY

**AUSTIN HEALTH & HUMAN SERVICES/TRAVIS COUNTY HEALTH DEPARTMENT**
601 Airport Blvd., Bldg C
AUSTIN 78702
Phone (512) 972-4784

## TRINITY COUNTY

No Remote Access site available at this time.

## TYLER COUNTY

**TYLER COUNTY CLERK'S OFFICE**
100 Courthouse
WOODVILLE 75979
Phone (409) 283-2281

**Return to Remote Access list.**

*Last updated April 18, 2013*



**Remote Access Offices-Upshur County through Victoria County**

**Return to Remote Access list.**

## UPSHUR COUNTY

**UPSHUR COUNTY CLERK'S OFFICE**
P. O. Box 730
Gilmer, TX. 75644
Phone: (903) 680-8123

## UPTON COUNTY

**UPTON COUNTY CLERK'S OFFICE**
Upton County Courthouse
P. O. Box 465
205 E. 10th
RANKIN 79778
Phone (432) 693-2861

## UVALDE COUNTY

**UVALDE COUNTY CLERK'S OFFICE**
P O Box 284
UVALDE 78802
Phone (830) 278-6614

## VAL VERDE COUNTY

No Remote Access site available at this time.

## VAN ZANDT COUNTY

**VAN ZANDT COUNTY**
121 E. Dallas, Room 202
CANTON 75103
Phone: (903) 567-6503

## VICTORIA COUNTY

**CITY OF VICTORIA**
105 W. Juan Linn
VICTORIA 77902-1758
Phone (361) 458-3040

**Return to Remote Access list.**

*Last updated November 05, 2013*



Remote Access Offices-Walker County through Wood County

**Return to Remote Access list.**

## WALKER COUNTY

No Remote Access site available at this time.

## WALLER COUNTY

**WALLER COUNTY CLERK'S OFFICE**
836 Austin, Rm 217
HEMPSTEAD 77445
Phone (979) 826-7711

## WARD COUNTY

**WARD COUNTY CLERK'S OFFICE**
400 S. Allen, #101
Moahans. TX 79756
Phone (432) 943-3294

## WASHINGTON COUNTY

**WASHINGTON COUNTY CLERK'S OFFICE**
100 East Main Street, Suite 102
BRENHAM 77833
Phone (409) 477-6200

## WEBB COUNTY

**CITY OF LAREDO**
2600 Cedar
LAREDO 78040
Phone (956) 795-4929

## WHARTON COUNTY

No Remote Access site available at this time.

## WHEELER COUNTY

**WHEELER COUNTY CLERK'S OFFICE**
P.O. Box 465
WHEELER 79096
Phone (806) 826-5544

## WICHITA COUNTY

**WICHITA FALLS/WICHITA COUNTY PUBLIC HEALTH DISTRICT**
1700 3rd Street
WICHITA FALLS 76301-2199
Phone (940) 761-7802

## WILBARGER COUNTY

**WILBARGER COUNTY**
1700 Wilbarger St., Room 15

WILBARGER 76384
Office (956) 689-2710

## WILLACY COUNTY

**WILLACY COUNTY CLERK**
576 W. Main
RAYMONDVILLE 78580
Office (940) 552-5486

## WILLIAMSON COUNTY

**WILLIAMSON COUNTY CLERK'S OFFICE**
405 Martin Luther King (In Basement)
GEORGETOWN 78626
Phone (512) 943-1515

**AUSTIN HEALTH & HUMAN SERVICES/TRAVIS COUNTY HEALTH DEPARTMENT**
601 Airport Blvd Bldg C
AUSTIN 78702
Phone (512) 972-4784

## WILSON COUNTY

**WILSON COUNTY CLERK**
P.O. BOX 27
FLORESVILLE, TX 78114
Phone: (830) 393-7308

## WINKLER COUNTY

No Remote Access site available at this time.

## WISE COUNTY

**WISE COUNTY CLERK'S OFFICE**
200 N. Trinity
Decatur, Texas 76234
Phone: (940) 627-3351

## WOOD COUNTY

**WOOD COUNTY CLERK'S OFFICE**
P. O. Box 1796
QUITMAN 75783-1796
Phone (903) 763-2711

**Return to Remote Access list.**

*Last updated November 05, 2013*



**Remote Access Offices-Youkum County through Zavala County**

**Return to Remote Access list.**

## YOAKUM COUNTY

**YOAKUM COUNTY CLERK'S OFFICE**
Yoakum County Courthouse
P. O. Box 309
PLAINS 79355
Phone (806) 456-7491 Ext. 294

## YOUNG COUNTY

**YOUNG COUNTY CLERK**
516 Fourth Street, Room 104
GRAHAM 76450
Phone (940) 549-8432

## ZAPATA COUNTY

No Remote Access site available at this time.

## ZAVALA COUNTY

No Remote Access site available at this time.

**Return to Remote Access list.**

*Last updated April 18, 2013*

06 SB84/AP
Senate Bill 84
By: Senators Staton of the 18th, Williams of the 19th, Chapman of the 3rd, Rogers of the 1st, Chance of the 16th and others
**AS PASSED**

AN ACT

To amend Title 21 of the Official Code of Georgia Annotated, relating to elections, and Title 40 of the Official Code of Georgia Annotated, relating to motor vehicles and traffic, so as to authorize the State Election Board to conduct certain voter education programs; to change provisions relating to required presentation of identification by voters; to specify the types of identification which may be used; to provide for Georgia voter identification cards to be issued by each county board of registrars to registered electors who do not have a valid driver's license or identification card issued by the Department of Driver Services; to provide for the contents and appearance of such cards; to provide for applications and supporting documentation; to provide for the supply of equipment and the adoption of rules and regulations by the State Election Board; to change provisions relating to issuance of free identification cards by the Department of Driver Services to registered electors; to provide for other related matters; to provide an effective date; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

**SECTION 1.**

Title 21 of the Official Code of Georgia Annotated, relating to primaries and elections generally, is amended by striking Code Section 21-2-31, relating to the duties of the State Election Board, and inserting in lieu thereof a new Code Section 21-2-31 to read as follows:
"21-2-31.
It shall be the duty of the State Election Board:
(1) To supervise and coordinate the work of the office of the Secretary of State, superintendents, registrars, deputy registrars, poll officers, and other officials so as to obtain uniformity in their practices and proceedings and legality and purity in all primaries and elections;
(2) To formulate, adopt, and promulgate such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections; and, upon the adoption of each rule and regulation, the board shall promptly file certified copies thereof with the Secretary of State and each superintendent;

(3) To publish and furnish to primary and election officials, from time to time, a sufficient number of indexed copies of all primary and election laws and pertinent rules and regulations then in force;

(4) To publish and distribute such explanatory pamphlets regarding the interpretation and application of primary and election laws as in the opinion of the board should be distributed to the electorate;

(5) To investigate, or authorize the Secretary of State to investigate, when necessary or advisable the administration of primary and election laws and frauds and irregularities in primaries and elections and to report violations of the primary and election laws either to the Attorney General or the appropriate district attorney who shall be responsible for further investigation and prosecution. Nothing in this paragraph shall be so construed as to require any complaining party to request an investigation by the board before such party might proceed to seek any other remedy available to that party under this chapter or any other provision of law;

(6) To make such recommendations to the General Assembly as it may deem advisable relative to the conduct and administration of primaries and elections;

(7) To promulgate rules and regulations to define uniform and nondiscriminatory standards concerning what constitutes a vote and what will be counted as a vote for each category of voting system used in this state;

(8) To employ such assistants as may be necessary;

(9) Subject to funds being specifically appropriated by the General Assembly, to formulate and conduct a voter education program concerning voting procedures for voting by absentee ballot and at the polls with particular emphasis on the proper types of identification required for voting; and

(10) To take such other action, consistent with law, as the board may determine to be conducive to the fair, legal, and orderly conduct of primaries and elections."


## SECTION 2.

Said title is further amended by striking Code Section 21-2-417, relating to presentation of identification by voters, and inserting in its place new Code Sections 21-2-417 and 21-2-417.1 to read as follows:

"21-2-417.

(a) Except as provided in subsection (c) of this Code section, each elector shall present proper identification to a poll worker at or prior to completion of a voter's certificate at any polling place and prior to such person's admission to the enclosed space at such polling place. Proper identification shall consist of any one of the following:

(1) A Georgia driver's license which was properly issued by the appropriate state agency;

(2) A valid Georgia voter identification card issued under Code Section 21-2-417.1 or other valid identification card issued by a branch, department, agency, or entity of the State of Georgia, any other state, or the United States authorized by law to issue personal identification, provided that such identification card contains a photograph of the elector;

(3) A valid United States passport;

(4) A valid employee identification card containing a photograph of the elector and issued by any branch, department, agency, or entity of the United States government, this state, or any county, municipality, board, authority, or other entity of this state;

(5) A valid United States military identification card, provided that such identification card contains a photograph of the elector; or

(6) A valid tribal identification card containing a photograph of the elector.

(b) Except as provided in subsection (c) of this Code section, if an elector is unable to produce any of the items of identification listed in subsection (a) of this Code section, he or she shall be allowed to vote a provisional ballot pursuant to Code Section 21-2-418 upon swearing or affirming that the elector is the person identified in the elector's voter certificate. Such provisional ballot shall only be counted if the registrars are able to verify current and valid identification of the elector as provided in subsection (a) of this Code section within the time period for verifying provisional ballots pursuant to Code Section 21-2-419. Falsely swearing or affirming such statement under oath shall be punishable as a felony, and the penalty shall be distinctly set forth on the face of the statement.

(c) An elector who registered to vote by mail, but did not comply with subsection (c) of Code Section 21-2-220, and who votes for the first time in this state shall present to the poll workers either one of the forms of identification listed in subsection (a) of this Code section or a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of such elector. If such elector does not have any of the forms of identification listed in this subsection, such elector may vote a provisional ballot pursuant to Code Section 21-2-418 upon swearing or affirming that the elector is the person identified in the elector's voter certificate. Such provisional ballot shall only be counted if the registrars are able to verify current and valid identification of the elector as provided in this subsection within the time period for verifying provisional ballots pursuant to Code Section 21-2-419. Falsely swearing or affirming such statement under oath shall be punishable as a felony, and the penalty shall be distinctly set forth on the face of the statement.

21-2-417.1.

(a) Each county board of registrars shall provide at least one place in the county at which it shall accept applications for and issue Georgia voter identification cards to registered Georgia electors which shall under state law be valid only for purposes of voter identification under Code Section 21-2-417 and available only

to registered electors of this state. No fee shall be charged or collected for the application for or issuance of a Georgia voter identification card.

(b) No person shall be eligible for a Georgia voter identification card if such person has a valid unexpired driveŕs license or identification card issued under Code Section 40-5-100.

(c) The Georgia voter identification card shall be captioned 'GEORGIA VOTER IDENTIFICATION CARD' and shall contain a prominent statement that under Georgia law it is valid only as identification for voting purposes. The Georgia voter identification card shall be laminated, shall contain a digital color photograph of the applicant, and shall include the following information:

   (1) Full legal name;

   (2) Address of residence;

   (3) Birth date;

   (4) Date identification card was issued;

   (5) Sex;

   (6) Height;

   (7) Weight;

   (8) Eye color;

   (9) County where the identification card was issued including a county number to be assigned for each county by the Secretary of State; and

   (10) Such other information or identification as required by rule of the State Election Board.

(d) The application for a Georgia voter identification card shall elicit the information required under subsection (c) of this Code section and such other information as may be required by rule of the State Election Board. The application shall be signed and sworn to by the applicant and any falsification or fraud in the making of the application shall constitute a felony offense under Code Section 16-10-71, relating to the offense of false swearing.

(e) The board of registrars shall require presentation and verification of the following information before issuing a Georgia voter identification card to a person:

   (1) A photo identity document, except that a nonphoto identity document is acceptable if it includes both the persońs full legal name and date of birth;

   (2) Documentation showing the persońs date of birth;

   (3) Evidence that the person is registered to vote in this state; and

   (4) Documentation showing the persońs name and address of principal residence.

(f) A Georgia voter identification card shall remain valid so long as a person resides at the same address and remains qualified to vote. It shall be the duty of a person who moves his or her residence within the State of Georgia to surrender his or her card to the board of registrars of the county of his or her new residence; and such person may after such surrender apply for and receive a new card if such person is otherwise eligible under this Code section. It shall be the

duty of a person who moves his or her residence outside the State of Georgia or who ceases to be qualified to vote to surrender his or her card to the board of registrars by which it was issued.

(g) The State Election Board shall provide each county board of registrars with the necessary equipment, forms, supplies, and training for the production of the Georgia voter identification cards and shall maintain such equipment.

(h) The State Election Board shall adopt rules and regulations for the administration of this Code section and, without limiting the generality of the foregoing, such rules and regulations may further define or prescribe the types of documentation required under subsection (e) of this Code section."

## SECTION 3.

Title 40 of the Official Code of Georgia Annotated, relating to motor vehicles and traffic, is amended in Code Section 40-5-103, relating to fees for personal identification cards for persons without driver's licenses, by striking subsection (d) and inserting in its place a new subsection to read as follows:

"(d) The department shall not be authorized to collect a fee for an identification card from any person:

(1) Who swears under oath that he or she desires an identification card in order to vote in a primary or election in Georgia and that he or she does not have any other form of identification that is acceptable under Code Section 21-2-417 for identification at the polls in order to vote; and

(2) Who produces evidence that he or she is registered to vote in Georgia.

This subsection shall not apply to a person who has been issued a driver's license in this state."

## SECTION 4.

This Act shall become effective upon its approval by the Governor or upon its becoming law without such approval.

## SECTION 5.

All laws and parts of laws in conflict with this Act are repealed.

H.B. No. 331

AN ACT

relating to certain election processes and procedures.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 2.002, Election Code, is amended by amending Subsections (a) and (g) and adding Subsection (h) to read as follows:

(a)  Except as provided by Subsection (f) or (g), in an election requiring a plurality vote, if two or more candidates for the same office tie for the number of votes required to be elected, a second election to fill the office shall be held.

(g)  A tying candidate may resolve the tie by filing with the authority described by Subsection (f) a written statement of withdrawal signed and acknowledged by the candidate. On receipt of the statement of withdrawal, the remaining candidate is the winner, and a second election or casting of lots is not held.

(h)  This section does not apply to elective offices of the executive department specified by Article IV, Section 1, of the Texas Constitution.

SECTION 2.  Section 2.028, Election Code, is amended by amending Subsection (a) and adding Subsection (c) to read as follows:

(a)  Except as provided by Subsection (c), if [If] the candidates in a runoff election tie, they shall cast lots to determine the winner.

(c)  A tying candidate may resolve the tie by filing with the presiding officer of the final canvassing authority a written statement of withdrawal signed and acknowledged by the candidate. On receipt of the statement of withdrawal, the remaining candidate is the winner, and a casting of lots is not held.

SECTION 3.  Section 2.051, Election Code, is amended to read as follows:

Sec. 2.051.  Applicability of Subchapter. (a)  This subchapter applies only to an election for officers of a political subdivision other than a county in which write-in votes may be counted only for names appearing on a list of write-in candidates and in which:

(1)  each candidate whose name is to appear on the ballot is unopposed, except as provided by Subsection (b); and

(2)  no proposition is to appear on the ballot.

(b)  In the case of an election in which any members of the political subdivision's governing body are elected from single-member districts, this subchapter applies to the election in a particular single-member district if:

(1)  each candidate whose name is to appear on the ballot in that district is unopposed; and

(2)  the requirements prescribed by Subsection (a) are otherwise met.

SECTION 4.  Section 13.072, Election Code, is amended by amending Subsection (c) and adding Subsection (e) to read as follows:

(c)  Except as provided by Subsection (d) or (e), if the registrar determines that an application does not comply with Section 13.002 or does not indicate that the applicant is eligible for registration, the registrar shall reject the application.

(e)  If the registrar determines that an application is incomplete, the registrar shall notify the applicant of that fact.  If the applicant submits the required information not later than the third day after the date notice is received under this subsection, the registrar shall proceed with the review of the application.

SECTION 5.  Section 13.143(e), Election Code, is amended to read as follows:

(e)  If the 30th day before the date of an election is a Saturday, Sunday, or legal state or national holiday, an application [submitted by mail] is considered to be timely if it is submitted to the registrar on or before [the date indicated by the post office cancellation mark is] the next regular business day.

SECTION 6.  Section 31.002(a), Election Code, is amended to read as follows:

(a)  The secretary of state shall prescribe the design and content, consistent with this code, of the forms necessary for the administration of this code.  The design and content must enhance the ability of a person to understand the applicable requirements and to physically furnish the required information in the space provided.

SECTION 7.  Section 31.100(d), Election Code, is amended to read as follows:

(d)  The county election officer may not be personally compensated for election services performed under an election services contract.  A fee charged by the officer for general supervision of the election may not exceed 10 [five] percent of the total amount of the contract, but may not be less than $75.

SECTION 8.  Sections 32.002(a) and (b), Election Code, are amended to read as follows:

(a)  The commissioners court[,] at its July term [each year,] shall appoint the election judges for each regular county election precinct.

(b)  Judges appointed under Subsection (a) serve for a term of one year beginning on August 1 following the appointment, except that the commissioners court by order recorded in its minutes may provide for a term of two years.

SECTION 9.  Sections 32.002(c) and (d), Election Code, are amended to read as follows:

(c)  The presiding judge and alternate presiding judge must be affiliated or aligned with different political parties, subject to this subsection.  Before July of each year, the county chair of a political party whose candidate for governor received the highest or second highest number of votes in the county in the most recent gubernatorial general election shall submit in writing to the commissioners court a list of names of persons in order of preference for each precinct who are eligible for appointment as an election judge.  The commissioners court shall appoint the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the party with the highest number of votes in the precinct as the presiding judge and the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the party with the second highest number of votes in the precinct as the alternate presiding judge. The commissioners court may reject the list if the

persons whose names are submitted on the list are determined not to meet the applicable eligibility requirements.  If the list is rejected, the appointment shall be made for the full term in accordance with the same procedures provided for the filling of vacancies under Subsection (d) based on the time of the rejection instead of the time that a vacancy occurs. If a list of names is not submitted in compliance with this subsection, the commissioners court shall appoint an eligible person who is affiliated or aligned with the appropriate party, if available.

(d)  The commissioners court shall fill a vacancy in the position of election judge for the remainder of the unexpired term.  An appointment to fill a vacancy may be made at any regular or special term of court. Not later than 48 hours after the county clerk becomes aware of a vacancy, the county clerk shall notify the county chair of the same political party with which the original judge was affiliated or aligned of the vacancy.  Not later than the fifth day after the date of notification of the vacancy, the county chair of the same political party with which the original judge was affiliated or aligned shall submit to the commissioners court in writing the name of a person who is eligible for the appointment. If a name is submitted in compliance with this subsection, the commissioners court shall appoint that person to the unexpired term.  If a name is not submitted in compliance with this subsection, the commissioners court shall appoint an eligible person who is affiliated or aligned with the same party, if available.

[(d)  The county clerk shall recommend a presiding judge and an alternate judge for each precinct and shall submit a list of the recommendations to the commissioners court.  The clerk shall also recommend an appointee for each unexpired term.  The court shall consider the clerk's recommendation before making an appointment.]

SECTION 10.  Section 32.007, Election Code, is amended by amending Subsections (a) and (b) and adding Subsection (f) to read as follows:

(a)  If neither the presiding judge nor the alternate presiding judge can serve in an election and their inability to serve is discovered so late that it is impracticable to fill the vacancy in the normal manner, the presiding officer of the appointing authority or the authority if a single officer shall appoint a replacement judge to preside at the election, subject to Subsection (f).  If

the appointing authority is unavailable, the authority responsible for distributing the supplies for the election shall appoint the replacement judge.

(b)  If a person authorized to act as presiding judge is not present at the polling place at the time for opening the polls, on receiving information of the absence, the authority authorized to appoint a replacement under Subsection (a) shall investigate the absence and appoint a replacement judge, subject to Subsection (f), unless the authority learns that a previously appointed judge will immediately report for duty.

(f)  A person who is appointed as a replacement for a judge originally appointed under Section 32.002 must be affiliated or aligned with the same political party as was the original judge, if possible.

SECTION 11.  Section 32.051, Election Code, is amended by amending Subsection (a) and adding Subsection (e) to read as follows:

(a)  Except as provided by Subsection (b) or (e), to be eligible to serve as a judge of an election precinct, a person must:

(1)  be a qualified voter of the precinct; and

(2)  for a regular county election precinct for which an appointment is made by the commissioners court, satisfy any additional eligibility requirements prescribed by written order of the commissioners court.

(e)  In a regular county election precinct for which an appointment is made by the commissioners court and in which a political party's candidate for governor received more than 85 percent of the vote in the most recent gubernatorial general election, the alternate presiding judge may be a qualified voter of another precinct in the county.

SECTION 12.  Subchapter C, Chapter 32, Election Code, is amended by adding Section 32.0552 to read as follows:

Sec. 32.0552.  INELIGIBILITY OF PERSON CONVICTED OF ELECTION OFFENSE. A person is ineligible to serve as an election judge or clerk in an election if the person has been finally convicted of an offense in connection with conduct directly attributable to an election.

SECTION 13.  Section 32.091, Election Code, is amended to read as follows:

Sec. 32.091.  COMPENSATION FOR SERVICES AT POLLING PLACE. (a)  An election judge or clerk is entitled to compensation for services rendered at a precinct polling place at an hourly rate not to exceed $6.  A judge or clerk may be compensated at that rate for services rendered under Section 62.014(c).

(b)  A judge or clerk may not be paid for more than one hour of work before the polls open, except for payment made for work under Section 62.014(c).  In a precinct in which voting machines are used, a judge or clerk may not be paid for more than two hours of work after the time for closing the polls or after the last voter has voted, whichever is later.

SECTION 14.  Section 32.094(a), Election Code, is amended to read as follows:

(a)  After each election, each presiding judge serving in the election shall prepare and sign, in duplicate, a statement containing the following information:

(1)  the name and address of the presiding judge and each clerk who served under the judge [him];

(2)  the number of hours that each election officer worked at the polling place or at another location under Section 62.014(c), excluding time for which payment may not be made; and

(3)  the name of the election officer who delivered the election records, keys, and unused supplies, and, if more than one officer, the name of and the amount of compensation allocated to each officer.

SECTION 15.  Section 33.002(a), Election Code, is amended to read as follows:

(a)  Watchers may be appointed by each candidate whose name appears on the ballot or the list of declared write-in candidates in an election for:

(1)  a public office other than the office of vice-president of the United States; or

(2)  an office of a political party.

SECTION 16.  Section 33.004(a), Election Code, is amended to read as follows:

(a)  A group of registered voters may appoint watchers on behalf of a write-in candidate <u>in an election in which a declaration of write-in candidacy is not required to be filed</u>.

SECTION 17.  Sections 33.006(b) and (c), Election Code, are amended to read as follows:

(b)  A certificate of appointment must:

(1)  be in writing and signed by the appointing authority or, for an appointment for a write-in candidate <u>under Section 33.004</u>, by each of the voters making the appointment;

(2)  indicate the capacity in which the appointing authority is acting;

(3)  state the name, residence address, and voter registration number of the appointee and be signed by the appointee;

(4)  identify the election and the precinct polling place or other location at which the appointee is to serve;

(5)  in an election on a measure, identify the measure if more than one is to be voted on and state which side of the measure the appointee represents; and

(6)  contain an affidavit executed by the appointee stating that the appointee will not have possession of any mechanical or electronic means of recording images or sound while serving as a watcher.

(c)  In addition to complying with Subsection (b), a certificate issued to a watcher <u>appointed</u> for a write-in candidate <u>under Section 33.004</u> must:

(1)  include the residence address and voter registration number of eligible signers in the required number;

(2)  include the signed statement of the candidate, or a person who would be authorized to make appointments on the candidate's behalf if the candidate's name appeared on the ballot, that the appointment is made with the signer's consent; and

(3)  state the residence or office address of the signer under Subdivision (2) and the capacity in which <u>the signer</u> [he] signs, if the statement is not signed by the candidate.

SECTION 18.  Subchapter B, Chapter 33, Election Code, is amended by adding Section 33.035 to read as follows:

Sec. 33.035.  INELIGIBILITY OF PERSON CONVICTED OF ELECTION OFFENSE. A person is ineligible to serve as a watcher in an election if the person has been finally convicted of an offense in connection with conduct directly attributable to an election.

SECTION 19.  Section 34.001(c), Election Code, is amended to read as follows:

(c)  A request under Subsection (b) must be received by the secretary of state not later than the fourth regular business day before the date of the election for which the inspectors are requested.  The request is not available for public inspection until the day after election day.

SECTION 20.  Section 41.001, Election Code, is amended by adding Subsection (c) to read as follows:

(c)  Except for an election under Subsection (a) or Section 41.0011, an election may not be held within 30 days before or after the date of the general election for state and county officers, general primary election, or runoff primary election.

SECTION 21.  Section 41.003, Election Code, is amended to read as follows:

Sec. 41.003.  AUTHORIZED NOVEMBER ELECTIONS IN EVEN-NUMBERED YEAR. Only the following elections may be held on the date of the general election for state and county officers:

(1)  a general or special election for officers of the federal, state, or county government;

(2)  a general or special election of officers of a general-law city if the city's governing body determines that the religious beliefs of more than 50 percent of the registered voters of the city prohibit voting on Saturday;

(3)  a general or special election [of officers] of a home-rule city [with a population under 30,000, if before 1975 the general election of the city's officers was held on that date in even-numbered years];

(4)  an election on a proposed amendment to the state constitution or on another statewide measure submitted by the legislature;

(5)  a countywide election on a measure that is ordered by a county authority and that affects county government;

(6)  an election on a measure submitted by order of an authority of a city described by Subdivision (2) [or (3)];

(7)  a commissioners' election of a self-liquidating navigation district held under Section 63.0895, Water Code; and

(8)  an election on a proposed home-rule school district charter or on a proposed amendment to a home-rule school district charter that is held under Section 12.019 or 12.020, Education Code.

SECTION 22.  Section 52.031(c), Election Code, is amended to read as follows:

(c)  A nickname of one unhyphenated word of not more than 10 letters by which the candidate has been commonly known for at least three [two] years [immediately] preceding the election may be used in combination with a candidate's name.  A nickname that constitutes a slogan or otherwise indicates a political, economic, social, or religious view or affiliation may not be used. A nickname may not be used unless the candidate executes and files with the application for a place on the ballot an affidavit indicating that the nickname complies with this subsection.

SECTION 23.  Section 52.061(a), Election Code, is amended to read as follows:

(a)  The ballot shall be printed in black ink on white or light-colored paper, but the ballot may not be the same color as sample ballots.

SECTION 24.  The heading of Section 61.010, Election Code, is amended to read as follows:

Sec. 61.010.  WEARING NAME TAG OR BADGE IN POLLING PLACE [PROHIBITED].

SECTION 25.  Section 61.010(b), Election Code, is amended to read as follows:

(b)  An election judge, an election clerk, a state or federal election inspector, a certified peace officer, or a special peace officer appointed for the polling place by the presiding judge shall [may] wear while on duty in the area described by Subsection (a) a [name] tag  or official badge that indicates the person's name and title or position.

SECTION 26.  Section 62.014, Election Code, is amended by adding Subsection (c) to read as follows:

(c)  An election officer may make the changes to the list of registered voters required by this section at a location other than the polling place before it is opened for voting.

SECTION 27.  Section 63.008, Election Code, is amended to read as follows:

Sec. 63.008.  VOTER WITHOUT CERTIFICATE WHO IS ON LIST.  (a)  A voter who does not present a voter registration certificate when offering to vote, but whose name is on the list of registered voters for the precinct in which the voter [he] is offering to vote, shall be accepted for voting if the voter executes an affidavit stating that the voter [he] does not have the voter's [his] voter registration certificate in the voter's [his] possession at the polling place at the time of offering to vote and:

　　　　(1)  the voter presents proof of identification in a form described by Section 63.0101; or

　　　　(2)  the affidavit is also signed by a person who is working at the polling place and who attests to the identity of the voter.

(b)  If the requirements prescribed by Subsection (a)  are not met, the voter may not be accepted for voting, and an election officer shall indicate beside the voter's name on the list of registered voters that the voter was rejected under this section.

SECTION 28.  Section 63.009, Election Code, is amended to read as follows:

Sec. 63.009.  Voter Without Certificate Who is Not on List. (a)  Except as provided by Subsection (b), a [A] voter who does not present a voter registration certificate when offering to vote, and whose name is not on the list of registered voters for the precinct in which the voter is offering to vote, shall be accepted for voting if[:

　　　　[(1)  an election officer can determine from the voter registrar that the person is a registered voter of the county, and the voter executes the affidavits required by Sections 63.007 and 63.008; or

[(2)] the voter presents proof of identification and executes an affidavit in accordance with Section 63.010.

(b)  If an election officer can determine from the voter registrar that the person is a registered voter of the county, the affidavits required by Sections 63.007 and 63.008 are substituted for the affidavit required by Section 63.010 in complying with that section.  After the voter is accepted under this subsection [Subsection (a)(1)], an election officer shall also indicate beside the voter's name on the poll list that the voter was accepted under this section.

SECTION 29.  Sections 63.010(d) and (e), Election Code, are amended to read as follows:

(d)  The presiding judge shall inform a voter of a challenge and of the issues raised by the challenge.  The presiding judge shall [may] request the [a] voter to present proof of identification in a form described by Section 63.0101 and to execute an affidavit that states the facts necessary to support the voter's eligibility to vote.  On presentation of the required proof of identification and affidavit, the presiding judge shall determine the voter's identity.  If the voter fails to present the required proof of identification, the presiding judge cannot verify the voter's identity from the proof presented, or the voter refuses to execute an affidavit, the voter may not be accepted for voting, and an election officer shall indicate on the affidavit or, if none, on a written statement containing the voter's name and any known residence address, and, if applicable, on the list of registered voters beside the voter's name that the voter was rejected under this section.  After determining the voter's identity, the presiding judge shall return the documentation of proof to the voter[, if available.  A voter's failure to present proof of identification does not affect the voter's right to vote under this section].

