PL552
9/2/2014
2:13-cv-00193

**Hinesley, Barbara**

| | |
|---|---|
| **From:** | Arriaga, Amanda |
| **Sent:** | Tuesday, April 05, 2011 12:25 PM |
| **To:** | DPS Government Relations |
| **Subject:** | Re: SB14-Senate Conferees |

I did. Its good for us because it means they'll strip off everything that costs the bill.

**From:** DPS Government Relations
**Sent:** Tuesday, April 05, 2011 12:07 PM
**To:** Arriaga, Amanda
**Subject:** FW: SB14-Senate Conferees

Just wanted to make sure you saw this.

*Sarah Hendricks*
*Office of Government Relations*
*Texas Department of Public Safety*
*Phone: (512) 424-7272*
*Fax: (512) 424-2966*

*Please direct all constituent requests to government.relations@txdps.state.tx.us*

**From:** Smith, Janie
**Sent:** Tuesday, April 05, 2011 12:03 PM
**To:** Davio, Rebecca; Terry, Michael
**Cc:** DPS Government Relations
**Subject:** SB14-Senate Conferees

I just got this notice on SB14:
Senate refused to concur in House amendments   Conferees: Fraser, Huffman, Williams, Birdwell and  Van de Putte
FYI, Janie

1

**Defendant's Exhibit #**
015

TX_00004899
DE-000086

USA_00007880

## Hinesley, Barbara

| | |
|---|---|
| **From:** | Terry, Michael |
| **Sent:** | Friday, September 30, 2011 3:59 PM |
| **To:** | DPS Government Relations; Davio, Rebecca |
| **Cc:** | Arriaga, Amanda |
| **Subject:** | RE: Update on Driver License Matters |

The Limited Term license effectively replaces the "Temporary Visitor" license. The license is revised in the following manner:

These revisions include:

- Removal of all references to "Temporary Visitor" from the face of driver licenses and identification cards
- Modifying the expiration date of limited term driver licenses and identification cards to correspond to the expiration of customers lawful presence unless statute provides otherwise (i.e.; provisional driver licenses)
- Modifying the orientation of limited term licenses to a horizontal orientation, comparable to other driver licenses and identification cards, with the exception of Under 21 licenses

**From:** DPS Government Relations
**Sent:** Friday, September 30, 2011 2:08 PM
**To:** Davio, Rebecca; Terry, Michael
**Cc:** Arriaga, Amanda
**Subject:** FW: Update on Driver License Matters

If DL will compile an answer, Amanda can send it Monday.

Thank you,

Rhonda S. Trumble
Assistant Chief, Policy
Public Affairs and Policy
Texas Department of Public Safety
(512) 424-2037

**From:** Jenny Goerdel [mailto:Jenny.Goerdel@house.state.tx.us]
**Sent:** Friday, September 30, 2011 1:58 PM
**To:** DPS Government Relations
**Subject:** RE: Update on Driver License Matters

Thank you for the information.

What will replace the ID's with "temporary visitor" notation? Will this be elsewhere on the ID or is the state eliminating ID's issued to temporary visitors?

Jenny Goerdel

**From:** DPS Government Relations [mailto:Government.Relations@dps.texas.gov]
**Sent:** Friday, September 30, 2011 11:34 AM
**To:** Jenny Goerdel

1

**Defendant's Exhibit #**
016

TX_00004900
DE-000087

USA_00007881

**Cc:** Diane Patrick
**Subject:** Update on Driver License Matters

Dear Jenny,

At this week's Public Safety Commission meeting, the Commission received a presentation on several rules and other issues related to driver licenses. I wanted to provide you and Representative Patrick with a quick update on the status of these projects.

1.) **Limited Term Driver Licenses** – This week, the Department began issuing limited term driver licenses in accordance to the statutory changes made by Article 72 of Senate Bill 1, 82nd Texas Legislature, 1st Called Session. Rule changes were presented to the Commission to address the statutory changes. The rules were approved and will be published in the upcoming edition of the Texas Register and the public will have the opportunity to provide comments.

   Additional information about limited term licenses:
   - The Department is providing training on the changes for all driver license personnel.
   - We have notified all state and local law enforcement on the design change for both driver licenses and identification cards to increase awareness.
   - The design changes include:
     - Removed all references to "Temporary Visitor" from the face of DLs/IDs
     - Modified the expiration date of limited term DLs/IDs to correspond to the expiration of customers lawful presence, unless statute provides otherwise
     - Updated the limited term licenses to a horizontal orientation, comparable to other DLs/IDs. The only DLs/IDs that will be vertical are the Under 21 licenses.

2.) **Election Identification Certificate** – Rule changes were also presented to the Commission regarding implementation of Senate Bill 14, 82nd Texas Legislature, as it applies to the issuance Election Identification Certificates (EIC). The rules were approved and they will be published in the upcoming edition of the Texas Register and the public will have the opportunity to provide comments.

   Additional information about the election identification certificate:
   - To preserve the integrity of the voting process and ensure the smoothest application process for customers, DPS will follow the same standards as for identifications cards.
   - We anticipate that only a small volume of voters will apply for the EIC, as anyone who currently holds a driver license, identification card, concealed handgun license, passport, or military ID is not eligible to receive an EIC.
   - DPS and the Secretary of State's office are working jointly to ensure there are no conflicts as we move toward implementation.

3.) **Mega Centers** - House Bill 1, Art. IX Sec. 18.07, 82nd Texas Legislature, included funding for DPS to open 6 MegaCenters in Texas to better serve our customers. DPS worked with the Texas Facilities Commission to find two locations in the Dallas-Fort Worth Metroplex Area that were able to provide 10 year leases. We are now in the process of evaluating floor plans to determine the best use of the space to increase efficiency, decrease wait times and improve customer satisfaction. The locations that have been selected in DFW are: 4445 Saturn Road in Garland and 1600 Eastchase Parkway in Fort Worth.

If you or Representative Patrick would like any additional information on these, or any other Department issues, please feel free to contact me and I would be happy to schedule a briefing.

Sincerely,

TX_00004901

**Defendant's Exhibit #**
016

DE-000088

USA_00007882

DPS Government Relations

3

**Defendant's Exhibit #**
016

TX_00004902
DE-000089

USA_00007883

| | |
|---|---|
| **From:** | Sarah Hauser [Sarah.Hauser@house.state.tx.us] |
| **Sent:** | Monday, March 16, 2009 6:57 PM |
| **To:** | Smith, Janie |
| **Subject:** | RE: help with voter registration |

thanks Janie.  I forwarded to him the website you sent and told him he should be expecting a phone call from the folks to answer his questions.


**Sarah Hauser**
District Director
State Representative Allen Vaught
Texas House District 107
(214) 370-8305 District Office
Sarah.Hauser@house.state.tx.us

**From:** Smith, Janie [mailto:Janie.Smith@txdps.state.tx.us]
**Sent:** Monday, March 16, 2009 6:48 PM
**To:** Sarah Hauser
**Subject:** RE: help with voter registration

Sarah, Here is a list of bills I identified as being related to the issuance of DL/ID's and the documents required to get a license. These bills run the gamut regarding ID requirements and this is a very contentious issue. HB1278 was heard today in the House Public Safety Committee and there was quite a bit of testimony, mostly from people who had problems getting their licenses when the rule was first implemented, but all of whom now have Texas Driver Licenses, like Mr. Levy.
HB193
HB976
HB1061
HB1278
HB2077
HB4480
HB4674
SB1784
SB2261


Janie Smith
Legislative Liaison

**From:** Sarah Hauser [mailto:Sarah.Hauser@house.state.tx.us]
**Sent:** Monday, March 16, 2009 6:27 PM
**To:** Smith, Janie
**Subject:** RE: help with voter registration

Janie:
Also, do you have those bill numbers for the bills that you reference so that we may review them?

thank you,
Sarah

**Sarah Hauser**
District Director
State Representative Allen Vaught
Texas House District 107
(214) 370-8305 District Office
Sarah.Hauser@house.state.tx.us

**From:** Smith, Janie [mailto:Janie.Smith@txdps.state.tx.us]
**Sent:** Monday, March 16, 2009 6:18 PM
**To:** Sarah Hauser
**Subject:** RE: help with voter registration

file://E:\Voter ID for AG\Action Sheets and Emails\Vaught-3-12 help with voter registration.htm        3/28/2012

TX_00004929

**Defendant's Exhibit #**
018

DE-000092

USA_00007886

http://www.txdps.state.tx.us/administration/driver_licensing_control/LawfulStatusDLID.htm
Sarah, The link above will take you to the information regarding the driver license rule related to lawful status. This link is available on the Driver License Division page on the DPS website. The rule is included and at the bottom of the page, there is a link to the identification policy which delineates the acceptable documents. A US passport can be issued to non-citizens in certain instances, so if there is a question about citizenship status, additional documentation may be required besides the passport. If someone was not born in the US, this rule requires that they provide documentation to show they are lawfully in the United States. If a person immigrated to the US, they should have or be able to obtain through the federal government, documents that indicate their status.  Your constituent may be interested to know there is a lawsuit pending and several pieces of legislation being considered that address this policy and it may change. In the meantime, hopefully the Driver License Chief's office can assist him in understanding the issues related to his driver license.


Janie Smith
Legislative Liaison

---

**From:** Sarah Hauser [mailto:Sarah.Hauser@house.state.tx.us]
**Sent:** Monday, March 16, 2009 6:05 PM
**To:** Smith, Janie
**Cc:** Lauren Mish
**Subject:** RE: help with voter registration

Janie:
Do you know if there is any information on your website that lists the "rule" or where we can find information on how a person can provide citizenship?  Can you send me a copy of the rule that your office is referring to that prevents him from only using his Passport?
thanks,
Sarah

**Sarah Hauser**
District Director
State Representative Allen Vaught
Texas House District 107
(214) 370-8305 District Office
Sarah.Hauser@house.state.tx.us

---

**From:** Smith, Janie [mailto:Janie.Smith@txdps.state.tx.us]
**Sent:** Monday, March 16, 2009 5:32 PM
**To:** Sarah Hauser
**Subject:** RE: help with voter registration

Will do. Thanks,


Janie Smith
Legislative Liaison

---

**From:** Sarah Hauser [mailto:Sarah.Hauser@house.state.tx.us]
**Sent:** Monday, March 16, 2009 5:24 PM
**To:** Smith, Janie
**Cc:** Shelley Sturges
**Subject:** RE: help with voter registration

Janie:
Thanks, I spoke with Shelley at Sen. Carona's office and copied her along with our Chief of Staff so they would know what is going on and what he wants.  I appreciate your help.  Please let me know what happens after he gets the phone call if we can get a report back from whomever calls him.
thank you again,
Sarah

**Sarah Hauser**

file://E:\Voter ID for AG\Action Sheets and Emails\Vaught-3-12 help with voter registration.htm          3/28/2012

TX_00004930

**Defendant's Exhibit #**
018

DE-000093

USA_00007887

District Director
State Representative Allen Vaught
Texas House District 107
(214) 370-8305 District Office
Sarah.Hauser@house.state.tx.us

**From:** Smith, Janie [mailto:Janie.Smith@txdps.state.tx.us]
**Sent:** Monday, March 16, 2009 5:21 PM
**To:** Sarah Hauser
**Cc:** Legislativeliaison
**Subject:** RE: help with voter registration

Sarah, We've now heard from Senator Nelson, Congresswoman Granger, your office, and Senator Carona regarding Mr. Levy. He has been issued a Texas Driver License. The record does indicate he is not a citizen, but if he provides verifiable documentation that will be updated. We have asked the Assistant Chief of Driver License, Bob Burroughs or Major Rhonda Fleming, who are the experts regarding this issue here at Headquarters, to contact Mr. Levy and work with him to provide whatever documentation and explanation we may be able to provide that will be responsive to his concerns. Thanks for providing this additional information and we'll include it with the other requests he has made.

Janie Smith
Legislative Liaison

**From:** Sarah Hauser [mailto:Sarah.Hauser@house.state.tx.us]
**Sent:** Monday, March 16, 2009 5:07 PM
**To:** m.y. levy
**Subject:** RE: help with voter registration

Mr. Levy:
First, I want to explain to you that no one is trying to keep you from voting, and I would encourage you to go ahead and register to vote.

Secondly, as for getting the DPS to mark you as a "citizen" in their database, that is a rule that was set in place at the State Level and it is something that all drivers license applicants have to follow.  Changing the rule is essentially what you are asking us to do, and I will inform Representative Vaught and the Texas DPS that that is something you wish to happen.  However, that won't change your situation immediately.  That is why I recommended you fill out the form to get your "Certificate of Citizenship" from the Federal Government.

If you feel that the rules that Texas has put in to place are contradictory to the Federal Government's rules, then that is something that you may wish to ask your Congressional Representative to find out for you. Also, your Federal Representative's office are the ones who can help you get your Certificate of Citizenship if you need any help with that.  That is why I recommended that you contact them.

Our office cannot make DPS change their rules for one applicant.  I will ask them to see if they can provide to you the rules in writing for that section that requires more than a passport to ascertain citizenship.  Also I apologize that Lt. Bedford was misinformed, he did tell me on the phone on Friday that you had not gone through the process to get your Driver's License and your original email said "when I went to apply" so I was not sure if you had gone ahead through the application process.

Unfortunately during session, the Representative's schedule is very tight.  He is in Austin most of the time on the floor of the House or in meetings.  I will ask him if he has some time during an upcoming Friday if you wish to schedule an appointment, let me know.  I will be sure he is aware of your concerns and hardship with this process and I apologize that Texas rules are different than other states you have lived in.

Thank you,
Sarah

**Sarah Hauser**
District Director
State Representative Allen Vaught
Texas House District 107
(214) 370-8305 District Office
Sarah.Hauser@house.state.tx.us

**From:** m.y. levy [mailto:mylevy@gmail.com]

file://E:\Voter ID for AG\Action Sheets and Emails\Vaught-3-12 help with voter registration.htm          3/28/2012

TX_00004931

**Defendant's Exhibit #**
**018**

DE-000094

USA_00007888

**Sent:** Monday, March 16, 2009 4:50 PM
**To:** Sarah Hauser
**Subject:** Re: help with voter registration

This is a state issue, not a federal issue.  I contacted Sessions office, and they agreed it is a state matter.  Not federal. In addition to being misinformed about federal law, Lieutenant Bedford is also misinformed about my TX drivers license, b/c I told him I got one, and gave him the number.  I am appalled at the incompetence and racism that I am experiencing.  I expected more help from my representatives, I am very disappointed, but will not let the issue rest. This is a complete outrage.  I am in your district, I am sorry you choose not to help.  I would like to speak with my representative directly.  Please let me know when I can speak directly with Mr. Vaught.

thanks,
Dr. M.Y. Levy

On Mon, Mar 16, 2009 at 4:19 PM, Sarah Hauser <Sarah.Hauser@house.state.tx.us> wrote:

Mr. Levy:

I understand your frustration however since I work for the state and this is a Federal document I would recommend that you contact your Federal representative's office.  It doesn't make a lot of sense to me either, however, that is what the DPS rules and the congressional office whom I spoke to said.  I spoke with Barbara in Jeb Hensarling's office, however after looking up your registration, you are not in their district (although most of our district overlaps theirs).  However, I recommend you contact your own representative's office, they should be able to help you.  I am sorry that I can't help you with Federal Issues.

Sincerely,

Sarah


Sarah Hauser

District Director

State Representative Allen Vaught

Texas House District 107

(214) 370-8305 District Office

Sarah.Hauser@house.state.tx.us

---

**From:** m.y. levy [mailto:mylevy@gmail.com]
**Sent:** Monday, March 16, 2009 4:15 PM


**To:** Sarah Hauser
**Subject:** Re: help with voter registration


i would like to see this information in writing.  the link i sent you is from the federal government and is entitled "I am a citizen of the US, how do I get proof of my citizenship?"
the link again is:
http://www.uscis.gov/files/article/A4eng.pdf

file://E:\Voter ID for AG\Action Sheets and Emails\Vaught-3-12 help with voter registration.htm          3/28/2012

**Defendant's Exhibit #**          DE-000095
018

look at the link, pay particular attention to page 2 paragraph 2. i do NOT require a certificate of citizenship according to the federal government.
i don't understand what this has to do with 9/11, as this has not been an issue in PA, WI, or MD. just TX.
please tell me who you spoke with on a federal level and give me their contact information.

I look forward to hearing from you,
Dr. Levy

On Mon, Mar 16, 2009 at 3:58 PM, Sarah Hauser <Sarah.Hauser@house.state.tx.us> wrote:

Mr. Levy:

I spoke to Mr. Greg Bedford of the Plano DPS on Friday and he said he had spoken to you. Unfortunately, it sounds like you are going to have to get a Certificate of Citizenship from the USCIS. The information is on the link that you sent me below. I checked with one of the Federal Representatives' offices and that is what they also told me. There are new rules due to 9/11 and that is what you will have to do.

Mr. Bedford told me that you do not have a Texas Driver's License yet. You may just want to wait to get one until you can get your Certificate of Citizenship worked out. However, you should still be able to register to vote. You can fill out the white voter registration card and use the last four digits of your social (they ask for either your Texas Drivers License No. or your last four digits of your social). They should register you to vote so you should be good to go by the next election in May. Getting your Texas Driver's License should not hinder your voting, as you can use other forms of ID to vote. Here is some information for you http://www.sos.state.tx.us/elections/index.shtml.

You can also print this form out http://www.sos.state.tx.us/elections/forms/vr17.pdf and mail it to:

Elections Administrator

Bruce Sherbet

2377 North Stemmons Frwy, Suite 820

Dallas, TX  75207

Getting your Certificate of Citizenship is a federal issue, so if you have questions about that, you will need to contact your federal representatives office which would be Pete Sessions. Here is his contact info:

**Texas U.S. Representative**
Congressional District 32--Congressman Pete Sessions
District Address: 1514 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON DC 20515
Phone: (202) 225-2231
District Offices

file://E:\Voter ID for AG\Action Sheets and Emails\Vaught-3-12 help with voter registration.htm          3/28/2012

TX_00004933
Defendant's Exhibit #   DE-000096
018
USA_00007890

Page 6 of 8

12750 Merit Drive, Suite 1434
Dallas, TX 75251
Phone: (972) 392-0505

I hope this information is helpful.  Please let me know if you have further questions.

Sincerely,

Sarah

**Sarah Hauser**

District Director

State Representative Allen Vaught

Texas House District 107

(214) 370-8305 District Office

Sarah.Hauser@house.state.tx.us

---

**From:** m.y. levy [mailto:mylevy@gmail.com]
**Sent:** Monday, March 16, 2009 3:20 PM
**To:** Sarah Hauser
**Subject:** Re: help with voter registration

hi Sarah:

any updates?
i found another document from the federal government
http://www.uscis.gov/files/article/A4eng.pdf

it states that a valid US passport is all the proof i need to document citizenship.

thanks,
Dr M Y Levy

On Wed, Mar 11, 2009 at 7:01 PM, m.y. levy <mylevy@gmail.com> wrote:

Hi Sarah:

Thanks for your help and quick reply and help with this matter.

The US federal government requires as proof of US citizenship *ONE* of the following:

file://E:\Voter ID for AG\Action Sheets and Emails\Vaught-3-12 help with voter registration.htm          3/28/2012

TX_00004934

**Defendant's Exhibit #**
018

DE-000097

USA_00007891

☒ Previously issued, undamaged U.S. Passport

☒ Certified <u>birth certificate</u> issued by the city, county or state*

☒ <u>Consular Report of Birth Abroad or Certification of Birth</u>

☒ Naturalization Certificate

☒ Certificate of Citizenship

here is the link to the website:
http://travel.state.gov/passport/get/first/first_830.html

My valid US passport should be all the proof I need of my citizenship. It is good enough for the federal government, and should also be good enough for the state of TX.
I will not be denied my right to vote, and I will not accept being listed as "not a US citizen" in the TX database or on my new drivers license.

Again, I am very appreciative of your help and you time.

Thanks,
Dr. Moshe Yair Levy




On Wed, Mar 11, 2009 at 5:21 PM, Sarah Hauser <Sarah.Hauser@house.state.tx.us> wrote:

Mr. Levy:

I got your email as we were on the telephone. I hope to get this situation resolved for you as soon as possible.

thank you,

Sarah


**Sarah Hauser**

District Director

State Representative Allen Vaught

Texas House District 107

(214) 370-8305 District Office

Sarah.Hauser@house.state.tx.us

---

**From:** mylevy@gmail.com [mailto:mylevy@gmail.com]
**Sent:** Wednesday, March 11, 2009 5:11 PM
**To:** District107 Vaught
**Subject:** help with voter registration

file://E:\Voter ID for AG\Action Sheets and Emails\Vaught-3-12 help with voter registration.htm          3/28/2012

TX_00004935

**Defendant's Exhibit #**           DE-000098
018

USA_00007892

**Name:** Mr. Moshe Yair Levy
**Address:** 6414 Lakewood Blvd.
**City:** Dallas
**State:** TX
**Zipcode:** 75214
**Phone:** 443-4130368
**E-mail:** mylevy@gmail.com

**Message:**
I recently moved to Dallas from Baltimore for a new job. I was born in Israel and became a US citizen when I was under the age of 16. My parents became naturalized citizens and due to my age at the time, I also got citizenship. I never got "naturalization papers". I have had a valid US passport since that time. I have been a US citizen more than 21 years and was a registered voter in MD. When I went to apply for my Texas driver's license, I was told that my passport did not prove I was a citizen (although you cannot get a US passport without being a citizen), and without naturalization papers (which I don't have), my license would say I was not a citizen, which would also make me unable to register to vote. taking away my right to vote is unconstitutional. how can we right this situation? i appreciate any help you could offer.

Thank you for your time,

Dr. Moshe Yair Levy

**ComputerIP:** 76.187.69.2

TX_00004936

**Defendant's Exhibit #**           DE-000099
018

USA_00007893

**Hinesley, Barbara**

| | |
|---|---|
| **From:** | Davio, Rebecca |
| **Sent:** | Thursday, September 15, 2011 7:46 AM |
| **To:** | Arriaga, Amanda; DPS Government Relations |
| **Cc:** | Terry, Michael; Smith, Janie |
| **Subject:** | RE: Questions from Sen. Ellis |

REVISED ANSWERS:

Within a DPS licensing office, will there be a separate line/processing counter for individuals coming in solely to obtain a election identification certificate under Ch. 521A?
The current plan is to handle applicants for election identification certificates (EIC) in a fashion similar to applicants for personal identification cards.

Will the current DPS locations be the only places to obtain an election identification certificate?
In September 2012, we will be opening mega centers in metropolitan areas that will alleviate lines and provide expanded DPS presence is some areas, but we do not have plans to provide additional facilities for EIC issuance.

