Weldon G. Berger  
Chairman, Board of Commissioners  
Post Office Box 810  
Taylor, Texas 76574

3 DEC 1979

Dear Mr. Berger:

    This is in reference to the polling place change implemented by the City of Taylor, Williamson County, Texas, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended. Your submission was completed on October 2, 1979.

    We have given careful consideration to the information provided in your submission and that received from other interested parties. Our analysis reveals that the City Hall polling site was centrally located and accessible to all the voters in the city, while the National Guard Armory is located approximately ten to twelve blocks north of City Hall in a predominantly white area, a significant inconvenience to the city's minority voters who appear to be concentrated in the southern and southwestern portions of the city. It also appears that the change may have had the effect of deterring participation by some minority voters in elections subsequent to this change. For example, three minority candidates ran and 2,231 votes were cast in the 1972 election held at City Hall. In 1973, the first election year in which the Armory was used as a polling site, no minorities participated as candidates and only 717 votes were cast. By contrast, in 1974, when election activity was again shifted to City Hall, a minority candidate participated and 1,599 votes were cast.

Defendant's Exhibit #

DE-006203

USA_00013270

- 2 -

Under Section 5 of the Voting Rights Act the submitting authority has the burden of proving that a submitted change has no discriminatory purpose or effect. See, e.g., Georgia v. United States, 411 U.S. 536 (1973); 28 C.F.R. 51.19. In light of the considerations discussed above, we cannot conclude that the change to the use of the National Guard Armory as the city's exclusive polling place does not have the effect of discriminating on account of race, color, or membership in a language minority group. Therefore, on behalf of the Attorney General, I must interpose an objection to the implementation of the polling place change.

Of course, as provided by Section 5 of the Voting Rights Act, you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that this change has neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. In addition, the Procedures for the Administration of Section 5 (28 C.F.R. 51.21(b) and (c), 51.23, and 51.24) permit you to request the Attorney General to reconsider the objection. However, until the objection is withdrawn or the judgment from the District of Columbia Court obtained, the effect of the objection by the Attorney General is to make the polling place change legally unenforceable.

While we understand the city's desire to provide for its voters a voting site with ample parking and shelter, we note that there are alternatives that may have not been considered. The use of the National Guard Armory as an additional site, for example, or a change to two other sites accessible to voters residing in both the northern and southern portions of the city would meet the city's need to remove election activities from City Hall without adversely affecting minority voters. If the city decides to submit such a change, the Attorney General may reconsider his objection.

Defendant's Exhibit #

DE-006204

USA_00013271

- 3 -

To enable this Department to meet its responsiblity to enforce the Voting Rights Act, please inform us within twenty days of your receipt of this letter what course of action the City of Taylor plans to take with respect to this matter. If you have any questions concerning this letter, please feel free to call Elda Gordon (202--724-6675) of our staff, who has been assigned to handle this submission.

                              Sincerely,

                              DREW S. DAYS III
                              Assistant Attorney General
                              Civil Rights Division

Defendant's Exhibit #
DE-006205
USA_00013272

Robert C. Kochl, Esq.
County Attorney
Post Office Box 158
Jourdanton, Texas 78026

7 DEC 1979

Dear Mr. Kochl:

This is in reference to the redistricting of Commissioner, Justice of the Peace and Constable Districts by the County of Atascosa, Texas, received by us on December 6, 1976, for the Attorney General's consideration pursuant to Section 5 of the Voting Rights Act of 1965, as amended.

Our records indicate that, to date, the submission of these changes has not been completed in spite of our letters dated January 26, 1977, and August 11, 1977, in which we requested information and clarification necessary to complete our review. (Copies of our letters are attached.) Specifically, answers to our inquiries concerning the demography of the commissioners' precincts, the discrepancy detailed in question No. 4 of our August 11, 1977 letter and the results of elections in which minority candidates participated (question No. 9, letter dated January 26, 1977) would have enabled us to evaluate the proposed plan on its own merits, as well as compare it to the pre-existing districts, and would have allowed us to study the voting patterns in Atascosa County in order to assess the effect of the submitted plan on minority voters. Failure of the County to provide this information has not allowed us to discharge this responsibility.

Under Section 5 of the Voting Rights Act the submitting authority has the burden of proving that a submitted change has no discriminatory purpose or effect. See, e.g., Georgia v. United States, 411 U.S. 526 (1973); 28 C.F.R. 51.19. In

Defendant's Exhibit #　　　　　　　　　　　　　　　　　　　DE-006206

USA_00013273

failing to provide the Attorney General with the information necessary for the proper evaluation of your submission, you have failed to sustain your burden of proof. Therefore, on behalf of the Attorney General, I must object to the submitted changes.

