Veasey000342

PL835
9/2/2014
2:13-cv-00193



TEXT ONLY

Search

ONLINE SEARCHES
LOCATIONS
OBTAINING DOCUMENTS
FEE SCHEDULES
ASSUMED NAMES
BIRTH & DEATH RECORDS
CIVIL
CRIMINAL
MARRIAGE LICENSE
MILITARY DISCHARGE
OPR / DEED RECORDS
PROBATE
COUNTY CLERK
HOME

LOGIN
REGISTER



Tarrant County Jail

## Obtaining Documents

### Certified Copy of a Marriage License

**Sign Up Now!**



Certified copies of marriage licenses issued and filed in Tarrant County can be purchased by mail or in person at any of the Tarrant County Clerk office locations.

Link to Tarrant County Clerk Office Locations

The fee is $21.00 for one copy and $10.00 for each additional copy purchased at the same time.

**HOURS OF OPERATION:**

Monday-Friday      8:00 AM -- 5:00 PM

Mail requests may be mailed with a self-addressed stamped envelope and a check or money order made payable to Tarrant County Clerk.

Please include the date of marriage and the full names of the bride and groom as they appear on the marriage license.

**MAILING ADDRESS:**

Tarrant County Clerk
200 Taylor St., Ste. 301
Fort Worth, TX  76196

**Persuant with Texas Administrative Code, Title 25, Part 1, Chapter 181, Subchapter B, Rule §181.22, a $20 fee to search and verify a marriage record will be retained if no record is found.  To avoid this fee, you may search the Tarrant County marriage license index or search the State of Texas index prior to submitting a request.**

Content Last Modified on 6/18/2012 1:52:34 PM

Browse   Search   Back   Printable Version   Previous   Next

Veasey000342

**County Clerk Main Office:**
Tarrant County Courthouse
Room 130
100 West Weatherford, Fort Worth, Texas 76196
Telephone: (817) 884-1195

Hours of Operation: Monday - Friday 8:00 am - 5:00 pm

Please send questions and comments regarding the County Clerk web site to Tarrant County Webmaster.

Privacy Policy  |  Accessibility Statement  |  Media Inquiries
Technical (Web) Issues   |   General Information   |   Web Site Awards

Request for Documents under the Public Information Act

## County Telephone Operator: 817- 884-1111

Tarrant County provides the information contained in this web site as a public service. Every effort is made to ensure that information provided is correct. However, in any case where legal reliance on information contained in these pages is required, the official records of Tarrant County should be consulted. Tarrant County is not responsible for the content of, nor endorses any site which has a link from the Tarrant County web site.

100 E. Weatherford, Fort Worth, Texas 76196
Copyright 2001-2005 Tarrant County, TX

PL836
9/2/2014
2:13-cv-00193
Veasey000440

**Walker County Clerk**
**Kari A. French**
1100 University Avenue, Suite 201
Huntsville, Texas 77340
936-436-4922   Fax 936-436-4928
www.co.walker.tx.us

Mary Harper, Chief Deputy 936-436-4904
Birth & Death - Vitals: 936-436-4905
Brands, DBA, Marriage License: 936-436-4976
Civil County Court-at-Law: 936-436-4901
Probate County Court-at-Law: 936-436-4974
Criminal Misdemeanor: 936-436-4967/4902
Deeds & Records Management: 936-436-4924/4698
Recording: 936-436-4903

# VITAL RECORDS FEE SCHEDULE - - Effective - September 1, 2013

| BIRTH | Total Cost | Legal/Statue |
|---|---|---|
| Birth Certificate | $ 23.00 | Health & Safety Code  191.0045 |
| Additional Copy of Birth (each) | $ 23.00 | Health & Safety Code  191.0045 |
| Birth Verification Letter | $ 18.00 | LGC 118.011 a3 & HSC 191.0045 e |
| Court Order Delayed Birth | $ 27.00 | TX Administrative Code 181.22 (m) |
| Birth (Search by clerk) | $ 6.00 | TX Administrative Code 181.22 ( c) |

| DEATH | Total Cost | Legal/Statue |
|---|---|---|
| Death Certificate | $ 21.00 | Health & Safety Code  191.0045 |
| Additional Copy of Death (each) | $ 4.00 | Health & Safety Code  191.0045 |
| Death Verification Letter | $ 16.00 | LGC 118.011 a3 & HSC 191.0045 e |
| Court Order Delayed Death | $ 25.00 | TX Administrative Code 181.22 (m) |
| Death (Search by clerk) | $ 6.00 | TX Administrative Code 181.22 ( c) |

| MARRIAGE | Total Cost | Legal/Statue |
|---|---|---|
| Marriage License | $ 82.00 | TX Local Government Code 118.018 |
| With Together Certificate | $ 22.00 | TX Local Government Code 118.018 |
| Declaration of Informal Marriage | $ 47.00 | TX Local Government Code 118.019 |
| Marriage Copy Certified | $ 37.00 | TX Local Government Code 118.018 |
| Marriage Search | $ 10.00 | TX Administrative Code 181.22 ( g) |

*Birth records are confidential for 75 years from the date of the event.*
*Texas Death Certificates are open to the public after 25 years from the date of the event.*

To see any birth/death certificate you have to complete an application, provide identification and pay a fee.
Birth and death certificates may be issued to immediate family members only. In addition, a certificate may be
obtained by a legal guardian, legal representative of the family, and organizations or governmental agencies.
A current government-issued picture identification is required to obtain a certified copy.

## *OBTAINING A MARRIAGE LICENSE*

Must be at least 18 years of age & **both parties must appear in person**.
**ONLY** Exception is Active Military Personnel.
Applicants must have valid, picture driver's license, state ID or passport.
Applicants must wait 72 hours after license is issued before being married.
Marriage License Expire 30 days from the date of issue.

*Accepted forms of payment include: cash, check, credit card (MasterCard, Visa and Amex).*

## ***ALL COPIES ARE CERTIFIED***

*Above Listed include the following fees:*
*Records Management and Preservation ($10) – TX LGC 118.018 / Court House Security ($1) - TX LGC 118.0216*
*Records Archive Fee ($10) - TX LGC 118.02/ Commissioners Court Approval 8/2011, 8/2012, 8/2013*
**For a Breakdown of the above listed Fees please see Excel Worksheets**

# Plaintiff Exhibit
# PL837

# FILED UNDER SEAL

# Plaintiff Exhibit
# PL838

# FILED UNDER SEAL

Plaintiff Exhibit
PL839

FILED UNDER SEAL

# Plaintiff Exhibit
# PL840

# FILED UNDER SEAL

By:  Brown of Kaufman, Berman, Bohac, Riddle,        H.B. No. 218
     et al.

A BILL TO BE ENTITLED

1                            AN ACT

2    relating to requiring a voter to present proof of identification.

3         BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

4         SECTION 1.  Section 13.122(a), Election Code, is amended to

5    read as follows:

6         (a)  In addition to the other statements and spaces for

7    entering information that appear on an officially prescribed

8    registration application form, each official form must include:

9              (1)  the statement:  "I understand that giving false

10   information to procure a voter registration is perjury and a crime

11   under state and federal law.";

12             (2)  a space for the applicant's registration number;

13             (3)  a space for the applicant's Texas driver's license

14   number or number of a personal identification card issued by the

15   Department of Public Safety;

16             (4)  a space for the applicant's telephone number;

17             (5)  a space for the applicant's social security

18   number;

19             (6)  a space for the applicant's sex;

20             (7)  a statement indicating that the furnishing of the

21   applicant's telephone number and sex is optional;

22             (8)  a space or box for indicating whether the

23   applicant or voter is submitting new registration information or a

24   change in current registration information;



H.B. No. 218

1          (9)  a statement instructing a voter who is using the
2    form to make a change in current registration information to enter
3    the voter's name and the changed information in the appropriate
4    spaces on the form;

5          (10)  a statement that if the applicant declines to
6    register to vote, that fact will remain confidential and will be
7    used only for voter registration purposes;

8          (11)  a statement that if the applicant does register
9    to vote, information regarding the agency or office to which the
10    application is submitted will remain confidential and will be used
11    only for voter registration purposes;

12          (12)  a  space  or  box  for  indicating  whether  the
13    applicant is interested in working as an election judge;

14          (13)  a statement warning that a conviction for making
15    a false statement may result in imprisonment for up to the maximum
16    amount of time provided by law, a fine of up to the maximum amount
17    provided by law, or both the imprisonment and the fine; [and]

18          (14)  a  space  or  box  for  indicating  whether  the
19    applicant served in the active military, naval, or air service, was
20    discharged or released from the service under conditions other than
21    dishonorable, and incurred or aggravated a disability in the line
22    of duty in that service;

23          (15)  a  space  or  box  for  indicating  whether  the
24    applicant is a widow or widower of a person who served in the active
25    military, naval, or air service; and

26          (16) [(14)]  any other voter registration information
27    required by federal law or considered appropriate and required by

2

H.B. No. 218

1   the secretary of state.

2       SECTION 2.  Section 15.001(a), Election Code, is amended to

3   read as follows:

4       (a)  Each  voter  registration  certificate  issued  must

5   contain:

6           (1)  the  voter's  name  in  the  form  indicated  by  the

7   voter, subject to applicable requirements prescribed by Section

8   13.002 and by rule of the secretary of state;

9           (2)  the voter's residence address or, if the residence

10  has no address, the address at which the voter receives mail and a

11  concise description of the location of the voter's residence;

12        (3)  the month, day, and year of the voter's birth;

13        (4)  the  number  of  the  county  election  precinct  in

14  which the voter resides;

15        (5)  the voter's effective date of registration if an

16  initial certificate;

17        (6)  the voter's registration number;

18        (7)  an  indication  of  the  period  for  which  the

19  certificate is issued;

20        (8)  a  statement  explaining  the  circumstances  under

21  which the voter will receive a new certificate;

22        (9)  a  space  for  stamping  the  voter's  political  party

23  affiliation;

24        (10)  a statement that voting with the certificate by a

25  person other than the person in whose name the certificate is issued

26  is a felony;

27        (11)  a space for the voter's signature;

H.B. No. 218

1            (12)  a  statement  that  the  voter  must  sign  the

2  certificate personally, if able to sign, immediately on receipt;

3            (13)  a space for the voter to correct the information

4  on the certificate followed by a signature line;

5            (14)  the  statement:  "If  any  information  on  this

6  certificate changes or is incorrect, correct the information in the

7  space  provided,  sign  below,  and  return  this  certificate  to  the

8  voter registrar."; [and]

9            (15)  the  registrar's  mailing  address  and  telephone

10  number;

11           (16)  an  indication  that  the  voter  is  a

12  "service-disabled veteran," if the voter stated on the voter's

13  registration application that the voter served in the active

14  military, naval, or air service, was discharged or released from

15  the service under conditions other than dishonorable, and incurred

16  or aggravated a disability in the line of duty in that service; and

17           (17)  an indication that the voter is a "military widow

18  or widower," if the voter stated on the voter's registration

19  application that the voter is a widow or widower of a person who

20  served in the active military, naval, or air service.

21        SECTION 3.  Section 32.111, Election Code, is amended by

22  adding Subsection (c) to read as follows:

23        (c)  The  training  standards  adopted  under  Subsection  (a)

24  must  include  provisions  on  the  acceptance  and  handling  of  the

25  identification presented by a voter to an election officer under

26  Section 63.001.

27        SECTION 4.  Section 32.114(a), Election Code, is amended to

4

H.B. No. 218

1  read as follows:

2      (a)  The county clerk shall provide one or more sessions of

3  training using the standardized training program and materials

4  developed and provided by the secretary of state under Section

5  32.111 for the election judges and clerks appointed to serve in

6  elections ordered by the governor or a county authority.   Each

7  election judge shall complete the training program.  Each election

8  clerk shall complete the part of the training program relating to

9  the acceptance and handling of the identification presented by a

10 voter to an election officer under Section 63.001.

11     SECTION 5.  As soon as practicable after the effective date

12 of this Act:

13     (1)  the secretary of state shall adopt the training

14 standards and develop the training materials required to implement

15 the change in law made by this Act to Section 32.111, Election Code;

16 and

17     (2)  the county clerk of each county shall provide a

18 session of training under Section 32.114, Election Code, using the

19 standards adopted and materials developed to implement the change

20 in law made by this Act to Section 32.111, Election Code.

21     SECTION 6.  Chapter 62, Election Code, is amended by adding

22 Section 62.016 to read as follows:

23     Sec. 62.016.  NOTICE OF ACCEPTABLE IDENTIFICATION OUTSIDE

24 POLLING PLACES.  The presiding judge shall post in a prominent place

25 on the outside of each polling location a list of the acceptable

26 forms of photographic and nonphotographic identification.   The

27 notice and list must be printed using a font that is at least

5

H.B. No. 218

1   24-point.

2        SECTION 7.  Section 63.001, Election Code, is amended  by

3   amending Subsections (b), (c), (d), and (f) and adding Subsections

4   (g), (h), (i), (j), and (k) to read as follows:

5        (b)  On offering to vote, a voter must present to an election

6   officer  at  the  polling  place  the  voter's  voter  registration

7   certificate  and,  except  as  provided  by  Subsection  (j)  or  (k)

8   either:

9             (1)  one  form  of  identification  listed  in  Section

10   63.0101(a); or

11            (2)  two different forms of identification listed  in

12   Section 63.0101(b) [to an election officer at the polling place].

13       (c)  On  presentation  of  the documentation  required  by

14   Subsection (b) [a registration certificate], an election officer

15   shall  determine  whether  the  voter's  name  on  the  registration

16   certificate is on the list of registered voters for the precinct.

17       (d)  If  the  voter's  name  is  on  the  precinct  list  of

18   registered voters and the voter's identity can be verified from the

19   proof presented, the voter shall be accepted for voting.

20       (f)  After determining whether to accept a voter, an election

21   officer  shall  return  the  voter's  documentation  [registration

22   certificate] to the voter.

23       (g)  If the requirements for identification prescribed by

24   Subsection  (b)  are  not  met,  the  voter  may  be  accepted  for

25   provisional voting only under Section 63.011.  An election officer

26   shall  inform  a  voter  who  is  not  accepted  for  voting  under  this

27   section  of  the  voter's  right  to  cast  a  provisional  ballot  under

6

H.B. No. 218

1    Section 63.011.

2        (h)  The  requirements  for  identification  prescribed  by

3    Subsection (b)(1) or (2) do not apply to a voter who:

4        (1)  presents  the  voter's  voter  registration

5    certificate on offering to vote; and

6        (2)  is 80 years of age or older as indicated by the

7    date of birth on the voter's voter registration certificate.

8        (i)  Notwithstanding Subsection (b), (c), (d), or (g), a

9    voter  shall  be  accepted  for  voting  after  presenting  a  voter

10   registration certificate or one form of identification listed in

11   Section 63.0101 if:

12       (1)  the voter's name on the registration certificate

13   or form of identification is on the list of registered voters for

14   the precinct;

15       (2)  the  precinct  is  located  in  a  county  that  the

16   governor proclaimed to be in a state of disaster under Section

17   418.014, Government Code, due to a weather-related event; and

18       (3)  the  date  of  the  election  is  before  the  first

19   anniversary of the date the state of disaster expires.

20       (j)  A voter who presents a voter registration certificate

21   indicating that the voter is a service-disabled veteran is not

22   required to provide any identification in addition to the voter's

23   voter registration certificate.

24       (k)  A voter who presents a voter registration certificate

25   indicating that the voter is a military widow or widower is not

26   required to provide any identification in addition to the voter's

27   voter registration certificate.

7

H.B. No. 218

1   SECTION 8. Section 63.006(a), Election Code, is amended to
2 read as follows:

3    (a) A voter who, when offering to vote, presents a voter
4 registration certificate indicating that the voter is currently
5 registered in the precinct in which the voter is offering to vote,
6 but whose name is not on the precinct list of registered voters,
7 shall be accepted for voting if the voter's identity can be verified
8 from the proof presented.

9   SECTION 9. Section 63.007(a), Election Code, is amended to
10 read as follows:

11    (a) A voter who, when offering to vote, presents a voter
12 registration certificate indicating that the voter is currently
13 registered in a different precinct from the one in which the voter
14 is offering to vote, and whose name is not on the precinct list of
15 registered voters, shall be accepted for voting if the voter's
16 identity can be verified from the proof presented and the voter
17 executes an affidavit stating that the voter:

18      (1) is a resident of the precinct in which the voter is
19 offering to vote or is otherwise entitled by law to vote in that
20 precinct;

21      (2) was a resident of the precinct in which the voter
22 is offering to vote at the time that information on the voter's
23 residence address was last provided to the voter registrar;

24      (3) did not deliberately provide false information to
25 secure registration in a precinct in which the voter does not
26 reside; and

27      (4) is voting only once in the election.

H.B. No. 218

1     SECTION 10.   Section 63.008(a), Election Code, is amended to

2    read as follows:

3     (a)  A voter who does not present a voter registration

4    certificate when offering to vote, but whose name is on the list of

5    registered voters for the precinct in which the voter is offering to

6    vote, shall be accepted for voting if the voter executes an

7    affidavit stating that the voter does not have the voter's voter

8    registration certificate in the voter's possession at the polling

9    place at the time of offering to vote and the voter's identity can

10   be verified from the proof presented [voter presents proof of

11   identification in a form described by Section 63.0101].

12     SECTION 11.   Section 63.0101, Election Code, is amended to

13   read as follows:

14     Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.

15   (a) The following documentation is an acceptable form [as proof] of

16   photo identification under this chapter:

17     (1)  a driver's license or personal identification card

18   issued to the person by the Department of Public Safety that has not

19   expired or that expired no earlier than two years before the date of

20   presentation [or a similar document issued to the person by an

21   agency of another state, regardless of whether the license or card

22   has expired];

23     (2)  a United States military identification card that

24   contains the person's photograph [form of identification

25   containing the person's photograph that establishes the person's

26   identity];

27     (3)  a valid employee identification card that contains

9

H.B. No. 218

1  the person's photograph and is issued by an employer of the person

2  in   the   ordinary   course   of   the   employer's   business   [birth

3  certificate or other document confirming birth that is admissible

4  in a court of law and establishes the person's identity];

5          (4)   a United States citizenship certificate [papers]

6  issued to the person that contains the person's photograph;

7          (5)   a United States passport issued to the person;

8          (6)   a student identification card issued by a public

9  or private institution of higher education located in the United

10  States   that   contains   the   person's   photograph   [official   mail

11  addressed to the person by name from a governmental entity];

12          (7)   a license to carry a concealed handgun issued to

13  the person by the Department of Public Safety; or

14          (8)   a   valid   identification   card   that   contains   the

15  person's photograph and is issued by:

16              (A)   an   agency   or   institution   of   the   federal

17  government; or

18              (B)   an   agency,   institution,   or   political

19  subdivision of this state.

20      (b)   The following documentation is acceptable as proof of

21  identification under this chapter:

22          (1)   a copy of a current utility bill, bank statement,

23  government check, paycheck, or other government document that shows

24  the name and address of the voter;

25          (2)   official mail addressed to the person by name from

26  a governmental entity;

27          (3)   a certified copy of a birth certificate or other

H.B. No. 218

1   document confirming birth that is admissible in a court of law and

2   establishes the person's identity;

3         (4)   United States citizenship papers issued to the

4   person;

5         (5)   an original or certified copy of the person's

6   marriage license or divorce decree;

7         (6)   court records of the person's adoption, name

8   change, or sex change;

9         (7)   an identification card issued to the person by a

10   governmental entity of this state or the United States for the

11   purpose of obtaining public benefits, including veteran's

12   benefits, Medicaid, or Medicare;

13         (8)   a temporary driving permit issued to the person by

14   the Department of Public Safety;

15         (9)   a pilot's license issued to the person by the

16   Federal Aviation Administration or another authorized agency of the

17   United States;

18         (10)   a library card that contains the person's name

19   issued to the person by a public library located in this state; or

20         (11)   a hunting or fishing license issued to a person by

21   the Parks and Wildlife Department [or

22         [(8)   any other form of identification prescribed by

23   the secretary of state].

24      SECTION 12.   Section 63.011(a), Election Code, is amended to

25   read as follows:

26      (a)   A person to whom Section 63.001(g), 63.008(b), or

27   63.009(a) applies may cast a provisional ballot if the person

H.B. No. 218

1   executes an affidavit stating that the person:

2          (1)  is a registered voter in the precinct in which the

3   person seeks to vote; and

4          (2)  is eligible to vote in the election.

