PL857
9/2/2014
2:13-cv-00193

# the league
## of young voters
## education fund

# Texas League of Young Voters Education Fund
## *Mission and Purpose*

The Texas League of Young Voters Education Fund empowers young people statewide to participate in the democratic process – with a focus on non-college youth and youth from low-income communities and communities of color.

The League makes civic engagement relevant by meeting young people where they are, working on issues that affect their lives, and providing them with the tools, training, and support to become viable players in the civic process.

The League has an integrated civic engagement organizing model, which combines best practices from community, campus and cultural organizing with sophisticated voter engagement techniques. During election cycles, we run targeted data-driven, precinct-based voter contact and turnout programs. The rest of the year, we organize our constituents around issues that make sense to young people. And most importantly, we are preparing the next generation of civic leaders.

Our organizing and programming model can be categorized in the following key areas:

- Voter Registration
- Get Out the Vote (GOTV)
- Voter Education and Issue Advocacy
- Election Protection
- Leadership Development

The Texas League of Young Voters Education Fund is a 501(c)(3) nonprofit corporation and is an affiliate of the League of Young Voters Education Fund based in Brooklyn, New York.

Link to YouTube video about us: https://www.youtube.com/watch?v=c4Y8U85oMkI



EXHIBIT
2

LYV00000101

  

DEFEND EDUCATE EMPOWER

the texas league
of young voters
education fund

## COMMENT UNDER SECTION 5 OF THE VOTING RIGHTS ACT

Chris Herren
Chief, Voting Section
Civil Rights Division
Room 7254 – NWB
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

September 8, 2011

> **Re:**    **Section 5 Submission No. 2011-2775**
> **(Submission by the State of Texas Regarding SB 14)**

Dear Mr. Herren:

### Introduction

The NAACP Legal Defense & Educational Fund, Inc. (LDF) and the League of Young Voters Education Fund submit the comment letter regarding the State of Texas's pending Section 5 submission of SB 14 (hereinafter "the photo ID Law"), which requires individuals voting in person to produce a photographic identification card (hereinafter, a "photo ID"), and imposing undue limitations on the acceptable forms of photo ID. As of this date, Texas has not met its burden of showing either that this proposed voting change will not have a retrogressive effect, or that its adoption was free of discriminatory purpose.

Moreover, the justifications proffered by the State do not help it satisfy its burden of showing the absence of discriminatory purpose. In particular, this letter addresses concerns about the effect that Texas's proposed photo ID law would have on students at historically Black colleges and universities in Texas.



EXHIBIT
6

1

**Highly Confidential**

**LYV00000074**

<u>**Analysis**</u>

**I.      Background on Section 5**

The implementation of all proposed statewide voting changes in Texas is subject to the requirements of Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c(a). SB 14, which is the subject of this Section 5 submission, was signed into law by the Governor of Texas on May 27, 2011, and submitted for review to the Department of Justice pursuant to Section 5 on July 25, 2011. *See* Section 5 Submission No. 2011-2775.

**II.     Retrogressive Effect**

Section 5 prohibits voting changes that would result in "a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise."[1]   The burden is on the submitting jurisdiction to show an absence of retrogressive effect.  As documented below, the State has not demonstrated that this proposed voting change will not have such a retrogressive effect.

**A.      Context – National and Statewide Statistics Concerning Access to Photo ID**

Although this letter focuses on the effect of the proposed photo ID law on students at historically Black colleges and universities in Texas, we begin by providing some statistical context as to the racial disparities in access to photo ID nationally and in Texas.

**1.      National Statistics**

Nationwide statistics show substantial racial disparities in rates of photo ID ownership. Nationally, 25% of African-American voting age citizens have no current government-issued photo ID, compared to only 8% of white voting-age citizens.[2]  The

---

[1] *Beer v. United States*, 425 U.S. 130, 141 (1976).

[2] *See* Brennan Center for Justice, *Citizens Without Proof: A Survey of Americans' Possession of Documentary Proof of Citizenship and Photo Identification* (Nov. 2006), at 3, *available at* http://www.brennancenter.org/page/-/d/download_file_39242.pdf.  *See also Crawford v. Marion County Bd. Of Elections*, 553 U.S. 181, 221 n.25 (2008) (Souter, J., dissenting) (observing that "[s]tudies ... suggest that the burdens of an ID requirement may also fall disproportionately upon racial minorities") (*citing* Spencer Overton, *Voter Identification*, 105 *Mich. L. Rev.* 631, 659 (2007)). Data from other states also confirms the existence of racial disparities in access to photo ID.  In Georgia, for example, African-American registered voters are nearly twice as likely to be without driver's licenses as white registered voters.  M.V. Hood, III & Charles S. Bullock, III, *Worth a Thousand Words? An Analysis of Georgia's Voter Identification Statute*, 15 (Apr. 2007), http://www.vote.caltech.edu/VoterID/GAVoterID (BullockHood).pdf.  Similarly, a study of California, New Mexico and Washington voters found that minority voters are less likely to have various forms of identification, such as driver's licenses, birth certificates, or bank statements. Matt A. Bareto, et al., *Voter ID Requirements and the Disenfranchisements of Latino, Black and Asian Voters*, Am. Pol. Sci. Ass'n Presentation (Sept. 1, 2007), *available at*

2

proposed photo ID Law, therefore, will likely have a retrogressive effect insofar as its burdens will fall disproportionately on *qualified* and otherwise eligible African-American voters.

Empirical evidence demonstrates that the effects of the proposed photo ID Law are not limited only to those voters lacking photographic identification; rather, they are felt disproportionately by qualified African-American voters as a whole. Nationally, 70% of all African-American voters were asked to show photo identification at the polls during the 2008 Election, as opposed to only 51% of white voters.[3] Due to the uneven enforcement of photo ID laws, these eligible African-American voters were forced to cast provisional ballots at a rate four times higher than were white voters.[4]

In sum, photo ID laws indisputably burden African-American voters disproportionately.

2.    **Texas Statistics**

Although we are presently unaware of any definitive studies concerning racial disparities with respect to photo ID ownership in Texas, it is likely that the national disparities referenced above are replicated in Texas. Texas has one of the highest poverty rates in the country,[5] and Texas's poor are disproportionately minorities. The poverty rate for Latinos and African Americans in Texas are an astonishing 24.8% and 23.8%,

---

http://faculty.washington.edu/mbarreto/research/Voter_ID_APSA.pdf. Evidence from individual counties is also striking: in Milwaukee County, for instance, fewer than 47% of Black adults and 43% of Latino adults, compared to 85% of White adults, have a driver's license, and for young Black males, the difference was even more striking: only 22% of African American men between the ages of 18 and 24 had a driver's license. *See* Daniel P. Tokaji, *If It's Broke, Fix It: Improving Voting Rights Act Preclearance*, 49 Howard L.J. 785, 814 (2006) (citing John Pawasarat, *The Driver License Status of the Voting Age Population in Wisconsin*, available at http://www.uwm.edu/Dept/ETI/barriers/DriversLicense.pdf.).

[3] R. Michael Alvarez, et al., *2008 Survey of the Performance of American Elections: Final Report* 43 (March 1, 2009), *available at* http://www.pewcenteronthestates.org/uploadedFiles/Final%20report20090218.pdf; Charles Stewart III, *et al.*, CalTech/MIT Voting Technology Project, Working Paper #82, *Racial Differences in Election Administration* 29 (July 2009), *available at* http://www.vote.caltech.edu/drupal/node/278.

[4] *See* Stewart, *supra* note 4, at 31.

[5] Nearly one in five people in Texas lives in poverty, and Texas's poverty rate of 17.1% is tied for tenth-highest in the nation. *See* U.S. Department of Agriculture, Economic Research Service, *2009 County-Level Poverty Rates for Texas*, *available at* http://www.ers.usda.gov/Data/povertyrates/PovListpct.asp?st=TX&view=Percent&longname=Texas. With 4.1 million people in poverty, the number of impoverished individuals in Texas is roughly equal to that of the top 7 states combined (Alabama, Arkansas, Kentucky, Louisiana, Mississippi, New Mexico, and West Virginia).

3

Highly Confidential                                                                                           LYV00000076

respectively, compared to only 8.4% for whites.[6]  Of all Texans living in poverty, 53% are Latino and 16% are African-American,[7] despite the fact that Latinos and African-American comprise only 37.6% and 11.8% of the total population in Texas, respectively.[8] Given this context, the proposed photo ID law will likely impose an undue burden on the right to vote, and will have a racially disproportionate impact.

Although photo ID in Texas is purportedly offered free of charge to those who cannot afford it, in order to obtain a photo ID card from the Texas Department of Motor Vehicles, a person must present another form of government-issued identification such as a passport, or a combination of documents, such as a birth certificate *and* a certified copy of court order indicating the applicant's name and date of birth.[9]  These documents are *not* offered free of charge.  For example, obtaining a birth certificate in Texas costs $22.[10]

For individuals in Texas living below the federal poverty line—who, as noted, are disproportionately minorities—these underlying costs are, as a practical matter, prohibitive.[11]  Although the photo ID law contains some exemptions—for instance, individuals who have a religious objection to being photographed, or those who have lost their identification due to a natural disaster during the preceding 45 days, may cast a provisional ballot—there is no adequate failsafe in place for those who simply cannot afford the real costs associated with obtaining an ID card.

These costs are exacerbated by the additional transportation expenses of traveling to an office of the Department of Motor Vehicles.  Given that there are substantial racial disparities in vehicle ownership rates, with 19% of African-Americans and 13.7% of Latinos nationally living in a household without a car (as compared to only 4.6% of

---

[6] *See* University of Texas, Texas Politics, *Poverty in Texas*, *available at* http://texaspolitics.laits.utexas.edu/12_2_0.html.

[7] *See id.*

[8] *See* U.S. Census Bureau, *QuickFacts: Texas*, *available at* http://quickfacts.census.gov/qfd/states/48000.html.

[9] *See* Texas Department of Public Safety, *Identification Requirements for a Texas Driver License or Identification Card*, *available at* http://www.txdps.state.tx.us/DriverLicense/identificationrequirements.htm.

