# HOUSE JOURNAL

## SEVENTY-NINTH LEGISLATURE, REGULAR SESSION

### PROCEEDINGS

SEVENTY-SIXTH DAY — TUESDAY, MAY 24, 2005

The house met at 10 a.m. and was called to order by the speaker.

The roll of the house was called and a quorum was announced present (Record 789).

Present — Mr. Speaker; Allen, A.; Allen, R.; Alonzo; Anchia; Anderson; Bailey; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Callegari; Campbell; Casteel; Castro; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Corte; Crabb; Davis, J.; Davis, Y.; Dawson; Delisi; Denny; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Grusendorf; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Herrero; Hilderbran; Hill; Hochberg; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Jones, J.; Keel; Keffer, B.; Keffer, J.; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Laney; Laubenberg; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miller; Moreno, P.; Morrison; Mowery; Naishtat; Nixon; Noriega, M.; Oliveira; Olivo; Orr; Otto; Paxton; Peña; Phillips; Pickett; Pitts; Puente; Quintanilla; Raymond; Reyna; Riddle; Ritter; Rodriguez; Rose; Seaman; Smith, T.; Smith, W.; Smithee; Solis; Solomons; Strama; Straus; Swinford; Talton; Taylor; Thompson; Truitt; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo; West; Wong; Woolley; Zedler.

Absent, Excused — Hodge.

Absent — Crownover.

The invocation was offered by Reverend Barry Loving, senior minister, First Christian Church, Pampa, as follows:

Most wonderful God, with joy and great expectation we praise you for this day. You have blessed us with another day of life. You have called us to a time such as this. This time when our elected representatives gather to conduct business concerning this wonderful State of Texas in which we chose to live. Thank you for this time.

We beseech thee God, to continually remind us of the responsibility we have to all peoples as we consider the items of business before us this day. Might all who gather here have hearts and minds which work in accordance with your will.

In your infinite wisdom, would you guide us in times of discernment and in times of voting? We seek to be faithful stewards of the responsibilities you have bestowed upon us. Grant us your wisdom.

We pray, O God that you would continue to bless this chamber with your presence. We ask that your blessings be upon each of these representatives, Speaker Craddick, Governor Perry, and President Bush. Empower them as they lead in their respected positions. Empower all of us with the fortitude to walk in the ways of love and peace, and in doing so may we share your grace and mercy with all those we encounter in this day. A day of blessings indeed! We pray these things in the name of Jesus the Christ. Amen.

The speaker recognized Representative Chisum who led the house in the pledges of allegiance to the United States and Texas flags.

### REGULAR ORDER OF BUSINESS SUSPENDED

On motion of Representative Nixon and by unanimous consent, the reading and referral of bills was postponed until just prior to adjournment.

### CAPITOL PHYSICIAN

The speaker recognized Representative Hardcastle who presented Dr. Max Latham of Bowie as the "Doctor for the Day."

The house welcomed Dr. Latham and thanked him for his participation in the Physician of the Day Program sponsored by the Texas Academy of Family Physicians.

(B. Cook in the chair)

### HR 1798 - ADOPTED
### (by Giddings)

Representative Giddings moved to suspend all necessary rules to take up and consider at this time **HR 1798**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1798**, Congratulating the Texas Department of Licensing and Regulation on receiving the 2004 Texas State Agency Safety Excellence Award.

**HR 1798** was read and was adopted.

On motion of Representative Goolsby, the names of all the members of the house were added to **HR 1798** as signers thereof.

### INTRODUCTION OF GUESTS

The chair recognized Representative Giddings who introduced directors of the Texas Department of Licensing and Regulation.

### MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 1).

USA_00223612

### HR 1815 - ADOPTED
### (by Ritter)

Representative Ritter moved to suspend all necessary rules to take up and consider at this time **HR 1815**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1815**, In memory of Tom Jackson of Beaumont.

**HR 1815** was read and was unanimously adopted by a rising vote.

On motion of Representative R. Cook, the names of all the members of the house were added to **HR 1815** as signers thereof.

### HR 2074 - ADOPTED
### (by Farrar, Rodriguez, Anchia, Naishtat, Coleman, et al.)

Representative Farrar moved to suspend all necessary rules to take up and consider at this time **HR 2074**.

The motion prevailed.

The following resolution was laid before the house:

**HR 2074**, Honoring social work students from the University of Houston and The University of Texas for their service throughout the 79th Legislature.

**HR 2074** was read and was adopted.

On motion of Representative J. Davis, the names of all the members of the house were added to **HR 2074** as signers thereof.

### INTRODUCTION OF GUESTS

The chair recognized Representative Farrar who introduced social work interns from the University of Houston and The University of Texas.

### HR 2024 - ADOPTED
### (by Peña, Vo, Gonzales, and Guillen)

Representative Peña moved to suspend all necessary rules to take up and consider at this time **HR 2024**.

The motion prevailed.

The following resolution was laid before the house:

**HR 2024**, Honoring Louis Patino, D.C., for his contributions to the health and well-being of his fellow Texans.

**HR 2024** was adopted.

On motion of Representative Y. Davis, the names of all the members of the house were added to **HR 2024** as signers thereof.

## COMMITTEE GRANTED PERMISSION TO MEET

Representative Solomons requested permission for the conference committee on **HB 7** and **SB 5** to meet while the house is in session for the remainder of the session.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Conference Committee on **HB 7** and **SB 5**, 11 a.m. today, Betty King Room.

## RESOLUTIONS ADOPTED

Representative Edwards moved to suspend all necessary rules in order to take up and consider at this time **HR 1715 - 1716, HR 1760, HR 1849, HR 1913 - HR 1917, HR 1944, HR 1945, HR 1838, HR 1837,** and **HR 1942**.

The motion prevailed.

The following resolutions were laid before the house:

**HR 1715** (by Y. Davis), Honoring Destinee Nacole Waiters of San Antonio on her service as an intern during the 79th Legislative Session.

**HR 1716** (by Y. Davis), Honoring Melisha S. Craft of Houston on her service as an intern during the 79th Legislative Session.

**HR 1760** (by Y. Davis), In memory of Arthello Beck, Jr., of Dallas.

**HR 1849** (by Y. Davis), Honoring Mariah Willis of Odessa for her academic, athletic, and community achievements.

**HR 1913** (by Y. Davis), Congratulating Daryl Jerome Burton II of Grand Prairie on receiving the Future African American Leadership Award from the Texas Legislative Black Caucus.

**HR 1914** (by Y. Davis), Congratulating Ophelia Hines of Dallas on her selection as a 2005 Outstanding Texan by the Texas Legislative Black Caucus.

**HR 1915** (by Y. Davis), Congratulating Edna Pemberton on being named an Outstanding Texan by the Texas Legislative Black Caucus.

**HR 1916** (by Y. Davis), Congratulating Jennifer Joy Medlock of Dallas on being named an Outstanding Texan by the Texas Legislative Black Caucus.

**HR 1917** (by Y. Davis), Congratulating Mariah L. Willis of Odessa on her receipt of the 2005 Future African American Leadership Award from the Texas Legislative Black Caucus.

**HR 1944** (by Y. Daviss), Congratulating Sergeant Rosalind Perry of Garland on her receipt of an Outstanding Texan Award in the area of public safety/law enforcement from the Texas Legislative Black Caucus.

**HR 1945** (by Y. Davis), Honoring Robert Medlock as a 2005 Texas Legislative Black Caucus Outstanding Texan.

USA_00223614

**HR 1837** (by McCall), Honoring Nancy Boyd on the occasion of her retirement from the Plano Independent School District.

**HR 1838** (by McCall), Congratulating Abby Robinson Kratz on receiving her doctorate in education leadership from Texas A&M University–Corpus Christi.

**HR 1942** (by McCall), Congratulating the Plano West High School lacrosse team on winning the Division II state championship crown.

The resolutions were adopted.

### HR 1884 - ADOPTED
### (by Corte)

Representative Corte moved to suspend all necessary rules to take up and consider at this time **HR 1884**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1884**, Convening a memorial session in the chamber of the Texas House of Representatives to honor all Texans killed during the Global War on Terrorism.

BE IT RESOLVED by the House of Representatives of the 79th Texas Legislature that the House of Representatives of the State of Texas meet in memorial session in the Hall of the House of Representatives on Thursday, May 26, 2005, to honor all Texans killed while serving in the Global War on Terrorism; and, be it further

RESOLVED, That the Honorable Rick Perry, Governor of Texas, all Texas state officials, and the family members of those killed in the Global War on Terrorism be, and hereby are, invited to attend the memorial session.

**HR 1884** was read and was adopted.

### BILLS AND RESOLUTIONS SIGNED BY THE SPEAKER

Notice was given at this time that the speaker had signed bills and resolutions in the presence of the house (see the addendum to the daily journal, Signed by the Speaker, House List No. 50).

### LEAVES OF ABSENCE GRANTED

The following members were granted leaves of absence temporarily for today to attend a meeting of the conference committee on **HB 7** and **SB 5**:

Giddings on motion of Homer.

Rose on motion of Homer.

Solomons on motion of Homer.

Taylor on motion of Homer.

Zedler on motion of Homer.

### POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

### SB 447 ON SECOND READING
### (Madden - House Sponsor)

**SB 447**, A bill to be entitled An Act relating to the sale of tax receivables by a local government.

**SB 447** was read second time on May 16, postponed until May 17, postponed until May 23, and was again postponed until 5:30 p.m. May 23.

Representative Madden moved to postpone consideration of **SB 447** until 12 p.m. today.

The motion prevailed.

### CSSB 1863 ON SECOND READING
### (Pitts - House Sponsor)

**CSSB 1863**, A bill to be entitled An Act relating to certain fiscal matters affecting governmental entities.

**CSSB 1863** was read second time on May 22, postponed until May 23, and was again postponed until 10 a.m. today.

Representative Pitts moved to postpone consideration of **CSSB 1863** until 11:45 a.m. today.

The motion prevailed.

### MAJOR STATE CALENDAR
### SENATE BILLS
### THIRD READING

The following bills were laid before the house and read third time:

### SB 1691 ON THIRD READING
### (Eiland - House Sponsor)

**SB 1691**, A bill to be entitled An Act relating to certain retired school employees and the powers and duties of the Teacher Retirement System of Texas; providing a penalty.

**SB 1691** was passed. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: A. Allen and Gallego recorded voting no; Herrero, Leibowitz, M. Noriega, and Peña recorded voting present, not voting; Solis recorded voting yes.)

### MAJOR STATE CALENDAR
### SENATE BILLS
### SECOND READING

The following bills were laid before the house and read second time:

USA_00223616

### CSSB 890 ON SECOND READING
### (Nixon - House Sponsor)

**CSSB 890**, A bill to be entitled An Act relating to the amount of recovery in a civil action.

**CSSB 890** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 837 ON SECOND READING
### (Keel - House Sponsor)

**SB 837**, A bill to be entitled An Act relating to the insanity defense.

**Amendment No. 1 (Committee Amendment No. 1)**

Representative Keel offered the following committee amendment to **SB 837**:

Amend **SB 837** (Senate engrossed version) as follows:

(1)  In SECTION 2 of the bill, in added Subsection (b), Article 46C.051, Code of Criminal Procedure (page 2, line 19), strike "10" and substitute "20".

(2)  In SECTION 2 of the bill, in added Subsection (b), Article 46C.051, Code of Criminal Procedure (page 2, line 20), strike "Subsections (c) and (d)" and substitute "Subsection (c)".

(3)  In SECTION 2 of the bill, in added Subsection (c), Article 46C.051, Code of Criminal Procedure (page 2, line 21), strike "10-day" and substitute "20-day".

(4)  In SECTION 2 of the bill, in added Article 46C.051, Code of Criminal Procedure (page 2, lines 23-26), strike Subsection (d).

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Keel offered the following amendment to **SB 837**:

Amend **SB 837** (House committee printing) as follows:

(1)  In SECTION 2 of the bill, immediately following added Subsection (b), Article 46C.258, Code of Criminal Procedure (page 19, between lines 7 and 8), insert the following:

(c)  Not later than the 60th day before the date of expiration of the order, the head of the facility shall transmit to the committing court a psychological evaluation of the acquitted person, a certificate of medical examination of the person, and any recommendation for further treatment of the person.  The committing court shall make the documents available to the attorneys representing the state and the acquitted person.

(2)  In SECTION 2 of the bill, in added Subsection (d), Article 46C.263, Code of Criminal Procedure (page 24, line 11), between "by" and "the", insert "the appropriate community supervision and corrections department or".

Amendment No. 2 was adopted.

USA_00223617

**SB 837**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

## CSSB 60 ON SECOND READING
### (Goolsby, McClendon, Dutton, Keel, and Talton - House Sponsors)

**CSSB 60**, A bill to be entitled An Act relating to the representation of certain defendants in capital cases and to the punishment for a capital felony or other felony punishable by a term of imprisonment exceeding 99 years.

**Amendment No. 1**

Representative Talton offered the following amendment to **CSSB 60**:

Amend **CSSB 60** (house committee printing) as follows:

(1) Strike SECTIONS 2 and 3 of the bill (page 1, line 23, through page 3, line 26).

(2) Strike SECTIONS 13-22 of the bill (page 10, line 10, through page 14, line 22).

(3) Renumber remaining SECTIONS of the bill accordingly.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Dutton offered the following amendment to **CSSB 60**:

Amend **CSSB 60** (house committee printing) as follows:

(1) Strike SECTION 1 of the bill (page 1, lines 6-22) and substitute the following:

SECTION 1. Section 12.31, Penal Code, is amended to read as follows:

Sec. 12.31. CAPITAL FELONY. (a) An individual adjudged guilty of a capital felony in a case in which the state seeks the death penalty shall be punished by imprisonment in the institutional division for life, for life without parole, or by death. An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the institutional division for life or for life without parole.

(b) In a capital felony trial in which the state seeks the death penalty, prospective jurors shall be informed that a sentence of life imprisonment, life imprisonment without parole, or death is mandatory on conviction of a capital felony. In a capital felony trial in which the state does not seek the death penalty, prospective jurors shall be informed that the state is not seeking the death penalty and that a sentence of life imprisonment or life imprisonment without parole is mandatory on conviction of the capital felony.

(2) Strike SECTION 4 of the bill (page 3, line 27 through page 4, line 12) and substitute the following:

SECTION 4. Section 508.046, Government Code, is amended to read as follows:

USA_00223618

Sec. 508.046. EXTRAORDINARY VOTE REQUIRED. To release on parole an inmate who was convicted of a capital felony punishable by imprisonment for life or an offense under Section 21.11(a)(1) or 22.021, Penal Code, or who is required under Section 508.145(c) to serve 35 calendar years before becoming eligible for release on parole, all members of the board must vote on the release on parole of the inmate, and at least two-thirds of the members must vote in favor of the release on parole. A member of the board may not vote on the release unless the member first receives a copy of a written report from the department on the probability that the inmate would commit an offense after being released on parole.

(3) Strike SECTION 5 of the bill (page 4, lines 13–21) and substitute the following:

SECTION 5. Section 508.145(a), Government Code, is amended to read as follows:

(a) An inmate under sentence of death or serving a sentence of life imprisonment without parole is not eligible for release on parole.

(4) Strike SECTION 6 of the bill (page 4, lines 22-26) and substitute the following:

SECTION 6. Section 1, Article 37.071, Code of Criminal Procedure, is amended to read as follows:

Sec. 1. (a) In a capital case in which the state does not seek the death penalty, on a finding at trial that the defendant is guilty of a capital offense, or on a plea of guilty or nolo contendere by the defendant, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment or life imprisonment without parole. The proceeding shall be conducted in the trial court and before the trial jury as soon as practicable, except that the court shall empanel a new jury if required by Article 44.29(c) or if the defendant has entered a plea of guilty or nolo contendere and requested that a jury assess punishment. After a finding of guilty is returned or after the defendant enters a plea of guilty or nolo contendere, the defendant, with the consent of the attorney representing the state, may change the defendant's election of who assesses punishment. In the proceeding, evidence may be presented by the state and the defendant or the defendant's counsel as to any matter that the court considers relevant to sentence, in the same manner as if the defendant were being sentenced in a noncapital case. This subsection may not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas.

(b) At the proceeding under this section, the court shall instruct the jury that, after taking into account all the evidence described by Subsection (a), the jury shall assess as punishment on the defendant a sentence of life imprisonment in the institutional division of the Texas Department of Criminal Justice or a sentence of imprisonment in the institutional division for life without parole. The court shall further charge the jury that a defendant sentenced to imprisonment for life without parole under this section is ineligible for release from the institutional division on parole or mandatory supervision and that a defendant sentenced to imprisonment for life is ineligible for release from the institutional division on

USA_00223619

mandatory supervision and is ineligible for release from the institutional division on parole until the defendant's actual calendar time served, without consideration of good conduct time, equals 40 years.

(c) If the jury assesses punishment as life imprisonment or is unable to assess punishment, the court shall sentence the defendant to life imprisonment in the institutional division of the Texas Department of Criminal Justice. If the jury assesses punishment as imprisonment for life without parole, the court shall sentence the defendant to imprisonment in the institutional division for life without parole. [~~If a defendant is found guilty in a capital felony case in which the state does not seek the death penalty, the judge shall sentence the defendant to life imprisonment.~~]

(5) In SECTION 7 of the bill, in Subdivision (1), Subsection (a), Section 2, Article 37.071, Code of Criminal Procedure (page 5, line 6), strike "death or" and substitute "death, life imprisonment, or".

(6) Strike SECTION 8 of the bill (page 5, line 23 through page 7, line 3) and substitute the following:

SECTION 8.  Section 2(e), Article 37.071, Code of Criminal Procedure, is amended to read as follows:

(e)(1) The judge [~~court~~] shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) [~~of this article~~], it shall answer the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment or life imprisonment without parole rather than a death sentence be imposed.

(2)  The judge shall instruct the jury that:

(A) if the jury returns an affirmative finding on each issue submitted under Subsection (b) and a negative finding on an issue submitted under Subdivision (1), the judge shall sentence the defendant to death;

(B) if the jury returns an affirmative finding on each issue submitted under Subsection (b) and returns an affirmative finding on an issue submitted under Subdivision (1), the judge shall sentence the defendant to life imprisonment without parole; and

(C) if the jury returns a negative finding on an issue submitted under Subsection (b), the judge shall sentence the defendant to life imprisonment.

(3) The judge, after instructing the jury under Subdivision (2), shall further charge the jury that a defendant sentenced to imprisonment for life without parole under this article is ineligible for release from the institutional division of the Texas Department of Criminal Justice on parole or mandatory supervision and that a defendant sentenced to imprisonment for life under this article is ineligible for release from the institutional division on mandatory supervision and is ineligible for release from the institutional division on parole until the defendant's actual calendar time served, without consideration of good conduct time, equals 40 years. [~~The court, on the written request of the attorney representing the defendant, shall:~~]

[(A)  instruct the jury that if the jury answers that a circumstance or circumstances warrant that a sentence of life imprisonment rather than a death sentence be imposed, the court will sentence the defendant to imprisonment in the institutional division of the Texas Department of Criminal Justice for life; and

[(B)  charge the jury in writing as follows:

["Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted."]

