Sec. 1506.2522. ANNUAL REPORT TO BOARD: ENROLLED INDIVIDUALS. (a) Each health benefit plan issuer shall report to the board the number of residents of this state enrolled, as of December 31 of the previous year, in the issuer's health benefit plans providing coverage for residents in this state, as:

(1) an employee or retired employee under a group health benefit plan; or

(2) an individual policyholder or subscriber.

(b) In determining the number of individuals to report under Subsection (a)(1), the health benefit plan issuer shall include each employee or retired employee for whom a premium is paid and coverage is provided under an excess loss, stop-loss, or reinsurance policy issued by the issuer to an employer or group health benefit plan providing coverage for employees or retired employees in this state. A health benefit plan issuer providing excess loss insurance, stop-loss insurance, or reinsurance, as described by this subsection, for a primary health benefit plan issuer may not report individuals reported by the primary health benefit plan issuer.

(c) Ten employees or retired employees covered by a health plan issuer under a policy of excess loss insurance, stop-loss insurance, or reinsurance count as one employee or retired employee for purposes of determining that health plan issuer's assessment.

(d) In determining the number of individuals to report under this section, the health benefit plan issuer shall exclude:

(1) the dependents of the employee or retired employee or an individual policyholder or subscriber; and

(2) individuals who are covered by the health benefit plan issuer under a Medicare supplement benefit plan subject to Chapter 1652.

(e) This section expires September 1, 2007.

SECTION 8. Section 1506.253, Insurance Code, is amended to read as follows:

Sec. 1506.253. ASSESSMENTS TO COVER NET LOSSES. (a)The board shall recover any net loss of the pool by assessing each health benefit plan issuer an amount determined annually by the board based on information in annual statements, the health benefit plan issuer's annual report to the board under Sections [Section] 1506.2521 and 1506.2522, and any other reports required by and filed with the board.

(b) The amount of a health benefit plan issuer's assessment is computed by multiplying the total amount required to be assessed against all health benefit plan issuers by a number computed by dividing:

[(1) the gross premiums collected by the issuer for health benefit plans in this state during the preceding calendar year; by

(2) the gross premiums collected by all issuers for health benefit plans in this state during the preceding calendar year.

(b-1) Notwithstanding Subsection (b), to compute the amount of a health benefit plan issuer's assessment, if any, the board shall:

(1) divide the total amount to be assessed by the total number of enrolled individuals reported by all health benefit plan issuers under Section 1506.2522 as of the preceding December 31 to determine the per capita amount; and

(2) multiply the number of enrolled individuals reported by the health benefit plan issuer under Section 1506.2522 as of the preceding December 31 by the per capita amount to determine the amount assessed to that health benefit plan issuer.

(b-2) Subsection (b-1) and this subsection expire September 1, 2007.

(c) A [For purposes of the assessment under this subchapter, gross health benefit plan premiums do not include premiums collected for:

[(1) coverage under a Medicare supplement benefit plan subject to Chapter 1652;

[(2) coverage under a] small employer health benefit plan subject to Subchapters A-H, Chapter 1501, is not subject to an assessment under this subchapter[; or

[(3) coverage or insurance listed in Section 1506.002(b)].

SECTION 9. Chapter 1506, Insurance Code, is amended by adding Subchapter G to read as follows:

SUBCHAPTER G. SUBROGATION RIGHTS OF POOL

Sec. 1506.301. SUBROGATION TO RIGHTS AGAINST THIRD PARTY. The pool:

(1) is subrogated to the rights of an individual covered by the pool to recover against a third party costs for an injury or illness for which the third party is liable under contract, tort law, or other law that have been paid by the pool on behalf of the covered individual; and

(2) may enforce that liability on behalf of the individual.

Sec. 1506.302. BENEFITS NOT PAYABLE; ADVANCE OF BENEFITS AUTHORIZED. (a) Under coverage provided by the pool, benefits are not payable for an injury or illness for which a third party may be liable under contract, tort law, or other law.

(b) Notwithstanding Subsection (a), the pool may advance to a covered individual the benefits provided under the pool coverage for medical expenses resulting from the injury or illness, subject to the pool's right to subrogation and reimbursement under this subchapter.

Sec. 1506.303. REIMBURSEMENT OF POOL REQUIRED. (a) Subject to Section 1506.305, the amount recovered by a covered individual in an action against a third party who is liable for the injury or illness must be used to reimburse the pool for benefits for medical expenses that have been advanced under Section 1506.302.

(b) The amount of reimbursement required by this section is not reduced by the application of the doctrine established at common law relating to adequate compensation of insureds and commonly referred to as the "made whole" doctrine.

USA_00223690

(c)  Subject to Section 1506.305, the pool shall treat any amount recovered by a covered individual in an action against a third party who is liable for the injury or illness that exceeds the amount of the reimbursement required under this section as an advance against future medical benefits for the injury or illness that the individual would otherwise be entitled to receive under pool coverage.

Sec. 1506.304.  RESUMPTION  OF  PAYMENT  OF  BENEFITS.  If the amount treated as an advance under Section 1506.303(c) is adequate to cover all future medical costs for the covered individual's injury or illness, the pool is not required to resume the payment of benefits. If the advance is insufficient, the pool shall resume the payment of benefits when the advance is exhausted.

Sec. 1506.305.  ATTORNEY 'S FEE FOR REPRESENTATION OF POOL 'S INTEREST. (a) For purposes of this section, the pool's recovery includes:

(1)  the amount recovered by the pool in the action; and

(2)  the amount of the covered individual's total recovery that must be used to reimburse the pool or that is treated as an advance for future medical costs under Section 1506.303(c).

(b)  If the pool's interest is not actively represented by an attorney in a third-party action under this subchapter, the pool shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the pool. In the absence of an agreement, the court shall award to the attorney payable out of the pool's recovery:

(1)  a reasonable fee for recovery of the pool's interest that may not exceed one-third of the pool's recovery; and

(2)  a proportionate share of the reasonable expenses incurred.

(c)  An attorney who represents a covered individual and is also to represent the interests of the pool under this subchapter must make a full written disclosure to the covered individual before employment as an attorney by the pool. The covered individual must acknowledge the disclosure and consent to the representation. A signed copy of the disclosure shall be provided to the covered individual and the pool. A copy of the disclosure with the covered individual's consent must be filed with the pleading before a judgment is entered and approved by the court. The attorney may not receive a fee under this section to which the attorney is otherwise entitled under an agreement with the pool unless the attorney complies with the requirements of this subsection.

(d)  If an attorney actively representing the pool's interest actively participates in obtaining a recovery, the court shall award and apportion between the covered individual's and the pool's attorneys a fee payable out of the pool's subrogation recovery. In apportioning the award, the court shall consider the benefit accruing to the pool as a result of each attorney's service. The total attorney's fees may not exceed one-third of the pool's recovery.

SECTION 10. (a) The legislature shall establish a joint interim committee to study the deficit resulting from the net losses of the Texas Health Insurance Risk Pool and to recommend a method or formula for recouping any deficit that apportions the cost of those losses among the largest possible number of users of the health care system.

USA_00223691

(b)  Not later than September 1, 2006, the committee shall report its findings and recommendations to the governor, lieutenant governor, and speaker of the house of representatives.

(c)  The lieutenant governor and speaker shall determine the composition of the committee.

(d)  This section expires September 1, 2007.

SECTION 11. (a) This Act applies only to an application for initial or renewal coverage through the Texas Health Insurance Risk Pool under Chapter 1506, Insurance Code, as amended by this Act, that is filed with that pool on or after the effective date of this Act. An application filed before the effective date of this Act is governed by the law in effect on the date on which the application was filed, and the former law is continued in effect for that purpose.

(b)  Section 1506.155, Insurance Code, as amended by this Act, and Subchapter G, Chapter 1506, Insurance Code, as added by this Act, apply only to pool coverage that is delivered, issued for delivery, or renewed on or after the effective date of this Act. Pool coverage that is delivered, issued for delivery, or renewed before the effective date of this Act is governed by the law as it existed immediately before that date, and that law is continued in effect for that purpose.

(c)  The change in law made by this Act to Section 1506.002(b), Insurance Code, applies to an assessment under Subchapter F, Chapter 1506, Insurance Code, for a calendar year beginning on or after the effective date of this Act. An assessment for a net loss for a calendar year before the effective date of this Act is governed by the law in effect during the calendar year for which the assessment is made, and the former law is continued in effect for that purpose.

(d)  The board of directors of the Texas Health Insurance Risk Pool shall refund an assessment amount paid for a period after September 30, 2005, that is attributable to those coverages that are exempt from the assessment because of the change in law made by this Act to Section 1506.002(b), Insurance Code, at the time the final net loss for the period for which the assessment is made is determined.

(e)  Section 1506.253, Insurance Code, as amended by this Act, applies to an assessment under Subchapter F, Chapter 1506, Insurance Code, for a calendar year beginning on or after January 1, 2006. An assessment for a calendar year before January 1, 2006, is governed by the law in effect during the period for which the assessment is made, and the former law is continued in effect for that purpose.

(f)  Notwithstanding Subsection (a) of this section and Section 1506.158, Insurance Code, an individual who is covered by the Texas Health Insurance Risk Pool on the effective date of this Act and who, because of the change in law made by this Act to Subsection (a), Section 1506.152, Insurance Code, would no longer be eligible for coverage, continues to be eligible for coverage from the pool until the individual's coverage is terminated for a reason other than that change in law.

SECTION 12. (a) In accordance with Subsection (c), Section 311.031, Government Code, which gives effect to a substantive amendment enacted by the same legislature that codifies the amended statute, the text of Subsection (b), Section 1506.002, Insurance Code, as set out in Section 1 of this Act, Subsection

USA_00223692

(a), Section 1506.152, Insurance Code, as set out in Section 3 of this Act, and Subsections (a) and (c), Section 1506.253, Insurance Code, as set out in Section 6 of this Act, gives effect to changes made by Sections 1, 6, and 11, Chapter 840, Acts of the 78th Legislature, Regular Session, 2003.

(b)   To the extent of any conflict, Subsection (b), Section 1506.002, Insurance Code; Subsection (a), Section 1506.109, Insurance Code; Subsection (a), Section 1506.152, Insurance Code; Subsection (a), Section 1506.155, Insurance Code; Section 1506.253, Insurance Code; Chapter 1506, Insurance Code prevails over another Act of the 79th Legislature, Regular Session, 2005, relating to nonsubstantive additions to and corrections in enacted codes.

SECTION 13.  Subsection (b), Section 1506.002, Insurance Code; Subsection (a), Section 1506.109, Insurance Code; Subsection (a), Section 1506.152, Insurance Code; Subsection (a), Section 1506.155, Insurance Code; Section 1506.253, Insurance Code; Chapter 1506, Insurance Code takes effect January 1, 2006.

Amendment No. 3 was adopted.

**SB 265**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

### SB 244 ON SECOND READING
### (Orr - House Sponsor)

**SB 244**, A bill to be entitled An Act relating to priority of payment relating to property owners' association assessments.

**SB 244** was read second time earlier today and was postponed until this time.

Representative Orr moved to postpone consideration of **SB 244** until 4:15 p.m. today.

The motion prevailed.

### MAJOR STATE CALENDAR
### (consideration continued)

### SB 299 ON SECOND READING
### (Menendez - House Sponsor)

**SB 299**, A bill to be entitled An Act relating to the exception from required public disclosure of the name of an applicant for the position of city manager of certain home-rule municipalities.

USA_00223693

### SB 299 - POINT OF ORDER

Representative Dunnam raised a point of order against further consideration of **SB 299** under Rule 4, Section 32(c) of the House Rules on the grounds that the bill analysis is incorrect.

The chair sustained the point of order.

The ruling precluded further consideration of **SB 299**.

### MEMORANDUM BY REPRESENTATIVE DUNNAM

The bill analysis incorrectly states that the bill delegates rulemaking authority to board in Section 19. The bill analysis must contain "an analysis of the content of the bill or resolution." House Rule 4, Section 32(c)(2) (2005).

The analysis section states that the bill applies to a "municipality having a population of more than 500,000 and operating under a council-manager form of government[.]" This is incorrect. The bill applies only to a "municipality having a population of more than one million and operating under a council-manager form of government[.]" House Committee Report, page 1, lines 11-12.

Thus, the analysis does not state the content of the bill, but the content of an amendment to be proposed. It is not a foregone conclusion that the committee amendment will be adopted or even offered and cannot be part of the content of the bill until that time. Thus, the bill analysis is incorrect and the committee report is defective.

For the above reasons, the point of order should be sustained.

### SB 442 ON SECOND READING
### (Rose - House Sponsor)

**SB 442**, A bill to be entitled An Act relating to immunity from liability for certain civil actions and civil actions against sales agents.

**SB 442** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 451 ON SECOND READING
### (Hartnett - House Sponsor)

**SB 451**, A bill to be entitled An Act relating to the qualifications for service as a grand or petit juror and challenges for cause.

**SB 451** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 573 ON SECOND READING
### (Casteel - House Sponsor)

**SB 573**, A bill to be entitled An Act relating to the award of certain highway maintenance contracts by the Texas Department of Transportation.

USA_00223694

**Amendment No. 1**

On behalf of Representative Chavez, Representative Casteel offered the following amendment to **SB 573**:

Amend **SB 573** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS as appropriate:

SECTION __. Section 222.053, Transportation Code, is amended by adding Subsections (f), (g), and (h) to read as follows:

(f) The commission shall certify a county as an economically disadvantaged county on an annual basis as soon as possible after the comptroller reports on the economic indicators listed under Subsection (a). A county certified under this section is eligible for an adjustment under Subsection (c)(2).

(g) The commission shall determine whether to make an adjustment under Subsection (c)(2) at the time a political subdivision that consists of all or a portion of an economically disadvantaged county submits a proposal to construct, maintain, or extend a highway or for another type of highway project.

(h) The commission may delegate any of its duties or powers under this section to the director or the director's designee.

Amendment No. 1 was adopted.

**SB 573**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Anderson, Flynn, and Leibowitz recorded voting no.)

### SB 593 ON SECOND READING
### (Anchia - House Sponsor)

**SB 593**, A bill to be entitled An Act relating to the governor's study of emerging technology and economic development.

**Amendment No. 1**

Representative Hartnett offered the following amendment to **SB 593**:

Amend **SB 593** by amending current Section 2 and inserting Section 3 as follows, and renumbering the remaining sections of the bill accordingly:

SECTION 2. Section 1 of t~~T~~his Act expires September 1, 2007.

SECTION 3. Section 39.107, Utilities Code, is amended by amending Subsections (a) and (b) and by adding Subsection (h) to read as follows:

(a) On introduction of customer choice in a service area, metering services for the area shall continue to be provided by the transmission and distribution utility affiliate of the electric utility that was serving the area before the introduction of customer choice. Metering services provided to commercial and industrial customers that are required by the independent system operator to have an interval data recorder meter may [~~shall~~] be provided on a competitive basis [~~beginning on January 1, 2004~~].

USA_00223695

(b)   Metering services provided to residential customers and to nonresidential customers other than those required by the independent system operator to have an interval data recorder meter shall continue to be provided by the transmission and distribution utility affiliate of the electric utility that was serving the area before the introduction of customer choice [until the later of September 1, 2005, or the date on which at least 40 percent of those residential customers are taking service from unaffiliated retail electric providers]. Retail electric providers serving residential and nonresidential customers other than those required by the independent system operator to have an interval data recorder meter may request that the transmission and distribution utility provide specialized meters, meter features, or add-on accessories so long as they are technically feasible and generally available in the market and provided that the retail electric provider pays the differential cost of such a meter or accessory. Metering and billing services provided to residential customers shall be governed by the customers safeguards adopted by the commission under Section 39.10. All meter data, including all data generated, provided, or otherwise made available, by advanced meters and meter information networks, shall belong to a customer, including data used to calculate charges for service, historical load data, and any other proprietary customer information. A customer may authorize its data to be provided to one or more retail electric providers under rules and charges established by the commission.

(h)   The commission shall establish a nonbypassable surcharge for an electric utility or transmission and distribution utility to use to recover reasonable and necessary costs incurred in deploying advanced metering and meter information networks to residential customers and nonresidential customers other than those required by the independent system operator to have an interval data recorder meter. The commission shall ensure that the nonbypassable surcharge reflects a deployment of advanced meters that is no more than one-third of the utility's total meters over each calendar year, and shall ensure that the nonbypassable surcharge does not result in the utility recovering more than its actual, fully allocated meter and meter information network costs. The expenses must be allocated to the customer classes receiving the services, based on the electric utility's most recently approved tariffs.

Amendment No. 1 was withdrawn.

**SB 593** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk.   Members registering votes are as follows:. Harper-Brown recorded voting no.)

### SB 623 ON SECOND READING
### (Peña - House Sponsor)

**SB 623**, A bill to be entitled An Act relating to the authorized charges for providing a copy of public information requested under the public information law.

USA_00223696

**Amendment No. 1**

Representative Peña offered the following amendment to **SB 623**:

Amend **SB 623** (house committee printing), in Section 1 of the bill as follows:

(1)  In Section 552.263(e) (page 1, line 8), strike "E" and insert "F".

(2)  In Section 552.263(f) (page 1, line 16), strike "(c)" and insert "(a)".

Amendment No. 1 was adopted.

**SB 623**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 626 ON SECOND READING
### (J. Davis - House Sponsor)

**SB 626**, A bill to be entitled An Act relating to medical assistance in certain alternative community-based care settings.

**SB 626** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Harper-Brown and Laubenberg recorded voting no.)

### HR 2080 - ADOPTED
### (by Eiland)

Representative Eiland moved to suspend all necessary rules to take up and consider at this time **HR 2080**.

The motion prevailed.

The following resolution was laid before the house:

**HR 2080**, In memory of U.S. Army Private First Class Wesley Robert Riggs of Beach City.

**HR 2080** was read and was unanimously adopted by a rising vote.

### CSSB 712 ON SECOND READING
### (R. Cook - House Sponsor)

**CSSB 712**, A bill to be entitled An Act relating to the legislature's goal for energy efficiency and related energy efficiency programs.

**Amendment No. 1**

Representatives Bonnen and Hamric offered the following amendment to **CSSB 712**:

Amend **CSSB 712** as follows:

(1)  On page 2, line 23, add new SECTION 2 and renumber accordingly:

SECTION 2.  Amend section 35.004 of the Utilities Code by adding a new Subsection (f) to read as follows:

USA_00223697

(f)  In order to properly reflect the infrastructure costs and benefits of energy efficiency and other technologies and resources that do not require transmission infrastructure, the commission shall develop and implement rules to ensure that a power generation company that interconnects with the transmission facilities of an electric utility, municipally owned utility, or electric cooperative in ERCOT bears an appropriate share of the costs of transmission additions and upgrades made necessary by the power generation company's interconnection to and use of the transmission system and transmission additions and upgrades associated with a competitive renewable energy zone.  The rules shall be competitively neutral and consistent with the purposes of this subtitle.

Amendment No. 1 was adopted.

**CSSB 712**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: A. Allen, Herrero, and Leibowitz recorded voting no.)

### LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence temporarily for today to attend a meeting of the conference committee on **HB 7** and **SB 5**:

Zedler on motion of Homer.

### POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

### SB 155 ON SECOND READING
### (Eiland - House Sponsor)

**SB 155**, A bill to be entitled An Act relating to the quality assurance accreditation process for certain entities that offer health benefit plans.

**SB 155** was read second time earlier today, amended, and was postponed until this time.

**Amendment No. 2**

On behalf of Representative Isett, Representative Eiland offered the following amendment to **SB 155**:

Amend **SB 155** on Page 8, line 20, by inserting the following sections renumbering accordingly:

SECTION ___.  Subtitle F, Title 8, Insurance Code, is amended by adding Chapter 1457 to read as follows:

CHAPTER 1457 PROVISIONAL CREDENTIALING STATUS

Sec. 1457.001 DEFINITIONS. In this chapter:

(1) "Enrollee" means an individual who is eligible to receive health care services through a health benefit plan.

(2) "Physician"  means an individual licensed to practice medicine in this state under the authority of Title 3, Subtitle B, Occupations Code.

(3) "Provider network" means a health benefit plan under which health care services are provided to enrollees through contracts with physicians and that requires those enrollees to use physicians participating in the plan and procedures covered by the plan. The term includes a network operated by:

(A) a health maintenance organization;

(B) a preferred provider organization; or

(C) another entity that issues a health benefit plan, including an insurance company.

Sec. 1457.002.  APPLICABILITY OF CHAPTER.  This chapter applies to any health benefit plan covered by Section 1456.002, Insurance Code.

Sec. 1457.003. PROVISIONAL CREDENTIALING STATUS.

(a)  A health benefit plan shall have a process for provisional credentialing status in compliance with the requirements of the National Committee for Quality Assurance.

(b)  A health benefit plan shall grant provisional credentialing status to a physician:

(1)  submits a completed standard credentialing application to the health benefit plan;

(2)  meets the health plan's requirements for provisional credentialing; and

(3)  joins as a partner, shareholder or employee of another physician who is contracted with a health benefit plan to provide medical or healthcare services to enrollees.

(c)  A health benefit plan must complete the credentialing process within sixty (60) calendar days of the date a physician is granted provisional status.  In the event the physician does not meet the health plan's credentialing standards, the physician must be provided the same appeal process as any other physician applying for participation with the health benefit plan.

Amendment No. 2 was adopted.

**SB 155**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

**MAJOR STATE CALENDAR**
**(consideration continued)**

**CSSB 771 ON SECOND READING**
**(Hartnett - House Sponsor)**

**CSSB 771**, A bill to be entitled An Act relating to tax increment financing.

**Amendment No. 1**

Representative Menendez offered the following amendment to **CSSB 771**:

Amend **CSSB 771** (house committee printing) by inserting the following appropriately numbered section and renumbering the subsequent sections of the bill accordingly:

SECTION ____. Chapter 311, Tax Code, is amended by adding Section 311.0087 to read as follows:

Sec. 311.0087. RESTRICTION ON POWERS OF CERTAIN MUNICIPALITIES. (a) this section applies only to a proposed reinvestment zone:

(1) the designation of which is requested in a petition submitted under Section 311.005(a) (5) before July 31, 2004, to the governing body of a home rule municipality that:

(A) has a population of more than 1.1 million; and

(B) is located primarily in a county with a population of 1.5 million or less; and

(C) as created at least 20 reinvestment zones under this chapter; and

(2) that is the subject of a resolution of intent that was adopted before October 31, 2004 by the governing body of the municipality.

(b) If the municipality imposes a fee of more than $25,000 for processing the petition, the municipality may not require a property owner who submitted the petition, as a condition of designating the reinvestment zone or approving a development agreement, interlocal agreement, or project plan for the proposed reinvestment zone:

(1) to waive any rights of the owner under Chapter 245, Local Government Code, or under any agreed order or settlement agreement to which the municipality is a party;

(2) to dedicate more than 20 percent of the owner's land in the area described in the petition as open-space land; or

(3) to use a nonconventional use pattern for a development to be located within the proposed reinvestment zone.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Turner offered the following amendment to **CSSB 771**:

Amend **CSSB 771** (house committee printing) as follows:

(1) In the recital to SECTION 3 of the bill (page 2, line 26), strike "Subsection (g)" and substitute "Subsections (g), (h), and (i)".

(2) In SECTION 3 of the bill, immediately following proposed Section 311.010(g), Tax Code (page 3, between lines 3 and 4), insert the following:

(h) Subject to the approval of the governing body of the municipality that created the zone, the board of directors of a reinvestment zone, as necessary or convenient to implement the project plan and reinvestment zone financing plan and achieve their purposes, may establish and provide for the administration of one or more programs for the public purposes of developing and diversifying the economy of the zone, eliminating unemployment and underemployment in the zone, and developing or expanding transportation, business, and commercial activity in the zone, including programs to make grants and loans from the tax increment fund of the zone in an aggregate amount not to exceed the amount of the tax increment produced by the municipality and paid into the tax increment

USA_00223700

fund for the zone for activities that benefit the zone and stimulate business and commercial activity in the zone. For purposes of this subsection, on approval of the municipality, the board of directors of the zone has all the powers of a municipality under Chapter 380, Local Government Code.

(i) The board of directors of a reinvestment zone or a local government corporation administering a reinvestment zone may contract with the municipality that created the zone to allocate from the tax increment fund for the zone an amount equal to the tax increment produced by the municipality and paid into the tax increment fund for the zone to pay the incremental costs of providing municipal services incurred as a result of the creation of the zone or the development or redevelopment of the land in the zone, regardless of whether the costs of those services are identified in the project plan or reinvestment zone financing plan for the zone.

(3) Insert the following appropriately numbered section of the bill and renumber the subsequent sections of the bill accordingly:

SECTION __. Section 311.013, Tax Code, is amended by amending Subsection (b) and adding Subsections (l) and (m) to read as follows:

(b) Each taxing unit shall pay into the tax increment fund for the zone an amount equal to the tax increment produced by the unit, less the sum of:

(1) property taxes produced from the tax increments that are, by contract executed before the designation of the area as a reinvestment zone, required to be paid by the unit to another political subdivision; and

(2) for a taxing unit other than the municipality that created the zone, a portion, not to exceed 15 percent, of the tax increment produced by the unit as provided by the reinvestment zone financing plan or a larger portion as provided by Subsection (f).

(l) The governing body of a municipality that designates an area as a reinvestment zone may determine in the designating ordinance adopted under Section 311.003 or in the ordinance adopted under Section 311.011 approving the reinvestment zone financing plan for the zone the portion of the tax increment produced by the municipality that the municipality is required to pay into the tax increment fund for the zone. If a municipality does not determine the portion of the tax increment produced by the municipality that the municipality is required to pay into the tax increment fund for a reinvestment zone, the municipality is required to pay into the fund for the zone the entire tax increment produced by the municipality, except as provided by Subsection (b)(1).

(m) The governing body of a municipality that is located in a county with a population of more than 1.4 million but less than 2.1 million or in a county with a population of 3.3 million or more by ordinance may reduce the portion of the tax increment produced by the municipality that the municipality is required to pay into the tax increment fund for the zone. The municipality may not reduce under this subsection the portion of the tax increment produced by the municipality that the municipality is required to pay into the tax increment fund for the zone unless the municipality provides each county that has entered into an agreement with the municipality to pay all or a portion of the county's tax increment into the fund an opportunity to enter into an agreement with the municipality to reduce the portion

USA_00223701

of the tax increment produced by the county that the county is required to pay into the tax increment fund for the zone by the same proportion that the portion of the municipality's tax increment that the municipality is required to pay into the fund is reduced. The portion of the tax increment produced by a municipality that the municipality is required to pay into the tax increment fund for a reinvestment zone, as reduced by the ordinance adopted under this subsection, together with all other revenues required to be paid into the fund, must be sufficient to complete and pay for the estimated costs of projects listed in the reinvestment zone financing plan and pay any tax increment bonds or notes issued for the zone, and any other obligations of the zone.

Amendment No. 2 was adopted.

## LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence temporarily for today to attend a meeting of the conference committee on **HB 7** and **SB 5**:

Rose on motion of Hopson.

## CSSB 771 - (consideration continued)

**Amendment No. 3**

Representative Puente offered the following amendment to **CSSB 771**:

**CSSB 771** is amended in Section 1 of the bill, in amended Section 311.005(a), Tax Code, by striking Section 311.005(a)(2) (page 2, lines 6-9), substituting the following, and renumbering the remaining subdivisions of Subsection (a) accordingly:

[(2)  be predominantly open and,]

Amendment No. 3 was withdrawn.

**CSSB 771**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

## CSSB 806 ON SECOND READING
## (Swinford - House Sponsor)

**CSSB 806**, A bill to be entitled An Act relating to appointed members of the State Soil and Water Conservation Board.

**CSSB 806** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

## SB 821 ON SECOND READING
## (Hamric - House Sponsor)

**SB 821**, A bill to be entitled An Act relating to an administrative cost for the enforcement of the collection of tolls in certain counties.

**Amendment No. 1 (Committee Amendment No. 1)**

On behalf of Representative Callegari, Representative Hamric offered the following committee amendment to **SB 821**:

Amend **SB 821** as follows:

1. After SUBSECTION 1, page 1, line 18, insert new SECTION 2 as follows:

SECTION 2.   Section 284.2031, Transportation Code, is amended by amending Subsection (c) and adding Subsection (d) to read as follows:

(c)  In a county with a population of 3.3 million or more, money [Money] collected under Subsection (a) shall be deposited in the county treasury in a special fund to be administered by the county attorney or district attorney. Expenditures from this fund shall be at the sole discretion of the attorney and may be used only to defray the salaries and expenses of the prosecutor's office, but in no event may the county attorney or district attorney supplement his or her own salary from this fund.

(d)  In a county with a population of less than 3.3 million, money collected under Subsection (a) shall be deposited in the general fund of the county.

2. Renumber the subsequent Sections accordingly.

Amendment No. 1 was adopted.

A record vote was requested.

**SB 821**, as amended, failed to pass to third reading by (Record 795): 32 Yeas, 91 Nays, 7 Present, not voting.

Yeas — Blake; Brown, B.; Brown, F.; Callegari; Corte; Crownover; Davis, J.; Delisi; Denny; Geren; Hamilton; Hamric; Hochberg; Isett; Kolkhorst; Laney; McClendon; Menendez; Morrison; Mowery; Orr; Otto; Peña; Pitts; Reyna; Seaman; Smith, W.; Smithee; Vo; West; Wong; Woolley.

Nays — Allen, A.; Allen, R.; Alonzo; Anchia; Anderson; Bailey; Baxter; Berman; Bohac; Branch; Burnam; Campbell; Casteel; Castro; Chavez; Coleman; Cook, B.; Cook, R.; Crabb; Davis, Y.; Dawson; Deshotel; Driver; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flynn; Frost; Gallego; Gattis; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Grusendorf; Guillen; Haggerty; Hardcastle; Hegar; Herrero; Homer; Hope; Hopson; Hunter; Hupp; Jones, D.; Jones, J.; Keel(C); Keffer, B.; King, T.; Kuempel; Laubenberg; Leibowitz; Luna; Martinez; Martinez Fischer; McReynolds; Merritt; Moreno, P.; Naishtat; Nixon; Noriega, M.; Paxton; Phillips; Pickett; Puente; Quintanilla; Raymond; Riddle; Ritter; Rodriguez; Smith, T.; Solis; Strama; Swinford; Talton; Taylor; Thompson; Truitt; Turner; Uresti; Van Arsdale; Veasey; Villarreal.

Present, not voting — Mr. Speaker; Bonnen; Hilderbran; Howard; Jackson; Madden; Miller.

Absent, Excused — Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons; Zedler.

USA_00223703

Absent — Chisum; Dukes; Flores; Harper-Brown; Hartnett; Hill; Hughes; Keffer, J.; King, P.; Krusee; McCall; Oliveira; Olivo; Straus.

### STATEMENTS OF VOTE

I was shown voting no on Record No. 795. I intended to vote yes.

Edwards

When Record No. 795 was taken, I was in the house but away from my desk. I would have voted no.

Harper-Brown

When Record No. 795 was taken, I was in the house but away from my desk. I would have voted no.

Olivo

### CSSB 874 ON SECOND READING
### (Hupp - House Sponsor)

**CSSB 874**, A bill to be entitled An Act relating to quality-of-care monitoring visits to long-term care facilities.

**CSSB 874** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero and Leibowitz recorded voting no.)

### SB 1044 ON SECOND READING
### (Eiland - House Sponsor)

**SB 1044**, A bill to be entitled An Act relating to efforts by coastal counties to mitigate coastal erosion and improve public access to public beaches; authorizing the issuance of bonds by coastal counties.

**Amendment No. 1**

Representative Eiland offered the following amendment to **SB 1044**:

Amend **SB 1044** (House Committee Printing) as follows:

(1)  In SECTION 2 of the bill, in added Section 33.653, Natural Resources Code (page 4, lines 13-14), strike Subsection (b) and substitute the following:

   (b)  The fund consists of:

      (1)  gifts and grants; and

      (2)  appropriations of money to the fund by the legislature.

(2)  In SECTION 2 of the bill, in added Section 33.654, Natural Resources Code (page 4, line 26, through page 5, line 4), strike Subsection (a) and substitute the following:

   (a)  The coastal protection and improvement fund shall be used only to make a qualified payment to a coastal county sponsoring a qualified project under this subchapter.

(3)  In SECTION 2 of the bill, in added Section 33.654, Natural Resources Code (page 5, lines 13-22), strike Subsections (d) and (e).

USA_00223704

(4) In SECTION 2 of the bill, in added Subsection (b), Section 33.655, Natural Resources Code (page 5, line 27), strike "or equalization payment under Section 33.659".

(5) In SECTION 2 of the bill, in Section 33.656, Natural Resources Code (page 6, line 4), strike "(a)".

(6) In SECTION 2 of the bill, in added Subdivision (5), Subsection (a), Section 33.656, Natural Resources Code (page 6, line 15), strike "except as provided by Subsection (b),".

(7) In SECTION 2 of the bill, in added Section 33.656, Natural Resources Code (page 6, lines 17-18), strike Subsection (b).

(8) In SECTION 2 of the bill, strike added Section 33.659, Natural Resources Code (page 8, line 12, through page 9, line 1), and renumber subsequent sections in added Subchapter I, Natural Resources Code, accordingly.

(9) Strike SECTION 3 of the bill (page 11, line 15, through page 12, line 12) and renumber subsequent SECTIONS of the bill accordingly.

(10) In SECTION 4 of the bill (page 12, line 13), strike "The Commissioner" and substitute "To the extent money is available, the Commissioner".

Amendment No. 1 was adopted.

**SB 1044**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 1055 ON SECOND READING
### (J. Davis - House Sponsor)

**SB 1055**, A bill to be entitled An Act relating to an alternative method of satisfying certain licensing requirements for assisted living facilities.

**Amendment No. 1**

Representative J. Davis offered the following amendment to **SB 1055**:

Amend **SB 1055** (House Committee Report) by inserting the following SECTION and renumbering subsequent SECTIONS accordingly:

SECTION ____. Subchapter D, Chapter 247, Health and Safety Code, is amended by adding Section 247.069 to read as follows:

Sec. 247.069. CONSUMER CHOICE FOR ASSISTED LIVING IN COMMUNITY CARE PROGRAMS. The community based alternatives program and the residential care programs, which provide an assisted living option to consumers, shall provide a consumer the opportunity to choose an assisted living facility that meets the department's licensing standards relating to facility construction without regard to the number of units in the facility, if:

(1) consumers are advised of all other community care options; and

(2) the facility:

(A) has never been licensed by the department as anything other than an assisted living facility;

(B) is not physically connected to a skilled nursing facility;

USA_00223705

(C)  was constructed before September 1, 2005; and

(D)  otherwise meets all other community care program standards.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative J. Davis offered the following amendment to **SB 1055**:

Amend **SB 1055** (House Committee printing) as follows:

(1)  Insert the following appropriately numbered SECTIONS and renumber the subsequent SECTIONS accordingly:

SECTION ___. (a) The Health and Human Services Commission shall convene a workgroup composed of providers, consumer advocates, building inspectors, fire marshals, and other individuals as appropriate to study state laws relating to the delivery of personal care services to four or more persons who are unrelated to the proprietor in settings that are not licensed as assisted living facilities, but are instead settings where residents receive personal care services through one or more home and community support services agencies. The workgroup shall consider:

(1)  state licensing laws;

(2)  the nature, extent, and differences of consumer needs and preferences;

(3)  the qualifications of persons authorized to provide personal care services; and

(4)  the settings in which personal care services are provided, including the life safety codes applicable to those settings.

(b)  Not later than December 1, 2006, the workgroup, with the assistance of the Health and Human Services Commission, shall prepare and deliver a report and make recommendations on the issues studied to the governor, the lieutenant governor, and the speaker of the house of representatives.

(c)  Notwithstanding any other law, the Department of Aging and Disability Services and the attorney general may not initiate or continue any action or investigation that seeks to enjoin or otherwise impose any sanction against a person for operating an assisted living facility without a license if the person offers personal care services to four or more persons who are unrelated to the proprietor in a setting that is not licensed as an assisted living facility, but is instead a setting where residents receive personal care services through one or more home and community support services agencies.

(d)  This section expires September 1, 2007.

SECTION ___.  Not later than June 1, 2007, the Department of Aging and Disability Services shall accept an accreditation survey and implement the procedures required by Section 247.032, Health and Safety Code, as added by this Act.

(2)  Strike SECTION 2 of the bill and substitute the following:

SECTION ___.  This Act takes effect September 1, 2005.

USA_00223706

**Amendment No. 3**

Representative J. Davis offered the following amendment to Amendment No. 2:

Amend Amendment No. 2 to **SB 1055** by Davis of Harris by striking page 1, line 4 through page 2, line 8, and substituting the following:

SECTION ___. (a) The Health and Human Services Commission shall convene a workgroup composed of providers, consumer advocates, building inspectors, fire marshals, and other individuals as appropriate to study state laws relating to the delivery of personal care services to four or more persons who are unrelated to the proprietor in settings that are not licensed as assisted living facilities, but are instead settings where one or more residents receive personal care services through one or more home and community support services agencies. The purpose of the study is to perform a comprehensive review of the changing environment in the personal care services delivery system to determine if changes in state licensing and regulation are warranted, and if so, what changes should be considered. The workgroup shall consider, among other things:

(1) state licensing laws;

(2) the nature, extent, and differences of consumer needs and preferences;

(3) the qualifications of persons authorized to provide personal care services; and

(4) the settings in which personal care services are provided, including the life safety codes applicable to those settings.

(b) Not later than December 1, 2006, the workgroup, with the assistance of the Health and Human Services Commission, shall prepare and deliver a report and make recommendations on the issues studied to the governor, the lieutenant governor, and the speaker of the house of representatives.

(c) This section expires February 1, 2007.

Amendment No. 3 was adopted.

Amendment No. 2, as amended, was adopted.

**SB 1055**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero and Leibowitz recorded voting no.)

### SB 1074 ON SECOND READING
### (Callegari - House Sponsor)

**SB 1074**, A bill to be entitled An Act relating to the authority of the Department of Public Safety of the State of Texas or the public safety director to adopt rules in connection with commercial motor vehicles.

**Amendment No. 1**

Representative Callegari offered the following amendment to **SB 1074**:

USA_00223707

Amend **SB 1074** by adding the following appropriately numbered section to the bill and renumbering existing sections accordingly:

SECTION ____. Subsection (a), Section 644.002, Transportation Code, is amended to read as follows:

(a) A federal motor carrier safety regulation prevails over a conflicting provision of this <u>title applicable to a commercial vehicle operated in interstate commerce. A</u> [chapter or a] rule adopted by the director under this chapter <u>prevails over a conflicting provision of a federal motor carrier safety regulation applicable to a commercial vehicle operated in intrastate commerce.</u>

Amendment No. 1 was adopted.

**SB 1074**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 1149 ON SECOND READING
### (Eiland - House Sponsor)

**SB 1149**, A bill to be entitled An Act relating to the electronic transmission of health benefit information between a health benefit plan issuer and a physician or health care provider.

(Krusee in the chair)

**Amendment No. 1**

Representative Eiland offered the following amendment to **SB 1149**:

Amend **SB 1149** (house committee printing) in SECTION 1 of the bill as follows:

(1) In added Section 1274.001, Insurance Code (page 1, between lines 13 and 14), add the following new Subdivision (2) and renumber subdivisions appropriately:

(2) <u>"Health benefit plan" means a group, blanket, or franchise insurance policy, a certificate issued under a group policy, a group hospital service contract, or a group subscriber contract or evidence of coverage issued by a health maintenance organization that provides benefits for health care services. The term does not include:</u>

(A) <u>accident-only or disability income insurance coverage or a combination of accident-only and disability income insurance coverage;</u>

(B) <u>credit-only insurance coverage;</u>

(C) <u>disability insurance coverage;</u>

(D) <u>coverage only for a specified disease or illness;</u>

(E) <u>Medicare services under a federal contract;</u>

(F) <u>Medicare supplement and Medicare Select policies regulated in accordance with federal law;</u>

(G) <u>long-term care coverage or benefits, nursing home care coverage or benefits, home health care coverage or benefits, community-based care coverage or benefits, or any combination of those coverages or benefits;</u>

(H)  coverage that provides limited-scope dental or vision benefits;

(I)  coverage provided by a single service health maintenance organization;

(J)  coverage issued as a supplement to liability insurance;

(K)  workers' compensation insurance coverage or similar insurance coverage;

(L)  automobile medical payment insurance coverage;

(M)  a jointly managed trust authorized under 29 U.S.C. Section 141 et seq. that contains a plan of benefits for employees that is negotiated in a collective bargaining agreement governing wages, hours, and working conditions of the employees that is authorized under 29 U.S.C. Section 157;

(N)  hospital indemnity or other fixed indemnity insurance coverage;

(O)  reinsurance contracts issued on a stop-loss, quota-share, or similar basis;

(P)  liability insurance coverage, including general liability insurance and automobile liability insurance coverage; or

(Q)  coverage that provides other limited benefits specified by federal regulations.

(2)  In added Section 1274.002, Insurance Code (page 3, line 11), between "STATUS." and "Each", insert "(a)".

(3)  In added Section 1274.002, Insurance Code (page 4, between lines 9 and 10), insert Subsection (b) to read as follows:

(b)  Information required to be made available under this section may be made available only to a participating provider who is authorized under state and federal law to receive personally identifiable information on an enrollee or dependent.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Eiland offered the following amendment to **SB 1149**:

Amend **SB 1149** (house committee printing) in SECTION 1 of the bill as follows:

(1)  In added Chapter 1274, Insurance Code (page 3, between lines 9 and 10), insert the following new section:

Sec. 1274.0015.  EXEMPTION.  This chapter does not apply to a single-service health maintenance organization that provides coverage only for dental or vision benefits.

(2)  In added Section 1274.002, Insurance Code (page 3, lines 14-16), strike "and sufficient for the provider to determine at the time of an enrollee's visit information".

Amendment No. 2 was adopted.

**SB 1149**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 1271 ON SECOND READING
### (Eiland - House Sponsor)

**SB 1271**, A bill to be entitled An Act relating to fees for licenses issued by the Parks and Wildlife Department.

**SB 1271** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Laubenberg recorded voting no.)

### SB 1297 ON SECOND READING
### (Talton - House Sponsor)

**SB 1297**, A bill to be entitled An Act relating to the elements of the criminal offense of discharging used oil into water in the state.

**Amendment No. 1**

Representative Hilderbran offered the following amendment to **SB 1297**:

Amend **SB 1297** (house committee printing) as follows:
(1)  Strike the recital to SECTION 2 of the bill (page 1, lines 19 and 20) and substitute the following:
SECTION 2.   Section 7.176, Water Code, is amended by amending Subsection (a) and adding Subsection (e) to read as follows:
(2)  In SECTION 2 of the bill, immediately following amended Section 7.176(a), Water Code (page 3, between lines 5 and 6), insert the following:
(e)  For purposes of this section and Section 11.086, "surface water" means any water resulting from precipitation or from naturally or artificially produced groundwater as the water flows on the surface of the earth in sheet flow or in a natural or manmade conveyance until the water evaporates, flows in to a bay, estuary, sea, or ocean, or returns underground by recharge, absorption, or other natural means.

Amendment No. 1 was adopted.

**SB 1297**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero and Leibowitz recorded voting no.)

### SB 1426 ON SECOND READING
### (Riddle and Solis - House Sponsors)

**SB 1426**, A bill to be entitled An Act relating to fees charged to persons applying for the expunction of certain offenses committed by minors.

**SB 1426** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

**CSSB 1433 ON SECOND READING**
**(Rodriguez - House Sponsor)**

**CSSB 1433**, A bill to be entitled An Act relating to the conditions of employment for firefighters employed by certain districts and entities; providing penalties.

**Amendment No. 1**

Representative Martinez offered the following amendment to **CSSB 1433**:

Amend **CSSB 1433** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION __. Section 143.005, Local Government Code, is amended to read as follows:

Sec. 143.005. STATUS OF EMPLOYEES IF CHAPTER ADOPTED.

(a)  Each fire fighter or police officer serving in a municipality that adopts this chapter and who has been in the service of the municipality for more than six months at the time this chapter is adopted and who is entitled to civil service classification has the status of a civil service employee and is not required to take a competitive examination to remain in the position the person occupies at the time of the adoption.

(b)  Emergency medical services personnel who work in the fire department or another municipal department of a municipality that has adopted this chapter, and whose primary duties are to provide emergency medical services, are considered to be members of the fire department performing fire medical emergency technology who are fire fighters entitled to civil service protection. Such emergency medical services personnel shall not be considered members of the fire fighters' bargaining unit in a municipality that has adopted Chapter 174. Such personnel who have been in the service of the municipality for six months on the later of the date this chapter is adopted, or this subsection is added by amendment, have the status of civil service employees and are not required to take a competitive examination to remain in the positions they occupy on that date.

(c)  "Emergency medical services personnel" as used in this Section has the meaning assigned by Health and Safety Code Section 773.003. The term applies only to individuals certified under Chapter 773, Health and Safety Code.

(d)  If emergency medical services personnel covered by this Chapter work in a municipal department other than the fire department, the department head of such other municipal department will be appointed in accordance with Section 143.013, and will have all duties assigned to the department head by this Chapter.

Amendment No. 1 was adopted.

USA_00223711

**CSSB 1433**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Keel recorded voting no.)

### SB 1507 ON SECOND READING
### (Peña - House Sponsor)

**SB 1507**, A bill to be entitled An Act relating to the introduction of certain evidence in the sentencing phase of a capital felony case.

**SB 1507** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 1686 ON SECOND READING
### (Hardcastle - House Sponsor)

**SB 1686**, A bill to be entitled An Act relating to the interagency work group on rural issues.

**SB 1686** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 747 ON SECOND READING
### (Luna - House Sponsor)

**SB 747**, A bill to be entitled An Act relating to establishing a demonstration project for women's health care services.

**Amendment No. 1**

On behalf of Representative Chisum, Representative Luna offered the following amendment to **SB 747**:

Amend **SB 747** (House Committee Report) in SECTION 1 of the bill, in proposed Section 32.0248(a)(4), Human Resources Code (page 4, line 1), between "methods" and ", except" by inserting "emphasizing the health benefits of abstinence from sexual activity to recipients who are not married".

Amendment No. 1 was adopted.

**SB 747**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: A. Allen, Harper-Brown, Laubenberg, and Phillips recorded voting no.)

USA_00223712

## SB 1772 ON SECOND READING
### (Reyna - House Sponsor)

**SB 1772**, A bill to be entitled An Act relating to the validation and confirmation of the boundaries and acts of Dallas County Water Control and Improvement District No. 6.

**Amendment No. 1 (Committee Amendment No. 1)**

On behalf of Representative Puente, Representative Reyna offered the following committee amendment to **SB 1772**:

Amend **SB 1772** by striking SECTION 6 of the bill (Senate engrossment, page 15, lines 9-10) and substituting the following:

SECTION 6. NO ADDITIONAL POWERS OR DUTIES; RETAIL WATER UTILITY SERVICE. (a) This Act does not grant any additional powers or duties to the district.

(b) The district may not provide additional retail water utility service in the corporate boundaries of the City of Mesquite other than the service provided on the effective date of this Act without obtaining the city's consent.

Amendment No. 1 was adopted.

**SB 1772**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

## SB 1878 ON SECOND READING
### (Reyna - House Sponsor)

**SB 1878**, A bill to be entitled An Act relating to validating actions of and amending assessments imposed by the Falcon's Lair Utility and Reclamation District, of Dallas County, Texas.

### SB 1878 - POINT OF ORDER

Representative Dunnam raised a point of order against further consideration of **SB 1878** under Rule 4, Section 9 and Rule 4, Section 18(a) of the House Rules on the grounds that the committee met while the house was in session without permission.

(Nixon in the chair)

The chair sustained the point of order.

The ruling precluded further consideration of **SB 1878**.

### MEMORANDUM BY REPRESENTATIVE DUNNAM

The minutes for the May 19, 2005, meeting of the House Committee on Natural Resources state, "the House Committee on Natural Resources met in a formal meeting and was called to order by the chair, Representative Puente, at 2:40 p.m." House Natural Resources Committee Minutes 1, 79th Legislature, Regular Session (May 19, 2005).

USA_00223713

The house recessed on May 19, 2005, at 2:45 p.m. House Journal, page 3679 (79th Legislature).

Therefore, either (a) the House Committee on Natural Resources met while the house was in session and violated Rule 4, Section 9, or (b) the minutes for the May 19, 2005, meeting of the House Committee on Natural Resources inaccurately state the time that the meeting began, thus violating Rule 4, Section 18(a).

For the foregoing reasons the point of order should be sustained.

## LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence for the remainder of today because of important business in the district:

Castro on motion of Chavez.

## POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

### SB 244 ON SECOND READING
### (Orr - House Sponsor)

**SB 244**, A bill to be entitled An Act relating to priority of payment relating to property owners' association assessments.

**SB 244** was read second time earlier today, postponed until 3:30 p.m., and was again postponed until this time.

### SB 244 - POINT OF ORDER

Representative Harper-Brown raised a point of order against further consideration of **SB 244** under Rule 4, Section 33 of the House Rules on the grounds that the committee report for the bill does not contain a fiscal note.

The chair sustained the point of order.

The ruling precluded further consideration of **SB 244**.

### SB 1710 ON SECOND READING
### (Bonnen - House Sponsor)

**SB 1710**, A bill to be entitled An Act relating to outdoor burning under the Texas Clean Air Act.

## Amendment No. 1

Representative Veasey offered the following amendment to **SB 1710**:

Amend **SB 1710** in SECTION 1 of the bill, in proposed Paragraph (A), Subdivision (2), Subsection (b), Section 382.018, Health and Safety Code (page 1, line 18), between "standards" and the semicolon, by inserting "and that does not contain any part of a city that does not meet national ambient air quality standards".

Amendment No. 1 was adopted.

USA_00223714

**Amendment No. 2**

Representative Hughes offered the following amendment to **SB 1710**:

Amend **SB 1710** (House committee printing) as follows:

(1)  In SECTION 1 of the bill, in amended Subsection (a), Section 382.018, Health and Safety Code (page 1, line 7), strike "The" and substitute "Except as provided by Subsections (b) and (d), the [The]".

(2)  In SECTION 1 of the bill, after added Subsection (c), Section 382.018, Health and Safety Code (page 2, between lines 2 and 3), insert the following:

(d)  The commission may not control or prohibit outdoor burning of waste consisting of trees, brush, grass, leaves, branch trimmings, or other plant growth if:

(1)  the person burning the waste is doing so at a site:

(A)  designated for consolidated burning of waste generated from specific residential properties;

(B)  located in a county with a population of less than 50,000;

(C)  located outside of a municipality; and

(D)  supervised at the time of the burning by an employee of a fire department who is part of the fire protection personnel, as defined by Section 419.021, Government Code, of the department and is acting in the scope of the person's employment; and

(2)  the waste was generated from a property for which the site is designated.

(e)  A fire department employee who will supervise a burning under Subsection (d)(1)(D) shall notify the commission of each burning supervised by the employee, and the commission shall provide the employee with information on practical alternatives to burning.

Amendment No. 2 was adopted.

**Amendment No. 3**

Representative Burnam offered the following amendment to **SB 1710**:

Amend **SB 1710** (House committee printing) by striking page 1, line 22 through page 2, line 2.

Representative Bonnen moved to table Amendment No. 3.

A record vote was requested.

The motion to table prevailed by (Record 796): 102 Yeas, 28 Nays, 3 Present, not voting.

Yeas — Allen, R.; Anchia; Anderson; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chavez; Chisum; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Dawson; Delisi; Denny; Deshotel; Driver; Eiland; Eissler; Elkins; Farabee; Flynn; Frost; Gallego; Gattis; Geren; Gonzalez Toureilles; Goolsby; Griggs; Grusendorf; Guillen; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Hochberg; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Keel; Keffer, B.; Keffer, J.; King, P.; Kolkhorst;

Krusee; Kuempel; Laney; Laubenberg; Luna; Madden; McCall; McReynolds; Merritt; Miller; Morrison; Mowery; Oliveira; Orr; Otto; Paxton; Phillips; Pickett; Pitts; Puente; Raymond; Reyna; Riddle; Ritter; Smith, T.; Smith, W.; Smithee; Strama; Straus; Swinford; Talton; Taylor; Turner; Van Arsdale; West; Wong; Woolley.

Nays — Allen, A.; Alonzo; Burnam; Coleman; Dukes; Dunnam; Dutton; Farrar; Flores; Gonzales; Goodman; Herrero; Jones, J.; Leibowitz; Martinez; Martinez Fischer; McClendon; Naishtat; Noriega, M.; Olivo; Peña; Rodriguez; Solis; Thompson; Uresti; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker; Nixon(C); Quintanilla.

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons; Zedler.

Absent — Bailey; Davis, Y.; Edwards; Escobar; Haggerty; King, T.; Menendez; Moreno, P.; Seaman; Truitt.

## STATEMENT OF VOTE

I was shown voting no on Record No. 796. I intended to vote yes.

Peña

## Amendment No. 4

Representative Burnam offered the following amendment to **SB 1710**:

Amend **SB 1710** by striking the word "shall" in line 12, and replacing with word the "may".

Representative Bonnen moved to table Amendment No. 4.

(Zedler now present)

A record vote was requested.

The motion to table prevailed by (Record 797): 107 Yeas, 25 Nays, 3 Present, not voting.

Yeas — Allen, R.; Anderson; Bailey; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chavez; Chisum; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Dawson; Delisi; Denny; Deshotel; Driver; Eiland; Eissler; Elkins; Farabee; Farrar; Flynn; Frost; Gattis; Geren; Gonzalez Toureilles; Goolsby; Griggs; Grusendorf; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Keel; Keffer, B.; Keffer, J.; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Laney; Laubenberg; Luna; Madden; McCall; McReynolds; Merritt; Miller; Morrison; Oliveira; Orr; Otto; Paxton; Peña; Phillips; Pickett; Pitts; Puente; Raymond; Reyna; Riddle; Ritter; Smith, T.; Smith, W.; Smithee; Solis; Strama; Straus; Swinford; Talton; Taylor; Truitt; Turner; Uresti; Van Arsdale; West; Wong; Woolley; Zedler.

USA_00223716

Nays — Allen, A.; Alonzo; Anchia; Burnam; Coleman; Davis, Y.; Dukes; Dunnam; Flores; Gallego; Gonzales; Herrero; Hochberg; Jones, J.; Leibowitz; Martinez; Martinez Fischer; McClendon; Naishtat; Noriega, M.; Olivo; Rodriguez; Thompson; Veasey; Villarreal.

Present, not voting — Mr. Speaker; Nixon(C); Quintanilla.

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Dutton; Edwards; Escobar; Goodman; Menendez; Moreno, P.; Mowery; Seaman; Vo.

A record vote was requested.

**SB 1710**, as amended, was passed to third reading by (Record 798): 118 Yeas, 16 Nays, 4 Present, not voting.

Yeas — Allen, R.; Anderson; Bailey; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Callegari; Campbell; Casteel; Chavez; Chisum; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Davis, Y.; Dawson; Delisi; Denny; Deshotel; Driver; Dunnam; Dutton; Eiland; Eissler; Elkins; Farabee; Flynn; Frost; Gallego; Gattis; Geren; Gonzales; Gonzalez Toureilles; Goolsby; Griggs; Grusendorf; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Keel; Keffer, B.; Keffer, J.; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Laney; Laubenberg; Luna; Madden; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miller; Morrison; Mowery; Noriega, M.; Oliveira; Orr; Otto; Paxton; Peña; Phillips; Pickett; Pitts; Puente; Raymond; Reyna; Riddle; Ritter; Smith, T.; Smith, W.; Smithee; Solis; Strama; Straus; Swinford; Talton; Taylor; Truitt; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Burnam; Coleman; Edwards; Farrar; Goodman; Herrero; Hochberg; Leibowitz; Martinez; Naishtat; Olivo; Rodriguez; Thompson.

Present, not voting — Mr. Speaker; Jones, J.; Nixon(C); Quintanilla.

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Brown, F.; Dukes; Escobar; Flores; Moreno, P.; Seaman.

### SB 1740 ON SECOND READING
### (Bonnen - House Sponsor)

**SB 1740**, A bill to be entitled An Act relating to construction activities allowed while an application is pending with the Texas Commission on Environmental Quality.

**Amendment No. 1**

Representative Bonnen offered the following amendment to **SB 1740**:

Amend **SB 1740** (House Committee Printing) by inserting the following appropriately numbered new SECTION and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____. Section 382.05195, Health and Safety Code, is amended by adding Subsection (j) to read as follows:

(j)  If a standard permit for a facility requires a distance, setback, or buffer from other property or structures as a condition of the permit, the determination of whether the distance, setback, or buffer is satisfied shall be made on the basis of conditions existing at the earlier of:

(1)  the date construction begins on the facility; or

(2)  the date any application or notice of intent is first filed with the commission to obtain approval for the construction or operation of the facility.

Amendment No. 1 was adopted.

**SB 1740**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: A. Allen, Leibowitz, and Thompson recorded voting no.)

### CSSB 9 ON SECOND READING
### (Corte - House Sponsor)

**CSSB 9**, A bill to be entitled An Act relating to homeland security; providing a penalty.

**Amendment No. 1**

Representative Corte offered the following amendment to **CSSB 9**:

Amend **CSSB 9** (House Committee Printing) as follows:

(1)  In SECTION 11 of the bill, in added Section 421.095(1)(C)(i), Government Code (page 6, line 13), between "Protection" and the semicolon, insert "or by the State Firemen's and Fire Marshals' Association of Texas".

(2)  In SECTION 13 of the bill, in added Subsection (a-1), Section 791.006, Government Code (page 8, line 16), strike "the services of a fire department" and substitute "fire or emergency services".

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Corte offered the following amendment to **CSSB 9**:

Amend **CSSB 9** (House Committee Printing) by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. Section 421.026, Government Code, is amended to read as follows:

Sec. 421.026. REPORT. The council shall annually submit to the governor, the lieutenant governor, and the speaker of the house of representatives a report stating:

(1) the council's progress in developing and coordinating a statewide critical infrastructure protection strategy;

(2) the status and funding of state programs designed to detect and deter homeland security emergencies, including the status and funding of counterterrorism efforts;

(3) recommendations on actions to reduce threats to homeland security, including threats related to terrorism; and

(4) recommendations for improving the alert, response, and recovery capabilities of state and local agencies.

SECTION __. Chapter 421, Government Code, is amended by adding Subchapter B-1 to read as follows:

SUBCHAPTER B-1. PERMANENT SPECIAL ADVISORY COMMITTEES

Sec. 421.041. FIRST RESPONDER ADVISORY COUNCIL. (a) The First Responder Advisory Council is a permanent special advisory committee created to advise the governor or the governor's designee on homeland security issues relevant to first responders, radio interoperability, the integration of statewide exercises for hazards, and the related use of available funding.

(b) The council is composed of:

(1) one representative for each of the following sectors of the state, appointed by the governor or the governor's designee:

(A) law enforcement;

(B) firefighters;

(C) private first responders; and

(D) emergency medical services; and

(2) other members, as determined by the governor or the governor's designee.

Sec. 421.042. PRIVATE SECTOR ADVISORY COUNCIL. (a) The Private Sector Advisory Council is a permanent special advisory committee created to advise the governor or the governor's designee on homeland security issues relevant to the private sector.

(b) The council is composed of:

(1) one representative of a private organization or entity for each of the following sectors of the state, each appointed by the governor or the governor's designee:

(A) agriculture and food;

(B) banking and finance;

(C) chemicals and hazardous materials;

(D) the defense industry;

(E) energy;

(F) emergency services;

(G) information technology;

(H) telecommunications;

(I) postal and shipping;

(J)  public health;
(K)  transportation;
(L)  ports and waterways; and
(M)  national monuments and icons; and
        (2)  other members, as determined by the governor or the governor's designee.
        Sec. 421.043.  ELIGIBILITY. (a)   To be eligible for appointment as a member of a permanent special advisory committee created under this subchapter, a person must demonstrate experience in the sector that the person is under consideration to represent and be directly involved in related policies, programs, or funding activities that are relevant to homeland security or infrastructure protection.
        (b)  Each member of a permanent special advisory committee created under this subchapter serves at the will of the governor.
        Sec. 421.044.  COMPENSATION  AND  REIMBURSEMENT  OF EXPENSES PROHIBITED. A person who is a member of a permanent special advisory committee created under this subchapter is not entitled to receive compensation from this state for service on the committee or travel expenses incurred by the person while conducting the business of the committee.
        Sec. 421.045.  DUTIES. Each permanent special advisory committee created under this subchapter shall advise the governor on:
        (1)  the development and coordination of a statewide critical infrastructure protection strategy;
        (2)  the implementation of the governor's homeland security strategy by state and local agencies and provide specific suggestions for helping those agencies implement the strategy;
        (3)  specific priorities related to the governor's homeland security strategy that the committee determines to be of significant importance to the statewide security of critical infrastructure; and
        (4)  other matters related to the planning, development, coordination, and implementation of initiatives to promote the governor's homeland security strategy.
        SECTION __.  Sections 421.072(a) and (c), Government Code, are amended to read as follows:
        (a)  The office of the governor shall:
        (1)  allocate available federal and state grants and other funding related to homeland security to state and local agencies and defense base development authorities created under Chapter 379B, Local Government Code, that perform homeland security activities;
        (2)  periodically review the grants and other funding for appropriateness and compliance; [and]
        (3)  designate state administering agencies to administer all grants and other funding to the state related to homeland security; and
        (4)  measure the effectiveness of the homeland security grants and other funding.

(c) A state or local agency or defense base development authority that receives a grant or other funding related to homeland security must provide an annual report to the office of the governor detailing:

(1) the [agency's] compliance of the agency or authority with the state homeland security strategy;

(2) any expenditures made using the funding;

(3) any programs developed or implemented using the funding; and

(4) the manner in which any expenditures made or programs developed or implemented have improved the ability of the agency or authority to detect, deter, respond to, and recover from a terrorist attack.

SECTION ___. The governor shall make all required appointments to the First Responder Advisory Council and the Private Sector Advisory Council, in accordance with Subchapter B-1, Chapter 421, Government Code, as added by this Act, not later than December 1, 2005.

Amendment No. 2 was adopted.

**Amendment No. 3**

Representative Corte offered the following amendment to **CSSB 9**:

Amend **CSSB 9** (House Committee Printing) by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 121.201(a), Utilities Code, is amended to read as follows:

(a) The railroad commission by rule may:

(1) adopt safety standards for the transportation of gas and for gas pipeline facilities;

(1-a) adopt safety standards and best practices related to the prevention of damage to a gas pipeline facility resulting from the movement of earth by a person in the vicinity of the facility, including the standards and best practices described under 49 U.S.C. Section 60105 et seq.;

(2) require an operator that does not file operator organization information under Section 91.142, Natural Resources Code, to provide the information to the commission in the form of an application;

(3) require record maintenance and reports;

(4) inspect records and facilities to determine compliance with adopted safety standards;

(5) make certifications and reports;

(6) seek designation by the United States secretary of transportation as an agent to conduct safety inspections of interstate gas pipeline facilities located in this state; and

(7) take any other requisite action in accordance with 49 U.S.C. Section 60101 et seq., or a succeeding law.

SECTION ____. Section 117.012, Natural Resources Code, is amended by adding Subsection (a-1) to read as follows:

(a-1)  The commission by rule shall adopt safety standards and best practices related to the prevention of damage to an intrastate hazardous liquid or carbon dioxide pipeline facility resulting from the movement of earth by a person in the vicinity of the facility, including the standards and best practices described under 49 U.S.C. Section 60105 et seq.

Amendment No. 3 was withdrawn.

**Amendment No. 4**

Representative Corte offered the following amendment to **CSSB 9**:

Amend **CSSB 9** (House Committee Printing) by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____.  Subchapter G, Chapter 756, Health and Safety Code, as added by Chapter 1082, Acts of the 78th Legislature, Regular Session, 2003, is amended by adding Section 756.106 to read as follows:

Sec. 756.106.  SAFETY STANDARDS AND BEST PRACTICES.  The Railroad Commission of Texas shall adopt and enforce safety standards and best practices, including those described by 49 U.S.C. Section 6105 et seq., relating to the prevention of damage by a person to a facility under the jurisdiction of the commission.

SECTION ____.  The Railroad Commission of Texas shall adopt the safety standards and best practices required by Section 756.106, Health and Safety Code, as added by this Act, not later than June 1, 2007.

Amendment No. 4 was adopted.

**Amendment No. 5**

Representative Hardcastle offered the following amendment to **CSSB 9**:

Amend **CSSB 9** as follows:

Insert the following appropriately numbered SECTION and renumber subsequent SECTIONS of the bill accordingly:

SECTION ___. Section 752.006, Health and Safety Code, is repealed.

Amendment No. 5 was adopted.

**Amendment No. 6**

Representative Raymond offered the following amendment to **CSSB 9**:

Amend **CSSB 9** (House Committee Printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. (a)  The governor's office of homeland security shall conduct a study to evaluate the security of seaports in this state.

(b)  Not later than December 1, 2006, the governor's office of homeland security shall report its findings to the:

    (1)  legislature;

    (2)  lieutenant governor;

    (3)  speaker of the house of representatives; and

(4)  governor.

(c)  The report shall include:

(1)   an evaluation of the compliance of relevant entities with the requirements of the federal Maritime Transportation Security Act of 2002 (Pub. L. No. 107–295) and other federal law applicable to the security of seaports in this state, including the degree of compliance of relevant entities with any credentialing systems required by federal law;

(2)   a summary of the degree to which seaports in this state have implemented security procedures to ensure that all employees and contractors receive appropriate security screening before being provided with access to port locations or sensitive information relating to ports;

(3)   a summary of the degree to which seaports in this state have implemented any security fees; and

(4)   an accounting of the total amount of homeland security grants and other homeland security funding that have been provided to seaports in this state for security purposes and the manner in which those funds have been spent by the recipients.

(d)  This section expires September 1, 2007.

Representative Corte moved to table Amendment No. 6.

The motion to table prevailed.

**CSSB 9**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### CSSB 343 ON SECOND READING
### (Geren - House Sponsor)

**CSSB 343**, A bill to be entitled An Act relating to the regulation of the placement of water wells and the installation and maintenance of well pumps and equipment; providing a penalty.

**Amendment No. 1**

Representative Geren offered the following amendment to **CSSB 343**:

Amend **CSSB 343** (House Committed Printing) as follows:

(1)  On page 1, line 22, after the word "drilling" and before the word "into" insert "of a domestic well".

(2)  On page 8, line 10, after the word "Code;" strike the word "and"

(3)  On page 8, strike lines 11-12 and substitute the following:

(18)   the installation, maintenance, alteration, or repair of well pumps and equipment in accordance with Chapter 1902; and

(19)   electrical work performed on a building, structure, or equipment in agricultural use as defined by Section 11.002, Water Code, other than the processing of an agricultural commodity.

Amendment No. 1 was adopted.

A record vote was requested.

**CSSB 343**, as amended, was passed to third reading by (Record 799): 137 Yeas, 1 Nays, 2 Present, not voting.

Yeas — Allen, A.; Allen, R.; Alonzo; Anchia; Anderson; Bailey; Baxter; Berman; Blake; Bohac; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Davis, Y.; Dawson; Delisi; Denny; Deshotel; Driver; Dukes; Dunnam; Dutton; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flynn; Frost; Gallego; Gattis; Geren; Gonzales; Gonzalez Toureilles; Goodman; Griggs; Grusendorf; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Herrero; Hilderbran; Hill; Hochberg; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Jones, J.; Keel; Keffer, B.; Keffer, J.; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Laney; Laubenberg; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miller; Moreno, P.; Morrison; Mowery; Naishtat; Noriega, M.; Oliveira; Olivo; Orr; Otto; Paxton; Peña; Phillips; Pickett; Pitts; Puente; Quintanilla; Raymond; Reyna; Riddle; Ritter; Rodriguez; Seaman; Smith, T.; Smith, W.; Smithee; Solis; Strama; Straus; Swinford; Talton; Taylor; Thompson; Truitt; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo; West; Wong; Woolley; Zedler.

Nays — Bonnen.

Present, not voting — Mr. Speaker; Nixon(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Burnam; Edwards; Flores; Goolsby.

### STATEMENT OF VOTE

When Record No. 799 was taken, I was in the house but away from my desk. I would have voted yes.

Edwards

### SB 89 ON SECOND READING
### (Denny - House Sponsor)

**SB 89**, A bill to be entitled An Act relating to electronically readable information on a driver's license, commercial driver's license, or personal identification certificate.

(Speaker in the chair)

**Amendment No. 1**

Representative Denny offered the following amendment to **SB 89**:

Amend **SB 89** as follows:

(1) Add the following appropriately numbered section to the bill and renumber the remaining sections of the bill appropriately:

SECTION __. Chapter 63, Election Code, is amended by adding Section 63.0102 to read as follows:

Sec. 63.0102.  USE OF CERTAIN ELECTRONICALLY READABLE INFORMATION.  (a)  An election officer may access electronically readable information on a driver's license or personal identification card for proof of identification when determining whether a voter shall be accepted for voting.

(b) The secretary of state shall prescribe any necessary procedures to implement this section.

(2) On page 1, strike lines 23-24 and substitute the following:

(5) an election officer who accesses or uses the information to determine the identity of a voter as authorized by Section 63.0102, Election Code.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Denny offered the following amendment to **SB 89**:

Amend **SB 89** (house committee printing) as follows:

(1) Add the following appropriately numbered section to the bill and renumber the remaining sections appropriately:

SECTION __. (a)  Chapter 62, Election Code, is amended by adding Section 62.016 to read as follows:

Sec. 62.016.  NOTICE OF ACCEPTABLE IDENTIFICATION OUTSIDE POLLING PLACES.  The presiding judge shall post in a prominent place on the outside of each polling location notice that a provisional ballot will be provided to a person who executes the appropriate affidavit and a list of the acceptable forms of photographic and nonphotographic identification.  The notice and list must be printed:

(1) in English, Spanish, and any other language appropriate to the precinct in which the polling place is located; and

(2) using a font that is at least 24 point.

(b) Section 63.001, Election Code, is amended by amending Subsections (b), (c), (d), and (f) and adding Subsection (g) to read as follows:

(b) On offering to vote, a voter must present to an election officer at the polling place the voter's voter registration certificate and either:

(1) one form of identification listed in Section 63.0101(a); or

(2) two different forms of identification listed in Section 63.0101(b) [to an election officer at the polling place].

(c) On presentation of the documentation required by Subsection (b) [a registration certificate], an election officer shall determine whether the voter's name on the registration certificate is on the list of registered voters for the precinct.

(d) If the voter's name is on the precinct list of registered voters and the voter's identity can be verified from the proof presented, the voter shall be accepted for voting.

(f) After determining whether to accept a voter, an election officer shall return the voter's documentation [registration certificate] to the voter.

(g)  If the requirements for identification prescribed by Subsection (b)(1) or (2) are not met, the voter shall be accepted for provisional voting only under Section 63.011.

(c)  Chapter 63, Election Code, is amended by adding Section 63.0012 to read as follows:

Sec. 63.0012.  USE OF ADDRESS ON IDENTIFICATION. (a)  This section applies only to a voter who:

(1)  presents a registration certificate;

(2)  is on the list of registered voters for the precinct; and

(3)  confirms the address on the list of registered voters is current under Section 63.0011.

(b)  In verifying the identity of a voter described by Subsection (a) under Section 63.001, an election officer may not consider whether the voter's address on a form described by Section 63.001(b)(1) or (2) matches the voter's address on the registration certificate or the list of registered voters.

(d)  Section 63.006(a), Election Code, is amended to read as follows:

(a)  A voter who, when offering to vote, presents a voter registration certificate indicating that the voter is currently registered in the precinct in which the voter is offering to vote, but whose name is not on the precinct list of registered voters, shall be accepted for voting if the voter's identity can be verified from the proof presented.

(e)  Section 63.007(a), Election Code, is amended to read as follows:

(a)  A voter who, when offering to vote, presents a voter registration certificate indicating that the voter is currently registered in a different precinct from the one in which the voter is offering to vote, and whose name is not on the precinct list of registered voters, shall be accepted for voting if the voter's identity can be verified from the proof presented and the voter executes an affidavit stating that the voter:

(1)  is a resident of the precinct in which the voter is offering to vote or is otherwise entitled by law to vote in that precinct;

(2)  was a resident of the precinct in which the voter is offering to vote at the time that information on the voter's residence address was last provided to the voter registrar;

(3)  did not deliberately provide false information to secure registration in a precinct in which the voter does not reside; and

(4)  is voting only once in the election.

(f)  Section 63.008(a), Election Code, is amended to read as follows:

(a)  A voter who does not present a voter registration certificate when offering to vote, but whose name is on the list of registered voters for the precinct in which the voter is offering to vote, shall be accepted for voting if the voter executes an affidavit stating that the voter does not have the voter's voter registration certificate in the voter's possession at the polling place at the time of offering to vote and the voter's identity can be verified from the proof presented [voter presents proof of identification in a form described by Section 63.0101].

(g)  Section 63.0101, Election Code, is amended to read as follows:

USA_00223726

Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.
(a) The  following  documentation  is  an  acceptable  form  [as proof]  of  photo
identification under this chapter:
    (1)  a driver's license or personal identification card issued to the person
by the Department of Public Safety that has not expired or that expired no earlier
than two years before the date of presentation [or a similar document issued to the
person by an agency of another state, regardless of whether the license or card has
expired];
    (2)  a United States military identification card that contains the person's
photograph  [form of identification containing the person's photograph that
establishes the person's identity];
    (3)  a valid employee  identification  card  that  contains  the  person's
photograph and is issued by an employer of the person in the ordinary course of
the employer's business [birth certificate or other document confirming birth that
is admissible in a court of law and establishes the person's identity];
    (4)  a United States citizenship certificate [papers] issued to the person
that contains the person's photograph;
    (5)  a United States passport issued to the person;
    (6)  a student identification card issued by a public or private institution
of higher education that contains the person's photograph [official mail addressed
to the person by name from a governmental entity];
    (7)  a license to carry a concealed handgun issued to the person by the
Department of Public Safety;
    (8)  an  identification  card  issued  by  a  state  agency  of  this  state  that
contains the person's photograph; or
    (9)  an identification card that contains the person's photograph and is
issued by a county elections administrator or a county clerk.
(b)  The  following  documentation  is  acceptable  as  proof  of  identification
under this chapter:
    (1)  a copy of a current utility bill, bank statement, government check,
paycheck, or other government document that shows the name and address of the
voter;
    (2)  official mail addressed to the person by name from a governmental
entity;
    (3)  a certified copy of a birth certificate or other document confirming
birth that is admissible in a court of law and establishes the person's identity;
    (4)  United States citizenship papers issued to the person;
    (5)  an  original  or  certified  copy  of  the  person's  marriage  license  or
divorce decree;
    (6)  court records of the person's adoption, name change, or sex change;
    (7)  an identification card issued to the person by a governmental entity
of this state or the United States for the purpose of obtaining public benefits,
including veteran's benefits, Medicaid, or Medicare;
    (8)  a temporary driving permit issued to the person by the Department
of Public Safety;

USA_00223727

(9) a pilot's license issued to the person by the Federal Aviation Administration or another authorized agency of the United States;

(10) a library card that contains the person's name issued to the person by a public library located in this state; or

(11) a hunting or fishing license issued to a person by the Parks and Wildlife Department [or

[(8) any other form of identification prescribed by the secretary of state].

(c) The commissioners court of a county may authorize the county elections administrator or the county clerk, as applicable, to issue photo identification cards that may be used as proof of a voter's identification under Subsection (a).

(h) Sections 63.011(a) and (b), Election Code, are amended to read as follows:

(a) A person to whom Section 63.001(g), 63.008(b), or 63.009(a) applies may cast a provisional ballot if the person executes an affidavit stating that the person:

(1) is a registered voter in the precinct in which the person seeks to vote; and

(2) is eligible to vote in the election.

(b) A form for the affidavit shall be printed on an envelope in which the provisional ballot voted by the person may be placed and must include a space for entering the identification number of the provisional ballot voted by the person and a space for an election officer to indicate whether the person presented proof of identification as required by Section 63.001(b)(1) or (2). The affidavit form may include space for disclosure of any necessary information to enable the person to register to vote under Chapter 13. The secretary of state shall prescribe the form of the affidavit under this section.

(i) Section 65.054(b), Election Code, is amended to read as follows:

(b) A provisional ballot may be accepted only if:

(1) the board determines that, from the information in the affidavit or contained in public records, the person is eligible to vote in the election; and

(2) the voter presents proof of identification as required by Section 63.001(b)(1) or (2):

(A) at the time the ballot was cast; or

(B) in the period prescribed under Section 65.0541.

(j) Subchapter B, Chapter 65, Election Code, is amended by adding Section 65.0541 to read as follows:

Sec. 65.0541. PRESENTATION OF IDENTIFICATION FOR CERTAIN PROVISIONAL BALLOTS. (a) A voter who is accepted for provisional voting under Section 63.011 because the voter does not present proof of identification as required by Section 63.001(b)(1) or (2) may submit proof of identification to the voter registrar by personal delivery or by mail for examination by the early voting ballot board not later than the fifth day after the date of the election.

(b) The early voting ballot board shall accept a provisional ballot under Section 65.054 if the voter:

USA_00223728

(1) presents proof of identification in the manner required by this section; and

(2) is otherwise eligible to vote in the election.

(c) The office of the voter registrar shall be open on a Saturday that falls within the five-day period described by Subsection (a) for a voter to present identification as provided under this section.

(d) The secretary of state shall prescribe procedures as necessary to implement this section.

(k) Section 521.422, Transportation Code, is amended by amending Subsection (a) and adding Subsection (d) to read as follows:

(a) Except as provided by Subsection (d), the [The] fee for a personal identification certificate is:

(1) $15 for a person under 60 years of age;

(2) $5 for a person 60 years of age or older; and

(3) $20 for a person subject to the registration requirements under Chapter 62, Code of Criminal Procedure.

(d) The department may not collect a fee for a personal identification certificate issued to a person who executes an affidavit stating that the person is financially unable to pay the required fee and:

(1) who is a registered voter in this state and presents a valid voter registration certificate; or

(2) who is eligible for registration under Section 13.001, Election Code, and submits a registration application to the department.

(2) Strike SECTION 2 of the bill (page 2, lines 1-5) and substitute the following:

SECTION 2. (a)  Except as otherwise provided by this section, this Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2005.

(b) Section ___ of this Act, amending Chapters 62, 63, and 65, Election Code, and Section 521.422, Transportation Code, takes effect September 1, 2005.

**Amendment No. 2 - Point of Order**

Representative Gallego raised a point of order against further consideration of Amendment No. 2 under Rule 11, Section 2 of the House Rules on the grounds that it is not germane to the bill.

The speaker overruled the point of order and had read the following statement:

Representatives Gallego and Turner raised a point of order against further consideration of the Denny amendment to **SB 89** on the grounds that the amendment violates Rule 11, Section 2 in that it is not germane.

**SB 89** contains provisions relating to Chapter 63, Election Code, which relates to the acceptance of voters who wish to participate in elections by voting. The Denny amendment also amends provisions in Chapter 63, Election Code, and because it does such, is germane to the bill.

USA_00223729

Therefore, the point of order is respectfully overruled.

(Giddings now present)

A record vote was requested.

Amendment No. 2 was adopted by (Record 800): 81 Yeas, 60 Nays, 1 Present, not voting.

Yeas — Allen, R.; Anderson; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chisum; Cook, B.; Corte; Crabb; Crownover; Dawson; Delisi; Denny; Driver; Eissler; Elkins; Flynn; Gattis; Goodman; Goolsby; Griggs; Grusendorf; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Hope; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Keel; Keffer, B.; Keffer, J.; King, P.; Kolkhorst; Krusee; Kuempel; Laubenberg; Madden; McCall; Merritt; Miller; Morrison; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Seaman; Smith, T.; Smith, W.; Straus; Swinford; Talton; Taylor; Truitt; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Bailey; Burnam; Chavez; Coleman; Cook, R.; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eiland; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Herrero; Hochberg; Homer; Hopson; Jones, J.; King, T.; Laney; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Ritter; Rodriguez; Solis; Strama; Thompson; Turner; Uresti; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Rose; Solomons.

Absent — Davis, J.; Mowery; Smithee.

## Amendment No. 3

Representative Coleman offered the following amendment to **SB 89**:

Amend **SB 89**, as amended, by striking "September 1, 2005" and substituting "September 1, 2008".

### LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence temporarily for today to attend a meeting of the conference committee on **HB 7**:

Giddings on motion of Turner.

### SB 89 - (consideration continued)

Representative Denny moved to table Amendment No. 3.

A record vote was requested.

The motion to table prevailed by (Record 801): 80 Yeas, 60 Nays, 1 Present, not voting.

Yeas — Allen, R.; Anderson; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chisum; Cook, B.; Corte; Crabb; Crownover; Davis, J.; Dawson; Delisi; Denny; Driver; Eissler; Flynn; Gattis; Goodman; Goolsby; Griggs; Grusendorf; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Hope; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Keel; Keffer, B.; Keffer, J.; King, P.; Kolkhorst; Krusee; Kuempel; Laubenberg; Madden; McCall; Merritt; Miller; Morrison; Mowery; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Seaman; Smith, T.; Smith, W.; Smithee; Straus; Talton; Taylor; Truitt; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Bailey; Burnam; Chavez; Coleman; Cook, R.; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eiland; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Guillen; Herrero; Hochberg; Homer; Hopson; Jones, D.; Jones, J.; King, T.; Laney; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Ritter; Rodriguez; Solis; Strama; Thompson; Turner; Uresti; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Elkins; Haggerty; Swinford.

**Amendment No. 4**

Representative Alonzo offered the following amendment to **SB 89**:

Amend **SB 89** by adding the following appropriately numbered SECTION to the bill and renumbering existing SECTIONS of the bill accordingly:

SECTION _____.  For purposes of Section 63.0101, Election Code, as amended by this Act, identity document that is issued by the government of another country is an acceptable form of a photo identification if:

(1)  the identification contains the person's photograph, full name, and date of birth; and

(2)  as determined by the secretary of state, the government of the other country has established reasonable mechanisms by which the agency can verify the identity document.

Representative Denny moved to table Amendment No. 4.

A record vote was requested.

The motion to table prevailed by (Record 802): 88 Yeas, 54 Nays, 1 Present, not voting.

USA_00223731

Yeas — Allen, R.; Anderson; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chisum; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Dawson; Delisi; Denny; Driver; Eiland; Eissler; Elkins; Flynn; Gattis; Geren; Goodman; Goolsby; Griggs; Grusendorf; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Keffer, B.; Keffer, J.; King, P.; Kolkhorst; Krusee; Kuempel; Laney; Laubenberg; Madden; McCall; Miller; Morrison; Mowery; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Ritter; Seaman; Smith, T.; Smith, W.; Smithee; Straus; Swinford; Talton; Taylor; Truitt; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Bailey; Burnam; Chavez; Coleman; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Gonzales; Gonzalez Toureilles; Guillen; Haggerty; Herrero; Hochberg; Jones, J.; Keel; King, T.; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Merritt; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Rodriguez; Solis; Thompson; Turner; Uresti; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Strama.

### MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 3).

### SB 89 - (consideration continued)

**Amendment No. 5**

Representative Anchia offered the following amendment to **SB 89**:

Amend **SB 89** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___. (a) The county voter registrar shall issue voter registration certificates that contain a photograph of the person issued the voter registration certificate in a form prescribed by the secretary of state.

(b) The certificate issued under Subsection (a) of this section is an acceptable form of photo identification under Section 63.0101, Election Code, as amended by this Act.

Representative Denny moved to table Amendment No. 5.

A record vote was requested.

The motion to table prevailed by (Record 803): 76 Yeas, 61 Nays, 1 Present, not voting.

Yeas — Allen, R.; Anderson; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, F.; Callegari; Casteel; Cook, B.; Corte; Crabb; Crownover; Dawson; Delisi; Denny; Driver; Eissler; Elkins; Flynn; Gattis; Goodman; Goolsby; Griggs; Grusendorf; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Hope; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Keel; Keffer, B.; Keffer, J.; Kolkhorst; Krusee; Kuempel; Laubenberg; Madden; McCall; Miller; Mowery; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Seaman; Smith, W.; Smithee; Straus; Swinford; Talton; Taylor; Truitt; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Bailey; Burnam; Chavez; Coleman; Cook, R.; Davis, J.; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eiland; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Guillen; Herrero; Hochberg; Homer; Hopson; Jones, J.; King, T.; Laney; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Merritt; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Ritter; Rodriguez; Smith, T.; Solis; Strama; Thompson; Turner; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Brown, B.; Campbell; Chisum; King, P.; Morrison; Uresti.

### STATEMENT OF VOTE

When Record No. 803 was taken, I was in the house but away from my desk. I would have voted yes.

B. Brown

**Amendment No. 6**

Representative Veasey offered the following amendment to **SB 89**:

Amend **SB 89** by adding a new appropriately numbered section to read as follows and by renumbering the existing sections as appropriate:

SECTION __. Chapter 63, Election Code, is amended by adding Section 63.0012 to read as follows:

Sec. 63.0012. USE OF ADDRESS ON IDENTIFICATION. (a)   This section applies only to a voter who:

(1)  presents a registration certificate;

(2)  is on the list of registered voters for the precinct; and

(3)  confirms the address on the list of registered voters is current under Section 63.0011.

(b)  In verifying the identity of a voter described by Subsection (a) under Section 63.001, an election officer may not consider whether the voter's address on a form described by Section 63.001(b)(1) or (2) matches the voter's address on the registration certificate or the list of registered voters.

Amendment No. 6 was adopted.

USA_00223733

**Amendment No. 7**

Representative Leibowitz offered the following amendment to **SB 89**:

Amend **SB 89** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ___.  The requirements contained in this Act of providing two forms of identification do not apply to a person who is 85 years of age or older.

### SB 89 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE HOCHBERG:  I have sort of lost track of where we are and, as you remember, if you get a movement without motion on a previous question, you don't get to have a debate about it. Can you just remind me of what the original bill accomplished? I've lost track of that.

REPRESENTATIVE DENNY:  The original bill requires one form of photo ID or two forms of non-photo ID off of an approved list. It also—the amendments—as the bill passed out of here—the amendments that were accepted are in the amendments I brought to you today. We didn't go back to the original bill and strip those out. They are in the amendments that we adopted here.

HOCHBERG:  So, what you just described to me are the amendments that have gone on to **SB 89**.

DENNY:  I'm sorry, what?

HOCHBERG:  What you have just described to me are the amendments that have gone on to **SB 89**?

DENNY:  Correct.

HOCHBERG:  Okay, when I said original bill, what does **SB 89** do?

DENNY:  Oh, **SB 89**, I'm sorry.

HOCHBERG:  I'm not sure whether I want to vote for **SB 89** yet. If you could just give me a quickie on that.

DENNY:  Sure. **SB 89** authorized the magnetic strip on the back of a driver's license or personal ID card that's issued by DPS to access electronically readable information for governmental purposes. That ability was accidentally removed in the last legislative session in **SB 1445** by the independent banker. They removed election officers from governmental purposes and this adds it back in.

HOCHBERG:  So this adds it back into the list of people who are not subject to an offense if they read that information.

DENNY:  Correct.

HOCHBERG:  Okay, thank you.

### REMARKS ORDERED PRINTED

Representative Hochberg moved to print remarks between Representative Denny and Representative Hochberg.

The motion prevailed.

USA_00223734

(P. King in the chair)

Representative Denny moved to table Amendment No. 7.

A record vote was requested.

The motion to table was lost by (Record 804): 62 Yeas, 75 Nays, 2 Present, not voting.

Yeas — Allen, R.; Anderson; Berman; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Corte; Crabb; Crownover; Dawson; Delisi; Denny; Driver; Eissler; Elkins; Flynn; Gattis; Goodman; Grusendorf; Hamric; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Hope; Howard; Hupp; Isett; Jackson; Keel; Keffer, B.; Kolkhorst; Krusee; Kuempel; Laubenberg; Madden; Morrison; Mowery; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Seaman; Smith, T.; Smith, W.; Straus; Swinford; Talton; Taylor; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Bailey; Blake; Burnam; Casteel; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Davis, J.; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eiland; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Griggs; Guillen; Haggerty; Hamilton; Herrero; Hochberg; Homer; Hopson; Hughes; Hunter; Jones, D.; Jones, J.; Keffer, J.; King, T.; Laney; Leibowitz; Luna; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miller; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Ritter; Rodriguez; Solis; Strama; Thompson; Truitt; Turner; Uresti; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker; King, P.(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Baxter; Campbell; Goolsby; Hardcastle; Smithee.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 804. I intended to vote no.

Anderson

I was shown voting yes on Record No. 804. I intended to vote no.

Kuempel

(Speaker in the chair)

A record vote was requested.

Amendment No. 7 was adopted by (Record 805): 75 Yeas, 67 Nays, 1 Present, not voting.

Yeas — Allen, A.; Alonzo; Anchia; Anderson; Bailey; Blake; Burnam; Chavez; Coleman; Cook, B.; Cook, R.; Davis, J.; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Goodman; Goolsby;

Griggs; Guillen; Hamilton; Herrero; Hochberg; Homer; Hopson; Hughes; Hunter; Jones, D.; Jones, J.; Keffer, J.; King, T.; Laney; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Merritt; Miller; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Ritter; Rodriguez; Smith, T.; Solis; Strama; Thompson; Turner; Uresti; Veasey; Villarreal; Vo.

Nays — Allen, R.; Baxter; Berman; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chisum; Corte; Crabb; Crownover; Dawson; Delisi; Denny; Driver; Elkins; Flynn; Gattis; Grusendorf; Haggerty; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Hope; Howard; Hupp; Isett; Jackson; Keel; Keffer, B.; King, P.; Kolkhorst; Krusee; Kuempel; Laubenberg; Madden; McCall; Morrison; Mowery; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Seaman; Smith, W.; Straus; Swinford; Talton; Taylor; Truitt; Van Arsdale; West; Wong; Woolley; Zedler.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Smithee.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 805. I intended to vote no.

Eissler

I was shown voting no on Record No. 805. I intended to vote yes.

Kuempel

**Amendment No. 8**

Representative Rodriguez offered the following amendment to **SB 89**:

Amend **SB 89**:

(1)   In the recital to amended Section 63.001, Election Code, strike "Subsection (g)" and substitute "Subsections (g) and (h)".

(2)   In the section amending Section 63.001, Election Code, add a new Subsection (h) to read as follows:

(h)   The requirements for identification prescribed by Subsection (b)(1) or (2) do not apply to a voter who:

(1)   presents the voter's voter registration certificate on offering to vote; and

(2)   is 85 years of age or older as indicated by the date of birth on the voter's voter registration certificate.

Amendment No. 8 was withdrawn.

**Amendment No. 9**

Representative Rodriguez offered the following amendment to **SB 89**:

Amend **SB 89** as follows:

USA_00223736

(1)  Strike SECTIONS 7 and 8 of the bill.

(2)  Add a new appropriately numbered section to read as follows:

SECTION _____.   Section 65.054, Election Code, is amended by adding Subsection (e) to read as follows:

(e)  A provisional ballot may not be rejected on the basis of the failure of the voter to present proof of identification as described by Section 63.001(b)(1) or (2) unless the board determines that the voter is not the person whom the voter claimed to be in executing an affidavit under Section 63.011.

(3)  Renumber the remaining SECTIONS of the bill as appropriate.

Representative Denny moved to table Amendment No. 9.

A record vote was requested.

The motion to table prevailed by (Record 806): 82 Yeas, 57 Nays, 1 Present, not voting.

Yeas — Allen, R.; Anderson; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chisum; Cook, B.; Corte; Crabb; Crownover; Davis, J.; Dawson; Delisi; Denny; Driver; Eissler; Elkins; Flynn; Gattis; Goodman; Goolsby; Griggs; Grusendorf; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Howard; Hughes; Hunter; Hupp; Isett; Jones, D.; Keel; Keffer, B.; Keffer, J.; King, P.; Kolkhorst; Krusee; Kuempel; Laubenberg; Madden; McCall; Merritt; Miller; Morrison; Mowery; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Seaman; Smith, T.; Smith, W.; Smithee; Straus; Swinford; Talton; Taylor; Truitt; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Bailey; Burnam; Chavez; Coleman; Cook, R.; Davis, Y.; Deshotel; Dunnam; Dutton; Edwards; Eiland; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Guillen; Herrero; Hochberg; Homer; Hopson; Jones, J.; King, T.; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Ritter; Rodriguez; Solis; Strama; Thompson; Turner; Uresti; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Dukes; Hope; Jackson; Laney.

## SB 89 - MOTION FOR PREVIOUS QUESTION

Representative Nixon moved the previous question on passage to third reading on **SB 89.**

The motion was seconded by Representatives Bohac, Bonnen, F. Brown, Callegari, Casteel, Corte, Driver, Eissler, Elkins, Flynn, Grusendorf, Harper-Brown, Hope, Hunter, J. Keffer, Kuempel, Miller, Nixon, Olivo, Reyna, Seaman, Straus, Swinford, Talton, Wong, and Woolley.

USA_00223737

A record vote was requested.

The motion for the previous question prevailed by (Record 807): 79 Yeas, 62 Nays, 1 Present, not voting.

Yeas — Allen, R.; Anderson; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chisum; Corte; Crabb; Crownover; Dawson; Delisi; Denny; Driver; Eissler; Elkins; Flynn; Gattis; Goodman; Goolsby; Griggs; Grusendorf; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Hope; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Keel; Keffer, B.; Keffer, J.; King, P.; Krusee; Kuempel; Laubenberg; Madden; McCall; Miller; Morrison; Mowery; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Seaman; Smith, T.; Smith, W.; Smithee; Straus; Swinford; Talton; Taylor; Truitt; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Bailey; Burnam; Chavez; Coleman; Cook, B.; Cook, R.; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eiland; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Guillen; Herrero; Hochberg; Homer; Hopson; Jones, D.; Jones, J.; King, T.; Laney; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Merritt; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Ritter; Rodriguez; Solis; Strama; Thompson; Turner; Uresti; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Davis, J.; Kolkhorst.

A record vote was requested.

**SB 89**, as amended, was passed to third reading by (Record 808): 83 Yeas, 59 Nays, 1 Present, not voting.

Yeas — Allen, R.; Anderson; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chisum; Cook, B.; Corte; Crabb; Crownover; Dawson; Delisi; Denny; Driver; Eissler; Elkins; Flynn; Gattis; Goodman; Goolsby; Griggs; Grusendorf; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Hilderbran; Hill; Hope; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Keel; Keffer, B.; Keffer, J.; King, P.; Kolkhorst; Krusee; Kuempel; Laubenberg; Madden; McCall; Merritt; Miller; Morrison; Mowery; Nixon; Orr; Otto; Paxton; Phillips; Pitts; Reyna; Riddle; Seaman; Smith, T.; Smith, W.; Smithee; Straus; Swinford; Talton; Taylor; Truitt; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Allen, A.; Alonzo; Anchia; Bailey; Burnam; Chavez; Coleman; Cook, R.; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eiland; Escobar; Farabee; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Guillen; Herrero; Hochberg; Homer; Hopson; Jones, J.; King, T.;

Laney; Leibowitz; Luna; Martinez; Martinez Fischer; McClendon; McReynolds; Menendez; Moreno, P.; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Ritter; Rodriguez; Solis; Strama; Thompson; Turner; Uresti; Veasey; Villarreal; Vo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Rose; Solomons.

Absent — Davis, J.

### SB 132 ON SECOND READING
### (Morrison - House Sponsor)

**SB 132**, A bill to be entitled An Act relating to goals and strategies concerning the number of graduates from professional nursing education programs.

### Amendment No. 1 (Committee Amendment No. 1)

Representative Goolsby offered the following amendment to **SB 132**:

Amend **SB 132** (Senate Engrossment) as follows:

(1) In SECTION 2 of the bill, strike amended Paragraph (B), Subdivision (1), Subsection (a), Section 61.9623, Education Code (page 2, lines 14-16), and substitute "(B) nursing faculty enhancement in accordance with Section 61.96231 [assuring the retention of an adequate number of qualified faculty, including providing faculty salaries];[or]".

(2) In SECTION 3 of the bill, in amended Section 61.9624, Education Code (page 3, line 21), strike "Sections 61.9623(a)(1)(A), [and] B, and (D)" and substitute "Sections 61.9623(a)(1)(A) and (D) [B]".

(3) Add the following appropriately numbered new SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ___. Subchapter D, Chapter 54, Education Code, is amended by adding Sections 54.221 and 54.222 to read as follows:

Sec. 54.221. CHILDREN OF PROFESSIONAL NURSING PROGRAM FACULTY. (a) In this section:

(1) "Child" means a child of any age, including an adult child. The term includes an adopted child.

(2) "Graduate professional nursing program" means an educational program of a public or private institution of higher education that prepares students for a master's or doctoral degree in nursing.

(3) "Undergraduate professional nursing program" means a public or private educational program for preparing students for initial licensure as registered nurses.

(b) The governing board of an institution of higher education shall exempt from the payment of tuition a resident of this state enrolled as an undergraduate student at the institution who is a child of a person who, at the beginning of the semester or other academic term for which an exemption is sought, holds a master's or doctoral degree in nursing, if not employed or under contract as a

teaching assistant under Subdivision (1) or (2), or a baccalaureate degree in nursing, if employed or under contract as a teaching assistant under Subdivision (1) or (2), and:

(1) is employed by an undergraduate or graduate professional nursing program in this state as a full-time member of its faculty or staff with duties that include teaching, serving as a teaching assistant, performing research, serving as an administrator, or performing other professional services; or

(2) has contracted with an undergraduate or graduate professional nursing program in this state to serve as a full-time member of its faculty or staff to perform duties described by Subdivision (1) during all or part of the semester or other academic term for which an exemption is sought or, if the child is enrolled for a summer session, during all or part of that session or for the next academic year.

(c) A child who would qualify for an exemption under this section but for the fact that the child's parent is not employed full-time is eligible for an exemption on a pro rata basis equal to the percentage of full-time employment the parent is employed, except that a parent employed for less than 25 percent of full-time employment is considered to be employed for 25 percent of full-time employment.

(d) A person is not eligible for an exemption under this section if the person:

(1) has previously received an exemption under this section for 10 semesters or summer sessions at any institution or institutions of higher education; or

(2) has received a baccalaureate degree.

(e) For purposes of Subsection (d), a summer session that is less than nine weeks in duration is considered one-half of a summer session.

(f) A person attending an institution of higher education who becomes eligible to receive an exemption from tuition under this section is eligible for a refund of the amount of money that the person paid to any institution of higher education for tuition as a resident student in the three-year period preceding the beginning of the first semester or other academic term for which the person receives the exemption.

(g) To receive a refund under Subsection (f), the person must apply to the institution from which the refund is sought before the first anniversary of the date the person becomes eligible for the refund. The institution shall pay the refund from any available funds of the institution.

(h) The Texas Higher Education Coordinating Board shall adopt:

(1) rules governing the granting or denial of an exemption under this section, including rules relating to the determination of eligibility for an exemption or for a refund of previously paid tuition; and

(2) a uniform application form for an exemption under this section.

Sec. 54.222.  PRECEPTORS FOR PROFESSIONAL NURSING EDUCATION PROGRAMS. (a) In this section, "child" and "undergraduate professional nursing program" have the meanings assigned by Section 54.221.

(b) The governing board of an institution of higher education shall exempt from the payment of $500 of the total amount of tuition a resident of this state enrolled as a student at the institution who:

(1) is a registered nurse; and

(2) is serving under a written preceptor agreement with an undergraduate professional nursing program as a clinical preceptor for students enrolled in the program for the semester or other academic term for which the exemption is sought.

(c) The governing board of an institution of higher education shall exempt from the payment of $500 of the total amount of tuition a resident of this state enrolled as an undergraduate student at the institution who is a child of a person who meets the requirements of Subsections (b)(1) and (2).

(d) Notwithstanding Subsections (b) and (c), if a person eligible for an exemption under this section owes less than $500 in tuition, the governing board of the institution of higher education in which the person is enrolled shall exempt the person from the payment of only the amount of tuition the person owes.

(e) A person is not eligible for an exemption under Subsection (c) if the person:

(1) has previously received an exemption under this section for 10 semesters or summer sessions at any institution or institutions of higher education; or

(2) has received a baccalaureate degree.

(f) For purposes of Subsection (e), a summer session that is less than nine weeks in duration is considered one-half of a summer session.

(g) The Texas Higher Education Coordinating Board shall adopt:

(1) rules governing the granting or denial of an exemption under this section, including rules relating to the determination of eligibility for an exemption; and

(2) a uniform application form for an exemption under this section.

SECTION ___. Subchapter Z, Chapter 61, Education Code, is amended by adding Section 61.96231 to read as follows:

Sec. 61.96231. NURSING FACULTY ENHANCEMENT GRANTS. (a) Under the professional nursing shortage reduction program, the board may award nursing faculty enhancement grants to professional nursing programs to assist the programs in the education, recruitment, and retention of a sufficient number of faculty members to enable the programs to enroll a sufficient number of students to meet the state's need for registered nurses.

(b) A grant awarded under this section may be used only for the purposes specified by Subsection (a), including providing salary supplements and enhancements and reducing the number of hours a faculty member must teach.

(c) In awarding a grant under this section, the board may require matching funds from a professional nursing program or may give preference in awarding a grant to a program providing matching funds.

(d)  The board may appoint an advisory committee to advise the board on successful strategies, in addition to the grants awarded under this section, for educating, recruiting, and retaining qualified professional nursing program faculty members who hold master's or doctoral degrees.

SECTION ___.  Section 824.602(a), Government Code, is amended to read as follows:

(a)  Subject to Section 825.506, the retirement system may not, under Section 824.601, withhold a monthly benefit payment if the retiree is employed in a Texas public educational institution:

(1)  as a substitute only with pay not more than the daily rate of substitute pay established by the employer and, if the retiree is a disability retiree, the employment has not exceeded a total of 90 days in the school year;

(2)  in a position, other than as a substitute, on no more than a one-half time basis for the month;

(3)  in one or more positions on as much as a full-time basis, if the work occurs in not more than six months of a school year that begins after the retiree's effective date of retirement;

(4)  in a position, other than as a substitute, on no more than a one-half time basis for no more than 90 days in the school year, if the retiree is a disability retiree;

(5)  in a position as a classroom teacher on as much as a full-time basis, if the retiree has retired under Section 824.202(a), is certified under Subchapter B, Chapter 21, Education Code, to teach the subjects assigned, is teaching in an acute shortage area as determined by the board of trustees of a school district as provided by Subsection (m), and has been separated from service with all public schools for at least 12 months;

(6)  in a position as a principal, including as an assistant principal, on as much as a full-time basis, if the retiree has retired under Section 824.202(a) without reduction for retirement at an early age, is certified under Subchapter B, Chapter 21, Education Code, to serve as a principal, and has been separated from service with all public schools for at least 12 months; [or]

(7)  as a bus driver for a school district on as much as a full-time basis, if the retiree has retired under Section 824.202(a); or

(8)  as a faculty member, during the period beginning with the 2005 fall semester and ending on the last day of the 2015 spring semester, in an undergraduate professional nursing program or graduate professional nursing program, as defined by Section 54.221, Education Code.

SECTION ___.  Subchapter B, Chapter 1372, Government Code, is amended by adding Section 1372.0223 to read as follows:

Sec. 1372.0223.  DEDICATION OF PORTION OF STATE CEILING FOR PROFESSIONAL NURSING PROGRAM FACULTY MEMBER HOME LOAN PROGRAM. Until August 1, out of that portion of the state ceiling that is available exclusively for reservations by issuers of qualified mortgage bonds under Section 1372.022, $5 million shall be allotted each year and made available exclusively to the Texas State Affordable Housing Corporation for the purpose of

issuing qualified mortgage bonds in connection with the professional nursing program faculty member home loan program established under Section 2306.5622.

SECTION ___. (a) This section takes effect only if the Act of the 79th Legislature, Regular Session, 2005, relating to the nonsubstantive additions to and corrections in enacted codes (the general code update bill) is enacted and becomes law.

(b) Section 2306.553(a), Government Code, is amended to read as follows:

(a) The public purpose of the corporation is to perform activities and services that the corporation's board of directors determines will promote the public health, safety, and welfare through the provision of adequate, safe, and sanitary housing primarily for individuals and families of low, very low, and extremely low income, for professional educators under the professional educators home loan program as provided by Section 2306.562, [and] for fire fighters and police officers under the fire fighter and police officer home loan program as provided by Section 2306.5621, and for professional nursing program faculty members under the professional nursing program faculty member home loan program as provided by Section 2306.5622 [2306.563]. The activities and services shall include engaging in mortgage banking activities and lending transactions and acquiring, holding, selling, or leasing real or personal property.

SECTION ___. (a) This section takes effect only if the Act of the 79th Legislature, Regular Session, 2005, relating to nonsubstantive additions to and corrections in enacted codes (the general code update bill) does not become law.

(b) Section 2306.553(a), Government Code, is amended to read as follows:

(a) The public purpose of the corporation is to perform activities and services that the corporation's board of directors determines will promote the public health, safety, and welfare through the provision of adequate, safe, and sanitary housing primarily for individuals and families of low, very low, and extremely low income, for professional educators under the professional educators home loan program as provided by Section 2306.562, [and] for fire fighters and police officers under the fire fighter and police officer home loan program as provided by Section 2306.563, and for professional nursing program faculty members under the professional nursing program faculty member home loan program as provided by Section 2306.5622. The activities and services shall include engaging in mortgage banking activities and lending transactions and acquiring, holding, selling, or leasing real or personal property.

SECTION ___. Section 2306.553(b), Government Code, is amended to read as follows:

(b) The corporation's primary public purpose is to facilitate the provision of housing by issuing qualified 501(c)(3) bonds and qualified residential rental project bonds and by making affordable loans to individuals and families of low, very low, and extremely low income, to professional educators under the professional educators home loan program, [and] to fire fighters and police officers under the fire fighter and police officer home loan program, and to professional nursing program faculty members under the professional nursing program faculty member home loan program. The corporation may make first

lien, single family purchase money mortgage loans for single family homes only to individuals and families of low, very low, and extremely low income if the individual's or family's household income is not more than the greater of 60 percent of the median income for the state, as defined by the United States Department of Housing and Urban Development, or 60 percent of the area median family income, adjusted for family size, as defined by that department. The corporation may make loans for multifamily developments if:

(1) at least 40 percent of the units in a multifamily development are affordable to individuals and families with incomes at or below 60 percent of the median family income, adjusted for family size; or

(2) at least 20 percent of the units in a multifamily development are affordable to individuals and families with incomes at or below 50 percent of the median family income, adjusted for family size.

SECTION ___. Subchapter Y, Chapter 2306, Government Code, is amended by adding Section 2306.5622 to read as follows:

Sec. 2306.5622. PROFESSIONAL NURSING PROGRAM FACULTY MEMBER HOME LOAN PROGRAM. (a) In this section:

(1) "Graduate professional nursing program" and "undergraduate professional nursing program" have the meanings assigned by Section 54.221, Education Code.

(2) "Home" means a dwelling in this state in which a professional nursing program faculty member intends to reside as the faculty member's principal residence.

(3) "Mortgage lender" has the meaning assigned by Section 2306.004.

(4) "Professional nursing program faculty member" means a full-time member of the faculty of either an undergraduate or graduate professional nursing program.

(5) "Program" means the professional nursing program faculty member home loan program.

(b) The corporation shall establish a program to provide eligible professional nursing program faculty members with low-interest home mortgage loans.

(c) To be eligible for a loan under this section, at the time a person files an application for the loan, the person must:

(1) be a faculty member of an undergraduate or graduate professional nursing program;

(2) reside in this state; and

(3) have an income of not more than 115 percent of area median family income, adjusted for family size.

(d) The corporation may contract with other agencies of the state or with private entities to determine whether applicants qualify as professional nursing program faculty members under this section or otherwise to administer all or part of this section.

(e) The board of directors of the corporation may set and collect from each applicant any fees the board considers reasonable and necessary to cover the expenses of administering the program.

(f)  The board of directors of the corporation shall adopt rules governing:

(1)  the administration of the program;

(2)  the making of loans under the program;

(3)  the criteria for approving mortgage lenders;

(4)  the use of insurance on the loans and the homes financed under the program, as considered appropriate by the board to provide additional security for the loans;

(5)  the verification of occupancy of the home by the professional nursing program faculty member as the professional nursing program faculty member's principal residence; and

(6)  the terms of any contract made with any mortgage lender for processing, originating, servicing, or administering the loans.

(g)  The corporation shall ensure that a loan under this section is structured in a way that complies with any requirements associated with the source of the funds used for the loan.

(h)  In addition to funds set aside for the program under Section 1372.0223, the corporation may solicit and accept funding for the program from the following sources:

(1)  gifts and grants for the purposes of this section;

(2)  available money in the housing trust fund established under Section 2306.201, to the extent available to the corporation;

(3)  federal block grants that may be used for the purposes of this section, to the extent available to the corporation;

(4)  other state or federal programs that provide money that may be used for the purposes of this section; and

(5)  amounts received by the corporation in repayment of loans made under this section.

(i)  This section expires September 1, 2016.

SECTION ___. (a) Except as provided by Subsection (b) of this section, Sections 54.221 and 54.222, Education Code, as added by this Act, take effect beginning with the 2006 fall semester.

(b)  Not later than January 1, 2006, the Texas Higher Education Coordinating Board shall adopt rules and forms relating to tuition exemptions under Sections 54.221 and 54.222, Education Code, as added by this Act.

SECTION ___. The change in law made by this Act to Section 61.9623(a), Education Code, applies only to expenditure of grant money under that section after this Act takes effect. Expenditure of grant money under that section before this Act takes effect is governed by the law in effect at the time grant money was spent, and that law is continued in effect for that purpose.

SECTION ___. The change in law made by this Act to Section 824.602, Government Code, applies beginning with the 2005 fall semester.

SECTION ___. The Texas State Affordable Housing Corporation shall:

(1)  aggressively pursue funding for the professional nursing school faculty member home loan program required by Section 2306.5622, Government Code, as added by this Act; and

(2) implement the professional nursing school faculty member home loan program required by that section not later than September 1, 2005, or as soon thereafter as practicable.

**Amendment No. 2**

Representative Morrison offered the following amendment to Amendment No. 1:

Amend Committee Amendment No. 1 to **SB 132**, in added Section 54.221, Education Code, as follows:

(1)  In Subsection (a), strike Subdivision (a) and substitute the following:

(1)  "Child" means a child 25 years of age or younger and includes an adopted child.

(2)  Strike Subsections (f) and (g), substitute the following, and reletter Subsection (h) as Subsection (g):

(f)  The tuition exemption provided by this section applies only to enrollment of a child at the institution at which the child's parent is employed or is under contract.

(3)  In existing Subdivision (1), Subsection (h), strike "or for a refund of previously paid tuition".

Amendment No. 2 was adopted.

**Amendment No. 3**

On behalf of Representative Eiland, Representative Morrison offered the following amendment to Amendment No. 1:

Amend Committee Amendment No. 1 to **SB 132** by striking page 11, line 12 through page 12, line 23.

Amendment No. 3 was adopted.

Amendment No. 1, as amended, was adopted.

**SB 132**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Howard recorded voting no.)

## SB 851 ON SECOND READING
### (Woolley - House Sponsor)

**SB 851**, A bill to be entitled An Act relating to a financial literacy pilot program in public schools.

(Rose now present)

**Amendment No. 1**

Representative Thompson offered the following amendment to **SB 851**:

Amend **SB 851** on page 2, line 11 by striking "five" and substituting "twenty-five".

Amendment No. 1 was adopted.

USA_00223746

**Amendment No. 2**

Representative Thompson offered the following amendment to **SB 851**:

Amend **SB 851** on page 2, following line 12, to add a new subsection (e) to read as follows and renumbering subsequent subsections:

"(e) school district with less than 11,000 ADA in a county with a population greater than 3,000,000 people."

Amendment No. 2 was withdrawn.

**Amendment No. 3**

Representative Thompson offered the following amendment to **SB 851**:

Amend **SB 851** on page 2, line 6, between ":" and "and" by inserting a new subsection (c)(9) to read as follows and renumbering subsequent subsections:

"(9) balancing a check book".

Amendment No. 3 was adopted.

**SB 851**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Harper-Brown recorded voting no.)

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 4).

## INTRODUCTION OF GUESTS

The speaker recognized Representative J. Keffer who introduced Tom and Lisa Perini of Perini Ranch in Buffalo Gap.

## SB 151 ON SECOND READING
### (Morrison - House Sponsor)

**SB 151**, A bill to be entitled An Act relating to students enrolled in junior college courses for which students may receive both high school and higher education academic credit.

**Amendment No. 1**

Representative Raymond offered the following amendment to **SB 151**:

Amend **SB 151** by adding the following numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly.

SECTION ____. Subchapter F, Chapter 87, Education Code, is amended by adding Section 87.505 to read as follows:

Sec. 87.505. TEXAS ACADEMY OF INTERNATIONAL STUDIES. (a) In this section:

(1) "Academy" means the Texas Academy of International Studies.

(2) "Board" means the board of regents of The Texas A&M University System.

USA_00223747

(3) "University" means Texas A&M International University.

(b) The Texas Academy of International Studies is a division of Texas A&M International University and is under the management and control of the board. The academy serves the following purposes:

(1) to provide academically gifted and highly motivated junior and senior high school students with a challenging university-level curriculum that:

(A) allows students to complete high school graduation requirements, including requirements adopted under Section 28.025 for the advanced high school program, while attending for academic credit a public institution of higher education;

(B) fosters students' knowledge of real-world international issues and problems and teaches students to apply critical thinking and problem-solving skills to those issues and problems;

(C) includes the study of English, foreign languages, social studies, anthropology, and sociology;

(D) is presented through an interdisciplinary approach that introduces and develops issues, especially issues related to international concerns, throughout the curriculum; and

(E) offers students learning opportunities related to international issues through in-depth research and field-based studies;

(2) to provide students with an awareness of international career and professional development opportunities through seminars, workshops, collaboration with postsecondary students from other countries, summer academic international studies internships in foreign countries, and similar methods; and

(3) to provide students with social development activities that enrich the academic curriculum and student life, including, as determined appropriate by the academy, University Interscholastic League activities and other extracurricular activities generally offered by public high schools.

(c) The academy is a residential, coeducational institution for selected Texas high school students with an interest and the potential to excel in international studies. The academy shall admit only high school juniors and seniors, except that the academy may admit a student with exceptional abilities who is not yet a high school junior. The board shall set aside adequate space on the university campus in Laredo to operate the academy and implement the purposes of this section. The academy must operate on the same fall and spring semester basis as the university. Full-time students of the academy must enroll for both the fall and spring semesters. Faculty members of the university shall teach all academic classes at the academy. A student of the academy may attend a college course offered by the university and receive college credit for that course.

(d) Except as otherwise provided by this subsection, the university administration has the same powers and duties with respect to the academy that the administration has with respect to the university. The board shall consult with the dean of the College of Education and other members of the administration as

USA_00223748

the board considers necessary concerning the academy's administrative design and support, personnel and student issues, and faculty development. The board shall consult with the dean of the College of Arts and Sciences and other members of the administration as the board considers necessary concerning the academy's curriculum development, program design, and general faculty issues. The board, in consultation with university administration, shall:

(1)  establish an internal management system for the academy and appoint an academy principal who serves at the will of the board and reports to the university provost;

(2)  provide for one or more academy counselors;

(3)  establish for the academy a site-based decision-making process similar to the process required by Subchapter F, Chapter 11, that provides for the participation of academy faculty, parents of academy students, and other members of the community; and

(4)  establish an admissions process for the academy.

(e)  The student-teacher ratio in all regular academic classes at the academy may not exceed 30 students for each classroom teacher, except that the student-teacher ratio may exceed that limit:

(1)  in a program provided for the purposes prescribed by Subsection (b)(2) or another special enrichment course or in a physical education course; or

(2)  if the board determines that a class with a higher student-teacher ratio would contribute to the educational development of the students in the class.

(f)  The academy shall provide the university-level curriculum in a manner that is appropriate for the social, psychological, emotional, and physical development of high school juniors and seniors. The administrative and counseling personnel of the academy shall provide continuous support to and supervision of students.

(g)  For each student enrolled in the academy, the academy is entitled to allotments from the foundation school fund under Chapter 42 as if the academy were a school district without a tier one local share for purposes of Section 42.253.   If in any academic year the amount of the allotments under this subsection exceeds the amount of state funds paid to the academy in the first fiscal year of the academy's operation, the commissioner of education shall set aside from the total amount of funds to which school districts are entitled under Section 42.253(c) an amount equal to the excess amount and shall distribute that amount to the academy. After deducting the amount set aside and paid to the academy by the commissioner of education under this subsection, the commissioner of education shall reduce the amount to which each district is entitled under Section 42.253(c) in the manner described by Section 42.253(h). A determination of the commissioner of education under this subsection is final and may not be appealed.

(h)  The board may use any available money, enter into contracts, and accept grants, including matching grants, federal grants, and grants from a corporation or other private contributor, in establishing and operating the academy. Money spent by the academy must further the purposes of the academy prescribed by Subsection (b).

USA_00223749

(i)  The liability of the state under Chapters 101 and 104, Civil Practice and Remedies Code, is limited for the academy and employees assigned to the academy and acting on behalf of the academy to the same extent that the liability of a school district and an employee of the school district is limited under Sections 22.0511, 22.0512, and 22.052 of this code and Section 101.051, Civil Practice and Remedies Code. An employee assigned to the academy is entitled to representation by the attorney general in a civil suit based on an action or omission of the employee in the course of the employee's employment, limits on liability, and indemnity under Chapters 104 and 108, Civil Practice and Remedies Code.

(j)  Except as otherwise provided by this section, the academy is not subject to the provisions of this code, or to the rules of the Texas Education Agency, regulating public schools.

(k)  A student may not begin attending the academy before the 2007 fall semester.  This subsection expires August 31, 2008.

SECTION ____.  Subsection (a), Section 25.086, Education Code, is amended to read as follows:

(a)  A child is exempt from the requirements of compulsory school attendance if the child:

(1)  attends a private or parochial school that includes in its course a study of good citizenship;

(2)  is eligible to participate in a school district's special education program under Section 29.003 and cannot be appropriately served by the resident district;

(3)  has a physical or mental condition of a temporary and remediable nature that makes the child's attendance infeasible and holds a certificate from a qualified physician specifying the temporary condition, indicating the treatment prescribed to remedy the temporary condition, and covering the anticipated period of the child's absence from school for the purpose of receiving and recuperating from that remedial treatment;

(4)  is expelled in accordance with the requirements of law in a school district that does not participate in a mandatory juvenile justice alternative education program under Section 37.011;

(5)  is at least 17 years of age and:

(A)  is attending a course of instruction to prepare for the high school equivalency examination, and:

(i)  has the permission of the child's parent or guardian to attend the course;

(ii)  is required by court order to attend the course;

(iii)  has established a residence separate and apart from the child's parent, guardian, or other person having lawful control of the child; or

(iv)  is homeless as defined by 42 U.S.C. Section 11302; or

(B)  has received a high school diploma or high school equivalency certificate;

(6)  is at least 16 years of age and is attending a course of instruction to prepare for the high school equivalency examination, if:

USA_00223750

(A)  the child is recommended to take the course of instruction by a public agency that has supervision or custody of the child under a court order; or

(B)  the child is enrolled in a Job Corps training program under [the Job Training Partnership Act (]29 U.S.C. Section 2881 [1501] et seq.[), and its subsequent amendments];

(7)  is enrolled in the Texas Academy of Mathematics and Science;

(8)  is enrolled in the Texas Academy of Leadership in the Humanities; [or]

(9)  is enrolled in the Texas Academy of International Studies; or

(10)  is specifically exempted under another law.

SECTION ____.  Section 28.024, Education Code, is amended to read as follows:

Sec. 28.024.  CREDIT FOR ENROLLMENT IN CERTAIN ACADEMIES. A school district shall grant to a student credit toward the academic course requirements for high school graduation, up to a maximum of two years of credit, for courses the student successfully completes at:

(1)  the Texas Academy of Leadership in the Humanities under Section 96.707 [Subchapter E, Chapter 108]; [or]

(2)  the Texas Academy of Mathematics and Science under Subchapter G [H], Chapter 105; or

(3)  the Texas Academy of International Studies under Section 87.505.

(Dutton in the chair)

Amendment No. 1 was adopted.

**SB 151**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### SB 567 ON SECOND READING
### (J. Keffer - House Sponsor)

**SB 567**, A bill to be entitled An Act relating to requiring a taxing unit to include in the public notice of a hearing on the adoption of an ad valorem tax rate certain information relating to the taxing unit's budget and appraisal roll.

## Amendment No. 1

Representative Y. Davis offered the following amendment to **SB 567**:

Amend **SB 567** on page 1, line 11, by striking "18-point" and substituting "24-point [18-point]".

Amendment No. 1 was adopted.

## Amendment No. 2

Representative Riddle offered the following amendment to **SB 567**:

Amend **SB 567** as follows:

(1)  In SECTION 1 of the bill, strike the prefatory language (committee printing, page 1, lines 7 and 8), and substitute the following:

SECTION 1.   Subsections (b) and (c), Section 26.06, Tax Code, are amended to read as follows:

(2)  In SECTION 1 of the bill, immediately following amended Subsection (b), Section 26.06, Tax Code (committee printing, page 3, between lines 23 and 24), insert the following:

(c)  The notice must [may] be delivered by mail to each property owner in the unit and [, or it may be] published in a newspaper.  The [If the] notice [is] published in a newspaper [, it] may not be in the part of the paper in which legal notices and classified advertisements appear.

(3)  In SECTION 2 of the bill, strike the prefatory language (committee printing, page 3, lines 24 and 25), and substitute the following:

SECTION 2.   Subsections (b) and (c), Section 44.004, Education Code, are amended to read as follows:

(b)  The president shall provide for the mailing of notice of the budget and proposed tax rate meeting to each property owner in the school district and for the publication of notice of the budget and proposed tax rate meeting in a daily, weekly, or biweekly newspaper published in the district.  If no daily, weekly, or biweekly newspaper is published in the district, the president shall provide for the publication of notice in at least one newspaper of general circulation in the county in which the district's central administrative office is located.  Notice under this subsection shall be published not earlier than the 30th day or later than the 10th day before the date of the hearing.  The notice mailed to property owners must contain all the information required by Subsection (c).

(4)  In SECTION 2 of the bill, amended Subsection (c), Section 44.004, Education Code (committee printing, page 3, line 26), between "The" and "notice", insert "published".

Amendment No. 2 was adopted.

**Amendment No. 3**

Representative Thompson offered the following amendment to **SB 567**:

Amend **SB 567** on page 4, on line 25 between ";" and "and" by adding a new Subsections (C) and (D) to read as follows and renumbering subsequent subsections:

"(C)  the growth or decrease in the total value of property;

"(D)  the growth or decrease in the total estimated population;

"(E)  the growth or decrease in the estimated number of households living with a household income under 125% of the federal poverty guidelines;

"(F)   the growth or decrease in the estimated number of children enrolled in the school district who qualify for free breakfasts and/or free lunches;

"(G)   the growth or decrease in the estimated number of children with special needs;

"(H)   the growth or decrease in the number of miles required to transport students to and from school;

"(I)   the growth or decrease in the number and cost of new textbooks and technological hardware;"

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Dunnam offered the following amendment to **SB 567**:

Amend **SB 567** as follows:

(1)  On page 2, line 6, between "(A)" and "the", insert "a section entitled "Comparison of Proposed Budget with Last Year's Budget, which must show".

(2)  On page 2, line 13, between "(B)" and "the", insert "a section entitled "Total Appraised Value and Total Taxable Value, which must show".

Amendment No. 4 was adopted.

**SB 567**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

#### BILLS AND RESOLUTIONS SIGNED BY THE SPEAKER

Notice was given at this time that the speaker had signed bills and resolutions in the presence of the house (see the addendum to the daily journal, Signed by the Speaker, Senate List No. 28).

### SB 568 ON SECOND READING
### (Truitt - House Sponsor)

**SB 568**, A bill to be entitled An Act relating to personal emergency response system providers; providing penalties.

**Amendment No. 1**

Representative Truitt offered the following amendment to **SB 568**:

Amend **SB 568** (House committee report) as follows:

(1)  In SECTION 2 of the bill, in Subdivision (5) of added Section 781.001, Health and Safety Code (page 2, line 24), strike "security services contractor" and substitute "personal emergency response system provider".

(2)  In SECTION 2 of the bill, in added Section 781.101, Health and Safety Code (page 3, line 21), strike "SECURITY SERVICES CONTRACTOR" and substitute "PERSONAL EMERGENCY RESPONSE SYSTEM PROVIDER".

(3)  In SECTION 2 of the bill, in added Section 781.101, Health and Safety Code (page 3, lines 22-24), strike "as a security services contractor, a person may not act as or offer to perform the services of an alarm systems company" and substitute "issued under this chapter, a person may not act as or perform the services of a personal emergency response system provider".

(4)  In SECTION 2 of the bill, in added Section 781.102, Health and Safety Code (page 3, lines 25-26), strike "ALARM SYSTEMS COMPANY. A person acts as an alarm systems company" and substitute "PERSONAL EMERGENCY RESPONSE SYSTEM PROVIDER. A person acts as a personal emergency response system provider".

USA_00223753

(5) In SECTION 2 of the bill, strike Subdivision (5) of added Section 781.103, Health and Safety Code (page 4, lines 15-19), and renumber subsequent subdivisions of added Section 781.103, Health and Safety Code, appropriately.

(6) In SECTION 2 of the bill, in Subsection (a) of added Section 781.201, Health and Safety Code (page 11, line 26, through page 12, line 2), strike "Federal Bureau of Investigation, in the manner provided by Subchapter F, Chapter 411, Government Code, on each applicant for a license or registration" and substitute "Department of Public Safety, that relates to each applicant for registration".

(7) In SECTION 2 of the bill, in Subsection (a) of added Section 781.201, Health and Safety Code (page 12, lines 5-7), strike "Each applicant must include in the application two complete sets of fingerprints on forms prescribed by the commissioner accompanied by the fee set by the commissioner."

(8) In SECTION 2 of the bill, in the first sentence of Subsection (a) of added Section 781.258, Health and Safety Code (page 16, line 27), strike "shall" and substitute "may".

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Driver offered the following amendment to **SB 568**:

Amend **SB 568** (House Committee Printing) by adding the following appropriately numbered SECTIONS to the bill and renumbering the subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 214.194, Local Government Code, is amended to read as follows:

Sec. 214.194. [FEE FOR] MUNICIPAL PERMIT FEE GENERALLY. (a) If a municipality adopts an ordinance that requires a person to pay an annual fee to obtain a permit from the municipality before the person may use an alarm system in the municipality, the fee shall be used for the general administration of this subchapter, including the provision of responses generally required to implement this subchapter other than specific responses to false alarms.

(b) A municipal permit fee imposed under this section may not exceed the rate of $50 a year for a residential location.

SECTION ____. The heading to Section 214.195, Local Government Code, is amended to read as follows:

Sec. 214.195. NONRENEWAL OR REVOCATION OF PERMIT AND TERMINATION OF MUNICIPAL RESPONSE; [AND] DISCRIMINATION PROHIBITED.

SECTION ____. Sections 214.195(a) and (d), Local Government Code, are amended to read as follows:

(a) Except as provided in Subsection (d) [of this section], a municipality may not terminate its law enforcement response to a residential permit holder because of excess false alarms if the false alarm fees are paid in full.

(d)  A municipality may revoke or [set standards for systems to be permitted and may] refuse to renew the permit of an alarm system that has had eight or more false alarms during the preceding 12-month period [permit particular systems which in its discretion have a history of unreliability].

SECTION ___.  Subchapter F, Chapter 214, Local Government Code, is amended by adding Section 214.1955 to read as follows:

Sec. 214.1955.  MULTIUNIT HOUSING FACILITIES. (a) A municipality may not refuse to issue an alarm system permit for a residential location solely because the residential location is an individual residential unit located in a multiunit housing facility.

(b)  In issuing an alarm system permit for an alarm installed in an individual residential unit of a multiunit housing facility, the municipality shall issue the permit to the person occupying the individual residential unit.

(c)  A municipality may impose a penalty under Section 214.197 for the signaling of a false alarm on the premises of a multiunit housing facility for a facility other than an individual residential unit only if the permit holder is notified of:

(1)  the date of the signaling of the false alarm;

(2)  the address of the multiunit housing facility where the signaling of the false alarm occurred; and

(3)  the identification of the individual facility, if applicable, located on the multiunit housing facility premises where the signaling of the false alarm occurred.

SECTION ___.  Section 214.197, Local Government Code, is amended to read as follows:

Sec. 214.197.  PENALTIES FOR FALSE ALARMS  [PENALTY LIMITATIONS]. [(a)] A municipality may [not] impose a penalty [or fee] for the signaling of a false alarm by a burglar alarm system if [unless] at least three [five] other false alarms have occurred during the preceding 12-month period. The amount of the penalty for the signaling of a false alarm as described by Section 214.196 may not exceed:

(1)  $50, if the location has had more than three but fewer than six other false alarms in the preceding 12-month period;

(2)  $75, if the location has had more than five but fewer than eight other false alarms in the preceding 12-month period; or

(3)  $100, if the location has had eight or more other false alarms in the preceding 12-month period.

[(b)  A penalty or fee imposed for a false alarm must be established by ordinance based on the type and level of emergency response provided. This fee may not exceed $50 in the case of the category of burglar alarms. The penalty or fee for a false alarm may not exceed the actual expenses incurred for the response.]

SECTION ___.  Subchapter F, Chapter 214, Local Government Code, is amended by adding Sections 214.198-214.200 to read as follows:

USA_00223755

Sec. 214.198. VERIFICATION. A municipality may require an alarm systems monitor to attempt to contact the occupant of the alarm system location twice before the municipality responds to the alarm signal.

Sec. 214.199. EXCEPTION OF MUNICIPALITY FROM ALARM SYSTEM RESPONSE. (a) The governing body of a municipality may not adopt an ordinance providing that law enforcement personnel of the municipality will not respond to any alarm signal indicated by an alarm system in the municipality unless, before adopting the ordinance, the governing body of the municipality:

(1) makes reasonable efforts to notify permit holders of its intention to adopt the ordinance; and

(2) conducts a public hearing at which persons interested in the response of the municipality to alarm systems are given the opportunity to be heard.

(b) A municipality that adopts an ordinance under this section may not impose or collect any fine, fee, or penalty otherwise authorized by this subchapter.

Sec. 214.200. PRIORITY OR LEVEL OF RESPONSE NOT AFFECTED; LIABILITY OF MUNICIPALITY FOR NONRESPONSE. (a) Nothing in this subchapter:

(1) affects the priority or level of response provided by a municipality to a permitted location; or

(2) waives the governmental immunity provided by law for a municipality.

(b) A municipality that does not respond to an alarm signal is not liable for damages that may occur relating to the cause of the alarm signal.

SECTION ___. Subchapter L, Chapter 1702, Occupations Code, is amended by adding Sections 1702.286, 1702.287, and 1702.288 to read as follows:

Sec. 1702.286. DUTIES OF ALARM SYSTEMS COMPANY. (a) On the installation or activation of an alarm system, an alarm systems company shall distribute to the occupant of the alarm system location information summarizing:

(1) the applicable law relating to false alarms, including the potential for penalties and revocation or suspension of a permit;

(2) how to prevent false alarms; and

(3) how to operate the alarm system.

(b) An alarm systems company shall notify the municipality in which the alarm system is located of an installation or activation of an alarm system not later than the 30th day after the date of the installation or activation. The alarm systems company shall provide to the municipality:

(1) the alarm systems company name;

(2) the alarm systems company license number;

(3) the name of the occupant of the alarm system location;

(4) the address of the alarm system location; and

(5) the date of installation or activation.

(c) Information provided to a governmental body under this section is confidential and subject to disclosure only as provided under Section 1702.284.

(d)  An alarm systems company commits an offense if the company violates Subsection (a) or (b). An offense under this subsection is a Class C misdemeanor.

(e)  The duties imposed by this section on an alarm systems company do not apply to the installation or activation of a personal emergency response system, as defined under Section 1702.331.

Sec. 1702.287.  DETECTION DEVICE CONTROL PANELS; MINIMUM STANDARDS. An alarm systems company may not install any alarm system on or after January 1, 2007, that includes a detection device control panel unless the control panel meets or exceeds the standards of the American National Standards Institute for false alarm reduction.

Sec. 1702.288.  NOTICE OF CERTAIN INFORMATION TO RECIPIENT OF ALARM SYSTEM SERVICES. (a) The board shall adopt rules in accordance with this section that require a license holder acting as an alarm systems company under this chapter to inform each of the license holder's clients that the client is entitled to receive a written contract for alarm system services that contains the client's fee arrangement and other relevant information about services to be rendered.

(b)  The rules shall require that a written contract for alarm system services shall be furnished to a client in accordance with Subsection (a) not later than the seventh day after the date the client requests the written contract.

(c)  The rules shall require that the written contract for services shall be dated and signed by the owner or manager of an alarm systems company or a person expressly authorized by the owner or manager to sign written contracts on behalf of the company.

(d)  The rules shall require that, not later than the seventh day after the date of entering into a contract for services regulated by the board with another alarm systems company or alarm systems monitor, an alarm systems company shall:

(1)  notify the recipient of those services of the name, address, and telephone number, and individual to contact at the company that purchased the contract;

(2)  notify the recipient of services at the time the contract is negotiated that another licensed company may provide any of the services requested by subcontracting or outsourcing those services; and

(3)  if any of the services are subcontracted or outsourced to a licensed third party, notify the recipient of services, by mail, of the name, address, phone number, and license number of the company providing those services.

(e)  The rules shall require that notice provided to a recipient of services under Subsection (d) shall:

(1)  be mailed to the recipient in a written form that emphasizes the required information; and

(2)  include stickers or other materials to be affixed to an alarm system indicating the alarm systems company's or alarm systems monitor's new telephone number.

SECTION ____. Section 1702.286, Occupations Code, as added by this Act, applies only to an alarm system installed or activated on or after January 1, 2006.

**Amendment No. 2 - Point of Order**

Representative Pickett raised a point of order against further consideration of Amendment No. 2 under Rule 11, Section 2 of the House Rules on the grounds that it is not germane to the bill.

The chair overruled the point of order.

Amendment No. 2 was adopted.

**SB 568**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Harper-Brown recorded voting no.)

### SB 568 - STATEMENT OF LEGISLATIVE INTENT

It is my intent that with the passage of **SB 568** alarm companies currently regulated by DPS will continue to be regulated by DPS, even if they include Personal Emergency Response Services in their menu of available services and would not need to seek any additional license for the provision of Personal Emergency Response Services.

Those companies currently regulated by the DSHS for Personal Emergency Response Services that would expand their menu of services to include those items currently covered by DPS will need to apply to DPS for the appropriate licensure.

Truitt

### CSSB 330 ON SECOND READING
### (McReynolds - House Sponsor)

**CSSB 330**, A bill to be entitled An Act relating to the creation of a stroke committee and the development of a statewide stroke emergency transport plan.

**Amendment No. 1**

Representative McReynolds offered the following amendment to **CSSB 330**:

Amend **CSSB 330** (House committee printing) as follows:

(1)  In SECTION 3 of the bill, in added Section 773.201, Health and Safety Code (page 1, lines 20-21) strike "to construct an emergency treatment system in" and substitute "that a statewide stroke emergency transport plan be developed for".

(2)  In SECTION 3 of the bill, in added Section 773.202(3)(B), Health and Safety Code, (page 2, line 10) strike "trauma system" and substitute "trauma care system, as defined by Section 773.003".

(3)  In SECTION 3 of the bill, in added Section 773.203(b)(1), Health and Safety Code (page 2, line 21) between "for accreditation" and "from" insert "in Vascular Neurology".

USA_00223758

(4)  In SECTION 3 of the bill, in added Section 773.204(b)(3), Health and Safety Code (page 3, lines 22-23) strike "designated facility when rapid transport is appropriate" and substitute "stroke facility when rapid transport is appropriate and it is safe to bypass another health care facility".

(5)  In SECTION 4 of the bill (page 4, lines 8-11) strike Subsection (b) of that SECTION and reletter the subsequent subsection.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Thompson offered the following amendment to **CSSB 330**:

Amend **CSSB 330** as follows:

On page 2, following line 13, add Subsection (D) as follows and renumber subsequent subsections:

"(E)  has a stroke team composed of emergency medicine, neurology, neurosurgery, radiology, nursing, laboratory, pharmacy and respiratory therapy. The team must be experienced in the administration of approved acute stroke treatment including thrombolysis."

Amendment No. 2 was withdrawn.

**CSSB 330**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Harper-Brown recorded voting no.)

### CSSB 809 ON SECOND READING
### (Taylor - House Sponsor)

**CSSB 809**, A bill to be entitled An Act relating to the Texas Health Insurance Risk Pool.

**Amendment No. 1**

Representative Seaman offered the following amendment to **CSSB 809**:

Amend **CSSB 809**, house committee printing, by inserting the following new SECTION, appropriately numbered, and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____.  Subchapter D, Chapter 1506, Insurance Code, is amended by adding Section 1506.160 to read as follows:

Sec. 1506.160.  REIMBURSEMENT RATES. The health benefit coverage provided by the pool must provide payment or reimbursement for covered benefits to physicians and other health care providers at the lesser of:

(1)  the rate specified in the contract between the physician and other health care provider and the pool or a preferred provider organization or health maintenance organization established by or contracting with the pool; or

(2)  the applicable Medicare allowable rate.

Amendment No. 1 was withdrawn.

**Amendment No. 2**

Representative Seaman offered the following amendment to **CSSB 809**:

Amend **CSSB 809** (house committee printing) as follows:

(1)  In SECTION 5 of the bill, in added Section 1506.2522, Insurance Code, strike the phrases "or retired employee" and "or retired employees" each place the phrases appear (page 4, line 26, and page 5, lines 4, 7-8, 13, 15, and 19).

(2)  In SECTION 5 of the bill, in added Section 1506.2522, Insurance Code, following Subsection (d) (page 5, between lines 23 and 24), insert:

(e)  In determining the number of enrolled individuals to report under this section, the health benefit plan issuer shall exclude individuals who are retired employees who are 65 years of age or older.

Amendment No. 2 was adopted.

(Speaker in the chair)

**Amendment No. 3**

Representative Taylor offered the following amendment to **CSSB 809**:

Amend **CSSB 809** (House committee printing) as follows:

(1)  In SECTION 5 of the bill, in added Section 1506.2522, Insurance Code (page 5, between lines 23 and 24), insert the following new subsection:

(e)  This section expires September 1, 2007.

(2)  In SECTION 6 of the bill, strike amended Subsection (b), Section 1506.253, Insurance Code (page 6, lines 6-24), and substitute the following:

(b)  The amount of a health benefit plan issuer's assessment is computed by multiplying the total amount required to be assessed against all health benefit plan issuers by a number computed by dividing:

(1)  the gross premiums collected by the issuer for health benefit plans in this state during the preceding calendar year; by

(2)  the gross premiums collected by all issuers for health benefit plans in this state during the preceding calendar year.

(b-1)  Notwithstanding Subsection (b), to compute the amount of a health benefit plan issuer's assessment, if any, the board shall:

(1)  divide the total amount to be assessed by the total number of enrolled individuals reported by all health benefit plan issuers under Section 1506.2522 as of the preceding December 31 to determine the per capita amount; and

(2)  multiply the number of enrolled individuals reported by the health benefit plan issuer under Section 1506.2522 as of the preceding December 31 by the per capita amount to determine the amount assessed to that health benefit plan issuer.

(b-2)  Subsection (b-1) and this subsection expire September 1, 2007.

(3)  Insert the following new SECTION, numbered appropriately:

USA_00223760

SECTION ___. (a) The legislature shall establish <u>a joint interim committee
to study the deficit resulting from the net losses of the Texas Health Insurance
Risk Pool and to recommend a method or formula for recouping any deficit that
apportions</u> the cost of those losses among the largest possible number of users of
the health care system.

(b) Not later than September 1, 2006, the committee shall report its findings
and recommendations to the governor, lieutenant governor, and speaker of the
house of representatives.

(c) The lieutenant governor and speaker shall determine the composition of
the committee.

(d) This section expires September 1, 2007.

(4) Renumber SECTIONS of the bill accordingly.

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Hochberg offered the following amendment to **CSSB 809**:

Amend **CSSB 809** as follows:

(1) on page 3, line 27, strike "or"

(2) between page 3, line 27 and page 4, line 28 insert the following:

    <u>(E)  evidence that the individual is covered by substantially similar
individual coverage that excludes one or more conditions by rider;</u> or

(3) Insert the following appropriately numbered section and renumber the
remaining sections accordingly:

SECTION ___. Section 1506.153, Insurance Code, is amended to read as
follows:

Sec. 1506.153.  INELIGIBILITY FOR COVERAGE.  Notwithstanding
Sections 1506.152(a)-(d), an individual is not eligible for coverage from the pool
if:

    (1) on the date pool coverage is to take effect, the individual has health
benefit plan coverage from a health benefit plan issuer or health benefit
arrangement in effect<u>, except as provided by Section 1506.152(a)(3)(E)</u>;

    (2) at the time the individual applies to the pool, the individual is
eligible for other health care benefits, including benefits from the continuation of
coverage under Title X, Consolidated Omnibus Budget Reconciliation Act of
1985 (29 U.S.C. Section 1161 et seq.), as amended (COBRA), other than:

    (A)  coverage, including COBRA or other continuation coverage or
conversion coverage, maintained for any preexisting condition waiting period
under a pool policy;

    (B)  employer group coverage conditioned by a limitation of the
kind described by Section 1506.152(a)(3)(A) or (C); or

    (C)  individual coverage conditioned by a limitation described by
Section 1506.152(a)(3)(C)<u>,</u> [<s>or</s>] (D)<u>, or (E)</u>;

    (3) within 12 months before the date the individual applies to the pool,
the individual terminated coverage in the pool, unless the individual demonstrates
a good faith reason for the termination;

USA_00223761

(4)  the individual is confined in a county jail or imprisoned in a state or federal prison;

(5)  any of the individual's premiums are paid for or reimbursed under a government-sponsored program or by a government agency or health care provider, other than as an otherwise qualifying full-time employee of a government agency or health care provider or as a dependent of such an employee;

(6)  the individual's prior coverage with the pool was terminated:

(A)  during the 12-month period preceding the date of application for nonpayment of premiums; or

(B)  for fraud; or

(7)  the individual is eligible for health benefit plan coverage provided in connection with a policy, plan, or program paid for or sponsored by an employer, even though the employer coverage is declined.

SECTION ___.  Section 1506.156, Insurance Code, is amended to read as follows:

Sec. 1506.156.   BENEFIT REDUCTION;   CERTAIN COVERAGES SECONDARY.   (a) The pool shall reduce benefits otherwise payable under pool coverage by:

(1)  the total amount paid or payable through any other health benefit plan or health benefit arrangement; and

(2)  the total amount of hospital or medical expense benefits paid or payable under:

(A)  workers' compensation coverage;

(B)  automobile insurance, regardless of whether provided on the basis of fault or no fault; or

(C)  a state or federal law or program.

(b)  Pool coverage provided under Section 1506.152(a)(3)(E) is secondary to the individual coverage described by that paragraph for any period during which that individual coverage is in effect.

Amendment No. 4 was adopted.

**CSSB 809**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero recorded voting no.)

### SB 282 ON SECOND READING
### (Villarreal - House Sponsor)

**SB 282**, A bill to be entitled An Act relating to disclosure and use of sales price information for ad valorem tax purposes.

Representative Villarreal moved to postpone consideration of **SB 282** until June 1.

The motion prevailed.

USA_00223762

## CSSB 1227 ON SECOND READING
### (Morrison - House Sponsor)

**CSSB 1227**, A bill to be entitled An Act relating to enrollment in public and private postsecondary educational institutions, to payment of the costs of attending those educational institutions, and to financial aid and other measures to assist students to pay those costs.

**Amendment No. 1**

Representative Morrison offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House committee printing) as follows:

(1) In SECTION 3 of the bill, in amended Subdivision (3), Subsection (a), Section 52.32, Education Code (page 3, line 11), between "education" and the semicolon, insert "or alternative educator certification program".

(2) In SECTION 3 of the bill, strike amended Subdivision (4), Subsection (a), Section 52.32, Education Code (page 3, lines 12-13), and substitute the following:

(4) has submitted to the board at least two references, including the names of the persons giving those references and appropriate contact information for those persons [been recommended by reputable persons in his home community]; and

(3) Add the following appropriately numbered SECTIONS to the bill and renumber existing SECTIONS of the bill accordingly:

SECTION ____. Section 52.33, Education Code, is amended to read as follows:

Sec. 52.33. AMOUNT OF LOAN. The amount of the loan to any qualified applicant shall be limited to the difference between the financial resources available to the applicant [him], including but not limited to the applicant's [his] income from parents and other sources, scholarships, gifts, grants, other financial aid, and the amount the applicant [he] can reasonably be expected to earn, and the amount necessary to pay the applicant's [his] reasonable expenses as a student at the participating institution of higher education where the applicant [he] has been accepted for enrollment, under the rules and regulations adopted by the board. The total loan to any individual student may never be more than the amount the student [he] can reasonably be expected to repay in the [a] maximum loan period provided by board rule [of 10 years after he is last enrolled in a participating institution], except as otherwise provided for in this chapter.

SECTION ____. Section 52.35, Education Code, is amended to read as follows:

Sec. 52.35. TERM OF LOANS. The term of all authorized loans must be for the shortest possible period consistent with general practice by issuers of student loans, as determined by the board. [However, no loan may be made to any student for a period longer than 10 years from the date he is last enrolled in a participating institution.]

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative J. Jones offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House Committee Printing) in SECTION 43 of the bill, at the end of added Section 61.2251, Education Code (page 39, between lines 18 and 19), by inserting the following:

(f)  Subsection (c)(3) does not apply to a student who:

(1)  is currently enrolled in an approved institution at which 40 percent or more of the total number of the institution's students are members of ethnic or racial groups that are underrepresented among undergraduate students at public or private institutions of higher education in this state; and

(2)  has not yet completed 48 semester credit hours at a public or private institution of higher education in this state.

(McCall in the chair)

Amendment No. 2 was withdrawn.

**Amendment No. 3**

Representative McClendon offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House committee printing) by adding the following appropriately numbered SECTIONS of the bill and renumbering existing SECTIONS of the bill accordingly:

SECTION ___. (a) Section 51.801, Education Code, is amended to read as follows:

Sec. 51.801. DEFINITIONS. In this subchapter, "general academic teaching institution," "governing board," "medical and dental unit," "public junior college," "public technical institute," and "university system" have the meanings assigned by Section 61.003.

(b)  Subchapter U, Chapter 51, Education Code, is amended by adding Section 51.8065 to read as follows:

Sec. 51.8065. AUTOMATIC ADMISSION: UNDERGRADUATE TRANSFER STUDENTS HOLDING ASSOCIATE DEGREES OR CERTIFICATES. (a) In this section, "public upper-level institution of higher education" means an institution of higher education that offers only junior-level and senior-level courses or only junior-level, senior-level, and graduate-level courses.

(b)  Except as provided by Subsection (g), each general academic teaching institution shall admit an applicant for admission to the institution as an undergraduate transfer student if in the year preceding the academic year for which the applicant is applying for admission under this section the applicant:

(1)  received a degree or certificate from a public junior college or public technical institute in a program requiring at least 42 semester credit hours in the core curriculum, as defined by Section 61.821; and

(2)  completed the degree or certificate program with a cumulative grade point average of at least a 3.0 on a four-point scale or the equivalent.

USA_00223764

(c)  To qualify for admission under this section, an applicant must submit an application before the expiration of any application filing deadline established by the institution.

(d)  After admitting an applicant under this section, the institution may review the applicant's record and any other factor the institution considers appropriate to determine whether the applicant may require additional preparation for college-level work or would benefit from inclusion in a retention program. The institution may require a student so identified to enroll during the summer immediately after the student is admitted under this section to participate in appropriate enrichment courses and orientation programs. This section does not prohibit a student who is not determined to need additional preparation for college-level work from enrolling, if the student chooses, during the summer immediately after the student is admitted under this section.

(e)  Admission to a specific general academic teaching institution is contingent on the availability of space within the institution for the admission of additional students.

(f)  Admissions to a particular program or school within a general academic teaching institution are based solely on the requirements of the institution.

(g)  This section does not apply to admission to:

(1)  a public upper-level institution of higher education; or

(2)  any other general academic teaching institution if, with respect to the academic year for which an undergraduate transfer student has applied for admission, the institution has filled through automatic admission as required by the other provisions of this subchapter at least 50 percent of the spaces available for entering undergraduate students at the institution.

(c)  The Texas Higher Education Coordinating Board and the governing board of each general academic teaching institution shall adopt rules or policies relating to the admission of students under Section 51.8065, Education Code, as added by this section, not later than February 1, 2006.

(d)  Section 51.8065, Education Code, as added by this section, applies beginning with admissions for the 2006 fall semester.

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Harper-Brown offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House committee printing) by adding the following appropriately numbered ARTICLE and renumbering subsequent ARTICLES accordingly:

ARTICLE ___. TREATMENT OF CERTAIN FEES RECEIVED BY INSTITUTIONS OF HIGHER EDUCATION

SECTION ___.01. Section 51.009(c), Education Code, is amended to read as follows:

(c)  Each of the following shall be accounted for as educational and general funds:

USA_00223765

(1) net tuition, special course fees charged under Sections 54.051(e) and (l), Education Code, lab fees, student teaching fees, [hospital and clinic fees,] organized activity fees, proceeds from the sale of educational and general equipment, and indirect cost recovery fees; and

(2) hospital and clinic fees received by a state-owned clinical care facility that is operated using general revenue fund appropriations for patient care.

SECTION __.02.  Section 51.009(c), Education Code, as amended by this article, applies to fees collected on or after the effective date of this Act. A fee collected before that date is governed by the law in effect when the fee is collected, and that law is continued in effect for that purpose.

Amendment No. 4 was withdrawn.

**Amendment No. 5**

Representative Turner offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House committee printing) as follows:

(1)  In SECTION 26 of the bill, in Subsection (e)(2)(B), Section 56.305, Education Code (page 20, line 24), strike "2.5" and substitute "2.0 [2.5]".

(2)  In SECTION 26 of the bill, in added Subsection (e-1)(2)(B), Section 56.305, Education Code (page 21, line 10), strike "2.5" and substitute "2.0".

(3)  In SECTION 34 of the bill, in Subsection (d)(2)(B), Section 56.405, Education Code (page 30, line 15), strike " 2.5" and substitute "2.0 [2.5]".

(4)  In SECTION 43 of the bill, in added Subsection (c)(3), Section 61.2251, Education Code (page 38, line 24), strike "2.5" and substitute "2.0".

Representative Morrison moved to table Amendment No. 5.

A record vote was requested.

The motion to table was lost by (Record 809): 20 Yeas, 104 Nays, 2 Present, not voting.

Yeas — Bohac; Crabb; Crownover; Dawson; Goolsby; Grusendorf; Hamric; Harper-Brown; Hope; Jackson; Keel; Keffer, B.; King, P.; Kolkhorst; Laubenberg; Miller; Morrison; Paxton; Riddle; Zedler.

Nays — Allen, A.; Allen, R.; Alonzo; Anchia; Bailey; Berman; Blake; Bonnen; Branch; Brown, B.; Burnam; Callegari; Casteel; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Corte; Davis, J.; Davis, Y.; Denny; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flynn; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Goodman; Griggs; Guillen; Haggerty; Hamilton; Hardcastle; Hegar; Herrero; Hilderbran; Hill; Hochberg; Homer; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jones, D.; Jones, J.; Keffer, J.; King, T.; Kuempel; Laney; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McReynolds; Menendez; Merritt; Moreno, P.; Mowery; Naishtat; Nixon; Noriega, M.; Olivo; Orr; Otto; Peña; Phillips; Pickett; Puente; Raymond; Ritter; Rodriguez; Rose; Smith, T.; Smith, W.; Solis; Strama; Straus; Swinford; Talton; Taylor; Thompson; Truitt; Uresti; Veasey; Villarreal; Vo; West; Wong; Woolley.

USA_00223766

Present, not voting — Mr. Speaker; McCall(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Solomons.

Absent — Anderson; Baxter; Brown, F.; Campbell; Delisi; Driver; Flores; Gattis; Hartnett; Krusee; McClendon; Oliveira; Pitts; Quintanilla; Reyna; Seaman; Smithee; Turner; Van Arsdale.

## STATEMENTS OF VOTE

When Record No. 809 was taken, I was in the house but away from my desk. I would have voted no.

Anderson

I was shown voting yes on Record No. 809. I intended to vote no.

Kolkhorst

When Record No. 809 was taken, I was in the house but away from my desk. I would have voted no.

McClendon

I was shown voting yes on Record No. 809. I intended to vote no.

Miller

Amendment No. 5 was adopted.

## Amendment No. 6

Representative Rose offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House committee printing) as follows:

(1) In Section 43 of the bill, in added Subdivision (2), Subsection (b), Section 61.2251, Education Code (page 37, line 26), between "(2)" and "be enrolled", insert "if the person is enrolled in an undergraduate degree or certificate program,".

(2) In Section 43 of the bill, strike added Subdivisions (1)-(3), Subsection (c), Section 61.2251, Education Code (page 38, lines 15-26), and substitute the following:

(1) meets the requirements of Subsection (b); and

(2) if the person is enrolled in an undergraduate degree or certificate program:

(A) completed at least 24 semester credit hours in the person's most recent academic year; and

(B) has earned an overall grade point average of at least 2.5 on a four-point scale or the equivalent on coursework previously attempted at public or private institutions of higher education.

Amendment No. 6 was adopted.

## Amendment No. 7

Representative Rose offered the following amendment to **CSSB 1227**:

USA_00223767

Amend **CSSB 1227** by adding the following SECTIONS to the bill and renumbering subsequent SECTIONS of the bill appropriately:

SECTION ____. Section 51.351(1), Education Code, is amended to read as follows:

(1) "General academic teaching institution," "governing board," "institution of higher education," "medical and dental unit," "public junior college," and "university system" have the meanings assigned by Section 61.003 [of this code].

SECTION ____. Subchapter G, Chapter 51, Education Code, is amended by adding Sections 51.355 and 51.356 to read as follows:

Sec. 51.355. NONVOTING STUDENT REGENT; UNIVERSITY SYSTEM BOARD OF REGENTS. (a) In this section, "student government" means the representative student organization directly elected by the student body of a general academic teaching institution or medical and dental unit.

(b) The chancellor of each university system shall develop a uniform application form to be used by each general academic teaching institution and medical and dental unit in the university system to solicit applicants for the position of student regent.

(c) Except as provided by Subsection (f), not later than September 1 of each year, the student government of each general academic teaching institution and medical and dental unit in a university system shall solicit applicants for the position of student regent. Not later than November 1, from among the applications received by the student government, the student government shall select five applicants as the student government's recommendations for the position of student regent and send the applications of those applicants, with the name of each applicant and the name of the institution or unit in which the applicant is enrolled removed, to the chancellor of the university system. From among those applicants, the chancellor shall select two or more applicants as the university system's recommendations for the position of student regent and shall send the applications of those applicants to the governor not later than December 1. The governor may request to review all applications for the position of student regent received by the student governments and may request to review information required to be removed from an application by a student government under this subsection. On February 1, or as soon thereafter as practicable, the governor shall appoint one of the applicants to serve as the student regent for the system for a one-year term expiring on the next February 1. The governor is not required to appoint an applicant recommended by the chancellor.

(d) A student regent must be enrolled as an undergraduate or graduate student in a general academic teaching institution or medical and dental unit in the university system at the time of appointment and throughout the student regent's term. For purposes of this subsection, a person is considered to be enrolled in an institution or unit for a summer term if the person was enrolled in the institution or unit for the preceding semester and:

(1) is registered or preregistered at the institution or unit for the following fall semester;

USA_00223768