(2) if the person has not completed the person's degree program, is eligible to continue the degree program at the institution or unit in the following fall semester; or

(3) if the person completed a degree program in the preceding semester, is admitted to another degree program at the institution or unit for the following fall semester.

(e) A student regent is not a member of the board of regents of the system for which the student regent is appointed. A student regent has the same powers and duties as the members of the board of regents of the system, including the right to attend and participate in meetings of the board of regents, except that the student regent:

(1) may not vote on any matter before the board or make or second any motion before the board; and

(2) is not counted in determining whether a quorum exists for a meeting of the board or in determining the outcome of any vote of the board.

(f) The student government of the general academic teaching institution or medical and dental unit at which a current student regent was enrolled at the time of the student regent's appointment may not solicit applicants for the position of student regent for the next regular term of the position.

(g) A vacancy in the position of student regent for a university system shall be filled for the unexpired term by appointment by the governor in consultation with the chancellor of the system.

Sec. 51.356. NONVOTING STUDENT REGENT; INSTITUTION BOARD OF REGENTS. (a) This section applies only to a general academic teaching institution that is not a part of a university system.

(b) In this section, "student government" means the representative student organization directly elected by the student body of a general academic teaching institution.

(c) The president of a general academic teaching institution shall develop a uniform application form to be used to solicit applicants for the position of student regent.

(d) Not later than September 1 of each year, the student government of the general academic teaching institution shall solicit applicants for the position of student regent. Not later than November 1, from among the applications received by the student government, the student government shall select five applicants as the student government's recommendations for the position of student regent and send the applications of those applicants, with the name of each applicant removed, to the president of the institution. From among those applicants, the president shall select two or more applicants as the institution's recommendations for the position of student regent and shall send the applications of those applicants to the governor not later than December 1. The governor may request to review all applications for the position of student regent received by the student government and may request to review information required to be removed from an application by the student government under this subsection. On February 1, or as soon thereafter as practicable, the governor shall appoint

USA_00223769

one of the applicants to serve as the student regent for the institution for a one-year term expiring on the next February 1. The governor is not required to appoint an applicant recommended by the president.

(e) A student regent must be enrolled as an undergraduate or graduate student in the general academic teaching institution at the time of appointment and throughout the student regent's term. For purposes of this subsection, a person is considered to be enrolled in an institution for a summer term if the person was enrolled in the institution for the preceding semester and:

(1) is registered or preregistered at the institution for the following fall semester;

(2) if the person has not completed the person's degree program, is eligible to continue the degree program at the institution in the following fall semester; or

(3) if the person completed a degree program in the preceding semester, is admitted to another degree program at the institution for the following fall semester.

(f) A student regent is not a member of the board of regents of the institution for which the student regent is appointed. A student regent has the same powers and duties as the members of the board of regents of the institution, including the right to attend and participate in meetings of the board of regents, except that the student regent:

(1) may not vote on any matter before the board or make or second any motion before the board; and

(2) is not counted in determining whether a quorum exists for a meeting of the board or in determining the outcome of any vote of the board.

(g) A vacancy in the position of student regent for an institution shall be filled for the unexpired term by appointment by the governor in consultation with the president of the institution.

SECTION _____. The initial term of a student regent appointed for a state university system under Section 51.355, Education Code, as added by this Act, or for a state university under Section 51.356, Education Code, as added by this Act, expires February 1, 2007. The appropriate student governments, the chancellor of each state university system, the president of each state university that is not a part of a university system, and the governor shall take the actions required by Sections 51.355 and 51.356, Education Code, as added by this Act, as soon as practicable after this Act takes effect to select a student regent for each state university or state university system for that initial term.

Amendment No. 7 was adopted.

**Amendment No. 8**

Representative Campbell offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** by adding the following new SECTIONS, appropriately numbered, and renumbering subsequent SECTIONS of the bill accordingly:

SECTION___. Subchapter M, Chapter 56, Education Code, is amended by adding Section 56.3012 to read as follows:

USA_00223770

Sec. 56.3012. PILOT PROJECT TO PROVIDE INCENTIVES FOR ATTENDANCE AT UNDERUTILIZED PUBLIC INSTITUTIONS. (a) The coordinating board shall establish a TEXAS grant pilot project as provided by this section to encourage students to attend eligible public institutions of higher education that offer extensive baccalaureate degree program options and that have sufficient facilities, administrative infrastructure, and faculty to serve additional students in order to reduce the need for this state to construct additional facilities or hire additional faculty at other institutions of higher education.

(b) From money available under Section 56.310 for purposes of this subchapter and money available under Section 56.464 for purposes of Subchapter Q, the coordinating board shall set aside sufficient money to provide TEXAS grants for the 2005-2006 and 2006-2007 academic years to students who are initially eligible for a grant under Section 56.304 or 56.3041 in either of those years as follows:

(1) for not more than 400 additional students in excess of the total of fall 2004 TEXAS Grant awards at Angelo State University; and

(2) for not more than 200 additional students in excess of the total of fall 2004 TEXAS Grant awards at Sul Ross State University.

(c) To the extent money set aside under Subsection (b) is available for the purpose, a person awarded a grant as provided by Subsection (b) who continues to be eligible for a grant under Section 56.305 may receive a grant from the money set aside. If money set aside under Subsection (b) is not available to pay for a grant for a person awarded a grant as provided by Subsection (b) who continues to be eligible for a grant under Section 56.305, the person may receive a grant from the money available under Section 56.310 on the same basis as other TEXAS grant applicants.

(d) The coordinating board shall reallocate for grants under this subchapter or for loans under Subchapter Q, as applicable, any money set aside for purposes of the TEXAS grant pilot project that is not used in the academic year for which the money is set aside. Money reallocated under this subsection may be used at any eligible institution under this subchapter or Subchapter Q.

(e) Except as otherwise specifically provided by this section, this subchapter applies to a TEXAS grant awarded under this section.

(f) The coordinating board shall develop criteria for evaluating the TEXAS grant pilot project and, based on that evaluation, not later than January 1, 2007, shall report to the 80th Legislature the coordinating board's recommendations concerning whether to continue, expand to other underutilized eligible public institutions of higher education, or discontinue the TEXAS grant pilot project.

SECTION __. The Texas Higher Education Coordinating Board shall adopt rules to administer Section 56.3012, Education Code, as added by this Act, as soon as practicable after the date this Act takes effect. For that purpose, the board may adopt the initial rules in the manner provided by law for adoption of emergency rules.

Amendment No. 8 was adopted.

USA_00223771

**Amendment No. 9**

Representative Harper-Brown offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House committee printing) by adding the following appropriately numbered ARTICLE and renumbering subsequent ARTICLES accordingly:

ARTICLE ___.  TREATMENT OF CERTAIN FEES RECEIVED BY INSTITUTIONS OF HIGHER EDUCATION

SECTION ___.01. Section 51.009(c), Education Code, is amended to read as follows:

(c)  Each of the following shall be accounted for as educational and general funds:

(1) net tuition, special course fees charged under Sections 54.051(e) and (l), Education Code, lab fees, student teaching fees, [hospital and clinic fees,] organized activity fees, proceeds from the sale of educational and general equipment, and indirect cost recovery fees; and

(2)  hospital and clinic fees received by a state-owned clinical care facility that is operated using general revenue fund appropriations for patient care.

SECTION ___.02. Section 51.009(c), Education Code, as amended by this article, applies to fees collected on or after the effective date of this Act. A fee collected before that date is governed by the law in effect when the fee is collected, and that law is continued in effect for that purpose.

Amendment No. 9 was withdrawn.

**Amendment No. 10**

Representative Uresti offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** by adding the following appropriately numbered Sections to the bill and renumbering the remaining Sections of the bill appropriately:

SECTION ___.  Section 54.203, Education Code, is amended by amending Subsections (a), (e), and (g) and adding Subsections (h) and (i) to read as follows:

(a)  The governing board of each institution of higher education shall exempt the following persons from the payment of all dues, fees, and charges, including fees for correspondence courses but excluding property deposit fees, student services fees, and any fees or charges for lodging, board, or clothing, provided the persons seeking the exemptions were citizens of Texas at the time they entered the services indicated and have resided in Texas for at least the period of 12 months before the date of registration:

(1)  all nurses and honorably discharged members of the armed forces of the United States who served during the Spanish-American War or during World War I;

(2)  all nurses, members of the Women's Army Auxiliary Corps, members of the Women's Auxiliary Volunteer Emergency Service, and all honorably discharged members of the armed forces of the United States who

USA_00223772

served during World War II except those who were discharged from service because they were over the age of 38 or because of a personal request on the part of the person that the person [he] be discharged from service;

(3)  all honorably discharged men and women of the armed forces of the United States who served during the national emergency which began on June 27, 1950, and which is referred to as the Korean War; and

(4)  all persons who were honorably discharged from the armed forces of the United States after serving on active military duty, excluding training, for more than 180 days and who served a portion of their active duty during:

(A)  the Cold War which began on the date of the termination of the national emergency cited in Subdivision (3) and ended on December 26, 1991 [of this subsection];

(B)  the Vietnam era which began on December 21, 1961, and ended on May 7, 1975;

(C)  the Grenada and Lebanon era which began on August 24, 1982, and ended on July 31, 1984;

(D)  the Panama era which began on December 20, 1989, and ended on January 21, 1990;

(E)  the Persian Gulf War which began on August 2, 1990, and ends on the date thereafter prescribed by Presidential proclamation or September 1, 1997, whichever occurs first; or

(F)  any future national emergency declared in accordance with federal law.

(e)  An [The] exemption from fees provided for in Subsection (a) or (h) [of this section] does not apply to a person if at the time of the person's [his] registration the person [he] is eligible for educational benefits under federal legislation in effect at the time of [his] registration if the value of those benefits is equal to or exceeds the value of the exemption, except that the person must first utilize the federal benefit for which the person [he] is eligible and the combined amount of the federal benefit plus the amount of this waiver shall not exceed the maximum value of the waiver. A person is covered by the exemptions if the person's [his] right to benefits under federal legislation is extinguished at the time of [his] registration, except that a person is not eligible for an exemption from fees under this section if the person's right to benefits under federal legislation is extinguished because the person is in default of repayment of a loan made to the person under a federal program to provide or guarantee loans for educational purposes. A person is not eligible for the exemption if the person is in default on a loan made or guaranteed for educational purposes by the State of Texas.

(g)  The governing board of a junior college district may provide that the exemptions provided by Subsections (a), [and] (b), and (h) do not apply to a course fee or training fee charged a student by the junior college district to cover the flight time costs associated with a course in aircraft flight training, to the extent those costs are incurred by a student:

(1)  who does not have a private pilot rating; or

USA_00223773

(2)  who has a private pilot rating but is not actively seeking to fulfill the requirements of the Federal Aviation Administration for an additional certification or rating.

(h)  The Texas Higher Education Coordinating Board by rule shall prescribe procedures to allow a person who becomes eligible for an exemption provided by Subsection (a) before September 1, 2015, to waive the person's right to any unused portion of the maximum number of cumulative credit hours for which the person could receive the exemption and assign the exemption for the unused portion of those credit hours to one of the person's children. The procedures shall provide:

(1)  the manner in which a person may waive the exemption and designate a child to receive the exemption;

(2)  a procedure permitting the person to designate a different child to receive the exemption if the child previously designated to receive the exemption has never received an exemption under this section; and

(3)  a method of documentation to enable institutions of higher education to determine the eligibility of the designated person to receive the exemption.

(i)  To be eligible to receive an exemption under Subsection (h), a person must:

(1)  be an undergraduate student who is classified as a resident under Subchapter B when the person enrolls in an institution of higher education;

(2)  make satisfactory academic progress toward a degree or certificate as determined by the institution at which the person is enrolled, except that the institution may not require the person to enroll in a minimum course load;

(3)  in each academic year in which the person receives an exemption for any of the credit hours assigned to the person under Subsection (h), perform a number of hours of community service equal to one-third of the total number of credit hours assigned to the person under Subsection (h) for each of the following:

(A)  a veterans organization; and

(B)  the institution in which the person is enrolled; and

(4)  be less than 28 years old, except that the coordinating board by rule shall prescribe procedures by which a person who suffered from a severe illness or other debilitating condition that affected the person's ability to use the exemption before reaching that age may be granted additional time to use the exemption corresponding to the time the person was unable to use the exemption because of the illness or condition.

SECTION __. (a)  The change in law made by this Act to Section 54.203(a)(4), Education Code, applies only to a person who is honorably discharged from the armed forces of the United States on or after the effective date of this Act.

(b) Section 54.203, Education Code, as amended by this Act, applies beginning with tuition and other fees charged for the 2005 fall semester. Tuition and other fees charged for an academic period before the 2005 fall semester are covered by the law in effect immediately before the effective date of this Act, and the former law is continued in effect for that purpose.

(c) The Texas Higher Education Coordinating Board shall prescribe the procedures required by Sections 54.203(h) and (i), Education Code, as added by this Act, as soon as practicable after the effective date of this Act.  For that purpose, the coordinating board may adopt the initial rules prescribing those procedures in the manner provided by law for emergency rules.

Amendment No. 10 was adopted.

**Amendment No. 11**

On behalf of Representative McCall, Representative F. Brown offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** by adding the following appropriately numbered section:

SECTION ___. Notwithstanding other law, a provision if this Act that requires a tuition or fee exemption that did not exist on January 1, 2005, is effective only to the extent that funds are expressly appropriated for that purpose.

Amendment No. 11 was adopted.

**Amendment No. 12**

Representative Harper-Brown offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House committee printing) as follows:

(1)  Add the following appropriately numbered SECTIONS to the bill:

SECTION ___. Section 56.301, Education Code, is amended to read as follows:

Sec. 56.301.  DEFINITIONS. In this subchapter:

(1)  "Coordinating board" means the Texas Higher Education Coordinating Board.

(2)  "Eligible institution" means[:

[(A)] an institution of higher education that offers one or more undergraduate degree or certification programs[; or

[(B)  a private or independent institution of higher education].

(3)  "Public junior college" ["Private or independent institution of higher education," "public junior college,"] and "public technical institute" have the meanings assigned by Section 61.003.

SECTION ___. Subsection (b), Section 56.302, Education Code, is amended to read as follows:

(b)  The purpose of this subchapter is to provide a grant of money to enable eligible students to attend public [and private] institutions of higher education in this state.

SECTION __. Subchapter M, Chapter 56, Education Code, is amended by adding Section 56.3021 to read as follows:

Sec. 56.3021. STUDENTS ENROLLED IN PRIVATE OR INDEPENDENT INSTITUTIONS: LIMITED ELIGIBILITY FOR GRANT. (a) Notwithstanding any other provision of this subchapter, a student who was initially awarded a TEXAS grant under this subchapter to pay the costs of enrollment in a private or independent institution of higher education for the 2005 fall semester or an earlier academic period may continue to receive grants under this subchapter while enrolled in a private or independent institution of higher education if the student is otherwise eligible to receive a grant under this subchapter.

(b) For purposes of determining the eligibility of a student to continue to receive a grant under this section, a reference in this subchapter to an eligible institution includes a private or independent institution of higher education.

(c) The amount of a TEXAS grant under this section for a student enrolled full-time at a private or independent institution of higher education is the amount determined by the coordinating board as the average statewide amount of tuition and required fees that a resident student enrolled full-time in a baccalaureate degree program would be charged for that semester or term at general academic teaching institutions.

(d) Notwithstanding Subsection (c) or other law, the total amount of financial aid that a student enrolled in a private or independent institution of higher education is eligible to receive in a state fiscal year from TEXAS grants awarded under this section may not exceed the maximum amount the student may receive in tuition equalization grants in that fiscal year as determined under Subchapter F, Chapter 61.

(e) Notwithstanding Subsection (c) or other law, a student enrolled in a private or independent institution of higher education may not receive a TEXAS grant under this section and a tuition equalization grant under Subchapter F, Chapter 61, for the same semester or other term, regardless of whether the student is otherwise eligible for both grants during that semester or term. A student who but for this subsection would be awarded both a TEXAS grant and a tuition equalization grant for the same semester or other term is entitled to receive only the grant of the greater amount.

(f) This section expires September 1, 2015.

(2) In SECTION 25 of the bill (page 19, lines 6-8), strike the recital and substitute "Section 56.304, Education Code, is amended by amending Subsections (a) and (e) and adding Subsections (e-1) and (e-2) to read as follows:".

(3) In SECTION 25 of the bill, between the recital and amended Subsection (e), Section 56.304, Education Code (page 19, between lines 8 and 9), insert the following:

(a) To be eligible initially for a TEXAS grant, a person must:

(1) be a resident of this state as determined by coordinating board rules;

(2) meet either of the following academic requirements:

USA_00223776

(A) be a graduate of a public or accredited private high school in this state who graduated not earlier than the 1998-1999 school year and who completed the recommended or advanced high school curriculum established under Section 28.002 or 28.025 or its equivalent; or

(B) have received an associate degree from a public or private [an eligible] institution of higher education not earlier than May 1, 2001;

(3) meet financial need requirements as defined by the coordinating board;

(4) be enrolled in an undergraduate degree or certificate program at an eligible institution;

(5) be enrolled as:

(A) an entering undergraduate student for at least three-fourths of a full course load for an entering undergraduate student, as determined by the coordinating board, not later than the 16th month after the date of the person's graduation from high school; or

(B) an entering student for at least three-fourths of a full course load for an undergraduate student as determined by the coordinating board, not later than the 12th month after the month the person receives an associate degree from a public or private [an eligible] institution of higher education;

(6) have applied for any available financial aid or assistance; and

(7) comply with any additional nonacademic requirement adopted by the coordinating board under this subchapter.

(4) In SECTION 26 of the bill, in Paragraph (B), Subdivision (2), of amended Subsection (e), Section 56.305, Education Code (page 20, line 25), between "attempted at" and "institutions", insert "public or private".

(5) In SECTION 26 of the bill, in proposed Paragraph (B), Subdivision (2), Subsection (e-1), Section 56.305, Education Code (page 21, line 11), between "attempted at" and "institutions", insert "public or private".

(6) In the recital to SECTION 27 of the bill (page 22, line 1), strike "Subsections (b)" and substitute "Subsections (a)".

(7) In SECTION 27 of the bill, strike amended Subsection (b), Section 56.307, Education Code (page 22, lines 3-9), and substitute the following:

(a) The amount of a TEXAS grant for a semester or term for a person enrolled full-time at an eligible institution other than an institution covered by Subsection [(b),] (c)[,] or (d) is the amount determined by the coordinating board as the average statewide amount of tuition and required fees that a resident student enrolled full-time in a baccalaureate degree program would be charged for that semester or term at general academic teaching institutions.

(8) Strike SECTION 28 of the bill (page 24, lines 5-24).

(9) In SECTION 43 of the bill, following proposed Subsection (e), Section 61.2251, Education Code (page 39, between lines 18 and 19), insert the following:

(f)  If a person fails to meet any of the requirements of Subsection (c) after the completion of any semester or term, the person may not receive a tuition equalization grant during the next semester or term in which the person enrolls. A person may become eligible to receive a tuition equalization grant in a subsequent semester or term if the person:

(1) completes a semester or term during which the student is not eligible for a tuition equalization grant; and

(2) meets all the requirements of Subsection (c).

(10)  In SECTION 44 of the bill, strike proposed Subsection (d), Section 61.227, Education Code (page 39, line 21, through page 40, line 2), and substitute the following:

(d) Notwithstanding any restrictions provided by Subsection (c) on the amount of a grant, a tuition equalization grant for an academic period for a student who establishes exceptional financial need in accordance with the procedures and rules of the coordinating board may be certified by the coordinating board in an amount not to exceed 150 percent of the amount of the grant that the student would otherwise have been awarded for that period under the other provisions of this section.

(11)  Add the following appropriately numbered SECTION to the bill:

SECTION __.  Subsection (b), Section 56.307, Education Code, is repealed.

(12)  Renumber other SECTIONS of the bill accordingly.

Amendment No. 12 was withdrawn.

**Amendment No. 13**

Representative Howard offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** by adding the following appropriately numbered SECTIONS to the bill and renumbering existing SECTIONS of the bill accordingly:

SECTION __.  Section 56.304(a), Education Code, is amended to read as follows:

(a)  To be eligible initially for a TEXAS grant, a person must:

(1)  be a resident of this state as determined by coordinating board rules;

(2)  meet either of the following academic requirements:

(A)  be a graduate of a public or [accredited] private high school, including a home school, in this state who graduated not earlier than the 1998-1999 school year and who completed the recommended or advanced high school curriculum established under Section 28.002 or 28.025 or its equivalent; or

(B)  have received an associate degree from an eligible institution not earlier than May 1, 2001;

(3)  meet financial need requirements as defined by the coordinating board;

(4)  be enrolled in an undergraduate degree or certificate program at an eligible institution;

(5)  be enrolled as:

(A)  an entering undergraduate student for at least three-fourths of a full course load for an entering undergraduate student, as determined by the coordinating board, not later than the 16th month after the date of the person's graduation from high school; or

(B)  an entering student for at least three-fourths of a full course load for an undergraduate student as determined by the coordinating board, not later than the 12th month after the month the person receives an associate degree from an eligible institution;

(6)  have applied for any available financial aid or assistance; and

(7)  comply with any additional nonacademic requirement adopted by the coordinating board under this subchapter.

SECTION ___. Section 56.455, Education Code, is amended to read as follows:

Sec. 56.455.  INITIAL ELIGIBILITY FOR LOAN. To be eligible initially for a Texas B-On-time loan, a person must:

(1)  be a resident of this state for purposes of Subchapter B, Chapter 54;

(2)  meet one of the following academic requirements:

(A)  be a graduate of a public or [accredited] private high school, including a home school, in this state who graduated not earlier than the 2002-2003 school year under the recommended or advanced high school program established under Section 28.025(a); or

(B)  have received an associate degree from an eligible institution not earlier than May 1, 2005;

(3)  be enrolled for a full course load for an undergraduate student, as determined by the coordinating board, in an undergraduate degree or certificate program at an eligible institution;

(4)  be eligible for federal financial aid, except that a person is not required to meet any financial need requirement applicable to a particular federal financial aid program; and

(5)  comply with any additional nonacademic requirement adopted by the coordinating board under this subchapter.

SECTION ___. The change in law made by this Act in amending Sections 56.304(a) and 56.455, Education Code, applies beginning with student financial aid awarded for the 2006-2007 academic year.  The change in law does not affect student financial aid awarded for an academic period before that academic year, and the former law is continued in effect for that purpose.

Amendment No. 13 was adopted.

**Amendment No. 14**

Representative Campbell offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** by adding the following new SECTIONS, appropriately numbered, and renumbering subsequent SECTIONS of the bill accordingly:

SECTION___.  Subchapter M, Chapter 56, Education Code, is amended by adding Section 56.3012 to read as follows:

Sec. 56.3012. PILOT PROJECT TO PROVIDE INCENTIVES FOR ATTENDANCE AT UNDERUTILIZED PUBLIC INSTITUTIONS.  (a)  The coordinating board shall establish a TEXAS grant pilot project as provided by this section to encourage students to attend eligible public institutions of higher education that offer extensive baccalaureate degree program options and that have sufficient facilities, administrative infrastructure, and faculty to serve additional students in order to reduce the need for this state to construct additional facilities or hire additional faculty at other institutions of higher education.

(b)  From money available under Section 56.310 for purposes of this subchapter and money available under Section 56.464 for purposes of Subchapter Q, the coordinating board shall set aside sufficient money to provide TEXAS grants for the 2005-2006 and 2006-2007 academic years to students who are initially eligible for a grant under Section 56.304 or 56.3041 in either of those years as follows:

(1)  for not more than 400 additional students in excess of the total of fall 2004 TEXAS Grant awards at Angelo State University; and

(2)  for not more than 200 additional students in excess of the total of fall 2004 TEXAS Grant awards at Sul Ross State University.

(c)  To the extent money set aside under Subsection (b) is available for the purpose, a person awarded a grant as provided by Subsection (b) who continues to be eligible for a grant under Section 56.305 may receive a grant from the money set aside.  If money set aside under Subsection (b) is not available to pay for a grant for a person awarded a grant as provided by Subsection (b) who continues to be eligible for a grant under Section 56.305, the person may receive a grant from the money available under Section 56.310 on the same basis as other TEXAS grant applicants.

(d)  The coordinating board shall reallocate for grants under this subchapter or for loans under Subchapter Q, as applicable, any money set aside for purposes of the TEXAS grant pilot project that is not used in the academic year for which the money is set aside.  Money reallocated under this subsection may be used at any eligible institution under this subchapter or Subchapter Q.

(e)  Except as otherwise specifically provided by this section, this subchapter applies to a TEXAS grant awarded under this section.

(f)  The coordinating board shall develop criteria for evaluating the TEXAS grant pilot project and, based on that evaluation, not later than January 1, 2007, shall report to the 80th Legislature the coordinating board's recommendations concerning whether to continue, expand to other underutilized eligible public institutions of higher education, or discontinue the TEXAS grant pilot project.

SECTION __. The Texas Higher Education Coordinating Board shall adopt rules to administer Section 56.3012, Education Code, as added by this Act, as soon as practicable after the date this Act takes effect. For that purpose, the board may adopt the initial rules in the manner provided by law for adoption of emergency rules.

Amendment No. 14 was withdrawn.

**Amendment No. 15**

Representative Harper-Brown offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** (House committee printing) by adding the following appropriately numbered ARTICLE and renumbering subsequent ARTICLES accordingly:

ARTICLE ___.  TREATMENT OF CERTAIN FEES RECEIVED BY INSTITUTIONS OF HIGHER EDUCATION

SECTION ___.01. Section 51.009(c), Education Code, is amended to read as follows:

(c)  Each of the following shall be accounted for as educational and general funds:

(1) net tuition, special course fees charged under Sections 54.051(e) and (l), Education Code, lab fees, student teaching fees, [hospital and clinic fees,] organized activity fees, proceeds from the sale of educational and general equipment, and indirect cost recovery fees; and

(2)  hospital and clinic fees received by a state-owned clinical care facility that is operated using general revenue fund appropriations for patient care.

SECTION ___.02. Section 51.009(c), Education Code, as amended by this article, applies to fees collected on or after the effective date of this Act. A fee collected before that date is governed by the law in effect when the fee is collected, and that law is continued in effect for that purpose.

Amendment No. 15 was withdrawn.

(Speaker in the chair)

**Amendment No. 16**

Representative Gallego offered the following amendment to **CSSB 1227**:

Amend **CSSB 1227** adding an appropriately numbered section to read as follows:

"SECTION _____. (a)  The Legislative Oversight Committee shall review tuition deregulation and make recommendations to the 80th Legislature for its continuation or repeal.  The report shall be submitted by January 1, 2007, to the Legislature.

(b)  Section 54.0513, Education Code shall be repealed on September 1, 2008, unless the Legislature passes legislation to continue its existence."

### CSSB 1227 - POINT OF ORDER

Representative Harper-Brown raised a point of order against further consideration of **CSSB 1227** under Rule 4, Section 32 and Rule 4, Section 41 of the House Rules on the grounds that the committee substitute is not germane and the reports of the standing committee were not properly duplicated and filed.

The point of order was withdrawn.

Representative Morrison moved to table Amendment No. 16.

A record vote was requested.

The motion to table prevailed by (Record 810): 79 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Allen, A.; Bailey; Berman; Blake; Bohac; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Chisum; Cook, B.; Crabb; Crownover; Davis, J.; Dawson; Delisi; Denny; Driver; Dutton; Edwards; Eissler; Elkins; Farrar; Flores; Flynn; Gattis; Griggs; Grusendorf; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hill; Hope; Hunter; Hupp; Jackson; Jones, D.; Keel; Keffer, B.; Keffer, J.; King, P.; Kolkhorst; Krusee; Laubenberg; Luna; Madden; McCall; McClendon; Menendez; Miller; Morrison; Nixon; Oliveira; Orr; Otto; Paxton; Pitts; Puente; Reyna; Riddle; Rose; Seaman; Smith, T.; Smithee; Solis; Straus; Swinford; Talton; Taylor; Turner; Uresti; Van Arsdale; West; Wong; Woolley; Zedler.

Nays — Alonzo; Anchia; Burnam; Casteel; Chavez; Coleman; Davis, Y.; Deshotel; Dukes; Dunnam; Escobar; Farabee; Gonzales; Gonzalez Toureilles; Goodman; Guillen; Herrero; Hilderbran; Hochberg; Homer; Hopson; Howard; Hughes; Isett; Jones, J.; King, T.; Kuempel; Laney; Leibowitz; Martinez; Martinez Fischer; McReynolds; Merritt; Moreno, P.; Mowery; Naishtat; Noriega, M.; Olivo; Peña; Phillips; Pickett; Quintanilla; Raymond; Rodriguez; Strama; Thompson; Veasey; Villarreal.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Solomons.

Absent — Allen, R.; Anderson; Baxter; Bonnen; Cook, R.; Corte; Eiland; Frost; Gallego; Geren; Goolsby; Haggerty; Hegar; Ritter; Smith, W.; Truitt; Vo.

### STATEMENTS OF VOTE

When Record No. 810 was taken, I was in the house but away from my desk. I would have voted no.

Anderson

When Record No. 810 was taken, I was temporarily out of the house chamber. I would have voted no.

Bonnen

When Record No. 810 was taken, I was in the house but away from my desk. I would have voted no.

R. Cook

I was shown voting yes on Record No. 810. I intended to vote no.

Farrar

When Record No. 810 was taken, I was in the house but away from my desk. I would have voted no.

Gallego

I was shown voting yes on Record No. 810. I intended to vote no.

Gattis

I was shown voting yes on Record No. 810. I intended to vote no.

Hope

I was shown voting no on Record No. 810. I intended to vote yes.

Kuempel

I was shown voting yes on Record No. 810. I intended to vote no.

Laubenberg

I was shown voting yes on Record No. 810. I intended to vote no.

Menendez

I was shown voting yes on Record No. 810. I intended to vote no.

Oliveira

I was shown voting yes on Record No. 810. I intended to vote no.

Paxton

When Record No. 810 was taken, I was in the house but away from my desk. I would have voted no.

Ritter

I was shown voting yes on Record No. 810. I intended to vote no.

T. Smith

I was shown voting yes on Record No. 810. I intended to vote no.

Swinford

**CSSB 1227**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero and Uresti recorded voting no.)

### SB 724 ON SECOND READING
### (Talton - House Sponsor)

**SB 724**, A bill to be entitled An Act relating to the appraisal for ad valorem tax purposes of certain property used to provide low-income or moderate-income housing.

### SB 724 - POINT OF ORDER

Representative Villarreal raised a point of order against further consideration of **SB 724** under Rule 4, Section 32(c) of the House Rules on the grounds that the bill analysis is inaccurate.

The speaker sustained the point of order.

The ruling precluded further consideration of **SB 724**.

### CSSB 42 ON SECOND READING
### (Delisi - House Sponsor)

**CSSB 42**, A bill to be entitled An Act relating to health education and physical activity in public primary and secondary schools.

USA_00223783

**Amendment No. 1**

Representative B. Keffer offered the following amendment to **CSSB 42**:

Amend **CSSB 42** as follows:
(1) On page 2, line 19, after the word "year." insert the following:
or the option to schedule at least two semesters overall.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representatives Dunnam and Eissler offered the following amendment to **CSSB 42**:

Amend **CSSB 42** on page 3, between lines 13 and 14 by inserting the following:
"(l-3)  (a)  This section may be cited as "Lauren's Law".
(b)  The State Board of Education, the Department of State Health Services, or a school district may not adopt any rule, policy, or program under Subsections (a), (k), (l), (l-1), or (l-2) that would prohibit a parent or grandparent of a student from providing any food product of the parent's or grandparent's choice to:
        (1)  children in the classroom of the child of the parent or grandparent on the occasion of the child's birthday; or
        (2)  children at a school-designated function."

Amendment No. 2 was adopted.

**CSSB 42**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: F. Brown, Deshotel, Gallego, Hochberg, Peña, Raymond, Ritter, and Solis recorded voting no.)

### SB 1022 ON SECOND READING
### (Keel - House Sponsor)

**SB 1022**, A bill to be entitled An Act relating to the creation of the Bee Cave Development District; providing authority to impose a tax and issue a bond or similar obligation.

### SB 1022 - POINT OF ORDER

Representative Burnam raised a point of order against further consideration of **SB 1022** under Rule 4, Section 32(c) of the House Rules on the grounds that the bill analysis is inaccurate.

The speaker sustained the point of order.

The ruling precluded further consideration of **SB 1022**.

### CSSB 1195 ON SECOND READING
### (Dutton - House Sponsor)

**CSSB 1195**, A bill to be entitled An Act relating to the authority of peace officers to conduct certain searches.

USA_00223784

**Amendment No. 1**

Representative Dutton offered the following amendment to **CSSB 1195**:

Amend **CSSB 1195** (House Committee Report) in SECTION 1 of the bill, in proposed Subsection (b), Article 1.06, Code of Criminal Procedure (page 1, between lines 17 and 18), by inserting the following new Subdivision (2) and renumbering the subsequent subdivisions of that section accordingly:

(2)   conducts a search for weapons based on a reasonable fear for the officer's safety or the safety of others;

Amendment No. 1 was adopted.

A record vote was requested.

**CSSB 1195**, as amended, was passed to third reading by (Record 811): 96 Yeas, 41 Nays, 1 Present, not voting.

Yeas — Allen, A.; Allen, R.; Alonzo; Anchia; Bailey; Baxter; Berman; Blake; Branch; Brown, F.; Burnam; Callegari; Campbell; Casteel; Chavez; Coleman; Cook, R.; Crabb; Davis, J.; Davis, Y.; Deshotel; Dukes; Dunnam; Dutton; Edwards; Eissler; Elkins; Escobar; Farrar; Flores; Frost; Gallego; Geren; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Grusendorf; Guillen; Hamric; Hegar; Herrero; Hilderbran; Hill; Hochberg; Hope; Hopson; Hughes; Hunter; Hupp; Jones, J.; Keffer, B.; Keffer, J.; King, T.; Kolkhorst; Kuempel; Laney; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McCall; McReynolds; Menendez; Merritt; Miller; Moreno, P.; Mowery; Naishtat; Noriega, M.; Oliveira; Olivo; Peña; Pickett; Puente; Quintanilla; Raymond; Riddle; Ritter; Rodriguez; Rose; Seaman; Smith, T.; Smithee; Solis; Strama; Swinford; Thompson; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo.

Nays — Anderson; Bohac; Bonnen; Brown, B.; Chisum; Cook, B.; Corte; Dawson; Delisi; Denny; Driver; Eiland; Farabee; Flynn; Gattis; Haggerty; Hamilton; Hardcastle; Harper-Brown; Hartnett; Homer; Howard; Jackson; Jones, D.; Keel; King, P.; Krusee; Laubenberg; Morrison; Nixon; Orr; Otto; Phillips; Reyna; Smith, W.; Talton; Taylor; West; Wong; Woolley; Zedler.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Solomons.

Absent — Crownover; Isett; McClendon; Paxton; Pitts; Straus; Truitt.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 811. I intended to vote no.

Berman

I was shown voting yes on Record No. 811. I intended to vote no.

Blake

When Record No. 811 was taken, I was in the house but away from my desk. I would have voted no.

Crownover

I was shown voting yes on Record No. 811. I intended to vote no.

Eissler

I was shown voting yes on Record No. 811. I intended to vote no.

Hilderbran

I was shown voting yes on Record No. 811. I intended to vote no.

Kuempel

### SB 1528 ON SECOND READING
### (Morrison - House Sponsor)

**SB 1528**, A bill to be entitled An Act relating to the payment of tuition and fees at public institutions of higher education and the determination of Texas residency for that purpose.

**Amendment No. 1**

Representative Morrison offered the following amendment to **SB 1528**:

Amend **SB 1528** by adding the following Section.

Section ___. Amend Section 54.203, (g), Education Code to read as follows:

(g)  The governing board of a junior college district may establish a fee for extraordinary costs associated with a specific course or program and may provide that the exemptions provided by Subsections (a) and (b) do not apply to this fee provide that the exemptions provided by Subsections (a) and (b) do not apply to a course fee or training fee charged a student by the junior college district to cover the flight time costs associated with a course in aircraft flight training, to the extent those costs are incurred by a student:

1. who does not have a private pilot rating; or
2. who has a private pilot rating but is not actively seeking to fulfill the requirements of the Federal Aviation Administration for an additional certification or rating.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Uresti offered the following amendment to **SB 1528**:

Amend **SB 1528** (house committee report) by adding the following appropriately numbered sections to the bill and renumbering subsequent sections of the bill accordingly:

SECTION ___. Section 54.203, Education Code, is amended by adding Subsection (h) to read as follows:

USA_00223786

(h)  In determining whether to admit a person to any certificate program or any baccalaureate, graduate, postgraduate, or professional degree program, an institution of higher education may not consider the fact that the person is eligible for an exemption under this section.

SECTION __.  Subsection (h), Section 54.203, Education Code, as added by this Act, applies beginning with admissions to a public institution of higher education for the 2006 spring semester. Admissions to a public institution of higher education before that semester are covered by the law in effect before the effective date of this Act, and the former law is continued in effect for that purpose.

Amendment No. 2 was adopted.

**Amendment No. 3**

Representative Coleman offered the following amendment to **SB 1528**:

Amend **SB 1528** by adding the appropriately numbered section as follows and by renumbering any remaining sections accordingly:

"SECTION __.  The Coordinating Board shall compile data on the tuition and fees charged at each two-year and four-year institution of public higher education, beginning with the fall semester of 2003 through the spring semester of 2007, and shall submit a report to the 80th Texas Legislature describing the amount and percent change per semester for each institution and ranking the two- and four-year institutions in order of the total increase."

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Gallego offered the following amendment to **SB 1528**:

Amend **SB 282** on page __, between lines 10 and 11 by adding:
    "(5)  whether the sale or transfer was pursuant to the power of eminent domain".

Amendment No. 4 was withdrawn.

**Amendment No. 5**

Representative Thompson offered the following amendment to **SB 1528**:

Amend **SB 1528** on page 4, between lines 7 and 8, by inserting a new Section 4 to read as follows and renumber the subsequent sections appropriately:

"SECTION 4.  (a)  The Legislative Oversight Committee shall review tuition deregulation, tuition rates in this state and others, funding levels in this state and others, and fees in this state and others, and make recommendations to the 80th Legislature for its continuation or repeal.  The report shall be submitted by January 1, 2007 to the Legislature.

(b)  Section 54.0513, Education Code shall be repealed on September 1, 2008 unless the Legislature passes legislation to continue its existence."

Amendment No. 5 was withdrawn.

**Amendment No. 6**

Representative Gallego offered the following amendment to **SB 1528**:

Amend **SB 1528** by adding the following section, appropriately numbered, and renumbering subsequent sections accordingly:

SECTION __.   Section 65.45, Education Code, is amended by adding Subsection (d) to read as follows:

(d)  To the extent provided for in an agreement authorized by this section, a person employed by the entity with whom the system enters such an agreement, or the person's spouse or child, may pay the tuition and fees charged to residents of this state when enrolled in a system institution.

Amendment No. 6 was adopted.

**SB 1528**, as amended, was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Herrero recorded voting no.)

## CSSB 1142 ON SECOND READING
### (Hamric - House Sponsor)

**CSSB 1142**, A bill to be entitled An Act relating to the creation of a film industry incentive program.

**CSSB 1142** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: Flynn, Harper-Brown, and Laubenberg recorded voting no.)

## SB 578 ON SECOND READING
### (Hope - House Sponsor)

**SB 578**, A bill to be entitled An Act relating to the authority of certain honorably retired peace officers to carry certain weapons.

**SB 578** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

## CSSB 14 ON SECOND READING
### (Smithee - House Sponsor)

**CSSB 14**, A bill to be entitled An Act relating to rates for certain property and casualty insurance.

**CSSB 14** was passed to third reading. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

### HB 1048 - HOUSE REFUSES TO CONCUR
### IN SENATE AMENDMENTS
### CONFERENCE COMMITTEE APPOINTED

Representative Chisum called up with senate amendments for consideration at this time,

**HB 1048**, A bill to be entitled An Act relating to the forfeiture of contraband used or intended to be used in the commission of certain criminal offenses.

Representative Chisum moved that the house not concur in the senate amendments and that a conference committee be requested to adjust the differences between the two houses on **HB 1048**.

The motion prevailed.

The chair announced the appointment of the following conference committee, on the part of the house, on **HB 1048**: Chisum, chair; Blake; Jackson; Vo; and Leibowitz.

### HB 2614 - HOUSE REFUSES TO CONCUR
### IN SENATE AMENDMENTS
### CONFERENCE COMMITTEE APPOINTED

Representative Eiland called up with senate amendments for consideration at this time,

**HB 2614**, A bill to be entitled An Act relating to the applicability of certain insurance laws to Lloyd's plans and reciprocal and interinsurance exchanges.

Representative Eiland moved that the house not concur in the senate amendments and that a conference committee be requested to adjust the differences between the two houses on **HB 2614**.

The motion prevailed.

The chair announced the appointment of the following conference committee, on the part of the house, on **HB 2614**: Eiland, chair; Thompson; Smithee; Van Arsdale; and B. Keffer.

### HB 585 - HOUSE REFUSES TO CONCUR
### IN SENATE AMENDMENTS
### CONFERENCE COMMITTEE APPOINTED

Representative Corte called up with senate amendments for consideration at this time,

**HB 585**, A bill to be entitled An Act relating to the requirements for the incorporation of a municipality in the extraterritorial jurisdiction of certain existing municipalities.

Representative Corte moved that the house not concur in the senate amendments and that a conference committee be requested to adjust the differences between the two houses on **HB 585**.

The motion prevailed.

The chair announced the appointment of the following conference committee, on the part of the house, on **HB 585**: Corte, chair; Mowery; Hilderbran; Leibowitz; and R. Cook.

### HB 137 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative B. Keffer called up with senate amendments for consideration at this time,

**HB 137**, A bill to be entitled An Act relating to "Welcome to Texas" signs.

Representative B. Keffer moved to concur in the senate amendments to **HB 137**.

The motion to concur in senate amendments prevailed. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

**Senate Committee Substitute**

**HB 137**, A bill to be entitled An Act relating to "Welcome to Texas" signs.
BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
SECTION 1.  Subchapter H, Chapter 201, Transportation Code, is amended by adding Section 201.617 to read as follows:
Sec. 201.617.  "WELCOME TO TEXAS" SIGNS. (a) The department may erect a "Welcome to Texas" sign to designate the state boundary on an interstate, United States, or state highway entering the state.
(b)  A "Welcome to Texas" sign erected by the department must include the following elements:
(1)  a depiction of the state flag;
(2)  the phrase "Drive Friendly–The Texas Way"; and
(3)  the phrase "Welcome to Texas–Proud to be the Home of President George W. Bush."
SECTION 2.  The Texas Department of Transportation shall ensure that a "Welcome to Texas" sign erected by the department before the effective date of this Act complies with this Act not later than January 1, 2006.
SECTION 3.  This Act takes effect September 1, 2005.

### HB 833 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Gattis called up with senate amendments for consideration at this time,

**HB 833**, A bill to be entitled An Act relating to hours of sale for certain alcoholic beverages in certain areas.

Representative Gattis moved to concur in the senate amendments to **HB 833**.

A record vote was requested.

The motion to concur in senate amendments prevailed by (Record 812): 139 Yeas, 0 Nays, 1 Present, not voting.

USA_00223790

Yeas — Allen, A.; Allen, R.; Alonzo; Anchia; Anderson; Bailey; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Callegari; Campbell; Casteel; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Davis, Y.; Dawson; Delisi; Denny; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flynn; Frost; Gallego; Gattis; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Grusendorf; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Herrero; Hilderbran; Hochberg; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Jones, J.; Keel; Keffer, B.; Keffer, J.; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Laney; Laubenberg; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Miller; Moreno, P.; Morrison; Naishtat; Nixon; Noriega, M.; Oliveira; Olivo; Orr; Otto; Paxton; Peña; Phillips; Pickett; Pitts; Puente; Quintanilla; Raymond; Reyna; Riddle; Ritter; Rodriguez; Rose; Seaman; Smith, T.; Smith, W.; Smithee; Solis; Strama; Straus; Swinford; Talton; Taylor; Thompson; Truitt; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo; West; Wong; Woolley; Zedler.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Solomons.

Absent — Flores; Geren; Hill; Merritt; Mowery.

**Senate Committee Substitute**

**HB 833**, A bill to be entitled An Act relating to hours of sale for certain alcoholic beverages in certain areas.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Sections 105.03(c) and (d), Alcoholic Beverage Code, are amended to read as follows:

(c) In a city or county having a population of 800,000 [500,000] or more, according to the last preceding federal census, or 500,000 or more, according to the 22nd Decennial Census of the United States, as released by the Bureau of the Census on March 12, 2001, a holder of a mixed beverage late hours permit may also sell and offer for sale mixed beverages between midnight and 2 a.m. on any day.

(d) In a city or county other than a city or county described by Subsection (c) [having a population of less than 500,000, according to the last preceding federal census], the extended hours prescribed in Subsection (c) of this section are effective for the sale of mixed beverages and the offer to sell them by a holder of a mixed beverages late hours permit:

(1) in the unincorporated areas of the county if the extended hours are adopted by an order of the commissioners court; and

(2) in an incorporated city or town if the extended hours are adopted by an ordinance of the governing body of the city or town.

SECTION 2. Sections 105.05(c) and (d), Alcoholic Beverage Code, are amended to read as follows:

(c)  In a city or county having a population of 800,000 [500,000] or more, according to the last preceding federal census, or 500,000 or more, according to the 22nd Decennial Census of the United States, as released by the Bureau of the Census on March 12, 2001, a holder of a retail dealer's on-premise late hours license may also sell, offer for sale, and deliver beer between midnight and 2 a.m. on any day.

(d)  In a city or county other than a city or county described by Subsection (c) [having a population of less than 500,000, according to the last preceding federal census], the extended hours prescribed in Subsection (c) of this section, or any part of the extended hours prescribed in Subsection (c) of this section are effective for the sale, offer to sell, and delivery of beer by a holder of a retail dealer's on-premise late hours license:

(1)  in the unincorporated areas of the county if the extended hours are adopted by an order of the commissioners court; and

(2)  in an incorporated city or town if the extended hours are adopted by an ordinance of the governing body of the city or town.

SECTION 3.  The changes in law made by this Act apply only to the sale of or offer to sell an alcoholic beverage on or after the effective date of this Act. The sale of or offer to sell an alcoholic beverage before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose.

SECTION 4.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2005.

### HB 283 - HOUSE REFUSES TO CONCUR
### IN SENATE AMENDMENTS
### CONFERENCE COMMITTEE APPOINTED

Representative Hope called up with senate amendments for consideration at this time,

**HB 283**, A bill to be entitled An Act relating to admission, assignment, and conduct of certain public school students.

Representative Hope moved that the house not concur in the senate amendments and that a conference committee be requested to adjust the differences between the two houses on **HB 283**.

The motion prevailed.

The chair announced the appointment of the following conference committee, on the part of the house, on **HB 283**: Hope, chair; Thompson; Goodman; Dutton; and Goolsby.

### HB 1609 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Chisum called up with senate amendments for consideration at this time,

USA_00223792

**HB 1609**, A bill to be entitled An Act relating to the allowed wastes and exemptions applicable to certain municipal solid waste landfill units in arid areas.

Representative Chisum moved to concur in the senate amendments to **HB 1609**.

The motion to concur in senate amendments prevailed. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **HB 1609** by adding SECTION 1, SECTION 2, SECTION 3, SECTION 5 and SECTION 6 as follows and renumbering the existing sections appropriately:

SECTION 1.  Section 361.0666(a), Health and Safety Code, is amended to read as follows:

(a)  An applicant for a permit under this chapter for a new facility that accepts municipal solid wastes may [shall] hold a public meeting in the county in which the proposed facility is to be located. [The meeting must be held before the 45th day after the date the application is filed.]

SECTION 2.  Section 361.0791(a) and (b), Health and Safety Code, is amended to read as follows:

(a)  Notwithstanding other law, the commission may [shall] hold a public meeting on an application for a new hazardous waste management facility in the county in which the proposed hazardous waste management facility is to be located.  The commission[, on request of a person affected or as otherwise required by commission rule,] may [shall] hold a public meeting on an application for a Class 3 modification or a major amendment to an existing facility's hazardous waste permit.

(b)  Notwithstanding other law, the commission may [shall] hold a public meeting on an application for a new municipal solid waste management facility in the county in which the proposed municipal solid waste management facility is to be located.

SECTION 3.  Section 361.082(d), Health and Safety Code, is amended to read as follows:

(d)  In addition to the hearing held under this section, the commission may [shall] hold a public meeting and the applicant shall give notice as provided by Section 361.0791.

SECTION 5.  Section 361.534, Health and Safety Code, is amended by amending the heading, amending Subsections (a) and (b), and adding new Subsection (c) to read as follows:

Sec. 361.534.  Permit Public Meeting [Hearing].

(a)  The commission may hold a public meeting on [shall set a hearing to be held not later than the 30th day after the date that the commission receives] an application under this subchapter.

(b)  The commission shall hold a public meeting on an application under this subchapter:

(1)  on the request of a member of the legislature who represents the general area in which the development is proposed to be located; or

USA_00223793

(2) if the executive director determines that there is substantial public interest in the proposed development.

(c) The commission by mail shall notify the applicant of the date, time, and place of the public meeting [hearing not later than the 15th day before the date of the hearing]. The commission shall require the applicant to publish notice of the public meeting [hearing] in a newspaper that is generally circulated in each county in which the property proposed for development is located. The published notice must appear at least once a week for the two weeks before the date of the public meeting [hearing].

SECTION 6. The changes in law made by this Act to Health and Safety Code Sections 361.0666(a), 361.0791(a) and (b), 361.082(d), and 361.534 apply only to an application that is filed on or after the effective date of this Act. An application that was filed before the effective date of this Act is governed by the former law, and that law is continued in effect for that purpose.

### HB 3147 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Turner called up with senate amendments for consideration at this time,

**HB 3147**, A bill to be entitled An Act relating to authorizing the Texas Building and Procurement Commission to enter into more favorable lease with option to purchase agreements with regards to certain space currently occupied under lease with option to purchase agreements.

Representative Turner moved to concur in the senate amendments to **HB 3147**.

A record vote was requested.

The motion to concur in senate amendments prevailed by (Record 813): 140 Yeas, 2 Nays, 1 Present, not voting.

Yeas — Allen, A.; Allen, R.; Alonzo; Anchia; Anderson; Bailey; Baxter; Berman; Blake; Bohac; Branch; Brown, B.; Brown, F.; Callegari; Campbell; Casteel; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Corte; Crabb; Crownover; Davis, J.; Davis, Y.; Dawson; Delisi; Denny; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flores; Flynn; Frost; Gallego; Gattis; Geren; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Grusendorf; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Herrero; Hilderbran; Hill; Hochberg; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Jones, J.; Keel; Keffer, B.; Keffer, J.; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Laney; Laubenberg; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McCall; McReynolds; Menendez; Miller; Moreno, P.; Morrison; Mowery; Naishtat; Nixon; Noriega, M.; Oliveira; Olivo; Orr; Otto; Paxton; Peña; Phillips; Pickett; Pitts; Puente; Quintanilla; Raymond; Reyna; Riddle; Ritter; Rodriguez; Rose; Seaman; Smith, T.; Smith, W.; Smithee; Solis; Strama; Straus; Swinford; Talton; Taylor; Thompson; Truitt; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo; West; Wong; Woolley; Zedler.

Nays — Bonnen; Burnam.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Giddings; Solomons.

Absent — McClendon; Merritt.

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **HB 3147** by striking all below the enacting clause and substituting the following:

SECTION 1. Subchapter J, Chapter 2166, Government Code, is amended by adding Sections 2166.454, 2166.4541, and 2166.4542 to read as follows:

Sec. 2166.454. PURCHASING OR OBTAINING MORE FAVORABLE LEASE WITH OPTION TO PURCHASE AGREEMENTS WITH REGARD TO CERTAIN LEASED SPACE. (a) This section and Sections 2166.4541 and 2166.4542 apply only in relation to space currently occupied by a state agency under one of seven lease with an option to purchase agreements:

(1) entered into by the state before December 1994, for the benefit of the Texas Commission on Environmental Quality or its predecessor agency, the office of the attorney general, the successor of the Department of Human Services, the Department of Family and Protective Services, or the Texas Department of Transportation; and

(2) under which the state may acquire title to the space by paying the purchase price remaining under the terms of the agreement on September 1 of an odd-numbered year.

(b) If the commission determines that it is advantageous to the state, the commission may:

(1) request the Texas Public Finance Authority to issue revenue bonds to finance the purchase of any or all of the space to which this section applies in accordance with Section 2166.4542 and Chapter 1232, if the commission determines that it is more advantageous to the state to purchase the space than to enter into a more favorable lease with an option to purchase agreement under Section 2166.4541 for that space; or

(2) enter into a more favorable lease with an option to purchase agreement with regard to any or all of the space to which this section applies by taking the actions authorized by Section 2166.4541 under the conditions prescribed by Section 2166.4541, if the commission determines that it is more advantageous to the state to enter into a more favorable lease with an option to purchase agreement for that space than to purchase the space under Section 2166.4542 and Chapter 1232.

(c) This section expires September 2, 2008, except that this section is continued in effect after that date for the limited purpose of applying with regard to any transaction authorized by this section and Section 2166.4541 or 2166.4542 that occurs before that date.

Sec. 2166.4541.  ENTERING INTO MORE FAVORABLE LEASE WITH OPTION TO PURCHASE AGREEMENTS.  (a)  Subject to Section 2166.454(b), the commission may issue sale and lease purchase revenue obligations in accordance with this section and use the proceeds of the revenue obligations to:

(1) pay the commission's expenses in connection with issuing the revenue obligations;

(2) purchase any or all of the space described by Section 2166.454(a) according to the terms of the applicable existing lease with an option to purchase agreement or agreements; and

(3) if it is advisable to make capital improvements to the space, pay for making the capital improvements.

(b) The revenue obligations issued under Subsection (a) must be paid in their entirety immediately after issuance by using the proceeds of the concurrent sale of the space by the commission to a third party who agrees to lease the space back to the state with an option to purchase under the following conditions:

(1) the term of the new lease with an option to purchase agreement does not exceed the remaining term on the applicable existing lease with an option to purchase agreement, as of the date on which the transactions described by this section occur; and

(2) the cost to the state under the new lease with an option to purchase agreement is less than the cost to the state under the existing lease with an option to purchase agreement and the difference in cost justifies any costs incurred by the commission and the state in taking actions under this section with regard to the space.

(c) The commission shall obtain the approval of the Bond Review Board before issuing a sale and lease purchase revenue obligation under this section.

(d) Any sale and lease purchase revenue obligations issued by the commission under this section and any lease with an option to purchase agreement entered into under this section must be submitted to the attorney general for review and approval. If the attorney general determines that the obligation or agreement, as applicable, entered into under this section complies with this section, the attorney general shall approve the issuance of the obligation or the agreement, as applicable.  On approval by the attorney general, the obligation or agreement, as applicable, is incontestable for any cause.

(e) A sale and lease purchase revenue obligation issued under this section is not a debt of the state or any state agency, is not a pledge of the faith and credit or the taxing power of the state, and may be paid only from the proceeds of the concurrent sale of the space to which the sale and lease purchase revenue obligation relates.  A sale and lease purchase revenue obligation issued under this section must contain a statement to that effect.

(f) A lease with an option to purchase agreement entered into under this section must contain a statement that the agreement is not a debt of the state or any state agency and is contingent on continued legislative appropriations for making the lease payments.

(g)  This section expires September 2, 2008, except that this section is continued in effect after that date for the limited purpose of applying with regard to any transaction authorized by Section 2166.454 and this section that occurs before that date.

Sec. 2166.4542.  PURCHASING CERTAIN LEASED SPACE. (a) Subject to Section 2166.454(b), the commission may purchase any or all of the space described by Section 2166.454(a) in accordance with this section and Chapter 1232.

(b)  The commission shall request the Texas Public Finance Authority to issue revenue obligations to finance the purchase price of any or all of the space described by Section 2166.454(a) that the commission elects to purchase under this section.  The authority shall issue the revenue obligations in accordance with and subject to all provisions of Chapter 1232 applicable to revenue obligations, including all provisions relating to ensuring that the revenue obligations are paid, except that Section 1232.108(2) does not apply.

(c)  The authority shall issue the revenue obligations in amounts sufficient to:

(1)  pay the authority's expenses in connection with issuing the revenue obligations;

(2)  pay the purchase price of the space described by Section 2166.454(a) included in the request of the commission according to the terms of the applicable existing lease with an option to purchase agreement or agreements; and

(3)  if the commission considers it advisable to make capital improvements to the space, pay for making the capital improvements.

(d)  At the time that a building is purchased under this section, money specifically appropriated by the legislature to an agency occupying space in the building for lease payments under the applicable lease with an option to purchase agreement, or the money available to and budgeted by the agency for that purpose, shall be transferred to the commission and used by the commission only to make the required lease or rental payments to the authority during the remainder of the state fiscal biennium during which the building was purchased under this section.

(e)  This section expires September 2, 2008, except that this section is continued in effect after that date for the limited purpose of applying with regard to any transaction authorized by Section 2166.454 and this section that occurs before that date.

SECTION 2.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect on the 91st day after the last day of the legislative session.

(Giddings now present)

## HB 1480 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Gattis called up with senate amendments for consideration at this time,

**HB 1480**, A bill to be entitled An Act relating to the issuance of special license plates to benefit certain programs.

Representative Gattis moved to concur in the senate amendments to **HB 1480**.

The motion to concur in senate amendments prevailed. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **HB 1480** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____. (a)  Section 504.3135, Transportation Code, is amended to read as follows:

Sec. 504.3135.  OPERATION IRAQI FREEDOM.   The department shall issue without charge specialty license plates for persons who served in the United States armed forces and participated in Operation Iraqi Freedom [on or after November 8, 2002, or on or before May 1, 2003]. License plates issued under this section must include the words "Operation Iraqi Freedom."

(b)  The change in law made by this section applies only to a registration period beginning on or after the effective date of this Act.

## HB 1708 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Baxter called up with senate amendments for consideration at this time,

**HB 1708**, A bill to be entitled An Act relating to the applicability of state ethics laws to and indemnification of directors of regional mobility authorities; providing penalties.

Representative Baxter moved to concur in the senate amendments to **HB 1708**.

The motion to concur in senate amendments prevailed. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **HB 1708** by striking SECTION 2 of the bill (committee report, page 1, line 59, through page 2, line 4) and substituting the following:

SECTION 2.  Section 370.258, Transportation Code, is amended by adding Subsection (e) to read as follows:

USA_00223798

(e) If an officer or director who has been indemnified by an authority under Subsection (a) is subsequently convicted of an offense involving the conduct for which the officer or director was indemnified, the officer or director is liable to the authority for the amount of indemnification paid, with interest at the legal rate for interest on a judgment from the date the indemnification was paid.

### HB 268 - HOUSE REFUSES TO CONCUR IN SENATE AMENDMENTS CONFERENCE COMMITTEE APPOINTED

Representative Keel called up with senate amendments for consideration at this time,

**HB 268**, A bill to be entitled An Act relating to the qualifications and appointment of counsel for indigent defendants in capital cases.

Representative Keel moved that the house not concur in the senate amendments and that a conference committee be requested to adjust the differences between the two houses on **HB 268**.

The motion prevailed.

The chair announced the appointment of the following conference committee, on the part of the house, on **HB 268**: Keel, chair; Denny; Reyna; Hodge; and Peña.

### HB 1038 - HOUSE CONCURS IN SENATE AMENDMENTS TEXT OF SENATE AMENDMENTS

Representative Isett called up with senate amendments for consideration at this time,

**HB 1038**, A bill to be entitled An Act relating to certain reduced fees for a license to carry a concealed handgun.

Representative Isett moved to concur in the senate amendments to **HB 1038**.

The motion to concur in senate amendments prevailed. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. No members registered their position on this measure.)

**Senate Committee Substitute**

**HB 1038**, A bill to be entitled An Act relating to certain reduced fees for a license to carry a concealed handgun.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 411.195, Government Code, is amended to read as follows:

Sec. 411.195. REDUCTION OF FEES FOR SENIOR CITIZENS. Notwithstanding any other provision of this subchapter, the department shall reduce by 50 percent any fee required for the issuance of an original, duplicate, [or] modified, or renewed license under this subchapter if the applicant for the license is 60 years of age or older.

SECTION 2. This Act applies only to a renewal that occurs on or after the effective date of this Act. A renewal that occurs before the effective date of this Act is covered by the law in effect on the date of the renewal, and the former law is continued in effect for that purpose.

SECTION 3. This Act takes effect September 1, 2005.

### HB 1044 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Eiland called up with senate amendments for consideration at this time,

**HB 1044**, A bill to be entitled An Act relating to exceptions for certain overweight vehicles.

Representative Eiland moved to concur in the senate amendments to **HB 1044**.

A record vote was requested.

The motion to concur in senate amendments prevailed by (Record 814): 140 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen, A.; Allen, R.; Alonzo; Anchia; Anderson; Bailey; Baxter; Berman; Blake; Bohac; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Callegari; Campbell; Casteel; Chavez; Chisum; Coleman; Cook, B.; Cook, R.; Corte; Crownover; Davis, J.; Davis, Y.; Dawson; Delisi; Denny; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; Escobar; Farabee; Farrar; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Goodman; Goolsby; Griggs; Guillen; Haggerty; Hamilton; Hamric; Hardcastle; Harper-Brown; Hartnett; Hegar; Herrero; Hilderbran; Hill; Hochberg; Homer; Hope; Hopson; Howard; Hughes; Hunter; Hupp; Isett; Jackson; Jones, D.; Jones, J.; Keel; Keffer, B.; Keffer, J.; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Laney; Laubenberg; Leibowitz; Luna; Madden; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Miller; Moreno, P.; Morrison; Mowery; Naishtat; Nixon; Noriega, M.; Oliveira; Olivo; Orr; Otto; Paxton; Peña; Phillips; Pickett; Pitts; Puente; Quintanilla; Raymond; Reyna; Riddle; Ritter; Rodriguez; Rose; Seaman; Smith, T.; Smith, W.; Smithee; Solis; Strama; Straus; Swinford; Talton; Taylor; Thompson; Turner; Uresti; Van Arsdale; Veasey; Villarreal; Vo; West; Wong; Woolley; Zedler.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Castro; Hodge.

Absent, Excused, Committee Meeting — Solomons.

Absent — Crabb; Flores; Grusendorf; Merritt; Truitt.

### Senate Committee Substitute

**HB 1044,** A bill to entitled An Act relating to an optional procedure for the issuance of a permit by a certain county for the movement of oversize or overweight vehicles.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Chapter 623, Transportation Code, is amended by adding Subchapter M to read as follows:

USA_00223800

## SUBCHAPTER M. CHAMBERS COUNTY PERMITS

Sec. 623.250.  OPTIONAL  PROCEDURE.  This  subchapter  provides  an optional procedure for the issuance of a permit by Chambers County for the movement of oversize or overweight vehicles carrying cargo on certain state highways located in Chambers County.

Sec. 623.251.  DEFINITION. In this subchapter, "county" means Chambers County.

Sec. 623.252.  ISSUANCE OF PERMITS. (a)   The Texas Transportation Commission may authorize the county to issue permits for the movement of oversize or overweight vehicles carrying cargo on state highways located in Chambers County.

(b)  A permit issued under this subchapter may authorize:

(1)  the transport of cargo only on the following roads in Chambers County:

(A)  Farm-to-Market Road 1405; and

(B)  the frontage road of State Highway 99 located in the Cedar Crossing Business Park; and

(2)  the movement of equipment and commodities weighing 100,000 pounds or less.

Sec. 623.253.  MAINTENANCE  CONTRACTS.  The  county  shall  make payments to the department to provide funds for the maintenance of state highways subject to this subchapter.

Sec. 623.254.  PERMIT FEES. (a) The county may collect a fee for permits issued under this subchapter. The fee may not exceed $80 per trip.

(b)  Fees collected under Subsection (a) may be used only to provide funds for the payments under Section 623.253 and for the county's administrative costs, which may not exceed 15 percent of the fees collected. The fees shall be deposited in the state highway fund. Fees deposited in the state highway fund under this section are exempt from the application of Section 403.095, Government Code.

Sec. 623.255.  PERMIT REQUIREMENTS. (a) A permit issued under this subchapter must include:

(1)  the name of the applicant;

(2)  the date of issuance;

(3)  the signature of the designated agent for the county;

(4)  a statement of the kind of cargo being transported, the maximum weight and dimensions of the equipment, and the kind and weight of each commodity to be transported;

(5)  a statement of any condition on which the permit is issued;

(6)  a statement that the cargo may be transported in Chambers County only over Farm-to-Market Road 1405 and the frontage road of State Highway 99 located in the Cedar Crossing Business Park; and

(7)  the location where the cargo was loaded.

(b)  The county shall report to the department all permits issued under this subchapter.

USA_00223801

Sec. 623.256. TIME OF MOVEMENT. A permit issued under this subchapter must specify the time during which movement authorized by the permit is allowed.

Sec. 623.257. SPEED LIMIT. Movement authorized by a permit issued under this subchapter may not exceed the posted speed limit or 55 miles per hour, whichever is less. A violation of this provision constitutes a moving violation.

Sec. 623.258. ENFORCEMENT. The Department of Public Safety has authority to enforce this subchapter.

Sec. 623.259. RULES. The Texas Transportation Commission may adopt rules necessary to implement this subchapter.

SECTION 2. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2005.

### HB 1763 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative R. Cook called up with senate amendments for consideration at this time,

**HB 1763**, A bill to be entitled An Act relating to the notice, hearing, rulemaking, and permitting procedures for groundwater conservation districts.

Representative R. Cook moved to concur in the senate amendments to **HB 1763**.

The motion to concur in senate amendments prevailed. (In accordance with House Rule 5, Section 51(b), every member present must have favored passage of the measure, but any member may register their position with the journal clerk. Members registering votes are as follows: T. King recorded voting no.)

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **HB 1763** by adding the following sections and renumber accordingly:

SECTION ____. Section 16.053, Water Code, is amended by amending Subsection (e) and (p) and adding Subsections (p-1), (p-2), (p-3) and (p-4) to read as follows:

(e) Each regional water planning group shall submit to the development board a regional water plan that:

(1) is consistent with the guidance principles for the state water plan adopted by the development board under Section 16.051(d);

(2) provides information based on data provided or approved by the development board in a format consistent with the guidelines provided by the development board under Subsection (d);

(3) identifies:

(A) each source of water supply in the regional water planning area, including information supplied by the executive administrator on the amount of managed available groundwater in accordance with the guidelines provided by the development board under Subsections (d) and (f);

(B) factors specific to each source of water supply to be considered in determining whether to initiate a drought response; and

USA_00223802

(C) actions to be taken as part of the response;

(4) has specific provisions for water management strategies to be used during a drought of record;

(5) includes but is not limited to consideration of the following:

(A) any existing water or drought planning efforts addressing all or a portion of the region;

(B) approved ~~certified~~ groundwater conservation district management plans and other plans submitted under Section 16.054;

(C) all potentially feasible water management strategies, including but not limited to improved conservation, reuse, and management of existing water supplies, conjunctive use, acquisition of available existing water supplies, and development of new water supplies;

(D) protection of existing water rights in the region;

(E) opportunities for and the benefits of developing regional water supply facilities or providing regional management of water supply facilities;

(F) appropriate provision for environmental water needs and for the effect of upstream development on the bays, estuaries, and arms of the Gulf of Mexico and the effect of plans on navigation;

(G) provisions in Section 11.085(k)(1) if interbasin transfers are contemplated;

(H) voluntary transfer of water within the region using, but not limited to, regional water banks, sales, leases, options, subordination agreements, and financing agreements; and

(I) emergency transfer of water under Section 11.139, including information on the part of each permit, certified filing, or certificate of adjudication for nonmunicipal use in the region that may be transferred without causing unreasonable damage to the property of the nonmunicipal water rights holder;

(6) identifies river and stream segments of unique ecological value and sites of unique value for the construction of reservoirs that the regional water planning group recommends for protection under Section 16.051;

(7) assesses the impact of the plan on unique river and stream segments identified in Subdivision (6) if the regional water planning group or the legislature determines that a site of unique ecological value exists; and

(8) describes the impact of proposed water projects on water quality.

(p) If a groundwater conservation district files a petition with the development board stating that a conflict requiring resolution may exist between the district's approved ~~certified groundwater conservation district~~ management plan developed under Section 36.1071 and an ~~the~~ approved state ~~regional~~ water plan, the development board shall provide technical assistance to and facilitate coordination between the district and the involved region to resolve the conflict. Not later than the 45th day after the date the groundwater conservation district files a petition with the development board, if the conflict has not been resolved, the district and the involved region shall mediate the conflict. The district and the involved region may seek the assistance of the Center for Public Policy Dispute Resolution at The University of Texas School of Law or an alternative dispute

USA_00223803

resolution system established under Chapter 152, Civil Practice and Remedies Code, in obtaining a qualified impartial third party to mediate the conflict. The cost of the mediation services must be specified in the agreement between the parties and the Center for Public Policy Dispute Resolution or the alternative dispute resolution system. If the district and the involved region cannot resolve the conflict through mediation ~~remains~~, the development board shall resolve the conflict not later than the 60th day after the date the mediation is completed as provided by Subsections (p-1) and (p-2).

(p-1) If the development board determines that resolution of the conflict requires a revision of an approved regional water plan, the development board shall suspend the approval of that plan and provide information to the regional water planning group. The regional water planning group shall prepare any revisions to its plan specified by the development board and shall hold, after notice, at least one public hearing at some central location within the regional water planning area. The regional water planning group shall consider all public and development board comments, prepare, revise, and adopt its plan, and submit the revised plan to the development board for approval and inclusion in the state water plan.

(p-2) If the development board determines that resolution of the conflict requires a revision of the district's approved ~~certified~~ groundwater conservation district management plan, the development board shall ~~suspend the certification of that plan and~~ provide information to the district. The groundwater district shall prepare any revisions to its plan based on the information provided ~~specified~~ by the development board and shall hold, after notice, at least one public hearing at some central location within the district. The groundwater district shall consider all public and development board comments, prepare, revise, and adopt its plan, and submit the revised plan to the development board ~~for certification~~.

(p-3) If the groundwater conservation district disagrees with the decision of the development board under Subsection (p), the district may appeal the decision to a district court in Travis County. Costs for the appeal shall be set by the court hearing the appeal. An appeal under this subsection is by trial de novo.

(p-4) On the request of the involved region or groundwater conservation district, the development board shall include discussion of the conflict and its resolution in the state water plan that the development board provides to the governor, the lieutenant governor, and the speaker of the house of representatives under Section 16.051(e).

SECTION ___. Section 36.001, Water Code, is amended by striking Subdivision (17) amending and adding Subdivisions (4-a) and (24) through (29) to read as follows:

(4-a) "Federal conservation program" means the Conservation Reserve Program of the United States Department of Agriculture.

(17) ~~"Applicant" means a newly confirmed district applying for a loan from the loan fund.~~

(24) "Total aquifer storage" means the total calculated volume of groundwater that an aquifer is capable of producing.

(25) "Managed available groundwater" means the amount of water that may be permitted by a district for beneficial use in accordance with the desired future condition of the aquifer as determined under Section 36.108.

(26) "Recharge" means the amount of water that infiltrates to the water table of an aquifer.

(27) "Inflows" means the amount of water that flows into an aquifer from another formation.

(28) "Discharge" means the amount of water that leaves an aquifer by natural or artificial means.

(29) "Evidence of historic or existing use" means evidence that is material and relevant to a determination of the amount of groundwater beneficially used without waste by a permit applicant during the relevant time period set by district rule that regulates groundwater based on historic use. Evidence in the form of oral or written testimony shall be subject to cross-examination. The Texas Rules of Evidence govern the admissibility and introduction of evidence of historic or existing use, except that evidence not admissible under the Texas Rules of Evidence may be admitted if it is of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs.

SECTION ___. Subsections (a), (b), and (d) through (h), Section 36.1071, Water Code, are amended to read as follows:

(a) Following notice and hearing, the district shall, in coordination with surface water management entities on a regional basis, develop a comprehensive management plan which addresses the following management goals, as applicable:

(1) providing the most efficient use of groundwater;

(2) controlling and preventing waste of groundwater;

(3) controlling and preventing subsidence;

(4) addressing conjunctive surface water management issues;

(5) addressing natural resource issues;

(6) addressing drought conditions; and

(7) addressing conservation, recharge enhancement, rainwater harvesting, precipitation enhancement, or brush control, where appropriate and cost-effective; and

(8) addressing in a quantitative manner the desired future conditions of the groundwater resources;

(b) After January 5, 2002, a A district management plan, or any amendments to a district management plan, shall be developed by the district using the district's best available data and forwarded to the regional water planning group for use consideration in their planning process.

(d) The commission shall provide technical assistance to a district during its initial operational phase. If requested by a district, the Texas Water Development Board shall train the district on basic data collection methodology and provide technical assistance to districts as provided by Section 16.0122.

(e) In the management plan described under Subsection (a), the district shall:

(1)  identify  the  performance  standards  and  management  objectives under which the district will operate to achieve the management goals identified under Subsection (a);

(2)  specify,  in  as  much  detail  as  possible,  the  actions,  procedures, performance,  and  avoidance  that  are  or  may  be  necessary  to  effect  the  plan, including specifications and proposed rules;

(3) include estimates of the following:

(A)  managed  available  ~~the  existing  total  usable  amount  of~~ groundwater  in  the  district  based  on  the  desired  future  condition  established under Section 36.108;

(B)  the amount of groundwater being used within the district on an annual basis;

(C)  the  annual  amount  of  recharge  from precipitation, if  any,  to  the groundwater  resources  within  the  district  ~~and how  natural  or  artificial  recharge may be increased~~; and

(D)  for each aquifer,  the  annual volume of water that discharges from  the  aquifer  to  springs  and  any  surface  water  bodies,  including  lakes, streams, and rivers;

(E)  the  annual  volume  of  flow  into  and  out  of  the  district  within each  aquifer  and  between  aquifers  in  the  district,  if  a  groundwater  availability model is available;

(F)  the  projected  surface  water  supply  in  the  district  according  to the most recently adopted state water plan; and

(G)  the projected total demand for water in the district according to the most recently adopted state water plan ~~projected water supply and demand for water within the district~~; and

(4)  consider the  ~~address~~  water supply needs  and water management strategies included  in  ~~a manner that is not in conflict with~~  the  adopted state ~~appropriate approved regional~~  water  plan  ~~if a regional  water  plan  has  been approved under Section 16.053~~.

(f)  The district shall adopt rules necessary to implement the management plan.  Prior to the development of the management plan and its approval under Section 36.1072, the district may not adopt rules other than rules pertaining to the registration and interim permitting of new and existing wells and rules governing spacing  and  procedure  before  the  district's  board;  however,  the  district  may  not adopt  any  rules  limiting  the  production  of  wells,  except  rules  requiring  that groundwater  produced  from  a  well  be  put  to  a  non-wasteful,  beneficial  use  a district  may  accept  applications  for  permits  under  Section  36.113,  provided  the district does not act on any such application until the district's management plan is approved as provided in Section 36.1072.

(g)  The  district  ~~board~~  shall  adopt  amendments  to  the  management  plan  as necessary.  Amendments  to  the  management  plan  shall  be  adopted  after  notice  and hearing and shall otherwise comply with the requirements of this section.

(h)  In  developing  its  management  plan,  the  district  shall  use  the groundwater  availability  modeling  information  provided  by  the  executive administrator  together  ~~in conjunction~~  with any available site-specific information

that has been provided by the district to the executive administrator for review and comment before being used in the plan [and acceptable to the executive administrator.

SECTION ___. Section 36.1072, Water Code, is amended to read as follows:

Sec. 36.1072. TEXAS WATER DEVELOPMENT BOARD REVIEW AND APPROVAL CERTIFICATION OF MANAGEMENT PLAN. (a) A district shall, not later than three two years after the creation of the district or, if the district required confirmation, after the election confirming the district's creation, submit the management plan required under Section 36.1071 to the executive administrator for review and approval certification.

(b) Within 60 days of receipt of a management plan adopted under Section 36.1071, readopted under Subsection (e) or (g) of this section, or amended under Section 36.1073, the executive administrator shall approve certify a management plan if the plan is administratively complete. A management plan is administratively complete when it contains the information required to be submitted under Section 36.1071(a) and (e).

The executive administrator may determine whether that conditions justify waiver of the requirements under Section 36.1071(e)(4).

(c) Once the executive administrator has approved a determination that a management plan is administratively complete has been made:

(1) the executive administrator may not revoke but may suspend the approval as provided by Subsection (g) determination that a management plan is administratively complete; and

(2) the executive administrator may request additional information from the district if the information is necessary to clarify, modify, or supplement previously submitted material, but; and

(3) a request for additional information does not render the management plan unapproved incomplete.

(d) A management plan takes effect on approval certification by the executive administrator or, if appealed, on approval certification by the Texas Water Development Board.

(e) The district board may review the plan annually and must review and readopt the plan with or without revisions at least once every five years. The district shall provide the readopted plan to the executive administrator not later than the 60th day after the date on which the plan was readopted. Approval of the preceding management plan remains in effect until:

(1) the district fails to timely readopt a management plan;

(2) the district fails to timely submit the district's readopted management plan to the executive administrator; or

(3) the executive administrator determines that the readopted management plan does not meet the requirements for approval, and the district has exhausted all appeals to the Texas Water Development Board or appropriate court.

(f) If the executive administrator does not approve ~~certify~~ the management plan, the executive administrator shall provide to the district, in writing, the reasons for the action. Not later than the 180th day after the date a district receives notice that its management plan has not been approved ~~certified~~, the district may submit a revised management plan for review and approval ~~certification~~. The executive administrator's decision may be appealed to the Texas Water Development Board. <u>If the Texas Water Development Board decides not to approve the management plan on appeal, the district may request that the conflict be mediated. The district and the board may seek the assistance of the Center for Public Policy Dispute Resolution at The University of Texas School of Law or an alternative dispute resolution system established under Chapter 152, Civil Practice and Remedies Code, in obtaining a qualified impartial third party to mediate the conflict. The cost of the mediation services must be specified in the agreement between the parties and the Center for Public Policy Dispute Resolution or the alternative dispute resolution system. If the parties do not resolve the conflict through mediation, the</u> ~~The~~ decision of the Texas Water Development Board <u>not</u> ~~on whether~~ to <u>approve</u> ~~certify~~ the management plan may ~~not~~ be appealed <u>to a district court in Travis County. Costs for the appeal shall be set by the court hearing the appeal. An appeal under this subsection is by trial de novo.</u> The commission shall not take enforcement action against a district under Subchapter I until the later of the expiration of the 180-day period<u>,</u> ~~or~~ the date the Texas Water Development Board has taken final action withholding <u>approval</u> ~~certification~~ of a revised management plan<u>, the date the mediation is completed, or the date a final judgment upholding the board's decision is entered by a district court. An enforcement action may not be taken against a district by the commission or the state auditor under Subchapter I because the district's management plan and the approved regional water plan are in conflict while the parties are attempting to resolve the conflict before the development board, in mediation, or in court. Rules of the district continue in full force and effect until all appeals under this subsection have been exhausted and the final judgment is adverse to the district.</u>

(g) In this subsection, "<u>development</u> board" means the Texas Water Development Board. A person with a legally defined interest in groundwater in a district or the regional water planning group may file a petition with the <u>development</u> board stating that a conflict requiring resolution may exist between the district's <u>approved</u> ~~certified groundwater conservation district~~ management plan developed under Section 36.1071 and the state water plan. If a conflict exists, the <u>development</u> board shall <u>provide technical assistance to and</u> facilitate coordination between the involved person or regional water planning group and the district to resolve the conflict. <u>Not later than the 45th day after the date the person or the regional water planning group files a petition with the development board, if the conflict has not been resolved, the district and the involved person or regional planning group may mediate the conflict. The district and the involved person or regional planning group may seek the assistance of the Center for Public Policy Dispute Resolution at The University of Texas School of Law or an alternative dispute resolution system established under Chapter 152, Civil</u>

USA_00223808

Practice and Remedies Code, in obtaining a qualified impartial third party to mediate the conflict. The cost of the mediation services must be specified in the agreement between the parties and the Center for Public Policy Dispute Resolution or the alternative dispute resolution system. If the district and the involved person or regional planning group cannot resolve the conflict through mediation remains, the development board shall resolve the conflict not later than the 60th day after the date the mediation is completed. The development board action under this provision may be consolidated, at the option of the board, with related action under Section 16.053(p). If the development board determines that resolution of the conflict requires a revision of the approved certified groundwater conservation district management plan, the development board shall suspend the certification of the plan and provide information to the district. The district shall prepare any revisions to the plan based on the information provided specified by the development board and shall hold, after notice, at least one public hearing at some central location within the district. The district shall consider all public and development board comments, prepare, revise, and adopt its plan, and submit the revised plan to the development board for approval certification. On the request of the district or the regional water planning group, the development board shall include discussion of the conflict and its resolution in the state water plan that the development board provides to the governor, the lieutenant governor, and the speaker of the house of representatives under Section 16.051(e). If the groundwater conservation district disagrees with the decision of the development board under this subsection, the district may appeal the decision to a district court in Travis County. Costs for the appeal shall be set by the court hearing the appeal. An appeal under this subsection is by trial de novo.

SECTION ____. Section 36.1073, Water Code, is amended to read as follows:

Sec. 36.1073. AMENDMENT TO MANAGEMENT PLAN. Any amendment to the management plan shall be submitted to the executive administrator within 60 days following adoption of the amendment by the district's board. The executive administrator shall review and approve certify any amendment which substantially affects the management plan in accordance with the procedures established under Section 36.1072.

SECTION ____. Subchapter D, Chapter 36, Water Code, is amended by amending Section 36.108 to read as follows:

Sec. 36.108. JOINT PLANNING IN MANAGEMENT AREA. (a) In this section, "development board" means the Texas Water Development Board.

(a)(b) If two or more districts are located within the boundaries of the same management area, each district shall prepare a comprehensive management plan as required by Section 36.1071 covering that district's respective territory. On completion and approval certification of the plan as required by Section 36.1072, each district shall forward a copy of the new or revised management plan to the other districts in the management area. The boards of the districts shall consider the plans individually and shall compare them to other management plans then in force in the management area.

(b)(c) ~~The board of directors of~~ The presiding officer, or their designee, of each district located in whole or in part in the management area shall meet at least annually to conduct ~~may, by resolution, call for~~ joint planning with the other districts in the management area and to review the management plans and accomplishments for the management area. In reviewing the management plans, the districts ~~boards~~ shall consider:

(1) the goals of each management plan and its impact on planning throughout the management area;

(2) the effectiveness of the measures established by each management plan for conserving and protecting groundwater and preventing waste, and the effectiveness of these measures in the management area generally; ~~and~~

(3) any other matters that the boards consider relevant to the protection and conservation of groundwater and the prevention of waste in the management area; and.

(4) the degree to which each management plan achieves the desired future conditions established during the joint planning process.

(d) Not later than five years after the effective date of this subsection and every five years thereafter, ~~During the joint planning process,~~ the districts shall consider groundwater availability models and other data or information for the management area and shall establish desired future conditions for the relevant aquifers within the management area. In establishing the desired future conditions of the aquifers under this section, the districts shall consider uses or conditions of an aquifer within the management area that differ substantially from one geographic area to another. The districts may establish different desired future conditions for:

(1) each aquifer, subdivision of an aquifer, or geologic strata located in whole or in part within the boundaries of the management area; or

(2) each geographic area overlying an aquifer in whole or in part or subdivision of an aquifer within the boundaries of the management area.

(d-1) The desired future conditions established under Subsection (d) must be adopted by two-thirds vote of the district representatives present at a meeting.

(1) at which at least two-thirds of the districts located in whole or in part in the management area have a voting representative in attendance; and

(2) for which all districts located in whole or in part in the management area provide public notice in accordance with Chapter 551, Government Code.

(d-2) Each district in the management area shall ensure that its management plan contains goals and objectives consistent with achieving the desired future conditions of the relevant aquifers as adopted during the joint planning process.

(e) ~~If a~~ A joint meeting ~~of the boards of directors is called, the meeting must be~~ under this section must be held in accordance with Chapter 551, Government Code. Each district shall comply with Chapter 552, Government Code. Notice of the meeting shall be given in accordance with the requirements for notice of district board of directors meetings under that Act.

(d)(f) A district or person with a legally defined interest in the groundwater within the management area may file [~~with good cause~~] a petition with the commission requesting an inquiry if ~~the petitioner district adopted a resolution~~

~~calling for joint planning and the other~~ a district or districts refused to join in the planning process or the process failed to result in adequate planning, including the establishment of reasonable future desired conditions of the aquifers, and the petition provides evidence that:

(1)  ~~another~~ a district in the groundwater management area has failed to adopt rules;

(2)  the rules adopted by a district are not designed to achieve the desired future condition of the groundwater resources in the groundwater management area established during the joint planning process;

(3)  the groundwater in the management area is not adequately protected by the rules adopted by ~~a~~ district; or

(4)~~(3)~~  the groundwater in the groundwater management area is not adequately protected due to the failure of a ~~another~~ district to enforce substantial compliance with its rules.

~~(e)~~(g)  Not later than the 90th day after the date the petition is filed, the commission shall review the petition and either:

(1)  dismiss the petition if the commission ~~it if it~~ finds that the evidence is not adequate to show that any of the conditions alleged in the petition exist; or

(2)  select a review panel as provided in Subsection ~~(f)~~(h).

~~(f)~~(h)  If the petition is not dismissed under Subsection ~~(e)~~(g), the commission shall appoint a review panel consisting of a chairman and four other members. A director or general manager of a district located outside the groundwater management area that is the subject of the petition may be appointed to the review panel.

The commission may not appoint more than two members of the review panel from any one district. The commission also shall appoint a disinterested person to serve as a nonvoting recording secretary for the review panel. The recording secretary may be an employee of the commission. The recording secretary shall record and document the proceedings of the panel.

~~(g)~~(i)  Not later than the 120th day after appointment, the review panel shall review the petition and any evidence relevant to the petition and, in a public meeting, consider and adopt a report to be submitted to the commission. The commission may direct the review panel to conduct public hearings at a location in the groundwater management area to take evidence on the petition. The review panel may attempt to negotiate a settlement or resolve the dispute by any lawful means.

~~(h)~~(j)  In its report, the review panel shall include:

(1)  a summary of all evidence taken in any hearing on the petition;

(2)  a list of findings and recommended actions appropriate for the commission to take and the reasons it finds those actions appropriate; and

(3)  any other information the panel considers appropriate.

~~(i)~~(k)  The review panel shall submit its report to the commission. The commission may take action under Section 36.3011.

(l)  A person with a legally defined interest in the groundwater in the groundwater management area, a district in or adjacent to the groundwater management area, or a regional water planning group for a region in the

groundwater management area may file a petition with the development board appealing the approval of the desired future conditions of the groundwater resources established under this section. The petition must provide evidence that the districts did not establish a reasonable desired future condition of the groundwater resources in the groundwater management area.

(m) The development board shall review the petition and any evidence relevant to the petition. The development board shall hold at least one hearing at a central location in the management area to take testimony on the petition. The development board may delegate responsibility for a hearing to the executive administrator or to a person designated by the executive administrator. If the development board finds that the conditions require revision, the development board shall submit a report to the districts that includes a list of findings and recommended revisions to the desired future conditions of the groundwater resources.

(n) The districts shall prepare a revised plan in accordance with development board recommendations and hold, after notice, at least one public hearing at a central location in the groundwater management area. After consideration of all public and development board comments, the districts shall revise the conditions and submit it to the development board for review.

(j)(o) The districts shall submit the conditions established under this section to the executive administrator. The executive administrator shall provide each district and regional water planning group located wholly or partly in the management area with the managed available groundwater in the management area based upon the desired future condition of the groundwater resources established under this section.

(p) Districts located within the same groundwater management areas or in adjacent management areas may contract to jointly conduct studies or research, or to construct projects, under terms and conditions that the districts consider beneficial. These joint efforts may include studies of groundwater availability and quality, aquifer modeling, and the interaction of groundwater and surface water; educational programs; the purchase and sharing of equipment; and the implementation of projects to make groundwater available, including aquifer recharge, brush control, weather modification, desalination, regionalization, and treatment or conveyance facilities. The districts may contract under their existing authorizations including those of Chapter 791, Government Code, if their contracting authority is not limited by Sections 791.011(c)(2) and (d)(3) and Section 791.014, Government Code.

SECTION ___. Section 36.109, Water Code, is amended to read as follows:

Sec. 36.109. COLLECTION OF INFORMATION. A district may collect any information the board deems necessary, including information regarding the use of groundwater, water conservation, and the practicability of recharging a groundwater reservoir. At the request of the executive administrator, the district shall provide any data collected by the district in a format acceptable to the executive administrator.

SECTION ___. Subchapter D, Chapter 36, Water Code, is amended by adding Section 36.1132 to read as follows:

Sec. 36.1132. PERMITS BASED ON MANAGED AVAILABLE GROUNDWATER. A district, to the extent possible, shall issue permits up to the point that the total volume of groundwater permitted equals the managed available groundwater, if administratively complete permit applications are submitted to the district.

SECTION ___. Section 36.3011, Water Code, is amended to read as follows:

Sec. 36.3011. FAILURE OF ~~A~~ DISTRICT TO CONDUCT JOINT PLANNING. ~~(a) If the board of a district within a common management area fails to forward a copy of its new or revised certified management plan under Section 36.108, the commission shall take appropriate action under Section 36.303.~~

~~(b)~~ Not later than the 45th day after receiving the review panel's report under Section 36.108, the executive director or the commission shall take action to implement any or all of the panel's recommendations. The commission may take any action against a district it considers necessary in accordance with Section 36.303 if ~~If~~ the commission finds that:

(1) a district ~~in the joint planning area~~ has failed to submit its plan to the executive administrator;

(2) a district has failed to adopt rules;

(3) the rules adopted by the district are not designed to achieve the desired future condition of the groundwater resources in the groundwater management area; or

(4) the groundwater in the management area is not adequately protected by the rules adopted by the district, or the groundwater in the management area is not adequately protected because of the district's failure to enforce substantial compliance with its rules~~, the commission may take any action it considers necessary in accordance with Section 36.303~~.

SECTION ___. Subsection (d), Section 36.302, Water Code, is amended to read as follows:

(d) The state auditor may perform the review under Subsection (a) following the first anniversary of the initial approval ~~certification~~ of the plan ~~by the Texas Water Development Board~~ under Section 36.1072 and at least as often as once every seven years after that date, subject to a risk assessment and to the legislative audit committee's approval of including the review in the audit plan under Section 321.013, Government Code.

SECTION ___. Subsection (a), Section 36.304, Water Code, is amended to read as follows:

(a) The commission may dissolve a district that~~:~~

~~(1) is not operational, as determined under Section 36.302; and~~

~~(2)~~ has no outstanding bonded indebtedness.

SECTION ___. Subsection (a) and (b), Section 36.116, Water Code is amended as follows:

(a) In order to minimize as far as practicable the drawdown of the water table or the reduction of artesian pressure, to control subsidence, to prevent interference between wells, to prevent degradation of water quality, or to prevent waste, a district by rule may regulate:

(1) the spacing of water wells by:

(A) requiring all water wells to be spaced a certain distance from property lines or adjoining wells;

(B) requiring wells with a certain production capacity, pump size, or other characteristic related to the construction or operation of and production from a well to be spaced a certain distance from property lines or adjoining wells; or

(C) imposing spacing requirements adopted by the board; and

(2) the production of groundwater by:

(A) setting production limits on wells;

(B) limiting the amount of water produced based on acreage or tract size;

(C) limiting the amount of water that may be produced from a defined number of acres assigned to an authorized well site;

(D) limiting the maximum amount of water that may be produced on the basis of acre-feet per acre or gallons per minute per well site per acre; ~~or~~

(E) managed depletion; or

(F) any combination of the methods listed above in Paragraphs (A) through (E) ~~(D)~~.

(b) In promulgating any rules limiting groundwater production, the district may preserve historic or existing use before the effective date of the rules to the maximum extent practicable consistent with the district's comprehensive management plan under Section 36.1071 and as provided by Section 36.113.

SECTION __. Section 9.017, Water Code, is repealed.

### HB 2678 - HOUSE REFUSES TO CONCUR
### IN SENATE AMENDMENTS
### CONFERENCE COMMITTEE APPOINTED

Representative Smithee called up with senate amendments for consideration at this time,

**HB 2678**, A bill to be entitled An Act relating to the use of certain information to underwrite professional liability insurance for physicians and health care providers.

Representative Smithee moved that the house not concur in the senate amendments and that a conference committee be requested to adjust the differences between the two houses on **HB 2678**.

The motion prevailed.

The chair announced the appointment of the following conference committee, on the part of the house, on **HB 2678**: Smithee, chair; Eiland; Seaman; Taylor; and Rose.

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 5).

### SB 334 - REQUEST OF SENATE GRANTED
### CONFERENCE COMMITTEE APPOINTED

On motion of Representative B. Keffer, the house granted the request of the senate for the appointment of a conference committee on **SB 334**.

The chair announced the appointment of the following conference committee, on the part of the house, on **SB 334**: B. Keffer, chair; Nixon; Van Arsdale; Paxton; and Rose.

### SB 368 - HOUSE APPOINTS NEW CONFEREES

The chair announced the appointment of the following conference committee, on the part of the house, on **SB 368**: Hartnett, chair; Luna; Dutton; Hughes; and Crabb.

### PROVIDING FOR RECESS

Representative Truitt moved that, at the conclusion of the reading of bills and resolutions on first reading and referral to committees, the house recess until 9 a.m. today, May 25, in memory of Steven Tucker of Colleyville who was killed in the line of duty.

The motion prevailed.

### BILLS AND JOINT RESOLUTIONS ON FIRST READING
### AND REFERRAL TO COMMITTEES

Bills and joint resolutions were at this time laid before the house, read first time, and referred to committees. (See the addendum to the daily journal, Referred to Committees, List No. 1.)

### HB 511 - STATEMENT OF LEGISLATIVE INTENT

Re: Chapter 35.43 of the Business & Commerce Code. The meaning of Section 35.43 Subsection (g) when it references compliance with B and D means that the company shall comply with the applicable subsection and is not required to comply with both subsections if only one is applicable under the language of that particular subsection.

Hochberg

(Hochberg in the chair)

### RECESS

In accordance with a previous motion, the house, at 12:26 a.m., recessed until 9 a.m. today, May 25.

---

**ADDENDUM**

---

### REFERRED TO COMMITTEES

The following bills and joint resolutions were today laid before the house, read first time, and referred to committees, and the following resolutions were today laid before the house and referred to committees. If indicated, the chair today corrected the referral of the following measures:

**List No. 1**

**SB 178** to Insurance.

**SB 1296** to Land and Resource Management.

**SB 1544** to Higher Education.

### SIGNED BY THE SPEAKER

The following bills and resolutions were today signed in the presence of the house by the speaker:

**House List No. 50**

**HB 535, HB 628, HB 719, HB 813, HB 839, HB 904, HB 960, HB 1186, HB 1271, HB 1409, HB 1428, HB 1474, HB 1558, HB 1577, HB 1863, HB 1997, HB 2420, HB 2619, HB 3525, HCR 93, HCR 131, HCR 159, HCR 202, HCR 211**

**Senate List No. 28**

**SB 48, SB 316, SB 335, SB 485, SB 679, SB 898, SB 912, SB 945, SB 1257, SB 1330, SB 1378, SB 1465, SB 1864, SB 1865, SB 1882, SB 1884**

### MESSAGES FROM THE SENATE

The following messages from the senate were today received by the house:

**Message No. 1**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Tuesday, May 24, 2005

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

USA_00223816

## LOCAL AND UNCONTESTED CALENDAR

**HB 68**　　　　　　McClendon　　　　　SPONSOR: Williams
Relating to public nuisance actions involving criminal street gangs.

**HB 126**　　　　　　Berman　　　　　　SPONSOR: Eltife
Relating to the penalty for tampering with a governmental record establishing residency for enrollment in a public school.

**HB 129**　　　　　　Berman　　　　　　SPONSOR: Eltife
Relating to the authority to require a convicted person to perform manual labor for a nonprofit organization or a cemetery maintained by the county.

**HB 160**　　　　　　McCall　　　　　　SPONSOR: Wentworth
Relating to motor vehicles equipped with recording devices.

**HB 248**　　　　　　Goodman　　　　　SPONSOR: Harris
Relating to the amendment of certain qualified domestic relations orders.

**HB 252**　　　　　　Goodman　　　　　SPONSOR: Harris
Relating to the use of parenting plans and parenting coordinators in suits affecting the parent-child relationship.

**HB 258**　　　　　　Pena　　　　　　　SPONSOR: Hinojosa
Relating to authorizing a sports recreation and wellness facility fee at The University of Texas–Pan American.

**HB 265**　　　　　　Smith, Wayne　　　　SPONSOR: Eltife
Relating to the time for processing a municipal building permit.

**HB 291**　　　　　　Goolsby　　　　　SPONSOR: Carona
Relating to victim notification regarding the release of certain defendants following acquittal by reason of insanity.

**HB 308**　　　　　　Hope　　　　　　　SPONSOR: Staples
Relating to discipline in public schools and the assignment of certain public school students involved in a sexual assault.

**HB 352**　　　　　　Goodman　　　　　SPONSOR: Brimer
Relating to the collection of municipal hotel occupancy taxes.

**HB 410**　　　　　　Goodman　　　　　SPONSOR: Harris
Relating to the property interests of spouses in connection with certain separate and community property.

**HB 422**　　　　　　Casteel　　　　　SPONSOR: Wentworth
Relating to park and recreation districts.

**HB 549**　　　　　　Phillips　　　　　SPONSOR: Seliger
Relating to prohibiting the introduction of certain items in correctional facilities.

**HB 598**　　　　　　Blake　　　　　　SPONSOR: Staples
Relating to a recreational sports fee at Stephen F. Austin State University.

**HB 629**　　　　　　Solomons　　　　　SPONSOR: Brimer
Relating to notice required for a mechanic's, contractor's, or materialman's lien in certain circumstances.

**HB 657**　　　　　　Bonnen　　　　　　SPONSOR: Averitt

USA_00223817

Relating to terminating the parent-child relationship of a parent convicted of certain crimes.

**HB 754**              Gattis              SPONSOR: Fraser
Relating to transportation of loose materials.

**HB 788**              Hardcastle          SPONSOR: Duncan
Relating to the jurisdiction of the district court and the transfer of cases from the county courts in the 50th Judicial District to the district court.

**HB 798**              Uresti              SPONSOR: Van de Putte
Relating to release of a child taken into protective custody by a law enforcement or juvenile probation officer.

**HB 840**              Riddle              SPONSOR: Williams
Relating to the forfeiture of contraband used to facilitate or intended to be used to facilitate the commission of certain criminal offenses.

**HB 841**              Kolkhorst           SPONSOR: Wentworth
Relating to the rates charged by a municipally owned utility to certain recreational vehicle parks for potable water or wastewater service.

**HB 856**              Callegari           SPONSOR: Lindsay
Relating to the general powers, authority, and directors of the West Harris County Regional Water Authority.

**HB 956**              Dunnam              SPONSOR: Ogden
Relating to the composition of the juvenile board of Leon County.

**HB 989**              Chisum              SPONSOR: Seliger
Relating to recovery of certain transmission investments of electric utilities.

**HB 993**              Gonzales            SPONSOR: Hinojosa
Relating to the installment payment of tuition and fees charged by a public junior college, public technical institute, or public state college for a summer term.

**HB 1059**             Naishtat            SPONSOR: Wentworth
Relating to the enforcement of certain protective orders.

**HB 1179**             Dutton              SPONSOR: Harris
Relating to the authority of an associate judge in certain family law cases.

**HB 1213**             Harper-Brown        SPONSOR: Deuell
Relating to fitness incentive pay for certain fire fighters and police officers.

**HB 1224**             Puente              SPONSOR: Duncan
Relating to a study of the effects of take-or-pay contracts on water conservation.

**HB 1235**             Paxton              SPONSOR: Harris
Relating to the notice required for a sale of real property under a contract lien.

**HB 1267**             Cook, Robby         SPONSOR: Armbrister
Relating to changing the name of the Texas Industrial Fire Training Board to the Texas Industrial Emergency Services Board.

**HB 1283**             Truitt              SPONSOR: Carona
Relating to the continuation and functions of the Texas State Board of Examiners of Professional Counselors; providing an administrative penalty.

USA_00223818

**HB 1394**  Zedler  SPONSOR: Brimer
Relating to the appointment of magistrates to serve the municipal court of record in Kennedale.

**HB 1458**  Bailey  SPONSOR: Gallegos
Relating to the creation of the Airline Improvement District; providing authority to impose a tax and issue a bond or similar obligation.

**HB 1567**  Ritter  SPONSOR: Williams
Relating to the transition to competition of certain electric utilities outside of ERCOT.

**HB 1586**  West, George "Buddy"  SPONSOR: Seliger
Relating to the transaction of business by the Court of Appeals for the Eleventh Court of Appeals District.

**HB 1588**  Driver  SPONSOR: Williams
Relating to the qualifications and removal of and continuing education requirements for a constable.

**HB 1606**  Thompson  SPONSOR: Ellis
Relating to the level of municipal participation in contracts with developers for public improvements.

**HB 1622**  Pitts  SPONSOR: Averitt
Relating to the creation of a county court at law in Hill County.

**HB 1642**  Hartnett  SPONSOR: Harris
Relating to the appointment of interpreters for judicial proceedings.

**HB 1645**  Hughes  SPONSOR: Deuell
Relating to the designation of United States Highway 80 in this state as the World War II Veterans Memorial Highway.

**HB 1685**  Dukes  SPONSOR: Ellis
Relating to the establishment of an interagency coordinating council for the prevention of child abuse and neglect.

**HB 1697**  McCall  SPONSOR: West, Royce
Relating to the use of gifts to fund technology workforce development grants and to the evaluation of the technology workforce development grant program.

**HB 1813**  Pickett  SPONSOR: Madla
Relating to historical reenactments on premises permitted or licensed under the Alcoholic Beverage Code.

**HB 2017**  Swinford  SPONSOR: Harris
Relating to a nonsubstantive revision of statutes relating to the Texas Department of Insurance, the business of insurance, and certain related businesses, including conforming amendments, repeals, and penalties.

**HB 2018**  Swinford  SPONSOR: West, Royce
Relating to nonsubstantive additions to and corrections in enacted codes, to the nonsubstantive codification or disposition of various laws omitted from enacted codes, and to conforming codifications enacted by the 78th Legislature to other Acts of that legislature.

**HB 2019**  Swinford  SPONSOR: Harris

USA_00223819

Relating to the nonsubstantive revision of certain local laws concerning special districts, including conforming amendments.

**HB 2108**                  Berman                   SPONSOR: Eltife
Relating to a student union fee at The University of Texas at Tyler.

**HB 2172**                  West, George "Buddy"     SPONSOR: Seliger
Relating to eligibility for a license or registration for an exemption to engage in liquefied petroleum gas-related activities and to disciplinary action against licensees and registrants.

**HB 2200**                  Thompson                 SPONSOR: Carona
Relating to the appointment of certified court interpreters.

**HB 2243**                  Jackson, Jim             SPONSOR: Carona
Relating to the regulation of locksmiths and locksmith companies under the Private Security Act.

**HB 2272**                  Farabee                  SPONSOR: Estes
Relating to a student recreational and health facilities fee at Midwestern State University.

**HB 2275**                  Cook, Byron              SPONSOR: Ellis
Relating to the forfeiture of certain contraband used in the commission of certain felony intoxication offenses.

**HB 2466**                  Swinford                 SPONSOR: Ellis
Relating to recycling market development.

**HB 2518**                  Coleman                  SPONSOR: Duncan
Relating to a mental health court program.

**HB 2746**                  Deshotel                 SPONSOR: Janek
Relating to the examination requirements for mold assessors and remediators.

**HB 2885**                  Giddings                 SPONSOR: Carona
Relating to an arrest warrant or complaint for the issuance of a bad check.

**HB 2900**                  Hilderbran               SPONSOR: Van de Putte
Relating to the eligibility of certain persons for burial in the state cemetery.

**HB 3010**                  Grusendorf               SPONSOR: Harris
Relating to the transfer of a failure to attend school proceeding to juvenile court.

**HB 3113**                  Corte                    SPONSOR: Seliger
Relating to performance incentive awards for certain employees of state agencies who provide services to veterans.

**HB 3163**                  Noriega, Melissa         SPONSOR: Shapleigh
Relating to the membership of the Texas Military Preparedness Commission.

**HB 3199**                  Hope                     SPONSOR: Staples
Relating to the terms of court of the 410th District Court.

**HB 3263**                  Hegar                    SPONSOR: Janek
Relating to the powers and duties of the district attorney and county attorney in Fort Bend County.

**HB 3481**                  Hope                     SPONSOR: Staples

Relating to the appointment of magistrates in the district courts and statutory county courts in Montgomery County.

**SB 178**                              Brimer

Relating to regulation of sharing of certain profits and fees by premium finance companies and certain related persons or entities.

**SB 1296**                             Deuell

Relating to development regulations for certain unincorporated areas associated with the watersheds of Cedar Creek Lake, the Trinity River, and the East Fork of the Trinity River; providing a penalty.

**SB 1544**                             West, Royce

Relating to the purchasing and contracting practices of public junior college districts; providing criminal penalties.

Respectfully,
Patsy Spaw
Secretary of the Senate

**Message No. 2**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Tuesday, May 24, 2005 - 2

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**HB 412**                  Turner                  SPONSOR: Van de Putte

Relating to the use of credit scoring and credit history by certain telecommunications and electric service providers.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 789**                  King, Phil               SPONSOR: Fraser

Relating to furthering competition in the telecommunications industry.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 916**                  Woolley                  SPONSOR: Nelson

Relating to creating the Texas Health Care Policy Council.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 1107**                 Chavez                   SPONSOR: Shapleigh

Relating to procedures for obtaining relief from local matching funds requirements for highway projects.

**HB 1516**                 Isett                    SPONSOR: Duncan

Relating to the Department of Information Resources' management of state electronic services.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 1892**          Eiland          SPONSOR: Barrientos
Relating to excluding certain challenge courses from regulation as amusement rides.

**HB 2868**          Frost          SPONSOR: Hinojosa
Relating to civil liability for provision of alcohol to a minor.

**HB 3098**          Laubenberg          SPONSOR: Deuell
Relating to the composition of the Rockwall County Juvenile Board.

**HB 3526**          Hochberg          SPONSOR: Ellis
Relating to the creation of the Greater Sharpstown Management District; providing authority to impose a tax and issue a bond or similar obligation.
(COMMITTEE SUBSTITUTE)

**HB 3527**          Haggerty          SPONSOR: Shapleigh
Relating to the ability of certain water supply or sewer service corporations to dissolve and transfer assets to a municipality.

**HB 3534**          Denny          SPONSOR: Nelson
Relating to the creation of the Denton County Municipal Utility District No. 6; providing authority to impose a tax and issue bonds; granting the power of eminent domain.

**HB 3546**          Otto          SPONSOR: Williams
Relating to the creation of the East Montgomery County Municipal Utility Districts Nos. 5, 6, and 7; providing authority to impose a tax and issue bonds; granting the power of eminent domain.

**HB 3569**          Guillen          SPONSOR: Zaffirini
Relating to the creation, administration, powers, duties, operation, and financing of the Zapata County Municipal Utility District No. 2.

**HB 3574**          Giddings          SPONSOR: Deuell
Relating to the creation of the Dallas County Municipal Utility District No. 3; providing authority to impose a tax and issue bonds; granting the power of eminent domain.

**HB 3582**          Brown, Betty          SPONSOR: Deuell
Relating to the Kingsborough Municipal Utility District Nos. 1, 2, 3, 4, and 5 of Kaufman County.

**HCR 195**          Pena          SPONSOR: Hinojosa
Honoring the life of Jeramie Espinoza.

Respectfully,
Patsy Spaw
Secretary of the Senate

**Message No. 3**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Tuesday, May 24, 2005 - 3

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**HB 209**               Goodman               SPONSOR: Averitt
Relating to challenging an acknowledgment of paternity executed by a minor.

**HB 551**               Phillips               SPONSOR: Estes
Relating to a project of a development corporation in connection with a primary job.

**HB 646**               Otto               SPONSOR: Seliger
Relating to the provision of certain reports and records requested by the attorney general.
(COMMITTEE SUBSTITUTE)

**HB 664**               Isett               SPONSOR: Duncan
Relating to consideration of a bidder's principal place of business in awarding certain municipal and school district contracts.
(COMMITTEE SUBSTITUTE)

**HB 843**               Truitt               SPONSOR: Nelson
Relating to relating to the authority of certain counties to regulate certain communication facility structures in certain circumstances; providing a penalty.
(COMMITTEE SUBSTITUTE)

**HB 867**               Allen, Ray               SPONSOR: Shapiro
Relating to the registration and supervision of sex offenders; providing penalties.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 988**               Chisum               SPONSOR: Lucio
Relating to the county in which a seller of a motor vehicle may file an application for registration and certificate of title.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 1068**               Driver               SPONSOR: Hinojosa
Relating to the collection and analysis of evidence and testimony based on forensic analysis, crime laboratory accreditation, DNA testing, and the creation and maintenance of DNA records; providing a penalty.
(AMENDED)

**HB 1116**               Solomons               SPONSOR: Nelson
Relating to the governmental entities subject to the sunset review process.

USA_00223823

(COMMITTEE SUBSTITUTE/AMENDED)

**HB 1137**            Smith, Wayne            SPONSOR: Seliger
Relating to the authority of the Department of Public Safety to enter into agreements with foreign countries for issuance of driver's licenses.

**HB 1172**            Brown, Fred            SPONSOR: Zaffirini
Relating to policies and measures to promote timely graduation of students from public institutions of higher education.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 1379**            Jones, Jesse            SPONSOR: Deuell
Relating to the admissibility in a civil action of certain information relating to identify theft.
(AMENDED)

**HB 1481**            Gattis            SPONSOR: Wentworth
Relating to the offense of disobeying certain motor vehicle traffic warning devices.

**HB 1485**            Thompson            SPONSOR: Ellis
Relating to health benefit plan coverage for screening tests for human papillomavirus and cervical cancer.

**HB 1701**            Keel            SPONSOR: Williams
Relating to the defense of indigent persons accused of a criminal offense.
(COMMITTEE SUBSTITUTE)

**HB 1765**            Morrison            SPONSOR: Shapiro
Relating to the creation of programs and funding for emerging technology industries.
(AMENDED)

**HB 1791**            Naishtat            SPONSOR: Barrientos
Relating to application of the hazing statutes to private institutions of higher education; providing penalties.

**HB 1823**            Dutton            SPONSOR: Lucio
Relating to the rights of a purchaser under an executory contract for conveyance of real property.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 2110**            Berman            SPONSOR: Eltife
Relating to the applicability of certain weapon laws to certain judges and prosecutors.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 2193**            Madden            SPONSOR: Whitmire
Relating to the operation of a system of community supervision.

**HB 2217**            McCall            SPONSOR: Staples
Relating to the management of public school land and the permanent school fund.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 2701**            Crownover            SPONSOR: Janek
Relating to higher education authorities.

**HB 2753**            Pitts            SPONSOR: Ogden

Relating to the powers, duties, and functions of the Legislative Budget Board.
(COMMITTEE SUBSTITUTE)

**HB 2806** Morrison SPONSOR: West, Royce
Relating to the regulation of career schools and colleges.
(AMENDED)

**HB 2932** Delisi SPONSOR: Zaffirini
Relating to requiring state agency purchasing personnel to disclose certain family relationships with business entities receiving certain state agency contracts.

**HB 2958** Hamric SPONSOR: Lindsay
Relating to the creation of freight rail districts; granting authority to issue bonds or other similar obligations to create public debt; granting the power of eminent domain.
(COMMITTEE SUBSTITUTE/AMENDED)

**HB 3016** Hill SPONSOR: Staples
Relating to the determination of the market value of certain drug supplies for ad valorem property tax purposes.
(AMENDED)

**HB 3539** Hupp SPONSOR: Fraser
Relating to the composition of the board of directors of the Saratoga Underground Water Conservation District.
(AMENDED)

THE SENATE HAS CONCURRED IN HOUSE AMENDMENTS TO THE FOLLOWING MEASURES:

**SB 261** (31 Yeas, 0 Nays)

**SB 736** (31 Yeas, 0 Nays)

**SB 833** (31 Yeas, 0 Nays)

**SB 863** (31 Yeas, 0 Nays)

**SB 1214** (31 Yeas, 0 Nays)

**SB 1792** (31 Yeas, 0 Nays)

**SB 1800** (31 Yeas, 0 Nays)

**SB 1801** (31 Yeas, 0 Nays)

**SB 1802** (31 Yeas, 0 Nays)

**SB 1803** (31 Yeas, 0 Nays)

**SB 1804** (31 Yeas, 0 Nays)

**SB 1805** (31 Yeas, 0 Nays)

**SB 1808** (31 Yeas, 0 Nays)

**SB 1810** (31 Yeas, 0 Nays)

**SB 1855** (31 Yeas, 0 Nays)

Respectfully,
Patsy Spaw

Secretary of the Senate

**Message No. 4**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Tuesday, May 24, 2005 - 4

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**HB 240**               Goolsby                    SPONSOR: Lucio
Relating to the right of an adopted person to have access to the person's original birth certificate.

**HB 345**               Solomons                   SPONSOR: Seliger
Relating to the disclosure of certain information provided on a voter registration application.

**HB 1053**              Hope                       SPONSOR: Staples
Relating to the location of certain municipal solid waste landfills.
(AMENDED)

**HB 1601**              Madden                     SPONSOR: Averitt
Relating to the use of interpreter services in a criminal case.
(AMENDED)

**HB 1611**              Chisum                     SPONSOR: Armbrister
Relating to the use of money for the low-income vehicle repair assistance, retrofit, and accelerated vehicle retirement program; making an appropriation.
(AMENDED)

**HB 1634**              Allen, Ray                 SPONSOR: Gallegos
Relating to arson and arson investigation; creating offenses.
(AMENDED)

**HB 1772**              Miller                     SPONSOR: Fraser
Relating to permitting a general-law municipality to annex land in certain circumstances.
(AMENDED)

**HB 2218**              McCall                     SPONSOR: Brimer
Relating to the regulation of money services businesses; providing a penalty.
(COMMITTEE SUBSTITUTE)

**HB 2579**              Rodriguez                  SPONSOR: Zaffirini
Relating to procedures to ensure the involvement of parents or guardians of children placed in certain institutions.

(COMMITTEE SUBSTITUTE)

**HB 3111**            Corte                  SPONSOR: Janek
Relating to authorizing the presiding officer of a political subdivision to order an evacuation in certain emergency circumstances.

**HB 3434**            Hartnett               SPONSOR: Wentworth
Relating to testamentary and nontestamentary transfers of property and other benefits and the administration of those benefits.
(COMMITTEE SUBSTITUTE/AMENDED)

**HJR 80**             Krusee                 SPONSOR: Ogden
Proposing a constitutional amendment clarifying that certain economic development programs do not constitute a debt.
(AMENDED)

Respectfully,
Patsy Spaw
Secretary of the Senate

**Message No. 5**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Wednesday, May 25, 2005-1

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**HB 2129**            Bonnen                 SPONSOR: Armbrister
Relating to energy-saving measures that reduce the emission of air contaminants.
(AMENDED)

**HB 2421**            Chavez                 SPONSOR: Zaffirini
Relating to the use of an employer assessment to fund the skills development program and authorizing the Texas Workforce Commission to develop new job incentive programs.
(AMENDED)

**HB 3540**            Pitts                  SPONSOR: Ogden
Relating to certain fiscal matters affecting governmental entities; providing penalties.
(COMMITTEE SUBSTITUTE/AMENDED)

Respectfully,
Patsy Spaw
Secretary of the Senate

USA_00223827

---

## APPENDIX

---

### STANDING COMMITTEE REPORTS

Favorable reports have been filed by committees as follows:

**May 23**

Pensions and Investments - **SB 751**, **SB 1319**

### ENROLLED

**May  23  -  HB 812,  HB 1141,  HB 1186,  HB 1262,  HB 1382,  HB 1428, HB 1587,  HB 1901,  HB 2025,  HB 2037,  HB 2079,  HB 2174,  HB 2322, HB 2336,  HB 2374,  HB 2410,  HB 2420,  HB 2451,  HB 2685,  HB 3486, HB 3517, HCR 93, HCR 131, HCR 159, HCR 202, HCR 211, HJR 6**

USA_00223828