Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

**Amendment No. 16**

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 9 of the bill, in added Section 63.001(h), Election Code (page 6, line 20), strike "or".

(2) In SECTION 9 of the bill, in added Section 63.001(h), Election Code (page 6, line 23), between "15.001(c)" and the underscored period, insert the following:

"; or

    (3) presents a paycheck or copy of another official employment document that includes the information of the voter's employer and informs the election officer that:

        (A) the voter's employer does not permit the voter to be absent from work for the purpose of obtaining photo identification; and

        (B) offices of the Department of Public Safety are not open for at least two consecutive hours outside of the voter's working hours

**AMENDMENT NO. 16 - STATEMENT OF LEGISLATIVE INTENT**

REPRESENTATIVE V. TAYLOR:   Mr. Speaker and members, I rise in opposition to this amendment.  This deals with people who already have jobs, and in order to have a job in this country, an individual must fill out an I-9 form. An I-9 form requires identification, so I'm not really sure where this is coming from because these people already had ID to get a job in the first place.  I move to table this amendment.

REPRESENTATIVE RAYMOND:   Repeat that, Mr. Taylor, because I didn't quite hear you, I apologize.

V. TAYLOR:  Sure.  For an individual, for a U.S. citizen—and there are, only U.S. citizens should be registered to vote in this state—to have a job, they must fill out an I-9 form for their employer.  To fill out an I-9 form, they have to have some form of identification.

RAYMOND: Okay, so is there a scenario that you can envision, Mr. Taylor, where somebody went to work for you, let's say, 10 years ago, right, and they had to fill out the proper forms and show you the proper ID, etcetera, right? Ten years ago. Can you imagine that there would be an instance in this state of 25 million people where registered and eligible voters might, for some reason, 10 years later, might not have the ID required by this bill. Could you imagine that scenario?

V. TAYLOR: Yes.

RAYMOND: Okay, so, you can imagine what I'm trying to get to here which is, you're exactly right. If they work for Van Taylor, and they show up at the polling place, and they have a voter registration card, and they have something from Van Taylor, Inc. saying, you know, I did not provide them time to go get a new ID as required by this bill.

V. TAYLOR: There was a question there somewhere, I'm sure.

RAYMOND: Yes, I just said, you can imagine, then, if somebody worked for you, you hired them legally 10 years ago, some point since then they lost the ID, if this bill passes, this bill becomes law, they lost their ID, but Van Taylor, Inc. didn't give them time during the day to go get the ID that they needed. You could also imagine, in a state of 25 million people, that there could be instances like that.

V. TAYLOR: Well, in the example you just gave, there are opportunities for someone to get, you know, to get their driver's license either online, as many of us have done, or by mail.

RAYMOND: I'm not sure you can go get your, the—what you're asking for in this bill—that you could get it online.

V. TAYLOR: The original form of identification, which is what you would have to have for the I-9 form, since we're only talking about employed people who are U.S. citizens, you can—you have to show up in person to get your first driver's license, to get photo ID, to take your picture somehow, of course. Subsequently, after we've gotten your picture, you can renew up to a number of times online or by mail.

RAYMOND: So if you've had your driver's license for six years—stop the clock, please.

V. TAYLOR: There's extensive training for poll workers and election judges on how to handle it when somebody doesn't have identification. We already have—we have a provisional ballot system, but the supposition that you're making, that people may show up to the polls without ID—which could happen, and this bill envisions that and gives the voter the opportunity to take care of that, but your original premise that people who are employed in this state don't have photo ID doesn't hold up when you look at the federal requirement for the I-9 form.

RAYMOND:  Well, it does, as you acknowledged a minute ago, that if somebody went to work for you 10 years ago, and you hired them legally, that 10 years later they might not have the ID that they had 10 years ago, they might have lost it. Would you—you acknowledged that earlier, would you acknowledge that now?

V. TAYLOR:  I do.

RAYMOND:  Finally, let me ask this, Mr. Taylor, you know what those of us who are opposed to this legislation are trying to do, we're trying to protect voter rights.  You recognize that, right?

V. TAYLOR:  Absolutely, as are the proponents of this bill.  We seek to protect voting rights by protecting the 15th Amendment by making sure every vote counts.  That's what this bill is ultimately about and we seek to do in our support of voter ID.

RAYMOND:  Let me ask you a question, do you believe the Voting Rights Act is a good law?

V. TAYLOR:  I believe the Voting Rights Act is a great thing to protect Americans' right to vote.  All Americans, regardless of—

RAYMOND:  So you believe the Voting Rights Act is still necessary?

V. TAYLOR:  Yes.

RAYMOND:  Is that because you believe discrimination still exists?

V. TAYLOR:  I think the Voting Rights Act—there are many aspects of it to protect our ability to vote, protect the 15th Amendment—

RAYMOND:  Protecting discrimination in the voting place though, if you believe it's a good law, if you believe discrimination in the voting place still exists?

V. TAYLOR:  I'm not sure where you're going with this, chairman.

RAYMOND:  No, no, I'm not going anywhere, it's very simple, this is about protecting voting rights and I asked you if you believed the Voting Rights Act was a good law and you said yes, right?

V. TAYLOR:  This bill that we're debating right here on the floor is about voter identification at the polling stations when people vote in the State of Texas.

RAYMOND:  And any time you deal with a law that has to do with voting, you have to take into consideration the rights of people to vote.  Any time you deal with a law as comprehensive and big as this—as comprehensive and big as this—you have to take into account people's voting rights.  You would agree with that, right?

V. TAYLOR:  I think that it is important to remember that this bill is about making sure that the right people show up on election day and vote—

RAYMOND:  That the right people show up on election day?  Who are the right people?

V. TAYLOR:  The people who are registered to vote and can demonstrate that they are who they say they are through voter—through having proper voter identification.

RAYMOND:   Again, and I'll let you go after this, but I just want to establish—you and I have served on committee together, it's been great getting to know you.  You acknowledge that we still need the Voting Rights Act because the Voting Rights Act prevents discrimination in the polling place, and if you still think we need it, presumably, you believe there's still problems.

V. TAYLOR: Mr. Chairman, as you well know, this type of legislation, this voter identification has been approved under the Voter Rights Act in other states.  I mean, this has already been litigated by other states.  But the point of your amendment, coming back to what I think you wanted to talk about here today, which is the ability of people who have jobs who somehow might not have identification—those people, in this country, who have jobs, have to fill out an I-9 form, and that requires identification.

RAYMOND:  And along those lines, according to the workforce commission, it says, in order to get an I-9 you have to have a voter registration card and a social security account number to get an I-9, which means those are the two things you need to get a photo ID.

V. TAYLOR:   That is—those are two possible accommodations for List A, excuse me, List B or List C.

RAYMOND: That's what you need, so to get an I-9 you need a voter registration card, a social security card, so would you agree, then, that if somebody has a voter registration card, a social security card, they ought to be able to vote, too?  If they're registered to vote, obviously.

V. TAYLOR: Clearly.

RAYMOND:  You do?  Then I can offer that amendment.  You want to tell Ms. Harless back there—

V. TAYLOR:  No.  I still think—look, we—it is important that we have a voter registration—a voter identification requirement in this state to make sure that when people show up to vote, they are who they say they are.  And—

RAYMOND:  Do you think that this will—do you think it is sufficient, as it is under law, that in order to get an I-9 card, which you hang this whole thing on, that all you need is a voter registration card and a social security number?  Do you think that's sufficient to get an I-9 card?  That's what the law is, do you agree with the law or do you disagree with it?

V. TAYLOR: Mr. Chairman, this is a narrowly defined bill that is designed to make sure that the people who show up to vote are, in fact, who they say they are. The fact is, it is too simple to steal a voter identification card and use that for in-person ballot fraud, I have witnessed it with my own eyes—we talked about this on Monday—in Representative Anchia's district, and I watched somebody walk in and say somebody took my voter registration card, I'm here to vote, and they had been denied the right to vote.

## REMARKS ORDERED PRINTED

Representative Raymond moved to print remarks between Representative V. Taylor and Representative Raymond.

The motion prevailed.

Representative V. Taylor moved to table Amendment No. 16.

The motion to table prevailed by (Record 114): 101 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

## Amendment No. 17

Representative Dukes offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 9, line 21), strike "photo".

(2) In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(3) In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 17), following "presentation", insert:
; or
        (6)  a temporary driving permit issued to the person by the Department of Public Safety

(L. Taylor in the chair)

Representative Harless moved to table Amendment No. 17.

The motion to table prevailed by (Record 115): 99 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

**Amendment No. 18**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 14 of the bill, in amended Section 63.0101(1), Election Code (page 9, line 22), strike "personal identification card" and substitute "personal identification voter certificate [~~card~~]".

(2) In SECTION 20 of the bill, in the recital (page 13, line 19), strike "Subsection (d)" and substitute "Subsections (d) and (e)".

(3) In SECTION 20 of the bill, following added Section 521.422(d), Transportation Code (page 14, between lines 10 and 11), insert the following:

(e) The department shall designate a personal identification certificate issued to a person under this section a personal identification voter certificate.

(4) Add the following appropriately numbered SECTION to the bill and renumber the remaining SECTIONS of the bill accordingly:

SECTION ____. Section 1.005, Election Code, is amended by adding Subdivision (25) to read as follows:

(25) "Personal identification card" means a personal identification voter certificate issued by the Department of Public Safety.

Representative Harless moved to table Amendment No. 18.

The motion to table prevailed by (Record 116): 96 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Beck; Harper-Brown; Hughes.

### STATEMENTS OF VOTE

When Record No. 116 was taken, my vote failed to register. I would have voted yes.

Beck

When Record No. 116 was taken, I was in the house but away from my desk. I would have voted yes.

Harper-Brown

**Amendment No. 19**

Representative Allen offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 14 of the bill, by striking amended Section 63.0101(1), Election Code (page 9, lines 22-27), and substituting the following:

(1) a driver's license or personal identification card issued to the person by the Department of Public Safety [or a similar document issued to the person by an agency of another state], regardless of whether the license or card has expired;

Amendment No. 19 failed of adoption by (Record 117): 56 Yeas, 89 Nays, 2 Present, not voting.

TX_00002958

Yeas — Allen; Alonzo; Alvarado; Anchia; Beck; Bohac; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Harless; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Paxton; Pickett; Quintanilla; Raymond; Reynolds; Riddle; Rodriguez; Simpson; Strama; Turner; Veasey; Villarreal; Vo; Walle; White.

Nays — Aliseda; Anderson, C.; Anderson, R.; Aycock; Berman; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Hamilton; Hancock; Hardcastle; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Murphy; Nash; Orr; Otto; Parker; Patrick; Peña; Perry; Phillips; Pitts; Price; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Thompson; Torres; Truitt; Weber; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Gooden; King, P.; Morrison.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 117. I intended to vote no.

Bohac

When Record No. 117 was taken, my vote failed to register. I would have voted no.

Gooden

I was shown voting yes on Record No. 117. I intended to vote no.

Paxton

**Amendment No. 20**

Representative Alonzo offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 14 of the bill as follows:

(1) In amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2) In amended Section 63.0101, Election Code (page 10, line 17), following "presentation", insert:

; or

(6) an identification card that contains the person's photograph and is issued or approved by this state

Amendment No. 20 was adopted.

**Amendment No. 21**

Representative Veasey offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1) In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2) In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:

; or

(6) a valid employee identification card that contains the person's photograph and is issued by an employer of the person in the ordinary course of the employer's business

Representative Harless moved to table Amendment No. 21.

The motion to table prevailed by (Record 118): 101 Yeas, 47 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

### STATEMENT OF VOTE

I was shown voting yes on Record No. 118. I intended to vote no.

Gutierrez

**Amendment No. 22**

Representative Gonzalez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:

; or

(6)  a valid identification card that contains the person's photograph and is issued by a tribal organization

Amendment No. 22 was withdrawn.

**Amendment No. 23**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:

; or

(6)  a student identification card issued by a public or private high school or institution of higher education that contains the person's photograph

Representative Phillips moved to table Amendment No. 23.

The motion to table prevailed by (Record 119): 99 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

## Amendment No. 24

Representative Martinez Fischer offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  In amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2)  In amended Section 63.0101, Election Code (page 10, line 17), following "presentation", insert:

; or

(6)  a valid identification card that contains the person's photograph and is issued by this state

Representative Phillips moved to table Amendment No. 24.

The motion to table prevailed by (Record 120): 97 Yeas, 50 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Simpson; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Morrison.

## Amendment No. 25

Representative Hernandez Luna offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 14 of the bill as follows:

(1)  In amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2) In amended Section 63.0101, Election Code (page 10, line 17), following "presentation" insert:
; or

(6)  a valid identification card that contains the person's photograph and is issued by:

(A)  an agency or institution of the federal government; or

(B)  an agency, institution, or political subdivision of this state

Representative Phillips moved to table Amendment No. 25.

The motion to table prevailed by (Record 121): 99 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

**Amendment No. 26**

Representative V. Gonzales offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1) In the recital to SECTION 15 of the bill (page 10, line 26), strike "Subsection (b-1)" and subsitute "Subsections (b-1) and (f)".

(2) In SECTION 15 of the bill, add the following after added Section 63.011(b-1), Election Code (page 11, between lines 18 and 19):

(f)  In addition to the affidavit required by this section, a person who casts a provisional ballot under this section and is described by Section 65.054(b)(2)(B) may execute an affidavit under that section at the polling place.  Forms for affidavits under Section 65.054(b)(2)(B) must be available at each polling place.

(3)  In SECTION 18 of the bill, in added Section 65.0541(a)(2), Election Code (page 13, line 4), between "presence of" and "the voter registrar", insert "an election officer at the polling place or".

### AMENDMENT NO. 26 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE HARLESS:  I wanted to clarify what our conversation was—you talked about having these affidavits at the polling place that they have to sign if they are casting a provisional ballot.  You're not in any way trying to cut out the photo ID requirements, are you?

REPRESENTATIVE V. GONZALES:  Not with this particular amendment.  This amendment would simply say, your bill already includes the requirement that an affidavit be signed if they have to fill out a provisional ballot.  All this would say is, let's make it available to them at the polling places, so that they don't have to be traveling to another location to fill out an affidavit.

HARLESS:  Right, so they show up at a polling place, and they don't have one of the subscribed forms of identification, and they fill out a provisional ballot and have to sign an affidavit.  You're saying that when they're at that polling place, if they want to cast the provisional ballot that requires affidavits signed, that that polling place should have those affidavits there on the location site.

V. GONZALES:  That's correct.

### REMARKS ORDERED PRINTED

Representative Harless moved to print remarks between Representative V. Gonzales and Representative Harless.

The motion prevailed.

Amendment No. 26 was adopted.

**Amendment No. 27**

Representative Miles offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 5 of the bill, in added Section 31.012(b), Election Code (page 3, line 21), by adding after the period: "The statewide effort shall include education targeted at low-income and minority voters."

Amendment No. 27 was adopted.

**Amendment No. 28**

Representatives Harper-Brown, Legler, Zerwas, Creighton, Orr, D. Miller, Sheffield, Jackson, Scott, Price, L. Taylor, P. King, Landtroop, Burkett, Weber, Isaac, Laubenberg, Huberty, Riddle, V. Taylor, Cain, Nash, Darby, Parker, Carter, C. Anderson, Crownover, Chisum, Madden, Hancock, Beck, W. Smith, Fletcher, Lewis, Margo, Workman, Button, R. Anderson, L. Gonzales, Sheets, Larson, White, and Kuempel offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  Strike SECTION 17 of the bill (page 11, line 24, through page 12, line 20) and substitute the following:

SECTION 17.  Section 65.054(b), Election Code, is amended to read as follows:

(b)  A provisional ballot shall [may] be accepted [only] if the board determines that:

(1)  [,] from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election; and

(2)  the person meets the identification requirements of Section 63.001(b) at the time the ballot was cast or in the period prescribed under Section 65.0541.

(2)  In SECTION 18 of the bill, strike added Section 65.0541(a), Election Code (page 12, line 24, through page 13, line 4) and substitute the following:

(a)  A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election, present a form of identification described by Section 63.0101 to the voter registrar for examination.

Amendment No. 28 was adopted by (Record 122): 107 Yeas, 40 Nays, 2 Present, not voting.

Yeas — Aliseda; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gonzales, V.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Marquez; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, V.; Torres; Truitt; Vo; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Burnam; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Thompson; Turner; Veasey; Villarreal; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Giddings.

## STATEMENTS OF VOTE

I was shown voting yes on Record No. 122. I intended to vote no.

Anchia

I was shown voting yes on Record No. 122. I intended to vote no.

V. Gonzales

I was shown voting yes on Record No. 122. I intended to vote no.

Marquez

I was shown voting yes on Record No. 122. I intended to vote no.

Rodriguez

**Amendment No. 29**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 18 of the bill, in added Section 65.0541(a), Election Code (page 12, line 27), strike "sixth" and substitute "seventh business".

(2) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION _____. Section 65.051(a), Election Code, is amended to read as follows:

(a) The early voting ballot board shall verify and count provisional ballots as provided by this subchapter not later than the ninth [seventh] day after the date of an election.

SECTION _____. Section 67.003, Election Code, is amended to read as follows:

Sec. 67.003. TIME FOR LOCAL CANVASS. (a) Except as provided by Subsection (b), each local canvassing authority shall convene to conduct the local canvass at the time set by the canvassing authority's presiding officer not earlier than the 10th [eighth] day or later than the 11th day after election day.

(b) For an election held on the uniform election date in May, the local canvass must occur not later than the 11th day after election day and not earlier than the later of:

(1) the third day after election day;

(2) the date on which the early voting ballot board has verified and counted all provisional ballots after giving voters of provisional ballots the opportunity to present identification as provided by Section 65.0541, if a provisional ballot has been cast in the election; or

(3) the date on which all timely received ballots cast from addresses outside of the United States are counted, if a ballot to be voted by mail in the election was provided to a person outside of the United States.

Amendment No. 29 was withdrawn.

**Amendment No. 30**

Representative Gonzalez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(2)  In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:

; or

(6)  a valid identification card that contains the person's photograph and is issued by a tribal organization

Amendment No. 30 was adopted.

**Amendment No. 31**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 20 of the bill, in amended Section 521.422(a), Transportation Code, by striking Subdivision (1) of that subsection (page 13, line 23), and substituting:

(1)  $10 [$15] for a person under 60 years of age;

Representative Harless moved to table Amendment No. 31.

The motion to table prevailed by (Record 123): 99 Yeas, 47 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — McClendon; Reynolds.

# STATEMENTS OF VOTE

When Record No. 123 was taken, I was in the house but away from my desk. I would have voted no.

McClendon

When Record No. 123 was taken, I was in the house but away from my desk. I would have voted no.

Reynolds

## Amendment No. 32

Representative Dukes offered the following amendment to **CSSB 14**:

Amend **CSSB 14** on page 13, line 27, by striking "may" and substituting "shall".

Amendment No. 32 was adopted.

## Amendment No. 33

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking SECTION 20 of the bill (page 13, line 18, through page 14, line 10) and substituting the following:

SECTION 20.  Section 521.422, Transportation Code, is amended to read as follows:

Sec. 521.422.  PERSONAL IDENTIFICATION CERTIFICATE FEE. [(a)] The department may not collect a fee for a personal identification certificate [is:

[(1) $15 for a person under 60 years of age;

[(2) $5 for a person 60 years of age or older; and

[(3) $20 for a person subject to the registration requirements under Chapter 62, Code of Criminal Procedure].

[(b) The department shall collect an additional fee of $1 for the issuance or renewal of a personal identification card to fund the Blindness Education, Screening, and Treatment Program established under Section 91.027, Human Resources Code, if the person applying for or renewing a personal identification card opts to pay the additional fee.

[(c) The department shall collect an additional fee of $1 for the issuance or renewal of a personal identification card, including a duplicate personal identification card or a personal identification card issued or renewed over the Internet or by other electronic means, to pay the costs of the Donor Education, Awareness, and Registry Program of Texas, established under Chapter 49, Health and Safety Code, and, subject to Section 113.104, Health and Safety Code, of the Texas Organ, Tissue, and Eye Donor Council, established under Chapter 113, Health and Safety Code, if the person applying for or renewing a personal identification card opts to pay the additional fee. The department shall remit fees collected under this subsection to the comptroller, who shall maintain the identity

of the source of the fees. Subject to appropriation, the department may retain three percent of the money collected under this subsection to cover the costs in administering this subsection.]

Amendment No. 33 was withdrawn.

**Amendment No. 34**

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1)  On page 15, line 11, insert the following new section and renumber the subsection appropriately:

SECTION 25.  This Act is legally unenforceable if it does not comply with Section 5, Section 203, and Section (4)(f)(4) of the Voting Rights Act.

**AMENDMENT NO. 34 - STATEMENT OF LEGISLATIVE INTENT**

REPRESENTATIVE HARLESS:  Mr. Speaker, members, the Voting Rights Act either does or does not apply to various sections of this bill.  This is for the supreme court to determine and not the Texas Legislature.  I move to table.

REPRESENTATIVE RAYMOND:   Ms. Harless, do you believe the Voting Rights Act is a good law?

HARLESS:  I do.

RAYMOND:  So you believe there is still discrimination in the voting place?

HARLESS:  I'm sorry?

RAYMOND:  So you believe there is still discrimination in the voting place?

HARLESS:  No, I do not think there is.

RAYMOND:  Then why do you think the Voting Rights Act is a good law?

HARLESS:  I think at the time, when it was passed, it was very effective.  Texas is a Section 5 state, it's going to have to go for pre-clearance either before the Department of Justice or the three federal judges in the District of Columbia. They will decide if we have met the standards of the Voting Rights Act.  This is not the venue for us to decide.  We've got the lines that they have drawn in the cases we have already seen.  We know that—we know the standards they've set, we've complied with that in our bill.  This is not the venue to have this—

RAYMOND:  Are you telling me we don't need the Voting Rights Act anymore?

HARLESS:  You're putting words into my mouth.

RAYMOND:  I'm asking.  Do you believe we still need the Voting Rights Act?

HARLESS:  I don't think this is the place to debate that.

RAYMOND:  Yes ma'am, it is entirely the place to debate that.  Would you agree this is a major piece of legislation dealing with voting in the State of Texas?

HARLESS:  I do.

RAYMOND:   And you do not believe that the Voting Rights Act should be discussed in this context?

HARLESS:  We have discussed it.

RAYMOND:  Okay, then let's continue to discuss it for a minute.  Do you believe the Voting Rights Act is still necessary?

HARLESS:  I believe we're still under the regulations of the Voting Rights Act.

RAYMOND:  I'm asking you, because you are the author of this very important bill, and I think this is very important for people to understand your intent.  Do you believe the Voting Rights Act is still necessary?

HARLESS:  As I've said before, this is a federal issue to be decided by the federal courts.  This isn't for us and the Texas Legislature to discuss right now.

RAYMOND:  Ma'am, you are dealing with legislation here—you are proposing a bill that would affect every single voter in the State of Texas, including minorities.  You would agree with that, right?

HARLESS:  Say that one more time.  It's hard to hear.

RAYMOND:  You are presenting a bill that would affect the voting rights of every voter in the State of Texas, including minorities, would you agree with that?

HARLESS:  I do not agree with that.

RAYMOND:  Really, your bill doesn't apply to minorities?

HARLESS:  I think we increase access to the polls by putting some checks and balances—that voters actually show ID, that they are who they are when they show up to vote in person.

RAYMOND:  I have a very simple question.  Does your bill apply to minorities in the State of Texas?

HARLESS:  My bill applies to everyone equally across the state.

RAYMOND:  Including minorities, is that right?

HARLESS:  Everyone.

RAYMOND:  Including minorities?

HARLESS:  All Texans.

RAYMOND:  Including minorities?

HARLESS:  All Texans.

RAYMOND:  Including minorities?

HARLESS:  All Texans.

RAYMOND:  You won't even acknowledge whether or not your bill affects—

HARLESS:  I said it applies to all Texans.

RAYMOND:  Including minorities, right?

HARLESS:  All Texans.  Every voter in the State of Texas.

RAYMOND:  Minorities are Texans, right?

HARLESS:  Do you want to go back and forth all day on this?  I've answered your question.

RAYMOND:  With all due respect, I feel like you are being flippant about something that's very important to millions of Texans.

HARLESS:  I absolutely don't mean to be flippant.  If I'm coming across that way I apologize.

RAYMOND:  It's a very simple question.

HARLESS:  And I gave you a very simple answer.  It applies to all Texans.

RAYMOND:  I'll ask you one more time.  Does your bill apply to minorities in the State of Texas?

REPRESENTATIVE VEASEY:  Mr. Raymond, why don't you think Representative Harless would answer your questions directly?  It was a very important question dealing with the Voting Rights Act.  We know that we are a Section 5 state.  I hope that she knows we're a Section 5 state if she's carrying this bill, and could you maybe elaborate on why she did not want to answer your question directly?

RAYMOND:  You know, it's hard to read someone else's mind.  But, I will tell you that in 2006, I'm not sure every member in here knows this, but in 2006 a man named George W. Bush signed into law the extension of the Voting Rights Act for 25 years and he said, "Although we've come a long way, there's still a ways to go."  And for the author of this bill not to acknowledge what a president from this state was willing to acknowledge a mere five years ago, and that is, the Voting Rights Act is still necessary.  And that her bill would in fact affect millions of Texans who are minorities and who are protected by Section 2 of the Voting Rights Act is troubling.  I mean I don't know what else to tell you, but I think that it should certainly give people pause to think about what's going on here.

VEASEY:  If you're the author of a bill like this that's going to drastically change election law in your state, don't you think you should have a good understanding of the Voting Rights Act and the history of the Act and why it was passed before you embark on a piece of legislation that could have the type of consequences that I believe this piece of legislation will have?

RAYMOND:  Well, I would expect that in the year 2011, but you just heard the exchange.  It was surprising and troubling to me that the author of this bill was not willing to acknowledge the importance of the Voting Rights Act and the fact that her bill would affect millions of Texans who are protected by it.

VEASEY:  You have a good amendment and because of all the good amendments that have been turned down tonight, we can see exactly where this bill is headed.  Thank you, Representative Raymond.

RAYMOND:  Thank you.

REPRESENTATIVE BERMAN:  Richard, you're a good guy, and Richard, are you a minority?

RAYMOND:  I am.

BERMAN:  Is Mr. Veasey a minority?

RAYMOND:  Yes, sir.

BERMAN:  Are you both Texans?

RAYMOND:  Yes, sir, we are.

BERMAN:  Ms. Harless answered the question then.  She said "all Texans."

RAYMOND:  You know, Leo, and I'm glad you call me Richard, because I like for us to talk to each other in the—

BERMAN:  Because I like you.

RAYMOND:  You were listening to it, Leo, and you've been around 75 years, as you've just mentioned.  She specifically would not answer, she specifically would not say, when I asked a simple question, "Will this affect minorities?  Will your bill include minorities?"  In other words, I'm a minority, is this going to apply to me?  I'm going to need a voter ID to go vote, right?

BERMAN:  Yes, but you're a Texan.

RAYMOND:  No, but listen to it, Leo.  You listen to us, you listen to us.  I said well tell me, does this affect minorities?  "It affects all Texans."  Well, just if it would affect minorities—she wouldn't say it.

BERMAN:  I think you hit her too hard, really.

RAYMOND:  She's not a shrinking violet, she's a tough lady.

BERMAN:  But she said "all Texans," and all Texans include every minority in Texas.  Of course they do.

RAYMOND:  Let me ask you, Leo.  Do you believe this bill applies to minorities in the State of Texas?

BERMAN:  Yes, I do.

RAYMOND:  You see, you were willing to answer it.

BERMAN:  But she didn't have to, she said "all Texans."

### REMARKS ORDERED PRINTED

Representative Raymond moved to print remarks between Representative Harless and Representative Raymond, between Representative Veasey and Representative Raymond, and between Representative Berman and Representative Raymond.

The motion prevailed.

Representative Harless moved to table Amendment No. 34.

The motion to table prevailed by (Record 124): 99 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.;

Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Burnam.

(Speaker in the chair)

**Amendment No. 35**

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee report) in SECTION 5 of the bill, in added Section 31.012, Election Code (page 3, between lines 25 and 26), by inserting the following new Subsection (d) and relettering the subsequent subsections of added Section 31.012, Election Code, accordingly:

(d) Sections 203 and 14(f)(4) of the Voting Rights Act apply to this section.

**AMENDMENT NO. 35 - STATEMENT OF LEGISLATIVE INTENT**

REPRESENTATIVE RAYMOND:  Very simply, I guess I want to ask you, do you believe that this bill should comply with the Voting Rights Act?

REPRESENTATIVE PHILLIPS:  I believe that we need to follow the law and make sure that we comply with every constitutional requirement that is imposed on us as a body.  Now, what you're—this is a specific section and portion of the Voting Rights Act.  I don't know if those sections apply to this, that will be up to the—that will be up to, ultimately, the supreme court to determine, and that's who we need to let determine.  I don't think we need to by trying to second-guess what they do mean and don't mean and whether all of these provisions apply.

RAYMOND:  Well, let me ask, because I see a troubling pattern here—

PHILLIPS:  I can't hear you—

RAYMOND:  Let me ask, because I see a troubling pattern, simple question: Do you believe that the Voting Rights Act is a good law?

PHILLIPS:  That is not a question before us.  There are issues of whether all of the Voting Rights Act are necessary at this time.  There are parts of it that have been important to transform elections in this nation.

RAYMOND:   So you believe, so you don't believe the Voting Rights Act is necessary?

PHILLIPS:  I'm not going to get into—

RAYMOND:  This is important—we're—

PHILLIPS:  Let me answer.

RAYMOND:  Let me ask my question, and then you can answer.

PHILLIPS:  You asked a question, then you answered a question, then you asked a question again—

RAYMOND:  No, no, I'll ask—

PHILLIPS:  —but you won't let me answer.

RAYMOND:   Let me—because I didn't ask it clearly I think.   Do you believe—do you believe—Mr. Phillips—

PHILLIPS:  Go ahead, I'm waiting for your question.

RAYMOND:  Let me ask this, you recognize that Texas is a protected—do you know or do you recognize that Texas is a protected state under the Voting Rights Act?  Just yes or no.

PHILLIPS:  Yes, I do.  The federal government, under George Bush, they voted to extend the Voting Rights Act for 25 years; yes, they did.

RAYMOND:  Okay, so you recognize that we're covered by that then?

PHILLIPS:  And that's the whole point, we're covered by that and we don't need to say—you're trying to impose something on this bill from a federal perspective. We either are or we aren't.

RAYMOND:  Exactly, and all I'm saying with this amendment—all I'm saying with this amendment—and this is why I'm baffled why you would move to table it, is that if we don't comply with the Voting Rights Act, it should not become law.  Is it your position that if it does not comply with the Voting Rights Act it should still become law?

PHILLIPS:   You're bringing sections in and saying this has to apply to every provision, and that's not the—

RAYMOND:  No, no, no, no—

PHILLIPS:  That's not what we need to do, we need to leave that for the federal government.  I mean, for the courts to decide whether we comply.  Because the lawyers have worked through this to craft this, and we do not want to do anything that's going to viol—so that's what we're going to do.

RAYMOND:  This, very specifically, what you just said is not accurate, Larry. This amendment very specifically applies to one section of the bill.

PHILLIPS:  Right.

RAYMOND:  The voter identification education section.  That's all.  If you look at the amendment.

PHILLIPS:  You're asking to include, and say this section of federal law applies to what we're doing.  That's part of the—I don't know—I mean, from my perspective, I don't know that we need to be here saying, well, gosh, we want everything to apply to everything we do.  If it's covered by it, it's covered by it, Mr. Raymond.  We don't need to include it.  They'll determine that.

RAYMOND:  Surely—I want to make sure I'm hearing you right—surely you would want us to comply with federal voting rights?

PHILLIPS:  Mr. Raymond, that's exactly the point we've been making.

RAYMOND:  You do want us to comply with the—so, I'm clear, you do want this—you do, you do want this—

PHILLIPS:  No, we want to comply with federal law.  And that's exactly the intent and purpose of what we're doing here today in trying to comply with federal law.  That's why we're trying to keep this bill simple, and the whole procedure simple, instead of adding stuff to it that may trigger a section that does or does not apply.  I don't see the problem.

RAYMOND:  Well, you—again, are you saying that **SB 14**, the section that I—the voter identification education section—do you want it to comply with the federal voting rights laws?

PHILLIPS:  I want this to comply with federal laws, and if the voting rights laws that are in effect apply to this and they're constitutional, the supreme court will uphold it, and if they don't, they won't.

RAYMOND:  Well, then all my amendment says—

PHILLIPS:  Your amendment says this has to apply here, and that's something we're saying we're not going to start doing.  We could go through and say we want the entire constitution of the United States to apply to this law.  It either does, or it doesn't.  We don't need to do that as a state.  The federal government passes the laws that they do, and we're either going to follow those laws or not.  We either have to or we don't, and that's part of the debate that is going on across this nation of what we do and we do not want to—we don't want to incorporate—we're trying to stop federal laws that we don't agree with—

RAYMOND:  So, you believe that—so I'm clear—you believe that this section of the bill, which deals with language, right, voter identification education, and the words language are used in that section of the bill, you believe that they may not need to comply with the Voting Rights Act, is that correct?

PHILLIPS:  Either they—either do or they don't.

RAYMOND:  And if they don't, it should not—it should not—

PHILLIPS:  No, then you're starting to put a requirement or a hurdle that may or may not need to be there.

RAYMOND:  Larry, how could you honestly look at me and say we're talking about—let me finish my question—how could you honestly look at me and say we have a major piece of legislation here and the section of the bill that deals with voter identification education and uses the words language, because, obviously in the State of Texas, there are people like my grandmother who didn't speak English, but who was a United States citizen her whole life, that that would not be covered and should not be covered by the Voting Rights Act?  How can you honestly say that, Larry?

Again members, it is frustrating in the year 2011, to stand up here and be debating members of this legislature who do not want—who appear to me—do not want the Voting Rights Act to apply to this bill.  It is disheartening, it is wrong, and I think in the end you will not prevail.  We shall overcome.

### REMARKS ORDERED PRINTED

Representative Raymond moved to print remarks between Representative Phillips and Representative Raymond.

The motion prevailed.

Representative Phillips moved to table Amendment No. 35.

The motion to table prevailed by (Record 125): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

## Amendment No. 36

Representative Dutton offered the following amendment to **CSSB 14**:

TX_00002976
## JA_002124

Amend **CSSB 14** (house committee printing) as follows:

(1) In SECTION 18 of the bill, in added Section 65.0541(a), Election Code (page 12, line 27), strike "sixth" and substitute "seventh business".

(2) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 65.051(a), Election Code, is amended to read as follows:

(a) The early voting ballot board shall verify and count provisional ballots as provided by this subchapter not later than the ninth [seventh] day after the date of an election.

SECTION ____. Section 67.003, Election Code, is amended to read as follows:

Sec. 67.003. TIME FOR LOCAL CANVASS. (a) Except as provided by Subsection (b), each local canvassing authority shall convene to conduct the local canvass at the time set by the canvassing authority's presiding officer not earlier than the 10th [eighth] day or later than the 11th day after election day.

(b) For an election held on the uniform election date in May, the local canvass must occur not later than the 11th day after election day and not earlier than the later of:

(1) the third day after election day;

(2) the date on which the early voting ballot board has verified and counted all provisional ballots after giving voters of provisional ballots the opportunity to present identification as provided by Section 65.0541, if a provisional ballot has been cast in the election; or

(3) the date on which all timely received ballots cast from addresses outside of the United States are counted, if a ballot to be voted by mail in the election was provided to a person outside of the United States.

Representative Harless moved to table Amendment No. 36.

The motion to table prevailed by (Record 126): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Menendez; Woolley.

### RULES SUSPENDED

Representative Hunter moved to suspend all necessary rules to allow the Committee on Calendars to set a calendar at 6:45 p.m. today in 3W.15.

The motion prevailed.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 6:45 p.m. today, in 3W.15, to set a calendar.

Permission to meet was granted.

### COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Calendars, 6:45 p.m. today, 3W.15, for a formal meeting, to set a calendar.

Transportation is rescheduled for 9 a.m. Monday, March 28.

### CSSB 14 - (consideration continued)

**Amendment No. 37**

Representative Hernandez Luna offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 9 of the bill, in amended Section 63.001(c), Election Code (page 5, line 17), by adding after the period "If in determining whether a voter's name is on the list of registered voters the election officer determines that the voter's name on the documentation does not match the name on the list, the voter shall be accepted for voting as otherwise required by this section if the voter submits an affidavit stating that the voter is the person on the list of registered voters and that the voter has legally changed the voter's name after marriage or divorce."

Amendment No. 37 failed of adoption by (Record 127): 49 Yeas, 99 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez;

Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Nays — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent — Bonnen.

**Amendment No. 38**

Representative Burnam offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) in SECTION 9 of the bill as follows:

(1) In amended Section 63.001(h), Election Code (page 6, line 20), strike "or".

(2) In amended Section 63.001, Elections Code (page 6, line 23), between "15.001(c)" and the period, insert the following:

; or

(3) a temporary driving permit issued by the Department of Public Safety following the revocation of a driver's license

Amendment No. 38 failed of adoption by (Record 128): 48 Yeas, 100 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Vo; Walle.

Nays — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac;

Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent — Villarreal.

**Amendment No. 39**

Representatives Anchia and Strama offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) Strike SECTIONS 1 and 2 of the bill (page 1, line 5, through page 2, line 2) and renumber the remaining SECTIONS of the bill accordingly.

(2) In SECTION 9 of the bill, in amended Section 63.001(b), Election Code (page 5, line 2), strike "Except as provided by Subsection (h), on [On]" and substitute "On".

(3) In SECTION 9 of the bill, strike added Sections 63.001(g) and (h), Election Code (page 5, line 25 through page 6, line 23), and substitute the following:

(g) If the requirements for identification prescribed by Subsection (b) are not met, the voter may be accepted for provisional voting only under Section 63.011. An election officer shall provide a voter who presents the voter's voter registration certificate an affidavit to execute under penalty of perjury that, in addition to meeting the requirements of Section 63.011(a), states the voter is the person named on the voter registration certificate.

(h) For a voter who is not accepted for voting under this section, an election officer shall:

(1) inform the voter of the voter's right to cast a provisional ballot under Section 63.011; and

(2) provide the voter with written information, in a form prescribed by the secretary of state, that lists the requirements for identification.

(4) Strike SECTION 17 of the bill (page 11, line 24, through page 12, line 20) and substitute the following:

SECTION 17. Section 65.054(b), Election Code, is amended to read as follows:

(b) A provisional ballot shall [may] be accepted [only] if the board determines that, from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election and:

(1) the voter meets the identification requirements of Section 63.001(b) at the time the ballot was cast; or

(2) the voter presented the voter's voter registration certificate with the affidavit described by Section 63.001(g) and the signature on the voter's provisional voting affidavit is substantially similar to the signature on the voter's voter registration application or other public record in the possession of the voter registrar.

(5) Strike SECTION 18 of the bill (page 12, line 21, through page 13, line 6) and renumber the remaining SECTIONS accordingly.

## LEAVES OF ABSENCE GRANTED

The following members were granted leaves of absence temporarily for today to attend a meeting of the Committee on Calendars:

Bonnen on motion of Hancock.

Branch on motion of Patrick.

Cook on motion of Patrick.

Geren on motion of Hancock.

Hunter on motion of Patrick.

Keffer on motion of Hancock.

Kolkhorst on motion of Hancock.

Lucio on motion of Patrick.

Rodriguez on motion of Patrick.

Truitt on motion of Patrick.

### CSSB 14 - (consideration continued)

Representative Hancock moved to table Amendment No. 39.

(Bonnen and Truitt now present)

The motion to table prevailed by (Record 129): 94 Yeas, 47 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Isaac; Jackson; King, P.; King, S.; Kleinschmidt; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg;

Howard, D.; Johnson; King, T.; Lozano; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent, Excused, Committee Meeting — Branch; Cook; Geren; Hunter; Keffer; Kolkhorst; Lucio; Rodriguez.

(Cook and Rodriguez now present)

## Amendment No. 40

Representative Menendez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered section and by renumbering the existing sections as appropriate:

SECTION ____. The provisions of this Act requiring a voter to provide a photo identification in order to be accepted for voting do not apply to an election held in a county in which the commissioners court of the county finds that the implementation of the photo identification requirement would be a financial burden on the county.

(Geren, Hunter, Keffer, Kolkhorst, and Lucio now present)

(Brown in the chair)

Representative Phillips moved to table Amendment No. 40.

The motion to table prevailed by (Record 130): 98 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Brown(C).

Absent, Excused, Committee Meeting — Branch.

Absent — Martinez.

(Branch now present)

## Amendment No. 41

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered section and by renumbering the existing sections as appropriate:

SECTION ____.  Section 521.424, Transportation Code, is amended to read as follows:

Sec. 521.424.  DUPLICATE LICENSE OR CERTIFICATE FEE. (a) Except as provided by Subsection (b), the [The] fee for a duplicate driver's license or duplicate personal identification certificate is $10.

(b)  The department may not collect a fee for a duplicate personal identification certificate from a person who meets the requirements of Section 521.422(d).

Amendment No. 41 was withdrawn.

## Amendment No. 42

Representative Walle offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1)  Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____.  Section 15.001, Election Code, is amended by amending Subsection (a) and adding Subsection (d) to read as follows:

(a)  Each voter registration certificate issued must contain:

(1)  the voter's name in the form indicated by the voter, subject to applicable requirements prescribed by Section 13.002 and by rule of the secretary of state;

(2)  the voter's residence address or, if the residence has no address, the address at which the voter receives mail and a concise description of the location of the voter's residence;

(3)  the month, day, and year of the voter's birth;

(4)  the number of the county election precinct in which the voter resides;

(5)  the voter's effective date of registration if an initial certificate;

(6)  the voter's registration number;

(7)  an indication of the period for which the certificate is issued;

(8)  a statement explaining the circumstances under which the voter will receive a new certificate;

(9)  a space for stamping the voter's political party affiliation;

(10)  a statement that voting with the certificate by a person other than the person in whose name the certificate is issued is a felony;

(11)  a space for the voter's signature;

(12)  a statement that the voter must sign the certificate personally, if able to sign, immediately on receipt;

(13)  a space for the voter to correct the information on the certificate followed by a signature line;

(14)  the statement: "If any information on this certificate changes or is incorrect, correct the information in the space provided, sign below, and return this certificate to the voter registrar.";

(15)  the registrar's mailing address and telephone number; [and]

(16)  the jurisdictional or distinguishing number for the following territorial units in which the voter resides, as determined by the voter registrar:

(A)  congressional district;

(B)  state senatorial district;

(C)  state representative district;

(D)  commissioners precinct;

(E)  justice precinct;

(F)  city election precinct; and

(G)  school district election precinct; and

(17)  if applicable to the county in which the voter resides, the photograph of the voter to whom the certificate is issued.

(d)  The commissioners court of a county may adopt an order requiring the voter registrar to:

(1)  obtain a photograph of each county voter to include on the voter's voter registration certificate; or

(2)  issue to each county voter a voter registration identification card instead of a voter registration certificate containing the information required by this section and the voter's photograph.

SECTION ____.  Subchapter A, Chapter 31, Election Code, is amended by adding Section 31.013 to read as follows:

Sec. 31.013.  PHOTO IDENTIFICATION ACCESS. (a) The secretary of state shall establish methods for a voter registrar, if required, to obtain a photograph of each registered voter from a driver's license or other identification issued by the state to that voter for use on the voter's voter registration certificate or voter registration identification card.

(b)  For purposes of this section, the secretary of state may enter into agreements with the Department of Public Safety or other state agencies and governmental entities for assistance with assigning photographs to the appropriate voter's voter registration certificate or voter registration identification card.

SECTION ____.  (a) As soon as practicable after the effective date of this Act, the secretary of state shall establish, subject to Subsection (b) of this section, the method for obtaining photographs for use on voter registration certificates or voter registration identification cards required by Section 31.013, Election Code, as added by this Act.

(b) The method described by Subsection (a) of this section must allow for voter registration certificates or voter registration identification cards including photographs to be issued beginning with the general election for state and county officers held in 2012.

(2) In SECTION 14 of the bill, in amended Section 63.0101, Election Code (page 10, line 13), strike "or".

(3) In SECTION 14 of the bill, in amended Section 63.0101, Election Code, following added Subdivision (5) (page 10, line 17), insert the following:
; or

(6) a voter registration certificate or voter registration identification card that contains the voter's photograph

Representative Phillips moved to table Amendment No. 42.

The motion to table prevailed by (Record 131): 95 Yeas, 52 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, J.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Simpson; Strama; Thompson; Turner; Veasey; Vo; Walle.

Present, not voting — Mr. Speaker; Brown(C).

Absent — Villarreal.

## Amendment No. 43

Representative Rodriguez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION _____. Chapter 63, Election Code, is amended by adding Section 63.0091 to read as follows:

Sec. 63.0091.  REGISTRATION  AT  POLLING  PLACE;  VOTING PROCEDURES.  (a) This section applies to the conduct of voting and to the registration  of  voters  notwithstanding  and  in  addition  to  other  applicable provisions of this code.

(b)  A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted for voting in the precinct of the person's residence if, on the day the person offers to vote, the person:

(1)  submits a voter registration application that complies with Section 13.002; and

(2)  presents  proof  of  identification  in  a  form  described  by  Section 63.0101 that also establishes the person's residence.

(c)  Persons voting under this section shall be processed separately at the polling place from persons who are voting under regular procedures.

(d)  The  secretary  of  state  shall  prescribe  the  procedures  necessary  to implement this section and to ensure the proper and orderly conduct of elections.

Representative Phillips moved to table Amendment No. 43.

The motion to table prevailed by (Record 132): 96 Yeas, 50 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Truitt; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hartnett; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle; Weber.

Present, not voting — Mr. Speaker; Brown(C).

Absent — Marquez; Torres.

## STATEMENT OF VOTE

When Record No. 132 was taken, I was in the house but away from my desk. I would have voted no.

Marquez

(Speaker in the chair)

### Amendment No. 44

Representative Gallego offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION _____.  The changes in law made by this Act do not apply to any county in which the Department of Public Safety of the State of Texas has not established a full service driver's license office.

Representative Harless moved to table Amendment No. 44.

The motion to table prevailed by (Record 133): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Villarreal; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### Amendment No. 45

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered section and by renumbering the existing sections as appropriate:

SECTION ____.  Section 521.424, Transportation Code, is amended to read as follows:

Sec. 521.424.  DUPLICATE LICENSE OR CERTIFICATE FEE. (a) Except as provided by Subsection (b), the [The] fee for a duplicate driver's license or duplicate personal identification certificate is $10.

(b)  The department may not collect a fee for a duplicate personal identification certificate from a person who meets the requirements of Section 521.422(d).

Amendment No. 45 was adopted.

**Amendment No. 46**

Representative Martinez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____.  Subchapter A, Chapter 521, Transportation Code, is amended by adding Section 521.007 to read as follows:

Sec. 521.007.  NOTICE OF IDENTIFICATION FOR VOTING PURPOSES. The department shall provide notice to each applicant for an original or renewal driver's license or personal identification certificate that the department may not collect a fee for a personal identification certificate issued to a person who states that the person is obtaining the personal identification certificate for the purpose of satisfying Section 63.001(b), Election Code, and meets the requirements of Section 521.422(d).

Representative Harless moved to table Amendment No. 46.

The motion to table prevailed by (Record 134): 100 Yeas, 45 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eiland; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer;

TX_00002988

McClendon;  Menendez;  Muñoz;  Naishtat;  Oliveira;  Pickett;  Quintanilla; Raymond;  Reynolds;  Rodriguez;  Strama;  Thompson;  Turner;  Veasey;  Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Alonzo; Deshotel; Miles; Peña.

### STATEMENTS OF VOTE

When Record No. 134 was taken, I was in the house but away from my desk. I would have voted no.

Deshotel

When Record No. 134 was taken, I was in the house but away from my desk. I would have voted yes.

Peña

### Amendment No. 47

Representative Alonzo offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____.  Chapter 63, Election Code, is amended by adding Section 63.0091 to read as follows:

Sec. 63.0091.  REGISTRATION  AT  POLLING  PLACE;  VOTING PROCEDURES.   (a) This section applies to the conduct of voting and to the registration of voters notwithstanding and in addition to other applicable provisions of this code.

(b) A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted for voting in the precinct of the person's residence if, on the day the person offers to vote, the person:

(1) submits a voter registration application that complies with Section 13.002; and

(2) presents proof of identification in a form described by Section 63.0101 that also establishes the person's residence.

(c) Persons voting under this section shall be processed separately at the polling place from persons who are voting under regular procedures.

(d) The secretary of state shall prescribe the procedures necessary to implement this section and to ensure the proper and orderly conduct of elections.

Amendment No. 47 was withdrawn.

### Amendment No. 48

Representatives Bonnen, Bohac, and T. Smith offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____. Every provision in this Act and every application of the provisions in this Act are severable from each other. If any application of any provision in this Act to any person or group of persons or circumstances is found by a court to be invalid, the remainder of this Act and the application of the Act's provisions to all other persons and circumstances may not be affected. All constitutionally valid applications of this Act shall be severed from any applications that a court finds to be invalid, leaving the valid applications in force, because it is the legislature's intent and priority that the valid applications be allowed to stand alone. Even if a reviewing court finds a provision of this Act invalid in a large or substantial fraction of relevant cases, the remaining valid applications shall be severed and allowed to remain in force.

Amendment No. 48 was adopted. (The vote was reconsidered later today, and Amendment No. 48 was adopted by Record No. 146.)

**Amendment No. 49**

Representative Alonzo offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.0091 to read as follows:

Sec. 63.0091. REGISTRATION AT POLLING PLACE; VOTING PROCEDURES. (a) This section applies to the conduct of voting and to the registration of voters notwithstanding and in addition to other applicable provisions of this code.

(b) A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted for voting in the precinct of the person's residence if, on the day the person offers to vote, the person:

(1) submits a voter registration application that complies with Section 13.002; and

(2) presents proof of identification in a form described by Section 63.0101 that also establishes the person's residence.

(c) Persons voting under this section shall be processed separately at the polling place from persons who are voting under regular procedures.

(d) The secretary of state shall prescribe the procedures necessary to implement this section and to ensure the proper and orderly conduct of elections.

Representative Harless moved to table Amendment No. 49.

The motion to table prevailed by (Record 135): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Frullo; Lucio.

## STATEMENTS OF VOTE

When Record No. 135 was taken, I was in the house but away from my desk. I would have voted yes.

Frullo

When Record No. 135 was taken, I was in the house but away from my desk. I would have voted no.

Lucio

**Amendment No. 50**

Representative Raymond offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Effective September 1, 2011, Subchapter C, Chapter 20, Election Code, is amended by adding Section 20.067 to read as follows:

Sec. 20.067. TRAVEL REIMBURSEMENT PROGRAM. (a) The Department of Public Safety shall establish and operate a travel reimbursement program, under which an individual who earns not more than 100 percent of the income standard established by applicable federal poverty guidelines may submit an application for reimbursement to the department to recover the expenses incurred by the individual in traveling to and from the department office to obtain a photo identification for purposes of voting.

(b)  The department shall reimburse an individual meeting the requirements described by Subsection (a).

(c)  The department shall adopt necessary rules to implement the program required by this section.

### AMENDMENT NO. 50 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE RAYMOND:  Mr. Phillips, you know that the State of Texas, in the last year, it was reported that we had an additional around half a million, or 428,000 more people, fell into poverty in the State of Texas, are you aware of that?

REPRESENTATIVE PHILLIPS:  We had a population that has continued to grow.  Yes, we have.

RAYMOND:  But last year it was reported, official figures reported that over 400,000 more people in the State of Texas fell under the poverty level.

PHILLIPS:  We have a much larger state and much more populous state.  That's correct.

RAYMOND:  Right, so we've got over four million people that I would call poor. I mean this would be someone who earns, if you're an individual, someone who earned $10,800 year.  If you're a family of two, it'd be $14,000 a year.  Families of three, $18,000 a year.

PHILLIPS:  Mr. Raymond, we've clearly—clearly in the bill, it affords those who can't afford a voter ID card.  I think we're getting far afield from this legislation—

RAYMOND:  Well, here's what concerns me, and I hope would concern you. Minorities in the State of Texas outnumber Anglos about three to one in terms of those who fall under the poverty level, all right?  So what I am seeking to do here is to help anyone who is poor, who would have a hardship being able to drive. As I said, I grew up in Benavides, 26 miles from the closest office.  And there are a lot of people in Benavides, where I grew up, who are poorer than poor.  There are a lot of people who are from San Isidro, where my grandparents were, 33 miles away from the closest DPS office.  There are a lot of people out there who were poorer than poor, who are United States citizens, who are qualified and registered voters, but if this law were to pass, would have to go far away.  Now, I know you're not poor, but surely you recognize that that can be a hardship on people?  That, you know, when you had the poll tax and you had to pay a dollar or two dollars, people said, "Oh, a dollar, two dollars to be able to vote, that's not that much."  In this case, you're saying with your bill, that you're supporting here, that if it costs you $10 or $15 or $20 to travel to be able to go get what you need to get to allow you to vote, well then suck it up.  You're going to have to do it, if you want to vote.

PHILLIPS:  Mr. Raymond, for a long time people make decisions, they plan ahead and I don't think this is—

RAYMOND:  They plan ahead?

PHILLIPS:  They plan ahead.

RAYMOND:  They plan ahead to be poor?

PHILLIPS:  No, they plan ahead when they need to register to vote and run into town.  You're talking about traveling far when they're going to get services and so what you're doing is you're trying to create a certain class and I respectfully disagree that that's necessary here.  You're talking about people traveling far and not being able to get there.

RAYMOND:  Well, let me just ask you—you really believe that there will not be people in the State of Texas, because they are poor, who will not be able to afford to get what you're asking them to get to be able to vote?

PHILLIPS:  And we've had some people here, from our own body, that testify about how important it is for the security and confidence in elections.  And they will go and they proudly will obtain the right to vote.

RAYMOND:  Would you just answer the question honestly, Larry?

PHILLIPS:  No, I don't think so.

RAYMOND:  You really believe, of the four million poor people in the State of Texas, two-thirds who are—nearly three-fourths, of which are minority.  And that's why I believe this is aimed at minorities.  You really believe that many of those people—you think they're all going to be able to vote?

PHILLIPS:  No, I just think you're just raising an issue and I think it's a red herring.  I think it's clear.  The polls in this state show that minorities by a majority—

### REMARKS ORDERED PRINTED

Representative Raymond moved to print remarks by Representative Phillips and Representative Raymond.

The motion prevailed.

Representative Phillips moved to table Amendment No. 50.

The motion to table prevailed by (Record 136): 100 Yeas, 46 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner;

Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Dukes; Dutton; Eiland; Farias; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Deshotel; Farrar; Pickett.

### CSSB 14 - AMENDMENTS LIMITED

Representative Geren moved to limit amendments to **CSSB 14** to those pending on the speaker's desk.

The motion was seconded.

The motion to limit amendments prevailed.

**Amendment No. 51**

Representative Gutierrez offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 1.014, Election Code, is amended by adding Subsection (c) to read as follows:

(c) The secretary of state shall reimburse each county for any cost incurred by the county in implementing the voter identification requirements under Section 63.001.

Representative Harless moved to table Amendment No. 51.

The motion to table prevailed by (Record 137): 99 Yeas, 47 Nays, 1 Present, not voting.

Yeas — Aliseda; Alvarado; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner;

TX_00002994

Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Cain; Dutton; White.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 137. I intended to vote no.

Alvarado

When Record No. 137 was taken, I was in the house but away from my desk. I would have voted yes.

White

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Keffer requested permission for the Committee on Energy Resources to meet while the house is in session, at 1 p.m. tomorrow, in E2.036, to consider pending business.

Permission to meet was granted.

### FIVE-DAY POSTING RULE SUSPENDED

Representative Keffer moved to suspend the five-day posting rule to allow the Committee on Energy Resources to consider pending business at 1 p.m. tomorrow in E2.036.

The motion prevailed.

### COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

State Affairs meeting is cancelled.

Energy Resources meeting is cancelled.

### CSSB 14 - (consideration continued)

#### Amendment No. 52

Representative Castro offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.014 to read as follows:

Sec. 63.014. UNLAWFULLY REQUIRING PRESENTATION OF IDENTIFICATION. (a) Only an election officer may require a voter to present proof of identification at the polling place. A person, other than an election officer, who asserts that a voter must present proof of identification to the person in order to be allowed to vote or who for purposes of harassing a voter requests that the voter present proof of identification to the person, commits an offense.

(b) An offense under this section is a felony of the third degree unless the person is convicted of an attempt. In that case, the offense is a Class A misdemeanor.

(L. Taylor in the chair)

Representative Harless moved to table Amendment No. 52.

The motion to table prevailed by (Record 138): 99 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

**Amendment No. 53**

Representative Lucio offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) Add the following appropriately numbered SECTION to the bill and renumbering the remaining SECTIONS of the bill accordingly:

SECTION ____. Section 521.124, Transportation Code, is amended to read as follows:

TX_00002996

Sec. 521.124. TEMPORARY LICENSE[; ISSUED WITHOUT PHOTOGRAPH]. (a) The department may issue a temporary license without a photograph of the license holder[:

[(1)] to an applicant who is out of state or a member of the armed forces of the United States[; or

[(2) if the department otherwise determines that a temporary license is necessary].

(b) A temporary license issued under Subsection (a) is valid only until the applicant has time to appear and be photographed and a license with a photograph is issued.

(c) Except as provided by Subsection (a), a temporary license issued by the department must include the photograph of the person to whom the license is issued.

(d) If all application requirements are met, a temporary license must be issued by the department on the day of application.

(2) In SECTION 17 of the bill, in added Section 65.054(b)(2)(A), Election Code (page 12, line 7), between "Section 65.0541" and the underscored semicolon insert "or presents a temporary license issued by the Department of Public Safety that contains the voter's photograph in the period prescribed under Section 65.0541".

(3) In SECTION 18 of the bill, in added Section 65.0541(a)(1), Election Code (page 13, line 2), between "63.0101" and "to the voter registrar" insert "or a temporary license issued by the Department of Public Safety that contains the voter's photograph"

Amendment No. 53 was adopted.

**Amendment No. 54**

Representative Alvarado offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.014 to read as follows:

Sec. 63.014. SECRETARY OF STATE RECORDKEEPING. (a) The secretary of state shall keep detailed records showing, for the state and for each county and each election precinct, demographic information relating to:

(1) the eligible voters who were prevented from voting as a result of failing to meet the requirements for being accepted to vote; and

(2) the eligible voters who were required to file provisional ballots as a result of the requirements for being accepted to vote that include the number of those provisional ballots that were not counted.

(b) The secretary of state may adopt rules to implement this section, including rules requiring other state agencies and authorities holding elections to record information relevant to the record required by this section.

Representative Harless moved to table Amendment No. 54.

The motion to table prevailed by (Record 139): 98 Yeas, 49 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Margo.

**Amendment No. 55**

Representative Veasey offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by adding the following appropriately numbered section to read as follows and by renumbering the existing sections as appropriate:

SECTION     . Chapter 63, Election Code, is amended by adding Section 63.0013 to read as follows:

Sec. 63.0013. USE OF VOTER REGISTRATION CERTIFICATE FOLLOWING CERTAIN ELECTIONS. (a) Following a general election for state and county officers, the secretary of state shall determine whether, throughout the state, a majority of the persons who were required to cast a provisional vote under Section 63.011 because the voter lacked the photo identification required by Section 63.001(b), were members of a racial or ethnic minority protected by Section 5 of the federal Voting Rights Act.

(b) If the secretary of state makes the determination under Subsection (a) that a majority of voters who lacked photo identification were members of a racial or ethnic minority, in all subsequent elections held in the state, a voter may be accepted for voting under Section 63.001(b) by providing the voter's voter registration certificate to an election officer at the polling place.

(c) The secretary of state shall prescribe procedures as necessary to implement this section.

### AMENDMENT NO. 55 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE LOZANO: Representative Veasey, are you familiar with the supreme court decision that upheld the Indiana voter ID law?

REPRESENTATIVE VEASEY: I am familiar with it, yes.

LOZANO: And, do you recall that the justices, the 6-3 decision, the six in favor of upholding, didn't they make statements to that effect that if it was proven to disproportionately impact one racial or ethnic group, that then this issue should be revisited?

VEASEY: Absolutely, and that is exactly what this amendment addresses. It says that if there's discrimination that takes place, and we know that it would be discrimination if most of the people that were denied the right to vote were black and Hispanic, because Ms. Harless had said that that is not going to happen. That, in fact, people will have confidence in what is taking place during election process and that confidence will actually bolster turnout, so there's nothing to fear by this amendment.

LOZANO: Yes, okay, thank you.

VEASEY: So, members, I give you a chance to come and stand with me, just in case real discrimination takes place, which, I think, probably will. But here's your chance to prove, once and for all, that you will come and stand with me. I move passage.

REPRESENTATIVE HARLESS: Members, I'm not a big fan of talk radio. I don't listen to it, and I don't believe everything they say, but I move to table.

LOZANO: Representative Harless, are you familiar with the supreme court decision in which the United States Supreme Court upheld the Indiana voter ID law?

HARLESS: Yes.

LOZANO: And are you familiar that was a 6-3 decision, six in favor of opposing the law?

HARLESS: Yes.

LOZANO: Are you familiar with the opinions issued—the majority opinion?

HARLESS: The what?

LOZANO: Are you familiar with the majority opinion that justices issued in the supreme court decision?

HARLESS: Yes.

LOZANO: Do you recall anywhere in there where the majority opinion said that even though upholding the integrity of the ballot was paramount, that if the law showed to be disproportionately impacting a minority group, then the issues should be revisited?

HARLESS: Yes.

LOZANO:  So wouldn't this amendment actually be an extension of what the majority of that supreme court held in that ruling?

HARLESS:  In the *Marion v.—Crawford v. Marion County Election Board*, the court ruled the requirement to produce photo ID imposes only a limited burden on the voter and justifies by the states interest in restoring confidence in elections and deterring fraud.

VEASEY:  Members, especially my friends on the other side of the aisle that are republican, I ask you to please join me in defeating Ms. Harless' motion to table and support this amendment.  This is a very easy amendment.  All it says is that if people have really been discriminated against that you will come and stand with me and that you will come and join me.  That is the argument that is made over and over and over on the republican talk radio shows—on WBAP, that's what republican friends say—that if you can prove real discrimination, I will come and stand with you.  Now, this amendment says that if the secretary of state determines that most of the people are denied the right to vote are black and Hispanic, that the law will no longer exist.  Ms. Harless has said, over and over that that will not happen.  That, in fact, more people will go out to vote, because they will have confidence in the voting process.  So, why not accept this amendment, so we can move along, and we can all feel good that we stood up against discrimination.

LOZANO:  Mr. Veasey, I understand the significance of this amendment, and I really hope everyone's listening, because this amendment could potentially save this bill from adverse actions from the United States Supreme Court.  We should not, and I think you would agree, be sending out bills that are probably going to get overturned by the United States Supreme Court.  Based on their ruling, this behooves us— it would behoove us to support this amendment.  Based on the six justices in favor of the voter ID law in Indiana saying exactly what your amendment says, I think it would be in our best interest, in the house of representatives, to support this amendment.  I strongly urge everyone to vote against tabling this amendment.

VEASEY:  I think that this is the amendment that definitely follows the supreme court decision, and I also believe that this is the amendment that makes you feel good about not committing discrimination against your neighbor.  Taking an overseas mission, or fellowshipping with the church across town once a year, and passing this bill is not the way to feel good.  The way to feel good is to stand up for civil rights when you have the opportunity to.  I move to defeat Ms. Harless' amendment—please vote no on the motion to table.

Representative Harless moved to table Amendment No. 55.

The motion to table prevailed by (Record 140): 99 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren;

Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Marquez.

### STATEMENT OF VOTE

When Record No. 140 was taken, I was in the house but away from my desk. I would have voted no.

Marquez

### REMARKS ORDERED PRINTED

Representative Lozano moved to print remarks between Representative Harless and Representative Lozano and between Representative Veasey and Representative Lozano.

The motion prevailed.

(Speaker in the chair)

### Amendment No. 56

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. The changes in law made by this Act do not take effect unless the comptroller certifies that the changes will not reduce the revenue made available to the Texas mobility fund under Section 49-k, Article III, Texas Constitution.

Representative Harless moved to table Amendment No. 56.

The motion to table prevailed by (Record 141): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Hopson; Riddle.

### STATEMENTS OF VOTE

When Record No. 141 was taken, my vote failed to register. I would have voted yes.

Hopson

When Record No. 141 was taken, I was in the house but away from my desk. I would have voted yes.

Riddle

**Amendment No. 57**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____. This Act does not make an appropriation. This Act takes effect only if a specific appropriation for the implementation of this Act is provided in a general appropriations act of the 82nd Legislature.

Representative Harless moved to table Amendment No. 57.

The motion to table prevailed by (Record 142): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Howard, C.; Smith, W.

**Amendment No. 58**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** by striking SECTION 25 of the bill (house committee printing, page 15, lines 11-12) and substituting the following:

SECTION 25. Except as otherwise provided by this Act, this Act takes effect on the later of:

(1) January 1, 2012; or

(2) the date on which the secretary of state completes a study that:

(A) provides an analysis, disaggregated by ethnicity and county, of the access to photo identification by state residents, including the availability of, location of offices for, and cost of obtaining the following:

(i) a passport;

(ii) a driver's license or personal identification card; and

(iii) citizenship documents that include the person's photograph; and

(B) provides an analysis of the potential impact on voter turnout if the changes in law made by this Act take effect based on:

(i) aggregate turnout data at the county level; and

(ii) individual-level survey data from current population surveys conducted by the United States Census Bureau for source data.

Representative Harless moved to table Amendment No. 58.

The motion to table prevailed by (Record 143): 101 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

**Amendment No. 59**

Representative Dutton offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) as follows:

(1) Add the following appropriately numbered SECTION to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION _____. Section 1.005, Election Code, is amended by adding Subdivision (25) to read as follows:

(25) "Early voting ballot board" means the early voting and provisional voting ballot board.

(2) In the recital to SECTION 17 of the bill (page 11, line 25), strike "Subsection (b)" and substitute "Subsections (a) and (b)".

(3) In SECTION 17 of the bill, before amended Section 65.054(b), Election Code (page 11, between lines 26 and 27), add the following:

(a) The early voting and provisional voting ballot board shall examine each affidavit executed under Section 63.011 and determine whether to accept the provisional ballot of the voter who executed the affidavit.

Amendment No. 59 was adopted.

**Amendment No. 60**

Representative Reynolds offered the following amendment to **CSSB 14**:

Amend  **CSSB  14**  by  adding  the  following  appropriately  numbered
SECTION and renumbering the existing SECTIONS as appropriate:

SECTION  ____.  Effective  January  1,  2012,  Subchapter  A,  Chapter  61,
Election Code, is amended by adding Section 61.015 to read as follows:

Sec.  61.015.  ILLEGAL  REMOVAL  OF  VOTER  FROM  CERTAIN
DOCUMENTS.  (a)  An  election  officer  commits  an  offense  if  the  officer
knowingly removes the name of an eligible voter from the list of registered voters
or the poll list for a precinct.

(b)  An offense under this section is a state jail felony.

Representative Hancock moved to table Amendment No. 60.

The motion to table prevailed by (Record 144): 99 Yeas, 48 Nays, 1 Present,
not voting.

Yeas  —  Aliseda;  Anderson,  C.;  Anderson,  R.;  Aycock;  Beck;  Berman;
Bohac;  Bonnen;  Branch;  Brown;  Burkett;  Button;  Cain;  Callegari;  Carter;
Chisum;  Christian;  Cook;  Craddick;  Creighton;  Crownover;  Darby;  Davis,  J.;
Davis,  S.;  Driver;  Eissler;  Elkins;  Fletcher;  Flynn;  Frullo;  Garza;  Geren;
Gonzales,  L.;  Gooden;  Hamilton;  Hancock;  Hardcastle;  Harless;  Harper-Brown;
Hartnett;  Hilderbran;  Hopson;  Howard,  C.;  Huberty;  Hughes;  Hunter;  Isaac;
Jackson;  Keffer;  King,  P.;  King,  S.;  Kleinschmidt;  Kolkhorst;  Kuempel;
Landtroop;  Larson;  Laubenberg;  Lavender;  Legler;  Lewis;  Lyne;  Madden;
Margo;  Miller,  D.;  Miller,  S.;  Morrison;  Murphy;  Nash;  Orr;  Otto;  Parker;
Patrick;  Paxton;  Peña;  Perry;  Phillips;  Pitts;  Price;  Riddle;  Ritter;  Schwertner;
Scott;  Sheets;  Sheffield;  Shelton;  Simpson;  Smith,  T.;  Smith,  W.;  Smithee;
Solomons;  Taylor,  L.;  Taylor,  V.;  Torres;  Truitt;  Weber;  Woolley;  Workman;
Zedler; Zerwas.

Nays  —  Allen;  Alonzo;  Alvarado;  Anchia;  Burnam;  Castro;  Coleman;
Davis,  Y.;  Deshotel;  Dukes;  Dutton;  Farias;  Farrar;  Gallego;  Giddings;  Gonzales,
V.;  Gonzalez;  Guillen;  Gutierrez;  Hernandez  Luna;  Hochberg;  Howard,  D.;
Johnson;  King,  T.;  Lozano;  Lucio;  Mallory  Caraway;  Marquez;  Martinez;
Martinez  Fischer;  McClendon;  Menendez;  Miles;  Muñoz;  Naishtat;  Oliveira;
Pickett;  Quintanilla;  Raymond;  Reynolds;  Rodriguez;  Strama;  Thompson;
Turner; Veasey; Vo; Walle; White.

Present, not voting — Mr. Speaker(C).

Absent — Eiland; Villarreal.

**Amendment No. 61**

Representative Martinez offered the following amendment to **CSSB 14**:

Amend  **CSSB  14**  (house  committee  printing)  by  inserting  the  following
appropriately-numbered  SECTION  and  updating  any  cross-references
accordingly:

SECTION  ____.  The  changes  in  law  made  by  this  Act  do  not  apply  to  a
lineal descendant of a person who was not permitted to vote:

(1)  by law or party resolution adopted on or after January 1, 1923, in a primary election of any political party required by law to hold a primary because of the person's race, color, or previous condition of servitude; or

(2)  by law or party resolution adopted after March 2, 1836, because of a presumption based on the person's race, nationality, or color.

Representative Harless moved to table Amendment No. 61.

The motion to table prevailed by (Record 145): 100 Yeas, 44 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Thompson; Turner; Veasey; Vo; Walle.

Present, not voting — Mr. Speaker(C); Anchia.

Absent — Eiland; King, T.; Strama; Villarreal.

### CSSB 14 - POINT OF ORDER

Representative Castro raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 32(c)(4) of the House Rules on the grounds that the bill analysis is incorrect.

The speaker overruled the point of order, speaking as follows:

Representative Castro raises a point of order against further consideration of **SB 14**.  Specifically, he alleges the bill analysis violates Rule 4, Section 32 in that it fails to identify the effective dates of the bill, including a website providing notice of identification requirements.  The chair has reviewed the bill and the bill analysis.  The chair finds the bill analysis was not substantially or materially misleading as it relates to the effective date of the bill.  The point of order is respectfully overruled.

**Amendment No. 48 - Vote Reconsidered**

Representative Veasey moved to reconsider the vote by which Amendment No. 48 was adopted.

The motion to reconsider prevailed.

Amendment No. 48 was adopted by (Record 146): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Urban Affairs meeting is cancelled.

### CSSB 14 - (consideration continued)

**Amendment No. 62**

Representative Strama offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking all below the enacting clause and substituting the following:

SECTION 1. Subchapter A, Chapter 31, Election Code, is amended by adding Section 31.012 to read as follows:

Sec. 31.012. ELECTION INTEGRITY TRAINING. The secretary of state shall annually conduct, in at least four different geographic regions of the state, election integrity training for election officers, law enforcement personnel, and prosecutors in detecting, investigating, and prosecuting instances of voter fraud in which a person impersonates another person for the purpose of voting.

SECTION 2.  Subchapter A, Chapter 273, Election Code, is amended by adding Sections 273.005 and 273.006 to read as follows:

Sec. 273.005.  ELECTION INTEGRITY TASK FORCE.  Each district attorney or criminal district attorney shall create an election integrity task force to investigate and prosecute instances of voter fraud in which a person impersonates another person for purposes of voting.

Sec. 273.006.  POST-ELECTION INTEGRITY AUDIT. (a) Following the general election for state and county officers, the county clerk of each county shall conduct a post-election integrity audit to examine and investigate any evidence of voter fraud in which a person impersonates another person for purposes of voting.

(b)  The county clerk shall:

(1)  not later than the 90th day after the date of the general election for state and county officers, file a report with the secretary of state and the commissioners court of the county providing details of the evidence collected in the audit; and

(2)  refer any evidence of voter fraud collected under the audit to the county or district attorney with jurisdiction in the county.

SECTION 3.  This Act takes effect September 1, 2011.

**Amendment No. 62 - Point of Order**

Representative Phillips raised a point of order against further consideration of Amendment No. 62 under Rule 11, Section 2 and Rule 11, Section 3 of the House Rules on the grounds that the amendment is not germane to the bill and the amendment would change the original purpose of the bill.

The point of order was withdrawn.

Representative Harless moved to table Amendment No. 62.

The motion to table prevailed by (Record 147): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg;

TX_00003008

Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

**Amendment No. 63**

Representative Eiland offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking all below the enacting clause and substituting the following:

SECTION 1. Title 2, Election Code, is amended by adding Chapter 11A to read as follows:

CHAPTER 11A. VOTER IDENTIFICATION

Sec. 11A.001. APPLICABILITY. (a)  Except as provided by Subsection (b), this chapter supersedes a provision of this code or a statute outside this code to the extent of any conflict.

(b)  This chapter does not apply to the voter registration of a person who is 65 years of age or older.  This subsection expires September 1, 2031.

Sec. 11A.002. DEFINITION. In this chapter, "department" means the Department of Public Safety.

Sec. 11A.003. VOTER IDENTIFICATION ISSUED BY DEPARTMENT. (a) The secretary of state shall adopt rules in conjunction with the department to establish a process by which the issuance of a driver's license or a personal identification card by the department is the sole means of voter identification for the purposes of being accepted for voting.

(b)  The process established under this section must:

(1)  phase out the use of voter registration certificates; and

(2)  provide for the encryption of a person's voter registration number on the person's driver's license or personal identification card.

Sec. 11A.004. RULES. (a) The secretary of state shall adopt rules as necessary for the implementation and administration of this chapter.

(b)  The department shall adopt rules as necessary for the implementation and administration of this chapter.

SECTION 2. Subchapter A, Chapter 12, Election Code, is amended by adding Section 12.007 to read as follows:

Sec. 12.007. CERTAIN ELECTION OFFICERS ARE VOTER REGISTRARS.  An election officer serving a polling place for early voting by personal appearance is a deputy voter registrar and has the same authority as a regular deputy registrar.

SECTION 3. Section 65.054, Election Code, is amended by amending Subsection (b) and adding Subsection (b-1) to read as follows:

(b)  Except as provided by Subsection (b-1), a [A] provisional ballot may be accepted only if the board determines that, from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election.

(b-1)  A provisional ballot cast under Section 85.0312 shall be accepted if the voter registrar determines the applicant is eligible for registration under Section 85.0312(d).

SECTION 4.  Subchapter B, Chapter 85, Election Code, is amended by adding Section 85.0312 to read as follows:

Sec. 85.0312.  REGISTRATION AT POLLING PLACE DURING EARLY VOTING.  (a)  A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted during early voting by personal appearance for voting the ballot for the precinct of the person's residence as shown by the identification presented if, on the day the person offers to vote, the person:

(1)  submits a voter registration application that complies with Section 13.002 to an election officer at the polling place; and

(2)  presents as proof of residence:

(A)  a Texas driver's license, including a temporary license or instruction permit, or personal identification card issued to the person by the Department of Public Safety that states the person's current address on the day the person seeks to vote; or

(B)  a utility bill addressed to the person dated not earlier than the 30th day before the date the person seeks to vote, and:

(i)  a Texas driver's license, including a temporary license or instruction permit, or personal identification card issued to the person by the Department of Public Safety, regardless of whether the address stated on the license or card is current on the day the person seeks to vote;

(ii)  a United States passport issued to the person; or

(iii)  a United States military identification card that contains the person's photograph.

(b)  The election officer shall make a copy of the proof of residence submitted under Subsection (a)(2) and attach it to the registration application. The election officer shall return the original proof of residence to the voter.

(c)  A person voting under this section shall vote a provisional ballot in the manner provided by Section 63.011 except that the person is not required to submit the affidavit under Section 63.011(a).

(d)  For each registration corresponding to a ballot cast under this section, the voter registrar shall review the application and copy of the proof of residence and determine whether the applicant is eligible for registration as provided by Subchapter C, Chapter 13.  The registrar shall inform the early voting ballot board of a determination made under this subsection.  A registration approved under this subsection takes effect on the date the vote was cast.

(e)  The secretary of state may by rule:

(1)  designate additional documents that a person may offer to prove the person's residence to register and vote under this section; and

(2)  prescribe procedures to implement this section.

SECTION 5.  Section 521.422, Transportation Code, is amended by amending Subsection (a) and adding Subsection (d) to read as follows:

(a) Except as provided by Subsection (d), the [The] fee for a personal identification certificate is:

(1) $15 for a person under 60 years of age;

(2) $5 for a person 60 years of age or older; and

(3) $20 for a person subject to the registration requirements under Chapter 62, Code of Criminal Procedure.

(d) The department may not collect a fee for a personal identification certificate issued to a person who states that the person is obtaining the personal identification certificate for the purpose of being accepted for voting and does not have another form of identification for that purpose, and:

(1) who is a registered voter in this state and presents a valid voter registration certificate; or

(2) who is eligible for registration under Section 13.001, Election Code, and submits a registration application to the department.

SECTION 6. Not later than January 1, 2012, the secretary of state and the Department of Public Safety shall adopt rules required to implement the changes in law made by this Act.

SECTION 7. This Act takes effect September 1, 2011.

Representative Harless moved to table Amendment No. 63.

The motion to table prevailed by (Record 148): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

## CSSB 14 - REMARKS

REPRESENTATIVE ALISEDA: Members, Mr. Speaker, it is such an honor to be standing here representing my district as a state representative and supporting Representative Harless and this voter ID bill. As I stated earlier today, I am a Mexican immigrant. I came to this country at the age of four and became a United States citizen at the age of 17. I want to show you what they use in Mexico to vote. This is a Mexican, federally issued, biometric ID card. It has on the front, a picture, on the back, a magnetic strip containing additional information, and a fingerprint. I'm a proud American now, and using an ID to vote just makes common sense, and we need it here and need it now. We need an ID in this country to do anything in today's society—to cash a check, to open a bank account, to do something as simple as rent a movie. Americans expect it, Americans want it. They want it because they want to believe their voting system is at least as safe as renting a movie at Blockbuster.

Do I believe that there are some Americans who do not vote because they feel it is useless because of fraud? Yes. How do I know that? Because they have told me so. I served this country for five years as a United States naval officer—my country. I did not do that so some dead person could vote, or so that Mickey Mouse registered by ACORN could vote. I served my home county, Bee County, as county attorney for eight years. In 1990, as a young democrat county attorney, I had investigated and I had prosecuted voter fraud cases. I actually had convictions. I did not do that just to bring the perpetrators to justice. I did it because my citizens needed to believe they had a clean and fair election system and that someone was fighting for that. That is exactly why I strongly support this bill.

My district is comprised of seven counties south of San Antonio, west of Corpus Christi. According to 2008 statistics, one county in my district, Goliad County, had more people registered to vote than persons eligible to vote. Under current laws, the opportunity for fraud is there. In 2008, a high-water mark for voter registration, Texas had an overall registration rate of 76 percent of eligible voters. In McMullen County, another one of my counties, in 2008, we had a voter registration percent of 97.9, 21.4 percent above the state average. The opportunity for fraud was probably there. In Jim Wells County—some of you may have heard of Jim Wells County, that's the home of the infamous "Box 13." In 2008, they had an eligible voter registration of 90.44 percent, or 14 percent above the state average. The opportunity for fraud was probably there. In 2004, in Bee County, we had a woman cast a ballot as if she was her deceased mother. In 2007, the Texas State Auditors Office found that Texas had 49,049 registered voters who may have been ineligible to vote. Of those, there were 23,500 voters on the rolls who were probably deceased. Would voter ID probably have stopped them if they had tried to vote? I think so. There were also 2,359 voters identified as having duplicate records. I believe voter ID would have helped there also. In the voter ID committee, I heard testimony from election officials that in-person voter fraud had probably occurred and that they had witnessed it. They testified that they had voters show up with multiple ID cards. Do I believe voter fraud has

occurred?   Yes.   I believe that the majority of my constituents in my district, democrats, independents, and republicans want this, and I intend to vote for it and I ask that you do, also.

## REMARKS ORDERED PRINTED

Representative Peña moved to print remarks by Representative Aliseda.

The motion prevailed.

REPRESENTATIVE VEASEY:  Members, I'm not going to talk long. We've had a very, very long evening.  Of course, you know I'm in opposition of this bill, it discriminates and I think it will disenfranchise.  And I was just kind of thinking about the history of the Texas House of Representatives and what has changed over the last 100 years or so.  Obviously, the chamber has changed.  It wasn't too long ago that there were no African Americans or no Hispanics at all that served in this body and it was largely because of the discrimination that took place at the polling place.  And there was time when this body upheld certain segregationist policies that dealt with integrated schools and interracial marriage and other things like that, that obviously we would find despicable today.  But, what hasn't changed, even though the parties have changed, is that when it comes time to doing the right thing on decisions that largely involve race, that conservatives just cannot do the right thing. It's too hard.  People didn't do the right thing in regards to school desegregation, people just stuck with their communities.  People didn't want to go against, people thought they weren't going to be able to come back here when it dealt with segregation, when it dealt with whether our colleges and universities were going to be integrated.  People didn't do the right thing.  When it came time to take a stance on slavery, people couldn't do the right thing.  But I guarantee you, the people that served here in the 1950s and 60s, they'll look back and say, "You know what?   That was wrong.   When I was in the Texas Legislature, I should have done something.  I should have stood up.  I thought school segregation was right then.  I thought that segregated water fountains were right then.  I should have stood up and done the right thing."  And I can guarantee you, after this bill passes, and we see who is discriminated against and we see who suffers because of the strict requirements in this bill, that just like the people who served here in the 1950s, just like the people who served here in the in 1930s and the people who served here during reconstruction and before.  They had to look back in shame.  They didn't have a good story to tell their kids and their grandkids about how they dealt with the issue of race.  We are making the same mistake.

REPRESENTATIVE BURNAM:  Representative Veasey, you and I were raised on the west side of Fort Worth, is that correct?

VEASEY:  That is correct.

BURNAM:  And while you're younger than I, we have very similar experiences in and around the Lake Como community neighborhood and what they have endured over the years.  A couple of weeks ago, when we had the immigrant rights rally here, I was speaking in the crowd and I made mention to the fact of legislators of the 50s and 60s in Jim Crow times.  And I said, this session was

TX_00003013

shaping up to be the most overtly racist session that I have witnessed in 25 or 30 years. Do you think what we have seen and heard today bears up on my comment?

VEASEY: I think that what is being done here today is no different from the things that were done here in the 50s, no different from the things that were done here previous to that. The things that were done here during reconstruction or before. I think it's horrible, I think it discriminates against people. I think that we'll look back in shame and I think we'll all look back and say, that's wrong. Because, people always do that. There is not a person here that will say what happened in the 50s and what happened in the 60s was the right thing. Back then everybody thought it was the right thing. But nobody would say it's the right thing, today. Back then it was very socially acceptable, it was the right thing to do. As a matter of fact, if you weren't against school desegregation back in the 1950s, then you were seen as an oddity in your community. You probably weren't invited to come back to the Lions Club.

BURNAM: Mr. Veasey, you know I am extremely proud to have your grandmother and your mother as my constituents, and I bet you also know that they are extremely proud of you today.

VEASEY: Thank you very much and I think it's time to close. I want to thank my colleagues for joining me. But, the people that will lose out, because of this bill, will mainly be Hispanics and blacks, poor, elderly, rural, and it's a shame that we are traveling back in history instead of moving forward and winning the future.

REPRESENTATIVE MARTINEZ: The foundation has been laid and the bricks and the mortar to start the building of wall has commenced. And although this is not a wall for a building, this is a wall built as yet another barrier, another obstacle, for minorities. This voter ID bill, or should I say, this voter restriction bill, voter suppression bill, is one of the toughest in the country. A bill that oppresses minorities and their right to vote. A bill written and fortified on pure speculation. For those members that have come up here and have talked about seeing voter fraud, why didn't you do anything about it? Pure speculation, members. Many of you who are in this chamber have never had the experience of not being served at a restaurant, or having to pick up the order at the back door, or being treated differently because of your race or the color of your skin. I can still remember growing up and hearing my grandparents and my parents saying they couldn't go to the south side of town after 10 o'clock because of their race. I can remember my grandfather saying that he couldn't pick up his order in a restaurant or be seated because he was Hispanic, because he was Mexican American. And all this is, and all this happened because of their race. This bill, members, is a personal attack on minorities. This bill undermines every civil rights movement, the work of every civil rights leader, and most of all undermines every minority in this state. Some members in this chamber can go back and check off your political agenda. You've done what you've had to do, you're going to vote on this bill. But to some of us, it is personal. This is our voice, this is the voice of the minorities I represent in my district, the voice of

TX_00003014

minorities across the State of Texas.  And we are taking a stand against the continuous oppression and persecution that this bill brings.  For the minority members in this house, I ask you to stand with me today.  To members who care about the minorities you represent, I ask you to stand with me today, so we can together against the continued oppression, persecution, and voter suppression in this state.

REPRESENTATIVE REYNOLDS:  Are you familiar with Proverbs 31:8-9?

MARTINEZ:  I would like for you to please refresh my memory on that, Representative Reynolds.

REYNOLDS:  Well, I would say that Proverbs 31:8-9 simply says, "Speak out for the one who cannot speak, for the rights of those who are doomed.  Speak out, judge fairly, and defend the right of oppressed and needy people."  Would you say that that scripture pretty much summarizes the sentiments of the statement that you made in opposition of this, **SB 14**?

MARTINEZ:  Absolutely representative, and I'm on a roll if you give it to me, I'll recite it right now.

REYNOLDS:  Proverbs 31:8-9.  Thank you.

### REMARKS ORDERED PRINTED

Representative Martinez Fischer moved to print remarks by Representative Veasey and between Representative Reynolds and Representative Martinez.

The motion prevailed.

REPRESENTATIVE Y. DAVIS:  Thank you, Ms. Harless, I just want to get on the record, because there had been some discussion with regard to the cost of the bill and funding for the bill.  So, I'd like to ask you, if you could explain to me, who's going to pay for this legislation we're passing?  What is your understanding—who will pay for it?

REPRESENTATIVE HARLESS:  My understanding is that there is a $2,024,000 fiscal note on it. We have money in the general appropriations bill, and we have a contingency rider. There's HAVA funds available if we request them and we are approved.

Y. DAVIS:  Is it your explanation that there are actually two riders then?

HARLESS:  One—

Y. DAVIS:  Okay, so you mentioned two, so it's just the one contingency rider that deals with HAVA funds, is that correct?

HARLESS:  I don't remember mentioning two—there's only one rider.

Y. DAVIS:  I'm sorry—

HARLESS:  I don't remember mentioning two.  There's only—there always has been— and there's only one rider.

Y. DAVIS:  Okay, and so if those HAVA funds, and those HAVA funds represent federal funding from the Obama administration, is that correct?

HARLESS:  Yes, they do.

Y. DAVIS:  Okay, if those HAVA funds are not funded at the 2.024 level or if they are not funded at all, is there money for implementation of this bill, to your knowledge?

HARLESS:  Yes.

Y. DAVIS:  Okay, and could you explain what that funding source would be?

HARLESS:  I think we have general appropriations funds set aside for the funding of this bill to educate voters.

Y. DAVIS:  Okay, and is that a different rider than the one we just talked about?

HARLESS:  In the appropriations bill that was laid out in January or February on page I-92, there is $39 million of HAVA funds and underneath the secretary of state and for this coming year and $9 million for the next year.

Y. DAVIS:  So, it is your representation that we don't have to have the funds associated with this contingency law, but that they will be using funds that have already been received and will be used for a new program?

HARLESS:  They're received and they're used for election training.

Y. DAVIS:  But are they already obligated, or are they additional funds—they are existing funds that are not obligated, is that your understanding?

HARLESS:  Yes.

Y. DAVIS:  And so we, in fact, would not have to apply for this money under Rider No. 11, the contingency appropriations, based on what you just articulated, is that correct?

HARLESS:  We have to ask for approval from the election administration to use those funds for this source.  That was the testimony in committee.

Y. DAVIS:  Okay, so we would—so, I guess I want to make sure I understand—your representation is that the secretary of state already has HAVA funds that have not been appropriated that we can utilize for this program, whether we get additional funds or not won't matter.  Is that what you're saying?

HARLESS:  I'm not on the finance committee, but I know what's in the appropriations bill.  There is money there for that.

Y. DAVIS:  Okay, but I want to make sure I'm asking it correctly, because in the bill that we're going to take up next week, are you suggesting that, based on that bill that—the bill that's going to come to us—funds have not been appropriated, so if we don't get new funds, we have funds available for this program?

HARLESS:  If we don't get new funds, we already have the HAVA money sitting in the general revenue.  The testimony in committee, secretary of state Ann McGeehan, stated that we have received some $2 million of HAVA funds.  We have spent up to—whatever the difference is—that equals the $43 million, and that money is to be spent for election training.  It's in the general appropriations

bill that Chairman Pitts laid out at the beginning of the session. I'm not sure what the next appropriations bill that we'll vote on will actually have in it, because I don't serve on Appropriations.

Y. DAVIS:   Okay, for members—for those of us who don't serve on Appropriations either, I don't either, so I'm trying to understand where the money's going to come from, and to the extent that we don't need these funds, do we already have money allocated?  I just want to make sure that I ask a question. If we don't get additional funds, will we have—will there be an issue with regard to this bill being passed down to our counties and they then are responsible to implement this without additional resources from the state?

HARLESS:   The county passed what the secretary of state passes down, they receive funds for this, this is part of their normal duties. Every session, there are some election law changes. It is my understanding, from testimony from Harris County, that this has been their normal practice.

Y. DAVIS:   This is a little bit more than normal practice because we're altering the entire process. And so, to the extent that this is a totally new program, the cost would be much greater than they traditionally would have as programs that were continuations of our existing program, wouldn't you say?

HARLESS:   Yes, there was testimony in committee, the secretary of state spent a lot of time talking about what they wanted to do and what they would look to other states for best practices. They have budgets set aside every single year to enact new changes in election code.

Y. DAVIS:   And my last question is, based on that deal, we really don't need this contingency rider? Is that what you're suggesting based on your comments?

HARLESS:   It could be possible, but I didn't want to take any chance.

Y. DAVIS:   Okay, but—and you're sure we don't have to worry about counties contacting us with regard to additional expenses for the implementing a new voter plan without having received money from the state?  Is that your representation?

HARLESS:   That is my understanding. The county receives money from the secretary of state that comes from the HAVA funds.

Y. DAVIS:   That's a different question. My question is, based on implementing a new program, do we expect that the counties will incur additional costs to implement the new program that we will not fund?

HARLESS:   I do not expect them to, but I cannot say for sure that they won't have additional costs.

Y. DAVIS:   And if there are additional costs based on us passing this new bill, you're suggesting that the counties would then be responsible for those costs.

HARLESS:   Excuse me, say that one more time.

Y. DAVIS:   Are you suggesting that the counties could have additional costs associated with implementation of this program if we would not send funds to the counties for this program? Is that—

HARLESS:  The counties have additional costs on a lot of legislation we've passed, and a lot of it's election.  Every other session we pass new election laws that the county has to implement.  I don't know if they will with this bill.

Y. DAVIS:  Is it your intent that this bill would not put another—an additional cost on the counties with regard to implementation of this new program?

HARLESS:  I—that is my intent.

## REMARKS ORDERED PRINTED

Representative Y. Davis moved to print remarks between Representative Harless and Representative Y. Davis.

The motion prevailed.

REPRESENTATIVE L. GONZALES:  First of all, thank you.

HARLESS:  You're welcome.

L. GONZALES:  Thank you for all you've done, for all your hard work—we appreciate it very much.  I stand here before you as a very proud Latino, and I've got some questions for you.

HARLESS:  Okay.

L. GONZALES:  Is it your intention for this bill to disenfranchise ethnic minority voters?

HARLESS:  No, sir.

L. GONZALES:  Is it your intention, or anybody who has joint-authored or coauthored this bill, to disenfranchise ethnic minority voters?

HARLESS:  No, sir.

L. GONZALES:  Is it your intention for this bill to disenfranchise any voter, regardless of race, ethnicity, socioeconomic status, disability, age, or any combination thereof?

HARLESS:  No.

L. GONZALES:  Is it the intention of anybody who has joint-authored or coauthored this bill to disenfranchise any voter, regardless of race, ethnicity, socioeconomic status, disability, age, or any combination thereof?

HARLESS:  No, it is not.

L. GONZALES:  So we are not targeting my Hispanic 86-year-old grandfather?

HARLESS:  No, we're not.

L. GONZALES:  So we are not targeting my Hispanic 84-year-old grandmother?

HARLESS:  No.

L. GONZALES:  Does this bill in any way disenfranchise any voter?

HARLESS:  No.

L. GONZALES:  Would you agree that the heart and the soul of our republic is the elections process?  That these results determine our policy makers, and the decisions they make, which affect our everyday lives, that it is imperative that the voters of Texas have confidence in the integrity of the elections process, and that **SB 14** goes a very long way to accomplish and secure this confidence?

HARLESS:  I think it absolutely does.

### REMARKS ORDERED PRINTED

Representative L. Gonzales moved to print remarks between Representative Harless and Representative L. Gonzales.

The motion prevailed.

REPRESENTATIVE GARZA: Representative Harless, I wanted to echo the sentiments of Representative Gonzales.  I come from the west side of San Antonio; my father was a first generation Hispanic who served in the military for over 20 years.  And I came to this place, the house of representatives, to basically—the attitude that minorities, especially we, as Hispanics, are disabled in our ability to get an identification, a driver's license, to be able to do what it takes to exercise our right to vote, it's sometimes insulting.  We have the ability and we have the right, and my father and many of the Hispanics that are here are examples that we are able, and we want to begin to proclaim the ability of our people to achieve the many things that we have as a race. So, I think the positive part is that we are able, and our people are able, to achieve these things that have been said that they're not able or disenfranchised or unable to do.  And being a Texan and being Hispanic, I know that we are to overcome, and we have overcome, and we will continue to overcome.  But to answer some of the questions that caused some confusion to some of the representatives, I wanted to ask you specifically, will this bill encourage voter participation by all Texans, regardless of race, ethnicity, socioeconomic status, their disability, their age, or any of the combinations thereof, by giving them confidence in the election process that Representative Aliseda spoke about?

HARLESS:  I believe it will.

GARZA:  And let me ask you again, with the passage of this bill, will all Texans, including those mentioned, have equal access to this election process with the passage of this bill?

HARLESS:  Yes.

GARZA:  So, the Hispanic voters in my district, House District 117, will have full confidence that their vote will count in a trustworthy election process?

HARLESS:  Yes.

GARZA:  And the African American voters in my district—they'll have full confidence that their vote will count in this trustworthy election process?

HARLESS:  Yes.

GARZA: Okay, and finally, every voter in my district of 117 in San Antonio, and every house district in the State of Texas, regardless of race, ethnicity, their socioeconomic status, their disability, age, or, again, any combination thereof, will have full confidence that their vote will count in a trustworthy election process.

HARLESS:  Absolutely, yes.

### REMARKS ORDERED PRINTED

Representative Garza moved to print remarks between Representative Harless and Representative Garza.

The motion prevailed.

REPRESENTATIVE COLEMAN:  Thank you, Ms. Harless, and you know you and I are really good friends.

HARLESS: We are.

COLEMAN:  And I respect you greatly, and this is nothing personal to you.

HARLESS: I know that, and I appreciate that.  Thank you, I feel the same.

COLEMAN: Do you know if the members who said that they represent people of color, did they come from districts that are a majority of color?

HARLESS: Say that one more time, the end part.

COLEMAN: Do they come from the districts that are majority of color?  Do they have districts that are more people that are black and brown or other ethnicities than non black and brown?

HARLESS: I can't answer that, Garnet.

COLEMAN: Are they from majority minority districts?  This is important for the record.  You may not be able to answer it, but that is important for the record.

HARLESS: I would say that they probably think that their district is majority minority.  I don't know that, I'm not advised of that.

COLEMAN: Well, we're thinking it's not the case and they're speaking on behalf of their opinion, but in terms of how we do law in this state, it is based on the number of people who reside in a district and whether or not that is protected. Ms. Harless, is that true?

HARLESS: Say the last—

COLEMAN: The Voting Rights Act.  Isn't that based on the number of people of color that reside in a district that are protected under the Voting Rights Act?

HARLESS: I'm not advised.

COLEMAN: Okay.  So the answer is yes.  You may not be advised, but I can tell you under the law that the answer is yes.  I'm advising you that is the case.

HARLESS: Okay.

COLEMAN: Now, when you say that the individuals in this room did not believe that they were disenfranchised, is that because you didn't hear them or you didn't see them or you didn't know that was the majority of the sentiment of the people who represent majority minority districts that actually were making comment on this floor?  I know you may not be advised, but I can tell you right now and you can see that the majority of them do believe that they were disenfranchised, and they are the majority of the people in this house that are districts' representatives from districts that are districts that are majority minority.  Isn't that correct?

HARLESS: I think the record speaks for itself.  They've testified on record.  We have transcripts of it.  A lot of the communication—

COLEMAN: The record speaks for itself, but it's clear that the members standing around me right now, and the members that have been there today actually did say that they believe this bill disenfranchised their constituents, and that disenfranchisement was a reason why they didn't want to vote for this bill and thought this bill needed to be changed.  And, since you aren't advised I will let you know that is the case.  Thank you, Ms. Harless, for doing such a great job on a difficult subject.

HARLESS: Thank you.

## REMARKS ORDERED PRINTED

Representative Coleman moved to print remarks between Representative Harless and Representative Coleman.

The motion prevailed.

**CSSB 14**, as amended, was passed to third reading by (Record 149): 101 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez;

Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### REASONS FOR VOTE

Numerous amendments to improve **SB 14** would have made the bill more fair by reducing the risk of disenfranchising eligible, registered Texas voters. Unfortunately, the majority rejected amendments to expand the types of photo identification acceptable for voting. They rejected an amendment that would have allowed voters to sign an affidavit swearing to their identity, and to cast a provisional ballot with the assurance that their ballot would be counted if the signature on the affidavit matched the signature on the voter registration file. The majority also voted against exemptions for seniors, the indigent, people with religious objections, and women who have had their names changed due to marriage or divorce. High school students over 18 will not be able to vote with their school IDs. College students legally registered in Texas will not be able to vote with out-of-state driver's licenses. In addition, this bill is a vast unfunded mandate on counties. **SB 14** also unconstitutionally and illegally raids the Texas mobility fund. In light of our historic budget shortfall, this bill is fiscally irresponsible. Finally, these disadvantages of the bill must be weighed against its purported advantages in terms of reducing voter impersonation. In the absence of evidence of voter fraud of a type that would be prevented by the provisions in this bill, it is clear that this bill would do more harm than good to the integrity of our elections system.

> Anchia, Castro, Dukes, Gallego, Hernandez Luna, Hochberg, D. Howard, Lozano, Lucio, Martinez, Martinez Fischer, McClendon, Muñoz, and Vo

Numerous amendments to improve **SB 14** would have made the bill more fair by reducing the risk of disenfranchising eligible, registered Texas voters. Unfortunately, the majority rejected amendments to expand the types of photo identification acceptable for voting. They rejected an amendment that would have allowed voters to sign an affidavit swearing to their identity, and to cast a provisional ballot with the assurance that their ballot would be counted if the signature on the affidavit matched the signature on the voter registration file. The majority also voted against exemptions for seniors, the indigent, people with religious objections, and women who have had their names changed due to marriage or divorce. High school students over 18 will not be able to vote with their school IDs. College students legally registered in Texas will not be able to vote with out-of-state driver's licenses. In addition, this bill is a vast unfunded mandate on counties. In light of our historic budget shortfall, this bill is fiscally irresponsible. Finally, these disadvantages of the bill must be weighed against its

purported advantages in terms of reducing voter impersonation. In the absence of evidence of voter fraud of a type that would be prevented by the provisions in this bill, it is clear that this bill would do more harm than good to the integrity of our elections system.

Menendez

Numerous amendments to improve **SB 14** would have made the bill more fair by reducing the risk of disenfranchising eligible, registered Texas voters. Unfortunately, the majority rejected amendments to expand the types of photo identification acceptable for voting. They rejected an amendment that would have allowed voters to sign an affidavit swearing to their identity, and to cast a provisional ballot with the assurance that their ballot would be counted if the signature on the affidavit matched the signature on the voter registration file.

Villarreal

### HB 4 - COMMITTEE ON CALENDARS RULE ADOPTED

Pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, Representative Hunter moved to adopt the following rule governing floor consideration of **HB 4**:

Section 1.   All original amendments that will be offered during second reading consideration of the bill must be filed with the chief clerk by 10 a.m. on Monday, March 28.

Section 2.   (a) During second and third reading consideration of the bill, any amendment that adds or increases an item of appropriation in the bill is not in order unless the amendment contains an equal or greater reduction in one or more items of appropriation in the bill from the fund or funds against which the appropriation is to be certified.

(b)  The provisions of this section do not apply to an amendment that makes an adjustment in an item of appropriations solely to correct a technical clerical error.

The Committee on Calendars rule was adopted by (Record 150): 144 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Orr; Otto;

Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent — Burnam; Deshotel; Guillen; Oliveira; Rodriguez.

### HB 275 - COMMITTEE ON CALENDARS RULE ADOPTED

Pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, Representative Hunter moved to adopt the following rule governing floor consideration of **HB 275**:

All original amendments that will be offered during second reading consideration of the bill must be filed with the chief clerk by 10 a.m. on Monday, March 28.

The Committee on Calendars rule was adopted by (Record 151): 147 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent — Burnam; Guillen.

### GENERAL STATE CALENDAR
### HOUSE BILLS
### SECOND READING

The following bills were laid before the house and read second time:

## HB 71 ON SECOND READING
### (by Martinez and Hughes)

**HB 71**, A bill to be entitled An Act relating to the fee charged for the Texas Airport Directory.

Representative Martinez moved to postpone consideration of **HB 71** until 9:59 a.m. Thursday, March 31.

The motion prevailed.

## HB 229 ON SECOND READING
### (by Solomons)

**HB 229**, A bill to be entitled An Act relating to the duties of the county tax assessor-collector and voter registrar regarding exemptions from jury service.

Representative Solomons moved to postpone consideration of **HB 229** until 9:59 a.m. Thursday, March 31.

The motion prevailed.

## HB 451 ON SECOND READING
### (by Lucio, Creighton, Branch, and Bohac)

**HB 451**, A bill to be entitled An Act relating to the creation of a Don't Mess with Texas Water program to prevent illegal dumping that affects the surface waters of this state.

**Amendment No. 1**

Representative Lucio offered the following amendment to **HB 451**:

Amend **HB 451** on page 1, between lines 22 and 23, by inserting:

(e)  The Texas Department of Transportation shall post a sign that complies with program requirements at a major highway water crossing at the time a previously posted sign identifying the crossing or prohibiting dumping at the crossing is scheduled to be replaced.

Amendment No. 1 was adopted.

**HB 451**, as amended, was passed to engrossment by (Record 152): 122 Yeas, 21 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Beck; Bohac; Branch; Brown; Burkett; Burnam; Button; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Huberty; Hunter; Isaac; Jackson; Keffer; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Lewis; Lozano; Lucio; Mallory Caraway; Margo; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Patrick; Peña; Perry; Phillips; Pickett; Pitts; Price;

Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Torres; Truitt; Turner; Veasey; Vo; Walle; Weber; Woolley; Zerwas.

Nays — Anderson, C.; Aycock; Berman; Bonnen; Cain; Darby; Fletcher; Howard, C.; King, P.; Legler; Lyne; Madden; Miller, S.; Parker; Paxton; Shelton; Simpson; Smith, T.; White; Workman; Zedler.

Present, not voting — Mr. Speaker(C).

Absent — Eiland; Hughes; Johnson; Marquez; Thompson; Villarreal.

## STATEMENTS OF VOTE

I was shown voting yes on Record No. 152. I intended to vote no.

Flynn

I was shown voting yes on Record No. 152. I intended to vote no.

Phillips

I was shown voting yes on Record No. 152. I intended to vote no.

Weber

## FIVE-DAY POSTING RULE SUSPENDED

Representative Kolkhorst moved to suspend the five-day posting rule to allow the Committee on Public Health to consider the previously posted agenda and pending business at 8 a.m. March 24, in E2.030.

The motion prevailed.

## COMMITTEE GRANTED PERMISSION TO MEET

Representative Branch requested permission for the Committee on Higher Education to meet while the house is in session, during bill referral today, in E1.014, to consider the previously posted agenda.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Public Health, 8 a.m. March 24, E2.030, for a public hearing, to consider the previously posted agenda and pending business.

Energy Resources, 1 p.m. March 24, E2.036, for a public hearing, to consider pending business.

(Lozano in the chair)

## COMMITTEE GRANTED PERMISSION TO MEET

Representative Deshotel requested permission for the Committee on Culture, Recreation, and Tourism to meet while the house is in session, during bill referral today, in E1.026, to consider pending business.

Permission to meet was granted.

## PROVIDING FOR ADJOURNMENT

Representative S. Davis moved that, at the conclusion of the reading of bills and resolutions on first reading and referral to committees, the house adjourn until 10 a.m. today, Thursday, March 24.

The motion prevailed.

## BILLS AND JOINT RESOLUTIONS ON FIRST READING
## AND REFERRAL TO COMMITTEES
## CORRECTIONS IN REFERRAL

Bills and joint resolutions were at this time laid before the house, read first time, and referred to committees.  Pursuant to Rule 1, Section 4 of the House Rules, the chair at this time corrected the referral of measures to committees. (See the addendum to the daily journal, Referred to Committees, List No. 1.)

(V. Taylor in the chair)

## ADJOURNMENT

In accordance with a previous motion, the house, at 12:14 a.m. Thursday, March 24, adjourned until 10 a.m. today.

---

## ADDENDUM

---

## REFERRED TO COMMITTEES

The following bills and joint resolutions were today laid before the house, read first time, and referred to committees, and the following resolutions were today laid before the house and referred to committees. If indicated, the chair today corrected the referral of the following measures:

**List No. 1**

**HB 1295** (By Shelton), Relating to a pilot project to increase enrollee access to primary care services and simplify enrollment procedures under the child health plan program.
To Human Services.

**HB 1338** (By T. Smith), Relating to the requirement that a voter provide proof of citizenship when registering to vote.
To Elections.

**HB 1412** (By Chisum), Relating to requiring a voter to present proof of identification; providing penalties.
To Elections.

**HB 1458** (By Harless), Relating to requiring a voter to present proof of identification; providing penalties.
To Elections.

**HB 1533** (By Eiland), Relating to voter registration.

To Elections.

**HB 2665** (By P. King), Relating to abolishing the Texas Funeral Service Commission and the Texas State Board of Plumbing Examiners and transferring the functions of those agencies to the Texas Department of Licensing and Regulation.

To State Affairs.

**HB 2825** (By Otto), Relating to the investment management of the permanent university fund.

To Higher Education.

**HB 3166** (By Callegari), Relating to the abolition and consolidation of state agencies.

To Government Efficiency and Reform.

**HB 3167** (By Callegari), Relating to the repeal of occupational licensing requirements.

To Government Efficiency and Reform.

**HB 3168** (By Callegari), Relating to the operation of state agencies

To Government Efficiency and Reform.

**HB 3266** (By S. Miller), Relating to the audit of retail and mail order pharmacy claims of certain public employees.

To Insurance.

**HB 3413** (By Darby), Relating to the property and funding of the Texas Department of Motor Vehicles.

To Transportation.

**HB 3414** (By Darby), Relating to certain fiscal matters relating to the Department of Agriculture.

To Appropriations.

**HB 3415** (By Darby), Relating to the authority of the Texas Animal Health Commission to set and collect fees.

To Appropriations.

**HB 3416** (By Darby), Relating to eliminating a requirement that the Texas Alcoholic Beverage Commission transfer certain funds to the Department of Agriculture for the Texas Wine Marketing Assistance Program.

To Appropriations.

**HB 3417** (By Darby), Relating to state fiscal matters regarding business and economic development.

To Appropriations.

**HB 3418** (By Darby), Relating to state fiscal matters related to natural resources and the environment.

To Appropriations.

**HB 3419** (By Darby), Relating to state fiscal matters related to certain regulatory agencies.

To Appropriations.

**HB 3420** (By Darby), Relating to the fee on delivery of certain petroleum products.

To Appropriations.

**HB 3547** (By Alvarado), Relating to enforcement by a local government of fire safety standards at certain child-care facilities.

To Urban Affairs.

**HB 3569** (By Lucio), Relating to the review of certain documents by the attorney general; imposing certain fees.

To Government Efficiency and Reform.

**HB 3570** (By Smithee), Relating to insurance coverage requirements for certain amusement rides.

To Insurance.

**HB 3571** (By Phillips), Relating to the use of revenue sharing as a means of repayment of Texas Department of Transportation cost participation in a toll facility of a public entity.

To Transportation.

**HB 3572** (By S. King), Relating to the creation of the 1st Multicounty Court at Law composed of Fisher and Nolan Counties and the abolishment of the County Court at Law of Nolan County.

To Judiciary and Civil Jurisprudence.

**HB 3573** (By S. King), Relating to limiting the disclosure of certain information regarding certain charitable organizations, trusts, private foundations, and grant-making organizations.

To Business and Industry.

**HB 3574** (By Torres), Relating to the Texas Back to Work initiative.

To Economic and Small Business Development.

**HB 3575** (By Thompson), Relating to the operation of casino gaming in this state by federally recognized Indian tribes on certain land; providing penalties.

To Licensing and Administrative Procedures.

**HB 3576** (By Thompson), Relating to the operation of casino gaming in this state by federally recognized Indian tribes on certain land and by licensed operators at horse and greyhound racetracks and licensed locations; providing penalties.

To Licensing and Administrative Procedures.

**HB 3577** (By L. Gonzales), Relating to eligibility requirements for the Texas Educational Opportunity Grant.

To Higher Education.

**HB 3578** (By L. Gonzales), Relating to clarification of the authorized uses for loans under public institution of higher education emergency loan programs.

To Higher Education.

**HB 3579** (By L. Gonzales), Relating to repayment assistance for certain physician education loans.

To Higher Education.

**HB 3580** (By Frullo), Relating to the issuance of specialty license plates for surviving spouses of disabled veterans of the United States armed forces.

To Defense and Veterans' Affairs.

**HB 3581** (By Driver), Relating to authorizing the sale of beer by wineries.

To Licensing and Administrative Procedures.

**HB 3582** (By Harless), Relating to the allocation to a school district of the expenses of a joint election.

To Elections.

**HB 3583** (By Harless), Relating to the authority of local law enforcement authorities to enforce certain laws regulating coin-operated machines; providing criminal penalties.

To Licensing and Administrative Procedures.

**HB 3584** (By Strama), Relating to the Texas emerging technology fund.

To Technology.

**HB 3585** (By V. Taylor), Relating to the adoption of voting procedures necessary to implement the federal Military and Overseas Voter Empowerment Act.

To Elections.

**HB 3586** (By V. Taylor), Relating to unit operations for oil, gas, or oil and gas production or carbon dioxide storage.

To Energy Resources.

**HB 3587** (By Callegari), Relating to the functions of the Texas Guaranteed Student Loan Corporation.

To Higher Education.

**HB 3588** (By Coleman), Relating to the use of a county risk management pool by certain county and district officers instead of the execution of bonds.

To County Affairs.

**HB 3589** (By Hancock), Relating to claim-handling deadlines in the event of certain weather-related catastrophes or natural disasters.

To Insurance.

**HB 3590** (By Hancock), Relating to the cancellation of homeowners insurance policies.

To Insurance.

**HB 3591** (By D. Howard), Relating to the confidentiality of information obtained by a compliance office of an institution of higher education.

To Higher Education.

**HB 3592** (By D. Howard), Relating to the Lower Colorado River Authority.
To Natural Resources.

**HB 3593** (By W. Smith), Relating to providing notice of foreclosure to certain lien holders.
To Business and Industry.

**HB 3594** (By Aliseda), Relating to the termination of a volunteer deputy registrar for the submission of late or incomplete applications for voter registration.
To Elections.

**HB 3595** (By Chisum), Relating to energy efficiency goals and energy efficiency programs.
To Energy Resources.

**HB 3596** (By Hancock), Relating to public school finance and the allocation of state funds.
To Public Education.

**HB 3597** (By Larson), Relating to the powers and duties of certain public improvement districts.
To Urban Affairs.

**HB 3598** (By Huberty), Relating to the criminal registration procedure for a convicted arsonist.
To Criminal Jurisprudence.

**HB 3599** (By Garza), Relating to contracting with emerging fund managers by the State Board of Education for investment of the permanent school fund.
To Public Education.

**HB 3600** (By Garza), Relating to municipal and county authority to enforce a solid waste collection and transportation services franchise.
To Environmental Regulation.

**HB 3601** (By Garza), Relating to the issuance of cease and desist orders by the Texas Medical Board.
To Public Health.

**HB 3602** (By Garza), Relating to a restriction on permits authorizing direct discharges of waste or pollutants into water in certain areas associated with the Barton Springs segment of the Edwards Aquifer.
To Natural Resources.

**HB 3603** (By Garza), Relating to the distribution of money appropriated from a municipal court building security fund.
To Criminal Jurisprudence.

**HB 3604** (By Smithee), Relating to enforcement of certain insurance provisions in construction contracts.
To Business and Industry.

**HB 3605** (By Smithee), Relating to the payment of losses by the Texas Windstorm Insurance Association

To Insurance.

**HB 3606** (By Kuempel), Relating to the payment of development impact fees by certain political subdivisions or governmental entities.

To Urban Affairs.

**HB 3607** (By Kuempel), Relating to construction managers-at-risk used by local governments.

To Urban Affairs.

**HB 3608** (By Kuempel), Relating to a franchise tax credit for contributions to programs for at-risk youth.

To Ways and Means.

**HB 3609** (By Smithee), Relating to insurance premium and maintenance taxes, and payment of excess losses of the Texas Windstorm Insurance Association.

To Insurance.

**HB 3610** (By Thompson), Relating to periodic rate adjustments by electric utilities.

To State Affairs.

**HB 3611** (By Truitt), Relating to the administration of medications for persons with intellectual and developmental disabilities.

To Public Health.

**HB 3612** (By Turner), Relating to the administration of the Texas Save and Match Program to assist qualifying beneficiaries under the state's prepaid tuition plans and college savings plans and to the treatment of a beneficiary's assets under prepaid tuition plans and college savings plans in determining eligibility for student financial assistance and other assistance programs.

To Higher Education.

**HB 3613** (By Walle), Relating to the operation of the Texas Windstorm Insurance Association.

To Insurance.

**HB 3614** (By Hughes), Relating to the interest rate on a refund of ad valorem taxes made following the final determination of an appeal that decreases a property owner's tax liability.

To Ways and Means.

**HB 3615** (By Hughes), Relating to the authority of the chief appraiser of an appraisal district to increase the appraised value of property if the appraised value of the property was reduced in an appeal in a prior year.

To Ways and Means.

**HB 3616** (By Naishtat), Relating to designating October as Disability History and Awareness Month.

To Human Services.

**HB 3617** (By Madden), Relating to abolishing the Texas Commission on Fire Protection, the Commission on Jail Standards, and the Commission on Law Enforcement Officer Standards and Education and transferring certain of the powers and duties of those agencies to the newly created Public Safety Licensing Commission.

To Homeland Security and Public Safety.

**HB 3618** (By S. Miller), Relating to the regulation of restricted fireworks.

To County Affairs.

**HB 3619** (By S. Miller), Relating to the application of certain concealed handgun license laws to certain statewide elected officials and members of the legislature.

To Homeland Security and Public Safety.

**HB 3620** (By Isaac), Relating to changes in participation in public utility agencies.

To Natural Resources.

**HB 3621** (By Bonnen), Relating to the Gulf Coast Water Authority.

To Natural Resources.

**HB 3622** (By R. Anderson), Relating to liability for the death of a pet.

To Judiciary and Civil Jurisprudence.

**HB 3623** (By Darby), Relating to the environmental review of certain transportation projects by the Texas Department of Transportation.

To Transportation.

**HB 3624** (By Hochberg), Relating to the eligibility of educational aides for tuition exemptions at public institutions of higher education.

To Higher Education.

**HB 3625** (By Carter), Relating to a task force on school district administrative efficiency.

To Public Education.

**HB 3626** (By Kolkhorst), Relating to the Texas Economic Development Act.

To Ways and Means.

**HB 3627** (By Aliseda), Relating to the use of audio and visual recording devices in a polling place.

To Elections.

**HB 3628** (By Aliseda), Relating to the offense of unacknowledged assistance to a voter in completing an application for a ballot to be voted by mail.

To Elections.

**HB 3629** (By Shelton), Relating to abolishing the Department of Assistive and Rehabilitative Services and transferring its powers and duties to the Department of Aging and Disability Services and the Department of State Health Services.

To Human Services.

**HB 3630** (By Hunter), Relating to certain unprofessional conduct by a health care provider.

To Public Health.

**HB 3631** (By Branch), Relating to the imposition of certain conditions and limitations on the receipt of tuition and fee exemptions at public institutions of higher education.

To Higher Education.

**HB 3632** (By Hamilton), Relating to the effect on local regulation of the use and sale of fireworks.

To Land and Resource Management.

**HB 3633** (By Legler), Relating to participation in retirement programs by certain employees.

To Pensions, Investments, and Financial Services.

**HB 3634** (By Villarreal), Relating to including additional territory in the state in a junior college district.

To Higher Education.

**HB 3635** (By Dutton), Relating to the registration of and taxes and fees imposed on sexually oriented businesses; providing a civil penalty.

To Licensing and Administrative Procedures.

**HB 3636** (By Dutton), Relating to safety measures for culverts or other similar flood or drainage systems maintained by governmental entities.

To Urban Affairs.

**HB 3637** (By S. Miller), Relating to the regulation of equine dental technicians; providing penalties.

To Agriculture and Livestock.

**HB 3638** (By Hancock), Relating to telecommunications and the universal service fund.

To State Affairs.

**HB 3639** (By Pitts), Relating to state fiscal matters related to public and higher education.

To Appropriations.

**HB 3640** (By Pitts), Relating to the remittance and allocation of certain taxes and fees.

To Appropriations.

**HB 3641** (By Pitts), Relating to the remittance and allocation of gasoline and diesel fuel tax collections.

To Appropriations.

**HB 3642** (By Pitts), Relating to the dates on which franchise tax payments are due from certain taxable entities.

To Appropriations.

**HB 3643** (By Pitts), Relating to the remittance of mixed beverage taxes and taxes and fees on certain alcoholic beverages.

To Appropriations.

**HB 3644** (By Pitts), Relating to the creation and re-creation of funds and accounts in the state treasury, the dedication and rededication of revenue, and the exemption of unappropriated money from use for general governmental purposes.

To Appropriations.

**HB 3645** (By Pitts), Relating to state contributions made to fund the Teacher Retirement System of Texas and certain group benefits for retired school employees.

To Pensions, Investments, and Financial Services.

**HB 3646** (By Turner), Relating to the powers and duties of the Legislative Budget Board, including the receipt of reports by the board.

To State Affairs.

**HB 3647** (By Turner), Relating to directing payment, after approval, of certain miscellaneous claims and judgments against the state out of funds designated by this Act; making appropriations.

To Appropriations.

**HB 3648** (By Otto), Relating to state fiscal matters related to the judiciary.

To Appropriations.

**HB 3649** (By Otto), Relating to state fiscal matters related to law enforcement and criminal justice.

To Appropriations.

**HB 3650** (By Otto), Relating to cash payments provided to an inmate released on parole, mandatory supervision, or conditional pardon from the Texas Department of Criminal Justice.

To Appropriations.

**HB 3651** (By Otto), Relating to the appropriation of certain revenue for information technology projects.

To Appropriations.

**HB 3652** (By Otto), Relating to handling fees imposed by the comptroller for processing unclaimed property.

To Appropriations.

**HB 3653** (By Otto), Relating to the registration fee and registration renewal fee for lobbyists.

To Appropriations.

**HB 3654** (By Otto), Relating to the review of certain documents by the attorney general; imposing certain fees.

To Appropriations.

**HB 3655** (By Otto), Relating to the State Bar of Texas membership dues and minimum continuing legal education requirements for an attorney employed by the office of the attorney general.

To Appropriations.

**HB 3656** (By Otto), Relating to reimbursement to a county for payment to a person who reports for jury service.

To Appropriations.

**HB 3657** (By Otto), Relating to the collection of certain fees by the Commission on Jail Standards.

To Appropriations.

**HB 3658** (By Otto), Relating to the judicial and court personnel training fund.

To Appropriations.

**HB 3659** (By Otto), Relating to contributions by public retirement systems to the State Pension Review Board fund.

To Appropriations.

**HB 3660** (By Otto), Relating to requiring the secretary of state to publish the session laws of the legislature electronically and eliminating certain requirements for publishing and distributing volumes of the session laws.

To Appropriations.

**HB 3661** (By Otto), Relating to abolishing the state boot camp program.

To Appropriations.

**HB 3662** (By Otto), Relating to fees for process server certification.

To Appropriations.

**HB 3663** (By Otto), Relating to the use and management of the Texas preservation trust fund account.

To Appropriations.

**HB 3664** (By Otto), Relating to the calculation of the amount of state aid to be received by community supervision and corrections departments.

To Appropriations.

**HB 3665** (By Otto), Relating to state fiscal matters related to general government.

To Appropriations.

**HB 3666** (By Zerwas), Relating to state fiscal matters related to health and human services and state agencies administering health and human services programs.

To Appropriations.

**HB 3667** (By Peña), Relating to the establishment and administration of an employment verification compliance program, deterring the use of unauthorized foreign workers, imposing powers and duties on executive agencies, and providing for remedies.

To State Affairs.

**HB 3668** (By Callegari), Relating to certificates of public convenience and necessity for water or sewer services.

To Natural Resources.

**HB 3669** (By Carter), Relating to the funding for and user friendliness of the website operated by the Public Utility Commission of Texas to provide information regarding the power to choose retail electric providers.

To State Affairs.

**HB 3670** (By Carter), Relating to accreditation standards for child care training.

To Human Services.

**HB 3671** (By W. Smith), Relating to the development, financing, construction, and operation of toll projects.

To Transportation.

**HB 3672** (By Dutton), Relating to requiring the comptroller to provide notice to a person who will be regarded as a retailer or seller for purposes of sales and use tax.

To Ways and Means.

**HB 3673** (By Dutton), Relating to offers of settlement in civil cases.

To Judiciary and Civil Jurisprudence.

**HB 3674** (By Eiland), Relating to the use of unsworn declarations.

To Judiciary and Civil Jurisprudence.

**HB 3675** (By Eiland), Relating to assessments and taxes on subscription video service providers.

To State Affairs.

**HB 3676** (By Brown), Relating to procuring contracts for certain professional services by a governmental entity.

To State Affairs.

**HB 3677** (By Brown), Relating to the administrative fee charged by the Department of Information Resources to other entities for the purchase of certain commodity items.

To State Affairs.

**HB 3678** (By Brown), Relating to implementation of certain cost-saving measures for the Medicaid vendor drug program and child health plan program prescription drug benefits.

To Public Health.

**HB 3679** (By Martinez Fischer), Relating to a prohibition on the marketing of foods of minimal nutritional value on public school campuses.

To Public Health.

**HB 3680** (By Martinez Fischer), Relating to the types of food or beverages that may be sold to students on public school campuses.

To Public Health.

**HB 3681** (By Martinez Fischer), Relating to assessments of physical fitness of public school students and campus ratings based on that assessment.

To Public Education.

**HB 3682** (By Martinez Fischer), Relating to physical activity requirements applicable to public school students.

To Public Education.

**HB 3683** (By Martinez Fischer), Relating to hearings and appeals in connection with the insurance commissioner's disapproval of a property and casualty insurance rate.

To Insurance.

**HB 3684** (By Callegari), Relating to evaluating and providing for efficient government resource allocation.

To Government Efficiency and Reform.

**HB 3685** (By Aliseda), Relating to the collection and distribution of sales taxes and the hours of operation for certain retailers.

To Ways and Means.

**HB 3686** (By Brown), Relating to allowing certain identifiable communities in the extraterritorial jurisdiction of a municipality to incorporate.

To County Affairs.

**HB 3687** (By Perry), Relating to the closed formulary for workers' compensation pharmaceutical benefits.

To State Affairs.

**HB 3688** (By Hochberg), Relating to the collection of contributions by the Teacher Retirement System of Texas.

To Pensions, Investments, and Financial Services.

**HB 3689** (By Oliveira), Relating to the partnership agreement between The University of Texas at Brownsville and the Texas Southmost College District.

To Higher Education.

**HB 3690** (By Anchia), Relating to the boundaries and financing of a public improvement district.

To Urban Affairs.

**HB 3691** (By Gallego), Relating to the provision of certain programs and services by a community supervision and corrections department.

To Corrections.

**HB 3692** (By Gallego), Relating to peace officer interaction with persons with mental illness and to a person's incompetency to stand trial.

To Criminal Jurisprudence.

**HB 3693** (By Gallego), Relating to the supplemental compensation of certain local administrative district judges.

To Judiciary and Civil Jurisprudence.

**HB 3694** (By Gallego), Relating to certain requirements of sports officials by the University Interscholastic League.

To Public Education.

**HB 3695** (By Gallego), Relating to confidentiality of Class C misdemeanor records related to the conviction of a child.

To Criminal Jurisprudence.

**HB 3696** (By Gallego), Relating to concurrent state and federal legislative jurisdiction over units of the national park system in this state.

To Culture, Recreation, and Tourism.

**HB 3697** (By Gallego), Relating to the establishment of a Service to Texas requirement for undergraduate students at public institutions of higher education and the establishment of a Service to Texas program.

To Higher Education.

**HB 3698** (By Gallego), Relating to jurisdiction of district courts and criminal district courts in certain criminal proceedings.

To Criminal Jurisprudence.

**HB 3699** (By Turner), Relating to the disposal of nonparty compact low-level radioactive waste at the Texas Low-Level Radioactive Waste Disposal Compact waste disposal facility.

To Environmental Regulation.

**HB 3700** (By Larson), Relating to the conversion of a nontolled state highway or segment of the state highway system to a toll project.

To Transportation.

**HB 3701** (By Fletcher), Relating to the confidentiality of certain personal information.

To State Affairs.

**HB 3702** (By Raymond), Relating to sales and use tax imposed by boards of certain municipal transit departments.

To Ways and Means.

**HB 3703** (By Raymond), Relating to the use of certain aviation and air transportation-related tax proceeds for aviation facilities development.

To Ways and Means.

**HB 3704** (By Brown), Relating to the taxation of political subdivisions of the state.

To Ways and Means.

**HB 3705** (By Hamilton), Relating to the creation of the disaster reconstruction coordination office within the governor's office; creating the disaster contingency account.

To Homeland Security and Public Safety.

**HB 3706** (By Callegari), Relating to measures in anticipation of federal legislation that would recognize the sovereignty of the states by providing each state with autonomy in determining whether and to what extent certain federal programs or mandates would apply in that state.

To Select State Sovereignty.

**HB 3707** (By Christian), Relating to the waiting period for certain spouses filing for divorce on the grounds of insupportability.

To Judiciary and Civil Jurisprudence.

**HB 3708** (By Hochberg), Relating to the Early High School Graduation Scholarship Program.

To Public Education.

**HB 3709** (By Hochberg), Relating to reducing costs in public school extracurricular activities.

To Public Education.

**HB 3710** (By Lewis), Relating to filling vacancies in appellate judicial offices by appointment, partisan elections for all judicial offices, and nonpartisan elections for the retention or rejection for all judicial offices.

To Judiciary and Civil Jurisprudence.

**HB 3711** (By D. Howard), Relating to requirements for the coordinated admission program at The University of Texas at Austin.

To Higher Education.

**HB 3712** (By Giddings), Relating to the reporting of information by a school district relating to certain offenses committed by certain students.

To Public Education.

**HB 3713** (By Giddings), Relating to a grant program to promote good citizenship.

To Public Education.

**HB 3714** (By McClendon), Relating to the regulation of controlled substances and the establishment of an electronic system for monitoring controlled substances; providing criminal penalties.

To Public Health.

**HB 3715** (By Workman), Relating to standards applicable to propane distribution system retailers.

To Energy Resources.

**HB 3716** (By Guillen), Relating to the evaluation of applications for certain financial assistance administered by the Texas Department of Housing and Community Affairs.

To Urban Affairs.

**HB 3717** (By Guillen), Relating to fees for emergency first response service provided by certain counties.

To Border and Intergovernmental Affairs.

**HB 3718** (By Gutierrez), Relating to the sale of real property.

To Business and Industry.

**HB 3719** (By Gutierrez), Relating to truancy and the jurisdiction of justice courts

To Public Education.

**HB 3720** (By Turner), Relating to the transfer of housing funds from the Texas Department of Housing and Community Affairs to the Texas Veterans Commission.

To Defense and Veterans' Affairs.

**HB 3721** (By Patrick), Relating to formula funding for certain semester credit hours earned for dual course credit.

To Higher Education.

**HB 3722** (By Guillen), Relating to the boater education program at the parks and wildlife department.

To Culture, Recreation, and Tourism.

**HB 3723** (By Guillen), Relating to optional fees on the registration of a vehicle imposed by a county.

To Transportation.

**HB 3724** (By Guillen), Relating to the Chronic Kidney Disease Task Force

To Public Health.

**HB 3725** (By Guillen), Relating to the preservation and maintenance of the Alamo by the Texas Historical Commission.

To Culture, Recreation, and Tourism.

**HB 3726** (By Guillen), Relating to an annual report of the private entity granted care and custody of the Alamo.

To Culture, Recreation, and Tourism.

**HB 3727** (By Hilderbran), Relating to the computation of the property tax on temporary production aircraft.

To Ways and Means.

**HB 3728** (By Jackson), Relating to the composition of and powers and duties of the Commission on Jail Standards.

To County Affairs.

**HB 3729** (By Martinez), Relating to the expansion of extraterritorial jurisdiction in certain municipalities.

To Land and Resource Management.

**HB 3730** (By Martinez), Relating to the department of transportation's privatization of maintenance contracts.

To Transportation.

**HB 3731** (By Martinez), Relating to the accommodation of bicycles, pedestrians, and mass transit riders on streets and highways.

To Transportation.

**HB 3732** (By Martinez), Relating to the authority of a regional mobility authority to enter into a comprehensive development agreement.

To Transportation.

**HB 3733** (By Martinez), Relating to the creation of Texas Task Force 3 in the Rio Grande Valley.

To Homeland Security and Public Safety.

**HB 3734** (By Martinez), Relating to certain comprehensive development agreements of the Texas Department of Transportation.

To Transportation.

**HB 3735** (By Martinez), Relating to the composition of the Texas Commission on Fire Protection and the disposition of certain fees collected by the commission.

To Urban Affairs.

**HB 3736** (By Martinez), Relating to appointment of a department head of a fire or police department in certain municipalities.

To Urban Affairs.

**HB 3737** (By Martinez), Relating to broadcasting of athletic competitions sponsored or sanctioned by the University Interscholastic League.

To Public Education.

**HB 3738** (By Martinez), Relating to the designation of the Mid Valley Airport as the disaster relief headquarters for the Rio Grande Valley.

To Homeland Security and Public Safety.

**HB 3739** (By Morrison), Relating to exempting the sale of certain property used for research and development from the sales tax.

To Ways and Means.

**HB 3740** (By Guillen), Relating to the preservation and maintenance of the Alamo and the financial accountability and transparency of persons granted care and custody over certain historic state real properties.

To Culture, Recreation, and Tourism.

**HB 3741** (By Brown), Relating to an intercollegiate athletics fee at Texas A&M University.

To Higher Education.

**HB 3742** (By Schwertner), Relating to the environmental review of certain transportation projects by the Texas Department of Transportation

To Transportation.

**HB 3743** (By Workman), Relating to the rights, powers, functions, and duties of the West Travis County Municipal Utility District No. 5.

To Natural Resources.

**HB 3744** (By V. Gonzales), Relating to the reimbursement methodology used for certain services provided to Medicaid recipients.

To Public Health.

**HB 3745** (By Eiland), Relating to the participation of certain retirees under the proportionate retirement program in the Texas Public School Employees Group Benefits Program.

To Pensions, Investments, and Financial Services.

**HB 3746** (By Frullo), Relating to providing resources designed to combat crimes against children, especially crimes regarding child exploitation and child pornography trafficking involving the Internet.

To Criminal Jurisprudence.

**HB 3747** (By McClendon), Relating to the selection of certain members of the board of trustees of the Teacher Retirement System of Texas.

To Pensions, Investments, and Financial Services.

**HB 3748** (By Phillips), Relating to creating the division of forensic services; abolishing the Texas Forensic Science Commission and transferring certain duties of the commission and the Department of Public Safety to the division of forensic services.

To Homeland Security and Public Safety.

**HB 3749** (By Oliveira), Relating to establishing certain rights of an owner of the surface estate in land who does not own any interest in the mineral estate in the land in connection with the exploration for and production of the minerals.

To Energy Resources.

**HB 3750** (By Dutton), Relating to the waiver of sovereign immunity of a school district for certain claims arising from the provision of community education child care services.

To Judiciary and Civil Jurisprudence.

**HB 3751** (By Harper-Brown), Relating to the presiding officers of the early voting ballot board and a recount committee used in certain elections.

To Elections.

**HB 3752** (By Harper-Brown), Relating to a financial institution's action regarding certain withdrawals and deposits.

To Pensions, Investments, and Financial Services.

**HB 3753** (By P. King), Relating to the employment of physicians and other staff by certain municipal hospital authorities.

To Urban Affairs.

**HB 3754** (By Hilderbran), Relating to the powers and duties of the Office of Public Utility Counsel.

To State Affairs.

**HB 3755** (By Cook), Relating to management of certain metropolitan rapid transit authorities.

To Transportation.

**HB 3756** (By Carter), Relating to imposing liens for labor and materials provided by interior designers.

To Business and Industry.

**HB 3757** (By Callegari), Relating to the coordination of rural and small community initiatives.

To Economic and Small Business Development.

**HB 3758** (By Giddings), Relating to the issuance of citations to certain public school students on school property during regular school hours or on a vehicle owned or operated by a county or independent school district.

To Public Education.

**HB 3759** (By White), Relating to the criminal offenses for which and the circumstances under which certain communication devices may be detected and communications may be intercepted.

To Criminal Jurisprudence.

**HB 3760** (By Oliveira), Relating to home loans that are not federally related mortgage loans; providing civil penalties.

To Pensions, Investments, and Financial Services.

**HB 3761** (By Marquez), Relating to the treatment of and services provided to certain inmates in the custody of the Texas Department of Criminal Justice, to the provision of medical care to inmates in the custody of the department, to the release of inmates on parole and other forms of supervised release, and to certain other matters affecting the department.

To Corrections.

**HB 3762** (By Marquez), Relating to creating a transparent and deliberative process by which execution procedures are determined.

To Corrections.

**HB 3763** (By Marquez), Relating to the release of inmates in the custody of the Texas Department of Criminal Justice on parole or other forms of supervised release.

To Corrections.

**HB 3764** (By Marquez), Relating to the policies of the Texas Department of Criminal Justice regarding the use of, and treatment of inmates confined in, administrative segregation.

To Corrections.

**HB 3765** (By Pitts), Relating to the date on which certain payments are made by the state under the Foundation School Program.

To Appropriations.

**HB 3766** (By Pitts), Relating to the use of proceeds from a county jail's commissary operation.

To Appropriations.

**HB 3767** (By Pitts), Relating to the exemption from the sales and use tax for tangible personal property or a taxable service that is resold or otherwise transferred.

To Appropriations.

**HB 3768** (By Peña), Relating to a lien on a cause of action or claim of an individual who receives emergency medical services in certain counties.

To Judiciary and Civil Jurisprudence.

**HB 3769** (By Smithee), Relating to allowing driver education courses to be delivered by course providers.

To Public Education.

**HB 3770** (By Burkett), Relating to unstructured activity requirements for public elementary school students.

To Public Education.

**HB 3771** (By Harper-Brown), Relating to the authority of the Texas Department of Transportation to approve safety standards for high-speed rail; authorizing a fee.

To Transportation.

**HB 3772** (By Pitts), Relating to tax records.

To Appropriations.

**HB 3773** (By Pitts), Relating to the duties of the comptroller of public accounts to audit the Office of Court Administration's Collection Improvement Program.

To Appropriations.

**HB 3774** (By Pitts), Relating to the administration, collection, enforcement of various taxes and fees; providing penalties.

To Appropriations.

**HB 3775** (By Guillen), Relating to deer breeder operations; providing penalties.

To Culture, Recreation, and Tourism.

**HB 3776** (By Guillen), Relating to deer identification and deer breeder operations.

To Culture, Recreation, and Tourism.

**HB 3777** (By Gallego), Relating to collection, storage, and distribution of criminal history record information; providing penalties.

To Criminal Jurisprudence.

**HB 3778** (By Guillen), Relating to deer removal, destruction, and deer breeder operations; providing penalties.

To Culture, Recreation, and Tourism.

**HB 3779** (By Guillen), Relating to licensing of deer breeder operations; providing penalties.

To Culture, Recreation, and Tourism.

**HB 3780** (By Alonzo), Relating to compliance with rules, bylaws, and written policies adopted by a school district's board of trustees.

To Public Education.

**HB 3781** (By Naishtat), Relating to the maintenance by certain hospitals of records regarding certain uncompensated care costs.

To Public Health.

**HB 3782** (By Guillen), Relating to deer breeder operations; providing penalties.

To Culture, Recreation, and Tourism.

**HB 3783** (By Callegari), Relating to cost-saving and efficiency in government.

To Public Education.

**HB 3784** (By Callegari), Relating to the ethics and financial disclosure requirements and audits of certain governmental bodies.

To Government Efficiency and Reform.

**HB 3785** (By Callegari), Relating to a tax exemption for inactive oil and gas wells.

To Ways and Means.

**HB 3786** (By Craddick), Relating to the requirements for certain extensions of credit to consumers.

To Pensions, Investments, and Financial Services.

**HB 3787** (By Allen), Relating to the salary paid to certain professional employees of public schools.

To Public Education.

**HB 3788** (By Marquez), Relating to the authority of a county civil service commission to administer oaths and issue subpoenas; providing a penalty.

To County Affairs.

**HB 3789** (By Phillips), Relating to the development of toll projects through public-private partnerships.

To Transportation.

**HB 3790** (By Pitts), Relating to state fiscal matters.

To Appropriations.

**HB 3791** (By Pitts), Relating to the interest on certain tax refunds or credits.

To Appropriations.

**HB 3792** (By Burnam), Relating to municipal authority to regulate gas pipelines located within the municipality.

To Energy Resources.

**HB 3793** (By Phillips), Relating to the permissible uses of the state highway fund.

To Ways and Means.

**HB 3794** (By Burkett), Relating to disputes under insurance policies.

To Insurance.

**HB 3795** (By Elkins), Relating to authorized investments for governmental entities.

To Pensions, Investments, and Financial Services.

**HB 3796** (By Gallego), Relating to the composition of certain judicial districts.

To Judiciary and Civil Jurisprudence.

**HB 3797** (By Gallego), Relating to the validation of the creation, operation, and dissolution of, and certain acts related to, a venue project.

To Ways and Means.

**HB 3798** (By Martinez Fischer), Relating to the franchise tax, franchise tax rates and computation; alternative revenue sources and spending priorities for this state; certain taxes affecting businesses; making an appropriation; providing penalties.

To Ways and Means.

**HB 3799** (By S. Miller), Relating to timely filing of surplus lines policy; providing penalties.

To Insurance.

**HB 3800** (By Paxton), Relating to the licensing and regulation of professional fitness trainers; providing a penalty.

To Licensing and Administrative Procedures.

**HB 3801** (By S. Davis), Relating to the exception of certain personal information from disclosure under the public information law.

To State Affairs.

**HB 3802** (By S. Davis), Relating to liability of certain public utilities that allow recreational use of land that the public utility owns, occupies, or leases.

To Judiciary and Civil Jurisprudence.

**HB 3803** (By Phillips), Relating to the creation of the Cottonwood Municipal Utility District No. 2 of Grayson County; providing authority to impose a tax and issue bonds; granting a limited power of eminent domain.

To Natural Resources.

**HB 3804** (By Gallego), Relating to the creation of the Lajitas Utility District No. 1 of Brewster County; providing authority to impose taxes and issue bonds; granting a limited power of eminent domain.

To Natural Resources.

**HB 3805** (By Morrison), Relating to director elections and powers of the Texana Groundwater Conservation District.

To Natural Resources.

**HB 3806** (By Hardcastle), Relating to the authority of the board of directors of the Haskell County Hospital District to employ health care providers.

To County Affairs.

**HB 3807** (By Woolley), Relating to the option of providing electronic recordings of proceedings in the municipal court of record for the City of Houston.

To Judiciary and Civil Jurisprudence.

**HB 3808** (By T. King), Relating to fishing with certain archery equipment in certain counties.

To Culture, Recreation, and Tourism.

**HB 3809** (By Hardcastle), Relating to the authority of the board of directors of the Muenster Hospital District to employ physicians and other health care providers.

To County Affairs.

**HJR 12** (By Larson), Proposing a constitutional amendment providing that a member of the legislature or person holding a statewide elective office automatically vacates office on announcing a candidacy or becoming a candidate for another elective office before the final full year of the person's term of office.

To State Affairs.

**HJR 13** (By Legler), Proposing a constitutional amendment authorizing garnishment of wages for the recovery of fraudulently obtained unemployment benefits or of taxes or fees owed to the state.

To Economic and Small Business Development.

**HJR 14** (By Veasey), Proposing a constitutional amendment authorizing the legislature to create a social loan program.

To Human Services.

**HJR 15** (By Rodriguez), Proposing a constitutional amendment increasing the rates of taxes imposed on gasoline and diesel fuel, adjusting those rates annually for inflation, and dedicating certain revenue from those taxes to the design, construction, and maintenance of public roadways.

To Ways and Means.

**HJR 129** (By Naishtat), Proposing a constitutional amendment requiring a state senator or state representative to forfeit office on the final conviction of a felony.

To State Affairs.

**HJR 130** (By Branch), Meeting requirements of the United States Department of Education concerning federal student aid by naming private institutions of higher education in the State of Texas that are authorized to operate educational programs beyond secondary education, including programs leading to a degree or certificate.

To Higher Education.

**HJR 131** (By Rodriguez), Proposing a constitutional amendment allowing the expenditure of motor vehicle fuel taxes, registration fees, and federal reimbursement for those revenues for passenger rail, transit, and freight rail.

To Transportation.

**HJR 132** (By Landtroop), Proposing a constitutional amendment relating to the right to life beginning at fertilization.

To State Affairs.

**HJR 133** (By Gonzalez), Proposing a constitutional amendment authorizing a federally recognized Indian tribe in a county along the Texas-Mexico international border to conduct certain gaming activity on certain tribal lands.

To Licensing and Administrative Procedures.

**HJR 134** (By Oliveira), Proposing a constitutional amendment authorizing a county to regulate land development if approved by a majority vote in a countywide election.

To Land and Resource Management.

**HJR 135** (By Phillips), Proposing a constitutional amendment relating to an individual's or a religious organization's free exercise of religion.

To State Affairs.

**HJR 136** (By Price), Proposing a constitutional amendment providing that a legislator who is absent without excuse for an extended period during a legislative session vacates office and is not counted in determining a quorum of the applicable house of the legislature.

To State Affairs.

**HJR 137** (By Ritter), Proposing constitutional amendments relating to the funding of certain water projects.

To Natural Resources.

**HJR 140** (By Hunter), Proposing a constitutional amendment on the length of legislative terms and number of years a person may serve in the legislature.

To State Affairs.

**HJR 144** (By Raymond), Proposing a constitutional amendment regarding the dedication by general law of revenue of or money received by this state and money held in or deposited to an account or fund inside or outside the state treasury and the authorized expenditure or appropriation of revenue or money dedicated by general law.

To Ways and Means.

**HJR 145** (By Raymond), Proposing a constitutional amendment providing honesty in state taxation.

To Ways and Means.

**HJR 146** (By V. Taylor), Proposing a constitutional amendment to repeal the provision that requires the automatic resignation of certain county, municipal, or district officeholders if they become candidates for another office.

To Elections.

**HJR 147** (By Hamilton), Proposing a constitutional amendment authorizing the legislature to legalize and regulate the conduct of gaming in this state and authorizing the conduct of gaming by certain federally recognized Indian tribes.

To Licensing and Administrative Procedures.

**HJR 148** (By Ritter), Proposing a constitutional amendment relating to county delegation of authority regarding the disposition of county school lands and proceeds of a county permanent school fund.

To Public Education.

**HJR 149** (By Larson), Proposing a constitutional amendment to require the comptroller of public accounts to make a state revenue report after the first year of a state fiscal biennium and the governor to call a special session of the legislature if actual state revenue for that fiscal year was at least five percent less than projected revenue.

To Appropriations.

**HJR 150** (By Kleinschmidt), Proposing a constitutional amendment authorizing the legislature to provide for a four-year term for the chief appraiser of an appraisal district.

To Ways and Means.

**HJR 151** (By Thompson), Proposing a constitutional amendment authorizing the operation of casino games in this state by federally recognized Indian tribes on certain land.

To Licensing and Administrative Procedures.

**HJR 152** (By Thompson), Proposing a constitutional amendment authorizing the operation of casino games in this state by federally recognized Indian tribes on certain land and by licensed operators at horse and greyhound racetracks and licensed locations.

To Licensing and Administrative Procedures.

**HJR 153** (By Villarreal), Proposing a constitutional amendment authorizing the legislature to pass laws relating to junior college districts, including laws for the assessment and collection of taxes by a junior college district without the necessity of an election.

To Higher Education.

**HJR 154** (By Dutton), Proposing a constitutional amendment increasing the number of state senators from 31 to 41.

To State Affairs.

**HJR 155** (By Lewis), Proposing a constitutional amendment for filling vacancies in appellate judicial offices by appointment, for partisan elections for all judicial offices, and for subsequent nonpartisan retention elections for all judicial offices.

To Judiciary and Civil Jurisprudence.

**HJR 156** (By C. Howard), Proposing a constitutional amendment to require that taxation be fair and equal and that the full cash value of property, calculated only when property is purchased, constructed, or exchanged, be used for purposes of ad valorem taxation.

To Ways and Means.

**HJR 157** (By Phillips), Proposing a constitutional amendment limiting the purposes for which revenue from taxes on motor fuels and lubricants may be used.

To Ways and Means.

Pursuant to Rule 1, Section 4 of the House Rules, the chair corrects the referral of the following bills and resolutions:

**HB 16** (By Riddle), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 112** (By Harless), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 186** (By Perry), Relating to requiring a voter to present proof of identification; creating a penalty.

To Elections.

**HB 239** (By Parker), Relating to the offense of paying or receiving certain forms of compensation for facilitating the registration of voters; providing criminal penalties.

To Elections.

**HB 248** (By Chisum), Relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

To Elections.

**HB 250** (By Hilderbran), Relating to requiring a voter to present proof of identification; providing penalties.

To Elections.

**HB 369** (By Hochberg), Relating to procedures concerning verification of certain information submitted in a voter registration application.

To Elections.

**HB 401** (By T. Smith), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 539** (By C. Anderson), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 624** (By Bonnen), Relating to requiring a voter to present proof of identification.

To Elections.

**HB 715** (By Hochberg), Relating to automatic voter registration on issuance or change of a driver's license or identification card by the Department of Public Safety.

To Elections.

**HB 1596** (By Isaac), Relating to documentation acceptable as proof of identification for voting.

To Elections.

**HB 1912** (By Bonnen), Relating to transferring the Texas Department of Rural Affairs to the Office of Rural Affairs within the Department of Agriculture and abolishing the board of the Texas Department of Rural Affairs.

To Government Efficiency and Reform.

## MESSAGES FROM THE SENATE

The following messages from the senate were today received by the house:

**Message No. 1**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Wednesday, March 23, 2011

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**SB 240**                    Huffman
Relating to examination requirements for certain applicants for a license to practice medicine.

**SB 313**                    Seliger
Relating to priority groundwater management areas.

**SB 411**                    Estes
Relating to the amount of wine certain wineries may sell directly to consumers.

**SB 461**                    Williams
Relating to the design and issuance of license plates for United States paratroopers.

**SB 493**                    Fraser
Relating to the idling of motor vehicles.

**SB 576**                    Eltife
Relating to reports filed with the comptroller regarding certain alcoholic beverage sales; providing a penalty.

**SB 777**                    Williams
Relating to re-creating the scholarship trust fund for fifth-year accounting students as a trust fund outside the state treasury.

**SB 832**                    Rodriguez

Relating to voter eligibility and registration in El Paso County Water Improvement District No. 1.

Respectfully,
Patsy Spaw
Secretary of the Senate

**Message No. 2**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Wednesday, March 23, 2011 - 2

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**SB 24**                    Van de Putte
Relating to the prosecution, punishment, and certain criminal and civil consequences of offenses involving or related to the trafficking of persons and to certain protections for victims of those offenses.

**SB 144**                   West
Relating to allowing a person who successfully completes a term of deferred adjudication community supervision to be eligible for a pardon.

**SB 181**                   Shapiro
Relating to the calculation and reporting of water usage by municipalities and water utilities for state water planning and other purposes.

**SB 248**                   Estes
Relating to the regulation of public grain warehouse operators.

**SB 329**                   Watson
Relating to the sale, recovery, and recycling of certain television equipment; providing administrative penalties.

**SB 390**                   Hegar
Relating to the continuing issuance of freshwater fishing stamps by the Parks and Wildlife Department.

**SB 524**                   Hegar
Relating to the issuance of certain permits for the movement of oversize or overweight vehicles.

**SB 801**                   Hegar
Relating to the authority of the seawall commission in Matagorda County to build and maintain recreational facilities near the seawall.

**SJR 9**                    West

Proposing a constitutional amendment authorizing the governor to grant a pardon to a person who successfully completes a term of deferred adjudication community supervision.

Respectfully,
Patsy Spaw
Secretary of the Senate

---

## APPENDIX

---

### STANDING COMMITTEE REPORTS

Favorable reports have been filed by committees as follows:

**March 22**

Appropriations - **HB 4**, **HB 275**

Border and Intergovernmental Affairs - **HB 397**, **HCR 68**

Defense and Veterans' Affairs - **HB 447**

Elections - **HB 174**, **HB 185**, **HB 1570**

Government Efficiency and Reform - **HB 682**

Judiciary and Civil Jurisprudence - **HB 149**, **HB 345**, **HB 372**, **HB 713**

State Affairs - **HB 12**, **HB 197**, **HB 804**

Ways and Means - **HB 645**, **HB 658**, **HB 843**, **HB 1040**

### ENGROSSED

**March 22 - HB 314**

### ENROLLED

**March 22 - HCR 47**

1

TEXAS HOUSE OF REPRESENTATIVES

2011 (82R) SB 14

3/23/11 HOUSE FLOOR DEBATE (EMERGENCY CALENDAR)

Volume 1

Transcribed on April 23, 2012

2

```
 1                     PROCEEDINGS
 2              SPEAKER:  SB14.  Clerk, read the bill.
 3              CLERK:  SB14 by Fraser relating to
 4     requirements to vote, including presenting proof of
 5     identification providing criminal penalties.
 6              SPEAKER:  Chair recognizes Representative
 7     Harless.
 8              MS. HARLESS:  Thank you, Mr. Speaker.
 9     Members, this is the same bill that we discussed on Monday
10     for about 15 minutes.  It's SB14.  It narrowly -- it's a
11     narrowly-designed bill that says you must prove who you
12     say you are when you show up to cast your vote at the
13     polls, and I'm happy to continue this discussion.
14              SPEAKER:  Mr. Walle?
15              MR. WALLE:  Mr. Speaker, I raise a point of
16     order against further consideration of the calender under
17     Rule 6, Section 16.
18              SPEAKER:  Bring your point of argument down
19     front, please.  Mr. Walle raises a point of order under
20     Rule 6, Section 16 on the grounds that the corrected
21     calendar is not properly in order of consideration, it is
22     not eligible for consideration at this time.
23              A similar error occurred in HB1111 during
24     the 79th legislature.  In that case an error was
25     discovered and a new calendar printed and considered after
```

3

1    a two-hour layout.  The chair noted in that case the error

2    in the calendar was corrected and was laid out more than

3    two hours.

4                 The chair finds no violation of the Rule 6,

5    Section 16.  The point of order is respectfully overruled.

6                 MR. GALLEGO:  Mr. Speaker, just a

7    parliamentary inquiry so that I -- if you don't mind --

8    can understand the line of reasoning behind the --

9    Mr. Wally's point of order was that Rule 6, Section 16

10   doesn't provide -- as I read the -- the rule, the rule

11   indicates that deviations from the calendar as posted

12   shall not be permitted except if the committee on

13   calendars shall be authorized to prepare and post not

14   later than two hours before the House convenes a

15   supplemental daily calendar.

16                 So, the two-hour notice under the rules

17   applies to the supplemental daily calendar.  Is that not

18   correct?

19                 SPEAKER:  Mr. Gallego, under Rule 6,

20   Section 16, deviations from the calendar are permitted.

21                 MR. GALLEGO:  Deviations?

22                 SPEAKER:  If they are permitted by the

23   committee on calendars.

24                 MR. GALLEGO:  The sentence reads

25   "Deviations from the calendar as posted shall not be

4

1   permitted except in the case of the supplemental

2   calendar."

3              SPEAKER:  Mr. Gallego, the phrase "except"

4   means there are deviations that are permitted.

5              MR. GALLEGO:  But the exception is listed,

6   is it not, Mr. Speaker?  The exception is the supplemental

7   daily calendar which can be printed two hours before the

8   House convenes?

9              SPEAKER:  Mr. Gallego, there was a printing

10  error in this calendar that was discovered, and it's been

11  corrected.

12             MR. GALLEGO:  The issue, Mr. Speaker, as I

13  understand Mr. Wally's point of order, is that under the

14  rules revised calendars don't exist.  Supplemental

15  calendars exist, and this was not remedied through a

16  supplemental calendar.  It was remedied so that the

17  posting should -- if we're going to do the supplemental

18  calendar and the error and the two-hour notice, then this

19  was not a supplemental calendar, which we all receive on

20  our desks.  In the routine course of the House's business,

21  we receive supplemental calendars.

22             In this instance, we didn't receive a

23  supplemental calendar.  We received a revised calendar,

24  which would seem to indicate that -- I guess the

25  difficulty for me is that you can't have it -- the

1    argument that you can't have it both ways.  If it is a

2    supplemental calendar and there is a two-hour notice and

3    there is a deviation, that's fine.  But if the argument is

4    that it's a revised calendar and all this revised calendar

5    does is take the place of the first one, then seems that

6    that timing should relate back -- the posting of it should

7    relate back, as well.

8                    SPEAKER:  Thank you, Mr. Gallego, for your

9    inquiry.  This is not the first time that a printing error

10   has occurred in our calendars.  On May 15th of 1997, for

11   instance, an error in the printing was corrected under the

12   title "corrected daily House calendar."  On May 20th of

13   1999 a correction was made under the "corrected daily

14   House calendar," May 20th, 1999.  And similarly on

15   Tuesday, July 19th, 2005, the correction was made under

16   a revised daily house calendar.

17                    Mr. Walle, for what purpose?

18                    MR. WALLE:  Mr. Speaker, thank you.  May I

19   request that the exchange between you, sir, Honorable

20   Speaker, and Chairman Gallego be recorded in the journal?

21                    SPEAKER:  Members, you heard the motion.

22   Is there objection?  Chair hears none.  So ordered.

23                    Chair recognizes Representative Harless.

24                    MS. HARLESS:  Thank you, Mr. Speaker,

25   members.  I'm ready to continue the debate or move

6

1    passage, whichever you prefer.

2                    SPEAKER:  Ms. Farrar, for what purpose?

3                    MS. FARRAR:  Mr. Speaker, I raise a point

4    of order under Rule 4, Sections 11 and 12.

5                    SPEAKER:  Bring your point of order down

6    front.

7                    Representative Farrar raised a point of

8    order under Rule 4, Section 11 and 12.  Representative

9    Farrar indicates that the meeting of the calendar

10   committee began at 10:07 and the Capitol was closed and

11   that access to the meeting room may have been denied.  The

12   calendars committee did not begin meeting until 10:07 p.m.

13   The meeting was initially posted for 9:00 p.m.  As noted

14   on the State preservation board website, the hours of the

15   Capitol are normally between 7:00 a.m. and 10:00 p.m. but

16   are extended during legislative sessions, including during

17   House committee meetings.

18                    It appears that the provision of Rule 4,

19   Section 11 were complied with.  The point of order is

20   respectfully overruled.

21                    Representative Farrar, for what purpose?

22                    MS. FARRAR:  Parliamentary inquiry.

23                    SPEAKER:  State your inquiry.

24                    MS. FARRAR:  If the meeting is posted for

25   9:00 o'clock and the public anticipates that we will have

7

1    a committee meeting at that time yet the committee doesn't

2    do its business until 10:07, what is -- how can we assure

3    public access in those situations and how does that make

4    this body look?

5                   SPEAKER:  According the State preservation

6    board website, access to the Capitol was assured during

7    the meeting.

8                   MS. FARRAR:  I know that when I've left

9    this building after 10:00 o'clock, I have to leave through

10   the G level because all the doors are locked.

11                  What is the process for a member of the

12   public to enter the building after 10:00 o'clock when a

13   committee is in session?

14                  SPEAKER:  During extended legislative

15   hours, the method for public access is the Capitol.  It's

16   the same as they access the Capitol during the day, which

17   is the four main entrances.

18                  MS. FARRAR:  Pardon me?  It's before what?

19                  SPEAKER:  The four main entrances.

20                  MS. FARRAR:  But I'm saying to you that

21   those entrances are locked.  I've had to go -- I've tried

22   to leave and had to go down to G before when a committee

23   was in session.  And so, my question is:  What's the

24   process for a member of the public to know which of the

25   six doors to the Capitol and the Capitol extensions are

8

1   open to them?  I mean, how onerous is it?  My concern is

2   that if we're going to have openness and transparency in

3   government but -- but a committee is posted to meet at one

4   time and doesn't conduct their business until the building

5   is actually closed, denying them access, how are we to

6   ensure -- how are we to fulfill our duty to the public to

7   ensure an open and transparent process?

8                    SPEAKER:  Ms. Farrar, the only way that a

9   member of the public can access the Capitol extension is

10  through the four main entrances at any time.

11                   MS. FARRAR:  But I'm -- not to go -- not to

12  run around in a circle, I'm just saying those doors are

13  locked.

14                   Is there a posting system besides the

15  internet because maybe you have a PDA and they are savvy

16  enough to go to the internet and have that access, but for

17  the everyday person that walks up the steps, how are they

18  to know?

19                   SPEAKER:  Ms. Farrar, we'll talk to House

20  administration and see if we can work on that.

21                   Chair recognizes Representative Harless.

22                   MS. HARLESS:  Mr. Speaker, members, I'm

23  open to more conversation or passage.

24                   SPEAKER:  Mr. Martinez-Fischer, for what

25  purpose?

9

1              MR. MARTINEZ-FISCHER:  Is the lady open to

2   some questions?

3              SPEAKER:  Lady yield?

4              MS. HARLESS:  I will.

5              MR. MARTINEZ-FISCHER:  Thank you,

6   representative Harless.  I wanted to resume debate on your

7   bill.  I was looking at it, and I had some questions.  I

8   want to direct you to Page 11 of Senate Bill 14 so that we

9   can talk about it.

10              MS. HARLESS:  Yes, sir.

11              MR. MARTINEZ-FISCHER:  Could you explain to

12   me?  I'm looking at Section 15 and the area that relates

13   to provisional ballots, and I wanted to understand some of

14   the requirements on this affidavit, specifically at

15   Page 11, Line 6.

16              MS. HARLESS:  This bill allows for someone

17   that doesn't have one of the prescribed forms of photo ID

18   to -- that show up to vote and don't have it to cast a

19   provisional ballot.

20              MR. MARTINEZ-FISCHER:  Okay.  And some of

21   these requirements for the provisional ballot, it now

22   requires a printing on the envelope in which the

23   provisional ballot is voted by the person may be placed

24   and has to include certain language, and I notice that we

25   went from a "shall" standard to a "must" standard and I

1    wanted to know why we did that.

2              MS. HARLESS:  The purpose of the

3    provisional ballot is if someone shows up without one of

4    the forms of ID, they can cast a ballot and come back in

5    six days and prove they are who they say they are and

6    their ballot will be cast -- will be counted.

7              MR. MARTINEZ-FISCHER:  But why are we

8    changing the standard from "shall be printed" on this

9    envelope to "must be printed" on the envelope?  What's --

10   what's the difference?

11             MS. HARLESS:  The only thing that we're

12   changing is that when a person shows up to cast a vote in

13   person, they show one of the prescribed forms of photo ID.

14   That's what this bill is changing.

15             MR. MARTINEZ-FISCHER:  But at Line 7 on

16   Page 11 you have taken the word "shall" and it's been

17   struck through and you've replaced it with the word

18   "must," and I'm trying to figure out what's the difference

19   between "must" and "shall."

20             MS. HARLESS:  We want to make sure that

21   every person that shows up to the polls that did not bring

22   their form of ID has an opportunity to cast a ballot.  We

23   want everyone to have access to vote.  And if they do not

24   have this ID, they cast a provisional ballot and within

25   six days they can show up and show their ID and their

1    ballot will be counted.

2              MR. MARTINEZ-FISCHER:  All right.  And so,

3    aside from that, though -- I mean, you have the

4    provisional balloting and you let somebody vote.  Then it

5    says there has to be a form for an affidavit that's

6    required by this section and it must be printed on an

7    envelope in which the provisional ballot voted by that

8    person may be placed and then must include other things.

9              And so, we're not saying that it shall be

10   printed on the envelope.  We're saying it must be printed

11   on the envelope.  I guess are we being even clearer,

12   setting a much clearer standard, a -- you know, "shall" is

13   not enough.  We need to tell them that they must do this?

14             MS. HARLESS:  We are doing everything in

15   our power to make sure that everybody shows up to vote,

16   their vote is counted.

17             MR. MARTINEZ-FISCHER:  And so, you think

18   "must" is -- in order to effectuate that, you felt that

19   you had to use a much stronger term and that "shall"

20   didn't get us there but "must" makes it pretty clear that

21   there is no choice?

22             MS. HARLESS:   I think every person that

23   shows up with their photo ID verifying who they are has

24   the right to vote and, if they don't have their ID, they

25   can cast a provisional ballot and those will be counted if

12

1    they show their identification within six days.

2                    MR. MARTINEZ-FISCHER:  Now, under the

3    current law once -- once there is a provisional ballot

4    there is the Early Vote Board; is that correct?

5                    MS. HARLESS:  There is a board that the

6    provisional ballots go to.

7                    MR. MARTINEZ-FISCHER:  What is the name of

8    that board?  Do you know?

9                    MS. HARLESS:  The Early Voting Election

10   Board or --

11                   MR. MARTINEZ-FISCHER:  The Early Voting

12   Ballot Board?  Is that --

13                   MS. HARLESS:  That's correct.

14                   MR. MARTINEZ-FISCHER:  When it comes to

15   provisional ballots, the Early Voting Ballot Board, they

16   have always had the discretion to accept provisional

17   ballots.

18                    Is that your understanding of today's law?

19                   MS. HARLESS:  This bill is about showing

20   who you are when you go to vote, and that's -- that's very

21   simple.  It's very narrow.  It's crafted so that you have

22   to show a photo ID.

23                   MR. MARTINEZ-FISCHER:  Okay.  This is not

24   about showing an ID.  This is about voting a provisional

25   ballot.

13

1          MS. HARLESS:  This is about if you do not

2    have an ID, you have an opportunity to cast a provisional

3    ballot.

4          MR. MARTINEZ-FISCHER:  Right, okay.  And as

5    the law stands right now, the Early Vote Ballot Board

6    retains the discretion to accept a provisional ballot.  Is

7    that true or false?

8          MS. HARLESS:  As the law stands right now,

9    you don't have to show a photo ID when you show up to vote

10   in person.  This bill requires you to show a photo ID when

11   you show up to vote at the polls.

12         MR. MARTINEZ-FISCHER:  I know what the bill

13   does, but the specifics of the bill insofar as relates to

14   provisional ballots -- I'll ask you again.

15         Under current law -- under today's law, not

16   your bill -- under the law today, if somebody votes a

17   provisional ballot does the Early Vote Ballot Board have

18   the discretion to accept that vote?

19         MS. HARLESS:  Mr. Martinez-Fischer, if you

20   want to talk about all the different provisions of the

21   election code, this is not the venue.  This bill is about

22   a photo ID when you show up to vote.  If you do not have a

23   photo ID, you have an opportunity to cast your ballot and

24   within six days bring your identification to the registrar

25   and your vote will be counted.  That is the basis of this

14

1    bill.  That's what I'm going to discuss.

2              MR. MARTINEZ-FISCHER:  Well, I appreciate

3    that direction.  And so, since you want to talk about your

4    bill, let's go to Page 11, Line 27, and let me ask the

5    question a third time since this is your bill and I

6    presume that the lady has read her bill and I presume that

7    the lady is prepared to debate her bill.  If the lady is

8    not prepared to debate her bill, then I will let you yield

9    to somebody who is.

10             Let me ask this a third time.  Under

11   today's law at Page 11, Line 27, it says, "A provisional

12   ballot may be accepted by the Early Vote Ballot Board,"

13   and I want to make sure that I am clear that that is the

14   state of the law today.

15             MS. HARLESS:  You've answered your own

16   question.

17             MR. MARTINEZ-FISCHER:  So, is that an

18   affirmation?

19             MS. HARLESS:  I am here to talk about the

20   requirements to show up to vote when you want to cast an

21   in-person ballot.  If you don't, you have the opportunity

22   to cast a provisional.  Yes, sir, I've read my bill.  I

23   think we are not following the direction that the members

24   want to discuss on the types of ID.  I'm welcome -- I'm

25   willing to let you talk as long as you want.

15

1          MR. MARTINEZ-FISCHER:  I appreciate that,

2     but fortunately for me I have that certificate of election

3     that allows me to do that without your permission, but

4     thank you.

5          Okay.  So, going back to your bill, I want

6     to know why on Page 11 at Line 27 you have now taken away

7     the discretion of the Early Vote Ballot Board by not

8     letting them have the option to decide a provisional

9     ballot should be counted but you are mandating that they

10    are counted.  We're going to may to shall, and I want you

11    to explain that to me.  Why are we doing that?  What is

12    the importance of taking away the discretion from the

13    Early Vote Ballot Board?

14          MS. HARLESS:  Because we have spelled out

15    specifically what they need to have when they show up to

16    vote.

17          MR. MARTINEZ-FISCHER:  So, now we're saying

18    under SB14 if you do all these things and you comply with

19    all the sections on Page 11, the Early Vote Ballot Board

20    no longer has the discretion to accept a provisional

21    ballot?  They are now required to take that provisional

22    ballot.  Is that what you're saying?

23          MS. HARLESS:  That's what the bill says.

24          MR. MARTINEZ-FISCHER:  Okay.  Thank you.

25    Mr. Speaker?

16

1          SPEAKER:  Mr. Martinez-Fischer, for what

2     purpose?

3          MR. MARTINEZ-FISCHER:  I would like to

4     raise a point of order under Rule 4, Section 32C and F.

5          SPEAKER:  Bring your point down front.

6     Repeal of order under Rule 4, Section 32, the bill

7     analysis fails to discuss changes on Page 11, Line 7, and

8     Page 11, Line 27 of the bill.  Specifically Representative

9     Martinez-Fischer argues that the bill analysis fails to

10    compare the bill to existing law and fails to list

11    provision on Page 11, Line 27, as an express repeal.

12          The chair has reviewed the bill and the

13    bill analysis.  The chair finds that the language of the

14    bill analysis is not materially or (inaudible) to this

15    meeting and that the bill analysis, which is a summary,

16    accurately reflects the substance of the bill.  The point

17    of order is respectfully overruled.

18          Mr. Martinez-Fischer, for what purpose?

19          MR. MARTINEZ-FISCHER:  Thank you,

20    Mr. Speaker.  Parliamentary inquiry.

21          SPEAKER:  State your inquiry.

22          MR. MARTINEZ-FISCHER:  The last part of

23    your ruling, you made reference to the bill analysis being

24    a summary.

25          Did I hear that right?

17

1                   SPEAKER:  That's correct.

2                   MR. MARTINEZ-FISCHER:  Could you please

3     repeat that last line?  Would you indulge me?  I couldn't

4     hear back here.

5                   SPEAKER:  The bill analysis, which is a

6     summary, accurately reflects the substance of the bill.

7                   MR. MARTINEZ-FISCHER:  Mr. Speaker,

8     parliamentary inquiry.

9                   SPEAKER:  State your inquiry.

10                   MR. MARTINEZ-FISCHER:  As I read Rule 4,

11    Section 32C, I don't see -- I don't see in the rules where

12    members are given the opportunity to summarize their bill

13    in the bill analysis.  In fact, as I read Section 4, Rule

14    32C, it says that the bill analysis must include, in

15    summary or section-by-section form, a detailed analysis.

16    Not a summary analysis, a detailed analysis.

17                   And so, did the chair misunderstand me when

18    I made that argument?  Is the chair under the impression

19    that I am arguing that there should be a lesser standard

20    than a detailed analysis?  Because I didn't argue that

21    there should be a summary analysis.  In fact, the rules

22    are contrary to any member providing a summary analysis.

23    It says it must be a detailed.  It can be in a summary or

24    section-by-section form, but the analysis must be

25    detailed.

18

1                    And is the chair in agreement with that

2      reading of the rule as I see it?

3                    SPEAKER:  The chair has applied precedence

4      from prior sessions.

5                         MR. MARTINEZ-FISCHER:  And what precedence

6      specifically would that be, Mr. Chairman -- Mr. Speaker?

7                    SPEAKER:  Our precedent,

8      Mr. Martinez-Fischer, is a precedent from the 81st

9      session.

10                        MR. MARTINEZ-FISCHER:  The 81st session?

11     Would the chair be inclined as to tell me what day of the

12     journal that was?

13                   SPEAKER:  It was May 20th, '09.

14                        MR. MARTINEZ-FISCHER:  May 20th, '09?

15     Okay.  Now, in the chair's ruling --

16                   SPEAKER:  It was on -- it was on Senate

17     Bill 865.

18                        MR. MARTINEZ-FISCHER:  Thank you,

19     Mr. Speaker.  Senate Bill 865?  Thank you, Mr. Speaker.

20                        In the chair's ruling, in effect, the chair

21     is saying that if we -- if there is an express

22     strike-through on a bill that changes the current state of

23     the law there is no requirement under Rule 4, Section 32C

24     or Rule 4, Section 32C3 that requires a member to notify

25     the body and the general public that we are expressly

19

1    changing a legal standard?

2              SPEAKER:  Rule 4, Section 32, Subsection C,

3    Subsection 2 requires a list of provisions expressly --

4    expressly repealed by the bill of resolution.

5              MR. MARTINEZ-FISCHER:  So, the chair's

6    interpretation, which I would deem to be narrow -- is it

7    the chair's interpretation that what triggers an express

8    statement of a repeal of a law is the words in a bill, a

9    resolution, that says this article or this section is

10   expressly repealed?

11             Is that how the chair interprets that rule

12   for Section 32C2?

13             SPEAKER:  The chair determines that -- just

14   a moment, Mr. Martinez-Fischer.

15             Mr. Martinez-Fischer, the point of order

16   that you raised did not point us to a section of the law

17   that contained an express repeal.

18             MR. MARTINEZ-FISCHER:  The chair may have

19   misunderstood my point of order.  Should I re-assert it,

20   Mr. Chairman?  Because I -- I crystal clearly remember

21   arguing to the chair that when you take two sections of

22   the bill and take us from a discretionary standard and

23   change it to a mandatory standard, the strike-through of

24   the discretionary is a repeal of a statute -- in fact,

25   guts the statute.  And then I argued, secondarily, that

1    when you go from a "shall" standard to a "must" standard

2    you again are expressly repealing a statute by a

3    strike-through and, in fact, you are gutting the existing

4    law.

5              I offered that, and if the chair did not

6    analyze the point of order under that analysis, then I

7    would like to raise that point of order again.

8              SPEAKER:  Mr. Martinez-Fischer, the chair

9    has already ruled on the point of order.  You're welcome

10   to lodge another point, and I will request -- the chair

11   would request that the exchange here be entered in the

12   journal.

13             MR. MARTINEZ-FISCHER:  I'm sorry?  What

14   about the last part?

15             SPEAKER:  We would request that the

16   exchange between you and the chair be reduced to writing

17   and entered in the journal.

18             MR. MARTINEZ-FISCHER:  And so -- but I

19   don't have to raise another point of order, but the chair

20   has suggested that that portion of that argument was not

21   considered by the chair because the chair was unaware that

22   that objection was being raised.  And if the chair has

23   properly considered that, I would like the chair to tell

24   me there would be no need to raise an additional point of

25   order.

1          SPEAKER:  Mr. Martinez-Fischer, the chair

2     appreciates your arguments.  The chair respectfully has

3     overruled the point of order.

4          MR. MARTINEZ-FISCHER:  I understand that.

5     On what grounds?

6          SPEAKER:  That Rule 4, Section 32C has been

7     complied with.

8          MR. MARTINEZ-FISCHER:  In all aspects?

9          SPEAKER:  And that the bill analysis is not

10    substantially or materially misleading.

11         MR. MARTINEZ-FISCHER:  With regard to Rule

12    34, Section 32C2, a repeal of a statute that's not

13    explained in a detailed bill analysis, that's part of your

14    ruling, as well?

15         SPEAKER:  Yes, sir, it is.

16         MR. MARTINEZ-FISCHER:  Thank you,

17    Mr. Speaker.  Parliamentary inquiry.

18         SPEAKER:  State your inquiry.

19         MR. MARTINEZ-FISCHER:  What is the process

20    by which if a member of this body wanted to amend the

21    rules once they are in session?

22         SPEAKER:  You could file a resolution to be

23    referred to the appropriate committee.

24         MR. MARTINEZ-FISCHER:  And that committee

25    would be?

22

1          SPEAKER:  Generally in the past those items

2     have been referred to the committee of rules and

3     resolutions.

4          MR. MARTINEZ-FISCHER:  And we have -- so,

5     the committee of rules and resolutions?  Is that what you

6     said?

7          SPEAKER:  Yes, sir.  In the past, that's

8     been the case.

9          MR. MARTINEZ-FISCHER:  So, parliamentary

10    inquiry.

11         SPEAKER:  State your inquiry.

12         MR. MARTINEZ-FISCHER:  Would a -- would a

13    permission to introduce be in order to effectuate that now

14    that we're past the day to introduce the bills, or would

15    that be considered a resolution?

16         SPEAKER:  That would be considered a

17    resolution.

18         MR. MARTINEZ-FISCHER:  And, Mr. Speaker,

19    further inquiry.  Would it be a requirement that this --

20    that a -- that a request to just strike through certain

21    parts of the rules since they are really not -- under your

22    prior ruling, if we just strike through the rules and

23    don't say that they are expressly repealed, we don't have

24    to explain that in an analysis, and we have to explain

25    that in a resolution -- so, in other words, if wanted to

23

1    just strike through Rule 4, Section 32C2 since we're not

2    using it, can I just strike it through and not have to

3    file a resolution?

4                    SPEAKER:  Mr. Martinez-Fischer, that's a

5    hypothetical question.  I would have to see the resolution

6    before I could respond to that.

7                    MR. MARTINEZ-FISCHER:  Would you recommend

8    that?

9                    SPEAKER:  Not at this time.

10                   MR. MARTINEZ-FISCHER:  Thank you, sir.

11                   SPEAKER:  Mr. Coleman, for what purpose?

12                   MR. COLEMAN:  Mr. Speaker, I know we're

13   having fun learning all about the rules of the House and

14   we should follow the rules.  So, I raise a point of order

15   against further consideration of any substantive to Senate

16   Bill No. 14 under Rule 4, Section 32C of the Rules of the

17   House on the grounds that the bill analysis substantially

18   and materially misleads.

19                   SPEAKER:  Bring your point of order down

20   front.  Mr. Coleman, specifically the provision relating

21   to the use of passports found on Page 1 of the bill

22   analysis is not sufficiently detailed enough continuously

23   through the bill analysis.

24                   The chair has reviewed the bill and the

25   bill analysis and finds that the provision complained of

24

1    relating to passports is contained in the bill analysis

2    and is not materially or substantially misleading.

3    Accordingly, the point of order is respectfully overruled.

4                    House of Representative Harless?

5                    MS. HARLESS:  Mr. Speaker, member's willing

6    to continue the debate.

7                    SPEAKER:  Mr. Martinez-Fischer, for what

8    purpose?

9                    MR. MARTINEZ-FISCHER:  Will the lady yield

10   for some questions, please?

11                   SPEAKER:  Lady yield?

12                   MS. HARLESS:  Yes, sir.

13                   MR. MARTINEZ-FISCHER:  I wanted to look at

14   your bill -- and I'm on Page 13 of your bill because I

15   want to debate your bill, and I'm looking at the section

16   beginning at Line 18, Section 20 of your bill, and in that

17   section it looks like we're describing the fees that it

18   costs to get a personal identification; is that correct?

19                   MS. HARLESS:  I think the language is clear

20   in the bill.

21                   MR. MARTINEZ-FISCHER:  Okay.  Well, I'm a

22   little dyslexic.  So, could you -- is that what that's

23   about?

24                   MS. HARLESS:  Would you like me to read

25   what it says?

House Floor Debate - Volume 1                    March 23, 2011

25

1           MR. MARTINEZ-FISCHER:  Yes, please.

2           MS. HARLESS:  "Except as provided by

3   Section D, the fee for the personal identification

4   certificate is," and it lists the amounts.

5           MR. MARTINEZ-FISCHER:  Okay.  Then below

6   that at Line 27, Sub D, we're going to -- we're going to

7   reduce the fee from $20 to zero.  Is that -- is that how

8   you see that?

9           MS. HARLESS:  I think it's clear.  It says

10  that the department may not collect a fee for a personal

11  identification certificate issued to a person who states

12  that the person is obtaining a personal identification

13  certificate for the purpose of satisfying Section 63.001

14  B.

15          MR. MARTINEZ-FISCHER:  So, the reduction is

16  we're not going to charge you so that you can vote.

17              Is that the intent?

18          MS. HARLESS:  It's clear that if you do not

19  have an identification certificate as spelled out in the

20  right to vote that the department will provide you one

21  free.

22          MR. MARTINEZ-FISCHER:  So, if you and I go

23  to DPS -- I presume that's where these IDs are going to

24  come from -- and I walk in and I'm going to replace mine

25  or I lost mine and you're going to get one so that you can

26

1    vote, which is the only option, I'm imagining that we're

2    going to fill out the same form, we're going to stand in

3    the same line, and we're going to get processed by clerks

4    that are on the same side of their desk.  And what you're

5    saying is the only difference is under this bill I would

6    have to pay the $15 and you don't have to pay -- yours

7    will be reduced to zero because the law that we're trying

8    to pass will allow you to have this for free so that you

9    can use it as your ID to vote?

10                   MS. HARLESS:  Is that a question or a

11   statement?

12                   MR. MARTINEZ-FISCHER:  It's a question.

13                   MS. HARLESS:  If you do not have one of the

14   forms of ID that it takes to show up and vote, there is a

15   provision in the bill that allows for you to get a free ID

16   for the purpose of voting.

17                   MR. MARTINEZ-FISCHER:  And I guess in the

18   committee testimony or, I guess, in you doing your due

19   diligence, is there a reason why we have to have these

20   reduced -- these free IDs?  Is this a problem?

21                   MS. HARLESS:  Could you say the first part?

22                   MR. MARTINEZ-FISCHER:  In your due

23   diligence or in the committee testimony, I mean, was

24   there -- did something come up that raises the question as

25   to, you know, we should provide a free option for those

27

1    that need an ID so they can vote?  Is this a concern in

2    some of the other states that have done voter ID, or is

3    this something specific to Texas?

4                MS. HARLESS:  We wanted to provide an

5    opportunity for people that don't have one of the approved

6    forms of identification for the purpose of voting.

7                MR. MARTINEZ-FISCHER:  So, as long as

8    somebody walks into the department and says -- if Senate

9    Bill 14 passes and they say, "I don't have an ID.  I need

10   an ID so I can go vote," they are not going to have to pay

11   even a dollar or not even a nickel.  It's absolutely free.

12   No strings attached?

13               MS. HARLESS:  You've asked that three

14   times.  I've answered it three times.  What do you want me

15   to say differently?

16               MR. MARTINEZ-FISCHER:  I just want you to

17   assure me that we don't have a poll tax of any sort or any

18   kind.  I don't want -- I want to make sure that if you're

19   taking the extra step to make an ID free of charge so that

20   somebody can go vote that we're not going to charge

21   anything.  That's what I would like to -- this is -- this

22   is a big deal.

23               MS. HARLESS:  You're correct.

24               MR. MARTINEZ-FISCHER:  So, do you know

25   where the money that is charged for these IDs, do you know

1    where that money goes?

2              MS. HARLESS:  The money that is charged for

3    the free IDs?

4              MR. MARTINEZ-FISCHER:  The IDs that you're

5    going to make free for -- you know, in the instance where

6    I have to pay, when I give my $15, you're going to get

7    yours for free.  Where does my $15 go?  Do you know?

8              MS. HARLESS:  The money that you pay for a

9    free ID or if you're just going in there because you don't

10   have an ID?

11             MR. MARTINEZ-FISCHER:  In our original

12   exchange I had asked -- I had said that I was going in to

13   buy an ID because I needed to renew mine.  You were going

14   in to get the free one.

15             When I hand over my $15 to DPS, do you know

16   where those moneys go?

17             MS. HARLESS:  That has nothing to do with

18   this bill.

19             MR. MARTINEZ-FISCHER:  And it may not, but

20   do you know where this money goes?

21             MS. HARLESS:  It has nothing to do with the

22   bill.

23             MR. MARTINEZ-FISCHER:  So, you think that

24   whether somebody pays for an ID or gets one for free,

25   where the money goes or where the money doesn't go, that

29

1   has nothing to do with this bill?

2              MS. HARLESS:  I think that this bill is

3   about providing a photo ID when you show up to vote and,

4   if for some reason you do not have a driver's license, an

5   ID card, a passport, a citizen's certificate with a

6   picture on it, you have none of those forms of ID and you

7   want to vote, this bill provides where you can have an

8   opportunity to go to the DPS and get a free ID for the

9   purpose of voting.

10             MR. MARTINEZ-FISCHER:  And so I note in the

11  fiscal note there's a 2,024,000-dollar fiscal note.  And

12  as I read in the methodology, I didn't see anywhere in the

13  fiscal note that DPS was going to get reimbursed for the

14  IDs that everybody else would have to pay for.

15             Is there anything in your bill that's going

16  to appropriate moneys to DPS so they can get supplemented

17  for getting the revenues lost?

18             MS. HARLESS:  The fiscal note spells out

19  specifically what the Secretary of State has testified

20  they need the money for in order to --

21             SPEAKER:  Representative Geren raised a

22  point of order that the time has expired.  Point of order

23  is well-taken.  Representative Martinez-Fischer moves for

24  extension of time.  Is there an objection?  Members, any

25  objection to an extension of time?  The chair hears none.

30

1          MR. MARTINEZ-FISCHER:  2,024,000.  I saw an

2    overwhelming amount of money going to radio, TV, direct

3    mail to, I guess, inform the public that we're going to

4    change the -- you know, the voting standards and now

5    require an ID, and I also saw a 24,000-dollar technology

6    impact fee for DPS or whomever so they can update their

7    form and there is a section in the methodology that says

8    that they don't really -- they can't determine how much

9    money the Department of Public Safety is going to lose as

10   a result of these free IDs.

11          And so, is there any appropriation in this

12   bill that replaces the money lost by DPS for the free IDs

13   that will be given out to comply with this bill?

14          MS. HARLESS:  This is not an appropriations

15   bill.  This bill is about photo ID and voters showing up

16   to the polls and proving who they say they are.

17          MR. MARTINEZ-FISCHER:  On the fiscal note,

18   is there any analysis about any amounts of money that

19   would be deprived from the DPS so that we can carry out

20   your legislative intent, which is to provide free IDs to

21   those that don't have them but yet need them in order to

22   vote?

23          MS. HARLESS:  The fiscal note speaks for

24   itself.

25          MR. MARTINEZ-FISCHER:  As the person

31

1    responsible for explaining the bill and its contents, I'm

2    asking you.

3                    MS. HARLESS:  I think the language is clear

4    in the fiscal note.  They spell out specifically what the

5    expenses will be, and it speaks for itself.

6                    MR. MARTINEZ-FISCHER:  What does it say?

7    It's obviously speaking to you.  It's not speaking to me.

8    So, what is it telling you?

9                    MS. HARLESS:  Okay.  Have you read the

10   fiscal note?

11                   MR. MARTINEZ-FISCHER:  I have.

12                   MS. HARLESS:  You have?

13                   MR. MARTINEZ-FISCHER:  But I need the

14   explanation of the author to fully understand it.  You

15   told me your intent was to give free IDs for people who

16   need them so they can vote, and I said okay.  And now I'm

17   asking what is your intent as far as reimbursing the

18   Department of Public Safety for giving out free IDs that

19   you're making them give?  There's obviously a cost.  I

20   mean, if IDs were free, you wouldn't have to charge for

21   them to begin with.

22                   MS. HARLESS:  This bill is not an

23   appropriations bill for DPS.  This bill is about showing

24   photo ID when you go to vote.  It is not a DPS

25   appropriations bill.

32

1            MR. MARTINEZ-FISCHER:  I realize that, but

2    does it take money from DPS?

3            MS. HARLESS:  Excuse me?

4            MR. MARTINEZ-FISCHER:  Does this bill take

5    money from DPS?

6            MS. HARLESS:  The fiscal note speaks for

7    itself.

8            MR. MARTINEZ-FISCHER:  I think the bill

9    says it costs $2 million, not 2 billion.

10           MS. HARLESS:  That's what I said.  I'm

11   sorry.  I've been talking a long time.

12           MR. MARTINEZ-FISCHER:  I've been standing a

13   long time, too.  It's affecting my hearing, as well.  So,

14   okay.  Mr. Speaker?

15           SPEAKER:  For what purpose,

16   Mr. Martinez-Fischer?

17           MR. MARTINEZ-FISCHER:  Well, I haven't had

18   very much luck with the rules, so I thought I would go to

19   the Texas Constitution.  I would like to raise a point of

20   order of Senate Bill 14 under Article 3, Section 49K of

21   our Texas Constitution.

22           SPEAKER:  Bring your point of order down

23   front.  49K of the Texas Constitution.  Specifically,

24   Mr. Martinez-Fischer argues that the bill reduces,

25   rescinds, or repeals authority to collect funds under the

33

1   Texas Mobility Fund.  The chair has reviewed the argument

2   in question raised by Mr. Martinez-Fischer whether the

3   provision is Constitutional.  Whether any infirmity must

4   be addressed in this bill or any bill, the bill is

5   effective unless changed.  Precisely the type of

6   Constitutional points of order traditionally not ruled on.

7                   The chair will continue that tradition, and

8   the point of order is respectfully overruled.

9                   Mr. Martinez-Fischer, for what purpose?

10                  MR. MARTINEZ-FISCHER:  Parliamentary

11  inquiry.

12                  SPEAKER:  State your inquiry.

13                  MR. MARTINEZ-FISCHER:  The chairman's

14  ruling didn't indicate whether they found this point of

15  order to be a substantive challenge or procedural

16  challenge to the Constitution, and I would like to know

17  which it is.

18                  SPEAKER:  Mr. Martinez-Fischer, the chair

19  found that this deals with a substantive Constitutional

20  issue.

21                  MR. MARTINEZ-FISCHER:  Mr. Speaker,

22  parliamentary inquiry.

23                  SPEAKER:  State your inquiry.

24                  MR. MARTINEZ-FISCHER:  Is the

25  Constitutional article that says bills must be read or

34

1     three separate days, is that a procedural or substantive?

2                    SPEAKER:   That is a point of order that has

3     traditionally been ruled on by the chair.

4                    MR. MARTINEZ-FISCHER:   As procedural or

5     substantive?

6                    SPEAKER:   As a discussion of legislative

7     procedure.

8                    MR. MARTINEZ-FISCHER:   Mr. Speaker, further

9     inquiry.  Is the Constitutional provision saying that all

10    bills must pass both houses of legislature, is that

11    procedural or substantive?

12                    SPEAKER:   Again, Mr. Martinez-Fischer, that

13    is a order traditionally ruled on by legislative

14    procedure.

15                    MR. MARTINEZ-FISCHER:   And the

16    Constitutional provisions related to the two subject rule,

17    is that also procedural or is it substantive?

18                    SPEAKER:   Mr. Martinez-Fischer, ruling on

19    Article 3, Section 49K of the Constitution found that that

20    did not fall within the classes of legislative procedure

21    traditionally ruled on by the chair.

22                    MR. MARTINEZ-FISCHER:   With respect to the

23    substantive ruling of this chair, there was not a

24    substitution -- there was not a substantive claim made in

25    the point of order.

35

1           In fact, the point of order was launched

2    because the procedure by which -- the procedure by which a

3    bill comes to the floor that repeals, rescinds, or reduces

4    Constitutionally-dedicated moneys.

5           My argument is procedurally no bill can

6    come to the floor that does that unless they comply with

7    the Constitution, which requires them to explain how they

8    plan to reallocate the moneys they deprive from the

9    chair -- I mean from the Mobility Fund.

10           And so, procedurally that is what my point

11   is.  I'm not arguing the substantive matter as to whether

12   or not the Article 3, Section 49 even applies in this

13   instance.  I am saying -- I am saying that procedurally --

14   just like procedurally that we read bills on three

15   separate days, just like procedurally we pass bills out of

16   the House and Senate, this is also a procedure by which we

17   bring bills to the floor that are in order and not in

18   order.  And my procedural argument is that the bill is not

19   in order because procedurally it deprives the Mobility

20   Fund of its dedicated source of funding and the only way

21   procedurally that we can proceed is if we allocate moneys

22   to replenish what we take.  I'm not arguing as to the

23   substantive merits of that.  I'm arguing that as a

24   necessary step for a bill to be in order.

25           If the chair wants to rule that

36

1    procedurally I am overruled, I will sit down; but my point

2    of order is specific to the procedural component of the

3    Constitutional article and not the substantive

4    interpretation.

5              SPEAKER:  Mr. Martinez-Fischer, we have

6    reviewed and heard your arguments.  We looked for

7    precedent.  There is none, and the point of order is

8    respectfully overruled.  We'll be happy to have this

9    exchange entered into the journal.

10             MR. MARTINEZ-FISCHER:  We can put it on a

11   journal.  We can put it on a billboard, but we are here

12   today.  And just because there isn't precedent, that's not

13   a reason to overrule the point of order.

14             I will say that the reason why you may not

15   find a precedent is that the creation of a Mobility Fund

16   is relatively new, and I think that only in two instances

17   in our Texas Constitution do we place the procedural

18   hurdle of protecting dedicated funds -- one is for the

19   Mobility Fund, and one is for the Rail Relocation Fund.

20   We have an obligation as lawmakers to not submit the full

21   faith and credit of the State of Texas to bondholders when

22   we take money that they are relying on to pay for

23   construction bonds.

24             And so, I'm not arguing the substantive

25   part of that.  I am wanting the chair to make a ruling

37

1    that procedurally you do not have to replenish money that

2    you procedurally take out of the Mobility Fund, not the

3    substantive interpretation of the fund itself.

4                    And so, if the chair wants to put in his

5    ruling we've reviewed the procedural argument and we find

6    procedurally there's nothing there, I will sit down.

7                    SPEAKER:  Mr. Martinez-Fischer, the chair

8    will revise its ruling to include your arguments.  Thank

9    you.

10                    MR. MARTINEZ-FISCHER:  So, that would be,

11   in fact, the chair's ruling?  Will the chair please read

12   that ruling?

13                    SPEAKER:  The point of order is

14   respectfully overruled.

15                    MR. MARTINEZ-FISCHER:  On procedural

16   grounds?

17                    SPEAKER:  The chair has listened

18   respectfully to your arguments and has respectfully

19   overruled.

20                    MR. MARTINEZ-FISCHER:  If the chair is

21   making its ruling on the substantive interpretation,

22   Article 3, Section 49, then the chair has not heard my

23   argument.

24                    My argument is on the procedural hurdle

25   that exists with respect to Article 3, Section 49.  And

House Floor Debate - Volume 1                    March 23, 2011

38

1   so, procedurally, once again, Mr. Speaker, if there is an

2   overruling of the procedural point of order, I will stand

3   by the chair's ruling, but I need to hear that is the

4   chair's ruling.

5                   SPEAKER:  Mr. Martinez-Fischer, the chair

6   overrules on all grounds that you've raised.

7                   MR. MARTINEZ-FISCHER:  Thank you,

8   Mr. Chair.  I would like to have our remarks reduced to

9   writing.

10                   SPEAKER:  (Inaudible), will you yield for

11   questioning?

12                   SPEAKER:  Representative Harless, are you

13   aware that many minority groups (inaudible) protected

14   under the Voting Rights Act would like to show photo ID to

15   vote?  Recently I had a round table meeting in my

16   district.  My voter round table is a bipartisan group made

17   of naturalized citizens and the first generation Texans

18   which moved here from Mexico, China, Taiwan, South Korea,

19   Pakistan, India, (inaudible), and many other regions.

20                   The entire group wanted a more secure

21   voting method in place and strongly supported the voter ID

22   bill.  These are people who work hard to become citizens

23   and to earn the right to vote.  They would like to make

24   sure their vote is protected.  One gentleman even

25   suggested bringing citizenship certificates to the polls.

TX_00212748

39

1               As you say, it is a great honor to be a

2     U.S. citizen and definitely a great privilege to vote and

3     we should protect the integrity of it.

4               Also, because my own background, several

5     Asian-American groups outside my district contacted my

6     office and expressed their concerns with the

7     transliteration of (inaudible) and the possibility of

8     being denied the right to vote.

9               Representative, I have previously discussed

10    this concern with you, and you have more (inaudible) to

11    address included in this bill; is that right?

12              MS. HARLESS:  Yes, Representative.

13              SPEAKER:  Thank you, Representative

14    Harless, for working so hard for this great bill and many

15    people (inaudible) and really appreciate this effort.

16              Thank you very much.

17              MS. HARLESS:  And may I say they are very

18    fortunate to have you representing them because you work

19    really hard to make sure that all of your district is

20    served.

21              MR. ANCHIA:  Mr. Speaker?

22              SPEAKER:  Mr. Anchia, for what purpose?

23              MR. ANCHIA:  Will the gentle lady yield?

24              SPEAKER:  Will the lady yield?

25              MS. HARLESS:  Yes.

40

1                   MR. ANCHIA:  Representative Harless, you

2       said that -- that this bill is about protecting the

3       integrity of elections, correct?

4                   MS. HARLESS:  Yes.

5                   MR. ANCHIA:  Under current law what you're

6       concerned about is the fact that people may show up

7       without photo identification at the polls and conduct

8       voter impersonation; is that correct?

9                   MS. HARLESS:  Not exactly.  Under current

10      law there is no type of identification required that shows

11      a photo, and we don't have any way to guarantee that they

12      are who they say they are.  That's the purpose of this

13      legislation.

14                  MR. ANCHIA:  So, that's why you struck

15      through those -- those pieces of identification that one

16      might list in current law -- that are listed in current

17      law that one might use to vote, correct?  I'm talking

18      about 63.0101, documentation of (inaudible).

19                  You struck official mail addressed to the

20      person by name from a governmental entity, correct?

21                  MS. HARLESS:  This is about photo

22      identification.  We added provisions in the bill that says

23      the type of photo identification that's required to vote.

24                  MR. ANCHIA:  63.0101, you strike the type

25      of ID that is official mail addressed to the person by

41

1    name from a government entity, correct?

2                MS. HARLESS:  Say that one more time.  I'm

3    sorry.

4                MR. ANCHIA:  Did you strike Subsection 6 of

5    63.0101, which was official mail addressed to the person

6    by name from a government entity?

7                MS. HARLESS:  I think the bill is clear.  I

8    think the language is clear.

9                MR. ANCHIA:  Did you strike that language?

10               MS. HARLESS:  I added in provisions that

11   said what you have to show as a photo ID.

12               MR. ANCHIA:  That's not my question.  Would

13   you like to answer my question?

14               MS. HARLESS:  If it's not --

15               SPEAKER:  Mr. (inaudible) raised a point of

16   order that the gentle lady's time is expired.  The point

17   of order is well-taken and sustained.

18               MR. ANCHIA:  Mr. Speaker?

19               SPEAKER:  Mr. Anchia, for what purpose?

20               MR. ANCHIA:  I'd like to make a motion to

21   extend time, please.

22               SPEAKER:  This is an excessive extension of

23   time.  Unanimous consent is required.  Is there objection?

24   Mr. Anchia, there is objection.  The time will not be

25   extended.

                                                                    42

1                    The following amendment -- the clerk will

2       read the amendment.

3                    MR. ANCHIA:  Could we have a record vote on

4       that?

5                    SPEAKER:  All it takes is one member,

6       Mr. Anchia.

7                    MR. ANCHIA:  Could it be placed on the

8       record who that member was that objected to this line of

9       questioning?

10                   SPEAKER:  Yes.  The following amendment.

11      The clerk will read the amendment.

12                   CLERK:  Amendment by Anchia.

13                   SPEAKER:  The chair recognizes Mr. Anchia.

14                   MR. ANCHIA:  Thank you, Mr. Speaker, and

15      members.

16                   What I was trying to talk to the gentle

17      lady about was a major flaw in her bill that I hope

18      everybody can follow along when -- when I walk you through

19      it, but under current law when you vote you actually have

20      to show something.  Right?  You have to show a voter

21      registration certificate, a utility bill, a driver's

22      license.  You have to show up -- if you want your vote to

23      count, you have to show something.

24                   Unfortunately, members, in this bill the

25      author has created a loophole where you don't have to show

43

1    nothing, and I don't think that's what this body wants to

2    vote on today.  So, if you would please look at the bill,

3    I'm going to walk you through that, how this happens,

4    because I think it's important for all of you to pay

5    attention to this.  I wanted the author to answer it, but

6    she just went back to her talking points and I'm not sure

7    she knows it's in there.

8                   So, I would draw you to Section 63.009.

9    That's when a person shows up at the polls without a

10   certificate and with no name on the list, okay?  So, this

11   is what all -- all of you are ostensibly concerned about

12   and you think this bill fixes, but it doesn't.

13                  So, you have a voter who shows up without a

14   certificate who is not on the list.  That person then is

15   directed to 63.001 in the bill to execute an affidavit.

16   So, 63.001, they execute the affidavit.  That's on my Page

17   11.  I don't have numbers on my bill, but if you can

18   follow along, it's in 63.001.  You execute the affidavit

19   at 63.001 in Sub A, the affidavit -- you're actually

20   executing an affidavit that says two things:  That you are

21   a registered voter in the precinct and that you are

22   eligible to vote in that election.  You still haven't

23   shown any ID.  You have just issued an affidavit.

24                  And then from there you're -- after that

25   first affidavit, you can come back under 65.054 on

44

1    Page 13 -- go to 65.054 -- and if you do that within six

2    days, you can execute another affidavit that says one of

3    two things:  You're either indigent or you have a

4    religious objection.  Neither -- you don't have to provide

5    proof of either of those.  You just need to say, "I'm

6    either indigent or have a religious objection."

7              So, if you execute two affidavits, you

8    still have not shown any photo ID.  And it gets worse.

9    Because if you look at the language of the bill under Sub

10   B, it says, "A provisional ballot shall" -- not may --

11   "shall be accepted by the ballot board.

12              SPEAKER:  Mr. Ritter, for what purpose?

13              MR. RITTER:  Will gentleman yield for

14   questions?

15              MR. ANCHIA:  Not at this time, but I'm

16   happy to extend for you, Alan.  Just really quickly.

17              At that point, the ballot board shall

18   accept your ballot and you have not shown any form of

19   photo ID.  Now, I know why these affidavits are in there.

20   I know why they are in there.  The way this is drafted,

21   it's drafted to be Constitutional, but the problem is what

22   makes it Constitutional here also allows a person to never

23   have shown any ID in order to vote, and that's a problem.

24   That is worse than current law.

25              So, when the author comes up and tells me

45

1    that this is about the integrity of elections and this is

2    about making sure people show photo ID, then why has she

3    drafted a bill that allows you to never, ever, ever show

4    any form of ID, simply execute two affidavits and then

5    vote?

6                  I think it's a major flaw in this bill and

7    a major problem and one that I don't think this body

8    should vote for if you care about ballot integrity.

9                  So, ladies and gentlemen -- ladies and

10   gentlemen, I ask -- I ask that you actually read the bill

11   and look at its provisions.

12                 SPEAKER:  Mr. Anchia, would you yield?

13                 MR. ANCHIA:  I will, yes.

14                 MR. RITTER:  I've been listening to what

15   you're saying and I'm looking at the bill and I'm having

16   kind of a little bit of trouble following you.  A little

17   bit.

18                 What I'm reading, does this amendment not

19   just gut this whole bill?

20                 MR. ANCHIA:  That's the enacting clause.

21   What I'm going over right now is -- I couldn't give --

22                 SPEAKER:  Mr. Anchia, the amendment that is

23   up is the enacting policy.

24                 MR. ANCHIA:  I understand.  I understand.

25   The amendment deals with the enacting policy.  What I

46

1    wanted to do is have an opportunity since the chairwoman

2    couldn't answer the questions --

3                   MR. RITTER:  This amendment is -- strikes

4    the enacting clause and guts the whole bill?

5                   MR. ANCHIA:  Right.

6                   MR. RITTER:  Thank you.

7                   MR. ANCHIA:  No, that's right.  And I'm

8    going to pull the amendment down, Chairman Ritter.  What I

9    did want to --

10                   SPEAKER:  Mr. Menendez, for what purpose?

11                   MR. ANCHIA:  What I did want to do is have

12   an opportunity to alert the body that the bill that you're

13   about to vote on -- that you are going to vote on today

14   actually is worse than current law.  It is worse than

15   current law.

16                   SPEAKER:  Mr. Anchia, would you yield to

17   Mr. Menendez?

18                   MR. ANCHIA:  I will.

19                   MR. MENENDEZ:  Representative Anchia, I'm

20   not sure if you read the San Antonio Express newspaper

21   this morning.

22                   MR. ANCHIA:  I did not.

23                   MR. MENENDEZ:  This morning the paper

24   reported that the commissioner's court was debating this

25   very bill and the issue they were debating is what you

47

1    brought up, the issue of the question of you show up to

2    the ballot box without -- and you file this affidavit,

3    they asked the county elections clerk would it increase

4    the amount of work, would it increase your necessity to

5    hire more people for the folks who come back to prove that

6    they have an affidavit?

7               Does that surprise you?

8               MR. ANCHIA:  No, it doesn't surprise me.

9    Look, the bill is inartfully drafted, regrettably, and is

10   also very convoluted.  There's an easier way to deal with

11   this problem and to fix this issue, but clearly the way to

12   fix this issue is not to allow people who show up with

13   nothing -- with nothing to vote.  That's what's contained

14   in this bill.

15              A way to fix this problem is just to create

16   one affidavit that is only available to people who bring

17   in their voter registration certificate and who are on the

18   list.  But in this case you neither have photo ID, you

19   neither have a voter registration certificate, nor are you

20   ever asked to prove your identity.  You simply execute two

21   affidavits without ever having been on the voter list.  I

22   think it's a major hole in the bill.

23              MR. MENENDEZ:  So, Representative, by

24   creating this second visit that the voter would have to

25   make to prove their identity, would it create an unfunded

48

1    mandate on counties?

2                MR. ANCHIA:  Well, clearly.  I mean, look,

3    this bill not only creates an unfunded mandate but there's

4    a Constitutional problem that the chair did not want to

5    rule on that's going to cost the State of Texas roughly

6    $14 million because once people figure out that if you say

7    you're getting an ID in order to vote, you don't have to

8    pay the 16 bucks that you have to pay, everybody is going

9    to get it for free and it's going to be a hit on the

10   Mobility Fund to the tune of about $7 million bi-anum,

11   14 -- $7 million a year, 14 bi-anum.  It's going to be an

12   unfunded mandate to local governments, as well.  And, you

13   know, I don't think the LB did its job in doing this bill.

14               The Department of Public Safety said they

15   couldn't provide an estimate -- estimated loss to the

16   Mobility Fund on this even though they had during

17   (inaudible) bill of 2005.  I mean, they are trying to hide

18   costs here that I think your commissioner's court is right

19   to be concerned about.

20               MR. MENENDEZ:  Are you aware of the fact

21   that it cost the State of Indiana $2 million, I believe --

22   or was it $4 million -- in order to provide these free

23   IDs?

24               MR. ANCHIA:  If you took the per capita

25   expenditures of the State of Indiana, which is a state a

1   fraction the size of Texas, this bill should cost

2   $20 million minimum in the State of Texas to implement,

3   probably 30 million.  None of that is here.  There's

4   $2 million of funds that are available and clearly this is

5   far below what Missouri would have used to implement, far

6   below what Indiana would've used to implement.

7            MR. MENENDEZ:  So, these bonds and this

8   budget crisis that we have, the current budget crisis

9   we're dealing with -- actually not dealing with at this

10  time, that teachers are fearing for their jobs, that we're

11  looking at cuts and state furlows and other things.  This

12  is money that we could use to offset those job losses, is

13  it not?

14           MR. ANCHIA:  I mean, clearly the hit on

15  county governments is not going to be insignificant.  The

16  hit to the Texas Mobility Fund is going to be significant,

17  and I think will give rise to a Constitutional challenge

18  in the future.

19           I completely respect your concerns about

20  the difficult budget times that we have, and I think they

21  are being ignored in this bill.

22           MR. MENENDEZ:  The bonds -- don't we issue

23  bonds on the Mobility Fund and is this possible debt

24  service -- debt revenue that we are taking from?  Does

25  that put us possibly in a --

50

1               MR. ANCHIA:  That's the problem,

2     Representative.  You hit it precisely.  The problem is

3     that you've got the Texas Mobility Fund that is lockboxed

4     in the Constitution.  It is ring-fenced there so that you

5     don't raid the Mobility Fund.  And the reason you don't

6     want to raid the Mobility Fund is that it's pledged to

7     amortize bonded indebtedness for the state, for the

8     construction of roads.

9               So, the minute you have a reduction -- it

10    says it very clearly in the Texas Constitution.  The

11    minute you have a reduction in the Texas Mobility Fund, it

12    becomes un-Constitutional if you have no other way to

13    replace it.  This bill provides no other way to replace it

14    and ultimately is going to be a hit on the Mobility Fund,

15    could have the ultimate impact of affecting our bond

16    rating if the hit is significant enough.

17              SPEAKER:  Representative (inaudible) ran

18    raised a point of order the gentleman's time is expired.

19    The point of order is well-taken and sustained.

20              Chair recognizes Ms. Harless to speak

21    against the amendment.

22              MR. ANCHIA:  Mr. Speaker?

23              SPEAKER:  Mr. Anchia, for what purpose?

24              MR. ANCHIA:  Will the gentle lady yield?

25              SPEAKER:  Do you yield, Ms. Harless?

51

1              MS. HARLESS:  Yes.

2              MR. ANCHIA:  Thank you, Mr. Speaker.  Thank

3      you, Representative.

4              Could you walk me through the bill really

5      quickly?  Can you go to 63.009 which deals with a person

6      who shows up at the polls with no certificate who is not

7      on the list, and obviously not a photo ID either.

8              MS. HARLESS:  Representative Anchia, we

9      have gone through this over and over.  If you want to talk

10     about it, I'm welcoming you to extend your time and talk

11     about it, but it is detracting from what we're trying to

12     do.  This bill is here --

13             MR. ANCHIA:  I just want to make sure I

14     have a proper -- I do want to talk about it, so I

15     appreciate your indulging me.

16             In 63.009 a person who shows up at the

17     polls who is not on the list and doesn't have either a

18     photo ID or a voter registration certificate can vote a

19     provisional ballot, correct?

20             MS. HARLESS:  That's what we've discussed

21     earlier.  That was agreed to.

22             MR. ANCHIA:  So, they can vote a

23     provisional ballot, correct?

24             MS. HARLESS:  We've discussed this over and

25     over and over.  If they show up with one of the approved

TX_00212761

1    forms of photo ID, they can pass their ballot.  If they do

2    not have one of the approved forms of ID, they can cast a

3    provisional ballot.

4                  MR. ANCHIA:  But this is for a person who

5    neither has -- who shows up without a photo ID, without a

6    voter registration certificate, and who's not on the list.

7    We have not talked about that situation yet.  Right?  So,

8    this is different.

9                  Can you walk me through what happens to the

10   person in that Section 63.009?  Do they vote a provisional

11   ballot?

12                 MS. HARLESS:  If they show up without a

13   photo ID and want to cast a ballot, they can vote a

14   provisional ballot.

15                 MR. ANCHIA:  Okay.  Registration

16   Certificate and who are not on the list, correct?

17                 MS. HARLESS:  The bill is clear on the

18   requirements that that has.

19                 MR. ANCHIA:  Can you walk me through

20   63.009?  I know the bill is clear to you.

21                 MS. HARLESS:  I'm ready to vote on the

22   amendment.  I've walked you through --

23                 MR. ANCHIA:  So, I haven't been able to ask

24   questions.  I mean, we had points of order.  So, this is

25   my first time I get to ask you questions.

53

1          So, under 63.009 a person who does not have

2    a photo ID, registration certificate, who is not on the

3    list votes a provisional ballot under 63.011, correct?

4              MS. HARLESS:  That's what you say, yes.

5    That's what you're reading from the bill.

6              MR. ANCHIA:  This is not a game.  Can you

7    answer what's in your bill?

8              MS. HARLESS:  Really?  Really, you want to

9    go there?

10             MR. ANCHIA:  You know what?  It's not a

11   game to me, Representative.  It's not a game to my

12   constituents.

13             MS. HARLESS:  It's not for me either.

14             MR. ANCHIA:  It's not --

15             SPEAKER:  Excuse me, Mr. Anchia.  Would you

16   please maintain order and you-all try to keep the

17   conversation civil, please?

18             MR. ANCHIA:  Thank you, Mr. Chairman.  I

19   would just like a question answered.  I'm just asking the

20   gentle lady -- I'm not making levity of it, okay?  I'm

21   asking the gentle lady under 63.009 if a person does not

22   have their voter registration certificate and is not on

23   the list, doesn't have photo ID, do they vote a

24   provisional ballot there?

25             MS. HARLESS:  What page are you looking at?

54

1              MR. ANCHIA:  It's on my Page 9.  It may be

2      different on your page.  I don't have -- I'm not sure that

3      we have the same one, but it's in --

4              MS. HARLESS:  Section 13?

5              MR. ANCHIA:  Section 13 of your bill.

6              MS. HARLESS:   Section 13 is Section 63.009.

7      "Election code is amended to read the following.

8      Section 63.009, voter without certificate who is not on

9      the list.  A voter who does not present a voter

10     registration certificate when offering to vote and his

11     name is not on the list of the registered voters or the

12     precinct in which the voter is offering to vote shall be

13     accepted for provisional voting if the voter executes an

14     affidavit in accordance with 63.011."

15              How far do you want me to read?  I can read

16     the whole bill.

17              MR. ANCHIA:  No, that's perfect.  So, let's

18     go to 63.011, then.  That's where they execute -- that's

19     where they cast the provisional ballot.  And there, the

20     affidavit -- that's on my Page 11.  It's in Section 15 of

21     your bill.

22              So, the affidavit there says -- the

23     affidavit that you have says that you're a registered

24     voter and is eligible to vote in the election.  Is that

25     not correct?

55

 1                  MS. HARLESS:  You're looking at Section 15?

 2                  MR. ANCHIA:  Section 15, right.  You

 3      execute an affidavit --

 4                  MS. HARLESS:  And are you looking at A?

 5                  MR. ANCHIA:  A1 and 2.

 6                  MS. HARLESS:  Okay.  If you notice in that,

 7      there is no changes to the current code except for 63.001G

 8      is added and 63.0008B is deleted or 63.009 and 63.009A is

 9      deleted.

10                  Do you want me to read the whole bill?

11                  MR. ANCHIA:  I don't want you to be

12      frustrated.  I mean, I just -- I just want you to walk

13      through it with me because there are changes in that code

14      section and they relate to a person who shows up with

15      nothing at the polls.  They execute this affidavit,

16      correct, in 63.011.  Is that not right?

17                  MS. HARLESS:  Right.

18                  MR. ANCHIA:  And then if they come back six

19      days later, they can -- on Page 12, Section 65.054,

20      Page 12, Section 17 of your bill -- they can cure by

21      signing another affidavit saying that they are indigent or

22      have a religious objection, correct?  That's under

23      Subsection 2B1A and B.

24                  MS. HARLESS:  "A voter is indigent and is

25      unable to obtain proof of identification without a payment

56

1    of a fee or has a religious objection to being

2    photographed" and --

3                    MR. ANCHIA:  Okay.  That's good.  That's

4    good.  So, has a voter ever showed any photo ID in that

5    process?

6                    MS. HARLESS:  This -- this language is very

7    clear on what happens if they show up and they are not on

8    the list.  That's what we're reading about.  Right?

9                    MR. ANCHIA:  I agree it's clear.  I also

10   think it's worse than current law.  So, it -- if you -- it

11   provides less security than current law.  So, you can show

12   up, not being on the list, without an ID and without a

13   certificate, you can execute a first affidavit and then

14   you can execute a second affidavit and never have to show

15   any ID, correct?

16                   MS. HARLESS:  Representative, would you

17   like to bring an amendment?

18                   MR. ANCHIA:  Yeah.  Oh, I have some

19   amendments that deal with this issue.

20                   MS. HARLESS:  Do you want to bring them and

21   we'll talk about them?

22                   MR. ANCHIA:  Absolutely.  Oh, I would love

23   it.  I'm going to have an amendment that deals with this

24   very issue and simplifies all the affidavits that you have

25   in the bill.  And I'm hopeful that you'll be open to them

57

1    because I think it would be a significant improvement.

2                  I fear that your bill is worse than current

3    law and really undermines the argument that this is about

4    ballot integrity because suddenly you have a mechanism

5    where people can come in and never show anything and not

6    be on the list and the ballot board shall accept their --

7    their -- their ballot.  It's not even a "may" anymore.

8    You changed it to "shall."

9                  MS. HARLESS:  They have six days to prove

10   who they are, and the ballot board at that point --

11                 MR. ANCHIA:  But they don't have to prove

12   who they are.  They just say they have a religious

13   objection or are indigent.  They never really prove who

14   they are, do they?

15                 MS. HARLESS:  My understanding is that they

16   have six days to cure and their ballot will get counted.

17                 MR. ANCHIA:  They have six days to cure.

18   So, they can execute that second affidavit and

19   ultimately -- and ultimately vote without ever having

20   shown ID.  Right?

21                 MS. HARLESS:  I'm more than happy to look

22   at your amendment if you want to offer an amendment.

23                 MR. ANCHIA:  Okay.  Yeah, I'm definitely

24   going to have an amendment.  So, thank you.

25                 MS. HARLESS:  Move to table.

TX_00212767

58

```
 1                SPEAKER:  Mr. Anchia to close.
 2                MR. ANCHIA:  Thank you, Mr. Speaker, and
 3    members.  I'm so pleased that the gentle lady is open to
 4    amendments to fix this problem in her bill.
 5                The amendment that you have before you, as
 6    Chairman Ritter points out, does not fix that problem but
 7    did give me an opportunity to ask the gentle lady
 8    questions about how the bill is actually worse than
 9    current law and presents a huge loophole.  I mean, if
10    people are concerned about ballot integrity here, then
11    they should be very concerned about these provisions in
12    the bill.
13                There's a much more simple way to do it --
14    and I'm going to have an affidavit (sic) that does it --
15    that allows a person to come in only with the voter
16    registration certificate and sign an affidavit.  In the
17    current bill you can show up and not be on the list and
18    not have a voter registration certificate and issue two
19    affidavits and, bingo, the ballot board has to take your
20    ballot.  "Has."  It's not even permissive.  It's
21    mandatory, and I think it's a flaw in the bill.
22                I think it's one that can be easily
23    remedied, and I think if we do two things, members, we can
24    come up with a good photo identification bill.  The first
25    one is fix that problem with a single affidavit that
```

59

1    people can use, and the second one is just expand the

2    scope of the photo ID that people can provide.

3              I think if you do those two things,

4    members, you can come up with a bill that a lot of people

5    on this floor can support.  You're going to see some

6    amendments from myself and some colleagues that are going

7    to seek to do that, and I hope that you approach this with

8    an open mind.

9              Mr. Speaker, I withdraw the amendment.

10             SPEAKER:  The amendment is withdrawn.  The

11   following amendment.  The clerk will read the amendment.

12             CLERK:  Amendment by Anchia.

13             SPEAKER:  Chair recognizes Mr. Anchia.

14             Mr. King, for what purpose?

15             MR. KING:  Parliamentary inquiry.

16             SPEAKER:  State your inquiry, Mr. King.

17             MR. KING:  Am I correct that in -- in

18   questions and response going back before people

19   (inaudible) that the scope of the questions must be within

20   the topic of the amendment?

21             SPEAKER:  You are correct, Mr. King.

22             MR. KING:  So, there should be an

23   encouragement from members to restrict -- if I'm at the

24   back mic, encouragement to me should be to restrict my

25   questions.

60

```
 1                    SPEAKER:  I will do that.  I will do that,
 2     Mr. King.  I'll be happy to do that, Mr. King.  Thank you.
 3                    Representative Anchia?
 4                    MR. ANCHIA:  I'll temporarily withdraw this
 5     amendment.
 6                    SPEAKER:  The amendment is temporarily
 7     withdrawn.  The following amendment.  The clerk will read
 8     the amendment.  Ms. Giddings?
 9                    CLERK:  Amendment by Giddings.
10                    SPEAKER:  Chair recognizes Ms. Giddings.
11                    MS. GIDDINGS:  Thank you very much,
12     Mr. Speaker, and members.  I'm sure that we don't want to
13     disenfranchise any voters and, unfortunately, identity
14     theft is a growing issue.  And depending upon when it
15     might occur to an individual, it could result in their
16     inability to vote under the bill without the amendment
17     that I have.
18                    The amendment that I have would allow
19     someone who has been the victim of identity theft to
20     execute an affidavit under the penalties of perjury and to
21     also carry a police report to the polls and they would
22     then be allowed the exemption and would qualify for an
23     exemption and be allowed to vote.
24                    SPEAKER:  Is the amendment -- the amendment
25     is acceptable to the author.  Is there any objection?
```

61

1    Chair hears none.  The following amendment.  The clerk

2    will read the amendment.

3                   CLERK:  Amendment by Turner.

4                   SPEAKER:  Chair recognizes Mr. Turner.

5                   MR. TURNER:  Thanks, Mr. Chairman, and

6    members.  Under the current law, the individuals who

7    preside over the early polling place on the early voting

8    or election day must come from the party of the person who

9    won the last governor's race.  And so, for example, in the

10   last election in my district, people who had been

11   presiding over the early polling place for early voting

12   and on election day, people who had been presiding for 20

13   years were removed and other people were brought in to run

14   the election.  And I want you to imagine at my district

15   new faces who in most cases did not look like me, came in

16   and took over the polling place.  That created a great

17   deal of disruption.

18                   What my amendment does is the amendment

19   stops the current system of county clerk -- and it's

20   restricted to Harris County -- selecting all from the same

21   party, election judges at all the polling places for early

22   and regular voting in Harris County.  And basically what

23   it says is that to better -- the people who will run the

24   election, after they meet all of the other eligibility

25   requirements, will come from the same party of the state

62

1    representative of that particular district.  That's all

2    that it says.

3              SPEAKER:  Members, there is an amendment to

4    Mr. Turner's amendment.  It is being filed right now, so

5    hang on just a second, please.

6              Chair recognizes Mr. Turner.

7              MR. TURNER:  Because of the favorable

8    response that I'm getting, people want to include Dallas

9    in this, as well.  I want to temporarily withdraw this

10   favorable amendment.

11             SPEAKER:  The amendment is temporarily

12   withdrawn.  The following amendment.  The clerk will read

13   the amendment.  Mr. Hochberg?

14             CLERK:  Amendment by Hochberg.

15             SPEAKER:  Chair recognizes Mr. Hochberg.

16             MR. HOCHBERG:  Thank you, Mr. Speaker, and

17   members.  One of the parts of this bill requires precinct

18   officials to make a judgment if the identification

19   material you present has your name spelled differently

20   than it appears on the rolls, and the judgment is:  Is it

21   close enough?  Is it substantially similar?  That's a

22   difficult decision to make, and I am absolutely certain

23   that with the number of precinct officials we have all

24   over this state it will be made differently for different

25   people.

63

1          If I could just ask -- the author of this

2     might be acceptable before I go into a long speel about

3     it.

4               SPEAKER:  May I make a (inaudible)?

5               SPEAKER:  State your inquiry.

6               SPEAKER:  The inquiry is if an amendment

7     adds (inaudible) to the bill -- does not?  Okay.  So, it's

8     not an issue.

9               MR. HOCHBERG:  Okay.  Thank you.  Okay.

10    Okay. Thank you, Representative Harless.  Here's the

11    situation.  Roughly 10 percent of the voter registrations

12    that are filed, that are turned in, either through

13    clerical error or misreading get mistyped and -- and we

14    now have a procedure that filters that out, but for

15    everybody who has been on the rolls up until the last

16    about two years, if your name got on there and it was

17    misspelled, it's still misspelled.

18               The bill recognizes that that takes place,

19    and what the bill says is that the precinct official can

20    accept your identification if your name is substantially

21    similar to what's on your driver's license.

22               The problem is what's substantially

23    similar?  And I'm not just -- I'm not making this up

24    because I've had discussions over the last four years with

25    the Secretary of State about automatically correcting

1    incoming cards -- and Chairman Smith knows this -- even

2    passed a bill about it and the Secretary of State said,

3    "Gee, we don't know what's substantial.  We don't know

4    what's similar.  We want the legislature to give us

5    direction before we automatically correct incoming

6    listings."

7                 Well, now translate that down to your

8    precinct officials.  We have precinct officials, the name

9    comes in -- and I have examples if we get into a debate on

10   this -- where I would ask, "Is this close enough or isn't

11   it?"  The precinct official is not going to know.  You're

12   going to get different interpretations by different

13   officials.

14                 So, all this amendment says is the

15   Secretary of State will set some standards for that so it

16   can't be questioned afterwards, people can't come back and

17   say, you know, "Ritter with one T really isn't similar to

18   Ritter with two Ts."  And, again, if we get into a

19   discussion -- if this isn't acceptable, I have example

20   after example, both from Secretary of State's files and I

21   printed off my own voter roll the other night, part of it,

22   just a few pages, and I could show you places -- and I'll

23   read them off -- where two people in the same household

24   with clearly the same last name aren't registered with the

25   same exact last name.

65

1                   So, I think this will make things easier.

2     I'm not trying to mess with your bill.  I'm trying to

3     improve it, and I hope it's acceptable to you-all.

4                   SPEAKER:  The amendment is acceptable to

5     the author.  Is there any objection?  The chair hears

6     none.  The following amendment.  The clerk will read the

7     amendment.

8                   CLERK:  Amendment by David (inaudible).

9                   SPEAKER:  Chair recognizes Ms. Davis.

10                   MS. DAVIS:  Thank you, Mr. Speaker, and

11     members.  I have an amendment that just merely states that

12     if a person provides (inaudible) follow the procedures to

13     use a provisional ballot that their vote will be counted.

14                   I'm certain that the author of the bill and

15     the intent of the bill is not to deny one's 14th or

16     15th Amendment and their right to vote.  If we're trying

17     to ensure the integrity of the election process, we must

18     ensure that voters who have a right to vote, their vote's

19     counted.  And this only says that once the -- once the

20     procedures have been followed to vote a provisional,

21     ballot will be accepted.

22                   So, I think it's just simply saying that it

23     will not take people's right away from them to vote.

24                   SPEAKER:  Mr. Madden, for what purpose?

25     Representative Davis, would you yield to -- they are

1    trying to work out a deal down here, I think, Jerry.  Hang

2    on a minute.

3                    MR. MADDEN:  I would hope, Mr. Speaker,

4    that the question I have might have some relevance on

5    their discussion.

6                    SPEAKER:  Hang on just one second.

7    Ms. Davis, would you yield to a question from Mr. Madden?

8                    MR. MADDEN:  Thank you, Ms. Davis.  The

9    current -- the current rule for handling provisional

10   ballots that we currently have under the law, what I was

11   basically going to ask is does your amendment as it is

12   written change the procedures that are currently in place

13   for the handling of, acceptance of, and counting

14   provisional ballots?

15                   MS. DAVIS:  And, Jerry, I think that's what

16   our discussion is.  My intent's not to change how we

17   handle a provisional ballot.  My intent is to suggest that

18   once we've handled it and found that all of -- everything

19   is in compliance that you can't throw that ballot out.

20                   So, I'm not trying to change anything.  The

21   bill just simply says, "The notice that if all procedures

22   are followed, there is no guarantee that the voter's

23   provisional ballot would be accepted."  I'm just

24   suggesting that once you have met all of the criteria,

25   then you can't just throw a ballot out.  People would then

1    be denied the right to vote.

2              So, this is, in fact, a way to make sure

3    that we're not taking people's right to vote away if, in

4    fact, they have followed the procedures that it's a good

5    provisional ballot.

6              MR. MADDEN:  And my question relates to

7    does the language of following the provisions or the

8    procedures correctly versus meeting the legal requirements

9    they have for the acceptance of these provisional ballots.

10   I want to make sure that your amendment is not just saying

11   if they follow the procedure for doing it that it's

12   accepted, but it changes the reason for acceptance at that

13   stage from what we currently have in the law.

14             MS. DAVIS:  And I think that's what the

15   question is and we'll go back and review it.  Our intent

16   is just to suggest that you can't have people making --

17   telling them to vote on a provisional ballot and then they

18   do all the things that provide -- the procedures are all

19   in place for provisional ballots and then you just throw

20   the ballot out.  I think there might be some question

21   about, by my fear is that we're going to tell people you

22   can vote with a provisional ballot and they can just

23   arbitrarily be discounted and thrown out.  That's the

24   question.  Are we going to allow the provisional ballots

25   to not be considered?  If that's the case, we have written

68

1   in the bill that we would, in fact, deny people the right

2   to vote.  That's what I'm concerned about.

3                SPEAKER:  And my concerns are that we are

4   going to accept provisional ballots that otherwise would

5   not be accepted under current law just because they have

6   shown up and followed the procedures that you have in this

7   legislation.

8                MS. DAVIS:  I'll get clarification, but

9   reality is it sounds as though -- if a person uses a

10  provisional ballot, it sounds as though the language is

11  saying that they might -- that you're not going to

12  guarantee that the ballot is acceptable.

13               And so, people that -- it would have the

14  effect of saying people wouldn't have voted, they would

15  deny their right to vote.  So, I'm just trying to make

16  sure that we're not doing that so that we don't have all

17  the provisional ballots being put aside saying they are

18  not acceptable because -- you have it because you have to

19  be able to have an alternative way to legitimate the

20  voter; isn't that correct?

21               MR. MADDEN:  The provisional requirements

22  are there.  Specifically we know that people make mistakes

23  on the list, that people don't have all of them on the

24  list that are supposed to be, and they may show up.  So,

25  there's a reason to check on that.

69

1              As I said, my concern is that your language

2     basically just says that if they follow a certain

3     procedure they will be automatically accepted, and that's

4     not the current criteria of the law.

5              MS. DAVIS:  Well, my concern is we are

6     writing in that your ballot might not be.  And so, it has

7     the effect of denying one a right to vote.  I'm happy to

8     go back and change it to tighten it up.  Not trying to

9     change the method or the process, just trying to make sure

10    that we don't inadvertently tell people that the

11    provisional ballot could be denying your right to vote by

12    voting with a provisional ballot.  I'll withdraw it and

13    see if I can tighten it up.  That's where I'm trying to go

14    with it.  Thanks, Jerry.

15             SPEAKER:  The amendment is temporarily

16    withdrawn.  Following amendment.  The clerk will read the

17    amendment.

18             CLERK:  Amendment by Bonnen.

19             SPEAKER:  Chair recognizes Mr. Bonnen.

20             MR. BONNEN:  Mr. Speaker, members, this

21    amendment removes the requirement that anyone over 70 does

22    not have to show an ID.  It is acceptable to the author.

23             SPEAKER:  Mr. Veasey, for what purpose?

24             MR. VEASEY:  Will the gentleman yield for a

25    question?

70

1              MR. BONNEN:  I would be honored.

2              MR. VEASEY:  Mr. Bonnen, why would you want

3    to remove the exemption?  I think it was put in there for

4    a reason that I'm sure the author can explain, but why

5    would you want to remove the exemption?  I don't

6    understand.

7              MR. BONNEN:  Why I want to remove it?  A

8    great example would be my mother and father.  My father's

9    about 75 years old, give or take a few years, and he -- he

10   is handicapped.  He has a handicap exemption.  My mother

11   doesn't like it being admitted here publicly, but she's a

12   slight bit older, give or take a few years, than my

13   father.  She has no problem, no issue voting with and

14   identification.  There is no problem for her to do it.

15   So, there's no need to set a line of age that says beyond

16   that age you don't need an ID to go cast a ballot.

17              We have other provisions in this bill that

18   provide exemptions to individuals that may be in their

19   later years, through indigent, through handicap or

20   disability that could allow them to be precluded from

21   using an ID.

22              MR. VEASEY:  Now, my grandmother votes by

23   mail.  She's 98 years old.  She votes by mail, but she

24   hasn't driven in at least 15 years.

25              MR. BONNEN:  This doesn't cover vote by

1    mail.

2                   MR. VEASEY:  I know it doesn't cover vote

3    by mail, but my question is let's say her vote by mail

4    gets lost in the -- her application -- her ballot actually

5    gets lost in the trash, and I'll take her up to the

6    Comeaux Elementary School to go and vote.

7                   How would she vote with an expired --

8                   MR. BONNEN:  She's disabled, though, is

9    that not correct?

10                   MR. VEASEY:  No, she's not disabled.

11                   MR. BONNEN:  Oh, she's not?

12                   MR. VEASEY:  How would she vote?

13                   MR. BONNEN:  She could vote a provisional

14    ballot.

15                   MR. VEASEY:  Would she vote a provisional

16    ballot that would count, or she would vote a provisional

17    ballot that she would actually have to bring an ID back

18    up -- would I have to take her back down to downtown Fort

19    Worth?  Her vote would actually count?

20                   MR. BONNEN:  It should count, yes.  My

21    understanding is it would.

22                   MR. VEASEY:  Because I thought under

23    Patricia's bill that if you cast a provisional ballot you

24    cannot vote unless you bring your ID back six days later.

25                   MR. BONNEN:  Her ballot should be able to

72

1    count, though.  Her ballot should be allowed to count.

2                    MR. VEASEY:  What if she doesn't take her

3    ID back up to the Tarrant County Courthouse?

4                    MR. BONNEN:  She would have to get an ID,

5    yes.

6                    MR. VEASEY:  She wouldn't be able to get

7    one in six days.  That's my point.

8                    MR. BONNEN:  Well, that's what's good about

9    us passing this law now.  She'll have plenty of notice.

10                   MR. VEASEY:  Yeah, but there are a lot

11   of -- I mean, we can -- we can make sure that my

12   grandmother go and get an ID, but not everybody can.  I

13   just think that seems to be a little insensitive to a

14   pretty large group of folks that --

15                   MR. BONNEN:  Other states that passed the

16   photo ID law don't have any age requirement or restriction

17   on showing an ID.  Georgia does not.  Indiana does not,

18   Florida does not.

19                   MR. VEASEY:  Thank you.

20                   MR. BONNEN:  Thank you.

21                   SPEAKER:  Members, we have two amendments

22   to the amendment being drafted.  Following amendment to

23   the amendment.  Clerk will read the amendment.

24                   CLERK:  Amendment to the amendment by

25   Eiland.

73

1      SPEAKER:  Chair recognizes Representative

2  Eiland.

3      MR. EILAND:  Speaker, members, sorry for

4  the delay.  Mr. Bonnen's amendment had gone on and cut my

5  amendment off.

6      What my amendment does is it takes the age

7  from 70 down to 65.  It uses the language that the

8  Secretary of State will adopt, the rules consistent with

9  the definition of elderly in the Government Code and in

10  the Penal Code.  The Penal Code defines crimes elderly

11  persons age 65, and the Government Code also defines

12  elderly as age 65.

13      So, to be consistent between the Election

14  Code, the Government Code, and the Penal Code, I simply

15  say keep them consistent and that would be age 65.

16      SPEAKER:  Mr. Eiland sends up an amendment.

17  Chair recognizes Mr. Bonnen in opposition.

18      MR. BONNEN:  Mr. Speaker, members, with all

19  respect to Mr. Eiland, what his amendment to my amendment

20  does -- and he had to do an amendment to the amendment

21  because he later had an amendment to change the age from

22  70 to 65.  If my amendment which is acceptable to the

23  author goes on, it would have cut off the opportunity for

24  him to have offered that.  But the issue is I believe we

25  should not be creating a special class and lowering the

74

1    age to 65 or having any age.

2              So, I respectfully ask that you work with

3    me in tabling the amendment to the amendment.

4              SPEAKER:  Chair recognizes Representative

5    Eiland to close.

6              MR. EILAND:  Members, I believe that we're

7    going to require photo IDs for our voters.  We know and

8    recognize that many of our elderly people may not have

9    photo IDs readily available to them or they may be out of

10   date, they don't have driver's license, those type of

11   things.  So, we just simply grandfather them.  And in

12   order to grandfather them, the Senate put age 70 and I

13   think we ought to be age 65 and I think it ought to be

14   consistent with our definition of elderly between the

15   Government Code, the Election Code, and the Penal Code.

16             So, for that reason vote no on the motion

17   to table.  Protect our seniors and our elderly and let

18   them vote as they have been.

19             SPEAKER:  Ms. Alvarado, for what purpose?

20             MS. ALVARADO:  Mr. Speaker, would the

21   gentleman yield?

22             MR. BONNEN:  Yes, I yield.

23             MS. ALVARADO:  Elderly is already defined

24   in several statutes in Texas.  The Health and Human

25   Services Code defines it at 65.  Another section of the

75

1   Health and Human Services Code defines it at 60.  The

2   Utility Code defines it at 60.  The Government Code

3   defines it at 65.  The Penal Code defines it as 65.

4                    Why would we define elderly at 70?

5                    MR. EILAND:  I don't know.  And so, that's

6   why I chose the Government Code and the Penal Code so that

7   it would be consistent amongst those at age 65.

8                    MS. ALVARADO:  Well, making 70 the

9   definition of elderly for voting purposes makes the voting

10  requirements more stringent than the Penal Code and those

11  receiving benefits from Health and Human Services?

12                   MR. EILAND:  Yes.  It would make -- it

13  would give the elderly, depending upon how the government

14  defines it, at three different ages:  60, 65, or 70.

15                   MS. ALVARADO:  So, do you believe that the

16  current version of the bill does enough to protect senior

17  citizens' rights to vote?

18                   MR. EILAND:  No.

19                   MS. ALVARADO:  So, your amendment to the

20  amendment would lower the age to 65?

21                   MR. EILAND:  Yes.

22                   MS. ALVARADO:  Okay.  Are there other areas

23  of the Texas law that defines elderly at 65?

24                   MR. EILAND:  As I mentioned, I know that

25  the Penal Code for crimes against the elderly it's at 65,

76

1   and in the Government Code it's age 65.

2                   MS. ALVARADO:  So, why aren't we being

3   consistent with what's already in law?

4                   MR. EILAND:  The reason I was told, they

5   were staying with the Senate language of 70 and no other

6   logical reason.

7                   MS. ALVARADO:  Thank you.

8                   SPEAKER:  Ms. Harless, for what purpose?

9                   MS. HARLESS:  Will the speaker -- will the

10  member yield?

11                  MR. EILAND:  Yes.

12                  MS. HARLESS:  Representative Eiland, I

13  wanted to kind of confirm.  You understand that if you're

14  65 or older you right now have the ability to vote ballot

15  by mail?

16                  MR. EILAND:  Yes.

17                  MS. HARLESS:  So, we're not necessarily

18  doing anything -- they can already vote ballot by mail,

19  which is typically in my district what most of the seniors

20  do.

21                  MR. EILAND:  But many of them still show up

22  and vote in person at the polls.

23                  MS. HARLESS:  Thank you.

24                  MR. EILAND:  Please vote no on the motion

25  to table.

77

1              SPEAKER:  Representative Eiland sends up an

2   amendment.  Representative -- Representative Bonnen moves

3   to table.  This is on the motion to table.  Clerk will

4   ring the bell as a record vote.  Show Mr. Bonnen voting

5   aye, show Ms. Harless voting aye, show Mr. Eiland voting

6   no.  Mr. Solomon is voting aye.  Show Mr. Geren voting

7   aye.  Have all voted?

8              There being 99 ayes and 50 nays.  Motion to

9   table prevails.  The following amendment.  Clerk, read the

10  amendment.

11             CLERK:  Mr. Veasey, for what purpose?

12             MR. VEASEY:  Parliamentary inquiry, please.

13             SPEAKER:  State your inquiry.

14             MR. VEASEY:  Is it your understanding that

15  after this bill passes that it has to be approved by the

16  Justice Department to make sure that it complies with the

17  1965 Voting Rights Act?

18             SPEAKER:  Mr. Veasey, the chair is not

19  advised.  We've had discussion of that, but the chair is

20  not advised.

21             MR. VEASEY:  Mr. Speaker, earlier

22  (inaudible) Chen Button from Dallas came up and said that

23  her constituents that are protected under the Voting

24  Rights Act was actually for a bill that required photo ID.

25  And the reason why I was asking you and made that

78

1    parliamentary inquiry is because I believe that the Voting

2    Rights Act or the people at the Justice Department will

3    actually make the determination of who is covered under

4    the Voting Rights Act and who's not.

5                    And so, because that may be part of the

6    record, I wanted to make sure we clarify that it was your

7    understanding that this was going to be sent to the

8    Justice Department for review since we are a Section 5

9    state.  Thank you.

10                   SPEAKER:  Thank you, Mr. Veasey.  The

11   following amendment.  Clerk, read the amendment.

12                   CLERK:  Amendment to the amendment by

13   Alonso.

14                   SPEAKER:  Chair recognizes Mr. Alonso.

15                   MR. ALONSO:  Thank you, Mr. Speaker,

16   members.

17                   Mr. Speaker and members, this is a 65 age

18   requirement similar to Representative Eiland except in a

19   slight different manner to try to make it consistent.  But

20   the point I'm bringing this amendment is the research

21   shows that one in five women do not renew their driver's

22   license, and in this case we're asking for a photo ID.

23                   You know, I was visiting with one of the

24   members a few minutes ago and there comes a time when we

25   get to the age of 65 and why we make laws for people that

1   are 65.  At some point we made a law to have Social

2   Security at 65.  At some point we made a law to have

3   certain protections of the elderly at 65.  At some point

4   we made a law to make sure they have certain services at

5   65.

6                   What we're saying with this amendment --

7   and I think at some point the committee stuck with 70 with

8   the idea that we have to pay a certain respect, a certain

9   respect to part of our constituency, part of our state

10  that has to have that special protection.

11                  I ask you members because of the certain

12  respect that we provide for our elderly citizens that you

13  ask -- that you approve this amendment that they be

14  exempted at 65.

15                  SPEAKER:  Chair recognizes Representative

16  Bonnen.

17                  MR. BONNEN:  Thank you, members.  Same

18  song, second verse.  I would ask that you vote with me on

19  the motion to table.

20                  SPEAKER:  Chair recognizes Representative

21  Alonso to close.

22                  MR. ALONSO:  Members, I understand that

23  Representative Bonnen might say same verse, same song.

24  Elderly people are not same song, same verse.  Elderly

25  people have to be respected.  The reason we bring this

80

1    amendment forward, at some point in committee they said

2    70.  After discussing and deliberating, they accepted it.

3    This is not same song, same verse, members.  If you vote

4    no on a motion to table, you're saying no to same song,

5    same verse.  Please vote no on the motion to table.

6              SPEAKER:  Mr. Alonso sends up an amendment.

7    Representative Bonnen moves to table.  This is on the

8    motion to table.  It's a record vote.  Clerk, ring the

9    bell.  Show Mr. Bonnen voting aye, show Ms. Harless voting

10   aye, show Mr. Acock voting aye.  Have all voted?  Have all

11   voted?  98 ayes and 50 nays.  Motion to table prevails.

12             Mr. Bonnen sends up an amendment.  The

13   amendment is acceptable to the author.  Is there any

14   objection?  Amendment -- Representative Veasey wishes to

15   speak against the amendment.  The chair recognizes

16   Representative Veasey.

17             MR. VEASEY:  Members, I want to speak

18   against the amendment because obviously the prior two

19   amendments that were sent up were trying to protect old

20   people, to preserve their right for it to be easy for them

21   to vote, and I think that that's all we're asking is just

22   for a little flexibility on this.  We're getting

23   absolutely none at all, and I think that's unfortunate

24   because when the bill was laid out I was under the

25   impression that there wouldn't be different amendments

1   added that would make the bill even more adverse than it

2   already is and I think we're setting up a bad precedent by

3   voting for this.

4                   SPEAKER:  Mr. Burnam, for what purpose?

5                   MR. BURNAM:  Speaker, will the gentleman

6   yield?

7                   SPEAKER:  Mr. Veasey, do you yield?

8                   MR. VEASEY:  Yes.

9                   MR. BURNAM:  Mr. Veasey, I'm one of those

10  old people that you're talking about.  I'm 75 and I've got

11  lots of friends who are 75 and they want to go to the

12  polls and vote just like everybody else and there are

13  provisions in the bill for the disabled.  If you can't get

14  to the polls, there are provisions to vote.  I thought it

15  was ridiculous, really, to set a limit at 70.  You know, I

16  don't need any protections and all my friends don't need

17  any protection.  I think Mr. Bonnen's got a great

18  amendment.

19                  MR. VEASEY:  I think everybody's

20  circumstances are different.  I think that's what makes

21  the legislative perspective unique.  Some people may live

22  in a rural area and it may take a long time for them to

23  reach certain areas to go vote.  Some people, you know,

24  may have been born during a time where they don't have

25  access to certain documents to obtain driver's licenses

82

1    and things of nature.  You know, everybody has a different

2    story, a different perspective.  Our state has not always

3    been as urban as it is now, and it's not always been as

4    integrated as it is now.

5                    MR. BERMAN:  Well, you're absolutely right

6    but Ms. Harless has many, many points in the bill that

7    will take care of everyone and any age group and we don't

8    want to discriminate on age.  You're discriminating

9    against me.  I want to go to the polls and vote.  I don't

10   need to be exempt.

11                   MR. VEASEY:  That's different, Leo.  You

12   may not have been affected in the same way like my

13   grandmother, like constituents that are African-American.

14   They may have not -- the laws that were passed back then,

15   they have not had the same adverse impact on you as a

16   white male as they did on other people, and that's what

17   this is about today.

18                   MR. BERMAN:  That's true, but there are

19   provisions in the bill that take care of that, though.

20                   SPEAKER:  Mr. Alonso, for what purpose?

21                   MR. ALONSO:  Would the gentleman yield?

22                   SPEAKER:  Mr. Veasey, do you yield?

23                   MR. ALONSO:  Mr. Veasey, one of the reasons

24   Mr. Eiland and myself brought this amendment is to pay

25   particular attention to part of our -- our state, which

83

1    are those that are 65 and older.  You pointed out -- and

2    it might seem easy to some people, well, anybody can vote,

3    right?  Is that part of the argument, nobody should be set

4    aside, especially on this law; is that right?

5                    MR. VEASEY:  That is exactly right.  And I

6    think that is the point that everybody is missing.  If you

7    were born in 1941, which is what this bill covers, when

8    you were born you were born into a time when it was legal

9    to discriminate against African-Americans and Hispanics,

10   particularly here in this state, and you were routinely

11   denied the right to vote if you were born during that time

12   period and if you lived during that time period, and those

13   are the people that we are trying to protect by making

14   these amendments better.

15                    I do not want my grandmother who is 98

16   years old who was born during a time of rampant

17   discrimination, I do not want the people that know her at

18   the schoolhouse, at Comeaux Elementary School when she

19   goes to vote in Fort Worth, the people that know her --

20   that have known her for -- those folks are now in their

21   60s and pushing 70 years old and my grandmother used to

22   babysit them and watch them and they know who she is and

23   my grandmother does not have a current driver's license.

24   Luckily she usually votes by mail, but if it were an

25   emergency and I needed to take her up to the school to

84

1   vote, I would not want them to deny her the right to cast

2   a ballot, particularly people who have known her and know

3   that she is not committing voter fraud.  I do not want

4   them to have the right to say, no, she cannot vote.  That

5   is absolutely un-American and ridiculous and

6   discriminatory.

7            MR. ALONSO:  Talking about that, isn't it

8   true the reason we set up the Voting Rights Act in the

9   United States was because -- what part of United States

10  needed to be reminded and have another hammer to make sure

11  people were allowed to vote?  What part of the United

12  States?

13           MR. VEASEY:  The south, and Texas.

14           MR. ALONSO:  Now, we can argue for ages and

15  time that it doesn't happen, but isn't it true after we

16  did redistrict 2003 the Supreme Court said that there was

17  discrimination here in Texas.

18           MR. VEASEY:  Say that again.  I'm sorry.

19           MR. ALONSO:  That there was discrimination

20  here in Texas after the Supreme Court ruled on --

21           MR. VEASEY:  Absolutely, rampant.

22           MR. ALONSO:  And the reason we want to do

23  this amendment -- the reason we're for this amendment and

24  we're going to vote no on the Bonnen amendment is because

25  the elderly should be protected.  The elderly -- as

1   pointed out, there's more of a chance that they are not

2   going to renew their driver's license; is that right?

3            MR. VEASEY:  Absolutely.  If you don't have

4   to drive, if you're on a fixed income, why would you go

5   and spend money to get your driver's license renewed?  It

6   may not be a problem in some areas, but it surely would be

7   a problem in many rural and urban areas where people just

8   don't have the same access to resources or the same access

9   to cash as others do, particularly for those who are sick

10  and shut-in.

11           SPEAKER:  Representative (inaudible) raised

12  a point of order the gentleman's time has expired.  The

13  point of order is well-taken and sustained.  The amendment

14  is acceptable to the author.  Is there objection?

15  Mr. Castro objects and calls for a record vote.  Excuse

16  me.

17           Back up, members.  Mr. Bonnen gets to

18  close.  The chair recognizes Mr. Bonnen.

19           MR. BONNEN:  Mr. Speaker, members, I want

20  to correct a couple things.  First and foremost with all

21  respect to Mr. Veasey, his grandmother would not be denied

22  the right to vote.  His grandmother would have the

23  opportunity to cast her ballot, and within six days she

24  would need to return with a photo ID.

25           What I would hope would happen is that when

86

1   this law passes --

2                   SPEAKER:  Mr. (inaudible), for what

3   purpose?

4                   SPEAKER:  To ask a question, but I can wait

5   until he finishes.

6                   MR. BONNEN:  If you would for a moment.

7   Hopefully we would go down and -- and I don't think his

8   grandmother needs a free ID from DPS, which this bill

9   allows for.  Hopefully she wouldn't need the indigent

10  exemption, which this bill allows for, and hopefully she

11  wouldn't need the disability exemption, which this bill

12  allows for.  But he would have the opportunity to take her

13  to a proper location, get her an ID before that election,

14  take her into that place, and have her cast her vote.  If

15  that for some reason did not occur, she can still cast

16  that vote and she will have the opportunity to return with

17  proper ID and have her ballot count in that election.

18                   The states of Georgia and Indiana, who have

19  already been pre-cleared by the Justice Department, do not

20  have any discrimination upon age on who should or should

21  not show a proper ID to cast their ballot.  There are

22  members of the Texas legislature sitting here with you

23  today on this house floor who have reached the great age

24  of beyond 70 years of age.  I see no reason why they

25  should be treated differently, and I can turn this

87

1    argument and even suggest that are we going to the point

2    to say that maybe they shouldn't be capable and able and

3    allowed to serve the constituents of their district on

4    this House floor because they are now beyond this age of

5    70?  I disagree.

6                I think that we need to do what's

7    appropriate, what's right.  We need to treat all our

8    residents respectfully.  We need to admire what they've

9    earned and accomplished in life, and there are exemptions

10   within this bill that deal with the factors of people not

11   having the income, not having the ability physically to

12   cast their ballot.  I would be proud to yield for

13   questions.

14               SPEAKER:  Mr. (inaudible), Mr. Bonnen

15   yields.

16               UNIDENTIFIED REPRESENTATIVE:  Representativ

17   e Bonnen, I appreciate your point about not wanting to

18   discriminate on the basis of age.  And I know you're

19   looking at me because I sound like a frog.  I don't know

20   what happened either to my voice.

21               Would you agree, though, that we also

22   distinguish between voters above and below the age of 65

23   in our voting laws because we allow anyone over 65 with no

24   excuses, no need to swear that they are disabled or sick

25   or traveling to cast an absentee ballot by mail just

1    because they are 65 or older?

2              MR. BONNEN:  I would agree that all of us

3    greatly want every person to have the opportunity to cast

4    their ballot.  Because of that desire that we want

5    everyone to cast that ballot, we have become very free and

6    open in allowing anyone over the age of 65 to use the

7    mail-in ballot opportunity.  I would agree with you

8    completely because of our great willingness that falls in

9    line with this bill before us today to have as many Texans

10   feel the opportunity to come vote an appropriate ballot.

11             UNIDENTIFIED REPRESENTATIVE:  And when they

12   vote that absentee ballot by mail, how do we verify who

13   they are?

14             MR. BONNEN:  By their signature.

15             UNIDENTIFIED REPRESENTATIVE:  So, we don't

16   check for photo ID.  We compare the signature on the

17   outside of the envelope that contains their ballot to the

18   signature on file from their voter registration card; is

19   that correct?

20             MR. BONNEN:  That's absolutely correct, and

21   it is the comparison of their application for their voter

22   registration and the signature on the sealed envelope

23   across the seal ensuring there are the same person that

24   they say they are.  And that is another example of a

25   tremendous opportunity that all Texans have the right and

1    opportunity to use to make sure that their ballot is cast

2    and is counted.

3              UNIDENTIFIED REPRESENTATIVE:  I guess what

4    I would say is that's why -- that's why I'm going to vote

5    against your amendment, respectfully, because I think we

6    ought to be -- I think we ought to trust that signature

7    match.  I think it is as reliable as a fairly unreliable

8    system of photo ID, and I think it is important in

9    striking the balance between securing each vote but also

10   securing access to the franchise.  And I appreciate where

11   you're coming from with this in terms of the elimination

12   of discrimination, but I think we also have to balance

13   that against access to the franchise.

14             MR. BONNEN:  Your comments on the voting

15   ballot is another tool and opportunity to ensure that no

16   one is disenfranchised in the ability to cast a vote in

17   the great State of Texas.

18             With that, I guess they want to have a

19   record vote.

20             SPEAKER:  Mr. Bonnen sends up the

21   amendment.  The amendment is acceptable to the author.

22   Mr. Castro objects.  A record vote is requested.  A record

23   vote is granted.  The clerk will ring the bell.  The

24   question is on the Bonnen amendment.  Show Mr. Bonnen

25   voting aye.  Show Mr. Miles voting no.  Show Ms. Kolkhorst

1    voting aye.  Have all members voted?

2                    There being 97 ayes, 50 nays, the amendment

3    is adopted.

4                    Mr. Veasey, for what purpose?

5                    MR. VEASEY:  Parliamentary inquiry.

6                    SPEAKER:  State your inquiry.

7                    MR. VEASEY:  Mr. Speaker, I don't think

8    that my 98-year-old grandmother needs to have -- show an

9    ID to Dorothy DeBowes and Nancy Murphy over in Comeaux so

10   she can vote just in case she can't -- with her expired ID

11   because Dorothy has known her since she was a little girl.

12                   So, therefore I respectfully request that

13   the back and forth that went between myself and

14   Representative Burnam and Representative Alonso be placed

15   in writing and put in the journal.  Thank you.

16                   SPEAKER:  Is there any objection?  There is

17   none?  So ordered.  The following amendment.  The clerk

18   will read the amendment.  Excuse me.  Mr. Miles?  The

19   chair recognizes Mr. Miles for an introduction.

20                   MR. MILES:  Thank you, Mr. speaker,

21   members.  I'm very pleased to request the recognition from

22   the House.  I would like to introduce to you our

23   Congressman from the 9th Congressional District, Mr. Al

24   Green from the 9th Congressional District in Harris

25   County and Fort Bend.  Al, would you raise your hand?

TX_00212800

1   Thank you for being in the House with us today.

2              SPEAKER:  The following amendment.  The

3   clerk will read the amendment.

4              CLERK:  Amendment by Davis of Dallas.

5              SPEAKER:  The chair recognizes Ms. Davis.

6              MS. DAVIS:  Mr. Speaker, members, this is

7   the amendment I brought earlier and we were trying to

8   clarify some language.  We're not trying to change the

9   procedures.  I was just trying to suggest that once they

10  followed the procedures and been determined they are an

11  eligible voter then the provisional ballot would be

12  counted, and I think with the language clarification it's

13  acceptable to the author.

14             SPEAKER:  The amendment is acceptable to

15  the author.  Is there any objection?  The chair hears

16  none.  The amendment is adopted.  The following amendment.

17  The clerk will read the amendment.  Mr. Veasey?

18  Mr. Veasey?

19             CLERK:  Amendment by Veasey.

20             SPEAKER:  The chair recognizes Mr. Veasey.

21             MR. VEASEY:  Thank you.  Under the current

22  bill, voters are able to sign a bypass affidavit affirming

23  under penalty of perjury -- affirming that they are in

24  fact indigent or have a religious objection to being

25  photographed.

92

1              The affidavit is -- the affidavit is

2    legally (inaudible) and wildly used in the legal arena.

3    Our courts use them, our police officers use them, and we

4    already accept them in our election process.

5              This amendment simply allows a registered

6    voter to sign a sworn affidavit swearing under the penalty

7    of perjury that you are, in fact, who you say you are.

8    This by no means is a loophole or a bypass.  These are

9    registered voters who for a number of reasons may not have

10   a photo ID like you just talked about a second ago.

11             Signing this affidavit ensures that the

12   person choosing to sign the form understands that they are

13   not only subject to perjury but they are also subject to

14   fraud in the form of voter impersonation.  Under the bill,

15   the penalty of voter impersonation is second degree

16   felony, and we'll have an amendment making it a felony in

17   the first.  This is a huge risk just to pass one vote.  I

18   don't think many people would do that.  I don't know about

19   you, but I care as much about the election process as

20   anyone, and I'm not willing to risk a second degree felony

21   in order to cast a fraudulent ballot.

22                  SPEAKER:  Mr. Raymond, for what purpose?

23                  MR. RAYMOND:  How is this not a loophole?

24                  MR. VEASEY:  Excuse me?

25                  MR. RAYMOND:  Tell me again what your