18

1          I, LYNNE M. RODRIGUEZ, court-approved

2    transcriber, certify that the foregoing is a correct

3    transcription from the tape recording of the proceedings

4    in the above-entitled matter, to the best of my ability

5    to hear and understand the recorded proceedings.

6          I further certify that I am neither counsel

7    for, related to, not employed by any of the parties to

8    the action in which this hearing was taken, and further

9    that I am not financially or otherwise interested in the

10   outcome of the action.

11         I further certify that the transcription fee of

12   $ _____ was paid/will be paid in full by Attorney

13   General of Texas, Anne Wilson, Esquire.

14         Certified to by me this 19th day of April,

15   2012.

16

17         _Lynne M. Rodriguez_

           LYNNE M, RODRIGUEZ, TX CSR NO.

18         Expiration Date: 12/31/13

           ESQUIRE DEPOSITION SOLUTIONS

19         Firm Registration No. 77

           9901 IH 10 West, Suite 630

20         San Antonio, Texas 78230

           (210) 331-2280

21

22

23

24

25



**ESQUIRE**
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00056809

**A**

ability
18:4
able
6:14,20,24
13:22,25
14:5,10,17
14:17
above-ent...
18:4
Absolutely
7:18
acceptable
2:19 11:13
16:5
accepted
4:5
access
10:23
action
18:8,10
add
4:4
added
2:18,21 4:9
additional
16:20
address
11:24 13:5
adopted
15:8 17:4
adoption
1:7 14:21
16:15,18
advised
5:12
affidavit
9:9,17 16:5
age
5:8,23 10:2
agree
14:8
agreed
15:16
align
14:6
allow

2:12 7:21
8:12 14:14
16:1
allowed
12:13
amendment
2:22 4:10
Anne
18:13
answer
2:23 7:13,14
7:21
answering
14:19
anticipated
14:3
Antonio
18:20
apply
11:16
appreciate
8:13
April
18:14
areas
12:11,11
13:1,13,25
asked
5:3 13:4
asking
4:17,21
assume
3:7
attempt
13:5
attempting
11:24
Attorney
18:12
author
6:9

**B**

back
9:7,13,16
bad
6:1,3

ballot
16:4
ballots
16:3
barriers
13:24
basic
11:21
believe
5:22 8:1
9:24 13:18
14:9,16
best
18:4
bill
2:7 3:6,9,10
3:10 5:19
6:1,3 12:13
12:20,23
14:9 15:10
15:12,13,14
16:16,19
17:4
biometric
7:9,11 8:3,6
8:12,13
Birdwell
14:25 16:21
bottom
4:12,16,22
4:25
bounds
2:11,13 3:9
3:14 5:17
6:2 8:16
bulk
11:14

**C**

call
14:24 16:20
calls
12:7
card
6:24 8:2,3
15:19,19
Carona

14:25 16:21
carried
15:15
cast
16:1
CD
17:6
certain
15:17
certainly
10:25 12:15
13:1
certificate
4:13,18 5:1
5:6,7,10,13
5:23 6:19
6:25 7:4
9:20,25
10:2 15:22
Certified
18:14
certify
18:2,6,11
chair
2:1,8 15:9
change
2:17 5:9
changed
4:3
changes
2:14,22
checked
14:11
CHL
15:21
citizenship
15:21
clarified
2:20 4:8
clarify
5:11
code
7:8 8:12
come
9:7,13,16
committee
1:7 2:6,12

14:25 16:21
16:15,19
17:4
comply
14:10
conference
1:7 2:6,12
15:10,15
16:15,18
17:3
confident
13:16
conforming
2:22
consequences
13:9,14
considera...
12:19
Constitution
14:3
Constitut...
14:7
continue
15:18
correct
6:21 7:1
9:18,25
18:2
correctly
9:3
cost
3:19,21,23
counsel
18:6
counted
16:3,4
County
10:25 12:5
couple
2:14
court-app...
18:1
covered
12:15
create
3:23
created



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

2:15 3:16
**creation**
2:18
**criminal**
16:12
**CSR**
1:15 18:17
**currently**
9:22

### D
**data**
11:10
**date**
5:6,18 9:21
10:1 18:18
**Davis**
14:25 16:21
**day**
9:7 18:14
**days**
9:16 16:3
**de**
6:7,8,11,12
6:17,22 7:2
7:7,18 8:1
8:10,21,24
9:2,12,19
10:5 15:4
16:25
**decide**
6:2
**dense**
12:11
**department**
5:7 7:5 10:1
13:23 14:12
**DEPOSITION**
18:18
**described**
9:10
**Deuell**
15:1 16:22
**DEWHURST**
2:1,8,24 3:3
6:6,10 7:23
10:11,14

14:20 15:6
16:17 17:2
**difference**
8:9
**different**
9:8
**disabled**
15:17
**disaster**
16:7
**distance**
12:10 13:24
**district**
14:6
**document**
7:3 11:2,9
11:17 12:12
12:18
**doing**
3:25 4:2,7
**DPS**
2:16,16 3:16
3:17 5:3
6:20 7:8
8:12 10:22
11:19 12:9
13:2,4
15:20,22
**drafted**
14:10
**driver's**
6:23 9:23
11:1,7,21
11:22 15:20
**Duncan**
2:21 4:9
15:1 16:22

### E
**ears**
4:20 6:15
18:18
**educate**
16:9
**either**
6:23 9:16
12:8
**election**

2:15 3:16
4:17 5:3
6:19,19,25
7:4 9:20
15:23 16:10
**Ellis**
2:25 3:1,6
3:11,18,22
4:1,6,11,15
4:23,25 5:5
5:15,25
15:1 16:22
**Eltife**
15:1 16:22
**employed**
18:7
**encoded**
8:7
**Esquire**
18:13,18
**Estes**
15:1 16:22
**everybody**
14:17
**exception**
2:21 12:19
**execute**
9:9,17
**exemption**
2:20 4:9
12:13 16:6
**exercise**
12:24 13:17
13:25 14:4
**exercising**
13:15
**expecting**
11:13
**expiration**
5:18 9:21,23
18:18
**expire**
5:8,10,14,24
10:3,4
**expires**
5:6 9:25
**explain**

2:9

### F
**facilities**
10:23
**fact**
11:2,6
**Falls**
12:1,4
**familiar**
11:20
**fee**
18:11
**fees**
11:4
**figure**
5:25
**Finance**
10:24
**financially**
18:9
**find**
13:21
**Firm**
18:19
**first**
6:16
**floor**
2:22 4:10
12:23
**folks**
11:6 12:23
**follow**
9:3
**following**
2:2 15:16
**foregoing**
18:2
**form**
8:6 9:8
**format**
15:24
**forms**
9:9 11:13
**forward**
15:15
**four**

5:6 12:2
**frame**
9:22
**Fraser**
2:3,9,10 3:4
3:5,8,14,20
3:24 4:3,8
4:14,19,24
5:2,11,21
6:11,14,18
6:21 7:1,6
7:12,20
8:14,19,23
9:1,11,18
9:24 10:15
10:16,19,21
11:10,23
13:4,16
14:9,16
15:1,9,12
16:18,22
**free**
2:15 3:16
15:23
**freedom**
12:24 14:4
**frown**
13:23
**full**
18:12
**further**
14:23 18:6,8
18:11

### G
**Gallegos**
15:1 16:22
**General**
18:13
**gentleman**
10:9,13
**getting**
16:6
**glad**
10:10 12:3
**go**
2:13 5:17
6:23,24 8:5



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_002917

Case 2:13-cv-00193 Document 725-19 Filed on 11/17/14 in TXSD Page 3 of 140

TX_00056811

| | | | | |
|---|---|---|---|---|
| 12:9 14:5 | hundreds | inquiries | 11:1,7,21 | matter |
| 14:15 | 13:3 | 12:6 | 11:22 15:20 | 18:4 |
| going | | interested | LIEUTENANT | mean |
| 5:17 6:2 8:9 | **I** | 18:9 | 2:1,8,24 3:3 | 13:9 |
| 8:16 9:3,14 | ID | issued | 6:6,10 7:23 | meet |
| 11:7,18 | 1:8 2:15,17 | 2:16,16 3:16 | 10:11,14 | 8:17 9:6 |
| 12:18 13:6 | 2:18 3:6,9 | 3:17 5:7 | 14:20 15:6 | megacenters |
| 13:22 | 3:9,16,17 | 10:2 | 16:17 17:2 | 11:3 |
| GOVERNOR | 3:23 4:4 | I's | limitations | members |
| 2:1,8,24 3:3 | 6:19 7:5 | 15:7 17:3 | 2:6 | 2:10 5:16 |
| 6:6,10 7:23 | 8:1 9:6 | | line | 14:20 15:6 |
| 10:11,14 | 10:22 11:7 | **J** | 8:22,23,24 | 15:12 16:17 |
| 14:20 15:6 | 11:8,13,19 | Jackson | 14:13 | 17:2,5 |
| 16:17 17:2 | 12:17 14:17 | 15:2 16:23 | lines | mid |
| | 15:17,19,21 | jail | 11:20 13:13 | 11:11 |
| **H** | 15:23,25 | 16:13 | list | mile |
| H | 16:2,5,6 | jurisdiction | 2:19 4:4 | 12:13 |
| 9:25 | identific... | 2:7 | little | miles |
| Harris | 2:19 4:13,18 | Justice | 3:12 | 12:14,17 |
| 10:25 12:5 | 5:1,4,13 | 13:23 14:12 | lives | 13:3 |
| 15:2 16:23 | 6:24 7:3,4 | | 11:17 | military |
| hear | 8:2,3,3,18 | **K** | location | 15:21 |
| 6:14 10:24 | 9:5,8,15,20 | keep | 2:20 4:5 | mine |
| 18:5 | identifier | 13:14 | long | 12:1 |
| hearing | 7:10,11 | kind | 13:13 | minor |
| 18:8 | IDs | 13:20,23 | look | 2:14 |
| hearings | 9:23 | knew | 13:5 | minutes |
| 11:11 | ID's | 6:1 | looking | 12:2 |
| Hegar | 13:18 | know | 4:15 11:8 | month |
| 15:2 16:23 | IH | 5:16 7:14 | lost | 12:8,8 |
| help | 18:19 | 13:17,23 | 16:6 | morning |
| 10:21 12:7 | illegal | | Lucio | 13:10 |
| high | 16:13 | **L** | 15:2 16:23 | motion |
| 11:11 12:22 | imagine | language | Lynne | 15:10 |
| Hinajosa | 9:20 | 2:21 4:9,21 | 1:15 18:1,17 | move |
| 15:2 16:23 | important | 5:22 | | 5:18 16:15 |
| hour | 12:25 | law | **M** | moves |
| 11:9 12:4,16 | includes | 9:6 10:21 | M | 5:20 16:18 |
| hours | 15:19 | lays | 1:15 18:1,17 | multi-task |
| 10:25 11:21 | including | 2:2 | mailing | 10:19 |
| 14:6,13 | 16:10 | legislation | 16:11 | |
| Houston | increases | 8:16 11:19 | making | **N** |
| 11:20,25 | 16:12 | 12:15 13:9 | 6:2 | natural |
| Huffman | information | let's | mandatory | 16:7 |
| 15:2 16:23 | 8:6 | 6:15 | 16:13 | Nay's |
| hundred | initial | license | Marble | 15:7 17:3 |
| 12:13,14,17 | 11:1 | 6:23 9:23 | 12:1,4 | need |



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00056812

SECTION 1:46 :00 TO 2:08:30                          MAY 09, 2011

22

4:20 10:22
11:7
neither
18:6
Nelson
15:3 16:24
new
2:15,18 3:16
3:23 4:4
6:18 9:6,19
10:8,10,13
11:7,22
12:12 15:24
16:10
Nichols
15:3 16:24
notice
16:11,11
number
2:3 11:4
14:22

**O**
obtained
6:20
obviously
11:15 13:6,9
office
6:20 12:6
13:2
offices
12:9 13:25
Ogden
15:3 16:24
okay
5:5,15 6:12
6:17 8:10
8:23 9:1,12
14:18
older
5:8,10 10:2
once
10:3
original
5:19
ought
10:20

**P**
page
4:2,12,12,16
4:16,22,23
4:24,25 5:6
8:15,21,25
paid
18:12
paid/will
18:12
parties
18:7
pass
13:10
passed
15:13
passport
15:21
Patrick
15:3 16:24
pay
11:4
penalty
16:12
people
11:12 12:4
13:11,15,17
13:21 14:10
15:17
percentag...
11:12
period
13:21
permit
14:5,14
permits
11:22
person
5:8 10:2
personal
2:16 3:17

outcome
18:10
outside
2:11,13 5:17
6:2 16:11

8:2
phone
10:18
photo
3:9 7:9,10
8:1,5,11,13
9:5,15
15:17,19,22
15:23 16:2
16:5,6
photograph
8:7,8
picked
5:22
place
6:22
places
16:12
please
7:17
poll
2:20 4:5
polling
16:12
possibility
11:5
posting
16:11
practical
8:8
precious
12:24 14:4
President
7:20 10:8
pretty
12:22
priority
12:22
probability
11:6
probably
10:20 11:8
14:6
problem
11:25
proceedings
18:3,5

project
11:3
promising
11:3
provide
15:22
provides
11:19 16:3
provisional
9:4 16:1,4
provision...
9:14
public
7:5 16:9
purpose
2:25 6:7 8:4
purposes
11:8
Putte
6:7,8,11,12
6:17,22 7:2
7:7,18 8:1
8:10,21,24
9:2,12,19
10:5 15:4
16:25

**Q**
question
5:3 7:14,17
7:22 8:14
14:21
questions
2:23 3:1,2
6:9,18 10:6
14:19,23
16:14,20

**R**
raised
11:3
reach
5:14 10:3
read
2:3
real
11:5

recognize
7:19
recognized
7:24 10:12
recognizes
2:9 15:9
recorded
18:5
recording
18:3
registrars
16:9
registration
15:18 18:19
related
18:7
religious
2:20 4:9
16:6
remember
11:10
remote
12:11 13:1
13:13
renewal
11:1
renewals
11:21
renewed
12:1
Repeatedly
10:24
replacement
3:24
report
1:7 2:13
15:10,15
16:15,19
17:4
request
2:17 3:15
requested
7:3 15:24
requests
15:25
require
11:18 15:16



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00056813

```
    15:22                 SB                  10:15,15,16         standpoint           13:13,23
requirement            2:13                 10:17,19,20          8:9                 14:2
12:16 14:13            SB14-VOTER            10:21 11:2          state                thought
requirements           1:8                  11:10,15,23          6:4,5 11:8          8:11
7:3 8:18 9:5           second               11:24 12:3           11:19 16:8          three
    9:6,21             4:14                  12:19 13:4          statewide            4:12,12,16
    14:12 16:10        secretary            13:7,16,20           12:1                4:16,23,24
requires               2:3,5 6:4,5          14:9,11,16          statute              5:1 8:15,21
16:8                   14:24,25             14:18 15:9           8:12                10:25 11:9
requiring              16:8,20,21           15:12 16:18         suffice              11:21 12:4
8:1                    section              settings             8:5                 14:6,7,13
resolution             8:22                 13:12               Suite                time
2:2,2,4,5,9            see                  Shapiro              18:19               9:22 13:11
    2:11,11,12         5:5 7:13 8:9         15:4 16:25          sure                 16:13
    3:9,15 4:16        8:15 9:2             show                 5:16                today
    5:17 6:9           Seliger              9:8 15:17           Suspending           4:20 6:15
    14:22,22           15:3 16:24           16:4                 2:6                 11:5
    15:7               Senate               showed                                   Tommy
restricted             2:2,5,7,10           11:11               _____T_____  12:7
7:10                   2:21 3:10            signed              take                 top
return                 14:22 15:10          16:5                13:12                4:11 8:21,24
16:2                   15:12,13            significant          taken                train
right                  16:16,19            3:20,22 11:4         16:6 18:8            16:9
7:4,8 12:21            17:4                 similar             talk                 Transcribed
    12:24,25          senator               9:22                10:18 11:5          1:15
    13:15,18          2:3,9,10,21           sir                 talks                transcriber
    14:1              2:24 3:4,5            2:25                 10:25                18:2
rights                3:6,8,11,14           six                 tape                 transcrip...
14:7                  3:18,20,22            9:16 16:2           18:3                 18:3,11
rise                  3:24 4:1,3            sixth               tell                 transition
2:25 6:7             4:6,8,9,11            9:7                  3:12                 13:21
Rodriguez            4:14,14,15            slower              testimony            travel
1:15 15:3            4:19,23,24            3:12                 10:24 12:6          12:12,14,16
    16:24 18:1       4:25 5:2,5            SOLUTIONS            Texas                14:4
    18:17            5:11,15,21            18:18                12:11,17            true
role                 5:25 6:6,8            somebody             13:2 14:5          12:1
14:24 16:20          6:11,11,12            7:19                 18:13,20            try
                     6:13,14,17            sonogram             thank                6:15
_____S_____ 6:18,21,22            12:12,14,20          6:17 7:25          trying
Safety               7:1,2,6,7             12:23                8:10 10:5,6         3:13 5:25
7:5                  7:12,13,16            sorry                14:18 17:4          6:1 10:18
San                  7:18,20,21            4:19 7:14           things               two
18:20               7:23,25,25            8:19                 4:5                 4:2,22 8:22
saying               8:10,14,19            SPEAKER             think                10:25 14:7
5:23                 8:21,23,24            10:8,10,13           5:19 7:8 8:5       TX
says                 9:1,2,11,12           specified            8:8 12:5,8         18:17
5:12 7:8            9:18,19,24            5:6 10:1             12:21,23           TXDot
                     10:5,6,11
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

```
   2:17 3:15           12:25 13:15         14:18 15:5      10               80,000
                       13:19,22            17:1            18:19            12:7
        U              14:1,3,5,13         Williams        12               8640
unable                 14:15,17            7:13,16,19      15:7 17:3        18:17
13:22                  15:18 16:1          7:21,24,25      12/31/13
unanswered             16:11               11:2,24         18:18                9
12:9                  voter                12:7 15:5       14               90
unattended            3:9,9,23            17:1            2:7,13 3:10      11:12
13:14                  8:17 9:3           Wilson           15:11,13         935
unavailab...           11:7 12:17         18:13            16:16,19        2:3,5,11
13:24                  15:18,25           work             17:4             14:22
understand             16:1,5,9           8:16 13:12      19               9901
8:15 9:13            voters              workers          15:7 17:3       18:19
   10:22 11:25        15:16 16:4          16:10           19th
   18:5              votes               working          18:14
understan...          13:10               4:20 6:15
11:23               voting              worried               2
unexpired             9:4 11:16          13:8,11         2
15:19                 16:13              worse            8:24
unintended                               6:3             2012
13:8                       W             wouldn't         18:15
urban               wait                 11:16            210
13:12,25              6:13 11:9          writers          18:20
Uresti                12:4 14:5          14:2             24
12:19 15:4            14:13                                12:16
   16:25             walk                     Y
usually              3:11                year                  3
8:5                  want                 12:2,8          331-2280
                     5:15                years            18:20
        V            wanted               5:8,23 10:2
Van                  7:13                 yield                 6
6:7,8,11,12         Watson               3:4,5 6:11      630
   6:17,22 7:2       15:4 16:25           7:16,21         18:19
   7:7,18 8:1       Wentworth             10:9,10,13      65
   8:10,21,24        15:4 16:25           10:15,16        5:19,19
   9:2,12,19        west                 Your's
   10:5 15:4         12:11,17             7:10                  7
   16:25              13:2 15:4                           70
verbiage              16:25 18:19             Z           5:8,10,14,18
4:4                 we're                Zaffirini        5:20,21,23
violates             11:13 13:6          15:5 17:1        10:2,3,4
14:7                we've                                 77
virtually            11:3 13:4                #           18:19
15:14               Whitmire             #123308686       78230
vote                 10:12,15,17         1:8              18:20
3:6 8:5 9:14         10:20 11:15
   11:8 12:21        12:3 13:7                1                  8
                     13:20 14:11
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

# SENATE JOURNAL

## EIGHTY-SECOND LEGISLATURE — REGULAR SESSION

## AUSTIN, TEXAS

## PROCEEDINGS

### FIFTY-SIXTH DAY
(Monday, May 9, 2011)

The Senate met at 11:13 a.m. pursuant to adjournment and was called to order by Senator Eltife.

The roll was called and the following Senators were present: Birdwell, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Ogden, Patrick, Rodriguez, Seliger, Shapiro, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

The Presiding Officer announced that a quorum of the Senate was present.

Pastor Billy Sanders, North Pointe Church, Copperas Cove, was introduced by Senator Birdwell and offered the invocation as follows:

Thank you and, as the Lord taught us to pray in Matthew 6:9-13, let us pray: Our Father which art in heaven, hallowed be Thy name. Thy kingdom come. Thy will be done in our State of Texas, as it is in heaven. Give us this day our daily bread and the wisdom to share it. And forgive us our debts and trespasses, as we forgive our debtors and those that have trespassed against us. And lead us not into the temptation to do our will, but deliver us from the evil that comes in being selfish. For Thine is the kingdom that we desire to pattern after and the power we need that comes to accomplish it and the glory and praise we give only to You, for ever and ever, in the name of the Father and of the Son and of the Holy Spirit, in the name of our lord and savior, Jesus Christ, we pray. Amen and amen.

Senator Whitmire moved that the reading of the Journal of the proceedings of the previous day be dispensed with and the Journal be approved as printed.

The motion prevailed without objection.

### INTRODUCTION OF
### BILLS AND RESOLUTIONS POSTPONED

The Presiding Officer announced that the introduction of bills and resolutions on first reading would be postponed until the end of today's session.

There was no objection.

## PHYSICIAN OF THE DAY

Senator Hegar was recognized and presented Dr. Kanaka Paladugu of Bastrop as the Physician of the Day.

The Senate welcomed Dr. Paladugu and thanked her for her participation in the Physician of the Day program sponsored by the Texas Academy of Family Physicians.

## SENATE RESOLUTION 916

Senator Lucio offered the following resolution:

WHEREAS, The Senate of the State of Texas takes great pleasure in recognizing the inaugural class of Bush School Capstone Scholars, a program developed by the George Bush School of Government and Public Service at Texas A&M University; and

WHEREAS, One of the school's cornerstones is the commitment to educate students to become principled leaders in public service; the primary means by which this commitment is realized is through the Capstone program, which is designed to test the knowledge and abilities students have developed through their previous classes and experiences; and

WHEREAS, The Legislature of the State of Texas is the institution in which the most challenging public policy issues of the day are debated and resolved; these scholars answered the call to public service and rose to the challenge of participating in the first Bush School Legislative Capstone program, bringing their skills and talents to bear in the 82nd Texas Legislature and learning firsthand how public policy is shaped; and

WHEREAS, The following scholars have demonstrated exceptional dedication and achievement during their service for the legislature: James R. Close from Houston, serving in the office of Senator Eddie Lucio for the Committee on International Relations and Trade; D. Benjamin Maddox from San Antonio, serving in the office of Representative Diane Patrick; Nicolas D. Norboge from Wimberley, working as a legislative liaison with the Texas Transportation Institute; Brady D. Olsen from Haltom City, serving for the Legislative Budget Board; Katherine Vedlitz from College Station, serving in the House Democratic Caucus office; Michael Walter from Houston, serving for the House Committee on Homeland Security and Public Safety; and Craig Welkener from Allen, working as a legislative liaison with the Texas Transportation Institute; now, therefore, be it

RESOLVED, That the Senate of the State of Texas, 82nd Legislature, hereby commend these promising students for their remarkable service this session and wish them continued success as they prepare to become the leaders of our great state; and, be it further

RESOLVED, That a copy of this Resolution be prepared for them as an expression of esteem and appreciation from the Texas Senate.

**SR 916** was read and was adopted without objection.

### GUESTS PRESENTED

Senator Lucio was recognized and introduced to the Senate Bush School Capstone Scholars: James R. Close, Craig Welkener, Michael Walter, Brady D. Olsen, Nick Norboge, and Professor Ann Bowman.

The Senate welcomed its guests.

### HOUSE CONCURRENT RESOLUTION 139

The Presiding Officer laid before the Senate the following resolution:

**HCR 139**, In memory of former Texas secretary of state Myra McDaniel.

ELLIS

The resolution was read.

On motion of Senator Ellis, the resolution was considered immediately and was adopted by a rising vote of the Senate.

In honor of the memory of Myra McDaniel, the text of the resolution is printed at the end of today's *Senate Journal.*

### GUESTS PRESENTED

Senator Ellis was recognized and introduced to the Senate Reuben McDaniel, Jr., Joan Phillips, Diane Rhodes, Mike Rhodes, Lauren Eva Riley, and Joseph Ted Castleberry.

The Senate welcomed its guests and extended its sympathy.

### REMARKS ORDERED PRINTED

On motion of Senator Lucio and by unanimous consent, the remarks by Senators Ellis, Lucio, Watson, and West regarding **HCR 139** were ordered reduced to writing and printed in the *Senate Journal* as follows:

**Senator Ellis:** Thank you, Mr. President and Members. Myra McDaniel and her husband were two of the first people that I met when I came to Austin. She was a tremendous mentor and would open up her home to me and the likes of Ron Kirk when we were in law school. In fact, she opened her home up so much, I was about 50 pounds heavier as a result of going to their home on a regular basis. It was a tremendous loss for our state when Myra passed on. She certainly didn't look like she was 77, and from time to time, when I walk around the halls, I still think that I'm talking to her from time to time, because she did a great job of advising many of us around this Capitol. She died last February the 25th. It was a great loss, as I said. Members, we're joined today by her husband, Reuben McDaniel, Jr.; her daughter, Diane Rhodes; her son-in-law, Mike Rhodes; and sister-in-law, Joan Phillips; and grandchildren, Lauren and Joseph. Members, I'm just so glad to have known Myra McDaniel, and her memory does live on. And I hope that Members will take the time to give their condolences to her great family.

**Senator Watson:** Thank you very much, Mr. President. I just want to say thank you to Senator Ellis for bringing this resolution forward. I feel the same way. When Liz and I first got to Austin, Texas, back in the early '80s, Myra was already doing so

much, and so much a part of what was going on, and was someone that, for a young lawyer that hit this town and wanted to be involved in one way or another, she was always there, able to provide advice and counsel and do it in a way where you knew you were getting the kind of advice and counsel that would actually help you to succeed. Her work in government is going to be a lasting legacy. And it's going to be the kind of thing that those of us who seek out public service, will, I hope, from time to time, look back and ask if we're living up to that, doing it in a way that sometimes is far, far more quiet than what we tend to do today when we're involved in public service but done in such a way that when it gets real–I remember listening to her talk from time to time in a very quiet way, but it thundered in your ear what she was actually saying to you. I, my condolences go out to you. I know it must've been a wonderful, wonderful thing to have somebody who cared so deeply and loved so well as your family member. And, I'd be remiss if I didn't take a moment to thank you for loaning her to the people of the State of Texas and to Central Texas.

**Senator Lucio:** Thank you, Mr. President, and thank you, Senator Ellis, for bringing this important resolution to the floor to recognize one of Texas' best. She was such a lady. Great smile, and all of us who have served so many years in public service at one time or another get to know our Secretary of State. And it was just such a pleasure to converse with her. She was so bright and just so proactive about everything she did. And I'm happy to have an opportunity to publicly tell you that all of us in South Texas admired and respected Ms. McDaniel. Happy to have you here on the floor.

**Senator West:** Thank you very much, Mr. President, Members. You know, oftentimes, people live and they're not remembered. Myra lived and is remembered, not by just you as her family, not by just the legal community in which she was a giant, not by just a community that she lived in where she was a civic servant but by the great State of Texas. We remember her, not just as a Secretary of State, but as a Texan that many of us go to for advice and counsel and her quiet demeanor. Maybe she wasn't that way at home, but at least to us, her quiet demeanor, she would give thought to the question that was asked, and she was very deliberative in the advice that she gave. And in most instances, it was the correct advice. And so, I join the other Senators on this floor to pay tribute to a great wife, mother, sister, most of all, a great Texan. She will be remembered in perpetuity. Thank you.

### MESSAGE FROM THE HOUSE

HOUSE CHAMBER
Austin, Texas
Monday, May 9, 2011 - 1

The Honorable President of the Senate
Senate Chamber
Austin, Texas

Mr. President:

I am directed by the House to inform the Senate that the House has taken the following action:

THE HOUSE HAS PASSED THE FOLLOWING MEASURES:

**HB 710**                       Walle
Relating to verification of identity of applicants for benefits under and prevention of duplicate participation in the financial assistance and supplemental nutrition assistance programs.

**HB 751**                       Lewis
Relating to the attendance by a quorum of a legislative standing committee at a caucus meeting.

**HB 1278**                      Coleman
Relating to regulation by a property owners' association of certain religious displays.

**HB 1418**                      Hughes
Relating to inmate litigation.

**HB 1788**                      Farias
Relating to capturing reptiles and amphibians by nonlethal means; providing a penalty.

**HB 2029**                      Flynn
Relating to the sale of a cemetery plot; providing penalties.

**HB 2197**                      Rodriguez, Eddie
Relating to the purchase of property as part of a homestead land bank program.

**HB 2329**                      Zedler
Relating to the confidentiality of certain information regarding victims of trafficking of persons and to the issuance and enforcement of protective orders to protect victims of trafficking of persons; providing penalties.

**HB 2610**                      Guillen
Relating to facilitating access to certain public assistance benefits programs and health care providers and services through a community-based navigator program and through promotoras and community health workers.

**HB 2678**                      Smith, Todd
Relating to driver training and education.

**HB 2704**                      Sheffield
Relating to a parent's right to object to physical fitness assessment of the parent's child by a school district.

**HB 2814**                      Hochberg
Relating to electronic voter registration.

**HB 3393**                      Hughes
Relating to the filing by a court reporter of an official transcript of a court proceeding.

**HB 3473**                      Gallego
Relating to a defense to prosecution for, the punishment for, and the civil and other consequences of committing the offense of prostitution.

**HB 3483**                      Christian
Relating to seller's disclosure regarding the presence of contaminants on residential real property.

**SB 132**            Wentworth           Sponsor: Flynn
Relating to registration with the Selective Service System of certain applicants for a driver's license or personal identification certificate.
(Amended)

**SB 1104**          Jackson            Sponsor: Smith, Wayne
Relating to the operation, powers, and duties of ship channel districts.

**SB 1107**          Davis              Sponsor: Howard, Charlie
Relating to the vaccination against bacterial meningitis of entering students at public and private or independent institutions of higher education.
(Amended)

**SB 1168**          Carona            Sponsor: Harper-Brown
Relating to the repeal of the certification process for personnel service owners and the regulation of personnel services.

**SB 1341**          Seliger            Sponsor: Elkins
Relating to the participation by a taxing unit in a suit to compel an appraisal review board to order a change in an appraisal roll.

**SB 1680**          Ellis               Sponsor: Murphy
Relating to certain evidence in a prosecution of fraud or theft involving Medicaid or Medicare benefits and to certain criminal procedures involving offenses in general.

Respectfully,

/s/Robert Haney, Chief Clerk
House of Representatives

### GUESTS PRESENTED

Senator Lucio was recognized and introduced to the Senate a delegation from Pharr-San Juan-Alamo North High School.

Senator Lucio was again recognized and introduced to the Senate Harmony Science Academy students serving as Honorary Senate Pages today: Luis Ong, Leigh Mata, Abelina Reves, Amairani Benavides, and Antonio Beltran.

The Senate welcomed its guests.

### CONCLUSION OF MORNING CALL

The Presiding Officer at 11:41 a.m. announced the conclusion of morning call.

### SENATE BILL 980 WITH HOUSE AMENDMENT

Senator Carona called **SB 980** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Floor Amendment No. 1**

Amend **SB 980** (house committee report) in SECTION 3 of the bill, in added Section 52.002(d)(2), Utilities Code (page 4, line 2), between "law" and the semicolon, by inserting ", the applicability of Chapter 66, or a requirement to make a payment under Chapter 66".

The amendment was read.

Senator Carona moved to concur in the House amendment to **SB 980**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

### SENATE BILL 501 WITH HOUSE AMENDMENT

Senator West called **SB 501** from the President's table for consideration of the House amendment to the bill.

The Presiding Officer laid the bill and the House amendment before the Senate.

**Floor Amendment No. 1 on Third Reading**

Amend **SB 501** on third reading, in SECTION 1 of the bill, in added Section 2.003, Human Resources Code (page 4, line 16), by striking "and private".

The amendment was read.

Senator West moved to concur in the House amendment to **SB 501**.

The motion prevailed by the following vote: Yeas 31, Nays 0.

#### (President Pro Tempore Ogden in Chair)

### COMMITTEE SUBSTITUTE
### SENATE BILL 303 ON SECOND READING

On motion of Senator Nichols and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSB 303** at this time on its second reading:

**CSSB 303**, Relating to health care services provided or paid by a hospital district.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

### COMMITTEE SUBSTITUTE
### SENATE BILL 303 ON THIRD READING

Senator Nichols moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 303** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1866 ON SECOND READING

Senator Davis moved to suspend the regular order of business to take up for consideration **CSSB 1866** at this time on its second reading:

**CSSB 1866**, Relating to the selection of providers of professional services by governmental entities.

The motion prevailed.

Senators Birdwell, Carona, Harris, Huffman, Nelson, Nichols, Patrick, and Shapiro asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSSB 1866** by striking Sections 1 and 2 of the bill and replacing with the following new Sections 1 and 2 to read as follows:

SECTION 1. Section 2254.003, Government Code, is amended by adding Subsection (a-1) to read as follows:

(a-1) Unless inconsistent with the criteria in Subsection (a), a governmental entity selecting a provider of or awarding a contract for professional services may consider:

(1) the impact on the entity's ability to comply with laws, rules, or policies regarding, as applicable:

(A) historically underutilized or minority-owned businesses;

(B) small business development programs; and

(C) any other contracting program approved by the entity that relates to (A) or (B); and

(2) the locations of the provider's or group or association of providers' places of business where the work will be performed if, in the entity's governing body's judgment, the location of the places of business where the work will be performed will impact the most efficient and economical provision of the services.

SECTION 2. Section 2254.004, Government Code, is amended by adding Subsection (a-1) to read as follows:

(a-1) Unless inconsistent with the criteria in Subsection (a), a governmental entity selecting a provider of or awarding a contract for architectural, engineering, or land surveying services may consider:

(1) the impact on the entity's ability to comply with laws, rules, or policies regarding, as applicable:

(A) historically underutilized or minority-owned businesses;

(B) small business development programs; and

(C) any other contracting program approved by the entity that relates to (A) or (B); and

(2) the locations of the provider's places of business where the work will be performed if, in the entity's governing body's judgment, the location of the places of business where the work will be performed will impact the most efficient and economical provision of the services.

The amendment to **CSSB 1866** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

TX_00003198

On motion of Senator Davis and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1866** as amended was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment except as follows:

Nays: Birdwell, Carona, Harris, Hegar, Huffman, Nelson, Nichols, Patrick, Shapiro.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1866 ON THIRD READING

Senator Davis moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1866** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 25, Nays 6.

Yeas: Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Ogden, Rodriguez, Seliger, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Carona, Harris, Nichols, Patrick, Shapiro.

The bill was read third time and was passed by the following vote: Yeas 22, Nays 9.

Yeas: Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Hinojosa, Jackson, Lucio, Ogden, Rodriguez, Seliger, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Carona, Harris, Hegar, Huffman, Nelson, Nichols, Patrick, Shapiro.

### HOUSE BILL 610 ON SECOND READING

On motion of Senator Seliger and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 610** at this time on its second reading:

**HB 610**, Relating to certain notices sent by the Texas Commission on Environmental Quality.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 610 ON THIRD READING

Senator Seliger moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 610** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1386 ON SECOND READING

Senator Lucio moved to suspend the regular order of business to take up for consideration **CSSB 1386** at this time on its second reading:

**CSSB 1386**, Relating to the refusal to register motor vehicles by a county assessor-collector or the Texas Department of Motor Vehicles.

The motion prevailed.

Senators Jackson and Nelson asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment except as follows:

Nays:  Hegar, Jackson, Nelson.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1386 ON THIRD READING

Senator Lucio moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1386** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 29, Nays 2.

Yeas:  Birdwell, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Lucio, Nichols, Ogden, Patrick, Rodriguez, Seliger, Shapiro, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays:  Jackson, Nelson.

The bill was read third time and was passed by the following vote: Yeas 28, Nays 3.

Yeas:  Birdwell, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos, Harris, Hinojosa, Huffman, Lucio, Nichols, Ogden, Patrick, Rodriguez, Seliger, Shapiro, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Williams, Zaffirini.

Nays:  Hegar, Jackson, Nelson.

### HOUSE BILL 1806 ON SECOND READING

Senator Hegar moved to suspend the regular order of business to take up for consideration **HB 1806** at this time on its second reading:

**HB 1806**, Relating to fishing tournament fraud; providing penalties.

The motion prevailed.

Senator Shapiro asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Nays:  Shapiro.

## HOUSE BILL 1806 ON THIRD READING

Senator Hegar moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 1806** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 1.

Nays:  Shapiro.

## COMMITTEE  SUBSTITUTE
## SENATE BILL 905 ON SECOND READING

Senator Patrick moved to suspend the regular order of business to take up for consideration **CSSB 905** at this time on its second reading:

**CSSB 905**, Relating to the application of certain concealed handgun license laws to statewide elected officials, certain current and former members of the legislature, and certain federal and state employees.

The motion prevailed by the following vote:  Yeas 25, Nays 6.

Yeas:  Carona, Deuell, Duncan, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Patrick, Seliger, Shapiro, Uresti, Van de Putte, Watson, West, Whitmire, Williams, Zaffirini.

Nays:  Birdwell, Davis, Ellis, Ogden, Rodriguez, Wentworth.

The bill was read second time and was passed to engrossment by the following vote:  Yeas 25, Nays 6.  (Same as previous roll call)

## COMMITTEE  SUBSTITUTE
## SENATE BILL 905 ON THIRD READING

Senator Patrick moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 905** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 25, Nays 6.

Yeas:  Carona, Deuell, Duncan, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Patrick, Seliger, Shapiro, Uresti, Van de Putte, Watson, West, Whitmire, Williams, Zaffirini.

Nays:  Birdwell, Davis, Ellis, Ogden, Rodriguez, Wentworth.

The bill was read third time and was passed by the following vote: Yeas 25, Nays 6. (Same as previous roll call)

**(Senator Eltife in Chair)**

## HOUSE BILL 571 ON SECOND READING

Senator Williams moved to suspend the regular order of business to take up for consideration **HB 571** at this time on its second reading:

**HB 571**, Relating to the regulation of certain aggregate production operations by the Texas Commission on Environmental Quality; providing penalties.

The motion prevailed.

Senator Nelson asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading except as follows:

Nays:  Nelson.

## HOUSE BILL 571 ON THIRD READING

Senator Williams moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 571** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 30, Nays 1.

Nays:  Nelson.

The bill was read third time and was passed by the following vote: Yeas 30, Nays 1.  (Same as previous roll call)

## SENATE CONCURRENT RESOLUTION 32
## ON SECOND READING

Senator Seliger moved to suspend the regular order of business to take up for consideration **SCR 32** at this time on its second reading:

**SCR 32**, Expressing opposition to federal regulation of intrastate water resources.

The motion prevailed.

Senators Ellis, Uresti, Watson, and Zaffirini asked to be recorded as voting "Nay" on suspension of the regular order of business.

The resolution was read second time and was adopted by the following vote:  Yeas 27, Nays 4.

Yeas:  Birdwell, Carona, Davis, Deuell, Duncan, Eltife, Estes, Fraser, Gallegos, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Ogden, Patrick, Rodriguez, Seliger, Shapiro, Van de Putte, Wentworth, West, Whitmire, Williams.

Nays:  Ellis, Uresti, Watson, Zaffirini.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1334 ON SECOND READING

Senator Deuell moved to suspend the regular order of business to take up for consideration **CSSB 1334** at this time on its second reading:

**CSSB 1334**, Relating to the dismissal of complaints against property tax professionals.

The motion prevailed.

Senator Nichols asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment except as follows:

Nays:　Nichols.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1334 ON THIRD READING

Senator Deuell moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1334** be placed on its third reading and final passage.

The motion prevailed by the following vote:　Yeas 30, Nays 1.

Nays:　Nichols.

The bill was read third time and was passed by the following vote:　Yeas 30, Nays 1.　(Same as previous roll call)

## SENATE BILL 1895 ON SECOND READING

On motion of Senator Hegar and by unanimous consent, the regular order of business was suspended to take up for consideration **SB 1895** at this time on its second reading:

**SB 1895**, Relating to director elections and powers of the Texana Groundwater Conservation District.

The bill was read second time and was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

## SENATE BILL 1895 ON THIRD READING

Senator Hegar moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **SB 1895** be placed on its third reading and final passage.

The motion prevailed by the following vote:　Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

## COMMITTEE SUBSTITUTE
## SENATE BILL 1809 ON THIRD READING

Senator Lucio moved to suspend the regular order of business to take up for consideration **CSSB 1809** at this time on its third reading and final passage:

**CSSB 1809**, Relating to a study by the comptroller of public accounts of the economic impact of the Texas-Mexico border wall in the State of Texas.

The motion prevailed by the following vote:  Yeas 23, Nays 8.

Yeas: Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Gallegos, Hegar, Hinojosa, Huffman, Jackson, Lucio, Ogden, Rodriguez, Seliger, Uresti, Van de Putte, Watson, West, Whitmire, Williams, Zaffirini.

Nays:  Birdwell, Fraser, Harris, Nelson, Nichols, Patrick, Shapiro, Wentworth.

The bill was read third time.

Senator Lucio offered the following amendment to the bill:

**Floor Amendment No. 1 on Third Reading**

Amend **CSSB 1809** (senate committee printing) on third reading by inserting the following new SECTION and renumbering subsequent SECTIONS accordingly:

SECTION _____.  This Act does not make an appropriation. A provision in this Act that creates a new governmental program, creates a new entitlement, or imposes a new duty on a governmental entity is not mandatory during a fiscal period for which the legislature has not made a specific appropriation to implement the provision. This section does not apply if this Act does not require an appropriation.

The amendment to **CSSB 1809** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1 on Third Reading.

On motion of Senator Lucio and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1809** as amended was finally passed by the following vote: Yeas 22, Nays 9.

Yeas: Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Gallegos, Hinojosa, Huffman, Jackson, Lucio, Ogden, Rodriguez, Seliger, Uresti, Van de Putte, Watson, West, Whitmire, Williams, Zaffirini.

Nays: Birdwell, Fraser, Harris, Hegar, Nelson, Nichols, Patrick, Shapiro, Wentworth.

## HOUSE BILL 1832 ON SECOND READING

On motion of Senator Williams and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 1832** at this time on its second reading:

**HB 1832**, Relating to the law governing the Lower Neches Valley Authority; providing authority to issue bonds.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 1832 ON THIRD READING

Senator Williams moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 1832** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### HOUSE BILL 2785 ON SECOND READING

On motion of Senator Shapiro and by unanimous consent, the regular order of business was suspended to take up for consideration **HB 2785** at this time on its second reading:

**HB 2785**, Relating to the creation of the Select Committee on Economic Development.

The bill was read second time and was passed to third reading by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to third reading.

### HOUSE BILL 2785 ON THIRD READING

Senator Shapiro moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **HB 2785** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

### MOTION TO PLACE
### HOUSE BILL 2360 ON SECOND READING

Senator Ogden moved to suspend the regular order of business to take up for consideration **HB 2360** at this time on its second reading:

**HB 2360**, Relating to the creation of the Corn Hill Regional Water Authority; providing authority to issue bonds.

Senator Ogden withdrew the motion to suspend the regular order of business.

### CONGRATULATIONS EXTENDED

Senator West was recognized and, on behalf of the Senate, extended congratulations for the Dallas Mavericks' win over the Los Angeles Lakers.

## CONFERENCE COMMITTEE ON HOUSE BILL 1555

Senator Ellis called from the President's table, for consideration at this time, the request of the House for a conference committee to adjust the differences between the two Houses on **HB 1555** and moved that the request be granted.

The motion prevailed without objection.

The Presiding Officer asked if there were any motions to instruct the conference committee on **HB 1555** before appointment.

There were no motions offered.

Accordingly, the Presiding Officer announced the appointment of the following conferees on the part of the Senate:  Senators Ellis, Chair; Shapiro, Whitmire, Patrick, and Huffman.

### (President in Chair)

### SENATE RESOLUTION 935

Senator Fraser offered the following resolution:

BE IT RESOLVED by the Senate of the State of Texas, 82nd Legislature, Regular Session, 2011, That Senate Rule 12.03 be suspended in part as provided by Senate rule 12.08 to enable the conference committee appointed to resolve the differences on Senate Bill 14 (requirements to vote, including presenting proof of identification; providing criminal penalties), to consider and take action on the following matters:

(1)  Senate Rule 12.03(1) is suspended to permit the committee to change text not in disagreement in proposed SECTION 11 of the bill, in added Section 63.0012(a), Election Code, to read as follows:

(a)  An election officer shall distribute written notice of the identification that will be required for voting beginning with elections held after January 1, 2012, and information on obtaining identification without a fee under Chapter 521A, Transportation Code, to each voter who, when offering to vote, presents a form of identification that will not be sufficient for acceptance as a voter under this chapter beginning with those elections.

Explanation: This change is necessary to update the cross-reference to reflect the addition of Chapter 521A, Transportation Code.

(2)  Senate Rule 12.03(1) is suspended to permit the committee to change text not in disagreement in proposed SECTION 14 of the bill, in amended Section 63.0101(1), Election Code, to read as follows:

(1) a driver's license, election identification certificate, or personal identification card issued to the person by the Department of Public Safety that has not [or a similar document issued to the person by an agency of another state, regardless of whether the license or card has] expired or that expired no earlier than 60 days before the date of presentation;

Explanation: This change is necessary to update the list of acceptable forms of identification to reflect the addition of election identification certificates in Chapter 521A, Transportation Code.

(3) Senate Rule 12.03(1) is suspended to permit the committee to change text not in disagreement in proposed SECTION 17 of the bill, in added Section 65.054(b)(2)(B), Election Code, to read as follows:

(B) notwithstanding Chapter 110, Civil Practice and Remedies Code, executes an affidavit under penalty of perjury that states the voter has a religious objection to being photographed and the voter has consistently refused to be photographed for any governmental purpose from the time the voter has held this belief; or

Explanation: This change is necessary to clarify the religious objection exception to the requirement that a voter have photo identification to vote.

(4) Senate Rule 12.03(1) is suspended to permit the committee to change text not in disagreement in proposed SECTION 18 of the bill, in added Section 65.0541(a), Election Code, to read as follows:

(a) A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election:

(1) present a form of identification described by Section 63.0101 to the voter registrar for examination; or

(2) execute an affidavit described by Section 65.054(b)(2)(B) or (C) in the presence of the voter registrar.

Explanation: This change is necessary to update the cross-reference to reflect the addition of Section 65.054(b)(2)(C), Election Code.

(5) Senate Rule 12.03(4) is suspended to permit the committee to add text on a matter not included in either version of the bill by adding the following new SECTION to the bill:

SECTION 20. Subtitle B, Title 7, Transportation Code, is amended by adding Chapter 521A to read as follows:

CHAPTER 521A. ELECTION IDENTIFICATION CERTIFICATE

Sec. 521A.001. ELECTION IDENTIFICATION CERTIFICATE. (a) The department shall issue an election identification certificate to a person who states that the person is obtaining the certificate for the purpose of satisfying Section 63.001(b), Election Code, and does not have another form of identification described by Section 63.0101, Election Code, and:

(1) who is a registered voter in this state and presents a valid voter registration certificate; or

(2) who is eligible for registration under Section 13.001, Election Code, and submits a registration application to the department.

(b) The department may not collect a fee for an election identification certificate or a duplicate election identification certificate issued under this section.

(c) An election identification certificate may not be used or accepted as a personal identification certificate.

(d) An election officer may not deny the holder of an election identification certificate the ability to vote because the holder has an election identification certificate rather than a driver's license or personal identification certificate issued under this subtitle.

(e) An election identification certificate must be similar in form to, but distinguishable in color from, a driver's license and a personal identification certificate. The department may cooperate with the secretary of state in developing the form and appearance of an election identification certificate.

(f) The department may require each applicant for an original or renewal election identification certificate to furnish to the department the information required by Section 521.142.

(g) The department may cancel and require surrender of an election identification certificate after determining that the holder was not entitled to the certificate or gave incorrect or incomplete information in the application for the certificate.

(h) A certificate expires on a date specified by the department, except that a certificate issued to a person 70 years of age or older does not expire.

Explanation: This addition is necessary to provide election identification certificates to certain voters without charge to enable those voters to meet the photo identification requirements for voting.

**SR 935** was read and was adopted by the following vote: Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

## CONFERENCE COMMITTEE REPORT ON
## SENATE BILL 14 ADOPTED

Senator Fraser called from the President's table the Conference Committee Report on **SB 14**. The Conference Committee Report was filed with the Senate on Wednesday, May 4, 2011.

On motion of Senator Fraser, the Conference Committee Report was adopted by the following vote: Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

## BILLS AND RESOLUTIONS SIGNED

The President announced the signing of the following enrolled bills and resolutions in the presence of the Senate after the captions had been read:

**SB 18, SB 265, SB 378, SB 528, SB 653, SB 820, SB 877, SB 918, SB 1195, SB 1272, SB 1303, SB 1490, SB 1568, SB 1716, SJR 4, HB 15, HB 46, HB 906, HB 984, HB 1032, HB 1346, HB 1625, HB 2561, HCR 45.**

### SENATE BILL 201 WITH HOUSE AMENDMENTS

Senator Uresti called **SB 201** from the President's table for consideration of the House amendments to the bill.

The President laid the bill and the House amendments before the Senate.

**Floor Amendment No. 1**

Amend **SB 201** (house committee report) as follows:

SECTION ____. Subchapter B, Chapter 23, Tax Code, is amended by adding Section 23.231 to read as follows:

Sec. 23.231.    LIMITATION ON APPRAISED VALUE OF RESIDENCE HOMESTEADS OF CERTAIN VETERANS. (a) This section applies only to a residence owned by a veteran of the armed services of the United States who receives from the United States Department of Veteran Affairs or its successor a disability rating of fifty percent or greater that is donated by and legal title transferred from a charitable organization described by Section 11.11(c) of this code.

(b) For the purpose of appraising property that is donated and transferred as provided by subsection (a) and qualifies under Sections 11.13 or 11.131 of this code as a residence homestead, the chief appraiser shall appraise the property at 30 percent of its market value.

**Floor Amendment No. 1 on Third Reading**

Amend Floor Amendment No. 1 to **SB 201** (second reading, as amended) by Callegari as follows:

(1) On page 1, line 11, strike "11.11(c)" and substitute "11.18(c)".

The amendments were read.

Senator Uresti moved that the Senate do not concur in the House amendments, but that a conference committee be appointed to adjust the differences between the two Houses on the bill.

The motion prevailed without objection.

The President asked if there were any motions to instruct the conference committee on **SB 201** before appointment.

There were no motions offered.

The President announced the appointment of the following conferees on the part of the Senate:  Senators Uresti, Chair; Hinojosa, Wentworth, Birdwell, and Williams.

### SENATE BILL 893 WITH HOUSE AMENDMENT

Senator Whitmire called **SB 893** from the President's table for consideration of the House amendment to the bill.

The President laid the bill and the House amendment before the Senate.

**Amendment**

Amend **SB 893** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED

AN ACT

relating to motor fuel quality and testing.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subsection (c), Section 12.020, Agriculture Code, is amended to read as follows:

(c) The provisions of law subject to this section and the applicable penalty amounts are as follows:

| Provision | Amount of Penalty |
|---|---|
| [Chapter 41 | not more than $5,000] |
| Chapters 13, 14A, 17, 18, 19, 41, 46, 61, 72, 73, 74, 76, 94, 95, 101, 102, 103, 121, 125, 132, and 134 | not more than $5,000 |
| [Subchapter B, Chapter 71 | |
| [Chapter 19 | |
| [Chapter 76 | not more than $5,000] |
| Subchapters A, B, and C, Chapter 71 | |
| [Chapters 72, 73, and 74] | not more than $5,000 |
| Chapter 14 | not more than $10,000 |
| Chapter 1951, Occupations Code | not more than $5,000 |
| Chapter 153, Natural Resources Code | not more than $5,000. |

SECTION 2. Subsection (a), Section 17.052, Agriculture Code, is amended to read as follows:

(a) Except as provided by Subsection (b), a distributor, supplier, wholesaler, or jobber of motor fuel may not deliver to an outlet in this state a motor fuel mixture that contains ethanol or methanol exceeding one percent by volume of the mixture unless, at the time of the delivery of the mixture, the person also delivers to the outlet receiving the delivery[:

[(1) signs required by Section 17.051 in a number sufficient for the dealer receiving the mixture to comply with that section; and

[(2)] a manifest, bill of sale, bill of lading, or other document evidencing delivery of the mixture, that[:

[(A)] includes a statement containing:

(1) [(i)] the percentage of ethanol or methanol contained in the mixture; and

(2) [(ii)] the types and percentages of any associated cosolvents contained in the mixture[; and

[(B) evidences delivery of the signs required under Subdivision (1)].

SECTION 3. Section 17.053, Agriculture Code, is amended to read as follows:

Sec. 17.053. RECORD OF DELIVERY DOCUMENTS; INSPECTION AUTHORIZED. (a) Each dealer shall keep a copy of each document required to be delivered to the dealer by Section 17.052 until the fourth [first] anniversary of the

TX_00003210

delivery date. [~~During the first 60 days following delivery of a fuel mixture subject to this chapter, the dealer shall keep a copy at the station or retail outlet where the motor fuel was delivered.~~]

(b)  Each distributor, supplier, wholesaler, and jobber of motor fuel shall keep [~~at the person's principal place of business~~] a copy of each document required to be delivered to the dealer by Section 17.052 until the fourth [~~first~~] anniversary of the delivery date.

(c)  The commissioner or an authorized representative of the commissioner may inspect documents described by this section. On written notice presented by the commissioner or an authorized representative of the commissioner to any employee at a dealer's station or retail outlet or mailed to the principal place of business of a dealer, distributor, supplier, wholesaler, or jobber, the dealer, distributor, supplier, wholesaler, or jobber shall provide the commissioner or authorized representative of the commissioner with the documents described by this section within the period specified in the notice.

(d)  The commissioner by rule may:

(1)  require each dealer, distributor, supplier, wholesaler, and jobber to maintain and make available to the department:

(A)  invoices, receipts, or other transmittal documents or records, including electronically stored information, showing or describing the purchase, sale, delivery, or distribution of motor fuel;

(B)  invoices, receipts, work orders, reports, or other documents, including electronically stored information, showing or describing the installation, maintenance, or repair of:

(i)  motor fuel dispensing devices; and

(ii)  any equipment used in connection with motor fuel dispensing devices to record, display, or produce receipts or audit trails concerning the purchase, sale, delivery, or distribution of motor fuel; and

(C)  any record or other document related to the sampling and testing of motor fuel purchased, sold, delivered, or distributed by the dealer, distributor, supplier, wholesaler, or jobber; and

(2)  prescribe:

(A) [~~(1)~~]  the manner of filing documents or records required to be kept under this section or by department rule; and

(B) [~~(2)~~]  the time, place, and manner of inspection of the documents or records.

SECTION 4.  Section 17.054, Agriculture Code, is amended by amending Subsection (c) and adding Subsection (d) to read as follows:

(c)  The commissioner or an authorized representative of the commissioner may inspect a document required to be kept under this section. On written notice presented by the commissioner or an authorized representative of the commissioner to any employee at a dealer's station or retail outlet or mailed to the dealer's principal place of business, the dealer shall provide the commissioner or authorized representative of the commissioner with the documents described by this section within the period specified in the notice.

(d)  The commissioner by rule may:

(1)  require each dealer to maintain and make available to the department:

(A)  invoices, receipts, or other transmittal documents or records, including electronically stored information, showing or describing the purchase, sale, delivery, or distribution of motor fuel;

(B)  invoices, receipts, work orders, reports, or other documents, including electronically stored information, showing or describing the installation, maintenance, or repair of:

(i)  motor fuel dispensing devices; and

(ii)  any equipment used in connection with motor fuel dispensing devices to record, display, or produce receipts or audit trails concerning the purchase, sale, delivery, or distribution of motor fuel; and

(C)  any record or other document related to the sampling and testing of motor fuel purchased, sold, delivered, or distributed by the dealer; and

(2)  prescribe:

(A)  the manner of filing documents or records required to be kept under this section or by department rule; and

(B)  the time, place, and manner of inspection of the documents or records.

SECTION 5.  Section 17.071, Agriculture Code, is amended to read as follows:

Sec. 17.071.  MINIMUM MOTOR FUEL QUALITY AND TESTING STANDARDS.  (a)  The department by rule shall adopt minimum motor fuel quality and testing standards for motor fuel that is sold or offered for sale in this state.  The standards must comply with the nationally recognized minimum standards established by:

(1)  the American Society for Testing and Materials[, as those standards existed on September 1, 2009], for motor fuels other than motor fuels blended with ethanol; and

(2)  the National Institute of Standards and Technology, [as those standards existed on September 1, 2009, other than the standard vapor to liquid ratio specification] for motor fuels blended with ethanol.

(b)  The department may adopt rules as necessary to bring about uniformity between the standards established under this subchapter and the nationally recognized standards described by Subsection (a).

SECTION 6.  Section 17.073, Agriculture Code, is amended to read as follows:

Sec. 17.073.  STOP-SALE ORDER; SHUTDOWN OF DISPENSING DEVICES.  (a)  If the department has reason to believe that motor fuel is in violation of this chapter or a rule adopted under this chapter, or that the motor fuel is being sold or offered for sale in a manner that violates this chapter or a rule adopted under this chapter, the department may:

(1)  issue and enforce a written order to stop the sale of the motor fuel;

(2)  place on a device used to dispense the motor fuel a tag or other mark with the words "Out of Order"; or

(3)  stop the sale of the motor fuel and mark a device used to dispense the motor fuel as out of order.

(b)  The department shall present an [the] order issued under this section to the dealer, distributor, jobber, supplier, or wholesaler who is in control of the motor fuel at the time the motor fuel or the dealer, distributor, jobber, supplier, or wholesaler of the motor fuel is inspected by the commissioner [is tested].  The person who receives the order may not sell [the] motor fuel subject to a stop-sale order or use a device on which the department has placed a tag or other mark under Subsection (a)(2) or (3) until the department determines that the motor fuel or device is in compliance with this chapter and department rules.

SECTION 7.  Subsection (a), Section 17.155, Agriculture Code, is amended to read as follows:

(a)  The department may impose an administrative penalty against a person regulated under this chapter who violates this chapter or a rule or order adopted under this chapter.  An [Except as otherwise provided by this section, an] administrative penalty is imposed and collected in the manner provided by Section 12.020.

SECTION 8.  Subsections (c) and (d), Section 17.051, and Subsections (b), (c), (d), (e), (f), (g), (h), and (i), Section 17.155, Agriculture Code, are repealed.

SECTION 9.  The changes in law made by this Act apply only to an offense or other violation under Chapter 17, Agriculture Code, committed on or after the effective date of this Act. An offense or other violation committed before the effective date of this Act is governed by the law in effect when the offense or violation was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense or other violation was committed before the effective date of this Act if any element of the offense or violation was committed before that date.

SECTION 10.  This Act takes effect September 1, 2011.

The amendment was read.

Senator Whitmire moved to concur in the House amendment to **SB 893**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1581 ON SECOND READING

Senator Ogden moved to suspend the regular order of business to take up for consideration **CSSB 1581** at this time on its second reading:

**CSSB 1581**, Relating to state fiscal matters related to public and higher education.

The motion prevailed.

Senators Ellis, Harris, Lucio, Nelson, Watson, and Zaffirini asked to be recorded as voting "Nay" on suspension of the regular order of business.

The bill was read second time.

Senator Eltife offered the following amendment to the bill:

### Floor Amendment No. 1

Amend **CSSB 1581** (senate committee report) in SECTION 5.01 of the bill by striking proposed Section 63.0035, Education Code (page 2, line 54, through page 3, line 18), and substituting the following:

TX_00003213

Sec. 63.0035.  PARTIAL  LIQUIDATION  OF  INSTITUTION'S  SHARE; DISTRIBUTION OF FUND AFTER LIQUIDATION. (a)  Subject to appropriation of the appropriate amounts, the board of regents of The University of Texas System shall transfer to each institution that is entitled in a state fiscal year to receive a distribution from the permanent fund established under this subchapter a one-time liquidation distribution for the state fiscal year ending August 31, 2012, and, for that fiscal year and each subsequent fiscal year, a reduced annual distribution as provided by this section.

(b)  The board of regents of The University of Texas System, not later than November 1, 2011, shall:

(1)  calculate the amount of each liquidation distribution in accordance with this section; and

(2)  provide to all institutions entitled to receive a distribution from the permanent fund established under this subchapter written notice specifying:

(A)  the amount of the liquidation distribution to be made to each institution in the state fiscal year ending August 31, 2012; and

(B)  the amounts of the other distributions to be made in that fiscal year to each institution under this section from the per capita account and the formula account described by Subsection (c).

(c)  As soon as practicable after the beginning of the state fiscal year ending August 31, 2012, the permanent fund shall be segregated into two accounts, the per capita account and the formula account. Notwithstanding any other law, distributions in that fiscal year and in subsequent fiscal years shall be made in accordance with this section and not in accordance with Section 63.003(a). The amount segregated into the per capita account is equal to 70 percent of the total value of the fund at the end of the preceding state fiscal year. The formula account is composed of the remaining 30 percent of that total value at the end of that preceding fiscal year.

(d)  A liquidation distribution is an amount equal to one-third of the institution's fractional share of the value of the per capita account. An institution's fractional share of the per capita account is determined by multiplying the amount segregated into the per capita account by a fraction, the numerator of which is one and the denominator of which is the number of institutions that are entitled to receive a distribution from the permanent fund established under this subchapter.

(e)  In the state fiscal year ending August 31, 2012, and in each subsequent fiscal year, the annual amount appropriated for distribution from the investment of the per capita account shall be distributed in equal shares to each institution.

(e-1)  Subsection (e) does not apply to the amounts distributed as liquidation distributions in the state fiscal year ending August 31, 2012.

(f)  In each state fiscal year in which distributions are made from the per capita account under Subsection (e), the amount appropriated for distribution from the investment of the formula account shall be distributed in equal portions with respect to each of the following categories, with each institution receiving a share in each category proportionate to the amount that the institution spent in that category in the preceding state fiscal biennium as determined by the institution's annual financial report, compared to the total spending of all institutions listed in Section 63.002(c) in that category in the preceding biennium:

    (1)  instructional expenditures;

    (2)  research expenditures; and

    (3)  unsponsored charity care.

  (g)  Except as otherwise provided by this section:

    (1)  Section 63.003(b) applies to amounts appropriated for distribution under Subsections (e) and (f) of this section; and

    (2)  Sections 63.003(c) and (d) apply to amounts appropriated for distribution under Subsection (f) of this section.

  (h)  The comptroller in consultation with the board of regents of The University of Texas System shall establish procedures to implement this section. A liquidation distribution shall be made in accordance with those procedures and in consultation with the institutions receiving the liquidation distribution.

  (i)  Any direct costs associated with liquidation distributions, including discounts on investment dispositions and related expenses realized by the permanent fund, shall be deducted in equal portions from the amounts of the liquidation distributions. The procedures established under Subsection (h) must provide for the minimization of any costs associated with making the liquidation distributions considering the liquidity of the investment assets of the fund.

  (j)  Notwithstanding other provisions of this subchapter, the amount distributed to an institution under this section as a liquidation distribution is under the exclusive control of the governing board of the institution and may be used by the institution in any manner for any lawful purpose. The comptroller shall establish procedures to ensure that a liquidation distribution to Baylor College of Medicine is used for public purposes consistent with a contract in effect under Section 61.092.

  SECTION ____. Section 63.003(d), Education Code, is amended to read as follows:

  (d)  For the purposes of this section or Section 63.0035, Baylor College of Medicine may receive funds [under Subsection (a)(2)] only if the institution provides the comptroller with an independently audited schedule of information that substantially complies with the reporting requirements issued by the comptroller for other eligible institutions [under Subsection (a)(2)]. Information under this subsection must be supplied not later than the time other eligible institutions are required to submit similar information.

  The amendment to **CSSB 1581** was read and was adopted by a viva voce vote.

  All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

  Senator Birdwell offered the following amendment to the bill:

**Floor Amendment No. 2**

  Amend **CSSB 1581** (senate committee printing) as follows:

  (1) In ARTICLE 4 of the bill, in the heading to ARTICLE 4, between "TUITION" and "EXEMPTIONS" (page 2, line 21), insert "RATES AND".

  (2) In ARTICLE 4 of the bill, add the following appropriately numbered SECTIONS and renumber subsequent SECTIONS of ARTICLE 4 accordingly:

SECTION 4.___. Section 54.052, Education Code, is amended by adding Subsection (c) to read as follows:

(c) Notwithstanding any other provision of this section, a person who is not authorized by law to be present in the United States may not be considered a resident of this state for purposes of this title.

SECTION 4.___. Section 54.055, Education Code, is amended by adding Subsection (c) to read as follows:

(c) Notwithstanding Subsection (a), an institution of higher education may not, on the basis of Section 54.052(c), reclassify as a nonresident of this state a student classified as a resident under Section 54.052(a)(3) if, not later than the beginning of the 2011-2012 academic year, the student has completed at least 30 semester credit hours at an institution of higher education.

SECTION 4.___. Except as provided by Section 54.055(c), Education Code, as added by this article, a public institution of higher education in this state may, for any semester or academic term, before the beginning of that semester or academic term, reclassify as a nonresident a student previously classified as a resident of this state by the institution or another public institution of higher education in this state before the enactment of Section 54.052(c), Education Code, as added by this article, if the student is not authorized by law to be present in the United States.

|  |  |
|---|---|
| BIRDWELL | PATRICK |
| HUFFMAN | WENTWORTH |
| NELSON | |

The amendment to **CSSB 1581** was read.

Senator Birdwell withdrew Floor Amendment No. 2.

Senator Gallegos offered the following amendment to the bill:

**Floor Amendment No. 3**

Amend **CSSB 1581** as follows:

(1) In the recital to SECTION 4.01 of the bill (page 2, lines 22 and 23), strike "Subsection (c), Section 54.214, Education Code, is amended" and substitute "Section 54.214, Education Code, is amended by amending Subsection (c) and by adding Subsection (c-1)"

(2) In SECTION 4.01 of the bill, on page 2, between lines 49 and 50, insert the following:

(c-1) Notwithstanding Subsection (c)(5), a person who previously received a tuition exemption under Section 54.214 remains eligible for an exemption if the person:

(1) is enrolled at an institution of higher education granting the exemption in courses required for teacher certification; and

(2) meets the eligibility requirements in (c) other than Subsection (c)(5).

The amendment to **CSSB 1581** was read.

On motion of Senator Ogden, Floor Amendment No. 3 was tabled by the following vote: Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

Senator Zaffirini offered the following amendment to the bill:

## Floor Amendment No. 4

Amend **CSSB 1581** (Senate Committee Report) by adding the following appropriately numbered ARTICLE to the bill and renumbering subsequent ARTICLES of the bill appropriately:

ARTICLE ___. ADMINISTRATIVE MATTERS CONCERNING INSTITUTIONS OF HIGHER EDUCATION

SECTION __.01. Section 51.003, Education Code, is amended by amending Subsection (b) and adding Subsection (f) to read as follows:

(b) The funds shall either be deposited in the depository bank or banks or invested as authorized by Chapter 2256, Government Code (Public Funds Investment Act). Funds that are to be deposited in the depository bank or banks must be deposited within seven days from the date of receipt by the institution [collection].

(f) Notwithstanding any other provision of this section, the governing board of each institution may maintain unsecured deposits in a foreign bank as necessary to support the institution's operations in a foreign country. The foreign bank must:

(1) be licensed and supervised by a central bank;

(2) be audited annually by an accounting firm that follows international financial reporting standards; and

(3) maintain a capital to total assets ratio that is not less than the greater of four percent or the minimum tier 1 capital to total assets ratio required for depository institutions insured by the Federal Deposit Insurance Corporation.

SECTION __.02. Subchapter A, Chapter 51, Education Code, is amended by amending Section 51.005 and adding Sections 51.010, 51.011, and 51.012 to read as follows:

Sec. 51.005. REPORTS. Each institution of higher education [(a) True and full accounts shall be kept by the governing board and by the employees of the institution of all funds collected from all sources and of all sums paid out and the persons to whom and the purposes for which the sums are paid. The governing board] shall prepare [annually print] a complete annual financial report as prescribed by Section 2101.011, Government Code [of all the sums collected, all expenditures, and all sums remaining on hand. The report shall show the true condition of all funds as of the August 31 preceding as well as the collections and expenditures for the preceding year.

[(b) Reports under this section must be in a form approved jointly by the coordinating board and the comptroller. The accounting and classification procedures of each institution must be consistent with uniform procedures prescribed for that purpose by the coordinating board and the comptroller. The requirements imposed by the coordinating board and the comptroller must be designed to reduce paperwork and duplicative reports.

[(c) The governing board shall furnish one copy of the report each to the governor, comptroller of public accounts, state auditor, Texas Higher Education Coordinating Board, Legislative Budget Board, House Appropriations Committee, Senate Finance Committee, and Legislative Reference Library. A copy of the report shall be submitted to the comptroller by the deadline established by the comptroller or the General Appropriations Act as necessary to prepare an audited comprehensive financial report. The governing board shall retain five copies of the report for distribution to legislators or other state officials on request].

Sec. 51.010. COLLECTION OF DELINQUENT OBLIGATIONS. If under the rules adopted by the attorney general under Chapter 2107, Government Code, an institution of higher education is not required to refer a delinquent obligation for collection to the attorney general, the institution is not required to expend resources for further collection efforts if, considering the amount, security, likelihood of collection, expense, and available resources, the institution determines that further collection should not be actively pursued.

Sec. 51.011. DISPOSITION OF SMALL CREDIT BALANCES. (a) This section applies to a credit balance of less than $25 held by an institution of higher education that is presumed abandoned under Chapter 72, Property Code.

(b) An institution of higher education may maintain an unclaimed money fund and transfer to that fund a credit balance to which this section applies. A deposit to the unclaimed money fund does not affect the ownership of the amount deposited. The institution shall:

(1) adopt procedures for owners to make and receive payments of claims against the fund; and

(2) maintain a database that permits members of the public to search for ownership of unclaimed funds.

(c) The institution shall use the fund to pay the claims of persons establishing ownership of amounts transferred to the fund and shall hold and account for the unclaimed money fund as educational and general funds of the institution. If the fund balance is insufficient to pay a valid claim, the institution shall pay the claim from the institution's other educational and general funds.

(d) Each fiscal year, after deducting funds sufficient to pay anticipated expenses of and claims against the unclaimed money fund, the institution shall use the balance of the fund as other educational and general funds of the institution.

(e) In consultation with institutions of higher education, the comptroller by rule may establish minimum requirements for notice to owners of unclaimed money deposited in the unclaimed money fund and for charges for that notice. The rules may not provide stricter requirements than the comptroller applies for amounts of less than $25 in the custody of the comptroller under Chapter 74, Property Code.

(f) If an institution of higher education maintains an unclaimed money fund under this section, Chapter 74, Property Code, does not apply to a credit balance to which this section applies.

Sec. 51.012. PAYMENTS BY ELECTRONIC FUNDS TRANSFER OR ELECTRONIC PAY CARD. An institution of higher education may make any payment, including a payment of salary or wages, through electronic funds transfer or by electronic pay card.

SECTION __.03. Section 65.42, Education Code, is amended to read as follows:

Sec. 65.42.  DELINQUENT ACCOUNTS; VENUE. A suit by The University of Texas System on its own behalf or on behalf of a component institution of The University of Texas System to recover a delinquent loan, account, or debt owed to The University of Texas System or a component institution of The University of Texas System must [may] be brought in Travis County.

SECTION __.04. Section 1231.001, Government Code, is amended by amending Subdivision (2) and adding Subdivision (3) to read as follows:

(2)  "State security" means:

(A)  an obligation, including a bond, issued by:

(i)  a state agency;

(ii)  an entity that is expressly created by statute and has statewide jurisdiction; or

(iii)  an entity issuing the obligation on behalf of this state or on behalf of an entity described by Subparagraph (i) or (ii);

(B)  an installment sale or lease-purchase obligation that is issued by or on behalf of an entity described by Paragraph (A) and that has:

(i)  a stated term of more than five years; or

(ii)  an initial principal amount of more than $250,000; or

(C)  an obligation, including a bond, that is issued under Chapter 53, Education Code, at the request of or for the benefit of an institution of higher education [as defined by Section 61.003, Education Code,] other than a public junior college.

(3)  "Institution of higher education" has the meaning assigned by Section 61.003, Education Code.

SECTION __.05. Section 1231.041, Government Code, is amended to read as follows:

Sec. 1231.041.  APPROVAL OF STATE SECURITY. (a) Except as otherwise provided by this section, an [An] entity, including a state agency, may not issue a state security unless:

(1)  the board approves the issuance; or

(2)  the security is exempted under law, including a board rule adopted under Section 1231.022(2).

(b)  A state security issued by an institution of higher education, or issued at the request of or for the benefit of an institution of higher education, is not subject to board approval unless the general revenue of the state is pledged to the payment of the security.

SECTION __.06. Section 74.001, Property Code, is amended by adding Subsection (c) to read as follows:

(c)  This chapter does not apply to small credit balances held by an institution of higher education in an unclaimed money fund under Section 51.011, Education Code.

SECTION __.07. Section 51.923, Education Code, is amended to read as follows:

Sec. 51.923.  QUALIFICATIONS OF CERTAIN BUSINESS ENTITIES TO ENTER INTO CONTRACTS WITH AN INSTITUTION OF HIGHER EDUCATION.  (a)  In this section:

(1)  "Business entity" ["Corporation"] means any entity recognized by law through which business is conducted, including a sole proprietorship, partnership, firm, corporation, limited liability company, holding company, joint stock company, receivership, or trust [a corporation for profit organized under the laws of this state or under laws other than the laws of this state].

(2)  "Governing board" has the meaning assigned by Section 61.003 [of this code].

(3)  "Institution of higher education" has the meaning assigned by Section 61.003 [of this code].

(4)  "Nonprofit corporation" means any organization exempt from federal income tax under Section 501 of the Internal Revenue Code of 1986 that does not distribute any part of its income to any member, director, or officer.

(b)  A nonprofit corporation is not disqualified from entering into a contract or other transaction with an institution of higher education even though one or more members of the governing board of the institution of higher education also serves as a member, [or] director, officer, or employee of the nonprofit corporation.

(c)  A business entity [corporation] is not disqualified from entering into a contract or other transaction with an institution of higher education even though one or more members of the governing board of the institution of higher education have an interest in the business entity, subject to Subsection (d) [also serves as a stockholder or director of the corporation provided that no member of the governing board owns or has a beneficial interest in more than five percent of the corporation's outstanding capital stock and further provided that the contract or transaction is:

[(1)  an affiliation, licensing, or sponsored research agreement; or

[(2)  awarded by competitive bidding or competitive sealed proposals].

(d)  An institution of higher education is not prohibited from entering into a contract or other transaction with a business entity in which a member of the governing board of the institution of higher education has an interest if the interest is not a substantial interest or, if the interest is a substantial interest, the [described in this section if any] board member [having an interest described in this section in the contract or transaction] discloses that interest in a meeting held in compliance with Chapter 551, Government Code, and refrains from voting on the contract or transaction requiring board approval. Any such contract or transaction requiring board approval must be approved by an affirmative majority of the board members voting on the contract or transaction.

(e)  For purposes of this section, a member of a governing board has a substantial interest in a business entity if:

(1)  the member owns 10 percent or more of the voting stock or shares of the business entity or owns either 10 percent or more or $15,000 or more of the fair market value of the business entity;

(2)  funds received by the member from the business entity exceed 10 percent of the member's gross income for the previous year;

(3) the member is an officer of the business entity or a member of the governing board of the business entity; or

(4) an individual related to the member in the first degree by consanguinity or affinity, as determined under Chapter 573, Government Code, has an interest in the business entity as described by Subdivision (1), (2), or (3).

(f) A violation of this section does not render an action of the governing board voidable unless the contract or transaction that was the subject of the action would not have been approved by the governing board without the vote of the member who violated this section.

SECTION __.08. Section 51.9335, Education Code, is amended by amending Subsections (d) and (f) and adding Subsections (g) and (h) to read as follows:

(d) Subtitle D, Title 10, Government Code, and Subchapter B, Chapter 2254, Government Code, do not apply to the acquisition of goods and services under this section, except that an institution must comply with any provision of those laws, or a rule adopted under a provision of those laws, [To the extent of any conflict, this section prevails over any other law, including Chapters 2155, 2156, 2157, 2158, 2167, and 2170, Government Code, except a law or rule] relating to contracting with historically underutilized businesses or relating to the procurement of goods and services from persons with disabilities. An institution of higher education may, but is not required to, acquire goods or services as provided by Subtitle D, Title 10 [Chapters 2155, 2156, 2157, 2158, 2167, and 2170], Government Code.

(f) This section does not apply to professional services as defined by Section 2254.002, Government Code. Professional services shall be procured in accordance with Subchapter A, Chapter 2254, Government Code.

(g) An institution of higher education may adopt rules and procedures for the acquisition of goods or services.

(h) In any contract for the acquisition of goods and services to which an institution of higher education is a party, a provision required by applicable law to be included in the contract is considered to be a part of the executed contract without regard to:

(1) whether the provision appears on the face of the contract; or

(2) whether the contract includes any provision to the contrary.

SECTION __.09. Subchapter Z, Chapter 51, Education Code, is amended by adding Sections 51.9336 and 51.9337 to read as follows:

Sec. 51.9336. ELECTRONIC AND DIGITAL SIGNATURES. (a) An institution of higher education or university system, as those terms are defined by Section 61.003, shall determine whether, and the extent to which, the institution or system will send and accept electronic or digital signatures to and from other persons and otherwise create, generate, communicate, store, process, use, and rely on electronic or digital signatures. The institution or system may adopt rules and procedures governing the use of electronic or digital signatures.

(b) To the extent of any conflict, this section prevails over Chapter 322, Business & Commerce Code, and rules and guidelines adopted under that chapter.

Sec. 51.9337. INTERAGENCY CONTRACTS FOR INFORMATION RESOURCE TECHNOLOGIES. (a) In this section, "institution of higher education" and "university system" have the meanings assigned by Section 61.003.

(b) Section 2054.119, Government Code, does not apply to an interagency contract for information resources technologies between two or more institutions of higher education or between an institution of higher education or university system and one or more state agencies, institutions of higher education, or university systems.

SECTION __.10. Section 51.966, Education Code, is amended by amending Subsection (c) and adding Subsection (d) to read as follows:

(c) Section 612.002(b), Government Code, does not apply to an institution of higher education or university system purchasing insurance under this section.

(d) In [As used in] this section, "governing board," [and] "institution of higher education," and "university system" have the meanings assigned by Section 61.003.

SECTION __.11. Subchapter C, Chapter 791, Government Code, is amended by adding Section 791.035 to read as follows:

Sec. 791.035. CONTRACTS WITH INSTITUTIONS OF HIGHER EDUCATION OR UNIVERSITY SYSTEMS. (a) A local government and an institution of higher education or university system may contract with one another to perform any governmental functions and services. If the terms of the contract provide for payment based on cost recovery, any law otherwise requiring competitive procurement does not apply to the functions and services covered by the contract.

(b) In this section, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION __.12. Section 2054.008, Government Code, is amended by adding Subsection (c) to read as follows:

(c) A university system or institution of higher education must provide written notice to the Legislative Budget Board under Subsection (b) only if the cost of the major information system exceeds $1 million. In this subsection, "university system" has the meaning assigned by Section 61.003, Education Code.

SECTION __.13. Section 2155.078(n), Government Code, is amended to read as follows:

(n) This section does not apply to an institution [a medical and dental unit] to which Section 51.9335, Education Code, applies or to an institution to which Section 73.115, Education Code, applies.

SECTION __.14. Subchapter Z, Chapter 51, Education Code, is amended by adding Section 51.9611 to read as follows:

Sec. 51.9611. PAYROLL DEDUCTIONS FOR EMPLOYEES OF UNIVERSITY SYSTEM OR INSTITUTION OF HIGHER EDUCATION. (a) In this section, "institution of higher education" and "university system" have the meanings assigned by Section 61.003.

(b) The governing board of a university system, or of an institution of higher education that is not a component institution of a university system, may authorize employees of the system or institution, as applicable, to elect a payroll deduction for any purpose that the governing board determines serves a public purpose and benefits employees.  The board may adopt policies and procedures governing payroll deductions under this section.  A payroll deduction under this section is in addition to payroll deductions authorized by other law.

(c)  A payroll deduction under this section must be at the written request of the employee, and the request must state the amount to be deducted and the entity to which the deducted amount is to be transferred. A payroll deduction is in effect until revoked in writing by the employee, but the policies and procedures of the system or institution, as applicable, may provide for enrollment periods.

(d)  A system or institution may collect an administrative fee to cover the costs of making a deduction.

SECTION __.15.  Section 1601.004(a), Insurance Code, is amended to read as follows:

(a)  In this chapter, "dependent," with respect to an individual eligible to participate in the uniform program under Section 1601.101 or 1601.102, means the individual's:

(1)  spouse;

(2)  unmarried child younger than 25 years of age; and

(3)  child of any age who the system determines lives with or has the child's care provided by the individual on a regular basis if the child is mentally retarded or physically incapacitated to the extent that the child is dependent on the individual for care or support, as determined by the system, and:

(A)  if the child is at least 25 years of age, the child's coverage under this chapter has not lapsed, and the child was enrolled as a participant in the health benefits coverage under the uniform program on the date of the child's 25th birthday; or

(B)  if the child is a child of an individual eligible to participate as an employee under Section 1601.101, at the time of the individual's initial enrollment in health benefits coverage under the uniform program the child is at least 25 years of age and is enrolled in comparable coverage, as determined by the system, under the individual's previous health benefits coverage.

SECTION __.16.  Subchapter C, Chapter 1601, Insurance Code, is amended by adding Section 1601.111 to read as follows:

Sec. 1601.111.  PROGRAMS PROMOTING DISEASE PREVENTION, WELLNESS, AND HEALTH.   A system may establish premium discounts, surcharges, rebates, or a revision in otherwise applicable copayments, coinsurance, or deductibles, or any combination of those incentives, for an individual who participates in system-approved programs promoting disease prevention, wellness, and health.

SECTION __.17.  Section 1601.201(d), Insurance Code, is amended to read as follows:

(d)  Subsection (c) does not prohibit a system from contributing, from money not appropriated from the general revenue fund, amounts in excess of the amount specified by that subsection for:

(1)  an individual employed by the system in a position that as a condition of employment requires the individual to be enrolled as a student in the system in graduate level courses; or

(2)  an individual who is a tenured faculty member with whom the system has entered into a phased retirement agreement under which the individual will work less than 60 hours a week for a specified period of time at the end of which the individual will retire.

SECTION __.18. Subchapter C, Chapter 61, Education Code, is amended by adding Section 61.0573 to read as follows:

Sec. 61.0573.  PROJECTS EXEMPT FROM BOARD APPROVAL. (a) In this section, "project" means the acquisition of improved or unimproved real property or the construction, repair, or rehabilitation of a building or other facility.

(b) Board approval of a project at an institution of higher education is not required under Section 61.0572 or 61.058 if the institution notifies the board of the project and certifies to the board that:

(1) the institution meets the current published board standards applicable to the institution for space need, usage efficiency, deferred maintenance, and critical deferred maintenance or the board has approved the institution's plan to correct any deficiencies in the institution's compliance with those applicable standards;

(2) the project meets current published board standards applicable to the project for cost, efficiency, and space use;

(3) the project is identified on the institution's campus master plan, as submitted to the board; and

(4) the institution has no deficiencies according to the board's most recent facilities audit or the board has approved the institution's plan to correct any such deficiencies.

(c) The board's staff shall promptly review a certification submitted under Subsection (b) and notify the institution whether the certification is sufficient and whether the information certified is consistent with the records of the board. If the staff review determines that the certification is sufficient and that the information certified is consistent with the records of the board, the project is considered approved by the board.

(d) This section does not apply to a project that is a new branch campus or a new higher education center.

SECTION __.19. Section 2166.302(c), Government Code, is amended to read as follows:

(c) Subsection (a) does not apply to a project constructed by and for the Texas Department of Transportation or an institution of higher education or university system. In this subsection, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION __.20. Section 2166.403(c-1), Government Code, is amended to read as follows:

(c-1) For a project constructed by and for a state institution of higher education, the [governing body of the] institution shall, during the planning phase of the proposed construction for the project, verify [in an open meeting] the economic feasibility of incorporating into the building's design and proposed energy system alternative energy devices for space heating and cooling functions, water heating functions, electrical load functions, and interior lighting functions. The [governing body of the] institution shall determine the economic feasibility of each function listed in this subsection by comparing the estimated cost of providing energy for the function, based on the use of conventional design practices and energy systems, with the estimated cost of providing energy for the function, based on the use of alternative energy devices, during the economic life of the building.

SECTION __.21. Section 2167.001(b), Government Code, is amended to read as follows:

(b) This chapter does not apply to:

(1) radio antenna space;

(2) residential space for a Texas Department of Mental Health and Mental Retardation program;

(3) residential space for a Texas Youth Commission program;

(4) space to be used for less than one month for meetings, conferences, conventions, seminars, displays, examinations, auctions, or similar purposes;

(5) district office space for members of the legislature;

(6) space used by the Texas Workforce Commission;

(7) residential property acquired by the Texas Department of Housing and Community Affairs or the Texas State Affordable Housing Corporation that is offered for sale or rental to individuals and families of low or very low income or families of moderate income;

(8) except as provided by Section 2167.007, [classroom and instructional] space for a university system or [an] institution of higher education; or

(9) space leased by the Texas Veterans Commission to administer the veterans employment services program.

SECTION __.22. Section 33.06, Tax Code, is amended by adding Subsection (g) to read as follows:

(g) If the ownership interest of an individual entitled to a deferral under this section is a life estate, a lien for the deferred tax attaches to the estate of the life tenant, and not to the remainder interest, if the owner of the remainder is an institution of higher education that has not consented to the deferral. In this subsection, "institution of higher education" has the meaning assigned by Section 61.003, Education Code. This subsection does not apply to a deferral for which the individual entitled to the deferral filed the affidavit required by Subsection (b) before September 1, 2011.

SECTION __.23. Section 552.123, Government Code, is amended to read as follows:

Sec. 552.123. EXCEPTION: NAME OF APPLICANT FOR CHIEF EXECUTIVE OFFICER OF INSTITUTION OF HIGHER EDUCATION. The name of an applicant for the position of chief executive officer of an institution of higher education, and other information that would tend to identify the applicant, is excepted from the requirements of Section 552.021, except that the governing body of the institution must give public notice of the name or names of the finalists being considered for the position at least 21 days before the date of the meeting at which final action or vote is to be taken on the employment of the person.

SECTION __.24. Section 95.006(b), Health and Safety Code, is amended to read as follows:

(b) The advisory committee is composed of:

(1) the following representatives appointed by the executive director of the office:

(A) one representative of the office;

(B) one representative of the Texas Education Agency;

(C) one representative of the Texas Pediatric Society;

(D)  one representative of the American Diabetes Association;

(E)  [one representative who is a member of the board of regents of The University of Texas-Pan American;

[(F)] one school nurse representative from an urban school located within the boundaries of a regional education service center;

(F) [(G)] one parent or guardian of a child who resides within the boundaries of a regional education service center; and

(G) [(H)] one person with knowledge and experience in health care in school settings; and

(2)  the following representatives appointed by the chairman of the council:

(A)  one representative of the council;

(B)  one representative of the Texas Medical Association;

(C)  one school district administrator representative from a school district located within the boundaries of a regional education service center;

(D)  one school principal representative from a school district located within the boundaries of a regional education service center; and

(E)  one school nurse representative from a rural school located within the boundaries of a regional education service center.

SECTION __.25. Sections 2.03(a) and (c), Chapter 670, Acts of the 72nd Legislature, Regular Session, 1991 (Article 4477-7j, Vernon's Texas Civil Statutes), are amended to read as follows:

(a)  On or after the effective date of this Act, the Commissioners Court of Gaines County shall appoint three persons, the governing body of the city of Seminole shall appoint two persons, and the governing body of the city of Seagraves shall appoint two persons to serve as initial directors of the district. The four persons appointed by the governing bodies of the cities of Seminole and Seagraves shall represent the municipalities within the county, and the three persons appointed by the Commissioners Court of Gaines County shall represent the unincorporated areas of the county. [In addition, the board of regents of The University of Texas System shall appoint one person to serve as an ex officio, nonvoting director of the district.]

(c)  The Commissioners Court of Gaines County and the governing bodies of the cities of Seminole and Seagraves shall each appoint one initial director to serve a term expiring on May 1 of the first year after the year in which the original appointment is made. In addition, the Commissioners Court of Gaines County shall appoint two initial directors and the governing bodies of the cities of Seminole and Seagraves shall each appoint one initial director to serve terms expiring on May 1 of the second year after the year in which the original appointment is made. [The initial ex officio member serves a term expiring on May 1 of the second year after the year in which the original appointment is made.] Successor directors serve two-year terms.

SECTION __.26. Section 3.01(a), Chapter 670, Acts of the 72nd Legislature, Regular Session, 1991 (Article 4477-7j, Vernon's Texas Civil Statutes), is amended to read as follows:

(a)  The district is governed by a board of directors composed of seven voting members [and one ex officio nonvoting member] who are appointed as provided by this Act. However, the district shall change to a system of electing the voting directors if:

(1)  the Commissioners Court of Gaines County and the governing bodies of the cities of Seminole and Seagraves each pass a resolution calling for the election of the directors; or

(2)  the board receives a petition signed by at least 150 registered voters of Gaines County calling for the election of the directors.

SECTION __.27.  Section 51.403(d), Education Code, is amended to read as follows:

(d)  For purposes of this subsection, "small classes" [~~Each institution shall file with its governing board and the coordinating board a small-class report, excluding individual-instruction courses, indicating department, course number, title of course, and the name of the instructor. "Small classes," for the purpose of this report,~~] are undergraduate-level courses with less than 10 registrations, and graduate-level courses with less than 5 registrations. No small classes shall be offered in any institution except as authorized by the appropriate governing board, within the guidelines established by the Coordinating Board.

SECTION __.28.  Subchapter H, Chapter 51, Education Code, is amended by adding Section 51.406 to read as follows:

Sec. 51.406.  EXPIRATION OF CERTAIN REPORTING REQUIREMENTS APPLICABLE TO INSTITUTIONS OF HIGHER EDUCATION AND UNIVERSITY SYSTEMS. (a)  In this section, "university system" has the meaning assigned by Section 61.003.

(b)  To the extent that any of the following laws require reporting by a university system or an institution of higher education, a university system or institution of higher education is not required to make the report on or after September 1, 2013, unless legislation enacted by the 83rd Legislature that becomes law expressly requires the institution or system to make the report:

(1)  Section 7.109;
(2)  Section 33.083;
(3)  Section 51.0051;
(4)  Section 59.07;
(5)  Section 130.086;
(6)  Section 325.007, Government Code;
(7)  Section 669.003, Government Code;
(8)  Section 2005.007, Government Code;
(9)  Section 2052.103, Government Code;
(10)  Section 2054.097, Government Code;
(11)  Section 2101.011, Government Code;
(12)  Section 2102.009, Government Code;
(13)  Chapter 2114, Government Code; and
(14)  Section 2205.041, Government Code.

(c)  A rule or policy of a state agency, including the Texas Higher Education Coordinating Board, in effect on June 1, 2011, that requires reporting by a university system or an institution of higher education has no effect on or after September 1, 2013, unless the rule or policy is affirmatively and formally readopted before that date by formal administrative rule published in the Texas Register and adopted in compliance with Chapter 2001, Government Code. This subsection does not apply to:

(1) a rule or policy for which the authorizing statute is listed in Subsection (b);

(2) a rule or policy for which the authorizing statute is repealed on or before September 1, 2013, by legislation enacted by the legislature that becomes law; or

(3) a report required under any of the following laws:

(A) Section 51.005;

(B) Section 51.3062;

(C) Section 51.402;

(D) Section 56.039;

(E) Section 61.051(k);

(F) Section 61.059; or

(G) Section 62.095(b).

SECTION __.29. Section 51.914, Education Code, is amended to read as follows:

Sec. 51.914. PROTECTION OF CERTAIN INFORMATION. (a) In order to protect the actual or potential value, the following information is [shall be] confidential and is [shall] not [be] subject to disclosure under Chapter 552, Government Code, or otherwise:

(1) all information relating to a product, device, or process, the application or use of such a product, device, or process, and all technological and scientific information (including computer programs) developed in whole or in part at a state institution of higher education, regardless of whether patentable or capable of being registered under copyright or trademark laws, that have a potential for being sold, traded, or licensed for a fee;

(2) any information relating to a product, device, or process, the application or use of such product, device, or process, and any technological and scientific information (including computer programs) that is the proprietary information of a person, partnership, corporation, or federal agency that has been disclosed to an institution of higher education solely for the purposes of a written research contract or grant that contains a provision prohibiting the institution of higher education from disclosing such proprietary information to third persons or parties; or

(3) the plans, specifications, blueprints, and designs, including related proprietary information, of a scientific research and development facility that is jointly financed by the federal government and a local government or state agency, including an institution of higher education, if the facility is designed and built for the purposes of promoting scientific research and development and increasing the economic development and diversification of this state.

(b) Information maintained by or for an institution of higher education that would reveal the institution's plans or negotiations for commercialization or research, or that consists of unpublished research results or data, is not subject to Chapter 552, Government Code, unless the information has been published, is patented, or is otherwise subject to an executed license, sponsored research agreement, or research contract or grant. In this subsection, "institution of higher education" has the meaning assigned by Section 61.003.

SECTION __.30. Section 61.051(h), Education Code, is amended to read as follows:

(h)  The board shall make continuing studies of the needs of the state for research and designate the institutions of higher education to perform research as needed. The board shall also maintain an inventory of all institutional and programmatic research activities being conducted by the various institutions, whether state-financed or not. Once a year, on dates prescribed by the board, each institution of higher education shall report to the board all research conducted at that institution during the last preceding year. The submission by an institution of the institution's response to the National Science Foundation's annual Higher Education Research and Development Survey satisfies the requirements of this section. All reports required by this subsection shall be made subject to the limitations imposed by security regulations governing defense contracts for research.

SECTION __.31. Section 61.0582, Education Code, is amended by adding Subsection (f) to read as follows:

(f)  This section does not apply to a university system that maintains an ongoing system-wide capital improvement program approved by the system's board of regents.

SECTION __.32. Section 130.152, Education Code, is amended to read as follows:

Sec. 130.152.  CRITERIA FOR PROGRAMS FOR THE DISADVANTAGED. A junior college may develop programs to serve persons from backgrounds of economic or educational deprivation by submission of a plan based on the following criteria to the Texas Higher Education Coordinating Board[, Texas College and University System]:

(1)  an instructional program that accommodates the different learning rates of students and compensates for prior economic and educational deprivation;

(2)  an unrestricted admissions policy allowing the enrollment of any person 18 years of age or older with a high school diploma or its equivalent who can reasonably be expected to benefit from instruction;

(3)  the assurance that all students, regardless of their differing programs of study, will be considered, known, and recognized as full members of the student body, provided that the administrative officers of a junior college may deny admission to a prospective student or attendance of an enrolled student if, in their judgment, the person [he] would not be competent to benefit from a program of the college, or would by the person's [his] presence or conduct create a disruptive atmosphere within the college not consistent with the statutory purposes of the college;

(4)  [the submission of a plan for a financial aid program which removes to the maximum extent possible the financial barriers to the educational aspirations of the citizens of this state;

[(5)  an annual evaluation report based on scientific methods and utilizing control groups wherever possible to be submitted to the coordinating board at the end of each school year, covering each remedial-compensatory course or program offered at the college;

[(6)]  any other criteria consistent with the provisions of this subchapter specified by the coordinating board; and

(5) [(7)]  a junior college must obtain approval of the coordinating board [Coordinating Board, Texas College and University System,] before offering any courses under the provisions of this Act.

TX_00003229
JA_002960

TX_00003229

SECTION __.33. Section 401.042, Government Code, is amended by adding Subsection (c) to read as follows:

(c)  In consultation with public institutions of higher education, the offices of the governor and the Legislative Budget Board shall review the forms for higher education legislative appropriations requests to identify opportunities to improve efficiency, provide better transparency of funding sources, eliminate unnecessary or duplicative requirements, and otherwise reduce the cost or difficulty of providing information related to appropriations requests.

SECTION __.34. Subchapter L, Chapter 403, Government Code, is amended by adding Section 403.2715 to read as follows:

Sec. 403.2715.  UNIVERSITY SYSTEMS AND INSTITUTIONS OF HIGHER EDUCATION. (a)  In this section, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

(b)  Except as provided by this section, this subchapter does not apply to a university system or institution of higher education.

(c)  A university system or institution of higher education shall account for all personal property as defined by the comptroller under Section 403.272. At all times, the property records of a university system or institution of higher education must accurately reflect the personal property possessed by the system or institution.

(d)  The chief executive officer of each university system or institution of higher education shall designate one or more property managers. The property manager shall maintain the records required and be the custodian of all personal property possessed by the system or institution.

(e)  Sections 402.273(h), 403.275, and 403.278 apply to a university system or institution of higher education.

SECTION __.35. Section 2101.0115(d), Government Code, is amended by adding Subdivision (4) to read as follows:

(4) "Institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION __.36. Section 2101.0115, Government Code, is amended by adding Subsection (e) to read as follows:

(e)  This section does not apply to an institution of higher education or university system.

SECTION __.37. Section 2254.028(c), Government Code, is amended to read as follows:

(c)  Subsection (a) [(a)(3)] does not apply to a major consulting services contract to be entered into by an institution of higher education other than a public junior college if the institution includes in the invitation published under Section 2254.029 a finding by the chief executive officer of the institution that the consulting services are necessary and an explanation of that finding.

SECTION __.38. Section 2254.0301, Government Code, is amended to read as follows:

Sec. 2254.0301. CONTRACT NOTIFICATION. (a)  A state agency shall provide written notice to the Legislative Budget Board of a contract for consulting services if the amount of the contract, including an amendment, modification,

renewal, or extension of the contract, exceeds $14,000. The notice must be on a form prescribed by the Legislative Budget Board and filed not later than the 10th day after the date the entity enters into the contract.

(b)  This section does not apply to a university system or institution of higher education. In this subsection, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION __.39.  Section 388.005(f), Health and Safety Code, is amended to read as follows:

(f)  This section does not apply to a state agency or an institution of higher education that the State Energy Conservation Office determines [that], before September 1, 2007, adopted a plan for conserving energy under which the agency or institution established a percentage goal for reducing the consumption of electricity. The exemption provided by this section applies only while the agency or institution has an energy conservation plan in effect and only if the agency or institution submits reports on the conservation plan each year [calendar quarter] to the governor, the Legislative Budget Board, and the State Energy Conservation Office.

SECTION __.40.  Section 412.053, Labor Code, is amended by adding Subsection (c) to read as follows:

(c)  This section does not apply to an institution of higher education or university system. In this subsection, "institution of higher education" and "university system" have the meanings assigned by Section 61.003, Education Code.

SECTION __.41.  Section 31.153(d), Natural Resources Code, is amended to read as follows:

(d)  Each state agency, other than an institution of higher education, annually at the time set by the division, shall furnish the Texas Historical Commission with a photograph and information that specifies and identifies the age of each building:

(1)  that was acquired by the agency after the date of the preceding annual submission and that is at least 45 years old on the date of the current submission; or

(2)  that is possessed by the agency and has become 45 years old since the date the information was previously submitted.

SECTION __.42.  (a)  The following laws are repealed effective September 1, 2011:

(1)  Section 51.216, Education Code;

(2)  Sections 51.403(b) and (c), Education Code;

(3)  Section 51.4033, Education Code;

(4)  Section 61.0815, Education Code;

(5)  Section 61.086, Education Code;

(6)  Section 61.087(c), Education Code;

(7)  Section 62.098, Education Code;

(8)  Section 1434.054, Government Code;

(9)  Section 2107.005, Government Code;

(10)  Section 412.042(c), Labor Code; and

(11)  Section 3.01(c), Chapter 670, Acts of the 72nd Legislature, Regular Session, 1991 (Article 4477-7j, Vernon's Texas Civil Statutes).

TX_00003231

(b) The following provisions of the Education Code are repealed effective September 1, 2013:

 (1) Section 51.859;

 (2) Section 51.917(e);

 (3) Section 51.968(d);

 (4) Section 54.203(h);

 (5) Section 56.034(c);

 (6) Section 56.079(j);

 (7) Section 61.066(c);

 (8) Section 63.003(d);

 (9) Section 63.004;

 (10) Section 63.103;

 (11) Section 86.52(m);

 (12) Section 88.210;

 (13) Section 106.54;

 (14) Section 142.005;

 (15) Section 143.006;

 (16) Section 147.005;

 (17) Section 148.005; and

 (18) Section 153.008.

SECTION __.43. (a)  This section governs a conflict between this article and any other Act of the 82nd Legislature, Regular Session, 2011, without regard to the relative dates of enactment.

(b)  If this article and any other Act repeal the same statute, the earlier effective date of repeal controls.

(c)  If this article amends a statute that any other Act repeals, the repeal controls.

SECTION __.44. Section 51.011, Education Code, as added by this article, applies to credit balances held by a public institution of higher education on or after the effective date of this article.

SECTION __.45.  This article takes effect immediately if this Act receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this article takes effect September 1, 2011.

The amendment to **CSSB 1581** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 4.

Senator Wentworth offered the following amendment to the bill:

**Floor Amendment No. 5**

Amend **CSSB 1581** by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION _____.  Subchapter H, Chapter 411, Government Code, is amended by adding Section 411.2031 to read as follows:

Sec. 411.2031. CARRYING OF HANDGUNS BY LICENSE HOLDERS ON CERTAIN CAMPUSES. (a) For purposes of this section:

(1) "Campus" means all land and buildings owned or leased by an institution of higher education.

(2) "Institution of higher education" has the meaning assigned by Section 61.003, Education Code.

(3) "Premises" has the meaning assigned by Section 46.035, Penal Code.

(b) Except as otherwise provided by this section, a license holder may carry a concealed handgun on or about the license holder's person while the license holder is on the campus of an institution of higher education in this state.

(c) Except as provided by Subsection (d), an institution of higher education in this state may not adopt any rule, regulation, or other provision prohibiting license holders from carrying handguns on the campus of the institution.

(d) An institution of higher education in this state may establish rules, regulations, or other provisions concerning the storage of handguns in dormitories that are owned or operated by the institution and located on the campus of the institution.

(e) This section does not permit a license holder to carry a concealed handgun on or about the premises of a hospital maintained or operated by an institution of higher education. In this subsection, "hospital" has the meaning assigned by Section 241.003, Health and Safety Code.

(f) This section does not permit a license holder to carry a concealed handgun on the premises of a preschool, elementary school, or secondary school that is located on the campus of an institution of higher education if the institution gives effective notice under Section 30.06, Penal Code.

SECTION ____. Section 411.208, Government Code, is amended by amending Subsections (a), (b), and (d) and adding Subsection (f) to read as follows:

(a) A court may not hold the state, an agency or subdivision of the state, an officer or employee of the state, an institution of higher education, an officer or employee of an institution of higher education, a peace officer, or a qualified handgun instructor liable for damages caused by:

(1) an action authorized under this subchapter or a failure to perform a duty imposed by this subchapter; or

(2) the actions of an applicant or license holder that occur after the applicant has received a license or been denied a license under this subchapter.

(b) A cause of action in damages may not be brought against the state, an agency or subdivision of the state, an officer or employee of the state, an institution of higher education, an officer or employee of an institution of higher education, a peace officer, or a qualified handgun instructor for any damage caused by the actions of an applicant or license holder under this subchapter.

(d) The immunities granted under Subsections (a), (b), and (c) do not apply to an act or a failure to act by the state, an agency or subdivision of the state, an officer of the state, an institution of higher education, an officer or employee of an institution of higher education, or a peace officer if the act or failure to act was capricious or arbitrary.

(f) For purposes of this section, "institution of higher education" has the meaning assigned by Section 61.003, Education Code.

SECTION ____.  Subchapter H, Chapter 411, Government Code, is amended by adding Section 411.209 to read as follows:

Sec. 411.209.  LIABILITY INSURANCE PREMIUMS. An insurance company doing business in this state may not increase the amount of the liability insurance premiums charged to an institution of higher education in this state solely because license holders are permitted to carry handguns on campus under Section 411.2031.

SECTION ____.  Section 46.03, Penal Code, is amended by amending Subsections (a) and (c) and adding Subsections (j) and (k) to read as follows:

(a)  A person commits an offense if the person intentionally, knowingly, or recklessly possesses or goes with a firearm, illegal knife, club, or prohibited weapon listed in Section 46.05(a):

(1)  on the physical premises of a school or educational institution, any grounds or building on which an activity sponsored by a school or educational institution is being conducted, or a passenger transportation vehicle of a school or educational institution, whether the school or educational institution is public or private, unless:

(A)  pursuant to written regulations or written authorization of the institution; or

(B)  the person possesses or goes with a concealed handgun that the person is licensed to carry under Subchapter H, Chapter 411, Government Code, and no other weapon to which this section applies, on the physical premises of an institution of higher education or in a passenger transportation vehicle of the institution;

(2)  on the premises of a polling place on the day of an election or while early voting is in progress;

(3)  on the premises of any government court or offices utilized by the court, unless pursuant to written regulations or written authorization of the court;

(4)  on the premises of a racetrack;

(5)  in or into a secured area of an airport; or

(6)  within 1,000 feet of premises the location of which is designated by the Texas Department of Criminal Justice as a place of execution under Article 43.19, Code of Criminal Procedure, on a day that a sentence of death is set to be imposed on the designated premises and the person received notice that:

(A)  going within 1,000 feet of the premises with a weapon listed under this subsection was prohibited; or

(B)  possessing a weapon listed under this subsection within 1,000 feet of the premises was prohibited.

(c)  In this section:

(1)  "Institution of higher education" has the meaning assigned by Section 61.003, Education Code.

(2) [(1)]  "Premises" has the meaning assigned by Section 46.035.

(3) [(2)]  "Secured area" means an area of an airport terminal building to which access is controlled by the inspection of persons and property under federal law.

(j) Subsection (a)(1)(B) does not permit a person to possess a concealed handgun, or go with a concealed handgun, on the premises of a hospital maintained or operated by an institution of higher education. In this subsection, "hospital" has the meaning assigned by Section 241.003, Health and Safety Code.

(k) Subsection (a)(1)(B) does not permit a person to possess a concealed handgun, or go with a concealed handgun, on the premises of a preschool, elementary school, or secondary school that is located on the physical premises of an institution of higher education. This subsection does not apply if the actor was not given effective notice under Section 30.06.

SECTION ____. Section 46.11(c)(1), Penal Code, is amended to read as follows:

(1) "Premises" has the meaning [~~"Institution of higher education" and "premises" have the meanings~~] assigned by Section 481.134, Health and Safety Code.

SECTION ____. Section 411.208, Government Code, as amended by this Act, applies only to a cause of action that accrues on or after the effective date of this Act. A cause of action that accrued before that date is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.

SECTION ____. Sections 46.03(a) and (c), Penal Code, as amended by this Act, apply only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

The amendment to **CSSB 1581** was read.

Question — Shall Floor Amendment No. 5 to **CSSB 1581** be adopted?

### GUESTS PRESENTED

Senator Patrick was recognized and introduced to the Senate Honorary Senate Page, Austin Landon, and his parents, Mr. and Mrs. Michael Landon, Jr.

The Senate welcomed its guests.

### AT EASE

The President at 3:06 p.m. announced the Senate would stand At Ease subject to the call of the Chair.

### IN LEGISLATIVE SESSION

The President at 3:25 p.m. called the Senate to order as In Legislative Session.

Question — Shall Floor Amendment No. 5 to **CSSB 1581** be adopted?

Senator West moved to table Floor Amendment No. 5.

The motion to table was lost by the following vote: Yeas 12, Nays 19.

Yeas: Davis, Ellis, Gallegos, Hinojosa, Lucio, Ogden, Rodriguez, Uresti, Van de Putte, Watson, West, Zaffirini.

Nays: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Patrick, Seliger, Shapiro, Wentworth, Whitmire, Williams.

Senator Davis offered the following amendment to Floor Amendment No. 5:

**Floor Amendment No. 6**

Amend Floor Amendment No. 5 to **CSSB 1581** as follows:

(1)  In added Section 411.2031(a)(2), Government Code (page 1, line 10), strike ""Institution of higher education" and" and substitute ""Governing board," "institution of higher education," and".

(2)  In added Section 411.2031(c), Government Code (page 1, line 18), strike "provided by Subsection (d)" and substitute "otherwise provided by this section".

(3)  In added Section 411.2031, Government Code (page 1, between lines 25 and 26), insert the following subsection:

(e)  An institution of higher education in this state may establish rules, regulations, or other provisions prohibiting license holders from carrying handguns on the campus of the institution if the governing board of the institution approves the rules, regulations, or other provisions by majority vote.

(4)  In added Section 411.2031, Government Code (page 1, line 26), strike "(e)" and substitute "(f)".

(5)  In added Section 411.2031, Government Code (page 2, line 2), strike "(f)" and substitute "(g)".

(6)  In amended Section 411.208(a), Government Code (page 2, lines 12-13), strike "higher education, an officer or employee of an institution of higher education," and substitute "higher education that has not adopted rules under Section 411.2031 or an officer or employee of that institution,".

(7)  In amended Section 411.208(b), Government Code (page 2, lines 22-24), strike "an institution of higher education, an officer or employee of an institution of higher education," and substitute "or institution of higher education that has not adopted rules under Section 411.2031 or an officer or employee of that institution,".

(8)  In amended Section 411.208(d), Government Code (page 2, lines 29-31), strike "institution of higher education, an officer or employee of an institution of higher education," and substitute "institution of higher education that has not adopted rules under Section 411.2031 or an officer or employee of that institution,".

The amendment to Floor Amendment No. 5 to **CSSB 1581** was read.

On motion of Senator Wentworth, Floor Amendment No. 6 was tabled by the following vote:  Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Patrick, Seliger, Shapiro, Wentworth, Whitmire, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Ogden, Rodriguez, Uresti, Van de Putte, Watson, West, Zaffirini.

Question recurring on the adoption of Floor Amendment No. 5 to **CSSB 1581**, the amendment was adopted by the following vote:  Yeas 20, Nays 11.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Whitmire, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Zaffirini.

Senator Davis offered the following amendment to the bill:

**Floor Amendment No. 7**

Amend **CSSB 1581** (senate committee printing) by adding the following appropriately numbered ARTICLE to the bill and renumbering the remaining ARTICLES of the bill appropriately:

ARTICLE ___. FISCAL MATTERS CONCERNING DISCOUNTED UTILITY RATES FOR CERTAIN SCHOOLS AND INSTITUTIONS OF HIGHER EDUCATION

SECTION ____.01.  Section 36.351, Utilities Code, is reenacted and amended to read as follows:

Sec. 36.351.  DISCOUNTED RATES FOR CERTAIN SCHOOLS AND INSTITUTIONS OF HIGHER EDUCATION. (a) Notwithstanding any other provision of this title, each electric utility and transmission and distribution utility and, except as provided by Subsection (d-1), each municipally owned utility shall discount charges for electric service provided to a facility of a four-year state university, upper-level institution, Texas State Technical College, junior [or] college, independent school district, or open-enrollment charter school.

(b)  The discount is a 20-percent reduction of the utility's base rates that would otherwise be paid under the applicable tariffed rate.  The discount shall be provided either directly to an educational entity described by Subsection (a) or to a retail electric provider that also provides service to the educational entity.

(b-1)  A retail electric provider that receives a discount under Subsection (b) shall apply the discount to an educational entity described by Subsection (a) as a credit in an amount equal to the amount of the discount. The commission may suspend, revoke, or amend the certificate of a retail electric provider that does not apply the discount as required by this subsection. The commission shall impose an administrative penalty on a retail electric provider that does not apply the discount as required by this subsection.

(c)  An electric or municipally owned utility is exempt from this section if the 20-percent discount results in a reduction equal to more than one percent of the utility's total annual revenues.

(d)  A municipally owned utility is exempt from this section if the municipally owned utility, on September 1, 1995, discounted base commercial rates for electric service provided to all four-year state universities or colleges in its service area by 20 percent or more.

(d-1)  A municipally owned utility is exempt from the requirement to discount charges for electric service provided to a junior college, independent school district, or open-enrollment charter school.

(e) This section does not apply to a rate charged to an institution of higher education by a municipally owned utility that provides a discounted rate to the state for electric services below rates in effect on January 1, 1995, if the discounted rate provides a greater financial discount to the state than is provided to the institution of higher education through the discount provided by this section.

(f) An investor-owned electric utility may not recover from residential customers or any other customer class the assigned and allocated costs of serving an educational entity [a state university or college] that receives a discount under this section. After September 1, 2011, an investor-owned electric utility is subject to the requirements of this subsection unless a regulatory authority orders other ratemaking treatment.

(g) Each electric utility shall file tariffs with the commission reflecting the discount required under this section. The initial tariff filing is not a rate change for purposes of Subchapter C.

(h) This section has been in full force and effect since September 1, 1995, as to the discount required for electric service provided by an electric utility, including a transmission and distribution utility, or a municipally owned utility to a facility of a four-year state university, upper-level institution, Texas State Technical College, or college. Neither Section 63, Chapter 405 (S.B. 7), Acts of the 76th Legislature, Regular Session, 1999, nor the decision of the commission in the commission's Docket No. 35717 or any other ruling or order by the commission terminated or excused the continuing obligation of a transmission and distribution utility, any other electric utility, or a municipally owned utility to provide the discounts required by this section.

SECTION ____.02. This article takes effect immediately if this Act receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this article takes effect September 1, 2011.

The amendment to **CSSB 1581** was read.

On motion of Senator Ogden, Floor Amendment No. 7 was tabled by the following vote:  Yeas 19, Nays 12.

Yeas: Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Jackson, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Williams.

Nays: Davis, Ellis, Gallegos, Hinojosa, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Zaffirini.

Senator Hegar offered the following amendment to the bill:

**Floor Amendment No. 8**

Amend **CSSB 1581** (senate committee printing) by adding the following appropriately numbered ARTICLE to the bill and renumbering subsequent ARTICLES and SECTIONS accordingly:

ARTICLE __. FISCAL MATTERS CONCERNING THE STATE
COMPRESSION PERCENTAGE

SECTION ____. Section 42.2516, Education Code, is amended by adding Subsection (b-2) to read as follows:

(b-2) If a school district adopts a maintenance and operations tax rate that is below the rate equal to the product of the state compression percentage multiplied by the maintenance and operations tax rate adopted by the district for the 2005 tax year, the commissioner shall reduce the district's entitlement under this section in proportion to the amount by which the adopted rate is less than the rate equal to the product of the state compression percentage multiplied by the rate adopted by the district for the 2005 tax year. The reduction required by this subsection applies beginning with the maintenance and operations tax rate adopted for the 2009 tax year.

HEGAR
ELTIFE

The amendment to **CSSB 1581** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 8.

Senator Hinojosa offered the following amendment to the bill:

**Floor Amendment No. 9**

Amend **CSSB 1581** (Senate Committee Printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. (a) Chapter 161, Health and Safety Code, is amended by adding Subchapter V to read as follows:

SUBCHAPTER V. FEE ON CIGARETTES AND CIGARETTE TOBACCO PRODUCTS
MANUFACTURED BY CERTAIN COMPANIES

Sec. 161.601. PURPOSE. The purpose of this subchapter is to:

(1) recover health care costs to the state imposed by nonsettling manufacturers;

(2) prevent nonsettling manufacturers from undermining this state's policy of reducing underage smoking by offering cigarettes and cigarette tobacco products at prices that are substantially below the prices of cigarettes and cigarette tobacco products of other manufacturers;

(3) protect the tobacco settlement agreement and funding, which has been reduced because of the growth of sales of nonsettling manufacturer cigarettes and cigarette tobacco products, for programs that are funded wholly or partly by payments to this state under the tobacco settlement agreement and recoup for this state settlement payment revenue lost because of sales of nonsettling manufacturer cigarettes and cigarette tobacco products; and

(4) provide funding for certain health-related institutions of higher education for any purpose the legislature determines.

Sec. 161.602. DEFINITIONS. In this subchapter:

(1) "Brand family" means each style of cigarettes or cigarette tobacco products sold under the same trademark. The term includes any style of cigarettes or cigarette tobacco products that have a brand name, trademark, logo, symbol, motto,

selling message, recognizable pattern of colors, or other indication of product identification that is identical to, similar to, or identifiable with a previously known brand of cigarettes or cigarette tobacco products.

(2)  "Cigarette" means any product that contains nicotine and is intended to be burned or heated under ordinary conditions of use. The term includes:

(A)  a roll of tobacco wrapped in paper or another substance that does not contain tobacco;

(B)  tobacco, in any form, that is functional in a product that, because of the product's appearance, the type of tobacco used in the filler, or the product's packaging and labeling, is likely to be offered to or purchased by a consumer as a cigarette; or

(C)  a roll of tobacco wrapped in any substance containing tobacco that, because of the product's appearance, the type of tobacco used in the filler, or the product's packaging and labeling, is likely to be offered to or purchased by a consumer as a cigarette.

(3)  "Cigarette tobacco product" means roll-your-own tobacco or tobacco that, because of the tobacco's appearance, type, packaging, or labeling, is suitable for use in making cigarettes and is likely to be offered to or purchased by a consumer for that purpose.

(4)  "Distributor" has the meaning assigned by Section 154.001 or 155.001, Tax Code, as appropriate.

(5)  "Manufacturer" means a person that manufactures, fabricates, or assembles cigarettes for sale or distribution. For purposes of this subchapter, the term includes a person that is the first importer into the United States of cigarettes and cigarette tobacco products manufactured, fabricated, or assembled outside the United States.

(6)  "Nonsettling manufacturer" means a manufacturer of cigarettes that did not sign the tobacco settlement agreement.

(7)  "Nonsettling manufacturer cigarettes" means cigarettes manufactured, fabricated, assembled, or imported by a nonsettling manufacturer.

(8)  "Nonsettling manufacturer cigarette tobacco products" means cigarette tobacco products manufactured, fabricated, assembled, or imported by a nonsettling manufacturer.

(9)  "Tobacco settlement agreement" means the Comprehensive Settlement Agreement and Release filed on January 16, 1998, in the United States District Court, Eastern District of Texas, in the case styled The State of Texas v. The American Tobacco Co., et al., No. 5-96CV-91, and all subsequent amendments.

Sec. 161.603.  FEE IMPOSED. (a) A fee is imposed on the sale, use, consumption, or distribution in this state of:

(1)  nonsettling manufacturer cigarettes if a stamp is required to be affixed to a package of those cigarettes under Chapter 154, Tax Code;

(2)  nonsettling manufacturer cigarettes that are sold, purchased, or distributed in this state but that are not required to have a stamp affixed to a package of those cigarettes under Chapter 154, Tax Code;

(3)  nonsettling manufacturer cigarette tobacco products that are subject to the tax imposed by Section 155.0211, Tax Code; and

(4) nonsettling manufacturer cigarette tobacco products that are sold, purchased, or distributed in this state but that are not subject to the tax imposed by Section 155.0211, Tax Code.

(b) The fee imposed by this section does not apply to cigarettes or cigarette tobacco products that are:

(1) included in computing payments due to be made by a settling manufacturer under the tobacco settlement agreement; or

(2) sold, purchased, or otherwise distributed in this state for retail sale outside this state.

(c) The fee imposed by this subchapter is in addition to any other privilege, license, fee, or tax required or imposed by state law.

(d) Except as otherwise provided by this subchapter, the fee imposed by this subchapter is imposed, collected, paid, administered, and enforced in the same manner, taking into account that the fee is imposed on nonsettling manufacturers, as the taxes imposed by Chapters 154 and 155, Tax Code, as appropriate.

Sec. 161.604. RATE OF FEE. (a) Except as provided by Subsection (b), the fee is imposed at the rate of 2.15 cents for:

(1) each nonsettling manufacturer cigarette; and

(2) each 0.09 ounce of nonsettling manufacturer cigarette tobacco product.

(b) On January 1 of each year, the comptroller shall increase the rate of the tax prescribed by Subsection (a) by the greater of:

(1) three percent; or

(2) the percentage increase in the most recent annual revised Consumer Price Index for All Urban Consumers, as published by the Federal Bureau of Labor Statistics of the United States Department of Labor.

Sec. 161.605. NONSETTLING MANUFACTURER CIGARETTES AND CIGARETTE TOBACCO PRODUCTS FOR RETAIL SALE OUTSIDE THIS STATE. (a) Except as provided by Subsection (b), a person may not transport or cause to be transported from this state nonsettling manufacturer cigarettes or cigarette tobacco products for retail sale in another state unless:

(1) the packages of the cigarettes or cigarette tobacco products bear the tax stamps of the state in which the cigarettes or cigarette tobacco products are to be sold and the stamps are affixed in accordance with the laws of that state; or

(2) if the state does not require a tax stamp, all excise taxes imposed on the cigarettes or cigarette tobacco products by the state in which they are to be sold have been paid in accordance with the laws of that state.

(b) A person is not required to affix a tax stamp of another state or pay the excise tax of another state before transporting the nonsettling manufacturer cigarettes or cigarette tobacco products out of this state if:

(1) the state the cigarettes or cigarette tobacco products are being transported to prohibits that action; and

(2) the cigarettes or cigarette tobacco products are being sold to a wholesaler licensed by that state.

Sec. 161.606. DISTRIBUTOR'S REPORT. (a) A distributor required to file a report under Section 154.210 or 155.111, Tax Code, shall, in addition to the information required by those sections, include in that required report, as appropriate:

(1) the number and denominations of stamps affixed to individual packages of nonsettling manufacturer cigarettes during the preceding month;

(2) the amount of nonsettling manufacturer cigarette tobacco products subject to the tax imposed by Section 155.0211, Tax Code, during the preceding month;

(3) the number of individual packages of nonsettling manufacturer cigarettes and the amount of nonsettling manufacturer cigarette tobacco products not subject to the tax imposed by Chapter 154, Tax Code, or Section 155.0211, Tax Code, sold or purchased in this state or otherwise distributed in this state for sale in the United States;

(4) the number of individual packages of nonsettling manufacturer cigarettes and the amount of nonsettling manufacturer cigarette tobacco products transported or caused to be transported outside this state during the preceding month;

(5) if Subdivision (4) applies, the name and address of the persons receiving the cigarettes or cigarette tobacco products outside this state; and

(6) any other information the comptroller considers necessary or appropriate to determine the amount of the fee imposed by this subchapter or to enforce this subchapter.

(b) The information required by Subsection (a) must be itemized for each place of business and by manufacturer and brand family.

(c) The requirement to report information under this section shall be enforced in the same manner as the requirement to deliver to or file with the comptroller a report required under Section 154.210 or 155.111, Tax Code, as appropriate.

(d) Information obtained from a report provided under Subsection (a) regarding cigarettes or cigarette tobacco products sold, purchased, or otherwise distributed by a nonsettling manufacturer may be disclosed by the comptroller to that manufacturer or to the authorized representative of the manufacturer.

Sec. 161.607. NOTICE AND PAYMENT OF FEE. (a) Each month, not later than the 20th day after the date the comptroller receives the information required by Section 161.606, the comptroller shall:

(1) compute the amount of the fee imposed by this subchapter that each nonsettling manufacturer owes for that reporting period based on that information and any other information available to the comptroller; and

(2) mail to each nonsettling manufacturer a notice of the amount of fees the manufacturer owes.

(b) Not later than the 15th day of the month after the month in which the comptroller mails a nonsettling manufacturer a notice under Subsection (a), the nonsettling manufacturer shall send to the comptroller the amount of the fee due according to the notice.

Sec. 161.608. DIRECTORY OF COMPLYING MANUFACTURERS. (a) The comptroller shall develop, maintain, and publish on the comptroller's Internet website a directory listing of all nonsettling manufacturers that have complied with this subchapter.

(b) The comptroller shall provide the list described by Subsection (a) to any person on request.

Sec. 161.609. PREPAYMENT BEFORE OFFERING NONSETTLING MANUFACTURER CIGARETTES OR CIGARETTE TOBACCO PRODUCTS FOR SALE OR DISTRIBUTION IN THIS STATE. (a) If cigarettes or cigarette tobacco products of a nonsettling manufacturer are not offered for sale or distribution in this state on September 1, 2011, the nonsettling manufacturer may not offer those cigarettes or cigarette tobacco products for sale or distribution in this state after that date unless the manufacturer first prepays the fee imposed by this subchapter for sales of cigarettes and cigarette tobacco products that will occur in the first calendar month in which they are sold or distributed in this state.

(b) The amount a nonsettling manufacturer is required to prepay under this section is equal to the greater of:

(1) the rate prescribed by Section 161.604 in effect on that date multiplied by:

(A) the number of cigarettes the comptroller reasonably projects that the nonsettling manufacturer will sell or distribute in this state during that calendar month; and

(B) each 0.09 ounce of nonsettling manufacturer cigarette tobacco products the comptroller reasonably projects that the nonsettling manufacturer will sell or distribute in this state during that calendar month; or

(2) $50,000.

(c) The fee imposed by this section does not apply to cigarettes or cigarette tobacco products that are:

(1) included in computing payments due to be made by a settling manufacturer under the tobacco settlement agreement; or

(2) sold, purchased, or otherwise distributed in this state for retail sale outside this state.

(d) The comptroller may require a nonsettling manufacturer to provide any information reasonably necessary to determine the prepayment amount.

(e) The comptroller shall establish procedures to:

(1) reimburse a nonsettling manufacturer if the actual sales or distributions in the first calendar month are less than the projected sales or distributions; and

(2) require additional payments if the actual sales or distributions in the first calendar month are greater than the projected sales or distributions.

(f) A nonsettling manufacturer shall pay the fee imposed by this subchapter in the manner provided by Section 161.607 beginning in the second calendar month in which the manufacturer offers the cigarettes or cigarette tobacco products for sale or distribution in this state.

Sec. 161.610. REPORT TO ATTORNEY GENERAL BEFORE OFFERING NONSETTLING MANUFACTURER CIGARETTES OR CIGARETTE TOBACCO PRODUCTS FOR SALE OR DISTRIBUTION IN THIS STATE. (a) In addition to prepaying the fee required by Section 161.609, a nonsettling manufacturer described by Section 161.609(a) shall, before the date the cigarettes or cigarette tobacco products are offered for sale or distribution in this state, provide to the attorney general on a form prescribed by the attorney general:

(1) the nonsettling manufacturer's complete name, address, and telephone number;

(2)  the date that the nonsettling manufacturer will begin offering cigarettes or cigarette tobacco products for sale or distribution in this state;

(3)  the names of the brand families of the cigarettes or cigarette tobacco products that the nonsettling manufacturer will offer for sale or distribution in this state;

(4)  a statement that the nonsettling manufacturer intends to comply with this subchapter; and

(5)  the name, address, telephone number, and signature of an officer of the nonsettling manufacturer attesting to all of the included information.

(b)  The attorney general shall make the information provided under this section available to the comptroller.

Sec. 161.611.  PENALTIES FOR NONCOMPLIANCE. (a) Cigarettes and cigarette tobacco products of a nonsettling manufacturer that has not complied with this subchapter, including full payment of the fee imposed by this subchapter, shall be treated as cigarettes or tobacco products for which the tax assessed by Chapter 154 or 155, Tax Code, as appropriate, has not been paid, and the manufacturer is subject to all penalties imposed by those chapters for violations of those chapters.

(b)  The comptroller shall provide to a nonsettling manufacturer, each distributor authorized to affix stamps under Chapter 154, Tax Code, and the attorney general a notice of the manufacturer's noncompliance with this subchapter if the manufacturer:

(1)  does not pay in full the fee imposed by this subchapter; or

(2)  is not included on the directory required by Section 161.608.

(c)  If a nonsettling manufacturer does not appear on the directory required by Section 161.608, or on receipt of the notice of a nonsettling manufacturer's noncompliance, a distributor may not:

(1)  pay the tax imposed by Chapter 154 or 155, Tax Code, as appropriate;

(2)  affix to a package of cigarettes the stamp required by Section 154.041, Tax Code; or

(3)  otherwise purchase, sell, or distribute cigarettes manufactured by the nonsettling manufacturer in this state.

(d)  If the comptroller determines that the nonsettling manufacturer that is the subject of a notice provided under Subsection (b) later complies with this subchapter, the comptroller shall provide to the nonsettling manufacturer, each distributor authorized to affix stamps under Chapter 154, Tax Code, and the attorney general a notice that the nonsettling manufacturer is in compliance with this subchapter.

Sec. 161.612.  APPOINTMENT OF AGENT FOR SERVICE OF PROCESS. A nonsettling manufacturer shall appoint and engage a resident agent for service of process.

Sec. 161.613.  AUDIT OR INSPECTION. The comptroller or attorney general is entitled to conduct reasonable periodic audits or inspections of the financial records of a nonsettling manufacturer to ensure compliance with this subchapter.

Sec. 161.614.  REVENUE DEPOSITED IN PERMANENT HEALTH FUND. The revenue from the fee imposed by this subchapter shall be deposited in the state treasury to the credit of the permanent health fund under Subchapter A of Chapter 63, Education Code. The annual amounts deposited shall be distributed for any purpose the legislature determines and shall not be subject to the requirements of Chapter 63 of the Education Code.

Sec. 161.615.  APPLICATION OF SUBCHAPTER. This subchapter applies without regard to Section 154.022, Tax Code, or any other law that might be read to create an exemption for interstate sales.

(b)  Not later than September 30, 2011, a nonsettling manufacturer, as that term is defined by Section 161.602, Health and Safety Code, as added by this section, that is offering cigarettes or cigarette tobacco products for sale or distribution in this state on September 1, 2011, shall provide to the attorney general on a form prescribed by the attorney general:

(1)  the nonsettling manufacturer's complete name, address, and telephone number;

(2)  the date that the nonsettling manufacturer began offering cigarettes or cigarette tobacco products for sale or distribution in this state;

(3)  the names of the brand families of the cigarettes or cigarette tobacco products that the nonsettling manufacturer offers for sale or distribution in this state;

(4)  a statement that the nonsettling manufacturer intends to comply with Subchapter V, Chapter 161, Health and Safety Code, as added by this section; and

(5)  the name, address, telephone number, and signature of an officer of the nonsettling manufacturer attesting to all of the included information.

(c)  The attorney general shall make the information provided under Subsection (b) of this section available to the comptroller.

(d)  Notwithstanding any other provision of this Act, this section takes effect September 1, 2011.

The amendment to **CSSB 1581** was read and was adopted by the following vote:  Yeas 23, Nays 8.

Yeas:  Birdwell, Carona, Davis, Deuell, Duncan, Ellis, Eltife, Estes, Gallegos, Hegar, Hinojosa, Lucio, Nelson, Ogden, Rodriguez, Shapiro, Uresti, Van de Putte, Watson, Wentworth, West, Whitmire, Zaffirini.

Nays:  Fraser, Harris, Huffman, Jackson, Nichols, Patrick, Seliger, Williams.

Senator Williams offered the following amendment to the bill:

**Floor Amendment No. 10**

Amend **CSSB 1581** (Senate Committee Printing) by adding the following appropriately numbered ARTICLE to the bill and renumbering subsequent ARTICLES and SECTIONS accordingly:

ARTICLE __. PROVISIONS RELATING TO CARRYING CONCEALED
WEAPONS BY LICENSE HOLDERS

SECTION __.01  Section 46.03, Penal Code, is amended by adding Subsection (j) to read as follows:

(j)  It is a defense to prosecution under Subsection (a)(1) that at the time of the commission of the offense the actor was:

(1)  carrying a concealed handgun that the person was licensed to carry under Subchapter H, Chapter 411, Government Code; and

(2)  attending a school district board of trustees meeting in an official capacity as:

(A)  a member of the board of trustees; or

(B)  the superintendent of the school district governed by the board of trustees.

SECTION __.02.  Section 46.035, Penal Code, is amended by adding Subsection (l) to read as follows:

(l)  It is a defense to prosecution under Subsection (c) that at the time of the commission of the offense the actor was attending a school district board of trustees meeting in an official capacity as:

(1)  a member of the board of trustees; or

(2)  the superintendent of the school district governed by the board of trustees.

SECTION __.03.  Sections 46.03(j) and 46.035(l), Penal Code, as added by this Act, apply only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

The amendment to **CSSB 1581** was read.

Senator Williams withdrew Floor Amendment No. 10.

Senator Ellis offered the following amendment to the bill:

**Floor Amendment No. 11**

Amend **CSSB 1581** on page 3, between lines 18 and 19, by inserting Subsection (3) to read as follows and renumber the subsequent sections appropriately:

"(3)(a)  The Joint Oversight Committee on Higher Education Governance, Excellence, and Transparency shall review tuition deregulation and make recommendations to the 83rd Legislature for its continuation or repeal.  The report shall be submitted by January 1, 2013 to the Legislature.

(b)  Section 54.0513, Education Code shall be repealed on September 1, 2013 unless the Legislature passes legislation to continue its existence."

The amendment to **CSSB 1581** was read.

On motion of Senator Ogden, Floor Amendment No. 11 was tabled by the following vote:  Yeas 16, Nays 15.

Yeas:  Birdwell, Carona, Duncan, Eltife, Estes, Harris, Hegar, Huffman, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Wentworth, Zaffirini.

Nays:  Davis, Deuell, Ellis, Fraser, Gallegos, Hinojosa, Jackson, Lucio, Rodriguez, Uresti, Van de Putte, Watson, West, Whitmire, Williams.

Senator Ogden offered the following amendment to the bill:

**Floor Amendment No. 12**

Amend **CSSB 1581** by striking ARTICLE 1 of the bill (senate committee printing, page 1, lines 12-40) and renumbering subsequent ARTICLES and SECTIONS of the bill accordingly.

The amendment to **CSSB 1581** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 12.

On motion of Senator Ogden and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1581** as amended was passed to engrossment by the following vote:  Yeas 21, Nays 10.

Yeas:  Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Hinojosa, Huffman, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Uresti, Wentworth, Whitmire, Williams.

Nays:  Davis, Ellis, Gallegos, Jackson, Lucio, Rodriguez, Van de Putte, Watson, West, Zaffirini.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1581 ON THIRD READING

Senator Ogden moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1581** be placed on its third reading and final passage.

The motion prevailed by the following vote:  Yeas 25, Nays 6.

Yeas:  Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Hinojosa, Huffman, Jackson, Lucio, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Uresti, Van de Putte, Wentworth, West, Whitmire, Williams.

Nays:  Davis, Ellis, Gallegos, Rodriguez, Watson, Zaffirini.

The bill was read third time and was passed by the following vote:  Yeas 20, Nays 11.

Yeas:  Birdwell, Carona, Deuell, Duncan, Eltife, Estes, Fraser, Harris, Hegar, Huffman, Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro, Uresti, Wentworth, Whitmire, Williams.

Nays:  Davis, Ellis, Gallegos, Hinojosa, Jackson, Lucio, Rodriguez, Van de Putte, Watson, West, Zaffirini.

### CONFERENCE COMMITTEE ON HOUSE BILL 1

Senator Ogden called from the President's table, for consideration at this time, the request of the House for a conference committee to adjust the differences between the two Houses on **HB 1** and moved that the request be granted.

The motion prevailed without objection.

The President asked if there were any motions to instruct the conference committee on **HB 1** before appointment.

There were no motions offered.

Accordingly, the President announced the appointment of the following conferees on the part of the Senate: Senators Ogden, Chair; Nelson, Williams, Duncan, and Hinojosa.

**(President Pro Tempore Ogden in Chair)**

### COMMITTEE SUBSTITUTE
### SENATE BILL 1213 ON SECOND READING

On motion of Senator Carona and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSB 1213** at this time on its second reading:

**CSSB 1213**, Relating to consumer protections in the purchase of life settlement contracts; imposing penalties.

The bill was read second time.

Senator Carona offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSSB 1213** (senate committee printing) as follows:

(1) In SECTION 1.01 of the bill, in added Section 1111A.002(1), Insurance Code (page 1, line 25), strike "an individual" and substitute "a person".

(2) In SECTION 1.01 of the bill, in added Section 1111A.002(2), Insurance Code (page 1, line 32), strike ". A broker" and substitute "or estimates life expectancies for a life settlement contract. A broker who offers or attempts to negotiate a life settlement contract".

(3) In SECTION 1.01 of the bill, in added Section 1111A.002(7), Insurance Code (page 2, line 17), strike "producer" and substitute "agent".

(4) In SECTION 1.01 of the bill, in added Section 1111A.003(a), Insurance Code (page 6, lines 3-8), strike "If there is more than one owner on a single policy and the owners are residents of different states, the life settlement contract is governed by the law of the state in which the owner having the largest percentage ownership resides or, if the owners hold equal ownership, the state of residence of one owner agreed on in writing by all owners."

(5) In SECTION 1.01 of the bill, in added Section 1111A.003(b), Insurance Code (page 6, line 10), strike "prescribed by rule" and substitute "prescribed".

(6) In SECTION 1.01 of the bill, at the end of added Section 1111A.003, Insurance Code (page 7, between lines 45 and 46), insert the following:

(q)  The business of life settlements constitutes the business of insurance.

(7) In SECTION 1.01 of the bill, in added Section 1111A.004(a)(6), Insurance Code (page 7, line 69), between "contract" and "that", insert "using a form".

(8) In SECTION 1.01 of the bill, in added Section 1111A.004(b), Insurance Code (page 8, line 15), strike "only after a hearing".

(9) In SECTION 1.01 of the bill, in added Section 1111A.006(d)(4), Insurance Code (page 9, line 20), between "another" and "provider", insert "licensed".

(10) In SECTION 1.01 of the bill, strike added Section 1111A.007, Insurance Code (page 9, line 39, through page 11, line 23), and substitute the following:

Sec. 1111A.007. EXAMINATION. Subchapter B, Chapter 401, applies to a person engaged in the business of life settlements.

(11) In SECTION 1.01 of the bill, in added Section 1111A.011(c)(1), Insurance Code (page 11, line 55), strike "directly".

(12) In SECTION 1.01 of the bill, in added Section 1111A.012(a), Insurance Code (page 11, lines 61-65), strike "A provider shall provide in writing, in a separate document that is signed by the owner and provider, the following information to the owner not later than the date the life settlement contract is signed by all parties:" and substitute the following:

Not later than the fifth day after the date a provider receives the application for a life settlement contract, the provider shall provide, in a separate written document, the following information to the owner:

(13) In SECTION 1.01 of the bill, in added Section 1111A.013(c), Insurance Code (page 13, lines 57-58), strike "as described by Subsection (b)".

(14) In SECTION 1.01 of the bill, in added Section 1111A.014(e), Insurance Code (page 14, line 64), strike "producer" and substitute "agent".

(15) In SECTION 1.01 of the bill, in added Section 1111A.014(n), Insurance Code (page 15, lines 55-58), strike "The time covered under a group policy must be calculated without regard to a change in insurance carriers, provided the coverage has been continuous and under the same group sponsorship."

(16) In SECTION 1.01 of the bill, in added Section 1111A.014, Insurance Code (page 16, between lines 15 and 16), insert a new Subsection (o) to read as follows:

(o) For the purposes of Subsection (n)(1), time covered under a group policy must be calculated without regard to a change in insurance carriers, provided the coverage has been continuous and under the same group sponsorship.

(17) In SECTION 1.01 of the bill, in added Section 1111A.015, Insurance Code (page 16, line 29), between "RULES." and "The", insert "(a)".

(18) In SECTION 1.01 of the bill, at the end of added Section 1111A.015, Insurance Code (page 16, between lines 32 and 33), insert the following:

(b) The commissioner may not adopt a rule establishing a price or fee for the sale or purchase of a life settlement contract. This subsection does not prohibit the commissioner from adopting a rule relating to an unjust price or fee for the sale or purchase of a life settlement contract.

(c) The commissioner may not adopt a rule that regulates the actions of an investor providing money to a life or viatical settlement company.

(19) In SECTION 1.01 of the bill, in added Section 1111A.017(a)(1), Insurance Code (page 16, line 62), between "or" and "should", insert "reasonably".

(20) In SECTION 1.01 of the bill, in added Section 1111A.017(a)(4), Insurance Code (page 17, line 4), strike "sole".

(21) In SECTION 1.01 of the bill, in added Section 1111A.018(b), Insurance Code (page 17, line 45), strike "knowingly or intentionally".

(22) In SECTION 1.01 of the bill, strike added Section 1111A.019, Insurance Code (page 17, lines 61-66), and substitute the following:

Sec. 1111A.019. MANDATORY REPORTING OF FRAUDULENT LIFE SETTLEMENT ACTS. A person engaged in the business of life settlements has a duty under Section 701.051 to report a fraudulent life settlement act.

(23) In SECTION 1.01 of the bill, strike added Sections 1111A.020 and 1111A.021, Insurance Code (page 17, line 67, through page 18, line 34).

(24) In SECTION 1.01 of the bill, in added Section 1111A.024(b), Insurance Code (page 19, line 35), strike "or criminal".

(25) In SECTION 1.01 of the bill, strike added Section 1111A.026(b), Insurance Code (page 19, lines 59-62), and substitute the following:

(b) A person who knowingly, recklessly, or intentionally commits a fraudulent life settlement act commits a criminal offense and is subject to penalties under Chapter 35, Penal Code.

(26) In SECTION 1.01 of the bill, at the end of added Chapter 1111A, Insurance Code (page 19, between lines 64 and 65), insert the following appropriately numbered section:

Sec. 1111A.___. APPLICABILITY OF OTHER INSURANCE LAWS. The following laws apply to a person engaged in the business of life settlements:

(1) Chapters 82, 83, 84, 101, 481, 541, and 701;

(2) Sections 31.002, 32.021, 32.023, 32.041, 38.001, 81.004, 86.001, 86.051, 86.052, 201.004, 401.051, 401.054, 401.151(a), 521.003, 521.004, 543.001(c), 801.056, and 862.052;

(3) Subchapter A, Chapter 32;

(4) Subchapter C, Chapter 36;

(5) Subchapter B, Chapter 404; and

(6) Subchapter B, Chapter 491.

(27) In SECTION 1.01 of the bill, redesignate sections, subsections, and cross-references in added Chapter 1111A, Insurance Code, appropriately.

The amendment to **CSSB 1213** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator Carona and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1213** as amended was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

### COMMITTEE SUBSTITUTE
### SENATE BILL 1213 ON THIRD READING

Senator Carona moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1213** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

TX_00003250

## COMMITTEE SUBSTITUTE
## SENATE BILL 1616 ON SECOND READING

On motion of Senator West and by unanimous consent, the regular order of business was suspended to take up for consideration **CSSB 1616** at this time on its second reading:

**CSSB 1616**, Relating to the collection, storage, preservation, retrieval, and destruction of biological evidence.

The bill was read second time.

Senator West offered the following amendment to the bill:

**Floor Amendment No. 1**

Amend **CSSB 1616** (Senate Committee Printing) as follows:

(1) In SECTION 1 of the bill, in added Article 38.43(b), Code of Criminal Procedure (page 1, line 44), between "preservation," and "or retrieval", insert "analysis,".

(2) In SECTION 1 of the bill, in amended Article 38.43, Code of Criminal Procedure (page 1, line 46, through page 2, line 21), strike amended Subsection (c) and substitute the following:

(c) An entity or individual described by Subsection (b) shall ensure that biological evidence collected pursuant to an investigation or prosecution of a felony offense or conduct constituting a felony offense is retained and [Except as provided by Subsection (d), material required to be preserved under this article must be] preserved:

(1) for not less than 40 years, or until the applicable statute of limitations has expired, if there is an unapprehended actor associated with the offense; or

(2) in a case in which a defendant has been convicted, placed on deferred adjudication community supervision, or adjudicated as having engaged in delinquent conduct and there are no additional unapprehended actors associated with the offense:

(A) until the inmate is executed, dies, or is released on parole, if the defendant is [was] convicted of a capital felony; [or]

(B) [(2)] until the defendant dies, completes the defendant's sentence, or is released on parole or mandatory supervision, if the defendant is sentenced to a term of confinement or imprisonment in the Texas Department of Criminal Justice;

(C) until the defendant completes the defendant's term of community supervision, including deferred adjudication community supervision, if the defendant is placed on community supervision;

(D) until the defendant dies, completes the defendant's sentence, or is released on parole, mandatory supervision, or juvenile probation, if the defendant is committed to the Texas Youth Commission; or

(E) until the defendant completes the defendant's term of juvenile probation, including a term of community supervision upon transfer of supervision to a criminal court, if the defendant is placed on juvenile probation.

(3) In SECTION 1 of the bill, in amended Article 38.43(d), Code of Criminal Procedure (page 2, lines 25 through 26), strike "the rules adopted under Subsection (c)(2)" and substitute "Subsection (c)".

(4)  In SECTION 1 of the bill, in amended Article 38.43(f), Code of Criminal Procedure (page 2, line 40), between "adopt" and "rules", insert "standards and".

(5)  In SECTION 1 of the bill, in amended Article 38.43, Code of Criminal Procedure (page 2, between lines 52 and 53), following amended Subsection (f), insert the following:

(g)  The Department of Public Safety shall adopt standards and rules, consistent with best practices, relating to a person described by Subsection (b) that specify the manner of collection, storage, preservation, and retrieval of biological evidence.

(6)  In SECTION 1 of the bill, in added Article 38.43(g), Code of Criminal Procedure (page 2, line 53), strike "(g)" and substitute "(h)".

(7)  In SECTION 2(a) of the bill (page 2, line 58), strike "initial rules" and substitute "initial standards and rules".

(8)  In SECTION 2(b) of the bill (page 3, line 10), strike "adopt the rules" and substitute "adopt the standards and rules".

(9)  Strike SECTION 2(c) of the bill (page 3, lines 12 through 19) and substitute the following:

(c)  The change in law made by Article 38.43, Code of Criminal Procedure, as amended by this Act, applies to biological evidence in the possession of an entity or individual described by Article 38.43(b), Code of Criminal Procedure, as amended by this Act, on the effective date of this Act, regardless of whether the evidence was collected before, on, or after the effective date of this Act.

(d)  Notwithstanding Subsection (c) of this section, an entity or individual described by Article 38.43(b), Code of Criminal Procedure, as amended by this Act, is not required to comply with the standards and rules adopted under Article 38.43(g), Code of Criminal Procedure, as added by this Act, before January 1, 2013.

The amendment to **CSSB 1616** was read and was adopted by a viva voce vote.

All Members are deemed to have voted "Yea" on the adoption of Floor Amendment No. 1.

On motion of Senator West and by unanimous consent, the caption was amended to conform to the body of the bill as amended.

**CSSB 1616** as amended was passed to engrossment by a viva voce vote.

All Members are deemed to have voted "Yea" on the passage to engrossment.

### COMMITTEE  SUBSTITUTE
### SENATE BILL 1616 ON THIRD READING

Senator West moved that Senate Rule 7.18 and the Constitutional Rule requiring bills to be read on three several days be suspended and that **CSSB 1616** be placed on its third reading and final passage.

The motion prevailed by the following vote: Yeas 31, Nays 0.

The bill was read third time and was passed by the following vote: Yeas 31, Nays 0.

## SENATE BILL 656 WITH HOUSE AMENDMENTS

Senator Huffman called **SB 656** from the President's table for consideration of the House amendments to the bill.

The President Pro Tempore laid the bill and the House amendments before the Senate.

**Amendment**

Amend **SB 656** by substituting in lieu thereof the following:

A BILL TO BE ENTITLED

AN ACT

relating to the abolition of the Coastal Coordination Council and the transfer of its functions to the General Land Office.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 201.026(g), Agriculture Code, is amended to read as follows:

(g)  In an area that the state board identifies as having or having the potential to develop agricultural or silvicultural nonpoint source water quality problems or an area within the "coastal zone" designated by the commissioner of the General Land Office [Coastal Coordination Council], the state board shall establish a water quality management plan certification program that provides, through local soil and water conservation districts, for the development, supervision, and monitoring of individual water quality management plans for agricultural and silvicultural lands.  Each plan must be developed, maintained, and implemented under rules and criteria adopted by the state board and comply with state water quality standards established by the Texas Commission on Environmental Quality.  The state board shall certify a plan that satisfies the state board's rules and criteria and complies with state water quality standards established by the Texas Commission on Environmental Quality under the commission's exclusive authority to set water quality standards for all water in the state.

SECTION 2.  Section 33.004, Natural Resources Code, is amended by adding Subdivision (2-a) to read as follows:

(2-a)  "Committee" means the Coastal Coordination Advisory Committee.

SECTION 3.  Section 33.051, Natural Resources Code, is amended to read as follows:

Sec. 33.051.  GENERAL DUTY. The board, the commissioner [council], the land office, and the network shall perform the duties provided in this subchapter.

SECTION 4.  Section 33.052(a), Natural Resources Code, is amended to read as follows:

(a)  The commissioner shall develop a continuing comprehensive coastal management program pursuant to the policies stated in Section 33.202 [of this code. The program is not effective until approved by a majority of the council under Section 33.204 of this code].

SECTION 5.  Section 33.052(b), Natural Resources Code, as amended by Chapters 165 (S.B. 971) and 416 (H.B. 3226), Acts of the 74th Legislature, Regular Session, 1995, is reenacted and amended to read as follows:

(b)  In developing the program, the land office shall act as the lead agency to coordinate and implement a comprehensive coastal management program [develop a long-term plan] for the management of uses affecting coastal natural resource areas, in cooperation with other state agencies that have duties relating to coastal matters[, including those agencies represented on the council]. The program shall implement the policies stated in Section 33.202 [of this code] and shall include the elements listed in Section 33.053 [of this code].

SECTION 6.  Section 33.052(e), Natural Resources Code, is amended to read as follows:

(e)  This section does not add to or subtract from the duties and responsibilities of a state agency other than the land office, the commissioner [council], and the board.

SECTION 7.  Section 33.055, Natural Resources Code, is amended to read as follows:

Sec. 33.055.  PUBLIC HEARINGS TO CONSIDER COASTAL MANAGEMENT PROGRAM.  In developing, reviewing, or amending the coastal management program, after due notice to affected persons and the public generally, the commissioner [and the council] shall hold or have held public hearings as the commissioner determines [and the council determine] to be appropriate.

SECTION 8.  Sections 33.204(a), (e), (f), and (g), Natural Resources Code, are amended to read as follows:

(a)  The commissioner [council] by rule shall adopt goals and policies of the coastal management program. A goal or policy may not require an agency or subdivision to perform an action that would exceed the constitutional or statutory authority of the agency or subdivision to which the goal or policy applies.

(e)  In conducting consistency reviews under Section 33.205 [of this code], the commissioner [council] shall receive and consider the oral or written testimony of any person regarding the coastal management program as the testimony relates to the agency or subdivision action or federal agency action or activity or outer continental shelf plan under review.  The commissioner [council] may reasonably limit the length and format of the testimony and the time at which it will be received. Notice of the period during which the testimony will be received shall be published in the Texas Register and in a newspaper of general circulation in each county directly affected by the matter under review before the commencement of that period. The commissioner [council] shall consider only the record before the agency or subdivision involved in the matter under review, the agency's or subdivision's findings, applicable laws and rules, any additional information provided by that agency or subdivision, and public testimony under this subsection, provided that if the agency or subdivision did not hold a hearing, make a record, or make findings, the commissioner [council] may hold a hearing and make findings necessary to a complete and thorough review.

(f)  [The land office shall assist the council in carrying out its duties. The council members may not receive compensation for services but may receive reimbursement for actual and necessary expenses.] The land office, in coordination with other agencies and subdivisions, shall prepare an annual report on the effectiveness of the coastal management program. [The land office shall submit the report to the council for approval.] On or before January 15 of each odd-numbered year, the land office shall send to the legislature each of the previous two annual reports.

(g)  The commissioner [council] may award grants to projects that further the goals and policies of the coastal management program [council]. The commissioner [council] shall establish the procedures for making any determination related to awarding a grant.

SECTION 9.  Section 33.2041, Natural Resources Code, is amended to read as follows:

Sec. 33.2041.  COASTAL COORDINATION ADVISORY COMMITTEE [COMPOSITION OF COUNCIL; TERMS]. (a) The commissioner by rule shall establish the Coastal Coordination Advisory Committee to advise the commissioner on matters related to the coastal management program. The committee [council] shall consist of:

(1)  a representative of each of the following entities designated by the presiding officer of that entity [ex officio members]:

(A)  the land office [commissioner];

(B)  the [presiding officer of the] Parks and Wildlife Department [Commission or a member of the commission designated by the presiding officer];

(C)  the [presiding officer of the] Texas Commission on Environmental Quality [Natural Resource Conservation Commission or a member of the commission designated by the presiding officer];

(D)  [a member of] the Railroad Commission of Texas [appointed by that commission];

(E)  the [presiding officer of the] Texas Water Development Board [or a member of the board designated by the presiding officer];

(F)  the [presiding officer of the] Texas Department of Transportation [Commission or a member of the commission designated by the presiding officer];

(G)  [a member of] the State Soil and Water Conservation Board [appointed by that board]; and

(H)  the [director of the] Texas [A&M University] Sea Grant College Program to serve as a nonvoting member; and

(2)  the following members to be appointed by the commissioner [governor with the advice and consent of the senate to serve a two-year term]:

(A)  a city or county elected official who resides in the coastal area;

(B)  an owner of a business located in the coastal area who resides in the coastal area;

(C)  a resident from the coastal area; and

(D)  a representative of agriculture.

(b)  The commissioner by rule shall establish the terms of office for and duties of committee members [terms of the positions on the council held by the city or county elected official who resides in the coastal area and the resident from the coastal area expire May 31 of each even-numbered year. The terms of the positions on the council held by the owner of a business located in the coastal area who resides in the coastal area and the representative of agriculture expire May 31 of each odd-numbered year].

(c)  Chapter 2110, Government Code, does not apply to the size, composition, or duration of the committee [Appointments to the council shall be made without regard to the race, color, disability, sex, religion, age, or national origin of the appointees].

SECTION 10. The heading to Section 33.205, Natural Resources Code, is amended to read as follows:

Sec. 33.205. CONSISTENCY WITH COASTAL MANAGEMENT PROGRAM; COMMISSIONER [COUNCIL] REVIEW.

SECTION 11. Section 33.205, Natural Resources Code, is amended by amending Subsections (b), (c), (d), (e), (f), (g), and (h) and adding Subsections (f-1) and (f-2) to read as follows:

(b) An agency or subdivision subject to the requirements of Subsection (a) shall affirm that it has taken into account the goals and policies of the coastal management program by issuing a written determination that a proposed agency or subdivision action described by Section 33.2051 or 33.2053 is consistent with the program goals and policies.

(c) The commissioner [council] may [not] review a proposed agency or subdivision action subject to the requirements of Subsections (a) and (b) [of this section] for consistency with the goals and policies of the coastal management program if [unless]:

(1) the consistency determination for the proposed action was contested by:

(A) a [council] member of the committee or an agency that was a party in a formal hearing under Chapter 2001, Government Code, or in an alternative dispute resolution process; or

(B) another [a council member or other] person by the filing of written comments with the agency before the action was proposed if the proposed action is one for which a formal hearing under Chapter 2001, Government Code, is not available; and

(2) a person described by Subdivision (1) [of this subsection] files a request for referral alleging a significant unresolved dispute regarding the proposed action's consistency with the goals and policies of the coastal management program[; and

[(3) any three members of the council other than the director of the Texas A&M University Sea Grant Program agree that there is a significant unresolved dispute regarding the proposed action's consistency with the goals and policies of the coastal management program and the matter is placed on the agenda for a council meeting].

(d) If consistency review thresholds are in effect under Section 33.2052, the commissioner [council] may not review a proposed action subject to the requirements of Subsections (a) and (b) for consistency with the goals and policies of the coastal management program unless the requirements of Subsection (c) are satisfied and:

(1) if the proposed action is one for which a formal hearing under Chapter 2001, Government Code, is available:

(A) the action exceeds the applicable thresholds and the agency's consistency determination was contested in a formal hearing or in an alternative dispute resolution process; or

(B) the action does not exceed the applicable thresholds but may directly and adversely affect a critical area, critical dune area, coastal park, wildlife management area or preserve, or gulf beach and a state agency contested the agency's consistency determination in a formal hearing; or

(2) if the proposed action is one for which a formal hearing under Chapter 2001, Government Code, is not available to contest the agency's determination, the action exceeds the applicable thresholds.

(e) The commissioner [council] must consider and act on a matter referred under Subsection (c) or (d) before the 26th day after the date the agency or subdivision proposed the action. For purposes of this section, an action subject to the contested case provisions of Chapter 2001, Government Code, is proposed when notice of a decision or order is issued under Section 2001.142, Government Code.

(f) The commissioner [council] by rule shall establish a process by which an applicant for a permit or other proposed action described in Section 33.2053, or an agency or subdivision proposing an action, may request and receive a preliminary consistency review. The rules shall:

(1) create a permitting assistance group composed of representatives of committee [council] member agencies and other interested committee [council] members to coordinate the preliminary reviews; and

(2) require that the following written information be produced not later than the 45th day after the date of the request for preliminary review:

(A) a statement from each agency or subdivision required to permit or approve the project as to whether the agency or subdivision anticipates approving or denying the application;

(B) if an agency or subdivision intends to deny an application, the agency's or subdivision's explanation of the grounds for denial and recommendations for resolving the grounds in a way that would allow the application to be approved;

(C) if enough information is already available, a preliminary finding as to whether the project is likely to be found consistent with the goals and policies of the coastal management program; and

(D) if the project is likely to be found inconsistent with the goals and policies of the coastal management program, an explanation and recommendation for resolving the inconsistency in a way that would allow the project to be found consistent.

(f-1) Not later than January 1, 2012, the commissioner shall evaluate the functions, including any pending initiatives, membership, and usefulness of the permitting assistance group established under Subsection (f). The evaluation must include input from all members of the permitting assistance group and the committee. This subsection expires April 1, 2012.

(f-2) The commissioner may adopt rules as necessary to:

(1) restructure or abolish the permitting assistance group;

(2) expand the functions of the permitting assistance group; or

(3) add members to the permitting assistance group.

(g) The commissioner [council] by rule shall establish a process by which an individual or small business may request and receive assistance with filing applications for permits or other proposed actions described by Section 33.2053. The rules shall provide for:

(1) the coordination of preapplication assistance through the permitting assistance group; and

(2) the provision of the following, by the permitting assistance group, to an individual or a small business, on request:

(A) a list of the permits or other approvals necessary for the project;

(B) a simple, understandable statement of all permit requirements;

(C) a coordinated schedule for each agency's or subdivision's decision on the action;

(D) a list of all the information the agencies or subdivisions need to declare the applications for the permits or other approvals administratively complete;

(E) assistance in completing the applications as needed; and

(F) if enough information is already available, a preliminary finding as to whether the project is likely to be found consistent with the goals and policies of the coastal management program.

(h) If an agency, subdivision, or applicant has received a preliminary finding of consistency under Subsection (f)(2)(C) or (g)(2)(F) and a request for referral was filed on that action under Subsection (c)(2), the commissioner [council] may accept the request for referral only if the agency or subdivision has substantially changed the permit or proposed action since the preliminary finding was issued.

SECTION 12. Section 33.2051(e), Natural Resources Code, is amended to read as follows:

(e) The commissioner [council] may not review a proposed rule of the [Texas] Department of Agriculture.

SECTION 13. Section 33.2052, Natural Resources Code, is amended to read as follows:

Sec. 33.2052. CERTIFICATION OF AGENCY RULES; AGENCY ACTIONS CONSIDERED CONSISTENT. (a) The commissioner [council] by rule shall establish and may modify a process by which an agency may submit rules and rule amendments described by Section 33.2051 to the commissioner [council] for review and certification for consistency with the goals and policies of the coastal management program.

(b) The process must provide that an agency may submit to the commissioner [council] consistency review thresholds for the agency's actions described in Section 33.2053. After the commissioner [council] certifies that an agency's rules are consistent and approves the agency's thresholds, the agency's consistency determination under Section 33.205(b) for an action is final and is not subject to referral and review, except as provided by Section 33.205(d).

(c) The commissioner [council] by rule shall provide that the commissioner [council] may revoke a [its] certification under Subsection (b) if the commissioner [council] finds that an agency has:

(1) implemented certified rules in a manner that conflicts with the goals and policies of the coastal management program; or

(2) amended certified rules in a manner inconsistent with the goals and policies of the coastal management program.

SECTION 14. Sections 33.2053(j) and (k), Natural Resources Code, are amended to read as follows:

TX_00003258
JA_002989

TX_00003258

(j) An action to renew, amend, or modify an existing permit, certificate, lease, easement, approval, or other action is not an action under this section if the action is taken under a rule that the commissioner [council] has certified under Section 33.2052 and:

(1) for a wastewater discharge permit, if the action is not a major permit modification that would:

(A) increase pollutant loads to coastal waters; or

(B) result in relocation of an outfall to a critical area;

(2) for solid, hazardous, or nonhazardous waste permits, if the action is not a Class III modification under rules of the Texas [Natural Resource Conservation] Commission on Environmental Quality; or

(3) for any other action, if the action:

(A) only extends the period of the existing authorization and does not authorize new or additional work or activity; or

(B) is not directly relevant to Sections 33.205(a) and (b).

(k) The commissioner [council] shall establish a program boundary to limit the geographic area in which the requirements of Sections 33.205(a) and (b) apply. The boundary is the coastal facility designation line as defined by Appendix 1 to 31 TAC Section 19.2 as that appendix existed on the effective date of this section, as modified by Section 33.203(7). Except as provided by Subsections (f)(8)-(10), this subchapter does not apply to an agency action authorizing an activity outside the program boundary.

SECTION 15.  Section 33.206, Natural Resources Code, is amended to read as follows:

Sec. 33.206. [COUNCIL] ACTION BY COMMISSIONER OR ATTORNEY GENERAL. (a) A proposed action is consistent with the goals and policies of the coastal management program and approved by the commissioner [council] unless[, on the affirmative vote of at least two-thirds of the members of the council,] the commissioner [council] determines the action to be inconsistent with the coastal management program and protests the action.

(b) If the commissioner [council] protests the proposed action, the commissioner [council] shall report the commissioner's [its] findings on the matter to the agency or subdivision. The report shall specify how the proposed action is inconsistent with the goals and policies of the coastal management program and include specific recommendations of the commissioner [council] regarding how the proposed action may be modified or amended to make it consistent with the program. Before the 21st day after the date the agency or subdivision receives the report, the agency or subdivision shall review the findings and recommendations and determine whether to modify or amend the proposed action to make it consistent with the goals and policies of the coastal management program and shall notify the commissioner [council] of its decision.

(c) If an agency or subdivision does not modify or amend a proposed action to be consistent with the goals and policies of the coastal management program, the commissioner [council] shall request the attorney general to issue an opinion on the consistency of the proposed action with the coastal management program. The agency

or subdivision is stayed from taking the proposed action until the attorney general issues the opinion. The attorney general shall issue an opinion before the 26th day after the date the commissioner [council] requests the opinion.

(d)  The commissioner [council] shall adopt guidance and procedural rules for the review of federal actions, activities, and outer continental shelf plans that incorporate the provisions of federal regulations governing those reviews. The guidance and rules shall provide that the commissioner [chair or any three members] may request additional information from a federal agency or additional time for review as provided by the federal regulations.

(e)  The commissioner [council] shall review any federal action, activity, or outer continental shelf plan that the commissioner determines [any three members of the council agree] presents a significant unresolved issue regarding consistency with the goals and policies of the coastal management program [and place the matter on the agenda of a meeting of the council for review].

(f)  [If an activity requiring an agency or subdivision action described by Section 33.2053 that falls below thresholds in effect under Section 33.2052 also requires an equivalent federal permit or license, the council may only determine the agency or subdivision action's consistency.] If an activity requiring an agency or subdivision action described by Section 33.2053 that falls above thresholds in effect under Section 33.2052 also requires an equivalent federal permit or license, the commissioner [council] may determine the consistency of the agency or subdivision action or the federal license or permit, but not both. The determination regarding the consistency of an action made by the commissioner [council] under this subsection constitutes the state's determination regarding consistency of the equivalent agency or subdivision action or federal action.

(g)  Notwithstanding the other provisions of this subchapter, on request for referral, the commissioner may not review a consistency determination of the land office, the commissioner, or the board.  The commissioner shall refer a request for a review of the consistency of such an action to the attorney general not later than the second day after the date the commissioner receives the request. The attorney general shall determine whether the action is consistent with the goals and policies of the coastal management program in accordance with the applicable provisions of this subchapter governing determinations by the commissioner. If the attorney general determines the action to be inconsistent with the goals and policies of the coastal management program, the attorney general may protest the action in accordance with the provisions of this subchapter governing protests by the commissioner. A protest by the attorney general has the same effect as a protest by the commissioner. The attorney general may adopt rules as necessary to implement this subsection [If, after review, the council finds a proposed federal agency action or activity or outer continental shelf plan is inconsistent with the coastal management program, and the federal agency does not modify the action, activity, or outer continental shelf plan to achieve consistency with the program, the governor, with the assistance of the chair of the council, may seek mediation of the matter in accordance with federal law].

[(h)  The council may not protest a proposed action by an agency or subdivision pertaining to an application filed with that agency or subdivision before the date the coastal management program is adopted.]

SECTION 16.  Section 33.207, Natural Resources Code, is amended to read as follows:

Sec. 33.207.  COMMISSIONER [COUNCIL] RECOMMENDATIONS.  In addition to the report required by Section 33.206, the commissioner [council]:

(1)  may periodically submit recommendations to an agency or subdivision designed to encourage the agency or subdivision to carry out its functions in a manner consistent with the coastal management program, including recommendations for methods to simplify governmental procedures and changes in applicable rules or statutes; and

(2)  shall report to the legislature on:

(A)  recommended statutory changes needed to make more effective and efficient use of public funds and provide for more effective and efficient management of coastal natural resource areas, including recommendations on methods to simplify governmental procedures;

(B)  agency or subdivision actions that are not consistent with the coastal management program; and

(C)  population growth of, infrastructure needs of, and use of resources on the coast.

SECTION 17.  Sections 33.208(b) and (c), Natural Resources Code, are amended to read as follows:

(b)  If the attorney general issues an opinion under Section 33.206(c) that a proposed agency or subdivision action is inconsistent with the coastal management program and the agency or subdivision fails to implement the commissioner's [council's] recommendation regarding the action, the attorney general shall file suit in a district court of Travis County to enforce this subchapter.  The court shall consider the attorney general's opinion in determining whether the proposed action is consistent with the coastal management program.

(c)  Notwithstanding the request of an opinion from, or the filing of suit by, the attorney general, the commissioner [council] and the agency or subdivision may enter into a settlement agreement with regard to the proposed agency or subdivision action.  If the commissioner [council] and the agency or subdivision enter into a settlement agreement, the commissioner [council] may rescind the commissioner's [its] request for an opinion from the attorney general.

SECTION 18.  Section 33.209, Natural Resources Code, is amended to read as follows:

Sec. 33.209.  PROHIBITION ON SPECIAL AREA MANAGEMENT PLANS.  The land office [council] may not develop or approve a special area management plan, including a plan for an area designated under the national estuary program.

SECTION 19.  The following provisions of the Natural Resources Code are repealed:

(1)  Section 33.004(13);
(2)  Section 33.052(c);
(3)  Section 33.203(20);
(4)  Sections 33.204(b), (c), and (d);
(5)  Section 33.2042;
(6)  Section 33.2043;

    (7)  Section 33.2044;

    (8)  Section 33.2045;

    (9)  Section 33.2053(g);

    (10)  Section 33.211; and

    (11)  Section 33.212.

SECTION 20.  (a)  Effective September 1, 2011, the Coastal Coordination Council is abolished and the powers and duties of the council are transferred to the General Land Office in accordance with Chapter 33, Natural Resources Code, as amended by this Act.

(b)  As soon as possible after the effective date of this Act, the presiding officers of the appropriate entities shall appoint the members of the Coastal Coordination Advisory Committee in accordance with Section 33.2041, Natural Resources Code, as amended by this Act.

(c)  All rules of the Coastal Coordination Council are continued in effect as rules of the General Land Office until superseded by a rule of the land office. A certification issued by the council is continued in effect as provided by the law in effect immediately before the effective date of this Act. A complaint, investigation, contested case, or other proceeding pending on the effective date of this Act is continued without change in status after the effective date of this Act. An activity conducted by the council is considered to be an activity conducted by the land office.

(d)  A reference in another law or an administrative rule to the Coastal Coordination Council means the General Land Office.

(e)  On September 1, 2011, or as soon as is possible after that date, the commissioner of the General Land Office shall adopt a comprehensive plan to ensure the smooth transition of all programs operated by the Coastal Coordination Council before September 1, 2011, from the council to the land office.  During the transition, the General Land Office shall consult with the National Oceanic and Atmospheric Administration as necessary to ensure continued compliance with federal requirements and to maintain federal approval of the Texas Coastal Management Program.

(f)  All money, records, property, and equipment in the possession of the Coastal Coordination Council on September 1, 2012, shall be transferred to the possession of the General Land Office on September 1, 2012, or as soon as possible after that date.

SECTION 21.  This Act takes effect September 1, 2011.

## Floor Amendment No. 1

Amend **CSSB 656** (house committee printing) as follows:

(1)  In SECTION 11 of the bill, strike amended Section 33.205(c), Natural Resources Code (page 7, line 14, through page 8, line 10), and substitute:

(c)  The commissioner [council] may [not] review a proposed agency or subdivision action subject to the requirements of Subsections (a) and (b) [of this section] for consistency with the goals and policies of the coastal management program if [unless]:

    (1)  the consistency determination for the proposed action was contested by:

        (A)  a [council] member of the committee or an agency that was a party in a formal hearing under Chapter 2001, Government Code, or in an alternative dispute resolution process; or

(B) another [a council member or other] person by the filing of written comments with the agency before the action was proposed if the proposed action is one for which a formal hearing under Chapter 2001, Government Code, is not available;

(2) a person described by Subdivision (1) [of this subsection] files a request for referral alleging a significant unresolved dispute regarding the proposed action's consistency with the goals and policies of the coastal management program; and

(3) any three members of the committee [council] other than the representative [director] of the Texas [A&M University] Sea Grant College Program agree that there is a significant unresolved dispute regarding the proposed action's consistency with the goals and policies of the coastal management program and the matter is referred to the commissioner for review [placed on the agenda for a council meeting].

(2) In SECTION 15 of the bill, in amended Section 33.206(d), Natural Resources Code (page 15, lines 16-17), strike "[chair or any three members]" and substitute "[chair] or any three committee members".

(3) In SECTION 15 of the bill, in amended Section 33.206(e), Natural Resources Code (page 15, lines 21-22), strike "the commissioner determines [any three members of the council agree]" and substitute "any three committee members [of the council] agree".

The amendments were read.

Senator Huffman moved to concur in the House amendments to **SB 656**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### SENATE BILL 1153 WITH HOUSE AMENDMENTS

Senator Williams called **SB 1153** from the President's table for consideration of the House amendments to the bill.

The President Pro Tempore laid the bill and the House amendments before the Senate.

**Floor Amendment No. 1**

Amend **SB 1153** by adding the following appropriately numbered SECTION to the bill;

SECTION ____. Section 39.4526, Utilities Code, is amended to read as follows:

(g) The commission shall be precluded from engaging any lobbyist, as defined in Section 305.003 of Texas Government Code, under Subsection (a).

**Floor Amendment No. 1 on Third Reading**

Amend second reading Floor Amendment No. 1, **SB 1153**, as follows:

SECTION ____. Section 39.4526, Utilities Code, is amended to read as follows:

(f) [(g)] The commission shall be precluded from engaging any individual who is required to register under [lobbyist, as defined in ] Section 305.003 of the Texas Government Code [under Subsection (a)].

The amendments were read.

Senator Williams moved to concur in the House amendments to **SB 1153**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

## SENATE BILL 1160 WITH HOUSE AMENDMENTS

Senator Seliger called **SB 1160** from the President's table for consideration of the House amendments to the bill.

The President Pro Tempore laid the bill and the House amendments before the Senate.

**Floor Amendment No. 1**

Amend **SB 1160** (house committee printing) by inserting the following appropriately numbered SECTIONS and renumbering SECTIONS of the bill accordingly:

SECTION ____. The heading to Section 75.006, Civil Practice and Remedies Code, is amended to read as follows:

Sec. 75.006. LIABILITY LIMITED FOR ACTIONS OF FIREFIGHTER, FEDERAL LAW ENFORCEMENT OFFICER, OR PEACE OFFICER.

SECTION ____. Section 75.006, Civil Practice and Remedies Code, is amended by amending Subsection (a) and adding Subsections (c) and (d) to read as follows:

(a)  In this section:

(1)  "Federal law enforcement officer" means a law enforcement officer as defined by 5 U.S.C. Section 8331(20).

(2)  "Firefighter" means a member of a fire department who performs a function listed in Section 419.021(3)(C), Government Code.

(3)  [(2)] "Livestock" has the meaning assigned by Section 1.003, Agriculture Code.

(4)  [(3)] "Peace officer" has the meaning assigned by Section 1.07, Penal Code, or other state or federal law.

(c)  An owner, lessee, or occupant of agricultural land is not liable for any damage or injury to any person or property that arises from the actions of a peace officer or federal law enforcement officer when the officer enters or causes another person to enter the agricultural land with or without the permission of the owner, lessee, or occupant.  The owner, lessee, or occupant of agricultural land is not liable for the damage or injury regardless of whether the damage or injury occurs on the agricultural land.

(d)  The owner, lessee, or occupant of agricultural land is not liable for any damage or injury to any person or property that arises from the actions of an individual who, because of the actions of a peace officer or federal law enforcement officer, enters or causes another person to enter the agricultural land without the permission of the owner, lessee, or occupant.

(e)  This section does not limit the liability of an owner, lessee, or occupant of agricultural land for any damage or injury that arises from a willful or wanton act or gross negligence by the owner, lessee, or occupant.

**Floor Amendment No. 1 on Third Reading**

Amend Amendment No. 1 of **SB 1160** by amending Subsection (c) as follows:

(c)  An owner, lessee, or occupant of agricultural land is not liable for any damage or injury to any person or property that arises from the actions of a peace officer or federal law enforcement officer when the officer enters or causes another

person to enter the agricultural land with or without the permission of the owner, lessee, or occupant, . ~~The owner, lessee, or occupant of agricultural land is not liable for the damage or injury~~ regardless of whether the damage or injury occurs on the agricultural land.

The amendments were read.

Senator Seliger moved to concur in the House amendments to **SB 1160**.

The motion prevailed by the following vote:  Yeas 31, Nays 0.

### PERMISSION TO INTRODUCE BILLS

On motion of Senator Whitmire and by unanimous consent, Senate Rule 7.07(b) was suspended to permit the introduction of the following bills:  **SB 1929**, **SB 1930**.

### SENATE BILLS ON FIRST READING

The following bills were introduced, read first time, and referred to the committees indicated:

**SB 1929** by Seliger
Relating to the application of the professional prosecutors law to the district attorney for the 287th Judicial District.
To Committee on Jurisprudence.

**SB 1930** by Nelson
Relating to the disclosure of the composition of hydraulic fracturing fluids used in hydraulic fracturing treatments.
To Committee on Natural Resources.

### HOUSE BILL ON FIRST READING

The following bill received from the House was read first time and referred to the committee indicated:

**HB 2295** to Committee on Business and Commerce.

### CONFERENCE COMMITTEE ON HOUSE BILL 1956

Senator Carona called from the President's table, for consideration at this time, the request of the House for a conference committee to adjust the differences between the two Houses on **HB 1956** and moved that the request be granted.

The motion prevailed without objection.

The President Pro Tempore asked if there were any motions to instruct the conference committee on **HB 1956** before appointment.

There were no motions offered.

Accordingly, the President Pro Tempore announced the appointment of the following conferees on the part of the Senate:  Senators Carona, Chair; Eltife, Lucio, Harris, and Watson.

### HOUSE BILL 3814 REREFERRED
### (Motion In Writing)

Senator Wentworth submitted a Motion In Writing requesting that **HB 3814** be withdrawn from the Committee on Intergovernmental Relations and rereferred to the Committee on Administration.

The Motion In Writing prevailed without objection.

### NOTICE GIVEN FOR
### LOCAL AND UNCONTESTED CALENDAR

Senator Eltife announced that a Local and Uncontested Calendar had been furnished to each Member of the Senate. He then gave notice that the Local and Uncontested Calendar Session would be held at 8:00 a.m. tomorrow and that all bills and resolutions would be considered on second and third reading in the order in which they were listed.

### SENATE RULE 11.13 SUSPENDED
### (Consideration of Bills in Committees)

On motion of Senator Eltife and by unanimous consent, Senate Rule 11.13 was suspended to grant all committees permission to meet while the Senate is meeting today during the introduction of bills and resolutions on first reading and tomorrow during the Local and Uncontested Calendar Session.

### SENATE RULE 11.10(a) SUSPENDED
### (Public Notice of Committee Meetings)

On motion of Senator Lucio and by unanimous consent, Senate Rule 11.10(a) was suspended in order that the Committee on International Relations and Trade might meet today.

### MOTION TO RECESS AND ADJOURN

On motion of Senator Whitmire and by unanimous consent, the Senate at 4:46 p.m. agreed to recess, in honor of Timothy Moore and Fernando Meza, upon completion of the introduction of bills and resolutions on first reading, until 8:00 a.m. tomorrow for the Local and Uncontested Calendar Session.

The Senate further agreed to adjourn, in memory of Myra McDaniel, upon conclusion of the Local and Uncontested Calendar Session, until 11:00 a.m. tomorrow.

### HOUSE BILLS AND RESOLUTIONS ON FIRST READING

The following bills and resolutions received from the House were read first time and referred to the committees indicated:

**HB 8** to Committee on Business and Commerce.
**HB 122** to Committee on Jurisprudence.
**HB 257** to Committee on Finance.
**HB 300** to Committee on Health and Human Services.
**HB 442** to Committee on Transportation and Homeland Security.
**HB 528** to Committee on State Affairs.

**HB 577** to Committee on Health and Human Services.
**HB 595** to Committee on Criminal Justice.
**HB 654** to Committee on Finance.
**HB 673** to Committee on Transportation and Homeland Security.
**HB 742** to Committee on Education.
**HB 753** to Committee on Health and Human Services.
**HB 762** to Committee on State Affairs.
**HB 777** to Committee on Transportation and Homeland Security.
**HB 783** to Committee on Criminal Justice.
**HB 807** to Committee on Health and Human Services.
**HB 818** to Committee on Education.
**HB 826** to Committee on Education.
**HB 872** to Committee on Intergovernmental Relations.
**HB 961** to Committee on Criminal Justice.
**HB 970** to Committee on Economic Development.
**HB 971** to Committee on Business and Commerce.
**HB 1009** to Committee on Criminal Justice.
**HB 1033** to Committee on Economic Development.
**HB 1071** to Committee on Intergovernmental Relations.
**HB 1080** to Committee on Agriculture and Rural Affairs.
**HB 1090** to Committee on Intergovernmental Relations.
**HB 1111** to Committee on Jurisprudence.
**HB 1135** to Committee on State Affairs.
**HB 1178** to Committee on Economic Development.
**HB 1226** to Committee on State Affairs.
**HB 1315** to Committee on Economic Development.
**HB 1335** to Committee on Education.
**HB 1354** to Committee on State Affairs.
**HB 1389** to Committee on Criminal Justice.
**HB 1395** to Committee on Transportation and Homeland Security.
**HB 1456** to Committee on Business and Commerce.
**HB 1500** to Committee on Open Government.
**HB 1502** to Committee on State Affairs.
**HB 1517** to Committee on Transportation and Homeland Security.
**HB 1604** to Committee on International Relations and Trade.
**HB 1610** to Committee on Education.
**HB 1616** to Committee on State Affairs.
**HB 1619** to Committee on Intergovernmental Relations.
**HB 1649** to Committee on Intergovernmental Relations.
**HB 1678** to Committee on State Affairs.
**HB 1720** to Committee on Health and Human Services.
**HB 1723** to Committee on Criminal Justice.
**HB 1749** to Committee on Transportation and Homeland Security.
**HB 1772** to Committee on State Affairs.
**HB 1821** to Committee on Intergovernmental Relations.
**HB 1834** to Committee on Education.

**HB 1839** to Committee on Economic Development.
**HB 1840** to Committee on Agriculture and Rural Affairs.
**HB 1896** to Committee on Transportation and Homeland Security.
**HB 1930** to Committee on Criminal Justice.
**HB 1931** to Committee on Jurisprudence.
**HB 1942** to Committee on Education.
**HB 1983** to Committee on Health and Human Services.
**HB 1985** to Committee on Jurisprudence.
**HB 1988** to Committee on Criminal Justice.
**HB 1992** to Committee on Agriculture and Rural Affairs.
**HB 2048** to Committee on Finance.
**HB 2052** to Committee on State Affairs.
**HB 2061** to Committee on Health and Human Services.
**HB 2077** to Committee on Natural Resources.
**HB 2100** to Committee on Intergovernmental Relations.
**HB 2109** to Committee on Health and Human Services.
**HB 2127** to Committee on Agriculture and Rural Affairs.
**HB 2160** to Committee on Intergovernmental Relations.
**HB 2172** to Committee on State Affairs.
**HB 2173** to Committee on State Affairs.
**HB 2195** to Committee on Transportation and Homeland Security.
**HB 2205** to Committee on Intergovernmental Relations.
**HB 2220** to Committee on Intergovernmental Relations.
**HB 2284** to Committee on Business and Commerce.
**HB 2285** to Committee on Criminal Justice.
**HB 2366** to Committee on Education.
**HB 2367** to Committee on Jurisprudence.
**HB 2371** to Committee on Transportation and Homeland Security.
**HB 2374** to Committee on Criminal Justice.
**HB 2396** to Committee on Transportation and Homeland Security.
**HB 2477** to Committee on State Affairs.
**HB 2549** to Committee on Government Organization.
**HB 2576** to Committee on Health and Human Services.
**HB 2577** to Committee on Criminal Justice.
**HB 2584** to Committee on Intergovernmental Relations.
**HB 2604** to Committee on Business and Commerce.
**HB 2636** to Committee on Health and Human Services.
**HB 2651** to Committee on Transportation and Homeland Security.
**HB 2655** to Committee on Business and Commerce.
**HB 2663** to Committee on Natural Resources.
**HB 2671** to Committee on Transportation and Homeland Security.
**HB 2699** to Committee on Business and Commerce.
**HB 2703** to Committee on Health and Human Services.

**HB 2723** to Committee on State Affairs.
**HB 2735** to Committee on Criminal Justice.
**HB 2742** to Committee on Agriculture and Rural Affairs.
**HB 2761** to Committee on Intergovernmental Relations.
**HB 2784** to Committee on Economic Development.
**HB 2810** to Committee on Finance.
**HB 2826** to Committee on Natural Resources.
**HB 2872** to Committee on Transportation and Homeland Security.
**HB 2882** to Committee on State Affairs.
**HB 2899** to Committee on Jurisprudence.
**HB 2903** to Committee on Health and Human Services.
**HB 2940** to Committee on Health and Human Services.
**HB 2947** to Committee on Open Government.
**HB 2948** to Committee on Transportation and Homeland Security.
**HB 2949** to Committee on Jurisprudence.
**HB 2969** to Committee on Natural Resources.
**HB 2972** to Committee on Intergovernmental Relations.
**HB 2973** to Committee on State Affairs.
**HB 2993** to Committee on Criminal Justice.
**HB 3002** to Committee on Natural Resources.
**HB 3071** to Committee on Natural Resources.
**HB 3078** to Committee on State Affairs.
**HB 3085** to Committee on Health and Human Services.
**HB 3090** to Committee on Natural Resources.
**HB 3096** to Committee on Intergovernmental Relations.
**HB 3109** to Committee on Natural Resources.
**HB 3116** to Committee on Business and Commerce.
**HB 3117** to Committee on Business and Commerce.
**HB 3134** to Committee on Natural Resources.
**HB 3135** to Committee on Education.
**HB 3145** to Committee on Health and Human Services.
**HB 3161** to Committee on State Affairs.
**HB 3182** to Committee on Finance.
**HB 3197** to Committee on Health and Human Services.
**HB 3269** to Committee on Natural Resources.
**HB 3278** to Committee on Education.
**HB 3298** to Committee on Transportation and Homeland Security.
**HB 3311** to Committee on Jurisprudence.
**HB 3329** to Committee on Business and Commerce.
**HB 3337** to Committee on State Affairs.
**HB 3346** to Committee on Criminal Justice.
**HB 3391** to Committee on Natural Resources.
**HB 3395** to Committee on Government Organization.
**HB 3396** to Committee on Criminal Justice.
**HB 3457** to Committee on Intergovernmental Relations.
**HB 3468** to Committee on Education.

**HB 3506** to Committee on Education.

**HB 3573** to Committee on Business and Commerce.

**HB 3582** to Committee on State Affairs.

**HB 3689** to Committee on Higher Education.

**HB 3722** to Committee on Transportation and Homeland Security.

**HB 3724** to Committee on Health and Human Services.

**HB 3771** to Committee on Transportation and Homeland Security.

**HB 3796** to Committee on Jurisprudence.

**HB 3808** to Committee on Agriculture and Rural Affairs.

**HB 3811** to Committee on Intergovernmental Relations.

**HB 3846** to Committee on Intergovernmental Relations.

**HCR 86** to Committee on Government Organization.

**HCR 98** to Committee on Agriculture and Rural Affairs.

**HCR 133** to Committee on Government Organization.

**HJR 63** to Committee on Intergovernmental Relations.

### CO-AUTHORS OF SENATE BILL 471

On motion of Senator West, Senators Deuell, Rodriguez, and Uresti will be shown as Co-authors of **SB 471**.

### CO-AUTHOR OF SENATE BILL 1360

On motion of Senator Harris, Senator Patrick will be shown as Co-author of **SB 1360**.

### CO-AUTHOR OF SENATE BILL 1866

On motion of Senator Davis, Senator West will be shown as Co-author of **SB 1866**.

### RESOLUTIONS OF RECOGNITION

The following resolutions were adopted by the Senate:

#### Memorial Resolutions

**SR 943** by Watson, In memory of David M. Himmelblau of Austin.

**HCR 116** (Harris), In memory of the Reverend Clinton Roderick Dobson of Arlington.

#### Congratulatory Resolutions

**SCR 53** by Watson, Recognizing the Texas Heritage Songwriters' Association for fostering and preserving Texas culture.

**SR 939** by Harris, Recognizing The University of Texas at Arlington women's tennis team for winning the Southland Conference championship title.

**SR 940** by Watson, Recognizing Abundant Life Community Baptist Church of Austin on the occasion of the dedication of its new location.

**SR 941** by Watson, Recognizing Central Health, CommUnityCare, and The University of Texas at Austin School of Nursing for creating a nurse practitioner residency program.

**SR 942** by Watson, Recognizing the Austin Jokers Fast Pitch Softball Team on the occasion of its 50th anniversary.

**SR 944** by Lucio, Recognizing Silver Ribbon Community Partners for its service to the elderly and disabled citizens of Hidalgo and Starr Counties.

## RECESS

Pursuant to a previously adopted motion, the Senate at 4:55 p.m. recessed, in honor of Timothy Moore and Fernando Meza, until 8:00 a.m. tomorrow.

---

## APPENDIX

---

## COMMITTEE REPORTS

The following committee reports were received by the Secretary of the Senate in the order listed:

May 9, 2011

BUSINESS AND COMMERCE — **SB 995**

TRANSPORTATION AND HOMELAND SECURITY — **CSHB 563**, **HB 1251**, **CSHB 1112**, **CSSB 1611**, **CSSB 1572**, **CSSB 197**, **HB 993**, **HB 885**, **HB 591**, **CSSB 1402**

VETERAN AFFAIRS AND MILITARY INSTALLATIONS — **SB 1645**, **CSSB 1493**

EDUCATION — **CSSB 975**

CRIMINAL JUSTICE — **HB 27**, **HB 3000**, **HB 1779**, **HB 1770**, **HB 1567**, **HB 1566**, **HB 988**, **HB 1573**, **HB 1344**, **SB 1787**, **SB 578**

TRANSPORTATION AND HOMELAND SECURITY — **CSSB 1485**

STATE AFFAIRS — **HB 184**, **HB 1503**, **HB 1570**, **HB 1789**, **HB 2144**, **HB 2277**, **HB 2920**, **HB 3255**

ECONOMIC DEVELOPMENT — **CSSB 1175**

INTERGOVERNMENTAL RELATIONS — **CSHB 345**

FINANCE — **CSSJR 14**, **CSSB 516**

BUSINESS AND COMMERCE — **CSSB 1309**

## BILLS ENGROSSED

May 6, 2011

**SB 546**, **SB 1113**, **SB 1214**, **SB 1417**, **SB 1543**, **SB 1584**, **SB 1729**, **SB 1806**, **SB 1905**

## BILLS AND RESOLUTIONS ENROLLED

May 6, 2011

**SB 18, SB 265, SB 378, SB 528, SB 653, SB 820, SB 877, SB 918, SB 1195, SB 1272, SB 1303, SB 1490, SB 1568, SB 1716, SJR 4, SR 924, SR 928, SR 929, SR 930, SR 931, SR 932, SR 933, SR 934, SR 936, SR 937**

### SENT TO SECRETARY OF STATE

May 9, 2011

**SJR 4**

### SENT TO GOVERNOR

May 9, 2011

**SB 18, SB 265, SB 378, SB 528, SB 653, SB 820, SB 877, SB 918, SB 1195, SB 1272, SB 1303, SB 1490, SB 1568, SB 1716**

**In Memory**

**of**

**Myra McDaniel**

**House Concurrent Resolution 139**

WHEREAS, The State of Texas lost an admired public servant and civic leader with the death of former secretary of state Myra McDaniel of Austin on February 25, 2010, at the age of 77; and

WHEREAS, Born in Philadelphia on December 13, 1932, the former Myra Atwell was the daughter of Eva and Toronto Atwell; she attended the prestigious Philadelphia High School for Girls and earned her bachelor's degree in English from the University of Pennsylvania; after her marriage to Reuben McDaniel, she became the proud mother of two children, Diane and Reuben; and

WHEREAS, Mrs. McDaniel began her career as a management analyst and served in administrative positions at Baldwin Wallace College in Ohio and at Indiana University; in 1975, she completed her law degree at The University of Texas School of Law and she went on to work in the office of the Texas attorney general; she became chief of the taxation division in 1979 and then worked as counsel for the Railroad Commission before entering private practice in Midland; and

WHEREAS, In 1984, Governor Mark White appointed Mrs. McDaniel as his general counsel; she became the first African American secretary of state in Texas history two years later, and her intellect, integrity, and wisdom greatly benefited her fellow citizens; treating all those around her with thoughtfulness and respect, she won the loyalty of her staff and set a sterling example of leadership during her three-year tenure; and

WHEREAS, This esteemed woman continued to serve as a mentor and role model after returning to private practice, and in 1995, she became one of the first African American women to lead a major law firm, Bickerstaff, Heath, Smiley, Pollan, Kever, and McDaniel, as managing partner; over the course of her distinguished legal career, she served as counsel for Austin Community College and Capital Metro, and she continued to work part-time for Bickerstaff Heath well into her seventies; and

WHEREAS, Deeply committed to her community, Mrs. McDaniel won numerous awards for her contributions; she served on the boards of St. Edward's University, Seton Hospital, the Episcopal Seminary of the Southwest, and many other organizations; a valued member of St. James Episcopal Church, she served as a senior warden and edited the church newsletter; more than a mere fan of the UT women's basketball team, she generously shared her time and expertise with young athletes, offering special encouragement over the years to those interested in pursuing law degrees; and

WHEREAS, Myra McDaniel inspired innumerable people through her remarkable achievements and unyielding dedication to public service, and her positive influence will continue to resonate in the myriad lives she touched in the years to come; now, therefore, be it

RESOLVED, That the 82nd Legislature of the State of Texas hereby pay special tribute to the memory of Myra McDaniel and extend sincere condolences to the members of her family: to her husband, Reuben R. McDaniel, Jr.; to her children, Diane Rhodes and Reuben McDaniel III; to her seven grandchildren and two great-grandchildren; and to her many other relatives and friends; and, be it further

RESOLVED, That an official copy of this resolution be prepared for her family and that when the Texas House of Representatives and Senate adjourn this day, they do so in memory of Myra McDaniel.

ELLIS

# HOUSE JOURNAL

## EIGHTY-SECOND LEGISLATURE, REGULAR SESSION

### PROCEEDINGS

SEVENTY-SEVENTH DAY — MONDAY, MAY 16, 2011

The house met at 11 a.m. and was called to order by the speaker.

The roll of the house was called and a quorum was announced present (Record 1104).

Present — Mr. Speaker; Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Absent, Excused — Huberty; Muñoz.

The invocation was offered by Craig Curry, pastor, First Baptist Church, Dripping Springs, as follows:

Dear Heavenly Father, I thank you for the opportunity you have given us to live in the United States of America and the great State of Texas. Thank you also for our leaders, for we are grateful for their service. I pray a special prayer for the leaders of the Texas House of Representatives, that you will guide each one in every way and that you will bless them and their families for their willingness to serve.

Help all of us to be mindful of others. Help us to recognize when someone is down, discouraged, or weak so that we might be able to reach out and help. Help us also to have the kind of love, compassion, and forgiveness that you have.

I also lift up to you this legislative session today.  I pray for a spirit of unity throughout the dialogue of this session and as decisions are reached.  May your presence be here in this place, leading, guiding, and directing every leader that is present.  I lift up this prayer in your name.  Amen.

The speaker recognized Representative Darby who led the house in the pledges of allegiance to the United States and Texas flags.

## LEAVES OF ABSENCE GRANTED

The following members were granted leaves of absence for today because of important business in the district:

Huberty on motion of Schwertner.

Muñoz on motion of Raymond.

## CAPITOL PHYSICIAN

The speaker recognized Representative Alonzo who presented Dr. Thomas Shima of Dallas as the "Doctor for the Day."

The house welcomed Dr. Shima and thanked him for his participation in the Physician of the Day Program sponsored by the Texas Academy of Family Physicians.

## BILLS AND RESOLUTIONS SIGNED BY THE SPEAKER

Notice was given at this time that the speaker had signed bills and resolutions in the presence of the house (see the addendum to the daily journal, Signed by the Speaker, House List No. 30).

## HR 2020 - NOTICE OF INTRODUCTION

Pursuant to the provisions of Rule 13, Section 9(f) of the House Rules, the speaker announced the introduction of **HR 2020**, suspending the limitations on the conferees for **SB 14**.

## HR 1368 - PREVIOUSLY ADOPTED
### (by Lucio)

The chair laid out and had read the following previously adopted resolution:

**HR 1368**, Congratulating Herbert A. Miller, Jr., of Austin on his receipt of a 2011 Texas Exes Teaching Award.

(Kleinschmidt in the chair)

## INTRODUCTION OF GUESTS

The chair recognized Representative Lucio who introduced Herbert A. Miller, Jr., and his wife, Joy.

## HR 1466 - ADOPTED
### (by Naishtat)

Representative Naishtat moved to suspend all necessary rules to take up and consider at this time **HR 1466**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1466**, Honoring the Texas Teen Safe Driving Coalition, commemorating May as National Youth Traffic Safety Month, and recognizing May 16, 2011, as Texas Teen Safe Driving Day.

**HR 1466** was adopted.

### HCR 163 - ADOPTED
### (by Pickett)

Representative Pickett moved to suspend all necessary rules to take up and consider at this time **HCR 163**.

The motion prevailed.

The following resolution was laid before the house:

**HCR 163**, Convening a joint memorial session to honor Texans killed while serving in the Global War on Terrorism, commemorating Memorial Day 2011, and paying tribute to all those who have died in the service of the United States.

**HCR 163** was adopted.

On motion of Representative Pickett, the names of all the members of the house were added to **HCR 163** as signers thereof.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 11:40 a.m. today, in 3W.15, to set a calendar.

Permission to meet was granted.

### COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Calendars, 11:40 a.m. today, 3W.15, for a formal meeting, to set a calendar.

### HR 1729 - PREVIOUSLY ADOPTED
### (by Ritter)

The chair laid out and had read the following previously adopted resolution:

**HR 1729**, Commemorating the 125th anniversary of the Lumbermen's Association.

### HR 1986 - ADOPTED
### (by Mallory Caraway)

Representative Mallory Caraway moved to suspend all necessary rules to take up and consider at this time **HR 1986**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1986**, Congratulating Amber Pickens of Dallas on her acceptance to The Juilliard School.

**HR 1986** was adopted.

(Speaker in the chair)

### HR 1488 - PREVIOUSLY ADOPTED
### (by Nash)

The chair laid out and had read the following previously adopted resolution:

**HR 1488**, In memory of Lawrence Alvin Allen, Sr., of Houston.

On motion of Representative Thompson, the names of all the members of the house were added to **HR 1488** as signers thereof.

### INTRODUCTION OF GUESTS

The speaker recognized Representative Nash who introduced family members of Lawrence Alvin Allen, Sr., husband of Representative Allen.

(Frullo in the chair)

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Eissler requested permission for the Committee on Public Education to meet while the house is in session, at 2 p.m. today, in 3W.15, to consider pending business.

Permission to meet was granted.

### COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Public Education, 2 p.m. today, 3W.15, for a formal meeting, to consider pending business.

Public Health, during lunch recess today, 1W.14, for a formal meeting, to consider pending business.

Judiciary and Civil Jurisprudence, upon adjournment today, Desk 35, for a formal meeting, to consider pending business.

Economic and Small Business Development, 6 p.m. tomorrow, 200 Lee Barton Drive, Austin, for a work session.

### HR 1979 - ADOPTED
### (by Pickett)

Representative Pickett moved to suspend all necessary rules to take up and consider at this time **HR 1979**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1979**, Honoring James Perry of El Paso for his contributions to his community.

**HR 1979** was adopted.

On motion of Representative Pickett, the names of all the members of the house were added to **HR 1979** as signers thereof.

### SCR 45 - PREVIOUSLY ADOPTED
### (Sheffield - House Sponsor)

The chair laid out and had read the following previously adopted resolution:

**SCR 45**, Recognizing Otto P. Scharth on the occasion of his 88th birthday.

On motion of Representative Pickett, the names of all the members of the house were added to **SCR 45** as signers thereof.

### INTRODUCTION OF GUESTS

The chair recognized Representative Sheffield who introduced Otto P. Scharth and members of his family.

### RECESS

At 12:03 p.m., the chair announced that the house would stand recessed until 1:15 p.m. today.

### AFTERNOON SESSION

The house met at 1:15 p.m. and was called to order by the speaker.

### LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence for the remainder of today to attend a funeral:

C. Anderson on motion of Kleinschmidt.

### HR 1605 - ADOPTED
### (by Huberty)

Representative S. Davis moved to suspend all necessary rules to take up and consider at this time **HR 1605**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1605**, Welcoming members of the Northeast Christian Academy community to the State Capitol on May 16, 2011.

**HR 1605** was adopted.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Cook requested permission for the Committee on State Affairs to meet while the house is in session, during bill referral today, in 1W.14, to consider **SB 669**, **SB 760**, **SB 1219**, **SB 1270**, **SB 1605**, **SB 1743**, **SB 1907**, **SJR 26**, and pending business.

Permission to meet was granted.

## FIVE-DAY POSTING RULE SUSPENDED

Representative Cook moved to suspend the five-day posting rule to allow the Committee on State Affairs to consider **SB 669**, **SB 760**, **SB 1219**, **SB 1270**, **SB 1605**, **SB 1743**, **SB 1907**, **SJR 26**, and pending business during bill referral today in 1W.14.

The motion prevailed.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

State Affairs, during bill referral today, 1W.14, for a formal meeting, to consider **SB 669**, **SB 760**, **SB 1219**, **SB 1270**, **SB 1605**, **SB 1743**, **SB 1907**, **SJR 26**, and pending business.

## POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

### SB 420 ON SECOND READING
### (V. Taylor - House Sponsor)

**SB 420**, A bill to be entitled An Act relating to determining eligibility for indigent health care.

**SB 420** was read second time on May 12 and was postponed until 7 a.m. May 13.

### SB 420 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE V. GONZALES:  Mr. Taylor, when the bill was heard in committee, I remember there were a couple of versions of it.  One of the versions that had caused concern that I questioned you about was whether or not if you have a county person, they provide indigent care, and somebody happens to show up there that has a sponsor, but they haven't revealed that they have a sponsor, and the person doesn't ask, and it falls through the cracks—they don't ask the person about sponsorship.  Is the county going to be denied indigent care funds because one of their employees made a mistake?  Is this the version of the bill that would have allowed for funds to be cut and not provided to the county?

REPRESENTATIVE V. TAYLOR:  No, it is not, Madam Chairwoman.

V. GONZALES:  So, this is the one—this is after the substitute, where we're not—I think your substitute was the one that was the most offensive, I guess, to us, and then you went back to your original one, correct?

V. TAYLOR:  Correct.  This is the version as filed, and was passed out of the senate on their local calendar with bipartisan support, that has nothing to do with funding for indigent care programs.  It merely empowers indigent care programs for counties that have them to decide for themselves if they want to deem the income and assets for U.S. citizen sponsors for resident legal aliens for eligibility purposes.

V. GONZALES: Okay, and the other concern that had been raised was whether or not they are already authorized to do this, because federal law and the form that they sign says if you're a sponsor, you're agreeing to provide for the person you're sponsoring, for the immigrant you're sponsoring. And so, if federal law already has that in the contract between them—whether or not it's applicable to the counties—

V. TAYLOR: Right. There is a question, as you point out, and this law puts that question to rest. It says absolutely the counties have the right to do this. And I think you and I've—and I appreciate you. We've had long conversations, both in public and in private about this, and it is my belief, should the State of Texas choose, it can tell counties they cannot deem the income and assets for U.S. citizen sponsors for resident legal aliens. But this, I think, is more consistent with what the federal government intended in 1882, and with subsequent updating to their laws, that U.S. citizen sponsors are indeed responsible for the health care of the people they bring to this country. And I would submit that is not only a legal obligation, as clearly documented in the affidavit support, but also a moral obligation. If you're going to bring someone into this country, sponsor them, and be responsible for them, I think it is incumbent on that U.S. citizen to truly be responsible for them and let them try to go fend for themselves.

V. GONZALES: Well, and I'm not trying to say if you agreed in a document that you'd do so, that you shouldn't do so. My concern is that we, as Representative Walle was mentioning earlier, we don't want people that are truly indigent to not be able to get care that they need. I know there are some exceptions; I think, even under the contract, that you can't deny certain things to people, certain types of care. But we don't want people who are truly ill to not be able to receive the care that they need, because there's going to be a requirement that asks for documents as to whether or not they've been sponsored. Another point that I wanted to ask—another question that I wanted to ask is, only the person that signs the sponsor form, their assets would be looked at, right? Not the spouse?

V. TAYLOR: That's correct. And some resident legal aliens have multiple sponsors, and so then every sponsor could be deemed by the county. And again, if the county wants to—we're not telling the counties what to do, we are allowing them to do something that they can almost certainly do by federal law.

V. GONZALES: Okay, and again for intent purposes, there is no punishment aspect here, that a county is going to lose funding, is that correct?

V. TAYLOR: No, there is no reference to any funding in this bill.

### REMARKS ORDERED PRINTED

Representative V. Gonzales moved to print remarks between Representative V. Taylor and Representative V. Gonzales.

The motion prevailed.

## LEAVES OF ABSENCE GRANTED

The following member was granted leave of absence for the remainder of today because of important business in the district:

Smithee on motion of Keffer.

The following member was granted leave of absence temporarily for today to attend a meeting of the Conference Committee on **HB 1**:

Zerwas on motion of Hamilton.

### SB 420 - (consideration continued)

**SB 420** was passed to third reading by (Record 1105): 100 Yeas, 37 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eiland; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Menendez; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Torres; Truitt; Villarreal; Weber; White; Woolley; Workman; Zedler.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Miles; Naishtat; Quintanilla; Reynolds; Rodriguez; Thompson; Turner; Veasey; Walle.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent, Excused, Committee Meeting — Zerwas.

Absent — Castro; Christian; Guillen; King, T.; Pickett; Raymond; Vo.

### STATEMENTS OF VOTE

I was shown voting no on Record No. 1105. I intended to vote yes.

Anchia

I was shown voting yes on Record No. 1105. I intended to vote no.

Menendez

When Record No. 1105 was taken, I was in the house but away from my desk. I would have voted yes.

Raymond

## CSSB 652 ON SECOND READING
### (Bonnen - House Sponsor)

**CSSB 652**, A bill to be entitled An Act relating to governmental entities subject to the sunset review process.

**CSSB 652** was read second time on May 12 and was postponed until 7:30 a.m. May 13.

Representative Ritter moved to postpone consideration of **CSSB 652** until 9 a.m. tomorrow.

The motion prevailed.

## SB 1338 ON SECOND READING
### (Geren - House Sponsor)

**SB 1338**, A bill to be entitled An Act relating to the membership, powers, and duties of the State Preservation Board.

**SB 1338** was read second time on May 10 and was postponed until 8 a.m. May 13.

**Amendment No. 1**

Representative Geren offered the following amendment to **SB 1338**:

Amend **SB 1338** by striking page 2, line 26, through page 3, line 15.

Amendment No. 1 was adopted.

**SB 1338**, as amended, was passed to third reading.

## SB 5 ON SECOND READING
### (Branch - House Sponsor)

**SB 5**, A bill to be entitled An Act relating to the administration and business affairs of public institutions of higher education.

**SB 5** was read second time on May 12 and was postponed until 10 a.m. May 13.

Representative Branch moved to postpone consideration of **SB 5** until 9 a.m. tomorrow.

The motion prevailed.

## COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 1:50 p.m. today, in 3W.9, to set a calendar.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Calendars, 1:50 p.m. today, 3W.9, for a formal meeting, to set a calendar.

## BILLS AND RESOLUTIONS SIGNED BY THE SPEAKER

Notice was given at this time that the speaker had signed bills and resolutions in the presence of the house (see the addendum to the daily journal, Signed by the Speaker, Senate List No. 27).

## GENERAL STATE CALENDAR
## SENATE BILLS
## SECOND READING

The following bills were laid before the house and read second time:

### SB 118 ON SECOND READING
### (Menendez and Naishtat - House Sponsors)

**SB 118**, A bill to be entitled An Act relating to a court's authority to order a proposed patient to receive extended outpatient mental health services.

**SB 118** was passed to third reading.

### SB 156 ON SECOND READING
### (V. Gonzales - House Sponsor)

**SB 156**, A bill to be entitled An Act relating to health care data collected by the Department of State Health Services and access to certain confidential patient information within the department.

**Amendment No. 1**

Representative D. Howard offered the following amendment to **SB 156**:

Amend **SB 156** (house committee report) as follows:

(1) In the recital to SECTION 4 of the bill, amending Section 108.013, Health and Safety Code (page 2, line 11), between "Subsections" and "(k)", insert "(a-1),".

(2) In SECTION 4 of the bill, immediately following amended Section 108.013(a), Health and Safety Code (page 2, between lines 18 and 19), insert the following:

(a-1) The department to the extent practicable as determined by the department may coordinate the reporting of data under this chapter and the reporting of data under Subchapter A, Chapter 161, to increase the efficiency of the department and reduce the department's costs in collecting and maintaining data. Any disclosure or release of data regarding the immunization registry established under Subchapter A, Chapter 161, must conform to the requirements of that subchapter.

(3) In SECTION 4 of the bill, in added Section 108.013(k), Health and Safety Code (page 4, line 13), following the period, add "The department may disclose to any program within the department nonidentifying summary statistics related to the immunization registry established under Subchapter A, Chapter 161, that do not individually identify an individual."

(4) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Sections 161.007(a), (a-2), (b), (b-1), (c), and (d), Health and Safety Code, are amended to read as follows:

(a) The department, for the primary purpose of establishing and maintaining a single repository of accurate, complete, and current immunization records to be used in aiding, coordinating, and promoting efficient and cost-effective communicable disease prevention and control efforts, shall establish and maintain an immunization registry. The executive commissioner of the Health and Human Services Commission by rule shall develop guidelines to:

(1) protect the confidentiality of patients in accordance with Section 159.002, Occupations Code;

(2) inform the individual or the individual's legally authorized representative about the registry and that registry information may be released under Section 161.00735; and

(3) [require the written or electronic consent of the individual or the individual's legally authorized representative before any information relating to the individual is included in the registry;

[(4)] permit the individual or the individual's legally authorized representative to request that the individual's information be removed from [withdraw consent for the individual to be included in] the registry[; and

[(5) determine the process by which consent is verified, including affirmation by a health care provider, birth registrar, regional health information exchange, or local immunization registry that consent has been obtained].

(a-2) An individual's legally authorized representative or the individual, after the individual has attained 18 years of age, may submit a request [consent] in writing or electronically for the individual's information to be removed from [remain in] the registry [after the individual's 18th birthday and for the individual's subsequent immunizations to be included in the registry. The written or electronic consent of the minor's legally authorized representative as described by Section 161.0001(1-c)(A) must be submitted to the department before the individual's 18th birthday. The written or electronic consent of the individual or the individual's legally authorized representative as described by Section 161.0001(1-c)(B) or (C) must be submitted to the department not later than the individual's 19th birthday. The consent of the representative or individual is valid until the individual or the individual's legally authorized representative withdraws consent in writing or electronically. The department may not include in the registry the immunization information of an individual who is 18 years of age or older until written or electronic consent has been obtained as provided by

TX_00003105

this subsection].   The department shall coordinate with the Texas Education Agency to distribute materials described in Section 161.0095(a)(2) to students and parents through local school districts.

(b) Except as provided by Section 161.0071, the immunization registry must contain information on the immunization history that is obtained by the department under:

(1) this section of each individual for whom immunization information [consent] has been obtained, unless the individual or the individual's legally authorized representative has requested that the individual's information be removed from the registry in accordance with guidelines adopted under Subsection (a) [or (a-3), as applicable];

(2) Section 161.00705 of persons immunized to prepare for or in response to a declared disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency;

(3) Section 161.00706 of first responders or their immediate family members; and

(4) Section 161.00735 of persons evacuated or relocated to this state because of a disaster.

(b-1) The department shall remove from the registry information for any individual for whom [consent has been withdrawn.   The department may not retain individually identifiable information about any individual:

[(1) for whom consent has been withdrawn;

[(2) for whom a consent for continued inclusion in the registry following the end of the declared disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency has not been received under Section 161.00705(f);

[(3) for whom a request to be removed from the registry has been received under Section 161.00706(e);

[(4) for whom consent for continued inclusion in the registry following the end of a disaster has not been received under Section 161.00735(f); or

[(5) for whom] a request to remove information from the registry has been received under this subchapter [Section 161.00735(g)].

(c) A payor that receives data elements from a health care provider who administers an immunization to an individual younger than 18 years of age shall provide the data elements to the department.  A payor is required to provide the department with only the data elements the payor receives from a health care provider.  A payor that receives data elements from a health care provider who administers an immunization to an individual 18 years of age or older may provide the data elements to the department.   The data elements shall be submitted in a format prescribed by the department. [The department shall verify consent before including the reported information in the immunization registry. The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

(d) A health care provider who administers an immunization to an individual younger than 18 years of age shall provide data elements regarding an immunization to the department.  A health care provider who administers an

immunization to an individual 18 years of age or older may submit data elements regarding an immunization to the department. The data elements shall be submitted in a format prescribed by the department. [The department shall verify consent before including the information in the immunization registry. The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

SECTION ____. Sections 161.00705(e) and (f), Health and Safety Code, are amended to read as follows:

(e) The executive commissioner of the Health and Human Services Commission by rule shall determine the period during which the information collected under this section must remain in the immunization registry following the end of the disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency. Requests for removal of information from the registry under Subsection (f) may be made only at the expiration of the retention period established by department rule under this subsection.

(f) Unless an individual or the individual's legally authorized representative [consents] in writing or electronically requests that [to continued inclusion of] the individual's information be removed from [in] the registry, the department shall maintain [remove] the immunization records collected under this section in [from] the registry on expiration of the period prescribed under Subsection (e).

SECTION ____. Sections 161.0071(a) and (b), Health and Safety Code, are amended to read as follows:

(a) The first time the department receives registry data for an individual [for whom the department has received consent] to be included in the registry, the department shall send notice to the individual or the individual's legally authorized representative disclosing:

(1) that providers and payors may be sending the individual's immunization information to the department;

(2) the information that is included in the registry;

(3) the persons to whom the information may be released under Sections 161.00735(b) and 161.008(d);

(4) the purpose and use of the registry;

(5) the procedure to exclude an individual from the registry; and

(6) the procedure to report a violation if an individual's information is included in the registry after exclusion has been requested [or consent has been withdrawn].

(b) The [On discovering that consent to be included in the registry has not been granted or has been withdrawn, the] department shall exclude [the individual's immunization records] from the registry, and any other registry-related department record that individually identifies the individual, the immunization record of any individual from whom a request for exclusion has been received by the department.

SECTION ____. Sections 161.00735(c) and (e), Health and Safety Code, are amended to read as follows:

(c)  The department may receive immunization information from a health authority of another state or from a local health authority in another state if the department determines that residents of that state have evacuated or relocated to this state in response to a disaster.  The department shall include information received under this subsection in the registry.  [Notwithstanding Section 161.007, the department is not required to obtain written consent for the inclusion in the registry of information received under this subsection.]

(e)  The executive commissioner of the Health and Human Services Commission, by rule, shall determine the period during which the information collected under Subsection (c) must remain in the immunization registry following the end of the disaster.  The period must be the same as the period established under Section 161.00705(e).  Requests for removal of information from the registry under Subsection (g) may be made only at the expiration of the retention period established by department rule under this subsection.

SECTION ____.  Section 161.008(c), Health and Safety Code, is amended to read as follows:

(c)  The department may obtain the data constituting an immunization record for an individual from a public health district, a local health department, the individual or the individual's legally authorized representative, a physician to the individual, a payor, or any health care provider licensed or otherwise authorized to administer vaccines.  [The department shall verify consent before including the reported information in the immunization registry.  The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

SECTION ____.  Section 161.0095(a), Health and Safety Code, is amended to read as follows:

(a)  The department shall develop:

(1)  continuing education programs for health care providers relating to immunizations and the vaccines for children program operated by the department under authority of 42 U.S.C. Section 1396s; and

(2)  educational information, for health care providers, health care clinics, hospitals, and any other health care facility that provides health care to children 14 to 18 years of age, relating to the immunization registry and the option for an individual or the individual's legally authorized representative to request removal [who is 18 years of age or older to consent to submission and retention] of the individual's information from [in] the immunization registry.

SECTION ____.  Section 161.0107(c), Health and Safety Code, is amended to read as follows:

(c)  The executive commissioner of the Health and Human Services Commission by rule shall specify:

(1)  the fields necessary to populate the immunization registry[, including a field that indicates the patient's consent to be listed in the immunization registry has been obtained]; and

(2)  the data standards that must be used for electronic submission of immunization information.

SECTION ____. The following provisions of the Health and Safety Code are repealed:

(1)  Sections 161.007(a-1), (a-3), and (e); and

(2)  Section 161.00735(f).

SECTION ____. The changes in law made by this Act to Chapter 161, Health and Safety Code, apply only to immunization information received by the Department of State Health Services on or after the effective date of this Act. The information received by the department before the effective date of this Act is covered by the law in effect immediately before that date, and that law is continued in effect for that purpose.

(Zerwas now present)

## Amendment No. 1 - Point of Order

Representative Simpson raised a point of order against further consideration of Amendment No. 1 under Rule 11, Section 2 and Rule 8, Section 4 of the House Rules on the grounds that the amendment is not germane to the bill and the amendment would change general law.

The point of order was withdrawn.

Amendment No. 1 was withdrawn.

## Amendment No. 2

Representative S. King offered the following amendment to **SB 156**:

Amend **SB 156** (house committee printing) as follows:

(1)  Strike page 1, lines 23 and 24 and substitute the following:

SECTION 3. Section 108.009, Health and Safety Code, is amended by amending Subsections (a), (c), and (h) and adding Subsections (a-1) and (d-1) to read as follows:

(a)  The council may collect, and, except as provided by Subsections (c), [and] (d), and (d-1), providers shall submit to the council or another entity as determined by the council, all data required by this section. The data shall be collected according to uniform submission formats, coding systems, and other technical specifications necessary to make the incoming data substantially valid, consistent, compatible, and manageable using electronic data processing, if available.

(a-1)  An ambulatory surgical center licensed under Chapter 243 is not required to submit data under this section.

(c)  A rural provider or a hospital may, but is not required to, provide the data required by this chapter[. A hospital may, but is not required to, provide the data required by this chapter if the hospital:

[(1)  is exempt from state franchise, sales, ad valorem, or other state or local taxes; and

[(2)  does not seek or receive reimbursement for providing health care services to patients from any source, including:

[(A)  the patient or any person legally obligated to support the patient;

[(B)  a third party payor; or

[(C)  Medicaid, Medicare, or any other federal, state, or local program for indigent health care].

(d-1)  A provider may elect not to participate in the data collection program under Subsection (a). The executive commissioner of the Health and Human Services Commission by rule shall establish procedures for making the election authorized by this subsection.

(2)  Adding the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 108, Health and Safety Code, is amended by adding Section 108.0131 to read as follows:

Sec. 108.0131. NOTICE REQUIRED. (a) A provider who submits data under Section 108.009 shall provide notice to the provider's patients that:

(1)  the provider submits data as required by this chapter; and

(2)  the data may be sold or distributed to third parties.

(b)  The department shall post on the department's Internet website a list of each entity that purchases or receives data collected under this chapter.

SECTION ____. Not later than December 31, 2011, the executive commissioner of the Health and Human Services Commission shall adopt rules as required by Section 108.009(d-1), Health and Safety Code, as added by this Act, establishing procedures to allow health care providers to make the election authorized by that subsection.

Amendment No. 2 was adopted by (Record 1106): 139 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Castro; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Burnam; Christian; Coleman; Hartnett; McClendon; Naishtat.

TX_00003110

## STATEMENT OF VOTE

When Record No. 1106 was taken, I was in the house but away from my desk. I would have voted yes.

McClendon

## FIVE-DAY POSTING RULE SUSPENDED

Representative Sheffield moved to suspend the five-day posting rule to allow the Committee on Defense and Veterans' Affairs to consider **SB 1493** and **SB 1737** at 9 a.m. tomorrow in E2.016.

The motion prevailed.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Defense and Veterans' Affairs, 9 a.m. tomorrow, E2.016, for a public hearing, to consider **SB 1493** and **SB 1737**.

## SB 156 - (consideration continued)

**Amendment No. 3**

Representative D. Howard offered the following amendment to **SB 156**:

Amend **SB 156** (house committee report) as follows:

(1) In the recital to SECTION 4 of the bill, amending Section 108.013, Health and Safety Code (page 2, line 11), between "Subsections" and "(k)", insert "(a-1),".

(2) In SECTION 4 of the bill, immediately following amended Section 108.013(a), Health and Safety Code (page 2, between lines 18 and 19), insert the following:

(a-1) The department to the extent practicable as determined by the department may coordinate the reporting of data under this chapter and the reporting of data under Subchapter A, Chapter 161, to increase the efficiency of the department and reduce the department's costs in collecting and maintaining data. Any disclosure or release of data regarding the immunization registry established under Subchapter A, Chapter 161, must conform to the requirements of that subchapter.

(3) In SECTION 4 of the bill, in added Section 108.013(k), Health and Safety Code (page 4, line 13), following the period, add "The department may disclose to any program within the department nonidentifying summary statistics related to the immunization registry established under Subchapter A, Chapter 161, that do not individually identify an individual."

(4) Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS of the bill accordingly:

SECTION ____. Sections 161.007(a), (a-2), (b), (b-1), (c), and (d), Health and Safety Code, are amended to read as follows:

(a) The department, for the primary purpose of establishing and maintaining a single repository of accurate, complete, and current immunization records to be used in aiding, coordinating, and promoting efficient and cost-effective

communicable disease prevention and control efforts, shall establish and maintain an immunization registry.  The executive commissioner of the Health and Human Services Commission by rule shall develop guidelines to:

(1)  protect the confidentiality of patients in accordance with Section 159.002, Occupations Code;

(2)  inform the individual or the individual's legally authorized representative about the registry and that registry information may be released under Section 161.00735; and

(3)  [require the written or electronic consent of the individual or the individual's legally authorized representative before any information relating to the individual is included in the registry;

[(4)] permit the individual or the individual's legally authorized representative to request that the individual's information be removed from [withdraw consent for the individual to be included in] the registry[; and

[(5)  determine the process by which consent is verified, including affirmation by a health care provider, birth registrar, regional health information exchange, or local immunization registry that consent has been obtained].

(a-2)  An individual's legally authorized representative or the individual, after the individual has attained 18 years of age, may submit a request [consent] in writing or electronically for the individual's information to be removed from [remain in] the registry [after the individual's 18th birthday and for the individual's subsequent immunizations to be included in the registry.  The written or electronic consent of the minor's legally authorized representative as described by Section 161.0001(1-e)(A) must be submitted to the department before the individual's 18th birthday.  The written or electronic consent of the individual or the individual's legally authorized representative as described by Section 161.0001(1-e)(B) or (C) must be submitted to the department not later than the individual's 19th birthday.  The consent of the representative or individual is valid until the individual or the individual's legally authorized representative withdraws consent in writing or electronically.  The department may not include in the registry the immunization information of an individual who is 18 years of age or older until written or electronic consent has been obtained as provided by this subsection].  The department shall coordinate with the Texas Education Agency to distribute materials described in Section 161.0095(a)(2) to students and parents through local school districts.

(b)  Except as provided by Section 161.0071, the immunization registry must contain information on the immunization history that is obtained by the department under:

(1)  this section of each individual for whom immunization information [consent] has been obtained, unless the individual or the individual's legally authorized representative has requested that the individual's information be removed from the registry in accordance with guidelines adopted under Subsection (a) [or (a-3), as applicable];

(2)  Section 161.00705 of persons immunized to prepare for or in response to a declared disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency;

(3) Section 161.00706 of first responders or their immediate family members; and

(4) Section 161.00735 of persons evacuated or relocated to this state because of a disaster.

(b-1) The department shall remove from the registry information for any individual for whom [consent has been withdrawn.  The department may not retain individually identifiable information about any individual:

[(1) for whom consent has been withdrawn;

[(2) for whom a consent for continued inclusion in the registry following the end of the declared disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency has not been received under Section 161.00705(f);

[(3) for whom a request to be removed from the registry has been received under Section 161.00706(e);

[(4) for whom consent for continued inclusion in the registry following the end of a disaster has not been received under Section 161.00735(f); or

[(5) for whom] a request to remove information from the registry has been received under this subchapter [Section 161.00735(g)].

(c) A payor that receives data elements from a health care provider who administers an immunization to an individual younger than 18 years of age shall provide the data elements to the department.  A payor is required to provide the department with only the data elements the payor receives from a health care provider.  A payor that receives data elements from a health care provider who administers an immunization to an individual 18 years of age or older may provide the data elements to the department.  The data elements shall be submitted in a format prescribed by the department. [The department shall verify consent before including the reported information in the immunization registry. The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

(d) A health care provider who administers an immunization to an individual younger than 18 years of age shall provide data elements regarding an immunization to the department.  A health care provider who administers an immunization to an individual 18 years of age or older may submit data elements regarding an immunization to the department.  The data elements shall be submitted in a format prescribed by the department. [The department shall verify consent before including the information in the immunization registry.  The department may not retain individually identifiable information about an individual for whom consent cannot be verified.]

SECTION ____. Sections 161.00705(e) and (f), Health and Safety Code, are amended to read as follows:

(e) The executive commissioner of the Health and Human Services Commission by rule shall determine the period during which the information collected under this section must remain in the immunization registry following the end of the disaster, public health emergency, terrorist attack, hostile military or paramilitary action, or extraordinary law enforcement emergency.  Requests

for removal of information from the registry under Subsection (f) may be made only at the expiration of the retention period established by department rule under this subsection.

(f)  Unless an individual or the individual's legally authorized representative [consents] in writing or electronically requests that [to continued inclusion of] the individual's information be removed from [in] the registry, the department shall maintain [remove] the immunization records collected under this section in [from] the registry on expiration of the period prescribed under Subsection (e).

SECTION ____.  Sections 161.0071(a) and (b), Health and Safety Code, are amended to read as follows:

(a)  The first time the department receives registry data for an individual [for whom the department has received consent] to be included in the registry, the department shall send notice to the individual or the individual's legally authorized representative disclosing:

(1)  that providers and payors may be sending the individual's immunization information to the department;

(2)  the information that is included in the registry;

(3)  the persons to whom the information may be released under Sections 161.00735(b) and 161.008(d);

(4)  the purpose and use of the registry;

(5)  the procedure to exclude an individual from the registry; and

(6)  the procedure to report a violation if an individual's information is included in the registry after exclusion has been requested [or consent has been withdrawn].

(b)  The [On discovering that consent to be included in the registry has not been granted or has been withdrawn, the] department shall exclude [the individual's immunization records] from the registry, and any other registry-related department record that individually identifies the individual, the immunization record of any individual from whom a request for exclusion has been received by the department.

SECTION ____.  Sections 161.00735(c) and (e), Health and Safety Code, are amended to read as follows:

(c)  The department may receive immunization information from a health authority of another state or from a local health authority in another state if the department determines that residents of that state have evacuated or relocated to this state in response to a disaster.  The department shall include information received under this subsection in the registry.  [Notwithstanding Section 161.007, the department is not required to obtain written consent for the inclusion in the registry of information received under this subsection.]

(e)  The executive commissioner of the Health and Human Services Commission, by rule, shall determine the period during which the information collected under Subsection (c) must remain in the immunization registry following the end of the disaster.  The period must be the same as the period established under Section 161.00705(e). Requests for removal of information from the registry under Subsection (g) may be made only at the expiration of the retention period established by department rule under this subsection.

SECTION ____.  Section 161.008(c), Health and Safety Code, is amended to read as follows:

(c)  The department may obtain the data constituting an immunization record for an individual from a public health district, a local health department, the individual or the individual's legally authorized representative, a physician to the individual, a payor, or any health care provider licensed or otherwise authorized to administer vaccines.  [~~The department shall verify consent before including the reported information in the immunization registry.  The department may not retain individually identifiable information about an individual for whom consent cannot be verified.~~]

SECTION ____.  Section 161.0095(a), Health and Safety Code, is amended to read as follows:

(a)  The department shall develop:

(1)  continuing education programs for health care providers relating to immunizations and the vaccines for children program operated by the department under authority of 42 U.S.C. Section 1396s; and

(2)  educational information, for health care providers, health care clinics, hospitals, and any other health care facility that provides health care to children 14 to 18 years of age, relating to the immunization registry and the option for an individual or the individual's legally authorized representative to request removal [~~who is 18 years of age or older to consent to submission and retention~~] of the individual's information from [~~in~~] the immunization registry.

SECTION ____.  Section 161.0107(c), Health and Safety Code, is amended to read as follows:

(c)  The executive commissioner of the Health and Human Services Commission by rule shall specify:

(1)  the fields necessary to populate the immunization registry[~~, including a field that indicates the patient's consent to be listed in the immunization registry has been obtained~~]; and

(2)  the data standards that must be used for electronic submission of immunization information.

SECTION ____.  The following provisions of the Health and Safety Code are repealed:

(1)  Sections 161.007(a-1), (a-3), and (e); and

(2)  Section 161.00735(f).

SECTION ____.  The changes in law made by this Act to Chapter 161, Health and Safety Code, apply only to immunization information received by the Department of State Health Services on or after the effective date of this Act. The information received by the department before the effective date of this Act is covered by the law in effect immediately before that date, and that law is continued in effect for that purpose.

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 1).

## SB 156 - (consideration continued)

Amendment No. 3 failed of adoption by (Record 1107): 56 Yeas, 86 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Aycock; Burnam; Castro; Coleman; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Hopson; Howard, D.; Johnson; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Naishtat; Nash; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Scott; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle; Zerwas.

Nays — Aliseda; Anderson, R.; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Cook; Craddick; Creighton; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Howard, C.; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Murphy; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Sheets; Sheffield; Simpson; Smith, T.; Smith, W.; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Morrison; Shelton.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 1107. I intended to vote no.

Crownover

When Record No. 1107 was taken, I was in the house but away from my desk. I would have voted no.

Morrison

(Guillen in the chair)

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Deshotel requested permission for the Committee on Culture, Recreation, and Tourism to meet while the house is in session, at 3 p.m. today, in 1W.14, to consider **SB 252** and **SB 1841**.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Culture, Recreation, and Tourism, 3 p.m. today, 1W.14, for a formal meeting, to consider **SB 252** and **SB 1841**.

### SB 156 - (consideration continued)

**SB 156**, as amended, was passed to third reading.

### SB 1811 - COMMITTEE ON CALENDARS RULE ADOPTED

Representative Hunter moved to suspend all necessary rules and, pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, moved to adopt the following rule governing floor consideration for **SB 1811**:

Each original amendment to **SB 1811** that will be offered during second reading consideration must be filed with the chief clerk not later than 2 p.m. on Tuesday, May 17.

(Speaker in the chair)

The motion to suspend all necessary rules prevailed and the Committee on Calendars rule was adopted by (Record 1108): 142 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Coleman; Rodriguez.

## SB 1581 - COMMITTEE ON CALENDARS RULE ADOPTED

Representative Hunter moved to suspend all necessary rules and, pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, moved to adopt the following rule governing floor consideration for **SB 1581**:

Each original amendment to **SB 1581** that will be offered during second reading consideration must be filed with the chief clerk not later than 2 p.m. on Tuesday, May 17.

The motion to suspend all necessary rules prevailed and the Committee on Calendars rule was adopted by (Record 1109): 142 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Coleman; Hancock.

## SB 23 - COMMITTEE ON CALENDARS RULE ADOPTED

Representative Hunter moved to suspend all necessary rules and, pursuant to Rule 3, Section 5(2) and Rule 6, Section 16(f) of the House Rules, moved to adopt the following rule governing floor consideration for **SB 23**:

Each original amendment to **SB 23** that will be offered during second reading consideration must be filed with the chief clerk not later than 2 p.m. on Tuesday, May 17.

The motion to suspend all necessary rules prevailed and the Committee on Calendars rule was adopted by (Record 1110): 143 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Coleman; Johnson.

## GENERAL STATE CALENDAR
### (consideration continued)

## SB 322 ON SECOND READING
### (Deshotel - House Sponsor)

**SB 322**, A bill to be entitled An Act relating to the requirements for reinsurance contracts covering title insurance policies issued in this state.

**Amendment No. 1**

Representative Deshotel offered the following amendment to **SB 322**:

Amend **SB 322** by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Subchapter A, Chapter 2502, Insurance Code, is amended by adding Section 2502.006 to read as follows:

Sec. 2502.006. CERTAIN EXTRA HAZARDOUS COVERAGES PROHIBITED. (a) A title insurance company may not insure against loss or damage sustained by reason of any claim that under federal bankruptcy, state insolvency, or similar creditor's rights laws the transaction vesting title in the insured as shown in the policy or creating the lien of the insured mortgage is:

(1) a preference or preferential transfer under 11 U.S.C. Section 547;

(2) a fraudulent transfer under 11 U.S.C. Section 548;

(3) a transfer that is fraudulent as to present and future creditors under Section 24.005, Business & Commerce Code, or a similar law of another state; or

(4) a transfer that is fraudulent as to present creditors under Section 24.006, Business & Commerce Code, or a similar law of another state.

(b) The commissioner may by rule designate coverages that violate this section. It is not a defense against a claim that a title insurance company has violated this section that the commissioner has not adopted a rule under this subsection.

(c) Title insurance issued in or on a form prescribed by the commissioner shall be considered to comply with this section.

(d) Nothing in this section prohibits title insurance with respect to liens, encumbrances, or other defects to title to land that:

(1) appear in the public records before the date on which the contract of title insurance is made;

(2) occur or result from transactions before the transaction vesting title in the insured or creating the lien of the insured mortgage; or

(3) result from failure to timely perfect or record any instrument before the date on which the contract of title insurance is made.

(e) A title insurance company may not engage in the business of title insurance in this state if the title insurance company provides insurance of the type prohibited by Subsection (a) anywhere in the United States, except to the extent that the laws of another state require the title insurance company to provide that type of insurance.

SECTION ____. Section 2502.006, Insurance Code, as added by this Act, applies only to an insurance policy that is delivered, issued for delivery, or renewed on or after January 1, 2012. A policy delivered, issued for delivery, or renewed before January 1, 2012, is governed by the law as it existed immediately before the effective date of this Act, and that law is continued in effect for that purpose.

Amendment No. 1 was adopted.

**SB 322**, as amended, was passed to third reading.

**SB 328 ON SECOND READING**
**(Deshotel - House Sponsor)**

**SB 328**, A bill to be entitled An Act relating to notice of a hospital lien.

**SB 328** was passed to third reading.

**HB 1112 - HOUSE REFUSES TO CONCUR**
**IN SENATE AMENDMENTS**
**CONFERENCE COMMITTEE APPOINTED**

Representative Phillips called up with senate amendments for consideration at this time,

**HB 1112**, A bill to be entitled An Act relating to the authority and powers of regional mobility authorities.

Representative Phillips moved that the house not concur in the senate amendments and that a conference committee be requested to adjust the differences between the two houses on **HB 1112**.

The motion prevailed.

The chair announced the appointment of the following conference committee, on the part of the house, on **HB 1112**: Phillips, chair; Fletcher, Harper-Brown, Lavender, and Pickett.

### HB 1956 - HOUSE DISCHARGES CONFEREES
### HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Thompson called up with senate amendments for consideration at this time,

**HB 1956**, A bill to be entitled An Act relating to appeal of an order of the Texas Alcoholic Beverage Commission or the commission's administrator refusing, canceling, or suspending a license or permit.

Representative Thompson moved to discharge the conferees and concur in the senate amendments to **HB 1956**.

The motion to discharge the conferees and concur in the senate amendments to **HB 1956** prevailed by (Record 1111): 142 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Christian; Coleman; Smith, T.

### Senate Amendment No. 1  (Senate Floor Amendment No. 1)

Amend **HB 1956** (senate committee printing) as follows:

(1) In Section 1 of the bill, in amended Section 11.67(b)(2), Alcoholic Beverage Code (page 1, line 21), strike "60" and substitute "20".

(2) In Section 2 of the bill, in amended Section 32.18(2), Alcoholic Beverage Code (page 1, line 42), strike "60" and substitute "20".

## SB 313 - REQUEST OF SENATE GRANTED
## CONFERENCE COMMITTEE APPOINTED

On motion of Representative Price, the house granted the request of the senate for the appointment of a Conference Committee on **SB 313**.

The chair announced the appointment of the following conference committee, on the part of the house, on **SB 313**: Price, chair; Ritter, D. Miller, Lucio, and Beck.

## SB 28 - REQUEST OF SENATE GRANTED
## CONFERENCE COMMITTEE APPOINTED

On motion of Representative Branch, the house granted the request of the senate for the appointment of a Conference Committee on **SB 28**.

The chair announced the appointment of the following conference committee, on the part of the house, on **SB 28**: Branch, chair; Hunter, Villarreal, D. Howard, and Patrick.

## SB 1420 - REQUEST OF SENATE GRANTED
## CONFERENCE COMMITTEE APPOINTED

On motion of Representative Harper-Brown, the house granted the request of the senate for the appointment of a Conference Committee on **SB 1420**.

The chair announced the appointment of the following conference committee, on the part of the house, on **SB 1420**: Harper-Brown, chair; Phillips, Pickett, Bonnen, and McClendon.

## HB 699 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Deshotel called up with senate amendments for consideration at this time,

**HB 699**, A bill to be entitled An Act relating to the Port Authority Advisory Committee and funding of port security, transportation, and facility projects and port studies.

Representative Deshotel moved to concur in the senate amendments to **HB 699**.

The motion to concur in the senate amendments to **HB 699** prevailed by (Record 1112): 143 Yeas, 1 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett;

TX_00003122

Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Alonzo.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Eiland.

**Senate Committee Substitute**

**CSHB 699**, A bill to be entitled An Act relating to the funding of port security, facility projects, and port studies.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 55.001(5), Transportation Code, is amended to read as follows:

(5) "Port security, transportation, or facility project" means a project that is necessary or convenient for the proper operation of a maritime port and that will improve the security, movement, and intermodal transportation of cargo or passengers in commerce and trade.

SECTION 2. Sections 55.002(a), (b), and (c), Transportation Code, are amended to read as follows:

(a) From money in the fund, the department shall fund:

(1) port security, transportation, or facility projects; and

(2) maritime port studies.

(b) The commission by rule may establish matching fund requirements for receiving money from the fund [department may not fund a port security, transportation, or facility project unless an amount at least equal to the amount provided by the department is invested in the project by a port authority or navigation district].

(c) Port security, transportation, or facility projects eligible for funding under this chapter include:

(1) construction or improvement of transportation facilities within the jurisdiction of a maritime port;

(2) the dredging or deepening of channels, turning basins, or harbors;

(3) the construction or improvement of wharves, docks, structures, jetties, piers, storage facilities, cruise terminals, or any facilities necessary or useful in connection with maritime port transportation or economic development;

TX_00003123

(4) the construction or improvement of facilities necessary or useful in providing maritime port security;

(5) the acquisition of container cranes or other mechanized equipment used in the movement of cargo or passengers in international commerce;

(6) the acquisition of land to be used for maritime port purposes;

(7) the acquisition, improvement, enlargement, or extension of existing maritime port facilities; and

(8) environmental protection projects that:

(A) are required as a condition of a state, federal, or local environmental permit or other form of approval;

(B) are necessary for the acquisition of spoil disposal sites and improvements to existing and future spoil sites; or

(C) result from the undertaking of eligible projects.

SECTION 3.  Section 55.005(c), Transportation Code, is amended to read as follows:

(c) Money in the fund may be appropriated only to the department to perform the department's powers and duties concerning maritime port transportation and economic development under this chapter and to pay the department's expenses incurred under this chapter.

SECTION 4.  Section 55.006(a), Transportation Code, is amended to read as follows:

(a) The committee consists of seven members appointed by the commission. The members shall be appointed as follows:

(1) one member from the Port of Houston Authority;

(2) three members who represent maritime ports on the upper Texas coast; and

(3) three members who represent maritime ports on the lower Texas coast.

SECTION 5.  Section 55.007, Transportation Code, is amended to read as follows:

Sec. 55.007.  DUTIES OF COMMITTEE. (a)  The committee shall:

(1) prepare a maritime port mission plan;

(2) review each project eligible to be funded under this chapter and make recommendations for approval or disapproval to the department;

(3) every two years [maintain trade data information that will assist ports in this state and international trade;

[(4)  annually] prepare a report on Texas maritime ports, with a list of projects that have been recommended by the committee, including:

(A) the recommended funding level for each project; and

(B) if staged implementation of the project is appropriate, the funding requirements for each stage; and

(4) [(5)] advise the commission and the department on matters relating to port authorities.

(b)  The committee shall update the report on Texas maritime ports and shall submit the report not later than December 1 of each even-numbered year to the commission for distribution to:

(1) the governor;

(2) the lieutenant governor; and

(3) the speaker of the house of representatives.

SECTION 6. Section 55.008, Transportation Code, is amended to read as follows:

Sec. 55.008. CAPITAL PROGRAM. (a) The committee shall prepare a two-year port capital program defining the goals and objectives of the committee concerning the development of maritime port facilities and an intermodal transportation system. The port capital program must include projects or studies submitted to the committee by any maritime port and recommendations for:

(1) the construction of transportation facilities connecting any maritime port to another transportation mode; and

(2) the efficient, cost-effective development of transportation facilities or maritime port facilities for the purpose of:

(A) enhancing international trade;

(B) enhancing security;

(C) promoting cargo flow;

(D) increasing cruise passenger movements;

(E) increasing maritime port revenues; and

(F) providing economic benefits to the state.

(b) The committee shall update the port capital program [annually] and shall submit the capital program not later than December [February] 1 of each even-numbered year to:

(1) the governor;

(2) the lieutenant governor;

(3) the speaker of the house of representatives; and

(4) the commission.

SECTION 7. This Act takes effect September 1, 2011.

### HB 2035 - HOUSE CONCURS IN SENATE AMENDMENTS
### TEXT OF SENATE AMENDMENTS

Representative Hamilton called up with senate amendments for consideration at this time,

**HB 2035**, A bill to be entitled An Act relating to the temporary relocation of an alcoholic beverage distributor's or wholesaler's premises during a period of emergency and delivery of alcoholic beverages to a distributor's or wholesaler's premises.

Representative Hamilton moved to concur in the senate amendments to **HB 2035**.

The motion to concur in the senate amendments to **HB 2035** prevailed by (Record 1113): 142 Yeas, 1 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver;

Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Howard, C.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Alonzo; Harless.

**Senate Committee Substitute**

CSHB 2035, A bill entitled to be An Act relating to the temporary relocation of an alcoholic beverage distributor's or wholesaler's premises during a period of emergency and delivery of alcoholic beverages to a distributor's or wholesaler's premises.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 41.01, Alcoholic Beverage Code, is amended by adding Subsection (c) to read as follows:

(c)  The holder of a carrier permit who transports liquor to the premises of a wholesaler, including to a location from which the wholesaler is temporarily conducting business under Section 109.62, shall provide to the consignee a shipping invoice that clearly states:

(1)  the name and address of the consignor and consignee;

(2)  the origin and destination of the shipment; and

(3)  any other information required by this code or commission rule, including the brands, sizes of containers, types, and quantities of liquor contained in the shipment and the actual shipping costs paid by the consignor.

SECTION 2. Section 107.02, Alcoholic Beverage Code, is amended by adding Subsection (a-1) to read as follows:

(a-1)  A person transporting beer to the premises of a distributor, including to a location from which the distributor is temporarily conducting business under Section 109.62, shall provide to the consignee a shipping invoice that clearly states:

(1)  the name and address of the consignor and consignee;

(2)  the origin and destination of the shipment; and

(3) any other information required by this code or commission rule, including the brands, sizes of containers, and quantities of beer contained in the shipment and the actual shipping costs paid by the consignor.

SECTION 3. Subchapter D, Chapter 109, Alcoholic Beverage Code, is amended by adding Section 109.62 to read as follows:

Sec. 109.62. TEMPORARY RELOCATION OF DISTRIBUTOR OR WHOLESALER DURING EMERGENCY. (a)   In this section, "period of emergency" means a time during which weather, fire, earthquake, or other natural disaster, act of God, or catastrophe affects a distributor's or wholesaler's premises or an area of this state in a way that disrupts the distributor's or wholesaler's normal business operations to the extent that the business cannot receive deliveries at or make deliveries from the premises or perform necessary business operations at the premises.

(b) During a period of emergency, a distributor or wholesaler may temporarily operate all or part of the distributor's or wholesaler's business from an alternate location, including storing alcoholic beverages, maintaining required records, receiving alcoholic beverages from suppliers, dispatching orders intended for sale to authorized purchasers, and performing any other function the distributor or wholesaler is authorized by this code to perform at the licensed or permitted premises. The alternate location is considered the distributor's or wholesaler's licensed or permitted premises, as applicable, for the purposes of this code.

(c) A holder of a permit or license under Chapter 41, 42, or 68 may make deliveries to and pick up deliveries from the alternate location in the same manner as this code and commission rules provide for the distributor's or wholesaler's licensed or permitted premises.

(d) A distributor or wholesaler who temporarily operates all or part of the distributor's or wholesaler's business from an alternate location as provided by Subsection (b) shall immediately notify the administrator, in writing, of the alternate location. The notice must include a statement affirming that the alternate location satisfies the requirements of Subsection (e).

(e) The alternate location must be in an area where the sale of the applicable alcoholic beverages has been approved by a local option election or where the distributor or wholesaler had been operating under Section 251.77 or 251.78. If beer, ale, or malt liquor is handled at the alternate location, the alternate location must be in an area assigned to the distributor or wholesaler under Subchapters C and D, Chapter 102.

(f) If the delivery vehicles operated by the affected distributor or wholesaler are wholly or partially disabled, the administrator may grant the distributor or wholesaler the authority to contract with another distributor or wholesaler for the temporary sharing of delivery vehicles. Authority granted under this subsection is in addition to authority granted under other provisions of this code to share delivery vehicles and warehouses.

(g) A distributor's or wholesaler's authority to operate from an alternate location under this section expires on the first anniversary of the date the distributor or wholesaler commences business operations at an alternate location.

The administrator may grant the distributor or wholesaler a one-year extension of the authority to operate from an alternate location under this section, after which the distributor or wholesaler must apply for a license or permit for the alternate location in the usual manner.

SECTION 4. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2011.

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **CSHB 2035** (senate committee printing) as follows:

(1) In SECTION 1 of the bill, in added Section 41.01(c)(3), Alcoholic Beverage Code (page 1, lines 27-28), strike "and the actual shipping costs paid by the consignor".

(2) In SECTION 2 of the bill, in added Section 107.02(a-1)(3), Alcoholic Beverage Code (page 1, lines 40-41), strike "and the actual shipping costs paid by the consignor".

(3) In SECTION 3 of the bill, in added Section 109.62(e), Alcoholic Beverage Code (page 2, line 17), strike "an area assigned" and substitute "the area assigned".

## HB 1674 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Jackson called up with senate amendments for consideration at this time,

**HB 1674**, A bill to be entitled An Act relating to procedures for establishment, modification, and enforcement of child support obligations.

Representative Jackson moved to concur in the senate amendments to **HB 1674**.

The motion to concur in the senate amendments to **HB 1674** prevailed by (Record 1114): 143 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Aliseda; Allen; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond;

Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Alonzo; Cain.

**Senate Committee Substitute**

**CSHB 1674**, A bill to be entitled An Act relating to procedures for establishment, modification, and enforcement of child support obligations.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 154.187(c), Family Code, is amended to read as follows:

(c) An employer who has received an order or notice under this subchapter shall provide to the sender, by first class mail not later than the 40th [30th] day after the date the employer receives the order or notice, a statement that the child:

(1) has been enrolled in the employer's health insurance plan or is already enrolled in another health insurance plan in accordance with a previous child support or medical support order to which the employee is subject; or

(2) cannot be enrolled or cannot be enrolled permanently in the employer's health insurance plan and provide the reason why coverage or permanent coverage cannot be provided.

SECTION 2. Section 154.303(b), Family Code, is amended to read as follows:

(b) The parent, the child, if the child is 18 years of age or older, or other person may not transfer or assign the cause of action to any person, including a governmental or private entity or agency, except for an assignment made to the Title IV-D agency under Section 231.104 or in the provision of child support enforcement services under Section 159.307.

SECTION 3. Section 156.401, Family Code, is amended by amending Subsection (a) and adding Subsection (a-2) to read as follows:

(a) Except as provided by Subsection (a-1), (a-2), or (b), the court may modify an order that provides for the support of a child, including an order for health care coverage under Section 154.182, if:

(1) the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of:

(A) the date of the order's rendition; or

(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; or

(2) it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.

(a-2)  A court or administrative order for child support in a Title IV-D case may be modified as provided under Section 233.013(c) to provide for medical support of a child.

SECTION 4.  Section 157.162, Family Code, is amended by amending Subsection (c) and adding Subsection (c-1) to read as follows:

(c)  The movant may attach to the motion a [A] copy of a [the] payment record. The movant may subsequently update that payment record at the hearing. If a payment record was attached to the motion as authorized by this subsection, the payment record, as updated if applicable, [attached to the motion is evidence of the facts asserted in the payment record and] is admissible to prove:

(1)  the dates and in what amounts payments were made;

(2)  the amount of any accrued interest;

(3)  the cumulative arrearage over time; and

(4)  the cumulative arrearage as of the final date of the record.

(c-1)  A [show whether payments were made. The] respondent may offer [controverting] evidence controverting the contents of a payment record under Subsection (c).

SECTION 5.  Sections 157.311(1) and (4), Family Code, are amended to read as follows:

(1)  "Account" means:

(A)  any type of a demand deposit account, checking or negotiable withdrawal order account, savings account, time deposit account, [money market] mutual fund account, certificate of deposit, or any other instrument of deposit in which an individual has a beneficial ownership either in its entirety or on a shared or multiple party basis, including any accrued interest and dividends; and

(B)  an [a life] insurance policy, including a life insurance policy or annuity contract, in which an individual has a beneficial ownership or [liability insurance] against which an individual may file [has filed] a claim or counterclaim.

(4)  "Financial institution" has the meaning assigned by 42 U.S.C. Section 669a(d)(1) and includes a depository institution, depository institution holding company as defined by 12 U.S.C. Section 1813(w), credit union, benefit association, [liability or life] insurance company, [money market] mutual fund, and any similar entity authorized to do business in this state.

SECTION 6.  Section 157.317(a), Family Code, is amended to read as follows:

(a)  A child support lien attaches to all real and personal property not exempt under the Texas Constitution or other law, including:

(1)  an account in a financial institution;

(2)  a retirement plan, including an individual retirement account; [and]

(3)  the proceeds of an [a life] insurance policy, including the proceeds from a life insurance policy or annuity contract and the proceeds from the sale or assignment of life insurance or annuity benefits, a claim for compensation [negligence or personal injury], or a [an insurance] settlement or award for the claim for compensation, due to or owned by the obligor; and

TX_00003130

(4)  property seized and subject to forfeiture under Chapter 59, Code of Criminal Procedure.

SECTION 7. Subchapter G, Chapter 157, Family Code, is amended by adding Section 157.3271 to read as follows:

Sec. 157.3271. LEVY ON FINANCIAL INSTITUTION ACCOUNT OF DECEASED OBLIGOR. (a) Subject to Subsection (b), the Title IV-D agency may, not earlier than the 90th day after the date of death of an obligor in a Title IV-D case, deliver a notice of levy to a financial institution in which the obligor was the sole owner of an account, regardless of whether the Title IV-D agency has issued a child support lien notice regarding the account.

(b)  The Title IV-D agency may not deliver a notice of levy under this section if probate proceedings relating to the obligor's estate have commenced.

(c)  The notice of levy must:

(1)  identify the amount of child support arrearages determined by the Title IV-D agency to be owing and unpaid by the obligor on the date of the obligor's death; and

(2)  direct the financial institution to pay to the Title IV-D agency, not earlier than the 45th day or later than the 60th day after the date of delivery of the notice, an amount from the assets of the obligor or from funds due to the obligor that are held or controlled by the institution, not to exceed the amount of the child support arrearages identified in the notice.

(d)  Not later than the 35th day after the date of delivery of the notice, the financial institution must notify any other person asserting a claim against the account that:

(1)  the account has been levied on for child support arrearages in the amount shown on the notice of levy; and

(2)  the person may contest the levy by filing suit and requesting a court hearing in the same manner that a person may challenge a child support lien under Section 157.323.

(e)  A person who contests a levy under this section, as authorized by Subsection (d)(2), may bring the suit in:

(1)  the district court of the county in which the property is located or in which the obligor resided; or

(2)  the court of continuing jurisdiction.

(f)  The notice of levy may be delivered to a financial institution as provided by Section 59.008, Finance Code, if the institution is subject to that law or may be delivered to the registered agent, the institution's main business office in this state, or another address provided by the institution under Section 231.307.

(g)  A financial institution may deduct its fees and costs, including any costs for complying with this section, from the deceased obligor's assets before paying the appropriate amount to the Title IV-D agency.

SECTION 8.  Sections 158.203(b) and (b-1), Family Code, are amended to read as follows:

(b)  An employer with 50 [250] or more employees shall remit a payment required under this section by electronic funds transfer or electronic data interchange not later than the second business day after the pay date.

(b-1) An employer with fewer than 50 [250] employees may remit a payment required under this section by electronic funds transfer or electronic data interchange. A payment remitted by the employer electronically must be remitted not later than the date specified by Subsection (b).

SECTION 9. The heading to Section 158.503, Family Code, is amended to read as follows:

Sec. 158.503. DELIVERY OF ADMINISTRATIVE WRIT TO EMPLOYER; FILING WITH COURT OR MAINTAINING RECORD.

SECTION 10. Section 158.503, Family Code, is amended by amending Subsections (a) and (b) and adding Subsection (b-1) to read as follows:

(a) An administrative writ of withholding issued under this subchapter may be delivered to an [obligor, obligee, and] employer by mail or by electronic transmission.

(b) The Title IV-D agency shall:

(1) not [Not] later than the third business day after the date of delivery of the administrative writ of withholding to an employer, [the Title IV-D agency shall] file a copy of the writ, together with a signed certificate of service, in the court of continuing jurisdiction; or

(2) maintain a record of the writ until all support obligations of the obligor have been satisfied or income withholding has been terminated as provided by this chapter.

(b-1) The certificate of service required under Subsection (b)(1) may be signed electronically. [This subsection does not apply to the enforcement under Section 158.501(c) of a support order rendered by a tribunal of another state.]

SECTION 11. Section 231.015, Family Code, is amended to read as follows:

Sec. 231.015. INSURANCE REPORTING PROGRAM. (a) In consultation with the Texas Department of Insurance and representatives of the insurance industry in this state, including insurance trade associations, the Title IV-D agency by rule shall operate a program [to improve the enforcement of child support, including the use of child support liens under Chapter 157. The program shall provide for procedures, including data matches,] under which insurers [insurance companies] shall cooperate with the Title IV-D agency in identifying obligors who owe child support arrearages and [or who] are subject to liens for child support arrearages to intercept certain [liability] insurance settlements or awards for claims in satisfaction of the arrearage amounts.

(b) An insurer [insurance company] that provides information or responds to a notice of child support lien or levy under Subchapter G, Chapter 157, or acts in good faith to comply with procedures established by the Title IV-D agency under this section is not liable for those acts under any law to any person.

SECTION 12. Section 231.307, Family Code, is amended by amending Subsection (d) and adding Subsection (g) to read as follows:

(d)  A financial institution providing information or responding to a notice of child support lien or levy provided under Subchapter G, Chapter 157, or otherwise acting in good faith to comply with the Title IV-D agency's procedures under this section may not be liable under any federal or state law for any damages that arise from those acts.

(g)  This section does not apply to an insurer subject to the reporting requirements under Section 231.015.

SECTION 13.  The heading to Section 232.0135, Family Code, is amended to read as follows:

Sec. 232.0135.  DENIAL OF LICENSE ISSUANCE OR RENEWAL.

SECTION 14.  Sections 232.0135(a), (b), (c), and (d), Family Code, are amended to read as follows:

(a)  A child support agency, as defined by Section 101.004, may provide notice to a licensing authority concerning an obligor who has failed to pay child support for six months or more that requests the authority to refuse to accept an application for issuance of a license to the obligor or renewal of an existing [the] license of the obligor.

(b)  A licensing authority that receives the information described by Subsection (a) shall refuse to accept an application for issuance of a license to the obligor or renewal of an existing [the] license of the obligor until the authority is notified by the child support agency that the obligor has:

(1)  paid all child support arrearages;

(2)  established with the agency a satisfactory repayment schedule or is in compliance with a court order for payment of the arrearages;

(3)  been granted an exemption from this subsection as part of a court-supervised plan to improve the obligor's earnings and child support payments; or

(4)  successfully contested the denial of issuance or renewal of license under Subsection (d).

(c)  On providing a licensing authority with the notice described by Subsection (a), the child support agency shall send a copy to the obligor by first class mail and inform the obligor of the steps the obligor must take to permit the authority to accept the obligor's application for license issuance or renewal.

(d)  An obligor receiving notice under Subsection (c) may request a review by the child support agency to resolve any issue in dispute regarding the identity of the obligor or the existence or amount of child support arrearages. The agency shall promptly provide an opportunity for a review, either by telephone or in person, as appropriate to the circumstances. After the review, if appropriate, the agency may notify the licensing authority that it may accept the obligor's application for issuance or renewal of license. If the agency and the obligor fail to resolve any issue in dispute, the obligor, not later than the 30th day after the date of receiving notice of the agency's determination from the review, may file a motion with the court to direct the agency to withdraw the notice under Subsection (a) and request a hearing on the motion. The obligor's application for license issuance or renewal may not be accepted by the licensing authority until the court rules on the motion. If, after a review by the agency or a hearing by the

court, the agency withdraws the notice under Subsection (a), the agency shall reimburse the obligor the amount of any fee charged the obligor under Section 232.014.

SECTION 15. Section 232.014(a), Family Code, is amended to read as follows:

(a) A licensing authority may charge a fee to an individual who is the subject of an order suspending license or of an action of a child support agency under Section 232.0135 to deny issuance or renewal of license in an amount sufficient to recover the administrative costs incurred by the authority under this chapter.

SECTION 16. Section 233.012, Family Code, is amended to read as follows:

Sec. 233.012. INFORMATION REQUIRED TO BE PROVIDED AT NEGOTIATION CONFERENCE. At the beginning of the negotiation conference, the child support review officer shall review with the parties participating in the conference information provided in the notice of child support review and inform the parties that:

(1) the purpose of the negotiation conference is to provide an opportunity to reach an agreement on a child support order;

(2) if the parties reach an agreement, the review officer will prepare an agreed review order to be effective immediately on being confirmed by the court, as provided by Section 233.024;

(3) a party does not have to sign a review order prepared by the child support review officer but that the Title IV-D agency may file a review order without the agreement of the parties;

(4) the parties may sign a waiver of the right to service of process;

(5) a party may file a request for a court hearing on a nonagreed order not later than [at any time before] the 20th day after the date a copy of the petition for confirmation of the order is delivered to the party [filed]; and

(6) a party may file a motion for a new trial not later than [at any time before] the 30th day after an order is confirmed by the court.

SECTION 17. Section 233.013, Family Code, is amended by adding Subsection (c) to read as follows:

(c) Notwithstanding Subsection (b), the Title IV-D agency may, at any time and without a showing of material and substantial change in the circumstances of the parties, file a child support review order that has the effect of modifying an existing order for child support to provide medical support for a child if the existing order does not provide health care coverage for the child as required under Section 154.182.

SECTION 18. Section 1108.101, Insurance Code, is amended to read as follows:

Sec. 1108.101. ASSIGNMENT GENERALLY. (a) This chapter does not prevent an insured, owner, or annuitant from assigning, in accordance with the terms of the policy or contract:

(1) any benefits to be provided under an insurance policy or annuity contract to which this chapter applies; or

(2) any other rights under the policy or contract.

(b) A benefit or right described by Subsection (a) assigned by an insured, owner, or annuitant after a child support lien notice has been filed against the insured, owner, or annuitant by the Title IV-D agency continues to be subject to the child support lien after the date of assignment. The lien continues to secure payment of all child support arrearages owed by the insured, owner, or annuitant under the underlying child support order, including arrearages that accrue after the date of assignment.

SECTION 19. Section 411.1271, Government Code, is amended by adding Subsection (b-1) and amending Subsection (c) to read as follows:

(b-1) The office of the attorney general is entitled to obtain from the Department of Public Safety, the Federal Bureau of Investigation identification division, or another law enforcement agency criminal history record information maintained by the department or agency that relates to a person who owes child support in a Title IV-D case, as defined by Section 101.034, Family Code, for the purposes of locating that person and establishing, modifying, or enforcing a child support obligation against that person.

(c) Criminal history record information obtained by the office of the attorney general under this section [Subsection (a) or (b)] may not be released or disclosed to any person except on court order or with the consent of the person who is the subject of the criminal history record information.

SECTION 20. Section 34.04(a), Tax Code, is amended to read as follows:

(a) A person, including a taxing unit and the Title IV-D agency, may file a petition in the court that ordered the seizure or sale setting forth a claim to the excess proceeds. The petition must be filed before the second anniversary of the date of the sale of the property. The petition is not required to be filed as an original suit separate from the underlying suit for seizure of the property or foreclosure of a tax lien on the property but may be filed under the cause number of the underlying suit.

SECTION 21. Article 59.06(a), Code of Criminal Procedure, is amended to read as follows:

(a) Except as provided by Subsection (k), all forfeited property shall be administered by the attorney representing the state, acting as the agent of the state, in accordance with accepted accounting practices and with the provisions of any local agreement entered into between the attorney representing the state and law enforcement agencies. If a local agreement has not been executed, the property shall be sold on the 75th day after the date of the final judgment of forfeiture at public auction under the direction of the county sheriff, after notice of public auction as provided by law for other sheriff's sales. The proceeds of the sale shall be distributed as follows:

(1) to any interest holder to the extent of the interest holder's nonforfeitable interest; [and]

(2) after any distributions under Subdivision (1), if the Title IV-D agency has filed a child support lien in the forfeiture proceeding, to the Title IV-D agency in an amount not to exceed the amount of child support arrearages identified in the lien; and

(3) the balance, if any, after the deduction of court costs to which a district court clerk is entitled under Article 59.05(f) and, after that deduction, the deduction of storage and disposal costs, to be deposited not later than the 30th day after the date of the sale in the state treasury to the credit of the general revenue fund.

SECTION 22. Section 233.017(c), Family Code, is repealed.

SECTION 23. Section 154.187(c), Family Code, as amended by this Act, applies to an order or notice received by an employer on or after the effective date of this Act. An order or notice received by an employer before the effective date of this Act is governed by the law in effect on the date the order or notice was received, and the former law is continued in effect for that purpose.

SECTION 24. Sections 156.401(a-2) and 233.013(c), Family Code, as added by this Act, apply to each child support order, regardless of whether the order was rendered before, during, or after the effective date of this Act.

SECTION 25. Section 157.162, Family Code, as amended by this Act, applies to a motion for child support enforcement filed on or after the effective date of this Act. A motion filed before the effective date of this Act is governed by the law in effect on the date the motion was filed, and the former law is continued in effect for that purpose.

SECTION 26. Section 158.203, Family Code, as amended by this Act, applies to child support payments withheld by an employer on or after the effective date of this Act.

SECTION 27. Section 158.503, Family Code, as amended by this Act, applies to an administrative writ of withholding issued on or after the effective date of this Act.

SECTION 28. Section 1108.101(b), Insurance Code, as added by this Act, applies to an assignment made on or after the effective date of this Act. An assignment made before the effective date of this Act is governed by the law in effect on the date the assignment was made, and the former law is continued in effect for that purpose.

SECTION 29. Article 59.06(a), Code of Criminal Procedure, as amended by this Act, applies to a sale of forfeited property that occurs on or after the effective date of this Act. A sale that occurs before the effective date of this Act is governed by the law in effect on the date the property was sold, and the former law is continued in effect for that purpose.

SECTION 30. This Act takes effect September 1, 2011.

**Senate Amendment No. 1 (Senate Floor Amendment No. 1)**

Amend **HB 1674** (senate committee printing) by adding the following SECTIONS and renumbering subsequent SECTIONS appropriately:

"SECTION ____. Section 157.263, Family Code, is amended by adding Subsection (b-1) to read as follows:

(b-1) In rendering a money judgment under this section, the court may not reduce or modify the amount of child support arrearages but, in confirming the amount of arrearages, may allow a counterclaim or offset as provided by this title.

SECTION ____. Subchapter B, Chapter 231, Family Code, is amended by adding Section 231.124 to read as follows:

TX_00003136

Sec. 231.124. CHILD SUPPORT ARREARAGES PAYMENT INCENTIVE PROGRAM. (a) The title IV-D agency may establish and administer a payment incentive program to promote payment by obligors who are delinquent in satisfying child support arrearages assigned to the Title IV-D agency under Section 231.104(a).

(b) A program established under this section must provide to a participating obligor a credit for every dollar amount paid by the obligor on interest and arrearages balances during each month of the obligor's voluntary enrollment in the program. In establishing a program under this section, the Title IV-D agency by rule must prescribe:

(1) criteria for a child support obligor's initial eligibility to participate in the program;

(2) the conditions for a child support obligor's continued participation in the program;

(3) procedures for enrollment in the program; and

(4) the terms of the financial incentives to be offered under the program.

(c) The Title IV-D agency shall provide eligible obligors with notice of the program and enrollment instructions.

SECTION ____. Section 157.262, Family Code, is repealed.

SECTION ____. Subsection (b-1), Section 157.263, Family Code, as added by this Act, applies to a motion for enforcement of child support that is pending before a trial court on or filed on or after the effective date of this Act.

## HB 2271 - HOUSE CONCURS IN SENATE AMENDMENTS
## TEXT OF SENATE AMENDMENTS

Representative Anchia called up with senate amendments for consideration at this time,

**HB 2271**, A bill to be entitled An Act relating to the continuation and functions of the Texas Racing Commission, the abolishment of the Equine Research Account Advisory Committee, and the authority of Texas AgriLife Research; providing an administrative penalty.

(L. Taylor in the chair)

Representative Anchia moved to concur in the senate amendments to **HB 2271**.

The motion to concur in the senate amendments to **HB 2271** prevailed by (Record 1115): 120 Yeas, 20 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Burnam; Button; Callegari; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, S.; Davis, Y.; Driver; Dukes; Dutton; Eiland; Eissler; Elkins; Farias; Farrar; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, D.; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, T.;

Kleinschmidt; Kolkhorst; Kuempel; Larson; Laubenberg; Legler; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Morrison; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Paxton; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Smith, T.; Smith, W.; Solomons; Strama; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Woolley; Workman; Zerwas.

Nays — Brown; Burkett; Cain; Carter; Davis, J.; Fletcher; Flynn; Hartnett; Howard, C.; Landtroop; Lavender; Lewis; Miller, S.; Patrick; Perry; Phillips; Simpson; Weber; White; Zedler.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent, Excused — Anderson, C.; Huberty; Muñoz; Smithee.

Absent — Deshotel; King, S.; Marquez; Peña.

## STATEMENTS OF VOTE

I was shown voting yes on Record No. 1115. I intended to vote no.

Button

I was shown voting yes on Record No. 1115. I intended to vote present, not voting.

Y. Davis

I was shown voting yes on Record No. 1115. I intended to vote no.

Harless

When Record No. 1115 was taken, I was temporarily out of the house chamber. I would have voted yes.

S. King

I was shown voting yes on Record No. 1115. I intended to vote no.

Paxton

I was shown voting yes on Record No. 1115. I intended to vote no.

Solomons

**Senate Committee Substitute**

**CSHB 2271**, A bill to be entitled An Act relating to the continuation and functions of the Texas Racing Commission, the abolishment of the Equine Research Account Advisory Committee, and the authority of Texas AgriLife Research; providing an administrative penalty.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 1.03, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by amending Subdivision (52) and adding Subdivisions (80) and (81) to read as follows:

(52) "Performance" means the consecutive running of a specified number of greyhound races as determined by the commission [not more than 13 greyhound races].

(80) "Active license" means a racetrack license designated by the commission as active.

(81) "Inactive license" means a racetrack license designated by the commission as inactive.

SECTION 2. Section 2.071, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 2.071. CONFLICT OF INTEREST. (a)  A person may not be a member of the commission and may not be a commission employee employed in a "bona fide executive, administrative, or professional capacity," as that phrase is used for purposes of establishing an exemption to the overtime provisions of the federal Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.), if:

(1) the person is an [An] officer, employee, or paid consultant of a Texas trade association in the field of horse or greyhound racing or breeding; or

(2) the person's [may not be a member of the commission or an employee of the commission who is exempt from the state's position classification plan or is compensated at or above the amount prescribed by the General Appropriations Act for step 1, salary group 17, of the position classification salary schedule.

[(b) A person who is the] spouse is [of] an officer, manager, or paid consultant of a Texas trade association in the field of horse or greyhound racing or breeding [may not be a member of the commission and may not be an employee of the commission who is exempt from the state's position classification plan or is compensated at or above the amount prescribed by the General Appropriations Act for step 1, salary group 17, of the position classification salary schedule].

(b) A person may not be a member of the commission or act as the general counsel to the commission if the person is required to register as a lobbyist under Chapter 305, Government Code, because of the person's activities for compensation on behalf of a profession related to the operation of the commission.

(c) In [For the purposes of] this section, "Texas trade association" means [a Texas trade association is] a cooperative and voluntarily joined statewide [nonprofit] association of business or professional competitors in this state designed to assist its members and its industry or profession in dealing with mutual business or professional problems and in promoting their common interest.

SECTION 3. Article 2, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by adding Section 2.25 to read as follows:

Sec. 2.25. NEGOTIATED RULEMAKING AND ALTERNATIVE DISPUTE RESOLUTION PROCEDURES. (a) The commission shall develop and implement a policy to encourage the use of:

(1) negotiated rulemaking procedures under Chapter 2008, Government Code, for the adoption of commission rules; and

(2) appropriate alternative dispute resolution procedures under Chapter 2009, Government Code, to assist in the resolution of internal and external disputes under the commission's jurisdiction.

(b) The commission's procedures relating to alternative dispute resolution shall conform, to the extent possible, to any model guidelines issued by the State Office of Administrative Hearings for the use of alternative dispute resolution by state agencies.

(c) The commission shall:

(1) coordinate the implementation of the policy adopted under Subsection (a) of this section;

(2) provide training as needed to implement the procedures for negotiated rulemaking or alternative dispute resolution; and

(3) collect data concerning the effectiveness of those procedures.

SECTION 4. Sections 3.07(b) and (e), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), are amended to read as follows:

(b) The commission shall make rules specifying the authority and the duties of each official, including the power of stewards or judges to impose penalties for unethical practices or violations of racing rules. A penalty imposed by the stewards or judges may include a fine of not more than $5,000, a suspension for not more than one year, or both a fine and suspension. Before imposing a penalty under this subsection, the stewards and judges shall conduct a hearing that is consistent with constitutional due process. A hearing conducted by a steward or judge under this subsection is not subject to Chapter 2001, Government Code. A decision of a steward or judge is subject to review by the executive director, who may modify the penalty. A penalty modified by the executive director under this section may include a fine not to exceed $10,000, a suspension not to exceed two years, or both a fine and a suspension. A decision of a steward or judge that is not reviewed or modified by the executive director is a final decision. Any decision of a steward or judge may be appealed under Section 3.08(a) of this Act regardless of whether the decision is modified by the executive director. [If, in the opinion of the stewards or judges, the allowable penalties are not sufficient, the stewards or judges may refer the case to the commission for further action.]

(e) To pay the charges associated with the medication or drug testing, an association may use the money held by the association to pay outstanding tickets and pari-mutuel vouchers. If additional amounts are needed to pay the charges, the association shall pay those additional amounts. [If the amount held exceeds the amount needed to pay the charges, the association shall pay the excess to the commission in accordance with Section 11.08 of this Act.]

SECTION 5. Section 3.09(b), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

(b) The commission shall deposit the money it collects under this Act in the State Treasury to the credit of a special fund to be known as the Texas Racing Commission fund. The Texas Racing Commission fund may be appropriated only for the administration and enforcement of this Act. Any unappropriated money exceeding $750,000 that remains [remaining] in the [that special] fund at the close of each fiscal biennium shall be transferred to the General Revenue Fund

and may be appropriated for any legal purpose. The legislature may also appropriate money from the General Revenue Fund for the administration and enforcement of this Act. Any amount of general revenue appropriated for the administration and enforcement of this Act in excess of the cumulative amount deposited in the Texas Racing Commission fund shall be reimbursed from the Texas Racing Commission fund not later than one year after the date on which the general revenue funds are appropriated, with [12 percent interest per year until August 31, 1993, and] 6-3/4 percent interest [thereafter] with all payments first attributable to interest.

SECTION 6. Sections 5.03(a) and (c), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), are amended to read as follows:

(a) An applicant for any license or license renewal under this Act must, except as allowed under Section 7.10 of this Act, submit to the commission a complete set of fingerprints of the individual natural person applying for the license or license renewal or, if the applicant is not an individual natural person, a complete set of fingerprints of each officer or director and of each person owning an interest of at least five percent in the applicant. The Department of Public Safety may request any person owning any interest in an applicant for a racetrack license to submit a complete set of fingerprints.

(c) A peace officer of this or any other state, or any district office of the commission, shall take the fingerprints of an applicant for a license or license renewal on forms approved and furnished by the Department of Public Safety and shall immediately deliver them to the commission.

SECTION 7. Article 6, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by adding Section 6.032 to read as follows:

Sec. 6.032. BOND. (a) The commission at any time may require a holder of a racetrack license or an applicant for a racetrack license to post security in an amount reasonably necessary, as provided by commission rule, to adequately ensure the license holder's or applicant's compliance with substantive requirements of this Act and commission rules.

(b) Cash, cashier's checks, surety bonds, irrevocable bank letters of credit, United States Treasury bonds that are readily convertible to cash, or irrevocable assignments of federally insured deposits in banks, savings and loan institutions, and credit unions are acceptable as security for purposes of this section.  The security must be:

(1) conditioned on compliance with this Act and commission rules adopted under this Act; and

(2) returned after the conditions of the security are met.

SECTION 8. The heading to Section 6.04, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 6.04. ISSUANCE OF LICENSE[; BOND].

SECTION 9. Section 6.04, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by adding Subsections (a-1) and (a-2) to read as follows:

(a-1)  When all of the requirements of licensure for the applicant described in this article have been satisfied, the commission shall notify the applicant that the application is complete.

(a-2)  The commission shall make a determination with respect to a pending application not later than the 120th day after the date on which the commission provided to the applicant the notice required under Subsection (a-1) of this section.

SECTION 10.  Section 6.06(k), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

(k)  The commission shall review the ownership and management of an active [a] license issued under this article every five years beginning on the fifth anniversary of the issuance of the license.   In performing the review, the commission may require the license holder to provide any information that would be required to be provided in connection with an original license application under Article 5 of this Act or this article.   The commission shall charge fees for the review in amounts sufficient to implement this subsection.

SECTION 11.  Article 6, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended by adding Sections 6.0601, 6.0602, and 6.0603 to read as follows:

Sec. 6.0601.  DESIGNATION  OF  ACTIVE  AND  INACTIVE RACETRACK LICENSES.  (a)  The commission shall designate each racetrack license as an active license or an inactive license.  The commission may change the designation of a racetrack license as appropriate.

(b)  The commission shall designate a racetrack license as an active license if the license holder:

(1)  holds live racing events at the racetrack; or

(2)  makes good faith efforts to conduct live racing.

(c)  The commission by rule shall provide guidance on what actions constitute, for purposes of this Act, good faith efforts to conduct live racing.

(d)  Before the first anniversary of the date a new racetrack license is issued, the commission shall conduct an evaluation of the license to determine whether the license is an active or inactive license.

(e)  An active license is effective until the license is designated as an inactive license or is surrendered, suspended, or revoked under this Act.

Sec. 6.0602.  RENEWAL OF INACTIVE RACETRACK LICENSE; FEES. (a)  The commission by rule shall establish an annual renewal process for inactive licenses and may require the license holder to provide any information required for an original license application under this Act.  An inactive license holder must complete the annual renewal process established under this section until the commission:

(1)  designates the license as an active license; or

(2)  refuses to renew the license.

(b)  In determining whether to renew an inactive license, the commission shall consider:

(1)  the inactive license holder's:

(A)  financial stability;

    (B)  ability to conduct live racing;

    (C)  ability to construct and maintain a racetrack facility; and

    (D)  other good faith efforts to conduct live racing; and

    (2)  other necessary factors considered in the issuance of the original license.

    (c)  The commission may refuse to renew an inactive license if, after notice and a hearing, the commission determines that:

    (1)  renewal of the license is not in the best interests of the racing industry or the public; or

    (2)  the license holder has failed to make a good faith effort to conduct live racing.

    (d)  The commission shall consult with members of the racing industry and other key stakeholders in developing the license renewal process under this section.

    (e)  The commission shall set and collect renewal fees in amounts reasonable and necessary to cover the costs of administering and enforcing this section.

    (f)  The commission by rule shall establish criteria to make the determinations under Subsections (c)(1) and (2).

    Sec. 6.0603.  DISCIPLINARY ACTION. (a) The commission by rule shall establish procedures for disciplinary action against a racetrack license holder.

    (b)  If, after notice and hearing, the commission finds that a racetrack license holder or a person employed by the racetrack has violated this Act or a commission rule or if the commission finds during a review or renewal that the racetrack is ineligible for a license under this article, the commission may:

    (1)  revoke, suspend, or refuse to renew the racetrack license;

    (2)  impose an administrative penalty as provided under Section 15.03 of this Act; or

    (3)  take any other action as provided by commission rule.

    (c)  The commission may not revoke an active license unless the commission reasonably determines that other disciplinary actions are inadequate to remedy the violation.

    SECTION 12. Section 6.08(h), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

    (h)  Two percent of the breakage shall be allocated to the equine research account under Subchapter F, Chapter 88 [51], Education Code. The remaining 98 percent of the breakage shall constitute "total breakage" and shall be allocated pursuant to Subsections (i) and (j) of this section.

    SECTION 13. The heading to Section 6.18, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows:

    Sec. 6.18.  ANNUAL FEE FOR RACETRACK [TERM OF] LICENSE[; RESTRICTIONS ON RACETRACKS].

    SECTION 14. Section 6.18(b), Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), is amended to read as follows: