**SB 1443** by Zaffirini
Relating to the academic costs charged to resident undergraduate students by general academic teaching institutions and certain reports regarding the operational costs of those institutions.
To Committee on Higher Education.

**SB 1444** by Shapiro
Relating to exempting the sale of certain property used for research and development from the sales tax.
To Committee on Finance.

**SB 1445** by Zaffirini
Relating to the transfer of a student from the school district of the student's residence to another district.
To Committee on Education.

**SB 1446** by Zaffirini
Relating to the authority of the Texas Education Agency to seek, accept, determine eligibility for, and distribute grants available for the benefit of public education.
To Committee on Education.

**SB 1447** by West
Relating to civil remedy of violations of certain municipal health and safety ordinances.
To Committee on Intergovernmental Relations.

**SB 1448** by West
Relating to the enforcement of municipal building and safety ordinances by tenants of buildings; providing civil penalties.
To Committee on Intergovernmental Relations.

**SB 1449** by West
Relating to the appointment of a receiver to remedy hazardous properties.
To Committee on Intergovernmental Relations.

**SB 1450** by West
Relating to the right of certain municipalities to maintain local control over wages, hours, and other terms and conditions of employment.
To Committee on Intergovernmental Relations.

**SB 1451** by West
Relating to limiting use of money in the Texas Enterprise Fund to recipients that provide health benefit plans.
To Committee on Economic Development.

**SB 1452** by West
Relating to a residential property insurance premium discount for certain dwellings.
To Committee on Business and Commerce.

**SB 1453** by West
Relating to the eligibility of certain individuals with a terminally ill parent for unemployment compensation.
To Committee on Economic Development.

**SB 1454** by West
Relating to the right to an expunction of records and files relating to a person's arrest.
To Committee on Criminal Justice.

**SB 1455** by West
Relating to the operation of prison diversion progressive sanctions programs.
To Committee on Criminal Justice.

**SB 1456** by Duncan
Relating to the time for bringing an action on a consumer debt.
To Committee on State Affairs.

**SB 1457** by Carona
Relating to a waiver of sovereign or governmental immunity by governmental entities that fail to make a timely payment under the Prompt Payment Act.
To Committee on State Affairs.

**SB 1458** by Seliger
Relating to the authority of the commissioners court of a county to enter into an ad valorem tax abatement agreement.
To Committee on Economic Development.

**SB 1459** by Shapiro
Relating to education initiatives for students of limited English proficiency and students at risk of dropping out of school.
To Committee on Education.

**SB 1460** by Shapiro
Relating to professional development academies designed for public school teachers who provide instruction to certain students of limited English proficiency.
To Committee on Education.

**SB 1461** by Duncan
Relating to the registration of diagnostic imaging equipment, the accreditation of diagnostic imaging facilities, and the regulation of diagnostic imaging providers; providing penalties.
To Committee on Health and Human Services.

**SB 1462** by Carona
Relating to the use of public facilities as emergency shelters during disasters.
To Subcommittee on Flooding and Evacuations.

**SB 1463** by Lucio
Relating to the provision of information regarding health care and other benefits for veterans.
To Committee on Veteran Affairs and Military Installations.

**SB 1464** by Williams
Relating to the creation of the Harris County Municipal Utility District No. 525; providing authority to impose a tax and issue bonds; granting a limited power of eminent domain.
To Committee on Intergovernmental Relations.

**SB 1465** by Lucio
Relating to refund of excess unearned premiums by insurance premium finance companies.
To Committee on Business and Commerce.

**SB 1466** by Davis
Relating to the purchase of cement by the Texas Department of Transportation.
To Committee on Natural Resources.

**SB 1467** by Davis
Relating to governmental agency contracts that involve the production of cement.
To Committee on Government Organization.

**SB 1468** by Davis
Relating to notice of expiration and price change in retail electric service contracts.
To Committee on Business and Commerce.

**SB 1469** by Davis
Relating to the redemption of real property sold at an ad valorem tax sale.
To Committee on Finance.

**SB 1470** by Gallegos
Relating to the creation of a separate local workforce development board for certain counties.
To Committee on Economic Development.

**SB 1471** by Gallegos
Relating to the composition of certain regional planning commissions.
To Committee on Intergovernmental Relations.

**SB 1472** by Gallegos
Relating to public meetings for permit applications under the Texas Clean Air Act.
To Committee on Natural Resources.

**SB 1473** by Nichols
Relating to employment services programs for certain residents receiving services from public hospitals or hospital districts.
To Committee on Health and Human Services.

**SB 1474** by Nichols
Relating to compensation for certain emergency services personnel.
To Committee on Transportation and Homeland Security.

**SB 1475** by Ellis, Van de Putte, Watson
Relating to the notice required by certain mortgage servicers before foreclosing a contract lien on certain real property; providing civil penalties.
To Committee on Business and Commerce.

TX_00002885

**SB 1476** by Ellis
Relating to the authority of a community health center to contract with or employ an optometrist or therapeutic optometrist.
To Committee on Health and Human Services.

**SB 1477** by Uresti
Relating to certain judicial findings required before a court may order a person to receive extended outpatient mental health services.
To Committee on Jurisprudence.

**SB 1478** by Carona
Relating to the authority of hospital districts to lease undeveloped real property.
To Committee on Intergovernmental Relations.

**SB 1479** by Carona
Relating to exemptions from certain mandated benefit requirements in supplemental or limited coverage health benefit plans.
To Committee on State Affairs.

**SB 1480** by Davis
Relating to regulation of electric generation capacity ownership in the electric power market.
To Committee on Business and Commerce.

**SB 1481** by Davis
Relating to energy aggregation by political subdivisions.
To Committee on Business and Commerce.

**SB 1482** by Davis
Relating to the development and implementation of a wholesale market structure for ERCOT.
To Committee on Business and Commerce.

**SB 1483** by Huffman
Relating to the creation of the Galveston County Municipal Utility District No. 76; providing authority to impose a tax and issue bonds; granting a limited power of eminent domain.
To Committee on Intergovernmental Relations.

**SB 1484** by Watson
Relating to delivery of certain services through consumer direction to elderly persons and persons with disabilities.
To Committee on Health and Human Services.

**SB 1485** by Watson
Relating to the sale of used, surplus, or salvage property and firefighting equipment by an emergency services district.
To Committee on Intergovernmental Relations.

**SB 1486** by Watson
Relating to the qualifications of special education personnel in public schools.
To Committee on Education.

**SB 1487** by Watson
Relating to the statewide plan for delivery of services to public school students with disabilities and resources for teachers of public school students with special health needs.
To Committee on Education.

**SB 1488** by Watson
Relating to a grant available to school districts to provide services to students with disabilities.
To Committee on Education.

**SB 1489** by Watson
Relating to optional dispute resolution methods for school districts and parents of students seeking or receiving special education services.
To Committee on Education.

**SB 1490** by Watson
Relating to requirements for the conduct of Texas Education Agency special education due process hearings.
To Committee on Education.

**SB 1491** by Williams
Relating to the definition of supplemental environmental projects.
To Committee on Natural Resources.

**SB 1492** by Williams
Relating to the delay of retail electric competition in the areas of the state covered by the Southeastern Electric Reliability Council and to the recovery of certain transmission costs by electric utilities in those areas.
To Committee on Business and Commerce.

**SB 1493** by Williams
Relating to certain amounts payable by the Texas Life, Accident, Health, and Hospital Service Insurance Guaranty Association.
To Committee on State Affairs.

**SB 1494** by Williams
Relating to the disclosure of certain ad valorem tax appraisal information and other confidential information.
To Committee on Finance.

**SB 1495** by Williams
Relating to the taxation of motor fuels.
To Committee on Finance.

**SB 1496** by Williams
Relating to the revocation and reinstatement of an end user number for purposes of purchasing dyed diesel fuel.
To Committee on Finance.

**SB 1497** by Williams
Relating to binding arbitration of certain appraisal review board orders.
To Committee on Finance.

**SB 1498** by Van de Putte
Relating to veteran's employment preferences.
To Committee on Veteran Affairs and Military Installations.

**SB 1499** by Van de Putte
Relating to eligibility of certain children for public school prekindergarten classes.
To Committee on Education.

**SB 1500** by Duncan
Relating to the employment of physicians by certain hospitals.
To Committee on State Affairs.

**SB 1501** by West
Relating to the eligibility of nonprofit organizations that partner with certain schools
to receive grants for agricultural projects.
To Committee on Agriculture and Rural Affairs.

**SB 1502** by Seliger
Relating to the authority of the Martin County Hospital District to employ physicians
and other health care providers.
To Committee on Intergovernmental Relations.

**SB 1503** by Seliger
Relating to the authority of the board of directors of the Dallam-Hartley Counties
Hospital District to employ health care providers.
To Committee on Intergovernmental Relations.

**SB 1504** by Whitmire
Relating to the concurrent jurisdiction of certain municipal courts in certain criminal
cases punishable by fine only.
To Committee on Criminal Justice.

**SB 1505** by Whitmire
Relating to the arrest and release on bail or other form of bond of certain criminal
defendants with a mental illness or with mental retardation.
To Committee on Criminal Justice.

**SB 1506** by Whitmire
Relating to the payment of the costs associated with certain conditions of bond.
To Committee on Criminal Justice.

**SB 1507** by Carona
Relating to motor vehicles; providing penalties.
To Committee on Transportation and Homeland Security.

**SB 1508** by Carona
Relating to the authority of certain transportation and transit authorities to enforce compliance with high occupancy vehicle lane restrictions by an automated enforcement system; providing for the imposition of penalties.
To Committee on Transportation and Homeland Security.

**SB 1509** by Carona
Relating to the Correctional Facility Capacity Commission.
To Committee on Criminal Justice.

**SB 1510** by West, Carona
Relating to the authorization to designate and the designation of a portion of Interstate Highway 20 in Dallas County as the President Barack Obama Freeway.
To Committee on Transportation and Homeland Security.

**SB 1511** by Watson
Relating to participation in, contributions to, and the benefits and administration of retirement systems for police officers in certain municipalities.
To Committee on State Affairs.

**SB 1512** by Watson
Relating to participation in and benefits and administration of retirement systems for firefighters in certain municipalities.
To Committee on State Affairs.

**SB 1513** by Watson
Relating to long-term care consumer information made available through the Internet.
To Committee on Health and Human Services.

**SB 1514** by Watson
Relating to child support arrearages and a counterclaim or offset based on certain disability payments.
To Committee on Jurisprudence.

**SB 1515** by Watson
Relating to a major events trust fund and an events trust fund for sporting and non-sporting events.
To Committee on Economic Development.

**SB 1516** by Watson
Relating to certain costs and fees in a Title IV-D case.
To Committee on Jurisprudence.

**SB 1517** by Shapleigh
Relating to the right to an expunction of records and files relating to a person's arrest.
To Committee on Criminal Justice.

**SB 1518** by Shapleigh
Relating to the regulation of tax refund anticipation loans.
To Committee on Business and Commerce.

**SB 1519** by Shapleigh
Relating to the regulation of debt collection agencies; imposing criminal penalties.
To Committee on Business and Commerce.

**SB 1520** by Shapleigh
Relating to the protection and care of individuals with mental retardation residing in certain residential care facilities.
To Committee on Health and Human Services.

**SB 1521** by Shapleigh
Relating to the regulation of certain boarding houses and assisted living facilities; providing penalties.
To Committee on Health and Human Services.

**SB 1522** by Shapleigh
Relating to the exemption of certain school districts from the drainage charge imposed by a municipal drainage utility system.
To Committee on Intergovernmental Relations.

**SB 1523** by Shapleigh
Relating to requiring satisfactory completion of a course in the Leadership in Energy and Environmental Design (LEED) Green Building Rating System as a requisite for a degree in architecture at certain public institutions of higher education.
To Committee on Higher Education.

**SB 1524** by Shapleigh
Relating to a report regarding research funds received by public institutions of higher education or employees of those institutions from pharmaceutical companies.
To Committee on Higher Education.

**SB 1525** by Shapleigh
Relating to physical education and physical activity requirements in public schools.
To Committee on Education.

**SB 1526** by Shapleigh
Relating to financial and status reporting requirements for the Border Health Institute.
To Committee on International Relations and Trade.

**SB 1527** by Shapleigh
Relating to the creation of an electronic medical record for certain individuals enrolled in the Medicaid or child health plan program.
To Committee on Health and Human Services.

**SB 1528** by Shapleigh
Relating to advertising to promote good health by certain persons who advertise food or beverages in public schools.
To Committee on Education.

**SB 1529** by Whitmire
Relating to criminal asset forfeiture, the disposition of proceeds and property from criminal asset forfeiture, and accountability for that disposition; providing civil penalties.
To Committee on Criminal Justice.

**SB 1530** by Whitmire
Relating to including playgrounds in the designation of certain places as drug-free zones for purposes of the criminal penalties that apply to certain drug-related offenses.
To Committee on Criminal Justice.

**SB 1531** by Whitmire
Relating to the definition of a playground for purposes of certain places protected from certain criminal activities.
To Committee on Criminal Justice.

**SB 1532** by Hegar
Relating to certain construction liens under the Texas Residential Construction Commission Act.
To Committee on Business and Commerce.

**SB 1533** by Hegar
Relating to persons subject to liability for residential construction defects or regulation as a builder of residential construction.
To Committee on Business and Commerce.

**SB 1534** by Hegar
Relating to county assistance districts.
To Committee on Intergovernmental Relations.

**SB 1535** by Hinojosa
Relating to nonpayment of hospitals under the state Medicaid program for certain preventable adverse events and to the reporting of occurrences of those events at certain health care facilities.
To Committee on Health and Human Services.

**SB 1536** by Uresti
Relating to preferred drug lists, including confidentiality, supplemental rebate, prior authorization, and publication requirements.
To Committee on Health and Human Services.

**SB 1537** by Van de Putte
Relating to tuition and fee exemptions at public institutions of higher education for certain military personnel and the spouses of certain deceased and missing military personnel.
To Committee on Veteran Affairs and Military Installations.

**SB 1538** by Van de Putte
Relating to establishing veterans resource centers at certain institutions of higher education.
To Committee on Veteran Affairs and Military Installations.

**SB 1539** by Carona
Relating to in-casket identification of a deceased person.
To Committee on Health and Human Services.

**SB 1540** by Carona
Relating to a nonsubstantive revision of statutes relating to railroads; including conforming amendments.
To Committee on Administration.

**SB 1541** by Gallegos
Relating to measuring, monitoring, and reporting emissions.
To Committee on Natural Resources.

**SB 1542** by Uresti
Relating to the conduct of investigations, prepayment reviews, and payment holds in cases of suspected fraud, waste, or abuse in the provision of health and human services.
To Committee on Health and Human Services.

**SB 1543** by Uresti
Relating to the establishment of the Interagency Literacy Council for the study, promotion, and enhancement of literacy in this state.
To Committee on Economic Development.

**SB 1544** by Averitt
Relating to the creation of the Prairielands Groundwater Conservation District; providing authority to issue bonds and granting the power of eminent domain.
To Committee on Natural Resources.

**SB 1545** by Averitt
Relating to health benefit coverage for children and grandchildren.
To Committee on State Affairs.

**SB 1546** by Uresti
Relating to the creation and administration of a community-based at-risk youth program.
To Committee on Education.

**SB 1547** by Ogden
Relating to claims or actions against the state for which legislative consent to a settlement or compromise may be required.
To Committee on Finance.

**SB 1549** by Van de Putte
Relating to the calculation by a school district of a high school student's grade point average.
To Committee on Education.

**SB 1550** by Carona
Relating to the regulation of certain life settlement contracts; providing penalties.
To Committee on State Affairs.

**SB 1551** by Carona
Relating to the operation and regulation of certain consolidated insurance programs.
To Committee on State Affairs.

**SB 1552** by Lucio
Relating to unenforceable restrictive covenants affecting residential homes.
To Committee on Intergovernmental Relations.

**SB 1553** by Wentworth
Relating to the creation of district courts in certain counties.
To Committee on Jurisprudence.

**SB 1554** by Gallegos
Relating to the authority of officers in certain counties to designate a person to receive fees, commissions, or costs.
To Committee on Intergovernmental Relations.

**SB 1555** by Gallegos
Relating to the conditions of employment for firefighters employed by certain airport districts; providing penalties.
To Committee on Intergovernmental Relations.

**SB 1556** by Gallegos
Relating to the promotion and marketing of alcoholic beverages.
To Committee on Business and Commerce.

**SB 1557** by Duncan
Relating to the early identification of criminal defendants who are or may be persons with mental illness or mental retardation.
To Committee on Criminal Justice.

**SB 1558** by Carona
Relating to including in the computerized criminal history system certain forensic DNA test results that indicate the person committed another offense.
To Committee on Criminal Justice.

**SB 1559** by Shapiro
Relating to the public awareness campaign promoting higher education.
To Committee on Higher Education.

**SB 1561** by Shapiro
Relating to developing a developmental education plan for students entering public institutions of higher education.
To Committee on Higher Education.

**SB 1562** by Shapleigh
Relating to contracts entered into for the employment of the chief executive officer of a public institution of higher education.
To Committee on Higher Education.

**SB 1563** by Shapleigh
Relating to the liability of a public utility that allows recreational use of land that the public utility owns, occupies, or leases.
To Committee on State Affairs.

**SB 1564** by Shapleigh
Relating to Tier One Challenge funding to support the development and enhancement of national research universities in this state.
To Committee on Higher Education.

**SB 1565** by Van de Putte
Relating to the administration of immunizations and vaccinations by therapeutic optometrists.
To Committee on Health and Human Services.

**SB 1566** by Shapleigh
Relating to the acquisition, dissemination, and use of certain geographic information system data.
To Committee on Natural Resources.

**SB 1567** by Shapleigh
Relating to creating a pilot project to reduce the need for developmental education required for certain students entering higher education.
To Committee on Education.

**SB 1568** by Davis
Relating to lapsed teacher certification due to a delay in agency processing.
To Committee on Education.

**SB 1569** by Eltife
Relating to unemployment compensation modernization.
To Committee on Economic Development.

**SB 1570** by Carona
Relating to the facilitation, analysis, and implementation of high-speed passenger rail in this state.
To Committee on Transportation and Homeland Security.

**SB 1571** by Hinojosa
Relating to the issuance of certain permits for overweight vehicles.
To Committee on Transportation and Homeland Security.

**SB 1572** by Hinojosa
Relating to land reclamation projects using tires.
To Committee on Natural Resources.

**SB 1573** by Hinojosa
Relating to the governing body of the Agua Special Utility District.
To Committee on Intergovernmental Relations.

**SB 1574** by Hinojosa
Relating to the requirement that the county clerk of certain counties prepare a written records management and preservation services plan.
To Committee on Intergovernmental Relations.

**SB 1575** by Hinojosa
Relating to the random assignment of criminal and civil cases in district courts in Hidalgo County.
To Committee on Jurisprudence.

**SB 1576** by Shapiro
Relating to an algebra instruction grant program.
To Committee on Education.

**SB 1577** by Shapiro
Relating to excused absences from public school attendance for a student diagnosed with autism spectrum disorder to attend a health care appointment.
To Committee on Education.

**SB 1578** by Shapiro
Relating to service records of professional staff employed by school districts.
To Committee on Education.

**SB 1579** by Harris
Relating to the procedure for appointment of counsel for indigent defendants.
To Committee on Criminal Justice.

**SB 1580** by Harris
Relating to the imposition and use of certain court costs for breath alcohol testing programs.
To Committee on Criminal Justice.

**SB 1581** by Harris
Relating to the appointment of counsel to represent an indigent defendant in a capital case and to the reimbursement of certain expenses incurred by appointed counsel.
To Committee on Criminal Justice.

**SB 1582** by Harris
Relating to the criminal penalty for capturing, transporting, or transplanting white-tailed or mule deer without a permit.
To Committee on Agriculture and Rural Affairs.

**SB 1583** by Harris
Relating to the trapping and transport of surplus white-tailed deer.
To Committee on Agriculture and Rural Affairs.

**SB 1584** by Harris
Relating to the penalties associated with violations of laws pertaining to a deer breeder permit.
To Committee on Agriculture and Rural Affairs.

**SB 1585** by Harris
Relating to the approval of a biologist for a permit to trap, transport, and process deer.
To Committee on Agriculture and Rural Affairs.

**SB 1586** by Harris
Relating to the establishment of a shared database for deer breeder reporting requirements.
To Committee on Agriculture and Rural Affairs.

**SB 1587** by Van de Putte
Relating to a uniform and statewide 9-1-1 emergency services fee on the retail sale of prepaid wireless telecommunications services to consumers.
To Committee on Business and Commerce.

**SB 1588** by Ogden
Relating to directing payment, after approval, of certain miscellaneous claims and judgments against the state out of funds designated by this Act; making appropriations.
To Committee on Finance.

**SB 1589** by Ogden
Relating to the reporting of unclaimed property.
To Committee on Finance.

**SB 1590** by Ogden
Relating to the functions performed by the comptroller in connection with applications and agreements under the Texas Economic Development Act.
To Committee on Finance.

**SB 1591** by Ogden
Relating to the length of time certain property acquired by a charitable organization to provide low-income housing may be exempted from ad valorem taxation.
To Committee on Finance.

**SB 1592** by Fraser
Relating to assignment of security interests in certain collateral.
To Committee on Business and Commerce.

**SB 1593** by Seliger
Relating to agreements for limitations on appraised value under the Texas Economic Development Act.
To Committee on Economic Development.

**SB 1594** by Seliger
Relating to suspension of a driver's license for failure to pay a civil penalty imposed by the Texas Ethics Commission; providing penalties.
To Committee on State Affairs.

**SB 1595** by Seliger
Relating to direct payment by a health or automobile insurer of physicians and health care providers.
To Committee on State Affairs.

**SB 1596** by Watson
Relating to a title insurance company affidavit as a release of lien.
To Committee on Business and Commerce.

**SB 1597** by Watson
Relating to the analysis of greenhouse gas emissions associated with a metropolitan planning organization's long-range plan.
To Committee on Natural Resources.

**SB 1598** by Watson
Relating to authorizing a power of attorney for a caregiver of a child.
To Committee on Jurisprudence.

**SB 1599** by Watson
Relating to the disclosure of criminal history record information to the Court Reporters Certification Board.
To Committee on Jurisprudence.

**SB 1600** by Watson
Relating to the creation of a database to track specialized technology research projects conducted by public universities, public university research facilities, and other state institutions.
To Committee on Higher Education.

**SB 1601** by Watson
Relating to sanctions for public schools designated academically unacceptable.
To Committee on Education.

**SB 1602** by Shapleigh
Relating to creating a microloan guarantee program using funds appropriated to the Texas Enterprise Fund.
To Committee on Economic Development.

**SB 1603** by Shapleigh
Relating to requiring financial disclosure concerning reports prepared by public institutions of higher education for other entities.
To Committee on Higher Education.

**SB 1604** by Shapleigh
Relating to voting system requirements.
To Committee on State Affairs.

**SB 1605** by Shapleigh
Relating to the use of federal estate tax provisions in determining the application of the Texas estate tax to certain transfers of property and to the allocation of Texas estate tax revenue.
To Committee on Finance.

**SB 1606** by Eltife
Relating to the regulation of industrialized housing and buildings.
To Committee on Education.

**SB 1607** by West
Relating to the issuance of a search warrant for a blood specimen from certain persons arrested for certain intoxication offenses.
To Committee on Criminal Justice.

**SB 1608** by West
Relating to the punishment for certain conduct constituting the offense of official oppression and to the statute of limitation on prosecution of that conduct.
To Committee on Criminal Justice.

**SB 1609** by Hegar
Relating to the control of access to state highways by the Texas Department of Transportation.
To Committee on Transportation and Homeland Security.

**SB 1610** by Hegar
Relating to liability of vehicle lessees for unpaid tolls.
To Committee on Transportation and Homeland Security.

**SB 1611** by Davis
Relating to the cancellation of a health benefit plan on the basis of misrepresentation or a preexisting condition; providing penalties.
To Committee on State Affairs.

**SB 1612** by Lucio
Relating to the provision of information by health and human services agencies to assist children diagnosed with velocardiofacial syndrome.
To Committee on Health and Human Services.

**SB 1613** by Lucio
Relating to establishing an Early Childhood Behavioral Consultation Grant Program.
To Committee on Health and Human Services.

**SB 1614** by Wentworth
Relating to the requirement that certain orders closing, abandoning, or vacating a county road be filed and indexed in the deed records of the county where the road is located.
To Committee on Transportation and Homeland Security.

**SB 1615** by Wentworth
Relating to the authorization of airport authorities and the issuance of bonds and the exercise of eminent domain by the authorities.
To Committee on Transportation and Homeland Security.

**SB 1616** by Wentworth
Relating to the fees for certain license plates.
To Committee on Transportation and Homeland Security.

**SB 1617** by Wentworth
Relating to the titling and registration of certain motor vehicles.
To Committee on Transportation and Homeland Security.

**SB 1618** by Wentworth
Relating to the election of the governing body of certain municipalities.
To Committee on State Affairs.

**SB 1619** by Wentworth
Relating to the applicability of certain municipal home-rule charter provisions on actions relating to the issuance of public securities by a home-rule municipality.
To Committee on Intergovernmental Relations.

**SB 1620** by Wentworth
Relating to the regulation of property tax lenders.
To Committee on Business and Commerce.

## RESOLUTIONS OF RECOGNITION

The following resolutions were adopted by the Senate:

### Memorial Resolution

**SR 442** by Nelson, In memory of Mike Rambo.

### Congratulatory Resolutions

**SCR 50** by Hinojosa, Recognizing Arturo E. Guerra, Jr., for his contributions to the justice system in Texas.

**SR 443** by Uresti, Recognizing James E. Love for his contributions to the field of education.

**SR 444** by Uresti, Recognizing Clarence A. Johnson for his contributions to the field of education.

### Official Designation Resolutions

**SR 324** by Ellis, Recognizing March 17, 2009, as Teach For America Day at the Capitol.

**HCR 87** (Jackson), Declaring March 10, 2009, Brazoria County Day at the State Capitol.

## ADJOURNMENT

Pursuant to a previously adopted motion, the Senate at 6:45 p.m. adjourned, in memory of John Andrew Collins of The Woodlands and Matthew Virgel of Greenville, until 11:00 a.m. tomorrow.

---

## APPENDIX

---

## COMMITTEE REPORTS

The following committee reports were received by the Secretary of the Senate in the order listed:

March 17, 2009

ECONOMIC DEVELOPMENT — **SB 576**, **SB 741**

HEALTH AND HUMAN SERVICES — **CSSB 87**, **CSSB 277**, **CSSB 345**, **CSSB 346**, **CSSB 476**, **CSSB 479**, **CSSB 531**, **CSSB 584**

## RESOLUTIONS ENROLLED

March 16, 2009

**SR 315, SR 417, SR 418, SR 419, SR 420, SR 421, SR 422, SR 423, SR 424, SR 425, SR 426, SR 427, SR 428, SR 429, SR 430, SR 431, SR 432, SR 433, SR 434, SR 435, SR 436, SR 437, SR 439, SR 440, SR 441**

TX_00002901
JA_005482

TX_00002901



# TWENTY-SECOND DAY
### (TUESDAY, MARCH 17, 2009)

# ADDENDUM
### (Senate Bill 362)

## EIGHTY-FIRST LEGISLATURE

## REGULAR SESSION

existing laws haven't been enforced with the rigor–or, at least, the money–that we've all been led to believe. I suppose this debate has provided a service if all it's done is help establish once and for all that the Attorney General has not, in fact, spent about a million and a half of a grant battling voter impersonation. I know if there's anything we all share in this Chamber, it's a hope that we'll get double-checked, typo-free data about what cases are being investigated, what's being spent on them, and where they're occurring–even if it means fewer boisterous political proclamations about epidemics. So, let's be clear about the record: According to the witnesses, voter impersonation hasn't had any impact on any election, at any level, at any time, in any part of this big state. But none of that matters today. Today isn't about proof. It's not about the law. Today is about politics. We can, and we will, shoot at this thing until we put holes in the holes. But that doesn't change the numbers in this room. And it really doesn't change that one potent question on every political poll that gets waved around like a DNA test in a murder trial: Should people have to show photo identification before they vote? Well, let's take that head-on. It's a very simple question. And surely a simple question would have an easy and simple answer, right? Well, every one of you who's tried to fix schools, fix health care, fix property taxes, fix tuition, or fix traffic knows that just isn't so. And no amount of hoping or guessing is going to turn this bill into an adequate answer to this question. I wish this bill did what some say it does. We all do. Every single one of us on this floor wishes we could end all voter fraud and maintain full access to voting without costing the state or the counties a single dime. But if that bill exists, Members, this one sure isn't it. This one isn't it. So, let's talk for a minute about what we'd be working on if we were actually serious about this. Just for fun, let's think about solutions that aren't partisan gut-checks but actually go after the cheaters without harming legitimate, conscientious voters.

— We could, and we should, increase penalties on every criminal on every side who tries to influence the outcomes of our elections.

— We could seal shut whatever loopholes people have found to get documents they need to register falsely.

— We could empower election judges to crack down on people they know are cheating without harming those who aren't.

— We could follow the lead of some counties and do a better job of keeping our voter rolls clean.

— We could develop bold, innovative strategies that expanded registration even while imposing new voting restrictions.

— We could even have a serious, bipartisan effort to figure out how the state–which currently bears the full burden of providing voter ID in the form of a voter registration certificate–can add photo identification to its responsibilities, and how it can pay for it as cheaply as possible.

I favor all of those things. I'd imagine that just about all of you in this room do. We want to stop fraud wherever it exists. We all believe in the sanctity of the voting booth. So, how is it possible that voter ID is not just divisive, but wrenching? Because, in the end, I really don't think it's about the policy of providing identification before voting. This has risen to the top of everything–over property tax relief, over the economic crisis, over health care, over education reform, over tuition

and university funding–because it's not like those things. Those are policy questions. This is a political bill being considered in a political place. And there's no clearer demonstration of how obviously political, or maybe politically obvious, this bill is than the fiscal note. Last week, the folks flew in from other states to talk about their voter ID programs, and they couldn't stop talking about what a great job they did educating people about what the law meant. They didn't just brag about spending money; they used it in court to justify their actions. But last week, we were told we didn't need any money. And then yesterday, we're told there's now a $2 million rider for the broad label of "voter education." Well, I suppose that's some recognition of this bill's failings. But it also highlights those failings. It demonstrates the expediency with which this is pursued–no fiscal note, but it now costs $2 million? And it reaffirms the lack of data. Why not $1 million? Why not $5 million? What does a real, appropriate effort cost? And, of course, it also shows the hidden cost if we're wrong. People won't be educated on this new obligation. And, of course, that's just the Secretary of State's office. What about DPS? DPS told us last session that by giving a free photo identification card to anyone who claims they want it for voting, they would lose $671,000 a year, more than $1.3 million per budget, and more than $4 million every six years out of our highway fund. The methodology's in that bill and everything:

   – More than a half-million people have these ID cards;
   – At least half of those would use this voting exemption to avoid having to pay for them;
   – Those folks pay an average of $15 per card;
   – And you have a fiscal impact of negative $4 million through 2012.

Folks, look it up–House Bill 218, 80th Session. It's really quite convincing. But this year, the fiscal note informs us that while "there could be a revenue loss" due to the voting exemption, "it is unknown how many people would make the request, and therefore unknown the amount of revenue loss that could occur." Members, that is not an answer. In fact, it speaks to the other problems–we don't know how many should or will need the ID. And, of course, as has been pointed out, nothing was said about the cost of submitting this for preclearance under the Voting Rights Act. This ignorance of basic facts is particularly troubling given Texas has a special burden on voting rights issues. The state earned it with a terrible legacy of intimidation, suppression, and outright violence that hovers darkly over our history. Now no one, not one of you in this Chamber, has any desire to go back to those terrible times. I know you love Texas and its people too much to even consider it. But I wonder if you've really studied this bill and made sure that it won't turn us back toward the past. I keep looking and asking and hoping for any data that proves this bill won't harm the very voters who once were explicitly targeted by laws and thugs, those treated so shamefully in a past that's far more recent than the transgressions inside Box 13. No one, it seems, knows just what this bill could mean to people who are poor enough, old enough, or just plain disconnected enough that they haven't needed to get a driver's license. No one tells us how many Texans don't have a photo ID, what those millions of people may look like, or whether they'll be able to meet this bill's requirements. And no one has shown a single study or can say for sure just how common it is to have all of these shards of paper that we in this Chamber seem to take

for granted. No one, frankly, has demonstrated a level of thought and care that gives me any confidence that this bill stands a chance of holding up outside these partisan confines and partisan rules. And that should be troubling to all of us. Because if I'm wrong, and if the will of this Chamber is somehow upheld, then this bill will have consequences. And, believe it or not, those consequences will have nothing whatsoever to do with politics, games, or power. The consequences will play out on decent, hard-working, patriotic citizens who just want to vote but can't find time for yet more hurdles and burdens, let alone those imposed on them by their own government. We all talk about the sanctity of the voting booth. Well, it isn't the registration card, the judge, the rulebook, or even the ballot itself that makes it sacred. It's the person. It's you and me. It's our constituents. In the end, this bill targets far too many of us by declaring a crisis that doesn't exist and adding new burdens that for some will be expensive and difficult. This bill makes it harder for honest people to vote. It's wrong, no matter what happens today. Thank you, Mr. President.

**Senator Van de Putte:** Voting is a fundamental right, the right to choose our leaders and to choose the direction of our state and our nation, and I would hope before we place any additional burden on Texans to exercise that right that we would have some proof that the problem of voter impersonation actually exists. We know that this problem does not exist in Texas, but some of my colleagues are determined to proceed with this misguided effort that will have the effect of disenfranchising many Texans. I don't think my Republican colleagues really want this fight, or want to disenfranchise voters in our communities, but it's the effect of a law, and not intentions, that carry the weight of discrimination. Make no mistake, voter ID laws are part of a national partisan agenda designed to suppress voters–women, the elderly, minorities, and college students who tend to vote more Democratic. In Texas, however, the history of vote suppression began long before 2009, and it didn't end when the poll tax was abolished or when required literacy tests were discontinued by law. In November 1964 letters were sent to residents in the Rio Grande Valley in English and Spanish warning them to stay at home because if they went to the polls they "could get arrested for interfering with the election judge." That same year, the *Houston Post* reported on election day that handbills had been distributed in Black and Hispanic neighborhoods telling voters that police would be stationed at polling places to arrest voters who had outstanding traffic tickets, parking tickets, or owed child support payments. In 1982, when Karl Rove was running Bill Clements' campaign, Secretary of State David Dean sent local election officials a "Felons List" of voters to be purged from voter rolls. But a federal court forced him to drop the effort when the list was found to include eligible voters, including one State Representative candidate. On election day in Dallas that same year, 33 African American precincts ran out of ballots as voters waited up to four and a half hours in the rain to vote. That same year in Dallas, large black and red signs posted in those precincts by five Republican state judges that read: Do not remove this sign by order of the Sheriff of Dallas County. You can be imprisoned for, and then listed six "voting fraud" offenses. These are just a few examples of voter suppression tactics designed to scare people away from voting in areas with heavy Democratic turnout. These same suppression tactics used in Dallas in 1982 are sadly still being used today. In 2005-2006, Attorney General Abbott launched a wide-reaching voter fraud campaign that included training

materials with images of African Americans. He netted very few prosecutions, and none that would be solved by this voter ID bill. Instead, the vast majority of those prosecuted were older Hispanics and African Americans accused of hyper-technical violations of a new mail ballot law. Sadly, a vote suppression agenda still exists in 2009, and we must put this voter ID bill in the context of that history as we defend all Texans' right to vote. We may not win the battle in the Senate, that was predetermined the day we set this issue and no other pressing challenge as a "special order." I hope that this voter ID bill as written will never become law.

**Senator Gallegos:** Members, two years ago I came back to Austin against my doctor's orders to stand together with my colleagues to block the passage of voter ID. And on the last day when we heard the bill and Lieutenant Governor told me that the bill would not be brought up, I told you that I would fight this bad piece of legislation at any cost. And I told you that I'd be back if this bill came up again, and, well, here I am. It's a shame, Members, that it has come to this day. And it's a sad day in Texas history when we are wasting our taxpayers' time and money on a non-issue. Texas is first in the country for uninsured people, home foreclosures are skyrocketing, and thousands of young Texans and their families are trying to figure out how to pay for college education. People are still living out of trailers in my district and several of your districts since Hurricane Ike. And, Members, you know, Texans have some real problems to deal with, but voter ID legislation does not solve any of them. Let me read to you what was an editorial, this Sunday's *Chronicle,* and this coming from the *Houston Chronicle,* not me. Texas currently must show a voter registration card or other ID at the polls. This measure would add a photo ID or other alternatives. Democrats call requirements a tactic to intimidate the elderly, the disabled, the poor, and minorities who are less likely to vote Democratic into staying away from the polls, thereby shaving off a few points from the total vote. The Republicans call it guarding against voter fraud and impersonation. But on a larger scale, it seems to boil down to an illustration that Republicans in Texas and throughout the United States are fearful for their future political viability and are desperately trying to regain a power and an identity that has been severely eroded of late. If that's the case, Members, and there are better, more constructive ways to begin in recouping lost ground than throwing their weight around, especially on the issue with as little merit as this one. Chandler Davidson, a Rice sociology professor and an expert on minority voting rights, told the *Chronicle* that the only aspect of voter fraud that a photo ID addresses is voter impersonation. The Republicans are offering a solution for a problem that does not exist, he said. And there is no credible evidence to show that there is a problem in Texas or elsewhere, end quote. Colleagues like my colleague Leticia Van de Putte said that General Greg Abbott spent $1.4 million in a crusade against an epidemic of voter fraud that has yet to see anyone convicted of any voter fraud, $1.4 million. Wouldn't Texans like to see this money and, used more wisely, or at least one conviction come out of this? At least one conviction, Senator Fraser. Now that we are voting on a passage of a bill that no one has seen a fiscal note, until we've seen $2 million that all of a sudden come in, which is sure to cost hundreds of thousands, if not millions, but really, who knows? Who knows? I mean, when you mandate the voters of this state to have a photo ID, I mean, somebody's going to have to pay, somebody's going to have to pay something. And if you mandate Texans to go get a

photo ID, then what is the state's responsibility? That's a big question, Members. If you're going to mandate for a Texas voter to get a photo ID, then the State of Texas is going to be responsible for that person on how to get an ID, whether it's free, whether they have to go to a DPS center, and, however it is. Somebody's going to have to pay on both sides. On the voter side, I call it a poll tax. You know, Members, I think it's time to stop wasting Texans' money. The right to vote is the most cherished right that a citizen could have. And in our nation's history, the right has been denied to many. Just last week, we heard of Leticia's story that there is, this was not an uncommon practice. The fight to open the doors of voting booth, it was a long struggle, and I thought we were past this. Members, let me, you know, some of the fears that I've heard about voter impersonation and somebody going to the polls and saying who they're not, and trying to impersonate somebody, I mean, we've got illegal immigration coming from Canada, from Europe, from Asia, and from Latin America. You know, I would, you know, let me walk you through of some of the fears that I've heard on the other side. You know, you got somebody, let's say, for example, from Mexico, coming across the border, it's going to take him or her, oh, at least, you know, maybe two weeks to get across. And here she's got to go through the brush, through the mesquite, eating Spam and sardines, and crackers, water, whatever, you know, whatever they can drink. And in going through that for at least a month or two months to get to Houston or Dallas or San Antonio, after two months, I mean, blood, sweat, going through that, fields and all that, here's what the fears that I'm hearing on the other side, you think that that person is going to wait for the first vote, first election, and go to the polls and try to vote and try to impersonate a voter. I don't think so. I mean, just going through all of that blood, sweat, and tears, just to go stand in line and try to impersonate a voter. You know, when I first got elected to the House in '91, you know, I went to the floor. The only ID I had was my driver's license, and when I got to the door, they stopped me and asked me, well, where are you going? And I said, well, I'm going to my seat there in the House of Representatives, my seat's inside. Well, they made me wait. They made me wait until, that I said, until they confirmed that I, you know, who I was. And then, finally, with my family with me, they let me go in. And I, you know, I said, well, it's 150 Members, I'm new. Didn't think anything about it, and just went to my seat. Well, four years later, I got elected to the Senate. And I, you know, here I am with my family coming to the Senate door. The only ID I had on me was my driver's license. I had to wait. They said, where are you going? I'm going to my seat on the Senate floor, that I got elected. You know, and they said, well, wait a couple of minutes. So, I had to wait for them to confirm that I said, who I said I was. You know, as far as ID, that the picture on my driver's license was the picture of the ID that they had in me in the back. So, you know, if they're going to stop me at the door after I got elected in the House and I got elected in the Senate, and they're asking me who I am, if I stand on who I am, then they got to confirm me here, right outside these doors. Then, how do you think those people are going to feel out there? When they know they're U.S. citizens and they're going to go to the voting booth and the election judge is going to tell them, well, we need, you know, this ID, this ID, and this ID. Well, obviously, when you're going to challenge somebody and tell them they are not who they say they are, and they know that they're a U.S. citizen, you know, you might get some violence. I don't know. When

TX_00001157
JA_005488

you challenge me, I'm going to challenge you, you know, if I know that I'm a U.S. citizen. And then, I mean, how they going to react. You know, Senator Fraser, the only amendment that you left off was back in the Jim Crow days, and if you're going to have, if you're going to do voter suppression, do it right. You know, put German shepherds and a fire hose there, and if I go, if somebody goes there and they're impersonating a voter, well, then, throw the dogs on them and, you know, throw the hose on them. You know, that's what this bill is all about. You know, I think that when you really look at it, it's voter suppression any way you call it. Like Leticia said, back to the Jim Crow, George Wallace days. It's a shame. It's a shame that we got down to this. And, you know, I hope when you vote, Members, when you vote on this bill, just think about that. Think about that. When they stopped me here at the door, not only in the House but in the Senate. Thank you.

**Senator Hegar:** Thank you, Mr. President. Members, I just wanted to make a couple of points because I've heard several of the statements earlier today, and I know when we had the very long hearing the other night, we had a lot of numbers being thrown out about the amount of expenditures from the Attorney General's office, the number of convictions, the number of guilty pleas, because we've talked about how difficult it is to prosecute cases of voter fraud. We all talked about how difficult it was, witnesses, all the witnesses were consistent on that point, and I just wanted to make sure everybody was clarified that the actual number of expenditure wasn't the 1.4 million, it was actually 697,000, and that's for 30 individuals, or 30 indictments. Of those 30 indictments, 23 have either been a guilty plea or a conviction. One of those convictions, as I mentioned the other night, and I forget at what point in the night I mentioned it, was a constituent of mine from Port Lavaca where actually the outcome of the election was changed because of the fraud that went on. And so, I wanted to make sure we all were aware of those numbers and make sure that we heard all those, because I would think it's important, the record was set straight the other night, and I think it's important that we make sure it's set straight as well as today. I also wanted to mention that sometimes, try being a Member in my shoes. A Member who, Dean, you entered the Senate, the House many years ago, you looked a little bit younger, maybe had a little full hair like I do today. And I tell you, when I go to the Senate Chambers, there's been times that Rick has had to correct people, said, no, he's actually a Senator, he does get to walk onto the Senate floor. The other day I went to the House and I got stopped because the guy said, wait, who are you? You're going onto the House floor. You don't have permission to go? Well, I'll get out my ID and I'll show you, or you just take my word, I'm Senator Glenn Hegar. So, sometimes, the youthful look can have those problems as well. Also, Dean, I'll let you know, I didn't vote for President Jimmy Carter. Actually, I was too young. I wasn't able to vote in that election. So, I just wanted to make sure. I didn't know if anybody else would tell you who voted back then, but I didn't. I didn't have the opportunity. So, my point is just making sure the record's straight. So, with that, thank you all, Members. I just think it's important that we know the exactual [sic] number of convictions that have occurred. There has been 23, and one of them was a constituent of mine who actually did change the outcome of that election. Thank you.

**Senator Shapleigh:** Thank you, Mr. President. Members, I want to share with you the story of David Iglesias, the former Republican U.S. Attorney for New Mexico, because I think his story and his firing give context and reveal to us here today the real story behind what you, Senator Fraser, call voter ID. Iglesias was appointed by George Bush in August of 2001 and became embroiled in one of the largest scandals ever to hit the United States Department of Justice. Soon after his appointment, Iglesias came under intense pressure from Pete Domenici, Heather Wilson, the Department of Justice, and White House to take action on alleged voter fraud in New Mexico. In 2004, Patrick Rogers, a Republican operative in New Mexico, sent an E-mail to Iglesias that said this, quote, I believe the voter ID issue should be used at all levels, federal, state legislative races. You are not going to find a better wedge issue. Soon thereafter, based on E-mails, calls, and letters from DOJ, Republican officeholders and Republican Party, David Iglesias did the right thing. He set up a task force in 2004 to investigate the scope of voter fraud in New Mexico. He included local, state, and federal law enforcement and both Democratic and Republican officials. After reviewing over 100 cases, he and his task force concluded there were no prosecutable cases of voter fraud and refused to bring charges where there was no evidence to support it. In a PBS interview, David Iglesias said he was not willing to engage in unlawful activities, those were his words, to prosecute cases that just weren't there. Let me emphasize this point, David Iglesias was a loyal Bush appointee, a Republican who had previously run for statewide office and could not find evidence of voter fraud in the State of New Mexico. He let DOJ and the White House know that he would not prosecute these cases because they did not exist, and for that, David Iglesias was fired. His determination to stick to the law and his values got him fired. Later, when asked how he would characterize using United States Attorneys to benefit a particular political party at the polls, Iglesias said this: It's reprehensible. It's unethical. It's unlawful. It very well may be criminal. And I know it's a marked departure from prior administrations, both Republican and Democratic, who understood that U.S. Attorneys, as chief federal law enforcement officials, have to stay out of politics. When asked why he thought he was fired, Iglesias said this, for illicit, partisan political reasons, specifically, not coming up with voter fraud cases, number 1, and number 2, not rushing forward indictments involving prominent Democrats during the election cycle. When asked about the motivations of those pushing voter fraud indictments, he said that their motivations, quote, were clearly partisan. There appears to be a growing body of evidence that suggests there's voter suppression going on throughout the country. The investigation into the firing of David Iglesias and eight other U.S. Attorneys continues to this day. Just two weeks ago, Karl Rove, who is actively involved in these U.S. Attorney cases, agreed to testify before Congress under oath regarding his role. And, coincidentally, the first witness for the proposition in Texas that we need a voter ID bill was Hans von Spakovsky, who himself was part of that DOJ. Fast forward to last session, when House Bill 218, the predecessor to this bill, was passed in the House. In a column he wrote at that time from the *Quorum Report*, Royal Masset, who for 15 years was the political director of the Republican Party of Texas, stated in writing this, voter ID is a direct descendant of poll taxes and of allowing only white male property owners to vote. In its effect, it is racist, barbaric, antidemocratic, and contrary to everything that

made America great. Mr. Masset said that requiring photo IDs could cause enough of a drop-off in legitimate Democratic voting to add 3 to 5 percent to the Republican vote. And, really, that's what this bill is all about. In 2005 the Census announced that Texas has joined Hawaii, New Mexico, and California as the only majority-minority states. By 2035, Texas' state demographer predicts that Hispanics will make up the majority ethnic group in Texas. In my district, this bill is about Maria Lopez, 70 years of age, who cleans offices. She's never had a driver's license, never needed one. And when she is asked for one, or a birth certificate, or a pilot's license, or any of the documents listed in Senate Bill 362, she won't have them, because of the time and expense to go get one are too much for a lady who works 60 hours a week at minimum wage. So, she won't vote. And keeping her home is what this bill is about. As Mr. Masset stated yesterday in *The Dallas Morning News,* Hispanics should take this personally because it is aimed at them. This bill is about Republicans scaring off just enough elderly, disabled, Blacks, and Hispanics to stay in power four more years, plain and simple. Thank you, Mr. President.

**Senator Williams:** Thank you, Mr. President. Members, today I stand in support of Senate Bill 362. In the course of this debate, there have been many concerns that have been raised about the voter impersonation and whether or not that really occurs. Many of you, in fact most of the folks who have spoken so far today would argue that voter impersonation does not occur. I disagree. I have here in my hand four newspaper articles, two from *The Monitor* in Progreso about a story in Progreso and another from the *Rio Grande Guardian.* These four newspaper articles that are dated March 9th, March 14th for *The Monitor* and March 10th and March 16th for the *Rio Grande Guardian,* reference voting irregularities in the Progreso Independent School District with a school board election. This prompted me to make an open records request of the Attorney General, and I have as a result of that open records request signed, notarized affidavits demonstrating that voter impersonation does in fact occur in Texas. Following the May 4th, 2008 election conducted in the Progreso Independent School District, several citizens and noncitizens attested that various individuals had perpetrated numerous forms of voter fraud including voter impersonation. I'd now like to read some excerpts from these affidavits, these sworn affidavits, and I'm going to introduce them into the record. The first is from Mr. Torres and in his affidavit he attests to the following:

> On Monday, April the 28th, 2008, I was brought to the Progreso Independent School District election site by Lorenzo Castillo, who handed me a voter registration card to participate in the elections. He stated that they would pay me to go vote for Juan Ramos, Michael Vela, and a David Hernandez. I proceeded to go in and cast the vote with the registration card that belonged to Alfredo Medrano. After I went in to vote, I was paid $10 by Jose Guadalupe Vela and at this time, Mr. Lorenzo Castillo took the card from my possession.

We also have an affidavit from Abigail Infante and Maricela Infante who were both poll watchers. In their affidavits, these women both attest that on April 28th around 2:00 p.m. a voter by the name of Jimmy Vasquez went in to vote with a voter registration card in the name of Juan Pablo Maldonado. Priscilla, the clerk, told him, you're not Juan Pablo Maldonado, you're Jimmy Vasquez. Then he answered, yes, I

am. He was asked to present ID and he turned around and walked out. Members, but for the fact that this poll worker recognized Mr. Vasquez and realized that he was not who he claimed to be, he would've been allowed to vote and his vote would've counted in this election. There's another affidavit by Jessica Rangel, and in her affidavit she attests that Mr. Guadalupe Vela asked her to recruit a friend to vote and that her friend would be provided with a voter registration card. And Jesus Vasquez in his affidavit attests that he did not exercise his right to vote in the Progreso School Board elections on May 10th, and that someone used his identity to vote in the election and appeared in person at the early voting site. And finally, an affidavit from Andrea Peña and in her affidavit, she attests:

> Mr. Oscar Vela forced me to vote with another person's voter registration card, when I very clearly told him I could not vote because I am not a citizen of the United States. He said it wasn't a problem. All I had to do was go to the park in Progreso, and he would give me a voting card. I told, he told me that if I helped him, he would fix my legal problems, referring to how he'd help me so that they wouldn't take away my children. When I arrived at the park, he gave me the card of Mrs. Maria de los Angeles Martinez and proceeded to tell me that someone inside there was waiting to help me and that I shouldn't forget the names he had given me. When I entered the voting building, a young man who was one of those acting judges entered the booth with me and voted for me.

Members, these affidavits demonstrate that in-person voting fraud is very real. It happens. It's happened just a few weeks ago, or a few months ago in the Progreso Independent School District election. These affidavits are also supported by the testimony of Mr. Ed Johnson, who's an employee of the Harris County Tax Assessor-Collector and a voter registrar, Leo Vasquez. If you will recall, last week Mr. Johnson testified that a variety of voter fraud had occurred in one of our state's most populous counties, including the casting of vote by people who were not alive. Not only does voter fraud, in-person voter fraud occur, but Texas has a legitimate interest in deterring and detecting this voter fraud. As Justice Stevens remarked in the majority opinion in *Crawford v. Marion County,* there is no question about the legitimacy of the importance of our state's interest in counting only the votes of eligible voters. The interest in orderly administration and accurate recordkeeping provide a significant justification for carefully identifying all voters participating in the election process, Members, and ladies and gentlemen who are with us here today, that we as elected officials have a duty to protect the integrity and legitimacy of representative government. As the report of the Commission on Federal Election Reform that was chaired by former President Jimmy Carter and former Secretary of State James Baker observed, Americans are losing confidence in the fairness of elections. And while we do not face a crisis today, we need to address the problem of our electoral system. The electoral system cannot inspire public confidence if no safeguards


Tuesday, March 17, 2009          SENATE JOURNAL                    A-11

exist to deter or detect fraud or to confirm the identity of voters. We must have an
electoral system that inspires confidence. We must prevent fraud and we must prevent
the disenfranchisement of legitimate votes. Members, I ask you to join me in voting
"Aye" for Senate Bill 362. Mr. President, I would also move that my remarks be
reduced to writing and placed in the record. And I would like to include, as a part of
my remarks, these sworn affidavits that I made reference to in my remarks.

# Exhibit #1

May 12, 2008

I, Simon Torres, SS#                , P.O. Box 704, Progreso, Texas, and am over the age of eighteen and am of sound mind and state the following:

I participated in the Progreso School ISD School Board Election held on May 10, 2008.  I state that on Monday, April 28, 2008, I was brought to the Progreso ISD School election site by Lorenzo Castillo who handed me a voters registration card to participate in the elections.  He stated they would pay for me to go vote and vote for Juan Ramos, Michael Vela and David Hernandez.  I proceeded to go in and cast a vote with the registration card that belonged to Alfredo Medrano.  After, I went in to vote I was paid $10.00 by Jose Guadalupe Vela and at this time Mr. Lorenzo Castillo took the card from my possession.



Simon Torres

State of Texas                §
County of Hidalgo            §

Before me, a notary public, on this day personally appeared Simon Torres, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statement therein contained are true and correct.

BLAS MEDRANO
Notary Public, State of Texas
My Commission Expires
February 08, 2011

Notary Public Signature

# Exhibit #2

I, Maricela Infante, date of birth 10/04/62, reside in Progreso, Texas and am of sound mind and over the age of 18 and state the following:

I was appointed as a poll watcher for the Progreso ISD School Board Election by the Candidate Eleazar Perez, Jr.

- ❖ On April 28, 08 on or about 8:30 am, Mrs. Maria Isabel Vela was allowed to enter and vote without providing an ID or a voter registration Card..
- ❖ On April 28, 2008 on or about 10:00 a.m. Mr. Guadalupe Vela was allowed to enter and vote without providing an ID or a voter registration card.
- ❖ On April 28, on or about 2:00 pm a voter by the name of Jimmy Vasquez walked in to vote, but with a voter registration card with the name of Juan Pablo Maldonado. Priscilla, the clerk, told him he was not Juan Pablo Maldonado. When the voter was asked for an ID, he turned around and walked out. Mr. Juvencio Rocha, the presiding judge told Priscila, the clerk, to confiscate the voters registration card. The election clerk kept the voter registration card.
- ❖ Various people were allowed to vote with an expired voter registration card and were not asked to provide an ID.
- ❖ As a poll watcher I continued to observe the election judge and other election staff stand close by the voting machines while the voters voted. They were being intimidated to vote their way.

On this 12ᵗʰ day of May, personally appeared Maricela Infante and states that the above is true and correct.

_____
Maricela Infante

I, Abigail Infante, date of birth 01/03/86, reside in Progreso, Texas and am of sound mind and over the age of 18 and state the following:

I was appointed as a poll watcher for the Progreso ISD School Board Election by the Candidate Eleazar Perez, Jr. held on May 10, 2008.

❖ On April 28, 08 around 8:30 am, Maria Isabel Vela came in to vote without showing an ID or voter registration card.
❖ On April 28, 2008 around 10:00 am, Guadalupe Vela voted without showing an ID or voter registration card
❖ On April 28, 2008 around 2:00 pm, a voter by the name of Jimmy Vasquez went in to vote and when he showed his voter registration card, Priscilla told him "Your not Juan Pablo Maldonado, your Jimmy Vasquez" And then Jimmy answered "Yes, I am" then Jerry Jasso Jr. asked him for an ID and Jimmy walked out.  Then Judge Juvencio Rocha told the clerks to confiscate the voter registration card.
❖ On May 5, 08 the clerks were asking some voters to show both and ID and voter registration cards.
❖ As a poll watcher I continued to observe the election judge and other election staff stand close by the voting machines while the voters voted.  They were being intimidated to vote their way.

On this 12 day of May, personally appeared Abigail Infante and states that the above is true and correct.

Abigail Infante

# Exhibit #3

May 15, 2008

I, Jessica Rangel, (SS# ,PO Box 11, Progreso Texas 78579 and am over the age of eighteen and am of sound mind and state the following:

Mr. Guadalupe Vela offered me money in exchange for my vote; I was to put in my vote for JJ Ramos, David Hernandez and Michael Vela. Also numerous times I had been offered to have traffic tickets removed in order for me to help them. They also asked me to recruit a friend, which name I prefer not to mention, and they would provide a voting registration for them to use. They stated that they had people that worked that elections on there side and that they would help my friend vote.

I guess that thought that I would help them since I had help them in past elections by recruiting people and giving them money for there vote.

Jessica Rangel

State of Texas          §
County of Hidalgo       §

Before me, a notary public, on this day personally appeared Jessica Rangel known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statement therein contained are true and correct.



BLAS MEDRANO
Notary Public, State of Texas
My Commission Expires
February 08, 2011

Notary Public Signature

*Exhibit #4*

May 12, 2008

I, Jesus Vasquez (certificate number 212570), state that I am registered in Progreso, Pct 40 and state that I did not exercise my right to vote in the Progreso School Board Elections held on May 10, 2008. I understand someone used my identity to vote in this election and appeared in person at the Progreso Early Voting site.

Jesus Vasquez

State of Texas
County of Hidalgo

Before me, a notary public, on this day personally appeared _Jesse Vasquez_, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statement therein contained are true and correct.

BLAS MEDRANO
Notary Public, State of Texas
My Commission Expires
FEBRUARY 08, 2011

Notary Public Signature

# Exhibit #5

15 de Mayo del 2008

Yo, Andrea Peña (SS#                    , testigo lo siguiente

El Sr. Omar Vela, me forzo a votar con una tarjeta de votar de algien mas, cuando yo muy claramente le dije que yo no podia votar porque no soy ciudadana de los Estados Unidos. El me dijo que no habia problema, que el me diria como le ivamos a hacer. Que nandamas fuera al parque de Progreso y el me daria una tarjeta de votar (Maria De Los Angeles Martinez VUID#1053620795). Dijo que si le ayudava, me "areglaba" mis problemas legales, referiendose a que el me ayudaria a que no me quitaran a mis hijos. Cundo yo llege al parque, el me dio la tarjeta de la señora Maria De Los Angeles Martinez, y procedio a decirme que algien alla dentro ya me estava esperando para ayudarme y que no se me olvidaran los nombres que me avia dicho (Micheal Vela, Juan Ramos, David Hernandez). Cuando entre al edificion de las votaciones, un muchacho de los que estaban de juez, se metio con migo y voto por mi. Entonces me dijo que le oprimiera al boton rojo que decia "VOTE", opremi el boton y me retire.

Andrea Peña
_____
Andrea Peña

*Turn Page for Translation*

State of Texas          §
County of Hidalgo     §

Before me, a notary public, on the this the _15th_ of May 2008, Personally appeared ANDREA PEÑA, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statement therein contained are true and correct.



BLAS MEDRANO
Notary Public, State of Texas
My Commission Expires
February 08, 2011

_____
Notary Public Signature

TX_00001168
JA_005499

TX_00001168

*Exhibit #5*

**Ryan LaRue**

| | |
|---|---|
| **From:** | marycogden@comcast.net |
| **Sent:** | Monday, March 16, 2009 9:16 PM |
| **To:** | E. LaRue; Ryan LaRue |
| **Subject:** | Translation |

The text in the attached document reads as follows:

I, Andrea Pena (SS#            ), testify as follows:

Mr. Oscar Vela forced me to vote with another person's voter registration card, when I very clearly told him I could not vote because I am not a citizen of the United States.  He said it wasn't a problem, that he would tell me how we were going to do it.  All I had to do was go to the park of Progress and he would give me a voting card.  (Maria de los Angeles Martinez, VUID# 1053620795).  He told me if I helped him he would "fix" my legal problems, referring to how he'd help me so that they wouldn't take away my children.

When I arrived at the park, he gave me the card of Mrs. Maria de los Angeles Martinez, and he proceeded to tell me that someone inside there was waiting to help me and that I shouldn't forget the names that he had given me (Michael Vela, Juan Ramos, David Hernandez).

When I entered the voting building, a young man who was one of those acting as judges, entered the booth with me and voted for me.  Then he told me that I should press the red "VOTE" button.  I pressed the button and left.

Signed:  Andrea Pena

*(translated by Mary C. Ogden, B.A. English & Spanish, Rice University, 1981.)* *Father was in Foreign Service throughout South America.*

----- Original Message -----
From: "E. LaRue" <famlarue@earthlink.net>
To: marycogden@comcast.net
Sent: Monday, March 16, 2009 8:46:17 PM GMT -06:00 US/Canada Central
Subject: FW:

Mary,
Thank you so much!
Edell
Ryan's cell:  713.542.1381


-----Forwarded Message-----
From: Ryan LaRue
Sent: Mar 16, 2009 8:36 PM
To: famlarue@earthlink.net
Subject: FW:

**Senator Shapleigh:** I don't have any objection to it, but I'm hoping that we put everyone's remarks into the record so we have an accurate record of what took place on this bill here today. I'll make that motion at the appropriate time.

**President:** There's a motion by Senator Shapleigh to include–

**Senator Shapleigh:** I would make the motion that we include everybody's comments on this bill to the culmination of the bill, including all the exhibits and discussions that are had on any of the votes.

**Senator Williams:** Okay, in light of the motion that's coming in a few moments, I just also like to correct the record. There was a statement made earlier by Senator Gallegos that the Attorney General spent $1.4 million investigation voter fraud and, respectfully, I would direct the body's attention to our testimony in committee, which conclusively demonstrated that that is not the case. With that, I am done with my remarks for the day. Thank you.

**Senator Lucio:** Thank you, Mr. President. And I will be very brief, Members. I need to, I rise only because Senator Williams brought up my district. And I did turn in, and it was noted as one of the exhibits back when we met at the Committee as a Whole. I'd like to read the letter from our District Attorney down in Hidalgo County, one of the biggest counties in the state, as Senator Williams mentioned, and it states:

To the Senate Committee-of-the-Whole, Voter Identification Legislation:

Allegations of a few cases of voter impersonation occurring in Hidalgo County during 2008 came to my attention on Thursday, March 5, 2009, by several members and staff members in the Texas Legislature. Apparently they were obtained from the Texas Secretary of State's Office, who along with the Office of the Attorney General, have been in possession of this evidence for a time.

Without discussing the details of allegations currently pending, I can tell you that I believe that if there is a problem with compliance with the law, it lies more in the quality of the administration of elections, than in law itself.

The irregularities we have seen occur mostly in non-partisan local elections of small governmental entities such as school districts, water districts, and municipalities, some of which decline to contract the administration of their elections to the County election administrators office. This has in the past led to questions.

If I were to recommend an amendment to the Texas Election Code, it would not be to increase burdens placed on honest voters attempting to cast their ballots, but instead to further professionalize the administration of elections by requiring small governmental entities to contract with their county's elections administrator, instead of administering those elections themselves.

Further, I would require the Secretary of State, and/or the Office of Attorney General, to very quickly forward to local District or County Attorneys the irregularities of which they have credible evidence, so that we can investigate those incidents, and prosecute them when the evidence suggests a violation of the law.

Thank you very much for the opportunity to share my views.

Respectfully Yours,

/s/René Guerra
Criminal District Attorney
Hidalgo County, Texas

Members, I share this letter with you because Mr. Guerra was not able to be here last week when we had the Committee of the Whole. And it's important for you to hear from a gentleman that has served that county for two decades in these matters that we're dealing here today. So, I ask you to understand that there's not widespread voter fraud in that county, especially at a higher level. As I mentioned, in some local units of government there has been some discrepancies, but, certainly, we will be working to try to, you know, address those issues. Thank you, Mr. President.

# RENE GUERRA



March 6, 2009

To the Senate Committee-of-the-Whole, Voter Identification Legislation:

Allegations of a few cases of voter impersonation occurring in Hidalgo County during 2008 came to my attention on Thursday, March 5, 2009, by several members and staff members in the Texas Legislature.  Apparently they were obtained from the Texas Secretary of State's Office, who along with the Office of the Attorney General, have been in possession of this evidence for a time.

Without discussing the details of allegations currently pending, I can tell you that I believe that if there is a problem with compliance with the law, it lies more in the quality of the administration of elections, than in law itself.

The irregularities we have seen occur mostly in non-partisan local elections of small governmental entities such as school districts, water districts, and municipalities, some of which decline to contract the administration of their elections to the County election administrators office.  This has in the past led to questions.

If I were to recommend an amendment to the Texas Election Code, it would not be to increase burdens placed on honest voters attempting to cast their ballots, but instead to further professionalize the administration of elections by requiring small governmental entities to contract with their county's elections administrator, instead of administering those elections themselves.

Further, I would require the Secretary of State, and/or the Office of Attorney General, to very quickly forward to local District or County Attorneys the irregularities of which they have credible evidence, so that we can investigate those incidents, and prosecute them when the evidence suggests a violation of the law.

Thank you very much for the opportunity to share my views.

Respectfully Yours,

Rene Guerra
Criminal District Attorney
Hidalgo County, Texas

HIDALGO COUNTY COURTHOUSE – 100 N. CLOSNER, ROOM 303 – EDINBURG, TEXAS 78539 – (956) 318-2300 – FAX (956) 318-2301

**Senator Ellis:** Thank you, Mr. President. Members, I'll be as brief as I can be. Obviously, both sides have put together a pretty good record on this piece of this legislation, but there're a couple of points that I do think I want to make. I don't know if I made them before or not. Chairman Fraser, this is the 64th day of a 140 day legislative session. I just want to reiterate to you and all of the Members that on our opening day, obviously, the decision was made to change the rules so that this bill could come up. Now, in a unprecedented time in our history, with all of the problems, economic problems that we have in this country and around the world, the most important thing, some would have us believe, in Texas, Senator Fraser, is this voter ID bill. Now, clearly, the votes are there because you only need 16 to pass it, so I guess I don't have to give a real long speech, but I do want to point out to you that as important as it is to some, that you on the right side of the politics on this issue, because as a drumbeat in the base of your party to try to get this bill passed. For you, for your sake, I'm glad you are going to go ahead and get it out of here early, because you're certainly on the wrong side of history. And at least for the remainder of this session, maybe we'll be able to focus on issues that really matter to people. It's interesting when the witnesses came in, I didn't see some of the Titans of election opportunity from Texas. Our experts come in and served as resource witnesses. Now, based on the way some of their questions were answered, it looks like some of those people bought their tickets at the last minute to get in here, because they certainly weren't very prepared. It's interesting this bill does not cover mail balloting. It's interesting it doesn't cover it because most of the fraud that has been discussed on this floor, or allegations of fraud, have been instances where it's involved mail-in balloting. Now, if you were to guess, if you can't guess, just go ask some expert in either party. Who's more apt to benefit from mail-in balloting? Are people more educated? Are they more high income? Do they tend to be more from the Democratic Party or the Republican Party? We had a little interesting lesson in history. We heard a lot about President Jimmy Carter, Secretary of State James Baker. We didn't have a clear idea of where HAVA came from? The Help America Vote Act was passed because of the debacle in Florida, that regardless of which side any of us in this Chamber may have been on the issue, you couldn't help but be embarrassed when developing countries were saying, Jimmy Carter needs to put together an election team and monitor the elections in America, particularly in Florida. That was a comprehensive piece of legislation, Senator Fraser, you passed out the recommendations. It's a great set of recommendations, even the summaries, only about eight pages. But what has happened here, with the Help America Vote Act and with the Carter-Baker Commission, has been to do a little cherry picking. This bill is an attempt to pull out the part of that recommendation from HAVA, Help America Vote Act and the Carter-Baker Commission, that tends to benefit one party over the other and one group of people over the other. That's the reason why Texas was put under the Voting Rights Act. Hey, it's not a partisan comment when I make it. Democrats controlled this Chamber when Lyndon Johnson signed the historic Voting Rights Act. Leticia made reference to my predecessor over here on the Senate wall. When Senator, then Congresswoman, Jordan added Texas to the Voting Rights Act, it was a bilingual amendment, of all things. Didn't just put Texas in, but other states, because even President Johnson didn't want to admit that there were problems in the

Lone Star State. He wanted to believe that in his political lifetime, the doctrine of states' rights, I guess, Texas would clean it up on its own. We didn't, and we still haven't. We ought to really take a deep breath and pause and hope when it gets over to the House side, that they exercise better judgment than us. Hey, I could read the political tea leaves. I know you're concerned that the Voting Rights Department at the Justice Department won't preclear this piece of you-know-what that's going to pass here today. So, I suspect that there'll be an attempt, I've heard the rumor mill says, you just bypass the Justice Department and go to a three-judge panel in Washington, D.C. One of your witnesses that testified, nice young man, nice young man–but interesting, all of those career professionals in the Justice Department who have been there under Democrats, as well as under Republicans, Troy, resigned because the career professional said, Georgia's voter identification suppression bill shouldn't be precleared, that's what the professional said–that gentleman that you had testifying here the other day overruled the career professionals, and they eventually quit. I mean, part of his résumé indicated he was on the Federal Elections Commission. He was. Never got approved because his history came back to haunt him. We're making a serious mistake today. More than anything else, we ought to be worried about Texas being 46 among the 50 states in the country in terms of the number of people who show up to vote, last cycle, 54.7 percent voter participation rate, voter participation rate in Texas in 2008. Part of that Carter-Baker Commission recommends a lot of commonsense approaches like election day registration. That's probably why Minnesota has a 78 percent participation rate, Wisconsin 72, Maine 71. Even New Hampshire, without election day registration, they're 71 percent, Colorado 69, Iowa 69, Michigan 68, Alaska 68. You made the comment on the floor the other day, during the Committee of the Whole meeting, that election rates had gone up in those states, those that have passed a voter identification bill. I would make the argument to you, maybe election rates went up because people were angry because that bill did pass in Georgia and Indiana. And, tell you, you might be surprised what happens this next go 'round. Last comment I want to make, there's been a lot of talk about what we do in Texas today and other states that have some version of voter identification. Just so Members will know what happens now, somebody made the comment that about 24 states have some form of photo ID. I want to make it very clear what happens in America today. This is according to the Pew Center on the States. Only three states require a photo identification: Florida, Georgia, and Indiana. Florida, the same state that was the impetus for creating the Carter-Baker Commission and the Help America Vote Act, Georgia, and Indiana. Another four request it, don't require it, but they request it: Hawaii, Louisiana, Mississippi, and South Dakota. Eighteen states require ID, photo or nonphoto ID, for all voters. Texas is one of those states, along with a number of our neighboring states, Alabama, Arkansas, Arizona, Colorado, Connecticut. The short of what I want to say is, when this bill passes out of this Chamber today–House sponsor's been here a good part of the debate today and he was here when we started the debate on this bill–hopefully, they'll take the time, look at the pause button, which we didn't do on this side, and either take this bill and clean it up, address all of those issues, like same day registration, election day registration. Hey, if you really want to do something about voter fraud, all those instances you talked about, well, do something about mail-in ballots. If you're really serious about

impacting how to make sure people have faith in the electoral system, disenfranchising one group of people, any group of people, as opposed to another one is not the way to do it. Troy, you made the comment to me, who would I know that couldn't fit into one of these categories that you laid out. Don't have a hunting license. If you don't have a hunting license, you can have a library card. You could cast a provisional ballot. You didn't know the process on how it would be counted, so I even suggested one. Your witnesses never answered that question. The people who don't have a library card, oftentimes the people who cannot read, which is why they don't have a library card. People who don't have a utility bill oftentimes are people who don't have utilities. People who don't have a phone bill are probably people who don't have a phone. There are people. They may not come in this Chamber, they may not be people that we run into and have a conversation with everyday, Chairman Ogden, but those people exist, not just in my district, but in yours as well, and every Member on this floor. They're the folks, when you got up this morning, were catching their early bus and didn't have to have an identification card to get on that bus. They go and work the jobs that we don't have to work because we're privileged. And I'm saying, in this body, we ought to be as concerned about those people who have the least among us as we are concerned about those people who are more apt to vote for or against us. Thank you.

**Senator West:** Mr. President. Members, I will not be long, but you know, we have a lot of people in the gallery. And I'm glad you're here, the citizens of the State of Texas, because the reality is the history of Texas is upon this very moment, in this Chamber, on this particular day as we cast this vote. It's a very important vote. I'm glad you're here listening to the debate. The history has been well-chronicled by Senators Watson, Van de Putte, and Gallegos, and they've illuminated the tragic past, in terms of voter participation in this particular state, and also ad hoc obstacles that have been placed in the way by those in the majority in order to maintain political dominance. Members, we should not forget the history of our civil rights in this particular state and to know that the Members of this body are a good and decent people that bring different backgrounds and perspectives to bear on this issue that we address today. What is the real, what is this really all about? What is this all about? This is, will be the second bill, Members, that we will have passed out of this Chamber, the second bill. So, what is this all really about? Maintaining political dominance in this state, that's what it's all about. And let's just kind of call it what it is, maintaining political dominance. Members, this is a solution looking for a problem. My deskmate chronicled a couple of affidavits that he received from the Attorney General, but I suggest to you, that it's basically a nonexistent, significant issue in the State of Texas. Members, supporters of this legislation, this is an issue that you need to come to grips with when you begin to look at the demographic changes in the State of Texas. And let me just kind of go through those with you. Based on the latest statistical analysis, at least as of July 1st, 2007, 23.9 million Texans, all of us heard, basically, what the demographic changes will be in this particular state, and we know that this state is going to be predominantly Hispanic. Well, the fact of the matter is now, that's predominantly minority. When we begin to look in the out years, and the number of citizens that we're going to have in the State of Texas, what is it going to look like?  When we begin to look at the individuals that will be in this Chamber,

what is it going to look like? When we begin to look at the people that will be in attendance, what will Texas look like? It's going to be predominantly minority. And so, the question that I ask those of you that are gung ho on making this our second legislative initiative coming out of this body, what's the purpose behind it? You'll say again that, you know, there's a problem. There's no significant problem. It's all about political dominance. Let's call it what it is. But you got to understand also, I want you to hear my words today, Members, demographics in this state are changing and ultimately the makeup of the voting populace will change also. Those that are being suppressed by the pretext will ultimately control this body politic and the laws that future generations of Texas live under. There's that old saying, sometimes what goes around, ultimately will come around. And I hope that as future generations look at this particular issue, that they can pretty much dissect exactly what occurred on this particular day in the State Senate, and judge it for exactly what it is and, ultimately, if this bill becomes law, ultimately repeal it, if we can't get it taken care of at the Justice Department or circuit courts in D.C.

**Senator Hinojosa:** Thank you, Mr. President. Members, I would like to speak against the bill. First of all, I would like to address a couple of points made by Senator Williams on the affidavits out of Progreso, Rio Grande Valley. Let me first say that those affidavits are tainted for the simple reason it's a very small community and there were outside activists of Republicans who came in with the sole purpose of trying to find people who would sign affidavits that they themselves drew up. Also, these affidavits were never turned in to the District Attorney's office for prosecution. Addition to that, it was not the DA's office who received any of these complaints. Furthermore, what also happened is that the affidavits were not made by investigators or trained people. There again, they were made by a group of Republicans who live outside this small community, looking and trying to fabricate this type of evidence. And I'm somewhat disappointed that again, here we are dealing with a partisan issue, at a time when we have people losing their homes, their jobs, and they would pay their bills, we're dealing with an issue that's not going to help them have a better quality of life. I will tell you that I thought that the voters of the last election spoke loud and clear that they wanted no more issues like this to come before this body. They want us to deal with the bread and butter issues like health care, education, jobs, economic development. And here we are, again, dealing with an issue that's not going to help one cent, or one penny, all Texans to better their life. And for that reason, I'm voting against Senate Bill 362, which ought to be named the Voter Suppression Bill. Thank you.

**Senator Whitmire:** Thank you, Mr. President.  Members, thank you, Senator Hinojosa, for pointing out that Senator Williams only mentioned allegations.  And it's amazing to me that, if this is such a prevalent problem, that you have to go, to take a Senator from The Woodlands, has to, he borders Harris County with its hundreds of thousands of voters, and has to go to South Texas to try to find some allegations of voter fraud. It's, that in itself, I think, makes a case that you have to really search long and hard for instances. It's also, Senator Williams, in his allegations, pointed out the tests that I give, to not only my decisions as a public official but even in my personal life. What is the greater good? If you wanted to assume Senator Williams was correct and he found three cases in deep South Texas, what is the greater good, to address that

in the fashion that the proponents would have, or is the greater good to not set up obstacles that we know will exist for people to vote? When I complimented the Senate last Wednesday morning after our marathon session, I mentioned the decorum, the respect for one another that had been demonstrated.  Again, it's present today, but, Members, that cannot overshadow the fact that this is a bad time to be debating a really bad, bad, bad piece of legislation. Maybe the all-time worst legislation, in terms of one that does so little for so few and harm to so many. I'm also struck by the attitude of some of my colleagues: Let's just get this behind us.  And, in fact, I would name this bill, Can't We Just Get Behind, Can't We Just Get This Behind Us Act of 2009. It barely beat out the title of the bill or the Hard to Vote Act of 2009. I cannot stand and let you just get it behind us because we've heard credible testimony that 3 to 4 percent of the eligible voters would not be able to cast their vote next election. But let's assume it's just 1 percent, Senator Duncan, or how about one person. Troy Fraser did an excellent job the other night of talking about how sacred the ballot box is–and we all join him in that respect–but it is so sacred that now we're about to tamper with the system that's going to disenfranchise others. I would ask the proponents just for a moment, okay, and just for a moment, assume that we're right and you're wrong. Just absorb that for a minute. And do you even want to go into the discussion, assume Tommy Williams' allegations are going to be prosecuted and punished, which I think he made the point that the system's working pretty good. But what if, what if the next election date, there's someone in one of your districts, attempts to vote, if it's one person, and that sacred process of voting is prohibited because of what we're doing today. You know, I've heard folks talk about, they would rather 10 guilty murderers go free than to execute one innocent man or woman. I was thinking about that last night. I believe whatever allegations of fraud that you can come up with cannot make the case to make major obstacles, and I think part of the problem is, some of my colleagues don't really understand how difficult it's going to be. You've not campaigned in communities that are not as organized as maybe your life. I have knocked on doors, talked to voters, they didn't know how they were going to get a ride to the polls, didn't know if they were going to feel like it, been doing this for 56 years and now, for the first time, we put a new responsibility on them. Members, we have a responsibility, if it's going to disenfranchise just one person, to fight this really bad, bad, bad bill, and I respect Senator Fraser's intent, but, Troy, we disagree on the method. What I don't understand, if you really think there's fraud and you continue to make allegations, I don't think you have proven your case.  But let's just, for the sake of the conversation, you believe there's fraud, you're worried about, as you mentioned the other night, you voting and then your brother coming back 30 minutes later and voting with your card. First of all, precinct judges, election judges have the power of a district judge. They can have the person arrested at that moment. What I don't understand is why you address it with this bill instead of making it a criminal justice issue. No one in this body hesitates to address criminal acts by, one, enhancing the penalties, or creating a new offense. I just don't understand why any of your witnesses did not address it as a criminal justice issue. They didn't do it in Indiana, they didn't do it in Georgia, even our Harris County prosecutor, Rosenthal, who was so aggressive, till he was disgracefully run off.  There's no, no instance of voter fraud in Harris County that has been proven up. The gentleman the other day was talking

about mail-in ballots. The Attorney General, our own Attorney General, after spending 1.4 million and spending over a year looking at, came up with 26 cases. Eighteen of them were mail-in ballots, Senator Fraser. You haven't touched that, topside or bottom. And because you haven't addressed it as a criminal justice issue and try to enhance the penalties, I'll show you how you should have handled it. This afternoon in Administration, we're going to hear a Zaffirini bill that's going to make parking in a handicap zone twice the current penalties. We're going to double the fines if you park in a handicap zone. That's the way Senators address crime and illegal acts. They don't come up with some civil voting procedure that is going to make it difficult for people to go cast that precious vote that Senator Fraser talked about. I can only conclude, because you haven't dealt with it by enhancing the penalties or creating a new offense like we do on other illegal acts, that is pure politics. And let me suggest, Senator Fraser, it's bad politics. And I believe, I believe it's going to backfire on you. I think this is a political bill for years to come. It will backfire on the proponents. And let me just go ahead and put this on the table, I think it's largely being done so some communities can think they're getting after undocumented citizens. It's not mentioned, in none of the debate conversations, but I listen to talk shows, I read comments, I get my share of letters. There's a misconception that's being encouraged by this legislation that undocumented citizens are voting. It does not occur, you can't find the instance. Those folks don't want nothing to do with a ballot box, but this is largely driving it. Let me close by saying, the real sad note, Senator Fraser, is if we had not changed the rules of this body, we would not even be having this conversation. This is a great body. If we had not changed the rules to make this the priority that doesn't exist, we wouldn't even be having this discussion.

**Senator Fraser:** Thank you. Members, the, this actually has been a very interesting issue for all of us. The, I think there's, it's obvious that there's people in this body that feel very strongly on both sides of this issue, and I respect that. I don't think there's any point that I felt that anyone is in opposition to my views ever was disrespectful to my views. We have, as we do on all issues, we have the right to disagree. And, to that point, I think there's a lot of pieces of legislation that move the Legislature, Senator Ellis, that I question why are we taking time to do this. But that usually is my opinion and the person laying it out feels very passionate that we should be doing it. Yes, we've taken some time in debating this, and I think I'd make the point that most of the questions and the time was taken by the opposition. But the opposition on any bill has the right to do that, and I'm, I respect that and would never ever try to deny someone their ability to do this. But we also have to recognize that we are sent down by our voters. We were sent down by the people of this state to make sure that what we're doing down here protects those rights they're either guaranteed by the Constitution or the laws that we pass. And we have an obligation for that. This issue, I believe, strikes to that very thing that we were sent down here to do. And I will, I read this earlier, but Steve Wolens was my Chairman when I was in the House, Steve Wolens was a Democratic Representative from Dallas, and he stated, and I think it is, you know, the essence of what we're talking about, the ability to cast a vote and have our vote counted is the bedrock of our democracy. We must do everything possible to ensure the sanctity of the vote of this state, which leads us to the point, Dean, Senator Whitmire was, asked earlier, how did we get to the point of talking about this bill?

TX_00001178

Senate Bill 362, it's not rocket science. It is not a complicated issue. It's a very simple concept. My goal in laying out Senate Bill 362 is very simple. It is, the goal is to make sure that every person arriving at a polling site is the same one who is named on that voter list, that you are who you say you are. I believe Senate Bill 362 makes voting easy. A voter showing up can either show a photo identification or two nonphoto IDs, including even an electric bill or a library card. Even if voters can't verify their identity, they're still going to be allowed to cast a provisional ballot. Every person walking into the polling place will allow, be allowed to vote. No one will leave not being able to cast a ballot. Senator Ellis, I would raise the issue that if we go back and look at the polling that has been done on this issue, there have been multiple polls that have done.  The one, obviously, I like best is the one that's the most favorable, the Rasmussen poll in October of this last year showed that 88 percent of Texans, people in Texas, not a one political party or the other, 88 percent of Texans, when they're asked the question, should you have to show identification when you vote, 88 percent of the public said, yes, I agree with that concept. Now, the interesting thing is that of those 88 percent, 80 percent of them identified themselves as Democrats. There's been two other polls. The latest poll this, this last weekend by The University of Texas showed that in their poll, 69 percent, and even though that's less than 88, 67 percent. If I told you two-thirds of your voter was for something, I would suspect you'd be for that. Now, I've been doing my own personal poll. You asked me the question, have I been visiting with other people, and more especially, if I have visited with African Americans or Hispanics about this. I've actually been doing my own polling on this for a long time. Actually, going back a couple of years because we had this bill two years ago. And anytime I'm getting the chance where I can engage someone in conversation, I ask them the question, it's a very simple question, should you have to show identification to verify who you say you are whenever you have to vote? Since I've been asking that question of all people that I've engaged, I am yet to have a single person tell me that they disagree with that. Now, obviously, there's some pressure of the fact that I'm the one asking the question, but I find it interesting that if a person, if you ask them should they, you know, do that, no matter who the person is, they go, no, I think that's fair. I think that someone, you know, if they're going to be voting, should have to prove they are who they say they are. So, Senator Ellis, I would make the point that of the people that are opposed to this, I know there's 12 in this room and probably some more on the other side, but if 88 percent of the people in the State of Texas, I'm assuming that a bunch of those live in your district, and I would make the case, I'm on the side of the people in this case. Two, the voter ID bill has been passed, photo ID has been passed, a strict photo identification in two states. There's 24 states that have some form of photo identification, but the two that are the most strictest are Indiana and Georgia. Indiana's case was put into place, they've had two election cycles, in '06 and '08. Since it was put in place it's gone all the way up the Supreme Court. The Supreme Court, the confirming, the opinion on this was written by John Paul Stevens, which generally is a left-leaning, more liberal judge, and he wrote the opinion, the majority of the opinion confirming the Indiana law six to three. The Georgia case that was passed, again, went all the way through the, being approved by the Department of Justice, and has been confirmed at every level, and both of those have gone through a last election cycle.  So, I guess a question I would ask, can

someone say, is this going to suppress vote? Both Indiana and Georgia have found that, even Indiana, through two election cycles, not only did it not depress vote, it actually encouraged voters, that they felt better that their vote was going to be counted and not diluted by someone that was voting illegally, that the vote count in both those states went up. And, actually, in the last election in 2008, Georgia had the second largest increase in Democratic voters in the United States, much more than the surrounding states that did not have a like ID law in place. Indiana was the largest increase in Democratic voters in the entire United States. The total increase they had was a 6.7 increase, almost double the increase of the adjoining state, which was Illinois, where the President nominee was from. I'm going to give a couple of examples here just to make sure, and I hate that the press missed the, all the testimony we had the other night when we stayed here through 28 hours, and most of the press went home the middle of the night, so you missed a lot of the very important testimony.  And I think the one that probably was the most compelling, or was, I thought was telling, was the testimony of the Secretary of State, when they were talking about the way that the Texas law works in Texas. To clarify, making sure you understand, that if someone walks into a polling place and they have a voter registration certificate, now, it doesn't make any difference whether it's theirs or their brother's or their wife's or the guy down the street or someone that's died, as long as they have a voter registration certificate. Current Texas law says, on offering to vote, a voter must present a voter registration certificate to the election officer.  On presentation of the certificate, an election officer shall determine whether the voter's name is on the certificate, to check the names there, and if it's at the proper precinct. If you meet those two parameters, they hand you a ballot and you go and vote. No, any circumstance, and the question I asked the Secretary of State, if I walked into the voting booth with my brother's registration card and I was voting, I'd already voted, and then I was now going to vote with my brother's card, Steve, could they stop me from voting? And the answer was, no. There is not the ability under current law to do that. Question was raised about the ability to convict. I would make the point that under current law, not only is it virtually impossible to identify that someone is voting illegally but it is much harder to convict that person. The testimony earlier, we referenced the District Attorney René Guerra out of Hidalgo County, the DA, René Guerra, here's his exact quote that he gave to the, I believe this was to the McAllen paper, no, I'm sorry, it was to *Rio Grande Guardian* paper, he says, he said, voter fraud is nearly impossible to prove. Since losing a county ballot tampering case in '78, Guerra has shied away from taking on new cases involving election regularities, even though all the cases that Senator Williams just laid out came from that county and has been reported for years. It goes on to say, to convince a jury these days, you almost need a videotape of someone voting illegally, the District Attorney said. The article goes on to say that he has lost his appetite to prosecute. So, in trying to say that Texas doesn't have a problem, I would greatly disagree. I think we've got a huge problem because not only do we not have the ability to identify someone, we don't have the ability to prosecute it. And it actually goes much further than that. Mary Ann Collins from Plano, a 70-year-old woman, stayed here all night, other night, in order to come up here and give us her testimony about the fact that she was working as a poll worker. She had watched someone vote and a few hours later she

TX_00001180

had noticed someone else, and I think she had seen her with a bright hat, and she recognized this was a outstanding, or someone that, she was easy to identify. She saw the woman come back in, a couple hours later, to vote again with a different card. She went to the election judge to notify the judge that that woman was voting illegally, and the election judge said, sorry, there's nothing we can do to stop that. To assume there is not voting fraud in Texas is really almost laughable. To assume that we can prosecute someone for voting fraud is about as difficult. In affirming the Supreme Court case, John Paul Stevens made a couple of observations about voting, talks about the fact that the actual act of voting is a burden, but it's a burden that everyone accepts. The burdens of that sort arising from life's vagaries, however, are neither serious, nor so frequent as to raise a question about the constitutionality of the Indiana law. The availability of the right to cast a provisional ballot provides an adequate remedy for problems of this character. For most voters who need the inconvenience of making a trip to the Bureau of Motor Vehicles, gathering the required documents, and posing for a photograph does not qualify as a substantial burden for the right to vote, or even represent a significant increase over the usual burdens of voting. The last example I will give you, and I hope this is one that hits close to home, is someone raised the example, or the issue, well, there's a few here and a few there, but we have an example, actually, here sitting with us in this body, that Mike Jackson, when he was elected in Houston in 1988, won by seven votes. I went back and looked at the records of the voter irregularities in Houston, the number of dead people that have voted, the number of complaints that have been made, and the thought comes to my mind, if seven people had cheated during an election, it would've changed history. Mike Jackson would not be here with us today, four, if four people had flipped it. Four people could've changed history and changed his ability to serve as he has in the Texas Senate. To assume that someone cheating in an election is not important is, the best example is right here, is that there's been a lot of elections, especially a primary, and more especially in rural areas where you have a county commissioners race, one vote makes a huge difference. And if someone can cheat on that one vote, it could impact the election. The dangers of voting fraud has always threatened the integrity of the electoral process for the entire history of the United States. I believe that threat continues today. And quoting again, as I did in my opening comments, the 2005 bipartisan Carter-Baker Commission reaffirms the dangers when they say, elections are at the heart of democracy, Americans are losing confidence in the fairness of elections. And while we do not face a crisis today, we need to address the problem of our electoral system. Members, I would be concerned if I thought this bill in any way would suppress turnout, but I also believe it does not do that. It just protects legitimate vote. It offers multiple ways to prove you are who you say you are before you cast your vote. Thank you.

# SENATE JOURNAL

### EIGHTY-FIRST LEGISLATURE — REGULAR SESSION

### AUSTIN, TEXAS

### PROCEEDINGS

### ADDENDUM
(TWENTY-SECOND DAY — Tuesday, March 17, 2009)

The following remarks regarding **SB 362** were ordered reduced to writing and printed in the *Senate Journal:*

**Senator Watson:** Members, the outcome today we all know isn't really in doubt. It hasn't been since we opened this legislative session. We knew what would happen, what we should expect, well before our meeting last week of the Committee of the Whole. But even knowing what's about to happen today, there was still a debate to be had last week, and a case that needed to be made. People who are watching us–and maybe, more importantly, those who weren't watching, those millions of legally voting Texans whose lives won't be the same if this bill passes–have a right to expect someone to prove that the supposed voter impersonation problem is at least significant enough to justify all the time we're spending on it or that this bill actually was the answer to stopping what cases we're being told about or, more importantly, that this bill would not reduce the ability of people to vote. These folks on both sides of this debate, most of them good, concerned, everyday Texans, are entitled to proof, not assumptions or rationalizations or anecdotes, but actual, statistical proof that Senate Bill 362 won't target some of our most vulnerable citizens and block them from fulfilling their right and duty. Members, the case was not made. And I deeply believe that whether it's in the Department of Justice or before a federal court, that will be confirmed. There remains only the flimsiest evidence that voter impersonation–the only type of fraud addressed by this bill–even exists. Not counting 60-year-old history and the unverified testimony of a controversial witness for a partisan elections administrator, nothing at all we've heard demonstrates that this is actually occurring any more than anecdotally in Texas. And let's be honest–if someone had the goods on a case that was going to settle this fight once and for all, they probably would have been testifying at some time other than four in the morning. It's also far from clear that Senate Bill 362 will stop whatever irregularities might conceivably be out there. We've heard of concerns about absentee ballots–this bill does nothing about them. We've heard about suspicious voter registrations–this bill leaves registration procedures entirely in place. We've been showered with hypotheticals about how much could possibly go wrong if some shadowy figure decided they'd rather steal a voter registration card than an election. Yet we've heard of no instances in memory where our elections failed our democracy because people impersonated voters. Unfortunately, the most significant new information we got last week was that our

TX_00001182

2009 (81R) SB 362, SENATE FLR DEBATE, 2ND READING

Transcribed by Lynne M. Rodriguez, CSR



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005514

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 52 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

2

1            LIEUTENANT GOVERNOR DEWHURST:  Members,

2    the Chair lays out on second reading Senate bill 362.

3    The Secretary will read the caption.

4            SECRETARY:  Senate bill 362 relating to

5    requiring a voter to present proof of identification.

6            LIEUTENANT GOVERNOR DEWHURST:  Senator

7    West, for what purpose do you rise, sir?

8            SENATOR WEST:  Mr. President, I would

9    move for point of order.

10            LIEUTENANT GOVERNOR DEWHURST:  State your

11    inquiry.

12            SENATOR WEST:  Mr. President, I would

13    move for, that this bill not be considered pursuant to

14    Rule 7.09, more specifically the fiscal note rule that

15    we commonly refer to it, in that it violates the fiscal

16    rule.

17            Two things, there's been testimony during the

18    hearing that many of the core principles associated with

19    this bill were considered during the 80th legislative

20    session with a similar type bill.

21            In addition to that, I would raise the issue

22    for consideration specifically under 7.09(f), basically

23    saying that a fiscal note for a bill or joint resolution

24    which authorizes or requires expenditures of diversion

25    of any state funds for any purpose shall estimate the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005515

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 53 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

3

1    fiscal implications and probable cause of the measure

2    each year.

3              Yesterday in Finance, the finance committee

4    took up and passed a contingency rider for Senate bill

5    362, and for purposes of the record, let me read it in

6    here.

7              Contingent upon the passage of Senate bill

8    362, a similar legislation relating to requiring a voter

9    to present proof of identification by the 81th

10   legislature, regular session, the Secretary of State is

11   has appropriated two million dollars for fiscal year

12   2010 for the general revenue fund for voter education.

13             If indeed the testimony of the Secretary of

14   State is correct as relates to putting together the

15   fiscal note that LBB has provided for this particular

16   bill, that there's no fiscal implication, then the issue

17   of appropriating two million dollars is certainly

18   evidence that there is, in fact, a fiscal note, and thus

19   is violative of the particular rule that I just quoted,

20   and for those reasons, I would ask that this bill not be

21   considered.

22             LIEUTENANT GOVERNOR DEWHURST:  Would you

23   approach the podium?

24             Senator West, after conferring with you,

25   several of the senators and the parliamentarian, Rule



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 54 of 203
Senate Floor Debate, 2nd Reading                          March 17, 2009

4

1      709, in my judgment, has been complied with.  Therefore,

2      your point of order is overruled.

3                     SENATOR WEST:  Mr. President, is this the

4      appropriate time to ask that the point of order and also

5      the discussion be spread upon the journal?

6                     LIEUTENANT GOVERNOR DEWHURST:  Members,

7      Senator West moves to reduce to writing the testimony,

8      the comments by Senator West on the point of order.  Is

9      there any objection?

10                    SENATOR WEST:  And the ruling also.

11                    LIEUTENANT GOVERNOR DEWHURST:  And the

12     ruling.

13          Is there any objection from any members of the

14     Chair?  Hearing there's none, so ordered.

15                    SENATOR WEST:  Thank you, Mr. President.

16                    SENATOR VAN DE PUTTE:  Mr. President?

17                    LIEUTENANT GOVERNOR DEWHURST:  Senator

18     Van de Putte, for what purpose do you rise?

19                    SENATOR VAN DE PUTTE:  Parliamentary

20     inquiry, Mr. President.

21                    LIEUTENANT GOVERNOR DEWHURST:  State your

22     inquiry.

23                    SENATOR VAN DE PUTTE:  Mr. President,

24     Rule 5.14 (c) on the 81th legislative rules of the

25     Senate state that the Secretary shall prepare a list of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 55 of 203
Senate Floor Debate, 2nd Reading                March 17, 2009

5

1       all legislation for which notice has been given and the

2       list must be made available to each member of the Senate

3       and to the President no later than 6:30 on the day the

4       notice is filed.

5            Is this such notice the Notice of Intent?

6                 LIEUTENANT GOVERNOR DEWHURST:  Senator

7       Van de Putte, what's you're holding or what you just

8       showed is the intent calendar.

9                 SENATOR VAN DE PUTTE:  Mr. President,

10      parliamentary inquiry.

11                LIEUTENANT GOVERNOR DEWHURST:  State your

12      inquiry.

13                SENATOR VAN DE PUTTE:  Is a bill that

14      results from a report of the committee as a whole

15      subject to the intent calendar and Rule 5.14 (c)?

16                LIEUTENANT GOVERNOR DEWHURST:  Senator

17      Van de Putte, if a bill is part of the regular order of

18      business and a Senator wishes to suspend the regular

19      order of business, then the Senator must give notice

20      pursuant to Rule 5.14 (c).

21                SENATOR VAN DE PUTTE:  Parliamentary

22      inquiry, Mr. President.

23                LIEUTENANT GOVERNOR DEWHURST:  State your

24      inquiry.

25                SENATOR VAN DE PUTTE:  Is the Texas


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 56 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

6

1     Senate agenda aligned with the Notice of Intent for

2     March 17, 2009?

3               LIEUTENANT GOVERNOR DEWHURST:  Senator

4     Van de Putte, the Notice of Intent is typically included

5     in the green book.

6               SENATOR VAN DE PUTTE:  Mr. President,

7     parliamentary inquiry.

8               LIEUTENANT GOVERNOR DEWHURST:  State your

9     inquiry.

10              SENATOR VAN DE PUTTE:  If a Texan sitting

11    at home or looking at the proceedings of the Senate by

12    the either Texas Senate agenda or Notice of Intent,

13    would those citizens have any notification of the Senate

14    bill before us today?

15              LIEUTENANT GOVERNOR DEWHURST:  Senator

16    Van de Putte, the answer is yes and yes.  Senate bill

17    362 is listed on page 27 of the green book and it is

18    listed online.

19              SENATOR VAN DE PUTTE:  Thank you,

20    Mr. President.

21              LIEUTENANT GOVERNOR DEWHURST:  Thank you,

22    Senator Van de Putte.

23          Senator Fraser, do you wish to say anything or

24    go directly to amendments?

25              SENATOR FRASER:  Mr. Chairman, I'd like



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005519

1       to lay out the first amendment.

2                       LIEUTENANT GOVERNOR DEWHURST:  The Chair

3       lays out Floor Amendment Number 1 for Senator Fraser.

4       The secretary will read the amendment.

5                       SECRETARY:  Floor Amendment Number 1 by

6       Fraser.

7                       LIEUTENANT GOVERNOR DEWHURST:  The Chair

8       recognizes Senator Fraser to explain Floor Amendment

9       Number 1.

10                      SENATOR FRASER:  And if you don't mind,

11      I'd like to make sure they got the right one.

12          Last Tuesday night, when we were having the

13      testimony in the committee of the whole, Senator Van de

14      Putte and I had a conversation regarding the voter

15      registration certificate being required under this

16      legislation, and I think that the point she made was

17      valid in that it is the intent that I have an either/or,

18      either they can show a photo, a form of photo

19      identification or two other types of identification,

20      which could be a utility bill and a library card.

21          The way the language in the bill was written,

22      it implied you had to have your voter registration card

23      and two other forms of identification, and I told her

24      then that was not my intent by this amendment.

25                      I'm hopefully correcting that, and I think I



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005520

1    had advised Senator Van de Putte that I was laying it

2    out.  I think she's looked at it.  I suspect she would

3    have a comment, so that's what that amendment does.

4                    LIEUTENANT GOVERNOR DEWHURST:  Senator

5    Whitmire?

6                    SENATOR WHITMIRE:  Would the gentleman

7    yield?

8                    LIEUTENANT GOVERNOR DEWHURST:  Will

9    Senator Fraser yield to Senator Whitmire?

10                   SENATOR FRASER:  I would love to yield.

11                   SENATOR WHITMIRE:  Thank you, Senator

12   Fraser.  Even if we adopt this proposed amendment, isn't

13   it still going to be true, under the legislation that we

14   just took up, that you will actually be able to go vote

15   without a picture ID?  You're going to be able to use

16   these other documents, such as a government letter or

17   library card.  So all the time and effort you've spent

18   on what is called the voter ID, you're still going to be

19   able to go vote without producing a photo of the person

20   actually voting.

21                   SENATOR FRASER:  It is the beauty of the

22   legislation that I'm laying out that we have a relief

23   valve, is that we believe that the bulk, the

24   overwhelming number of people that have a photo ID will

25   use that, but if there is someone that doesn't have



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005521

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 59 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

9

1        that, we give them the ability to use other forms of

2        identification.

3                    SENATOR WHITMIRE:  Well, the point I'm

4        making is you still haven't solved the problems that you

5        alluded to during the all-night session, particularly

6        your brother coming and voting right after you did with

7        your ID.

8            I mean, really, if you believe people are

9        impersonating someone else, I would suggest that you

10       still haven't fixed that problem.

11           So why are you holding us up with such a

12       banner piece of legislation to all that were interested

13       and saying that you will never be able to impersonate

14       someone because now you're going to have to prove who

15       you are?  No, all you got to do is get creative, is it

16       not true, and have a library card, a utility bill and

17       just know how to fraudulently use that.

18                   SENATOR FRASER:  I think you just made my

19       point that we have voter fraud that is happening all

20       over the state, and I appreciate you making that point

21       --

22                   SENATOR WHITMIRE:  I'm not arguing for

23       the bill, you understand.  I'm trying to say you got a

24       big old gap in it, and, in fact, voter impersonation has

25       never been shown to be a problem.  Your real problem is



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 60 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

10

 1    met with mail-in ballots, which you don't address at all

 2    in this legislation, so it's just some of the

 3    communication we've had in the office with constituents

 4    point out, very properly, that you can hold this up as a

 5    voter ID, that it's going to stop impersonation, but, in

 6    fact, it's not.

 7         All it's going to do, as these constituents

 8    notify me, is make it impossible for seniors, people

 9    that are mobile, people that have changed address and do

10    not have these other documents that you allow them to

11    use, you're creating major obstacles for people who

12    otherwise would be able to go vote, and we'll discuss it

13    in more detail in a moment, but I just want to clear up

14    for the record, you're still not going to require

15    someone to absolutely prove who they are in terms of a

16    photo matching the voter certificate.

17         SENATOR FRASER:  As President Carter

18    said, the system we have today, it's easy to cheat.  I'm

19    trying to move a step toward, and realistically, we're

20    only addressing one small part of a --

21         Just a second, I'm in the middle of a

22    statement here.

23         SENATOR WEST:  Oh, I'm sorry.

24         SENATOR FRASER:  I allowed you the chance

25    to talk.  We're only addressing a very small part of a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 61 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

11

```
 1      huge problem.  We're taking a step in the right
 2      direction, but for you to say that because it doesn't go
 3      all the way of fixing everything, we shouldn't try to
 4      fix it, it's no different than we do in all legislation
 5      down here, is that sometimes you have to take small
 6      steps to get to the end result, and yes, I'd love to be
 7      able to fix all the fraud that we believe is happening,
 8      and I'm only addressing a portion of that, and that I
 9      think --
10           It sounds to me like what you're promoting is
11      the Indiana law that would put in a strict voter ID, and
12      if you want to offer up that amendment, that would be
13      great.
14           SENATOR WHITMIRE:  I'm not promoting that
15      at all, because I don't think that you have proven that
16      impersonation and fraud exists, and I'll discuss it in
17      my talks in a moment, and I didn't intend to debate you
18      this morning, but I do have a couple follow-up questions
19      that I meant to ask you.
20           You keep referencing Jimmy Carter as kind of
21      your role model.  I'm just curious, did you vote for him
22      when he ran for president?
23           SENATOR FRASER:  I respect him for being
24      a peanut farmer.
25           SENATOR WHITMIRE:  Okay, so you didn't
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 62 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

12

1      vote for him but now you're using him as your most

2      credible source.

3              Also, let me ask you another thing as you're

4      friend?  How long have you been in the legislature?

5      You've been in the Senate what, 15 years?

6                      SENATOR FRASER:  I know that I've been

7      here at least the last two years.  I can remember that

8      far back.

9                      SENATOR WHITMIRE:  More than 10; 5 in the

10     House.  When did you realize this was a problem?  And

11     you've served many good sessions.  Why didn't you

12     introduce a measure look this in previous years?  Why

13     now?  I'm just curious.

14                     SENATOR FRASER:  It's interesting you

15     bring that up.  In 1996, the Dallas morning news did a

16     guest editorial calling for photo ID because they were

17     having massive voter fraud in Dallas County.  They

18     stepped out front.  So this is not an issue that just

19     all of a sudden popped up.  This goes all the way back

20     to the problems we've had.

21                     SENATOR WHITMIRE:  What took you so

22     long?  If it was in '96 that they brought you to this

23     attention, did the problem go away or they didn't take

24     it that serious or it wasn't a credible issue?  I mean,

25     what's happened in the last two sessions that this is



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005525

Senate Floor Debate, 2nd Reading                    March 17, 2009

```
1     such a high priority for you and others?
2                  SENATOR FRASER:  It's like all issues,
3     that there's a lot of issues that come up and material
4     with time, and I believe that this is an issue whose
5     time has come.
6                  SENATOR WHITMIRE:  Well, I respectfully
7     disagree and I'll speak in more depth in a moment.
8     Thank you.
9                  LIEUTENANT GOVERNOR DEWHURST:  Senator
10    Van de Putte, nor what purpose do you rise?
11                 SENATOR VAN DE PUTTE:  To ask the author
12    of the amendment a few questions.
13                 LIEUTENANT GOVERNOR DEWHURST:  Will
14    Senator Fraser yield to Senator Van de Putte?
15                 SENATOR FRASER:  I would love to yield.
16                 SENATOR VAN DE PUTTE:  Thank you,
17    Mr. President.  Thank you, Senator Fraser.  Happy
18    St. Patrick's Day.
19                 SENATOR FRASER:  Thank you.  I had to do
20    a plan B here.  I'm not sure -- you know, as I said, you
21    know, I did have green on but you couldn't see it.
22                 SENATOR VAN DE PUTTE:  Senator Fraser,
23    with respect to Amendment Number 1, this came as a
24    result of my reading of the bill last Tuesday, when I
25    questioned as the bill was written or is written without
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senate Floor Debate, 2nd Reading                    March 17, 2009

14

1     the amendment, there is what I call you either have to

2     have a twofer or a threefer.  According to the bill that

3     was voted on last week, you would have to have a voter

4     certificate issued by your registrar in the county, plus

5     a photo identification.  If you didn't have either one

6     of those, then it would default and you would have to

7     have two more of the items that you listed as

8     alternative forms of proof.

9              So if the bill, as written, without this

10    amendment, even if you showed up with your driver's

11    license, you still would have to prove and get two other

12    pieces of identification, right, and this corrects that?

13                 SENATOR FRASER:  We believe that it

14    corrects that problem.

15                 SENATOR VAN DE PUTTE:  Okay.  And so in

16    each part of the section here, I think the most

17    important was, and that was what I questioned last week,

18    was that on page one, we didn't have an "Either," an

19    "Either," so that this way, if someone does go to the

20    polls with a photo identification, they do not have to

21    prove to others if it's in that list of photo

22    identifications, is that correct?

23                 SENATOR FRASER:  It's basically following

24    what we use in current law, and I would use, as I very

25    rarely take my voter registration card, I walk in, they



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senate Floor Debate, 2nd Reading                    March 17, 2009

15

1    have me on the list, I show them my driver's license

2    with my picture and my address.  The address matches

3    what's on the list.  My signature matches when I sign

4    it, so that would stay as it is now.

5                    SENATOR VAN DE PUTTE:  Now under this

6    amendment or incorporated into the body of the bill, if

7    a voter presents at a voting location with a driver's

8    license or photo identification, can election judge or

9    clerk demand two other proofs of identification if that

10   judge does not think that the photo ID matches up with

11   the person presenting to vote?

12                   SENATOR FRASER:  I'm sorry, the question

13   is if they show a photo ID?

14                   SENATOR VAN DE PUTTE:  Uh-huh.

15                   SENATOR FRASER:  And they can't verify

16   from the vote ID that that is the correct person?  Is

17   that the question you're asking?

18                   SENATOR VAN DE PUTTE:  Yes.

19                   SENATOR FRASER:  One second.

20                   Would you repeat your question?

21                   SENATOR VAN DE PUTTE:  Yes, Senator

22   Fraser.  My question is, should a voter present at a

23   polling location with a photo identification as

24   prescribed in your bill, does the election judge or

25   clerk, because sometimes it's the clerk, not



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 66 of 203
Senate Floor Debate, 2nd Reading                        March 17, 2009

16

1    particularly the head judge that is intake for the

2    voters, can either the election judge or clerk demand

3    two other proofs of identification if the election judge

4    or clerk suspects that, or the picture doesn't match up,

5    under your bill, what authority does the election judge

6    or clerk have?

7              SENATOR FRASER:  The bill, if someone

8    uses this form of identification, would go back to

9    current law, and the current law is the Secretary of

10   State educates the election judge and the election judge

11   then would make a determination.

12             SENATOR VAN DE PUTTE:  I understand

13   that.  My question is, does the election judge or clerk,

14   under your bill, even when a voter presents with photo

15   identification, have the authority to demand the two

16   other forms of identification prescribed in your bill?

17             SENATOR FRASER:  The answer to your

18   question is that, that no.  You know, if someone

19   presents an ID and they can't confirm it, there is a

20   fall-back position for the election judges to determine,

21   is this, you know, the person, and that's provided under

22   current law.  My bill doesn't impact that.

23             SENATOR VAN DE PUTTE:  So current law

24   would reaffirm the right of the voter to cast a

25   provisional ballot or does the judge have the authority



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senate Floor Debate, 2nd Reading                    March 17, 2009

1    to ask for more identification?

2              SENATOR FRASER:  My amendment is very

3    straight forward.  The amendment that I'm offering

4    clarifies that the threefer that you talked about

5    addressed that, and that's what I'm addressing in this

6    amendment.

7              SENATOR VAN DE PUTTE:  With this

8    amendment though, from what I understand, the bill had

9    required the two, but now if, with your amendment, when

10   they present with just a photo ID, my question was, does

11   the election judge have the authority though, with your

12   amendment, which is just, I think, clarifying, but

13   embedded in the body of the bill, does the election

14   judge have the authority to ask that voter to cast a

15   provisional ballot and then return with the two other

16   forms of ID provided in your bill?

17             SENATOR FRASER:  The amendment that I'm

18   laying out addresses the fact that we're not asking for

19   three forms of identification for the alternate means.

20             SENATOR VAN DE PUTTE:  I will ask my

21   question at the appropriate time after the amendment is

22   adopted, because I understand that -- but my question

23   still remains, with or without the amendment, what is

24   the authority of the election judge or clerk to ask for

25   subsequent proofs of identification should the photo,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

18

1          the election judge or clerk not think that it match up.

2                    Thank you, Senator Fraser.  I appreciate

3     you catching this.  When I read the bill, I thought that

4     that indeed was the case and I was very frightened of

5     the effect if all of my colleagues voted on a bill that

6     required every single Texan casting a vote to have both

7     pieces of documentation, and in the absence of either

8     the certificate or the photo ID, then have to go to a

9     three, to get two more.  I think that would have been a

10    terrible burden.  It's a terrible burden on certain

11    classes of people.  It would also be a terrible burden

12    for all Texans, and I appreciate I correcting this with

13    your amendment.  Thank you, Senator Fraser.

14                    LIEUTENANT GOVERNOR DEWHURST:  Thank you,

15    Senator Van de Putte.

16          Senator Shapleigh, for what purpose do you

17    rise, sir?

18                    SENATOR SHAPLEIGH:  Some questions of the

19    author of the amendment.

20                    LIEUTENANT GOVERNOR DEWHURST:  Will

21    Senator Fraser yield to Senator Shapleigh?

22                    SENATOR FRASER:  I will yield.

23                    SENATOR SHAPLEIGH:  Senator, I'm trying

24    to follow along on this amendment on lines 15, 16, 17 of

25    your amendment, where you're amending Section 10 of the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005531

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 69 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

19

1    bill, so I'm over here on Section 10, page 3, line 21,

2    so we're inserting, right after the number 1 on the bill

3    that's in our bill book, the words, "The voter's voter

4    registration certificate or," and then you begin to list

5    these documents.

6            So as I understand it, with your amendment,

7    any one of those documents suffices?

8                SENATOR FRASER:  Why don't you ask your

9    question again.

10               SENATOR SHAPLEIGH:  Okay, I'm trying to

11   understand how the words in your amendment fit into the

12   bill in our bill book, and so I'm looking at lines 15,

13   16, 17 of the floor amendment, where you are amending,

14   on page 3 of the bill, line 21, you're inserting some

15   words there, and the words that you insert are, "The

16   voter's voter registration certificate or," and then we

17   go into a laundry list of different documents that would

18   suffice under your amended bill.

19           So as I understand your amendment, if you

20   bring a voter registration certificate or a copy of a

21   current utility bill or a bank statement or a government

22   check or a paycheck or other government document that

23   shows the name and address of the voter, then that's

24   what you're requiring with this amendment.  So in

25   theory, am I right in saying that you that if you show



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    up a with voter's voter registration certificate, you

2    can vote?

3                    SENATOR FRASER:  The answer is no.

4                    SENATOR SHAPLEIGH:  The answer is no.

5                    SENATOR FRASER:  You couldn't just show

6    up with a voter registration card and vote?

7                    SENATOR SHAPLEIGH:  Could you say that

8    again?

9                    SENATOR FRASER:  If someone, under the

10   terms of 362, show up with a voter registration card on

11   them, they would not be allowed to vote.

12                   SENATOR SHAPLEIGH:  They would not be

13   allowed to vote?

14                   SENATOR FRASER:  I'm sorry, I'm going to

15   need to retract that.  Everyone that comes will be

16   allowed to vote before they leave.  I'll retract what I

17   just said.  Everyone coming, if they don't have the

18   other forms, they would vote a provisional ballot and

19   then it would have to be determined that they are who

20   they say they are.

21                   SENATOR SHAPLEIGH:  So with this section

22   of your amendment where you're inserting those words,

23   "Voter's voter registration certificate or," you're

24   still requiring some other ID under what you're doing

25   here?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 71 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

21

1           SENATOR FRASER:  Two non-photo pieces of

2       identification if they don't have --

3           If they don't have their voter registration

4       card, they would either show a -- you show a photo ID to

5       vote or you can show two other non forms.

6           SENATOR SHAPLEIGH:  Okay.  I'm hoping as

7       this goes through the process, and I think I understand

8       what you're trying to do to change the threefer to make

9       it a photo plus vote, I'm not sure your amendment does

10      that.

11          SENATOR FRASER:  If you got a correction

12      that makes it clearer --

13          SENATOR SHAPLEIGH:  No, I don't have any

14      corrections to it, but I think if you're trying to get

15      where you're trying to get, I'm not sure that amendment

16      gets you there.

17          SENATOR FRASER:  I believe this amendment

18      was drawn by legislative counsel, so I think they

19      believe that it accomplishes that, but if you read it

20      differently, it is my intent that someone would be

21      allowed to vote with two additional, but it would not be

22      three, not the voter registration card and two

23      additional.

24          SENATOR SHAPLEIGH:  Okay.  Thank you.

25          SENATOR FRASER:  They would not be



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 72 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

22

1    required three.

2                SENATOR SHAPLEIGH:  Thank you, Senator.

3                LIEUTENANT GOVERNOR DEWHURST:  Members,

4    Senator Fraser moves the adoption of Floor Amendment

5    Number 1.  The Secretary will call the roll.

6                SECRETARY:  Averitt, Carona, Davis.

7    Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos,

8    Harris, Hegar, Hinajosa, Huffman, Jackson, Lucio,

9    Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro,

10   Shapleigh, Uresti, Van de Putte, Watson, Wentworth,

11   West, Whitmire, Williams and Zaffirini.

12               LIEUTENANT GOVERNOR DEWHURST:  Members,

13   there being 31 "I's" and no "Nay's", Floor Amendment

14   Number 1 is adopted.

15               The Chair lays out Floor Amendment Number

16   2 by Senator Fraser.  The Secretary will read the

17   amendment.

18               SECRETARY:  Floor Amendment Number 2 by

19   Fraser.

20               LIEUTENANT GOVERNOR DEWHURST:  The Chair

21   recognizes Senator Fraser to explain Floor Amendment

22   Number 2.

23               SENATOR FRASER:  Mr. President, members,

24   I now lay out Floor Amendment Number 2.  Allow me to

25   explain.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 73 of 203
Senate Floor Debate, 2nd Reading                          March 17, 2009

23

1          Members, in the discussion, again, on Tuesday

2     night, a lot of discussion about voter education and the

3     intent of the bill.  The Secretary of State, in their

4     testimony, clarified two points.  One is that there is

5     an ongoing voter education that has been going on for

6     the last several years that was a HAVA grant that came

7     from the federal government of nine million dollars.

8          Last year, the Secretary of State testified

9     that they spent three million of that nine in voter

10    education.  Sitting in reserve in the Secretary of

11    State's fund from HAVA, there is two million dollars

12    that they verified that they believe can be eligible for

13    this.  Now they have to make a request of the federal

14    government to use that funding.  So this amendment that

15    I'm offering clarifies that the election officials at

16    the Secretary of State would make a request to have that

17    two million dollars in HAVA Funds remaining use for

18    these efforts.

19              LIEUTENANT GOVERNOR DEWHURST:  Senator

20    Zaffirini, for what purpose do you rise, ma'am?

21              SENATOR ZAFFIRINI:  To ask the author a

22    question.

23              LIEUTENANT GOVERNOR DEWHURST:  Will

24    Senator Fraser yield to Senator Zaffirini?

25              SENATOR FRASER:  Sure will.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 74 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

24

```
 1                SENATOR ZAFFIRINI:  Thank you,
 2      Mr. President.  Senator Fraser, I'm looking at the bill
 3      and see what you're doing is adding a paragraph to that
 4      Section 31.012.  The first paragraph seems to be
 5      identical, is that right?
 6                SENATOR FRASER:  If you'll hold on a
 7      second.
 8                SENATOR ZAFFIRINI:  On page 1, line 20 is
 9      where Section 2 starts.
10                SENATOR FRASER:  One second.  Okay.
11      Yes.  Page 1, Section 2.
12                SENATOR ZAFFIRINI:  Line 20.
13                SENATOR FRASER:  Yes.
14                SENATOR ZAFFIRINI:  And your amendment
15      includes lines 6 through 11, that seem to be identical
16      with the bill we have before us, so what you're doing is
17      adding sub-paragraph B, is that correct?
18                SENATOR FRASER:  I believe that is
19      correct.
20                SENATOR ZAFFIRINI:  How does that differ,
21      Senator?  How does this change the bill?
22                SENATOR FRASER:  It doesn't change the
23      bill, it just clarifies, and also based the testimony of
24      the Secretary of State that there's two million dollars
25      in funds that are left from HAVA, they have an ongoing
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 75 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

25

1    voter registration and it would clarify that they --

2    after the passage of the bill, we would make a request

3    that they request the federal government to use that two

4    million of HAVA funds for voter education.

5                 SENATOR ZAFFIRINI:  But in your

6    amendment, on line 17 of your amendment, you establish a

7    statewide effort to education voters.  Is that something

8    new or was that the intent of the bill as filed?

9                 SENATOR FRASER:  My amendment that I'm

10   looking at doesn't have a line 17.

11                SENATOR ZAFFIRINI:  If you look at the

12   amendment that was just distributed.

13                SENATOR FRASER:  The one that was passed

14   out has it.  I'm sorry.  Would you ask your question

15   again, please?

16                SENATOR ZAFFIRINI:  Yes.  On line 17, you

17   establish a statewide effort to educate voters, and my

18   question is, is this consistent with the legislative

19   intent of the bill as filed or is this in addition to

20   the bill?

21                SENATOR FRASER:  No, this is ongoing --

22   this, as I laid out in my amendment, the Secretary of

23   State spent three million in last year in voter

24   education as part of the charge of the Secretary of

25   State.  We want to make sure that all voters are



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    educated.  If they spent three million last year,

2    there's two million left in that fund and we would ask

3    that they make a request to the federal government.

4                    SENATOR ZAFFIRINI:  Thank you, Senator.

5    Going back to the bill that we have before us, I'm

6    looking at the fiscal note now.

7                    SENATOR FRASER:  Yes.

8                    SENATOR ZAFFIRINI:  And it is the same,

9    and the main thrust of it is, quote, "No fiscal

10   implication to the state is anticipated."

11        You may recall, Senator, that I questioned the

12   fiscal note several times last week.

13                   SENATOR FRASER:  Yes, you did.

14                   SENATOR ZAFFIRINI:  In different

15   situations.  And one of the things we noted is that the

16   Secretary of State would have to spend money and that

17   there certainly was a fiscal implication to the state.

18        Is this amendment that you're offering at this

19   point meant to clarify that position?

20                   SENATOR FRASER:  Senator, as you know, as

21   someone that has been on Finance and on the conference

22   committee for years, that the fiscal notes come from the

23   Legislative Budget Board.  Legislative Budget Board

24   talks to people that potentially impact on the bill as

25   filed.  The bill, as filed, they gave us a fiscal note



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 77 of 203
Senate Floor Debate, 2nd Reading                      March 17, 2009

27

1    and the note said no fiscal impact.

2                    SENATOR ZAFFIRINI:  But the bill hasn't

3    changed until this point.  The bill that's filed is

4    still the bill before us, with the exception of the

5    amendments that we are consider today.

6                    SENATOR FRASER:  That's correct.

7                    SENATOR ZAFFIRINI:  So the fiscal note

8    would still apply.

9                    SENATOR FRASER:  Yes.

10                   SENATOR ZAFFIRINI:  Before the amendment?

11                   SENATOR FRASER:  Yes.

12                   SENATOR ZAFFIRINI:  Yesterday in the

13   Senate Finance Committee, Senator Ogden surprised us by

14   presenting a contingency rider for your bill, Senator.

15   Were you aware that he was offering that contingency

16   rider?

17                   SENATOR FRASER:  Was I aware that he was

18   offering it?

19                   SENATOR ZAFFIRINI:  Before he offered it.

20                   SENATOR FRASER:  We have had discussions

21   the last couple of days about if funds were needed, that

22   he is sympathetic that if funds are needed, yes.

23                   SENATOR ZAFFIRINI:  Well, basically if I

24   recall correctly, and I'm subject to correction if

25   somebody remembers otherwise, but if I recall correctly,



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 78 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

28

1     he said that he listened to the debate and that he
2     believed that we were right and that there would be
3     fiscal implications to the state, and that that's why he
4     was offering that contingency rider relative to your
5     bill, which I must admit it's very rare for someone to
6     offer a contingency rider for an author of a bill
7     instead of for his or her own, unless he's doing it on
8     behalf of that author, and that's why I wanted to know
9     if you knew ahead of time that he was going to offer
10    that contingency rider.
11              SENATOR FRASER:  He's your chairman and
12    you sit beside him and I wouldn't attempt to say what
13    he's trying to do.
14              SENATOR ZAFFIRINI:  And I'm sure he'll
15    come back later.  But my concern yesterday, Senator, is
16    that while Senator Ogden's contingency rider addressed
17    the issue of the Secretary of State's spending, he did
18    not address the issue of the Department of Public Safety
19    spending any money, and is your position still that the
20    Department of Public Safety can absorb all the costs
21    related to voter identification, including providing
22    free voter identification materials?
23              SENATOR FRASER:  As the author of the
24    bill, I lay out the bill, the Legislative Budget Board
25    does the research of the potential cost.  They came back



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 79 of 203
Senate Floor Debate, 2nd Reading                        March 17, 2009

29

```
 1    with no significant cost.  My position is I read no
 2    significant cost.
 3                    SENATOR ZAFFIRINI:  So you will accept
 4    that position.  And Senator Fraser, earlier you said,
 5    earlier in the week, you said you had not considered the
 6    expenses related to a pre-clearance process before the
 7    Department of Justice.
 8                    SENATOR FRASER:  I'm sorry; what did you
 9    just say?
10                    SENATOR ZAFFIRINI:  It was my
11    understanding that when we discussed this bill earlier,
12    that you had not considered -- I believe you said in
13    response to questions, that you had not considered the
14    expenses related to pre-clearance or to a lawsuit
15    related to this bill.
16                    SENATOR FRASER:  I'm sorry, Senator, the
17    middle part of that sentence, I still haven't gotten
18    what you've said.  You said I have not considered
19    something about the Justice Department.
20                    SENATOR ZAFFIRINI:  The expenses of the
21    state related to the pre-clearance process.
22                    SENATOR FRASER:  Expenses or?  I'm
23    missing --
24                    SENATOR ZAFFIRINI:  Or the lawsuit, or
25    the lawsuit that is likely to follow.
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 80 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

30

1                     SENATOR FRASER:  The expenses or the

2        lawsuit?

3                     SENATOR ZAFFIRINI:  Yes.  And is that

4        still true today, you still not have considered any

5        expenses that we expect to be encumbered by the state of

6        Texas to deal with the pre-clearance process and with

7        the lawsuit that is expected to be filed if this bill is

8        passed?

9                     SENATOR FRASER:  I file the bills, the

10       bill, as we always do.  Legislative Budget Board comes

11       up with a fiscal note.  The fiscal note says there's no

12       impact.

13                     SENATOR ZAFFIRINI:  But I'm not asking

14       about the fiscal note now.  I'm asking if you have

15       considered those expenses?

16                     SENATOR FRASER:  I am taking it one step

17       at a time, that my job is to try to, this morning, to

18       get this off the Senate floor.

19                     SENATOR ZAFFIRINI:  Thank you, Senator.

20       I've also noticed that you are citing several

21       amendments.  One in particular responds to Senator Van

22       de Putte's questions, and I appreciate that.  During our

23       debate earlier, I asked you about the student

24       identification card and why your bill would accept what

25       you described as student identification cards issued by



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005543

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 81 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

31

1    a public institution of higher education but not by a

2    private institution of public education.  Do you intend

3    to offer any amendments related to that issue?

4              SENATOR FRASER:  Senator, probably not.

5    I'm open to discussion, but a public institution,

6    because it is a, you know, a government or quasi

7    government entity, we have control over, you know, the

8    quality or the validity of that.  We have no controls

9    over the validity that would be offered by someone

10   else.  So if someone is going to offer something, we

11   have to know that the information or have some

12   confidence that that information is correct.

13             SENATOR ZAFFIRINI:  Thank you, Senator

14   Fraser, and if you will indulge me to ask a question of

15   the presiding officer.

16             PRESIDENT:  Senator Zaffirini, for what

17   purpose?

18             SENATOR ZAFFIRINI:  Thank you,

19   Mr. President.  For the purpose of a very personal

20   introduction.

21             PRESIDENT:  You're recognized.

22             SENATOR ZAFFIRINI:  Thank you,

23   Mr. President.  Mr. President and members, it is my

24   pleasure to introduce to you a very special page who is

25   with us today.  This is Brennan Morter from Laredo,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 82 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

32

1    Texas.  His mother, Katrina, is with us today, and she

2    is my niece and God-daughter, and they are with my

3    sister, Celisa Pappas Borcher, who is Brennan's

4    grandmother.  My son Carlos, who many of you, know is

5    his God-father, so you can see there are many inter-

6    relationships.

7              Brennan is a second grader at United Day

8    School.  His hero is Spiderman.  He's a Cub Scout and a

9    student athlete and he is with us today celebrating his

10   birthday.  He turned eight years old yesterday, but he

11   decided to come to the Texas Senate and work with us and

12   see us in action.

13             Thank you, Mr. President and members.  Please

14   join me in welcoming Brennan Morter, our very special

15   Senate page today.  Thank you.

16             (Clapping.)

17             PRESIDENT:  Thank you, Senator

18   Zaffirini.  We welcome your guest.

19         The Chair at this time --

20             Senator Van de Putte, for what purpose?

21             SENATOR VAN DE PUTTE:  Thank you,

22   Mr. President.  To ask the author of the amendment a

23   question.

24             PRESIDENT:  Will author yield?  Senator

25   Fraser, will you yield for a question?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senate Floor Debate, 2nd Reading                    March 17, 2009

33

1            SENATOR FRASER:  I'll be glad to yield.

2            SENATOR VAN DE PUTTE:  Thank you,

3     Mr. President.  Thank you, Senator Fraser.  I'm looking

4     at the amendment and Section B of the 31.012 on -- it

5     says, "The Secretary of State, in cooperation with the

6     appropriate non-profit organizations, as determined by

7     the Secretary of State and with each party's nominee for

8     governor in the most recent gubernatorial general

9     election received 20 percent or more."

10            If, Senator Fraser, we had two gubernatorial

11     candidates that listed on their party affiliation

12     independent, how do you foresee the Secretary of State

13     giving the independent party part of the statewide

14     efforts to educate voters?

15            SENATOR FRASER:  The amendment is very

16     clear.  The intent is that any -- any party that

17     received 20 percent or more of votes, there would be an

18     effort by the Secretary -- the Secretary of State would

19     monitor that and would set up the policies.

20            SENATOR VAN DE PUTTE:  Senator Fraser, a

21     follow-up question.  Were you aware that Governor Perry

22     received 39.02 percent of the vote as the nominee from

23     the Republican party in the most recent gubernatorial

24     election?

25            SENATOR FRASER:  Yes.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 84 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

34

```
 1              SENATOR VAN DE PUTTE:  And were you aware

 2    that Chris Bell received 29.78 percent of the vote in

 3    the prior gubernatorial, representing -- he was the only

 4    Democrat on the ticket for that particular position?

 5              SENATOR FRASER:  Yes.

 6              SENATOR VAN DE PUTTE:  My question is

 7    that, Mr. Kinky Friedman received 12.44, running as an

 8    independent, but also Ms. Strayhorn received 18.1

 9    percent.  Since both of those were listed as

10    independents and they meet the 20 percent threshold

11    listed in your amendment, how do you foresee an

12    independent party, but by your amendment, we are -- the

13    Secretary of State must adhere.  How would they

14    accomplish that?  Since there may not be an independent

15    party, would this subject as to your requirement, would

16    it be subject to interpretation or litigation?  Because

17    I don't know that there is a bona fide independent

18    party, but both of those candidates represented and meet

19    the threshold of your amendment.

20              SENATOR FRASER:  The Secretary of State

21    would determine, is what the wording says.

22              SENATOR VAN DE PUTTE:  Thank you, Senator

23    Fraser.

24              Mr. President?

25              PRESIDENT:  Senator Van de Putte, for
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 85 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

35

1    what purpose?

2                 SENATOR VAN DE PUTTE:  I would like the

3    opportunity to introduce at this point, since I have the

4    floor and just finished with the questioning for Senator

5    Fraser, two of my special guests.

6                 PRESIDENT:  Plead proceed.

7                 SENATOR VAN DE PUTTE:  Thank you,

8    Mr. President.  Members, it is a great pleasure for me

9    to have two young students with me at my desk today.

10   Both students of Central Catholic High School in San

11   Antonio, who have come here to witness the days

12   deliberation.  I have Mr. Andrew Villareal and Mr. Angel

13   Ortiz, who are with us.  Please welcome these fine two

14   young men to our Senate chambers.  Thank you.

15                 (Clapping.)

16                 PRESIDENT:  Thank you, Senator Van de

17   Putte.

18                 Members, the question now is on the

19   adoption of the Floor Amendment Number 2.  The Secretary

20   will call the roll.

21                 SECRETARY:  Averitt, Carona, Davis.

22   Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos,

23   Harris, Hegar, Hinajosa, Huffman, Jackson, Lucio,

24   Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro,

25   Shapleigh, Uresti, Van de Putte, Watson, Wentworth,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005548

1    West, Whitmire, Williams and Zaffirini.

2                    PRESIDENT:  There being 19 "I's" and 12

3    "Nay's", Floor Amendment Number 2 is adopted.

4           The Chair recognizes Senator Fraser for a

5    motion.

6                    SENATOR FRASER:  Mr. President, members,

7    I would now move passage of Senate bill 362, as amended,

8    to engrossment.

9                    PRESIDENT:  Members, the question is on

10   passage to engrossment.  Senator Watson, for what

11   purpose?

12                   SENATOR WATSON:  At the appropriate time,

13   to speak on the main motion.

14                   PRESIDENT:  Senator Watson, this is the

15   appropriate time.  You're recognized.

16                   SENATOR WATSON:  Thank you very much,

17   Mr. President.  Members, the outcome today, we all know,

18   isn't really in doubt.  It hasn't been since we opened

19   this legislative session.  We knew what would happen,

20   what we should expect well before our meeting last week

21   of the committee of the whole, but even knowing what's

22   about to happen today, there was still a debate to be

23   had last week in a case that needed to be made.

24          People who are watching us, and maybe more

25   importantly, those who weren't watching, those millions



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 87 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

37

1    of legally voting Texans whose lives won't be the same

2    if this bill passes, have a right to expect someone to

3    prove that the supposed voter impersonation problem is

4    at least significant enough to justify all the time

5    we're spending on it or that this bill actually was the

6    answer to stopping what cases were being told about.

7         Or, more importantly, that this bill would not

8    reduce the ability of people to vote.  These folks, on

9    both sides of this debate, most of them good, concerned,

10   every day Texans, are entitled to proof, not assumptions

11   or rationalization or and anecdotes, but actual

12   statistical proof that Senate bill 362 won't target some

13   of our most vulnerable citizens and block them from

14   fulfilling their right and duty.

15        Members, the case was not made, and I

16   deeply believe that whether it's in the Department of

17   Justice or before a federal court, that will be

18   confirmed.  There remains only the flimsiest evidence

19   that voter impersonation, the only type of fraud

20   addressed by this bill, even exists.  Not counting, not

21   counting 60 year old history and the unverified

22   testimony of a controversial witness for a partisan

23   elections administrator, nothing at all we've heard

24   demonstrates that this is actually occurring any more

25   than anecdotally in Texas.  And let's be honest.  If



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005550

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 88 of 203
Senate Floor Debate, 2nd Reading                        March 17, 2009

38

1    someone had the goods on a case that was going to settle

2    this fight once and for all, they probably would have

3    been testifying at some time other than 4 in the

4    morning.

5         It's also far from clear that Senate bill 362

6    will stop whatever irregularities might conceivably be

7    out there.  We've heard concerns about absentee

8    ballots.  This bill does nothing about them.  We've

9    heard about suspicious voter registrations.  This bill

10   leaves registration procedures entirely in place.

11        We've been showered with hypotheticals about

12   how much could possibly go wrong if some shadowy figure

13   decided they'd rather steal a voter registration card

14   than an election.  Yet we've heard of no instances in

15   memory where our elections failed our democracy because

16   people impersonated voters.

17        Unfortunately, the most significant new

18   information we got last week was that our existing laws

19   haven't been enforced with the rigor, or at least the

20   money that we've all been led to believe.

21        I suppose this debate has provided a service,

22   if all it's done is helped establish once and for all

23   that the Attorney General has not, in fact, spent about

24   a million and a half of a grant battling voter

25   impersonation.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 89 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

39

1           I know if there's anything we all share in
2       this chamber, it's a hope that we'll get double checked,
3       typo-free data about what cases are being investigated,
4       what's being spent on them and where they're occurring,
5       even if it means fewer boisterous political
6       proclamations about epidemics.  So let's be clear about
7       the record.
8           According to the witnesses, voter
9       impersonation hasn't had any impact on any election at
10      any level at any time in any part of this big state.
11      But none of that matters today.  Today isn't about
12      proof.  It's not about the law.  Today is about
13      politics.
14          We can and we will shoot at this thing until
15      we put holes in the holes, but that doesn't change the
16      numbers in this room and it really doesn't change that
17      one potent question on every political poll that gets
18      waived around like a DNA test in a murder trial.  Should
19      people have to show voter identification before they
20      vote?  Let's take that head on.  It's a very simple
21      question and surely a simple question would have an easy
22      and simple answer, right?
23          Well, every one of you who's tried to fix
24      schools, fix health care, fix property taxes, fix
25      tuition or fix traffic knows that just isn't so, and no



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005552

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 90 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

40

1    amount of hoping or guessing is going to turn this bill

2    into an adequate answer to this question.  I wish this

3    bill did what some say it does.  We all do.  Every

4    single one of us on this floor wishes we could end all

5    voter fraud and maintain full access to voting without

6    costing the state or the counties a single dime.  But if

7    that bill exists, members, this one sure isn't it.  This

8    one isn't it.

9            So let's talk for a minute about what we would

10   be working on if we were actually serious about this.

11           Just for fun, let's think about solutions that

12   aren't partisan gut checks but actually go after the

13   cheaters without harming legitimate, conscious voters.

14   We could and we should increase penalties on every

15   criminal on every side who tries to influence the

16   outcomes of our elections.  We could seal shut whatever

17   loopholes people have found to get documents they need

18   to register falsely.  We could empower election judges

19   to crack down or people they know are cheating without

20   harming those who aren't.  We could follow the lead of

21   some counties and do a better job of keeping our voter

22   rolls clean.  We could develop bold, innovative

23   strategies that expanded registration even while

24   imposing new voting restrictions.

25           We could even have a serious bipartisan effort



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 91 of 203
Senate Floor Debate, 2nd Reading                          March 17, 2009

41

1    to figure out how the state, the state which currently

2    bears the full burden of providing voter ID in the form

3    of a voter registration certificate, can add photo

4    identification to its responsibilities and how it can

5    pay for it as cheaply as possible.

6         I favor all of those things.  I'd imagine that

7    just about all of you in this room do.  We want to stop

8    fraud wherever it exist.  We all believe in the sanctity

9    of the voting booth.  So how is it possible that voter

10   ID is not just divisive but wrenching?  Because in the

11   end, I really don't think it's about the policy of

12   providing identification before voting.

13        This has risen to the top of everything; over

14   property tax relief, over the economic crisis, over

15   health care, over education reform, over tuition and

16   university funding, because it's not like those things.

17   Those are policy questions.  This is a political bill

18   being considered in a political place, and there's no

19   clearer demonstration of how obviously political or

20   maybe politically obvious this bill is than the fiscal

21   note.

22        Last week, the folks flew from other states to

23   talk about their voter ID programs and they couldn't

24   stop talking about what a great job they did educating

25   people about what the law meant.  They just didn't brag



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 92 of 203
Senate Floor Debate, 2nd Reading                       March 17, 2009

42

1    about spending money, they used it in court to justify

2    their actions, but last week, we were told we didn't

3    need any money, and then yesterday, we're told there's

4    now a two million dollar rider for the broad label of

5    voter education.  Well, I suppose that's some

6    recognition of this billing's failings but it also

7    highlights those failings.  It demonstrates the

8    expediency with which this is pursued.  No fiscal note,

9    but it now costs two million dollars.  And it reaffirms

10   the lack of data.  Why not one million dollars?  Why not

11   five million dollars?  What does a real appropriate

12   effort cost?  And, of course, it also shows the hidden

13   costs if we're wrong.  People won't be educated on this

14   new obligation.  And of course, that's just the

15   Secretary of State's office.

16        What about DPS?  DPS told us last year by

17   giving a free photo identification card to anyone who

18   claims they want it for voting, they would lose $671,000

19   a year, more than 1.3 million per budget and more than

20   four million every six years out of our highway fund.

21        The methodology's in that bill and everything,

22   more than a half million people have these ID cards.  At

23   least half of those would use this voting exemption to

24   avoid having to pay for them.  Those folks pay an

25   average of $15 per card and you have a fiscal impact of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005555

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 93 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

43

1    negative four million dollars through 2012.

2            Folks, look it up.  House bill 218, 80th

3    session.  It's really quite convincing.  But this year,

4    the fiscal note informs us that while there could be a

5    revenue loss due to the voting exemption, it is unknown

6    how many people would make the request and therefore

7    unknown the amount of revenue loss that would occur.

8            Members, that is not an answer.  In fact, it

9    speaks to the other problems.  We don't know how many

10   should or will need the ID, and, of course, it's been

11   pointed out nothing was said about the cost of

12   submitting this for pre-clearance under the Voting

13   Rights Act.

14           This ignorance of basic facts is particularly

15   troubling given Texas has a special burden on voting

16   rights issues.  The state earned it with a terrible

17   legacy of intimidation, suppression, and outright

18   violence that hovers darkly over our history.  No one,

19   not one of you in this chamber has any desire to go back

20   to those terrible times.  I know you love Texas and its

21   people too much to even consider it.  But I wonder if

22   you've really studied this bill and made sure that it

23   won't turn us back toward the past.

24           I keep looking and asking and hoping for any

25   data to prove this bill, this bill won't harm the very



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 94 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

44

1    voters who ones were explicitly targeted by laws and

2    thugs, those treated so shamefully in a past that's far

3    more recent than the transgressions inside box 13.  No

4    one, it seems, knows just what this bill could mean to

5    people who are poor enough, old enough or just plain

6    disconnected enough that they haven't needed to get a

7    driver's license.

8         No one tells us how many Texans don't have a

9    photo ID, what those millions of people may look like or

10   whether they'll be able to meet this bill's requirements,

11   and no one has shown a single study or say for sure just

12   how common it is to have all of these shards of paper

13   that we in this chamber seem to take for granted.

14        No one, frankly, has demonstrated a level of

15   thought and care that gives me any confidence that this

16   bill stands a chance of holding up outside these

17   partisan confines and partisan rules.  And that should

18   be troubling to all of us.  Because if I'm wrong, and if

19   the will of this chamber is somehow upheld, then this

20   bill will have consequences, and believe it or not,

21   those consequences will have nothing whatsoever to do

22   with politics, games or power.  The consequences will

23   play out on decent, hard-working, patriotic citizens who

24   just want to vote but can't find time for yet more

25   hurdles and burdens, let alone those imposed on them by



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005557

Senate Floor Debate, 2nd Reading                    March 17, 2009

45

1    their own government.

2          We all talk about the sanctity of the voting

3    booth.  Well, it isn't a registration card, the judge,

4    the rule book, or even the ballot itself that makes it

5    sacred.  It's the person.  It's you and me.  It's our

6    constituents.

7          In the end, this bill targets far too many of

8    us by declaring a crisis that doesn't exist and adding

9    new burdens that, for some, will be expensive and

10   difficult.

11         This bill makes it harder for honest people to

12   vote.  It's wrong no matter what happens today.

13         Thank you, Mr. President.

14              LIEUTENANT GOVERNOR DEWHURST:  The Chair

15   recognizes Senator Van de Putte to speak on the bill.

16              SENATOR VAN DE PUTTE:  Thank you,

17   Mr. President.  Voting is our fundamental right, and as

18   I stand in this chamber, I have the vantage point of

19   looking at the portraits, particularly two who came to

20   this chamber to fight for voting rights and for all

21   civil rights.

22         I look across and I see the portrait of

23   Barbara Jordan, who was the lone vote time after time

24   against measures that would disenfranchise the people

25   that she represented, and I look over in the corner and



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     I see the portrait of Henry B. Gonzalez, the senator who

2     holds the filibuster record for indeed daring to speak

3     long into the night against the Jim Crow laws.

4          Voting is a fundamental right, the right to

5     choose our leaders and choose the direction of our state

6     and our nation, and would hope that before we place any

7     additional burden on Texans to exercise that right, that

8     we would have just some proof that the problem of voter

9     impersonation actually exists.

10         We know from the testimony that the problem

11    does not exist in Texas.  Some of my colleagues are

12    determined to proceed with this mis-guided effort that

13    will have the effect of disenfranchising many Texans.

14         Please bear in mind I know that my Republican

15    colleagues, I don't think they really want this fight or

16    they want to disenfranchise any voter in any of our

17    communities, but it's the effect of the law, not our

18    intentions, that carry the weight of discrimination.

19         Make no mistake, the voter ID laws are part of

20    a national partisan agenda designed to suppress voters.

21    Those voters who happen to be women, happen to be

22    elderly, happen to be minorities and even college

23    students, who, by the way, tend to vote more

24    Democratic.

25         Sadly in Texas, the history of voter



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005559

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 97 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

47

1    suppression began long before 2009, and it didn't end

2    when the poll tax was abolished or when required

3    literacy tests were discontinued by law.

4          And so I hope you will indulge me while I

5    recount the true efforts of discrimination.  In November

6    of 1964, letters were sent to residents in the Rio

7    Grande Valley, both in English and in Spanish, warning

8    them to stay home because if they went to the polls,

9    they could, quote, get arrested for interfering with the

10   election judge.

11         That same year, the Houston Post reported that

12   on election day, that handbills had been distributed

13   only in black and Latino neighborhoods, telling voters

14   that the police would be stationed at polling places to

15   arrest voters who had any outstanding traffic tickets or

16   parking tickets or owed child support payments.  This is

17   true, members.

18         In 1982, when Carl Rowe was then running Bill

19   Clements' campaign, the Secretary of State at that time,

20   David Dean, sent local election officials a felons list

21   of voters to be purged from voter rolls, but a federal

22   court forced him to drop the effort when that list was

23   found to include eligible voters, most of them Hispanic

24   and African American, and one of those rolls included a

25   state representative candidate.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 98 of 203
Senate Floor Debate, 2nd Reading                     March 17, 2009

48

1          On election day, that very same year in

2     Dallas, we wonder why 33 African American precincts ran

3     out of ballots as voters waited 4 1/2 hours in line in

4     the rain to vote.

5          That same year, large black and red signs were

6     posted in those precincts in Dallas by five Republican

7     state judges that read, quote, "Do not remove this sign

8     by order of the Sheriff of Dallas County.  You can be

9     imprisoned for --" and then they listed six voting fraud

10    offenses.

11         Those were examples of just a few of our past

12    voter suppression tactics designed to scare people away

13    from the polls, but all designed to scare people in

14    Hispanic and African American neighborhoods with a heavy

15    Democratic turnout.

16              (End of CD.)

17

18

19

20

21

22

23

24

25



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005561

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 99 of 203
Senate Floor Debate, 2nd Reading                    March 17, 2009

49

1    IN THE COUNTY OF TRAVIS    )

2    STATE OF TEXAS              )

3        I, Lynne Rodriguez, Certified Shorthand Reporter in

4    and for the State of Texas, hereby certify to the

5    following:

6            That the CD entitled, "2009 (81R) SB 362,

7    Senate Flr Debate, 2ND Reading,"

8    was transcribed at the request of Anne Wilson, 209

9    West 14th Street, Attorney General's Office, Austin,

10   Texas 78701, and the amount due is $_____.

11       That the aforementioned CD was transcribed

12   to the best of my ability to hear and understand the

13   CD;

14       That the transcript was submitted by

15   E-trans on April 23, 2012, to Anne Wilson, 209 West

16   14th Street, Attorney Generals' Office, Austin,

17   Texas  78701;

18       I further certify that I am neither

19   counsel for, related to, nor employed by any of the

20   parties or attorneys in the action in which this

21   proceeding was taken, and further that I am not

22   financially or otherwise interested in the outcome

23   of the action.

24       Certified to by me, this 22nd day of

25   April, 2012.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1
2
3
4

*Lynne M. Rodriguez*

Lynne Rodriguez, Texas CSR No. 8140

5        Expiration Date 12/31/13

FIRM REGISTRATION NO: 283

6         ESQUIRE DEPOSITION SERVICES

100congress, Suite 2000

7         Austin, Texas  78701

(512) 328-5557

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

2009 (81R) SB 362, SENATE FLR DEBATE, 2ND READING, PART
2

Transcribed by Lynne M. Rodriguez, CSR



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005564

1             SENATOR VAN DE PUTTE:  (CD started in mid

2      sentence.)

3             -- in the context of the history of our

4      state, as we defend all Texans' right to vote.  We have

5      not won the battle in the Senate today.  That was

6      pre-determined the day we set this issue and no other

7      pressing issue as a special order, but I sincerely hope

8      that for those who have been discriminated against and

9      those who will have to show an extra burden here just to

10     cast the right to vote, it is my hope that this voter ID

11     bill, as written, will never become law.

12            Thank you, Mr. President.

13            LIEUTENANT GOVERNOR DEWHURST:  The Chair

14     recognizes Senator Gallegos to speak on the bill.

15            SENATOR GALLEGOS:  Thank you, Mr.

16     President, members.  Two years ago, I came back to

17     Austin against my doctor's orders to stand together with

18     my colleagues to block the passage of voter ID, and on

19     the last day, when we heard the bill and Lieutenant

20     Governor told me that the bill would not be brought up,

21     I told you that I would fight this bad piece of

22     legislation at any cost, and I told you that I would be

23     back if this bill came up again.  Well, here I am.

24            It's a shame, members, that it has come to

25     this day.  It's a sad day in Texas history when we are



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     wasting our taxpayer's time and money on a non issue.

2            Texas is first in the country for uninsured

3     people.  Home foreclosures are skyrocketing and

4     thousands of young Texans and their families are trying

5     to figure out how to pay for college education.  People

6     are still living out of trailers in my district and

7     several of your districts since Hurricane Ike.  And

8     members, you know, Texans have some real problems to

9     deal with but voter ID legislation does not solve any of

10    them.

11           Let me read to you what was an editorial in

12    this Sundays Chronicle, and this is coming from the

13    Houston Chronicle, not me.  "Texans currently must show

14    a voter registration card or other ID at the polls.

15    This measure would add a photo ID or other

16    alternatives.  Democrats call requirements a tactic to

17    intimidate the elderly, the disabled, the poor and

18    minorities who are less likely to vote Democratic into

19    staying away from the polls, thereby shaving off a few

20    points from the total vote.

21           The Republicans call it guarding against voter

22    fraud and impersonation, but on a larger scale, it seems

23    to boil down to an illustration that Republicans in

24    Texas and throughout the United States are fearful for

25    their future political viability and are desperately



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    trying to regain a power and an identity that has been

2    severely eroded as of late.

3            If that's the case, members -- and there are

4    better, more constructive ways to begin recouping lost

5    ground than throwing their weight around, especially on

6    an issue with as little merit as this one.

7            Chandler Davidson, a Rice sociology professor

8    and an expert on minority voters rights told the

9    Chronicle that the only aspect of voter fraud that voter

10   ID addresses is voter impersonation.  The Republicans

11   are offering a solution for a problem that does not

12   exist, he said, and there is no credible evidence to

13   show that there is a problem in Texas or elsewhere, end

14   quote.

15           Colleagues like my colleague Leticia Van de

16   Putte said that General Greg Abbott spent 1.4 million

17   dollars in a crusade against voter fraud that has yet to

18   seen anyone convicted of voter fraud, 1.4 million

19   dollars.

20           Wouldn't Texans like to see this money used

21   more wisely, or at least one conviction come out of

22   this, at least one conviction, Senator Fraser.

23           Now that we are voting on a passage of a bill

24   that no one has seen a fiscal note until we've seen two

25   million dollars that, all of a sudden, come in, which is



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    sure to cost hundreds of thousands, if not millions, but
2    really who knows, who knows.
3            I mean, when you mandate the voters of this
4    state to have a photo ID, I mean, somebody is going to
5    have to pay.  Somebody is going to have to pay
6    something, and if you mandate, if you mandate Texans to
7    go get a photo ID, then what is the state's
8    responsibility?  That's a big question, members.
9            If you're going to mandate for a Texas voter
10   to get a photo ID, then the state of Texas is going to
11   be responsible for that person and how to get an ID,
12   whether it's free, whether they have to go to a DPS
13   center, however it is, somebody is going to have to pay
14   on both sides.  On the voter's side, I call it a poll
15   tax.  You know, members, I think it's time to stop
16   wasting Texans money.
17           The right to vote is most cherished right a
18   citizen could have, and in our nation's history, the
19   right has been denied of many.
20           Just last week, we heard of Leticia's story
21   that this was not an uncommon practice.  In the fight to
22   open the doors of a voting booth, there was a long
23   struggle and I thought we were passed this.
24           Members, let me -- you know, some of the fears
25   that I've heard about voter impersonation and somebody



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 106 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

6

1      going to the polls and saying who they're not -- trying

2      to impersonate somebody, I mean, we've got illegal

3      immigration coming from Canada, from Europe, from Asia

4      and from Latin America.

5              You know, I would -- You know, let me walk you

6      through of some of the fears that I've heard on the

7      other side.  You know, you got somebody, let's say, for

8      example, from Mexico coming across the border.  It's

9      going to take him or her at least, you know, maybe two

10     weeks to get across.  He or she has got through the

11     brush, through the mesquite, eating Spam and sardines

12     and crackers, water, whatever, you know, whatever they

13     could drink, and then going through that for at least a

14     month or two months to get to Houston or Dallas or San

15     Antonio.

16             After two months, I mean, blood, sweat, going

17     through that fields and all that, here's what the fears

18     that I'm hearing on the other side.  You think that that

19     person is going to wait for the first election and go to

20     the polls and try to vote and try to impersonate a

21     voter?  I don't think so.  I mean, just going through

22     all of that, all of that blood, sweat and tears just to

23     go stand in line and try to impersonate a voter.

24             You know, when I first got elected to the

25     House in '91, you know, I went to the floor.  The only



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193  Document 725-38  Filed on 11/17/14 in TXSD  Page 107 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

7

1    ID I had was my driver's license, and when I got to the

2    door, they stopped me and asked me, "Well, where are you

3    going?"  And I said, "Well, I'm going to my seat there

4    in the House of Representatives.  My seat is inside."

5    Well, they made me wait.  They made me wait until, until

6    that I said -- until they confirmed that, you know, who

7    I was, and then finally, with my family with me, they

8    let me go in.  And you know, I said, "Well, it's 150

9    members, I'm new," didn't think anything about it and

10   just went to my seat.

11           Well, four years later, I got elected to the

12   Senate and, you know, here I am with my family coming to

13   the Senate door.  The only ID I had on me was my

14   driver's license.  I had to wait.  They said, "Where are

15   you going?"  "I'm going to my seat on the Senate floor.

16   I got elected," you know, and they said, "Well, wait a

17   couple of minutes."  So I had to wait for them to

18   confirm that I said who I said I was, you know, as far

19   as ID, that the picture on my driver's license was a

20   picture of the ID that they had in me in the back.

21           So, you know, if they're going to stop me at

22   the door after I got elected in the House and I got

23   elected in the Senate and they're asking me who I am.

24   If I'm saying on who I am, they got to confirm me here

25   right outside these doors, then how do you think those



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    people are going to feel out there when they know

2    they're U.S. citizens and they're going to go to the

3    voting booth and the election judge is going to tell

4    them well, "Well, we need this ID, this ID and this

5    ID."  Well, obviously, when you're going to challenge

6    somebody and tell them that they are not who they say

7    they are and they know they're a U.S. citizen, you know,

8    you might get some violence, I don't know.  You know,

9    when you challenge me, I'm going to challenge, you know,

10   if I know that I'm a U.S. citizen.

11          And then, you know, how are they going to

12   react?  You know, Senator Fraser, the only amendment

13   that you left off was back in the Jim Crow days.  If

14   you're going to have -- if you're going to do voter

15   suppression, do it right.  You know, put German

16   Shepherds  and a fire hose there, and if I go -- if

17   somebody goes there and they're impersonating a voter,

18   well then throw the dogs on them and, you know, throw

19   the hose on them.

20          You know, that's what this bill is all about.

21   You know, I think that, you know, when you really look

22   at it, it's voter suppression any way you call it.  Like

23   Leticia said, back to the Jim Crow, George Wallace

24   days.  It's a shame, it's a shame that we got down to

25   this, and, you know, I hope when you vote, members, when



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005571

1    you vote on this bill, just think about that.  Think

2    about that, when they stop me here at the door, not only

3    in the house but in the Senate.  Thank you.

4              LIEUTENANT GOVERNOR DEWHURST:  Senator

5    Gallegos, this is somewhat unusual for me to say, but I

6    do not get involved in floor debates, but you did make a

7    comment at the beginning of your remarks that I know was

8    unintended on your part.  You made reference to me, and

9    I believe that if you will remember, each time in the

10   2005 session you asked me not to bring up the bill,

11   either you were going down to Houston for your surgery

12   or on days you specifically asked me, I satisfied your

13   request, and so I think you probably mis-spoke --

14             SENATOR GALLEGOS:  No, no, no, I'm

15   talking about the night, the last night when you came to

16   my desk, you said, "Senator, go on home.  We're not

17   bringing the bill."  That's what I was talking about.

18             LIEUTENANT GOVERNOR DEWHURST:  Yes, and I

19   tried to -- You were sick.  I didn't want you -- I told

20   you that you needed to go home and that we would not

21   bring up the voter ID.

22             SENATOR GALLEGOS:  That's what I was

23   referring to.

24             LIEUTENANT GOVERNOR DEWHURST:  Thank you,

25   Senator.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 110 of 203
Senate Floor Debate 2nd Reading, Part 2                          March 17, 2009

10

1              I'm going to pause for a moment.  Senator

2       Huffman would like to do an introduction.

3              SENATOR HUFFMAN:  Thank you very much for

4       accommodating me, Mr. President.  And members, I'd like

5       to -- I have a special introduction today.  We have some

6       special guests in the gallery, and they are UTMB medical

7       students.  There's nearly a hundred here who have come

8       today from Galveston.  They got up early this morning to

9       join us in Austin.  They are from the school of

10      medicine, nursing, health professions and biomedical

11      sciences, and they come from many districts throughout

12      Texas, so many of your constituents are here in the

13      gallery this morning.

14             UTMB is a mark of excellence.  For the past

15      three years, UTMB medical students have led the way with

16      the highest board scores out of any Texas public medical

17      school.  Nursing students have an average pass rate of

18      98 percent on licensing exams, and the Rehab Sciences

19      and Physician Assistant programs are both ranked in the

20      top ten nationally.

21             As you look at each student, be reminded of

22      the resilience of UTMB.  Every UTMB student suffered

23      from Hurricane Ike.  Many students lost their homes and

24      everything they owned, but this did not deter them from

25      continuing their education since UTMB stops for no



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005573

 1    storm.

 2             They are -- Look at these young people up

 3    here.  These are going to be the people that are going

 4    to be taking care of us in our old age.  I know you want

 5    to support them and support UTMB.  I'm going to ask you

 6    them to all stand up and if we could give them a warm

 7    welcome to the Texas Senate.  Thank you.

 8             (Clapping.)

 9             LIEUTENANT GOVERNOR DEWHURST:  Thank you,

10    Senator Huffman.

11             The Chair recognizes Senator Ellis for an

12    introduction.

13             SENATOR ELLIS:  Thank you,

14    Mr. President.  I have some guests here today from my

15    district and across the state.  These are young people

16    who are active with Teach for America.  This is Teach

17    for America day at the capital, Senator Shapiro, and

18    obviously, they're going to be visiting with you and

19    other members about some of the fine things they've

20    done.  If I might, they had read a resolution earlier, I

21    won't read it, but I just want to tell you a little bit

22    of history about Teach for America in case some of us

23    have forgotten.

24             Wendy Kopp proposed Teach for America's

25    creation when she was an undergraduate at Princeton


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 112 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

12

1     University.  It was an undergraduate thesis during her

2     college year.  She was convinced that many in her

3     generation was searching for a way to assume a

4     significant responsibility that would make a real

5     difference in the world and the top college students

6     would choose teaching over more lucrative opportunities

7     if a prominent teacher core existed.  So as a 21 year

8     old, Kopp raised 2.5 million dollars in start-up money,

9     hired a skeleton staff and launched a grass roots

10    recruitment campaign.

11          During Teach for America's first year in 1990,

12    500 young men and women began teaching in six low income

13    communities across the country.

14          Since then, Teach for America's net worth has

15    grown to 20,000 individuals.  They've become the

16    nation's largest providers of teachers for low income

17    communities and have been recognized for building a

18    pipeline for leaders to educational equity and

19    excellence all across our country.

20          Nationally, more than 60 percent of the cores

21    members continue to work in education, including the 360

22    school leaders that many of us know about.  Currently,

23    there are almost 600 core members that are working

24    across the great state of Texas and they reach more than

25    50,000 students.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005575

Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

13

1           I know that Erica Lee is active with them.  I

2     was looking for them earlier.  I just want all you all

3     to stand, and members, would you please welcome and

4     recognize these young people.  I hope my daughter

5     becomes one as well.

6           (Clapping.)

7           LIEUTENANT GOVERNOR DEWHURST:  The Chair

8     recognizes Senator Shapiro.  Do you wish to speak on the

9     introduction?

10          SENATOR SHAPIRO:  Please.  Thank you.

11    Members, I absolutely say ditto to everything that

12    Senator Ellis just said.  These are the best and the

13    brightest and they have chosen, and I mean chosen, to

14    participate in Teach for America.  We are so fortunate,

15    and the problem has been we've only had some in the

16    state of Texas and they've mostly been in the Houston

17    area, so they're now branching out and coming to the

18    Dallas area, and we hope that as time progresses, we'll

19    have them all over the state of Texas.

20          This is a great, great organization and I hope

21    you all recognize and realize how important and valuable

22    this program really is.  Thank you, Senator Ellis, for

23    bringing it to the floor.

24          LIEUTENANT GOVERNOR DEWHURST:  The Chair

25    recognizes Senator Hegar to speak on the bill.


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005576

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 114 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

14

1          SENATOR HEGAR:  Thank you, Mr. President,

2     members.  I just wanted to make a couple points because

3     I've heard several of the statements earlier today, and

4     I know when we had the very long hearing the other

5     night, we had a lot of numbers being thrown out about

6     the amount of expenditures from the Attorney General's

7     Office, the number of convictions, the number of guilty

8     pleas, because we've talked about how difficult it is to

9     prosecute cases of voter fraud.

10          We all talked about how difficult it was;

11     witnesses, all the witnesses were consistent on that

12     point, and I just wanted to make sure everybody was

13     clarified that the actual number of expenditure wasn't

14     the 1.4 million, it was actually $697,000, and that's

15     for 30 individuals or 30 indictments.

16          Of those 30 indictments, 23 have either been a

17     guilty plea or a conviction.  One of those convictions,

18     as I mentioned the other night, and I forget at what

19     point in the night I mentioned it, was a constituent of

20     mine from Port Lavaca, where actually the outcome of the

21     election was changed because of the fraud that went on.

22     And so I wanted to make sure we all were aware of those

23     numbers and make sure we heard all those, because I

24     think it's important the record was set straight the

25     other night, and I think it's important that we make



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senate Floor Debate 2nd Reading, Part 2                                    March 17, 2009

15

1    sure it's set straight as well today.

2           I also wanted to mention that sometimes --

3           Try being a member in my shoes, a member who,

4    Dean, you entered the Senate, the House many years ago.

5    You looked a little bit younger, maybe had a little full

6    hair like I do today, and I'll tell you, when I go to

7    the Senate chambers, there's been times that Riggs has

8    had to correct people, said, "No, he's actually a

9    senator.  He does get to walk onto the Senate floor."

10   The other day I went to the House and I got stopped

11   because the guy said, "Wait, who are you?  You're going

12   on to the House floor.  You don't have permission to

13   go."

14           "Well, I'll get out my ID and I'll show you or

15   you just take my word.  I'm Senator Glen Hager."  So

16   sometimes the youthful look can have those problems as

17   well.  Also, Dean, I'll let you know, I didn't vote for

18   President Jimmy Carter.  Actually I was too young and I

19   wasn't able to vote in that election, so I just wanted

20   to make sure.  I didn't know if anyone else would tell

21   you who voted back then, but I didn't.  I didn't have

22   the opportunity.

23           So my point is just making sure the record is

24   straight.  So with that, thank you all members.  I just

25   think it's important that we know the actual number of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

16

1     convictions that have occurred.  There has been 23 and

2     one of them was a constituent of mine who actually did

3     change the outcome of that election.  Thank you.

4                    LIEUTENANT GOVERNOR DEWHURST:  The Chair

5     recognizes Senator Shapleigh to speak on the bill.

6                    SENATOR SHAPLEIGH:  Thank you,

7     Mr. President, members.  I want to share with you the

8     story of David Iglesias, the former Republican U.S.

9     Attorney for New Mexico, because I think his story and

10    his firing give context and reveal to us here today the

11    real story behind what you, Senator Fraser, call voter

12    ID.

13         Iglesias was appointed by George Bush in

14    August of 2001 and became embroiled in one of the

15    largest scandals ever to hit the United States

16    Department of Justice.  Soon after his appointment,

17    Iglesias came under intention pressure from Pete

18    Domenici, Heather Wilson, the Department of Justice and

19    White House to take action on alleged voter fraud in New

20    Mexico.

21         In 2004, Patrick Rogers, a Republican

22    operative in New Mexico sent an e-mail to Iglesias that

23    said this, quote, "I believe the voter ID issue should

24    be used at all levels, federal, state, legislative

25    races.  You are not going to find a better wedge issue."



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005579

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 117 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

17

1          Soon thereafter, based on e-mails, calls and
2     letters from DOJ, Republican office-holders and the
3     Republican party, David Iglesias did the right thing.
4     He set up a task force in 2004 to investigate the scope
5     of voter fraud in New Mexico.  He included local, state
6     and federal law enforcement and both Democratic and
7     Republican officials.
8          After reviewing over a hundred cases, he and
9     his task force concluded there were no prosecutable
10    cases of voter fraud and refused to bring charge where
11    there was no evidence to support it.
12         In a PBS interview, David Iglesias said he was
13    not willing to engage in unlawful activities.  Those
14    were his words, to prosecute cases that just weren't
15    there.
16         Let me emphasize this point.  David Iglesias
17    was a loyal Bush appointee, a Republican who had
18    previously run for statewide office, and could not find
19    evidence of voter fraud in the state of New Mexico.  He
20    let DOJ and the White House know that he would not
21    prosecute these cases because they did not exist, and
22    for that, David Iglesias was fired.  His determination
23    to stick to the law and his values got him fired.
24         Later, when asked how he would characterize
25    using United States Attorneys to benefit a particular



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 118 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

18

1    political party at the polls, Iglesias said this, "It's

2    reprehensible, it's unethical, it's unlawful.  It very

3    well may be criminal, and I know it's a marked departure

4    from prior administrations, both Republican and

5    Democrat, who understood that U.S. Attorneys, as chief

6    federal law enforcement officials, have to stay out of

7    politics."

8         When asked why he thought he was fired,

9    Iglesias said this.  "For elicit partisan political

10   reasons.  Specifically, not coming up with voter fraud

11   cases, number one.  And number two, not rushing forward

12   indictments involving prominent Democrats during the

13   election cycle."

14        When asked about the motivations of those

15   pushing voter fraud indictments, he said that their

16   motivations, quote, "Were clearly partisan."  There

17   appears to be a growing body of evidence that suggests

18   there's voter suppression going on throughout the

19   country.

20        The investigation into the firing of David

21   Iglesias and eight other U.S. Attorneys continues to

22   this date.  Just two weeks after, Karl Rove, who is

23   actively involved in these U.S. Attorneys cases, agreed

24   to testify before Congress under oath regarding his

25   role, and coincidentally, the first witness for the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_005581

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 119 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

19

1      proposition in Texas that we need a voter ID bill was

2      Hans von Spakovsky, who himself was part of that DOJ.

3           Fast forward to last session when House bill

4      218, a predecessor to this bill, was passed in the

5      House.  In a column he wrote at that time for the Quorum

6      Report, Royal Masset, who for 15 years was a political

7      director for the Republican party of Texas, stated in

8      writing this:  "Voter ID is a direct descendent of poll

9      taxes and of allowing only white male property owners to

10     vote.  In its effect, it is racist, barbaric, anti-

11     Democratic and contrary to everything that made America

12     great."

13          Mr. Masset said that requiring photo IDs could

14     cause enough of a drop-off in legitimate Democratic

15     voting to add three to five percent to the Republican

16     vote, and really, that's what this bill is all about.

17          In 2005, the census announced that Texas had

18     joined Hawaii, New Mexico and California as the only

19     majority minority states.  By 2035, Texas state

20     demographer predicts that Hispanics will make up the

21     majority ethnic group in Texas.

22          In my district, this bill is about Maria

23     Lopez, 70 years of age, who cleans offices.  She's never

24     had a driver's license, never needed one, and when she

25     is asked for one, or a birth certificate, or a pilot's



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     license, or any of the documents listed in Senate bill

2     362, she won't have them, because the time and expense

3     to go get one are too much for a lady who works 60 hours

4     a week at minimum wage; so she won't vote.  And keeping

5     her home is what this bill is about.

6              As Mr. Masset stated yesterday in the Dallas

7     Morning News, Hispanics should take this personally

8     because it is aimed at them.

9              This bill is about Republicans scaring off

10    just enough elderly, disabled, blacks and Hispanics to

11    stay in power four more years, plain and simple.  Thank

12    you, Mr. President.

13              LIEUTENANT GOVERNOR DEWHURST:

14    Mr. Doorkeeper?

15              DOORKEEPER:  Mr. President, there is a

16    message from the House.

17              LIEUTENANT GOVERNOR DEWHURST:

18    Mr. Messenger.

19              MESSENGER:  Mr. President, I am informed

20    by the House to direct the Senate the House has taken

21    the following actions:  The House has passed the

22    following measures:  HCR 97 by (Inaudible), and German

23    Exchange student Carolyn Bosch on the occasion of her

24    occasion of her visit to the state capitol on March 16th

25    and 17th.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005583

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 121 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

21

1              LIEUTENANT GOVERNOR DEWHURST:  The Chair

2    recognizes Senator West for an introduction.

3              SENATOR WEST:  Thank you very much,

4    Mr. President.  Mr. President, arise to recognize Pastor

5    Anthony Noland with the Paradise Missionary Baptist

6    Church and a group of 12 young men ages 9 to 17 in the

7    gallery, and I'd ask them to be stand to be recognized,

8    and I'd also ask us to welcome them to their state

9    capitol.

10             (Clapping.)

11             LIEUTENANT GOVERNOR DEWHURST:  Senator

12   Williams.  The Chair recognizes Senator Williams to

13   speak on the bill.

14             SENATOR WILLIAMS:  Thank you,

15   Mr. President.  Members, today I stand in support of

16   Senate bill 362.  In the course of this debate, there

17   have been many concerns that have been raised about the

18   voter impersonation and whether or not that really

19   occurs.

20             Many of you, in fact, most of the folks who

21   have spoken so far today would argue that voter

22   impersonation does not occur.  I disagree.  I have here

23   in my hand four newspaper articles, two from the Monitor

24   in Progresso, about a story in Progresso, and another

25   from the Rio Grande Guardian.  These four newspaper


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005584

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 122 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

22

1    articles that are dated March 9th, March 14th, for the

2    Monitor, and March 10th and March 16th for the Rio

3    Grande Guardian, reference voting irregularities in the

4    Progresso Independent School District with a school

5    board election.

6         This prompted me to make an open records

7    request of the Attorney General, and I have, as a result

8    of that open records request, signed, notarized

9    affidavits demonstrating that voter impersonation does,

10   in fact, occur in Texas.

11        Following the May 4, 2008 election conducted

12   in the Progresso Independent School District, several

13   citizens and non-citizens attested that various

14   individuals had perpetrated numerous forms of voter

15   fraud, including voter impersonation.  I'd now like to

16   read some excerpts from these affidavits, these sworn

17   affidavits, and I'm going to introduce them into the

18   record.

19        The first is from Mr. Torres, and in his

20   affidavit, he attests to the following.  "On Monday,

21   April the 28th, 2008, I was brought to the Progresso

22   Independent School District site by Lorenzo Castillo,

23   who handed me a voter registration card to participate

24   in the elections.  He stated that they would pay me to

25   go vote for Juan Ramos, Michael Villa and David



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

23

1    Hernandez.  I proceeded to go in and cast the vote with

2    the registration card that belonged to Alfredo Medrano.

3    After I went in to vote, I was paid $10 by Jose

4    Guadalupe Villa at the time -- and at this time,

5    Mr. Lorenzo Castillo took the card from my possession."

6         We also have an affidavit from Abigail Enfante

7    and Marciella Enfante, who were both poll watchers.  In

8    their affidavits, these women both attest that on April

9    28th, around 2 p.m., a voter by the name of Jimmy

10   Vasquez went in to vote with a voter registration card

11   in the name of Juan Pablo Maldono.  Priscilla, the

12   clerk, told him, "You're not Juan Pablo Maldono, you're

13   Jimmy Vasquez."  Then he answered, "Yes, I am."  He was

14   asked to present ID and he turned around and walked out.

15        Members, but for the fact that this poll

16   worker recognized Mr. Vasquez and realized that he was

17   not who he claimed to be, he would have been allowed to

18   vote and his vote would have counted in this election.

19        There's another affidavit by Jessica Rongel,

20   and in her affidavit, she attests that Mr. Guadalupe

21   Villa asked her to recruit a friend to vote and that her

22   friend would be provided with a voter registration

23   card.  And Jesus Vasquez, in his affidavit, attests that

24   he did not exercise his right to vote in the Progresso

25   school board elections on May 10th and that someone used



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005586

1     his identity to vote in the election and appeared in

2     person at the early voting site.

3           And finally, an affidavit from Andrea Peña,

4     and in her affidavit, she attests, "Mr. Oscar Villa

5     forced me to vote with another person's voter

6     registration card when I very clearly told him I could

7     not vote because I'm not a citizen of the United

8     States.  He said it wasn't a problem; all I had to do

9     was go to the park in Progresso and he would give me a

10    voting card.  He told me that if I helped him, he would

11    fix my legal problems, referring to how he'd help me so

12    that they wouldn't take away my children."

13          "When I arrived at the park, he gave me the

14    card of Mrs. Maria de los Martinez, and proceeded to

15    tell me that someone inside there was waiting to help me

16    and that I shouldn't forget the names he had given me.

17    When I entered the voting building, a young man who was

18    one of those acting judge entered the booth with me and

19    voted for me."

20          Members, these affidavits demonstrate that

21    in-person voting fraud is very real.  It happens.  It's

22    happened just a few weeks ago or a few months ago in the

23    Progresso Independent School District election.

24          These affidavits are also supported by the

25    testimony of Mr. Ed Johnson, who's an employee of the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

1    Harris County Tax Assessor collector, and voter

2    registrar Leo Vasquez.  If you will recall, last week

3    Mr. Johnson testified that a variety of voter fraud had

4    occurred in one of our states most populous counties,

5    including the casting of vote by people who were not

6    alive.

7         Not only does voter fraud, in-person voter

8    fraud occur, but Texas has a legitimate interest in

9    deterring and detecting this voter fraud.  As Justice

10   Stephens remarked in the majority opinion in Crawford v.

11   Marion County, there is no question about the legitimacy

12   of the importance of our state's interest in counting

13   only the votes of eligible voters.  The interest in

14   ordinarily administration and accurate recordkeeping

15   provide a significant justification for carefully

16   identifying all voters participating in the election

17   process.

18        Members and ladies and gentlemen who are with

19   us here today, we as elected officials have a duty to

20   protect the integrity and legitimacy of representative

21   government.  As the report of the Commission on Federal

22   Election Reform that was chaired by former President

23   Jimmy Carter and former Secretary of State James Baker

24   observed, Americans are losing confidence in the

25   fairness of elections.  And while we do not face a



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005588

Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

26

1    crisis today, we need to address the problem of our

2    electoral system.  The electoral system cannot inspire

3    public confidence if no safeguards exist to deter or

4    detect fraud or to confirm the identity of voters.

5         We must have an electoral system that inspires

6    confidence.  We must prevent fraud and we must prevent

7    the disenfranchisement of legitimate votes.  Members, I

8    ask you to join me in voting "I" for Senate bill 362.

9         Mr. President, I would also move that my

10   remarks be reduced to writing and placed in the record

11   and I would like to include as a part of my remarks

12   these sworn affidavits that I made reference to in my

13   remarks.

14        LIEUTENANT GOVERNOR DEWHURST:  Members,

15   you have heard the motion by Senator Williams.  Is there

16   any objection to the inclusion of the remarks by Senator

17   Williams and the affidavits in the record?

18        Senator Shapleigh, for what purpose do you

19   rise, sir?

20        SENATOR SHAPLEIGH:  Mr. President, I

21   don't have any objection to it but I'm hoping that we

22   put everyone's remarks in the record so we have an

23   accurate record of what took place on this bill here

24   today.  I'll make that motion at the appropriate time.

25        LIEUTENANT GOVERNOR DEWHURST:  You've



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005589

Case 2:13-cv-00193  Document 725-38  Filed on 11/17/14 in TXSD  Page 127 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

27

```
 1     heard the motion by Senator Williams.  Is there any
 2     objection from any member?
 3              The Chair hears none and the motion is
 4     adopted.
 5                   SENATOR SHAPLEIGH:  Thank you,
 6     Mr. President.
 7                   THE COURT:  If you hold just for a
 8     minute.  There's a motion by Senator Shapleigh to
 9     include --
10                   SENATOR SHAPLEIGH:  I would make the
11     motion that we include everybody's comments to this bill
12     to the culmination of the bill, including all the
13     exhibits and the discussions that were had on any of the
14     votes.
15                   LIEUTENANT GOVERNOR DEWHURST:  Let's hold
16     on that until, until engrossment, and then we'll include
17     all of it.
18                   SENATOR WILLIAMS:  Thank you.
19                   LIEUTENANT GOVERNOR DEWHURST:  Thank you,
20     Senator Williams.
21                   SENATOR WILLIAMS  Mr. President, do I
22     still have the floor?
23                   LIEUTENANT GOVERNOR DEWHURST:  Yes.
24                   SENATOR WILLIAMS  Okay.  in light of the
25     motion that's coming in a few moments, I would just also
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_005590

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 128 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

28

1    like to correct the record.  There was a statement made

2    earlier by Senator Gallegos that the Attorney General

3    spent 1.4 million dollars investigating voter fraud, and

4    respectfully, I would direct the body's attention to our

5    testimony in committee, which conclusively demonstrated

6    that that is not case the case.  With that, I'm done

7    with my remarks for today.  Thank you.

8                    LIEUTENANT GOVERNOR DEWHURST:  Senator

9    Lucio, for what purpose do you rise?

10                   SENATOR LUCIO:  To speak against the

11   bill, Mr. President.

12                   LIEUTENANT GOVERNOR DEWHURST:  You're

13   recognized.

14                   SENATOR LUCIO:  Thank you, Mr. President,

15   and I will be brief.  Members, I rise only because

16   Senator Williams brought up my district, and I did turn

17   in, and it was noted as one of the exhibits back when we

18   met as the committee as a whole.  I'd like to read the

19   letter from our District Attorney down in Hidalgo

20   County, one of the biggest counties in the state, as

21   Senator Williams mentioned, and it states, "To the

22   Senate Committee of the Whole, Voter Identification

23   Legislation," and it reads as follows.  "Allegations of

24   a few cases of voter impersonation occurring in Hidalgo

25   County during 2008 came to my attention on Thursday, May



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      the 5th, 2009 by several members and staff members in

2      the Texas legislature.  Apparently they were obtained

3      from the Texas Secretary of State's office, who, along

4      with the Office of Attorney General, have been in

5      possession of this evidence for awhile."

6              "Without discussing the details of allegations

7      currently pending, I can tell you that I believe that

8      there is a problem with compliance with the law.  It

9      lies more in the quality of the administration of

10     elections than in law itself.  The irregularities have

11     seen -- we have seen occur mostly in non-partisan local

12     elections of small governmental entities such as school

13     districts, water districts and municipalities, some of

14     which decline to contract the administration of their

15     elections to the contract election administrator's

16     office."

17             "This has, in the past, led to questions.  If

18     I were to recommend an amendment to the Texas Election

19     Code, it would not be to increase burdens placed on

20     honest voters attempting to cast their ballots, but

21     instead, to further professionalize the administration

22     of elections by requiring small governmental entities to

23     contract with their counties elections administrator

24     instead of administering those elections themselves."

25             "Further, I would require the Secretary of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 130 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

30

1    State and/or the office of the Attorney General to very

2    quickly forward to local district or county attorneys

3    the irregularities of which they have credible evidence

4    so that we can investigate those incidents and prosecute

5    them when the evidence suggests a violation of the

6    law."

7            "Thank you very much for the opportunity to

8    share my views.  Respectfully, Rene Guerra, Criminal

9    District Attorney, Hidalgo County, Texas."

10           Members, I share this letter with you because

11   Mr. Guerra was not able to be here last week when we had

12   the committee as a whole, and it's important for you to

13   hear from a gentleman that has served that county for

14   two decades in these matters that we're dealing here

15   today, so I ask you to understand that there's not

16   widespread voter fraud in that county, especially at a

17   higher level.

18           As I mentioned, in some local units of

19   government, there has been some discrepancies, but

20   certainly we will be working to try to, you know,

21   address those issues.

22           Thank you, Mr. President.

23           LIEUTENANT GOVERNOR DEWHURST:  Thank you,

24   Senator Lucio.

25           The Chair recognizes Senator Ellis to speak on



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    the bill.

2              SENATOR ELLIS:  Thank you, Mr. President,

3    and members, I'll be as brief as I can be.  Obviously

4    both sides have put together a pretty good record on

5    this piece of legislation but there are a couple of

6    point I do want to make.  I don't know if I made them

7    before or not.

8              Chairman Fraser, this is the 64th day of a 140

9    day legislative session.  I just want to reiterate to

10   you and all of the members that on our opening day,

11   obviously a decision was made to change the rules so

12   that this bill could come up.

13             Now at an unprecedented time in our history,

14   with all of the problems, economic problems that we have

15   in this country and around the world, the most important

16   thing some would have us believe in Texas, Senator

17   Fraser, is this voter ID bill.

18             Now clearly, the votes are there, because you

19   only need 16 to pass it, so I guess I don't have to give

20   a real long speech, but I do want to point out to you

21   that as important as it is to some that you are on the

22   right side of the politics on this issue, because

23   there's a drum beat in the base of your party to try to

24   get this bill passed.  For you, for your sake, I'm glad

25   you are going to go ahead and get it out of here early



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005594

1    because you're certainly on the wrong side of history,

2    and at least for the remainder of this session, maybe

3    we'll be able to focus on issues that really matter to

4    people.

5         It's interesting, when the witnesses came in,

6    I didn't see some of the titans of election opportunity

7    from Texas.  Our experts come in and served as resource

8    witnesses.  Now based on some of the way their questions

9    were answered, it looks like some of those people bought

10   their tickets at the last minute to get in here because

11   they certainly weren't very prepared.

12        It's interesting this bill does not cover mail

13   balloting.  It's interesting it doesn't cover it because

14   most of the fraud that has been discussed on this floor

15   or allegations of fraud have been instances where it has

16   involved mail-in balloting.  Now if you were to guess,

17   if you can't guess, just go ask some expert in either

18   party, who's more apt to benefit from mail-in

19   balloting.  Are people more educated, are they more high

20   income?  Do they tend to be more from the Democratic

21   party or the Republican party?

22        We had a little interesting lesson in

23   history.  We heard a lot about President Jimmy Carter,

24   Secretary of State James Baker.  We didn't have a clear

25   idea of where HAVA came from.  The Help America Vote Act



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1        was passed because of the debacle in Florida, that

2        regardless of which side any of us in this chamber may

3        have been on the issue, you couldn't help but be

4        embarrassed when developing countries were saying Jimmy

5        Carter needs to put together an election time and

6        monitor the elections in America, particularly in

7        Florida.  That was a comprehensive piece of legislation,

8        Senator Fraser.  You passed out the recommendations.

9        It's a great set of recommendations.  Even the summary

10       is only about eight pages.  But what has happened here,

11       with the Help America Vote Act and with the Carter/Baker

12       Commission, has been to do a little cherry-picking.

13             This bill is an attempt to pull out the part

14       of that recommendation from HAVA, Help America Vote Act,

15       and the Carter/Baker Commission that tends to benefit

16       one party over the other and one group of people over

17       the other.  That's the reason why Texas was put under

18       the Voting Rights Act.

19             Hey, it's not a partisan comment when I make

20       it.  Democrats controlled this chamber when Lyndon

21       Johnson signed the historic Voting Rights Act.  Leticia

22       made reference to my predecessor over here on the Senate

23       wall, when Senators and Congressman Jordan added Texas

24       to the Voting Rights Act, it was a bilingual amendment

25       of all things.  It just didn't put Texas in but other



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    states, because even President Johnson didn't want to

2    admit that there were problems in the Lone Star State.

3    He wanted to believe that in his political lifetime, the

4    adoption of states rights, I guess, Texas would clean it

5    up on its own.  We didn't and we still haven't.

6         We ought to really take a deep breath and

7    pause, and hope when it gets over to the House side,

8    that they exercise better judgment than us.  Hey, I

9    could read the political tea leaves.  I know you're

10   concerned at the voting rights department that the

11   Justice Department won't pre-clear this piece of you

12   know what that's going to pass here today.  So I suspect

13   that there will be an attempt.  I heard the rumor mill

14   says you just bypass the Justice Department and go to a

15   three judge panel in Washington D.C.

16        One of your witnesses testified, nice young

17   man, nice young man, but interesting.  All of those

18   career professionals in the Justice Department who've

19   been under there under Democrats as well as under

20   Republicans, Troy, resigned because the career

21   professional said Georgia's voter identification

22   suppression will shouldn't be pre-cleared.  That's what

23   the professionals said.  That gentleman that you had

24   testifying here the other day overruled the career

25   professionals and they eventually quit.  I mean, part of



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 135 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

35

1     his resume indicated he was on the Federal Elections

2     Commission.  He was.  Never got approved because his

3     history came back to haunt him.

4          We're making a serious mistake today.  More

5     than anything else, we ought to be worried about Texas

6     being 46th among the 50 states in the country in terms

7     of number of people who show up to vote.

8          Last cycle, 54.7 percent voter participation

9     rate, voter participation rate in Texas in 2008.  Part

10    of that Carter/Baker Commission recommends a lot of

11    common sense approaches like election day registration.

12    That's probably why Minnesota has a 78 percent

13    participation rate; Wisconsin 72; Maine, 71.  Even New

14    Hampshire, without election day registration, they have

15    71 percent.  Colorado, 69; Iowa, 69; Michigan, 68;

16    Alaska, 68.  You made the comment on the floor the other

17    day during the committee of the whole meeting that

18    election rates had gone up in those states, those that

19    had passed a voter identification bill.

20          I would make the argument to you maybe

21    election rates went up because the people were angry

22    because that bill did pass in Georgia and Indiana, and

23    tell you you might be surprised what happens this next

24    go around.

25          The last comment I want to make.  There's been



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 136 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

36

1          a lot of talk about what we do in Texas today and other

2          states that have some version of voter identification.

3          Just so members would know what happens now, somebody

4          made the comment that about 24 states have some form of

5          photo ID.  I want to make it very clear what happens in

6          America today.

7                    This is according to the Pugh Center on

8          states.  Only three states require a photo

9          identification; Florida, Georgia and Indiana.

10                   Florida, the same state that was the impetus

11         for creating the Carter/Baker Commission and the Help

12         America Vote Act.  Georgia and Indiana.  Another four

13         request it, don't require it but they request it.

14         Hawaii, Louisiana, Mississippi and South Dakota.  18

15         states require ID, photo or non-photo ID, for all

16         voters.  Texas is one of those states, along with a

17         number of our neighboring states, Alabama, Arkansas,

18         Arizona, Colorado, Connecticut.

19                   The short of what I want to say is, when this

20         bill passes out of this chamber today, the House sponsor

21         has been here a good part of the debate today and he was

22         here when we started to debate on this bill.

23                   Hopefully, they'll take the time, look at the

24         pause button, which we didn't do on this side, and

25         either take this bill and clean it up, address all of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 137 of 203
Senate Floor Debate 2nd Reading, Part 2                                    March 17, 2009

37

1     those issues, like same day registration, election day

2     registration.  Hey, if you really want to do something

3     about voter fraud in all those instances you talked

4     about, well, do something about mail-in ballots.  If

5     you're really serious about impacting, how to make sure

6     people have faith in electoral system, disenfranchising

7     one group of people, any group of people as opposed to

8     another one is not the way to do it.

9            Troy, you made the comment to me, "Who would I

10    know that couldn't fit into one of these categories that

11    you laid out?"  Don't have a hunting license.  If you

12    don't have a hunting license, you could have a library

13    card.  You could cast a professional ballot.  You didn't

14    know the process on how it would be counted, so I even

15    suggested one.  Your witnesses never answered that

16    question.  The people who don't have a library card

17    oftentimes the people who cannot read, which is why they

18    don't have a library card.

19           People who don't have a utility bill

20    oftentimes are people who don't have utilities.  People

21    who don't have a phone bill are probably people who

22    don't have a phone.  There are people, they may not come

23    in this chamber, they may not be people that we run into

24    and have a conversation with every day, Chairman Ogden,

25    but those people exist not just in my district but in



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 138 of 203
Senate Floor Debate 2nd Reading, Part 2                         March 17, 2009

38

1    your's as well and every member on this floor.  They're

2    the folks, when you got up this morning, were catching

3    the early bus and didn't have to have an identification

4    card to get on that bus.  They're going to work the jobs

5    that we don't have to work because we're privileged, and

6    I'm saying in this body, we ought to be as concerned

7    about those people who have the least among us as we are

8    concerned about those people who are more apt to vote

9    for or against us.  Thank you.

10                  LIEUTENANT GOVERNOR DEWHURST:  Senator

11   West, did you wish to speak on the bill or was that

12   previously?

13           You're recognized.

14                  SENATOR WEST:  Mr. President, members, I

15   will not be long but, you know, we have a lot of people

16   in the gallery and I'm glad you're here, as citizens of

17   the state of Texas, because the reality is the history

18   of Texas is upon this very moment in this chamber on

19   this particular day as we cast this vote.  It's a very

20   important vote, and I'm glad you're here listening to

21   the debate.

22           The history has been well chronicled by

23   Senator Watson, Van de Putte and Gallegos, and they've

24   illuminated had the tragic past in terms of voter

25   participation in this particular state and also ad hoc



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005601

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 139 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

39

1       obstacles that have been placed in the way by those in

2       the majority in order to obtain political dominance.

3              Members, we should not forget the history of

4       our civil rights in this particular state, and I know

5       that the members of this body are a good and decent

6       people that bring different backgrounds and perspectives

7       to bear on this issue that we address today.

8              What is this really all about?  What is this

9       all about?  This will be the second bill, members, that

10      we will have passed out of this chamber, the second

11      bill.  So what is this all really about?  Maintaining

12      political dominance in this state.  That's what it's all

13      about.  And let's just kind of call it what it is.

14      Maintaining political dominance.

15             Members, this is a solution looking for a

16      problem.  My desk mate chronicled a couple affidavits

17      that he received from the Attorney General, but I

18      suggest to you that it's basically a non-existent

19      significant issue in the state of Texas.  Members

20      supportive of this legislation, this is an issue that

21      you need to come to grips with when you begin to look at

22      the demographic changes in the state of Texas, and let

23      me just kind of go through those with you.

24             Based on the latest statistical analysis, at

25      least as of July 21, 2007, 23.9 million Texans, and all


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005602

Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

40

1         of us heard basically what the demographic changes will

2         be in this particular state, and we know that this state

3         is going to be predominantly Hispanic.  Well, the fact

4         of the matter is now it's predominantly minority.

5                   When we begin to look in the out years and the

6         number of citizens that we're going to have in the state

7         of Texas, what is it going to look like?  When we begin

8         to look at the individuals that will be in this chamber,

9         what is it going to look like?  When we begin to look at

10        the people that will be in attendance, what will Texas

11        look like?  It's going to be predominantly minority.

12        And so the question that I ask those of you that are

13        gung-ho on making this our second legislative initiative

14        coming out of this body, what's the purpose behind it?

15        You will say again that, you know, there's a problem.

16        There's no significant problem.  It's all about

17        political dominance.  Let's call it what it is.

18                  But you got to understand also, I want you to

19        hear my words today, members, demographics in this state

20        are changing and ultimately the make-up of the voting

21        populous will change also.  Those that are being

22        suppressed by this pretext will ultimately control this

23        body of politics and the laws that future generations of

24        Texas live under.

25                  There's that old saying sometimes what goes



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005603

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 141 of 203
Senate Floor Debate 2nd Reading, Part 2                      March 17, 2009

41

1   around ultimately will come around, and I hope that as

2   future generations look at this particular issue, that

3   they can pretty much dissect exactly what occurred on

4   this particular day in the state Senate and judge it for

5   exactly what it is, and ultimately if this bill becomes

6   law, ultimately repeal it if we can't get it taken care

7   of at the Justice Department or Circuit Courts in D.C.

8           LIEUTENANT GOVERNOR DEWHURST:  The Chair

9   recognizes Senator Hinojosa to speak on the bill.

10          SENATOR HINOJOSA:  Thank you,

11  Mr. President, members.  I'd like to speak against the

12  bill.  First of all, I'd like to address a couple of

13  point made by Senator Williams on the affidavits out of

14  Progresso, Rio Grande Valley.  Let me first say that

15  those affidavits are tainted for the simple reason it's

16  a very small community and there were outside activists

17  or Republicans who came in for the sole purpose of

18  trying to find people who would sign affidavits that

19  they themselves drew up.  Also, these affidavits were

20  never turned in to the District Attorney's Office for

21  prosecution.  In addition to that, it was not the DA's

22  office who received any of these complaints.

23          Furthermore, what also happened is that the

24  affidavits were not made by investigators or trained

25  people.  There again, they were made by a group of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005604

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 142 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

42

1     Republicans who live outside this small community
2     looking and trying to fabricate this type of evidence.
3     And I'm somewhat disappointed that again here we are
4     dealing with a partisan issue at a time when we have
5     people losing their homes, their jobs, they can't pay
6     their bills.  We're dealing with an issue that's not
7     going to help them have a better quality of life.
8             I would tell you that I thought that the
9     voters of the last election spoke loud and clear that
10    they wanted no more issues like this to come before this
11    body.  They want us to deal with the bread and butter
12    issues like health care, education, jobs, economic
13    development, and here we are again dealing with an issue
14    that's not going to help one cent or one penny all
15    Texans to better their life, and for that reason, I'm
16    voting against Senate bill 362, which ought to be named
17    the Voter Suppression Bill.  Thank you.
18             LIEUTENANT GOVERNOR DEWHURST:  The Chair
19    recognizes Senator Whitmire to speak against the bill.
20             MS. WHITMIRE:  Thank you, Mr. President,
21    members.  Thank you, Senator Hinajosa for pointing out
22    that Senator Williams only mentioned allegations, and
23    it's amazing to me that if this is such a prevalent
24    problem that you have to go take a senator from the
25    Woodlands who borders Harris County with its hundreds of



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005605

43

1          thousands of voters and has to go to south Texas to try

2          to find some allegations of voter fraud.  That, in

3          itself, I think, makes the case that you have to really

4          search long and hard for instances.

5                  It's also, as Senator Williams, in his

6          allegations, pointed out the test that I give to not

7          only my decisions as a public official but even in my

8          personal life.  What is the greater good?  If you wanted

9          to assume Senator Williams was correct and he found

10         three cases in deep south Texas, what is the greater

11         good, to address that in a fashion that the proponents

12         would have or is the greater good is to not set up

13         obstacles that we know will exist for people to vote.

14                 When I complimented the Senate last Wednesday

15         morning after our marathon session, I mentioned the

16         decorum, the respect for one another that had been

17         demonstrated.  Again, it's present today, but members,

18         that cannot overshadow the fact that this is a bad time

19         to be debating a really bad, bad, bad piece of

20         legislation, maybe the all time worst legislation in

21         terms of one that does so little for so few and harm to

22         so many.

23                 I'm also struck by the attitude of some of my

24         colleagues.  Let's just get this behind us.  And in

25         fact, I would name this bill, Can We Just Get Behind --



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     Can't We Just Get This Behind Us Act of 2009.  It barely

2     beat out the title of the bill or the Hard to Vote Act

3     of 2009.

4          I cannot stand and let you just get it behind

5     us because we've heard credible testimony that three to

6     four percent of eligible voters will not be able to cast

7     their vote next election.

8          Well, let's assume it's just one percent, Sara

9     Duncan, or how about one person?  Troy Fraser did an

10    excellent job the other night of talking about how

11    sacred the ballot box is, and we all join him in that

12    respect.  But it is so sacred that now we're about to

13    tamper with the system that's going to disenfranchise

14    others.

15         I would ask the proponents just for a moment,

16    just for a moment, assume that we're right and you're

17    wrong, just absorb that for a minute, and if you even

18    want to go into the discussions and assume Tommy

19    Williams' allegations are going to be prosecuted and

20    punished, which I think he made the point that the

21    system is working pretty good, but what if the next

22    election day, there's someone in one of your districts

23    attempts to vote, if it's one person, and that sacred

24    process of voting is prohibited because of what we're

25    doing today?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1          You know, I've heard folks talk about they

2     would rather ten guilty murderers go free than execute

3     one innocent man or woman.  I was thinking about that

4     last night.  I believe whatever allegations of fraud

5     that you can come up with cannot make the case to make

6     major obstacles, and I think part of the problem is some

7     of my colleagues don't really understand how difficult

8     it's going to be.  You've not campaigned in communities

9     that are not as organized as maybe your life.  I have

10    knocked doors, talked to voters.  They didn't know how

11    they were going to get a ride to the polls; didn't know

12    if they were going to feel like it.  Been doing this for

13    50, 60 years, and now for the first time, we put a new

14    responsibility on them.

15          Members, we have a responsibility, if it's

16    going to disenfranchise just one person, to fight this

17    really bad, bad, bad bill.  And I respect Senator

18    Fraser's intent, but Troy, we disagree on the method.

19          What I don't understand, if you really think

20    there's fraud and you continue to make allegations, I

21    don't think you have proven your case, but let's just,

22    for the sake of the conversation, you believe there's

23    fraud, you're worried about, as you mentioned the other

24    night, you voting and then your brother coming back 30

25    minutes later and voting with your card.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1             First of all, precinct judges, election judges
2        have the power of the district judge.  They can have the
3        person arrested at that moment.  What I don't understand
4        is why you address it with this bill instead of making
5        it a criminal justice issue.  No one in this body
6        hesitates to address criminal acts by, one, enhancing
7        the penalties or creating a new offense.  I just don't
8        understand why any of your witnesses did not address it
9        as a criminal justice issue.  They didn't do it in
10       Indiana, they didn't do it in Georgia.  Even our Harris
11       County Prosecutor, Rosenthal, who was so aggressive
12       until he was disgracefully run off, there's no instance
13       of voter fraud in Harris County that's been proven up.
14             The gentleman the other day was talking about
15       mail-in ballots.  The Attorney General, our own Attorney
16       General, after spending 1.4 million and spending over a
17       year looking at it, came up with 26 cases.  18 of them
18       were mail-in ballots.  Senator Fraser, you haven't
19       touched that top side or bottom, and because you haven't
20       addressed it as a criminal justice issue and tried to
21       enhance the penalties, I'll show you how you should have
22       handled it.  This afternoon, in Administration, we're
23       going to hear a Zaffirini bill that's going to make
24       parking in handicap zone twice the current penalty.
25       We're going to double the fines if you park in a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 147 of 203
Senate Floor Debate 2nd Reading, Part 2                     March 17, 2009

47

1    handicap zone.  That's the way senators address crimes

2    and illegal acts.  They don't come up with some civil

3    voting procedure that is going to make it difficult for

4    people to go cast that precious vote that Senator Fraser

5    talked about.

6              I can only conclude, because you haven't dealt

7    with it by enhancing the penalty or creating a new

8    offense, like we do on other illegal acts, that it's

9    pure politics, and let me suggest, Senator Fraser, that

10   it's bad politics, and I believe, I believe it's going

11   to backfire on you.  I think this is a political bill

12   for years to come, will backfire on the proponents, and

13   let me just go ahead and put this on the table.  I think

14   it's largely being done so some communities can think

15   they're getting after undocumented citizens.  It's not

16   mentioned in many of the debate conversations, but I

17   listen to talk shows, I read comments, I get my share of

18   letters.  There's a misconception that's being

19   encouraged by this legislation that undocumented

20   citizens are voting.  It does not occur.  You can't find

21   the instance.  Those folks don't want nothing to do

22   about the ballot box, but this is largely driving it.

23             Let me close by saying the real sad note,

24   Senator Fraser, is if we had not changed the rules of

25   this body, we would not even be having this



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    conversation.  This is a great body.  If we had not

2    changed the rules to make this the priority that doesn't

3    exist, we wouldn't even be having this discussion.

4              LIEUTENANT GOVERNOR DEWHURST:  It's my

5    intent to go to Senator Fraser to close, but I just want

6    to make sure, is there anyone else who wishes to speak?

7         There not being anyone else who wishes to

8    speak the Chair recognizes Senator Fraser to close.

9              SENATOR FRASER:  Thank you, members.

10   This actually has been a very interesting issue for all

11   of us.  I think it's obvious that there's people in this

12   body that feel very strongly on both sides of this

13   issue, and I respect that.  I don't think there's any

14   point that I felt that anyone who is in opposition to my

15   views ever was disrespectful to my views.

16        We have, as we do on all issues, we have the

17   right to disagree, and to that point, I think there's a

18   lot of pieces of legislation that move the legislature,

19   Senator Ellis, that I question why are we taking time to

20   do this, but that usually is my opinion and the person

21   laying it out feels very passionate that we should be

22   doing it.

23        Yes, we've taken some time in debating this,

24   and I think I would make the point that most of the

25   questions and the time was taken by the opposition, but



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005611

1    the opposition on any bill has the right to do that, and

2    I respect that and would never, ever try to deny someone

3    their ability to do this, but we also have to recognize

4    that we are sent down by our voters, we were sent down

5    by the people of this state to make sure that what we're

6    doing down here protects those rights that they're

7    either guaranteed by the constitution or the laws that

8    we pass, and we have an obligation for that.

9         This issue, I believe, strives to that very

10   thing that we were sent down here to do, and I read this

11   earlier, but Steve Woolens, who was my chairman when I

12   was in the house.  Steve Woolens was a Democratic

13   representative from Dallas, and he stated, and I think

14   it is the essence of what we're talking about, the

15   ability to cast a vote and have our vote counted is the

16   bedrock of our Democracy.

17        We must do everything possible to ensure the

18   sanctity of the vote of this state, which leads us to

19   the point, Dean, Senator Whitmire was asked earlier how

20   did we get to the point of talking about this bill,

21   Senate bill 362, it's not rocket science.  It is not a

22   complicated issue.  It's a very simple concept.

23        My goal, in laying out Senate bill 362, is

24   very simple.  The goal is to make sure that every person

25   arriving at a polling site is the same one who is named



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005612

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 150 of 203
Senate Floor Debate 2nd Reading, Part 2                     March 17, 2009

50

1      on that voter list; that you are who you say you are.  I

2      believe Senate bill 362 makes voting easy.  A voter

3      showing up can either show a photo identification or two

4      non photo ID's, including even an electric bill or a

5      library card.

6             Even if voters can't verify their identity,

7      they're still going to be allowed to cast a provisional

8      ballot.  Every person walking in to the polling place

9      will allow -- be allowed to vote.  No one will leave not

10     being able to cast a ballot.

11            Senator Ellis, I would -- I would raise the

12     issue that if we go back and look at the polling that

13     has been done on this issue, there have been multiple

14     polls that have been done.  The one obviously I like

15     best is the one that's most favorable.  The Rasmussen

16     poll in October of this year showed that 88 percent of

17     Texans, people in Texas, not one political party or

18     other, 88 percent of Texans, when they're asked the

19     question, "Should you have to show identification when

20     you vote," 88 percent of the public said, "Yes, I agree

21     with that concept."

22            Now the interesting thing is that of those 88

23     percent, 80 percent of them identified themselves as

24     Democrats.  There's been two other polls; the latest

25     poll this last weekend by the University of Texas showed



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005613

1     that in their poll, 69 percent, and even though that's

2     less than 88, 67 percent, if I told you two-thirds of

3     your voters was for something, I would suspect you would

4     be for that.

5            Now I've been doing my own personal poll.  You

6     asked me the question have I been visiting with other

7     people, and more specifically, have I visited with

8     African Americans or Hispanics about this.  I've

9     actually been doing my own polling on this for a long

10    time, actually going back a couple years, because we had

11    this bill two years ago, and any time I'm getting a

12    chance where I can engage someone in conversation, I ask

13    them the question, it's a very simple question, "Should

14    you have to show identification to verify you are who

15    you say you are whenever you have to vote?"

16           Since I've been asking that question of all

17    people that I've engaged, I am yet to have a single

18    person tell me that they disagree with that.

19           Now obviously there's some pressure on the

20    fact that I'm the one asking the question, but I find it

21    interesting that if a person, if you ask them should

22    they, you know, do that, no matter who the person is,

23    they go, "No, I think that's fair.  I think that

24    someone, you know, if they're going to be voting, should

25    have to prove they are who they say they are."



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 152 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

52

1           So Senator Ellis, I would make the point that
2      of the people that are opposed to this, I know there's
3      12 in this room and probably some on the other side, but
4      if 88 percent of the people in the state of Texas, I'm
5      assuming that a bunch of those live in your district,
6      then I would make the case I'm on the side of the people
7      in this case.

8           The voter ID bill has been passed, photo ID
9      bill has been passed, strict photo identification in two
10     states.  There's 24 states that have some form of photo
11     identification, but the two that are the most strictest
12     are Indiana and Georgia.  Indiana's case was put into
13     place.  They've had two election cycles in '06 and '08.
14     Since it was put in place, it's gone all the way up to
15     the Supreme Court.

16          The Supreme Court, the confirming -- the
17     opinion on this was written by John Paul Stevens, which
18     generally is a left-leaning, more liberal judge, and he
19     wrote the opinion, the majority opinion confirming the
20     Indiana law 6 to 3.

21          The Georgia case that was passed again went
22     all the way through the -- being approved by the
23     Department of Justice and has been confirmed at every
24     level, and both of those have gone through the last
25     election cycle.  So I guess the question I would ask,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

53

1    did someone say is this going to suppress vote.  Both

2    Indiana and Georgia have found that, even Indiana,

3    through two election cycles, not only did it not

4    suppress vote, it actually encouraged voters that they

5    felt better that their vote was going to be counted and

6    not diluted by someone that was voting illegally, that

7    the vote count in both of those states went up.  And

8    actually in the last election, in 2008, Georgia had the

9    second largest increase in Democratic voters in the

10   United States, much more than the surrounding states

11   that did not have a like ID law in place.

12          Indiana was the largest increase in Democratic

13   voters in the entire United States.  The total increase

14   they had was 6.7 increase, almost double the increase of

15   the adjoining state, which was Illinois, where the

16   president nominee was from.

17          I'm going to give a couple examples here, just

18   to make sure, and I hate that the press missed all the

19   testimony we had the other night when we stayed here

20   through 28 hours, and most of the press went home in the

21   middle of the night so you missed a lot of the very

22   important testimony, and I think the one that was

23   probably the most compelling, or I thought was telling,

24   was the testimony of the Secretary of State, when they

25   were talking about the way that the Texas law works in



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

54

1     Texas.

2          Just clarifying, making sure you understand

3     that if someone walks into a polling place and they have

4     a voter registration certificate, that doesn't make any

5     difference whether it's their's or their brother's or

6     their wife's or the guy down the street, or someone

7     that's died, as long as they have a voter registration

8     certificate, current Texas law says, "On offering to

9     vote, a voter must present a voter registration

10    certificate to the election officer.  On presentation of

11    the certificate, an election officer shall determine

12    whether the voter's name is on the certificate."  They

13    check the names there, and if it's the proper precinct.

14    If you meet those two parameters, they hand you a ballot

15    and you go and vote.

16         In any circumstance, and the question I asked

17    the Secretary of State, if I walked into the voting

18    booth with my brother's registration card and I was

19    voting, I had already voted and I was now going to vote

20    with my brother's card, Steve, could they stop me from

21    voting, and the answer was no, there is not the ability

22    under current law to do that.

23         The question was raised about the ability to

24    convict.  I would make the point that under current law,

25    not only is it virtually impossible to identify that



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005617

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 155 of 203
Senate Floor Debate 2nd Reading, Part 2                        March 17, 2009

55

1    someone is voting illegally, but it is much harder to

2    convict that person.  The testimony earlier we

3    referenced the District Attorney, Rene Guerra, out of

4    Hidalgo County, the D.A., Rene Guerra, here's his exact

5    quote that he gave to the -- I believe this was to the

6    McAllen paper.  No, I'm sorry, it was to the Rio Grande

7    Guardian paper.  He says, he said, "Voter fraud is

8    nearly impossible to prove.  Since losing a county

9    ballot tampering case in '78, Guerra has shied away from

10   taking on new cases involving election irregularities

11   even though all the cases that Senator Williams just

12   laid out came from that county and has been reported for

13   years."

14          It goes on to say, "To convince a jury these

15   days, you almost need a videotape of someone voting

16   illegally, the District Attorney said."  The article

17   goes on to say that he has lost his appetite to

18   prosecute.

19          So in trying to say that Texas doesn't have a

20   problem, I would greatly disagree.  I think we've got a

21   huge problem, because not only do we not have the

22   ability to identify someone, we don't have the ability

23   to prosecute it, and it actually goes much further than

24   that.

25          Mary Ann Collins from Plano, 70 year old woman



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    stayed here all night the other night in order to come

2    up here and give us her testimony about the fact that

3    she was working as a poll worker.  She had watched

4    someone vote, and a few hours later, she had noticed

5    someone else, and I think she had seen her with a bright

6    hat and she recognized this was an outstanding, or

7    someone she was easy to identify.  She saw the woman

8    come back in a couple hours later to vote again with a

9    different card.  She went to the election judge to

10   notify the judge that that woman was voting illegally,

11   and the election judge said, "Sorry, there's nothing we

12   can do to stop them."

13          To assume there is not voting fraud in Texas

14   is really almost laughable.  To assume that we can

15   prosecute someone for voting fraud is difficult.

16          In affirming the Supreme Court case, John Paul

17   Stevens made a couple of observations about voting.  He

18   talks about the fact that the actual act of voting is a

19   burden but it's a burden that everyone accepts.  The

20   burdens of that are arising from life's vagaries,

21   however, are neither serious nor so frequent as to raise

22   a question about the constitutionality of the Indiana

23   law.  The availability of the right to cast a

24   provisional ballot provides an adequate remedy for

25   problems of this character.  For most voters who need



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 157 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

57

1       the inconvenience of making a trip to the Bureau of

2       Motor Vehicles, gathering required documents and posing

3       for a photograph does not qualify as a substantial for

4       the right to vote or even represent a significant

5       increase over the usual burdens of voting.

6               The last example I will give you, and I hope

7       this is one that hits close to home, is someone raised

8       the example, or the issue -- well, there's a few here

9       and a few there, but we have an example actually here

10      sitting with us in this body that Mike Jackson, when he

11      was elected in Houston in 1988, won by seven votes.  I

12      went back and looked at the records of the voting

13      irregularities in Houston, the number of dead people

14      that have voted, the number of complaints that have been

15      made, and the thought comes to my mind, if seven people

16      had cheated during his election, it would have changed

17      history.  Mike Jackson would not be with us here today;

18      four people have flipped it.  Four people could have

19      changed history and changed his ability to serve as he

20      has in the Texas Senate.  To assume that someone

21      cheating in an election is not important, the best

22      example is right here, is that there's been a lot of

23      elections, especially a primary, and more especially in

24      rural areas, where you have a county commissioners race,

25      one vote makes a huge difference, and if someone can


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     cheat on that one vote, it could impact the election.

2          The dangers of voting fraud has always

3     enthreatened the integrity of the electoral process for

4     the entire history of the United States.  I believe that

5     threat continues today.  In quoting again as I did in my

6     opening comments, the 2005 bipartisan Carter/Baker

7     Commission reaffirms the dangers when they say elections

8     are at the heart of democracy; Americans are losing

9     confidence in the fairness of elections.  And while we

10    do not face a crisis today, we need to address the

11    problem of our electoral system.

12         Members, I would be concerned if I thought

13    this bill in any way would suppress turnout, but I also

14    believe it does not do that.  It just protects

15    legitimate vote.  It offers multiple ways to prove you

16    are who you say you are before you cast your vote.

17    Thank you.

18              LIEUTENANT GOVERNOR DEWHURST:  Senator

19    Fraser, I'm going to recognize you for a motion to move

20    Senate bill 362 to engrossment.

21              SENATOR FRASER:  Members, I would now

22    move Senate bill 362 would be passage as amended, would

23    move its passage to engrossment.

24              LIEUTENANT GOVERNOR DEWHURST:  Members,

25    you've heard the motion by Senator Fraser.  The



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    Secretary will call the role.

2              SECRETARY:  Averitt, Carona, Davis.

3    Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos,

4    Harris, Hegar, Hinajosa, Huffman, Jackson, Lucio,

5    Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro,

6    Shapleigh, Uresti, Van de Putte, Watson, Wentworth,

7    West, Whitmire, Williams and Zaffirini.

8              LIEUTENANT GOVERNOR DEWHURST:  Members,

9    there being 19 "I's" and 12 "Nay's", Senate Bill 362, as

10   amended, is passed to engrossment.

11         Senator Duncan, for what purpose?

12             SENATOR DUNCAN:  Just for a brief thank

13   you for our staff.  Mr. President, the other night, we

14   stayed up, I think, a marathon 23 hour session, and at

15   the end, I think was a little bit too tired to remember

16   to thank those who really made this work, and I think

17   all of us understand the importance of this secretary of

18   the Senate and our Sergeant at Arms and how nice of a

19   job they do for us, and all of their staff, and they

20   stayed up here with us, and at times, it was a little

21   testy, but they all performed in an outstanding fashion,

22   so I just want to take this brief moment to say

23   publicly thank you, although I know we all understand

24   the importance of their jobs, so let's give them an

25   ovation.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005622

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 160 of 203
Senate Floor Debate 2nd Reading, Part 2                        March 17, 2009

60

1          (Clapping.)

2          LIEUTENANT GOVERNOR DEWHURST:  Members,

3    Senator Shapleigh moves that the comments that have been

4    made during the floor debate and the exhibits from

5    Senator Williams be included in the record, and the

6    affidavits, excuse me, the affidavits referenced by

7    Senator Williams be included in the record.

8          You've heard the motion by Senator Shapleigh.

9    Is there any objection from any member?

10          The Chair hears none and the motion is

11   adopted.  It's my intention, we have four more -- we

12   actually have five bills that are eligible.  I don't

13   think they'll take much time, but I'd like to go ahead

14   and address those.

15          Senator Van de Putte, are you ready on --

16   the Chair recognizes Senator Van de Putte for a motion

17   to suspend the regular order of business to take up and

18   consider a committee substitute to Senate bill 90.

19          SENATOR VAN DE PUTTE:  I'm sorry, is that

20   Senate bill 90?

21          LIEUTENANT GOVERNOR DEWHURST:  Yes,

22   please.

23          (End of CD.)

24

25



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

```
 1      IN THE COUNTY OF TRAVIS     )

 2      STATE OF TEXAS              )

 3          I, Lynne Rodriguez, Certified Shorthand Reporter in

 4      and for the State of Texas, hereby certify to the

 5      following:

 6              That the CD entitled, "2009 (81R) SB 362,

 7      Senate Flr Debate, 2nd Reading,"

 8      was transcribed at the request of Anne Wilson, 209

 9      West 14th Street, Attorney General's Office, Austin,

10      Texas 78701, and the amount due is $_____.

11          That the aforementioned CD was transcribed

12      to the best of my ability to hear and understand the

13      CD;

14          That the transcript was submitted by

15      E-trans on April 23, 2012, to Anne Wilson, 209 West

16      14th Street, Attorney Generals' Office, Austin,

17      Texas  78701;

18          I further certify that I am neither

19      counsel for, related to, nor employed by any of the

20      parties or attorneys in the action in which this

21      proceeding was taken, and further that I am not

22      financially or otherwise interested in the outcome

23      of the action.

24          Certified to by me, this 23rd day of

25      April, 2012.
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005624

Case 2:13-cv-00193   Document 725-38   Filed on 11/17/14 in TXSD   Page 162 of 203
Senate Floor Debate 2nd Reading, Part 2                    March 17, 2009

62



Lynne Rodriguez, Texas CSR No. 8140

Expiration Date 12/31/13

FIRM REGISTRATION NO: 283

 ESQUIRE DEPOSITION SERVICES

100congress, Suite 2000

 Austin, Texas  78701

(512) 328-5557



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005625

Tape Transcription                                    March 18, 2009

1

2009 (81R) SB 362, SENATE FLR DEBATE, 3RD READING

Transcribed by Lynne M. Rodriguez, CSR



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005626

TX_00203348

Tape Transcription                                    March 18, 2009

2

 1                  LIEUTENANT GOVERNOR DEWHURST:  The Senate
 2     will come to order.  The Chair lays out on third reading
 3     and final passage Senate bill 362.  The Secretary will
 4     read the caption.
 5                  SECRETARY:  Senate bill 362 relating to
 6     requiring a voter to present proof of identification.
 7                  LIEUTENANT GOVERNOR DEWHURST:  Senator
 8     Van de Putte, for what purpose do you rise?
 9                  SENATOR VAN DE PUTTE:  Mr. President, if
10     the author will allow me to put into the record the
11     response from the Secretary of State's office.
12                  LIEUTENANT GOVERNOR DEWHURST:  The Chair
13     recognizes Senator Fraser.
14                  SENATOR FRASER:  Mr. President, my
15     understanding is, and I haven't seen the document, but
16     there was a question asked by Senator Van de Putte, I
17     think that directed the data she's going to enter into
18     the record was given by the Secretary of State to
19     Senator Van de Putte, and I haven't seen it and I guess
20     I would probably like to see it, but I think she just
21     entered into the record the response from the Secretary
22     of State.
23                  LIEUTENANT GOVERNOR DEWHURST:  The Chair
24     recognizes Senator Van de Putte to read the letter.
25                  SENATOR VAN DE PUTTE:  Thank you,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005627

3

1    Mr. President.

2          Mr. President and members, I had thought that

3    we could submit the letter from Coby Shorter, our Deputy

4    Secretary of State of the response to the questions that

5    were asked last week during the committee of the whole.

6          However, since the committee of the whole

7    report has already been submitted, the only way to get

8    this into the record is actually read it, so I ask the

9    indulgence of my colleagues, since that is the

10   prescribed way our parliamentarian has advised me to do

11   this.

12         This letter is dated March 11, 2009.  The

13   letterhead is Coby Shorter, III, Deputy Secretary of

14   State.  It's addressed to myself, Senator Van de Putte.

15         "Thank you for the opportunity to serve as

16   resource witness on Senate bill 362.  During my

17   testimony, you asked several questions which I needed to

18   research.  Below please find your questions and my

19   responses."

20         "Question:  Explain the difference between a

21   citizen's certificate and a citizenship paper.  Please

22   know the office of Secretary of State does not have the

23   jurisdiction over U.S. citizenship issues, thus our

24   response is based on information from the U.S.

25   Citizenship and Immigration Services."



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_005628

TX_00203350

Tape Transcription                                    March 18, 2009

4

1          Based on preliminary research, we have
2     determined that a certificate of U.S. citizenship is a
3     document issued by the United States government as a
4     proof of U.S. citizenship.  Individuals who are eligible
5     to apply for the certificate include those who obtained
6     U.S. citizenship while residing in the United States or
7     individuals who are born outside of the United States to
8     U.S. citizens.  Specifically, children born of U.S.
9     citizens who are born abroad eligible.  In addition, a
10    child whose parent or parents become naturalized while
11    the child was under 18 years of age is also eligible for
12    this document.  The certificate of U.S. citizenship
13    contains a photograph and qualifies as proof of identity
14    under the proposed amendment to section 63.0101 (a) of
15    the Texas Election Code."
16          "United States citizenship papers are one of
17    the authorized forms of identification in the proposed
18    amendment to section 63.0101(b) of the Code."
19          "According to the U.S. Citizenship and
20    Immigration Services, the following documents generally
21    constitute proof of U.S. citizenship:  Birth
22    certificate, U.S. passport, certificate of citizenship
23    and naturalization certificate.  These four documents
24    would appear to qualify as a United States citizenship
25    papers under the proposed amendment to section 63.0101.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005629

5

1    A U.S. passport and a certificate of citizenship are

2    specifically listed as forms of photo identification

3    authorized under the proposed section 63.01012 (a).  So

4    it appears that these documents qualify under both

5    63.0101 (a) and (b.)

6         A Certificate of Naturalization is a document

7    issued by the United States government on or before

8    October 1, 1991 by federal or state court as proof of a

9    person having obtained U.S. citizenship through

10   naturalization.  A certificate of naturalization

11   contains the person's photograph.  A birth certificate

12   does not contain the photograph."

13        "Question:  How will inconsistencies between a

14   temporary address appearing on an authorized

15   identification document and a permanent address

16   appearing on the voter registration list of military and

17   student voters be treated if SB 362 were to become law?"

18        "Senate bill 362 requires a voter to provide

19   proof of his of her identity and does not require a

20   voter to provide proof of residence.  If there was an

21   inconsistency between an address that appeared on the

22   authorized form of identification and the voter

23   registration roll, that would not be grounds to

24   disqualify the voter.  As long as the voter still

25   claimed the address that appeared on the voter



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00203352

Tape Transcription                              March 18, 2009

6

1    registration list as his or her permanent residence

2    address, the voter would be accepted for voting."

3            "Accordingly, if a voter presented a valid

4    form of identification as proposed under to Senate bill

5    362 which contained an address different to the list of

6    registered voters, that voter would be allowed to vote."

7            "Question:  Does the Secretary of State track

8    racial status of registered voters?  If not, how would

9    the Secretary of State prove that Senate bill 362 does

10   not have an adverse impact on minority voters when the

11   state submits the bill for pre-clearance?"

12           "Because racial status is not considered in a

13   person's eligibility to register to vote, the state

14   prescribed voter registration application does not

15   request this information from voters.  As a result, the

16   state does not have statistics regarding the race or

17   ethnicity of registered voters in Texas."

18           "We do have data on the number of registered

19   voters with Hispanic surnames but this data is

20   inconclusive as it simply matches the surname of

21   registered voters against a list of identified Hispanic

22   surnames provided by the U.S. Census Bureau.  Every

23   submission to the U.S. Department of Justice is

24   different based on the unique aspects of the

25   legislation.  For instance, the Texas Legislative



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_005631

Tape Transcription                                    March 18, 2009

7

```
 1   Counsel assisted with a compilation of data on race and
 2   ethnicity for re-districting bills.  A similar effort to
 3   obtain such demographics may be required for a voter
 4   identification bill."
 5            "Historically, we have also worked with
 6   legislators to ensure the best data available is
 7   included in submissions."
 8            "thank you for the opportunity to research
 9   these issues.  If I have inadvertently omitted or
10   misunderstood your questions, please let me know.
11   Sincerely, Colby Shorter, III, Deputy Secretary of
12   State."
13            Mr. President, I would ask that these be
14   included in the records of today's proceedings.
15                 LIEUTENANT GOVERNOR DEWHURST:  Senator
16   Van de Putte moves that her comments be read into the
17   record and incorporated into the journal.  Is there any
18   objection from any member?
19            Hearing there's none, so ordered.
20            Chair recognizes Senator Fraser on Senate bill
21   362.
22                 SENATOR FRASER:  Members, I appreciate
23   everyone's effort on this bill this week.  I think the
24   debate we have had has been good and complete, and would
25   like to give a thank you to the Lieutenant Governor's
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00203354

8

```
 1    staff and everyone on this bill.  I would now move final
 2    passage of Senate bill 362.
 3              LIEUTENANT GOVERNOR DEWHURST:  Members,
 4    you've heard the motion by Senator Fraser.  The
 5    Secretary will call the role.
 6              SECRETARY:  Averitt, Carona, Davis.
 7    Deuell, Duncan, Ellis, Eltife, Estes, Fraser, Gallegos,
 8    Harris, Hegar, Hinajosa, Huffman, Jackson, Lucio,
 9    Nelson, Nichols, Ogden, Patrick, Seliger, Shapiro,
10    Shapleigh, Uresti, Van de Putte, Watson, Wentworth,
11    West, Whitmire, Williams and Zaffirini
12              LIEUTENANT GOVERNOR DEWHURST:  There
13    being 19 "I's" and 12 "Nay's," Senate bill 362 has
14    finally passed.
15         The Chair recognizes Senator West for a
16    statement.
17              SENATOR WEST:  Thank you very much,
18    Mr. President.  On behalf of the ethnic minority
19    senators in the chamber, we offer the following
20    statement with respect to our votes on Senate bill 362
21    and ask that they be spread upon the journal of the
22    sent.
23         The Senate is comprised of 31 members, 8 of
24    whom are ethnic minorities, Ellis, West, Gallegos,
25    Hinajosa, Lucio, Uresti, Van de Putte and Zaffirini.
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

TX_00203355

Tape Transcription                                    March 18, 2009

9

1            On January the 14th, 2009, a motion was made

2    to amend the previous rules of the Senate to allow for

3    legislation relating to voter identification

4    requirements.  After being reported favorably from a

5    committee of the whole Senate to be set for special

6    order, therefore bypassing the need for a two-thirds

7    vote of the Senate at any point during the Senate

8    deliberations the legislation addressing only the

9    subject.  The motion prevailed by a vote of 8 to 13.

10   All 8 senators who are ethnic minorities voted against

11   this motion.

12           On March 10th and 11th, 2009, the Senate

13   convened as a committee of the whole and took up and

14   passed Senate bill 362, which relates to voter

15   identification requirements by a vote of a 20 to 12.

16   All senators who are ethnic minorities voted against

17   passage of the bill from the committee of the whole

18   Senate.

19           On March 11th of 2009, the Senate voted to

20   send Senate bill 362 and no other bill for special

21   order.  The vote on this special order was 19 to 12.

22   All 8 ethnic minority senators voted against this

23   motion.

24           On March the 17th, the Senate took up Senate

25   bill 362 on second reading as a special order.  The vote



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005634

Tape Transcription                                    March 18, 2009

10

1    on this legislation was 19 to 12.  All 8 ethnic minority

2    senators voted against this motion.

3           On March 18, the Senate took up Senate bill

4    362 on third reading.  The vote on this legislation was

5    19 to 12.  All 8 ethnic minority senators voted against

6    this legislation.

7           To date, there have been no other

8    opportunities during the 81st regular legislative

9    session which members of the Senate had the opportunity

10   to vote on legislation relating to voter identification

11   other than the ones listed above.

12          And of all the opportunities members of the

13   Senate have had to vote on voter identification

14   legislation or Senate processes regarding identification

15   legislation, no senator who's ethnic minority has voted

16   in favor of such legislation or the process related to

17   such legislation.

18          This statement is on behalf of Ellis, West,

19   Gallegos, Hinajosa, Lucio, Uresti, Van de Putte and

20   Zaffirini.  Thank you, Mr. President.  And we're asking

21   this be spread responsible the journal.

22                 LIEUTENANT GOVERNOR DEWHURST:  Senator

23   Shapleigh, do you wish to speak on the statement or on a

24   different matter?

25                 SENATOR SHAPLEIGH:  Will the Senator



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005635

TX_00203357

Tape Transcription                                    March 18, 2009

                                                            11

1   yield?

2                   LIEUTENANT GOVERNOR DEWHURST:  Will

3   Senator West yield to Senator Shapleigh?

4                   SENATOR WEST:  Yes, I will.

5                   SENATOR SHAPLEIGH:  Senator, I think

6   you'll find that for DOJ purposes, a senator

7   representing a majority minority district, that vote is

8   relevant too.  I think I represent the second highest

9   minority district in the Senate and I think my name

10  needs to be appended to that motion.

11                  SENATOR WEST:  So I have no objections to

12  Senator Shapleigh's name being appended to that motion.

13                  SENATOR SHAPLIEGH:  Thank you.

14                  LIEUTENANT GOVERNOR DEWHURST:  Thank you,

15  Senators.  Pursuant to Rule 1701, the statement will be

16  entered into the journal.

17                  SENATOR WEST:  Thank you.

18                  LIEUTENANT GOVERNOR DEWHURST:  Is Senator

19  Zaffirini on the floor?  Are you ready with Senate bill

20  52?

21                  (End of CD.)

22

23

24

25



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005636

TX_00203358

Tape Transcription                                    March 18, 2009

12

1    IN THE COUNTY OF TRAVIS    )

2    STATE OF TEXAS             )

3        I, Lynne Rodriguez, Certified Shorthand Reporter in

4    and for the State of Texas, hereby certify to the

5    following:

6            That the CD entitled, "2009 (81R) SB 362,

7    Senate Flr Debate, 3rd Reading,"

8    was transcribed at the request of Anne Wilson, 209

9    West 14th Street, Attorney General's Office, Austin,

10   Texas 78701, and the amount due is $_____.

11       That the aforementioned CD was transcribed

12   to the best of my ability to hear and understand the

13   CD;

14       That the transcript was submitted by

15   E-trans on April 23, 2012, to Anne Wilson, 209 West

16   14th Street, Attorney Generals' Office, Austin,

17   Texas  78701;

18       I further certify that I am neither

19   counsel for, related to, nor employed by any of the

20   parties or attorneys in the action in which this

21   proceeding was taken, and further that I am not

22   financially or otherwise interested in the outcome

23   of the action.

24       Certified to by me, this 22nd day of

25   April, 2012.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JA_005637

TX_00203359

Tape Transcription                                    March 18, 2009

13

1

2

3

4
                    _____
                    Lynne Rodriguez, Texas CSR No. 8140
5                   Expiration Date 12/31/13
                    FIRM REGISTRATION NO: 283
6                    ESQUIRE DEPOSITION SERVICES
                    100congress, Suite 2000
7                    Austin, Texas  78701
                    (512) 328-5557
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005638

TX_00203360

Tape Transcription

March 18, 2009

14

---

**A**

ability
12:12

abroad
4:9

accepted
6:2

action
12:20,23

addition
4:9

address
5:14,15,21,
25 6:2,5

addressed
3:14

addressing
9:8

adverse
6:10

advised
3:10

aforemention
ed
12:11

age
4:11

allow
2:10 9:2

allowed
6:6

already
3:7

also
4:11 7:5

amend
9:2

amendment
4:14,18,25

amount

12:10

Anne
12:8,15

appear
4:24

appeared
5:21,25

appearing
5:14,16

appears
5:4

appended
11:10,12

application
6:14

apply
4:5

appreciate
7:22

April
12:15,25

asked
2:16 3:5,17

asking
10:20

aspects
6:24

assisted
7:1

Attorney
12:9,16

attorneys
12:20

Austin
12:9,16 13:7

author
2:10

authorized
4:17 5:3,14,
22

available
7:6

Averitt
8:6

**B**

b
5:5

based
3:24 4:1 6:24

behalf
8:18 10:18

being
8:13 9:4
11:12

best
7:6 12:12

between
3:20 5:13,21

bill
2:3,5 3:16
5:18 6:4,9,11
7:4,20,23
8:1,2,13,20
9:14,17,20,
25 10:3 11:19

bills
7:2

Birth
4:21 5:11

born
4:7,8,9

both
5:4

Bureau
6:22

bypassing
9:6

**C**

call
8:5

caption
2:4

Carona
8:6

CD
11:21 12:6,
11,13

Census
6:22

certificate
3:21 4:2,5,
12,22,23 5:1,
6,10,11

Certified
12:3,24

certify
12:4,18

Chair
2:2,12,23
7:20 8:15

chamber
8:19

child
4:10,11

children
4:8

citizens
4:8,9

citizen's
3:21

citizenship
3:21,23,25
4:2,4,6,12,
16,19,21,22,
24 5:1,9

claimed
5:25

Coby
3:3,13

Code
4:15,18

Colby
7:11

colleagues
3:9

come
2:2

comments
7:16

committee
3:5,6 9:5,13,
17

compilation
7:1

complete
7:24

comprised
8:23

considered
6:12

constitute
4:21

contain
5:12

contained
6:5

contains
4:13 5:11

convened
9:13

Counsel
7:1 12:19

COUNTY
12:1

court
5:8

CSR
1:15 13:4

**D**

data
2:17 6:18,19



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005639

Tape Transcription

March 18, 2009
15

7:1,6
**date**
10:7 13:5
**dated**
3:12
**Davis**
8:6
**day**
12:24
**de**
2:8,9,16,19,
24,25 3:14
7:16 8:10,25
10:19
**DEBATE**
1:6 7:24 12:7
**deliberations**
9:8
**demographics**
7:3
**Department**
6:23
**DEPOSITION**
13:6
**Deputy**
3:3,13 7:11
**determined**
4:2
**Deuell**
8:7
**DEWHURST**
2:1,7,12,23
7:15 8:3,12
10:22 11:2,
14,18
**difference**
3:20
**different**
6:5,24 10:24
**directed**

2:17
**disqualify**
5:24
**district**
11:7,9
**document**
2:15 4:3,12
5:6,15
**documents**
4:20,23 5:4
**DOJ**
11:6
**due**
12:10
**Duncan**
8:7
**during**
3:5,16 9:7
10:8

**E**

**effort**
7:2,23
**Election**
4:15
**eligibility**
6:13
**eligible**
4:4,9,11
**Ellis**
8:7,24 10:18
**Eltife**
8:7
**employed**
12:19
**End**
11:21
**ensure**
7:6
**enter**
2:17

**entered**
2:21 11:16
**entitled**
12:6
**ESQUIRE**
13:6
**Estes**
8:7
**ethnic**
8:18,24 9:10,
16,22 10:1,5,
15
**ethnicity**
6:17 7:2
**E-trans**
12:15
**everyone's**
7:23
**Expiration**
13:5
**Explain**
3:20

**F**

**favor**
10:16
**favorably**
9:4
**federal**
5:8
**final**
2:3 8:1
**finally**
8:14
**financially**
12:22
**find**
3:18 11:6
**FIRM**
13:5
**floor**

11:19
**FLR**
1:6 12:7
**following**
4:20 8:19
12:5
**form**
5:22 6:4
**forms**
4:17 5:2
**four**
4:23
**Fraser**
2:13,14 7:20,
22 8:4,7
**further**
12:18,21

**G**

**Gallegos**
8:7,24 10:19
**generally**
4:20
**General's**
12:9
**Generals'**
12:16
**give**
7:25
**given**
2:18
**going**
2:17
**good**
7:24
**government**
4:3 5:7
**GOVERNOR**
2:1,7,12,23
7:15 8:3,12
10:22 11:2,
14,18

**Governor's**
7:25
**grounds**
5:23
**guess**
2:19

**H**

**Harris**
8:8
**haven't**
2:15,19
**hear**
12:12
**heard**
8:4
**Hearing**
7:19
**Hegar**
8:8
**her**
5:19 6:1 7:16
**hereby**
12:4
**highest**
11:8
**Hinajosa**
8:8,25 10:19
**Hispanic**
6:19,21
**Historically**
7:5
**Huffman**
8:8

**I**

**identification**
2:6 4:17 5:2,
15,22 6:4 7:4
9:3,15 10:10,
13,14



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00203362

Tape Transcription

March 18, 2009

16

identified
6:21

identity
4:13 5:19

III
3:13 7:11

Immigration
3:25 4:20

impact
6:10

inadvertentl
y
7:9

include
4:5

included
7:7,14

inconclusive
6:20

inconsistenc
ies
5:13

inconsistenc
y
5:21

incorporated
7:17

Individuals
4:4,7

indulgence
3:9

information
3:24 6:15

instance
6:25

interested
12:22

I's
8:13

issued

4:3 5:7

issues
3:23 7:9

_____ J _____

Jackson
8:8

January
9:1

journal
7:17 8:21
10:21 11:16

jurisdiction
3:23

just
2:20

Justice
6:23

_____ K _____

know
3:22 7:10

_____ L _____

last
3:5

law
5:17

lays
2:2

legislation
6:25 9:3,8
10:1,4,6,10,
14,15,16,17

Legislative
6:25 10:8

legislators
7:6

letter
2:24 3:3,12

letterhead
3:13

LIEUTENANT

2:1,7,12,23
7:15,25 8:3,
12 10:22
11:2,14,18

list
5:16 6:1,5,21

listed
5:2 10:11

long
5:24

Lucio
8:8,25 10:19

Lynne
1:15 12:3
13:4

_____ M _____

M
1:15

majority
11:7

March
3:12 9:12,19,
24 10:3

matches
6:20

matter
10:24

member
7:18

members
3:2 7:22 8:3,
23 10:9,12

military
5:16

minorities
8:24 9:10,16

minority
6:10 8:18
9:22 10:1,5,
15 11:7,9

misunderstoo

d
7:10

motion
8:4 9:1,9,11,
23 10:2
11:10,12

move
8:1

moves
7:16

myself
3:14

_____ N _____

name
11:9,12

naturalizati
on
4:23 5:6,10

naturalized
4:10

Nay's
8:13

need
9:6

needed
3:17

needs
11:10

neither
12:18

Nelson
8:9

Nichols
8:9

number
6:18

_____ O _____

objection
7:18

objections

11:11

obtain
7:3

obtained
4:5 5:9

October
5:8

offer
8:19

office
2:11 3:22
12:9,16

Ogden
8:9

omitted
7:9

ones
10:11

opportunitie
s
10:8,12

opportunity
3:15 7:8 10:9

order
2:2 9:6,21,25

ordered
7:19

outcome
12:22

outside
4:7

over
3:23

_____ P _____

paper
3:21

papers
4:16,25

parent
4:10



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00203363

parents
4:10

parliamentar
ian
3:10

parties
12:20

passage
2:3 8:2 9:17

passed
8:14 9:14

passport
4:22 5:1

Patrick
8:9

permanent
5:15 6:1

person
5:9

person's
5:11 6:13

photo
5:2

photograph
4:13 5:11,12

please
3:18,21 7:10

point
9:7

p r e -
clearance
6:11

preliminary
4:1

prescribed
3:10 6:14

present
2:6

presented
6:3

President
2:9,14 3:1,2
7:13 8:18
10:20

prevailed
9:9

previous
9:2

probably
2:20

proceeding
12:21

proceedings
7:14

process
10:16

processes
10:14

proof
2:6 4:4,13,21
5:8,19,20

proposed
4:14,17,25
5:3 6:4

prove
6:9

provide
5:18,20

provided
6:22

purpose
2:8

purposes
11:6

Pursuant
11:15

put
2:10

Putte
2:8,9,16,19,
24,25 3:14

7:16 8:10,25
10:19

**Q**

qualifies
4:13

qualify
4:24 5:4

question
2:16 3:20
5:13 6:7

questions
3:4,17,18
7:10

**R**

race
6:16 7:1

racial
6:8,12

read
2:4,24 3:8
7:16

READING
1:6 2:2 9:25
10:4 12:7

ready
11:19

recognizes
2:13,24 7:20
8:15

record
2:10,18,21
3:8 7:17

records
7:14

r e -
districting
7:2

regarding
6:16 10:14

register

6:13

registered
6:6,8,17,18,
21

registration
5:16,23 6:1,
14 13:5

regular
10:8

related
10:16 12:19

relates
9:14

relating
2:5 9:3 10:10

relevant
11:8

report
3:7

reported
9:4

Reporter
12:3

represent
11:8

representing
11:7

request
6:15 12:8

require
5:19

required
7:3

requirements
9:4,15

requires
5:18

requiring
2:6

research

3:18 4:1 7:8

residence
5:20 6:1

residing
4:6

resource
3:16

respect
8:20

response
2:11,21 3:4,
24

responses
3:19

responsible
10:21

result
6:15

rise
2:8

Rodriguez
1:15 12:3
13:4

role
8:5

roll
5:23

Rule
11:15

rules
9:2

**S**

SB
1:6 5:17 12:6

second
9:25 11:8

Secretary
2:3,5,11,18,
21 3:4,13,22
6:7,9 7:11
8:5,6

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com



ESQUIRE
DEPOSITION SOLUTIONS

Tape Transcription                                March 18, 2009
                                                              18

section
4:14,18,25
5:3
see
2:20
seen
2:15,19
Seliger
8:9
SENATE
1:6 2:1,3,5
3:16 5:18
6:4,9 7:20
8:2,13,20,23
9:2,5,7,12,
14,18,19,20,
24 10:3,9,13,
14 11:9,19
12:7
Senator
2:7,9,13,14,
16,19,24,25
3:14 7:15,20,
22 8:4,15,17
10:15,22,25
11:3,4,5,6,
11,12,13,17,
18
senators
8:19 9:10,16,
22 10:2,5
11:15
send
9:20
sent
8:22
serve
3:15
Services
3:25 4:20
13:6
session

10:9
set
9:5
Shapiro
8:9
Shapleigh
8:10 10:23,25
11:3,5
Shapleigh's
11:12
SHAPLIEGH
11:13
Shorter
3:3,13 7:11
Shorthand
12:3
similar
7:2
simply
6:20
Sincerely
7:11
speak
10:23
special
9:5,20,21,25
Specifically
4:8 5:2
spread
8:21 10:21
staff
8:1
State
2:18,22 3:4,
14,22 5:8
6:7,9,11,13,
16 7:12 12:2,
4
statement
8:16,20
10:18,23

11:15
States
4:3,6,7,16,
24 5:7
State's
2:11
statistics
6:16
status
6:8,12
Street
12:9,16
student
5:17
subject
9:9
submission
6:23
submissions
7:7
submit
3:3
submits
6:11
submitted
3:7 12:14
Suite
13:6
surname
6:20
surnames
6:19,22

─── T ───

taken
12:21
temporary
5:14
testimony
3:17
Texas

4:15 6:17,25
12:2,4,10,17
13:4,7
Thank
2:25 3:15
7:8,25 8:17
10:20 11:13,
14,17
therefore
9:6
think
2:17,20 7:23
11:5,8,9
third
2:2 10:4
thought
3:2
today's
7:14
track
6:7
Transcribed
1:15 12:8,11
transcript
12:14
TRAVIS
12:1
treated
5:17
two-thirds
9:6

─── U ───

U.S
3:23,24 4:2,
4,6,8,12,19,
21,22 5:1,9
6:22,23
under
4:11,14,25
5:3,4 6:4
understand

12:12
understandin
g
2:15
unique
6:24
United
4:3,6,7,16,
24 5:7
Uresti
8:10,25 10:19

─── V ───

valid
6:3
Van
2:8,9,16,19,
24,25 3:14
7:16 8:10,25
10:19
vote
6:6,13 9:7,9,
15,21,25
10:4,10,13
11:7
voted
9:10,16,19,
22 10:2,5,15
voter
2:6 5:16,18,
20,22,24,25
6:2,3,6,14
7:3 9:3,14
10:10,13
voters
5:17 6:6,8,
10,15,17,19,
21
votes
8:20
voting
6:2



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Tape Transcription

March 18, 2009

19

| W | 1 | 12:15,25 | 8 |
|---|---|---|---|
| **Watson** | **1** | **209** | 8:23 9:9,10, |
| 8:10 | 5:8 | 12:8,15 | 22 10:1,5 |
| **way** | **100congress** | **22nd** | **8140** |
| 3:7,10 | 13:6 | 12:24 | 13:4 |
| **week** | **10th** | **23** | **81R** |
| 3:5 7:23 | 9:12 | 12:15 | 1:6 12:6 |
| **Wentworth** | **11** | **283** | **81st** |
| 8:10 | 3:12 | 13:5 | 10:8 |
| **we're** | **11th** | | |
| 10:20 | 9:12,19 | 3 | |
| **West** | **12** | **31** | |
| 8:11,15,17, | 8:13 9:15,21 | 8:23 | |
| 24 10:18 | 10:1,5 | **328-5557** | |
| 11:3,4,11,17 | **12/31/13** | 13:7 | |
| 12:9,15 | 13:5 | **362** | |
| **Whitmire** | **13** | 1:6 2:3,5 | |
| 8:11 | 9:9 | 3:16 5:17,18 | |
| **whole** | **14th** | 6:5,9 7:21 | |
| 3:5,6 9:5,13, | 9:1 12:9,16 | 8:2,13,20 | |
| 17 | **1701** | 9:14,20,25 | |
| **Williams** | 11:15 | 10:4 12:6 | |
| 8:11 | **17th** | **3RD** | |
| **Wilson** | 9:24 | 1:6 12:7 | |
| 12:8,15 | **18** | 5 | |
| **wish** | 4:11 10:3 | **512** | |
| 10:23 | **19** | 13:7 | |
| **witness** | 8:13 9:21 | **52** | |
| 3:16 | 10:1,5 | 11:20 | |
| **worked** | **1991** | 6 | |
| 7:5 | 5:8 | **63.0101** | |
| Y | 2 | 4:14,25 5:5 | |
| **years** | **20** | **63.01012** | |
| 4:11 | 9:15 | 5:3 | |
| **yield** | **2000** | **63.0101b** | |
| 11:1,3 | 13:6 | 4:18 | |
| Z | **2009** | 7 | |
| **Zaffirini** | 1:6 3:12 9:1, | **78701** | |
| 8:11,25 10:20 | 12,19 12:6 | 12:10,17 13:7 | |
| 11:19 | **2012** | 8 | |



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

JA_005644

| A | | | | |
|---|---|---|---|---|
| **ability** 12:12 | **application** 11:10,12 | 8:13,20 9:14,17,20 9:20,25 10:3 11:19 | 3:21,23,25 4:2,4,6,12 4:16,19,21 4:22,24 5:1 5:9 | **CSR** 1:15 13:4 |
| **abroad** 4:9 | 6:14 **apply** 4:5 | **bills** 7:2 | **citizen's** 3:21 | **D** |
| **accepted** 6:2 | **appreciate** 7:22 | **birth** 4:21 5:11 | **claimed** 5:25 | **data** 2:17 6:18,19 7:1,6 |
| **action** 12:20,23 | **April** 12:15,25 | **born** 4:7,8,9 | **Coby** 3:3,13 | **date** 10:7 13:5 |
| **addition** 4:9 | **asked** 2:16 3:5,17 | **Bureau** 6:22 | **Code** 4:15,18 | **dated** 3:12 |
| **address** 5:14,15,21 5:25 6:2,5 | **asking** 10:20 | **bypassing** 9:6 | **Colby** 7:11 | **Davis** 8:6 |
| **addressed** 3:14 | **aspects** 6:24 | **C** | **colleagues** 3:9 | **day** 12:24 |
| **addressing** 9:8 | **assisted** 7:1 | **call** 8:5 | **come** 2:2 | **de** 2:8,9,16,19 2:24,25 3:14 7:16 8:10,25 10:19 |
| **adverse** 6:10 | **Attorney** 12:9,16 | **caption** 2:4 | **comments** 7:16 | **debate** 1:6 7:24 12:7 |
| **advised** 3:10 | **attorneys** 12:20 | **Carona** 8:6 | **committee** 3:5,6 9:5,13 9:17 | **deliberat...** 9:8 |
| **aforement...** 12:11 | **Austin** 12:9,16 13:7 | **CD** 11:21 12:6 12:11,13 | **compilation** 7:1 | **demographics** 7:3 |
| **age** 4:11 | **author** 2:10 | **Census** 6:22 | **complete** 7:24 | **Department** 6:23 |
| **allow** 2:10 9:2 | **authorized** 4:17 5:3,14 5:22 | **certificate** 3:21 4:2,5 4:12,22,22 4:23 5:1,6 5:10,11 | **comprised** 8:23 | **DEPOSITION** 13:6 |
| **allowed** 6:6 | **available** 7:6 | **Certified** 12:3,24 | **considered** 6:12 | **Deputy** 3:3,13 7:11 |
| **amend** 9:2 | **Averitt** 8:6 | **certify** 12:4,18 | **constitute** 4:21 | **determined** 4:2 |
| **amendment** 4:14,18,25 | **B** | **Chair** 2:2,12,23 7:20 8:15 | **contain** 5:12 | **Deuell** 8:7 |
| **amount** 12:10 | **b** 5:5 | **chamber** 8:19 | **contained** 6:5 | **DEWHURST** 2:1,7,12,23 7:15 8:3,12 10:22 11:2 11:14,18 |
| **Anne** 12:8,15 | **based** 3:24 4:1 6:24 | **child** 4:10,11 | **contains** 4:13 5:11 | **difference** 3:20 |
| **appear** 4:24 | **behalf** 8:18 10:18 | **children** 4:8 | **convened** 9:13 | **different** 6:5,24 10:24 |
| **appeared** 5:21,25 | **best** 7:6 12:12 | **citizens** 4:8,9 | **counsel** 7:1 12:19 | **directed** |
| **appearing** 5:14,16 | **bill** 2:3,5 3:16 5:18 6:4,9 6:11 7:4,20 7:23 8:1,2 | **citizenship** | **COUNTY** 12:1 | |
| **appears** 5:4 | | | **court** 5:8 | |
| **appended** | | | | |



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00203367

```
2:17
disqualify
5:24
district
11:7,9
document
2:15 4:3,12
  5:6,15
documents
4:20,23 5:4
DOJ
11:6
due
12:10
Duncan
8:7

        E
effort
7:2,23
Election
4:15
eligibility
6:13
eligible
4:4,9,11
Ellis
8:7,24 10:18
Eltife
8:7
employed
12:19
ensure
7:6
enter
2:17
entered
2:21 11:16
entitled
12:6
ESQUIRE
13:6
Estes
8:7
ethnic
8:18,24 9:10
  9:16,22
  10:1,5,15
```

```
ethnicity
6:17 7:2
everyone's
7:23
Expiration
13:5
Explain
3:20
E-trans
12:15

        F
favor
10:16
favorably
9:4
federal
5:8
final
2:3 8:1
finally
8:14
financially
12:22
find
3:18 11:6
FIRM
13:5
floor
11:19
Flr
1:6 12:7
following
4:20 8:19
  12:5
form
5:22 6:4
forms
4:17 5:2
four
4:23
Fraser
2:13,14 7:20
  7:22 8:4,7
further
12:18,21

        G
```

```
Gallegos
8:7,24 10:19
generally
4:20
Generals
12:16
General's
12:9
give
7:25
given
2:18
going
2:17
good
7:24
government
4:3 5:7
GOVERNOR
2:1,7,12,23
  7:15 8:3,12
  10:22 11:2
  11:14,18
Governor's
7:25
grounds
5:23
guess
2:19

        H
Harris
8:8
hear
12:12
heard
8:4
Hearing
7:19
Hegar
8:8
highest
11:8
Hinajosa
8:8,25 10:19
Hispanic
6:19,21
Historically
```

```
7:5
Huffman
8:8

        I
identific...
2:6 4:17 5:2
  5:15,22 6:4
  7:4 9:3,15
  10:10,13,14
identified
6:21
identity
4:13 5:19
III
3:13 7:11
Immigration
3:25 4:20
impact
6:10
inadverte...
7:9
include
4:5
included
7:7,14
inconclusive
6:20
inconsist...
5:13
inconsist...
5:21
incorporated
7:17
individuals
4:4,7
indulgence
3:9
information
3:24 6:15
instance
6:25
interested
12:22
issued
4:3 5:7
issues
3:23 7:9
```

```
I's
8:13

        J
Jackson
8:8
January
9:1
journal
7:17 8:21
  10:21 11:16
jurisdiction
3:23
Justice
6:23

        K
know
3:22 7:10

        L
law
5:17
lays
2:2
legislation
6:25 9:3,8
  10:1,4,6,10
  10:14,15,16
  10:17
legislative
6:25 10:8
legislators
7:6
letter
2:24 3:3,12
letterhead
3:13
Lieutenant
2:1,7,12,23
  7:15,25 8:3
  8:12 10:22
  11:2,14,18
list
5:16 6:1,5
  6:21
listed
5:2 10:11
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

2009 (81R) SB 362, Senate Flr Debate, 3rd Reading

long
5:24
Lucio
8:8,25 10:19
Lynne
1:15 12:3
13:4

___ M ___

M
1:15
majority
11:7
March
3:12 9:12,19
9:24 10:3
matches
6:20
matter
10:24
member
7:18
members
3:2 7:22 8:3
8:23 10:9
10:12
military
5:16
minorities
8:24 9:10,16
minority
6:10 8:18
9:22 10:1,5
10:15 11:7
11:9
misunders...
7:10
motion
8:4 9:1,9,11
9:23 10:2
11:10,12
move
8:1
moves
7:16

___ N ___

name

11:9,12
naturaliz...
4:23 5:6,10
5:10
naturalized
4:10
Nay's
8:13
need
9:6
needed
3:17
needs
11:10
neither
12:18
Nelson
8:9
Nichols
8:9
number
6:18

___ O ___

objection
7:18
objections
11:11
obtain
7:3
obtained
4:5 5:9
October
5:8
offer
8:19
office
2:11 3:22
12:9,16
Ogden
8:9
omitted
7:9
ones
10:11
opportuni...
10:8,12
opportunity

3:15 7:8
10:9
order
2:2 9:6,21
9:21,25
ordered
7:19
outcome
12:22
outside
4:7

___ P ___

paper
3:21
papers
4:16,25
parent
4:10
parents
4:10
parliamen...
3:10
parties
12:20
passage
2:3 8:2 9:17
passed
8:14 9:14
passport
4:22 5:1
Patrick
8:9
permanent
5:15 6:1
person
5:9
person's
5:11 6:13
photo
5:2
photograph
4:13 5:11,12
please
3:18,21 7:10
point
9:7
preliminary

4:1
prescribed
3:10 6:14
present
2:6
presented
6:3
President
2:9,14 3:1,2
7:13 8:18
10:20
prevailed
9:9
previous
9:2
pre-clear...
6:11
probably
2:20
proceeding
12:21
proceedings
7:14
process
10:16
processes
10:14
proof
2:6 4:4,13
4:21 5:8,19
5:20
proposed
4:14,17,25
5:3 6:4
prove
6:9
provide
5:18,20
provided
6:22
purpose
2:8
purposes
11:6
Pursuant
11:15
put
2:10

Putte
2:8,9,16,19
2:24,25
3:14 7:16
8:10,25
10:19

___ Q ___

qualifies
4:13
qualify
4:24 5:4
question
2:16 3:20
5:13 6:7
questions
3:4,17,18
7:10

___ R ___

race
6:16 7:1
racial
6:8,12
read
2:4,24 3:8
7:16
reading
1:6 2:2 9:25
10:4 12:7
ready
11:19
recognizes
2:13,24 7:20
8:15
record
2:10,18,21
3:8 7:17
records
7:14
regarding
6:16 10:14
register
6:13
registered
6:6,8,17,18
6:21
registration



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00203369

17

5:16,23  6:1
6:14 13:5
**regular**
10:8
**related**
10:16 12:19
**relates**
9:14
**relating**
2:5 9:3
10:10
**relevant**
11:8
**report**
3:7
**reported**
9:4
**Reporter**
12:3
**represent**
11:8
**representing**
11:7
**request**
6:15 12:8
**require**
5:19
**required**
7:3
**requirements**
9:4,15
**requires**
5:18
**requiring**
2:6
**research**
3:18 4:1 7:8
**residence**
5:20 6:1
**residing**
4:6
**resource**
3:16
**respect**
8:20
**response**
2:11,21 3:4
3:24

**responses**
3:19
**responsible**
10:21
**result**
6:15
**re-distri...**
7:2
**rise**
2:8
**Rodriguez**
1:15 12:3
13:4
**role**
8:5
**roll**
5:23
**Rule**
11:15
**rules**
9:2

**S**

**SB**
1:6 5:17
12:6
**second**
9:25 11:8
**Secretary**
2:3,5,11,18
2:21 3:4,13
3:22 6:7,9
7:11 8:5,6
**section**
4:14,18,25
5:3
**see**
2:20
**seen**
2:15,19
**Seliger**
8:9
**Senate**
1:6 2:1,3,5
3:16 5:18
6:4,9 7:20
8:2,13,20
8:23 9:2,5

9:7,7,12,14
9:18,19,20
9:24,24
10:3,3,9,13
10:14 11:9
11:19 12:7
**senator**
2:7,9,13,14
2:16,19,24
2:25 3:14
7:15,20,22
8:4,15,17
10:15,22,25
10:25 11:3
11:3,4,5,5
11:6,11,12
11:13,17,18
**senators**
8:19 9:10,16
9:22 10:2,5
11:15
**send**
9:20
**sent**
8:22
**serve**
3:15
**Services**
3:25 4:20
13:6
**session**
10:9
**set**
9:5
**Shapiro**
8:9
**Shapleigh**
8:10 10:23
10:25 11:3
11:5
**Shapleigh's**
11:12
**SHAPLIEGH**
11:13
**Shorter**
3:3,13 7:11
**Shorthand**
12:3

**similar**
7:2
**simply**
6:20
**Sincerely**
7:11
**speak**
10:23
**special**
9:5,20,21,25
**specifically**
4:8 5:2
**spread**
8:21 10:21
**staff**
8:1
**state**
2:18,22 3:4
3:14,22 5:8
6:7,9,11,13
6:16 7:12
12:2,4
**statement**
8:16,20
10:18,23
11:15
**States**
4:3,6,7,16
4:24 5:7
**State's**
2:11
**statistics**
6:16
**status**
6:8,12
**Street**
12:9,16
**student**
5:17
**subject**
9:9
**submission**
6:23
**submissions**
7:7
**submit**
3:3
**submits**

6:11
**submitted**
3:7 12:14
**Suite**
13:6
**surname**
6:20
**surnames**
6:19,22

**T**

**taken**
12:21
**temporary**
5:14
**testimony**
3:17
**Texas**
4:15 6:17,25
12:2,4,10
12:17 13:4
13:7
**thank**
2:25 3:15
7:8,25 8:17
10:20 11:13
11:14,17
**think**
2:17,20 7:23
11:5,8,9
**third**
2:2 10:4
**thought**
3:2
**today's**
7:14
**track**
6:7
**transcribed**
1:15 12:8,11
**transcript**
12:14
**TRAVIS**
12:1
**treated**
5:17
**two-thirds**
9:6



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

TX_00203370

2009 (81R) SB 362, Senate Flr Debate, 3rd Reading                    March 18, 2009

18

**U**

understand
12:12
understan...
2:15
unique
6:24
United
4:3,6,7,16
  4:24 5:7
Uresti
8:10,25
  10:19
U.S
3:23,24 4:2
  4:4,6,8,8
  4:12,19,21
  4:22 5:1,9
  6:22,23

**V**

valid
6:3
Van
2:8,9,16,19
  2:24,25
  3:14 7:16
  8:10,25
  10:19
vote
6:6,13 9:7,9
  9:15,21,25
  10:4,10,13
  11:7
voted
9:10,16,19
  9:22 10:2,5
  10:15
voter
2:6 5:16,18
  5:20,22,24
  5:24,25 6:2
  6:3,6,14
  7:3 9:3,14
  10:10,13
voters
5:17 6:6,8
  6:10,15,17

6:19,21
votes
8:20
voting
6:2

**W**

Watson
8:10
way
3:7,10
week
3:5 7:23
Wentworth
8:10
West
8:11,15,17
  8:24 10:18
  11:3,4,11
  11:17 12:9
  12:15
we're
10:20
Whitmire
8:11
Williams
8:11
Wilson
12:8,15
wish
10:23
witness
3:16
worked
7:5

**Y**

years
4:11
yield
11:1,3

**Z**

Zaffirini
8:11,25
  10:20 11:19

**1**

1
5:8
10th
9:12
100congress
13:6
11
3:12
11th
9:12,19
12
8:13 9:15,21
  10:1,5
12/31/13
13:5
13
9:9
14th
9:1 12:9,16
17th
9:24
1701
11:15
18
4:11 10:3
19
8:13 9:21
  10:1,5
1991
5:8

**2**

20
9:15
2000
13:6
2009
1:6 3:12 9:1
  9:12,19
  12:6
2012
12:15,25
209
12:8,15
22nd
12:24
23
12:15

283
13:5

**3**

3rd
1:6 12:7
31
8:23
328-5557
13:7
362
1:6 2:3,5
  3:16 5:17
  5:18 6:5,9
  7:21 8:2,13
  8:20 9:14
  9:20,25
  10:4 12:6

**5**

512
13:7
52
11:20

**6**

63.0101
4:14,25 5:5
63.0101(b)
4:18
63.01012
5:3

**7**

78701
12:10,17
  13:7

**8**

8
8:23 9:9,10
  9:22 10:1,5
81R
1:6 12:6
81st
10:8
8140
13:4



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**FISCAL NOTE, 81ST LEGISLATIVE REGULAR SESSION**

**April 5, 2009**

**TO:** Honorable Todd Smith, Chair, House Committee on Elections

**FROM:** John S. O'Brien, Director, Legislative Budget Board

**IN RE:** **SB362** by Fraser (Relating to requiring a voter to present proof of identification.), **As Engrossed**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB362, As Engrossed: a negative impact of ($2,000,000) through the biennium ending August 31, 2011.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five-Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2010 | ($2,000,000) |
| 2011 | $0 |
| 2012 | $0 |
| 2013 | $0 |
| 2014 | $0 |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from *General Revenue Fund* 1 |
|---|---|
| 2010 | ($2,000,000) |
| 2011 | $0 |
| 2012 | $0 |
| 2013 | $0 |
| 2014 | $0 |

**Fiscal Analysis**

The bill would make various changes to the Elections Code regarding voter identification. Among the changes would be a requirement that the voter registrar of each county provide with each initial voter registration certificate or renewal registration certificate issued, notice of identification requirements for voting. The Secretary of State (SOS) would be required to prescribe the wording of the notice. Another new requirement would be that the SOS and the voter registrar of each county that maintains a website to post on the website notice of the identification requirements. The SOS would prescribe the wording of the notice to be posted on the website. The SOS would also be required, in cooperation with appropriate nonprofit organizations and with certain political parties, to establish a statewide effort to educate voters regarding the identification requirements for voting. The SOS would be authorized to use any available funds, including federal funds, for the education purposes.

Provisions of the bill would require training standards to include instructions on the acceptance and handling of the identification presented by a voter to an election officer. Each election clerk would be required to complete the part of training that covers identification. The SOS would be required to adopt the training standards and to develop training materials as soon as practicable after September 1, 2009. Each county clerk would be required to provide a session of training using the standards adopted by and the materials developed by the SOS as soon as practicable as well.

The bill would require the presiding judge at each polling place to post in a prominent location outside of the location a list of the acceptable forms of photographic and non-photographic identification. The bill would add to the list of acceptable forms of identification. If identification requirements are not met by a voter, an election officer would be required to inform the voter that they may cast a provisional ballot.

The Department of Public Safety (DPS) would be prohibited from collecting a fee for a personal identification certificate issued to a person who states that they are obtaining the personal identification certificate for the sole purpose of meeting identification requirements for voting if the person meets certain criteria.

Other than stipulations related to providing and posting notice of identification requirements for voting and stipulations related to training, all of which would take effect September 1, 2009, the bill would take effect January 1, 2010.

## Methodology

Although there could be a revenue loss from the prohibition to collect a fee for a personal identification certificate issued to a person seeking the certificate for the sole purpose of voting, it is unknown how many people would make the request, and therefore unknown the amount of revenue loss that could occur. Otherwise, based on the analysis by DPS, it is assumed that costs associated with requirements for the agency could be absorbed within existing resources.

The bill would require the Secretary of State, in cooperation with appropriate nonprofit organizations and with certain political parties, to establish a statewide effort to educate voters regarding the identification requirements for voting. The agency estimates that this would cost $2 million out of General Revenue Funds for fiscal year 2010. The bill would make no appropriation, but could provide the legal basis for an appropriation of funds to implement the provisions of the bill, and a contingency rider for $2 million is included in the proposed Senate appropriations bill.

## Local Government Impact

Based on responses from a sampling of election authorities and county clerks, fiscal impact from implementing provisions of the bill would vary by county. Costs would include at a minimum those for printing signs to post at each polling place, which would not be significant. Other potential costs would be associated with additional training and posting information to the county website. Again, those costs are not expected to be significant. One smaller county response anticipates that the new provisions regarding casting a provisional ballot would require hiring additional staff, resulting in a moderate to significant cost.

**Source Agencies:** 405 Department of Public Safety, 307 Secretary of State
**LBB Staff:** JOB, TP, MS, DB, BTA, SD, LG

# HOUSE JOURNAL

## EIGHTY-FIRST LEGISLATURE, REGULAR SESSION

### PROCEEDINGS

FORTY-FIRST DAY — TUESDAY, MARCH 31, 2009

The house met at 11:35 a.m. and was called to order by the speaker pro tempore.

The roll of the house was called and a quorum was announced present (Record 74).

Present — Mr. Speaker; Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero; Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Absent, Excused — Hernandez.

### LEAVES OF ABSENCE GRANTED

On motion of Representative Thompson and by unanimous consent, all members who were granted leaves of absence on the previous legislative day were granted leaves for this legislative day.

### RULES SUSPENDED

Representative Thompson moved to suspend all necessary rules to take up and consider at this time, on third reading and final passage, the bills on the local, consent, and resolutions calendar which were considered on the previous legislative day.

The motion prevailed.

## MOTION FOR ONE RECORD VOTE

On motion of Representative Thompson and by unanimous consent, the house agreed to use the first record vote taken for all those bills on the local, consent, and resolutions calendar that require a record vote on third reading and final passage, with the understanding that a member may record an individual vote on any bill with the journal clerk.

## LOCAL, CONSENT, AND RESOLUTIONS CALENDAR
## THIRD READING

The following bills which were considered on second reading on the previous legislative day on the local, consent, and resolutions calendar were laid before the house, read third time, and passed by the following record vote (members registering votes and the results of the vote are shown following bill number).

(Record 75): 147 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero; Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker; Eiland(C).

Absent, Excused — Hernandez.

**HB 551**

**HB 753**

**HB 963**

**HB 1683**

**HB 1758**

**HB 1871**

TX_00003074

**HB 1963**(Harper-Brown,P.King, Leibowitz, Riddle, andTaylor-no)(142-5-2)

**HB 1975**

**HB 2208**

**HB 2237**

**HB 2275**

**HB 2433**

**HB 2434**

**HB 2560**

### REGULAR ORDER OF BUSINESS SUSPENDED

On motion of Representative Thompson and by unanimous consent, the reading and referral of bills was postponed until just prior to adjournment.

### SCR 2 - PREVIOUSLY ADOPTED
### (Smithee - House Sponsor)

The chair laid out and had read the following previously adopted resolution:

**SCR 2**, Commemorating the centennial of West Texas A&M University.

(McClendon in the chair)

### INTRODUCTION OF GUESTS

The chair recognized Representative Smithee who introduced representatives of West Texas A&M University.

(Speaker in the chair)

### GENERAL STATE CALENDAR
### HOUSE BILLS
### THIRD READING

The following bills were laid before the house and read third time:

### HB 1671 ON THIRD READING
### (by Crownover, Naishtat, Coleman, Zerwas, Gonzalez Toureilles, et al.)

**HB 1671**, A bill to be entitled An Act relating to mutual aid agreements for newborn screening laboratory services.

**HB 1671** was passed by (Record 76): 147 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero;

TX_00003075

Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

Absent — Rose.

### STATEMENT OF VOTE

When Record No. 76 was taken, I was in the house but away from my desk. I would have voted yes.

Rose

### HB 1297 ON THIRD READING
### (by Hochberg, Flores, et al.)

**HB 1297**, A bill to be entitled An Act relating to optional flexible school day program courses offered by school districts to enable students to earn course credit under certain circumstances.

**HB 1297** was passed by (Record 77): 147 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero; Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton;

Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

Absent — Isett.

### STATEMENT OF VOTE

When Record No. 77 was taken, I was in the house but away from my desk. I would have voted yes.

Isett

### HB 1240 ON THIRD READING
#### (by Villarreal, Naishtat, and Coleman)

**HB 1240**, A bill to be entitled An Act relating to information required to be provided to parents of an infant.

**HB 1240** was passed by (Record 78): 145 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Eiland; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero; Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

Absent — Edwards; Hancock; Laubenberg.

### HB 773 ON THIRD READING
#### (by Oliveira, et al.)

**HB 773**, A bill to be entitled An Act relating to extending the expiration date of the Property Redevelopment and Tax Abatement Act.

**HB 773** was passed by (Record 79): 145 Yeas, 1 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Eiland; Eissler; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero; Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Nays — Crabb.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

Absent — Edwards; Elkins.

### STATEMENT OF VOTE

I was shown voting yes on Record No. 79. I intended to vote no.

Geren

### HB 772 ON THIRD READING
### (by D. Howard, Rodriguez, Maldonado, Leibowitz, et al.)

**HB 772**, A bill to be entitled An Act relating to Internet broadcasts of open meetings held by the State Board of Education.

**HB 772** was passed by (Record 80): 148 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero;

Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

### HB 1038 ON THIRD READING
### (by Paxton, Zerwas, Harless, Gattis, Truitt, et al.)

**HB 1038**, A bill to be entitled An Act relating to the determination of the market value of a residence homestead for purposes of ad valorem taxation.

**HB 1038** was passed by (Record 81): 144 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero; Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

Absent — Alonzo; Davis, Y.; Elkins; Menendez.

## HB 350 ON THIRD READING
### (by Leibowitz, Herrero, Martinez, et al.)

**HB 350**, A bill to be entitled An Act relating to use of school district resources for athletic or instructional facilities.

**HB 350** was passed by (Record 82): 148 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero; Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

## HB 71 ON THIRD READING
### (by Corte, Bohac, Chavez, Branch, S. Miller, et al.)

**HB 71**, A bill to be entitled An Act relating to the establishment of a program to provide a ballot by electronic mail to military personnel serving overseas and their spouses and dependents residing overseas.

### Amendment No. 1

Representative Chisum offered the following amendment to **HB 71**:

Amend **HB 71** on third reading by inserting the following new section, appropriately numbered, and renumbering the subsequent sections of the bill accordingly:

SECTION ____. Chapter 63, Election Code, is amended by adding Section 63.0013 to read as follows:

Sec. 63.0013. EXEMPTION FROM PROOF OF IDENTIFICATION REQUIREMENT: ACTIVE DUTY MILITARY PERSONNEL SERVING IN COMBAT ZONE. (a) A voter is exempt from the proof of identification requirements prescribed by Section 63.0101 if the voter is a member of the armed

forces of the United States who is on active duty under the lawful orders of competent authority in an area that has been designated by the president of the United States as a combat zone.

(b) The secretary of state shall prescribe procedures as necessary to implement this section.

Amendment No. 1 was adopted.

**HB 71**, as amended, was passed by (Record 83): 145 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Harless; Harper-Brown; Hartnett; Heflin; Herrero; Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

Absent — Hardcastle; Pierson; Thibaut.

## HB 271 ON THIRD READING
### (by Ortiz, Button, F. Brown, Strama, Parker, et al.)

**HB 271**, A bill to be entitled An Act relating to the designation of enterprise projects during a biennium.

**HB 271** was passed by (Record 84): 148 Yeas, 0 Nays, 1 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Aycock; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Button; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook; Corte; Crabb; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Deshotel; Driver; Dukes; Dunnam; Dutton; Edwards; Eiland; Eissler; Elkins; England; Farabee; Farias; Farrar; Fletcher; Flores; Flynn; Frost; Gallego; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Herrero;

Hilderbran; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Hunter; Isett; Jackson; Jones; Keffer; Kent; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Laubenberg; Legler; Leibowitz; Lewis; Lucio; Madden; Maldonado; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miklos; Miller, D.; Miller, S.; Moody; Morrison; Naishtat; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Quintanilla; Raymond; Riddle; Rios Ybarra; Ritter; Rodriguez; Rose; Sheffield; Shelton; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Swinford; Taylor; Thibaut; Thompson; Truitt; Turner, C.; Turner, S.; Vaught; Veasey; Villarreal; Vo; Walle; Weber; Woolley; Zerwas.

Present, not voting — Mr. Speaker(C).

Absent, Excused — Hernandez.

## POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

## CSHB 1161 ON SECOND READING
### (by Geren)

**CSHB 1161**, A bill to be entitled An Act relating to local regulation of distance requirements for businesses selling alcoholic beverages near certain establishments.

**CSHB 1161** was read second time on March 30 and was postponed until 10 a.m. today.

Representative Geren moved to postpone consideration of **CSHB 1161** until 11:30 a.m. tomorrow.

The motion prevailed.

## COMMITTEES GRANTED PERMISSION TO MEET

Representative Gonzalez Toureilles requested permission for the Committee on Agriculture and Livestock to meet while the house is in session, during bill referral today, in E2.028, for a public hearing, to consider the previously posted agenda.

Permission to meet was granted.

Representative Homer requested permission for the Committee on Culture, Recreation, and Tourism to meet while the house is in session, during bill referral today, in E1.010, for a public hearing, to consider items from a previously posted notice.

Permission to meet was granted.

Representative Vaught requested permission for the Committee on Criminal Jurisprudence, Subcommittee on Violent Crimes, to meet while the house is in session, during bill referral today, in JHR 120, to continue the posted agenda.

Permission to meet was granted.

## FIVE-DAY POSTING RULE SUSPENDED

Representative Deshotel moved to suspend the five-day posting rule and all necessary rules to allow the Committee on Business and Industry, Subcommittee on Consumer and Employee Issues, to consider **HB 1787**, **HB 1835**, **HB 1953**, **HB 2623**, **HB 2988**, **HB 3077**, **HB 3083**, **HB 3166**, **HB 3167**, **HB 3525**, and **HB 4395**.

The motion prevailed.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Business and Industry, Subcommittee on Consumer and Employee Issues, 8 a.m. tomorrow, E2.036, for a public hearing, to consider **HB 1787**, **HB 1835**, **HB 1953**, **HB 2623**, **HB 2988**, **HB 3077**, **HB 3083**, **HB 3166**, **HB 3167**, **HB 3525**, and **HB 4395**.

## COMMITTEES GRANTED PERMISSION TO MEET

Representative Pickett requested permission for the Committee on Transportation to meet while the house is in session, during bill referral today, in E2.014.

Permission to meet was granted.

Representative Kolkhorst requested permission for the Committee on Public Health to meet while the house is in session, during bill referral today, in E2.012, to continue the previously posted agenda.

Permission to meet was granted.

## FIVE-DAY POSTING RULE SUSPENDED

Representative McClendon moved to suspend the five-day posting rule and all necessary rules to allow the Committee on Criminal Jurisprudence to consider **HB 4464**.

The motion prevailed.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Criminal Jurisprudence, 2 p.m. or upon final adjournment tomorrow, E2.028, for a public hearing, to consider **HB 4464** and the posted agenda.

## PROVIDING FOR ADJOURNMENT

Representative Zerwas moved that, at the conclusion of the reading of bills and resolutions on first reading and referral to committees, the house adjourn until 10 a.m. tomorrow.

The motion prevailed.

### BILLS AND JOINT RESOLUTIONS ON FIRST READING
### AND REFERRAL TO COMMITTEES
### RESOLUTIONS REFERRED TO COMMITTEES

Bills and joint resolutions were at this time laid before the house, read first time, and referred to committees. Resolutions were at this time laid before the house and referred to committees. (See the addendum to the daily journal, Referred to Committees, List No. 1.)

(Taylor in the chair)

### ADJOURNMENT

In accordance with a previous motion, the house, at 12:34 p.m., adjourned until 10 a.m. tomorrow.

---

### ADDENDUM

---

### REFERRED TO COMMITTEES

The following bills and joint resolutions were today laid before the house, read first time, and referred to committees, and the following resolutions were today laid before the house and referred to committees. If indicated, the chair today corrected the referral of the following measures:

**List No. 1**

**HCR 136** (By Creighton), Designating the tarpon as the official State Saltwater Fish of Texas.

To Culture, Recreation, and Tourism.

**HCR 137** (By Gonzalez Toureilles), Commending Orange Grove High School Family, Career, and Community Leaders of America students for their efforts to raise awareness of cancer of unknown primary (CUP) origin and for choosing zebra stripes as the ribbon color to symbolize this rare form of cancer.

To Public Health.

**HCR 139** (By Flores), Directing the State Preservation Board to amend its rules to allow the statue in honor of Tejanos to be placed on the south lawn of the Capitol.

To Culture, Recreation, and Tourism.

**HCR 148** (By Veasey), Memorializing Congress to ensure that women in U.S. Immigration and Customs Enforcement detention facilities receive full access to the medical care to which they are entitled.

To State Affairs.

**HJR 98** (By Thompson), Proposing a constitutional amendment authorizing the governor to grant a pardon to a person who successfully completes a term of deferred adjudication community supervision.

To Corrections.

**HR 1138** (By Mallory Caraway), Urging U.S. Treasury Secretary Timothy Geithner to implement a plan that will allow cities affected by the credit crisis to access traditional market interest rates for bonds.

To Urban Affairs.

**SB 32** to Public Health.

**SB 33** to Public Education.

**SB 34** to Judiciary and Civil Jurisprudence.

**SB 39** to Insurance.

**SB 44** to Higher Education.

**SB 52** to Transportation.

**SB 65** to Higher Education.

**SB 71** to Human Services.

**SB 72** to Human Services.

**SB 81** to Human Services.

**SB 86** to Public Health.

**SB 90** to Defense and Veterans' Affairs.

**SB 93** to Higher Education.

**SB 158** to Public Education.

**SB 175** to Higher Education.

**SB 188** to Public Health.

**SB 189** to Defense and Veterans' Affairs.

**SB 202** to Public Health.

**SB 220** to Transportation.

**SB 229** to County Affairs.

**SB 234** to Business and Industry.

**SB 235** to Business and Industry.

**SB 236** to Business and Industry.

**SB 239** to Business and Industry.

**SB 271** to Judiciary and Civil Jurisprudence.

**SB 279** to Judiciary and Civil Jurisprudence.

**SB 284** to Public Health.

**SB 286** to Public Health.

**SB 287** to Public Health.

**SB 288** to Public Health.

**SB 289** to Public Health.

**SB 291** to Public Health.

**SB 292** to Public Health.

**SB 293** to Transportation.

**SB 297** to Defense and Veterans' Affairs.

**SB 300** to Public Education.

**SB 309** to Licensing and Administrative Procedures.

**SB 316** to Transportation.

**SB 328** to Criminal Jurisprudence.

**SB 333** to Criminal Jurisprudence.

**SB 334** to Transportation.

**SB 343** to Public Health.

**SB 347** to Public Health.

**SB 348** to Transportation.

**SB 362** to Elections.

**SB 374** to Public Safety.

**SB 376** to County Affairs.

**SB 381** to Public Health.

**SB 395** to Agriculture and Livestock.

**SB 397** to Judiciary and Civil Jurisprudence.

**SB 405** to Transportation.

**SB 407** to Judiciary and Civil Jurisprudence.

**SB 420** to Judiciary and Civil Jurisprudence.

**SB 424** to Public Health.

**SB 434** to Transportation.

**SB 445** to Judiciary and Civil Jurisprudence.

**SB 446** to Urban Affairs.

**SB 470** to Licensing and Administrative Procedures.

**SB 476** to Public Health.

**SB 477** to Judiciary and Civil Jurisprudence.

**SB 481** to Transportation.

**SB 492** to Urban Affairs.

**SB 497** to Judiciary and Civil Jurisprudence.

**SB 503** to Public Education.

**SB 504** to Higher Education.

TX_00003086

**SB 506** to Public Safety.

**SB 517** to Judiciary and Civil Jurisprudence.

**SB 524** to County Affairs.

**SB 525** to Public Health.

**SB 527** to Public Health.

**SB 530** to County Affairs.

**SB 531** to Public Health.

**SB 532** to Public Health.

**SB 555** to Judiciary and Civil Jurisprudence.

**SB 572** to Human Services.

**SB 576** to Ways and Means.

**SB 581** to Transportation.

**SB 584** to Public Health.

**SB 589** to Transportation.

**SB 623** to Urban Affairs.

**SB 625** to Criminal Jurisprudence.

**SB 627** to Judiciary and Civil Jurisprudence.

**SB 633** to Corrections.

**SB 643** to Public Health.

**SB 657** to Judiciary and Civil Jurisprudence.

**SB 662** to Public Health.

**SB 683** to Judiciary and Civil Jurisprudence.

**SB 687** to Public Safety.

**SB 703** to Public Health.

**SB 730** to Public Safety.

**SB 731** to Licensing and Administrative Procedures.

**SB 745** to State Affairs.

**SB 759** to Public Education.

**SB 769** to State Affairs.

**SB 820** to Urban Affairs.

**SB 987** to Public Education.

TX_00003087