**McCorkle, Perry C (CRT)**

**SECTION 5 SUBMISSION**

| | |
|---|---|
| **From:** | Elizabeth Winn [EHanshawWinn@sos.state.tx.us] |
| **Sent:** | Monday, July 25, 2011 9:29 PM |
| **To:** | vot1973c (CRT) |
| **Cc:** | Ann McGeehan |
| **Subject:** | Technical Correction to Senate Bill 14 (Submission ID: 3132 Submission Time: 2011-07-25 17:06:34) 2011-2775 |
| **Attachments:** | RevisedSB14.pdf; SB14.pdf; SB 14 SOS GA Testimony.pdf; SB 14GeorgiaRequest for additional statistics.pdf |

NO. 2011-2775

To U.S. Department of Justice, Voting Section:

Please accept this transmittal as a technical correction (legal citation at the bottom of page 12) to Senate Bill 14, passed by the 82nd Texas Legislature, submitted earlier today (Submission ID: 3132 Submission Time: 2011-07-25 17:06:34). We are asking that you accept the attached submission letter in lieu of the submission letter previously sent. To eliminate any confusion, we are resending the same attachments previously sent with the original submission.

If you have any questions regarding this communication, please do not hesitate to contact our office at (512)463-5650.

Sincerely,


Elizabeth Hanshaw Winn
Office of the Secretary of State

2:13-cv-193
09/02/2014
DEF0064

1

PX 063

US_00000184

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

Hope Andrade
Secretary of State

July 25, 2011

Mr. T. Christian Herren, Jr.
Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

RE:  Submission under Section 5, Voting Rights Act, of Senate Bill 14, Chapter 123, 82nd Legislature, 2011.

Dear Mr. Herren:

The Legislature of the State of Texas has enacted Senate Bill 14, Chapter 123, 82nd Legislature, 2011 (the "Act"), relating to requirements to vote, including presenting proof of identification. As described in more detail below and with some exceptions, the Act requires a voter to present a current or recently-expired form of photo identification in order to vote in person at a polling place. The Act also requires the Office of the Secretary of State and local election officials to develop voter education programs, create training programs for polling place officials, and revise election forms and postings beginning September 1, 2011.

Because of the upcoming statutory deadlines contained in the Act, we are hereby requesting expedited consideration of this submission under 28 C.F.R. § 51.34. An expedited response from your office will allow the state to promptly implement comprehensive education of voters and local election officials; therefore, we would appreciate a decision from your office by August 20, 2011.

Pursuant to the requirements of 28 C.F.R. § 51.27, the following information is submitted with respect to the Act:

(a) & (b) A copy of the Act is enclosed. An electronic copy of the Act is also available at http://www.sos.state.tx.us/statdoc/bills/index.shtml.

(c)  The Act amends the Texas Election Code (the "Code") and the Texas Transportation Code to require voters to present a current form of photo identification to qualify to vote in person at the polling place in elections held in the State of Texas. The Act creates exemptions for certain voters with disabilities, voters whose religious beliefs prevent

US_00000185

Mr. T. Christian Herren, Jr.
Page 2

them from being photographed for identification, and voters who have lost their identification in natural disasters. A voter, who does not present a current form of photo identification when appearing to vote at the polling place and who does not fall within the scope of the Act's exemptions, may elect to vote provisionally. A voter who casts a provisional ballot under these circumstances may then take advantage of the Act's post-election cure procedures. The Act provides that a voter who presents his or her photo identification or executes one of the affidavits set out in Section 65.054(b)(2)(B) (religious objection) or (C) (natural disaster objection) in the presence of the registrar (discussed below) within 6 days after the election shall have his or her provisional ballot counted. Moreover, the Act creates a new election identification certificate and provides that the Texas Department of Public Safety ("TDPS") will make these certificates available, free of charge, to voters who do not have access to any other acceptable form of photo identification.

The Act requires state and local authorities to engage in a thorough voter education and outreach program that includes the following components: including the new photo-identification requirements on voter registration cards; including these requirements on the Secretary of State's web site in multiple languages; including this same information on local county voter registrars' websites; including a physical posting of these requirements in all county clerks' offices; including a physical posting of the requirements at prominent places within polling locations, and including a statewide voter education program conducted by the Secretary of State.

The Act requires the Secretary of State to adopt training standards and develop training materials to implement the changes to polling place procedures contained in the Act as soon as practicable after September 1, 2011. In addition, as soon as practicable, the county clerk is required to provide a training session under Section 32.114 of the Code that incorporates the new Secretary of State training standards to be adopted under Section 32.111 of the Code.

Finally, the penalty for illegal voting is raised from a state jail felony to a second degree felony. The criminal penalty for attempted illegal voting is increased from a Class A misdemeanor to a state jail felony.

The provisions of the Act regarding the need to present a current form of photo identification when voting by personal appearance – including the new cure provisions – go into effect for elections held on or after January 1, 2012. The increased criminal penalties contained in the Act apply only to offenses committed on or after January 1, 2012.

SECTION-BY-SECTION REVIEW

SECTION 1 of the Act amends Section 13.002 of the Code by adding new subsection (i). New subsection (i) provides that a voter registration applicant who wishes to be exempted on the basis of disability from the identification requirements of Section 63.001(b) of the Code (which are discussed in more detail below) must present, along with his or her application,: (1) written documentation either from the Social Security

US_00000186

Mr. T. Christian Herren, Jr.
Page 3

Administration stating that the applicant has been determined to have a disability or from the Department of Veterans Affairs demonstrating that the applicant has a disability rating of at least 50 percent and (2) a statement that the applicant does not possess one of the acceptable forms of identification described under Section 63.0101 of the Code (as amended by the Act).

Section 13.002 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985), and amended by Senate Bill 1441, Chapter 436, 70th Legislature, 1987 (precleared on August 31, 1987), House Bill 612, Chapter 472, 70th Legislature, 1987 (precleared on August 31, 1987), House Bill 613, Chapter 920, 70th Legislature, 1987 (precleared on August 31, 1987), Senate Bill 221, Chapter 2, 71st Legislature, 1989 (a non-substantive change not subject to preclearance), House Bill 74, Chapter 916, 73rd Legislature, 1993 (precleared on September 13, 1993), House Bill 1914, Chapter 390, 74th Legislature, 1995 (precleared on October 13, 1995). House Bill 127, Chapter 797, 74th Legislature, 1995 (precleared on January 16, 1997), Senate Bill 500, Chapter 454, 75th Legislature, 1997 (precleared on August 11, 1997), House Bill 1549, Chapter 1315, 78th Legislature, 2003 (precleared on November 20, 2003), House Bill 1268, Chapter 1049, 79th Legislature, 2005 (precleared on October 21, 2005), House Bill 417, Chapter 614, 80th Legislature, 2007 (precleared on November 16, 2007), Senate Bill 74, Chapter 1295, 80th Legislature, 2007 (precleared on September 27, 2007), Senate Bill 1969, Chapter 87, 81st Legislature, 2009 (a non-substantive change not subject to preclearance), House Bill 536, Chapter 91, 81st Legislature, 2009 (precleared on July 15, 2009), and most recently House Bill 1448, Chapter 632, 81st Legislature, 2009 (precleared on August 5, 2009).

SECTION 2 of the Act amends Section 15.001 of the Code by adding new subsection (c) to provide that the registration certificate issued to a voter who meets the disability exemption requirements of new Section 13.002(i) of the Code (discussed above) must indicate that the voter is exempt from the requirement to present identification other than the registration certificate before being accepted for voting.

Section 15.001 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985), and amended in Senate Bill 1441, Chapter 436, 70th Legislature, 1987 (precleared on August 31, 1987), House Bill 1914, Chapter 390, 74th Legislature, 1995 (precleared on October 13, 1995), House Bill 127, Chapter 797, 74th Legislature, 1995 (precleared on January 16, 1997), and Senate Bill 932, Chapter 532, 80th Legislature 2007 (precleared on November 19, 2007).

SECTION 3 of the Act adds new Section 15.005 to the Code to require the voter registrar of each county to provide notice of the identification requirements for voting (as amended by the Act) and a detailed description of those requirements with each voter registration certificate and registration certificate renewal mailed from the county voter registrar. The Secretary of State is required to provide the wording of the notice.

SECTION 4 of the Act makes a conforming amendment to Section 15.022 of the Code to require the voter registrar to correct a registration on receipt of the registration omissions

US_00000187

Mr. T. Christian Herren, Jr.
Page 4

list or an affidavit submitted under Section 63.006 from a voter swearing that he or she
has been placed in the incorrect precinct by the voter registrar's office.

Section 15.022 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985), and amended by Senate Bill 280, Chapter 54,
Chapter 54, 1987 (precleared on August 24, 1987), House Bill 74, Chapter 916, 73rd
Legislature, 1993 (precleared on September 11, 1993), and most recently House Bill 127,
Chapter 797, 74th Legislature 1995 (precleared on January 16, 1997).

SECTION 5 of the Act adds new Section 31.012 to the Code. According to this new
section, as of September 1, 2011, the Secretary of State and each county voter registrar
that maintains an Internet website must provide notice of the identification requirements
for voting (as amended by the Act) on their respective websites. The information must be
provided in each language in which voter registration materials are available in the state
and county. The Secretary of State must provide the wording of the notice. New section
31.012(b) requires the Secretary of State to conduct a statewide education effort
regarding the identification requirements for voting (as amended by the Act). New
section 31.012(c) requires each county clerk to post in a prominent location a physical
copy of the notice that is required to be posted on the county's or Secretary of State's
Internet website (discussed above). This notice must be provided in each language in
which voter registration materials are available in the county.

SECTION 6 of the Act is effective September 1, 2011 and adds Section 32.111(c) to the
Code. This new subsection requires the Secretary of State to include requirements for the
acceptance and handling of identification presented by a voter to an election officer in its
poll worker training materials.

Section 32.111 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985) and amended in House Bill 1695, Chapter 1316,
78th Legislature, 2003 (precleared on November 20, 2003).

SECTION 7 of the Act is effective September 1, 2011 and amends Section 32.114(a) of
the Code to require that each election clerk must complete the part of the training
program described in SECTION 6 (described above).

Section 32.114 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985). It was amended by House Bill 74, Chapter 916,
73rd Legislature, 1993 (precleared on September 11, 1993), House Bill 1603, Chapter
864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance) and
House Bill 1695, Chapter 1316, 78th Legislature, 2003 (precleared on November 20,
2003).

SECTION 8 of the Act adds new Section 62.016 to the Code. The new section requires
the presiding judge of each polling place to post in a prominent place on the outside of
each polling location a list of the acceptable forms of identification for voting by personal
appearance. The list must be in 24-point font and posted separately from other required
notices.

US_00000188

Mr. T. Christian Herren, Jr.
Page 5

SECTION 9 of the Act amends several subsections of Section 63.001 of the Code.

Amended Section 63.001(b) of the Code to require a voter to present one form of identification as set out in Section 63.0101 of the Code to an election official at the polling place in order to qualify to vote. Prior law allowed a voter to present a current voter registration certificate.

Amended Section 63.001(c) of the Code to provide that, after the election officer receives from the voter the identification described by Section 63.0101 of the Code (see above), the election officer shall review the identification to determine whether the voter's name is on the precinct list of registered voters. If the election officer determines (using standards adopted by the Secretary of State) that the voter's name on the identification is substantially similar to but does not match exactly the name on the list, then the voter will be accepted for voting if the voter submits an affidavit stating that the voter is the person on the list of registered voters.

Amended Section 63.001(d) of the Code to provide that if, as determined by the procedures set forth in Section 63.001(c) (see above), the voter's name is on the precinct list and the voter's identity is verified from the documentation provided, the voter shall be accepted for voting.

Subsection 63.001(f) is amended to make a conforming change.

Section 63.001(g) of the Code is added to provide that a voter who does not meet the identification requirements of this section may vote provisionally. For such a voter, this new subsection requires that an election officer must inform the voter of his or her eligibility to cast a provisional ballot. The election officer must also provide the voter with written information (in a form prescribed by the Secretary of State) that lists the requirements for identification, states the procedures for presenting identification, includes a map showing the location where the identification may be presented, and includes a notice that if the post-election procedure is followed, and the voter is found to have been eligible to vote at the precinct, the provisional ballot will be accepted.

Section 63.001(h) of the Code is added to provide that a voter with disabilities who presents his or her voter registration certificate, containing the indication described by Section 15.001(c) (see above), on offering to vote is exempt from the identification procedures described by this section.

Section 63.001 was added to the Code by House Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985) and amended by House Bill 127, Chapter 797, 74th Legislature, 1995 (precleared on January 16, 1997) and most recently House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance).

SECTION 10 of the Act amends Section 63.0011(a) of the Code to provide that a federal or state judge or the spouse of a federal or state judge whose residence address has been

US_00000189

Mr. T. Christian Herren, Jr.
Page 6

omitted from the precinct list of registered voters under Section 18.005(c) of the Code shall be asked by the polling place election official whether the residence address on their identification is current and whether the voter has changed residence in the county.

Section 63.0011 was added to the Code by House Bill 127, Chapter 797, 74th Legislature, 1995 (precleared on January 16, 1997). It was later amended by House Bill 41, Chapter 594, 80th Legislature, 2007 (precleared on October 2, 2007) and by House Bill 3069, Chapter 927, 81st Legislature, 2009 (precleared on September 9, 2009).

SECTION 11 of the Act adds new Section 63.0012 to the Code. The new section is effective September 1, 2011 and requires an election officer to distribute written notice of the identification that will be required for voting beginning with elections held on or after January 1, 2012, and information on obtaining an election identification certificate free of charge from the TDPS to each voter that presents a form of identification that will not be sufficient for acceptance as a voter on or after that date. The wording of this notice must be designed by the Secretary of State. Section 63.0012 of the Code expires on September 1, 2017.

SECTION 12 of the Act amends Section 63.006 of the Code. Section 63.006(a) is amended to provide that, with respect to a voter who presents the proper identification, but whose name is not on the precinct list of registered voters, the voter shall be accepted for voting if the voter also presents a registration certificate indicating the voter is registered in the precinct or is registered in a different precinct in the same county and executes an affidavit stating the voter is a resident of the precinct where offering to vote, was a resident of the precinct at the time the information on the residence address was last provided to the registrar, did not deliberately provide false information to the registrar, and will vote only once in the election.

Under amended Section 63.006(b) of the Code, after the voter is accepted, the voter's name must be entered on the registration omissions list.

Section 63.006 was added to the Code by House Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985) and amended by House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance).

SECTION 13 of the Act amends Section 63.009 of the Code to delete the procedure under which a voter without a certificate and whose name is not on the precinct list of registered voters could vote after the voter registrar confirmed the voter's eligibility and the voter completed two separate affidavits. Under the change, the voter without a certificate whose name does not appear on the precinct list would have to vote provisionally and complete the provisional voter affidavit.

Section 63.009 was added to the Code by House Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985). It was amended by House Bill 75, Chapter 728, 73rd Legislature, 1993 (precleared on September 13, 1993), House Bill 330, Chapter 1078, 75th Legislature, 1997 (precleared on October 8, 1997), House Bill 331, Chapter 1349, 75th Legislature, 1997 (precleared on September 2, 1997), and most recently by

US_00000190

Mr. T. Christian Herren, Jr.
Page 7

House Bill 1549, Chapter 1315, 78th Legislature, 2003 (precleared on November 20, 2003).

SECTION 14 of the Act amends Section 63.0101 of the Code to remove any form of identification that does not include a photograph from the forms of identification that are acceptable for voting by personal appearance at the polling place. The deleted forms of identification include a birth certificate or other documents confirming birth and admissible in a court of law, citizenship papers that do not contain the person's photograph, official mail addressed to the voter from a governmental entity, copies of a current utility bill, bank statements, paychecks, or other government documents that show the name and address of the voter. Additionally, the Act deletes the authorization for the Secretary of State to prescribe additional forms of identification.

Also deleted as acceptable identification at the polling place are driver's licenses and personal identification cards issued by other states.

Added to the list of acceptable forms of identification are a United States military identification card that contains the person's photograph and has not expired or that expired no earlier than 60 days before the date of presentation, a TDPS-issued concealed handgun license that has not expired earlier than 60 days before the date of presentation, and the TDPS-issued election identification certificate, as set out in Chapter 521A, Texas Transportation Code.

Finally, a TDPS-issued driver's license, a personal identification card or a United States passport that expired more than 60 days before the date of presentation are no longer valid forms of identification.

Section 63.0101 was added to the Code by House Bill 330, Chapter 1078, 75th Legislature, 1997 (precleared on October 8, 1997). It was amended by House Bill 331, Chapter 1349, 75th Legislature, 1997 (precleared on September 2, 1997), by House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance), and most recently by House Bill 1549, Chapter 1315, 78th Legislature, 2003 (precleared on November 20, 2003).

SECTION 15 of the Act amends Section 63.011 of the Code to add a requirement that the provisional ballot affidavit include a space for the election officer to indicate whether the voter presented a valid form of identification.

Section 63.011 was added to the Code by House Bill 1549, Chapter 1315, 78th Legislature, 2003, (precleared on November 20, 2003), and later amended by House Bill 2823, Chapter 1073, 80th Legislature, 2007 (precleared on September 24, 2007).

SECTION 16 of the Act amends Section 64.012 of the Code to increase the penalty for illegal voting in an election to a second degree felony from a third degree felony and to increase the penalty for attempted illegal voting to a state jail felony from a Class A misdemeanor.

TA_002989

US_00000191

Mr. T. Christian Herren, Jr.
Page 8

Section 64.012 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985), amended by House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance), and by House Bill 54, Chapter 393, 78th Legislature, 2003 (precleared on November 21, 2003).

SECTION 17 of the Act amends Section 65.054(b) of the Code to first clarify that a provisional ballot *shall* be accepted (rather than *may* be accepted) if the early voting ballot board makes certain determinations. Among these determinations are two that are newly-added by the Act. The first applies to situations where the voter: (1) meets the identification requirements either at the time the ballot was cast or when submitted to the county voter registrar after the election per Section 65.0541 of the Code; (2) has a religious objection to being photographed and completes an affidavit stating the objection and that the voter has consistently refused to be photographed for any governmental purpose during the period the voter has held the religious belief; or (3) completes an affidavit asserting that he or she does not have valid identification due to a natural disaster declared by the President of the United States no earlier than 45 days prior to the date the ballot was cast which caused the destruction of the voter's identification or the inability to access the voter's identification. The second permitted determination applies to a situation where the voter has not been challenged and the voter voted a provisional ballot solely because the voter did not meet the identification requirements set forth in the Act.

Section 65.054(b) was added to the Code by House Bill 1549, Chapter 1315, 78th Legislature, 2003, (precleared on November 20, 2003), and later amended by House Bill 2823, Chapter 1073, 80th Legislature, 2007 (precleared on September 24, 2007).

SECTION 18 of the Act adds new Section 65.0541 to the Code. Under this new section, a voter who casts a provisional ballot because he or she did not present an acceptable form of identification at the polling place may, not later than six days after the date of the election, present a valid form of identification to the voter registrar for examination, or execute one of the affidavits set out in Section 65.054(b)(2)(B) (religious objection) or (C) (natural disaster objection) in the presence of the registrar. The Secretary of State is charged with prescribing the procedures to implement this section.

SECTION 19 of the Act amends Section 66.0241 of the Code to make conforming changes related to SECTION 12 of the Act. These changes relate to which documents are placed in Envelope Number 4, which is given to the county voter registrar after election day to make updates to the voter registration list.

SECTION 20 of the Act adds a new Chapter 521A to the Texas Transportation Code. Section 521A.001(a) requires TDPS to issue election identification certificates to persons who state that they are obtaining the certificate to comply with the identification requirements set out in Section 63.001 of the Code because they do not have one of the acceptable forms of identification listed under Section 63.0101 of the Code. At the time the person applies for the election identification certificate, the person must be a registered voter and either present a valid registration certificate or apply for voter registration at that time.

US_00000192

Mr. T. Christian Herren, Jr.
Page 9

Section 521A.001(b) provides that TDPS may not charge a fee for issuance of the election identification certificate or a duplicate certificate.

Under Section 521A.001(c), the election identification certificate may not be used or accepted as a personal identification certificate.

Under Section 521A.001(d), an election official may not deny a person who presents an election identification certificate the ability to vote on the basis that the person failed to submit a TDPS driver's license or personal identification card.

Section 521A.001(e) requires TDPS to design the election identification certificate to be similar in form, but distinguishable by color, from the State's driver's license and personal identification certificate. TDPS may cooperate with the Secretary of State in designing the form.

Under Section 521A.001(f), TDPS may require applicants for the election identification certificate to furnish the same information required for a driver's license under Section 521.142 of the Texas Transportation Code.

Section 521A.001(g) authorizes TDPS to cancel and require surrender of an election identification certificate if TDPS determines the holder was not entitled to the certificate or provided incorrect/misleading information on the certificate application.

Finally, under Section 521A.001(h), an election identification certificate expires on a date set by TDPS, except that certificates issued to voters 70 or older do not expire.

SECTION 21 of the Act repeals Section 63.007 of the Code and Section 63.008 of the Code to conform with changes in SECTIONS 12 and 13 of the Act.

SECTION 22 of the Act requires the Secretary of State to adopt training standards and develop training materials to implement the changes to polling place procedures under the Act as soon as practicable after September 1, 2011. In addition, as soon as practicable, the county clerk is required to provide a session of training under Section 32.114 of the Code that incorporates the new Secretary of State training standards developed under Section 32.111.

SECTION 23 of the Act provides that the change in law set out in SECTION 16, increasing the penalty for illegal voting to a second degree felony and the penalty for attempted illegal voting to a state jail felony, applies only to offenses committed on or after January 1, 2012. Offenses committed before that date are covered by the law in effect at the time of the offense, and an offense is considered to have been committed before January 1, 2012 if any element of the offense was committed prior to that date.

SECTION 24 of the Act provides that, effective September 1, 2011, county voter registrars may use state funds disbursed under Chapter 19 of the Code for expenses

US_00000193

Mr. T. Christian Herren, Jr.
Page 10

connected with voter registration drives and other activities designed to increase voter registration. This section expires on January 1, 2013.

(d)    The submitting authority is the Honorable Hope Andrade, Secretary of State of Texas, in her capacity as chief elections officer of Texas. The Secretary of State's office may be reached at P.O. Box 12060, Austin, Texas 78711-2060, (512) 463-5650.

(e)    Not applicable.

(f)    Not applicable.

(g)    The authority responsible for the passage of the Act was the Texas Legislature.

(h)    The Act was adopted pursuant to the provisions of Tex. Const. art. III, § 30.

(i)    The Act was passed by the Texas Senate on January 26, 2011, and by the Texas House with amendments on March 24, 2011. The Senate adopted the conference committee report on May 9, 2011, and the House adopted the conference committee report on May 16, 2011. The Act was signed by Governor Rick Perry on May 27, 2011.

(j)    The training provisions, the notice of identification requirements in SECTION 11, and the state funds disbursement requirement in SECTION 24 take effect on September 1, 2011. The remaining provisions take effect on January 1, 2012.

(k)    The provisions of the Act have not been implemented.

(l)    These procedures will affect the residents of the State of Texas.

(m)    The reason for the change provided for in the Act is to ensure the integrity of the voting process by allowing registered voters to vote, enhancing detection of ineligible voters, and deterring ineligible voters from voting, all while providing safeguards to allow eligible voters the opportunity to have their ballots counted.

(n)    The Act will not affect members of any racial or linguistic minority differently from the way the general public is affected. The Act does not have the intent and will not have the effect of diluting the voting strength of any racial or linguistic minority.

The United States Department of Justice ("DOJ") previously precleared Georgia's 2005 law, which—like the Act—requires voters to present photo identification before voting by personal appearance. That preclearance decision is consistent with the United States Supreme Court's decision in *Crawford v. Marion County Election Board*, in which the Court rejected constitutional challenges to Indiana's photo-ID law. As former Justice John Paul Stevens acknowledged in the Supreme Court's decision upholding Indiana's law, modern life requires photo identification to transact even the most mundane business. Indeed, Justice Stevens cited with approval the following statement of the Commission on Federal Election Reform, that former President Jimmy Carter and former Secretary of State James A. Baker III jointly chaired: "Photo identification cards are

US_00000194

Mr. T. Christian Herren, Jr.
Page 11

currently needed to board a plane, enter federal buildings, and cash a check. Voting is equally important." *Crawford v. Marion County Election Bd., 553 U.S. 181, 193* (2008).

Commensurate with this observation, Texas' law requiring voters to present photo identification at the polls provides for the acceptance of commonly held documents: a state-issued driver's license or personal identification card, a United States military identification card, a United States passport, a United States citizenship certificate, or a concealed handgun license. *See* Section 13 of the Act. In fact, while there are only 12,604,131 registered voters in Texas, there are currently about 17,008,051 active Texas driver's licenses and identification cards.

However, to address concerns some raised about the Act's photo identification requirements, the Texas Legislature included several voter education provisions, as well as other safeguards for Texas voters. For example, the Act requires state and local authorities to engage in a thorough voter education and outreach program that includes the following components: inclusion of the new photo-identification requirements on new voter registration cards and renewal cards that are issued to all registered voters beginning late this year; including these requirements on the Secretary of State's web site in all languages required for election materials in Texas; including this same information on local registrars' websites in the locally requisite languages; including a physical posting of these requirements in all county clerks' offices in such languages; including a physical posting of the requirements at prominent places within polling locations, and a statewide voter education program conducted by the Secretary of State. *See* Sections 3, 4, 5 and 8 of the Act. In sum, the Act is carefully designed to ensure that every voter, regardless of race, disability, education level or economic station, is fully informed about the Act's requirements.

In addition to these voter education and outreach efforts, the Act contains other safeguards to protect the rights of eligible voters to vote and have their ballots counted. For example, the Act provides for a "cure" period whereby a voter may return after casting a provisional ballot to present the required ID if the voter failed to do so at the polls. Indeed, the Act specifically requires election workers to inform voters who do not present an adequate form of photo identification at the polling place of the procedures they may follow to have their ballots counted. *See* Sections 9 and 11 of the Act.[1] It also requires election clerks to take specific training regarding the Act's requirements so that all voters will receive like treatment when they present themselves for voting in person. *See* Sections 6 and 7 of the Act. Moreover, the Act addresses the situation in which a voter's photo identification documents include a spelling that is not identical—but is substantially similar to—the spellings on poll lists in polling locations. *See* Section 9 of the Act. Lastly, the Act creates an entirely new identification document that the State must provide free of charge to voters who attest to their inability to pay for other acceptable forms of identification. *See* Section 20 of the Act.

---

[1] Beginning in September 1, 2011, election workers must provide notice of the acceptable forms of photo identification for elections conducted after January 1, 2012 to all voters presenting identification that does not meet the requirements of the Act, as well as information on how such voters can obtain acceptable identification for free. *See* Section 11 of the Act.

US_00000195

Mr. T. Christian Herren, Jr.
Page 12

The framework Texas has created in its photo-identification law is consistent with photo-identification regimes in other states, such as Georgia's precleared 2005 law. Georgia's administratively precleared law is remarkably similar to the Act in that Georgia requires the following forms of photo-identification for in-person voting: a Georgia driver's license, an identification card issued by any Georgia state entity or the United States, a valid United States passport, an employee identification card issued by any Georgia state entity, the United States or local political entities, a United States military identification or a tribal identification card. *See* GA. Code Ann. § 21-2-417(a) (2010). Like the Act, Georgia's law includes a "cure" period (of more limited duration than the Texas cure period), free photo identification for economically-distressed voters lacking other approved forms of identification, and an extensive voter education and outreach program. *See* GA Code Ann. §§ 21-2-417(b), 418, and 419 (2010). In fact, DOJ precleared Georgia's original photo-identification law even before Georgia enacted its free ID provision and its most recent extensive voter education mandate, which Georgia added in a subsequent legislative session.

The history of Indiana's photo-identification law is also relevant to DOJ's Section 5 evaluation of the Act. Indiana enacted an in-person voting photo-identification law similar to the Act that requires voters to present photo identification that the United States or the State of Indiana issued. Such identification must include the name of the voter in a form that conforms to the voter's registration record and an expiration date. The identification must be current or have expired after the date of the most recent general election. *See* Ind. Code Ann. §§ 3-11-8-25.1 and 3-5-2-40.5 (2008). Indiana excepted those voting in person at a precinct polling place located at a state-licensed care facility where they reside and those attesting to indigent status or a religious exception to being photographed. *See* Ind. Code Ann. §§ 3-10-1-7.2(e), 3-11-8.25.1, 3-11-10-1.2, 3-11.7-5-1, and 3-11.7-5-2.5 (2008). Indiana voters not qualifying for an exception and failing to meet the photo-identification standard are allowed to vote provisionally and later provide the required identification. *See* Ind. Code Ann §§ 3-11-8-25.1, 3-11-7.5-2.5, 3-11.7-5-1, and 3-11.7-5-2.5.[2]

Various plaintiffs challenged Indiana's statutory regime on federal and state constitutional grounds and federal and state statutory grounds, claiming the law would negatively impact minority communities. *See Indiana Democratic Party v. Rokita,* 458 F.Supp.2d 775, 820-43 (S.D.Ind. 2006), *aff'd,* 472 F.3d 949 (7th Cir. 2007), *aff'd,* 553 U.S. 181 (2008). Although the claims did not include federal Voting Rights Act dilution claims, they did include allegations that the State of Indiana violated voting rights provisions of the federal Civil Rights Act of 1964. *See Rokita,* 458 F.Supp.2d at 839-42 (discussing claims under 42 U.S.C. 1971). Moreover, in considering the gamut of plaintiffs' claims, the courts at the trial and appellate levels clearly considered concerns that Indiana's law would negatively impact members of minority communities. *See, e.g., Crawford,* 553 U.S. at 187; *Crawford v. Marion County Election Bd.,* 472 F.3d 949, 952 (7th Cir. 2007); *Rokita,* 458 F.Supp.2d at 795-96.

---

[2] For a more complete explanation of Indiana's statutory scheme as well as evidence of the actual practice in Indiana elections, *see Indiana Democratic Party v. Rokita,* 458 F.Supp.2d 775, 786-87 (S.D. Ind. 2006), *aff'd,* 472 F.3d 949 (7th Cir. 2007), *aff'd,* 553 U.S. 181 (2008).

US_00000196

Mr. T. Christian Herren, Jr.
Page 13

At every level, the federal courts upheld Indiana's law. In doing so, the trial court wrote:

> Despite apocalyptic assertions of wholesale voter disenfranchisement, Plaintiffs have produced not a single piece of evidence of any identifiable registered voter who would be prevented from voting pursuant to [the Indiana photo ID law] because of his or her inability to obtain the necessary photo identification. Similarly, Plaintiffs have failed to produce any evidence of any individual, registered or unregistered, who would have to obtain photo identification in order to vote, let alone anyone who would undergo any appreciable hardship to obtain photo identification in order to be qualified to vote . . .

> Plaintiffs' inability to provide the names or otherwise identify any particular affected individuals persists despite various polls and surveys that were conducted for the specific purpose of discovering such individuals . . .

> [I]t is a testament to the law's minimal burden and narrow crafting that Plaintiffs have been unable to uncover anyone who can attest to the fact that he/she will be prevented from voting despite the concerted efforts of the political party and numerous interested groups who arguably represent the most severely affected candidates and communities.

*Rokita,* 458 F.Supp.2d at 822-23. The Seventh Circuit added that there was "something remarkable about the plaintiffs considered as a whole" as there was not a single one "who intend[ed] not to vote" because of the Indiana law. *Crawford,* 472 F.3d at 951-52.

As for the United Stated Supreme Court, Justice Stevens explained in the lead opinion for the Court, that given Indiana's provision of free photo identification, in most instances, "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Crawford,* 553 U.S. at 198. Three other justices who joined in the judgment of the Court refused to even entertain, at least for constitutional purposes, a person-by-person analysis of the burdens of a voting regulation when the regulation has non-discriminatory purpose and is generally applicable. *See id.* at 205-209. Justice Scalia wrote for those justices as follows: "The universally applicable requirements of Indiana's voter-identification law are eminently reasonable. The burden of acquiring, possessing, and showing a free photo identification is simply not severe, because it does not 'even represent a significant increase over the usual burdens of voting.' And the state's interests . . . are sufficient to maintain that minimal burden. That should end the matter." *Id.* at 209.

Analysis of voting patterns in Indiana since the implementation of that state's photo-identification law demonstrates that any fear these laws will decrease minority voter turnout is misguided. Professor Jeffrey Milyo, a professor of public affairs and economics who has been affiliated with the University of Missouri, the University of

US_00000197

Mr. T. Christian Herren, Jr.
Page 14

Kansas, and the Cato Institute specifically looked at voting patterns in Indiana before and after the implementation of photo ID requirements in a publication for the Institute of Public Policy at the University of Missouri's Harry S. Truman School of Public Affairs. He compared turnout between the 2002 and 2006 midterm elections and implemented various control factors or "sensitivity checks" to isolate the effects of Indiana's photo ID law. *See* Jeffrey Milyo, *The Effects of Photographic Identification on Voter Turnout in Indiana: A County Level Analysis*, Institute of Public Policy, University of Missouri Harry S. Truman School of Public Affairs at 1, 7 (December 2007). Professor Milyo specifically sought to identify the effects of photographic identification on "turnout in counties with a greater percentage of minority, poor, elderly, or less educated populations." *See id.* He concluded that while overall voter turnout in Indiana increased about two percentage points from 2002 to 2006, turnout in counties with greater percentages of minority or poor voters increased by even more, and the most consistent effect of photo identification in Indiana was to increase turnout in counties with a greater percentage of Democratic-leaning voters. *See id.* at 1, 7.[3]

In light of Indiana's experience, it should not be surprising that data from Georgia—the state with the other implemented photo identification requirement most similar to the Act—reflect no dampening of minority voter turnout. As the attached material from the Georgia Secretary of State's Office states, minority turnout increased after Georgia adopted its photo identification law. And it did so for both Hispanics and African Americans in both presidential and midterm election cycles (2004 to 2008 and 2006 to 2010). In sum, the evidence not only reflects no negative turnout impact on minority voters, but actually suggests that photo identification laws may have bolstered turnout.

To the extent the Department seeks more information regarding the Act, please contact:

The Honorable Aaron Peña (joint sponsor)
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910
(512) 463-0426

The Honorable Larry Gonzales (co-sponsor)
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

---

[3] Findings such as Professor Milyo's may explain why states all over the United States continue to adopt photo identification requirements for in person voting. For example, just weeks before the date of this submission, Rhode Island adopted a voter ID requirement. The law accepts photo and non-photo ID until 2014, at which point Rhode Island will accept only photo ID. *See Rhode Island Governor Signs Voter ID Bill*, Yahoo News, July 7, 2011, http://sg.news.yahoo.com/rhode-island-governor-signs-voter-id-bill-211606786.html Professor Milyo's findings may also explain why majorities of Americans across racial and other lines consistently express support for requiring photo identification to vote in person. Indeed, non-partisan independent polling conducted in Texas contemporaneously with the legislative debate regarding the Act reflected that virtually every subgroup in the survey supported photo identification for in person voting including: "whites, blacks and Hispanics; men and women; and urban, suburban and rural. Hispanics — one of the populations many fear would be disadvantaged by such a law — favor showing photo IDs by a 68 percent to 22 percent margin." Ross Ramsey, *UT/TT Poll: Texans Are Ready to Roll the Dice*, TEXAS TRIBUNE, Feb. 23, 2011, http://www.texastribune.org/texas-issues/gaminggambling/uttt-poll-texans-are-ready-to-roll-the-dice/ .

US_00000198

Mr. T. Christian Herren, Jr.
Page 15

       (512) 463-0670
       The Honorable Jose Aliseda (co-sponsor)
       Texas House of Representatives
       P.O. Box 2910
       Austin, Texas  78768-2910
       (512) 463-0645

(o)  There is no past or pending litigation concerning the subject matter of the Act.

(p)  The procedure for the adoption of the change is not subject to preclearance.

If you have any questions or need additional information, please contact Paul Miles, Staff Attorney, Elections Division, at (512) 463-5650.

Sincerely,

Ann McGeehan
Director of Elections

Enclosure

AM:PM:id

TA_002997

US_00000199

8

## In-Person Voting with Photo Identification: Analysis of Votes Cast

## How many votes have been cast in Georgia elections with the photo ID law in place?

More than 14,630,000 votes have been cast in 35 state and federal elections in Georgia since September 2007 when photo ID was first required for in-person voting. (These figures do not include all municipal and county elections, which are administered locally.)

Additionally, the 2008 elections were the largest in Georgia's history, featuring record turnout among minority voters with the photo ID requirement in place. The following figures represent voter turnout statistics among Hispanic/Latino, African-American and White voters from the 2004 and 2008 General Elections.

| Voter Demographic | 2004 Total Number of Votes Cast | 2008 Total Number of Votes Cast | Percentage Increase in Votes Cast |
|---|---|---|---|
| Hispanic/Latino | 18,000 | 43,000 | 140% |
| African-American | 834,000 | 1.2 million | 42% |
| White | 2.3 million | 2.5 million | 8% |

TA_002998

US_00000200

Chapter 123                                                    <u>S.B. No. 14</u>

1                              <u>AN ACT</u>

2   relating to requirements to vote, including presenting proof of

3   identification; providing criminal penalties.

4        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5        SECTION 1.  Section 13.002, Election Code, is amended by

6   adding Subsection (i) to read as follows:

7        <u>(i)  An applicant who wishes to receive an exemption from the</u>

8   <u>requirements of Section 63.001(b) on the basis of disability must</u>

9   <u>include with the person's application:</u>

10            <u>(1)  written documentation:</u>

11                 <u>(A)  from  the  United  States  Social  Security</u>

12   <u>Administration evidencing the applicant has been determined to have</u>

13   <u>a disability; or</u>

14                 <u>(B)  from the United States Department of Veterans</u>

15   <u>Affairs  evidencing  the  applicant  has  a  disability  rating  of  at</u>

16   <u>least 50 percent; and</u>

17            <u>(2)  a statement in a form prescribed by the secretary</u>

18   <u>of state that the applicant does not have a form of identification</u>

19   <u>acceptable under Section 63.0101.</u>

20        SECTION 2.  Section 15.001, Election Code, is amended by

21   adding Subsection (c) to read as follows:

22        <u>(c)  A  certificate  issued  to  a  voter  who  meets  the</u>

23   <u>certification  requirements  of  Section  13.002(i)  must  contain  an</u>

24   <u>indication that the voter is exempt from the requirement to present</u>

<u>1</u>

TA_002999

US_00000201

1  identification other than the registration certificate before

2  being accepted for voting.

3      SECTION 3. Effective September 1, 2011, Subchapter A,

4  Chapter 15, Election Code, is amended by adding Section 15.005 to

5  read as follows:

6      Sec. 15.005. NOTICE OF IDENTIFICATION REQUIREMENTS.

7  (a) The voter registrar of each county shall provide notice of the

8  identification requirements for voting prescribed by Chapter 63 and

9  a detailed description of those requirements with each voter

10 registration certificate issued under Section 13.142 or renewal

11 registration certificate issued under Section 14.001.

12      (b) The secretary of state shall prescribe the wording of

13 the notice to be included on the certificate under this section.

14      SECTION 4. Subsection (a), Section 15.022, Election Code,

15 is amended to read as follows:

16      (a) The registrar shall make the appropriate corrections in

17 the registration records, including, if necessary, deleting a

18 voter's name from the suspense list:

19          (1) after receipt of a notice of a change in

20 registration information under Section 15.021;

21          (2) after receipt of a voter's reply to a notice of

22 investigation given under Section 16.033;

23          (3) after receipt of a registration omissions list and

24 any affidavits executed under Section 63.006 [63.007], following an

25 election;

26          (4) after receipt of a voter's statement of residence

27 executed under Section 63.0011;

2

US_00000202

1          (5)  before the effective date of the abolishment of a

2  county election precinct or a change in its boundary;

3          (6)  after receipt of United States Postal Service

4  information indicating an address reclassification;

5          (7)  after receipt of a voter's response under Section

6  15.053; or

7          (8)  after receipt of a registration application or

8  change of address under Chapter 20.

9      SECTION 5.  Effective September 1, 2011, Subchapter A,

10  Chapter 31, Election Code, is amended by adding Section 31.012 to

11  read as follows:

12      Sec. 31.012.  VOTER IDENTIFICATION EDUCATION.  (a) The

13  secretary of state and the voter registrar of each county that

14  maintains a website shall provide notice of the identification

15  requirements for voting prescribed by Chapter 63 on each entity's

16  respective website in each language in which voter registration

17  materials are available.  The secretary of state shall prescribe

18  the wording of the notice to be included on the websites.

19      (b)  The secretary of state shall conduct a statewide effort

20  to educate voters regarding the identification requirements for

21  voting prescribed by Chapter 63.

22      (c)  The county clerk of each county shall post in a

23  prominent location at the clerk's office a physical copy of the

24  notice prescribed under Subsection (a) in each language in which

25  voter registration materials are available.

26      SECTION 6.  Effective September 1, 2011, Section 32.111,

27  Election Code, is amended by adding Subsection (c) to read as

<u>3</u>

US_00000203

1  follows:

2      (c)  The training standards adopted under Subsection (a)

3  must include provisions on the acceptance and handling of the

4  identification presented by a voter to an election officer under

5  Section 63.001.

6      SECTION 7.  Effective September 1, 2011, Subsection (a),

7  Section 32.114, Election Code, is amended to read as follows:

8      (a)  The county clerk shall provide one or more sessions of

9  training using the standardized training program and materials

10  developed and provided by the secretary of state under Section

11  32.111 for the election judges and clerks appointed to serve in

12  elections ordered by the governor or a county authority.  Each

13  election judge shall complete the training program.  Each election

14  clerk shall complete the part of the training program relating to

15  the acceptance and handling of the identification presented by a

16  voter to an election officer under Section 63.001.

17      SECTION 8.  Chapter 62, Election Code, is amended by adding

18  Section 62.016 to read as follows:

19      Sec. 62.016.  NOTICE OF ACCEPTABLE IDENTIFICATION OUTSIDE

20  POLLING PLACES. The presiding judge shall post in a prominent place

21  on the outside of each polling location a list of the acceptable

22  forms of identification.  The list must be printed using a font that

23  is at least 24-point.  The notice required under this section must

24  be posted separately from any other notice required by state or

25  federal law.

26      SECTION 9.  Section 63.001, Election Code, is amended by

27  amending Subsections (b), (c), (d), and (f) and adding Subsections

4

US_00000204

1  (g) and (h) to read as follows:

2      (b)  Except as provided by Subsection (h), on [On] offering

3  to vote, a voter must present to an election officer at the polling

4  place one form of identification described by Section 63.0101 [the

5  ~~voter's voter registration certificate to an election officer at~~

6  ~~the polling place~~].

7      (c)  On presentation of the documentation required under

8  Subsection (b) [~~a registration certificate~~], an election officer

9  shall determine whether the voter's name on the documentation

10  [~~registration certificate~~] is on the list of registered voters for

11  the precinct.  If in making a determination under this subsection

12  the election officer determines under standards adopted by the

13  secretary of state that the voter's name on the documentation is

14  substantially similar to but does not match exactly with the name on

15  the list, the voter shall be accepted for voting under Subsection

16  (d) if the voter submits an affidavit stating that the voter is the

17  person on the list of registered voters.

18      (d)  If, as determined under Subsection (c), the voter's name

19  is on the precinct list of registered voters and the voter's

20  identity can be verified from the documentation presented under

21  Subsection (b), the voter shall be accepted for voting.

22      (f)  After determining whether to accept a voter, an election

23  officer shall return the voter's documentation [~~registration~~

24  ~~certificate~~] to the voter.

25      (g)  If the requirements for identification prescribed by

26  Subsection (b) are not met, the voter may be accepted for

27  provisional voting only under Section 63.011.  For a voter who is

TA_003003

US_00000205

S.B. No. 14

1  not accepted for voting under this section, an election officer

2  shall:

3         (1)  inform the voter of the voter's right to cast a

4  provisional ballot under Section 63.011; and

5         (2)  provide the voter with written information, in a

6  form prescribed by the secretary of state, that:

7                (A)  lists the requirements for identification;

8                (B)  states  the  procedure  for  presenting

9  identification under Section 65.0541;

10               (C)  includes a map showing the location where

11 identification must be presented; and

12               (D)  includes notice that if all procedures are

13 followed and the voter is found to be eligible to vote and is voting

14 in the correct precinct, the voter's provisional ballot will be

15 accepted.

16      (h)  The  requirements  for  identification  prescribed  by

17 Subsection (b) do not apply to a voter who is disabled and presents

18 the  voter's  voter  registration  certificate  containing  the

19 indication described by Section 15.001(c) on offering to vote.

20      SECTION 10.  Subsection (a), Section 63.0011, Election Code,

21 is amended to read as follows:

22      (a)  Before a voter may be accepted for voting, an election

23 officer shall ask the voter if the voter's residence address on the

24 precinct list of registered voters is current and whether the voter

25 has changed residence within the county.  If the voter's address is

26 omitted from the precinct list under Section 18.005(c), the officer

27 shall ask the voter if the voter's residence, if [as] listed, on

6

US_00000206

S.B. No. 14

1 identification presented by the voter under Section 63.001(b) [the

2 voter's voter registration certificate] is current and whether the

3 voter has changed residence within the county.

4     SECTION 11. Effective September 1, 2011, Chapter 63,

5 Election Code, is amended by adding Section 63.0012 to read as

6 follows:

7     Sec. 63.0012. NOTICE OF IDENTIFICATION REQUIREMENTS TO

8 CERTAIN VOTERS. (a) An election officer shall distribute written

9 notice of the identification that will be required for voting

10 beginning with elections held after January 1, 2012, and

11 information on obtaining identification without a fee under Chapter

12 521A, Transportation Code, to each voter who, when offering to

13 vote, presents a form of identification that will not be sufficient

14 for acceptance as a voter under this chapter beginning with those

15 elections.

16     (b) The secretary of state shall prescribe the wording of

17 the notice and establish guidelines for distributing the notice.

18     (c) This section expires September 1, 2017.

19     SECTION 12. Section 63.006, Election Code, is amended to

20 read as follows:

21     Sec. 63.006. VOTER WITH REQUIRED DOCUMENTATION [CORRECT

22 CERTIFICATE] WHO IS NOT ON LIST. (a) A voter who, when offering to

23 vote, presents the documentation required under Section 63.001(b)

24 [a voter registration certificate indicating that the voter is

25 currently registered in the precinct in which the voter is offering

26 to vote,] but whose name is not on the precinct list of registered

27 voters[,] shall be accepted for voting if the voter also presents a

7

TA_003005

US_00000207

1 voter registration certificate indicating that the voter is

2 currently registered:

3        (1) in the precinct in which the voter is offering to

4 vote; or

5        (2) in a different precinct in the same county as the

6 precinct in which the voter is offering to vote and the voter

7 executes an affidavit stating that the voter:

8           (A) is a resident of the precinct in which the

9 voter is offering to vote or is otherwise entitled by law to vote in

10 that precinct;

11           (B) was a resident of the precinct in which the

12 voter is offering to vote at the time the information on the voter's

13 residence address was last provided to the voter registrar;

14           (C) did not deliberately provide false

15 information to secure registration in a precinct in which the voter

16 does not reside; and

17           (D) is voting only once in the election.

18    (b) After the voter is accepted, an election officer shall:

19        (1) indicate beside the voter's name on the poll list

20 that the voter was accepted under this section; and

21        (2) enter the voter's name on the registration

22 omissions list.

23    SECTION 13. Section 63.009, Election Code, is amended to

24 read as follows:

25    Sec. 63.009. VOTER WITHOUT CERTIFICATE WHO IS NOT ON LIST.

26 A [(a) Except as provided by Subsection (b), a] voter who does not

27 present a voter registration certificate when offering to vote, and

8

US_00000208

S.B. No. 14

1  whose name is not on the list of registered voters for the precinct
2  in which the voter is offering to vote, shall be accepted for
3  provisional voting if the voter executes an affidavit in accordance
4  with Section 63.011.

5  ~~[(b)  If an election officer can determine from the voter~~
6  ~~registrar that the person is a registered voter of the county and~~
7  ~~the person presents proof of identification, the affidavits~~
8  ~~required by Sections 63.007 and 63.008 are substituted for the~~
9  ~~affidavit required by Section 63.011 in complying with that~~
10  ~~section.  After the voter is accepted under this subsection, an~~
11  ~~election officer shall also indicate beside the voter's name on the~~
12  ~~poll list that the voter was accepted under this section.]~~

13  SECTION 14.  Section 63.0101, Election Code, is amended to
14  read as follows:

15  Sec. 63.0101.  DOCUMENTATION OF PROOF OF IDENTIFICATION.
16  The following documentation is an acceptable form [~~as proof~~] of
17  photo identification under this chapter:

18  (1) a driver's license, election identification
19  certificate, or personal identification card issued to the person
20  by the Department of Public Safety that has not [~~or a similar~~
21  ~~document issued to the person by an agency of another state,~~
22  ~~regardless of whether the license or card has~~] expired or that
23  expired no earlier than 60 days before the date of presentation;

24  (2) a United States military identification card that
25  contains the person's photograph that has not expired or that
26  expired no earlier than 60 days before the date of presentation
27  [~~form of identification containing the person's photograph that~~

9

TA_003007

US_00000209

S.B. No. 14

1  ~~establishes the person's identity~~];

2  (3)  a [~~birth certificate or other document confirming~~

3  ~~birth that is admissible in a court of law and establishes the~~

4  ~~person's identity;~~

5  [~~(4)~~] United States citizenship certificate [~~papers~~]

6  issued to the person that contains the person's photograph;

7  (4) [~~(5)~~]  a United States passport issued to the

8  person that has not expired or that expired no earlier than 60 days

9  before the date of presentation; or

10  (5)  a license to carry a concealed handgun issued to

11  the person by the Department of Public Safety that has not expired

12  or that expired no earlier than 60 days before the date of

13  presentation

14  [~~(6)  official mail addressed to the person by name~~

15  ~~from a governmental entity;~~

16  [~~(7)  a copy of a current utility bill, bank statement,~~

17  ~~government check, paycheck, or other government document that shows~~

18  ~~the name and address of the voter; or~~

19  [~~(8)  any other form of identification prescribed by~~

20  ~~the secretary of state~~].

21  SECTION 15.  Section 63.011, Election Code, is amended by

22  amending Subsections (a) and (b) and adding Subsection (b-1) to

23  read as follows:

24  (a)  A person to whom Section 63.001(g) [~~63.008(b)~~] or 63.009

25  [~~63.009(a)~~] applies may cast a provisional ballot if the person

26  executes an affidavit stating that the person:

27  (1)  is a registered voter in the precinct in which the

10

TA_003008

US_00000210

S.B. No. 14

1  person seeks to vote; and

2          (2)  is eligible to vote in the election.

3      (b)  A form for an affidavit required by this section must

4  [shall] be printed on an envelope in which the provisional ballot

5  voted by the person may be placed and must include:

6          (1)  a space for entering the identification number of

7  the provisional ballot voted by the person; and

8          (2)  a space for an election officer to indicate

9  whether the person presented a form of identification described by

10  Section 63.0101.

11      (b-1)  The affidavit form may include space for disclosure of

12  any necessary information to enable the person to register to vote

13  under Chapter 13.  The secretary of state shall prescribe the form

14  of the affidavit under this section.

15          SECTION 16.  Subsection (b), Section 64.012, Election Code,

16  is amended to read as follows:

17      (b)  An offense under this section is a felony of the second

18  [third] degree unless the person is convicted of an attempt.  In

19  that case, the offense is a state jail felony [Class A misdemeanor].

20          SECTION 17.  Subsection (b), Section 65.054, Election Code,

21  is amended to read as follows:

22      (b)  A provisional ballot shall [may] be accepted [only] if

23  the board determines that:

24          (1)  [,] from the information in the affidavit or

25  contained in public records, the person is eligible to vote in the

26  election and has not previously voted in that election;

27          (2)  the person:

11

TA_003009

US_00000211

S.B. No. 14

1    (A) meets the identification requirements of
2    Section 63.001(b) at the time the ballot was cast or in the period
3    prescribed under Section 65.0541;
4        (B) notwithstanding Chapter 110, Civil Practice
5    and Remedies Code, executes an affidavit under penalty of perjury
6    that states the voter has a religious objection to being
7    photographed and the voter has consistently refused to be
8    photographed for any governmental purpose from the time the voter
9    has held this belief; or
10       (C) executes an affidavit under penalty of
11   perjury that states the voter does not have any identification
12   meeting the requirements of Section 63.001(b) as a result of a
13   natural disaster that was declared by the president of the United
14   States or the governor, occurred not earlier than 45 days before the
15   date the ballot was cast, and caused the destruction of or inability
16   to access the voter's identification; and
17       (3) the voter has not been challenged and voted a
18   provisional ballot solely because the voter did not meet the
19   requirements for identification prescribed by Section 63.001(b).
20       SECTION 18.  Subchapter B, Chapter 65, Election Code, is
21   amended by adding Section 65.0541 to read as follows:
22       Sec. 65.0541.  PRESENTATION OF IDENTIFICATION FOR CERTAIN
23   PROVISIONAL BALLOTS.  (a)  A voter who is accepted for provisional
24   voting under Section 63.011 because the voter does not meet the
25   identification requirements of Section 63.001(b) may, not later
26   than the sixth day after the date of the election:
27       (1) present a form of identification described by

12

TA_003010

US_00000212

S.B. No. 14

1   Section 63.0101 to the voter registrar for examination; or

2           (2)   execute   an   affidavit   described   by   Section

3   65.054(b)(2)(B) or (C) in the presence of the voter registrar.

4           (b)   The secretary of state shall prescribe procedures as

5   necessary to implement this section.

6           SECTION 19.   Section 66.0241, Election Code, is amended to

7   read as follows:

8           Sec. 66.0241.   CONTENTS OF ENVELOPE NO. 4.   Envelope no. 4

9   must contain:

10                  (1)   the precinct list of registered voters;

11                  (2)   the registration correction list;

12                  (3)   the registration omissions list;

13                  (4)   any statements of residence executed under Section

14   63.0011; and

15                  (5)   any   affidavits   executed   under   Section   63.006

16   [63.007] or 63.011.

17          SECTION 20.   Subtitle B, Title 7, Transportation Code, is

18   amended by adding Chapter 521A to read as follows:

19          CHAPTER 521A.  ELECTION IDENTIFICATION CERTIFICATE

20          Sec. 521A.001.   ELECTION   IDENTIFICATION   CERTIFICATE.

21   (a)   The   department   shall   issue   an   election   identification

22   certificate to a person who states that the person is obtaining the

23   certificate   for   the   purpose   of   satisfying   Section   63.001(b),

24   Election Code, and does not have another form of identification

25   described by Section 63.0101, Election Code, and:

26                  (1)   who   is   a   registered   voter   in   this   state   and

27   presents a valid voter registration certificate; or

13

US_00000213

S.B. No. 14

1      (2)  who is eligible for registration under Section

2  13.001, Election Code, and submits a registration application to

3  the department.

4      (b)  The department may not collect a fee for an election

5  identification certificate or a duplicate election identification

6  certificate issued under this section.

7      (c)  An election identification certificate may not be used

8  or accepted as a personal identification certificate.

9      (d)  An election officer may not deny the holder of an

10  election identification certificate the ability to vote because the

11  holder has an election identification certificate rather than a

12  driver's license or personal identification certificate issued

13  under this subtitle.

14      (e)  An election identification certificate must be similar

15  in form to, but distinguishable in color from, a driver's license

16  and a personal identification certificate.  The department may

17  cooperate with the secretary of state in developing the form and

18  appearance of an election identification certificate.

19      (f)  The department may require each applicant for an

20  original or renewal election identification certificate to furnish

21  to the department the information required by Section 521.142.

22      (g)  The department may cancel and require surrender of an

23  election identification certificate after determining that the

24  holder was not entitled to the certificate or gave incorrect or

25  incomplete information in the application for the certificate.

26      (h)  A certificate expires on a date specified by the

27  department, except that a certificate issued to a person 70 years of

14

US_00000214

1 age or older does not expire.

2       SECTION 21.  Sections 63.007 and 63.008, Election Code, are

3 repealed.

4       SECTION 22.  Effective September 1, 2011:

5       (1) as soon as practicable, the secretary of state

6 shall adopt the training standards and develop the training

7 materials required to implement the change in law made by this Act

8 to Section 32.111, Election Code; and

9       (2) as soon as practicable, the county clerk of each

10 county shall provide a session of training under Section 32.114,

11 Election Code, using the standards adopted and materials developed

12 to implement the change in law made by this Act to Section 32.111,

13 Election Code.

14       SECTION 23.  The change in law made by this Act in amending

15 Subsection (b), Section 64.012, Election Code, applies only to an

16 offense committed on or after January 1, 2012. An offense committed

17 before January 1, 2012, is covered by the law in effect when the

18 offense was committed, and the former law is continued in effect for

19 that purpose. For purposes of this section, an offense is committed

20 before January 1, 2012, if any element of the offense occurs before

21 that date.

22       SECTION 24.  Effective September 1, 2011, state funds

23 disbursed under Chapter 19, Election Code, for the purpose of

24 defraying expenses of the voter registrar's office in connection

25 with voter registration may also be used for additional expenses

26 related to coordinating voter registration drives or other

27 activities designed to expand voter registration.  This section

US_00000215

S.B. No. 14

1    expires January 1, 2013.

2        SECTION 25.  Every  provision  in  this  Act  and  every

3    application of the provisions in this Act are severable from each

4    other.   If any application of any provision in this Act to any

5    person or group of persons or circumstances is found by a court to

6    be invalid, the remainder of this Act and the application of the

7    Act's provisions to all other persons and circumstances may not be

8    affected.   All constitutionally valid applications of this Act

9    shall be severed from any applications that a court finds to be

10   invalid, leaving the valid applications in force, because it is the

11   legislature's intent and priority that the valid applications be

12   allowed to stand alone. Even if a reviewing court finds a provision

13   of this Act invalid in a large or substantial fraction of relevant

14   cases, the remaining valid applications shall be severed and

15   allowed to remain in force.

16       SECTION 26.  Except as otherwise provided by this Act, this

17   Act takes effect January 1, 2012.

16

US_00000216

S.B. No. 14

_____          _____
President of the Senate                          Speaker of the House

    I hereby certify that S.B. No. 14 passed the Senate on January 26, 2011, by the following vote: Yeas 19, Nays 11; April 5, 2011, Senate refused to concur in House amendments and requested appointment of Conference Committee; April 11, 2011, House granted request of the Senate; May 9, 2011, Senate adopted Conference Committee Report by the following vote: Yeas 19, Nays 12._____

_____
Secretary of the Senate

    I hereby certify that S.B. No. 14 passed the House, with amendments, on March 24, 2011, by the following vote: Yeas 101, Nays 48, one present not voting; April 11, 2011, House granted request of the Senate for appointment of Conference Committee; May 16, 2011, House adopted Conference Committee Report by the following vote: Yeas 98, Nays 46, one present not voting._____

_____
Chief Clerk of the House

Approved:

27 MAY '11
_____
Date

Rick Perry
_____
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
1:00 PM  O'CLOCK

MAY 27 2011
_____
Secretary of State

17

TA_003015

US_00000217

**From:** Carrothers, Matthew [mcarrothers@sos.ga.gov]
**Sent:** Thursday, March 03, 2011 10:04 AM
**To:** Colby Beuck
**Cc:** Russo, Vincent
**Subject:** Request for additional statistics

**Follow Up Flag:** Follow up
**Flag Status:** Flagged
Colby,

Secretary Kemp's presentation on Georgia's photo ID requirement included a comparison of voter turnout by demographics for the 2004 and 2008 general elections, which were both presidential election years. A member of the Select Committee requested similar statistics for the 2006 and 2010 general elections, which Secretary Kemp did not have at the time.

Below are the additional figures requested by the Texas House of Representatives Select Committee on Voter Identification and Voter Fraud. They represent voter turnout by demographics for the 2006 and 2010 general elections, plus the percent increase over this time period. Please make these additional statistics available to the Select Committee, and please let Vince or I know if you or the Committee would like any additional materials.


2006 General Election
11,601 Hispanic votes
513,699 black votes
1,556,216 white votes

2010 General Election
19,320 Hispanic votes
740,997 black votes
1,738,521 white votes

Percent increase in turnout from 2006 to 2010
Hispanic voters: 66.5%
Black voters: 44.2%
White voters: 11.7%
---------------------------------------------

Thanks,
Matt

Matt Carrothers
Director of Media Relations
Office of Secretary of State Brian P. Kemp
214 State Capitol
Atlanta, GA 30334
Office: 404-656-4269
Fax: 404-656-0513
mcarrothers@sos.ga.gov

US_00000218

Date: 07/26/11      STAPS E-Submission Report      Page: 1

E-Submission No: 3132

---

| | | **Submission Number: 2011 2775** |
|---|---|---|
| **Name:** | Hope Andrade | **Title:** Secretary of State |
| **Address:** | P.O. Box 12060 | |
| | Austin      TX   78711· | **Created Date:** 25/07/11 |
| **Phone:** | 800-252-8683 | **Email:** elections@sos.state.tx.us |
| **Authority:** | State of Texas/Secretary of State | **Other:** |
| | | **State:** |
| **County:** | | |
| **Jurisdiction:** | | |

## Attached Files Below:

\\crt-nwb-img01\evs_files$\3132\SB 14 Letter.pdf

\\crt-nwb-img01\evs_files$\3132\SB14.pdf

\\crt-nwb-img01\evs_files$\3132\SB 14GeorgiaRequest for additional statistics.pdf

\\crt-nwb-img01\evs_files$\3132\SB 14 SOS GA Testimony.pdf

## Changes Description

**A copy of any ordinance, enactment, order, or regulation embodying a change affecting voting.**

Section a:) A copy of the Act is enclosed. An electronic copy of the Act is also available at http://www.sos.state.tx.us/statdoc/bills/index.shtml

**A copy of any ordinance, enactment, order, or regulation embodying the voting practice that is proposed to be repealed, amended, or otherwise changed.**

Section b:) A copy of the Act is enclosed. An electronic copy of the Act is also available at http://www.sos.state.tx.us/statdoc/bills/index.shtml

**A clear statement of the change explaining the difference between the submitted change and the prior law or practice, or explanatory materials adequate to disclose to the Attorney General the difference between the prior and proposed situation with respect to voting.**

Section c:) The Act amends the Texas Election Code (the "Code") and the Texas Transportation Code to require voters to present a current form of photo identification to qualify to vote in person at the polling place in elections held in the State of Texas. The Act creates exemptions for certain voters with disabilities, voters whose religious beliefs prevent them from being photographed for identification, and voters who have lost their identification in natural disasters. A voter, who does not present a current form of photo identification when appearing to vote at the polling

US_00000219

E-Submission No: 3132

## Changes Description

place and who does not fall within the scope of the Act's exemptions, may elect to vote provisionally. A voter who casts a provisional ballot under these circumstances may then take advantage of the Act's post-election cure procedures. The Act provides that a voter who presents his or her photo identification or executes one of the affidavits set out in Section 65.054(b)(2)(B) (religious objection) or (C) (natural disaster objection) in the presence of the registrar (discussed below) within 6 days after the election shall have his or her provisional ballot counted. Moreover, the Act creates a new election identification certificate and provides that the Texas Department of Public Safety ("TDPS") will make these certificates available, free of charge, to voters who do not have access to any other acceptable form of photo identification.

The Act requires state and local authorities to engage in a thorough voter education and outreach program that includes the following components: including the new photo-identification requirements on voter registration cards; including these requirements on the Secretary of State's web site in multiple languages; including this same information on local county voter registrars' websites; including a physical posting of these requirements in all county clerks' offices; including a physical posting of the requirements at prominent places within polling locations, and including a statewide voter education program conducted by the Secretary of State.

The Act requires the Secretary of State to adopt training standards and develop training materials to implement the changes to polling place procedures contained in the Act as soon as practicable after September 1, 2011. In addition, as soon as practicable, the county clerk is required to provide a training session under Section 32.114 of the Code that incorporates the new Secretary of State training standards to be adopted under Section 32.111 of the Code.

Finally, the penalty for illegal voting is raised from a state jail felony to a second degree felony. The criminal penalty for attempted illegal voting is increased from a Class A misdemeanor to a state jail felony.

The provisions of the Act regarding the need to present a current form of photo identification when voting by personal appearance - including the new cure provisions - go into effect for elections held on or after January 1, 2012. The increased criminal penalties contained in the Act apply only to offenses committed on or after January 1, 2012.

SECTION-BY-SECTION REVIEW

SECTION 1 of the Act amends Section 13.002 of the Code by adding new subsection (i). New subsection (i) provides that a voter registration

US_00000220

E-Submission No: 3132

**Changes Description**

applicant who wishes to be exempted on the basis of disability from the identification requirements of Section 63.001(b) of the Code (which are discussed in more detail below) must present, along with his or her application,: (1) written documentation either from the Social Security Administration stating that the applicant has been determined to have a disability or from the Department of Veterans Affairs demonstrating that the applicant has a disability rating of at least 50 percent and (2) a statement that the applicant does not possess one of the acceptable forms of identification described under Section 63.0101 of the Code (as amended by the Act).

Section 13.002 was added to t ...

**Identification of the person or body responsible for making the change and the mode of decision (e.g. act of state legislature, ordinance of city council, administrative decision by the registrar).**

Section d:) The authority responsible for the passage of the Act was the Texas Legislature.

**A statement identifying the statutory or other authority under which the jurisdiction undertakes the change and a description of the procedures the jurisdiction was required to follow in deciding to undertake the change.**

Section e:) The Act was adopted pursuant to the provisions of Tex. Const. art. III, § 30.

The Act was passed by the Texas Senate on January 26, 2011, and by the Texas House with amendments on March 24, 2011. The Senate adopted the conference committee report on May 9, 2011, and the House adopted the conference committee report on May 16, 2011. The Act was signed by Governor Rick Perry on May 27, 2011.

**A statement that the change has not yet been enforced or administrated, or an explanation of why such a statement cannot be made.**

Section f:) The training provisions, the notice of identification requirements in SECTION 11, and the state funds disbursement requirement in SECTION 24 take effect on September 1, 2011. The remaining provisions take effect on January 1, 2012.

US_00000221

E-Submission No: 3132

**Changes Description**

**Where the change will affect less than the entire jurisdiction, an explanation of the scope of the change.**

Section g:) These procedures will affect the residents of the State of Texas.

**A statement of the reasons for the change.**

Section h:) The provisions of the Act have not been implemented.

**A statement of the anticipated effect of the change on members of racial or language minority groups. In addition, per 51.28 h, include the names, addresses, daytime telephone numbers, and organizational affiliation, if any of racial and language minority group members residing in the jurisdiction who can be expected to be familiar with the proposed change or who have been active in the political process.**

Section i:) The Act will not affect members of any racial or linguistic minority differently from the way the general public is affected. The Act does not have the intent and will not have the effect of diluting the voting strength of any racial or linguistic minority.

The United States Department of Justice ("DOJ") previously precleared Georgia's 2005 law, which—like the Act—requires voters to present photo identification before voting by personal appearance. That preclearance decision is consistent with the United States Supreme Court's decision in Crawford v. Marion County Election Board, in which the Court rejected constitutional challenges to Indiana's photo-ID law. As former Justice John Paul Stevens acknowledged in the Supreme Court's decision upholding Indiana's law, modern life requires photo identification to transact even the most mundane business. Indeed, Justice Stevens cited with approval the following statement of the Commission on Federal Election Reform, that former President Jimmy Carter and former Secretary of State James A. Baker III jointly chaired: "Photo identification cards are currently needed to board a plane, enter federal buildings, and cash a check. Voting is equally important." Crawford v. Marion County Election Bd., 553 U.S. 181, 193 (2008).

Commensurate with this observation, Texas' law requiring voters to present

US_00000222

E-Submission No: 3132

**Changes Description**

photo identification at the polls provides for the acceptance of commonly
held documents: a state-issued driver's license or personal identification
card, a United States military identification card, a United States
passport, a United States citizenship certificate, or a concealed handgun
license.  See Section 13 of the Act.  In fact, while there are only
12,604,131 registered voters in Texas, there are currently about 17,008,051
active Texas driver's licenses and identification cards.

However, to address concerns some raised about the Act's photo
identification requirements, the Texas Legislature included several voter
education provisions, as well as other safeguards for Texas voters.  For
example, the Act requires state and local authorities to engage in a
thorough voter education and outreach program that includes the following
components: inclusion of the new photo-identification requirements on new
voter registration cards and renewal cards that are issued to all
registered voters beginning late this year; including these requirements on
the Secretary of State's web site in all languages required for election
materials in Texas; including this same information on local registrars'
websites in the locally requisite languages; including a physical posting
of these requirements in all  county clerks' offices in such languages;
including a physical posting of the requirements at prominent places within
polling locations, and a statewide voter education program conducted by the
Secretary of State.  See Sections 3, 4, 5 and 8 of the Act.  In sum, the
Act is carefully designed to ensure that every voter, regardless of race,
disability, education level or economic station, is fully informed about
the Act's requirements.

In addition to these voter education and outreach efforts, the Act contains
other safeguards to protect the rights of eligible voters to vote and have
their ballots counted.  For example, the Act provides for a "cure" period
whereby a voter may return after casting a provisional ballot to present
the required ID if the voter failed to do so at the polls.  Indeed, the Act
specifically requires election workers to inform voters who do not present
an adequate form of photo identification at the polling place of the
procedures they may follow to have their ballots counted.  See Sections 9
and 11 of the Act.   It also requires election clerks to take specific
training regarding the Act's requirements so that all voters will receive
like treatment when they present themselves for voting in person.  See
Sections 6 and 7 of the Act.  Moreover, the Act addresse ...

US_00000223

E-Submission No: 3132

**Changes Description**

**A statement identifying any past or pending litigation concerning the change or related voting practice.**

Section j:) There is no past or pending litigation concerning the subject matter of the Act.

**For redistricting and annexations: the items listed under ?51.28(a)(1) and (b)(1); for annexations only: the items listed under ?51.28(c)(3).**

Section k:) N/A

**Other information that the Attorney General determines is required for an evaluation of the purpose or effect of the change. Such information may include items listed in ?51.28 and is most likely to be needed with respect to redistrictings, annexations, and other complex changes. In the interest of time such information should be furnished with the initial submission relating to voting changes of this type. When such information is required, but not provided, the Attorney General shall notify the submitting authority in the manner provided in ?51.37.**

Section l:) If you have any questions or need additional information, please contact Paul Miles, Staff Attorney, Elections Division, at (512) 463-5650.

US_00000224



## The State of Texas

Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

**Hope Andrade**
**Secretary of State**

July 25, 2011


Mr. T. Christian Herren, Jr.
Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

> RE: Submission under Section 5, Voting Rights Act, of Senate Bill 14, Chapter 123, 82nd Legislature, 2011.

Dear Mr. Herren:

The Legislature of the State of Texas has enacted Senate Bill 14, Chapter 123, 82nd Legislature, 2011 (the "Act"), relating to requirements to vote, including presenting proof of identification. As described in more detail below and with some exceptions, the Act requires a voter to present a current or recently-expired form of photo identification in order to vote in person at a polling place. The Act also requires the Office of the Secretary of State and local election officials to develop voter education programs, create training programs for polling place officials, and revise election forms and postings beginning September 1, 2011.

Because of the upcoming statutory deadlines contained in the Act, we are hereby requesting expedited consideration of this submission under 28 C.F.R. § 51.34. An expedited response from your office will allow the state to promptly implement comprehensive education of voters and local election officials; therefore, we would appreciate a decision from your office by August 20, 2011.

Pursuant to the requirements of 28 C.F.R. § 51.27, the following information is submitted with respect to the Act:

(a) & (b)   A copy of the Act is enclosed. An electronic copy of the Act is also available at http://www.sos.state.tx.us/statdoc/bills/index.shtml.

(c)   The Act amends the Texas Election Code (the "Code") and the Texas Transportation Code to require voters to present a current form of photo identification to qualify to vote in person at the polling place in elections held in the State of Texas. The Act creates exemptions for certain voters with disabilities, voters whose religious beliefs prevent

US_00000225

Mr. T. Christian Herren, Jr.
Page 2

them from being photographed for identification, and voters who have lost their identification in natural disasters. A voter, who does not present a current form of photo identification when appearing to vote at the polling place and who does not fall within the scope of the Act's exemptions, may elect to vote provisionally. A voter who casts a provisional ballot under these circumstances may then take advantage of the Act's post-election cure procedures. The Act provides that a voter who presents his or her photo identification or executes one of the affidavits set out in Section 65.054(b)(2)(B) (religious objection) or (C) (natural disaster objection) in the presence of the registrar (discussed below) within 6 days after the election shall have his or her provisional ballot counted. Moreover, the Act creates a new election identification certificate and provides that the Texas Department of Public Safety ("TDPS") will make these certificates available, free of charge, to voters who do not have access to any other acceptable form of photo identification.

The Act requires state and local authorities to engage in a thorough voter education and outreach program that includes the following components: including the new photo-identification requirements on voter registration cards; including these requirements on the Secretary of State's web site in multiple languages; including this same information on local county voter registrars' websites; including a physical posting of these requirements in all county clerks' offices; including a physical posting of the requirements at prominent places within polling locations, and including a statewide voter education program conducted by the Secretary of State.

The Act requires the Secretary of State to adopt training standards and develop training materials to implement the changes to polling place procedures contained in the Act as soon as practicable after September 1, 2011. In addition, as soon as practicable, the county clerk is required to provide a training session under Section 32.114 of the Code that incorporates the new Secretary of State training standards to be adopted under Section 32.111 of the Code.

Finally, the penalty for illegal voting is raised from a state jail felony to a second degree felony. The criminal penalty for attempted illegal voting is increased from a Class A misdemeanor to a state jail felony.

The provisions of the Act regarding the need to present a current form of photo identification when voting by personal appearance – including the new cure provisions – go into effect for elections held on or after January 1, 2012. The increased criminal penalties contained in the Act apply only to offenses committed on or after January 1, 2012.

SECTION-BY-SECTION REVIEW

SECTION 1 of the Act amends Section 13.002 of the Code by adding new subsection (i). New subsection (i) provides that a voter registration applicant who wishes to be exempted on the basis of disability from the identification requirements of Section 63.001(b) of the Code (which are discussed in more detail below) must present, along with his or her application,: (1) written documentation either from the Social Security

US_00000226

Mr. T. Christian Herren, Jr.
Page 3

Administration stating that the applicant has been determined to have a disability or from the Department of Veterans Affairs demonstrating that the applicant has a disability rating of at least 50 percent and (2) a statement that the applicant does not possess one of the acceptable forms of identification described under Section 63.0101 of the Code (as amended by the Act).

Section 13.002 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985), and amended by Senate Bill 1441, Chapter 436, 70th Legislature, 1987 (precleared on August 31, 1987), House Bill 612, Chapter 472, 70th Legislature, 1987 (precleared on August 31, 1987), House Bill 613, Chapter 920, 70th Legislature, 1987 (precleared on August 31, 1987), Senate Bill 221, Chapter 2, 71st Legislature, 1989 (a non-substantive change not subject to preclearance), House Bill 74, Chapter 916, 73rd Legislature, 1993 (precleared on September 13, 1993), House Bill 1914, Chapter 390, 74th Legislature, 1995 (precleared on October 13, 1995). House Bill 127, Chapter 797, 74th Legislature, 1995 (precleared on January 16, 1997), Senate Bill 500, Chapter 454, 75th Legislature, 1997 (precleared on August 11, 1997), House Bill 1549, Chapter 1315, 78th Legislature, 2003 (precleared on November 20, 2003), House Bill 1268, Chapter 1049, 79th Legislature, 2005 (precleared on October 21, 2005), House Bill 417, Chapter 614, 80th Legislature, 2007 (precleared on November 16, 2007), Senate Bill 74, Chapter 1295, 80th Legislature, 2007 (precleared on September 27, 2007), Senate Bill 1969, Chapter 87, 81st Legislature, 2009 (a non-substantive change not subject to preclearance), House Bill 536, Chapter 91, 81st Legislature, 2009 (precleared on July 15, 2009), and most recently House Bill 1448, Chapter 632, 81st Legislature, 2009 (precleared on August 5, 2009).

SECTION 2 of the Act amends Section 15.001 of the Code by adding new subsection (c) to provide that the registration certificate issued to a voter who meets the disability exemption requirements of new Section 13.002(i) of the Code (discussed above) must indicate that the voter is exempt from the requirement to present identification other than the registration certificate before being accepted for voting.

Section 15.001 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985), and amended in Senate Bill 1441, Chapter 436, 70th Legislature, 1987 (precleared on August 31, 1987), House Bill 1914, Chapter 390, 74th Legislature, 1995 (precleared on October 13, 1995), House Bill 127, Chapter 797, 74th Legislature, 1995 (precleared on January 16, 1997), and Senate Bill 932, Chapter 532, 80th Legislature 2007 (precleared on November 19, 2007).

SECTION 3 of the Act adds new Section 15.005 to the Code to require the voter registrar of each county to provide notice of the identification requirements for voting (as amended by the Act) and a detailed description of those requirements with each voter registration certificate and registration certificate renewal mailed from the county voter registrar. The Secretary of State is required to provide the wording of the notice.

SECTION 4 of the Act makes a conforming amendment to Section 15.022 of the Code to require the voter registrar to correct a registration on receipt of the registration omissions

US_00000227

Mr. T. Christian Herren, Jr.
Page 4

list or an affidavit submitted under Section 63.006 from a voter swearing that he or she
has been placed in the incorrect precinct by the voter registrar's office.

Section 15.022 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985), and amended by Senate Bill 280, Chapter 54,
Chapter 54, 1987 (precleared on August 24, 1987), House Bill 74, Chapter 916, 73rd
Legislature, 1993 (precleared on September 11, 1993), and most recently House Bill 127,
Chapter 797, 74th Legislature 1995 (precleared on January 16, 1997).

SECTION 5 of the Act adds new Section 31.012 to the Code. According to this new
section, as of September 1, 2011, the Secretary of State and each county voter registrar
that maintains an Internet website must provide notice of the identification requirements
for voting (as amended by the Act) on their respective websites. The information must be
provided in each language in which voter registration materials are available in the state
and county. The Secretary of State must provide the wording of the notice. New section
31.012(b) requires the Secretary of State to conduct a statewide education effort
regarding the identification requirements for voting (as amended by the Act). New
section 31.012(c) requires each county clerk to post in a prominent location a physical
copy of the notice that is required to be posted on the county's or Secretary of State's
Internet website (discussed above). This notice must be provided in each language in
which voter registration materials are available in the county.

SECTION 6 of the Act is effective September 1, 2011 and adds Section 32.111(c) to the
Code. This new subsection requires the Secretary of State to include requirements for the
acceptance and handling of identification presented by a voter to an election officer in its
poll worker training materials.

Section 32.111 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985) and amended in House Bill 1695, Chapter 1316,
78th Legislature, 2003 (precleared on November 20, 2003).

SECTION 7 of the Act is effective September 1, 2011 and amends Section 32.114(a) of
the Code to require that each election clerk must complete the part of the training
program described in SECTION 6 (described above).

Section 32.114 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature,
1985 (precleared on August 16, 1985). It was amended by House Bill 74, Chapter 916,
73rd Legislature, 1993 (precleared on September 11, 1993), House Bill 1603, Chapter
864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance) and
House Bill 1695, Chapter 1316, 78th Legislature, 2003 (precleared on November 20,
2003).

SECTION 8 of the Act adds new Section 62.016 to the Code. The new section requires
the presiding judge of each polling place to post in a prominent place on the outside of
each polling location a list of the acceptable forms of identification for voting by personal
appearance. The list must be in 24-point font and posted separately from other required
notices.

US_00000228

Mr. T. Christian Herren, Jr.
Page 5

SECTION 9 of the Act amends several subsections of Section 63.001 of the Code.

Amended Section 63.001(b) of the Code to require a voter to present one form of identification as set out in Section 63.0101 of the Code to an election official at the polling place in order to qualify to vote. Prior law allowed a voter to present a current voter registration certificate.

Amended Section 63.001(c) of the Code to provide that, after the election officer receives from the voter the identification described by Section 63.0101 of the Code (see above), the election officer shall review the identification to determine whether the voter's name is on the precinct list of registered voters. If the election officer determines (using standards adopted by the Secretary of State) that the voter's name on the identification is substantially similar to but does not match exactly the name on the list, then the voter will be accepted for voting if the voter submits an affidavit stating that the voter is the person on the list of registered voters.

Amended Section 63.001(d) of the Code to provide that if, as determined by the procedures set forth in Section 63.001(c) (see above), the voter's name is on the precinct list and the voter's identity is verified from the documentation provided, the voter shall be accepted for voting.

Subsection 63.001(f) is amended to make a conforming change.

Section 63.001(g) of the Code is added to provide that a voter who does not meet the identification requirements of this section may vote provisionally. For such a voter, this new subsection requires that an election officer must inform the voter of his or her eligibility to cast a provisional ballot. The election officer must also provide the voter with written information (in a form prescribed by the Secretary of State) that lists the requirements for identification, states the procedures for presenting identification, includes a map showing the location where the identification may be presented, and includes a notice that if the post-election procedure is followed, and the voter is found to have been eligible to vote at the precinct, the provisional ballot will be accepted.

Section 63.001(h) of the Code is added to provide that a voter with disabilities who presents his or her voter registration certificate, containing the indication described by Section 15.001(c) (see above), on offering to vote is exempt from the identification procedures described by this section.

Section 63.001 was added to the Code by House Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985) and amended by House Bill 127, Chapter 797, 74th Legislature, 1995 (precleared on January 16, 1997) and most recently House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance).

SECTION 10 of the Act amends Section 63.0011(a) of the Code to provide that a federal or state judge or the spouse of a federal or state judge whose residence address has been

TA_003027

US_00000229

Mr. T. Christian Herren, Jr.
Page 6

omitted from the precinct list of registered voters under Section 18.005(c) of the Code shall be asked by the polling place election official whether the residence address on their identification is current and whether the voter has changed residence in the county.

Section 63.0011 was added to the Code by House Bill 127, Chapter 797, 74th Legislature, 1995 (precleared on January 16, 1997). It was later amended by House Bill 41, Chapter 594, 80th Legislature, 2007 (precleared on October 2, 2007) and by House Bill 3069, Chapter 927, 81st Legislature, 2009 (precleared on September 9, 2009).

SECTION 11 of the Act adds new Section 63.0012 to the Code. The new section is effective September 1, 2011 and requires an election officer to distribute written notice of the identification that will be required for voting beginning with elections held on or after January 1, 2012, and information on obtaining an election identification certificate free of charge from the TDPS to each voter that presents a form of identification that will not be sufficient for acceptance as a voter on or after that date. The wording of this notice must be designed by the Secretary of State. Section 63.0012 of the Code expires on September 1, 2017.

SECTION 12 of the Act amends Section 63.006 of the Code. Section 63.006(a) is amended to provide that, with respect to a voter who presents the proper identification, but whose name is not on the precinct list of registered voters, the voter shall be accepted for voting if the voter also presents a registration certificate indicating the voter is registered in the precinct or is registered in a different precinct in the same county and executes an affidavit stating the voter is a resident of the precinct where offering to vote, was a resident of the precinct at the time the information on the residence address was last provided to the registrar, did not deliberately provide false information to the registrar, and will vote only once in the election.

Under amended Section 63.006(b) of the Code, after the voter is accepted, the voter's name must be entered on the registration omissions list.

Section 63.006 was added to the Code by House Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985) and amended by House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance).

SECTION 13 of the Act amends Section 63.009 of the Code to delete the procedure under which a voter without a certificate and whose name is not on the precinct list of registered voters could vote after the voter registrar confirmed the voter's eligibility and the voter completed two separate affidavits. Under the change, the voter without a certificate whose name does not appear on the precinct list would have to vote provisionally and complete the provisional voter affidavit.

Section 63.009 was added to the Code by House Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985). It was amended by House Bill 75, Chapter 728, 73rd Legislature, 1993 (precleared on September 13, 1993), House Bill 330, Chapter 1078, 75th Legislature, 1997 (precleared on October 8, 1997), House Bill 331, Chapter 1349, 75th Legislature, 1997 (precleared on September 2, 1997), and most recently by

US_00000230

Mr. T. Christian Herren, Jr.
Page 7

House Bill 1549, Chapter 1315, 78th Legislature, 2003 (precleared on November 20, 2003).

SECTION 14 of the Act amends Section 63.0101 of the Code to remove any form of identification that does not include a photograph from the forms of identification that are acceptable for voting by personal appearance at the polling place. The deleted forms of identification include a birth certificate or other documents confirming birth and admissible in a court of law, citizenship papers that do not contain the person's photograph, official mail addressed to the voter from a governmental entity, copies of a current utility bill, bank statements, paychecks, or other government documents that show the name and address of the voter. Additionally, the Act deletes the authorization for the Secretary of State to prescribe additional forms of identification.

Also deleted as acceptable identification at the polling place are driver's licenses and personal identification cards issued by other states.

Added to the list of acceptable forms of identification are a United States military identification card that contains the person's photograph and has not expired or that expired no earlier than 60 days before the date of presentation, a TDPS-issued concealed handgun license that has not expired earlier than 60 days before the date of presentation, and the TDPS-issued election identification certificate, as set out in Chapter 521A, Texas Transportation Code.

Finally, a TDPS-issued driver's license, a personal identification card or a United States passport that expired more than 60 days before the date of presentation are no longer valid forms of identification.

Section 63.0101 was added to the Code by House Bill 330, Chapter 1078, 75th Legislature, 1997 (precleared on October 8, 1997). It was amended by House Bill 331, Chapter 1349, 75th Legislature, 1997 (precleared on September 2, 1997), by House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance), and most recently by House Bill 1549, Chapter 1315, 78th Legislature, 2003 (precleared on November 20, 2003).

SECTION 15 of the Act amends Section 63.011 of the Code to add a requirement that the provisional ballot affidavit include a space for the election officer to indicate whether the voter presented a valid form of identification.

Section 63.011 was added to the Code by House Bill 1549, Chapter 1315, 78th Legislature, 2003, (precleared on November 20, 2003), and later amended by House Bill 2823, Chapter 1073, 80th Legislature, 2007 (precleared on September 24, 2007).

SECTION 16 of the Act amends Section 64.012 of the Code to increase the penalty for illegal voting in an election to a second degree felony from a third degree felony and to increase the penalty for attempted illegal voting to a state jail felony from a Class A misdemeanor.

US_00000231

Mr. T. Christian Herren, Jr.
Page 8

Section 64.012 was added to the Code by Senate Bill 616, Chapter 211, 69th Legislature, 1985 (precleared on August 16, 1985), amended by House Bill 1603, Chapter 864, 75th Legislature, 1997 (a non-substantive change not subject to preclearance), and by House Bill 54, Chapter 393, 78th Legislature, 2003 (precleared on November 21, 2003).

SECTION 17 of the Act amends Section 65.054(b) of the Code to first clarify that a provisional ballot *shall* be accepted (rather than *may* be accepted) if the early voting ballot board makes certain determinations. Among these determinations are two that are newly-added by the Act. The first applies to situations where the voter: (1) meets the identification requirements either at the time the ballot was cast or when submitted to the county voter registrar after the election per Section 65.0541 of the Code; (2) has a religious objection to being photographed and completes an affidavit stating the objection and that the voter has consistently refused to be photographed for any governmental purpose during the period the voter has held the religious belief; or (3) completes an affidavit asserting that he or she does not have valid identification due to a natural disaster declared by the President of the United States no earlier than 45 days prior to the date the ballot was cast which caused the destruction of the voter's identification or the inability to access the voter's identification. The second permitted determination applies to a situation where the voter has not been challenged and the voter voted a provisional ballot solely because the voter did not meet the identification requirements set forth in the Act.

Section 65.054(b) was added to the Code by House Bill 1549, Chapter 1315, 78th Legislature, 2003, (precleared on November 20, 2003), and later amended by House Bill 2823, Chapter 1073, 80th Legislature, 2007 (precleared on September 24, 2007).

SECTION 18 of the Act adds new Section 65.0541 to the Code. Under this new section, a voter who casts a provisional ballot because he or she did not present an acceptable form of identification at the polling place may, not later than six days after the date of the election, present a valid form of identification to the voter registrar for examination, or execute one of the affidavits set out in Section 65.054(b)(2)(B) (religious objection) or (C) (natural disaster objection) in the presence of the registrar. The Secretary of State is charged with prescribing the procedures to implement this section.

SECTION 19 of the Act amends Section 66.0241 of the Code to make conforming changes related to SECTION 12 of the Act. These changes relate to which documents are placed in Envelope Number 4, which is given to the county voter registrar after election day to make updates to the voter registration list.

SECTION 20 of the Act adds a new Chapter 521A to the Texas Transportation Code. Section 521A.001(a) requires TDPS to issue election identification certificates to persons who state that they are obtaining the certificate to comply with the identification requirements set out in Section 63.001 of the Code because they do not have one of the acceptable forms of identification listed under Section 63.0101 of the Code. At the time the person applies for the election identification certificate, the person must be a registered voter and either present a valid registration certificate or apply for voter registration at that time.

TA_003030

US_00000232

Mr. T. Christian Herren, Jr.
Page 9

Section 521A.001(b) provides that TDPS may not charge a fee for issuance of the election identification certificate or a duplicate certificate.

Under Section 521A.001(c), the election identification certificate may not be used or accepted as a personal identification certificate.

Under Section 521A.001(d), an election official may not deny a person who presents an election identification certificate the ability to vote on the basis that the person failed to submit a TDPS driver's license or personal identification card.

Section 521A.001(e) requires TDPS to design the election identification certificate to be similar in form, but distinguishable by color, from the State's driver's license and personal identification certificate. TDPS may cooperate with the Secretary of State in designing the form.

Under Section 521A.001(f), TDPS may require applicants for the election identification certificate to furnish the same information required for a driver's license under Section 521.142 of the Texas Transportation Code.

Section 521A.001(g) authorizes TDPS to cancel and require surrender of an election identification certificate if TDPS determines the holder was not entitled to the certificate or provided incorrect/misleading information on the certificate application.

Finally, under Section 521A.001(h), an election identification certificate expires on a date set by TDPS, except that certificates issued to voters 70 or older do not expire.

SECTION 21 of the Act repeals Section 63.007 of the Code and Section 63.008 of the Code to conform with changes in SECTIONS 12 and 13 of the Act.

SECTION 22 of the Act requires the Secretary of State to adopt training standards and develop training materials to implement the changes to polling place procedures under the Act as soon as practicable after September 1, 2011. In addition, as soon as practicable, the county clerk is required to provide a session of training under Section 32.114 of the Code that incorporates the new Secretary of State training standards developed under Section 32.111.

SECTION 23 of the Act provides that the change in law set out in SECTION 16, increasing the penalty for illegal voting to a second degree felony and the penalty for attempted illegal voting to a state jail felony, applies only to offenses committed on or after January 1, 2012. Offenses committed before that date are covered by the law in effect at the time of the offense, and an offense is considered to have been committed before January 1, 2012 if any element of the offense was committed prior to that date.

SECTION 24 of the Act provides that, effective September 1, 2011, county voter registrars may use state funds disbursed under Chapter 19 of the Code for expenses

TA_003031

US_00000233

Mr. T. Christian Herren, Jr.
Page 10

      connected with voter registration drives and other activities designed to increase voter registration. This section expires on January 1, 2013.

(d)     The submitting authority is the Honorable Hope Andrade, Secretary of State of Texas, in her capacity as chief elections officer of Texas. The Secretary of State's office may be reached at P.O. Box 12060, Austin, Texas 78711-2060, (512) 463-5650.

(e)     Not applicable.

(f)     Not applicable.

(g)     The authority responsible for the passage of the Act was the Texas Legislature.

(h)     The Act was adopted pursuant to the provisions of Tex. Const. art. III, § 30.

(i)     The Act was passed by the Texas Senate on January 26, 2011, and by the Texas House with amendments on March 24, 2011. The Senate adopted the conference committee report on May 9, 2011, and the House adopted the conference committee report on May 16, 2011. The Act was signed by Governor Rick Perry on May 27, 2011.

(j)     The training provisions, the notice of identification requirements in SECTION 11, and the state funds disbursement requirement in SECTION 24 take effect on September 1, 2011. The remaining provisions take effect on January 1, 2012.

(k)     The provisions of the Act have not been implemented.

(l)     These procedures will affect the residents of the State of Texas.

(m)     The reason for the change provided for in the Act is to ensure the integrity of the voting process by allowing registered voters to vote, enhancing detection of ineligible voters, and deterring ineligible voters from voting, all while providing safeguards to allow eligible voters the opportunity to have their ballots counted.

(n)     The Act will not affect members of any racial or linguistic minority differently from the way the general public is affected. The Act does not have the intent and will not have the effect of diluting the voting strength of any racial or linguistic minority.

      The United States Department of Justice ("DOJ") previously precleared Georgia's 2005 law, which—like the Act—requires voters to present photo identification before voting by personal appearance. That preclearance decision is consistent with the United States Supreme Court's decision in *Crawford v. Marion County Election Board*, in which the Court rejected constitutional challenges to Indiana's photo-ID law. As former Justice John Paul Stevens acknowledged in the Supreme Court's decision upholding Indiana's law, modern life requires photo identification to transact even the most mundane business. Indeed, Justice Stevens cited with approval the following statement of the Commission on Federal Election Reform, that former President Jimmy Carter and former Secretary of State James A. Baker III jointly chaired: "Photo identification cards are

TA_003032

US_00000234

Mr. T. Christian Herren, Jr.
Page 11

currently needed to board a plane, enter federal buildings, and cash a check. Voting is equally important." *Crawford v. Marion County Election Bd., 553 U.S. 181, 193* (2008).

Commensurate with this observation, Texas' law requiring voters to present photo identification at the polls provides for the acceptance of commonly held documents: a state-issued driver's license or personal identification card, a United States military identification card, a United States passport, a United States citizenship certificate, or a concealed handgun license. *See* Section 13 of the Act. In fact, while there are only 12,604,131 registered voters in Texas, there are currently about 17,008,051 active Texas driver's licenses and identification cards.

However, to address concerns some raised about the Act's photo identification requirements, the Texas Legislature included several voter education provisions, as well as other safeguards for Texas voters. For example, the Act requires state and local authorities to engage in a thorough voter education and outreach program that includes the following components: inclusion of the new photo-identification requirements on new voter registration cards and renewal cards that are issued to all registered voters beginning late this year; including these requirements on the Secretary of State's web site in all languages required for election materials in Texas; including this same information on local registrars' websites in the locally requisite languages; including a physical posting of these requirements in all county clerks' offices in such languages; including a physical posting of the requirements at prominent places within polling locations, and a statewide voter education program conducted by the Secretary of State. *See* Sections 3, 4, 5 and 8 of the Act. In sum, the Act is carefully designed to ensure that every voter, regardless of race, disability, education level or economic station, is fully informed about the Act's requirements.

In addition to these voter education and outreach efforts, the Act contains other safeguards to protect the rights of eligible voters to vote and have their ballots counted. For example, the Act provides for a "cure" period whereby a voter may return after casting a provisional ballot to present the required ID if the voter failed to do so at the polls. Indeed, the Act specifically requires election workers to inform voters who do not present an adequate form of photo identification at the polling place of the procedures they may follow to have their ballots counted. *See* Sections 9 and 11 of the Act.[1] It also requires election clerks to take specific training regarding the Act's requirements so that all voters will receive like treatment when they present themselves for voting in person. *See* Sections 6 and 7 of the Act. Moreover, the Act addresses the situation in which a voter's photo identification documents include a spelling that is not identical—but is substantially similar to—the spellings on poll lists in polling locations. *See* Section 9 of the Act. Lastly, the Act creates an entirely new identification document that the State must provide free of charge to voters who attest to their inability to pay for other acceptable forms of identification. *See* Section 20 of the Act.

---

[1] Beginning in September 1, 2011, election workers must provide notice of the acceptable forms of photo identification for elections conducted after January 1, 2012 to all voters presenting identification that does not meet the requirements of the Act, as well as information on how such voters can obtain acceptable identification for free. *See* Section 11 of the Act.

US_00000235

Mr. T. Christian Herren, Jr.
Page 12

The framework Texas has created in its photo-identification law is consistent with photo-identification regimes in other states, such as Georgia's precleared 2005 law. Georgia's administratively precleared law is remarkably similar to the Act in that Georgia requires the following forms of photo-identification for in-person voting: a Georgia driver's license, an identification card issued by any Georgia state entity or the United States, a valid United States passport, an employee identification card issued by any Georgia state entity, the United States or local political entities, a United States military identification or a tribal identification card. *See* GA. Code Ann. § 21-2-417(a) (2010). Like the Act, Georgia's law includes a "cure" period (of more limited duration than the Texas cure period), free photo identification for economically-distressed voters lacking other approved forms of identification, and an extensive voter education and outreach program. *See* GA Code Ann. §§ 21-2-417(b), 418, and 419 (2010). In fact, DOJ precleared Georgia's original photo-identification law even before Georgia enacted its free ID provision and its most recent extensive voter education mandate, which Georgia added in a subsequent legislative session.

§

The history of Indiana's photo-identification law is also relevant to DOJ's Section 5 evaluation of the Act. Indiana enacted an in-person voting photo-identification law similar to the Act that requires voters to present photo identification that the United States or the State of Indiana issued. Such identification must include the name of the voter in a form that conforms to the voter's registration record and an expiration date. The identification must be current or have expired after the date of the most recent general election. *See* Ind. Code Ann. §§ 3-11-8-25.1 and 3-5-2-40.5 (2008). Indiana excepted those voting in person at a precinct polling place located at a state-licensed care facility where they reside and those attesting to indigent status or a religious exception to being photographed. *See* Ind. Code Ann. §§ 3-10-1-7.2(e), 3-11-8.25.1, 3-11-10-1.2, 3-11.7-5-1, and 3-11.7-5-2.5 (2008). Indiana voters not qualifying for an exception and failing to meet the photo-identification standard are allowed to vote provisionally and later provide the required identification. *See* Ind. Code Ann §§ 3-11-8-25.1, 3-11.7-5-2.5, 3-11.7-5-1, and 3-11.7-5-2.5.[2]

Various plaintiffs challenged Indiana's statutory regime on federal and state constitutional grounds and federal and state statutory grounds, claiming the law would negatively impact minority communities. *See Indiana Democratic Party v. Rokita*, 458 F.Supp.2d 775, 820-43 (S.D.Ind. 2006), *aff'd*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008). Although the claims did not include federal Voting Rights Act dilution claims, they did include allegations that the State of Indiana violated voting rights provisions of the Civil Rights Act of 1964. *See id.* at 839-42 (discussing claims under 42 U.S.C. 1971). Moreover, in considering the gamut of plaintiffs' claims, the courts at the trial and appellate levels clearly considered concerns that Indiana's law would negatively impact members of minority communities. *See, e.g., Crawford*, 472 F.3d 949, 952 (7th Cir. 2007), *aff'd*, 553 U.S. 181, 187 (2008); *Rokita*, 458 F.Supp.2d at 795-96.

At every level, the federal courts upheld Indiana's law. In doing so, the trial court wrote:

---

[2] For a more complete explanation of Indiana's statutory scheme as well as evidence of the actual practice in Indiana elections, *see Indiana Democratic Party v. Rokita*, 458 F.Supp.2d 775, 786-87 (S.D. Ind. 2006), *aff'd*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008).

US_00000236

Mr. T. Christian Herren, Jr.
Page 13

> Despite apocalyptic assertions of wholesale voter disenfranchisement, Plaintiffs have produced not a single piece of evidence of any identifiable registered voter who would be prevented from voting pursuant to [the Indiana photo ID law] because of his or her inability to obtain the necessary photo identification. Similarly, Plaintiffs have failed to produce any evidence of any individual, registered or unregistered, who would have to obtain photo identification in order to vote, let alone anyone who would undergo any appreciable hardship to obtain photo identification in order to be qualified to vote . . .

> Plaintiffs' inability to provide the names or otherwise identify any particular affected individuals persists despite various polls and surveys that were conducted for the specific purpose of discovering such individuals . . .

> [I]t is a testament to the law's minimal burden and narrow crafting that Plaintiffs have been unable to uncover anyone who can attest to the fact that he/she will be prevented from voting despite the concerted efforts of the political party and numerous interested groups who arguably represent the most severely affected candidates and communities.

*Rokita,* 458 F.Supp.2d at 822-23. The Seventh Circuit added that there was "something remarkable about the plaintiffs considered as a whole" as there was not a single one "who intend[ed] not to vote" because of the Indiana law. *Rokita,* 472 F.3d at 951-52.

As for the United Stated Supreme Court, Justice Stevens explained in the lead opinion for the Court, that given Indiana's provision of free photo identification, in most instances, "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Crawford,* 553 U.S. at 198. Three other justices who joined in the judgment of the Court refused to even entertain, at least for constitutional purposes, a person-by-person analysis of the burdens of a voting regulation when the regulation has non-discriminatory purpose and is generally applicable. *See id.* at 205-209. Justice Scalia wrote for those justices as follows: "The universally applicable requirements of Indiana's voter-identification law are eminently reasonable. The burden of acquiring, possessing, and showing a free photo identification is simply not severe, because it does not 'even represent a significant increase over the usual burdens of voting.' And the state's interests . . . are sufficient to maintain that minimal burden. That should end the matter." *Id.* at 209.

Analysis of voting patterns in Indiana since the implementation of that state's photo-identification law demonstrates that any fear these laws will decrease minority voter turnout is misguided. Professor Jeffrey Milyo, a professor of public affairs and economics who has been affiliated with the University of Missouri, the University of Kansas, and the Cato Institute specifically looked at voting patterns in Indiana before and

US_00000237

Mr. T. Christian Herren, Jr.
Page 14

after the implementation of photo ID requirements in a publication for the Institute of Public Policy at the University of Missouri's Harry S. Truman School of Public Affairs. He compared turnout between the 2002 and 2006 midterm elections and implemented various control factors or "sensitivity checks" to isolate the effects of Indiana's photo ID law. *See* Jeffrey Milyo, *The Effects of Photographic Identification on Voter Turnout in Indiana: A County Level Analysis*, Institute of Public Policy, University of Missouri Harry S. Truman School of Public Affairs at 1, 7 (December 2007). Professor Milyo specifically sought to identify the effects of photographic identification on "turnout in counties with a greater percentage of minority, poor, elderly, or less educated populations." *See id.* He concluded that while overall voter turnout in Indiana increased about two percentage points from 2002 to 2006, turnout in counties with greater percentages of minority or poor voters increased by even more, and the most consistent effect of photo identification in Indiana was to increase turnout in counties with a greater percentage of Democratic-leaning voters. *See id.* at 1, 7.[3]

In light of Indiana's experience, it should not be surprising that data from Georgia—the state with the other implemented photo identification requirement most similar to the Act—reflect no dampening of minority voter turnout. As the attached material from the Georgia Secretary of State's Office states, minority turnout increased after Georgia adopted its photo identification law. And it did so for both Hispanics and African Americans in both presidential and midterm election cycles (2004 to 2008 and 2006 to 2010). In sum, the evidence not only reflects no negative turnout impact on minority voters, but actually suggests that photo identification laws may have bolstered turnout.

To the extent the Department seeks more information regarding the Act, please contact:

> The Honorable Aaron Peña (joint sponsor)
> Texas House of Representatives
> P.O. Box 2910
> Austin, Texas 78768-2910
> (512) 463-0426

> The Honorable Larry Gonzales (co-sponsor)
> Texas House of Representatives
> P.O. Box 2910
> Austin, Texas 78768-2910
> (512) 463-0670

---

[3] Findings such as Professor Milyo's may explain why states all over the United States continue to adopt photo identification requirements for in person voting. For example, just weeks before the date of this submission, Rhode Island adopted a voter ID requirement. The law accepts photo and non-photo ID until 2014, at which point Rhode Island will accept only photo ID. *See Rhode Island Governor Signs Voter ID Bill*, Yahoo News, July 7, 2011, http://sg.news.yahoo.com/rhode-island-governor-signs-voter-id-bill-211606786.html Professor Milyo's findings may also explain why majorities of Americans across racial and other lines consistently express support for requiring photo identification to vote in person. Indeed, non-partisan independent polling conducted in Texas contemporaneously with the legislative debate regarding the Act reflected that virtually every subgroup in the survey supported photo identification for in person voting including: "whites, blacks and Hispanics; men and women; and urban, suburban and rural. Hispanics — one of the populations many fear would be disadvantaged by such a law — favor showing photo IDs by a 68 percent to 22 percent margin." Ross Ramsey, *UT/TT Poll: Texans Are Ready to Roll the Dice*, TEXAS TRIBUNE, Feb. 23, 2011, http://www.texastribune.org/texas-issues/gaminggambling/uttt-poll-texans-are-ready-to-roll-the-dice/ .

US_00000238

Mr. T. Christian Herren, Jr.
Page 15

> The Honorable Jose Aliseda (co-sponsor)
> Texas House of Representatives
> P.O. Box 2910
> Austin, Texas 78768-2910
> (512) 463-0645

(o)   There is no past or pending litigation concerning the subject matter of the Act.

(p)   The procedure for the adoption of the change is not subject to preclearance.

If you have any questions or need additional information, please contact Paul Miles, Staff Attorney, Elections Division, at (512) 463-5650.

Sincerely,

Ann McGeehan
Director of Elections

Enclosure

AM:PM:id

US_00000239

Chapter 123                                    <u>S.B. No. 14</u>

1                              <u>AN ACT</u>

2   relating to requirements to vote, including presenting proof of

3   identification; providing criminal penalties.

4        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5        SECTION 1.  Section 13.002, Election Code, is amended by

6   adding Subsection (i) to read as follows:

7        <u>(i)  An applicant who wishes to receive an exemption from the</u>

8   <u>requirements of Section 63.001(b) on the basis of disability must</u>

9   <u>include with the person's application:</u>

10            <u>(1)  written documentation:</u>

11                <u>(A)  from  the  United  States  Social  Security</u>

12   <u>Administration evidencing the applicant has been determined to have</u>

13   <u>a disability; or</u>

14                <u>(B)  from the United States Department of Veterans</u>

15   <u>Affairs  evidencing  the  applicant  has  a  disability  rating  of  at</u>

16   <u>least 50 percent; and</u>

17            <u>(2)  a statement in a form prescribed by the secretary</u>

18   <u>of state that the applicant does not have a form of identification</u>

19   <u>acceptable under Section 63.0101.</u>

20        SECTION 2.  Section 15.001, Election Code, is amended by

21   adding Subsection (c) to read as follows:

22        <u>(c)  A  certificate  issued  to  a  voter  who  meets  the</u>

23   <u>certification  requirements  of  Section  13.002(i)  must  contain  an</u>

24   <u>indication that the voter is exempt from the requirement to present</u>

<u>1</u>

TA_003038

US_00000240

S.B. No. 14

1 identification other than the registration certificate before

2 being accepted for voting.

3      SECTION 3. Effective September 1, 2011, Subchapter A,

4 Chapter 15, Election Code, is amended by adding Section 15.005 to

5 read as follows:

6      Sec. 15.005. NOTICE OF IDENTIFICATION REQUIREMENTS.

7 (a) The voter registrar of each county shall provide notice of the

8 identification requirements for voting prescribed by Chapter 63 and

9 a detailed description of those requirements with each voter

10 registration certificate issued under Section 13.142 or renewal

11 registration certificate issued under Section 14.001.

12      (b) The secretary of state shall prescribe the wording of

13 the notice to be included on the certificate under this section.

14      SECTION 4. Subsection (a), Section 15.022, Election Code,

15 is amended to read as follows:

16      (a) The registrar shall make the appropriate corrections in

17 the registration records, including, if necessary, deleting a

18 voter's name from the suspense list:

19          (1) after receipt of a notice of a change in

20 registration information under Section 15.021;

21          (2) after receipt of a voter's reply to a notice of

22 investigation given under Section 16.033;

23          (3) after receipt of a registration omissions list and

24 any affidavits executed under Section 63.006 [63.007], following an

25 election;

26          (4) after receipt of a voter's statement of residence

27 executed under Section 63.0011;

2

US_00000241

S.B. No. 14

1        (5) before the effective date of the abolishment of a
2   county election precinct or a change in its boundary;

3        (6) after receipt of United States Postal Service
4   information indicating an address reclassification;

5        (7) after receipt of a voter's response under Section
6   15.053; or

7        (8) after receipt of a registration application or
8   change of address under Chapter 20.

9     SECTION 5. Effective September 1, 2011, Subchapter A,
10  Chapter 31, Election Code, is amended by adding Section 31.012 to
11  read as follows:

12       Sec. 31.012. VOTER IDENTIFICATION EDUCATION.    (a) The
13  secretary of state and the voter registrar of each county that
14  maintains a website shall provide notice of the identification
15  requirements for voting prescribed by Chapter 63 on each entity's
16  respective website in each language in which voter registration
17  materials are available.  The secretary of state shall prescribe
18  the wording of the notice to be included on the websites.

19       (b)  The secretary of state shall conduct a statewide effort
20  to educate voters regarding the identification requirements for
21  voting prescribed by Chapter 63.

22       (c)  The county clerk of each county shall post in a
23  prominent location at the clerk's office a physical copy of the
24  notice prescribed under Subsection (a) in each language in which
25  voter registration materials are available.

26    SECTION 6. Effective September 1, 2011, Section 32.111,
27  Election Code, is amended by adding Subsection (c) to read as

TA_003040

US_00000242

S.B. No. 14

1  follows:

2      (c)  The training standards adopted under Subsection (a)

3  must include provisions on the acceptance and handling of the

4  identification presented by a voter to an election officer under

5  Section 63.001.

6      SECTION 7.  Effective September 1, 2011, Subsection (a),

7  Section 32.114, Election Code, is amended to read as follows:

8      (a)  The county clerk shall provide one or more sessions of

9  training using the standardized training program and materials

10  developed and provided by the secretary of state under Section

11  32.111 for the election judges and clerks appointed to serve in

12  elections ordered by the governor or a county authority.  Each

13  election judge shall complete the training program.  Each election

14  clerk shall complete the part of the training program relating to

15  the acceptance and handling of the identification presented by a

16  voter to an election officer under Section 63.001.

17      SECTION 8.  Chapter 62, Election Code, is amended by adding

18  Section 62.016 to read as follows:

19      Sec. 62.016.  NOTICE OF ACCEPTABLE IDENTIFICATION OUTSIDE

20  POLLING PLACES.  The presiding judge shall post in a prominent place

21  on the outside of each polling location a list of the acceptable

22  forms of identification.  The list must be printed using a font that

23  is at least 24-point.  The notice required under this section must

24  be posted separately from any other notice required by state or

25  federal law.

26      SECTION 9.  Section 63.001, Election Code, is amended by

27  amending Subsections (b), (c), (d), and (f) and adding Subsections

4

TA_003041

US_00000243

1  (g) and (h) to read as follows:

2       (b)  Except as provided by Subsection (h), on [On] offering

3  to vote, a voter must present to an election officer at the polling

4  place one form of identification described by Section 63.0101 [the

5  voter's voter registration certificate to an election officer at

6  the polling place].

7       (c)  On presentation of the documentation required under

8  Subsection (b) [a registration certificate], an election officer

9  shall determine whether the voter's name on the documentation

10  [registration certificate] is on the list of registered voters for

11  the precinct.  If in making a determination under this subsection

12  the election officer determines under standards adopted by the

13  secretary of state that the voter's name on the documentation is

14  substantially similar to but does not match exactly with the name on

15  the list, the voter shall be accepted for voting under Subsection

16  (d) if the voter submits an affidavit stating that the voter is the

17  person on the list of registered voters.

18       (d)  If, as determined under Subsection (c), the voter's name

19  is on the precinct list of registered voters and the voter's

20  identity can be verified from the documentation presented under

21  Subsection (b), the voter shall be accepted for voting.

22       (f)  After determining whether to accept a voter, an election

23  officer shall return the voter's documentation [registration

24  certificate] to the voter.

25       (g)  If the requirements for identification prescribed by

26  Subsection (b) are not met, the voter may be accepted for

27  provisional voting only under Section 63.011.  For a voter who is

TA_003042

US_00000244

S.B. No. 14

1   not accepted for voting under this section, an election officer
2   shall:
3              (1)  inform the voter of the voter's right to cast a
4   provisional ballot under Section 63.011; and
5              (2)  provide the voter with written information, in a
6   form prescribed by the secretary of state, that:
7                   (A)  lists the requirements for identification;
8                   (B)  states  the  procedure  for  presenting
9   identification under Section 65.0541;
10                  (C)  includes  a  map  showing  the  location  where
11  identification must be presented; and
12                  (D)  includes notice that if all procedures are
13  followed and the voter is found to be eligible to vote and is voting
14  in the correct precinct, the voter's provisional ballot will be
15  accepted.
16       (h)  The  requirements  for  identification  prescribed  by
17  Subsection (b) do not apply to a voter who is disabled and presents
18  the  voter's  voter  registration  certificate  containing  the
19  indication described by Section 15.001(c) on offering to vote.
20       SECTION 10.  Subsection (a), Section 63.0011, Election Code,
21  is amended to read as follows:
22       (a)  Before a voter may be accepted for voting, an election
23  officer shall ask the voter if the voter's residence address on the
24  precinct list of registered voters is current and whether the voter
25  has changed residence within the county.  If the voter's address is
26  omitted from the precinct list under Section 18.005(c), the officer
27  shall ask the voter if the voter's residence, if [as] listed, on

6

TA_003043

US_00000245

S.B. No. 14

1  identification presented by the voter under Section 63.001(b) [the
2  voter's voter registration certificate] is current and whether the
3  voter has changed residence within the county.

4      SECTION 11.  Effective September 1, 2011, Chapter 63,
5  Election Code, is amended by adding Section 63.0012 to read as
6  follows:

7      Sec. 63.0012.  NOTICE OF IDENTIFICATION REQUIREMENTS TO
8  CERTAIN VOTERS.  (a)  An election officer shall distribute written
9  notice of the identification that will be required for voting
10 beginning with elections held after January 1, 2012, and
11 information on obtaining identification without a fee under Chapter
12 521A, Transportation Code, to each voter who, when offering to
13 vote, presents a form of identification that will not be sufficient
14 for acceptance as a voter under this chapter beginning with those
15 elections.

16     (b)  The secretary of state shall prescribe the wording of
17 the notice and establish guidelines for distributing the notice.

18     (c)  This section expires September 1, 2017.

19     SECTION 12.  Section 63.006, Election Code, is amended to
20 read as follows:

21     Sec. 63.006.  VOTER WITH REQUIRED DOCUMENTATION [CORRECT
22 CERTIFICATE] WHO IS NOT ON LIST.  (a)  A voter who, when offering to
23 vote, presents the documentation required under Section 63.001(b)
24 [a voter registration certificate indicating that the voter is
25 currently registered in the precinct in which the voter is offering
26 to vote,] but whose name is not on the precinct list of registered
27 voters[,] shall be accepted for voting if the voter also presents a

7

US_00000246

1  voter registration certificate indicating that the voter is

2  currently registered:

3            (1)  in the precinct in which the voter is offering to

4  vote; or

5            (2)  in a different precinct in the same county as the

6  precinct in which the voter is offering to vote and the voter

7  executes an affidavit stating that the voter:

8            (A)  is a resident of the precinct in which the

9  voter is offering to vote or is otherwise entitled by law to vote in

10  that precinct;

11           (B)  was a resident of the precinct in which the

12  voter is offering to vote at the time the information on the voter's

13  residence address was last provided to the voter registrar;

14           (C)  did   not   deliberately   provide   false

15  information to secure registration in a precinct in which the voter

16  does not reside; and

17           (D)  is voting only once in the election.

18    (b)  After the voter is accepted, an election officer shall:

19         (1)  indicate beside the voter's name on the poll list

20  that the voter was accepted under this section; and

21         (2)  enter the voter's name on the registration

22  omissions list.

23    SECTION 13.  Section 63.009, Election Code, is amended to

24  read as follows:

25    Sec. 63.009.  VOTER WITHOUT CERTIFICATE WHO IS NOT ON LIST.

26  A [(a)  Except as provided by Subsection (b), a] voter who does not

27  present a voter registration certificate when offering to vote, and

US_00000247

1 whose name is not on the list of registered voters for the precinct

2 in which the voter is offering to vote, shall be accepted for

3 provisional voting if the voter executes an affidavit in accordance

4 with Section 63.011.

5 [(b) If an election officer can determine from the voter

6 registrar that the person is a registered voter of the county and

7 the person presents proof of identification, the affidavits

8 required by Sections 63.007 and 63.008 are substituted for the

9 affidavit required by Section 63.011 in complying with that

10 section. After the voter is accepted under this subsection, an

11 election officer shall also indicate beside the voter's name on the

12 poll list that the voter was accepted under this section.]

13 SECTION 14. Section 63.0101, Election Code, is amended to

14 read as follows:

15 Sec. 63.0101. DOCUMENTATION OF PROOF OF IDENTIFICATION.

16 The following documentation is an acceptable form [as proof] of

17 photo identification under this chapter:

18 (1) a driver's license, election identification

19 certificate, or personal identification card issued to the person

20 by the Department of Public Safety that has not [or a similar

21 document issued to the person by an agency of another state,

22 regardless of whether the license or card has] expired or that

23 expired no earlier than 60 days before the date of presentation;

24 (2) a United States military identification card that

25 contains the person's photograph that has not expired or that

26 expired no earlier than 60 days before the date of presentation

27 [form of identification containing the person's photograph that

9

TA_003046

US_00000248

1 ~~establishes the person's identity~~];

2          (3)  a [~~birth certificate or other document confirming~~

3 ~~birth that is admissible in a court of law and establishes the~~

4 ~~person's identity,~~

5          [(4)] United States citizenship <u>certificate</u> [~~papers~~]

6 issued to the person <u>that contains the person's photograph</u>;

7          <u>(4)</u> [(5)] a United States passport issued to the

8 person <u>that has not expired or that expired no earlier than 60 days</u>

9 <u>before the date of presentation; or</u>

10          <u>(5)  a license to carry a concealed handgun issued to</u>

11 <u>the person by the Department of Public Safety that has not expired</u>

12 <u>or that expired no earlier than 60 days before the date of</u>

13 <u>presentation</u>

14          [~~(6)  official mail addressed to the person by name~~

15 ~~from a governmental entity,~~

16          [~~(7)  a copy of a current utility bill, bank statement,~~

17 ~~government check, paycheck, or other government document that shows~~

18 ~~the name and address of the voter; or~~

19          [~~(8)  any other form of identification prescribed by~~

20 ~~the secretary of state~~].

21          SECTION 15.  Section 63.011, Election Code, is amended by

22 amending Subsections (a) and (b) and adding Subsection (b-1) to

23 read as follows:

24          (a)  A person to whom Section <u>63.001(g)</u> [~~63.008(b)~~] or <u>63.009</u>

25 [~~63.009(a)~~] applies may cast a provisional ballot if the person

26 executes an affidavit stating that the person:

27          (1)  is a registered voter in the precinct in which the

<u>10</u>

US_00000249

1  person seeks to vote; and

2          (2)  is eligible to vote in the election.

3      (b)  A form for an affidavit required by this section must

4  [shall] be printed on an envelope in which the provisional ballot

5  voted by the person may be placed and must include:

6          (1)  a space for entering the identification number of

7  the provisional ballot voted by the person; and

8          (2)  a space  for  an  election  officer  to  indicate

9  whether the person presented a form of identification described by

10  Section 63.0101.

11      (b-1)  The affidavit form may include space for disclosure of

12  any necessary information to enable the person to register to vote

13  under Chapter 13.  The secretary of state shall prescribe the form

14  of the affidavit under this section.

15      SECTION 16.  Subsection (b), Section 64.012, Election Code,

16  is amended to read as follows:

17      (b)  An offense under this section is a felony of the second

18  [third] degree unless the person is convicted of an attempt.  In

19  that case, the offense is a state jail felony [Class A misdemeanor].

20      SECTION 17.  Subsection (b), Section 65.054, Election Code,

21  is amended to read as follows:

22      (b)  A provisional ballot shall [may] be accepted [only] if

23  the board determines that:

24          (1)  [,] from  the  information  in  the  affidavit  or

25  contained in public records, the person is eligible to vote in the

26  election and has not previously voted in that election;

27          (2)  the person:

11

US_00000250

S.B. No. 14

1        (A)  meets  the  identification  requirements  of

2   Section 63.001(b) at the time the ballot was cast or in the period

3   prescribed under Section 65.0541;

4        (B)  notwithstanding Chapter 110, Civil Practice

5   and Remedies Code, executes an affidavit under penalty of perjury

6   that  states  the  voter  has  a  religious  objection  to  being

7   photographed  and  the  voter  has  consistently  refused  to  be

8   photographed for any governmental purpose from the time the voter

9   has held this belief; or

10       (C)  executes  an  affidavit  under  penalty  of

11  perjury  that  states  the  voter  does  not  have  any  identification

12  meeting  the  requirements  of  Section 63.001(b)  as  a  result  of  a

13  natural disaster that was declared by the president of the United

14  States or the governor, occurred not earlier than 45 days before the

15  date the ballot was cast, and caused the destruction of or inability

16  to access the voter's identification; and

17       (3)  the  voter  has  not  been  challenged  and  voted  a

18  provisional  ballot  solely  because  the  voter  did  not  meet  the

19  requirements for identification prescribed by Section 63.001(b).

20       SECTION 18.   Subchapter B, Chapter 65, Election Code, is

21  amended by adding Section 65.0541 to read as follows:

22       Sec. 65.0541.  PRESENTATION  OF  IDENTIFICATION  FOR  CERTAIN

23  PROVISIONAL BALLOTS.  (a)  A voter who is accepted for provisional

24  voting under Section 63.011 because the voter does not meet the

25  identification requirements of Section 63.001(b) may, not later

26  than the sixth day after the date of the election:

27       (1)  present  a  form  of  identification  described  by

12

US_00000251

S.B. No. 14

1   Section 63.0101 to the voter registrar for examination; or

2           (2)   execute   an   affidavit   described   by   Section

3   65.054(b)(2)(B) or (C) in the presence of the voter registrar.

4           (b)   The secretary of state shall prescribe procedures as

5   necessary to implement this section.

6           SECTION 19.   Section 66.0241, Election Code, is amended to

7   read as follows:

8           Sec. 66.0241.   CONTENTS OF ENVELOPE NO. 4.   Envelope no. 4

9   must contain:

10              (1)   the precinct list of registered voters;

11              (2)   the registration correction list;

12              (3)   the registration omissions list;

13              (4)   any statements of residence executed under Section

14  63.0011; and

15              (5)   any affidavits executed under Section 63.006

16  [63.007] or 63.011.

17          SECTION 20.   Subtitle B, Title 7, Transportation Code, is

18  amended by adding Chapter 521A to read as follows:

19          CHAPTER 521A.   ELECTION IDENTIFICATION CERTIFICATE

20          Sec. 521A.001.   ELECTION   IDENTIFICATION   CERTIFICATE.

21  (a)   The   department   shall   issue   an   election   identification

22  certificate to a person who states that the person is obtaining the

23  certificate   for   the   purpose   of   satisfying   Section   63.001(b),

24  Election Code, and does not have another form of identification

25  described by Section 63.0101, Election Code, and:

26              (1)   who  is  a  registered  voter  in  this  state  and

27  presents a valid voter registration certificate; or

13

US_00000252

S.B. No. 14

1     (2) who is eligible for registration under Section

2  13.001, Election Code, and submits a registration application to

3  the department.

4     (b) The department may not collect a fee for an election

5  identification certificate or a duplicate election identification

6  certificate issued under this section.

7     (c) An election identification certificate may not be used

8  or accepted as a personal identification certificate.

9     (d) An election officer may not deny the holder of an

10  election identification certificate the ability to vote because the

11  holder has an election identification certificate rather than a

12  driver's license or personal identification certificate issued

13  under this subtitle.

14     (e) An election identification certificate must be similar

15  in form to, but distinguishable in color from, a driver's license

16  and a personal identification certificate. The department may

17  cooperate with the secretary of state in developing the form and

18  appearance of an election identification certificate.

19     (f) The department may require each applicant for an

20  original or renewal election identification certificate to furnish

21  to the department the information required by Section 521.142.

22     (g) The department may cancel and require surrender of an

23  election identification certificate after determining that the

24  holder was not entitled to the certificate or gave incorrect or

25  incomplete information in the application for the certificate.

26     (h) A certificate expires on a date specified by the

27  department, except that a certificate issued to a person 70 years of

14

US_00000253

S.B. No. 14

1   age or older does not expire.

2       SECTION 21.   Sections 63.007 and 63.008, Election Code, are

3   repealed.

4       SECTION 22.   Effective September 1, 2011:

5           (1)  as soon as practicable, the secretary of state

6   shall adopt the training standards and develop the training

7   materials required to implement the change in law made by this Act

8   to Section 32.111, Election Code; and

9           (2)  as soon as practicable, the county clerk of each

10  county shall provide a session of training under Section 32.114,

11  Election Code, using the standards adopted and materials developed

12  to implement the change in law made by this Act to Section 32.111,

13  Election Code.

14      SECTION 23.   The change in law made by this Act in amending

15  Subsection (b), Section 64.012, Election Code, applies only to an

16  offense committed on or after January 1, 2012.  An offense committed

17  before January 1, 2012, is covered by the law in effect when the

18  offense was committed, and the former law is continued in effect for

19  that purpose.  For purposes of this section, an offense is committed

20  before January 1, 2012, if any element of the offense occurs before

21  that date.

22      SECTION 24.  Effective September 1, 2011, state funds

23  disbursed under Chapter 19, Election Code, for the purpose of

24  defraying expenses of the voter registrar's office in connection

25  with voter registration may also be used for additional expenses

26  related to coordinating voter registration drives or other

27  activities designed to expand voter registration.  This section

15

US_00000254

1   expires January 1, 2013.

2          SECTION 25. Every  provision  in  this  Act  and  every

3   application of the provisions in this Act are severable from each

4   other.   If any application of any provision in this Act to any

5   person or group of persons or circumstances is found by a court to

6   be invalid, the remainder of this Act and the application of the

7   Act's provisions to all other persons and circumstances may not be

8   affected.   All constitutionally valid applications of this Act

9   shall be severed from any applications that a court finds to be

10  invalid, leaving the valid applications in force, because it is the

11  legislature's intent and priority that the valid applications be

12  allowed to stand alone. Even if a reviewing court finds a provision

13  of this Act invalid in a large or substantial fraction of relevant

14  cases, the  remaining  valid  applications  shall  be  severed  and

15  allowed to remain in force.

16         SECTION 26.  Except as otherwise provided by this Act, this

17  Act takes effect January 1, 2012.

16

TA_003053

US_00000255

S.B. No. 14

_____
President of the Senate

_____
Speaker of the House

    I hereby certify that S.B. No. 14 passed the Senate on January 26, 2011, by the following vote: Yeas 19, Nays 11; April 5, 2011, Senate refused to concur in House amendments and requested appointment of Conference Committee; April 11, 2011, House granted request of the Senate; May 9, 2011, Senate adopted Conference Committee Report by the following vote: Yeas 19, Nays 12._____

_____
Secretary of the Senate

    I hereby certify that S.B. No. 14 passed the House, with amendments, on March 24, 2011, by the following vote: Yeas 101, Nays 48, one present not voting; April 11, 2011, House granted request of the Senate for appointment of Conference Committee; May 16, 2011, House adopted Conference Committee Report by the following vote: Yeas 98, Nays 46, one present not voting._____

_____
Chief Clerk of the House

Approved:

_____27 MAY '11_____
Date

_____Rick Perry_____
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
7:00 PM   O'CLOCK

MAY 27 2011

_____
Secretary of State

17

TA_003054

US_00000256

**From:** Carrothers, Matthew [mcarrothers@sos.ga.gov]
**Sent:** Thursday, March 03, 2011 10:04 AM
**To:** Colby Beuck
**Cc:** Russo, Vincent
**Subject:** Request for additional statistics

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Colby,

Secretary Kemp's presentation on Georgia's photo ID requirement included a comparison of voter turnout by demographics for the 2004 and 2008 general elections, which were both presidential election years. A member of the Select Committee requested similar statistics for the 2006 and 2010 general elections, which Secretary Kemp did not have at the time.

Below are the additional figures requested by the Texas House of Representatives Select Committee on Voter Identification and Voter Fraud. They represent voter turnout by demographics for the 2006 and 2010 general elections, plus the percent increase over this time period. Please make these additional statistics available to the Select Committee, and please let Vince or I know if you or the Committee would like any additional materials.

2006 General Election
11,601 Hispanic votes
513,699 black votes
1,556,216 white votes

2010 General Election
19,320 Hispanic votes
740,997 black votes
1,738,521 white votes

Percent increase in turnout from 2006 to 2010
Hispanic voters: 66.5%
Black voters: 44.2%
White voters: 11.7%
-------------------------------------------

Thanks,
Matt

Matt Carrothers
Director of Media Relations
Office of Secretary of State Brian P. Kemp
214 State Capitol
Atlanta, GA 30334
Office: 404-656-4269
Fax: 404-656-0513
mcarrothers@sos.ga.gov

US_00000257

## In-Person Voting with Photo Identification: Analysis of Votes Cast

### How many votes have been cast in Georgia elections with the photo ID law in place?

More than 14,630,000 votes have been cast in 35 state and federal elections in Georgia since September 2007 when photo ID was first required for in-person voting. (These figures do not include all municipal and county elections, which are administered locally.)

Additionally, the 2008 elections were the largest in Georgia's history, featuring record turnout among minority voters with the photo ID requirement in place. The following figures represent voter turnout statistics among Hispanic/Latino, African-American and White voters from the 2004 and 2008 General Elections.

| Voter Demographic | 2004 Total Number of Votes Cast | 2008 Total Number of Votes Cast | Percentage Increase in Votes Cast |
|---|---|---|---|
| Hispanic/Latino | 18,000 | 43,000 | 140% |
| African-American | 834,000 | 1.2 million | 42% |
| White | 2.3 million | 2.5 million | 8% |

US_00000258