Search DPS

Driver License Home
Renew
Change Address
Office Locations
Mega Centers
Customer Service Center

# Election Identification Certificate (EIC)

**Espanol**

Texas voters must show a photo ID to vote in elections in Texas, unless you are exempt (see "Exemptions" below).

If you do not have any of the following acceptable forms of ID, beginning June 26, 2013, you may apply for an Election Identification Certificate (EIC) at no charge. However, if you already have any of the following forms of ID, you are not eligible for an EIC:



STATE OF TEXAS
**ELECTION CERTIFICATE**

EC# 12345678

Date of Birth
10/30/1986
Expiration Date
10/30/2014

LASTNAMEWXXUUEXXUUEXXUUEXXUU
FIRSTNAMEMIDDLENAMESUFFIXWXX

FOR ELECTION PURPOSES ONLY
CANNOT BE USED AS IDENTIFICATION

- Texas driver license—unexpired or expired no longer than 60 days at the time of voting
- Texas personal identification card—unexpired or expired no longer than 60 days at the time of voting
- Texas concealed handgun license—unexpired or expired no longer than 60 days at the time of voting
- U.S. passport book or card—unexpired or expired no longer than 60 days at the time of voting
- U.S. Military identification with photo—unexpired or expired no longer than 60 days at the time of voting
- U.S. Citizenship Certificate or Certificate of Naturalization with photo

Texans may also obtain an EIC at certain locations in select counties throughout the state.

## Exemptions

If you are voting by mail, you do not have to submit a photo ID.

If you have a documented disability, you may apply at your county voter registrar for a permanent exemption from the photo ID requirement. If approved, you will not need a photo ID to vote.

For more information on the types of exemptions available, please visit your county voter registrar or the Texas Secretary of State.

## How to Apply

2:13-cv-193
09/02/2014
**DEF0204**

TexasExhibitsticker.com

DEPOSITION
EXHIBIT
7/15/14
Buchanan

PENGAD 800-631-6989

To apply for an EIC, visit a driver license office and complete an Application for Texas Election Certificate (DL-14C) (PDF).

To qualify for an EIC, you must:

- **Bring documentation** to the office to verify your **U.S. Citizenship**
- **Bring documentation** to the office to verify your Identity
- Be eligible to vote in Texas (**Bring your valid voter registration card to the office**, or submit a voter registration application through the Texas Department of Public Safety at the office)
- Be a Texas resident
- Be 17 years and 10 months or older

The information on the documents, such as name and date of birth, must all match. If the name is different on each document, then the individual must provide documents that verify a legal name change. If other information on the document is different, speak with a Customer Service Representative for assistance.

If you are using a name other than what is on your birth certificate, (example: married name), you will be required to show legal documentation of name change. **Documents must be original or certified copy. No photocopies can be accepted.**

Acceptable documents:

1. Marriage license
2. Divorce decree
3. Court ordered name change

## Expiration and Use

An EIC is valid for six years. There is no expiration date for certificates issued to citizens 70 years of age or older.

Election Identification Certificates may only be used to vote and do not replace a Texas driver license or ID card. In addition, an EIC will not be accepted to verify identity when applying for a Texas driver license or ID card.

## Statutory Authority

The Texas Election Code 63.001(b) requires a photo ID in order to vote in Texas. The Texas Transportation Code, Chapter 521A and 37 Texas Administration Code, Sections 15.181-185, authorizes DPS to issue Election Identification Certificates.

**Note:** links to [PDF] files require Adobe Reader or another PDF viewer.

| Accessibility | Site Policies | TRAIL | TSIEC | Report Fraud, Waste or Abuse | American Recovery and Reinvestment Act |
| Outlook Web Access | ETA Time Entry | Texas Homeland Security | Public Information Act | Compact with Texans | Español |
| The Governor's Committee on People with Disabilities | Personnel Complaint Process (Español) | Customer Survey |
| Texas Veterans Portal | Texas Fusion Center Privacy Policy | Texas.gov |

© 2000-2013 Texas Department of Public Safety

http://www.txdps.state.tx.us/driverlicense/electionid.htm

2/3



# DRIVER LICENSE DIVISION

Election Identification Certificates
**cannot be used for identification purposes other than voting.**



## County Locations Issuing Election Identification Certificates

The following county locations will be issuing Election Identification Certificates (EICs) to Texans who do not already have an acceptable form of photo identification necessary to vote.

For locations, dates and times that EICs will be available, contact any of the following counties:

**Aransas County**
Judge C.B. "Burt" Mills Jr.
County Judge
361-790-0100
judge@aransascounty.org

**Archer County**
Barry Hargrove
940-720-3233

**Austin County**
Marcus Pena
Austin Tax Assessor-Collector
979-865-8633
mpena@austin.com

**Bandera County**
Judge Richard A. Evans
Bandera County Judge
830-796-3781
bandcojdg@indian-creek.net

**Borden County**
Sheriff Benny Allison
County Sheriff & Tax Assessor-Collector
806-756-4415
bordenco@poka.com

**Caldwell County**
Pam Ohlendorf
Caldwell Elections Administrator
512-668-4347
pamela.ohlendorf@co.caldwell.tx.us

**Camp County**
Judge Thomas Cravey
County Judge
903-856-3845
campcountyjudge@gmail.com

**Cochran County**
Cheryl Butler
County Elections Administrator
806-266-5181
cheryl.butler@co.cochran.tx.us

**Coke County**
Mary Grim
Coke County District & County Clerk
325-453-2631
marylgclerk@juno.com

**Cottle County**
Jan Irons
Cottle County District Clerk
806-492-3823
cottledcclerk@gmail.com

**Crockett County**
Judge Fred Deaton
Crockett County Judge
325-392-2965
Fred.deaton@co.crockett.tx.us

**Delta County**
Judge Herb Brookshire
County Judge
903-395-4400
countyjudge@deltacountytx.com

**Dimmit County**
Mario Zuvia Garcia
Dimmit Clerk
830-876-4209
mzgarcia75@yahoo.com

**Duval County**
Ana Bazan
Duval Elections Administrator
361-279-6278
ana.bazan@co.duval.tx.us

**Edwards County**
Olga Reyes
County Clerk
830-683-2235
clerk@swtexas.net

**Falls County**
Betty McCormick
512-832-7638

**Fayette County**
Dina Bell
Fayette Elections Administrator
979-968-6563
dina.bell@co.fayette.tx.us

**Franklin County**
Sheriff Ricky Jones
County Sheriff
903-537-4539
rjones@co.franklin.tx.us

**Frio County**
Anna Alaniz
Frio Tax Assessor-Collector
830-334-2152
friotac@sbcglobal.net

**Garza County**
Jeff Clark
806-783-6610

continued

**Goliad County**
Michelle Garcia
Tax Assessor-Collector
361-645-3354
M.Garcia@goliadcountytx.gov

**Grimes County**
Rebecca Duff
Grimes Elections Administrator
936-873-4424
grimesvoters@yahoo.com

**Hall County**
Maribel C. Gonzales
Hall Tax Assessor-Collector
806-259-2125
hallcotac@gmail.com

**Hansford County**
Linda Cummings
Hansford Tax Assessor-Collector
806-659-4120
linda.cummings@co.hansford.tx.us

**Irion County**
Joyce Gray
Irion Tax Assessor-Collector
325-835-7771
irioncounty@verizon.net

**Jack County**
Sharon Robinson
Jack County Tax Assessor-Collector
940-567- 2352
srobinson@jackcounty.org

**Jackson County**
Judge Dennis Simons
County Judge
361-782-2352
d.simons@co.jackson.tx.us

**Jeff Davis County**
Judge George E. Grubb
County Judge
432-426-3968

**Jim Hogg County**
Norma Liza S. Hinojosa
Jim Hogg Tax Assessor-Collector
361-527-3237
jhctac@hotmail.com

**Karnes County**
Judge Barbara N. Shaw
County Judge
830-780-3732
Barbara.shaw@co.karnes.tx.us

**Kenedy County**
Noel Pena
County Elections Administrator
361-294-5255
nnpena@gmail.com

**Kent County**
Sheriff William Scogin
County Sheriff/Tax Assessor-Collector
806-237-3746
sheriff@kentcountysherifftx.com

**King County**
Judge Duane Daniel
County Judge
806-596-4411
kcjudge@caprock-spur.com

**Kinney County**
Dora Sandoval
County Clerk
830-563-2521
kclerk@hotmail.com

**LaSalle County**
Margarita Esqueda
La Salle County District & County Clerk
830-483-5120
Margie.esqueda@co.la-salle.tx.us

**Lipscomb County**
Kathy Fry
Lipscomb Tax Assessor-Collector
806-862-2911
taxac@amaonline.com

**Loving County**
Sheriff Billy B. Hopper
County Sheriff & Tax Assessor-Collector
432-377-2411
sheriff@co.loving.tx.us

**Lynn County**
Donna Willis
Lynn Tax Assessor-Collector
806-561-4112
donna.willis@co.lynn.tx.us

**Madison County**
Earl C. Parker Jr.
County Elections Administrator
936-349-0132
earl.parker@madisontx.org

**Marion County**
Karen G. Jones
Marion Tax Assessor-Collector
903-665-3281
karen.jones@co.marion.tx.us

**McMullen County**
Angel Bostwick / Bessie Guerrero
McMullen Tax Assessor-Collector
361-274-3233 / 361-274-3638
taxofc@granderiver.net

**Menard County**
Timothy Royce Powell
Menard Tax Assessor-Collector
325-396-4523
menardtac@hotmail.com

**Newton County**
Sandra Kay Duckworth
Newton Clerk
409-379-5341
duckworth75932@yahoo.com

**Oldham County**
Linda Brown
Oldham Tax Assessor-Collector
806-267-2280
taxac@co.oldham.tx.us

**Potter County**
Randy Hale
806-356-5184

**Refugio County**
Rachael B. Garcia
Refugio Elections Administrator
361-526-2151
rachael.garcia@co.refugio.tx.us

**Robertson County**
Trudy R. Hancock
Robertson Elections Administrator
979-828-5726
thancock@valornet.com

continued

**Sabine County**
Karon Little
409-730-4008

**San Augustine County**
Deborah K. Woods
San Augustine Elections Administrator
936-275-0989
deborah.woods@co.san-augustine.tx.us

**San Jacinto County**
Sherryl Evans
San Jacinto Elections Administrator
936-653-5804
sherryl.evans@co.san-jacinto.tx.us

**San Saba County**
Adriana Garcia
512-832-7634

**Schleicher County**
Brenda Mayfield
Schleicher Elections Administrator
325-853-2302
electionadm_bkm@verizon.net

**Shackelford County**
Sheriff Edward "Ed" Miller
County Sheriff/Tax Assessor-Collector
325-762-2000
deputy2@
shackelfordcountytexas.com

**Sherman County**
Valerie McAlister
Sherman Tax Assessor-Collector
806-366-2150
valerie.mcalister@co.sherman.tx.us

**Somervell County**
Judge Mike Ford
County Judge
254-897-2322
cojudge@co.somervell.tx.us

**Sterling County**
Ralph Sides
County Judge
325-378-3481
rsides@co.sterling.tx.us

**Terrell County**
Sheriff William "Clint" McDonald
County Sheriff/Tax Assessor-Collector
432-345-2525
terrell.co.tac@usa.com

**Throckmorton County**
Dianna Moore
Throckmorton County District Clerk
940-849-2501
throckclerk@gmail.com

**Trinity County**
Lindy Warren
Trinity Tax Assessor-Collector
936-642-1637
lindylou54@valornet.com

**Upton County**
Judge Bill Eyler
County Judge
432-693-2321
ucjbill@hotmail.com

**Willacy County**
Hugo Leyva
Willacy Elections Administrator
956-689-2387
elcions.administrator@
co.willacy.tx.us

For more information regarding EICs, including eligibility guidelines and necessary documentation, visit
**http://www.dps.texas.gov/DriverLicense/electionID.htm**

Election Identification Certificates cannot be used for identification purposes other than voting.

DL-14C (Rev. 3/14)

## APPLICATION FOR TEXAS ELECTION IDENTIFICATION CERTIFICATE
### FOR ELECTION PURPOSES ONLY; CANNOT BE USED AS AN IDENTIFICATION CARD

**FOR DEPARTMENT USE ONLY**

ASSIGNED # _____

NOTICE: All information on this application must be completed in INK.

**APPLICANT INFORMATION**

LAST NAME: _____

FIRST NAME: _____

MIDDLE NAME: _____

SUFFIX: _____

MAIDEN NAME: _____

DATE OF BIRTH (mm/dd/yyyy): _____ - _____ - _____

SSN: _____ - _____ - _____

SEX: (Circle One)    Male        Female

EYE COLOR: _____    HAIR COLOR: _____

RACE/ETHNICITY: _____    (I) American Indian/Alaska Native

(A) Asian/Pacific Islander (B) Black (H) Hispanic (O) Other (W) White

HEIGHT: ft. _____ in. _____

WEIGHT: lbs. _____

UNITED STATES CITIZEN:    yes _____    no _____

If you are not a US citizen, you are not eligible for an Election Identification Certificate.

PLACE OF BIRTH: CITY: _____ COUNTY: _____ STATE: _____ COUNTRY: _____

FATHER'S LAST NAME: _____    MOTHER'S MAIDEN NAME: _____

**CONTACT INFORMATION**

HOME PHONE: _____

OTHER PHONE: _____

EMAIL: _____

**ADDRESS INFORMATION**

RESIDENCE ADDRESS: _____

CITY: _____ STATE: _____

ZIP CODE: _____ COUNTY: _____

MAILING ADDRESS: _____

_____

CITY: _____ STATE: _____

ZIP CODE: _____ COUNTY: _____

**INFORMATION REQUIRED FROM ALL APPLICANTS:**

|  | YES | NO | |
|---|---|---|---|
| 1. | ☐ | ☐ | Are you presenting a voter registration card today? |
| 2. | ☐ | ☐ | If not, are you registering to vote? |

By providing my electronic signature, I understand the personal information on my application form and my electronic signature will be used for submitting my voter's registration application to the Texas Secretary of State's office. Wanting to register to vote, I authorize the Department of Public Safety to transfer this information to the Texas Secretary of State.

| 3. | ☐ | ☐ | Do you have a Texas driver license or learner license (unexpired, or expired for no more than 60 days)? |
|---|---|---|---|
| 4. | ☐ | ☐ | Do you have a Texas identification card (unexpired, or expired for no more than 60 days)? |
| 5. | ☐ | ☐ | Do you have a Texas concealed handgun license (unexpired, or expired for no more than 60 days)? |
| 6. | ☐ | ☐ | Do you have a US passport (unexpired, or expired for no more than 60 days)? |
| 7. | ☐ | ☐ | Do you have a US citizenship certificate that contains your photograph? |
| 8. | ☐ | ☐ | Do you have a US military identification card that contains your photograph (unexpired, or expired for no more than 60 days)? |

If answering "yes" to questions 3 through 8, you are not eligible to receive a Texas Election Identification Certificate.

### CERTIFICATION

I do solemnly swear, affirm, or certify that I am the person named herein and that the statements on this application are true and correct.

X_____    Date: _____

### VERIFICATION

Sworn to and subscribed before me this _____ day of _____, _____

Notary Public in and for the State of Texas or Authorized Officer

FRONT

DL-14C (Rev. 3/14)

## Who IS eligible to apply for a Texas Election Identification Certificate?

The department shall issue an election identification certificate upon request to persons who **do not** have one of the forms of acceptable photo identification listed above, and are:

- o A registered voter in Texas and present a valid voter registration, or are eligible to vote and submit a voter registration application to the Department.
- o A United States citizen.
- o A resident of Texas.
- o At least 17 years and 10 months of age.

## Who is NOT eligible to apply for a Texas Election Identification Certificate?

Any persons issued one of the following documents are not eligible for an election identification certificate:

- o Texas driver license (includes occupational license with photograph) – unexpired, or expired less than 60 days.
- o Texas identification card – unexpired, or expired less than 60 days.
- o Texas concealed handgun license – unexpired, or expired less than 60 days.
- o United States military identification card containing the person's photograph.
- o United States passport – unexpired, or expired less than 60 days.
- o United States citizenship certificate containing the person's photograph.
- o Persons who are **not** United States citizens (i.e. permanent residents, asylees, refugees or temporary visitors).

## Section 521A of the Texas Transportation Code states that:

- o An election identification certificate may not be used or accepted as a personal identification certificate.
- o The department may not collect a fee for an election identification certificate or a duplicate election identification certificate issued under this section.
- o The department may require each applicant for an original or renewal election identification certificate to furnish to the department proof of identification and US citizenship.
- o The department may cancel and require surrender of an election identification certificate after determining that the holder was not entitled to, or gave incomplete information in the application for, the election identification certificate.

### SOCIAL SECURITY NUMBER COLLECTION DISCLOSURE

Disclosure of your social security account number is mandatory for driver license applicants, but voluntary for identification card and election identification certificate applicants. This information is solicited pursuant to 42 U.S.C 405(c)(2)(C)(i), 42 U.S.C. 666(a)(13)(A); 49 C.F.R. 383.153, Texas Family Code Section 231.302(c)(1) and Texas Transportation Code Sections 522.021 and 521.142. The Department will use social security account number information for identification purposes and will only release the number to the Child Support Enforcement Division of the Attorney General's Office, the U.S Selective Service Administration, the Texas Secretary of State and the Health and Human Services Commission for statutorily authorized purposes pursuant to Texas Transportation Code Section 521.044.

BACK

# FOR A STEWPOT ID

## YOU <u>MUST</u> PROVIDE ONE OF THE FOLLOWING:

1. BIRTH CERTIFICATE

2. SOCIAL SECURITY CARD

3. SOCIAL SECURITY PRINTOUT

4. GOVERNMENT ISSUED PHOTO ID

5. US PASSPORT

6. FORM DD214

7. PUBLIC SCHOOL RECORDS

8. TEXAS ID/DL TEMPORARY PRINTOUT

9. INFANT BAPTISMAL RECORDS

10. MARRIAGE LICENSE

11. CERTIFICATE FROM EDUCATIONAL INSTITUTION

12. VOTER REGISTRATION CARD

13. US IMMIGRATION/NATURALIZATION DOCUMENT WITH PHOTO

## Verify your identity

Photo IDs issued by government agencies are considered primary documents. Simply show one from the list below to prove your identity:

### Primary Identification Documents

- Texas Driver License or photo ID within two years of expiration
- Unexpired U.S. passport book or passport card
- U.S. Citizenship Certificate or Certificate of Naturalization with identifiable photo (N-560, N-561, N-550, N55G, N-645, N-570 or N-578)
- Unexpired U.S. military photo ID card for active duty, reserve, or retired personnel
- Foreign passport, visa (valid or expired), and I-94
- Unexpired DHS or USCIS photo ID

### Examples:

◊ U.S. Citizen Identification Card (I-179 or I-197)
◊ Valid Permanent Resident Card (I-551)
◊ Temporary I-551 (immigrant visa endorsed with adit stamp) and foreign passport
◊ Temporary Resident Alien Card (I-688)
◊ Employment Authorization Card (I-766)
◊ U.S. Travel Document (I-327 or I-571)
◊ Advance Parole Document (I-512 or I-512L)
◊ I-94 stamped Sec. 208 Asylee with photo
◊ I-94 stamped Sec. 207 Refugee with photo
◊ *Valid Refugee Travel Letter with Photo and stamped by CBP*
◊ American Indian Card (I-872)
◊ Northern Mariana Card (I-873)

If you cannot show a document from the Primary Identification Documents List, you can either present two documents from the Secondary Identification Documents list that follows OR one document from the Secondary Identification Documents list AND two documents from the following Supporting Identification Documents list.

### Secondary Identification Documents

- Original or certified copy of a birth certificate issued by the appropriate State Bureau of Vital Statistics or equivalent agency from a U.S. state, U.S. territory, the District of Columbia, or a Canadian province
- Original or certified copy of the U.S. Dept. of State Certificate of Birth Abroad (issued to U.S. citizens born abroad) – Form FS-240, DS-1350, or FS-545
- Original or certified copy of court order with name and date of birth indicating an official change of name and/or gender from a U.S. state, U.S. territory, the District of Columbia, or a Canadian province

### Supporting Identification Documents

- Social Security card
- Social Security NUMIDENT Record
- Social Security NUMILITE Letter
- Forms W-2 or 1099
- Temporary receipt for a Texas Driver License or ID
- Expired Texas Driver License or ID (expired more than two years)
- Driver License or ID issued by another U.S. state, U.S. territory, the District of Columbia, or Canadian province (unexpired or within two years of the expiration date)*
- Original or certified copy of marriage license or divorce decree (certified translation must accompany foreign language documents)
- Voter registration card*
- Pilot license*
- Concealed handgun license*
- Professional license issued by Texas state agency
- ID card issued by government agency*
- Veteran's Administration card
- School records
- Hospital-issued birth record*
- Consular document issued by a state or national government
- Texas Inmate ID card or similar form of ID issued by TDCJ
- Federal inmate ID card
- TDCJ parole or mandatory release certificate
- Federal parole or release certificate
- Medicare or Medicaid card
- Military records
- Unexpired U.S. military dependent ID card
- Selective Service card
- Immunization records*
- Tribal membership card from federally-recognized tribe
- Certificate of Degree of Indian Blood
- Unexpired foreign passport
- Insurance policy (valid continuously for the past two years)
- Current Texas vehicle title or registration
- Current Texas boat registration or title

\* Document must be issued by an entity from a U.S. state, U.S. territory, District of Columbia, or Canadian province.

That's it! If you still have questions, ask one of our driver license employees. They're here to help you!



Texas Department of Public Safety
5805 North Lamar Blvd.
Austin, Texas 78752-4422
www.dps.texas.gov

DL-57 (4/13)



Do you have what it takes to drive in Texas?

*Know what you need to get a Texas Driver License.*

## Verify that you live in Texas

When applying for your first Texas driver license, you must gather documents to prove you have lived in Texas for at least 30 days. If you are surrendering a valid, unexpired driver license from another state, you must prove your Texas residency but the 30 day requirement is waived. Simply provide two of the following documents that contain your name and Texas residential address:

- Current deed, mortgage, monthly mortgage statement, mortgage payment booklet, or a residential lease agreement
- Valid, unexpired Texas voter registration card; motor vehicle registration or title; boat registration or title
- Concealed handgun license
- Electric, water, natural gas, satellite television, cable television, or non-cellular telephone statement dated within 90 days of the application date
- Selective Service card
- Current homeowners or renters insurance policy or statement
- Current automobile insurance policy or statement
- Texas high school, college, or university report card or transcript for the current school year
- W-2 or 1099 tax form from the current year
- Checking, savings, investment account, or credit card statements dated within 90 days of the application date
- Mail from a federal, state, county, or city government agency dated within 90 days of the application date
- Current automobile payment booklet
- Current documents issued by the U.S. Military indicating resicential address
- TDCJ document indicating applicant's recent release or parole
- Medical or health card
- Pre-printed paycheck or pay stub dated within 90 days of the application date
- Current Form DS2019, I-20, or a document issued by the United States Citizenship and Immigration Services

### Very important:

Both documents cannot be from the same source. For example: you cannot show a water bill and a gas bill from the same utility company. Nor can you show mail that is addressed to you with a forwarding label or address label on the envelope. If you're unable to provide two documents from the list, you may submit a Texas residency affidavit from someone who resides at the same address. Ask a driver license employee for affidavit requirements.

## Verify your citizenship or lawful presence

If you are a U.S. citizen, permanent resident, refugee, or asylee, you must provide one of the following to verify your lawful presence in the United States:

- Birth Certificate issued by appropriate U.S. state, U.S. territory, or District of Columbia
- U.S. passport book or passport card
- U.S. Citizenship Certificate or Certificate of Naturalization with identifiable photo (N-560, N-561, N-550, or N-645)
- U.S. Citizen Identification Card (I-179 or I-197)
- U.S. Dept. of State Certificate of Birth Abroad (for U.S. citizens born abroad)-Form FS-240, DS-1350, or FS-545
- Permanent Resident Card (Form I-551)
- Passport or I-94 stamped "Approved I-551" or "Processed for I-551"
- I-766 Employment Authorization Card
- I-571 Refugee Travel Document
- I-94 stamped Sec. 208 Asylee or Sec. 207 Refuge
- I-327 Reentry Permit
- Machine Readable Immigrant Visa (with temp I-551 language)
- Temporary I-551 Stamp (on Passport or I-94)
- DL2019-Exchange Visitor (J-1) Certificate
- I-20 Nonimmigrant Student (F-1)
- Unexpired foreign passport
- Student documents with Sevis Number
- Non-student documents with Alien Number

## Verify your Social Security Number

If you're applying for a driver license, it's mandatory that you provide your Social Security Number (SSN). If you're applying for an identification card, providing your SSN is voluntary. To prove your SSN, please provide one of the following:

- Social Security card or Social Security NUMIDENT Record
- Forms W-2 or 1099
- Pay stub (with preprinted name and SSN)
- Military ID (active or reserve personnel only)
- Dependent Military ID (with SSN)
- DD-214
- Veteran's administration card (with SSN preprinted)
- Peace officer's license (TCLEOSE)
- Pilot license (with SSN preprinted on card)
- Health Card, Medicare or Medicaid card (with SSN)
- Certified college/university transcript (with SSN)

Pursuant to state and federal law, the department collects and uses SSN information for identification purposes and will only release the number to the Child Support Enforcement Division of the Attorney General's Office, the US Selective Service System, or the Unclaimed Property Division of the Comptroller Office.

Your Texas Department of Public Safety is 100% committed to the security of your identity. That's why we require you to provide information for obtaining your driver license or state identification card, and to swear responsibility to issue a license and ID to you and not someone using your identity for a fraudulent reason.

When applying for a Texas driver license or an identification card, you'll save time and aggravation by making sure you have all the documents you need before starting the application process. Just check all four requirements that allow you and you're good to go.

But first, read this. It's very important.

If you are applying for a commercial driver license or are under age 25, or transferring another out-of-state driver license, you will need to satisfy other requirements, if applicable to get your driver license or identification card. Simply ask a driver license employee or visit www.txdps.state.tx.us learn more.



**CITY OF DALLAS**
Bureau of Vital Statistics
1500 Marilla, Room 1FN
Dallas, Texas 75201
(214) 670-3092

## Identification Requirements

Each registrant must present a valid primary form of photo identification alone with a completed application.  If the registrant is unable to present a valid primary form of photo identification, two valid secondary forms of identification maybe accepted, one of which bearing the registrant's signature.

| Valid Primary Forms of Identification: | Secondary Forms of Identification: |
|---|---|
| • Driver's License | • Social Security Card |
| • Federal/State/County/City ID | • Clinic or Health Insurance Card |
| • Student ID | • Hunting or Fishing License |
| • Military ID | • Library Card |
| • Employment Badge or Card | • School Records |
| • Stewpot ID | • DART Pass |
| • Passport | • Marriage License |
| • Alien Residence Card/VISA | • Parole/Jail Release |
| • DART Reduced ID | • Medicaid / Medicare |
| • Voter Registration (Mexico) | • Sam's Membership ID |
| | • Debit Card w/ Picture |
| | • Paperwork: Lease/Mortgage; Legal Documents; Tax Returns; Check Stubs |
| | • Certificate of Nationalization |
| | • Matricula |



**NOTE:** At the discretion of the Local Registrar, other forms of identification which verifies the name, address, and signature of the registrant (e.g., utility bill, telephone bill, etc) may be accepted.

| Replacement Social Security Card: If client does not have Valid TX ID or DL or Unexpired US Passport | |
|---|---|
| US Military ID | *Marriage Record (certified copy) |
| Certificate of Naturalization | *Medical Record (Clinic, Doctor, Hospital w/name & DOB) |
| Certificate of US Citizenship | *Current Health Insurance/Medicaid Card (name, photo or DOB) |
| US Government Employee ID | *Life Insurance Policy |
| Employee ID/Badge with name & photo or DOB | *Current School ID or School Record (certified copy) |



# HUD's
## HOMELESS ASSISTANCE PROGRAMS



# Defining Chronic Homelessness:
# A Technical Guide for HUD Programs

September 2007

Office of Community Planning and Development
Office of Special Needs Assistance Programs

# Acknowledgements

This guidance material was prepared by the Technical Assistance Collaborative under Contract NYPH-001-03 for the U.S. Department of Housing and Urban Development's Office of Community Planning and Development. This project was carried out in partnership with Policy Research Associates and the Corporation for Supportive Housing.

Cynthia High of the Office of Special Needs Assistance Programs for U.S. Department of Housing and Urban Development's Office of Community Planning and Development is acknowledged for providing the guidance necessary to produce this resource.

All materials in this work are in the public domain and may be reproduced or copied without permission from U.S. Department of Housing and Urban Development. Citation of the source is appreciated. However, this publication may not be reproduced or distributed for a fee without the specific written authorization of the Office of Special Needs Assistance Programs, Office of Community Planning and Development, U.S. Department of Housing and Urban Development.

# Table of Contents

Introduction ................................................................. 1

Housing Programs for the Chronically Homeless .......................... 1

How to Use this Guide.................................................... 1

Technical Guidance ....................................................... 3
   Understanding the Chronic Homeless Definition ...................... 3
   Qualifying Persons with Fluctuating Status........................... 5
   Understanding Special Circumstances................................. 7
   Collecting Necessary Documentation.................................. 8

Templates................................................................ 11

*Technical Guidance: Understanding the Chronic Homeless Definition (cont.)*

## Introduction

This technical guide is intended for non-profit local housing and service providers as well as local government agencies that are under contract with the U.S. Department of Housing and Urban Development (HUD) to provide housing and related support services to the target population of chronically homeless persons. It is intended to answer frequently asked questions pertaining to the federal definition of chronic homelessness and the standards for qualifying persons for housing under this definition. It also provides suggested templates for forms and letters that may assist providers, government agencies, and their local partners in devising internal mechanisms to certify homeless persons for a program for chronically homeless persons.

## Housing Programs for the Chronically Homeless

Since 2003, HUD and other federal agencies joined together to fund four initiatives targeting chronically homeless persons. The first, known as the Collaborative Initiative to Help End Chronic Homelessness, was a $35 million program for housing and support services that combined HUD's resources with funds from the federal Departments of Health and Human Services and Veterans Affairs. HUD went on from this initiative to award $6.5 million in HOME funds to 13 communities for the purpose of creating permanent rental housing for chronically homeless persons.

A third initiative was a partnership, established between HUD and the Department of Labor, which selected five communities to receive funds to simultaneously address the employment issues and housing needs of chronically homeless persons. This program was followed by a fourth initiative known as Housing for People Who Are Homeless and Addicted to Alcohol. For this program, HUD committed $10 million to a dozen pilot programs in 11 cities around the country to support projects designed for chronically homeless persons struggling with chronic alcoholism. In addition to these targeted initiatives, HUD also now actively encourages Continuum of Care communities to develop local strategies to end chronic homelessness. As a result, many new and existing McKinney-Vento permanent housing programs now target chronically homeless persons.

## How to Use this Guide

This guide is intended to be of use to HUD McKinney-Vento grantees and sponsors, targeting chronically homeless persons, who are implementing housing and services for this population. Such grantees may also find it useful to share this guide with local homeless service providers who are asked to supply documentation verifying the eligibility of homeless persons. The templates included in this guide may also be useful to both grantees and their partners in the emergency shelter community. These templates may be adopted in the form presented here or modified to suit individual program needs. Note that these are not official HUD forms but, rather, suggestions for what information may be

*Technical Guidance: Understanding the Chronic Homeless Definition (cont.)*

useful to collect and for how the information may be organized to assist grantees in accurately assessing clients and reporting program results.

# HUD's
## HOMELESS ASSISTANCE PROGRAMS



# Defining Chronic Homelessness:
# A Technical Guide for HUD Programs

September 2007

Office of Community Planning and Development
Office of Special Needs Assistance Programs



# Acknowledgements

This guidance material was prepared by the Technical Assistance Collaborative under Contract NYPH-001-03 for the U.S. Department of Housing and Urban Development's Office of Community Planning and Development.  This project was carried out in partnership with Policy Research Associates and the Corporation for Supportive Housing.

Cynthia High of the Office of Special Needs Assistance Programs for U.S. Department of Housing and Urban Development's Office of Community Planning and Development is acknowledged for providing the guidance necessary to produce this resource.

All materials in this work are in the public domain and may be reproduced or copied without permission from U.S. Department of Housing and Urban Development. Citation of the source is appreciated. However, this publication may not be reproduced or distributed for a fee without the specific written authorization of the Office of Special Needs Assistance Programs, Office of Community Planning and Development, U.S. Department of Housing and Urban Development.

# Table of Contents

Introduction ................................................................ 1

Housing Programs for the Chronically Homeless ........................... 1

How to Use this Guide.................................................... 1

Technical Guidance ....................................................... 3
   Understanding the Chronic Homeless Definition ....................... 3
   Qualifying Persons with Fluctuating Status............................ 5
   Understanding Special Circumstances................................. 7
   Collecting Necessary Documentation................................. 8

Templates................................................................ 11

*Technical Guidance: Understanding the Chronic Homeless Definition (cont.)*

## Introduction

This technical guide is intended for non-profit local housing and service providers as well as local government agencies that are under contract with the U.S. Department of Housing and Urban Development (HUD) to provide housing and related support services to the target population of chronically homeless persons. It is intended to answer frequently asked questions pertaining to the federal definition of chronic homelessness and the standards for qualifying persons for housing under this definition. It also provides suggested templates for forms and letters that may assist providers, government agencies, and their local partners in devising internal mechanisms to certify homeless persons for a program for chronically homeless persons.

## Housing Programs for the Chronically Homeless

Since 2003, HUD and other federal agencies joined together to fund four initiatives targeting chronically homeless persons. The first, known as the Collaborative Initiative to Help End Chronic Homelessness, was a $35 million program for housing and support services that combined HUD's resources with funds from the federal Departments of Health and Human Services and Veterans Affairs. HUD went on from this initiative to award $6.5 million in HOME funds to 13 communities for the purpose of creating permanent rental housing for chronically homeless persons.

A third initiative was a partnership, established between HUD and the Department of Labor, which selected five communities to receive funds to simultaneously address the employment issues and housing needs of chronically homeless persons. This program was followed by a fourth initiative known as Housing for People Who Are Homeless and Addicted to Alcohol. For this program, HUD committed $10 million to a dozen pilot programs in 11 cities around the country to support projects designed for chronically homeless persons struggling with chronic alcoholism. In addition to these targeted initiatives, HUD also now actively encourages Continuum of Care communities to develop local strategies to end chronic homelessness. As a result, many new and existing McKinney-Vento permanent housing programs now target chronically homeless persons.

## How to Use this Guide

This guide is intended to be of use to HUD McKinney-Vento grantees and sponsors, targeting chronically homeless persons, who are implementing housing and services for this population. Such grantees may also find it useful to share this guide with local homeless service providers who are asked to supply documentation verifying the eligibility of homeless persons. The templates included in this guide may also be useful to both grantees and their partners in the emergency shelter community. These templates may be adopted in the form presented here or modified to suit individual program needs. Note that these are not official HUD forms but, rather, suggestions for what information may be

useful to collect and for how the information may be organized to assist grantees in accurately assessing clients and reporting program results.

*Technical Guidance: Understanding the Chronic Homeless Definition (cont.)*

## Technical Guidance

## Understanding the Chronic Homeless Definition

1. *What is the Federal government's definition of a chronically homeless person?*

   HUD adopted the Federal definition which defines a chronically homeless person as "either (1) an unaccompanied homeless individual with a disabling condition who has been continuously homeless for a year or more, OR (2) an unaccompanied individual with a disabling condition who has had at least four episodes of homelessness in the past three years." This definition is adopted by HUD from a federal standard that was arrived upon through collective decision making by a team of federal agencies including HUD, the U.S. Department of Labor, the U.S. Department of Health and Human Services, the U.S. Department of Veterans Affairs, and the U.S. Interagency Council on Homelessness.

2. *What is meant by "homeless" in the definition of chronically homeless?*

   In its definition of a chronically homeless person, HUD defines the term "homeless" as "a person sleeping in a place not meant for human habitation (e.g. living on the streets, for example) OR living in a homeless emergency shelter."

3. *Does a homeless person who is applying to our program need to satisfy both of the time framed criteria, described above in question # 1, that define an individual as chronically homeless?*

   No. The homeless person must meet only one or the other of the two time framed criteria that make up the definition.

4. *If a homeless person applying for assistance was housed in various settings between episodes of homelessness, could they qualify for assistance?*

   Yes. An individual qualifying under the second criteria of the definition need not have moved between conventional housing and homelessness. Applicants may have spent time anywhere in between episodes of homelessness that could include medical settings, residential treatment programs, other kinds of institutions, transitional housing, supportive housing, and/or correctional institutions.

5. *If a homeless person who is applying to our program has had four episodes of homelessness, does it matter where they are when they seek our housing?*

   Yes. As stated in question #2, the homeless person must be sleeping in a place not meant for human habitation (such as living on the street) or living in a homeless emergency shelter at the time of entry into the HUD housing for chronically

3

*Technical Guidance: Understanding the Chronic Homeless Definition (cont.)*

homeless persons.  For example, a qualified homeless person might have the following type of history in the last three years: (1) leaves housing for a homeless shelter, (2) moves in with a friend or family member and leaves again for a homeless emergency shelter, (3) goes to jail and is released to living on the street, (4) goes back to the friend or family member's house and leaves to move into a homeless emergency shelter. Importantly, this homeless person will enter the HUD housing program for chronically homeless persons from a state of homelessness (i.e. in a homeless emergency shelter) as is required.

6.  *What is meant by an "episode" of homelessness?*

An episode of homelessness is "a separate, distinct, and sustained stay on the streets and/or in a homeless emergency shelter." HUD requires that "a chronically homeless person must be unaccompanied and disabled during each episode."

7.  *What is meant by an emergency shelter?*

An emergency shelter is "any facility the primary purpose of which is to provide temporary or transitional shelter for the homeless in general or for specific populations of the homeless" (24 CFR Ch.V (4-1-05) 576.3). Although this definition includes the term transitional shelter, persons coming from transitional housing are not considered chronically homeless.

8.  *What is meant by "disabling condition" in the chronically homeless definition?*

A disabling condition is defined as "a diagnosable substance abuse disorder, a serious mental illness, developmental disability, or chronic physical illness or disability, including the co-occurrence of two or more of these conditions." In addition, "a disabling condition limits an individual's ability to work or perform one or more activities of daily living." (*Questions and Answers: A Supplement to the 2006 Continuum of Care Homeless Assistance NOFA and Application*; p.7).

9.  *Can homeless people who are applying to our program be accompanied by children and can couples qualify as chronically homeless?*

No. The homeless person must be an "unaccompanied homeless person" which means an individual such as "a single homeless person who is alone and is not part of a homeless family and not accompanied by children."

4

## Qualifying Persons with Fluctuating Status

1. *Is it possible to direct certain homeless people, who have been qualified as chronically homeless, towards a short term stay in a facility providing substance abuse and/or psychiatric or medical treatment with the objective of stabilizing them and increasing the likelihood of their success in permanent housing?*

   Yes. Under these or other similar circumstances, it is possible to direct qualified participants to short term treatment to precede housing placement. In general, HUD's chronically homeless initiatives and programs may not require that all clients participate in such interim treatment. However, on a case by case basis, if persons are identified who would benefit from this service, it may be recommended to them as a first step. Participants who decline such interim placement would still proceed directly towards identifying permanent housing. Participants who comply with the recommendation are considered enrolled in the program while in treatment which may not exceed 90 days. Upon completion of treatment, the participant should move directly into a permanent housing unit.

2. *If a qualified chronically homeless person is referred to short term treatment, how do we reconcile HUD's requirement that new clients enter our program from a state of homelessness?*

   A chronically homeless person, who chooses to start off participation in your program with a preliminary stay in short term treatment, would first be formally "entered" into the chronically homeless program prior to this placement. This participant would retain the status of having "entered" into the program while in interim treatment.

3. *If a qualified chronically homeless person applying to our program enters short term treatment, to what extent should we engage in the housing search and placement process for such an individual?*

   A participant who has been entered into your program and is temporarily in short term treatment should exit such a program directly into an identified housing unit to avoid the consequences of yet another episode of homelessness. Given this imperative, it may be necessary, in some cases, to hold a unit for a short period of time, not to exceed 90 days, to assure the participant's seamless transition from treatment to housing.

4. *What if a homeless person who was chronically homeless for one full year and has the documentation to substantiate it, moved into a transitional housing program? Now that same person is applying for our program of permanent housing targeted to the chronically homeless. Does this person qualify?*

No. To be defined as chronically homeless, a person must be living on the street or in a homeless emergency shelter at the time of eligibility determination. The definition does not include those currently in transitional housing. Persons coming from transitional housing are not considered chronically homeless.

5. *What if an individual was qualified as chronically homeless and entered a different HUD-funded permanent housing program? Can that person hold onto that chronically homeless status and apply to our program?*

No. An individual who enters other HUD funded permanent housing, as with transitional housing, is no longer considered chronically homeless.

## Understanding Special Circumstances

*1. Is it acceptable for a homeless person applying to our program to have been incarcerated in between episodes of homelessness?*

Yes. A homeless person who experienced incarceration or repeated incarcerations in between four episodes of homelessness over three years could be eligible provided that the person was living on the street or in a homeless emergency shelter at the time he/she is being evaluated for intake.

*2. Can we accept someone who is applying to enter our program directly from a correctional institution?*

No. Clients must be homeless, as per HUD's definition, at the time they enter the program.

*3. Can we accept someone who is applying to enter our program directly from a medical institution?*

No. Clients can not be in any kind of institution including medical facilities nor can they be in housing at the time they enter the program.

*4. What if a chronically homeless person was hospitalized and then released to a temporary placement in a motel for medical reasons which made placement in conventional shelter unsafe for the person? Could the stay in the motel constitute an episode of homelessness?*

If the medical institution could provide documentation that the motel was being used as a homeless emergency shelter for this person, this homeless person could be considered eligible if the other aspects of the homeless history were also documented.

*5. What if a homeless person applying for assistance is very nearly qualified but does not fit all aspects of the chronic homeless definition precisely such as someone who was on the streets for the last 11 months and was also homeless on and off for the last several years but not quite fitting either pattern in the definition of chronically homeless persons?*

Qualified homeless persons must meet HUD's definition of chronically homeless. However, persons who do not quite qualify at the outset of engagement with your program for reasons of time may, in fact, be determined eligible once the application process, which may take a period of weeks or more, is complete and the necessary time has elapsed. The documentation of eligibility must be completed before the homeless person enters the program.

7

*Technical Guidance: Collecting Necessary Documentation (cont.)*

## Collecting Necessary Documentation

1. *What is required in the way of documentation of chronic homelessness?*

   For each person applying to the program, written documentation must be provided by an appropriate Third Party that verifies the person's status as chronically homeless. This documentation must be kept in each participant's case record file. A recommended template for a Checklist for gathering and analyzing all necessary documentation associated with chronic homelessness is provided in this guide.

2. *What constitutes an appropriate Third Party for evidencing the chronic homeless status of persons applying to our program?*

   Letters may be written and signed by either homeless shelter providers, homeless outreach workers, or other homeless service providers such as Health Care for the Homeless. Alternatively, a local Homeless Management Information System (HMIS) can be called upon to supply a printout of an individual's history in a local homeless service continuum. This printout may be substituted for a letter from a homeless provider.

3. *Would a letter from another kind of community-based human service agency suffice as evidence of chronic homelessness?*

   In the absence of a homeless service provider who can account for an individual's history, letters may be supplied by other human service entities such as food pantries, social workers, outreach workers, health workers, law enforcement, hospitals, medical clinics, and churches.

4. *What must letters from appropriate Third Parties contain?*

   Such Third Party letters and HMIS printouts must be on letterhead stationery and contain the full name of the client. Letters must include dates verifying the timeframe of homelessness including both a start date and completion date. Letters should also be signed by a staff member whose title appears on the letter. It is also helpful to request that such letters include information pertaining to the whereabouts of the person prior to engaging with this provider and, if applicable, after having left. When available, this additional information can be helpful in completing the record of the person's homelessness. A recommended template for the contents of a Third Party letter is provided in this guide.

5. *What if there is a gap in the Third Party documentation for which only the homeless person applying to our program can attest?*

   In the absence of complete documentation from an appropriate Third Party and/or an HMIS printout, the homeless person may sign a Self-Statement, also known as a personal affidavit, attesting to his/her own whereabouts, history, and chronic homelessness status. Such a statement must have the same contents as Third Party

*Technical Guidance: Collecting Necessary Documentation (cont.)*

letters including dates, locations, a signature, and the full name of the homeless person. Those who can not write or compose their own letters may dictate them and provide their own mark or signature. These Self-Statements should also be signed by a staff member who witnessed the person create the document. A recommended template for the contents of a Self-Statement is provided in this guide.

6.   *Is a Self-Statement in and of itself ever sufficient documentation?*

Generally, Self-Statements are to be used to fill in the gaps in the record of homelessness when certain periods of time can not be accounted for and documented by a Third Party. If all other efforts to obtain Third Party documentation have been exhausted and unsuccessful for a particular person, a Self-Statement may be used in the absence of any other documentation. However, this should be a relatively rare exception to the composition of most homelessness records for your program participants.

7.   *What is the best strategy for obtaining documentation from a Third Party?*

Many homeless service providers are familiar with requests for letters documenting homelessness and may have their own internal form letter for such inquiries. However, homeless providers are relatively unfamiliar with the need to capture specific dates and the time frame of repeat visits to their program. Therefore, it is recommended that these parties be supplied a template letter to ensure the documentation is sufficient and consistent. Conducting outreach and training within a local homeless service network about chronic homeless documentation may also improve upon the readiness of providers to evidence the chronically homeless status.

8.   *Can staff members of the organization that sponsors the housing for chronically homeless persons qualify persons themselves based on internal knowledge and information gathering?*

No. The supporting documentation must be provided by an appropriate Third Party. However, if a chronically homeless organization is also the provider of a homeless service, such as emergency shelter or street outreach, then an authorized staff person from the emergency component of the same organization can, in fact, be considered a Third Party and may provide and sign the letter.

9.   *Is it acceptable to combine multiple letters and Self-Statements to complete documentation of chronic homelessness for one person?*

Yes. Expect that a record of chronic homelessness will be pieced together from several sources including Third Party Letters, HMIS printouts, and Self-Statements. Records with multiple sources are most likely to be needed when evidencing four episodes of homelessness in three years.

*Technical Guidance: Collecting Necessary Documentation (cont.)*

10. *What if the shelter or homeless provider organization submits letters outlining the person's history that conflict with one another?*

A homeless person's file should contain an accurate account of the person's history of homelessness. If Third Party Letters conflict with one another, one or more of these documents may need clarification. In such cases, a series of communications may be required with the parties who are providing the supporting documentation to clarify the history. Expectations of staff time needed to complete applications and eligibility assessments should reflect this common need for multiple phone calls, other communications, and corrections to documents.

11. *What if a homeless person applying to our program has an accounting of their episodes of homelessness but can not supply certain pieces of information on where they resided intermittently between the four episodes?*

A homeless person who can not provide complete information about their specific whereabouts, such as an address or the name of a homeless shelter, during certain parts of their homeless history can explain the lack of information in a Self-Statement. The Statement should present the reason for the lack of information, such as an illness, that impedes a homeless person's ability to remember the missing information.

12. *What if a homeless person does not recollect the specific dates of episodes of homelessness in their history?*

Homeless persons with conditions and diagnoses that impede their ability to recall certain dates related to their history can be assisted in reviewing the chronology of their experiences with homelessness and making best guesses at approximate time frames and specifics of locations that are their best recollection. The Self-Statements in their record should contain these specific dates and locations together with an explanation of the reason for the need to approximate this information.

13. *What specific documentation is required to substantiate a homeless person's disability?*

Written documentation to substantiate that a homeless person's disability meets the program definition must come from a qualified source such as a credentialed psychiatrist or other professional certified to make such a determination.

## Templates

Chronically Homeless Qualification Checklist            Page 12

Chronically Homeless Third Party Verification Sheet     Page 13

Chronically Homeless Self-Statement Certification       Page 15

Chronically Homeless History Summary Sheet             Page 16

## Chronically Homeless Qualification Checklist

**Instructions:** This suggested checklist may be used as a guide for staff of a program serving chronically homeless persons to assure that participants meet program regulation eligibility. It should be accompanied by supporting documentation of both disability and homelessness. Together, these documents must be maintained in the client's file.

Client Name:_____

HUD defines a Chronically Homeless person as: an unaccompanied homeless person (a single homeless person who is alone and is not part of a homeless family and not accompanied by children) with:

### Part I. A Disabling Condition. *Check appropriate box(es):*

☐ A diagnosable substance abuse disorder
☐ A serious mental illness
☐ A developmental disability
☐ A chronic physical illness or disability, including the co-occurrence of two or more of these conditions.

Part I is supported by a letter from a medical professional attesting to the presence of the condition.

☐ Yes
☐ No

### Part II. Chronically Homelessness Status. *Check ONE:*

☐ Has been continuously homeless for a year or more.
  *(HUD defines "homeless" as "a person sleeping in a place not meant for human habitation (e.g. living on the streets for example) OR living in a homeless emergency shelter.)*
☐ Has had <u>four</u> (4) episodes of homelessness in the last <u>three</u> (3) years.
  *(HUD defines "homelessness" as "sleeping in a place not meant for human habitation (e.g. living on the streets for example OR living in a homeless emergency shelter.)*

Part II is supported by Third Party Certification, which includes dates and locations of homelessness, from one or more of the following: *Check ALL that apply*

☐ Certification letter(s) from an emergency shelter for the homeless.
☐ Certification letter(s) from a homeless service provider or outreach worker.
☐ Certification letter(s) from any other health or human service provider.
☐ Certification Self-Statement signed by the client.

Staff Name: _____   Staff Title: _____

Organization: _____

Signature: _____   Date: _____

12

## Chronically Homeless Third Party Verification - pg. 1

**Instructions:** This suggested template may be sent to homeless service providers requesting their verification of the chronically homeless status of an individual known to them. This template letter may be copied onto letterhead or recreated with the same content and printed on letterhead.

Date:_____

To:

_____

_____

_____

Dear _____,

_____ has applied to receive the services of a McKinney-Vento funded program serving chronically homeless persons. To qualify, the homeless person must be determined to be chronically homeless as defined by the U.S. Department of Housing and Urban Development. Please complete this certification and fax it to my attention as soon as possible at the following **fax number:** (_____)_____.

This information will be used for the purpose of determining the chronic homeless status of the above-named homeless person. If you have any questions please do not hesitate to contact me at the following **telephone number:** (_____)_____.

Sincerely,

_____          *I hereby authorize the release of the requested*
(Signature)                                  *information.*

_____          _____
(Title)                                     (Signature of Client)

13

## Chronically Homeless History Summary

**Instructions:** This Homelessness History Summary provides a suggested timeline to be used by grantees who receive funds for programs targeted to chronically homeless persons. It may be used to analyze whether or not the chronology of a homeless person's history meets the time frame for the definition of chronic homelessness.

Client:_____

| Time Period | | Whereabouts | Documented? |
|---|---|---|---|
| *Example: Jan.1, 2005* | *Aug. 5, 2005* | *Lifeline Shelter, Cleveland* | Yes  No |
| | | | Yes / No |
| | | | Yes  No |
| | | | Yes  No |
| | | | Yes  No |
| | | | Yes  No |
| | | | Yes  No |
| | | | Yes  No |
| | | | Yes  No |

This summary indicates that the client: ___ is chronically homeless ___ is not chronically homeless.

Staff Name:_____ Staff Title:_____

Organization:_____ Date:___ ___ ___

16

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the
Southern District of Texas

| | |
|---|---|
| Veasey, et al. | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) Civil Action No.   2:13-cv-193 (NGR) [Lead Case] |
| Perry, et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Reverend Bruce Buchanan
The Stewpot, Community Ministries, First Presbyterian Church, 1822 Young Street, Dallas, TX 75201
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: The Office of the Texas Attorney General, 1412 Main Street, Suite 810, Dallas, Texas 75202 | Date and Time: 07/15/2014 9:30 am |
|---|---|

The deposition will be recorded by this method:   Stenographic means.  The deposition may be videotaped.

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/07/2014

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | /s/ John B. Scott |
| | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   The State of Texas, Rick Perry, Texas Secretary of State, and Steve McCraw                              , who issues or requests this subpoena, are:
John B. Scott, Deputy Attorney General for Civil Litigation, 209 West 14th Street, P.O. Box 12548, Austin, TX 78711, John.Scott@texasattorneygeneral.gov; (512) 475-0131

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   2:13-cv-193 (NGR) [Lead Case]

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*

                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

1 primary doc

or

2 secondary & 2 supporting

plus

residency doc
for Tx
for US
Social Sec

2014 bud
ask - bc
vital record

$35 - state ID

2015 - 4864

2 Secondary                AA - 926
                           car - 38

                           Manual 83

Stewart
1 doc

financial      loose 10      bad eyesight
pri doc        Transp in     can't read
process        Work          (on essue
                             bud.)