IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *et al.*,

        Plaintiffs,

    v.

RICK PERRY, *et al.*,

        Defendants.

Civil Action No. 2:13-cv-193 (NGR)

## UNITED STATES' NOTICE OF RULE 30(B)(6) DEPOSITION OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY AND REQUEST FOR DOCUMENTS RELIED UPON BY 30(b)(6) DESIGNEES

Pursuant to Federal Rules of Civil Procedure 26 and 30(b)(6), the United States gives notice that it will take the deposition by oral examination of the Department of Public Safety, testifying through one or more individuals designated by the Department of Public Safety to testify on its behalf, concerning the matters for examination listed on Exhibit A to this Notice on July 30, 2014 at 9am at a mutually agreeable location in Austin, Texas.

The Department of Public Safety shall identify the specific subject matters (listed on Exhibit A to this Notice) upon which each designated individual will testify. The person or persons designated as deponents shall be prepared to testify as to matters within their knowledge and as to matters known by or reasonably available to the Department of Public Safety. This notice serves to inform the Department of Public Safety that it has a duty to make such designation.

The United States further requests that the Department of Public Safety produce **via email by close of business on July 29, 2014**, any and all documents that the Department of

2:13-cv-193
09/02/2014
DEF0247
www.exhibitsticker.com



Public Safety's designee or designees relied on to prepare for testimony as to matters within their knowledge and as to matters known by or reasonably available to the Department of Public Safety. For the purpose of this Rule 30(b)(6) deposition, "document" is defined to be synonymous in meaning and scope as the term "document" is used under Federal Rule of Civil Procedure 34 and the phrase "writings and recordings" is defined in Federal Rule of Evidence 1001, and includes any printed or handwritten material and any form or medium of electronically stored information, as well as all non-identical copies or drafts thereof and all copies bearing any notation or mark not found on the original.

This deposition will be recorded by stenographic means, conducted before an individual authorized to administer oaths, and used for any purpose permitted under the Federal Rules of Civil Procedure or court order, including as record evidence in any future proceedings.

Date: July 24, 2014


KENNETH MAGIDSON
United States Attorney
Southern District of Texas

JOHN A. SMITH III
Assistant United States Attorney
800 N. Shoreline, Suite 500
Corpus Christi, Texas 78401
(361) 903-7926

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

*/s/ Anna M. Baldwin*
T. CHRISTIAN HERREN, JR.
RICHARD A. DELLHEIM
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

3

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2014, I served a true and correct copy of the foregoing via electronic mail on the counsel of record in this case.

> */s/ Anna M. Baldwin*
> ANNA M. BALDWIN
> U.S. Department of Justice
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C. 20530
> Anna.baldwin@usdoj.gov

## EXHIBIT A

## TO UNITED STATES' NOTICE OF RULE 30(b)(6) DEPOSITION OF DEPARTMENT OF PUBLIC SAFETY
### Topics for Examination

1. The contents and underlying facts regarding the July 22, 2014 declaration of John W. Crawford of the Texas Department of Public Safety ("DPS").

2. The programming code (including its use, contents, and creation) used to generate the January 15, 2014 DPS database extract previously produced in this litigation.

3. Any quality control steps applied with respect to the creation and use of the code referenced in paragraph 2, as well as any quality control steps taken with respect to ensuring the completeness of the January 15, 2014 DPS database extract previously produced in this litigation.

4. All communications and events leading to the discovery of any programming or data extraction error(s) with respect to the January 15, 2014 DPS database extract previously produced in this litigation, including when and how any such error(s) were discovered.

5. The programming code (including its use, contents, and creation) used to generate the DPS database extract produced in this litigation on July 23, 2014.

6. Any quality control steps applied with respect to the creation and use of the code referenced in paragraph 5, as well as any quality control steps taken with respect to ensuring the completeness of the DPS database extract produced on July 23, 2014.

7. The contents and structure of the DPS database extract file produced on July 23, 2014 (including the total number of records and fields provided).

8. The reasons why a Texas driver license could be marked with any one of the following card statuses:

   - Purged
   - Revoked Sex Offender
   - Voluntary Surrender
   - Voluntary Surrender CSO
   - Denied Texas Limb Waiver

5

- Denied Texas Vision Waiver
- Expired Limb Waiver
- Expired Vision Waiver
- Ignition Interlock Required
- Limb Waiver Needed
- Required Downgrade
- Restriction Requires Review
- Verify Issue Former State
- Vision Waiver Needed
- Voluntary Surrender Insurance
- Voluntary Surrender Medical
- Returned by Post Office
- Items Surrendered
- Documents Needed

9. For each card status listed in paragraph 8, whether a Texas driver license remains in the possession of the license holder or is returned to DPS when a license is marked with such a card status, as well as whether the license remains valid when marked with such a status.

10. For each card status listed in paragraph 8, all reasons why such a status could later be removed.

11. For Texas driver licenses that at one time had one of the card statuses listed in paragraph 8, and then later had that status removed, whether and how the actual physical driver license is provided to the individual driver after removal of the card status.

12. The reasons why a Texas personal ID card could be marked with any one of the following card statuses:

- Purged
- Revoked Sex Offender
- Voluntary Surrender CSO
- Returned by Post Office
- Items Surrendered
- Documents Needed

13. For each card status listed in paragraph 12, whether a Texas personal ID card remains in the possession of the ID card holder or is returned to DPS when it is marked with such a card status, as well as whether the ID card remains valid when marked with such a status.

6

14. For each card status listed in paragraph 12, all reasons why such a status could later be removed.

15. For Texas personal ID cards that at one time had one of the card statuses listed in paragraph 12, and then later had that status removed, whether and how the actual physical ID card is provided to the individual ID holder after removal of the card status.

16. The frequency of updates to, and relative completeness of, data contained in the card status and card status remove date fields.

17. The criteria for any records that were included in the July 23, 2014 DPS database extract and would also have been included in a properly created version of the January 15, 2014 DPS database extract.

18. The criteria for any records that are included in the July 23, 2014 DPS database extract but would not have been included in a properly created version of the January 15, 2014 DPS database extract.

19. The circumstances, if any, under which more than one record is created in the DPS driver license database for the same license or same personal ID card.

20. The circumstances, if any, under which any of the records provided in the July 23, 2014 DPS database extract are duplicated elsewhere in the DPS database.

21. The manner in which DPS uses its driver license database (if at all) to calculate 1) the total number of current and validly licensed drivers holding a Texas driver license; 2) the total number of persons holding a current and valid Texas personal ID card; and 3) the total number of persons holding both a license and personal ID card.

22. Any differences between the manner in which the January 15, 2014 DPS database extract was generated, particularly with respect to the total universe of records provided, and the manner in which the DPS database extract that was produced in *Texas v. Holder* (D.D.C.) was generated, again particularly with respect to the total universe of records extracted for production.

23. Any information regarding how many of the records provided in the July 23, 2014 DPS database extraction reflect persons who actually have in their possession a current and valid Texas driver license or Texas personal ID card.

7