(b)(13), which addresses the purchase of publicly traded fixed income securities. The adopted amendment increases the ability to make the best investments for the PSF.

The adopted amendment has no procedural and reporting implications. The adopted amendment has no locally maintained paperwork requirements.

The Texas Education Agency determined that there is no direct adverse economic impact for small businesses and microbusinesses; therefore, no regulatory flexibility analysis, specified in Texas Government Code, §2006.002, is required.

In accordance with the Texas Education Code, §7.102(f), the SBOE approved the amendment by a vote of two-thirds of its members to specify an effective date earlier than the beginning of the 2014-2015 school year. The earlier effective date is necessary because fixed income markets are experiencing significant changes as a number of corporations and agencies that issue debt are requesting ratings from only one of the three major U.S. bond ratings firms. This limits the investable opportunity set in fixed income securities particularly as it relates to the primary markets where bonds are issued at a significant concession to existing debt. The effective date for the amendment is 20 days after filing as adopted.

The SBOE took action to approve the amendment for second reading and final adoption during its September 20, 2013, meeting.

Following is a summary of the public comment and corresponding response regarding the proposed amendment to 19 TAC §33.25.

Comment: NEPC commented that TEA staff had requested NEPC to evaluate the proposed amendment to 19 TAC §33.25. NEPC noted that the proposed amendment is similar to that of the Barclay's Capital U.S. Aggregate Bond Index. NEPC also noted that although the language appears to be more restrictive relative to Texas PSF peers, NEPC would encourage a deeper look into internal resources, staff capabilities, and guidelines if the performance objectives of the portfolio were to take on a separate "relative peer comparison" objective. At the present, however, NEPC recommended that the SBOE approve the amendment as published as proposed.

Response: The SBOE agrees that the proposed amendment establishes appropriate criteria for investment grade quality and took action to approve the amendment as published as proposed.

The amendment is adopted under the Texas Education Code, §7.102(c)(31), which authorizes the State Board of Education to invest the Permanent School Fund within the limits of the authority granted by the Texas Constitution, Article VII, §5, and the Texas Education Code, Chapter 43; and the Texas Constitution, Article VII, §5, which authorizes the SBOE to manage the assets of the PSF.

The amendment implements the Texas Education Code, §7.102(c)(31), and the Texas Constitution, Article VII, §5(f).

This agency hereby certifies that the adoption has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on October 1, 2013.

TRD-201304331

Cristina De La Fuente-Valadez
Director, Rulemaking
Texas Education Agency
Effective date: October 21, 2013
Proposal publication date: August 16, 2013
For further information, please call: (512) 475-1497

♦ ♦ ♦

# TITLE 25. HEALTH SERVICES

## PART 1. DEPARTMENT OF STATE HEALTH SERVICES

## CHAPTER 181. VITAL STATISTICS
## SUBCHAPTER B. VITAL RECORDS

### 25 TAC §181.22

The Executive Commissioner of the Health and Human Services Commission (HHSC), on behalf of the Department of State Health Services (department), adopts an amendment to §181.22, concerning the waiver of a fee for a certified record with changes to the proposed text as published in the August 23, 2013, issue of the *Texas Register* (38 TexReg 5416).

BACKGROUND AND PURPOSE

Health and Safety Code, §191.0045, authorizes the Executive Commissioner of the Health and Human Services Commission to adopt administrative rules that prescribe a schedule of fees for vital statistics services performed by the Bureau of Vital Statistics of the department. This statute also requires a local registrar or county clerk who issues a certified copy of a birth record to charge the same fee as the Bureau of Vital Statistics.

Section 181.22 currently prescribes fees for the production of certified copies of birth records. Under 37 TAC §15.182, Department of Public Safety (DPS) rules, an individual who applies for an Election Identification Certificate (EIC) issued by the DPS pursuant to Transportation Code, Chapter 521A, may be required to produce an original or certified copy of a birth record. The cost of a certified birth record would be paid by the person who is required to produce a certified copy for the purpose of obtaining an EIC.

The amendment waives the fees charged under §181.22 for a certified copy of a birth record for an individual who requires a certified copy in order to obtain an EIC. The waiver applies to an individual who requests a certified copy from the department, a local registrar, or a county clerk.

The DPS reports that, as of the publication date of this proposed amendment, fewer than twenty individuals statewide have been issued an EIC. Accordingly, the department believes that the proposed amendment will not significantly affect fees and charges otherwise assessed and collected by local registrars and county clerks under §181.22.

SECTION-BY-SECTION SUMMARY

The amendment to §181.22 stipulates the requirements for waiver of fees associated with obtaining an EIC pursuant to the Transportation Code, Chapter 521A.

COMMENTS

True the Vote and Disability Rights Texas submitted comments in favor of the rule as written, noting that the rule would remove

2:13-cv-193
09/02/2014
DEF0356

Exhibit 108
Farinelli
Date 5/9/14
Melody Campbell, CSR

financial obstacles to individuals who are required to get an EIC to be eligible to vote. Disability Rights Texas expressed concerns about the proposed timeline for adoption stating that it was not proposed to be implemented in time for persons to obtain their birth certificate and EIC before the November 2013 elections.

Response: The department appreciates the comments. To ensure the rule becomes effective in time for the November 2013 elections, the department is ensuring the rule will be effective on October 21, 2013.

The department received comments from several county judges, county attorneys, city, county and district clerks, local registrars, other local and state officials, the County and District Clerks' Association of Texas, and the Texas Conference of Urban Counties. The commenters are opposed to the proposed rule but provided suggestions to address their concerns. These commenters also expressed support of efforts to improve voter access. The department appreciates this input and intends to implement several of the suggestions as it operationalizes the rule change.

The comments fall into four general categories: (1) the cost of the rule change to local registrars and counties; (2) potential fraud, security risks, and identity theft; (3) the availability of alternative forms of identification; and (4) general comments.

Comments concerning Cost:

Several commenters expressed concerns about the potential fiscal impact of the proposed rule: i.e., the cost of security paper required for certified birth certificates, costs relating to staff resources and training needed to process the birth certificates, and the loss of county revenue. Several commenters regarded the rule change as an unfunded mandate and requested that the department process all requests subject to this rule or waive fees associated with the remote access system and other fees set forth in statute. Some commenters suggested that plain paper be used or other forms of verification in lieu of certified birth records on security paper as a way to reduce negative fiscal impact.

Response: The department believes that, based on reports by the DPS that fewer than 20 persons have requested EICs statewide, the cost to local registrars and counties to comply with the rule will be de minimis. The department believes that, to the degree it may reasonably exercise discretion over the matter, cost should not prevent anyone from obtaining an EIC who wants one. The department likewise is committed to working with local officials to ensure that their costs do not unreasonably increase and that local revenues are not negatively impacted by this rule. To ensure that a person anywhere in Texas who needs a certified copy of a birth certificate for the purpose of obtaining an EIC can do so conveniently and promptly, the department believes that it is essential that a person receive the opportunity to obtain a certified copy, with the fees waived under this rule, from as many sources as possible, including from the department and from local registrars and county clerks.

Regarding fees, the fee for use of the remote access system ($1.83/accessed record) will not be charged to local registrars and county clerks who use that system for birth certificates issued for purposes of an EIC under this rule. The fees required to be paid pursuant to Health and Safety Code, §191.0045(e) and §191.022(f) ($2.00) are statutorily required and are not waived by this rule. Language has been included in the adopted rule to clarify this point.

Regarding the costs of security paper, the department appreciates the concerns and is examining alternatives to the requirement. However, these potential costs result from the DPS requirement that an applicant for an EIC produce an original or certified copy of a birth record as a secondary form of identification, which as a security protocol, are required by department rule to be issued on secure paper. The department will continue to work with stakeholders to find ways to avoid any costs related to the production of certified copies of birth certificates which, based on DPS data, may be few in number.

Comments concerning Potential Fraud:

Several commenters stated that waiver of the fee for a certified copy of a birth certificate will increase the risk of identity theft, fraud and security issues. The commenters also stated that the volume of requestors and risk will only increase as the public finds out about the waived fees for birth certificates.

To address these risks, the commenters suggested that the department should: (1) limit the number of copies that can be obtained without a fee; (2) limit access only to individuals who are applying for an EIC (and not allow family members or otherwise qualified applicants to obtain a copy on the person's behalf); (3) limit the issuance to persons who are eligible to vote based on age; (4) provide a form on which the person attests to the purposes of the request and is notified of the penalties for fraudulently obtaining a birth certificate; and (5) add markings to the issued birth certificate that expressly limit its use as secondary identification for EIC purposes. The commenters also suggested that DPS accept for EIC purposes electronic or documented verification of the information contained in the birth record in lieu of a certified copy of a birth record. Some commenters recommended that the department limit access to a birth certificate under the rule to persons with disabilities, active military or veterans, and the elderly.

Response: The department appreciates these comments and suggestions but does not believe that the proposed rule increases the risk of fraud. The proposed rule does not waive or reduce the security, identification, and documentation requirements that apply to the issuance of a certified copy of a birth record. The department does not believe that the cost of a certified birth certificate significantly influences a person's decision to commit fraud, so the department believes that the waiver of fees under the proposed rule will not create a significant inducement to fraudulent behavior.

Furthermore, there are some limitations on the department's ability to implement some of the suggestions. Some of the suggestions (using plain paper in lieu of security paper) would require the department to change existing security protocols and as a result would conflict with other requirements in rules. One suggestion--use of alternate methods (abstracts, electronic verification)--does not comply with current DPS rules, which require an original or certified copy of a birth certificate.

However, the department believes that some of the suggestions can be incorporated into the department's procedures and will work to implement as many of the suggestions as possible to address the commenters' concerns.

The department agrees with the comments regarding limitations on the number of copies that can be obtained and on who can apply for a waiver of fees under the rule. No change to the rule language is required to implement these suggestions. The department will implement the suggestions as described below.

The department will notify the public and local registrars and county clerks that a person may apply for a fee waiver for only one birth certificate and that the individual must attest that he or she will use the birth certificate for the purpose of obtaining an EIC. The department will also specify that persons age 16 and under are not eligible to obtain a waiver of fees under the rule, but can purchase a birth certificate if otherwise qualified.

The department is developing a form to require applicants to attest that the person will use the birth certificate obtained without a fee under the rule solely for the purpose of applying for an EIC. The form will also include a prominent notice that states that the applicant is subject to the same penalties for a false statement that otherwise apply to an application for a birth certificate. Additionally, the department will include limiting text on the birth certificates that will state that the birth certificate will be issued only for election identification purposes. Both the form and the birth certificate format with the limiting text will be made available to local registrars and county clerks at no cost for their use.

The department does not believe that limiting the rule to persons with disabilities, active duty members of the military, veterans, or elderly persons is consistent with the purpose of the proposed rule. As noted in its preamble, the proposed rule is intended to enable a person who needs a certified copy of a birth certificate in order to apply for an EIC from the DPS to obtain one without the possible hindrance of a fee for the certified copy. Furthermore, because the estimated number of persons who will need a birth certificate for EIC purposes is relatively low, the department does not believe that it is necessary to exclude the able-bodied, non-military, non-veterans, and non-elderly persons from the scope of the rule.

Availability of Alternate Forms of Identification:

Commenters expressed concerns regarding an applicant presenting other forms of identification to obtain a birth certificate without a fee (for an EIC), that would otherwise qualify as sufficient documentation without a birth certificate, to obtain an EIC or to vote, such as a valid driver's license. The commenters requested the ability to deny a birth certificate without a fee for EIC purposes if the person applying for the birth certificate presents these types of identification.

Response: As part of this rule change, the department, local registrars or county clerks, should not be making a determination as to whether a person has proper identification to be able to vote or to obtain an EIC. When a person applies for a birth certificate for purposes of an EIC under this rule, the evaluation should be limited to determining if the requirements to obtain a birth certificate under this rule have been met.

General Comments:

Commenters asked whether birth certificates without a fee for purposes of applying for an EIC can be obtained both online and in person.

Response: Birth certificates without a fee for this purpose can be obtained only in person by applying at the department's Bureau of Vital Statistics or a local registrar's office or county clerk's office that issues vital records. Birth certificates under this rule will not be processed online.

Commenters stated that the department does not have authority to waive birth certificate fees.

Response: The department respectfully disagrees. Health and Safety Code, §191.0045(a) delegates to the department authority adopt a fee schedule for birth records and to determine the amount of such fees. The department believes that this delegation of authority necessarily includes the authority to set the fee at zero under certain circumstances that are consistent with state law, which is what the proposed rule effectively accomplishes for purposes of assisting a person obtain an EIC.

The department appreciates the concerns expressed by local registrars and county clerks who correctly note that Health and Safety Code, §191.0045(d) requires these officials to charge the same fee as the department for vital records. As noted above, however, the department does not believe that the rule will result in an inordinate number of fee waivers and therefore will not have more than a de minimis impact on local revenues.

In response to the comments, the department did revise the proposed rule text as published in the *Texas Register*. The department added language to clarify that the birth certificates under this waiver of fees must be obtained in person and not online. Also, the department added clarifying language to specify that fees that are required by statute are not being waived by this rule change.

LEGAL CERTIFICATION

The Department of State Health Services General Counsel, Lisa Hernandez, certifies that the rule, as adopted, has been reviewed by legal counsel and found to be a valid exercise of the agencies' legal authority.

STATUTORY AUTHORITY

The amendment is adopted under Health and Safety Code, §191.0045, which authorizes the Bureau of Vital Statistics to charge fees for the preparation and issuance of certified copies of a birth record and prescribe a schedule of fees, §191.002, which authorizes rules necessary for the effective administration of Vital Statistics Records; and Government Code, §531.0055, and Health and Safety Code, §1001.075, which authorize the Executive Commissioner of the Health and Human Services Commission to adopt rules and policies necessary for the operation and provision of health and human services by the department and for the administration of Health and Safety Code, Chapter 1001.

*§181.22. Fees Charged for Vital Records Services.*

(a) The fee for a certified or research copy of a birth record shall be $10.00. Additional copies shall be $10.00 for each copy requested.

(b) The fee for a certified or research copy of a death certificate shall be $10.00 for the first or only copy requested, and $3.00 for each additional copy of the same record requested in the same request.

(c) A surcharge of $2.00 shall be added to the fee for searching and issuing each certified copy of a certificate of birth, or conducting a search for a certificate of birth, as mandated by the Health and Safety Code, §191.0045.

(d) The fee for issuing each heirloom birth certificate, or gift certificate for such, shall be $50.00. If a record is not found, $38.00 of the fee shall be returned to the applicant.

(e) The fee for issuing each wedding anniversary certificate or gift certificate for such shall be $50.00.

(f) The fee to search for any record or information on file within the Vital Statistics Unit shall be $10.00, regardless of whether a certified copy is issued or not.

(g) The fee for a search to verify the existence of a birth or death record shall be $10.00.

(h) The fee for a search to verify a marriage or divorce record shall be $10.00.

(i) The fee for a search and identification of the court that granted an adoption shall be $10.00.

(j) The fee for filing an amendment to an existing certificate of birth or death on file with the Vital Statistics Unit shall be $15.00. An amendment to a certificate includes adding information to a record to make it complete and changing information on a record to make it correct. An additional fee is required to issue a certified copy of the amended record.

(k) The fee for filing an amendment based on a court ordered name change shall be $15.00.

(l) The fee for a new birth record based upon adoption or parentage determination shall be $25.00.

(m) The fee for filing a delayed record of birth shall be $25.00.

(n) The fee for a search of the Paternity Registry shall be $10.00. The fee includes a certification stating whether or not the requested information is located in the Registry.

(o) The fee for a search of the Acknowledgment of Paternity Registry shall be $10.00. The fee includes a certified copy of the Acknowledgement of Paternity, if found.

(p) Each person applying to the Central Adoption Registry shall pay a registration fee of $30.00, which includes the $5.00 fee for determining if an agency that operates its own registry was involved in the adoption. (Also see §181.44 of this title (relating to the Inquiry Through the Central Index).)

(q) The fee charged for an expedited service shall be $5.00 per request in addition to any other fee required. Expedited service is any service requested via fax or overnight mail service. The expedited fee is nonrefundable if a record or the information requested is not found.

(r) The fee for the processing and issuance of a disinterment permit shall be $25.00. The fee is to be paid by the applicant for the permit, and must be submitted with the application.

(s) A Texas Online fee of $10.00 shall be added to all requests for birth, death, marriage, and divorce record searches and document production.

(t) Except as provided in subsection (c) of this section, the fee for a certified record that otherwise is required under this section is waived for an applicant who appears in person to obtain a certified copy from the department or a local registrar and represents that the certified record is required for the purpose of obtaining an election identification certificate issued pursuant to Transportation Code, Chapter 521A.

This agency hereby certifies that the adoption has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on October 1, 2013.

TRD-201304335
Lisa Hernandez
General Counsel
Department of State Health Services
Effective date: October 21, 2013
Proposal publication date: August 23, 2013
For further information, please call: (512) 776-6972

♦ ♦ ♦

# TITLE 31. NATURAL RESOURCES AND CONSERVATION

## PART 2. TEXAS PARKS AND WILDLIFE DEPARTMENT

### CHAPTER 57. FISHERIES
### SUBCHAPTER A. HARMFUL OR POTENTIALLY HARMFUL FISH, SHELLFISH, AND AQUATIC PLANTS

#### 31 TAC §§57.113, 57.115, 57.116

The Texas Parks and Wildlife Commission in a duly noticed meeting on August 22, 2013 adopted amendments to §§57.113, 57.115, and 57.116, concerning Harmful or Potentially Harmful Fish, Shellfish, and Aquatic Plants, without changes to the proposed text as published in the July 12, 2013, issue of the *Texas Register* (38 TexReg 4499).

The amendments would, collectively, allow the transport of live Mozambique tilapia and triploid grass carp without a permit for purposes of stocking private ponds or facilities, provided the person transporting the tilapia or triploid grass carp has acquired an exotic species transport invoice from a person who possesses an exotic species permit.

Under current §57.112, concerning General Rules, it is an offense for any person to release into the water of this state, import, sell, purchase, transport, propagate, or possess any species, hybrid of a species, subspecies, eggs, seeds, or any part of any species defined as a harmful or potentially harmful exotic fish, shellfish, or aquatic plant. Under current §57.111, concerning Definitions, all species of genera Tilapia, Oreochromis, and Sarotherodon (which includes Mozambique tilapia and grass carp) are designated as harmful or potentially harmful exotic fish. Under current §57.113, concerning Exceptions, Mozambique tilapia and triploid grass carp may be possessed by anyone in a private pond or facility, provided a copy of the exotic species transport invoice under which the fish were transported to the private pond or facility is retained. However, under current §57.115, concerning Transportation of Harmful or Potentially Harmful Exotic Species, only a person who holds a valid exotic species permit or a commercial shipper acting for a permit holder may transport live Mozambique tilapia or triploid grass carp. Current §57.116, concerning Exotic Species Transport Invoice, sets out the requirements of the transport invoice.

Mozambique tilapia are popular as forage fish in private ponds and in private, non-commercial fish-growing facilities. Triploid grass carp commonly are used as an alternative to chemical control of unwanted aquatic vegetation in ponds. The department has received requests to allow the transport of live Mozambique tilapia and triploid grass carp from a permitted seller to a private pond or facility by the person who is acquiring the fish. Under current rule, only a person who holds an exotic species permit or a commercial shipper acting on behalf of a permit holder may transport live Mozambique tilapia or triploid grass carp. The department has determined that since the rules already allow the possession of live Mozambique tilapia without a permit and possession of triploid grass carp is already allowed under a triploid grass carp permit, there is no reason not to allow their transport