**OTB Resolution**

Thank you Mr. Speaker and Members,

This is a resolution to allow the voter ID conference committee to go outside the bounds to make clarifying corrections.

The conference committee report creates a separate free photo ID for voting purposes, called an "election identification certificate". The election identification certificate mirrors existing law and is essentially the same as a DPS personal ID card, except that the election ID may only be used for voting purposes. Election IDs issued to voters 70 or older do not expire. The added language ensures the free IDs issued by DPS for voting will not impact the Texas Mobility fund. Although TxDOT stated that the original language in SB 14 would not have materially or significantly reduced revenue to the Mobility Fund, the conference committee made this clarification to eliminate any concerns. in essence create an additional for of ID for voting

The conference committee report also clarifies that a voter claiming a religious exemption to showing photo ID must have consistently refused to being photographed for any governmental purpose. This is to ensure those claiming this exemption are doing so for legitimate reasons.

**I move to adopt the resolution**

DPS my understanding + Expectation that. DPS w/ put a photo on Election ID Certificat






**Conference Committee Report**

I would like to call up the conference committee report on Senate Bill 14.

**Speaker:**

Thank you Mr. Speaker and Members,

After an 11 hour debate on the bill, I think everyone is very familiar with the provisions in the voter id bill, so I would like to touch on the major points in the conference committee report, and then discuss the differences as compared to the House version.

The Conference Committee Report to SB 14:

- Requires voters to show a photo ID, except that certain disabled people may continue to vote with just their voter registration card
- Acceptable photo IDs include identification issued by DPS (for most this will be their driver's license), a military ID, a passport, a CHL, or a citizenship certificate with a photo
- Requires DPS to provide a free photo election ID to any registered voter who requests an ID
- Allows a voter to cast a provisional ballot if they do not have a Photo ID and return within 6 days to have the ballot counted
- Provides that provisional ballots will be counted if voter shows acceptable photo ID or signs an affidavit that the voter has a religious objection to getting photo taken, or lost their ID during a recent natural disaster
- Requires the Secretary of State and voter registrars to educate the public and train election workers on the new requirements, including mailing notice to each voter and posting notice outside all polling places
- Increases criminal penalties for illegal voting.
    - From a third degree felony (2-10yrs) to a second degree felony (2-20yrs), and the penalty for attempting to fraudulently vote is increased from a Class A misdemeanor (180days max county jail) to a state jail felony (180days-2yrs state jail).



HIGHLY CONFIDENTIAL

TX_00006960

## Differences Between CCR and House Passage

Before I talk about was is not in the conference committee report, I would like to mention that out of the 15 amendments added on the House floor, 8 were kept in the legislation in some form. Those include amendments by Representatives Anchia, Yvonne Davis, Bonnen, Hochberg, Eiland, and Dukes.

### Provisions Removed

Exemption for voters who had their ID stolen was removed. **(Giddings)**

- Exemption would result in more paperwork with which election workers may not be familiar with. Section of the Penal Code named in the exemption applies to all forms of identity theft, not just the actual theft of a person's ID.
- The Senate felt strongly that this provision should be removed.

IDs approved by state are removed as an acceptable form of ID. **(Alonzo)**

- Concerns over the language being too broad. What is a state approved ID?
- We believe the types of Photo ID's in the conference committee report are more uniform and less confusing. These documents have standardized of form. They are simpler for the voters and election poll workers to recognize.

Tribal IDs are removed as an acceptable form of ID. **(Naomi Gonzalez)**

- Tribal IDs do not have a single standardized form. Census data shows that there are less than 5000 tribal members in Texas. There is No evidence that this the number of voters do not already have the other forms of acceptable ID.
- We believe the types of Photo ID's in the conference committee report are more uniform and less confusing. These documents have standardization of form. They are simpler for the voters and election poll workers to recognize.

Not necessary

The report removes the floor amendment regarding temporary photo IDs. **(Lucio)**

- According to DPS, the language would have shut down DPS online renewals because of requirement that temporary ID have a photo. That Would cost the state millions by requiring people show up in person to renew licenses, requiring resources to deal with the increase to the lines at DPS driver's license offices.

Language which would have allowed provisional affidavits to be signed at the polling place was removed. **(Veronica Gonzales)**

- Language creates a loophole (effectively eliminates the 6 day cure process, election judges would be performing same functions as voter registrar)
- The Senate felt strongly that this provision should be removed.

Yvonne Dav



HIGHLY CONFIDENTIAL

The report removes requirement that SOS education efforts target low income/minority voters. **(Miles)**

- Language not necessary because the conference committee report provides for extensive education for all voters.

The report returns to original definition of the early voting ballot board. **(Dutton)**

- The change was not substantive, and the drafters would have needed to add in many cross-references throughout the entire Election code, which were not contained in the bill, to correctly draft the name change. + Reference

**Notable Provision Kept/Modified**

Representative Eiland added an exemption for natural disasters. This exemption remains in bill, but is modified.

- Voters would have to claim this exemption by returning within 6 days and signing an affidavit. This exemption may be claimed only 45 days (time to get new ID) after a natural disaster. The exemption only applies to disasters which destroy or cause an inability to access the voters ID, excluding heat waves, droughts.
- Why kept in? The potential to impact a large number of voters.

Provisional

Representative Harper-Brown added an amendment which removed the indigent and religious exemptions. The conference committee report adds back in the religious exemption.

- The religious exemption is part of the Indiana Law which was upheld by the Supreme Court.

Representative Anchia's amendment regarding fees for duplicate IDs, was moved to the new section regarding DPS election ID certificate.

The conference committee report creates a separate free photo ID for voting purposes, called an "election identification certificate". The election identification certificate mirrors existing law and is essentially the same as a DPS personal ID card, except that the election ID may only be used for voting purposes. Election IDs issued to voters 70 or older do not expire. The added language ensures the free IDs issued by DPS for voting will not impact the Texas Mobility fund. Although TxDOT stated that the original language in SB 14 would not have materially or significantly reduced revenue to the Mobility Fund, the conference committee made this clarification to eliminate any concerns.

Yvonne Davis - Provisional will be counted

*New (1) eligible to vote (2) correct precinct (3) provisional will be counted

**I move to adopt the conference committee report.**

## General Q & A

**Isn't bill now more restrictive than Indiana's or Georgia Law?**

It is my belief that SB 14 is constitutional. We are offering a bill that is in compliance with the US Supreme Court decision which upheld the Indiana Voter ID legislation because, it deters and detects fraud, it protects public confidence in elections, it counts only eligible voters' votes. Furthermore. although voter ID laws in other states have been heavily litigated, plaintiffs have been unable to produce a single individual who either did not have an ID or could not easily find one.

Plus, it complies with the Supreme Court decision because it offsets the new requirements on voters by:

- Providing access to free photo ID cards
- Allowing for provisional ballots and absentee ballots
- Ensuring that obtaining photo ID is no more burdensome or inconvenient than the usual act of voting
- Provides exceptions for voters who are disabled, have religious exemptions, or who have lost IDs due to a natural disaster.



HIGHLY CONFIDENTIAL

TX_00006963

# Texas Transportation Commission

125 E. 11TH STREET • AUSTIN, TEXAS 78701-2483

May 6, 2011

The Honorable Rafael Anchia
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Dear Representative Anchia:

Thank you for your letter regarding SB 14 and its potential impact on the Texas Mobility Fund (TMF). As you noted in your letter, your requests related to the version of SB 14 that the Texas House passed on third reading on March 24, 2011. As you may know, on May 4 the Legislature issued a Conference Committee Report (CCR) that makes revisions to SB 14 that we believe are significant to your inquiries. Most notably, Sections 14 and 20 of the CCR version of SB 14 provide for the issuance of a new "election identification certificate," to be used (in addition to a drivers license or a personal identification card) for voting purposes (but only for voting purposes). Because this version continues to require fees for personal identification cards and provides for the issuance of free election identification certificates that did not previously exist and that can only be used for voting purposes, it does not reduce the dedication of this source of TMF funding. If the earlier version of SB 14 created the constitutional issue to which your letter alluded, we believe that the CCR eliminates any such concerns.

Nevertheless, most of the requests in your letter relate to the Department's "ability to issue bonds" under the TMF, rather than to any potential constitutional issues. In light of that, we are happy to provide the following general responses, based on a review by the Department's legal advisors of the resolutions authorizing the TMF bond issues as well as Art. III, Sec. 49-k of the Constitution and relevant provisions of the Transportation Code:

1. The simple reduction or decline in a specific amount of fee revenue would not cause an impairment to the TMF, but a legislative act or acts that cause such a reduction impermissibly could certainly result in an impairment, depending on all relevant facts and circumstances. We believe the CCR eliminates or, at least, significantly alters the "estimated annual reduction of $9 million" to which you have referred. Nevertheless, the previously-estimated $9 million reduction in ID Fee annual revenues, if correctly estimated, would not keep the TMF from being able to pay debt service on outstanding, currently issued TMF bonds.

2. The Department is engaging in various ongoing analyses regarding the state's ability to issue additional TMF bonds over the next 10 years. Based on the most recent biennial revenue estimate, estimated revenues coming into the TMF during FY 2011, 2012, and

2013 will not exceed debt service requirements during those years by an amount sufficient to meet the required 110 percent debt service coverage test for issuance of additional bonds under Sec. 201.943 of the Transportation Code. The Department continues to monitor evolving facts and circumstances and estimated revenues pertinent to satisfaction of the statutory test. At this point, it is premature to reach a conclusion as to whether a loss of revenue from ID Fees would make a difference in the state's eligibility to issue additional TMF bonds, including refunding bonds that could generate a savings in TMF debt service costs.

3. The Department takes seriously any proposed legislation that might have a potential impact on the constitutional requirements of paragraph (f) of the Art. III, Sec. 49-k or on the covenants of the Transportation Commission in the bond resolutions authorizing the TMF bonds. Based on our analysis, the amount of revenue that would be lost from any reduction in ID Fee revenue, even the estimated reduction from the earlier version of SB 14, is not material or significant in light of the size of the TMF. Under the CCR version of SB 14, any reduction in revenue is significantly minimized and may be eliminated.

4. If the Department is obligated to notify the Municipal Securities Rulemaking Board regarding the TMF bonds after the end of the legislative session, a copy of the notice will be provided to you.

I hope the above responses are helpful. Please let me know if I can be of further assistance once the full facts and circumstances affecting these issues are known.

Sincerely,

Deirdre Delisi

Deirdre Delisi
Chair
Texas Transportation Commission

cc: The Honorable Rick Perry, Governor
The Honorable David Dewhurst, Lt. Governor
The Honorable Joe Straus, Texas House of Representatives
The Honorable Tommy Williams, Texas Senate
The Honorable Larry Phillips, Texas House of Representatives
Texas Transportation Commission



STATE OF TEXAS
HOUSE OF REPRESENTATIVES
DISTRICT 103

RECEIVED BY
MAR 25 2011
COMMISSION OFFICE

RAFAEL ANCHIA
MEMBER

March 25, 2011

Ms. Deirdre Delisi
Chair, Texas Transportation Commission
125 E. 11th Street
Austin, Texas 78701-2483

Dear Chairwoman Delisi:

As I am sure you are aware, the Texas House passed SB 14 on third reading yesterday -- the bill requiring voters to present photo identification when voting at a polling place. I am writing you to ask for your assessment of how the changes made by that bill will affect TxDOT's ability to issue bonds under the Texas Mobility Fund in the future.

SB 14 has a specific provision that provides free state IDs to individuals who register to vote. During the floor debate, Rep. Trey Martinez Fischer and I both raised issues concerning this bill's cost to the Texas Mobility Fund. As I understand Art. III, Sec. 49-k(f) of the Constitution, the Legislature may not "reduce, rescind or repeal" a source of revenue or portion of revenue dedicated to the Mobility Fund unless it is replaced by a dedicated revenue source of equal or greater value. According to statistics provided to my office by the Department of Public Safety, this bill could potentially reduce funding to the Mobility Fund by up to $9 million per year this biennium and would exceed $9 million per year in succeeding biennia as anticipated revenues would increase due to population growth. (Please see attached.)

I would like to request from your office:

- an assessment of how the estimated annual reduction of $9 million may impair currently issued bonds that are paid for by the Mobility Fund;
- an analysis of the state's ability to issue additional Mobility Fund bonds over the next 10 years under current revenue projections compared to its ability to issue new bonds if the Mobility Fund's annual dedicated revenue is reduced by $9 million;
- TxDOT's own assessment of how SB14 will impact dedicated revenue to the Mobility Fund; and
- a copy of any notifications that TxDOT would send to bond holders as a consequence of revenue projection revisions due to SB14.

Please provide this information to my office as it is made available.

CAPITOL OFFICE: POST OFFICE BOX 2910 AUSTIN, TEXAS 78768-2910 • (512) 463-0746 • FAX: (512) 463-5896
DISTRICT OFFICE: 1111 W. MOCKINGBIRD LANE • SUITE 1330 • DALLAS, TEXAS 75247 • (214) 943-6081 • FAX: (214) 920-9996
RAFAEL.ANCHIA@HOUSE.STATE.TX.US

I support providing free IDs to people who will need them to vote. However, I want to ensure that the state provides those free IDs in a manner that does not create another structural deficit, and in a manner that is consistent with the Texas Constitution. Your assistance would be greatly appreciated. Please contact my Legislative Director, Damien Brockmann in my Capitol office, if you have any questions regarding my request.

Sincerely,

Rafael Anchia

HIGHLY CONFIDENTIAL

## State ID Costs

### New and Renewed IDs

| | total | % 60+ | % <60 | 60+ | <60 | cost 60+ | cost <60 | Mobility Fund Total* | Total |
|---|---|---|---|---|---|---|---|---|---|
| 2008 | 608,320 | 12.60% | 87.40% | 76673 | 531672 | $6 | $16 | $8,358,438.46 | $8,966,782.80 + |
| 2009 | 481,794 | 12.10% | 87.90% | 58297 | 423497 | $6 | $16 | $6,643,939.26 | $7,125,733.26 |
| 2010 | 473,275 | 10.42% | 89.58% | 49315 | 423960 | $6 | $16 | $6,605,972.45 | $7,079,247.45 |

### Duplicate IDs

| | total | cost | Mobility Fund Total** | Total |
|---|---|---|---|---|
| 2008 | 230,815 | $11 | $2,308,150 | $2,538,965 + |
| 2009 | 203,760 | $11 | $2,037,600 | $2,241,360 |
| 2010 | 220,609 | $11 | $2,206,090 | $2,426,699 |

### Total Revenue Generated By State ID Fees

| | New and Renewed IDs | Duplicates | Mobility Fund Total | **Total Revenue** |
|---|---|---|---|---|
| 2008 | $8,966,782.80 | $2,538,965 | $10,666,588 | **$11,505,748** + |
| 2009 | $7,125,733.26 | $2,241,360 | $8,681,539 | **$9,367,093** |
| 2010 | $7,079,247.45 | $2,426,699 | $8,812,062 | **$9,505,946** |

*For new and renewed IDs, $5/ $15 (+60/ <60) of the fee is dedicated to the mobility fund.

** For duplicate IDs (which includes change of name and address), $10 of the fee is dedicated to the mobility fund.

+ Applications for both state IDs and driver licenses dropped dramatically after DPS changed the requirements to obtain a state ID or DL in 2008.

RECEIVED BY
MAR 25 2011
COMMISSION OFFICE

HIGHLY CONFIDENTIAL

| | INDIANA LAW | GEORGIA LAW | TEXAS - CSSB 14 | TEXAS - CURRENT LAW |
|---|---|---|---|---|
| **REQUIRED I.D.** | **One photo ID:**<br>• state or federal ID that includes name, photo, and expiration date (specific forms of ID not provided) | **One photo ID:**<br>• driver's license (even if expired)<br>• state or federal photo ID<br>• local, state, or federal govt employee photo ID<br>• U.S. passport<br>• military photo ID<br>• tribal photo ID | **One photo ID:**<br>• DPS (current or expired no more than 60 days)<br>• military photo ID (current or expired no more than 60 days)<br>• citizenship certificate with photo<br>• U.S. passport (current or expired no more than 60 days)<br>• CHL (current or expired no more than 60 days) | voter registration card<br>**- OR -**<br>sign affidavit at polls<br>**AND**<br>• DPS-issued ID (even if expired)<br>• any photo ID with name<br>• birth certificate<br>• citizenship papers<br>• U.S. passport<br>• govt-issued mail or document<br>• other ID prescribed by Sec of State |
| **EXCEPTIONS TO PHOTO REQUIREMENT** | • indigent<br>• religious objection<br>• voters in state-licensed care facility | none | • religious objection<br>• disabled under social security or 50% veterans | (photo ID not required) |
| **PROVISIONAL BALLOT** | If no ID, voter may cast provisional ballot and may return within 10 days with ID for ballot to be counted. | If no ID, voter may cast provisional ballot and may return within 2 days with ID for ballot to be counted. | If no ID, voter may cast provisional ballot, and may return within 6 days with ID for ballot to be counted. | If no ID, voter may cast provisional ballot, and registrar must confirm eligibility within 7 days |
| **REQUIRED VOTER EDUCATION** | secretary of state conducts statewide education campaign for voters and poll workers | none | secretary of state conducts statewide education campaign for voters and poll workers | N/A |

*(The Indiana law was upheld by the Supreme Court and the Georgia law was upheld by the DOJ)*

HIGHLY CONFIDENTIAL

Here's my attempt to condense the religious exception language. In my opinion (though I will obviously defer to Karina and Griesel), I think this requires us to go outside the bounds. Note that we need to make sure that (b)(3) is broken out separately and not made part of (b)(2)(B)). Also, I removed Jonathan's language requiring the person to explain their beliefs and state how long they've held them; that seems to be a policy change and not a legal change, and I don't think it is necessary.

(b) A provisional ballot shall [~~may~~] be accepted [~~only~~] if the board determines that:

(1) [~~,~~] from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election;

(2) the person:

(A) meets the identification requirements of Section 63.001(b) at the time the ballot was cast or in the period prescribed under Section 65.0541; or

(B) notwithstanding Chapter 110, Title 5, Civil Practices and Remedies Code, executes an affidavit under penalty of perjury that states the voter has a religious objection to being photographed and has consistently refused to be photographed for any governmental purpose from the time the voter has held this belief; and

(3) the voter has not been challenged and voted a provisional ballot solely because the voter did not meet the requirements for identification prescribed by Section 63.001(b).

**From:** Colby Beuck <Colby.Beuck@house.state.tx.us>
**To:** Patricia Harless <phar77379@aol.com>
**Subject:** CCR SB 14
**Date:** Wed, Apr 20, 2011 11:03 am

---

**Differences Between CCR SB14 and House Passage SB14**

CCR adds back the religious exemption, but with tightened language. Voter must return within 6 days to sign affidavit claiming religious exemption, and the voter has consistently refused to be photographed for any governmental purpose.

CCR removes requirement that SOS education efforts target low income/minority voters (Miles). OAG/SOS concerns.

Exemption for voters who had their ID stolen (Giddings) is removed. Senate concerns. Penal code section references identity theft, but identity theft does not mean that you have no acceptable form of identification. Not in Indiana/Georgia law. Opens door for fraudulent filing of police reports to get around photo ID requirement. Would result in more paperwork with which election workers may not be familiar with.

Natural disaster exemption language (Eiland) remains in CCR, but moved to provisional section. Voters claiming this exemption will have to return within 6 days and sign an affidavit. 45 day limit from natural disaster to voting day. Language tightened to apply only to disasters which destroy or cause an inability to access ID (excludes drought, heat wave natural disasters).

CCR removes Tribal IDs as an acceptable form of ID (Naomi Gonzalez). Tribal IDs have no standardized form. No evidence that this small number of voters do not already have other form of ID.

CCR removes ID approved by state as an acceptable form of ID (Alonzo). Language was too broad.

CCR removes language which would have allowed provisional affidavits to be signed at the polling place (Veronica Gonzales).

CCR removes temporary ID language (Lucio). Language would have shut down DPS online renewals because of requirement that temporary ID have a photo.

CCR replaces language providing free DPS personal ID with language that provides a free DPS "election identification certificate". Election ID certificate is essentially the same as a DPS DL and personal ID, except that the Election ID certificate is valid only for voting. Change made to address concerns about free DPS personal IDs in SB14 taking away from mobility fund, which could possible reduce bond rating.
=



HIGHLY CONFIDENTIAL

## SB 14 - Conference Committee Report

### Highlights

- Requires voters to show a photo ID, except that certain disabled people may continue to vote with just their voter registration card
- Acceptable photo ID includes an unexpired card issued by DPS (for most this will be driver's license), a military ID, a passport, a CHL or a citizenship certificate with photo
- Requires DPS to provide a free photo election ID (new format) to any registered voter who requests an ID
- Allows a voter to cast a provisional ballot if he/she does not have a Photo ID and return within 6 days to have the ballot counted
- Provides that provisional ballots will be counted if voter shows acceptable photo ID or signs affidavit that voter has religious exemption to getting photo taken or lost ID during recent natural disaster
- Requires SOS and voter registrars to educate the public and train election workers on the new requirements, including mailing notice to each voter and posting notice outside all polling places
- Increases criminal penalties for illegal voting (mandatory jail time)

HIGHLY CONFIDENTIAL

**Voter ID Differences**

- SEC 1 - Disability Definition - House better, but . . .
- SEC 5 - Voter ID identification target at low-income voters (OAG dislikes)
- SEC 9 - Hochberg amendment . . . Governor veto of HB 1457
- SEC 9 - Davis amendment - Provisional ballot counted . . . SOS says hard to administrate
- SEC 9 - Over 70 as of 1-1-12 exemption (Two class of voters?)
- SEC 9 - Disability exemption (Two class of voters? / If you can make it to polls, why can't you make it to DPS?)
- SEC 9 - Eiland amendment - natural disaster - too broad . . . who leaves without id?
- SEC 9 - Giddings amendment - stolen identity does NOT mean stolen id
- SEC 14 - Tribal ID - too broad and easy to be faked
- SEC 14- ID approved by state - too broad and easy to be faked
- SEC 15 - Gonzalez amendment - GUTS photo-id at the polling place
- SEC 17 - 6 Day option to cast provisional ballot
    - Senate - exemption for indigent (is it necessary?) / religious (OAG likes)
    - House - bring photo-id back (Senate filed language)
- SEC 18 - Tied to decision in SEC 17
- SEC __ - Lucio amendment - One day temporary ID -- too expensive / easy to fake
- SEC __ - Anchia amendment - Not necessary / too expensive
- SEC __ - Bonnen amendment - Severability (OAG likes)

CONFIDENTIAL DO NOT DISTRIBUTE

From: Colby Beuck <Colby.Beuck@house.state.tx.us>
To: Patricia Harless <phar77379@aol.com>
Subject: Conference Issues
Date: Fri, Apr 8, 2011 6:05 pm

Some thoughts on these amends after looking closely at them. Waiting to hear from OAG and SOS Monday morning. Naomi G's office is getting the info on tribal IDs.

**Alonzo Amend FA 20, Sec 14**

-
Adds as an acceptable ID , and ID card that contains the person's photograph and is issued or approved by the state.

http://www.house.state.tx.us/video-audio/chamber/ on the 3/23 tape around 7:06. Moves away from the 6 recognizable standard IDs. "Approved by the state" is broad, and not sure what that means?

-
**Gonzales Amendment FA 26, Section 15**

-
On tape around 7:47

The amendment language applies only to affidavits executed when people are claiming the indigent/religious exemption. Under the amendment, someone could sign an affidavit at the polling place the day of election stating they don't have ID be because indigent/religious objection, and then vote provisionally. In practice, it would be a valid vote with no cure (no second trip). The Senate Bill requires the person to go to the voter registrar to cure the provisional ballot. However the amendment conflicts with the Harper-Brown Amendment which striped out the indigent/religious exemption (there is no Section 65.054(b)(2)(B) as the bill passed the House).

Senate Version: Affidavit must be executed in the presence of the voter registrar.

House Version: Affidavit may be executed at polling place in presence of election official or in the presence of the voter registrar.
=



HIGHLY CONFIDENTIAL