# HOUSE JOURNAL

EIGHTY-SECOND LEGISLATURE, REGULAR SESSION

## PROCEEDINGS

FORTIETH DAY — WEDNESDAY, MARCH 23, 2011

The house met at 10 a.m. and was called to order by the speaker.

The roll of the house was called and a quorum was announced present (Record 105).

Present — Mr. Speaker; Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Cain; Callegari; Carter; Castro; Chisum; Christian; Coleman; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Absent, Excused — Eiland.

Absent — Cook.

The invocation was offered by William Eudy, pastor, Southside Church of Christ, Mineral Wells.

The speaker recognized Representative Lyne who led the house in the pledges of allegiance to the United States and Texas flags.

## LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence temporarily for today because of family business:

Eiland on motion of Landtroop.



2:13-cv-193 09/02/2014 DEF0477

Case 2:13-cv-00193   Document 743-18   Filed on 11/17/14 in TXSD   Page 2 of 19

### REGULAR ORDER OF BUSINESS SUSPENDED

On motion of Representative Lyne and by unanimous consent, the reading and referral of bills was postponed until just prior to adjournment.

### CAPITOL PHYSICIAN

The speaker recognized Representative Christian who presented Dr. Keith Miller of Center as the "Doctor for the Day."

The house welcomed Dr. Miller and thanked him for his participation in the Physician of the Day Program sponsored by the Texas Academy of Family Physicians.

(Cook now present)

### MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 1).

### HCR 118 - ADOPTED
(by V. Taylor, et al.)

Representative V. Taylor moved to suspend all necessary rules to take up and consider at this time HCR 118.

The motion prevailed.

The following resolution was laid before the house:

HCR 118, Honoring Congressman Sam Johnson on the 38th anniversary of his release as a North Vietnamese Prisoner of War.

HCR 118 was read and was adopted.

On motion of Representatives Sheets and Madden, the names of all the members of the house were added to HCR 118 as signers thereof.

### INTRODUCTION OF GUEST

The speaker recognized Representative V. Taylor who introduced the Honorable Sam Johnson.

(Cain in the chair)

### FIVE-DAY POSTING RULE SUSPENDED

Representative Hunter moved to suspend the five-day posting rule and all necessary rules to allow the Committee on Calendars to set a calendar at 10:20 a.m. today in 3W.15.

The motion prevailed.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 10:20 a.m. today, in 3W.15, to set a calendar.

Permission to meet was granted.

Wednesday, March 23, 2011   HOUSE JOURNAL — 40th Day   945

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Calendars, 10:20 a.m. today, 3W.15, for a formal meeting, to set a calendar.

### HR 1012 - ADOPTED
### (by Eissler)

Representative Eissler moved to suspend all necessary rules to take up and consider at this time **HR 1012**.

The motion prevailed.

The following resolution was laid before the house:

**HR 1012**, Recognizing March 20-26, 2011, as Early College High School Week.

**HR 1012** was adopted.

### RESOLUTIONS ADOPTED

Representative Dukes moved to suspend all necessary rules to take up and consider at this time **SCR 28** and **SCR 29**.

The motion prevailed.

The following resolutions were laid before the house:

**SCR 28** (Dukes - House Sponsor), Commending Joe E. Gonzales for his career in education and for his contributions to the success of Austin Can! Academy.

**SCR 29** (Dukes - House Sponsor), Recognizing Austin Can! Academy, a dropout recovery charter high school serving at-risk students of Travis County.

The resolutions were read and were adopted.

### HR 828 - ADOPTED
### (by Truitt)

Representative Truitt moved to suspend all necessary rules to take up and consider at this time **HR 828**.

The motion prevailed.

The following resolution was laid before the house:

**HR 828**, Recognizing March 21 through 25, 2011, as Texas Retired Teachers Week.

**HR 828** was read and was adopted.

On motion of Representative Patrick, the names of all the members of the house were added to **HR 828** as signers thereof.

## INTRODUCTION OF GUESTS

The chair recognized Representative Truitt who introduced members of the Texas Retired Teachers Association, speaking as follows:

Mr. Speaker, members, this resolution provides an opportunity for this body to show our appreciation for our retired public educators who have provided an invaluable service to the people of this great state. We have some very special guests joining us today, both in the gallery and on the dais. We have TRTA representatives on the dais: Tim Lee, the executive director; Bill Barnes, TRTA legislative coordinator; Carlos Ortiz, state legislative chairman for District 20; Ms. Francis Plemmons, secretary/treasurer; and last but not least, my constituent and good friend, Bill Skinner, TRTA member and a dear friend. And joining us in the gallery are several members of TRTA that have taken the time to come to Austin to be with us today. I especially want to welcome those of you who are here from my district, and I'd ask you all to please stand up and be recognized. Thank you very much for being here.

Members, TRTA has a membership base of approximately 70,000 retirees that continually work to improve their local communities throughout the state. In 2010, TRTA members selflessly gave approximately 5.8 million hours of volunteer service, equivalent to a value of more than $121 million. For this, and the many other things they do, we are all forever indebted to them, to you. TRTA members will be visiting our offices this afternoon, and I encourage you and your staff to take the time to visit with them. TRTA members, we owe you a great deal of gratitude. Thank you for what you have done for our children. Thank you for what you have done for us. We understand what you are going through. We are listening. We are getting your hundreds of letters. We are reading them. We are hearing what you say. And please know, together we are going to get through this. Mr. Speaker, members, thank you for your consideration.

## REMARKS ORDERED PRINTED

Representative Lozano moved to print remarks by Representative Truitt on HR 828.

The motion prevailed.

## HR 812 - PREVIOUSLY ADOPTED
### (by White)

The chair laid out the following previously adopted resolution:

HR 812, Recognizing the Texas Forestry Association on the occasion of its seedling giveaway and commending association members for their reforestation efforts and advocacy.

On motion of Representatives White and Christian, the names of all the members of the house were added to HR 812 as signers thereof.

## HR 147 - PREVIOUSLY ADOPTED
### (by Giddings)

The chair laid out and had read the following previously adopted resolution:

HR 147, Honoring the life of Dan S. Petty of Dallas.

On motion of Representative Branch, the names of all the members of the house were added to HR 147 as signers thereof.

## INTRODUCTION OF GUESTS

The chair recognized Representative Giddings who introduced family members of Dan S. Petty.

## HR 857 - ADOPTED
(by S. King)

Representative S. King moved to suspend all necessary rules to take up and consider at this time **HR 857**.

The motion prevailed.

The following resolution was laid before the house:

**HR 857**, Recognizing March 23, 2011, as Parent Association for the Retarded of Texas Day at the State Capitol.

**HR 857** was read and was adopted.

## HR 240 - ADOPTED
(by Patrick, et al.)

Representative Patrick moved to suspend all necessary rules to take up and consider at this time **HR 240**.

The motion prevailed.

The following resolution was laid before the house:

**HR 240**, In memory of former Arlington mayor, U.S. representative, and Tarrant County judge Tom J. Vandergriff.

**HR 240** was read and was unanimously adopted by a rising vote.

On motion of Representatives Anchia and Nash, the names of all the members of the house were added to **HR 240** as signers thereof.

## INTRODUCTION OF GUESTS

The chair recognized Representative Patrick who introduced family members of the Honorable Tom J. Vandergriff.

## HR 739 - PREVIOUSLY ADOPTED
(by Burkett)

The chair laid out and had read the following previously adopted resolution:

**HR 739**, Recognizing March 23, 2011, as Sunnyvale Day at the State Capitol.

## HR 979 - ADOPTED
(by Keffer)

Representative Keffer moved to suspend all necessary rules to take up and consider at this time **HR 979**.

The motion prevailed.

The following resolution was laid before the house:

**HR 979**, Commending the firefighters of Texas and paying tribute to the volunteer firefighters who have died in the line of duty.

**HR 979** was adopted.

On motion of Representative C. Anderson, the names of all the members of the house were added to **HR 979** as signers thereof.

### HR 320 - PREVIOUSLY ADOPTED
### (by L. Gonzales)

The chair laid out and had read the following previously adopted resolution:

**HR 320**, Recognizing March 23, 2011, as Hutto Day at the State Capitol.

### INTRODUCTION OF GUESTS

The chair recognized Representative L. Gonzales who introduced a delegation from Hutto.

### HCR 114 - ADOPTED
### (by Craddick)

Representative Craddick moved to suspend all necessary rules to take up and consider at this time **HCR 114**.

The motion prevailed.

The following resolution was laid before the house:

**HCR 114**, Designating April 2011 as Distracted Driving Awareness Month in Texas.

**HCR 114** was adopted.

On motion of Representative Phillips, the names of all the members of the house were added to **HCR 114** as signers thereof.

### HR 564 - PREVIOUSLY ADOPTED
### (by Kuempel)

The chair laid out and had read the following previously adopted resolution:

**HR 564**, Congratulating the football team of the Byron P. Steele II High School in Cibolo on winning the UIL 5A Division II state championship.

On motion of Representative Kuempel, the names of all the members of the house were added to **HR 564** as signers thereof.

### INTRODUCTION OF GUESTS

The chair recognized Representative Kuempel who introduced players and coaches of the Byron P. Steele II High School football team.

### HB 3822 - PERMISSION TO INTRODUCE

Representative Workman requested permission to introduce and have placed on first reading **HB 3822**.

Permission to introduce was granted by (Record 106): 145 Yeas, 0 Nays, 2 Present, not voting.

Wednesday, March 23, 2011    HOUSE JOURNAL — 40th Day    949

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Callegari; Carter; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Cain(C).

Absent, Excused — Eiland.

Absent — Castro; Kolkhorst.

### STATEMENT OF VOTE

When Record No. 106 was taken, I was temporarily out of the house chamber. I would have voted yes.

Kolkhorst

### HB 3823 - PERMISSION TO INTRODUCE

Representative Thompson requested permission to introduce and have placed on first reading HB 3823.

Permission to introduce was granted by (Record 107): 146 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Aliseda; Allen; Alonzo; Alvarado; Anchia; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Burnam; Button; Callegari; Carter; Castro; Chisum; Christian; Coleman; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Driver; Dukes; Dutton; Eissler; Elkins; Farias; Farrar; Fletcher; Flynn; Frullo; Gallego; Garza; Geren; Giddings; Gonzales, L.; Gonzales, V.; Gonzalez; Gooden; Guillen; Gutierrez; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hernandez Luna; Hilderbran; Hochberg; Hopson; Howard, C.; Howard, D.; Huberty; Hughes; Hunter; Isaac; Jackson; Johnson; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lozano; Lucio; Lyne; Madden; Mallory Caraway; Margo; Marquez; Martinez; Martinez Fischer;

950    82nd LEGISLATURE — REGULAR SESSION

Menendez; Miles; Miller, D.; Miller, S.; Morrison; Muñoz; Murphy; Naishtat; Nash; Oliveira; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Quintanilla; Raymond; Reynolds; Riddle; Ritter; Rodriguez; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Taylor, L.; Taylor, V.; Thompson; Torres; Truitt; Turner; Veasey; Villarreal; Vo; Walle; Weber; White; Woolley; Workman; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Cain(C).

Absent, Excused — Eiland.

Absent — McClendon.

### STATEMENT OF VOTE

When Record No. 107 was taken, I was in the house but away from my desk. I would have voted yes.

McClendon

### HR 980 - ADOPTED
### (by Sheffield)

Representative Sheffield moved to suspend all necessary rules to take up and consider at this time **HR 980**.

The motion prevailed.

The following resolution was laid before the house:

**HR 980**, Recognizing March 23, 2011, as Salad Day and commending the owner/operators of Texas McDonald's restaurants.

**HR 980** was adopted.

On motion of Representative D. Howard, the names of all the members of the house were added to **HR 980** as signers thereof.

### FIVE-DAY POSTING RULE SUSPENDED

Representative Cook moved to suspend the five-day posting rule to allow the Committee on State Affairs to consider **HB 162** 30 minutes after adjournment today in JHR 140.

The motion prevailed.

(Eiland now present)

(Speaker in the chair)

### EMERGENCY CALENDAR
### SENATE BILLS
### SECOND READING

The following bills were laid before the house and read second time:

Wednesday, March 23, 2011    HOUSE JOURNAL — 40th Day    951

### CSSB 14 ON SECOND READING
(Harless, L. Taylor, Peña, Truitt, T. Smith, et al. - House Sponsors)

CSSB 14, A bill to be entitled An Act relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

### CSSB 14 - POINT OF ORDER

Representative Walle raised a point of order against further consideration of CSSB 14 under Rule 6, Section 16 of the House Rules on the grounds that the calendar is ineligible for consideration.

The speaker overruled the point of order, speaking as follows:

Mr. Walle raises a point of order pursuant to Rule 6, Section 16 that the initial printing of the calendar contained an error that prevents further consideration. The chair has reviewed the original and revised calendar and finds that the purpose of Rule 6, Section 16 has been complied with. The point of order is respectfully overruled.

### CSSB 14 - POINT OF ORDER

Representative Walle raised a point of order against further consideration of CSSB 14 under Rule 6, Section 16 of the House Rules on the grounds that the calendar is ineligible for consideration.

The speaker overruled the point of order, speaking as follows:

Mr. Walle raises a point of order under Rule 6, Section 16 on the grounds that the corrected calendar is not properly in order for consideration and is not eligible for consideration at this time. A similar error occurred in HB 1111 during the 79th Legislature. In that case, an error was discovered and a new calendar was printed and considered after a two-hour layout. The chair noted in that case that the error in the calendar was corrected and was laid out more than two hours. The chair finds no violation under Rule 6, Section 16. The point of order is respectfully overruled.

### PARLIAMENTARY INQUIRY

REPRESENTATIVE GALLEGO: Mr. Speaker, just a parliamentary inquiry so that I, if you don't mind, can understand the line of reasoning behind the—Mr. Walle's point of order was that Rule 6, Section 16 doesn't provide, as I read the rule. The rule indicates that "deviations from the calendar as posted shall not be permitted, except that the Committee on Calendars shall be authorized to prepare and post, not later than two hours before the house convenes, a supplemental daily calendar." So the two-hour notice under the rules applies to the supplemental daily calendar, is that not correct?

SPEAKER STRAUS: Mr. Gallego, under Rule 6, Section 16, deviations from the calendar are permitted, if they are permitted by the Committee on Calendars.

GALLEGO: Mr. Speaker, the sentence reads "deviations from the calendars as posted shall not be permitted, except in the case of the supplemental calendar."

952    82nd LEGISLATURE — REGULAR SESSION

SPEAKER: Mr. Gallego, the phrase "except" means there are deviations that are permitted.

GALLEGO: But, the exception is listed, is it not, Mr. Speaker? The exception is the supplemental daily calendar, which can be printed two hours before the house convenes.

SPEAKER: Mr. Gallego, there was a printing error in this calendar that was discovered and it's been corrected.

GALLEGO: The issue, Mr. Speaker, as I understand Mr. Walle's point of order, is that under the rules, revised calendars don't exist; supplemental calendars exist. And this was not remedied through a supplemental calendar, it was remedied so that the posting should—if we're going to do the supplemental calendar, and the posting, and the two-hour notice, then this was not a supplemental calendar which we all receive on our desks. As the routine course of the house's business, we receive supplemental calendars. And in this instance, we didn't receive a supplemental calendar, we received a revised calendar, which would seem to indicate that—I guess the difficulty for me is that you can't have it—the argument that you can't have it both ways. If it is a supplemental calendar, and there is a two-hour notice, and there is a deviation, that's fine, but if the argument is that it's a revised calendar and all this revised calendar does is take the place of the first one, then it seems that that timing should relate back. The posting notice should relate back, as well.

SPEAKER: Thank you, Mr. Gallego, for your inquiry. This is not the first time that a printing error has occurred in our calendars. On May 15 of 1997, for instance, an error in the printing was corrected under the title "Corrected Daily House Calendar." On May 20 of 1999, a correction was made under the "Corrected Daily House Calendar." And, similarly, on Tuesday, July 19, 2005, the correction was made under "Revised Daily House Calendar."

### REMARKS ORDERED PRINTED

Representative Walle moved to print remarks between Representative Gallego and the speaker.

The motion prevailed.

### CSSB 14 - POINT OF ORDER

Representative Farrar raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 11 and Rule 4, Section 12 of the House Rules on the grounds that proper notice of the committee meeting was not given and the committee meeting was not open to the public.

The speaker overruled the point of order, speaking as follows:

Representative Farrar raises a point of order under Rule 4, Section 11 and 12. Representative Farrar indicates that the meeting of the Calendars Committee began at 10:07 p.m., and that the Capitol was closed and access to the meeting room may have been denied. While the Calendars Committee did not begin meeting until 10:07 p.m., the meeting was initially posted for 9 p.m. As noted on

the State Preservation Board website, the hours of the Capitol are normally between 7 a.m. and 10 p.m. but are extended during legislative sessions, including during house committee meetings. It appears that the provisions of Rule 4, Section 11, were complied with. The point of order is respectfully overruled.

### CSSB 14 - POINT OF ORDER

Representative Martinez Fischer raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 32(c) and Rule 4, Section 32(f) of the House Rules on the grounds that the bill analysis is incorrect.

The speaker overruled the point of order, speaking as follows:

Representative Martinez Fischer raises a point of order under Rule 4, Section 32 in that the bill analysis fails to discuss changes on page 11, line 7 and page 11, line 27 of the bill. Specifically, Representative Martinez Fischer argues that the bill analysis fails to compare the bill to existing law and fails to list revision on page 11, line 27 as an express repeal. The chair has reviewed the bill and the bill analysis. The chair finds that the language of the bill analysis is not materially or substantially misleading and that the bill analysis, which is a summary, accurately reflects the substance of the bill. The point of order is respectfully overruled.

### PARLIAMENTARY INQUIRY

REPRESENTATIVE MARTINEZ FISCHER: Thank you, Mr. Speaker—parliamentary inquiry.

SPEAKER STRAUS: State your inquiry.

MARTINEZ FISCHER: In the last part of your ruling you made reference to the bill analysis being a summary, did I hear that right?

SPEAKER: That's correct.

MARTINEZ FISCHER: Could you repeat that last line, would you indulge me? I couldn't hear back here.

SPEAKER: The bill analysis, which is a summary, accurately reflects the substance of the bill.

MARTINEZ FISCHER: And, Mr. Speaker, parliamentary inquiry.

SPEAKER: State your inquiry.

MARTINEZ FISCHER: As I read Rule 4, Section 32(c), I don't see—I don't see in the rules where members are given the opportunity to summarize the bill in the bill analysis. Fact is, I read Rule 4, Section 32(c), it says that the bill analysis must include in summary or section-by-section form a detailed analysis, not a summary analysis, a detailed analysis, and so did the chair misunderstand me when I made that argument? Is the chair under the impression that I am arguing that there should be a lesser standard than a detailed analysis? Because I didn't argue there should be a summary analysis—in fact, the rules are contrary to any

members providing a summary analysis, it says it must be detailed, it can be in a summary or a section-by-section form, but the analysis must be detailed. Is the chair in agreement with that reading of the rule, as I see it?

SPEAKER: The chair has applied the precedence from prior sessions.

MARTINEZ FISCHER: And what precedence would that be, Mr. Chairman, Mr. Speaker?

SPEAKER: For instance, Mr. Martinez Fischer, there's a precedent from the 81st Session.

MARTINEZ FISCHER: The 81st Session, would the chair be inclined as to tell me what day of the journal that was?

SPEAKER: It was May 20th, 2009.

MARTINEZ FISCHER: May 20th, 2009. Okay, now in chair's ruling—

SPEAKER: It was on **SB 865**.

MARTINEZ FISCHER: **SB 865**? Thank you, Mr. Speaker. In the chair's ruling, in effect, the chair is saying that if we—if there is an express strike-through on a bill that changes the current state of the law, there is no requirement under Rule 4, Section 32(c) or Rule 4, Section 32(c)(3) that requires a member to notify the body and the general public that we are expressly changing a legal standard.

SPEAKER: Rule 4, Section 32, Subsection (c), Subsection (2) requires a list of provisions expressly, expressly repealed by the bill or resolution.

MARTINEZ FISCHER: So, the chair's interpretation, which I would deem to be narrow—is it the chair's interpretation that what triggers an express statement of a repeal of a law is the words in a bill or resolution that says, this article or this section is expressly repealed? Is that how the chair interprets Rule 4, Section 32(c)(2)?

SPEAKER: Just one moment, Mr. Martinez Fischer. Mr. Martinez Fischer, the point of order that you raised did not point us to a section of the law that contained an express repeal.

MARTINEZ FISCHER: Then the chair may have misunderstood my point of order. Shall I reassert it, Mr. Chairman? Because I crystal clearly remember arguing to the chair that when you take two sections of the bill and take us from a discretionary standard and change it to a mandatory standard, the strike-through of the discretionary is a repeal of a statute—in fact, guts the statute—and then I argued secondarily that when you go from a "shall" standard to a "must" standard, you again are expressly repealing a statute by a strike-through and, in fact, you are gutting the existing law. I offered that, and if the chair did not analyze the point of order under that analysis, then I would like to raise that point of order again.

SPEAKER: Mr. Martinez Fischer, the chair has already ruled on the point of order. You are welcome to lodge another point and I will request, the chair would request that the exchange be reduced to writing and entered into the journal.

Wednesday, March 23, 2011    HOUSE JOURNAL — 40th Day    955

MARTINEZ FISCHER: I'm sorry, what about the last part, Mr. Speaker?

SPEAKER: I would request that the exchange between you and the chair be reduced to writing and entered into the journal.

MARTINEZ FISCHER: Thank you, Mr. Speaker, I was going to do the same thing. And so—but I don't have to raise another point of order—but the chair has suggested that portion of that argument was not considered by the chair because the chair was unaware that that was, that that objection was being raised, and if the chair has properly considered that, I'd like the chair to tell me there would be no need to raise an additional point of order.

SPEAKER: Mr. Martinez Fischer, the chair appreciates your arguments and the chair respectfully has overruled your point of order.

MARTINEZ FISCHER: I understand that Mr. Speaker, but on what grounds?

SPEAKER: That Rule 4, Section 32(c) has been complied with.

MARTINEZ FISCHER: In all aspects?

SPEAKER: And that the bill analysis is not substantially or materially misleading.

MARTINEZ FISCHER: And with regard to Rule 4, Section 32(c)(2), a repeal of a statute that's not explained in a detailed bill analysis, that's part of your ruling, as well?

SPEAKER: Yes, sir, it is.

MARTINEZ FISCHER: Thank you, Mr. Speaker.

### REMARKS ORDERED PRINTED

The speaker moved to print remarks between Representative Martinez Fischer and the speaker.

The motion prevailed.

### CSSB 14 - POINT OF ORDER

Representative Coleman raised a point of order against further consideration of CSSB 14 under Rule 4, Section 32(c) of the House Rules on the grounds that the bill analysis is materially or substantially misleading.

The speaker overruled the point of order, speaking as follows:

Mr. Coleman raises a point of order under Rule 4, Section 32. Specifically, the provision relating to the use of passports found on page 1 of the bill analysis is not sufficiently detailed enough continuously through the bill analysis. The chair has reviewed the bill and the bill analysis and finds that the provision complained of, relating to passports, is contained in the bill analysis and is not materially or substantially misleading. Accordingly, the point of order is respectfully overruled.

### CSSB 14 - POINT OF ORDER

Representative Martinez Fischer raised a point of order against further consideration of **CSSB 14** under Article III, Section 49-k of the Texas Constitution on the grounds that the bill reduces, rescinds, or repeals the Texas Mobility Fund.

The speaker overruled the point of order, speaking as follows:

Mr. Martinez Fischer raises a point of order under Article III, Section 49-k of the Texas Constitution. Specifically, Mr. Martinez Fischer argues that the bill reduces, rescinds, or repeals authority to collect funds under the Texas Mobility Fund. The chair has reviewed the argument, the question raised by Mr. Martinez Fischer was a provision that was constitutional whether any infirmity must be addressed in this bill or any bill if the bill is effective unless changed. It's precisely the type of constitutional points of order traditionally not ruled on. The chair will continue that tradition and the point of order is respectfully overruled.

### PARLIAMENTARY INQUIRY

REPRESENTATIVE MARTINEZ FISCHER: The chair, in his ruling, failed to indicate whether they found this to be a substantive challenge or a procedural challenge to the constitution and I'd like to know which it is.

SPEAKER STRAUS: Mr. Martinez Fischer, the chair found that this deals with a substantive constitutional issue.

MARTINEZ FISCHER: Mr. Speaker, parliamentary inquiry.

SPEAKER: State your inquiry.

MARTINEZ FISCHER: Is the constitutional article that says bills must be read on three several days, is that procedural or substantive?

SPEAKER: That is a point of order that has traditionally been ruled on by the chair.

MARTINEZ FISCHER: As procedural or substantive?

SPEAKER: As a discussion of legislative procedure.

MARTINEZ FISCHER: And Mr. Speaker, further inquiry, is the constitutional provision saying that all bills must pass both houses of the legislature, is that procedural or substantive?

SPEAKER: Again, Mr. Martinez Fischer, that is a point of order that has been ruled on, on legislative procedure.

MARTINEZ FISCHER: Okay, and the constitutional provisions related to the two-subject rule, is that also procedural, or is it substantive?

SPEAKER: Mr. Martinez Fischer, in ruling on Article III, Section 49-k of the constitution, we found that that did not fall within classes of legislative procedures traditionally ruled on by the chair.

MARTINEZ FISCHER: With respect to the substantive ruling of this chair, there was not a substantive claim made in the point of order, in fact, the point of order was launched because the procedure by which a bill comes to the floor that repeals, rescinds, or reduces constitutionally dedicated monies—my argument is, procedurally, no bill can come to the floor that does that unless they comply with the constitution, which requires them to explain how they plan to reallocate the monies they deprive from the mobility fund. And so, procedurally, that is what my point is. I'm not arguing the substantive matter, as to whether or not the Article III, Section 49 even applies in this instance. I am saying—I am saying that procedurally, just like procedurally we read bills on three separate days, just like procedurally we pass bills out of the house and senate, this is also a procedure by which we bring bills to the floor that are in order and not in order. And my procedural argument is that the bill is not in order, because procedurally it deprives the mobility fund of its dedicated source of funding, and the only way, procedurally, that we can proceed is if we allocate monies to replenish what we take. I'm not arguing as to the substantive merits of that, I'm arguing that is a necessary step for a bill to be in order. So if the chair wants to rule that procedurally I am overruled, I will sit down. But my point of order is specific to this procedural component of the constitutional article and not the substantive interpretation.

SPEAKER: Mr. Martinez Fischer, we have reviewed and heard your arguments, we've looked for precedent, there is none. And the point of order is respectfully overruled and I'd be happy to take this exchange between me and you and have it entered into the journal.

MARTINEZ FISCHER: We can put it on the journal, we can put it on a billboard, but we're here today, and just because there isn't precedent, that's not a reason to overrule the point of order. And I will say that the reason why you may not find a precedent is that the creation of the mobility fund is relatively new and I think that only in two instances in our Texas Constitution do we place the procedural hurdle of protecting dedicated funds. One is for the mobility fund, and one is for the rail relocation fund. We have an obligation, as lawmakers, to not submit the full faith and credit of the State of Texas to bond holders when we take money that they are relying on to pay for construction bonds. And so I'm not arguing the substantive part of that, I am wanting the chair to make a ruling that, procedurally, you do not have to replenish money that you procedurally take out of the mobility fund, not the substantive interpretation of the fund itself. And so if the chair wants to put in its ruling we've reviewed the procedural argument and we find, procedurally, there's nothing there, then I will sit down.

SPEAKER: Mr. Martinez Fischer, the chair will revise its ruling to include the arguments you've made, thank you.

MARTINEZ FISCHER: So that will be, in fact, the chair's ruling? Will the chair please read that ruling to me?

SPEAKER: Point of order is respectfully overruled.

MARTINEZ FISCHER: On procedural grounds?

SPEAKER: The chair has listened respectfully to your arguments and respectfully overrules your point of order.

MARTINEZ FISCHER: If the chair is making its ruling on the substantive interpretation of Article III, Section 49, then the chair has not heard my argument. My argument is on the procedural hurdle that exists with respect to Article III, Section 49. And so, procedurally, once again, Mr. Speaker, if there is an overruling of the procedural point of order, I will stand by the chair's ruling. But I need to hear that to be the chair's ruling.

SPEAKER: Mr. Martinez Fischer, the chair overrules on all grounds that you've raised. Thank you.

### REMARKS ORDERED PRINTED

Representative Martinez Fischer moved to print remarks between the speaker and Representative Martinez Fischer.

The motion prevailed.

(Geren in the chair)

Pursuant to Rule 5, Section 28 of the House Rules, Representative Anchia requested a second extension of speaking time on CSSB 14.

There being objection, the request was not granted.

**Amendment No. 1**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking the enacting clause (page 1, line 4).

Amendment No. 1 was withdrawn.

**Amendment No. 2**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend CSSB 14 (house committee printing) as follows:

(1) Strike SECTIONS 1 and 2 of the bill (page 1, line 5, through page 2, line 2) and renumber the remaining SECTIONS of the bill accordingly.

(2) In SECTION 9 of the bill, strike amended Section 63.001(b), Election Code (page 5, lines 2 through 6), and substitute the following:

(b) On offering to vote, a voter must present to an election officer at the polling place:

(1) one form of photo identification described by Section 63.0101; or

(2) the voter's voter registration certificate, accompanied by the affidavit described by Subsection (h) [to an election officer at the polling place].

(3) In SECTION 9 of the bill, strike added Section 63.001(h), Election Code (page 6, lines 15 through 23), and substitute the following:

(h) If the requirement for identification prescribed by Subsection (b)(1) is not met, an election officer shall notify the voter that the voter may be accepted for voting if the voter executes an affidavit under penalty of perjury stating that the voter is the person named on the voter registration certificate.

Wednesday, March 23, 2011     HOUSE JOURNAL — 40th Day     959

(4) Strike SECTION 17 of the bill (page 11, line 24, through page 12, line 20) and substitute the following:

SECTION 17. Section 65.054(b), Election Code, is amended to read as follows:

(b) A provisional ballot shall [may] be accepted [only] if the board determines that:

(1) [,] from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election; and

(2) the person meets the identification requirements of Section 63.001(b) at the time the ballot was cast or in the period prescribed under Section 65.0541.

(5) In SECTION 18 of the bill, strike added Section 65.0541(a), Election Code (page 12, line 24, through page 13, line 4) and substitute the following:

(a) A voter who is accepted for provisional voting under Section 63.011 because the voter does not meet the identification requirements of Section 63.001(b) may, not later than the sixth day after the date of the election, present a form of identification described by Section 63.0101 to the voter registrar for examination.

Amendment No. 2 was withdrawn.

**Amendment No. 3**

Representatives Giddings and Bonnen offered the following amendment to CSSB 14:

Amend **CSSB 14** (house committee printing) as follows:

(1) In the recital to SECTION 9 of the bill (page 5, line 1), strike "(g) and (h)" and substitute "(g), (h), and (i)".

(2) In SECTION 9 of the bill, in amended Section 63.001(b), Election Code (page 5, line 2), strike "Subsection (h)" and substitute "Subsection (h) or (i)".

(3) In SECTION 9 of the bill, following added Section 63.001(h), Election Code (page 6, between lines 23 and 24), add the following:

(i) A voter who would otherwise be accepted for voting under this chapter but for the requirements of Subsection (b) shall be accepted for voting if, instead of presenting the identification required by Subsection (b), the voter executes an affidavit under penalty of perjury that asserts that the voter's proof of identification meeting the requirements of Subsection (b) has been stolen and the voter presents to an election officer a copy of an official police report, dated not earlier than the 45th day before the date on which the voter seeks to vote, alleging that the voter was a victim of an offense described by Section 32.51, Penal Code. The voter may redact personal information on the report relating to the voter, other than the voter's name, address, or date of birth. A report presented under this section is not required to contain the voter's date of birth.

Amendment No. 3 was adopted.

**Amendment No. 4**

Representative Turner offered the following amendment to **CSSB 14**:

Amend **CSSB 14** as follows:

(1) SECTION 9, page 5, line 3, after "election officer" add the following language:

<u>in a county with more than 4 million people, whom meets the requirements as set out in Chapter 85, Section 85.009 Elections Code for early voting; and Chapter 32, Section 32.002 for non-early voting or any other election governed by Chapter 32.</u>

(2) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 32, Sec. 32.002 (2)(c), Elections Code, is amended to read as follows:

(c) The presiding judge and alternate presiding judge must be affiliated or aligned with different political parties, subject to this subsection. Before July of each year in a county to which Subsection (a)(1) applies or before August of each year in a county to which Subsection (a)(2) applies, the county chair of a political party whose candidate for governor received the highest or second highest number of votes in the county in the most recent gubernatorial general election shall submit in writing to the commissioners court a list of names of persons in order of preference for each precinct who are eligible for appointment as an election judge. The county chair may supplement the list of names of persons until the 20th day before a general election or the 15th day before a special election in case an appointed election judge becomes unable to serve. The commissioners court shall appoint the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection <u>by the same party as the state representative in the district where the voting place is located, and</u> the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the <u>other political parties list</u> ~~party with the second-highest number of votes in the precinct~~ as the alternate presiding judge. The commissioners court may reject the list if the persons whose names are submitted on the list are determined not to meet the applicable eligibility requirements.

(3) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Chapter 85, Elections Code, is amended to read as follows:

Sec. 85.009. ELECTION OFFICERS FOR GENERAL ELECTION FOR STATE AND COUNTY OFFICERS. (a) The county clerk shall select election officers for the main early voting polling place and any branch polling place from a list provided under Subsection (b), in a manner that provides equal representation to the extent possible for each political party holding a primary election in the county.

(b) Before July of each year, the county chair of each political party holding a primary election in the county shall submit in writing to the county clerk a list of names of persons in order of preference for each early voting polling place

who are eligible for selection as an election officer. The county chair may supplement the list of names of persons until the 30th day before early voting begins in case an appointed election officer becomes unable to serve.

(1) The county clerk shall appoint the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the party with the highest number of votes in the county as the presiding election officer of that polling place and the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the party with the second highest number of votes in the county as the alternate presiding election officer of that polling place.

(2) The county clerk shall appoint additional election officers for each polling place in the manner described by Subsection (a). The county clerk may reject the list if the persons whose names are submitted on the list are determined not to meet the applicable eligibility requirements. as follows: The county clerk shall appoint the first person meeting the applicable eligibility requirements from the list submitted by the same political party as the state representative in the district where the voting place is located and the first person meeting the applicable eligibility requirements from the list submitted in compliance with this subsection by the other political parties list as the alternate presiding judge.

Amendment No. 4 was withdrawn.

**Amendment No. 5**

Representative Hochberg offered the following amendment to **CSSB 14**:

Amend **CSSB 14** on page 5, line 14, by inserting "under standards adopted by the secretary of state" between "list" and the comma.

Amendment No. 5 was adopted.

**Amendment No. 6**

Representative Y. Davis offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) is amended as follows:
(1) Strike lines 12 thru 14 on page 6 and replace the following:
   (D) includes notice that if all procedures are followed, the voter's provisional ballot will be accepted.

(Speaker in the chair)

Amendment No. 6 was withdrawn.

**Amendment No. 7**

Representatives Bonnen, Zedler, Simpson, Creighton, S. Miller, Lyne, Otto, Chisum, Madden, T. Smith, W. Smith, D. Miller, Jackson, Berman, Lewis, Hartnett, Landtroop, Kleinschmidt, J. Davis, Zerwas, Flynn, Crownover, Isaac, Parker, Larson, Orr, Hopson, Truitt, Brown, Scott, Morrison, V. Taylor, P. King, Callegari, S. King, Sheets, Laubenberg, L. Gonzales, Margo, Schwertner, Price, Harper-Brown, Driver, Shelton, Aliseda, Smithee, Aycock, Hancock, and Garza offered the following amendment to **CSSB 14**: