LOZANO: So wouldn't this amendment actually be an extension of what the majority of that supreme court held in that ruling?

HARLESS: In the *Marion v.—Crawford v. Marion County Election Board*, the court ruled the requirement to produce photo ID imposes only a limited burden on the voter and justifies by the states interest in restoring confidence in elections and deterring fraud.

VEASEY: Members, especially my friends on the other side of the aisle that are republican, I ask you to please join me in defeating Ms. Harless' motion to table and support this amendment. This is a very easy amendment. All it says is that if people have really been discriminated against that you will come and stand with me and that you will come and join me. That is the argument that is made over and over and over on the republican talk radio shows—on WBAP, that's what republican friends say—that if you can prove real discrimination, I will come and stand with you. Now, this amendment says that if the secretary of state determines that most of the people are denied the right to vote are black and Hispanic, that the law will no longer exist. Ms. Harless has said, over and over that that will not happen. That, in fact, more people will go out to vote, because they will have confidence in the voting process. So, why not accept this amendment, so we can move along, and we can all feel good that we stood up against discrimination.

LOZANO: Mr. Veasey, I understand the significance of this amendment, and I really hope everyone's listening, because this amendment could potentially save this bill from adverse actions from the United States Supreme Court. We should not, and I think you would agree, be sending out bills that are probably going to get overturned by the United States Supreme Court. Based on their ruling, this behooves us— it would behoove us to support this amendment. Based on the six justices in favor of the voter ID law in Indiana saying exactly what your amendment says, I think it would be in our best interest, in the house of representatives, to support this amendment. I strongly urge everyone to vote against tabling this amendment.

VEASEY: I think that this is the amendment that definitely follows the supreme court decision, and I also believe that this is the amendment that makes you feel good about not committing discrimination against your neighbor. Taking an overseas mission, or fellowshipping with the church across town once a year, and passing this bill is not the way to feel good. The way to feel good is to stand up for civil rights when you have the opportunity to. I move to defeat Ms. Harless' amendment—please vote no on the motion to table.

Representative Harless moved to table Amendment No. 55.

The motion to table prevailed by (Record 140): 99 Yeas, 48 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren;

Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker; Taylor, L.(C).

Absent — Marquez.

### STATEMENT OF VOTE

When Record No. 140 was taken, I was in the house but away from my desk. I would have voted no.

Marquez

### REMARKS ORDERED PRINTED

Representative Lozano moved to print remarks between Representative Harless and Representative Lozano and between Representative Veasey and Representative Lozano.

The motion prevailed.

(Speaker in the chair)

**Amendment No. 56**

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:
SECTION ____. The changes in law made by this Act do not take effect unless the comptroller certifies that the changes will not reduce the revenue made available to the Texas mobility fund under Section 49-k, Article III, Texas Constitution.

Representative Harless moved to table Amendment No. 56.

The motion to table prevailed by (Record 141): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Hopson; Riddle.

### STATEMENTS OF VOTE

When Record No. 141 was taken, my vote failed to register. I would have voted yes.

Hopson

When Record No. 141 was taken, I was in the house but away from my desk. I would have voted yes.

Riddle

### Amendment No. 57

Representative Anchia offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:
    SECTION____. This Act does not make an appropriation. This Act takes effect only if a specific appropriation for the implementation of this Act is provided in a general appropriations act of the 82nd Legislature.

Representative Harless moved to table Amendment No. 57.

The motion to table prevailed by (Record 142): 99 Yeas, 48 Nays, 1 Present, not voting.

Case 2:13-cv-00193   Document 743-22   Filed on 11/17/14 in TXSD   Page 4 of 17

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

Absent — Howard, C.; Smith, W.

**Amendment No. 58**

Representative Anchia offered the following amendment to CSSB 14:

Amend CSSB 14 by striking SECTION 25 of the bill (house committee printing, page 15, lines 11-12) and substituting the following:

SECTION 25. Except as otherwise provided by this Act, this Act takes effect on the later of:

    (1) January 1, 2012; or

    (2) the date on which the secretary of state completes a study that:

        (A) provides an analysis, disaggregated by ethnicity and county, of the access to photo identification by state residents, including the availability of, location of offices for, and cost of obtaining the following:

            (i) a passport;

            (ii) a driver's license or personal identification card; and

            (iii) citizenship documents that include the person's photograph; and

        (B) provides an analysis of the potential impact on voter turnout if the changes in law made by this Act take effect based on:

            (i) aggregate turnout data at the county level; and

            (ii) individual-level survey data from current population surveys conducted by the United States Census Bureau for source data.

Representative Harless moved to table Amendment No. 58.

1022                82nd LEGISLATURE — REGULAR SESSION

The motion to table prevailed by (Record 143): 101 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pickett; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

**Amendment No. 59**

Representative Dutton offered the following amendment to CSSB 14:

Amend CSSB 14 (house committee printing) as follows:
(1) Add the following appropriately numbered SECTION to the bill and renumber subsequent SECTIONS of the bill accordingly:
    SECTION ____. Section 1.005, Election Code, is amended by adding Subdivision (25) to read as follows:
        (25) "Early voting ballot board" means the early voting and provisional voting ballot board.
(2) In the recital to SECTION 17 of the bill (page 11, line 25), strike "Subsection (b)" and substitute "Subsections (a) and (b)".
(3) In SECTION 17 of the bill, before amended Section 65.054(b), Election Code (page 11, between lines 26 and 27), add the following:
        (a) The early voting and provisional voting ballot board shall examine each affidavit executed under Section 63.011 and determine whether to accept the provisional ballot of the voter who executed the affidavit.

Amendment No. 59 was adopted.

**Amendment No. 60**

Representative Reynolds offered the following amendment to CSSB 14:

Wednesday, March 23, 2011     HOUSE JOURNAL — 40th Day     1023

Amend CSSB 14 by adding the following appropriately numbered SECTION and renumbering the existing SECTIONS as appropriate:

SECTION ____. Effective January 1, 2012, Subchapter A, Chapter 61, Election Code, is amended by adding Section 61.015 to read as follows:

Sec. 61.015. ILLEGAL REMOVAL OF VOTER FROM CERTAIN DOCUMENTS. (a) An election officer commits an offense if the officer knowingly removes the name of an eligible voter from the list of registered voters or the poll list for a precinct.

(b) An offense under this section is a state jail felony.

Representative Hancock moved to table Amendment No. 60.

The motion to table prevailed by (Record 144): 99 Yeas, 48 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Vo; Walle; White.

Present, not voting — Mr. Speaker(C).

Absent — Eiland; Villarreal.

**Amendment No. 61**

Representative Martinez offered the following amendment to CSSB 14:

Amend CSSB 14 (house committee printing) by inserting the following appropriately-numbered SECTION and updating any cross-references accordingly:

SECTION ____. The changes in law made by this Act do not apply to a lineal descendant of a person who was not permitted to vote:

1024            82nd LEGISLATURE — REGULAR SESSION

  (1) by law or party resolution adopted on or after January 1, 1923, in a primary election of any political party required by law to hold a primary because of the person's race, color, or previous condition of servitude; or

  (2) by law or party resolution adopted after March 2, 1836, because of a presumption based on the person's race, nationality, or color.

Representative Harless moved to table Amendment No. 61.

The motion to table prevailed by (Record 145): 100 Yeas, 44 Nays, 2 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Thompson; Turner; Veasey; Vo; Walle.

Present, not voting — Mr. Speaker(C); Anchia.

Absent — Eiland; King, T.; Strama; Villarreal.

### CSSB 14 - POINT OF ORDER

Representative Castro raised a point of order against further consideration of **CSSB 14** under Rule 4, Section 32(c)(4) of the House Rules on the grounds that the bill analysis is incorrect.

The speaker overruled the point of order, speaking as follows:

Representative Castro raises a point of order against further consideration of **SB 14**. Specifically, he alleges the bill analysis violates Rule 4, Section 32 in that it fails to identify the effective dates of the bill, including a website providing notice of identification requirements. The chair has reviewed the bill and the bill analysis. The chair finds the bill analysis was not substantially or materially misleading as it relates to the effective date of the bill. The point of order is respectfully overruled.

Case 2:13-cv-00193   Document 743-22   Filed on 11/17/14 in TXSD   Page 8 of 17

### Amendment No. 48 - Vote Reconsidered

Representative Veasey moved to reconsider the vote by which Amendment No. 48 was adopted.

The motion to reconsider prevailed.

Amendment No. 48 was adopted by (Record 146): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

### COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Urban Affairs meeting is cancelled.

### CSSB 14 - (consideration continued)

### Amendment No. 62

Representative Strama offered the following amendment to CSSB 14:

Amend **CSSB 14** (house committee printing) by striking all below the enacting clause and substituting the following:
SECTION 1. Subchapter A, Chapter 31, Election Code, is amended by adding Section 31.012 to read as follows:
Sec. 31.012. ELECTION INTEGRITY TRAINING. The secretary of state shall annually conduct, in at least four different geographic regions of the state, election integrity training for election officers, law enforcement personnel, and prosecutors in detecting, investigating, and prosecuting instances of voter fraud in which a person impersonates another person for the purpose of voting.

1026		82nd LEGISLATURE — REGULAR SESSION

SECTION 2.  Subchapter A, Chapter 273, Election Code, is amended by adding Sections 273.005 and 273.006 to read as follows:

Sec. 273.005. ELECTION INTEGRITY TASK FORCE.  Each district attorney or criminal district attorney shall create an election integrity task force to investigate and prosecute instances of voter fraud in which a person impersonates another person for purposes of voting.

Sec. 273.006. POST-ELECTION INTEGRITY AUDIT. (a) Following the general election for state and county officers, the county clerk of each county shall conduct a post-election integrity audit to examine and investigate any evidence of voter fraud in which a person impersonates another person for purposes of voting.

(b) The county clerk shall:

(1) not later than the 90th day after the date of the general election for state and county officers, file a report with the secretary of state and the commissioners court of the county providing details of the evidence collected in the audit; and

(2) refer any evidence of voter fraud collected under the audit to the county or district attorney with jurisdiction in the county.

SECTION 3.  This Act takes effect September 1, 2011.

**Amendment No. 62 - Point of Order**

Representative Phillips raised a point of order against further consideration of Amendment No. 62 under Rule 11, Section 2 and Rule 11, Section 3 of the House Rules on the grounds that the amendment is not germane to the bill and the amendment would change the original purpose of the bill.

The point of order was withdrawn.

Representative Harless moved to table Amendment No. 62.

The motion to table prevailed by (Record 147): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg;

Wednesday, March 23, 2011    HOUSE JOURNAL — 40th Day    1027

Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

**Amendment No. 63**

Representative Eiland offered the following amendment to **CSSB 14**:

Amend **CSSB 14** (house committee printing) by striking all below the enacting clause and substituting the following:

SECTION 1. Title 2, Election Code, is amended by adding Chapter 11A to read as follows:

CHAPTER 11A. VOTER IDENTIFICATION

Sec. 11A.001. APPLICABILITY. (a) Except as provided by Subsection (b), this chapter supersedes a provision of this code or a statute outside this code to the extent of any conflict.

(b) This chapter does not apply to the voter registration of a person who is 65 years of age or older. This subsection expires September 1, 2031.

Sec. 11A.002. DEFINITION. In this chapter, "department" means the Department of Public Safety.

Sec. 11A.003. VOTER IDENTIFICATION ISSUED BY DEPARTMENT. (a) The secretary of state shall adopt rules in conjunction with the department to establish a process by which the issuance of a driver's license or a personal identification card by the department is the sole means of voter identification for the purposes of being accepted for voting.

(b) The process established under this section must:

(1) phase out the use of voter registration certificates; and

(2) provide for the encryption of a person's voter registration number on the person's driver's license or personal identification card.

Sec. 11A.004. RULES. (a) The secretary of state shall adopt rules as necessary for the implementation and administration of this chapter.

(b) The department shall adopt rules as necessary for the implementation and administration of this chapter.

SECTION 2. Subchapter A, Chapter 12, Election Code, is amended by adding Section 12.007 to read as follows:

Sec. 12.007. CERTAIN ELECTION OFFICERS ARE VOTER REGISTRARS. An election officer serving a polling place for early voting by personal appearance is a deputy voter registrar and has the same authority as a regular deputy registrar.

SECTION 3. Section 65.054, Election Code, is amended by amending Subsection (b) and adding Subsection (b-1) to read as follows:

(b) Except as provided by Subsection (b-1), a [A] provisional ballot may be accepted only if the board determines that, from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election.

(b-1) A provisional ballot cast under Section 85.0312 shall be accepted if the voter registrar determines the applicant is eligible for registration under Section 85.0312(d).

SECTION 4. Subchapter B, Chapter 85, Election Code, is amended by adding Section 85.0312 to read as follows:

Sec. 85.0312. REGISTRATION AT POLLING PLACE DURING EARLY VOTING. (a) A person who would be eligible to vote in an election under Section 11.001, but for the requirement to be a registered voter, shall be accepted during early voting by personal appearance for voting the ballot for the precinct of the person's residence as shown by the identification presented if, on the day the person offers to vote, the person:

    (1) submits a voter registration application that complies with Section 13.002 to an election officer at the polling place; and

    (2) presents as proof of residence:

        (A) a Texas driver's license, including a temporary license or instruction permit, or personal identification card issued to the person by the Department of Public Safety that states the person's current address on the day the person seeks to vote; or

        (B) a utility bill addressed to the person dated not earlier than the 30th day before the date the person seeks to vote, and:

            (i) a Texas driver's license, including a temporary license or instruction permit, or personal identification card issued to the person by the Department of Public Safety, regardless of whether the address stated on the license or card is current on the day the person seeks to vote;

            (ii) a United States passport issued to the person; or

            (iii) a United States military identification card that contains the person's photograph.

    (b) The election officer shall make a copy of the proof of residence submitted under Subsection (a)(2) and attach it to the registration application. The election officer shall return the original proof of residence to the voter.

    (c) A person voting under this section shall vote a provisional ballot in the manner provided by Section 63.011 except that the person is not required to submit the affidavit under Section 63.011(a).

    (d) For each registration corresponding to a ballot cast under this section, the voter registrar shall review the application and copy of the proof of residence and determine whether the applicant is eligible for registration as provided by Subchapter C, Chapter 13. The registrar shall inform the early voting ballot board of a determination made under this subsection. A registration approved under this subsection takes effect on the date the vote was cast.

    (e) The secretary of state may by rule:

        (1) designate additional documents that a person may offer to prove the person's residence to register and vote under this section; and

        (2) prescribe procedures to implement this section.

SECTION 5. Section 521.422, Transportation Code, is amended by amending Subsection (a) and adding Subsection (d) to read as follows:

Wednesday, March 23, 2011   HOUSE JOURNAL — 40th Day   1029

(a) Except as provided by Subsection (d), the [The] fee for a personal identification certificate is:
 (1) $15 for a person under 60 years of age;
 (2) $5 for a person 60 years of age or older; and
 (3) $20 for a person subject to the registration requirements under Chapter 62, Code of Criminal Procedure.
(d) The department may not collect a fee for a personal identification certificate issued to a person who states that the person is obtaining the personal identification certificate for the purpose of being accepted for voting and does not have another form of identification for that purpose, and:
 (1) who is a registered voter in this state and presents a valid voter registration certificate; or
 (2) who is eligible for registration under Section 13.001, Election Code, and submits a registration application to the department.
SECTION 6. Not later than January 1, 2012, the secretary of state and the Department of Public Safety shall adopt rules required to implement the changes in law made by this Act.
SECTION 7. This Act takes effect September 1, 2011.

Representative Harless moved to table Amendment No. 63.

The motion to table prevailed by (Record 148): 100 Yeas, 49 Nays, 1 Present, not voting.

Yeas — Aliseda; Anderson, C.; Anderson, R.; Aycock; Beck; Berman; Bohac; Bonnen; Branch; Brown; Burkett; Button; Cain; Callegari; Carter; Chisum; Christian; Cook; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Driver; Eissler; Elkins; Fletcher; Flynn; Frullo; Garza; Geren; Gonzales, L.; Gooden; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Hilderbran; Hopson; Howard, C.; Huberty; Hughes; Hunter; Isaac; Jackson; Keffer; King, P.; King, S.; Kleinschmidt; Kolkhorst; Kuempel; Landtroop; Larson; Laubenberg; Lavender; Legler; Lewis; Lyne; Madden; Margo; Miller, D.; Miller, S.; Morrison; Murphy; Nash; Orr; Otto; Parker; Patrick; Paxton; Peña; Perry; Phillips; Pitts; Price; Riddle; Ritter; Schwertner; Scott; Sheets; Sheffield; Shelton; Simpson; Smith, T.; Smith, W.; Smithee; Solomons; Taylor, L.; Taylor, V.; Torres; Truitt; Weber; White; Woolley; Workman; Zedler; Zerwas.

Nays — Allen; Alonzo; Alvarado; Anchia; Burnam; Castro; Coleman; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farrar; Gallego; Giddings; Gonzales, V.; Gonzalez; Guillen; Gutierrez; Hernandez Luna; Hochberg; Howard, D.; Johnson; King, T.; Lozano; Lucio; Mallory Caraway; Marquez; Martinez; Martinez Fischer; McClendon; Menendez; Miles; Muñoz; Naishtat; Oliveira; Pickett; Quintanilla; Raymond; Reynolds; Rodriguez; Strama; Thompson; Turner; Veasey; Villarreal; Vo; Walle.

Present, not voting — Mr. Speaker(C).

## CSSB 14 - REMARKS

REPRESENTATIVE ALISEDA: Members, Mr. Speaker, it is such an honor to be standing here representing my district as a state representative and supporting Representative Harless and this voter ID bill. As I stated earlier today, I am a Mexican immigrant. I came to this country at the age of four and became a United States citizen at the age of 17. I want to show you what they use in Mexico to vote. This is a Mexican, federally issued, biometric ID card. It has on the front, a picture, on the back, a magnetic strip containing additional information, and a fingerprint. I'm a proud American now, and using an ID to vote just makes common sense, and we need it here and need it now. We need an ID in this country to do anything in today's society—to cash a check, to open a bank account, to do something as simple as rent a movie. Americans expect it, Americans want it. They want it because they want to believe their voting system is at least as safe as renting a movie at Blockbuster.

Do I believe that there are some Americans who do not vote because they feel it is useless because of fraud? Yes. How do I know that? Because they have told me so. I served this country for five years as a United States naval officer—my country. I did not do that so some dead person could vote, or so that Mickey Mouse registered by ACORN could vote. I served my home county, Bee County, as county attorney for eight years. In 1990, as a young democrat county attorney, I had investigated and I had prosecuted voter fraud cases. I actually had convictions. I did not do that just to bring the perpetrators to justice. I did it because my citizens needed to believe they had a clean and fair election system and that someone was fighting for that. That is exactly why I strongly support this bill.

My district is comprised of seven counties south of San Antonio, west of Corpus Christi. According to 2008 statistics, one county in my district, Goliad County, had more people registered to vote than persons eligible to vote. Under current laws, the opportunity for fraud is there. In 2008, a high-water mark for voter registration, Texas had an overall registration rate of 76 percent of eligible voters. In McMullen County, another one of my counties, in 2008, we had a voter registration percent of 97.9, 21.4 percent above the state average. The opportunity for fraud was probably there. In Jim Wells County—some of you may have heard of Jim Wells County, that's the home of the infamous "Box 13." In 2008, they had an eligible voter registration of 90.44 percent, or 14 percent above the state average. The opportunity for fraud was probably there. In 2004, in Bee County, we had a woman cast a ballot as if she was her deceased mother. In 2007, the Texas State Auditors Office found that Texas had 49,049 registered voters who may have been ineligible to vote. Of those, there were 23,500 voters on the rolls who were probably deceased. Would voter ID probably have stopped them if they had tried to vote? I think so. There were also 2,359 voters identified as having duplicate records. I believe voter ID would have helped there also. In the voter ID committee, I heard testimony from election officials that in-person voter fraud had probably occurred and that they had witnessed it. They testified that they had voters show up with multiple ID cards. Do I believe voter fraud has

Wednesday, March 23, 2011     HOUSE JOURNAL — 40th Day     1031

occurred? Yes. I believe that the majority of my constituents in my district, democrats, independents, and republicans want this, and I intend to vote for it and I ask that you do, also.

### REMARKS ORDERED PRINTED

Representative Peña moved to print remarks by Representative Aliseda.

The motion prevailed.

REPRESENTATIVE VEASEY: Members, I'm not going to talk long. We've had a very, very long evening. Of course, you know I'm in opposition of this bill, it discriminates and I think it will disenfranchise. And I was just kind of thinking about the history of the Texas House of Representatives and what has changed over the last 100 years or so. Obviously, the chamber has changed. It wasn't too long ago that there were no African Americans or no Hispanics at all that served in this body and it was largely because of the discrimination that took place at the polling place. And there was time when this body upheld certain segregationist policies that dealt with integrated schools and interracial marriage and other things like that, that obviously we would find despicable today. But, what hasn't changed, even though the parties have changed, is that when it comes time to doing the right thing on decisions that largely involve race, that conservatives just cannot do the right thing. It's too hard. People didn't do the right thing in regards to school desegregation, people just stuck with their communities. People didn't want to go against, people thought they weren't going to be able to come back here when it dealt with segregation, when it dealt with whether our colleges and universities were going to be integrated. People didn't do the right thing. When it came time to take a stance on slavery, people couldn't do the right thing. But I guarantee you, the people that served here in the 1950s and 60s, they'll look back and say, "You know what? That was wrong. When I was in the Texas Legislature, I should have done something. I should have stood up. I thought school segregation was right then. I thought that segregated water fountains were right then. I should have stood up and done the right thing." And I can guarantee you, after this bill passes, and we see who is discriminated against and we see who suffers because of the strict requirements in this bill, that just like the people who served here in the 1950s, just like the people who served here in the in 1930s and the people who served here during reconstruction and before. They had to look back in shame. They didn't have a good story to tell their kids and their grandkids about how they dealt with the issue of race. We are making the same mistake.

REPRESENTATIVE BURNAM: Representative Veasey, you and I were raised on the west side of Fort Worth, is that correct?

VEASEY: That is correct.

BURNAM: And while you're younger than I, we have very similar experiences in and around the Lake Como community neighborhood and what they have endured over the years. A couple of weeks ago, when we had the immigrant rights rally here, I was speaking in the crowd and I made mention to the fact of legislators of the 50s and 60s in Jim Crow times. And I said, this session was

1032         82nd LEGISLATURE — REGULAR SESSION

shaping up to be the most overtly racist session that I have witnessed in 25 or 30 years. Do you think what we have seen and heard today bears up on my comment?

VEASEY: I think that what is being done here today is no different from the things that were done here in the 50s, no different from the things that were done here previous to that. The things that were done here during reconstruction or before. I think it's horrible, I think it discriminates against people. I think that we'll look back in shame and I think we'll all look back and say, that's wrong. Because, people always do that. There is not a person here that will say what happened in the 50s and what happened in the 60s was the right thing. Back then everybody thought it was the right thing. But nobody would say it's the right thing, today. Back then it was very socially acceptable, it was the right thing to do. As a matter of fact, if you weren't against school desegregation back in the 1950s, then you were seen as an oddity in your community. You probably weren't invited to come back to the Lions Club.

BURNAM: Mr. Veasey, you know I am extremely proud to have your grandmother and your mother as my constituents, and I bet you also know that they are extremely proud of you today.

VEASEY: Thank you very much and I think it's time to close. I want to thank my colleagues for joining me. But, the people that will lose out, because of this bill, will mainly be Hispanics and blacks, poor, elderly, rural, and it's a shame that we are traveling back in history instead of moving forward and winning the future.

REPRESENTATIVE MARTINEZ: The foundation has been laid and the bricks and the mortar to start the building of wall has commenced. And although this is not a wall for a building, this is a wall built as yet another barrier, another obstacle, for minorities. This voter ID bill, or should I say, this voter restriction bill, voter suppression bill, is one of the toughest in the country. A bill that oppresses minorities and their right to vote. A bill written and fortified on pure speculation. For those members that have come up here and have talked about seeing voter fraud, why didn't you do anything about it? Pure speculation, members. Many of you who are in this chamber have never had the experience of not being served at a restaurant, or having to pick up the order at the back door, or being treated differently because of your race or the color of your skin. I can still remember growing up and hearing my grandparents and my parents saying they couldn't go to the south side of town after 10 o'clock because of their race. I can remember my grandfather saying that he couldn't pick up his order in a restaurant or be seated because he was Hispanic, because he was Mexican American. And all this is, and all this happened because of their race. This bill, members, is a personal attack on minorities. This bill undermines every civil rights movement, the work of every civil rights leader, and most of all undermines every minority in this state. Some members in this chamber can go back and check off your political agenda. You've done what you've had to do, you're going to vote on this bill. But to some of us, it is personal. This is our voice, this is the voice of the minorities I represent in my district, the voice of

minorities across the State of Texas. And we are taking a stand against the continuous oppression and persecution that this bill brings. For the minority members in this house, I ask you to stand with me today. To members who care about the minorities you represent, I ask you to stand with me today, so we can together against the continued oppression, persecution, and voter suppression in this state.

REPRESENTATIVE REYNOLDS: Are you familiar with Proverbs 31:8-9?

MARTINEZ: I would like for you to please refresh my memory on that, Representative Reynolds.

REYNOLDS: Well, I would say that Proverbs 31:8-9 simply says, "Speak out for the one who cannot speak, for the rights of those who are doomed. Speak out, judge fairly, and defend the right of oppressed and needy people." Would you say that that scripture pretty much summarizes the sentiments of the statement that you made in opposition of this, SB 14?

MARTINEZ: Absolutely representative, and I'm on a roll if you give it to me, I'll recite it right now.

REYNOLDS: Proverbs 31:8-9. Thank you.

### REMARKS ORDERED PRINTED

Representative Martinez Fischer moved to print remarks by Representative Veasey and between Representative Reynolds and Representative Martinez.

The motion prevailed.

REPRESENTATIVE Y. DAVIS: Thank you, Ms. Harless, I just want to get on the record, because there had been some discussion with regard to the cost of the bill and funding for the bill. So, I'd like to ask you, if you could explain to me, who's going to pay for this legislation we're passing? What is your understanding—who will pay for it?

REPRESENTATIVE HARLESS: My understanding is that there is a $2,024,000 fiscal note on it. We have money in the general appropriations bill, and we have a contingency rider. There's HAVA funds available if we request them and we are approved.

Y. DAVIS: Is it your explanation that there are actually two riders then?

HARLESS: One—

Y. DAVIS: Okay, so you mentioned two, so it's just the one contingency rider that deals with HAVA funds, is that correct?

HARLESS: I don't remember mentioning two—there's only one rider.

Y. DAVIS: I'm sorry—

HARLESS: I don't remember mentioning two. There's only—there always has been— and there's only one rider.

Y. DAVIS: Okay, and so if those HAVA funds, and those HAVA funds represent federal funding from the Obama administration, is that correct?

1034        82nd LEGISLATURE — REGULAR SESSION

HARLESS: Yes, they do.

Y. DAVIS: Okay, if those HAVA funds are not funded at the 2.024 level or if they are not funded at all, is there money for implementation of this bill, to your knowledge?

HARLESS: Yes.

Y. DAVIS: Okay, and could you explain what that funding source would be?

HARLESS: I think we have general appropriations funds set aside for the funding of this bill to educate voters.

Y. DAVIS: Okay, and is that a different rider than the one we just talked about?

HARLESS: In the appropriations bill that was laid out in January or February on page I-92, there is $39 million of HAVA funds and underneath the secretary of state and for this coming year and $9 million for the next year.

Y. DAVIS: So, it is your representation that we don't have to have the funds associated with this contingency law, but that they will be using funds that have already been received and will be used for a new program?

HARLESS: They're received and they're used for election training.

Y. DAVIS: But are they already obligated, or are they additional funds—they are existing funds that are not obligated, is that your understanding?

HARLESS: Yes.

Y. DAVIS: And so we, in fact, would not have to apply for this money under Rider No. 11, the contingency appropriations, based on what you just articulated, is that correct?

HARLESS: We have to ask for approval from the election administration to use those funds for this source. That was the testimony in committee.

Y. DAVIS: Okay, so we would—so, I guess I want to make sure I understand—your representation is that the secretary of state already has HAVA funds that have not been appropriated that we can utilize for this program, whether we get additional funds or not won't matter. Is that what you're saying?

HARLESS: I'm not on the finance committee, but I know what's in the appropriations bill. There is money there for that.

Y. DAVIS: Okay, but I want to make sure I'm asking it correctly, because in the bill that we're going to take up next week, are you suggesting that, based on that bill that—the bill that's going to come to us—funds have not been appropriated, so if we don't get new funds, we have funds available for this program.

HARLESS: If we don't get new funds, we already have the HAVA money sitting in the general revenue. The testimony in committee, secretary of state Ann McGeehan, stated that we have received some $2 million of HAVA funds. We have spent up to—whatever the difference is—that equals the $43 million, and that money is to be spent for election training. It's in the general appropriations