| | |
|---|---|
| From: | Jason Baxter |
| Sent: | Monday, January 24, 2011 10:00 AM |
| To: | Amanda Montagne; Ryan LaRue_SC |
| Cc: | Bryan Hebert |
| Subject: | FW: Voter ID Talking Points & Analysis |
| Attachments: | VoterIDTalkingPoints1.24.11.pdf |

FYI

**From:** Brent Connett [mailto:brent@txcc.org]
**Sent:** Monday, January 24, 2011 9:57 AM
**To:** brent@txcc.org
**Cc:** tom@txcc.org
**Subject:** Voter ID Talking Points & Analysis

Senators,

In advance of your Committee of the Whole Senate meeting today, please see the attached Talking Points & Analysis document on election integrity. The piece recommends:

> The Legislature must secure the integrity of elections by verifying the citizenship of those registering to vote, requiring a photo ID to vote, removing non-qualified voters from voter registration lists, and improving absentee ballot security.

In addition to providing recommendations and talking points, this paper provides background on successful voter identification laws in Georgia and Indiana.

Sincerely,

Brent Connett
Texas Conservative Coalition
512-474-1798 (office)
512-799-8360 (cell)
txcc.org
facebook.com/txconservativecoalition


EXHIBIT 169 Hebert 6-17-14

2:13-cv-193 09/02/2014 DEF0508

HIGHLY CONFIDENTIAL

TX_00080568



# Election Integrity:
## Analysis and Talking Points
January 24, 2011

## Background: Elections Open to Fraud

Article 6, Section 2 of the Texas Constitution grants the right to vote only to U.S. citizens who are residents of Texas:

> Every person subject to none of the disqualifications provided by Section 1 of this article [under age 18, mentally incompetent, persons convicted of felonies] or by a law enacted under that section who is a <u>citizen of the United States</u> and who is a resident of this State shall be deemed a qualified voter. *[Emphasis added]*

It is clear that voting is a right reserved only for U.S. citizens. However, the lack of any explicit statutory mandate and procedural requirement to verify the qualification of voters leaves voting booths wide open fraud, stripping constitutional protections of any real value.

Sections 11.002(1) and (2) of the Texas Election Code list the top two qualifications for voting: age (18 or over) and citizenship (United States). The application to register to vote, available online through the Secretary of State website, begins with the following questions:

| | | |
|---|---|---|
| Are you a United States Citizen? | ☐ Yes | ☐ No |
| Will you be 18 years of age on or before election day? | ☐ Yes | ☐ No |
| If you checked 'no' in response to either of the above, do not complete this form. | | |
| Are you interested in serving as an election worker? | ☐ Yes | ☐ No |

Applicants who check "yes" to the citizenship question are taken at their word; there is no verification of citizenship by the state or local authorities. The Office of the Secretary of State, which oversees elections in Texas, confirms what statute and practice allude to: that citizenship verification goes no further than the honor system:

> ...under current Texas voter registration guidelines, there is no formal verification of an applicant's citizenship status... Texas relies on the applicant to provide accurate/truthful information on his or her voter registration application[i].

That admission alone is sufficient basis for legislative action: The system by which voters are registered must be improved so that citizenship and other eligibility requirements are verified before an applicant is placed on the voter rolls. However, the problems with election integrity in Texas go beyond the admission by the Secretary of State that applicants' eligibility is not verified. Non-citizens are registered to vote *and are voting in Texas elections*. Simple open records requests to five of Texas' most populous counties reveal the following:

- Since 1992, Harris County has cancelled the registration of 3,742 non-citizens who had registered to vote.
- 303 non-citizens were removed from voter rolls in Bexar County between 2003 and 2005; 41 of these non-citizens voted at least once.
- 1,889 non-citizens were removed from voters rolls in Dallas County between 1999 and 2007; 356 of these non-citizens voted at least once.
- 584 non-citizens have been removed from voter rolls in Tarrant County since 1999.
- 213 non-citizens were removed from voter rolls in El Paso County between January and October of 2006.[ii]

It is worth noting that these non-citizens were discovered on the voter rolls in just five counties *without* a comprehensive audit. Based on these initial results, it is likely that a statewide audit would yield many more ineligible voters on the rolls across the state.

## Photo Identification

To address these election integrity issues, the Legislature should create a secure system of voter registration, voter identification, and citizenship verification that require driver's license as both voter registration card and voter identification. The driver's license is a widely accepted form of identification that can be presented to law enforcement officials, and is widely used by private sector organizations as proof of identification for employment applications and purchasing certain over-the-counter medications. Using the driver's license as a basis for voter identification is a sensible reform to secure the integrity of elections.

In October 2008, the Texas Public Safety Commission enacted an administrative rule (37 T.A.C. § 15.171) that made several changes to the driver's licenses that are issued to legal immigrants. Those changes are reflected in the graphic [see right]. Most importantly, immigrant driver's licenses must clearly indicate that the holder is a temporary visitor, and they include the date on which the immigrant's visa expires. Therefore, requiring a driver's license (or Texas ID card) to be presented before voting would enable poll workers to ascertain the identification of the person presenting themselves to vote. Legal resident non-citizens would be immediately evident to poll workers, and illegal aliens would be barred from voting since they are unable to legally obtain a driver's license in Texas.

A secure driver's license should function as the primary form of identification with which individuals are able to vote, although other forms of state-issued photo ID—such as a Texas identification card—should also be acceptable. The experience of states like Georgia and Indiana – both of which have recently enacted voter photo ID – demonstrates that identification requirements work well and do not suppress turnout.

Between Georgia's 2004 general election (the last without photo ID requirements) and the state's 2008 general election (the first with photo ID requirements), turnout increased 6.7 percent statewide, compared to just a 2.4 percent increase in nearby Mississippi which is demographically similar, but has no photo ID requirement. The black share of the vote in Georgia increased from 25 percent to 30 percent between the two elections.[iii] Indiana's experience was similar. Democratic turnout in the 2008 general election increased by 8.3 percent under voter identification laws, compared to the 2004 general election when the laws were not in effect. The increase in neighboring Illinois was just 4.4 percent despite that state being the home of Democratic Presidential candidate Barack Obama.[iv]

These facts underscore the point that meaningful voter ID requirements certainly do not suppress turnout but may in fact increase turnout by strengthening voters' confidence in the electoral process. In addition, it is important to note that photo identification requirements have been approved by the nation's highest court. In April 2008 the U.S. Supreme Court upheld Indiana's photo identification law six-to-three in *Crawford v. Marion*.[v] The judgment of the Court issued by Justice Kennedy undermines volumes of spurious claims made by opponents of photo identification requirements, forever memorializing their constitutional weightlessness.

Justice Scalia's concurring opinion stated that "the universally applicable requirements of Indiana's voter-identification law are eminently reasonable" and that the burdens of photo identification were "minimal and justified." While an ID requirement may place a burden on voters, Justice Steven's opinion concluded that "burdens… arising from life's

vagaries, however, are neither so serious nor so frequent as to raise any question about the constitutionality of [photo ID requirements]."

Justice Steven's opinion also noted that for the few voters without identification, the burden of obtaining one (for free under Indiana's law), "does not qualify as a substantial burden on the right to vote."

In addition, it is worth noting that the U.S. Department of Justice recently dropped its objections to Georgia's citizenship verification law[vi], underscoring that verifying the citizenship of voter registration applicants is constitutional and can be pursued by other states. Under Georgia's process, more than 4,000 non-citizens were discovered on the state's voter rolls.

With photo identification as the centerpiece, there are a number of other election integrity measures that must be taken to help restrict opportunities for vote fraud:

1. Absentee Ballots: Mailed ballots present unique opportunities for fraud because the voter is not required to present themselves to a poll worker on election day. A warning to absentee voters on the Secretary of State's website underlines these risks:

> A stranger might "show up" on your doorstep offering to help you with your ballot soon after you've received it in the mail. We recommend you decline this kind of help for several reasons. If you allow your ballot to be mailed by someone you don't know, it might not be mailed at all. Your ballot will be rejected if a common or contract carrier attempts to deliver it to the elections office from the address of a candidate or a campaign's headquarters. The safety of your vote is best assured by asking someone you know and trust to help you read, mark or mail your ballot.[vii]

The security of mail-in ballots should be improved by requiring that only close family members or persons who reside at the same address are legally permitted to assist an absentee voter in submitting their mail-in ballot. In addition, the process of absentee voting could be made more secure by requiring voters to include a state-issued "voter registration number" on their application for an absentee ballot. This would deter fraud and would inject transparency and accountability into the absentee voting process.

2. Signage at Polling Place: Require signs to be posted at all polling places that clearly state the statutory definition of "qualified voter" (over eighteen years of age, U.S. citizen, registered).

3. Prosecution of Vote Fraud: Create an independent office within the Office of the Attorney General that is charged solely with the investigation and prosecution of voter fraud.

4. Voter Rolls: More-frequently purge voter registration lists of non-citizens, felons, and those who are deceased; and, forward the names of any non-citizen removed from voting rolls to the appropriate investigative agency for potential prosecution.

Summary: The Legislature must secure the integrity of elections by verifying the citizenship of those registering to vote, requiring a photo ID to vote, removing non-qualified voters from voter registration lists, and improving absentee ballot security.

TX_00080571

HIGHLY CONFIDENTIAL

Talking Points

- **Requiring voter ID is constitutional, practical and effective.**
  - The Supreme Court has ruled the voter ID constitutional.
  - The voter ID is practical: tie voter registration to a secure driver's license system that is already in practice in Texas.
  - Voter ID is effective as proven by the experience of Georgia and Indiana, which experienced increases in black voter participation after the ID was required.

- **The Texas Driver's License can be used as a secure voter identification card to combat vote fraud**
  - The Driver's License is a widely-accepted photo identification document that is readily identifiable by law enforcement agents, poll worker, and the general public.
  - Requiring voters to present a Texas Driver's License before voting would limit opportunities for in-person vote fraud.
  - Recent changes to the format of Driver's Licenses for non-citizens will assist poll workers in identifying those who are not eligible to vote in elections in Texas.
  - Photo identification requirements for voting have been affirmed by the U.S. Supreme Court.

- **Photo identification requirement to vote may in fact increase voter turnout:**
  - Claims that voter ID requirements suppress the vote have been proven false.
  - Both Indiana and Georgia experienced significant increases in voter turnout during their first general elections with photo ID requirements.
  - The increased turnout in the 2008 general election in these states exceeded that of other neighboring states, a trend that was mirrored among black voters and Democratic voters.
  - Photo ID improves voters' confidence in the electoral system, which can spur increased turnout.

- **A secure voter ID is necessary because current procedures for registering voters and accepting voters at polling places create opportunities for election fraud.**
  - The State of Texas does not verify the citizenship or other eligibility of persons applying to register to vote.
  - There is no meaningful identification requirement for persons presenting to vote at a polling place. Combined with the lack of eligibility verification, this leaves Texas elections wide open to fraud.

- **It is well-established that non-citizens are registering to vote *and are voting* in elections in Texas.**
  - Since 1992, Harris County has cancelled the registration of 3,742 non-citizens who had registered to vote.
  - 1,889 non-citizens were removed from voter rolls in Dallas County between 1999 and 2007; 356 of these non-citizens voted at least once.
  - 303 non-citizens were removed from voter rolls in Bexar County between 2003 and 2005; 41 of these non-citizens voted at least once.
  - These non-citizens were discovered through simple open records requests: no comprehensive audit of the state's voter rolls has been performed.

HIGHLY CONFIDENTIAL    TX_00080572

ENDNOTES

[i] Ann McGeehan, Director of Elections, Secretary of State; letter dated June 15, 2006
[ii] "State Approaches to Illegal Immigration," Texas Conservative Coalition Research Institute, October 2006.
[iii] Hans Von Spakovsky, "Requiring Identification by Voters," Testimony Before the Texas Senate (Heritage Foundation Online), March 23, 2009.
[iv] Hans Von Spakovsky, "Requiring Identification by Voters," Testimony Before the Texas Senate (Heritage Foundation Online), March 23, 2009.
[v] Crawford v. Marion County Election Board, 553 U.S. 181 (2008).
[vi] John Fund, "DOJ Reversal on Georgia Election Law," *Wall Street Journal*, August 28, 2010.
[vii] Early Voting in Texas, Office of the Secretary of State; http://www.sos.state.tx.us/elections/pamphlets/earlyvote.shtml