responses requiring the Defendants to provide complete legal and factual "detail" of the requested "process and procedures" that are controlled by both statutes and administrative rules. These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a detailed explanation of these issues, to the extent relevant, is more appropriate by deposition. Defendants would further object to these interrogatories to the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory or discretionary "process and procedures" under the Texas Transportation Code and other applicable codes and administrative regulations. Defendants further object to the extent the interrogatories seek information that is publicly available and/or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants would further object to the extent these interrogatories seek information that is not relevant to this cause of action and is not likely to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows:

**Interrogatory 6a**

*Detail the process of obtaining an EIC, as used in Section 63.0101 of the Texas Election Code (as amended by SB 14), ...*

Responding generally, persons who do not have photo identification acceptable for voting may visit any Texas driver license office, mobile EIC location, or county location that participates in the EIC program and complete a DL-14C, Application for Texas Election Certificate. Upon presentation of the completed application and required documents proving US citizenship and identity, the applicant's image will be captured and a temporary receipt

will be issued to the applicant for the Election Certificate. This temporary receipt contains a photograph and is acceptable for voting purposes in the same manner as the actual card. The card is processed in Austin, Texas and mailed to the applicant. With respect to the location available for receiving an EIC, see the documents included with the responses at TEX I.R. 000431 through TEX I.R. 000453; TEX I.R. 000001 through TEX I.R. 000012; TEX I.R. 000027 through TEX I.R. 000228.

Eligibility requirements for an election identification certificate (EIC) are found in the Texas Transportation Code, Chapter 521A. In order to qualify for an EIC, the applicant must be 17 years and 10 months of age or older, be a resident of Texas, be eligible to vote in Texas and present a valid voter registration card, or submit a voter registration application through the DPS or county.

To apply for an EIC the applicant must visit a Driver License Office, Mobile EIC Location, or County Location; complete an Application for Texas Election Certificate, Form DL-14C, and provide documentation to verify US citizenship and identity. An applicant for an EIC must provide documents satisfactory to the Department of Public Safety, and all documents must be verifiable. An applicant may present one piece of primary identification, two pieces of secondary identification, or one piece of secondary plus two pieces of supporting identification.

Issuing personnel will review the documents provided and process the application. Upon successful completion of the transaction, the customer is issued a transaction receipt which contains a photograph of the customer and is valid for 60 days. This document may be used in lieu of the actual EIC card for voting purposes until the EIC card is received in the mail

by the customer. The typical production time for an EIC card is up to 10 days.

**Interrogatory 6b**

"... *the underlying identification or documentation that a person must present to obtain an EIC*"

An applicant may present one piece of primary identification, two pieces of secondary identification, or one piece of secondary plus two pieces of supporting identification.

Primary Identification is a Texas driver license or personal identification card issued to the person that has been expired for 60 days and is within two years of expiration date.

The following four documents are secondary identification and must be recorded governmental documents from the United States, one of the 50 states, a U.S. territory, or District of Columbia:

- Original or certified copy of a birth certificate issued by the appropriate State Bureau of Vital Statistics or equivalent agency;

- Original or certified copy of United States Department of State Certification of Birth (issued to United States citizens born abroad); or

- Original or certified copy of court order with name and date of birth (DOB) indicating an official change of name and/or gender;

- U.S. citizenship or naturalization papers without identifiable photo.

Supporting identification consists of other records or documents that aid examining personnel in establishing the identity of the applicant:

- voter registration card;
- school records;
- insurance policy (at least two years old);
- Texas vehicle or boat title or registration;
- military records;
- unexpired military dependent identification card;

- original or certified copy of marriage license or divorce decree;
- Social Security card;
- pilot's license;
- unexpired photo DL or photo ID issued by another (United States) state, U.S. territory, the District of Columbia;
- expired photo DL or photo ID issued by another (United States) state, U.S. territory, or the District of Columbia that is within two years of the expiration date;
- a consular document issued by a state or national government;
- an offender identification card or similar form of identification issued by the Texas Department of Criminal Justice;
- forms W-2 or 1099;
- Numident record from the Social Security Administration;
- expired Texas driver license or personal identification certificate (expired more than two years);
- professional license issued by Texas state agency;
- identification card issued by government agency;
- parole or mandatory release certificate issued by the Texas Department of Criminal Justice;
- federal inmate identification card;
- federal parole or release certificate;
- Medicare or Medicaid card;
- Selective Service card;
- Immunization records;
- tribal membership card from federally recognized tribe;
- Certificate of Degree of Indian Blood;
- Veteran's Administration card;
- hospital issued birth record;
- any document that may be added to Section 15.24 of this title (relating to Identification of Applicants) other than those issued to persons who are not citizens of the U.S.

The list of approved documentation that can be used for identity purposes can be found on the DPS website and in 37 TAC, Part 1, Chapter 15, Subchapter L.

**Interrogatory 6c**

The Defendants do not have information regarding the process for obtaining each form of underlying documentation from other entities.

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

7.    Detail the process of obtaining a Texas license to carry a concealed handgun, including but not limited to the requirements for its issuance, the amount charged for its issuance, the delay (if any) between application and issuance, the underlying identification or documentation that a person must present to obtain a license to carry a concealed handgun, and the process (including requirements) for obtaining each form of underlying documentation.

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains at least three separate interrogatories. By asking the Defendants to "detail the process of obtaining a Texas license to carry a concealed handgun" [hereafter Interrogatory 7a] and then asking Defendants to detail "the underlying identification or documentation that a person must present to obtain a Texas license to carry a concealed handgun [hereafter Interrogatory 7b] and then asking Defendants to detail "the process (including requirements) for obtaining such underlying identification" [hereafter Interrogatory 7c] the interrogatory introduces lines of inquiry that are separate and distinct from the inquiry made by the portion of the inquiry that precedes each. *See Willingham v. Ashcroft,* 226 F.R.D. 57, 59 (D.D.C. 2005). Defendants will therefore construe Interrogatory 7 as three separate interrogatories.

Further, Defendants object to all three interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome to the extent they call for narrative responses requiring the Defendants to provide complete legal and factual "detail" of the requested "process and procedures" that are controlled by both statutes and administrative rules. These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a

---

detailed explanation of these issues, to the extent relevant, is more appropriate by deposition. Defendants would further object to these interrogatories to the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory or discretionary "process and procedures" under the Texas Government Code and other applicable codes and administrative regulations. Defendants further object to the extent the interrogatories seek information that is publicly available and/or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants would further object to the extent these interrogatories seek information that is not relevant to this cause of action and is not likely to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows:

**Interrogatory 7a**

The Texas Concealed Handgun Law is found in Government Code Chapter 411, Subchapter H. Eligibility requirements can be found in Government Code §411.172. Eligibility and Application requirements are further addressed in the administrative rules found at 37 Texas Administrative Code, Part1, Chapter 6. Responding generally, applicants must submit a completed application, pay the required fees and submit all of the required supplemental forms and materials. Applicants may apply online at http://www.texas.gov/txapp/txdps/chl/ or may download the application forms, complete and mail them with the required fees. Printable application forms are available on the DPS website at in the Downloadable Forms section. Applications are not made in person but are submitted electronically or via mail to DPS Headquarters in Austin.

The application fees vary from $140 for a standard individual to free for applicants who are active duty military or indigent. A list of the fees along with the statutory references for each is located on the Department of Public Safety's website. Individuals who choose to apply under a discounted rate must submit proof they meet the qualification for the discount. A complete list of fees along with the qualifications for discounted fee rate is found on the fee schedule.

CHL applicants must take a training course with a CHL Instructor certified by the Department of Public Safety. The course includes four to six hours of classroom training and a proficiency demonstration. The cost of the course is not regulated by statute or the Department of Public Safety and is in addition the application fees.

Once the individual has completed the application, provided fingerprints and completed the training course, all supporting documentation must be submitted to the Department to complete the application process. The documents may be sent electronically via email, by fax or through the mail. Upon receipt of a completed application the Department processes the application and is required by statute (Gov't Code §411.177) to issue the original license within 60 days or notify the applicant why the application was denied. Applications for renewal of a CHL must be processed within 45 days (Gov't Code §411.185).

**Interrogatory 7b**

Upon submission of an application, the individual must submit fingerprints electronically using the Department's Fingerprint Applicant Services of Texas (FAST) authorized provider. Instructions for scheduling an appointment are found on the Department's website. The department utilizes the Texas Driver License or Texas Identification Card photo

and signature on file for producing the laminated CHL. Applicants with a Texas Driver License or Identification Card are not required to submit a birth certificate. Applicants who hold an out of state driver license or identification card must submit a passport style photo and a copy of the out of state driver license or identification card.

**Interrogatory 7c**

With respect to obtaining a Texas Driver license or Texas Personal Identification Card, see the previous responses to Interrogatory Numbers 4a and 4b and Interrogatory Numbers 5a and 5b. The Defendants do not have information regarding the process for obtaining other forms of underlying documentation from other entities.

**8. Identify any and all specific complaints, allegations, investigations, or charges of in-person voter impersonation or other in-person voter fraud that occurred or are alleged to have occurred in the State of Texas from January 1, 2000, to the present. In response to this interrogatory, please include the date; place; election; persons involved; nature or method of the alleged, actual, or attempted fraud; disposition or outcome of the alleged, actual, or attempted fraud; and whether the instance was reported or made known to the Texas Legislature.**

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains at least two separate interrogatories. By asking the Defendants to "identify any and all specific complaints, allegations, investigations, or changes of in-person voter impersonation or other in-person voter fraud" [hereafter Interrogatory 8a] and then asking Defendants to state "whether the instance was reported or made known to the Texas Legislature" [hereafter Interrogatory 8b]

---

the interrogatory "introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it". *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005) (internal quotation and citation omitted). Defendants will therefore construe Interrogatory No. 8 as two separate interrogatories.

Further, as to both interrogatories, the Defendants object that they are vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The interrogatory requires the Defendants to "identify any and all specific complaints, allegations, investigations, or charges" for a period of fourteen years without any limitation as to whom, or by who, the complaints and allegations were made or by whom the investigations were conducted or by what person or agency brought the charges. Defendants further object to these interrogatories to the extent they seek information not personally known or controlled by the Defendants but is known and controlled by third parties, including private individuals and independent officers of the state and local governments. Defendants further object to these interrogatories to the extent they seek information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants further object to the extent these interrogatories seek disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product doctrine. Defendants further object to the extent these interrogatories seek information protected from disclosure by Texas Government code §323.017. Defendants further object to the extent these interrogatories seek the disclosure of information concerning active investigations and prosecutions of criminal conduct by law enforcement agencies and officials as revealing such information could compromise the success of the investigation and/or

prosecution.

Subject to and without waiving the foregoing objections, the Defendants respond as follows:

**Interrogatory 8a**

The Office of the Attorney General (OAG) maintains a list of complaints which include some specific allegations of in person voter impersonation, as well as other types of illegal voting, and criminal and fraudulent conduct occurring at the polling place. This document is known as the list of referrals, and it only includes matters referred to the Office of the Attorney General. The OAG does not have any knowledge of any comprehensive list of similar complaints which may have been received by all of the other law enforcement agencies in Texas who have concurrent jurisdiction to investigate felony and misdemeanor offenses in their respective jurisdictions. Texas does not have a statutory or regulatory requirement for local law enforcement to provide this information to the state as these offenses are not part of, or included in, the Uniform Crime Reporting system established by the Department of Justice and the Federal Bureau of Investigation. Additionally, this document does not include complaints, allegations, investigations, or criminal cases referred to all of the local county, district or county district attorneys who would have concurrent jurisdiction to investigate and prosecute the offenses. This list also does not include investigations conducted by the Texas Rangers, Texas Department of Public Safety, or federal authorities such as the Federal Bureau of Investigation, Homeland Security Investigations; or others which routinely investigate election violations or identify theft and fraud in the State of Texas as well.

This office also maintains a list of cases currently pending prosecution that were

investigated, being prosecuted, or a combination of both, by this office. This office also maintains a document summarizing criminal prosecutions by this office and some local prosecutors who have resolved OAG investigations. This office has no knowledge of a comprehensive list or document summarizing the polling place election fraud felony and misdemeanor prosecutions of all of the prosecutors in this state. Again, Texas does not have statutory or regulatory requirement for local prosecutors to provide this information to the state as these offenses are not part of, or included in, the Uniform Crime Reporting system established by the Department of Justice and the Federal Bureau of Investigation. Furthermore, the District and County Clerks of Texas do not report these specific offense titles to the state as they would be characterized as other non-specific felonies and misdemeanors according to the Office of Court Administration. Finally, these documents do not include federal prosecutions by the four different US Attorney's Offices prosecuting cases in Texas. The referenced documents are included with these responses as TEX I.R. 000232 through TEX I.R. 000261.

Further, pursuant to Federal Rule of Civil Procedure 33(d), the requested information may be derived from documents provided in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012) and numbered: TX __ 00148056 through TX _ 00148061; TX__148163 through TX _-148170; TX__00057255 through TX ___00057284; TX __00056816 through TX __00056834; TX __00267733 through TX __00269313; and TX__00018125 through TX__00018126. In addition, see the documents included with these responses as TEX I.R. 000229 through TEX I.R. 000231.

**Interrogatory 8b**

On March 1, 2011, the Select Committee on Voter Identification and Voter Fraud took testimony on SB 14. Several of the witnesses testifying for the bill claimed to have knowledge of in-person voter fraud:

- Skipper Wallace, Chairman of the Republican County Chairman's Association, described in-person voter fraud (I@24.40);

- David Carter described in-person voter fraud (I@47:40);

- Series of witnesses representing the Objective Watchers of the Legal System (OWLS) describe in-person voter fraud in Progresso (II@1.33)

- Alan Vera who worked as an election judge describes three instances of voter fraud (II@1:55)

- Maryanne Collins who has been an election judge for 30 years, describes in-person voter fraud (II@3:20)

- Carol Kitson who served as an alternate election judge describes in-person voter fraud (II@3:27)

- David Maxwell with the AG's Office describes in-person voter fraud cases (II@4:31).

These instances of in-person voter fraud were "reported or made known to the Texas Legislature." Other than information provided by the witness in testimony, we do not have the date, place, election, persons involved, nature or method of the alleged, actual or attempted fraud, disposition or outcome of the alleged, actual, or attempted fraud.

The video recording of the testimony is available at:

http://www.house.state.tx.us/video-audio/committee-broadcasts/committee-archives/?committee=485&session=82

The list of the witnesses testifying for the bill is available at:

http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C4852011030108001.PDF.

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

Page 34

9. Identify each person with knowledge of or information about each incident described in your response to Interrogatory 8. For each person, please specify the incident about which he or she has knowledge or information.

**OBJECTION:** The Defendants object that this interrogatory is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The interrogatory requires the Defendants to identify each person with knowledge of or information about any all specific complaints, allegations, investigations, or charges for a period of fourteen years without any limitation as to whom, or by who, the complaints and allegations were made or by whom the investigations were conducted or by what person or agency brought the charges. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known and controlled by third parties, including private individuals and independent officers of the state and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants further object to the extent these interrogatories seek disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product doctrine. Defendants further object to the extent these interrogatories seek information protected from disclosure by Texas Government code §323.017. Defendants further object to the extent these interrogatories seek the disclosure of information concerning active investigations and prosecutions of criminal conduct by law enforcement agencies and officials as revealing such information could compromise the success of the investigation and/or prosecution.

Subject to and without waiving the foregoing objections, the Defendants respond as follows: See the Defendants' responses to Interrogatory Numbers 8a and 8b.

10. In those instances when a voter appears to vote in person without required identification under Texas Election Code § 63.0101 (as amended by SB 14), detail the process and procedures that a poll official must follow to allow a person to cast a ballot (specifying which procedures result in a regular ballot and which procedures result in a provisional ballot), including identifying those steps in the process where a poll official may exercise his or her discretion as to the type of ballot that person would be entitled to cast.

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains at least two separate interrogatories. By asking the Defendants to "detail the process and procedures that a poll official must follow to allow a person to cast a ballot" [hereafter Interrogatory 10a] and then asking the Defendants to identify the steps "where a poll official may exercise his or her discretion as to the type of ballot that person would be entitled to cast", [hereafter Interrogatory 10b], the interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it". *Willingham v. Ashcroft*, 226 F.R.D 57, 59 (D.D.C. 2005) (internal quotation and citation omitted). Defendants will therefore construe Interrogatory No. 10 as two separate interrogatories.

Further, Defendants object to both separate interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome to the extent they call for narrative responses requiring the Defendants to provide complete factual "detail" of the requested

"process and procedures". These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a detailed explanation of the issue is more appropriate by deposition. Defendants would further object to these interrogatories to the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory "process and procedure" and/or the exercise of discretion under the Texas Election Code. Defendants further object to the extent that these interrogatories request information that is publicly available and /or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows:

**Interrogatory 10a**

Responding generally, in the instance where a voter appears to vote in person, the following procedures would be followed to notify voters of their rights and to properly assist a voter that does not have an acceptable form of identification under 63.0101:

1. Upon entering the polling place, the voter should see a "Notice of Acceptable Identification." The notices shall be posted in a "prominent location" at each polling location under §62.016. This Notice provides voters with a list of acceptable identification, and provides the voter information about their right to seek a permanent exemption due to disability, or a temporary exemption due to religious objection or natural disaster.

2. After entering the polling place, the voter will check-in with an election worker at the check-in table. At that time, the election worker will ask the voter for an acceptable form of identification as listed in 63.0101. If the voter does not have an acceptable form of

identification with them, the following will occur:

    a.    As the voter has not cast their ballot, the voter is entitled to leave the polling place, and return with an acceptable form of identification. The election worker may advise the voter of this right. For example, the voter may have realized that he left his acceptable identification at home, and would like to go home, get the identification and then return to the polling place. In the alternate, if the voter realizes that he does not have an acceptable form of identification under 63.0101, the voter may leave the polling place to obtain a free Election Identification Certificate (EIC) and then return to the polling place during early voting or on election day. (DPS issues temporary EICs with a photograph that are acceptable for voting.) Upon returning to the polling place with an acceptable form of identification, the voter will cast a regular ballot.

    b.    If the voter does not have an acceptable form of identification, and does not wish to leave the polling place to obtain one, the election workers are required to notify the voter of his right to cast a provisional ballot, and offer the voter a provisional ballot. No voter is turned away from the polls for lack of acceptable identification. In addition to notifying the voter of this right, the election workers are required to inform the voter, by giving them a "Notice to Provisional Voter" form, that if casting a provisional ballot for identification reasons, the voter has the right to bring an acceptable form of identification or execute an affidavit at the Voter Registrar's office within 6 days of the date of the election to have the provisional ballot counted. The Notice to Provisional Voter form must contain the following information under 63.001(g) for the voter:

- List of acceptable identification;

- Procedures for presenting identification/executing an affidavit at the Voter Registrar's Office;
- A map showing the location(s) of Voter Registrar Offices;
- A notice stating that if the procedures are followed, the ballot will be counted.

3. If the voter brings an acceptable identification to the Voter Registrar's Office within six days of the election, the Voter Registrar will mark the provisional affidavit envelope to note that the voter has "cured" by presenting an acceptable form of identification. In turn, the Early Voting Ballot Board shall count the ballot as the voter has followed the proper procedure.

4. If a voter does not have an acceptable form of identification due to disability, the voter may apply for a permanent exemption to the photo identification requirement at the Voter's Registrar's office during the cure period (beginning the first day of early voting and ending six days from date of election). If the application is complete, the Voter Registrar will accept and process the application. The Voter Registrar then will mark the provisional affidavit envelope to note that the voter has "cured" by meeting the disability exemption. In turn, the Early Voting Ballot Board shall count the ballot as the voter has followed the proper procedure.

5. Finally, if a voter does not have an acceptable form of identification due to religious objection or natural disaster, the voter may apply for a temporary exemption to the photo identification requirement at the Voter's Registrar's office during the cure period (beginning the first day of early voting and ending six days from date of election). The Voter Registrar will provide the voter with affidavit, and once the voter signs the affidavit, the Voter Registrar will accept the affidavit. The Voter Registrar then will mark provisional affidavit

envelope to note that the voter has "cured" by executing a temporary exemption. The affidavit is then attached to the provisional ballot envelope and the Early Voting Ballot Board shall count the ballot as the voter has followed the proper procedure.

**Interrogatory 10b**

In the scenarios above, an election worker does not have any discretion. They must inform the voter of his or her rights. If the voter has an acceptable form of identification, election workers must allow the voter to cast a regular ballot. Finally, if the voter does not have an acceptable form of identification, the election worker must notify the voter of his or her right to cast a provisional ballot, offer the voter a provisional ballot, and then provide a Notice to Provisional Voter to the voter.

**11. In those instances when a voter appears in person to vote and presents a photographic identification of the type that complies with Texas Election Code § 63.0101 (as amended by SB 14), detail the process and procedures that a poll official then must follow, including the process and procedures to determine whether that photographic identification contains information that precisely matches the voter's record in the poll book and the process and procedures to allow the prospective elector to cast a ballot if the poll official concludes that the requisite precise match between the photographic identification and the poll book does not exist (specifying which procedures result in a regular ballot and which procedures result in a provisional ballot and identifying the steps in this process where a poll official may exercise his or her discretion regarding the type of ballot that the voter would be entitled to cast).**

**OBJECTION:** Defendants object to this interrogatory on the grounds that it contains at least four separate interrogatories. By asking Defendants to "detail the process and procedures that a poll official then must follow" "to determine whether that photographic identification contains information that precisely matches the voter's record in the poll book" [hereafter Interrogatory No. 11a] and then asking the Defendants to detail the "process and procedures to allow the prospective elector to cast a ballot if the poll official concludes that the requisite precise match between the photographic identification and the poll book does not exist" [hereafter Interrogatory 11b] and then asking the Defendants to specify which procedures result in a regular ballot and which procedures result in a provisional ballot" [hereafter Interrogatory 11c] and then asking the Defendants to identify the "steps in the process where a poll official may exercise his or her discretion" [hereafter Interrogatory 11d] the interrogatory introduces four lines of inquiry that are separate and distinct from the inquiry made by the portion of the interrogatory that precedes each. See *Willingham v. Ashcroft,* 226 F.R.D. 57, 59 (D.D.C 2005). Defendants will therefore construe Interrogatory No. 11 as four separate interrogatories.

Further, Defendants object to all four separate interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome to the extent they call for narrative responses requiring the Defendants to provide complete factual "detail" of the requested "process and procedures". These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a detailed explanation of the issues is more appropriate by deposition. Further, the interrogatories fail to identify or define what is meant by "precisely matches", "requisite precise match" and "prospective elector". Defendants would further object to these interrogatories to

the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory "process and procedure" and/or the exercise of discretion under the Texas Election Code and other applicable codes and regulations. Defendants further object to the extent the interrogatories request information that is publicly available and/or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows to Interrogatories 11a, 11b, 11c and 11d:

Responding generally, in the instance where a voter appears to vote in person and provides an acceptable form of identification under §63.0101, the following procedures would be followed to notify the voter of his rights and to properly review a voter's identification for voting under the Texas Election Code:

1. Upon entering the polling place, the voter should see a "Notice of Acceptable Identification." The notice shall be posted in a "prominent location" at each polling location under §62.016 of the Texas Election Code. The "Notice of Acceptable Identification" provides voters with a list of acceptable identification under §63.0101, and provides the voter with information about their rights to seek a permanent exemption due to disability, or a temporary exemption due to religious objection or natural disaster.

2. After entering the polling place, the voter will check-in with an election worker at the check-in table. At that time, the election worker will ask the voter for an acceptable form of identification as listed in § 63.0101.

3. Once the voter provides an acceptable form of identification under § 63.0101, the election worker will find the voter's name on the list of registered voters. (If the entity uses