IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICK PERRY, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |



2:13-cv-193
09/02/2014
DEF0531



Δ π EXHIBIT 2
Deponent_____
Date_____ Rptr.____
WWW.DEPOBOOK.COM

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

        Plaintiffs,

      v.

NANDITA BERRY, *et al.*,

Defendants.

Civil Action No. 2:13-cv-291 (NGR)

BELINDA ORTIZ, *et al.*,

Plaintiffs,

      v.

STATE OF TEXAS, et al.,

Defendants.

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

### DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS AND PLAINTIFF-INTERVENORS' FIRST SET OF INTERROGATORIES

**TO:** All Plaintiffs and Plaintiff-Intervenors, by and through their attorneys of record.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, the State of Texas, Rick Perry, John Steen and Steve McCraw, by and through the Attorney General for the State of Texas, serve these Objections and Responses to Plaintiffs and Plaintiff-Intervenors' First Set of Interrogatories.

### GENERAL OBJECTIONS

Defendants object to each interrogatory: (1) insofar as it seeks information not in Defendants' possession, custody, or control; (2) insofar as it seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client communications, or is otherwise privileged; (3) insofar as it seeks information which is publicly available or otherwise equally available and/or uniquely or equally available from third parties; (4) insofar as it seeks information that does not specifically refer to the events which are the subject matter of this litigation; and (5) insofar as it seeks information not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

These responses and objections are made on the basis of information now known to Defendants and are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information requested. Defendants' investigation, discovery, and preparation for proceedings are continuing and all answers are given without prejudice to Defendants' right to introduce or object to the discovery of any documents, facts, or information

discovered after the date hereof. Defendants likewise do not waive the right to object, on any and all grounds, to (1) the evidentiary use of the information contained in these responses and objections; and (2) discovery requests relating to these objections and responses.

Defendants will provide their responses based on terms as they are commonly understood, and consistent with the Federal Rules of Civil Procedure. Defendants object to and will refrain from extending or modifying any words employed in the requests to comport with expanded definitions or instructions.

Defendants object to plaintiffs and plaintiff-intervenors' numbering of the Interrogatories as Numbers one (1) through twenty-eight (28). Plaintiffs and plaintiff-intervenors continuously include discrete, and not so discrete, subparts throughout the interrogatories. Defendants have renumbered Interrogatories 4, 5, 6, 7, 8, 10, 11, 15 and 28. The total number of interrogatories propounded by the Plaintiffs and plaintiff-intervenors herein is 43.

**1.     Identify each person who was involved in the preparation of your responses to any interrogatory propounded in this litigation and the interrogatory or interrogatories on which they assisted or were consulted.**

**OBJECTION:** Defendants object to this interrogatory as being overly broad, vague, and lacking in particularity. Further, it seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. By asking the Defendants to identify "each person who was involved in the preparation of your responses", the interrogatory goes far beyond asking for the identity of persons that provided answers, information, or gathered

information to formulate the responses; and, would require the Defendants to identify each person that is in any way involved, regardless of the level of involvement. Further, the interrogatory calls upon the Defendants to identify persons involved in the preparation of responses "to any interrogatories propounded in this litigation". Defendants are aware of no other interrogatories having been propounded and object to the extent this interrogatory attempts to create a duty to respond with respect to any interrogatories outside of what is currently before the Defendants.

Subject to and without waiving the foregoing objections, Defendants respond as follows. The following persons assisted generally in either providing information or preparing responses to these interrogatories and specifically to the interrogatories indicated:

Keith Ingram
Director of Elections Division
Office of The Texas Secretary of State
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

Ashley Fischer
Legal Director of Elections Division
Office of The Texas Secretary of State
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

Betsy Schonhoff
Voter Registration Manager
Office of The Texas Secretary of State
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548

Austin, Texas 78711-2548
(512) 475-0131

Leticia Salazar
Office of The Texas Secretary of State
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 12)

Dan Glotzer
Office of The Texas Secretary of State
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

Bryan Hebert
General Counsel
Office of The Lieutenant Governor
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 2, 17, 18, 19)

Frank Battle
General Counsel and House Ethics Advisor
Office of The Speaker of The House
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 1, 2, 8, 15-18, 23)

Meredyth Fowler
Counsel to The Speaker on General Government
Office of The Speaker of The House
C/O John B. Scott

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 1, 2, 8, 15-18, 23)

Jon Heining
General Counsel
Texas Legislative Council
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 16)

Joe Peters
Assistant Director
Driver License Division
Texas Department of Public Safety
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

Sheri Gipson
Senior Manager
Records and Enforcement
Customer Support
Driver License Division
Texas Department of Public Safety
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 4 and 5)

Tony Rodriguez
Customer Operations Senior Manager
South and West Driver License Division
Texas Department of Public Safety
C/O John B. Scott

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 6 and 21)

Sherrie Zgabay, Manager
Licensing and Registration Service
Regulatory Services Division
Texas Department of Public Safety
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 7)

Rebekah Hibbs, Senior Manager
Policy and Business Improvement
Driver License Division
Texas Department of Public Safety
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 12 and 13)

Katherine Cesinger, Deputy Assistant Director
Media and Communications Office
Texas Department of Public Safety
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 3)

Stephen Bell, Customer Operations Senior Manager
North and East Driver License Division
Texas Department of Public Safety
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548

---

Austin, Texas 78711-2548
(512) 475-0131
(No. 26 and 27)

Kathleen T. Murphy, Senior Assistant General Counsel
Office of General Counsel
Texas Department of Public Safety
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

David Morales
General Counsel
Office of Governor Rick Perry
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

Jessica Olson
Special Counsel, Office of General Counsel
Office of Governor Rick Perry
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

Ryan Brannon
Policy Advisor, Office of Budget, Planning and Policy
Office of Governor Rick Perry
C/O John B. Scott
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

Forrest Mitchell
Office of the Attorney General
C/O John B. Scott
Office of the Attorney General

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131
(No. 8 and 9)

**2. Describe in detail each legislative purpose of SB 14.**

**OBJECTION:** Defendants object to this interrogatory as overly broad, unduly burdensome, vague and ambiguous as it fails to define "legislative purpose". Further, Defendants object to the extent the interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. Defendants object to this interrogatory to the extent it seeks disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product doctrine. Defendants further object to the extent it seeks information protected from disclosure by Texas Government Code §323.017. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known or controlled by third parties, including independent officers of the State and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections Defendants respond generally as follows: the Defendants refer the Plaintiffs and Plaintiff-Intervenors to the Bill Analysis, Tex. S.B. 14, 82nd Leg., R.S. (2011) (enrolled bill) and the House Research Organization, Bill Analysis, Tex. S.B. 14, 82nd Leg., R.S. (2011). In addition, the Plaintiffs are referred to the Committee Hearings and floor debates in the Senate and House with respect to S.B. 14. In addition, see the January 26, 2011, press release by S.B. 14 bill sponsor Senator Troy Fraser

which can be found at http://www.fraser.senate.state.tx.us/pr11/p012611a.htm.  Also see the

May 9, 2011, press release by Lieutenant Governor David Dewhurst which can be found at

http://www.ltgov.state.tx.us/prview.php?id=287.

**3.   Identify each person involved in drafting, proposing, and finalizing all  administrative regulations, policies, guidelines, or guidance relating to the implementation of SB   14, whether proposed or finalized, including each such person's title and office at the time, a description of the person's involvement in those activities, and the dates of such involvement.**

**OBJECTION:** Defendants object to this interrogatory as being overly broad, vague, unduly

burdensome, lacking in particularity, and not reasonably specific.  Defendants further object to

the extent it seeks information that is not relevant and is not likely to lead to the discovery of

relevant or admissible evidence.    This interrogatory fails to identify or define the

administrative regulations, policies, guidelines or guidance for which it seeks the requested

information. Further, it imposes an unlimited burden to identify every individual, regardless of

location, level of involvement, or relationship to the Defendants, who happened to be

"involved" in any manner with "drafting, proposing, and finalizing" the requested information.

This information sought exceeds the set of individuals who might have information material to

the claims in this lawsuit.  Defendants cannot reasonably comply with this request to identify

all such persons because many can be third parties, including private individuals and

organizations, as well as independent officers of the State and local governments, whose

activities and deliberations are not within the Defendants' knowledge, possession, custody or

control.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows: Wroe Jackson – General Counsel;   Keith   Ingram   –   Director   of Elections Division; Ashley Fischer - Elections Division Legal Director; Betsy Schonhoff - Voter Registration Manager; and various other Elections Division attorneys and staff members of the Office of the Texas Secretary of State.   These individuals, from June 25, 2013, and onward have been involved in such things as the drafting of forms, rules, advisories, seminar presentations, answering questions from the public and county election officials, revising presentations, preparing and revising poll worker training materials, postings for election voting precinct locations, postings for county offices, voter registration materials, and voter registration forms for updating information.

In addition, the following persons with the Texas Department of Public Safety: Rebecca Davio, Assistant Director, Driver License Division from May 2010-July 2013,  was the party responsible for the drafting, proposing and finalizing the administrative rules related to EIC issuance found at 37 TAC §, Part 1, Chapter 15, Subchapter L. Ms. Davio was assisted by Janie Smith, Management Analyst, DLD.    The Department's rulemaking process involves contact by the Division with legal representatives from the DPS Office of General Counsel. This process involved D. Philip Adkins, General Counsel, and Kathleen T. Murphy-Darveau, Senior Assistant General Counsel.   The administrative filing and processing of rules was handled by Susan Estringel, Legal Assistant, Agency Liaison with the Texas Register, DPS Office of General Counsel.   The rulemaking process was conducted between September and December 2011 and the rules became effective December 11, 2011.

4.      Detail the process of obtaining a Texas driver license, including, but not limited to, the requirements for its issuance, the amount DPS charges for issuance, the delay (if any) between application and issuance, the underlying identification or documentation that a person   must present to obtain a driver license, and the process (including requirements) for obtaining such underlying identification.

**OBJECTION:**  Defendants object to this interrogatory on the ground that it contains at least three separate interrogatories.  By asking the Defendants to "detail the process of obtaining a Texas driver license "[hereafter Interrogatory 4a] and then asking Defendants to detail "the underlying identification or documentation that a person must present to obtain a driver license" [hereafter Interrogatory 4b] and then asking Defendants to detail "the process (including requirements)  for  obtaining  such  underlying  identification"  [hereafter Interrogatory 4c] the interrogatory introduces lines of inquiry that are separate and distinct from the inquiry made by the portion of the inquiry that precedes each.  *See Willingham v. Ashcroft,*  226  F.R.D.  57,  59  (D.D.C.  2005).    Defendants  will  therefore  construe Interrogatory 4 as three separate interrogatories.

Further, Defendants object to all three interrogatories as being vague, not reasonably specific,  overly  broad  and  unduly  burdensome  to  the  extent  they  call  for  narrative responses requiring the Defendants to provide complete legal and factual "detail" of the requested "process and procedures" that are controlled by both statutes and administrative rules.  These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination.  Defendants would object that a

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

detailed explanation of these issues, to the extent relevant, is more appropriate by deposition. Defendants would further object to these interrogatories to the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory or discretionary "process and procedures" under the Texas Transportation Code and other applicable codes and administrative regulations. Defendants further object to the extent the interrogatories seek information that is publicly available and/or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants would further object to the extent these interrogatories seek information that is not relevant to this cause of action and is not likely to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving the foregoing objections, the Defendants generally respond as follows:

**Interrogatory 4a**

Responding generally, persons seeking to obtain a Texas Driver License may visit any Texas driver license office and complete an Application for Texas Driver License or Identification Card (form DL-14A). Upon presentation of the completed application the applicant must provide documents proving US citizenship or lawful presence, identity, social security number and Texas residency in accordance with provisions of Texas Transportation Code Chapters 521 and 522 and 37 TAC Part 1, Chapter 15, Subchapter B and Chapter 16. The applicant then pays the required fee. The fee for a Texas driver license is set by statute [See TRC Chapter 521, Subchapter R §521.421 and TRC §522.029] The applicant is given a vision test. Original applicants are also given a written driving exam and road test if required. The applicant's signature, fingerprint and photographic image will be electronically captured

and a temporary receipt will be issued. This temporary receipt contains a photograph of the applicant and is acceptable for voting purposes in the same manner as the actual card. The card is customarily produced within three (3) days and mailed to the applicant within seven (7) to ten (10) days. Detailed information regarding requirements for issuance, required documents and fees may be found on the DPS website, in Texas Transportation Code Chapters 521 and 522 and 37 TAC Part 1, Chapters 15 and 16.

The list of approved documentation that can be used for identity purposes can be found on the DPS website and in 37 TAC, Part 1, Chapter 15, Subchapter B, §15.24.

The list of driver license office locations may be found at the following web address: http://www.txdps.state.tx.us/administration/driver_licensing_control/rolodex/search.asp.

A list of acceptable documents for proving identity may be found in 37 TAC, Part 1, Chapter 15, Subchapter B, §15.24 and at the following web address: http://www.txdps.state.tx.us/DriverLicense/identificationrequirements.htm

A list of acceptable documents for proving social security number may be found at the following web address: http://www.txdps.state.tx.us/DriverLicense/ssn.htm

The list of acceptable documents for proving lawful presence may be found at the following web address: http://www.txdps.state.tx.us/DriverLicense/LawfulStatusDLID.htm

The list of acceptable documents for proving Texas residency may be found at the following web address: http://www.txdps.state.tx.us/DriverLicense/residencyReqNonCDLhtm

Information regarding fees for all types of driver licenses can be found at the following web address: http://www.txdps.state.tx.us/DriverLicense/fees.htm

**Interrogatory 4b**

*"... the underlying identification or documentation that a person must present to obtain a driver license,"*

An applicant may present one piece of primary identification, two pieces of secondary identification, or one piece of secondary plus two pieces of supporting identification.

The list of approved documentation that can be used for identity purposes can be found on the DPS website and in 37 TAC, Part 1, Chapter 15, Subchapter B, §15.24 and at the following web address: http://www.txdps.state.tx.us/DriverLicense/identificationrequirements .htm

The following seven documents are primary identification, are complete within themselves and require no supporting instruments. These documents must contain the applicant's complete name and full date of birth:

- Texas driver license (DL) or identification certificate (ID) with photo within two years of expiration date;
- unexpired United States passport;
- United States citizenship (naturalization) certificate with identifiable photo;
- unexpired document issued by the United States Citizenship and Immigration Services or successor federal immigration agency. The document must contain verifiable data and identifiable photo; or
- unexpired United States military ID card for active duty, reserve or retired personnel with identifiable photo;
- foreign passport with a visa issued by the United States Department of State (valid or expired) with unexpired I-94 marked valid for a fixed duration. If the applicant was not required by federal law to obtain a visa to enter the United States, the visa requirement under this subparagraph may be waived;
- foreign passport with a visa issued by the United States Department of State (valid or expired) with an I-94 marked valid for the duration of stay accompanied by appropriate documentation. If the applicant was not required by federal law to obtain a visa to enter the United States, the visa requirement under this subparagraph may be waived.

The following documents are secondary identification and must be recorded

governmental documents from the United States, one of the 50 states, a U.S. territory, or

District of Columbia:

- Original or certified copy of a birth certificate issued by the appropriate State Bureau of Vital Statistics or equivalent agency;
- Original or certified copy of United States Department of State Certification of Birth (issued to United States citizens born abroad); or

- Original or certified copy of court order with name and date of birth (DOB) indicating an official change of name and/or gender.

Supporting identification consists of other records or documents that aid examining personnel in establishing the identity of the applicant. The following items are not all inclusive. The examining or supervisory personnel may determine that an unlisted document meets the department's needs in establishing identity:

- school records;
- insurance policy (at least two years old);
- vehicle title;
- military records;
- unexpired military dependent identification card;
- original or certified copy of marriage license or divorce decree;
- voter registration card;
- Social Security card;
- pilot's license;
- concealed handgun license;
- Texas driver's license temporary receipt;
- Unexpired photo DL or photo ID issued by another (United States) state, US territory, the District of Columbia or Canadian province;
- expired photo DL or photo ID issued by another (United States) state, US territory, the District of Columbia or Canadian province that is within two years of the expiration date;
- a consular document issued by a state or national government; or
- an offender identification card or similar form of identification issued by the Texas Department of Criminal Justice.

The list of approved documentation that can be used for identity purposes can be found on the DPS website and in 37 TAC, Part 1, Chapter 15, Subchapter B, §15.24.

**Interrogatory 4c**

The Defendants do not have information regarding the process for obtaining each form of underlying documentation from other entities.

**5.     Detail the process of obtaining a DPS-issued personal identification card,**

including, but not limited to, the requirements for its issuance, the amount DPS charges for issuing one, the delay (if any) between application and issuance, the underlying identification or documentation that a person must present to obtain such personal identification card, and the process (including requirements) for obtaining each form of underlying identification.

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains at least three separate interrogatories. By asking the Defendants to "detail the process of obtaining a "DPS-issued Personal Identification Card" "[hereafter Interrogatory 5a] and then asking Defendants to detail "the underlying identification or documentation that a person must present to obtain a driver license" [hereafter Interrogatory 5b] and then asking Defendants to detail "the process (including requirements) for obtaining such underlying identification" [hereafter Interrogatory 5c] the interrogatory introduces lines of inquiry that are separate and distinct from the inquiry made by the portion of the inquiry that precedes each. *See Willingham v. Ashcroft,* 226 F.R.D. 57, 59 (D.D.C. 2005). Defendants will therefore construe Interrogatory No. 5 as three separate interrogatories.

Further, Defendants object to all three interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome to the extent they call for narrative responses requiring the Defendants to provide complete legal and factual "detail" of the requested "process and procedures" that are controlled by both statutes and administrative rules. These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a detailed explanation of these issues, to the extent relevant, is more appropriate by

deposition. Defendants would further object to these interrogatories to the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory or discretionary "process and procedures" under the Texas Transportation Code and other applicable codes and administrative regulations. Defendants further object to the extent the interrogatories seek information that is publicly available and/or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants would further object to the extent these interrogatories seek information that is not relevant to this cause of action and is not likely to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving the foregoing objections, the Defendants generally respond as follows:

**Interrogatory 5a**

*"Detail the process of obtaining a DPS-issued personal identification card, including, but not limited to, the requirements for its issuance, the amount DPS charges for issuing one, the delay (if any) between application and issuance..."*

Responding generally, persons seeking to obtain a Texas Personal Identification Certificate may visit any Texas driver license office and complete an Application for Texas Driver License or Identification Card (form DL-14A). Upon presentation of the completed application the applicant must provide documents proving US citizenship, identity and Texas residency in accordance with provisions of Texas Transportation Code Chapter 521 and 37 TAC Part 1, Chapter 15, Subchapter B. The applicant pays the required fee. The fee for an identification certificate is set by statute and ranges from $5.00 to $20.00. [See TRC §521.422] The applicant's signature, fingerprint and photographic image will be electronically captured and a temporary receipt will be issued. This temporary receipt contains a photograph of the

applicant and is acceptable for voting purposes in the same manner as the actual card. The card is customarily produced within three (3) days and mailed to the applicant within seven (7) to ten (10) days. Detailed information regarding requirements for issuance, required documents and fees may be found on the DPS website.

**Interrogatory 5b**

"... *the underlying identification or documentation that a person must present to obtain a personal identification card*"

An applicant may present one piece of primary identification, two pieces of secondary identification, or one piece of secondary plus two pieces of supporting identification.

The following seven documents are primary identification, are complete within themselves and require no supporting instruments. These documents must contain the applicant's complete name and full date of birth:

- Texas driver license (DL) or identification certificate (ID) with photo within two years of expiration date;
- unexpired United States passport;
- United States citizenship (naturalization) certificate with identifiable photo;
- unexpired document issued by the United States Citizenship and Immigration Services or successor federal immigration agency. The document must contain verifiable data and identifiable photo; or
- unexpired United States military ID card for active duty, reserve or retired personnel with identifiable photo;
- foreign passport with a visa issued by the United States Department of State (valid or expired) with unexpired I-94 marked valid for fixed duration. If the applicant was not required by federal law to obtain a visa to enter the United States, the visa requirement under this subparagraph may be waived;
- foreign passport with a visa issued by the United States Department of State (valid or expired) with an I-94 marked valid for the duration of stay accompanied by appropriate documentation. If the applicant was not required by federal law to obtain a visa to enter the United States, the visa requirement under this subparagraph may be waived.

The following documents are secondary identification and must be recorded

governmental documents from the United States, one of the 50 states, a U.S. territory, or

District of Columbia:

- Original or certified copy of a birth certificate issued by the appropriate State Bureau of Vital Statistics or equivalent agency;
- Original or certified copy of United States Department of State Certification of Birth (issued to United States citizens born abroad); or
- Original or certified copy of court order with name and date of birth (DOB) indicating an official change of name and/or gender.

Supporting identification consists of other records or documents that aid examining

personnel in establishing the identity of the applicant. The following items are not all inclusive.

The examining or supervisory personnel may determine that an unlisted document meets the

department's needs in establishing identity:

- school records;
- insurance policy (at least two years old);
- vehicle title;
- military records;
- unexpired military dependent identification card;
- original or certified copy of marriage license or divorce decree;
- voter registration card;
- Social Security card;
- pilot's license;
- concealed handgun license;
- Texas driver's license temporary receipt;
- unexpired photo DL or photo ID issued by another (United States) state, US territory, the District of Columbia or Canadian province;
- expired photo DL or photo ID issued by another (United States) state, US territory, the District of Columbia or Canadian province that is within two years of the expiration date;
- a consular document issued by a state or national government; or
- an offender identification card or similar form of identification issued by the Texas Department of Criminal Justice.

The list of approved documentation that can be used for identity purposes can be found

on the DPS website and in 37 TAC, Part 1, Chapter 15, Subchapter B, §15.24.

**Interrogatory 5c**

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

The Defendants do not have information regarding the process for obtaining each form of underlying documentation from other entities.

6.   **Detail the process of obtaining an EIC, as used in Section 63.0101 of the Texas Election Code (as amended by SB 14), including but not limited to each and every location in the State of Texas at which a person may obtain an EIC (including mobile and temporary locations) and each location's hours of operation, the requirements for issuance of an EIC, the delay (if any) between application and issuance, the underlying identification or documentation that a person must present to obtain an EIC, and the process for obtaining each form of underlying documentation.**

**OBJECTION:**   Defendants object to this interrogatory on the ground that it contains at least three separate interrogatories.   By asking the Defendants to "detail the process of obtaining an EIC "[hereafter Interrogatory 6a] and then asking Defendants to detail "the underlying identification or documentation that a person must present to obtain an "EIC" [hereafter Interrogatory 6b] and then asking Defendants to detail "the process (including requirements) for obtaining such underlying identification" [hereafter Interrogatory 6c] the interrogatory introduces lines of inquiry that are separate and distinct from the inquiry made by the portion of the inquiry that precedes each. *See Willingham v. Ashcroft,* 226 F.R.D. 57, 59 (D.D.C. 2005).   Defendants will therefore construe Interrogatory 6 as three separate interrogatories.

Further, Defendants object to all three interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome to the extent they call for narrative

responses requiring the Defendants to provide complete legal and factual "detail" of the requested "process and procedures" that are controlled by both statutes and administrative rules. These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a detailed explanation of these issues, to the extent relevant, is more appropriate by deposition. Defendants would further object to these interrogatories to the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory or discretionary "process and procedures" under the Texas Transportation Code and other applicable codes and administrative regulations. Defendants further object to the extent the interrogatories seek information that is publicly available and/or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants would further object to the extent these interrogatories seek information that is not relevant to this cause of action and is not likely to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows:

**Interrogatory 6a**

*Detail the process of obtaining an EIC, as used in Section 63.0101 of the Texas Election Code (as amended by SB 14), …*

Responding generally, persons who do not have photo identification acceptable for voting may visit any Texas driver license office, mobile EIC location, or county location that participates in the EIC program and complete a DL-14C, Application for Texas Election Certificate. Upon presentation of the completed application and required documents proving US citizenship and identity, the applicant's image will be captured and a temporary receipt

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

will be issued to the applicant for the Election Certificate. This temporary receipt contains a photograph and is acceptable for voting purposes in the same manner as the actual card. The card is processed in Austin, Texas and mailed to the applicant. With respect to the location available for receiving an EIC, see the documents included with the responses at TEX I.R. 000431 through TEX I.R. 000453; TEX I.R. 000001 through TEX I.R. 000012; TEX I.R. 000027 through TEX I.R. 000228.

Eligibility requirements for an election identification certificate (EIC) are found in the Texas Transportation Code, Chapter 521A. In order to qualify for an EIC, the applicant must be 17 years and 10 months of age or older, be a resident of Texas, be eligible to vote in Texas and present a valid voter registration card, or submit a voter registration application through the DPS or county.

To apply for an EIC the applicant must visit a Driver License Office, Mobile EIC Location, or County Location; complete an Application for Texas Election Certificate, Form DL-14C, and provide documentation to verify US citizenship and identity. An applicant for an EIC must provide documents satisfactory to the Department of Public Safety, and all documents must be verifiable. An applicant may present one piece of primary identification, two pieces of secondary identification, or one piece of secondary plus two pieces of supporting identification.

Issuing personnel will review the documents provided and process the application. Upon successful completion of the transaction, the customer is issued a transaction receipt which contains a photograph of the customer and is valid for 60 days. This document may be used in lieu of the actual EIC card for voting purposes until the EIC card is received in the mail

by the customer.  The typical production time for an EIC card is up to 10 days.

**Interrogatory 6b**

"... *the underlying identification or documentation that a person must present to obtain an EIC*"

An applicant may present one piece of primary identification, two pieces of secondary identification, or one piece of secondary plus two pieces of supporting identification.

Primary Identification is a Texas driver license or personal identification card issued to the person that has been expired for 60 days and is within two years of expiration date.

The following four documents are secondary identification and must be recorded governmental documents from the United States, one of the 50 states, a U.S. territory, or District of Columbia:

- Original or certified copy of a birth certificate issued by the appropriate State Bureau of Vital Statistics or equivalent agency;

- Original or certified copy of United States Department of State Certification of Birth (issued to United States citizens born abroad); or

- Original or certified copy of court order with name and date of birth (DOB) indicating an official change of name and/or gender;

- U.S. citizenship or naturalization papers without identifiable photo.

Supporting identification consists of other records or documents that aid examining personnel in establishing the identity of the applicant:

- voter registration card;
- school records;
- insurance policy (at least two years old);
- Texas vehicle or boat title or registration;
- military records;
- unexpired military dependent identification card;

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

- original or certified copy of marriage license or divorce decree;
- Social Security card;
- pilot's license;
- unexpired photo DL or photo ID issued by another (United States) state, U.S. territory, the District of Columbia;
- expired photo DL or photo ID issued by another (United States) state, U.S. territory, or the District of Columbia that is within two years of the expiration date;
- a consular document issued by a state or national government;
- an offender identification card or similar form of identification issued by the Texas Department of Criminal Justice;
- forms W-2 or 1099;
- Numident record from the Social Security Administration;
- expired Texas driver license or personal identification certificate (expired more than two years);
- professional license issued by Texas state agency;
- identification card issued by government agency;
- parole or mandatory release certificate issued by the Texas Department of Criminal Justice;
- federal inmate identification card;
- federal parole or release certificate;
- Medicare or Medicaid card;
- Selective Service card;
- Immunization records;
- tribal membership card from federally recognized tribe;
- Certificate of Degree of Indian Blood;
- Veteran's Administration card;
- hospital issued birth record;
- any document that may be added to Section 15.24 of this title (relating to Identification of Applicants) other than those issued to persons who are not citizens of the U.S.

The list of approved documentation that can be used for identity purposes can be found on the DPS website and in 37 TAC, Part 1, Chapter 15, Subchapter L.

**Interrogatory 6c**

The Defendants do not have information regarding the process for obtaining each form of underlying documentation from other entities.

7.     **Detail the process of obtaining a Texas license to carry a concealed handgun, including but not limited to the requirements for its issuance, the amount charged for its issuance, the delay (if any) between application and issuance, the underlying identification or documentation that a person must present to obtain a license to carry a concealed handgun, and the process (including requirements) for obtaining each form of underlying documentation.**

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains at least three separate interrogatories. By asking the Defendants to "detail the process of obtaining a Texas license to carry a concealed handgun" [hereafter Interrogatory 7a] and then asking Defendants to detail "the underlying identification or documentation that a person must present to obtain a Texas license to carry a concealed handgun [hereafter Interrogatory 7b] and then asking Defendants to detail "the process (including requirements) for obtaining such underlying identification" [hereafter Interrogatory 7c] the interrogatory introduces lines of inquiry that are separate and distinct from the inquiry made by the portion of the inquiry that precedes each. *See Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005). Defendants will therefore construe Interrogatory 7 as three separate interrogatories.

Further, Defendants object to all three interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome to the extent they call for narrative responses requiring the Defendants to provide complete legal and factual "detail" of the requested "process and procedures" that are controlled by both statutes and administrative rules. These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a

detailed explanation of these issues, to the extent relevant, is more appropriate by deposition. Defendants would further object to these interrogatories to the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory or discretionary "process and procedures" under the Texas Government Code and other applicable codes and administrative regulations. Defendants further object to the extent the interrogatories seek information that is publicly available and/or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants would further object to the extent these interrogatories seek information that is not relevant to this cause of action and is not likely to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows:

**Interrogatory 7a**

The Texas Concealed Handgun Law is found in Government Code Chapter 411, Subchapter H. Eligibility requirements can be found in Government Code §411.172. Eligibility and Application requirements are further addressed in the administrative rules found at 37 Texas Administrative Code, Part1, Chapter 6. Responding generally, applicants must submit a completed application, pay the required fees and submit all of the required supplemental forms and materials. Applicants may apply online at http://www.texas.gov/txapp/txdps/chl/ or may download the application forms, complete and mail them with the required fees. Printable application forms are available on the DPS website at in the Downloadable Forms section. Applications are not made in person but are submitted electronically or via mail to DPS Headquarters in Austin.

The application fees vary from $140 for a standard individual to free for applicants who are active duty military or indigent. A list of the fees along with the statutory references for each is located on the Department of Public Safety's website. Individuals who choose to apply under a discounted rate must submit proof they meet the qualification for the discount. A complete list of fees along with the qualifications for discounted fee rate is found on the fee schedule.

CHL applicants must take a training course with a CHL Instructor certified by the Department of Public Safety. The course includes four to six hours of classroom training and a proficiency demonstration. The cost of the course is not regulated by statute or the Department of Public Safety and is in addition the application fees.

Once the individual has completed the application, provided fingerprints and completed the training course, all supporting documentation must be submitted to the Department to complete the application process. The documents may be sent electronically via email, by fax or through the mail. Upon receipt of a completed application the Department processes the application and is required by statute (Gov't Code §411.177) to issue the original license within 60 days or notify the applicant why the application was denied. Applications for renewal of a CHL must be processed within 45 days (Gov't Code §411.185).

**Interrogatory 7b**

Upon submission of an application, the individual must submit fingerprints electronically using the Department's Fingerprint Applicant Services of Texas (FAST) authorized provider. Instructions for scheduling an appointment are found on the Department's website. The department utilizes the Texas Driver License or Texas Identification Card photo

and signature on file for producing the laminated CHL. Applicants with a Texas Driver License or Identification Card are not required to submit a birth certificate. Applicants who hold an out of state driver license or identification card must submit a passport style photo and a copy of the out of state driver license or identification card.

**Interrogatory 7c**

With respect to obtaining a Texas Driver license or Texas Personal Identification Card, see the previous responses to Interrogatory Numbers 4a and 4b and Interrogatory Numbers 5a and 5b. The Defendants do not have information regarding the process for obtaining other forms of underlying documentation from other entities.

**8.     Identify any and all specific complaints, allegations, investigations, or charges of in-person voter impersonation or other in-person voter fraud that occurred or are alleged to have occurred in the State of Texas from January 1, 2000, to the present. In response to this interrogatory, please include the date; place; election; persons involved; nature or method of the alleged, actual, or attempted fraud; disposition or outcome of the alleged, actual, or attempted fraud; and whether the instance was reported or made known to the Texas Legislature.**

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains at least two separate interrogatories. By asking the Defendants to "identify any and all specific complaints, allegations, investigations, or changes of in-person voter impersonation or other in-person voter fraud" [hereafter Interrogatory 8a] and then asking Defendants to state "whether the instance was reported or made known to the Texas Legislature" [hereafter Interrogatory 8b]

the interrogatory "introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it". *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005) (internal quotation and citation omitted). Defendants will therefore construe Interrogatory No. 8 as two separate interrogatories.

Further, as to both interrogatories, the Defendants object that they are vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The interrogatory requires the Defendants to "identify any and all specific complaints, allegations, investigations, or charges" for a period of fourteen years without any limitation as to whom, or by who, the complaints and allegations were made or by whom the investigations were conducted or by what person or agency brought the charges. Defendants further object to these interrogatories to the extent they seek information not personally known or controlled by the Defendants but is known and controlled by third parties, including private individuals and independent officers of the state and local governments. Defendants further object to these interrogatories to the extent they seek information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants further object to the extent these interrogatories seek disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product doctrine. Defendants further object to the extent these interrogatories seek information protected from disclosure by Texas Government code §323.017. Defendants further object to the extent these interrogatories seek the disclosure of information concerning active investigations and prosecutions of criminal conduct by law enforcement agencies and officials as revealing such information could compromise the success of the investigation and/or

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

prosecution.

Subject to and without waiving the foregoing objections, the Defendants respond as follows:

**Interrogatory 8a**

The Office of the Attorney General (OAG) maintains a list of complaints which include some specific allegations of in person voter impersonation, as well as other types of illegal voting, and criminal and fraudulent conduct occurring at the polling place. This document is known as the list of referrals, and it only includes matters referred to the Office of the Attorney General. The OAG does not have any knowledge of any comprehensive list of similar complaints which may have been received by all of the other law enforcement agencies in Texas who have concurrent jurisdiction to investigate felony and misdemeanor offenses in their respective jurisdictions. Texas does not have a statutory or regulatory requirement for local law enforcement to provide this information to the state as these offenses are not part of, or included in, the Uniform Crime Reporting system established by the Department of Justice and the Federal Bureau of Investigation. Additionally, this document does not include complaints, allegations, investigations, or criminal cases referred to all of the local county, district or county district attorneys who would have concurrent jurisdiction to investigate and prosecute the offenses. This list also does not include investigations conducted by the Texas Rangers, Texas Department of Public Safety, or federal authorities such as the Federal Bureau of Investigation, Homeland Security Investigations; or others which routinely investigate election violations or identify theft and fraud in the State of Texas as well.

This office also maintains a list of cases currently pending prosecution that were

investigated, being prosecuted, or a combination of both, by this office.  This office also maintains a document summarizing criminal prosecutions by this office and some local prosecutors who have resolved OAG investigations.  This office has no knowledge of a comprehensive list or document summarizing the polling place election fraud felony and misdemeanor prosecutions of all of the prosecutors in this state.  Again, Texas does not have statutory or regulatory requirement for local prosecutors to provide this information to the state as these offenses are not part of, or included in, the Uniform Crime Reporting system established by the Department of Justice and the Federal Bureau of Investigation.  Furthermore, the District and County Clerks of Texas do not report these specific offense titles to the state as they would be characterized as other non-specific felonies and misdemeanors according to the Office of Court Administration.  Finally, these documents do not include federal prosecutions by the four different US Attorney's Offices prosecuting cases in Texas.  The referenced documents are included with these responses as TEX I.R. 000232 through TEX I.R. 000261.

Further, pursuant to Federal Rule of Civil Procedure 33(d), the requested information may be derived from documents provided in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012) and numbered: TX __ 00148056 through TX _ 00148061; TX__148163 through TX _- 148170; TX__00057255 through TX ___00057284; TX __00056816 through TX __00056834; TX __00267733 through TX __00269313; and TX__00018125 through TX__00018126.  In addition, see the documents included with these responses as TEX I.R. 000229 through TEX I.R. 000231.

**Interrogatory 8b**

On March 1, 2011, the Select Committee on Voter Identification and Voter Fraud took testimony on SB 14. Several of the witnesses testifying for the bill claimed to have knowledge of in-person voter fraud:

- Skipper Wallace, Chairman of the Republican County Chairman's Association, described in-person voter fraud (I@24.40);

- David Carter described in-person voter fraud (I@47:40);

- Series of witnesses representing the Objective Watchers of the Legal System (OWLS) describe in-person voter fraud in Progresso (II@1.33)

- Alan Vera who worked as an election judge describes three instances of voter fraud (II@1:55)

- Maryanne Collins who has been an election judge for 30 years, describes in-person voter fraud (II@3:20)

- Carol Kitson who served as an alternate election judge describes in-person voter fraud (II@3:27)

- David Maxwell with the AG's Office describes in-person voter fraud cases (II@4:31).

These instances of in-person voter fraud were "reported or made known to the Texas Legislature." Other than information provided by the witness in testimony, we do not have the date, place, election, persons involved, nature or method of the alleged, actual or attempted fraud, disposition or outcome of the alleged, actual, or attempted fraud.

The video recording of the testimony is available at:

http://www.house.state.tx.us/video-audio/committee-broadcasts/committee-archives/?committee=485&session=82

The list of the witnesses testifying for the bill is available at:

http://www.capitol.state.tx.us/tlodocs/82R/witlistmtg/pdf/C4852011030108001.PDF.

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

9.      Identify each person with knowledge of or information about each incident described in your response to Interrogatory 8. For each person, please specify the incident about which he or she has knowledge or information.

**OBJECTION:** The Defendants object that this interrogatory is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The interrogatory requires the Defendants to identify each person with knowledge of or information about any all specific complaints, allegations, investigations, or charges for a period of fourteen years without any limitation as to whom, or by who, the complaints and allegations were made or by whom the investigations were conducted or by what person or agency brought the charges. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known and controlled by third parties, including private individuals and independent officers of the state and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants further object to the extent these interrogatories seek disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product doctrine. Defendants further object to the extent these interrogatories seek information protected from disclosure by Texas Government code §323.017. Defendants further object to the extent these interrogatories seek the disclosure of information concerning active investigations and prosecutions of criminal conduct by law enforcement agencies and officials as revealing such information could compromise the success of the investigation and/or prosecution.

Subject to and without waiving the foregoing objections, the Defendants respond as follows: See the Defendants' responses to Interrogatory Numbers 8a and 8b.

10. **In those instances when a voter appears to vote in person without required identification under Texas Election Code § 63.0101 (as amended by SB 14), detail the process and procedures that a poll official must follow to allow a person to cast a ballot (specifying which procedures result in a regular ballot and which procedures result in a provisional ballot), including identifying those steps in the process where a poll official may exercise his or her discretion as to the type of ballot that person would be entitled to cast.**

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains at least two separate interrogatories. By asking the Defendants to "detail the process and procedures that a poll official must follow to allow a person to cast a ballot" [hereafter Interrogatory 10a] and then asking the Defendants to identify the steps "where a poll official may exercise his or her discretion as to the type of ballot that person would be entitled to cast", [hereafter Interrogatory 10b], the interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it". *Willingham v. Ashcroft,* 226 F.R.D 57, 59 (D.D.C. 2005) (internal quotation and citation omitted). Defendants will therefore construe Interrogatory No. 10 as two separate interrogatories.

Further, Defendants object to both separate interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome to the extent they call for narrative responses requiring the Defendants to provide complete factual "detail" of the requested

---

"process and procedures". These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a detailed explanation of the issue is more appropriate by deposition. Defendants would further object to these interrogatories to the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory "process and procedure" and/or the exercise of discretion under the Texas Election Code. Defendants further object to the extent that these interrogatories request information that is publicly available and /or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows:

**Interrogatory 10a**

Responding generally, in the instance where a voter appears to vote in person, the following procedures would be followed to notify voters of their rights and to properly assist a voter that does not have an acceptable form of identification under 63.0101:

1. Upon entering the polling place, the voter should see a "Notice of Acceptable Identification." The notices shall be posted in a "prominent location" at each polling location under §62.016. This Notice provides voters with a list of acceptable identification, and provides the voter information about their right to seek a permanent exemption due to disability, or a temporary exemption due to religious objection or natural disaster.

2. After entering the polling place, the voter will check-in with an election worker at the check-in table. At that time, the election worker will ask the voter for an acceptable form of identification as listed in 63.0101. If the voter does not have an acceptable form of

identification with them, the following will occur:

a.      As the voter has not cast their ballot, the voter is entitled to leave the polling place, and return with an acceptable form of identification.  The election worker may advise the voter of this right.  For example, the voter may have realized that he left his acceptable identification at home, and would like to go home, get the identification and then return to the polling place.  In the alternate, if the voter realizes that he does not have an acceptable form of identification under 63.0101, the voter may leave the polling place to obtain a free Election Identification Certificate (EIC) and then return to the polling place during early voting or on election day.  (DPS issues temporary EICs with a photograph that are acceptable for voting.)  Upon returning to the polling place with an acceptable form of identification, the voter will cast a regular ballot.

b.      If the voter does not have an acceptable form of identification, and does not wish to leave the polling place to obtain one, the election workers are required to notify the voter of his right to cast a provisional ballot, and offer the voter a provisional ballot.  No voter is turned away from the polls for lack of acceptable identification.  In addition to notifying the voter of this right, the election workers are required to inform the voter, by giving them a "Notice to Provisional Voter" form, that if casting a provisional ballot for identification reasons, the voter has the right to bring an acceptable form of identification or execute an affidavit at the Voter Registrar's office within 6 days of the date of the election to have the provisional ballot counted.  The Notice to Provisional Voter form must contain the following information under 63.001(g) for the voter:

•       List of acceptable identification;

- Procedures for presenting identification/executing an affidavit at the Voter Registrar's Office;
- A map showing the location(s) of Voter Registrar Offices;
- A notice stating that if the procedures are followed, the ballot will be counted.

3. If the voter brings an acceptable identification to the Voter Registrar's Office within six days of the election, the Voter Registrar will mark the provisional affidavit envelope to note that the voter has "cured" by presenting an acceptable form of identification. In turn, the Early Voting Ballot Board shall count the ballot as the voter has followed the proper procedure.

4. If a voter does not have an acceptable form of identification due to disability, the voter may apply for a permanent exemption to the photo identification requirement at the Voter's Registrar's office during the cure period (beginning the first day of early voting and ending six days from date of election). If the application is complete, the Voter Registrar will accept and process the application. The Voter Registrar then will mark the provisional affidavit envelope to note that the voter has "cured" by meeting the disability exemption. In turn, the Early Voting Ballot Board shall count the ballot as the voter has followed the proper procedure.

5. Finally, if a voter does not have an acceptable form of identification due to religious objection or natural disaster, the voter may apply for a temporary exemption to the photo identification requirement at the Voter's Registrar's office during the cure period (beginning the first day of early voting and ending six days from date of election). The Voter Registrar will provide the voter with affidavit, and once the voter signs the affidavit, the Voter Registrar will accept the affidavit. The Voter Registrar then will mark provisional affidavit

---

envelope to note that the voter has "cured" by executing a temporary exemption. The affidavit is then attached to the provisional ballot envelope and the Early Voting Ballot Board shall count the ballot as the voter has followed the proper procedure.

**Interrogatory 10b**

In the scenarios above, an election worker does not have any discretion. They must inform the voter of his or her rights. If the voter has an acceptable form of identification, election workers must allow the voter to cast a regular ballot. Finally, if the voter does not have an acceptable form of identification, the election worker must notify the voter of his or her right to cast a provisional ballot, offer the voter a provisional ballot, and then provide a Notice to Provisional Voter to the voter.

**11.    In those instances when a voter appears in person to vote and presents a photographic identification of the type that complies with Texas Election Code § 63.0101 (as amended by SB 14), detail the process and procedures that a poll official then must follow, including the process and procedures to determine whether that photographic identification contains information that precisely matches the voter's record in the poll book and the process and procedures to allow the prospective elector to cast a ballot if the poll official concludes that the requisite precise match between the photographic identification and the poll book does not exist (specifying which procedures result in a regular ballot and which procedures result in a provisional ballot and identifying the steps in this process where a poll official may exercise his or her discretion regarding the type of ballot that the voter would be entitled to cast).**

**OBJECTION:**   Defendants object to this interrogatory on the grounds that it contains at least four separate interrogatories.  By asking Defendants to "detail the process and procedures that a poll official then must follow" "to determine whether that photographic identification contains information that precisely matches the voter's record in the poll book" [hereafter Interrogatory No. 11a] and then asking the Defendants to detail the "process and procedures to allow the prospective elector to cast a ballot if the poll official concludes that the requisite precise match between the photographic identification and the poll book does not exist" [hereafter Interrogatory 11b] and then asking the Defendants to specify which procedures result in a regular ballot and which procedures result in a provisional ballot" [hereafter Interrogatory 11c] and then asking the Defendants to identify the "steps  in the process where a poll official may exercise his or her discretion" [hereafter Interrogatory 11d] the interrogatory introduces four lines of inquiry that are separate and distinct from the inquiry made by the portion of the interrogatory that precedes each.  See *Willingham v. Ashcroft,* 226 F.R.D. 57, 59 (D.D.C 2005). Defendants will therefore construe Interrogatory No. 11 as four separate interrogatories.

Further, Defendants object to all four separate interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome to the extent they call for narrative responses requiring the Defendants to provide complete factual "detail" of the requested "process and procedures".  These interrogatories seek to narrow the Defendants' responses without the benefit of specific questions during direct or cross-examination. Defendants would object that a detailed explanation of the issues is more appropriate by deposition.  Further, the interrogatories fail to identify or define what is meant by "precisely matches", "requisite precise match" and "prospective elector".  Defendants would further object to these interrogatories to

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

the extent they require the Defendants to express legal opinions requiring legal expertise with respect to mandatory "process and procedure" and/or the exercise of discretion under the Texas Election Code and other applicable codes and regulations. Defendants further object to the extent the interrogatories request information that is publicly available and/or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows to Interrogatories 11a, 11b, 11c and 11d:

Responding generally, in the instance where a voter appears to vote in person and provides an acceptable form of identification under §63.0101, the following procedures would be followed to notify the voter of his rights and to properly review a voter's identification for voting under the Texas Election Code:

1. Upon entering the polling place, the voter should see a "Notice of Acceptable Identification." The notice shall be posted in a "prominent location" at each polling location under §62.016 of the Texas Election Code. The "Notice of Acceptable Identification" provides voters with a list of acceptable identification under §63.0101, and provides the voter with information about their rights to seek a permanent exemption due to disability, or a temporary exemption due to religious objection or natural disaster.

2. After entering the polling place, the voter will check-in with an election worker at the check-in table. At that time, the election worker will ask the voter for an acceptable form of identification as listed in § 63.0101.

3. Once the voter provides an acceptable form of identification under § 63.0101, the election worker will find the voter's name on the list of registered voters. (If the entity uses

an electronic or "e-poll book," the election worker may be able to scan the identification's bar code to pull-up the voter's information or electronically search the list of registered voters to find the voter in the e-poll book.)

4. In locating the voter on the list of registered voters, the election worker will compare the voter's name as provided on their acceptable identification to their name as provided on the list of registered voters per §63.001(c). If the voter's names are identical and the voter's identity is verified, the voter will vote a regular ballot, as detailed in step 6a. If the voter's names are "substantially similar" and voter's identity is verified, the voter will vote a regular ballot, as detailed in step 6b. If the voter's names listed are not identical or substantially similar, the voter will be offered a provisional ballot and has the right to appear at the Voter Registrar's office to "cure" his ballot, as detailed in step 6c. The guidelines for determining if a voter's name is "substantially similar" have been adopted as 1 TAC §81.71, and are as follows:

    a.    Identical: The full name as listed between the voter's identification and list of registered voters agree exactly.

    b.    Substantially Similar: The guidelines for determining if a voter's name is "substantially similar" have been adopted as 1 TAC § 81.71. There are four categories of names that will be considered substantially similar by the election worker:

        i.    <u>Slightly Different</u>: A voter's name as listed on their identification may be slightly different from their name as listed on the list of registered voters if there are minor misspellings, typographical errors, or commonly used different spellings of a name.

ii. <u>Customary Variation</u>: A voter's name as on their identification may be a customary variation from their name as listed on the list of registered voters. Customary variations include variations in spellings of a name in a different language, e.g., Enrique for Henry.

iii. <u>Initial, Middle or Former Name</u>: A voter's name as on their identification may include an initial, middle name or former name that is not included on the list of registered voters, or vice versa. Under this category a voter's maiden name or former name may appear on their identification/list of registered voters, but not on both.

iv. <u>Different Field</u>: A Voter's name as on their identification may occupy a different field than as on the list of registered voters. Under this category a voter's former name or maiden name may appear as a middle name, or a voter's maiden name has been hyphenated to include their current last name.

c.    Not identical or Substantially Similar: In a situation where a voter's name as it appears on their identification is not identical and does not fit into one of the four categories of a substantially similar name.

If the election worker is trying to determine if a voter's name fits into one or more categories of substantially similar names, the election worker should use the "totality of the circumstances" method to verify the voter's identity. This means that the election worker should compare all available information on the list of registered voters and the voter's identification, such as date of birth, address, and other information to assist in making a determination. For example, if the voter's names as listed are spelled differently, the election

worker may see that the voter's address as listed on their identification matches their address as listed on the list of registered voters, thereby assisting the election worker in determining the names are substantially similar and verifying the voter's identity. However, the "totality of circumstances" as applied to a voter's name cannot be used to the detriment of the voter. There is no legal requirement for a voter's address, date of birth, or gender to match between the voter's identification and list of registered voters. Therefore, comparing the information and using the "totality of the circumstances" is for the assistance of the voter.

5. After the election worker has found the voter on the list of registered voters, the election worker will verify the voter's identity by confirming that the photograph on the identification is that of the voter at the polling place per §63.001(d). The guideline an election worker should use in making this determination is: "Can this photograph be that of the voter?" Training materials issued by the Secretary of State account for the fact that individuals change over time, and the fact that a picture on an acceptable identification may have been taken several years prior to the voter appearing in person. Therefore, if an election worker is trying to verify the identity of the voter, and has determined that the photograph on the voter's identification may be that of the voter, but the voter has moderately modified their appearance since the time their photograph was taken, the election worker may use the "totality of the circumstances" to assist in verifying a voter's identity. For example, a voter may have changed their hair color since the time of their identification photograph, and to assist the voter and the election worker, the election worker may look to a voter's date of birth, address or other available information in determining if the voter's identity can be verified. If the voter's identity cannot be verified,

the voter will be offered a provisional ballot and has the right to appear at the Voter Registrar's office to "cure" their ballot, as detailed in step 6d.

6. After the election worker has reviewed the voter's acceptable identification, the following steps will be taken depending on the situation:

    a.    If the voter's names, as listed on the identification and list of registered voters, are identical and voter's identity can be verified, the voter will be accepted for casting a regular ballot. At this point, the election worker will add the voter's name to the "combination form" (the document that provides for a signature roster and poll list under § 63.004). After their name has been added, the voter will sign their name next to their printed name, and then cast their ballot.

    b.    If the voter's names, as listed on the identification and list of registered voters, are determined to be substantially similar, and the voter's identity can be verified, the voter will be accepted for casting a regular ballot. The process is the same as 6a, but the voter will be asked to review and accept the "similar name affidavit." The voter will just need to initial the box next to their name, signifying their acceptance of the affidavit.

    c.    If the election worker determines that the voter's names, as listed on the identification and list of registered voters, are neither identical nor substantially similar, the voter will be offered a provisional ballot. As detailed in the answer to Interrogatory No.10, the voter will be provided a "Notice to Provisional Voter" with more details on the location of the Voter Registrar and procedure for "curing" their ballot. Further, under 1 TAC §81.71, the voter may bring to the Voter Registrar a court order reflecting a name change or a marriage license to allow the Voter Registrar to confirm the identity

of the voter. Finally, the voter may execute an affidavit stating that they are the same person as named on the identification provided.

d.      If the election worker determines that the voter's identity cannot be verified from the identification provided, the voter will be offered a provisional ballot. As detailed in the answer to Interrogatory No. 10, the voter will be provided a "Notice to Provisional Voter" with more details on the location of the Voter Registrar and procedure for "curing" their ballot. Further, under 1 TAC §81.71, the voter may bring to the Voter Registrar a letter from a licensed physician stating that the voter has changed their appearance, allowing the Voter Registrar to confirm the identity of the voter. Finally, the voter may execute an affidavit stating that they are the same person as named on the identification provided.

7.  While the voter is casting his ballot, the voter should see a "Voter's Information" poster that contains information about their rights under the law, and lists the voting rights hotline telephone number for the Texas Secretary of State and procedures for filing an election complaint.


12.     **Identify all actions taken by the Office of the Texas Secretary of State and any other Texas state official, from August 30, 2012, to the present, to inform and train county election officials and poll officials regarding the implementation of SB 14, including identifying all in-person and remote training sessions (by date, location, names and titles of the presenters, and attendees) and the amount of money budgeted and spent for this training.**

**OBJECTION:** Defendants object to this interrogatory as being overly broad, unduly burdensome, not reasonably specific, and vague. By asking the Defendants to "identify all actions taken," the interrogatory fails to define or set any limitations or parameters as to the type of information that is being sought. Further, the interrogatory fails to define "other Texas state official" or identify the "official" from whom the interrogatory seeks to gain information. Defendants further object that this interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. Defendants further object to the extent the interrogatory seeks disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product doctrine. Defendants further object to the extent it seeks information protected from disclosure by Texas Government Code §323.017. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known or controlled by third parties, including independent officers of the State and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows: The Office of The Texas Secretary of State has an existing poll worker tool which was revised to incorporate instruction on voter ID requirements. The training can be accessed here: http://www.texaspollworkertraining.com/. The update for voter ID was released and made available for training of poll workers prior to the November 2013 uniform election date. These changes were done within the existing agency budget, i.e., no additional funds were needed to accommodate voter ID requirements. The Secretary of State also

provided training at the annual seminars to the county election officials as well as the election officials from cities, school districts and other political subdivisions. The materials for these conferences are available here: http://www.sos.state.tx.us/elections/laws/seminars/speakers/. The county election official seminar was held on July 29-31, 2013 and the city/school/other seminar was held on December 4, 2013. In between these two seminars, the Secretary of State held the 16th biennial seminar for county party chairs on October 4, 2013 where we also discussed the changed voter ID requirements. The presentations for that seminar are also available here: http://www.sos.state.tx.us/elections/laws/seminars/speakers/. Again, no additional funding was budgeted to accommodate voter ID. The Secretary of State also provided power point training materials to be used in lieu of the online poll worker training for counties that preferred this method. These materials were provided to counties holding elections during the summer and fall prior to the uniform election date in November 2013. All of the posters, power points, seminar materials and other training materials provided by the Secretary of State did not require any additional funding or budget. The Director of Elections also has spoken to regional groups of election officials about the changed voter ID requirements including the Central Texas Elections administrator group in August 2013 and the South Central Tax Assessor Collector group later in the fall of 2013. The Director and several election division attorneys spoke to the Election Administrators annual meeting in January 2014 where we discussed the implementation of voter ID in the November 2013 election and things to keep in mind as we go forward including making provisional ballots available to all voters, that the address on the ID provided does not need to match the voter registration address, and that voters can be offered the opportunity to change their voter

registration name, but that the opportunity needs to be clearly voluntary.

The Texas Department of Public Safety, Driver License Division, developed a training plan to present all necessary information and issuance procedures to county officials assigned to the Election Identification Card (EIC) mobile stations statewide. Documents regarding the plan, training presentation and all logs of the trainer(s) and county official(s) receiving training as well as the locations of training are included with these responses and attached hereto as TEX I.R. 000262 through TEX I.R. 000404.

There is no budget specified for this training to be conducted. Any costs associated with the training are included in the overall costs associated with the EIC processes for the division. The training costs are not categorized separately and cannot be provided separately.

**13.** **Identify all actions taken by the Office of the Texas Secretary of State and any other Texas state official, from August 30, 2012, to the present, to inform the general public or any segment thereof of the requirements of SB 14, including identifying all writings and recordings transmitted to or otherwise made available to the general public or to any segment thereof (including the date or dates on which this occurred), and specifying the amount of money budgeted and spent on this activity.**

**OBJECTION:** Defendants object to this interrogatory as being overly broad, unduly burdensome, not reasonably specific, and vague. By asking the Defendants to "identify all actions taken," the interrogatory fails to define or set any limitations or parameters as to the type of information that is being sought. Further, the interrogatory fails to define "other Texas state official" or identify the "official" from whom the interrogatory seeks to gain information.

---

Defendants further object that this interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. Defendants further object to the extent the interrogatory seeks disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product doctrine. Defendants further object to the extent it seeks information protected from disclosure by Texas Government Code §323.017. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known or controlled by third parties, including independent officers of the State and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants generally respond as follows:  Since photo ID requirements went into effect in Texas, The Office of the Texas Secretary of State has embarked on two major voter education campaigns. The first, implemented to educate voters in time for the 2013 constitutional amendment election employed television, radio, print, and digital advertising generating more than 30 million impressions and reaching 252 out of Texas' 254 counties. The amount for the 2013 campaign that was budgeted and spent was $400,000. In addition to advertising our office implemented a full-scale, state-wide public relations campaign that included numerous press availabilities, press releases, op-eds from the Secretary, social media campaigns, media interviews, updates to the Vote Texas mobile app, and working with county officials to help spread the word about photo ID requirements. The Secretary of the State also promoted the 25 mobile EIC stations which were dispatched throughout the state to issue election identification certificates. In 2014,

The Secretary of the State is in the middle of voter education in which the agency will spend $2 million. A large part of that campaign will focus on educating voters about the photo ID requirement and use similar paid and earned media strategies from the 2013 campaign. In addition to the actions set out in the response to Interrogatory Number 12, the Secretary of State's office changed the form of the voter registration certificate in order to note a disability exemption from showing identification. All counties received notice of this change and are able to comply. This information has been incorporated into all of our training of election officials and poll worker training. Further, the Secretary of State's office provided the wording of the information contained on the reverse side of the voter registration certificate to include the photo ID requirement. Such language provides each registered voter personal notice of the photo ID requirements, potential exemptions, and the website and toll free telephone number for the Secretary of State if the voter needs additional information.

The Texas Department of Public Safety, through the Driver License Division and the DPS Media and Communications Office provides information to the general public regarding the Election Identification Card (EIC) process statewide. Information is provided on the department's website and is available by visiting the link at http://www.dps.texas.gov/Driver License/electionID.htm. This page provides the locations and times for EIC mobile stations in counties statewide and is routinely updated. In addition, see the documents attached hereto and provided at TEX I.R. 000001 through TEX I.R. 000228 and TEX I.R. 000262 through TEX I.R. 000404. Information is also available to the public through the DPS customer service line. There is a menu tree option specific to EIC issuance. A copy of the script for the information on the menu tree has been provided at TEX I.R. 000019 through TEX I.R. 000022.

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

The Driver License Division developed door signs for the driver license offices and banners for the mobile locations. The door signs were printed and the banners requisitioned from local printers by the local driver license management for distribution. Representative copies of the door signs and banners have been provided at TEX I.R. 000013 through TEX I.R. 000018.

The Department of Public Safety's Media and Communications Office has engaged in a comprehensive media campaign related to the EIC issuance program. A listing of all press releases and relevant information has been provided at TEX. I.R. 000023 through TEX I.R. 000026.

There is no budget specified for public outreach. Any costs associated with public outreach are included in the overall costs associated with the EIC processes for the agency and in the standard operating costs for the agency. Public outreach costs are not categorized separately and cannot be provided separately.

**14. Describe in detail all categories of information relating to provisional balloting that are tracked in the Texas Election Administration Management (TEAM) database, including  whether, and if so, how, the reason or reasons for issuance of any provisional ballot is recorded;  whether and if so, how the disposition of any provisional ballot (*e.g.*, accepted or rejected) is  recorded; whether and if so, how, the reasons for rejection of any provisional ballot are recorded;  and when in relation to each election date information relating to provisional ballots and their  disposition is recorded in TEAM. If more or less information on provisional balloting is tracked  depending on the election type (*e.g.*,**

federal, statewide, or municipal election), or if provisional balloting information in TEAM varies by Texas county, please identify all such differences.

**OBJECTION:** Defendants object to this interrogatory as being vague, not reasonably specific, overly broad and unduly burdensome as it calls upon the Defendants to "describe in detail" technical information that would be more appropriately explored by deposition. Defendants further object to the extent this interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows: TEAM does not differentiate provisional ballot tracking availability based on election type, nor do those counties using TEAM to enter provisional ballot information vary in process. Counties are not, however, required to track provisional ballots within the TEAM database and many elect not to do so. Neither are counties required to report to the state whether or not a voter's ballot was cast provisionally.

In addition, TEAM does not differentiate the reason the ballot was cast provisionally. The only option for entering a provisional ballot is to designate an accepted ballot as a Provisional Ballot using the Record Voting Activity feature. In such cases, the tracking number must be recorded. The user will enter a random Provisional tracking number of their choice. This random Provisional tracking number is automatically assigned to the voter/ballot. The number is used for tracking purposes and to record the vote at step (2) two. The date that the registrar enters as the date of the voting history activity taking place is retained, as well as Party Affiliation for the ballot if applicable.

Once the ballot board has made a determination regarding the ballot, the registrar will

record the action taken on the ballot as either "Accepted or Rejected" by using the Record Provisional Voting History option. The user only has the option at this point to accept or reject the ballot. Should the user choose to reject the ballot, he or she must designate a rejection reason. The following reasons are currently available for ballot rejection in the TEAM system:

- Already Voted
- Incomplete Application Received
- Improper Identification
- Incorrect Precinct
- Moved
- No identification
- Not in the Political Subdivision
- No voter Registration
- Registered less than 30 days
- Registration cancelled
- Voter rejected due to ineligibility

Regarding the time frame for recording provisional ballots and their disposition, Texas Election Code mandates that "no later than the 30[th] day after the date of the primary, runoff primary, or general election or any special election ordered by the governor, the registrar shall electronically submit to the secretary of state the record of each voter participating in the election" [18.069]. Thus, during these types of elections, provisional ballot results are traditionally provided within 30 days. It should be noted, however, that Provisional Voting may be captured for those voters who are already registered to vote within the TEAM system. For those who are not registered to vote, Provisional Voting may be captured post-election.

**15.      Identify any study or analysis (past, current, or proposed, regardless of the author)**

of which Defendants are aware that undertook or is undertaking to review, analyze, determine, or document the effect of SB 14, or any other photographic voter identification proposal in Texas, on Texas citizens, registered or unregistered (including, but not limited to, financial effects, lack of access to identification, the number of Texas citizens who do not possess the specific forms of identification included in SB 14, and the effect of implementation SB 14 in 2013 elections), and include a description of each such study or analysis's structure and methodology, along with all results and conclusions. In answering this interrogatory, please construe effect to include polling place delays, individuals turned away from the polling place without casting a ballot, casting of provisional ballots (both those eventually counted and those that were not), and mail balloting by individuals eligible to do so.

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains at least two separate interrogatories. By asking the Defendants to "identify any study or analysis" [hereafter Interrogatory 15a] and then asking the Defendants to "include a description of each study and analysis's structure and methodology, along with all results and conclusions" [hereafter Interrogatory 15b] the interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it". *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005) (internal quotations and citations omitted). Defendants will therefore construe Interrogatory 15 as two separate interrogatories.

Further, Defendants object to both interrogatories as being vague, not reasonably specific, overly broad and unduly burdensome as they fail to identify any particular "study or analysis" for which they seek information. Further, they fail to identify any particular author

or category of authors that created a "study or analysis" for which they seek information. Further, they fail to identify what is meant by "study or analysis" and do not inform the Defendants if they seek information concerning a "study or analysis" that has been published or otherwise reduced to writing or if they are calling upon the Defendants to produce information concerning an informal or internal "study or analysis", etc.   Defendants further object to these interrogatories to the extent they seek information not personally known or controlled by the Defendants but is known or controlled by third parties, including private individuals or groups and independent officers of the state and local governments. Defendants further object to these interrogatories to the extent they seek information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants further object to the extent these interrogatories seek disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney-work product doctrine.   Defendants further object to the extent they seek information protected from disclosure by Texas Government Code §323.017. Defendants further object to the extent these interrogatories call upon the Defendants to disclose information concerning expert witnesses in this litigation.   Defendants will disclose expert witnesses pursuant to the court's scheduling order.

Subject to and without waiving the foregoing objections, the Defendants respond as follows:

**Interrogatory 15a**

Defendants are not aware of any "study or analysis" as specifically described in this interrogatory.

---

**Interrogatory 15b**

Defendants are not aware of any "study or analysis" as specifically described in this interrogatory.

16. **Describe in detail each legislative, executive, or regulatory action or guideline, whether proposed, promulgated, issued, or enacted, from August 30, 2012, to the present, that relates in whole or in part to SB 14 or to a voter's ability to obtain one of the required forms of identification under Texas Election Code § 63.0101 (as amended by SB 14).**

**OBJECTION:** Defendants object to this interrogatory as being vague, overly broad, unduly burdensome and not reasonably specific as it fails to identify the "legislative, executive, or regulatory action or guideline" that it requires the Defendants to "describe in detail". Further, describing the "action" or "guideline" as being those that "relates in whole or part to SB14 or to a voter's ability to obtain one of the required forms of identification" also fails to be reasonably specific as to the information sought by the interrogatory. Further, Defendants object to the extent it seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. Defendants further object to the extent it seeks information not personally known or controlled by the Defendants but is known or controlled by third parties, including private individuals, groups and independent officers of state and local governments. Defendants further object to the extent it seeks information that is publicly available or equally accessible by the plaintiffs and plaintiff-intervenors. Defendants further object to the extent this interrogatory seeks disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product

doctrine.   Defendants further object to the extent these interrogatories seek information protected from disclosure by Texas Government Code §323.017.

Subject to and without waiving the foregoing objections, the Defendants respond as follows:   See the 1 TAC §81.71 and 25 TAC §181.22(t).   Further, Plaintiff and Plaintiff-Intervenors are referred to the "Texas Legislature online – Bill Search Results" provided with these responses and attached hereto as TEX I.R. 000405.

**17. Describe in detail each request made, either before or after legislative passage of SB 14, to the Office of the Governor, Office of the Lieutenant Governor, Office of the Secretary of State, Office of the Attorney General, the Department of Public Safety, or to any legislator or their staff or agents about the number or demographic characteristics of Texas registered voters who did not possess or do not possess one of the required forms of photographic identification set out in Texas Election Code § 63.0101 (as amended by SB 14), including but not limited to the person or persons who requested the information, the specific information requested, the date of the request, the response to the request, the person who responded, the date of the response, and the results or conclusions set forth in the response.**

**OBJECTION:**   Defendants object to this interrogatory as being vague, overly broad, unduly burdensome and not reasonably specific.   The interrogatory fails to define "request" or place any limitations or parameters as to the type of "request" that it is asking the Defendants to "describe in detail".   Further, the interrogatory fails to define "demographic characteristics".   Further, the interrogatory is not limited to a specific time period.   Further, the interrogatory

seeks information that is not relevant to this cause of action and is not likely to lead to the discovery of relevant or admissible evidence. Defendants further object to the extent it seeks information not personally known or controlled by the Defendants but is known or controlled by third parties, including private individuals, groups and independent officers of the state and local governments. Defendants further object to the extent it seeks information that is publicly available or equally accessible by the plaintiffs and plaintiff-intervenors. Defendants further object to the extent these interrogatories seeks disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney work-product doctrine. Defendants further object to the extent it seeks information protected by the Texas Government Code §323.017.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows:

Defendants are not aware of any requests that specifically asked "about the number or demographic characteristics of Texas registered voters who did not possess or do not possess one of the required forms of photographic identification set out in Texas Election Code §63.0101." However, see the Defendants response to Interrogatory Numbers 18 and 19 with respect to the Department of Justice requests. In addition, see the spread sheets reflecting Public Information Requests made to the Secretary of State and attached to this response as TEX I.R. 000406 through TEX I.R. 000410.

**18.     Describe in detail each instance since January 1, 2000, in which individuals in the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General or any other state official or their agents have**

---

matched information from any database maintained by any Texas State agency to any other state or federal database, including, but not limited to, matches of DPS databases conducted pursuant to 42 U.S.C. § 15483(a)(5)(B). Please include in your description the full names and employers of the persons who conducted the match, which databases were matched, the date or dates of the match, the purpose of the match, and the results or conclusions derived from the match.

**OBJECTION:** Defendants object to this interrogatory as vague, overly broad, unduly burdensome and not reasonably specific. It fails to identify what is meant by "matched", fails to specify any particular "database", and fails to identify the "matched information" that is being sought. Further, it fails to identify the "other state official or their agents" from whom the interrogatory requires information. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known or controlled by third parties, including private individuals or groups and independent officers of the state and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants further object to the extent this interrogatory seeks disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney-work product doctrine. Defendants further object to the extent it seeks information protected from disclosure by Texas Government Code §323.017. Defendants further object to the extent the interrogatory calls upon the Defendants to disclose information concerning expert witnesses in this litigation. Defendants will disclose expert witnesses pursuant to the court's scheduling order.

---

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows: Most of the matching performed by the Secretary of State with other databases or information obtained from other databases is an automatic process that occurs on a daily, weekly or quarterly basis. Once each week, the Bureau of Vital Statistics submits a file to the Secretary of State containing available information relating to deceased residents of the state. Matching for files received occurs immediately. Up until 2007, all matches, except for duplicates, were treated as "potential matches." With the inception of TEAM in 2007, strong match criteria was developed for deceased matches, and other matches became known as "weak matches." The result has been that deceased persons have been regularly removed from the voter registration list. In addition, the Social Security Administration's death master file matching began in June 2012 and has continued quarterly since that time for the purpose of removing deceased persons from the voter registration list. That purpose has been accomplished.

In 2002, the Help America Vote Act, also known as HAVA, was passed by Congress and is applicable to voters registering for or participating in federal elections. Part of this act deals with the identification of new voters by comparing the person's Driver License/Identification Number or Social Security Number against the issuing authority. Language was added to the Texas Election Code by the 79th Legislature and went into effect on January 1, 2006. In this way, what is commonly referred to amongst voter registrars as Live Check was born. Live Check is the process by which the Secretary of State's office verifies information in accordance with State and Federal law. If a person's information is able to be verified by DPS or the Social Security Administration, then the voter is moved into Active

Status. That purpose has been accomplished.

Each weekday the Department of Public Safety (1) prepares an abstract of each final judgment received by the department convicting a person 18 years of age or older who is a resident of the state of a felony; and (2) files each abstract with the secretary of state. These records are then processed against the voter rolls to identify possible felons and provided to the county in which the individual is registered for further investigation. That purpose has been accomplished.

On an annual basis, pursuant to Section 62.001 (f) of the Government Code, DPS provides the statewide database of driver's license and ID holders. This file is used to reconstitute the jury wheel for each county in the state of Texas. That purpose has been accomplished.

The Office of the Secretary of State has also attempted to match the voter registration list to the DPS driver license database maintained in house at the behest of DOJ in the preclearance process. The list of non matches was provided to DOJ in September 2011. Another match was attempted between the voter registration list and a different DPS driver license database (specifically provided to SOS for this purpose) toward the end of 2011, and the results were also provided to DOJ in January 2012. The accuracy of the non-matches cannot be verified as correct.

Finally, the voter registration list was matched against the DPS "jury wheel" list in July 2013 in order to provide the Secretary of State's office with some idea of where non matches might be concentrated so that the Secretary of State could target mobile EIC units to those areas. These results were requested by public information request by Sondra Haltom and Chris

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

Tomlinson and provided to them.

19.     **For each instance described in your response to Interrogatory 18, detail the exact method of matching the databases, including, but not limited to the matching protocol, the full names, titles, and employers of the person or persons who authorized the match, the person or persons who devised the matching protocol, the fields that were matched, and each step that was taken to ensure the accuracy of the result.**

**OBJECTION:** Defendants object to this interrogatory as vague, overly broad, unduly burdensome and not reasonably specific. It fails to identify what is meant by "matched", fails to specify any particular "database", and fails to identify the "matched information" that is being sought. Further, it fails to identify the "other state official or their agents" from whom the interrogatory requires information. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known or controlled by third parties, including private individuals or groups and independent officers of the state and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors. Defendants further object to the extent this interrogatory seeks disclosure of information subject to the attorney-client privilege, legislative privilege, deliberative process privilege, and attorney-work product doctrine. Defendants further object to the extent it seeks information protected from disclosure by Texas Government Code §323.017. Defendants further object to the extent the interrogatory calls upon the Defendants to disclose information concerning expert witnesses in this litigation. Defendants will disclose expert witnesses

pursuant to the court's scheduling order.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows: In determining which action is appropriate for a registrar to take, the Secretary of State's office established criteria for immediate cancellation of a registration, and different less certain criteria for when a county should further investigate an issue. These are identified as "strong" matches and "weak" matches. The type of identification is based on the data received and the information matched with a current voter registration record. As previously mentioned up until 2007, all matches, except for duplicates, were treated as "potential matches." With the inception of TEAM in 2007, strong match criteria was developed for deceased matches, and other matches became known as "weak matches."

When a strong match occurs, the voter's registration is automatically canceled. A weak match is submitted to the local voter registrar, along with the matching information for further review and investigation. If the registrar believes that there is a match, then the record will be cancelled. If the county registrar does not believe there is a match, then the task will be resolved and the record maintained. Finally, if the voter registrar believes there is a possibility that the information received potentially matches the registered voter listed on the county's rolls, then the voter registrar will send out a "Notice of Examination" or, in the case of a match based on deceased records, a "Verification of Voter Status." Various investigative "Strong match" and "weak match" criteria are described below:

- On all matching criteria, when a former name is provided, it will be compared to the last name field.
- Deceased records, under section 16.001 of the Texas Election Code, are obtained from the Bureau of Vital Statistics and the Social Security Administration. The matching criteria that was developed in 2007 to identify deceased individuals is:
  - ***Strong Deceased Criteria***-A match on a voter record results in cancellation, while a

match on an applicant record results in rejection.

o Last Name, SSN (9 digits) and DOB

- *Weak Deceased Criteria*-A match creates an event/task to send a notice of investigation, (under section 16.033 of the Texas Election Code) which is referred to as the Verification of Voter Status Letter to the voter, if applicable. The list of weak matches is a reference point for voter registrars for conducting additional investigations into whether a voter is potentially deceased.

o SSN (9 digits) and DOB

o SSN (4 digits) and DOB

In 2012, when the Social Security Administration matching began to be performed, the

Secretary of State incorporated additional matching criterion when identifying weak matches.

1.  Weak Match Criteria of SSN (9 digits) and DOB or SSN (4 digits) and DOB plus one Name component as listed below:

- Last Name to Last Name
- First Name to First Name
- Middle Name or Middle Initial Match

2.  First Name, Last Name, and Date of Birth (DOB)

3.  Last Name and Full SSN

The Live Check protocol was also implemented with the inception of TEAM. The

various checks that a new application goes through in a county are:

1.  Duplicate check - the voter record is compared to the statewide database to determine whether or not a strong match duplicate can be identified. If a strong match duplicate is found, the voter record in the old county (with the older EDR date) is cancelled and the voter is "moved" to be an active voter in the new county of registration. If the application strong matches a registered voter in the same county, the record will be updated.

2.  Deceased check - the voter record is compared to the deceased table (comprised of records from the Bureau of Vital Statistics and the Social Security Administration Death Master File) in an effort to confirm the status of the voter. If the record strong matches a record listed in the deceased table, then the application is rejected.

3.  Identification check - the voter from DPS bypasses the ID verification check since the record originated from DPS, but it is checked against deceased live check and undergoes the duplicate verification process. If the voter provides a DL number, then the voter record is

---

compared to the Driver License Table. This process compares the TDL, Last Name or Former Name, and Date of Birth of the voter application to the TDL table. If the last four of the SSN are provided, then the record goes through a portal to the Social Security Administration to attempt to verify the person based on Last Name or Former Name, Date of Birth and the Last four of the SSN.

All possible Felon matches are "weak" matches. A match creates an event/task to send notice of investigation to voter, if applicable. Under Section 16.003 – Each weekday the Department of Public Safety shall: (1) prepare an abstract of each final judgment received by the department convicting a person 18 years of age or older who is a resident of the state of a felony; and (2) file each abstract with the secretary of state. Once the file is received, the matching occurs against the voter file based on the following criteria:

- Last/Former Name, First Name, TDL
- Last/Former Name, First Name, SSN (9 digits)
- Last/Former Name, First Name, SSN (4 digits)
- TDL and DOB

Jury Wheel File (Annual) - On an annual basis a match and merge is performed with the DPS database to generate the jury wheel files for each of the 254 counties based on the following criteria:

- TDL #only
- SSN (9 digits) only
- Last Name/Former, First Name and DOB
- Last Name/Former, First Name and Permanent address
- Last Name/Former, First Name and Mailing address
- Last Name/Former, First Name, SSN (4 digits)

A match eliminates DPS record.

Matches performed for DOJ primary were completed using the following:

Last Name/Former, First Name and TDL/ID

Last Name/Former, First Name and SSN

Last Name/Former, First Name and DOB

**20. Identify by name and title each individual elected to public office at the local, county, state, or federal level in the State of Texas since January 1, 2000, who is a member of a racial or language minority group, including specifying the racial or language minority group of each official and the years that the official held the specified office or offices.**

**OBJECTION:** Defendants object to this interrogatory as being overly broad, vague, not reasonably specific, and unduly burdensome. Further, it seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. The Defendants cannot reasonably provide the requested information as a large number of persons would fall into the categories described in the interrogatory and the Defendants do not have access to, and are not aware of, a comprehensive source that would provide the requested information. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond as follows: There are a very large number of individuals that would fall within the categories of this request; however, the Defendants are not aware of, and are not in possession of, a comprehensive list of such individuals.

**21. Identify (by name and location of application) each person who has applied for an EIC, including the action taken as to each such application, the ultimate disposition of each such application, and the reasons, if any, for rejecting any such application.**

**OBJECTION:** Defendants object to this interrogatory as vague, overly broad and unduly burdensome. Defendants further object to this interrogatory as it calls for information that invades the privacy interests of individuals that are not parties to this litigation. Defendants further object to this interrogatory to the extent it calls for information not personally known or in the possession of the Defendants. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond as follows: The Department of Public Safety received 167 applications since June 26, 2013. The EIC number, name of the applicant, location of issuance and type of office for each may be found at the attachment named *"List of Valid issuances"* at TEX I.R. 000411 through TEX I.R. 000414. The attached document named *"List of Invalid Applications"* provides the name of each applicant, the location of application and the reason for rejection and can be found at TEX I.R. 000415.

**22. Identify (by name and location of application) each person who has applied for a disability certificate under Sections 13.002(i) and 15.001 of the Texas Election Code (as amended by SB 14), including the actions taken on each such application and the reasons, if any, for rejecting any such application.**

**OBJECTION:** Defendants object to this interrogatory as vague, overly broad and unduly burdensome. Defendants further object to this interrogatory as it calls for information that invades the privacy interests of individuals that are not parties to this litigation. Defendants

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

further object to this interrogatory to the extent it calls for information not personally known or in the possession of the Defendants. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond as follows: Texas is a county based system. As such, disability exemptions are filed with the local counties and acted upon by the county voter registrar. The state has no information pertaining to the number of applications submitted by individuals nor does the state database contain actions pertaining to rejection of an application or the reason for such action. The state database only contains record of which individuals have been granted an exemption from showing identification based upon a request for disability exemption, and this information was provided as part of the responsive materials from the voter registration database snapshot taken on January 15, 2014, and produced in response to the United States Amended Second Set of Requests for Production.

**23.    If you contend that SB 14 does not make it more difficult for those voters who do not currently possess a form of acceptable identification under SB 14 to cast a regular in-person ballot, describe each and every fact in support of this contention.**

**OBJECTION:**  The Defendants object to this interrogatory as it is overly broad, vague and lacking in particularity. The interrogatory fails to define, and provides no criteria or parameters for determining, what would make the conduct "more difficult". Further, the possession or lack of possession of acceptable identification under SB 14 concerns the manner in which one

identifies himself prior to casting a ballot, not the manner in which the ballot itself is cast.

Subject to and without waiving the foregoing objections, the Defendants respond as follows: Those persons that do not "currently possess a form of acceptable identification under SB 14" may obtain such identification, apply for an applicable exemption or vote by mail if eligible. Therefore, SB14 does not make it more difficult for qualified voters to cast a ballot.

**24.    Identify each location in the State of Texas (including the name of the office or agency, street address, and days and hours of operation) where a person could register to vote from October 1, 2008, through December 31, 2013.**

**OBJECTION:** Defendants object to this interrogatory as overly broad, vague and unduly burdensome. Further, the interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known and controlled by third parties, including private persons and independent officers of the state and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows: See V.T.C.A., Election Code §13.002(a) and Chapter 20. In addition see V.T.C.A., Election Code §§13.031 through 13.047.

Applicants for a Texas Driver License, Texas Personal Identification card or Election Identification Certificate may submit voter registration information through the application

process which is transmitted to the Secretary of State. Documents have been produced showing the locations of all driver license offices in the state and are attached to these responses as TEX I.R. 000431 through TEX I.R. 000453 and TEX I.R. 000416 through TEX I.R. 000430.

25.    **For each office identified in Interrogatory 24 that was available for voter registration on October 1, 2008, but, as of December 31, 2013, was no longer open or did not provide the same level of service, identify the dates of the change in availability (*e.g.*, change in office location, office closure, change in office hours, or any other modification with respect to office availability between the dates), the basis for the change, and all persons involved in the decision to change availability, including each person's role.**

**OBJECTION:** Defendants object to this interrogatory as overly broad, vague, not reasonably specific, and unduly burdensome. The interrogatory fails to define or identify what is meant by "same level of service". Further, the interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known and controlled by third parties, including independent officers of the state and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, the Defendants respond generally as follows: See V.T.C.A., Election Code §13.002(a) and Chapter 20. In addition, see V.T.C.A., Election Code §§13.031 through 13.047. Further, see the documents attached to

---

these responses as TEX I.R. 000416 through TEX I.R. 000430.

26.    **Identify each location in the State of Texas (including the name of the office or agency, street address, and day and hours of operation) where a person could obtain a Texas driver license, Texas personal identification card, or Texas license to carry a concealed handgun from October 1, 2008, through December 31, 2013.**

**OBJECTION:** Defendants object to this interrogatory as overly broad, vague, not reasonably specific, and unduly burdensome. Further, the interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known and controlled by third parties, including independent officers of the state and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objection, Defendants respond generally as follows: See the attached documents setting forth a listing of all driver license offices in the State of Texas at TEX I.R. 000431 through TEX I.R. 000453 and TEX 000416 through TEX I.R. 000430.

27.    **For each office identified in Interrogatory 26 that was available for obtaining a Texas driver license, Texas personal identification card, or Texas license to carry a concealed handgun on October 1, 2008, but, as of December 31, 2013, was no longer open**

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

or did not  provide the same level of service, identify the dates of the change in availability (*e.g.*, change in  office location, office closure, change in office hours, change in service provided, or any other  modification with respect to office availability between the dates), the basis for the change, and  the identity of all persons involved in the decision to change, including each person's role.

**OBJECTION:**  Defendants object to this interrogatory as overly broad, vague, not reasonably specific, and unduly burdensome. The interrogatory fails to define or identify what is meant by "same level of service".  Further, the interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence.  Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the Defendants but is known and controlled by third parties, including independent officers of the state and local governments.  Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

See the documents attached to these responses at TEX I.R. 000430 through TEX I.R. 000453.  Further, as part of a Driver License Division transformation project the office hours at several locations were extended in 2012, the division added 266 full time FTEs in June 2012 and 254 hourly part time employees in 2012 to work in Driver License offices.  Information regarding these changes can be found in Tuesday Late Night DL Offices, New Hire Distribution, FTE BREAKOUT, and Hourly FTE Locations.  See the documents attached to these responses as TEX I.R. 000454 through TEX I.R. 000468.  The final decisions and approval and changes in hours and allocation of additional resources throughout the division

from 2010 through June 2013 were the responsibility of Rebecca Davio, then the Assistant Director of the Driver License Division and her executive management team.

**28.** **Identify all Texas State and local public agencies and entities that issue or are authorized to issue photographic identification and state the eligibility requirements for obtaining a form of photographic identification from each such agency or entity.**

**OBJECTION:** Defendants object to this interrogatory on the ground that it contains two separate interrogatories. By asking Defendants to "identify all Texas State and local public agencies and entities that issue or are authorized to issue photographic identification" and then asking Defendants to "state the eligibility requirements for obtaining a form of photographic identity from each such agency or entity", the interrogatory "introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it". *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005) (internal quotations and citations omitted). Defendants will therefore construe Interrogatory No. 28 as two separate interrogatories.

Defendants object to this interrogatory as overly broad, unduly burdensome, and vague insofar as it fails to define the term "photo identification" and seeks to impose an obligation on Defendants to identify every document that might fit within the definition of that term without regard to the information necessary to obtain such document or the information contained in such document. Further, the interrogatory seeks information that is not relevant and is not likely to lead to the discovery of relevant or admissible evidence. Defendants further object to this interrogatory to the extent it seeks information not personally known or controlled by the

Defendants but is known and controlled by third parties, including independent officers of the state and local governments. Defendants further object to this interrogatory to the extent it seeks information that is publicly available or equally accessible to the plaintiffs and plaintiff-intervenors.

Subject to and without waiving the foregoing objections, Defendants respond generally as follows:

**Interrogatory 28a**

The Texas Department of Public Safety issues the following forms of identification containing photographs:

- Texas Driver License
- Texas Personal Identification Certificate
- Texas Concealed Handgun License
- Election Identification Certificate
- Department of Public Safety Employee Identification Cards
- DPS and Capitol Complex employee access cards
- Private Security Pocket Card

The agencies listed below use DPS resources to issue security access cards to their employees:

Texas Senate

Texas House of Representatives

Texas Legislative Council

Legislative Budget Board

Legislative Reference Library

Sunset Advisory Commission

Supreme Court of Texas

Texas Board of Law Examiners

Court of Criminal Appeals

Office of Court Administration

State Prosecuting Attorney

Office of Capital Writs

Third District Court of Appeals

State Commission on Judicial Conduct

Texas State Law Library

Office of the Governor

Office of the Attorney General

Texas Facilities Commission

Comptroller of Public Accounts

General Land Office and Veteran Land Board

Texas State Library and Archives

Texas Secretary of State

State Auditor's Office

State Securities Board

Department of Information Resources

Texas Workforce Commission

Fire Fighters' Pension Commission

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

Texas Employees' Retirement System

Texas Real Estate Commission

Texas Department of Housing and Community Affairs

Texas Board of Tax Professionals

Pension Review Board

Public Finance Authority

Bond Review Board

Texas Aerospace Commission

Texas Ethics Commission

Public Insurance Council

State Office of Administrative Hearings

Health Professions Council

Veterans Commission

Texas Department of Public Safety

Commission on Jail Standards

Texas Commission on Fire Protection

Texas Savings and Loan Department

Department of Banking

Department of Licensing and Regulation

Texas Department of Insurance

Texas Railroad Commission

Texas State Board of Public Accountancy

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

Texas Board of Architectural Examiners

Office of Consumer Credit Commission

Structural Pest Control Board

Public Utility Commission

Public Utility Council

Advisory Commission on State Emergency

Office of Risk Management

Board of Professional Geo-Scientist

Board of Medical Examiners

Board of Dental Examiners

Board of Nursing

Board of Chiropractic Examiners

Board of Podiatry Examiners

Funeral Communications

Optometry Board

Board of Pharmacy

Board of Psychologists Examiners

Health and Human Services Commission

Executive Council of Physical and Occupational Therapy

Department of State Health Services

Department of Assistance and Rehab Services

Department of Agriculture

Veterinary Medical Examiners

Water Development Board

Texas Department of Transportation

Texas Department of Motor Vehicles

Texas Juvenile Justice Department

Department of Criminal Justice

Department of Criminal Justice-Pardons and Paroles Division

Texas Education Agency

Texas Southern University

LBJ School of Public Affairs

Office of Demographers

Texas Forensic Scientist Commission

Stephen F. Austin State University

University of North Texas System

Board of Regents, Texas State University System

Texas Parks & Wildlife Department

Texas Historical Commission

State Preservation Board

Texas Commission on the Arts

Treasury Safekeeping Trust Company

These cards contain a digital image of the employee. The cards issued to employees of these

agencies consist of a Security Access Card (HID Proximity Card, approved state employees for

access to buildings administered by DPS) and Texas House of Representatives Capitol Access Card (HID Proximity Card, approved House employees for access to House-controlled areas of the state Capitol building under agreement with the State Preservation Board).

**Interrogatory 28b**

With respect to the "eligibility requirements for obtaining" the above listed identification, see the Defendants' responses to Interrogatory Numbers 4a, 4b, 4c, 5a, 5b, 5c, 6a, 6b, 6c, 7a, 7b and 7c. Further, with respect to security access cards issued to employees, the eligibility requirements would be determined by the terms of employment of each agency.

Dated: February 28, 2014

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General
Southern District of Texas No. 1160600

*/s/ John B. Scott*
JOHN B. SCOTT
Deputy Attorney General for Litigation
Southern District of Texas No. 10418
ATTORNEY-IN-CHARGE

---

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories

GREGORY DAVID WHITLEY
Assistant Deputy Attorney General
Southern District of Texas No. 2080496
State of Texas Bar No. 2080492

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

SEAN PATRICK FLAMMER
Assistant Attorney General
Southern District of Texas No. 1376041
209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

COUNSEL FOR THE STATE OF TEXAS,
RICK PERRY, JOHN STEEN, and STEVE
MCCRAW

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served by electronic mail on February 28, 2014, to counsel of record.

/s/ John B. Scott
JOHN B. SCOTT

Defendants' Objections and Responses to Plaintiffs and Plaintiff-Intervenors'
First Set of Interrogatories