## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BELINDA ORTIZ, LENARD TAYLOR, EULALIO MENDEZ JR., LIONEL ESTRADA, ESTELA GARCIA ESPINOSA, ROXSANNE HERNANDEZ, LYDIA LARA, MARGARITO MARTINEZ LARA, MAXIMINA MARTINEZ LARA, and *LA UNION DEL PUEBLO ENTERO, INC.*,<br>Plaintiffs,<br><br>v.<br><br>STATE OF TEXAS; JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

1.      This is an action brought to challenge a voter suppression law adopted by the State of Texas commonly known as Senate Bill 14 (82nd Tex. Leg.), Tex. Elec. Code Sec. 63 *et seq.*, and implemented by the Texas Secretary of State and the Texas Department of Public Safety. Individual Plaintiffs, Latino and African American citizens of the United States and the State of Texas, are low-income, registered voters who are otherwise eligible voters, and who have been impermissibly burdened in the exercise of the franchise by the State of Texas in its efforts to suppress the Latino and African American vote. Organizational Plaintiff *La Union del Pueblo Entero, Inc.* is a nonprofit membership organization comprised largely of farm workers and other low wage workers who reside in Texas. This challenge is brought pursuant to Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, as well as the 14th and 15th Amendments of the United



2:13-cv-193
09/02/2014
**DEF0574**



EXHIBIT

1

States Constitution.  Plaintiffs also challenge the voter suppression law, SB 14, pursuant to Article I, §§ 3 and 3a of the Texas Constitution.

### JURISDICTION AND VENUE

2.      The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 2201 and 42 U.S.C. § 1973j(f).

3.      Venue is proper in this court under 28 U.S.C. §§ 124(b)(5) and 1391(b).

### PARTIES

4.      Plaintiff EULALIO MENDEZ JR. is an adult United States citizen who is a resident and registered voter of Willacy County, Texas.

5.      Plaintiff LIONEL ESTRADA is an adult United States citizen who is a resident and registered voter of Karnes County, Texas.

6.      Plaintiff LENARD TAYLOR is an adult United States citizen who is a resident and registered voter in Nueces County, Texas.

7.      Plaintiff BELINDA ORTIZ is an adult United States citizen who is a resident and registered voter in Nueces County, Texas.

8.      Plaintiff ROXSANNE HERNANDEZ is an adult United States citizen who is a resident and registered voter of Goliad County, Texas.

9.      Plaintiff ESTELA GARCIA ESPINOZA is an adult United States citizen who is a resident and registered voter of Willacy County, Texas.

10.     Plaintiff MARGARITO MARTINEZ LARA is an adult United States citizen who is a resident and registered voter of Willacy County, Texas.

11.     Plaintiff LYDIA LARA is an adult United States citizen who is a resident and registered voter of Willacy County, Texas.

12.     Plaintiff MAXIMINA MARTINEZ LARA is an adult United States citizen who is a resident and registered voter of Willacy County, Texas.

13.     Plaintiff *LA UNION DEL PUEBLO ENTERO, INC.* ("LUPE") is a Texas nonprofit membership corporation comprised largely of farm workers and other low wage workers who reside in Texas. LUPE was founded by Cesar Chavez to help meet the advocacy and organizing needs of low wage workers and their families. LUPE has operated an office in San Juan, Hidalgo County, Texas for over ten years and also has offices in the cities of Alton, Las Milpas, Mercedes, and Edcouch, Texas. The organization has more than seven thousand members. LUPE uses its resources to promote civic engagement, including voting. In response to passage of the Texas Voter Identification Law, LUPE staff diverted significant resources to educating their members and the larger public on the new law's requirements. These efforts were undertaken to minimize the number of otherwise eligible voters who would be unable to vote. In furtherance of LUPE's mission and purpose, LUPE helps members participate in the democratic process by voting. LUPE advocates for fair government treatment of low-income families. *See* www.lupenet.org.

14.     Defendant STATE OF TEXAS is one of the states of the United States of America.

15.     Defendant JOHN STEEN is the Texas Secretary of State and is sued in his official capacity. The Texas Secretary of State is the State's chief election officer. The Office of the Texas Secretary of State is responsible for coordinating the implementation of Texas Senate Bill 14 (2011) ("SB 14").

16.     Defendant STEVE McCRAW is the Director of the Texas Department of Public Safety ("DPS") and is sued in his official capacity.  DPS is the state agency responsible for issuing

certain forms of photographic identification that Texans may present in order to cast an in-person vote under SB 14.

## FACTUAL ALLEGATIONS

**Texas Population Diversity and Inequality**

17.     According to the 2010 Census, Texas had a total population of 25,145,561, with a Hispanic population of 9,460,921 (37.6%) and a non-Hispanic black population of 2,975,739 (11.8%).

18.     According to the 2010 Census, Texas had a voting-age population ("VAP") of 18,279,737, with a Hispanic VAP of 6,143,144 (33.6%) and a non-Hispanic black VAP of 2,102,474 (11.5%).

19.     The 2007-2011 five-year aggregate American Community Survey ("ACS") estimated that the citizen voting age population ("CVAP") of Texas was 15,583,700, with a Hispanic CVAP of 4,048,210 (26.0%) and a non-Hispanic black CVAP of 1,988,805 (12.8%).

20.     As of April 30, 2012, 22.5% of registered voters in Texas had Spanish surnames.

21.     Hispanics comprised 65% of total population growth in the State of Texas between 2000 and 2010, and non-Hispanic blacks comprised an additional 13.4% of total population growth.

22.     The 2007-2011 ACS estimated that non-Hispanic blacks and Hispanics in Texas experience poverty at roughly three times the rates of non-Hispanic whites and that non-Hispanic white median per capita income is approximately double both Hispanic and non-Hispanic black median per capita income.

23.     The 2009-2011 ACS estimated that only 3.8% of non-Hispanic white-led households in Texas lack access to a vehicle, whereas 7.2% of Hispanic-led households and 12.9% of non-Hispanic black-led households lack access to a vehicle.

24.     According to the 2010 Census, Texas had a total population of 25,145,561, of which

4

12,673,281 (50.4%) were women.

25.     According to the 2010 Census, Texas had a total CVAP of 15,403,000, of which

7,973,000 (51.76%) were women.

26.     According to the 2010 Census, Texas had 9,493,000 persons registered to vote, of which

5,054,000 (53.24%) were women.

27.     The State of Texas's history of official racial discrimination against its African American

and Hispanic citizens is longstanding and well-documented. *See LULAC v. Perry*, 548 U.S. 399,

439-40 (2006); *Bush v. Vera*, 517 U.S. 952, 981-82 (1996) (plurality opinion); *White v. Regester*,

412 U.S. 755, 767-70 (1973).  Federal intervention has been necessary to eliminate numerous

devices intentionally used to restrict minority voting in Texas. *See, e.g., White*, 412 U.S. at 768

(poll tax); *Terry v. Adams*, 345 U.S. 461 (1953) (private primary); *Smith v. Allwright*, 321 U.S.

649 (1944) (white primary); *Nixon v. Herndon*, 273 U.S. 536 (1927) (exclusion of minorities).

28.     Women throughout the United States and in Texas have been subjected to discrimination

in voting and other respects.

29.     In the settlement and development of Texas, men and women were partners in hardship

and work, but not in politics and government. As an independent republic and as a state in the

Union, Texas granted women no voting rights. The question of their voting was raised during the

Constitutional Convention of 1868-69, when Titus H. Mundine of Burleson County proposed

that the franchise be conferred upon qualified persons without distinction of sex. The committee

on state affairs approved this proposal, but the convention rejected it by a vote of fifty-two to

thirteen. A few years later, during the Constitutional Convention of 1875, two resolutions for the

enfranchisement of women were introduced. Both were referred to the committee on suffrage,

but neither was reported. A bill to enfranchise women was introduced in the Texas House of

5

Representatives in 1895 and was referred to the committee on constitutional amendments, but was never reported. Later attempts to give women the right to vote also failed until the ratification of the 19th Amendment of the United States Constitution. *See also: Frontiero v. Richardson,* 411 U. S. 677, 685-6 (1973).

30.     Women more than men experience a name change in their lifetime through marriage, divorce, and remarriage. Therefore, women more than men will likely have differences between their names on voter registration cards and the forms of ID required by SB 14.

31.     SB 14 was enacted by the 82nd Texas Legislature and signed into law by the Governor on May 27, 2011.  In pertinent part, it is codified as Tex. Elec. Code Sec. 63.001(b) (Acts 2011, 82nd Leg., R.S., Ch. 123, Sec. 9), and Tex. Elec. Code Sec. 63.0101 (Acts 2011, 82nd Leg., R.S., Ch. 123, Sec. 14.

**Requirements of SB 14**

32.     SB 14 requires nearly all in-person voters in Texas to present one of the following forms of government-issued photo identification in order to vote: (1) a driver's license, personal ID card, or election identification certificate ("EIC"), all of which are issued by DPS; (2) a license to carry a concealed handgun, which is also issued by DPS; (3) a U.S. military ID card; (4) a U.S. citizenship certificate with photograph; or (5) a U.S. passport. SB 14, § 14; Tex. Elec. Code § 63.0101.

33.     SB 14 prohibits the use of photo IDs for election identification purposes that have expired more than "60 days before the date of presentation" at the polls.  SB 14, § 14; Tex. Elec. Code § 63.0101.

34.     Voters who currently have none of the required forms of photo ID specified in SB 14 may apply for an EIC for use as identification at the polls.  SB 14, § 20; Tex. Transp. Code § 521A.001.

35.     SB 14 requires voters to travel to a DPS driver license office to obtain an EIC.

36.     There is no driver license office in scores of Texas counties, and driver license offices in dozens of additional counties are open only one or two days a week.

37.     SB 14 requires some voters to travel many miles roundtrip in order to obtain an EIC.

38.     Because Texas driver license offices generally do not conduct business during the weekend or after 6 p.m., some voters are required to take hours of time out of a workday to obtain an EIC.

39.     Once at a Texas driver license office, a voter must present one or more of the following documents to obtain an EIC: (1) an expired Texas driver's license or personal ID card; (2) an original or certified copy of a birth certificate; (3) U.S. citizenship or naturalization papers; or (4) a court order indicating a change of name or gender.  SB 14, § 20; Tex. Transp. Code § 521A.001; 37 Tex. Admin. Code § 15.182.

40.     Each of the documents needed to procure an EIC costs money to obtain. A copy of a certified birth certificate from the Texas Bureau of Vital Statistics—the least expensive option for those born in Texas—is $22.  A copy of U.S. citizenship or naturalization papers will cost $345.

41.     A voter who does not present identification required by SB 14 at the polls may cast a provisional ballot. SB 14, § 9; Tex. Elec. Code § 63.001.  However, that ballot will not be counted unless the voter presents the required identification documents within six days or executes an affidavit attesting that the voter either has a religious objection to being

7

photographed or has lost his or her photo ID in a declared natural disaster that occurred within forty-five days of the election. SB 14, §§ 17-18; Tex. Elec. Code §§ 65.054-.0541.

**Discriminatory Intent**

42.     Against a backdrop of dramatic growth in the State's Hispanic population, the Texas Legislature advanced increasingly stringent and burdensome voter ID bills over several legislative sessions beginning in 2005.  This process culminated in the enactment by the 82nd Legislature in 2011 of SB 14, a highly restrictive law that—when passed—exceeded the requirements imposed by any other state.

43.     Legislative debate and public statements concerning the Texas voter ID bills contained anti-immigrant rhetoric.  In addition, while the public record contains statements suggesting that voter ID legislation was needed to prevent noncitizens from voting, noncitizens may lawfully possess several of the forms of identification required for in-person voting under SB 14.

44.     The State sought to minimize minority legislators' effective participation in the debate concerning SB 14. The 82nd Legislature and the Governor implemented a series of unusual procedures, including designating SB 14 as emergency legislation, which enabled the Senate to consider the bill on an expedited schedule; amending Senate rules to exempt voter identification legislation from the two-thirds majority tradition usually required for bill consideration; and creating a select House committee, whose members were hand-picked by the Speaker, to consider only SB 14.

45.     While the stated purpose of SB 14 was to ensure the integrity of elections, voter ID proponents cited virtually no evidence during or after enactment of SB 14 that in-person voter impersonation—the only form of election fraud addressed by the photo identification

requirements of SB 14—was a serious problem or that the State's then-existing identification procedures had failed to prevent in-person voter impersonation.

46.     The State knew or should have known that Hispanic and African American Texans disproportionately lack the forms of photo ID required by SB 14, as compared to their non-Hispanic white counterparts.

47.     Nevertheless, supporters of voter ID in the Texas Legislature made little to no effort to analyze the potential effect of photo ID requirements on minority voters and rejected amendments requiring investigation of the effect of SB 14 on minority voter participation.

48.     The State knew or should have known that the process of obtaining an EIC would impose a substantial burden on thousands of voters, especially Hispanic and African American Texans who are disproportionately poor and disproportionately lack access to transportation.

49.     Nevertheless, the Texas Legislature rejected numerous amendments intended to mitigate this burden, including measures providing for expansion of the types of permissible voter IDs and measures to alleviate the costs of transportation and underlying documents for indigent voters.

50.     The 82nd Legislature that passed SB 14 was "impermissibly focused on race" in another matter that it undertook during the same session, namely decennial redistricting. Opinion at 6, *Perez v. Perry*, No. 5:11-cv-360 (W.D. Tex. Mar. 19, 2012) (three-judge court) (ECF No. 690); *see also Texas v. United States*, 887 F. Supp. 2d 133, 161 & n.32 (D.D.C. 2012) (three-judge court) ("The parties have provided more evidence of discriminatory intent than we have space, or need, to address here."), *vacated*, 133 S. Ct. 2885 (2013).

**Discriminatory Impact**

      **Generally**

9

51.     SB 14 will disproportionately impact Hispanic and African American voters in the State of Texas, resulting in their being disenfranchised at a greater rate than non-Hispanic white voters.

46.     A substantial portion of Texas voters, many of whom are African American or Hispanic, lack the forms of photo ID required by SB 14.

52.     Upon information and belief, Hispanic and African American voters in Texas, as compared to Anglo non-Hispanic white voters, disproportionately lack the forms of photo ID required by SB 14.

53.     The process of obtaining an EIC imposes a substantial burden on thousands of voters. As a result, some individuals will not obtain an EIC and will thus be unable to vote. The burden and resulting disenfranchisement disproportionately affects Hispanic and African American Texans, who are disproportionately poor and disproportionately lack access to transportation.

54.     SB 14 also requires voter names on appropriate photo IDs to match voter registration names.  Although SB 14 allows for some deviation, the name match must be "substantially similar". SB 14, § 9; Tex. Elec. Code § 63.001(c).

55.     According to the Texas Secretary of State, a voter's name is considered "substantially similar" if one or more of the following circumstances applies: 1) the name on the ID is slightly different from one or more of the name fields on the official list of registered voters; 2) the name on the voter's ID or on the list of registered voters is a customary variation of the voter's formal name; 3) the voter's name contains an initial, middle name, or former name that is either not on the official list of registered voters or on the voter's ID; or 4) a first name, middle name, former name or initial of the voter's name occupies a different field on the presented ID document than it does on the list of registered voters.

56.     The Secretary of State also suggests that in considering whether a name is "substantially similar", election officials may also look at whether information on the presented ID matches elements of the voter's information on the official list of registered voters such as the voter's residence address or date of birth.

57.     Neither the language of SB 14 nor the Texas Secretary of State's suggestions for handling the "substantially similar" requirement establish a clear and consistent manner of dealing with situations where voters' names do not match. The use of maiden surnames on allowable photo IDs and married surnames on voter registration documents or vice versa, poses substantially more problems for women than for men and is not addressed by SB 14 or the Secretary of State's instructions.  Moreover, women, for a variety of reasons, experience name change situations more often than men and are more likely to have variations between the names on voter registration documents and permitted voter IDs than men.  Name variances may also occur where voters use an English version of Spanish names on one or the other of the documents, or nick-names, especially unfamiliar nick-names such as "Tita", "Chela", "Chito", "Chuey", etc. Finally, discretion lies exclusively with individual election judges and election clerks in the determination of "substantially similar" names.  Regardless of instructions and suggestions from the Secretary of State, standards and interpretations will vary significantly across the 254 counties of Texas and will adversely impact women and Hispanics more than Anglo non-Hispanic men.

**Individual Plaintiffs**

58.     Plaintiff EULALIO MENDEZ JR. is a United States citizen who was born in Willacy County, Texas in 1931.  He is 82 years old and is of Mexican-American heritage. He and his wife live in Sebastian, Willacy County, Texas with three of their great-grandchildren.  Their

annual household income is substantially below the federal poverty guideline. Mr. Mendez is currently registered to vote in Texas and has in fact always voted save a few times when he was sick; he voted in the most recent general election.  Mr. Mendez has always voted in person rather than by mail.  He has more trust in the process and he enjoys the opportunity to participate in the exercise of this civic duty with other members of his community.

59.   Mr. Mendez has none of the forms of identification now required to cast a vote in Texas. His driver's license expired June 8, 2012, and he lacks transportation to travel to Harlingen to obtain an EIC.  The closest Department of Public Safety office that issues election identification certificates is located in Cameron County; the office in Willacy County does not issue identification cards.  Moreover, Mr. Mendez does not have a certified copy of his birth certificate. Without his birth certificate, Mr. Mendez cannot obtain an election identification certificate or any of the other acceptable forms of identification required by SB 14.

60.   Mr. Mendez can afford to pay $22.00 to obtain a new copy of his birth certificate only by making difficult and unreasonable financial sacrifices. More importantly, Mr. Mendez does not have any of the forms of photo identification required to obtain a copy of his birth certificate.

61.   Plaintiff ROXSANNE HERNANDEZ lives in Berclair, Goliad County, Texas.  She is a Mexican-American single mother raising three children on her own. Ms. Hernandez is unemployed.  Her household income is substantially below the federal poverty guideline.  She is registered to vote in Texas and has regularly voted.  Ms. Hernandez is not eligible to vote by mail.

62.   Ms. Hernandez has none of the forms of identification now required to cast a vote in Texas.  Her DPS identification was stolen in about June, 2012.  Ms. Hernandez does not have a copy of her birth certificate.  Without her birth certificate, Ms. Hernandez cannot obtain an

election identification certificate or any of the other acceptable forms of
identification under SB 14. Ms. Hernandez could only afford to pay $22.00 to obtain a new copy
of her birth certificate by making difficult and unreasonable financial sacrifices for her family.
Moreover, Ms. Hernandez does not have any of the forms of identification required to obtain a
copy of her birth certificate.

63.     There is no DPS office where Ms. Hernandez lives in Goliad County. The
closest one is in Beeville, Bee County. Ms. Hernandez lacks transportation to travel to Beeville
to obtain an election identification certificate, even if she had the documentation required to
obtain such a card. No one in her household has a car. There is no public transportation
available from Berclair to Beeville.

64.     Plaintiff LIONEL ESTRADA is a United States citizen who lives in Kenedy, Karnes
County, Texas with his disabled wife. He is Mexican-American. His household income is
below the federal poverty guideline. Mr. Estrada is registered to vote in Texas and has regularly
voted.

65.     Mr. Estrada is not eligible to vote by mail or for any exemption of the identification
requirement under SB 14. He has none of the forms of identification now required to cast a vote
in Texas. His driver's license expired on January 24, 2013. Mr. Estrada has repeatedly tried to
obtain a new license, but his efforts have been unsuccessful. Mr. Estrada does not have a
certified copy of his birth certificate. Without his birth certificate, Mr. Estrada cannot obtain an
election identification certificate. He cannot pay $22.00 to obtain his birth certificate without
making extreme and unreasonable financial sacrifices for his family. He also does not have
transportation to travel to Karnes City to obtain a certified copy of his birth certificate, even if he
could afford to pay for one, or the documents required to secure one.

66.     There is no DPS office where Mr. Estrada lives in Karnes County.  The closest one is over thirty miles away in Bee County.  Mr. Estrada lacks transportation to travel to Beeville to obtain an election identification certificate, even if he had the documentation required to obtain such a card.  No one in his household has an operating vehicle.  There is no public transportation available in Kenedy, Texas.

67.     Plaintiff LENARD TAYLOR is a United States citizen who lives in Corpus Christi, Texas.  He is a 64-year-old African American.  His annual income is below the federal poverty guideline.

68.     Mr. Taylor is registered to vote in Texas and has regularly voted. Mr. Taylor is not eligible to vote by mail.

69.     Mr. Taylor has none of the forms of identification now required to cast a vote in Texas.  His DPS identification was stolen earlier this year.  He has, in effect, been disenfranchised by SB 14.

70.     Plaintiff BELINDA ORTIZ is a United States citizen who lives in Corpus Christi, Texas.  She is Mexican-American. She is 49 years old and disabled.  Her annual income is below the federal poverty guideline.

71.     Ms. Ortiz is registered to vote in Texas and has regularly voted.  Ms. Ortiz has always voted in person as is her right.  Although Ms. Ortiz is disabled, she does not have the documentation required to obtain a disability exemption under SB 14.

72.     Ms. Ortiz has none of the forms of identification now required to cast a vote in Texas.  She recently lost her DPS identification and she does not have a copy of her birth certificate.  Without her birth certificate, Ms. Ortiz cannot obtain an election identification certificate or any of the other acceptable forms of identification under SB 14.  Ms. Ortiz could only afford to pay

14

$22.00 to obtain a certified copy of her birth certificate by making unreasonable and difficult financial sacrifices.  Further, she does not have transportation to travel to the DPS office or the County Clerk's Office.  Moreover, Ms. Ortiz does not have any of the forms of identification required to obtain a copy of her birth certificate.  She has, in effect, been disenfranchised by SB 14.

73.     Plaintiff ESTELA GARCIA ESPINOZA is a United States citizen who lives in Raymondville, Willacy County, Texas.  She is a 69-year-old Mexican-American, and she lives alone.  Her annual income is substantially below the federal poverty guideline.

74.     Ms. Espinoza is registered to vote in Texas and has regularly voted. She has always voted in person. She prefers to exercise her right to vote in person, rather than by mail.

75.     Ms. Espinoza has none of the forms of identification now required to cast a vote in Texas. Her Texas Driver's License expired January 16, 2009.  Ms. Espinoza no longer drives and had no need to renew her driver's license or to obtain other identification.

76.     Ms. Espinoza does not have the documents required to obtain an election identification certificate.  Ms. Espinoza was born on a ranch in Starr County, Texas in 1944 in a birth that was not attended by a physician.  As was often the practice in remote rural communities at the time, Ms. Espinoza's birth was apparently never registered.

77.     Ms. Espinoza cannot pay the $47 required to obtain a delayed birth certificate without making extreme and unreasonable financial sacrifices. Moreover, Ms. Espinoza lacks transportation to travel to Harlingen to obtain an election identification certificate, even if she had the documentation required to obtain such a card.  She does not have a car.  She has, in effect, been disenfranchised by SB 14.

78.     Plaintiffs MARGARITO MARTINEZ LARA and LYDIA LARA are a Mexican-American husband and wife who live in Sebastian, Willacy County, Texas. Mr. Lara is 77 years old and Ms. Lara is 75 years old. The Lara's household income is below the federal poverty guideline.

79.     Mr. Lara is registered to vote in Texas and has regularly voted. Mr. Lara has always voted in person rather than by mail. He enjoys walking to his nearby polling location and is often the first one there in the morning on Election Day. He sees no reason to vote by mail, as it would take him more time than voting in person.

80.     Mr. Lara has none of the forms of identification now required to cast a vote in Texas. He has not had a valid driver's license in many years. He and his wife have no car and both stopped driving long ago.

81.     Mr. Lara does not have the documents required to obtain an election identification certificate. He was born on a ranch near Combes in Cameron County, Texas in 1936 and thus is a United States citizen. However, as was often the practice in remote rural communities at the time, Mr. Lara's birth was apparently never registered.

82.     Mr. Lara cannot pay the $47 required to obtain a delayed birth certificate without making extreme and unreasonable financial sacrifices. He lacks transportation to travel to Harlingen to obtain an election identification certificate, even if he had the documentation required to obtain such a card. No one in his household has a car. He has, in effect, been disenfranchised by SB 14.

83.     Lydia Lara is a United States citizen, having been born in Willacy County, Texas. Ms. Lara is registered to vote in Texas and has voted in the past.

84.     Ms. Lara has none of the forms of identification now required to cast a vote in Texas. Her Texas Driver's License expired January 23, 2011. She no longer drives and had no need to renew her driver's license or to obtain other identification.

85.     Ms. Lara lacks transportation to travel to Harlingen to obtain an election identification certificate. As mentioned above, she and her husband do not have a car or driver's licenses. She has also been disenfranchised by SB 14.

86.     Plaintiff MAXIMINA MARTINEZ LARA is the sister of Plaintiff Margarito Martinez Lara. She lives next door to her brother in Sebastian, Texas. She is 73 years old and lives alone. Her income in 2012 was significantly below the federal poverty guideline.

87.     Maximina Lara is registered to vote in Texas and has regularly voted. She has always voted in person rather than by mail. This is her preferred method of exercising her constitutionally protected right.

88.     Maximina Lara has a Texas Driver's License that is valid until October 12, 2015. However, her name appears on her Texas Driver's License incorrectly as "Maxine Martinez Lara." Her name appears on the official list of registered voters as "Maximina M. Lara." Ms. Lara cannot afford the fee to correct her Texas Driver's License to state her name in exactly the same manner it is stated on her voter registration certificate. She does not have any of the other forms of identification now required to vote in Texas.

89.     Maximina Lara fears that her vote may not be counted in the next election should an election judge determine that her name as listed on her Texas Driver's License is not substantially similar to her name as listed on the official list of registered voters.

90.     Plaintiff *LA UNION DEL PUEBLO ENTERO* has citizen members who lack the necessary identification to vote under the requirements of SB 14 and who are unable to make the

17

financial sacrifices required to obtain or correct such identification documents.  Furthermore,
LUPE has had to divert its limited resources to provide voter education services to low-income
Mexican-Americans in the Rio Grande Valley regarding the SB 14 requirements and how its
members must comply with the new law.

**Other Section 2 Factors**

91.     Racial and ethnic factors in elections continue to influence outcomes in the Texas
electoral process:

      a. Racially polarized voting continues to be a significant and many times determinative
      factor in elections at all levels of Texas politics;

      b. Minority voters continue to suffer the effects of official discrimination, including a
      history of discrimination in voting-related activities;

      c. The effects of discrimination on Hispanic and African American citizens in Texas,
      including their markedly lower socioeconomic conditions relative to Anglo non-Hispanic
      whites, continue to hinder their ability to participate effectively in the political process in
      Texas;

      d. Racial appeals continue to characterize certain political campaigns in Texas; and

      e. The Texas Legislature has been hostile to the concerns of Hispanics and African
      American voters.

92.     The policies proffered in support of the particular restrictions contained in SB 14 are
tenuous and unsupported in the legislative record or by other evidence. To the extent that the
Legislature provided any reasons for its rejection of numerous ameliorative amendments to SB
14, they are equally tenuous.

93.     The political processes in the State of Texas are not equally open to participation by African American and Hispanic voters and resulted in the enactment of SB 14.

94.     SB 14 will have a detrimental impact on the ability of Hispanic and African American voters, as compared to other members of the Texas electorate, to participate in the political process and to elect representatives of their choice.

### CAUSES OF ACTION
### I. Voting Rights Act

95.     The allegations contained in paragraphs 1 through 94 are alleged as if fully set forth herein.

96.     Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, prohibits the enforcement of any voting qualification or prerequisite to voting or any standard, practice, or procedure that has either the purpose or the result of denying or abridging the right to vote on account of race, color, or membership in a language minority group.

97.     The Defendants are in violation of the Voting Rights Act because as a result of SB 14's new voter photo identification requirements, and under the totality of circumstances, African American and Hispanic voters of Texas will have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

98.     The Defendants are in violation of the Voting Rights Act because SB 14 was adopted with the intent to and is maintained to suppress the vote of African American and Hispanic voters.

99.     SB 14's photo identification requirements for in-person voting on Election Day or in early voting constitute a qualification or prerequisite to voting within the meaning of Section 2

of the Voting Rights Act, and result in the denial or abridgement of the right to vote of U.S. citizens who are residents of Texas on account of their race or color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act.

## II. Fourteenth and Fifteenth Amendments
## of the United States Constitution

100.    The allegations contained in paragraphs 1 through 94 are alleged as if fully set forth herein. The photo identification requirements contained in SB 14 for voting in person on Election Day or in early voting impose a substantial burden on the fundamental right to vote of Texas citizens, and are neither justified by, nor necessary to promote, interests put forward by the State that were not already being adequately protected by pre-existing criminal laws and election procedures.

101.    SB 14 was adopted in 2011, and has been maintained since that time, for the purpose of denying Hispanics and African Americans equal access to the political process in violation of the 14th and 15th Amendments of the United States Constitution.

## III. Article I, Sections 3 and 3a of the Texas Constitution

102.    The Texas Constitution in Article I, Section 3 guarantees a free and equal vote in Texas elections.

103.    The Texas Constitution in Article I, Section 3a guarantees equality under the law regardless of race, sex, color, creed or national origin.

104.    SB 14, as described above, prohibits the equal participation in Texas elections of Hispanics, African Americans, and women in violation of Article I, Sections 3 and 3a of the Texas Constitution.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray that the Court:

(a)     enter a declaratory judgment declaring that the photo identification requirements of Senate Bill 14 violate Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, the Fourteenth and Fifteenth Amendments of the United States Constitution, and Article I, Sections 3 and 3a of the Texas Constitution;

(b)     enjoin Defendants, their agents, employees, and those persons acting in concert with them, from enforcing the photo identification requirements of Senate Bill 14 in any election conducted in the State of Texas;

(c)     enter an order pursuant to Section 3(c) of the Voting Rights Act, 42 U.S.C. §1973a(c), retaining jurisdiction for such period of time as may be appropriate, and requiring preclearance of voting changes that the State of Texas enacts or seeks to administer, as specified in Section 3(c);

d)      enter an order awarding Plaintiffs their reasonable attorneys' fees and costs; and

(e)     enter an order granting Plaintiffs such other and further relief as may be just and equitable.

DATED:      November 14, 2013              Respectfully submitted.


                                          TEXAS RIOGRANE LEGAL AID, INC

21

_____/S/ JOSE GARZA_____
Jose Garza
Texas Bar No. 07731950
S. Dist. No. 1959
1111 N. Main
San Antonio, Texas
Telephone 210-212-3701
Fax 210-212-3772
jgarza@trla.org

Marinda van Dalen
Texas Bar No. 00789698
S. Dist. No. 17577
531 East St. Francis St.
Brownsville, Texas 78529-5354
Telephone 956-982-5540
Fax 956-541-1410
mvandalen@trla.org

Robert W. Doggett
Texas Bar No. 05945650
4920 N. IH – 35
Austin, Texas 78751
Telephone 512-374-2725
RDoggett@trla.org

Peter McGraw
Texas Bar No. 24081036
3825 Agnes St.
Corpus Christi, TX 78405
(361) 880-5420
(361) 883-7615 (fax)
pmcgraw@trla.org


Attorneys for Plaintiffs