AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of Texas

<table>
<tr><td>United States of America</td><td>)</td><td></td></tr>
<tr><td><i>Plaintiff</i></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No. 2:13-cv-00263</td></tr>
<tr><td>State of Texas</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>(If the action is pending in another district, state where:</td></tr>
<tr><td><i>Defendant</i></td><td>)</td><td>Southern District of Texas )</td></tr>
</table>

**2:13-cv-193
09/02/2014**

**DEF0625**

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Janice McCoy, c/o Arthur D'Andrea, Office of the Attorney General
    300 W. 15th Street, Austin, Texas 78701

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: All documents, electronically stored information and other materials requested in the attached Exhibit A.

| Place: United States Attorney's Office Attn: Zach Richter 816 Congress Avenue, Suite 1000 Austin, Texas 78701 | Date and Time: 05/08/2014 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     04/17/2014

*CLERK OF COURT*

OR

_____          /s/ Daniel J. Freeman
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* United States of America
_____ , who issues or requests this subpoena, are:

Daniel J. Freeman, Department fo Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, NWB 7123, Washington DC 20530 Tel: 202-305-4355 Email: daniel.freeman@usdoj.gov


EXHIBIT
1
McCoy

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:13-cv-00263

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Case 2:13-cv-00193 Document 747-13 Filed on 11/18/14 in TXSD Page 3 of 27

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

### (c) Protecting a Person Subject to a Subpoena.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

### (d) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt. The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

## INSTRUCTIONS AND DEFINITIONS

1.  "Legislator" means a current or former member of the Texas House of Representatives or the Texas State Senate, including such member's employees, staff, interns, representatives, designees, agents, or other persons acting or purporting to act on the member's behalf or on behalf of any committee on which the member serves.

2.  "Texas Legislature" and "Legislature" mean the Texas House of Representatives and the Texas State Senate.

3.  The "Secretary of State" means Defendant Texas Secretary of State Nandita Berry, her predecessors as Secretary of State, and any of the Secretary of State's past and present agents, advisors, employees, representatives, attorneys, consultants, contractors, or other persons or entities acting on behalf of the Secretary of State or the office of the Secretary of State or subject to the control of that office.

4.  The "Department of Public Safety" means the Texas Department of Public Safety ("DPS") and any of its past and present agents, advisors, employees, representatives, attorneys, consultants, contractors, or other persons or entities acting on behalf of the Department of Public Safety or subject to its control.

5.  The term "person" includes, whenever appropriate, not only a natural person, but also a corporation, partnership, unincorporated association, joint venture, or other association of persons, and also a governmental agency, office, administration, board, or other body.

6.  "SB 14" means 2011 Texas General Laws Chapter 123, which amends the Texas Transportation Code relating to the issuance of election identification certificates ("EIC"), and which amends the Texas Election Code relating to procedures for implementing the photographic

identification requirements for voting in the State of Texas. This document refers to "SB 14" and "the Texas Election Code as amended by SB 14" interchangeably.

7.      "Document" is defined to be synonymous in meaning and scope as the term "document" is used under Federal Rule of Civil Procedure 34.

8.      In responding to this subpoena, produce all responsive documents and electronically stored information in your possession, custody, or control, including but not limited to documents or electronically stored information that are in the custody of one of your Legislative offices. Sources of responsive documents include email sent or received through any official State email account and any other email address that you use to conduct official State business or to communicate with other Texas officials.

9.      None of these requests should be construed to request the public legislative history of any bill or statute, or documents previously provided to the State of Texas during this litigation or prior litigation concerning SB 14.

10.     In construing these requests, apply the broadest construction, so as to produce the most comprehensive response. Construe the terms "and" and "or" either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside that scope. Words used in the masculine gender include the feminine, and words used in the singular include the plural.

11.     If any part of the requested information is stored in an electronic form, to the extent possible, please provide that portion of the information in the electronic form set out in the Agreement Concerning Production Format (ECF No. 61-6), attached hereto. If production consistent with the Agreement Concerning Production Format is not possible, please provide

Word, Excel, Powerpoint, audio, and video files in their native format and all other files in PDF format.

12.     With regard to those portions of documents available, either in whole or in part, only in paper or hardcopy, to the extent possible, please scan these documents into electronic format and produce them consistent with the Agreement Concerning Production Format (ECF No. 61-6), attached hereto. If production consistent with the Agreement Concerning Production Format is not possible, please scan the documents and provide them in PDF format.

13.     These document requests apply to the period from January 1, 2007, through the present unless otherwise limited or expanded by a particular request.

## DOCUMENT REQUESTS

1.     With regard to any consideration by the Texas Legislature, prior to and including the 83rd session, of a requirement that voters present a form of identification in addition to or instead of their voter registration certificate, all documents relating to:

>    a.  the origination(s) or source(s) of all such proposals;

>    b.  the drafting, development, and introduction of all such proposals;

>    c.  all amendments, whether partial or total, to each such proposal and the vote on each;

>    d.  all analyses of the effect, of any kind, that could result from the implementation of all such proposals that were conducted for, presented to, or considered by the respective session of the Legislature; and

>    e.  the consideration of each proposal by each chamber of the Legislature, including a description of the final action in each chamber with the final vote or other determinative outcome.

3

2.      All documents related to communications between, among, or with you, the office of the Governor, the office of the Lieutenant Governor, the office of the Secretary of State, the Department of Public Safety, the office of the Texas Attorney General, any Legislator or Legislators, their staff or agents, lobbyists, groups, associations, organizations, or members of the public concerning the State of Texas's consideration of a requirement that voters present photographic identification to cast a ballot, including the introduction, enactment, and implementation of SB 14, from December 1, 2010, to the present.

3.      All documents related to any calculations, reports, audits, estimates, projections, or other analyses related to the effect that SB 14 imposes, or that SB 14 was projected to impose, upon minority voters or on voters who are members of a language minority group, from December 1, 2010, through May 27, 2011.

4.      All documents related to any calculations, reports, estimates, projections, or other analyses related to the impact of SB 14 on voter turnout or voter registration.

5.      All documents related to any calculations, reports, estimates, or other analyses related to the impact of SB 14 on voter turnout or voter registration in any federal, state, or local election held in Texas from June 25, 2013, to the present.

6.      All documents related to any calculations, reports, estimates, projections, or other analyses related to the impact that SB 14 has, or that SB 14 was projected to have, on rates, use, and acceptance of provisional ballots.

7.      All documents related to communications between, among, or with you, the office of the Governor, the office of the Lieutenant Governor, the office of the Secretary of State, the Department of Public Safety, the office of the Texas Attorney General, any Legislator or Legislators, their staff or agents, lobbyists, groups, associations, organizations, or members of

4

the public concerning the State of Texas's consideration of a requirement that voters present identification to cast a ballot, from January 1, 2005, through November 30, 2010.

8.      All documents related to any calculations, reports, audits, estimates, projections, or other analyses related to the effect that voter identification requirements impose upon minority voters or on voters who are members of a language minority group, from January 1, 2005, through November 30, 2010.

9.      All documents related to any calculations, reports, estimates, projections, or other analyses related to the impact of voter identification requirements on voter turnout or voter registration, from January 1, 2005, through November 30, 2010.

10.     All documents related to any calculations, reports, estimates, projections, or other analyses related to the impact that voter identification requirements were projected to have on rates, use, and acceptance of provisional ballots, from January 1, 2005, through November 30, 2010.

11.     All documents related to any calculations, reports, estimates, projections, or other analyses related to the impact that voter identification requirements were projected to have on rates, use, and acceptance of provisional ballots, from January 1, 2005, through November 30, 2010.

12.     All documents related to any administrative regulations drafted, proposed, or finalized pertaining to SB 14.

13.     All documents related to the consideration of Senate Bill 362, 81st Leg. (Tex. 2009) ("SB 362") or other voter identification proposals during the 81st Legislature, including documents related to communications between or among Legislators, as well as between Legislators and their staff, lobbyists, groups, organizations or members of the public, concerning

5

the introduction, drafting, and consideration of SB 362, as well as all documents related to SB 362 presented to, produced by, transmitted to, or relied upon by the State of Texas, including but not limited to the Governor, the Lieutenant Governor, the Secretary of State, and the Texas Attorney General.

14.     All documents related to the consideration of House Bill 218, 80st Leg. (Tex. 2007) ("HB 218") or other voter identification proposals during the 80th Legislature, including documents related to communications between or among Legislators, as well as between Legislators and their staff, lobbyists, groups, organizations, or members of the public, concerning the introduction, drafting, and consideration of HB 218, as well as all documents related to HB 218 presented to, produced by, transmitted to, or relied upon by the State of Texas, including but not limited to the Governor, the Lieutenant Governor, the Secretary of State, and the Texas Attorney General.

15.     All documents related to campaign communications, including but not limited to mailings, ads, websites, flyers, and correspondence, related to voter identification requirements or SB 14, made by or on behalf of any candidate for office in the State of Texas from January 1, 2005 to the present.

16.     All documents related to campaign communications, including but not limited to mailings, ads, websites, flyers, and correspondence, related to immigration made by or on behalf of any candidate for office in the State of Texas from January 1, 2005, to the present.

17.     All documents related to any and all efforts or consideration by the Legislature to amend SB 14 or to enact additional legislation related to the issuance of election identification certificates.

6

18.     All documents related to any efforts or consideration by the Legislature to review or analyze the administration of the November 2012 general election, including any issues related to election integrity.

19.     All documents related to correspondence, including but not limited to correspondence with constituents, other members of the public, lobbyists, groups, and organizations, on the subject of voter identification requirements; Senate Bill 14, 82nd Leg. (Tex. 2011); Senate Bill 362, 81st Leg. (Tex. 2009); House Bill 218, 80st Leg. (Tex. 2007); or House Bill 1706, 79th Leg. (Tex. 2005).

20.     All documents containing or related to public statements made by you, or any Legislator who sponsored or supported SB 14, on the subject of voter identification requirements; Senate Bill 14, 82nd Leg. (Tex. 2011); Senate Bill 362, 81st Leg. (Tex. 2009); House Bill 218, 80st Leg. (Tex. 2007); or House Bill 1706, 79th Leg. (Tex. 2005).

21.     All documents related to any proposal to amend or modify SB 14's requirements, or its implementation plans, so as to respond to the findings of the United States District Court for the District of Columbia in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012) (three-judge court), *vacated*, 133 S. Ct. 2886 (2013).

22.     All documents related to any proposal to amend or modify SB 14's requirements, or its implementation plans, after May 27, 2011.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-193 (NGR) |
| RICK PERRY, *et al.*, | |
| Defendants. | |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, | |
| Plaintiff-Intervenors, | Civil Action No. 2:13-cv-263 (NGR) |
| TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, | |
| Movant-Intervenors, | |
| v. | |
| STATE OF TEXAS, *et al.*, | |
| Defendants, | |
| TRUE THE VOTE, | |
| Movant-Intervenor. | |

TEXAS STATE CONFERENCE OF NAACP
BRANCHES, *et al.*,

Plaintiffs,

Civil Action No. 2:13-cv-291 (NGR)

v.

JOHN STEEN, *et al.*,

Defendants.

## AGREEMENT CONCERNING PRODUCTION FORMAT

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the parties agree to
adhere to the following methods of production of documents and electronically stored
information ("ESI"):

### Provisions for the Production of Documents and ESI

1.      With the exception of the items specified in paragraphs 10-18, below, the parties agree
that documents and ESI that can be accurately represented in black and white shall be scanned or
converted to single page Tagged Image File Format ("TIFF" or ".tiff format") files, using CCITT
Group IV compression. All images shall be scanned or converted at 300 d.p.i. and reflect,
without visual degradation, the full and complete information contained on the original
document. Photographs, color brochures, or other like documents that cannot be accurately
represented in black and white or documents that are primarily in color shall be scanned or
converted to JPEG files using a high quality setting. The parties will honor reasonable requests
for either the production of the original document for inspection and copying or production of
any color image of the document, thing, or ESI. All images shall be saved in a directory named
IMAGES. Spreadsheets (*e.g.*, Excel, Quattropro, or .csv) and presentations (*e.g.*, Powerpoint)

2

shall be produced in native form. Native files shall be saved in a directory named NATIVE with the proper Windows-associated extension.

2.      The parties agree to produce all imaged documents with a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in the lower right hand corner or—if placement in the lower right hand corner would obliterate, conceal, or interfere with any information from the source document—another blank portion of the TIFF image. The Bates numbering convention shall be in the format "XXX########" where "XXX" represents the short character abbreviation for the producing party and "########" represents the eight-digit sequential number of the page being produced by that party. Documents produced by the parties shall be abbreviated as follows: Veasey Plaintiffs = VES, United States of America = USA, Texas League of Young Voters Education Fund = LYV, Texas State Conference of NAACP Branches = TSC, and Defendants = TEX. For example, the first Bates labeled document produced by the United States should be labeled "USA00000001." Images shall be named as the [Bates Number].tif or [Bates Number].jpg. Native files shall be named as [Bates Number].ext, where "ext" denotes the native file extension.

3.      The parties agree to produce documents on CD-ROM, DVD, or external hard drive (the "Production Media"), depending on the volume of the production. Each piece of Production Media shall identify a production number corresponding to the production "wave" and a number of the volume of material in the wave. For example, if the first production wave by a party comprises document images on three hard drives, the party shall label each hard drive in the following manner in numeric sequence: "001.001"; "001.002"; "001.003." If the second production comprises three DVDs, the party shall label each DVD in the following manner in numeric sequence: "002.001"; 002.002"; "002.003." Additional information that shall be

3

identified on the physical Production Media includes: (1) the case number, (2) the producing party's name, and (3) the production date. Where practicable, the type of materials on the media (*e.g.*, "Documents", "OCR Text", *etc.*) and the Bates Number range of the materials on the Production Media shall also be denoted thereon; where such material cannot reasonably be listed on the Production Media, they shall be provided in an accompanying letter.

4.       The parties agree not to produce documents or ESI using FTP, SFTP, or other hosted locations without notifying all parties. All such productions must include a single archive file per production wave (*e.g.*, .zip, .rar, or .cab), labeling of such archives in numerical sequence in accordance with paragraph 4, *supra*, and immediate notice to all parties after a new archive has been uploaded to a hosted location. All requirements of this agreement shall apply to any production using FTP, SFTP, or other hosted locations.

5.       The parties shall produce an "image cross reference file" in Concordance Opticon .log format, to accompany the produced images. The image cross reference file shall provide the Bates Numbers, relative path to images, and document break indicators. The image cross reference file shall be provided in a directory named DATA.

6.       The parties shall produce a "load file" containing the fields specified in Attachment A. The load file shall be provided in a directory named DATA, in a Concordance .DAT file format with standard delimiters. The parties agree not to include OCR/extracted text in the .DAT file.

7.       For documents that exist natively in electronic format and that have not been redacted, the parties shall produce extracted text files reflecting the full text that was electronically extracted from the original native file. For all scanned hard-copy documents, any electronic documents that require redaction prior to production and native files for which native text is not available (*e.g.*, graphic files and some PDFs), the parties will produce corresponding Optical

4

Character Recognition ("OCR") text files. The OCR and extracted text files shall be produced in ASCII text format and shall be labeled and produced on Production Media in accordance with the provisions of paragraph 3, above. These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." The OCR and extracted text files shall be produced in a manner suitable for importing the information into Concordance. OCR and extracted text files shall be saved in a directory named TEXT. All documents should have an accompanying text file, even if that file is of zero size.

8.      Irrespective of which party issued the requests for production of documents, tangible things, and ESI, the producing party shall serve a copy of responsive production to each of the other parties.

**Format for the Production of ESI**

9.      E-mail will be produced as image files with related searchable text and available metadata as described in Attachment A.

10.     All spreadsheets, *e.g.*, Excel or Quattropro, should be produced only in native format with related searchable text and available metadata as described in Attachment A. Spreadsheets should not be imaged, but a placeholder image must be included to represent the spreadsheet.

11.     All presentations, *e.g.,* Powerpoint, should be produced only in native format with related searchable text and available metadata as described in Attachment A. Presentations should not be imaged, but a placeholder image must be included to represent the presentation.

12.     The parties will meet and confer regarding the production of video, audio, and any file stored in a proprietary formats (*i.e.*, non-Microsoft or Corel Suite compatible files). Any such conference shall be held within fourteen (14) days (unless the parties agree to a later date) of identification of such materials in initial disclosures, a direct request for the production of such

5

materials, or a determination by a producing party that such materials are responsive to a broader request, and any such conference shall include the custodians of the materials, as well as technicians with sufficient knowledge to explain the content and format of the material at issue.

13. The parties will meet and confer regarding the production of records or data from systems of record, databases, or federal agency comparisons in an agreed upon format. Any such conference shall be held within fourteen (14) days (unless the parties agree to a later date) of identification of databases in initial disclosures, a direct request for the production of databases, or a determination by a producing party that databases are responsive to a broader request, and any such conference shall include the custodians of the databases, as well as technicians with sufficient knowledge to explain the content and format of the databases.

14. Other electronic documents not specifically discussed elsewhere will be produced as image files with related searchable text and available metadata as described in Attachment A. If said documents in their original form cannot be converted to TIFF as described above, the parties will promptly meet and confer concerning the form of such production.

15. Documents with children (*e.g.*, email with attachments, archive files, and files with embedded documents) shall be treated as separate documents. Each document (parent and child) shall have the same attachment range as a way of identifying the group, as specified in the Attachment Range field of Attachment A.

16. In the event that a party needs to redact a portion of a document for which only a native file is produced (*e.g.*, Excel and PowerPoint), the parties will meet and confer regarding production of the redacted document.

17. Encryption or password protection of any file is to be removed or the passwords provided. If software is required to open encrypted files, the party producing the encrypted files must provide the software.

## Search of Electronically Stored Information

18. To the extent that any party intends to limit the scope of a response to a request for production through the use of search terms, the parties agree to meet and confer regarding the responding party's search of ESI, including the party's technological search capability and the most effective means of defining search criteria, such as date ranges, custodians, and key words.

19. The parties agree that the use of an agreed-on search process or set of search criteria shall not be construed as a waiver of any party's right to request subsequent searches and productions, particularly where there is a showing that the agreed-to search process and criteria have resulted in inadequate productions or failed to identify relevant materials. The parties also reserve their right to object to any additional requests or subsequent searches.

20. The parties agree that documents identified by search terms may be reviewed for privilege, confidentiality, relevance, or responsiveness prior to production.

## Deduplication

21. The parties agree to use MD-5 hash values to deduplicate exact duplicate documents across custodians. As noted in Attachment A, MD-5 hash values will be calculated at the time of collection or processing for all categories of ESI.

## Paper Documents

22. The parties agree to produce hard-copy documents as TIFF or JPEG files, as described in paragraphs 1-3, above.

7

23. To the extent possible, the parties will endeavor to apply unitization practices consistent with the following description: Each page of a hard copy document shall be scanned into an image and if a document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that contain fixed notes, (*e.g.*, post-it notes), the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (*e.g.*, cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Such information shall be produced in conformity with the Attachment Range field in Attachment A in a manner which enables the parent-child relationship among documents in a document collection to be reconstituted by the receiving party in Concordance.

## Privilege Logs

24. The parties agree that for each document, tangible thing, or ESI withheld based on an asserted claim of privilege or protection, the party asserting the privilege must produce a privilege log pursuant to Rule 26(b)(5)(a) of the Federal Rules of Civil Procedure. At minimum, the privilege log must contain a Bates range, the type of document or ESI, the title of the document or ESI, the date of the creation or transmission of the document or ESI, the author or authors of the document or ESI, the recipients of the document or ESI (including individuals copied or blind-copied), whether the document or ESI contains attachments, the privilege or privileges claimed, and the basis for the assertion of privilege or protection.

25. The parties agree to provide sufficient information privilege logs to establish the elements of each asserted privilege. *See, e.g., Taylor Energy Co. v. Underwriters at Lloyds of London*, No. C.A. 09-6383, 2010 WL 3952208 (E.D. La. Oct. 7, 2010). However, the Parties need not note on a privilege log any document—including but not limited to draft documents—exchanged solely among counsel, individuals working directly on behalf of counsel in connection with this litigation (*e.g.*, paralegals, analysts, and litigation support staff), or supervisory staff of the U.S. Department of Justice or the Office of the Texas Attorney General.

26. E-mail attachments must be separately identified and described if they are withheld based on an assertion of privilege or protection.

**Inadvertent Production of Documents and Clawback**

27. The parties agree that a disclosure of communications, documents, tangible things, and ESI covered by the attorney-client privilege, work product protection, or governmental privileges does not operate as a waiver in this proceeding if (1) the disclosure is inadvertent and is made in connection with this litigation or prior proceedings under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, and (2) the holder of the privilege or protection took reasonable precautions to prevent disclosure and took reasonably prompt measures—once the holder knew or should have known of the disclosure—to rectify the error.

28. Any party receiving material it believes may have been inadvertently produced that includes privileged or protected information shall promptly notify the producing party. Within fourteen (14) days after such notification, the producing party may request in writing that such materials be returned or destroyed. Upon such written request—and except in the event that the requesting party disputes the claim of privilege or protection—any materials that the producing party deems to contain inadvertently disclosed materials shall be promptly returned to the

9

producing party or destroyed at the producing party's option. This includes all copies—electronic or otherwise—of any such materials and the parties agree that no further copies of the inadvertently disclosed materials will be made. In the event that copies of inadvertently produced materials that are privileged or protected are captured on a party's back-up media used for disaster recovery, the parties will over-write those copies according to their established back-up procedures.

29. If privileged or protected information is contained within an item of otherwise discoverable material, the parties recognize that the requesting party may not be able to destroy only the portion of the item of the disclosed material that is privileged or protected. Instead, the requesting party may need to destroy the privileged or protected information along with all of the otherwise discoverable material within that item. Whenever that is the case, the producing party—within fourteen (14) days of notification of the inadvertent disclosure—shall provide the requesting party with a replacement copy of the item materials that are not privileged or protected and are otherwise discoverable.

30. In the event that the requesting party disputes the producing party's assertions with respect to the inadvertently disclosed material, such material shall be sequestered and retained by and under the control of the requesting party for the purpose of seeking determination of the issue from the Court. If the Court determines that privilege or protection has been waived or that the inadvertently disclosed material is not subject to by any applicable privilege or protection, the requesting party may use the material for any purposes otherwise permitted by law or rule. If the Court determines that the inadvertently disclosed material is subject to an applicable privilege or protection, the requesting party must return or destroy the materials at issue, as provided above.

10

31.    If the producing party does not request the return or destruction of material within
fourteen (14) days of notification by the receiving party of the receipt of material it believes was
inadvertently produced, the producing party waives any claim of privilege or protection as to the
material.

**Sample Production**

32.    On or before fourteen (14) days following the effective date of this Agreement, the
parties shall exchange a sample production of documents formatted to be consistent with this
Agreement. The sample production shall contain a combination of scanned paper files and ESI
and shall include at least one spreadsheet and one email. The production need not be relevant to
this case, as it is intended only to test the adequacy of the specifications in this Agreement and
the compatibility of the parties' systems. If any party reports problems with the sample
productions, the parties shall confer regarding the terms of this agreement.

**Duty to Supplement Discovery Responses**

33.    The parties must supplement their disclosures and responses in a timely manner if a party
learns that a disclosure was materially incorrect or incomplete, in accordance with Federal Rule
of Civil Procedure 26(e)(1)(A). Supplementation must be made at appropriate intervals during
discovery and with special promptness as the trial date approaches.

**Costs of Document Production**

34.    Each party shall bear the costs of producing its own documents, things, and ESI.

**Requirement to Confer**

35.    Before filing any motion regarding the terms of this Agreement, compliance with this
Agreement, or any other discovery dispute, the parties will confer in a good faith attempt to
resolve such disputes.

11

Dated: November 4, 2013

**For the Veasey Plaintiffs**

*/s/ Chad W. Dunn*
CHAD W. DUNN
K. SCOTT BRAZIL
Brazil & Dunn
4201 Cypress Creek Parkway
Suite 530
Houston, Texas 77068

J. GERALD HEBERT
Campaign Legal Center
215 E Street, NE
Washington, D.C. 20002

NEIL G. BARON
Law Office of Neil G. Baron
914 FM 517 West
Suite 242
Dickinson, Texas 77539

DAVID RICHARDS
Richards, Rodriguez & Skeith LLP
816 Congress Avenue
Suite 1200
Austin, Texas 78701

ARMAND G. DERFNER
Derfner, Altman & Wilborn, LLC
P.O. Box 600
Charleston, South Carolina 29402

LUIS ROBERTO VERA, JR.
Law Offices of Luis Vera Jr.
1325 Riverview Towers
111 Soledad
San Antonio, Texas 78205

CRAIG M. WATKINS
TERESA G. SNELSON
Dallas County District Attorney's Office
411 Elm Street
Fifth Floor
Dallas, Texas 75202

**For the United States of America**

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

*/s/ Elizabeth S. Westfall*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
ANNA M. BALDWIN
DANIEL J. FREEMAN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

JOHN A. SMITH III
Assistant United States Attorney
800 N. Shoreline, Suite 500
Corpus Christi, Texas 78401

12

**For NAACP Plaintiffs:**

*/s/ Ezra D. Rosenberg*
EZRA D. ROSENBERG
Dechert LLP
902 Carnegie Center, Suite 500
Princeton, New Jersey 08540

STEVEN B. WEISBURD
AMY L. RUDD
LINDSEY B. STELCEN
Dechert LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701

ROBERT A. KENGLE
MARK A. POSNER
SONIA KAUR GILL
ERANDI ZAMORA
Lawyers' Committee for Civil Rights
    Under Law
1401 New York Avenue, NW
Suite 400
Washington, D.C. 20005

WENDY WEISER
MYRNA PÉREZ
VISHAL AGRAHARKAR
Jennifer Clark
The Brennan Center for Justice at NYU Law
    School
161 Avenue of the Americas, Floor 12
New York, New York 10013

ROBERT NOTZON
The Law Office of Robert Notzon
1502 West Avenue
Austin, Texas 78701

Gary Bledsoe
PotterBledsoe, L.L.P.
316 West 12th Street, Suite 307
Austin, Texas 78701

KIM KEENAN
MARSHALL TAYLOR
VICTOR GOODE
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Drive
San Antonio, Texas 98209

CLAY BONILLA
DANIEL G. COVICH
The Law Offices of William Bonilla, P.C.
2727 Morgan Ave.
Corpus Christi, Texas 78405

**For Texas League of Young Voters**
**Educational Fund, et al. Intervenors:**

*/s/ Ryan P. Haygood*
SHERRILYN IFILL
CHRISTINA SWARNS
RYAN P. HAYGOOD
NATASHA M. KORGAONKAR
LEAH C. ADEN
NAACP Legal Defense and
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006

DANIELLE CONLEY
JONATHAN PAIKIN
KELLY P. DUNBAR
SONYA L. LEBSACK
Wilmer Cutler Pickering
Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, D.C. 20006

**For the State of Texas et al.**

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

*/s/ John B. Scott*
JOHN B. SCOTT
Deputy Attorney General
209 West 14th Street
Austin, Texas 78711

14

## Attachment "A"

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Begin_Bates | Text | Bates number for the TIFF/jpg image of the first page | Bates number for the TIFF/jpg image of the first page | Bates number of the placeholder page | Bates number for the TIFF/jpg image of the first page | Bates number for the TIFF/jpg image of the first page |
| End_Bates | Text | Bates number for the TIFF/jpg image of the last page | Bates number for the TIFF/jpg image of the last page | Bates number of the placeholder page | Bates number for the TIFF/jpg image of the last page | Bates number for the TIFF/jpg image of the last page |
| Attachment Range | Text | Bates range starting with the first page of the parent document through the last page of the last attachment. Blank if there are no child documents | Bates range starting with the first page of the parent document through the last page of the last attachment or embedded file. Included only if part of a group of documents like an email or zip file. | Bates range starting with the first page of the parent document through the last page of the last attachment or embedded file. Included only if part of a group of documents like an email or zip file. | Bates range starting with the first page of the parent document through the last page of the last attachment or embedded file. Included only if part of a group of documents like an email or zip file. | Bates range of all documents that were grouped together/ physically attached by clips, staples, or binding or folder. Blank if a single non grouped document |

Case 2:13-cv-00193   Document 61-6   Filed in TXSD on 11/04/13   Page 17 of 18

| Name of Field | Type of field | Contents | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Custodian | Text | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person maintaining the file from which the paper was obtained |
| Author | Paragraph | "From" field | <blank> | <blank> | <blank> | <blank> |
| To | Paragraph | "To" field | <blank> | <blank> | <blank> | <blank> |
| CC | Paragraph | "CC" field | <blank> | <blank> | <blank> | <blank> |
| BCC | Paragraph | "BCC" field | <blank> | <blank> | <blank> | <blank> |
| Subject | Paragraph | "Subject" field | <blank> | <blank> | <blank> | <blank> |
| DateSent | Date | The date the message was sent (format: 9/28/2012) | <blank> | <blank> | <blank> | <blank> |
| TimeSent | Text | The time the message was sent (format: 11:16:46 AM) | <blank> | <blank> | <blank> | <blank> |
| MD5Hash | Text | The MD5 hash value calculated when the file was collected or processed. | The MD5 hash value calculated when the file was collected or processed. | The MD5 hash value calculated when the file was collected or processed. | The MD5 hash value calculated when the file was collected or processed. | <blank> |
| Prod_FilePath | Paragraph | The path to the native file on the production media | The path to the native file on the production media | The path to the native file on the production media | The path to the native file on the production media | <blank> |

| Name of Field | Type of field | Contents | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Orig_filename | Paragraph | Original name of the native file when the file was collected or processed | Original name of the native file when the file was collected or processed | Original name of the native file when the file was collected or processed | Original name of the native file when the file was collected or processed | <blank> |
| Responsive to | Text | Document request numbers for which this document is responsive. | Document request numbers for which this document is responsive. | Document request numbers for which this document is responsive | Document request numbers for which this document is responsive | Document request numbers for which this document is responsive |

3