# Voter Identification and Citizenship Verification

In the fervent and well-publicized debates over illegal immigration, a major concern has been mainly overlooked—the need to secure our elections against voting by non-citizens.

Our paramount democratic right, the right to vote, is guarded indifferently. Federal and state laws are clear in their intent: Only citizens may vote. In practice, however, polling places are just as porous as are our borders.

In fact, the U.S. Department of State will not accept a voter registration document as proof of citizenship for a passport application.[1] That healthy skepticism is justified because of significant gaps in election law and enforcement procedures.

Just one person denied the right to vote on the basis of race is enough to launch federal action under the Voting Rights Act. But even though vote fraud cancels the legitimately cast votes of minorities, the elderly, and the poor, fraud is treated almost casually, if not indifferently.

**Laws Without Meaning**

The United States Constitution does not provide an affirmative voting right. However, the Fifteenth, Nineteenth, Twenty-fourth, and Twenty-sixth Amendments to the Constitution, ratified over the course of more than 100 years, all contain the same phraseology: "the right of citizens of the United States to vote...." The intent of these amendments is clear and substantiates a view held since the founding: Only citizens have the right to vote. Similarly, Article 6, Section 2 of the Texas Constitution grants the right to vote only to U.S. citizens who are residents of Texas:

> "Every person subject to none of the disqualifications provided by Section 1 of this article [under age 18, mentally incompetent, persons convicted of felonies] or by a law enacted under that section who is a citizen of the United States and who is a resident of this State shall be deemed a qualified voter."

Voting is a right reserved for U.S. citizens. However, the lack of any explicit statutory mandate or procedural requirement to verify the qualification of voters leaves voting booths wide open to illegal immigrants and other non-citizens (as well as other forms of fraud), stripping constitutional rights of any real value.



2:13-cv-193
09/02/2014
**DEF1054**

---

[1] "How to Apply in Person for a Passport,", U.S. Department of State, at http://travel.state.gov/passport/get/first/first_830.html .

TCCRI ✶ P.O. Box 2659, Austin TX 78768 ✶ 512-474-6042 ✶ www.tccri.org      1

Sections 11.002(1) and (2) of the Texas Election Code list the top two qualifications for voting: age (18 or over) and citizenship (United States). The application to register to vote, available online through the Texas Secretary of State Web site, begins with the following questions:

| | Yes | No |
|---|---|---|
| Are you a United States Citizen? | ☐ | ☐ |
| Will you be 18 years of age on or before election day? | ☐ | ☐ |
| If you checked 'no' in response to either of the above, do not complete this form. | | |
| Are you interested in serving as an election worker? | ☐ | ☐ |

Applicants who check "yes" to the citizenship question are taken at their word; there is no verification of citizenship by state, local, or federal authorities. The Office of the Secretary of State, which oversees the administration of elections in Texas, confirms that citizenship verification goes no farther than the honor system. In a June 15, 2006, letter, the Secretary of State's office states:

> "[U]nder current Texas voter registration guidelines, there is no formal verification of an applicant's citizenship status.... Texas relies on the applicant to provide accurate/truthful information on his or her voter registration application. To the extent that an applicant must sign the application verifying that he or she has met the qualifications to register (one of which is U.S. citizenship) and that he or she has provided accurate/truthful information, the application is processed on those merits."[2]

That admission alone is sufficient basis for legislative action. However, the gaps in Texas election law are significant.

Pursuant to the Help America Vote Act of 2002 (HAVA), state election administrators check voter registration applications against driver's license and Social Security databases[3]. While such a measure may serve to verify the name and address of an applicant, it does not prevent foreign nationals from registering to vote since both Social Security numbers (SSN) and driver's licenses are available to non-citizens. In fact, the Texas Transportation Code contains an entire section dedicated to agreements with foreign countries under which the Texas Department of Public Safety (DPS) may issue driver's licenses to foreign nationals.

It is important to note that the DPS does not record the citizenship status of the driver's license applicant. Even if an applicant for a driver's license provides a permanent resident card (green card) or visa as proof of identity, the DPS does not record that the applicant is

---

[2] Ann McGeehan, Director of Elections, Secretary of State, Texas, form letter dated June 15, 2006.
[3] Help America Vote Act of 2002, Section 303(a)(5)(A)(i), Page 116 STAT. 1711, at www.fec.gov/hava/law_ext.txt.

a non-citizen.[4] Therefore, when the Secretary of State cross-checks a voter registration application against DPS driver's license records, the agency cannot determine the citizenship status of the applicant.

A non-citizen, however, need not have an SSN or driver's license in order to vote. The Voter Registration Application continues:

| TX Driver's License No. or Personal I.D. No. (Issued by the Department of Public Safety) |
|---|
| ☐ Check if you do not have a TX Driver's License, or Personal Identification Number |
| If no TX Driver's License or Personal Identification, give last 4 digits of your Social Security Number |
| ☐ Check if you do not have a Social Security Number    **X** |

Note the two boxes labeled "Check if you do not have a..."; even without a driver's license, personal identification card number, or SSN, an applicant may still be registered to vote. HAVA and the Texas Election Code make special provisions for persons without either a driver's license or SSN so that applicants without those forms of identification remain eligible to vote.[5] Driver's licenses, personal identification cards, and SSNs are all available to non-citizens. However, an illegal immigrant need not go so far as to obtain one of those identifying documents since federal and state laws make them completely unnecessary for voting.

Identification acceptable in lieu of a driver's license or SSN includes utility bills, bank statements, and pay checks. However, delivery of electricity and gas service for an apartment or home are not predicated on citizenship. Indeed, any person with the financial wherewithal, including an illegal immigrant, can obtain utility service. Similarly, a foreign national with or without a permanent resident card or visa can work and earn a pay check. The items acceptable as ID in lieu of a driver's license or SSN have nothing to do with the citizenship status of the applicant.

**The Lack of Citizenship Verification Has Bred Proven Vote Fraud in Texas**

On June 22, 2006, Harris County (Houston) Tax Assessor-Collector and Voter Registrar Paul Bettencourt testified before the U.S. Congress Committee on House Administration that in 2005 he identified at least 35 foreign nationals who either had applied for or

---

[4]Claire McGuinness, Senior Staff Attorney, Drivers License Division, Texas Department of Public Safety; TCCRI public information request submitted June 2, 2006; response received June 13, 2006.
[5]Help America Vote Act of 2002, Section 303(a)(5)(A)(ii). See also: Texas Election Code §13.002(c)(8).

Highly Confidential     LEG00044671

received voter registration cards.[6] Since 1992, Mr. Bettencourt's office has cancelled 3,742 registered voters for non-citizenship; 683 of those non-citizenship cancellations have occurred from the year 2000 to present.[7]

Furthermore, as a result of public information requests, the Texas Conservative Coalition Research Institute (TCCRI) learned that:

- Between 2003 and 2005, 303 people were removed from the voter rolls in Bexar County (San Antonio) because they were not citizens. Forty-one of these non-citizens voted in local, state, and federal elections.

- From September 1999 to March 21, 2007, Dallas County cancelled the voter registration of 1,889 individuals because of non-citizenship. Before being deleted from the voter rolls, 356 of those individuals had voted in Dallas County.

- In El Paso County, 213 non-citizens were removed from the voter rolls between January and October of 2006.

- In Tarrant County (Ft. Worth), 584 non-citizens have been removed from the voter rolls since 1999.

It is demonstrable that non-citizens have illegally registered to vote, and, in some cases, have cast ballots illegally. The results from public information requests are very likely to be only a small sampling of the non-citizens who are on the voter rolls. The non-citizens whose registration was cancelled in each county were not discovered through an exhaustive review by state or county authorities. Instead, voter registrars confirm that there are two primary, incidental means for discovering that a non-citizen is registered to vote:

- A non-citizen will contact the voter registrar because he or she is applying for citizenship and has been instructed to cancel his or her voter registration, or
- A non-citizen will claim "non-citizenship" as an excuse on a jury summons. Per Texas Government Code §62.113(b), the county clerk forwards the names of those individuals to voter registrars.

The irony is palpable. In Texas, non-citizens are stealing for themselves the right to vote, but shirking the civic responsibility, jury service, that is statutorily linked to the right to vote.

---

[6]Testimony of Paul Bettencourt Before Committee on House Administration, June 22, 2006, at *www.hctax.net/forms/testimonyofPaul.pdf*.
[7]Voter registration records provided by the Harris County Voter Registration Department.

## Recommendations:

*Place citizenship status on driver's licenses and personal identification cards.*

Pursuant to the REAL ID Act of 2005[8] and the rules drafted by the U.S. Department of Homeland Security, the states' driver's license application and issuance processes will change. By 2008 (or 2009, with a waiver), states motor vehicle departments will be required to verify the citizenship or legal residency status of all applicants for a driver's license or personal identification card. While the REAL ID Act lists certain fields that must appear on the new identification cards, the Act does not require that the cards list citizenship status.

During the May 2006 U.S. Senate debates on legislation to address illegal immigration, Senator Mitch McConnell (R–KY) proposed amending the REAL ID Act of 2005 to require that all state driver's licenses and personal identification cards note whether the licensed driver is a United States citizen. The McConnell amendment to the 2006 Senate immigration bill[9] would have mandated each state to require that individuals voting in federal elections in person show valid photo identification that proves their citizenship.

The Senate immigration bill was passed without Senator McConnell's amendment, meaning that the onus is on state legislatures to require all driver's licenses and personal identification cards to indicate whether or not the holder of the card is a United States citizen. Non-citizens who can prove they are in the United States legally will still be able to obtain a driver's license or personal identification card, but it will label them as non-citizens in order to prevent them from voting.

An applicant for a U.S. passport must provide a birth certificate, naturalization papers, or other limited documents that prove citizenship. The standard for receiving a driver's license or personal identification card should be no less.

*Require voters to present a driver's license or personal identification card at their polling place.*

States should require each voter to present a photo ID that verifies U.S. citizenship at their polling place. Americans are frequently asked to show identification; some examples of identification requirements from statutes include:

- to drive a car [§ 521.021, Texas Transportation Code, states that a person "may not operate a motor vehicle on a highway in this state unless the person holds a driver's license" that has a photo ID];
- to board an airplane [Transportation Security Adminsitration, "What you Need: government-issued photo ID"];

---

[8]Public Law 109-13, Division B, Title II (109th Congress, H.R. 1268), at *http://thomas.loc.gov/cgi-bin/bdquery/z?d109:HR01268:@@@D&summ2=m&*.
[9]Comprehensive Immigration Reform Act of 2006, S. 2611 ES, passed in the U.S. Senate on May 25, 2006.

Highly Confidential

LEG00044673

- to buy alcohol or tobacco [see §109.61 and Chapter 106, Texas Alcoholic Beverages Code];
- to obtain a marriage license [§2.005, Texas Family Code requires proof of identity and age for the issuance of marriage license];
- to be a licensed doctor [§ 155.0031, Texas Occupations Code requires identifying documents, including photographs, for the licensure of doctors];
- to check out a library book [the City of Dallas, for example, requires name and address verification for a library card];
- to purchase products containing ephedrine or pseudoephedrine (most commonly known as Sudafed). Furthermore, in order to purchase the cold medicines, the person making the purchase must show a driver's license or other photo ID indicating the person is over sixteen years of age. [Chapter 486, Texas Health & Safety Code]

Other, more mundane activities such as renting a DVD or applying for membership in bulk retail clubs like Costco or Sam's Club also require identification.

In each of those instances, an individual must present ID. The right to vote trumps all of them in importance. A worker at a polling place should be able to verify the identity of a voter just like a clerk at Blockbuster Video should be able to discern the identity of a person renting a movie. Additionally, workers at polling places must be sufficiently armed with the tools necessary to turn away non-citizens. A photo ID that lists citizenship status is the best means to achieve that end.

*Require that all vote fraud allegations be sent to a county or district attorney, or a state attorney general, for investigation.*

*NOTE: Model legislation follows in Appendix 1.*

**Anticipating and Answering Objections**

Opposition to voter identification and citizenship verification will be fierce. The points below provide facts that answer some of the arguments advanced by opponents in the 80th Texas Legislature.

1. Objection: States lack the authority enact to voter identification and citizenship verification.

Response: The U.S. Constitution, Article I, Section 4, reads:

> "The times, places and manner of holding elections for Senators and Representatives, shall be prescribed in each state by the legislature thereof;"

Highly Confidential                                                                                    LEG00044674

The Texas Constitution, Article 6, Section 2(c), reads:

> "(c) The privilege of free suffrage shall be protected by laws regulating elections and prohibiting under adequate penalties all undue influence in elections from power, bribery, tumult, or other improper practice."

The Texas Constitution is unambiguous in allowing for regulations of voting in order to protect the integrity of elections.

Requiring identification at the polls is a minimum standard to protect against "improper practice" that contributes to fraudulent votes and stolen elections. Arizona, Florida, Hawaii, Indiana, Louisiana, Ohio, and South Dakota require photo identification for voting. Arizona's voter identification law includes a provision that requires citizenship verification.

2. <u>Objection: Voter identification and citizenship verification will not pass Department of Justice pre-clearance.</u>

Response: Opponents argue that voter identification and citizenship verification would not pass Department of Justice pre-clearance under Section 5 of the Voting Rights Act. Of the seven states that have enacted a photo identification requirement, however, Arizona and Louisiana are required to pre-clear election law changes. Some jurisdictions within Florida and South Dakota also must pre-clear election law changes. Photo identification laws have passed pre-clearance in those states. The citizenship verification requirement in Arizona also passed Department of Justice pre-clearance.

3. <u>Objection: Voter identification and citizenship verification will not pass muster in the courts.</u>

Response: In removing an injunction against Arizona's photo identification law (the only such law in the nation to require citizenship verification), the U.S. Supreme Court's per curiam opinion reads:

> "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised."[10]

Also, Indiana's photo ID law was upheld by U.S. Court of Appeals for the Seventh Circuit on January 4, 2007. In upholding Indiana's photo ID law, the U.S. Court of Appeals notes that voters who do not comply with the law by obtaining photo identification disenfranchise *themselves*.[11]

---

[10] *Purcell v. Gonzalez*, U.S. Supreme Court per curiam opinion, October 20, 2006.
[11] Circuit Judge Richard A. Posner, *Indiana Democratic Party v. Rokita*, U.S. Court of Appeals, 7th Circuit Case Nos. 06-2218, 06-2317, January 4, 2007

Highly Confidential                                                                                              LEG00044675

4. Objection: Voter identification and citizenship verification proposals amount to a poll tax.

Texas State Senator Mario Gallegos (D–Houston) argued in an opinion-editorial that "the cost of obtaining the ID and necessary documents amounts to a 21st century poll tax."[12]

Response: Courts have held that voter identification laws are *not* an unconstitutional poll tax.

In ruling on Indiana's and Georgia's voter identification laws, federal district courts have held that the photo ID laws at issue did not create a poll tax. Noting that voters could obtain a photo ID free of charge or vote absentee, both courts determined that the plaintiffs failed to prove the additional costs associated with procuring documents to obtain a voting photo ID were sufficiently tied to voting as to constitute a poll tax. Relying on the Supreme Court's decision in *Burdick v. Takushi*[13], both courts noted "[T]he imposition of tangential burdens does not transform a regulation into a poll tax."[14]

5. Objection: Many individuals without identification, especially minorities and the elderly, will be disenfranchised.

In a May 17, 2007, editorial, the *Houston Chronicle* argued that: "the elderly and minorities… are less likely to have the required identification than more affluent, working-age citizens."

Response: There are more Texas driver's licenses held by the voting-age population than there are registered voters. The following table compares the number of registered voters against the number of driver's licenses and personal ID cards:

| Registered Voters (November 2005)[15] | 12,577,545 |
|---|---|
| Age 18+ Driver's Licenses (FY 2005)[16] | 14,429,377 |
| Personal ID Cards (2006)[17] | 3,960,249 |

In fiscal year 2005, there were 14.4 million valid driver's licenses held by Texans of voting age. In November of 2005, however, there were only 12.5 million registered voters. With 1.8 million more drivers' licenses held by the voting-age population than

---

[12] Mario Gallegos, "Why Right to Vote, Without an ID, Is Worth Fighting For," *Houston Chronicle*, May 22, 2007.
[13] Justice Byron R. White for the majority, *Burdick v. Takushi, Director Of Elections Of Hawaii*, 504 U.S. 428 (1992)
[14] *Rokita* at 90; *Common Cause/Georgia v. Billups*, No. 4:05-CV-00201-HLM (N. D. Ga. July 14, 2006) at 177.
[15] Office of the Secretary of State, "Turnout and Voter Registration Figures (1970–Current)," at www.sos.state.tx.us/elections/historical/70-92.shtml.
[16] Department of Public Safety, Driver's License Division, review of Federal Highway Administration reports
[17] Department of Public Safety, Driver's License Division

there are registered voters, the argument that the voter ID proposal will be a barrier to voting is a fallacy. Add in another 3,960,249 unexpired personal identification cards in Texas as of April 2006, and 87 percent of the *total* Texas population (all ages) has some form of government identification card.

Similarly, statistics show that elderly currently hold valid Texas driver's licenses in large numbers. Nevertheless, in an opinion-editorial piece, Texas State Senator Mario Gallegos stated:

> "My grandmother came from Mexico, played by the rules, became a citizen and earned her right to vote. She didn't have a driver's license, but she had her voter registration card, went to the polls where the workers knew her, and voted. If the voter ID law were in effect, I'm not sure she or others like her could have voted."[18]

Senator Gallegos neglects to consider that a family member or friend could assist his grandmother in securing sufficient identification for voting. Senator Gallegos's grandmother, if unable to procure identification, would likely qualify to vote by absentee ballot, which remains unaffected by the Texas proposals. Furthermore, a driver's license was not the only acceptable identification under the Texas bill. Other acceptable forms of identification included a utility bill, employer identification card, a library card, or government mail.

The Department of Public Safety reports that 73 percent of the population aged 79 and older holds a valid driver's license.[19]

In sampling state election returns in Harris County (Houston) for the November 2006 General Election, 125,221 individuals who are 65 or older voted in that election. Of those, 84.7 percent voted in person, and 92.6 percent already held a driver's license,[20] rebutting the presumption that the elderly would be unfairly burdened by a voter identification and citizenship verification requirement.

An overwhelming majority of Texans who are 65 and older already have photo identification, vote in person, and have the option of voting by mail.

6. <u>Objection: Requiring citizenship verification and voter identification is a Republican effort to disenfranchise traditionally Democratic voters.</u>

A liberal Texas publication argued that the "GOP's efforts to clamp down on voter participation won't save them from electoral defeat."[21]

---

[18] Gallegos, "Why Right to Vote, Without an ID, Is Worth Fighting For."
[19] Department of Public Safety, Driver's License Division; and Texas State Data Center.
[20] Harris County Voter Registrar
[21] "The GOP's Darker Motives", *The Texas Observer*, Editorial, May 4, 2007; online at http://www.texasobserver.org/article.php?aid=2485

Highly Confidential                                                        LEG00044677

Response: The implied statement, that voter identification and citizenship verification are partisan issues, is far from the truth. The bipartisan Commission on Federal Election Reform chaired by former President Jimmy Carter and former Secretary of State James Baker III issued 87 recommendations for ensuring both equal access to elections and election integrity. Among the 87 recommendations, the Commission recommended that states verify citizenship before registering voters by employing the REAL ID Act.

The Commission's final report recommends:

> "The right to vote is a vital component of U.S. citizenship and all states should use their best efforts to obtain proof of citizenship before registering voters."[22]

The report also states:

> "The electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters. Photo IDs currently are needed to board a plane, enter federal buildings, and cash a check. Voting is equally important."[23]

This recommendation, and former President Carter's support for it, clearly refutes claims that voter identification and citizenship verification are ploys by the Republican Party to disenfranchise select individuals. The recommendation of the Commission is simple, clear, and unequivocal: proof of citizenship should be a prerequisite for anyone registering to vote. In the 80th Texas Legislature, voter identification and citizenship verification proposals were filed in separate bills, neither of which relied on the REAL ID Act. Opponents, therefore, painted the use of the Commission on Federal Election Reform report as a mischaracterization of the Commission's recommendation. States should tailor their voter identification and citizenship verification proposals around the REAL ID Act.

**Conclusion**

With an estimated 500,000 illegal immigrants entering the United States each year,[24] and with over one million illegal immigrants in Texas, states cannot afford to leave their election systems susceptible to votes cast fraudulently by non-citizens. Voting is the paramount right of our representative democracy and must be reserved strictly for citizens of the United States.

Requests for identification are increasingly common: to buy alcohol or purchase tobacco; to board an airplane; to buy certain paints or glues (in many states); to rent a movie or a

---

[22] Commission on Federal Election Reform, *Building Confidence in U.S. Elections*, Final Report, September 2005; Recommendation 2.5.2, page 21; http://www.american.edu/ia/cfer/report/CFER_section2.pdf
[23] *Ibid.* Section 2.5, page 18.
[24] Jeffrey S. Passel, "The Size and Characteristics of the Unauthorized Migrant Population in the U.S.," Pew Hispanic Center, March 7, 2006, at *http://pewhispanic.org/files/reports/61.pdf*.

Highly Confidential                                                                                                      LEG00044678

library book. Requesting identification of voters is a simple measure that will abate illegally cast votes by non-citizens. Additionally, state departments of motor vehicles will have to amend their driver's licenses pursuant to the federal REAL ID Act. This gives states the unique opportunity to verify the citizenship status of individuals at polling places, giving real meaning to the litany of laws mandating that only U.S. citizens may vote.

Whatever efforts are made to prevent illegal immigrants from penetrating our borders, states should amend their election laws and practices so that non-citizens are prevented from entering the voting booth.

Highly Confidential

LEG00044679