?,  *CRT*  C

*Voting*

United States Attorney General Eric H. Holder, Jr.     26 September 2013(CMB)
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, District of Columbia 20630-0001

Dear Attorney General Holder,

This letter request your approval to immediately send personnel to **secure oversight monitors for City of Detroit, Michigan - Tuesday, November 5, 2013 General Election, to include current preparation activities, review relational State election law collapsing citizen-voter opportunity, petitions, recount process and planned denial.** **Oversight observation is imperative as a mounting collapse of administrative capability and diminished capacity of voting opportunity is under proposal and has passed rather then corrective measures to eliminate administrative bias, impropriety and what appear as fraudulent occurrences derailing the current August 6, 2013 Primary Election,** thus preventing election result certification prior to November 5th. In short a rush to judgment in multiple areas and rules appears underway without sufficient public hearings or review. Additionally the printing of General Election Absentee ballots to meet mail requirements within the advanced state statute rule cannot be obtained without final certification of elections results – currently in limbo. This dilemma presents the standing questions – who actually won, what is the accurate vote count and which candidates meet original qualification guidelines to seek election and proceed to the November 5th General Election?

As you are aware – Detroit operates as a City Charter Home Rule Municipality to which most recent law changes have been proposed without appropriate citizen review, vote nor charter amendment procedural guidelines on "...behalf of a pre-election newsletter print and mailing deadline" to which individuals are attempting to meet and advise voters of an election-term of office change where discussion, ramifications and public hearings have not been held. Please be aware a requested prompt response from our City Council in order to create reduced/collapsed/revised voting standardizations for the purpose of saving money specifically violates every spirit which created the U.S. Voting Rights Act, and continues obstructed citizen denial to date including:

1.  Assumptive cost savings by violating City Charter rules which set forth the length of elected position term of office, and to which it is believed voting for elected offices would be eliminated: i.e. school board – (see attached);

2.  The constant requirement to request an Absentee Voter Ballot Application after a voter has placed their name on the Permanent Absentee Voter Ballot file (in short Detroiters are required to ask for an absentee ballot application to get an absentee ballot even though one's name is placed on the Permanent Absentee Register – but if you receive an Absentee Ballot and forget to mail it in you can just get another Absentee Ballot at the Department of Elections without return of the original ballot which was furnished upon request or based on constant renewal of the Absentee Voter Application (note the duplication of effort, removal of efficient streamlined procedures and lack of ballot control);



DEPARTMENT OF JUSTICE

DEC 0 6 2013

R.A.Q.

CIVIL RIGHTS DIVISION

R
E
C
O
R
D

2:13-cv-193
09/02/2014
**DEF2340**

United States Attorney General Eric H. Holder, Jr.                26 September 2013
U.S. Department of Justice
950 Pennsylvania Avenue, NW Washington, District of Columbia 20630-0001(CMB)

3. An inept Absentee Ballot count method, unsecured ballot transport to and from multiple locations, unsecured absentee voter ballot storage and recount creating administrative mismanagement – now obstructing final election results (see attached);

4. Lack of 24hour security with sealed room and limited security of absentee ballots to avoid removal and addition of absentee ballots prior to and after election day voting has effectively ended;

5. Voter file mismanagement which creates mailing of absentee ballot application requests to incorrect addresses, with duplicate-erroneously mailed absentee ballots to households creating an increasing fraudulent ballot submission/signatures possibility (see attached);

6. Lack of accurately purged voter files based on death, state drivers license, state identification, or U.S. Mail forwarding records creating years of continual dual notices from Department of Elections to incorrect address (see attached),

7. A lack of sensitivity and adherence to military absentee voter application ballot mailing to in-state, out-state and abroad registered Detroit citizens, without any alternate means of ballot delivery upon notification of non-received ballots (see attached)

8. A joint effort to generate increased local county revenues by assessing any citizen (voter or candidate) increased fees to petition vote results recount based on the ideology "...if one cannot protect their campaign during and after elections should a recount occur or be deemed necessary that person should not attempt to run for office..." again at odds against our spirit of the voting rights act. (see House Bill 4833). Likewise a statement of justification was given 'that citizens have developed voting fatigue'... but in actuality voters have developed fraud fatigue thus disbelief that votes are actually counted – as we are continually told 'candidates are responsible to insure voter turnout rather than the responsibility of a City Clerk'

9. The lack of integrity by multiple parties to provide security personnel during external movement, locking methodologies, county board observation with security and protection of ballots to multiple locations rather than maintain an established singular review site within Department of Election confines.

Due to these continual administrative deficiency occurrences during multiple elections resulting in egregious errors I request immediate assistance as stated above to

United States Attorney General Eric H. Holder, Jr.                    26 September 2013
U.S. Department of Justice
950 Pennsylvania Avenue, NW Washington, District of Columbia 20630-0001(CMB)

correct and restore accuracy, non-bias and voter support solidifying truthfulness in Detroit elections and voting administrative procedural guidelines. Upon review you will note attached documents confirm an elongated situation to which corrective action is required.

*With Advance Appreciation,*

M. Chiquita McKenzie-Bennett, Precinct Delegate 408-13th District (formerly 21/9-14th District) Wayne County; former Detroit Charter Revision Commission Candidate, former Macomb County Poll Site Co-chair

Cc:    U. S. Congressman John Conyers, 13th Congressional District
       U. S. Senator Debbie Stabenow - 8th Congressional District
       Martha G. Scott, 13th Congressional District Chair, Wayne County Commissioner
       Rick Blocker, 14th Congressional District Chair
       Brenda Jones, Detroit Councilwoman

Attachments ( 9 )

USA_00064812

*obtained 9/23/201.*

## City of Detroit
### CITY COUNCIL

Charles Pugh — *inaccurate*
President

Gary Brown — *inaccurate.*
President Pro Tem

Kenneth V. Cockrel, Jr.
Saunteel Jenkins
Brenda Jones
Kwame Kenyatta
Andre L. Spivey
James Tate
Jo Ann Watson

September 13, 2013

Mr. David Whitaker, Interim Director, Legislative Policy Division
Mr. Timothy Beckett, Supervising Assistant Corporation Counsel, Law Department
Mr. Wille Wesley, Jr., Director, Department of Elections

RE:   **PROPOSED RESOLUTION TO ALTER THE CITY ELECTION CYCLE FROM
AN ODD YEAR ELECTION TO AN EVEN YEAR ELECTION, COMMENCING IN
2018.**

Please be informed the Detroit City Council has scheduled a Committee of Whole Meeting relative
to the above referenced subject matter.  It will be held on **MONDAY, SEPTEMBER 16, 2013 AT
1:00 P.M.** in the Committee of the Whole room.  Please arrange to be present or represented.

Please note, increased security measures for entrance into this building may cause delays.
Therefore, allow sufficient time for prompt arrival.

Respectfully submitted,

Janice M. Winfrey
City Clerk

/lj

Attachment

cc:   Mr. Adam Hollier, Mayor's Office
Ms. Gina Avery, Deputy Director, Department of Elections

USA_00064813



CITY OF DETROIT
LAW DEPARTMENT



COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 500
DETROIT, MICHIGAN 48226-3535
PHONE 313•224•4550
FAX 313•224•5505
WWW.DETROITMI.GOV

*obtained 9/23/2013*

August 30, 2013

Detroit City Council
1340 Coleman A. Young Municipal Center
Detroit, Michigan

**Re:** **Proposed Resolution to Alter the City Election Cycle from an Odd Year Election to an Even Year Election, Commencing in 2018.**

Honorable City Council:

Pursuant to a request made by Janice M. Winfrey, as Chair of the Election Commission, the above-referenced proposed resolution, approved as to form, is submitted to Your Honorable Body for consideration and adoption.

Section 642a of Michigan Election Law, MCL 168.642a, which took effect on March 28, 2013, allows municipalities to alter their municipal election cycles by resolution, from an odd year format to coincide with the even year cycle. The proposed resolution will allow the Regular Primary Election and the Regular City Election for City of Detroit Offices to be conducted in concert with future gubernatorial election dates beginning in November of 2018. The City officials elected at the November 5, 2013 Regular City Election will have a five (5) year term (January 1, 2014 through January 1, 2019). The City officials elected in 2018 and thereafter will have a regular four (4) year term. The Consolidation of the City and Gubernatorial elections will save the City approximately three million dollars every two years.

We are available to answer any questions that you may have concerning this proposed resolution. Thank you for your consideration.

Respectfully,

Portia L. Roberson
Corporation Counsel

By _____
Tonja R. Long
Assistant Corporation Counsel
Governmental Affairs Section

Attachment

ENTERED SEP 0 4 2013

G:\DOCS\MUNIC\longto\a70000\ltr\TL0777.WPD

USA_00064814

*obtained 9/23/2013*

**R E S O L U T I O N**

**ROLL CALL VOTE REQUIRED**

**BY COUNCIL MEMBER**_____:

WHEREAS, Section 642 of the Michigan Election Law, 1954 PA 116 (the "**Act**"), states that "(1) Except as otherwise provided in . . . section 642a, . . . (a) A city shall hold its regular election for a city office at the odd year general election [and] (b) A city shall hold its regular election primary at the odd year general election. . . .", MCL 168.642(1)(a), (b); and

WHEREAS, in accordance with Section 642(1)(a) of the Act, Section 3-105 of the 2012 Detroit City Charter states that "[a] regular City general election to fill the elective offices of the City shall be held on the Tuesday after the first Monday of November 2013 and every fourth year thereafter. A regular city primary election to nominate candidates for city offices shall be held on the Tuesday after the first Monday of August before the general election. . . ."; and

WHEREAS, on March 28, 2013, Public Act 523 of 2012, amending the Act, became law; and

WHEREAS, among other things, Public Act 523 of 2012 amended Section 642a of the Act by adding subsection (4) to allow a city to move its general and primary elections to the even election year by its city council adopting a resolution by roll call vote in compliance with Section 642 of the Act; and

WHEREAS, Section 644g(1) of the Act states that "(1) A term of office shall not be shortened by the provisions of sections 641 to 644i. . . . If the regular election date for holding a jurisdiction's regular election is changed under section 642, 642a, or 642c, the term of an official who was elected before the effective date of the change continues until a successor is elected and qualified at the next regular election."; and

WHEREAS, Section 642(7) of the Act states that a resolution under Section 642a is valid only if (a) it is adopted before January 1 of the year in which the change of date of election takes effect, (b) a public hearing is held, (c) notice of the public hearing is given in the manner designed to reach the largest number of qualified electors in a timely fashion, (d) the resolution is adopted by a majority of council members serving, on a roll call vote, and (e) the resolution is filed with the secretary of state; and

*to whom?*

WHEREAS, the City Council finds that notice of the public hearing has been provided in a manner that satisfies Section 642(7) of the Act; and

WHEREAS, the City Council, having received comments at the public hearing held on _____, finds that moving the city's general and primary elections to the even election year will benefit the city and its electorate by reducing costs and increasing voter *intrusion* participation in and turnout for city elections;

{G:\DOCS\MUNIC\beckt\a71000\res\BT4944.DOC}       1

**NOW, THEREFORE, BE IT RESOLVED**, that the City of Detroit chooses to change the City general election from an odd year election schedule to coincide with the even year general election, commencing with the 2018 gubernatorial general election and continuing every fourth (4th) year thereafter; and

**BE IT FURTHER RESOLVED**, that the City of Detroit chooses to change the City primary election from an odd year election schedule to coincide with the even year primary election, commencing with the 2018 gubernatorial primary election, and continuing every fourth (4th) year thereafter; and

**BE IT FURTHER RESOLVED**, that in accordance with Section 644g(1) of the Michigan Election Law, 1954 PA 116, being MCL 168.644g(1), and Section 2-102 of the 2012 Detroit City Charter, the terms of the officials who are elected to hold office at the 2013 city general election will continue until noon on January 1, 2019; and

**BE IT FURTHER RESOLVED**, that any petitions for Elective Officers submitted to the City Clerk for the 2013 city general election that indicate the term of office is from January 1, 2014 through December 31, 2017 are not disqualified for placement on the ballot for the incomplete term of office being identified in the petition, and if elected such elective officers shall be able to serve the entire five (5) year term commencing noon, January 1, 2014 and continuing until noon, January 1, 2019; and

**BE IT FURTHER RESOLVED**, that as this resolution changes the election dates from the dates stated in the City Charter, the City Clerk is directed to codify this resolution in the City Code and to place an annotation with Section 3-105 of the City Charter, indicating that the dates set forth in Section 3-105 have been modified by this resolution; and

**BE IT FINALLY RESOLVED**, that the City Clerk shall file a certified copy of this resolution with the Michigan Secretary of State.

USA_00064816

# R E S O L U T I O N

## Setting Public Hearing

### for

### Proposed Resolution to Move City Elections to the Even Election Year, Commencing 2018

**WHEREAS,** pursuant to the authority set forth in Section 642a(4) of the Michigan Election Law, 1954 PA 116, being MCL 168.642a(4), the City Council desires to consider moving the city's election schedule from the odd election year to the even election year, in order to reduce costs and increase voter participation in and turnout for city elections; and

**WHEREAS,** among other things, Section 642(7) of the Act states that a resolution under Section 642a is valid only if a public hearing is held and notice of the public hearing is given in the manner designed to reach the largest number of qualified electors in a timely fashion; and

**WHEREAS,** the City Council has determined that, in addition to the normal means of providing notice for public hearings, that mailing notice of the public hearing to each qualified elector according to the address on record with the Election Department is the manner that will reach the largest number of qualified electors in a timely fashion;

**NOW, THEREFORE, BE IT RESOLVED,** that a public hearing is set for

_____ o'clock on _____ to be held at

Room _____, Coleman A. Young Municipal Center, _____ Floor

to receive comments regarding the proposed resolution to change the City general election from the odd election year to the even election year, commencing in 2018; and

**BE IT FURTHER RESOLVED,** that the City Clerk is directed to mail notice of the public hearing to each qualified elector according to the address on record with the Election Department not later than fifteen (15) days before the date of the public hearing.

*voter file is not accurate*

USA_00064817



# Charter of the City of Detroit

### January 1, 2012

#### (Adopted by Vote of the People on November 8, 2011)

1 | P a g e

USA_00064818

Home Rule Charter

# CHARTER OF
# THE CITY OF DETROIT

## PREAMBLE AND DECLARATION OF RIGHTS

PREAMBLE

We, the people of Detroit, do ordain and establish this Charter for the governance of our City, as it addresses the needs of all citizens and affirms our commitment to the development and welfare of our youth, our most precious treasure; instituting programs, services and activities addressing the needs of our community; fostering an environment and government structure whereby sound public policy objectives and decisions reflect citizen participation and collective desires; pledging that all our officials, elected and appointed, will be held accountable to fulfill the intent of this Charter and hold sacred the public trust; acknowledging our blessings from God, we pray our efforts will be accepted.

DECLARATION OF RIGHTS

1.  Detroit City government is a service institution that recognizes its subordination to the people of Detroit.

    The City shall provide for the public peace, health and safety of persons and property within its jurisdictional limits.

    The people have a right to expect aggressive action by the City's officers in seeking to advance, conserve, maintain and protect the integrity of the human, physical and natural resources of this city from encroachment and/or dismantlement.

    The people have a right to expect city government to provide for its residents, decent housing; job opportunities; reliable, convenient and comfortable transportation; recreational facilities and activities; cultural enrichment, including libraries and art and historical museums; clean air and waterways, safe drinking water and a sanitary, environmentally sound city.

2.  The City has an affirmative duty to secure the equal protection of the law for each person and to insure equality of opportunity for all persons. No person shall be denied the enjoyment of civil or political rights or be discriminated against in the exercise thereof because of race, color, creed, national origin, age, disability, sex, sexual orientation, gender

12 | P a g e

USA_00064819

expression or gender identity.

3. A person shall have reasonable access to all files and records of the City in accordance with applicable laws.

4. The people have a right to know the rules and regulations governing dealings between the City and the public and to a means for the review of administrative decisions.

5. The City's police forces are in all cases and at all times in strict subordination to the civil power.

6. The City shall endeavor to require application of the principle of one person-one vote to the policymaking body of any regional or other multi-jurisdictional organization which taxes or provides any service to City residents or takes any action affecting the City's interests.

7. The enumeration of certain rights in this Charter shall not be construed to deny or disparage others retained by the people.

8. The City may enforce this declaration of rights and other rights retained by the people.

13 | Page

USA_00064820

# ARTICLE 1.
# ESTABLISHMENT of CITY GOVERNMENT

**Sec. 1-101 City Government.**

The people of Detroit, by adoption of this Home Rule Charter, create and provide for their continuing control of the municipal government of the City of Detroit.

**Sec. 1-102. General Powers.**

The City has the comprehensive home rule power conferred upon it by the Michigan Constitution, subject only to the limitations on the exercise of that power contained in the Constitution or this Charter or imposed by statute. The City also has all other powers which a city may possess under the Constitution and laws of this state.

**Sec. 1-103. Liberal Construction.**

The powers of the City under this Charter shall be construed liberally in favor of the City. The specific mention of particular powers in the Charter shall not be construed as limiting in any way the general power stated in this article.

**Sec. 1-104. Boundaries.**

The boundaries of the City existing when this Charter takes effect continue in force until changed in accordance with law.

USA_00064821

# ARTICLE 2.
# GENERAL PROVISIONS

### Sec. 2-101. Qualifications for Elective Officers and Appointive Officers.

A person seeking elective office must be a citizen of the United States, a resident and a qualified and registered voter of the City of Detroit for one (1) year at the time of filing for office, and retain that status throughout their tenure in any such elective office. In addition, any person seeking office from a non at-large district must be a resident and qualified, registered voter in such district for one (1) year at the time of filing for office, and retain such status throughout their tenure.

For any appointive city office, a person must be qualified to perform the duties of the office at the time of assuming the office and at all times while holding the office. The person's citizenship, residence and voter registration status shall be as required or permitted by this Charter or applicable law.

### Sec. 2-102. Term of Office.

The term of every elective city officer is four (4) years and commences at noon on the first (1st) day of January after the regular city general election.

### Sec. 2-103. Oath of Office.

Every elective officer and every appointee before entering on official duties shall take and subscribe the following oath before the Detroit City Clerk: "I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this state and that I will faithfully discharge the duties of office to the best of my ability." The original of the oath shall be filed in the Office of the City Clerk and a copy provided to the elective officer or the appointee.

### Sec. 2-104. Severability.

If any provision of this Charter or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the Charter.

### Sec. 2-105. Definitions and Rules of Construction.

**A. As used in this Charter:**

1. *Agency* means, where appropriate and unless indicated otherwise, any one or all of the following: any department, office, multi-member body, subdivision of the Legislative branch of City government or other organization of city government and includes any elective officer, appointee, employee, or person acting or purporting to act in the exercise of official duties.

2. *Appoint* means being named to a position in the exempt service.

3. *Appointee* means a person holding either a compensated or uncompensated position.

4. *Appointive office* or *appointive officer* means compensated positions and appointees holding compensated positions.

5. *City* means the City of Detroit.

15 | Page

USA_00064822

6.  *City Clerk* means the City Clerk of the City of Detroit.

7.  *City Council* means the legislative body of the City of Detroit.

8.  *Confidential Information* means information obtained by a Public Servant by reason of his or her official position concerning the property, government or affairs of the City or any office, department or agency thereof, not available to members of the public pursuant to the Michigan Freedom of Information Act or other applicable laws, regulations or procedures.

9.  *Contractor* means a party who, or which, seeks to enter, or enters, into a contract with the City of Detroit for the delivery of goods or services, but does not mean one who seeks to enter, or enters, into a personal services contract, as defined in this section, with the City.

10. *Corrupt Conduct* means the conduct of a Public Servant, in carrying out his duties, that violates applicable laws or the Standards of Conduct articulated in this Charter.

11. *Director* means the administrative head of any department or agency regardless of the title of a particular director.

12. *District or ward* means a district drawn on a geographical basis, which constitutes a political unit from which members of the City Council, Board of Police Commissioners and Community Advisory Councils are elected.

13. *Elective officers* means the Mayor, each member of the City Council, elected Board of Police Commissioners and the City Clerk.

14. *Employee* means a person employed by the City of Detroit, whether on a full-time or part-time basis.

15. *Exempt service* means both compensated and uncompensated positions.

16. *Exercises significant authority* means having the ability to influence the outcome of a decision on behalf of the City of Detroit government in the course of the performance of a Public Servant's duties and responsibilities.

17. *Filling of vacancies* means, except as otherwise provided by this Charter, whenever a vacancy occurs in any appointive position, the vacancy shall be filled by appointment (for the unexpired term, if any) in the manner provided for the original appointment.

18. *General election in the city (distinguished from 'city general election')* means a city-wide general election regardless of whether its purpose is to fill national, state, county or City offices.

19. *Hire* means being employed for a position in the classified service as defined in section 6-417 of this Charter.

20. *Immediate family member* means a Public Servant's spouse, domestic partner, individual who lives in the Public Servant's household or an individual claimed by a Public Servant or a Public Servant's spouse as a dependent under the United States Internal Revenue Code at 26 USC 1, et seq.

21. *Lobbying* means all communications with a Public Servant for the purpose of influencing legislative or executive action.

22. *Lobbyist* means with respect to lobbying city government: (a) a person whose expenditures for lobbying are more than $1,000.00 in value in any 12-month period; (b) a person whose expenditures for lobbying are more than $250.00 in value in any 12-month period, if the amount is expended on lobbying a single public official; or (c) a registered lobbyist under applicable laws, who lobbies Detroit city government.

USA_00064823

23. *Multi-Member Body* means any board, commission, or other organization of City government.

24. *Official Act* means any action, omission, decision, recommendation, practice or procedure of any agency.

25. *Personal services contract* means a contract for the retention of an individual to perform services on behalf of the City of Detroit for a fixed period and for fixed compensation.

26. *Proceedings means, with respect to City Council, any gathering of that body for purposes of* conducting the legislative affairs of the City of Detroit. It includes, but is not limited to, hearings, council meetings, committee meetings and other council related activities where the body is required to convene by law or Charter to execute its legislative function, as dictated by law, Charter or ordinance.

27. *Public Servant* means the Mayor, members of City Council, City Clerk, appointive officers, any member of a board, commission or other voting body established by either branch of City government or this Charter and any appointee, employee or individual who provides services to the City within or outside of its offices or facilities pursuant to a personal services contract.

28. *Resident(s) or residence* means, in reference to qualification for elective office, service on a multi-member body or other Charter residency requirement, a person's principal, permanent place of residence. It shall be that place at which a person habitually sleeps, keeps their personal effects, and regularly lodges. If someone has more than one (1) residence, or a residence separate from that of their spouse, the place where the person resides the greater part of the time will be considered their official residence. Any relevant judicial interpretation of these terms shall be applicable.

29. *Retain* (distinguishing legal representation other than the Corporation Counsel) means the temporary hiring of outside legal counsel.

30. *Serving and present* means, when calculating an ordinary or extraordinary majority of:
    a. *City Council members serving*, vacant City Council seats are not included: and
    b. *City Council members present*, neither vacant City Council seats nor those of absent members are included.

31. *Vacancy* means that the position of any elective officer or appointee is deemed vacant upon death, resignation, permanent disability or dismissal from the position in any manner authorized by law or this Charter.

32. *Voter of the city* or *city voter* means a person who has the qualifications of and is registered as an elector of the City of Detroit under state law.

33. *Willful Neglect of Duty* means the intentional failure of a Public Servant to perform the duties of his office.

## B. Rules of Construction

For purposes of this Charter, the following rules of construction apply:

*Including* or *included.* Unless the contrary is expressly stated, these are not words of limitation, but mean "including but not by way of limitation" or "included but not by way of limitation."

*Number and gender.* The singular number includes the plural, the plural number includes the singular, and the masculine gender includes the feminine gender and the neuter.

*Tense.* This Charter is to be regarded as speaking in the present and continuously. For example, the phrase "as provided by law" will incorporate the provisions of law as they change from time-to-time.

17 | P a g e

USA_00064824

# ARTICLE 3.
# ELECTIONS

### Sec. 3-101. Department of Elections.

A Department of Elections shall plan, monitor and administer all elections in the City of Detroit.

### Sec. 3-102. Election Commission.

The Department of Elections is headed by the Election Commission composed of:

1. The City Clerk, who is Chairperson;
2. The President of the City Council; and
3. The Corporation Counsel.

### Sec. 3-103. Powers and Duties of Election Commission.

The Election Commission has general supervision of all elections in the City and may hire assistants, inspectors, and other election personnel. Precinct election officers and temporary employees required from time to time for periods not to exceed thirty (30) business days may be appointed, exempt from Article 6, Chapter 4, of this Charter.

Except as otherwise provided by this Charter or ordinance, the Election Commission shall perform all duties required of election commissions by law. The Commission may subpoena witnesses, administer oaths, take testimony and require the production of evidence. To enforce a subpoena or order for production of evidence or to impose any penalty prescribed for the failure to obey a subpoena or order, the Commission shall apply to the appropriate court.

All meetings of the Commission shall be conducted in compliance with the Michigan Open Meetings Act, MCL 15.261, et seq., including making a record of its proceedings.

In case of any doubt concerning election procedure, the Commission shall prescribe the procedure to be followed.

### Sec. 3-104. Director and Deputy Director.

The City Clerk shall appoint a Director and Deputy Director of the Department of Elections, who are skilled and experienced in municipal election administration. Under the direction of the City Clerk and in accordance with general policies of the Election Commission, the Director shall supervise, plan and monitor all activities and operations incidental to the conduct of elections and voter registration. The Director or Deputy Director of Elections may be removed by the Clerk for cause.

### Sec. 3-105. City Elections and City Council Initiated Ballot Proposals.

A regular city general election to fill the elective offices of the City shall be held on the Tuesday after the first Monday of November of 2013 and every fourth year thereafter.

A regular city primary election to nominate candidates for city offices shall be held on the Tuesday after the first Monday of August before the general election.

26 | P a g e

USA_00064825

If a vacancy occurs in the office of Mayor it shall be filled by succession under section 5-109. The unexpired term shall be filled at the next general election in the City held not sooner than one hundred eighty (180) days after occurrence of the vacancy.

If a vacancy occurs on City Council it shall be filled by appointment, based on a two-thirds (2/3) vote of members. The person appointed shall serve until an elected member takes office. The election to fill the vacant position shall occur at the next general election to be held not sooner than one hundred eighty (180) days after occurrence of the vacancy.

If a vacancy occurs in an elective office of the Board of Police Commissioners it shall be filled by the Mayor with a resident from the relevant district, subject to City Council approval. If City Council does not disapprove the appointment within thirty (30) days of the appointment it will be deemed confirmed. The appointed person shall serve until an elected member takes office. The election to fill the vacant position shall occur at the next general election to be held not sooner than one hundred eighty (180) days after occurrence of the vacancy.

The City Council may submit, by resolution adopted not less than seventy (70) days before any election or special election, any proposal to the voters of the city. *less than 70 days if so between 9/22 – 11/5/13 election*

### Sec. 3-106. State Law to Apply.

Except as otherwise provided by this Charter or ordinance, state law applies to the qualifications and registration of voters, the filing for office by candidates, the filing of petitions for initiative and referendum, and the conduct and canvass of city elections.

### Sec. 3-107. Elective Officers of the City.

The elective officers of the city are the Mayor, the nine (9) members comprising the City Council, the City Clerk and seven (7) elected Board of Police Commissioners.

### Sec. 3-108. Geographical Basis for Electing Council Members.

There shall be seven (7) non at-large districts and one (1) at-large district established in the City and one (1) member shall be elected from each non at-large district and two (2) members shall be elected from the at-large district.

New district boundaries created within one hundred twenty (120) days of a City Primary Election shall become effective after the General Election.

*→ Precincts term used by D/Elect.*
City Council shall establish district wards that are as nearly of equal population as practicable, contiguous, compact and in accordance with any other criteria permitted by law. District wards shall be apportioned in subsequent years as required by, and in accordance with, the Home Rule City Act, MCL 117.27a, and other applicable law.

### Sec. 3-109. Nominating Petitions.

A candidate for nomination to an elective city office shall file with the City Clerk a non-partisan nominating petition consisting of one (1) or more petition forms.

27 | P a g e

USA_00064826

The candidate's petition shall be signed by a number of voters of the City equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the total number of votes cast in the preceding Regular City General Election for the office which the candidate seeks.

Where a candidate is seeking nomination to the office of City Council at-large member, the candidate's petition shall be signed by a number of voters of the City equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the number resulting when the total number of votes cast at the preceding Regular City General Election for all offices of City Council members is divided by nine (9).

Where a candidate is seeking nomination to the office of City Council non at-large district member, the candidate's petition shall be signed by a number of voters of the district equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the number resulting when the total number of votes cast at the preceding Regular City General Election for all offices of the City Council members is divided by nine (9).

In the initial election, where a candidate is seeking nomination to the office of district elected Police Commissioner, the candidate's petition shall be signed by a number of voters of the district equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the number resulting when the total number of votes cast at the preceding Regular City General Election for all offices of the City Council members is divided by nine (9). In succeeding elections the candidate's petitions shall be signed by a number of voters of the district equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the number resulting when the total number of votes cast at the preceding Regular City General Election for all offices of elected Board of Police Commissioners is divided by seven (7).

**Sec. 3-110. Nominees.**

The number of nominees for each elective city office selected at each primary election may not exceed twice the number of openings in the office to be filled. The nominees are entitled to have their names printed on the general election ballot.

**Sec. 3-111. Residency Requirement for Elective Officers.**

1. *Elected Officials Generally.*
   All candidates for elective office and elected officials shall be bona fide residents of the City of Detroit and must maintain their principal residence in the City of Detroit for one (1) year at the time of filing for office or appointment to office, and throughout their tenure in office.

2. *City Council and Board of Police Commissioners.*
   In addition to being a resident for one (1) year, as required above, candidates for City Council and the Board of Police Commissioners shall be bona fide residents of their districts and must maintain their principal residence in their districts for one (1) year immediately preceding election or appointment and throughout their tenure in that office.

USA_00064827





# The Constitution of Michigan of 1963

Table of Contents

- **Preamble**
- **Article I - Declaration of Rights**
- **Article II - Elections**
- **Article III - General Government**
- **Article IV - Legislative Branch**
- **Article V - Executive Branch**
- **Article VI - Judicial Branch**
- **Article VII - Local Government**
- **Article VIII - Education**
- **Article IX - Finances and Taxation**
- **Article X - Property**
- **Article XI - Public Officers and Employment**
- **Article XII - Amendment and Revision**
- **Schedule and Temporary Provisions**

**PREAMBLE**
We, the people of the Michigan, grateful to Almighty God for the blessings of freedom, and earnestly desiring to secure these blessings undiminished to ourselves and our posterity, do ordain and establish this constitution.

**ARTICLE I**

**DECLARATION OF RIGHTS**
**Political power.**
Sec. 1.
All political power is inherent in the people. Government is instituted for their equal benefit, security and protection.

**Equal protection; discrimination.**

USA_00064828

(2) The legislature may provide by law for the enforcement of this section.
(3) The legislature may provide for an assessment against convicted defendants to pay for crime victims' rights.

## ARTICLE II 

### ELECTIONS

**Qualifications of electors; residence.**
Sec. 1.
Every citizen who has attained the age of 21 years, who has resided in Michigan six months, and who meets the requirements of local residence provided by law, shall be an elector and qualified to vote in any election except as otherwise provided in this constitution. The legislature shall define residence for voting purposes.

**Mental incompetence; imprisonment.**
Sec. 2.
The legislature may by law exclude persons from voting because of mental incompetence or commitment to a jail or penal institution.           @ the point of pursing x

**Place and manner of elections.**
Sec. 4.
The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in this constitution. The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. No law shall be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when required for identification of candidates for the same office who have the same or similar surnames.

**Time of elections.**
Sec. 5.
Except for special elections to fill vacancies, or as otherwise provided in this constitution, all elections for national, state, county and township offices shall be held on the first Tuesday after the first Monday in November in each even-numbered.

**Voters on tax limit increases or bond issues.**
Sec. 6.
Whenever any question is required to be submitted by a political subdivision to the electors for the increase of the ad valorem tax rate limitation imposed by Section 6 of Article IX for a period of more than five years, or for the issue of bonds, only electors in, and who have property assessed for any ad valorem taxes in, any part of the district or territory to be affected by the result of such election or electors who are the lawful husbands or wives of such persons shall be entitled to vote thereon. All electors in the district or territory affected may vote on all other questions.

**Boards of canvassers.**
Sec. 7.
A board of Michigan canvassers of four members shall be established by law. No candidate for an office to be canvassed nor any inspector of elections shall be eligible to serve as a member of a board of canvassers. A majority of any board of canvassers shall not be composed of members of the same political party.

**Recalls.**
Sec. 8.
Laws shall be enacted to provide for the recall of all elective officers except judges of courts of record upon petition of electors equal in number to 25 percent of the number of persons voting in the last preceding election for the office of governor in the electoral district of the officer sought to be recalled. The sufficiency of any statement of reasons or grounds procedurally required shall be a political rather than

USA_00064829

a judicial question.

**Initiative and referendum; limitations; appropriations; petitions.**
Sec. 9.
The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum. The power of initiative extends only to laws which the legislature may enact under this constitution. The power of referendum does not extend to acts making appropriations for government institutions or to meet deficiencies in public funds and must be invoked in the manner prescribed by law within 90 days following the final adjournment of the legislative session at which the law was enacted. To invoke the initiative or referendum, petitions signed by a number of registered electors, not less than eight percent for initiative and five percent for referendum of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected shall be required.

No law as to which the power of referendum properly has been invoked shall be effective thereafter unless approved by a majority of the electors voting thereon at the next general election.

Any law proposed by initiative petition shall be either enacted or rejected by the legislature without change or amendment within 40 session days from the time such petition is received by the legislature. If any law proposed by such petition shall be enacted by the legislature it shall be subject to referendum, as hereinafter provided.

If the law so proposed is not enacted by the legislature within the 40 days, the public officer authorized by law shall submit such proposed law to the people for approval or rejection at the next general election. The legislature may reject any measure so proposed by initiative petition and propose a different measure upon the same subject by a yea and nay vote upon separate roll calls, and in such event both measures shall be submitted by such public officer to the electors for approval or rejection at the next general election.

Any law submitted to the people by either initiative or referendum petition and approved by a majority of the votes cast thereon at any election shall take effect 10 days after the date of the official declaration of the vote. No law initiated or adopted by the people shall be subject to the veto power of the governor, and no law adopted by the people at the polls under the initiative provisions of this section shall be amended or repealed, except by a vote of the electors unless otherwise provided in the initiative measure or by three-fourths of the members elected to and serving in each house of the legislature. Laws approved by the people under the referendum provision of this section may be amended by the legislature at any subsequent session thereof. If two or more measures approved by the electors at the same election conflict, that receiving the highest affirmative vote shall prevail.

The legislature shall implement the provisions of this section.

## ARTICLE III

## GENERAL GOVERNMENT
**Seat of government.**
Sec. 1.
The seat of government shall be at Lansing.

**Separation of powers of government.**
Sec. 2.
The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

**Great seal.**

USA_00064830

Michigan Legislature

MICHIGAN LEGISLATURE(www.legislature.mi.gov)
Printed on Monday, September 23, 2013
Michigan Compiled Laws Complete Through PA 106 of 2013

# House Bill 4833 (2013) 🔲 rss

**Sponsors**
Kurt Heise - (primary)Lisa Posthumus Lyons, Gail Haines, Harold L. Haugh, Eileen Kowall,
Harvey Santana

**Categories**  Elections, recounts; Elections, election officials; State agencies (existing),
state

Elections; recounts; recount deposit; increase. Amends secs. 867 & 881 of 1954 PA 116
(MCL 168.867 & 168.881).

Bill Document Formatting Information
[x]
The following bill formatting applies to the 2013-2014 session:
- New language in an amendatory bill will be shown in **BOLD AND UPPERCASE.**
- Language to be removed will be ~~stricken.~~
- Amendments made by the House will be blue with square brackets, such as: [House amended text].
- Amendments made by the Senate will be red with double greater/lesser than symbols, such as: <<Senate
amended text>>.
(gray icons indicate that the action did not occur or that the document is not available)

**Documents**

 **House Introduced Bill**
Introduced bills appear as they were introduced and reflect no subsequent
amendments or changes.

 **As Passed by the House**
As Passed by the House is the bill, as introduced, that includes any adopted
House amendments.

 **As Passed by the Senate**
As Passed by the Senate is the bill, as received from the House, that includes
any adopted Senate amendments.

 **House Enrolled Bill**
Enrolled bill is the version passed in identical form by both houses of the
Legislature.

**House Fiscal Agency Analysis**

 **Summary As Introduced (06-18-13)**
This document analyzes: HB4833

 **Analysis as Reported From Committee (06-20-13)**
This document analyzes: HB4833

**History**(House actions in lowercase, Senate actions in UPPERCASE)

| Date ▲ | Journal | Action |
|---|---|---|
| 6/13/2013 | HJ 59 Pg. 1268 | introduced by Representative Kurt Heise |
| 6/13/2013 | HJ 59 Pg. 1268 | read a first time |
| 6/13/2013 | HJ 59 Pg. 1268 | referred to Committee on Elections and Ethics |
| 6/18/2013 | HJ 61 Pg. 1281 | printed bill filed 06/14/2013 |

USA_00064831

HOUSE BILL No. 4833

# HOUSE BILL No. 4833

June 13, 2013, Introduced by Reps. Heise and Lyons and referred to the Committee on
    Elections and Ethics.

    A bill to amend 1954 PA 116, entitled

"Michigan election law,"

by amending sections 867 and 881 (MCL 168.867 and 168.881), section

867 as amended by 1980 PA 200 and section 881 as amended by 1995 PA

261.

### THE PEOPLE OF THE STATE OF MICHIGAN ENACT:

1       Sec. 867. (1) ~~The~~ A candidate or elector filing a recount

2   petition PURSUANT TO SECTION 862 OR 863 SHALL FILE THE PETITION

3   with the clerk of the ~~correct~~ APPROPRIATE board of canvassers.

4   ~~shall~~ EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION, at the ~~same~~

5   time OF FILING THE PETITION, THE PETITIONER SHALL deposit with the

6   clerk the sum of ~~$10.00~~ $25.00 for each precinct referred to in his

7   or her petition.

8       (2) IF 1 CANDIDATE IS TO BE ELECTED TO THE OFFICE AND THE

HOUSE BILL No. 4833

02649'13                                                    STM

USA_00064832

2

1   OFFICIAL CANVASS OF VOTES SHOWS THAT THE NUMBER OF VOTES SEPARATING

2   THE WINNING CANDIDATE AND THE PETITIONER IS MORE THAN 50 VOTES OR

3   0.5% OF THE TOTAL NUMBER OF VOTES CAST IN THE RACE, WHICHEVER IS

4   GREATER, THE PETITIONER SHALL DEPOSIT WITH THE CLERK THE SUM OF

5   $125.00 FOR EACH PRECINCT REFERRED TO IN HIS OR HER PETITION. FOR

6   PURPOSES OF THIS SUBSECTION, THE WINNING CANDIDATE IN A PRIMARY FOR

7   A NONPARTISAN OFFICE WHERE ONLY 1 CANDIDATE WILL BE ELECTED MEANS

8   THE CANDIDATE NOMINATED WITH THE LESSER NUMBER OF VOTES.

9       (3) IF MORE THAN 1 CANDIDATE IS TO BE ELECTED TO THE OFFICE

10  AND THE OFFICIAL CANVASS OF VOTES SHOWS THAT THE NUMBER OF VOTES

11  SEPARATING THE WINNING CANDIDATE WHO RECEIVED THE LEAST NUMBER OF

12  VOTES AND THE PETITIONER IS MORE THAN 50 VOTES OR 0.5% OF THE SUM

13  OF THE NUMBER OF VOTES RECEIVED BY THE 2 CANDIDATES, WHICHEVER IS

14  GREATER, THE PETITIONER SHALL DEPOSIT WITH THE CLERK THE SUM OF

15  $125.00 FOR EACH PRECINCT REFERRED TO IN HIS OR HER PETITION.

16      (4) IF THE VOTE IS ON A PROPOSAL AND THE OFFICIAL CANVASS OF

17  VOTES SHOWS THAT THE NUMBER OF VOTES SEPARATING THE "YES" VOTES AND

18  THE "NO" VOTES IS MORE THAN 50 VOTES OR 0.5% OF THE TOTAL NUMBER OF

19  VOTES CAST ON THE PROPOSAL, WHICHEVER IS GREATER, THE PETITIONER

20  SHALL DEPOSIT WITH THE CLERK THE SUM OF $125.00 FOR EACH PRECINCT

21  REFERRED TO IN HIS OR HER PETITION.

22      (5) If, by reason of the recount, the petitioner establishes

23  sufficient fraud or mistake as set forth in his or her petition to

24  change the result of the election and receives a certificate of

25  election or establishes sufficient fraud or mistake to change the

26  result ─upon an amendment or proposition, the votes for and

27  against ─which were recounted, the CLERK OF THE BOARD OF

02649'13                                                      STM

USA_00064833

3

1   CANVASSERS SHALL REFUND THE money deposited ~~by~~ TO the petitioner.

2   ~~shall be refunded. If the petitioner does not establish a fraud or~~

3   ~~mistake as set forth in his or her petition~~ IF A REFUND IS NOT MADE

4   AS REQUIRED BY THIS SUBSECTION, the sum deposited shall be paid by

5   the clerk of the APPROPRIATE board of ~~county, city, township, or~~

6   ~~village~~ canvassers to the treasurer of the county, city, township,

7   or village.

8      (6) IF A PRECINCT REFERRED TO IN THE PETITION IS DETERMINED

9   "NOT RECOUNTABLE" AS PROVIDED IN SECTION 871(3) OR, SUBJECT TO

10  SUBSECTION (7), IF A PRECINCT REFERRED TO IN THE PETITION IS NOT

11  RECOUNTED DUE TO THE WITHDRAWAL OF THE PETITION, THE MONEY

12  DEPOSITED FOR THE RECOUNT OF THAT PRECINCT SHALL BE REFUNDED TO THE

13  PETITIONER.

14     (7) IF THE VOTES CAST ON THE BALLOTS VOTED IN A PRECINCT HAVE

15  BEEN EXAMINED AND RECOUNTED, THE WITHDRAWAL OF THE PETITION SHALL

16  NOT RESULT IN A REFUND OF THE MONEY DEPOSITED FOR THE RECOUNT OF

17  THAT PRECINCT.

18     Sec. 881. (1) A person filing a recount petition pursuant to

19  section 879 or 880 shall file the petition with the state bureau of

20  elections. ~~At~~ EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION, AT the

21  time of filing the petition, the petitioner shall deposit the sum

22  of ~~$10.00~~ $25.00 for each precinct in which a recount of the votes

23  is demanded in cash or by check or other negotiable instrument made

24  payable to the state of Michigan.

25     (2) IF 1 CANDIDATE IS TO BE ELECTED TO THE OFFICE AND THE

26  OFFICIAL CANVASS OF VOTES SHOWS THAT THE NUMBER OF VOTES SEPARATING

27  THE WINNING CANDIDATE AND THE PETITIONER IS MORE THAN 50 VOTES OR

USA_00064834

4

1    0.5% OF THE TOTAL NUMBER OF VOTES CAST IN THE RACE, WHICHEVER IS

2    GREATER, THE PETITIONER SHALL DEPOSIT WITH THE STATE BUREAU OF

3    ELECTIONS THE SUM OF $125.00 FOR EACH PRECINCT REFERRED TO IN HIS

4    OR HER PETITION. FOR PURPOSES OF THIS SUBSECTION, THE WINNING

5    CANDIDATE IN A PRIMARY FOR A NONPARTISAN OFFICE WHERE ONLY 1

6    CANDIDATE WILL BE ELECTED MEANS THE CANDIDATE NOMINATED WITH THE

7    LESSER NUMBER OF VOTES.

8       (3) IF MORE THAN 1 CANDIDATE IS TO BE ELECTED TO THE OFFICE

9    AND THE OFFICIAL CANVASS OF VOTES SHOWS THAT THE NUMBER OF VOTES

10    SEPARATING THE WINNING CANDIDATE WHO RECEIVED THE LEAST NUMBER OF

11    VOTES AND THE PETITIONER IS MORE THAN 50 VOTES OR 0.5% OF THE SUM

12    OF THE NUMBER OF VOTES RECEIVED BY THE 2 CANDIDATES, WHICHEVER IS

13    GREATER, THE PETITIONER SHALL DEPOSIT WITH THE STATE BUREAU OF

14    ELECTIONS THE SUM OF $125.00 FOR EACH PRECINCT REFERRED TO IN HIS

15    OR HER PETITION.

16       (4) IF THE VOTE IS ON A PROPOSAL AND THE OFFICIAL CANVASS OF

17    VOTES SHOWS THAT THE NUMBER OF VOTES SEPARATING THE "YES" VOTES AND

18    THE "NO" VOTES IS MORE THAN 50 VOTES OR 0.5% OF THE TOTAL NUMBER OF

19    VOTES CAST ON THE PROPOSAL, WHICHEVER IS GREATER, THE PETITIONER

20    SHALL DEPOSIT WITH THE STATE BUREAU OF ELECTIONS THE SUM OF $125.00

21    FOR EACH PRECINCT REFERRED TO IN HIS OR HER PETITION.

22       (5) (2) If, by reason of the recount, the petitioner

23    establishes fraud or mistake as set forth in his or her petition

24    and receives a certificate of election or establishes sufficient

25    fraud or mistake to change the result , upon an amendment or

26    proposition, the votes for and against , which were recounted, the

27    state bureau of elections shall refund the money deposited to the

02649'13                           STM

USA_00064835

5

1   petitioner. The secretary of state shall refund the money deposited
2   to a petitioner who is a chairperson of a state political party if
3   the results of the race for which a recount was petitioned for
4   under section 879 are changed. If a refund is not made as required
5   by this section, then the secretary of state shall pay to the
6   treasurer of each county its proportionate share of the deposit
7   based upon the number of precincts in the county in which the votes
8   were recounted.

9        (6) IF A PRECINCT REFERRED TO IN THE PETITION IS DETERMINED
10   "NOT RECOUNTABLE" AS PROVIDED IN SECTION 871(3) OR, SUBJECT TO
11   SUBSECTION (7), IF A PRECINCT REFERRED TO IN THE PETITION IS NOT
12   RECOUNTED DUE TO THE WITHDRAWAL OF THE PETITION, THE MONEY
13   DEPOSITED FOR THE RECOUNT OF THAT PRECINCT SHALL BE REFUNDED TO THE
14   PETITIONER.

15        (7) IF THE VOTES CAST ON THE BALLOTS VOTED IN A PRECINCT HAVE
16   BEEN EXAMINED AND RECOUNTED, THE WITHDRAWAL OF THE PETITION SHALL
17   NOT RESULT IN A REFUND OF THE MONEY DEPOSITED FOR THE RECOUNT OF
18   THAT PRECINCT.

USA_00064836

# Michigan House of Representatives

Home       Representatives     Leadership        Committees        Events Calendar      Employment        Citizen's Guide       House TV        Financials

## Quick Contacts

**Anderson House Office Building**
124 North Capitol Avenue
P.O. Box 30014
Lansing, MI 48909-7514

**House Business Office**
Ph: 517.373.6339
BusinessOffice@house.mi.gov

**Capitol Building**
P.O. Box 30014
Lansing, MI 48909-7514

**Clerk's Office**
Ph: 517.373.0135
Clerk@house.mi.gov

**House Organizational Chart**

House Organizational Chart

## Other Websites

House Fiscal Agency
Michigan Legislature
Michigan Senate
Michigan.gov
Auditor General
Capitol Tours
Democratic Caucus
Republican Caucus
Outlook Web Access (OWA)

L Public Wireless Network

## Committee



**Committee Chair**
**Lisa Posthumus Lyons**

**Elections and Ethics**

Lisa Posthumus Lyons (R) Committee Chair, 86th District
Kevin Cotter (R) Majority Vice-Chair, 99th District
Kurt Heise (R) 20th District
Mike Callton (R) 87th District
Rick Outman (R) 70th District
Ken Yonker (R) 72nd District
Harold Haugh (D) Minority Vice-Chair, 22nd District
Marilyn Lane (D) 31st District
Andy Schor (D) 68th District

Malika Abdul-Basir, Committee Clerk
517-373-7256

Committee notices are available via e-mail.
Click here to subscribe
View legislation referred to this committee
All Currently Scheduled Committee Meetings

Testimony: | Select One                                            | | open testimony |
Minutes:   | Select One                          | open minutes |

You can browse through the list of House Committees and their members by selecting a House Committee from the drop-down list below.

| Select One                          |

Site Map | Home | Representatives | Leadership | Committees | Employment | Citizens Guide | House TV | Contact Us
Legislative Retirement | Website Disclaimer | House Employee Portal | Privacy Policy

http://www.house.mi.gov/MHRPublic/CommitteeInfo.aspx?comkey=224                    9/23/2013

USA_00064837

| | | | |
|---|---|---|---|
| 6/18/2013 | HJ 61 | Pg. 1282 | reported with recommendation with substitute H-4 |
| 6/18/2013 | HJ 61 | Pg. 1282 | referred to second reading |
| 9/12/2013 | HJ 73 | Pg. 1408 | read a second time |
| 9/12/2013 | HJ 73 | Pg. 1408 | substitute H-4 adopted |
| 9/12/2013 | HJ 73 | Pg. 1408 | placed on third reading |
| 9/19/2013 | HJ 76 | Pg. 1456 | read a third time |
| 9/19/2013 | HJ 76 | Pg. 1456 | passed; given immediate effect Roll Call # 290 Yeas 95 Nays 9 |
| 9/19/2013 | HJ 76 | Pg. 1456 | title amended |
| 9/19/2013 | HJ 76 | Pg. 1456 | transmitted |

The Michigan Legislature Website is a free service of the Legislative Internet Technology Team in cooperation with the Michigan Legislative Council, the Michigan House of Representatives, and the Michigan Senate. The information obtained from this site is not intended to replace official versions of that information and is subject to revision. The Legislature presents this information, without warranties, express or implied, regarding the accuracy of the information, timeliness, or completeness. If you believe the information is inaccurate, out-of-date, or incomplete or if you have problems accessing or reading the information, please send your concerns to the appropriate agency using the online Comment Form in the bar above this text.

USA_00064838

# Legislative Analysis



**ELECTIONS: INCREASE DEPOSIT
FOR RECOUNTED PRECINCTS**

Mary Ann Cleary, Director
Phone: (517) 373-8080
http://www.house.mi.gov/hfa

**House Bill 4833 (reported from committee as Substitute H-4)**
**Sponsor: Rep. Kurt Heise**
**Committee: Elections and Ethics**

**First Analysis (6-20-13)**

**BRIEF SUMMARY:**  The bill would increase from $10 to $25 the per precinct deposit required to initiate a recount of the votes cast in a state or local election. However, the bill would require a $125 per precinct deposit if the election winner and loser (as determined by the official canvass of votes) were separated by more than 50 votes or 0.5 percent of the total number of votes cast, whichever was greater.

**FISCAL IMPACT:**  House Bill 4833 would have a fiscal impact on the state and local units of government to the extent that the deposits increased by HB 4833 would generate additional revenue. The Department of State does not collect data on the number of petitions for recounts of local elections; however, it may be assumed that the number is marginal.

**THE APPARENT PROBLEM:**

In 1963 the Michigan Legislature set a $10 per precinct deposit fee to be charged to a petitioner who requested that the votes cast in a local or state election be recounted. In today's economy--fully 50 years later--that $10 fee would equate to $75 per precinct. Nevertheless, the $10 per precinct deposit fee remains in effect.

According to committee testimony, the current deposit of $10 per precinct neither covers nor substantially defrays the cost of an election recount. For example, the sponsor of the bill has said that if a recount had been necessary in the 20th Michigan House District (it was not), which he represents, the cost to taxpayers would have been $10,000. Under current law, the petitioner who filed for the recount would pay $500 ($10 for each of 50 precincts), while the taxpayers would be responsible for paying the remaining $9,500. Further, the Kent County Clerk testified a recount of 10 precincts within her jurisdiction after the fall 2012 election was conservatively estimated to cost taxpayers $2,500, the petitioner's $100 deposit covering a small portion of the total cost.

At times when state or local elections are close--when winners and losers are separated by few votes--a recount of the votes cast may be necessary to assure a fair and accurate outcome. However, recount petitions are sometimes filed for frivolous or malevolent reasons, requested by people angry with the election outcome.

Legislation has been introduced that would increase the $10 per precinct deposit fee to $25. Further, when the election was not close, and there was little likelihood that the

USA_00064839

election results would change following a recount of the votes cast, then the per precinct deposit fee would increase to $125.

## THE CONTENT OF THE BILL:

House Bill 4833 (H-4) would amend the Michigan Election Law (MCL 168.867 and 168.881) to increase from $10 to $25 the per precinct deposit required to initiate a recount of the votes cast in those precincts in a state or local election.

Further, the bill would require a $125 per precinct deposit if the election winner and loser (as determined by the official canvass of votes) were separated by more than 50 votes or 0.5 percent of the total number of votes cast, whichever was greater.

The proposed deposit fees would apply to petitioners seeking recounts of both local and state elections, including partisan elections, non-partisan elections, and votes on ballot proposals.

Under the bill, the petitioner seeking the recount would deposit the fee (accompanied by a petition) with the appropriate elections clerk (for local elections), or with the State Bureau of Elections (for state elections). If the precinct referred to in the petition was determined "not recountable," or was not recounted because the petition was withdrawn, then the money deposited for the recount would be refunded to the petitioner. However, if a petition were withdrawn after the votes cast in a precinct had been recounted, then the deposit would not be refunded.

## ARGUMENTS:

### For:

Recounting the votes cast in an election is costly for taxpayers--costing as much as $10,000 in a Michigan House of Representatives district, for example. This legislation would enable local and state election officials to recover some of the costs for an election recount by increasing the per precinct deposit fee that is charged to those who challenge an election's outcome. That fee--unchanged for 50 years--would rise to $25 per precinct from $10 per precinct. In addition, to discourage frivolous and unnecessary petitions seeking a recount of the votes cast, the per-precinct fee would increase to $125 if more than 50 votes (or 0.5 percent of the vote, whichever was greater) separated the winner from the loser who makes the challenge.

### Against:

Any citizen, regardless of wealth, should be able to challenge an election outcome. This ensures that elections remain error-free, fair, and uncorrupted. To that end, the per precinct deposit fees charged to petitioners who initiate a recount should stay low. That way virtually all citizens can mount a challenge to an election whose final results they believe are suspect.

### Response:

The bill does not recoup all costs of a recount, but merely helps to defray the cost. As the Kent County Clerk testified during the Elections Committee public hearing, "It isn't a wish on our part at all to discourage someone from asking for a recount." However, "we do want people to pause and think about the work involved."

USA_00064840

## STATEMENT ATTACHED TO AND MADE A PART OF
## Petition for Manual Recount

**Precincts** -330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 355, 356,363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374,375, 376, 377, 390, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 426, 427, 428, 429, 430, 431   _Equals 66 Precincts_.

**Absent Voter Counting Boards -**
81,82,83,84,85,86,87,88,89,90,91,92,93,94,95,96,97 _Equals 17 Counting Boards_.

USA_00064841



FIRST CLASS MAIL
U.S. POSTAGE
PAID
DETROIT MICH
PERMIT NO. 2970

1 of 2

To

AUGUST 6, 2013

08/06/2013  07408  92  00920279
MEIRTA CHIQUITA MCKENZIE-BENNETT
9165 CHEYENNE ST
DETROIT MI 48228

USA_00064842



FIRST CLASS MAIL
U.S. POSTAGE
PAID
DETROIT, MICH.
PERMIT NO. 2970

To

ELECTION FORM — AUGUST 6 2013

MEIRPTA CHIQUITA MCKENZIE-BENNETT
9195 CHEYENNE ST
DETROIT MI 48228

OF DETROIT
TO: ELECTIONS
Grand Boulevard
Michigan 48202-3069

CITY ELECTION COMMISSION
2978 W. Grand Boulevard
Detroit, Michigan 48202-3069

FIRST CLASS MAIL
U.S. POSTAGE PAID
POST CARD RATE
DETROIT, MICH.
PERMIT NO. 2970

— Remains
Unopened

(Name of Voter)

DASHAWN HUCHET
9195 CHEYENNE ST
(Addr

DETROIT MI 48228

(City)                    (State)                    (Zip)

USA_00064844

November 21, 2005                                                    (1 of 3)

To:    Department of Elections Officers, Detroit, Michigan
        Mrs. Jackie Curry, City Clerk, Gloria Williams, Director
        Danial Baxter, Absentee Voter Division

Cc:    Senator Martha G. Scott, District 2
        Senator Ken Sikkema, Senate Majority Leader
        Lamar Lemmons, III, State Representative, District 3

Re:    Right to Vote, Denial of the
        On behalf of William McKenzie-Overseas Military Personnel (U.S. Air Force)

From: C. McKenzie (Appropriate family member to request on his behalf)

Dear Sirs/Madams:

I am sending this correspondence on behalf of my nephew, William McKenzie, who lost his right to vote as scheduled for November 8, 2005 for the Detroit, Michigan General Election. Although the discussion and process began in June and I stayed in continual contact with the Department of Elections; expressed and explained the urgency of the request to the office; changed course after learning of the time delay of mail; walked through/submitted the needed form (absentee voter application) *insuring that his voter signature card was stamped/labeled military;* that the correct military U.S. state-side mail-drop address was noted and updated on his card/computer system for appropriate mailing[1] and time constraints, I was then given assurance that the Department of Elections would mail the absentee ballot to him via 2-day mail the same day I traveled to the election office to hand deliver the absentee voter application. His plan was in turn to mail the ballot directly to the Detroit Department of Elections via DHL - but still as of today 11/21/05, he is not in receipt of his general election ballot.

While there are a variety of methods proposed as potential vehicles to assist military personnel stationed overseas to vote, none were advantageous on his behalf relating to this City of Detroit General Election:

- The Absentee Voting Act (UOCAVA)[2] FY 2005 provides regulations which cater more readily to federal elections (*note he did vote absentee for the presidential*)

- The Voting Assistance Officer (State Department)[3] which offers "how to" information would not have been advantageous for we were aware of the process

- The Secure Electronic Registration and Voting Experiment (SERVE)[4] which should assist military overseas personnel by the Defense Department is not set for assistance with primary and general non-federal elections

- Use of the web-based *absentee ballot application* (Michigan Secretary of State Website) was useful in printing, scan usage & forwarding via e-mail attachment with required original signature for delivery on his behalf (note that direct e-mail return with attachment from the requester to the Department of Elections was not offered as an option).

USA_00064845

Neither these above mechanisms, nor my several discussions with the Department of Elections as expressed above has resolved his request and timely delivery of an absentee ballot *with* the ability to return such ballot – resulting in a loss of his right/ability to vote.

Please note that the January 9, 2005 Testimony before the Subcommittee on Military Personnel, Committee on Armed Services, House of Representatives (107th Congress)s titled <u>Elections-Issues Affecting Military and Overseas Absentee Voters</u> states "the act (*Uniformed* and Oversees Citizens Absentee voting act of 1986) also recommends that <u>States</u> *adopt a number of provisions that facilitate absentee voting by these populations..." "...*covers about... 2.7 million military members and dependants at home and abroad...", the UOCAVA Act, Section 201 (a) (1) amendment states "*balloting materials...shall be <u>carried expeditiously</u>* and free of postage...". The concept of expeditiously was not attained via regular U.S. Mail nor the <u>promised 2-day delivery</u> for a known military personnel because the AVB was delivered on 10/4/05 but the Absentee Ballot wasn't mailed until 6-days later per the Department of Elections records/computer data log: 10/10/05 date of mailing.

At this juncture of this unresolved process we are requesting the following:

1. That a *trace is placed on his absentee ballot to determine the location and retrieval with delivery to him via his state-side address/forwarding overseas.*

2. That the hard copy signature card and computer record of military Detroit and Michigan Residents and Citizens abroad be flagged with both the state-side military mail-drop address and overseas address (where appropriate within security) which would flag an automatic 2-day DHL or other air service automatic delivery on the first day Absentee Voter Applications are available, as well as the Formal Absentee Ballot.

3. That the technical amendments to, and or election absentee voter application and formal ballot laws be revised to allow for a 4 month minimum application and automatic mailing (beyond the current 75th day prior to election rule), thus creating an extension of the minimally needed 2 month U.S. regular mail delivery overseas turnaround should the expense of automatic 2-day delivery be viewed as cost prohibitive to city, county and state election budgets.

4. That the Department of Elections in conjunction with the State and State Department petition to have the internal security mechanisms needed to finalize the *SERVE* system completed for full utilization and to also include the Primary and General city and state non-federal elections.

5. That steps be taken which allow military and out of state Michigan residents to register and de-register for absentee voting throughout the year for the election cycle(s) for which they are attempting to vote – and – therefore coincide with the multi-primary/general absentee voting registration mechanism for military personnel regarding federal elections(5 / pg10).

USA_00064846

WMcKenzie, Loss of Right to Vote-Military/CMcKenzie, on behalf of, 11/21/2005          (3 of 3)

While the above request may seem extraordinary, your response to, assistance with the tracing of his ballot, and the effort toward reducing what is presented as 'a simplistic request' be resolved through a substantive tightening and detailed attention to the request of military personnel voters who are state-side (out of residence) or stationed over-seas is greatly appreciated.   For although this may appear as *just a one election issue,* it behooves us to *understand that for one's length of time serving in the military the continual and long-term loss of the right to vote in one's home city primary and general elections will forever be deferred,* yet simultaneously we send the same individual to unknown locations in defense and service to the country and area from which they are attempting to be a participating citizen though stationed abroad.

> With Sincerity and Appreciation,
>
> Chiquita McKenzie (Aunt)
> Post Office Box 25217 Harper Woods, MI. 48225
> 313/268-9065

**Mailing Information/References**

[1]Absentee Applicant state-side (first) address: Lt. William E. McKenzie, 7170 Asmara
  Place, Dulles, VA 20189-7170

[2] The Absentee Voting Act (UOCAVA), FY 2005 provides regulations which cater more
  readily to federal elections.  www.fvap.gov/laws/uocavalaw.html

[3] The Voting Assistance Officer (State Department), Role of the VAO, in conjunction
  with the UOCAVA.  www.favp/gov/vao/vao.html.

[4] The Secure Electronic Registration and Voting Experiment (*SERVE*). Reference article,
  see paragraphs 3 - 5, 8. www.wired.com/news/evote/0,2645,62012.html. (Note that
  access of *SERVE* via government description not accessible).

[5] United States General Accounting Office. House Armed Services Committee,
  Testimony, Before the Subcommittee on Military Personnel, Committee on Armed
  Services, House of Representatives. Elections, Issues Affecting Military and Overseas
  Absentee Voters-Statement of David M. Walker, Comptroller of the United States.
  (www.house.gov/hasc/openingstatementsandpressreleases/107thcongress/01-05-
  09walker.html

**Additional References:**
American Citizens Abroad (www.aca.ch/acane88.htm)

Detroit News 2004_Michigan ranked 8th of Veteran states 845,833 persons.
  www.detnews.com/2004/editorial/0405/02a13-139410.htm (see inset).
  Source: Department of Defense, Veterans Affairs.

USA_00064847



2ND DISTRICT
STATE CAPITOL
LANSING, MI 48913
PHONE: (517) 373-7748
        1-800-SCOTT-78
        (1-800-72688-78)
FAX: (517) 373-1387
E-MAIL: SenMScott@senate.michigan.gov
WEB ADDRESS: www.senate.michigan.gov

### MICHIGAN SENATE
# MARTHA G. SCOTT
### STATE SENATOR

APPROPRIATIONS COMMITTEE
SUBCOMMITTEES:
FAMILY INDEPENDENCE AGENCY
COMMERCE, LABOR AND
ECONOMIC DEVELOPMENT
K-12, SCHOOL AID, AND EDUCATION
RETIREMENT

November 29, 2005

Ms. Chiquita McKenzie
PO Box 25217
Harper Woods, MI 48225-0217

Dear Ms. McKenzie:

Thank you for bringing to my attention the situation with your nephew and his inability to vote in the recent election. The right to vote is the most important and vital of our rights as Americans, and I was disturbed to learn of how his attempts to cast his vote were blocked.

I would encourage you to share this story with the Michigan Attorney General, and with our U.S. Senators, Carl Levin and Debbie Stabenow. I enclose their contact information. If there is specific action that I can take to assist our military personnel serving overseas in protecting their right to vote, please do not hesitate to let me know.

Sincerely yours,

Martha G. Scott
State Senator
2nd District


Recycled
Paper



USA_00064848



**FEDERAL VOTING ASSISTANCE PROGRAM**
DEPARTMENT OF DEFENSE
WASHINGTON, DC 20301-1155

September 24, 2007

The Honorable Terri Lynn Land
Secretary of State
Richard H. Austin Building, 4th Floor
430 W. Allegan Street
Lansing, MI 48918-9900

Dear Secretary Land,

   I would like to thank you for the work you and the state of Michigan have done over the past several years to promote and support the legislative initiatives the Federal Voting Assistance Program (FVAP) has recommended. Michigan is to be commended for the recent enactment of legislation to eliminate the affidavit/notary requirement and waiving the 30-day registration deadline for Michigan citizens covered by the *Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)*. The 2006 elections pointed out the importance of the states enacting these legislative initiatives. In particular, the provision of 45 or more days for ballot transit; electronic transmission of Federal Post Card Applications, blank ballots, and voted ballots; and, authorization for the state chief election official to implement emergency measures. States with these provisions were able to support a greater number of situations faced by our brave men and women serving in combat areas such as Iraq and Afghanistan, and other U.S. citizens worldwide. I would ask you also to consider alternative methods that these citizens could use to request their absentee ballots such as phone, email or by proxy, and utilizing digital signatures with electronically transmitted materials. *what a dove*

   After reviewing Michigan's existing election code and procedures, I have identified (five initiatives) that the Michigan legislature might consider during the upcoming legislative session. These initiatives are discussed in detail with suggested wording in the enclosed legislative initiatives document. If these initiatives are enacted and signed into law, they would significantly help to facilitate the absentee voting process for Michigan's citizens covered by the *UOCAVA*. Information available to FVAP indicates that there are 44,054 Uniformed Services members, an estimated 33,000 family members and approximately 127,000 overseas citizens that claim Michigan as their voting residence.

   As you review the enclosed initiatives for possible inclusion in Michigan's 2008 legislative agenda, please do not hesitate to contact us for assistance. We can provide legislative wording that other states have enacted to implement similar measures and provide written or in-person testimony, if desired. We have come a long way in simplifying the absentee voting process since the enactment of the *UOCAVA*—let's continue our joint efforts to achieve the simplest possible absentee voting process while maintaining its integrity.

Sincerely,

J. Scott Wiedmann
Deputy Director

Enclosure:
   2008 Legislative Initiatives and Suggested Wording

USA_00064849

## Michigan 2008 Legislative Initiatives and Sample Language

### Electronic Transmission of Election Materials

Since the 1990 general election, faxing has proven to be a valuable alternative method for facilitating the enfranchisement of military persons and overseas citizens serving their country who may have otherwise been unable to vote. This initiative has helped to ensure that these citizens were not disenfranchised by allowing them to cast a ballot when they would not otherwise have been able to vote due to time and location constraints.

Throughout an election year cycle, various circumstances exist that require the need for this alternative procedure in order for citizens to vote. The basic concept of electronic transmission of election materials is to secure high-speed delivery of election materials to and from the voter and local election officials. Your support in developing the **acceptance of electronic transmission for all aspects of the process**, with proper controls, would cut the ballot transit time at least in half. This would reduce a major obstacle to voting absentee and allow local election officials more administrative flexibility in preparing election materials.

**We request that you seriously consider in this year's legislative session, the expansion of the use of modern technology in the absentee voting process.** We realize that Michigan enacted legislation to provide for the electronic transmission of the FPCA for registration and absentee ballot request. However, we encourage expanded use of this alternative to include electronically sending the blank ballot to the voter, and accepting the voted ballot from the voter where circumstances would otherwise disenfranchise a citizen. **Twenty-three states** have expanded use of electronic transmission to allow sending the blank ballot, and accepting the voted ballot.

### *Sample Language*

*An election official may send blank ballots and accept voted ballots from eligible electors who are members of the United States Uniformed Services, merchant marine, or family members, or qualified electors living outside the United States via electronic transmission.*

### Emergency Authority for Chief Election Official

During a period of a declared emergency or other situation where there is a short time frame for ballot transmission, it is recommended that Michigan's Chief Election Official have the authority in law to designate alternate methods for handling absentee ballots to ensure voters have the opportunity to exercise their right to vote. The Chief Election Official and the Federal Voting Assistance Program could mutually establish expeditious methods for handling absentee ballots including electronic transmission. **Seventeen** states have passed legislation giving the Chief Election Official authority to designate alternate methods of handling absentee ballots in emergency situation.

USA_00064850

### *Sample Language*

*If a national or local emergency or other situation arises which makes substantial compliance with the provisions of the Uniformed and Overseas Citizens Absentee Voting Act impossible or unreasonable, such as a natural disaster or an armed conflict involving United States Armed Forces, or mobilization of those forces, including State National Guard and Reserve components, the Chief Election Official may prescribe, by emergency orders or rules, such special procedures or requirements as may be necessary to facilitate absentee voting by those citizens directly affected who otherwise are eligible to vote in the state.*

*The Chief Election Official shall adopt rules describing the emergency powers and the situations in which the powers will be exercised.*



### Late Registration Procedures

We recommend that Michigan **allow persons recently separated from the Uniformed Services or overseas employment, and their family members, to be able to register late or be exempt from registration.** Many members of the Uniformed Services and overseas citizens go through a transition period when they first leave the Uniformed Services or overseas employment and may reside in your state just prior to an election. This time frame does not meet your state's normal residency requirements. Often, the date of discharge or termination of overseas employment and a state's registration requirement combine to disenfranchise a discharged military member or overseas citizen returning home after employment abroad. Special procedures to allow these persons to register and vote would solve this problem. **Twenty-nine** states currently allow such procedures.

### *Sample Language*

*An individual, or accompanying family member who has been discharged or separated from the Uniformed Services or from employment outside the territorial limits of the United States, too late to enable him or her to register by the regular state deadline for registration, shall be entitled to register for the purpose of voting at the next ensuing election after such discharge, separation, or termination of employment.*

### State Special Write-In Absentee Ballot

We also recommend that Michigan provide a state write-in absentee ballot for **all elections.** The purpose of the state write-in absentee ballot is to **provide a method for voting by military and other persons overseas who, due to military contingencies or special circumstances such as those faced by submariners, Peace Corps volunteers, missionaries or others in remote areas, will be out of communication for extended periods of time and unable to receive the regular ballot from your state in the normal time frame.** A voter could request a state write-in absentee ballot 90 days in advance and write in the names of the candidates or party preferences. The voter knows in advance that he

USA_00064851

or she will not be able to receive, vote, and return the regular ballot from the state in time to be counted. **Twenty-seven** states now provide state write-in absentee ballots.

This state write-in absentee ballot should not be confused with the Federal Write-In Absentee Ballot (FWAB) that is prepositioned at Embassies and Consulates, military installations, overseas organizations and corporations. In comparison, the FWAB is generally only available to military stationed overseas and overseas citizens who have already applied for a regular ballot from the state. They do not know in advance that they need the FWAB. However, if the regular ballot from the state does not arrive in sufficient time for the voter to return the voted ballot and meet the state deadline, these voters may obtain, vote, and return the FWAB to the local election official.

It is also important to note that a state write-in absentee ballot usually provides a "full" slate of offices to be voted upon including Federal, state, and local offices. On the other hand, the FWAB generally allows voting for Federal offices. There are presently **thirteen** states that have expanded the use of the FWAB beyond Federal law. The revised FWAB was designed to accommodate its use beyond the general election and Federal offices only.

### _Sample Language_

*If the voter is a U.S. citizen residing outside the United States or a member of the United States Uniformed Services, merchant marine, or family member, and a qualified elector, he or she may request, not earlier than 180 days before an election, a state write-in absentee ballot. The voter must submit with the request a statement that provides that due to military or other contingencies that preclude normal mail delivery, the elector cannot vote an absentee ballot during the normal absentee voting period. The ballot will be available 90 to 180 days before the election.*

### Expand Use of Federal Write-In Absentee Ballot

Currently the Federal Write-In Absentee Ballot (FWAB) may be used only in general elections for Federal offices only. This ballot is prepositioned worldwide at Embassies and Consulates, military installations and overseas organizations and corporations with American membership. By **expanding its use to include special, primary and runoff elections for Federal offices**, citizens would not be disenfranchised because regular ballots are not received in a timely manner. Frequently, there is insufficient time between the call for a special election and the actual election and between primary and runoff elections. Allowing use of the FWAB in these elections would reduce the possible need for legal action when insufficient time exists for the ballot to be received, voted and returned to be counted. During past primaries, on an *ad hoc* basis, several states and jurisdictions allowed the FWAB to be used for offices other than Federal offices. **Thirteen** states have legislatively expanded the use of the FWAB for other than Federal offices beyond the Federal law.

3 of 4

USA_00064852

Mr. Daniel Baxter, Director                                          March 4, 2008
Department of Elections
City of Detroit
2978 West Grand Boulevard
Detroit, Michigan 48202

Re: Absentee Voting Ballots for Michigan Military Personnel

Dear Mr. Baxter,

I hope this letter finds you in good spirits.   I am sending this letter in follow up to my 2005
correspondence regarding Michigan Military Personnel whose assignments are State-side or
Abroad and their ability to vote in primary and general elections.   As indicated in my prior
correspondence (attached), this was not given to my nephew.

In reviewing and continuing to obtain information on the *SERVE* system it is now evident that
this electronic voting capability for military persons will not be approved.   Likewise, while the
ability to submit the *Permanent Absentee Voter Application Request* card as a permanent AVB
status or apply for an AVB using the Federal Postcard Application (FPCA) form is possible, *it is
the ability to obtain an actual Absentee Voting Ballot* that is problematic.

The Federal Voting Assistance Program and Department of Defense Inspector General's report of
2000 and 2002 noted that the FVAP "encouraged states to use a 45-day timeline... (Such that) an
*absentee ballot is mailed to a military voter 45 days before the election.*" Likewise in January
2005 testimony indicated that "the act (UOCAVA) recommends that States adopt a number of
provisions that facilitate absentee voting by these populations..." and Section 201 (a) (1)
amendment states "balloting materials...*shall be carried expeditiously* and free of posting..." as
submitted to the Subcommittee on Military Personnel, Committee on Armed Services.

However, in reviewing current *Absentee Ballot request and return* information, timelines
indicated for 2008 elections are not conducive to a military person being able to meet such
restrictive timelines (additional pages did not address use of the 45-day advance rule):

| Uniformed Services Deadline | State Primary | General Election |
|---|---|---|
| Registration | August 5, 2008 | November 4, 2008 |
| *Ballot Request* | *August 2, 2008(2pm)* | *November 1, 2008 (2pm)* |
| *Ballot Return* | *August 5, 2008(8pm)* | *November 4, 2008 (8pm)* |

The above time-table is not conducive to Michigan military personnel stationed abroad nor out
state personnel.   If the timelines for a ballot request and the return date have been lengthened I
would be most appreciative to be made aware of this information.   Likewise if there is a separate
information page noting the 45-day advance availability of the <u>absentee ballot</u> for registered
Michigan Military personnel, and the date that the August 2008 Primary ballot will become
available I would also appreciate being apprised of that information.

You may reach me via mail at U.S. Postal Box 25217 Harper Woods, MI. 48225.

Sincerely,

Chiquita McKenzie

USA_00064853

March 13, 2008

Mrs. Angela Jones, Assistant to the Director
Department of Elections
City of Detroit
2978 West Grand Boulevard
Detroit, Michigan 48202

Re:    Follow up from March 4, 2008 Letter (Military AVB)

Dear Mrs. Jones,

Per our conversations of March 13, 2008, please find attached my letter of March 4,
2008. As explained, the letter was sent certified (the return notice with signature is
attached). Also included are the two attachments which accompanied the 3/4/08 letter:
   1) Calendar of Absentee Voting Guide for ballot registration and ballot request
   2) My previous letter of November 21, 2005 regarding the same subject.

Thank you for your assistance. I look forward to hearing from you and/or Mr. Baxter in
the near future.

Appreciatively,

Chiquita McKenzie
313/268-9065

Mr. Daniel Baxter, Director                                                April 14, 2008
Mrs. Rachel H. Jones, Mrs. Angela Jones
Mrs. Gina Avery
Department of Elections, City of Detroit
2978 West Grand Boulevard
Detroit, Michigan 48202

Re:     Military Personnel State-side and Abroad, Absentee Voter Ballot Mailings and Returns
        Follow Up to Letters of 2008: March 4th, March 13th; 2005: November 21st

First, I thank you for your replies and assistance on the above concern regarding the ability of
military personnel who are State-side or Abroad to participate in *all* elections.  Although
knowledge of how military voting should be handled is known and was discussed, I am
uncomfortable with the appropriate 2008 attention in the upcoming primary and general elections
of the August and November local, state and national elections because:

1) If an absentee ballot is returned undeliverable, there doesn't seem to be a follow-up
   process with the military drop mail location or liaison of the particular service unit
   regarding forwarding address (es) or corrective mailing procedure.

2) If a military person is stationed out-side of Michigan, U. S. Territories or the United
   States the ability to obtain, complete and submit:

   a. The Permanent Absentee Voter Application Request from the City of Detroit
      Department of Elections (goldenrod PABVAR) is not available on-line via the *City of
      Detroit Department of Elections (DDOE) website*, nor is the address of the
      Department of Elections listed on the form for easy return.

   b. The Federal Post Card Application (FPCA) to request an Absentee Ballot is not
      accessible on-line via the *DDOE website, thus one must* link to the Michigan
      Secretary of State Election section.  While this may seem acceptable, navigating
      through various websites other than the DDOE site is cumbersome.

      i.    The FPCA form can be printed and faxed into one's local Clerk's Office.
      ii.   The faxed FPCA must then be sent to the same office via mail-why?
      iii.  Once accepted, one cannot receive an Official BALLOT via fax nor return the
            Ballot via fax.... but,
      iv.   If a military or other person does not receive their Official Ballot that person
            may *cast their vote* using the *Federal Write-In Absentee Ballot but the
            guidelines as to the submission procedure of this Ballot do not exist on-line.*

Additionally, the *DDOE Website* (a) Does not offer clear nor concise information relating to
voter registration, (b) Absentee Voting Ballot Request, (c) Absentee Voting Ballot receipt and
submission, (d) The 45-day rule advance mailing of ballots for all military tagged-voting records,
(e) The 10-day window after the 8:00pm Poll Closing on the date of each election whether or not
the Military Ballot is received with a U.S.P.S. Postmark.

*Neither does the DDOE* website indicate the fact that an appropriate family member may deliver
an absentee ballot request on behalf of the requesting family member.  My initial letter of 2005
and letter of 2008 clearly indicated that the August and November 3-day advance and return
published dates are impossible and misleading but they continue to reside on Michigan websites.

USA_00064855

2

Mr. Daniel Baxter, Director, Mrs. Rachel H. Jones, Mrs. Angela Jones, Mrs. Gena Avery     April 13, 2008
Department of Elections, City of Detroit 2978 West Grand Boulevard Detroit, Michigan 48202

Re:     Military Personnel State-side and Abroad, Absentee Voter Ballot Mailings and Returns
        Follow Up to Letters of 2008, March 4th, March 13th; 2005, November 21st

As such, I again request that further sensitivity beyond knowing the regulations quickly improve through:

   I.   The *Detroit Department of Elections Website* being revised with the above revisions so that all information resides clearly within the website rather than linking to the site of another entity.

   II.   That a Military Registration and Voting Ballot Calendar is clearly defined and added to the website.

   III.   That a tally of all Registered Military voters (without disclosing location), a tally of all mailed military absentee forms and return responses, and a tally of all military ballot mailings and return responses via U.S. Mail are tallied for the past three local, state and national voting cycles to determine progressive gains.

   IV.   That a response procedure be established to account for returned military absentee ballots marked undeliverable.

   V.   Likewise, it behooves the Detroit Department of Elections as well as the State of Michigan to move toward the acceptance of ballots from Military Personnel via:

      (a) Facsimile
      (b) as an imaged attachment which provides an original signature with notary
      (c) and/or via e-mail attachment with a clear military address from the responding voter, and
      (d) likewise, for members of the military who are stationed in Peace-Keeping zones where multiple mailings/electronic access may not be allowed or limited, that an affidavit of a designated family member to whom they mail all correspondence be acceptable as an individual submitting a sealed Absentee Voting Ballot, and
      (e) that all Military personnel be allowed access via a secure site to submit the FPCA-Corresponding Ballot to their designated Clerk or Department of Elections via an electronic mechanism.

Until a less cumbersome method of securing Military personnel the ability to vote (absent the SERVE system) is instituted – the huge number of Michigan Military Residents who are unable to participate in the election of their representatives and Commander in Chief will continue to be severely diminished.

Again, Sincerely and Appreciatively,

*Chiquita McKenzie*

Chiquita McKenzie (visionaryyes@comcast.net)
313/268-9065

cc:    Mrs. Janice Winfrey, City Clerk-Detroit
      Mrs. Cathy Garrett, Wayne County Clerk
      City of Detroit Council Members

USA_00064856

April 24, 2008

**To:**   Media Outlets - Detroit-Metropolitan Area

**From** Chiquita McKenzie - visionaryyes@comcast.net // 313/268-9065
U.S. Postal Box 25217 Harper Woods, MI. 48225

**Re:**   Michigan Military Stationed Out-State or Abroad, Absentee Ballot Process
(Distribution, Timelines, Return, Ease in Participation, Centralized Information)

Dear Media Personnel,

Please find attached detailed letters from 2005 – 2008 on the above referenced items that I have been attempting to resolve with improvements. Such an issue required attention in 2005. As we are again in back-to-back elections years the issue continues to require attention. While I have spoken with the Department of Elections-Detroit on several occasions, the sensitivity to this issue seems to be lacking. I have also contacted various elected members at the State and National level who represent Michigan, as well as researching the number of Michigan Military personnel. During the year of 2005, I was able to find that approximately 800,000 persons in Michigan were prior or current members of the Military. Due to security and privacy reasons I have not been able to find out from each Military Unit the current number of Michigan Military stationed in specific locations but I have been able to find out the following:

**Michigan Army National Guard:** 9,000 to 9,200 active duty members with 1,438 deployed (note that numbers have also been cited at 9,120 to 11,900)
**Michigan Air National Guard:** 2,900 active duty members with 208 deployed
    < These Troops are deployed in the Balkans, Afghanistan or Iraq and other areas>

**U.S. Navy:** 8,269 Enlisted-Active members from Michigan
**U.S. Navy:** 684 Officers-Active members from Michigan
**U.S. Army:** 16,517 Active members
Responses from the **U. S. Air Force** and **U. S. Marine Core** indicated that they did not release information on active duty personnel, guard or reserve. The above count represents an approximate voting pool of 37,570 to 800,000 votes.

However, *the core issue is the lack of assurance that Michigan Military* stationed out-state or abroad cannot be assured an ease or central location from their home city regarding voting documents and a submission process. Yes, the current year election cycle is fast approaching and the beginning of resolutions has not been given appropriate consideration nor baseline correction. I am appreciative of your consideration to talk about, present a story, or help in achieving movement on the resolution of the issues presented in the attached letters.

USA_00064857

# City of Detroit
## DEPARTMENT OF ELECTIONS

DANIEL A. BAXTER, *Director*                    JANICE M. WINFREY, *City Clerk*                RACHEL H. JONES, *Deputy Director*
                                                *Chairperson, Election Commission*

*2978 W. Grand Blvd.*
*Detroit, Michigan 48202-3069*

*(313) 876-0190 Fax (313) 876-0053*

June 09, 2008

Chiquita McKenzie
P.O. Box 25217
Harper Woods, MI 48225

**RE:   Military Personnel State-side and Abroad, Absentee Voter Ballot Mailing
and Returns Follow-up to letters of 2008:  March 13th and November 21st**

Dear Ms. McKenzie:

In reference to your letter we received, the Department of Elections can only address a
few of your concerns, please keep in mind we can mandate changes from the local level
of government.

In respondence to your questions:

1.  According to the Department of Elections Standard Operating Procedure, if an
    Absentee Ballot is returned as undeliverable, there are two ways to seek
    assistance:

    A.  Fax the military voter's name, birth date, SSN and any addressing
        information on file for the voter to the Federal Voting Assistance
        Program (FVAP) in Washington D.C.

    B.  Call the FVAP office and ask to speak to a representative by calling a
        toll-free number to get any information needed to correct the problem
        with the ballot.

2.  √The Department is in the process of developing links to be added to the City of
    Detroit Department of Elections website, such as: Absentee Ballot Application,
    Voter Registration Application, Federal Post Card Application (FPCA) and
    Permanent AbsenteeVoter Application Request.  You will be able to print any
    one of these forms and fax it to our office for processing.

USA_00064858

3.  If a person is submitting a Federal Write-In Ballot use the guidelines according to the application. If you have any questions, consult your Unit Voting Assistance Officer or Embassy/Consulate Voting Assistance Officer, the *Voting Assistance Guide*, or http://www.fvap.gov.

4.  If you have any questions regarding the 45-day rule of mailing advance ballots, and the 10-day window after 8:00 p.m., please contact the Federal Voting Assistance Program. A letter was sent to Honorable Terri Lynn Land, Secretary of State from the Deputy Director of the Federal Voting Assistance Program in regards to your concerns. For more information log onto the http://www.fvap.gov website and search for the Legislative Initiatives ( See attachments).

5.  On the back of our Absentee Voter Ballot Application it clearly states the requirements of the delivery of the application by 1 of the following methods:

    (a) Place the application in an envelope addressed to the appropriate clerk and place the necessary postage upon the return envelope and deposit it in the United States mail or with another public postal service, express mail service, parcel post service, or common center.

    (b) Deliver the application personally to the office of the clerk, to the clerk, or to an authorized assistant of the clerk.

    (c) In either (a) or (b), a member of the immediate family of the voter including a father-in-law, mother-in-law, brother-in-law, sister-in-law, daughter-in-law, grandparent, or grandchild or a person residing in the voter's household may mail or deliver the application to the clerk for the applicant.

    (d) In the event an applicant cannot return the application in any of the above methods, the applicant may select any registered elector to return the application.

I hope the City of Detroit Department of Elections have addressed all of your concerns. If you have any questions, please give me a call at 313-876-0847.

**Department of Elections**

Sincerely yours,

*Gina Avery*

Gina Avery, Manager REG/SP

Cc: Rachel Jones, Deputy Director of Elections

USA_00064859