# U.S. ELECTION ASSISTANCE COMMISSION



Election Crimes:  An Initial Review and
Recommendations for Future Study

December 2006



REPORT

2:13-cv-193
09/02/2014

DEF2539



DEPOSITION
EXHIBIT
Slusher 17
Sylvia Kerr, CSR, CRR, RPR, TCRR



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

# EXECUTIVE SUMMARY

The Help America Vote Act of 2002 (HAVA) requires the U.S. Election Assistance Commission (EAC) to study a host of topics, including "voting fraud" and "voter intimidation."  In 2005, EAC embarked on an initial review of the existing knowledge of voting fraud and voter intimidation.  The goal of that study was to develop a working definition of "voting fraud" and "voter intimidation" and to identify research methodology to conduct a comprehensive, nationwide study of these topics.

EAC staff along with two, bipartisan consultants reviewed the existing information available about voting fraud and voter intimidation, including reading articles, books and reports; interviewing subject matter experts; reviewing media reports of fraud and intimidation; and studying reported cases of prosecutions of these types of crimes.  It is clear from this review that there is a great deal of debate on the pervasiveness of fraud in elections as well as what constitute the most common acts of fraud or intimidation.  There is also no apparent consensus on the meaning of the phrases "voting fraud" and "voter intimidation."  Some think of voting fraud and voter intimidation only as criminal acts, while others include actions that may constitute civil wrongs, civil rights violations, and even legal activities.

In order to facilitate future study of these topics, EAC developed a working definition of "election crimes."  "Election crimes" are intentional acts or willful failures to act, prohibited by state or federal law, that are designed to cause ineligible persons to participate in the election process; eligible persons to be excluded from the election process; ineligible votes to be cast in an election; eligible votes not to be cast or counted; or other interference with or invalidation of election results.  Election crimes generally fall into one of four categories:  acts of deception, acts of coercion, acts of damage or destruction, and failures or refusals to act.

From EAC's review of existing information on the issue, it was apparent that there have been a number of studies that touched on various topics and regions of the country concerning voting fraud and intimidation, but that there had never been a comprehensive, nationwide study of these topics.  EAC will conduct further research to provide a comprehensive, nationwide look at "election crimes."  Future EAC study of this topic will focus on election-related, criminal activity and will not include acts that are exclusively civil wrongs, campaign finance violations, and violations of ethical laws and regulations.  EAC will study these concepts by surveying the states' chief election officials about complaints they received, election crime investigation units regarding complaints received and those referred to law enforcement, and law enforcement and prosecutorial agencies regarding complaints received, charges filed, and final disposition of each complaint.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
*Page 1*



**U.S. Election Assistance Commission**
**Election Crimes: An Initial Review and Recommendations for Future Study**

**December 2006**

# INTRODUCTION

Voting fraud and voter intimidation are phrases familiar to many voting-aged Americans. However, they mean different things to different people. Voting fraud and voter intimidation are phrases used to refer to crimes, civil rights violations, and, at times, even the lawful application of state or federal laws to the voting process. Past study of these topics has been as varied as its perceived meaning. In an effort to help understand the realities of voting fraud and voter intimidation in our elections, the U.S. Election Assistance Commission (EAC) has begun this, phase one, of a comprehensive study on election crimes. In this phase of its examination, EAC has developed a working definition of election crimes and adopted research methodology on how to assess the existence and enforcement of election crimes in the United States.

## PURPOSE AND METHODOLOGY OF THE EAC STUDY

Section 241 of the Help America Vote Act of 2002 (HAVA) calls on the EAC to research and study various issues related to the administration of elections. During Fiscal Year 2006, EAC began projects to research several of the listed topics. These topics for research were chosen in consultation with the EAC Standards Board and Board of Advisors. Voting fraud and voter intimidation are topics that the EAC as well as its advisory boards felt were important to study to help improve the administration of elections for federal office.

EAC began this study with the intention of identifying a common understanding of voting fraud and voter intimidation and devising a plan for a comprehensive study of these issues. The initial study was not intended to be a comprehensive review of existing voting fraud and voter intimidation actions, laws, or prosecutions. To conduct that type of extensive research, a basic understanding had to first be established regarding what is commonly referred to as voting fraud and voter intimidation. Once that understanding was reached, a definition had to be crafted to refine and in some cases limit the scope of what reasonably can be researched and studied as evidence of voting fraud and voter intimidation. That definition will serve as the basis for recommending a plan for a comprehensive study of the area.

To accomplish these tasks, EAC employed two consultants, Job Serebrov and Tova Wang,[1] who worked with EAC staff and interns to conduct the research that forms the basis of this report. The consultants were chosen based upon their experience with the topic and the need to assure a bipartisan representation in this study. The consultants and EAC staff were charged with (1) researching the current state of information on the topic

---

[1] Biographies for Job Serebrov and Tova Wang, the two consultants hired by EAC, are attached as Appendix "1".

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 2



**U.S. Election Assistance Commission**
**Election Crimes: An Initial Review and Recommendations for Future Study**

**December 2006**

of voting fraud and voter intimidation; (2) developing a uniform definition of voting fraud and voter intimidation; and (3) proposing recommended strategies for researching this subject.

EAC consultants reviewed existing studies, articles, reports and case law on voting fraud and intimidation and conducted interviews with experts in the field. EAC consultants and staff then presented their initial findings to a working group that provided feedback. The working group participants were:

**The Honorable Todd Rokita**
Indiana Secretary of State
Member, EAC Standards Board and the
Executive Board of the Standards Board

**Kathy Rogers**
Georgia Director of Elections, Office of
the Secretary of State
Member, EAC Standards Board

**J.R. Perez**
Guadalupe County Elections
Administrator, Texas

**Barbara Arnwine**
Executive Director, Lawyers Committee
for Civil Rights under Law
Leader of Election Protection Coalition

**Benjamin L. Ginsberg**
Partner, Patton Boggs LLP
Counsel to National Republican
Campaign Committees and Republican
candidates

**Robert Bauer**
Chair of the Political Law Practice at the
law firm of Perkins Coie, District of
Columbia
National Counsel for Voter Protection,
Democratic National Committee

**Mark (Thor) Hearne II**
Partner-Member, Lathrop & Gage, St
Louis, Missouri
National Counsel to the American
Center for Voting Rights

**Barry Weinberg**
Former Deputy Chief and Acting Chief,
Voting Section, Civil Rights Division,
U.S. Department of Justice

*Technical Advisor:*
**Craig Donsanto**
Director, Election Crimes Branch, U.S.
Department of Justice

Throughout the process, EAC staff assisted the consultants by providing statutes and cases on this subject as well as supervision on the direction, scope and product of this research.

The consultants drafted a report for EAC that included their summaries of relevant cases, studies and reports on voting fraud and voter intimidation as well as summaries of the interviews that they conducted. The draft report also provided a definition of voting fraud and intimidation and made certain recommendations developed by the consultants

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 3



**U.S. Election Assistance Commission**
**Election Crimes: An Initial Review and Recommendations for Future Study**

**December 2006**

or by the working group on how to pursue further study of this subject. This document was vetted and edited by EAC staff to produce this final report.

# EXISTING INFORMATION ABOUT FRAUD AND INTIMIDATION

To begin our study of voting fraud and voter intimidation, EAC consultants reviewed the current body of information on voting fraud and voter intimidation. The information available about these issues comes largely from a very limited body of reports, articles, and books. There are volumes of case law and statutes in the various states that also impact our understanding of what actions or inactions are legally considered fraud or intimidation. Last, there is anecdotal information available through media reports and interviews with persons who have administered elections, prosecuted fraud, and studied these problems. All of these resources were used by EAC consultants to provide an introductory look at the available knowledge of voting fraud and voter intimidation.

### Reports and Studies of Voting fraud and Intimidation

Over the years, there have been a number of studies conducted and reports published about voting fraud and voter intimidation. EAC reviewed many of these studies and reports to develop a base-line understanding of the information that is currently available about voting fraud and voter intimidation. EAC consultants reviewed the following articles, reports and books, summaries of which are available in Appendix "2":

#### Articles and Reports

- People for the American Way and the NAACP, "The Long Shadow of Jim Crow," December 6, 2004.

- Laughlin McDonald, "The New Poll Tax," *The American Prospect* vol. 13 no. 23, December 30, 2002.

- Wisconsin Legislative Audit Bureau, "An Evaluation: Voter Registration Elections Board" Report 05-12, September, 2005.

- Milwaukee Police Department, Milwaukee County District Attorney's Office, Federal Bureau of Investigation, United States Attorney's Office "Preliminary Findings of Joint Task Force Investigating Possible Election Fraud," May 10, 2005.

- National Commission on Federal Election Reform, "Building Confidence in U.S. Elections," Center for Democracy and Election Management, American University, September 2005.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 4



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

- The Brennan Center for Justice at NYU School of Law and Spencer Overton, Commissioner and Law Professor at George Washington University School of Law "Response to the Report of the 2005 Commission on Federal Election Reform," September 19, 2005.

- Chandler Davidson, Tanya Dunlap, Gale Kenny, and Benjamin Wise, "Republican Ballot Security Programs: Vote Protection or Minority Vote Suppression – or Both?" A Report to the Center for Voting Rights & Protection, September, 2004.

- Alec Ewald, "A Crazy Quilt of Tiny Pieces: State and Local Administration of American Criminal Disenfranchisement Law," The Sentencing Project, November 2005.

- American Center for Voting Rights "Vote Fraud, Intimidation and Suppression in the 2004 Presidential Election," August 2, 2005.

- The Advancement Project, "America's Modern Poll Tax: How Structural Disenfranchisement Erodes Democracy" November 7, 2001

- The Brennan Center and Professor Michael McDonald "Analysis of the September 15, 2005 Voting Fraud Report Submitted to the New Jersey Attorney General," The Brennan Center for Justice at NYU School of Law, December 2005.

- Democratic National Committee, "Democracy at Risk: The November 2004 Election in Ohio," DNC Services Corporation, 2005

- Public Integrity Section, Criminal Division, United States Department of Justice, "Report to Congress on the Activities and Operations of the Public Integrity Section for 2002."

- Public Integrity Section, Criminal Division, United States Department of Justice, "Report to Congress on the Activities and Operations of the Public Integrity Section for 2003."

- Public Integrity Section, Criminal Division, United States Department of Justice, "Report to Congress on the Activities and Operations of the Public Integrity Section for 2004."

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 5



**U.S. Election Assistance Commission**
**Election Crimes: An Initial Review and Recommendations for Future Study**

**December 2006**

- Craig Donsanto, "The Federal Crime of Election Fraud," Public Integrity Section, Department of Justice, prepared for Democracy.Ru, n.d., at http://www.democracy.ru/english/library/international/eng_1999-11.html

- People for the American Way, Election Protection 2004, Election Protection Coalition, at http://www.electionprotection2004.org/edaynews.htm

- Craig Donsanto, "Prosecution of Electoral Fraud under United State Federal Law," *IFES Political Finance White Paper Series*, IFES, 2006.

- General Accounting Office, "Elections: Views of Selected Local Election Officials on Managing Voter Registration and Ensuring Eligible Citizens Can Vote," Report to Congressional Requesters, September 2005.

- Lori Minnite and David Callahan, "Securing the Vote: An Analysis of Election Fraud," Demos: A Network of Ideas and Action, 2003.

- People for the American Way, NAACP, Lawyers Committee for Civil Rights, "Shattering the Myth: An Initial Snapshot of Voter Disenfranchisement in the 2004 Elections," December 2004.

**Books**

- John Fund, *Stealing Elections: How Voting Fraud Threatens Our Democracy*, Encounter Books, 2004.

- Andrew Gumbel, *Steal this Vote: Dirty Elections and the Rotten History of Democracy in American*, Nation Books, 2005.

- Tracy Campbell, *Deliver the Vote: A History of Election Fraud, An American Political Tradition – 1742-2004*, Carroll & Graf Publishers, 2005.

- David E. Johnson and Jonny R. Johnson, *A Funny Thing Happened on the Way to the White House: Foolhardiness, Folly, and Fraud in the Presidential Elections, from Andrew Jackson to George W. Bush*, Taylor Trade Publishing, 2004.

- Mark Crispin Miller, *Fooled Again*, Basic Books, 2005.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 6



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

During our review of these documents, we learned a great deal about the type of research that has been conducted in the past concerning voting fraud and voter intimidation.  None of the studies or reports was based on a comprehensive, nationwide study, survey or review of all allegations, prosecutions or convictions of state or federal crimes related to voting fraud or voter intimidation in the United States.  Most reports focused on a limited number of case studies or instances of alleged voting fraud or voter intimidation.  For example, "Shattering the Myth: An Initial Snapshot of Voter Disenfranchisement in the 2004 Elections," a report produced by the People for the American Way, focused exclusively on citizen reports of fraud or intimidation to the Election Protection program during the 2004 Presidential election.  Similarly, reports produced annually by the Department of Justice, Public Integrity Division, deal exclusively with crimes reported to and prosecuted by the United States Attorneys and/or the Department of Justice through the Public Integrity Section.

It is also apparent from a review of these articles and books that there is no consensus on the pervasiveness of voting fraud and voter intimidation.  Some reports, such as "Building Confidence in U.S. Elections," suggest that there is little or no evidence of extensive fraud in U.S. elections or of multiple voting.  This conflicts directly with other reports, such as the "Preliminary Findings of Joint Task Force Investigating Possible Election Fraud," produced by the Milwaukee Police Department, Milwaukee County District Attorney's Office, FBI and U.S. Attorney's Office.  That report cited evidence of more than 100 individual instances of suspected double-voting, voting in the name of persons who likely did not vote, and/or voting using a name believed to be fake.

Voter intimidation is also a topic of some debate because there is little agreement concerning what constitutes actionable voter intimidation.  Some studies and reports cover only intimidation that involves physical or financial threats, while others cover non-criminal intimidation, including legal practices that allegedly cause vote suppression.

One point of agreement is that absentee voting and voter registration by nongovernmental groups create opportunities for fraud.  For example, a number of studies cited circumstances in which voter registration drives have falsified voter registration applications or have destroyed voter registration applications of persons affiliated with a certain political party.  Others conclude that paying persons per voter registration application creates the opportunity and perhaps the incentive for fraud.

### Interviews with Experts

In addition to reviewing prior studies and reports on voting fraud and intimidation, EAC consultants interviewed a number of persons regarding their experiences and research of voting fraud and voter intimidation.  Persons interviewed included:

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 7

 **U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

**Wade Henderson**
Executive Director,
Leadership Conference for Civil Rights

**Wendy Weiser**
Deputy Director,
Democracy Program, The Brennan
Center

**William Groth**
Attorney for the plaintiffs in the Indiana
voter identification litigation

**Lori Minnite**
Barnard College, Columbia University

**Neil Bradley**
ACLU Voting Rights Project

**Pat Rogers**
Attorney, New Mexico

**Nina Perales**
Counsel,
Mexican American Legal Defense and
Education Fund

**Rebecca Vigil-Giron**
Secretary of State, New Mexico

**Sarah Ball Johnson**
Executive Director,
State Board of Elections, Kentucky

**Stephen Ansolobohere**
Massachusetts Institute of Technology

**Chandler Davidson**
Rice University

**Tracey Campbell**
Author, *Deliver the Vote*

**Douglas Webber**
Assistant Attorney General, Indiana

**Heather Dawn Thompson**
Director of Government Relations,
National Congress of American Indians

**Jason Torchinsky**
Assistant General Counsel,
American Center for Voting Rights

**Robin DeJarnette**
Executive Director,
American Center for Voting Rights

**Harry Van Sickle**
Commissioner of Elections,
Pennsylvania

**Tony Sirvello**
Executive Director
International Association of Clerks,
Recorders, Election Officials and
Treasurers

**Joseph Sandler**
Counsel
Democratic National Committee

**John Ravitz**
Executive Director
New York City Board of Elections

**Sharon Priest**
Former Secretary of State, Arkansas

**Kevin Kennedy**
Executive Director
State Board of Elections, Wisconsin

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 8



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

| | |
|---|---|
| **Evelyn Stratton** | **Craig Donsanto** |
| Justice | Director, Public Integrity Section |
| Supreme Court of Ohio | U.S. Department of Justice |
| | |
| **Joseph Rich** | **John Tanner** |
| Former Director | Chief |
| Voting Section, Civil Rights Division | Voting Section, Civil Rights Division |
| U.S. Department of Justice | U.S. Department of Justice |

These interviews in large part confirmed the conclusions that were gleaned from the articles, reports and books that were analyzed.  For example, the interviewees largely agreed that absentee balloting is subject to the greatest proportion of fraudulent acts, followed by vote buying and voter registration fraud.  They similarly pointed to voter registration drives by nongovernmental groups as a source of fraud, particularly when the workers are paid per registration.  Many asserted that impersonation of voters is probably the least frequent type of fraud because it is the most likely type of fraud to be discovered, there are stiff penalties associated with this type of fraud, and it is an inefficient method of influencing an election.

Interviewees differed on what they believe constitutes actionable voter intimidation.  Law enforcement and prosecutorial agencies tend to look to the criminal definitions of voter intimidation, which generally require some threat of physical or financial harm.  On the other hand, voter rights advocates tended to point to activities such as challenger laws, voter identification laws, polling place locations, and distribution of voting machines as activities that can constitute voter intimidation.

Those interviewed also expressed opinions on the enforcement of voting fraud and voter intimidation laws.  States have varying authorities to enforce these laws.  In some states, enforcement is left to the county or district attorney, and in others enforcement is managed by the state's attorney general.  Regardless, voting fraud and voter intimidation are difficult to prove and require resources and time that many local law enforcement and prosecutorial agencies do not have.  Federal law enforcement and prosecutorial agencies have more time and resources but have limited jurisdiction and can only prosecute election crimes perpetrated in elections with a federal candidate on the ballot or perpetrated by a public official under the color of law.  Those interviewed differed on the effectiveness of the current system of enforcement.  Some allege that prosecutions are not sufficiently aggressive.  Others feel that the current laws are sufficient for prosecuting fraud and intimidation.

A summary of the each of the interviews conducted is attached as Appendix "3".

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 9



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

## Case Law and Statutes

Consultants reviewed more than 40,000 cases that were identified using a series of search terms related to voting fraud and voter intimidation.   The majority of these cases came from courts of appeal.  This is not surprising, since most cases that are publicly reported come from courts of appeal.  Very few cases that are decided at the district court level are reported for public review.

Very few of the identified cases were applicable to this study.  Of those that were applicable, no apparent thematic pattern emerged.  However, it did seem that the greatest number of cases reported on fraud and intimidation have shifted from past patterns of stealing votes to present problems with voter registration, voter identification, the proper delivery and counting of absentee and overseas ballots, provisional voting, vote buying, and challenges to felon eligibility.

A listing of the cases reviewed in this study is attached as Appendix "4".

## Media Reports

EAC consultants reviewed thousands of media reports concerning a wide variety of potential voting fraud or voter intimidation, including:

- absentee ballot fraud,
- voter registration fraud,
- voter intimidation and suppression,
- deceased voters on voter registration list and/or voting,
- multiple voting,
- felons voting,
- non-citizens voting,
- vote buying,
- deceptive practices, and
- fraud by election officials.

While these reports showed that there were a large number of allegations of voting fraud and voter intimidation, they provided much less information as to whether the allegations were ever formalized as complaints to law enforcement, whether charges were filed, whether prosecutions ensued, and whether any convictions were made.  The media reports were enlightening regarding the pervasiveness of complaints of fraud and intimidation throughout the country, the correlation between fraud allegations and the perception that the state was a "battleground" or "swing" state, and the fact that there were reports of almost all types of voting fraud and voter intimidation.  However, these

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 10



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

reports do not provide much data for analysis as to the number of complaints, charges and prosecutions of voting fraud and intimidation throughout the country.

# DEFINITION OF ELECTION CRIMES

From this study of available information on voting fraud and voter intimidation, EAC has learned that these terms mean many things to many different people.  These terms are used casually to refer to anything from vote buying to refusing to register a voter to falsifying voter registration applications.   Upon further inspection, however, it is apparent that there is no common understanding or agreement of what constitutes "voting fraud" and "voter intimidation."  Some think of voting fraud and voter intimidation only as criminal acts, while others include actions that may constitute civil wrongs, civil rights violations, and even legal activities.  To arrive at a common definition and list of activities that can be studied, EAC assessed the appropriateness of the terminology that is currently in use and applied certain factors to limit the scope and reach of what can and will be studied by EAC in the future.  As a result, EAC has adopted the use of the term "election crimes" for its future study.

## Current Terminology

The phrase "voting fraud" is really a misnomer for a concept that is much broader. "Fraud" is a concept that connotes an intentional act of deception, which may constitute either a criminal act or civil tort depending upon the willfulness of the act.

> **Fraud, n. 1.** A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment.  • Fraud is usu[ally] a tort, but in some cases (esp. when the conduct is willful) it may be a crime.

Black's Law Dictionary, Eighth Edition, p. 685.

"Voting" is the act of casting votes to decide an issue or contest.  Black's Law Dictionary, Eighth Edition, p. 1608.  Using these terms to form a definition of "voting fraud," it means fraudulent or deceptive acts committed to influence the act of voting. Thus, a voter who intentionally impersonates another registered voter and attempts to vote for that person would be committing "voting fraud."  Similarly, a person who knowingly provides false information to a voter about the location of the voter's polling place commits fraud on the voter.

The phrase "voting fraud" does not capture a myriad of other criminal acts that are related to elections which are not related to the act of voting and/or do not involve an act of deception.  For example, "voting fraud" does not capture actions or willful inaction in the voter registration process.  When an election official willfully and knowingly refuses

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 11



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

to register to vote a legally eligible person it is a crime.  This is a crime that involves neither the act of voting nor an act of deception.

To further complicate matters, the phrases "voting fraud" and "voter intimidation" are used to refer to actions or inactions that are criminal as well as those that are potentially civil wrongs and even those that are legal.  Obviously, criminal acts and civil wrongs are pursued in a very different manner.  Criminal acts are prosecuted by the local, state or federal government.  Generally, civil wrongs are prosecuted by the individual who believes that they were harmed.  In some cases, when civil rights are involved, the Civil Rights Division of the Department of Justice may become involved.

**New Terminology**

The goal of this study was to develop a common definition of what is generically referred to as "voting fraud" and "voter intimidation" that would serve as the basis for a future, comprehensive study of the existence of these problems.  Because the current terminology has such a variety of applications and meanings, "voting fraud" and "voter intimidation" can be read to encompass almost any bad act associated with an election.  Such broad terminology is not useful in setting the boundaries of a future study.  A definition must set parameters for future study by applying limitations on what is included in the concepts to be studied.  The current terminology applies no such limitations.

Thus, EAC has adopted the use of the phrase "election crimes" to limit the scope of its future study.  This term captures all crimes related to the voter registration and voting processes and excludes civil wrongs and non-election related crimes.  EAC adopted this definition because it better represents the spectrum of activities that we are able to and desire to study.  In addition, EAC recognizes that the resources, both financial and human capital, needed to study all "voting fraud" and "voter intimidation," including criminal acts, civil actions, as well as allegations of voter suppression through the use of legal election processes are well beyond the resources available to EAC.  Finally, by limiting this definition to criminal acts, EAC can focus its study on a set of more readily measurable data.  Criminal behavior is readily defined through state and federal statutes and is prosecuted by government agencies.  This is not the case with civil matters.  Civil actions can be prosecuted by individuals and/or government entities.  Furthermore, what constitutes civil action is far less defined, subject to change, and can vary from case to case.  A more complete discussion of the concept of "election crimes" follows along with a list of excluded actions.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 12



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

## The Definition of an Election Crime for Purposes of this Study

Election crimes are intentional acts or willful failures to act, prohibited by state or federal law, that are designed to cause ineligible persons to participate in the election process; eligible persons to be excluded from the election process; ineligible votes to be cast in an election; eligible votes not to be cast or counted; or other interference with or invalidation of election results.  Election crimes generally fall into one of four categories:  acts of deception, acts of coercion, acts of damage or destruction, and failures or refusals to act.

Election crimes can be committed by voters, candidates, election officials, or any other members of the public who desire to criminally impact the result of an election. However, crimes that are based upon intentional or willful failure to act assume that a duty to act exists.  Election officials have affirmative duties to act with regard to elections.  By and large, other groups and individuals do not have such duties.

The victim of an election crime can be a voter, a group of voters, an election official, a candidate, or the public in general.  Election crimes can occur during any stage of the election process, including but not limited to qualification of candidates; voter registration; campaigning; voting system preparation and programming; voting either early, absentee, or on election day; vote tabulation; recounts; and recalls.

The following are examples of activities that may constitute election crimes.  This list is not intended to be exhaustive, but is representative of what states and the federal government consider criminal activity related to elections.

### *Acts of Deception*

- o   Knowingly causing to be mailed or distributed, or knowingly mailing or distributing, literature that includes false information about the voter's precinct or polling place, the date and time of the election or a candidate;
- o   Possessing an official ballot outside the voting location, unless the person is an election official or other person authorized by law or local ordinance to possess a ballot outside of the polling location;
- o   Making or knowingly possessing a counterfeit of an official election ballot;
- o   Signing a name other than his/her own to a petition proposing an initiative, referendum, recall, or nomination of a candidate for office;
- o   Knowingly signing more than once for the proposition, question, or candidate in one election;
- o   Signing a petition proposing an initiative or referendum when the signer is not a qualified voter.
- o   Voting or attempting to vote in the name of another person;
- o   Voting or attempting to vote more than once during the same election;

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 13



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

o  Intentionally making a false affidavit, swearing falsely, or falsely affirming under an oath required by a statute regarding their voting status, including when registering to vote, requesting an absentee ballot or presenting to vote in person;
o  Registering to vote without being entitled to register;
o  Knowingly making a materially false statement on an application for voter registration or re-registration; and
o  Voting or attempting to vote in an election after being disqualified or when the person knows that he/she is not eligible to vote.

*Acts of Coercion*

o  Using, threatening to use, or causing to be used force, coercion, violence, restraint, or inflicting, threatening to inflict, or causing to be inflicted damage harm, or loss, upon or against another person to induce or compel that person to vote or refrain from voting or to register or refrain from registering to vote;
o  Knowingly paying, offering to pay, or causing to be paid money or other thing of value to a person to vote or refrain from voting for a candidate or for or against an election proposition or question;
o  Knowingly soliciting or encouraging a person who is not qualified to vote in an election;
o  Knowingly challenging a person's right to vote without probable cause or on fraudulent grounds, or engaging in mass, indiscriminate, and groundless challenging of voters solely for the purpose of preventing voter from voting or to delay the process of voting;
o  As an employer, attempting by coercion, intimidation, threats to discharge or to lessen the remuneration of an employee, to influence his/her vote in any election, or who requires or demands an examination or inspection by himself/herself or another of an employee's ballot;
o  Soliciting, accepting, or agreeing to accept money or other valuable thing in exchange for signing or refraining from signing a petition proposing an initiative;
o  Inducing or attempting to induce an election official to fail in the official's duty by force, threat, intimidation, or offers of reward;
o  Directly or through any other person advancing, paying, soliciting, or receiving or causing to be advanced, paid, solicited, or received, any money or other valuable consideration to or for the use of any person in order to induce a person not to become or to withdraw as a candidate for public office; and
o  Soliciting, accepting, or agreeing to accept money or other thing of value in exchange for registering to vote.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
*Page 14*



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

### *Acts of Damage or Destruction*

o   Destroying completed voter registration applications;
o    Removing or destroying any of the supplies or other conveniences placed in the voting booths or compartments;
o   Removing, tearing down, or defacing election materials, instructions or ballots;
o   Fraudulently altering or changing the vote of any elector, by which such elector is prevented from voting as the person intended;
o   Knowingly removing, altering, defacing or covering any political sign of any candidate for public office for a prescribed period prior to and following the election;
o   Intentionally changing, attempting to change, or causing to be changed an official election document including ballots, tallies, and returns; and
o   Intentionally delaying, attempting to delay, or causing to be delayed the sending of certificate, register, ballots, or other materials whether original or duplicate, required to be sent by jurisdictional law.

### *Failure or Refusal to Act*

o   Intentionally failing to perform an election duty, or knowingly committing an unauthorized act with the intent to effect the election;
o   Knowingly permitting, making, or attempting to make a false count of election returns;
o   Intentionally concealing, withholding, or destroying election returns or attempts to do so;
o   Marking a ballot by folding or physically altering the ballot so as to recognize the ballot at a later time;
o   Attempting to learn or actually and unlawfully learning how a voter marked a ballot;
o   Distributing or attempting to distribute election material knowing it to be fraudulent;
o   Knowingly refusing to register a person who is entitled to register under the rules of that jurisdiction;
o   Knowingly removing the eligibility status of a voter who is eligible to vote; and
o   Knowingly refusing to allow an eligible voter to cast his/her ballot.

## What is not an Election Crime for Purposes of this Study

There are some actions or inactions that may constitute crimes or civil wrongs that EAC does not include in its definition of "election crimes."  All criminal or civil violations related to campaign finance contribution limitations, prohibitions, and reporting either at the state or federal level are not "election crimes" for purposes of this study and any

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 15

 **U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

future study conducted by EAC.  Similarly, criminal acts that are unrelated to elections, voting, or voter registration are not "election crimes," even when those offenses occur in a polling place, voter registration office, or a candidate's office or appearance.  For example, an assault or battery that results from a fight in a polling place or at a candidate's office is not an election crime.  Last, violations of ethical laws and regulations and the Hatch Act are not "election crimes."  Similarly, civil or other wrongs that do not rise to the level of criminal activity (i.e., a misdemeanor, relative felony or felony) are not "election crimes."

## RECOMMENDATIONS ON HOW TO STUDY ELECTION CRIMES

As a part of its study, EAC sought recommendations on ways that EAC can research the existence of election crimes.  EAC consultants, the working groups and some of the persons interviewed as a part of this study provided the following recommendations.

### *Recommendation 1:  Conduct More Interviews*

Future activity in this area should include conducting additional interviews.  In particular, more election officials from all levels of government, parts of the country, and political parties should be interviewed.   It would also be especially beneficial to talk to law enforcement officials, specifically federal District Election Officers ("DEOs") and local district attorneys, as well as civil and criminal defense attorneys.

### *Recommendation 2:  Follow Up on Media Research*

The media search conducted for this phase of the research was based on a list of search terms agreed upon by EAC consultants.  Thousands of articles were reviewed and hundreds analyzed.  Many of the articles contained allegations of fraud or intimidation.  Similarly, some of the articles contained information about investigations into such activities or even charges brought. Additional media research should be conducted to determine what, if any, resolutions or further activity there was in each case.

### *Recommendation 3:  Follow Up on Allegations Found in Literature Review*

Many of the allegations made in the reports and books that were analyzed and summarized by EAC consultants were not substantiated and were limited by the date of publication of those pieces.  Despite this, such reports and books are frequently cited by various interested parties as evidence of fraud or intimidation.  Further research should include follow up on the allegations identified in the literature review.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 16



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

---

*Recommendation 4:  Review Complaints Filed With " MyVote1" Voter Hotline*

During the 2004 election and the statewide elections of 2005, the University of
Pennsylvania led a consortium of groups and researchers in conducting the MyVote1
Project.  This project involved using a toll-free voter hotline that voters could call for poll
locations, be transferred to a local hotline, or leave a recorded message with a complaint.
In 2004, this resulted in more than 200,000 calls received and more than 56,000 recorded
complaints.

Further research should be conducted using the MyVote1 data with the cooperation of the
project leaders.  While perhaps not a fully scientific survey given the self-selection of the
callers, the information regarding 56,000 complaints may provide insight into the
problems voters may have experienced, especially issues regarding intimidation or
suppression.

*Recommendation 5:  Further Review of Complaints Filed With U.S. Department of
                    Justice*

According to a recent GAO report, the Voting Section of the Civil Rights Division of the
Department of Justice has a variety of ways it tracks complaints of voter intimidation.
Attempts should be made to obtain relevant data, including the telephone logs of
complaints and information from the Interactive Case Management (ICM) system.
Further research should also include a review and analysis of the Department of
Justice/Office of Personnel Management observer and "monitor field reports" from
Election Day.

*Recommendation 6:  Review Reports Filed By District Election Officers*

Further research should include a review of the reports that must be filed by every
District Election Officer (DEO) to the Public Integrity Section of the Criminal Division
of the Department of Justice.  The DEOs play a central role in receiving reports of voting
fraud and investigating and pursuing them.  Their reports back to the Department would
likely provide tremendous insight into what actually transpired during the last several
elections. Where necessary, information could be redacted or made confidential.

*Recommendation 7:  Attend Ballot Access and Voting Integrity Symposium*

Further activity in this area should include attending the next Ballot Access and Voting
Integrity Symposium. At this conference, prosecutors serving as District Election
Officers in the 94 U.S. Attorneys' Offices obtain annual training on fighting election
fraud and voting rights abuses. These conferences are sponsored by the Voting Section of
the Civil Rights Division and the Public Integrity Section of the Criminal Division, and

*This information is property of the U.S. Election Assistance Commission,
1225 New York Avenue, NW, Suite 1100, Washington, DC 20005
(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 17



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

December 2006

feature presentations by Civil Rights officials and senior prosecutors from the Public Integrity Section and the U.S. Attorneys' Offices. By attending the symposium researchers could learn more about the following: how District Election Officers are trained; how information about previous election and voting issues is presented; and how the Voting Rights Act, the criminal laws governing election fraud and intimidation, the National Voter Registration Act, and the Help America Vote Act are described and explained to participants.

### Recommendation 8:  Conduct Statistical Research

EAC should measure voting fraud and intimidation using interviews, focus groups, and a survey and statistical analysis of the results of these efforts.  The sample should be based on the following factors:

- o  Ten locations that are geographically and demographically diverse where there have been many reports of fraud and/or intimidation;
- o  Ten locations (geographically and demographically diverse) that have not had many reports of fraud and/or intimidation;

EAC should also conduct a survey of elections officials, district attorneys, and district election officers.  The survey sample should be large in order to be able to get the necessary subsets, and it must include a random set of counties where there have and have not been a large number of allegations.

### Recommendation 9:  Explore Improvements to Federal Law

Future research should review federal law to explore ways to make it easier to impose either civil or criminal penalties for acts of intimidation that do not necessarily involve racial animus and/or a physical or economic threat.

### Recommendation 10:  Use Observers to Collect Data on Election Day

Use observers to collect data regarding fraud and intimidation at the polls on Election Day.  There may be some limitations to the ability to conduct this type of research, including difficulty gaining access to polling places for the purposes of observation, and concerns regarding how the observers themselves may inadvertently or deliberately influence the occurrence of election crimes.

### Recommendation 11:  Study Absentee Ballot Fraud

Because absentee ballot fraud constitutes a large portion of election crimes, a stand-alone study of absentee ballot fraud should be conducted.  Researchers should look at actual

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 18



**U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

December 2006

cases to see how absentee ballot fraud schemes are conducted in an effort to provide recommendations on more effective measures for preventing fraud when absentee ballots are used.

### Recommendation 12:  Use Risk Analysis Methodology to Study Fraud

Conduct an analysis of what types of fraud people are most likely to commit. Researchers will use that risk analysis to rank the types of fraud based on the "ease of commission" and the impact of the fraud.

### Recommendation 13:  Conduct Research Using Database Comparisons

Researchers should compare information on databases to determine whether the voter rolls contain deceased persons and felons.  In addition, the voter rolls can then be compared with the list of persons who voted to determine whether a vote was recorded by someone who is deceased or if felons are noted as having voted.

### Recommendation 14:  Conduct a Study of Deceptive Practices

The working group discussed the increasing use of deceptive practices, such as flyers and phone calls with false and/or intimidating information, to suppress voter participation.  A number of groups, such as the Department of Justice, the EAC, and organizations such as the Lawyers Committee for Civil Rights, keep phone logs regarding complaints of such practices.  These logs should be reviewed and analyzed to see how and where such practices are being conducted and what can be done about them.

### Recommendation 15:  Study the Use of HAVA Administrative Complaint Procedure as Vehicle for Measuring Fraud and Intimidation

EAC should study the extent to which states are utilizing the administrative complaint procedure mandated by HAVA.  In addition, EAC should study whether data collected through the administrative complaint procedure can be used as another source of information for measuring fraud and intimidation.

### Recommendation 16:  Examine the Use of Special Election Courts

Given that many state and local judges are elected, it may be worth exploring whether special election courts should be established to handle fraud and intimidation complaints before, during, and after Election Day.  Pennsylvania employs such a system that could be investigated to determine how well that system is working.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
*Page 19*



U.S. Election Assistance Commission
**Election Crimes:  An Initial Review and Recommendations for Future Study**

December 2006

## Accepted Recommendations

There has never been a comprehensive, national study that gathered data regarding all claims, charges, and prosecutions of voting crimes.  EAC feels that a comprehensive study is the most important research that it can offer the election community and the public. As such, EAC has adopted all or a part of six of the 16 recommendations made by EAC consultants and the working group.

While several of the other recommendations could be used to obtain more anecdotal information regarding election crimes, EAC believes that what is needed is a comprehensive survey and study of the information available from investigatory agencies, prosecutorial bodies and courts on the number and types of complaints, charges and prosecutions of election crimes.  Additional media reviews, additional interviews and the use of observers to collect information from voters on Election Day will only serve to continue the use of anecdotal data to report on election crimes.  Hard data on complaints, charges and prosecutions exists and EAC should gather and use that data, rather than rely on the perceptions of the media or the members of the public as to what might be fraud or intimidation.

Some of the recommendations are beyond the scope of the current study.  While election courts may be a reasonable conclusion to reach after EAC determines the volume and type of election crimes being reported, charged or prosecuted, it is premature to embark on an analysis of that solution without more information.   Last, some of the recommendations do not support a comprehensive study of election crimes.  While a risk analysis might be appropriate in a smaller scale study, EAC desires to conduct a broader survey to avoid the existing problem of anecdotal and limited scope of information.

In order to further its goal of developing a comprehensive data set regarding election crimes and the laws and procedures used to identify and prosecute them, EAC intends to engage in the following research activities in studying the existence and enforcement of election crimes:

### *Survey Chief Election Officers Regarding Administrative Complaints*

Likely sources of complaints concerning election crimes are the administrative complaint processes that states were required to establish to comply with Section 402 of HAVA.  These complaint procedures were required to be in place prior to a state receiving any funds under HAVA.  Citizens are permitted to file complaints alleging violations of HAVA Title III provisions under these procedures with the state's chief election official.  Those complaints must be resolved within 60 days.  The procedures also allow for alternative dispute resolution of claims.  Some states have expanded this process to include complaints of other violations, such as election crimes.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 20

 **U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

**December 2006**

In order to determine how many of these complaints allege the commission of election crimes, EAC will survey the states' chief election officers regarding complaints that have been filed, investigated, and resolved since January 1, 2004.  In addition, we will seek information about any complaints of fraud or intimidation filed with the election official outside of the administrative complaint procedure.  EAC will use the definition of election crimes provided above in this report in its survey so that data regarding a uniform set of offenses will be collected.

### Survey State Election Crime Investigation Units Regarding Complaints Filed and Referred

Several chief state election officials have developed investigation units focused on receiving, investigating, and referring complaints of election crimes.  These units were established to bolster the abilities of state and local law enforcement to investigate allegations of election crimes.  California, New York and Florida are just three examples of states that have these types of units.

EAC will use a survey instrument to gather information on the numbers and types of complaints that have been received by, investigated, and ultimately referred to local or state law enforcement by election crime investigation units since January 1, 2004.  These data will help EAC understand the pervasiveness of perceived fraud, as well as the number of claims that state election officials felt were meritorious of being referred to local and state law enforcement or prosecutorial agencies for further action.

### Survey Law Enforcement and Prosecutorial Agencies Regarding Complaints and Charge of Voting Crimes

While voters, candidates and citizens may call national hotlines or the news media to report allegations of election crimes, it is those complaints that are made to law enforcement that can be investigated and ultimately prosecuted.  Thus, it is critical to the study of election crimes to obtain statistics regarding the number and types of complaints that are made to law enforcement, how many of those complaints result in the perpetrator being charged or indicted, and how many of those charges or indictments result in pleas or convictions.

Thus, EAC will survey law enforcement and prosecutorial agencies at the local, state and federal level to determine the number and types of complaints, charges or indictments, and pleas or convictions of election crimes since January 1, 2004.  In addition, EAC will seek to obtain an understanding of why some complaints are not charged or indicted and why some charges or indictments are not prosecuted.

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 21

 **U.S. Election Assistance Commission**
**Election Crimes:  An Initial Review and Recommendations for Future Study**

December 2006

---

### *Analyze Survey Data in Light of State Laws and Procedures*

Once a reliable data set concerning the existence and enforcement of election crimes is assembled, a real analysis of the effectiveness of fraud prevention measures can be conducted.  For example, data can be analyzed to determine if criminal activities related to elections are isolated to certain areas or regions of the country.  Data collected from the election official surveys can be compared to the data regarding complaints, charges and prosecutions gathered from the respective law enforcement and prosecutorial agencies in each jurisdiction.  The effect and/or effectiveness of provisions such as voter identification laws and challenger provisions can be assessed based on hard data from areas where these laws exist.  Last, analyses such as the effectiveness of enforcement can be conducted in light of the resources available for the effort.

## CONCLUSION

Election crimes are nothing new to our election process.  The pervasiveness of these crimes and the fervor with which they have been enforced has created a great deal of debate among academics, election officials, and voters.  Past studies of these issues have been limited in scope and some have been riddled with bias.   These are issues that deserve comprehensive and nonpartisan review.  EAC, through its clearinghouse role, will collect and analyze data on election crimes throughout the country.  These data not only will tell us what types of election crimes are committed and where fraud exists, but also inform us of what factors impact the existence, prevention, and prosecution of election crimes.

---

*This information is property of the U.S. Election Assistance Commission,*
*1225 New York Avenue, NW, Suite 1100, Washington, DC 20005*
*(202) 566-3100 (p), (202) 566-3127 (f), www.eac.gov*
Page 22