**Katie O'Brien**

| | |
|---|---|
| **From:** | Harold Cook <hc@haroldcook.com> |
| **Sent:** | Tuesday, September 13, 2011 8:24 AM |
| **To:** | Sondra Haltom |
| **Subject:** | DEM CAUCUS: DoJ Letter - TDP |
| **Attachments:** | DOJ letter - final.docx; ATT00001.htm |
| **Importance:** | High |

**Attention voting rights/voter ID policy staff, General Counsels, members:**

Texas Democratic Party has researched and written an "everything but the kitchen sink" objection letter in reaction to the voter ID law which they would like to send to the Department of Justice. They are asking Democratic House members and Senators to consider adding their names to the letter.

Since they would like to email this letter by 5 pm today, if your member agrees to sign onto this letter (preferably via electronic sig, since time is short), **please "reply to all" by 2 pm today**, so that both Sondra Haltom at TDP and I can know to include you, and so she and I can work out the logistics of your Senator's signature.

Because of a communication sent by DoJ to the South Carolina Attorney General requiring additional information regarding pre-clearance of their voter ID law, there is reason for cautious optimism regarding DoJ's attitude regarding Sec. 5 pre-clearance of Texas' voter ID law, so any additional objections received from Texans cannot hurt, and might very well be helpful, so I would recommend that Senators lend their signatures to this effort.

The letter is attached.

Begin forwarded message:

**From:** Sondra Haltom <shaltom@txdemocrats.org>
**Subject: FINAL copy of our DOJ letter**
**Date:** September 12, 2011 5:28:30 PM CDT
**To:** "Harold Cook (hc@haroldcook.com)" <hc@haroldcook.com>, Clifton Walker <cliff.w.walker@gmail.com>, "Roger Garza (roger.garza@gmail.com)" <roger.garza@gmail.com>

Gentlemen,

Attached is the final version of our letter to DOJ as approved by all our powers that be (including our legal counsel). Thank you for all your help tracking down info. I would like to send this plus copies of all the supporting docs to DOJ via email by 5pm tomorrow with a hard copy to follow. I would greatly appreciate if you could encourage your members allow us to add their names to it. If they've got digital signatures we can use that's super. If not, we'll figure it out. I will also be working on getting signatures from our SDEC members who represent minority constituencies. The more the merrier, but time is of the essence.

Please let me know if that request is do-able.

1

2:13-cv-193
09/02/2014
**DEF2654**

KPW-PRIV000304

Sondra Haltom
Political Director
Texas Democratic Party
505 West 12th Street, Suite 200
512-478-9800 phone
512-480-2500 fax

Support the Texas Democratic Party by becoming a Texas Majority Builder at www.txdemocrats.org

Mr. T. Christian Herren, Jr.
Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530

Dear Mr. Herren,

The Texas Secretary of State's office recently submitted for pre-clearance SB 14, which imposes strict photo I.D. requirements for voting. The people most likely to not have the types of identification required by this legislation are African Americans, Latinos, Asians, women, students, the elderly, disabled voters, low-income voters, and veterans. We are writing to strongly urge you not to grant pre-clearance to this legislation on the grounds that it not only violates Section 2, 5 and 10 of the Voting Rights Act, we believe it to be in violation of the 14th, 15th, 19th, 24th, and 26th Amendments to the Constitution. While the burden of proof is on the state to show that the legislation will not have the effect of denying or abridging the right to vote on account of race or color, and to date they have provided no evidence of which we are aware that proves this, we feel it is our duty to provide your office the overwhelming evidence that this legislation is in fact discriminatory, both in purpose and effect, and violates not only the VRA, but also several amendments to the Constitution.

We have included with this letter supporting documents that confirm the statistics and statements referenced therein, editorials from major Texas newspapers opposing the legislation, as well as a petition signed by over 6700 registered Texas voters expressing their opposition to this law. As you will see, 87 African Americans, 34 Latinos, 4 Asians, and many others, for a total of 226, who signed the petition indicated that they do not possess the types of identification that will be required under SB 14 and are likely to be disenfranchised. Those are real people whose rights are being violated by this legislation, the purpose and effect of which is to suppress the vote.

## Review of the laws

Under the **Voting Rights Act of 1965**, your office must review this legislation for pre-clearance before it can go into effect. As you know, Texas is covered by this provision due to our state's long history of discrimination.

Section 2 states "No voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote on account of race or color." Texas is also required to show that the proposed change does not have the purpose or effect of discriminating against a "language minority group." Membership in a language minority group includes "persons who are American Indian, Asian American, Alaskan Natives or of Spanish heritage." Section 5 states "Whenever a State or political subdivision with respect to which the prohibitions set forth in section 4(a) are in effect shall enact or seek to administer any voting

qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that *such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure...*"

Section 10 states "(a) The Congress finds that the requirement of the payment of a poll tax as a precondition to voting (i) precludes persons of limited means from voting or imposes unreasonable financial hardship upon such persons as a precondition to their exercise of the franchise, (ii) does not bear a reasonable relationship to any legitimate State interest in the conduct of elections, and (iii) in some areas has the purpose or effect of denying persons the right to vote because of race or color. Upon the basis of these findings, Congress declares that the constitutional right of citizens to vote is denied or abridged in some areas by the requirement of the payment of a poll tax as a precondition to voting."

We believe that SB 14 is in violation of all of these sections of the VRA. Detailed evidence will be provided in the forthcoming sections.

The **14th Amendment** states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Supreme Court has repeatedly stated that voting is a "fundamental right" on the same plane as marriage (*Loving v. Virginia*), privacy (*Griswold v. Connecticut* (1965)), or interstate travel (*Shapiro v. Thompson* (1969)). For any abridgment of those rights to be constitutional, the Court has held, the legislation must pass strict scrutiny. Thus, on this account, equal protection jurisprudence may be appropriately applied to voting rights. By imposing impediments to voting that disproportionately affect minorities, low-income voters, the elderly, the disabled, and others who are not as easily able to obtain the necessary id, SB 14 violates the Equal Protection Clause of the 14th Amendment.

The **15th Amendment** states that "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude" and that "The Congress shall have power to enforce this article by appropriate legislation" which it did through the Voting Rights Act of 1965, which shall be discussed later. By requiring documentation that voters of color are less likely to possess than white voters, SB 14 violates the 15th Amendment.

The **19th Amendment** states that "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." By requiring a strict set of documentation that is less likely to be an exact match to the voter records for women than for men, SB 14 violates the 19th Amendment.

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

The **24th Amendment** states that "The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." Poll taxes of any kind were further declared unconstitutional in *Harper v. Virginia Board of Elections* (1966) because they violated the Equal Protection Clause of the Fourteenth Amendment. (See above). The monetary costs of obtaining identification and/or the documents required to obtain a free Election Identification Certificate, in addition to the cost of travel and possible lost wages if a voter is required to take time off work to obtain the required I.D. are costs incurred in order to vote and are therefore equivalent to a poll tax.

The **26th Amendment** states that "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." College students and elderly voters are disproportionately negatively affected by this legislation, making it a violation of the 26th amendment.

## History of discrimination

Sadly, Texas has a long history of not wanting to enfranchise voters. Our state challenged the 14th and 26th amendments in court, grudgingly ratified the 15th amendment as a condition for being able to re-join the union after the civil war, and only just recently ratified the 24th amendment in 2009.

Unfortunately, we don't have to reach very far back in time to provide evidence of voter intimidation and suppression targeted at minority communities right here in Texas. The Department of Justice has been called upon several times recently to combat these practices.

In 2006, our state Attorney General went on a self-appointed crusade against voter fraud, harassing members of the African American community, ultimately to come up empty handed.

In 2008, the Texas Democratic Party was forced to file a lawsuit against the Harris County Tax Assessor Collector Paul Bettencourt over practices that denied almost 70,000 Harris County citizens the right to register and vote. Although a settlement agreement was reached in that case, the TDP had to take his successor to court again for violating the terms of the settlement. There remains compelling evidence that Harris County denies thousands of voter registration applications - more than any other in the nation - and that those rejections fall disproportionately on minority voters.

In 2010, the King Street Patriots, a shadowy "non-partisan" organization closely aligned with the Republican Party implemented their "True the Vote" program in Harris County. There the organization's poll watchers, predominantly white people at polling locations in minority neighborhoods, harassed and intimidated voters. Numerous complaints were filed, prompting the County Attorney's office to step in and your Department to send federal inspectors to monitor the election.

Recently in Waller County, a place on which you probably have a thick file, a local African American candidate made allegations of voter fraud committed by the County Clerk; fraud which he believes cost him the election. The investigation is ongoing, but as you will read in the enclosed article, many in the county feel there is something rotten in Waller, and it wouldn't be the first time.

## The Facts

As you know, studies have shown that 11 percent of eligible voters, more than 20 million Americans, do not have a government-issued ID. This percentage is even higher for women, seniors, racial minorities, low-income voters and students. Election experts from Rutgers and Ohio State Universities have shown that the implementation of photo I.D. laws in other states caused a 3% across-the-board reduction in voter turnout during the 2004 presidential election. Their studies found a decrease in voter turnout of 5.7% among African-Americans and 10 percent among Hispanics.

Specifically here in Texas, according to estimates by the Carter-Baker commission, the photo I.D. bill is likely to disenfranchise anywhere from 150,000 to 500,000 of the 13,000,000 eligible voters. While testifying in the House Select Committee on Voter Fraud, the former Chair of the Bipartisan Indiana Election Commission stated that SB 14 is "stricter than the Indiana law" and stands to be the strictest photo I.D. bill in the country. Texas already ranks 50th in the country in the number of eligible voters who vote, and a strict photo I.D. law is likely to further reduce the number of eligible voters that participate in Texas elections.

**Who doesn't have the right types of id?**

SB 14 is so restrictive in the forms of identification that are acceptable, that many people will not be able to meet such a high burden. The only acceptable forms of I.D. under SB 14 are a Texas driver's license or personal identification card issued to the person by the Department of Public Safety that has not expired or that expired no earlier than 60 days before the date of presentation; a United States military identification card that contains the person's photograph that has not expired or that expired no earlier than 60 days before the date of presentation, a United States citizenship certificate issued to the person that contains the person's photograph; a United States passport issued to the person that has not expired or that expired no earlier than 60 days before the date of presentation; a license to carry a concealed handgun issued to the person by the Department of Public Safety that has not expired or that expired no earlier than 60 days before the date of presentation, or an election identification certificate (a new, free type of identification that would be issued by DPS).

One in five senior women do not renew their drivers' licenses. Though SB 14 allows for a license that was expired in the sixty days prior to an election date to be considered valid, many senior women no longer drive and have no reason to renew their license. The Brennan Center for Justice has found that voters over 65 were eight percent less likely to have a driver's license than younger voters. Texas college students registered to vote in Texas cannot use an out-of-state driver's license. We've enclosed the costs of a Texas driver's license or personal I.D., which varies depending on age, with this packet. Requiring voters to obtain or renew a license or I.D.

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

KPW-PRIV000309

they would otherwise not have had to obtain creates a new hardship for voters. Also, due to recent budget cutbacks, wait times at state run driver's license offices in the most populated counties typically run 1 to 2 hours.

Further, only voters who serve in the military would be able to obtain a military id. Voters who are natural born citizens who do not intend to travel outside the United States have no reason to obtain a citizenship certificate or passport. And, only 2% of Texans have a concealed handgun license.

**Why not allow other forms of I.D.?**

The purpose of the photo I.D. is allegedly to allow poll workers to match the face of the person appearing before them wishing to vote with the name on the registration list. The I.D. card is not used to confirm residency, and therefore, the address on the I.D. is irrelevant. Even so, there are other types of photo id, including photo I.D. issued by governmental entities, that provide the same ability (to put a face with a name) that are not acceptable as valid forms of identification for voting under this law.

The Texas Secretary of State's office has recently declared that a Veterans Administration I.D. card (even though it contains the person's name and a photo) is not a valid form of photo I.D. under the new law.

College students, including those who attend state schools, are not allowed to use their school I.D. as acceptable proof of identification to vote. The University of Texas for example, provides students with a photo I.D. that has their name and a magnetic strip containing identifying information. While the student is required to produce a government-issued photo I.D. as proof of identity, the list of acceptable forms of I.D. is more extensive than SB 14 (US or Canadian driver's license, temporary license, instruction permit, passport, alien registration card with photo, U.S. citizen I.D. card, or resident citizen card), which would allow more students the opportunity to vote.

**Why is the free Election Identification certificate not enough?**

While voters who do not have the specific types of photo I.D. required by the bill can obtain an Election Identification Certificate from the Department of Public Safety for free, many of the voters impacted face transportation barriers that prevent them from getting to a DPS office, particularly in rural communities. For example, in Senator Uresti's west Texas district, thousands of voters would have to travel 137 miles round trip in order to get to a full-service DPS office. Arlington, TX (a majority-minority city) is the largest city in America with no public transit system. Many other Texans face similar challenges. Below is summary of the current availability of DPS offices currently vs this past January. Due to budget cuts, many DPS offices are expected to be closed.

**DPS FACTS** (September 2, 2011 vs January 24, 2011)
- **Currently, 12 counties do not have DPS stations**

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

KPW-PRIV000310

- - o In January 13 counties did not have DPS stations -- Over 243,000 people live in these counties
  - Currently, **81 counties have no office with an OPEN Drivers License station (includes the 12 offices above)**
    - o In January, 83 counties were without an OPEN DPS station
    - o Many DPS stations upgrading their computer systems in January and no timeline for when stations will be re-opened
  - DPS officials are unsure if these new computer systems will function properly.
  - New technology involves "air-cards" and internet based systems which may not function properly in all areas.
- DPS stations are only open Monday - Friday, with most closed during the lunch hours, thus placing a burden on working individuals
  - There are **15 Drivers License offices that are open one day a week or less**
    - o In January, 7 stations operated only 1 day a week

Transportation barriers may not be the only impediment to obtaining a free I.D. for eligible voters. To obtain a free EIC, the voter will have to produce documentation verifying their identity, in most cases multiple pieces of identification, many of which (such as a birth certificate, which costs $22, or passport, which costs $145) cost money and take time to obtain. The Secretary of State's office claims that the documents required to obtain an EIC will likely be similar to the documentation required to obtain a personal ID. The list of the various types of documentation that are required by DPS to obtain a personal I.D. is enclosed.

The chart below from the Center on Public Policy Priorities shows that a significant percentage of the population does not have a birth certificate or passport. The percentage is even higher for African Americans, rural residents, and people with an income under $25,000. The entire research paper is enclosed.



FIGURE 1

Percent of U.S.-Born Adults (18 or Older) Who Do Not Have a Passport or Birth Certificate Available

| Key Characteristics | % |
|---|---|
| Overall Average | 5.7% |
| Income < $25,000 | 8.1% |
| Income > $25,000 | 4.6% |
| African American | 8.9% |
| White | 5.5% |
| 18-64 Years | 5.1% |
| 65 or Older | 7.4% |
| < High School Grad | 9.2% |
| HS Grad or More | 5.1% |
| Rural | 9.1% |
| Not Rural | 4.5% |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

KPW-PRIV000311

Obtaining a birth certificate not only costs money, it requires the voter to present certain forms of identification, such as a photo id. If they had a photo id, they wouldn't be seeking the birth certificate just to obtain a free election identification certificate. The list of documents voters would need to produce in order to obtain a birth certificate is enclosed.

Not only do a disproportionate number of minorities lack the necessary documentation to obtain a free id, it is even more difficult for minorities without documentation to pay for the necessary documentation because a greater percentage of minorities than whites live in poverty. The chart below from the Texas Politics Project shows the breakdown of Texans living in poverty by ethnic group.

**Percentage of Total Persons in Poverty by Group, 2007**



### Difference from the Indiana Voter I.D. law

Indiana allows voters to be exempted simply by signing an affidavit stating that they are indigent.

Indiana also has a longer period (10 days) for voters to appear to present I.D. or affirm that an exemption applies to them. They also may vote at the county election office during early voting and affirm that an exemption applies to them, without having to vote a provisional ballot and wait until the election is over as is required in the Texas law.

Voters in Indiana are also allowed to use an I.D. that has expired up to two years from the election, as opposed to 60 days for Texans.

College students in Texas are not allowed to use their school id, even those who attend state schools.

Indiana has attempted to address the DPS availability issue by requiring that full service license branches must remain open from 8:30 a.m. to 8:00 p.m. on the day before each general, municipal, primary and special election and from 6:00 a.m. to 6:00 p.m. each general, municipal, primary and special election day solely for the purpose of issuing driver's licenses and photo identification cards.

**Inadequate Funding**

The fiscal note for SB 14 claims that the legislation will only cost the state $2 million to implement. This is incredibly unrealistic. The state admits in the fiscal note that it does not know the costs that will be incurred as a result of the free election identification certificates being provided. However, if the percentage of the eligible voting population who will need a free I.D. and the cost to the state per card is assumed to be similar to Indiana, then we can make the following assumptions, according to data provided by the United States Elections Project:

Indiana Voting Eligible Pop = 4,678,739
Texas Voting Eligible Pop = 15,407,666
Indiana provided 168,000 free IDs at a cost of $1,309,093 = 3.6% of VEP = $7.79 per card
3.6% of Texas VEP = 554, 676 people needing a freeI.D.at $7.79 per card = $4,320,926 in cost to the state

Beyond that, the voter education component alone is likely to cost more than $2 million if done properly. According to our estimate of reasonable saturation just on television in all Texas media markets, the cost would be $2,128,250. In 2006, when former Secretary of State Roger Williams implemented the VoTexas initiative to inform voters about changes to the voting process using television, radio, print and internet advertisements, that initiative cost $5 million.

So if the cost of providing free IDs is on par with the costs incurred by Indiana to implement their law, and the state runs a true voter education program similar to the VoTexas program it ran previously, that alone is over **$9 million**, which is money the state of Texas doesn't have. An assumption is made in the fiscal note that HAVA funds will be available to help offset their $2 million estimate, but the Secretary of State's office was not able to tell the legislators how much, if any, HAVA funds might be available.

**Flawed Legislative Process**

This legislation was passed in a hurry as one of the Governor's "emergency" measures. A "Committee on Voter I.D. and Voter Fraud" was established in the State House, consisting of 6 Republicans and 3 Democrats, where hearings were hurriedly held and a vote was taken with little discussion. Once the bill reached the House floor, many points of order were raised and overruled, numerous amendments were offered to make the bill less onerous, such as same day registration and exemptions for voters over 65, but were voted down almost always on a party line vote. Several members raised questions about the impact the bill would have on voters in their districts, but their questions were met with deflection, obfuscation, and occasionally derision from the proponents of the bill. The transcript of the floor debate in the House is enclosed.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

KPW-PRIV000313

On the Senate side, the long-standing, much revered two-thirds rule, by which no bill can be brought to the floor without the consent of two-thirds of the Senators, was changed in 2009 to exempt voter id, allowing the bill to pass on a party-line vote of 19-12. This was done because it only takes 11 Democrats to block a controversial bill from coming to the floor and Senate Democrats had previously used the two-thirds rule to prevent similar legislation. It should be noted that all African American and Latino State Senators are Democrats, and all had repeatedly voted against the legislation. So the only way to get voter I.D. passed in the Senate was to disregard decades of Senate precedent.

**Improper Implementation**

Additionally, discrimination is likely to occur due to improper implementation of the legislation. The Secretary of State's office, as of August 3, 2011, still had not established procedures for implementing the legislation. At the Election Law Seminar held for County Elections officials, many of the questions raised by the elections officials as to how they were to go about holding the election under the legislation were unable to be answered by the Secretary of State's office. Further, even for those Texans who do have photo ID, SB 14 makes an assumption that all voters look like their driver's license photo, and many of us do not. In Texas, your license is good for 6 years and you can renew your license online every other time you renew, and you can renew online up to 2 years after your license expires. This means a voter could present a driver's license with a photo that is up to 14 years old – and many of us looked very different that many years ago. To illustrate this concern, we asked some Texas Democrats to send us their driver's license photos along with a current photo. I have included just a few of those photos in this submission as crystal clear evidence that there are a great many Texans who do not resemble their license photos. Under this legislation, the thousands of election judges across the state who are already overworked and underpaid for their civic service would now have to undergo additional training to learn to deal with the validity and accuracy of photo IDs and whether or not an eligible voter gets to cast their ballot may depend on an elderly poll worker's eyesight and judgment.

**Opposition from non-partisan groups**

But don't just take our word for it. This legislation was opposed by many non-partisan organizations who work with the affected communities. The list of witnesses for and against SB 14 during House and Senate testimony on the bill is enclosed. Organizations such as the League of Women Voters, the Coalition of Texans with Disabilities, the League of United Latin American Citizens, and the National Association for the Advancement of Colored People with long histories of championing the rights of voters registered against the bill. Notice that the entities signing in "for" the bill, such as the King Street Patriots and the Harris County Tax Assessor's office, are some of the same entities referenced earlier about whom complaints have been filed for voter intimidation and suppression. This is no coincidence.

Sincerely,