Mr. T. Christian Herren, Jr.
Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530

Dear Mr. Herren,

The Texas Secretary of State's office recently submitted for pre-clearance SB 14, which imposes strict photo I.D. requirements for voting. The people most likely to not have the types of identification required by this legislation are African Americans, Latinos, Asians, women, students, the elderly, disabled voters, low-income voters, and veterans. We are writing to strongly urge you not to grant pre-clearance to this legislation on the grounds that it not only violates Section 2, 5 and 10 of the Voting Rights Act, we believe it to be in violation of the 14th, 15th, 19th, 24th, and 26th Amendments to the Constitution. While the burden of proof is on the state to show that the legislation will not have the effect of denying or abridging the right to vote on account of race or color, and to date they have provided no evidence of which we are aware that proves this, we feel it is our duty to provide your office the overwhelming evidence that this legislation is in fact discriminatory, both in purpose and effect, and violates not only the VRA, but also several amendments to the Constitution.

We have included with this letter supporting documents that confirm the statistics and statements referenced therein, editorials from major Texas newspapers opposing the legislation, as well as a petition signed by over 6700 registered Texas voters expressing their opposition to this law. As you will see, 87 African Americans, 34 Latinos, 4 Asians, and many others, for a total of 226, who signed the petition indicated that they do not possess the types of identification that will be required under SB 14 and are likely to be disenfranchised. Those are real people whose rights are being violated by this legislation, the purpose and effect of which is to suppress the vote.

## Review of the laws

Under the **Voting Rights Act of 1965**, your office must review this legislation for pre-clearance before it can go into effect. As you know, Texas is covered by this provision due to our state's long history of discrimination.

Section 2 states "No voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote on account of race or color." Texas is also required to show that the proposed change does not have the purpose or effect of discriminating against a "language minority group." Membership in a language minority group includes "persons who are American Indian, Asian American, Alaskan Natives or of Spanish heritage." Section 5 states "Whenever a State or political subdivision with respect to which the prohibitions set forth in section 4(a) are in effect shall enact or seek to administer any voting

2:13-cv-193
09/02/2014
DEF2670

RE-PRIV000534

qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that *such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure…*"

Section 10 states "(a) The Congress finds that the requirement of the payment of a poll tax as a precondition to voting (i) precludes persons of limited means from voting or imposes unreasonable financial hardship upon such persons as a precondition to their exercise of the franchise, (ii) does not bear a reasonable relationship to any legitimate State interest in the conduct of elections, and (iii) in some areas has the purpose or effect of denying persons the right to vote because of race or color. Upon the basis of these findings, Congress declares that the constitutional right of citizens to vote is denied or abridged in some areas by the requirement of the payment of a poll tax as a precondition to voting."

We believe that SB 14 is in violation of all of these sections of the VRA. Detailed evidence will be provided in the forthcoming sections.

The **14th Amendment** states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Supreme Court has repeatedly stated that voting is a "fundamental right" on the same plane as marriage (*Loving v. Virginia*), privacy (*Griswold v. Connecticut* (1965)), or interstate travel (*Shapiro v. Thompson* (1969)). For any abridgment of those rights to be constitutional, the Court has held, the legislation must pass strict scrutiny. Thus, on this account, equal protection jurisprudence may be appropriately applied to voting rights. By imposing impediments to voting that disproportionately affect minorities, low-income voters, the elderly, the disabled, and others who are not as easily able to obtain the necessary id, SB 14 violates the Equal Protection Clause of the 14th Amendment.

The **15th Amendment** states that "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude" and that "The Congress shall have power to enforce this article by appropriate legislation" which it did through the Voting Rights Act of 1965, which shall be discussed later. By requiring documentation that voters of color are less likely to possess than white voters, SB 14 violates the 15th Amendment.

The **19th Amendment** states that "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." By requiring a strict set of documentation that is less likely to be an exact match to the voter records for women than for men, SB 14 violates the 19th Amendment.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

RE-PRIV000535

The **24th Amendment** states that "The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." Poll taxes of any kind were further declared unconstitutional in *Harper v. Virginia Board of Elections* (1966) because they violated the Equal Protection Clause of the Fourteenth Amendment. (See above). The monetary costs of obtaining identification and/or the documents required to obtain a free Election Identification Certificate, in addition to the cost of travel and possible lost wages if a voter is required to take time off work to obtain the required I.D. are costs incurred in order to vote and are therefore equivalent to a poll tax.

The **26th Amendment** states that "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." College students and elderly voters are disproportionately negatively affected by this legislation, making it a violation of the 26th amendment.

## History of discrimination

Sadly, Texas has a long history of not wanting to enfranchise voters. Our state challenged the 14th and 26th amendments in court, grudgingly ratified the 15th amendment as a condition for being able to re-join the union after the civil war, and only just recently ratified the 24th amendment in 2009.

Unfortunately, we don't have to reach very far back in time to provide evidence of voter intimidation and suppression targeted at minority communities right here in Texas. The Department of Justice has been called upon several times recently to combat these practices.

In 2006, our state Attorney General went on a self-appointed crusade against voter fraud, harassing members of the African American community, ultimately to come up empty handed.

In 2008, the Texas Democratic Party was forced to file a lawsuit against the Harris County Tax Assessor Collector Paul Bettencourt over practices that denied almost 70,000 Harris County citizens the right to register and vote. Although a settlement agreement was reached in that case, the TDP had to take his successor to court again for violating the terms of the settlement. There remains compelling evidence that Harris County denies thousands of voter registration applications - more than any other in the nation - and that those rejections fall disproportionately on minority voters.

In 2010, the King Street Patriots, a shadowy "non-partisan" organization closely aligned with the Republican Party implemented their "True the Vote" program in Harris County. There the organization's poll watchers, predominantly white people at polling locations in minority neighborhoods, harassed and intimidated voters. Numerous complaints were filed, prompting the County Attorney's office to step in and your Department to send federal inspectors to monitor the election.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

RE-PRIV000536