6/23/2014 — Voter ID letter to SOS

**From:** Tina Tran <Tina.Tran@senate.state.tx.us>
**To:** senatorrge <senatorrge@aol.com>
**Cc:** Brandon Dudley <Brandon.Dudley@senate.state.tx.us>
**Subject:** Voter ID letter to SOS
**Date:** Thu, Oct 3, 2013 9:48 am

Senator, since voter id is in effect and the November election is around the corner, staff felt it would be a good to send a letter to the Secretary of State asking them to ensure that their outreach efforts are adequate and specifically targeting the 700,000 + registered voters they know may not have the proper identification. We can send a similar one to Stan Stanart asking him to undertake similar outreach efforts as Dallas County, which has committed $145,000 to reach out to these voters.

A draft of the letter is below. Please advise.

October 3, 2013

Secretary John Steen

Texas Secretary of State

P.O. Box 12887

Austin, Texas 78711-2887

Dear Secretary Steen:

I write to you today to express my grave concern with regard to the implementation of Texas' voter identification law and its potential effect on hundreds of thousands of eligible voters in our state. Recent reports from your office identified about 700,000 registered voters for whom you could not find a driver's license or whose information did not match that on their driver's license. Given that only nine Texans have applied for and received the election identification certificate, this gives me great pause as to whether the state is doing enough to reach out to all eligible voters to ensure that they will be able to exercise their right to vote come election time. With the general election about a month away, making every effort to reach out all eligible Texas voters is of the utmost importance.

I am aware that your office recently launched 25 mobile units and extended office hours across the state to issue election identification certificates. While mobile units and extended hours are a start, I would venture that 25 units is woefully inadequate to accommodate Texas' 254 counties, 81 of which lack any DPS office at all. Any adequate measure of outreach for a state the size of Texas is a herculean task, one far too big to remedy with 25 mobile units.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

2:13-cv-193
09/02/2014
DEF2674

RE-PRIV001668

Furthermore, the mobile units do nothing to address the obstacle that many Texans will face when trying to obtain the underlying documents required for issuance of an election identification certificate. There was a recent report of an 84 year old woman, Ms. Dorothy Card, from Lufkin who was denied an election identification certificate because, even after traveling three times to the DPS office with the aid of her daughter, she could not satisfy the documentation requirements. I would be very careful not to dismiss her story as an outlier, as it is very likely that there are thousands of Texans that are in similar circumstances but may not have the resources to be as persistent.

In anticipation of the fast approaching November election, many counties have taken it upon themselves to help their residents prepare for the identification requirement. For instance, Dallas County recently announced its outreach strategy to search state driver's license and identification records for a list of registered voters who lack some of the identification cards necessary to vote and those whose names are different on state-issued cards and county-issued voter registration certificates. Once identified, the county plans to mail notices to those voters advising them that they may not be able to meet the new voter identification requirements. Although this plan will not address all of the issues, it is a commendable effort and one I think the state should follow. Not many Texas counties will have the funds to follow Dallas County's lead, and as such it would put the residents of these counties at a severe disadvantage.

Since it is the state that is placing additional barriers on citizens' constitutional right to vote, the state has an obligation to send out similar letters to registered voters that lack the required identification. If Dallas County can do it, I trust the Secretary of State's office can as well. Alternatively, should counties undertake similar efforts on their own, the state should reimburse counties for their expenses.

Senate Bill 14 had a fiscal note of over $2 million, including "$0.5 million to research and develop ways to inform the public of the new identification requirements" and "$1.5 million for media advertisements." I can think of no better way to spend that money than direct outreach to the exact individuals that we know will be impacted. I'd take the pinpoint, rifle-shot approach at outreach every time that it's available over the shotgun blast of media advertisements.

In addition, I urge your office to work with other state agencies and local officials to develop a process by which voters wishing to obtain an election identification card are assisted with acquiring the required underlying documents at no cost to the voter. Three trips to a DPS office to acquire an election identification certificate is inconvenient at best and prohibitive at worst.

As I have made clear to you previously, I strongly support protecting the integrity of the vote. At the same time, it's inarguably just as important to ensure the means to exercise that right are equally

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RE-PRIV001669

accessible to all Texans. As the state's Chief Election Officer, I know you want to ensure that all eligible Texans have equal opportunity to have their voice heard at the voting booth and that such fundamental right is not hindered. I look forward to receiving your response in writing. Thank you for your attention to this important issue.

Sincerely,

Rodney Ellis

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RE-PRIV001670