**Jason Hassay**

**From:** Harold Cook <hc@haroldcook.com>
**Sent:** Tuesday, January 25, 2011 2:32 PM
**To:** Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson; Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
**Subject:** follow-up on Zaffirini's identity issue

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Senator Zaffirini did an excellent job pointing out how people's drivers license photo often does not resemble the actual people. Here's related documentation.

Begin forwarded message:

**From:** Yannis Banks <yannis_banks@yahoo.com>
**Date:** January 25, 2011 2:27:02 PM CST
**To:** hc@haroldcook.com
**Subject: Fw: Blank 33**

----- Forwarded Message ----
**From:** Gary Bledsoe <garybledsoe@sbcglobal.net>
**To:** "Asaka, Anson" <aasaka@naacpnet.org>
**Cc:** Robert S. Notzon <robert@notzonlaw.com>; Yannis Banks <yannis_banks@yahoo.com>; Harold Howell <harold17@swbell.net>; "hjefferson@protectorsinsurance.com" <hjefferson@protectorsinsurance.com>; brian rowland <browland3@hotmail.com>; "Goode, Victor" <vgoode@naacpnet.org>; victor goode <vlg0208@aol.com>; Mrs. Linda Lydia <llydia@sbcglobal.net>; Phyllis L. Jones <twoinch@embarqmail.com>; "Watkins, Carmen" <cwatkins@naacpnet.org>; Carolyn Scantlebury <cscantle01katrina@yahoo.com>; John Tanner <john.k.tanner@gmail.com>
**Sent:** Tue, January 25, 2011 2:23:47 PM
**Subject:** Re: Blank 33

**Race, Racism and the Law**
**Speaking Truth to Power!!**

## Why are Cross-Racial Eyewitness IDs Especially Unreliable?

Checkout: Reclamationgallery.com　　Complete Survey: Race Relations 2011

UNITS
Institutional Racism
01 Race
02 Citizenship Rights
03 Justice

John P. Rutledge

excerpted from: John

Submit for Periodic Updates
Update List

CHAPTERS
Justice and Racism

2:13-cv-193
09/02/2014
DEF2699
exhibitsticker.com

04 Basic Needs
05 Intersectionality
06 Worldwide

Web Editor
Vernellia R. Randall
Professor of Law
The University of Dayton

OTHER WEBSITES
Personal Website
Race and Health Care
Legal Education
The JD Project

P. Rutledge, They All Look Alike: the Inaccuracy of Cross-racial Identifications , 28 American Journal of Criminal Law 207-228, 211-214 (Spring 2001)(173 Footnotes Omitted)

In general, there is a much greater possibility of error where the races are different than where they are the same . . . .

A cross-racial ID occurs when an eyewitness of one race is asked to identify a particular individual of another race. The last half-century's empirical study of cross-racial IDs has shown that eyewitnesses have difficulty identifying members of another race, though the degree to which this difficulty affects the accuracy of an eyewitness ID is

Presidential Power
Civil Justice
Criminal Justice
Laws and Policies
Minority Group Interests
Legal Education
Practice of Law
Alternative Dispute Resol

OTHER PAGES
What's New
Obama's Administration
Webinars
Whitest Law Schools
Law Reviews
Newsletter
Racial Surveys
Awards
Syllabus
Comments
Search this Site
Contact

56

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

CU-PRIV000068

not certain. Likewise, it is unclear whether all races are affected.

Known as the "own-race" effect or "own-race" bias, eyewitnesses experience the "cross-racial impairment" when attempting to identify individuals of another race. The "own-race effect" is "strongest when white witnesses attempt to recognize black subjects," and apparently less influential to black witnesses. In fact, four separate studies found that black eyewitnesses do not experience any cross- racial impairment. And another found that blacks make better witnesses in general. But five other studies

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

found that white eyewitnesses simply experience the impairment more often than blacks. Regardless of the degree to which each race suffers from the impairment, a leading scholar on the subject has concluded that "it has been observed so many times" that "it seems to be a fact."

Concern about the frequent inaccuracy of cross-racial IDs is extensively documented in case law and social science data. And some judges believe the cross-racial nature of an identification may affect accuracy in the same way as proximity to the perpetrator and poor lighting conditions. As one federal judge

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

expressed more than a decade ago:

We are painfully aware of miscarriages of justice caused by wrongful identification. Those experienced in criminal trial work or familiar with the administration of justice understand that one of the great problems of proof is posed by eyewitness identification, especially in cross-racial identification . . . .

Likewise, a prominent state supreme court judge discussed the complexity of the phenomena as follows:

[I]t is well documented that cross-racial identification is less reliable than

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

identification of one person by another of the same race. Considerable evidence indicates that people are poorer at identifying members of another race than of their own.

Adding the commonly held belief that blacks are treated disparately in the criminal justice system, it is easy to see that the problem is complex and not easily allocated for or rectified.

And yet, this wealth of social science data and abundance of case law has yet to inspire legal scholars to address the issue directly. In fact, I was unable to locate a single law review article that

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

deals exclusively with the topic of cross-racial IDs. Hence, this article: my contribution to the dialogue. It should be noted that the article is not meant to be exhaustive. Rather, it is written as an overview written with the express intent to inspire contributions from the scholastic legal community. The problem is not going to disappear. It must be dealt with, as the very integrity of our criminal justice system depends upon its resolution.

I first became interested in the subject matter while working as a student clinician in law school. The issue seemed to arise in many of the clinic's cases. Granted, my

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

CU-PRIV000073

universe of experience was a bit atypical. I was one of a handful of white students in my entering class at Howard University School of Law. And most of our clinic's clients were black. The high concentration of white victim/black perpetrator cases caused me to consider many issues, some societal and some interpersonal. One of these issues was the apparent inaccurate identification of several of our clients.

As a white graduate of a historically black law school, I bring a unique perspective to the discussion of cross-racial IDs. I believe my experiences add a valuable insight to

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

the central question at hand: Why do white people have so much trouble correctly identifying a black person?

Several months of research and reflection on little else but this topic has led me to a few conclusions. These conclusions are my own and are not based upon, or necessarily supported by, empirical data.

By nature, people are generally homogenous. We tend to prefer those we are familiar with, those with whom we identify. White people tend to prefer other whites, as rich people tend to prefer the company of others with money. These

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

groups are not alone in that respect: black people generally feel most comfortable around other blacks and poor people around other poor people. There's a pre-established comfort level--a set of customs and mores already in place. The comfort level allows one to relax and live less deliberately.

Those of different races may have different customs and mores, different ideas of permissible speech, behavior, diet, and dress. The hair texture and styles of the various races is often different, as is facial and body structure. In light of these considerations, I believe the major

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

cause of the cross-racial impairment is the lack of familiarity with those of other races. We often work together, and at times eat together, but seldom do we live in the same neighborhoods or attend the same churches. These latter activities reflect, in my mind, our lack of comfort among those of other races. Sadly, it is a self-fulfilling cycle: comfort keeps us apart, and yet, living amongst each other would establish a comfort level. With this paradox as our communal mindset, familiarity is a difficult thing to achieve. How can one be expected to accurately identify a member

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

of a group with whom they are so utterly unfamiliar?

One of my colleagues has attacked my viewpoint as simplistic. He refuses to believe that familiarity with those of other races might alleviate the inaccuracy of cross-racial IDs. As support for his contention, he cites various authorities that conclude, "counterintuitively, the ability to perceive the physical characteristics of a person from another racial group apparently does not improve significantly upon increased contract with other members of that race . . . ."

Ironically, I believe these findings

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

strengthen my rationale as expressed in the analysis above. Time spent in the same general location is not the same as time spent together. Just as talking to someone is not necessarily communicating with that person. I believe the entire basis of these findings is flawed. Those orchestrating the studies confuse commonality with comfort. Like two New Yorkers passing on the street, many of us have never been intimate with someone of another race. And without intimacy, we have no reason to feel comfortable. Nor do we have the right to expect an accurate eyewitness ID.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

In my three years at Howard, I learned so many things that I didn't know I didn't know. I learned about locks and cornrows, braids and fades. I learned the difference between high yella and red-boned and brown-skinned and dark-skinned. My life experience does not allow me to accept the finding that these discoveries do not make me more likely to correctly identify a black assailant than a white person without a similar experience.

In that respect, I believe cross-racial IDs will become less of a problem as America matures and we get closer to Martin Luther King Jr.'s dream.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

At this time, however, the unreliability of cross-racial IDs is particularly troublesome. One in three black males between the ages of twenty and twenty-nine is under judicial supervision in this country. And while only five percent of the U.S. population, black males make up more than half of America's prisoners. We must explore the various measures available to help ameliorate the harm caused by inaccurate cross-racial IDs. Innocent people have been, and continue to be, stripped of their liberty simply because "they all look alike."

. Associate, Donahue, Gallagher, Woods

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

& Wood, L.L.P.; L.L.M., Real Property Development, University of Miami School of Law; J.D., Howard University School of Law (cum laude); B.A., Philosophy, Loyola Marymount University. This article is dedicated to all those falsely imprisoned due to an inaccurate eyewitness identification. Our collective soul is marred by your injustice. And no subsequent remedy can repay you for the pain you've suffered or the life you've lost. However, let us begin with an apology and an oath to never again permit such injustice.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Same level: [ The Underlying Myths of Colorblindess Jurisprudence ] [ Presidential Power and Racial Justice ] [ The McKinney Affair: Rampaging Racism and a Cowardly Caucus ] [ Misusing MLK Legacy and the Colorblind Theory ] [ "Sounding Black": Court-