**Sean Griffin**

| | |
|---|---|
| **From:** | Dan Buda |
| **Sent:** | Monday, January 24, 2011 10:08 PM |
| **To:** | Harold Cook; Will Krueger |
| **Subject:** | RE: A really good question for the Sec of State's office |

Some of the website links don't even go to websites - they go to "under construction" type pages...

Dan Buda
Chief of Staff
State Senator Wendy Davis
(512)463-0110
dan.buda@senate.state.tx.us

**From:** Harold Cook [mailto:hc@haroldcook.com]
**Sent:** Monday, January 24, 2011 10:01 PM
**To:** Will Krueger
**Cc:** Dan Buda
**Subject:** Re: A really good question for the Sec of State's office

yes but since the Secretary of State's office is charged with implementing election law, how ready are they to do that if they can only find 81 of them?

I'm looping in Dan on this so he can have a more complete view. Thanks Will.

On Jan 24, 2011, at 10:00 PM, Will Krueger wrote:

If you look at this list, it looks like many more than 81 counties have web sites:

http://www.texascounties4u.org/websites.html

**From:** Harold Cook [mailto:hc@haroldcook.com]
**Sent:** Monday, January 24, 2011 9:54 PM
**To:** Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson; Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
**Subject:** A really good question for the Sec of State's office

I know Davis was interested in questioning SOS earlier, so for her info (or for whoever is ultimately questioning the Sec of State's office), Laurie just forwarded this from 2 years ago, in which only 81 counties have websites (which are apparently required under the bill).

I just re-counted, and they still only have 81 counties listed, which means that according to the chief elections officer in Texas, **173 counties would be unable to comply with the requirements of the law**.

Begin forwarded message:

1

JZ-PRIV000299

**From:** Laurie Vanhoose <austintransplant@gmail.com>
**Date:** January 24, 2011 9:42:25 PM CST
**To:** Harold Cook <hc@haroldcook.com>, Amber Hausenfluck
<Amber.Hausenfluck@senate.state.tx.us>
**Subject: Counties that have websites**

When I was going through old emails I found this one from last time we debated voter ID.  We should include a question asking the SOS the number of counties that have websites because the bill states that as part of voter education the county will list the new requirements on their website.  If a county doesn't have a website.......


**Date**: Wed, 04 Mar 2009 17:13:02 -0000
**To**: <txelectionreform@yahoogroups.com>
**Subject**: [txelectionreform] County web sites as reported by SOS

Here is the list of county websites the SOS has on their site
http://www.sos.state.tx.us/elections/voter/links.shtml#County

There are 81 counties listed on this page. I don't know which ones are missing but if this is accurate then 173 don't have one.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2

JZ-PRIV000300

**Sean Griffin**

| | |
|---|---|
| **From:** | Dan Buda |
| **Sent:** | Monday, January 24, 2011 9:10 PM |
| **To:** | Sara Gonzalez; Amber Hausenfluck; David Edmonson; Graham Keever_SC; Debra Gonzales; Harold Cook; Steve Scheibal; Ray Martinez; Will Krueger; Jason Hassay; Graham Keever; Micah Rodriguez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith |
| **Subject:** | RE: Amendments |
| **Attachments:** | Davis Voter ID Summaries.docx |

Attached is a list of summaries for Davis amendments. Still not decided on which ones we're going to offer.

Dan Buda
Chief of Staff
State Senator Wendy Davis
(512)463-0110
dan.buda@senate.state.tx.us

---

**From:** Sara Gonzalez
**Sent:** Monday, January 24, 2011 9:00 PM
**To:** Amber Hausenfluck; David Edmonson; Graham Keever_SC; Dan Buda; Debra Gonzales; Harold Cook; Steve Scheibal; Ray Martinez; Will Krueger; Jason Hassay; Graham Keever; Micah Rodriguez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
**Subject:** RE: Amendments

Lucio is still going with the ones I sent earlier.  Attached are some one-pagers on what they do.

---

**From:** Amber Hausenfluck
**Sent:** Monday, January 24, 2011 7:52 PM
**To:** David Edmonson; Graham Keever_SC; Dan Buda; Debra Gonzales; Harold Cook; Steve Scheibal; Ray Martinez; Will Krueger; Jason Hassay; Graham Keever; Micah Rodriguez; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
**Subject:** RE: Amendments

Senator Van de Putte is interested in the following:

1. 2 alternative forms of ID (taken from SB 382 from the 81st)
2. Changes in the law do not take effect unless the comptroller determines that the legislature has appropriated the amount of money appropriate entities that is necessary to fully fund the implementation of this Act.  The Changes in law do not take effect unless the Secretary of State has received certification from every county that they have completed the training and outreach designated in SB 14.
3. Mandating the poll workers check ID's for the sole purpose of identity and not to check where one lives

The talking points for the above amendments are attached.

I will bring the other amendments Senator Van de Putte had drafted to the floor tomorrow in case anyone wants to offer any of them.

Thanks,

1

JZ-PRIV000301

Amber Hausenfluck
Deputy Legislative Director
Senator Van de Putte, R.Ph.
E1.610
512-463-0126
amber.hausenfluck@senate.state.tx.us

**From:** David Edmonson
**Sent:** Monday, January 24, 2011 6:14 PM
**To:** Graham Keever_SC; Dan Buda; Debra Gonzales; Harold Cook; Amber Hausenfluck; Steve Scheibal; Ray Martinez; Will Krueger; Jason Hassay; Graham Keever; Micah Rodriguez; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
**Subject:** RE: Amendments

Sen. Ellis is still going with the three I outlined yesterday.  A few staffers have talked to me about their boss signing on to one of the amendments.  **If your boss is interested in signing on, have them talk to Ellis tomorrow morning to physically sign the amendment.**

I've attached the text and a Q&A for each amendment as background.  Thanks,

David

**From:** Graham Keever **On Behalf Of** Graham Keever_SC
**Sent:** Monday, January 24, 2011 6:02 PM
**To:** Dan Buda; Debra Gonzales; Harold Cook; Amber Hausenfluck; Steve Scheibal; Ray Martinez; David Edmonson; Will Krueger; Jason Hassay; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
**Subject:** Amendments

As of right now, we're running with the Medicare card amendment only.

2

JZ-PRIV000302

**Sean Griffin**

| | |
|---|---|
| **From:** | Harold Cook <hc@haroldcook.com> |
| **Sent:** | Monday, January 24, 2011 9:57 PM |
| **To:** | Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson; Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith |
| **Subject:** | Suggested Q and A for Republican witnesses |

## Q. and A. for Republican Witnesses

**1. You say the law in Indiana is working…in the Supreme Court case, no party or *amicus* cited even one case of impersonation at the polls in Indiana to the Supreme Court. Would it surprise you to learn that more Indiana voters have been disenfranchised by the law in the last four years than the number of reported cases of impersonation at the polls cited to the Supreme Court – or from anywhere in the country - in the last two decades?**

- In limited-turnout local elections in Marion County, Ind. in 2007, 32 voters cast ballots that could not be counted because of the voter ID law. **Moreover, these were long-time voters: 14 of them had previously voted in at least 10 elections.**
- At **least 10 retired nuns in South Bend, Ind., were barred from voting in the 2008 Indiana Democratic primary election because** some of them were in their 80's and 90's and no longer had driver's licenses. **The supreme irony was that the nuns whose votes can't be accepted by a bunch of nuns because they don't have an ID...live with them in the polling place in their convent.**
- At least six other people also were relegated to filing provisional ballots. Among them was Lauren McCallick, an 18-year-old freshman at St. Mary's College in South Bend, who said she got ``teary-eyed'' and then angry at being rejected the first time she was old enough to vote.

**2. You and other voter ID advocates cite "studies" that attempt to show Voter ID laws do not suppress turnout, and even try to claim turnout increases in Indiana and Georgia were caused by Voter ID laws.** These "studies" compare turnout between election cycles - between 2002 and 2006 or 2004 and 2008. Obviously, turnout can vary a lot between election cycles based on enthusiasm, candidates, and other factors.

- a. Honestly, **isn't the real cause for the 2008 turnout increase in Indiana really all about Barack Obama** and John McCain and the excitement they generated and resources they spent **in a state that wasn't even competitive in 2004?**
- b. Wouldn't a more valid analysis compare states with and without Photo ID requirements, over a period spanning several election cycles or the same national election cycle?

**3. How do you explain the fact that every time a thorough independent study looks into claims made repeatedly by Voter ID supporters that suggest thousands of dead people or non-citizens are registering and possibly voting, those claims are, without exception, proven to be wildly off base?**

(See briefing paper on Unsubstantiated GOP Claims for answer/facts)

1

4. **You have mentioned the Indiana experience, but** even Appeals Judge Posner, an outspoken conservative appointee, said in his opinion upholding the Indiana photo ID law: **"No doubt most people who don't have photo ID are low on the economic ladder and thus, if they do vote, are more likely to vote for Democratic than Republican candidates. Thus the new law injures the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote."** His comment seems to illustrate why Republicans use voter fraud claims to justify vote suppression activities that date back decades and continue today. **Do you have any evidence of systematic voter fraud to contradict findings from academic studies that suggest the only real reason for the photo ID push is to provide Republicans a partisan advantage?**

(See briefing paper on GOP Power Grab for answer/facts)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

JZ-PRIV000304

**Sean Griffin**

| | |
|---|---|
| **From:** | Harold Cook <hc@haroldcook.com> |
| **Sent:** | Monday, January 24, 2011 10:58 PM |
| **To:** | Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson; Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith |
| **Subject:** | VID Working Group: IMPORTANT - questions to the Democratic witnesses |
| **Importance:** | High |

Below are the questions for our invited testimony - Gary Bledsoe (NAACP), Chase Bearden (Coalition for Texans with Disabilities), and Luis Figueroa (MALDEF). Dr. Andres Tijerina (TX History Professor) is giving more of a history lesson of minority disenfranchisement, so there are no questions advanced for Dr. Tijerina. Some may occur to members in the course of his testimony.

Keep in mind that since there is a time limit on invited testimony of 10 minutes, any leading questions asked by a Senator will extend our witnesses time.

**Questions for Gary L. Bledsoe (Texas NAACP)**

Q. Some say the Voting Rights Act is no longer needed is a thing of the past that is no longer needed in Texas. Can you cite examples or give reasons that show why we still need voting rights protections?

Q. Is there a well-documented history of voter suppression that is specifically related to race and ethnicity, and how would this Voter ID law fit into that history?

Q. How would this Voter ID law discriminate against people of color?

Q. If the Legislature exempts certain classes of voters, like seniors, from this bill, would that direct an even greater amount of its potential to disenfranchise voters at African Americans and Hispanics?

Q. Did you see the materials the Attorney General used in his highly publicized 2005-2006 campaign against "Voter Fraud"?

1

Q. In his anti-Voter Fraud campaign, the Attorney General used materials that included images of sickle cell stamps and photos of African Americans to illustrate signs of voter fraud – what does that tell you about the state's attitude and enforcement of voter fraud, and did the conduct and targets of Abbott's prosecutions fit into a pattern of vote suppression in Texas?

Q. Gary, you suggest a photo ID law would suppress African American turnout, but some Voter ID advocates claim Voter ID laws do not suppress turnout, and even claim turnout increases in Indiana and Georgia in 2008 were caused by Voter ID laws, compared to 2004 turnout when there was no photo ID law in those states. Obviously, turnout can vary a lot between election cycles based on enthusiasm, candidates, and other factors. Did African American turnout in Texas increase in 2008 without a Voter ID law, and do you think the reason might be the same as the real reason for reports of higher turnout in Indiana and Georgia?

**Questions for Luis Figueroa, MALDEF**

Q. Could you compare the legislation before us to the corresponding legislation passed in Indiana, Georgia, and Arizona?

Q. Could you go over any implementation issues or challenges of the voter ID law in Arizona, and how the law may have disenfranchised Latino voters?

Q. What do you believe the net impact of voter ID legislation on Latino voters is?

Q. Are Latino voters less likely to have the identification required by the bill? Why?

Q. Have Latino voters experienced a history of disenfranchisement in Texas? Might this longstanding history contribute to a distrust of the electoral system, and thus contribute to lowering voter turnout among this ethnicity, even among those who might possess the required identification?

**Questions for Chase Bearden (Coalition of Texans with Disabilities)**

Q. Are people with disabilities less likely to have a current drivers license, military ID, or passport? If so, why?

Q. What additional barriers do people with disabilities have in obtaining the forms of ID requested by this bill?

2

Q. Would the voter identification required in this bill be sufficient to ensure access to accurate information about this new ID requirement information for the full range of people with disabilities in our state?

Q. What affect do you believe SB 14 would have on turnout of voters with disabilities?

Q. Could SB 14 negatively impact any voters who have a photo ID?

Q. What affect do you believe SB 14 would have on the number of provisional ballots cast by voters with disabilities?  What barriers are in place that would make it difficult for people with disabilities to return to the election office to cure a provisional ballot?

Q.  What are the most pressing issues reported by voters with disabilities? And, does SB 14 address any of these issues?

Q.  Are there any issues affecting Texans with disabilities that would better utilize the funds required to implement SB 14?

3

JZ-PRIV000307

**Sean Griffin**

| | |
|---|---|
| **From:** | Harold Cook <hc@haroldcook.com> |
| **Sent:** | Monday, January 24, 2011 9:54 PM |
| **To:** | Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson; Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith |
| **Subject:** | A really good question for the Sec of State's office |

I know Davis was interested in questioning SOS earlier, so for her info (or for whoever is ultimately questioning the Sec of State's office), Laurie just forwarded this from 2 years ago, in which only 81 counties have websites (which are apparently required under the bill).

I just re-counted, and they still only have 81 counties listed, which means that according to the chief elections officer in Texas, **173 counties would be unable to comply with the requirements of the law**.

Begin forwarded message:

**From:** Laurie Vanhoose <austintransplant@gmail.com>
**Date:** January 24, 2011 9:42:25 PM CST
**To:** Harold Cook <hc@haroldcook.com>, Amber Hausenfluck
<Amber.Hausenfluck@senate.state.tx.us>
**Subject: Counties that have websites**

When I was going through old emails I found this one from last time we debated voter ID. We should include a question asking the SOS the number of counties that have websites because the bill states that as part of voter education the county will list the new requirements on their website. If a county doesn't have a website.......

**Date**: Wed, 04 Mar 2009 17:13:02 -0000
**To**: <txelectionreform@yahoogroups.com>
**Subject**: [txelectionreform] County web sites as reported by SOS

Here is the list of county websites the SOS has on their site
http://www.sos.state.tx.us/elections/voter/links.shtml#County

There are 81 counties listed on this page. I don't know which ones are missing but if this is accurate then 173 don't have one.

1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## Sean Griffin

**From:** Ray Martinez
**Sent:** Monday, January 24, 2011 9:26 PM
**To:** Will Krueger
**Subject:** from mk
**Attachments:** SB14_VoterEducation_GenerallyStatement__MK_012411.docx; SB14
_VoterEducation_Statement_012411_MK_Draft01.docx

NOT
Ray Martinez
Chief of Staff and General Counsel
Director, Senate Higher Education Committee
Office of Senator Judith Zaffirini
Texas State Capitol, Rm. 1E.14
(512) 463-0121

1

**Sean Griffin**

| | |
|---|---|
| **From:** | Harold Cook <hc@haroldcook.com> |
| **Sent:** | Monday, January 24, 2011 10:04 PM |
| **To:** | Will Krueger |
| **Cc:** | Dan Buda |
| **Subject:** | Re: A really good question for the Sec of State's office |

without clicking on a whole bunch of those links, I bet SOS linked to their elections info page, and if they don't have any elections info I bet they didn't link to it. But that's just a guess - I'm dealing with too much info to stop and look too hard any any one piece of it.

On Jan 24, 2011, at 10:02 PM, Will Krueger wrote:

You're right to question them being ready. Many have "websites" but not much is ever posted on them. Thanks.

**From:** Harold Cook [mailto:hc@haroldcook.com]
**Sent:** Monday, January 24, 2011 10:01 PM
**To:** Will Krueger
**Cc:** Dan Buda
**Subject:** Re: A really good question for the Sec of State's office

yes but since the Secretary of State's office is charged with implementing election law, how ready are they to do that if they can only find 81 of them?

I'm looping in Dan on this so he can have a more complete view. Thanks Will.

On Jan 24, 2011, at 10:00 PM, Will Krueger wrote:

If you look at this list, it looks like many more than 81 counties have web sites:

http://www.texascounties4u.org/websites.html

**From:** Harold Cook [mailto:hc@haroldcook.com]
**Sent:** Monday, January 24, 2011 9:54 PM
**To:** Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson; Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
**Subject:** A really good question for the Sec of State's office

I know Davis was interested in questioning SOS earlier, so for her info (or for whoever is ultimately questioning the Sec of State's office), Laurie just forwarded this from 2 years ago, in which only 81 counties have websites (which are apparently required under the bill).

1

JZ-PRIV000310

I just re-counted, and they still only have 81 counties listed, which means that according to the chief elections officer in Texas, **173 counties would be unable to comply with the requirements of the law**.

Begin forwarded message:

**From:** Laurie Vanhoose <austintransplant@gmail.com>
**Date:** January 24, 2011 9:42:25 PM CST
**To:** Harold Cook <hc@haroldcook.com>, Amber Hausenfluck
<Amber.Hausenfluck@senate.state.tx.us>
**Subject: Counties that have websites**

When I was going through old emails I found this one from last time we debated voter ID.  We should include a question asking the SOS the number of counties that have websites because the bill states that as part of voter education the county will list the new requirements on their website.  If a county doesn't have a website.......

**Date**: Wed, 04 Mar 2009 17:13:02 -0000
**To**: <txelectionreform@yahoogroups.com>
**Subject**: [txelectionreform] County web sites as reported by SOS

Here is the list of county websites the SOS has on their site
http://www.sos.state.tx.us/elections/voter/links.shtml#County

There are 81 counties listed on this page. I don't know which ones are missing but if this is accurate then 173 don't have one.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2

JZ-PRIV000311

**Judith Zaffirini**

| | |
|---|---|
| From: | Ray Martinez <Ray.Martinez@senate.state.tx.us> |
| Sent: | Sunday, January 23, 2011 8:47 PM |
| To: | Judith Zaffirini |
| Subject: | Fw: Amendments request por favor? |

Z,

Amendment ideas from RM.

-- Sent from my Palm Pre

_____

From: Ray Martinez <Ray.Martinez@senate.state.tx.us>
Date: Jan 23, 2011 6:37 PM
Subject: RE: Amendments request por favor?
To: Amber Hausenfluck <Amber.Hausenfluck@senate.state.tx.us>; Harold Cook
<hc@haroldcook.com>; David Edmonson <David.Edmonson@senate.state.tx.us>
CC: Jason Hassay <Jason.Hassay@senate.state.tx.us>; Debra Gonzales
<Debra.Gonzales@senate.state.tx.us>; Steve Scheibal <Steve.Scheibal@senate.state.tx.us>;
Will Krueger <Will.Krueger@senate.state.tx.us>; Dan Buda <Dan.Buda@senate.state.tx.us>;
Graham Keever <GLKeever@aol.com>; Micah Rodriguez
<Micah.Rodriguez@senate.state.tx.us>; Graham Keever_SC
<Graham.Keever_SC@senate.state.tx.us>; Sara Gonzalez <Sara.Gonzalez@senate.state.tx.us>;
Lara Wendler <larawendler@sbcglobal.net>; Gonzalo Serrano
<Gonzalo.Serrano@senate.state.tx.us>; Oscar Garza <Oscar.Garza@senate.state.tx.us>;
Sushma Smith <Sushma.Smith@senate.state.tx.us>

Based on the emails, it appears everyone is working on a variety of these below. Here's what
we're looking at:

1.     Affidavit bypass amendments – Michigan has an affidavit bypass option, where voters
who show up at the polls without required photo ID can sign under penalty of perjury and cast a
regular (not provisional) ballot. Also, in Florida, voters who don't have required ID cast a
provisional ballot but those ballots are counted if the voter signature matches those on the voter
rolls. The final affidavit- bypass option is to allow a voter who does not have photo ID to cast a
regular ballot if they provide one or two forms of non-photo ID.

18

JZ-PRIV000330

2.     Franchise-expanding amendments – From the various emails, it looks like other offices are already working on a good list of amendments in this category. One idea we're looking at is automated transmission of registration information. Texas is now one of at least 10 states that has at least partially automated the registration process between DPS and election officials. What that means is that the agency transmits at least some registration information electronically, eliminating the need for local data entry. One idea would be to expand this automated registration process to social service agencies, including those agencies serving individuals on public assistance.

3.     Making ID's more widely available – SB 14 is modeled after the Indiana voter ID bill. The U.S. Supreme Court, in upholding the Indiana photo ID bill, made it clear that there could still be statutory and/or constitutional violations in certain situations as the law is implemented. I am assuming Republicans will argue that since the Indiana law has been given Supreme Court approval, it must be good law. So, the idea is to emphasize how the differences in applying the "Indiana law" to Texas will lead to violations of the Voting Rights Act or even constitutional principles. For example, when one compares "rural" Indiana to "rural" Texas, there are, needless-to-say, significant differences particularly in the vast distance between voters and access to a DPS office where they can obtain a photo ID. Based on our Friday meeting, I believe several offices are already working on ideas in this category, such as requiring enough DPS offices to make it easier to obtain an ID, as well as requiring extended hours for DPS offices, including early mornings, evenings and weekends, especially in the period leading up to an election.

Hope this is helpful.

Ray Martinez
Chief of Staff and General Counsel
Director, Senate Higher Education Committee Office of Senator Judith Zaffirini Texas State Capitol, Rm. 1E.14
(512) 463-0121

From: Amber Hausenfluck
Sent: Sunday, January 23, 2011 6:29 PM
To: Harold Cook; David Edmonson
Cc: Jason Hassay; Debra Gonzales; Steve Scheibal; Ray Martinez; Will Krueger; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: RE: Amendments request por favor?

19

Van de Putte discussed two additional amendments, although I'm not quite sure how to word them yet.  Luis is working on it for me.  These two potential amendments are:

1.     Mandating the poll workers check ID's for the sole purpose of identity and not to check where one lives.

2.     Prohibiting poll workers from denying a person the right to vote because their name on their ID does not exactly match up.

Amber Hausenfluck
Deputy Legislative Director
Senator Van de Putte, R.Ph.
E1.610
512-463-0126
amber.hausenfluck@senate.state.tx.us<mailto:ida.garcia@senate.state.tx.us>

From: Harold Cook [mailto:hc@haroldcook.com]
Sent: Sunday, January 23, 2011 6:23 PM
To: David Edmonson
Cc: Jason Hassay; Debra Gonzales; Amber Hausenfluck; Steve Scheibal; Ray Martinez; Will Krueger; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: Re: Amendments request por favor?

actually group, #2 on David's list is important…when the Republicans vote against that amendment, whoever takes the lead in opposing pre-clearance will be able to show that the exact sort of data DoJ would most want to know about could have been gathered, but that the legislature rejected gathering it.

On Jan 23, 2011, at 5:40 PM, David Edmonson wrote:

As of right now, Sen. Ellis is concentrating on three amendments:

1.     Election day registration - can register to vote at a polling place on election day
2.     Disparate impact report - require the Secretary of State to produce an annual report determining whether the changes in law instituted via SB 14 produce a disparate impact on any population subgroups in our state.  It would also make the effective date of SB 14 contingent upon a determination by the Secretary of State that there would not be a disparate impact on any group.
3.     Sunset dates - a two year sunset date on SB 14.  We're also drafting a traditional 12 year sunset.  Not sure which he'll run with.

Thanks,

20

JZ-PRIV000332

David

From: Harold Cook [mailto:hc@haroldcook.com]
Sent: Sunday, January 23, 2011 5:36 PM
To: Jason Hassay
Cc: Debra Gonzales; Amber Hausenfluck; Steve Scheibal; Ray Martinez; David Edmonson;
Will Krueger; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara
Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: Amendments request por favor?

Folks, if I could get a reply from each office on amendments each office has drafted for voter
ID it might help the Senators' conference call more productive. No huge explanation necessary,
just one sentence summaries?

On Jan 23, 2011, at 4:47 PM, Jason Hassay
<Jason.Hassay@senate.state.tx.us<mailto:Jason.Hassay@senate.state.tx.us>> wrote:
We did an informal break down but only have our notes in pencil.  Will work on typing them up
to share.

-Jason

Jason Hassay
Chief of Staff & General Counsel
Office of Senator Carlos I. Uresti
512-463-0119 phone
512-463-1017 fax
From: Harold Cook [mailto:hc@haroldcook.com]
Sent: Sunday, January 23, 2011 4:33 PM
To: Debra Gonzales
Cc: Amber Hausenfluck; Steve Scheibal; Ray Martinez; David Edmonson; Will Krueger; Jason
Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez;
Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: Re: VID Working Group: Question of a side by side comparison of SB 14 & SB 362

At least 2 Senators have asked this very question, so somebody should sure tackle that project.

On Jan 23, 2011, at 4:28 PM, Debra Gonzales
<Debra.Gonzales@senate.state.tx.us<mailto:Debra.Gonzales@senate.state.tx.us>> wrote:
Hello

21

JZ-PRIV000333

I was wondering if anyone had already done a side by side comparison of SB 14 and SB 362 (senate engrossed version from the 81st)? If so…may I please have a copy?
If not I will be working on one and will share it if anyone wants a copy… Thanks!

Debra Gonzales
Legislative Director
Senator Gallegos
512-463-0106 office
512-463-0346 fax


From: Harold Cook [mailto:hc@haroldcook.com]
Sent: Saturday, January 22, 2011 6:06 PM
To: Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson; Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: VID Working Group: add'l materials from Luis Figueroa

Luis Figueroa sent some requested items to several of the group so I wanted to share with all.

Begin forwarded message:

From: "Luis Figueroa" <lfigueroa@MALDEF.org<mailto:lfigueroa@MALDEF.org>>
Date: January 22, 2011 5:33:42 PM CST
To: "Harold Cook" <hc@haroldcook.com<mailto:hc@haroldcook.com>>, "David Edmonson" <David.Edmonson@senate.state.tx.us<mailto:David.Edmonson@senate.state.tx.us>>, "Amber Hausenfluck"
<Amber.Hausenfluck@senate.state.tx.us<mailto:Amber.Hausenfluck@senate.state.tx.us>>,
<richard.sooksiasian@senate.state.tx.us<mailto:richard.sooksiasian@senate.state.tx.us>>
Cc: "Laurie Vanhoose" <austintransplant@gmail.com<mailto:austintransplant@gmail.com>>
Subject: Additional materials for Voter ID Senate Committee hearing


Attached:

1) Crawford v. Marion County- Supreme Court ruling that upheld Indiana's strict voter id legislation.
Distinguishing points:
1) Texas is a section 5 state with a much larger minority population than Indiana
2) Indiana provided a 10 day cure period after the election where as SB 14 only provides 6 days

22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

2) Texas Voting Rights Act Report page 8-13 describes the history of voting discrimination in Texas.

3) Deceptive Elections Flyer given to minority voters in Tarrant County in 2007.  Example of fraud that is substantiated and unprosecuted because there is no law on the books to address.

4) Voter Id power point. Pages 4-8 layout the studies demonstrating impact of voter identification laws on minority electorate.

5) Maricopa County Analysis of Conditional Provisional Ballots in Arizona after their implementation of a voter id(proposition 200) that mirrored last year's Tx Senate Voter ID Bill (SB 364).  Conditional Provisional Ballots were given to voters that lacked the ID documents in Arizona meaning these ballots are separate from regular provisional ballots.


Luis Figueroa

MALDEF

Legislative Staff Attorney

110 Broadway

Suite 300

San Antonio, TX 78205

LFigueroa@maldef.org<mailto:LFigueroa@maldef.org>

210-224-5476 ext. 212

23

**Judith Zaffirini**

| | |
|---|---|
| **From:** | Ray Martinez <Ray.Martinez@senate.state.tx.us> |
| **Sent:** | Sunday, January 23, 2011 8:47 PM |
| **To:** | Judith Zaffirini |
| **Subject:** | Fw: Amendments request por favor? |

Z,

Amendment ideas from RM.


-- Sent from my Palm Pre

---

From: Ray Martinez <Ray.Martinez@senate.state.tx.us>
Date: Jan 23, 2011 6:37 PM
Subject: RE: Amendments request por favor?
To: Amber Hausenfluck <Amber.Hausenfluck@senate.state.tx.us>; Harold Cook
<hc@haroldcook.com>; David Edmonson <David.Edmonson@senate.state.tx.us>
CC: Jason Hassay <Jason.Hassay@senate.state.tx.us>; Debra Gonzales
<Debra.Gonzales@senate.state.tx.us>; Steve Scheibal <Steve.Scheibal@senate.state.tx.us>;
Will Krueger <Will.Krueger@senate.state.tx.us>; Dan Buda <Dan.Buda@senate.state.tx.us>;
Graham Keever <GLKeever@aol.com>; Micah Rodriguez
<Micah.Rodriguez@senate.state.tx.us>; Graham Keever_SC
<Graham.Keever_SC@senate.state.tx.us>; Sara Gonzalez <Sara.Gonzalez@senate.state.tx.us>;
Lara Wendler <larawendler@sbcglobal.net>; Gonzalo Serrano
<Gonzalo.Serrano@senate.state.tx.us>; Oscar Garza <Oscar.Garza@senate.state.tx.us>;
Sushma Smith <Sushma.Smith@senate.state.tx.us>

Based on the emails, it appears everyone is working on a variety of these below. Here's what
we're looking at:


1.    Affidavit bypass amendments – Michigan has an affidavit bypass option, where voters
who show up at the polls without required photo ID can sign under penalty of perjury and cast a
regular (not provisional) ballot. Also, in Florida, voters who don't have required ID cast a
provisional ballot but those ballots are counted if the voter signature matches those on the voter
rolls. The final affidavit- bypass option is to allow a voter who does not have photo ID to cast a
regular ballot if they provide one or two forms of non-photo ID.

JZ-PRIV000336

2.    Franchise-expanding amendments – From the various emails, it looks like other offices are already working on a good list of amendments in this category. One idea we're looking at is automated transmission of registration information. Texas is now one of at least 10 states that has at least partially automated the registration process between DPS and election officials. What that means is that the agency transmits at least some registration information electronically, eliminating the need for local data entry. One idea would be to expand this automated registration process to social service agencies, including those agencies serving individuals on public assistance.

3.    Making ID's more widely available – SB 14 is modeled after the Indiana voter ID bill. The U.S. Supreme Court, in upholding the Indiana photo ID bill, made it clear that there could still be statutory and/or constitutional violations in certain situations as the law is implemented. I am assuming Republicans will argue that since the Indiana law has been given Supreme Court approval, it must be good law. So, the idea is to emphasize how the differences in applying the "Indiana law" to Texas will lead to violations of the Voting Rights Act or even constitutional principles. For example, when one compares "rural" Indiana to "rural" Texas, there are, needless-to-say, significant differences particularly in the vast distance between voters and access to a DPS office where they can obtain a photo ID. Based on our Friday meeting, I believe several offices are already working on ideas in this category, such as requiring enough DPS offices to make it easier to obtain an ID, as well as requiring extended hours for DPS offices, including early mornings, evenings and weekends, especially in the period leading up to an election.

Hope this is helpful.

Ray Martinez
Chief of Staff and General Counsel
Director, Senate Higher Education Committee Office of Senator Judith Zaffirini Texas State Capitol, Rm. 1E.14
(512) 463-0121

From: Amber Hausenfluck
Sent: Sunday, January 23, 2011 6:29 PM
To: Harold Cook; David Edmonson
Cc: Jason Hassay; Debra Gonzales; Steve Scheibal; Ray Martinez; Will Krueger; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: RE: Amendments request por favor?

25

Van de Putte discussed two additional amendments, although I'm not quite sure how to word them yet.  Luis is working on it for me.  These two potential amendments are:


1.     Mandating the poll workers check ID's for the sole purpose of identity and not to check where one lives.

2.     Prohibiting poll workers from denying a person the right to vote because their name on their ID does not exactly match up.

Amber Hausenfluck
Deputy Legislative Director
Senator Van de Putte, R.Ph.
E1.610
512-463-0126
amber.hausenfluck@senate.state.tx.us<mailto:ida.garcia@senate.state.tx.us>

From: Harold Cook [mailto:hc@haroldcook.com]
Sent: Sunday, January 23, 2011 6:23 PM
To: David Edmonson
Cc: Jason Hassay; Debra Gonzales; Amber Hausenfluck; Steve Scheibal; Ray Martinez; Will Krueger; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: Re: Amendments request por favor?

actually group, #2 on David's list is important…when the Republicans vote against that amendment, whoever takes the lead in opposing pre-clearance will be able to show that the exact sort of data DoJ would most want to know about could have been gathered, but that the legislature rejected gathering it.

On Jan 23, 2011, at 5:40 PM, David Edmonson wrote:

As of right now, Sen. Ellis is concentrating on three amendments:

1.     Election day registration - can register to vote at a polling place on election day
2.     Disparate impact report - require the Secretary of State to produce an annual report determining whether the changes in law instituted via SB 14 produce a disparate impact on any population subgroups in our state.  It would also make the effective date of SB 14 contingent upon a determination by the Secretary of State that there would not be a disparate impact on any group.
3.     Sunset dates - a two year sunset date on SB 14.  We're also drafting a traditional 12 year sunset.  Not sure which he'll run with.

Thanks,

26

JZ-PRIV000338

David

From: Harold Cook [mailto:hc@haroldcook.com]
Sent: Sunday, January 23, 2011 5:36 PM
To: Jason Hassay
Cc: Debra Gonzales; Amber Hausenfluck; Steve Scheibal; Ray Martinez; David Edmonson;
Will Krueger; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara
Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: Amendments request por favor?

Folks, if I could get a reply from each office on amendments each office has drafted for voter
ID it might help the Senators' conference call more productive. No huge explanation necessary,
just one sentence summaries?


On Jan 23, 2011, at 4:47 PM, Jason Hassay
<Jason.Hassay@senate.state.tx.us<mailto:Jason.Hassay@senate.state.tx.us>> wrote:
We did an informal break down but only have our notes in pencil.  Will work on typing them up
to share.

-Jason

Jason Hassay
Chief of Staff & General Counsel
Office of Senator Carlos I. Uresti
512-463-0119 phone
512-463-1017 fax
From: Harold Cook [mailto:hc@haroldcook.com]
Sent: Sunday, January 23, 2011 4:33 PM
To: Debra Gonzales
Cc: Amber Hausenfluck; Steve Scheibal; Ray Martinez; David Edmonson; Will Krueger; Jason
Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez;
Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: Re: VID Working Group: Question of a side by side comparison of SB 14 & SB 362

At least 2 Senators have asked this very question, so somebody should sure tackle that project.


On Jan 23, 2011, at 4:28 PM, Debra Gonzales
<Debra.Gonzales@senate.state.tx.us<mailto:Debra.Gonzales@senate.state.tx.us>> wrote:
Hello

27

JZ-PRIV000339

I was wondering if anyone had already done a side by side comparison of SB 14 and SB 362 (senate engrossed version from the 81st)? If so…may I please have a copy?
If not I will be working on one and will share it if anyone wants a copy… Thanks!

Debra Gonzales
Legislative Director
Senator Gallegos
512-463-0106 office
512-463-0346 fax

From: Harold Cook [mailto:hc@haroldcook.com]
Sent: Saturday, January 22, 2011 6:06 PM
To: Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson;
Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham
Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith
Subject: VID Working Group: add'l materials from Luis Figueroa

Luis Figueroa sent some requested items to several of the group so I wanted to share with all.

Begin forwarded message:

From: "Luis Figueroa" <lfigueroa@MALDEF.org<mailto:lfigueroa@MALDEF.org>>
Date: January 22, 2011 5:33:42 PM CST
To: "Harold Cook" <hc@haroldcook.com<mailto:hc@haroldcook.com>>, "David Edmonson"
<David.Edmonson@senate.state.tx.us<mailto:David.Edmonson@senate.state.tx.us>>, "Amber
Hausenfluck"
<Amber.Hausenfluck@senate.state.tx.us<mailto:Amber.Hausenfluck@senate.state.tx.us>>,
<richard.sooksiasian@senate.state.tx.us<mailto:richard.sooksiasian@senate.state.tx.us>>
Cc: "Laurie Vanhoose" <austintransplant@gmail.com<mailto:austintransplant@gmail.com>>
Subject: Additional materials for Voter ID Senate Committee hearing

Attached:

1) Crawford v. Marion County- Supreme Court ruling that upheld Indiana's strict voter id
legislation.
Distinguishing points:
1) Texas is a section 5 state with a much larger minority population than Indiana
2) Indiana provided a 10 day cure period after the election where as SB 14 only provides 6 days

28

JZ-PRIV000340

2) Texas Voting Rights Act Report page 8-13 describes the history of voting discrimination in Texas.

3) Deceptive Elections Flyer given to minority voters in Tarrant County in 2007. Example of fraud that is substantiated and unprosecuted because there is no law on the books to address.

4) Voter Id power point. Pages 4-8 layout the studies demonstrating impact of voter identification laws on minority electorate.

5) Maricopa County Analysis of Conditional Provisional Ballots in Arizona after their implementation of a voter id(proposition 200) that mirrored last year's Tx Senate Voter ID Bill (SB 364). Conditional Provisional Ballots were given to voters that lacked the ID documents in Arizona meaning these ballots are separate from regular provisional ballots.


Luis Figueroa

MALDEF

Legislative Staff Attorney

110 Broadway

Suite 300

San Antonio, TX 78205

LFigueroa@maldef.org<mailto:LFigueroa@maldef.org>

210-224-5476 ext. 212

JZ-PRIV000341

**Judith Zaffirini**

| | |
|---|---|
| **From:** | Harold Cook <hc@haroldcook.com> |
| **Sent:** | Friday, May 22, 2009 5:01 PM |
| **To:** | Harold Cook |
| **Subject:** | DEM CAUCUS: Voter ID Alert |

| | |
|---|---|
| **Importance:** | High |
| **Expires:** | Wednesday, November 18, 2009 12:00 AM |

Yep, you read the subject heading right, sorry about that.

Here's the deal: we need all hands on deck scrubbing the intent list for ANY House bill on which could conceivably fit voter ID legislation in it.

The House Democrats have the House schedule crippled at the moment in their efforts to keep the voter ID bill off the House floor. Thus the Republican desperation is growing to find a new vehicle in the Senate for voter ID.

Last session, Senate Democrats had to seek hard assurances **prior to suspending the rules** on several bills. They will undoubtedly need to do so again on several bills in the next few days.

So first, I ask any policy staff who runs across a bill on intent which they believe might fit voter ID legislation to call that bill to my attention.

Second, for any bill which might fit voter ID, prior to suspending the regular order of business for that bill, **prior to suspending the rules**, a Senate Democrat should ask the following of the sponsor:

**"Senator, prior to suspending on this bill, will you give us your absolute commitment that if this legislation becomes a vehicle for a voter identification amendment, you will immediately pull down the bill and not move the bill further?"**

If that sponsor's answer is anything short of a very clear commitment to keep voter ID out of his or her bill for the duration of the process for that bill, the Senate Democrats should vote no on the motion to suspend on that bill.

1

Judith Zaffirini

| | |
|---|---|
| From: | Harold Cook <hc@haroldcook.com> |
| Sent: | Wednesday, April 29, 2009 11:24 AM |
| To: | Harold Cook |
| Subject: | DEM CAUCUS: SB 1784 ALERT |

| | |
|---|---|
| Importance: | High |
| Expires: | Monday, October 26, 2009 12:00 AM |

SB 1784 is a bill requiring that an applicant for a driver's license or other state identification document or prove his or her federal immigration status. The bill is on intent, eligible tomorrow (4/30).

**Coupled with the threat of Texas having a voter ID law on the books, SB 1734, if passed, would make it that much more difficult to get an I.D. for the at-risk population whose voting rights would be curtailed by a voter ID law.  To the list of things those voters would have to gather together to take to DPS in order to get ID to vote, add to that their proof of citizenship.**

The bill was voted out of the Transportation Committee on a straight party line vote, with 3 Democrats voting against (the other Democrat was absent that day).

Not a single person testified in favor of the bill. Meanwhile, the ACLU, MALDEF, the Texas chapter of the American Immigration Lawyers Association, and the Texas Criminal Justice Coalition all testified against it.

This legislation may well have immigration policy implications which are harmful to Texans, but even with that aside, the voter I.D. implications alone merit a strong "no" vote on suspension for this legislation.

Here's what Senator Shapleigh has to say, which I think is exactly on point:

Dear colleagues,

I write to urge you to stand with me in opposing SB 1784 (Carona) -- a bill that contravenes some of our most deeply cherished Democratic values.  This bill not only vastly expands DPS' role with respect to immigration enforcement, it also lays the groundwork for the next stage of the debate on Voter ID.  I urge you to prevent this bill from coming to the Senate floor.

While Secretary Napolitano and the U.S. Congress are on the verge of repealing the impending requirement that states verify citizenship and immigration status of driver's license applicants under the Real ID Act of 2005 (due to serious civil rights, privacy, and fiscal implications), SB 1784 would thrust DPS precipitously onto this dubious terrain.  The bill seeks to codify parts of controversial rule TAC 15.171, adopted by the Public Safety Commission (PSC) last year, that requires DPS to verify citizenship and immigration status before issuing a Texas driver's license or identification card and creates a new validity period for driver's licenses for certain lawfully present immigrants in Texas.

On April 9, the 419th District Court issued a temporary injunction against further implementation of the new rule due to the harm caused to Texas residents granted lawful admission to this country and to the fact that DPS lacked the statutory authority to deny drivers' licenses to lawfully present persons.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

If SB 1784 passes, we will have provided DPS with the statutory authority to determine and verify U.S. citizenship (despite its irrelevance to eligibility for a Texas driver's license), and we are one step closer to even stricter and more suppressive voter identification and registration regimes. Elderly and minority Texans are already experiencing significant barriers in obtaining drivers' licenses under the new rules. How many more will be turned away from the polls not only with a new Voter ID law, but with additional restrictions on obtaining a Texas driver's license or ID?

Voter ID has already been forced upon us once, without a shred of evidence of its need or urgency. We must not allow yet another discriminatory measure, yet another unnecessary hardship, yet another incremental denial of the rights of poor, elderly, and minority Texans.

SB 1784 also continues the assault against law-abiding immigrants in Texas. Without an affirmative prohibition against DPS issuing vertical licenses to lawfully present immigrants, a provision explicitly asked for but excluded from SB 1784, Senate Democrats will give their tacit approval to DPS policy that brands immigrants and makes them vulnerable to greater discrimination and profiling. SB 1784 is founded upon the premise that immigrants are guilty until proven innocent, and thus deserving of special surveillance by DPS.

We cannot allow Republicans to further erode  rights, to further deny privileges, and to brand as suspect and inferior, those that bless and enrich our society. Driver's licenses are based on ability to drive and safety to others, not immigration status.

Please oppose a motion to suspend the rules to bring SB 1784 to the Senate floor.

3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Judith Zaffirini**

| | |
|---|---|
| From: | Harold Cook <hc@haroldcook.com> |
| Sent: | Friday, March 06, 2009 7:55 AM |
| To: | Harold Cook |
| Subject: | DEM CAUCUS: Fort Worth editorial against voter ID |
| | |
| Expires: | Wednesday, September 02, 2009 12:00 AM |

## FWST, March 6, 2009

## Editorial: Texas GOP senators gain advantage on voter–ID bill

Republican state senators, a 19-12 majority in their chamber, have decided to give a voter-identification bill a special political advantage in this year's legislative session. It's as if they believe nothing could be as important as victory on this issue.

Shame on them. They even trounced objections from minority Democrats who said topics like education, job creation, skyrocketing college tuition and children's health insurance deserve at least equal priority.

Only one GOP senator, John Carona of Dallas, broke ranks Jan. 14 when the Senate voted to allow a simple majority of senators to schedule a voter-ID bill for debate. On all other issues, two-thirds of the Senate must agree before a bill can be debated, a bar that Republicans can't clear without help from Democrats. They slipped past the "two-thirds rule" only by amending Senate rules on the second day of the session.

Carona said he favors voter ID but objects to the extraordinary measures his Republican colleagues are taking to ensure passage of the bill. A voter-ID bill passed the House two years ago, but Democrats blocked it in the Senate.

On its surface, requiring identification makes some sense. Advocates argue that poll workers can't know for sure who potential voters really are unless they show some form of government-issued photo identification. That leaves the voting system, a cornerstone of democracy, ripe for widespread fraud, they say.

But many Democrats object, saying this is a ruse for disenfranchising some of their key constituents. Poor, elderly and minority voters have a tougher time affording and obtaining the required ID, they say. Plus, they point out, no evidence of widespread voter fraud along these lines has been found in Texas.

Still, there's no use whining about it. Republican senators have carried out the most crucial part of their power play on this issue. By giving voter ID a giant "king's X" on the two-thirds rule, they've ensured their victory as long as they enforce intraparty discipline and hold ranks.

A different outcome will occur only if some GOP senators, like Carona, show themselves to be brave individuals unwilling to join a stampede. The voter-ID debate, on Senate Bill 362 by Sen. Troy Fraser of Horseshoe Bay, is scheduled to begin at 9 a.m. Tuesday in the Senate chamber in Austin.

At the very least, voter-ID supporters should prove the need for this restriction on Texas voters by showing that there have been voter fraud problems in this state.

This should be by solid proof, not hearsay or speculation. It should include evidence that people have been charged and convicted of abusing the voting privilege by trying to pass themselves off as someone else at the polls.

1

JZ-PRIV000486



2

JZ-PRIV000487

**Judith Zaffirini**

| | |
|---|---|
| **From:** | Warren von Eschenbach <Warren.VonEschenbach@senate.state.tx.us> |
| **Sent:** | Thursday, March 05, 2009 6:02 PM |
| **To:** | Judith Zaffirini |
| **Subject:** | Fwd: Voter ID working group: Presser Monday |
| **Attachments:** | Voter ID 09 Women and other issues.doc; ATT01304.htm |

Does Z want to attend?

Sent from my iPhone

Begin forwarded message:

> **From:** "Harold Cook" <hc@haroldcook.com>
> **Date:** March 5, 2009 5:41:35 PM CST
> **To:** "'Sara Gonzalez'" <Sara.Gonzalez@senate.state.tx.us>, "'Steve Scheibal'"
> <Steve.Scheibal@senate.state.tx.us>, "'David Edmonson - Shapleigh'"
> <david.edmonson@senate.state.tx.us>, "'Jeremy Warren'" <Jeremy.Warren@senate.state.tx.us>,
> "'Graham Keever - West'" <GRAHAM.KEEVER_SC@senate.state.tx.us>, "'Warren Von
> Eschenbach - Zaffirini'" <warren.voneschenbach@senate.state.tx.us>, "'Ian Randolph'"
> <Ian.Randolph@senate.state.tx.us>, <arturo.ballesteros@senate.state.tx.us>, "'Hector Nieto'"
> <Hector.Nieto@senate.state.tx.us>, "'Tomas Larralde - Uresti'"
> <tomas.larralde@senate.state.tx.us>, "'Lara Wendler'" <Lara.Wendler@senate.state.tx.us>,
> "'Debra Gonzales - Gallegos'" <debra.gonzales@senate.state.tx.us>
> **Subject: Voter ID working group: Presser Monday**

Voter ID staff –


Senator Van de Putte has asked that I let this group know that Monday at 3 pm in the
Lt. Governor's Press Room, as a lead-in to the next day's voter ID hearing, a press
briefing will be held featuring whatever Democratic Senators wish to be there, along
with nationally-recognized experts on voting rights. If you are not the press sec for your
office, you might want to check with your member or your press sec to see if your
member wants to participate.


If you can let me know by noon tomorrow that your Senator plans to attend, I can try to
get it included on the brief advisory which will advance the event to media.


Thanks

JZ-PRIV000488

Judith Zaffirini

From:        Harold Cook <hc@haroldcook.com>
Sent:        Friday, January 16, 2009 4:49 PM
To:          Harold Cook
Subject:     DEM CAUCUS: AAS-Local groups oppose voter ID bill

## Local groups oppose voter ID bill

By Stephanie Wang | Friday, January 16, 2009, 03:01 PM

A coalition of 14 public interest and civil rights organizations denounced voter identification requirements Friday in response to a rules change the Texas Senate approved earlier this week that will allow a vote on such a bill.

The upcoming legislation is "a solution for a problem that doesn't exist" in Texas, said Luis Figueroa, legislative staff attorney for the Mexican American Legal Defense and Educational Fund.

Requiring a photo ID at the polls would affect the elderly, disabled and poor, creating unnecessary barriers to voting and violating a basic fundamental right, Figueroa said.

In other states, voting laws make room for provisions or exemptions that help those without ID to still cast their ballots, he said.

The coalition also spoke out against what it called the manipulation of power in the Senate, where the rule change Wednesday paved the way for the voter ID bill to reach a vote with the approval of 16 of the 31 senators. In the past, the bill would have needed a two-thirds majority to come to a vote (the rules change approved Wednesday affected only voter ID).

With 19 Republicans and 12 Democrats in the Senate, the move has been seen as a partisan fight that will keep Democrats from blocking key issues.

"Any legislative initiative should succeed or fail based on its own merits, not because someone had to change the rules to make it happen," said Andy Wilson, spokesman for Public Citizen.

"Process and rulemaking is the difference between Oklahoma and Texas going to the national BCS championship," he quipped.

Other organizations participating in the press conference included local branches of the American Civil Liberties Union of Texas and the National Association for the Advancement of Colored People. Missing from the collaboration was the League of Women Voters, a group that felt the controversy was an internal matter for the Senate, Figueroa said.

It isn't uncommon for organizations to unite in expressing opinions on legislation, but the diversity of the groups represented was an indicator of the importance of the issue, Wilson said.

In the previous session, it was the Senate that had blocked the proposed voter ID bill. Now organizations will have to look to the House of Representatives and the committee process for support in defeating it, Figueroa said.

4

JZ-PRIV000489

**Judith Zaffirini**

| | |
|---|---|
| From: | Harold Cook <hc@haroldcook.com> |
| Sent: | Monday, December 15, 2008 8:43 AM |
| To: | Harold Cook |
| Subject: | DEM CAUCUS: SAEN, "Dewhurst trying to work out a voter ID deal" |

| | |
|---|---|
| Expires: | Saturday, June 13, 2009 12:00 AM |

Members and staff, a note on this piece on voter ID from the Express-News –

Senate Democrats will be reminded that the voter I.D. bill from last session, as it came over from the house, <u>did</u> have a provision exempting seniors from the bill. Of course in the typical bait-and-switch method of legislative strategy common to legislative leadership these days, the exemption was merely stripped out in the Senate committee substitute.

The senior exemption failed to fool any of the House Democrats – they voted against the bill with the senior exemption included. The reason is simple: the Texans discriminated against in the legislation are not limited by age.

Dewhurst trying to work out a deal to get voter ID bill passed
By Clay Robison - Express-News

AUSTIN — If at first you don't succeed, try sweetening the deal.

"Sweet" probably isn't the right word here, given the bitter fight in the Senate over the unsuccessful Republican effort to pass a voter identification bill two years ago. But a compromise is being discussed.

The measure, which would have required voters to produce some type of photo ID before being allowed to cast ballots, won easy approval in the House. But Lt. Gov. David Dewhurst was unable to muster the two-thirds vote necessary to move the bill through the Senate, thanks to a solid bloc of 11 Democratic votes against it.

The U.S. Supreme Court since has upheld the constitutionality of a voter ID law in Indiana. But the opposition in the Texas Senate would seem stronger than ever, since there will be at least 12 Democratic senators during the upcoming session — 13 if Chris Bell wins a Houston-area runoff on Tuesday.

Dewhurst plans to try again and already has been talking to several Democratic senators about making a deal. One thing he is offering is an exemption for senior citizens from the ID requirement or, at least, exempting seniors from having to pay a fee for their IDs.

Several details, including the cutoff age, apparently have yet to be worked out. The bill approved by the House in 2007 would have exempted voters 80 and older from the ID requirement, but that provision was stripped out by the Senate State Affairs Committee.

Sen. Mario Gallegos of Houston, who joined his Democratic colleagues in killing the ID bill two years ago despite a difficult recovery from a liver transplant, said Dewhurst has approached him about reviving the senior exemption provision.

Gallegos said he is willing to talk some more but isn't ready to drop his opposition to the bill, particularly because he hasn't seen the proposal in writing.

1

JZ-PRIV000490

"The seniors' provision is a good idea, but I have concerns that the bill would still discriminate against other people," he said, including immigrants who recently have become citizens.

In other words, there still are strong partisan differences over the bill.

Republicans say photo IDs would guard against voter fraud. Democrats argue that Republicans are trying to intimidate minority voters who are more likely to support Democratic candidates.

This controversy will rage a while longer.

2

**Judith Zaffirini**

| | |
|---|---|
| **From:** | dmstephanie@gmail.com on behalf of Stephanie Chiarello<br><stephanie@texassenatedemocrats.org> |
| **Sent:** | Thursday, February 09, 2012 10:17 AM |
| **To:** | Kirk Watson |
| **Subject:** | Voter ID Update and Preparation |
| **Attachments:** | Memorandum in Support of Motion to Intervene.pdf; Motion to Intervene.pdf; Proposed Order on Motion to Intervene.pdf |

Senators and SDC Staff -

Sondra Holtom at the TDP has asked that I share the following update with you about Voter ID. Please let me or Sondra know if you have any questions.

Respectfully,

************************

*ATTN Elected Officials - The following was just sent to your respective County Chairs. Any assistance you can provide in these efforts would be most appreciated. If you have any questions about the status of the voter id legislation, feel free to contact me anytime.*

Dear County Chairs,

As many of you know, during the last legislative session the Texas Legislature passed a bill (SB 14) that would require voters to show a photo ID when they vote. However, Texas is one of the states subject to Section 5 of the Voting Rights Act, which means that before any changes to voting procedures can be implemented, they must be approved either by the Department of Justice (DOJ) or by a federal court in a process known as "preclearance". You can read more about the preclearance process as well as the rest of the back story on the Texas Voter ID saga at the links at the bottom of this post.

First of all, the DOJ has not issued an opinion one way or the other on the voter ID bill. They have until mid-March to do so. While no one knows for certain, most people who follow these sorts of things believe the DOJ will deny preclearance to the Texas law just as they did to the South Carolina voter ID law.

1

JZ-PRIV000505

Instead of waiting for the DOJ to issue an opinion, the State of Texas has filed an Expedited Complaint for Declaratory Judgment in U.S. District court asking for the court to grant preclearance to the voter ID bill. You can read that filing here. A motion to intervene in that case has been filed by noted voting rights attorneys Gerry Hebert and Chad Dunn on behalf of several individuals who will be harmed by the legislation. Those filings are attached.

We do not know what the court's decision will be, how long it will take to make a decision, or if there will be further legal action in a higher court once the District Court acts.

**Bottom line, we still don't know if voter i.d. will be in place for any of the elections held in Texas this year.** At this rate, it's entirely possible that it won't be. However, in an effort to be prepared just in case photo identification becomes a requirement for voting at some point, here are the things your County Party needs to know and/or do. Please share this information with others so that voters can be informed and prepared.

**The types of ID that will be necessary IF the voter ID bill is approved are:**

- Driver's license, election identification certificate, personal identification card, or concealed handgun license issued by the Texas Department of Public Safety;
- United States Military identification card containing the person's photograph;
- United States citizenship certificate containing the person's photograph; or
- United States passport.

With the exception of the U.S. citizenship certificate, the identification must be current or have expired no more than 60 days before being presented for voter qualification at the polling place.

There are some exemptions for voters who are disabled or have religious objections to being photographed, however, the local elections offices will not be able to put the procedures in place to keep track of who qualifies unless and until the voter ID bill is precleared.

Voters who do not possess any of the above types of ID will be able to obtain a free Election Identification Certificate (EIC) from the Department of Public Safety, IF the law is precleared. **Voters will not be able to apply for an EIC unless and until preclearance is granted.** In order to obtain an EIC, voters will need to bring the same type of documentation used to prove identity that they would need if they were applying for a Driver's License or Personal Identification card. If the voter does not currently have the required documentation to obtain an EIC, now would be a good time to start the process of obtaining the necessary documentation. The list of acceptable documents is at http://www.txdps.state.tx.us/DriverLicense/identificationrequirements.htm.

2

**Helpful tip:** One of the acceptable pieces of "Supporting Identification" necessary is a Voter Registration Card. So now would be a good time for a voter registration drive. Voters can register, change an address or get an updated certificate by going to http://www.sos.state.tx.us/elections/voter/reqvr.shtml.

For voters who need to obtain documentation to get an EIC, below are some links that might help them through the process:

- Department of Public Safety
- Social Security Administration
- Texas Vital Records
- Vital Records from other states

Additionally, start recruiting election judges and clerks who are assertive and who will speak up and prevent voters from being turned away or forced to vote provisional ballots. I realize there are never enough election workers, particularly ones who are well trained, however, anyone who cares about voters being disenfranchised needs to step up and offer to be an election worker. That is our front line of defense. Once we know what the procedure for qualifying voters will be (photo id or no photo id), trainings can be conducted by the party (in addition to the ones conducted by the Elections office) to ensure that OUR workers appointed by the Democratic Party are well-versed in the law.

Also, start gathering commitments from attorneys and others familiar with the election process to be part of the Voter Protection team locally. That will be needed regardless of any photo id requirements. The TDP will do trainings on this as well, both in person and via webinar.

Another thing you can do is identify organizations (these are most likely non-profits) that assist people in obtaining necessary documents such as birth certificates, citizenship papers, legal documents from court proceedings, etc and especially organizations that assist people in paying for this documentation and/or assist in helping people obtain photo identification (some charities that focus on the homeless do this). Please send any information you find to me. That way, just in case, we'll have a list to distribute of where people who lack the funds to pay for the documents they need to get the "free" id can get help paying for those docs.

We'll keep you posted as things develop. We'd also love to hear any stories you have to share from people who want to vote but lack the necessary ID that would be imposed under the new law if it is approved. Below are links to background information on the Texas Voter I.D. fight to get you up to speed.

**Texas Voter I.D. Background Info**

- Petition to preserve Voting Rights
- Fight Back

3

JZ-PRIV000507

- Letter To DOJ 1
- TDP Demands DOJ deny preclearance
- SOS Hiding the Truth
- Your Voices Heard
- TDP to Gonzales: Prove Your Claim
- SOS Voter ID Flip Flop
- Gonzales Claims Meritless
- Final Notice
- DOJ Blocks South Carolina's Voter ID Law

Sincerely,

Sondra Haltom

Political Director

Texas Democratic Party

505 West 12th Street, Suite 200

512-478-9800 phone

512-480-2500 fax

--

**Stephanie Chiarello**
*Director, Senate Democratic Caucus*

4

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Sean Griffin**

| | |
|---|---|
| **From:** | Harold Cook <hc@haroldcook.com> |
| **Sent:** | Tuesday, January 25, 2011 2:32 PM |
| **To:** | Amber Hausenfluck; Steve Scheibal; Ray Martinez; Debra Gonzales; David Edmonson; Will Krueger; Jason Hassay; Dan Buda; Graham Keever; Micah Rodriguez; Graham Keever_SC; Sara Gonzalez; Lara Wendler; Gonzalo Serrano; Oscar Garza; Sushma Smith |
| **Subject:** | follow-up on Zaffirini's identity issue |

Senator Zaffirini did an excellent job pointing out how people's drivers license photo often does not resemble the actual people. Here's related documentation.

Begin forwarded message:

**From: Yannis Banks <yannis_banks@yahoo.com>**
**Date: January 25, 2011 2:27:02 PM CST**
**To: hc@haroldcook.com**
**Subject: Fw: Blank 33**

----- Forwarded Message ----
**From:** Gary Bledsoe <garybledsoe@sbcglobal.net>
**To:** "Asaka, Anson" <aasaka@naacpnet.org>
**Cc:** Robert S. Notzon <robert@notzonlaw.com>; Yannis Banks <yannis_banks@yahoo.com>; Harold Howell <harold17@swbell.net>; "hjefferson@protectorsinsurance.com" <hjefferson@protectorsinsurance.com>; brian rowland <browland3@hotmail.com>; "Goode, Victor" <vgoode@naacpnet.org>; victor goode <vlg0208@aol.com>; Mrs. Linda Lydia <llydia@sbcglobal.net>; Phyllis L. Jones <twoinch@embarqmail.com>; "Watkins, Carmen" <cwatkins@naacpnet.org>; Carolyn Scantlebury <cscantle01katrina@yahoo.com>; John Tanner <john.k.tanner@gmail.com>
**Sent:** Tue, January 25, 2011 2:23:47 PM
**Subject:** Re: Blank 33

## Race, Racism and the Law
### Speaking Truth to Power!!

# Why are Cross-Racial Eyewitness IDs Especially Unreliable?

| | | |
|---|---|---|
| Checkout: Reclamationgallery.com | | Complete Survey: Race Relations 2011 |
| UNITS | | **Submit for Periodic Updates** |
| Institutional Racism | John P. | Update List |
| 01 Race | Rutledge | |
| 02 Citizenship Rights | | CHAPTERS |
| 03 Justice | excerpted from: John | Justice and Racism |

1

04 Basic Needs

05 Intersectionality

06 Worldwide

**Web Editor**

**Vernellia R.**

**Randall**

Professor of Law

The University of

Dayton

OTHER WEBSITES

Personal Website

Race and Health Care

Legal Education

The JD Project

P. Rutledge, They All Look Alike: the Inaccuracy of Cross-racial Identifications , 28 American Journal of Criminal Law 207-228, 211-214 (Spring 2001)(173 Footnotes Omitted)

In general, there is a much greater possibility of error where the races are different than where they are the same . . . .

A cross-racial ID occurs when an eyewitness of one race is asked to identify a particular individual of another race. The last half-century's empirical study of cross-racial IDs has shown that eyewitnesses have difficulty identifying members of another race, though the degree to which this difficulty affects the accuracy of an eyewitness ID is

Presidential Power

Civil Justice

Criminal Justice

Laws and Policies

Minority Group Interests

Legal Education

Practice of Law

Alternative Dispute Resolu

OTHER PAGES

What's New

Obama's Administration

Webinars

Whitest Law Schools

Law Reviews

Newsletter

Racial Surveys

Awards

Syllabus

Comments

Search this Site

Contact

2

not certain.
Likewise, it is
unclear whether
all races are
affected.

Known as the
"own–race" effect
or "own–race"
bias, eyewitnesses
experience the
"cross–racial
impairment" when
attempting to
identify
individuals of
another race. The
"own–race effect"
is "strongest when
white witnesses
attempt to
recognize black
subjects," and
apparently less
influential to black
witnesses. In fact,
four separate
studies found that
black
eyewitnesses do
not experience
any cross– racial
impairment. And
another found
that blacks make
better witnesses in
general. But five
other studies

3

found that white eyewitnesses simply experience the impairment more often than blacks. Regardless of the degree to which each race suffers from the impairment, a leading scholar on the subject has concluded that "it has been observed so many times" that "it seems to be a fact."

Concern about the frequent inaccuracy of cross–racial IDs is extensively documented in case law and social science data. And some judges believe the cross–racial nature of an identification may affect accuracy in the same way as proximity to the perpetrator and poor lighting conditions. As one federal judge

4

expressed more
than a decade
ago:

We are painfully
aware of
miscarriages of
justice caused by
wrongful
identification.
Those
experienced in
criminal trial work
or familiar with
the administration
of justice
understand that
one of the great
problems of proof
is posed by
eyewitness
identification,
especially in
cross–racial
identification . . . .

Likewise, a
prominent state
supreme court
judge discussed
the complexity of
the phenomena as
follows:

[I]t is well
documented that
cross–racial
identification is
less reliable than

5

JZ-PRIV000593

identification of
one person by
another of the
same race.
Considerable
evidence indicates
that people are
poorer at
identifying
members of
another race than
of their own.

Adding the
commonly held
belief that blacks
are treated
disparately in the
criminal justice
system, it is easy
to see that the
problem is
complex and not
easily allocated for
or rectified.

And yet, this
wealth of social
science data and
abundance of case
law has yet to
inspire legal
scholars to
address the issue
directly. In fact, I
was unable to
locate a single law
review article that

6

deals exclusively with the topic of cross–racial IDs. Hence, this article: my contribution to the dialogue. It should be noted that the article is not meant to be exhaustive. Rather, it is written as an overview written with the express intent to inspire contributions from the scholastic legal community. The problem is not going to disappear. It must be dealt with, as the very integrity of our criminal justice system depends upon its resolution.

I first became interested in the subject matter while working as a student clinician in law school. The issue seemed to arise in many of the clinic's cases. Granted, my

7

universe of experience was a bit atypical. I was one of a handful of white students in my entering class at Howard University School of Law. And most of our clinic's clients were black. The high concentration of white victim/black perpetrator cases caused me to consider many issues, some societal and some interpersonal. One of these issues was the apparent inaccurate identification of several of our clients.

As a white graduate of a historically black law school, I bring a unique perspective to the discussion of cross-racial IDs. I believe my experiences add a valuable insight to

8

the central question at hand: Why do white people have so much trouble correctly identifying a black person?

Several months of research and reflection on little else but this topic has led me to a few conclusions. These conclusions are my own and are not based upon, or necessarily supported by, empirical data.

By nature, people are generally homogenous. We tend to prefer those we are familiar with, those with whom we identify. White people tend to prefer other whites, as rich people tend to prefer the company of others with money. These

9

JZ-PRIV000597

groups are not alone in that respect: black people generally feel most comfortable around other blacks and poor people around other poor people. There's a pre-established comfort level--a set of customs and mores already in place. The comfort level allows one to relax and live less deliberately.

Those of different races may have different customs and mores, different ideas of permissible speech, behavior, diet, and dress. The hair texture and styles of the various races is often different, as is facial and body structure. In light of these considerations, I believe the major

10

JZ-PRIV000598

cause of the cross–racial impairment is the lack of familiarity with those of other races. We often work together, and at times eat together, but seldom do we live in the same neighborhoods or attend the same churches. These latter activities reflect, in my mind, our lack of comfort among those of other races. Sadly, it is a self–fulfilling cycle: comfort keeps us apart, and yet, living amongst each other would establish a comfort level. With this paradox as our communal mindset, familiarity is a difficult thing to achieve. How can one be expected to accurately identify a member

11

of a group with
whom they are so
utterly unfamiliar?

One of my
colleagues has
attacked my
viewpoint as
simplistic. He
refuses to believe
that familiarity
with those of
other races might
alleviate the
inaccuracy of
cross–racial IDs.
As support for his
contention, he
cites various
authorities that
conclude,
"counterintuitively,
the ability to
perceive the
physical
characteristics of
a person from
another racial
group apparently
does not improve
significantly upon
increased contract
with other
members of that
race . . . ."

Ironically, I believe
these findings

12

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

strengthen my rationale as expressed in the analysis above. Time spent in the same general location is not the same as time spent together. Just as talking to someone is not necessarily communicating with that person. I believe the entire basis of these findings is flawed. Those orchestrating the studies confuse commonality with comfort. Like two New Yorkers passing on the street, many of us have never been intimate with someone of another race. And without intimacy, we have no reason to feel comfortable. Nor do we have the right to expect an accurate eyewitness ID.

13

JZ-PRIV000601

In my three years at Howard, I learned so many things that I didn't know I didn't know. I learned about locks and cornrows, braids and fades. I learned the difference between high yella and red-boned and brown-skinned and dark-skinned. My life experience does not allow me to accept the finding that these discoveries do not make me more likely to correctly identify a black assailant than a white person without a similar experience.

In that respect, I believe cross-racial IDs will become less of a problem as America matures and we get closer to Martin Luther King Jr.'s dream.

14

At this time, however, the unreliability of cross–racial IDs is particularly troublesome. One in three black males between the ages of twenty and twenty-nine is under judicial supervision in this country. And while only five percent of the U.S. population, black males make up more than half of America's prisoners. We must explore the various measures available to help ameliorate the harm caused by inaccurate cross-racial IDs. Innocent people have been, and continue to be, stripped of their liberty simply because "they all look alike."

. Associate, Donahue, Gallagher, Woods

15

JZ-PRIV000603

& Wood, L.L.P.;
L.L.M., Real
Property
Development,
University of
Miami School of
Law; J.D., Howard
University School
of Law (cum
laude); B.A.,
Philosophy, Loyola
Marymount
University. This
article is
dedicated to all
those falsely
imprisoned due to
an inaccurate
eyewitness
identification. Our
collective soul is
marred by your
injustice. And no
subsequent
remedy can repay
you for the pain
you've suffered or
the life you've
lost. However, let
us begin with an
apology and an
oath to never
again permit such
injustice.

Same [ The Underlying Myths of Colorblindess Jurisprudence ]  [ Presidential Power and Racial Justice ]
level: [ The McKinney Affair: Rampaging Racism and a Cowardly Caucus ]
[ Misusing MLK Legacy and the Colorblind Theory ] [ "Sounding Black": Court-

JZ-PRIV000604

sanctioned Racial Stereotyping ]   [ Race Reputation and the Supreme Court ]
[ Judicial Discrimination ]   [ Peremptory Challenges ]   [ Ohio Dilemma: Race and the State Bill of Rights ]
[ Judicial Tolerance of Racial Bias ]   [ Racial Evaluations of Credibility ] [ Why are Cross-
Racial Eyewitness IDs Especially Unreliable? ]   [ Disrespect of Black Judge ]
[ O. J. Trial and Black Judges ]   [ Now the Robber Barons Replace the Welfare Queens (and Rightly So) ]

Child
Level:   [ Home ]   [ Up ]

Parent [ Justice and Race (Generally) ]   [ Civil Justice and Race ]   [ Criminal Justice and Race ]   [ Laws and Policies ]
Level: [ Convergent of Minority Group Interests ]   [ Legal Education ]   [ Practice of Law and Race ]
[ Alternative Dispute Resolution and Related Matters ]

Units:
[Race and Racial Groups] [Citizenship Rights]   [Justice and Race] [Patterns of Basic Needs] [Intersectionality
Issues] [Human Rights]





Copyright @ 1997, 2008.
Vernellia R. Randall All Rights Reserved.
Contact: race.mail@notes.udayton.ed

Always Under Construction!

In accordance with Title 17 U.S.C. section 107, some material on this website
is provided for comment, background information, research and/or
educational purposes only, without permission from the copyright owner(s),
under the "fair use" provisions of the federal copyright laws. These materials
may not be distributed for other purposes without permission of the
copyright owner(s).

| Last Updated: |
| --- |
| Friday, December 31, 2010 |
| You are visitor number |
| 1 |
| Since Feb 24, 2004 |

Thanks to Derrick Bell and his pioneer work:
Race, Racism and American Law (1993).

17

JZ-PRIV000605

Sent from my iPad

On Jan 25, 2011, at 2:21 PM, "Asaka, Anson" <aasaka@naacpnet.org> wrote:

> My case involves violation of the National Voter Registration Act. Victor's case dealt with voter identification laws.

**From:** Gary Bledsoe [mailto:garybledsoe@sbcglobal.net]
**Sent:** Tuesday, January 25, 2011 2:50 PM
**To:** Asaka, Anson
**Cc:** Robert S. Notzon; Yannis Banks; brian rowland; Goode, Victor; victor goode; Mrs. Linda Lydia; Phyllis L. Jones; Watkins, Carmen; Carolyn Scantlebury; John Tanner; Harold Howell;hjefferson@protectorsinsurance.com
**Subject:** Re: Blank 33

Anson what are the issues outlined in the lawsuit? I will be going up to testify shortly. Thanks.

Sent from my iPad

On Jan 25, 2011, at 1:30 PM, "Asaka, Anson" <aasaka@naacpnet.org> wrote:

> The Indiana suit is in District Court. It is close to final settlement.

**From:** Gary Bledsoe [mailto:garybledsoe@sbcglobal.net]
**Sent:** Tuesday, January 25, 2011 2:28 PM
**To:** Asaka, Anson
**Cc:** Robert S. Notzon; Yannis Banks; victor goode; Mrs. Linda Lydia; Phyllis L. Jones; Watkins, Carmen; Carolyn Scantlebury; John Tanner; Harold Howell;hjefferson@protectorsinsurance.com; brian rowland; Goode, Victor
**Subject:** Re: Blank 33

The lawsuit that went to the Supreme Court? Also, I thought Victor said once there was at least one Indiana County that reported numerous problems?

Sent from my iPad

On Jan 25, 2011, at 1:21 PM, "Asaka, Anson" <aasaka@naacpnet.org> wrote:

> I can send you a copy of the Indiana complaint.

18

JZ-PRIV000606

**From:** Gary Bledsoe [mailto:garybledsoe@sbcglobal.net]
**Sent:** Tuesday, January 25, 2011 1:43 PM
**To:** Robert S. Notzon
**Cc:** Yannis Banks; Phyllis L. Jones; Watkins, Carmen; Asaka, Anson; Carolyn
Scantlebury; John Tanner; Harold Howell; hjefferson@protectorsinsurance.com;
brian rowland; Goode, Victor; victor goode; Mrs. Linda Lydia
**Subject:** Re: Blank 33

Yannis do you want to send over the final one that we
copied? Thanks. Victor and Anson do you have anything on the
Georgia or Indiana cases you can share?

Sent from my iPad

On Jan 25, 2011, at 7:53 AM, "Robert S. Notzon"
<robert@notzonlaw.com> wrote:

> some edits
>
> On Tue, Jan 25, 2011 at 1:25 AM, Yannis Banks
> <yannis_banks@yahoo.com> wrote:
>
> Sorry I forgot to attach the document.
>
> ---
>
> **From:** Gary Bledsoe <garybledsoe@sbcglobal.net>
> **To:** Yannis Banks <yannis_banks@yahoo.com>; Phyllis L.
> Jones <twoinch@embarqmail.com>; Carolyn Scantlebury
> <cscantle01katrina@yahoo.com>; John Tanner
> <john.k.tanner@gmail.com>; Harold Howell
> <harold17@swbell.net>;
> "hjefferson@protectorsinsurance.com"
> <hjefferson@protectorsinsurance.com>; Robert Notzon
> <robert@notzonlaw.com>; brian rowland
> <browland3@hotmail.com>; victor goode
> <vgoode@naacpnet.org>; victor goode <vlg0208@aol.com>;
> Mrs. Linda Lydia <llydia@sbcglobal.net>; Carmen Watkins
> <cwatkins@naacpnet.org>
> **Sent:** Tue, January 25, 2011 12:39:52 AM
> **Subject:** Blank 33
>
> Hello guys. I just finished a draft of the testimony I will be
> giving tomorrow morning and wanted to see if any of you
> might have input.
>
> Sent from my iPad

19

--

Law Office of Robert S. Notzon

1507 Nueces Street

Austin, Texas 78701

512-474-7563

512-474-9489 fax

<Gary's Testimony-rsn.doc>

20

Memo to Senator Judith Zaffirini                                        1 of 1
**Re: Voter ID Bill, Declaration of Origin**
CV/February 13, 2009

**This memo is briefs Z re Rep. Ruth Jones McClendon's legislative concept for a bill to counter Voter ID bills introduced in the House and Senate. Rep. Jones seeks Z sponsorship in the house.**

I.    Rep. McClendon's bill would establish a means for county courts having probate jurisdiction or district courts with family law jurisdiction to receive petitions for a Declaration of Origin.

    A.    The petition and declaration of origin will establish, by adjudication of the court, the status of a person's birthplace, thus creating a legal document as proof of citizenship.

        1.    Persons without legal documents to prove birth would utilize this option to establish citizenship.

        2.    Testimony by sworn witness in a court of law will provide the necessary evidence to support the petition's assertions.

    B.    Filing fee for the petition would be $25,

    C.    A Pauper's Affidavit stating inability to pay the fee is the alternative for person who cannot afford the petition filing fee.

    D.    This bill is structured on language routinely used in probate courts to establish heirs to an estate.

    E.    Currently under Texas law there is no statutory provision for Declaration of Origin and this bill would create a legal avenue for persons to establish their U.S. citizenship.

II.   Rep. McClendon requested a bill draft from the Texas Legislative Council yesterday, Thursday, February 12.

    A.    Sample language is attached.

    B.    CV will forward the House bill draft once it is prepared.

**CV recs Z sponsor this legislation in the senate. Does Z agree?**

**Y\_\_\_ ; N\_\_\_**       T/CV

**This memo is to brief Z on a phone appointment with U.S. Department of Justice (DOJ) attorneys re a lawsuit against the state in which the DOJ challenges the legality and constitutionality of Texas' Voter ID law.**

**HOTS**

I.    SG spoke with DOJ attorney John Powers who said that he wants to interview Z on a broad range of her perspective of the Voter ID law and its implementation in Texas.

    A.    The DOJ is doing preliminary research in relation to their lawsuit, *Veasey v. Perry*, a civil rights lawsuit filed in federal court challenging the legality and constitutionality of the Voter ID law.

    B.    This is not a formal deposition, but rather an informal discussion that will help inform their next steps.

II.   Although Mr. Powers would not provide a list of questions out of cautiousness with the ongoing litigation, he generally mentioned that he would be asking Z if she was aware of certain issues regarding the 2012 elections, including

    A.    instances of fraud;

        1.    SG is unaware of any instances of fraud,

        2.    other than sporadic cases of mail-in ballot fraud.

    B.    education efforts;

        1.    The Secretary of State used federal funds from 2011 and other available funding to distribute information regarding the new law.

        2.    More effectively perhaps, private group, political parties, and other interested stakeholders carried out promotional activities, e.g. the Austin city buses have advertisements in English and Spanish.

Memorandum to Senator Judith Zaffirini                           2 of 3
Re: Meeting Background, DOJ Phone Appointment re Voter ID Litigation
December 13, 2013
SG/TJS

     C.    Legislative actions:

         1.    legislative efforts to examine the election proceedings;

         2.    special legislative committees or actions created to examine the election proceedings; and

         3.    legislation enacted to affect the elections.

         4.    SG is not aware of any legislative efforts or actions since the passage of Voter ID.

     D.    instances of discrimination, including rhetoric.

         1.    SG is not aware of any overt instances of intentional discrimination

         2.    employed as a result of Voter ID.

III.    SG believes that most of the questions could be easily answered through research by the DOJ attorneys themselves (e.g. legislation in 2013), however Z may have particular insights and anecdotes that could help inform their litigation research.

IV.    Z recently received a letter from the Attorney General (was attached with TJS memo routed to Z this week, but not yet returned) referencing that the DOJ may contact Z and offering to represent Z if she wishes,

     A.    provided she shares the state's interest in defending the suit.

     B.    Because Z's interests are not aligned with the position taken by the state in this litigation, there is little to be gained from seeking representation by the OAG.

V.    Since Voter ID has been implemented, there has been one major election, the November election that included the constitutional amendment ballot.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Memorandum to Senator Judith Zaffirini                                    3 of 3
Re: Meeting Background, DOJ Phone Appointment re Voter ID Litigation
December 13, 2013
SG/TJS

    A.    Reporting indicated that there were very little issues with
            implementing the new law, however

    B.    many women in particular (and notably Greg Abbott) were allowed to
            sign an affidavit because their name on the voter laws and their
            driver's license differed slightly (often due to maiden names).

## LOTS

I.    In 2011 the 82nd Legislature passed SB 14, relating to requirements to vote,
    including presenting proof of identification; providing criminal penalties
    (Voter ID).

II.    The Voter ID bill passed out of the Senate to engrossment on a straight
    party-line vote (19 yeas, 11 nays, one absent),

    A.    with Republicans voting yea and Democrats, including Z, voting nay.

    B.    The Senate later adopted the conference committee report along a
            similar party-line vote (19 yeas, 12 nays).

III.    In June of this year, in a case entitled *Veasey v. Perry*, several Texas
    residents and the U.S. Department of Justice (DOJ) sued the state in federal
    court to enjoin enforcement of SB 14 on the ground that the law violates
    both Section 2 of the Voting Rights Act and the Equal Protection Clause of
    the Fourteenth Amendment.

    A.    In particular, the plaintiffs' complaint alleged that the law would have
            a "retrogressive effect on Hispanic and African American voters"
            because

    B.    those voters "are more likely than Anglos to lack the photo
            identification" required by the law.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Judith Zaffirini**

From:        Nathan Lerma <Nathan.Lerma@senate.state.tx.us>
Sent:        Tuesday, April 10, 2012 12:25 PM
To:          Judith Zaffirini
Cc:          Ray Martinez; Sean Griffin
Subject:     RE: contact info

Z,

CMZ's new office address is:

401 West 15th Street, Suite 840
Austin, Texas 78701

NL will update contact lists and will forward 6 copies to Z.

T/NL


**Nathan Lerma, Scheduler**
Office of Senator Judith Zaffirini
Senate District 21
Capitol 1E.14
P.O. Box 12068
Austin, Texas  78711
512/463-0121
Toll Free: 800/851-1568
Fax: 512/475-3738

**From:** Judith Zaffirini [mailto:zaffcomm@zaffirini.com]
**Sent:** Monday, April 09, 2012 10:46 AM
**To:** Nathan Lerma
**Cc:** Ray Martinez; Sean Griffin
**Subject:** contact info

NL:

P get CMZj's new office address from Lindsey and update our list.

Also forward to me.

T/Z


**From:** Nathan Lerma <Nathan.Lerma@senate.state.tx.us>
**Date:** Mon, 9 Apr 2012 10:14:24 -0500
**To:** Judith Zaffirini <zaffcomm@zaffirini.com>

3

JZ-PRIV000735

**Cc:** Ray Martinez <Ray.Martinez@senate.state.tx.us>, Sean Griffin
<Sean.Griffin@senate.state.tx.us>
**Subject:** Phone Appointment Request for Z

Z,

Attached is an appointment request form for Catherine Meza of the DOJ who is requesting a
phone appointment with Z to discuss S.B. 14, relating to requirements to vote, including
presenting proof of identification; providing criminal penalties.

Ms. Meza is requesting that this appointment be held ASAP.

NL recs that Z hold this phone appointment today at 2pm.

OK with Z?

If Y, NL will have Ms. Meza call DO and will instruct DO to forward to Z's 7132#
If N, NL recs this appointment be held tomorrow, Tues., 4/10, 2pm.

Please note that Z had agreed to a meeting today at 11am but that NL received Z's confirmation
on Mon., 4/9.

T/NL

**Nathan Lerma, Scheduler**
Office of Senator Judith Zaffirini
Senate District 21
Capitol 1E.14
P.O. Box 12068
Austin, Texas  78711
512/463-0121
Toll Free: 800/851-1568
Fax: 512/475-3738

4

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Judith Zaffirini**

| | |
|---|---|
| **From:** | Ray Martinez <Ray.Martinez@senate.state.tx.us> |
| **Sent:** | Monday, April 09, 2012 3:08 PM |
| **To:** | Judith Zaffirini |
| **Subject:** | RE: Phone Appointment Request for Z |

I'm sure you were great, as always. She made it clear to me that if she asked you anything that was a public record, she would not have a problem locating that info via public sources. Thanks for doing this.

I'm headed to our SHEC staff meeting now…

T/Rm.

Ray Martinez
Chief of Staff and General Counsel
Director, Senate Higher Education Committee
Office of Senator Judith Zaffirini
Senate District 21
512/463-0121

> **From:** Judith Zaffirini [mailto:zaffcomm@zaffirini.com]
> **Sent:** Monday, April 09, 2012 2:54 PM
> **To:** Ray Martinez
> **Subject:** Re: Phone Appointment Request for Z
>
> She might call you.
>
> I hope she wasn't disappointed that I couldn't recall the amendments, debate, etc., but I told her they were accessible online.
>
> T/Z

**From:** Ray Martinez <Ray.Martinez@senate.state.tx.us>
**Date:** Mon, 9 Apr 2012 14:46:21 -0500
**To:** Judith Zaffirini <zaffcomm@zaffirini.com>, Nathan Lerma <Nathan.Lerma@senate.state.tx.us>
**Cc:** Sean Griffin <Sean.Griffin@senate.state.tx.us>
**Subject:** RE: Phone Appointment Request for Z

Thanks/Rm.

6

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Ray Martinez
Chief of Staff and General Counsel
Director, Senate Higher Education Committee
Office of Senator Judith Zaffirini
Senate District 21
512/463-0121

**From:** Judith Zaffirini [mailto:zaffcomm@zaffirini.com]
**Sent:** Monday, April 09, 2012 2:45 PM
**To:** Nathan Lerma
**Cc:** Ray Martinez; Sean Griffin
**Subject:** Re: Phone Appointment Request for Z

Done.

VERY EXTENSIVE INTERVIEW. Asked me questions that I couldn't answer with clear recollection.

I told her RM and HC were knowledgeable about the process.

T/Z

---

**From:** Nathan Lerma <Nathan.Lerma@senate.state.tx.us>
**Date:** Mon, 9 Apr 2012 10:14:24 -0500
**To:** Judith Zaffirini <zaffcomm@zaffirini.com>
**Cc:** Ray Martinez <Ray.Martinez@senate.state.tx.us>, Sean Griffin <Sean.Griffin@senate.state.tx.us>
**Subject:** Phone Appointment Request for Z

Z,

Attached is an appointment request form for Catherine Meza of the DOJ who is requesting a phone appointment with Z to discuss S.B. 14, relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

Ms. Meza is requesting that this appointment be held ASAP.

NL recs that Z hold this phone appointment today at 2pm.

7

JZ-PRIV000743

OK with Z?

If Y, NL will have Ms. Meza call DO and will instruct DO to forward to Z's 7132#
If N, NL recs this appointment be held tomorrow, Tues., 4/10, 2pm.

Please note that Z had agreed to a meeting today at 11am but that NL received Z's
confirmation on Mon., 4/9.

T/NL

**Nathan Lerma, Scheduler**
Office of Senator Judith Zaffirini
Senate District 21
Capitol 1E.14
P.O. Box 12068
Austin, Texas  78711
512/463-0121
Toll Free: 800/851-1568
Fax: 512/475-3738

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

8

JZ-PRIV000744

**Judith Zaffirini**

From:        Judith Zaffirini
Sent:        Monday, April 09, 2012 2:30 PM
To:          Ray Martinez; Nathan Lerma
Cc:          Sean Griffin; Will Krueger
Subject:     Re: Phone Appointment Request for Z

She's asking about the debate, amendments, etc.

T/Z


**From:** Ray Martinez <Ray.Martinez@senate.state.tx.us>
**Date:** Mon, 9 Apr 2012 12:19:35 -0500
**To:** Judith Zaffirini <zaffcomm@zaffirini.com>, Nathan Lerma
<Nathan.Lerma@senate.state.tx.us>
**Cc:** Sean Griffin <Sean.Griffin@senate.state.tx.us>, Will Krueger
<Will.Krueger@senate.state.tx.us>
**Subject:** RE: Phone Appointment Request for Z

Z,

I just spoke with Catherine Meza, who is an attorney with the U.S. Department of Justice (DOJ). She is
the person you are scheduled to speak with at 2pm today regarding SB 14.

Catherine explained that the purpose of the call is to get insight and information, from your
perspective, into the legislative process that lead to the passage of SB 14. For example, any information
you can share as to how the legislative process which led to passage of SB 14 may have been different
from how other major legislation has been handled; what went on during legislative hearings in terms
of your discussions with other legislators; and any insight you can provide from feedback you may
have received from both proponents and opponents of the legislation.

She said you do not need to be briefed on anything in the public record. For example, if they ask you
about any amendments you or anyone else offered during the passage of SB 14, you will not need to be
familiar with those amendments since that information can be obtained by DOJ from the public record.
Essentially, this will be an interview that allows DOJ to gather your subjective insight and perspective
on the legislation itself, and the process that led to its passage.

She indicated that timing is important. DOJ is willing to wait until later this week to speak with Z, but
they clearly prefer to stick with today if at all possible because they are on an "expedited litigation
schedule."

RM is comfortable with Z proceeding at 2pm today.

15

**OK with Z?**

(If Yes, WK will send talking points to Z in the next 15 minutes or so for initial review.)

T/Rm.

Ray Martinez
Chief of Staff and General Counsel
Director, Senate Higher Education Committee
Office of Senator Judith Zaffirini
Senate District 21
512/463-0121

**From:** Judith Zaffirini [mailto:zaffcomm@zaffirini.com]
**Sent:** Monday, April 09, 2012 10:44 AM
**To:** Nathan Lerma
**Cc:** Ray Martinez; Sean Griffin
**Subject:** Re: Phone Appointment Request for Z

OK.

Will need t pts.

T/Z

**From:** Nathan Lerma <Nathan.Lerma@senate.state.tx.us>
**Date:** Mon, 9 Apr 2012 10:14:24 -0500
**To:** Judith Zaffirini <zaffcomm@zaffirini.com>
**Cc:** Ray Martinez <Ray.Martinez@senate.state.tx.us>, Sean Griffin <Sean.Griffin@senate.state.tx.us>
**Subject:** Phone Appointment Request for Z

Z,

Attached is an appointment request form for Catherine Meza of the DOJ who is requesting a phone appointment with Z to discuss S.B. 14, relating to requirements to vote, including presenting proof of identification; providing criminal penalties.

Ms. Meza is requesting that this appointment be held ASAP.

16

NL recs that Z hold this phone appointment today at 2pm.

OK with Z?

If Y, NL will have Ms. Meza call DO and will instruct DO to forward to Z's 7132#
If N, NL recs this appointment be held tomorrow, Tues., 4/10, 2pm.

Please note that Z had agreed to a meeting today at 11am but that NL received Z's confirmation on Mon., 4/9.

T/NL

**Nathan Lerma, Scheduler**
Office of Senator Judith Zaffirini
Senate District 21
Capitol 1E.14
P.O. Box 12068
Austin, Texas  78711
512/463-0121
Toll Free: 800/851-1568
Fax: 512/475-3738

17

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY