**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | § § § | |
| Plaintiffs, | § | |
| v. | § § | CIVIL ACTION NO. 2:13-CV-00193 |
| GREG ABBOTT, *et al.*, | § § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE TO VEASEY-LULAC PLAINTIFFS' MOTION TO
ORDER THE PAYMENT OF CERTAIN EXPERT WITNESS EXPENSES**

This Court should deny any award of fees to the Veasey-LULAC Plaintiffs pursuant to Federal Rule of Civil Procedure 26(b)(4)(E) because the fees sought are unreasonable and awarding them would result in manifest injustice. Plainitffs' motion seeks to recover approximately $25,673.92 in fees and expenses their experts incurred in preparation for their depositions in this case. Given that the Court relied on these experts in a very limited manner, it should exercise its discretion and refuse to award the full amount requested by Plaintiffs. In the alternative, if this Court finds Plaintiffs are entitled to a fee award, the Court should significantly reduce the award from the amount requested by Plaintiffs, because the request includes time spent on matters that were not relied upon by this Court and fees that are excessive.

**I.     The Legal Standard for Awarding Fees Under Rule 26(b)(4)(E).**

While Rule 26(b)(4)(E) provides that an expert's deposition fees and expenses are recoverable against the deposing party, the fee must be "reasonable," and payment must not result in "manifest injustice." FED. R. CIV. P. 26(b)(4)(E). The party seeking reimbursement has the burden of demonstrating the fee is reasonable, and "the court may use its discretion to determine

1

a reasonable fee," which may be "less than [the expert's] customary hourly fee." *Duke v. Performance Food Grp., Inc.*, No. 1:11-CV-220-MPM-DAS, 2014 WL 370442, at *6 (N.D. Miss. Feb. 3, 2014) (citation omitted); *Cabana v. Forcier*, 200 F.R.D. 9, 16 (D. Mass. 2001) (cutting expert's preparation time to 6 hours), cited in *Abundiz v. Explorer Pipeline Co.*, Nos. 3-00-CV-2029-H, 3-03-CV-0508-H, 3-03-CV-0787-H, 2004 WL 1161402, at *1 (N.D. Tex. May 24, 2004); *In re Shell Oil Co.,* No. 88-1935, 1992 WL 31867, at *1 (E.D. La. Feb. 13, 1992) ("*Shell Oil*"). Courts may apply various factors to determine whether the payment of fees and expenses under Rule 26(b)(4)(E) is unreasonable, including:

> (1) the witness' area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*See Williams v. M-I, LLC,* No. 05-0404, 2006 WL 2604672, at *1 (W.D. La. Sept. 8, 2006) (citation omitted). It is "manifest injustice" to award fees where "a party retains an expert whose testimony is irrelevant or who is not qualified on the matter designated," and the Court can reduce the requested fees to reflect an expert's designated, but lacking, areas of expertise. *McCaig v. Wells Fargo Bank (Texas), N.A.*, No. 2:11–CV–351, 2014 WL 360546, at *3 (S.D. Tex. Feb. 3, 2014) (cutting fees by two-thirds because expert "was designated for three areas of expertise and had only one").[1]

Further, a court has discretion to reduce a request for fees where a deposition occurs close in time to the date of the expert's report because the expert "likely required minimal time to refresh

---

[1] While the Defendants challenge the weight given to, and the veracity of, each expert's testimony in the Court's Opinion, which is currently before the Fifth Circuit on appeal, for purposes of this Motion, Defendants are using the Court's reliance (or lack thereof) on each expert's identified areas of expertise.

2

. . . recollection and prepare . . . testimony." *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 594, 599 (D. Colo. 2009) (reducing reimbursable preparation time to 4 hours, as opposed to the 16 hours requested). Likewise, where an expert's deposition is close in time to his or her trial testimony, fees for deposition preparation can be denied because "the attorney defending the expert deposition would have a self-interested motivation to prepare the expert for the deposition and the approaching trial." *See id.* at 598-99.

Plaintiffs have not met their burden under Rule 26(b)(2)(E) if "scant information" in an invoice does not allow the Court to determine the nature or extent of materials an expert reviewed in preparation for his or her deposition, or if "reasonable expenses for round trip coach airfare, meals, and lodging" are not substantiated with receipts. *See, e.g., Rogers v. Penland*, 232 F.R.D. 581, 582 (E.D. Tex. 2005); *Paz v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.*, No. CIV.A. 01-2693, 2009 WL 1401696, at *3 (W.D. La. May 19, 2009); *Fiber Optic Designs, Inc.*, 262 F.R.D. at 594; *Shell Oil,* 1992 WL 31867 at *1. At least one court in the Fifth Circuit has held that while time in deposition, travel time, and time spent gathering documents responsive to a deposition subpoena are payable under Rule 26(b)(2)(E), "the expert's time spent reviewing documents prior to the deposition and in preparation for the deposition with the responding party's attorneys," are not.[2] *Shell Oil,* 1992 WL 31867, at *1.

## II. This Court Should Deny Plaintiffs' Requested Fees.

As explained below, the fees and expenses requested by Plaintiffs should be denied in their entirety or reduced significantly.

### A. Mr. George Korbel

---

[2] While in *Stewart v. City of Houston*, 2010 WL 1524015, at 81 (S.D. Tex. April 14, 2010), the Court permitted payment for "time spent in preparing for the deposition, in traveling to the deposition, and in the deposition." The Court did not specifically discuss proof required for expenses or indicate what counted as "preparing for the deposition," though it reduced payment owed due to double billing of conference and travel time.

Mr. Korbel's fees of $5,572 should be denied in their entirety for two reasons. First, the Court did not rely exclusively on Mr. Korbel's testimony for any factual finding or legal conclusion. Mr. Korbel indicated in his June 27, 2014 report (*see* ECF No. 365)[3] that he was opining on

> the history of electoral discrimination in Texas from approximately ten years before SB 14 was first passed until present . . . the current social and economic conditions of Texans by race and ethnicity . . . population growth information by race and ethnic origin in the state from 1970 to 2010" . . . the new Texas voter ID law in the context of the history of voter discrimination in Texas . . . whether the new Texas voter ID law will effectively combat election fraud . . . [and] logistical problems presented by the voter ID statute.

Despite the broad scope of Mr. Korbel's testimony, the Court relied on his testimony to corroborate that of other expert witnesses or for propositions already supported by other evidence for two of the five topics he identified in his report. *See* Opinion (ECF No. 628) at 4 (noting that Mr. Korbel "corroborated Dr. Burton's findings"); *id.* at n.15 (citing the House and Senate Journals of Texas, with a *see also* cite to Mr. Korbel's testimony); *id.* at 48 (noting that "Mr. Korbel echo[ed] Dr. Lichtman's opinions"). Significantly, the Court did not rely on the following three categories of Mr. Korbel's testimony: (1) "the current social and economic conditions of Texans by race and ethnicity;" (2) "whether the new Texas voter ID law will effectively combat election fraud;" or (3) "logistical problems presented by the voter ID statute." In light of the limited value of Mr. Korbel's testimony, this Court should deny Plaintiffs' request to recover his fees in their entirety.

Second, this Court should deny Mr. Korbel's fees because they are unreasonable. Mr. Korbel billed 4 hours for his August 5, 2014 deposition, which was just over a month before he testified at trial, and which time included reading and signing the transcript. *See* Plaintiffs' Motion

---

[3] None of the Veasey-LULAC Plaintiffs designated specific areas of testimony in their Designation of Experts, but each of the experts' respective initial reports were filed concurrently with the Designation of Experts. *See generally* ECF No. 362.

4

(ECF No. 824) at Ex. C.  The deposition itself lasted under 4.5 hours, over an hour of which amounted to breaks off the record.  *See* Exhibit A.  Notwithstanding the short length of his deposition, he billed 3 hours of travel time, and 6.5 hours of preparation, including "proof reading of data" and "drop box additions," which do not appear to relate to deposition preparation, plus 2 hours for "[m]eet[ing] and [c]onferring."  *See* Plaintiffs' Motion (ECF No. 824) at Ex. C.

Moreover, given that his preparation and deposition took place one month before trial, Plaintiffs clearly benefited from this timing in their trial prpearation.  *See Fiber Optic Designs, Inc.*, 262 F.R.D. at 598-99.  Similarly, there was little time lapse between his June report and his August deposition.  These facts weigh against an award of fees as Mr. Korbel should have required minimal time to prepare his testimony.  *Id.* at 594, 599.  Also, Mr. Korbel's rate of $350 per hour is at least $100 greater than the hourly rates of Drs. Herron, Barreto, and Sanchez, and Mr. Cornish; he did not provide receipts for his meals; and he calculated a mileage reimbursement at $.75/mile, which is $.19 more than the 2014 GSA rate of $.56/mile for privately owned vehicles.[4]  *See* Plaintiffs' Motion (ECF No. 824) at Ex. C.  The fee request related to Mr. Korbel should be denied in its entirely, or at the very minimum, be reduced to account for his unreasonably high billing rate and the lack of documentation to support his expenses.

### B.  Mr. Ransom Cornish

Mr. Cornish's fees of $2,230.24 are also unreasonable.  In his June 27, 2014 report, Mr. Cornish identified the following topics of his testimony:  (1) "issues related to the number of provisional ballots cast in the State of Texas;" and (2) "the various fiscal considerations related to

---

[4] *See, e.g.*, http://www.gsa.gov/portal/content/100715; http://www.gsa.gov/portal/content/103969;  *see also Signature Flight Support Corp. v. Landow Aviation Ltd. Pshp.*, 730 F. Supp. 2d 513, 530 (E.D. Va. 2010) (reducing award for witness hotel accommodations based on billed amounts exceeding lodging rates allowed for federal employees in the same state); 28 U.S.C. § 1821 (providing that per diem and mileage rates for witnesses are governed by GSA schedules).

the moneys promised, budgeted, allocated and/or spent on outreach education and implementation of the new voter photo ID law by the State of Texas." PL 763. The Court's opinion contains a single reference to Mr. Cornish's testimony at trial. *See* Opinion (ECF No. 628) at 69 ("No real effort has been made by Texas to educate the public about the availability of an EIC to vote, where to get it, or what is required to obtain it.") (citing Cornish Tr. Test. (ECF No. 569) at 259-66, 287). The sources identified by Mr. Cornish in his report and his testimony for this topic area appear to be either publicly available or produced in discovery. *See, e.g.* PL 763 at p. 6; Cornish Tr. Test. (ECF No. 569) at 259-66; 287:11; 287:19. Mr. Cornish's background in law and accounting has no bearing on his ability to recite facts already in the record. *See, e.g.*, Cornish Tr. Test. (ECF No. 569) at 273:17-274:5. Thus, Mr. Cornish's testimony did not require any specific training, nor were his responses particularly complex. *See U.S. Energy Corp. v. NUKEM, Inc.*, 163 F.R.D. 344, 345-46 (D. Colo. 1995).[5]

In addition, although Mr. Cornish's August 7, 2014 deposition lasted approximately 6 hours, he billed for 6.75 hours, including travel time. *See* <u>Exhibit B</u>.[6] He also billed 3 hours for "preparation," including "review report, review exhibits, discussions with attorney." But under *Shell Oil*, neither reviewing documents nor meeting with attorneys is a reimbursable expense under Rule 26(b)(4)(E). *See Shell Oil,* 1992 WL 31867, at *1. He also billed $32.24 for "Mileage" and $4.25 for toll road fees without documentation or an indication of which mileage rate he was using. To the extent the rate per mile exceeds $0.56 (*see* n.7, s*upra*), the mileage expenses should be reduced. Applying the reasonableness factors, and considering the closeness in time of his

---

[5] *See also Highland Capital Mgmt. L.P. v. Bank of Am., Nat. Ass'n*, No. 3:10-CV-1632-L, 2013 WL 4502789, at *8 (N.D. Tex. Aug. 23, 2013) *aff'd sub nom. Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, 574 Fed. App'x 486 (5th Cir. 2014) ("Expert testimony [concerning improper commentary regarding the evidence, the veracity, accuracy and correctness of witness statements and testimony, the parties' state of mind or motives, and the propriety of the parties' conduct . . . is not admissible because it invades the jury's role in weighing the evidence and making credibility determinations.")

[6] The parties took several breaks, but the transcript does not identify their length. *See* <u>Exhibit B</u>.

deposition, report, and trial testimony, Mr. Cornish's fees and expenses should be denied in their entirety, or, at a minimum, reduced to compensate him for 6 hours of deposition time at a rate of $225/hour, or $1,350.

### C. Drs. Matthew Barreto and Gabriel Sanchez

Plaintiffs seek payment of $3,000, and $4,250, for the depositions of Drs. Barreto and Sanchez, respectively. Drs. Barretto and Sanchez were retained, according to their joint June 27, 2014 and August 18, 2014 reports, to "determine the current rates of possession, and lack of possession, of accepted photo identification among the eligible voting population in the state of Texas" and "respond to [Defendants' experts] Hood and Milyo." Expert Report of Barretto and Sanchez (ECF No. 370); Rebuttal Report of Barretto and Sanchez (ECF No. 483). There is no reason why one expert could not have completed the two professors' work, for half of the price.[7]

In any event, they fail to provide adequate support for their requested fees. Dr. Barreto block billed for 12 hours of "[p]reparation for, and participation in deposition . . . ." Plaintiffs' Motion (ECF No. 824) at Ex. E. His August 26, 2014 deposition lasted less than 2 hours. *See* Exhibit D. Dr. Barreto observed Dr. Sanchez's deposition, "working on [his] laptop on something else . . . [f]or most of the time," except he "took a few notes of interesting questions [counsel] had brought up." *See* Exhibit D at 8. It is not clear from the billing records whether he seeks to be paid for that time as "preparation" time. Dr. Sanchez billed for 4 hours of "[r]esearch" and document review (of Hood and Milyo's reports) for deposition preparation, 3 hours of meeting with counsel (for a total of 7 hours of "preparation"), and 5 hours of travel, for approximately 6

---

[7] In addition, it appears that a significant portion of the work in the report was done by the Pacific Market Research firm. *See* Exhibit C ("As explained in the attached report, I directed the firm of Pacific Market Research to conduct the survey I was asked to construct and interpret. Pacific Market Research was paid $146,400 for their efforts with regard to this survey.").

7

hours of deposition on August 25, 2014. *See* Plaintiffs' Motion (ECF No. 824) at Ex. E; Exhibit E.

But because Plaintiffs did not call Dr. Sanchez to testify at trial, any fees or expenses incurred related to his deposition should not be recoverable under Rule 26(b)(2)(E). Deposing Dr. Sanchez did not assist Defendants in preparing a more "forceful cross-examination." *See Fiber Optic Designs, Inc.,* 262 F.R.D. at 589; *see also Rogers*, 232 F.R.D. at 583 (finding that "[t]o require a party to pay for the costs of a witness who was not even called, and against whom the court had sustained a *Daubert* challenge is manifestly unjust," and cutting the fees for other experts who did not testify at trial). The fees requested for Dr. Barretto are also problematic. Both experts were deposed approximately one week after they disclosed their rebuttal report. Given that Dr. Barretto testified at trial approximately one week after he was deposed, Plaintiffs reaped the benefit of preparing him for his deposition so close to the trial. *See Fiber Optic Designs, Inc.*, 262 F.R.D. at 594, 599.

Accordingly, Defendants should not be required to pay the deposition fees of Drs. Barreto or Sanchez. In the alternative, any award of fees should be limited to the time Dr. Barreto actually spent in deposition, which amounts to $500.

### D. Dr. Michael Herron

This Court should deny Plaintiffs' request for $5,833.25 in fees (reflecting approximately 23 hours) and $1,188.43 in expenses related to the work performed by Dr. Herron.[8] Dr. Herron's August 20, 2014 deposition, which took place approximately two weeks prior to his trial testimony on September 3, 2014, and less than a week after he signed and filed his amended report on August

---

[8] Dr. Herron billed for 2 hours reading and printing documents, 7 hours and 5 minutes travel time getting to the deposition, 1.45 hours meeting with counsel, 1 hour "preparation in hotel after meeting," and 11.5 hours of a "travel day," which includes 5.5 hours for "arriving at deposition 8:00am eastern" and "depart at 1:30pm eastern," and 6 hours of travel time from 4:30 EST to 10:30 EST. *See* Motion at Ex. B.

8

14 and 15, only lasted about 4 hours, not including breaks or time he billed after the deposition ended but before he departed. *See* <u>Exhibit F</u>. Based on the length of his deposition and his billing records, it appears he billed approximately 13 hours of travel time to and from Washington, D.C., and nearly 5.5 hours of preparation (including arriving at the deposition about an hour early), and billed the remainder of his time to attending the deposition. *See* Plaintiffs' Motion (ECF No. 824) at Ex. B. Given the short time span between his reports, deposition, and testimony, he should have required little time to refresh himself on his report to prepare for his deposition, and Plaintiffs benefitted from the deposition in their trial preparation. *See Fiber Optic Designs, Inc.*, 262 F.R.D. at 594. His records also indicate that his preparation time included tasks which would be excluded under *Shell Oil*, *i.e.* meeting with counsel (1.45 hours) and reviewing and printing documents (1 hour). *See Shell Oil,* 1992 WL 31867, at *1. For the remainder of his preparation time, the bill does not specify what he did. *See* Plaintiffs' Motion (ECF No. 824) at Ex. B. Accordingly, Plaintiffs should not recover any fees related to his preparation time.

This Court should exercise its discretion and not award any fees related to Dr. Herron's travel time to attend his deposition in Washington, D.C. At the time his deposition was scheduled (as along with Dr. Lichtman and other non-Veasey-LULAC Plaintiffs' experts), the Department of Justice agreed that it would not request costs for its experts deposed in D.C., and "[o]ther Plaintiffs and Plaintiff-Intervenors [indicated that they were] open to discussing that possibility." *See* <u>Exhibit G</u>. Since Defendants gave Plaintiffs the courtesy of deposing both Drs. Herron and Lichtman in Washington, D.C., as opposed to Texas, and Defendants' counsel incurred significant travel costs in accommodating this request, the Court should exercise its discretion and deny Plaintiffs' request to recover any costs related to travel for these expert depositions.

9

Moreover, Dr. Herron billed for $1,188.43 of expenses, which is over 87% of the deposition expenses for which the Veasey-LULAC Plaintiffs are seeking reimbursement. Dr. Herron's expenses are not supported by his receipts, and his travel expenses reflect excessive rates, such as $369.13 for one night at a hotel in Washington, D.C. The August 2014 (FY 2013) United States General Service Administration's maximum lodging rate for Washington, D.C. excluding taxes was $169. As a result, Dr. Herron's travel expenses are excessive and should be reduced by $200.

### E. Dr. Allan Lichtman

The Court should deny the request for $3,600 in fees for time spent by Dr. Allan Lichtman in preparing for and attending his August 21, 2014 deposition. The request should be denied because Dr. Lichtman's deposition, like Dr. Herron's, was held in Washington, D.C. The request is excessive in any event. Dr. Lichtman's hourly rate of $400 is at least $150 greater than the $225-250 hourly rates of Mr. Cornish, and Drs. Herron, Barreto, and Sanchez, and $50 greater than the $350/hour rate charged by Mr. Korbel. Dr. Lichtman's deposition only lasted about 5 hours, at least half an hour of which included breaks. *See* Exhibit H. However, he billed over six hours of time for attending his deposition. *See* Plaintiffs' Motion (ECF No. 824) at Ex. F. He also billed for 2.75 hours of preparation time, without any description or indication of how he prepared. *See id.* Moreover, Dr. Lichtman was deposed less than two months after his report was filed on June 27, 2014, and testified at trial approximately two weeks after his deposition. Accordingly, he should have required little time to refresh himself on his report, and Plaintiffs plainly benefitted in their trial preparation by preparing him for, and attending, his depostiition. *See Fiber Optic Designs, Inc.*, 262 F.R.D. at 594. Dr. Lichtman's fees should be denied in their entirety.

10

## **CONCLUSION**

Defendants respectfully request that the Court DENY the Motion in its entirety, or, in the alternative, reduce the respective fees in amounts identified above.

Dated: February 13, 2015

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

SCOTT KELLER
Solicitor General

MATTHEW H. FREDERICK
Deputy Solicitor General

LINDSEY ELIZABETH WOLF
Assistant Attorney General
Southern District of Texas No. 2292940

*/s/ Angela V. Colmenero*
ANGELA V. COLMENERO
Assistant Attorney General
Texas Bar No. 24048399
Southern District of Texas No. 1002881

STEPHEN RONALD KEISTER
Assistant Attorney General
Southern District of Texas No. 18580

JENNIFER MARIE ROSCETTI
Assistant Attorney General
Southern District of Texas No. 224780

209 West 14th Street
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-0131

        BEN A. DONNELL
        Donnell, Abernethy & Kieschnick
        555 N. Carancahua, Suite 1770
        Corpus Christi, Texas 78401-0853
        Southern District of Texas No. 5689

        COUNSEL FOR THE STATE OF TEXAS, GREG ABBOTT, THE TEXAS SECRETARY OF STATE, and STEVE MCCRAW

## CERTIFICATE OF SERVICE

    I hereby certify that on February 13, 2015, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

        */s/ Angela V. Colmenero*
        ANGELA V. COLMENERO