**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § § | |
| RICK PERRY, *et al.*, | § § | |
| Defendants. | § | |

# EXHIBIT H

1                P-R-O-C-E-E-D-I-N-G-S
2                                          (8:51 a.m.)
3              VIDEOGRAPHER:  Here begins the
4    deposition of Dr. Allan J. Lichtman in the matter
5    of Veasey, et al., Plaintiffs versus Rick Perry,
6    et al., Defendants in the U.S. District Court for
7    the Southern District of Texas, Corpus Christi
8    Division, Case Number 2:13-cv-193 NGR.  Today's
9    date is August 21, 2014 and the time on the video
10   is 8:50 a.m.
11             My name is Brian Barton, I am the
12   videographer.  This deposition is taking place at
13   1099 New York Avenue, Washington, D.C.
14             Will counsel please identify
15   themselves and who they are representing?
16             MR. HEBERT:  Gerald Hebert,
17   representing the Veasey-LULAC Plaintiffs.
18             MR. KEISTER:  Ronny Keister,
19   representing the Defendants.
20             VIDEOGRAPHER:  Our court reporter is
21   Sam Wojack with Integrity Legal Support
22   Solutions.  And I will now swear in the witness.
23   WHEREUPON,
24        ALLAN J. LICTHMAN
25   was called as a witness by Counsel for the State

1 features of the law that were not included in the
2 2011 version such as student identification and
3 government employee identification, and related
4 all of this, of course, to its impact upon
5 African Americans and Latinos, which also
6 required me to do research into a recent census
7 reports to examine socioeconomic differences
8 between Latinos and African Americans on the one
9 hand and non-Hispanic whites on the other hand.
10           I also looked at other elements
11 relevant to photo ID law that were present in
12 Texas, such as the surcharges attached to certain
13 kinds of violations that could impact those with
14 lower incomes and higher poverty rates, as well
15 as the program with respect to suspension and
16 confiscation of licenses for certain kinds of
17 violations.  And that impact is called the ALR
18 program.  And the impact of that on a person is a
19 different socioeconomic --
20           MR. KEISTER:  Excuse us.  Mark that
21 place.  Let's go off the record.
22           VIDEOGRAPHER:  We are going to go off
23 the record at 9:22 a.m.
24           (Whereupon, the above-entitled matter
25 went off the record at 9:22 a.m. and resumed at

1  9:26 a.m.)

2              VIDEOGRAPHER:  Back on the record at

3  9:26 a.m.

4              BY MR. KEISTER:

5      Q     Dr. Lichtman, before we took a brief

6  break, you were describing the research and

7  process of research you had done in this case.

8  Would you continue with your answer?

9      A     As I mentioned previously, I looked at

10 justifications for the law, comparisons made by

11 those pushing the law.  I looked at transcripts.

12 I looked at some testimony from the D.C. trial.

13 I looked at the issue of absentee ballot fraud

14 and the absence of any controls, additional

15 controls over absentee ballot fraud in SB-14.

16             I examined the racial composition of

17 absentee ballots cast in the State of Texas.  I

18 examined the alternative of obtaining a free

19 election identification certificate in the State

20 of Texas.  I examined the documents required for

21 that.  I looked at some of the costs of those

22 documents.  I examined the places where one could

23 get an EIC, election identification certificate

24 and the implications for those of lower socio-

25 economic standing, such as African Americans and

1    A    Yes.
2         MR. KEISTER:  All right, we have been
3 going for over an hour.  Let's take a brief
4 break.
5         VIDEOGRAPHER:  We are off the record
6 at 9:57.
7         (Whereupon, the above-entitled matter
8 went off the record at 9:57 a.m. and resumed at
9 10:06 a.m.)
10        VIDEOGRAPHER:  We're back on the
11 record at 10:06 a.m.
12             EXAMINATION
13        MR. KEISTER:  Dr. Lichtman, what is
14 current home address?
15        THE WITNESS:  9219 Villa Drive,
16 Bethesda, Maryland 20817.
17        **BY MR. KEISTER:**
18   **Q    Okay.  And how long have you lived in**
19 **Maryland?**
20   A    Since mid to late 1970's.
21   **Q    Okay, all right, a long time.**
22   A    Yes.
23   **Q    Okay.  What's your date of birth?**
24   A    04/04/47.
25   **Q    Okay.  And where were you born?**

1  **correct?**
2     A    That's right.
3          MR. KEISTER:  Okay.
4          MR. HEBERT:  I like to see you turning
5  those pages, Ronnie.
6          MR. KEISTER:  We're making progress
7  today.  I'm a little better organized.
8          THE WITNESS:  What time is it?
9          MR. HEBERT:  10:51 on my watch.
10         THE WITNESS:  How far are we from the
11 next break?
12         VIDEOGRAPHER:  We're going to go off
13 the record at 10:51 a.m.  This concludes DVD
14 Number 1 and now going to DVD Number 2.  Off the
15 record.
16         (Whereupon, the above-entitled matter
17 went off the record at 10:51 a.m. and resumed at
18 11:01 a.m.)
19         VIDEOGRAPHER:  We're back on the
20 record those on the phone.  We're back on the
21 record at 11:01 a.m.  This is the beginning of
22 DVD number two.
23         MR. KEISTER:  Dr. Lichtman, in your
24 report, I believe beginning on Page 5 of your
25 report, you said about something of a historical

1 objection.
2         THE WITNESS: Yes.
3         MR. KEISTER: Okay. Let's turn to
4 Page 6 of your report. Do you need to --
5         THE WITNESS: No, I'm good.
6     **BY MR. KEISTER:**
7    **Q**    **Okay.**
8    A    I can go until noon.
9    **Q**    **If you need a break, just tell me, we**
10 **can certainly take a break.**
11    A    All right, why don't we take a one
12 minute?
13         VIDEOGRAPHER: We're going to go off
14 the record at 11:48 a.m.
15        (Whereupon, the above-entitled matter
16 went off the record at 11:48 a.m. and resumed at
17 11:52 a.m.)
18         VIDEOGRAPHER: 11:52 a.m., we're back
19 on the record.
20         MR. KEISTER: Dr. Lichtman, let's turn
21 to Page 6 of your report and on that page, you
22 talked a little bit about the enactment of the
23 Voting Rights Act, correct?
24         THE WITNESS: Yes.
25     **BY MR. KEISTER:**

1 question.

2 　　　　　MR. KEISTER: That is the DOJ rule
3 that required covered states to create minority
4 majority districts and take racial considerations
5 or racial factors into primary consideration in
6 creating those districts?

7 　　　　　MR. HEBERT: Object to the form of the
8 question. Object to the fact that it is an
9 incorrect statement in the premise and has been
10 asked repeatedly to this witness.

11 　　　　　THE WITNESS: Yes, I am not -- (a) I
12 did not agree with your statement as you
13 described it about a Department of Justice rule,
14 and (b) I'm not aware of the Supreme Court
15 opining upon a rule as you stated it.

16 　　　　　MR. KEISTER: Okay. All right. All
17 right. That's your final answer?

18 　　　　　MR. HEBERT: Object to the form of the
19 question.

20 　　　　　THE WITNESS: To that question.

21 　　　　　MR. HEBERT: If that's your final
22 question of the deposition, I'm not going

23 　　　　　MR. KEISTER: All right. Let's break
24 for lunch. We're at a good stopping point.

25 　　　　　(Whereupon, the above-entitled matter

1 went off the record at 12:21 p.m. and resumed at
2 1:10 p.m.)
3         VIDEOGRAPHER: We're back on the
4 record at 1:10 p.m.
5         MR. HEBERT: So, before we start I
6 understand that Ms. Greene from the Department of
7 Justice wants to make a statement for the record.
8         MS. GREENE: Yes, thank you. I wanted
9 to add that we object to any questions purporting
10 to inquire as to any alleged past practices at
11 the Department of Justice. Those questions as we
12 laid out in our motion to strike our
13 inappropriate.
14         MR. HEBERT: All right, thank you.
15         And then as I advised counsel for the
16 State before we came back on the record Dr.
17 Lichtman thought of something over the lunch
18 break that he would like to add to a previous
19 answer that he gave to a question from Mr.
20 Keister. So, Dr. Lichtman, you want to go ahead?
21         THE WITNESS: Yes, it was actually a
22 series of questions on the same topic, the
23 history of the Voting Rights Act and the coverage
24 of Texas.
25         I was a little confused because we

1  the record at 2 p.m.  This concludes DVD No. 2.
2             MR. HEBERT:  We're changing the tape
3  and going off the record for a couple of minutes
4  and taking a restroom break.
5             (Whereupon, the above-entitled matter
6  went off the record at 2:00 p.m. and resumed at
7  2:06 p.m.)
8             VIDEOGRAPHER:  We're back on the
9  record at 2:06 p.m.  This is the beginning of DVD
10 No. 3.
11            MR. KEISTER:  Dr. Lichtman, before we
12 broke I think I was asking you questions about
13 whether or not you had made any determinations as
14 to whether or not you had found any evidence that
15 the Democrats would have been more willing to
16 cooperate with the Republicans on a photo
17 identification bill in 2011 than they had in the
18 previous sessions, correct?
19            MR. HEBERT:  Asked and answered.
20            THE WITNESS:  As I said, they opposed
21 SB 14.  It's not even the same Democrats that
22 existed in 2005, so you know, more or less is not
23 a legitimate form of analysis.  I can simply tell
24 you they opposed SB 14.
25            MR. KEISTER:  Okay.  And going back

1  anything about showing a photo ID when a person
2  goes to the polls?
3       A     Not directly.
4       Q     Okay.
5       A     But indirectly.
6       Q     Okay.  Have you found any direct
7  statements by Mr. Emanuelson concerning S.B. 14,
8  good or bad?
9       A     Not directly.
10      Q     Okay.  And have you found anything
11 that indicates that Mr. Emanuelson was in direct
12 contact with Members of the Legislature in 2011
13 and influenced the Legislature's decision on the
14 passage of S.B. 14 in 2011?
15      A     No, I don't make any such claims.
16      Q     Okay.
17      A     If we're going to be much longer, I'm
18 getting close to a break.
19      Q     Okay, let's do that.  Let's do it
20 because we're moving --
21            VIDEOGRAPHER:  Off the record at 3:25
22 p.m.
23            (Whereupon, the foregoing matter went
24 off the record at 3:25 p.m. and went back on the
25 record at 3:30 p.m.)

1          MR. KEISTER:  Thank you.
2          (Whereupon, at 3:53 p.m., the taking
3  of the deposition was concluded.)
4          (Signature was not waived.)