UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, ET AL., | ) | CASE NO: 2:13-CV-00193 |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Corpus Christi, Texas |
| | ) | |
| RICK PERRY, ET AL., | ) | Wednesday, August 10, 2016 |
| | ) | |
| Defendants. | ) | (8:33 a.m. to 9:40 a .m.) |

TELEPHONIC STATUS CONFERENCE

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE


Appearances:            See Next Page

Court Recorder:         Genay Rogan

Clerk:                  Brandy Cortez

Court Security Officer: Adolph Castillo

Transcriber:            Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES FOR:</u>

Plaintiffs:                      CHAD W. DUNN, ESQ.
                                 Brazil and Dunn
                                 4201 Cypress Creek Parkway, Suite 530
                                 Houston, TX 77068

                                 ARMAND DERFNER, ESQ.
                                 P.O. Box 600
                                 Charleston, SC 29402

                                 DANIELLE LANG, ESQ.
                                 Campaign Legal Center
                                 1411 K. St. NW, Suite 1400
                                 Washington, DC 20005

                                 J. GERALD HEBERT, ESQ.
                                 Attorney at Law
                                 191 Somervelle Street #405
                                 Alexandria, VA 22304

                                 NEIL G. BARON, ESQ.
                                 914 FM 517 Rd. W., Suite 242
                                 Dickinson, TX 77539

                                 ABBY KAMIN, ESQ.

Mexican American                 EZRA D. ROSENBERG, ESQ.
Legislative Caucus,              Dechert, LLP
et al.:                          902 Carnegie Center, Suite 500
                                 Princeton, NJ 08540-6531

                                 LINDSEY B. COHAN, ESQ.
                                 Dechert, LLP
                                 300 West 6th St.
                                 Austin, TX 78701

                                 BRENDAN DOWNES, ESQ.
                                 Lawyers' Committee for Civil Rights
                                 1401 New York Ave. NW, Suite 400
                                 Washington, DC 20005

Mexican American                 MYRNA PEREZ, ESQ.
Legislative Caucus,              Brennan Center for Justice
et al.:                          161 Avenue of the Americas
                                 12th Floor
                                 New York, NY 10013

                                 VICTOR GOODE, ESQ.

3

<u>APPEARANCES FOR:</u>          (CONTINUED)

Mexican American          JENNIFER CLARK, ESQ.
Legislative Caucus,       Brennan Ctr. for Justice
et al.:                   161 Avenue of the Americas
                          12th Floor
                          New York, NY 10013


United States             AVNER SHAPIRO, ESQ.
of America:               JOHN SMITH, ESQ.
                          SAM OLIKER-FRIEDLAND, ESQ.
                          BRITTANY WAKE, ESQ.
                          CHRIS HERREN, ESQ.
                          MEREDITH BELL-PLATTS, ESQ.
                          U.S. Department of Justice
                          950 Pennsylvania Ave. NW
                          Washington, DC 20530


Ortiz Plaintiffs,         MARINDA VAN DALEN, ESQ.
et al.:                   Texas RioGrande Legal Aid, Inc.
                          531 E. St. Francis
                          Brownsville, TX 78520


                          JOSE GARZA, ESQ.
                          Texas Rio Grande Legal Aid
                          1111 N. Main Ave.
                          San Antonio, TX 78212


Texas League of Young     DEUEL ROSS, ESQ.
Voters Education Fund:     LEAH ADEN, ESQ.
                          NAACP Legal Def. and Educational Fund
                          40 Rector St., 5th Floor
                          New York, NY 10006


                          TANIA C. FARANSSO, ESQ.
                          Wilmer Cutler Pickering, et al.
                          1875 Pennsylvania Avenue, NW
                          Washington, DC 20006


Texas Association of      ROLANDO L. RIOS, ESQ.
Hispanic County Judges    115 E. Travis
and County                Suite 1654
Commissioners:            San Antonio, TX 78205


State of Texas:           MATTHEW H. FREDERICK, ESQ.
                          ANGELA V. COLMENERO, ESQ.
                          Office of the Attorney General
                          P.O. Box 12548
                          Austin, TX 78711

4

1    <u>**Corpus Christi, Texas; Wednesday, August 10, 2016; 8:33 a.m.**</u>

2                        **(Telephonic Conference)**

3                           **(Call to Order)**

4              **THE COURT:**  The Court calls Cause Number 2:13-CV-291,

5    Veasey, et al v. State of Texas.  I'm going to have Brandy call

6    roll.

7              **THE CLERK:**  For Veasey/LULAC:

8              Mr. Dunn?

9              **MR. DUNN:**  I'm here.  Good morning.

10             **THE CLERK:**  Mr. Derfner.

11             **MR. DERFNER:**  Here.

12             **THE CLERK:**  Ms. Lang?

13             **MS. LANG:**  Good morning.

14             **THE CLERK:**  Mr. Hebert?

15             **MR. HEBERT:**  Yes, your Honor.

16             **THE CLERK:**  Ms. Baron -- Mr. Baron?

17             **MR. BARON:**  Mr. Baron.

18             **THE CLERK:**  I'm sorry.

19             **MR. BARON:**  Yes, present.

20             **THE CLERK:**  Ms. Kamin?

21             **MS. KAMIN:**  Yes, your Honor.

22             **THE CLERK:**  For Texas NAACP:

23             Ms. Perez?

24             **MS. PEREZ:**  Yes, ma'am, I'm here.

25             **THE CLERK:**  Ms. Cohan?

5

```
1              MS. COHAN:  Yes, ma'am.

2              THE CLERK:  Mr. Downes?

3              MR. DOWNES:  Yes, ma'am.

4              THE CLERK:  Mr. Rosenberg?

5              MR. ROSENBERG:  Yes, ma'am.  Good morning.

6              THE CLERK:  Mr. Goode?

7              MR. GOODE:  Yes, ma'am.

8              THE CLERK:  Ms. Clark?

9              MS. CLARK:  Yes, I am here.

10             THE CLERK:  Thank you.

11             For Taylor Plaintiffs:

12             Ms. Van Dalen?

13             MS. VAN DALEN:  Yes, ma'am.  Good morning.

14             THE CLERK:  Mr. Garza?

15             MR. GARZA:  Yes, ma'am.

16             THE CLERK:  For the Association of Judges:

17             Mr. Rios?

18             MR. RIOS:  Yes, ma'am.

19             THE CLERK:  For the League of Young Voters:

20             Mr. Ross?

21             MR. ROSS:  Yes, ma'am.

22             THE CLERK:  Ms. Faransso?

23             MS. FARANSSO:  Yes, ma'am.

24             THE CLERK:  Ms. Aden?

25             MS. ADEN:  Good morning.
```

```
 1              THE CLERK:  For the United States:

 2         Mr. Shapiro?

 3              MR. SHAPIRO:  Yes, ma'am.  Good morning.

 4              THE CLERK:  Ms. Bell-Platts?

 5              MS. BELL-PLATTS:  Good morning.

 6              THE CLERK:  Mr. Smith?

 7              MR. SMITH:  Good morning, Judge.

 8              THE CLERK:  Mr. Oliker?

 9              MR. OLIKER:  Yes, ma'am.

10              THE CLERK:  Ms. Wake?

11              MS. WAKE:  Yes, ma'am.

12              THE CLERK:  Mr. Herren?

13              MR. HERREN:  Yes, ma'am.

14              THE CLERK:  Mr. Gear?

15              MR. GEAR:  Yes, ma'am.

16              THE CLERK:  And then for the State of Texas:

17         Ms. Colmenero?

18              MS. COLMENERO:  Yes, ma'am.

19              THE CLERK:  And Mr. Frederick?

20              MR. FREDERICK:  Yes, ma'am.

21              THE CLERK:  Thank you.

22              THE COURT:  All right.  Good morning, Counsel.  This

23    hearing has been set to address the plan for interim relief for

24    the November 2016 elections and this Court had ordered you all

25    to confer to determine what terms of the plan might be agreed
```

1   to and you all have now filed a Joint Submission of Agreed

2   Terms.

3           So first, any comments or anything on the joint

4   submission from the Veasey Plaintiffs?

5           **MR. DUNN:**  Good morning, your Honor.  This is Chad

6   Dunn.  I'm not sure, obviously we believe we have reached

7   agreement with the State in terms of what's provided for in the

8   agreed terms.  There are some collateral issues that have been

9   raised in other filings --

10          **THE COURT:**  Right.

11          **MR. DUNN:**  -- if that's what your Honor is asking

12  about now, or --

13          **THE COURT:**  No, I'll address those shortly.  I just

14  didn't know, is there anything else on the joint submission?  I

15  mean it's all set out there.  I didn't know if you all wanted

16  to tell me anything else.  But, no, don't feel like you have to

17  say anything.  We will get to the additional terms shortly.

18  So --

19          **MR. DUNN:**  Nothing more to add for us, the Veasey

20  Plaintiffs, on agreed terms.

21          **THE COURT:**  All right.  Any of the other Plaintiffs?

22      **(No audible response)**

23          And the Defense then.

24          **UNIDENTIFIED SPEAKER:**  (Indiscernible)

25          **THE COURT:**  Okay, I'll take that as a no, unless you

8

1   speak up from everyone.

2          What about from the State of Texas, Ms. Colmenero?

3          **MS. COLMENERO:**  Yes, your Honor.  I think there's

4   just a slight modification to the Declaration.  The parties

5   filed a slightly modified Declaration with the Joint Motion for

6   Entry of the Temporary Remedial Order and I think we can file

7   an updated version of that Declaration as part of the Joint

8   Submission of Agreed Terms.

9          **THE COURT:**  Okay.  Is that right, Mr. Dunn?

10         **MR. DUNN:**  Yes.  Just to clarify for the Court, there

11  was just a mistake that we made in the drafting.  This isn't

12  the issue of the additional --

13         **THE COURT:**  Right.

14         **MR. DUNN:**  -- sentence the State is asking about,

15  correct?

16         **THE COURT:**  Okay, so --

17         **MR. DUNN:**  But, yes, we agree to that.

18         **THE COURT:**  And Ms. Perez?

19         **MS. PEREZ:**  Oh, our position is the same, your Honor.

20         **THE COURT:**  All right.  And I'm assuming for everyone

21  else, unless you speak up.

22         So if someone will file that shortly with the Court,

23  the updated version.  And if nothing further then on the joint

24  submission, the Court will approve the agreed terms.

25         And I just want to take a minute to thank you all.  I

1    know you all spent a lot of time and effort put into the

2    conferring process in reaching an agreement, so the Court

3    sincerely appreciates that.

4              So let's move on to the submission of additional

5    terms.  I guess, Mr. Dunn, are you taking the lead here for the

6    Private Plaintiffs and the Intervenor Plaintiffs?

7              **MR. DUNN:**  Well, to a certain degree.  So it seems to

8    me that there is an additional term that the Plaintiffs are

9    asking for as it relates to training and education and then

10   there are three additional terms that the State is asking for.

11   If you want to start with -- if your Honor wants to start with

12   the Plaintiffs' suggested additional educational terms, then

13   Ms. Myrna Perez is going to argue that for us.

14             **THE COURT:**  Okay.  You can proceed, Ms. Perez.

15             **MS. PEREZ:**  Thank you, your Honor.  Good morning.

16   Again, I'm Myrna Perez.  I represent the Mexican American

17   Legislative Caucus and Texas NAACP, but I am here this morning

18   on behalf of all the Private Plaintiffs.

19             Quite simply, your Honor, Plaintiffs have sought and

20   continue to seek two very modest objectives:  the opportunity

21   to provide reasonable input into the training and education

22   plans Texas must create and a pathway to expeditiously come to

23   the Court for resolution if there is an issue.  We believe that

24   all these interests can be accomplished in the educational

25   training plan that Texas submits on the 15th, including

1    sufficient specificity in detail, and I will describe what we

2    think that specificity in detail would look like in a moment,

3    and if Plaintiffs also have a reasonable amount of time,

4    perhaps 48 hours, to make any redactions and concerns known to

5    the Court before the Court formally accepts their plan.  We

6    believe that Plaintiffs' input into the plan and a mechanism to

7    ensure that Texas makes any needed modifications in response to

8    that input is absolutely necessary and was ordered by the

9    Fifth Circuit in order to ensure that the discriminatory effect

10   of SB14 is actually limited.

11           I know that I do not need to remind the Court that

12   the Fifth Circuit found that Texas's education plan for SB14 to

13   be, and I quote, "grossly insufficient," or that this Court

14   similarly found this program to be "woefully lacking."

15           Unfortunately, we're here this morning because we

16   have no indication that Texas is making improvements to its

17   prior plan.  Unfortunately, we have contrary evidence.  Texas

18   made it very clear in its August 5th filing that it was

19   utilizing the very same PR consultants it utilized for its

20   grossly insufficient and woefully lacking plan.  Moreover, we

21   heard in our August 5th -- in the August 5th filing that Texas

22   filed that it claims to already have developed a multifaceted

23   strategy and up until this point in time it has been unwilling

24   to share sufficient details that will allow Plaintiffs to

25   assess whether the plan will be adequate or even accurate.  To

11

1    this end, we are especially concerned because we know that

2    Texas continues to perpetuate boldly inaccurate and misleading

3    information.

4            Your Honor, we filed three short attachments last

5    night.  Do you have those?

6            **THE COURT:**  Yes.

7            **MS. PEREZ:**  Okay.  If I may ask the Court to look at

8    Attachment 1.  This is the home page for votetexas.gov as of

9    yesterday.  As the Court can see, on its face there have been

10   no changes as to the information being given to voters as to

11   the photo identica -- as to the photo ID required to vote in

12   November.  There is no mention that the prior requirements were

13   found to be illegal, that any changes were coming soon.  There

14   is absolutely nothing signaling voters to come back for more

15   information as it evolves.  There's nothing suggesting that

16   SB14 is anything but the law of the land.

17           And, your Honor, if you were to look at the bottom

18   right, there's a little button that says Voter ID FAQs.  Can

19   you see it, your Honor?

20           **THE COURT:**  Yes.

21           **MS. PEREZ:**  Okay.  If you were to click on that,

22   you'd be taken to the second page of this attachment.  I'll

23   give you a moment to get there, your Honor.

24           **THE COURT:**  Yes.

25           **MS. PEREZ:**  On this page voters are affirmatively

12

1   told that SB14 ID is required.  Again there's no mention that

2   these requirements are being modified by Order of the Court or

3   mention to come back for more updated information.

4          I'd actually ask you to look specifically at the

5   second sentence on this page.  It actually says, "While pending

6   review within the judicial system, the U.S. Supreme Court

7   issued its opinion in *Shelby County v. Holder* which effectively

8   ended all pending litigation."  This is a flagrantly inaccurate

9   point that was out of date even before the Fifth Circuit issued

10  its decision and these are the kinds of examples that we think

11  strongly suggest that Plaintiffs need some assistance and some

12  help in developing an appropriate program.

13         I don't want to belabor this point, but if I could

14  quickly ask the Court to turn to Attachment 2.

15         Are you there, your Honor?

16         **THE COURT:**  Yes.

17         **MS. PEREZ:**  Okay.  The first page of the attachment

18  is yesterday's home page for the Secretary of State's Election

19  Division and we have the same problem.  There's nothing that

20  explains the prior law will be modified, no signal that more

21  information and details are coming.  Under the photo ID button

22  on the left, on the top left, is a hyperlink for an acceptable

23  identification poster.  Do you see it, your Honor?

24         **THE COURT:**  I'm sorry, what was that?

25         **MS. PEREZ:**  It's a notice of acceptable

1    identification poster, your Honor, with on the left under the

2    bottom that says Photo ID --

3             **THE COURT:**  Oh, okay.

4             **MS. PEREZ:**  -- Info.

5             **THE COURT:**  Yes.

6             **MS. PEREZ:**  Well, if your Honor were to click on

7    that, you'd go to the second page of this attachment.

8             **THE COURT:**  Okay.

9             **MS. PEREZ:**  Which again affirmatively will mislead

10   voters as to what will be required of them in November.  If I

11   could ask your Honor to go back to the first page of this

12   attachment.

13            **THE COURT:**  Okay.

14            **MS. PEREZ:**  Do you see that there is also under the

15   first hyperlink an invitation to push a button and get

16   information as to acceptable forms of identification?  If a

17   voter were to click on that hyperlink you'd get taken to the

18   third, fourth, and fifth pages of these documents, among others

19   I took from a PDF, a PowerPoint that Texas is using to educate

20   voters.  And again the third, the fourth, and the fifth page of

21   this attachment has misleading information that is out of date

22   that misinforms voters as to what it is that they need.

23            And I want to be very, very clear, your Honor, we've

24   raised these concerns about these web pages expressly with the

25   State and even upon knowing this information, the inaccurate

1    information remains.  This we believe, your Honor, is an

2    example of why we need help from the Court to ensure that the

3    Plaintiffs and the Court have the ability to work out the

4    specifics of Texas's plan before all the money is spent and all

5    the products are designed.  This is why we need a process for

6    coming to the Court quickly for resolution.

7            I will note that initially we asked for modest

8    language from the Court ordering a meet and confer process on

9    the training and education offer, but since that point, your

10   Honor, a number of developments have occurred that I think are

11   worth pointing to the Court.

12           Most obviously, Texas has objected strenuously to the

13   language, purportedly because Texas was concerned that there

14   was not enough specificity as to its obligations under such

15   language and because Texas was worried that an ongoing and

16   continuous meet and confer process might be dilatory.  We hear

17   that concern.  I'd like to put a pin in that for a moment

18   because I'd like to move on to some other developments and come

19   back to that.

20           **THE COURT:**  I'm sorry, you're starting to get a

21   little garbled.  So I don't know, you maybe need to slow down.

22           **MS. PEREZ:**  I apologize.  I apologize.  I will back

23   up and note that there have been a couple of developments that

24   have occurred since we proposed the language to the Court

25   earlier last week.  The most obvious of these concerns is that

1   Texas has strenuously objected.  It objected primarily on two

2   grounds.  The first is that they were worried that the language

3   we proposed didn't have enough specifics as to what its

4   obligations under such language would be and the second was

5   that Texas was worried that an ongoing meet and confer process

6   might be dilatory.  And I want to make very clear that

7   Plaintiffs hear this concern.  I want to put a pin in it and

8   come back to it in a moment.  But I do want to alert the Court

9   to come other developments.

10         We also provided good faith and timely input as to

11  deficiencies with the website and that has resulted in no

12  modifications to address our concerns.  We also heard in

13  Texas's filing that Texas already has a detailed strategy in

14  plan for training and education that it has not shared with us

15  or with the Court.  So we believe at this point in time, when

16  taking all these concerns together, Plaintiffs and Defendants'

17  concerns can be address by an order from this Court demanding

18  that Texas's plan to be submitted on the 15th be comprehensive

19  and sufficiently detailed in some very specific ways, and I

20  will lay those out in a moment, and that the Plaintiffs have a

21  reasonable amount of time to respond to these plans before the

22  Court enters any order approving them.  And obviously, we'd be

23  available for hearing and discussion, if that would be helpful

24  to the Court, before ruling on the appropriateness of the plan.

25         I think the timely submission of a very comprehensive

1    and detailed plan, much more comprehensive and detailed than

2    what Texas has put forward in its filing today, (indiscernible)

3    benefit.  First, it would avoid the delay of dealing with

4    piecemeal objections to particular plan performance.  We

5    understand that that can be burdensome.  Second, it would allow

6    each piece of the plan to be viewed as part of a large circle,

7    rather than isolation.  Third, it would be nominally burdensome

8    to the State compared to other alternatives.

9         Texas purports to already have a strategy and plan

10   they will implement once a remedy is issued.  If that's the

11   case, Plaintiffs request to only require the State to put those

12   plans on paper, put them on with enough detail so that

13   Plaintiffs and the Court could be alerted as to any omissions

14   in accuracy for problems and to do it with sufficient notice

15   that Plaintiffs and the Court could intervene if necessary.

16   And most importantly, this would allow for modifications to be

17   made before voters are misinformed or inaccurate products were

18   already created.

19        On this point, your Honor, would you mind looking at

20   Attachment 3?

21        **THE COURT:**  Okay.  I'm there.

22        **MS. PEREZ:**  Great, your Honor.  This is an example of

23   the kind of posters that were created in South Carolina to

24   explain the reasonable impediment alternative to their voter ID

25   law.  As your Honor can see, the identification that is

1    accepted is very prominently displayed, as is the very large

2    text saying that a photo ID requirement is in place.  But it's

3    only in the very small print at the bottom buried among the

4    many bullet points that a voter would learn that there is an

5    option of signing a reasonable impediment declaration if the

6    voter doesn't have one of the kinds of listed IDs.

7           This is the kind of public education mistakes that

8    have happened in other states.  This is exactly the kind of

9    problem we are trying to avoid by an order from this Court

10   demanding more specificity in detail and allowing us an input.

11          Now, we have some ideas as to what details should be

12   required by the Court and on a very high level and generally

13   speaking, they're very reasonable.  They would require Texas to

14   identify what documents would be updated or created.  Identify

15   them, so that we know what the universe of what is being fixed

16   or modified.  It would be to provide what that text purportedly

17   fixing it or modifying it is going to be and we'd like that

18   text in Spanish.  Certainly your Honor remembers some of the

19   translation problems that we laid out during the trial.  And

20   then we'd like to know when, where, and how those documents are

21   going to be distributed.

22          Our goal is for them to make sure that the Court and

23   the Plaintiffs have sufficient information to actually assess

24   the accuracy and effectiveness of the plan and to make sure

25   that any modifications that are needed to remedy the

1    discrimination are being able to be implemented.

2              So we do have some language suggestions and I'm going

3    to start with the training, because training is at a particular

4    moment.  We know that election judges are going to be appointed

5    before the end of the month and we've heard that some counties

6    will begin training their election workers, including judges,

7    by the middle of September.  An order from this Court could

8    read very simply something like Texas's submission on the 15th

9    as to training must be comprehensive and include specific

10   details, including:

11             1)  A list of all the specific materials and

12   documents that will be used to train county election officials,

13   poll workers, poll watchers, and judges on the modifications to

14   SB14 and the obligations of each of these actors under any

15   interim remedy order;

16             2)  Texas must submit the particular text it intends

17   to use in each of these identified documents and all of the

18   Spanish translation text required;

19             3)  The specific distribution channels and timetables

20   the State intends to employ for dissemination of these training

21   documents, including when Texas intends to distribute each

22   particular training material and with whom specifically.

23             And the language would be very similar for public

24   education.  An order from the Court could read something like

25   Texas's submission on the 15th must be comprehensive and

1    include specific details, including, a list of each public

2    education document or product that has been created or will be

3    created to explain to voters how SB14 has been modified and how

4    voters without SB14 can vote a regular ballot, the specific

5    text that will be used in each of these public education

6    documents and that text in Spanish, and the specific

7    distribution channels and timetables that they intend to employ

8    for dissemination of this information, including again when

9    they intend to distribute it, who specifically they intend to

10   distribute it to, and when these education texts will be

11   published or aired or made public.

12          Does the Court have handy Texas's submission from

13   August 5th?  It's the Defendant's responsive position of all

14   Private Plaintiffs' and Plaintiff Intervenors' additional

15   terms?

16          **THE COURT:**  Yes.

17          **MS. PEREZ:**  Okay.  Thank you, your Honor.  If you

18   look at the bottom of Page 3, (indiscernible) Texas identifies

19   five communication channels for sharing information about

20   modifications to SB14 and the process under the interim remedy.

21   The stuff that's being requested by Plaintiffs would apply as

22   to all five of these channels and it's very obvious, it's very

23   clear what that would look like.

24          So, for example, the paid media channel for radio

25   ads, if you wanted to use that as an example, we want to see

1    the text that they're going to use in English and Spanish --

2         **THE COURT:**  I'm sorry, you're starting to get a

3    little garbled.

4         **MS. PEREZ:**  Sorry.  We'd like to see the text that

5    they use in English and Spanish, we'd like to know which radio

6    stations they would buy these ads at and when those ads would

7    air.  We simply want the opportunity to be able to point out to

8    the Court if they decide to air radio ads only at 2:00 a.m. or

9    something along that line.

10        If you look on the elected official outreach channel,

11   which is on Page 4, your Honor, we'd simply like to see the

12   text they intend to send to the elected officials regarding the

13   changes to SB14, which elected officials they were sending it

14   to, and when Texas was going to do so.

15        So in summation, we simply want the Court to order

16   that the plan Texas already has to submit on the 15th include

17   sufficient (indiscernible) consistent with what I described

18   earlier and that the Plaintiffs have a reasonable amount of

19   time, we think we could do this in about 48 hours, to make any

20   reactions or concerns known to the Court before the Court

21   formally accepts their plan.

22        And at this point, your Honor, this is all that I

23   have.  I'm happy to take any questions and I really appreciate

24   the opportunity to respond to Texas on this point.

25        **THE COURT:**  Okay.  I'm assuming then you spoke for

1    all the Plaintiffs, correct?

2              **MS. PEREZ:**  Yes, ma'am.

3              **THE COURT:**  All right.  Ms. Colmenero, are you taking

4    the lead or Mr. Frederick?

5              **MR. SHAPIRO:**  Excuse me.  This is Avner Shapiro of

6    the United States.  Ms. Perez is speaking for all of the other

7    Plaintiffs, not the Government.

8              **THE COURT:**  All right.

9              **MR. SHAPIRO:**  And if I could just add a few --

10             **THE COURT:**  Yes.

11             **MR. SHAPIRO:**  -- comments, your Honor.

12             **THE COURT:**  Yes.

13             **MR. SHAPIRO:**  While the United States did not brief

14   this issue, we generally agree with the other Plaintiffs that

15   there needs to be some type of meaningful meet and confer terms

16   (indiscernible)

17             **THE COURT:**  Okay, hold on.  The recorder's not able

18   to take you.

19        **(Court confers with court recorder)**

20             Okay, maybe slow down.

21             **MR. SHAPIRO:**  Sure.  It's our position that such a

22   program could be accomplished through some type of a term in

23   the Order that ensures, first, that Plaintiffs can

24   expeditiously learn about the plans for an education and

25   training program; second, that Plaintiffs have an effective way

1   to provide input; and third, that Plaintiffs can seek to

2   address this Court if significant problems arise.

3          Thank you, your Honor.

4          **THE COURT:**  All right.  Anyone else speaking from any

5   of the Plaintiffs here?

6      **(No audible response)**

7          If not, I'm going to -- is it, Ms. Colmenero, are you

8   taking the lead or Mr. Frederick?

9          **MS. COLMENERO:**  Your Honor, this is Angela Colmenero.

10  I will be responding to this point on behalf of the State

11  Defendants.

12         **THE COURT:**  Okay, you can proceed.

13         **MS. COLMENERO:**  Thank you.

14         Let me first start off with saying that effective and

15  meaningful voter education and election official training are

16  extremely important to the State Defendants.  The only question

17  that education and training are essential during any election

18  cycles, but the State recognizes that this particular election

19  cycle is unique, given the new procedures that will be

20  implemented on this Court's forthcoming order, which include

21  the introduction of the reasonable impediment declaration in

22  the next few months before the 2016 November general election.

23         This is precisely why the Secretary of State Office

24  has developed a voter education campaign that is far more

25  expansive than anything the State has done in the past.

1    Indeed, the Secretary of State has dedicated slightly more than

2    $2.5 million to spend in the next three months before the 2016

3    November general election.

4         **THE COURT:**  So the plan is already in place?  We have

5    some specifics?

6         **MS. COLMENERO:**  Your Honor, the State started

7    preparing for the November general election in terms of getting

8    vendors to be the -- an engagement of the PR firm, as well as

9    the advertising firm, to help the State develop a mass media

10   campaign message to educate voters about the November -- the

11   changes that perhaps were pending in the November general

12   election.  So -- and that is what the State reports in its

13   August 5th filing.

14        So while the parties have made great strides to reach

15   an agreement on the terms in the interim remedy order, the

16   State Defendants object to the language proposed by the

17   Plaintiffs regarding voter education and election worker

18   training for two reasons.

19        First, the language that the Plaintiffs put in their

20   proposed submission is vague and undefined, as we've already

21   said.  They want the Court to include a requirement that the

22   parties meet and confer and allow them meaningful input into

23   what we intend to do.

24        **THE COURT:**  Okay, let me just ask, because it's a

25   little confusing.  I can't tell if you all have already met and

24

1    conferred about what specifically the Defendant State of Texas

2    here is planning to do.  That wasn't clear to me.  Have you

3    all --

4              **MS. PEREZ:**  We have not, your Honor.

5              **THE COURT:**  Okay --

6              **MS. PEREZ:**  We have not.  We have not seen any --

7              **THE COURT:**  Wait, wait, wait, wait.  Wait.  I'm

8    talking to Ms. Colmenero.

9              Correct?

10             **MS. COLMENERO:**  That's correct, your Honor.  Let me

11   be clear.  During the meet and confer process we did provide

12   the Plaintiffs with the different media channels that we

13   intended to use for the voter education campaign that we --

14   that are part of the contract that the State has with its

15   public relations firm and its advertising firm.  In terms of

16   the specific complaints that the Plaintiffs have raised today,

17   that is the first time that we are hearing about that.

18             **THE COURT:**  Okay, well then this doesn't work,

19   Counsel.  I mean I ordered you all to meet and confer.  So

20   we're just now talking about things on the day of the hearing.

21   That's not a good thing.  Right?

22             **MS. PEREZ:**  (Indiscernible)

23             **THE COURT:**  But you can proceed, Ms. Colmenero.

24             **MS. COLMENERO:**  Your Honor, if I may clarify a couple

25   of points too regarding the concerns the Plaintiffs have raised

25

1    regarding the website.

2           Several of those issues where they claim that there

3    were deficient notices on the website have, in fact, been

4    updated overnight.  This is a fluid process the State is

5    undergoing in terms of the tax ratification elections that are

6    occurring on a weekly basis and we're trying to adjust our

7    processes and the Court has been very patient with us with the

8    entry of the Temporary Remedial Orders.  And as those Orders

9    have been coming out, for example, the one last night, the

10   State was updating its website overnight, and those pages that

11   the Plaintiffs have pointed out as being deficient are, in

12   fact, now updated.

13          **THE COURT:**  Okay, but that's just an example, though,

14   if you all were just to sit and visit that could probably be

15   taken care of.  Right?

16          **MS. COLMENERO:**  Your Honor, we agree.  We would like

17   the Plaintiffs to provide us with specific issues, which we

18   have provided them, you know, what the State's plan was, but

19   this is the first time we're hearing about any type of other

20   deficiencies that are out there that perhaps the State could

21   correct.

22          **THE COURT:**  Okay.  What else?

23          **MS. PEREZ:**  May I respond, your Honor?

24          **THE COURT:**  No, not yet.  It's not your turn.  Right?

25   Ms. Colmenero's speaking.

1          **MS. COLMENERO:**  Your Honor, may I continue?

2          **THE COURT:**  Yes.

3          **MS. COLMENERO:**  Okay.  So as I was saying, Defendants

4    object to the inclusion of the meet and confer requirement, as

5    well as the meaningful input requirement, because the

6    Defendants want clear and definable terms in the Court's orders

7    to provide them confidence that they are, in fact, complying

8    with the Court's order.

9          **THE COURT:**  But I can't do that with some vague

10   details of a possible plan or that you all might do this or

11   that and the other.  I expect you all are going to have to

12   provide the Court a lot of the details that Plaintiffs are kind

13   of requesting.  Right?

14         **MS. COLMENERO:**  Well, and, your Honor, in terms of

15   the August 15th filing that the State is required to provide to

16   this Court, we can provide some additional specifics.  But our

17   concern is that what I heard the Plaintiffs to say is that they

18   basically want us to lay out what in our mind is a three-month

19   plan for voter education and produce it to them within five

20   days.

21         **THE COURT:**  But here's the problem here.  What I'm

22   hearing the Plaintiffs say is "X" -- well, and this goes back

23   to the point that you all haven't sat and conferred about this.

24   Right?

25         **MS. COLMENERO:**  Your Honor, the focus of the parties'

1    meet and confer, to be fair, was really focused on the

2    implementation of the reasonable impediment affidavit.  The

3    parties didn't progress very far in terms of voter education,

4    given the timetables that we were faced with.

5         THE COURT:  I know, but I think I told you all to

6    confer about everything.  Right?  So you all could have just

7    told the Court you know what, Court, we actually need a little

8    bit more time because we're not finished with this aspect of

9    it.  Right?  I've been very flexible with you guys because I

10   know you all are working hard.

11        MS. COLMENERO:  Yes, your Honor, and we do appreciate

12   that, and the parties did not progress very far down the voter

13   education and outreach issues --

14        THE COURT:  But it's not closed.  I mean you all just

15   didn't get there because you all didn't have enough time or you

16   all didn't get there because nobody wants to get there?

17        MS. COLMENERO:  We provided them details and we never

18   heard a response to those details.  So we never heard kind of a

19   counter proposal by the Plaintiffs and so -- and that just

20   happened right before the deadline before the Court required us

21   to file the Joint Submission of Agreed Terms.

22        But I think some of the -- from the State's

23   standpoint, I think our concerns from what the Plaintiffs are

24   requesting or from what we just heard today is they're

25   essentially going to force us to take a three-month contract

1    that we have with our vendors and produce it in five days and

2    the State does need flexibility to execute our concept with our

3    vendors and we need flexibility to improve contact, because

4    it's a fluid process in terms of as how we get --

5            **THE COURT:**  And I agree with that, but at some point,

6    and not just the Plaintiffs, the Court needs to know the

7    details of what you all are doing --

8            **MS. COLMENERO:**  Well --

9            **THE COURT:**  -- (indiscernible)

10           **MS. COLMENERO:**  And, your Honor, I think what we were

11   waiting on at our end was obviously the implementation of the

12   Court's Order setting forth the interim remedies and at that

13   point we then know what message to provide to the voters.

14   Because constantly updating our website in terms of trying to

15   keep the temporary status of things, we didn't want to create

16   more confusion.

17           **THE COURT:**  I understand that, but it's something

18   that we all need to sit and visit about together about what's

19   best and not just allow, you know, the State to go and do what

20   they think is right and appropriate.  I mean the Court's

21   obligated to know the details, the Plaintiffs need to know the

22   details.

23           So I mean maybe what I do is I enter the joint

24   submission as an order and we continue to work on education and

25   training, which will be ongoing up until, you know, the

1    election, I'm assuming.

2              **MS. COLMENERO:**  Your Honor, I think the terms set

3    forth in the Joint Submission of Agreed Terms, and specifically

4    the requirement set forth in Paragraphs 10 through 12, are

5    appropriate.  The State agrees with those.  And so I think the

6    process your Honor set out is something that we would be okay

7    with.

8              **THE COURT:**  Okay.  Anything else from the Defense at

9    this time before I let Ms. Perez respond?

10             **MS. COLMENERO:**  Well, I think --

11             **THE COURT:**  Let's just finish up this issue and then

12   we can move to the additional terms that the State was

13   requesting.

14             **MS. COLMENERO:**  Your Honor, that's all from the State

15   Defendants at this time.

16             **THE COURT:**  Okay then, Ms. Perez?

17             **MS. PEREZ:**  Thank you, your Honor.  I would note a

18   few things.  The kind of information that Plaintiffs were given

19   looked very, very similar to the kind of bare boned

20   insufficient information that was put in front of the Court on

21   the August 5th filing.  There is no mechanism for the Court or

22   the Plaintiffs to be able to assess from that what is going to

23   be -- whether or not the materials produced and accorded to

24   those five channels is accurate, done under what timetable, or

25   is going to be adequate.  And it is for this reason that we

1   have been specifically requesting in advance an understanding

2   of what purportedly Texas intends to do.

3           I would encourage the Court to review this morning

4   the website that I -- that we took screen shots on yesterday.

5   I feel very confident in saying that the Court would not find

6   the modifications that have been made adequate.  There are

7   couple of notations about changes that are happening in very

8   small elections involving a couple of thousand of people, but

9   even the language, when Texas was alerted about it as to, you

10  know, Shelby County abrogating all pending litigation, et

11  cetera, et cetera, has not been modified.  Whatever updates

12  they made last night, after being told in many ways

13  (indiscernible) this issue has been raised before the Court, is

14  not up to task.

15          We are interested in providing our input, but we

16  believe that without the help of the Court we're constantly

17  going to be coming back to the Court saying we didn't get

18  enough details to know.

19          **THE COURT:**  Well, you might be, but if you don't --

20          **MS. PEREZ:**  We were not able to get that.

21          **THE COURT:**  You might be going to come back to the

22  Court, but it didn't sound like you all really conferred in the

23  first place.  Right?

24          **MS. PEREZ:**  We certainly -- certainly we made an

25  effort to try and get the kind of info that we needed in order

1    to assess this and the information, again, your Honor, and I

2    don't want to get too close to the settlement conversations,

3    looks very, very similar to what was submitted on August 5th in

4    the filing and I hope that the Court will agree that that would

5    not be sufficient to make any sort of determination as to

6    whether or not the plan --

7            **THE COURT:**  Okay --

8            **MS. PEREZ:**  -- was sufficient.

9            **THE COURT:**  Yeah, we're not picking you up.  The

10   recorder can't -- didn't pick up whatever you said there at the

11   end.

12           **MS. PEREZ:**  That (indiscernible) the information that

13   Plaintiffs have gotten thus far looks very similar to what was

14   filed in the August 5th filing, which is not sufficient to make

15   an assessment.  And we would simply ask for a reasonable

16   process so the Plaintiffs have an opportunity to provide input

17   that is going to be heard and modified, again remember that we

18   have provided input with inadequate responses, and that we have

19   a very easy pathway to the Court to raise any issues, if we

20   continue (indiscernible)

21           **THE COURT:**  Okay.  Let me ask Ms. Colmenero this.

22           The Plaintiffs in their argument have discussed about

23   Texas submitting like a comprehensive specific plan, both in

24   terms of the education to the voters and the training for the

25   election workers.  There were several things mentioned, like a

32

1    list of all documents that were going to be used either to

2    educate or to train, modifications regarding those documents.

3    The other one was text or I guess language that was going to be

4    used in English and Spanish.  And then how these -- this

5    information was going to be distributed, both to educate the

6    voters and for training the election workers how it was going

7    to be distributed.  Are there specific objections to that

8    information being provided?  Because I would think -- the Court

9    is going to need that at some point to figure out, you know, is

10   this sufficient, what do we need to do.  So I didn't know if

11   there was some specific objections to what the Plaintiffs are

12   requesting?

13          **MS. COLMENERO:**  Well, your Honor --

14          **THE COURT:**  I understand timeframe and you all may

15   still be working on things.  I just need to know if there's an

16   objection to providing this sort of information.

17          **MS. COLMENERO:**  Your Honor, this is Angela Colmenero

18   again.  In the State's August 5th submission we set forth all

19   of the specific training materials that needed -- that will

20   need to be updated as soon as the Court enters its interim

21   order and we set forth specific timetables in terms of when

22   those updates will occur.

23          In terms of providing advance copies to the

24   Plaintiffs, our concern is that a lot of the stuff that's on

25   there are things that are typically solely within the

1   discretion of (indiscernible), such as updates to the website,

2   updates to the banners, tweets by the Secretary, tweets by

3   votetexas.gov.  We don't believe that we should have to run all

4   of those types of materials by the Plaintiffs for their review

5   and approval before we take those actions in terms of getting

6   the message out, not just to the mass public, but also to the

7   election officials.

8           THE COURT:  Okay.  You're going to have to be doing

9   that, right?  You're going to have to be drafting, creating

10  documents or changing, modifying things, right?

11          MS. COLMENERO:  Yes, your Honor.

12          THE COURT:  Why can't we all have that?

13          MS. COLMENERO:  Yes, your Honor, we are currently

14  doing that.  And specifically, everything that is listed in our

15  August 5th submission, except really for updating the handbook,

16  is going to happen within days of the Court entering its

17  interim order.  The updating of the handbook, just to be clear,

18  it doesn't actually go to voters, it goes to election

19  officials, and we need --

20          THE COURT:  No, I understand that.

21          MS. COLMENERO:  -- time to prepare that and ensure

22  that it gives them the most accurate information, so they

23  are --

24          THE COURT:  But that's what I said.  I understand

25  there may be a time crunch.  I understand you all are working

34

1    on things.  But is there an objection to providing the

2    information that the Plaintiffs are wanting in those three

3    different areas that they've requested?  Or is it just we're

4    operating fast and furious and we're trying to get this done

5    and -- I don't understand if the State of Texas has an

6    objecting to providing that sort of information.

7              **MS. COLMENERO:**  Your Honor, I would also point out,

8    as an example, we have already updated the poster --

9              **THE COURT:**  Okay, can I just get a yes or no?  Does

10   the State of Texas object to the Plaintiffs' request that they

11   provide a comprehensive and detailed plan regarding different

12   areas, both in terms of educating the voters, training the

13   election workers, regarding which documents are going to be

14   created, which are going to be modified or changed, what's

15   going to be changed, how is it going to be distributed?  Is

16   there an objection to providing that sort of information?

17             **MS. COLMENERO:**  Your Honor, the State of Texas does

18   not object to providing a comprehensive and detailed plan to

19   the Court.  I think where our concern is, is providing that

20   comprehensive and detailed plan to the Plaintiffs may inject a

21   delay into the process when we have to be --

22             **THE COURT:**  Okay, but I'm trying to work with you on

23   that.  My first question, okay, it doesn't sound like there's

24   an objection to providing this sort of information, which the

25   Court is going to need anyway to approve, right?  Okay.  So

1   then the second thing is how are you going to do it and that's

2   what you all are going to confer about, how is the State going

3   to do that, what's reasonable for the State to provide this

4   sort of information.  Right?  I mean am I missing something

5   here?

6           **MS. COLMENERO:**  No, your Honor, and I apologize if

7   I'm not being as clear as possible.

8           **THE COURT:**  I understand you're in a difficult

9   situation trying to get this education done, training, we're

10  operating on a short timeframe here.  I get all that.  But

11  we've got -- the very basic -- they want certain information.

12  Is that objected to?  It doesn't sound like it.  So then how

13  are we going to do it?  What's going to happen?  Right?  And I

14  think you all can confer about that and if you have issues, you

15  know, then maybe I step in.

16          But I couldn't tell from reviewing this whether both

17  sides refused to confer about this, whether there had been some

18  conferring done, what had been discussed, whether any specifics

19  had been done.  From the plan submitted or the information

20  submitted by the State, you know, it was like we will do this,

21  we can do this.  So I don't know, are they going to do it,

22  what's going to happen, how?  It was a little vague all around

23  on this end.

24          **MS. COLMENERO:**  Your Honor, I have a proposal I think

25  that may address your question.

1          **THE COURT:**  Okay.

2          **MS. COLMENERO:**  I think from the State Defendants'

3     perspective, we would ask the Court to enter the agreed

4     submission of terms and would specifically keep the language of

5     Paragraphs 10 through 12, and as set forth in the Court's soon

6     to be issued order, the State Defendants will have to submit a

7     comprehensive plan.  Given the short timeframe the parties are

8     working under, the State is fine with going back and conferring

9     with the Plaintiffs over some of those aspects, because I don't

10    think the parties fully completed that conferral process

11    regarding voter education and outreach, given the impending

12    deadline.  And at that time we can provide some additional

13    details and perhaps address some of the Plaintiffs' concerns

14    and if there is still some disagreement among the parties, then

15    the parties could come back to the Court and we could use your

16    intervention and address that concern.

17         **THE COURT:**  Okay.  So when are you all going to

18    confer and when am I going to know what has happened here or

19    how that has gone?

20         **MS. COLMENERO:**  You're asking when are we going to

21    confer?  We can confer as soon as possible.  We have already --

22    I mean we've laid out our concerns in the August 5th submission

23    and so I think the parties can work on that in this interim

24    conference.

25         **THE COURT:**  Well, how about if I set a status hearing

37

1    for 2:00 o'clock on Friday afternoon?

2         **MS. COLMENERO:**  Yes.  And your Honor, I think it

3    would be helpful if the Court issued an order on the agreed

4    submission --

5         **THE COURT:**  Yeah, I don't mind doing that.  Any issue

6    with that from the Plaintiffs' side, Ms. Perez or Mr. Shapiro?

7         **MS. PEREZ:**  No, that's fine, your Honor.

8         **MR. SHAPIRO:**  No, your Honor.

9         **MS. PEREZ:**  Again, we simply -- we just simply want

10   to see what they're going to go and to be able to weigh in --

11        **THE COURT:**  Right, and --

12        **MS. PEREZ:**  -- and (indiscernible)

13        **THE COURT:**  Right, and they need to get that order

14   from the Court before they can be definite, instead of feeling

15   like, well, we start putting out information, then we're going

16   to have to change it.  So I will enter the agreed submission,

17   I'll enter an order on the agreed submission, and then you all

18   are going to confer.  We're going to have a status hearing at

19   2:00 o'clock on Friday, correct?

20        Now, this deadline of August 15th, what is that for

21   exactly?

22        **MS. COLMENERO:**  Your Honor, as set forth in the

23   agreed terms by the parties, that is for the State to submit a

24   plan for the training of election officials, as well as a plan

25   for the education of voters.

1          **THE COURT:**  Okay.  So what else do we need to address

2    this morning from the Plaintiff, Ms. Perez, Plaintiffs?

3          **MS. PEREZ:**  My colleague, Chad Dunn, is

4    (indiscernible) other issues, your Honor.

5          **THE COURT:**  I'm sorry, what did you say?

6          **MS. PEREZ:**  Chad Dunn (indiscernible) other issues,

7    your Honor.

8          **THE COURT:**  Okay.  So nothing more --

9          **UNIDENTIFIED SPEAKER:**  (Indiscernible)

10          **THE COURT:**  Those are the additional requests by the

11   State, correct?  Is that where we're going now?

12          **MR. DUNN:**  I believe that's what's left to resolve,

13   yes, Judge.

14          **THE COURT:**  Okay.  Then Mr. Dunn, do you want to

15   proceed on -- well, actually it was the State's request, so let

16   me allow Ms. Colmenero to address those and let me get there.

17          **MR. FREDERICK:**  Your Honor, this is Matt Frederick.

18   I will be addressing those additional points for the State.

19          **THE COURT:**  Okay.  Give me one second.

20          **MR. FREDERICK:**  Sure.

21      **(Pause)**

22          **THE COURT:**  Okay, you can proceed, Mr. Frederick.

23          **MR. FREDERICK:**  Thank you.

24          Your Honor, the State is requesting three modest

25   adjustments to the agreed terms.  We believe each one is

1    consistent with what the parties have already discussed and

2    also consistent with this Court's Order and the Order of the

3    Fifth Circuit.

4            The first is language regarding future legislative

5    action.  The Fifth Circuit obviously contemplated a Court

6    ordered interim remedy for the November 16th, 2016 election.

7    And while in theory the Legislature could meet in a special

8    session, but as a practical matter it is very difficult, if not

9    impossible, for the Legislature to provide any remedy for the

10   upcoming election.  I think that the Fifth Circuit recognized

11   that.  However, the Fifth Circuit's Order expressly

12   contemplated future legislative action and instructed this

13   Court that in considering the claim of discriminatory purpose

14   going forward the Court should not consider any new evidence,

15   except the Fifth Circuit expressly provided that the Court

16   should consider any action that the Legislature should take.

17   We think it is important to recognize that in the -- in any

18   interim remedy, that this is something that remains within the

19   competence of the Legislature to address and that they may do

20   that in the upcoming regular session.

21           The second point is a slight modification to language

22   in the reasonable impediment declaration.  We -- basically the

23   State believes that it makes sense to make explicit what we

24   believe is already implicit in the reasonable impediment

25   declaration, which, as the Court provided in its Order of

1    July 21st, is that all persons who have an SB14 ID or who have

2    the means to get it in time for the 2016 election must display

3    that ID in order to vote.  It's important to be very clear on

4    that point to avoid voter confusion, because we've been

5    talking -- because the scope of any education and training that

6    has to occur is not limited to people who don't already have

7    the ID.  It's important to make clear to people who do have it

8    that certain aspects of SB14 still remain in place.  We don't

9    want confusion where people think that if they have an ID they

10   don't have to show it.  And we think that is completely

11   consistent with the parties' understanding of what is required

12   for a voter to be eligible to sign the reasonable impediment

13   affidavit or declaration, but we just want to make very clear

14   to the voters that that's still required if they have it or are

15   able to get it.

16          Finally, the third issue is the language regarding

17   preservation of the parties' rights.  That's pretty self-

18   explanatory.  We just want --

19          **THE COURT:**  Hold on.  All of a sudden you kind of

20   sound like you're far away.

21          **MR. FREDERICK:**  Oh.  I apologize.  We just want the

22   order to be clear that the parties, that all of the parties

23   preserve their rights.  We believe that's implicit, we only

24   want to make it explicit.

25          And those are the only three issues.

1          **THE COURT:**  So it's not necessary, but it will make

2     you feel better.  Right?

3          **MR. FREDERICK:**  Well, we --

4          **THE COURT:**  No, I'm not arguing.  I don't really have

5     a problem with that.  I'll hear from the Plaintiffs.  I'm just

6     saying I don't think it's necessary, but if that's going to

7     make you all feel better and there's no objection to it, I'll

8     be fine with it.

9          **MR. FREDERICK:**  Okay.  Well, and to respond to that,

10    if the parties all agree that that is part of the terms, then

11    that's fine.  We just want it made clear and if everybody

12    agrees, that's okay with the State.

13         **THE COURT:**  I mean that's the way I see it.

14         **MR. FREDERICK:**  Okay.

15         **THE COURT:**  But anyway, okay, so those are your three

16    points and Mr. Dunn for the Private Plaintiffs and Plaintiff

17    Intervenors, and then I'll hear from Mr. Shapiro.

18         **MR. DUNN:**  Yes, this is Chad Dunn on behalf of the

19    Private Plaintiffs, for the record.

20         So without patting ourselves too much on the back, I

21    do want to just go back and explain to the Court what I think

22    was near close to a miracle that happened here in terms of the

23    parties agreeing to the provisions in the agreed submission and

24    the reasonable impediment declaration.  The process, the

25    instructions, I think the Court's already alluded to.  There

1    were 18/24 hour a day negotiations over this, starting with the

2    House District 120 election, moving through the tax election

3    through the course of working out this agreement by November.

4    And as the Court, without prejudicing any settlement

5    discussions, as the Court is aware from, you know, ample

6    experience in other legal arenas, people started in different

7    positions and gave up on certain things as they went through

8    the process.  And I know that's true of the Plaintiffs.  I'm

9    sure that's true of the State.

10          So at the outset there was obvious attention and

11   focus on exactly what the language would be in this

12   declaration.  In fact, I'll go as far as to say that's probably

13   the most critical issue that the parties had to come together

14   and touch hands on.  And we did that.  It wasn't until this

15   agreement on the declaration was reached that we did learn that

16   the State wanted to add a sentence to it that, frankly, upsets

17   the entire balance of the agreement.

18          So we will start with that request and then I'll

19   transition to the request which, frankly, I believe is in

20   balance with the legislative request, albeit I do think the

21   Court ought to deny it.  So starting first with the language in

22   the affidavit.  Number one, this thin film of an agreement was

23   hammered together by the parties in painstaking effort and the

24   effort for one party to come in now and ask for additional

25   items threatens the deal to fall apart altogether.  And

43

1    certainly there are things that the Plaintiffs desire to have

2    in this agreement that aren't there and I'm sure there are

3    provisions the State would like to have in this agreement that

4    aren't there.  But on this point, it wasn't an issue

5    specifically reserved.  For example, on the training and

6    education it was known from the beginning, it was made clear in

7    the communications that were already written that the

8    Plaintiffs were reserving that issue.  On the legislative, the

9    State made it clear that it continued to want legislative

10   language.  There wasn't any surprise that those issues were

11   going to go to the Court.  But to insert a term like this in

12   what is the fundamental centerpiece of the remedy is not some

13   place we think the Court ought to go.

14          But even if it were, even if the rules of fairness

15   and fair play and negotiation and (indiscernible) were in play,

16   it also isn't a solution that makes sense.  First, it isn't

17   done in any other similar type affidavit or process used in

18   voting.  The Court might recall a substantially similar named

19   affidavit process which was developed after Senate Bill 14 was

20   implemented.  It doesn't involve such high level perjury,

21   statutory citation, legal jargon (indiscernible).  There isn't

22   any legislative history to support the requirement of such

23   language.  So it's not anything that the State can come to the

24   Court or us and say, look, the Legislature has shown a policy

25   preference to use language such as this.  In fact, the opposite

44

1    is true.

2              But in addition, the language is unnecessary, because

3    the agreed terms in the declaration already provide the voter

4    is affirming, both in the oral communications with the poll

5    worker and then later in the signature on the reasonable

6    impediment declaration, that they have a reasonable impediment

7    or difficulty that prevents them from getting an acceptable

8    form of photo identification.  So the additional language

9    doesn't add anything more except, we think, the Plaintiffs, at

10   least the Private Plaintiffs think, except a thinly veiled

11   opportunity for the State to confuse, intimidate, and perhaps

12   after the election harass voters, despite the clear terms in

13   the agreement that say voters' justifications for not having a

14   Senate Bill 14 ID can be challenged.

15             In addition to those points, the notion that

16   individual voters can be subjected to perjury charges,

17   something made exclusive in a last minute (indiscernible),

18   serves no purpose whatsoever other than to discourage

19   individuals from employing what the Fifth Circuit en banc has

20   determined is their right, which is to use the declaration or

21   to have some process to avoid the onerous and unnecessary

22   burdens of Senate Bill 14.

23             And then finally, the language, because it hasn't

24   been negotiated by the parties, clearly only deals with what

25   the State is concerned (indiscernible) and doesn't deal at all

45

1    with what the Plaintiffs believe are important interests to the

2    voters and certainly what this Court and the Fifth Circuit

3    found are important interests to the voters.  Which is why

4    (indiscernible) language should remain as it is.

5           So now I'll turn to the legislative issue.  There --

6    again going back to the point, there's a lot of things that the

7    Plaintiffs and I assume the State would also like to add to the

8    Court's order.  And certainly I don't think it would be out of

9    bounds for the Plaintiffs to ask the Court to put some language

10   in the order that all of these provisions are subject to future

11   revision in the event the intent finding is reaffirmed by this

12   Court and is affirmed (indiscernible) if an appeal is proceeded

13   with.  And certainly a finding of intent would adjust what was

14   necessary by terms of remedy.  In fact, the U.S. Supreme Court

15   has said an intentionally discriminatorily adopted law is

16   entitled to no deference whatsoever.

17          So we could be asking the Court to expand on that.

18   Those are reasonable legal terms and certainly things supported

19   by the Fifth Circuit's en banc opinion.  But it's also not

20   necessary for the purposes of putting in place an interim

21   remedy.

22          And the trouble with the State's language on the

23   legislature is that it's asking the Court to step into

24   (indiscernible) not required at this point, to do so in a way

25   that weighs in the State's favor and the State's interpretation

1    of the legislative role moving forward.  And whatever the Court

2    does potentially upsets the already existing language on the

3    legislative issue in the en banc Fifth Circuit opinion.  And as

4    the State notes, the en banc Fifth Circuit opinion references

5    that the Legislature has a role to play here and makes note

6    that the Legislature's official role shouldn't be upset by the

7    court proceedings, except to the extent required by federal

8    law.  And nothing more needs to be said on it at this point and

9    doing so merely is an attempt to resolve future issues in the

10   State's favor now.

11           So those two issues we think the Court ought to deny

12   and not include in the order.  And then the third and final

13   issue, which, you know, we have been clear (indiscernible)

14   orders, you know every party is preserving its position

15   (indiscernible) and certainly the Plaintiffs are preserving its

16   position on intent, the State is preserving its position if it

17   wants to appeal, except insofar as it's agreed to these terms.

18   And so we think that exists, but we don't, you know,

19   necessarily oppose some sentence or footnote in the order that

20   recognizes that each party is preserving their rights to

21   appeal, except insofar as they've agreed to these terms.

22           So that concludes my argument.

23           **THE COURT:**  All right, thank you.

24           Mr. Shapiro?

25           **MR. SHAPIRO:**  Yes, your Honor.  The United States

1   generally concurs with the positions taken and arguments

2   expressed by Mr. Dunn and we are definitely satisfied that we

3   can rest on our submission on the issues.

4            Thank you, your Honor.

5            **THE COURT:**  All right, thank you.

6            Mr. Frederick?

7            **MR. FREDERICK:**  Yes, your Honor.

8            **THE COURT:**  If you want to respond.

9            **MR. FREDERICK:**  I would like to, thank you.

10           First, I want to say on behalf of the State, we

11  object to the allegation that we are trying to harass,

12  intimidate, or discourage any voters.  That is absolutely

13  inaccurate.  I object to that statement.  The State has made

14  extraordinary effort to address the issues raised by the Fifth

15  Circuit's decision.  So --

16           **THE COURT:**  And I agree and like I said earlier, and

17  I wasn't just saying that, I sincerely appreciate and thank you

18  all, both sides, everyone involved, for all the work and effort

19  you all have put into this.  It's been beautiful.

20           You can proceed.

21           **MR. FREDERICK:**  Thank you, your Honor.

22           Specifically on the proposed language in the

23  declaration, the notion that this has not been discussed or

24  that this has somehow been raised at a late hour is simply not

25  accurate.  This issue about the obligation of a voter who has

1    or can get an SB14 ID, this was raised expressly by the Court

2    in its Order on July 21st.  It was discussed early on by the

3    parties.  And we believe that it is agreed in substance by the

4    parties.  In fact, Mr. Rosenberg was on NPR this morning saying

5    that under the parties' jointly agreed terms what the voter

6    must do is swear that they do not have an SB14 ID.  So we don't

7    think this is anything new, but we do think it is important to

8    avoid any possibility of confusion to make this term clear to

9    voters.

10            It's also important when the State goes out to try to

11   educate voters and educate poll workers that we know exactly

12   what we can tell them.  We don't want there to be any confusion

13   or any suggestion, as there has been this morning, that by

14   making clear the terms of what the Court has already

15   contemplated as part of interim relief that we are somehow

16   trying to intimidate voters.

17            So that is why we're asking for it and that is why we

18   believe that it is completely consistent with what this Court

19   has said and what the parties have agreed.

20            Turning to the legislative language, again this is

21   consistent with basic constitutional structure and consistent

22   with what the Supreme Court has always said in election law

23   cases, which is that the Legislature has the prerogative to

24   establish election law and it should have the first

25   opportunity, whenever possible, to fashion a remedy or modify

**EXCEPTIONAL REPORTING SERVICES, INC**

1    its election laws.  We think that this is -- all we want to do

2    is make that clear.  We think that's consistent with what the

3    Fifth Circuit has said.

4          With respect to the specific proposal, our intention

5    is just to be accurate.  And I understand that the Plaintiffs

6    don't, probably don't like a lot of the language.  I would make

7    this suggestion.  We proposed two paragraphs.  The first

8    included several citations to Supreme Court opinions.  I think

9    the State's purpose would be served if we just had a shorter

10   second paragraph that recites what we see as completely

11   accurate facts and just acknowledges, as the Fifth Circuit did,

12   that the Legislature still retains the ability to address this

13   if it chooses to do so.

14         To that point, the Department of Justice, in

15   responding to our proposal for the legislative language, they

16   proposed some additional terms.  You know, to the extent that

17   this Court in its interim order chooses to cite any authority,

18   as we had proposed in the first additional legislative

19   paragraph, we feel it would be entirely fair and accurate to

20   add the DOJ's proposed language.  However, again, we think that

21   all the parties' purposes would be served if we just included

22   the second very short paragraph.

23         And that concludes my argument on that point.

24         **THE COURT:**  All right, thank you.

25         Anything else on the additional terms then requested

50

1   by the Defense?

2           **MR. ROSENBERG:**  Your Honor, this is Ezra Rosenberg,

3   just because -- if I may, just respond to Mr. Frederick's

4   having taken -- alluded to a quote that appears from me today.

5   That quote was out of the full context of discussing that the

6   language should not be intimidating or threatening and it

7   should be according to the best of the knowledge of the

8   Plaintiffs.  And so it is a partial statement from a longer

9   interview, for what it's worth.

10          **THE COURT:**  All right.  Honestly, this Court agrees

11  that this Court should and will defer to the Legislature first,

12  that the State of Texas should have the first opportunity to

13  devise any remedies.  With that being said, I don't know that

14  the additional language is required or that it's necessary.

15  And once I start going there, then I have to include language

16  that the Plaintiff thinks appropriate to kind of counter and

17  then we could go on, when that's not the focus of what we're

18  trying to do here and I don't think it's necessary.  I mean the

19  law is the law and that's what it is.

20          So that request for the additional legislative

21  language under Number 1 is denied.  The Court is going to deny

22  the request for the additional language on the impediment

23  declaration.  And then, although I said earlier I don't think

24  it's required, but there doesn't seem to be an issue with the

25  third request, the language regarding the preservation of

1    rights and not waiving any arguments regarding matters, I'll

2    include that in there.

3              Is there anything else on these additional requests?

4              **MR. FREDERICK:**  Nothing from the State, your Honor.

5    Thank you.

6              **THE COURT:**  Okay.  From the Plaintiffs?

7              **MR. SHAPIRO:**  Nothing from the United States,

8    your Honor.

9              **THE COURT:**  Okay.  So let me just see where we are.

10   The Court's going to enter an order regarding the agreed

11   submission.  You all are going to provide me with a revised

12   declaration, correct?

13             **MS. COLMENERO:**  That is correct, your Honor.

14             **THE COURT:**  Okay.  Then you all are going to meet and

15   confer regarding the education and training information and we

16   will meet for a conference at 2:00 p.m. on Friday afternoon.

17             And is there anything else from the Plaintiff?

18             **MR. ROSENBERG:**  Your Honor, Ezra Rosenberg again.

19   Good morning.  We did want to raise one issue on behalf of the

20   Private Plaintiffs.  The Fifth Circuit directed after making

21   the interim relief determination the Court is supposed to

22   revisit and reevaluate the evidence pertaining to intent.  From

23   the Private Plaintiffs' perspective, we believe it's important

24   for this determination to occur prior to legislative action for

25   the reasons that Mr. Dunn has already alluded to.  And we would

like to propose that the parties, in addition to meeting and conferring on the development of the training and education plans, also meet and confer over the same time period as to a joint schedule, which may include findings of fact and conclusions of law and briefing, leading up to a hearing and then decision on the issue of intentional discrimination.

As the Court is aware, there are caveats in the Fifth Circuit's opinion that the Court is encouraged not to make the actual determination prior to election day and in any event not to implement that determination until after election day. But we think that it's important for the process to begin, so we'd like to meet and propose a joint schedule, and if we can't, submit competing schedules to your Honor.

**THE COURT:** Yeah, but let me recommend this. Let's finish this, you know, I'm saying we have a status conference on Friday at 2:00, we'll see where we are and then we can address that.

Now, there has also been pending for a very long time the Plaintiffs' motion for the expert witnesses' expenses. There was briefing, full briefing on that from both sides. So if there's not going to be anything further on that, I will try to make a ruling on that soon. But if there is, let Brandy know that you all intend to maybe provide some additional information or briefing. If not, I'm just going to go forward on that as soon as I can.

53

1          So you are excused then and I will --

2          **MS. COLMENERO:**  Your Honor?

3          **THE COURT:**  Yes.

4          **MS. COLMENERO:**  Your Honor, this is Angela Colmenero.

5  I have one housekeeping matter I wanted to --

6          **THE COURT:**  Yes.

7          **MS. COLMENERO:**  -- place before the Court.

8          **THE COURT:**  Okay.

9          **MS. COLMENERO:**  Yesterday the parties filed a joint

10 motion for entry of a temporary remedial order to address

11 certain tax ratifications.

12          **THE COURT:**  Right.

13          **MS. COLMENERO:**  And there was a slight error in that

14 filing.  We had indicated that Caldwell Independent School

15 District in Burleson County was holding a tax ratification

16 election.  We have since learned that is not correct.  It's

17 actually Snook ISD.  That's S-n-o-o-k ISD.  And consistent with

18 the Court's Order issued yesterday, we have already alerted the

19 appropriate election officials and they are prepared to

20 implement the reasonable impediment declaration.  But I just --

21 I wanted to alert the Court that there was just that issue with

22 the Order issued yesterday.

23          **THE COURT:**  Okay.  Do we need to do an amended order

24 or anything?

25          **MS. COLMENERO:**  I don't believe so, because there was

54

1    language in the Court's Order that said if there were any

2    additional school districts that were subsequently --

3              THE COURT:  Okay.

4              MS. COLMENERO:  -- learned of, then we would alert

5    them.

6              THE COURT:  All right.  Anything from the Plaintiffs

7    on that?

8         **(No audible response)**

9              No.  So if nothing else then, I'm going to excuse you

10   and then we'll just visit on Friday afternoon.

11             MS. COLMENERO:  Thank you, your Honor.

12             THE COURT:  Thank you.  You're excused.

13        **(Counsel thank the Court)**

14        **(This proceeding was adjourned at 9:40 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    August 15, 2016

            Signed                                        Dated


                    *TONI HUDSON, TRANSCRIBER*