```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                      CORPUS CHRISTI DIVISION




MARC VEASEY, ET AL.,           )       CASE NO: 2:13-CV-00193
                               )
            Plaintiffs,        )              CIVIL
                               )
     vs.                       )        Corpus Christi, Texas
                               )
RICK PERRY, ET AL.,            )        Friday, August 12, 2016
                               )
            Defendants.        )        (2:31 p.m. to 3:05 p .m.)


                   TELEPHONIC STATUS CONFERENCE

            BEFORE THE HONORABLE NELVA GONZALES RAMOS,
                   UNITED STATES DISTRICT JUDGE




Appearances:              See Next Page

Court Recorder:           Frenchie Carbia

Case Manager:             Genay Rogan

Deputy U.S. Marshals:     H. Word; S. Osteicher

Transcriber:              Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

<u>APPEARANCES FOR</u>:

Plaintiffs:                     CHAD W. DUNN, ESQ.
                                Brazil and Dunn
                                4201 Cypress Creek Parkway, Suite 530
                                Houston, TX 77068

                                DANIELLE LANG, ESQ.
                                Campaign Legal Center
                                1411 K. St. NW, Suite 1400
                                Washington, DC 20005

                                J. GERALD HEBERT, ESQ.
                                Attorney at Law
                                191 Somervelle Street #405
                                Alexandria, VA 22304

                                ABBY KAMIN, ESQ.

Mexican American               EZRA D. ROSENBERG, ESQ.
Legislative Caucus,            Dechert, LLP
et al.:                        902 Carnegie Center, Suite 500
                                Princeton, NJ 08540-6531

                                LINDSEY B. COHAN, ESQ.
                                Dechert, LLP
                                300 West 6th St.
                                Austin, TX 78701

                                BRENDAN DOWNES, ESQ.
                                Lawyers' Committee for Civil Rights
                                1401 New York Ave. NW, Suite 400
                                Washington, DC 20005

                                MYRNA PEREZ, ESQ.
                                Brennan Center for Justice
                                161 Avenue of the Americas
                                12th Floor
                                New York, NY 10013

                                VICTOR GOODE, ESQ.

                                JENNIFER CLARK, ESQ.
                                Brennan Ctr. for Justice
                                161 Avenue of the Americas
                                12th Floor
                                New York, NY 10013

**APPEARANCES FOR:**          (CONTINUED)


United States          AVNER SHAPIRO, ESQ.
of America:            BRUCE I. GEAR, ESQ.
                       JOHN SMITH, ESQ.
                       RICHARD DELLHEIM, ESQ.
                       MEREDITH BELL-PLATTS, ESQ.
                       U.S. Department of Justice
                       950 Pennsylvania Ave. NW
                       Washington, DC 20530


Ortiz Plaintiffs,      MARINDA VAN DALEN, ESQ.
et al.:                Texas RioGrande Legal Aid, Inc.
                       531 E. St. Francis
                       Brownsville, TX 78520


                       JOSE GARZA, ESQ.
                       Texas Rio Grande Legal Aid
                       1111 N. Main Ave.
                       San Antonio, TX 78212


Texas League of Young  TANIA C. FARANSSO, ESQ.
Voters Education Fund:  Wilmer Cutler Pickering, et al.
                       1875 Pennsylvania Avenue, NW
                       Washington, DC 20006


Texas Association of   ROLANDO L. RIOS, ESQ.
Hispanic County Judges 115 E. Travis
and County             Suite 1654
Commissioners:         San Antonio, TX 78205


State of Texas:        MATTHEW H. FREDERICK, ESQ.
                       ANGELA V. COLMENERO, ESQ.
                       Office of the Attorney General
                       P.O. Box 12548
                       Austin, TX 78711

4

1          **Corpus Christi, Texas; Friday, August 12, 2016; 2:31 p.m.**

2                          **(Call to Order)**

3               **THE COURT:**  Good afternoon.  Court calls Cause Number

4      2:13-cv-193, *Veasey, et al. versus State of Texas, et al.*

5      Genay will take roll here.

6               **THE CLERK:**  Counsel, on the Veasey Plaintiffs, do I

7      have Mr. Chad Dunn?

8               **MR. DUNN:**  Yes.  Good afternoon.

9               **THE CLERK:**  Hello.  Mr. Derfner?

10              **MR. DUNN:**  He will not be joining us.

11              **THE CLERK:**  Thank you.  Ms. Lang?

12              **MR. DUNN:**  Yes, she's here.

13              **THE CLERK:**  Thank you.  Mr. Hebert?

14              **MR. HEBERT:**  Yes, this is me.  Thank you.

15              **THE CLERK:**  Thank you.  Mr. Baron?

16        **(No audible response)**

17              **THE CLERK:**  No, no Mr. Baron.  And Ms. Kamin?

18              **MS. KAMIN:**  Yes, ma'am.

19              **THE CLERK:**  Thank you.  Do I have anybody else on the

20      Veasey Plaintiffs?

21        **(No audible response)**

22              **THE CLERK:**  And I'll move on to Texas NAACP,

23      Ms. Perez?

24              **MS. PEREZ:**  Yes, ma'am.

25              **THE CLERK:**  Thank you.  Ms. Cohan?

1          **MS. COHAN:**  Yes, ma'am.

2          **THE CLERK:**  Thank you.  Mr. Downes?

3          **MR. DOWNES:**  Yes, ma'am.

4          **THE CLERK:**  Thank you.  Mr. Rosenberg?

5          **MR. ROSENBERG:**  Yes, ma'am.

6          **THE CLERK:**  Thank you.  Mr. Goode?

7          **MR. GOODE:**  Yes, ma'am.

8          **THE CLERK:**  Thank you.  And Jen Clark?

9          **MS. CLARK:**  Yes.  Thank you.

10          **THE CLERK:**  Thank you.  Anyone else on the Texas

11    NAACP?

12      **(No audible response)**

13          **THE CLERK:**  Okay.  We'll move on to the Taylor

14    Plaintiffs.  Jose Garza?

15          **MR. GARZA:**  Yes.

16          **THE CLERK:**  Thank you.  And Ms. Van Dalen?

17          **MS. VAN DALEN:**  Yes, ma'am.

18          **THE CLERK:**  Thank you.  And the Texas Association of

19    Hispanic County Judges, Mr. Rios?

20          **MR. RIOS:**  Yes, ma'am.

21          **THE CLERK:**  Thank you.  Texas League of Young Voters,

22    Mr. Ross?

23      **(No audible response)**

24          **THE CLERK:**  No Mr. Ross.  Ms. Faransso?

25          **MS. FARANSSO:**  Yes, ma'am.

1          **THE CLERK:**  Thank you.  And Leah Aden?

2      **(No audible response)**

3          **THE CLERK:**  No Ms. Aden.  For United States,

4   Mr. Shapiro?

5          **MR. SHAPIRO:**  Yes, ma'am.

6          **THE CLERK:**  Thank you.  Ms. Bell-Platts?

7          **MS. BELL-PLATTS:**  Good afternoon, your Honor.

8          **THE COURT:**  Good afternoon.

9          **THE CLERK:**  Mr. Oliker?

10     **(No audible response)**

11         **THE CLERK:**  No Mr. Oliker.  Mr. Greer -- Gear, I'm

12  sorry?

13         **MR. GEAR:**  Yes, ma'am.

14         **THE CLERK:**  Thank you.  Mr. Smith?

15         **MR. SMITH:**  Yes, ma'am.  Ms. Wake?

16     **(No audible response)**

17         **THE CLERK:**  No Ms. Wake.  Mr. Freeman?

18     **(No audible response)**

19         **THE CLERK:**  No?  And Chris Herren?

20     **(No audible response)**

21         **THE CLERK:**  No.  And for the State of Texas,

22  Ms. Colmenero?

23         **MS. COLMENERO:**  Yes, ma'am.

24         **THE CLERK:**  Thank you.  And Mr. Frederick?

25         **MR. FREDERICK:**  Yes, ma'am, I'm here.

7

1          **THE CLERK:**  Thank you.

2          **THE COURT:**  Okay.  I think that's --

3          **MR. DELLHEIM:**  Your Honor, forgive me --

4          **THE COURT:**  Yes?

5          **MR. DELLHEIM:**  -- this is Richard Dellheim for the

6    United States, and I will be speaking for the United States.  I

7    just wanted to address the Court.

8          **THE COURT:**  All right.  Then Court had set this

9    status hearing after our hearing on Wednesday, following up on

10   you-all conferring regarding the plan for the Voter Education

11   and Election Worker Training.  So who's going to report to the

12   Court on where we are?

13         **MS. PEREZ:**  If I may, your Honor?  Myrna Perez for

14   the private Plaintiffs?

15         **THE COURT:**  Okay.

16         **MS. PEREZ:**  Good afternoon.  Thank you for hearing us

17   today and thank you for ordering us to -- we're in a very

18   different position than we were on Wednesday.  At this point in

19   time, your Honor, I would like, if it pleases the Court, to go

20   through our understanding of what the parties have agreed to,

21   to make three very small requests of the Court and to indicate,

22   for the record, those items for which we were not able to reach

23   agreement on.  But, again, at this point in time, we are only

24   making three requests of the Court today.

25         **THE COURT:**  Okay.

1          **MS. PEREZ:**  So, thus far, your Honor, the parties

2   have agreed that the State will provide the Plaintiffs with an

3   opportunity to review in advance those portions of the

4   following documents that would be updated or created to provide

5   training and/or education as to the terms of the Interim Remedy

6   Order.

7          The first is the written Election Worker Training

8   Manual.  And that includes the Poll Watcher Guide and the

9   Inspection Guide, an online training module, both in English

10  and Spanish.

11         The State will also provide Plaintiffs with the

12  opportunity to review in advance tool kits distributed to

13  community group leaders, both in English and Spanish, and tool

14  kits distributed to election officials, both in English and

15  Spanish.

16         Plaintiffs will provide suggestions on this material

17  within 24 hours of receipt.  The State will consider the

18  suggestions, but is not committed to accepting them.  And

19  Plaintiffs reserve their right to seek appropriate relief from

20  the Court, should the State not accept these suggestions after

21  meeting and conferring with the State.

22         Secondly, the State will accept recommendations from

23  Plaintiffs at the community organizations or businesses to be

24  targeted as part of the State's community engagement plan.  The

25  State will advise Plaintiffs whether any such recommended

1    entities are already on their list, whether they will be added,

2    or whether they will not be added.  And, again, Plaintiffs

3    reserve their right to seek appropriate relief from the Court,

4    should the State not accept suggestions, obviously, after

5    meeting and conferring with the State.

6          The State will add to the list of tool kit recipients

7    any elected official the tool kits are being sent to the

8    elected official recommended by Plaintiffs or they will confirm

9    that those we recommend are already on the list.

10         The State has already provided the Plaintiffs with

11   advanced copy of what we have been calling the FAQs that are to

12   be put on the State's web site.  We have, as the private

13   Plaintiffs and the government, provided responses to those and

14   we are working through those comments as we speak.

15         The State has also agreed to notify the Plaintiffs

16   when and if they make any further changes to the FAQs

17   pertaining to the terms of the Interim Revenue Order, as soon

18   as those changes arrive on the State's web site.

19         I hope you all agree -- I hope you believe, as we do,

20   that that is some progress.

21         **MS. COLMENERO:**  Your Honor, if I may clarify a couple

22   of those points, because the parties were meeting and

23   conferring literally minutes before.

24         **THE COURT:**  Okay.

25         **MS. COLMENERO:**  And I don't know Ms. Perez got out

1  last round of edits.  I do need to clarify a couple --

2         **THE COURT:**  And this is Ms. Colmenero, right,

3  speaking?

4         **MS. COLMENERO:**  Yes.

5         **THE COURT:**  Okay.

6         **MS. COLMENERO:**  So, just a couple of points.

7  Ms. Perez is correct that the State has agreed to provide the

8  Plaintiffs with an opportunity to review in advance certain

9  training manuals.  We just want to make clear which ones that

10  are included in that group, and we would specify that that

11  includes the qualifying voters on election day handbook, it

12  includes the inspector handbook, the poll watcher handbook, and

13  the online training module that relates to voter ID.  So that

14  is the clarification we want to make to the first agreement

15  that the parties made.

16         The other issue that we need to clarify is the last

17  point that Ms. Perez raised, which is whether the State will

18  agree to notify the Plaintiffs if we make any further changes

19  to the FAQs.  The State does not believe that it's obligated to

20  notify Plaintiffs when and if they make any further changes to

21  the FAQs that pertain to the terms of the Interim Remedy Order.

22         We have already provided them with an advanced copy

23  of the proposed changes to the FAQs and we have been -- and we

24  sent them our proposed revisions which accepted a significant

25  portion of the changes that they recommended.

1      **THE COURT:**  That's great.  But, I mean, are you going

2  to let the Court know if you're making changes?

3      **MS. COLMENERO:**  We intend -- our intent was to try to

4  go live with those changes at the end of today in order to

5  provide --

6      **THE COURT:**  But who are you going to let know if you

7  make changes?

8      **MS. COLMENERO:**  Well, once they go live today, we

9  don't intend to make any more changes to the --

10      **THE COURT:**  Okay.  But you "don't intend to," but if

11  you do, you're just not going to let anybody know, not the

12  Court or the Plaintiffs?  At least the Court?

13      **MS. COLMENERO:**  Well, your Honor, I -- I -- we -- I

14  don't think we -- we don't really intend there to be a

15  reporting -- an ongoing reporting requirement imposed on the

16  State, in terms of the educational efforts.  And our hope with

17  that, with this revision, with giving them and advanced notice

18  of our FAQs that will go up on the web site, that we would

19  alleviate any of these, you know, having --

20      **THE COURT:**  Are you saying you're not going to make

21  changes or you're saying, "We might make changes and we're not

22  going to tell you, Judge"?

23      **MS. COLMENERO:**  We're saying that now that we have

24  given Plaintiffs an advanced notice of the FAQs, and they're

25  getting -- and we've -- and we've kind of solidified what our

```
 1    final version is, we're not -- once they go live on the web

 2    site, we're not going to make any more changes to them.

 3              THE COURT:  Okay.  So you're confirming right now

 4    there will be no more changes?

 5              MS. COLMENERO:  To that particular document that will

 6    go out on the web site.

 7              THE COURT:  Okay.  And if you do, you're going to let

 8    the Court know, right?

 9              MS. COLMENERO:  Yes, your Honor.  If there is going

10    to be -- I presume there may be a tactical modification.  I

11    don't -- I don't know all the intricacies of what happens on

12    the Secretary of State's web site, but to the extent that there

13    is a substantive modification to any of the interpretations of

14    the photo ID. requirement that are part of the FAQs, we'll be

15    happy to let the Court know.

16              THE COURT:  Okay.  Any other clarifications of what

17    the Plaintiffs said?

18              MS. COLMENERO:  Just one other clarification.  With

19    respect to the different training manuals that we have agreed

20    to allow the Plaintiffs to have an advanced copy of those

21    revised portions that relate to the Court's Interim Remedy

22    Order, we just wanted to make clear that there are not Spanish

23    language translations of those particular documents.  And when

24    I'm -- I'm referring to the qualifying voters on election day

25    handbook, the inspector handbook, the poll watcher handbook, as
```

13

1   well as the online training modules.

2          **THE COURT:**  Okay.  Anything else, Ms. Perez, or is

3   that the extent of the agreement?

4          **MS. PEREZ:**  That is consistent with what we

5   understand, your Honor.  And, if I may, I could move into the

6   requests that we were making of the Court?

7          **THE COURT:**  Okay.  Let me just hear, is there anyone

8   else who wants to speak, then, on the agreements?  Anyone from

9   the Veasey Plaintiffs?

10          **MR. DUNN:**  No, your Honor, nothing to add.

11          **THE COURT:**  All right.  Taylor Plaintiffs?

12          **MS. VAN DALEN:**  No, your Honor.

13          **THE CLERK:**  If they could identify themselves?

14          **THE COURT:**  Oh, I'm sorry.  I guess I should get you

15   to identify yourself.  That was Mr. Dunn for the Veasey

16   Plaintiffs, and Ms. Van Dalen --

17          **MS. VAN DALEN:**  Van Dalen.

18          **THE COURT:**  -- on the Taylor Plaintiffs.  Association

19   of the Judges, Mr. Rios?

20          **MR. RIOS:**  Yes, your Honor, we are in support of the

21   agreement.

22          **THE COURT:**  Okay.  League of Young Voters,

23   Ms. Faransso?

24          **MS. FARANNSO:**  Yes, your Honor, we are in support of

25   the agreement.

1          **THE COURT:**  Okay.  Mr. Dellheim for the United

2   States?

3          **MR. DELLHEIM:**  Thank you, your Honor.  That is

4   consistent with our understanding.

5          **THE COURT:**  All right.  And then, nothing further

6   from the State, correct, Ms. Colmenero, on the agreement?

7          **MS. COLMENERO:**  That's correct.

8          **THE COURT:**  Okay.  Ms. Perez?

9          **MS. PEREZ:**  Yes, ma'am.  And so, at this point in

10  time, the State has represented on numerous occasions that any

11  continued discussion will delay the education and information

12  getting out to voters, which is what we are primarily concerned

13  with.

14          There have been some decisions that have been made

15  that cannot be undone.  For example, they've already engaged

16  and contracted vendors.  They've already imagined for

17  themselves a cap on how much they are willing to spend.  And in

18  light of those concerns, we were very mindful that we wanted to

19  limit the number of ads that we present to the Court today,

20  because our primary concern is making sure that the education

21  and the training as to the Interim Remedy get out there as soon

22  as possible.

23          So, if I may, we would ask that the Court provide

24  that disputes concerning implementation of the training and

25  education plan be submitted to the Court after the parties meet

1  and confer.  We would ask that the Court direct the State to

2  hold another training session for county election

3  administrators focusing on the terms of the Interim Remedy

4  Order.

5       We take no position as to whether or not it needs to

6  be live or online, but we would like for it to be mandatory if

7  the prior training that these administers in July was, in fact,

8  mandatory.  And if it was not mandatory, we're comfortable with

9  it being optional.

10      And then, finally, we'd ask the Court to direct the

11  State to provide Plaintiffs with the opportunity to review 24

12  hours in advance the text of any commercials or radio ads that

13  are to be broadcast, solely for the purposes of accuracy within

14  the Interim Remedy Order.

15      **THE COURT:**  All right.  Ms. Colmenero?

16      **MS. COLMENERO:**  Yes, your Honor.  I would like an

17  opportunity to respond to each of those three points.

18      **THE COURT:**  Yes.

19      **MS. COLMENERO:**  The first -- I'll start off with the

20  training session where the Plaintiffs are requesting about the

21  State hold another training session of the county election

22  administrators, focusing on the terms of the Interim Remedy

23  Order.

24      The State did hold a training.  That training

25  happened in July of 2016; and that training was an annual

1   training for all the county election officials.  I am told that

2   it is impossible for us to hold another training session, one,

3   because about 750 people come to that training session from all

4   across the state.  The location where the state always holds

5   the training session is booked three years in advance, and so

6   there is no location even to hold such a training.

7            THE COURT:  Okay.  So what are you going to do to

8   educate those or train those?

9            MS. COLMENERO:  We -- we are updating all of our

10   election manuals, which I described and identified for the

11   Court earlier.  And that is really the meat of what the

12   counties use to educate its election workers and its poll

13   workers.

14            And I do want to make clear that the State does not

15   have any enforcement authority over the county election

16   officials.  So, to the extent the Plaintiffs are suggesting

17   that the Court order the State to make it mandatory, we do

18   not --

19            THE COURT:  You know, the bottom line is, we're just

20   trying to be sure they know what they need to do.  So --

21            MS. COLMENERO:  And --

22            THE COURT:  -- I mean, I think the State needs to

23   just be sure that they are well informed as to what needs to be

24   done regarding this Interim Remedy.

25            MS. COLMENERO:  Yes, your Honor.  And we're updating

1    as quickly as possible all of the training manuals that I

2    identified earlier.  And those training manuals form the basis

3    for the counties, themselves, to conduct their own training

4    processes.

5              **THE COURT:**  So the county will be conducting

6    training, I guess, based on this new information?

7              **MS. COLMENERO:**  It's our understanding that certain

8    counties do, in fact, hold training sessions in the months

9    leading up before the election, after the State holds its

10   annual training conference in July.  But we don't have --

11             **THE COURT:**  So some counties do, some don't, or you

12   don't know?

13             **MS. COLMENERO:**  Exactly.  Exactly.  And there are

14   some counties that do and there are some counties that don't,

15   and we don't have information --

16             **THE COURT:**  Okay.  So how are we going to know that

17   they have reviewed -- you know.  Okay.  "Here's some

18   manuals" -- you provide the manuals; you're not going to hold

19   training.  How can we be assured they're going to know what

20   they need to do?

21             **MS. COLMENERO:**  So we are in regular contact with the

22   counties and their county election officials through our

23   elections department.  We have statutory obligations to answer

24   any question that's directed our way.  We intend to send out

25   blast e-mails with all the updates to the manuals.  There's

1   going to be an online training module that's going to be

2   prepared for poll workers.  And that training module is set to

3   go live on September the 19th.

4          So there is -- around September the 19th.  But it's a

5   multifaceted approach, in terms of how the State intends to

6   reach everyone to alert them of the new changes to the ID.

7   procedures and the implementation of the Reasonable Impediment

8   Declaration.

9          **THE COURT:**  And that goes to who, the election

10  administrators or who-all does that go to?

11         **MS. COLMENERO:**  There's -- it's -- it's my

12  understanding it's an e-mail Listserv of over 4,000 individuals

13  that includes all of the county election officials, including

14  county clerks and everyone who's involved in the process of

15  conducting the elections in the respective counties.

16         **THE COURT:**  Okay.  You can proceed.

17         **MS. PEREZ:**  Your Honor?

18         **THE COURT:**  Yes.

19         **MS. PEREZ:**  I just want to respond just briefly.

20         **THE COURT:**  And that's Ms. Perez.

21         **MS. PEREZ:**  Yes.  Yes, ma'am, I do apologize.  There

22  were 700 people, by their own admission, that heard information

23  that is out of date, irrelevant, and different than the way

24  that this election should be administered in November.

25         We are open to a number of options.  For example,

19

1   they are doing online training for poll watchers.  We're not

2   exactly sure why that couldn't be done for county election

3   administrators.  We do really want to work with the State, but

4   seeing that they have telephonic options, seeing that they have

5   online options, seeing that they could do regional meetings,

6   we're at this point concerned about the fact that 700 people

7   just, you know, in the last month got information that is no

8   longer accurate.  And there's not a specific targeted plan to

9   make sure that that information is corrected.  Rather, there is

10  a whole bunch of different kinds of information that they hope

11  will lead to the same group of people getting trained in the

12  right way.

13          THE COURT:  Well, Ms. Colmenero, when you mentioned

14  this last e-mail that's going to be sent out to everyone, what

15  is that?  What is that going to involve?

16          MS. COLMENERO:  There was a -- well, let me start off

17  by saying, we sent our last e-mail immediately after the Court

18  issued the Interim Remedy Order to all of our election official

19  contacts across the state to let them know that, in fact, the

20  Court had issued an Interim Remedy Order; and that we would, in

21  fact, be updating all of our manuals; and that we would, in

22  fact, be sending those out as soon as they were fully revised.

23          So, it is that same process.  And utilizing that same

24  process, we are then going to send them the updated handbook

25  that I described earlier.  And then, I want to make clear that

1    the online training module is a module that's geared toward

2    poll workers, not necessarily poll watchers, as Ms. Perez may

3    have indicated.  And that is also going to be advertised, if

4    you will, over this blast e-mail that will go out once again to

5    all of the election officials.

6           And I just also want to reiterate, to the extent that

7    there's still -- it's still on the table, our proposal that the

8    state conduct some type of additional in-person training.  The

9    counties, themselves, are the ones who assigned the travel, as

10   well as the registration fee, to that specific event.  That --

11   the only cost really that the State bears is the cost of,

12   perhaps, putting it on, but the counties actually bear

13   significant costs, themselves, to get their own workers to

14   those events.

15          So we're trying to do it in the most efficient and

16   cost-effective manner possible, and get the word out as quickly

17   as we can.  And we believe using these blast e-mails that we

18   routinely use to educate all of the education workers about

19   changes in different types of procedures is the most effective

20   way.

21          **THE COURT:**  All right.  Anyone else on that point?

22          **MR. DUNN:**  Your Honor, this is Chad Dunn.  I guess

23   all I would add on that point, is, at the minimum, it possible

24   for the State to require sign-ins to the Webinar so we have

25   some meaningful record later as to who actually --

1        **THE COURT:**  Hold on.  Hold on.  Hold on, because

2   you're coming in garbled.

3        **THE CLERK:**  Would you mind just maybe slowing down a

4   little bit, please?

5        **MR. DUNN:**  Sure.  I guess all I was suggesting is

6   that the State require a sign in or a tracking process for

7   those who actually attend or use the Webinar for training, so

8   that we have some record of how successful it was and who

9   actually, you know, got the additional information.

10        **THE COURT:**  But the State, Ms. Colmenero, you-all

11   aren't actually doing any Webinars?  You're saying the county's

12   taking care of that training?

13        **MS. COLMENERO:**  So the only Webinar-type --

14        **THE COURT:**  Is the poll workers?

15        **MS. COLMENERO:**  -- is the poll worker training

16   Webinar.  The other election worker training will come through

17   the manuals, which will be delivered immediately to the

18   counties through a blast e-mail.

19        **THE COURT:**  So, then, I guess for the Webinar for the

20   poll workers is there like a list of people who are

21   participating or how -- I guess that's what Mr. Dunn is asking,

22   how do we know who's participated or --

23        **MS. COLMENERO:**  Yes, your Honor.  And I -- I will say

24   this with a caveat, the State literally signed the contract

25   with our vendor two days ago.  And so, we -- we are -- I don't

1    know if that feature is even a possibility at this point in

2    time.  And it falls within the ceiling of our contract.  I -- I

3    think we might have that feature, but I can't say for sure

4    right now --

5              **THE COURT:**  You're going to check on it?

6              **MS. COLMENERO:**  I will -- I will check on it.

7              **THE COURT:**  Okay.  Any --

8              **MS. COLMENERO:**  We will add that to our submission

9    that we filed with the Court on August 15th.

10             **THE COURT:**  Okay.  Anything else regarding the

11   training, the request by the Plaintiffs for the State of Texas

12   to hold another training session for the county election

13   administrators?  Anything else on that?

14             **MS. COLMENERO:**  Not from the State, your Honor.

15             **THE COURT:**  I mean, I'm not going to require, based

16   on what's before the Court, for the State to hold another

17   training session.  I think we've kind of cleared some things up

18   as to what the State is doing, whether it's the e-mails,

19   whether it's the online training for the poll workers.  And I'm

20   not going to order specific -- another training session, I

21   guess, as was done back in July.  It doesn't sound feasible,

22   unless I'm missing something.

23             Is there anything else on that issue?

24             **MS. COLMENERO:**  No, your Honor.

25             **THE COURT:**  Okay.  Then, another part, I guess,

1   Ms. Colmenero, if you want to address the other issues that

2   Plaintiffs wanted, I guess, the defense to -- well, Plaintiff

3   was asking that any disputes be submitted to the Court after

4   you-all confer.  But, let me see.  There was another issue, I

5   believe --

6            **MS. COLMENERO:**  It was the --

7            **THE COURT:**  -- that the Plaintiffs have 24 hours

8   regarding the text of any commercials.  Did you want to address

9   that?

10           **MS. COLMENERO:**  Yes.

11           **MR. DELLHEIM:**  Your Honor, this is Richard Dellheim

12  for the Department of Justice, United States.  Forgive me for

13  interrupting.  I just wanted to make clear that that app. is

14  not -- is not being made by the United States.

15           **THE COURT:**  Okay.

16           **MR. DELLHEIM:**  Thank you, your Honor.

17           **THE COURT:**  Thank you.  Ms. Perez?

18           **MS. COLMENERO:**  Your Honor?

19           **THE COURT:**  Oh, I'm sorry.  Ms. Colmenero?

20           **MS. COLMENERO:**  Yes.  Thank you.  So, your Honor,

21  yes, the State does object to providing Plaintiffs with the

22  opportunity to review in advance the text of commercials to be

23  broadcast on television, radio, digital, or transit.  And we do

24  so for a couple of reasons.  One, we have entered into a

25  contract with the vendor; and that contract, obviously, and the

1    concepts that our vendor has come up with, are in many ways

2    proprietary to the State.  We paid a lot of money for those

3    creative concepts.

4            And within -- after the Court issued its Interim

5    Remedy Order two days ago, the initial concepts that we have

6    are fluid.  They need to be revised.  And we're in the process

7    of reviewing those.

8            But, second, we -- it's very difficult for us to

9    provide the text of commercials, television, or radio, because

10   the State does need to retain the flexibility to execute the --

11   those concepts when we're in production.  And when we're in

12   production filming those particular media spots, we are -- we

13   may have to make changes if, obviously, the director decides

14   that something's not working.  So -- or it cannot fit within

15   the specified media buy time period that the State has

16   negotiated.

17           So there are a lot of concerns on our end, and we

18   don't want this to become an inefficient process.  And the goal

19   of this mass media campaign that the State is on, where we're

20   doing a reach-over TV., radio, digital, and transit

21   advertisements is really to get the message out about the

22   voting ID. requirements, as well as just educating people about

23   how it is actually simple to vote.

24           **THE COURT:**  Right.  And, I mean, the bottom line is

25   just that there's concern that no misinformation or confusing

1    information be sent -- be sent out.

2            **MS. COLMENERO:**  And that's not our intention.  All --

3            **THE COURT:**  And whether it's your -- not that it's

4    your intention necessarily, but, you know, sometimes that

5    happens.

6            **MS. COLMENERO:**  And, but the State objects really to

7    -- in giving the Plaintiffs, sort of, really advance copies of

8    the commercials that are going to be aired to the general

9    public, as well as radio messages that are also going to be

10   aired as well.  We just don't think that this is -- it's

11   different from them providing any type of just general input,

12   in terms of maybe creative concepts they would like to propose,

13   which they haven't necessarily provided those to us, but mainly

14   them injecting themselves into the process.  And we think that

15   the execution of it is best left up to the State.

16           **THE COURT:**  Okay.  Anything else on that issue?

17           **MS. PEREZ:**  Your Honor, may I respond?

18           **THE COURT:**  Yes.  This is Ms. Perez?

19           **MS. PEREZ:**  Yes, ma'am.  I want to be very clear that

20   the Plaintiffs are not interested in injecting themselves into

21   this education process.  It is the State's obligation to use

22   the education and training to remedy the discriminatory effect

23   of SB14.

24           Our concern is that there is misinformation out there

25   and inaccurate views about what the state of the law is.  And

1   once a television ad or radio had as been aired, it cannot be

2   unaired.  People that have heard it are going to absorb it, and

3   whatever information they have that is inaccurate or is

4   misleading is something that they're going to carry with them

5   when they go into the polls or do something -- not show up.

6           We certainly do not want this process to be

7   inefficient.  Again, we are limiting our ads precisely because

8   we would like to move on and have the education and training

9   happen.

10          Would -- perhaps the State would be willing to submit

11  the text to the Court to ensure that it has the appropriate

12  level of accuracy and it's going to do the job that it's

13  supposed to do, which is adequately inform people about the

14  changes and the Interim Remedy.

15          **THE COURT:**  It sounds like, though, from what

16  Ms. Colmenero said these are, kind of, changing as they're

17  going along and as they're being created and produced, I guess,

18  which appears to be what the problem is.

19          Ms. Colmenero, do you want to expand on that?

20          **MS. COLMENERO:**  That is exactly correct, your Honor.

21  When we get into the production process, we have to retain

22  flexibility to make modifications to the text, if necessary.

23  And we really just don't want to find ourselves in a position

24  where we had to make a change because a director of a

25  commercial said that a certain scene shot wouldn't work, and

1    the Plaintiffs raise this as an issue that wasn't run by them.

2    And that is -- that's part of why this is just a very difficult

3    ads on our end.

4           And second, because the creative concepts that were

5    initially provided to the State from our vendor, they haven't

6    been updated in the 48 hours since this Court has issued its

7    Interim Remedy Order.  And we're working as fast and furious as

8    we can to purchase media spots in the -- across the state so we

9    can start airing these, but also, to kind of get these to

10   production as quickly as we can.

11          **THE COURT:**  Anything else on that issue?

12          **MR. DELLHEIM:**  Your Honor, this is Richard Dellheim

13   for the United States.  And speaking only for the United

14   States, at the end of the day we think it's the State's

15   responsibility, of course, to ensure compliance with -- with

16   Section 2 and completely remedy the discriminatory effects of

17   SB14.

18          And while we, of course, think it would be helpful

19   for the State to agree to share more fully its remedial plans

20   with us to avoid problems down the road, to the extent it

21   declines to do that with respect to the text that it's

22   advertising, we are not -- we are prepared at this time not to

23   seek relief from the Court.

24          I guess it's our preferred route to defer to the

25   State in this instance and wait and see what it does.  And we

1    would, of course, reserve the right to address any substantial

2    shortcomings at an appropriate time, first, of course, with the

3    State, and then only if necessary, with the Court.

4            **THE COURT:**  All right.  Then the Court's going to

5    deny that request from the Plaintiffs regarding the text of the

6    commercials.

7            What else to address?

8            **MS. COLMENERO:**  I think there was one final request

9    from the Plaintiffs, and that was regarding the introduction of

10   a -- I'll call it a "dispute resolution process" to resolve

11   issues in the future.

12           I think that the Court's prior order, obviously, puts

13   a burden on the State to create an implementation plan, provide

14   it to the Court on August the 15th, as well as move forward and

15   execute one.  And that's what we're working as quickly as we

16   can on our end to accomplish.

17           And so, we believe that the Plaintiffs have

18   traditional remedies that are already available to them and

19   there does not need to be a formalization of a dispute

20   resolution process to move forward or put forth in any kind of

21   separate order.

22           **MS. PEREZ:**  May I qualify, your Honor?  This is

23   Ms. Perez.

24           **THE COURT:**  Yes.

25           **MS. PEREZ:**  We are in this position where we're

1  seeking this request from the Court precisely because we could

2  not reach an agreement on a dispute resolution process.  So all

3  that we would ask would be that the -- that the Court provide

4  that disputes concerning the implementation of the training and

5  education may be submitted to the Court after the parties meet

6  and confer.  It's just additional language for us, again,

7  preserving the rights that we have retained to come to the

8  Court, should we have concerns.

9       **THE COURT:**  I mean, I just assumed you would let the

10  Court know if there's issues.  So what am I missing?

11       **MS. PEREZ:**  That is very satisfactory to us.  Thank

12  you so much, your Honor.

13       **THE COURT:**  That doesn't need to be part of any

14  order, though.  Is there -- Ms. Colmenero?

15       **MS. COLMENERO:**  We agree with that position, your

16  Honor.

17       **THE COURT:**  Okay.  So then, are you-all going to

18  submit your agreement?  Do I need to then turn that into an

19  order?

20       **MS. COLMENERO:**  Well, your Honor, if I -- this is

21  Angela Colmenero.  The State is prepared to submit its plan to

22  the Court as your order on August 10th required us to on

23  Monday.  And so, within that -- that -- the filing that we will

24  be making, we will expressly set out, kind of, the education,

25  as well as the training plan, and identify --

30

1          **THE COURT:**  Okay.  And the agreements reached.

2          **MS. COLMENERO:**  And we can identify in there the

3    agreements that the parties have reached, in terms of the

4    sharing of certain documents for the Plaintiffs.

5          **THE COURT:**  Okay.  Anything else, Ms. Perez?

6          **MS. PEREZ:**  No, ma'am.  Thank you.

7          **THE COURT:**  Mr. Dunn?

8          **MR. DUNN:**  No, your Honor.

9          **THE COURT:**  Ms. Van Dalen?

10          **MS. VAN DALEN:**  No, ma'am.  Thank you, your Honor.

11          **THE COURT:**  Mr. Rios?

12          **MR. RIOS:**  No, ma'am.  Thank you, your Honor.

13          **THE COURT:**  Ms. Faransso?

14          **MS. FARANSSO:**  No, ma'am.  Thank you.

15          **THE COURT:**  Mr. Dellheim?

16          **MR. DELLHEIM:**  No, your Honor.  Thank you very much.

17          **THE COURT:**  Ms. Colmenero?

18          **MS. COLMENERO:**  No, your Honor.  Thank you very much.

19          **THE COURT:**  Okay.  So then, by the 15th a detailed

20    plan will be submitted and, then, if there's anything else for

21    the Court to address as we go along, any matters that need to

22    be brought to the Court's attention, it will.  But, otherwise,

23    if everything goes as planned and as we've discussed, there

24    will be nothing else to address, at least for the Interim

25    Remedy.  Is that correct?

31

1          **MS. PEREZ:**  That's our hope, your Honor.

2          **THE COURT:**  Okay.  And then, at some point, we need

3     to figure out a plan for what we're going to do with the rest

4     of the case.  So, maybe next week after -- because I'm sure the

5     State is in the middle of trying to finish up what they need to

6     do, and then maybe by late next week the parties confer and

7     discuss a plan of how we're going to proceed with the remaining

8     issues?

9          **MR. ROSENBERG:**  Yes, your Honor.  This is Ezra

10    Rosenberg.  And, in fact, Mr. Frederick and I have begun

11    discussions along those lines.  And I think if we can report by

12    the end of next week would be great.

13         **THE COURT:**  Okay.  If nothing else, I'm going to

14    excuse you.  Thank you very much for the time and attention

15    you've put in, all the work you've done.  And you-all have a

16    good weekend.

17         **(Counsel thank the Court)**

18         **(Proceedings adjourned at 3:05 p.m.)**

19

20

21

22

23

24

25

32

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>September 12, 2016</u>

          Signed                                                    Dated


*TONI HUDSON, TRANSCRIBER*