UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *et al.*,               §
                                     §
                  Plaintiffs,        §
v.                                   §       CIVIL ACTION NO. 2:13-CV-00193
                                     §
GREG ABBOTT, *et al.*,               §
                                     §
                  Defendants.        §

### STATE DEFENDANTS' RESPONSE TO THE UNITED STATES' MOTION TO ENFORCE INTERIM REMEDIAL ORDER AND PRIVATE PLAINTIFFS' MOTION FOR FURTHER RELIEF

Since the Court issued the Interim Remedial Order on August 10, the State Defendants have been moving forward with a comprehensive voter education campaign and training program for election officials and poll workers. The Secretary of State's office has spent countless hours over the last month updating content on its homepage and the VoteTexas.gov website, designing online training modules for poll workers, revising handbooks and guidance used by election officials, recording television and radio commercials, creating digital and other advertisements, sending the Secretary of State on a statewide tour to speak with various Texans, and designing a far-reaching social media campaign to properly educate voters and election officials regarding the voting procedures set forth in the Interim Remedial Order.

With less than 60 days left before the November 2016 general election, the motion to enforce filed by the United States and joined by the Private Plaintiffs seeks to bring the State's election machinery to a halt over the alleged omission of a single

1

word in its voter education and election official training materials. The Private Plaintiffs' separate motion argues, based on media reports of alleged statements by state and local officials, that the Court should expand the interim remedy to allow certain voters who have an SB 14 ID to execute a Reasonable Impediment Declaration. But the State's election materials and the quotations reported by the media are entirely consistent with the Court's remedial order, and granting the requested relief would only sow confusion at a critical time. The motions should be denied accordingly.

The United States' motion complains that the State Defendants did not insert the word "reasonably" where the United States believes it should go. The State's voter education and training materials explain that a voter may be eligible to cast a regular ballot using a Reasonable Impediment Declaration if the voter "cannot obtain" or is "unable to obtain" an acceptable form of photo ID and has a reasonable impediment or difficulty to obtaining such ID. While the United States relies on selected statements in its motion to suggest that the State Defendants' interpretation of the Interim Remedial Order requires a voter to have a "metaphysical impossibility" to obtaining an ID before the voter can cast a regular ballot, this argument ignores the actual language in the State's guidance. Indeed, a number of the State's training materials for election officials provide:

> *If the voter cannot obtain, and has a reasonable impediment or difficulty to obtaining one of the above acceptable forms of photo identification,* the voter may also enclose a copy of one of the supporting forms of identification listed below that establishes the voter's identity along with a signed statement of reasonable impediment or difficulty.

Exhibit A, Early Voting Ballot Board Handbook, at 8 (emphasis added); *see also*
Exhibit B, Election Inspector's Handbook, at 8 ("Here is a list of the supporting forms
of ID that can be presented *if the voter cannot obtain, and has a reasonable
impediment or difficulty to obtaining one of the forms of acceptable photo ID . . . .*")
(emphasis added); Exhibit C, Poll Watcher's Guide, at 3 ("Here is a list of the
supporting forms of ID that can be presented *if the voter cannot obtain, and has a
reasonable impediment or difficulty to obtaining one of the forms of acceptable photo
ID . . .*") (emphasis added); Exhibit D, Qualifying Voters on Election Day, Handbook
for Election Judges and Clerks (Updated September 2016), at 13 ("*If the voter states
that they have not obtained an acceptable form of photo ID, the poll worker should ask
the voter if they have a reasonable impediment or difficulty to obtaining an acceptable
form of photo ID.* If the voter has a reasonable impediment or difficulty to obtaining
an acceptable form of photo ID, the voter may show a supporting form of ID and
execute a Reasonable Impediment Declaration.") (emphasis added).[1]

---

[1] Additionally, the glossary of election terms for use by election officials (and available on the
Secretary of State's homepage) defines the following terms, in relevant part, as follows:

**Photo ID:** To be presented when voting in person if the voter *has obtained* one (unless
the voter qualifies for a temporary exemption because the voter cannot access their
photo ID due to certain natural disasters). Acceptable forms of photo ID include a
Texas DPS-issued driver's license, a Texas DPS-issued personal identification card, a
U.S. Passport book or card, a Texas DPS-issued license to carry a handgun, a U.S.
military ID with photo, or a U.S. Citizenship Certificate or Certificate of
Naturalization with photo. With the exception of the U.S. citizenship documents, the
ID must be unexpired or expired less than 4 years.

**Supporting form of ID:** To be presented when executing a Reasonable Impediment
Declaration if the voter *has not obtained an acceptable form of photo ID and the voter has a
reasonable impediment or difficulty to obtaining an acceptable form of photo ID.* Acceptable
supporting forms of ID include a valid voter registration certificate, a certified birth certificate
(must be an original), a copy of or original current utility bill, a copy of or original bank
statement, a copy of or original government check, a copy of or original paycheck, or a copy of

Similarly, the State's guidance posted on the VoteTexas.gov website instructs:

*Voters who have not been able to obtain one of the forms of acceptable photo identification listed below, and have a reasonable impediment or difficulty to obtaining such identification*, may present a supporting form of identification and execute a Reasonable Impediment Declaration, noting the voter's reasonable impediment to obtaining an acceptable form of photo identification . . . .

*See* <u>Exhibit E</u>, Register to Vote: Need ID? Procedures for Voting, available at

http://www.votetexas.gov/register-to-vote/need-id/ (emphasis added). The State

Defendants chose this language—and allowed Plaintiffs an opportunity to comment

on it before the Secretary of State's interpretation of the new voting procedures was

made public—to provide clear instructions to voters and election officials that there

are two prerequisites to demonstrating eligibility to vote using a Reasonable

Impediment Declaration. Not having obtained a form of SB 14 ID is one of the

prerequisites and the existence of a reasonable impediment to obtaining such ID is

the other requirement. Any guidance issued by the State Defendants about these

prerequisites must incorporate both requirements to accurately educate voters and

election officials, and the State Defendants believe their language achieves that goal.[2]

---

or original government document with the voter's name and an address (original required if it contains a photograph).

Glossary of Election Terms, available at http://www.sos.state.tx.us/elections/laws/glossary.shtml (emphasis added).

[2] *See also* http://www.votetexas.gov/voting/who ("If you have not been able to obtain one of the <u>seven (7) acceptable forms of photo identification</u> because you have a reasonable impediment or difficulty to obtaining one of these forms, show a <u>supporting form of identification</u> to the election official and execute a Reasonable Impediment Declaration.") (emphasis in original); http://www.votetexas.gov/faq/ ("The provisional voting process involves an affidavit that (1) the voter must complete stating the reasons he or she is qualified to vote; and (2) is used if the voter's registration cannot be verified by the polling place election officials OR does not present one of the seven (7) acceptable forms of photo ID OR does not have a reasonable impediment or difficulty to obtaining one of the seven (7) acceptable forms of photo ID. A voter does not have a reasonable impediment or difficulty if either (1) there is no reasonable impediment or difficulty preventing the

The United States and Private Plaintiffs remain fixated on one portion of language that appeared in a press release first issued by the Secretary of State on August 10 (which is no longer on the website), and in a supplemental press release issued on August 17.[3]  While the headline of the August 17 press release provides that "[v]oters who cannot obtain one of the seven forms of approved photo ID have additional options at the polls," the language in the press release makes clear that a voter who has not been able to obtain one of the seven forms of approved ID can provide a reason why at the polls and cast a regular ballot. *See* Press Release, http://www.sos.state.tx.us/about/newsreleases/2016/081916.shtml ("As provided by court order, *if a voter is not able to obtain one of the seven forms of approved photo ID, the voter may vote by (1) signing a declaration at the polls explaining why the voter is unable to obtain one of the seven forms of approved photo ID, and (2) providing one of various forms of supporting documentation*.") (emphasis added). This message is entirely consistent with the Interim Remedial Order.

The United States and Private Plaintiffs' motion to enforce is founded on an unreasonable reading of the State Defendants' already-issued guidance and does nothing to advance voter education in Texas. Instead, it seeks to divert finite resources away from prospectively educating voters and training election officials by demanding modifications to language that is neither incorrect nor misleading, and

---

voter from obtaining one of the acceptable forms of photo ID, regardless of whether the voter presents one of the forms of supporting identification to the polling place, or (2) there is such a reasonable impediment or difficulty, but the voter fails to present one of the forms of supporting identification at the polling place.").

[3] The heading of the press release also appears in a scrolling banner on the VoteTexas.gov homepage.  *See* http://www.votetexas.gov/.

which will only result in confusion to voters. For these reasons, the State Defendants respectfully request that the Court deny the motions to enforce.

### A. The State Defendants' Language Provides Accurate Guidance Regarding The Use Of The Reasonable Impediment Declaration.

The State Defendants chose to use the "cannot obtain" or "unable to obtain" language in the guidance because it is consistent with the language used in the Interim Remedial Order. *See, e.g.,* Interim Remedial Order (ECF No. 895) at 2 ("The reasonableness of a voter's impediment to obtain SB 14 ID shall not be questioned by election officials."), 3 ("Defendants shall continue to educate voters in subsequent elections concerning both voter identification requirements <u>and</u> the opportunity for voters who do not possess SB 14 ID and cannot reasonably obtain it to cast a regular ballot."). The Reasonable Impediment Declaration makes clear that a person must affirm that he faces "a reasonable impediment or difficulty that prevents [him] from getting an acceptable form of photo identification." *See id.*

There is nothing substantively different between the language the State Defendants have used in the guidance and that which the United States now proposes.

- <u>State Defendants' Language</u>: If a voter cannot obtain an acceptable form of photo ID, and the voter has a reasonable impediment or difficulty to obtaining such ID, the voter may still cast a regular ballot by presenting a supporting form of ID and executing a Reasonable Impediment Declaration.

- <u>United States' Proposed Language</u>: If a voter does not possess and cannot reasonably obtain an acceptable form of photo ID, and the voter has a reasonable impediment or difficulty to obtaining such ID, the voter may still cast a regular ballot by presenting a supporting form of ID and executing a Reasonable Impediment Declaration.

The purpose of the Interim Remedial Order is to accommodate voters who are unable to obtain a form of SB 14-compliant ID due to a legitimate impediment, such as a financial barrier to obtaining an acceptable photo ID. The State's guidance achieves that goal by accurately explaining the procedures and eligibility for executing a Reasonable Impediment Declaration. That the wording of the guidance differs slightly from the exact language in some parts of the Court's order does not mean that the State Defendants are failing to comply with the order. Nothing in the motion to enforce demonstrates otherwise.

The United States and Private Plaintiffs contend that using "unable to obtain" or "cannot obtain" restricts the class of individuals who can utilize the Reasonable Impediment Declaration. But they only reach this conclusion by taking the most unnatural reading of the State's guidance, and by reading the phrases "cannot obtain" or "unable to obtain" in a vacuum. For instance, the United States focuses on the first part of the "Register to Vote: Need ID? Procedures for Voting" page, where the State explains that "[v]oters who have not be been able to obtain one of the forms of acceptable photo identification listed below" can utilize the reasonable impediment declaration, but their concerns are addressed in the second part of the sentence (underlined below), which means exactly what they want it to say:

> Voters who have not been able to obtain one of the forms of acceptable photo identification listed below and have a reasonable impediment or difficulty to obtaining such identification, <u>may present a supporting form of identification and execute a Reasonable Impediment Declaration, noting the voter's reasonable impediment to obtaining an acceptable form of photo identification, and stating that the voter is the same person on the presented supporting form of identification</u>.

*See* Exhibit E, Register to Vote: Need ID? Procedures for Voting, available at http://www.votetexas.gov/register-to-vote/need-id/ (emphasis added).

The United States and Private Plaintiffs consistently ignore that the State Defendants reference reasonableness throughout the guidance to voters and election officials. The Qualifying Voters Handbook, which has been distributed to election officials, explains that there are two questions asked to every voter: (1) "have you obtained an acceptable photo ID" and (2) if the voter says no, "do you have a *reasonable* impediment or difficulty to obtaining one." *See* Exhibit D, Qualifying Voters Handbook, at 22 (emphasis added); *see also* Exhibit F, Providing Identification for Voting in Texas PowerPoint, at 2-12, available at http://www.sos.texas.gov/elections/forms/id/acceptable-forms-of-ID.pdf.

The United States and Private Plaintiffs express concern that individuals who have lost their ID or had it stolen may think they do not fall into the "cannot obtain" category and then assume they cannot cast a regular ballot using a Reasonable Impediment Declaration. First, as noted above, voters who have lost their ID or had it stolen may in fact qualify as being "unable to obtain" an ID, but those voters still must have a reasonable impediment or difficulty to obtaining a replacement ID. Numerous references in the State Defendants' guidance to "unable to obtain" follow with instructions to, or a reference to, completing the declaration and/or having a reasonable impediment or difficulty, which reflects all of the qualifications required to complete the Reasonable Impediment Declaration. The Qualifying Voters Handbook specifically states that "a voter with a lost, stolen, suspended, or expired

more than four years, form of photo ID listed above could be considered to have not obtained one of the acceptable forms of photo ID for purposes of being eligible to execute a Reasonable Impediment Declaration." *See* Exhibit D, Qualifying Voters Handbook, at 22; *see also* Exhibit G, Election Advisory No. 2016-17, dated Aug. 26, 2016, available at http://www.sos.texas.gov/elections/laws/advisory2016-17.shtml (explaining a voter with a lost or stolen form of photo ID could be considered to have not obtained one of the acceptable forms of photo ID for purposes of being eligible to execute a Reasonable Impediment Declaration). As is made clear in the handbook, the next question to the voter would be "do you have a reasonable impediment or difficulty to obtaining an acceptable form of photo ID?" The "Register to Vote: Need ID? Procedures for Voting" section on the VoteTexas.gov website also includes a reference to "lost or stolen ID." *See* Exhibit D, Qualifying Voters Handbook at 22.  The instructions the State Defendants have used in the guidance are intended to be easy for voters and election officials—most of whom are not election lawyers—to understand. Significantly, a community newspaper directed to Houston's African-American community has publicly described the State's guidance as being helpful to voters who are confused on the photo ID requirements. *See* Exhibit Q, Twitter Communication from Defender Network, dated Sept. 10, 2016. Adding the word "reasonably" into the current guidance would unnecessarily complicate the message regarding the Reasonable Impediment Declaration because that term invites ambiguity and questions regarding its meaning.

The State Defendants object to the suggestion that any guidance disseminated to voters and election officials must contain a reference to "do not possess." At no time has the Court or any of the parties intended the Reasonable Impediment Declaration to be a convenience document, and the State Defendants have refrained from using language to suggest that is true in any of its voter education materials. Indeed, suggesting that voters who "do not have" or "do not possess" a form of SB 14 ID can execute a Reasonable Impediment Declaration may cause confusion—as evidenced by a reasonable impediment declaration executed in Denton County in a tax ratification election held on August 27, 2016. *See* <u>Exhibit H</u>, Executed Reasonable Impediment Declaration (redacted declaration executed by individual who states the reasonable impediment is that "[she] forgot her wallet").[4] The State Defendants believe that their current language provides accurate information to voters and election officials about the purpose of the Reasonable Impediment Declaration and the proper documents a voter needs to bring to the polls in order to vote.

Finally, by using the "cannot obtain" or "unable to obtain" language in its guidance, the State Defendants in the instant dispute are not attempting to resurrect an argument the Fifth Circuit rejected. The State Defendants argued on appeal that SB 14 did not violate Section 2 because the Plaintiffs failed to identify individuals who faced a substantial obstacle to voting because of the voter identification requirement, but this argument is completely unrelated to the instant dispute

---

[4] While this document might otherwise be subject to release if a request for information under Chapter 552 of the Texas Government Code, the identity of the particular voter is not relevant for purposes of this response, and, accordingly, the voter's name has been redacted from the declaration.

between the parties. The Interim Remedial Order provides a means for individuals who arrive at the polls to cast a regular ballot if they can demonstrate a reasonable impediment or difficulty to obtaining SB 14-compliant ID. Individuals who have an acceptable form of ID but left it at home—or who choose not to show it, even if they have one—are not the intended beneficiaries of the Court's order.

### B. Requiring The State Defendants To Make Unnecessary Modifications To The Guidance Will Result In Less Effective Voter Education And Will Lead To Voter Confusion.

As part of the meet and confer process, the State agreed to provide the United States and Private Plaintiffs with a 24-hour advance preview of certain updates to the VoteTexas.Gov website and election official training materials.  On August 11, the State Defendants sent the United States and Private Plaintiffs a draft of the updated Register to Vote: Need ID? Voting Procedures webpage. Exhibit I, Email from A. Colmenero to E. Rosenberg, dated Aug. 11, 2016. The State Defendants informed the Plaintiffs that they were providing this particular document to them prior to it being made public because the revised language contained therein would form the baseline for all future updates to the websites, training handbooks, and media materials used throughout the State's voter education campaign. The language that the United States and Private Plaintiffs now complain about was sent to them on August 11, and they were provided with an opportunity to propose changes by August 12 when the revisions were scheduled to go live on the VoteTexas.gov website. The State Defendants did not receive any revisions from the United States, and the revisions proposed by the Private Plaintiffs did not identify the "cannot obtain"

11

language as problematic.[5] Instead, the changes proposed by the Private Plaintiffs incorporated the very language they now complain about. *See* <u>Exhibit J</u>, Email from J. Clark to A. Colmenero, dated Aug. 12, 2016 (*see* attachment labeled as <u>Exhibit J-1</u>). While the Private Plaintiffs did object to specific language in a press release issued by the Secretary of State, they never raised an objection to the State's inclusion of the same language in the webpage content. *<u>See id</u>*. The State Defendants immediately informed Private Plaintiffs that they were not inclined to make changes to the press release given that the content was consistent with the Interim Remedial Order. <u>Exhibit K</u>, Email from A. Colmenero to J. Clark, dated Aug. 12, 2016.

It was not until several days after the Register to Vote: Need ID? Voting Procedures webpage was updated and after the State Defendants had moved forward with updating other education materials that the Private Plaintiffs—and not the United States—first raised concerns about the use of "cannot obtain" on the website. <u>Exhibit L</u>, Email from L. Aden to A. Colmenero, dated Aug. 17, 2016. The State Defendants promptly informed the Private Plaintiffs that the State disagreed with their position because a reference to not "having" an acceptable ID could suggest, incorrectly, that a voter would be eligible for the Reasonable Impediment Declaration if they had obtained an acceptable ID but did not have it in their physical possession at the time of voting. <u>Exhibit M</u>, Email from A. Colmenero to L. Aden, dated Aug. 19,

---

[5] The "cannot obtain" language to which the United States and Private Plaintiffs now object only appears in two places on the Register to Vote: Need ID? Voting Procedures webpage. *See, e.g.,* <u>Exhibit E</u> (language highlighted in yellow). Other than the headline of the press release, the "cannot obtain" language never appears without an explanatory phrase stating that if a voter "cannot obtain" an ID "and has a reasonable impediment or difficulty to obtaining one of the forms of acceptable photo ID," the voter may be eligible to execute a Reasonable Impediment Declaration. *See id*.

2016. It was not until August 29 that the United States expressed concerns about the language in the guidance and suggested that the State Defendants consider using different language than what had been proposed by the Private Plaintiffs. Exhibit R, Email from D. Freeman to A. Colmenero, dated Aug. 29, 2016; Exhibit N, Email from D. Freeman to A. Colmenero, dated Aug. 30, 2016. Specifically, the United States proposed that the State Defendants should remove all references to "cannot obtain" in the guidance and replace it with "do not possess and cannot reasonably obtain an approved photo ID." *See* Exhibit N, Email from D. Freeman to A. Colmenero, dated Aug. 30, 2016.

While the parties debated whether the language in the guidance was consistent with the Interim Remedial Order, the State Defendants continued to move forward with the voter education campaign in order to stay on schedule. As of today, the Secretary of State has revised the written training materials and distributed those materials to election officials and poll workers in the State's 254 counties—a communication sent to over 4,800 recipients. Exhibit O, Email from K. Ingram to County Election Officials, dated Sept. 2, 2016. Counties have reviewed these training materials and have started creating their own guidance, relying on the very language the United States and Private Plaintiffs argue should be changed. *See* Exhibit P, Galveston County Voter ID Procedures. Polling location posters, which also contain the "unable to obtain" phrase, have been distributed to the counties and are currently displayed at various polling locations.[6] The Elections Division has issued advisories

---

[6] The State Defendants also provided Plaintiffs with an advance preview of the Voter ID informational poster, which is statutorily required to be displayed at polling locations. *See* Voter ID

to the counties regarding the new procedures set forth in the Interim Remedial Order and has disseminated a detailed PowerPoint presentation explaining when a voter is eligible to execute a Reasonable Impediment Declaration.[7] Similarly, forms for use in ongoing elections have been posted to the Secretary of State's main webpage and have been distributed to over 4,800 election officials.[8] The Secretary of State has published the digital toolkits to its website and has started distributing the toolkits to community organizations and elected officials. To date, the toolkits have been distributed to over 40 community organizations across the State, sent to approximately 1,000 elected officials, and have been viewed over 100 times from the Secretary of State's website.

The Secretary of State's media efforts are similarly well underway. The State has completed recording and filming the television and radio commercials in English and Spanish, and while the commercials are in the post-production phase, media spots have been purchased and the content cannot be changed without significant expense and further depletion of the finite voter education funds available for use. The Secretary of State has purchased advertisement space in community newspapers

---

Poster, available at http://www.sos.state.tx.us/elections/forms/id/poster-8.5x14-aw-voter.pdf. Neither the Private Plaintiffs nor the United States objected to the inclusion of the "unable to obtain" language on the poster when it was sent to them on August 11 for comment. The same is true with the print advertisement that went to print in certain newspapers beginning September 12. Plaintiffs were provided with an opportunity to object to the language in the print advertisement, but never raised any concerns with the "unable to obtain" language. *See* <u>Exhibit I</u> (email attaching draft advertisement and seeking comments from Plaintiffs before it was finalized).

[7] *See* <u>Exhibit G</u>, Election Advisory No. 2016-17, dated Aug. 26, 2016, available at http://www.sos.texas.gov/elections/laws/advisory2016-17.shtml; <u>Exhibit F</u>, Providing Identification for Voting in Texas PowerPoint (circulated to election officials on Aug. 18, 2016), available at http://www.sos.texas.gov/elections/forms/id/acceptable-forms-of-ID.pdf.

[8] *See, e.g.*, <u>Exhibit S</u>, Emails from K. Ingram to Election Officials, dated Aug. 19, 2016 and Aug. 22, 2016; http://www.sos.state.tx.us/Elections/forms/pol-sub/index.shtml.

across the State, and the first print advertisement went to print on September 12.[9] All of these efforts contain references to "unable to obtain" or "cannot obtain," but none of the materials even come close to suggesting that a voter must establish it is impossible to get an acceptable photo ID before executing the Reasonable Impediment Declaration.

The State Defendants provide an update on their efforts because even if this Court were to order the State Defendants to modify their language, it is too late to do so for many of the initiatives outlined in the Voter Education Plan and Election Official Training Program submitted on August 15. Modifying the language at this point in the election cycle to make the unnecessary changes the United States and Private Plaintiffs propose would result in different forms of guidance being given to voters and election officials.  Some materials would say "[i]f a voter cannot reasonably obtain an acceptable form of photo ID, and the voter has a reasonable impediment or difficulty to obtaining such ID, the voter may still cast a regular ballot by presenting a supporting form of ID and executing a Reasonable Impediment Declaration," while other materials would have the same language but omit the word "reasonably." Some materials would use the "do not possess an acceptable form of photo ID," while others would continue to use "cannot obtain an acceptable form of photo ID." This will no doubt lead to confusion over the use of the Reasonable Impediment Declaration with less than 60 days left before the November 2016 general election. The State

---

[9] The print advertisement with the "unable to obtain" language went to print in four publications directed to African-American communities as of September 12. The same print advertisement will appear in publications directed to the elderly population in October, but the deadline to make changes to the advertisement has already passed.

Defendants take their responsibility to properly educate voters regarding the new voting procedures in the Interim Remedial Order seriously, and that it is why they have dedicated substantial resources to this task since the Court entered its order. To suggest that the State Defendants have acted with a nefarious intent to restrict the use of the Reasonable Impediment Declaration to voters who would otherwise be eligible to cast a regular ballot ignores the very language in the State's guidance, which is accurate and consistent with the Court's Interim Remedial Order and the Fifth Circuit's opinion.

### C. The Alleged Statements By Texas Officials Are Not Inconsistent With The Court's Interim Remedial Order.

The Private Plaintiffs complain that "statements attributed to Texas officials" indicate that they will "conduct criminal investigations of 'everyone' who executes the Declaration of Reasonable Impediment." Private Plaintiffs' and Plaintiff-Intervenors' Motion for Further Relief to Enforce Interim Remedial Order ("Private Plaintiffs' Motion") (ECF No. 926) at 1. According to the Private Plaintiffs, those statements conflict with the Court's interim remedy "and are intimidating to the very persons that the Order is intended to protect." But the Private Plaintiffs identify no such statements by Texas officials. And in any event, the alleged statements do not conflict with the Court's order, nor would they intimidate the persons that the interim remedy is intended to protect.

The Private Plaintiffs base their motion on the false premise that Texas officials have stated that "'everyone' who executes" a reasonable-impediment declaration will face criminal investigation. They refer to "the Harris County Clerk's

16

quoted statement that he will investigate 'everyone who signs that form,'" but there is no such quoted statement. That language comes from a statement by a reporter for the *Houston Press*, not a quotation attributed to Stan Stanart, the Harris County Clerk. *See* Meagan Flynn, "Harris County Clerk Will Vet Voters Who Claim to Lack Photo ID," *Houston Press*, Aug. 26, 2016.

To the extent the *Houston Press* article purports to quote Mr. Stanart, his statements are consistent with the Court's interim remedy and the terms of the Reasonable Impediment Declaration. The article quotes Mr. Stanart as making the following statements:

> "If I suspect someone has fraudulently signed a form saying they don't have that ID, then I think that's an issue," he said. "You can't skip around the photo ID requirement. It's an oath that people are signing. Whether anything happens, that's up to the [Harris County District Attorney's Office]."

> "We will always lean to the benefit of the voter—we don't want people to fall into a trap," Stanart said. "But we do want people to understand, if they have an existing photo ID, they must bring it."

*Id.*; *cf.* Private Plaintiffs' Motion, Exhibit B (ECF No. 926-2) at 10 ("People are signing an oath. They are swearing they don't have an ID," he said. "If they think they can come in and vote without an ID when they have one sitting in their pocket, that's going to be a problem."). Those statements do not indicate that "election officials [will] question or challenge voters concerning the voter's lack of SB 14 ID and the voter's claimed impediment to obtaining SB 14 ID prior to allowing a voter to cast a regular ballot with a reasonable impediment declaration." Interim Remedial Order (ECF No. 895) at 2; *cf.* Private Plaintiffs' Motion at 7. Nor do they support the Private Plaintiffs'

allegation of "wholesale criminal investigation" of individuals who execute Reasonable Impediment Declarations.

The quoted statements merely confirm that voters who have SB 14 ID must present it when voting in person. That is entirely consistent with the Interim Remedial Order. After the Fifth Circuit issued its opinion, the Court entered an order instructing the parties that any interim relief must provide that "[a]ll persons who have SB 14 ID or who have the means to get it in time for the November 8, 2016 election must display that ID in order to vote." Interim Remedial Order (ECF No. 895) at 1. And the Reasonable Impediment Declaration provides—in language agreed to by the parties—"By signing this declaration, I swear or affirm under penalty of perjury that . . . I face a reasonable impediment or difficulty that prevents me from getting an acceptable form of photo identification." *Id*. at 6. Nothing in the Interim Remedial Order suggests that voters who have, or are able to obtain without reasonable impediment or difficulty, a form of SB 14 ID may nevertheless execute a Reasonable Impediment Declaration.

Plaintiffs' suggestion that the interim remedy incorporates a "good faith" exception has no basis in the Court's order. The interim remedy applies to voters who do not have an acceptable photo ID or the means to obtain one before the election. That includes voters whose IDs have been lost or stolen, provided that they cannot obtain a replacement ID without reasonable impediment or difficulty. But voters who mistakenly believe that they lack an acceptable photo ID have not suffered any harm as a result of SB 14, and they are not the intended beneficiaries of the reasonable-

impediment procedure. To inform voters that they may execute a Reasonable Impediment Declaration even if they have a qualifying photo ID only creates confusion. Unfortunately, certain individuals have done just that. *See, e.g.*, Private Plaintiffs' Motion, Exhibit D (ECF No. 926-4) at 8 ("It is highly recommended that you use one of these ID's if you have the ID, but you are not required to do so, even if you have one of the SB 14 ID's"); *id.* at 9 ("[E]lection judges cannot send you home to get your ID just because you forgot it, in my opinion."). The Court should reject the Private Plaintiffs' requested relief, which would force the State to contribute to that confusion.

Plaintiffs also complain that Attorney General Paxton "failed to correct, at a minimum, reporting that the Interim Remedial Order required a declaration of proof of citizenship and proof of residency at the polling place." Private Plaintiffs' Motion at 2 n.3. The statement in question was technically incorrect, but the error is immaterial because the Texas Election Code requires in-person voters to verify their residence if that listed in the voter rolls is not current, and every voter in the country, on the federally-prescribed mail in voter registration form, has to attest, under penalty of perjury, to their citizenship, under federal and state law. *See* Tex. Elec. Code § 63.0011(a) ("Before a voter may be accepted for voting, an election officer shall ask the voter if the voter's residence address on the precinct list of registered voters is current and whether the voter has changed residence within the county."); *id.* § 63.011(c) ("Before being accepted for voting, the voter must execute and submit to an election officer a statement including: (1) a statement that the voter satisfies the

applicable residence requirements prescribed by Subsection (b); (2) all of the information that a person must include in an application to register to vote under Section 13.002 . . . ."); *id.* § 13.002(c)(3) ("A registration application must include . . . a statement that the applicant is a United States citizen . . . ."); *see also* 52 U.S.C. § 21083 ("(A) In general. The mail voter registration form developed under section 6 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg-4 [52 U.S.C. § 20505]) shall include the following: (i) The question 'Are you a citizen of the United States of America?' and boxes for the applicant to check to indicate whether the applicant is or is not a citizen of the United States."); 52 U.S.C. § 20505(a) ("(a) Form.  (1) Each State shall accept and use the mail voter registration application form prescribed by the Federal Election Commission pursuant to section 9(a)(2) [52 U.S.C. § 20508(a)(2)] for the registration of voters in elections for Federal office.  (2) In addition to accepting and using the form described in paragraph (1), a State may develop and use a mail voter registration form that meets all of the criteria stated in section 9(b) [52 U.S.C. § 20508(b)] for the registration of voters in elections for Federal office . . ."); 52 U.S.C. § 20508 ("(a) In general. The Election Assistance Commission -- (1) in consultation with the chief election officers of the States, shall prescribe such regulations as are necessary to carry out paragraphs (2) and (3); (2) in consultation with the chief election officers of the States, shall develop a mail voter registration application form for elections for Federal office; . . . (b) Contents of mail voter registration form. The mail voter registration form developed under subsection (a)(2) . . . *(2) shall include a statement that-- (A) specifies each eligibility requirement (including citizenship);(B)*

*contains an attestation that the applicant meets each such requirement; and (C)*
*requires the signature of the applicant, under penalty of perjury; . . . .)* (emphasis
added). A statement that voters must be citizens and residents of the State of Texas
cannot reasonably be interpreted as confusing or intimidating to voters, even if the
speaker happens to be wrong about the source of the requirements. Any effort to
correct that trivial error would create more confusion than the error itself.

### CONCLUSION

The Court should deny the motions to enforce the Interim Remedial Order.

Date: September 12, 2016                    Respectfully submitted.

                                            KEN PAXTON
                                            Attorney General of Texas

                                            JEFFREY C. MATEER
                                            First Assistant Attorney General

                                            BRANTLEY STARR
                                            Deputy First Assistant Attorney General

                                            JAMES E. DAVIS
                                            Deputy Attorney General for Civil Litigation

                                            /s/ Angela V. Colmenero
                                            ANGELA V. COLMENERO
                                            Chief, General Litigation Division

                                            MATTHEW H. FREDERICK
                                            Deputy Solicitor General

                                            OFFICE OF THE ATTORNEY GENERAL
                                            P.O. Box 12548 (MC 059)
                                            Austin, Texas  78711-2548
                                            Tel.: (512) 936-6407
                                            Fax: (512) 474-2697
                                            *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2016, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

                                            /s/ Angela V. Colmenero
                                            ANGELA V. COLMENERO