IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-263 (NGR) |

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CARLOS CASCOS, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-291 (NGR) |
| LENARD TAYLOR, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants | Civil Action No. 2:13-cv-348 (NGR) |

**UNITED STATES REPLY MEMORANDUM IN SUPPORT OF
MOTION TO ENFORCE INTERIM REMEDIAL ORDER**

Defendants raise several arguments to defend their recasting of the language in the Court's Remedial Order. Each should be rejected. Most surprisingly, Defendants now insist that the text of the Remedial Order—language they negotiated and asked this Court to approve—"invites ambiguity and questions regarding its meaning." Tex. Opp. 9 (ECF No. 932). Thus, without notifying the Court or seeking leave, Defendants stripped the word "reasonably" from the Court's standard, apparently to clarify the alleged "ambiguity." Defendants' purported fix is misleading and incorrect, and their refusal to conform all materials to the language of the Court's Order risks substantial confusion. Indeed, Defendants' misleading language has already been disseminated by media across Texas. It is not, however, too late to correct Defendants' errors.

1

Accordingly, this Court should order Defendants to conform their education and training materials to the plain language of the Remedial Order.

### I.     Defendants' Alternative Language Is Inconsistent with the Remedial Order.

Defendants argue that their recast language is "consistent" with the Remedial Order. Tex. Opp. 2, 5-6. It is not. The Order's central principle is that voters who have a reasonable impediment to obtaining SB 14 ID may still cast a ballot that they know will count. Remedial Order ¶ 2 & Ex. 1. The Order requires Defendants to "educate voters in subsequent elections concerning both voter identification requirements and the opportunity for voters who do not possess SB 14 ID and cannot reasonably obtain it to cast a regular ballot." Remedial Order ¶ 11 (ECF No. 895) (second emphasis added). And yet the terms "reasonable" and "reasonably" appear nowhere on the homepage of VoteTexas.gov, nowhere in the Secretary of State's primary press release, and nowhere on the notice of acceptable identification to be posted outside of polling places. *See* VoteTexas.gov, *at* www.votetexas.gov (Ex. 1); Press Release, Office of the Texas Secretary of State, *Voters Who Cannot Obtain One of Seven Forms of Approved Photo ID Have Additional Options at the Polls* (Aug. 19, 2016) (ECF No. 924-3); AW13-8 Poster (Aug. 2016) (Ex. 2). By expunging "reasonably," Defendants suggest that relief is available only if obtaining SB 14 ID is impossible.[1]

Defendants' claim of consistency also rests on the erroneous assertion that "Not having obtained a form of SB 14 ID is one of the prerequisites" to casting a ballot using a reasonable

---

[1] Although Defendants' press release later states that voters may vote after signing a declaration "explaining why the voter is unable to obtain" SB 14 ID, the release does not articulate what explanation will be adequate. Texas's examination of affected voters at trial demonstrates what the State understands "unable" to obtain ID to mean. *See, e.g.*, Trial Tr. 227:7-230:7 (Sept. 5, 2014) (implying that an elderly voter should have ridden his bicycle ten miles to a DPS office to obtain an EIC); *see also* Tex. Opp. 10 (arguing that "Plaintiffs failed to identify individuals who faced a substantial obstacle to voting" because of SB 14); Appellants Br. 21, *Veasey v. Abbott*, No. 14-41127 (5th Cir. Jan. 29, 2015) (claiming that "plaintiffs failed to produce a single individual unable to vote on account of SB 14."). Thus, requiring inability to obtain ID—without reasonableness—is inconsistent with the Remedial Order.

2

impediment declaration. Tex. Opp. 4; *see also id.* at 8. While this Court's Remedial Order speaks of a voter's impediment to obtaining SB 14 in the future, Remedial Order ¶¶ 5-6, 9, 11, the Order permits voters who do not "possess SB 14 ID" to vote using a reasonable impediment declaration, Remedial Order ¶ 11. The Remedial Order therefore protects voters who once obtained SB 14 ID but no longer possess it (*e.g.*, due to expiration, theft, or loss) and have a reasonable impediment to obtaining it again.[2]

Defendants also defend their reformulation of the Remedial Order by contending for the first time that the language of the Order "invites ambiguity and questions regarding its meaning," Tex. Opp. 9, and "may cause confusion," *id.* at 10. This is an about-face from the August 10 hearing, when counsel for Defendants asserted that Defendants "want clear and definable terms in the Court's orders to provide them confidence that they are, in fact, complying with the Court's order," Tr. 26:6-8 (Aug. 10, 2016) (Ex. 3), and that "the terms set forth in the Joint Submission of Agreed Terms, and specifically the requirement set forth in Paragraph 10 through 12, are appropriate," Tr. 29:2-5. Defendants may not now unilaterally rewrite the Remedial Order and publish a standard far harsher than the one to which all the parties and Court agreed. Even if the Court's language could be seen as ambiguous—which it cannot—Defendants waived their opportunity to propose alternatives. *See* Order (ECF No. 869) (deadlines for submission of disputed terms).[3]

---

[2] Although two technical documents attempt to resolve this concern by defining "have not obtained" to mean "do not possess," Tex. Opp. 8-9, most other documents do not present that atypical definition. Ordinarily, to obtain is "[t]o bring into one's own possession," *Obtain*, Black's Law Dictionary (10th ed. 2014), but the fact that a voter once obtained SB 14 ID—and once possessed it—does not establish current possession. On the other hand, a voter who merely left a valid driver's license at home continues to "possess" SB 14 ID. *See* U.S. Mot. 5 n.2. Allowing such a voter to complete a reasonable impediment declaration constitutes simple poll worker error not authorized by the Remedial Order. *See* Reasonable Impediment Declaration (ECF No. 932-8) (allowing a voter who forgot his or her wallet to vote and to use a form of identification not permitted under the Remedial Order).

[3] To be sure, the State has modified some voter education and poll worker training materials to address

3

### II.     Defendants' Erroneous Message Is Being Disseminated Throughout the State.

Despite the United States' and Private Plaintiffs' numerous requests to eliminate all language that does not conform to the Remedial Order, *see* U.S. Mot. 4, Defendants have continued to communicate restrictive language to voters. Indeed, just one day after the United States' most recent request, Texas's Secretary of State's office published a press release reiterating that "additional" voting options existed for "voters who cannot obtain an approved photo ID." *See* Press Release, Office of the Texas Secretary of State, *Secretary Cascos Kicks off Vote Texas Campaign* (Aug. 31, 2016) (Ex. 4); *see also* Ken Paxton, Opinion, *Texans Want Reasonable Voter ID*, Corpus Christi Caller (Sept. 13, 2016) (Ex. 5) (stating that "voters must show a government-issued photo identification in order to cast their ballot" without mentioning the reasonable impediment process). These erroneous messages demonstrate the need for relief.[4]

Defendants are correct that the audience for a voter education and poll worker training program is not made up of election lawyers. Tex. Opp. 9. That is why the United States has focused on the headlines and leading paragraphs of Defendants' communications to the press and the public. *See* Tex. Opp. 5, 7. Voters, journalists, and poll workers may not read the entirety of a press release, let alone the minutiae of an election advisory. Moreover, headlines and ledes from the Defendants' materials make their way into local media without material buried in later

---

concerns raised by the United States and the private plaintiffs, but the language used in these modified documents still begins the description of eligibility to vote with SB 14 ID with the term "cannot obtain" such ID. *E.g.*, *Election Inspector's Handbook* at 8 (ECF No. 932-2). It is ambiguous whether the addition of "and has a reasonable impediment" modifies "cannot obtain" or imposes a second condition. *See, e.g.*, *id.* The fact remains that the State agreed to the clear language of the Joint Submission, and this Court should not permit Texas to rewrite the Court's Order or proceed by *fait accompli*.

[4] Texas points to instances in which the United States and private plaintiffs did not make duplicative requests to change "the same language" across multiple documents, particularly following the State's refusal to correct deviations from the Remedial Order. Tex. Opp. 11-14 & n.6. But a decision not to make futile requests to the State should not bar judicial relief here.

paragraphs. *See, e.g.*, *Voters in November Election Have Additional ID Options*, Orange Leader, Aug. 17, 2016 (Ex. 6) ("'In elections this fall, Texas voters who cannot obtain one of the seven forms of approved photo ID will have additional options when casting their ballots,' Secretary Cascos said in a press release.").[5]  Ordinary citizens also read tweets, such as, "Voters who cannot obtain one of the seven forms of approved photo ID have additional options at the polls," Texas SOS Office (@VoteTexas), Twitter (Aug. 19, 2016, 9:40 PM) (Ex. 10), and these simple messages can circulate to vulnerable communities without buried context, *see, e.g.*, Black Houston (@blckhouston), Twitter (Sept. 7, 2016, 12:37 AM) (Ex. 11) (same).  Whether or not voters without SB 14 ID see these communications directly, the messages matter when they reach local officials, community organizations, potential assistors, and others who may discuss requirements with voters or help individuals without SB 14 ID to vote.  Exactly because they are not election lawyers, Texas voters should not have to dissect Defendants' varying communications to resolve inconsistencies and to determine with finality the remedial standard ordered by the Court.  Defendants' communications should simply conform to the Remedial Order.

**III.     This Court May Still Grant Meaningful Relief.**

Defendants argue that it is "too late" to fix its misleading materials, Tex. Opp. 15, and suggest that any relief here will "bring the State's election machinery to a halt," Tex. Opp. 1. Not so.  The United States has requested practical, prospective relief intended to fix Texas's voter education and poll worker training where possible and to ensure that Defendants accurately "educate[s] voters in subsequent elections."  Remedial Order ¶ 11.  Electronic materials may be

---

[5] *See also, e.g.*, Claire Kowalick, *Options Added to Voter ID Rules*, Wichita Falls Times Record News, Aug. 13, 2016 (Ex. 7); Ed Sterling, *Court Relaxes Texas Voter ID Law in Time for Fall Election*, Mexia News, Aug. 18, 2016 (Ex. 8); *cf.* County Press Release Template (Ex. 9) (model press release emphasizing additional options for "voters who cannot obtain" SB 14 ID).

5

corrected and redistributed, and corrections to press releases may be issued without substantial burden or expense. U.S. Mot. 8. Moreover, the United States has only requested corrections to materials "that have not yet been printed," along with the distribution of corrections, where materials have already been printed. *Id.*

Importantly, Defendants' opposition memorandum acknowledges for the first time that they intend to use language that deviates from the Remedial Order in mass media. Tex. Opp. 15 (acknowledging that mass media "contain references to 'unable to obtain' or 'cannot obtain'"). Whether or not it is true that this content cannot be changed without "significant expense," Tex. Opp. 14, the burden of the Defendants' error should be borne by them and not the voters. In the absence of a declaration or witness to explain the feasibility of correcting television, radio, and print advertisements, it remains manifestly unclear what can be done to ensure that Texas voters receive accurate mass media advertising messages.[6]

Finally, correcting voter education and training material would not "sow confusion at a critical time." Tex. Opp. 2. Indeed, failing to conform Defendants' manifold and conflicting variations that are inconsistent with the Remedial Order alone risks substantial and widespread confusion. Absent relief, some Texas voters may reasonably believe that they cannot vote because—short of greater sacrifices or expending additional resources—they simply "cannot obtain" SB 14 ID.

---

[6] At the August 12 status conference, the United States made clear that it would not then challenge Texas's refusal to share mass media advertising scripts in advance. Tr. 27:12-23 (Aug. 12, 2016) (Ex. 12). But the United States also reserved the right to seek judicial relief for any ensuing problems. Tr. 27:24-28:3. Texas accepted the risk of going forward without consulting with the United States and the Private Plaintiffs and the State cannot now complain about fixing a problem that, with cooperation, could have been avoided at the outset.

6

To ensure a uniform and effective remedy, this Court should enter the proposed order attached to the United States' motion.

Date: September 16, 2016

                                               Respectfully submitted,

KENNETH MAGIDSON            VANITA GUPTA
United States Attorney               Principal Deputy Assistant Attorney General
Southern District of Texas         Civil Rights Division

                                               */s/ Daniel J. Freeman*
                                               T. CHRISTIAN HERREN, JR.
                                               MEREDITH BELL-PLATTS
                                               RICHARD A. DELLHEIM
                                               BRUCE I. GEAR
                                               DANIEL J. FREEMAN
                                               AVNER SHAPIRO
                                               SAMUEL OLIKER-FRIEDLAND
                                               Attorneys, Voting Section
                                               Civil Rights Division
                                               U.S. Department of Justice
                                               950 Pennsylvania Ave. NW
                                               Washington, D.C. 20530

                                               *Counsel for the United States*