**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

MARC VEASEY, *et al.*,

          Plaintiffs,

      v.

GREG ABBOTT, *et al.*,

          Defendants.

Civil Action No. 2:13-cv-193 (NGR)

**BRIEF OF PRIVATE PLAINTIFFS REGARDING
EFFECT OF NEW VOTER ID LEGISLATION ON THIS CASE**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

    I.      LATER LEGISLATION CANNOT AFFECT WHETHER SB 14 WAS ENACTED WITH DISCRIMINATORY INTENT ............................................... 3

    II.     THE FIFTH CIRCUIT'S REMAND DOES NOT REQUIRE ANY FURTHER DELAY ................................................................................................ 5

    III.    ENACTING SB 5 WOULD NOT MOOT THIS CASE ...................................... 9

    IV.    PLAINTIFFS ARE ENTITLED TO RELIEF AND SHOULD NOT FACE FURTHER DELAY BASED ON HYPOTHETICAL LEGISLATION ............. 13

    V.     THE COURT SHOULD PROCEED WITH A TWO-STEP PROCESS ........... 14

CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)...............................................................................3, 11

*Blackmoon v. Charles Mix County*,
  505 F. Supp. 2d 585 (D.S.D. 2007) ..................................................................11

*City of Richmond v. United States*,
  422 U.S. 358 (1975).........................................................................................9

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
  447 U.S. 102 (1980).........................................................................................3

*Cooper v. McBeath*,
  11 F.3d 547 (5th Cir. 1994) ............................................................................12

*Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*,
  404 U.S. 412 (1972).......................................................................................12

*Dillard v. Crenshaw County*,
  831 F.2d 246 (11th Cir. 1987) ..........................................................................5

*Ellis v. Railway Clerks*,
  466 U.S. 435 (1984).........................................................................................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
  528 U.S. 167 (2000).......................................................................................13

*Green v. County Sch. Bd.*,
  391 U.S. 430 (1968).......................................................................................14

*Harris v. Siegelman*,
  695 F. Supp. 517 (M.D. Ala. 1988) .................................................................14

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010)...........................................................................12

*Hunter v. Underwood*,
  471 U.S. 222 (1985)..................................................................................4, 10

*Knox v. Serv. Emps. Int't Union, Local 1000*,
  132 S. Ct. 2277 (2012)....................................................................................9

*Louisiana v. United States,*
    380 U.S. 145 (1965) ........................................................................................4, 10

*Lucas v. Bolivar County, Miss.,*
    756 F.2d 1230 (5th Cir. 1985) ...............................................................................14

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
    508 U.S. 656 (1993) ...............................................................................................12

*N.C. State Conference of NAACP v. McCrory,*
    831 F.3d 204 (4th Cir. 2016) ......................................................................4, 10, 14

*Operation PUSH v. Mabus,*
    932 F.2d 400 (5th Cir. 1991) .......................................................................4, 9, 10

*Perez v. Texas,*
    970 F. Supp. 2d 593 (W.D. Tex. 2013) .............................................................11, 13

*Sossamon v. Lone Star State of Texas,*
    560 F.3d 316 (5th Cir. 2009) .................................................................................13

*South Carolina v. Katzenbach,*
    383 U.S. 301 (1966) ...............................................................................................11

*Thornburg v. Gingles,*
    478 U.S. 30 (1986) .................................................................................................11

*United States v. Virginia,*
    518 U.S. 515 (1996) ...............................................................................................10

*Veasey v. Abbott,*
    830 F.3d 216 (5th Cir. 2016) .......................................................................in passim

## STATUTORY PROVISIONS

52 U.S.C. § 10302 ........................................................................................................10

## INTRODUCTION

Private Plaintiffs take no position on the United States' pending motion to dismiss its discriminatory purpose claim.  Consistent with its core mission and the dictates of the Voting Rights Act, the Department of Justice has vigorously pursued this claim for over three years, and its recent change in position appears to be based on purely political developments rather than on changes in the facts or the law.  If the United States' motion is granted, Private Plaintiffs would object to any further attempt by the United States to participate in the resolution of the discriminatory intent claim unless it seeks leave to reinstate that claim.  Private Plaintiffs do reject the reasoning offered in the United States' motion, and object to any suggestion that this Court should delay making findings on intent because of the introduction of new voter ID legislation in the Texas Legislature.  Any proposed delay is contrary to controlling precedent, common sense, and the instructions of the Fifth Circuit's en banc decision.

After trial, this Court found, and the Fifth Circuit affirmed, that Senate Bill 14 ("SB 14") disproportionately burdens hundreds of thousands of Black and Latino Texans' fundamental right to vote in violation of Section 2 of the Voting Rights Act ("VRA").  *Veasey v. Abbott*, 830 F.3d 216, 272 (5th Cir. 2016).  The only question before this Court on remand is whether SB 14 was intended to have that discriminatory result.  The Fifth Circuit's en banc opinion states no fewer than seven times that there is sufficient evidence in the voluminous record of this case to support a finding of intent.  In an attempt to avoid that finding, Texas now points to a new voter ID bill, Senate Bill 5 of 2017 ("SB 5"), which—if ever passed and signed into law—would amend SB 14.  But the passage of SB 5—or any other new voter ID law—would have no bearing on this Court's analysis of the Texas Legislature's intent when it passed SB 14 in 2011.  Any relevance that SB 5 might have to these proceedings is limited to the remedy stage, which would

follow a finding of discriminatory intent.  Therefore, the Court should reject any effort to avoid or obstruct a prompt finding on Plaintiffs' discriminatory intent claim.

There are at least four reasons why SB 5—or any other new voter ID legislation—should not delay a determination of whether the 2011 Legislature enacted SB 14, at least in part, with a discriminatory purpose.

*First*, even if SB 5 does become law, its passage would not obviate or even affect the Court's adjudication of the intent claim as to SB 14—an inquiry that stands, as a matter of doctrine and common sense, wholly independent of legislative actions taken six years later.  The original intent of the legislature that passed SB 14 in 2011 cannot be changed after the fact.

*Second*, the suggestion that the Fifth Circuit's en banc decision requires this Court to delay its ruling on intent distorts that decision, is in fact contrary to the instruction of the Fifth Circuit, and has twice been rejected by this Court.

*Third*, Texas's suggestion[1] that enactment of SB 5 would moot Plaintiffs' intent claim is squarely contradicted by every court that has faced an analogous question and by the purpose and plain language of the VRA.

*Fourth*, Private Plaintiffs have suffered the denial or abridgment of their right to vote under a discriminatory law for nearly four years.  No legislation—and certainly no hypothetical legislation—should delay a prompt ruling that recognizes that indignity and facilitates imposition of a full remedy for the harm Private Plaintiffs have suffered.

Finally, as a procedural matter, Private Plaintiffs respectfully suggest that the Court proceed to making a finding as to the Legislature's intent but wait to enter a final judgment and

---

[1]  During oral argument on the intent claim on Tuesday, February 28, 2017, Texas suggested that the passage of SB 5 "very likely would" render the intent clam moot.  February 28, 2017 Hr'g Tr. ("Tr.") at 107.

remedy until Texas has had an opportunity to pass, and the Court to consider, any legislation in the 2017 session that Texas may assert cures SB 14's deficiencies.

## ARGUMENT

## I.     LATER LEGISLATION CANNOT AFFECT WHETHER SB 14 WAS ENACTED WITH DISCRIMINATORY INTENT

The Court need not wait and see if SB 5 is enacted before ruling on Plaintiffs' intent claim because the enactment of that new bill would not affect whether the 2011 Legislature passed SB 14, at least in part, with the intent to disproportionately burden the franchise of racial minorities.  None of the well-established factors for determining intent involve analysis of official action that occurs *after* the alleged discriminatory act.  *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977).  Rather, the Supreme Court commands an examination of the context leading up to and surrounding the challenged action.  *Id.* at 267 ("The *historical background* of the decision is one evidentiary source … .  The specific sequence of events *leading up* to the challenged decision also may shed some light on the decisionmaker's purposes." (emphasis added)).  This focus is entirely appropriate because, as the Supreme Court has repeatedly held, "the views of a subsequent [legislature] form a hazardous basis for inferring the intent of an earlier one."  *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980).

Indeed, courts routinely address discriminatory intent without considering subsequent legislative actions.  For example, in *North Carolina State Conference of NAACP v. McCrory*, in the course of holding that North Carolina's voter ID law was passed with discriminatory intent, the court gave no effect to a "reasonable impediment" provision added a month before trial was set to begin (as opposed to after five years of litigation, as is the case here), even as it discussed

the provision in some detail with regard to the remedy.[2]  *Compare* 831 F.3d 204, 227-33 (4th Cir. 2016) (finding that the law was enacted with discriminatory intent), *with id.* at 235-36 (striking down the entire law despite the later ameliorative amendment).  *See also Hunter v. Underwood*, 471 U.S. 222, 232-33 (1985) (declining to take into account later ameliorative changes to a discriminatory law when deciding whether the law at issue was passed with a discriminatory intent, and striking down the entire law, despite those amendments, where its "original enactment was motivated by a desire to discriminate against blacks on account of race and the section continues to this day to have that effect"); *Louisiana v. United States*, 380 U.S. 145, 154-55 (1965) (finding a literacy test unconstitutional as enacted and, after considering later ameliorative changes to the test, enjoining the modified test as well).  Similarly, neither the Fifth Circuit panel nor the en banc court mentioned the passage of SB 983—which partially ameliorates SB 14's racially discriminatory impact by eliminating the direct costs for certain birth records required for voter registration—in their consideration of the intent claim.  Instead, both properly focused on evidence relevant to the Texas Legislature's intent at the time that it passed SB 14, such as the historical background of that passage and the sequence of events leading up to it.  Common sense dictates that the intent of one legislative body cannot be changed after the fact by the acts of a later legislative body.

Any action by the Texas Legislature subsequent to SB 14's passage—through SB 5 or any other bill—is potentially relevant only during the remedy phase of these proceedings, which in no way justifies delaying a decision on the merits of the intent claim.  The Court retains jurisdiction to determine whether SB 5 or any other new law would remedy SB 14's discriminatory effect.  *See Veasey*, 71 F. Supp. 3d at 698, 707-08; *see also Operation PUSH v.*

---

[2]  In addition, of course, North Carolina had actually *passed* a law altering the voter ID scheme being assessed by the courts.  No such law has yet been passed in Texas.

*Mabus*, 932 F.2d 400, 409-12 (5th Cir. 1991) (affirming that "the 1984 amendments to Mississippi's [1955] voter registration laws did not cure the violations of § 2 of the Voting Rights Act caused by those laws"); *Dillard v. Crenshaw Cty.*, 831 F.2d 246, 249 (11th Cir. 1987) (finding that the district court properly retained jurisdiction to evaluate the county's proposed remedial legislation since "any proposal to remedy a Section 2 violation must itself conform with Section 2").  And as to discriminatory intent, the remedy "is potentially broader than the remedy the district court may fashion for the discriminatory impact violation," *Veasey*, 830 F.3d at 230 n.11, including a declaratory judgment, injunctive relief, and Section 3(c) relief, which is uniquely available after a finding of discriminatory intent.  Any assessment of how, if at all, any legislative action might instruct on the array of remedies available following an intent finding should await the Court's ruling on intent.

## II.   THE FIFTH CIRCUIT'S REMAND DOES NOT REQUIRE ANY FURTHER DELAY

Texas and the United States distort the Fifth Circuit's en banc opinion to argue that it requires this Court to delay its findings on intent so it can take into account potential legislation.  A fair reading of that opinion makes clear that the Fifth Circuit contemplated no such delay, nor did it indicate that a legislative fix could short-circuit this Court's responsibility to make a finding regarding whether SB 14 was enacted with discriminatory intent.  Texas and the United States rely on two sentences that they have taken out of context to argue otherwise, ignoring the rest of the opinion and the common sense conclusion that the Legislature cannot pass new legislation to go back in time and change its past intent.

In its analysis of the intentional discrimination claim and its detailed instructions regarding the timeline of the remand, the Fifth Circuit made no mention of the possibility that legislation would disrupt this Court's review process.  *Veasey*, 830 F.3d at 242.  In fact, it noted

that "the district court should not take additional evidence" and should "make its discriminatory purpose findings based on the record we have, guided by this opinion and instructions we have given the district court about the legal infirmities in its initial findings."  *Id.*

The only portion of the opinion in which the Fifth Circuit said that new legislation would be relevant is in its discussion of a remedy for SB 14's discriminatory *effect*, noting that courts should give legislatures the opportunity to cure such violations before fashioning their own remedies, and that the Texas Legislature may, in a special session, enact a law that could cure the harms imposed by SB 14's discriminatory effect.  *Id.* at 268-72.

In this section, after the Fifth Circuit upheld this Court's findings on SB 14's discriminatory effect, it ordered the Court to devise an interim remedy for the November 2016 election, discussing at length the relevance of possible legislative action to the discriminatory effects remedy.  *Id.*  It is clear on the face of the text that the remedy discussed pertains only to the discriminatory effects violation—a conclusion buttressed by the fact that the only legal liability the appellate court had found, and therefore the only harm to be remedied at that stage, was a discriminatory effect.

The Fifth Circuit started its remedy discussion by distinguishing the broader remedy applicable to intent claims from the more limited remedies generally applicable to effects claims. Continuing its discussion of an appropriate remedy for the effects violation, the Fifth Circuit said, "we consider it prudent to provide some guidance regarding what would constitute a properly tailored remedy."  *Id.* at 269.  In this context and in this context only—i.e., in discussing the *effects* remedy—the Fifth Circuit said, "to the extent possible, courts should respect a legislature's policy objectives when crafting a remedy," and discussed the policy of giving legislatures the "opportunity to cure the infirmities in the statute before permitting the district

6

court to fashion a remedy." *Id.* (citations omitted).  Responding to this deferential policy, the Fifth Circuit noted that, "although legislative intercession may occur, it may not be feasible, and we follow the Supreme Court's guidance and permit the district court to enter an order that remedies SB 14's discriminatory *effects*." *Id.* at 271 (emphasis added).

Only in the course of discussing the propriety of a judicially-enacted remedy to address the discriminatory effects did the Fifth Circuit note that, should the Legislature meet in special session to address "this issue" or should a later Legislature again address the issue of "voter identification," such a new law "may cure the deficiencies addressed in this opinion," and that "[n]either our ruling here nor any ruling of the district court on remand should prevent the Legislature from acting to ameliorate the issues raised in this opinion." *Id.*  The only "deficiencies" that the Fifth Circuit affirmed in its opinion, of course, were those that produced a racially discriminatory effect.

Next, the Fifth Circuit said that, on remand, "the district court should refer to the policies underlying SB 14 in fashioning a remedy." *Id.*  Again, the Fifth Circuit was necessarily discussing the remedy only for the effects claim, because otherwise it would have been prejudging that portion of the remand that was to address the intent determination.  Moreover, the Fifth Circuit had already acknowledged that, in formulating the remedy for the *effects* violation, the district court must take into account any legitimate legislative policies behind SB 14.  *Id.* at 269.

The Fifth Circuit then acknowledged that it did not wish to disturb SB 14's "effect" on voters with compliant ID, and that the "remedy," i.e., the effects remedy, "must be tailored to rectify only the discriminatory *effect* on those voters who do not have SB 14 ID or are unable to

reasonably obtain such identification." *Id*. at 271 (emphasis added). Discussing the effects remedy, the Fifth Circuit stated:

> Because the parties had an opportunity to present the evidence they desired during the initial district court proceedings, the district court's determinations should be based on the current record, supplemented only by legislative action, if any, that occurs after this remand and any oral argument permitted by the district court.

*Id*. The Fifth Circuit then provided examples of legislative action, such as the reinstatement of voter registration cards and the use of affidavits, that might help "to cure the discriminatory effect." *Id.*

Even though this section is entirely about *remedying* the *effects* violation, the United States relies on language from this section to argue that the Fifth Circuit ordered this Court to consider later legislation when deciding the *merits* of the *intent* claim. Mot. for Voluntary Dismissal (ECF No. 1001) at 1 (positing that "on remand, the record on the purpose claim must be 'supplemented … by legislative action, if any, that occurs after … remand'" (quoting *Veasey*, 830 F.3d at 271)). The United States' representation of this quote is, to say the least, misleading.

Finally, in the "Interim Relief" section of its Conclusion, the Fifth Circuit provides a brief list of the tasks the district court must undertake on remand:

> In sum, the district court's immediate responsibility is to ensure the implementation of an interim remedy for SB 14's discriminatory effect that disrupts voter identification rules for the 2016 election season as little as possible, yet eliminates the Section 2 discriminatory effect violation. The district court will need to reexamine the discriminatory purpose claim in accordance with the proper legal standards we have described, bearing in mind the effect any interim legislative action taken with respect to SB 14 may have.

*Veasey*, 830 F.3d at 272. The United States mistakenly reads the last phrase of the second sentence as directing this Court to take subsequent legislation into account when determining intent. But that reading is inconsistent with the entire preceding opinion, which nowhere

suggests that later legislation has any bearing on whether SB 14 was enacted with discriminatory intent. Given the placement of the sentence in the "Interim Relief" section, it is best interpreted as a composite for this Court of its overall duty on remand: (1) prepare an interim order on effects, (2) consider Plaintiffs' intent claim, and (3) consider, at the remedy stage, the effects any interim legislation "may have" on the racially discriminatory effects of SB 14. This one sentence can be read only in conjunction with the rest of the opinion, including the Fifth Circuit's precise explanation as to what must be done with each claim. Any other reading would mean that one sentence has the power to turn everything previously said in the opinion upside down.

## III.  ENACTING SB 5 WOULD NOT MOOT THIS CASE

Contrary to Texas's misguided suggestion at the February 28 hearing, no new law could moot this case, making a delay based on the possibility of such an outcome inappropriate. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012); *see also Operation PUSH*, 932 F.3d at 409 (finding that the adjudication of a Section 2 claim was "not moot because the decision under the 1988 Act was the remedy decision growing out of the [Section 2] holding under the 1984 Act"); *Ellis v. Ry. Clerks*, 466 U.S. 435, 442 (1984) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."). There are three independent reasons why this is the case.

*First*, the remedy for a law enacted with discriminatory intent is far broader than the remedy for discriminatory effects. A law enacted with discriminatory intent is invalid in its entirety. *See Veasey*, 830 F.3d at 268 (noting that "[a]n official action, … taken for the purpose of discriminating … on account of … race has no legitimacy at all" (quoting *City of Richmond v. United States*, 422 U.S. 358, 378 (1975))). Therefore, a finding that SB 14 was enacted with a

9

discriminatory intent ordinarily would require reinstating the pre-SB 14 status quo.[3]  As discussed above, any amendments to Texas's voter ID law are properly considered only at the remedy stage.  *See United States v. Virginia*, 518 U.S. 515, 547 (1996) ("A proper remedy for an unconstitutional exclusion … aims to 'eliminate [so far as possible] the discriminatory effects of the past' and to 'bar like discrimination in the future.'" (quoting *Louisiana*, 380 U.S. at 154)).  If the amendments do not provide a full and complete remedy for the constitutional violation (a distinct question from the Section 2 issue), the Court must impose one, which ordinarily is a return to the previous status quo.  *See Hunter*, 471 U.S. at 232-33 (striking down felon disenfranchisement law even though "more blatantly discriminatory" provisions were repealed).  Consistent with this guidance from the Supreme Court, the Fourth Circuit struck down the entire North Carolina voter ID law at issue despite the reasonable impediment amendment added after the law's initial passage.  *McCrory*, 831 F.3d at 240 ("Here, the amendment creating the reasonable impediment exception does not invalidate or repeal the photo ID requirement.  It therefore falls short of the remedy that the Supreme Court has consistently applied in cases of this nature.").

Second, if Texas were to pass SB 5, relief under Section 3(c) and declaratory relief would still be available.  Indeed, this relief would be available even if Texas were to fully repeal SB 14 and return to the status quo (which it has never claimed it will do).

Section 3(c) specifically contemplates imposing a remedy where officials have intentionally discriminated in the recent past but may not still be doing so.  52 U.S.C. § 10302(c) (providing that courts may require preclearance of future voting changes where violations of the

---

[3]  It is true that courts should normally "defer to the legislature in the first instance to undertake the remedies for violation of § 2." *Operation Push*, 932 F.2d at 406.  However, this tenet applies in the discriminatory *effects* arena, not where there is a discriminatory intent, for which the clear and mandatory remedy is complete invalidation.

Fourteenth or Fifteenth Amendments "justifying equitable relief *have occurred*" (emphasis

added)).  Every court that has examined this question agrees that relief under this section remains

available regardless of later legislation.  *See Perez v. Texas*, 970 F. Supp. 2d 593, 603 (W.D.

Tex. 2013) (holding that adoption of a new redistricting map in 2013 did not moot intentional

discrimination claims as to the 2011 map because some plaintiffs sought relief under 3(c));

*Blackmoon v. Charles Mix Cty.*, 505 F. Supp. 2d 585 (D.S.D. 2007) (holding that new maps did

not moot claims of intentional discrimination in redistricting because the plaintiffs sought relief

under Section 3(a)); Transcript of Proceedings at 48:22-54:10, 64:13-65:3, N.C. State Conf. of

NAACP v. McCrory, No. 1:13-cv-658 (M.D.N.C. Oct. 28, 2015), ECF No. 381 (holding that the

reasonable impediment amendment did not moot intentional discrimination claims against the

voter ID law because, if nothing else, plaintiffs sought relief under Sections 3(a) and (c)).

Common sense supports these courts' conclusions.  Texas's position would allow jurisdictions

on the brink of being bailed-in to avoid accountability by adopting a slightly modified but still

potentially discriminatory practice.  The VRA's preclearance requirements were meant to

prevent exactly this kind of gamesmanship.  *See South Carolina v. Katzenbach*, 383 U.S. 301,

328 (1966) ("[C]ase-by-case litigation was inadequate to combat widespread and persistent

discrimination in voting, because of the inordinate amount of time and energy required to

overcome the obstructionist tactics invariably encountered in these lawsuits."), *abrogated on

other grounds by Shelby Cty. v. Holder*, 133 S. Ct. 2612 (2013).

Similarly, allowing jurisdictions to avoid findings of discriminatory intent by passing

modified legislation would subvert the purpose of the VRA, under which past adjudications of

discriminatory intent are an important factor in later cases involving both discriminatory effect

and intent.  *See Thornburg v. Gingles*, 478 U.S. 30, 44 (1986) (approving the Senate's inclusion

11

of "the history of voting-related discrimination in the State or political subdivision" as a relevant consideration in determining whether a practice has a discriminatory effect); *Arlington Heights*, 429 U.S. at 267 (citing the presence of "official actions taken for invidious purposes" as an evidentiary source in determining whether a later challenged action was taken with discriminatory purpose).[4]

*Third*, a case does not become moot simply because a defendant abandons the challenged practice or changes the challenged law, and certainly not where the abandonment is only partial, was not voluntary, is not accompanied by an admission of error, and was in fact the result of adverse judicial decisions.[5] *See Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 661-62 (holding that the voluntary cessation exception did not apply where the newly

---

[4] Furthermore, none of the decisions that Texas cited at the February 28, 2017 hearing suggest that the passage of SB 5 or any other voter ID legislation would moot this case. Tr. at 107:6-14. In *Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*, an Establishment Clause case, the Supreme Court explicitly based its finding of mootness on the fact that "the only relief sought in the complaint was a declaratory judgment that the now repealed [statute] is unconstitutional as applied." 404 U.S. 412, 414-15 (1972). By contrast, SB 5 as written (even if passed) does not repeal SB 14; it amends it. Plaintiffs have sought a declaratory judgment, a full injunction that returns the state of affairs to the previous status quo, and other appropriate relief. There is no suggestion that the Texas Legislature plans to volunteer such relief. Moreover, the remaining availability of Section 3(c) relief would preclude mootness even if SB 14 were fully repealed. The plaintiffs in *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville* similarly sought only "declaratory and injunctive relief," unlike Plaintiffs here. 508 U.S. 656, 659 (1993). And, in any case, the claims in that suit were held *not* to be moot. *Id.* at 662. Texas's third case, *Hayden v. Paterson*, involves a challenge to a felon disenfranchisement statute where the court found that the plaintiffs provided evidence only of the discriminatory intent of legislatures that passed previous iterations of the bill rather than the current law that was being challenged. 594 F.3d 150, 161 (2d Cir. 2010). This case has nothing to do with mootness and, in any case, is further distinguishable because Plaintiffs here challenge SB 14 itself and have provided significant and compelling evidence that it was passed with a discriminatory intent.

[5] Of course, in this case the Defendants are not voluntarily abandoning the challenged practice. SB 5 does not eliminate the discriminatory voter ID procedures, but amends them to purportedly remedy the discriminatory result only. This Court has yet to determine the appropriate remedy for that discriminatory result or whether SB 5, if enacted, would suffice, but it has already held (as has the Fifth Circuit) that the appropriate relief for a constitutional violation is much more expansive.

enacted law affected plaintiffs "in the same fundamental way" as the challenged law); *Cooper v. McBeath*, 11 F.3d 547, 551 (5th Cir. 1994) (holding that the voluntary cessation exception did not apply where amendments to the challenged law that "may lessen the burden placed on the Plaintiffs" were enacted several months after oral argument on appeal).  The "heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted).  This is not an instance where courts would be "justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009).  The legislators who passed SB 14 were acting not as "public servants," but as "self-interested private parties," *id.*, passing a discriminatory law to counter threats to their personal political power.  *See Perez*, 970 F. Supp. 2d at 602 (holding that the voluntary cessation exception did not apply because the Legislature "fail[ed] to meet their burden of demonstrating that the conduct alleged to violate § 2 and the Constitution with regard to the 2011 plans could not reasonably be expected to recur").  Only this Courts's continuing jurisdiction and a clear pronouncement tthat Texas's enactment of SB 14 violates the Constitution and the VRA will help protect against ongoing violations of this sort by the Legislature.  Texas cannot be trusted to refrain from reinstating the discriminatory practice it fought so long to preserve.

## IV.  PLAINTIFFS ARE ENTITLED TO RELIEF AND SHOULD NOT FACE FURTHER DELAY BASED ON HYPOTHETICAL LEGISLATION

Finally, indefinite delay based on pending legislation is unjustified where it will only prolong the harms that hundreds of thousands of Texas voters have suffered for too long already because of the discriminatory denial or abridgement of their fundamental right to vote.  It is true that there is now an interim remedy in place that is intended to ameliorate SB 14's discriminatory

*effects*.  But if this Court finds that SB 14 was enacted with a discriminatory *purpose*, then Texas must provide a remedy that "promises realistically to work, and promises realistically to work *now*."  *Harris v. Siegelman*, 695 F. Supp. 517, 530 (M.D. Ala. 1988) (quoting *Green v. Cty. Sch. Bd.*, 391 U.S. 430, 439 (1968)); *see also McCrory*, 831 F.3d at 240 ("laws passed with discriminatory intent … cannot stand" (emphasis omitted)).

For the reasons outlined above, any further delay is wholly unjustified.  Moreover, even if SB 5 were relevant—which it is not—tailoring the timing of this litigation to the preferences of the Texas Legislature is particularly unjustified because it has merely proposed a bill that, *if* passed and *if* approved by the Governor, may (depending on its final form) supersede parts of SB 14.  Permitting Texas to further delay these proceedings based only on the potential that the State *may*, at some unknown later date, cease its illegal conduct would invite gamesmanship.  After five years of litigation, during which time every court to rule on the question has held that the evidence in the record can support a finding that SB 14 was passed with a discriminatory intent, Plaintiffs are entitled to a ruling as soon as is practicable.

## V.     THE COURT SHOULD PROCEED WITH A TWO-STEP PROCESS

The Court has asked the parties to brief how SB 5 would affect the Court's process should it become law.  As the foregoing demonstrates, the case law clearly supports a two-step process.  First, this Court should determine whether the Texas Legislature enacted SB 14 with a discriminatory intent.  For the reasons given in their prior submissions and at oral argument, Private Plaintiffs submit that the Court should find that it was.  That finding will inform, but is not itself, a final judgment.  *See Lucas v. Bolivar Cty.*, 756 F.2d 1230, 1234 (5th Cir. 1985) (holding that a court order concerning a claim under section 2 of the VRA is not a final judgment, and therefore not appealable, where the relief requested had been neither denied nor granted).   Ideally, the Court should make its finding of discriminatory intent while the

Legislature is still in session, to allow the Legislature to react to that finding in its deliberations on any new legislation.

Next, the Court would consider what judgment to enter and what remedy to impose.  If, by that time, the Legislature has passed SB 5 or any other relevant bill, the Court must consider if and how such legislation contributes to the remedy of the harm caused by SB 14's discriminatory intent.  As the Fifth Circuit recognized, this is a distinct question from whether the amendments remedy any discriminatory result, because the remedy for intentional discrimination is broader and because the initial provisions of a discriminatory law have no legitimacy whatsoever.  *Veasey*, 830 F.3d at 268.

This two-step process will give the Legislature the benefit of a full adjudication of the Plaintiffs' claims should it wish to design any new, remedial legislation, and will allow this Court to avoid repetitious proceedings by waiting until the Legislature adjourns to enter a final judgment.  It will thus minimize delay, promote efficiency, and ensure that the Court's final judgment takes into account any legislative action that might be relevant to remedy.

## CONCLUSION

For the reasons stated above, and based on Private Plaintiffs' briefing and arguments on remand, Private Plaintiffs respectfully request that the Court promptly find that SB 14 was enacted with discriminatory intent.  Private Plaintiffs further request that the Court enter a final judgment regarding the remedy for the intent violation after it has reviewed any enactment by the Texas Legislature during the 2017 legislative session.


Date:  March 7, 2017                          Respectfully submitted,

                                              /s/ Janai Nelson
                                              SHERRILYN IFILL
                                              JANAI NELSON
                                              CHRISTINA A. SWARNS
                                              COTY MONTAG
                                              LEAH C. ADEN
                                              DEUEL ROSS
                                              NAACP Legal Defense and Educational Fund, Inc.
                                              40 Rector Street, 5th Floor
                                              New York, NY 10006

                                              JONATHAN PAIKIN
                                              KELLY P. DUNBAR
                                              TANIA FARANSSO
                                              THADDEUS C. EAGLES
                                              Wilmer Cutler Pickering Hale and Dorr LLP
                                              1875 Pennsylvania Avenue, NW
                                              Washington, DC 20006

                                              *Counsel for Imani Clark*

                                              /s/ Lindsey B. Cohan
                                              JON M. GREENBAUM
                                              EZRA D. ROSENBERG
                                              BRENDAN B. DOWNES
                                              Lawyers' Committee for
                                              Civil Rights Under Law
                                              1401 New York Avenue NW Suite 400
                                              Washington, D.C. 20005

WENDY WEISER
MYRNA PÉREZ
JENNIFER CLARK
The Brennan Center for Justice at NYU Law School
161 Avenue of the Americas, Floor 12
New York, New York 10013-1205

SIDNEY S. ROSDEITCHER
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

AMY L. RUDD
LINDSEY B. COHAN
Dechert LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701

NEIL STEINER
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Drive
San Antonio, Texas 98209

DANIEL GAVIN COVICH
Covich Law Firm LLC
Frost Bank Plaza
802 N Carancahua, Ste 2100
Corpus Christi, TX 78401

GARY BLEDSOE
Potter Bledsoe, LLP
316 W. 12th Street, Suite 307
Austin, Texas 78701

VICTOR GOODE
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215

ROBERT NOTZON
The Law Office of Robert Notzon
1502 West Avenue
Austin, Texas 78701

*Counsel for the Texas State Conference of NAACP Branches and the Mexican American Legislative Caucus of the Texas House of Representatives*

/s/ Chad W. Dunn
CHAD W. DUNN
K. SCOTT BRAZIL
BRAZIL & DUNN
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068

J. GERALD HEBERT
DANIELLE M. LANG
Campaign Legal Center
1411 K Street NW Suite 1400
Washington, DC 20005

ARMAND G. DERFNER
Derfner & Altman
575 King Street, Suite B
Charleston, S.C. 29403

NEIL G. BARON
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539

DAVID RICHARDS
Richards, Rodriguez & Skeith, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701

*Counsel for Veasey/LULAC Plaintiffs*

LUIS ROBERTO VERA, JR.
Law Office of Luis Roberto Vera Jr.
111 Soledad, Ste 1325
San Antonio, TX 78205

*Counsel for LULAC*

18

/s/ Marinda van Dalen
ROBERT W. DOGGETT
SHOSHANA J. KRIEGER
Texas RioGrande Legal Aid
4920 N. IH-35
Austin, Texas 78751

MARINDA VAN DALEN
Texas RioGrande Legal Aid
531 East St. Francis St.
Brownsville, Texas 78529

JOSE GARZA
Texas RioGrande Legal Aid
1111 N. Main Ave.
San Antonio, Texas 78212

*Counsel for Lenard Taylor, Eulalio Mendez Jr., Lionel Estrada, Estela Garcia Espinoza, Margarito Martinez Lara, Maximina Martinez Lara, and La Union Del Pueblo Entero, Inc.*

/s/ Rolando L. Rios
ROLANDO L. RIOS
115 E. Travis, Suite 1645
San Antonio, Texas 78205

*Counsel for the Texas Association of Hispanic County Judges and County Commissioners*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Lindsey B. Cohan
Lindsey B. Cohan
Dechert LLP
300 W. 6th Street, Suite 2010
Austin, Texas 78731
lindsey.cohan@dechert.com