IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |

**RESPONSE OF PRIVATE PLAINTIFFS TO DEFENDANTS' ADVISORY REGARDING RECORD EVIDENCE ON VOTER FRAUD**

Private Plaintiffs submit this response to the Advisory filed by Texas on March 7, 2017 purporting to provide the Court with "record evidence" of "the existence of in-person voter fraud." Tex. Advisory Regarding Record Evidence on Voter Fraud (Dkt. 1011) ("Tex. Advisory") at 1.

As it did at the February 28 hearing, (*see* Feb. 28, 2017 Hr'g Tr. (Dkt. 1008) at 82:18-85:21), in its Advisory, Texas tries to portray the evidence as much more than it is. When the evidence is accurately described, it is clear that it has all previously been reviewed and rejected by this Court in its initial finding of discriminatory intent. *Veasey v. Perry*, 71 F. Supp. 3d 627, 653 (S.D. Tex. 2014), *aff'd in part and remanded in part sub nom. Veasey v. Abbott*, 830 F.3d. 216 (5th Cir. 2016) (en banc) (finding that "the Texas Legislature had little evidence of in-person voter impersonation fraud" demonstrating a "significant factual disconnect between" the Legislature's stated goal of deterring in-person voter fraud "and the new voter restrictions"). Moreover, it is the same evidence that the Fifth Circuit reviewed and emphatically found

wanting. *See, e.g.*, *Veasey v. Abbott,* 830 F.3d at 237 (en banc) ("The district court also heard evidence that SB 14 is only tenuously related to the legislature's stated purpose of preventing voter fraud."); *id*. ("Here, too, there is evidence that could support a finding that the Legislature's race-neutral reason of ballot integrity offered by the State is pretextual."); *id*. at 238-39 ("But the evidence before the Legislature was that in-person voting, the only concern addressed by SB 14, yielded only two convictions for in-person voter impersonation fraud out of 20 million votes cast in the decade leading up to SB 14's passage."); *id.* at 239 ("We cannot say that the district court had to simply accept that legislators were really so concerned with this almost nonexistent problem.").[1] Furthermore, much of this evidence was not even before the 2011 Texas Legislature when SB 14 was under consideration, and therefore is not at all probative of the Legislature's intent in passing the bill. As the United States previously stated, the evidence put forth from Texas is nothing more than an "attempt[] to buttress the scant record of in-person voter impersonation" by "[i]nvoking the rare phenomenon of in-person voter impersonation in the abstract," which "[t]his Court should reject." USA Resp. Br. Concerning Discriminatory Intent (Dkt. 977) at 29.

For example, Texas claims Major Forest Mitchell testified that "he had investigated multiple instances of election fraud that were referred to the Texas Attorney General's Office for investigation since 2005." Tex. Advisory at 1. But the lines of deposition testimony cited by Texas say no such thing, rather they prove only that Major Mitchell investigated voter fraud during his tenure at the Special Investigations Unit ("SIU"), which he joined in 2005:

---

[1] For the reasons stated by Private Plaintiffs and the United States in their pre-hearing submissions to the Court, and by Private Plaintiffs at the February 28 hearing, the twin doctrines of law of the case and the mandate rule preclude Texas from re-litigating these issues on remand. Private Plaintiffs expressly rely on and incorporate those arguments herein.

> Q. How long have you worked specifically on the issue of investigating voter fraud as part of the many things you do?
>
> A. I would say since 2005.

Mitchell Section 5 Dep. (Dkt. 721-14) at 216:14-17.  This testimony makes no reference to the number of voter fraud investigations that Major Mitchell conducted while with the SIU, whether those investigations involved in-person voter impersonation fraud (the only type of fraud prevented by SB 14), or the outcome of those investigations.  Evidence of the outcome of his investigations does exist and it confirms that in-person voter impersonation fraud is exceedingly rare: Major Mitchell testified that from 2002 to 2011 there were only two instances of in-person voter impersonation referred to the SIU that could have been prevented by SB 14—testimony that was credited by both this Court and the Fifth Circuit as evidence supporting a finding of discriminatory intent.  *Veasey v. Perry*, 71 F. Supp. 3d at 639; *Veasey v. Abbott*, 830 F.3d at 238-39; *see also* Trial Tr. 171:20-25 (Mitchell) (Day 5); Plaintiffs' Proposed Findings of Fact (Dkt. 961) ("PFOF") at ¶¶ 139-40.

Texas's submission also mischaracterizes the testimony of Plaintiffs' expert, Dr. Lorraine Minnite, claiming that she testified that "she found four instances of in-person voter fraud in Texas since 2011." Tex. Advisory at 1.  This is not true.  As this Court detailed in its initial discriminatory intent finding, Dr. Minnite testified that she found four credible claims of in-person impersonation from 2000 to 2014, two of which "occurred after SB 14 was passed." *Veasey v. Perry*, 71 F. Supp. 3d at 630; *see also* Trial Tr. 134:23-135:20 (Minnite) (Day 5); PFOF at ¶ 140.  Thus, Dr. Minnite's testimony confirms Major Mitchell's testimony that, prior to SB 14, only two claims of in-person voter impersonation fraud were reported out of the more than twenty million votes cast in Texas from 2002 to 2010.  *See* PFOF at ¶¶ 139-40.

Nor does the testimony of another of Plaintiffs' experts, Randall Buck Wood, support Texas's claim that there is record evidence of in-person voter fraud. As this Court previously pointed out, Mr. Wood testified that "in over 44 years of investigating and litigating election issues, . . . he has never found a single instance of successful voter impersonation in an election contest." *Veasey v. Perry*, 71 F. Supp. 3d at 639-40; *see also* USA Resp. Br. Concerning Discriminatory Intent at 29 n.24 ("[T]he State's reliance on the testimony of Randall Buck Wood is misplaced because Mr. Wood has 'never seen' an election contest involving 'a voter trying to vote impersonating another voter.'") (citing Trial Tr. at 198:12-199:10 (Wood) (Day 2)). While Mr. Wood did testify that "he had litigated 'scores' of election contests" involving so-called "illegal voting," as he explained, most of the time "illegal voting" is used to refer to voters "who are not eligible to vote," but "[t]hey don't know that they're not eligible to vote." Trial Tr. at 197:24-198:11 (Wood) (Day 2). In fact, the case discussed by Mr. Wood cited by Texas as evidence of in-person voter fraud involved individuals who were legally registered to vote but should have been ineligible to do so because they had been convicted of felonies, were mentally incapacitated, or were no longer residents of the jurisdiction where they voted. *Id*. at 216:7-217:18. Thus, SB 14 would have done nothing to prevent these instances of so-called "illegal voting."

Other evidence discussed by Texas in its submission likewise has nothing to do with the existence of in-person voter impersonation fraud in Texas. For example, Texas cites testimony offered by officials from the Department of Justice and various United States Attorneys' offices that relied primarily upon data obtained from federal databases of election fraud prosecutions throughout the United States. *See* Tex. Advisory at 2. But Texas never attempted to do any analysis of this voluminous, nationwide data to determine and present to this Court the number

of election fraud crimes committed in Texas, the nature of the alleged election fraud crimes committed, or how many of these prosecutions resulted in convictions. Similarly misplaced is Texas's reliance on the legislative testimony of a Harris County election official concerning voter registration fraud and voting by the deceased, and the fact that the Legislature "took notice of the Carter-Baker Commission's observation of voter fraud in Wisconsin." Tex. Advisory at 3. As the United States previously noted, all of this evidence is irrelevant because "neither the fact that other election crimes have occurred in Texas and other states, nor the fact that Texas voter rolls contain some out-of-date records, would establish the existence of widespread in-person voter impersonation, which is 'the only concern addressed by SB 14.'" USA Resp. Br. Concerning Discriminatory Intent at 29 (quoting *Veasey v. Abbott*, 830 F.3d at 238). Furthermore, as this Court has stated, while Texas claimed that there is fraud in the form of deceased voting, it failed to present any concrete, non-anecdotal evidence of this, which "they could have done by comparing the deceased voter list against the list of those who have voted." *Veasey v. Perry*¸71 F. Supp. 3d at 640.

Texas also points to the legislative testimony of poll workers who claimed to have observed an individual voting more than once at their polling place, and the comment of Representative Aaron Peña during the hearings on SB 14 that "his campaign worker's father had voted against him despite that worker's father being deceased." Tex. Advisory at 2-3 (internal quotations omitted). These isolated, anecdotal, and unsubstantiated incidents of voter fraud cannot justify the enactment of an entire statutory scheme of photo voter identification, particularly where these incidents are contradicted by the testimony of "state agencies, state officials, advocacy groups, and the Attorney General's office," all of which made "clear that in-person voter impersonations were almost non-existent." *Veasey v. Perry*, 71 F. Supp. 3d at 657.

Further, for reasons unknown and as this Court has pointed out, Texas chose not to call these poll workers or Representative Peña as witnesses at trial to testify to these incidents. *See* Feb. 28, 2017 Hr'g Tr. at 83:22-84:3. Accordingly, these anecdotes cannot be credited as proof of fraud in a court proceeding.

Finally, Texas's claim that the evidence it presented "far exceeds the evidence that the Supreme Court held to be sufficient in *Crawford*" is wrong. The Fifth Circuit expressly "reject[ed] the argument that *Crawford* mandates upholding SB 14 simply because the State expressed legitimate justifications for passing the laws." *Veasey v. Abbott*, 830 F.3d at 248-49. Thus, as the United States has correctly argued, "even if bill proponents aimed to eliminate in-person voter impersonation and increase voter confidence, this Court must nonetheless determine whether those purposes fully explain SB 14's terms." USA Resp. Br. Concerning Discriminatory Intent at 5 (citing *Veasey v. Abbott*, 830 F.3d at 231). Both this Court and the Fifth Circuit closely examined all of the evidence of in-person voter fraud presented at trial and found it to be insufficient to justify the strictest voter ID law in the country. To the contrary, both courts found that the scant evidence of in-person voter fraud establishes that the Legislature's claims of combatting in-person voter impersonation were pretextual and supports a finding of discriminatory intent. *Veasey v. Perry*, 71 F. Supp. 3d at 653; *Veasey v. Abbott*, 830 F.3d at 237-39, 241.

Date: March 15, 2017                     Respectfully submitted,

/s/ Lindsey B. Cohan
AMY L. RUDD
LINDSEY B. COHAN
Dechert LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701

6

JON M. GREENBAUM
EZRA D. ROSENBERG
BRENDAN B. DOWNES
Lawyers' Committee for
Civil Rights Under Law
1401 New York Avenue NW Suite 400
Washington, D.C. 20005

WENDY WEISER
MYRNA PÉREZ
JENNIFER CLARK
The Brennan Center for Justice at NYU Law School
161 Avenue of the Americas, Floor 12
New York, New York 10013-1205

SIDNEY S. ROSDEITCHER
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

NEIL STEINER
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Drive
San Antonio, Texas 98209

DANIEL GAVIN COVICH
Covich Law Firm LLC
Frost Bank Plaza
802 N Carancahua, Ste 2100
Corpus Christi, TX 78401

GARY BLEDSOE
Potter Bledsoe, LLP
316 W. 12th Street, Suite 307
Austin, Texas 78701

VICTOR GOODE
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215

7

ROBERT NOTZON
The Law Office of Robert Notzon
1502 West Avenue
Austin, Texas 78701

*Counsel for the Texas State Conference of NAACP Branches and the Mexican American Legislative Caucus of the Texas House of Representatives*

/s/ Janai Nelson
SHERRILYN IFILL
JANAI NELSON
CHRISTINA A. SWARNS
COTY MONTAG
LEAH C. ADEN
DEUEL ROSS
NAACP Legal Defense and Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

JONATHAN PAIKIN
KELLY P. DUNBAR
TANIA FARANSSO
THADDEUS C. EAGLES
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel for Imani Clark*


/s/ Chad W. Dunn
CHAD W. DUNN
K. SCOTT BRAZIL
BRAZIL & DUNN
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068

J. GERALD HEBERT
DANIELLE M. LANG
Campaign Legal Center
1411 K Street NW Suite 1400
Washington, DC 20005

ARMAND G. DERFNER
Derfner & Altman
575 King Street, Suite B
Charleston, S.C. 29403

NEIL G. BARON
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539


DAVID RICHARDS
Richards, Rodriguez & Skeith, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701

*Counsel for Veasey/LULAC Plaintiffs*

LUIS ROBERTO VERA, JR.
Law Office of Luis Roberto Vera Jr.
111 Soledad, Ste 1325
San Antonio, TX 78205

*Counsel for LULAC*


/s/ Rolando L. Rios
ROLANDO L. RIOS
115 E. Travis, Suite 1645
San Antonio, Texas 78205
*Counsel for the Texas Association of Hispanic County Judges and County Commissioners*


/s/ Marinda van Dalen
ROBERT W. DOGGETT
SHOSHANA J. KRIEGER
Texas RioGrande Legal Aid
4920 N. IH-35
Austin, Texas 78751

MARINDA VAN DALEN
Texas RioGrande Legal Aid
531 East St. Francis St.
Brownsville, Texas 78529

JOSE GARZA
Texas RioGrande Legal Aid
1111 N. Main Ave.
San Antonio, Texas 78212

*Counsel for Lenard Taylor, Eulalio Mendez Jr., Lionel Estrada, Estela Garcia Espinoza, Margarito Martinez Lara, Maximina Martinez Lara, and La Union Del Pueblo Entero, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Lindsey B. Cohan
Lindsey B. Cohan
Dechert LLP
300 W. 6th Street, Suite 2010
Austin, Texas 78731
lindsey.cohan@dechert.com