IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 2:13-cv-193 (NGR) |
| ) | [Lead Case] |
| GREG ABBOTT, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**UNITED STATES' MEMORANDUM IN RESPONSE TO PRIVATE
PLAINTIFFS' MARCH 7 BRIEF**

The United States respectfully submits this response to Private Plaintiffs' March 7 Brief Regarding Effect of New Voter ID Legislation on this Case, Mar. 7, 2017 (ECF No. 1010) ("Pls.' Br."), in which they describe their position on the United States' Motion for Voluntary Dismissal of Discriminatory Purpose Claim Without Prejudice, Feb. 27, 2017 (ECF No. 1001) ("U.S. Mot.").

First, the United States' motion to dismiss its purpose claim without prejudice should be granted. No party opposes the motion, *see* Pls.' Br. at 1, and no party would be prejudiced by dismissal of the United States' purpose claim. In those circumstances, and consistent with the Federal Rules of Civil Procedure's liberal pleading standards, there is no reason to deny the United States leave to voluntarily dismiss one claim in this multi-claim lawsuit. *See Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 662 n.10 (5th Cir. 1979) (plaintiff may voluntarily "eliminate less than all of the claims, but without dismissing any adverse party" provided it "obtain[s] either leave of court or the written consent of [adverse party]"); 3 *Moore's Fed. Practice – Civil* ¶ 15.16-6 ("When a party seeks to voluntarily dismiss some, rather than all, of

1

the claims in a multi-count complaint, a court should consider the motion to be a request for leave to amend under Rule 15" and "the court should freely grant leave to amend.").

Second, the United States agrees with Private Plaintiffs that the Court should first enter findings with respect to their purpose claim before the Court either (1) considers, in a separate proceeding with additional briefing, the question of a permanent remedy, if any, or (2) enters judgment. *See* Pls.' Br. at 14-15; *see, e.g.*, *Rodriguez v. Harris Cnty.*, 964 F. Supp. 2d 686, 745 (S.D. Tex. 2013), *aff'd sub nom. Gonzalez v. Harris Cnty.*, 601 F. App'x 255 (5th Cir. 2015) ("every Section 2 case may be divided into two phases: a liability phase . . . and a remedy phase"). In the first place, "since the nature of the violation determines the scope of the remedy," *Milliken v. Bradley*, 418 U.S. 717, 749 (1974), the parties cannot brief the question of, and the Court cannot enter, a permanent remedy until after the Court has made findings regarding "the nature of the violation," if any, on the remaining claims in the case.

Moreover, as a matter of federalism and comity, "courts clearly defer to the legislature in the first instance to undertake remedies for violations of § 2." *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 406 (5th Cir. 1991); *see also Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109, 1124 (5th Cir. 1991); U.S. Mot. at 1-2. Thus, the United States agrees with Private Plaintiffs that, should the Court find that further remedial proceedings are necessary, the Court should defer those proceedings until after the Legislature adjourns on May 29, 2017. Indeed, any new state voter ID legislation that the Texas Legislature enacts during this session may bear directly on the question of the appropriate relief here, as the Fifth Circuit has made clear and even Private Plaintiffs acknowledge. *Veasey v. Abbott*, 830 F.3d 216, 271 (5th Cir. 2016) (en banc); Pls.' Br. at 15. Waiting until the close of the legislative session before proceeding with a judicial remedy will, as Private Plaintiffs correctly

note, "avoid repetitious proceedings," "minimize delay," and "promote efficiency" and judicial economy. Pls.' Br. at 15.

Private Plaintiffs suggest in passing that this rule of federal judicial deference to state legislative remedies "applies in the discriminatory *effects* arena, not where there is discriminatory intent." Pls.' Br. at 10 n.3 (emphasis in original). That is simply incorrect: even in the context of an Equal Protection Clause violation—which requires proof of intentional discrimination—the Supreme Court has held that "whenever practicable" the district court should "afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect" its own remedy. *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978). Thus, the Court should allow the Texas Legislature the first opportunity to "adopt[] a substitute measure" to remedy any effect or purpose violation found in this case. *Id.*

Finally, as the United States has explained, the Court also should forbear from resolving Private Plaintiffs' purpose claim until after the end of the current legislative session, during which the Texas Legislature is actively considering a legislative amendment to its voter ID law as S.B. 5 and H.B. 2481. *See* U.S. Mot. at 1–5. The *en banc* Fifth Circuit vacated the Court's purpose finding and directed the Court on remand "to reexamine the discriminatory purpose claim in accordance with the proper legal standards . . . bearing in mind the effect any interim legislative action with respect to SB 14 may have." *Veasey*, 830 F.3d at 272. The Fifth Circuit further elaborated:

> [A]ny new law would present a new circumstance not addressed here. Such a new law may cure the deficiencies addressed in this opinion. Neither our ruling here nor any ruling of the district court on remand should prevent the Legislature from acting to ameliorate the issues raised in this opinion. Any concerns about a new bill would be the subject of a new appeal for a new day.

3

*Id.* at 271.  The Fifth Circuit explained that "appropriate amendments" to SB 14 "might include a reasonable impediment or indigency exception."  *Id.* at 270.

In other words, the Fifth Circuit determined that a new law will "bear" on the "purpose claim" that the Court is "reexamin[ing]" on remand.  *Id.* at 272.  In fact, a new law may "ameliorate the issues" that the Fifth Circuit "raised" and "cure the deficiencies" that the Fifth Circuit relied upon in remanding the purpose claim.  *Id.* at 271.  For example, a new law may eliminate what the Fifth Circuit held to be a "disproportionate effect of the [current law] on minorities," may put into place "ameliorative measures that might . . . lessen[] this impact," and may be enacted without "radical departures from normal procedures."  *Id.* at 236-37; U.S. Mot. at 3-4.

The Fifth Circuit determined that, under the circumstances of the then-impending 2016 federal and statewide general elections, it was not "practicable" to follow that course when it issued its *en banc* opinion.  *Veasey*, 830 F.3d at 270; U.S. Mot. at 3.  But those circumstances have now changed dramatically: there are no impending federal or statewide elections; the Texas Legislature is currently convened in its biennial legislative session and is actively considering new voter ID legislation; and the State has asked this Court to "defer to the Legislature in the first instance."  *Veasey*, 830 F.3d at 270.  Under these changed circumstances, it is "appropriate" and "practicable" for the Court to allow the Texas Legislature the first opportunity to address the issues raised in the Fifth Circuit's opinion, before conducting any further proceedings or deciding any more issues in the case.  *Wise*, 437 U.S. at 540; *see also* U.S. Mot. at 3-4.

Private Plaintiffs attempt to sweep aside these plain directives of the Fifth Circuit as applying only to the remedy for the parties' effect claims.  *See* Pls.' Br. at 5-9.  But Private Plaintiffs cannot rewrite the Fifth Circuit's unambiguous instruction that this Court should

"bear[] in mind the effect any interim legislative action with respect to SB 14 may have" when it "reexamine[s] the discriminatory purpose claim in accordance with the proper legal standards." *Veasey*, 830 F.3d at 272.  That instruction is now the "law of the case" and "govern[s]" the Court's proceedings on remand.  *Arizona v. California*, 460 U.S. 605, 618 (1983).

In all events, if the Court has any doubt as to how to proceed at this juncture, it should forbear from resolving Private Plaintiffs' purpose claim until after the end of the current legislative session.  This course will serve judicial economy by avoiding the unnecessary duplication that would occur if the Court decides the purpose issue now on the current record, briefing, and argument, and later is required to resolve it again on a new record, new briefing, and new arguments if Texas enacts a new voter ID law.  Moreover, no Texas voter faces any harm from this course because the Court's interim remedy—to which all parties agreed—will continue to govern any elections held between now and the end of the legislative session, and the Court will have more than ample time to craft a final judicial remedy, if any, before the next federal and statewide general elections*.  See* U.S. Mot. at 1-5.

Date: March 16, 2017

ABE MARTINEZ
Acting United States Attorney
Southern District of Texas

Respectfully submitted,

JOHN M. GORE
Deputy Assistant Attorney General
Civil Rights Division

*/s/  John M. Gore*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
RICHARD DELLHEIM
BRUCE I. GEAR
DANIEL J. FREEMAN
SAMUEL OLIKER-FRIEDLAND
ZACHARY P. JONES
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

*Counsel for the United States*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


                   */s/  Daniel J. Freeman*