UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-193 |
| | § | |
| GREG ABBOTT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON CLAIM OF DISCRIMINATORY PURPOSE

After en banc review of the record in this case, the Fifth Circuit majority held that there was sufficient evidence to sustain a conclusion that the Texas voter photo identification bill, SB 14,[1] was passed with a discriminatory purpose, despite its proponents' assertions that it was necessary to combat voter fraud. *Veasey v. Abbott*, 830 F.3d 216, 241 (5th Cir. 2016) (*Veasey II*). At the same time, the Fifth Circuit held that certain evidence outlined in this Court's prior opinion[2] was not probative of discriminatory intent and posited that this Court may have been unduly swayed by that evidence in making its determination of this issue.

To test that theory, and because "it is not an appellate court's place to weigh evidence,"[3] the Court remanded the matter to this Court. This Court is thus charged with reexamining the probative evidence underlying Plaintiffs' discriminatory purpose claims weighed against the contrary evidence, in accord with the appropriate legal standards the

---

[1] Texas Senate Bill 14, Act of May 16, 2011, 82d Leg., R.S., ch. 123, 2011 Tex. Gen. Laws 619.

[2] *Veasey v. Perry*, 71 F.Supp.3d 627, 633 (S.D. Tex. 2014).

[3] *Veasey II*, at 241 (citing *Price v. Austin Indep. Sch. Dist.*, 945 F.2d 1307, 1317 (5th Cir. 1991)).

1 / 10

Fifth Circuit has described. *Veasey II*, at 242. The Fifth Circuit instructed that this Court was not to reopen the evidence, but to rely on the record developed at the bench trial of this case, held in September 2014. *Veasey II*, at 242.

Consistent with those instructions, the Court permitted the parties to propose new findings of fact and conclusions of law and re-brief the issue. *See* D.E. 960, 961, 962, 963, 965, 966, 975, 976, 977, 979, 980. On February 28, 2017, the Court heard oral argument. After appropriate reconsideration and review of the record, and for the reasons set out below, the Court holds that Plaintiffs have sustained their burden of proof to show that SB 14 was passed, at least in part, with a discriminatory intent in violation of the Voting Rights Act of 1965 § 2, 52 U.S.C. § 10301(a).

## STANDARD OF REVIEW

The rubric for the question—whether SB 14 was passed with a discriminatory purpose—was set out in the Supreme Court's decision, *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-68 (1977). *Veasey II*, at 230. Under *Arlington Heights*, discriminatory intent is shown when racial discrimination was a motivating factor in the governing body's decision. Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,'. . . its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal citations and footnotes omitted). Racial discrimination need not be the primary purpose as long as it is one purpose. *Velasquez v. City of Abilene*, 725 F.2d 1017, 1022 (5th Cir. 1984).

Rather than attempt to discern the motivations of particular legislators, the Court considers all available direct and circumstantial evidence of intent, "including the normal inferences to be drawn from the foreseeability of defendant's actions." *United States v. Brown*, 561 F.3d 420, 433 (5th Cir. 2009) (internal quotation marks and citations omitted). The Supreme Court in *Arlington Heights* considered the following factors as informing the intent decision:

> (1) The disparate impact of the legislation;
>
> (2) Whether there is a clear pattern, unexplainable on grounds other than race, which emerges from the effect of the state action even when the governing legislation appears neutral on its face;
>
> (3) The historical background of the decision;
>
> (4) Whether the decision departs from normal procedural practices;
>
> (5) Whether the decision departs from normal substantive concerns of the legislature, such as whether the policy justifications line up with the terms of the law or where that policy-law relationship is tenuous; and
>
> (6) Contemporaneous statements by the decisionmakers and in meeting minutes and reports.[4]

*Arlington Heights, supra* at 266 (paraphrased). If Plaintiffs' evidence establishes that discriminatory purpose was at least one of the substantial or motivating factors behind passage of SB 14, "the burden shifts to the law's defenders to demonstrate that the law

---

[4] This includes the legislative drafting history, which can offer interpretive insight when the legislative body rejected language or provisions that would have achieved the results sought in Plaintiffs' interest. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 579-80 (2006).

would have been enacted without this factor." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985).

## DISCUSSION

### 1. Disparate Impact

This Court found that SB 14 had a discriminatory impact, supporting Plaintiffs' results claim under Section 2. *Veasey v. Perry*, 71 F. Supp. 3d 627, 659-79 (S.D. Tex. 2014) (*Veasey I*). With one exception,[5] the related findings in part IV(B) and conclusions in part VI(B)(1) were undisturbed on appeal and the Fifth Circuit affirmed the discriminatory result claim. *Veasey II*, at 264-65. Without setting forth the associated findings at length, this Court adopts its prior findings and conclusions, with the exception of those related to the potential effect of racial appeals in political campaigns. Plaintiffs have satisfied the disparate impact factor of the discriminatory purpose analysis.

### 2. Pattern Unexplainable on Non-Racial Grounds

In parts IV(A)(4) and (5) of this Court's prior opinion, it detailed a number of efforts, which the Texas legislature rejected, that would have softened the racial impact of SB 14. *Veasey I*, at 651-53 & Appendix. For instance, amendments were proposed to allow additional types of photo identification, a more liberal policy on expired documents, easier voter registration procedures, reduced costs for obtaining necessary ID, and more voter education regarding the requirements. At the same time, there was no substance to the justifications offered for the draconian terms of SB 14, noted in part

---

[5] The Fifth Circuit did not overturn the fact finding, but held that anecdotal evidence of racial campaign appeals did not necessarily show that SB 14 abridged the right to vote. *Veasey II*, at 261. On remand, this Court assigns no weight to that anecdotal evidence.

IV(A)(6) of the opinion. *Veasey I*, at 653-59. This Court then concluded, in part VI(B) of the opinion, that these efforts revealed a pattern of conduct unexplainable on non-racial grounds, to suppress minority voting. *Veasey I*, at 694-703.

In connection with the discriminatory purpose analysis, the Fifth Circuit wrote, approving of this evidence:

> The record shows that drafters and proponents of SB 14 were aware of the likely disproportionate effect of the law on minorities, and that they nonetheless passed the bill without adopting a number of proposed ameliorative measures that might have lessened this impact. For instance, the Legislature was advised of the likely discriminatory impact by the Deputy General Counsel to the Lieutenant Governor and by many legislators, and such impact was acknowledged to be "common sense" by one of the chief proponents of the legislation.

*Veasey II*, at 236. This is some evidence of a pattern, unexplainable on grounds other than race, which emerges from the effect of the state action even when the governing legislation appears neutral on its face. Again, without setting forth the associated findings at length, this Court adopts its prior findings and conclusions with respect to the pattern of conduct unexplainable on grounds other than race factor.

### 3. Historical Background

In discussing SB 14's historical background for purposes of the discriminatory intent analysis, this Court included a prefatory sentence referencing Texas's long history of discriminatory practices, which was set out in a separate section of the opinion. *Veasey I*, at 700. The Court's reference was for context only. Treated as only providing

perspective, the Court did not, and does not, assign distant history any weight in the discriminatory purpose analysis.

With respect to the question at hand, the Fifth Circuit held that historical evidence, to be relevant, must be "reasonably contemporaneous." *Veasey II*, at 232 (citing *McCleskey v. Kemp*, 481 U.S. 279, 298 n.20 (1987) and *Shelby Cty. v. Holder*, ___ U.S. ___, 133 S.Ct. 2612, 2618-19 (2013). The evidence upon which the Court previously relied dated from 2000 forward. *Veasey I*, at 700 (part VI(B)(2)(Historical Background)). Included was the contemporary seismic demographic shift by which Texas had become a majority-minority state and polarized voting patterns allowing the suppression of the overwhelmingly Democratic votes of African–Americans and Latinos to provide an Anglo partisan advantage. The Fifth Circuit found no fault with this evidence and this Court adopts these findings anew.

The Fifth Circuit also credited other historical events from the 1970s forward.

> [A]s late as 1975, Texas attempted to suppress minority voting through purging the voter rolls, after its former poll tax and re-registration requirements were ruled unconstitutional. It is notable as well that "[i]n every redistricting cycle since 1970, Texas has been found to have violated the [Voting Rights Act] with racially gerrymandered districts." Furthermore, record evidence establishes that the Department of Justice objected to at least one of Texas's statewide redistricting plans for each period between 1980 and the present, while Texas was covered by Section 5 of the Voting Rights Act. Texas "is the only state with this consistent record of objections to such statewide plans." Finally, the same Legislature that passed SB 14 also passed two laws found to be passed with discriminatory purpose.

*Veasey II*, at 239-40 (citations and footnotes omitted). The Court recognizes that the Fifth Circuit credits this evidence in the discriminatory purpose calculus whereas this Court had not previously done so. While this Court now also credits this evidence, the weight assigned to it is not outcome-determinative here.

Consistent with the Fifth Circuit opinion, in re-weighing this issue, the Court confirms that it does not rely on the evidence of Waller County officials' efforts to suppress minority votes and the redistricting cases for the discriminatory purpose analysis. The Court finds that reasonably contemporaneous history supports a discriminatory purpose finding.

4. **Departures From Normal Practices**

In part IV(A) of its prior opinion, this Court detailed the extraordinary procedural tactics used to rush SB 14 through the legislative process without the usual committee analysis, debate, and substantive consideration of amendments. *Veasey I*, at 645-53. The Fifth Circuit agreed that the Court can credit these "virtually unprecedented" radical departures from normal practices. *Veasey II*, at 238. Without setting forth the associated findings at length, this Court adopts its prior findings and conclusions with respect to the factor addressing departures from normal practices.

5. **Legislative Drafting History**

Proponents touted SB 14 as a remedy for voter fraud, consistent with efforts of other states. As previously demonstrated, the evidence shows a tenuous relationship between those rationales and the actual terms of the bill. "[T]he evidence before the Legislature was that in-person voting, the only concern addressed by SB 14, yielded only

two convictions for in-person voter impersonation fraud out of 20 million votes cast in the decade leading up to SB 14's passage." *Veasey II*, at 240. The evidentiary support for SB 14 offered at trial was no better. And the bill did nothing to address mail-in balloting, which is much more vulnerable to fraud. *See generally*, *Veasey I*, at 641, 653-55.

Furthermore, the terms of the bill were unduly strict. Many categories of acceptable photo IDs permitted by other states were omitted from the Texas bill. The period of time for which IDs could be expired was shorter in SB 14. Fewer exceptions were made available. And the burdens imposed for taking advantage of an exception were heavier with SB 14. The State did not demonstrate that these features of SB 14 were necessarily consistent with its alleged interest in preventing voter fraud or increasing confidence in the electoral system. These and other similar issues were detailed by this Court in parts III(B) and IV(A)(4) of its previous opinion, along with the Appendix. *Veasey I*, at 642-45, 651-52 & Appendix.

Also evidencing the disconnect between the legislature's stated purposes and the terms of SB 14 were the constantly shifting rationales, revealed as pretext and detailed at part IV(A)(6) of the opinion. *Veasey I*, at 653-59. SB 14 was pushed through in a manner contrary to the legislature's stated prohibition against bills accompanied by a fiscal note. *Veasey I*, at 649 (part IV(A)(2)(Questionable Fiscal Note)), 651 (part IV(A)(3)(Fiscal Note, Impact Study, and Emergency)). This was due to a $27 million budget shortfall—a crisis the legislature needed to address. SB 14 added $2 million to the budget shortfall. And other pressing problems facing the legislature did not get the

procedural push that SB 14 received. So not only did SB 14 not accomplish what it was supposed to, it did accomplish that which it was not supposed to do.

The Fifth Circuit approved of the consideration of the tenuousness of the relationship between the legislature's policies and SB 14's terms. It also found the fiscal note issue relevant. And the Court is permitted to credit evidence of pretext. *Veasey II*, at 237-41. The Court thus adopts its previous findings and conclusions with respect to the legislative drafting history. *Veasey I*, at 701-02.

### 6. Contemporaneous statements

In part VI(B)(2)(Contemporaneous Statements), this Court discussed the evidence offered regarding legislator observations of the political and legislative environment at the time SB 14 was passed. *Veasey I*, at 702. The Fifth Circuit found much of this undisputed and unchallenged evidence to be infirm as speculative, not statistically significant, or not probative of legislator sentiment. *Veasey II*, at 233-34. Thus this Court assigns no weight to the evidence previously discussed, except for Senator Fraser, an author of SB 14, stating that the Voting Rights Act had outlived its useful life and the fact that the legislature failed to adopt ameliorative measures without explanation, which was shown to be out of character with sponsors of major bills. *See Veasey II*, at 236-37 (approving of the consideration of this evidence). While crediting this evidence, the Court assigns it little weight.

## CONCLUSION

Because the Fifth Circuit found that some of the evidence in this case was not probative of a discriminatory purpose in the Texas Legislature's enactment of SB 14, this

Court was tasked with re-examining its conclusion on the discriminatory purpose issue. Upon reconsideration and a re-weighing of the evidence in conformity with the Fifth Circuit's opinion, the Court holds that the evidence found "infirm" did not tip the scales. Plaintiffs' probative evidence—that which was left intact after the Fifth Circuit's review—establishes that a discriminatory purpose was at least one of the substantial or motivating factors behind passage of SB 14. Consequently, the burden shifted to the State to demonstrate that the law would have been enacted without its discriminatory purpose. *Hunter*, 471 U.S. at 228. The State has not met its burden. Therefore, this Court holds, again, that SB 14 was passed with a discriminatory purpose in violation of Section 2 of the Voting Rights Act.

ORDERED this 10th day of April, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE