UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> GREG ABBOTT, *et al.*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 2:13-CV-00193 |

**DEFENDANTS' ADVISORY REGARDING PASSAGE AND SIGNATURE OF SENATE BILL 5**

Defendants file this advisory to notify the Court that Governor Greg Abbott has signed Senate Bill 5 (SB 5). *See* Exhibit A. Among other provisions, SB 5 adopts a reasonable-impediment-declaration procedure allowing voters who do not have and cannot reasonably obtain a qualifying photo ID to cast a regular ballot upon execution of a reasonable-impediment declaration.

Procedural history.

1. On August 22, 2016, defendants urged the Court to withhold further consideration of plaintiffs' discriminatory-purpose claims until the Texas Legislature had a reasonable opportunity to consider legislation addressing any alleged legal violations regarding its voter-ID law, and defendants advised the Court that the part-time Texas Legislature would convene in regular session on January 10, 2017, and adjourn no later than May 29, 2017. Defendants' Proposed Briefing Schedule for Claims of Discriminatory Purpose at 3 (Aug. 22, 2016), ECF No. 916.

2. On August 23, 2016, defendants advised the Court that the possibility of legislative action on the State's photo-voter-ID law was not merely speculative, as Governor Abbott informed the Office of the Attorney General that he would support legislation during the 2017 legislative session to modify the State's law to comply with the Fifth Circuit's decision. Defendants' Response to Plaintiffs' and the United States' Proposed Briefing Schedules for Claims of Discriminatory Purpose at 1 (Aug. 23, 2016), ECF No. 921. The Court rejected defendants' proposal to give the Legislature an opportunity to act before addressing plaintiffs' discriminatory-purpose claims. Order Setting Deadlines for Briefing at 1 (Aug. 25, 2016), ECF No. 922.

3. On February 22, 2017, defendants and the United States filed a joint motion seeking a continuance of the hearing scheduled for February 28, 2017, because the Texas Senate had introduced SB 5, a voter-identification bill creating a reasonable-impediment-declaration procedure, which was jointly authored by twenty of the Senate's thirty-one total Members. Joint Motion to Continue February 28, 2017 Hearing on Plaintiffs' Discriminatory Purpose Claims at 1 (Feb. 22, 2017), ECF No. 995. The motion requested a continuance of the hearing until after June 18, 2017, the date by which the Governor must sign a bill into law or veto legislation from the 2017 legislative session. *Id.* at 3.

4. The United States moved to voluntarily dismiss its discriminatory-purpose claim, citing this pending legislation. United States' Mot. for Voluntary Dismissal of Discriminatory Purpose Claim Without Prejudice at 2-5 (Feb. 27, 2017), ECF No. 1001. The United States cited the Fifth Circuit's instruction that, "on remand,

2

the record on plaintiffs' discriminatory-purpose claim must be 'supplemented . . . by legislative action, if any, that occurs after . . . remand,' and that this Court must 'bear[] in mind the effect any interim legislative action taken with respect to SB 14 may have.'" *Id.* at 1 (quoting *Veasey v. Abbott*, 830 F.3d 216, 271-72 (5th Cir. 2016) (en banc)). It also noted the Fifth Circuit's statement that "'appropriate amendments' to the law challenged in this case 'might include a reasonable impediment or indigency exception similar to those adopted, respectively, in North Carolina or Indiana.'" *Id.* at 2 (quoting *Veasey*, 830 F.3d at 270).

     5. During the February 28, 2017 hearing on plaintiffs' discriminatory-purpose claims, the United States and defendants again advised the Court that the Texas Legislature was considering new voter-ID legislation. Tr. 7:11-16:8 (Feb. 28, 2017), ECF No. 1006. As the defendants noted, SB 5 as introduced tracked the interim remedy put in place by this Court—which was agreed to by both defendants and plaintiffs—following the en banc Fifth Circuit's decision affirming in part and reversing in part this Court's original decision on plaintiffs' claims. Tr. 15:14-16:4, 23:1-7.

     6. As requested by the Court, the parties subsequently filed briefs addressing what effect the enactment of SB 5 would have on these proceedings. In their brief, defendants advised the Court that the Texas Senate State Affairs Committee had passed SB 5 out of committee by a unanimous, bipartisan vote. Defs.' Br. Regarding the Effect of Voter-ID Legislation on Pls.' Claims of Intentional Racial Discrimination at 1 n.1 (Mar. 14, 2017), ECF No. 1015.

7. On March 29, 2017, defendants advised the Court that the Texas Senate passed SB 5 to engrossment on March 28, 2017, and that the Texas House of Representatives would consider the bill. Defs.' Advisory Regarding Legislative Action to Amend Texas's Voter-ID Law (March 29, 2017), ECF No. 1021.

Senate Bill 5.

8. Yesterday, May 31, 2017, Governor Greg Abbott signed into law SB 5, which the Texas Legislature enacted on May 29, 2017. *See* Texas Legislature Online, History of Senate Bill 5 in the 85th Legislature, http://www.capitol.state.tx.us/BillLookup/Actions.aspx?LegSess=85R&Bill=SB5.

9. The law as enacted tracks the interim remedy ordered by this Court and agreed to by plaintiffs and defendants: it provides a reasonable-impediment exception (to the requirement that in-person voters must show certain types of photo ID) for those who do not have and cannot reasonably obtain a qualifying photo ID; it expands the list of acceptable forms of identification; it extends the period within which an expired form of identification may still be accepted for voting; and it formally provides a statutory requirement of mobile locations for obtaining identification certificates for voting purposes.

10. Section 1 of SB 5 amends the Election Code to statutorily require the Secretary of State to establish a program using mobile units to provide free election identification certificates to voters for the purpose of satisfying the voter identification requirement for acceptance as a voter. The bill authorizes a mobile unit to be

used at special events or at the request of a constituent group and prohibits the Secretary of State from charging a fee to a group that requests such a mobile unit. While mobile EIC units were not previously required by statute, the State has provided mobile EIC units under a program administered by the Department of Public Safety, the Secretary of State's office, and individual counties. *See* Defendants' Proposed Findings of Fact ¶¶ 30-31 (Nov. 18, 2016), ECF No. 966.

11. Sections 2, 3, 5, and 6 of SB 5 amend the Election Code to provide a reasonable-impediment exception to voters who lack one of the necessary forms of photo identification. The reasonable-impediment exception allows a person to vote in-person at the polls without producing one of the necessary forms of photo identification if two requirements are met. The first requirement is that the voter provide either a government document that shows the name and address of the voter, including the voter's voter-registration certificate; a certified copy of a domestic birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity; or one of the following documents if it shows the name and address of the voter: a copy of a current utility bill, a bank statement, a government check, or a paycheck. SB 5 makes clear that election officers may not refuse to accept this documentation solely because the address on the documentation does not match the address on the voter roll. The second requirement is that the voter execute a declaration averring that the voter could not reasonably obtain the necessary photo identification because of one of seven enumerated bases—all of which track the interim remedy entered by this Court: lack of transportation, lack of birth certificate or

5

other documents needed to obtain the necessary identification, work schedule, lost or stolen identification, disability or illness, family responsibilities, or that the voter has applied for the necessary identification but has not received it.[1] A person who intentionally makes a false statement or provides false information on a reasonable-impediment declaration has committed a state jail felony.

    12. Section 5 of SB 5 also provides for greater use of expired photo identification. It increases from 60 days to four years the amount of time that a form of necessary photo identification can be expired and still be used to verify a voter's identity. It also provides that voters 70 years of age or older can use a form of necessary photo identification that has been expired for any length of time. Voters under 70 whose ID is more than four years expired may still cast a regular ballot by using the expired

---

[1] In contrast to the interim remedy, SB 5 does not permit the voter to vote after merely selecting an "other" box and filling in any reason the voter happens to give; under the interim remedy, a voter was permitted to vote regardless of what explanation was given for an "other" impediment—including explanations that indisputably could not constitute a reasonable impediment. *Cf.* DallasNews.com, *Hundreds of Texans May Have Voted Improperly, AP reports*, https://perma.cc/EAP4-69SH (Fed. 18, 2017) ("An Associated Press analysis of roughly 13,500 affidavits submitted in Texas' largest counties found at least 500 instances in which voters were allowed to get around the law by signing an affidavit and never showing a photo ID, despite indicating that they possessed one. Others used the sworn declarations to lodge protest statements against the law. One affidavit from Hidalgo County, along the Texas-Mexico border, read: 'Did not want to "pander" to government requirement.' In Tarrant County, an election judge noted on an affidavit: 'Had photo ID but refused to show it.'").

    The legislative history of SB 5 confirms that the Legislature did not include an "other" box on the affidavit because this precise problem occurred in the 2016 elections under the interim remedy. *See* Video: Texas House of Representatives, Statement of Rep. Phil King During Floor Debate of SB 5, beginning at 3:38:49 (May 24, 2017), http://tlchouse.granicus.com/MediaPlayer.php?view_id=39&clip_id=14100.

ID to execute a reasonable impediment declaration (because that document is a government document listing the person's address).

13. Finally, SB 5 also broadens the acceptable forms of photo-voter-ID to include federally issued passport cards.

Consequences of Senate Bill 5.

14. Senate Bill 5 cures any alleged discriminatory effect caused by the State's photo-voter-ID requirement. Plaintiffs have alleged throughout this case that SB 14's photo-ID requirement would impermissibly burden their right to vote because they did not possess and could not reasonably obtain a form of photo ID required by the law. Under SB 5, any voter who lacks an acceptable form of photo ID and faces a reasonable impediment to obtaining it can cast a regular ballot upon execution of a declaration affirming that he or she faces a reasonable impediment to obtaining the requisite photo ID. The lack of an option to mark "Other" as the basis for a voter's reasonable impediment creates no threat of injury: Plaintiffs have not identified any voter whose inability to reasonably obtain an acceptable form of photo ID would not fall within the enumerated categories provided by SB 5, nor could they. Other States' photo-voter-ID laws even gained VRA Section 5 preclearance because they provided a reasonable-impediment procedure like Texas has here. *See, e.g.*, *Veasey*, 830 F.3d at 279 (Higginson, J., concurring) (noting that North Carolina's reasonable-impediment accommodation was "[e]specially significant," and that a similar provision was "stressed in preclearing [South Carolina]'s voter ID law" (citing *South Carolina v. United States*, 898 F. Supp. 2d 30, 35-43 (D.D.C. 2012))).

15. Senate Bill 5 also eliminates any potential injury from any possible alleged discriminatory purpose behind SB 14. Plaintiffs have argued that the Legislature enacted SB 14 for a discriminatory purpose because it failed to accommodate voters who, for reasons of poverty, could not reasonably comply with photo-ID requirements. Plaintiffs have not argued that passage of all types of photo-voter-ID laws, without more, show a discriminatory purpose or that photo-voter-ID laws are necessarily invalid—an argument which would contradict *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008). Rather, plaintiffs have claimed that the Legislature had a discriminatory purpose because it did not enact a safeguard for permitting voters to vote in-person at the polls without a photo ID if their reasons for lacking ID were justified—but SB 5's reasonable-impediment declaration provides that exact safeguard. *See Veasey*, 830 F.3d at 264. Thus, the entire basis of plaintiffs' discriminatory-purpose claim no longer exists. Because SB 5 provides a safety valve for individuals who do not have, and cannot reasonably obtain, a qualifying photo ID, plaintiffs face no lingering effect or injury resulting from the alleged discriminatory purpose behind SB 14.

16. Finally, the passage and signing of SB 5 is yet further evidence—and substantial evidence—that the Texas Legislature has not acted for a racially-discriminatory purpose in crafting a photo-voter-ID law.

Date: June 1, 2017               Respectfully submitted.

>KEN PAXTON
>Attorney General of Texas
>
>JEFFREY C. MATEER
>First Assistant
>   Attorney General
>
>BRANTLEY D. STARR
>Deputy First Assistant
>   Attorney General
>
>JAMES E. DAVIS
>Deputy Attorney General
>   for Litigation
>
>/s/ Angela V. Colmenero
>ANGELA V. COLMENERO
>Chief, General Litigation Division
>
>MATTHEW H. FREDERICK
>Deputy Solicitor General
>
>JASON R. LAFOND
>Assistant Solicitor General
>
>OFFICE OF THE ATTORNEY GENERAL
>P.O. Box 12548 (MC 059)
>Austin, Texas  78711-2548
>Tel.: (512) 936-6407
>Fax: (512) 474-2697
>
>*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on June 1, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO
