IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:13-cv-193 (NGR) |
| GREG ABBOTT, *et al.*, | § § | |
| Defendants. | § § | |

**BRIEF OF PRIVATE PLAINTIFFS
PROPOSING A BRIEFING PROCEDURE AND SCHEDULE**

## I.   Introduction And Overview

Per the Court's order, Private Plaintiffs submit this brief in support of their proposal for the appropriate procedure and schedule for this Court's determination of remedy presented at the scheduling hearing on June 7, 2017.  Because this proposal suggests that this Court first resolve over-arching legal issues, Private Plaintiffs have included a detailed outline of those issues, so that the Court may weigh the efficacy of the proposal in operation.

Private Plaintiffs submit that the necessary result of this Court's discriminatory intent finding of April 10, 2017, is a remedy mirroring the remedy that this Court entered in 2014 when it first found that SB 14 was enacted with discriminatory intent:  (1) a declaratory judgment that SB 14 violates Section 2 of the Voting Rights Act and the 14th and 15th Amendments; (2) a permanent injunction against enforcement of the voter identification provisions of SB 14; and (3) retention of jurisdiction to "review [any] legislation to determine whether it properly remedies the violations," *Veasey v. Perry*, 71 F. Supp. 3d 627, 707 (S.D. Tex. 2014).  In addition, and pursuant to the Court's retained jurisdiction, the remedy must also include (4) an injunction against SB 5—which does not cure the discriminatory intent of SB 14, because it cannot stand on its own without the discriminatory provisions of SB 14, and because it continues to burden the very groups against which this Court found Texas intentionally discriminated.  Finally, (5) as the Court did in 2014, we request that the Court set a status conference to address Private Plaintiffs' request for relief under Section 3(c) of the Voting Rights Act after it has entered permanent relief.

Because the foregoing requests for relief pertain to legal issues only, this matter is suitable for briefing and resolution, without any additional evidentiary proceedings.  Indeed, if the Court grants the necessary and comprehensive remedy for the intent violation, no further proceedings on results under the Voting Rights Act will be necessary.  If, however, the Court

decides not to begin with Private Plaintiffs' briefing-only approach, or, if after receiving and considering the legal arguments, the Court ultimately determines that they are not fully dispositive, the only alternative is a full evidentiary hearing, and not the truncated process Texas suggests, under which it seeks to manipulate the record with material not limited by the rules of evidence and not subject to discovery and cross-examination. To the extent that the Court is concerned that disposing of the legal issues may delay any evidentiary proceedings, Private Plaintiffs' proposed schedule allows for the identification of exhibits, filing of objections, and exchange of witness lists leading up to a mid-summer status conference.

Private Plaintiffs submit that the Court, the parties and the State and citizens of Texas will best be served by following the ordinary course of proceedings—resolving any dispositive legal issues before engaging in evidentiary proceedings that require the resolution of issues of fact. To illustrate the efficacy of this suggested approach, this Memorandum is divided into two parts: first, a proposed procedure and schedule, and second, an outline of Private Plaintiffs' opening brief on these legal issues that can be expeditiously resolved first—those relating to the intent of SB 14 and SB 5.[1]

**II.     Procedural Proposal**

If the Court agrees to address first the dispositive legal questions outlined above, Private Plaintiffs propose the following schedule: (1) simultaneous filing by Private Plaintiffs and Texas of opening briefs on July 10, 2017, and (2) simultaneous filing of responsive briefs by Texas and Private Plaintiffs on July 24, 2017. The United States is precluded from participating in this stage of the proceedings, because it relates solely to the discriminatory intent claim, which the

---

[1] If the Court disagrees that this relief is required as a matter of law, Private Plaintiffs reserve all arguments regarding the inadequacy of SB 5 as a remedy for both the intent and results claims after discovery and proper evidentiary proceedings.

United States has withdrawn. After this briefing, the Court can determine whether to hear oral argument or decide the matter on the briefing alone.

As this briefing is ongoing, the parties can begin the process of preparing for any evidentiary hearing, so as not to delay proceedings should the Court determine additional evidence is necessary. As to this hearing, which again will not be necessary if the Court agrees that a remedy for the intent violation ends the matter as suggested above, Private Plaintiffs suggest the following: (1) all parties simultaneously exchange potential exhibits on all remedial issues on July 10; (2) all parties simultaneously lodge any objections to exhibits and identify any counter-exhibits on July 17; (3) all parties simultaneously lodge objections to counter-exhibits on July 24; (4) all parties confer as to the need for discovery and/or an evidentiary hearing, and, arrange for simultaneous exchange of witness lists and rebuttal witness lists between July 24 and July 30; and (5) if the Court has not yet issued a decision on the legal issues presented, the Court sets a status conference in August.

By addressing any permanent remedy to be imposed prior to 3(c) relief, the Court can provide Texas with the certainty that it seeks as soon as practicable and allow Texas to appeal immediately (if necessary and if it still so wishes), paving the way for the appellate courts to provide additional guidance to this Court before it would address Private Plaintiffs' request for 3(c) relief. Finally, the Court's ruling on a permanent remedy would establish the benchmark for the retrogression standard against which future laws will be measured pursuant to any 3(c) relief.

Texas' newly-revealed August 10 deadline for this Court to render its decision on all remedy issues is unrealistic and artificial. The next statewide election is not scheduled until 2018, and the only justification for the deadline that Texas provides is the Secretary of State's unverified averment that it needs to know whether to include the interim remedial order or SB 5

3

language on voter registration cards.  But until this Court lifts the interim remedial order, the interim order controls and Texas can issue the voter registration cards as it did for other elections since the Court's remedial order.  *See* Order Regarding Agreed Interim Plan for Elections (Dkt. 895) ("Interim Remedial Order").

In addition, Texas' proposal to expedite briefing on all issues, bypass evidentiary rules, and cherry-pick a record for this Court is not so much a scheduling proposal as it is a method of manipulating the contents of the record in its favor.  If the record is to be expanded, ordinary evidentiary protections must apply to ensure that evidence is admissible and tested by the adversarial process.[2]

### III.     Requested Relief

First, Private Plaintiffs request a declaratory judgment—consistent with the Court's finding that SB 14 "was passed with a discriminatory purpose," (Order on Claim of Discriminatory Purpose (Dkt. 1023) at 10)—that Defendants violated Section 2 of the Voting Rights and the 14th and 15th Amendments.  This request necessarily flows from the Court's April 10 ruling since "the rubric for making a determination of a discriminatory purpose is the

---

[2]  Texas has already indicated that it intends to submit into evidence some unknown number of Declarations of Reasonable Impediment.  There were over 16,000 declarations executed in the November election.  Asher Price & Sean Collins Walsh, *Texas Voter ID Law Would Have Prevented 16,400 from Voting in November*, AUSTIN-AMERICAN STATESMAN, Feb. 10, 2017, http://www.mystatesman.com/news/state--regional-govt--politics/texas-voter-law-would-have-prevented-400-from-voting-november/sjlovqT3KlHKpUVb9sLC9N/.  Even after Texas discloses precisely which declarations it has cherry-picked, Private Plaintiffs may have to search through thousands more.  Further, the rebuttal of this evidence may require the development of facts relating to the State's inadequate education of voters and election officials regarding the interim order prior to the 2016 election and the State and counties' potential intimidation of voters regarding the use of the reasonable impediment declaration procedure.  Texas also seeks to rely on the public legislative record of SB 5.  This may require depositions of key actors in the passage of that law to test the reliability of the statements in the record and uncover other facts related to SB 5's passage.

same" under Section 2 of the VRA and the constitutional provisions. *Veasey*, 71 F. Supp. 3d at 698-99 & n. 525 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-68 (1977) (constitutional test) and *United States v. Brown*, 561 F.3d 420, 433 (5th Cir. 2009) (Section 2 test; quoting *Arlington Heights*)).

Second, Private Plaintiffs request a permanent and final injunction against enforcement of SB 14's voter identification provisions, Sections 1 through 15 and 17 through 22. This injunction adopts the order entered by this Court in 2014 as a remedy for its intentional discrimination finding. *Veasey*, 71 F. Supp. 3d at 707. "[T]he nature of the violation determines the scope of the remedy." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971). A full and permanent injunction is the *only* appropriate remedy when a court finds that a law was motivated by discriminatory intent because such laws have "no legitimacy at all under our Constitution." *City of Richmond v. United States*, 422 U.S. 358, 378 (1975); *see also Hunter v. Underwood*, 471 U.S. 222 (1985) (affirming invalidation of state constitutional provision adopted with discriminatory intent); *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457 (1982) (affirming permanent injunction of state initiative that had been adopted with discriminatory intent).

Third, Private Plaintiffs ask this Court to enjoin SB 5 because it carries forward the intentional discrimination of SB 14 and, indeed, cannot function independently of the provisions of SB 14 that must be enjoined. SB 5 did not repeal SB 14 nor did it remove or meaningfully modify any of the offending voter identification provisions of SB 14—provisions that this Court must enjoin—and, therefore, SB 5 carries forward SB 14's purposeful discrimination. *See N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 240 (4th Cir. 2016) ("Here, the amendment creating the reasonable impediment exception does not invalidate or repeal the photo

5

ID requirement. It therefore falls short of the remedy that the Supreme Court has consistently applied in cases of this nature."). Indeed, SB 5's only substantive change to SB 14's voter identification provisions was to extend the time period past expiration for which SB 14 IDs are acceptable from 60 days to 4 years. Senate Bill 5 (2017) at Section 5. SB 5 also appends a reasonable impediment declaration procedure (with a new felony criminal enforcement provision) for those individuals who lack SB 14 ID—individuals who this Court and the Fifth Circuit have acknowledged are disproportionately Black and Latino Texans and were the targets of SB 14's intentional discrimination. This procedure is similar to, but less remedial than the protocol of this Court's Interim Remedial Order, which was entered solely as an interim remedy to this Court's Section 2 discriminatory *results* finding.[3]

Thus, SB 5 leaves unremedied the architecture of SB 14 that the Court has found intentionally discriminatory. This has two necessary consequences. First, as a matter of law, SB 5 cannot be enforced in the absence of the discriminatory provisions of SB 14 that must be enjoined. Its entire structure is based on the existence of the discriminatory photo ID requirements which will necessarily be stricken by this Court. Without SB 14 in force, SB 5 is an alternative to nothing and falls of its own weight.

Second, and even more important, SB 5 cannot vitiate the intentional discrimination of SB 14, because it incorporates SB 14. A remedy for intentional discrimination must "place persons unconstitutionally denied an opportunity or advantage in 'the position they would have

---

[3] The Court entered the agreed upon interim order solely as a stopgap "interim" remedy for a *results* violation. *See* Interim Remedial Order (Dkt. 895) (recognizing that "[t]his is an agreed interim remedy *only* and the parties preserve their rights to seek or oppose future relief") (emphasis added). Further, any results remedy does not necessarily cure an intent violation. *Veasey v. Abbott*, 830 F.3d 216, 268 n. 66 (5th Cir. 2016) (distinguishing between the appropriate remedy for discriminatory intent and results).

occupied in the absence of [discrimination].'" *United States v. Virginia*, 518 U.S. 515, 547 (1996) (quoting *Milliken v. Bradley,* 433 U.S. 267, 280 (1977)).  This Court has ruled that SB 14 was discriminatorily designed, at least in part, to visit disparate burdens on minority voters who are more likely than not to lack SB 14 ID and to have difficulty obtaining SB 14 ID.  The Texas Legislature largely accomplished this goal by picking the "acceptable" IDs pursuant to SB 14 that are disproportionately held by Anglo voters and excluding IDs disproportionately held by minority voters.  *Veasey*, 71 F. Supp. 3d at 658 ("When the legislature rejected student IDs, state government employee IDs, and federal IDs, they rejected IDs that are disproportionately held by African-Americans and Hispanics."); Order on Claim of Discriminatory Purpose (Dkt. 1023) at 8; *Veasey*, 830 F.3d at 236 ("The record shows that drafters and proponents of SB 14 were aware of the likely disproportionate effect of the law on minorities, and that they nonetheless passed the bill without adopting a number of proposed ameliorative measures that might have lessened this impact.").

     Not only does SB 5 contain the exact provisions held to intentionally discriminate against African-American and Latino voters, but also, as a result, these minority voters will necessarily be disproportionately burdened with the additional steps of executing a reasonable impediment declaration and subjecting themselves to the threat of criminal investigations and potential penalty (up to two years of imprisonment) if they make a misstatement.  Thus, the process produced by SB 5 and SB 14 enforced together would continue to visit burdens on the very populations against which it has been found to have intentionally discriminated.  This does not put the victims of discrimination in the position that they would have been absent the discrimination, *Virginia*, 518 U.S. at 547; only Private Plaintiffs' proposed remedy of a permanent injunction can accomplish that goal.

7

This was precisely the holding of the Fourth Circuit in a case challenging a racially discriminatory voter ID law that the North Carolina Legislature later amended to include a reasonable impediment affidavit procedure. The Court explained why such an amendment did not fundamentally alter the original law or cure the discriminatory intent behind the original statute:

> For example, the record shows that under the reasonable impediment exception, if an in-person voter cannot present a qualifying form of photo ID—which "African Americans are more likely to lack"—the voter must undertake a multi-step process. First, the voter must complete and sign a form declaring that a reasonable impediment prevented her from obtaining such a photo ID, and identifying that impediment. In addition, the voter must present one of several alternative types of identification required by the exception. Then, the voter may fill out a provisional ballot, which is subject to challenge by any registered voter in the county. On its face, this amendment does not fully eliminate the burden imposed by the photo ID requirement.

*N.C. State Conference of NAACP*, 831 F.3d at 240-41 (internal citations omitted). Just like the law in North Carolina, SB 5 fails to cure SB 14's discriminatory intent because "it requires voters to take affirmative steps to justify to the state why they failed to comply with a provision that [this Court has] declared was enacted with racially discriminatory intent and is unconstitutional." *Id.* at 241; *see also Hunter*, 471 U.S. at 232-33 (invaliding a state constitutional provision even after its "more blatantly discriminatory" portions were removed); *City of Port Arthur v. United States*, 459 U.S. 159, 168 (1982) (affirming the invalidation of *both* a purposefully discriminatory redistricting plan *and* the defendant's later enacted remedial plan as a "reasonable hedge against the possibility that the [remedial] scheme contained a purposefully discriminatory element"); *Louisiana v. United States*, 380 U.S. 145, 154-155 & n.17 (1965) (enjoining an unconstitutional literacy test and a subsequently enacted test, which was never challenged in the complaint, because it perpetuated the discriminatory burdens placed

8

on Black voters by the prior test). Once a court determines that a state actor has engaged in purposeful discrimination, the "racial discrimination [must] be eliminated root and branch." *Green v. Cnty. Sch. Bd.*, 391 U.S. 430, 437-39 (1968); *see Cowan v. Cleveland Sch. Dist.*, 748 F.3d 233, 238 (5th Cir. 2014). By its terms and on its face, SB 5 fails to do that and therefore must fall with SB 14.

Fourth, as the Court did in 2014, Private Plaintiffs ask the Court, pursuant to its equitable powers to retain jurisdiction to review any future legislation on voter identification procedures enacted by the Texas Legislature "to determine whether it properly remedies the violations." *Veasey*, 71 F. Supp. 3d at 707; *see also Swann*, 402 U.S. at 15 ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *Brown*, 561 F.3d at 435-36 ("[T]he district court 'should exercise its traditional equitable powers to fashion the relief so that it completely remedies' [the violation].") (quoting S. Rep. No. 97-417, at 31, 1982 U.S.C.C.A.N. 177, 208 (Westlaw)).

Finally, after this Court has resolved the proper permanent remedy for its intent finding, Private Plaintiffs ask the Court to set a schedule to review their request for relief pursuant to 3(c) of the Voting Rights Act. Once again, this is the course that the Court took in 2014. This approach allows the Court to determine the more immediate concerns of permanent relief (especially given the State's urging that the Court resolve that question as soon as possible) prior to additional briefing on the broader question of whether to grant 3(c) pre-clearance and the proper scope of that relief. It also allows the Court to determine the appropriate benchmark for any 3(c) relief.

9

Date:  June 12, 2017	Respectfully submitted,

/s/ Lindsey B. Cohan
JON M. GREENBAUM
EZRA D. ROSENBERG
BRENDAN B. DOWNES
Lawyers' Committee for
Civil Rights Under Law
1401 New York Avenue NW Suite 400
Washington, D.C. 20005

WENDY WEISER
MYRNA PÉREZ
The Brennan Center for Justice at NYU Law School
120 Broadway, Suite 1750
New York, New York 10271

SIDNEY S. ROSDEITCHER
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

AMY L. RUDD
LINDSEY B. COHAN
Dechert LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701

NEIL STEINER
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Drive
San Antonio, Texas 98209

DANIEL GAVIN COVICH
Covich Law Firm LLC
Frost Bank Plaza
802 N Carancahua, Ste 2100
Corpus Christi, Texas 78401

GARY BLEDSOE
Potter Bledsoe, LLP
316 W. 12th Street, Suite 307
Austin, Texas 78701

VICTOR GOODE
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215

ROBERT NOTZON
The Law Office of Robert Notzon
1502 West Avenue
Austin, Texas 78701

*Counsel for the Texas State Conference of NAACP Branches and the Mexican American Legislative Caucus of the Texas House of Representatives*

/s/ Janai Nelson
SHERRILYN IFILL
JANAI NELSON
CHRISTINA A. SWARNS
COTY MONTAG
LEAH C. ADEN
DEUEL ROSS
NAACP Legal Defense and Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

JONATHAN PAIKIN
KELLY P. DUNBAR
TANIA FARANSSO
THADDEUS C. EAGLES
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel for Imani Clark*

/s/ Chad W. Dunn
CHAD W. DUNN
K. SCOTT BRAZIL
BRAZIL & DUNN
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068

J. GERALD HEBERT
DANIELLE M. LANG
Campaign Legal Center
1411 K Street NW Suite 1400
Washington, DC 20005

ARMAND G. DERFNER
Derfner & Altman
575 King Street, Suite B
Charleston, S.C. 29403

NEIL G. BARON
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539

DAVID RICHARDS
Richards, Rodriguez & Skeith, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701

*Counsel for Veasey/LULAC Plaintiffs*

LUIS ROBERTO VERA, JR.
Law Office of Luis Roberto Vera Jr.
111 Soledad, Ste 1325
San Antonio, TX 78205

*Counsel for LULAC*

/s/ Rolando L. Rios
ROLANDO L. RIOS
115 E. Travis, Suite 1645
San Antonio, Texas 78205

*Counsel for the Texas Association of Hispanic County Judges and County Commissioners*

/s/ Jose Garza
ROBERT W. DOGGETT
SHOSHANA J. KRIEGER
Texas RioGrande Legal Aid
4920 N. IH-35
Austin, Texas 78751

JOSE GARZA
Texas RioGrande Legal Aid
1111 N. Main Ave.
San Antonio, Texas 78212

*Counsel for Lenard Taylor, Eulalio Mendez Jr., Lionel Estrada, Estela Garcia Espinoza, Margarito Martinez Lara, Maximina Martinez Lara, and La Union Del Pueblo Entero, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

          /s/ Lindsey B. Cohan
          Lindsey B. Cohan
          Dechert LLP
          300 W. 6th Street, Suite 2010
          Austin, Texas 78731
          lindsey.cohan@dechert.com