UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| v. § | CIVIL ACTION NO. 2:13-CV-00193 | |
| § | | |
| GREG ABBOTT, *et al.*, § | | |
| § | | |
| Defendants. § | | |

### DEFENDANTS' MOTION TO ISSUE SECOND INTERIM REMEDY OR TO CLARIFY FIRST INTERIM REMEDY

Defendants respectfully request that the Court, while considering its final remedy and final judgment, enter a second interim remedy order or if necessary modify the first interim remedy order (D.E. 895), providing that:

(1) the reasonable-impediment procedure of the first interim remedy order, which by its terms covers only the November 2016 election, will be used for Texas elections in 2017;

(2) the State can immediately begin training its election officials on implementation of that reasonable-impediment procedure for elections in 2017;

(3) this new order will end as of January 1, 2018, when recently enacted Senate Bill 5 ("SB 5") takes effect, because SB 5 adopts virtually the same reasonable-impediment procedure as in the first interim remedy order; and

(4) the State can immediately begin training its election officials on implementing the reasonable-impediment procedures in SB 5 for elections in 2018.

Because the requested order described above would be only an interim remedy, it would of course be replaced by the Court's final judgment when it issues.

Defendants request such an interim order at this time for two reasons. First, the State is preparing for upcoming 2017 elections, and this Court's first order on an agreed interim remedy applied only to the November 2016 election (except for one particular provision regarding voter education that did not order any particular election procedure). Second, training for 2018 elections is also imminent, and Plaintiffs are now objecting that Defendants should not be able to train their election officials about the reasonable-impediment-declaration procedure contained in SB 5—while simultaneously training those officials about the virtually indistinguishable procedure in this Court's first interim remedy order.

## I.  BACKGROUND

The Secretary of State is in the process of creating training materials to distribute at a July training session, and it intends to train election officials on *both* the procedures used in the November 2016 election under this Court's August 10, 2016 agreed interim remedy order *and* the procedures contained in SB 5. As Defendants explained to this Court over two weeks ago:

> The Secretary of State will conduct its annual training seminar for county officials on July 31, 2017, through August 2, 2017. The seminar will include training on the availability of the reasonable-impediment-affidavit procedure (and the seminar will explain the requirements of this procedure under the Court's interim order <u>as well as under Senate Bill 5</u>). Because the interim remedial order and SB 5 are materially indistinguishable with respect to voting procedures, educating county officials <u>on both</u> will not impose additional burdens, and county officials will be prepared to administer the reasonable-impediment affidavits under <u>either</u> the Court's interim order <u>or SB 5</u>.

D.E. 1039 at 1-2 (emphases added).

Two weeks ago, Defendants requested entry of a final remedy and judgment by August 7, 2017 to ensure that the Secretary of State could "finalize the language of the voter registration certificate no later than August 30, 2017." *Id.* at 3-4. In proposing those dates, Defendants believed that they could train their election officials about SB 5—as the paragraph quoted above confirms.

Two weeks later, however, Plaintiffs have now objected to Defendants *taking any steps at all to merely train election officials* about SB 5's reasonable-impediment-declaration procedure in addition to the Court's agreed interim remedy procedure. Given Plaintiffs' objection, Defendants file this motion and request clarification on these matters forthwith, not simply before August 7.

Plaintiffs have stated that the mere training of election officials about SB 5 "is misleading, confusing, and in contempt of the Court's order." Exh. B (Perez 6/26/17 Email). But Plaintiffs do not identify how training election officials—in the alternative—about a law passed by the Legislature and set to take effect is misleading or confusing, especially when such training will simultaneously cover the procedure in this Court's first interim remedy order of August 10, 2016, which Plaintiffs assume extended, and Defendants now ask be extended as a further interim remedy, to 2017 elections.

Nor do Plaintiffs explain which order they are referring to when threatening a contempt motion. The State's anticipated training cannot possibly be in contempt of the Court's August 10, 2016 interim remedy order. By its terms, that order applies

3

only to the November 2016 election, except for a single provision about voter education that did not order any specific election procedures.

Specifically, that order expressly stated an agreed interim remedy including a reasonable-impediment-declaration procedure "*for the November 8, 2016 election.*" D.E. 895 at 1 (emphasis added). The court had ordered the parties to confer on "a plan for interim relief for the November 8, 2016 elections." D.E. 859 at 1; *accord* D.E. 868 at 1 (parties' joint motion recognizing the order to confer regarding "an appropriate remedy for the November election").

Not only does the preamble to the interim remedy order expressly concern the then-upcoming November 2016 election, but almost all of the numbered paragraphs of that order are also directed expressly to the November 2016 election. D.E. 895 at 1 ("interim plan by which the November 8, 2016 election shall be conducted"); *id.* ("agreed terms for the November 8, 2016 election); *id.* at 3 ("plan . . . for the November 2016 general election"); *id.* ("training program for the November 2016 general election").

The only provision of that order that also applied to future elections, beyond the November 2016 election, was a provision about voter education—but this provision did not order any particular election procedure such as a reasonable-impediment-declaration requirement. *See id.* ("11. Commencing with any elections held after the entry of this Order and until further order of the Court, Defendants shall

continue to educate voters in subsequent elections concerning both voter identification requirements <u>and</u> the opportunity for voters who do not possess SB 14 ID and cannot reasonably obtain it to cast a regular ballot.").

In short, Plaintiffs' claims of contempt are baseless and Defendants intend to train their election officials on SB 5, in the alternative, beginning in July 2017. Nonetheless, to provide a framework for the 2017 elections that will take place (1) before SB 5 takes effect on January 1, 2018 and (2) almost certainly before the completion of appellate review of this Court's liability ruling, Defendants now move for entry of a second interim remedy order to govern 2017 elections and delineate the permissible training of election workers in 2017.

## II.  SUMMARY OF ARGUMENT

Because the procedures set forth in SB 5 track the prior agreed interim order and repair any alleged unlawful disparate impact of Texas voter-ID laws, Defendants are entitled to begin training election officials on the procedures contained therein. Plaintiffs have identified no possible harm from Defendants' intended act of *training* their election officials about not only the procedures in the agreed interim remedy for the November 2016 election—which Defendants seek to continue through 2017 as an interim remedy—but also SB 5, which tracks those same procedures and is set to take effect on January 1, 2018.

As the remainder of this motion explains, (1) both this Court's agreed first interim remedy and SB 5 contain virtually indistinguishable reasonable-impediment-declaration procedures, (2) either the first interim remedy or SB 5 cures any potential

discriminatory effect, and (3) either the first interim remedy or SB 5 cures any potential discriminatory purpose.

### III. THE REASONABLE-IMPEDIMENT-DECLARATION PROCEDURES IN THIS COURT'S INTERIM REMEDY AND SB 5.

#### A. This Court's Agreed Interim Remedy

After the Fifth Circuit's decision on appeal in this case, *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc), the parties agreed to an interim remedy for the November 2016 election. *See* DE. 877, 893. On August 10, 2016, this Court entered an order adopting that agreed interim remedy. *See* D.E. 895.

The main provision of the Court's interim remedy was the creation of a reasonable-impediment-declaration procedure, which allows voters to vote at the polls without SB14-compliant photo ID if they (1) present a certain document containing their name and address and (2) complete a reasonable-impediment declaration in which voters swear that a reasonable impediment prevented them from obtaining sufficient photo ID. *See* D.E. 895 ¶¶ 2-9, 13. The interim remedy also provided that forms of photo ID acceptable under SB14 could be used to satisfy the voter-ID requirement if they had expired no more than four years before voting. *See* D.E. 895 ¶ 1. And the interim remedy included provisions for educating voters and training officials. *See* D.E. 895 ¶¶ 10-12.

#### B. Senate Bill 5

On May 31, 2017, the Texas Governor signed SB 5 into law. *See* Texas Legislature Online, History of Senate Bill 5 in the 85th Legislature, http://www.capi-

6

tol.state.tx.us/BillLookup/Actions.aspx?LegSess=85R&Bill=SB 5; *see also* D.E. 1035 (Defendants' advisory regarding passage and signing of SB 5).

SB 5 tracks the interim remedy ordered by this Court and agreed to by both Plaintiffs and Defendants for the November 2016 election. SB 5 provides a reasonable-impediment exception (to the requirement that in-person voters must show certain types of photo ID) for voters who do not have and cannot reasonably obtain a qualifying photo ID; it expands the list of acceptable forms of identification; it extends the period within which an expired form of identification may still be accepted for voting; and it formally provides a statutory requirement of mobile locations for obtaining identification certificates for voting purposes.

**1.** Section 1 of SB 5 amends the Texas Election Code to statutorily require the Secretary of State to establish a program using mobile units to provide free election identification certificates to voters for the purpose of satisfying the voter identification requirement for acceptance as a voter. The bill authorizes a mobile unit to be used at special events or at the request of a constituent group and prohibits the Secretary of State from charging a fee to a group that requests such a mobile unit. While mobile EIC units were not previously required by statute, the State has provided mobile EIC units under a program administered by the Department of Public Safety, the Secretary of State's office, and individual counties. *See* Defendants' Proposed Findings of Fact ¶¶ 30-31 (Nov. 18, 2016) (D.E. 966).

**2.** Sections 2, 3, 5, and 6 of SB 5 amend the Election Code to provide a reasonable-impediment exception to voters who lack one of the necessary forms of

7

photo identification. The reasonable-impediment exception allows a person to vote in person at the polls without producing one of the necessary forms of photo identification if two requirements are met.

The first requirement is that the voter provide either a government document that shows the name and address of the voter, including the voter's voter-registration certificate; a certified copy of a domestic birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity; or one of the following documents if it shows the name and address of the voter: a copy of a current utility bill, a bank statement, a government check, or a paycheck. SB 5 makes clear that election officers may not refuse to accept this documentation solely because the address on the documentation does not match the address on the voter roll.

The second requirement is that the voter execute a declaration averring that the voter could not reasonably obtain the necessary photo identification because of one of seven enumerated bases—all of which track the interim remedy entered by this Court: lack of transportation, lack of birth certificate or other documents needed to obtain the necessary identification, work schedule, lost or stolen identification, disability or illness, family responsibilities, or that the voter has applied for the necessary identification but has not received it.[1] A person who intentionally makes a false

---

[1] In contrast to the interim remedy, SB 5 does not permit the voter to vote after merely selecting an "other" box and filling in any reason the voter happens to give; under the interim remedy, a voter was permitted to vote regardless of what explanation was given for an "other" impediment—including explanations that indisputably could not constitute a reasonable impediment. *Cf.* DallasNews.com, Hundreds of Tex-

statement or provides false information on a reasonable-impediment declaration has committed a state jail felony.

Section 5 of SB 5 also provides for greater use of expired photo identification. It increases from 60 days to 4 years the amount of time that a form of necessary photo identification can be expired and still be used to verify a voter's identity. It also provides that voters 70 years of age or older can use a form of necessary photo identification that has been expired for any length of time. Voters under 70 whose ID is more than four years expired may still cast a regular ballot by using the expired ID to execute a reasonable impediment declaration (because that document is a government document listing the person's address).

Finally, SB 5 also broadens the acceptable forms of photo-voter-ID to include federally issued passport cards.

## IV. REQUEST FOR A SECOND INTERIM REMEDY ORDER FOR 2017 ELECTIONS

SB 5 does not take effect until January 1, 2018. At the same time, this Court's August 10, 2016 interim remedy order concerns procedures for only the November 2016 election. Therefore, while the Court considers its final remedy and judgment, Defendants request either entry of a second interim remedy order or modification of

---

ans May Have Voted Improperly, AP reports, https://perma.cc/EAP4-69SH (Fed. 18, 2017) ("An Associated Press analysis of roughly 13,500 affidavits submitted in Texas' largest counties found at least 500 instances in which voters were allowed to get around the law by signing an affidavit and never showing a photo ID, despite indicating that they possessed one. Others used the sworn declarations to lodge protest statements against the law. One affidavit from Hidalgo County, along the Texas-Mexico border, read: 'Did not want to "pander" to government requirement.' In Tarrant County, an election judge noted on an affidavit: 'Had photo ID but refused to show it.'").

the first interim remedy order, providing that the reasonable-impediment-declaration procedures in the first interim remedy order apply to elections through the end of 2017, such order to expire on January 1, 2018, when SB 5 takes effect.

To be clear, Defendants preserve all arguments challenging the findings of discriminatory effect and purpose, and Defendants are not conceding that plaintiffs' claims have any merit or justify any remedy. But Defendants recognize that this Court has held otherwise. Thus, Defendants propose entry of a second interim remedy order, to address 2017 elections and ensure clarity about how to proceed consistent with this Court's rulings until a final remedy and judgment are entered.

### V.  ANY ALLEGED DISCRIMINATORY EFFECT IS REMEDIED BY THE REASONABLE-IMPEDIMENT-DECLARATION PROCEDURES IN THIS COURT'S INTERIM REMEDY OR SB 5.

The reasonable-impediment-declaration procedure in this Court's agreed interim remedy and in SB 5 alleviates any alleged disparate impact—that is, it cures any "discriminatory effect on those voters who do not have SB 14 ID or are unable to reasonably obtain such identification." *Veasey*, 830 F.3d at 271.

The disparate impact found by this Court, and affirmed by the Fifth Circuit, was based on a "burden[] on Texans living in poverty, *who are less likely to possess qualified photo ID, are less able to get it, and may not otherwise need it*." *Veasey*, 830 F.3d at 264 (emphasis added). Thus, the Fifth Circuit explained that an appropriate remedy for any alleged discriminatory effect "might include *a reasonable impediment* or indigency *exception* similar to those adopted, respectively, in North Carolina or Indiana." *Id.* at 270 (emphases added; footnotes omitted).

10

Indeed, the Obama Administration's Department of Justice granted preclearance, under VRA § 5, to photo-voter-ID laws that included reasonable-impediment-declaration procedures. *See, e.g., id.* at 279 (Higginson, J., concurring) (noting that North Carolina's reasonable-impediment accommodation was "[e]specially significant," and that a similar provision was "stressed in preclearing [South Carolina]'s voter ID law" (citing *South Carolina v. United States*, 898 F. Supp. 2d 30, 35-43 (D.D.C. 2012) (three-judge court))).

A reasonable-impediment-declaration procedure allows those without qualifying photo ID to vote at the polls if they have a reasonable impediment that prevented them from obtaining an SB14-compliant ID. And the following are sufficient reasonable impediments under either this Court's interim remedy or SB 5:

- Lack of transportation
- Lack of birth certificate or other documents needed to obtain the necessary ID
- Work schedule
- Lost or stolen ID
- Disability or illness
- Family responsibilities
- Voter has applied for the necessary ID but has not received it.

*See* D.E. 895 at 6; SB 5 § 2 (Tex. Elec. Code § 63.001(i)(3)).

In fact, Texas's voter-ID law is now less strict than such laws in other States that also have a reasonable-impediment-declaration procedure. That is because

11

Texas does not have a mechanism to challenge ballots cast under this procedure, whereas other States do. For example, in South Carolina, county boards could assess the truthfulness of the reasonable impediment asserted, and if the reason asserted was "false," "simply denigrated the [voter-ID] law," or was "nonsensical," then the vote would not count. *See South Carolina*, 898 F. Supp. 2d at 36-37 & n.5, 39, 42. But Texas does not have a mechanism for rejecting votes cast through a reasonable-impediment-declaration procedure. Rather, all votes cast under a reasonable-impediment-declaration are valid in Texas, so the only enforcement mechanism for ensuring truthful statements on reasonable-impediment declarations is post-election prosecution for making a false statement on the declaration.

The lack of a mechanism to challenge ballots cast through reasonable-impediment declarations also explains why the Texas Legislature, in SB 5, did not provide an open-ended "Other" box and narrative explanation that could satisfy its reasonable-impediment-declaration procedures. The legislative history shows that the Legislature had evidence that, during the November 2016 election in which this Court's interim remedy was in place with a reasonable-impediment declaration that included an "Other" box and narrative option, various voters cast ballots using this "Other" box by providing statements simply denigrating the law. *See, e.g.*, Video: Texas House of Representatives, Statement of Rep. Phil King During Floor Debate of SB 5, beginning at 3:38:49 (May 24, 2017), http://tlchouse.granicus.com/MediaPlayer.php?view_id=39&clip_id=14100. For example, the following explanations

were given as "reasonable impediments" on declarations in the November 2016 election, and each of these votes counted because there is no Texas mechanism to challenge them:

- "Protest of Voter ID Law."
- "Don't believe I have to show picture ID."
- "Don't agree with voter ID law."
- "I do not agree with the law."
- "do not agree with law."
- "unconstitutional."
- "It's unconstitutional."
- "Unconstitutional."
- "Unconstitutional."
- "court declared photo ID requirement unconstitutional."
- "Supreme Court struck down photo ID law in Texas."
- "not required by law."
- "not law."
- "Against the law."
- "Lack of trust that this law is valid."
- "do not legally need to show Photo ID."
- "because I didn't bring it."
- "Did not want to 'pander' to government requirement."
- "Have procrastinated."

13

- "Snowbird."

Exh. C. In light of these documented abuses of the reasonable-impediment-declaration procedure during the November 2016 election, and because Texas has no mechanism to challenge ballots cast through reasonable-impediment-declaration procedures, it was well within the Legislature's authority to eschew an open-ended "Other" narrative explanation for establishing a reasonable impediment.

In sum, SB 5 makes allowances for the same seven reasonable impediments as specified in the interim remedy order's reasonable-impediment procedure, and the elimination of the "other" box tracks lessons learned from abuses of that box in the 2016 election, still leaving Texas law less strict than such laws in other States that also have a reasonable-impediment-declaration procedure. Given SB 5's virtual identity to the agreed reasonable-impediment procedure, Plaintiffs cannot legitimately complain that SB 5 continues any alleged disparate impact. Indeed, of the named Plaintiffs and testifying witness who lacked qualifying ID at the time of trial (as opposed to the four Plaintiffs and six witnesses who had such ID), every one of them alleged a burden that corresponds to one of the SB 5 reasonable-impediment exceptions that allows voting without a photo ID. *See* Exh. A (charting the evidence). So Plaintiffs have no evidence that the seven reasonable-impediment bases in SB 5 cannot cure any disparate effect of the photo-ID requirement.

### VI.  ANY ALLEGED DISCRIMINATORY PURPOSE IS REMEDIED BY THE REASONABLE-IMPEDIMENT-DECLARATION PROCEDURES IN THIS COURT'S INTERIM REMEDY OR SB 5.

Not only does a reasonable-impediment-declaration procedure remedy any discriminatory effect, but it also cures any discriminatory purpose. As the Fifth Circuit

explained, "should a later Legislature again address the issue of voter identification, any new law would present a new circumstance not addressed here"—and "[a]ny concerns about a new bill would be the subject of a new appeal for another day." *Veasey*, 830 F.3d at 271. The Legislature did just that in enacting SB 5, as SB 5 contains a reasonable-impediment-declaration procedure that fundamentally alters Texas's photo-voter-ID law.

Indeed, throughout this entire case, Plaintiffs have not argued that *all* photo-voter-ID laws are somehow invalid or that there is anything inherently invidious about the very nature of photo-voter-ID laws. That, of course, would contradict *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008). Rather, Plaintiffs entire theory has been that photo-voter-ID laws are invalid if they fail to accommodate voters who, for reasons of poverty, cannot reasonably comply with photo-ID requirements. In other words, even their theory of discriminatory purpose was not that the Legislature harbored such a purpose because it passed *any* form of a photo-voter-ID law; rather, their argument was the Legislature had a discriminatory purpose because it did not enact a safeguard to let poorer voters vote at the polls without photo ID—such as a reasonable-impediment declaration. *See Veasey*, 830 F.3d at 264.

The Legislature, however, enacted precisely such a safeguard in SB 5. By enacting a reasonable-impediment-declaration procedure, the entire crux of Plaintiffs' discriminatory-purpose theory ceases to exist. Thus, cases discussing the remedy for discriminatory purpose behind government actions when a government took *no* subsequent remedial steps cannot possibly speak to a situation like this one where

15

a State has remedied the allegedly discriminatory act. *Cf. Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 465-66 (1982); *City of Richmond v. United States*, 422 U.S. 358, 378 (1975).

After all, the intent behind an amendment can substantially alter the overall intent of the statute. The Fifth Circuit has held, for instance, that reenactment of a constitutional provision can overcome previous discriminatory intent. In *Cotton v. Fordice*, 157 F.3d 388 (5th Cir. 1998), the court considered an amendment to the Mississippi Constitution's felon-disenfranchisement provision, which was motivated by racial discrimination when originally enacted. The court recognized that in *Hunter v. Underwood*, the Supreme Court held Alabama's felon-disenfranchisement provision to be unconstitutional because "its original enactment was motivated by a desire to discriminate against blacks on account of race and the section continues to this day to have that effect." *Id.* at 391 (quoting *Hunter v. Underwood*, 471 U.S. 222, 233 (1985)). But it held that *Hunter* "left open the possibility that by amendment, a facially neutral provision . . . might overcome its odious origin." *Id.* Despite the acknowledged discriminatory intent behind the Mississippi provision, the Fifth Circuit held that subsequent amendments "superseded the previous provision and removed the discriminatory taint associated with the original version." *Id.* at 391. It distinguished *Hunter* on the ground that the Alabama provision was amended only involuntarily through judicial invalidation, whereas Mississippi voluntarily amended its own provision. *See id.* at 391 n.8; *cf.* Plaintiffs' Br. 4 (citing *Hunter* as "declining to take into

16

account later ameliorative changes to a discriminatory law"). The Fifth Circuit explained that the statute "as it presently exists is unconstitutional only if the amendments were adopted out of a desire to discriminate." 157 F.3d at 392. In *Chen v. City of Houston*, the Fifth Circuit cited *Cotton* "for the important point that when a plan is reenacted—as opposed to merely remaining on the books like the provision in *Hunter*—the state of mind of the reenacting body must also be considered." *Chen v. City of Houston*, 206 F.3d 502, 521 (5th Cir. 2000); *see also Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 524 (3d Cir. 2003) (holding, in an employment-discrimination case, that an employer's subsequent acts "may still be relevant to intent" if the acts are not "remote in time"). And the Supreme Court has recognized: "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969).

Now that the Legislature has acted, Plaintiffs have turned to tarnishing the Legislature's motives for enacting exactly what Plaintiffs themselves believed the law required. Plaintiffs pretend that the Legislature's enactment of SB 5 is the equivalent of jurisdictions cycling through various forms of discriminatory measures, adopting a new discriminatory measure each time a court declared an older discriminatory measure invalid. *Cf. South Carolina v. Katzenbach*, 383 U.S. 301, 335 (1966) (describing the "extraordinary stratagem" of certain States in the 1960s "of contriving new rules of various kinds for the sole purpose of perpetuating voting discrimination in the face of adverse federal court decrees").

This is absurd. The passage of SB 5 involved no "gamesmanship," and the Legislature was not "switch[ing] to discriminatory devices not covered by the federal decrees." *Id.* at 314. SB 5 is an *ameliorative* change—in fact, its reasonable-impediment-declaration procedure is the precise ameliorative provision that (1) Plaintiffs have sought all along in this litigation and (2) the Obama Administration's DOJ has precleared under VRA § 5 in other States. The Legislature's effort to adopt a reasonable-impediment-affidavit procedure into the State's voter-ID law is the complete opposite of the "unremitting and ingenious defiance" necessary to justify preclearance. *South Carolina*, 383 U.S. at 309.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court enter an order allowing Defendants and the State to begin training election officials, educating voters, and taking other steps to implement the procedures contained in the interim remedy as well as the provisions of Senate Bill 5.

| | |
|---|---|
| Date: June 28, 2017 | Respectfully submitted, |

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant
  Attorney General

BRANTLEY D. STARR
Deputy First Assistant
  Attorney General

JAMES E. DAVIS
Deputy Attorney General
  for Litigation

/s/ Angela V. Colmenero
ANGELA V. COLMENERO
Chief, General Litigation Division

MATTHEW H. FREDERICK
Deputy Solicitor General

JASON R. LAFOND
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697

*Counsel for Defendants*

## **CERTIFICATE OF CONFERENCE**

On June 28, 2017 counsel for the State Defendants conferred with the plaintiffs regarding the relief requested in this motion. The private plaintiffs have informed counsel for the State Defendants that they are opposed to the motion.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO