UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' BRIEF ON REMEDIES**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................ii

Introduction ............................................................................................. 1

I.   Background ...................................................................................... 4

     A.   Fifth Circuit's Ruling ............................................................... 4

     B.   This Court's Agreed Interim Remedy ...................................... 4

     C.   Senate Bill 5 ............................................................................ 5

II.  The Proper Remedy on Plaintiffs' Effect Claim Is a Reasonable-
     Impediment Procedure for Voting Without Photo ID ...................... 7

     A.   A Reasonable-Impediment Procedure Is a Complete Remedy. .............. 8

     B.   The Reasonable-Impediment Procedure of SB 5 .................... 9

III. The Proper Remedy on Plaintiffs' Purpose Claim Is a Reasonable-
     Impediment Procedure for Voting Without Photo ID ...................... 12

     A.   When Impermissible Purpose Is Found from the Restricted
          Nature of a Voting Standard, the Harm Is Remedied When the
          Legislature Replaces It with a Different Voting Standard that
          Does Not Prevent or Burden Voting. ...................................... 13

     B.   None of the Cases Upon Which Plaintiffs Rely Involved
          Ameliorative Changes to Laws, Eliminating All of the Alleged
          Injuries ................................................................................... 17

IV.  Plaintiffs' Request for VRA Preclearance Bail-In Is Meritless, But Will
     Be Addressed Separately Per the Court's Order ............................... 19

Conclusion ............................................................................................... 19

Certificate of Service ............................................................................... 21

Certificate of Compliance ........................................................................ 21

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansell v. Green Acres Contracting Co.*,
    347 F.3d 515 (3d Cir. 2003) ................................................................................. 17

*Brooks v. Giuliani*,
    84 F.3d 1454 (2d Cir. 1996) .................................................................................... 1

*Brown v. Bd. of Educ. of Topeka*,
    349 U.S. 294 (1955) ............................................................................................... 18

*Brown v. Trs. of Boston Univ.*,
    891 F.2d 337 (1st Cir. 1989) .................................................................................... 2

*Chen v. City of Houston*,
    206 F.3d 502 (5th Cir. 2000) ................................................................................. 17

*City of Richmond v. United States*,
    422 U.S. 358 (1975) ............................................................................................... 15

*Cotton v. Fordice*,
    157 F.3d 388 (5th Cir. 1998) .......................................................................... 16, 17

*Cowan v. Cleveland Sch. Dist.*,
    748 F.3d 233 (5th Cir. 2014) ................................................................................. 18

*Crawford v. Bd. of Educ. of City of L.A.*,
    458 U.S. 527 (1982) ............................................................................................... 14

*Crawford v. Marion Cty. Elec. Bd.*,
    553 U.S. 181 (2008) ............................................................................................... 15

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................................................. 2

*Garrison v. Baker Hughes Oilfield Operations, Inc.*,
    287 F.3d 955 (10th Cir. 2002) ............................................................................ 1-2

*Green v. Cty. Sch. Bd.*,
    391 U.S. 430 (1968) ............................................................................................... 18

*Hunter v. Underwood*,
    471 U.S. 222 (1985) ...................................................................................... 16, 17

*Louisiana v. United States*,
    380 U.S. 145 (1965) ............................................................................................... 18

*Lytle v. U.S. Dep't of Health & Human Servs.*,
    612 F. App'x 861 (8th Cir. 2015) ........................................................................... 1

*Miss. State Ch., Operation Push, Inc. v. Mabus,*
   932 F.2d 400 (5th Cir. 1991) ............................................................. 3, 9

*N.E. Ohio Coal. for the Homeless v. Husted,*
   831 F.3d 686 (6th Cir. 2016) ................................................................. 1

*Palmer v. Thompson,*
   403 U.S. 217 (1971) .............................................................................. 14

*Pers. Adm'r of Mass. v. Feeney,*
   442 U.S. 256 (1979) ...................................................................... 13, 14

*Red Lion Broad. Co. v. FCC,*
   395 U.S. 367 (1969) .............................................................................. 17

*Skydive Ariz., Inc. v. Quattrocchi,*
   673 F.3d 1105 (9th Cir. 2012) ................................................................ 1

*South Carolina v. Katzenbach,*
   383 U.S. 301 (1966) ...................................................................... 17, 18

*South Carolina v. United States,*
   898 F. Supp. 2d 30 (D.D.C. 2012) ................................................... 8, 10

*State of Neb. Dep't of Health & Human Servs. v. Dep't of Health &
   Human Servs.,*
   435 F.3d 326 (D.C. Cir. 2006) .............................................................. 1

*Upham v. Seamon,*
   456 U.S. 37 (1982) ................................................................................. 9

*Veasey v. Abbott,*
   830 F.3d 216 (5th Cir. 2016) ..................................................*passim*

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
   429 U.S. 252 (1977) .............................................................................. 13

*Washington v. Seattle Sch. Dist. No. 1,*
   458 U.S. 457 (1982) .............................................................................. 15

*Wise v. Lipscomb,*
   437 U.S. 535 (1978) ............................................................................... 3

**Statutes**

Act of May 16, 2011, 82d Leg., R.S., ch. 123, 2011 Tex. Gen. Laws 619.
("SB 14") ................................................................................................*passim*

Act of May 24, 2017, 85th Leg., R.S., 2017 Tex. Sess. Law. Serv. ch. 410
(Vernon's) ("SB 5") ...........................................................................*passim*

§ 1 ...................................................................................................... 7
§ 2 ................................................................................................. 5, 6
§ 3 ...................................................................................................... 6
§ 5 ...................................................................................................... 6
§ 9 ...................................................................................................... 7

Tex. Elec. Code:
§ 31.013 ............................................................................................. 7
§ 63.001 ............................................................................................. 5
§ 63.001(i)(3) ............................................................................... 9, 10
§ 63.001(i)(3)(A)-(G) ...................................................................... 6
§ 63.001(b) ................................................................................... 6, 7
§ 63.001(c-1) ..................................................................................... 6
§ 63.0013 ........................................................................................... 6
§ 63.0101(b)(1) ................................................................................ 7
§ 63.0101(a) ................................................................................ 5, 6, 7
§ 63.0101(a)(4) ................................................................................ 7
§ 63.0101(b) ...................................................................................... 6
§ 63.0101(c) ...................................................................................... 7

Voting Rights Act of 1965:
§ 2 (52 U.S.C. § 10302) ........................................................*passim*
§ 3 (52 U.S.C. § 10302(c)) ...................................................... 6, 19
§ 5 (52 U.S.C. § 10304) ........................................................... 8, 18

**Miscellaneous**

Floor of the House, Statement of Rep. Phil King, 85th Leg., R.S., (May
24, 2017) ........................................................................................ 11

## INTRODUCTION

A reasonable-impediment-declaration procedure redresses all of plaintiffs' alleged injuries, so this Court's final remedy should simply require Texas's voter-ID law to have such a procedure. The Court should enter a final remedy (1) that requires the reasonable-impediment-declaration procedure in its August 10, 2016 agreed interim remedy to be used in Texas elections during 2017, and (2) that dissolves on January 1, 2018, when the reasonable-impediment-declaration procedure enacted by the Texas Legislature in Senate Bill 5 ("SB 5") takes effect.

This Court has now held that Senate Bill 14 ("SB 14")—a photo-ID voting requirement without a reasonable-impediment exception—has a disparate impact according to race (on account of a disparate impact according to indigency) and was enacted with a racially-discriminatory purpose.[1] The only remaining issue for the Court is on remedy. That decision must follow one basic principle: "It is well settled an injunction must be narrowly tailored to remedy the harm shown."[2] *Garrison v.*

---

[1] Defendants do not concede that SB 14 has a discriminatory effect or purpose, and preserve all arguments challenging those holdings and the right to appeal them.

[2] *Accord, e.g.*, *N.E. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 698 (6th Cir. 2016) (per curiam) ("the injunctive relief was narrowly tailored to the harm identified: denial of the fundamental right to vote"); *Lytle v. U.S. Dep't of Health & Human Servs.*, 612 F. App'x 861, 862 (8th Cir. 2015) ("We note that injunctive relief must be narrowly tailored to remedy only the specific harms established by the plaintiff."); *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) ("An injunction should be 'tailored to eliminate only the specific harm alleged.'"); *State of Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) ("We have long held that '[a]n injunction must be narrowly tailored to remedy the specific harm shown.'") (citations omitted); *Brooks v. Giuliani*, 84 F.3d 1454, 1467 (2d Cir. 1996) ("Injunctive relief should be 'narrowly tailored' to address specific harms") (citation omitted).

*Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002) (citing *Brown v. Trs. of Boston Univ.*, 891 F.2d 337, 361 (1st Cir. 1989); *accord eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (holding that, to obtain a permanent injunction, "a plaintiff must demonstrate [] that it has suffered an irreparable injury").

Here, plaintiffs' alleged harm—for both their discriminatory effect and purpose claims—is that qualified voters are prevented from voting in person by the lack of ID acceptable under SB 14 or, at the least, suffer the burden of getting such ID to vote in person. *See* Docket Entry ("D.E.") 91, at 10-15; D.E. 88, at 11-14 (plaintiffs' standing arguments); *Veasey v. Abbott*, 830 F.3d 216, 263-64 (5th Cir. 2016) (en banc). The remedy matching that alleged harm is straightforward: A procedure that allows in-person voting without such ID upon a voter's declaration of a reasonable impediment to obtaining it.

Resisting this notion, plaintiffs argue that the remedy should be broader on their purpose challenge to SB 14 than on their results-based challenge to SB 14. D.E. 1040, at 5. But both are challenges to the same law. The irreparable harm claimed from this single law's voting requirement is the same on both theories: denial of or burden on the right to vote. That single alleged harm is fully addressed by a single procedure, one allowing in-person voting without the ID required by SB 14.

Indeed, this Court has already contemplated a single remedy on both claims. The Court's initial order on liability (which was vacated by the Fifth Circuit) ruled

for plaintiffs on both their purpose- and results-based challenges to SB 14, while simultaneously contemplating that the Legislature may "enact a different remedy"—in the singular—"for the statutory and constitutional violations." D.E. 628, at 143 (Oct. 9, 2014). A reasonable-impediment procedure is such a remedy for the harm alleged from the single challenged law.

Additionally, this Court's final remedy order should dissolve on January 1, 2018 because the recently enacted Senate Bill 5 takes effect that day and provides for a virtually identical reasonable-impediment exception. *See* Act of May 24, 2017, 85th Leg., R.S., 2017 Tex. Sess. Law Serv. ch. 410 (Vernon's) (attached as Exh. A). This Court has already acknowledged that a legislative solution must be considered. D.E. 628, at 143 (Oct. 9, 2014) (vacated initial remedy order containing a provision retaining jurisdiction to review any ameliorative legislation). And, as a matter of federalism and comity, courts must "defer to the legislature in the first instance to undertake remedies for violations of § 2." *Miss. State Ch., Operation Push, Inc. v. Mabus*, 932 F.2d 400, 406 (5th Cir. 1991); *accord Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (same for constitutional equal-protection violations).

Accordingly, the Court should enter the following final remedy, and only this remedy: "The reasonable-impediment-declaration procedure contained in this Court's August 10, 2016 agreed interim remedy, *see* D.E. 895, shall be used in Texas elections through December 31, 2017—and this remedy dissolves on January 1, 2018."

3

I. BACKGROUND

A. Fifth Circuit's Ruling

The Fifth Circuit affirmed this Court's ruling that SB 14 results in a discriminatory effect covered by § 2 of the Voting Rights Act ("VRA"). *Veasey*, 830 F.3d at 265. In its opinion, the Fifth Circuit explained:

> On remand, the district court should refer to the policies underlying SB 14 in fashioning a remedy. We acknowledge that the record establishes that the vast majority of eligible voters possess SB 14 ID, and we do not disturb SB 14's effect on those voters—those who have SB 14 ID must show it to vote. The remedy must be tailored to rectify only the discriminatory effect on those voters who do not have SB 14 ID or are unable to reasonably obtain such identification.

*Id.* at 271. And the Fifth Circuit remanded with further instructions to "ensure that any remedy enacted ameliorates SB 14's discriminatory effect, while respecting the Legislature's stated objective to safeguard the integrity of elections by requiring more secure forms of voter identification." *Id.* at 272.

The Fifth Circuit also remanded the purpose claim, as to both liability and any potential remedy, for reexamination "bearing in mind the effect any interim legislative action taken with respect to SB 14 may have." *Id.* This Court has now resolved the liability question in plaintiffs' favor, leaving for resolution the question of a remedy given the changes to the Election Code recently enacted in SB 5.

B. This Court's Agreed Interim Remedy

After the Fifth Circuit's decision, the parties agreed to an interim remedy, which this Court adopted in August 2016. *See* D.E. 877, 893, 895. The main provision of the interim remedy was the creation of a reasonable-impediment procedure that allows individuals to vote at the polls if they present a document containing their

4

name and address and complete a declaration that a reasonable impediment prevented them from obtaining photo ID acceptable under SB 14. *See* D.E. 895 ¶¶ 2-9, 13. The interim remedy also provided that photo ID acceptable under SB 14 could be used to satisfy the voter-ID requirement if they had expired no more than four years before voting. *See* D.E. 895 ¶ 1. And the interim remedy included provisions for educating voters and training officials. D.E. 895 ¶¶ 10-12.

### C. Senate Bill 5

On May 31, 2017, the Texas Governor signed SB 5 into law. Exh. A at 5. SB 5 adds to Texas law a reasonable-impediment procedure allowing voting at the polls without photo ID acceptable under SB 14.

Specifically, SB 5 amends § 63.001 of the Election Code to require that a person seeking to vote at a polling place must present to an election officer either (1) a form of photo ID listed as acceptable in Election Code § 63.0101(a), enacted by SB 14, or (2) other specified proof of the person's name and address,[3] accompanied by a declaration of a reasonable impediment to obtaining ID acceptable under SB 14. SB 5 § 2

---

[3] The following documentation is acceptable as proof of identification to accompany a reasonable-impediment declaration:

   (1) a government document that shows the name and address of the voter, including the voter's voter registration certificate;

   (2) one of the following documents that shows the name and address of the voter:

      (A) a copy of a current utility bill;

      (B) a bank statement;

      (C) a government check; or

      (D) a paycheck; or

   (3) a certified copy of a domestic birth certificate or other document confirming birth that is admissible in a court of law and establishes the person's identity.

5

(Tex. Elec. Code § 63.001(b)). Election officers may not refuse to accept either form of documentation simply because the address on it does not match the address on the voter rolls. SB 5 § 2 (Tex. Elec. Code § 63.001(c-1)).

A reasonable-impediment declaration under SB 5 avers that the voter could not reasonably obtain the ID adequate under SB 14 because of one of seven enumerated reasons—the same reasons given in this Court's interim remedy, D.E. 895 at 6:

- lack of transportation;
- lack of birth certificate or other documents needed to get adequate photo ID;
- work schedule;
- lost or stolen ID;
- disability or illness;
- family responsibilities; or
- the voter has applied for adequate photo ID but has not received it.

SB 5 § 2 (Tex. Elec. Code § 63.001(i)(3)(A)-(G)). Because votes may not be invalidated based on the reasonableness of a claimed impediment,[4] this declaration procedure does not permit voting after merely checking an "other" box and writing something that is not an actual impediment, such as policy disagreement with the law. *See id.*

SB 5 also expands the range of expired photo ID that may be used to vote. An accepted form of photo ID may be used to verify a voter's identity for up to 4 years after its expiration, up from 60 days. *Id.* § 5 (Tex. Elec. Code § 63.0101(a)). And SB 5 provides that voters 70 years of age or older can use an accepted form of photo ID that

---

SB 5 § 5 (Tex. Elec. Code § 63.0101(b)).

[4] Making intentional false statements on a reasonable-impediment declaration is a state jail felony, SB 5 § 3 (Tex. Elec. Code § 63.0013), but Texas does not have a mechanism by which a vote itself can be invalidated based on a professed impediment that is false or not an actual impediment.

6

has been expired for any length of time. *Id.* (Tex. Elec. Code § 63.0101(c)). Voters under 70 whose photo ID is more than 4 years expired may still cast a regular ballot by using the expired ID (which is a government document) and a reasonable-impediment declaration. *Id.* (Tex. Elec. Code §§ 63.001(b), 63.0101(b)(1)).

Furthermore, SB 5 broadens the acceptable forms of photo-ID to include federally issued passport cards. *Id.* (Tex. Elec. Code § 63.0101(a)(4)). And SB 5 requires the Secretary of State to establish a program using mobile units to provide free SB 14-compliant ID election identification certificates ("EICs"), which satisfy the photo-ID requirement for in-person voting. *Id.* § 1 (Tex. Elec. Code § 31.013). Previously, mobile EIC were voluntarily provided by the State. *See* Dfdts.' Proposed Findings of Fact ¶¶ 30-31 (Nov. 18, 2016) (D.E. 966). SB 5 now requires such a program, authorizes mobile-EIC use at the request of a constituent group, and bars charging a fee to any such group requesting a mobile EIC. SB 5 § 1 (Tex. Elec. Code § 31.013).

SB 5's amendments to Texas law take effect January 1, 2018. *Id.* § 9.

## II. THE PROPER REMEDY ON PLAINTIFFS' EFFECT CLAIM IS A REASONABLE-IMPEDIMENT PROCEDURE FOR VOTING WITHOUT PHOTO ID.

The parties have already agreed on a reasonable-impediment procedure as an interim remedy on plaintiffs' effect claim under VRA § 2, and that type of procedure is likewise suitable as a final remedy. *See infra* Part II.A (justifying use of a reasonable-impediment-procedure remedy). The only real dispute on the remedy for this claim appears to be whether the Legislature's enactment of such a reasonable-impediment procedure in SB 5 should be allowed to take effect—thus ending the virtually identical court-ordered remedy as of January 1, 2018. The answer is yes. *See infra*

Part II.B (explaining the validity of the Legislature's reasonable-impediment proce-

dure).

### A.    A Reasonable-Impediment Procedure Is a Complete Remedy.

The disparate impact found by this Court, and affirmed by the Fifth Circuit,

was based on a "burden[] [on] Texans living in poverty, *who are less likely to possess*

*qualified photo ID, are less able to get it, and may not otherwise need it.*" *Veasey*, 830

F.3d at 264 (emphasis added). Thus, the Fifth Circuit explained that an appropriate

remedy for any alleged discriminatory effect "might include *a reasonable impediment*

or indigency *exception* similar to those adopted, respectively, in North Carolina or

Indiana." *Id.* at 270 (emphases added; footnotes omitted).

Not only has the Fifth Circuit indicated that a reasonable-impediment decla-

ration remedies a disparate impact that allegedly violates VRA § 2's results test, but

the Obama Administration's Department of Justice granted preclearance under VRA

§ 5 to photo-ID voting laws that included reasonable-impediment-declaration proce-

dures. *See, e.g.*, *id.* at 279 (Higginson, J., concurring) (noting that North Carolina's

reasonable-impediment accommodation was "[e]specially significant," and that a sim-

ilar provision was "stressed in preclearing [South Carolina]'s voter ID law" (citing

*South Carolina v. United States*, 898 F. Supp. 2d 30, 35-43 (D.D.C. 2012) (mem. op.)

(three-judge court))).

As the parties agreed and this Court necessarily determined in ordering an

interim remedy for the November 2016 election, the reasonable-impediment proce-

dure for voting ordered by this Court alleviates any alleged racially disparate impact

of SB 14. This procedure allows those without qualifying photo ID to vote at the polls

8

if they have a reasonable impediment that prevented them from obtaining an SB14-compliant ID. Accordingly, such a procedure cures any "discriminatory effect on those voters who do not have SB 14 ID or are unable to reasonably obtain such identification." *Veasey*, 830 F.3d at 271.

### B.     The Reasonable-Impediment Procedure of SB 5

As a matter of federalism and comity, courts must "defer to the legislature in the first instance to undertake remedies for violations of § 2." *Operation Push*, 932 F.2d at 406. As the Supreme Court has held, "appropriate" remedies under VRA § 2 must be "limited to those *necessary* to cure any constitutional or statutory defect," such that a district court "[i]s not free, and certainly [i]s not required, to disregard the political program of the Texas State Legislature." *Upham v. Seamon*, 456 U.S. 37, 43 (1982) (per curiam) (emphasis added). As the Fifth Circuit put it here: "to the extent possible, courts should respect a legislature's policy objectives when crafting a remedy." *Veasey*, 830 F.3d at 269.

The reasonable-impediment procedure added to Texas law by SB 5 is virtually identical to the agreed reasonable-impediment procedure of the interim remedy order, and SB 5 remedies any alleged disparate impact of SB 14's photo-ID requirement. SB 5 allows voting upon showing any of the seven reasonable impediments specified in the Court's interim-remedy order. *See* SB 5 § 2 (Tex. Elec. Code § 63.001(i)(3)); D.E. 895 at 6 (interim-remedy order).

In fact, Texas's voter-identification laws are now more lax than voter-identification laws in other States that also have a reasonable-impediment procedure for

voting without photo ID. That is because Texas does not have a mechanism to invalidate ballots cast using the reasonable-impediment procedure, whereas other States do. For example, in South Carolina, county boards can assess the truthfulness of the reasonable impediment asserted, and if the reason asserted is "false," "simply denigrated the [voter-ID] law," or was "nonsensical," then the vote will not count. *See South Carolina*, 898 F. Supp. 2d at 36-37 & n.5, 39, 42. But Texas does not have such a mechanism for rejecting votes cast through a reasonable-impediment procedure. Rather, all votes cast under a reasonable-impediment procedure are valid in Texas. The only enforcement mechanism for ensuring truthful statements on reasonable-impediment declarations is post-election prosecution for making a false statement on the declaration, and even that mechanism does not invalidate a cast vote.

SB 5's reasonable-impediment procedure differs from the interim-remedy procedure in one way: SB 5's reasonable-impediment procedure does not allow putative voters to submit a declaration merely checking an "other" box and making an open-ended statement, whereas the interim remedy did. But that policy choice promotes election integrity—the policy goal that the Fifth Circuit held "courts should respect," *Veasey*, 830 F.3d at 269—and does not impair SB 5's remedial effect on the alleged disparate impact of SB 14.

That policy choice promotes election integrity given Texas's experience with the November 2016 election, which proved that a reasonable-impediment procedure with an open-ended "other" box and narrative option is ripe for abuse. The legislative history of SB 5 shows that the Legislature had evidence that, during the November

2016 election in which the interim remedy was in place, various voters cast ballots using the "other" box by providing statements simply denigrating the law, rather than claiming any plausibly reasonable impediment to obtaining photo ID. *See, e.g.*, Debate on Tex. S.B. 5 on the Floor of the House, Statement of Rep. Phil King, 85th Leg., R.S., beginning at 3:38:49 (May 24, 2017), http://tlchouse.granicus.com/MediaPlayer.php?view_id=39&clip_id=14100. For example, the following explanations were given as "reasonable impediments" on declarations in the November 2016 election, none of them are actually sufficient reasonable impediments to obtaining compliant ID, yet each of these votes counted because there was and is no Texas mechanism to invalidate them:

- "Protest of Voter ID Law."
- "Don't believe I have to show picture ID."
- "Don't agree with voter ID law."
- "I do not agree with the law."
- "do not agree with law."
- "unconstitutional."
- "It's unconstitutional."
- "Unconstitutional."
- "Unconstitutional."
- "court declared photo ID requirement unconstitutional."
- "Supreme Court struck down photo ID law in Texas."
- "not required by law."
- "not law."
- "Against the law."
- "Lack of trust that this law is valid."
- "do not legally need to show Photo ID."
- "because I didn't bring it."
- "Did not want to 'pander' to government requirement."
- "Have procrastinated."

Exh. B. In light of these documented abuses of the reasonable-impediment-declaration procedure during the November 2016 election, and because Texas has no mechanism to invalidate ballots cast through a reasonable-impediment procedure, it was well within the Legislature's authority to eschew an anything-goes "other" option for voting without acceptable photo ID. SB 5 thus reflects a tweak to the November 2016 reasonable-impediment procedure given the lessons learned from demonstrated abuses under that procedure.

Plaintiffs cannot complain that Texas law will allow the denial of in-person voting to persons who legitimately face a reasonable impediment to obtaining photo ID required under SB 14, given that SB 5 now makes allowances for the same seven reasonable impediments specified in the interim remedy order. Indeed, of the named plaintiffs and testifying witnesses who lacked qualifying ID at the time of trial (as opposed to the four plaintiffs and six witnesses who had such ID), every one of them alleged a burden that corresponds to one of the SB 5 reasonable-impediment exceptions that allows voting without a photo ID. *See* Exh. C (charting the evidence). So plaintiffs have no evidence that the seven reasonable-impediment bases in SB 5 cannot cure any disparate effect of the photo-ID requirement.

## III.   THE PROPER REMEDY ON PLAINTIFFS' PURPOSE CLAIM IS A REASONABLE-IMPEDIMENT PROCEDURE FOR VOTING WITHOUT PHOTO ID.

Not only does a reasonable-impediment-declaration procedure remedy any discriminatory effect, but it also cures the harm from any alleged discriminatory purpose. As the Fifth Circuit explained, "should a later Legislature again address the

issue of voter identification, any new law would present a new circumstance not addressed here"—and "[a]ny concerns about a new bill would be the subject of a new appeal for another day." *Veasey*, 830 F.3d at 271. That is what has now occurred. The Legislature has chosen a different identification requirement for voting—one that no longer has what this Court found to be a prohibited discriminatory impact.

A. **When Impermissible Purpose Is Found from the Restricted Nature of a Voting Standard, the Harm Is Remedied When the Legislature Replaces It with a Different Voting Standard that Does Not Prevent or Burden Voting.**

The Texas Legislature has now modified the identification standards for in-person voters, to require *either* a qualifying photo ID *or* a declaration of a reasonable impediment to obtaining one. Because an injunction is prospective relief, the remedial question facing the Court is whether the harm alleged from SB 14's prior voting requirement (challenged as pretext for discrimination by race) will continue in the future under this new law that chooses a different voting requirement. The answer is no.

It is the *legislative* classification that this Court must assess in examining the harm from an asserted equal-protection violation. An equal-protection claim requires proof of a "racially discriminatory intent or purpose" for challenged state action. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). In the case of a legislative enactment, that means an institutional decision "to discriminate on the basis of race." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 260 (1979). A law that "neither says nor implies that persons are to be treated differently on account of their

race" is not a racial classification. *Crawford v. Bd. of Educ. of City of L.A.*, 458 U.S. 527, 537 (1982).

The harm from such an equal-protection violation thus results from the classification drawn *in the challenged law*, not merely the abstract existence of a legislative motive. A law is prohibited racial discrimination only if the law itself contains a "racial classification" or "a classification that is ostensibly neutral but is an obvious pretext for racial discrimination." *Feeney*, 442 U.S. at 272. As the Court held in *Feeney*: "In assessing an equal protection challenge, a court is called upon *only* to measure the basic validity of *the legislative classification*." 442 U.S. at 272 (emphases added). Or as the Court held in *Palmer v. Thompson*, 403 U.S. 217 (1971), without an invidious legislative classification of individuals, state action cannot be nullified "solely because of the motivations of the [legislators] who voted for it." *Id.* at 224.

Here, the voting classification enacted by SB 14 has now been changed by the 85th Legislature. Individuals are no longer generally stopped from voting in-person because they lack a qualifying form of photo ID; instead, voters can cast a ballot by declaring their reasonable impediment to obtaining a qualifying ID. Furthermore, SB 5 expands the range of expired photo IDs that are themselves accepted as sufficient identification. Under this newly crafted voting regime, Texas's voter-ID law cannot possibly be said to contain a legislative classification that is neutral yet serving as a pretext for racial discrimination. In fact, this new legislative classification of putative voters does not work any demonstrable harm on plaintiffs. A reasonable-impediment exception is precisely what Plaintiffs said was required.

14

During this entire case, Plaintiffs have never argued that *all* photo-voter-ID laws are somehow invalid or that there is anything invidious about the very nature of photo-ID laws for voter identification. That, of course, would contradict *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008). *See Veasey*, 830 F.3d at 249 ("*Crawford* clearly established that states have strong interests in preventing voter fraud and increasing voter confidence by safeguarding the integrity of elections.").

Rather, plaintiffs' entire theory has been that photo-ID voting laws are invalid if they fail to accommodate voters who, for reasons of poverty, cannot reasonably comply with photo-ID requirements. In other words, even plaintiffs' theory of discriminatory purpose was not that the Legislature harbored such a purpose because it passed *any* form of a photo-ID voting law. Rather, the crux of their position was the Legislature had a discriminatory purpose because it did not enact a safeguard to let poorer individuals vote in person without photo ID—such as a reasonable-impediment declaration. *See Veasey*, 830 F.3d at 264. The enactment of a reasonable-impediment procedure for voting thus negates plaintiffs' entire claim of harm from voter-identification laws, and it eliminates any supposed pretext masking an intended burden according to race.

Plaintiffs' brief on a remedies procedure (D.E. 1040 at 5) cites cases discussing the remedy when a government made *no* subsequent ameliorative changes to a law held to effectuate a discriminatory purpose. *Cf. Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 465-66 (1982); *City of Richmond v. United States*, 422 U.S. 358, 378 (1975). Those cases cannot possibly speak to a situation like this one, where a State

15

has remedied the allegedly discriminatory classification by drawing a new classifications that is not discriminatory—especially one that the Fifth Circuit itself indicated would remedy any disparate impact.

In contrast, the Fifth Circuit has held that reenactment of a constitutional provision vitiates the harm from a previous law intended as racial discrimination. In *Cotton v. Fordice*, 157 F.3d 388 (5th Cir. 1998), the court considered an amendment to the Mississippi Constitution's felon-disenfranchisement provision, which was motivated by racial discrimination when originally enacted. The court recognized that, in *Hunter v. Underwood*, the Supreme Court held Alabama's felon-disenfranchisement provision to be unconstitutional because "its original enactment was motivated by a desire to discriminate against blacks on account of race and the section continues to this day to have that effect." *Id.* at 391 (quoting *Hunter v. Underwood*, 471 U.S. 222, 233 (1985)). But the Fifth Circuit held that *Hunter* "left open the possibility that by amendment, a facially neutral provision . . . might overcome its odious origin." *Id.* Despite the acknowledged discriminatory intent behind the original Mississippi provision, *Cotton* held that subsequent amendments "superseded the previous provision and removed the discriminatory taint associated with the original version." *Id.*

*Cotton* distinguished *Hunter* on the ground that the Alabama provision was amended only involuntarily through judicial invalidation, whereas Mississippi voluntarily amended its own provision. *See id.* at 391 n.8; *cf.* D.E. 1010, at 4 (plaintiffs' argument citing *Hunter* as "declining to take into account later ameliorative changes to a discriminatory law"). *Cotton* explained that the statute "as it presently exists is

16

unconstitutional only if the amendments were adopted out of a desire to discrimi-nate." 157 F.3d at 392. And in *Chen v. City of Houston*, the Fifth Circuit cited *Cotton* "for the important point that when a plan is reenacted—as opposed to merely remain-ing on the books like the provision in *Hunter*—the state of mind of the reenacting body must also be considered." 206 F.3d 502, 521 (5th Cir. 2000); *see also Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 524 (3d Cir. 2003) (holding, in an employ-ment-discrimination case, that an employer's subsequent acts "may still be relevant to intent" if the acts are not "remote in time"). Likewise, the Supreme Court has rec-ognized: "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969).

### B. None of the Cases Upon Which Plaintiffs Rely Involved Ameliora-tive Changes to Laws, Eliminating All of the Alleged Injuries.

Now, plaintiffs have now turned to tarnishing the Legislature's motives for enacting exactly what plaintiffs believed the law required. But the passage of SB 5 involved no "gamesmanship." Plaintiffs pretend that the Legislature's enactment of SB 5 is the equivalent of jurisdictions cycling through various forms of discriminatory measures, adopting a new discriminatory measure each time a court declared an older discriminatory measure invalid. *Cf. South Carolina v. Katzenbach*, 383 U.S. 301, 335 (1966) (describing the "extraordinary stratagem" of certain States in the 1960s "of contriving new rules of various kinds for the sole purpose of perpetuating voting discrimination in the face of adverse federal court decrees").

This is absurd. The passage of SB 5 was not "switch[ing] to discriminatory devices not covered by the federal decrees." *Id.* at 314. SB 5 is an *ameliorative* change. Its reasonable-impediment procedure is the precise ameliorative provision that (1) plaintiffs have sought all along in this litigation, (2) the Obama Administration's DOJ has precleared under VRA § 5 in other States, and (3) the Fifth Circuit here suggested as "appropriate amendments" to remedy any discriminatory effect of SB 14, *Veasey*, 830 F.3d at 270. The Legislature's adoption of a reasonable-impediment procedure is the complete opposite of the "unremitting and ingenious defiance" that would continue the harm from an original racial classification. *South Carolina*, 383 U.S. at 309.

Various cases that plaintiffs have previously relied on are thus wildly inapposite, as none of them involved *ameliorative* changes to laws that eliminated all of the alleged injuries. *Louisiana v. United States* involved Louisiana cycling from a grandfather clause, to an interpretation test with a white-primary law, to a "Segregation Committee," to a wholesale purge of black voters from the voter rolls, to a registration test that gave registrars complete discretion to prevent black citizens from voting, to a new citizenship test—none of these provisions being ameliorative in the slightest. 380 U.S. 145, 149 (1965). *Green v. County School Board* involved a challenge to a county's segregated school system in 1965, 391 U.S. 430, 437-39 (1968)—despite the Supreme Court's express command ten years earlier "to effectuate a transition to a racially nondiscriminatory school system," *Brown v. Bd. of Educ. of Topeka*, 349 U.S. 294, 301 (1955). And *Cowan v. Cleveland School District* was another school desegregation case first filed in 1965. 748 F.3d 233, 235 (5th Cir. 2014).

With the enactment of SB 5, there are no "lingering effects" of any injuries to plaintiffs from the classification in SB 14 found infirm by this Court—certainly no lingering effects that qualify as irreparable harm for which remedy is an injunction of Texas's voter-identification procedures as supplemented by SB 5 (or the equivalent procedure in the Court's interim remedy order). Plaintiffs cannot identify evidence of a single voter who will be prevented from voting under SB 5's reasonable-impediment procedure. That is the best evidence that prospective relief enjoining SB 5's reasonable-impediment procedure would be grossly inappropriate.

## IV.   PLAINTIFFS' REQUEST FOR VRA PRECLEARANCE BAIL-IN IS MERITLESS, BUT WILL BE ADDRESSED SEPARATELY PER THE COURT'S ORDER

Pursuant to this Court's order of June 20, 2017, plaintiffs' meritless request for a preclearance bail-in remedy under VRA § 3 will be briefed separately at a later date. *See* D.E. 1044, at 2.

## CONCLUSION

For the reasons stated above, Defendants respectfully submit that the following remedy, and only this remedy, is appropriate under this Court's liability rulings: "The reasonable-impediment-declaration procedure contained in this Court's August 10, 2016 agreed interim remedy, *see* D.E. 895, shall be used in Texas elections through December 31, 2017—and this remedy dissolves on January 1, 2018."

Date: July 5, 2017                     Respectfully submitted,

                                       KEN PAXTON
                                       Attorney General of Texas

                                       JEFFREY C. MATEER
                                       First Assistant
                                         Attorney General

                                       BRANTLEY D. STARR
                                       Deputy First Assistant
                                         Attorney General

                                       JAMES E. DAVIS
                                       Deputy Attorney General
                                         for Litigation

                                       /s/ Angela V. Colmenero
                                       ANGELA V. COLMENERO
                                       Chief, General Litigation Division

                                       MATTHEW H. FREDERICK
                                       Deputy Solicitor General

                                       JASON R. LAFOND
                                       Assistant Solicitor General

                                       OFFICE OF THE ATTORNEY GENERAL
                                       P.O. Box 12548 (MC 059)
                                       Austin, Texas  78711-2548
                                       Tel.: (512) 936-6407
                                       Fax: (512) 474-2697

                                       *Counsel for Defendants*

20

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

<u>/s/ Angela V. Colmenero</u>
ANGELA V. COLMENERO

## CERTIFICATE OF COMPLIANCE

I hereby certify that this opening brief does not exceed 25 pages, the page limit established by this Court's June 20, 2017 order on procedure for addressing remedies.

<u>/s/ Angela V. Colmenero</u>
ANGELA V. COLMENERO