(e)  If a [the] challenged voter whose identity is verified executes an affidavit that states the facts necessary to support the voter's eligibility to vote, the voter shall be accepted, and "sworn" shall be entered on the poll list beside the voter's name.  If the voter's [challenged voter does not execute an] affidavit does not state [that states] the facts necessary to support the voter's eligibility to vote, the voter may not be accepted for voting, and an election officer ["rejected"]

shall indicate on the affidavit and, if applicable, [be entered] on the list of registered voters beside the voter's name that the voter was rejected under this section.

SECTION 30.  Chapter 63, Election Code, is amended by adding Section 63.0101 to read as follows:

Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION. The following documentation is acceptable as proof of identification under this chapter:

(1)  a driver's license or personal identification card issued to the person by the Department of Public Safety or a similar document issued to the person by an agency of another state, regardless of whether the license or card has expired;

(2)  a form of identification containing the person's photograph that establishes the person's identity;

(3)  a birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity;

(4)  United States citizenship papers issued to the person;

(5)  a United States passport issued to the person;

(6)  pre-printed checks containing the person's name that are issued for a financial institution doing business in this state;

(7)  official mail addressed to the person by name from a governmental entity;

(8)  two other forms of identification that establish the person's identity; or

(9)  any other form of identification prescribed by the secretary of state.

SECTION 31.  Section 67.003, Election Code, is amended to read as follows:

Sec. 67.003.  TIME FOR LOCAL CANVASS. Each local canvassing authority shall convene to conduct the local canvass at the time set by the canvassing authority's presiding officer:

(1)  on the seventh day after election day for the general election for state and county officers; or

(2)  not earlier than the third [second] day or later than the sixth day after election day for an election other than the general election for state and county officers [at the time set by the canvassing authority's presiding officer].

SECTION 32.  Section 67.004(c), Election Code, is amended to read as follows:

(c)  The canvassing authority may prepare the tabulation as a separate document or may enter the tabulation directly in the local election register maintained for the authority.  The authority shall attach or include as part of the tabulation the report of early voting votes by precinct [and by early voting polling place location] received under Section 87.1231.

SECTION 33.  Sections 84.001(a) and (e), Election Code, are amended to read as follows:

(a)  To be entitled to vote an early voting ballot by mail, a person who is eligible for early voting must make an application for an early voting ballot to be voted by mail as provided by this title.

(e)  A person who has not made an application as provided by this title is not entitled to receive an early voting ballot to be voted by mail.

SECTION 34.  Section 85.031, Election Code, is amended to read as follows:

Sec. 85.031.  ACCEPTING VOTER. (a)  For each person [If an applicant is] entitled to vote an early voting ballot by personal appearance, the early voting clerk shall follow the procedure for accepting a regular voter on election day, with the modifications necessary for the conduct of early voting.

(b)  On accepting a voter [A signature roster is not required to be maintained at an early voting polling place.

[(c)  If an applicant does not enter the applicant's voter registration number or county election precinct of residence on the application, or enters an incorrect number or precinct, the clerk shall enter the appropriate information on the application before permitting the applicant to vote.

[(d)  If the applicant is accepted to vote], the clerk shall indicate beside the voter's [applicant's] name on the list of registered voters or registration omissions list, as applicable, that the voter is [applicant was] accepted to vote by personal appearance unless the form of either list

makes it impracticable to do so, and the clerk shall enter the <u>voter's</u> [~~applicant's~~] name on the poll list.

SECTION 35.  Section 85.062(b), Election Code, is amended to read as follows:

(b)  A polling place established under this section may be located, subject to Subsection (d), at any place in the territory served by the early voting clerk and may be located in any <u>stationary</u> structure[~~, whether stationary or movable,~~] as directed by the authority establishing the branch office. <u>The polling place may be located in a movable structure in the general election for state and county officers, general primary election, or runoff primary election.</u> Ropes or other suitable objects may be used at the polling place to ensure compliance with Section 62.004. Persons who are not expressly permitted by law to be in a polling place shall be excluded from the polling place to the extent practicable.

SECTION 36.  Section 85.064(b), Election Code, is amended to read as follows:

(b)  Early voting by personal appearance at each temporary branch polling place established under Section 85.062(d) shall be conducted on the days [~~and for the same number of hours~~] that voting is required to be conducted at the main early voting polling place under Section 85.005. <u>The authority establishing the temporary branch polling place shall determine the hours during which the voting is to be conducted on those days.  The authority shall order voting to be conducted for the same number of hours that voting is required to be conducted on those days at the main early voting polling place under Section 85.005 on receipt of a written request for those hours submitted by at least 15 registered voters of the county.  The request must be submitted in time to enable compliance with Section 85.067.</u>

SECTION 37.  Section 85.069, Election Code, is amended to read as follows:

Sec. 85.069.  <u>ELECTION OFFICERS SERVING</u> [~~OFFICER IN CHARGE OF~~] BRANCH POLLING PLACE. <u>(a)</u>  The early voting clerk shall designate for each branch polling place a deputy early voting clerk as the election officer in charge of the polling place.

<u>(b)  The composition of the set of election officers serving a branch polling place must provide representation for each political party conducting a primary election in the county.</u>

SECTION 38.  Section 86.007, Election Code, is amended by amending Subsection (a) and adding Subsections (d), (e), (f), and (g) to read as follows:

(a)  Except as provided by Subsection (d), a [A] marked ballot voted by mail must arrive at the address on the carrier envelope before the time the polls are required to close on election day.

(d)  A marked ballot voted by mail that arrives after the time prescribed by Subsection (a) shall be counted if:

(1)  the ballot was cast from an address outside the United States;

(2)  the carrier envelope was placed for delivery before the time the ballot is required to arrive under Subsection (a); and

(3)  the ballot arrives at the address on the carrier envelope not later than:

(A)  the fifth day after the date of the general election for state and county officers; or

(B)  the second day after the date of an election other than the general election for state and county officers.

(e)  A delivery under Subsection (d)(2) is timely, except as otherwise provided by this title, if the carrier envelope or, if applicable, the envelope containing the carrier envelope:

(1)  is properly addressed with postage or handling charges prepaid;

(2)  is sent from an address outside the United States; and

(3)  bears a cancellation mark of a recognized postal service or a receipt mark of a common or contract carrier or a courier indicating a time before the deadline.

(f)  If the envelope does not bear the cancellation mark or receipt mark as required by Subsection (e)(3), a delivery under Subsection (d)(1) is presumed to be timely if the other requirements under this section are met.  Section 1.006 does not apply to Subsection (d)(3)(A).

(g)  The secretary of state shall prescribe procedures as necessary to implement Subsection (d).

SECTION 39.  Section 87.0241(b), Election Code, is amended to read as follows:

(b)  The board may not count early voting ballots until:

(1)  the polls open on election day; or

(2)  in a county with a population of 100,000 or more, the end of the period for early voting by personal appearance.

SECTION 40.  Section 87.1231, Election Code, is amended to read as follows:

Sec. 87.1231.  EARLY VOTING VOTES REPORTED BY PRECINCT [AND POLLING PLACE LOCATION]. (a)  Not later than the time of the local canvass, the early voting clerk shall deliver to the local canvassing authority a report of the total number of early voting votes for each candidate or measure by election precinct [and by early voting polling place location]. The report may reflect the total for votes by mail and the total for votes by personal appearance.

(b)  The early voting clerk may not report vote totals under Subsection (a) for an election precinct in which fewer than five votes are cast during the early voting period.

SECTION 41.  Subchapter G, Chapter 87, Election Code, is amended by adding Section 87.125 to read as follows:

Sec. 87.125.  COUNTING OF CERTAIN LATE BALLOTS VOTED BY MAIL. (a)  The early voting ballot board shall convene to count ballots voted by mail described by Section 86.007(d) on:

(1)  the sixth day after the date of a general election; or

(2)  the fifth day after the date of a primary or special election.

(b)  On counting the ballots under Subsection (a), the early voting ballot board shall report the results to the local canvassing authority for the election.

SECTION 42.  Section 101.003(b), Election Code, is amended to read as follows:

(b)  In this chapter, "federal postcard application" means an application for a ballot to be voted under this chapter submitted on the official federal form prescribed under the federal Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. Section 1973ff et seq.) [Federal Voting Assistance Act of 1955].

SECTION 43.  Section 101.004, Election Code, is amended by adding Subsections (e), (f), (g), (h), (i), and (j) to read as follows:

(e)  An applicant who otherwise complies with applicable requirements is entitled to receive a full ballot to be voted by mail under this chapter if:

    (1)  the applicant submits a federal postcard application to the early voting clerk on or before the 30th day before election day; and

    (2)  the application contains the information that is required for registration under Title 2.

(f)  The applicant is entitled to receive only a federal ballot to be voted by mail under Chapter 114 if:

    (1)  the applicant submits the federal postcard application to the early voting clerk after the 30th day before election day and before the sixth day before election day; and

    (2)  the application contains the information that is required for registration under Title 2.

(g)  An applicant who submits a federal postcard application to the early voting clerk on or after the sixth day before election day is not entitled to receive a ballot by mail for that election.

(h)  If the applicant submits the federal postcard application within the time prescribed by Subsection (f)(1) and is a registered voter at the address contained on the application, the applicant is entitled to receive a full ballot to be voted by mail under this chapter.

(i)  For purposes of determining the date a federal postcard application is submitted to the early voting clerk, an application is considered to be submitted on the date it is placed and properly addressed in the United States mail.  The date indicated by the post office cancellation mark is considered to be the date the application was placed in the mail unless proven otherwise. For purposes of an application made under Subsection (e):

    (1)  an application that does not contain a cancellation mark is considered to be timely if it is received by the early voting clerk on or before the 22nd day before election day; and

(2)  if the 30th day before the date of an election is a Saturday, Sunday, or legal state or national holiday, an application is considered to be timely if it is submitted to the early voting clerk on or before the next regular business day.

(j)  If the early voting clerk determines that an application that is submitted before the time prescribed by Subsection (e)(1) does not contain the information that is required for registration under Title 2, the clerk shall notify the applicant of that fact.  If the applicant submits the missing information before the time prescribed by Subsection (e)(1), the applicant is entitled to receive a full ballot to be voted by mail under this chapter.  If the applicant submits the missing information after the time prescribed by Subsection (e)(1), the applicant is entitled to receive a full ballot to be voted by mail for the next election that occurs:

(1)  in the same calendar year; and

(2)  30 days after the date the information is submitted.

SECTION 44.  Section 101.007(a), Election Code, is amended to read as follows:

(a)  The balloting materials provided under this chapter shall be airmailed to the voter free of United States postage, as provided by the federal Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. Section 1973ff  et seq.) [Federal Voting Assistance Act of 1955], in an envelope labeled "Official Election Balloting Material - via Airmail."  The secretary of state shall provide early voting clerks with instructions on compliance with this subsection.

SECTION 45.  Subtitle B, Title 7, Election Code, is amended by adding Chapter 105 to read as follows:

CHAPTER 105.  VOTING BY MILITARY PERSONNEL

Sec. 105.001.  ELECTRONIC TRANSMISSION OF COMPLETED BALLOT. (a)  The secretary of state shall prescribe procedures to allow a person who is casting an early voting ballot by mail to return the ballot by telephonic facsimile machine or similar electronic means if the person:

(1)  is a member of the armed forces of the United States who is on active duty overseas, or the spouse or a dependent of the member; and

(2)  is casting the ballot from an area:

(A)  in which members of the armed forces are eligible to receive hostile fire pay or imminent danger pay; or

(B)  that has been designated by the president of the United States as a combat zone.

(b)  The procedures must:

(1)  provide for verification of the voter;

(2)  provide for the security of the transmission; and

(3)  require the early voting clerk to maintain a record of each ballot received under this section.

(c)  A ballot transmitted under this section or by mail may not be counted if the ballot has previously been transmitted to the early voting clerk by electronic means under this section.

Sec. 105.002.  STATE WRITE-IN BALLOT. (a)  The secretary of state shall prescribe procedures to allow a voter to apply for and cast a state write-in ballot before the time a voter may receive a regular ballot to be voted by mail if the voter:

(1)  is a member of the armed forces of the United States or the spouse or a dependent of a member;

(2)  is unable to cast a ballot on election day or during the regular period for early voting because of a military contingency; and

(3)  makes an application on a federal postcard application that:

(A)  indicates that the person desires a state write-in ballot; and

(B)  contains the information that is required for registration under Title 2.

(b)  An application for a ballot under this section may not be submitted earlier than the 180th day before election day.  If an application under this section is received after the time that regularly printed ballots become available, the early voting clerk shall send the applicant a regularly printed ballot.

(c)  The secretary of state shall prescribe the form of the ballot to allow a voter to cast a vote in each federal, state, or local race in the election.  The ballot must allow a voter to write in the name of a candidate or, if applicable, cast a straight-party vote.

(d)  If a person casts a ballot under this section and under Chapter 114, the early voting clerk shall examine both ballots to determine the voter's intent.

SECTION 46.  Section 114.007(a), Election Code, is amended to read as follows:

(a)  The balloting materials provided under this chapter shall be airmailed to the voter free of United States postage, as provided by the federal Uniformed and Overseas Citizens Absentee Voting [Rights] Act (42 U.S.C. Section 1973ff  et seq.) [of 1975], in an envelope labeled "Official Election Balloting Material--via Airmail."  The secretary of state shall provide early voting clerks with instructions on compliance with this subsection.

SECTION 47.  Section 127.006(b), Election Code, is amended to read as follows:

(b)  Except as otherwise provided by this section, the eligibility requirements prescribed by this code for precinct election clerks apply to clerks serving at a central counting station.  To be eligible to serve as a clerk under this section, a person must be a qualified voter of the county in which the central counting station is located.  The general custodian of election records, an employee of the custodian, or any other [An] employee of a political subdivision is not ineligible [eligible] to serve as a clerk under this section because the person is a qualified voter of a county other than the county in which the central counting station is located or because of the custodian's status as a candidate or officeholder.

SECTION 48.  Section 127.1231, Election Code, is amended to read as follows:

Sec. 127.1231.  SECURITY OF AUTOMATIC TABULATING EQUIPMENT. (a)  Except as provided by Subsection (b), the [The] general custodian of election records shall ensure that any computer terminals located outside the central counting station that are capable of accessing the automatic tabulating equipment during the tabulation are capable of inquiry functions only and shall ensure that no modem access to the tabulating equipment is available during the tabulation.

(b)  The secretary of state may prescribe procedures for the use of a system to allow results to be transmitted by a modem to the central counting station from units of automatic tabulating equipment located at a precinct polling place or at a regional tabulating center serving several precincts.  The system must provide for a secure transmission of data.  Results may not be transmitted under this subsection until the polls close on election day.

SECTION 49.  Section 127.201, Election Code, is amended to read as follows:

Sec. 127.201.  PARTIAL COUNT OF ELECTRONIC VOTING SYSTEM BALLOTS BY GENERAL CUSTODIAN. (a)  To ensure the accuracy of the tabulation of electronic voting system results, the general custodian of election records shall conduct a manual count of all the races in at least one percent of the election precincts or in three precincts, whichever is greater, in which the electronic voting system was used.  The [Except as provided by Subsection (b), the] custodian shall select the precincts at random and shall begin the count not later than 72 hours after the polls close.  The count shall be completed not later than the 21st day after election day. Subsection (b) supersedes this subsection to the extent of a conflict.

(b)  In a general election for state and county officers, primary election, or election on a proposed amendment to the state constitution or other statewide measure submitted by the legislature, the secretary of state shall select, in accordance with rules adopted by the secretary, the precincts to be counted under Subsection (a).  The secretary shall designate not more than three offices and not more than three propositions to be counted in the selected precincts.  The secretary shall notify the general custodian of election records of the precincts, offices, and propositions selected under this subsection not earlier than the day after election day.

(c)  On selection or notification, as applicable, of the precincts to be counted, the general custodian of election records shall post in the custodian's office a notice of the date, hour, and place of the count.

(d) [(e)]  Each candidate in the election is entitled to be present at the count and is entitled to have a representative present. A representative must deliver a certificate of appointment to the

general custodian at the time the representative reports for service.  The certificate must be in writing and must include:

> (1)  the printed name and signature of the representative;

> (2)  the election subject to the count; and

> (3)  the printed name and signature of the candidate making the appointment.

(e) [(d)]  Not later than the third day after the date the count is completed, the general custodian of election records shall deliver a written report of the results of the count to the secretary of state.

(f) [(e)]  The secretary of state at any time may waive or reinstate the requirements of this section for a particular political subdivision.

SECTION 50.  Title 8, Election Code, is amended by adding Chapter 128 to read as follows:

CHAPTER 128.  COMPUTERIZED VOTING SYSTEMS

Sec. 128.001.  COMPUTERIZED VOTING SYSTEM STANDARDS.  (a)  The secretary of state shall prescribe procedures to allow for the use of a computerized voting system.  The procedures must provide for the use of a computerized voting system with:

> (1)  multiple voting terminals for the input of vote selections on the ballot presented by a main computer; and

> (2)  a main computer to coordinate ballot presentation, vote selection, ballot image storage, and result tabulation.

(b)  Notwithstanding Chapter 66, a system under this section may allow for the storage of processed ballot materials in an electronic form on the main computer.

(c)  The secretary of state may modify existing procedures as necessary to allow the use of a system authorized by this chapter.

SECTION 51.  Sections 141.032(c) and (d), Election Code, are amended to read as follows:

(c)  If an application is accompanied by a petition, the petition is considered part of the application, and the review shall be completed as soon as practicable after the date the application is received by the authority. However, the petition is not considered part of the

application for purposes of determining compliance with the requirements applicable to each document, and a deficiency in the requirements for one document may not be remedied by the contents of the other document.

(d)  A determination under this section that an application complies with the applicable requirements does not preclude a subsequent determination that the application does not comply, subject to Section 141.034.

SECTION 52.  Section 141.063, Election Code, is amended to read as follows:

Sec. 141.063.  VALIDITY OF SIGNATURE. (a)  A signature on a petition is valid if:

(1)  except as otherwise provided by this code, the signer, at the time of signing, is a registered voter of the territory from which the office sought is elected or has been issued a registration certificate for a registration that will become effective in that territory on or before the date of the applicable election;

(2)  the petition includes the following information with respect to each signer:

(A)  the signer's residence address;

(B)  the signer's date of birth and the signer's voter registration number and, if the territory from which signatures must be obtained is situated in more than one county, the county of registration;

(C)  the date of signing; and

(D)  the signer's printed name;

(3)  the part of the petition in which the signature appears contains the affidavit required by Section 141.065;

(4)  each statement that is required by this code to appear on each page of the petition appears, at the time of signing, on the page on which the signature is entered; and

(5)  any other applicable requirements prescribed by this code for a signature's validity are complied with.

(b)  The signature is the only information that is required to appear on the petition in the signer's own handwriting.

(c)  The use of ditto marks or abbreviations does not invalidate a signature if the required information is reasonably ascertainable.

(d)  The omission of the state from the signer's residence address does not invalidate a signature unless the political subdivision from which the signature is obtained is situated in more than one state.  The omission of the zip code from the address does not invalidate a signature.

SECTION 53.  Section 141.069, Election Code, is amended to read as follows:

Sec. 141.069.  VERIFYING SIGNATURES BY STATISTICAL SAMPLE. If signatures on a petition that is required to contain more than 1,000 signatures are to be verified by the authority with whom the candidate's application is required to be filed, the authority may use as the basis for the verification any reasonable statistical sampling method that ensures an accuracy rate of at least 95 percent [as the basis for the verification.  However, the sample may not be less than 25 percent of the total number of signatures appearing on the petition or 1,000, whichever is less].

SECTION 54.  Chapter 142, Election Code, is amended by adding Section 142.0021 to read as follows:

Sec. 142.0021.  FILING DECLARATIONS OF INTENT FOR MORE THAN ONE OFFICE PROHIBITED. (a)  A candidate may not file declarations of intent for two or more offices that:

(1)  are not permitted by law to be held by the same person; and

(2)  are to be voted on at one or more elections held on the same day.

(b)  If a person files more than one declaration of intent in violation of this section, each declaration filed subsequent to the first one filed is invalid.

SECTION 55.  Section 142.010(c), Election Code, is amended to read as follows:

(c)  A candidate's name may not be certified:

(1)  if, before delivering the certification, the certifying authority learns that the name is to be omitted from the ballot under Section 145.064; or

(2)  for an office for which the candidate's declaration or application is invalid under Section 142.0021 or 141.033, as applicable.

SECTION 56.  Section 146.054, Election Code, is amended to read as follows:

Sec. 146.054.  FILING DEADLINE. A declaration of write-in candidacy must be filed not later than 5 p.m. of the fifth day after the date an application for a place on the ballot is required to be filed [45th day before election day.  However, if a candidate whose name is to appear on the ballot dies or is declared ineligible after the 48th day before election day, a declaration of write-in candidacy for the office sought by the deceased or ineligible candidate may be filed not later than 5 p.m. of the 42nd day before election day].

SECTION 57.  Section 161.006, Election Code, is amended to read as follows:

Sec. 161.006.  Holding [Primary or] Precinct Convention of More Than One Party in Same Building. A political party may not [hold a primary election in the same building in which another party is holding a primary election on the same day or] hold a precinct convention in the same building in which another party is holding a precinct convention on the same day unless:

(1)  the rooms in which the [primary elections or] conventions are held are separated so that communication from one room to the other is precluded; and

(2)  a sign in bold print identifying the party holding the [primary election or] convention is posted at the entrance to each room.

SECTION 58.  Section 162.008(a), Election Code, is amended to read as follows:

(a)  This section applies only to a person desiring to affiliate with a political party during  that part of a voting year in which the general election for state and county officers is held that follows:

(1)  the date of the precinct conventions held under this title, for a party nominating by convention; or

(2)  7 p.m. on general primary election day, for a party holding a primary election.

SECTION 59.  Section 171.022, Election Code, is amended by amending Subsection (b) and adding Subsection (d) to read as follows:

(b)  Except as provided by Subsection (d), if [If] no candidate receives a majority of the votes, a runoff to determine the office is conducted in the same manner as a runoff primary election to

determine a nomination for public office.  The candidates to be in a runoff are determined in the same manner as candidates in a runoff for a nomination.

(d)  The state executive committee by rule may provide for the election of the county chair or precinct chairs of a particular county by plurality vote.

SECTION 60.  Section 171.024, Election Code, is amended by amending Subsections (b), (c), and (d) and adding Subsection (e) to read as follows:

(b)  Except as provided by Subsection (c), a [A] majority of the committee's membership must participate in filling a vacancy. To be elected, a person must receive a favorable vote of a majority of the members voting.

(c)  A vacancy in the office of precinct chair may be filled without participation of the majority of the committee membership if only one person is a candidate to fill the vacancy and the person:

(1)  was elected as a precinct chair in the most recent primary election in the county; and

(2)  is eligible to serve in the vacant office.

(d)  A vacancy may not be filled before the beginning of the term of  office in which the vacancy occurs.

(e)  [(d)]  After a vacancy is filled, the county chair [chairman] shall promptly deliver written notice of the replacement member's name and address to the state chair [chairman] and to the county clerk.

SECTION 61.  Section 172.1111, Election Code, is amended to read as follows:

Sec. 172.1111.  POSTING NOTICE OF PRECINCT CONVENTION REQUIRED.

(a)  Before the opening of the polls, the presiding judge shall post at each outside door through which a voter may enter the building in which the polling place is located a written notice in bold print of the date, hour, and place for convening the precinct convention.

(b)  The judge is not required to use an officially prescribed form for the notice.

(c)  The notice must remain posted continuously through election day.

SECTION 62.  Subchapter E, Chapter 172, Election Code, is amended by adding Section 172.126 to read as follows:

Sec. 172.126.  JOINT PRIMARIES AUTHORIZED. (a)  The primary elections in a county may be conducted jointly at the regular polling places designated for the general election for state and county officers.  The county clerk shall supervise the overall conduct of the  joint primary elections. This section applies to the conduct of joint primary elections notwithstanding and in addition to other applicable provisions of this code. The decision to conduct a joint primary election must be made by majority vote of the full membership of the commissioners court and with the unanimous approval of the county clerk and the county chair of each political party required to nominate candidates by primary election.

(b)  The county clerk shall determine whether to consolidate election precincts under Section 42.009 and shall designate the location of the polling place in a consolidated precinct.  To the extent possible, a polling place shall be designated that will accommodate the precinct conventions of each political party.  If a polling place, whether for a regular or consolidated precinct, is not suitable for more than one precinct convention, the polling place may be used by the party whose candidate for governor received the most votes in the county in the most recent gubernatorial general election.

(c)  One set of election officers shall conduct the primary elections at each polling place.  Not later than the second Monday in December preceding the primary elections, each county chair shall deliver to the county clerk a list of the names of the election judges and clerks for that party.  The presiding judge of each party, or alternate judge if applicable, serves as a co-judge for the precinct.  The county clerk shall appoint the election clerks in accordance with rules prescribed by the secretary of state.  The secretary of state shall prescribe the maximum number of clerks that may be appointed for each precinct.  The early voting ballot board and any central counting station shall also be composed of and administered by one set of election officers that provides representation for each party, and the secretary of state by rule shall prescribe procedures consistent with this subsection for the appointment of those officers.

(d)  Each co-judge has the law enforcement duties and powers provided under Section 32.075. Each co-judge has the exclusive authority to conduct challenges on the eligibility of voters, tabulate the votes, and deliver the election returns in the primary of the party with which that judge is affiliated or aligned.

(e)  A written certification of the candidates' names that are to appear on the primary ballot shall be delivered to the county clerk in accordance with rules prescribed by the secretary of state.

(f)  The county clerk shall determine the ballot format and voting system for each election precinct and shall procure the election equipment and supplies.

(g)  A separate set of ballot boxes or other suitable containers approved by the secretary of state shall be used for each party's primary, except that one set of ballot boxes or other containers may be used in a joint primary using an electronic voting system in which the ballots are deposited by the voters directly into a unit of automatic tabulating equipment.  The lists of registered voters and the voters' registration certificates shall be marked and stamped to show the appropriate party affiliation for each voter.  A separate list of registered voters shall be used for each party's primary.  The secretary of state by rule shall prescribe requirements to ensure that one party's ballot is readily distinguished from another's, which may include the use of different colors of ink.

(h)  Separate election returns shall be prepared for each party's primary and shall be canvassed as provided by this code.

(i)  The secretary of state by rule shall prescribe the procedures necessary to implement this section to ensure the orderly and proper administration of joint primary elections.

SECTION 63.  Subchapter A, Chapter 173, Election Code, is amended by adding Section 173.011 to read as follows:

Sec. 173.011.  FINANCING OF JOINT PRIMARY ELECTIONS GENERALLY. (a)  This section applies to the financing of joint primary elections notwithstanding and in addition to other applicable provisions of this code.

(b)  Any surplus remaining in a county primary fund shall be remitted to the county clerk immediately after the final payment from the fund of the necessary expenses for holding the primary elections for that year, but not later than July 1 following the applicable primary election.  The surplus in the primary fund shall be remitted regardless of whether state funds were requested by the chair.  Any surplus primary funds received by the county clerk under this subsection may be used only for paying the remaining expenses of the joint primary election.

(c)  The secretary of state shall adopt rules, consistent with this chapter to the extent practicable, that are necessary for the fair and efficient financing of joint primary elections.

SECTION 64.  Section 181.006(k), Election Code, is amended to read as follows:

(k)  The secretary of state shall post a notice of the receipt of a petition on the bulletin board used for posting notice of meetings of state governmental bodies.  Any person may challenge the validity of the petition by filing a written statement of the challenge with the secretary of state not later than the fifth day after the date notice is posted.  The [If a petition that complies with the other applicable requirements appears on its face to contain a sufficient number of valid signatures, the] secretary of state may [not] verify the petition signatures regardless of whether [unless] the petition is timely challenged.

SECTION 65.  Section 212.005, Election Code, is amended by amending Subsection (c) and adding Subsection (d) to read as follows:

(c)  Except as provided by Subsection (d), if [If] more than one petition or application is approved, the recount requested by each person shall be conducted at the same time.

(d)  If different counting methods are chosen under Section 214.042(a) among multiple requests for a recount of electronic voting system results, only one method may be used in the recount.  A manual recount shall be conducted in preference to an electronic recount and an electronic recount using a corrected program shall be conducted in preference to an electronic recount using the same program as the original count.

SECTION 66.  Section 212.0241, Election Code, is amended to read as follows:

Sec. 212.0241.  No Ground Required for Electronic Voting System Recount. (a)  A ground for obtaining an initial recount as prescribed by this subchapter is not required to obtain an initial recount of electronic voting system results, subject to Subsection (b).

(b)  A candidate for nomination or election to an office may obtain an initial recount of electronic voting system results in an election in which the person was a candidate only if the candidate is shown by the election returns not to be nominated or elected.

(c)  The secretary of state shall prescribe any procedures necessary to accommodate the authorization to obtain a recount of electronic voting system results without a specific ground.

(d)  This section does not affect the scope of a recount as governed by Subchapter F.

SECTION 67.  Sections 212.081, 212.083, and 212.085, Election Code, are amended to read as follows:

Sec. 212.081.  Applicability of Subchapter. This subchapter applies to a recount in an election on an office in which:

      (1)  a majority vote is required for nomination or election; and

      (2)  votes were cast for more than two candidates[; and

      [(3)  a regularly scheduled runoff for another office that was voted on at the same election, or at an election held jointly with the election for which a recount is desired, is to be held in any part of the territory covered by the election on the office for which a recount is desired].

Sec. 212.083.  Deadline for Submitting Petition. The [(a)  If the date for the regularly scheduled runoff may not be earlier than the 25th day after the date of the election in which the recount is desired, the] deadline for submitting a recount petition under this subchapter is the later of:

      (1)  2 p.m. of the third day after election day; or

      (2)  2 p.m. of the first day after the date of the local canvass.

[(b)  If the date for the regularly scheduled runoff may be earlier than the 25th day after the date of the election, the deadline for submitting the petition is 2 p.m. of the second day after election day.]

Sec. 212.085.  Deadline for Amending Petition. [(a)]  The deadline for amending a petition under this subchapter [governed by Section 212.083(a)] is:

(1)  10 a.m. of the day after the date notice of defect is received, if received at or after 12 midnight and before 12 noon; or

(2)  4 p.m. of the day after the date notice of defect is received, if received at or after 12 noon and before 12 midnight.

[(b)  The deadline for amending a petition governed by Section 212.083(b) is:

[(1)  4 p.m. of the day notice of defect is received, if received at or after 12 midnight and before 10 a.m.;

[(2)  10 a.m. of the day after the date notice of defect is received, if received at or after 10 a.m. and before 5 p.m.; or

[(3)  2 p.m. of the day after the date notice of defect is received, if received at or after 5 p.m. and before 12 midnight.]

SECTION 68.  Section 212.113, Election Code, is amended to read as follows:

Sec. 212.113.  Return of Deposit. (a)  On rejection of a recount document, the recount coordinator shall return the recount deposit to the person who submitted the document.

(b)  On the timely withdrawal of a recount document, the recount coordinator shall return to the person who submitted the document the recount deposit less any necessary expenditures made toward the conduct of the recount before the request for withdrawal was received.

(c)  The recount coordinator shall return to each person requesting a recount whose chosen counting method is not used under Section 212.005(d) the recount deposit less any necessary expenditures made toward the conduct of the recount before the other counting method was determined to be the preferential method.

SECTION 69.  Section 232.008, Election Code, is amended by adding Subsection (d) to read as follows:

(d)  A contestant must deliver a copy of the petition to the secretary of state by the same deadline prescribed for the filing of the petition.

SECTION 70.  Section 233.006, Election Code, is amended by adding Subsection (c) to read as follows:

(c)  The contestant must deliver a copy of the petition to the secretary of state by the same deadline prescribed for the filing of the petition.

SECTION 71.  Section 255.007, Election Code, is amended to read as follows:

Sec. 255.007.  NOTICE REQUIREMENT ON POLITICAL ADVERTISING SIGNS. (a) The following notice must be written on each political advertising sign:

"NOTICE:  IT IS A VIOLATION OF STATE LAW (CHAPTERS 392 AND 393, TRANSPORTATION CODE) [(ARTICLE 2372cc, VERNON'S TEXAS CIVIL STATUTES, AND ARTICLE 6674v-7, REVISED STATUTES)], TO PLACE THIS SIGN IN THE RIGHT-OF-WAY OF A HIGHWAY."

(b)  A person commits an offense if the person:

(1)  knowingly enters into a contract to print or make a political advertising sign that does not contain the notice required by Subsection (a); or

(2)  instructs another person to place a political advertising sign that does not contain the notice required by Subsection (a).

(c)  An offense under this section is a Class C misdemeanor.

(d)  It is an exception to the application of Subsection (b) that the political advertising sign was printed or made before September 1, 1997, and complied with Subsection (a) as it existed immediately before that date.

(e)  In this section, "political advertising sign" means a written form of political advertising designed to be seen from a road but does not include a bumper sticker.

SECTION 72.  Chapter 271, Election Code, is amended by adding Section 271.0071 to read as follows:

Sec. 271.0071.  MULTIPLE METHODS OF VOTING ALLOWED. The restrictions on multiple methods of voting at the same polling place or in early voting prescribed by Sections 123.005-123.007 do not apply to a joint election as if the joint election were a single election but rather apply independently to the election of each participating political subdivision in the joint election.

SECTION 73.  Sections 277.002(a) and (d), Election Code, are amended to read as follows:

(a)  For a petition signature to be valid, a petition must:

    (1)  contain in addition to the signature:

        (A)  the signer's printed name;

        (B)  the signer's date of birth and the signer's voter registration number and, if the territory from which signatures must be obtained is situated in more than one county, the county of registration;

        (C)  the signer's residence address; and

        (D)  the date of signing; and

    (2)  comply with any other applicable requirements prescribed by law.

(d)  The omission of the state from the signer's residence address does not invalidate a signature unless the political subdivision from which the signature is obtained is situated in more than one state.  The omission of the zip code from the address does not invalidate a signature.

SECTION 74.  Section 11.056(b), Education Code, is amended to read as follows:

(b)  A declaration of write-in candidacy must be filed not later than 5 p.m. of the fifth day after the date an application for a place on the ballot is required to be filed [30th day before the date of the election.  However, if a candidate whose name is to appear on the ballot dies or is declared ineligible after the 33rd day before the date of the election, a declaration of write-in candidacy for the office sought by the deceased or ineligible candidate may be filed not later than 5 p.m. of the 27th day before the date of the election].

SECTION 75.  Subchapter C, Chapter 49, Water Code, is amended by adding Section 49.072 to read as follows:

Sec. 49.072.  DIRECTOR'S CANDIDACY FOR OTHER OFFICE: INELIGIBILITY. (a)  A person serving as director of a district who becomes a candidate for another office is no longer qualified to serve as director.

(b)  In this section, "candidate" has the meaning assigned by Section 251.001, Election Code.

SECTION 76.  Section 9.004(b), Local Government Code, is amended to read as follows:

(b)  The ordinance ordering the election shall provide for the election to be held on the first authorized uniform election date prescribed by the Election Code or on the earlier of the date of the next municipal general election or presidential general election. The election date must allow [that allows] sufficient time to comply with other requirements of law and must occur [that occurs] on or after the 30th day after the date the ordinance is adopted.

SECTION 77.  Section 84.006, Election Code, is repealed.

SECTION 78.  Not later than January 15, 1999, the secretary of state shall file a report with the lieutenant governor and the speaker of the house of representatives on the costs of elections held by political subdivisions of this state on dates other than the uniform election dates prescribed by Section 41.001, Election Code.

SECTION 79.  This Act takes effect September 1, 1997.

SECTION 80.  The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

_____     _____

   President of the Senate         Speaker of the House

    I certify that H.B. No. 331 was passed by the House on May 1, 1997, by a non-record vote; and that the House concurred in Senate amendments to H.B. No. 331 on May 28, 1997, by a non-record vote.

_____

          Chief Clerk of the House

    I certify that H.B. No. 331 was passed by the Senate, with amendments, on May 23, 1997, by a viva-voce vote.

_____

          Secretary of the Senate

APPROVED: _____

       Date

_____

Governor

H.B. No. 1549

1                              AN ACT

2   relating to changes required in election laws to implement the

3   federal Help America Vote Act of 2002.

4        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5        SECTION 1.  Section 13.002(c), Election Code, is amended to

6   read as follows:

7        (c)  A registration application must include:

8             (1)  the applicant's first name, middle name, if any,

9   last name, and former name, if any;

10            (2)  the month, day, and year of the applicant's birth;

11            (3)  a statement that the applicant is a United States

12   citizen;

13            (4)  a statement that the applicant is a resident of the

14   county;

15            (5)  a statement that the applicant has not been

16   determined mentally incompetent by a final judgment of a court;

17            (6)  a statement that the applicant has not been

18   finally convicted of a felony or that the applicant is a felon

19   eligible for registration under Section 13.001;

20            (7)  the applicant's residence address or, if the

21   residence has no address, the address at which the applicant

22   receives mail and a concise description of the location of the

23   applicant's residence;

24            (8)  the following information:

1

H.B. No. 1549

1          (A)  the applicant's Texas driver's license number

2   or the number of a personal identification card issued by the

3   Department of Public Safety;

4          (B)  if the applicant has not been issued a number

5   described by Paragraph (A), the last four digits of the applicant's

6   social security number; or

7          (C)  a statement by the applicant that the

8   applicant has not been issued a number described by Paragraph (A) or

9   (B);

10         (9)  if the application is made by an agent, a statement

11  of the agent's relationship to the applicant; and

12         (10) [(9)]  the city and county in which the applicant

13  formerly resided.

14       SECTION 2.  Section 13.121(a), Election Code, is amended to

15  read as follows:

16       (a)  The officially prescribed application form for

17  registration by mail must be in the form of a business reply

18  postcard, unless another form or system is used under Subsection

19  (b), with postage paid by the state.  [The form may not be larger

20  than the form in use immediately prior to January 1, 1986.]  The

21  secretary of state shall design the form to enhance the legibility

22  of its contents.

23       SECTION 3.  Section 13.122, Election Code, is amended by

24  amending Subsection (a) and adding Subsection (d) to read as

25  follows:

26       (a)  In addition to the other statements and spaces for

27  entering information that appear on an officially prescribed

H.B. No. 1549

1  registration application form, each official form must include:

2            (1)  the  statement:  "I  understand  that  giving  false

3  information to procure a voter registration is perjury and a crime

4  under state and federal law.";

5            (2)  a space for the applicant's registration number;

6            (3)  a space for the applicant's Texas driver's license

7  number or number of a personal identification card issued by the

8  Department of Public Safety;

9            (4)  a space for the applicant's telephone number;

10           (5)  a  space  for  the  applicant's  social  security

11  number;

12           (6)  a space for the applicant's sex;

13           (7)  a statement indicating that the furnishing of the

14  applicant's [driver's license number, personal identification card

15  number,] telephone number[, social security number,] and sex is

16  optional;

17           (8)  a  space  or  box  for  indicating  whether  the

18  applicant or voter is submitting new registration information or a

19  change in current registration information;

20           (9)  a statement instructing a voter who is using the

21  form to make a change in current registration information to enter

22  the  voter's  name  and  the  changed  information  in  the  appropriate

23  spaces on the form;

24           (10)  a  statement  that  if  the  applicant  declines  to

25  register to vote, that fact will remain confidential and will be

26  used only for voter registration purposes;

27           (11)  a  statement  that  if  the  applicant  does  register

H.B. No. 1549

1  to vote, information regarding the agency or office to which the

2  application is submitted will remain confidential and will be used

3  only for voter registration purposes; and

4          (12) any other voter registration information

5  required by federal law or considered appropriate and required by

6  the secretary of state.

7          (d)  The secretary of state shall prescribe procedures to

8  inform an applicant who applies for registration by mail of the

9  requirement that before voting for the first time in an election for

10  federal office an applicant must provide a copy of a document

11  described by Section 63.0101 that establishes the applicant's

12  identity.  The procedures must include providing an instructional

13  sheet to be distributed with the official registration application

14  form describing the requirement and a method by which an applicant

15  may submit the document along with the official registration

16  application form.  This subsection expires on the earlier of:

17          (1)  January 1, 2006; or

18          (2)  the date the secretary of state certifies that the

19  statewide computerized voter registration list has been

20  implemented.

21      SECTION 4.  Section 18.005(a), Election Code, is amended to

22  read as follows:

23      (a)  Each original and supplemental list of registered

24  voters must:

25          (1)  contain the voter's name, residence address, date

26  of birth, and registration number as provided by the statewide

27  computerized voter registration list;

4

H.B. No. 1549

1            (2)     be arranged alphabetically by voter name; [and]

2            (3)     contain the notation required by Section 15.111; 

3 and

4            (4)     until Section 13.122(d) expires, identify each 

5 voter registered by mail for the first time who failed to provide a 

6 copy of a document described by Section 63.0101 establishing the 

7 voter's identity at the time of registration.

8       SECTION 5. Effective January 1, 2006, the heading to 

9 Subchapter C, Chapter 18, Election Code, is amended to read as 

10 follows:

11    SUBCHAPTER C. STATEWIDE VOTER REGISTRATION LIST [REGISTRATION 

12                       SERVICE PROGRAM]

13       SECTION 6. Effective January 1, 2006, Section 18.061, 

14 Election Code, is amended to read as follows:

15       Sec. 18.061. STATEWIDE COMPUTERIZED VOTER REGISTRATION 

16 LIST [REGISTRATION SERVICE PROGRAM AUTHORIZED]. (a) The secretary 

17 of state shall [may] implement and maintain a statewide 

18 computerized voter registration list that serves as the single 

19 system for storing and managing the official list of registered 

20 voters in the state [registration service program to assist 

21 registrars in maintaining accurate lists of registered voters].

22       (b) The statewide computerized voter registration list [A 

23 service program] must [include]:

24            (1) contain the name and registration information of 

25 each voter registered in the state [obtaining registration 

26 information from registrars and other available sources for a 

27 master file on registered voters];

H.B. No. 1549

1        (2)  assign a unique identifier to each registered

2  voter [periodically obtaining information from registrars and

3  other available sources for the following purposes:

4            [(A) to aid in determining the proper status of

5  voters on the lists of registered voters; and

6            [(B) to aid in ascertaining the proper

7  registration information for each registered voter]; and

8        (3)  be available to any election official in the state

9  through immediate electronic access [furnishing information that

10  may be useful to the registrars in the performance of their official

11  duties].

12      (c)  Under procedures prescribed by the secretary of state,

13  each voter registrar shall provide to the secretary of state on an

14  expedited basis the information necessary to maintain the

15  registration list established under Subsection (a). The procedures

16  shall provide for the electronic submission of the information.

17      (d)  The secretary of state may contract with counties to

18  provide them with electronic data services to facilitate the

19  implementation of the statewide computerized voter registration

20  list [service program]. The secretary shall use funds collected

21  under the contracts to defray expenses incurred in implementing the

22  statewide computerized voter registration list [service program].

23      SECTION 7. Effective January 1, 2006, Section 18.064,

24  Election Code, is amended to read as follows:

25      Sec. 18.064.  SANCTION FOR NONCOMPLIANCE. If a registrar

26  fails to substantially comply with Section 15.083 [14.025], 16.032,

27  18.042, or 18.061 [18.063] or with rules adopted by the secretary of

6

H.B. No. 1549

1    state implementing the <u>statewide computerized voter registration</u>

2    <u>list</u> [~~registration service program~~], the registrar is not entitled

3    to receive state funds for financing voter registration in the

4    county.

5         SECTION 8.  Effective January 1, 2006, Section 18.065(a),

6    Election Code, is amended to read as follows:

7         (a)  The secretary of state shall monitor each registrar for

8    substantial compliance with Sections <u>15.083</u> [~~14.025~~], 16.032,

9    18.042, and <u>18.061</u> [~~18.063~~] and with rules implementing the

10   <u>statewide computerized voter registration list</u> [~~registration~~

11   ~~service program~~].

12        SECTION 9.  Effective January 1, 2006, the heading to

13   Section 18.066, Election Code, is amended to read as follows:

14        Sec. 18.066.  AVAILABILITY OF <u>STATEWIDE COMPUTERIZED VOTER</u>

15   <u>REGISTRATION LIST</u> [~~MASTER FILE~~] INFORMATION.

16        SECTION 10.  Effective January 1, 2006, Section 18.066(a),

17   Election Code, is amended to read as follows:

18        (a)  The secretary of state shall furnish information in the

19   <u>statewide computerized voter registration list</u> [~~state master file~~]

20   to any person on request not later than the 15th day after the date

21   the request is received.

22        SECTION 11.  Effective January 1, 2006, the heading to

23   Section 18.067, Election Code, is amended to read as follows:

24        Sec. 18.067.  UNLAWFUL USE OF <u>STATEWIDE COMPUTERIZED VOTER</u>

25   <u>REGISTRATION LIST</u> [~~MASTER FILE~~] INFORMATION.

26        SECTION 12.  Section 19.004, Election Code, is amended by

27   amending Subsection (a) and adding Subsection (d) to read as

7

H.B. No. 1549

1   follows:

2        (a)   Except as provided by Subsection (d), state [State]

3   funds disbursed under this chapter may be used only to defray

4   expenses of the registrar's office in connection with voter

5   registration, including additional expenses related to:

6            (1)   implementation of the National Voter Registration

7   Act of 1993 (42 U.S.C. Section 1973gg et seq.); and

8            (2)   complying with the weekly updating requirements

9   prescribed by Section 18.063.

10       (d)   If the secretary of state determines that federal

11  matching funds are available under the federal Help America Vote

12  Act of 2002, the secretary of state shall certify to the comptroller

13  the amount of state funds required to qualify for the maximum amount

14  of federal matching funds.   On receipt of the certification, the

15  comptroller shall deposit from funds otherwise available under this

16  chapter an amount equal to the certified amount in the election

17  improvement fund established under Section 31.011.

18       SECTION 13.   Effective September 1, 2003, Chapter 31,

19  Election Code, is amended by adding Sections 31.010 and 31.011 to

20  read as follows:

21       Sec. 31.010.   IMPLEMENTATION OF FEDERAL HELP AMERICA VOTE

22  ACT.   (a)   The secretary of state may adopt rules as necessary to

23  implement the federal Help America Vote Act of 2002.

24       (b)   The secretary of state shall adopt rules establishing

25  state-based administrative complaint procedures to remedy

26  grievances that meet the requirements of Section 402(a) of the

27  federal Help America Vote Act of 2002.

H.B. No. 1549

Sec. 31.011.  ELECTION IMPROVEMENT FUND.  (a)  The election improvement fund is created as a dedicated account in the general revenue fund and consists of federal funds designated for election improvement, matching funds from the state or a political subdivision, and depository interest earned on the assets of the fund.

(b)  Money in the fund may be appropriated only to provide funding for the following purposes:

(1)  to improve election administration at the state and local level;

(2)  to make grants to local governments for the improvement or replacement of voting systems;

(3)  to create a single uniform official centralized interactive voter registration database; and

(4)  to comply with other election requirements of the federal government.

(c)  The fund is exempt from the application of Section 403.095, Government Code.

SECTION 14.  Section 41.001(a), Election Code, is amended to read as follows:

(a)  Except as otherwise provided by this subchapter, each general or special election in this state shall be held on one of the following dates:

(1)  the first Saturday in February;

(2)  the third [first] Saturday in May;

(3)  the second Saturday in September; or

(4)  the first Tuesday after the first Monday in

9

H.B. No. 1549

1    November.

2        SECTION 15.  Section 41.0052(a), Election Code, is amended

3    to read as follows:

4        (a)  The governing body of a political subdivision other than

5    a county may, not later than December 31, 2004 [1999], change the

6    date on which it holds its general election for officers to another

7    authorized uniform election date.  [An election on the new date may

8    not be held before 2000.]

9        SECTION 16.  Section 41.007(b), Election Code, is amended to

10   read as follows:

11       (b)  The runoff primary election date is the third [second]

12   Tuesday in April following the general primary election.

13       SECTION 17.  Section 52.008(a), Election Code, is amended to

14   read as follows:

15       (a)  The authority responsible for procuring the election

16   supplies shall [may] have a supply of sample ballots printed.

17       SECTION 18.  Section 52.074, Election Code, is amended to

18   read as follows:

19       Sec. 52.074.  PROVISIONAL BALLOT [STUB] FOR CERTAIN VOTERS.

20   [(a)]  The authority responsible for having the official ballot

21   prepared shall have a provisional [detached] ballot [stub] prepared

22   in a form approved by the secretary of state [as provided by this

23   section] for use by a voter who executes an affidavit in accordance

24   with Section 63.011 [63.010].

25       [(b)  The ballot stub shall be in a form approved by the

26   secretary of state and must include:

27           [(1)  a space for entering the number matching the

10

H.B. No. 1549

1  ~~corresponding ballot number;~~

2          [~~(2)   spaces for entering the designation of the nature~~

3  ~~of the election and the date of the election;~~

4          [~~(3)   the instruction:   "Sign ballot stub, enclose in~~

5  ~~envelope, and give to election officer.";   and~~

6          [~~(4)   a space for the voter's signature.~~]

7          SECTION 19.  Section 61.005, Election Code, is amended to

8  read as follows:

9          Sec. 61.005.  SECURITY OF BALLOTS, BALLOT BOXES, [~~STUBS,~~]

10  AND ENVELOPES.  (a)  From the time a presiding judge receives the

11  official ballots for an election until the precinct returns for

12  that election have been certified, the presiding judge shall take

13  the precautions necessary to prevent access to the ballots, ballot

14  boxes, [~~ballot stubs,~~] and [~~stub~~] envelopes <u>used for provisional</u>

15  <u>ballots</u> in a manner not authorized by law.

16          (b)  The ballots, ballot boxes, [~~ballot stubs,~~] and [~~stub~~]

17  envelopes <u>used for provisional ballots</u> at a polling place shall be

18  in plain view of at least one election officer from the time the

19  polls open for voting until the precinct returns have been

20  certified.

21          (c)  A presiding election judge commits an offense if the

22  judge fails to prevent another person from handling a ballot box

23  containing voters' marked ballots or an envelope containing <u>a</u>

24  <u>voter's provisional ballot</u> [~~voters' signed ballot stubs~~] in an

25  unauthorized manner or from making an unauthorized entry into the

26  ballot box or envelope.  An offense under this subsection is a Class

27  A misdemeanor.

H.B. No. 1549

1    SECTION 20.   Subchapter A, Chapter 61, Election Code, is
2    amended by adding Section 61.012 to read as follows:

3        Sec. 61.012.   ACCESS BY PERSONS WITH DISABILITIES.  (a)  Not
4    later than January 1, 2006, each polling place must provide at least
5    one voting station that:

6            (1)   complies   with   Section   504   of   the   federal
7    Rehabilitation  Act  of  1973  (29  U.S.C.  Section  794)  and  its
8    subsequent amendments and Title II of the federal Americans with
9    Disabilities  Act  (42  U.S.C.  Section  12131  et  seq.)  and  its
10   subsequent amendments; and

11           (2)   provides  a  practical  and  effective  means  for
12   voters with physical disabilities to cast a secret ballot.

13       (b)   Subsection (a) applies only to a polling place that uses
14   an electronic voting system unless the secretary of state certifies
15   that federal law requires the application of Subsection (a) to all
16   forms of voting at a polling place.

17       SECTION 21.   Section 62.006, Election Code, is amended to
18   read as follows:

19       Sec. 62.006.   PLACING BOX [AND ENVELOPE] FOR DEPOSIT OF
20   MARKED BALLOTS [AND STUBS].  The ballot box to be used by the voters
21   to deposit marked ballots shall be locked.   The ballot box and the
22   box used for the deposit of provisional ballots [envelope no. 5]
23   shall be placed where they will be in plain view of the election
24   officers, watchers, and persons waiting to vote.

25       SECTION 22.   Section 62.009(c), Election Code, is amended to
26   read as follows:

27       (c)   The provisional ballots [with stubs] shall be placed

12

H.B. No. 1549

1    separately from the regular ballots.

2        SECTION 23.  Section 62.011, Election Code, is amended by

3    amending Subsections (b) and (c) and adding Subsection (d) to read

4    as follows:

5        (b)  The secretary of state shall prescribe the form and

6    content of the instruction poster.  If it is not practical to fit

7    all of the information required by this section on a single poster,

8    the secretary of state may provide for the use of two or more

9    posters to convey the information.

10       (c)  The poster must include instructions applicable to the

11   election on:

12               (1)  marking and depositing the ballot;

13               (2)  voting for a write-in candidate;

14               (3)  casting a straight-party vote;

15               (4)  casting a provisional ballot;

16               (5)  until the expiration of Section 13.122(d), voting

17   for the first time by a person who registered by mail; and

18               (6)  [(4)]  securing an additional ballot if the voter's

19   original ballot is spoiled.

20       (d)  The poster must also include the following information:

21               (1)  the date of the election and the hours during which

22   the polling place is open;

23               (2)  general information on voting rights under state

24   and federal laws, including information on the right of an

25   individual to cast a provisional ballot and the individuals to

26   contact if a person believes these rights have been violated; and

27               (3)  general information on state and federal laws that

13

H.B. No. 1549

1    prohibit acts of fraud or misrepresentation.

2         SECTION 24.   Section 62.012, Election Code, is amended to

3    read as follows:

4         Sec. 62.012.   POSTING SAMPLE BALLOT.   An [~~If sample ballots~~

5    ~~are provided for a polling place, an~~] election officer shall post a

6    sample ballot in one or more locations in the polling place where it

7    can be read by persons waiting to vote.

8         SECTION 25.   Section 63.008, Election Code, is amended to

9    read as follows:

10        Sec. 63.008.   VOTER WITHOUT CERTIFICATE WHO IS ON LIST.   (a)

11   A voter who does not present a voter registration certificate when

12   offering to vote, but whose name is on the list of registered voters

13   for the precinct in which the voter is offering to vote, shall be

14   accepted for voting if the voter executes an affidavit stating that

15   the voter does not have the voter's voter registration certificate

16   in the voter's possession at the polling place at the time of

17   offering to vote and[~~:~~

18             [~~(1)~~] the voter presents proof of identification in a

19   form described by Section 63.0101[~~, or~~

20             [~~(2)   the affidavit is also signed by a person who is~~

21   ~~working at the polling place and who attests to the identity of the~~

22   ~~voter~~].

23        (b)   If the requirements prescribed by Subsection (a) are not

24   met, the voter may [~~not~~] be accepted for provisional voting only

25   under Section 63.011[~~, and an election officer shall indicate~~

26   ~~beside the voter's name on the list of registered voters that the~~

27   ~~voter was rejected under this section~~].

H.B. No. 1549

1    SECTION 26.  Section 63.009, Election Code, is amended to

2    read as follows:

3        Sec. 63.009.  VOTER WITHOUT CERTIFICATE WHO IS NOT ON LIST.

4    (a)  Except as provided by Subsection (b), a voter who does not

5    present a voter registration certificate when offering to vote, and

6    whose name is not on the list of registered voters for the precinct

7    in which the voter is offering to vote, shall be accepted for

8    provisional voting if the voter [presents proof of identification

9    and] executes an affidavit in accordance with Section 63.011

10   [63.010].

11       (b)  If an election officer can determine from the voter

12   registrar that the person is a registered voter of the county and

13   the person presents proof of identification, the affidavits

14   required by Sections 63.007 and 63.008 are substituted for the

15   affidavit required by Section 63.011 [63.010] in complying with

16   that section.  After the voter is accepted under this subsection, an

17   election officer shall also indicate beside the voter's name on the

18   poll list that the voter was accepted under this section.

19       SECTION 27.  Section 63.0101, Election Code, is amended to

20   read as follows:

21       Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.

22   The   following   documentation   is   acceptable   as   proof   of

23   identification under this chapter:

24           (1)  a driver's license or personal identification card

25   issued to the person by the Department of Public Safety or a similar

26   document  issued  to  the  person  by  an  agency  of  another  state,

27   regardless of whether the license or card has expired;

15

H.B. No. 1549

1          (2)  a form of identification containing the person's
2    photograph that establishes the person's identity;

3          (3)  a birth certificate or other document confirming
4    birth that is admissible in a court of law and establishes the
5    person's identity;

6          (4)  United States citizenship papers issued to the
7    person;

8          (5)  a United States passport issued to the person;

9          (6)  [pre-printed checks containing the person's name
10   that are issued for a financial institution doing business in this
11   state;

12         [(7)] official mail addressed to the person by name
13   from a governmental entity;

14         (7)  a copy of a current utility bill, bank statement,
15   government check, paycheck, or other government document that shows
16   the name and address of the voter [(8)  two other forms of
17   identification that establish the person's identity]; or

18         (8)  [(9)] any other form of identification prescribed
19   by the secretary of state.

20         SECTION 28.  Chapter 63, Election Code, is amended by adding
21   Section 63.011 to read as follows:

22         Sec. 63.011.  PROVISIONAL VOTING.  (a)  A person to whom
23   Section 63.008(b) or 63.009(a) applies may cast a provisional
24   ballot if the person executes an affidavit stating that the person:

25         (1)  is a registered voter in the precinct in which the
26   person seeks to vote; and

27         (2)  is eligible to vote in the election.

H.B. No. 1549

1    (b)  A form for the affidavit shall be printed on an envelope

2    in which the provisional ballot voted by the person may be placed

3    and must include a space for entering the identification number of

4    the provisional ballot voted by the person.  The affidavit form may

5    include space for disclosure of any necessary information to enable

6    the person to register to vote under Chapter 13.  The secretary of

7    state shall prescribe the form of the affidavit under this section.

8    (c)  After executing the affidavit, the person shall be given

9    a provisional ballot for the election.  An election officer shall

10   record  the  number  of  the  ballot  on  the  space  provided  on  the

11   affidavit.

12   (d)  An election officer shall enter "provisional vote" on

13   the  poll  list  beside  the  name  of  each  voter  who  is  accepted  for

14   voting under this section.

15   (e)  A person who is permitted under a state or federal court

16   order to cast a ballot in an election for a federal office after the

17   time allowed by Subchapter B, Chapter 41, must cast the ballot as a

18   provisional vote in the manner required by this section.

19   SECTION 29.  Section 63.012(a), Election Code, is amended to

20   read as follows:

21   (a)  An election officer commits an offense if the officer

22   knowingly:

23   (1)  permits an ineligible voter to vote other than as

24   provided by Section 63.011 [without having been challenged]; or

25   (2)  refuses  to  accept  a  person  for  voting  whose

26   acceptance is required by this code.

27   SECTION 30.  Section 64.001, Election Code, is amended to

17

H.B. No. 1549

1    read as follows:

2        Sec. 64.001.   VOTER TO SELECT AND PREPARE BALLOT[, DEPOSIT

3    OF STUB]. (a) After a voter is accepted for voting, the voter shall

4    select a ballot, go to a voting station, and prepare the ballot[,

5    except as provided by Subsection (b)].

6        (b)  A voter who executes an affidavit in accordance with

7    Section 63.011 [63.010] shall select a provisional ballot [with a

8    stub and, before going to a voting station:

9            [(1)  unclip the stub and envelope from the ballot;

10           [(2)  sign the stub and enclose it in the envelope; and

11           [(3)  seal the envelope and give it to an election

12   officer.

13       [(c) The election officer shall deposit the ballot stub

14   enclosed in its envelope in envelope no. 5].

15       SECTION 31.  Section 64.008, Election Code, is amended to

16   read as follows:

17       Sec. 64.008.   DEPOSITING BALLOT. (a) Except as provided by

18   Subsection (b), after [After] a voter has marked the ballot, the

19   voter shall fold the ballot to conceal the way it is marked but to

20   expose the presiding judge's signature, and shall deposit it in the

21   ballot box used for the deposit of marked ballots.

22       (b)  After a voter has marked  a provisional ballot, the

23   voter shall enclose the ballot in the envelope on which the voter's

24   executed affidavit is printed.  The person shall seal the envelope

25   and deposit it in a box available for the deposit of provisional

26   ballots.

27       (c)  At the time a person casts a provisional ballot under

18

H.B. No. 1549

1  Subsection (b), an election officer shall give the person written

2  information describing how the person may use the free access

3  system established under Section 65.059 to obtain information on

4  the disposition of the person's vote.

5       SECTION 32.  Sections 65.001-65.015, Election Code, are

6  designated as Subchapter A, Chapter 65, Election Code, and a

7  heading is added to that subchapter to read as follows:

8            SUBCHAPTER A. COUNTING VOTES GENERALLY

9       SECTION 33.  Section 65.009, Election Code, is amended by

10  adding Subsection (d) to read as follows:

11       (d)  The intent of the voter in marking a ballot may be

12  determined by:

13            (1)  a distinguishing mark adjacent to the name of a

14  candidate or political party or a voting choice associated with a

15  proposition;

16            (2)  an oval, box, or similar marking clearly drawn

17  around the name of a candidate or political party or a voting choice

18  associated with a proposition;

19            (3)  a line drawn through:

20                 (A)  the names of all candidates in a manner that

21  indicates a preference for the candidates not marked if the names of

22  the candidates not marked do not exceed the number of persons that

23  may be elected to that office;

24                 (B)  the name of each political party except one

25  in a manner that clearly indicates a preference for the political

26  party not marked; or

27                 (C)  a voting choice associated with a proposition

19

H.B. No. 1549

1 in a manner that clearly indicates a preference for the other voting

2 choice associated with the proposition; or

3   (4) any other evidence that clearly indicates the

4 intent of the voter in choosing a candidate or political party or

5 deciding on a proposition.

6   SECTION 34. Section 65.010(a), Election Code, is amended to

7 read as follows:

8   (a) The following ballots may not be counted:

9     (1) a ballot that is not provided to the voter at the

10 polling place;

11     (2) two or more ballots that are folded together in a

12 manner indicating that they were folded together when deposited in

13 the ballot box;

14     (3) a write-in envelope containing a write-in vote

15 without an attached ballot;

16     (4) a ballot that has not been deposited in the ballot

17 box used for the deposit of marked ballots; or

18     (5) a provisional ballot that is not accepted under

19 Subchapter B [with an unsigned stub].

20   SECTION 35. Chapter 65, Election Code, is amended by adding

21 Subchapter B to read as follows:

22 SUBCHAPTER B. VERIFICATION AND COUNTING OF PROVISIONAL BALLOTS

23   Sec. 65.051. DUTY OF EARLY VOTING BALLOT BOARD. (a) The

24 early voting ballot board shall verify and count provisional

25 ballots as provided by this subchapter not later than the seventh

26 day after the date of an election.

27   (b) Except as provided by this subchapter, the conduct of

H.B. No. 1549

1 the board is governed by the same procedures as are provided by
2 Chapter 87.

3      Sec. 65.052. DUTY OF VOTER REGISTRAR. The secretary of
4 state shall prescribe procedures by which the voter registrar of
5 the county in which a provisional ballot is cast shall provide
6 assistance to the early voting ballot board in executing its
7 authority under this subchapter.

8      Sec. 65.053. DELIVERY OF PROVISIONAL BALLOTS. The
9 presiding judge of an election precinct shall deliver in person to
10 the general custodian of election records the box containing each
11 envelope containing a provisional ballot that was cast in the
12 precinct. The secretary of state shall prescribe procedures by
13 which the early voting ballot board may have access to the
14 provisional ballots as necessary to implement this subchapter.

15      Sec. 65.054. ACCEPTING PROVISIONAL BALLOT. (a) The early
16 voting ballot board shall examine each affidavit executed under
17 Section 63.011 and determine whether to accept the provisional
18 ballot of the voter who executed the affidavit.

19      (b) A provisional ballot may be accepted only if the board
20 determines that, from the information in the affidavit or contained
21 in public records, the person is eligible to vote in the election.

22      (c) If a provisional ballot is accepted, the board shall
23 enter the voter's name on a list of voters whose provisional ballots
24 are accepted.

25      (d) If a provisional ballot is rejected, the board shall
26 indicate the rejection by marking "rejected" on the envelope
27 containing the provisional ballot.

H.B. No. 1549

1    Sec. 65.055.  DISPOSITION OF ACCEPTED PROVISIONAL BALLOT AND
2    AFFIDAVIT.  (a)  The early voting ballot board shall open each
3    envelope   containing   an   accepted   provisional   ballot   without
4    defacing the affidavit located on the outside of the envelope and
5    shall remove the ballot.
6        (b)  The board shall place the ballot in a ballot box
7    containing all the provisional ballots accepted for voting in the
8    election.
9        (c)  For each accepted provisional ballot, the board shall
10   place the corresponding envelope on which is printed the voter's
11   affidavit executed under Section 63.011 in a sealed envelope and
12   shall deliver the envelope to the general custodian of election
13   records, to be retained for the period for preserving precinct
14   election returns.
15       Sec. 65.056.  DISPOSITION OF REJECTED PROVISIONAL BALLOT.
16   (a)  If the affidavit on the envelope of a rejected provisional
17   ballot contains the information necessary to enable the person to
18   register to vote under Chapter 13, the voter registrar shall make a
19   copy of the affidavit under procedures prescribed by the secretary
20   of state.  The voter registrar shall treat the copy as an
21   application for registration under Chapter 13.
22       (b)  The early voting ballot board shall place the envelopes
23   containing rejected provisional ballots in an envelope and shall
24   seal the envelope. More than one envelope may be used if necessary.
25       (c)  The envelope for the rejected provisional ballots must
26   indicate  the  date  and  identity  of  the  election,  be  labeled
27   "rejected  provisional  ballots,"  and  be  signed  by  the  board's

22

H.B. No. 1549

1    presiding judge.

2        (d)  A board member shall deliver the envelope containing the

3    rejected provisional ballots to the general custodian of election

4    records to be preserved for the period for preserving the precinct

5    election records.   The envelope may not be placed in the box

6    containing the accepted provisional ballots.

7        Sec. 65.057.  PROCESSING ACCEPTED PROVISIONAL BALLOTS. (a)

8    The early voting ballot board shall count accepted provisional

9    ballots as follows:

10           (1)  for ballots to be counted manually, in the manner

11   provided by Subchapter D, Chapter 87;

12           (2)  for ballots to be counted by automatic tabulating

13   equipment at a central counting station, in the manner provided by

14   Subchapter F, Chapter 87; and

15           (3)  for ballots to be counted by any other means, in

16   the manner provided by rules adopted by the secretary of state.

17       (b)  On counting the ballots under this section, the board

18   shall report the results to the local canvassing authority for the

19   election.

20       Sec. 65.058.  PRESERVATION OF PROVISIONAL VOTING RECORDS

21   GENERALLY.  The returns of provisional ballots that are accepted,

22   the accepted ballots, and other provisional voting records shall be

23   preserved after the election in the same manner as the

24   corresponding precinct election returns.

25       Sec. 65.059.  NOTICE TO PROVISIONAL VOTER.  The secretary of

26   state shall prescribe procedures to implement a system to allow a

27   person who casts a provisional ballot under Section 63.011 to

23

H.B. No. 1549

1   obtain access free of charge to information on the disposition of

2   the person's ballot.  The system:

3            (1)  must allow the person to determine whether the

4   person's ballot was counted, and, if the person's ballot was not

5   accepted, must indicate the reason why;

6            (2)  must provide the information only to the person

7   who cast the provisional ballot; and

8            (3)  may involve the use of a toll-free telephone

9   number or the Internet.

10           SECTION 36.  Section 66.003, Election Code, is amended to

11  read as follows:

12           Sec. 66.003.  ENVELOPES FOR DISTRIBUTION OF RECORDS.  (a)

13  Four [Five] envelopes shall be furnished to each polling place for

14  use in assembling and distributing the precinct election records.

15           (b)  The envelopes shall be labeled and addressed as follows:

16           (1)  "Envelope No. 1," addressed to the presiding

17  officer of the local canvassing authority;

18           (2)  "Envelope No. 2," addressed to the general

19  custodian of election records;

20           (3)  "Envelope No. 3," addressed to the presiding

21  judge; and

22           (4)  "Envelope No. 4," addressed to the voter

23  registrar[, and

24           [(5)  "Envelope No. 5," addressed to the general

25  custodian of election records].

26           SECTION 37.  Section 66.021(b), Election Code, is amended to

27  read as follows:

H.B. No. 1549

1    (b)  The judge shall seal envelopes no. 1, no. 2, and no. 4[,

2    and no. 5] and lock ballot boxes no. 3 and no. 4 as soon as they are

3    ready for distribution.

4         SECTION 38.  Section 66.0241, Election Code, is amended to

5    read as follows:

6         Sec. 66.0241.  CONTENTS OF ENVELOPE NO. 4.  Envelope no. 4

7    must contain:

8              (1)  the precinct list of registered voters;

9              (2)  the registration correction list;

10             (3)  the registration omissions list;

11             (4)  any statements of residence executed under Section

12   63.0011; and

13             (5)  any affidavits executed under Section 63.007 or

14   63.011 [63.010].

15        SECTION 39.  Section 66.051(b), Election Code, is amended to

16   read as follows:

17        (b)  The presiding judge shall deliver envelope no. 2,

18   [envelope no. 5,] ballot box no. 3, and ballot box no. 4 and its key

19   in person to the general custodian of election records.

20        SECTION 40.  Sections 66.058(b), (c), and (d), Election

21   Code, are amended to read as follows:

22        (b)  The voted ballots [and ballot stubs] shall be preserved

23   securely in a locked room in the locked ballot box [or sealed

24   envelope, as applicable,] in which they are delivered to the

25   general custodian of election records.  Except as permitted by this

26   code, a ballot box containing voted ballots [or an envelope

27   containing ballot stubs] may not be opened during the preservation

25

H.B. No. 1549

1    period.

2        (c)  If during the preservation period an authorized entry is
3    made into a ballot box containing voted ballots [~~or an envelope~~
4    ~~containing ballot stubs~~], when the purpose for the entry is
5    fulfilled, the box [~~or envelope~~] shall be relocked [~~or resealed, as~~
6    ~~applicable~~], and the box and key [~~or envelope~~] returned to the
7    custodian.

8        (d)  A custodian of a ballot box containing voted ballots [~~or~~
9    ~~an envelope containing ballot stubs~~] commits an offense if, during
10   the preservation period prescribed by Subsection (a), the
11   custodian:

12           (1)  makes an unauthorized entry into the box [~~or~~
13   ~~envelope~~]; or

14           (2)  fails to prevent another person from handling the
15   box [~~or envelope~~] in an unauthorized manner or from making an
16   unauthorized entry into the box [~~or envelope~~].

17       SECTION 41.  Section 66.059, Election Code, is amended to
18   read as follows:

19       Sec. 66.059.  RETRIEVING   ERRONEOUSLY   PLACED   ELECTION
20   RECORDS.  (a)  On written application by the presiding officer of
21   the local canvassing authority or the presiding judge of the
22   election precinct, a district judge of the county in which a ballot
23   box containing voted ballots [~~or an envelope containing ballot~~
24   ~~stubs~~] is in custody may order the box [~~or envelope~~] opened to
25   retrieve an election record that was erroneously placed in the box
26   [~~or envelope~~].

27       (b)  The district judge shall post a notice of the date,

26

H.B. No. 1549

1   hour, and place for opening the box [or envelope] on the bulletin

2   board used for posting notices of the meetings of the governing body

3   of the political subdivision served by the general custodian of

4   election records.  The notice must remain posted continuously for

5   the 24 hours immediately preceding the hour set for opening the box

6   [or envelope].

7       (c)  Any interested person may observe the opening of the box

8   [or envelope].

9       (d)  The district judge shall issue the orders necessary to

10   safeguard the contents of a ballot box [or envelope] opened under

11   this section.

12       SECTION 42.  Section 67.003, Election Code, is amended to

13   read as follows:

14       Sec. 67.003.  TIME FOR LOCAL CANVASS.  Each local canvassing

15   authority shall convene to conduct the local canvass at the time set

16   by the canvassing authority's presiding officer:

17       (1)  on the eighth [seventh] day after election day for

18   the general election for state and county officers; or

19       (2)  not earlier than the eighth [third] day or later

20   than the 11th [sixth] day after election day for an election other

21   than the general election for state and county officers.

22       SECTION 43.  Section 86.002, Election Code, is amended by

23   adding Subsection (f) to read as follows:

24       (f)  For an election for a federal office, if the list of

25   registered voters indicates that the voter did not provide a copy of

26   a document described by Section 63.0101 establishing the voter's

27   identity at the time of initial registration by mail, the clerk

27

H.B. No. 1549

1    shall provide with the balloting materials notice to the voter that

2    the voter must provide a copy of a document described by Section

3    63.0101 establishing the voter's identity when returning the

4    ballot.  The secretary of state shall prescribe the form of the

5    notice.  This subsection expires on the earlier of:

6            (1)  January 1, 2006; or

7            (2)  the date the secretary of state certifies that the

8    statewide computerized voter registration list has been

9    implemented.

10        SECTION 44.  Section 86.005, Election Code, is amended by

11    adding Subsection (f) to read  as follows:

12        (f)  If the voter is required to provide a copy of a document

13    described by Section 63.0101 establishing the voter's identity, the

14    voter shall include the copy in the official carrier envelope.  This

15    subsection expires on the expiration of Section 86.002(f).

16        SECTION 45.  Subchapter C, Chapter 87, Election Code, is

17    amended by adding Section 87.0411 to read as follows:

18        Sec. 87.0411.  ACCEPTANCE OF NEW VOTER IN ELECTION FOR

19    FEDERAL OFFICE.  (a)  A ballot for which notice was provided under

20    Section 86.002(f) may be accepted only if:

21            (1)  the voter provided the required documentation of

22    the voter's identity; or

23            (2)  the early voting ballot board determines that the

24    person is eligible to vote.

25        (b)  This section expires on the expiration of Section

26    86.002(f).

27        SECTION 46.  Section 101.005(c), Election Code, is amended

H.B. No. 1549

1    to read as follows:

2        (c)  An application shall be treated as if it requests a

3    ballot for:

4            (1)  a runoff election that results from an election

5    for which a ballot is requested; and

6            (2)  each election for a federal office, including a

7    primary or runoff election, that occurs on or before the date of the

8    second general election for state and county officers that occurs

9    after the date the application is submitted.

10       SECTION 47.  Section 101.006(a), Election Code, is amended

11   to read as follows:

12       (a)  The submission of a federal postcard application that

13   complies with the applicable requirements by an unregistered

14   applicant constitutes registration by the applicant only for the

15   purpose of voting in the election for which a ballot is requested

16   and each election for a federal office that occurs on or before the

17   date of the second general election for state and county officers

18   that occurs after the date the application is submitted.

19       SECTION 48.  Chapter 101, Election Code, is amended by

20   adding Section 101.013 to read as follows:

21       Sec. 101.013.  DESIGNATION OF  SECRETARY OF STATE.  The

22   secretary of state is designated as the state office to provide

23   information regarding voter registration procedures and absentee

24   ballot procedures, including procedures related to the federal

25   write-in absentee ballot, to be used by persons eligible to vote

26   under the federal Uniformed and Overseas Citizens Absentee Voting

27   Act (42 U.S.C. Section 1973ff et seq.), as amended.

H.B. No. 1549

1    SECTION 49.  Section 122.001, Election Code, is amended by

2    amending Subsection (a) and adding Subsections (d) and (e) to read

3    as follows:

4         (a)  A voting system may not be used in an election unless the

5    system:

6              (1)  preserves the secrecy of the ballot;

7              (2)  is  suitable  for  the  purpose  for  which  it  is

8    intended;

9              (3)  operates safely, efficiently, and accurately and

10   complies  with  the  error  rate  standards  of  the  voting  system

11   standards adopted by the Federal Election Commission;

12             (4)  is  safe  from  fraudulent  or  unauthorized

13   manipulation;

14             (5)  permits voting on all offices and measures to be

15   voted on at the election;

16             (6)  prevents counting votes on offices and measures on

17   which the voter is not entitled to vote;

18             (7)  prevents counting votes by the same voter for more

19   than one candidate for the same office or, in elections in which a

20   voter is entitled to vote for more than one candidate for the same

21   office,  prevents  counting  votes  for  more  than  the  number  of

22   candidates for which the voter is entitled to vote;

23             (8)  prevents  counting  a  vote  on  the  same  office  or

24   measure more than once;

25             (9)  permits write-in voting;

26             (10)  is  capable  of  permitting  straight-party  voting;

27   and

30

H.B. No. 1549

1          (11)  is capable of providing records from which the
2  operation of the voting system may be audited.

3          (d)  Effective January 1, 2006, a voting system may not be
4  used in an election if the system uses:

5                (1)  mechanical voting machines; or

6                (2)  a punch-card ballot or similar form of tabulating
7  card.

8          (e)  For an election for federal office in which a state or
9  federal court order has extended the time for voting beyond the time
10 allowed by Subchapter B, Chapter 41, a voting system must provide a
11 separate count of the votes cast after the time allowed by that
12 subchapter.

13         SECTION 50.  Section 124.006, Election Code, is amended to
14 read as follows:

15         Sec. 124.006.  IMPLEMENTATION OF PROVISIONAL BALLOT [STUB]
16 SYSTEM.  The secretary of state shall prescribe the form of a
17 provisional ballot [stub and ballot for use with a stub] and the
18 necessary procedures to implement the casting of a provisional
19 ballot as described by Section 63.011 and the verification and
20 processing of provisional ballots under Subchapter B, Chapter 65,
21 for [ballot stub system prescribed by Section 52.074 for use with]
22 each voting system used in this state.

23         SECTION 51.  Section 127.130, Election Code, is amended by
24 adding Subsection (c-1) to read as follows:

25         (c-1)  In any manual count conducted under this code, an
26 irregularly marked vote on a ballot on which a voter indicates a
27 vote by making a mark on the ballot is considered in the same manner

31

H.B. No. 1549

1    as provided by Section 65.009.

2          SECTION 52.   Section 172.116(b), Election Code, is amended

3    to read as follows:

4          (b)   The committee shall convene to conduct the local canvass

5    at the county seat not earlier than 6 p.m. on the second [first]

6    Thursday or later than 1 p.m. on the second [first] Friday after

7    election day at the hour specified by the county chair.

8          SECTION 53.   Sections 203.012(a) and (b), Election Code, are

9    amended to read as follows:

10         (a)   The commissioners court shall convene to conduct the

11    local canvass not later than the 10th [third] day after election

12    day.

13         (b)   The governor shall conduct the state canvass not later

14    than the 14th [seventh] day after election day.

15         SECTION 54.   Section 213.007(a), Election Code, is amended

16    to read as follows:

17         (a)   On presentation by a recount committee chair of a

18    written order signed by the recount supervisor, the custodian of

19    voted ballots, voting machines or test materials or programs used

20    in counting electronic voting system ballots shall make the

21    ballots, machines, or materials or programs, including the records

22    from which the operation of the voting system may be audited,

23    available to the committee.

24         SECTION 55.   Section 221.008, Election Code, is amended to

25    read as follows:

26         Sec. 221.008.   EXAMINATION OF SECURED BALLOTS AND EQUIPMENT.

27    A tribunal hearing an election contest may cause secured ballot

H.B. No. 1549

1  boxes, [envelopes,] voting machines, voting devices, or other
2  equipment used in the election to be unsecured to determine the
3  correct vote count or any other fact that the tribunal considers
4  pertinent to a fair and just disposition of the contest.

5      SECTION 56. Sections 273.041, 273.042, and 273.043,
6  Election Code, are amended to read as follows:

7      Sec. 273.041. REQUEST TO EXAMINE BALLOTS. In the
8  investigation of criminal conduct in connection with an election, a
9  grand jury, on finding probable cause to believe an offense was
10 committed, may request a district judge of the county served by the
11 grand jury to order an examination of the voted ballots [and the
12 ballot stubs] in the election.

13     Sec. 273.042. ORDER BY DISTRICT JUDGE. On request of a
14 grand jury for an examination of voted ballots [and ballot stubs], a
15 district judge may order the custodian of the ballots [and ballot
16 stubs] and the custodian of the keys to the ballot boxes to deliver
17 the ballot boxes and the [,] keys[, and envelopes] to the grand
18 jury.

19     Sec. 273.043. CONDUCT OF EXAMINATION. The examination of
20 ballots [and ballot stubs] under this subchapter shall be conducted
21 in secret before the grand jury.

22     SECTION 57. (a) Sections 62.0081, 63.010, 65.005(d),
23 66.0242, and 66.058(h) and Chapter 88, Election Code, are repealed.

24     (b) Effective January 1, 2006, Sections 18.062, 18.063, and
25 122.0011, Election Code, are repealed.

26     SECTION 58. Except as otherwise provided by this Act, this
27 Act takes effect January 1, 2004.

H.B. No. 1549

_____        _____

   President of the Senate                  Speaker of the House

     I certify that H.B. No. 1549 was passed by the House on April 24, 2003, by a non-record vote; and that the House concurred in Senate amendments to H.B. No. 1549 on May 28, 2003, by a non-record vote.

                            _____

                             Chief Clerk of the House

     I certify that H.B. No. 1549 was passed by the Senate, with amendments, on May 27, 2003, by the following vote:  Yeas 31, Nays 0.

                            _____

                             Secretary of the Senate

APPROVED: _____

               Date

     _____

          Governor

34

| From: | Rodriguez, Tony |
|---|---|
| To: | O'Connor, Ryan |
| Sent: | 10/29/2013 11:27:28 AM |
| Subject: | FW: CORRECTION.....FW: EIC Region 3 Weekly Report (21 Oct - 26 Oct) |
| Attachments: | EIC Region 3 Weekly Report (21 Oct - 26 Oct).xls |

v/r

*Tony Rodriguez*

Customer Operations Senior Manager – South and West
Driver License Division
Texas Department of Public Safety
tony.rodriguez@dps.texas.gov
512.424.5657 (O)
512.739.9709 (C)
512.424.5233 (F)

---

**From:** Silva, Samuel
**Sent:** Monday, October 28, 2013 9:51 AM
**To:** Rodriguez, Tony; Krueger, Kristopher; Daughtry, Lisa; O'Connor, Ryan
**Cc:** Flores, Maria; Ramirez, Raquel
**Subject:** CORRECTION.....FW: EIC Region 3 Weekly Report (21 Oct - 26 Oct)
**Importance:** High

Please note the CORRECTION for the number of Inquiries.
**The numbers should be:**
**Issuance:  26**
**Inquiry:  209**

Thank you.
Sam.

| 3 | Issuance | 26 | **(5) Hidalgo County:**<br>La Joya City Hall Unit #17:  EIC # 37826757, Gonzalez, Selina Ludivina<br>Weslaco Business & Visitor Center Unit #17:<br>    EIC # 37835211, Serna, Selina Edith<br>    EIC # 37835290, Gonzalez, Adrian<br>Mercedes City Hall Unit #20:  EIC # 37826530, Macias, Diana Victoria<br>City of San Juan Unit #15:  EIC # 37830715, Bustamante, Adrian<br>**(2) Starr County:**<br>Roma Library Unit #16:  EIC # 37844672, Salinas, Juan Carlos<br>La Rosita Unit #15:  EIC # 37844638, Sepulveda, Guillermo<br>**(1) Kinney County:**<br>Kinney Co Courthouse Unit #72, EIC # 37844676, Gomez, Javier Mateo<br><br>**(1) Corpus Christi (Station 301):**  EIC # 37844947, Krack, Mathew Micah<br>**(1) Harlingen (Station 308):**  EIC # 37841065, Rodriguez, Kamie Ranae<br>**(16) Weslaco (Station 321):**<br>    EIC # 37823391, Carranza, Elizabeth Ayala<br>    EIC # 37827900, Martinez, Vanessa Lee<br>    EIC # 37833298, Gonzalez, Juan<br>    EIC # 37833192, Cantu, Oralia |
|---|---|---|---|

TEX0478735

EIC # 37836385, Cantu, Ricardo Jr.
EIC # 37836697, Gonzalez, Oralia Ann
EIC # 37836612, Gonzalez, Daniella Lynn
EIC # 37836801, Tovias, David
EIC # 37837172, Castillo, Jesse
EIC # 37837405, Rodriguez, Blas
EIC # 37837662, Segura, Joseph Dylan
EIC # 37837712, Castillo, Juan David
EIC # 37838523, Rojas, Laura Celina
EIC # 37832655, Loysoya, Fernando
EIC # 37842437, Aguirre III, Benito
EIC # 37834617, Alaniz, Brandon Lee

| | | |
|---|---|---|
| **Inquiry** | **209** | **Hidalgo County:**<br>**Inquiry had valid ID/DL**<br>17 - McAllen City Hall Unit #15<br>15 - Mercedes City Hall Unit #20<br>7 - La Joya City Hall Unit #17<br>57 - Hidalgo City Hall Unit #17<br>4 - Edinburg City Hall Unit #15<br>11 - Weslaco Business & Visitor Center Unit #17<br>7 - City of San Juan Unit #15<br>**Inquiry for information only**<br>1 - La Joya City Hall Unit #17, Customer was needing supporting document<br>1 - Weslaco Business & Visitor Center Unit #17, Customer was needing Birth Certificate<br>**Starr County:**<br>**Inquiry had Valid DL/ID**<br>3 - Nutrition Center, Rio Grande Unit #15<br>20 - Starr County Courthouse Annex Unit #17<br>16 - Starr County Courthouse Unit #20<br>7 - Roma Library Unit #16<br>6 - La Rosita Library Unit #15<br>**Inquiry for information only**<br>1 - Rosita Library Unit #15, Customer needed birth certificate<br>2 - Roma Library Unit #16, Customer needed birth certificate<br>1 - Roma Library Unit #16, Applicant was not a US Citizen<br>1 - Starr Co Courthouse Unit #20, Qualified but missing documents<br><br>**Nueces County:**<br>**Inquiry had valid DL/ID**<br>4 - Greenwood Sr Center Unit #24, Individuals had valid Driver License.<br>**Inquiry for information only**<br>1 - Nueces Co Courthouse Unit #21, Applicants were just asking for information.<br>1 - Flour Bluff ISD Unit #23: Individual asked for explaination of EICs.<br>1 - Greenwood Sr Center Unit #24, Individual did not have birth certificate. |

**San Patricio County:**
**Inquiry for information only**
1 - City Hall Annex Unit #22, Customer inquired about required documentation for EIC. Said he would return.
**Kinney County:**
**Inquiry had valid DL/ID/Passport**
1 - Kinney Co Courthouse Unit #72, Applicant was in possession of passport.
**Inquiry for information only**
1 - Kinney Co Courthouse Unit #72, Applicant was not old enough.
1 - Kinney Co Courthouse Unit #72, Individual was just inquiring for information.
**Edwards County:**
**Inquiry had valid DL/ID**
1 - Sherriff's Office Unit #75, Individual was in possession of TXDL.

**Region 3:**
12 - Inquiry had valid DL/ID
3 - Inquiry did not have proof of citizenship
5- Inquiry for information only

*DLD Vision: We are creating a faster, easier, and friendlier driver license experience and a safer Texas.*
*Samuel J. Silva*
*Driver License Regional Manager*
*O: (956) 565-7210*
*M: (956) 369-4517*

---

**From:** Silva, Samuel
**Sent:** Monday, October 28, 2013 9:15 AM
**To:** Rodriguez, Tony; Daughtry, Lisa; O'Connor, Ryan
**Cc:** Flores, Maria; Ramirez, Raquel
**Subject:** EIC Region 3 Weekly Report (21 Oct - 26 Oct)
**Importance:** High

EIC Region 3 Weekly Report for Mon-Sat, October 21 to October 26, 2013. Below and attached.
Sam.

*DLD Vision: We are creating a faster, easier, and friendlier driver license experience and a safer Texas.*
*Samuel J. Silva*
*Driver License Regional Manager*
*O: (956) 565-7210*
*M: (956) 369-4517*

TEX0478737

PL474
9/2/2014
2:13-cv-00193

# WHERE TO WRITE FOR VITAL RECORDS
# (UPDATED June 2014)

## National Center for Health Statistics

**Charles J. Rothwell, M.B.A, M.S.,** *Director*

**Jennifer H. Madans, Ph.D.,** *Acting Co-Deputy Director*

**Michael H. Sadagursky,** *Acting Co-Deputy Director*

**Jennifer H. Madans, Ph.D.,** *Associate Director for Science*

**Michael H. Sadagursky,** *Associate Director for Management and Operations*

## Division of Vital Statistics

**Delton Atkinson, M.P.H., M.P.H., P.M.P.,** *Director*

## Office of Information Services

**Tammy Stewart-Prather,** *Acting Director*

# Introduction

As part of its mission to provide access to data and information relating to the health of the Nation, the National Center for Health Statistics produces a number of publications containing reference and statistical materials. The purpose of this publication is solely to provide information about individual vital records maintained only on file in State or local vital statistics offices.

An official certificate of every birth, death, marriage, and divorce should be on file in the locality where the event occurred. The Federal Government does not maintain files or indexes of these records. These records are filed permanently either in a State vital statistics office or in a city, county, or other local office.

To obtain a certified copy of any of the certificates, write or go to the vital statistics office in the State or area where the event occurred. Addresses and fees are given for each event in the State or area concerned.

To ensure that you receive an accurate record for your request and that your request is filled expeditiously, please follow the steps outlined below for the information in which you are interested:

- Write to the appropriate office to have your request filled.
- Under the appropriate office, information has been included for birth and death records concerning whether the State will accept checks or money orders and to whom they should be made payable. This same information would apply when marriage and divorce records are available from the State office. However, it is impossible for us to list fees and addresses for all county offices where marriage and divorce records may be obtained.
- For all certified copies requested, make check or money order payable for the correct amount for the number of copies you want to obtain. Cash is not recommended because the office cannot refund cash lost in transit.
- Because all fees are subject to change, a telephone number has been included in the information for each State for use in verifying the current fee.
- States have provided their home page address  for obtaining current information.
- Type or print all names and addresses in the letter.
- Give the following facts when writing for birth or death records:

    1. Full name of person whose record is being requested.
    2. Sex.
    3. Parents' names, including maiden name of mother.
    4. Month, day, and year of birth or death.

    5. Place of birth or death (city or town, county, and State; and name of hospital, if known).
    6. Purpose for which copy is needed.
    7. Relationship to person whose record is being requested.

- Give the following facts when writing for marriage records:

    1. Full names of bride and groom.
    2. Month, day, and year of marriage.
    3. Place of marriage (city or town, county, and State).
    4. Purpose for which copy is needed.
    5. Relationship to persons whose record is being requested.

- Give the following facts when writing for divorce records:

    1. Full names of husband and wife.
    2. Date of divorce or annulment.
    3. Place of divorce or annulment.
    4. Type of final decree.
    5. Purpose for which copy is needed.
    6. Relationship to persons whose record is being requested.

## *Alabama*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $15.00 | Alabama Center for Health Statistics<br>Alabama Department of Public Health<br>P.O. Box  5625<br>Montgomery, AL 36103-5625 | State office has records since January 1908. Additional copies of the same record ordered at the same time are $6.00 each.<br><br>Personal check or money order should be made payable to **State Board of Health**.  To verify current fees, the telephone number is (334) 206-5418.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://adph.org/vitalrecords.<br><br>A signature of the applicant is required. |
| Marriage | $15.00 | Same as Birth or Death | State office has records since August 1936. Additional copies ordered at the same time are $6.00 each.<br><br>Personal check or money order should be made payable to **State Board of Health**.  To verify current fees, the telephone number is (334) 206-5418.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://adph.org/vitalrecords.<br><br>A signature of the applicant is required. |
| | Varies | See remarks | For marriages prior to August 1936, contact Probate Court in county where license was issued. |
| Divorce | $15.00 | Same as Birth or Death | State office has records since January 1950. Additional copies ordered at the same time are $6.00 each.<br><br>Personal check or money order should be made payable to **State Board of Health**.  To verify current fees, the telephone number is (334) 206-5418.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://adph.org/vitalrecords.<br><br>A signature of the applicant is required. |
| | Varies | See remarks | For divorces prior to 1950, contact Clerk of Circuit Court in county where divorce was granted. |

## *Alaska*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $30.00 | Department of Health and Social Services<br>Bureau of Vital Statistics<br>5441 Commercial Boulevard<br>Juneau, AK 99801 | State office has records since the 1890's; however, many events before 1930 were never registered with the Bureau.  Personal check or money order should be made payable to **Bureau of Vital Statistics**.  Additional copies of the same record ordered at the same time are $25.00.  To verify current fees, the telephone number is (907) 465-3391.  This will be a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://dhss.alaska.gov/dph/VitalStats.<br><br>**ALL REQUESTS MUST INCLUDE A COPY OF A PICTURE ID OF THE APPLICANT**.  Enlarge the copy and lighten it as much as possible to be sure that it is clear and readable when sent to the Bureau.   A signature under the copied ID is also required. |
| Heirloom Birth | $55.00 | Same as Birth or Death | Two different certificates by Alaskan artists are available.  Friends and relatives may order gift certificates for persons entitled to order the record.  The heirloom certificates as well as instructions and order forms may be viewed via the Internet at http://dhss.alaska.gov/dph/VitalStats.  Additional copies of the same certificate ordered at the same time are $50.00. |
| Marriage | $30.00 | Same as Birth or Death | State office has records since the 1890's; however, many events before 1930 were never registered with the Bureau.  Additional copies of the same record ordered at the same time are $25.00. |
| Heirloom Marriage | $65.00 | Same as Birth or Death | Three different heirloom marriage certificates are available.  Friends and relatives may order gift certificates for persons entitled to order the record.  The heirloom certificates as well as instructions and order forms may be viewed via the Internet at http://dhss.alaska.gov/dph/VitalStats.  Additional copies of the same certificate ordered at the same time are $60.00. |
| Divorce | $25.00 | Same as Birth or Death | State office has records since 1950.  Additional copies of the same record ordered at the same time are $25.00. |
| | Varies | See remarks | Clerk of Superior Court in judicial district where divorce was granted.  Juneau and Ketchikan (First District), Nome (Second District), Anchorage (Third District), Fairbanks (Fourth District). |

# *American Samoa*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $5.00 | American Samoa Government | Registrar has birth records since 1890 and death records since 1900.  Money order should be made payable to the **Office of Vital Statistics/ASG.** Personal checks are not accepted. To verify current fees, the telephone numbers are: (684) 633-1405/1406.  For Health Information Office, Health and Vital Statistics call (684) 633-4606/2262. |
| Amendments | $7.00 | Department of Homeland      Security | |
| | | Office of Vital Statistics | |
| | | P.O. Box 6894 | |
| | | Pago Pago, AS  96799 | |
| | | | Personal identification is required for verification and a notarized letter before record will be sent. |
| Marriage | $5.00 | Same as Birth or Death | |
| Marriage  License | $20.00 | | |
| Divorce | $5.00 | High Court of American Samoa | |
| | | American Samoa Government | |
| | | Pago Pago, AS  96799 | |

## *Arizona*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | Varies | Office of Vital Records | State office has records since July 1909 and abstracts of records filed in counties before then. |
| Death | Varies | Arizona Department of   Health Services   P.O. Box  3887   Phoenix, AZ 85030-3887 | Some county offices in Arizona are able to provide certified copies of birth and death certificates. Please go to http://www.azdhs.gov for a listing of county offices.

The State Office of Vital Records does not accept personal checks.  A money order or cashiers check should be made payable to **Office of Vital Records**.  To verify current fees, the telephone number is (602) 364-1300.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www/azdhs.gov.

Applicants must submit a copy of picture identification or have their request notarized. |
| Marriage | Varies | See remarks | Clerk of Superior Court in county where license was issued. |
| Divorce | Varies | See remarks | Clerk of Superior Court in county where divorce was granted. |

## *Arkansas*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $12.00<br>$10.00 | Arkansas Dept. of Health<br>Vital Records Section<br>Slot 44<br>4815 West Markham St.<br>Little Rock, AR 72205 | State office has records since February 1914 and some original Little Rock and Fort Smith records from 1881.  Additional copies of the same birth record, when requested at the same time, are $10.00 each.   Additional copies of the same death record, when requested at the same time, are $8.00 each.<br><br>Personal check or money order should be made payable to **Arkansas Department of Health**.  To verify current fees, the telephone number is (501) 661-2336.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www.healthyarkansas.com.<br><br>A photo ID of the person requesting the record is required with each application. |
| Marriage | $10.00 | Same as Birth or Death | Coupons since 1917.  Additional copies of the same marriage record, when requested at the same time, are $10.00 each. |
| Marriage (County) | Varies | Same as Birth or Death | Full certified copy may be obtained from County Clerk in county where license was issued.<br><br>A certified copy of a marriage coupon may be obtained from the state. |
| Divorce | $10.00 | Same as Birth or Death | State office has coupons since 1923.   Additional copies of the same marriage record, when requested at the same time, are $10.00 each. |
|  | Varies | See remarks | Full certified copy may be obtained from Circuit or Chancery Clerk in county where divorce was granted.<br><br>A certified copy of a divorce coupon may be obtained from the state. |

## *California*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $25.00<br>$21.00 | CA Dept. of Public Health - Vital Records<br>MS:  5103<br>P.O. Box  997410<br>Sacramento, CA 95899-7410 | The State office has records since July 1905. For earlier records, contact the County Recorder in the county where the event occurred.<br><br>A personal check or money order should be made payable to **CDPH Vital Records**.  Please do not send cash.  To verify current fees, the telephone number is (916) 445-2684.  This will be a recorded message with an option to talk to a customer service representative.  Information on how to obtain certified copies is also available via the California Department of Public Health website at:<br>http://www.cdph.ca.gov/certlic/birthdeathmar/Pages/default.aspx.<br>**BIRTH AND DEATH RECORDS:**<br>In order to obtain a Certified Copy you **MUST** complete the sworn statement included with the certificate application form, sign the statement under penalty of perjury, and your sworn statement must be notarized.  If your request indicates that you want a Certified Copy but does not include a notarized statement sworn under penalty of perjury, the request will be rejected as incomplete and returned to you without being processed.<br><br>If you request a Certified **Informational** Copy of the record, a notarized sworn statement is not required.  Please refer to the CDPH website for further information about Informational copies<br><br>Effective November 1, 2013, CDPH-Vital Records is no longer embossing certified copies of records. |
| Marriage (County) | Varies | See Remarks | Contact the County Recorder (for public marriages) or County Clerk (for confidential marriages) in the county where the license was issued.  Contact information is available via the the California Department of Public Health website at:<br>http://www.cdph.ca.gov/certlic/birthdeathmar/Pages/default.aspx |

| | | | |
|---|---|---|---|
| **Marriage** (State) | $15.00 | Same as Birth or Death | State office only has indexes for public marriage certificates that occurred from 1949-1986 and 1998-1999.  For all other years, contact the County Recorder in the county where the event occurred; for confidential marriages, contact the County Clerk where the marriage license was issued.  A personal check or money order should be made payable to **CDPH Vital Records.**  Please do not send cash.  To verify current fees, the telephone number is (916) 445-2684.  This will be a recorded message with an option to talk to a customer service representative. Information on how to obtain a marriage certificate, as well as information about current processing times, is available via the California Department of Public Health website at: http://www.cdph.ca.gov/certlic/birthdeathmar/Pages/default.aspx

In order to obtain a Certified Copy, you MUST complete the sworn statement included with the marriage certificate application form, sign the statement under penalty of perjury, and your sworn statement must be notarized.  If your request indicates that you want a Certified Copy but does not include a notarized statement sworn under penalty of perjury, the request will be rejected as incomplete and returned to you without being processed.

If you request a Certified **Informational** Copy of the record, a notarized sworn statement is not required.  Please refer to the CDPH website for further information about Informational copies.

Effective November 1, 2013, CDPH-Vital Records is no longer embossing certified copies of records. |
| **Divorce** (State) Certificates of Record only | $14.00 | See Remarks | A Certificate of Record includes only the names of the parties to the divorce, the filing date, the county where the divorce was filed, and the court case number – It is not a certified copy of the divorce decree and does not indicate whether the divorce was ever finalized in court.  The California Department of Public Health-Vital Records only has information for divorces that were filed with the court between 1962 and June 1984, and the processing times may exceed six months.  For all other years or for a copy of the decree, contact the Superior Court in the county where the event occurred.  A personal check or money order should be made payable to **CDPH Vital Records**. Please do not send cash.  To verify current fees, the telephone number is (916) 445-2684.  This will be a recorded message.  Information on how to obtain |

|  |  |  | a divorce record, as well as current processing times, is available via the California Department of Public Health website at: http://www.cdph.ca.gov/certlic/birthdeathmar/Pages/default.aspx |
|  |  |  | Effective November 1, 2013, CDPH-Vital Records is no longer embossing certified copies of records. |
| Divorce -Decrees (County) | Varies | See remarks | Contact the Clerk of Superior Court in county where the divorce was granted.  Contact information is available via the California Department of Public Health website. |

## *Canal Zone*
(Effective
December 1, 1999)

Same as Birth or Death

| Place of event | Cost of copy | Address | Remarks |
| --- | --- | --- | --- |
| Birth or Death | $30.00 | Vital Records Section<br>Passport Services<br>U.S. Department of State<br>1111 19th Street NW<br>Suite 510<br>Washington, DC 20522-1705 | Records available from May 1904 to September 1979.  Additional copies of the same record requested at the same time are $20.00 each.<br><br>Personal check or money order must be signed, dated and made payable to **U.S. Department of State**.  Remittance must be payable in U.S. dollars through a U.S. Bank.  No credit cards or cash accepted.  Telephone or facsimile requests are not accepted.  To verify current fees, the telephone number is (202) 955-0307.<br><br>A signed and notarized written request must be submitted along with a copy of the requester's valid photo identification. |
| Marriage | $30.00 | Same as Birth or Death | Records available from May 1904 to September 1979. |

## *Colorado*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $17.75 | Vital Records Section CO Department of Public Health and Environment 4300 Cherry Creek Drive South HSVRD-VS-A1 Denver, CO 80246-1530 | State office has birth records since 1910 and death records since 1900.  Additional copies of the same birth record ordered at the same time are $10.00 each.  Additional copies of the same death record ordered at the same time are $13.00 each. |
| Death | $20.00 | | |
| | | | Personal check or money order should be made payable to **Vital Records Section**. To verify current fees, the telephone number is (303) 692-2200.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http:www.cdphe.state.co.us/certs/index.html. |
| | | | A request for a birth or death record must be accompanied by a photo copy of the requestor's identification before processing. |
| Marriage | See remarks | Same as Birth or Death | Certified copies are not available from State Health Department.  Fee for verification is $17.00. |
| | Varies | See remarks | Copies available from County Clerk in county where license was issued. |
| Divorce | See remarks | Same as Birth or Death | Certified copies are not available from State Health Department.  Fee for verification is $17.00. |
| | Varies | See remarks | Copies available from Clerk of District Court in county where divorce was granted. |

## *Connecticut*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| State issued: | | | |
| Birth | $30.00 | CT Dept. of Public Health 410 Capitol Ave, MS #11 VRS Hartford, CT  06134 | Requests for certified copies of birth should be submitted to the vital records office in the city/town where the person was born, or where the mother lived at the time of the birth.  Requests for |
| Death | $20.00 | Same as Birth | certified copies of birth and death certificates  may also be submitted to the State Vital Records |
| Marriage | $20.00 | Same as Birth | Office. |
| Civil Union | $20.00 | Same as Birth | A copy of a valid, government issued photographic identification such as a driver's license, must be |
| City/Town issued: Birth | $20.00 | See remarks | submitted with any request for a birth certificate. If a photo ID is not available, photocopies of two |
| Death | $20.00 | See remarks | alternative forms of identification may be accepted. |
| Marriage | $20.00 | See remarks | For additional details about ordering vital records |
| Civil Union | $20.00 | See remarks | from CT, please refer to the CT Department of Public Health (DPH) website at http://www.ct.gov/dph "Vital Records" or contact a Customer Service Representative at (806) 509-7897 between 12:00 and 4:00 pm EST. |

Payment for requests sent to the town of the vital event must be in the form of a check or money order made payable to the respective town or city. Requests sent to the State Vital Records Office require a postal money order made payable to the **Treasurer, State of Connecticut**.

Refer to the CT DPH website above for town contact information via a link to a listing of the CT Town Clerk and Registrar Directory.

Requests for certified copies of a marriage or civil union certificate may be submitted to the city/town where the marriage or civil union ceremony took place, to the town in which either of the parties resided at the time of the marriage or civil union, or to the State Vital Records Office.

| | | | |
|---|---|---|---|
| Dissolution of Marriage or Civil Union | | See remarks | Applicant must contact the Clerk of Superior Court where the dissolution of marriage/civil union was granted.  The State Office of Vital Records does not have dissolution decrees and cannot issue certified copies. |

## *Delaware*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $25.00 | Office of Vital Statistics Division of Public Health | State office has birth records from 1941 to present and death records from 1973 to present.  For previous years, write to Archives Hall of Records, Dover, DE  19901. |
| Death | $25.00 | 417 Federal Street Dover, DE 19901 | |

A photo identification is **REQUIRED** for all transactions.  If submitting by mail, a copy of **ID IS REQUIRED**.

Personal check or money order should be made payable to **Office of Vital Statistics**.  To verify current fees,  the telephone number is (302) 744-4549.  Information on how to obtain certified copies is also available via the Internet at http://www.dhss.delaware.gov/dhss/dph/ss/vitalstats.html.

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Marriage | $25.00 | Same as Birth or Death | Records since 1969. |
| Divorce | $25.00 | Same as Birth or Death | Records since 1935.  Inquiries will be forwarded to appropriate office. Certified copies are not available from the Office of Vital Statistics. |
| | | See remarks | Prothonotary in county where divorce was granted up to 1975.  For divorces granted after 1975, the parties concerned should contact Family Court in county where divorce was granted.  Certified copies are not available from the State office. |

# District of Columbia

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $23.00 | Vital Records Division | Office has birth and death records since August 1874. |
| Death | $18.00 | 899 North Capitol Street NE lst Floor Washington, DC 20002 | |
| | | | Personal check or money order should be made payable **to DC Treasurer**.  A copy of a government issued picture identification must accompany each request.  To verify current fees and obtain general information, the telephone number (202) 671-5000.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www.dchealth.dc.gov. |
| Marriage | $10.00 | DC Superior Court 500 Indiana Avenue, NW Room  4485 Washington, DC 20001 | Marriage information telephone number: 202-879-4840. |
| Divorce | $6.50 | DC Superior Court 500 Indiana Avenue, NW Room 4335 Washington, DC 20001 | Records since September 16, 1956. Divorce information telephone number: 202-879-1261. |
| Divorce | Varies | Clerk, U.S. District Court for the District of Columbia Washington, DC  20001 | Records before September 16, 1956. |

## *Florida*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $9.00<br>$5.00 | Department of Health<br>Bureau of Vital Statistics<br>P.O. Box 210<br>1217 Pearl Street (Zip 32202)<br>Jacksonville, FL 32231-0042 | State office has some birth records dating back to April 1865.  The majority of records date from January 1917.  (If the exact date is unknown, the fee is $9.00 (births) or $5.00 (deaths) for the first year searched and $2.00 for each additional year up to a maximum of $50.00.  Fee includes one certification of record if found or statement stating record not on file.)  Additional copies are $4.00 each when requested at the same time.<br><br>Personal check or money order should be made payable to **Bureau of Vital Statistics**.  To verify current fees, please visit our website at http://www.floridavitalstatisticsonline.com or call our telephone number (904) 359-6900.  This is a recorded message.<br><br>All letters or applications for birth and death must include the signature and relationship/eligibility stated, and a copy of a valid **PICTURE ID** (Driver's License, Passport, Military ID, or State Identification card) of the applicant.<br><br>If requesting cause of death, you must also include a copy of a valid **PICTURE ID** (Driver's License, Passport, Military ID, or State Identification card) of the applicant.<br><br>Birth records and cause-of-death information in Florida are confidential by law.   Please visit our website for information on eligibility.<br><br>A self-addressed stamped envelope is appreciated. |
| Marriage | $5.00 | Same as Birth or Death | Records since June 6, 1927.   (If the exact date is unknown, the fee is $5.00 for the first year searched and $2.00 for each additional year up to a maximum of $50.00.  Fee includes one copy of record if found or certified statement stating record not on file.)  Additional copies are $4.00 each when requested at the same time. |
| Divorce | $5.00 | Same as Birth or Death | |

## *Georgia*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $25.00 | State Office of Vital Records 2600 Skyland Drive, NE Atlanta, GA 30319-3640 *Some records may be obtained at the 159 <u>County Offices</u>. | Date since records have been on file. 1919 to present<br><br>Additional copies of the same record ordered at the same time are $5.00.<br><br>A personal check or money order should be made payable to **George Office of Vital Records**.  To verify current fees, the telephone number is (404) 679-4702. This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at <u>http://www.health.state.ga.us/programs/vitalrecords</u><br><br>The requestor must provide a copy of a valid government- issued photo ID and signature of applicant.<br><br>*Some counties may have older birth, death, marriage, or divorce records in their files.  The county files only contain records of vital events that occurred in that county**.** |
| Marriage | $10.00 | Same as Birth or Death | Date since records have been on file are  June 1952- August 1996.<br><br>All other years contact the Probate Judge in the county where the license was issued.<br><br>Information on how to obtain certified copies is also available via the Internet at <u>http://www.health.state.ga.us/programs/vitalrecords</u><br><br>*Some counties may have older birth, death, marriage, or divorce records in their files.  The county files only contain records of vital events that occurred in that county**.** |
| Divorce (State) | $10.00 | Same as Birth or Death | Date since records have been on file are 1952 to present.<br><br>Information on how to obtain certified copies is also available via the Internet at <u>http://www.health.state.ga.us/programs/vitalrecords</u><br><br>*Some counties may have older birth, death, marriage, or divorce records in their files.  The county files only contain records of vital events that occurred in that county**.** |

## *Guam*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $5.00 | Office of Vital Statistics<br>P.O. Box 2816<br>Hagatna, Guam  96932 | Office has records since October 16, 1901.<br><br>Money order should be made payable to **Treasurer of Guam**.  Personal checks are not accepted.  To verify current fees, the telephone number is 671-735-7292. |
| Marriage | $5.00 | Same as Birth or Death | |
| Divorce | Varies | Clerk, Superior Court of Guam<br>Guam Judicial Center<br>120 West O'Brian Drive<br>Hagatna, Guam  96910 | |

## *Hawaii*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $10.00 | State Department of Health Office of Health Status   Monitoring Issuance/Vital Statistics Section P.O. Box 3378 Honolulu, HI 96801 | State office has some records as early as 1853. Additional copies ordered at the same time are $4.00 each. Cashiers check, certified check, or money order should be made payable to **State Department of Health.**  Personal checks are not accepted. To verify current fees, the telephone number is (808) 586-4533.  This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://health.hawaii.gov/vitalrecords/. |
| Marriage | $10.00 | Same as Birth or Death | |
| Divorce | $10.00 | Same as Birth or Death | Records since July 1951-December 2002.  From January 2003, divorce records are available only through the county circuit court. |
| | Varies | See remarks | Circuit Court in county where divorce was granted. |

## *Idaho*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $13.00<br>$14.00<br>Computer generated | Vital Records Unit<br>Bureau of Vital Records and<br>   Health Statistics<br>P.O. Box 83720<br>Boise, ID 83720-0036 | The state office has records since July 1911.  Also, some birth records before 1911.  For records from 1907 to 1911, write to the County Recorder in the county where the event occurred.   Birth records at the state office are legally confidential for 100 years and death records are legally confidential for 50 years. |
| Birth<br>Death | $18.00<br>$19.00<br>Photostatic copy | | |
| | | | Personal check or money order should be made payable to **Idaho Vital Records**.  To verify current fees, the telephone number is (208) 334-5988.  This is a recorded message.   Information on how to obtain certified copies is also available via the Internet at http://www.healthandwelfare.idaho.gov. |
| | | | Applicants must provide a government-issued photo identification with a signature.  If this is not available, the applicant must provide a copy of two forms of  identification with one having a signature. |
| Marriage | $13.00<br>Computer generated<br><br>$18.00<br>Photostatic copy | Same as Birth or Death | The state office has records since May 1947.  Earlier records are with the County Recorder in the county where the license was issued.  Records at the state office are legally confidential for 50 years. |
| | | | Personal check or money order should be made payable to **Idaho Vital Records**.  To verify current fees, the telephone number is (208) 334-5988.  This is a recorded message.   Information on how to obtain certified copies is also available via the Internet at http://www.healthandwelfare.idaho.gov. |
| | | | Applicants must provide a government issued photo identification with a signature.  If this is not available, the applicant must provide a copy of two other forms of  identification with one having a signature |
| | Varies | See remarks | County Recorder in county where license was issued. |

## *IDAHO*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Divorce (Computer generated) | $13.00 | Same as Birth or Death | The state office has records since May 1947.  Only a Certificate of Divorce is available from 1950 to present.  Records prior to May 1947 are with the Clerk of the Court in the county where the divorce was granted.  Records at the state office are legally confidential for 50 years. |
| (Photostatic copy) | $18.00 | | |
| | | | Personal check or money order should be made payable to **Idaho Vital Records**.  To verify current fees, the telephone number is (208) 334-5988.  This is a recorded message.   Information on how to obtain certified copies is also available via the Internet at http://www.healthandwelfare.idaho.gov. |
| | | | Applicants must provide a clear and readable copy of both sides of their current driver's license or other current government issued identification with signature.  If this is not available, the applicant must either provide a clear and readable copy of both sides of two other forms of current identification with a signature or have their request notarized |
| | Varies | See remarks | A full certified copy of the divorce decree is available from the Clerk of the Court in the county where the divorce was granted. |

## *Illinois*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $15.00 certified copy $10.00 certification | Division of Vital Records Illinois Department of Public Health 925 E Ridgely Avenue Springfield, IL 62702 | State office has records since January 1916. For earlier records and for copies of State records since January 1916, write to County Clerk in county where event occurred (county fees vary). Genealogical (uncertified) copies are available |
| Death | $19.00 certified copy $10.00 genealogical copy | | from the State for death records 20 years or older for $10.00.  Additional certified copies of the same birth record ordered at the same time are $2.00 each.  Additional genealogical copies of the same record ordered at the same time are $2.00 each. Additional certified copies of the same death record ordered at the same time are $4.00 each. |
| | | | Personal check or money orders should be made payable to **Illinois Department of Public Health**. To verify current fees, the telephone number is (217) 782-6553.  This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://www.idph.state.il.us. |
| Marriage | $5.00 | Same as Birth or Death | Marriage Index since January 1962.  Selected items may be verified (fee $5.00).  Certified copies are NOT available from State office. |
| | | | For certified copies, write to the County Clerk in county where license was issued. |
| Divorce | $5.00 | Same as Birth or Death | Divorce Index since January 1962. Selected items may be verified (fee $5.00).  Certified copies are NOT available from State office. |
| | | | For certified copies, write to the Clerk of Circuit Court in county where divorce was granted. |

## *Indiana*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $10.00<br>$8.00 | Vital Records<br>Indiana State Department of Health<br>P.O. Box 7125<br>Indianapolis, IN 46206-7125 | State office birth records begin in October 1907 and death records since January 1900.   Additional copies of the same birth or death record ordered at the same time are $4.00 each.   For earlier records, write to Health Officer in city or county where event occurred. |
| | | | Personal check or money order should be made payable to **Indiana State Department of Health**. To verify current fees, the telephone number is (317) 233-2700.  Information on how to obtain certified copies is also available via the Internet at http://www.in.gov/isdh/index.htm. |
| | | | Applicant must provide a photocopy of a valid identification with picture and signature along with the application.  Proof of relationship may be required. |
| Marriage (State) | $8.00 | Same as Birth or Death | State office retain index for marriages since 1958. Certified copies of Record of Marriage are available from the state.  However, certified copies of Marriage Certificates are only a          vailable from county Clerk of Circuit Court or Clerk of Superior Court in the county where event occurred. |
| | Varies | See remarks | Clerk of Circuit Court or Clerk of Superior Court in county where license was issued. |
| Divorce | Varies | See remarks | County Clerk in county where divorce was granted. |

*Iowa*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $15.00 | Iowa Department of Public Health<br>Bureau of Vital Records<br>Lucas Office Building<br>1st Floor<br>321 East 12th Street<br>Des Moines, IA 50319-0075 | State office has records since July 1880.<br><br>Personal check or money order should be made payable to **Iowa Department of Public Health**. To verify current fees, the telephone number is (515) 281-4944.   This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://www.idph.state.ia.us/.<br><br>Applicants for all records must provide a photo identification when applying in person.  Written applications must include a clear photo copy of a current government issued ID and applicant's notarized signature. |
| Marriage | $15.00 | Same as Birth or Death | State office has records since July 1880. |
| Divorce | See remarks | Same as Birth or Death | Brief statistical record only since 1960. Inquiries will be forwarded to appropriate office.  Certified copies are not available from State Health Department. |
|  | $6.00 | See remarks | Clerk of District Court in county where divorce was granted. |

## *Kansas*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $15.00<br>$15.00 | Office of Vital Statistics<br>Curtis State Office Building<br>1000 SW Jackson Street<br>Suite 120<br>Topeka, Kansas 66612-2221 | State office has records since July 1911.  For earlier records, write to County Clerk in county where event occurred.  Additional copies of the same record ordered at the same time are $15.00 each. |
| | | | Personal check or money order should be made payable to **Vital Statistics**.  To verify current fees, the telephone number is (785) 296-1400. This is a recorded message with the option to speak with a Customer Service Representative.  Information on how to obtain certified copies is also available via the Internet at http://www.kdheks.gov/vital. |
| | | | The applicant **MUST** include a copy of a photo ID and a handwritten signature with the request. |
| Marriage | $15.00 | Same as Birth or Death | State office has records since May 1913.  Additional copies of the same record ordered at the same time are $7.00 each. |
| | Varies | See remarks | Write to:  District Judge in county where license was issued. |
| Divorce | $15.00 | Same as Birth or Death | State office has records since July 1951.  Additional copies of the same record ordered at the same time are $7.00 each. |
| | Varies | See remarks | Write to:  Clerk of District Court in county where divorce was granted. |

## *Kentucky*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $10.00<br>$6.00 | Office of Vital Statistics<br>Department for Public Health<br>Cabinet for Health and Family<br>　Services<br>275 East Main Street 1E-A<br>Frankfort, KY 40621-0001 | State office has records since January 1911.<br><br>Personal check or money order should be made payable to **Kentucky State Treasurer**.  To verify current fees, the telephone number is (502) 564-4212.  Information on how to obtain certified copies is also available via the Internet at http://chfs.ky.gov/dph/vital/. |
| Stillbirth | $6.00 | Same as Birth or Death | State office has records since January 1911.<br><br>Personal check or money order should be made payable to **Kentucky State Treasurer**.  To verify current fees, the telephone number is (502) 564-4212.  Information on how to obtain certified copies is also available via the Internet at http://chfs.ky.gov/dph/vital/. |
| Marriage | $6.00 | Same as Birth and Death | Records since June 1958. |
| | Varies | See remarks | Clerk of County Court in county where license was issued. |
| Divorce | $6.00 | Same as Birth or Death | Records since June 1958. |
| | Varies | See remarks | Clerk of Circuit Court in county where decree was issued. |

## *Louisiana*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth (long form) | $15.50 | Office of Public Health | State office has birth records for 100 years past date of birth and deaths records for 50 years past the date of death. To obtain current information on who may obtain a record, how to submit a request and an official request form, click on at http://vitalrecords.dhh.la.gov/. |
| Birth (short form) | $9.50 | Vital Records Registry | |
| | | P.O. Box 60630 | |
| Death | $7.50 | New Orleans, LA 70160 | |
| | | | Older records are available through the Louisiana State Archives, P.O. Box 94125, Baton Rouge, LA 70804. |
| Marriage Orleans Parish  Only | $5.50 | Same as Birth or Death | To obtain current information on how to submit a request for a certified copy of Orleans Parish marriage record less than 50 years old and a request form, click on http://vitalrecords.dhh.la.gov/. |
| | | | Certified copies for other parishes are issued by Clerk of Court in the parish were the marriage license was issued. |
| | | | Marriage records over 50 years are stored by the Louisiana State Archives, P.O. Box 94125, Baton Rouge, LA 70804. |
| Other Parishes | Varies | See remarks | Certified copies are issued by Clerk of Court in the parish were the marriage license was issued. |
| Divorce All Parishes | Varies | See remarks | Certified copies are issued by Clerk of Court in the parish where the divorce was granted. |

## *Maine*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | Certified $15.00 Non-Certified $10.00 | Maine CDC Vital Records office Department of  Health   and Human Services 11 State House Station 220 Capitol Street Augusta, Maine  04333-0011 | State office has records since 1923.  Records for 1892 to1922 are available at the Maine State Archives (207) 287-5795.  For earlier records, write to the municipality where the event occurred.  Additional copies of same record ordered at same time are $6.00 each.

To purchase a certified copy, the request must include proof of identification (valid photo IDs such as a driver's license, passport, or other government-issued photo identification) and proof of lineage, if possible.

Personal check or money order should be made payable to **Treasurer, State of Maine**.  To verify current fees, the telephone number is (207) 287-3181, or toll-free at 1-888-664-9491. This is a recorded message.   Information on how to obtain certified copies is also available via the Internet at http://www.state.me.us. |
| Marriage | $15.00 | Same as Birth or Death | Same as Birth or Death. |
| Divorce | $15.00 | Same as Birth or Death | Same as Birth or Death. |
| Divorce | Varies | See remarks | Clerk of District Court in judicial division where divorce was granted. |

## *Maryland*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $24.00 | Division of Vital Records Department of Health and   Mental Hygiene 6550 Reisterstown Road P.O. Box 68760 Baltimore, MD 21215-0036 | State office has records since August 1898. Records for City of Baltimore are available from January 1875. Fee for Commemorative Birth Certificate is $30.00. |
| Death | $24 for first copy and $12.00 for additional copy ordered at the same time. | | For genealogical studies, you must apply through the Maryland State Archives, 350 Rowe Blvd., Annapolis, MD 21401, (410) 260-6400.

Personal check or money order should be made payable to **Division of Vital Records**.  To verify current fees, the telephone number to contact is (410) 764-3038.  This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://www.vsa.state.md.us. |
| Marriage (State, county) | $12.00 | Same as Birth or Death | Records since January 1990. Clerk of Circuit Court in county where license was issued or Clerk of Court of Common Pleas of Baltimore City (for licenses issued in City of Baltimore). |
| Divorce (State, county) Verification only | 12.00 | Same as Birth or Death | Records since January 1992. Certified divorce decrees may be obtained through the Clerk of Circuit Court in the city/county where the divorce was granted.  Some items may be verified. |

## *Massachusetts*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $20.00 (In person)<br>$32.00 (Mail request)<br>$3.00 (State Archives) | Registry of Vital Records and Statistics<br>150 Mount Vernon Street<br>1st Floor<br>Dorchester, MA 02125-3105 | State office has no records previous to 1921.  For earlier records, write to The Massachusetts Archives at Columbia Point, 220 Morrissey Boulevard, Boston, MA 02125 (617) 727-2816.<br><br>Personal check or money order should be made payable to **Commonwealth of Massachusetts**. To verify current fees, the telephone number is (617) 740-2600.  This is a recorded message.<br><br>Information on how to obtain certified copies is also available via the Internet at http://www.state.ma.us/dph/bhsre/rvr/vrcopies.htm |
| Marriage | $20.00 (In person)<br>$32.00 (Mail request)<br>$3.00 (State Archives) | Same as Birth or Death | Records since 1916. |
| Divorce | No Fee | Same as Birth or Death | Index only since 1952.  Inquirer will be directed where to send request. Certified copies are not available from State office. |
| Divorce (county) | Varies | See remarks | Registrar of Probate Court in county where divorce was granted. |

# Michigan

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Affidavit of Parentage | $34.00<br>Rush fee additional $12.00<br><br>New Fee $34.00 | Vital Records Request<br>P.O. Box 30721<br>Lansing, MI 48909 | State office has records of births that occurred and were filed with the state since 1867.  Some of the records (especially pre-1906 births) were not filed with the state.  Affidavit of Parentage records are on file in Central Paternity Registry since June 1, 1997 and can be ordered from the State Office and can be ordered from the State Office.  Records prior to that date would have to be obtained from the court where they were filed. |
| Search for Vital Record for:<br>    Certified Copy<br>    Administrative Use Copy<br>    Statistical Use Copy<br>    Official No Find Statement | Rush Fee $12.00<br>Add. Copies $16.00<br>Add. Years $12.00<br><br><br>New Fee $42.00 | | |
| Authenticated Copies of Vital Record | Rush Fee $25.00<br>Add. Copies $26.00<br>New Fee $18.00 | | Personal check or money order should be made payable to **State of Michigan**.  Fees are $34.00 for the search and first certified copy of any birth, or Affidavit of Parentage record.  Exception is Senior Citizen age 65+ ($14.00) requesting their own birth record.  Additional copies of any record ordered at the same time are $16.00 each.  To request an application call the recorded message at (517) 335-8656 to leave your name and mailing address with type of application needed.  To speak to a customer service representative call 517- 335-8666 and press option #4. Information on how to obtain certified copies is also available via the website at http://www.michigan.gov/mdch/0,4612,7-132-4645---,00.html. |
| Verification of Events | Add. Copies $12.00<br>New Fee $50.00 | | |
| Establishment of Vital Record<br>    Delayed Birth<br>    Delayed Death<br>    Delayed Stillbirth<br>    Delayed Foreign Born Adoption | Add. Copies $16.00 | | |
| Veteran's Use<br>Adoption Agency<br>Senior Citizen | No Fee<br>No Fee<br>New Fee $14.00<br>Rush Fee $12.00<br>Add. Copies $16.00<br>Add. Years $12.00 | | |
| Creation of New Record/Correction<br>    Adoption<br>    Legal Name Change of Minor<br>    Acknowledgement of Paternity<br>    Sex Change<br>    Order of Filiation<br>    Replace Court Ordered Adoption<br>    Minor error before birth | New Fee $50.00<br>Rush Fee $25.00<br>Add. Copies $16.00 | | Michigan birth records and Affidavit of Parentage records are restricted documents and are available only to eligible individuals.  A photocopy of an eligible individual's current photo identification (state driver's license, state personal ID card, or passport, etc.) is required to be sent in, along with the signed application and appropriate fee.<br><br>Copies of records may also be obtained from the County Clerk in county where event occurred.  Fees vary from county to county.  City of Detroit Vital Records office was closed effective 12/13/13 and all records transferred to Wayne County.  You may obtain Detroit records from the State Office or the Wayne County Office. |
| Amend Birth or Death Record<br>Legal Name Change of Adult | | | |
| Application for Documentation | New Fee $12.00<br>Rush Fee $12.00 | | |

| | | | |
|---|---|---|---|
| Death | $34.00<br>Rush fee additional $12.00 | Vital Records Request<br>P.O. Box 30721<br>Lansing, MI 48909 | State office has records of deaths that occurred and were filed with the state since 1867.  Some of the records (especially pre-1897 deaths) were not filed with the state.  Death records are not restricted so anyone can order.<br><br>Please check or money order should be made payable to **State of Michigan.** Fees $34.00 for the search and first certified copy of any death record. Additional copies of any record ordered at the same time are $16.00 each.  To request an application the telephone number is (517) 335-8656.  This will be a recorded message. To speak to a customer service representative the telephone number is 517-335-8666 and press option #4. Information on how to obtain certified copies is also available via the http://www.michigan.gov/mdch/0,4612,7-132-4645---,00.html. |
| Marriage (State) | $34.00<br>Rush fee additional $12.00 | Same as Birth or Death | Records since 1867.  Some marriages (especially pre-1926) were not filed with the state.  Marriage records are not restricted so anyone can order.<br><br>To request an application the telephone number is (517) 335-8656.  This will be a recorded message.<br><br>To speak to a customer service representative the telephone number is 517- 335-8666 and press option #4. Information on how to obtain certified copies is also available via the http://www.michigan.gov/mdch/0,4612,7-132-4645---,00.html. |
| Marriage (County) | Varies | See remarks | County Clerk in county where license was issued. |
| Divorce (State) | $34.00<br>Rush fee additional $12.00 | Same as Birth or Death | Records since 1897.  Some divorces (especially pre-1924) were not filed with the state. Divorce records are not restricted so anyone can order. The state office will only have the record of |

divorce. Judgment must be obtained from the court that finalized.

To request an application the telephone number is (517) 335-8656.  This will be a recorded message. To speak to a customer service representative the telephone number is 517 -335-8666 and press option #4.  Information how to obtain certified copies is also available via the http://www.michigan.gov/mdch/0,4612,7-132-4645---,00.html.

| Divorce (County) | Varies | See remarks | County Clerk in county where divorce was granted. |

## *Minnesota*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $26.00 | Minnesota Department of Health | Office of the State Registrar has birth records on file from January 1900 to current.  Copies of birth records can be obtained from any Local Registrar.  Additional copies of the birth record when ordered at the same time are $19.00. |
| Death | $13.00 | Central Cashiering – Vital Records P.O. Box 64499 St. Paul, MN  55164 | |

Death records on file from January 1908 to current.  Copies of earlier records may be obtained from Local Registrar in county where event occurred.

Personal check or money order should be made payable to **Minnesota Department of Health**.  To verify current fees, the telephone number is (651) 201-5970.   This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www.health.state.mn.us.

 Any questions in regards to obtaining a certified copy, the telephone number is (651) 201-5980.  An application and credit card information and also be faxed to (651) 201-5980.

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Marriage | See remarks | | Marriage records are not recorded at the state level. |
| | $9.00 | See remarks | Local Registrar in county where license was issued.  Additional copies of the marriage record when ordered at the same time are $2.00 each. |
| Divorce | See remarks | | Divorce records are not recorded at the state level. |
| | $10.00 | See remarks | Court Administrator in county where divorce was granted. |

## *Mississippi*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth and Death | $15..00 | Mississippi Vital Records State Department of Health P.O. Box 1700 Jackson, MS 39215-1700 | State office has records since November 1, 1912. Additional copies of same record ordered at the same time are $5.00 each. Personal check , bank or postal money order or bank cashier's check are accepted and should be made payable to **Mississippi State Department of Health.**<br><br>A copy of a valid photo ID for the applicant is required.<br><br>To verify current fees, the telephone number is (601) 576-7981.  A recorded message may be reached on (601) 576-7450.   Information on how to obtain certified copies is also available via the Internet at http://www.msdh.state.ms.us. |
| Marriage | $15.00 | Same as Birth or Death | Statistical records only from January 1, 1926 to July 1, 1938, and since January 1942.<br><br>Additional copies of the same record ordered at the same time are $5.00. |
| Marriage (County) | Varies | See remarks | Circuit Clerk in county where license was issued. |
| Divorce | See remarks | Same as Birth or Death | Records since January 1926.  Certified copies are not available from State office.  Index search only available at $15.00 for each 5-year increment. Book and page number for county record provided. |
| Divorce | Varies | See remarks | Chancery Clerk in county where divorce was granted. |

## *Missouri*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $15.00<br>$13.00 | Missouri Department of Health and Senior Services<br>Bureau of Vital Records<br>930 Wildwood<br>P.O. Box 570<br>Jefferson City, MO 65102-0570 | State office has records since January 1910. Certified copies of most Missouri birth and death records are also available from local county health department or the St. Louis City or Kansas City Health Departments.  For details, please contact these offices directly.  If event occurred in St. Louis (City), St. Louis County, or Kansas City before 1910, write to the City or County Health Department.  Copies of these records are $13.00 each.<br><br>Additional copies of the same death record ordered at the same time are $10.00 each.<br><br>Personal check or money order should be made payable to **Missouri Department of Health and Senior Services**.  Please include a legal size self-addressed stamped envelope.  To verify current fees on birth and death records, the telephone number is (573) 751-6387.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www.dhss.mo.gov.<br><br> A valid photo ID is required for walk-in applicants.   A signature is required.  Notarized requests are required for mail-in orders. |
| Marriage | $15.00 | See remarks | Reports of marriage records are on file from July 1948 to the present.  Recorder of Deeds in county where license was issued.<br><br>Certified copies of Missouri marriage records are also available from the county recorder of deeds in which the marriage occurred.   For details, please contact these offices directly.<br><br>Personal check or money order should be made payable to **Missouri Department of Health and Senior Services**. Please include a self-addressed stamped envelope. To verify current fees on marriage records, the telephone number is (573) 751-6387.  Information on how to obtain certified copies is also available via the Missouri Department of Health and Senior Services, Vital Records website. |

A valid photo ID is required for walk-in applicants.  A signature is required.  Notarized requests are required for mail-in orders

| | | | |
|---|---|---|---|
| Divorce | $15.00 | See remarks | Reports of divorce records are on file from July 1948 to the present. |

Certified copies of Missouri divorce records are also available from the Clerk of the Circuit Court in the county were the divorce was granted.  For details, please contact these offices directly.  Certified copies of reports of divorce records are $15.00 each.

Personal check or money order should be made payable to **Missouri Department of Health and Senior Services**. Please include a self-addressed stamped envelope. To verify current fees on divorce records, the telephone number is (573) 751-6387.  Information on how to obtain certified copies is also available via the <u>Missouri Department of Health and Senior Services, Vital Records website</u>.

A valid photo ID is required for walk-in applicants.  A signature is required.  Notarized requests are required for mail-in orders

## *Montana*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $12.00 | Office of Vital Statistics<br>MT Dept of Public Health and<br>    Human Services<br>111 N Sanders, Rm. 6<br>P.O. Box 4210<br>Helena, MT 59604 | State office has records since late 1907. Additional copies of the same record requested at the same time are $5.00.<br><br>Applicants **MUST** provide a clear and readable copy of both sides of their current driver's license or other current government issued identification with signature.  If this is not available, the applicant must either provide a clear and readable copy of two other forms of current identification with one having a signature or have their request notarized.<br><br>Personal check or money order should be made payable to **Montana Vital Records**.  To verify current fees, the telephone number is 1-(406) 444-2685.  Information on how to obtain certified copies is also available via the Internet at http://www.dphhs.mt.gov. |
| Marriage | See remarks | Same as Birth or Death | Indexes to locate marriage license since July 1943.  Certified copies are not available from State Office.  Fee for search and verification of essential facts of marriage is $10.00.  Apply to Clerk of District Court were marriage license was purchased if known. |
|  | Varies | See remarks | Clerk of District Court in county where marriage license was purchased. |
| Divorce | See remarks | Same as Birth or Death | Indexes to locate divorce decrees since July 1943.  Certified copies are not available from State Office.  Fee for search and verification of essential facts of divorce is $10.00.  Apply to Clerk of District Court where divorce was granted if known. |
|  | Varies | See remarks | Clerk of District Court in county where divorce was granted. |

## *Nebraska*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $12.00<br><br>**Note: As of July 1, 2014 the cost will be $17.00** | Vital Records Office<br>1033 O Street, Suite 130<br>P.O. Box 95065<br>Lincoln, NE 68509-5065 | State office has records since late 1904. If birth or death occurred before then, write the State office for information.<br><br>Personal check or money order should be made payable to **Vital Records Office**. To verify current fees, the telephone number is (402) 471-2871. This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://www.dhhs.ne.gov/publichealth/pages/vitalrecords.aspx. |
| Death | $11.00<br><br>**Note: As of July 1, 2014 the cost will be $16.00** | | |
| | | | All requests must include a photocopy of the requestor's valid government- issued photo identification, i.e., valid driver's license, valid State ID card, valid passport or visa. |
| Marriage | $11.00<br><br>**Note: As of July 1, 2014 the cost will be $16.00** | Same as Birth or Death | Records since January 1909. |
| | Varies | See remarks | County Court in county where license was issued. |
| Divorce | $11.00<br><br>**Note: As of July 1, 2014 the cost will be $16.00** | Same as Birth or Death | Records since January 1909. |
| | Varies | See remarks | Clerk of District Court in county where divorce was granted. |

## *Nevada*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $20.00 | Office of Vital Records<br>4150 Technology Way<br>Suite 104<br>Carson City, NV 89706 | State office has records since July 1911.  For earlier records, write to County Recorder in county where event occurred.<br><br>Personal check or money order should be made payable to **Office of Vital Records**.  To verify current fees, the telephone number is (775) 684-4242.  This is a recorded message.   Information on how to obtain certified copies is also available via the Internet at http://health.nv.gov/VS.htm.<br><br>The applicant **MUST** include a copy of a photo ID with the request. |
| Marriage | See remarks | Same as Birth or Death | Indexes since January 1968. Certified copies are not available from State Health Division.  Inquiries will be forwarded to appropriate office. |
|  | Varies | See remarks | County Recorder in county where license was issued. |
| Divorce | See remarks | Same as Birth or Death | Indexes since January 1968.  Certified copies are not available from State Health Division.  Inquiries will be forwarded to appropriate office. |
|  | Varies | See remarks | County Clerk in county where divorce was granted. |

# New Hampshire

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $15.00 | Division of Vital Records Administration<br>Archives Building<br>71 South Fruit Street<br>Concord, NH 03301-2410 | State office has records since 1640.  Copies of records may be obtained from State office or from City or Town Clerk in place where event occurred or the license was registered.  Recent records (birth since 1983, death since 1990, and marriage since 1989) may be obtained from ANY City or Town running the Vital Records Automated software called NHVRIN.<br><br>Additional copies ordered at the same time are $10.00 each.<br><br>Applicant must submit a written request and a photo ID with signature of the requestor or notarized assignment of access from registrant authorizing non-direct or tangibly related individual access and a self-addressed stamped envelope.<br><br>Personal check or money order should be made payable to **Treasurer, State of New Hampshire**. To verify current fees, the telephone number is (603) 271-4651.  This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://www.sos.nh.gov/vitalrecords. |
| Marriage | $15.00 | Same as Birth or Death | State Office has records since 1640. |
| | $15.00 | See remarks | Town Clerk in town where license was issued. |
| Divorce | $15.00 | Same as Birth or Death | Records since 1808. |
| | Varies | See remarks | Clerk of Superior/Family Division Court in the county where divorce was granted. |

## *New Jersey*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth, Death, Marriage, Civil Union or Domestic Partnership (State) | $25.00 | See remarks | The State Office of Vital Statistics and Registry maintains records from 1913 to present.  For older records, please see information for the State Archives at the bottom of the page. |
| | | | All requests must include a copy of the requestor's valid identification, payment of the appropriate fee and proof of relationship to the individual listed on the vital record, if ordering a certified copy. |
| | | | The State or local Registrar may issue a certified copy of a vital record only to persons who establish themselves as the subject of the vital record, the subject's parent, legal guardian or legal representative, spouse, child, grandchild or sibling, if of legal age, to a State or Federal agency for official purposes, pursuant to court order or under other emergent circumstances as determined by the Commissioner. All other applicants will be issued a Certification that state the document is not for identification or legal purposes. |
| | | | Additional copies of the same record ordered at the same time are $2.00 each. |
| | | | Please visit the New Jersey Vital Statistics website for the most up to date information regarding ordering options and information.  The website address is www.state.nj.us/health/vital or call toll-free at 1-866-649-8726. |
| Genealogical Birth, Marriage, or Death | $10.00 | New Jersey State Archives 225 West State Street P.O. Box 307 Trenton, NJ 08625-0307 | The New Jersey State Archives holds original birth, marriage, and death records from the period May 1, 1848 to December 31, 1912. |
| | | | The New Jersey Archives also holds microfilm copies of: birth records 1878-1929; marriage records 1878-1940; and death records 1878-1940. These materials are available for in-person use only. |
| | | | Personal check or money order should be made payable to **New Jersey General Treasury**.  The general information telephone number is (609) 292-6260. |

### *New Jersey*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Divorce | $10.00 | Clerk of the Superior Court<br>Superior Court of NJ<br>Public Information Center<br>171 Jersey Street<br>P.O. Box 967<br>Trenton, NJ 08625-0967 | The fee is for a certified Blue Seal copy.  Make check payable to **Clerk of the Superior Court**. |

## New Mexico

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth<br>Death | $10.00<br>$5.00 | NM Vital Records<br>P.O. Box 25767<br>Albuquerque, NM 87125 | State office has records since 1920 and delayed records since 1880.<br><br>Personal check or money order should be made payable to **NM Vital Records**.  To verify current fees, the telephone number is 1-866-534-0051.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www.VitalRecordsNM.org |
| Marriage | Varies | See remarks | County Clerk in county where license was issued. |
| Divorce | Varies | See remarks | Clerk of Court where divorce was granted. |

## *New York*

(except New York City)

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $30.00 | Certification Unit<br>Vital Records Section<br>2nd Floor<br>800 North Pearl Street<br>Menands, NY 12204 | State office has records since 1880. For records before 1914 in Albany, Buffalo, and Yonkers, or before 1880 in any other city, write to Registrar of Vital Statistics in city where event occurred. For the rest of the State, except New York City, write to State office. |
| | | | Personal check or money order should be made payable to **New York State Department of Health**. Payment of mail order copies submitted from foreign countries must be made by a check drawn on a United States bank or by an international money order. To verify current fees, the telephone number is 1-855-322-1022. This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://www.health.state.ny.us. |
| | | | For all types of State and local issued copies, the applicant is required to provide government issued photo identification. |
| Marriage | $30.00 | Same as Birth or Death | Records from 1881 to present. |
| | $10.00 | See remarks | For records from 1880-1907 and licenses issued in the cities of Albany, Buffalo, or Yonkers, apply to Albany: City Clerk, City Hall, Albany, NY 12207; Buffalo: City Clerk, City Hall, Buffalo, NY 14202; Yonkers: Registrar of Vital Statistics, Health Center Building, Yonkers, NY 10701. |
| Divorce | $30.00 | Same as Birth or Death | Records since January 1963. |
| | Varies | See remarks | County Clerk in county where divorce was granted. |

## New York City

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $15.00 | NYC Health Department Office of Vital Records 125 Worth St., CN4, Rm. 133 New York, NY 10013 | The Office has birth and death records for people who were born and/or died in the five boroughs of New York City: Brooklyn, the Bronx, Manhattan, Queens, or Staten Island.   Birth records issued before 1910 and death records issued before 1949 must be ordered through the Municipal Archives. For more information please visit http://www.nyc.gov/html/doh/html/services/vr.shtml or write to Department of Records and Information Services, 31 Chambers Street, New York, NY  10007.

Additional information on ordering and correcting NYC birth and death records can be found by visiting http://www.nyc.gov/vitalrecords or calling 311(or 212-639-9675 outside New York City). |
| Marriage Manhattan Borough | $15.00 | Office of the City Clerk 141 Worth Street New York, NY 10013 | Marriage Record Requests in Person:

Marriage records from 1996 to present can be obtained in person from any office of the New York City Clerk.  Marriage records from 1930 to 1955 can be obtained solely in the Manhattan Office.  For additional information go to http://nycmarriagebureau.com/MarriageBureau/index.htm?RecordRoom.htm.  Additional copies of the same record ordered at the same time are $10.00 each. |
| Bronx Borough | $15.00 | Office of the City Clerk Supreme Court Building 851 Grand Concourse Room B131 Bronx, NY 10451 | |
| Brooklyn Borough | $15.00 | Office of the City Clerk Brooklyn Municipal Building 210 Joralemon Street, Room 205 Brooklyn, NY 11201 | Marriage Record Requests by Mail:

To obtain a Marriage Record by mail, please call the main office at (212) 669-8090 to request a form or to download the Marriage Record mail request form go to http://nycmarriagebureau.com/MarriageBureau/MailRequestForm.htm |

***New York
City***

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Queens Borough | $15.00 | Office of the City Clerk Borough Hall Building 120-55 Queens Boulevard Ground Floor, Room X001 Kew Gardens, NY  11424 | Please mail all Marriage Record Requests to the following address:<br><br>Office of the City Clerk Municipal Building 1 Centre Street, Room 252 South New York, New York  10007 |
| Staten Island Borough (no longer called Richmond) | $15.00 | Office of the City Clerk Borough Hall Building 10 Richmond Terrace Room 311 Staten Island, NY 10301 | |
| Divorce | | | Go to the New York State page on this website at http://www.cdc.gov/nchs/howto/w2w/newyork.htm. |

## *North Carolina*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $24.00 | NC Vital Records<br>1903 Mail Service Center<br>Raleigh, NC 27699-1903 | The State office has birth records beginning with October 1913 and death records beginning with January 1, 1930.  Business or certified check or money order should be made payable to **NC Vital Records**.  To verify current fees and access additional information on how to obtain copies of vital records, the telephone number is (919) 733-3000 or visit the North Carolina Vital Records website.<br><br>The cost of each additional copy of the same record ordered at the same time is $15.00.<br><br>A copy of a valid photo ID with a signature is required of the applicant for in-person requests.<br><br>The Register of Deeds in the county where the birth or death occurred can provide copies of birth and death certificates upon request. |
| Marriage (County) | $24.00 | NC Vital Records<br>1903 Mail Service Center<br>Raleigh, NC 27699-1903 | For records beginning with 1962, contact either the Register of Deeds in the county where the marriage license was obtained or the NC State Office of Vital Records in Raleigh.  For records before 1962, contact the county Register of Deeds.  To verify current fees and access additional information on how to obtain copies of vital records, the telephone number is (919) 733-3000 or visit the North Carolina Vital Records website.<br><br>The cost of each additional copy of the same record ordered at the same time is $15.00. |
| Divorce | $24.00 | NC Vital Records<br>1903 Mail Service Center<br>Raleigh, NC 27699-1903 | For records beginning with January 1958, contact either the NC State Office of Vital Records in Raleigh or the Clerk of Court in the county where the divorce occurred.  For records before 1958, contact the Clerk of Court in the county where the divorce occurred.  To verify current fees and access additional information on how to obtain copies of vital records, the telephone number is (919) 733-3000 or visit the North Carolina Vital Records website.<br><br>The cost of each additional copy of the same record ordered at the same time is $15.00. |

## North Dakota

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $7.00 | ND Dept. of Health | State office has some birth records since l870 and some death records since July 1893.  Birth years from 1870 to 1920 are incomplete.  Death years from 1894 to 1920 are incomplete. Additional copies of birth records are $4.00 each and death records are $2.00 each.  Copies are generally processed in 5-7 working days after request is received. |
| Death | $5.00 | Division of Vital Records | |
| | | 600 East Boulevard Avenue | |
| | | Dept. 301 | |
| | | Bismarck, ND 58505-0200 | |
| | | | Personal check or money order should be made payable to **ND Department of Health**.  To verify current fees, the telephone number is (701) 328-2360.  This is an automated attendant with a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www.ndhealth.gov/vital/birth.htm. |
| | | | The applicant must submit a photocopy of a government issued ID with their request. |
| Marriage | Varies | The following link provides county contact information regarding certified copies of marriage records: http://www.ndhealth.gov/vital/marriage.htm | As of January 1, 2008, the ND Department of Health no longer issues certified copies of marriage records. |
| Divorce | Varies | The following link provides county contact information regarding certified copies of marriage records: http://www.ndhealth.gov/vital/divorce.htm | Certified copies are not available from the ND Department of Health. |

.

# Northern Mariana Islands

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $20.00 | Commonwealth Healthcare Corporation | Office has records for birth and death since 1946. Records from 1946 to 1950 are incomplete. |
| Death | $15.00 | Vital Statistics Office P.O. Box 500409 Saipan, MP 96950 | Money order or bank cashiers check should be made payable to **Commonwealth Healthcare Corporation**.  To verify current fees, call (670) 236-8717 or (670) 236-8702.  E-mail address is info@vs-cnmi.org. |
| Marriage | $10.00 | Commonwealth Recorder Superior Court Vital Records Section P.O. Box 307 Saipan, MP  96950 | Money order or bank cashiers check should be made payable to **Commonwealth Healthcare Corporation**.  To verify current fees, call (670) 236-9830 or fax (670) 236-9831. |
| Divorce | $0.50 per page for Divorce Decree plus $2.50 for certification | Commonwealth Recorder Superior Court Vital Records Section P.O. Box 307 Saipan, MP  96950 | Office has records for divorce since 1960. |

## *Ohio*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $21.50 | Vital Statistics<br>Ohio Department of Health<br>P.O. Box 15098<br>Columbus, OH 43215-0098 | State office has birth records since December 20, 1908 and death records since January 1, 1954.  For earlier birth and death records, write to the Probate Court in the county where the event occurred.  Death records that occurred December 20, 1908−December 31, 1954, can be obtained from the Ohio Historical Society, Archives Library Division, 1982 Velma Avenue, Columbus, OH 43211-2497.  A searchable index to records from 1913 to 1944 is also available via the Internet at http://www.odh.ohio.gov/vs.<br><br>Personal check or money order should be made payable to **Treasury, State of Ohio**.  To verify current fees, the telephone number is (614) 466-2531.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at  http://www.odh.ohio.gov/vs |
| Marriage | See remarks | Same as Birth or Death | Copies of marriage records are not available from the State Health Department.  For certified copies of marriage records, please write to the Probate Court in the in the county where the event occurred.<br><br>Information on how to obtain certified copies is also available via the Internet at http://www.odh.ohio.gov/vitalstatistics/vitalmisc/mrgdiv.aspx. |
| Divorce | Varies<br>See remarks<br><br>Varies | See remarks<br>Same as Birth or Death<br><br>See remarks |  Certified copies are not available from the State Health Department.   For certified copies of divorces, please write to Clerk of Court of where the divorce was granted divorce was granted<br><br>.<br><br>Information on how to obtain certified copies is also available via the Internet at |

## *Oklahoma*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $15.00 | Vital Records Service<br>State Department of Health<br>1000 Northeast 10th Street<br>Oklahoma City, OK 73117 | State office has records since October 1908.<br><br>Personal check or money order should be made payable to **Vital Records Service**.  To verify current fees, the telephone number  is (405) 271-4040.  This will be a recorded message.  Information on how to obtain certified copies, eligibility requirements, and a list of acceptable IDs are also available via the Internet at http://vr.health.ok.gov/.<br><br>A copy of a current legal photo ID from the applicant is required, as well as a completed application and appropriate fees.<br><br>Commemorative heirloom certificates are also available:  cost $35.oo and includes one (1) certified copy.  Detailed description of the heirloom certificate is available at http://vr.health.ok.gov/. |
| Marriage | Varies | See remarks | Clerk of Court in county where license was issued. |
| Divorce | Varies | See remarks | Clerk of Court in county where divorce was granted. |

## *Oregon*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $20.00 | Oregon Vital Records<br>P.O. Box 14050<br>Portland, OR  97293-0050 | State vital records office has birth and death records starting from 1903.  Oregon State Archives has birth records for the City of Portland from 1864 to 1902 and statewide delayed birth records from 1845 to 1902; City of Portland death records from 1862 to 1902 and statewide death records from 1903 to 1955.<br><br>Additional copies of the same record ordered at the same time are $15.00 each.<br><br>Personal check or money order should be made payable to **OHA/Vital Records**. To verify current fees, the telephone number is (971) 673-1190.  This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://healthoregon.org/chs. |
| | | Oregon State Archives<br>800 Summer Street, NE<br>Salem, OR  97310 | The telephone number for the Oregon State Archives is (503) 373-0701 and the fax number is (503) 373-0953.  Information on how to obtain copies is also available via the internet at http://arcweb.sos.state.or.us/reference html |
| Heirloom Birth | $45.00 | Same as Birth or Death | Presentation-style calligraphy certificate suitable for framing. |
| Marriage | $20.00 | Same as Birth or Death | State vital records office has marriage records starting from 1911.  Oregon State Archives has some county records from the 1800s and statewide records for 1906-1910. |
| | Varies | See remarks | County Clerk in county where license was issued. County Clerks also have some records before 1906.  Some older county records have been transferred to the Oregon State Archives, 800 Summer Street NE, Salem, OR 97310 |
| Divorce | $20.00 | Same as Birth or Death | State vital records office has divorce records starting from 1925. |
| (Certificates Only) | Varies | See remarks | County Circuit Court Clerk in county where divorce was granted. County Clerks also have some records before 1925. |

## *Pennsylvania*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $10.00 | Division of Vital Records<br>ATTN:  Birth Unit<br>101 South Mercer Street<br>Room  401<br>P.O. Box 1528<br>New Castle, PA 16103 | State office has records since January 1906.<br><br>All requests must be submitted on an application form, which requires the signature of the individual requesting the certificate and a legible copy of his/her valid government issued photo ID that verifies name and mailing address of the individual requesting the certificate. Application forms, eligibility requirements, fees, and additional information, including how to apply online or by fax with a credit card are available via the Internet http://www.health.state.pa.us/vitalrecords.  The telephone number is (724) 656-3100.  This is a recorded message. |
| Death | $9.00 | Division of Vital Records<br>ATTN:  Death Unit<br>101 South Mercer Street<br>Room  401<br>P.O. Box 1528<br>New Castle, PA 16103 | Personal check or money order should be made payable to **Vital Records**.<br><br>Pennsylvania birth or deaths certificates prior to 1906 can be accessed through the courthouse in the county were the person was born or died.  A list of court houses is available via the Internet at http://www.health.state.pa.us/vitalrecords. |
| Marriage | Varies | | Make application to the Marriage License Clerks, County Court House, in county where license was issued.  A list of court houses is available via the Internet at http://www.portal.state.pa.us/portal/server.pt/community/marriage_and_divorce_certificates/14126. |
| Divorce | Varies | | Make application to the Prothonotary, Court House, in county seat of county where divorce was granted.  A list of court houses is available via the Internet at http://www.portal.state.pa.us/portal/server.pt/community/marriage_and_divorce_certificates/14126. |

## *Puerto Rico*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $5.00 | $4.00 each additional copy requested on the same application.  Registrants over 60 years of age and Veterans of the United States Armed Forces can obtain copies of their birth records free of charge.  Maximum three (3) copies per registrant per year.  Beneficiaries of a Veteran of the United States Armed Forces can obtain copies of their death records free of charge (widow or children under 21 years of age).<br>  All mail in applications must be sent to:<br>Department of Health<br>Demographic Registry<br>P.O. Box 11854<br>Fernández Juncos Station<br>San Juan, PR 00910<br><br>If  using an Express Service (FedEx, UPS, DHL, USPS Express or Priority Mail, applications must be sent to the following PHYSICAL ADDRESS:<br>Department of Health<br>Demographic Registry<br>414 Barbosa Avenue<br>Lincoln Building<br>San Juan, PR 00925 | The Central Office of the Demographic Registry has records pertaining to all citizens born  or deceased as of June 22, 1931.  Copies of earlier records may be obtained by writing to the Local Registrar's Office in the municipality where the event occurred.  Payment method via money orders, which should be made payable to the **Secretary of Treasury**.  Neither cash, personal nor bank checks are accepted.  To verify the current fees, the telephone number is 787-765-2929 Ext. 6131.  All applications must be accompanied by a legible photocopy of a valid form of identification (driver's license, Passport, or a government emitted ID).  Veterans must submit a copy of their DD214 or Veterans Affairs Identification card to receive benefits.  Applicants must considered to be an *interested party* established by law, which are: the proper registrant, mother/father, children over 18 years of age, legal custodian, legal representatives or heirs if existent.<br><br>Additional copies ordered at the same time by the same person are $4.00 each.  Information on how to obtain certified copies is also available via the Internet at http://www.prfaa.com/services.asp?id=44<br><br>Money order should be made payable to **Secretary of the Treasury**.  Personal checks are not accepted.  To verify current fees, the telephone number is (787) 767-9120. |
| Marriage | $5.00 | Same as Birth or Death | Same as Birth or Death<br><br>All applications must be accompanied by a photocopy of a recent, valid IDENTIFICATION OF APPLICANT. |
| Divorce | $2.00 | Same as Birth or Death | The Central Office of the Demographic Registry has records pertaining to divorces registered as of 1941.  Divorce certifications are NOT actual divorce decrees but an abstract of the information provided on the final court resolution, submitted to our agency for official use only. **Availability varies**; not all divorce decrees are submitted to the |

Demographic Registry.  In the case where a divorce decree does not appear registered in our agency, a negative certification of divorce will be issued for the same cost.  Payment method via money orders, which should be made payable to the **Secretary of Treasury**.  Neither cash, personal nor bank checks are accepted.  To verify the current fees, the telephone number is 787-765-2929 Ext. 6131.  All applicants must be accompanied by a legible photocopy of a valid form of identification (driver's license, Passport, or a government emitted ID).

See remarks                          Superior Court where divorce was granted.

# *Rhode Island*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $20.00 | RI Department of  Health<br>Office of Vital Records<br>Room 101<br>3 Capitol Hill<br>Providence, RI  02908-5097 | State office keeps birth and marriage/civil union records for 100 years and keeps death records for 50 years.  In general, copies can be obtained from the State office, the city/town clerk where the event occurred or the city of residence at the time of the occurrence.  Additional copies of the same record ordered at the same time are $15.00 each.<br><br>Information for city/town addresses are available via the Internet at: http://www.health.ri.gov/chic/vital/clerks.php.<br><br>For earlier records, write to the city/town clerk where the event occurred or to the Rhode Island State Archives, 337 Westminster Street, Providence, RI  02903.<br><br>Personal check or money order should be made payable to **Rhode Island General Treasurer**. To verify current fees after office hours, the telephone number is (401) 222-2811.  To verify current fees and general information during office hours, please call the Health Hot Line at (401) 222-5960.  Information on how to obtain certified copies is also available via the Internet at http://www.health.ri.gov.<br><br>All requests must be accompanied by a photocopy of the applicant's valid government-issued picture identification, e.g., driver's license.  In lieu of a valid government-issued picture identification, two pieces of mail are accepted showing the correct name and address of the individual requesting the record. |
| Pre-Adoption Non-Certified Birth | $20.00 | Same as Birth or Death | In June, 2011 the State of Rhode Island passed a law allowing adult adoptees born in Rhode Island access to a non-certified copy of their unaltered, original birth certificate.  If you are an adoptee who was born in Rhode Island and you are age 25 or older, you can request a non-certified copy of your original, pre-adoption birth record from the State Office of Vital Records. According to state law, we can only release your record to you, the adoptee. Relatives cannot request copies of your record on your behalf.  Please visit the web-site at www.health.ri.gov under Adult Adoptees for |

further information on applications, ID requirements and access.

Personal check or money order should be made payable to **General Treasurer, State of Rhode Island.**

All requests must be accompanied by a photocopy of the applicant's valid government-issued picture identification, e.g., driver's license.  In lieu of valid government-issued picture identification, two pieces of mail are accepted showing the correct name and address of the individual requesting the record.

| | | |
|---|---|---|
| Marriage/Civil Union | $20.00 | Same as Birth or Death |
| Divorce | $3.00 | Clerk of Family Court<br>1 Dorrance Plaza<br>Providence, RI   02903 |

# *South Carolina*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $12.00 | Office of Vital Records<br>SCDHEC<br>2600 Bull Street<br>Columbia, SC  29201 | State office has records since January 1915. Additional copies of the same birth records ordered at the same time of certification are $3.00 each.<br><br>Acceptable method of payment is a money order or cashier's check made payable to **SCDHEC-Vital Records**.  To verify current fees, the telephone number is (803) 898-3630.  Information on how to obtain certified copies is also available via the Internet at http://www.scdhec.net/vr.<br><br>Anyone requesting a vital record must submit a photocopy of their valid picture identification. |
| Marriage | $12.00 | Same as Birth or Death | State office has records since January 1915. Additional copies of the same birth records ordered at the same time of certification are $3.00 each.<br><br>Anyone requesting a vital record must submit a photocopy of their valid picture identification. |
| Marriage (County) | $12.00 | See County Offices on website link in Remarks | Records prior to July 1950 and after December 2010, contact Probate Judge in county where license was issued.<br><br>Anyone requesting a vital record must submit a photocopy of their valid picture identification. |
| Divorce | $12.00 | Same as Birth or Death | Records since July 1962. |
| Divorce (County) | $12.00 | See County Offices on website link in Remarks | Records since December 2010 contact Clerk of Court in county where petition was filed.<br><br>Anyone requesting a vital record must submit a photocopy of their valid picture identification. |

## South Dakota

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $15.00 | Vital Records<br>State Department of Health<br>207 E Missouri Ave, Ste 1-A<br>Pierre, SD 57501 | State office has records filed after July 1905.<br><br>Anyone requesting a vital record must submit a photocopy of their identification.<br><br>Personal check or money order should be made payable to **South Dakota Department of Health**. To verify current fees, the telephone number is (605) 773-4961.  Information on how to obtain certified copies is also available via the Internet at http://vitalrecords.sd.gov.<br><br>Mail-in applicants must send in a clear copy of a government- issued photo ID OR have their signature notarized. |
| Marriage | $15.00 | Same as Birth or Death | Records since July 1905.  Marriages can also be obtained from the County Register of Deeds where the marriage occurred. |
| Divorce | $15.00 | Same as Birth or Death | Records since July 1905.   Divorces can also be obtained from the Clerk of Courts in the county where the divorce was granted. |

## *Tennessee*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth (long form)<br>Birth (short form)<br>Death | $15.00<br>$8.00<br>$7.00 | Tennessee Vital Records<br>Central Services Building<br>4215th Avenue, North<br>Nashville, TN 37243 | State office has birth records for entire State since January 1914, for Nashville since June 1881, for Knoxville since July 1881, and for Chattanooga since January 1882.  Birth enumeration records by school district are available for July 1908 through June 1912. Birth records more than 100 years old are maintained by Tennessee Library and Archives, Archives Division, Nashville, Tennessee 37243-0312.   Additional copies of the same birth, marriage, or divorce record requested at the same time are $5.00 each. |
| | | | If the birth has been amended by adding the father with a Voluntary Acknowledgement Of Paternity (VAOP), a certified copy of the VAOP may be ordered if a $15 long form birth certificate is ordered at the same time.  The cost of the certified VAOP is an additional $5.00. |
| | | | Vital Records office keeps death records for 50 years; older records are maintained by Tennessee Library and Archives, Archives Division, Nashville, Tennessee 37243-0312. |
| | | | Personal check or money order should be made payable to **Tennessee Vital Records**.  To verify current fees, the telephone number is (615) 741-1763.   Information on how to obtain certified copies is also available via the Internet at http://health.state.tn.us/vr/. |
| | | | A photocopy of a valid government- issued form of identification which includes the requestor's signature, usually a driver's license, must accompany the request. |
| Marriage | $15.00 | Same as Birth or Death | Vital Records Office keeps marriage records for 50 years.  Older records are maintained by Tennessee Library and Archives, Archives Division, Nashville, TN 37243-0312. |
| | Varies | See remarks | County Clerk in county where license was issued. |
| Divorce | $15.00 | Same as Birth or Death | Vital Records Office keeps divorce records for 50 years.  Older records are maintained by Tennessee Library and Archives, Archives Division, Nashville, TN 37243-0312. |
| | Varies | See remarks | Clerk of Court in county where divorce was granted. |

## *Texas*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $22.00 | Texas Vital Records | State office has birth and death records since 1903. Additional copies of the birth record ordered at same time are $22.00 each. Additional copies of the death record ordered at the same time are $3.00 each. |
| Death | $20.00 | Department of State Health Services | |
| | | P.O. Box 12040 | |
| | | Austin, TX 78711-2040 | |

Request for certified copies of birth and death certificates can be made via the internet, with a credit card, through Texas.gov.  An Expedited Application for Birth and Death Record (see Form VS142.21.pdf) can also be completed and sent by an overnight service or by USPS Express Mail, with a check or money order, to the address on the application. Most Texas.gov and Expedited mail requests will be processed within 10 to 15 business days.

Mail-in requests must be made by personal check or money order made payable to **DSHS.**  To verify current fees, the telephone number is (512) 776-7111.  This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www.dshs.state.tx.us/vs.

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Marriage (State) | See remarks | | Records since January 1966. Certified copies are not available from State office.  Fee for search and verification of essential facts of marriage is $20.00 each. |

Request for marriage verification can be made via the internet, with a credit card, through Texas.gov.

Marriage verification requests may also be sent via mail and paid with a check or money order by completing the Mail Application for Marriage and Divorce Verification (http://www.dshs.state.tx.us/vs/reqproc/forms.shtm#birthdeath).  Personal checks or money orders should be made payable to **DSHS.**

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Marriage (County) | Varies | See remarks | County Clerk in county where license was issued. Texas County contact information can be found at the Texas Department of State Health Services website. |

## *Texas*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Divorce (State) | See remarks | | Records since January 1968. Certified copies are not available from State office.  Fee for search and verification of essential facts of divorce is $20.00 each.<br><br>Request for divorce verification can be made via the internet, with a credit card, through Texas.gov.<br><br>Divorce verification requests may also be sent via mail  and paid with a check or money  order by completing the Mail Application for Marriage and Divorce Verification (http://www.dshs.state.tx.us/vs/reqproc/forms.shtm#birthdeath).  Personal checks or money orders should be made payable to **DSHS.** |
| Divorce (County) | Varies | See remarks | Clerk of District Court in county where divorce was granted.  Texas District Clerk contact information can be found at http://localoffices.texasvsu.org. |

# *Utah*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth | $18.00 | Office of Vital Records and Statistics | State office has records since 1905.  Identification is now required for the purchase of a Utah Birth Certificate.  Mailed request must include an enlarged and easily identifiable photocopy of the back and front of your identification.  If no proofs are enclosed, your application will be returned. For a list of acceptable identification see our website at http://www.health.utah.gov/vitalrecords. Additional copies, when requested at the same time, are $8.00 each. |
| Death | $16.00 | Utah Department of Health 288 North 1460 West P.O. Box 141012 Salt Lake City, UT 84114-1012 | |
| | | | Personal check or money order should be made payable to **Vital Records**.  To verify current fees, the telephone number is (801) 538-6105. This is a recorded message.  Information on how to obtain certified copies is also available via the Internet at http://www.health.utah.gov/vitalrecords. |
| Marriage | $16.00 | Same as Birth or Death | State office has records since 1978. Only short form certified copies are available. |
| | Varies | See remarks | County Clerk in county where license was issued. |
| Divorce | $16.00 | Same as Birth or Death | State office has records since 1978.  Only short form certified copies are available. |
| | Varies | See remarks | County Clerk in county where divorce was granted. |

## *Vermont*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $10.00 | VT Department of Health<br>Vital Records Section<br>P. O. Box 70<br>108 Cherry Street<br>Burlington, VT 05402-0070 | State office has records for the most recent five years.<br><br>Personal check or money order should be made payable to **Vermont Department of Health**.  To verify current fees, the telephone number is (802) 863-7275.  This is a recorded message. Information on how to obtain certified copies is also available via the Internet at http://www.healthvermont.gov/research/records/obtain_record.aspx. |
| Birth, Death, Marriage or Divorce | $10.00 | VT State Archives and<br>  Records Administration<br>Office of the Secretary<br>1078 US Route 2, Middlesex<br>Montpelier, VT 05633-7701 | Records more than five years old (as early as 1909).  Personal check or money order should be made payable to **Vermont  Secretary of State**. To verify current fees, the telephone number is (802) 828-3286.   Information on how to obtain certified copies is also available via the Internet at http://vermont-archives.org/certifications/. |
| Birth or Death | $10.00 | See remarks | Town or City Clerk of town/city where birth or death occurred. |
| Marriage | $10.00 | Same as Birth or Death | State office has records for the most recent 5 years. |
|  | $10.00 | See remarks | Town or City Clerk in town/city where license was issued. |
| Divorce | $10.00 | Same as Birth or Death | State office has records for the most recent 5 years. |
|  | $10.00 | See remarks | Family court in county where divorce was granted. |

## *Virginia*

| Place of event | Cost of copy | Address | Remarks |
| --- | --- | --- | --- |
| Birth or Death | $12.00 | Division of Vital Records<br>P.O. Box 1000<br>Richmond, VA 23218-1000 | State office has records from January 1853 to December 1896 and since June 14, 1912.<br><br>Personal check or money order should be made payable to **State Health Department**.  To verify current fees, the telephone number is (804) 662-6200. This is a recorded message.   Information on how to obtain certified copies is also available via the Internet at http://www.vdh.virginia.gov/.<br><br>Anyone requesting a vital record must submit a photocopy of their identification. |
| Marriage | $12.00 | Same as Birth or Death | Records since January 1853. |
|  | Varies | See remarks | Clerk of Court in county or city where license was issued. |
| Divorce | $12.00 | Same as Birth or Death | Records since January 1918. |
|  | Varies | See remarks | Clerk of Court in county or city where divorce was granted. |

## *Virgin Islands*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death St. Croix | $15.00 (Mail request)<br><br>$12.00 (In person) | Department of Health Vital Statistics Charles Harwood Memorial Hospital St. Croix, VI  00820 | Registrar has birth and death records on file since 1840. |
| St. Thomas and St. John | $15.00 (Mail request)<br><br>$12.00 (In person) | Department of Health Vital Statistics Knud Hansen Complex St. Thomas, VI  00802 | Registrar has birth records on file since July 1906 and death records since January 1906.<br><br>Money order for birth and death records should be made payable to **Department of Health**.  Personal checks are not accepted.  To verify current fees, the telephone number is (340) 774-9000 ext. 4685 or 4686. |
| Marriage | See remarks | Bureau of Vital Records and Statistical Services Virgin Islands Department of Health Charlotte Amalie St. Thomas, VI 00801 | Certified copies are not available. Inquiries will be forwarded to the appropriate office. |
| St. Croix | $2.00 | Chief Deputy Clerk Family Division Territorial Court of the Virgin Islands P.O. Box 929 Christiansted St. Croix, VI 00820 | |
| St. Thomas and St. John | $2.00 | Clerk of the Territorial Court of the Virgin Islands Family Division P.O. Box 70 Charlotte Amalie St. Thomas, VI 00801 | |
| Divorce | See remarks | Same as Marriage | Certified copies are not available.  Inquiries will be forwarded to appropriate office. |
| St. Croix | $5.00 | Same as Marriage | Money order for marriage and divorce records should be made payable to Territorial Court of the Virgin Islands.  Personal checks are not accepted. |
| St. Thomas and St. John | $5.00 | Same as Marriage | |

## *Washington*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $20.00 | Department of Health<br>Center for Health Statistics<br>P.O. Box 47814<br>Olympia, WA 98504-7814 | Must have exact information for births.<br>State office has birth records since July 1907 to present. For King, Pierce, and Spokane counties copies may also be obtained from county health departments. County Auditor of county of birth has registered births prior to July 1907.  State office has death records from July 1, 1907 to 2 months before present date.<br><br>Personal check or money order should be made payable to **Department of Health**. To verify current fees, the telephone number is (360) 236-4300.  Information on how to obtain certified copies is also available via the Internet at http://www.doh.wa.gov. |
| Heirloom Birth | $40.00 | Same as Birth or Death | State office has records since January 1968. |
| Marriage | $20.00 | | |
| | Varies | See remarks | County Auditor in county where license was issued. |
| Divorce | $20.00 | Same as Birth or Death | State office has records since January 1968. |
| | Varies | See remarks | County Clerk in county where divorce was granted. |

## West Virginia

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $12.00 | Vital Registration Office Room 165 350 Capitol Street Charleston, WV 25301-3701 | State office has records since January 1917. For earlier records, write to Clerk of County Court in county where event occurred.<br><br>Personal check or money order should be made payable to **Vital Registration**.  To verify current fees, the telephone number is (304) 558-2931. Information on how to obtain certified copies is also available via the Internet at http://www.wvdhhr.org. |
| Marriage | $12.00 | Same as Birth or Death | Records since 1921.  Certified copies available from 1964. |
| | Varies | See remarks | County Clerk in county where license was issued. |
| Divorce | See remarks | Same as Birth or Death | Index since 1968.   Some items may be verified (fee $5.00).  Certified copies are not available from State office. |
| | Varies | See remarks | Clerk of Circuit Court, Chancery Side, in county where divorce was granted. |

## *Wisconsin*

| Place of event | Cost of copy | Address | Remarks |
|---|---|---|---|
| Birth or Death | $20.00 | WI Vital Records Office<br>1 West Wilson Street<br>P.O. Box 309<br>Madison, WI 53701-0309 | State Office has scattered records earlier than 1857.  Records before October 1, 1907, are very incomplete.  Additional copies of the same record ordered at the same time are $3.00 each.  Customers should use a state birth or death certificate application form to apply.  A copy of a valid photo ID and a signature is required of the applicant.<br><br>Personal check or money order should be made payable to **State of Wisconsin Vital Records**.  A stamped, self-addressed business size (#10) envelope should be included with the request.  Information on how to obtain certified copies including application forms is available via the Internet at http://www.dhfs.state.wi.us/vitalrecords. |
| Marriage | $20.00 | Same as Birth or Death | Records since April 1857.  Records before October 1, 1907 are very incomplete.  Additional copies of the same record ordered at the same time are $3.00 each.  Customers should use a state marriage certificate application form to apply. A copy of a valid photo ID and a signature is required of the applicant. |
| Divorce | $20.00 | Same as Birth or Death | Divorce certificates are not available before October 1, 1907 .  Additional copies of the same record ordered at the same time are $3.00 each.  Customers should use a state divorce certificate application form to apply.<br>A copy of a valid photo ID and a signature is required of the applicant. |

## *Wyoming*

| Place of event | Cost of copy | Address | Remarks |
| --- | --- | --- | --- |
| Birth | $13.00 | Vital Statistics Services | State office has birth records since 1909. |
| Death | $10.00 | Hathaway Building | |
| | | Cheyenne, WY 82002 | After 100 years birth records are available through WY State Archives. WY Vital Records Office is covered entity under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) |
| | | | Death records more than 50 years old should be obtained from the Wyoming State Archives at (307) 777-7826 or WyArchive@state.wy.us. |
| | | | Personal check or money order should be made payable to **Vital Records Services**.  A personal check is accepted only if personalized with the name of current address of individual signing the request. To verify current fees, the telephone number is (307) 777-7591.  Information on how to obtain certified copies is also available via the Internet at http://www.health.wyo.gov. |
| | | | A legible photocopy of a current state issued ID or passport is required which bears the signature of the applicant.  ID with no expiration date is not accepted unless recently issued and additional proof of identification may be requested. |
| Marriage | $13.00 | Same as Birth or Death | Marriage records more than 50 years old should be obtained from the Wyoming State Archives at (307) 777-7826 or WyArchive@state.wy.us. |
| | Varies | See remarks | County Clerk in county where license was issued. |
| Divorce | $13.00 | Same as Birth or Death | Divorce records more than 50 years old should be obtained from the Wyoming State Archives at (307) 777-7826 or WyArchive@state.wy.us. |
| | Varies | See remarks | Clerk of District Court where divorce took place. |

# Foreign, high-seas, or Panama Canal Zone births and deaths and certificates of citizenship

## Birth records of persons born in foreign countries who are U.S. citizens at birth

The birth of a child abroad to U.S. citizen parent(s) should be reported to the nearest U.S. Consulate or Embassy as soon after the birth as possible. To do this, the child's parent or legal guardian should file an Application for Consular Report of Birth Abroad of a Citizen of the United States of America (Form DS-2029). This form may also be used to apply for a Social Security Number for the child. A $100.00 fee is charged for reporting the birth. See Department of State link for more information: **http://travel.state.gov/law/family_issues/birth/birth_593.html**

The application must be supported by evidence to establish the child's U.S. citizenship. Usually, the following documents are needed:

1. the child's foreign birth certificate;
2. evidence of the U.S. citizenship of the parent(s) such as a certified copy of a birth certificate, U.S. passport, or Certificate of Naturalization or Citizenship;
3. evidence of the parents' marriage, if applicable; and
4. affidavit(s) of the physical presence of the parent(s) in the United States.

Each document should be certified as a true copy of the original by the registrar of the office that issued the document. Other documents may be needed in some cases. Contact the nearest U.S. Embassy or Consulate for details on what evidence is needed.

When the application is approved, a Consular Report of Birth Abroad of a Citizen of the United States of America (Form FS-240) is given to the applicant. This document, known as the Consular Report of Birth, has the same value as proof of citizenship as the Certificate of Citizenship issued by the Immigration and Naturalization Service.

A Consular Report of Birth can be prepared only at a U.S. Embassy or Consulate overseas, and only if the person who is the subject of the report is under 18 years of age when the application is made. A person residing abroad who is now 18 years of age or over, and whose claim to U.S. citizenship has never been documented, should contact the nearest U.S. Embassy or Consulate for assistance in registering as a U.S. citizen.

The Consular Report of Birth documents are issued only to the subject of the Consular Report of Birth, the subject's parents or legal guardian, or a person who submits written authorization from the subject.

To request copies of the DS-1365 (No longer issue the DS 1350) or a replacement FS-240, write to.

Department of State
Passport Vital Records Section
1150 Passport Services PL
6th Floor
Dulles, VA 20189-1150

Please include the following items:

1. the full name of the child at birth (and any adoptive name);
2. the date and place of birth;
3. the names of the parents;
4. the serial number of the FS-240 (if the FS-240 was issued after November 1, 1990);
5. any available passport information;
6. the signature of the requestor and the requestor's relationship to the subject;
7. a check or money order for $50.00 for the FS-240, DS-1350 (we no longer issue the DS 1350) and $20.00 for each additional issued at the same time per document requested, made payable to the U.S. Department of State.  Do Not Send Cash and
8. To obtain a Consular Report of Birth in a new name, send a written request and fees as noted above, the original (or replacement) Consular Report of Birth, or if not available, a notarized affidavit about its whereabouts. Also, send a certified copy of the court order or final adoption decree which identifies the child and shows the change of name with the request. If the name has been changed informally, submit public records and affidavits that show the change of name.  .

## Birth records of alien children adopted by U.S. citizens

Birth certifications for alien children adopted by U.S. citizens and lawfully admitted to the United States may be obtained from the Immigration and Naturalization Service (INS) if the birth information is on file. (Address can be found in a telephone directory.) To obtain the birth data, it is necessary to provide the Immigration Office with proof of adoption or legitimation.

## Certificate of citizenship

Persons who were born abroad and later naturalized as U.S. citizens or who were born in a foreign country to a U.S. citizen (parent or parents) may apply for a Certificate of Citizenship pursuant to the provisions of Section 341 of the Immigration and Nationality Act. Application can be made for this document in the United States at the nearest office of the Bureau of Citizenship and Immigration Services in the Department of Homeland Security. Upon approval, a Certification of Citizenship will be issued for the person if proof of citizenship is submitted and the person is within the United States. The decision whether to apply for a Certificate of Citizenship is optional; its possession is not mandatory because a valid U.S. passport or a Form FS-240 has the same evidentiary status.

## Death and marriage records of U.S. citizens that occurred in a foreign country

The death of a U.S. citizen in a foreign country may be reported to the nearest U.S. consular office. If reported, and a copy of the local death certificate and evidence of U.S. citizenship are presented, the consul prepares the official *Report of the Death of an American Citizen Abroad'* (Form DS-2060, formerly      OF-180). A copy of the Report of Death is then filed permanently in the U.S. Department of State (see exceptions below).

To obtain a copy of a report filed in 1975 or after, write to Passport Services, Vital Records Section, U.S. Department of State, 1111 19th  Street NW, Suite 510, Washington, DC  20036. The fee for a copy is $50.00 per document.  Please include a notarized request to include picture ID.  Fee may be subject to change.

Reports of Death filed before 1975 are maintained by the National Archives and Records Service, Diplomatic Records Branch, Washington, DC 20408. Requests for such records should be sent directly to that office.

Reports of deaths of persons serving in the Armed Forces of the United States (Army, Navy, Marines, Air Force, or Coast Guard) or civilian employees of the Department of Defense are not maintained by the U.S. Department of State. In these cases, requests for copies of records should be sent to the National Personnel Records Center (Military Personnel Records), 9700 Page Ave., St. Louis, Missouri 63132-5100.

### Records of birth and death occurring on vessels or aircraft on the high seas

When a birth or death occurs on the high seas, whether in an aircraft or on a vessel, the record is usually filed at the next port of call.

1.   If the vessel or aircraft docked or landed at a foreign port, requests for copies of the record may be made to the U.S. Department of State, Washington, DC  20036.

2.   If the first port of entry was in the United States, write to the registration authority in the city where the vessel or aircraft docked or landed in the United States.

3.   If the vessel was of U.S. registry, contact the local authorities at the port of entry and/or search the vessel logs at the U.S. Coast Guard Facility at the vessel's final port of call for that voyage.

## Records maintained by foreign Countries

Most, but not all, foreign countries record births and deaths. It is not possible to list in this publication all foreign vital records offices, the charges they make for copies of records, or the information they may require to locate a record. However, most foreign countries will provide certifications of births and deaths occurring within their boundaries.

Persons who need a copy of a foreign birth or death record should contact the Embassy or the nearest Consulate in the U.S. of the country in which the death occurred. Addresses and telephone numbers for

these offices are listed in the U.S. Department of State Publication 7846, *Foreign Consular Offices in the United States,* which is available in many local libraries. Copies of this publication may also be purchased from the U.S. Government Printing Office, Washington, DC 20402.

If the Embassy or Consulate is unable to provide assistance, U.S. citizens may obtain assistance by writing to the Office of Overseas Citizens Services, U.S. Department of State, Washington, DC 20520–4818. Aliens residing in the United States may be able to obtain assistance through the Embassy or Consulate of their country of nationality.

## Records of birth, death, or marriage in the Panama Canal Zone for U.S. citizens and foreign nationals

From 1904 until September 30, 1979, the Canal Zone Government registered all civil acts of birth, death and marriage in the Canal Zone for U.S. citizens and foreign nationals.  Since 1979, the Panama Canal Commission has issued certified copies of these documents in response to requests from the public.  On December 31, 1999, the Panama Canal Commission ceased to exist.  On December 1, 1999, those records were transferred to Passport Services in the U.S. Department of State, which will provide the certification service just as it does for similar records issued by U.S. Embassies and Consulates abroad.

To request copies, write to

Department of State

Passport Vital Records Section

1150 Passport Services PL

6th Floor

Dulles, VA 20189-1150

Please include the following items for birth, death, or marriage:

1.  the full name of subject at the time of event;
2.  month, day and year of event;
3.  place of event (city and country);
4.  parents' names, date and place of birth, and nationality for birth record;
5.  any available U.S. passport information;
6.  signature of the requestor, parent or guardian, or legal representative;
7.  requestor addresses and telephone number;
8.  a check or money order for $50.00 for each copy made payable to U.S. Department of State.  Remittance must be payable in U.S. dollars through a U.S. bank.  Do not send cash;

| | |
|---|---|
| **From:** | Silva, Samuel |
| **To:** | Rodriguez, Tony |
| **Sent:** | 9/16/2013 10:02:22 AM |
| **Subject:** | FW: CORRECTION EIC Report |
| **Attachments:** | EIC Saturday 9-14-2013 Region 3 Standard Format Report |

Tony,
Sent you attached email yesterday, with details. Let me know if you need more.
Sam.

09/14/2013 Saturday EIC Report
3 Issuance 0 None
Inquiry 2 09/14/2013 – Weslaco (Station 321): Customer wanted a voter registration card, not
an EIC.
09/14/2013 - Weslaco (Station 321): Customer wanted an EIC. His Driver License expired
February 2013. He stated he has never had a US Birth Certificate. Customer could not be
processed due to lack of documentation.


The format of email you are using is limited with regards to copying tables and data. Just
saying. I am here if you need me.
Sam.


DLD Vision: We are creating a faster, easier, and friendlier driver license experience and a
safer Texas.
Samuel J. Silva
Driver License Regional Manager
O: (956) 565-7210
M: (956) 369-4517

-----Original Message-----
From: Rodriguez, Tony
Sent: Monday, September 16, 2013 8:57 AM
To: Silva, Samuel
Subject: FW: CORRECTION EIC Report
Importance: High

Sam: I see that Weslaco had 2 EIC Inquiries. Can you get me the details on these?

Barbara: I see that 6A had 3 EIC Inquiries. I will need the details on those as well.

v/r

Tony Rodriguez
Customer Operations Senior Manager – South and West Driver License Division Texas Department
of Public Safety tony.rodriguez@dps.texas.gov
512.424.5657 (O)
512.739.9709 (C)
512.424.5233 (F)


-----Original Message-----
From: Rodriguez, Tony
Sent: Saturday, September 14, 2013 4:02 PM
To: Watkins, Paul; Silva, Samuel; Valenzuela, Estella; Valdez, Tomas; Garcia, Joseph; Hubbard,
Barbara; Carter, Thomas; Berkley, Johnnie; Bergman, Kathy; Winkley, Salestus; Mastracchio,
JoeAnna; Bodisch, Robert; MacBride, Cheryl; Petersen, Dain; Cesinger, Katherine; Vinger, Tom;
Peters, Joe; Miller, Connie; Crawford, John; Peyton, John
Subject: CORRECTION EIC Report

2 issuances: Dallas SW and Irving
All other info stands

Tony Rodriguez

Senior Manager
Office: 512.424.5657
Cell: 512.739.9709

On Sep 14, 2013, at 15:52, "Rodriguez, Tony" <Tony.Rodriguez@dps.texas.gov> wrote:

> EIC Report for Saturday
>
> Statewide raw numbers:
> 1 issuance (Dallas –SW)
> 11 inquiries
>
> I will provide a detailed report Monday. Have a great weekend.
>
> Regional reports
> 1A- one issued Dallas Southwest and one at Irving. Election judge visited at Dallas
Southwest just to see process.
>
> 1B four inquiries all dad no documents.
>
> 2A one general inquiry at Rosenberg did not ask for issuance.
>
> 2B one inquiry Houston East had a DL.
>
> 3
> 2 inquiries (Weslaco)
> 0 issuances
>
> 4
> 0 inquiries
> 0 issuances
>
> 6A
> 3 inquiries
> 0 issuances
>
> 6B
> 0 inquiries
> 0 issuances
>
>
> Tony Rodriguez
> Senior Manager
> Office: 512.424.5657
> Cell: 512.739.9709

TEX0478740

DPS HOME        SERVICES        EMPLOYMENT        ABOUT US

*Enter Text Below*

Search DPS

**Driver License & ID Card**

Driver License Home
Renew
Change Address
Office Locations
Mega Centers
Customer Service Center

# Election Identification Certificates (EIC) — Documentation Requirements

To apply for an EIC, you must visit a driver license office and complete an **Application for Texas Election Certificate (DL-14C).**

## To qualify for an EIC, you must:

- **Bring documentation** to verify **U.S. Citizenship**
- **Bring documentation** to verify **Identity**
- Be eligible to vote in Texas *(**Bring a valid voter registration card**, or submit a voter registration application to the Texas Department of Public Safety)
- Be a Texas resident
- Be 17 years and 10 months or older

## Acceptable forms of required documentation

### U.S. Citizenship
An applicant who is a U.S. citizen must present one of the following documents for verification through the U.S. Department of Homeland Security.

A. U.S. passport book or card; or
B. Birth certificate issued by a U.S. state, U.S. territory or District of Columbia; or
C. For U.S. citizens born abroad—Certificate of Report of Birth (DS-1350 or FS-545) or Consular Report of Birth (FS-240) issued by the U.S. Department of State; or
D. U.S. Certificate of Citizenship or Certificate of Naturalization (N-560, N-561, N-645, N-550, N-55G, N-570 or N-578); or
E. U.S. Department of Justice Immigration and Naturalization Service U.S. Citizen ID Card (Form I-197 or I-179)

### Identity
An applicant for an Election Identification Certificate (EIC) must provide documents satisfactory to the department to verify their identity. All documents must be verifiable.

There are three ways an individual can verify his/her identity when applying for an EIC:

A. Bring one item listed in the primary identification category; or
B. Bring two items listed in the secondary identification category; or
C. Bring one item listed in the secondary identification category, plus two items listed in the supporting identification category.

**Primary Identification**

**Secondary identification**

**Supporting identification**

***Applicants for an EIC must also be eligible to vote in Texas. That means you
will have to bring your valid voter registration card to the office, or you will
have to submit a voter registration application through the Texas Department
of Public Safety at the office.***



**Note:** links to [PDF] files require Adobe Reader or another PDF viewer.

| Accessibility | Site Policies | TRAIL | TSIEC | Report Fraud, Waste or Abuse | American Recovery and Reinvestment ACT |
| Outlook Web Access | ETA Time Entry | Texas Homeland Security | Public Information Act | Compact with Texans | Espanol |
| The Governor's Committee on People with Disabilities | Personnel Complaint Process (Espanol) | Customer Survey |
| Texas Veterans Portal | Texas Fusion Center Privacy Policy | texas.gov | OSS Entry |

© 2000-2011 Texas Department of Public Safety.

PL477
9/2/2014
2:13-cv-00193

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

                    Plaintiffs,

         v.

NANDITA BERRY, *et al.*,

                    Defendants.

_____

BELINDA ORTIZ, *et al.*,

                    Plaintiffs,

         v.

STATE OF TEXAS, *et al.*,

                    Defendants

Civil Action No. 2:13-cv-291 (NGR)

Civil Action No. 2:13-cv-348 (NGR)

## DECLARATION OF MARCUS PENA

I, Marcus Pena, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I make this declaration based on personal knowledge and am competent to do so.  If
    called as a witness and placed under oath, I could and would testify thereto.

2.  I am a resident of Austin County, Texas.

3.  I am employed by Austin County, where I serve as the Tax Assessor-Collector.  As part
    of my responsibilities, I accept and process applications for election identification
    certificates ("EICs") received by the Austin County Tax Assessor-Collector's office.

4.  My office currently accepts applications for EICs.  Applicants must appear in person to
    submit their application.

5.  Austin County does not have an operational driver license office.

6.  My office is located at 804 E. Wendt Street, Bellville, Texas 77418.  It is open Monday through Friday, from 8:30 am to 4:30 pm.

7.  Between the dates of June 25, 2013, to the present, my office received a total of one complete EIC application.

8.  Between the dates of June 25, 2013, to the present, my office received a total of zero incomplete or otherwise incorrect EIC applications.

9.  The Austin County Tax Assessor-Collector's office is under no obligation to continue accepting applications for EICs.

10.  The Austin County Tax Assessor-Collector's office does not currently have any plans to change its location or hours of operation prior to the November 4, 2014, general election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this the _19_ day of May 2014.

Marcus Pena

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *et al.*,

                Plaintiffs,

      v.

RICK PERRY, *et al.*,

                Defendants.

Civil Action No. 2:13-cv-193 (NGR)

UNITED STATES OF AMERICA,

                Plaintiff,

TEXAS LEAGUE OF YOUNG VOTERS
EDUCATION FUND, *et al.*,

                Plaintiff-Intervenors,

TEXAS ASSOCIATION OF HISPANIC
COUNTY JUDGES AND COUNTY
COMMISSIONERS, *et al.*,

                Plaintiff-Intervenors,

      v.

STATE OF TEXAS, *et al.*,

                Defendants.

Civil Action No. 2:13-cv-263 (NGR)

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

        Plaintiffs,

        v.

NANDITA BERRY, *et al.*,

        Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

        Plaintiffs,

        v.

STATE OF TEXAS, *et al.*,

        Defendants

Civil Action No. 2:13-cv-348 (NGR)

## DECLARATION OF PAMELA OHLENDORF

I, Pamela Ohlendorf, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I make this declaration based on personal knowledge and am competent to do so. If called as a witness and placed under oath, I could and would testify thereto.

2.     I am a resident of Caldwell County, Texas.

3.     I am employed with the Caldwell County Election Administrator's Office, where I serve as the Elections Administrator. As part of my responsibilities, I accept and process applications for election identification certificates ("EIC") received by the Caldwell County Election Administrator's Office.

4.     My office accepts applications for EICs. Applicants must appear in person to submit their application.

5.    Caldwell County does not currently have an operational driver license office.

6.    My office is located at the Scott Annex on 1403 Blackjack Street, Suite C, Lockhart,

       Texas 78644.  It is open Monday through Friday, from 8:30 am to 5:00 pm.

7.    Between the dates of June 25, 2013, to the present, my office received a total of zero

       complete EIC applications.

8.    Between the dates of June 25, 2013, to the present, my office received a total of zero

       incomplete or otherwise incorrect EIC applications.

9.    To the best of my knowledge, the Caldwell County Election Administrator's Office does

       not have any plans to change its location or hours of operation prior to the November 4,

       2014, general election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief.


Executed on this the _21_ day of April 2014.


                                              _Pamela Ohlendorf_
                                              Pamela Ohlendorf

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>RICK PERRY, *et al.*,<br><br>   Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>TEXAS LEAGUE OF YOUNG VOTERS<br>EDUCATION FUND, *et al.*,<br><br>   Plaintiff-Intervenors,<br><br>TEXAS ASSOCIATION OF HISPANIC<br>COUNTY JUDGES AND COUNTY<br>COMMISSIONERS, *et al.*,<br><br>   Plaintiff-Intervenors,<br><br>  v.<br><br>STATE OF TEXAS, *et al.*,<br><br>   Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

     Plaintiffs,

   v.

NANDITA BERRY, *et al.*,

     Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

     Plaintiffs,

   v.

STATE OF TEXAS, *et al.*,

     Defendants

Civil Action No. 2:13-cv-348 (NGR)

## DECLARATION OF JOHN CORTELYOU

I, John Cortelyou, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I make this declaration based on personal knowledge and am competent to do so. If called as a witness and placed under oath, I could and would testify thereto.

2. I am a resident of Camp County, Texas.

3. I am employed by Camp County, where I serve as the Constable. As part of my responsibilities, I accept and process applications for election identification certificates ("EICs") received by the Camp County Judge's office.

4. My office accepts applications for EICs. Applicants must appear in person to submit their application.

5. Camp County does not currently have an operational driver license office.

6.    My office is located at 126 Church Street, Pittsburg, Texas 75686.  It is open Monday through Friday, from 8:00 am to noon, and from 1:00 pm to 5:00 pm.

7.    Between the dates of June 25, 2013, to the present, my office received a total of zero complete EIC applications.

8.    Between the dates of June 25, 2013, to the present, my office received a total of zero incomplete or otherwise incorrect EIC applications.

9.    To the best of my knowledge, the Camp County Judge's office does not have any plans to change its location or hours of operation prior to the November 4, 2014, general election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this the __5__ day of ~~April~~ *may* 2014.

John Cortelyou

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

        Plaintiffs,

    v.

NANDITA BERRY, *et al.*,

        Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

        Plaintiffs,

    v.

STATE OF TEXAS, *et al.*,

        Defendants

Civil Action No. 2:13-cv-348 (NGR)

## <u>DECLARATION OF CHERYL J. BUTLER</u>

I, Cheryl J. Butler, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I make this declaration based on personal knowledge and am competent to do so. If called as a witness and placed under oath, I could and would testify thereto.

2.    I am a resident of Cochran County, Texas.

3.    I am employed by Cochran County, where I serve as the Elections Administrator. As part of my responsibilities, I accept and process applications for election identification certificates ("EICs") received by the Cochran County Election Administrator's office.

4.    My office accepts applications for EICs. Applicants must appear in person to submit their application.

5.    Cochran County does not currently have an operational driver license office.

6.      My office is located at 100 North Main Street, Room 201, Morton, Texas 79346.  It is

        open Monday through Friday, from 8:00 am to noon.

7.      Between the dates of June 25, 2013, to the present, my office received a total of zero

        complete EIC applications.

8.      Between the dates of June 25, 2013, to the present, my office received a total of zero

        incomplete or otherwise incorrect EIC applications.

9.      To the best of my knowledge, the Cochran County Election Administrator's office does

        not have any plans to change its location or hours of operation prior to the November 4,

        2014, general election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief.


Executed on this the ____ day of April 2014.


Cheryl J. Butler

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-291 (NGR) |
| NANDITA BERRY, *et al.*, | |
| Defendants. | |
| BELINDA ORTIZ, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-348 (NGR) |
| STATE OF TEXAS, *et al.*, | |
| Defendants | |

## <u>DECLARATION OF MARY GRIM</u>

I, Mary Grim, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I make this declaration based on personal knowledge and am competent to do so. If called as a witness and placed under oath, I could and would testify thereto.

2. I am a resident of Coke County, Texas.

3. I am employed by Coke County, where I serve as the County and District Clerk. As part of my responsibilities, I accept and process applications for election identification certificates ("EIC") received by the Coke County and District Clerk's office.

4. My office accepts applications for EICs. Applicants must appear in person to submit their application.

5. Coke County does not currently have an operational driver license office.

6.     My office is located at 13 E. 7th Street, Robert Lee, Texas 76945.  It is open Monday
       through Thursday, from 8:00 am to 5:00 pm, and on Friday from 8:00 am to 1:00 pm.

7.     Between the dates of June 25, 2013, to the present, my office received a total of zero
       complete EIC applications.

8.     Between the dates of June 25, 2013, to the present, my office received a total of zero
       incomplete or otherwise incorrect EIC applications.

9.     To the best of my knowledge, the Coke County and District Clerk's office does not have
       any plans to change its location or hours of operation prior to the November 4, 2014,
       general election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge, information, and belief.


Executed on this the 22nd day of April 2014.


                                        _____
                                        Mary Grim

DL-14C (Sept 2013)

# APPLICATION FOR TEXAS ELECTION IDENTIFICATION CERTIFICATE
### FOR ELECTION PURPOSES ONLY; CANNOT BE USED AS AN IDENTIFICATION CARD

| | FOR DEPARTMENT USE ONLY |
|---|---|

**ASSIGNED #** _____

**NOTICE:** All information on this application must be completed in INK.

**APPLICANT INFORMATION**

LAST NAME: _____

FIRST NAME: _____

MIDDLE NAME: _____

SUFFIX: _____

MAIDEN NAME: _____

DATE OF BIRTH (mm/dd/yyyy): _____ - _____ - _____

SSN: _____ - _____ - _____

SEX: (Circle One)    Male        Female

EYE COLOR: _____  HAIR COLOR: _____

RACE/ETHNICITY: _____    (I) American Indian/Alaska Native
(A) Asian/Pacific Islander  (B) Black  (H) Hispanic  (O) Other  (W) White

HEIGHT: ft. _____  in. _____

WEIGHT: lbs. _____

UNITED STATES CITIZEN:   yes _____   no _____

**If you are not a US citizen, you are not eligible for an Election Identification Certificate.**

PLACE OF BIRTH: CITY: _____  COUNTY: _____  STATE: _____  COUNTRY: _____

FATHER'S LAST NAME: _____  MOTHER'S MAIDEN NAME: _____

**CONTACT INFORMATION**

HOME PHONE: _____

OTHER PHONE: _____

EMAIL: _____

**ADDRESS INFORMATION**

RESIDENCE ADDRESS: _____

CITY: _____  STATE: _____

ZIP CODE: _____  COUNTY: _____

MAILING ADDRESS: _____
_____

CITY: _____  STATE: _____

ZIP CODE: _____  COUNTY: _____

**INFORMATION REQUIRED FROM ALL APPLICANTS:**

|  | YES | NO | |
|---|---|---|---|
| 1. | ☐ | ☐ | Are you presenting a voter registration card today? |
| 2. | ☐ | ☐ | If not, are you registering to vote? |
| 3. | ☐ | ☐ | Do you have a Texas driver license or learner license (unexpired, or expired for no more than 60 days)? |
| 4. | ☐ | ☐ | Do you have a Texas identification card (unexpired, or expired for no more than 60 days)? |
| 5. | ☐ | ☐ | Do you have a Texas concealed handgun license (unexpired, or expired for no more than 60 days)? |
| 6. | ☐ | ☐ | Do you have a US passport (unexpired, or expired for no more than 60 days)? |
| 7. | ☐ | ☐ | Do you have a US citizenship certificate that contains your photograph? |
| 8. | ☐ | ☐ | Do you have a US military identification card that contains your photograph (unexpired, or expired for no more than 60 days)? |

**If answering "yes" to questions 3 through 8, you are not eligible to receive a Texas Election Identification Certificate.**

## CERTIFICATION

I do solemnly swear, affirm, or certify that I am the person named herein and that the statements on this application are true and correct.

X_____     Date: _____

## VERIFICATION

Sworn to and subscribed before me this _____ day of _____, _____

_____
Notary Public in and for the State of Texas or Authorized Officer

FRONT

DL-14CS (Sept 2013)

# SOLICITUD DE CERTIFICADO DE IDENTIFICACION ELECTORAL DE TEXAS
### Solamente para propósitos de elecciones; no se puede utilizar como tarjeta de identificación

**PARA EL SOLO USO DEL DEPARTAMENTO**

**AVISO:** Toda la información en esta solicitud deberá completarse con tinta

**ASIGNADO: #** _____

## INFORMACIÓN DEL SOLICITANTE

APELLIDO: _____

PRIMER NOMBRE: _____

SEGUNDO NOMBRE: _____

TITULO (Dr. Dra. Jr. etc.): _____

APELLIDO DE SOLTERA: _____

FECHA DE NACIMIENTO (mm/dd/yyyy): _____ - _____ - _____

NUMERO DE SEGURO SOCIAL: _____ - _____ - _____

SEXO: (Marque uno)   Hombre ____   Hembra ____

COLOR DE LOS OJOS: _____   COLOR DE PELO: _____

RAZA/ETNICIDAD: _____  (I) Indio Americano/Nativo de Alaska

(A) Asiático/Isleño del Pacífico (B) Negro (H) Hispano (O) Otro (W) Blanco

TALLA: ____ ft. ____ in.

PESO: en libras. _____

CIUDADANO DE LOS ESTADOS UNIDOS :  si _____   no _____

**Si Ud. No es ciudadano de los EE.UU., Ud. No será elegible para recibir un certificado de identificación electoral.**

LUGAR DE NACIMIENTO: CIUDAD: _____   CONDADO: _____   ESTADO: _____   País: _____

APELLIDO DEL PADRE: _____   NOMBRE DE SOLTERA DE LA MADRE: _____

## COMO CONTACTARLO

NUMERO DE TELÉFONO: _____

TELÉFONO SECUNDARIO: _____

CORREO ELECTRÓNICO: _____

### SU DOMICILIO

DOMICILIO DONDE RESIDE: _____

CIUDAD: _____   ESTADO: _____

CODIGO POSTAL: _____   CONDADO: _____

DIRECCIÓN POSTAL (Lugar donde recibe su correspondencia):

CIUDAD: _____   ESTADO: _____

CODIGO POSTAL: _____   CONDADO: _____

## INFORMACIÓN REQUERIDA DE TODOS LOS SOLICITANTES:

|  | SI | NO |  |
|---|---|---|---|
| 1. | ☐ | ☐ | ¿Está presentando una tarjeta de votación hoy? |
| 2. | ☐ | ☐ | Si no, ¿Está registrándose para votar? |
| 3. | ☐ | ☐ | ¿Tiene una licencia de conducir o licencia de aprendizaje de Texas? (vigente, o vencida por no más de 60 días) |
| 4. | ☐ | ☐ | ¿Tiene una tarjeta de identificación de Texas? ( vigente, o vencida por no más de 60 días) |
| 5. | ☐ | ☐ | ¿Tiene una licencia a portar armas de Texas? ( vigente, o vencida por no más de 60 días) |
| 6. | ☐ | ☐ | ¿Tiene un pasaporte de EE.UU.? (vigente, o vencido por no más de 60 días) |
| 7. | ☐ | ☐ | ¿Tiene un Certificado de Ciudadanía de EE.UU. que contiene su fotografía? |
| 8. | ☐ | ☐ | ¿Tiene una tarjeta de Identificación Militar de EE.UU. que contiene su fotografía? (vigente, o vencida por no más de 60 días) |

**Si ha contestado "si" a las preguntas 3 a 8, no es elegible para recibir un Certificado de Identificación Electoral de Texas.**

## CERTIFICACIÓN

Yo juro solemnemente, afirmo o certifico que soy la persona que figura en este documento y que las declaraciones provistas en esta solicitud son verdaderas y correctas.

**X**_____   **Fecha:** _____

## VERIFICACIÓN

Jurado y suscrito ante mí este _____ día de _____, _____

_____
Notario Público en y para el Estado de Texas o funcionario autorizado

FRONT

8064922625

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*,<br><br>          Plaintiffs,<br><br>   v.<br><br>NANDITA BERRY, *et al.*,<br><br>        Defendants. | Civil Action No. 2:13-cv-291 (NGR) |
| BELINDA ORTIZ, *et al.*,<br><br>          Plaintiffs,<br><br>   v.<br><br>STATE OF TEXAS, *et al.*,<br><br>        Defendants | Civil Action No. 2:13-cv-348 (NGR) |

## DECLARATION OF ELISSA SMITH

I, Elissa Smith, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I make this declaration based on personal knowledge and am competent to do so. If called as a witness and placed under oath, I could and would testify thereto.

2.    I am a resident of Cottle County, Texas.

3.    I am employed with the Cottle County/District Clerk's office, where I serve as the deputy clerk. As part of my responsibilities, I accept and process applications for election identification certificates ("EICs") received by the Cottle County/District Clerk's office.

4.    My office accepts applications for EICs. Applicants must appear in person to submit their application.

5.    Cottle County does not currently have an operational driver license office.

6.   My office is located at 811 9th Street, Paducah, Texas 79248.  It is open Monday through
     Thursday, from 9:00 am to 5:00 pm.

7.   Between the dates of June 25, 2013, to the present, my office received a total of zero
     complete EIC applications.

8.   Between the dates of June 25, 2013, to the present, my office received a total of zero
     incomplete or otherwise incorrect EIC applications.

9.   To the best of my knowledge, the Cottle County/District Clerk's office does not have any
     plans to change its location or hours of operation prior to the November 4, 2014, general
     election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge, information, and belief.

Executed on this the 28th day of April 2014.

Elissa Smith

**PL483**
**9/2/2014**
**2:13-cv-00193**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-193 (NGR) |
| RICK PERRY, *et al.*, | |
| Defendants. | |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, | |
| Plaintiff-Intervenors, | Civil Action No. 2:13-cv-263 (NGR) |
| TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, | |
| Plaintiff-Intervenors, | |
| v. | |
| STATE OF TEXAS, *et al.*, | |
| Defendants. | |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

                Plaintiffs,

        v.

NANDITA BERRY, *et al.*,

                Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

                Plaintiffs,

        v.

STATE OF TEXAS, *et al.*,

                Defendants

Civil Action No. 2:13-cv-348 (NGR)

## <u>DECLARATION OF MICHELLE MEDLEY</u>

I, Michelle Medley, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I make this declaration based on personal knowledge and am competent to do so. If called as a witness and placed under oath, I could and would testify thereto.

2.    I am a resident of Crockett County, Texas.

3.    I am employed by Crockett County, where I serve as the Tax Assessor-Collector. As part of my responsibilities, I accept and process applications for election identification certificates ("EICs") received by the Crockett County Tax Assessor-Collector's office.

4.    My office accepts applications for EICs. Applicants must appear in person to submit their application.

5.    Crockett County does not currently have an operational driver license office.

6.  My office is located at 909 Avenue D, Ozona, Texas 76943. It is open Monday through Thursday, from 8:30 am to noon and from 1:00 pm to 5:00 pm. It is also open on Friday from 8:30 am to noon and from 1:00 pm to 4:00 pm.

7.  Between the dates of June 25, 2013, to the present, my office received a total of zero complete EIC applications.

8.  Between the dates of June 25, 2013, to the present, my office received a total of zero incomplete or otherwise incorrect EIC applications.

9.  To the best of my knowledge, the Crockett County Tax Assessor-Collector's office does not have any plans to change its location or hours of operation prior to the November 4, 2014, general election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this the $\mathcal{28}$ day of April 2014.

Michelle Medley

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

        Plaintiffs,

    v.

NANDITA BERRY, *et al.*,

        Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

        Plaintiffs,

    v.

STATE OF TEXAS, *et al.*,

        Defendants

Civil Action No. 2:13-cv-348 (NGR)

## DECLARATION OF HERBERT R. BROOKSHIRE

I, Herbert R. Brookshire, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I make this declaration based on personal knowledge and am competent to do so. If called as a witness and placed under oath, I could and would testify thereto.

2. I am a resident of Delta County, Texas.

3. I am employed by Delta County, where I serve as the County Judge. As part of my responsibilities, I accept and process applications for election identification certificates ("EIC") received by the Delta County Judge's office.

4. My office accepts applications for EICs. Applicants must appear in person to submit their application.

5. Delta County does not currently have an operational driver license office.

6.   My office is located at 200 W. Dallas Avenue, Cooper, Texas 75432. It is open Monday through Friday, from 8:00 am to 5:00 pm.

7.   Between the dates of June 25, 2013, to the present, my office received a total of three complete EIC applications.

8.   Between the dates of June 25, 2013, to the present, my office received a total of zero incomplete or otherwise incorrect EIC applications.

9.   To the best of my knowledge, the Delta County Judge's office does not have any plans to change its location or hours of operation prior to the November 4, 2014, general election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this the __21__ day of April 2014.

Herbert R. Brookshire