---

**From:** Arriaga, Amanda
**Sent:** Thursday, September 15, 2011 7:37 AM
**To:** Davio, Rebecca; DPS Government Relations
**Cc:** Terry, Michael; Smith, Janie
**Subject:** RE: Questions from Sen. Ellis

I think that would be best. We're stuck in some ways because they won't like the answer either way. So, if we don't have to make the special accommodations for people who want the voter ID, then I think you can stick to your guns and say so and cite the statute...

---

**From:** Davio, Rebecca
**Sent:** Wednesday, September 14, 2011 10:00 PM
**To:** Arriaga, Amanda; DPS Government Relations
**Cc:** Terry, Michael; Smith, Janie
**Subject:** Re: Questions from Sen. Ellis

Yes. I was hoping that it didn't come across as very much of a possibility.

What do you think the reaction will be if we just say they will be treated like regular I'd card applicants and leave it at that?

---

**From:** Arriaga, Amanda
**Sent:** Wednesday, September 14, 2011 04:41 PM
**To:** Davio, Rebecca; DPS Government Relations
**Cc:** Terry, Michael; Smith, Janie
**Subject:** RE: Questions from Sen. Ellis

Are y'all concerned at all about giving "wiggle room" in this response that says, maybe at some point we'll have a special line for the voter ID? I'm afraid that they might come back and demand to know how you'll decide when it's necessary, which offices you would give that "privilege" to, etc.

1

Defendant's Exhibit #
020

TX_00005035

DE-000102

USA_00007896

**From:** Davio, Rebecca
**Sent:** Wednesday, September 14, 2011 1:41 PM
**To:** DPS Government Relations; Arriaga, Amanda
**Cc:** Terry, Michael; Smith, Janie
**Subject:** RE: Questions from Sen. Ellis

Following is our draft response:

The current plan is to handle applicants for election identification certificates (EIC) in a fashion similar to applicants for personal identification cards.  It would be possible, in larger offices and those with queuing systems, to route election identification certificate (EIC) customers through special lines, if deemed necessary. Applicants in small offices may have to wait with other driver license customers. We will provide staff with the flexibility to serve the customers in the most efficient manner.

We will be opening mega centers in metropolitan areas that will alleviate lines and provide expanded DPS presence is some areas, but we do not have plans to provide additional facilities for EIC issuance.

**From:** Smith, Janie
**Sent:** Tuesday, September 13, 2011 10:11 AM
**To:** Davio, Rebecca
**Cc:** Terry, Michael
**Subject:** RE: Questions from Sen. Ellis

Here is my response – edit as you see fit. Janie

Larger offices and those with queuing systems will be able to establish specific lines, if necessary, or route election identification certificate (EIC) customers through express lines along with applicants for personal identification cards. Applicants in small offices may have to wait with other driver license customers. We will provide staff with the flexibility to serve the customers in the most efficient manner.
We will be opening mega centers in metropolitan areas that will alleviate lines and provide expanded DPS presence is some areas, but we do not have plans to provide additional facilities for EIC issuance.

**From:** Davio, Rebecca
**Sent:** Monday, September 12, 2011 7:54 PM
**To:** Smith, Janie
**Cc:** Terry, Michael
**Subject:** FW: Questions from Sen. Ellis

Figure Mike already asked you to handle but just in case

**From:** DPS Government Relations
**Sent:** Monday, September 12, 2011 4:02 PM
**To:** Davio, Rebecca; Terry, Michael
**Cc:** Arriaga, Amanda
**Subject:** FW: Questions from Sen. Ellis

Rebecca and Mike,

Can you and your team prepare a response for Senator Ellis' office to the below questions?  Amanda will approve then send the response.

Thank you,

2

**Defendant's Exhibit #**
**020**

TX_00005036

DE-000103

USA_00007897

Rhonda S. Trumble
Assistant Chief, Policy
Public Affairs and Policy
Texas Department of Public Safety
(512) 424-2037

**From:** David Edmonson [mailto:David.Edmonson@senate.state.tx.us]
**Sent:** Monday, September 12, 2011 3:14 PM
**To:** DPS Government Relations
**Subject:** FW: Questions from Sen. Ellis

Sent to this email after I received Amanda's out-of-office reply.

**From:** David Edmonson
**Sent:** Monday, September 12, 2011 3:13 PM
**To:** 'Amanda.arriaga@txdps.state.tx.us'
**Subject:** Questions from Sen. Ellis

Amanda,

Sen. Ellis has a couple of questions re: DPS's implementation of SB 14, the voter ID bill.  Within a DPS licensing office, will there be a separate line/processing counter for individuals coming in solely to obtain a election identification certificate under Ch. 521A?  Or would a Texan coming to obtain the election identification certificate have to wait in the same line as someone obtaining a driver's license?

Additionally, are you aware of whether DPS has any plans to host satellite locations/offices to assist citizens with obtaining the election identification certificates?  Or will the current DPS locations be the only places to obtain an election identification certificate?

Thanks,

**David Edmonson**
Senior Policy Advisor
Senator Rodney Ellis
Senate District 13
Phone: 512.463.0113
Fax: 512.463.0006

3

Defendant's Exhibit #
020

TX_00005037

DE-000104

USA_00007898

PL556
9/2/2014
2:13-cv-00193

DL-14C (Dec 2011)

# APPLICATION FOR TEXAS ELECTION CERTIFICATE
### FOR ELECTION PURPOSES ONLY; CANNOT BE USED AS AN IDENTIFICATION CARD

**FOR DEPARTMENT USE ONLY**

**ASSIGNED #** _____

**NOTICE:** All information on this application must be completed in INK.

**APPLICANT INFORMATION**
LAST NAME:
FIRST NAME:
MIDDLE NAME:
SUFFIX:
MAIDEN NAME:

DATE OF BIRTH (mm/dd/yyyy): _____ - _____ - _____
SSN: _____ - ___ - _____
SEX: (Circle One)    Male        Female
EYE COLOR: _____    HAIR COLOR: _____
RACE:
HEIGHT: ft. _____    in. _____
WEIGHT: lbs. _____
UNITED STATES CITIZEN:   yes        no

**If you are not a US citizen, you are not eligible for an Election Certificate**
PLACE OF BIRTH: CITY: _____  COUNTY: _____  STATE: _____  COUNTRY: _____
FATHER'S LAST NAME: _____

**CONTACT INFORMATION**
HOME PHONE:
OTHER PHONE:
EMAIL:

**ADDRESS INFORMATION**
RESIDENCE ADDRESS:

CITY: _____  STATE: _____
ZIP CODE: _____  COUNTY: _____

MAILING ADDRESS:

CITY: _____  STATE: _____
ZIP CODE: _____  COUNTY: _____

MOTHER'S MAIDEN NAME: _____

**INFORMATION REQUIRED FROM ALL APPLICANTS:**

| | YES | NO | |
|---|---|---|---|
| 1. | ☐ | ☐ | Are you presenting a voter registration card today? |
| 2. | ☐ | ☐ | If not, are you registering to vote? |
| 3. | ☐ | ☐ | Do you have a Texas driver license or learner license (unexpired, or expired for no more than 60 days)? |
| 4. | ☐ | ☐ | Do you have a Texas identification card (unexpired, or expired for no more than 60 days)? |
| 5. | ☐ | ☐ | Do you have a Texas concealed handgun license (unexpired, or expired for no more than 60 days)? |
| 6. | ☐ | ☐ | Do you have a US passport (unexpired, or expired for no more than 60 days)? |
| 7. | ☐ | ☐ | Do you have a US citizenship certificate that contains your photograph? |
| 8. | ☐ | ☐ | Do you have a US military identification card that contains your photograph (unexpired, or expired for no more than 60 days)? |

**If answering "yes" to questions 3 through 8, you are not eligible to receive a Texas Election Certificate.**

## CERTIFICATION
I do solemnly swear, affirm, or certify that I am the person named herein and that the statements on this application are true and correct.

X_____        Date: _____

## VERIFICATION
Sworn to and subscribed before me this _____ day of _____, _____

_____
Notary Public in and for the State of Texas or Authorized Officer

FRONT

Defendant's Exhibit # 023

DE-000121

TX_00005070

USA_00007915

DL-14C (Dec 2011)

**Who IS eligible to apply for a Texas Election Certificate?**

The department shall issue an election certificate upon request to persons who **do not** have one of the forms of acceptable photo identification listed above, and are:
- o  A registered voter in Texas and present a valid voter registration, or are eligible to vote and submit a voter registration application to the Department.
- o  A United States citizen.
- o  A resident of Texas.
- o  At least 17 years and 10 months of age.

**Who is NOT eligible to apply for a Texas Election Certificate?**

Any persons issued one of the following documents are not eligible for an election certificate:
- o  Texas driver license (includes occupational license with photograph) – unexpired, or expired less than 60 days.
- o  Texas identification card – unexpired, or expired less than 60 days.
- o  Texas concealed handgun license – unexpired, or expired less than 60 days.
- o  United States military identification card containing the person's photograph.
- o  United States passport – unexpired, or expired less than 60 days.
- o  United States citizenship certificate containing the person's photograph.
- o  Persons who are **not** United States citizens (i.e. permanent residents, asylees, refugees or temporary visitors).

**Section 521A of the Texas Transportation Code states that:**

- o  An election certificate may not be used or accepted as a personal identification certificate.
- o  The department may not collect a fee for an election certificate or a duplicate election certificate issued under this section.
- o  The department may require each applicant for an original or renewal election certificate to furnish to the department proof of identification and US citizenship.
- o  The department may cancel and require surrender of an election certificate after determining that the holder was not entitled to, or gave incomplete information in the application for, the election certificate.

### SOCIAL SECURITY NUMBER COLLECTION DISCLOSURE

Disclosure of your social security account number is mandatory for driver license applicants, but voluntary for identification card and election certificate applicants.  This information is solicited pursuant to 42 U.S.C 405(c)(2)(C)(i), 42 U.S.C. 666(a)(13)(A); 49 C.F.R. 383.153, Texas Family Code Section 231.302(c)(1) and Texas Transportation Code Sections 522.021 and 521.142.  The Department will use social security account number information for identification purposes and will only release the number to the Child Support Enforcement Division of the Attorney General's Office, the U.S Selective Service Administration and the Texas Secretary of State for statutorily authorized purposes pursuant to Texas Transportation Code Section 521.044.

BACK

TX_00005071

**Defendant's Exhibit #**
023

DE-000122

USA_00007916

**Meeting Minutes**

**October 6, 2011**

**Reason for Meeting:** Preliminary requirements gathering session for Election Certificate (legislatively mandated via SB 14)

**Attendees:** Teresa Valls, Germaine Martinez, Diane Heselmeyer, Margaret Spinks, Lisa Daughtry, Renee Cardwell, Janie Smith, Bob Myers, Tiffany Stubbings, Becquer Santisteban, Deepa Rajan, Karen Morris

**Discussion Topics**

1. Project is to be implemented no later than Jan 1, 2012.  Nothing can be implemented over the New Year and Christmas holidays, which means that this project must be implemented over the weekend of Dec. 19.  As the detailed requirements are identified, the team will determine if a phased approach that implements the issuance functionality first is appropriate.

2. There has been some discussion over whether or not to include the Disabled Veteran's ID and the Veteran Indicator as a part of this project.  Teresa has scheduled a separate meeting to learn more about these 2 initiatives prior to including them with this project.

3. The Election Certificate (EC) is a new card that will be issued to those persons who need a photo ID for voting purposes
   a. Person cannot have any other photo ID (DL, passport, military ID, etc.)
   b. Person must be at least 17 years 11 months old
   c. Person must be a registered voter or state their intention to register to vote in conjunction with the issuance of the EC.  The system will need to record which of these reasons were provided by the person.
   d. A person's ability or inability to pay for an ID card is NOT considered during the card issuance.

4. DPS does not 'register' a person to vote.  DPS submits the application to register to vote to the Secretary of State (SOS).  This will remain the same.  The EC is simply a card for the person to use at the polling place when voting.  Election officials (not DPS) will determine whether or not a person is eligible to vote.

5. Expiration of the card will be 6 years from the person's birthday.  Cards for persons over 70 years old will not expire.

6. The card can be cancelled.  There will be a letter sent to the holder when a card is cancelled.

7. The card can be renewed, but no renewal notices will be mailed.

8. The applicant for the EC must provide proof of identity.  The documents that will be accepted are a subset of the documents currently accepted and listed within DLS.  Janie will provide the list to the team once approved by upper management.

9. If the person is found in DLS with an active DPS issued card (ID, DL, CDL) they are not eligible for the EC.  A person can have UNL and be issued an EC, but we need to maintain only 1 person record.

TX_00005110

**Defendant's Exhibit #**
024

DE-000123

USA_00007917

10. The card number that is assigned will follow the same format as our existing numbers. Is there a need to readily identify an EC by the numbering format (i.e., do all cards need to start with the same digit)? Janie will investigate.
11. The information will be entered into the system from a paper form that was filled out by the applicant. This form is currently being designed. Will it include the Organ Donor field? Renee will provide a sample when available.
12. Because the information collected is different than what is currently collected for any other issuance transaction, DLD envisions a new data collection screen (UI change). Renee will provide a mockup when available.
13. The persons photo, fingerprints, and signature will be captured. The image will be enrolled.
14. There will be no warrant check, no PDPS, no SSOLV – there will be no external interfaces during the issuance process.
15. Though no fee will be collected, the fee collection screen will be shown. A receipt will be printed. The receipt will be soft scanned. Renee will provide a sample when available.
16. A Temporary Election Certificate will be printed. Renee will provide a sample when available.
17. A new transaction will be created. This transaction must display in the transaction history.
18. The card status must be available by IVR and TOL online link (Margaret to verify). Vendor contract with TOL will need to be changed.
19. Must be able to perform Duplicate, Renewals, and Remake Cards.
20. There will be no Modify Card or Correction No Fee (CNF).
21. A new SLA for TOL will be needed for them to perform a no fee transaction.
22. Address changes will be made via TOL and in-person. Do we issue a new card? Janie will verify.
23. Need to be excluded from all searches, including TLETS.
24. There will be no convictions, EA, accidents, or tasks associated with persons holding only an EC.
25. The interface to L1 (card production vendor) will change. Teresa will schedule a separate meeting with L1.
26. There are no changes to the FIS (mailing services vendor) process.
27. We need to delve into the card, admin, and record statuses that may or may not be associated with the EC. This will be a topic for our next meeting.
28. There will be at least 1 new report; some existing reports may need modifications to include the new card.
29. Can the EC be converted into an ID or DL? What if the person has a suspended license? Janie will research.

**Action Items**

Janie Smith

- Provide the list of acceptable ID documents to the team once approved by upper management.
- Verify that address changes will be made by TOL and find out whether or not a new card will be issued when the address is changed
- Determine whether or not an EC can be converted to an ID or DL and whether or not a suspended license counts as an existing photo ID

- Is there a need to readily identify an EC by the numbering format (i.e., do all cards need to start with the same digit)?

<u>Teresa Valls</u>

- Schedule a separate meeting with L1
- Schedule a meeting to discuss inclusion of veteran related initiates (DONE)

<u>Renee Cardwell</u>

- Provide mockups/samples of:
  - o Paper form that will be filled out by the customer to collect their information during the issuance process
  - o Proposed data collection screen
  - o Proposed new receipt
  - o Proposed temporary EC

<u>Margaret Spinks</u>

- Confirm that TOL and IVR will be used by the customer to track the status of their card

TX_00005112

**Defendant's Exhibit #**
024

DE-000125

USA_00007919

**Driver Licenses**

| | |
|---|---|
| Bill: | SB14 |
| Companion: | |
| Author: | |
| Version: | CCR: Conference Committee Report |

| DIVISION SME & CONTACT INFO | Name: | Janie Smith |
|---|---|---|
| | Phone: | x2976 |
| | Email: | janie.smith@txdps.state.tx.us |

1. Does this bill contain a priority of the Department or the Public Safety Commission?  If Yes,  please list the priority.

   No

2. Does this bill relate to the DPS goals of:  combat terrorism, enhance public safety, disaster response and recovery or provide world class services?  If Yes, which goal does it relate to and how?

   Yes

   World Class Service - The Enrolled version requires a new Election Identification to be issued at no cost, separate from the current Personal Identification Certificate. As with other versions of this bill, this could affect lines at wait times at DL offices, particularly surrounding major voting times like a Presidential election.

3. Who have you spoken with about this bill?  (For example, legislative office, other state agencies, your supervisor, external organizations.)  Please be specific:  name of who you spoke with; their contact information; and details discussed. **Update as needed.

   Rebecca Davio, DLD AD, regarding the new Election ID card that was never discussed or included in any previous versions of the bill.

4. Does this bill create or expand a penalty?  If Yes, please list the new or enhanced penalty.

   No

5. Does this bill repeal any current state statute?  If Yes, please list the citation of statute that is to be repealed.

   Yes

   Not as it relates to DL
   Election Code 63.007 and 63.008 are repealed.

6. Does this bill create or expand a fee or fine?  If Yes, which one and what is the fiscal impact per fiscal year for FY11 - FY16.  Show the current fee, new fee and frequency of collection by fiscal year.

   Yes

**Defendant's Exhibit #
026**

DE-000128

TX_00005126

USA_00007922

The Enrolled version requires DPS to issue a no cost Election ID card. The CCR requires that the new card be a different color than a DL/ID but otherwise look similar.

Production and mailing cost for a card is $1.67. We do not know the number of cards that will be issued, but DPS will bear the cost of the card production.

7.

| Does this bill require DPS to create, update, or modify any policies, procedures, reports, administrative rules, etc., including the General Manual, publications, reports to the Legislature, executive branch or task forces?  If Yes, what policy or report is it and what is the fiscal impact per fiscal year for FY11 - FY16.  List the cost of each new or revised manual, publication, report, etc. by fiscal year.  Estimate the number of additional work hours needed to accomodate the new or revised product. | |

| Yes | |

Since the Enrolled version requires a new card to be issued, this will require additional training for customer operations staff on the issuance of a new card. The following training requirements were provided for the original bill, which required issuance of a free Personal ID for persons meeting the requirements to obtain such for voting.
*Training
   50 hours of preparation time for one DLD employee to create the training module
   1534 employees to be trained in a two-three-hour session - training can be done at the workplace, so no need for travel or out of office time
   Cost to produce training materials- $3481.70
*Manual revisions to update issuance procedures - 3 hours
*Website update - 2 hours
These updates will be done utilizing existing employees.
We anticipate that the manual revisions and website updates will take an additional time -
Manual revisions for new card issuance - 10 hours
Website update - 3 hours

The Enrolled version states that DPS can cancel the Election ID for persons who obtained it but were not actually eligible to vote or if the person provided inaccurate information. This will require the Enforcement and Compliance to develop cancellation procedures and train employees on those procedures. It is not anticipated that this will be a large number of people so will not require additional FTEs and can be done with existing personnel.

L-1 has stated that the cost of designing a new card to meet these requirements - $100,000

8.

| Is there a fiscal impact to the Department program or division?  Please be specific about the number of FTE's needed, administrative costs, program costs, etc.  List the state classified titles, the start dates for those positions, and the number of such classified titles for each fiscal year from FY11 - FY16.  Show how many positions will be stationed at headquarters versus field offices.  For a full list of all classified titles go to: http://sao.hr.state.tx.us/Compensation/index.html.  Specify how much is needed for travel and training for each position by fiscal year. | |

| Yes | |

**Defendant's Exhibit #**
026

TX_00005127
DE-000129

USA_00007923

**Required Programming:**
*Programming would be needed to allow an original or renewal election identification certificate.
*Programming to the Driver License System would be needed to add an additional Correction – No Fee reason (Register to vote) to be added to the list of CNF reasons listed in Alt Flow 7 of UCS Collect Fee.
*Updated:  Programming would be needed to add a new enforcement action code (see Review item #27132).
**Use Cases Effected:**
UCS Collect Fee
Issuance
Submit Enforcement Action
TOL

9.   What is the justification for the cost estimate?  Explain the methodology for your cost estimate.

DLS programming
Training - actual cost for materials

10.   What is the effective date of this bill?

01/01/2012

11.   Is there anything else that Executive Management needs to know about this bill?  (For example, was it previously filed?  Was it previously passed and subsequently vetoed?  Does the bill codify a current rule or practice of the Department or Commission?)

The Enrolled version will cost significantly more money to implement due to the requirement of creating a new Election ID card.

Reviewed by AD:

Please select AD

Reviewed by OGR:

Date:

Date:

**Defendant's Exhibit #**
026

TX_00005128

DE-000130

USA_00007924

SB14 Conference Committee Report
Driver License Division
05/09/11

This version of SB14 is significantly different from all previous versions as it relates to DLD. This version adds TRC 521A requiring DPS to issue an Election Identification Certificate, which is to be similar to a DL/ID but distinguishable by color, free of charge to persons who state they need it only for voter ID purposes.

Section 20. Adds TRC 521A relating to Election Identification Certificates:
- Requires DPS to issue an Election ID to a person who is obtaining the certificate to satisfy voter ID requirements in Election Code 63.001(b) and does not have another acceptable form of ID.
    - The applicant must present a valid voter registration certificate or registration application.
- The department may not collect a fee for an original or duplicate Election ID.
- The Election ID may not be used or accepted as a personal ID.
- The appearance must be similar to but distinguishable in color from a DL/ID.
- DPS and SOS may work together to develop the form and appearance of an Election ID.
- Authorizes DPS to require applicants to meet requirements in TRC 521.142 for DL applicants.
- Authorizes DPS to cancel and require surrender of an Election ID if it is determined that the person was not entitled to it or provided false information in order to receive it.
- Establishes that an Election ID expires on a date specified by DPS.
    - An Election ID issued to a person 70 years of age or older does not expire

The conference committee has gone outside the bounds of the original legislation. The rules are such that the presiding officer can make the final determination on these provisions.

DPS Comments:
This bill eliminates the required issuance of a no-fee Identification Certificate, but replaces it with a new Election Identification Certificate.

- Design of a new Election ID will cost $100,000 per L-1. This will include a different color cardstock, which is one of the requirements of the legislation.
- There are no appropriations to pay the cost of issuance and production of the new Election ID. This will still cause a negative impact to DPS of $1.67 per card issued.
- Fund 006 funds driver license operations and there is a requirement that this money is to be used for highway safety purposes. There is concern that the cost of these cards is in violation of the allowable use of these funds.
- DLS programming requirements will increase with the creation of a new card. It will also require a new interface with L-1 for card production.
- This new document eliminates the $15/card negative impact to the mobility fund for Personal Identification Certificates.
- The bill states that a person cannot already have another form of acceptable ID to satisfy Election Code 63.001(b), so the number of people requesting the Election ID should be fairly low.

**Defendant's Exhibit #**
027

TX_00005129
DE-000131

USA_00007925

**COST TO IMPLEMENT SB 14**

| qty/hours | unit cost | total |
|---|---|---|
| 1560 | $ 130.00 | $ 202,800.00 |
| 400 | $ 130.00 | $ 52,000.00 |
| 3 | $ 25,132.00 | $ 75,396.00 |
| | | |
| 1 | $ 117,000.00 | $ 117,000.00 |
| 1 | $ 3,481.70 | $ 3,481.70 |
| 57834 | $ 0.60 | $ 34,700.40 |
| 57834 | $ 0.46 | $ 26,603.64 |
| | | $ 511,981.74 |

**POTENTIAL REVENUE LOSS**

| | | |
|---|---|---|
| 46846 | $ 15.00 | $ 702,690.00 |
| 10988 | $ 5.00 | $ 54,940.00 |
| | | $ 757,630.00 |

Implementation costs include modification
development of a new Voter ID card. (see n
may be incurred by the Secretary of States

It is unlikely that someone will forfeit a Tex
to surrender an existing Texas ID for the fre
other than the voting process, there is no v
a revenue loss to the mobility fund.  Based
for a Texas Identification Card register to v
estimates tab).

TX_00005147

**Defendant's Exhibit #**
028

DE-000132

USA_00007926

DLS Application modification (requirements, design, development, QA, UAT)
PMO project Manager
Customer Service Representative's IT Contact Center
L1 Application modification (Image Capture, Image Verification, production file modification
and new card design)
Training development and materials
card cost
card processing (processing, supplies and postage)
TOTAL COST


Based on 13% of current ID card applicants registering to vote (81% 18-64 yoa)
Based on 13% of current ID card applicants registering to vote (19% 65 + yoa)
POTENTIAL LOSS



s to the Driver License System, Image Capture System, Image Verification System and
equirements tab for high level description)  This estimate does not include any costs that
Office.


as driver license for a Voter ID; however there is the potential that a customer could choose
e Voter ID.  Since the Voter ID will not be an acceptable form of identification for anything
vay to accurately calculate the number of customers who will make that choice,  resulting in
on historical knowledge of the issuance process, approximately 13% of customers applying
te.  Using that percentage, an estimated revenue loss has been  calculated.  (see ID card

TX_00005148

**Defendant's Exhibit #**
028

DE-000133

USA_00007927

SB 14 – Fiscal Note Requirements – High level requirements

DLS Updates Changes:

- Create new card type – voter id
- Create issuance transaction for voter id
    - Need new numbering schematic that will be system generated, details will be determined after meetin assume 15-20 digit alpha/numeric field
    - Last Name, First Name, Middle and Suffix (use DLS field requirements)
    - Date of birth (use DLS field requirements)
    - Residence Address (use DLS field requirements)
    - Mailing Address (use DLS field requirements)
    - Voter registration fields (existing in DLS)
    - Citizenship (yes or no – if no stop issuance transaction)
    - Must meet identity requirements (existing in DLS)
    - No fee processing
    - Real time query to Crime Records to determine if applicant is eligible based on criminal history. (NEED INPUT FROM LAW ENFORCEMENT SUPPORT)
    - If return from criminal history is not eligible, stop issuance transaction.
- Modify ICS program – capture portrait and signature only – L1
- Portrait image will be enrolled in IVS following same criteria as dl/id
- Create new card production file (DLS to L1) (NEED INPUT FROM L1)
    - Contain voter id cards only
    - Provide mag stripe and 2D barcode data
- Create new card – L1
    - Potentially use white teslin
    - Portrait layout
    - Header text and color different from all dl/id card types
    - Data displayed
        - Last, first, middle name and suffix
        - Residence address
        - Date of birth
        - Voter id number
        - Portrait
        - Signature
- Create new post production file (from L1 to DLS) (NEED INPUT FROM L1)
    - Populate post production information into card production table
- Modify create voter registration extract file to include new applications from voter id transaction
- Create new interface that will allow Secretary of State to provide cancellation information (NEED INPUT FROM
- Create new interface that will allow realtime validation of existing voter registrations (NEED INPUT FROM SO!
- Modify create file for validating address (FIS mail file) to include voter id information.

TX_00005149

**Defendant's Exhibit #**
028

DE-000134

USA_00007928

ιg with SOS –

νι SOS)
s)

TX_00005150

**Defendant's Exhibit #**
028

DE-000135

USA_00007929

## Voter ID Cost Estimates

# of ID's issued in 2010

% of ID holders under 18 yoa/Temp Vis

# of ID's issued less ID holders under 18 yoa/Temp Vis

13% of ID holders who expressed interest in registering to vote

 % of ID holders over 65 yoa

**Maximum revenue loss to Mobility Fund if all eligible ID holders elected to get a free ID\***

| | |
|---|---|
| 444,879 x 81% = 360,352 x $15 = | $5,405,280 |
| (over 65 yoa) 19% = 10,989 x $5 = | $54,945 |
| **Total** | **$5,460,225** |

**Minimum loss to Mobility Fund if only the current 13% of ID holders who registered to vote at time of application elected to get a free ID**

| | |
|---|---|
| 57,834 x 81% = 46,846 x $15 = | $702,683 |
| (over 65 yoa) 57,834 x 19% = 10,989 x $5 = | $54,945 |
| **Total** | **$757,628** |

**Impact to DPS' budget**
$1.67 = DPS' cost to produce and mail ID card

| | |
|---|---|
| MAX — 444,879 x $1.67 = | $742,948 |
| MIN — 57,843 x $1.67 = | $96,583 |

\* This maximum is mitigated if free IDs are issued to customers who don't already have identification su

**Defendant's Exhibit #**
028

DE-000136

USA_00007930

473,275

- 6% or 28,396

444,879

57,834

19% or 89,922

uitable to meet the 63.0101 (Election Code) requirements

TX_00005152

**Defendant's Exhibit #**
028

DE-000137

USA_00007931

SB 14 - ENR.xlsx

**Driver Licenses**

| Bill: | SB14 |
|---|---|
| Companion: | |
| Author: | |
| Version: | ENR: Enrolled as Finally Passed |

| DIVISION SME & CONTACT INFO | | |
|---|---|---|

| Name: | Janie Smith |
|---|---|
| Phone: | x2976 |
| Email: | janie.smith@txdps.state.tx.us |

1. Does this bill contain a priority of the Department or the Public Safety Commission?  If Yes, please list the priority.

No

2. Does this bill relate to the DPS goals of:  combat terrorism, enhance public safety, disaster response and recovery or provide world class services?  If Yes, which goal does it relate to and how?

Yes

World Class Service - The Enrolled version requires a new Election Identification to be issued at no cost, separate from the current Personal Identification Certificate. As with other versions of this bill, this could affect lines at wait times at DL offices, particularly surrounding major voting times like a Presidential election.

Printed: 9:43 AM 3/28/2012

**Defendant's Exhibit #** 029

DE-000138

TX_00005187

USA_00007932

SB 14 - ENR.xlsx

3.

Who have you spoken with about this bill?  (For example, legislative office, other state agencies, your supervisor, external organizations.)  Please be specific:  name of who you spoke with; their contact information; and details discussed. **Update as needed.

Rebecca Davio, DLD AD, regarding the new Election ID card that was never discussed or included in any previous versions of the bill.

4.

Does this bill create or expand a penalty?  If Yes, please list the new or enhanced penalty.

No

Printed: 9:43 AM 3/28/2012

TX_00005188

**Defendant's Exhibit #**
029

DE-000139

USA_00007933

SB 14 - ENR.xlsx

5. | Does this bill repeal any current state statute?  If Yes, please list the citation of statute that is to be repealed.

Yes

Not as it relates to DL
Election Code 63.007 and 63.008 are repealed.

6. | Does this bill create or expand a fee or fine?  If Yes, which one and what is the fiscal impact per fiscal year for FY11 - FY16.  Show the current fee, new fee and frequency of collection by fiscal year.

Yes

The Enrolled version requires DPS to issue a no cost Election ID card. The CCR requires that the new card be a different color than a DL/ID but otherwise look similar.
Production and mailing cost for a card is $1.67. We do not know the number of cards that will be issued, but DPS will bear the cost of the card production.

7. | Does this bill require DPS to create, update, or modify any policies, procedures, reports, administrative rules, etc., including the General Manual, publications, reports to the Legislature, executive branch or task forces?  If Yes, what policy or report is it and what is the fiscal impact per fiscal year for FY11 - FY16.  List the cost of each new or revised manual, publication, report, etc. by fiscal year.  Estimate the number of additional work hours needed to accomodate the new or revised product.

Yes

Since the Enrolled version requires a new card to be issued, this will require additional training for customer operations staff on the issuance of a new card. The following training requirements were provided for the original bill, which required issuance of a free Personal ID for persons meeting the requirements to obtain such for voting.
*Training
   50 hours of preparation time for one DLD employee to create the training module
   1534 employees to be trained in a two-three-hour session - training can be done at the workplace, so no need for travel or out of office time
   Cost to produce training materials- $3481.70
*Manual revisions to update issuance procedures - 3 hours

Printed: 9:43 AM 3/28/2012

**Defendant's Exhibit #**
029

DE-000140

TX_00005189

USA_00007934

SB 14 - ENR.xlsx

| 8. | Is there a fiscal impact to the Department program or division?  Please be specific about the number of FTE's needed, administrative costs, program costs, etc.   List the state classified titles, the start dates for those positions, and the number of such classified titles for each fiscal year from FY11 - FY16.  Show how many positions will be stationed at headquarters versus field offices.  For a full list of all classified titles go to: http://sao.hr.state.tx.us/Compensation/index.html.  Specify how much is needed for travel and training for each position by fiscal year. |
|----|---|
| | Yes |

**Required Programming:**
*Programming would be needed to allow an original or renewal election identification certificate.
*Programming to the Driver License System would be needed to add an additional Correction – No Fee reason (Register to vote) to be added to the list of CNF reasons listed in Alt Flow 7 of UCS Collect Fee.
*Updated:  Programming would be needed to add a new enforcement action code (see Review item #27132).
**Use Cases Effected:**
UCS Collect Fee
Issuance
Submit Enforcement Action
TOL

Printed: 9:43 AM 3/28/2012

Defendant's Exhibit # 029

TX_0000519C

DE-000141

USA_00007935

SB 14 - ENR.xlsx

9. | What is the justification for the cost estimate?  Explain the methodology for your cost estimate.

DLS programming
Training - actual cost for materials

10. | What is the effective date of this bill?

01/01/2012

11. | Is there anything else that Executive Management needs to know about this bill?  (For example, was it previously filed?  Was it previously passed and subsequently vetoed?  Does the bill codify a current rule or practice of the Department or Commission?)

The Enrolled version will cost significantly more money to implement due to the requirement of creating a new Election ID card.

Reviewed by AD:
Please select AD

Reviewed by OGR:

Date:

Date:

Printed: 9:43 AM 3/28/2012

**Defendant's Exhibit #**
029

DE-000142



Privileged

TX_00005192

**Defendant's Exhibit #**
029

DE-000143

USA_00007937



Privileged

TX_00005193

**Defendant's Exhibit #**
029

DE-000144



Privileged

TX_00005194

**Defendant's Exhibit #**
029

DE-000145

USA_00007939

SB 14 - HCS.xlsx

**Driver Licenses**

| Bill: | SB14 |
|---|---|
| Companion: | Several similar |
| Author: | Fraser |
| Version: | HCS: House Committee Subsitute |

| DIVISION SME & CONTACT INFO | | |
|---|---|---|

| Name: | Janie Smith |
|---|---|
| Phone: | x2976 |
| Email: | janie.smith@txdps.state.tx.us |

1. Does this bill contain a priority of the Department or the Public Safety Commission?  If Yes, please list the priority.

No

2. Does this bill relate to the DPS goals of:  combat terrorism, enhance public safety, disaster response and recovery or provide world class services?  If Yes, which goal does it relate to and how?

Yes

world class service.  This bill requires DPS to issue a no-fee ID to persons who states they are getting the ID for voter identification. This could add to the customer base in DL offices increasing wait times for all customers and increase the transaction time for IDs issued under this provision, since it requires additional dialog with the customer at the time of the transaction.

Printed: 9:39 AM 3/28/2012

**Defendant's Exhibit #**
030

TX_00005197
DE-000146

USA_00007940

SB 14 - HCS.xlsx

3. Who have you spoken with about this bill?  (For example, legislative office, other state agencies, your supervisor, external organizations.)  Please be specific:  name of who you spoke with; their contact information; and details discussed. **Update as needed.

N/A for HCS version

4. Does this bill create or expand a penalty?  If Yes, please list the new or enhanced penalty.

Yes

Yes, Election Code 64.012(b) raises from third to second degree felony conviction for illegal voting. Conviction of an attempt to vote illegally is raised from class a misdemeanor to state jail felony. These sections do not affect DLD.

Printed: 9:39 AM 3/28/2012

Defendant's Exhibit #
030

TX_00005198
DE-000147

USA_00007941

SB 14 - HCS.xlsx

| 5. | Does this bill repeal any current state statute?  If Yes, please list the citation of statute that is to be repealed. |
|---|---|
| | Yes |

Election Code Sections 63.007 and 63.008 are repealed. These sections have no impact on DLD.

| 6. | Does this bill create or expand a fee or fine?  If Yes, which one and what is the fiscal impact per fiscal year for FY11 - FY16.  Show the current fee, new fee and frequency of collection by fiscal year. |
|---|---|
| | NA |

Section 18 amends TRC 521.422 to eliminate the issuance fee for an ID for a person who states they want an ID only to satisfy Section 63.001(b), Election Code, and is a registered voter presenting a valid voter registration or registering to vote at the time of application. Current ID cost-$15 for a six year ID for persons under 60 years of age and $5 for an indefinite expiration ID for persons over 60 years of age. Impact:
$15/card issued loss to mobility fund
$1.67/card issued impact to DPS will not be recovered

Historically approximately 13% of the ID card holders have a Y indicator for voter registration. 473,275 IDs

| 7. | Does this bill require DPS to create, update, or modify any policies, procedures, reports, administrative rules, etc., including the General Manual, publications, reports to the Legislature, executive branch or task forces?  If Yes, what policy or report is it and what is the fiscal impact per fiscal year for FY11 - FY16.  List the cost of each new or revised manual, publication, report, etc. by fiscal year.  Estimate the number of additional work hours needed to accomodate the new or revised product. |
|---|---|
| | Yes |

*Training
   50 hours of preparation time for one DLD employee to create the training module
   1534 employees to be trained in a one-hour session - training can be done at the workplace, so no need for travel or out of office time
   Cost to produce training materials- $3481.70

*Manual revisions to update issuance procedures - 3 hours
*Website update - 2 hours
These updates will be done utilizing existing employees.
Engrossed version 02/07/11 - no changes to DLD impact

Printed: 9:39 AM 3/28/2012

TX_00005199

Defendant's Exhibit #
030

DE-000148

USA_00007942

SB 14 - HCS.xlsx

| 8. | Is there a fiscal impact to the Department program or division?  Please be specific about the number of FTE's needed, administrative costs, program costs, etc.  List the state classified titles, the start dates for those positions, and the number of such classified titles for each fiscal year from FY11 - FY16.  Show how many positions will be stationed at headquarters versus field offices.  For a full list of all classified titles go to: http://sao.hr.state.tx.us/Compensation/index.html.  Specify how much is needed for travel and training for each position by fiscal year. |
|---|---|
| | NA |

There will be an unknown revenue loss to the mobility fund. (see #6)
• Costs to produce the ID cards will not be covered resulting in a negative fiscal impact to the Department. ID card cost $1.67 - card production, mailing supplies, presort and postage. This does not include costs related to the mailing machine (lease, maintenance)

** DLS Programming information from DL Tech Solutions
Required Programming: Programming changes would be required as an additional Correction – No Fee reason (Register to vote) would need to be added to the list of CNF reasons listed in Alt Flow 7 of UCS Collect Fee.
Use Cases Affected:  UCS Collect Fee
Engrossed version 02/07/11 - no changes to DLD
HCS version 03/09/11 - change in Section 20 states that a person cannot already have an acceptable document under Election Code 63. 0101 and obtain a no-cost ID. This will reduce the potential number of no-cost IDs issued thereby reducing the potential impact to the mobility fund and DPS.

Defendant's Exhibit #
030

TX_00005200
DE-000149

USA_00007943

SB 14 - HCS.xlsx

| 9. | What is the justification for the cost estimate?  Explain the methodology for your cost estimate. |
|---|---|

Historical information for updates. DLS programming costs are determined by IT.

| 10. | What is the effective date of this bill? |
|---|---|

01/01/12 except Sections 3, 5, 6, 7, 11, 22, and 24

11.

Is there anything else that Executive Management needs to know about this bill?  (For example, was it previously filed?  Was it previously passed and subsequently vetoed?  Does the bill codify a current rule or practice of the Department or Commission?)

*Numerous other voter ID bills are filed this session. This bill is the vehicle that has moved so far.
*This bill is substantially similar to : HB16, HB112, HB248, HB 539, HB624, HB1412,HB1458, and SB178.
*Voter ID bills have been filed in several previous session. In the 81st session, SB362 passed the Senate and stalled in the House due to procedural issues.
*Due to DLS programming requirements, it would be preferred that the DPS portion of the bill not be effective until 0/01/12.

| Reviewed by AD: | | Reviewed by OGR: |
|---|---|---|
| Rebecca Davio | | |

| Date: | 3/13/2011 | | Date: | |
|---|---|---|---|---|

Printed: 9:39 AM 3/28/2012

**Defendant's Exhibit #**
030

DE-000150

TX_00005201

USA_00007944

SB 14 - FIL.xlsx

**Driver Licenses**

| | |
|---|---|
| Bill: | SB14 |
| Companion: | Several similar see #11 |
| Author: | Fraser |
| Version: | ENG: Engrossed |

| DIVISION SME & CONTACT INFO | | |
|---|---|---|
| | Name: | Janie Smith |
| | Phone: | x2976 |
| | Email: | janie.smith@txdps.state.tx.us |

1. Does this bill contain a priority of the Department or the Public Safety Commission?  If Yes, please list the priority.

No

2. Does this bill relate to the DPS goals of:  combat terrorism, enhance public safety, disaster response and recovery or provide world class services?  If Yes, which goal does it relate to and how?

Yes

world class service.  This bill requires DPS to issue a no-fee ID to persons who states they are getting the ID for voter identification. This could add to the customer base in DL offices increasing wait times for all customers and increase the transaction time for IDs issued under this provision, since it requires additional dialog with the customer at the time of the transaction.

Printed: 9:44 AM 3/28/2012

**Defendant's Exhibit #**
032

DE-000159

SB 14 - FIL.xlsx

3. Who have you spoken with about this bill?  (For example, legislative office, other state agencies, your supervisor, external organizations.)  Please be specific:  name of who you spoke with; their contact information; and details discussed. **Update as needed.

NA
Engrossed version 02/07/11 - Rebecca Davio, AD for Driver License  discussed whether new language had an additional implications for DLD. There are no changes to the language that would impact DLD.

4. Does this bill create or expand a penalty?  If Yes, please list the new or enhanced penalty.

Yes

Yes, Election Code 64.012(b) raises from third to second degree felony conviction for illegal voting. Conviction of an attempt to vote illegally is raised from class a misdemeanor to state jail felony. These sections do not affect DLD.

Printed: 9:44 AM 3/28/2012

Defendant's Exhibit #
032

TX_00005211

DE-000160

USA_00007954

SB 14 - FIL.xlsx

| 5. | Does this bill repeal any current state statute?  If Yes, please list the citation of statute that is to be repealed. |
|---|---|

| Yes | |
|---|---|

Election Code Sections 63.007 and 63.008 are repealed. These sections do not affect DLD.

| 6. | Does this bill create or expand a fee or fine?  If Yes, which one and what is the fiscal impact per fiscal year for FY11 - FY16.  Show the current fee, new fee and frequency of collection by fiscal year. |
|---|---|

| No | |
|---|---|

Section 18 amends TRC 521.422 to eliminate the issuance fee for an ID for a person who states they want an ID only to satisfy Section 63.001(b), Election Code, and is a registered voter presenting a valid voter registration or registering to vote at the time of application. Current ID cost-$15 for a six year ID for persons under 60 years of age and $5 for an indefinite expiration ID for persons over 60 years of age.
If all eligible voters who do not currently hold ID's request under this provision, the potential issuance per year is 308,813. 18% of IDs issued are for persons over 60 - 55,586@$5=$277,930.
253,227@$15=3,798,405.
Potential revenue loss to the mobility fund/year $4,076,335

Historically approximately 13% of the ID card holders have a Y indicator for voter registration. 473,275 IDs were issued (original and renewal) in FY10.
Engrossed version 02/07/11 - no changes to potential impact to DLD

| 7. | Does this bill require DPS to create, update, or modify any policies, procedures, reports, administrative rules, etc., including the General Manual, publications, reports to the Legislature, executive branch or task forces?  If Yes, what policy or report is it and what is the fiscal impact per fiscal year for FY11 - FY16.  List the cost of each new or revised manual, publication, report, etc. by fiscal year.  Estimate the number of additional work hours needed to accomodate the new or revised product. |
|---|---|

| Yes | |
|---|---|

Printed: 9:44 AM 3/28/2012

Defendant's Exhibit #
032

TX_00005212
DE-000161

USA_00007955

SB 14 - FIL.xlsx

*Training
    50 hours of preparation time for one DLD employee to create the training module
    1534 employees to be trained in a one-hour session - training can be done at the workplace, so no need for travel or out of office time
    Cost to produce training materials- $3481.70

*Manual revisions to update issuance procedures - 3 hours
*Website update - 2 hours
These updates will be done utilizing existing employees.
Engrossed version 02/07/11 - no changes to DLD impact

Printed: 9:44 AM 3/28/2012

TX_00005213

Defendant's Exhibit #
032

DE-000162

USA_00007956

SB 14 - FIL.xlsx

| 8. | What is the fiscal impact of this bill to the Department program or division?  Please be specific about the number of FTE's needed, administrative costs, program costs, etc.   List the state classified titles, the start dates for those positions, and the number of such classified titles for each fiscal year from FY11 - FY16.  Show how many positions will be stationed at headquarters versus field offices.  For a full list of all classified titles go to: http://sao.hr.state.tx.us/Compensation/index.html.  Specify how much is needed for travel and training for each position by fiscal year. |
| --- | --- |
| | Yes |

There will be an unknown revenue loss to the mobility fund. (see #6)
• Costs to produce the ID cards will not be covered resulting in a negative fiscal impact to the Department. ID card cost $1.67 - card production, mailing supplies, presort and postage. This does not include costs related to the mailing machine (lease, maintenance)

** DLS Programming information from DL Tech Solutions
Required Programming: Programming changes would be required as an additional Correction – No Fee reason (Register to vote) would need to be added to the list of CNF reasons listed in Alt Flow 7 of UCS Collect Fee.
Use Cases Affected:  UCS Collect Fee
Engrossed version 02/07/11 - no changes to DLD

Printed: 9:44 AM 3/28/2012

Defendant's Exhibit #
032

TX_00005214
DE-000163

USA_00007957

SB 14 - FIL.xlsx

| 9. | What is the justification for the cost estimate?  Explain the methodology for your cost estimate. |
|---|---|

Historical information for updates. DLS programming costs are determined by IT.

| 10. | What is the effective date of this bill? |
|---|---|

January 1, 2012 except Sections 1, 3, 4, 5, 9, 20, and 22 take effect September 1, 2011 Engrossed version 02/07/11 - sections effective 09/01/11 changed to 3, 5, 6, 7, 11, 22, 24

| 11. | Is there anything else that Executive Management needs to know about this bill?  (For example, was it previously filed?  Was it previously passed and subsequently vetoed?  Does the bill codify a current rule or practice of the Department or Commission?) |
|---|---|

Printed: 9:44 AM 3/28/2012

**Defendant's Exhibit #**
032

DE-000164

USA_00007958

SB 14 - FIL.xlsx

•81st there were five bills filed with the same or substantially similar language regarding the ID. SB362- placed on major state calendar-did not pass due to procedural delays in the House.
•80th there were three bills with similar ID language, HB218 passed the House but was not heard on the Senate floor because there were not enough votes to suspend the rule.
•79th Two bills filed that contained language regarding IDs included in filed versions but the language was removed during committee process. HB2309 passed but the final version did not address IDs.
• 82nd-7 substantially similar bills are filed to this point– HB16, HB112, HB248, HB539, HB624, and SB178 contain identical language regarding ID's. HB186 adds the inability to pay and no other acceptable form of ID under 63.0101 Election Code but is otherwise the same. The basics of HB401 are substantially different than other voter ID bills filed, but contains the same provisions regarding DPS issuing ID cards to qualified persons.
Due to DLS programming requirements, it would be preferred that the DPS portion of the bill not be effective until 01/01/12.
According to this section, DPS will provide an ID card to anyone who states they want the ID for voting

| Reviewed by AD: | Reviewed by OGR: |
|---|---|
| Please select AD | |

| Date: | | Date: | |
|---|---|---|---|

Printed: 9:44 AM 3/28/2012

Defendant's Exhibit # 032

TX_00005216
DE-000165

USA_00007959

SB 14 - FIL.xlsx

9. What is the justification for the cost estimate? Explain the methodology for your cost estimate.

Passage ot SB 14 could result in additional contacts from DL Field Offices and customers. Based on the analysis provided by DLD, it is projected that 13% of ID issues from FY2010 would apply for a free identification card. Historically, 13% of ID card holders are registered to vote. Therefore, 13% of of ID issues in FY 2010 = 61,525. 61,525/252 working days per year = 244 calls per day. On average, CC Agents can handle 80 calls per day. 244 calls per day/80 calls per agent = 3 additional FTE's.

10. What is the effective date of this bill?

11. Is there anything else that Executive Management needs to know about this bill? (For example, was it previously filed? Was it previously passed and subsequently veteod? Does the bill codify a current rule or practice of the Department or Commission?)

| INFORMATION TECHNOLOGY | | |
|---|---|---|
| Name: | Charlie Fulgham |
| Phone: | 424-5155 |
| Email: | charlie.fulgham |

12. Does this require a new or upgraded computer system? If Yes, please list the number of servers, routers, amount of upgrades etc. by fiscal year from FY11 - FY16. Do not include personal computers or printers. List each item separately and include out-year maintenance costs from FY11 - FY16. Estimate the number of contractor or employee hours required to maintain these items.

NA

Printed: 9:38 AM 3/28/2012

Defendant's Exhibit #
032

TX_00005217
DE-000166

USA_00007960

SB 14 - FIL.xlsx

SB 14 NEW VERSION ENGROSSED has no ADDITIONAL impact to IT.  Filed Version IT estimate remains unchanged.  CF

| Reviewed by AD: | | Reviewed by OGR: | |
| Mark Doggett | | | |

| Date: | | | Date: | |

Printed: 9:38 AM 3/28/2012

**Defendant's Exhibit #**
032

DE-000167

TX_00005218

USA_00007961



Privileged

**Defendant's Exhibit #**
032

TX_00005219

DE-000168

USA_00007962



Privileged

TX_00005220

**Defendant's Exhibit #**
032

DE-000169

USA_00007963



Privileged

TX_00005221

**Defendant's Exhibit #**
032

DE-000170

USA_00007964

PL564
9/2/2014
2:13-cv-00193

HB16, HB112, HB248, SB178 Voter ID bill notes          12/06/10

In FY 2010 there were 4,948,595 ID card holders in the driver license file.
US Census Bureau Quick Facts page estimates the Texas population at 24,782,302 in 2009
In FY2010  473,275 original and renewal ID card were issued.

#2
Yes-world class service. Adding a new segment of the population (those who do not currently have ID
cards) to the DL customer base will increase lines and wait times for all customers.

#3
Margaret Spinks, DLD, Processing & Routing Services Manager, x7243. Received background info from
previous sessions for reference and cost justification formulas.
Ron Coleman, DLD, Program Specialist, x7652, general discussions concerning analysis preparation.

#6
Section 14 amends TRC 521.422 to eliminate the issuance fee for an ID for a person who states they
want an ID only to satisfy Section 63.001(b)(1), Election Code and who is a registered voter and presents
a valid voter registration or registers to vote at the time of application. Current ID cost-$15 for a six year
ID for persons under 60 years of age and $5 for an indefinite expiration ID for persons over 60 years of
age.
There is not a good way to measure how many people would take advantage of a no fee ID under the
parameters of this bill. It does not restrict the no-fee issuance so the number of people requesting it
could be from 61,525 (13% of FY10 issuances) to 473,275 (total number of FY10 issuances). Cost to
mobility fund could range from $922,875 to $7,099,125. (more)
Historically approximately 13% of the ID card holders have a Y indicator for voter registration. There
were 4,948,595 ID card holders on file in FY10. 473,275 IDs were issued (original and renewal) in FY10.
13% of that is 61,525.

#7
*1500 DL employees to be trained on new issuance procedures
*Add new requirements to training modules - 5 hours
*Manual revisions to update issuance procedures - 3 hours
*Website update - 2 hours

#8
There will be an unknown revenue loss to the mobility fund. (see #6)
• Costs to produce the ID cards will not be covered resulting in a negative fiscal impact to the
Department.

*DLS programming will be required to create an option for a no fee ID.  (81st session it was estimated at
225 programming hours at $200/hour for the first FY only)

#9
Historical estimates for hours required to update manuals, training and website.

*473,275 ID cards issued in FY10. Historically, 13% of ID card holders are registered to vote. Potential
impact - 13% of FY10 issuances (61,525) at $15/issuance up to 100% (473,275) at $15/issuance.

TX_00005277

**Defendant's Exhibit #**
035

DE-000195

USA_00007989

#11
81st there were five bills filed with the same or substantially similar language regarding the ID. SB362-
placed on major state calendar-did not pass due to procedural delays in the House.  80th there were
three bills with similar ID language, HB218 passed the House but was not heard on the Senate floor
because there were not enough votes to suspend the rule.
• 79th Two bills filed that contained language regarding IDs included in filed versions but the language
was removed during committee process. HB2309 passed but the final version did not address IDs.
• 82nd-5 substantially similar bills are filed – HB16, HB248, and SB178 contain identical language
regarding ID's. HB186 adds the inability to pay and no other acceptable form of ID under 63.0101
Election Code but is otherwise the same.

TX_00005278

**Defendant's Exhibit #**
035

DE-000196

USA_00007990

PL565
9/2/2014
2:13-cv-00193

## Voter ID Cost Estimates

| | |
|---|---|
| # of ID's issued in 2010 | 473,275 |
| % of ID holders under 18 yoa/Temp Vis | - 6% or 28,396 |
| # of ID's issued less ID holders under 18 yoa/Temp Vis | 444,879 |
| 13% of ID holders who expressed interest in registering to vote | 57,834 |
| % of ID holders over 65 yoa | 19% or 89,922 |

**Maximum revenue loss to Mobility Fund if all eligible ID holders elected to get a free ID\***

| | |
|---|---|
| 444,879 x 81% = 360,352 x $15 = | $5,405,280 |
| (over 65 yoa) 19% = 10,989 x $5 = | + $54,945 |
| **Total** | **$5,460,225** |

**Minimum loss to Mobility Fund if only the current 13% of ID holders who registered to vote at time of application elected to get a free ID**

| | |
|---|---|
| 57,834 x 81% = 46,846 x $15 = | $702,683 |
| (over 65 yoa) 57,834 x 19% = 10,989 x $5 = | + $54,945 |
| **Total** | **$757,628** |

**Impact to DPS' budget**

| | |
|---|---|
| $1.67 = DPS' cost to produce and mail ID card | |
| MAX — 444,879 x $1.67 = | $742,948 |
| MIN — 57,843 x $1.67 = | $96,583 |

**\*** This maximum is mitigated if free IDs are issued to customers who don't already have identification suitable to meet the 63.0101 (Election Code) requirements

Defendant's Exhibit #
036

TX_00005279

DE-000197

USA_00007991

# Eligibility Requirements for Issuance of
# Texas Election Certificate

On January 3, 2012, the Department of Public Safety will be prepared to issue Texas election certificates to persons who are obtaining one for the purpose of voting and **do not** have another form of photo identification acceptable for election purposes(see eligibility below).

## Who is NOT eligible to apply for a Texas Election Certificate?
- Persons who have been issued any of the following documents which may be used for voter identification purposes:
  - Texas driver license (includes occupational license with photograph) – unexpired or expired less than 60 days;
  - Texas identification card – unexpired or expired less than 60 days;
  - Texas concealed handgun license – unexpired or expired less than 60 days;
  - United States military identification card containing the person's photograph;
  - United States passport – unexpired or expired less than 60 days;
  - United States citizenship certificate containing the person's photograph; or
- Persons who are **not** United States citizens (i.e. permanent residents, asylees, refugees or temporary visitors).

## Who IS eligible to apply for a Texas Election Certificate?
The department shall issue an election certificate upon request to persons who **do not** have one of the forms of acceptable photo identification listed above, and are:
- a registered voter in Texas and present a valid voter registration card, or are eligible to vote and submit a voter registration application to the department;
- a United States citizen;
- a resident of Texas; and
- age 18 or above.  (To be eligible to apply for voter registration, a person must, on the date the application is submitted to the registrar, be at least 17 years and 10 months of age.)

## How does a person apply for a Texas Election Certificate?
- visit a Texas driver license office;
- bring documents to verify U.S. citizenship;
- bring documents that meet the  department's identification policy;  and
- request and complete an application for the election certificate.

Section 521A of the Texas Transportation Code states that:
- an election certificate may not be used or accepted as a personal identification certificate;
- the department may not collect a fee for an election certificate or to reissue an election certificate issued under this section;
- the department may require each applicant for an original or renewal election certificate to furnish to the department proof of identification and U.S. citizenship; and
- the department may cancel and require surrender of an election certificate after determining that the holder was not entitled to, or gave incomplete information in the application for, the election certificate.

Rev. 12/12/2011

1

Defendant's Exhibit #
037

DE-000198

TX_00005280

USA_00007992

**Texas Election Certificate (Features)**
Election certificates will be issued to expire in 6 years.  The certificate will not expire for persons age 70 and above. Election certificates are produced in a vertical format and do **not** include:

- card holder's signature *(The card holder will sign the temporary election certificate.)*
- address of the card holder. *(The temporary receipt will include card holder's mailing address and will be accepted for election purposes.)*

**Note:** The election certificate is **NOT** acceptable to establish proof of identity as a primary, secondary or supporting document when applying for a Texas driver license or identification card.



Texas Election Certificate (front)



Texas Election Certificate (back)

Texas Election Certificate (Temporary)

2

Rev. 12/12/2011

TX_00005281

**Defendant's Exhibit #**
037

DE-000199

USA_00007993

**Procedures for Election Identification Certificate Issuance**

The procedures for issuing an election certificate are very similar to those used to issue a driver license or identification card.  Similarities include:
- verifying the person's identify and lawful presence (U.S. citizenship)documents;
- entering the person's personal data:
  - name,
  - date of birth,
  - address (physical and mailing)
  - physical description
  - U.S. citizenship
  - voter registration
- collecting images, photo, thumbprints and signature; and
- scanning documents

There are procedures that only apply to the issuance of an election certification.  When issuing an election certificate, it is also important to keep in mind the following:
- there is never a fee  charged to issue an election certificate;
- there are no duplicate or modify transactions when issuing an election certificate.  When an election certificate is lost or expires, re-issue the card and the expiration date will be extended to six years from the date the card was re-issued;
- there is an option to "edit" personal data on the election certificate;
- the option to "remake" the election certificate without changes to the record is available;
- There are two different search engines in DLS; the current one for driver license and identification cards and a new one for election certificates.  No election certificate results will be found when searching in the driver license and identification card *Search Applicant* screen and no driver license or identification card records will be found when using the *Search Election* Certificate screen.
- documents scanned for an election certificate will not be available for review by customer operations employees in either the election certificate application or DLS.  For this reason it is important to inform the person that if they choose to apply for a driver license or identification card in the future, they will be required to provide the same documents before a driver license or identification card will be issued.
- a social security card is not required for an election certificate and social security online verification (SSOLV) will not be performed.
- PDPS, CDLIS, and TCIC/NCIC external checks will not be performed for an election certificate

**Prior to Issuance of an Election Certificate.**
1. Conduct a search in DLS to determine if the applicant has an unexpired Texas driver license or identification card on record.  When searching for a record in DLS:
   - enter the person's name and date of birth and/or social security number and select the "*Search Applicant*" button at the bottom of the screen.

   **Do not** issue an election certificate if a matching record is found under the following circumstances:
   - the dl/id is unexpired or expired less than 60 days.  The person has a card on file which can be re-issued and used for election purposes.
   - DLS indicates the person is ineligible (i.e. suspended, revoked, cancelled or denied) if the person maintains the card in their possession.

2. Review the documents presented by the applicant to verify identity and U.S. citizenship.

3. Process the election certificate application and issue a temporary receipt.

3

Rev. 12/12/2011

TX_00005282

Defendant's Exhibit #
037

DE-000200

USA_00007994

**Questions/Answers regarding Election Certificate**

1. **What is the reason for issuing an election certificate?**
   *The law was designed as a measure to prevent voter fraud without denying those that cannot afford photo ID the right to vote.*

2. **Will a person whose driver license or identification card that has been expired more than 60 days, be eligible to apply for the election certificate?**
   *Yes – the rule states a person is NOT eligible if the dl/id has not expired or expired less than 60 days. Therefore, an election certificate may be issued to a person if their dl/id card is expired more than 60 days. Remember, the person must request the photo ID for voting purposes.*

3. **If a person has lost their unexpired driver license or identification card are they eligible to apply for an election certificate?**
   *No – again the rule states a person is NOT eligible if the dl/id is unexpired or is expired less than 60 days. Apologize to the customer for the situation and invite them to apply for a renewal of their driver license or identification card which can be used as photo identification for election purposes.*

4. **What if the person tells you they do not have money to pay for an identification or driver license?  Can we inform them of the election certificate?**
   *No – the person should let you know they need a photo ID to vote and do not have money to pay to replace their driver license or identification card.  Take care to avoid offending the person and be sensitive to their situation.  If you are unsure whether to issue the election card seek assistance from your supervisor.*

5. **Will the occupational license with a photo included on the card be considered an acceptable form of photo id for voting purposes?**
   *Yes – it is for all purposes a driver license.*

6. **Will we issue election certificates to homebound applicants?**
   *No.  If homebound applicants can prove disability to the Secretary of State they are exempt from the ID requirement.  Also, if a person is homebound they will most likely be voting by mail and an ID is not required for mail-in ballots.*

7. **Can the election certificate be used as an acceptable form of identification to apply for a Texas driver license or identification card?**
   *No. The election certificate is not acceptable as proof of identification when applying for a TX dl or id because the statute clearly states that the card is for election purposes only and cannot be used as identification so the individual would not be eligible for an election certificate.*

8. **Does a person have to surrender an election certificate if they wish to apply for a TX driver license or identification card?**
   *No – a person will not be required to surrender an election certificate before being issued a TX driver license or identification card.*

9. **Is an expired U.S. Passport acceptable to verify proof of U.S. citizenship for persons applying for an election certificate?**
   *Yes – the U.S. Passport can be used to verify U.S. citizenship for those applying for an EC.  However, if the U.S. Passport has not been expired more than 60 days, it may be accepted for election purposes.*

4

Rev. 12/12/2011

Defendant's Exhibit # 037

DE-000201

TX_00005283

USA_00007995

**10. Can a person apply for a replacement of an election certificate?**
*Yes- a person can apply for a replacement of an EC by presenting one of documents from the list of acceptable forms of identification.  No fee will be charged for the transaction. The new certificate will be issued for a six-year term, so a replacement will be treated more like a renewal.*

**11. When an election certificate holder moves or relocates, are they required to change the address on their card?**
*No. Because an address is not included on an election certificate, there is no need to apply for a change of address.  The person can update their voter registration address with the Secretary of State.*

**12. When a person is issued an election certificate does this mean they are automatically registered to vote?**
*No – the Secretary of State is responsible for voter registration.  The information collected on the election card will be sent electronically to the Secretary of State to approve the card holder's voter registration application.*

**13. Will renewal notices for an election certificate will sent to card holders?**
*No – it will be the card holder's responsibility to renew the election certificate.*


**Additional information regarding issuance of a Texas Election Certificate:**

- The U.S. Department of Justice (DOJ) is currently reviewing the new statute to determine whether the state of Texas has the right to require voters to present an acceptable photo identification document at the polls to be able to vote in an election.  Until the DOJ renders their decision, voters will not be required to present photo-identification to vote.
  However, DPS will move forward and begin issuing election certificates on January 3, 2012 to be in compliance with the law in an effort to avoid being blamed for anyone's inability to vote if the DOJ does approve implementation of the law.

- DPS is expected to complete testing and be ready to launch the election certificate by December 20, 2012.  While the election certificate system will be in place, it is important to remember **NOT** to access the application or issue any election certificates prior to January 3, 2012.

- Keep in mind there is the possibility that we will issue election certificates and later the DOJ may return with a decision that Texas cannot require photo ID.  However, keep in mind the cards can only be for election purposes only and not for ID to apply for government services, for financial reasons, to enter a federal building, or to board a plane.

- Plans are to add an additional category in Nemo-Q for election certificate applicants to track the number and processing time for election certificate applicants.  The new category is expected to be ready by January 3, 2012.

5

Rev. 12/12/2011

TX_00005284

**Defendant's Exhibit #**
037

DE-000202

USA_00007996

**Suggested responses to customer inquiries concerning apply for the Texas Election Certificate**

If a customer comes in and requests the election certificate prior to January 3, 2012, provide the following information:

*At this time, the Department of Public Safety is not issuing the election certificate. However, we are prepared to comply with the law passed during the last legislative session and begin issuing election certificates to U.S. citizens who are eligible to vote in Texas and do not have another form of acceptable photo identification beginning in January 2012. You are welcome to come back any time after January 2rd and apply for the election certificate. (At this point you may also provide information on the requirements and determine their eligibility to prepare them for their next visit.)*

It may be helpful to interview persons requesting an identification card to clarify whether they wish to apply for a Texas ID card or the Texas Election Certificate.  Options to begin the conversation:

| | |
|---|---|
| Employee: | *How may I help you?* |
| Customer: | "I'm here for an ID?" |
| Employee: | *An identification card is $16 and requires proof of identity and lawful presence.* |
| Customer: | "No, I thought the ID was free." |
| Employee: | *There is no charge for the Texas Election Certificate which is only used for voting purposes.  Are you seeking photo identification for voting purposes?* |

**Information to share with individuals who have been issued a Texas Election Certificate.**

Because the election certificate and DLS are on two different search engines, employees will be unable to view documents after they are scanned into the election certificate application.  For this reason customers who have been issued an election certificate will be required to present their proof of identification and U.S. citizenship documents again when applying for a driver license or identification card.  To convey this information to a person who has been issued an election certificate, consider the following dialogue:

Employee:     *Your election certificate will expire in 6 years and can only be used for photo identification to vote during an election and not for any other purpose.  Later, if you decide you would like to obtain a Texas driver license or identification card the election certificate, you will be required to present your proof of identification and U.S. citizenship documents again at the time you apply.*

6

Rev. 12/12/2011

Defendant's Exhibit #
037

TX_00005285

DE-000203

USA_00007997



**Election Certificate Processing Agreement**

I have attended training to inform me of qualifications, for issuance of an election certificate in compliance with Section 521A.001 of the Texas Transportation Code adopted during the 82nd Legislative session.
I have also been provided with a job aid that includes information regarding the process and procedures for the issuance of an election certificate.
As a result of the training, I am prepared to:

- disseminate accurate and consistent information regarding the requirements for an election certificate to my customers; and/or
- issue election certificates to customers in compliance with state legislative requirements.

For Customer Operations Employees:

I understand and agree that I **shall not** begin to process or issue an election certificate to anyone prior to January 3, 2012.

_____          _____          _____
EMPLOYEE SIGNATURE                       REGION/SERVICE/SECTION                       SUPERVISOR

_____                                                            _____
PRINTED NAME                                                                              DATE OF TRAINING

7

Rev. 12/12/2011

**Defendant's Exhibit #**
037

TX_00005286
DE-000204

USA_00007998

Case 2:13-cv-00193   Document 670-5   Filed on 11/11/14 in TXSD   Page 66 of 108
Republican Party of Texas

PL567
9/2/2014
2:13-cv-00193
Page 1 of 4

Shera Eichler

**From:** Republican Party of Texas [info@texasgop.org]
**Sent:** Wednesday, April 29, 2009 6:55 PM
**To:** Dennis Bonnen
**Subject:** 71 House Republicans Stand Behind a Strong Voter ID Bill



**FOR IMMEDIATE RELEASE:**                    **CONTACT:**

Wednesday, April 29,2009                    Eric Opiela (512) 477-9821

## REVISED:  Texas GOP Applauds 71 House Republican Caucus Members' Statement of Principles on Voter ID

AUSTIN- (Note: 21 additional members were added since yesterday's release) The Republican Party of Texas applauds the following 71 Texas House Republican Caucus members for their statement of principles concerning Voter ID legislation pending before the House:

### Statement of Principles on Voter ID

"We are closely monitoring the Voter ID bill and are fervently committed to advancing a Voter ID bill.

Our principles concerning what the bill must contain are clear, this bill must:

1. Ensure a valid photo identification is needed to vote
2. Take effect at the next possible uniform election date
3. Be free of any registration requirements such as same day voter registration that dilutes the intent of the bill, which is ensuring fair and accurate elections
4. Increase criminal penalties for voter fraud and registration

We are all strongly encouraging Chairman Todd Smith and the other Representatives on the Elections Committee to present a bill which protects the integrity of the electoral process, is fully implemented at the next possible uniform election date and ensures a reasonable period of advanced registration to allow voter registrars the time to protect the integrity of the registration process as well."

Signators:

Charles Anderson

Jimmie Don Aycock

Leo Berman

Dwayne Bohac

4/30/2009

Republican Party of Texas

Dan Branch

Betty Brown

Fred Brown

Angie Chen Button

William A. Callegari

Warren Chisum

Wayne Christian

Byron Cook

Frank Corte

Joe Crabb

Tom Craddick

Brandon Creighton

Myra Crownover

Drew Darby

John Davis

Joe L. Driver

Rob Eissler

Gary Elkins

Allen Fletcher

Dan Flynn

Dan Gattis

Charlie L. Geren

Mike "Tuffy" Hamilton

Kelly G. Hancock

Patricia Harless

Rick Hardcastle

Linda Harper-Brown

4/30/2009

TX_00006149

**Defendant's Exhibit #**
040

DE-000213

USA_00008007

Republican Party of Texas

Will Hartnett

Harvey Hilderbran

Charlie Howard

Bryan Hughes

Todd Hunter

Carl H. Isett

Jim L. Jackson

Jim Keffer

Phil King

Susan King

Tim Kleinschmidt

Lois Kolkhorst

Edmund Kuempel

Jodie Laubenberg

Ken Legler

Tryon D. Lewis

Jerry Madden

Brian McCall

Doug Miller

Sid Miller

Geanie W. Morrison

Rob D. Orr

John Otto

Tan Parker

Dianne Patrick

Ken Paxton

Larry Phillips

4/30/2009

TX_00006150

**Defendant's Exhibit #**
040

DE-000214

USA_00008008

Republican Party of Texas                                                Page 4 of 4

Jim Pitts

Debbie Riddle

Ralph Sheffield

Mark M. Shelton

Wayne Smith

John Smithee

Burt R. Solomons

David A. Swinford

Larry Taylor

Vicki Truitt

Randy K. Weber

Beverly Woolley

John Zerwas

*Due to his position as Speaker, Joe Straus was not asked to sign on to this statement, but has previously stated his commitment to bringing a Voter ID bill to a vote on the House floor.  Representative Dennis Bonnen, as a member of the House Elections Committee, has issued a principled statement explaning his position below:

"On Tuesday, many Texas House Republican Caucus members issued a statement calling for four principles to be included in the Voter ID bill.  While I, too, stand strongly behind these key elements, I chose not to add my name to the statement.

As a member of the Elections Committee, my focus remains to advance this bill to the House floor.  I will not sign a commitment that threatens to kill the bill by preventing it from being voted out of committee and which undermines the many long hours we have worked to send it to the floor so that my colleagues will then have the opportunity to cast votes for these important principles.

My fervent commitment to advancing a strong and effective Voter ID bill has not waivered.  One can simply look at the Voter ID bill that I filed, HB 3556, to see where I stand on the issues. "

Paid for by the Republican Party of Texas
900 Congress Avenue, Suite 300, Austin, Texas 78701.
Not authorized by any candidate or candidate committee.

FORWARD TO A FRIEND

Please click here to unsubscribe or change your email address

4/30/2009

TX_00006151

DE-000215

Defendant's Exhibit #
040

USA_00008009

<< TX_00006885 >>

The State of Texas
Elections Division Phone: 512-463-5650
P.O. Box 12060 Fax: 512475-2811
Austin, Texas 78711-2060 Dial 7-1-1 For Relay Services
www.sos.state.tx.us (800) 252-VOTE (8683)
Hope Andrade
Secretary of State
October 4, 2011
Mr. T. Christian Herren, Jr.
Chief, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Dear Mr. Herren:
This is in response to your September 23, 2011, request for additional information concerning
the submission of Senate Bill 14 (Chapter 123) passed in the 82nd Regular Texas Legislative Session. You have asked for five categories of additional information, and we will address each request below.
1. A detailed description of the voter education program that the State will implement pursuant to Section 5 of Chapter 123.
The Office of the Secretary of State is issuing a Request for Proposals ("RFP") for the development and implementation of a comprehensive statewide voter education program. As specified in the RFP, the voter education program will focus on four critical areas: (1) how to register to vote; (2) how to comply with photo identification requirements; (3) polling place
processes and procedures; and (4) how to properly cast a ballot. Attached is the `scope and tactics" section of the RFP detailing the voter education program to be implemented, and the
intended timeline for development and implementation. The RFP requires current research be the foundation of the voter education program, ensuring the use of "best practices" and most
effective communications strategies and messages to achieve maximum success in reaching voters statewide and targeted sub-groups, including but not limited to minority voters, elderly
voters, military and overseas voters, and young voters.
Additionally, our office is updating our standard online voter pamphlets such as "Texas Voting,"
and "Services Available to Voters With Special Needs," which appear along with other voter information provided at our "Votexas.org" website. As you are likely aware, all voter materials
on our website appear in English and Spanish.
2. A detailed description of the efforts that the State will undertake, including the issuance
of any rules, regulations, or written guidance, to inform and train state and county election officials regarding photo identification requirements, including, but not limited to, the implementation of the election identification card system; the acceptance and

**Defendant's Exhibit #**
043                     DE-000285

USA_00008079

<< TX_00006886 >>

Mr. T. Christian Herren, Jr.
Page 2
handling of a voter's photo identification pursuant to Section 6 of Chapter 123; the
verification of identity pursuant to Section 9 of the Act; and the manner in which the
State will resolve discrepancies between information on presented identification and
information contained on the list of registered voters. Please include a description of all
materials that will be used to implement the program.
The Office of the Secretary of State has proposed two administrative rules as part of our
effort to
inform and train state and county election officials concerning voter identification
requirements.
On September 16, 2011, this office proposed rule 1 TAC 81.71, which concerns standards for
determining when a voter's name on the photo identification substantially matches the
voter's
name on the list of registered voters; this proposed rule was forwarded to your office per
your
staff's request on September 8, 2011. The earliest possible date of adoption is October 16,
2011,
and once adopted, the rule will be officially submitted to your office for preclearance.
The rule
is posted on the Secretary of State website, and may be found at this
http://www.sos.state.tx.us/texreg/archive/September162011 /PROPOSED/ 1.ADMINISTRATION
.html#14. On September 23, 2011, the Office of the Secretary of State proposed rules 1
T.A.C.
§§ 81.172, 81.173 and 81.174 concerning modifications to the administrative rules governing
provisional voting, in part, in order to incorporate the six-day cure period provided for
in Senate
Bill 14. Three separate rules are required due to the various voting systems in use in the
state,
but the substance of the cure process is the same in each rule. The earliest day of
adoption is
October 23, 2011, and once adopted, the rules will be submitted to your office for
preclearance.
The rules are posted on the Secretary of State website and may be found at this
httLi://www.sos.state.tx.us/texre,v,/sos/index.hti-nl. As explained more thoroughly in the
response to Question 3 below, the DPS will be proposing an administrative rule concerning
the process to obtain an election identification certificate.
Once these administrative rules are adopted and precleared, the educational materials that
the Office of the Secretary of State prepares for local election officials will be updated
accordingly.
Specifically, the Handbook for Qualifying Voters, the 30 minute Qualifying the Voter
video/DVD, and the Online Poll Worker training will be updated. As required in Section 7 of
Senate Bill 14, all election judges and clerks will be required to complete at least one of
the state prescribed training tools, in addition to any training that may be required by
the local election authority. Enclosed are samples of the existing handbook and video, and
if you are interested in reviewing the online training program, please let us know and we
can provide you a log-in and password. Photo identification requirements will be fully
integrated into the existing training regime in a similar fashion as the current voter
identification requirements. In addition, the DPS
website will have information about the election identification certificate and how people
can obtain the card.
3. On September 15, 2011, the State provided a draft of proposed administrative rules
developed by the Texas Department of Public (DPS) regarding the election identification
certificate program:
a. Please advise of the State's plans and timing for publication of such rules, receipt
of public comment and final rules enactment;
As stated above, the Department has initiated the administrative rulemaking process
regarding
the election identification certificate. The following is a projected timeline for the
process:

**Defendant's Exhibit #**
043

DE-000286

USA_00008080

<< TX_00006887 >>

Mr. T. Christian Herren, Jr.
Page 3
September 27, 2011 - Proposed rules approved by Public Safety Commission for
publication in the Texas Register;
October 3, 2011 - Rules will be submitted to the Texas Register by the Monday, noon
deadline for the October 14`h issue;
October 14, 2011 - Proposed rules published in the October 14, 2011 issue of the Texas
Register;
November 14, 2011 - 30-day Comment period expires;
November 17, 2011 - The Public Safety Commission has not yet determined a date for
their November meeting. However, meetings are often scheduled for the third Thursday
of the month. If the November Public Safety Commission meeting is set for the third
Thursday, that will be November 17, 2011. This would be the earliest point in time the
rules could be adopted and approved for publication.
November 18, 2011 (or the day following the November Public Safety Commission
meeting) the rules will be submitted to the Texas Register for publication
December 8, 2011 - Rules become effective (twenty (20) days following submission for
publication)
If the Department receives a high volume of public comments or a request for a public
hearing,
this could possibly delay the presentation of the rules for adoption at the November PSC
meeting. In that event, the rules would be placed on the agenda for the December PSC
meeting.
No date has been set for the December 2011 meeting. After the rules are adopted and
approved
for publication by the PSC, they are submitted to the Texas Register. The rules become
effective
twenty (20) days following submission for publication. If the rules are adopted in the
December
meeting, they will not be effective by January 1, 2012. However, this will not impede the
initiation of the election identification certificate issuance program on January 1, 2012.
b. Please provide a detailed description of the locations and dates when an individual
may obtain a free election identification certificate, including, but not limited to: a
description of all means of informing the public of the distribution process if any
transportation or other assistance will be provided to individuals trying to obtain
such a certificate, and whether such efforts at providing information and/or
assistance will be focused on any groups of persons or particular areas of the
state; and a description of all equipment and materials necessary to implement the
program, as well as any renewal procedures; if applicable.
Once the election identification certificate issuance program is initiated, an election
identification
certificate may be obtained during regular business hours at any DPS driver license office
location in the state. The DPS provided a detailed chart to the Department of Justice on
September 15, 2011, and is enclosed is a copy of the chart. It contains a list of all
driver license
offices, the counties in which they are located, the hours each office is open and the
number of
employees in each office.
The DPS will provide notice of the election identification certificate program and related
information on the DPS website. Additionally, the Office of the Secretary of State will
incorporate education regarding the election identification certificate into the voter
education
program and into the election official training materials.
The DPS does not currently plan to provide transportation for individuals seeking to obtain
a
driver license, personal identification card, or election identification certificate.

**Defendant's Exhibit #**
043

DE-000287

USA_00008081

<< TX_00006888 >>

Mr. T. Christian Herren, Jr.
Page 4
The equipment and materials necessary to issue any card, driver licenses, personal identification
card, or election identification card is extensive. DPS currently has all the necessary components
in place to produce and issue the cards. This multi-faceted process includes the equipment,
materials, and facilities to submit and process the application, transmit information to DPS
headquarters and vendors for card production, the actual production of the card, quality
assurance and control, and mailing to the cardholder.
The card will have a six-year term. Cardholders will have the ability to renew online one time
before being required to return to the driver license office for an onsite renewal. This is the same
as is allowed for a driver license or personal identification card. For example, a person who is
issued an election identification card in 2012 will be able to renew that card online in 2018, but
will need to appear at the DPS office for the 2024 renewal. Persons who are 70 years of age or
older will be issued a card that does not expire.
4. Any additional rules, regulations, or written guidance that the Secretary of State or DPS
plans to promulgate pursuant to the Act.
Neither the Office of the Secretary of State nor DPS currently plan to promulgate any additional
rules or regulations concerning the Act. As described in the response to Question 2 above,
the Office of the Secretary of State will be revising written training materials to
incorporate the Act and the administrative rules which were proposed on September 16 and
September 23, 2011.
The Office of the Secretary of State will also include the DPS requirements for the election
identification certificate program in all its training materials. In addition, as chief election
officer, the Office of the Secretary of State may need to issue additional written guidance to local
election officials, but we do not anticipate that any future guidance would arise to the level of an
administrative rule or regulation.
5. With regard to the voter information provided on September 7, 2011, which indicated that 605,576
registered voters do not appear to have a Texas driver's license or other current form of photo
identification issued by the DPS:
a. The number of registered voters in Texas, by race and by Spanish surname within county of
residence, who currently possess a Texas driver's license or other form of photo identification
issued by DPS that is current or has expired within sixty days. Please include a description of the
manner in which you calculated these numbers;
Enclosed is a spreadsheet listing all 254 Texas counties,, which shows the number of registered
voters in each county. Please note that the statewide list of registered voters is a constantly
changing database as it is continually updated by the counties. For the purposes of this question,
all the voter data and the DPS data is current as of September 16, 2011. The spreadsheet breaks
each county's voter registration data into three subsets. First, the spreadsheet shows the number
of voters in each county who did not provide a Texas driver's license or personal identification card
when they registered to vote. Providing a driver's license number or personal identification card
number when registering to vote was optional until the federal Help America Vote Act was enacted
in 2006. Second, the spreadsheet shows the number of voters in each county who did not provide a
driver's license or personal identification card when they registered to vote, but whose voter
record matches a driver/personal identification card record in the DPS database which means that
the voter has been issued a driver's license or personal identification card. Third, the spreadsheet
shows the number of voters in each county, who did not provide a driver's

**Defendant's Exhibit #**
043

DE-000288

USA_00008082

&lt;&lt; TX_00006889 &gt;&gt;

Mr. T. Christian Herren, Jr.
Page 5
license or personal identification card number when they registered to vote, that could not be
matched with driver's license or personal identification card in the DPS database of licensed
drivers and personal identification card holders. The matching criteria that we used to identify
voters between the voter file and the DPS file was last name, first name, and date of birth.
The process to register to vote in Texas does not require a voter applicant to state his or her race.
Accordingly, we do not collect voter registration data by race. However, we can run the list of
Hispanic surnames as developed by the US Census Bureau against the list of registered voters to
determine how many voters have Hispanic surnames. Enclosed is the Hispanic Surname List
developed by the US Census that we have input to our statewide voter database for the purpose
of performing the Hispanic surname query. For each of the three subsets of data described
above, we have also broken out the data by Hispanic surnames.
b. For the 605,576 registered voters who the State has advised do not have a Texas
driver's license or personal identification card, please provide the number of such
person by Spanish surname, as well as an estimated number by race, within
county of residence; and
Please see the information provided on the attached spreadsheet.
c. Describe any and all efforts, other than the requirements outlined in Section 5 of
Chapter 123, to provide notice to these individuals of the requirements of S.B. 14
and the availability of a free DPS-issued identification.
Upon preclearance of Senate Bill 14, the Office of the Secretary of State intends to notify by
mail each registered voter who may possess a Texas driver's license or personal identification
card, but because of the matching criteria, may not have triggered a positive match when the
official voter list was cross-referenced with the DPS data. This notification will explain the new
photo identification requirements in Senate Bill 14 as well as explain how to obtain an election
identification certificate, at no cost, from the DPS.
If you have any questions or need additional information, please contact Paul Miles, Staff
Attorney at (512) 475-2847 or myself at (512) 463-9871.
Sincerely,
4,--
Ann McGeehan
Director of Elections
Enclosure
AM:PM:id

**Defendant's Exhibit #**
043

DE-000289

PL569
9/2/2014
2:13-cv-00193

<< TX_00006906 >>

The State of Texas
Elections Division Phone: 512-463-5650
P.O. Box 12060 Fax: 512475-2811
Austin, Texas 787 1 1-2060 Dial 7-1-1 For Relay Services
www.sos.state.tx.us (800) 252-VOTE (8.683)
Hope Andrade
Secretary of State
July 25, 2011
Mr. T. Christian Herren, Jr.
Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
RE: Submission under Section 5, Voting Rights Act, of Senate
Bill 14, Chapter 123, 82nd Legislature, 2011.
Dear Mr. Herren:
The Legislature of the State of Texas has enacted Senate Bill 14, Chapter 123, 82nd Legislature,
2011 (the "Act"), relating to requirements to vote, including presenting proof of identification.
As described in more detail below and with some exceptions, the Act requires a voter to present
a current or recently-expired form of photo identification in order to vote in person at a polling
place. The Act also requires the Office of the Secretary of State and local election officials to
develop voter education programs, create training programs for polling place officials, and revise
election forms and postings beginning September 1, 2011.
Because of the upcoming statutory deadlines contained in the Act, we are hereby requesting
expedited consideration of this submission under 28 C.F.R. § 51.34. An expedited response
from your office will allow the state to promptly implement comprehensive education of voters
and local election officials; therefore, we would appreciate a decision from your office by
August 20, 2011.
Pursuant to the requirements of 28 C.F.R. § 51.27, the following information is submitted with
respect to the Act:
(a) & (b) A copy of the Act is enclosed. An electronic copy of the Act is also available at
httLi://wwNv.sos,state.tx.us/statdoc/b111s/index.shtni1.
(c) The Act amends the Texas Election Code (the "Code") and the Texas Transportation.
Code to require voters to present a current form of photo identification to -qualify_to vote
yin _person at the polling place in elections held in the State of Texas. The Act creates
exemptions for, certain--voters-with disabilities;, voters whose religious beliefs prevent

**Defendant's Exhibit #**
044

DE-000290

USA_00008084

<< TX_00006907 >>

Mr. T. Christian Herren, Jr.
Page 2
`them' from being.- photog raphed -for- identification, and voters who have lost their
identification in natural disasters. A voter, who does not present a current form of photo
identification when appearing to vote at the polling place and who does not fall within the
scope of the Act's exemptions, may elect to vote. provisionally. A voter who casts a
provisional ballot under these circumstances may then take advantage of the Act's post-
election cure procedures. The Act provides that a voter who presents his or her photo
identification or executes one of the affidavits set out in Section 65.054(b)(2)(B)
(religious objection) or (C) (natural disaster objection) in the presence of the registrar
(discussed below) within 6 days after the election shall have his or her provisional ballot
counted. Moreover, the Act creates a new election identification certificate and provides
that the Texas Department of Public Safety ("TDPS") will make these certificates
available, free of charge, to voters who do not have access to any other acceptable form
of photo identification.
The Act,requires-state-and-local- authorities:to_eiigage"it a' thorough-voter education and
outreach program that includes the following components: including the new photo-
identification requirements-on voter' registration cards;, including these requirements on
the Secretary of State's web site in multiple languages; including this same information
on local county voter registrars' wcb ices; including a physical posting of these
requirements in all county clerks' offices; including a physical posting of,the
requirements at prominent places within polling locations, and including a statewide
voter education program conducted by the Secretary of State.
The Act requires the Secretary of State to adopt training standards and develop training
materials to implement the changes to polling place procedures contained in the Act as
soon as practicable after September 1, 2,011. In addition, as soon as practicable, the
county clerk is required to provide a training session under Section 32.114of-the Code
that incorporates the new Secretary of "State -training standards to be adopted under
Section 32.111 of the Code.
Finally, the penalty for illegal voting is raised from a state jail felony to a second
degree
felony. The criminal penalty for attempted illegal voting is increased from a Class A
misdemeanor to a state jail felony.
The provisions of the Act regarding the need to present a current form of photo
identification when voting by personal appearance - including the new cure provisions -
go into effect for elections held on or after January 1, 2012. The increased criminal
penalties contained in the Act apply only to offenses committed on or after January 1,
2012.
SECTION-BY-SECTION REVIEW
SECTION 1 of the Act amends Section 13.002 of the Code by adding new subsection (i).
New subsection (1) provides that a voter registration applicant who wishes to be
exempted on the basis of disability from the identification requirements of Section
63.001(b) of the Code (which are discussed in more detail below) must present, along
with his or her application,: (1) written documentation either from the Social Security

**Defendant's Exhibit #**
044

DE-000291

USA_00008085

<< TX_00006908 >>

Mr. T. Christian Herren, Jr.
Page 3
Administration stating that the applicant has been determined to have a disability or from
the Department of Veterans Affairs demonstrating that the applicant has a disability
rating of at least 50 percent and (2) a statement that the applicant does not possess one
of
the acceptable forms of identification described under Section 63.0101 of the Code (as
amended by the Act).
Section 13.002 was added to the Code by Senate Bill 616, Chapter 211, 69"' Legislature,
1985 (precleared on August 16, 1985), and amended by Senate Bill 1441, Chapter 436,
70"' Legislature, 1987 (precleared on August 31, 1987),.House Bill 612, Chapter 472, 70th
Legislature, 1987 (precleared on August 31, 1987), House Bill 613, Chapter 920, 70th
Legislature, 1987 (precleared on August 31, 1987), Senate Bill 221, Chapter 2, 71St
Legislature, 1989 (a non-substantive change not subject to preclearance), House Bill 74,
Chapter 916, 73rd Legislature, 1993 (precleared on September 13, 1993), House Bill 1914,
Chapter 390, 74th Legislature, 1995 (precleared on October 13, 1995). House Bill 127,
Chapter 797, 74"' Legislature, 1995 (precleared on January 16, 1997), Senate Bill 500,
Chapter 454, 75"' Legislature, 1997 (precleared on August 11, 1997), House Bill 1549,
Chapter 1.315, 78th Legislature, 2003 (precleared on November 20, 2003), House Bill
1268, Chapter 1049, 79th Legislature, 2005 (precleared on October 21, 2005), House Bill
417, Chapter 614, 80t1' Legislature, 2007 (precleared on November 16, 2007), Senate Bill
74, Chapter 1.295, 80th Legislature, 2007 (precleared on September 27, 2007), Senate Bill
1969, Chapter 87, 81St Legislature, 2009 (a non-substantive change not subject to
preclearance), House Bill 536, Chapter 91, 8151 Legislature, 2009 (precleared on July 15,
2009), and most recently House Bill 1448, Chapter 632, 81St Legislature, 2009
(precleared on August 5, 2009).
SECTION 2 of the Act amends Section 15.001 of the Code by adding new subsection (c)
to provide that the registration certificate issued to a voter who meets the disability
exemption requirements of new Section 13.002(i) of the Code (discussed above) must
indicate that the voter is exempt from the requirement to present identification other than
the registration certificate before being accepted for voting.
Section 15.001 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985), and amended in Senate Bill 1441, Chapter 436,
70"' Legislature, 1987 (precleared on August 31, 1987), House Bill 1914, Chapter 390,
74"' Legislature, 1995 (precleared on October 13, 1995), House Bill 127, Chapter 797,
74th Legislature, 1995 (precleared on January 16, 1997), and Senate Bill 932, Chapter
532, 80t' Legislature 2007 (precleared on November 19, 2007).
SECTION 3 of the Act adds new Section 15.005 to the Code to require the voter registrar
of each county to provide notice of the identification requirements for voting (as
amended by the Act) and a detailed description of those requirements with each voter
registration certificate and registration certificate renewal mailed from the county voter
registrar. The Secretary of State is required to provide the wording of the notice.
SECTION 4 of the Act makes a conforming amendment to Section 15.022 of the Code to
require the voter registrar to correct a registration on receipt of the registration
omissions

**Defendant's Exhibit #**
044

DE-000292

USA_00008086

<< TX_00006909 >>

4• b
Mr. T. Christian Herren, Jr.
Page 4
list or an affidavit submitted under Section 63.006 from a voter swearing that he or she
has been placed in the incorrect precinct by the voter registrar's office.
Section 15.022 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985), and amended by Senate Bill 280, Chapter 54,
Chapter 54, 1987 (precleared on August 24, 1987), House Bill 74, Chapter 916, 73rd
Legislature, 1993 (precleared on September 11, 1993), and most recently House Bill 127,
Chapter 797, 74th Legislature 1995 (precleared on January 16, 1997).
SECTION 5 of the Act adds new Section 31.012 to the Code. According to this new
section, as of September 1, 2011, the Secretary of State and each county voter registrar
that maintains an Internet website must provide notice of the identification requirements
for voting (as amended by the Act) on their respective websites. The information must be
provided in each language in which voter registration materials are available in the state
and county. The Secretary of State must provide the wording of the notice. New section
31.012(b) requires the Secretary of State to conduct a statewide education effort
regarding the identification requirements for voting (as amended by the Act). New
section 31.012(c) requires each county clerk to post in a prominent location a physical
copy of the notice that is required to be posted on the county's or Secretary of State's
Internet website (discussed above). This notice must be provided in each language in
which voter registration materials are available in the county.
SECTION 6 of the Act is effective September 1, 2011 and adds Section 32.111(c) to the
Code. This new subsection requires the Secretary of State to include requirements for the
acceptance and handling of identification presented by a voter to an election officer in
its
poll worker training materials.
Section 32.111 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985) and amended in House Bill 1695, Chapter 1316,
78th Legislature, 2003 (precleared on November 20, 2003).
SECTION 7 of the Act is effective September 1, 2011 and amends Section 32.114(a) of
the Code to require that each election clerk must complete the part of the training
program described in SECTION 6 (described above).
Section 32.114 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985). It was amended by House Bill 74, Chapter 916,
73rd Legislature, 1993 (precleared on September 11, 1993), House Bill 1603, Chapter
864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance) and
House Bill 1695, Chapter 1316, 78th Legislature, 2003 (precleared on November 20,
2003).
SECTION 8 of the Act adds new Section 62.016 to the Code. The new section requires
the presiding judge of each polling place to post in a prominent place on the outside of
each polling location a list of the acceptable forms of identification for voting by
personal
appearance. The list must be in 24-point font and posted separately from other required
notices.

**Defendant's Exhibit #**
044

DE-000293

USA_00008087

<< TX_00006910 >>

f C:
Mr. T. Christian Herren, Jr.
Page 5
SECTION 9 of the Act amends several subsections of Section 63.001 of the Code.
Amended Section 63.001(b) of the Code to require a voter to present one form of
identification as set out in Section 63.0101 of the Code to an election official at the
polling place in order to qualify to vote. Prior law allowed a voter to present a current
voter registration certificate.
Amended Section 63.001(c) of the Code to provide that, after the election officer receives
from the voter the identification described by Section 63.0101 of the Code (see above),
the election officer shall review the identification to determine whether the voter's name
is on the precinct list of registered voters. If the election officer determines (using
standards adopted by the Secretary of State) that the voter's name on the identification is
substantially similar to but does not match exactly the name on the list, then the voter
will
be accepted for voting if the voter submits an affidavit stating that the voter is the
person
on the list of registered voters.
Amended Section 63.001(d) of the Code to provide that if, as determined by the
procedures set forth in Section 63.001(c) (see above), the voter's name is on the precinct
list and the voter's identity is verified from the documentation provided, the voter shall
be accepted for voting.
Subsection 63.001(f) is amended to make a conforming change.
Section 63.001(g) of the Code is added to provide that a voter who does not meet the
identification requirements of this section may vote provisionally. For such a voter, this
new subsection requires that an election officer must inform the voter of his or her
eligibility to cast a provisional ballot. The election officer must also provide the voter
with written information (in a form prescribed by the Secretary of State) that lists the
requirements for identification, states the procedures for presenting identification,
includes a map showing the location where the identification may be presented, and
includes a notice that if the post-election procedure is followed, and the voter is found
to
have been eligible to vote at the precinct, the provisional ballot will be accepted.
Section 63.001(h) of the Code is added to provide that a voter with disabilities who
presents his or her voter registration certificate, containing the indication described by
Section 15.001(c) (see above), on offering to vote is exempt from the identification
procedures described by this section.
Section 63.001 was added to the Code by House Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985) and amended by House Bill 127, Chapter 797, 74th
Legislature, 1995 (precleared on January 16, 1997) and most recently House Bill 1603,
Chapter 864, 75`h Legislature, 1997 (a non-substantive change not subject, to
preclearance).
SECTION 10 of the Act amends Section 63.0011(a) of the Code to provide that a federal
or state judge or the spouse of a federal or state judge whose residence address has been

**Defendant's Exhibit #**
044                                    DE-000294

USA_00008088

<< TX_00006911 >>

o f;
Mr. T. Christian Herren, Jr.
Page 6
omitted from the precinct list of registered voters under Section 18.005(c) of the Code
shall be asked by the polling place election official whether the residence address on their
identification is current and whether the voter has changed residence in the county.
Section 63.0011 was added to the Code by House Bill 127, Chapter 797, 74`h Legislature,
1995 (precleared on January 16, 1997). It was later amended by House Bill 41, Chapter
594, 80"' Legislature, 2007 (precleared on October 2, 2007) and by House Bill 3069,
Chapter 927, 8151 Legislature, 2009 (precleared on September 9, 2009).
SECTION 11 of the Act adds new Section 63.0012 to the Code. The new section is
effective September 1, 2011 and requires an election officer to distribute written notice of
the identification that will be required for voting beginning with elections held on or after
January 1, 2012, and information on obtaining an election identification certificate free of
charge from the TDPS to each voter that presents a form of identification that will not be
sufficient for acceptance as a voter on or after that date. The wording of this notice must
be designed by the Secretary of State. Section 63.0012 of the Code expires on September
1, 2017.
SECTION 12 of the Act amends Section 63.006 of the Code. Section 63.006(a) is
amended to provide that, with respect to a voter who presents the proper identification,
but whose name is not on the precinct list of registered voters, the voter shall be accepted
for voting if the voter also presents a registration certificate indicating the voter is
registered in the precinct or is registered in a different precinct in the same county and
executes an affidavit stating the voter is a resident of the precinct where offering to vote,
was a resident of the precinct at the time the information on the residence address was
last provided to the registrar, did not deliberately provide false information to the
registrar, and will vote only once in the election.
Under amended Section 63.006(b) of the Code, after the voter is accepted, the voter's
name must be entered on the registration omissions list.
Section 63.006 was added to the Code by House Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985) and amended by House Bill 1603, Chapter 864,
75th Legislature, 1997 (a non-substantive change not subject to preclearance).
SECTION 13 of the Act amends Section 63.009 of the Code to delete the procedure
under which a voter without a certificate and whose name is not on the precinct list of
registered voters could vote after the voter registrar confirmed the voter's eligibility. and
the voter completed two separate affidavits. Under the change, the voter without a
certificate whose name does not appear on the precinct list would have to vote
provisionally and complete the provisional voter affidavit.
Section 63.009 was added to the Code by House Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985). It was amended by House Bill 75, Chapter 728,
73rd Legislature, 1993 (precleared on September 13, 1993), House Bill 330, Chapter
1078, 75`' Legislature, 1997 (precleared on October 8, 1997), House Bill 331, Chapter
1349, 75 `h Legislature, 1997 (precleared on September 2, 1997), and most recently by

**Defendant's Exhibit #**
044

DE-000295

USA_00008089

<< TX_00006912 >>

Mr. T. Christian Flerren, Jr.
Page 7
House Bill 1549, Chapter 1315, 78th Legislature, 2003 (precleared on November 20, 2003).
SECTION 14 of the Act amends Section 63.0101 of the Code to remove any form of identification that does not include a photograph from the forms of identification that are acceptable for voting by personal appearance at the polling place. The deleted forms of identification include a birth certificate or other documents confirming birth and admissible in a court of law, citizenship papers that do not contain the person's photograph, official mail addressed to the voter from a governmental entity, copies of a current utility bill, bank statements, paychecks, or other government documents that show the name and address of the voter. Additionally, the Act deletes the authorization for the Secretary of State to prescribe additional forms of identification.
Also deleted as acceptable identification at the polling place are driver's licenses, and personal identification cards issued by other states.
Added to the list of acceptable forms of identification are a United States military identification card that contains the person's photograph and has not expired or that expired no earlier than 60 days before the date of presentation, a TDPS-issued concealed handgun license that has not expired earlier than 60 days before the date of presentation, and the TDPS-issued election identification certificate, as set out in Chapter 521 A, Texas Transportation Code.
Finally, a TDPS-issued driver's license, a personal identification card or a United States passport that expired more than 60 days before the date of presentation are no longer valid forms of identification.
Section 63.0101 was added to the Code by House Bill 330, Chapter 1078, 75th Legislature, 1997 (precleared on October 8, 1997). It was amended by House Bill 331, Chapter 1349, 75th Legislature, 1997 (precleared on September 2, 1997), by House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance), and most recently by House Bill 1549, Chapter 1315, 78th Legislature, 2003 (precleared on November 20, 2003).
SECTION 15 of the Act amends Section 63.011 of the Code to add a requirement that the provisional ballot affidavit include a space for the election officer to indicate whether the
voter presented a valid form of identification.
Section 63.011 was added to the Code by House Bill 1549, Chapter 1315, 78th Legislature, 2003, (precleared on November 20, 2003), and later amended by House Bill 2823, Chapter 1073, 80'h Legislature, 2007 (precleared on September 24, 2007).
SECTION 16 of the Act amends Section 64.012 of the Code to increase the penalty for illegal voting in an election to a second degree felony from a third degree felony and to increase the penalty for attempted illegal voting to a state jail felony from a Class A misdemeanor.

**Defendant's Exhibit #**
044

DE-000296

USA_00008090

<< TX_00006913 >>

Mr. T. Christian Herren, Jr.
Page 8
Section 64.012 was added to the Code by Senate Bill 616, Chapter 211., 69th Legislature,
1985 (precleared on August 16, 1985), amended by House Bill 1603, Chapter 864, 75th
Legislature, 1997 (a non-substantive change not subject to preclearance), and by House
Bill 54, Chapter 393, 78th Legislature, 2003 (precleared on November 21, 2003).
SECTION 17 of the Act amends Section 65.054(b) of the Code to first clarify that a
provisional ballot shall be accepted (rather than may be accepted) if the early voting
ballot board makes certain determinations. Among these determinations are two that are
newly-added by the Act. The first applies to situations where the voter: (1) meets the
identification requirements either at the time the ballot was cast or when submitted to the
county voter registrar after the election per' Section 65.0541 of the Code; (2) has a
religious objection to being photographed and completes an affidavit stating the objection
and that the voter has consistently refused to be photographed for any governmental
purpose during the period the voter has held the religious belief; or (3) completes an
affidavit asserting that he or she does not have valid identification due to a natural
disaster declared by the President of the United States no earlier than 45 days prior to
the
date the ballot was cast which caused the destruction of the voter's identification or the
inability to access the voter's identification. The second permitted determination applies
to a situation where the voter has not been challenged and the voter voted.a provisional
ballot solely because the voter did not meet the identification requirements set forth in
the
Act.
Section 65.054(b) was added to the Code by House Bill 1549, Chapter 1315, 78th
Legislature, 2003, (precleared on November 20, 2003), and later amended by House Bill
2823, Chapter 1073, 80th Legislature, 2007 (precleared on September 24, 2007).
SECTION 18 of the Act adds new Section 65.0541 to the Code. Under this new section,
a voter who casts a provisional ballot because he or she did not present an acceptable
form of identification at the polling place may, not later than six days after the date of
the
election, present a valid form of identification to the voter registrar for examination, or
execute one of the affidavits set out in Section 65.054(b)(2)(B) (religious objection) or
(C) (natural disaster objection) in the presence of the registrar. The Secretary of State
is
charged with prescribing the procedures to implement this section.
SECTION 19 of the Act amends Section 66.0241 of the Code to make conforming
changes related to SECTION 12 of the Act. These changes relate to which documents
are placed in Envelope Number 4, which is given to the county voter registrar after
election day to make updates to the voter registration list.
SECTION 20 of the Act adds a new Chapter 521A to the Texas Transportation Code.
Section 521A.001(a) requires TDPS to issue election identification certificates to persons
who state that they are obtaining the certificate to comply with the identification
requirements set out in Section 63.001 of the Code because they do not have one of the
acceptable forms of identification listed under Section 63.0101 of the Code. At the time
the person applies for the election identification certificate, the person must be a
registered voter and either present a valid registration certificate or apply for voter
registration at that time.

**Defendant's Exhibit #**
044

DE-000297

USA_00008091

<< TX_00006914 >>

Mr. T. Christian Herren, Jr.
Page 9
Section 521A.001(b) provides that TDPS may not charge a fee for issuance of the election identification certificate or a duplicate certificate.
Under Section 521A.001(c), the election identification certificate may not be used or accepted as a personal identification certificate.
Under Section 521A.00I(d), an election official may not deny a person who presents an election identification certificate the ability to vote on the basis that the person failed to
submit a TDPS driver's license or personal identification card.
Section 521A.001(e) requires TDPS to design the election identification certificate to be similar in form, but distinguishable by color, from the State's driver's license and personal identification certificate. TDPS may cooperate with the Secretary of State in designing the form.
Under Section 521A.001(f), TDPS may require applicants for the election identification certificate to furnish the same information required for a driver's license under Section 521.142 of the Texas Transportation Code.
Section 521A.001(g) authorizes TDPS to cancel and require surrender of an election identification certificate if TDPS determines the holder was not entitled to the certificate
or provided incorrect/misleading information on the certificate application.
Finally, under Section 521 A.001(h), an election identification certificate expires on a date
set by TDPS, except that certificates issued to voters 70 or older do not expire.
SECTION 21 of the Act repeals Section 63.007 of the Code and Section 63.008 of the Code to conform with changes in SECTIONS 12 and 13 of the Act.
SECTION 22 of the Act requires the Secretary of State to adopt training standards and develop training materials to implement the changes to polling place procedures under the Act as soon as practicable after September 1, 2011. In addition, as soon as practicable, the county clerk is required to provide a session of training under Section 32.114 of the Code that incorporates the new Secretary of State training standards developed under Section 32.111.
SECTION 23 of the Act provides that the change in law set out in SECTION 16, increasing the penalty for illegal voting to a second degree felony and the penalty for attempted illegal voting to a state jail felony, applies only to offenses committed on or after January 1, 2012. Offenses committed before that date are covered by the law in effect at the time of the offense, and an offense is considered to have been committed before January 1, 2012 if any element of the offense was committed prior to that date.
SECTION 24 of the Act provides that, effective September 1, 2011, county voter registrars may use state funds disbursed under Chapter 19 of the Code for expenses

**Defendant's Exhibit #**
044

DE-000298

USA_00008092

<< TX_00006915 >>

Mr. T. Christian Herren, Jr.
Page 10
connected with voter registration drives and other activities designed to increase voter
registration. This section expires on January 1, 2013.
(d) The submitting authority is the Honorable Hope Andrade, Secretary of State of Texas, in
her capacity as chief elections officer of Texas. The Secretary of State's office may be
reached at P.O. Box 12060, Austin, Texas 78711-2060, (512) 463-5650.
(e) Not applicable.
(f) Not applicable.
(g) The authority responsible for the passage of the Act was the Texas Legislature.
(h) The Act was adopted pursuant to the provisions of Tex. Const. art. III, § 30.
(i) The Act was passed by the Texas Senate on January 26, 2011, and by the Texas House
with amendments on March 24, 2011. The Senate adopted the conference committee
report on May 9, 2011, and the House adopted the conference committee report on May
16, 2011. The Act was signed by Governor Rick Perry on May 27, 2011.
(j) The training provisions, the notice of identification requirements in SECTION 11, and
the state funds disbursement requirement in SECTION 24 take effect on September 1,
2011. The remaining provisions take effect on January 1, 2012.
(k) The provisions of the Act have not been implemented.
(I) These procedures will affect the residents of the State of Texas.
(m) The reason for the change provided for in the Act is to ensure the integrity of the
voting
process by allowing registered voters to vote, enhancing detection of ineligible voters,
and deterring ineligible voters from voting, all while providing safeguards to allow
eligible voters the opportunity to have their ballots counted.
(n) The Act will not affect members of any racial or linguistic minority differently from
the
way the general public is affected. The Act does not have the intent and will not have the
effect of diluting the voting strength of any racial or linguistic minority.
The United States Department of Justice ("DOJ") previously precleared Georgia's 2005
law, which-like the Act-requires voters to present photo identification before voting
by personal appearance. That preclearance decision is consistent with the United States
Supreme Court's decision in Crawford v. Marion County Election Board, in which the
Court rejected constitutional challenges to Indiana's photo-ID law. As former Justice
John Paul Stevens acknowledged in the Supreme Court's decision upholding Indiana's
law, modern. _life_.requires =photo -identification to transact even the most mundane
business. Indeed, Justice Stevens cited with approval the following statement of the
Commission on Federal Election Reform, that former President Jimmy Carter and former
Secretary of State James A. Baker III jointly chaired: "Photo identification cards are

**Defendant's Exhibit #**
044

DE-000299

USA_00008093

<< TX_00006916 >>

r t'
Mr. T. Christian Herren, Jr.
Page 11
currently needed to board a plane, enter federal buildings, and cash a check. Voting is
equally important." Crawford v. Marion County Election Bd., 553 US. 181,193 (2008).
Commensurate with this observation, Texas' law requiring voters to present photo.
identification at the polls provides for the acceptance of commonly held documents: a
state-issued driver's license or personal identification card, a United States military
identification card, a United States passport, a United States citizenship certificate, or a
concealed handgun license. See Section 13 of the Act. In fact, while there are only
12,604,131 registered voters in Texas, there are currently about 17,008,051 active Texas
driver's licenses and identification cards.
However, to address concerns some raised about the Act's photo identification
requirements, the Texas Legislature included several voter education provisions, as well
as other safeguards for Texas voters.- For example, the Act requires state and local
authorities to engage in a thorough voter education and outreach program that includes
the following components: inclusion of the new photo-identification requirements on new
voter registration cards and renewal cards that are issued to all registered voters
beginning late this year; including these requirements on the Secretary of State's web site
in all languages required for election materials in Texas; including this same information
on local registrars' websites in the locally requisite languages; including a physical
posting of these requirements in all county clerks' offices in such languages; including a
physical posting of the requirements at prominent places within polling locations, and a
statewide voter education program conducted by the Secretary of State. See Sections 3,
4, 5 and 8 of the Act. In sum, the Act is carefully designed to ensure that every voter,
regardless of race, disability, education level or economic station, is fully informed about
the Act's requirements.
In addition to these voter education and outreach efforts, the Act contains other
safeguards to protect the rights of eligible voters to vote and have their ballots counted.
For example, the Act provides for a "cure" period whereby a voter may return after
casting a provisional ballot to present the required ID if the voter failed to do so at the
polls. Indeed, the Act specifically requires election workers to inform voters who do not
present an adequate form of photo identification at the polling place of the procedures
they may follow to have their ballots counted. See Sections 9 and 11 of the Act.' It also
requires election clerks to take specific training regarding the Act's requirements so that
all voters will receive like treatment when they present themselves for voting in person.
See Sections 6 and 7 of the Act. Moreover, the Act addresses the situation in which a
voter's photo identification documents include a spelling that is not identical-but is
substantially similar to-the spellings on poll lists in polling locations. See Section 9 of
the Act. Lastly, the Act creates an entirely new identification document that the State
must provide free of charge to voters who attest to their inability to pay for other
acceptable forms of identification. See Section 20 of the Act.
'Beginning in September 1, 2011, election workers must provide notice of the acceptable
forms of photo
identification for elections conducted after January 1, 2012 to all voters presenting
identification that does not meet
the requirements of the Act, as well as information on how such voters can obtain
acceptable identification for free.
See Section 1 I of the Act.

**Defendant's Exhibit #**
044

DE-000300

USA_00008094

<< TX_00006917 >>

Mr. T. Christian Herren, Jr.
Page 12
The framework Texas has created in its photo-identification law is consistent with photo-identification regimes in other states, such as Georgia's precleared 2005 law. Georgia's administratively precleared law is remarkably similar to the Act in that Georgia requires the following forms of photo-identification for in-person voting: a Georgia driver's license, an identification card issued by any Georgia state entity or the United States, a valid United States passport, an employee identification card issued by any Georgia state entity, the United States or local political entities, a United States military identification
or a tribal identification card. See GA. Code Ann. § 21-2-417(a) (2010.). Like the Act, Georgia's law includes a "cure" period (of more limited duration than the Texas cure period), free photo identification for economically-distressed voters lacking other approved forms of identification, and an extensive voter education and outreach program. See GA Code Ann. §§ 21-2-417(b), 418, and 419 (2010). In fact, DOJ precleared Georgia's original photo-identification law even before Georgia enacted its free ID provision and its most recent extensive voter education mandate, which Georgia added in a subsequent legislative session.
The history of Indiana's photo-identification law is also relevant to DOJ's Section 5 evaluation of the Act. Indiana enacted an in-person voting photo-identification law similar to the Act that requires voters to present photo identification that the United States
or the State of Indiana issued. Such identification must include the name of the voter in a form that conforms to the voter's registration record and an expiration date. The identification must be current or have expired after the date of the most recent general election. See Ind. Code Ann. §§ 3-11-8-25.1 and 3-5-2-40.5 (2008). Indiana excepted those voting in person at a precinct polling place located at a state-licensed care facility
where they reside and those attesting to indigent status or a religious exception to being photographed. See Ind. Code Ann. §§ 3-10-1-7.2(e), 3-11-8.25.1, 3-11-10-1.2, 3-11.7-5-1, and 3-11.7-5-2.5 (2008). Indiana voters not qualifying for an exception and failing to meet the photo-identification standard are allowed to vote provisionally and later provide the required identification. See Ind. Code Ann §§ 3-11-8-25.1, 3-11-7.5-2.5, 3-11.7-5-1, and 3-11.7-5-2.5.2
Various plaintiffs challenged Indiana's statutory, regime on federal and state constitutional grounds and federal and state statutory grounds, claiming the law would negatively impact minority communities. See Indiana Democratic Party v. Rokita, 458 F.Supp.2d 775, 820-43 (S.D.Ind. 2006), aff'd, 472 F.3d 949 (7th Cir. 2007), aff'd, 553 U.S. 181 (2008). Although the claims did not include federal Voting Rights Act dilution claims, they did include allegations that the State of Indiana violated voting rights provisions of the Civil Rights Act of 1964. See id. at 839-42 (discussing claims under 42 U.S.C. 1971). Moreover, in considering the gamut of plaintiffs' claims, the courts at the trial and appellate levels clearly considered concerns that Indiana's law would negatively impact members of minority communities. See, e.g., Crawford, 472 F.3d 949, 952 (7th Cir. 2007), aff'd, 553 U.S. 181, 187 (2008); Rokita, 458 F.Supp.2d at 795-96.
At every level, the federal courts upheld Indiana's law. In doing so, the trial court wrote:
2 For a more complete explanation of Indiana's statutory scheme as well as evidence of the actual practice in Indiana
elections, see Indiana Den iocratic Party v. Rokila, 458 F.Supp.2d 775, 786-87 (S.D. Ind. 2006), af'd, 472 F.3d 949
(7th Cir. 2007), aff'd, 553 U.S. 181 (2008).

**Defendant's Exhibit #**
044                                    DE-000301

USA_00008095

<< TX_00006918 >>

Mr. T. Christian Herren, Jr.
Page 13
Despite apocalyptic assertions of wholesale voter disenfranchisement,
Plaintiffs have produced not a single piece of evidence of any identifiable
registered voter who would be prevented from voting pursuant to [the
Indiana photo ID law] because of his or her inability to obtain the
necessary photo identification. Similarly, Plaintiffs have failed to produce
any evidence of any individual, registered or unregistered, who would
have to obtain photo identification in order to vote, let alone anyone who
would undergo any appreciable hardship to obtain photo identification in
order to be qualified to vote ...
Plaintiffs' inability to provide the names or otherwise identify any
particular affected individuals persists despite various polls and surveys
that were conducted for the specific purpose of discovering such
individuals ...
[I]t is a testament to the law's minimal burden and narrow crafting that
Plaintiffs have been unable to uncover anyone who can attest to the fact
that he/she will be prevented from voting despite the concerted efforts of
the political party and numerous interested groups who arguably represent
the most severely affected candidates and communities.
Rokita, 458 F.Supp.2d at 822-23. The Seventh Circuit added that there was "something
remarkable about the plaintiffs considered as a whole" as there was not a single one "who
intend[ed] not to vote" because of the Indiana law. Rokita, 472 F.3d at 951-52.
As for the United Stated Supreme Court, Justice Stevens explained in the lead opinion for
the Court, that given Indiana's provision of free photo identification, in most instances,
"the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the
required documents, and posing for a photograph surely does not qualify as a substantial
burden on the right to vote, or even represent a significant increase over the usual
burdens
of voting." Crawford, 553 U.S. at 198. Three other justices who joined in the judgment
of the Court refused to even entertain, at least for constitutional purposes, a person-by-
person analysis of the burdens of a voting regulation when the regulation has non-
discriminatory purpose and is generally applicable. See id. at 205-209. Justice Scalia
wrote for those justices as follows: "The universally applicable requirements of Indiana's
voter-identification law are eminently reasonable. The burden of acquiring, possessing,
and showing a free photo identification is simply not severe, because it does not 'even
represent a significant increase over the usual burdens of voting.' And the state's
interests ... are sufficient to maintain that minimal burden. That should end the matter."
Id. at 209.
Analysis of voting patterns in Indiana since the implementation of that state's photo-
identification law demonstrates that any fear these laws will decrease minority voter
turnout is misguided. Professor Jeffrey Milyo, a professor of public affairs and
economics who has been affiliated with the University of Missouri, the University of
Kansas, and the Cato Institute specifically looked at voting patterns in Indiana before and

**Defendant's Exhibit #**
044

DE-000302

USA_00008096

<< TX_00006919 >>

~ e.
Mr. T. Christian Herren, Jr.
Page 14
after the implementation of photo ID requirements in a publication for the Institute of
Public Policy at the University of Missouri's Harry S. Truman School of Public Affairs.
He compared turnout between the 2002 and 2006 midterm elections and implemented
various control factors or "sensitivity checks" to isolate the effects of Indiana's photo
ID
law. See Jeffrey Milyo, The Effects of Photographic Identification on Voter Turnout in
Indiana: A County Level Analysis, Institute of Public Policy, University of Missouri
Harry S. Truman School of Public Affairs at 1, 7 (December 2007). Professor Milyo
specifically sought to identify the effects of photographic identification on "turnout in
counties with a greater percentage of minority, poor, elderly, or less educated
populations." See id. He concluded that while overall voter turnout in Indiana increased
about two percentage points from 2002 to 2006, turnout in counties with greater
percentages of minority or poor voters increased by even more, and the most consistent
effect of photo identification in Indiana was to increase turnout in counties with a
greater
percentage of Democratic-leaning voters. See id. at 1, 7.3
In light of Indiana's experience, it should not be surprising that data from Georgia-the
state with the other implemented photo identification requirement most similar to the
Act-reflect no dampening of minority.voter turnout. As the attached material from the
Georgia Secretary of State's Office states, minority turnout increased after Georgia
adopted its photo identification law. And it did so for both Hispanics and African
Americans in both presidential and midterm election cycles (2004 to 2008 and 2006 to
2010). In sum, the evidence not only reflects no negative turnout impact on minority
voters, but actually suggests that photo identification laws may have bolstered turnout.
To the extent the Department seeks more information regarding the Act, please contact:
The Honorable Aaron Pena (joint sponsor)
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0426
The Honorable Larry Gonzales (co-sponsor)
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0670
3 Findings such as Professor Milyo's may explain why states all over the United States
continue to adopt photo
identification requirements for in person voting. For example, just weeks before the date
of this submission, Rhode
Island adopted a voter ID requirement. The law accepts photo and non-photo ID until 2014,
at which point Rhode
Island will accept only photo ID. See Rhode Island Governor Signs Voter ID Bill, Yahoo
News, July 7, 2011,
http://sg.news.vahoo.com/rhode-isIand-Governor-sins-voter-id-bi11-211 606786.html Professor
Milyo's findings
may also explain why majorities of Americans across racial and other lines consistently
express support for
requiring photo identification to vote in person. Indeed, non-partisan independent polling
conducted in Texas contemporaneously with the legislative debate regarding the Act
reflected that virtually every subgroup in the survey
supported photo identification for in person voting including: "whites, blacks and
Hispanics; men and women; and urban, suburban and rural. Hispanics - one of the populations
many fear would be disadvantaged by such a law - favor showing photo IDs by a 68 percent to
22 percent margin." Ross Ramsey, UT/TT Poll: Texans Are Readv to Roll the Dice, TEXAS
TRIBUNE, Feb. 23, 2011, httpJi\..\.wl~-_texastribune_or(~;_texas-issuesigamin
ga_mblinghittt poh-
texans-arc-readv-to-roll-the-dicer"

**Defendant's Exhibit #**
044

DE-000303

USA_00008097

<< TX_00006920 >>

8

In Person Voting with Photo Identification: Analysis of Votes Cast
How many votes have been cast in Georgia elections with the photo ID law in
place?
More than 14,630,000 votes have been cast in 35 state and federal elections.in Georgia,
since
September 2007 when photo ID was first required for in-person voting. (These figures do.
not include
all municipal and county elections, which are administered locally.)
Additionally, the 2008 elections were the largest in Georgia's history, featuring record
turnout among
minority voters with the photo ID requirement in place. The following figures represent
voter turnout
statistics among Hispanic/Latino, African-American and White voters from the 2004 and 2008
General Elections.
Voter Demographic 2004.Total 2008 Total Percentage
Number of Number of Increase in
Votes Cast Votes Cast Votes Cast
Hispanic/Latino 18,000 43,000 140%
African-American 834,000 1.2 million 42%
White 2.3 million 2.5 million 8%

**Defendant's Exhibit #**
044                    DE-000304

USA_00008098

<< TX_00007045 >>

D
Ross Giesinger
From: Colby Beuck e (
Sent: Wednesday, November 23, 2011 2:17 PM ~x~if °i'~ ~~
To: Patricia Harless
Subject: Speech Info
Attachments: Voter ID.Redist.Speech.11.2011.docx S 43L J01
Cj f~/c7 rr .sr ~'
Follow Up Flag: Follow up
Flag Status: Flagged
Attached and below is the speech information. Please let me know if I need to get you different information, or
make changes.
SB 14 Background
• Senate Bill 14 requires individuals to show photo ID before voting, to ensure the integrity of our elections.
• Several forms of government-issued photo ID will be accepted at polling places.
• Senate Bill 14 ensures access to polls by requiring DPS to provide a free photo election ID to registered
voters who request one.
• The bill also provides reasonable exceptions for indigent and disabled voters and allows individuals not
carrying photo ID to vote provisionally.
• Because Texas is one of the states subject to the federal voting rights act, SB 14 must be reviewed by the
Federal Department of Justice, or a federal 3 judge panel, in a process called "preclearance".
• Preclearance is a process in which an election law is analyzed to determine whether it will have the effect of
discriminating based on race or color.
• The Texas Secretary of State submitted its preclearance application on July 25. The DOJ responded on Sept
23 with several questions. The most significant request was for data on voter's racial identity. Data on a
voter's race is not collected in Texas, so the SOS has had to find ways to correlate data from other state
agencies. To respond to the DOJ's question, the SOS is currently correlating DPS driver's records (which
does have racial information) with voter records. However DPS records are not complete, because they did
not identify a specific category for Hispanics until 2009.
• The DOJ has 60 days, from when it determines it has enough information, to make a preclearance decision.
Where SB 14 Goes from Here
• The SOS is currently complying the race data on voters to the best of their ability. The DOJ will not begin
the 60 day clock until they receive this information. This delay could possibly mean that SB 14 will not be
implemented until after the March primaries.
• Should the DOJ not preclear SB 14, the State will likely file a lawsuit in federal court, appealing the DOD's
decision.
SB 14 Timeline
July 25 - Original Submission (Attached #1).
Sept 23 - DOJ requests more information, 60th day (Attachment #2). Most significant request for information is
#5, which asks for race data on voters.
'1

**Defendant's Exhibit #**
045

DE-000305

USA_00008099

<< TX_00007046 >>

(' r
Oct 5 - SOS response to DOJ questions (Attachment #3). SOS does not have the information requested on voter
race. Because the response was incomplete, the DOJ asked for more detailed information on the race of voters,
requesting data which correlates DPS driving records with SOS voting records. Unlike the SOS voter records,
DPS records contain race data (but not Hispanic until 2009). The SOS is currently in the process of correlating
this data for the DOJ.
Nov 16 - The DOJ sends letter (Attachment #4) stating that they are waiting to begin the 60 day clock until they
receive the additional information (race data on voters) requested on Oct 5.
Redistricting Background
• The 82nd Legislature passed redistricting maps for the Texas House, Texas Senate, Texas Congressional
delegation, and Texas State Board of Education. This is the first time in 20 years that the House, Senate and
Congressional maps have been passed during the regular session.
• Because Texas is one of the states subject to the federal voting rights act, these maps must be reviewed by
the Federal Department of Justice, or a federal 3 judge panel, to "preclear" the maps. Preclearance is a
process in which a map is analyzed to determine whether minority voters have at least the same voting
strength as they had under a previous map.
• The State Board of Education map was precleared by the Justice Department, and will be effective next
election. The House, Senate and Congressional maps are currently being legally reviewed on two fronts:
o D.C. Panel - The Texas Attorney General decided to seek preclearance from a panel of 3 federal
judges in Washington D.C., not from the Department of Justice as is typically done.
o SA Panel - A separate federal 3 judge panel in San Antonio is reviewing legal claims that new
district boundaries dilute minority votes. This panel also has the ability to create new maps as
necessary to comply with federal law.
• On November 8, the D.C. panel ruled against the State's motion for summary judgment, meaning there will
be a trial on the merits of the case to determine preclearance under the voting rights act. The State asked the
DC panel to begin the trial in early December.
• The DC panel's ruling delayed preclearance and created a need for the SA panel to issue interim maps, so
that upcoming primaries and elections may be held. On November 17, the SA panel issued proposed interim
maps for the House and Senate. On November 23, they issued a proposed interim map for Congress. The proposed interim House map creates more minority opportunity districts.
Where Redistricting Goes from Here
• The DC panel will likely hold the preclearance trial in early December. Should the DC panel preclear the maps, the State probably will ask the SA panel to toss out their interim maps, and use the precleared plans passed by the Legislature.
• If the interim maps stay as they are, the State will most likely file a motion to stop the implementation of the
interim maps with the US Supreme Court.
• Any successful legal challenges to the SA panel's interim maps could possibly mean moving the March
primaries back to accommodated the delays.
2

**Defendant's Exhibit #**
045

DE-000306

USA_00008100

<< TX_00007047 >>

OC~an f Qj
Ross Giesinger
From: Patricia Harless [phar77379@aol.com]
Sent: Monday, November 28, 2011 9:46 AM
To: Colby Beuck t~ 4~ r
Subject: Re: Speech Info
SSA - o -, SSA 173 c g , -b6 S~~, lii
Follow Up Flag: Follow up
Flag Status: Flagged
Need more info on both. On voter I'd you can use the stuff from both the email we just sent out to the constituents as a
response and the op Ed the chronicle published
Start with talking points why we need it. Talk about Indiana & Georgia. Our bill needs both the constitutional test of
Indiana and preclearance of Georgia
Talk about fraud & which offices prosecute it & why it is hard to prosecute
Ad ballot by mail from seniors
Put the statements from the supreme court justices used in op Ed about elections
Which agency decides whether to go to doj or the federal court judges
What are the advantages or disadvantages of each agency?
Have we sent off the info to doj yet???? Jay said it would be sent off on the 21. Was it????
Redistricting
Add stats about texas. Increase in population. 4 additional congressional seats. Where was the area of growth? Where
should the 4 seats be. What areas lost population
Why is the SA panel involved? Lawsuit by?
You said the SA panel made more minority opportunity districts. Where and how?
Which members are now paired in the new map
Give a break down of what is going on in house & senate (which members retiring, which members moving up (what are
they running for.
Then what happens next? All the scenarios. Will we redraw maps in 2013?
This info is for speeches to friendly groups. They want inside baseball stuff
Sent from my iPad
On Nov 23, 2011, at 3:16 PM, Colby Beuck <Colby.Beuck@house.state.tx.us> wrote:
Attached and below is the speech information. Please let me know if I need to get you different
information, or make changes.
SB 14 Background
• Senate Bill 14 requires individuals to show photo ID before voting, to ensure the integrity of
our elections.
• Several forms of government-issued photo ID will be accepted at polling places.
• Senate Bill 14 ensures access to polls by requiring DPS to provide a free photo election ID to
registered voters who request one.
i

**Defendant's Exhibit #**
046

DE-000307

USA_00008101

<< TX_00007048 >>

- The bill also provides reasonable exceptions for indigent and disabled voters and allows individuals not carrying photo ID to vote provisionally.
- Because Texas is one of the states subject to the federal voting rights act, SB 14 must be reviewed by the Federal Department of Justice, or a federal 3 judge panel, in a process called "preclearance".
- Preclearance is a process in which an election law is analyzed to determine whether it will have the effect of discriminating based on race or color.
- The Texas Secretary of State submitted its preclearance application on July 25. The DOJ responded on Sept 23 with several questions. The most significant request was for data on voter's racial identity. Data on a voter's race is not collected in Texas, so the SOS has had to find ways to correlate data from other state agencies. To respond to the DOD's question, the SOS is currently correlating DPS driver's records (which does have racial information) with voter records. However DPS records are not complete, because they did not identify a specific category for Hispanics until 2009.
- The DOJ has 60 days, from when it determines it has enough information, to make a preclearance decision.

Where SB 14 Goes from Here

- The SOS is currently complying the race data on voters to the best of their ability. The DOJ will not begin the 60 day clock until they receive this information. This delay could possibly mean that SB 14 will not be implemented until after the March primaries.
- Should the DOJ not preclear SB 14, the State will likely file a lawsuit in federal court, appealing the DOJ's decision.

SB 14 Timeline

July 25 - Original Submission (Attached #1).

Sept 23 - DOJ requests more information, 60th day (Attachment #2). Most significant request for information is #5, which asks for race data on voters.

Oct 5 - SOS response to DOJ questions (Attachment #3). SOS does not have the information requested on voter race. Because the response was incomplete, the DOJ asked for more detailed information on the race of voters, requesting data which correlates DPS driving records with SOS voting records. Unlike the SOS voter records, DPS records contain race data (but not Hispanic until 2009). The SOS is currently in the process of correlating this data for the DOJ.

Nov 16 - The DOJ sends letter (Attachment #4) stating that they are waiting to begin the 60 day clock until they receive the additional information (race data on voters) requested on Oct 5.

Redistricting Background

- The 82nd Legislature passed redistricting maps for the Texas House, Texas Senate, Texas Congressional delegation, and Texas State Board of Education. This is the first time in 20 years that the House, Senate and Congressional maps have been passed during the regular session.
- Because Texas is one of the states subject to the federal voting rights act, these maps must be reviewed by the Federal Department of Justice, or a federal 3 judge panel, to "preclear" the maps. Preclearance is a process in which a map is analyzed to determine whether minority voters have at least the same voting strength as they had under a previous map.

2

**Defendant's Exhibit #**
046

DE-000308

USA_00008102

<< TX_00007049 >>

• The State Board of Education map was precleared by the Justice Department, and will be effective next election. The House, Senate and Congressional maps are currently being legally reviewed on two fronts:
o D.C. Panel - The Texas Attorney General decided to seek preclearance from a panel of 3 federal judges in Washington D.C., not from the Department of Justice as is typically done.
o SA Panel - A separate federal 3 judge panel in San Antonio is reviewing legal claims that new district boundaries dilute minority votes. This panel also has the ability to create new maps as necessary to comply with federal law.
• On November 8, the D.C. panel ruled against the State's motion for summary judgment, meaning there will be a trial on the merits of the case to determine preclearance under the voting rights act. The State asked the DC panel to begin the trial in early December.
• The DC panel's ruling delayed preclearance and created a need for the SA panel to issue interim maps, so that upcoming primaries and elections may be held. On November 17, the SA panel issued proposed interim maps for the House and Senate. On November 23, they issued a proposed interim map for Congress. The proposed interim House map creates more minority opportunity districts.
Where Redistricting Goes from Here
• The DC panel will likely hold the preclearance trial in early December. Should the DC panel
preclear the maps, the State probably will ask the SA panel to toss out their interim maps, and use the precleared plans passed by the Legislature.
• If the interim maps stay as they are, the State will most likely file a motion to stop the
implementation of the interim maps with the US Supreme Court.
• Any. successful legal challenges to the SA panel's interim maps could possibly mean moving
the March primaries back to accommodated the delays.
<Voter ID.Redist.Speech. 11.2011.docx>
3

**Defendant's Exhibit #**
046

DE-000309

USA_00008103

<< TX_00007058 >>

D~~.. F
Ross Giesinger
From: Patricia Harless [phar77379@aol.com]
Sent: Tuesday, November29, 2011 11:41 PM tc'pl~..{s 1tct 614, cL ca A'
To: Colby Beuck
Subject: Re: Updated Speech Info SS 2..I 1 S S~ , I a;f ~S2 1 J ~51,111~
Follow Up Flag: Follow up coat
Flag Status: Flagged
Thank you. The detail i needed.
-----Original Message----
From: Colby Beuck <Colby. Beuck@house.state.tx. us>
To: Patricia Harless <phar77379@aol.com>
Sent: Tue, Nov 29, 2011 2:21 pm
Subject: Updated Speech Info
SB 14 Background
• Senate Bill 14 requires individuals to show photo ID before voting, to ensure the
integrity of our
elections.
• Under the current law, we do not have the tools necessary to stop in-person voter fraud.
In fact,
in-person voter fraud may not even be evident until after the election has occurred. Over
the last
couple of legislative sessiong-we heard from many witnesses who testified that voter-
registration
cards have been stolen and false votes cast in those persons names, most of who where
deceased.
• Voter fraud cases are prosecuted two ways, by local DAs, or by the Texas Attorney General
(only
after a case has been reported and referred to the AG by the Secretary of State).
• Though there are more cases of voter fraud than are prosecuted, even one fraudulent vote
can
cost an election. Last year, after a re-count, State Representative Donna Howard won her
election
by 3 votes.
• This is a nationwide issue, with many states recently passing photo voter id laws.
Indiana and
Georgia are two states that have successfully implemented photo voter id laws.
• Senate Bill 14 is similar to Georgia's photo id law which was approved by the US
Department of
Justice in 2005, important because like Georgia, Texas is subject to the federal voting
rights act.
• Senate Bill 14 is also modeled after Indiana's photo id law which was upheld by the
Supreme
Court in 2008. Justice Steven's opinion concluded that while an ID requirement may place a
burden on voters "burdens... arising from life's vagaries, however, are neither so serious
nor so
frequent as to raise any question about the constitutionality of [photo ID requirements]."
Justice "does
Steven's opinion a so~fed that or the few voters without the burden of obtaining one,
not qualify as a substantial burden on the right to vote."
Bill Detail
• Under Senate Bill 14, several forms of government-issued photo ID will be accepted at
polling
places.
• Access to polls is ensured by requiring DPS to provide a free photo election ID to
registered
voters who request one.
• The bill also provides reasonable exceptions for indigent and disabled voters and allows
individuals not carrying photo ID to vote provisionally.
i

**Defendant's Exhibit #**
049

DE-000318

USA_00008112

<< TX_00007059 >>

. o In addition, disabled persons and the elderly will still be able to vote by mail without the photo ID
requirements. Current law allows registered voters to vote by mail if they anticipate being out of
town during the election, or are over 65, or have an illness or disability that makes them unable to
vote in person.
o These provisions will ensure that eligible, qualified citizens are able to exercise their right to vote
under a secure system that prevents election fraud.
Preclearance
o Because Texas is one of the states subject to the federal voting rights act, SB 14 must be
reviewed by the Federal Department of Justice, or a federal 3 judge panel, in a process called
"preclearance".
o Preclearance is a process in which an election law is analyzed to determine whether it will have
the effect of discriminating based on race or color.
o The Attorney General's Office, as the state's attorney, has the decision whether to take
preclearance to the DOJ or a 3 judge panel.
1. DOJ - Advantages - set deadlines for a preclearance decision. DOJ routinely handles
preclearance submissions so they are more familiar with the process, potentially shorting
approval turnaround. Disadvantages - the DOJ is a presidential cabinet agency, subject to
political pressure.
2. 3 Judge Panel - Advantages - less political influence. Disadvantages - longer, response
time, no guarantee on judges.
o The Texas Secretary of State submitted its preclearance application to the DOJ on July 25. The
DOJ responded on Sept 23 with several questions. The most significant request was for data on
voter's racial identity. Data on a voter's race is not collected in Texas, so the SOS has had to find
ways to correlate data from other state agencies. To respond to the DOJ's question, the SOS is
currently correlating DPS driver's records (which does have racial information) with voter records.
However DPS records are not complete, because they did not identify a specific category for
Hispanics until 2009.
o The DOJ has 60 days, from when it determines it has enough information, to make a
preclearance decision.
Where SB 14 Goes from Caere
o The SOS is currently complying the race data on voters to the best of their ability. The SOS will
not submit data that is unreliable or based on speculation. The DOJ will not begin the 60 day
clock until they receive this information. This delay could possibly mean that SB 14 will not be
implemented until after the March primaries.
o Should the DOJ not preclear SB 14, the State will likely file a lawsuit in federal court to seek
preclearance.
SB 14 Timeline
July 25 - Original Submission (Attached #1).
Sept 23 - DOJ requests more information, 60th day (Attachment #2). Most significant request for
information is #5, which asks for race data on voters.
Oct 5 - SOS response to DOJ questions (Attachment #3). SOS does not have the information
requested on voter race. Because the response was incomplete, the DOJ asked for more detailed
2

**Defendant's Exhibit #**
049

DE-000319

USA_00008113

<< TX_00007060 >>

information on the race of voters, requesting data which correlates DPS driving records with SOS
voting records. Unlike the SOS voter records, DPS records contain race data (but not Hispanic until
2009). The SOS is currently in the process of correlating this data for the DOJ.
Nov 16 - The DOJ sends letter (Attachment #4) stating that they are waiting to begin the 60 day clock
until they receive the additional information (race data on voters) requested on Oct 5.
Redistricting (Background
o The Texas Legislature is responsible for redistricting state and congressional districts in the
legislative session following publication of the census.
o The 2010 census showed that Texas grew by 20.6% in the last decade, to a total population of
25,145,561. For comparison, the U.S. population grew 9.7% in the last decade.
o The fastest growing areas were suburban counties around large metropolitan areas, counties
along the IH-35 corridor, and counties in South Texas. Rural areas, particularly West Texas,
showed slow growth or a reduction in population.
o Because of this rapid population growth, 4 additional congressional seats were apportioned to
Texas.
o The Legislature passed redistricting maps for the Texas House, Texas Senate, Texas
Congressional delegation, and Texas State Board of Education. This is the first time in 20 years
that the House, Senate and Congressional maps have been passed during the regular session.
o Because Texas is one of the states subject to the federal voting rights act, these maps must be
reviewed by the Federal Department of Justice, or a federal 3 judge panel, to "preclear" the maps.
Preclearance is a process in which a map is analyzed to determine whether minority voters
have at least the same voting strength as they had under a previous map.
o The State Board of Education map was precleared by the Justice Department, and will be
effective next election. The House, Senate and Congressional maps are currently being
legally reviewed on two fronts:
o D.C. Panel - The Texas Attorney General decided to seek preclearance from a panel of 3
federal judges in Washington D.C., not from the Department of Justice as is typically done.
o SA Panel - A separate federal 3 judge panel in San Antonio is reviewing legal claims that
new district boundaries dilute minority votes. Several plaintiffs claims were joined together, including MALC, LULAC, Travis County Plaintiffs, and NAACP. This panel also has the
ability to create new maps as necessary to comply with federal law.
o On November 8, the D.C. panel ruled against the State's motion for summary judgment,
meaning there will be a trial on the merits of the case to determine preclearance under the voting rights act.
The State asked the DC panel to begin the trial in early December.
o The DC panel's ruling delayed preclearance and created a need for the SA panel to issue
interim maps, so that upcoming primaries and elections may be held. On November 17, the SA
panel issued proposed interim maps for the House and Senate. On November 23, they issued a
proposed interim map for Congress. On November 23 the House and Senate interim maps were
finalized. On November 26, the Congressional map was finalized.
Interim Hargs and Candidates
o House Map
o The proposed interim House map creates more minority opportunity districts. The interim
map creates additional minority opportunity districts in the Valley, Harris County and El
Paso. The map restored 2 minority districts in Corpus Christi and San Antonio. One
coalition district (several minority groups combined) in DFW was created that is able to
elect a minority candidate.
o The map creates 13 open seats.
3

**Defendant's Exhibit #**
049

DE-000320

USA_00008114

<< TX_00007061 >>

o 12 House incumbents are paired, but with those who have announced they are not returning or are changing residence, the actual incumbent pairings appear to be 3: Hunter (R) and Morrison (R) in HD 32; Scott (R) and Torres (R) in HD 33; Hamilton (R) and White (R) in HD 21.
o Considering open seats, pairings and members not coming back, the 2013 Legislature will have 33 new members at a minimum. In 2011 there were 35 new members.
• House Member announcements:
Retirements - 11
Fred Brown HD 14
Charlie Howard HD 26
Aaron Pena HD 40
Burt Solomons HD 65
Jerry Madden HD 67
Rick Hardcastle HD 68
Lanham Lyne HD 69
Joe Driver HD 113
Will Hartnett HD 114
Jim Jackson HD 115
Beverly Woolley HD 136
Congress - 4
Randy Weber CD 14
Pete Gallego CD 23
Barbara Caraway CD 30
Joaquin Castro CD 35
Senate - 6
Charles Schwertner SD 5
Ken Paxton SD 8
Rodney Anderson SD 9
Kelly Hancock SD 9
Mark Shelton SD 10
Larry Taylor SD 11
Other Office - 3
Warren Chisum Railroad Commission
Jose Aliseda District Attorney
Chente Quintanilla El Paso County Commissioner
• Senate
o Senate interim map restores much of SD 10 (Wendy Davis) in Tarrant County, adding back in democratic voters. 4 Senators have announced they are not returning. Harris, Ogden, and Shapiro are retiring. Jackson is running for Congress.
o The balance of the Senate is likely to remain the same 19 R - 12 D. Important because Senators need 21 votes to move legislation because of the Senate's 2/3rds rule.
• Congressional Map
o The Legislature's map divided the four new congressional seats 3R - 1 D. The SA panel's interim map divided the four new seats 3D - 1 R..
Where Redistricting Goes from Here
4

**Defendant's Exhibit #**
049

DE-000321

USA_00008115

<< TX_00007062 >>

• The DC panel will likely hold the preclearance trial in early December. Should the DC panel
preclear the maps, the State probably will ask the SA panel to toss out their interim maps, and use
the precleared plans passed by the Legislature.
• The State has filed a motion to stop the implementation of the interim maps with the US Supreme
Court. It will take 5 justices to grant a stay.
• Any successful legal challenges to the SA panel's interim maps could possibly mean moving the
March primaries back to accommodated the delays. In the state's petition to the Supreme Court,
May 22 was a suggested date.
• The interim map will be used until the DC panel makes a final determination on the issue of
preclearance and one of two things happens:
o The Legislature is called into a special session to adopt a new map that complies with
whatever objections, if any, the DC panel has; or
o The SA panel adopts a permanent map that complies with the DC panel's objections, if any,
and the SA panel's objections.
• The Legislature could also redraw the maps to address legal concerns the next regular legislative
session in 2013.
From: Patricia Harless [mailto:phar77379 a(aol.com]
Sent: Monday, November 28, 2011 9:46 AM
To: Colby Beuck
Subject: Re: Speech Info
Need more info on both. On voter I'd you can use the stuff from both the email we just sent out to the constituents as a
response and the op Ed the chronicle published
Start with talking points why we need it. Talk about Indiana & Georgia. Our bill needs both the constitutional test of
Indiana and preclearance of Georgia
Talk about fraud & which offices prosecute it & why it is hard to prosecute
Ad ballot by mail from seniors
Put the statements from the supreme court justices used in op Ed about elections
Which agency decides whether to go to doj or the federal court judges
What are the advantages or disadvantages of each agency?
Have we sent off the info to doj yet???? Jay said it would be sent off on the 21. Was it????
Redistricting
Add stats about texas. Increase in population. 4 additional congressional seats. Where was the area of growth? Where
should the 4 seats be. What areas lost population
Why is the SA panel involved? Lawsuit by?
You said the SA panel made more minority opportunity districts. Where and how?
Which members are now paired in the new map
Give a break down of what is going on in house & senate ( which members retiring, which members moving up(what are
they running for.
Then what happens next? All the scenarios. Will we redraw maps in 2013?
This info is for speeches to friendly groups. They want inside baseball stuff
Sent from my iPad
5

**Defendant's Exhibit #**
049

DE-000322

USA_00008116

PL573
9/2/2014
2:13-cv-00193

## Colby Beuck

| | |
|---|---|
| **From:** | Jessica Gomez [jgomez@Advocacyinc.org] |
| **Sent:** | Friday, February 25, 2011 7:21 PM |
| **To:** | Colby Beuck |
| **Subject:** | 50% va disability & social security disability |
| **Attachments:** | va ratings for unemployability.doc |

Hi Colby,

I did some research on the VA disability ratings. Since the threshold for social security disability is proving that you can't work, I looked at what the VA disability ratings were for those who are unemployable because of their disability. If you are unemployable, you automatically have a VA rating of at least 60%, possible more if you have more than one disability. I think that means that those on social security would rate at least 50% on the VA disability scale – so we are on the right track providing the exemption for those that receive ss or va benefits. However, this is definitely a rating used only by the military and others with disabilities won't be familiar with it, or know what their rating is. So I would suggest saying you that you meet the exemption if you receive social security benefits OR have a VA disability rating of at least 50%. I'm attaching the ratings research, which I found here, halfway down the page under "General Policy in Rating" http://www.benefits.va.gov/warms/bookc.asp

In addition, I think we should make sure that people who are already registered to vote and are eligible for the exemption can receive a new voter registration card with an indication that they have the exemption.

I'm also a little worried that some members might have a problem with the affidavit in place of providing documentation. Have you talked with other committee members about the exemption? I have a little bit of a sense of where the opposition might come from since I talked with many members' office about the exemption this week. Call me if you'd like to discuss.

Thanks again for your work on this!

Jessica Gomez
Voting Rights Policy Specialist
Advocacy, Inc (soon to be Disability Rights Texas)
7800 Shoal Creek Blvd
Austin, TX 78757
512.407.2732

1

**Defendant's Exhibit #**
050

TX_00007207
DE-000323

USA_00008117



7800 Shoal Creek Blvd
Austin, TX  78757
voice/tdd: 512.454.4816
intake: 800.252.9108
fax: 512.323.0902
jgomez@advocacyinc.org
www.advocacyinc.org

**Voter ID Disability Exemption**

The disability exemption in SB 14 currently reads:

```
(i)  An applicant who wishes to receive an exemption on the basis of
disability from the requirements of Section 63.001(b) must include a
certification from a physician that the person has a disability as
defined by Section 21.002, Labor Code, with the person's application.

SECTION 2.  Section 15.001, Election Code, is amended by adding
Subsection (c) to read as follows:

(c)  A certificate issued to a voter who meets the certification
requirements of Section 13.002(i) must contain an indication that the
voter is exempt from the requirement to present identification other
than the registration certificate before being accepted for voting.
```

**Why is the exemption needed?**
- Transportation
  - Many people with disabilities do not drive, and therefore do not have driver's licenses
  - Public transportation is not available in rural areas, making it difficult to get to a DPS office to obtain photo ID
- Fixed Incomes
  - Many people with disabilities live on very low, fixed incomes, making the cost of obtaining supporting documents (such as a birth certificate) prohibitive
- Institutional Residents
  - Many people with disabilities live in institutional settings, where it is often unnecessary to have a photo ID and is difficult to obtain one
- Physical Immobility
  - Some people have severe physical disabilities that confine them to their homes or relatives' homes
- Low Voter Turnout
  - People with disabilities are already less likely to vote because of perceived barriers

**Problems with the current exemption:**
- Some members have expressed confusion about the exemption, the definition of disability, and who would be eligible to receive the exemption.
- Obtaining a physician's certification of disability can be difficult and potentially costly.

**Defendant's Exhibit #**
050

TX_00007208

DE-000324

USA_00008118

PL574
9/2/2014
2:13-cv-00193

<< TX_00012329 >>

11
Ashley Kaden
From: Andrew Blifford
Sent: Monday, September 12, 20114:08 PM
To: Ashley Kaden
Subject: RE: Prep for SJS
Attachments: SJS prep for 9 19 11 Dallas event(AB Edits).docx
See if this works.
From: Ashley Kaden
Sent: Monday, September 12, 2011 1:41 PM
To: Andrew Blifford
Subject: FW: Prep for S]S
And attached is what I have put together so far:
Ashley Kaden
Speaker Joe Straus
Capitol Building 1W.15
Phone: 512-463-0921
Email: Ashley.Kaden@speaker.state.tx.us
From: Ashley Kaden
Sent: Monday, September 12, 2011 1:40 PM
To: Andrew Blifford
Subject: FW: Prep for S]S
Thanks for being my dear friend.
Ashley Kaden
Speaker Joe Straus
Capitol Building 1 W.15
Phone: 512-463-0921
Email: Ashley.Kaden@speaker.state.tx.us
From: Ashley Kaden
Sent: Wednesday, September 07, 2011 3:48 PM
To: ]on Schnautz; Craig Chick; Meredyth Fowler; Gerardo Interiano
Subject: Prep for S]S
Hi,
SJS is going to an event in Dallas and I need your help getting him ready.
I need 3-5 bullets on the following topics- and yes- you can recycle from previous info
you've sent me.
• Immigration/Sanctuary Cities
• Voter ID
• TSA bill
• Budget
• 10th Amendment stuff
Assuming a lot of this will be recycled info, can you have to me by noon on Friday?
1

**Defendant's Exhibit #**
056

DE-000337

USA_00008131

<< TX_00012330 >>

Thanks,
Ashley Kaden
Speaker Joe Straus
Capitol Building 1W.15
Phone: 512-463-0921
Email: Ashley. Kaden@speaker.state. tx.us
2

**Defendant's Exhibit #**
056

DE-000338

USA_00008132

<< TX_00012331 >>

SJS Prep for 9.19.11 Event
Voter ID
• Texas passed arguably the strictest voter Id law in the nation during the 82nd Legislative
Session. This legislation will help both prevent and deter voter fraud in Texas elections. The
legislation requires an individual to present a photo Id in order to vote which are:
o A driver's license, election ID certificate, or personal ID card issued to the person by the
Department of Public Safety (i.e., an election certificate issued to a person 70 years or
older does not expire);
TSA legislation
• Speaker's Comments before changes requested by the AG and Law Enforcement groups were
made and accepted on the TSA bill: "Without some serious revisions, it appears to me to be
nothing more than an ill-advised publicity stunt (because it would have been overturned in court
without the changes that the AG requested).
• .....Unenforceable, ill-advised, misdirected at uniform security personnel. It should have been
directed at Washington DC, with the bosses of these people.
• TSA bill was put on the call on June 20th - less than 10 days until end of the special session.
Budget
• Balanced budget without raising taxes or raiding the Rainy Day Fund. This budget was the result
of work that began more than a year ago, directing agencies to cut spending immediately.
• Reduced total spending by more than $15 billion, or 8.1%. Reduced state general revenue
spending by $1.6 billion, or 2%.
• Despite the reductions, spending was prioritized for essential services, like education and border
security.
• State spending for the Foundation School Program - core funding for public education -
increased by $1.6 billion.
• Funding for border security increased by $221 million.
10th Amendment
• Without question, there was more emphasis and interest on 10th Amendment issues and state
sovereignty than in any recent session of the Legislature.
• The Texas House was one of the only legislative bodies in the country to designate a specific,
select committee on these issues-the Select Committee on State Sovereignty, chaired by Rep.
Creighton.
• The committee considered and discussed 10th Amendment initiatives on topics ranging from
the environment to health care to family law.
• Through the committee's work and that of Public Health Chair Kolkhorst, Texas became one of
four states so far to adopt the Interstate Health Care Compact-an initiative that could bring
almost all health care policymaking to the state level.
• Select Committee on State Sovereignty - I created this committee for the 82nd session....

**Defendant's Exhibit #**
056

DE-000339

USA_00008133

<< TX_00012332 >>

• Speaker's Statement on HCR 50: Serious concerns about impact of federal legislation on Texans
and on state budget - which adds unsustainable requirements that affect Texas' ability to govern
itself.
• SUCCESS: SB 18 - Eminent Domain
Immigration
• Real problem -- homeland security issue
Federal government has dropped the ball
• In 1997 Texas sued the federal government for cost associated with a lack of immigration enforcement -- Texas v. United States brought by then Gov. Bush
• Texas claimed a lack of enforcement of immigration laws require state to pay billions in social services to undocumented immigrants.
• 5th Circuit dismissed the case stating, immigration is a non-justiciable political question
that cannot be second-guessed by the courts.
• State's handcuffed from taking action because of AZ decision
House is reviewing the AZ decision to determine legality of law and the court's findings
However, STATES CAN MAKE A DIFFERENCE:
• Can beef up law enforcement on the border - Texas has already put $220 million into border security over the last 4 years
• Costs of services and benefits to illegal immigrants is being analyzed to ascertain the real cost to state and local governments
• Biggest cost drivers are criminal incarceration & indigent healthcare
• Many counties, including Smith, do not track this data
• Denton County comparison:
• spends 4.5% ( $71,500) of budget on healthcare (2009-10)
• $2.1 million on the detention
• Restrictions on sanctuary cities
Many states are looking at use of E-verify to eliminate the employment of illegal aliens.
• E-verify is a federal database used by businesses to verify the immigration status to new employees. Arizona requires the use of E-verification for all businesses.
• Federal government's own report shows E-verify is wrong 54% of the time due to identity fraud
• Federal law also prohibits a business from verifying current employees through E-verify which renders it useless for illegals who are already employed
• Federal law does not provide a participating businesses with protection from fines and penalty if the system provides incorrect approval of an illegal.
• According to the NCSL, 18 states require employers to use e-verify. Most states require its use for all public employees and contractors/subcontractors with government contracts.

**Defendant's Exhibit #**
056

DE-000340

USA_00008134

<< TX_00012333 >>

• If State's are pre-empted from taking action to address immigration, the federal government
must comprehensively address the issue of immigration and the failed system in place.
Regular & Special Session Immigration Bills
• During the special session, the House inserted sanctuary city language into SB 1(fiscal matters
bill), however Senator Duncan refused to allow Senate conferees to approve the language in the
bill's enacted version.
• During the regular session, the House passed five different immigration related bills. The Senate
failed to act on any of these bills.
o HB 12 -- Sanctuary City bill
o HB 197 -- Required a person applying for any state license to provide documentation of
citizenship.
o HB 804 -- Clarified the offense of illegal voting by a person who is not a U.S. citizen.
o HB 875 -- required a sheriff or other officer in charge of a correctional facility to make a
reasonable effort to verify the immigration status of a prisoner charged with a felony or
intoxication offense before they are release on bail.
o HB 892 -- Created an offense for the transport (smuggling) of an illegal alien.

**Defendant's Exhibit #**
056

DE-000341

USA_00008135

PL575
9/2/2014

Victory in the Texas Senate

Dan Patrick eNews

Click Here to donate

Home

Donate

Send Comments

# Dan Patrick
## Senator ★ District 7

**Dear friend,**

January 14, will be recorded as a landmark day in the history of the Texas Senate. For it was on that day that 18 Republicans voted in favor of changing the two-thirds rule as it relates to special orders. This will allow the passage of Voter Identification legislation through the Texas Senate.

While Democrats suggest this is a step backward in Senate traditions, I believe this is a major step forward for the people of Texas. During the 80th Session, Democrats took advantage of the two-thirds rule by blocking the passage of voter identification legislation. The people of Texas do not want gridlock in the Texas Senate on issues important to them.

Today, Senate Republicans broke the gridlock on this important issue. The two-thirds rule has too often stopped the Texas Senate from addressing such key issues. Requiring two-thirds of the Senate to pass controversial bills only frustrates the will of the majority of Texans.

I believe the two-thirds rule should be changed to a three-fifths majority for bringing all bills to the floor. Today's rule change is a great first step toward accomplishing the will of the people.

Two years ago, in a vote to change the rules, I was the sole opponent to the two-thirds rule practice. Today, I was proud to join 17 Republicans in achieving this major reform.

Watch the debate for yourself. Click here.

http://hosted-p0.vresp.com/251553/62819004cb/ARCHIVE                4/4/2012

Defendant's Exhibit # 061

DE-000436

TX_00013505

USA_00008230

The entire video is worth watching, but to view a
summary of the day's proceedings forward to these
times stamps:

3:38 (5 minutes) - Sen. Dan Patrick (R-Houston) -
"This is a proud day in the Senate."

3:51 (4 minutes) - Sen. Judith Zaffirini (D-Laredo) -
"Two winners today...Sen. Patrick and the State
Republican Party."

**Please us the "forward to a friend" option to reach
others who may find this information helpful.**

**Disclaimer:** You are receiving this email as a public service
from Senator Dan Patrick.  Should you decide you do not want to
receive future informational emails from Senator Patrick you may
click on the "unsubscribe" link below.

**pd pol ad Dan Patrick Campaign**

**Post Office Box 70073 ★ Houston,Texas77270 ★ 281-500-4665 ★ 281-667-3120 (fax)**



http://hosted-p0.vresp.com/251553/62819004cb/ARCHIVE                    4/4/2012

TX_00013506

**Defendant's Exhibit #**
061                          DE-000437

USA_00008231