Of course, as provided by Section 5 of the Voting Rights Act you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that those changes have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. In addition, the Procedures for the Administration of Section 5 (28 C.F.R. 51.21(b) and (c), 51.23, and 51.24) permit you to request the Attorney General to reconsider the objection and, in this instance, we will reconsider the matter upon receipt of the additional information we previously have requested. However, until the objection is withdrawn or the judgment from the District of Columbia Court obtained, the effect of the objection by the Attorney General is to make the redistricting of Commissioner, Justice of the Peace and Constable Districts by Atascosa County, Texas legally unenforceable.

To enable this Department to meet its responsibility to enforce the Voting Rights Act, please inform us within twenty days of your receipt of this letter what course of action Atascosa County plans to take with respect to this matter. If you have any questions concerning this letter, please feel free to call Ms. Hilda Gordon (202-724-6675) of our staff, who has been assigned to handle this submission.

Sincerely,

DREW S. DAYS III
Assistant Attorney General
Civil Rights Division

Defendant's Exhibit #    DE-006207

USA_00013274

Robert C. Koehl, Esq.
County Attorney
Post Office Box 155
Jourdanton, Texas 78026

7 DEC 1979

Dear Mr. Koehl:

This is in reference to the redistricting of Commissioner, Justice of the Peace and Constable Districts by the County of Atascosa, Texas, received by us on December 3, 1976, for the Attorney General's consideration pursuant to Section 5 of the Voting Rights Act of 1965, as amended.

Our records indicate that, to date, the submission of these changes has not been completed in spite of our letters dated January 26, 1977, and August 11, 1977, in which we requested information and clarification necessary to complete our review. (Copies of our letters are attached.) Specifically, answers to our inquiries concerning the demography of the commissioners' precincts, the discrepancy detailed in question No. 4 of our August 11, 1977 letter and the results of elections in which minority candidates participated (question No. 3, letter dated January 26, 1977) would have enabled us to evaluate the proposed plan on its own merits, as well as compare it to the pre-existing districts, and would have allowed us to study the voting patterns in Atascosa County in order to assess the effect of the submitted plan on minority voters. Failure of the County to provide this information has not allowed us to discharge this responsibility.

Under Section 5 of the Voting Rights Act the submitting authority has the burden of proving that a submitted change has no discriminatory purpose or effect. See, e.g., Georgia v United States, 411 U.S. 526 (1973); 28 C.F.R. 51.19. In

- 2 -

failing to provide the Attorney General with the information necessary for the proper evaluation of your submission, you have failed to sustain your burden of proof. Therefore, on behalf of the Attorney General, I must object to the submitted changes.

Of course, as provided by Section 5 of the Voting Rights Act you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that these changes have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. In addition, the Procedures for the Administration of Section 5 (28 C.F.R. 51.21(b) and (c), 51.23, and 51.24) permit you to request the Attorney General to reconsider the objection and, in this instance, we will reconsider the matter upon receipt of the additional information we previously have requested. However, until the objection is withdrawn or the judgment from the District of Columbia Court obtained, the effect of the objection by the Attorney General is to make the redistricting of Commissioner, Justice of the Peace and Constable Districts by Atascosa County, Texas legally unenforceable.

To enable this Department to meet its responsibility to enforce the Voting Rights Act, please inform us within twenty days of your receipt of this letter what course of action Atascosa County plans to take with respect to this matter. If you have any questions concerning this letter, please feel free to call Ms. Elda Gordon (202--724-6475) of our staff, who has been assigned to handle this submission.

Sincerely,

DREW S. DAYS III
Assistant Attorney General
Civil Rights Division

Defendant's Exhibit #    DE-006209

USA_00013276

2 1 DEC 1979

George Wikoff, Esq.
City Attorney
City of Port Arthur
P. O. Box 1089
Port Arthur, Texas 77640

Dear Mr. Wikoff:

This is in reference to the referendum election on collective bargaining (Ordinance No. 79-108) scheduled for January 19, 1980, in the City of Port Arthur, Jefferson County, Texas, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended. Your submission was received on November 20, 1979.

On March 24, 1978, an objection was interposed on behalf of the Attorney General to voting changes occasioned by the consolidation of the Cities of Lakeview, Pear Ridge and Port Arthur. The basis for this objection was the dilutive effect on minority voting strength.

It is our position that Section 5 requires that no election in which the voting changes occasioned by the consolidation are to be implemented, except elections likely to provide a basis for curing the dilutive effects of the consolidation, may be conducted by the City of Port Arthur until this objection is removed.

The special referendum election called for January 19, 1980, does not have the potential for remedying the objection interposed on March 24, 1978. It would, however, permit persons living in Pear Ridge and Lakeview—the areas whose consolidation with Port Arthur has been objected to—to vote along with residents of the pre-consolidation city. Under the circumstances, this would constitute a violation of Section 5. Accordingly, on behalf of the Attorney General I must object to the submitted referendum election.

cc: Public File

Defendant's Exhibit #

DE-006210

USA_00013277

Of course, as provided by Section 5 of the Voting Rights Act, you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that this change has neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. In addition, the Procedures for the Administration of Section 5 (28 C.F.R. 51.21(b) and (c), 51.23, and 51.24) permit you to request the Attorney General to reconsider the objection. However, until the objection is withdrawn or the judgment from the District of Columbia Court obtained, the effect of the objection by the Attorney General is to make the referendum election legally unenforceable.

To enable this Department to meet its responsibility to enforce the Voting Rights Act, please inform us within twenty days of your receipt of this letter what course of action the City of Port Arthur plans to take with respect to this matter. If you have any questions concerning this letter, please feel free to call Mr. Jess Vigil (202/724-6676) of our staff, who has been assigned to handle this submission. Please refer to File No. C7763 in any written response to this letter so that your correspondence will be properly channeled.

Sincerely,

Drew S. Days III
Assistant Attorney General
Civil Rights Division

DEC 27 1979

Knox W. Askins, Esq.
City Attorney
Post Office Box 1115
La Porte, Texas  77571

Dear Mr. Askins:

This is in reference to the revisions of the Home Rule Charter for the City of La Porte, Harris County, Texas, to provide for a council elected to three-year staggered terms with a majority-vote requirement from four single-member districts and three designated at-large posts, and the apportionment plan for the four single-member districts, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended. Your submission of the charter revisions was completed on November 1, 1979, and your submission of the apportionment plan was received on October 30, 1979.

Under Section 5, the City of La Porte has the burden of proving that the proposed electoral system does not represent a retrogression in the position of either the black or Spanish-language residents of the city, and that it does not transgress constitutional limits with respect to either group. See Beer v. United States, 425 U.S. 150 (1976). See also 28 C.F.R. 51.19. Under White v. Regester, 412 U.S. 755, 766 (1973), to prove the constitutionality of its system the city must prove that the electoral system is equally open to black, Spanish-language and white voters, and that each group has a fair opportunity to elect candidates of its choice.

We have given careful consideration to the information you have provided as well as to comments and information provided by other interested parties. In addition to other evidence of a general pattern of racially polarized voting in La Porte, we have noted particularly the fact that, in spite of a number of black candidacies, no black person has ever won election to the La Porte municipal governing body. We have been presented with and have considered information evidencing a lack

cc: Public File

Defendant's Exhibit #          DE-006212

USA_00013279

- 2 -

of responsiveness on the part of elected officials to the needs of the black community; depressed socioeconomic conditions in the black community which make participation in the political process difficult; and the presence of majority-vote and designated-post requirements for municipal elections.

On the basis of our review, it does not appear that the system adopted by the city would offer black voters a fair opportunity to elect representatives of their choice. At the same time, the city has rejected alternative systems which would offer such an opportunity. For example, our analysis shows that an alteration of district lines under the proposed four single-member district system so as to avoid the combination of the widely separated and dissimilar Northside and Fairmont Park areas could produce a district in which the minority population would be substantially larger than that of any district in the submitted plan. Similarly, we note that a plan of six single-member districts was presented to the city which provided for one district in which black and Spanish-language voters would form a majority of 57 percent, and our own review has revealed that a significantly larger majority (over 62 percent) can be achieved under such a plan without any resort to maximization of minority voting strength. The selection by the City of La Porte of a system which would retain black voting strength at a minimum level, where alternative options would provide a fair chance for black representation, is relevant to the question of an impermissible racial purpose in its adoption. See Wilkes County v. United States, 450 F. Supp. 1171 (D. D.C. 1978).

Under the circumstances we are unable to conclude, as we must under Section 5, that the changes would not have a racially discriminatory purpose or effect. Accordingly, I must, on behalf of the Attorney General, interpose an objection to the charter revisions and to the proposed apportionment plan.

Of course, as provided by Section 5 of the Voting Rights Act you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that these changes have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority gorup. In addition, the Procedures for the Adminis-

Defendant's Exhibit #

DE-006213

USA_00013280

tration of Section 5 (28 C.F.R. 51.21(b) and (c), 51.23, and 51.24) permit you to request the Attorney General to reconsider the objection. However, until the objection is withdrawn or the judgment from the District of Columbia Court obtained, the effect of the objection by the Attorney General is to make the charter revisions and apportionment plan legally unenforceable.

To enable this Department to meet its responsiblity to enforce the Voting Rights Act, please inform us within twenty days of your receipt of this letter what course of action the City of La Porte plans to take with respect to this matter. If you have any questions concerning this letter, please feel free to call Mr. John K. Tanner (202-- 724-7399) of our staff, who has been assigned to handle this submission. Please refer to File Nos. C5780-5784 and C7574 in any written response to this letter so that your correspondence will be properly channeled.

Sincerely,

Drew S. Days III
Assistant Attorney General
Civil Rights Division

Defendant's Exhibit #    DE-006214

USA_00013281