5      SECTION 13.  Section  521.422,  Transportation  Code,  is

6   amended by amending Subsection (a) and adding Subsection (d) to

7   read as follows:

8      (a)  Except as provided by Subsection (d), the [The] fee for

9   a personal identification certificate is:

10         (1)  $15 for a person under 60 years of age;

11         (2)  $5 for a person 60 years of age or older; and

12         (3)  $20 for a person subject to the registration

13  requirements under Chapter 62, Code of Criminal Procedure.

14     (d)  The department may not collect a fee for a personal

15  identification certificate issued to a person who states that the

16  person is obtaining the personal identification certificate for the

17  sole purpose of satisfying Section 63.001(b)(1), Election Code,

18  and:

19         (1)  who is a registered voter in this state and

20  presents a valid voter registration certificate; or

21         (2)  who is eligible for registration under Section

22  13.001, Election Code, and submits a registration application to

23  the department.

24     SECTION 14.  The voter registrar of each county shall

25  provide notice of the change in identification requirements for

26  voting contained in this Act with each voter registration

27  certificate or renewal registration certificate issued on or before

12

H.B. No. 218

1   September 1, 2008.  The secretary of state shall prescribe the form

2   of the notice required under this section.

3        SECTION 15.  This Act takes effect September 1, 2007.

By:  Fraser, Estes                                    S.B. No. 362

A BILL TO BE ENTITLED

1                                AN ACT

2    relating to requiring a voter to present proof of identification.

3          BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

4          SECTION 1.  Subchapter A, Chapter 15, Election Code, is

5    amended by adding Section 15.005 to read as follows:

6          Sec. 15.005.  NOTICE OF IDENTIFICATION REQUIREMENTS.  (a)

7    The voter registrar of each county shall provide notice of the

8    identification requirements for voting prescribed by Chapter 63 and

9    a detailed description of those requirements with each voter

10   registration certificate issued under Section 13.142 or renewal

11   registration certificate issued under Section 14.001.

12         (b)  The secretary of state shall prescribe the wording of

13   the notice to be included on the certificate under this section.

14         SECTION 2.  Subchapter A, Chapter 31, Election Code, is

15   amended by adding Section 31.012 to read as follows:

16         Sec. 31.012.  VOTER IDENTIFICATION EDUCATION.  The secretary

17   of state and the voter registrar of each county that maintains a

18   website shall provide notice of the identification requirements for

19   voting prescribed by Chapter 63 on each entity's respective

20   website.  The secretary of state shall prescribe the wording of the

21   notice to be included on the websites.

22         SECTION 3.  Section 32.111, Election Code, is amended by

23   adding Subsection (c) to read as follows:

24         (c)  The training standards adopted under Subsection (a)

81R3524 JRJ-D                         1



S.B. No. 362

1   must include provisions on the acceptance and handling of the

2   identification presented by a voter to an election officer under

3   Section 63.001.

4       SECTION 4.   Section 32.114(a), Election Code, is amended to

5   read as follows:

6       (a)   The county clerk shall provide one or more sessions of

7   training using the standardized training program and materials

8   developed and provided by the secretary of state under Section

9   32.111 for the election judges and clerks appointed to serve in

10   elections ordered by the governor or a county authority.   Each

11   election judge shall complete the training program.  Each election

12   clerk shall complete the part of the training program relating to

13   the acceptance and handling of the identification presented by a

14   voter to an election officer under Section 63.001.

15       SECTION 5.   Chapter 62, Election Code, is amended by adding

16   Section 62.016 to read as follows:

17       Sec. 62.016.   NOTICE OF ACCEPTABLE IDENTIFICATION OUTSIDE

18   POLLING PLACES. The presiding judge shall post in a prominent place

19   on the outside of each polling location a list of the acceptable

20   forms of photographic and nonphotographic identification.   The

21   notice and list must be printed using a font that is at least

22   24-point.

23       SECTION 6.   Section 63.001, Election Code, is amended by

24   amending Subsections (b), (c), (d), and (f) and adding Subsection

25   (g) to read as follows:

26       (b)   On offering to vote, a voter must present to an election

27   officer at the polling place the voter's voter registration

2

S.B. No. 362

1    certificate and either:

2         (1)  one form of  identification listed  in  Section

3    63.0101(a); or

4         (2)  two different forms of  identification listed  in

5    Section 63.0101(b) [to an election officer at the polling place].

6         (c)  On  presentation of  the documentation  required  by

7    Subsection (b) [a registration certificate], an election officer

8    shall  determine  whether  the  voter's name  on  the  registration

9    certificate is on the list of registered voters for the precinct.

10        (d)  If  the  voter's  name  is  on  the  precinct  list  of

11   registered voters and the voter's identity can be verified from the

12   documentation presented under Subsection (b), the voter shall be

13   accepted for voting.

14        (f)  After determining whether to accept a voter, an election

15   officer  shall  return  the  voter's  documentation  [registration

16   certificate] to the voter.

17        (g)  If the requirements for identification prescribed by

18   Subsection (b)  are  not  met,  the  voter  may  be  accepted  for

19   provisional voting only under Section 63.011. An election officer

20   shall  inform  a  voter  who  is  not  accepted  for  voting  under  this

21   section of the voter's right to cast a provisional ballot under

22   Section 63.011.

23        SECTION 7.   Section 63.006(a), Election Code, is amended to

24   read as follows:

25        (a)  A voter who, when offering to vote, presents a voter

26   registration certificate indicating that the voter is currently

27   registered in the precinct in which the voter is offering to vote,

3

S.B. No. 362

1   but whose name is not on the precinct list of registered voters,
2   shall be accepted for voting if the voter's identity can be verified
3   from the documentation presented under Section 63.001(b).

4        SECTION 8.   Section 63.007(a), Election Code, is amended to
5   read as follows:

6        (a)   A voter who, when offering to vote, presents a voter
7   registration certificate indicating that the voter is currently
8   registered in a different precinct from the one in which the voter
9   is offering to vote, and whose name is not on the precinct list of
10  registered voters, shall be accepted for voting if the voter's
11  identity can be verified from the documentation presented under
12  Section 63.001(b) and the voter executes an affidavit stating that
13  the voter:

14            (1)   is a resident of the precinct in which the voter is
15  offering to vote or is otherwise entitled by law to vote in that
16  precinct;

17            (2)   was a resident of the precinct in which the voter
18  is offering to vote at the time that information on the voter's
19  residence address was last provided to the voter registrar;

20            (3)   did not deliberately provide false information to
21  secure registration in a precinct in which the voter does not
22  reside; and

23            (4)   is voting only once in the election.

24       SECTION 9.   Section 63.008(a), Election Code, is amended to
25  read as follows:

26       (a)   A voter who does not present a voter registration
27  certificate when offering to vote, but whose name is on the list of

4

S.B. No. 362

1   registered voters for the precinct in which the voter is offering to

2   vote, shall be accepted for voting if the voter executes an

3   affidavit stating that the voter does not have the voter's voter

4   registration certificate in the voter's possession at the polling

5   place at the time of offering to vote and the voter's identity can

6   be verified from the identification presented under Section

7   63.001(b) [voter presents proof of identification in a form

8   described by Section 63.0101].

9        SECTION 10.   Section 63.0101, Election Code, is amended to

10   read as follows:

11        Sec. 63.0101.   DOCUMENTATION OF PROOF OF IDENTIFICATION.

12   (a)   The following documentation is an acceptable form [as proof]

13   of photo identification under this chapter:

14             (1)   a driver's license or personal identification card

15   issued to the person by the Department of Public Safety that has not

16   expired or that expired no earlier than two years before the date of

17   presentation [or a similar document issued to the person by an

18   agency of another state, regardless of whether the license or card

19   has expired];

20             (2)   a United States military identification card that

21   contains the person's photograph [form of identification

22   containing the person's photograph that establishes the person's

23   identity];

24             (3)   a [birth certificate or other document confirming

25   birth that is admissible in a court of law and establishes the

26   person's identity;

27             [(4)]   United States citizenship certificate [papers]

5

S.B. No. 362

1    issued to the person that contains the person's photograph;

2           (4) [(5)]  a  United  States  passport  issued  to  the

3    person;

4           (5)  a license to carry a concealed handgun issued to

5    the person by the Department of Public Safety

6           [(6)  official  mail  addressed  to  the  person  by  name

7    from a governmental entity]; or

8           (6) [(7)]  a  valid  identification  card  that  contains

9    the person's photograph and is issued by:

10              (A)  an  agency  or  institution  of  the  federal

11    government; or

12              (B)  an  agency,  institution,  or  political

13    subdivision of this state.

14       (b)  The following documentation is acceptable as proof of

15    identification under this chapter:

16           (1)  a copy of a current utility bill, bank statement,

17    government check, paycheck, or other government document that shows

18    the name and address of the voter;

19           (2)  official mail addressed to the person by name from

20    a governmental entity;

21           (3)  a certified copy of a birth certificate or other

22    document confirming birth that is admissible in a court of law and

23    establishes the person's identity;

24           (4)  United  States  citizenship  papers  issued  to  the

25    person;

26           (5)  an  original  or  certified  copy  of  the  person's

27    marriage license or divorce decree;

S.B. No. 362

1          (6)  court  records  of  the  person's  adoption,  name

2    change, or sex change;

3          (7)  an identification card issued to the person by a

4    governmental entity of  this  state or  the United States  for  the

5    purpose   of   obtaining   public   benefits,   including   veteran's

6    benefits, Medicaid, or Medicare;

7          (8)  a temporary driving permit issued to the person by

8    the Department of Public Safety;

9          (9)  a  pilot's  license  issued  to  the  person  by  the

10   Federal Aviation Administration or another authorized agency of the

11   United States;

12         (10)  a library  card  that  contains  the  person's  name

13   issued to the person by a public library located in this state; or

14         (11)  a hunting or fishing license issued to a person by

15   the Parks and Wildlife Department [or

16         [(8)  any other form of identification prescribed by

17   the secretary of state].

18       SECTION 11.  Section 63.011(a), Election Code, is amended to

19   read as follows:

20       (a)  A person to whom Section 63.001(g), 63.008(b), or

21   63.009(a) applies may cast a provisional ballot if the person

22   executes an affidavit stating that the person:

23         (1)  is a registered voter in the precinct in which the

24   person seeks to vote; and

25         (2)  is eligible to vote in the election.

26       SECTION 12.  Section  521.422,  Transportation  Code,  is

27   amended by amending Subsection (a) and adding Subsection (d) to

7

S.B. No. 362

1    read as follows:

2         (a)   Except as provided by Subsection (d), the [The] fee for

3    a personal identification certificate is:

4              (1)   $15 for a person under 60 years of age;

5              (2)   $5 for a person 60 years of age or older; and

6              (3)   $20 for a person subject to the registration

7    requirements under Chapter 62, Code of Criminal Procedure.

8         (d)   The department may not collect a fee for a personal

9    identification certificate issued to a person who states that the

10   person is obtaining the personal identification certificate for the

11   sole purpose of satisfying Section 63.001(b)(1), Election Code,

12   and:

13             (1)   who is a registered voter in this state and

14   presents a valid voter registration certificate; or

15             (2)   who is eligible for registration under Section

16   13.001, Election Code, and submits a registration application to

17   the department.

18        SECTION 13.   As soon as practicable after the effective date

19   of this Act:

20             (1)   the secretary of state shall adopt the training

21   standards and develop the training materials required to implement

22   the change in law made by this Act to Section 32.111, Election Code;

23   and

24             (2)   the county clerk of each county shall provide a

25   session of training under Section 32.114, Election Code, using the

26   standards adopted and materials developed to implement the change

27   in law made by this Act to Section 32.111, Election Code.

S.B. No. 362

1      SECTION 14.  (a) Except as provided by Subsection (b), this
2  Act takes effect January 1, 2010.
3      (b)  The changes in law made by Sections 1, 2, 3, 4, and 13
4  take effect September 1, 2009.

TRANSCRIPT OF PROCEEDINGS BEFORE

THE SENATE OF THE STATE OF TEXAS

EIGHTY-FIRST LEGISLATURE

(COMMITTEE OF THE WHOLE SENATE)

AUSTIN, TEXAS



IN RE:                          §
                                §
CONSIDERATION OF                §
SENATE BILL 362                 §

## COMMITTEE OF THE WHOLE SENATE

### TUESDAY, MARCH 10, 2009

BE IT REMEMBERED THAT AT 12:38 p..m., on Tuesday, the 10th day of March 2009, the above-entitled matter was heard at the Texas State Capitol Senate Chamber, Austin, Texas, before the Committee of the Whole Senate; and the following proceedings were reported by Aloma J. Kennedy, a Certified Shorthand Reporter of:

VOLUME 1A                              PAGES 1 - 209

KENNEDY

REPORTING

SERVICE

*a record of excellence*

1801 Lavaca • Suite 115 • Austin, Texas 78701 • 512-474-2233



1          **LAYING OUT OF SENATE BILL 362**

2               SEN. FRASER:  Thank you, members.  The

3     three-minute rule is in effect.

4               I've been sitting here for four hours

5     waiting to lay this out.  And, actually, we have a lot

6     of discussion about how I should lay this out,

7     discussion on it.  And I think the bill speaks for

8     itself.  And I am going to be very brief, probably

9     three or four minutes, and allow the witnesses to move

10    forward, because I think we've wasted enough of the

11    public's time and that we should move forward with

12    hearing from the witnesses.

13              Members, this bill, I think probably

14    most of you are going to be very familiar with it.

15    It's something we've talked about a lot.  Someone back

16    a while ago when we were having lunch asked me the

17    question, said, "How did the talk about this bill get

18    started"?

19              And I actually came back and sat down,

20    and I've got probably, interestingly, more research

21    and more reading and debate on this bill maybe than

22    one I've ever done, because I'm very interested in the

23    concept.  But I think probably if you track it back in

24    our nation's history, is that we look at the ongoing

25    threat of voter fraud that this country has addressed

1    secondary choices are a lot of secondary choices.

2              They could show their library card.

3    They could show any government piece of mail that was

4    mailed to them.  Basically anything that would show

5    their identification as a secondary source of

6    identification is going to be allowed under my bill.

7    And when we start discussing that, I'll be glad to go

8    over the list that is listed of things.  But in Texas,

9    the bill that we are laying out actually has a

10   secondary choice.  Then if someone doesn't have a

11   photo ID, there is a secondary choice to identify

12   themselves.

13             I should also clarify that we are only

14   addressing the in-person voting; we are not addressing

15   mail-in ballots, early voting, any of the other things

16   in the election cycle.

17             I think I'm going to go ahead and close

18   so we can start either the questions and/or bring in

19   the witnesses.  But I think it's important to note

20   that in upholding Indiana's photo ID law, in the

21   decision that was given by John Paul Stevens in his

22   majority opinion, he stated, "Confidence in the

23   integrity of our election process is essential to the

24   functioning of our participatory democracy.  Voter

25   fraud drives honest citizens out of the democratic

115

1    itemize --

2            SEN. FRASER:  I'm getting heckled over

3    here.  People from the other side are moving over

4    to -- he's trying to implement the egg-timer rule of

5    three minutes.

6            SEN. ZAFFIRINI:  I see.

7            SEN. FRASER:  I'm for that.

8            SEN. ZAFFIRINI:  Well, on Page 6, Line

9    14 of your bill, you list types of documentation that

10   you acceptable as proof of identification under this

11   chapter.  In 2007, in House Bill 218 which you

12   sponsored in the Senate, you included a student

13   identification card as proof of identification, as

14   acceptable documentation, but a student ID card is not

15   included in your 2009 bill.  Could you explain why?

16           SEN. FRASER:  Senator, could I refer you

17   to Section 6.

18           SEN. ZAFFIRINI:  What line, what page,

19   Senator?

20           SEN. FRASER:  It is -- just a second.

21   The reference you're making is the public institutions

22   of higher learning, the student ID card is still

23   included.  The wording changed, but it's covered by

24   No. (6)(A).

25           SEN. ZAFFIRINI:  So you're saying that

116

on Page 6, beginning at Line 8 where it reads, "a
valid identification card that contains the person's
photograph and is issued by:

        (A)   An agency or institution of
the federal government; or

        (B)   An agency, institution, or
political subdivision of this state," you're saying
that that would include institutions of higher
education and that, therefore, student identification
cards would be acceptable proof of identification?

        SEN. FRASER:  Yes.

        SEN. ZAFFIRINI:  Good.

        SEN. FRASER:  Isn't that what that says?
It says "an agency, institution or political
subdivision of this state."  The University of Texas
is considered a subdivision of the state.  It says
that an identification card that contains a person's
photograph that is issued by.  I think the answer to
your question is "Yes."

        SEN. ZAFFIRINI:  All right.  In your old
bill -- I'm looking at it now -- you have this
language -- and in addition to that, you specified the
student identification card.  But so long as you
clarify your legislative intent, that's acceptable to
me.

153

1    you have placed in front of us today on voter ID have

2    an affirmative role for states in recommending that

3    they reach out to non-drivers by providing more

4    offices?

5                SEN. FRASER:  I'm sorry.  I'm not even

6    getting close to following the question you're asking.

7    The bill that I'm laying out today says that when

8    Wendy Davis walks into the voting booth, you've got to

9    prove that you're really Wendy Davis.  It's that

10   simple.

11               SEN. DAVIS:  And the bill does not

12   include a request of the state that it open more

13   offices for the purposes of obtaining a photo ID for

14   non-drivers, it does not include that proposal.

15   Correct?

16               SEN. FRASER:  They can use non-photos.

17   I mean, there is no provision right now, there is

18   nothing in the bill that every person in the state

19   could not comply with, because you can use a piece of

20   mail that had been mailed to you, your library card.

21   There's a long, long list of things that you could

22   use.  You could even use as your piece of

23   identification the mail that the registrar sent to you

24   for your voter registration.  That's a form of

25   identification.

169

```
 1    back to my question.  Maybe it wasn't specific enough.
 2    Have you talked to any African-Americans or Hispanics
 3    that are in support of your bill --
 4                    SEN. FRASER:  Yes.
 5                    SEN. WEST:  -- support?  And will they
 6    be here to testify?
 7                    SEN. FRASER:  I'm not advised.  I --
 8                    SEN. WEST:  Okay.  Have you talked to
 9    any African- --
10                    SEN. FRASER:  I haven't looked at the
11    list of who is going to testify.
12                    SEN. WEST:  Have you talked to any
13    African-Americans or Hispanics about the impact that
14    your bill will have on their right to vote?
15                    Let me tell you what I'm getting to.
16    Have you talked to any African-Americans?  Have you
17    done an assessment in terms of whether or not this
18    particular bill and the methods that you are employing
19    will be retrogressive as it relates to the minority
20    voters of the State of Texas?
21                    SEN. FRASER:  I think the answer is the
22    same answer I gave you about four questions ago, is
23    that I looked at -- and I've spent a lot of time
24    examining the data of actual voter turnout that
25    happened after the implementation of a photo ID bill
```

```
 1    in Indiana and in Georgia.  And I have invited the
 2    election judges from both states to come and share
 3    that with you today, and I feel sure that they will be
 4    glad to answer your questions.
 5              SEN. WEST:  And based on your
 6    observation of what occurred in those particular
 7    states, you believe that your bill, if enacted in law,
 8    will not have any retrogressive impact on the minority
 9    voters of the State of Texas?
10              SEN. FRASER:  I think my bill is going
11    to increase African-American and Hispanic turnout in
12    Texas.  I think those people today feel
13    disenfranchised because they feel like there is fraud
14    going on in votes today --
15              SEN. WEST:  Well, have you talked to
16    any --
17              SEN. FRASER:  Are you interrupting me?
18              SEN. WEST:  Yes.  I --
19              SEN. FRASER:  Just a second.  I get to
20    finish.
21              SEN. WEST:  But you say you feel like
22    those people.  My question is, who have you spoken to,
23    to come to that assertion that those people feel as
24    though that there's fraud and all that stuff?  What
25    African-Americans and Hispanics -- have you spoken to
```

```
 1      some to make that assertion, in the State of Texas?
 2                  And I'll listen to you now.  I'll listen
 3      to you now respond to my question.
 4                  SEN. FRASER:  I have laid out a bill and
 5      researched, asked questions about the way people vote.
 6      I believe I have a bill that will encourage people
 7      that their vote will count and their vote is not going
 8      to be diluted by those that cheat.  I think that will
 9      encourage voters, as it did in Indiana and in Georgia.
10                  And I believe that this bill is not only
11      good for the people of the State of Texas, but I'm
12      pretty familiar with the ethnic makeup of the people
13      you represent.  And I think this bill will be
14      extremely good for Royce West's senatorial district.
15                  SEN. WEST:  Well, and I appreciate your
16      thoughts.  But let me ask you again, you made some
17      assertions that you believe that it's going to be good
18      for every one of Royce West's district and ethnic
19      minorities in the State of Texas.  You made assertions
20      that this will prevent people from cheating and all
21      that other stuff.  And I'm asking you, as relates to
22      voter impersonation, have you talked to any African-
23      Americans or Hispanics that said there was a problem
24      in the state, that this is a problem in the state?
25      Have you talked to any African-Americans in the state?
```

PL-844
9/2/2014
2:13-cv-00193



# SENATE RULES

**adopted by
82nd LEGISLATURE
January 19, 2011**

**Senate Resolution No. 36**



EXHIBIT
*12*



EXHIBIT
*551*

(2) for the introduction and consideration of resolutions;

(3) for messages and executive communications;

(4) for motions to print on minority reports;

(5) for other motions not provided herein, including but not limited to motions to set a bill for special order, to reconsider, to print and not print bills, to rerefer bills, to concur in House amendments to Senate bills, to not concur in House amendments to Senate bills, to request the appointment of conference committees, and to adopt conference committee reports.

This concludes the morning call, which the President shall announce to the Senate.

It shall not be in order, during the morning call, to move to take up a bill or resolution out of its regular order, and the presiding officer shall not recognize any Senator for the purpose of making any such motion or making a motion to suspend this rule.

### Editorial Note

A motion to set a bill for a special order may be made under Item (5) of this rule, and motions to reconsider, to print or not print bills, and to re-refer bills may properly be made under Item (5) of the morning call.

## ORDER OF CONSIDERING BILLS AND RESOLUTIONS

**Rule 5.09.** At the conclusion of the morning call, the Senate shall proceed to consider business on the President's table, which shall be disposed of in the following order:

(1) special orders;

(2) unfinished business;

(3) Senate Joint Resolutions;

21

Rule 5.09

    (4)  Senate Resolutions;

    (5)  Senate Concurrent Resolutions;

    (6)  Senate bills on third reading;

    (7)  Senate bills on second reading;

    (8)  House Joint Resolutions;

    (9)  House bills on third reading;

    (10)  House bills on second reading;

    (11)  House Concurrent Resolutions.

The above order is for Senate bill days, except as modified by any Joint Rules.

### Notes of Rulings

The order of business as set forth above may be changed by a two-thirds vote of the Senate (42 S.J. Reg. 1682 (1931)).

A House bill laid before the Senate as an unfinished special order should be disposed of before any other House bill which has been set for a special order is taken up for consideration (46 S.J. Reg. 1853 (1939)).

A motion to suspend the regular order of business is not in order while other business is pending under a rule suspension (46 S.J. Reg. 1886 (1939)).

The bill next on calendar is not to be passed over, due to author's absence (47 S.J. Reg. 397 (1941)).

A motion to suspend the regular order of business is not a debatable motion (61 S.J. Reg. 1101 (1969)).

22

## HOUSE BILL DAYS

Rule 5.10. On calendar Wednesday and calendar Thursday of each week, House Joint Resolutions and House bills on special order and on third and second readings, respectively, and House Concurrent Resolutions shall be taken up and considered until disposed of; provided in case one should be pending at adjournment on Thursday, it shall go over until the succeeding calendar Wednesday as unfinished business.

### Notes of Rulings

A House bill, by a two-thirds vote, may be taken up and considered by the Senate on any day of the week (46 S.J. Reg. 635-636 (1939)).

When the Senate adjourns on Thursday of any week with a House bill pending, the bill then pending, whether it is a special order or not, may not be further considered until Wednesday of the next succeeding week unless the Senate by a two-thirds vote agrees to consider it further prior to that day (46 S.J. Reg. 1704 (1939)).

House bills may be considered in Senate under a suspension of the regular order of business on days other than calendar Wednesday and calendar Thursday (48 S.J. Reg. 1051 (1943)).

When a member is discussing a Senate bill on calendar Monday or calendar Tuesday (which are considered Senate bill days in the Senate) and 12:01 o'clock a.m. Wednesday arrives (which is considered a House bill day in the Senate), no further discussion may be had on the Senate bill (61 S.J. Reg. 956 (1969)).

Consideration of a Senate bill taken up out of order on a Senate bill day may not be continued when a House bill day arrives (66 S.J. Reg. 1355 (1979)).

23

Rule 5.10

A House Concurrent Resolution taken up in its calendar order on a House bill day may not be further considered when a Senate bill day arrives (71 S.J. 1 C.S. 73 (1989)).

When rules have been suspended to permit consideration of a Senate bill on a House bill day, an additional suspension is not required to permit consideration to continue when a Senate bill day arrives (73 S.J. Reg. 1082 (1993)).

### SPECIAL ORDERS

Rule 5.11. (a)  Any bill, resolution, or other measure may on any day be made a special order for a future time of the session by an affirmative vote of two-thirds of the members present.

(b)  A special order shall be considered at the time for which it is set and considered from day to day until disposed of, unless at the time so fixed there is pending business under a special order, but such pending business may be suspended by a two-thirds vote of all the members present.  If a special order is not reached or considered at the time fixed, it shall not lose its place as a special order.  All special orders shall be subject to any Joint Rules and Rule 5.10.

(c)  Upon the affirmative vote of four-fifths of the members present, a special order may be reset to an earlier time than previously scheduled.

(d)  Notwithstanding Subsection (a) of this rule, a bill or resolution relating to voter identification requirements reported favorably from the Committee of the Whole Senate may be set as a special order for a time at least 24 hours after the motion is adopted by a majority of the members of the Senate.

### Editorial Notes

A bill once set as a special order does not lose its place on the calendar of special orders if not taken up at the hour for which it is set.

A special order, the hour for the consideration of which has arrived, takes precedence of the unfinished business unless the unfinished business is itself a special order.

24

### Notes of Rulings

A bill being considered as a special order that is laid on the table subject to call is no longer a special order (43 S.J. Reg. 980 (1933)).

Refusal of Senate to set bill as special order for a certain hour does not prevent a motion being made and adopted immediately thereafter to set the bill as a special order for a different specified hour (45 S.J. Reg. 860 (1937)).

The motion to set a bill for a special order is not a proper substitute for a motion to suspend the regular order of business and take up a bill for immediate consideration (50 S.J. Reg. 1055 (1947)).

When the business before the Senate is a special order, the order of business may be suspended in order to consider other business (61 S.J. Reg. 2034 (1969)).

A motion to set a bill for special order may be made when the Senate is not in morning call (67 S.J. Reg. 1430 (1981)).

When the time set for consideration of a special order arrives, the special order displaces pending business (67 S.J. Reg. 1449 (1981)).

A motion to suspend the regular order of business is not in order when the time set for consideration of a special order has arrived (67 S.J. Reg. 1558 (1981)).

### REGULAR ORDER OF BUSINESS

**Rule 5.12.** (a) Bills and resolutions shall be considered on second reading and shall be listed on the daily calendar of bills and resolutions on the President's table for second reading in the order in which the committee reports on them are received by the Senate. Upon the filing of a committee report on a bill or resolution as provided by Rule 11.12, the Secretary of the Senate shall note the

25

Rule 5.12

date and time the report was filed. The Journal Clerk shall record the order in which the committee report was received in the Senate Journal for the day on which the Senate next convenes.

(b) Bills and resolutions shall be considered on third reading in the order in which they were passed on second reading.

### Editorial Notes

On the very important matter of the order of considering each of the several bills reported from committees, the rules of the Senate were silent until Senate Rule 5.12 was amended on June 6, 1947, to provide that bills be placed on the calendars of Senate and House bills on the President's table in the order in which the committee reports on the bills are submitted by the respective chairmen from the floor. Bills are listed for consideration on third reading in the order in which they have been passed by the Senate to engrossment or to third reading.

The Senate Agenda is prepared daily and lists the bills in their order of consideration.

### Notes of Rulings

A bill may not be considered by the Senate which has not been reported from a committee (44 S.J. Reg. 713 (1935)).

A report of a committee on a bill may be received only, and the question of its adoption is not voted on by the Senate (42 S.J. 1 C.S. 748 (1931)).

### SUSPENSION OF THE REGULAR ORDER OF BUSINESS

**Rule 5.13.** No bill, joint resolution, or resolution affecting state policy may be considered out of its regular calendar order unless the regular order is suspended by a vote of two-thirds of the members present.

26

PL845
9/2/2014
2:13-cv-00193



By: Fraser, et al.                                    S.B. No. 14

A BILL TO BE ENTITLED

1        AN ACT

2  relating to requirements to vote, including presenting proof of

3  identification; providing criminal penalties.

4        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5        SECTION 1.  Subchapter A, Chapter 15, Election Code, is

6  amended by adding Section 15.005 to read as follows:

7        Sec. 15.005.  NOTICE   OF   IDENTIFICATION   REQUIREMENTS.

8  (a)  The voter registrar of each county shall provide notice of the

9  identification requirements for voting prescribed by Chapter 63 and

10 a  detailed  description  of  those  requirements  with  each  voter

11 registration  certificate  issued  under  Section  13.142  or  renewal

12 registration certificate issued under Section 14.001.

13       (b)  The secretary of state shall prescribe the wording of

14 the notice to be included on the certificate under this section.

15       SECTION 2.  Subsection (a), Section 15.022, Election Code,

16 is amended to read as follows:

17       (a)  The registrar shall make the appropriate corrections in

18 the  registration  records,  including,  if  necessary,  deleting  a

19 voter's name from the suspense list:

20            (1)  after  receipt  of  a  notice  of  a  change  in

21 registration information under Section 15.021;

22            (2)  after receipt of a voter's reply to a notice of

23 investigation given under Section 16.033;

24            (3)  after receipt of a registration omissions list and

2011S0078-1 01/12/11           1

S.B. No. 14

1  any affidavits executed under Section 63.006 [63.007], following an
2  election;
3           (4)  after receipt of a voter's statement of residence
4  executed under Section 63.0011;
5           (5)  before the effective date of the abolishment of a
6  county election precinct or a change in its boundary;
7           (6)  after receipt of United States Postal Service
8  information indicating an address reclassification;
9           (7)  after receipt of a voter's response under Section
10  15.053; or
11          (8)  after receipt of a registration application or
12  change of address under Chapter 20.
13       SECTION 3.  Subchapter A, Chapter 31, Election Code, is
14  amended by adding Section 31.012 to read as follows:
15       Sec. 31.012.  VOTER  IDENTIFICATION  EDUCATION.   (a)  The
16  secretary of state and the voter registrar of each county that
17  maintains a website shall provide notice of the identification
18  requirements for voting prescribed by Chapter 63 on each entity's
19  respective website.  The secretary of state shall prescribe the
20  wording of the notice to be included on the websites.
21       (b)  The secretary of state shall conduct a statewide effort
22  to educate voters regarding the identification requirements for
23  voting prescribed by Chapter 63.
24       SECTION 4.  Section 32.111, Election Code, is amended by
25  adding Subsection (c) to read as follows:
26       (c)  The training standards adopted under Subsection (a)
27  must include provisions on the acceptance and handling of the

S.B. No. 14

1  identification presented by a voter to an election officer under

2  Section 63.001.

3       SECTION 5.  Subsection (a), Section 32.114, Election Code,

4  is amended to read as follows:

5       (a)  The county clerk shall provide one or more sessions of

6  training using the standardized training program and materials

7  developed and provided by the secretary of state under Section

8  32.111 for the election judges and clerks appointed to serve in

9  elections ordered by the governor or a county authority.  Each

10  election judge shall complete the training program. Each election

11  clerk shall complete the part of the training program relating to

12  the acceptance and handling of the identification presented by a

13  voter to an election officer under Section 63.001.

14       SECTION 6.  Chapter 62, Election Code, is amended by adding

15  Section 62.016 to read as follows:

16       Sec. 62.016.  NOTICE OF ACCEPTABLE IDENTIFICATION OUTSIDE

17  POLLING PLACES.  The presiding judge shall post in a prominent place

18  on the outside of each polling location a list of the acceptable

19  forms of identification.  The notice and list must be printed using

20  a font that is at least 24-point.

21       SECTION 7.  Section 63.001, Election Code, is amended by

22  amending Subsections (b), (c), (d), and (f) and adding Subsections

23  (g) and (h) to read as follows:

24       (b)  Except as provided by Subsection (h), on [On] offering

25  to vote, a voter must present to an election officer at the polling

26  place one form of identification listed in Section 63.0101 [the

27  voter's voter registration certificate to an election officer at

2011S0078-1 01/12/11     3

S.B. No. 14

1  the polling place].

2      (c)  On  presentation  of  the  documentation  required  by
3  Subsection (b) [a registration certificate], an election officer
4  shall  determine  whether  the  voter's  name  on  the  documentation
5  [registration certificate] is on the list of registered voters for
6  the precinct.

7      (d)  If  the  voter's  name  is  on  the  precinct  list  of
8  registered voters and the voter's identity can be verified from the
9  documentation presented under Subsection (b), the voter shall be
10  accepted for voting.

11      (f)  After determining whether to accept a voter, an election
12  officer  shall  return  the  voter's  documentation  [registration
13  certificate] to the voter.

14      (g)  If  the  requirements  for  identification  prescribed  by
15  Subsection  (b)  are  not  met,  the  voter  may  be  accepted  for
16  provisional voting only under Section 63.011.  For a voter who is
17  not accepted for voting under this section, an election officer
18  shall:

19          (1)  inform  the  voter  of  the  voter's  right  to  cast  a
20  provisional ballot under Section 63.011; and

21          (2)  provide  the  voter  with  written  information,  in  a
22  form prescribed by the secretary of state, that:

23              (A)  lists the requirements for identification;

24              (B)  states  the  procedure  for  presenting
25  identification under Section 65.0541;

26              (C)  includes  a  map  showing  the  location  where
27  identification must be presented; and

S.B. No. 14

1    (D)  includes notice that even if all procedures

2  are followed, there is no guarantee a provisional ballot will be

3  accepted.

4    (h)  The  requirements  for  identification  prescribed  by

5  Subsection (b) do not apply to a voter who:

6    (1)  presents  the  voter's  voter  registration

7  certificate on offering to vote; and

8    (2)  was 70 years of age or older on January 1, 2012, as

9  indicated by the date of birth on the voter's voter registration

10  certificate.

11    SECTION 8.  Subsection (a), Section 63.0011, Election Code,

12  is amended to read as follows:

13    (a)  Before a voter may be accepted for voting, an election

14  officer shall ask the voter if the voter's residence address on the

15  precinct list of registered voters is current and whether the voter

16  has changed residence within the county.  If the voter's address is

17  omitted from the precinct list under Section 18.005(c), the officer

18  shall ask the voter if the voter's residence, if [as] listed, on

19  identification presented by the voter under Section 63.001(b) [the

20  voter's voter registration certificate] is current and whether the

21  voter has changed residence within the county.

22    SECTION 9.  Chapter 63, Election Code, is amended by adding

23  Section 63.0012 to read as follows:

24    Sec. 63.0012.  NOTICE  OF  IDENTIFICATION  REQUIREMENTS  TO

25  CERTAIN VOTERS.  (a)  An election officer shall distribute written

26  notice of the identification that will be required to vote in

27  elections held after January 1, 2012, and information on obtaining

S.B. No. 14

1   identification without a fee under Section 521.422, Transportation
2   Code, to each voter who, when offering to vote, presents a form of
3   identification that will not be sufficient for acceptance as a
4   voter under this chapter beginning with those elections.

5       (b)   The secretary of state shall prescribe the wording of
6   the notice and establish guidelines for distributing the notice.

7       (c)   This section expires September 1, 2013.

8       SECTION 10.   Section 63.006, Election Code, is amended to
9   read as follows:

10      Sec. 63.006.   VOTER WITH REQUIRED DOCUMENTATION [CORRECT
11  CERTIFICATE] WHO IS NOT ON LIST.  (a)   A voter who, when offering to
12  vote, presents the documentation required under Section 63.001(b)
13  [a voter registration certificate indicating that the voter is
14  currently registered in the precinct in which the voter is offering
15  to vote], but whose name is not on the precinct list of registered
16  voters, shall be accepted for voting if the voter also presents a
17  voter registration certificate indicating that the voter is
18  currently registered:

19          (1)   in the precinct in which the voter is offering to
20  vote; or

21          (2)   in a different precinct from the one in which the
22  voter is offering to vote and the voter executes an affidavit
23  stating that the voter:

24              (A)(i)   is a resident of the precinct in which the
25  voter is offering to vote or is otherwise entitled by law to vote in
26  that precinct; or

27              (ii)   was a resident of the precinct in which

S.B. No. 14

1 the voter is offering to vote at the time the information on the

2 voter's residence address was last provided to the voter registrar;

3     (B) did not deliberately provide false

4 information to secure registration in a precinct in which the voter

5 does not reside; and

6     (C) is voting only once in the election.

7  (b) After the voter is accepted, an election officer shall:

8    (1) indicate beside the voter's name on the poll list

9 that the voter was accepted under this section; and

10    (2) if applicable, enter on the registration omissions

11 list the precinct of the voter's registration as indicated by the

12 voter's registration certificate.

13  SECTION 11. Section 63.009, Election Code, is amended to

14 read as follows:

15  Sec. 63.009. VOTER WITHOUT CERTIFICATE WHO IS NOT ON LIST.

16 A [(a)  Except as provided by Subsection (b), a] voter who does not

17 present a voter registration certificate when offering to vote, and

18 whose name is not on the list of registered voters for the precinct

19 in which the voter is offering to vote, shall be accepted for

20 provisional voting if the voter executes an affidavit in accordance

21 with Section 63.011.

22  [(b)  If an election officer can determine from the voter

23 registrar that the person is a registered voter of the county and

24 the person presents proof of identification, the affidavits

25 required by Sections 63.007 and 63.008 are substituted for the

26 affidavit required by Section 63.011 in complying with that

27 section.  After the voter is accepted under this subsection, an

S.B. No. 14

1  ~~election officer shall also indicate beside the voter's name on the~~
2  ~~poll list that the voter was accepted under this section.~~]

3      SECTION 12.  Section 63.0101, Election Code, is amended to
4  read as follows:

5      Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.
6  The following documentation is an acceptable form [~~as proof~~] of
7  photo identification under this chapter:

8          (1)  a driver's license or personal identification card
9  issued to the person by the Department of Public Safety that has not
10 [~~or a similar document issued to the person by an agency of another~~
11 ~~state, regardless of whether the license or card has~~] expired;

12         (2)  a United States military identification card that
13 contains the person's photograph that has not expired [~~form of~~
14 ~~identification containing the person's photograph that establishes~~
15 ~~the person's identity~~];

16         (3)  a [~~birth certificate or other document confirming~~
17 ~~birth that is admissible in a court of law and establishes the~~
18 ~~person's identity;~~

19         [(4)] United States citizenship certificate [~~papers~~]
20 issued to the person that contains the person's photograph; or

21         (4) [(5)] a United States passport issued to the
22 person that has not expired[+

23         [(6)  official mail addressed to the person by name~~
24 ~~from a governmental entity;~~

25         [(7)  a copy of a current utility bill, bank statement,~~
26 ~~government check, paycheck, or other government document that shows~~
27 ~~the name and address of the voter; or~~

S.B. No. 14

1    [(8)   any other form of identification prescribed by
2    the secretary of state].

3        SECTION 13.   Subsections  (a)   and  (b),   Section  63.011,
4    Election Code, are amended to read as follows:

5        (a)   A person to whom Section 63.001(g) [63.008(b)] or 63.009
6    [63.009(a)] applies may cast a provisional ballot if the person
7    executes an affidavit stating that the person:

8            (1)   is a registered voter in the precinct in which the
9    person seeks to vote; and

10           (2)   is eligible to vote in the election.

11       (b)   A form for an affidavit required by this section shall
12   be printed on an envelope in which the provisional ballot voted by
13   the person may be placed and must include a space for entering the
14   identification number of the provisional ballot voted by the person
15   and a space for an election officer to indicate whether the person
16   presented a form of identification described by Section 63.0101.
17   The  affidavit  form  may  include  space  for  disclosure  of  any
18   necessary  information  to  enable  the  person  to  register  to  vote
19   under Chapter 13.   The secretary of state shall prescribe the form
20   of the affidavit under this section.

21       SECTION 14.   Subsection (b), Section 64.012, Election Code,
22   is amended to read as follows:

23       (b)   An offense under this section is a felony of the second
24   [third] degree unless the person is convicted of an attempt.   In
25   that case, the offense is a state jail felony [Class A misdemeanor].

26       SECTION 15.   Subsection (b), Section 65.054, Election Code,
27   is amended to read as follows:

2011S0078-1  01/12/11          9

S.B. No. 14

1    (b)  A provisional ballot shall [may] be accepted [only] if
2  the board determines that, from the information in the affidavit or
3  contained in public records, the person is eligible to vote in the
4  election and has not previously voted in that election and the
5  person meets the identification requirements of Section 63.001(b)
6  in the period prescribed under Section 65.0541.
7    SECTION 16.  Subchapter B, Chapter 65, Election Code, is
8  amended by adding Section 65.0541 to read as follows:
9    Sec. 65.0541.  PRESENTATION OF IDENTIFICATION FOR CERTAIN
10  PROVISIONAL BALLOTS.  (a)  A voter who is accepted for provisional
11  voting under Section 63.011 because the voter does not meet the
12  identification requirements of Section 63.001(b) may, not later
13  than the sixth day after the date of the election, present proof of
14  identification to the voter registrar for examination by the early
15  voting ballot board.
16    (b)  The secretary of state shall prescribe procedures as
17  necessary to implement this section.
18    SECTION 17.  Section 66.0241, Election Code, is amended to
19  read as follows:
20    Sec. 66.0241.  CONTENTS OF ENVELOPE NO. 4.  Envelope no. 4
21  must contain:
22        (1)  the precinct list of registered voters;
23        (2)  the registration correction list;
24        (3)  the registration omissions list;
25        (4)  any statements of residence executed under Section
26  63.0011; and
27        (5)  any affidavits executed under Section 63.006

S.B. No. 14

1  [63.007] or 63.011.

2      SECTION 18.  Section  521.422,  Transportation  Code,  is

3  amended by amending Subsection (a) and adding Subsection (d) to

4  read as follows:

5      (a)  Except as provided by Subsection (d), the [The] fee for

6  a personal identification certificate is:

7          (1)  $15 for a person under 60 years of age;

8          (2)  $5 for a person 60 years of age or older; and

9          (3)  $20  for  a  person  subject  to  the  registration

10  requirements under Chapter 62, Code of Criminal Procedure.

11      (d)  The  department  may  not  collect  a  fee  for  a  personal

12  identification certificate issued to a person who states that the

13  person is obtaining the personal identification certificate for the

14  purpose of satisfying Section 63.001(b), Election Code, and:

15          (1)  who  is  a  registered  voter  in  this  state  and

16  presents a valid voter registration certificate; or

17          (2)  who  is  eligible  for  registration  under  Section

18  13.001, Election Code, and submits a registration application to

19  the department.

20      SECTION 19.  Effective January 1, 2012, Sections 63.007 and

21  63.008, Election Code, are repealed.

22      SECTION 20.  As soon as practicable after the effective date

23  of this section:

24          (1)  the  secretary  of  state  shall  adopt  the  training

25  standards and develop the training materials required to implement

26  the change in law made by this Act to Section 32.111, Election Code;

27  and

2011S0078-1 01/12/11          11

S.B. No. 14

1     (2)  the county clerk of each county shall provide a

2  session of training under Section 32.114, Election Code, using the

3  standards adopted and materials developed to implement the change

4  in law made by this Act to Section 32.111, Election Code.

5     SECTION 21.  The change in law made by this Act applies only

6  to an offense committed on or after January 1, 2012.  An offense

7  committed before January 1, 2012, is covered by the law in effect

8  when the offense was committed, and the former law is continued in

9  effect for that purpose.  For purposes of this section, an offense

10  is committed before January 1, 2012, if any element of the offense

11  occurs before that date.

12     SECTION 22.  State   funds   disbursed   under   Chapter   19,

13  Election Code, for the purpose of defraying expenses of the voter

14  registrar's office in connection with voter registration may also

15  be used for additional expenses related to coordinating voter

16  registration drives or other activities designed to expand voter

17  registration. This section expires January 1, 2013.

18     SECTION 23.  (a)  Except as provided by Subsection (b) of

19  this section, this Act takes effect January 1, 2012.

20     (b)  The changes in law made by Sections 1, 3, 4, 5, 9, 20,

21  and 22 of this Act take effect September 1, 2011.

TRANSCRIPT OF PROCEEDINGS BEFORE

THE SENATE OF THE STATE OF TEXAS

EIGHTY-SECOND LEGISLATURE

(COMMITTEE OF THE WHOLE SENATE)

AUSTIN, TEXAS


IN RE:                        §
                              §
CONSIDERATION OF              §
SENATE BILL 14                §


COMMITTEE OF THE WHOLE SENATE

TUESDAY, JANUARY 25, 2011


BE IT REMEMBERED THAT AT 8:05 a.m., on Tuesday, the 25th day of January 2011, the above-entitled matter continued at the Texas State Capitol, Senate Chamber, Austin, Texas, before the Committee of the Whole Senate.  The following proceedings were reported by Aloma J. Kennedy, Lorrie A. Schnoor and Kim Pence, Certified Shorthand Reporters.


VOLUME 2                              PAGES 20 - 542



EXHIBIT
19

CONSIDERATION OF SENATE BILL 14 1/25/2011

1   affirmed, both in the court case and the Department of

2   Justice?  That was my question.  Do you have any concern

3   that we will have done all of this debate and work, and

4   certainly to ensure the ballot security, only to be shut

5   down at the Department of Justice, because we are a

6   Section 5 state and what we're offering in your bill is

7   not something that has been approved by the Department

8   of Justice?

9            SEN. FRASER:  I have no concern about

10  Senate Bill 14, both going before the U.S. Supreme Court

11  or going before the Department of Justice.

12            SEN. VAN de PUTTE:  Thank you, Senator

13  Fraser.  I wanted to ask a little bit of your thinking.

14  And in the bill that you have before us, the student

15  identifications were omitted from your list of

16  acceptable documentation.  And could you give me the

17  rationale why a student photo identification is not

18  acceptable form of identification?

19            SEN. FRASER:  The types of identification

20  we've included are one from a government entity that

21  would identify that person as who they are, that they

22  say they are, they're a valid voter and a citizen of the

23  United States, and these are the ones that we have

24  suggested that would be acceptable.

25            SEN. VAN de PUTTE:  So the rationale for

CONSIDERATION OF SENATE BILL 14 1/25/2011

1   not having student identification cards on the list,

2   since you omitted them, is because they aren't issued by

3   a governmental entity?

4               SEN. FRASER:  I didn't say that.

5               SEN. VAN de PUTTE:  I'm sorry.  Can you

6   repeat your answer.

7               SEN. FRASER:  I said I did not say that.

8               SEN. VAN de PUTTE:  So why were the

9   student identifications -- you explained that the

10  student identifications were omitted from the list of

11  acceptable documentation, because it was not a

12  government entity.

13              SEN. FRASER:  The four types of

14  identification that we are offering up we believe are

15  less confusing, they're simpler for both voters and

16  election voters.  Everyone knows what they look like.

17  There is a standardization of those, and they all look

18  alike and it would be less confusing for the systems who

19  are accepting the voter IT.

20              SEN. VAN de PUTTE:  And, Senator Fraser,

21  one of the provisions in your bill also omits birth

22  certificates from the list of acceptable forms of

23  identification, even though that does come from

24  government entities.  And so why is it that birth

25  certificates were omitted?

CONSIDERATION OF SENATE BILL 14 1/25/2011

1           SEN. FRASER:  Photo ID.

2           SEN. VAN de PUTTE:  So only a photo

3  identification.  So they would have to --

4           SEN. FRASER:  The acceptable photo IDs

5  that are outlined in the bill would be an acceptable

6  form, yes.

7           SEN. VAN de PUTTE:  Senator Fraser, do you

8  know right now in the State of Texas, we're able to cast

9  provisional ballots?  That's correct, isn't it?

10           SEN. FRASER:  I'm sorry.  Ask that again.

11           SEN. VAN de PUTTE:  Current election law

12  allows Texas voters to cast a provisional ballot.  Is

13  that correct?

14           SEN. FRASER:  I'm sorry.  That is another

15  question I think you should ask the Secretary of State.

16  It is my belief that, but I'm sorry, I don't want to

17  answer that.  You can, if you don't mind, ask the

18  Secretary of State.

19           SEN. VAN de PUTTE:  Thank you, Senator.

20  Since it's based on Indiana law, do you believe that the

21  State of Texas has a greater minority population than

22  the State of Indiana?

23           SEN. FRASER:  I'm not advised.

24           SEN. VAN de PUTTE:  To your knowledge,

25  have any studies been done to determine if there has

1   been, under current Texas voter laws, any impact that it

2   would have on affected class of Latino and

3   African-American voters?

4             SEN. FRASER:  The bill that I'm laying out

5   today is a model that has been approved by the U.S.

6   Supreme Court, it has been precleared by the Department

7   of Justice in Georgia.  It will deter fraud.  We're

8   providing free access of cards.  And, yes, we believe

9   this will protect confidence in election in making sure

10  only eligible voters are counted.

11            SEN. VAN de PUTTE:  Senator Fraser, on the

12  availability of free identification cards, is there a

13  means test, or what sort of proof do citizens have to

14  give to the Department of Public Safety to be able to

15  get a free identification card under your bill?

16            SEN. FRASER:  The Department of Public

17  Safety is here as a resources witness.  Senator Williams

18  is also here.  That's his area of expertise.  If you

19  have a question about that, if you would like, I will

20  yield to Senator Williams now or you can wait and ask

21  the DPS when it comes up.

22            SEN. VAN de PUTTE:  Well, right now the

23  DPS I don't think gives free IDs.  But in your bill,

24  what sort of process or documentation can voters use to

25  get a free identification card, in your bill?  What are

CONSIDERATION OF SENATE BILL 14 1/25/2011

1   second of the Secretary of State.

2             SEN. DAVIS:  Well, I'm asking you as the

3   bill's author.  Are you concerned that there will be an

4   impact to those people who currently cannot fill out

5   Section 8 but can only fill out the attestation clause

6   in Section 9?

7             SEN. FRASER:  And again, you're making a

8   reference to Section 8 that -- you know, I'm sorry.  I

9   don't -- I'm not -- I don't know what you're referring

10  to.  The Secretary of State is the expert in that area.

11  And when you ask that question, I'll be listening and

12  will, you know, listen to the response.

13            SEN. DAVIS:  Earlier you talked about the

14  Executive Director from the Carter-Baker Commission, and

15  you cited a statistic, that only 1.2 percent of

16  Americans would be affected by a requirement that a

17  photo ID be required.  Correct?

18            SEN. FRASER:  I did make that reference,

19  yes.

20            SEN. DAVIS:  Are you aware that that was

21  limited to a study of only three states, and Texas was

22  not one of them?

23            SEN. FRASER:  Yes, because at that time

24  the Carter-Baker was looking at the states that had

25  issued a photo ID.

1    SEN. DAVIS: And would you agree that it
2  may be the case that if I live in one of those three
3  states and it's easier for me to get a driver's license
4  in that state, then I may have a lower percentage of
5  citizens who don't have a photo ID than another state
6  might have where it's more difficult to get a driver's
7  license?

8    SEN. FRASER: I'm not advised.

9    SEN. DAVIS: Are you aware that even in
10 those states, in the 1.2 percentage number, there was a
11 disparate impact that was found on elderly and women and
12 African-Americans in terms of people who actually had
13 the eligible photo ID that's counted in that percentage?

14    SEN. FRASER: I'm not advised.

15    SEN. DAVIS: Does it concern you at all
16 that the bill that we are looking at today, the bill
17 that you filed, might have a disparate impact on women,
18 minorities and senior citizens, possibly disabled people
19 in the State of Texas?

20    SEN. FRASER: The bill that we're filing
21 today I believe will be approved by the U.S. Supreme
22 Court, and also the bill in Georgia was precleared by
23 the Justice Department. So I believe our bill will
24 comply with both of those.

25    SEN. DAVIS: Okay. Well, I'm going to

1  read to you from the Supreme Court opinion, the U.S.
2  Supreme Court opinion when it was reviewing the Indiana
3  law.

4          They acknowledged that there is evidence
5  in the record, in fact, of which we may take judicial
6  notice that indicates that a somewhat heavier burden may
7  be placed on a limited number of persons by virtue of
8  the photo ID requirement.  They include elderly persons
9  born out of state, persons who, because of economic or
10 other personal limitations, may find it difficult either
11 to secure a copy of their birth certificate or to
12 assemble the other required documentation to obtain a
13 state-issued ID, homeless persons and persons with a
14 religious objection to being photographed.

15          "If we assume, as the evidence suggests,
16 that some members of these classes were registered
17 voters when the Indiana law was enacted, the new
18 identification requirement may have imposed a special
19 burden on their right to vote.  The severity of that
20 burden is, of course, mitigated by the fact that if
21 eligible voters without photo ID may cast provisional
22 ballots, that will ultimately be counted."

23          Are you aware that in the State of
24 Indiana, I can cast a provisional ballot, and the
25 Supreme Court made its decision in terms of whether the

CONSIDERATION OF SENATE BILL 14 1/25/2011

```
 1   burden was constitutionally acceptable, based on the
 2   fact in Indiana, I can cast a provisional ballot, and if
 3   I attest to the fact that I'm unable to pay for the cost
 4   of getting the underlying documents to receive a photo
 5   ID, that I do not, in voting my provisional ballot, have
 6   to show a photo ID?
 7              SEN. FRASER:  Senator, my observation is
 8   that what you've read from the Supreme Court opinion is
 9   a portion of it, but it's a snippet.  And it also
10   continues to say that these do not present an undue
11   burden for the person to vote.
12              SEN. DAVIS:  That's correct.  They said
13   they did not believe that it created a constitutionally
14   prohibited burden, based on the fact that voters in the
15   State of Indiana have the opportunity to vote a
16   provisional ballot even if they don't have a photo ID,
17   if they can show that they were unable to get one,
18   either because of their circumstances as an elderly
19   person or because they're indigent.  Does your bill
20   provide a special exception for people under those
21   circumstances to vote a provisional ballot?
22              SEN. FRASER:  The bill that I'm moving
23   forward I believe will be approved by the U.S. Supreme
24   Court and will be precleared by the Department of
25   Justice.
```

CONSIDERATION OF SENATE BILL 14 1/25/2011

1          SEN. DAVIS:   Okay.   Let's look at the

2    things that are required in your bill in terms of a

3    photo ID.   And I appreciate what you said earlier.   I

4    think it's true.   I think if you ask anybody on the

5    street that you might walk up to at this moment in time

6    whether they think it's a good idea for someone to show

7    a photo ID in order to vote, they would probably agree.

8    What they might not understand in agreeing with that,

9    though, are what the requirements are going to be in the

10   State of Texas in order for them to comply with that

11   particular requirement, and they also might not

12   appreciate the challenge and the difficulty that some

13   people may have in supplying that.

14          SEN. FRASER:   Senator, this is not rocket

15   science.   The people of your district understand very

16   clearly that when they walk into that voting booth, they

17   have to show a photo ID proving they are who they say

18   they are.   The people in Fort Worth, that area, I have

19   the polling data -- I believe the number is about --

20   around 90 percent.   And of that, that's Republicans and

21   Democrats.   So I believe the people that elected you,

22   sent you down here, have said, "We believe that when you

23   go in to vote, you should show identification to prove

24   you are who you say you are."   It's a very, very simple

25   concept.

1      SEN. DAVIS:  Are you aware that in the

2  Indiana law and also in the Georgia law, people are

3  allowed to come and vote with a state-issued student ID

4  if they're attending a state university?

5      SEN. FRASER:  I'm not advised.

6      SEN. DAVIS:  And your bill does not allow

7  that kind of a photo ID to be used.  Is that correct?

8      SEN. FRASER:  We have four forms of ID

9  that we have laid out as acceptable.  Those are all

10  recognized acceptable forms of identification that we

11  have recommended.

12      SEN. DAVIS:  And it does not include that,

13  for the record.  Are you also aware that in the Indiana

14  law and in the Georgia law, the ID can be expired and

15  still be utilized, but under the requirements in your

16  bill, that cannot occur?

17      SEN. FRASER:  You know, I think our belief

18  is that someone should have a valid ID that has not

19  expired.  "Expired" implies it is not valid, and we in

20  Texas believe you should have a valid ID.

21      SEN. DAVIS:  What will I do if my driver's

22  license expires the day before I go to vote and I'm not

23  aware of it until I show up at the polling place?

24      SEN. FRASER:  And I would ask you, what

25  would happen if you were driving to the polling place

CONSIDERATION OF SENATE BILL 14 1/25/2011

1    with an invalid driver's license?  What would happen?

2                 SEN. DAVIS:  I would get a ticket, but I

3    wouldn't be denied my constitutional right to vote as a

4    legal citizen of the United States.

5                 SEN. FRASER:  You would not be denied your

6    right to vote.  Under this law and under this bill, as

7    you know, if you walk in with an invalid driver's

8    license, you would be allowed to vote.  It would be a

9    provision vote, and you would be allowed six days to go

10   back to the place that issues driver's license, get a

11   valid license and come back, and your vote would be

12   counted.

13                SEN. DAVIS:  Well, we had a conversation

14   about that earlier in terms of how difficult and

15   challenging -- for some people it actually is -- to be

16   able to comply with that requirement.  But let me ask

17   you for a moment, if I bring in a state-issued Texas

18   driver's license and it expired 30 days ago or 60 days

19   ago or a year ago, how does that fail to prove that I'm

20   the person on the card, simply because it has expired?

21                SEN. FRASER:  Well, I would ask you the

22   same question.  If your driver's license expired 30 days

23   ago, is it acceptable to the patrolman that just stopped

24   you?  It's expired.

25                SEN. DAVIS:  I'm asking you the question.

1  The reason that we are advocating or you are advocating

2  for photo ID is so that the person who is receiving my

3  ballot can verify that I am the person casting it.

4  Correct?

5          SEN. FRASER:  Yes.

6          SEN. DAVIS:  And if my driver's license is

7  expired but it's a state-issued driver's license and it

8  has my name and it has my picture on it and my name

9  matches what's on the registrar's -- the precinct rolls,

10  how does that fail to prove that I'm who I am?

11          SEN. FRASER:  I think we go back to the

12  word "valid," do you have a valid Texas driver's

13  license?

14          SEN. DAVIS:  How does it fail to prove

15  that I am who I am?

16          SEN. FRASER:  You don't have a valid Texas

17  driver's license.

18          SEN. DAVIS:  And as I said earlier, in

19  Georgia and in Indiana, under the laws that were deemed

20  acceptable by the Supreme Court and the courts in

21  Georgia received preclearance by the Department of

22  Justice, each of those allows some acceptance of expired

23  IDs.

24          I want to talk a little bit about how

25  difficult if is, because I really think every one of us

CONSIDERATION OF SENATE BILL 14 1/25/2011

1          SEN. WEST:  Were you finished?

2          SEN. FRASER:  Yeah.

3          SEN. WEST:  Okay.  Now, the question,

4   though, that I asked, not -- and I agree with you that

5   most people will say that some form of photo ID is okay.

6   Now --

7          SEN. FRASER:  But what --

8          SEN. WEST:  Let me -- let me finish.  Let

9   me finish, though.  Hold on for a second.

10          I would agree with you that, but my

11   question wasn't about their opinion.  My question was:

12   Have you conducted any research on how burdens of photo

13   ID requirements may fall disproportionately on racial

14   minorities?

15          SEN. FRASER:  And I think the answer to

16   that, if you look at what happened in Indiana and

17   Georgia is a good example because it is a Section 5

18   state.  In those states, to our -- to my knowledge,

19   there has not been a single person that has came forward

20   to identify themself that they were in any way, you

21   know, in -- you know, kept from voting or inconvenienced

22   by voting.

23          So the answer to your question is, that I

24   look at the data that has been collected from the states

25   that have implemented, and they're coming forward.  That

CONSIDERATION OF SENATE BILL 14 1/25/2011

1   is the case.  Plus the fact that if you ask African

2   Americans or Hispanics in Texas, it's a very

3   straightforward question.  When you have 82 percent of

4   the public, the people that you represent, saying, you

5   know, "I think that's a good ideal," I'm having a lot of

6   trouble understanding how -- why you don't understand

7   that.

8             SEN. WEST:  Okay.  So the answer to my

9   question is, is that you did not conduct any type of

10  research on it other than looked at opinion polls and

11  referenced what went on in other states?

12            SEN. FRASER:  No, we've done all --

13  there's been a lot of research done.

14            SEN. WEST:  And that's what I was asking.

15  What research have you done --

16            SEN. FRASER:  I just explained --

17            SEN. WEST:  -- to make that determination?

18            SEN. FRASER:  -- to you what we did.  We

19  have looked at the experience of other states.  And

20  you're going to have witnesses come from some of the

21  other affected states, and you're going to be able to

22  ask that question:  Who has came forward in your state

23  and said it's a problem?

24            SEN. WEST:  Okay.  So you're saying, then,

25  that as a result of experiences in other states and an

CONSIDERATION OF SENATE BILL 14  1/25/2011

1    opinion poll, that that is the sum total of the research

2    that's been done by you in preparation of this bill?

3                SEN. FRASER:  Senator, I think the people

4    in your district understand very clearly.  If you ask

5    them a direct question, someone you represent, and said,

6    "Do you favor or oppose requiring a valid photo ID

7    before you're allowed to vote," this is -- that's not

8    rocket science.

9                SEN. WEST:  Well, the --

10               SEN. FRASER:  "Should you be required to

11   show your picture ID when you go into vote?"  That's --

12   that's -- to me, that's -- that's, you know, pretty

13   telling.

14               SEN. WEST:  Well, the great thing about it

15   is, we're going to have an opportunity to do just that.

16   Because guess what?  I've got a few people from my

17   district down here to testify, so you'll have an

18   opportunity to ask them that.  Okay?

19               SEN. FRASER:  Good.

20               SEN. WEST:  But, again, that's the sum

21   total of your research, though.  Right?

22               SEN. FRASER:  I didn't say that was the

23   sum total of my research.

24               SEN. WEST:  Now, would you agree that

25   Texas has a larger proportion of minorities than

1    Indiana?

2                    SEN. FRASER:  Not advised.

3                    SEN. WEST:  So if -- if the demographic

4    information that we have from the U.S. Department of

5    Census indicated that, you would not disagree with that.

6    Correct?

7                    SEN. FRASER:  Well, I mean, every state

8    has a different demographic of the makeup of people

9    within the state.

10                   SEN. WEST:  Sure.  I know that, yeah.

11                   SEN. FRASER:  Georgia is a -- you know,

12   they're -- they're a Section 5 voter rights state, but

13   their makeup is not exactly like Texas.

14                   SEN. WEST:  That's the point.  That's what

15   I'm asking you.  You said you weren't advised, so I was

16   just trying to point to you some set of facts that all

17   of us commonly know that we get from the Department of

18   Census, U.S. Department of Census.  And if they give

19   different demographic information for the states, then

20   that would probably be controlling, and you would agree

21   that that's the best evidence that we have of what the

22   population is in those various states.  That's all I'm

23   asking.  Now, let me ask this.

24                   SEN. FRASER:  But you're trying to answer

25   my question, and I did not say that.

1       SEN. WEST: No, I'm not. But are the
2  forms of identification listed in your bill the least
3  restrictive options in order to achieve the goal of
4  avoiding what you call voter identification fraud?
5       SEN. FRASER: Okay. You're going to have
6  to ask that again.
7       SEN. WEST: Are the forms of
8  identification that you've listed in the bill the least
9  restrictive options in order to achieve the goal of
10 avoiding what you have said is voter identification
11 fraud?
12      SEN. FRASER: And I think what you're
13 asking, which is going to be the easiest to use? And
14 the -- the data, if you look back at 2006, the number of
15 people that have registered to vote, about -- I think
16 the number now is 91 percent actually use their driver's
17 license when they registered to vote. So the assumption
18 is at least 91 percent of the people that voted -- or
19 that registered since 2006 had a driver's license. So
20 I'd say that's the -- if it's the -- the easiest thing,
21 I'd say a driver's license.
22      SEN. WEST: So this -- the list of
23 identifications that you use as the -- is the least
24 restrictive options that you could come up with?
25      SEN. FRASER: Well, I don't -- I'm not

CONSIDERATION OF SENATE BILL 14 1/25/2011

```
 1   sure.  Your verbiage you're using, I don't know that
 2   that's the intent.
 3                  SEN. WEST:  Well --
 4                  SEN. FRASER:  I'm saying that the thing
 5   that the -- the type of identification that is most
 6   readily available appears to be a driver's license.
 7   It -- we think, that is.
 8                  SEN. WEST:  Okay.  Now, since there are
 9   studies that show that African Americans and Hispanics
10   are more affected by poverty and --
11                  SEN. FRASER:  Ask him, then.
12                  We're trying to figure out if this is a
13   filibuster.
14                  SEN. WEST:  Is it a what?
15                  SEN. FRASER:  A filibuster?
16                  SEN. WEST:  Oh, no, this is serious
17   business.  This is serious business.
18                  SEN. FRASER:  I guess I would remind you
19   that the information that was put into the record this
20   morning by Senator Huffman, the questions you've gone
21   over, I believe we put these --
22                  SEN. WEST:  Well, at any -- at any point,
23   you can defer to whomever you want to answer the
24   question.
25                  SEN. FRASER:  No, no, I'm saying --
```

CONSIDERATION OF SENATE BILL 14 1/25/2011

1          SEN. WEST:  You've been referring to the

2  Secretary of State.

3          SEN. FRASER:  -- these -- the questions --

4  the questions you're asking, the question and the answer

5  are already in the record from two years ago; that

6  you're asking the exact same question, and I'm answering

7  the exact same answer.  It's already in the --

8          SEN. WEST:  And it may very well be.  I

9  just don't remember.  I haven't gone back and read that

10 entire record.  It was like 26 hours.  So if I'm being a

11 little bit redundant, please give me -- give me a little

12 space on that.

13          Let me go back to the questions I'm

14 asking.  Studies have shown that African Americans and

15 Hispanics are more affected by poverty and, therefore,

16 are more likely to participate in government benefit

17 programs.  Will the elimination of the government

18 documents as a form of ID disproportionately affect

19 African Americans and Hispanics?

20          SEN. FRASER:  I'm not advised.

21          SEN. WEST:  Okay.  If in fact -- well, let

22 me back up and ask you this question.

23          Do you agree that African Americans and

24 Hispanics are disproportionately affected by poverty in

25 the state of Texas?

CONSIDERATION OF SENATE BILL 14 1/25/2011

```
 1                    SEN. FRASER:  Not advised.
 2                    SEN. WEST:  Okay.  Do you --
 3                    SEN. FRASER:  I grew up in a pretty poor
 4   family, so --
 5                    SEN. WEST:  Well, that's what I know, and
 6   correct me if I'm wrong because we've had our
 7   conversations.  Your father was a minister, too.  Right?
 8                    SEN. FRASER:  Minster and --
 9                    SEN. WEST:  Okay.  He went to a lot of
10   African American churches?
11                    SEN. FRASER:  Yes, he did.
12                    SEN. WEST:  Did a little singing and stuff
13   like that?
14                    SEN. FRASER:  Yes.
15                    SEN. WEST:  Okay.  And do you represent a
16   district that has a high poverty level -- or excuse
17   me -- a high ethnic minority population?
18                    SEN. FRASER:  Interestingly -- well, and
19   what you call high, it is not one of the highest
20   percentage wise of ethnic minority.  But the last figure
21   I was shown, my district is the third poorest district
22   in the state, right behind Senator Uresti's.  That
23   that -- that number is a couple of year's old, but
24   I'm -- you know, the --
25                    SEN. WEST:  Okay.
```

1      SEN. FRASER:  -- people in my district
2  are -- are the working poor.
3      SEN. WEST:  Okay.  The -- the protected
4  classes, that would be an African American and
5  Hispanics, do you have a high concentration of African
6  Americans and Hispanics in your district?
7      SEN. FRASER:  Well, I don't know what
8  you'll call a high percentage.  I've got --
9      SEN. WEST:  Okay.  Comparatively speaking.
10      SEN. FRASER:  There -- there are a lot of
11  my voters in my district that, you know, I'm -- I love
12  to say "my constituents" -- that are African American or
13  Hispanic.
14      SEN. WEST:  Are they in poverty or what?
15  I mean, you know what poverty is.
16      SEN. FRASER:  Well, Senator, if --
17      SEN. WEST:  Oh.
18      SEN. FRASER:  If I have the third poorest
19  district in the state, that implies that we have some
20  people that are working poor.
21      SEN. WEST:  Let me just ask you this
22  question.
23      Do you know whether or not the elimination
24  of the government documents that have hereto before been
25  utilized by voters for identification purposes at the

CONSIDERATION OF SENATE BILL 14 1/25/2011

```
 1  polls --
 2              SEN. FRASER:  Issued before?
 3              SEN. WEST:  Yeah, I mean, under current
 4  law.  Let me back up, then.
 5              Based on current law and the various
 6  government identifications that can be used for purposes
 7  of voting, by eliminating those, whether they have an
 8  adverse impact on ethic minorities in the state?
 9              SEN. FRASER:  Let me -- let me tell you
10  that the people in my district voted -- or they're
11  polling that they -- 92 percent of them say that they're
12  in favor of this -- this requirement.
13              SEN. WEST:  Okay.  So you don't -- and
14  that's your response to my question?
15              SEN. FRASER:  My response is, is that I
16  think the people of the state of Texas, which makes
17  up -- I think it was 83 percent of -- of African
18  Americans and 85 percent of Hispanics, said that they're
19  in favor of it.  I'm sorry.  It's 82 percent Hispanic --
20  I'm sorry -- Hispanic, 80 -- 83 percent Hispanic, the
21  African American, which is -- it's listed as a black
22  vote, is 82 percent say they are in favor of asking for
23  a photo ID.
24              So it's -- it's -- this is a pretty easy
25  question for them, "Should you have to show your -- your
```

CONSIDERATION OF SENATE BILL 14 1/25/2011

1   photo ID, your driver's license, when you come in to
2   vote?" And they said, "Sure. That's" -- you know,
3   "That's fair."
4                 SEN. WEST: And that's your response to my
5   question?
6                 SEN. FRASER: Yes.
7                 SEN. WEST: Okay. No more questions at
8   this time.
9                 SEN. FRASER: Thank you, Senator.
10                CHAIRMAN DUNCAN: Chair recognizes Senator
11  Lucio for questions.
12                SEN. LUCIO: Thank you, Mr. Chairman.
13                Senator Fraser, under this legislation,
14  there are no exceptions at all if you do not have a
15  driver's license -- and correct me if I'm wrong --
16  military ID, citizenship certificates, or passports.
17  Now, not even Senate IDs are appropriate for the
18  purposes of voting. That means the state employee
19  working in the building wishing to cast a ballot during
20  early voting at the Sam Houston Building couldn't use a
21  combination of their voter registration card and their
22  Senate ID. Further, this bill's requirements for
23  identification are stronger than what's used for new
24  employees in obtaining driver's license, the way we
25  understand it.

CONSIDERATION OF SENATE BILL 14 1/25/2011

```
 1              SEN. FRASER:  -- of the ballot, making
 2   sure that the person that is trying to vote is who they
 3   represent to be.
 4              SEN. ELLIS:  And if that's the case, why
 5   wouldn't you apply a voter -- photo voter identification
 6   requirement to mail-in ballots?  Don't you think there's
 7   probably room for more fraud for the mail-in ballots?
 8              SEN. FRASER:  I will support you a hundred
 9   percent.  You file that bill, you come forward with it,
10   and we'll talk about it.  But this bill does not in any
11   way address mail-in ballots.  This is only in-person
12   voter --
13              SEN. ELLIS:  But you -- but you will
14   concede that there's probably room, just from a
15   layperson's perspective?  Neither you nor I are experts
16   on it, and I'm just asking you to make the point.  Will
17   you concede that there's room -- there's potential for
18   more fraud with a mail-in ballot than with somebody
19   showing up?
20              SEN. FRASER:  I'm going to concede that
21   the bill that I'm laying out today will help a lot with
22   the in-person, you know, potential of fraud, and it will
23   make sure the person there is -- is who they say they
24   are.
25              SEN. ELLIS:  If you just had to guess,
```

CONSIDERATION OF SENATE BILL 14 1/25/2011

1  to accomplish.  Is that right?

2                  SEN. FRASER:  Yes.

3                  SEN. WILLIAMS:  The other thing that I

4  wanted to correct, for the record, Senator Watson opined

5  earlier that a lot of this funding for these items had

6  been struck in the budget, and actually, I went back and

7  pulled a copy of the budget.  I had not looked at this

8  part, and so there were some budget riders that had

9  expired and that were no longer relevant in the current

10 budget.  Those were struck.  And under Strategy B.1.4,

11 under elections improvement, administer Federal Help

12 America Vote Act, we actually have, it looks like, a

13 total of about $43 million over the next biennium that's

14 been appropriated in the budget that Senator Ogden laid

15 out for us earlier.  So I just wanted to clear that up

16 for the record because that's kind of been a moving

17 target.

18                 Another question that I had for you was

19 the -- I wanted to go back, if I could, and -- and just

20 touch on what my understanding after hearing all this

21 questioning that's gone on, what your -- the purpose of

22 your bill is -- really is to deter and detect fraud

23 in-person voter fraud at the polls.  Is that correct?

24                  SEN. FRASER:  That is correct.

25                  SEN. WILLIAMS:  Okay.  And has the United

1           SEN. WILLIAMS:  So a year from now.  So

2  we've got a lot of time to let these people know what's

3  coming.

4           And then the other thing I've heard a lot

5  about is current law, and, you know, there's been a lot

6  of discussion.  In fact, a lot of what we've talked

7  about is what's actually on the books right now, and

8  your bill is not touching any of that top side or

9  bottom.  Really, most of what you do is very limited by

10  changing what the requirements are when you come to the

11  polls.  Is that correct?  There's not any other real

12  substantive change to election law here.

13           SEN. FRASER:  We're only addressing the --

14  the actual in-person voting and the identification

15  required when somebody votes in person.  We're not

16  addressing mail-in ballots or any of the other

17  provisions.  It's just that one section.

18           SEN. WILLIAMS:  Well, thank you for

19  allowing me to question you about this and I appreciate

20  you bringing this issue before us and I especially

21  appreciate the fortitude that you've shown during this

22  long debate.  Thank you.

23           SEN. FRASER:  Thank you, Senator.

24           CHAIRMAN DUNCAN:  Chair recognizes Senator

25  Shapiro.

# SENATE JOURNAL

EIGHTY-SECOND LEGISLATURE — REGULAR SESSION

## AUSTIN, TEXAS

### PROCEEDINGS

### FIFTH DAY
(Continued)
(Wednesday, January 26, 2011)

### AFTER RECESS

The Senate met at 11:10 a.m. and was called to order by President Pro Tempore Ogden.

Rabbi Brian Strauss, Congregation Beth Yeshurun, Houston, offered the invocation as follows:

Almighty God and universal father over all of mankind, we are gathered here to deliberate and make difficult decisions concerning the welfare of our fellow Texans. As we begin, we beseech Your divine assistance, and we pray that You cast the rays of Your divine guidance upon all assembled here, our Lieutenant Governor, Senators, and all others who sacrifice every day to make Texas a better place. Help us, O Lord, to give a full measure of devotion with sincerity and honesty to those problems—political, social, and economic—which continue to knock upon the doors of humanity. Enable us to reflect and to discuss the matters before us in a spirit of wisdom, intelligence, and in the light of Your eternal truth. We beseech You, eternal God, to help us concentrate our efforts toward the eradication of hatred, prejudice, selfishness, poverty, and all forms of human suffering. O Lord, may goodwill and peace belong to all; and one day, may the people of this great state proclaim in unison: All people are deserving of our help as we are all created in the image of God. To this, let us say, Amen.

### SENATE RESOLUTION 74

Senator Nelson offered the following resolution:

SR 74, Proclaiming January, 2011, Communities In Schools Month and January 26, 2011, Communities In Schools Day at the State Capitol.

The resolution was again read.

The resolution was previously adopted on Monday, January 24, 2011.

### GUESTS PRESENTED

Senator Nelson was recognized and introduced to the Senate Gary Henderson, Sandy Chavarria, and a Communities In Schools delegation.

The Senate welcomed its guests.





## SENATE RESOLUTION 48

Senator Harris offered the following resolution:

WHEREAS, The Senate of the State of Texas is pleased to recognize the 2010 American League champion Texas Rangers on the occasion of the first World Series appearance in franchise history; and

WHEREAS, Originally based in the nation's capital and known as the Washington Senators, the franchise moved to Arlington after the 1971 season and began its history as the Texas Rangers; through the years, the Rangers have appeared in the playoffs three times prior to the 2010 season; and

WHEREAS, On August 12, 2010, Major League Baseball unanimously approved the sale of the Texas Rangers from Thomas O. Hicks to the group known as Rangers Baseball Express, led by Chuck Greenberg and Nolan Ryan; and

WHEREAS, The 2010 Rangers became the first team in franchise history to win a playoff series when they defeated the Tampa Bay Rays three games to two in the American League Division Series; they went on to avenge three previous playoff series losses to the New York Yankees by defeating them in six games in the American League Championship Series to advance to the World Series; and

WHEREAS, These skilled athletes have demonstrated great talent, enthusiasm, and perseverance throughout the year; overcoming a slow start, they ended the regular season with a record of 90-72, winning the American League West Division; team members can take great pride in their outstanding performance; and

WHEREAS, Under the superior leadership and expertise of manager Ron Washington and the entire front office, the Rangers have developed exceptional teamwork and discipline and have laid the foundation for continued success in the years to come; and

WHEREAS, The citizens of Arlington and the Dallas-Fort Worth Metroplex and Texans across the state are proud of the Rangers for their hard work, their impressive skills, and their fine sportsmanship; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 82nd Legislature, hereby commend the Texas Rangers on their exceptional season and extend to them congratulations on winning the American League championship and advancing to the World Series; and, be it further

RESOLVED, That a copy of this Resolution be prepared for the team as an expression of high regard from the Texas Senate.

HARRIS
DAVIS

#### (President in Chair)

SR 48 was again read.

The resolution was previously adopted on Tuesday, January 25, 2011.

## GUESTS PRESENTED

Senator Harris was recognized and introduced to the Senate Nolan Ryan and Chuck Greenberg, co-owners of the Texas Rangers, as well as Ron Washington, manager.

The Senate welcomed its guests.

## GUESTS PRESENTED

Senator Zaffirini, joined by Senator Watson, was recognized and introduced to the Senate the Girls' School of Austin fourth grade class including Sophia Martinez and teacher, Rachael Lee.

The Senate welcomed its guests.

## PHYSICIAN OF THE DAY

Senator Davis was recognized and presented Dr. Joane Baumer of Fort Worth as the Physician of the Day.

The Senate welcomed Dr. Baumer and thanked her for her participation in the Physician of the Day program sponsored by the Texas Academy of Family Physicians.

## SENATE RESOLUTION 2

Senator Ogden offered the following resolution:

SR 2, Congratulating members of the TALL XII class for their selection as participants.

The resolution was read and was adopted without objection.

## GUESTS PRESENTED

Senator Ogden was recognized and introduced to the Senate Dr. Jim Mazurkiewicz, Leadership Program Director and Professor, Texas Agrilife Extension Service, and members of the TALL XII class.

The Senate welcomed its guests.

## GUEST PRESENTED

Senator Gallegos was recognized and introduced to the Senate Sylvia Garcia, President of the National Association of Latino Elected Officials.

The Senate welcomed its guest.

## SENATE RESOLUTION 83

Senator Williams offered the following resolution:

WHEREAS, The Senate of the State of Texas is pleased to recognize the Jewish Federation of Greater Houston on the occasion of its 75th anniversary; and

WHEREAS, The Jewish Federation of Greater Houston was founded in 1936 as the Jewish Community Council to support Jewish causes and to further social services and philanthropic works locally, nationally, and around the world; its mission is to preserve and enrich Jewish communal life through innovative and visionary leadership that is responsive and responsible to Jewish communities everywhere; and

WHEREAS, The federation has for 75 years worked to give voice to the Jewish community and to ensure that the basic necessities of life are provided for its most vulnerable members, including those who are poor, elderly, or disabled; and

WHEREAS, Jewish tradition calls on each individual to contribute to the well-being of the less fortunate, and the federation has diligently worked to help the members of the Houston Jewish community fulfill this charge; along with its partners, it provides numerous volunteer opportunities for people of all ages; and

WHEREAS, This exemplary organization honors another central tenet of Jewish tradition by engaging young people and inspiring their connection to the community, so that teachings may be passed from one generation to the next; it is truly deserving of recognition for its many contributions to the Houston community; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 82nd Legislature, hereby commend the Jewish Federation of Greater Houston on its legacy of philanthropy and support and extend to its members best wishes for a memorable 75th anniversary; and, be it further

RESOLVED, That a copy of this Resolution be prepared for the federation as an expression of high regard from the Texas Senate.

                                    WILLIAMS
                                    SHAPIRO
                                    WHITMIRE

SR 83 was again read.

On motion of Senator Huffman and by unanimous consent, the names of the Lieutenant Governor and Senators were added to the resolution as signers thereof.

The resolution was previously adopted on Tuesday, January 25, 2011.

### GUESTS PRESENTED

Senator Williams was recognized and introduced to the Senate Jewish Federation of Greater Houston members: Steven Finkelman, Leonard Goldstein, Rob Shoss, Lee Wunsch, and Lisa Yoram.

The Senate welcomed its guests.

### GUESTS PRESENTED

Senator Watson was recognized and introduced to the Senate a fourth grade class from Hyde Park Baptist Schools and teachers, Peggy Buckmeyer and Claudia Bernard.

The Senate welcomed its guests.

### SENATE RESOLUTION 81

Senator Harris offered the following resolution:

SR 81, Celebrating January 26, 2011, as Arlington to Austin Day.

                                    HARRIS
                                    DAVIS

The resolution was again read.

The resolution was previously adopted on Tuesday, January 25, 2011.

## GUESTS PRESENTED

Senator Harris, joined by Senator Davis, was recognized and introduced to the Senate members of the Arlington Chamber of Commerce: Earl Harcrow, Foundation Chair; Robert Cluck, Mayor; Jerry McCullough, Arlington ISD Superintendent; and Wes Jurey, President.

The Senate welcomed its guests.

## SENATE RESOLUTION 73

Senator Nelson offered the following resolution:

SR 73, Recognizing January 23 through January 29, 2011, as Texas Nurse Anesthetists Week.

The resolution was again read.

The resolution was previously adopted on Monday, January 24, 2011.

## GUESTS PRESENTED

Senator Nelson was recognized and introduced to the Senate the Texas Association of Nurse Anesthetists delegation.

The Senate welcomed its guests.

## SENATE RESOLUTION 82

Senator Zaffirini offered the following resolution:

WHEREAS, The Senate of the State of Texas is pleased to honor the City of Laredo and its delegation and to recognize January 26, 2011, as Laredo Legislative Day at the Capitol; and

WHEREAS, Laredo, truly a gem along the Rio Grande, was established in 1755 by Don Tomas Sanchez, and its history offers a compelling tale, as the town was forged by Spaniards, Indians, Mexicans, Texans, and Americans; a dynamic bilingual and bicultural community, it is a true Texas city proud of its Mexican roots, making it a unique city under seven flags that daily celebrates its dual historical and cultural ties; and

WHEREAS, Situated on the banks of the Rio Grande, Laredo is now the 10th-largest city in Texas and the largest inland port on the southern United States border; it is one of the top four ports-of-commerce in the nation, and in 2010, the city handled 40 percent of all overland trade between the United States and Mexico; and

WHEREAS, Education plays a vital role in the life of Laredo, where three institutes of higher learning have almost 110 years of combined experience; Laredo Community College, first established in 1947 on the 100-year-old grounds of the historic Fort McIntosh, boasts two campuses to better serve the entire city; Texas A&M International University has been educating local Laredo leaders for the last 40 years; and the Laredo Extension Campus of The University of Texas Health Science Center at San Antonio thrives with students, who benefit from new interlocal agreements that give medical students practical experience; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 82nd Legislature, hereby extend best wishes for a celebratory Laredo Legislative Day at the Capitol; and, be it further

RESOLVED, That a copy of this Resolution be prepared for the citizens of Laredo as a memento of this occasion.

SR 82 was again read.

The resolution was previously adopted on Tuesday, January 25, 2011.

## GUESTS PRESENTED

Senator Zaffirini was recognized and introduced to the Senate Raul Salinas, Mayor of the City of Laredo; Nora Rivera, Mayor of the City of Rio Bravo; and Laredo City Councilmembers: Cindy Liendo Espinoza, Juan Narvaez, Alejandro Perez, Jr., Esteban Rangel, and Charlie San Miguel.

The Senate welcomed its guests.

## SENATE RESOLUTION 90

Senator Ogden offered the following resolution:

SR 90, Recognizing Lisa Benford on the occasion of her retirement from the Texas Legislative Council.

The resolution was read and was adopted without objection.

## GUEST PRESENTED

Senator Ogden was recognized and introduced to the Senate Lisa Benford and congratulated her on her retirement from the Texas Legislative Council.

The Senate welcomed its guest.

## GUESTS PRESENTED

Senator Birdwell was recognized and introduced to the Senate members of Leadership Farm Bureau.

The Senate welcomed its guests.

## GUESTS PRESENTED

Senator Zaffirini was recognized and introduced to the Senate members of the Texas Farm Bureau, Atascosa County: Lloyd House, Raymond Meyer, Martin Krueger, Bettie House, Shirley Stevens, Walter Stevens, Anna Meyer, Pete Pawelek, and Lynse Pawelek, accompanied by Clifton Stacey, Frio County.

The Senate welcomed its guests.

## SENATE RESOLUTION 56

Senator Watson offered the following resolution:

SR 56, In memory of Dr. James Paul Duncan of Austin.

On motion of Senator Watson, the resolution was read and was adopted by a rising vote of the Senate.

In honor of the memory of James Paul Duncan, the text of the resolution is printed at the end of today's *Senate Journal*.

### GUESTS PRESENTED

Senator Watson was recognized and introduced to the Senate family members of James Paul Duncan: Nancy Duncan, wife; Brad Duncan, son; Mary de la Garza, daughter; Kevin Sadler, former son-in-law; and Cullen Sadler, grandson.

The Senate welcomed its guests and extended its sympathy.

### RECESS

On motion of Senator Whitmire, the Senate at 12:28 p.m. recessed until 2:30 p.m. today.

### AFTER RECESS

The Senate met at 2:49 p.m. and was called to order by the President.

### SENATE RESOLUTION 119

The President laid before the Senate the following resolution:

WHEREAS, Subsection (b), Section 5, Article III, Texas Constitution, reads:

"When convened in regular Session, the first thirty days thereof shall be devoted to the introduction of bills and resolutions, acting upon emergency appropriations, passing upon the confirmation of the recess appointees of the Governor and such emergency matters as may be submitted by the Governor in special messages to the Legislature. During the succeeding thirty days of the regular session of the Legislature the various committees of each House shall hold hearings to consider all bills and resolutions and other matters then pending; and such emergency matters as may be submitted by the Governor. During the remainder of the session the Legislature shall act upon such bills and resolutions as may be then pending and upon such emergency matters as may be submitted by the Governor in special messages to the Legislature."; and

WHEREAS, It is specifically provided in Subsection (c), Section 5, Article III, Texas Constitution, that either house may otherwise determine its order of business by an affirmative vote of four-fifths of its membership; now, therefore, be it

RESOLVED by the Senate of the State of Texas, 82nd Legislature, by an affirmative vote of four-fifths of its membership, That the senate determine that the constitutional order of business for the first thirty days of the regular session is hereby suspended to the extent necessary to allow the senate to hold hearings during the first thirty days to consider any bill, resolution, or other matter pending before the senate.

ELTIFE

SR 119 was read and was adopted by the following vote: Yeas 30, Nays 0.

Absent: Uresti.

### LEAVE OF ABSENCE

On motion of Senator Whitmire, Senator Uresti was granted leave of absence for the remainder of the day on account of important business.

## MOTION TO PLACE
## SENATE BILL 14 ON SECOND READING

Senator Fraser moved to suspend all necessary rules at this time to take up for consideration **SB 14** on its second reading (Set as special order) (Submitted by Governor as an emergency matter):

**SB 14,** Relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

Question — Shall all necessary rules be suspended?

Senator Van de Putte was recognized to read a statement in reference to **SB 14.**

Senator West moved to have Senator Van de Putte's statement reduced to writing and printed in the *Senate Journal.*

There was objection.

Senator Duncan was recognized to comment on Senator Van de Putte's statement and asked that his remarks be reduced to writing and printed in the *Senate Journal.*

Senator West withdrew his motion.

Question — Shall all necessary rules be suspended?

## MOTION IN WRITING

Senator Fraser offered the following Motion In Writing:

Mr. President:

I move to suspend all necessary rules to take up and consider **SB 14** at this time.

FRASER

Question — Shall the Motion In Writing be adopted?

Senator Whitmire was recognized to comment on the statements by Senator Van de Putte and Senator Duncan.

Senator West again moved to have Senator Van de Putte's remarks reduced to writing.

There was objection.

Senator Duncan offered a substitute motion to have the remarks by Senators Van de Putte, Duncan, and Whitmire reduced to writing and printed in the *Senate Journal.*

The substitute motion was adopted without objection.

## REMARKS

**Senator Van de Putte:** Thank you, Mr. Chairman, and thank you, Mr. President. The Senate Democrats, including those who represent districts in which minority voters are electing candidates of their choice, and who also speak on behalf of minority voters in this state, have made clear their unanimous opposition to the voter ID legislation. That opposition remains. And no matter the specific time of passage of this bill, the outcome is inevitable and our opposition remains firm. In the interest of

continuing debate on the legislation during appropriate hours, however, and to avoid late night debate, which the public would find more difficult to observe, we will not oppose a vote to suspend the 24-hour layout requirement. Debate on this legislation was in the Committee of the Whole consisting of all 31 Members of the Senate. Thus, we see little compelling need for such layout requirement, which typically exists to give those Senators not on the relevant committee opportunity to review legislation. All 31 Senators have had ample opportunity to review the bill, which is the purpose of having a layout requirement. Thank you, Mr. Chairman.

**Senator Duncan:** I appreciate the fact that we're working together to try to move this bill and we've talked and worked a lot, but the only thing in your statement that I might have exception to is the fact that all Members of this Senate represent minority voters. And, I want to make clear that that is a statement of this whole body and not just of one political party or another. So, with that understanding, I will go ahead and not have an objection. And, I'd like my comments put in the record, if we could.

**Senator Whitmire:** Senator Duncan, I want to clarify in your comments to Senator Van de Putte before you pose the question, really a comment. You said that you felt like all Members on the floor were attempting to move the bill forward.

**Senator Duncan:** That's correct.

**Senator Whitmire:** Okay, well, I want to strongly disagree with you that that's not the position of the opposition. We're not voting for this rule, or this motion because we're trying to move this bill forward. We're trying to move the process forward and the only, and the distinction is we'll do it at 9:20 tonight or at three o'clock this afternoon, but we're going to do everything we can to stop this bill.

**Senator Duncan:** I understand that.

**Senator Whitmire:** But we want to have the discussion in the middle of the afternoon versus the middle of the morning.

**Senator Duncan:** That wasn't my, that, that really–

**Senator Whitmire:** I know.

**Senator Duncan:** –wasn't what I intended to say.

**Senator Whitmire:** You understand.

**Senator Duncan:** I just, I was intending to, I, I was objecting to the statement to the extent–

**Senator Whitmire:** I respect that.

**Senator Duncan:** –it said that, you know, that it implied that not all Members of this body represent minority interests. That was my objection and that's what I wanted in the record.

**Senator Whitmire:** Certainly, and I think you have a right to make that record and I heard your feelings, but I could not allow your comment that we're all, 31 of us, attempting to move this bill forward, on the record, without making it very clear that that's not the way we feel towards voting for this motion, which allow us to bring it

up immediately. We're very much opposed to the bill, which you will get to witness in a moment. But we do think it good judgment to go forward at this point, versus going into the mid-part of the next morning.

**Senator Duncan:** I think we can all agree on that and I think we understand that. I had only one objection to the statement and I made that objection.

Question — Shall the Motion In Writing be adopted?

The President requested the Secretary of the Senate to again read the Motion In Writing.

### MOTION IN WRITING

The Secretary of the Senate again read the following Motion In Writing:

Mr. President:

I move to suspend all necessary rules to take up and consider **SB 14** at this time.

FRASER

Senator Fraser withdrew the Motion In Writing.

### MOTION IN WRITING

Senator Fraser offered the following Motion In Writing:

Mr. President:

I move to suspend Senate Rule 5.11 and Senate Rule 7.12 to take up **SB 14** at this time, which is set as a special order for 9:20 p.m. today.

FRASER

The Motion In Writing was read and was adopted without objection.

### SENATE BILL 14 ON SECOND READING

The President laid before the Senate **SB 14** by Senator Fraser at this time on its second reading (Set as special order) (Submitted by Governor as an emergency matter):

**SB 14**, Relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

The bill was read second time.

Senator Watson offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **SB 14** by striking below the enacting clause and adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS accordingly:

SECTION __. Subchapter A, Chapter 61, Election Code, is amended by adding Section 61.015 to read as follows:

Sec. 61.015. FRAUDULENT OR DECEPTIVE VOTING PRACTICES. (a) A person commits an offense if the person knowingly:

(1) impersonates or attempts to impersonate another person, or uses or attempts to use the identify of another person, for the purpose of voting in any election in this state.

(2) removes the name of an eligible voter from the list of registered voters or the poll list for the precinct;

(3) prevents the deposit in the ballot box of a marked and properly folded ballot that was provided at the polling place to the voter who is depositing it or for whom the deposit is attempted;

(4) provides false information to a voter about voting procedures, resulting in the voter:

(A) refraining from voting under a reasonable belief that the voter may not vote or that the procedures are intimidating or cumbersome; or

(B) otherwise being prevented from casting a ballot that may legally be counted;

(5) places restrictions on a voter's exercise of the right to vote that are not required by this code, resulting in the voter:

(A) refraining from voting under a reasonable belief that the voter may not vote; or

(B) otherwise being prevented from casting a ballot that may legally be counted; or

(6) impersonates a law enforcement officer or provides false information about law enforcement procedures for the purpose of intimidating voters regardless of whether the voter casts a vote.

(b) An offense under this section is a felony of the first degree.

SECTION ___. Subsections 64.010(a)(2) and 64.012(a)(3), Election Code, are repealed.

SECTION ___. The change in law made by this Act applies only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense was committed before that date.

SECTION ___. This Act takes effect September 1, 2011.

WATSON<br>RODRIGUEZ

The amendment to SB 14 was read.

(President Pro Tempore Ogden in Chair)

On motion of Senator Fraser, Floor Amendment No. 1 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 2**

Amend **SB 14** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____. Sections 20.063(a) and (b), Election Code, are amended to read as follows:

(a)  The Department of Public Safety shall:

(1)  provide to each person who applies in person at the department's offices for an original or renewal of a driver's license, a personal identification card, or a duplicate or corrected license or card [an opportunity to complete] a voter registration application form and an opportunity to complete the form; and

(2)  inform each person who applies in person at the department's offices for an original or renewal personal identification card or a duplicate or corrected card that the department may not collect a fee for a personal identification card issued to a person who states that the person is obtaining the personal identification card for the purpose of voting and:

(A)  who is a registered voter in this state and presents a valid voter registration certificate; or

(B)  who is eligible for registration under Section 13.001 and submits a registration application to the department.

(b)  When the department processes a license or card for renewal by mail, the department shall deliver to the applicant by mail a voter registration application form. The department by rule shall prescribe a form and manner of providing to persons renewing licenses and cards by mail a notice stating the information required to be provided under Subsection (a) to a person who applies in person at the department's offices for an original or renewal personal identification card or a duplicate or corrected card.

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 2 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Gallegos offered the following amendment to the bill:

**Floor Amendment No. 3**

Amend **SB 14** as follows:

(1)  In SECTION 3 of the bill, in added Section 31.012(a), Election Code (page 2, line 19), between "website" and the period, insert "in each language in which voter registration materials are available".

(2) In SECTION 3 of the bill, add a new subsection to added Section 31.012, Election Code (page 2, between lines 23 and 24), to read as follows:

(c) The county clerk of each county shall post in a prominent location at the clerk's office a physical copy of the notice prescribed under Subsection (a) in each language in which voter registration materials are available.

GALLEGOS
HINOJOSA
LUCIO

The amendment to SB 14 was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 3 except as follows:

Absent-excused: Uresti.

Senator Lucio offered the following amendment to the bill:

**Floor Amendment No. 4**

Amend **SB 14** as follows:

(1) In SECTION 3 of the bill, in added Section 31.012(a), Election Code (page 2, line 19), between "website" and the period, add "in English and Spanish".

(2) In SECTION 3 of the bill, in added Section 31.012, Election Code (page 2, between lines 23 and 24), add the following new subsection:

(c) The county election administrator or county clerk, as applicable, shall post in a prominent location a physical copy of the notice prescribed by Subsection (a) in English and Spanish.

LUCIO
HINOJOSA

The amendment to SB 14 was read.

Senator Lucio withdrew Floor Amendment No. 4.

Senator Zaffirini offered the following amendment to the bill:

**Floor Amendment No. 5**

Amend **SB 14** in SECTION 3 of the bill, in added Section 62.016, Election Code (page 3, line 20), after "24-point.", by adding "The notices required under this subsection shall be posted separately from all other notices required by state or federal law."

The amendment to SB 14 was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 5 except as follows:

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 6**

Amend SB 14 in SECTION 7 of the bill, in amended Section 63.001(c), Election Code (page 4, line 6), by adding after the period "If in determining whether a voter's name is on the list of registered voters the election officer determines that the voter's name on the documentation does not match exactly the name on the list, the voter shall be accepted for voting as otherwise required by this section if the voter submits an affidavit stating that the voter is the person on the list of registered voters."

The amendment to **SB 14** was read.

Senator Davis withdrew Floor Amendment No. 6.

Senator Van de Putte offered the following amendment to the bill:

**Floor Amendment No. 7**

Amend SB 14 in SECTION 7 of the bill, in amended Section 63.001(d), Election Code (page 4, line 10), by adding after the period "In determining whether to accept a voter for voting, the election officer may not consider whether any address shown on the voter's documentation matches the address of the voter as shown on the list."

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 7 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 8**

Amend SB 14 in SECTION 7 of the bill, in amended Section 63.001(d), Election Code (page 4, line 10), by adding after the period "In the event of an inconsistency between an address that appears on the documentation presented by a voter described by this subsection and the voter registration list, the voter shall be accepted if the voter asserts that the address that appears on the voter registration list is the voter's address for the purposes of voting."

The amendment to **SB 14** was read.

Senator Davis withdrew Floor Amendment No. 8.

Senator Hinojosa offered the following amendment to the bill:

**Floor Amendment No. 9**

Amend SB 14 in SECTION 9 of the bill by striking added Section 63.0012(c), Election Code and replacing with the following:

(c) This section expires September 1, 2017.

The amendment to SB 14 was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 9 except as follows:

Absent-excused: Uresti.

Senator Zaffirini offered the following amendment to the bill:

**Floor Amendment No. 10**

Amend SB 14 as follows:

(1) In SECTION 7 of the bill, in the recital (page 3, line 23), strike "(g) and (h)" and substitute "(g), (h), and (i)".

(2) In SECTION 7 of the bill, in proposed Section 63.001(b), Election Code (page 3, line 26, through page 4, line 1), strike the text and substitute the following: place:

(1) one form of identification listed in Section 63.0101; or

(2) the voter's voter registration certificate, accompanied by the affidavit described by Subsection (i) [to an election officer at the polling place].

(3) In SECTION 7 of the bill, following proposed Section 63.001(h), Election Code (page 5, between lines 10 and 11), add the following:

(i) If the requirement for identification prescribed by Subsection (b) is not met, an election officer shall notify the voter that the voter may be accepted for voting if the voter executes an affidavit under penalty of perjury stating that the voter is the person named on the voter registration certificate. The affidavit shall be in a form prescribed by the secretary of state and must include the voter's name, address, date of birth, and signature.

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 10 was tabled by the following vote: Yeas 18, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Ogden, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

**(President in Chair)**

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 11**

Amend SB 14 as follows:

(1) In SECTION 7 of the bill, in the introductory language (page 3, line 23), strike "(g) and (h)" and substitute "(g), (h), and (i)".

(2) In SECTION 7 of the bill, following added Section 63.001(h), Election Code (page 5, between lines 10 and 11), insert the following:

(i) A voter whose name as listed on the identification prescribed by Subsection (b) does not match the name on the precinct list of registered voters shall still be accepted for voting if the voter is a woman and:

(1) presents a marriage license or divorce decree that lists a name that matches the name on the precinct list of registered voters; or

(2) executes an affidavit stating the voter's name is the name on the precinct list of registered voters but has been changed due to marriage or divorce.

DAVIS
ELLIS

The amendment to **SB 14** was read.

Senator Fraser moved to table Floor Amendment No. 11.

Senator Fraser withdrew the motion to table Floor Amendment No. 11.

Senator Davis temporarily withdrew Floor Amendment No. 11.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 12**

Amend **SB 14** as follows:

(1) In SECTION 9 of the bill, adding Section 63.0012(a), Election Code (page 6, lines 1 and 2), strike "Section 521.422, Transportation Code," and substitute "Section 63.010".

(2) Strike SECTION 18 of the bill, amending Section 521.422, Transportation Code (page 11, lines 2 through 19).

(3) Add the following appropriately numbered SECTION to the bill, and renumber the remaining SECTIONS of the bill accordingly:

SECTION _____. Chapter 63, Election Code, is amended by adding Section 63.010 to read as follows:

Sec. 63.010. FEES PROHIBITED FOR CERTAIN FORMS OF IDENTIFICATION DOCUMENTATION. Notwithstanding any other law, an agency, institution, or political subdivision of this state may not charge any fee for the issuance of any document that may be used:

(1) as proof of identification under this chapter; or

(2) to obtain a document that may be used as proof of identification under this chapter.

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 12 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 13**

Amend **SB 14** as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 9), strike "that has not" and substitute ", regardless of whether it has".

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 13), strike "that has not" and substitute ", regardless of whether it has".

(3) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 22), strike "that has not" and substitute ", regardless of whether it has".

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 13 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Lucio offered the following amendment to the bill:

**Floor Amendment No. 14**

Amend **SB 14** in SECTION 12 of the bill by striking amended Section 63.0101, Election Code (page 8, line 5, through page 9, line 2), and substituting the following:

Sec. 63.0101. DOCUMENTATION OF PROOF OF IDENTIFICATION. The [following] documentation [is] acceptable as proof of identification under this chapter is the same as the documentation required by the Department of Public Safety under Section 521.142, Transportation Code, for an application for the issuance of a driver's license, including the thumbprints, photograph, and signature of the voter[:

    [(1) a driver's license or personal identification card issued to the person by the Department of Public Safety or a similar document issued to the person by an agency of another state, regardless of whether the license or card has expired;

    [(2) a form of identification containing the person's photograph that establishes the person's identity;

    [(3) a birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity;

    [(4) United States citizenship papers issued to the person;

    [(5) a United States passport issued to the person;

    [(6) official mail addressed to the person by name from a governmental entity;

    [(7) a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or

    [(8) any other form of identification prescribed by the secretary of state].

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 14 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 15**

Amend SB 14 by striking SECTION 12 of the bill and substitute with new SECTION 12 as follows:

SECTION 12. Section 63.0101, Election Code, is amended to read as follows:

Sec. 63.0101. DOCUMENTATION OF PROOF OF IDENTIFICATION. The following documentation is an acceptable form [as proof] of photo identification under this chapter:

(1) a driver's license or personal identification card issued to the person by the Department of Public Safety that has not [or a similar document issued to the person by an agency of another state, regardless of whether the license or card has] expired or has expired after the date of the most recent general election;

(2) a United States military identification card that contains the person's photograph that has not expired or has expired after the date of the most recent general election[form of identification containing the person's photograph that establishes the person's identity];

(3) a [birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity;

[(4)] United States citizenship certificate [papers] issued to the person that contains the person's photograph; or

(4) [(5)] a United States passport issued to the person that has not expired or has expired after the date of the most recent general election[;

[(6) official mail addressed to the person by name from a governmental entity;

[(7) a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or

[(8) any other form of identification prescribed by the secretary of state].

The amendment to SB 14 was read.

Senator Davis temporarily withdrew Floor Amendment No. 15.

Senator Van de Putte offered the following amendment to the bill:

**Floor Amendment No. 16**

Amend SB 14 as follows:

(1)  In SECTION 7 of the bill, strike amended Section 63.001(b), Election Code (page 3, line 24, through page 4, line 1), and substitute the following:

(b)  Except as provided by Subsection (h), on [On] offering to vote, a voter must present to an election officer at the polling place either:

(1)  one form of identification listed in Section 63.0101(a); or

(2)  two different forms of identification listed in Section 63.0101(b) [the voter's voter registration certificate to an election officer at the polling place].

(2)  In SECTION 12 of the bill, strike amended Section 63.0101, Election Code (page 8, line 5, through page 9, line 2), and substitute the following:

Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.  (a) The following documentation is an acceptable form [as proof] of photo identification under this chapter:

(1)  a driver's license or personal identification card issued to the person by the Department of Public Safety that has not expired or that expired no earlier than two years before the date of presentation [or a similar document issued to the person by an agency of another state, regardless of whether the license or card has expired];

(2)  a United States military identification card that contains the person's photograph [form of identification containing the person's photograph that establishes the person's identity];

(3)  a [birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity;

[(4)] United States citizenship certificate [papers] issued to the person that contains the person's photograph;

(4)  [(5)]  a United States passport issued to the person;

(5)  a license to carry a concealed handgun issued to the person by the Department of Public Safety; or

(6)  [official mail addressed to the person by name from a governmental entity;

[(7)]  a valid identification card that contains the person's photograph and is issued by:

(A)  an agency or institution of the federal government; or

(B)  an agency, institution, or political subdivision of this state.

(b)  The following documentation is acceptable as proof of identification under this chapter:

(1)  the voter's voter registration certificate or a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter;

(2)  official mail addressed to the person by name from a governmental entity;

(3)  a certified copy of a birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity;

(4)  United States citizenship papers issued to the person;

(5) an original or certified copy of the person's marriage license or divorce decree;

(6) court records of the person's adoption, name change, or sex change;

(7) an identification card issued to the person by a governmental entity of this state or the United States for the purpose of obtaining public benefits, including veteran's benefits, Medicaid, or Medicare;

(8) a temporary driving permit issued to the person by the Department of Public Safety;

(9) a pilot's license issued to the person by the Federal Aviation Administration or another authorized agency of the United States;

(10) a library card that contains the person's name issued to the person by a public library located in this state; or

(11) a hunting or fishing license issued to a person by the Parks and Wildlife Department [or

[(8) any other form of identification prescribed by the secretary of state].

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 16 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Gallegos offered the following amendment to the bill:

**Floor Amendment No. 17**

Amend SB 14 as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 7), strike "photo".

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 11), between "expired" and the semicolon, insert ", including a temporary driving permit issued under Section 524.011, Transportation Code".

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 17 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Hinojosa offered the following amendment to the bill:

**Floor Amendment No. 18**

Amend SB 14 as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election Code, strike "or".

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code, following "expired", insert the following:

; or

(5) a license to carry a concealed handgun issued to the person by the Department of Public Safety of the State of Texas

HINOJOSA
PATRICK

The amendment to **SB 14** was read and was adopted by the following vote: Yeas 30, Nays 0.

Absent-excused: Uresti.

Senator Ellis offered the following amendment to the bill:

**Floor Amendment No. 19**

Amend SB 14 as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 20), strike "or".

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 22), following "expired", insert the following:

; or

(5) for a person who is a student at an accredited public university located in the state of Texas, a student identification card that contains the person's photograph that has not expired issued to the person by the institution of higher education

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 19 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator West offered the following amendment to the bill:

**Floor Amendment No. 20**

Amend SB 14 as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 7), strike "photo".

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 20), strike "or".

(3) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 22), following "expired", insert the following:

; or

    (5) a Medicare identification card issued to the person by the United States Social Security Administration accompanied by a voter registration certificate issued to the person

WEST<br>RODRIGUEZ

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 20 was tabled by the following vote:  Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 21**

Amend **SB 14** as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 20), strike "or".

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 22), following "expired", insert the following:

; or

    (5) a valid identification card, including an employee identification card, that contains the person's photograph and is issued by:

    (A) an agency or institution of the federal government;

    (B) an agency, institution, or political subdivision of this state; or

    (C) an institution of higher education in this state

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 21 was tabled by the following vote:  Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Lucio offered the following amendment to the bill:

**Floor Amendment No. 22**

Amend SB 14 as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 7), strike "photo".

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 11), between "expired" and the semicolon, insert "or that expired no earlier than 60 days before the date of presentation".

(3) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 13), following "expired" add "or that expired no earlier than 60 days before the date of presentation".

(4) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 20), strike "or".

(5) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 22), following "expired", add "or that expired no earlier than 60 days before the date of presentation; or

(5) if the person is 65 years of age or older, an expired driver's license or personal identification card issued to the person by the Department of Public Safety or a similar document issued to the person by an agency of another state".

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 22 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Lucio offered the following amendment to the bill:

**Floor Amendment No. 23**

Amend SB 14 as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election code (page 8, line 11), between "expired" and the semicolon, insert "or that expired no earlier than 60 days before the date of presentation."

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 13), following "expired" add "or that expired no earlier than 60 days before the date of presentation".

(3) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 22), following "expired", add "or that expired no earlier than 60 days before the date of presentation."

The amendment to SB 14 was read and was adopted by the following vote: Yeas 30, Nays 0.

Absent-excused: Uresti.

Senator Hinojosa offered the following amendment to the bill:

**Floor Amendment No. 24**

Amend **SB 14** as follows:

(1) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 7), strike "photo".

(2) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 20), strike "or".

(3) In SECTION 12 of the bill, in amended Section 63.0101, Election Code (page 8, line 22), following "expired", insert the following:

; or

(5) a voter's voter registration certificate containing the voter's photograph

(4) Add the following appropriately numbered SECTION to the bill and renumber the remaining SECTIONS of the bill accordingly:

SECTION ____. Subchapter A, Chapter 15, Election Code, is amended by adding Section 15.0025 to read as follows:

Sec. 15.0025. PHOTOGRAPH ON CERTIFICATE. The commissioners court of a county may authorize the county elections administrator or the county clerk, as applicable, to issue voter registration certificates that include a photograph of the voter and that may be used as proof of a voter's identification under Chapter 63.

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 24 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Gallegos offered the following amendment to the bill:

**Floor Amendment No. 25**

Amend **SB 14** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Subchapter A, Chapter 411, Government Code, is amended by adding Section 411.0086 to read as follows:

Sec. 411.0086. LOCATION OF DRIVER'S LICENSE FACILITIES. (a) The department must ensure that one driver's license facility is established for every 50 voting precincts in an area.

(b) Driver's license facilities must be located by an equal distribution throughout an area based on voting age population.

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 25 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Gallegos offered the following amendment to the bill:

### Floor Amendment No. 26

Amend SB 14 by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Subchapter A, Chapter 411, Government Code, is amended by adding Section 411.0086 to read as follows:

Sec. 411.0086. DRIVER'S LICENSE FACILITIES IN CERTAIN COUNTIES. The department must locate a driver's license facility established after January 1, 2012, not further than five miles from a location accessible by public transportation, if the facility is located in a county where public transportation is available.

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 26 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Lucio offered the following amendment to the bill:

### Floor Amendment No. 27

Amend SB 14 by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 2.009(c), Family Code, is amended to read as follows:

(c)  On the proper execution of the application, the clerk shall:

(1)  prepare the license;

(2)  enter on the license the names of the licensees, the date that the license is issued, and, if applicable, the name of the person appointed to act as proxy for an absent applicant, if any;

(3)  record the time at which the license was issued;

(4)  distribute to each applicant printed materials about acquired immune deficiency syndrome (AIDS) and human immunodeficiency virus (HIV) and note on the license that the distribution was made; [and]

(5)  distribute to each applicant a premarital education handbook provided by the attorney general under Section 2.014; and

(6) distribute to each applicant a notice stating that if an applicant changes the applicant's name after marriage, the applicant must update the applicant's voter registration information and applicable government-issued personal identification documents, including any driver's license, or risk being denied the opportunity to cast a ballot.

LUCIO
ELLIS

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 27 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Ellis offered the following amendment to the bill:

**Floor Amendment No. 28**

Amend SB 14 by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 62, Election Code, is amended by adding Section 62.0015 to read as follows:

Sec. 62.0015. VOTER REGISTRARS MUST BE PRESENT.  Two voter registrars must be present at each polling place while the polls are open.

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.010 to read as follows:

Sec. 63.010. REGISTRATION AT POLLING PLACE; VOTING PROCEDURES. (a) Other applicable provisions of this code apply to the conduct of voting and to the registration of voters under this section to the extent those provisions do not conflict with this section.

(b) A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted for voting in the precinct of the person's residence if, on the day the person offers to vote, the person:

(1) submits a voter registration application that complies with Section 13.002 to a voter registrar at the polling place; and

(2) presents as proof of identification and residence a document described by Section 63.0101 that contains the voter's current name and address.

(c) Persons voting under this section shall be processed separately at the polling place from persons who are voting under regular procedures.

(d) The secretary of state shall adopt rules to ensure the accountability of election officers and to fairly implement this section.

SECTION ____. The secretary of state shall adopt rules as required by Section 63.010, Election Code, as added by this Act, not later than February 1, 2012.

ELLIS
LUCIO
RODRIGUEZ

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 28 was tabled by the following vote: Yeas 20, Nays 10.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams, Zaffirini.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire.

Absent-excused: Uresti.

Senator Gallegos offered the following amendment to the bill:

**Floor Amendment No. 29**

Amend **SB 14** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Subchapter A, Chapter 521, Transportation Code, is amended by adding Section 521.007 to read as follows:

Sec. 521.007. DEPARTMENT OPERATING HOURS. To ensure access by the public to identification required under Section 63.001, Election Code, the department shall maintain fully staffed operating hours in each office authorized to issue driver's licenses or personal identification certificates:

(1) until 7 p.m. or later on at least one weekday each week; and

(2) during four or more hours on at least two Saturdays each month.

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 29 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Ellis offered the following amendment to the bill:

**Floor Amendment No. 30**

Amend **SB 14** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.014 to read as follows:

Sec. 63.014. SECRETARY OF STATE REPORT. (a) The secretary of state shall produce an annual report showing:

(1) the number of residents eligible to vote in this state who have the documentation required under Section 63.0101, and the percentage of all state residents eligible to vote represented by that number;

(2) the number of residents eligible to vote in this state who do not have the documentation required under Section 63.0101, and the percentage of all state residents eligible to vote represented by that number;

(3) the number of residents eligible to vote in this state who have the documentation required under Section 63.0101 but who fail to comply with statutory requirements only because the address on the documentation is not current, the last name on the documentation does not match the current voter list because of a legal name change, or the documentation presented is expired, and the percentage of all state residents eligible to vote represented by that number;

(4) the average time, by voting precinct, that a person must wait to obtain a document described by Section 63.0101(1) at the nearest Department of Public Safety licensing facilities that provide those documents;

(5) the number of eligible voters who were prevented from voting as a result of the enhanced identification requirements for being accepted to vote adopted by the 82nd Legislature;

(6) the number of eligible voters who were required to file provisional ballots as a result of the enhanced identification requirements for being accepted to vote; and

(7) an analysis, by subgroup, of whether the enhanced identification requirements for being accepted to vote produce a disparate impact on women, the elderly, persons with disabilities, students, or racial and ethnic minorities.

(b) The report produced under this section is a public record.

(c) The secretary of state may adopt rules to implement this section, including rules requiring other state agencies and authorities holding elections to record information relevant to the report required by this section.

        ELLIS
        RODRIGUEZ
        URESTI

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 30 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Van de Putte offered the following amendment to the bill:

**Floor Amendment No. 31**

Amend SB 14 by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. The changes in law made by this Act do not take effect unless:

(1) the comptroller determines that the legislature has appropriated the amount of money to the appropriate entities that is necessary to fully fund the implementation of this Act; and

(2) the secretary of state certifies that the secretary of state and each county have complied with the changes in law made by this Act or have developed the training and information required by this Act and have prepared to implement the changes in law made by this Act, as applicable.

The amendment to SB 14 was read.

On motion of Senator Fraser, Floor Amendment No. 31 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Watson offered the following amendment to the bill:

**Floor Amendment No. 32**

Amend SB 14 by adding the following appropriately numbered SECTION to the bill and renumber subsequent SECTIONS accordingly:

SECTION ____. This Act does not make an appropriation. This Act takes effect only if a specific appropriation for the implementation of the Act is provided in a general appropriations act of the 82nd Legislature.

WATSON
RODRIGUEZ

The amendment to SB 14 was read and was adopted by the following vote: Yeas 30, Nays 0.

Absent-excused: Uresti.

Senator West offered the following amendment to the bill:

**Floor Amendment No. 33**

Amend **SB 14** as follows:

(1) In SECTION 23 of the bill, page 12, line 18, strike "Subsection (b)" and substitute "Subsections (b) and (c)".

(2) In SECTION 23 of the bill, page 12. add Subsection (c), to read as follows:

"(c) If after the passage of the General Appropriation Act, 82nd Legislature, the funding provided to school districts through the Foundation School Program or direct distribution to the districts is not sufficient to maintain the current pay distribution per teacher and to maintain an equal number of teachers in the districts, this bill has no effect."

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 33 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator West offered the following amendment to the bill:

**Floor Amendment No. 34**

Amend **SB 14** (filed version) as follows:

(1) In SECTION 23 of the bill, page 12, line 18, strike "Subsection (b)" and substitute "Subsections (b) and (c)".

(2) In SECTION 23 of the bill, page 12, add Subsection (c), to read as follows:

"(c) This Act takes effect only if the legislature appropriates or otherwise provides sufficient funds to defray the costs associated with the duties and activities imposed on counties under the Act. No county funds derived from local revenue may be expended to implement this Act."

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 34 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Patrick offered the following amendment to the bill:

**Floor Amendment No. 35**

Amend SB 14 (senate committee printing) as follows:

(1) Add the following appropriately numbered SECTIONS to the bill and renumber the remaining SECTIONS of the bill accordingly:

SECTION ____. Section 13.002, Election Code, is amended by adding Subsection (i) to read as follows:

(i) An applicant who wishes to receive an exemption on the basis of disability from the requirements of Section 63.001(b) must include a certification from a physician that the person has a disability as defined by Section 21.002, Labor Code, with the person's application.

SECTION ____. Section 15.001, Election Code, is amended by adding Subsection (c) to read as follows:

(c) A certificate issued to a voter who meets the certification requirements of Section 13.002(i) must contain an indication that the voter is exempt from the requirement to present identification other than the registration certificate before being accepted for voting.

(2) In SECTION 7 of the bill, strike added Section 63.001(h) (page 2, lines 51 through 57) and substitute the following:

(h) The requirements for identification prescribed by Subsection (b) do not apply to a voter who presents the voter's voter registration certificate on offering to vote and:

(1) was 70 years of age or older on January 1, 2012, as indicated by the date of birth on the voter's voter registration certificate; or

(2) is disabled and the voter's voter registration certificate contains the indication described by Section 15.001(c).

The amendment to SB 14 was read and was adopted by the following vote: Yeas 30, Nays 0.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 36**

Amend SB 14 as follows:

(1) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Effective September 1, 2011, Chapter 82, Election Code, is amended by adding Section 82.006 to read as follows:

Sec. 82.006. PERMANENT MAIL VOTER STATUS. (a) A qualified voter is eligible for permanent mail voter status if:

(1) the voter is disabled, as defined by secretary of state rule under Subsection (c); and

(2) the voter's name is not on the suspense list.

(b) A voter having permanent mail voter status is entitled to receive a ballot to be voted by mail for every election other than a primary election.

(c) The secretary of state shall by rule define "disabled" for purposes of determining eligibility for permanent mail voter status.

SECTION _____. Effective September 1, 2011, Chapter 84, Election Code, is amended by adding Subchapter C to read as follows:

SUBCHAPTER C. APPLICATION FOR PERMANENT MAIL VOTER STATUS

Sec. 84.101. METHOD OF APPLICATION. (a) A qualified voter seeking permanent mail voter status may apply for the status at the time the voter registers to vote or at a polling place on election day or during early voting by personal appearance.

(b) The secretary of state shall adopt rules and forms to implement this section.

Sec. 84.102. SUBMITTING APPLICATION. An application indicating that the voter seeks to acquire permanent mail voter status is considered submitted for the first election following the date the application is submitted. A voter may not attain permanent mail voter status for that election unless the voter timely submits the application to a voter registrar within the time provided by Subchapter A.

Sec. 84.103. ACTION BY VOTER REGISTRAR. (a) If a qualified voter eligible for permanent mail voter status submits an application under Section 84.101 stating a valid ground of eligibility, the voter registrar receiving the application shall:

(1) place the voter's name on a list of permanent mail voters; and

(2) notify the early voting clerks serving every authority that orders elections in the registrar's jurisdiction of the voter's permanent mail voter status.

(b) If the early voting clerk serving an authority receives notice under Subsection (a)(2), the early voting clerk and the clerk's successors shall provide a ballot to be voted by mail to the voter as required by this code for each general and special election ordered by the authority.

(c) An early voting clerk may not provide a ballot under Subsection (b) to a voter whose name appears on the suspense list.

Sec. 84.104. CANCELLATION. (a) A voter having permanent mail voter status may cancel an application for a ballot to be voted by mail at any time. The cancellation is effective for an election for which the voter timely cancels the application as provided by Section 84.032 and all subsequent elections. A voter who has canceled the voter's application under this subsection may apply for permanent mail voter status for a subsequent election.

(b) Following cancellation under Subsection (a), the applicable early voting clerk shall notify the early voting clerks serving every authority that orders elections in the clerk's jurisdiction of the cancellation.

Sec. 84.105. ADDITIONAL PROCEDURES. The secretary of state shall:

(1) prescribe any additional procedures necessary to implement this subchapter; and

(2) develop a system of notifying voters who are likely to be eligible for permanent mail voter status of the availability of that status for certain voters and the application procedure for acquiring that status.

SECTION _____. (a) Effective September 1, 2011, the secretary of state shall prescribe any procedures and develop a notification system under Section 84.105, Election Code, as added by this Act, but not later than January 1, 2012.

(b) The changes in law made by Section 82.006 and Subchapter C, Chapter 84, Election Code, as added by this Act, apply only to an election for which an application for a ballot to be voted by mail may not be submitted before January 1, 2012.

(2) In SECTION 23(a) of the bill (page 12, line 19), between "section" and the comma, insert "or as otherwise provided by this Act".

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 36 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 37**

Amend SB 14 by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Subchapter A, Chapter 31, Election Code, is amended by adding Section 31.015 to read as follows:

Sec. 31.015. UNIFORM STATEWIDE VOTER REGISTRATION SYSTEM. The secretary of state shall establish a uniform statewide voter registration system to improve voter participation. The system must:

(1) include expanded voter registration outreach;

(2) establish more voter registration offices, especially in areas where the distance between offices is determined to be prohibitive;

(3) include statewide outreach to inform the voting age population of registration status, registration locations, and locations of precinct polling places;

(4) allow voters to verify and make corrections to their voter registration not less than 30 days before the date of an election;

(5) use voter assistance hotlines and websites that are operational at least 30 days before the date of an election; and

(6) establish ombudsmen at the state level to address cases of voter suppression, voter discrimination, or other abuse against voters.

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 37 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 38**

Amend SB 14 by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 16.036(a), Election Code, is amended to read as follows:

(a) Immediately after, but not later than the 30th day after the date a voter's registration is canceled under Section 16.031 [16.031(a)(3)], 16.032, 16.033, 16.0331, or 16.0332, the registrar shall deliver written notice of the cancellation to the voter.

The amendment to **SB 14** was read.

On motion of Senator Fraser, Floor Amendment No. 38 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 39**

Amend SB 14 as follows:

(1) In SECTION 7 of the bill, add following language to the end of Section 63.001(h)(2), Election Code:

, or;

(2) In SECTION 7 of the bill, add new subsection (3) to Section 63.001(h), Election Code to read as follows:

(3) who is indigent and is unable to obtain proof of identification without the payment of a fee.

(a) "indigent" in this subsection has the meaning assigned by Section 51.941(e), Government Code.

(b) the voter in this subsection shall be provided a provision ballot as provided under Section 63.011.

(3) Strike SECTION 16 of the bill and add new SECTION 16 as follows:

Sec. 65.0541. PRESENTATION OF IDENTIFICATION FOR CERTAIN PROVISIONAL BALLOTS. (a) A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election,

(1) present proof of identification to the voter registrar for examination by the early voting ballot board; or,

(2)  per Section 63.001(h)(3), Election Code execute an affidavit before the voter registrar affirming under penalties of perjury that the voter is indigent

(b)  The secretary of state shall prescribe procedures as necessary to implement this section.

The amendment to **SB 14** was read.

Senator Davis withdrew Floor Amendment No. 39.

Senator Duncan offered the following amendment to the bill:

**Floor Amendment No. 40**

Amend **SB 14** by striking SECTIONS 15 and 16 of the bill (filed version, page 9, line 26, through page 10, line 17) and substituting the following:

SECTION 15.  Section 65.054, Election Code, is amended by amending Subsection (b) and adding Subsection (e) to read as follows:

(b)  A provisional ballot shall [may] be accepted [only] if the board determines that:

(1)  [;] from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election; and

(2)  the person:

(A)  meets the identification requirements of Section 63.001(b) in the period prescribed under Section 65.0541; or

(B)  executes an affidavit under penalty of perjury stating that:

(i)  the voter:

(1)  is indigent and is unable to obtain proof of identification without the payment of a fee; or

(2)  has a religious objection to being photographed; and

(ii)  has not been challenged or required to vote a provisional ballot for any other reason.

(e)  In this section, "indigent" has the meaning assigned by Section 51.941(e), Government Code.

SECTION 16.  Subchapter B, Chapter 65, Election Code, is amended by adding Section 65.0541 to read as follows:

Sec. 65.0541.  PRESENTATION OF IDENTIFICATION FOR CERTAIN PROVISIONAL BALLOTS. (a)  A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election:

(1)  present proof of identification described by Section 63.0101 to the voter registrar for examination; or

(2)  execute an affidavit described by Section 65.054(b)(2)(B) in the presence of the voter registrar.

(b)  The secretary of state shall prescribe procedures as necessary to implement this section.

DUNCAN
DAVIS
OGDEN
PATRICK

The amendment to **SB 14** was read and was adopted by the following vote: Yeas 30, Nays 0.

Absent-excused: Uresti.

Senator Davis again offered the following amendment to the bill:

**Floor Amendment No. 11**

Amend SB 14 as follows:

(1) In SECTION 7 of the bill, in the introductory language (page 3, line 23), strike "(g) and (h)" and substitute "(g), (h), and (i)".

(2) In SECTION 7 of the bill, following added Section 63.001(h), Election Code (page 5, between lines 10 and 11), insert the following:

(i) A voter whose name as listed on the identification prescribed by Subsection (b) does not match the name on the precinct list of registered voters shall still be accepted for voting if the voter is a woman and:

(1) presents a marriage license or divorce decree that lists a name that matches the name on the precinct list of registered voters; or

(2) executes an affidavit stating the voter's name is the name on the precinct list of registered voters but has been changed due to marriage or divorce.

DAVIS<br>ELLIS

The amendment to **SB 14** was again read.

On motion of Senator Fraser, Floor Amendment No. 11 was tabled by the following vote: Yeas 18, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Ogden, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis again offered the following amendment to the bill:

**Floor Amendment No. 15**

Amend SB 14 by striking SECTION 12 of the bill and substitute with new SECTION 12 as follows:

SECTION 12. Section 63.0101, Election Code, is amended to read as follows:

Sec. 63.0101. DOCUMENTATION OF PROOF OF IDENTIFICATION. The following documentation is an acceptable form [as proof] of photo identification under this chapter:

(1) a driver's license or personal identification card issued to the person by the Department of Public Safety that has not [or a similar document issued to the person by an agency of another state, regardless of whether the license or card has] expired or has expired after the date of the most recent general election;

(2) a United States military identification card that contains the person's photograph that has not expired or has expired after the date of the most recent general election [form of identification containing the person's photograph that establishes the person's identity];

(3) a [birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity;

[(4)] United States citizenship certificate [papers] issued to the person that contains the person's photograph; or

(4) [(5)] a United States passport issued to the person that has not expired or has expired after the date of the most recent general election[;

[(6) official mail addressed to the person by name from a governmental entity;

[(7) a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or

[(8) any other form of identification prescribed by the secretary of state].

The amendment to SB 14 was again read.

On motion of Senator Fraser, Floor Amendment No. 15 was tabled by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 41**

Amend SB 14 in SECTION 7 of the bill, in amended Section 63.001(c), Election Code (page 4, line 6), by adding after the period "If in determining whether a voter's name is on the list of registered voters the election officer determines that the voter's name on the documentation is substantially similar but does not match exactly the name on the list, the voter shall be accepted for voting as otherwise required by this section if the voter submits an affidavit stating that the voter is the person on the list of registered voters."

The amendment to SB 14 was read and was adopted by the following vote: Yeas 30, Nays 0.

Absent-excused: Uresti.

On motion of Senator Fraser and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

Question — Shall SB 14 as amended be passed to engrossment?

## AT EASE

The President at 7:28 p.m. announced the Senate would stand At Ease until 7:45 p.m.

### IN LEGISLATIVE SESSION

The President at 7:57 p.m. called the Senate to order as In Legislative Session.

Question — Shall **SB 14** as amended be passed to engrossment?

**SB 14** as amended was passed to engrossment by the following vote: Yeas 19, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Van de Putte, Watson, West, Whitmire, Zaffirini.

Absent-excused: Uresti.

### CO-AUTHOR OF SENATE BILL 272

On motion of Senator Zaffirini, Senator Hinojosa will be shown as Co-author of **SB 272**.

### RESOLUTIONS OF RECOGNITION

The following resolutions were adopted by the Senate:

#### Memorial Resolutions

**SR 93** by Watson, In memory of Spencer Lloyd Reid.

**SR 103** by Ellis, In memory of Howard Daniel Boone of Austin.

**SR 112** by Lucio, In memory of Luis Romero of Los Fresnos.

**SR 113** by Lucio, In memory of David Saenz of Brownsville.

**SR 114** by Rodriguez, In memory of John Baylor Van Vranken McKinney.

**SR 115** by Rodriguez, In memory of Artemisa "Arte" Salinas of El Paso.

**SR 120** by Wentworth, In memory of Dorothy Paula Levy Katz.

**SR 121** by Wentworth, In memory of Geraldine "Jerry" Traugott of San Antonio.

**SR 122** by Wentworth, In memory of Carol Baier Jansen of San Antonio.

**SR 123** by Wentworth, In memory of Ladimer Gene Herold of San Antonio.

**SR 124** by Wentworth, In memory of Marvin Selig of Seguin and San Antonio.

#### Congratulatory Resolutions

**SR 92** by Watson, Recognizing Nancy McClintock on the occasion of her retirement from the City of Austin.

**SR 94** by Watson, Recognizing Joe Gieselman on the occasion of his retirement from the Travis County Transportation and Natural Resources department.

SR 95 by Watson, Recognizing Ira Iscoe of Austin on the occasion of his 90th birthday.

SR 96 by Watson, Recognizing Pat Murphy on the occasion of his retirement from the City of Austin.

SR 97 by Watson, Recognizing Forrest Nikorak on the occasion of his retirement from the City of Austin.

SR 98 by Birdwell, Recognizing Timothy Karcher for his contributions to his country.

SR 100 by West, Recognizing James Lawson for his work in the pursuit of peace and equal rights for all people.

SR 101 by West, Recognizing the Ingram family on the occasion of their 30th annual family reunion.

SR 102 by Deuell, Congratulating Celeste Prather-Young on receiving the 2010 Executive Director of the Year Award by Texas Court Appointed Special Advocates.

SR 107 by Whitmire, Recognizing Green Chapel African Methodist Episcopal Church on the occasion of its 100th anniversary.

SR 108 by Whitmire, Recognizing the Greenspoint Area Chapter of the International Association of Administrative Professionals on the occasion of their 59th annual meeting of the Texas-Louisiana Division.

SR 109 by Van de Putte, Recognizing Harmony Science Academy on the occasion of its 10th anniversary.

SR 116 by Rodriguez, Recognizing Jose F. Cardenas for his contributions to the profession of engineering.

### Official Designation Resolutions

SR 104 by Birdwell, Harris, and Watson, Celebrating February 1, 2011, as Baylor University Day at the State Capitol.

SR 117 by Estes, Celebrating February 15, 2011, as Grayson County Day at the State Capitol.

SR 118 by Hinojosa and Lucio, Celebrating January 27, 2011, as The University of Texas–Pan American Day at the State Capitol.

### ADJOURNMENT

On motion of Senator Whitmire, the Senate at 8:44 p.m. adjourned, in memory of Joe Limon Avila, John Paul Duncan, and Wesley J. Rice, until 8:45 p.m. today.

## APPENDIX

### COMMITTEE REPORT

The following committee report was received by the Secretary of the Senate:

January 25, 2011

COMMITTEE OF THE WHOLE SENATE — **SB 14**

### RESOLUTIONS ENROLLED

January 25, 2011

SR 34, SR 48, SR 52, SR 55, SR 60, SR 72, SR 81, SR 82, SR 83, SR 84, SR 85, SR 86, SR 87, SR 88, SR 89, SR 91

In Memory

of

James Paul Duncan

Senate Resolution 56

WHEREAS, The Senate of the State of Texas honors and commemorates the life of Dr. James Paul Duncan, who died June 9, 2009, at the age of 72; and

WHEREAS, James Paul Duncan was born January 19, 1937; he attended the University of Indiana, where he earned bachelor's and master's degrees in sociology and a doctorate in higher education administration; following his service as an officer in the United States Army, he began a long and distinguished career as an educator, counselor, and administrator; and

WHEREAS, Dr. Duncan joined the faculty of The University of Texas at Austin in 1970 as dean of students and associate professor in the Department of Educational Administration; he held numerous positions of leadership at the university, including vice president for student affairs and executive vice chancellor for academic affairs, a position he held for 14 years; and

WHEREAS, After retiring from administrative duties in 1997, he returned to teaching and was designated the Ashbel Smith Professor of Educational Administration; Dr. Duncan was noted for his ability to touch the lives of his students, often going out of his way to work with them and help them complete their degrees; and

WHEREAS, He also played a vital role in the creation of one of the nation's first comprehensive counseling centers for students at a major university; he was also part of a group that worked to expand The University of Texas System to South Texas with The University of Texas at Brownsville; he helped to guide the university through a turbulent political environment, and university leaders regularly sought his advice and counsel; and

WHEREAS, A man of vision, strength, and courage, he gave generously to others, and his dedication both to his students and to the betterment of the educational system of our state set an enduring example for all; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 82nd Legislature, hereby extend sincere condolences to the family and friends of Dr. James Paul Duncan; and, be it further

RESOLVED, That a copy of this Resolution be prepared for his family as an expression of deepest sympathy from the Texas Senate, and that when the Senate adjourns this day, it do so in memory of Dr. James Paul Duncan.

WATSON

# SENATE JOURNAL

## EIGHTIETH LEGISLATURE — REGULAR SESSION

### AUSTIN, TEXAS

### PROCEEDINGS

### SIXTY-SECOND DAY
(Tuesday, May 15, 2007)

The Senate met at 11:25 a.m. pursuant to adjournment and was called to order by the President.

The roll was called and the following Senators were present: Averitt, Brimer, Carona, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Jackson, Janek, Lucio, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Shapleigh, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

The President announced that a quorum of the Senate was present.

The Reverend Neal Terwilliger, First Baptist Church, Taylor, offered the invocation as follows:

"Enter into His gates with thanksgiving and into His courts with praise: be thankful unto Him, and bless His name. For the Lord is good; His mercy is everlasting; and His truth endureth to all generations." (Psalms 100:4-5) Eternal God, we come before You today with praise and with thankful hearts. We ask Your hand of blessing to be upon this Senate today. May You give wisdom and guidance to all in attendance today, that they may continue to lead this great state to be a place of love, peace, and prosperity. Allow us to dwell together in unity and like-mindedness that Your favor may continue to shine upon us. May we bless You and not forget all Your benefits to us, Your children. Eternal Father, hear our prayers, we pray. Amen.

Senator Whitmire moved that the reading of the Journal of the proceedings of yesterday be dispensed with and the Journal be approved as printed.

The motion prevailed without objection.

### CO-AUTHOR OF SENATE BILL 961

On motion of Senator Shapleigh, Senator Zaffirini will be shown as Co-author of **SB 961**.

### CO-AUTHORS OF SENATE BILL 1292

On motion of Senator Nelson, Senators Carona, Estes, Harris, and Lucio will be shown as Co-authors of **SB 1292**.



### CO-AUTHOR OF SENATE BILL 1764

On motion of Senator Uresti, Senator Hinojosa will be shown as Co-author of **SB 1764**.

### CO-AUTHOR OF SENATE JOINT RESOLUTION 43

On motion of Senator Nelson, Senator Lucio will be shown as Co-author of **SJR 43**.

### CO-SPONSORS OF HOUSE BILL 14

On motion of Senator Nelson, Senators Ellis, Gallegos, Hinojosa, Shapleigh, Uresti, Van de Putte, Watson, West, Whitmire, and Zaffirini will be shown as Co-sponsors of **HB 14**.

### CO-SPONSOR OF HOUSE BILL 125

On motion of Senator Van de Putte, Senator Uresti will be shown as Co-sponsor of **HB 125**.

### CO-SPONSOR OF HOUSE BILL 1887

On motion of Senator Whitmire, Senator Patrick will be shown as Co-sponsor of **HB 1887**.

### CO-SPONSOR OF HOUSE BILL 3900

On motion of Senator Shapiro, Senator Van de Putte will be shown as Co-sponsor of **HB 3900**.

### CO-SPONSOR OF HOUSE BILL 3446

On motion of Senator Eltife, Senator Nelson will be shown as Co-sponsor of **HB 3446**.

### PHYSICIAN OF THE DAY

Senator Wentworth was recognized and presented Dr. Tamara Dominguez of San Antonio as the Physician of the Day.

The Senate welcomed Dr. Dominguez and thanked her for her participation in the Physician of the Day program sponsored by the Texas Academy of Family Physicians.

### MESSAGE FROM THE HOUSE

HOUSE CHAMBER
Austin, Texas
May 15, 2007

The Honorable President of the Senate
Senate Chamber
Austin, Texas

Mr. President:

I am directed by the House to inform the Senate that the House has taken the following action:

Case 2:13-cv-00193   Document 674-17   Filed on 11/11/14 in TXSD   Page 128 of 129

THE HOUSE HAS PASSED THE FOLLOWING MEASURES:

**SCR 73,** Congratulating Eric R. Bittner for his selection as a 2007 Fellow by the John Simon Guggenheim Memorial Foundation.

**SJR 20,** Proposing a constitutional amendment providing for the issuance of additional general obligation bonds by the Texas Water Development Board to provide assistance to economically distressed areas.

THE HOUSE HAS CONCURRED IN SENATE AMENDMENTS TO THE FOLLOWING MEASURES:

**HB 421** (137 Yeas, 0 Nays, 2 Present, not voting)

**HB 716** (139 Yeas, 0 Nays, 2 Present, not voting)

**HB 2683** (130 Yeas, 11 Nays, 2 Present, not voting)

THE HOUSE HAS REFUSED TO CONCUR IN SENATE AMENDMENTS TO THE FOLLOWING MEASURES AND REQUESTS THE APPOINTMENT OF A CONFERENCE COMMITTEE TO ADJUST THE DIFFERENCES BETWEEN THE TWO HOUSES:

**HB 2261** (non-record vote)
House Conferees:  Callegari - Chair/Aycock/Miles/O'Day/Taylor

Respectfully,

/s/Robert Haney, Chief Clerk
House of Representatives

## CONCLUSION OF MORNING CALL

The President at 11:30 a.m. announced the conclusion of morning call.

## COMMITTEE SUBSTITUTE
## HOUSE BILL 218 ON SECOND READING

Senator Fraser moved to suspend the regular order of business to take up for consideration **CSHB 218** at this time on its second reading:

**CSHB 218,** Relating to requiring a voter to present proof of identification.

The motion prevailed by the following vote:  Yeas 19, Nays 9.

Yeas:  Averitt, Brimer, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Jackson, Janek, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays:  Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Van de Putte, Watson, West, Zaffirini.

Absent:  Hegar, Uresti, Whitmire.

The bill was read second time.

## VERIFICATION OF VOTE

Senator Shapleigh called for a verification of the vote by which the regular order of business was suspended for **CSHB 218.**

The President instructed the Secretary of the Senate to call the roll.

The motion to suspend the regular order of business was lost by the following vote: Yeas 20, Nays 11. (Not receiving two-thirds vote of Members present)

Yeas: Averitt, Brimer, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Jackson, Janek, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

### BILLS AND RESOLUTIONS SIGNED

The President announced the signing of the following enrolled bills and resolutions in the presence of the Senate after the captions had been read:

**SB 453, SB 812, SB 883, SB 913, SB 978, SB 1229, SCR 74, SCR 78, HB 862, HB 864, HB 944, HB 1260, HB 1279, HB 1332, HB 1380, HB 1396, HB 1416, HB 1449, HB 1472, HB 1491, HB 1560, HB 1716, HB 1768, HB 1780, HB 1781, HB 1784, HB 1852, HB 1853, HB 1922, HB 1947, HB 1962, HB 1987, HB 2005, HB 2018, HB 2090, HB 2127, HB 2130, HB 2176, HB 2219, HB 2618, HB 2708, HB 2727, HB 2839, HB 3437, HCR 15, HCR 30, HCR 93, HCR 94.**

### (Senator Brimer in Chair)

### COMMITTEE SUBSTITUTE
### SENATE JOINT RESOLUTION 67 ON SECOND READING

On motion of Senator Ogden and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSJR 67** at this time on its second reading:

**CSSJR 67**, Proposing a constitutional amendment authorizing the legislature to permit the Texas Transportation Commission, subject to legislative review and approval, to designate the area adjacent to a state highway project as a transportation finance zone and dedicating the proceeds of the state sales and use taxes imposed in a transportation finance zone to the Texas Mobility Fund for certain purposes.

The resolution was read second time.

Senator Ogden offered the following amendment to the resolution:

**Floor Amendment No. 1**

Amend **CSSJR 67** in SECTION 1 of the bill, in proposed Subsection (e-1), as follows:

(1) On line 33, between "a" and "tax", insert "state"; and

(2) On line 40, strike "shall" and insert "may".

The amendment to **CSSJR 67** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.