[10] *See* Texas Department of State Health Services, *Certified Copy of a Birth Certificate*, *available at* http://www.dshs.state.tx.us/vs/reqproc/certified_copy.shtm.

[11] *See Weinschenk v. State*, 203 S.W.2d 201, 214 (Mo. 2006) ("the $15 [that impoverished individuals] must pay in order to obtain their birth certificates and vote is $15 that they must subtract from their meager ability to feed, shelter and clothe their families"); *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 670 (1966) (striking down poll tax of $1.50, and holding that "[w]ealth or fee-paying … has no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened").

4

 LYV00000077

whites),[12] the burden of traveling to a DMV office will be felt disproportionately by minority voters.

In sum, it is likely that Texas's proposed photo ID law will have a disproportionate impact on African-American and Latino Texans.  At a minimum, the Department should seek more information to determine if the clear racial disparities in access to photo ID at the national level are replicated in Texas.

**B.     Burden on Students at Historical Black Colleges and Universities**

The proposed photo ID Law also places unique and heightened burdens on students who seek to exercise their voting rights.  Unlike many states with similar photo ID laws—such as the State of Georgia, whose photo ID law permits students to use state-issued student ID cards,[13] and was precleared in 2005—Texas's proposed photo ID law does not permit students to rely on their student identification cards—even those issued by the State itself—in order to verify their identities at the polls.  *See* SB 14 § 14 (listing acceptable forms of identification).  As a result, thousands of students across the state at Texas's historically Black colleges and universities—citizens who are eligible to vote or even already registered to vote—would be disfranchised by the proposed photo ID law.

An investigation conducted by the League of Young Voters Education Fund at historically Black Prairie View A&M University, located in Waller County, Texas, confirmed these concerns.  The League of Young Voters Education Fund collected statements from dozens of students at Prairie View A&M indicating that the proposed photo ID law will disfranchise them, because they do not have and cannot obtain a Texas state-issued identification card other than their student ID cards.

Many of these students do not have the underlying documentation necessary to obtain a state-issued photo ID, cannot afford to pay for those underlying documents, come from out of state and cannot locate those underlying documents, or simply lack transportation to obtain a state-issued photo ID.

For example, in explaining the hardship that the proposed photo ID law would impose on them, Prairie View students stated:

- "[M]y hometown is 500 miles away and it will be nearly impossible to get my birth certificate in a timely manner."

- "I am an out of state student and do not have the funds to get my birth certificate."

---

[12] *See* Alan Berube, The Brookings Institution, *et al*, *Socioeconomic Differences in Household Automobile Ownership Rates: Implications for Evacuation Policy* 7 (June 2006), *available at* gsppi.berkeley.edu/faculty/sraphael/berubedeakenraphael.pdf.

[13] *See* Georgia Secretary of State, *Georgia Voter Identification Requirements*, *available at* http://www.sos.ga.gov/gaphotoid/.

Highly Confidential                                                     LYV00000078

- "I will not [be able to] vote because I do not have enough money to get my birth certificate."

- "[H]aving my birth certificate sent here would be too long and [would cost] too much money…. I am now a freshman at Prairie View without the ability to drive, [and] I am not able to get the items that I need" to obtain a state-issued photo ID card.

- "I don't have money to get another birth certificate because I am a college student…"

- "I do not have my birth certificate with me at the university."

- "I don't have a car … and my birth certificate is in Washington State."

- "I do not have transportation [to travel] to the voter registration building…"

- "This law would prevent me from voting because I don't have a car…"

- "It would be a burden to me to have to obtain the documents necessary…. I do not own a car…"

The League of Young Voters Education Fund took statements from dozens of students along these lines, explaining that they would be effectively prohibited from voting by the proposed photo ID law. The examples above are only a sample of the hundreds of students at Prairie View A&M alone who would likely be denied the opportunity to vote as a result of the proposed photo ID law.

It is important to note that the disfranchisement of even seemingly small numbers of voters can have electoral consequences at the local level.  The town of Waller itself has only a few thousand residents, with elections sometimes decided by only a few votes. Earlier this year, for example, an African-American candidate named Sid Johnson, who sought to become the first Black councilperson elected to the Waller City Council, lost by only five votes.[14]

It is noteworthy that these new burdens have been imposed against the backdrop of an unfortunate history of discouraging student voting at Prairie View A&M.  For over three decades, Waller County has repeatedly sought to prevent students at Prairie View A&M from voting.  Litigation from the late 1970s—including a decision from the Supreme Court[15]—barred Waller County's efforts to block Prairie View A&M students

---

[14] *See* Cindy Horswell, "FBI Help Sought in Alleged Waller Voter Fraud," *Houston Chron.* Aug. 19, 2011, *available at* www.chron.com/disp/story.mpl/metropolitan/7703468.html

[15] *See Symm v. United States*, 439 U.S. 1105 (1979).

6

from voting in local elections.   Nonetheless, in the 1990s and 2000s, local officials indicted students, or threatened them with prosecution, for voting in such elections.[16]

In 1993, 19 students involved in voter registration efforts on campus were indicted for voter fraud; all charges were eventually dropped.   In March 2004, Prairie View students were denied the ability to use their campus addresses for purposes of registering to vote, and were wrongfully informed that they could not vote in Waller County on the grounds that there were purportedly not permanent residents of the county. Then-District Attorney Oliver Kitzman also threatened that individuals using "feigned residency" for "illegal voting" would be punished with a 10-year prison sentence and a $10,000 fine.[17]

Although Kitzman eventually reversed course and issued a public apology to Prairie View students,[18] efforts to suppress student voting continued that year when the county commissioners' court, aware that students would be on break the day of the primary, voted to reduce early voting dramatically, and did not submit this voting change for Section 5 preclearance.   The county only abandoned this newest effort to suppress Black turnout when the university chapter of the NAACP brought a Section 5 enforcement action.[19]

Then, during the 2006 general election—which included an African-American candidate for District Attorney who had campaigned heavily on Prairie View's campus in its surrounding Black communities—over 2,000 students at Prairie View who had registered to vote went to the polls on Election Day only to discovery that their names were not in the poll books.[20]

And, earlier this year, the FBI apparently opened an investigation into allegations of intimidation of supporters of Sid Johnson, an African-American candidate for city council in Waller.[21]

---

[16] Nat'l Comm. on the Voting Rights Act, *Protecting Minority Voters: The Voting Rights Act at Work, 1982-2005* 65-66 (Feb. 2006), in U.S. House of Rep., *Voting Rights Act: Evidence of Continuing Need, Hrng before the Subcomm. on the Const. of the H. Comm. on the Judiciary, March 8, 2006* 185-86.

[17] *See* Christina D. Sanders and Blake E. Green, From "Block the Vote" to "Protect the Vote": Historically Black Student Voting Suppression and Disenfranchisement in Texas," *Harv. J. of African American Public Pol'y* 51, 53 (June 2008).

[18] *See* Terry Kliewer, "Waller County DA Apologizes in Vote Flap," *Houston Chron.* Feb. 25, 2004, *available at* http://www.chron.com/news/houston-texas/article/Waller-County-DA-apologizes-in-vote-flap-1957246.php.

[19] *See* Nat'l Comm. on the Voting Rights Act, *supra* note 16.

[20] *See* Sanders and Green, *supra* note 17, at 53.

[21] *See* Horswell, *supra* note 14.

7

LYV00000080

Given this history of efforts to suppress voting by African Americans in Waller County, the State's decision to exclude state-issued student identification cards from the list of acceptable forms of voter identification is deeply problematic.  Under Section 5's intent prong, assessing a jurisdiction's motivation in enacting voting changes is a complex task requiring a "sensitive inquiry into such circumstantial and direct evidence as may be available."[22]

The "important starting point" for assessing discriminatory intent is "the impact of the official action whether it 'bears more heavily on one race than another.'"[23]  Other considerations relevant to the purpose inquiry include, among other things, "the historical background of the [jurisdiction's] decision."[24]

The Department should consider these factors—particularly the long history of efforts to suppress student voting at historically Black colleges and universities in Texas such as Prairie View A&M—when analyzing SB 14.

## C.    The State's Rationale

Although Texas's purported rationale for the proposed photo ID law is to prevent fraud, there is absolutely no record of voter fraud with respect to in-person voting in Texas.  As Royal Masset, former Political Director of the Republican Party of Texas has stated in references to rumors of in-person voter fraud in Texas: "It's a lie. It's not true. It does not exist."[25]

---

[22] *Village of Arlington Heights v. Met. Housing Dev. Corp.*, 429 U.S. 252 at 266 (1977).  In determining "whether invidious discriminatory purpose was a motivating factor," courts have looked to the *Arlington Heights* framework, at least in part, to evaluate purpose in the § 5 context. *See, e.g., Shaw v. Reno*, 509 U.S. 630, 644, (1993) (citing *Arlington Heights* standard in context of Equal Protection Clause challenge to racial gerrymander of districts); *Rogers v. Lodge*, 458 U.S. 613, 618 (1982) (evaluating vote dilution claim under Equal Protection Clause using *Arlington Heights* test), and has also been used, in part, to evaluate purpose in this Court's earlier § 5 cases. *See also Pleasant Grove v. United States*, 479 U.S. 462, 469-470 (1987) (considering city's history in rejecting annexation of 489 black neighborhood and its departure from normal procedures when calculating costs of annexation alternatives); *see also Busbee v. Smith*, 549 F.Supp. 494, 516-517 (D.C. 1982); *Port Arthur v. United States*, 517 F.Supp. 987, 1019, *aff'd*, 459 U.S. 159 (1982).

[23] *Arlington Heights*, 429 U.S. at 266 (citing *Washington v. Davis*, 426 U.S. 229 (1976)).

[24] *Arlington Heights*, 429 U.S. at 268.

[25] R.G. Ratcliffe, "Voter fraud in Texas: 'It's a lie.'", *Houston Chron.*, May 17, 2007, *available at* http://blog.chron.com/texaspolitics/2007/05/voter-fraud-in-texas-its-a-lie/

Highly Confidential

LYV00000081

In balancing the non-existent harm of in-person vote fraud against the measurable and identifiable record of actual disfranchisement of qualified voters, the Department should err on the side of permitting qualified voters access to the polls.[26]

### Conclusion

In sum, Texas has failed to satisfy its burden of demonstrating that the proposed photo ID law will not have a retrogressive effect, nor that its adoption was free of discriminatory intent. At a minimum, the Department should seek more information from Texas as to the possible racially disproportionate effect of the law.

Should you have any questions regarding the information presented in this Comment Letter, please contact Ryan Haygood at 212-965-2235.

Sincerely,

**NAACP Legal Defense and Educational Fund, Inc.**
Ryan Haygood, Director, Political Participation Group
Dale Ho, Assistant Counsel
Natasha Korgaonkar, Assistant Counsel

**League of Young Voters Education Fund – Texas**
Christina D. Sanders
Blake E. Green

---

[26] *See Purcell v. Gonzalez*, 126 S. Ct. 5, 7 (2006) (*per curiam*) ("[T]he possibility that qualified voters might be turned away from the polls would caution any district judge to give careful consideration to the plaintiffs' challenges").

Highly Confidential

LYV00000082

PL859
9/2/2014
2:13-cv-00193

I certify this to be a true and correct
copy of the indicated document as
referred or transmitted to committee.

Chief Clerk of the House

**FILED** NOV 1 4 2006

By: _____

H.B. No. 218

A BILL TO BE ENTITLED

|  |  |
|---|---|
| 1 | AN ACT |
| 2 | relating to requiring a voter to present proof of identification. |
| 3 | BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS: |
| 4 | SECTION 1.  Section 63.001, Election Code, is amended by |
| 5 | amending Subsections (b), (c), (d), and (f) and adding Subsection |
| 6 | (g) to read as follows: |
| 7 | (b)  On offering to vote, a voter must present to an election |
| 8 | officer at the polling place the voter's voter registration |
| 9 | certificate and either: |
| 10 | (1)  one form of identification listed in Section |
| 11 | 63.0101(a); or |
| 12 | (2)  two different forms of identification listed in |
| 13 | Section 63.0101(b) [to an election officer at the polling place]. |
| 14 | (c)  On presentation of the documentation required by |
| 15 | Subsection (b) [a registration certificate], an election officer |
| 16 | shall determine whether the voter's name on the registration |
| 17 | certificate is on the list of registered voters for the precinct. |
| 18 | (d)  If the voter's name is on the precinct list of |
| 19 | registered voters and the voter's identity can be verified from the |
| 20 | proof presented, the voter shall be accepted for voting. |
| 21 | (f)  After determining whether to accept a voter, an election |
| 22 | officer shall return the voter's documentation [registration |
| 23 | certificate] to the voter. |
| 24 | (g)  If the requirements for identification prescribed by |

80R1644 JRJ-F                              1



Δ π EXHIBIT 1
Deponent William
Date 7/29/14  Rptr. 
WWW.DEPOBOOK.COM

TX_00206300

TEX00206300

1    Subsection (b) are not met, the voter may be accepted for
2    provisional voting only under Section 63.011.

3        SECTION 2.  Section 63.006(a), Election Code, is amended to
4    read as follows:

5        (a)  A voter who, when offering to vote, presents a voter
6    registration certificate indicating that the voter is currently
7    registered in the precinct in which the voter is offering to vote,
8    but whose name is not on the precinct list of registered voters,
9    shall be accepted for voting if the voter's identity can be verified
10   from the proof presented.

11       SECTION 3.  Section 63.007(a), Election Code, is amended to
12   read as follows:

13       (a)  A voter who, when offering to vote, presents a voter
14   registration certificate indicating that the voter is currently
15   registered in a different precinct from the one in which the voter
16   is offering to vote, and whose name is not on the precinct list of
17   registered voters, shall be accepted for voting if the voter's
18   identity can be verified from the proof presented and the voter
19   executes an affidavit stating that the voter:

20        (1)  is a resident of the precinct in which the voter is
21   offering to vote or is otherwise entitled by law to vote in that
22   precinct;

23        (2)  was a resident of the precinct in which the voter
24   is offering to vote at the time that information on the voter's
25   residence address was last provided to the voter registrar;

26        (3)  did not deliberately provide false information to
27   secure registration in a precinct in which the voter does not

TX_00206301

TEX00206301

1    reside; and

2              (4)  is voting only once in the election.

3         SECTION 4.  Section 63.008(a), Election Code, is amended to

4    read as follows:

5         (a)  A voter who does not present a voter registration

6    certificate when offering to vote, but whose name is on the list of

7    registered voters for the precinct in which the voter is offering to

8    vote, shall be accepted for voting if the voter executes an

9    affidavit stating that the voter does not have the voter's voter

10   registration certificate in the voter's possession at the polling

11   place at the time of offering to vote and the voter's identity can

12   be verified from the proof presented [voter presents proof of

13   identification in a form described by Section 63.0101].

14        SECTION 5.  Section 63.0101, Election Code, is amended to

15   read as follows:

16        Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.

17   (a) The following documentation is an acceptable form [as proof] of

18   photo identification under this chapter:

19             (1)  a driver's license or personal identification card

20   issued to the person by the Department of Public Safety that has not

21   expired or that expired no earlier than two years before the date of

22   presentation [or a similar document issued to the person by an

23   agency of another state, regardless of whether the license or card

24   has expired];

25             (2)  a United States military identification card that

26   contains  the  person's  photograph  [form  of  identification

27   containing the person's photograph that establishes the person's

80R1644 JRJ-F                     3

```
1    identity];
2                 (3)   a valid employee identification card that contains
3    the person's photograph and is issued by an employer of the person
4    in  the  ordinary  course  of  the  employer's  business  [birth
5    certificate or other document confirming birth that is admissible
6    in a court of law and establishes the person's identity];
7                 (4)   a United States citizenship certificate [papers]
8    issued to the person that contains the person's photograph;
9                 (5)   a United States passport issued to the person;
10                (6)   a  student  identification  card  issued  by  a  public
11   or private institution of higher education located in Texas that
12   contains  the  person's  photograph  [official  mail  addressed  to  the
13   person by name from a governmental entity]; or
14                (7)   a license to carry a concealed handgun issued to
15   the person by the Department of Public Safety.
16         (b)   The  following  documentation  is  acceptable  as  proof  of
17   identification under this chapter:
18                (1)   a copy of a current utility bill, bank statement,
19   government check, paycheck, or other government document that shows
20   the name and address of the voter;
21                (2)   official mail addressed to the person by name from
22   a governmental entity;
23                (3)   a certified copy of a birth certificate or other
24   document confirming birth that is admissible in a court of law and
25   establishes the person's identity;
26                (4)   United  States  citizenship  papers  issued  to  the
27   person;
```

80R1644 JRJ-F                     4

TX_00206303

TEX00206303

1          (5)  an original or certified copy of the person's

2  marriage license or divorce decree;

3          (6)  court records of the person's adoption, name

4  change, or sex change;

5          (7)  an identification card issued to the person by a

6  governmental entity of this state or the United States for the

7  purpose of obtaining public benefits, including veteran's

8  benefits, Medicaid, or Medicare;

9          (8)  a temporary driving permit issued to the person by

10  the Department of Public Safety;

11          (9)  a pilot's license issued to the person by the

12  Federal Aviation Administration or another authorized agency of the

13  United States;

14          (10)  a library card that contains the person's name

15  issued to the person by a public library located in this state; or

16          (11)  a hunting or fishing license issued to a person by

17  the Parks and Wildlife Department [or

18          [(8)  any other form of identification prescribed by

19  the secretary of state].

20      SECTION 6.  Section 63.011(a), Election Code, is amended to

21  read as follows:

22      (a)  A person to whom Section 63.001(g), 63.008(b), or

23  63.009(a) applies may cast a provisional ballot if the person

24  executes an affidavit stating that the person:

25          (1)  is a registered voter in the precinct in which the

26  person seeks to vote; and

27          (2)  is eligible to vote in the election.

80R1644 JRJ-F          5

TX_00206304

TEX00206304

1      SECTION 7.  Section 521.422, Transportation Code, is amended

2  by amending Subsection (a) and adding Subsection (d) to read as

3  follows:

4      (a)  Except as provided by Subsection (d), the [The] fee for

5  a personal identification certificate is:

6          (1)  $15 for a person under 60 years of age;

7          (2)  $5 for a person 60 years of age or older; and

8          (3)  $20 for a person subject to the registration

9  requirements under Chapter 62, Code of Criminal Procedure.

10      (d)  The department may not collect a fee for a personal

11  identification certificate issued to a person who executes an

12  affidavit stating that the person is financially unable to pay the

13  required fee and:

14      (1)  who is a registered voter in this state and

15  presents a valid voter registration certificate; or

16      (2)  who is eligible for registration under Section

17  13.001, Election Code, and submits a registration application to

18  the department.

19      SECTION 8.  This Act takes effect September 1, 2007.

80R1644 JRJ-F             6

TX_00206305

TEX00206305

**PL860**
**9/2/2014**
**2:13-cv-00193**

# SENATE JOURNAL

## EIGHTIETH LEGISLATURE — REGULAR SESSION

### AUSTIN, TEXAS

### PROCEEDINGS

### SIXTY-SECOND DAY
(Tuesday, May 15, 2007)

The Senate met at 11:25 a.m. pursuant to adjournment and was called to order by the President.

The roll was called and the following Senators were present: Averitt, Brimer, Carona, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Jackson, Janek, Lucio, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Shapleigh, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

The President announced that a quorum of the Senate was present.

The Reverend Neal Terwilliger, First Baptist Church, Taylor, offered the invocation as follows:

"Enter into His gates with thanksgiving and into His courts with praise: be thankful unto Him, and bless His name. For the Lord is good; His mercy is everlasting; and His truth endureth to all generations." (Psalms 100:4-5) Eternal God, we come before You today with praise and with thankful hearts. We ask Your hand of blessing to be upon this Senate today. May You give wisdom and guidance to all in attendance today, that they may continue to lead this great state to be a place of love, peace, and prosperity. Allow us to dwell together in unity and like-mindedness that Your favor may continue to shine upon us. May we bless You and not forget all Your benefits to us, Your children. Eternal Father, hear our prayers, we pray. Amen.

Senator Whitmire moved that the reading of the Journal of the proceedings of yesterday be dispensed with and the Journal be approved as printed.

The motion prevailed without objection.

### CO-AUTHOR OF SENATE BILL 961

On motion of Senator Shapleigh, Senator Zaffirini will be shown as Co-author of **SB 961**.

### CO-AUTHORS OF SENATE BILL 1292

On motion of Senator Nelson, Senators Carona, Estes, Harris, and Lucio will be shown as Co-authors of **SB 1292**.



THE HOUSE HAS PASSED THE FOLLOWING MEASURES:

**SCR 73,** Congratulating Eric R. Bittner for his selection as a 2007 Fellow by the John Simon Guggenheim Memorial Foundation.

**SJR 20,** Proposing a constitutional amendment providing for the issuance of additional general obligation bonds by the Texas Water Development Board to provide assistance to economically distressed areas.

THE HOUSE HAS CONCURRED IN SENATE AMENDMENTS TO THE FOLLOWING MEASURES:

**HB 421** (137 Yeas, 0 Nays, 2 Present, not voting)

**HB 716** (139 Yeas, 0 Nays, 2 Present, not voting)

**HB 2683** (130 Yeas, 11 Nays, 2 Present, not voting)

THE HOUSE HAS REFUSED TO CONCUR IN SENATE AMENDMENTS TO THE FOLLOWING MEASURES AND REQUESTS THE APPOINTMENT OF A CONFERENCE COMMITTEE TO ADJUST THE DIFFERENCES BETWEEN THE TWO HOUSES:

**HB 2261** (non-record vote)
House Conferees: Callegari - Chair/Aycock/Miles/O'Day/Taylor

Respectfully,

/s/Robert Haney, Chief Clerk
House of Representatives

### CONCLUSION OF MORNING CALL

The President at 11:30 a.m. announced the conclusion of morning call.

### COMMITTEE SUBSTITUTE
### HOUSE BILL 218 ON SECOND READING

Senator Fraser moved to suspend the regular order of business to take up for consideration **CSHB 218** at this time on its second reading:

**CSHB 218,** Relating to requiring a voter to present proof of identification.

The motion prevailed by the following vote: Yeas 19, Nays 9.

Yeas: Averitt, Brimer, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Jackson, Janek, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Van de Putte, Watson, West, Zaffirini.

Absent: Hegar, Uresti, Whitmire.

The bill was read second time.

### VERIFICATION OF VOTE

Senator Shapleigh called for a verification of the vote by which the regular order of business was suspended for **CSHB 218.**

The President instructed the Secretary of the Senate to call the roll.

The motion to suspend the regular order of business was lost by the following vote: Yeas 20, Nays 11. (Not receiving two-thirds vote of Members present)

Yeas: Averitt, Brimer, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Jackson, Janek, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Ellis, Gallegos, Hinojosa, Lucio, Shapleigh, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

### BILLS AND RESOLUTIONS SIGNED

The President announced the signing of the following enrolled bills and resolutions in the presence of the Senate after the captions had been read:

**SB 453, SB 812, SB 883, SB 913, SB 978, SB 1229, SCR 74, SCR 78, HB 862, HB 864, HB 944, HB 1260, HB 1279, HB 1332, HB 1380, HB 1396, HB 1416, HB 1449, HB 1472, HB 1491, HB 1560, HB 1716, HB 1768, HB 1780, HB 1781, HB 1784, HB 1852, HB 1853, HB 1922, HB 1947, HB 1962, HB 1987, HB 2005, HB 2018, HB 2090, HB 2127, HB 2130, HB 2176, HB 2219, HB 2618, HB 2708, HB 2727, HB 2839, HB 3437, HCR 15, HCR 30, HCR 93, HCR 94.**

#### (Senator Brimer in Chair)

### COMMITTEE SUBSTITUTE
### SENATE JOINT RESOLUTION 67 ON SECOND READING

On motion of Senator Ogden and by unanimous consent, the regular order of business was suspended to take up for consideration CSSJR 67 at this time on its second reading:

CSSJR 67, Proposing a constitutional amendment authorizing the legislature to permit the Texas Transportation Commission, subject to legislative review and approval, to designate the area adjacent to a state highway project as a transportation finance zone and dedicating the proceeds of the state sales and use taxes imposed in a transportation finance zone to the Texas Mobility Fund for certain purposes.

The resolution was read second time.

Senator Ogden offered the following amendment to the resolution:

**Floor Amendment No. 1**

Amend **CSSJR 67** in SECTION 1 of the bill, in proposed Subsection (e-1), as follows:

    (1) On line 33, between "a" and "tax", insert "state"; and
    (2) On line 40, strike "shall" and insert "may".

The amendment to CSSJR 67 was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

## RULES OF THE SENATE

### QUORUM

1. Two-thirds of all the Senators elected shall constitute a quorum, but a smaller number may adjourn (or recess) from day to day, and compel the attendance of absent members. (See Constitution, Art. 3, Sec. 10.)

### Editorial Note

The exact text of Section 10 of Article 3 of the State Constitution is as follows:

"Two-thirds of each House shall constitute a quorum to do business, but a smaller number may adjourn from day to day, and compel the attendance of absent members, in such manner and under such penalties as each House may provide."

### Notes of Rulings

Twenty Members of the Senate constitute a quorum when only thirty Members have qualified (35 S.J. 2 C.S. 23, 32 (1917)).

Any Member may raise the point that no quorum is present and demand that the presence of a quorum be ascertained before further business is transacted (38 S.J. Reg. 472 (1923)).

A roll call to determine the presence or absence of a quorum that reveals no quorum present automatically suspends all business except action on motions to adjourn, motions to compel attendance of absentees, and motions for a call of the Senate (50 S.J. Reg. 486 (1947); 50 S.J. Reg. 889 (1947)).

A point of order that no quorum is present does not deter continued transaction of business by Senate if in fact a quorum is known by the Presiding Officer to be present and he so announces (50 S.J. Reg. 417 (1947)).

The raising of a point of order that no quorum is present justifies an order by the Presiding Officer that the roll be called to ascertain the presence or absence of a quorum (50 S.J. Reg. 417 (1947)).

The raising of a point of order that there is no quorum present is equivalent to a request that the President have a count of



Thursday, it shall go over until the succeeding calendar Wednesday as
unfinished business.

## Notes of Rulings

A House bill, by a two-thirds vote, may be taken up and
considered by the Senate on any day of the week (46 S.J. Reg.
634-635 (1939)).

The Senate may set a House bill for consideration and proceed
to consider it on any day. In 1925, Senator Fairchild raised the
point that the Senate could not consider a House bill on any days
except Wednesday and Thursday, his contention being that since
the Senate Rules and Joint Rules set aside Wednesday and
Thursday of each week for the consideration of House Bills no
such bill may be considered on any other days of the week except
under a suspension of both the Senate and the Joint rules.
Lieutenant Governor Barry Miller refused to rule on the point of
order and submitted it to the Senate for its decision. The Senate
refused to sustain the point of order by a vote of 10 yeas, 21
nays. (39 S.J. Reg. 1110-1111 (1925)).

When the Senate adjourns on Thursday of any week with a
House bill pending, the bill then pending, whether it is a special
order or not, may not be further considered until Wednesday of
the next succeeding week unless the Senate by a two-thirds vote
agrees to consider it further prior to that day (46 S.J. Reg. 1704
(1939)).

House bills may be considered in Senate under a suspension of
the regular order of business on days other than calendar
Wednesday and calendar Thursday (48 S.J. Reg. 1051 (1943)).

## SPECIAL ORDERS

15. Any bill, resolution or other measure may, on any day, be made a
special order for a future time of the session by an affirmative vote of
two-thirds of the Members present.

A special order shall be considered at the time for which it is set and
considered from day to day until disposed of, unless at the time so fixed
there is pending business under a special order, but such pending business
may be suspended by a two-thirds vote of all the Members present. If a
special order is not reached or considered at the time fixed, it shall not lose
its place as a special order; provided further that all special orders shall be
subject to the Joint Rules and Senate Rule 14.

## Notes of Rulings

An affirmative vote of two-thirds of all Senators present including those who ask to be recorded as "present—not voting" is required to set a special order (49 S.J. Reg. 427 (1945)).

The motion to set a bill for a special order is not a proper substitute for a motion to suspend the regular order of business and take up a bill for immediate consideration (50 S.J. Reg. 1005 (1947)).

A bill being considered as a special order that is laid on the table subject to call is no longer a special order (43 S.J. Reg. 980 (1933)).

Refusal of Senate to set bill as special order for a certain hour does not prevent a motion's being made and adopted immediately thereafter to set the bill as a special order for a different specified hour (45 S.J. Reg. 860 (1937)).

The motion to suspend the constitutional rule, to place on third reading and final passage a bill that has been passed to third reading or engrossment may be made and voted on, and the bill to which it applies may be taken up and passed, although the hour for the consideration of one or more bills set as special orders has arrived before the motion to suspend is made (45 S.J. Reg. 1555 (1937)).

A motion to set a bill as a special order may not be made when a bill is pending on final passage (45 S.J. Reg. 1640 (1937)).

A bill in the hands of the Senate printer of bills may be set as a special order for consideration at a future specified hour (45 S.J. 2 C.S. 147 (1937)).

A House bill may be set as a special order for consideration on a day that is not a House Bill day in the Senate and may be taken up and considered at the time for which it has been so set (45 S.J. 2 C.S. 181 (1937)).

An unfinished special order should be disposed of before any other special order is laid before the Senate (46 S.J. Reg. 1853 (1939)).

The Senate, by a two-thirds vote, may take up a bill out of its regular order for immediate consideration although there is an unfinished special order on the President's table awaiting the Senate's consideration (49 S.J. Reg. 1053 (1945)).

*1-1-71*

## CALL FOR YEAS AND NAYS BY PRESIDING OFFICER

58. Upon the final passage of all amendments proposed to the Constitution, of all bills appropriating money or lands for any purpose, and of all questions requiring a vote of two-thirds, the presiding officer shall call for the yeas and nays, and they shall be entered in the Journal. Upon a motion to suspend the rules, the presiding officer shall call for the yeas and nays, but they shall not be entered in the Journal unless required under Rule 59.

## CALL FOR YEAS AND NAYS BY THREE MEMBERS

59. At the desire of any three Members present, the yeas and nays shall be entered on the Journal, and the names of the Members present and not voting shall be recorded immediately after those voting in the affirmative and negative, and such Members shall be counted in determining the presence of a quorum. (See Constitution, Art. 3, Sec. 12.)

### Editorial Notes

Verification of a yea and nay vote is not provided for by any rule, but when a vote is close, it has been the practice for the presiding officer to order a verification when requested by any Member to do so.

The right of a Member present to "pair" with one absent is not specifically provided for by a Senate rule but "pairing" is a long established practice the propriety of which is not questioned.

## MEMBERS REFUSING TO ANSWER RECORDED PRESENT

60. Upon a roll call of the Senate, should any Member who is in the Senate Chamber fail or refuse to answer when his name is called, the Secretary of the Senate shall, under the direction of the President of the Senate, record such Member as present.

## MATTERS REQUIRING VOTE OF TWO-THIRDS OF ALL MEMBERS

61. (a) A vote of two-thirds of all Members elected to the Senate shall be required:

(1) For the final passage of amendments to the Constitution. (See Constitution, Article 17, Section 1.)

(2) In cases of great public calamity to release the payment of taxes. (See Constitution, Article 8, Section 10.)

(3) For the final passage of bills to reduce a county to a less area than nine hundred square miles. (See Constitution, Article 9, Section 1.)

(4) For the passage of an address to the Governor for the removal of any civil officer. (See Constitution, Article 15, Section 8.)

(5) To expel a Member. (See Constitution, Article 3, Section 11.)

## Note of Ruling

A vote of two-thirds of the Members is not required for passage of bill to create flood control district and donate portion of taxes collected therein to the district (48 S.J. Reg. 1053 (1943)).

## VETOED BILLS

(b) A vote of two-thirds of all Members elected to the Senate shall be required for the passage of House Bills that have been returned by the Governor with his objections, and a vote of two-thirds of the Members of the Senate present shall be required for the passage of Senate Bills that have been returned by the Governor with his objections. (See Constitution, Article 4, Section 14.)

## Notes of Rulings

A bill to amend a bill already passed and awaiting the Governor's approval may not be considered (43 S.J. Reg. 1658 (1933)).

A specific case in which the vote of yeas and nays did not pass the bill over the Governor's veto is found at 47 S.J. Reg. 2748 (1941).

## MATTERS REQUIRING VOTE OF TWO-THIRDS OF MEMBERS PRESENT

62. (a) A vote of two-thirds of all Members present shall be required:

(1) For the impeachment of any officer. (See Constitution, Article 15, Section 3.)

(2) To excuse absentees.

(3) To adopt an amendment at third reading of a bill or a joint resolution.

(4) To postpone or change the order of business.

(5) To suspend, rescind or amend any rule of the Senate. Joint Rules of the two Houses may be adopted or amended by a simple majority of the members elected to the Senate and shall take precedence over Senate Rules in conflict.

(b) A vote of two-thirds of the Members present shall be required for the confirmation of any appointee of the Governor, unless otherwise directed by law. (See Constitution, Article 4, Section 12.)

## Historical Notes

The following rule was adopted by the Senate in 1911 (32 S.J. Reg. 790): "Rule 61a. It shall only require a majority vote of all Senators present to suspend pending business for the purpose of taking up and considering Senate Bill No. 1 and House Bill No. 226, any other rule or order to the contrary notwithstanding."

Rule 63 as adopted at the regular session in 1911 read as follows: "Any rule or order of the Senate may be rescinded by a majority vote of all members elected . . . ."

The following rule of the preceding legislature was eliminated from the 1911 Senate rules: "No standing rule or order of the Senate shall be rescinded or changed without one day's notice being given of the motion therefor."

The following is the text of the old rule on rescinding, which was adopted by the Senate of the 34th Legislature:

"(64) Any rule, order or act of the Senate may be rescinded or changed by a two-thirds vote of all Members present, except where otherwise provided by the Constitution or the laws." (34 S.J. Reg. 977 (1915)).

The rule was later amended to require two-thirds of all Members to rescind or change a rule, and in 1939 the item (5) above was inserted in lieu of the old Rule 64.

## Note of Ruling

Pending consideration of a conference report, a motion to suspend its consideration and take up a Senate bill for immediate consideration is in order. The motion is divisible, since it involves the suspension of Rule 26 (now Rule 24) and also of Rule 13, 61st Leg. (51 S.J. Reg. 1555 (1949)).

*1-1-71*

### Editorial Note

This ruling and other late Senate precedents relative to
suspending a pending question for the purpose of taking up
another indicate that it has become the prevailing opinion of the
Senate's presiding officers and its Members that any pending
debatable question, even a highly privileged one or one with high
priority for consideration, may be suspended by a two-thirds vote
of the Senate for the purpose of taking up another matter on the
President's table for immediate consideration. Suspending a
question that has itself been taken up under a suspension would
most likely not be permitted.

## SUSPENSION OF THREE-DAY RULE

63. It shall require a vote of four-fifths of the Senate to suspend the rule
requiring bills to be read on three several days. (See Constitution, Art. 3, Sec.
32.)

### Editorial Note

"Four-fifths of the Senate" means four-fifths of the Members
present, provided a quorum is present.

### Note of Ruling

A motion to suspend the Constitutional Rule and Senate Rule
32 (now Rule 30) requiring bills to be read on three several days
may be made although the same motion has been made and
defeated on the same bill on the same legislative day (55 S.J. Reg.
1561 (1957)).

## DEFEATED BILL OR RESOLUTION

64. After a bill or resolution has been considered and defeated by either
Branch of the Legislature, no bill or resolution containing the same substance
shall be passed into a law during the same session. (See Constitution, Art. 3,
Sec. 34.)

### Editorial Note

For an exhaustive ruling by Lieutenant Governor Stevenson on
the effect on other bills on the same subject of the defeat of one
bill on that subject, see 46 S.J. Reg. 666-671 (1939).

## RULES OF THE SENATE

### GENERAL PROCEDURE
### QUORUM

1. **Two-thirds of all the Senators elected shall constitute a quorum, but a smaller number may adjourn (or recess) from day to day, and compel the attendance of absent Members (Constitution, Article 3, Section 10).**

### Editorial Note

The exact text of Section 10 of Article 3 of the State Constitution is as follows:

"Two-thirds of each House shall constitute a quorum to do business, but a smaller number may adjourn from day to day, and compel the attendance of absent members, in such manner and under such penalties as each House may provide."

### Notes of Rulings

Twenty Members of the Senate constitute a quorum when only thirty Members have qualified (35 S.J. 2 C.S. 23, 32 (1917)).

A point of order that no quorum is present does not deter continued transaction of business by Senate if in fact a quorum is known by the Presiding Officer to be present and he so announces (50 S.J. Reg. 417 (1947)).

The raising of a point of order that no quorum is present justifies an order by the Presiding Officer that the roll be called to ascertain the presence or absence of a quorum (50 S.J. Reg. 417 (1947)).

Under Senate Rule No. 1 which states that "two-thirds of all of the Senators elected shall constitute a quorum, but a smaller number may adjourn (or recess) from day to day," a motion to recess (or adjourn) until a later time on the same day is a proper motion (61 S.J. Reg. 945 (1969)).


Δ π EXHIBIT 15
Deponent Williams
Date 7/29/14  Rptr. D
WWW.DEPOBOOK.COM

Rule 14.

Resolutions and House bills on special order and on third and second readings, respectively, and House Concurrent Resolutions, shall be taken up and considered until disposed of; provided in case one should be pending at adjournment on Thursday, it shall go over until the succeeding calendar Wednesday as unfinished business.

### Notes of Rulings

A House bill, by a two-thirds vote, may be taken up and considered by the Senate on any day of the week (46 S.J. Reg. 634-635 (1939)).

When the Senate adjourns on Thursday of any week with a House bill pending, the bill then pending, whether it is a special order or not, may not be further considered until Wednesday of the next succeeding week unless the Senate by a two-thirds vote agrees to consider it further prior to that day (46 S.J. Reg. 1704 (1939)).

House bills may be considered in Senate under a suspension of the regular order of business on days other than calendar Wednesday and calendar Thursday (48 S.J. Reg. 1051 (1943)).

When a Member is discussing a Senate Bill on calendar Monday or calendar Tuesday (which are considered Senate Bill Days in the Senate) and 12:01 o'clock a.m. Wednesday arrives (which is considered a House Bill Day in the Senate), no further discussion may be had on the Senate Bill (61 S.J. Reg. 956 (1969)).

### SPECIAL ORDERS

**14.** Any bill, resolution or other measure may, on any day, be made a special order for a future time of the session by an affirmative vote of two-thirds of the Members present.

A special order shall be considered at the time for which it is set and considered from day to day until disposed of, unless at the time so fixed there is pending business under a special order, but

such pending business may be suspended by a two-thirds vote of all the Members present. If a special order is not reached or considered at the time fixed, it shall not lose its place as a special order; provided further that all special orders shall be subject to the Joint Rules and Senate Rule 13.

### Editorial Notes

A bill once set as a special order does not lose its place on the Calendar of special orders if not taken up at the hour for which it is set.

A special order, the hour for the consideration of which has arrived, takes precedence of the unfinished business unless the unfinished business is itself a special order.

### Notes of Rulings

An affirmative vote of two-thirds of all Senators present including those who ask to be recorded as "present-not voting" is required to set a special order (49 S.J. Reg. 427 (1945)).

The motion to set a bill for a special order is not a proper substitute for a motion to suspend the regular order of business and take up a bill for immediate consideration (50 S.J. Reg. 1005 (1947)).

A bill being considered as a special order that is laid on the table subject to call is no longer a special order (43 S.J. Reg. 980 (1933)).

Refusal of Senate to set bill as special order for a certain hour does not prevent a motion's being made and adopted immediately thereafter to set the bill as a special order for a different specified hour (45 S.J. Reg. 860 (1937)).

The Senate, by a two-thirds vote, may take up a bill out of its regular order for immediate consideration although there is an unfinished special order on the President's table awaiting the Senate's consideration (49 S.J. Reg. 1053 (1945)).

When the business before the Senate is a Special
Order, the order of business may be suspended in order
to consider other business (61 S.J. Reg. 2034 (1969)).

## RULINGS BY PRESIDENT

15. Every question of order shall in the first instance be
decided by the President, from whose decision any Member may
appeal to the Senate. Rulings which set or alter precedent shall be
printed as an annotation to the Rules.

### Editorial Note

A Member called to the Chair pending an appeal does
not entertain any motions nor accept any further point
of order.

See also Editorial Note following Rule 5.

## MOTIONS AND THEIR PRECEDENCE

16. When a question is under consideration by the Senate, no
motion shall be made except:

(1) to fix the day to which the Senate shall adjourn or
recess;

(2) to adjourn or recess;

(3) to proceed to the transaction of executive business;

(4) the previous question;

(5) to lay on the table;

(6) to lay on the table subject to call;

(7) to postpone to a time certain;

(8) to commit;

(9) to amend;

Rule 29.

## CALLS FOR YEAS AND NAYS BY THREE MEMBERS

29. (a) At the desire of any three Members present, the yeas and nays shall be entered on the Journal, and the names of the Members present and not voting shall be recorded immediately after those voting in the affirmative and negative, and such Members shall be counted in determining the presence of a quorum (Constitution, Article 3, Section 12).

(b) If a Member who is absent desires to be recorded on a pending question he may cast a paired vote by signing a pair slip which indicates his yea or nay vote with a Member who is present and casting an opposite vote, if the Member who is present so desires. Pair slips must be signed by both the absent and present Member and filed with the Secretary of the Senate before the vote. The vote of the absent Member, while recorded as an expression of his opinion of the matter considered, shall not be counted in the total of votes for or against the measure or motion.

### Editorial Note

Verification of a yea and nay vote is not provided for by any rule, but when a vote is close, it has been the practice for the presiding officer to order a verification when requested by any Member to do so.

## MEMBERS REFUSING TO ANSWER RECORDED PRESENT

30. Upon a roll call of the Senate, should any Member who is in the Senate Chamber fail or refuse to answer when his name is called, the Secretary of the Senate shall, under the direction of the President of the Senate, record such Member as present.

## MATTERS REQUIRING VOTE OF TWO-THIRDS OF ALL MEMBERS

31. (a) A vote of two-thirds of all Members elected to the Senate shall be required:

(1) for the final passage of proposed amendments to the Constitution (Constitution, Article 17, Section 1);

(2) in cases of great public calamity to release the payment of taxes (Constitution, Article 8, Section 10);

(3) for the final passage of bills to reduce a county to a less area than nine hundred square miles (Constitution, Article 9, Section 1);

(4) for the passage of an address to the Governor for the removal of any civil officer (Constitution, Article 15, Section 8);

(5) to expel a Member (Constitution, Article 3, Section 11).

### Note of Ruling

A vote of two-thirds of the Members is not required for passage of bill to create flood control district and donate portion of taxes collected therein to the district (48 S.J. Reg. 1053 (1943)).

### VETOED BILLS

(b) A vote of two-thirds of all Members elected to the Senate shall be required for the passage of House bills that have been returned by the Governor with his objections, and a vote of two-thirds of the Members of the Senate present shall be required for the passage of Senate bills that have been returned by the Governor with his objections (Constitution, Article 4, Section 14).

### Note of Ruling

A specific case in which the vote of yeas and nays did not pass the bill over the Governor's veto is found at 47 S.J. Reg. 2748 (1941).

### MATTERS REQUIRING VOTE OF TWO-THIRDS OF MEMBERS PRESENT

32. (a) A vote of two-thirds of all Members present shall be required:

(1) for the impeachment of any officer (Constitution, Article 15, Section 3);

(2) to excuse absentees;

(3) to adopt an amendment at third reading of a bill or a joint resolution;

(4) to postpone or change the order of business;

(5) to suspend, rescind or amend any Rule of the Senate. Joint Rules of the two Houses may be adopted or amended by a simple majority of the Members elected to the Senate and shall take precedence over Senate Rules in conflict.

(b) A vote of two-thirds of the Members present shall be required for the confirmation of any appointee of the Governor, unless otherwise directed by law (Constitution, Article 4, Section 12).

### Historical Notes

The following rule was adopted by the Senate in 1911 (32 S.J. Reg. 790): "Rule 61a. It shall only require a majority vote of all Senators present to suspend pending business for the purpose of taking up and considering Senate Bill No. 1 and House Bill No. 226, any other rule or order to the contrary notwithstanding."

Rule 63 as adopted at the regular session in 1911 read as follows: "Any rule or order of the Senate may be rescinded by a majority vote of all members elected. . . ."

The following rule of the preceding legislature was eliminated from the 1911 Senate rules: "No standing rule or order of the Senate shall be rescinded or changed without one day's notice being given of the motion therefor."

The following is the text of the old rule on rescinding, which was adopted by the Senate of the 34th Legislature:

"(64) Any rule, order or act of the Senate may be rescinded or changed by a two-thirds vote of all Members present, except where otherwise provided by the Constitution or the laws." (34 S.J. Reg. 977 (1915)).

The rule was later amended to require two-thirds of all Members to rescind or change a rule, and in 1939 the item (5) above was inserted in lieu of the old Rule 64.

### Note of Ruling

Pending consideration of a conference report, a motion to suspend its consideration and take up a Senate bill for immediate consideration is in order. The motion is divisible, since it involves the suspension of Rule 26 (now Rule 16) and also of Rule 13 (now Rule 12), 61st Leg. (51 S.J. Reg. 1555 (1949)).

### Editorial Note

This ruling and other late Senate precedents relative to suspending a pending question for the purpose of taking up another indicate that it has become the prevailing opinion of the Senate's presiding officers and its Members that any pending debatable question, even a highly privileged one or one with high priority for consideration, may be suspended by a two-thirds vote of the Senate for the purpose of taking up another matter on the President's table for immediate consideration. Suspending a question that has itself been taken up under a suspension would most likely not be permitted.

### SUSPENSION OF THREE-DAY RULE

33. It shall require a vote of four-fifths of the Senate to suspend the Rule requiring bills to be read on three several days (Constitution, Article 3, Section 32).

### Editorial Note

"Four-fifths of the Senate" means four-fifths of the Members present, provided a quorum is present.

### Note of Ruling

A motion to suspend the Constitutional Rule and Senate Rule 32 (now Rule 68) requiring bills to be read on three several days may be made although the same motion has been made and defeated on the same bill on the same legislative day (55 S.J. Reg. 1561 (1957)).

# RULES OF THE SENATE

## GENERAL PROCEDURE
## QUORUM

1. Two-thirds of all the Senators elected shall constitute a quorum, but a smaller number may adjourn (or recess) from day to day, and compel the attendance of absent Members (Constitution, Article 3, Section 10).

### Editorial Note

The exact text of Section 10 of Article 3 of the State Constitution is as follows:

"Two-thirds of each House shall constitute a quorum to do business, but a smaller number may adjourn from day to day, and compel the attendance of absent members, in such manner and under such penalties as each House may provide."

### Notes of Rulings

Twenty Members of the Senate constitute a quorum when only thirty Members have qualified (35 S.J. 2 C.S. 23, 32 (1917)).

A point of order that no quorum is present does not deter continued transaction of business by Senate if in fact a quorum is known by the Presiding Officer to-be present and he so announces (50 S.J. Reg. 417 (1947)).

The raising of a point of order that no quorum is present justifies an order by the Presiding Officer that the roll be called to ascertain the presence or absence of a quorum (50 S.J. Reg. 417 (1947)).

Under Senate Rule No. 1 which states that "two-thirds of all of the Senators elected shall constitute a quorum, but a smaller number may adjourn (or recess) from day to day," a motion to recess (or adjourn) until a later time on the same day is a proper motion (61 S.J. Reg. 945 (1969)).



Rule 14.

Resolutions and House bills on special order and on third and second readings, respectively, and House Concurrent Resolutions, shall be taken up and considered until disposed of; provided in case one should be pending at adjournment on Thursday, it shall go over until the succeeding calendar Wednesday as unfinished business.

## Notes of Rulings

A House bill, by a two-thirds vote, may be taken up and considered by the Senate on any day of the week (46 S.J. Reg. 634-635 (1939)).

When the Senate adjourns on Thursday of any week with a House bill pending, the bill then pending, whether it is a special order or not, may not be further considered until Wednesday of the next succeeding week unless the Senate by a two-thirds vote agrees to consider it further prior to that day (46 S.J. Reg. 1704 (1939)).

House bills may be considered in Senate under a suspension of the regular order of business on days other than calendar Wednesday and calendar Thursday (48 S.J. Reg. 1051 (1943)).

When a Member is discussing a Senate Bill on calendar Monday or calendar Tuesday (which are considered Senate Bill Days in the Senate) and 12:01 o'clock a.m. Wednesday arrives (which is considered a House Bill Day in the Senate), no further discussion may be had on the Senate Bill (61 S.J. Reg. 956 (1969)).

## SPECIAL ORDERS

14. Any bill, resolution or other measure may, on any day, be made a special order for a future time of the session by an affirmative vote of two-thirds of the Members present.

A special order shall be considered at the time for which it is set and considered from day to day until disposed of, unless at the time so fixed there is pending business under a special order, but

such pending business may be suspended by a two-thirds vote of all the Members present. If a special order is not reached or considered at the time fixed, it shall not lose its place as a special order; provided further that all special orders shall be subject to the Joint Rules and Senate Rule 13.

## Editorial Notes

A bill once set as a special order does not lose its place on the Calendar of special orders if not taken up at the hour for which it is set.

A special order, the hour for the consideration of which has arrived, takes precedence of the unfinished business unless the unfinished business is itself a special order.

## Notes of Rulings

An affirmative vote of two-thirds of all Senators present including those who ask to be recorded as "present-not voting" is required to set a special order (49 S.J. Reg. 427 (1945)).

The motion to set a bill for a special order is not a proper substitute for a motion to suspend the regular order of business and take up a bill for immediate consideration (50 S.J. Reg. 1005 (1947)).

A bill being considered as a special order that is laid on the table subject to call is no longer a special order (43 S.J. Reg. 980 (1933)).

Refusal of Senate to set bill as special order for a certain hour does not prevent a motion's being made and adopted immediately thereafter to set the bill as a special order for a different specified hour (45 S.J. Reg. 860 (1937)).

The Senate, by a two-thirds vote, may take up a bill out of its regular order for immediate consideration although there is an unfinished special order on the President's table awaiting the Senate's consideration (49 S.J. Reg. 1053 (1945)).

Rule 15.

When the business before the Senate is a Special
Order, the order of business may be suspended in order
to consider other business (61 S.J. Reg. 2034 (1969)).

## RULINGS BY PRESIDENT

**15. Every question of order shall in the first instance be
decided by the President, from whose decision any Member may
appeal to the Senate. Rulings which set or alter precedent shall be
printed as an annotation to the Rules.**

### Editorial Note

A Member called to the Chair pending an appeal does
not entertain any motions nor accept any further point
of order.

See also Editorial Note following Rule 5.

## MOTIONS AND THEIR PRECEDENCE

**16. When a question is under consideration by the Senate, no
motion shall be made except:**

(1) to fix the day to which the Senate shall adjourn or
recess;

(2) to adjourn or recess;

(3) to proceed to the transaction of executive business;

(4) the previous question;

(5) to lay on the table;

(6) to lay on the table subject to call;

(7) to postpone to a time certain;

(8) to commit;

(9) to amend;

Rule 29.

## CALLS FOR YEAS AND NAYS BY THREE MEMBERS

29. (a) At the desire of any three Members present, the yeas and nays shall be entered on the Journal, and the names of the Members present and not voting shall be recorded immediately after those voting in the affirmative and negative, and such Members shall be counted in determining the presence of a quorum (Constitution, Article 3, Section 12).

(b) If a Member who is absent desires to be recorded on a pending question he may cast a paired vote by signing a pair slip which indicates his yea or nay vote with a Member who is present and casting an opposite vote, if the Member who is present so desires. Pair slips must be signed by both the absent and present Member and filed with the Secretary of the Senate before the vote. The vote of the absent Member, while recorded as an expression of his opinion of the matter considered, shall not be counted in the total of votes for or against the measure or motion.

### Editorial Note

Verification of a yea and nay vote is not provided for by any rule, but when a vote is close, it has been the practice for the presiding officer to order a verification when requested by any Member to do so.

## MEMBERS REFUSING TO ANSWER RECORDED PRESENT

30. Upon a roll call of the Senate, should any Member who is in the Senate Chamber fail or refuse to answer when his name is called, the Secretary of the Senate shall, under the direction of the President of the Senate, record such Member as present.

## MATTERS REQUIRING VOTE OF TWO-THIRDS
## OF ALL MEMBERS

31. (a)   A vote of two-thirds of all Members elected to the Senate shall be required:

(1) for the final passage of proposed amendments to the Constitution (Constitution, Article 17, Section 1);

(2) in cases of great public calamity to release the payment of taxes (Constitution, Article 8, Section 10);

(3) for the final passage of bills to reduce a county to a less area than nine hundred square miles (Constitution, Article 9, Section 1);

(4) for the passage of an address to the Governor for the removal of any civil officer (Constitution, Article 15, Section 8);

(5) to expel a Member (Constitution, Article 3, Section 11).

### Note of Ruling

A vote of two-thirds of the Members is not required for passage of bill to create flood control district and donate portion of taxes collected therein to the district (48 S.J. Reg. 1053 (1943)).

### VETOED BILLS

(b) A vote of two-thirds of all Members elected to the Senate shall be required for the passage of House bills that have been returned by the Governor with his objections, and a vote of two-thirds of the Members of the Senate present shall be required for the passage of Senate bills that have been returned by the Governor with his objections (Constitution, Article 4, Section 14).

### Note of Ruling

A specific case in which the vote of yeas and nays did not pass the bill over the Governor's veto is found at 47 S.J. Reg. 2748 (1941).

### MATTERS REQUIRING VOTE OF TWO-THIRDS OF MEMBERS PRESENT

32. (a) A vote of two-thirds of all Members present shall be required:

(1) for the impeachment of any officer (Constitution, Article 15, Section 3);

(2) to excuse absentees;

(3) to adopt an amendment at third reading of a bill or a joint resolution;

Rule 32.

(4) to postpone or change the order of business;

(5) to suspend, rescind or amend any Rule of the Senate. Joint Rules of the two Houses may be adopted or amended by a simple majority of the Members elected to the Senate and shall take precedence over Senate Rules in conflict.

(b) A vote of two-thirds of the Members present shall be required for the confirmation of any appointee of the Governor, unless otherwise directed by law (Constitution, Article 4, Section 12).

### Historical Notes

The following rule was adopted by the Senate in 1911 (32 S.J. Reg. 790): "Rule 61a. It shall only require a majority vote of all Senators present to suspend pending business for the purpose of taking up and considering Senate Bill No. 1 and House Bill No. 226, any other rule or order to the contrary notwithstanding."

Rule 63 as adopted at the regular session in 1911 read as follows: "Any rule or order of the Senate may be rescinded by a majority vote of all members elected. . . ."

The following rule of the preceding legislature was eliminated from the 1911 Senate rules: "No standing rule or order of the Senate shall be rescinded or changed without one day's notice being given of the motion therefor."

The following is the text of the old rule on rescinding, which was adopted by the Senate of the 34th Legislature:

"(64) Any rule, order or act of the Senate may be rescinded or changed by a two-thirds vote of all Members present, except where otherwise provided by the Constitution or the laws." (34 S.J. Reg. 977 (1915)).

The rule was later amended to require two-thirds of all Members to rescind or change a rule, and in 1939 the item (5) above was inserted in lieu of the old Rule 64.

### Note of Ruling

Pending consideration of a conference report, a motion to suspend its consideration and take up a Senate bill for immediate consideration is in order. The motion is divisible, since it involves the suspension of Rule 26 (now Rule 16) and also of Rule 13 (now Rule 12), 61st Leg. (51 S.J. Reg. 1555 (1949)).

### Editorial Note

This ruling and other late Senate precedents relative to suspending a pending question for the purpose of taking up another indicate that it has become the prevailing opinion of the Senate's presiding officers and its Members that any pending debatable question, even a highly privileged one or one with high priority for consideration, may be suspended by a two-thirds vote of the Senate for the purpose of taking up another matter on the President's table for immediate consideration. Suspending a question that has itself been taken up under a suspension would most likely not be permitted.

### SUSPENSION OF THREE-DAY RULE

33. It shall require a vote of four-fifths of the Senate to suspend the Rule requiring bills to be read on three several days (Constitution, Article 3, Section 32).

### Editorial Note

"Four-fifths of the Senate" means four-fifths of the Members present, provided a quorum is present.

### Note of Ruling

A motion to suspend the Constitutional Rule and Senate Rule 32 (now Rule 68) requiring bills to be read on three several days may be made although the same motion has been made and defeated on the same bill on the same legislative day (55 S.J. Reg. 1561 (1957)).

PL864
9/2/2014
2:13-cv-00193

# RULES OF THE SENATE

### Table of Senate Rules
### 65th Legislature

Rule                                                                 Page

|  1. | Quorum | 1 |
|  2. | Absentees | 2 |
|  3. | Absences | 2 |
|  4. | Roll Call | 2 |
|     | Call Of The Senate | 2 |
|     | Senate's Right To Await Attendance Of All Absentees | 3 |
|  5. | Presiding Officer Of The Senate | 4 |
|  6. | Election Of President Pro Tempore | 5 |
|  7. | Election Of Officers | 5 |
|  8. | Open Doors | 6 |
|  9. | Order Of Business | 6 |
| 10. | Roll Call, Prayer By Chaplain, Reading Of Journal | 6 |
| 11. | Morning Call | 6 |
| 12. | Order Of Considering Bills And Resolutions | 7 |
| 13. | House Bill Days | 8 |
| 14. | Special Orders | 9 |
| 15. | Rulings By President | 10 |
| 16. | Motions And Their Precedence | 10 |
| 17. | Limitation Of Debate | 14 |
| 18. | Written Motions | 15 |
| 19. | Withdrawal Of Motion | 15 |
| 20. | Motions To Fix Sum Or State Time | 16 |
| 21. | Division Of Question | 16 |
| 22. | Reason For Vote | 17 |
| 23. | Reconsideration | 17 |
| 24. | Spreading Motion To Reconsider On Journal | 19 |
| 25. | Reading Of Papers | 19 |
| 26. | Mode Of Stating And Voting Upon Questions | 20 |
| 27. | Lieutenant Governor To Give Casting Vote | 20 |
| 28. | Effect Of Tie Vote When Lieutenant Governor Absent | 20 |
| 29. | Calls For Yeas And Nays By Three Members | 21 |
| 30. | Members Refusing To Answer Recorded Present | 21 |
| 31. | Matters Requiring Vote Of Two-Thirds Of All Members | 21 |
|     | Vetoed Bills | 22 |
| 32. | Matters Requiring Vote Of Two-Thirds Of Members Present | 22 |
| 33. | Suspension Of Three-Day Rule | 24 |
| 34. | Elections | 24 |
| 35. | Elections | 24 |



**Rule 13**

### Notes of Rulings

A House bill, by a two-thirds vote, may be taken up and considered by the Senate on any day of the week (46 S.J. Reg. 634-635 (1939)).

When the Senate adjourns on Thursday of any week with a House bill pending, the bill then pending, whether it is a special order or not, may not be further considered until Wednesday of the next succeeding week unless the Senate by a two-thirds vote agrees to consider it further prior to that day (46 S.J. Reg. 1704 (1939)).

House bills may be considered in Senate under a suspension of the regular order of business on days other than calendar Wednesday and calendar Thursday (48 S.J. Reg. 1051 (1943)).

When a Member is discussing a Senate Bill on calendar Monday or calendar Tuesday (which are considered Senate Bill Days in the Senate) and 12:01 o'clock a.m. Wednesday arrives (which is considered a House Bill Day in the Senate), no further discussion may be had on the Senate Bill (61 S.J. Reg. 956 (1969)).

## SPECIAL ORDERS

**14.   Any bill, resolution or other measure may, on any day, be made a special order for a future time of the session by an affirmative vote of two-thirds of the Members present.**

**A special order shall be considered at the time for which it is set and considered from day to day until disposed of, unless at the time so fixed there is pending business under a special order, but such pending business may be suspended by a two-thirds vote of all the Members present.  If a special order is not reached or considered at the time fixed, it shall not lose its place as a special order; provided further that all special orders shall be subject to the Joint Rules and Senate Rule 13.**

### Editorial Notes

A bill once set as a special order does not lose its place on the Calendar of special orders if not taken up at the hour for which it is set.

A special order, the hour for the consideration of which has arrived, takes precedence of the unfinished business unless the unfinished business is itself a special order.

### Notes of Rulings

An affirmative vote of two-thirds of all Senators present including those who ask to be recorded as "present-not voting" is required to set a special order (49 S.J. Reg. 427 (1945)).

## Rule 14

The motion to set a bill for a special order is not a proper substitute for a motion to suspend the regular order of business and take up a bill for immediate consideration (50 S.J. Reg. 1005 (1947)).

A bill being considered as a special order that is laid on the table subject to call is no longer a special order (43 S.J. Reg. 980 (1933)).

Refusal of Senate to set bill as special order for a certain hour does not prevent a motion's being made and adopted immediately thereafter to set the bill as a special order for a different specified hour (45 S.J. Reg. 860 (1937)).

The Senate, by a two-thirds vote, may take up a bill out of its regular order for immediate consideration although there is an unfinished special order on the President's table awaiting the Senate's consideration (49 S.J. Reg. 1053 (1945)).

When the business before the Senate is a Special Order, the order of business may be suspended in order to consider other business (61 S.J. Reg. 2034 (1969)).

### RULINGS BY PRESIDENT

**15.   Every question of order shall in the first instance be decided by the President, from whose decision any Member may appeal to the Senate.   Rulings which set or alter precedent shall be printed as an annotation to the Rules.**

#### Editorial Note

A Member called to the Chair pending an appeal does not entertain any motions nor accept any further point of order.

See also Editorial Note following Rule 5.

### MOTIONS AND THEIR PRECEDENCE

**16.   When a question is under consideration by the Senate, no motion shall be made except:**

**(1)   to fix the day to which the Senate shall adjourn or recess;**

**(2)   to adjourn or recess;**

**(3)   to proceed to the transaction of executive business;**

Case 2:13-cv-00193   Document 674-23   Filed on 11/11/14 in TXSD   Page 46 of 49

Rule 29

## CALLS FOR YEAS AND NAYS BY THREE MEMBERS

29. (a) At the desire of any three Members present, the yeas and nays shall be entered on the Journal, and the names of the Members present and not voting shall be recorded immediately after those voting in the affirmative and negative, and such Members shall be counted in determining the presence of a quorum (Constitution, Article 3, Section 12).

(b) If a Member who is absent desires to be recorded on a pending question he may cast a paired vote by signing a pair slip which indicates his yea or nay vote with a Member who is present and casting an opposite vote, if the Member who is present so desires. Pair slips must be signed by both the absent and present Member and filed with the Secretary of the Senate before the vote. The vote of the absent Member, while recorded as an expression of his opinion of the matter considered, shall not be counted in the total of votes for or against the measure or motion.

### Editorial Note

Verification of a yea and nay vote is not provided for by any rule, but when a vote is close, it has been the practice for the presiding officer to order a verification when requested by any Member to do so.

### MEMBERS REFUSING TO ANSWER RECORDED PRESENT

30. Upon a roll call of the Senate, should any Member who is in the Senate Chamber fail or refuse to answer when his name is called, the Secretary of the Senate shall, under the direction of the President of the Senate, record such Member as present.

### MATTERS REQUIRING VOTE OF TWO-THIRDS
### OF ALL MEMBERS

31. (a) A vote of two-thirds of all Members elected to the Senate shall be required:

(1) for the final passage of proposed amendments to the Constitution (Constitution, Article 17, Section 1);

(2) in cases of great public calamity to release the payment of taxes (Constitution, Article 8, Section 10);

**Rule 31**

(3)  **for the final passage of bills to reduce a county to a less area than nine hundred square miles (Constitution, Article 9, Section 1);**

(4)  **for the passage of an address to the Governor for the removal of any civil officer. (Constitution, Article 15, Section 8);**

(5)  **to expel a Member (Constitution, Article 3, Section 11).**

### Note of Ruling

A vote of two-thirds of the Members is not required for passage of bill to create flood control district and donate portion of taxes collected therein to the district (48 S.J. Reg. 1053 (1943)).

### VETOED BILLS

(b)  **A vote of two-thirds of all Members elected to the Senate shall be required for the passage of House bills that have been returned by the Governor with his objections, and a vote of two-thirds of the Members of the Senate present shall be required for the passage of Senate bills that have been returned by the Governor with his objections (Constitution, Article 4, Section 14).**

### Note of Ruling

A specific case in which the vote of yeas and nays did not pass the bill over the Governor's veto is found at 47 S.J. Reg. 2748 (1941).

### MATTERS REQUIRING VOTE OF TWO-THIRDS OF MEMBERS PRESENT

32.  (a)  **A vote of two-thirds of all Members present shall be required:**

(1)  **for the impeachment of any officer (Constitution, Article 15, Section 3);**

(2)  **to excuse absentees;**

(3)  **to adopt an amendment at third reading of a bill or a joint resolution;**

**Rule 32**

    (4)  to postpone or change the order of business;

    (5)  to suspend, rescind or amend any Rule of the Senate. Joint Rules of the two Houses may be adopted or amended by a simple majority of the Members elected to the Senate and shall take precedence over Senate Rules in conflict.

    (b)  A vote of two-thirds of the Members present shall be required for the confirmation of any appointee of the Governor, unless otherwise directed by law (Constitution, Article 4, Section 12).

### Historical Notes

The following rule was adopted by the Senate in 1911 (32 S.J. Reg. 790): "Rule 61a. It shall only require a majority vote of all Senators present to suspend pending business for the purpose of taking up and considering Senate Bill No. 1 and House Bill No. 226, any other rule or order to the contrary notwithstanding."

Rule 63 as adopted at the regular session in 1911 read as follows: "Any rule or order of the Senate may be rescinded by a majority vote of all members elected . . . ."

The following rule of the preceding legislature was eliminated from the 1911 Senate rules: "No standing rule or order of the Senate shall be rescinded or changed without one day's notice being given of the motion therefor."

The following is the text of the old rule on rescinding, which was adopted by the Senate of the 34th Legislature:

"(64)  Any rule, order or act of the Senate may be rescinded or changed by a two-thirds vote of all Members present, except where otherwise provided by the Constitution or the laws." (34 S.J. Reg. 977 (1915)).

The rule was later amended to require two-thirds of all Members to rescind or change a rule, and in 1939 the item (5) above was inserted in lieu of the old Rule 64.

### Note of Ruling

Pending consideration of a conference report, a motion to suspend its consideration and take up a Senate bill for immediate consideration is in order. The motion is divisible, since it involves the suspension of Rule 26 (now Rule 16) and also of Rule 13 (now Rule 12), 61st Leg. (51 S.J. Reg. 1555 (1949)).

**Rule 32**

### Editorial Note

This ruling and other late Senate precedents relative to suspending a pending question for the purpose of taking up another indicate that it has become the prevailing opinion of the Senate's presiding officers and its Members that any pending debatable question, even a highly privileged one or one with high priority for consideration, may be suspended by a two-thirds vote of the Senate for the purpose of taking up another matter on the President's table for immediate consideration. Suspending a question that has itself been taken up under a suspension would most likely not be permitted.

## SUSPENSION OF THREE-DAY RULE

**33.   It shall require a vote of four-fifths of the Senate to suspend the Rule requiring bills to be read on three several days (Constitution, Article 3, Section 32).**

### Editorial Note

"Four-fifths of the Senate" means four-fifths of the Members present, provided a quorum is present.

### Note of Ruling

A motion to suspend the Constitutional Rule and Senate Rule 32 (now Rule 68) requiring bills to be read on three several days may be made although the same motion has been made and defeated on the same bill on the same legislative day (55 S.J. Reg. 1561 (1957)).

## ELECTIONS

**34.   In all elections of the Senate, the vote shall be given viva voce, except in the election of officers of the Senate (Constitution, Article 3, Section 41).**

**35.   A majority of the whole number of votes cast shall be necessary for a choice in all elections by the Senate.**

## NOMINATIONS BY THE GOVERNOR

**36.   When nominations shall be sent to the Senate by the Governor, a future day shall be assigned for action thereon, unless the Senate unanimously direct otherwise.  They shall be referred directly to either the Subcommittee on Nominations or the standing committee with jurisdiction over the subject matter involved, which shall hold hearings and report its actions directly back to the Senate.**

1-12-77   SR 30                    **- 24 -**