(7)  Strike SECTION 9 of the bill (page 7, lines 4–16) and substitute the following:

SECTION 9.  Section 2(g), Article 37.071, Code of Criminal Procedure, is amended to read as follows:

(g)  If the jury returns an affirmative finding on each issue submitted under Subsection (b) [of this article] and a negative finding on an issue submitted under Subsection (e)(1) [of this article], the judge [court] shall sentence the defendant to death. If the jury returns an affirmative finding on each issue submitted under Subsection (b) and returns an affirmative finding on an issue submitted under Subsection (e)(1) or is unable to answer an issue submitted under Subsection (e)(1), the judge shall sentence the defendant to imprisonment in the institutional division of the Texas Department of Criminal Justice for life without parole. If the jury returns a negative finding on any issue submitted under Subsection (b) [of this article or an affirmative finding on an issue submitted under Subsection (e) of this article] or is unable to answer any issue submitted under Subsection (b) [or (e) of this article], the judge [court] shall sentence the defendant to imprisonment [confinement] in the institutional division [of the Texas Department of Criminal Justice] for life.

(8)  Strike SECTIONS 10 and 11 of the bill (page 7, line 17 through page 9, line 21).

(9)  Renumber remaining SECTIONS of the bill accordingly.

Amendment No. 2 was withdrawn.

**Amendment No. 3**

Representative Keel offered the following amendment to **CSSB 60**:

Amend **CSSB 60** (House committee printing) by striking SECTION 12 of the bill (page 9, line 22 through page 10, line 9) and renumbering subsequent SECTIONS accordingly.

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Keel offered the following amendment to **CSSB 60**:

USA_00223621

Amend **CSSB 60** (House committee printing) as follows:

(1) In SECTION 10 of the bill, strike amended Subsection (a), Article 44.251, Code of Criminal Procedure (page 7, lines 19-27), and substitute the following:

(a) The court of criminal appeals shall reform a sentence of death to a sentence of confinement in the institutional division of the Texas Department of Criminal Justice for life <u>without parole</u> if the court finds that there is <u>legally</u> insufficient evidence to support an affirmative answer to an issue submitted to the jury under Section 2(b), Article 37.071[~~, or Section 3(b), Article 37.0711, of this code or a negative answer to an issue submitted to a jury under Section 2(e), Article 37.071, or Section 3(e), Article 37.0711, of this code~~].

(2) In SECTION 11 of the bill, strike added Subsection (b), Article 44.2511, Code of Criminal Procedure (page 8, line 23, through page 9, line 2), and substitute the following:

<u>(b) The court of criminal appeals shall reform a sentence of death to a sentence of confinement in the institutional division of the Texas Department of Criminal Justice for life if the court finds that there is legally insufficient evidence to support an affirmative answer to an issue submitted to the jury under Section 3(b), Article 37.0711.</u>

Amendment No. 4 was adopted.

**Amendment No. 5**

Representative Dutton offered the following amendment to **CSSB 60**:

Amend **CSSB 60** (house committee printing) by adding an appropriately numbered SECTION to read as follows and by renumbering existing SECTIONS of the bill accordingly:

SECTION _____. Section 8.07(c), Penal Code, is amended to read as follows:

(c) No person may, in any case, be punished by death for an offense committed while <u>the person</u> [~~he~~] was younger than <u>18</u> [~~17~~] years.

Amendment No. 5 was adopted.

**Amendment No. 6**

Representative Keel offered the following amendment to **CSSB 60**:

Amend **CSSB 60** (committee printing) as follows:

(1) In SECTION 24 of the bill, at the end of amended Section 2(d), Article 11.071, Code of Criminal Procedure (page 15, line 8), strike "<u>criminal</u>" and substitute "<u>capital</u>".

(2) In SECTION 25 of the bill, in amended Subdivision (2), Article 26.052(d), Code of Criminal Procedure (page 15, line 15), between "case" and the colon, insert "<u>or an attorney appointed as lead counsel in the direct appeal of a death penalty case</u>".

(3) In SECTION 25 of the bill, in amended Paragraph (C), Subdivision (2), Article 26.052(d), Code of Criminal Procedure (page 15, line 22), strike "<u>criminal</u>" and substitute "<u>capital</u>".

USA_00223622

(4) In SECTION 25 of the bill, strike proposed Subdivision (3), Article 26.052(d), Code of Criminal Procedure (page 16, lines 11-15), and renumber existing subdivisions of that article accordingly.

Amendment No. 6 was adopted.

(Speaker in the chair)

(Crownover now present)

A record vote was requested.

**CSSB 60**, as amended, was passed to third reading by (Record 790): 104 Yeas, 37 Nays, 1 Present, not voting.

Yeas — Allen, A.; Alonzo; Anchia; Bailey; Baxter; Berman; Blake; Bohac; Branch; Brown, F.; Burnam; Casteel; Castro; Chavez; Coleman; Cook, B.; Cook, R.; Crabb; Davis, J.; Davis, Y.; Denny; Deshotel; Driver; Dukes; Dunnam; Dutton; Eiland; Eissler; Escobar; Farabee; Farrar; Flores; Flynn; Frost; Gallego; Gattis; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Grusendorf; Hardcastle; Hegar; Herrero; Hilderbran; Hochberg; Homer; Howard; Hughes; Hunter; Hupp; Isett; Jones, D.; Jones, J.; Keel; King, P.; King, T.; Kolkhorst; Krusee; Laney; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Moreno, P.; Morrison; Naishtat; Nixon; Noriega, M.; Oliveira; Olivo; Orr; Otto; Peña; Phillips; Pickett; Pitts; Puente; Quintanilla; Raymond; Reyna; Rodriguez; Seaman; Smith, W.; Solis; Strama; Straus; Talton; Thompson; Truitt; Turner; Uresti; Veasey; Villarreal; Vo; West; Wong.

Nays — Allen, R.; Anderson; Bonnen; Brown, B.; Callegari; Campbell; Corte; Crownover; Dawson; Delisi; Edwards; Elkins; Geren; Guillen; Haggerty; Hamilton; Hamric; Harper-Brown; Hartnett; Hill; Hope; Hopson; Jackson; Keffer, B.; Keffer, J.; Kuempel; Laubenberg; Miller; Mowery; Paxton; Riddle; Ritter; Smith, T.; Smithee; Swinford; Van Arsdale; Woolley.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons; Taylor; Zedler.

Absent — Chisum.

(Hilderbran in the chair)

### CSSB 1188 ON SECOND READING
### (Delisi - House Sponsor)

**CSSB 1188**, A bill to be entitled An Act relating to the medical assistance program and the provision of related services.

**Amendment No. 1**

Representative Delisi offered the following amendment to **CSSB 1188**:

USA_00223623

Amend **CSSB 1188** by adding the following appropriately numbered Sections to the bill and renumbering subsequent Sections of the bill accordingly:

SECTION ___. Section 531.102, Government Code, is amended by adding Subsections (j) and (k) to read as follows:

(j) The office shall prepare a final report on each audit or investigation conducted under this section. The final report must include:

(1) a summary of the activities performed by the office in conducting the audit or investigation;

(2) a statement regarding whether the audit or investigation resulted in a finding of any wrongdoing; and

(3) a description of any findings of wrongdoing.

(k) A final report on an audit or investigation is subject to required disclosure under Chapter 552. All information and materials compiled during the audit or investigation remain confidential and not subject to required disclosure in accordance with Section 531.1021(g).

SECTION ___. Section 531.1021, Government Code, is amended by amending Subsection (g) and adding Subsection (h) to read as follows:

(g) All information and materials subpoenaed or compiled by the office in connection with an audit or investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or its employees or agents involved in the audit or investigation conducted by the office, except that this information may be disclosed to the office of the attorney general, the state auditor's office, and law enforcement agencies.

(h) A person who receives information under Subsection (g) may disclose the information only in accordance with Subsection (g) and in a manner that is consistent with the authorized purpose for which the person first received the information.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Delisi offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) as follows:

(1) Add the following appropriately numbered SECTION to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ___. MEDICAL INFORMATION TELEPHONE HOTLINE. (a) Subchapter B, Chapter 531, Government Code, is amended by adding Section 531.02131 to read as follows:

Sec. 531.02131. MEDICAID MEDICAL INFORMATION TELEPHONE HOTLINE PILOT PROGRAM. (a) In this section, "net cost-savings" means the total projected cost of Medicaid benefits for an area served under the pilot program minus the actual cost of Medicaid benefits for the area.

(b) The commission shall evaluate the cost-effectiveness, in regard to preventing unnecessary emergency room visits and ensuring that Medicaid recipients seek medical treatment in the most medically appropriate and cost-effective setting, of developing a Medicaid medical information telephone

USA_00223624

hotline pilot program under which physicians are available by telephone to answer medical questions and provide medical information for recipients. If the commission determines that the pilot program is likely to result in net cost-savings, the commission shall develop the pilot program.

(c) The commission shall select the area in which to implement the pilot program. The selected area must include:

(1) at least two counties; and

(2) not more than 100,000 Medicaid recipients, with approximately 50 percent of the recipients enrolled in a managed care program in which the recipients receive services from a health maintenance organization.

(d) The commission shall request proposals from private vendors for the operation of a telephone hotline under the pilot program. The commission may not award a contract to a vendor unless the vendor agrees to contractual terms:

(1) requiring the vendor to answer medical questions and provide medical information by telephone to recipients using only physicians;

(2) providing that the value of the contract is contingent on achievement of net cost-savings in the area served by the vendor; and

(3) permitting the commission to terminate the contract after a reasonable period if the vendor's services do not result in net cost-savings in the area served by the vendor.

(e) The commission shall periodically determine whether the pilot program is resulting in net cost-savings. The commission shall discontinue the pilot program if the commission determines that the pilot program is not resulting in net cost-savings after a reasonable period.

(f) Notwithstanding any other provision of this section, including Subsection (b), the commission is not required to develop the pilot program if suitable private vendors are not available to operate the telephone hotline.

(g) The executive commissioner shall adopt rules necessary for implementation of this section.

(b) Not later than December 1, 2005, the Health and Human Services Commission shall determine whether the pilot program described by Section 531.02131, Government Code, as added by this section, is likely to result in net cost-savings. If the determination indicates that net cost-savings are likely, the commission shall take the action required by Subsections (c), (d), and (e) of this section.

(c) Not later than January 1, 2006, the Health and Human Services Commission shall select the counties in which the pilot program will be implemented.

(d) Not later than February 1, 2006, the Health and Human Services Commission shall request proposals from private vendors for the operation of a medical information telephone hotline. The commission shall evaluate the proposals and choose one or more vendors as soon as possible after the receipt of the proposals.

(e) Not later than January 1, 2007, the Health and Human Services Commission shall report to the governor, the lieutenant governor, and the speaker of the house of representatives regarding the pilot program. The report must include:

　　　(1) a description of the status of the pilot program, including whether the commission was unable to contract with a suitable vendor;

　　　(2) if the pilot program has been implemented:

　　　　　(A) an evaluation of the effects of the pilot program on emergency room visits by program participants; and

　　　　　(B) a description of cost savings in the area included in the pilot program; and

　　　　　(3) recommendations regarding expanding or revising the pilot program.

　　　(2) In SECTION 11(a) of the bill (page 28, lines 18 through 19), strike "Except as otherwise provided by this subsection and Subsection (d) of this section," and substitute "Except as otherwise provided by this Act,".

　　Amendment No. 2 was adopted.

**Amendment No. 3**

　　Representative Delisi offered the following amendment to **CSSB 1188**:

　　Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

　　SECTION ＿＿＿. OFFICE OF MEDICAL TECHNOLOGY. Subchapter A, Chapter 531, Government Code, is amended by adding Section 531.0081 to read as follows:

　　Sec. 531.0081. OFFICE OF MEDICAL TECHNOLOGY. (a) In this section, "office" means the office of medical technology.

　　(b) The commission shall establish the office of medical technology within the commission. The office shall explore and evaluate new developments in medical technology and propose implementing the technology in the medical assistance program under Chapter 32, Human Resources Code, if appropriate and cost-effective.

　　(c) Office staff must have skills and experience in research regarding health care technology.

　　SECTION ＿＿＿. MEDICAID REIMBURSEMENT RATES. (a) Section 531.021, Government Code, is amended by adding Subsections (f) and (g) to read as follows:

　　(f) In adopting rates for medical assistance payments under Subsection (b)(2), the executive commissioner may adopt reimbursement rates for appropriate nursing services provided to recipients with certain health conditions if those services are determined to provide a cost-effective alternative to hospitalization. A physician must certify that the nursing services are medically appropriate for the recipient for those services to qualify for reimbursement under this subsection.

USA_00223626

(g) In adopting rates for medical assistance payments under Subsection (b)(2), the executive commissioner may adopt cost-effective reimbursement rates for group appointments with medical assistance providers for certain diseases and medical conditions specified by rules of the executive commissioner.

(b) Subchapter B, Chapter 531, Government Code, is amended by adding Section 531.02175 to read as follows:

Sec. 531.02175. REIMBURSEMENT FOR ONLINE MEDICAL CONSULTATIONS. (a) In this section, "physician" means a person licensed to practice medicine in this state under Subtitle B, Title 3, Occupations Code.

(b) Subject to the requirements of this subsection, the executive commissioner by rule may require the commission and each health and human services agency that administers a part of the Medicaid program to provide Medicaid reimbursement for a medical consultation that is provided by a physician or other health care professional using the Internet as a cost-effective alternative to an in-person consultation. The executive commissioner may require the commission or a health and human services agency to provide the reimbursement described by this subsection only if the Centers for Medicare and Medicaid Services develop an appropriate Current Procedural Terminology code for medical services provided using the Internet.

(c) The executive commissioner may develop and implement a pilot program in one or more sites chosen by the executive commissioner under which Medicaid reimbursements are paid for medical consultations provided by physicians or other health care professionals using the Internet. The pilot program must be designed to test whether an Internet medical consultation is a cost-effective alternative to an in-person consultation under the Medicaid program. The executive commissioner may modify the pilot program as necessary throughout its implementation to maximize the potential cost-effectiveness of Internet medical consultations. If the executive commissioner determines from the pilot program that Internet medical consultations are cost-effective, the executive commissioner may expand the pilot program to additional sites or may implement Medicaid reimbursements for Internet medical consultations statewide.

(d) The executive commissioner is not required to implement the pilot program authorized under Subsection (c) as a prerequisite to providing Medicaid reimbursement authorized by Subsection (b) on a statewide basis.

SECTION ____. HOSPITAL EMERGENCY ROOM USE REDUCTION. (a) Subchapter B, Chapter 531, Government Code, is amended by adding Section 531.085 to read as follows:

Sec. 531.085. HOSPITAL EMERGENCY ROOM USE REDUCTION INITIATIVES. The commission shall develop and implement a comprehensive plan to reduce the use of hospital emergency room services by recipients under the medical assistance program. The plan may include:

(1) a pilot program designed to facilitate program participants in accessing an appropriate level of health care, which may include as components:

(A) providing program participants access to bilingual health services providers; and

USA_00223627

(B) giving program participants information on how to access primary care physicians, advanced practice nurses, and local health clinics;

(2) a pilot program under which health care providers, other than hospitals, are given financial incentives for treating recipients outside of normal business hours to divert those recipients from hospital emergency rooms;

(3) payment of a nominal referral fee to hospital emergency rooms that perform an initial medical evaluation of a recipient and subsequently refer the recipient, if medically stable, to an appropriate level of health care, such as care provided by a primary care physician, advanced practice nurse, or local clinic;

(4) a program under which the commission or a managed care organization that enters into a contract with the commission under Chapter 533 contacts, by telephone or mail, a recipient who accesses a hospital emergency room three times during a six-month period and provides the recipient with information on ways the recipient may secure a medical home to avoid unnecessary treatment at hospital emergency rooms;

(5) a health care literacy program under which the commission develops partnerships with other state agencies and private entities to:

(A) assist the commission in developing materials that:

(i) contain basic health care information for parents of young children who are recipients under the medical assistance program and who are participating in public or private child-care or prekindergarten programs, including federal Head Start programs; and

(ii) are written in a language understandable to those parents and specifically tailored to be applicable to the needs of those parents;

(B) distribute the materials developed under Paragraph (A) to those parents; and

(C) otherwise teach those parents about the health care needs of their children and ways to address those needs; and

(6) other initiatives developed and implemented in other states that have shown success in reducing the incidence of unnecessary treatment in hospital emergency rooms.

(b) The Health and Human Services Commission may develop the health care literacy component of the comprehensive plan to reduce the use of hospital emergency room services required by Section 531.085(5), Government Code, as added by this section, so that the health care literacy component operates in a manner similar to the manner in which the Johnson & Johnson/UCLA Health Care Institute operates its health care training program that is designed to teach parents to better address the health care needs of their children.

SECTION ____. PERFORMANCE BONUS PILOT PROGRAM. Subchapter B, Chapter 531, Government Code, is amended by adding Section 531.086 to read as follows:

Sec. 531.086. PERFORMANCE BONUS PILOT PROGRAM. (a) The commission shall develop a proposal for providing higher reimbursement rates to primary care case management providers under the Medicaid program who treat program recipients with chronic health conditions in accordance with evidence-based, nationally accepted best practices and standards of care.

(b)  The commission shall define the parameters of the proposed program, including:

(1)  the types of chronic health conditions the program would target;

(2)  the best practices and standards of care that must be followed for a provider to obtain a higher reimbursement rate under the proposed program; and

(3)  the types of providers to whom the higher reimbursement rate would be offered under the proposed program.

(c)  Not later than December 1, 2006, the Health and Human Services Commission shall report to the standing committees of the senate and the house of representatives having primary jurisdiction over welfare programs regarding the proposed program under this section. The report must include:

(1)  the anticipated effect of the higher reimbursement rates to be offered under the program on the quality of care provided and the health outcomes for program recipients;

(2)  a determination of whether the program would be cost-effective; and

(3)  a recommendation regarding implementation of the program.

(d)  This section expires September 1, 2007.

SECTION ____.  RETURN OF UNUSED DRUGS.  Section 562.1085, Occupations Code, is amended by amending Subsection (a) and adding Subsection (f) to read as follows:

(a)  A pharmacist who practices in or serves as a consultant for a health care facility in this state may return to a pharmacy certain unused drugs, other than a controlled substance as defined by Chapter 481, Health and Safety Code, purchased from the pharmacy as provided by board rule. The unused drugs must:

(1)  be approved by the federal Food and Drug Administration and be:

(A)  sealed in [the manufacturer's original] unopened tamper-evident packaging and either individually packaged or packaged in unit-dose packaging;

(B)  oral or parenteral medication in sealed single-dose containers approved by the federal Food and Drug Administration;

(C)  topical or inhalant drugs in sealed units-of-use containers approved by the federal Food and Drug Administration; or

(D)  parenteral medications in sealed multiple-dose containers approved by the federal Food and Drug Administration from which doses have not been withdrawn; and

(2)  not be the subject of a mandatory recall by a state or federal agency or a voluntary recall by a drug seller or manufacturer.

(f)  The tamper-evident packaging required under Subsection (a)(1) for the return of unused drugs is not required to be the manufacturer's original packaging unless that packaging is required by federal law.

SECTION ____.  MEDICAID COVERAGE FOR HEALTH INSURANCE PREMIUMS AND LONG-TERM CARE NEEDS. (a) The Health and Human Services Commission shall explore the commission's authority under federal law to offer, and the cost and feasibility of offering:

(1) a stipend paid by the Medicaid program to a person to cover the cost of a private health insurance plan as an alternative to providing traditional Medicaid services for the person;

(2) premium payment assistance through the Medicaid program for long-term care insurance for a person with a health condition that increases the likelihood that the person will need long-term care in the future; and

(3) a long-term care partnership between the Medicaid program and a person under which the person pays the premiums for long-term care insurance and the Medicaid program provides continued coverage after benefits under that insurance are exhausted.

(b) In exploring the feasibility of the options described by Subsection (a) of this section, the Health and Human Services Commission shall consider whether other state incentives that could encourage persons to purchase health insurance plans or long-term care insurance are feasible. The incentives may include offering tax credits to businesses to increase the availability of affordable insurance.

(c) If the Health and Human Services Commission determines that any of the options described by Subsection (a) of this section are feasible and cost-effective, the commission shall make efforts to implement those options to the extent they are authorized by federal law. The commission shall request any necessary waivers from the Centers for Medicare and Medicaid Services as soon as possible after determining that an option is feasible and cost-effective. If the commission determines that legislative changes are necessary to implement an option, the commission shall report to the 80th Legislature and specify the changes that are needed.

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Delisi offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTION and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. MEDICAID DISEASE MANAGEMENT PROGRAMS. (a) Section 533.009, Government Code, is amended by adding Subsection (f) to read as follows:

(f) The executive commissioner, by rule, shall prescribe the minimum requirements that a managed care organization, in providing a disease management program, must meet to be eligible to receive a contract under this section. The managed care organization must, at a minimum, be required to:

(1) provide disease management services that have performance measures for particular diseases that are comparable to the relevant performance measures applicable to a provider of disease management services under Section 32.059, Human Resources Code, as added by Chapter 208, Acts of the 78th Legislature, Regular Session, 2003; and

(2) show evidence of managing complex diseases in the Medicaid population.

(b)  Section 32.059, Human Resources Code, as added by Chapter 208, Acts of the 78th Legislature, Regular Session, 2003, is amended by amending Subsection (c) and adding Subsection (c-1) to read as follows:

(c)  The executive commissioner of the Health and Human Services Commission [department], by rule, shall prescribe the minimum requirements a provider of a disease management program must meet to be eligible to receive a contract under this section. The provider must, at a minimum, be required to:

(1)  use disease management approaches that are based on evidence-supported models, [minimum] standards of care in the medical community, and clinical outcomes; and

(2)  ensure that a recipient's primary care physician and other appropriate specialty physicians, or registered nurses, advanced practice nurses, or physician assistants specified and directed or supervised in accordance with applicable law by the recipient's primary care physician or other appropriate specialty physicians, become directly involved in the disease management program through which the recipient receives services.

(c-1)  A managed care health plan that develops and implements a disease management program under Section 533.009, Government Code, and a provider of a disease management program under this section shall coordinate during a transition period beneficiary care for patients that move from one disease management program to another program.

(c)  The executive commissioner of the Health and Human Services Commission may use a provider of a disease management program under Section 32.059, Human Resources Code, as added by Chapter 208, Acts of the 78th Legislature, Regular Session, 2003, as amended by this section, to provide disease management services if the executive commissioner determines that the use of that provider will be more cost-effective to the Medicaid program than using a provider of a disease management program under Section 533.009, Government Code, as amended by this section. A Medicaid recipient currently in a disease management program provided under Section 32.059, Human Resources Code, as added by Chapter 208, Acts of the 78th Legislature, Regular Session, 2003, in a service area that is subject to a Medicaid managed care expansion may remain enrolled in the recipient's current disease management program if the executive commissioner determines that allowing those recipients to remain is cost-effective.

Amendment No. 4 was adopted.

**Amendment No. 5**

Representative Miller offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** as follows:

(1) Strike added Section 531.502, Government Code, (page 2, lines 2-9) and substitute the following:

Sec. 531.502.  MAXIMUM PRICE.  The executive commissioner shall determine by rule the price of a prescription drug charged to an eligible person under the state pharmacy assistance program.  The price may not exceed the sum of:

    (1)  the discounted acquisition price under the program; and

    (2)  a reasonable dispensing fee.

    (2)  Strike added Section 531.504(d), Government Code, (page 4, lines 13-23) and substitute the following:

    (d)  The executive commissioner by rule shall specify inventory and recordkeeping requirements for participating pharmacies.

    (3)  In added Section 531.505(a), Government Code (page 5, line 12-13) strike "an entity designated by the executive commissioner" and substitute "a physician who meets the requirements under Section 563.053, Occupations Code,".

    (4)  In added Section 531.505(b), Government Code (page 5, lines 16-17) strike "pharmacies or other".

    Amendment No. 5 was withdrawn.

**Amendment No. 6**

    Representative Thompson offered the following amendment to **CSSB 1188**:

    Amend **CSSB 1188** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

    SECTION __. (a) Section 32.024(w), Human Resources Code, is amended to read as follows:

    (w)  The department shall set a personal needs allowance of not less than $45 a month and, subject to availability of funds, shall set the personal needs allowance in an amount not less than $60 a month for a resident of a convalescent or nursing home or related institution licensed under Chapter 242, Health and Safety Code, personal care facility, ICF-MR facility, or other similar long-term care facility who receives medical assistance. The department may send the personal needs allowance directly to a resident who receives Supplemental Security Income (SSI) (42 U.S.C. Section 1381 et seq.). This subsection does not apply to a resident who is participating in a medical assistance waiver program administered by the department.

    (b)  This section applies only to a personal needs allowance paid on or after the effective date of this Act.

    Representative Delisi moved to table Amendment No. 6.

    (Speaker in the chair)

    A record vote was requested.

    The motion to table was lost by (Record 791): 53 Yeas, 83 Nays, 1 Present, not voting.

    Yeas — Anderson; Berman; Branch; Brown, B.; Callegari; Campbell; Chisum; Cook, B.; Corte; Crownover; Davis, J.; Dawson; Delisi; Denny; Eissler; Elkins; Flynn; Gattis; Griggs; Hardcastle; Harper-Brown; Hartnett; Hegar; Hope; Howard; Hupp; Isett; Jackson; Keffer, B.; Keffer, J.; Kolkhorst; Kuempel;

Laubenberg; Madden; McCall; Merritt; Miller; Nixon; Orr; Otto; Paxton; Pitts; Riddle; Seaman; Smith, T.; Smith, W.; Smithee; Swinford; Talton; Truitt; Van Arsdale; Wong; Woolley.

Nays — Allen, A.; Allen, R.; Alonzo; Anchia; Bailey; Blake; Bohac; Brown, F.; Burnam; Casteel; Castro; Chavez; Coleman; Cook, R.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Guillen; Haggerty; Hamilton; Hamric; Herrero; Hilderbran; Hill; Hochberg; Homer; Hopson; Hughes; Hunter; Jones, J.; Keel; King, P.; King, T.; Krusee; Laney; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Moreno, P.; Morrison; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Phillips; Pickett; Puente; Quintanilla; Raymond; Reyna; Ritter; Rodriguez; Solis; Strama; Straus; Thompson; Turner; Uresti; Veasey; Villarreal; Vo; West.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons; Taylor; Zedler.

Absent — Baxter; Bonnen; Crabb; Grusendorf; Jones, D.; Mowery.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 791. I intended to vote no.

Kuempel

I was shown voting yes on Record No. 791. I intended to vote no.

Merritt

I was shown voting yes on Record No. 791. I intended to vote no.

T. Smith

(Talton in the chair)

Amendment No. 6 was withdrawn.

**Amendment No. 7**

Representative Miller offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** as follows:

(1)   Strike added Section 531.502, Government Code, (page 2, lines 2-9) and substitute the following:

Sec. 531.502.   MAXIMUM PRICE.   The executive commissioner shall determine by rule the price of a prescription drug charged to an eligible person under the state pharmacy assistance program.  The price may not exceed the sum of:

(1)  the discounted acquisition price under the program; and
(2)  a reasonable dispensing fee.

USA_00223633

(2)  Strike added Section 531.504(d), Government Code, (page 4, lines 13-23) and substitute the following:

(d)  The executive commissioner by rule shall specify inventory and recordkeeping requirements for participating pharmacies.

(3)  In added Section 531.505(a), Government Code (page 5, line 12-13) strike "an entity designated by the executive commissioner" and substitute "a physician who meets the requirements under Section 563.053, Occupations Code,".

(4)  In added Section 531.505(b), Government Code (page 5, lines 16-17) strike "pharmacies or other".

Amendment No. 7 was adopted.

**Amendment No. 8**

Representative Hupp offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** in SECTION 2 of the bill, in Subsection (d) (2) of that SECTION (House Committee Printing, page 5, line 10), between "rates" and ";", insert "and increase dispensing fees for pharmacies under the Medicaid program to better align those fees with actual dispensing costs".

Amendment No. 8 was adopted.

**Amendment No. 9**

Representative Gattis offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (house committee printing), Page 7 by adding a new number 7 as follows:

(7)  links Medicaid and non-Medicaid data sets, including but not limited to data sets related to Medicaid, TANF, WIC, vital statistics, and other public health programs.

Amendment No. 9 was adopted.

**Amendment No. 10**

Representative Hupp offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTION and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __.  ABOLITION OF LONG-TERM CARE LEGISLATIVE OVERSIGHT COMMITTEE;  INTERIM REPORT ON LONG-TERM CARE. (a)  On the effective date of this Act, Subchapter O, Chapter 242, Health and Safety Code, is repealed, and the long-term care legislative oversight committee established under that subchapter is abolished.

(b)  All records in the custody of the long-term care legislative oversight committee that are related to a duty, function, or activity of the committee shall be transferred on the effective date of this Act to the standing committees of the senate and house of representatives having primary jurisdiction over long-term care services.

Amendment No. 10 was adopted.

**Amendment No. 11**

Representative Uresti offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) in SECTION 6 of the bill, in amended Section 533.005(a), Government Code (page 17, lines 14-17), by striking Subdivision (13) and substituting the following:

(13) a requirement that the organization consider the use of advanced practice nurses as one type of primary care provider in the organization's provider network; and

Amendment No. 11 was adopted.

**Amendment No. 12**

Representative J. Davis offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTION and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. ABOLITION OF HEALTH AND HUMAN SERVICES TRANSITION LEGISLATIVE OVERSIGHT COMMITTEE. The Health and Human Services Transition Legislative Oversight Committee established under Section 1.22, Chapter 198, Acts of the 78th Legislature, Regular Session, 2003, is abolished on the effective date of this Act.

Amendment No. 12 was adopted.

**Amendment No. 13**

Representative Truitt offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188**, SECTION 5(a), as follows:

(1) On page 17, line 17, by striking the word "and"

(2) On page 17, line 25, by inserting the following between the word "network" and the period:

; and (15) a requirement that the managed care organization develop, implement and maintain a system for tracking and resolving all provider appeals related to claims payment, including a process that will require:

(A) a tracking mechanism to document the status and final disposition of each provider's claims payment appeal;

(B) the contracting with physicians who are not network providers and who are of the same or related specialty as the appealing physician to resolve claims disputes related to denial on the basis of medical necessity that remain unresolved subsequent to a provider appeal; and

(C) the determination of the physician resolving the dispute to be binding on the managed care organization and provider.

(3) On page 18, line 20, by striking the word "and"

(4) On page 19, line 17, by inserting the following between the word "notifications" and the period:

USA_00223635

; and (5) reserve the right to amend the managed care organization's process for resolving provider appeals of denials based on medical necessity to include an independent review process established by commission for final determination of these disputes

Amendment No. 13 was adopted.

**Amendment No. 14**

Representative Truitt offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) in SECTION 6 of the bill by adding the following appropriately lettered subsection to that SECTION and relettering subsequent subsections of that SECTION accordingly:

(__) Subchapter A, Chapter 533, Government Code, is amended by adding Section 533.00251 as follows:

Sec. 533.00251.   PRESERVATION OF UPPER PAYMENT LIMIT PROVISIONS OF MEDICAID PROGRAM. (a) The commission shall compute any potential reduction or elimination of federal Medicaid payments allowed under the upper payment limit provisions of the Medicaid program that are made to public hospitals or other safety net hospitals that serve recipients that might result from the implementation of a proposal to implement or expand any Medicaid managed care model or arrangement in a health care service region. The commission shall consider the results of the potential reduction or elimination in making decisions regarding the implementation of the proposal.

(b) Before implementing a proposal described by Subsection (a) in a health care service region that might result in a reduction or elimination of federal Medicaid payments allowed under the upper payment limit provisions of the Medicaid program, the commission must submit a report regarding the proposal to the governor, lieutenant governor, speaker of the house of representatives, and presiding officers of each standing committee of the senate and house of representatives having jurisdiction over the Medicaid program.

(c) A report required under Subsection (b) must include:

(1) a description of the proposed implementation or expansion of the Medicaid managed care model or arrangement; and

(2) the potential impact on the federal Medicaid payments allowed under the upper payment limit provisions of the Medicaid program.

Amendment No. 14 was adopted.

**Amendment No. 15**

Representative McReynolds offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House committee printing) in SECTION 8 of the bill in Subsection (e) (page 25, line 22) following the last sentence, by inserting the following:

In conducting the study, the commission shall solicit stakeholder input and consider information from any other optimization-related projects currently being operated, including the Consolidated Waiver Project authorized by 531.0219, Government Code, former projects including the Mental Retardation Local Authority program, and related information from projects in other states.

Amendment No. 15 was adopted.

**Amendment No. 16**

Representative Miller offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. PHARMACEUTICAL AND THERAPEUTICS COMMITTEE. Section 531.074, Government Code, is amended by adding Subsection (m) to read as follows:

(m) The commission or the commission's agent shall publicly disclose each specific drug recommended for preferred drug list status for each drug class included in the preferred drug list for the Medicaid vendor drug program. The disclosure must be made in writing after the conclusion of committee deliberations that result in recommendations made to the executive commissioner regarding the placement of drugs on the preferred drug list.

Amendment No. 16 was adopted.

**Amendment No. 17**

Representative Miller offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __. ABOLITION OF INTERAGENCY COUNCIL ON PHARMACEUTICALS BULK PURCHASING. (a) The Interagency Council on Pharmaceuticals Bulk Purchasing is abolished.

(b) Chapter 111, Health and Safety Code, and Sections 431.116(e) and 431.208(d), Health and Safety Code, are repealed.

Amendment No. 17 was adopted.

**Amendment No. 18**

Representative Miller offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __. PRESCRIPTION DRUGS. Section 531.070(1), Government Code, is amended to read as follows:

(1) Each year the commission shall provide a written report to the legislature and the governor. The report shall cover:

USA_00223637

(1) the cost of administering the preferred drug lists adopted under Section 531.072;

(2) an analysis of the utilization trends for medical services provided by the state and any correlation to the preferred drug lists;

(3) an analysis of the effect on health outcomes and results for recipients; [and]

(4) statistical information related to the number of approvals granted or denied; and

(5) an analysis of the effect during the preceding year of the implementation of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Pub. L. No. 108-173) on the preferred drug list adopted under Section 531.072 and the prior authorization requirements under Section 531.073 applicable under the Medicaid vendor drug program.

Amendment No. 18 was adopted.

**Amendment No. 19**

Representative Miller offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. PRESCRIPTION DRUGS. (a) Section 531.070, Government Code, is amended by adding Subsection (n) to read as follows:

(n) Before entering into a supplemental rebate agreement with a manufacturer, the commission shall disclose to the manufacturer any clinical edits or clinical protocols that the commission knows might be imposed during the term of the agreement on a particular class of drugs on the preferred drug list adopted under Section 531.072 that applies under the Medicaid vendor drug program. If the commission does not disclose a clinical edit or clinical protocol as required by this subsection that would otherwise apply to a drug that is manufactured by the manufacturer and that will be provided under the Medicaid vendor drug program, the clinical edit or clinical protocol may not be imposed on the drug during the term of the agreement.

(b) Section 531.070(n), Government Code, as added by this section, applies only to a supplemental rebate agreement that is entered into or renewed on or after the effective date of this Act. A supplemental rebate agreement that is entered into or renewed before the effective date of this Act is governed by the law in effect on the date the agreement was entered into or renewed, and the former law is continued in effect for that purpose.

Amendment No. 19 was adopted.

**Amendment No. 20**

Representative Gattis offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (house committee printing) by adding the following appropriately numbered SECTION and renumbering subsequent SECTIONS accordingly:

USA_00223638

SECTION __. FRAUD AND ABUSE INVESTIGATIONS. Section 531.1021, Government Code, is amended by amending Subsection (g) and adding Subsections (h) and (i) to read as follows:

(g)   Except as provided by Subsection (h), all [All] information and materials subpoenaed or compiled by the office in connection with an open fraud and abuse investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or its employees or agents involved in the investigation conducted by the office, except that this information may be disclosed to the office of the attorney general and other law enforcement agencies.

(h)   This section may not be interpreted to prohibit the disclosure of information contained in a closed fraud and abuse investigative case file or information contained in a fraud and abuse investigative case file relating to a case that has been resolved by settlement, unless disclosure is otherwise prohibited by law.

(i)   For purposes of this section, a fraud and abuse investigation is any formal inquiry of the office of inspector general that:

(1)   is based upon a suspicion of fraud, as defined by Section 531.1011, in the provision of health and human services; or

(2)   supports a claim by the state or a health and human services agency of fraud in the provision of health and human services.

Amendment No. 20 was adopted.

**Amendment No. 21**

Representative Hopson offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** by adding the following appropriately numbered section to the bill and renumbering existing sections accordingly:

SECTION __. (a)  Sections 481.074(o) and (p), Health and Safety Code, are amended to read as follows:

(o)  A pharmacist may dispense a Schedule II controlled substance pursuant to a facsimile copy of an official prescription completed in the manner required by Section 481.075 and transmitted by the practitioner or the practitioner's agent to the pharmacy if:

(1)  the prescription is written for:

(A)  a Schedule II narcotic or nonnarcotic substance for a patient in a long-term care facility (LTCF), and the practitioner notes on the prescription "LTCF patient";

(B)  a Schedule II narcotic product to be compounded for the direct administration to a patient by parenteral, intravenous, intramuscular, subcutaneous, or intraspinal infusion; or

(C)  a Schedule II narcotic substance for a patient with a medical diagnosis documenting a terminal illness or a patient enrolled in a hospice care program certified or paid for by Medicare under Title XVIII, Social Security Act (42 U.S.C. Section 1395 et seq.), as amended, by Medicaid, or by a hospice

program that is licensed under Chapter 142, and the practitioner or the practitioner's agent notes on the prescription "terminally ill" or "hospice patient"; and

(2) after transmitting the prescription, the prescribing practitioner or the practitioner's agent:

(A) writes across the face of the official prescription "VOID—sent by fax to (name and telephone number of receiving pharmacy)"; and

(B) files the official prescription in the patient's medical records instead of delivering it to the patient [promptly complies with Subsection (p)].

(p) [Not later than the seventh day after the date a prescribing practitioner transmits the facsimile copy of the official prescription to the pharmacy, the prescribing practitioner shall deliver in person or mail the official written prescription to the dispensing pharmacist at the pharmacy where the prescription was dispensed. The envelope of a prescription delivered by mail must be postmarked not later than the seventh day after the date the official prescription was written.] On receipt of the prescription, the dispensing pharmacy shall file the facsimile copy of the prescription [with the official prescription] and shall send information to the director as required by Section 481.075.

(b) This section takes effect immediately if this Act receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this section takes effect September 1, 2005.

Amendment No. 21 was adopted.

**Amendment No. 22**

Representatives Hopson, Otto, Menendez, and R. Allen offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. PROVISION OF CERTAIN PRESCRIPTION DRUGS PROHIBITED. Section 32.024, Human Resources Code, is amended by adding Subsection (bb) to read as follows:

(bb) The department may not provide an erectile dysfunction medication under the Medicaid vendor drug program to a person required to register as a sex offender under Chapter 62, Code of Criminal Procedure, to the maximum extent federal law allows the department to deny that medication.

Amendment No. 22 was adopted.

**Amendment No. 23**

Representative Naishtat offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** by adding the following appropriately numbered SECTIONS and renumbering subsequent SECTIONS accordingly:

SECTION ____. Section 32.027, Human Resources Code, is amended by adding Subsection (l) to read as follows:

(1) Subject to appropriations, the department shall assure that a recipient of medical assistance under this chapter may select a licensed psychologist, a licensed marriage and family therapist, as defined by Section 502.002, Occupations Code, a licensed professional counselor, as defined by Section 503.002, Occupations Code, or a licensed master social worker, as defined by Section 505.002, Occupations Code, to perform any health care service or procedure covered under the medical assistance program if the selected person is authorized by law to perform the service or procedure.

SECTION 2. Section 32.027(e), Human Resources Code, as amended by Chapter 1251, Acts of the 78th Legislature, Regular Session, 2003, is repealed.

Amendment No. 23 was adopted.

**Amendment No. 24**

Representative Naishtat offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __. ADMINISTRATIVE AND JUDICIAL REVIEW OF MEDICAID DECISIONS. (a) Subchapter A, Chapter 531, Government Code, is amended by adding Section 531.019 to read as follows:

Sec. 531.019. ADMINISTRATIVE AND JUDICIAL REVIEW OF CERTAIN DECISIONS. (a) In this section, "medical assistance benefits" means benefits provided under the medical assistance program under Chapter 32, Human Resources Code.

(b) The proceedings of a hearing related to a decision regarding medical assistance benefits contested by an applicant for or recipient of the benefits that is conducted by the commission or a health and human services agency to which the commission delegates a function related to the benefits must be recorded electronically. Notwithstanding Section 2001.177, the cost of preparing the record and transcript required to be sent to a reviewing court may not be charged to the applicant for or recipient of the benefits.

(c) Before an applicant for or recipient of medical assistance benefits may appeal a decision of a hearing officer for the commission or a health and human services agency related to those benefits, the applicant or recipient must request an administrative review by an appropriate attorney of the commission or a health and human services agency, as applicable, in accordance with rules of the executive commissioner. Not later than the 15th business day after the date the attorney receives the request for administrative review, the attorney shall complete an administrative review of the decision and notify the applicant or recipient in writing of the results of that review.

(d) Except as provided by this section, Subchapters G and H, Chapter 2001, govern an appeal of a decision made by a hearing officer for the commission or a health and human services agency related to medical assistance benefits brought by an applicant for or recipient of the benefits.

(e) For purposes of Section 2001.171, an applicant for or recipient of medical assistance benefits has exhausted all available administrative remedies and a decision, including a decision under Section 32.035, Human Resources Code, is final and appealable on the date that, after a hearing:

(1) the hearing officer for the commission or a health and human services agency reaches a final decision related to the benefits; and

(2) the appropriate attorney completes an administrative review of the decision and notifies the applicant or recipient in writing of the results of that review.

(f) For purposes of Section 2001.171, an applicant for or recipient of medical assistance benefits is not required to file a motion for rehearing with the commission or a health and human services agency, as applicable.

(g) Judicial review of a decision made by a hearing officer for the commission or a health and human services agency related to medical assistance benefits is under the substantial evidence rule and is instituted by filing a petition with a district court in Travis County, as provided by Subchapter G, Chapter 2001.

(h) An appeal described by Subsection (d) takes precedence over all civil cases except workers' compensation and unemployment compensation cases.

(i) The appellee is the commission.

(b) Section 2001.223, Government Code, is amended to read as follows:

Sec. 2001.223. EXCEPTIONS FROM DECLARATORY JUDGMENT, COURT ENFORCEMENT, AND CONTESTED CASE PROVISIONS.  Section 2001.038 and Subchapters C through H do not apply to:

(1) except as provided by Section 531.019, the granting, payment, denial, or withdrawal of financial or medical assistance or benefits under service programs that were operated by the former [of the] Texas Department of Human Services before September 1, 2003, and are operated on and after that date by the Health and Human Services Commission or a health and human services agency, as defined by Section 531.001;

(2) action by the Banking Commissioner or the Finance Commission of Texas regarding the issuance of a state bank or state trust company charter for a bank or trust company to assume the assets and liabilities of a financial institution that the commissioner considers to be in hazardous condition as defined by Section 31.002(a) or 181.002(a), Finance Code, as applicable;

(3) a hearing or interview conducted by the Board of Pardons and Paroles or the pardons and paroles division of the Texas Department of Criminal Justice relating to the grant, rescission, or revocation of parole or other form of administrative release; or

(4) the suspension, revocation, or termination of the certification of a breath analysis operator or technical supervisor under the rules of the Department of Public Safety.

(c) The changes in law made by this section apply only to an appeal of a final decision by the Health and Human Services Commission or a health and human services agency to which the commission delegates a function related to medical assistance benefits under Chapter 32, Human Resources Code, that is

rendered on or after the effective date of this Act. A final decision rendered by the commission or a health and human services agency before the effective date of this Act is governed by the law in effect on the date the decision was rendered, and the former law is continued in effect for that purpose.

Amendment No. 24 was adopted.

**Amendment No. 25**

Representative Isett offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** as follows:
On page 18, line 15 add or is covered by another liable third party insurer. after the word program.
On page 18, line 18 between the words "payments" and "and" insert , payments from other liable third parties,

Amendment No. 25 was withdrawn.

**Amendment No. 26**

Representatives Hughes and Peña offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) in SECTION 5(a) of the bill by striking added Section 531.083, Government Code (page 11, line 23, through page 12, line 15), and substituting the following:
Sec. 531.083. MEDICAID LONG-TERM CARE SYSTEM. The commission shall ensure that the Medicaid long-term care system provides the broadest array of choices possible for recipients while ensuring that the services are delivered in a manner that is cost-effective and makes the best use of available funds. The commission shall also make every effort to improve the quality of care for recipients of Medicaid long-term care services by:
(1) evaluating the need for expanding the provider base for consumer-directed services and, if the commission identifies a demand for that expansion, encouraging area agencies on aging, independent living centers, and other potential long-term care providers to become providers through contracts with the Department of Aging and Disability Services;
(2) ensuring that each recipient who resides in a nursing facility and the person responsible for making health care decisions for the recipient are provided information about end-of-life care options and the importance of planning for end-of-life care, including the need for an advanced directive, as defined by Section 166.002, Health and Safety Code;
(3) developing policies to encourage a recipient who resides in a nursing facility to receive treatment at that facility whenever possible, while ensuring that the recipient receives an appropriate continuum of care; and
(4) ensuring that each recipient who resides in a nursing facility receives Medicaid long-term care coverage for the cost of a transfer to a willing provider and continued available life-sustaining treatment until the transfer is completed and, notwithstanding Sections 166.045 and 166.046, Health and Safety Code, is provided available life-sustaining treatment, if:

(A)  the recipient's attending physician or nursing facility decides to deny the treatment under Section 166.045 or 166.046, Health and Safety Code;

(B)  the recipient, the recipient's advanced directive, as defined by Section 166.002, Health and Safety Code, or the person responsible for making health care decisions for the recipient directs that the treatment be provided; and

(C)  denial of the treatment, in reasonable medical judgment, would likely result in the recipient's death.

Amendment No. 26 was withdrawn.

**Amendment No. 27**

Representative Isett offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** as follows:

On page 18, line 15 add or is covered by another liable third party insurer. after the word program.

On page 18, line 18 between the words "payments" and "and" insert , payments from other liable third parties,

Amendment No. 27 was adopted.

**Amendment No. 28**

Representatives Hughes and Peña offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House Committee Printing) in SECTION 5(a) of the bill by striking added Section 531.083, Government Code (page 11, line 23, through page 12, line 15), and substituting the following:

Sec. 531.083.  MEDICAID LONG-TERM CARE SYSTEM.  The commission shall ensure that the Medicaid long-term care system provides the broadest array of choices possible for recipients while ensuring that the services are delivered in a manner that is cost-effective and makes the best use of available funds. The commission shall also make every effort to improve the quality of care for recipients of Medicaid long-term care services by:

(1)  evaluating the need for expanding the provider base for consumer-directed services and, if the commission identifies a demand for that expansion, encouraging area agencies on aging, independent living centers, and other potential long-term care providers to become providers through contracts with the Department of Aging and Disability Services;

(2)  ensuring that each recipient who resides in a nursing facility and the person responsible for making health care decisions for the recipient are provided information about end-of-life care options and the importance of planning for end-of-life care, including the need for an advanced directive, as defined by Section 166.002, Health and Safety Code;

(3)  developing policies to encourage a recipient who resides in a nursing facility to receive treatment at that facility whenever possible, while ensuring that the recipient receives an appropriate continuum of care; and

(4) ensuring that each recipient who resides in a nursing facility receives Medicaid long-term care coverage for the cost of a transfer to a willing provider and continued available life-sustaining treatment until the transfer is completed and, notwithstanding Sections 166.045 and 166.046, Health and Safety Code, is provided available life-sustaining treatment, if:

(A)  the recipient's attending physician or nursing facility decides to deny the treatment under Section 166.045 or 166.046, Health and Safety Code;

(B)  the recipient, the recipient's advanced directive, as defined by Section 166.002, Health and Safety Code, or the person responsible for making health care decisions for the recipient directs that the treatment be provided; and

(C)  denial of the treatment, in reasonable medical judgment, would likely result in the recipient's death.

(Martinez in the chair)

Amendment No. 28 was adopted.

**Amendment No. 29**

Representative Thompson offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. (a) Section 32.024(w), Human Resources Code, is amended to read as follows:

(w) The department shall set a personal needs allowance of not less than $45 a month and, subject to availability of funds, shall set the personal needs allowance in an amount not less than $60 a month for a resident of a convalescent or nursing home or related institution licensed under Chapter 242, Health and Safety Code, personal care facility, ICF-MR facility, or other similar long-term care facility who receives medical assistance. The department may send the personal needs allowance directly to a resident who receives Supplemental Security Income (SSI) (42 U.S.C. Section 1381 et seq.). This subsection does not apply to a resident who is participating in a medical assistance waiver program administered by the department.

(b) This section applies only to a personal needs allowance paid on or after the effective date of this Act.

**Amendment No. 30**

Representative Thompson offered the following amendment to Amendment No. 29:

Amend the Thompson amendment to **CSSB 1188** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. (a) Section 32.024(w), Human Resources Code, is amended to read as follows:

(w)  The department shall set a personal needs allowance of not less than $45 a month and, shall set the personal needs allowance in an amount not less than $60 a month for a resident of a convalescent or nursing home or related institution licensed under Chapter 242, Health and Safety Code, personal care facility, ICF-MR facility, or other similar long-term care facility who receives medical assistance.  The department may send the personal needs allowance directly to a resident who receives Supplemental Security Income (SSI) (42 U.S.C. Section 1381 et seq.).  This subsection does not apply to a resident who is participating in a medical assistance waiver program administered by the department.

(b)  This section applies only to a personal needs allowance paid on or after the effective date of this Act.

Amendment No. 30 was adopted.

A record vote was requested.

Amendment No. 29, as amended, was adopted by (Record 792): 139 Yeas, 1 Nays, 1 Present, not voting.

Yeas — Allen, A.; Allen, R.; Alonzo; Anchia; Anderson; Bailey; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Callegari; Campbell; Casteel; Castro; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Davis, Y.; Dawson; Delisi; Denny; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flores; Flynn; Frost; Gallego; Gattis; Geren; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Grusendorf; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Herrero; Hilderbran; Hill; Hochberg; Homer; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Jones, J.; Keel; Keffer, B.; Keffer, J.; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Laney; Leibowitz; Luna; Madden; Martinez Fischer; Martinez(C); McCall; McClendon; McReynolds; Menendez; Merritt; Miller; Moreno, P.; Morrison; Mowery; Naishtat; Nixon; Noriega, M.; Oliveira; Olivo; Orr; Otto; Paxton; Peña; Phillips; Pickett; Pitts; Puente; Quintanilla; Raymond; Reyna; Riddle; Ritter; Rodriguez; Seaman; Smith, T.; Smith, W.; Solis; Strama; Straus; Swinford; Talton; Thompson; Truitt; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo; West; Wong; Woolley.

Nays — Hope.

Present, not voting — Mr. Speaker.

Absent, Excused — Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons; Taylor; Zedler.

Absent — Laubenberg; Smithee.

## STATEMENT OF VOTE

I was shown voting no on Record No. 792. I intended to vote yes.

Hope

**Amendment No. 31**

Representative Gattis offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __.  CONTINUOUS ELIGIBILITY.  Section 32.0261, Human Resources Code, is amended to read as follows:

Sec. 32.0261.  CONTINUOUS ELIGIBILITY.  The department shall adopt rules in accordance with 42 U.S.C. Section 1396a(e)(12), as amended, to provide for a period of continuous eligibility for a child under 19 years of age who is determined to be eligible for medical assistance under this chapter. The rules shall provide that the child remains eligible for medical assistance, without additional review by the department and regardless of changes in the child's resources or income, until the earlier of:

(1)  the end of the six-month period following [first anniversary of] the date on which the child's eligibility was determined; or

(2)  the child's 19th birthday.

Amendment No. 31 was adopted.

**Amendment No. 32**

Representative Villarreal offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** by adding the following appropriately numbered section:

Section __.  The speaker and lieutenant governor shall create a joint interim committee to study and make recommendations to the legislature relating to how Medicaid and other supportive medical care services can be more effectively delivered through regional planning involving all relevant stakeholders in rural, border, and urban counties and the surrounding rural or suburban communities. Specifically, the study should: (1)  identify incentives and resources necessary to promote personal responsibility and accountability, encourage preventive care, and expand use of available primary care services; (2)  identify cost-effective technological innovations to improve health care access and coordination, such as telemedicine or automated medical records; (3)  improve access and availability to primary care services; (4)  improve access to secondary and tertiary care in rural communities; (5)  identify how health care services can be improved through collaboration across funding streams, such as the Children's Health Insurance Program, Medicaid, and private insurance; (6)  make recommendations to improve the capacity of public health entities in Texas to comply with the Centers for Disease Control National Public Health Performance Standards; (7) identify successful strategies and recommend incentives to develop multicounty public health entities authorized to collaborate to ensure that the essential public health services as authorized in Section 121.002, Health and Safety Code, are available to all Texans;  (8)  evaluate the role of existing regional public health entities and make recommendations to optimize their capacity to assume

responsibility for the foregoing purposes or create additional regional entities as needed; and (9) recommend appropriate funding levels needed to implement the committee's recommendations.

Amendment No. 32 was adopted.

**Amendment No. 33**

Representatives Luna and Woolley offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** by adding the following appropriately numbered sections and renumbering the sections of the bill accordingly:

SECTION ___. Subchapter B, Chapter 32, Human Resources Code, is amended by adding Section 32.0248 to read as follows:

Sec. 32.0248. DEMONSTRATION PROJECT FOR WOMEN'S HEALTH CARE SERVICES. (a) The department shall establish a five-year demonstration project through the medical assistance program to expand access to preventive health and family planning services for women. A woman eligible under Subsection (b) to participate in the demonstration project may receive appropriate preventive health and family planning services, including:

(1) medical history recording and evaluation;

(2) physical examinations;

(3) health screenings, including screening for:

(A) diabetes;

(B) cervical cancer;

(C) breast cancer;

(D) sexually transmitted diseases;

(E) hypertension;

(F) cholesterol; and

(G) tuberculosis;

(4) counseling and education on contraceptive methods, except for counseling and education regarding emergency contraception;

(5) provision of contraceptives, except for the provision of emergency contraception;

(6) risk assessment; and

(7) referral of medical problems to appropriate providers that are entities or organizations that do not perform or promote elective abortions or contract or affiliate with entities that perform or promote elective abortions.

(b) A woman is eligible to participate in the demonstration project if the woman is at least 18 years of age and:

(1) has a net family income that is at or below 185 percent of the federal poverty level;

(2) participates in or receives benefits under any of the following:

(A) the medical assistance program;

(B) the financial assistance program under Chapter 31;

(C) the nutritional assistance program under Chapter 33;

(D) the Supplemental Food Program for Women, Infants and Children; or

USA_00223648

       (E)  another program administered by the state that:
           (i)  requires documentation of income; and
           (ii)  restricts eligibility to persons with income equal to or less than the income eligibility guidelines applicable to the medical assistance program;
       (3)  is presumed eligible for one of the programs listed in Subdivision (2) pending completion of that program's eligibility process; or
       (4)  is a member of a family that contains at least one person who participates in or receives benefits under one of the programs listed in Subdivision (2).

    (c)  The department shall ensure that the standards of care provided to a woman participating in the demonstration project are consistent with the requirements of law and current best practices for provision of public health services.

    (d)  The department shall develop procedures for determining and certifying eligibility for services under the demonstration project at the point of service delivery using integrated procedures that minimize duplication of effort by providers, the department, and other state agencies. The department may not use a procedure that would require a cost in excess of 10 percent of the total costs of actual preventive health and family planning services provided under the demonstration project. The eligibility procedure may provide for expedited determination and certification using a simplified form requiring only family income and family size.

    (e)  The department shall compile a list of potential funding sources a woman participating in the demonstration project may be able to use to help pay for treatment for health problems:
       (1)  identified using services provided under the demonstration project; and
       (2)  for which the woman is not eligible to receive treatment under the medical assistance program or the demonstration project.

    (f)  Providers of services under the demonstration project shall comply with requests made by the department for information necessary for the department to:
       (1)  make efficient use of money spent for the operation and administration of the demonstration project;
       (2)  report and provide information required by federal law; and
       (3)  compile the report required by Subsection (g).

    (g)  Not later than December 1 of each even-numbered year, the department shall submit a report to the legislature regarding the department's progress in establishing and operating the demonstration project.

    (h)  The department shall ensure the money spent under the demonstration project, regardless of the funding source, is not used to perform or promote elective abortions. The department, for the purpose of the demonstration project, may not contract with entities that perform or promote elective abortions or are affiliates of entities that perform or promote elective abortions.

    (i)  This section expires September 1, 2011.

USA_00223649

SECTION ____. If before implementing any provision of Section 32.048, Human Resources Code, as added by this Act, a state agency determines that a waiver or authorization from a federal agency is necessary for implementation of that provision, the agency affected by the provision shall request the waiver or authorization and may delay implementing that provision until the waiver or authorization is granted.

SECTION ____. Not later than September 1, 2006, the state agency responsible for implementing the demonstration project required by Section 32.0248, Human Resources Code, as added by this Act, shall implement the demonstration project.

Amendment No. 33 was adopted.

**Amendment No. 34**

Representative Miller offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House committee printing) by adding the following SECTIONS to the bill, appropriately numbered, and renumbering subsequent SECTIONS accordingly:

SECTION ___. STATE PHARMACY ASSISTANCE PROGRAM. Chapter 531, Government Code, is amended by adding Subchapter M to read as follows:

SUBCHAPTER M. STATE PHARMACY ASSISTANCE PROGRAM

Sec. 531.501. STATE PHARMACY ASSISTANCE PROGRAM. (a) The commission may develop and implement a state pharmacy assistance program that provides prescription drug discounts to eligible persons and is a state pharmacy assistance program for purposes of 42 U.S.C. Section 1396r-8(c)(1)(C).

(b) The state pharmacy assistance program may only be funded with state general revenue funds or local funds. This subsection applies only to the provision of prescription drug discounts under the state pharmacy assistance program, and does not affect the sources of funding permissible for other benefits provided to eligible persons under programs described by Section 531.503.

(c) The commission may contract with a private entity to negotiate on behalf of the commission for discounted prescription drug acquisition prices with manufacturers and labelers, as those terms are defined by Section 531.070.

(d) The commission may agree to pay a private contractor a percentage of the gross purchases under the program. Any payment shall be incorporated into the sales price.

Sec. 531.502. MAXIMUM PRICE. The price of a prescription drug charged to an eligible person under the program may not exceed the sum of:

(1) the discounted acquisition price under the program; and

(2) a dispensing fee in an amount not to exceed 115 percent of the dispensing fee paid for providing the drug under the vendor drug program.

Sec. 531.503. ELIGIBILITY. (a) A person is eligible for prescription drug benefits under the state pharmacy assistance program if the person is:

(1) qualified to receive services under Chapter 31 or Subchapter B, Chapter 61, Health and Safety Code; or

USA_00223650

(2) qualified to receive services from a community mental health or mental retardation center established under Subchapter A, Chapter 534, Health and Safety Code.

(b) The commissioner may expand eligibility for prescription drug benefits under the state pharmacy assistance program to persons who are qualified to receive services under a program other than those listed in Subsection (a), provided that the other program:

(1) is developed by the state specifically for the benefit of disabled, indigent, low-income, elderly, or other financially vulnerable persons;

(2) is funded using state funds and not federal funds;

(3) provides payments directly to service providers;

(4) provides only a pharmaceutical benefit or a pharmaceutical benefit in conjunction with other medical benefits or services;

(5) prohibits the diversion, resale, or transfer of benefits reimbursed under the state pharmacy assistance program to persons who are not beneficiaries of that program; and

(6) does not violate any applicable nondiscrimination provisions under federal law.

Sec. 531.504. PARTICIPATING WHOLESALERS AND PHARMACIES. (a) The commission or its contractor shall contract with each wholesaler that:

(1) elects to participate in the state pharmacy assistance program; and

(2) satisfies the commission's participation requirements.

(b) A contract between the commission or its contractor and a participating wholesaler must require the wholesaler to:

(1) provide prescription drugs available through the program to pharmacies that voluntarily elect to participate in the program at a price not to exceed the sum of:

(A) the discounted acquisition cost under the program;

(B) a reasonable delivery fee in an amount negotiated by the wholesaler and the commission or its contractor, which fee may vary based on the monthly volume of prescription drugs provided by the wholesaler and the number of required weekly deliveries; and

(C) a reasonable percentage of the gross purchases approved by the commission as provided by Section 531.501(d);

(2) meet service levels specified in the contract;

(3) provide next-day delivery service on all orders under the program to participating pharmacies;

(4) provide software and data interface capacity to participating pharmacies as necessary to enable participating pharmacies to comply with Subsection (d); and

(5) participate in the program on an ongoing basis for the period specified in the contract.

(c) The commission or its contractor shall collect utilization information from each participating wholesaler as necessary to administer the program, and shall protect the confidentiality of any information obtained under this subsection that is confidential under state or federal law, rule, or regulation.

USA_00223651

(d)  The executive commissioner by rule shall require a participating pharmacy to:

(1)  maintain a separate inventory of prescription drugs obtained by the pharmacy under the program or segregate those drugs from the pharmacy's other prescription drug stock; and

(2)  maintain separate records of acquisition and disposition of prescription drugs obtained by the pharmacy under the program, and ensure that all computer records regarding those drugs are readily available on the request of the commission or its contractor.

(e)  A participating pharmacy or wholesaler may not resell or otherwise transfer a prescription drug obtained under the program to:

(1)  a pharmacy that is not participating in the program; or

(2)  a person who is not an eligible program participant.

(f)  If the commission, after notice and opportunity for a hearing, determines that a participating pharmacy or wholesaler violated Subsection (e), the pharmacy or wholesaler is liable to the manufacturer of the prescription drugs for an amount equal to the difference between:

(1)  the retail price of the drug at the time of the resale or transfer in violation of Subsection (e); and

(2)  the price at which the drug was obtained by the pharmacy or wholesaler under the program.

Sec. 531.505.  ACCESS TO PROGRAM BENEFITS. (a) An eligible person is entitled to obtain a prescription drug dispensed under this subchapter from an entity designated by the executive commissioner or from a pharmacy that voluntarily participates in the program.

(b)  The commission shall maintain an electronic database on a website listing the names and addresses of all pharmacies or other entities participating in the program.

(c)  The commission or its contractor shall engage in outreach activities to publicize the availability of discounted prescription drug prices under the program and to maximize enrollment in the program. The commission shall establish simplified procedures for enrolling eligible persons.

Sec. 531.506.  CERTAIN DISPUTES OR DISCREPANCIES. (a) A dispute or discrepancy in the amount negotiated under Section 531.501 must be resolved using the process established by this section.

(b)  The commission may hire an independent auditor acceptable to all affected parties to perform an audit at the commission's expense if there is a dispute or discrepancy in favor of a manufacturer or labeler relating to the amount of a discount for a prescription drug provided by the manufacturer or labeler. If the audit does not resolve the dispute or discrepancy, the manufacturer or labeler shall:

(1)  provide justification for the dispute or discrepancy that is satisfactory to the commission; or

(2)  pay the additional amount due.

(c)  A manufacturer or labeler may hire an independent auditor acceptable to all affected parties to perform an audit at the expense of the manufacturer or labeler if there is a dispute or discrepancy in favor of the state relating to the amount of the discount for a prescription drug provided by the manufacturer or labeler. If the audit does not resolve the dispute or discrepancy, the commission shall:

(1)  provide justification for the dispute or discrepancy that is satisfactory to the manufacturer or labeler; or

(2)  require participating entities to refund to the manufacturer or labeler the amount due.

(d)  A party that is not satisfied with the resolution of a dispute or discrepancy under Subsection (b) or (c) may request in writing a hearing before the State Office of Administrative Hearings. The party must include supporting documentation with the request for a hearing.

Sec. 531.507.  RULEMAKING. The executive commissioner may adopt rules as necessary to administer this subchapter.

Sec. 531.508.  ANNUAL REPORT. Not later than January 1 of each year, the commission shall submit a report to the legislature on the commission's activities under this subchapter. The report must include the number of persons enrolled in the state pharmacy assistance program and information regarding the financial condition of the program.

Sec. 531.509.  IMPLEMENTATION OF PROGRAM. (a) The commission shall fully implement this subchapter and make discounted drug prices available to eligible persons in accordance with the program described by this subchapter only if the commission determines that adequate voluntary discounts negotiated under Section 531.501 are available.

(b)  If the commission does not fully implement this subchapter, the commission may adopt preferred drug lists and impose prior authorization requirements, as authorized by Sections 531.072 and 531.073, for programs that provide prescription drugs to persons described by Section 531.503(a).

SECTION __.  Sections 531.070(h) and (j), Government Code, are amended to read as follows:

(h)  Subject to Subsection (i), the commission shall negotiate with manufacturers and labelers, including generic manufacturers and labelers, to obtain supplemental rebates for prescription drugs provided under:

(1)  the Medicaid vendor drug program in excess of the Medicaid rebates required by 42 U.S.C. Section 1396r-8 and its subsequent amendments; and

(2)  the child health plan program[; and

[(3)  any other state program administered by the commission or a health and human services agency, including community mental health centers and state mental health hospitals].

(j)  A manufacturer or labeler that sells prescription drugs in this state may voluntarily negotiate with the commission and enter into an agreement to provide supplemental rebates for prescription drugs provided under:

(1) the Medicaid vendor drug program in excess of the Medicaid rebates required by 42 U.S.C. Section 1396r-8 and its subsequent amendments; and

(2) the child health plan program[; and

[(3) any other state program administered by the commission or a health and human services agency, including community mental health centers and state mental health hospitals].

SECTION __. Section 531.072, Government Code, is amended by adding Subsection (g) to read as follows:

(g) Notwithstanding Subsection (a), the commission may adopt preferred drug lists under this section for a program that serves persons described by Section 531.503(a) only if the commission cannot obtain adequate voluntary discounts under Subchapter M, Chapter 531, to permit full implementation of that subchapter.

SECTION __. Section 531.073, Government Code, is amended by adding Subsection (g) to read as follows:

(g) Notwithstanding Subsection (a), the commission may require prior authorization under this section for a program that serves persons described by Section 531.503(a) only if the commission cannot obtain adequate voluntary discounts under Subchapter M, Chapter 531, to permit full implementation of that subchapter.

**Amendment No. 34 - Point of Order**

Representative Hilderbran raised a point of order against further consideration of Amendment No. 34 under Rule 11, Section 2 of the House Rules on the grounds that it is not germane to the bill.

The chair sustained the point of order.

The ruling precluded further consideration of Amendment No. 34.

**Amendment No. 35**

Representative Uresti offered the following amendment to **CSSB 1188**:

Amend **CSSB 1188** (House committee printing) by adding the following appropriately numbered Section to the bill and renumbering subsequent Sections of the bill as appropriate:

SECTION ___. Chapter 159, Occupations Code, is amended by adding Section 159.010 to read as follows:

Sec. 159.010. NOTICE OF BENEFITS UNDER STATE CHILD HEALTH PLAN. A physician who provides Medicaid health care services to a pregnant woman shall inform the woman of the health benefits for which the woman or the woman's child may be eligible under the state child health plan under Chapter 62, Health and Safety Code.

Amendment No. 35 was adopted.

(Menendez in the chair)

**Amendment No. 14 - Vote Reconsidered**

Representative Truitt moved to reconsider the vote by which Amendment No. 14 was adopted.

The motion to reconsider prevailed.

Amendment No. 14 was withdrawn.

**Amendment No. 36**

Representative Truitt offered the following amendment to **CSSB 1188**:

AMEND **CSSB 1188** AS FOLLOWS:

Page 12, strike lines 1 and 2 and substitute the following:

(b) Subchapter A, Chapter 533, Government Code, is amended by adding Sections 533.0071, 533.0072 and 533.0073 to read as follows:

Page 14, following line 18, add a new Section 533.0073 to read as follows:

Sec. 533.0073. PRESERVATION OF UPPER LIMIT PROVISIONS OF THE MEDICAID PROGRAM. The Health and Human Services Commission shall not implement a form of Medicaid Managed Care in a service area which results in the reduction or elimination of allowable federal Medicaid payments under the upper payment limit provisions of the Medicaid program to public hospitals or other safety net hospitals which serve the Medicaid population.

Amendment No. 36 was adopted.

**CSSB 1188**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Harper-Brown, Laubenberg, and Phillips recorded voting no.)

**HR 1842 - ADOPTED**
**(by Riddle and Hamric)**

Representative Riddle moved to suspend all necessary rules to take up and consider at this time **HR 1842**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1842**, In memory of Curtis J. Cook of Harris County.

**HR 1842** was read and was unanimously adopted by a rising vote.

On motion of Representative Hamric, the names of all the members of the house were added to **HR 1842** as signers thereof.

**INTRODUCTION OF GUESTS**

The chair recognized Representative Riddle who introduced the family of Curtis J. Cook.

**POSTPONED BUSINESS**

The following bills were laid before the house as postponed business:

## CSSB 1863 ON SECOND READING
### (Pitts - House Sponsor)

**CSSB 1863**, A bill to be entitled An Act relating to certain fiscal matters affecting governmental entities.

**CSSB 1863** was read second time on May 22, postponed until May 23, postponed until 10 a.m. today, and was again postponed until this time.

### Amendment No. 1 - Vote Reconsidered

Representative Chisum moved to reconsider the vote by which Amendment No. 1 was adopted.

The motion to reconsider prevailed.

### Amendment No. 47

Representative Chisum offered the following amendment to Amendment No. 1:

Amend Floor Amendment No. 1 by Chisum and Pitts to **CSSB 1863** by striking lines 3 through 23 of the amendment and substituting the following:

(1)  Strike all ARTICLES and SECTIONS of the bill except for ARTICLE 6 (page 26, line 24 of the bill through page 28, line 4 of the bill) and ARTICLE 14 (page 94, lines 16-23 of the bill).

(2)  Renumber existing ARTICLE 6, SECTION 6.01, SECTION 6.02, SECTION 6.03, ARTICLE 14, and SECTION 14.01 accordingly.

Amendment No. 47 was withdrawn.

Amendment No. 1 was adopted.

### Amendment No. 17 - Vote Reconsidered

Representative Chisum moved to reconsider the vote by which Amendment No. 17 was adopted.

The motion to reconsider prevailed.

Amendment No. 17 was withdrawn.

### AMENDMENT NO. 17 - REASON FOR VOTE

I registered a "no" vote in the Journal when this ill-advised amendment was originally placed on the bill. The house should cease trying to play games with the comptroller's authority.

Keel

(Speaker in the chair)

### CSSB 1863 - MOTION FOR PREVIOUS QUESTION

Representative Hartnett moved the previous question on passage to third reading of **CSSB 1863**.

The motion was seconded.

The motion prevailed. (Coleman, Y. Davis, Dunnam, Gonzales, Luna, P. Moreno, Naishtat, Thompson, and Veasey recorded voting no.)

A record vote was requested.

**CSSB 1863**, as amended, was passed to third reading by (Record 793): 92 Yeas, 42 Nays, 1 Present, not voting.

Yeas — Allen, A.; Allen, R.; Alonzo; Anderson; Bailey; Baxter; Berman; Blake; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Castro; Chavez; Chisum; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Dawson; Delisi; Denny; Driver; Dukes; Edwards; Eiland; Eissler; Elkins; Escobar; Farrar; Flynn; Frost; Geren; Gonzales; Gonzalez Toureilles; Goodman; Griggs; Grusendorf; Guillen; Hamilton; Hamric; Hardcastle; Hegar; Hill; Hochberg; Howard; Hunter; Hupp; Isett; Jackson; Jones, D.; Keel; Keffer, J.; Kolkhorst; Krusee; Kuempel; Leibowitz; Madden; McCall; McReynolds; Merritt; Miller; Moreno, P.; Mowery; Nixon; Orr; Otto; Pickett; Pitts; Puente; Quintanilla; Reyna; Seaman; Smith, T.; Smith, W.; Smithee; Solis; Strama; Straus; Swinford; Talton; Truitt; Turner; Uresti; West; Wong; Woolley.

Nays — Anchia; Bohac; Burnam; Coleman; Davis, Y.; Deshotel; Dunnam; Farabee; Gallego; Gattis; Harper-Brown; Hartnett; Herrero; Hilderbran; Homer; Hopson; Jones, J.; Keffer, B.; King, P.; King, T.; Laubenberg; Luna; Martinez; Martinez Fischer; McClendon; Menendez; Morrison; Naishtat; Noriega, M.; Oliveira; Paxton; Peña; Phillips; Raymond; Riddle; Ritter; Rodriguez; Taylor; Thompson; Van Arsdale; Veasey; Villarreal.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons; Zedler.

Absent — Dutton; Flores; Goolsby; Haggerty; Hope; Hughes; Laney; Olivo; Vo.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 793. I intended to vote no.

Baxter

I was shown voting yes on Record No. 793. I intended to vote no.

Bonnen

I was shown voting yes on Record No. 793. I intended to vote no.

Branch

I was shown voting yes on Record No. 793. I intended to vote no.

Castro

I was shown voting yes on Record No. 793. I intended to vote no.

Dukes

USA_00223657

I was shown voting yes on Record No. 793. I intended to vote no.

Gonzales

I was shown voting yes on Record No. 793. I intended to vote no.

Gonzalez Toureilles

When Record No. 793 was taken, I was in the house but away from my desk. I would have voted yes.

Goolsby

When Record No. 793 was taken, I was in the house but away from my desk. I would have voted yes.

Haggerty

I was shown voting yes on Record No. 793. I intended to vote no.

D. Jones

I was shown voting yes on Record No. 793. I intended to vote no.

Leibowitz

I was shown voting no on Record No. 793. I intended to vote yes.

Luna

I was shown voting yes on Record No. 793. I intended to vote no.

Merritt

I was shown voting yes on Record No. 793. I intended to vote no.

Miller

When Record No. 793 was taken, I was in the house but away from my desk. I would have voted no.

Olivo

I was shown voting yes on Record No. 793. I intended to vote no.

Straus

## SB 447 ON SECOND READING
### (Madden - House Sponsor)

**SB 447**, A bill to be entitled An Act relating to the sale of tax receivables by a local government.

**SB 447** was read second time on May 16, postponed until May 17, postponed until May 23, postponed until 5:30 p.m. May 23, and was again postponed until this time.

Representative Madden moved to postpone consideration of **SB 447** until June 1.

The motion prevailed.

### CSSB 1879 ON SECOND READING
### (Puente - House Sponsor)

**CSSB 1879**, A bill to be entitled An Act relating to the creation of special districts for improvements in certain counties, including authority to acquire, construct, and improve water, wastewater, and drainage improvements; providing authority to impose a tax and issue bonds.

**CSSB 1879** was read second time on May 22, postponed until May 23, and was again postponed until 12 p.m. today.

### CSSB 1879 - POINT OF ORDER

Representative Burnam raised a point of order against further consideration of **CSSB 1879** under Rule 4, Section 20 of the House Rules on the grounds that sworn statements of those who testified were incorrectly completed.

The speaker sustained the point of order.

### MAJOR STATE CALENDAR
### (consideration continued)

### SB 867 ON SECOND READING
### (Otto - House Sponsor)

**SB 867**, A bill to be entitled An Act relating to the application of the motor vehicle sales tax emissions reduction surcharge on certain recreational vehicles.

**SB 867** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero and Leibowitz recorded voting no.)

### SB 984 ON SECOND READING
### (Uresti - House Sponsor)

**SB 984**, A bill to be entitled An Act relating to a feasibility study regarding the provision of financial incentives to individuals who undergo training for child protective services.

**SB 984** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Harper-Brown recorded voting no.)

### CSSB 1255 ON SECOND READING
### (Geren - House Sponsor)

**CSSB 1255**, A bill to be entitled An Act relating to the number of certain alcoholic beverage permits and licenses that may be issued for a single location.

**Amendment No. 1**

Representative Geren offered the following amendment to **CSSB 1255**:

Amend **CSSB 1255** by adding the following:

USA_00223659

Section 1.04, Alcoholic Beverage Code, is amended by amending Subdivision (18) to read as follows:

(18)  "Original package," as applied to beer, means a container holding [one barrel, one-half barrel, one quarter barrel, one eighth barrel of] beer in bulk, or any box, crate, carton, or other device used in packing beer that is contained in bottles or other containers.

Section 101.44, Alcoholic Beverage Code is repealed.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Geren offered the following amendment to **CSSB 1255**:

Amend **CSSB 1255** by adding the following:

Section 103.07, Alcoholic Beverage Code, is amended to read as follows:

Sec. 103.07. BEVERAGE OF ILLICIT MANUFACTURE OR UNFIT FOR CONSUMPTION.  (a)  The commission may not sell [but may destroy] alcoholic beverages seized by a peace officer, as provided in Section 103.03, that are unfit for public consumption or are of illicit manufacture.

(b)  Alcoholic beverages are unfit for public consumption if:

(1)  the manufacturer or wholesaler of the beverages determines that the beverages are inappropriate for sale to a consumer;

(2)  the beverages are damaged; or

(3)  the code date affixed by the manufacturer to the beverages has expired.

(c)  If the commission determines that seized alcoholic beverages are unfit for public consumption or are of illicit manufacture, the commission shall destroy the alcoholic beverages.

SECTION 26. Section 103.22, Alcoholic Beverage Code, is amended to read as follows:

Sec. 103.22. COSTS OF FORFEITURE SUITS.  The commission is entitled to recover from the proceeds of a forfeiture sale [shall pay] all costs of a forfeiture suit brought under this chapter, including:

(1)  all usual court costs, including the cost of serving process;

(2)  expenses of the forfeiture sale; and

(3) reasonable attorney's fees [suits out of the confiscated liquor fund or any other fund available to the commission for that purpose].

Amendment No. 2 was adopted.

**CSSB 1255**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Flynn recorded voting no.)

### CSSB 47 ON SECOND READING
### (Delisi - House Sponsor)

**CSSB 47**, A bill to be entitled An Act relating to the Medicaid fraud reduction pilot program.

(J. Keffer in the chair)

## CSSB 47 - LAID ON THE TABLE SUBJECT TO CALL

Representative Delisi moved to lay **CSSB 47** on the table subject to call.

The motion prevailed.

### SB 1704 ON SECOND READING
### (Hartnett, Gonzales, Solis, and Alonzo - House Sponsors)

**SB 1704**, A bill to be entitled An Act relating to jury service.

**Amendment No. 1**

Representative Hartnett offered the following amendment to **SB 1704**:

Amend **SB 1704** (House Committee Printing) as follows:

(1)  In SECTION 2 of the bill, in added Subsection (c), Section 61.0015, Government Code, (page 2, line 2), strike "judicial fund" and substitute "jury service fund".

(2)  In SECTION 5 of the bill, in added Subsection (b), Article 102.0045, Code of Criminal Procedure (page 4, line 11), strike "judicial fund" and substitute "jury service fund".

(3)  In SECTION 5 of the bill, immediately following added Subsection (b), Article 102.0045, Code of Criminal Procedure (page 4, between lines 11-12), insert the following:

(c)  The jury service fund is created in the state treasury.  If, at any time, the unexpended balance of the jury service fund exceeds $10 million, the comptroller shall transfer the amount in excess of $10 million to the fair defense account.

(d)  Fees deposited in the jury service fund under this section are exempt from the application of Section 403.095, Government Code.

Amendment No. 1 was adopted.

**SB 1704**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Anderson, Berman, Flynn, Keel, Talton, and Wong recorded voting no; Laney recorded voting present, not voting.)

### SB 1570 ON SECOND READING
### (Isett - House Sponsor)

**SB 1570**, A bill to be entitled An Act relating to the rate of interest on certain tax refunds.

**Amendment No. 1**

Representative Isett offered the following amendment to **SB 1570**:

Amend **SB 1570** (House committee report) by striking SECTION 1 of the bill (page 1, line 4, through page 2, line 15) and substituting a new SECTION 1 to read as follows:

USA_00223661

SECTION 10. Section 111.064, Tax Code, is amended by amending Subsections (a), (c), and (f) and adding Subsection (c-1) to read as follows:

(a) Except as <u>otherwise</u> provided by <u>this section, for a refund under this</u> <u>chapter</u> [Subsections (b) and (c), in a comptroller's final decision on a claim for refund or in an audit], interest is at the rate <u>that is the lesser of the annual rate of</u> <u>interest earned on deposits in the state treasury during December of the previous</u> <u>calendar year, as determined by the comptroller, or the rate</u> set in Section 111.060<u>, and accrues</u> on the amount found to be erroneously paid for a period:

(1) beginning on the later of 60 days after the date of payment or the due date of the tax report; and

(2) ending on, as determined by the comptroller, either the date of allowance of credit on account of the comptroller's final decision or audit or a date not more than 10 days before the date of the refund warrant.

(c) For a refund <u>claimed before September 1, 2005, and granted for a report</u> <u>period due on or after January 1, 2000,</u> the rate of interest is the rate set in Section 111.060 [granted for a report period due on or after January 1, 2000, the rate of interest is the rate set in Section 111.060].

<u>(c-1)</u> A refund<u>, without regard to the date claimed,</u> for a report period due before January 1, 2000, does not accrue interest.

(f) A local revenue fund is not subject to Subsections <u>(a)-(c-1)</u> [(a)-(c)]. In this subsection, "local revenue fund" includes a court cost, a fee, a fine, or a similar charge collected by a municipality, a county, or a court of this state and remitted to the comptroller.

Amendment No. 1 was adopted.

**SB 1570**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

**SB 1408 ON SECOND READING**
**(B. Cook - House Sponsor)**

**SB 1408**, A bill to be entitled An Act relating to wage claim disputes.

**SB 1408** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering their votes are as follows: Herrero and Leibowitz recorded voting no.)

**CSSB 1189 ON SECOND READING**
**(Hartnett, Gonzales, Alonzo, Casteel, and Dawson - House Sponsors)**

**CSSB 1189**, A bill to be entitled An Act relating to the creation, composition, jurisdiction, and procedure of certain judicial districts, to the selection of a local administrative district judge for certain counties, to the juvenile board in certain counties, and to the district courts in certain counties.

USA_00223662

**Amendment No. 1**

On behalf of Representative Solis, Representative Hartnett offered the following amendment to **CSSB 1189**:

Amend **CSSB 1189** by striking SECTION 4 of the bill (House Committee Printing, page 4, line 18, through page 6, line 20) and substitute the following:

SECTION 4. (a) Subsections (b) and (d), Section 24.205, Government Code, are amended to read as follows:

(b) The 103rd, 107th, and 138th district courts have concurrent jurisdiction in Cameron County.  The 103rd and 138th district courts have concurrent jurisdiction in Willacy County.

(d) The judge [judges] of the 103rd District Court [and 107th district courts] need not impanel grand juries except in cases of emergency.

(b) The heading to Section 24.209, Government Code, is amended to read as follows:

Sec. 24.209.  107TH JUDICIAL DISTRICT (CAMERON COUNTY [AND WILLACY COUNTIES]).

(c) Section 24.209, Government Code, is amended by amending Subsections (a) and (c) and adding Subsection (d) to read as follows:

(a) The 107th Judicial District is composed of Cameron County [and Willacy counties]. The court shall give preference to criminal cases.

(c) The judge of [Section 24.205, relating to the 103rd District Court, contains provisions applicable to both that court and] the 107th District Court need not impanel grand juries except in cases of emergency.

(d) The 103rd, 107th, and 138th district courts have concurrent jurisdiction in Cameron County.  The 103rd and 138th district courts have concurrent jurisdiction in Willacy County.

(d) Section 24.240(d), Government Code, is amended to read as follows:

(d) The 103rd, 107th, and 138th district courts have concurrent jurisdiction in Cameron County.  The 103rd and 138th district courts have concurrent jurisdiction in Willacy County [Section 24.205, relating to the 103rd District Court, contains provisions applicable to both that court and the 138th District Court].

(e) Section 24.503, Government Code, is amended to read as follows:

Sec. 24.503.  357TH JUDICIAL DISTRICT (CAMERON COUNTY [AND WILLACY COUNTIES]). The 357th Judicial District is composed of Cameron County [and Willacy counties].

(f) Section 24.549, Government Code, is amended to read as follows:

Sec. 24.549.  404TH JUDICIAL DISTRICT (CAMERON COUNTY [AND WILLACY COUNTIES]). The 404th Judicial District is composed of Cameron County [and Willacy counties].

(g) The local administrative district judge shall transfer all cases from Willacy County that are pending in the 107th, 357th, and 404th district courts on September 1, 2005, to the 103rd, 138th, and 197th district courts.

(h) When a case is transferred as provided by Subsection (g) of this section, all processes, writs, bonds, recognizances, or other obligations issued from the 107th, 357th, and 404th district courts are returnable to the 103rd, 138th, or 197th

district court as if originally issued by that court. The obligees on all bonds and recognizances taken in and for the 107th, 357th, and 404th district courts and all witnesses summoned to appear in those courts are required to appear before the 103rd, 138th, or 197th district court as if originally required to appear before that court.

Amendment No. 1 was adopted.

**Amendment No. 2**

On behalf of Representative Chavez, Representative Hartnett offered the following amendment to **CSSB 1189**:

Amend **CSSB 1189** (House Committee Printing) by adding the following appropriately numbered SECTION and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __. Section 75.014, Government Code, is amended by adding Subsection (h) to read as follows:

(h)  A district judge in El Paso County or a judge of a statutory county court in El Paso County may serve as the local administrative judge for the council of judges. The council of judges shall elect a judge as local administrative judge for a term of not more than two years. The local administrative judge may not be elected on the basis of rotation or seniority.

Amendment No. 2 was adopted.

**Amendment No. 3**

Representatives Alonzo and Veasey offered the following amendment to **CSSB 1189**:

Amend **CSSB 1189** (House Committee Printing) by adding the following appropriately numbered SECTION and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __. Subchapter D, Chapter 152, Human Resources Code, is amended by adding Section 152.2264 to read as follows:

Sec. 152.2264.  TARRANT COUNTY CRIMINAL COURT ADMINISTRATOR AND COURT SERVICES DEPARTMENT.  (a)  The judges of the district and county courts in Tarrant County that give preference to criminal matters shall, on a majority vote, appoint the criminal courts administrator. The administrator serves at the will of those judges.

(b)  The commissioners court shall pay the salary and expenses of the criminal court administrator and of the court services department employees as determined by the department budget:

(1)  submitted by the judges of the district and county courts that give preference to criminal cases; and

(2)  approved by the commissioners court.

(c)  A judge may not be subjected to a suit for, and is immune from liability for damages arising from, an act or omission committed while performing a duty under this section unless the act or omission is:

(1)  committed intentionally, wilfully, or wantonly; or

    (2)  committed with:

        (A)  gross negligence; or

        (B)  conscious indifference or reckless disregard for the safety of others.

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Raymond offered the following amendment to **CSSB 1189**:

Amend **CSSB 1189** (House Committee Printing) by adding the following appropriately numbered SECTIONS and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __. Section 24.151(d), Government Code, is amended to read as follows:

(d)  A criminal complaint may be presented to the grand jury of any district court [Indictments returned to the 49th District Court] in Webb County, and a resulting indictment may [also] be returned to any other district court in Webb County with the appropriate criminal jurisdiction.

SECTION __. Section 24.487, Government Code, is amended by amending Subsection (b) and adding Subsection (d) to read as follows:

(b)  The judge of the 341st District Court may select jury commissioners and impanel grand juries in Webb County. The judge of the 341st District Court may alternate the drawing of grand juries with the judge of any other district court in the county. By order entered on the minutes, for any term that the judge considers it necessary, the judge may order grand and petit juries to be drawn. [Indictments returned in Webb County may also be returned to the 49th District Court or the 111th District Court.] The 341st District Court has concurrent jurisdiction with the 49th District Court in all tax suits and cases.

(d)  A criminal complaint may be presented to the grand jury of any district court in Webb County, and a resulting indictment may be returned to any other district court in Webb County with the appropriate criminal jurisdiction.

SECTION __. Section 24.551, Government Code, is amended by adding Subsections (c), (d), (e), and (f) to read as follows:

(c)  The 406th District Court has concurrent jurisdiction with the other district courts in Webb County.

(d)  In addition to other jurisdiction provided by law, the 406th District Court has the:

    (1)  criminal jurisdiction of a county court; and

    (2)  civil jurisdiction of a county court in all cases under the Family Code or the Health and Safety Code.

(e)  The terms of the 406th District Court begin on the first Mondays in January, April, July, and October. Each term continues until the court disposes of its business.

(f)  A criminal complaint may be presented to the grand jury of any district court in Webb County, and a resulting indictment may be returned to any other district court in Webb County with the appropriate criminal jurisdiction.

USA_00223665

SECTION __. Section 53.001, Government Code, is amended by adding Subsection (i) to read as follows:

(i)  The judge of the 406th District Court shall appoint a bailiff.

SECTION __. Section 53.004, Government Code, is amended by adding Subsection (f) to read as follows:

(f)  To be eligible to be appointed bailiff in the 406th District Court, a person must be:

(1)  at least 21 years of age; and

(2)  a citizen of the United States.

Amendment No. 4 was adopted.

**CSSB 1189**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero recorded voting no.)

### SB 40 ON SECOND READING
### (Dukes and Naishtat - House Sponsors)

**SB 40**, A bill to be entitled An Act relating to permanency planning procedures for children residing in state institutions.

### SB 40 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE HUPP:  Representative Dukes, I think you have an excellent bill, and one that appears to have support from the providers and the advocates.  Providers support moving permanency planning to avoid even the appearance of a conflict of interest.  However, they are concerned that their rates my be reduced, and when the providers were first given the responsibility of permanency planning, there was no corresponding increase in their rate to cover the cost of that service.  I just want to establish for the purposes of legislative intent that it is not your intention that provider rates be reduced to cover the cost of the agency performing the duties of permanency planning, and further, that it has been indicated to you that the agency plans to use promoting independent funds of the source of funding.

REPRESENTATIVE DUKES:  That is absolutely true.  It is neither the intent of the house author nor the senate author to reduce those rates.

### REMARKS ORDERED PRINTED

Representative Hupp moved to print remarks between Representative Dukes and Representative Hupp.

The motion prevailed.

**Amendment No. 1**

Representative Dukes offered the following amendment to **SB 40**:

Amend **SB 40** (House committee printing) in SECTION 2 of the bill, in added Section 531.1532, Government Code (page 3, line 9), by striking "An institution in which a child resides" and substituting "An entity that provides information to a child's parent or guardian relating to permanency planning".

USA_00223666

Amendment No. 1 was adopted.

**SB 40**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering their votes are as follows: Harper-Brown and Laubenberg recorded voting no.)

**SB 52 ON SECOND READING**
**(Hupp - House Sponsor)**

**SB 52**, A bill to be entitled An Act relating to a competitive grant program for aging and disability services.

**MESSAGE FROM THE SENATE**

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 2).

**SB 52 - (consideration continued)**

**Amendment No. 1**

Representative Naishtat offered the following amendment to **SB 52**:

Amend **SB 52** by inserting the following appropriately numbered sections to the bill and renumbering the subsequent sections of the bill accordingly:

SECTION __. Subchapter B, Chapter 531, Government Code, is amended by adding Section 531.085 to read as follows:

Sec. 531.085. PILOT PROGRAM FOR FUNDING COMMUNITY-BASED SERVICES. (a) In this section, "ICF-MR" has the meaning assigned by Section 531.002, Health and Safety Code.

(b) The commission shall direct the Department of Aging and Disability Services to develop and implement a pilot program to:

(1) quantify the amount of money appropriated by the legislature that would have been spent during the remainder of a state fiscal biennium to care for a person who lives in an ICF-MR facility administered by an ICF-MR provider selected to participate in the pilot program under this section, but who is leaving that facility before the end of the biennium to live in the community with the assistance of community-based services provided through a medical assistance waiver program; and

(2) notwithstanding any other state law and to the maximum extent allowed by federal law, transfer within the department's budget or among the commission and the health and human services agencies at the time the person leaves the facility the amount necessary to pay the cost of the community-based services provided to the person as necessary to comply with this section.

(c) The amount transferred under this section must be redirected by the commission or a health and human services agency to one or more community-based programs to provide community-based services to the person through a medical assistance waiver program after the person leaves the ICF-MR facility.

(d)   The commission and the Department of Aging and Disability Services shall jointly determine criteria for selecting providers of ICF-MR services to participate in the pilot program under this section and shall jointly select at least one provider, but not more than five providers, for participation.  The criteria for selecting a provider may relate to any factor the commission and department consider relevant, including:

     (1)  the size and number of ICF-MR facilities the provider administers;

     (2)  the history of the provider's quality of care;

     (3)  the specific geographic area in which the provider provides services; or

     (4)   whether the provider is willing to convert the services provided from institutional services to community-based medical assistance waiver program services.

(e)   The executive commissioner may adopt rules under which the commission may decertify an appropriate Medicaid bed for each person who leaves an ICF-MR facility and for whom money is transferred under Subsection (b) (2).

(f)  Not later than December 1, 2006, the commission and the Department of Aging and Disability Services shall submit a joint report concerning the effectiveness of the pilot program to the governor and the committees of each house of the legislature that have primary oversight jurisdiction over health and human services agencies.  The report must include a recommendation regarding the feasibility of expanding the pilot program statewide, and analysis of provider and consumer experiences under the program, provider information related to the feasibility of expanding the program, and stakeholder recommendations relating to the program.  In preparing the report and recommendations, the commission and department must:

     (1)  consider consumer satisfaction with the services provided under the program;

     (2)  compare like provider elements, including the following elements with respect to each provider:

          (A)  size;

          (B)  the number of persons served;

          (C)  financial viability, including rates;

          (D)  service transition costs;

          (E)  geographic location; and

          (F)  type and physical condition of facilities; and

     (3)   consider other aspects necessary to provide a comprehensive analysis of the program.

SECTION __.  Not later than December 1, 2005, the Department of Aging and Disability Services shall implement the pilot program under Section 531.085, Government Code, as added by this Act.

Amendment No. 1 was adopted.

**SB 52**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero, Laubenberg, and Leibowitz recorded voting no.)

### SB 1668 ON SECOND READING
### (Baxter - House Sponsor)

**SB 1668**, A bill to be entitled An Act relating to the consideration of payments to an affiliate in computing rates for electric utilities.

**SB 1668** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Burnam and Gonzales recorded voting no.)

### SB 244 ON SECOND READING
### (Orr - House Sponsor)

**SB 244**, A bill to be entitled An Act relating to priority of payment relating to property owners' association assessments.

(Rose now present)

### SB 244 - POINT OF ORDER

Representative Harper-Brown raised a point of order against further consideration of **SB 244** under Rule 4, Section 33(b) of the House Rules on the grounds that the committee report for the bill does not contain a fiscal note.

The point of order was withdrawn.

Representative Orr moved to postpone consideration of **SB 244** until 3:30 p.m. today.

The motion prevailed.

### CSSB 327 ON SECOND READING
### (McCall - House Sponsor)

**CSSB 327**, A bill to be entitled An Act relating to the installation, copying, or use of computer software for unauthorized purposes; providing a penalty.

**Amendment No. 1**

Representative McCall offered the following amendment to **CSSB 327**:

Amend **CSSB 327** (House Committee Printing) as follows:

(1) In SECTION 1 of the bill, in added Section 48.002, Business & Commerce Code (page 1, between lines 15 and 16), add a new Subdivision (2) to read as follows and renumber subsequent subdivisions accordingly:

(2) "Cause computer software to be copied" means to distribute or transfer computer software or a component of computer software. The term does not include:

USA_00223669

   (A) the transmission or routing of computer software or a component of the software;

   (B) the provision of intermediate temporary storage or caching of software;

   (C) the provision of a storage medium such as a compact disk;

   (D) a website;

   (E) the distribution of computer software by a third party through a computer server; or

   (F) the provision of an information location tool, such as a directory, index, reference, pointer, or hypertext link, through which the user of a computer is able to locate computer software.

 (2) In SECTION 1 of the bill, strike added Section 48.003(a), Business & Commerce Code (page 3, lines 10-23).

 (3) In SECTION 1 of the bill, in added Section 48.003, Business & Commerce Code (page 3, line 24), strike "(b)".

 (4) In SECTION 1 of the bill, in the heading to added Section 48.051, Business & Commerce Code (page 4, line 16), strike "TRANSMISSION" and substitute "CULLING".

 (5) In SECTION 1 of the bill, in added Section 48.051, Business & Commerce Code (page 4, lines 18 and 19), strike "transmit computer software" and substitute "cause computer software to be copied".

 (6) In SECTION 1 of the bill, in the heading to added Section 48.052, Business & Commerce Code (page 5, line 14), strike "TRANSMISSIONS" and substitute "ACCESS TO".

 (7) In SECTION 1 of the bill, in added Section 48.052, Business & Commerce Code (page 5, lines 16 and 17), strike "transmit computer software" and substitute "cause computer software to be copied".

 (8) In SECTION 1 of the bill, in added Section 48.053, Business & Commerce Code (page 6, lines 26 and 27), strike "transmit computer software" and substitute "cause computer software to be copied".

 (9) In SECTION 1 of the bill, in Subdivision (3) of added Section 48.053, Business & Commerce Code (page 7, line 13), strike "; or" and substitute ";".

 (10) In SECTION 1 of the bill, in Subdivision (4)(B) of added Section 48.053, Business & Commerce Code (page 7, line 22), strike "." and substitute ";".

 (11) In SECTION 1 of the bill, immediately following Subdivision (4) of added Section 48.053, Business & Commerce Code (page 7, between lines 22 and 23), insert the following:

   (5) change the name, location, or other designation of computer software to prevent the owner from locating and removing the software; or

   (6) create randomized or intentionally deceptive file names or random or intentionally deceptive directory folders, formats, or registry entries to avoid detection and prevent the owner from removing computer software.

 (12) In SECTION 1 of the bill, in added Section 48.055(2), Business & Commerce Code (page 8, line 9), strike "provide for" and substitute "cause".

USA_00223670

(13)  In SECTION 1 of the bill, strike added Section 48.057, Business & Commerce Code (page 8, line 25, through page 9, line 7).

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative McCall offered the following amendment to **CSSB 327**:

Amend **CSSB 327** (House Committee Printing) as follows:

(1)  In SECTION 1 of the bill, at the end of added Section 48.003, Business & Commerce Code (page 4, between lines 13 and 14), insert the following:

(c)  This chapter does not apply to:

(1)  the use of a navigation device, any interaction with a navigation device, or the installation or use of computer software on a navigation device by a multichannel video programming distributor or video programmer in connection with the provision of multichannel video programming or other services offered over a multichannel video programming system if the provision of the programming or other service is subject to 47 U.S.C. Section 338(i) or 551; or

(2)  the collection or disclosure of subscriber information by a multichannel video programming distributor or video programmer in connection with the provision of multichannel video programming or other services offered over a multichannel video programming system if the collection or disclosure of the information is subject to 47 U.S.C. Section 338(i) or 551.

(d)  In this section, "multichannel video programming distributor" has the meaning assigned by 47 U.S.C. Section 522(13).

(2)  In SECTION 1 of the bill, strike added Section 48.101(a), Business & Commerce Code (page 9, lines 10-17), and substitute the following:

(a)  The following persons, if adversely affected by the violation, may bring a civil action against a person who violates this chapter:

(1)  a provider of computer software;

(2)  an owner of a web page or trademark;

(3)  a telecommunications carrier;

(4)  a cable operator; or

(5)  an Internet service provider.

(3)  In SECTION 1 of the bill, strike added Section 48.101(g), Business & Commerce Code (page 10, line 17, through page 11, line 8), and substitute the following:

(g)  In the case of a violation of Section 48.052 that causes a telecommunications carrier or cable operator to incur costs for the origination, transport, or termination of a call triggered using the modem of a customer of the telecommunications carrier or cable operator as a result of the violation and in addition to any other remedy provided by law, a telecommunications carrier or cable operator bringing an action under this section may:

(1)  apply to a court for an order to enjoin the violation;

USA_00223671

(2)  recover the charges the telecommunications carrier or cable operator is obligated to pay to a telecommunications carrier, cable operator, other provider of transmission capability, or an information service provider as a result of the violation, including charges for the origination, transport, or termination of the call;

(3)  recover the costs of handling customer inquiries or complaints with respect to amounts billed for calls as a result of the violation;

(4)  recover other costs, including court costs, and reasonable attorney's fees; or

(5)  both apply for injunctive relief and recover charges and other costs as provided by this subsection.

Amendment No. 2 was adopted.

**CSSB 327**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 882 ON SECOND READING
### (A. Allen and Naishtat - House Sponsors)

**SB 882**, A bill to be entitled An Act relating to the Texas Council on Autism and Pervasive Developmental Disorders.

**SB 882** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Harper-Brown and Laubenberg recorded voting no.)

(Keel in the chair)

### SB 450 ON SECOND READING
### (Baxter - House Sponsor)

**SB 450**, A bill to be entitled An Act relating to the confidentiality of certain personal information regarding the employees of a prosecutor's office or of an office with jurisdiction over child protective services.

**SB 450** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 23 ON SECOND READING
### (Kolkhorst and Naishtat - House Sponsors)

**SB 23**, A bill to be entitled An Act relating to subsidized child-care services and early childhood care and education program coordination.

**Amendment No. 1**

Representative Kolkhorst offered the following amendment to **SB 23**:

Amend **SB 23** in SECTION 1 of the bill, in added Section 29.1561(c), Education Code (engrossed version, page 1, line 8), by striking "award grants" and substituting "provide incentives".

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Isett offered the following amendment to **SB 23**:

Amend **SB 23**, as reported by the House Committee, by adding a new subsection (c)(4) to the proposed Section 29.161, Education Code:

(c)  The system must:

(4)   include a management scorecard system made up performance indicators, the perspectives of parents, interested stakeholders, and provider employees, and critical success factors related to implementing and sustaining effective early childhood care and education programs.

Amendment No. 2 was withdrawn.

**Amendment No. 3**

Representative Paxton offered the following amendment to **SB 23**:

Amend House Committee Report for **SB 23** by inserting a new section and renumbering subsequent sections as follows:

SECTION  ____.  Sections 2308.315 and 2308.316, Government Code, are amended to read as follows:

Sec. 2308.315.  REIMBURSEMENT RATES FOR CHILD CARE.  Each board may [shall] establish graduated reimbursement rates for child care based on the Texas Workforce Commission's designated vendor program. If a board establishes graduated reimbursement rates for child care, the [The] minimum reimbursement rate for designated vendors must be at least five percent greater than the maximum rate established for nondesignated vendors for the same category of care. A [The] designated vendor rate differential established in this section shall be funded with federal child care development funds dedicated to quality improvement activities.

Sec. 2308.316.  FUNDING OF COMPETITIVE PROCUREMENT PROCESS FOR INFANT AND EARLY CHILDHOOD CHILD CARE.  Each board may [shall] allocate a portion of the board's federal child care development funds dedicated to quality improvement activities to a competitive procurement process for a system for quality child care for children under four years of age that encourages child care providers to voluntarily meet the criteria of the Texas Workforce Commission's designated vendor program or national accreditation. If a board allocates [In allocating] funds under this section, special consideration shall be given to funding child care for children under four years of age in low-income communities. This section may not be interpreted to limit parental choice.

Amendment No. 3 was withdrawn.

SB 23, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows:  Harper-Brown recorded voting no.)

### SB 34 ON SECOND READING
### (Morrison - House Sponsor)

SB 34, A bill to be entitled An Act relating to the tuition rebate program for certain undergraduates at certain public institutions of higher education.

**Amendment No. 1**

Representative Rose offered the following amendment to SB 34:

Amend SB 34 by adding the following SECTIONS to the bill and renumbering subsequent SECTIONS of the bill appropriately:

SECTION ____. Section 51.351(1), Education Code, is amended to read as follows:

(1) "General academic teaching institution," "governing board," "institution of higher education," "medical and dental unit," "public junior college," and "university system" have the meanings assigned by Section 61.003 [of this code].

SECTION ____. Subchapter G, Chapter 51, Education Code, is amended by adding Sections 51.355 and 51.356 to read as follows:

Sec. 51.355.  NONVOTING STUDENT REGENT; UNIVERSITY SYSTEM BOARD OF REGENTS.  (a) In this section, "student government" means the representative student organization directly elected by the student body of a general academic teaching institution or medical and dental unit.

(b) The chancellor of each university system shall develop a uniform application form to be used by each general academic teaching institution and medical and dental unit in the university system to solicit applicants for the position of student regent.

(c) Except as provided by Subsection (f), not later than September 1 of each year, the student government of each general academic teaching institution and medical and dental unit in a university system shall solicit applicants for the position of student regent. Not later than November 1, from among the applications received by the student government, the student government shall select five applicants as the student government's recommendations for the position of student regent and send the applications of those applicants, with the name of each applicant and the name of the institution or unit in which the applicant is enrolled removed, to the chancellor of the university system. From among those applicants, the chancellor shall select two or more applicants as the university system's recommendations for the position of student regent and shall send the applications of those applicants to the governor not later than December 1. The governor may request to review all applications for the position of student regent received by the student governments and may request to review information required to be removed from an application by a student government under this subsection. On February 1, or as soon thereafter as practicable, the

USA_00223674

governor shall appoint one of the applicants to serve as the student regent for the system for a one-year term expiring on the next February 1. The governor is not required to appoint an applicant recommended by the chancellor.

(d) A student regent must be enrolled as an undergraduate or graduate student in a general academic teaching institution or medical and dental unit in the university system at the time of appointment and throughout the student regent's term. For purposes of this subsection, a person is considered to be enrolled in an institution or unit for a summer term if the person was enrolled in the institution or unit for the preceding semester and:

(1) is registered or preregistered at the institution or unit for the following fall semester;

(2) if the person has not completed the person's degree program, is eligible to continue the degree program at the institution or unit in the following fall semester; or

(3) if the person completed a degree program in the preceding semester, is admitted to another degree program at the institution or unit for the following fall semester.

(e) A student regent is not a member of the board of regents of the system for which the student regent is appointed. A student regent has the same powers and duties as the members of the board of regents of the system, including the right to attend and participate in meetings of the board of regents, except that the student regent:

(1) may not vote on any matter before the board or make or second any motion before the board; and

(2) is not counted in determining whether a quorum exists for a meeting of the board or in determining the outcome of any vote of the board.

(f) The student government of the general academic teaching institution or medical and dental unit at which a current student regent was enrolled at the time of the student regent's appointment may not solicit applicants for the position of student regent for the next regular term of the position.

(g) A vacancy in the position of student regent for a university system shall be filled for the unexpired term by appointment by the governor in consultation with the chancellor of the system.

Sec. 51.356. NONVOTING STUDENT REGENT; INSTITUTION BOARD OF REGENTS. (a) This section applies only to a general academic teaching institution that is not a part of a university system.

(b) In this section, "student government" means the representative student organization directly elected by the student body of a general academic teaching institution.

(c) The president of a general academic teaching institution shall develop a uniform application form to be used to solicit applicants for the position of student regent.

(d) Not later than September 1 of each year, the student government of the general academic teaching institution shall solicit applicants for the position of student regent. Not later than November 1, from among the applications received by the student government, the student government shall select five applicants as

USA_00223675

the student government's recommendations for the position of student regent and send the applications of those applicants, with the name of each applicant removed, to the president of the institution. From among those applicants, the president shall select two or more applicants as the institution's recommendations for the position of student regent and shall send the applications of those applicants to the governor not later than December 1. The governor may request to review all applications for the position of student regent received by the student government and may request to review information required to be removed from an application by the student government under this subsection. On February 1, or as soon thereafter as practicable, the governor shall appoint one of the applicants to serve as the student regent for the institution for a one-year term expiring on the next February 1. The governor is not required to appoint an applicant recommended by the president.

(e) A student regent must be enrolled as an undergraduate or graduate student in the general academic teaching institution at the time of appointment and throughout the student regent's term. For purposes of this subsection, a person is considered to be enrolled in an institution for a summer term if the person was enrolled in the institution for the preceding semester and:

(1) is registered or preregistered at the institution for the following fall semester;

(2) if the person has not completed the person's degree program, is eligible to continue the degree program at the institution in the following fall semester; or

(3) if the person completed a degree program in the preceding semester, is admitted to another degree program at the institution for the following fall semester.

(f) A student regent is not a member of the board of regents of the institution for which the student regent is appointed. A student regent has the same powers and duties as the members of the board of regents of the institution, including the right to attend and participate in meetings of the board of regents, except that the student regent:

(1) may not vote on any matter before the board or make or second any motion before the board; and

(2) is not counted in determining whether a quorum exists for a meeting of the board or in determining the outcome of any vote of the board.

(g) A vacancy in the position of student regent for an institution shall be filled for the unexpired term by appointment by the governor in consultation with the president of the institution.

SECTION ____. The initial term of a student regent appointed for a state university system under Section 51.355, Education Code, as added by this Act, or for a state university under Section 51.356, Education Code, as added by this Act, expires February 1, 2007. The appropriate student governments, the chancellor of each state university system, the president of each state university that is not a part of a university system, and the governor shall take the actions required by

Sections 51.355 and 51.356, Education Code, as added by this Act, as soon as practicable after this Act takes effect to select a student regent for each state university or state university system for that initial term.

Amendment No. 1 was adopted. (Talton recorded voting no.)

**Amendment No. 2**

Representative Campbell offered the following amendment to **SB 34**:

Amend **SB 34** by adding the following new SECTIONS, appropriately numbered, and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __. Subchapter M, Chapter 56, Education Code, is amended by adding Section 56.3012 to read as follows:

Sec. 56.3012. PILOT PROJECT TO PROVIDE INCENTIVES FOR ATTENDANCE AT UNDERUTILIZED PUBLIC INSTITUTIONS.   (a) In addition to incentives described by Section 54.0065, the coordinating board shall establish a tuition grant incentive pilot project as provided by this section to encourage students to attend eligible public institutions of higher education that offer extensive baccalaureate degree program options and that have sufficient facilities, administrative infrastructure, and faculty to serve additional students in order to reduce the need for this state to construct additional facilities or hire additional faculty at other institutions of higher education.

(b)  From money available under Section 56.310 for purposes of this subchapter and money available under Section 54.464 for purposes of Subchapter Q, the coordinating board shall set aside sufficient money to provide tuition grant incentives, including TEXAS grants for the 2005-2006 and 2006-2007 academic years to students who are initially eligible for a grant under Section 56.304 or 56.3041 in either of those years as follows:

(1)  for not more than 400 additional students in excess of the total of fall 2004 awards at Angelo State University; and

(2)  for not more than 200 additional students in excess of the total of fall 2004 awards at Sul Ross State University

(c)  To the extent money set aside under Subsection (b) is available for the purpose, a person awarded a grant as provided by Subsection (b) who continues to be eligible for a grant under Section 56.305 may receive a grant from the money set aside. If money set aside under Subsection (b) is not available to pay for a grant for a person awarded a grant as provided by Subsection (b) who continues to be eligible for a grant under Section 56.305, the person may receive a grant from the money available under Section 56.310 on the same basis as other Texas grant applicants.

(d)  The coordinating board shall reallocate for grants under this subchapter or for loans under Subchapter Q, as applicable , any money set aside for purposes of the TEXAS grant pilot project that is not used in the academic year for which the money is set aside. Money reallocated under this subsection may be used at any eligible institution under this subchapter or Subchapter Q.

(e)  Except as otherwise specifically provided by this section, this subchapter applies to a TEXAS grant awarded under this section.

USA_00223677

(f) The coordinating board shall develop criteria for evaluating the pilot project and, based on that evaluation, not later than January 1, 2007, shall report to the 80th Legislature the coordinating board's recommendations concerning whether to continue, expand to other underutilized eligible public institutions of higher education, or discontinue the pilot project.

SECTION ___. The Texas Higher Education Coordinating Board shall adopt rules to administer Section 56.3012, Education Code, as added by this Act, as soon as practicable after the date this Act takes effect. For that purpose, the board may adopt the initial rules in the manner provided by law for adoption of emergency rules.

Amendment No. 2 was adopted.

**Amendment No. 3**

Representative Dutton offered the following amendment to **SB 34**:

Amend **SB 34** (house committee printing) by adding the following appropriately numbered section to the bill and renumbering the remaining sections appropriately:

SECTION ___. (a) Subchapter D, Chapter 54, Education Code, is amended by adding Section 54.220 to read as follows:

Sec. 54.220. EXEMPTION FOR RESIDENT LOWER-DIVISION STUDENTS AT GENERAL ACADEMIC TEACHING INSTITUTIONS FOR MAINTAINING HIGH ACADEMIC PERFORMANCE. (a) In this section, "general academic teaching institution" has the meaning assigned by Section 61.003.

(b) An entering freshman student enrolled in a general academic teaching institution is entitled to a refund of tuition and required fees paid by the student under this chapter for the first semester or term for which the student enrolls at that institution if the student:

(1) graduated from a private high school, including a home school, or a public high school in this state;

(2) is classified as a Texas resident under Subchapter B; and

(3) for all courses attempted that initial semester or term earns a grade point average of at least 3.0 on a four-point scale or the equivalent.

(c) To receive a refund under Subsection (b), the student must apply to the institution in the manner required by the institution not later than the first anniversary of the last class day of the semester or term.

(d) A student enrolled in a general academic teaching institution is exempt from the payment of tuition and required fees authorized by this chapter for a semester or term of the student's first two academic years, other than a semester or term covered by Subsection (b), at that institution if the student:

(1) graduated from a private high school, including a home school, or a public high school in this state;

(2) is classified as a Texas resident under Subchapter B; and

(3) maintains an overall grade-point average of at least 3.0 on a four-point scale or the equivalent for all prior coursework attempted at the institution.

(e)  A student receiving an exemption under this section for one or more semesters or terms may not enroll for the student's third academic year at the institution until the student passes an examination to be selected and administered by the institution.

(f)  An institution to which this section applies may fund tuition and fee refunds and exemptions under this section from local funds or from funds appropriated to the institution. The institution may provide tuition and fee refunds or exemptions beyond those funded through state appropriations specifically designated for this purpose.

(g)  A person may not receive a refund or exemption under this section for a semester or term that begins after the 2024-2025 academic year. This section expires September 1, 2026.

(b)  This section applies beginning with tuition and fees charged for the 2005 fall semester.

Amendment No. 3 was withdrawn.

**Amendment No. 4**

Representative Naishtat offered the following amendment to **SB 34**:

Amend **SB 34** (House committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering existing SECTIONS of the bill accordingly:

SECTION ____.  (a)  Subchapter D, Chapter 54, Education Code, is amended by adding Section 54.2115 to read as follows:

Sec. 54.2115.  TUITION EXEMPTION FOR CERTAIN PERSONS IN TRANSITIONAL LIVING PROGRAM.  (a)  In this section, "transitional living program" means a program that meets the grant eligibility standards for transitional living youth projects for homeless youth under Sections 321 and 322, Runaway and Homeless Youth Act (42 U.S.C. Sections 5714-1 and 5714-2), as amended.

(b)  A person is exempt from the payment of tuition and required fees other than property deposit fees if the person:

(1)  was a resident in a transitional living program for a continuous period of at least six months occurring after the person's 16th birthday but before the person's 22nd birthday;

(2)  maintains a current residence that is separate from that of a parent, conservator, or other guardian of the person;

(3)  is classified as a Texas resident under Subchapter B;

(4)  initially enrolls at an institution of higher education as a full-time or part-time undergraduate student not later than the person's 22nd birthday; and

(5)  demonstrates financial need as determined according to standards adopted by any institution of higher education in which the person enrolls.

(c)  Each transitional living program in this state shall provide current program information to the Department of Family and Protective Services and shall update the information as necessary.  The department shall maintain a record

USA_00223679

of each transitional living program in this state and shall provide a list of the programs to the Texas Higher Education Coordinating Board not later than June 1 of each year.

(b) Section 54.2115, Education Code, as added by this section, applies beginning with tuition and fees for the 2006 spring semester.

(c) A public institution of higher education shall adopt the standards for financial need as described by Section 54.2115, Education Code, as added by this section, not later than the 30th day after the effective date of this section. For that purpose, the institution may adopt the initial standards in the manner provided by law for adoption of emergency rules. This subsection expires January 1, 2006.

Representative Morrison moved to table Amendment No. 4.

The motion to table prevailed.

(Solomons and Zedler now present)

**SB 34**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Howard, Jackson, and Laubenberg recorded voting no.)

### SB 96 ON SECOND READING
### (Solomons - House Sponsor)

**SB 96**, A bill to be entitled An Act relating to the provision on the Internet of forms and permit or license information by state agencies.

**SB 96** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 111 ON SECOND READING
### (T. Smith - House Sponsor)

**SB 111**, A bill to be entitled An Act relating to undergraduate course credit granted by public institutions of higher education for the completion of certain postsecondary-level programs by high school students.

**Amendment No. 1**

Representative T. Smith offered the following amendment to **SB 111**:

Amend **SB 111** (House committee printing) as follows:

(1) In SECTION 1 of the bill, strike added Subdivision (1), Subsection (a), Section 51.968, Education Code (page 1, lines 11-12), and substitute the following:

(1)   "Advanced Placement examination"   means an examination administered through the Advanced Placement Program.

(2) In SECTION 1 of the bill, in added Subdivision (2), Subsection (a), Section 51.968, Education Code (page 1, line 14), strike "college-level examination program" and substitute "College-Level Examination Program".

(3) In SECTION 1 of the bill, in added Subdivision (5), Subsection (a), Section 51.968, Education Code (page 1, lines 20-22), strike "(5) "International baccalaureate diploma program" means the curriculum and examinations leading to an international baccalaureate diploma" and substitute "(5) "International Baccalaureate Diploma Program" means the curriculum and examinations leading to an International Baccalaureate diploma".

(4) In SECTION 1 of the bill, in added Subsection (b), Section 51.968, Education Code (page 2, lines 3-6), strike "international baccalaureate diploma program, who have achieved required scores on one or more examinations in the advanced placement program or the college-level examination program" and substitute "International Baccalaureate Diploma Program, who have achieved required scores on one or more examinations in the Advanced Placement Program or the College-Level Examination Program".

(5) In SECTION 1 of the bill, in added Subdivision (1), Subsection (c), Section 51.968, Education Code (page 2, lines 12-14), strike "advanced placement examinations, and examinations for courses constituting  the international baccalaureate diploma program" and substitute "Advanced Placement examinations, and examinations for courses constituting  the International Baccalaureate Diploma Program".

(6) In SECTION 1 of the bill, in added Subdivision (2), Subsection (c), Section 51.968, Education Code (page 2, line 22), strike "advanced placement" and substitute "Advanced Placement".

(7) In SECTION 1 of the bill, in added Subdivision (1), Subsection (f), Section 51.968, Education Code (page 3, lines 15-17), strike "international baccalaureate diploma program, the advanced placement program, and the college-level examination program" and substitute "International Baccalaureate Diploma Program, the Advanced Placement Program, and the College-Level Examination Program".

(8) In SECTION 1 of the bill, in added Subsection (g), Section 51.968, Education Code (page 3, line 24), strike "international baccalaureate diploma program" and substitute "International Baccalaureate Diploma Program".

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Dutton offered the following amendment to **SB 111**:

Amend **SB 111** (house committee printing) by adding the following appropriately numbered section to the bill and renumbering the remaining sections of the bill appropriately:

SECTION __. (a) Subchapter D, Chapter 54, Education Code, is amended by adding Section 54.220 to read as follows:

Sec. 54.220. EXEMPTION FOR RESIDENT LOWER-DIVISION STUDENTS AT GENERAL ACADEMIC TEACHING INSTITUTIONS FOR MAINTAINING HIGH ACADEMIC PERFORMANCE.  (a) In this section, "general academic teaching institution" has the meaning assigned by Section 61.003.

USA_00223681

(b)   An entering freshman student enrolled in a general academic teaching institution is entitled to a refund of tuition and required fees paid by the student under this chapter for the first semester or term for which the student enrolls at that institution if the student:

(1)   graduated from a private high school, including a home school, or a public high school in this state;

(2)   is classified as a Texas resident under Subchapter B; and

(3)   for all courses attempted that initial semester or term earns a grade point average of at least 3.0 on a four-point scale or the equivalent.

(c)   To receive a refund under Subsection (b), the student must apply to the institution in the manner required by the institution not later than the first anniversary of the last class day of the semester or term.

(d) A student enrolled in a general academic teaching institution is exempt from the payment of tuition and required fees authorized by this chapter for a semester or term of the student's first two academic years, other than a semester or term covered by Subsection (b), at that institution if the student:

(1)   graduated from a private high school, including a home school, or a public high school in this state;

(2)   is classified as a Texas resident under Subchapter B; and

(3)   maintains an overall grade-point average of at least 3.0 on a four-point scale or the equivalent for all prior coursework attempted at the institution.

(e)   A student receiving an exemption under this section for one or more semesters or terms may not enroll for the student's third academic year at the institution until the student passes an examination to be selected and administered by the institution.

(f)   An institution to which this section applies may fund tuition and fee refunds and exemptions under this section from local funds or from funds appropriated to the institution.   The institution may provide tuition and fee refunds or exemptions beyond those funded through state appropriations specifically designated for this purpose.

(g)   A person may not receive a refund or exemption under this section for a semester or term that begins after the 2024-2025 academic year.   This section expires September 1, 2026.

(b)   This section applies beginning with tuition and fees charged for the 2005 fall semester.

Amendment No. 2 was withdrawn.

**Amendment No. 3**

Representative B. Cook offered the following amendment to **SB 111**:

Amend **SB 111** by adding the following appropriately numbered section and renumbering the subsequent sections of the bill accordingly:

SECTION __.   Subchapter B, Chapter 28, Education Code, is amended by adding Section 28.0252 to read as follows:

Sec. 28.0252.    COMPUTATION OF HIGH SCHOOL GRADE POINT AVERAGE. (a)  The commissioner may develop a standard method of computing a student's high school grade point average that provides for additional weight to be given to each honors course, advanced placement course, international baccalaureate course, or dual credit course described by Section 28.025 (e)(2)(B) completed by a student.

(b)  If the commissioner develops a standard method under this section, a school district shall use the standard method to compute a student's high school grade point average, and the student's grade point average computed in that manner shall be used in determining the student's eligibility for automatic college admission under Section 51.803.

(b-1)  Subsection (b) applies only to students entering grade nine during or after the 2007-2008 school year. This subsection expires September 1, 2010.

(c)  The commissioner may adopt rules necessary to implement this section.

Amendment No. 3 was adopted.

A record vote was requested.

**SB 111**, as amended, was passed to third reading by (Record 794): 127 Yeas, 17 Nays, 2 Present, not voting.

Yeas — Allen, A.; Allen, R.; Alonzo; Anchia; Anderson; Bailey; Baxter; Blake; Bohac; Branch; Brown, F.; Burnam; Campbell; Casteel; Castro; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Corte; Crownover; Davis, J.; Davis, Y.; Dawson; Delisi; Denny; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Gattis; Geren; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Grusendorf; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Herrero; Hilderbran; Hill; Hochberg; Homer; Hunter; Isett; Jackson; Jones, D.; Jones, J.; Keffer, J.; King, P.; Kolkhorst; Krusee; Kuempel; Laney; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Moreno, P.; Morrison; Mowery; Naishtat; Nixon; Noriega, M.; Oliveira; Olivo; Orr; Otto; Peña; Phillips; Pickett; Pitts; Puente; Quintanilla; Raymond; Reyna; Ritter; Rodriguez; Rose; Seaman; Smith, T.; Smith, W.; Smithee; Solis; Solomons; Strama; Straus; Swinford; Taylor; Thompson; Truitt; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo; West; Wong; Woolley; Zedler.

Nays — Berman; Bonnen; Brown, B.; Callegari; Crabb; Flynn; Hope; Hopson; Howard; Hughes; Hupp; Keffer, B.; Laubenberg; Miller; Paxton; Riddle; Talton.

Present, not voting — Mr. Speaker; Keel(C).

Absent, Excused — Hodge.

Absent, Excused, Committee Meeting — Giddings.

Absent — King, T.

USA_00223683

## STATEMENTS OF VOTE

I was shown voting yes on Record No. 794. I intended to vote no.

F. Brown

I was shown voting no on Record No. 794. I intended to vote yes.

Hopson

I was shown voting no on Record No. 794. I intended to vote yes.

B. Keffer

I was shown voting yes on Record No. 794. I intended to vote no.

Phillips

## SB 155 ON SECOND READING
### (Eiland - House Sponsor)

**SB 155**, A bill to be entitled An Act relating to the quality assurance accreditation process for certain entities that offer health benefit plans.

**Amendment No. 1**

Representative Eiland offered the following amendment to **SB 155**:

Amend **SB 155** (house committee printing) in SECTION 1 of the bill by striking Subsection (c) of added Section 847.005, Insurance Code (page 5, lines 22-27), and substituting the following:

(c) If the department determines that a health benefit plan issuer is in compliance with a state statutory or regulatory requirement, the commission may presume that a Medicaid or state child health plan program managed care plan offered by a health benefit plan issuer under contract with the commission is in compliance with any contractual Medicaid or state child health plan program managed care plan requirement that is the same as, substantially similar to, or more stringent than the state statutory or regulatory requirement, as determined by the commission.

Amendment No. 1 was adopted.

## LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence temporarily for today to attend a meeting of the conference committee on **HB 7** and **SB 5**:

Solomons on motion of Homer.

## SB 155 - (consideration continued)

Representative Eiland moved to postpone consideration of **SB 155** until 4 p.m. today.

The motion prevailed.

## SB 263 ON SECOND READING
### (Otto - House Sponsor)

**SB 263**, A bill to be entitled An Act relating to use of certain information relating to tax audits; providing penalties.

**SB 263** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

## SB 265 ON SECOND READING
### (B. Keffer - House Sponsor)

**SB 265**, A bill to be entitled An Act relating to certain continuing education requirements for insurance agents.

**Amendment No. 1**

Representative B. Keffer offered the following amendment to **SB 265**:

Amend **SB 265**, house committee printing, in SECTION 1 of the bill, on page 1, after line 24, by inserting a new Subsection (d) in added Section 4004.0535, Insurance Code, to read as follows:

(d)  An agent who seeks continuing education credit under this section shall provide to the department in the manner prescribed by the commissioner a sworn affirmation that the agent is an active member of a state or national insurance association described by Subsection (a) and, for the number of continuing education hours claimed, has:

      (1)  reviewed educational materials provided by that association; or
      (2)  attended educational presentations sponsored by that association.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Taylor offered the following amendment to **SB 265**:

Amend **SB 265** (committee printing) as follows:

(1)  On page 2, line 1, add the following new sections and renumber appropriately:

SECTION 2. Subchapter B, Chapter 4004, Insurance Code, as effective April 1, 2005, is amended by adding Section 4004.0536 as follows:

Sec. 4004.0536.  CONTENT OF CONTINUING EDUCATION PROGRAM. A continuing education program for individuals who hold a general life accident and health license, a life and health insurance counselors license or a limited life accident and health license may include information related to the Health Insurance Portability and Accountability Act, Texas Insurance Code Chapter 1501, including provisions related to participation and contribution requirements and renewability of coverage.

SECTION 3. Section 1501.108, Insurance Code, is amended by adding Subsection (d) to read as follows:

USA_00223685

(d)  A  small  or  large  employer  health  benefit  plan  issuer  may  modify  a particular  small  or  large  employer  health  benefit  plan  at  the  time  of  coverage renewal  if  the  modification  applies  uniformly  to  all  small  or  large  employers whose employees are covered by that health benefit plan.

SECTION 4.  Section 1501.153(a), Insurance Code, is amended to read as follows:

(a)  This chapter does not require a small employer to make an employer contribution to the premium paid to a small employer health benefit plan issuer, but  the  issuer  may  require  an  employer  contribution  in  accordance  with  the issuer's  usual  and  customary  practices  applicable  to  each of  the  issuer's  small employer  group  health  benefit  plans  in  this  state.  The  issuer  shall  apply  the employer contribution level uniformly to each small employer offered or issued coverage under a small employer health benefit plan by the issuer in this state.

SECTION 5.  Sections 1501.155(a) and (b), Insurance Code,
are amended to read as follows:

(a)  A small employer health benefit plan issuer may offer a small employer health benefit plan to a small employer with a
participation level of less than 75 percent of the employer's
eligible employees if the issuer permits the same qualifying
participation  level  for  each  of the  small  employer  health  benefit  plans  [plan] offered by the issuer in this state.

(b)  A small employer health benefit plan issuer may offer a small employer health benefit plan to a small employer even if the employer's participation level is less than the issuer's qualifying participation level for a small employer health benefit plan established in accordance with Subsection (a) if:

(1)  the employer obtains a written waiver from each
eligible employee who declines coverage under a health benefit plan offered to the  employer  stating  that  the  employee  was  not  induced  or  pressured  to  decline coverage because of the employee's risk characteristics; and

(2)  the issuer accepts or rejects the entire group of eligible employees who choose to participate and excludes only those employees who have declined coverage.

SECTION 6.  Sections 1501.605(a) and (d), Insurance Code,
are amended to read as follows:

(a)  A  large  employer  health  benefit  plan  issuer  may  require  a  large employer  to  meet  a  minimum  contribution  or  participation  requirement  as  a condition  of  issuance  or  renewal  in  accordance  with  the  issuer's  usual  and customary  practices  for  each of  [all]  the  issuer's  large  employer  health  benefit plans in this state.

(d)  A  participation  requirement  must  be  stated  in  the  health  benefit  plan contract and must be applied uniformly to each large employer offered or issued coverage under a large employer health benefit plan by a large employer health benefit plan issuer in this state.

Amendment No. 2 was adopted.

**Amendment No. 3**

Representative Taylor offered the following amendment to **SB 265**:

Amend **SB 265** (committee printing) as follows:

(1)   On page 2, line 1, add the following new sections and renumber appropriately:

SECTION 2.  Subchapter B, Chapter 4004, Insurance Code, as effective April 1, 2005, is amended by adding Section 4004.0536 as follows:

Sec. 4004.0536.  CONTENT OF CONTINUING EDUCATION PROGRAM. A continuing education program for individuals who hold a general life accident and health license, a life and health insurance counselors license or a limited life accident and health license may include information related to the Texas Health Insurance Risk Pool.

SECTION 3.  Subsection (b), Section 1506.002, Insurance Code, is amended to read as follows:

(b)   In this chapter, "health benefit plan" does not include:

(1)   accident insurance;

(2)   a plan providing coverage only for dental or vision care;

(3)   fixed indemnity insurance, including hospital indemnity insurance;

(4) [(2)] credit insurance;

(5) [(3)] long-term care insurance;

(6) [(4)] disability income insurance;

(7)   other limited benefit coverage, including specified disease coverage;

(8)  [(5)] coverage issued as a supplement to liability insurance;

(9) [(6)] insurance arising out of a workers' compensation law or similar law;

(10) [(7)] automobile medical payment insurance; or

(11) [(8)] insurance coverage under which benefits are payable with or without regard to fault and that is statutorily required to be contained in a liability insurance policy or equivalent self-insurance.

SECTION 4.  Subsection (a), Section 1506.109, Insurance Code, is amended to read as follows:

(a)   The pool shall [may] provide for and use cost containment measures and requirements to make the coverage offered by the pool more cost-effective. To the extent the board determines it is cost-effective, the cost containment measures must include individual case management and disease management. The cost containment measures may include[, including] preadmission screening, the requirement of a second surgical opinion, and concurrent utilization review subject to Article 21.58 [, and individual case management, to make the coverage offered by the pool more cost-effective].

SECTION 5.  Subsection (a), Section 1506.152, Insurance Code, is amended to read as follows:

(a)   An individual who is a legally domiciled resident of this state is eligible for coverage from the pool if the individual:

(1)  provides to the pool evidence that the individual maintained health benefit plan coverage for the preceding 18 months with no gap in coverage longer than 63 days and with the most recent coverage being provided through an employer-sponsored plan, church plan, or government plan;

(2)  provides to the pool evidence that the individual maintained health benefit plan coverage under another state's qualified Health Insurance Portability and Accountability Act health program that was terminated because the individual did not reside in that state and submits an application for pool coverage not later than the 63rd day after the date the coverage described by this subdivision was terminated;

(3)  has been a legally domiciled resident of this state for the preceding 30 days, is a citizen of the United States or has been a permanent resident of the United States for at least three continuous years, and provides to the pool:

(A)  a notice of rejection of, or refusal to issue, substantially similar individual health benefit plan coverage from a health benefit plan issuer, other than an insurer that offers only stop-loss, excess loss, or reinsurance coverage, if the rejection or refusal was for health reasons;

(B)  certification from an agent or salaried representative of a health benefit plan issuer that states that the agent or salaried representative cannot obtain substantially similar individual coverage for the individual from any health benefit plan issuer that the agent or salaried representative represents because, under the underwriting guidelines of the health benefit plan issuer, the individual will be denied coverage as a result of a medical condition of the individual;

(C)  an offer to issue substantially similar individual coverage only with conditional riders; or

(D)  [a notice of refusal by a health benefit plan issuer to issue substantially similar individual coverage except at a rate exceeding the pool rate; or

[(E)] a diagnosis of the individual with one of the medical or health conditions on the list adopted under Section 1506.154; or

(4)  provides to the pool evidence that, on the date of application to the pool, the individual is certified as eligible for trade adjustment assistance or for pension benefit guaranty corporation assistance, as provided by the Trade Adjustment Assistance Reform Act of 2002 (Pub. L. No. 107-210).

SECTION 6.  Subsection (a), Section 1506.155, Insurance Code, is amended to read as follows:

(a)  Except as provided by this section and Section 1506.056, pool coverage excludes charges or expenses incurred before the first anniversary of the effective date of coverage with regard to any condition for which:

(1)  the existence of symptoms would cause an ordinarily prudent person to seek diagnosis, care, or treatment within the six-month period preceding the effective date of coverage; or

(2)  medical advice, care, or treatment was recommended or received during the six-month period preceding the effective date of coverage.

SECTION 7.  Subchapter F, Chapter 1506, Insurance Code, is amended by adding Section 1506.2522 to read as follows: