UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE BRIEF ON REMEDIES**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT ...................................................................................................... 1

I.      THERE IS NO RECORD EVIDENCE OF—AND PLAINTIFFS DO NOT EVEN TRY
        TO IDENTIFY—A SINGLE TEXAS VOTER WHO LACKS AN SB 14-COMPLIANT
        ID AND FACES A BURDEN NOT COVERED BY SB 5'S REASONABLE-
        IMPEDIMENT EXCEPTION, SO SB 5 WHOLLY CURES ANY DISCRIMINATORY
        EFFECT. .............................................................................................. 1

II.     SB 5'S REASONABLE-IMPEDIMENT EXCEPTION MIRRORS THE REASONABLE-
        IMPEDIMENT EXCEPTION IN THIS COURT'S AGREED INTERIM REMEDY, AND
        ANY DIFFERENCES BETWEEN THE TWO DO NOT PERPETUATE ANY
        DISCRIMINATORY EFFECT. ...................................................................... 2

        A. Both totally excuse the photo-ID requirement. ............................................ 2

        B. Both require completion of a form. ............................................................. 3

        C. Both include seven expressly enumerated reasonable impediments. .......... 3

        D. Both require a non-photo supporting document. .......................................... 4

        E. Both allow the same degree of prosecution for intentionally making
           a false statement on the declaration. ......................................................... 5

        F. Both allow regular ballots to be cast without any mechanism for
           invalidating these votes cast. .................................................................... 8

III.    BECAUSE SB 5 ELIMINATES ANY DISCRIMINATORY EFFECT, THERE
        CANNOT POSSIBLY BE ANY ONGOING DISCRIMINATORY-PURPOSE
        VIOLATION. ......................................................................................... 9

IV.     THE STATE HAS ALREADY STIPULATED THAT IT WILL CONDUCT
        SIGNIFICANT TRAINING OF ELECTION OFFICIALS AND EDUCATION OF
        VOTERS BEYOND WHAT EVEN THIS COURT'S INTERIM REMEDY ORDERED. ........ 13

V.      THERE IS NO BASIS FOR THIS COURT TO RETAIN JURISDICTION. ...................... 14

CONCLUSION .................................................................................................. 15

CERTIFICATE OF SERVICE ............................................................................... 17

CERTIFICATE OF COMPLIANCE ........................................................................ 17

i

## TABLE OF AUTHORITIES

### Cases

*Abbott v. Veasey,*
  137 S. Ct. 612 (2017) ................................................................................ 12

*City of Milwaukee v. Illinois,*
  451 U.S. 304 (1981)................................................................................... 15

*City of Port Arthur v. United States,*
  459 U.S. 159 (1982)................................................................................... 10

*City of Richmond v. United States,*
  422 U.S. 358 (1975)................................................................................... 10

*Cotton v. Fordice,*
  157 F.3d 388 (5th Cir. 1998) .............................................................. 10, 11

*Davis v. Abbott,*
  781 F.3d 207 (5th Cir. 2015) ..................................................................... 10

*Green v. Cty. Sch. Bd. of New Kent Cty.,*
  391 U.S. 430 ............................................................................................. 10

*Hunter v. State,*
  14-13-00847-CR., 2014 WL 6923116 (Tex. App.—Houston [14th Dist.] Dec. 9,
  2014, pet. ref'd) (mem. op.) ....................................................................... 7

*Hunter v. Underwood,*
  471 U.S. 222 (1985)................................................................................... 10

*Louisiana v. United States,*
  380 U.S. 145 (1965)............................................................................. 10, 11

*Miss. State Chapter, Operation Push, Inc. v. Mabus,*
  932 F.2d 400 (5th Cir. 1991) ..................................................................... 12

*North Carolina State Conference of NAACP v. McCrory,*
  831 F.3d 204 (4th Cir. 2016) ............................................................... 1, 8, 9

*Palmer v. Thompson,*
  403 U.S. 217 (1971).................................................................................... 9

*Perez v. Abbott,*
  No. 1:11-CV-360, 2017 WL 1787454 (W.D. Tex. May 2, 2017) ........................ 10, 11

*Reno v. Bossier Par. Sch. Bd.,*
  528 U.S. 320 (2000)................................................................................... 10

*South Carolina v. United States,*
  898 F. Supp. 2d 30 (D.D.C. 2012) (mem. op.) ................................. 7, 9, 10

ii

*United States v. Deverso,*
   518 F.3d 1250 (11th Cir. 2008) ................................................................ 5

*United States v. Montemayor,*
   712 F.2d 104 (5th Cir. 1983) .................................................................... 5

*Veasey v. Abbott,*
   830 F.3d 217 (5th Cir. 2016) .................................................................... 7

*Washington v. Seattle Sch. Dist. No. 1,*
   458 U.S. 457 (1982) ................................................................................. 10

*Westwego Citizens for Better Gov't v. City of Westwego,*
   946 F.2d 1109 (5th Cir. 1991) ............................................................ 13, 15

*Wingo v. State,*
   143 S.W.3d 178 (Tex. App.—San Antonio 2004), *aff'd*, 189 S.W.3d 270 (Tex. Crim.
   App. 2006) ................................................................................................ 7

*Wise v. Lipscomb,*
   437 U.S. 535 (1978) ................................................................................. 15

## Statutes

TEX. ELEC. CODE § 31.013(a) ........................................................................ 13

TEX. ELEC. CODE § 61.0101(b)(3) ............................................................... 4, 5

TEX. ELEC. CODE § 63.001(b) (2010) .............................................................. 4

TEX. ELEC. CODE § 63.001(c-1) ........................................................................ 4

TEX. ELEC. CODE § 63.001(d) ........................................................................... 8

TEX. ELEC. CODE § 63.001(i) ............................................................................ 6

TEX. ELEC. CODE § 63.001(i)(1) ....................................................................... 6

TEX. ELEC. CODE § 63.0013(a) ......................................................................... 6

TEX. ELEC. CODE § 63.0013(b) ......................................................................... 6

TEX. ELEC. CODE §§ 14.001(a), 15.001(a), 15.005(a) .................................... 13

TEX. PENAL CODE § 12.21 ................................................................................ 6

TEX. PENAL CODE § 12.35 ................................................................................ 6

TEX. PENAL CODE § 37.02(a) ............................................................................ 6

TEX. PENAL CODE § 37.02(b) ............................................................................ 6

TEX. PENAL CODE § 37.10(a) ............................................................................ 6

TEX. PENAL CODE § 37.10(c)(1) ....................................................................... 6

**Other Authorities**

Act No. 27, R 54, 119th Leg., R.S. § 5, S.C. Laws, H3003 (ratified May 17, 2011)
(codified at S.C. Code § 7-13-710 (D)(1)); S.C. Code § 7-25-20(3); S.C. Code § 16-9-
10(B)(2) ................................................................................................................................ 7

SB 5, Act of May 28, 2017, 85th Leg., R.S., ch. 410, effective January 1, 2018 passim

ARGUMENT

**I.  THERE IS NO RECORD EVIDENCE OF—AND PLAINTIFFS DO NOT EVEN TRY TO IDENTIFY—A SINGLE TEXAS VOTER WHO LACKS AN SB 14-COMPLIANT ID AND FACES A BURDEN NOT COVERED BY SB 5'S REASONABLE-IMPEDIMENT EXCEPTION, SO SB 5 WHOLLY CURES ANY DISCRIMINATORY EFFECT.**

The record does not show that even a single voter will face any material burden in voting under SB 5's[1] reasonable-impediment exception to SB 14's photo-ID requirement. Plaintiffs' remedies briefing does not attempt to identify such a voter, nor could plaintiffs have done so. As defendants explained in their opening remedies brief and demonstrated in Exhibit C to that brief, all of the burdens alleged by the named plaintiffs and their testifying witnesses are covered by (five of) the seven reasonable impediments listed in SB 5. Docket Entry (D.E.) 1049 (defendants' brief) & 1049-3 (Exh. C).

Thus, no record evidence allows concluding that any Texas voter will face a material burden to vote after SB 5—much less that any such voter is a minority. *Cf.* D.E. 1051 at 16 n.10 (private plaintiffs' baseless speculation to this effect). As defendants' Exhibit C confirms, the burdens alleged by plaintiffs have been cured by SB 5's reasonable-impediment exception.[2] In no way does Texas's voter-ID law under SB 5 "perpetuate[] an existent denial of access by the racial minority to the political process" or "visit disparate burdens on minority voters." *Id.* at 4, 6.

---

[1] SB 5, Act of May 28, 2017, 85th Leg., R.S., ch. 410, effective January 1, 2018.

[2] As Exhibit C shows, the record here is starkly different than in *North Carolina State Conference of NAACP v. McCrory*. 831 F.3d 204, 240 (4th Cir. 2016), where nothing showed "that the reasonable impediment exception ensures that the photo ID law no longer imposes any lingering burden on African American voters."

## II. SB 5's Reasonable-Impediment Exception Mirrors the Reasonable-Impediment Exception in this Court's Agreed Interim Remedy, and any Differences Between the Two Do Not Perpetuate any Discriminatory Effect.

SB 5's reasonable-impediment exception is virtually identical to the reasonable-impediment exception of this Court's agreed interim remedy. SB 5 does not merely have "surface similarities" to the interim remedy. *Id.* at 5; *see id.* at 15-17.

**A. Both totally excuse the photo-ID requirement.** SB 5, just like the interim remedy, *totally excuses* the photo-ID voting requirement for individuals with a reasonable impediment to obtaining sufficient photo ID.

It is absurd for plaintiffs to suggest that SB 5 "fails specifically to remove or meaningfully modify *any* of the offending voter identification provisions of SB 14." *Id.* at 4-5. SB 14's photo-ID voting requirement is wholly waived under SB 5 for those with a reasonable impediment to getting SB 14-compliant ID. That is indeed a "meaningful[]" modification of SB 14, *cf. id.* at 4—which perhaps explains why it is part of the interim remedy.

It is true that SB 5 expanded the list of compliant photo IDs to also include federal passport cards and SB 14-compliant IDs that expired within the past 4 years, up from 60 days. *Id.* at 5, 11, 13 & n.6. But SB 5 separately provides a *complete waiver* of the photo-ID requirement for voters with a reasonable impediment to getting it. Voters with a reasonable impediment simply do not need a photo ID to vote in Texas under SB 5, so whatever "picking and choosing of acceptable IDs" that occurred in SB 14 no longer presents any obstacle to voting for those with a reasonable impediment. *Cf. id.* at 11. Plaintiffs repeatedly ignore this crucial fact.

**B. Both require completion of a form.** SB 5, just like the interim remedy, requires voters to complete a form—a reasonable-impediment declaration—to use the reasonable-impediment exception. Plaintiffs' brief does not allege—and no record evidence substantiates—any burden with merely having to fill out a piece of paper to vote.

**C. Both include seven expressly enumerated reasonable impediments.** SB 5, just like the interim remedy, contains seven enumerated reasonable impediments that necessarily satisfy its exception. *See* D.E. 1049 at 6.

It is true that SB 5's reasonable-impediment declaration does not contain an additional "other" box with an open-ended blank space for a voter to write anything they wish—whereas the interim remedy did. D.E. 1051 at 15. But plaintiffs do not allege that any of the 14 named individual plaintiffs, any of their 13 voter witnesses, or any other individual Texas voter cannot vote under SB 5's reasonable-impediment exception. Instead, plaintiffs assert in a footnote—without any citation or record evidence—that "[b]y removing the 'other' box . . . , Texas is unnecessarily foreclosing voters with impediments other than those listed—who are disproportionately Latino and Black voters—from using the [reasonable-impediment] process." *Id.* at 16 n.10.

First, this change was not "unnecessar[y]." *Id.* The Legislature had a very good reason for eliminating the "other" box: its abuse during the November 2016 election. Defendants documented this at length.[3] D.E. 1049 at 10-12; D.E. 1049-2 (Exh. B).

---

[3] Plaintiffs do not allege that SB 5—or its omission of an "other" box option—was enacted with a discriminatory purpose, as they *concede* that SB 5 is "remedial legislation." D.E. 1051 at 10. Defendants presented legislative history and examples of the

Regardless, plaintiffs have not pointed to any record evidence of even a single Texas voter who would have a reasonable impediment that is not covered by one of the seven grounds enumerated in SB 5 (and this Court's agreed interim remedy). Furthermore, even if such additional reasonable impediments existed—and there is no basis in or outside the record to conclude that they do—there is no evidence that these additional speculative impediments would be disproportionately borne by minority voters, which is this Court's basis for finding a discriminatory effect.

**D. Both require a non-photo supporting document.** SB 5, just like the interim remedy, requires voters to provide one supporting document with their name and address while using the reasonable-impediment exception. SB 5 even provides that the document cannot be rejected because the address on it does not match the address on the list of registered voters. SB 5 § 2 (new Tex. Elec. Code § 63.001(c-1)).

This requirement cannot possibly be an unlawful burden on voting. Even pre-SB 14 law required voters to show their voter-registration card. Tex. Elec. Code § 63.001(b) (2010). And that equally suffices under SB 5's reasonable-impediment exception: a voter-registration card is an acceptable supporting document. SB 5 *expands* the types of supporting documents to include others as well; in fact, SB 5 allows more documents than even the interim remedy, which did not allow a *copy* of a birth certificate (as SB 5 does). *Compare* SB § 5 (new Tex. Elec. Code § 61.0101(b)(3)) (allowing

_____

abuses of the "other" box on the November 2016 interim remedy reasonable-impediment to show that SB 5—and its decision to omit the "other" box—was not enacted with a discriminatory purpose.

copy of birth certificate), *with* D.E. 895 at 7 (birth certificate "must be an original").[4]
In any event, plaintiffs themselves say that a requirement to show a voter-registra-
tion card does not perpetuate any discriminatory effect. D.E. 1051 at 13-14.[5]

**E. Both allow the same degree of prosecution for intentionally making
a false statement on the declaration.** SB 5, just like the interim remedy, requires
voters to swear or affirm under penalty of perjury on a government form that they do
in fact have a reasonable impediment preventing them from obtaining compliant
photo-ID.

Thus, even under this Court's agreed interim remedy, the State could prose-
cute individuals—to the same extent allowed by SB 5—for making false statements
on reasonable-impediment declarations. SB 5 confirms the penalties for making a

---

[4] SB 5's supporting documents otherwise track the interim remedy: (1) "a government
document," such as a voter-registration certificate; (2) "a copy of a current utility bill,"
"a bank statement," "a government check," or "a paycheck"; or (3) "a certified copy of
a domestic birth certificate or other document confirming birth that is admissible in
a court of law and establishes the person's identity." SB 5 § 5(b) (new Tex. Elec. Code
§ 63.0101(b)). Plaintiffs complain that "SB 5 allows only 'domestic' birth certificates."
D.E. 1051 at 15. But that is not true. SB 5 also permits "other document[s] confirming
birth that [are] admissible in a court of law," which would include foreign birth cer-
tificates. SB 5 § 5 (new Tex. Elec. Code § 63.0101(b)(3)); *e.g.*, *United States v. Deverso*,
518 F.3d 1250, 1254-56 (11th Cir. 2008); *United States v. Montemayor*, 712 F.2d 104,
109 (5th Cir. 1983) (admitting foreign birth certificates). Regardless, plaintiffs do not
even argue that any Texas voter who has a reasonable impediment lacks not only a
domestic birth certificate but any of the wide array of supporting documents allowed
by SB 5 (and this Court's interim remedy), such as a voter registration card.

[5] Plaintiffs' own argument thus refutes any alleged burden from having to show a
supporting document to use the reasonable-impediment exception. Plaintiffs' position
is that any discriminatory effect is eliminated by allowing voter-registration cards to
be used as compliant IDs themselves. *Id.* at 13-14. SB 5 and the interim remedy both
permit voter-registration cards as a supporting document sufficient to use the rea-
sonable-impediment exception. So, even under plaintiffs' view, the need to show a
supporting document cannot possibly create any discriminatory results.

false statement on a reasonable-impediment declaration that were already provided by preexisting Texas law. SB 5 provides: "A person is subject to prosecution for perjury under Chapter 37, Penal Code, or Section 63.0013 for a false statement or false information on the declaration." SB 5 § 2 (new Tex. Elec. Code § 63.001(i)). SB 5 requires the reasonable-impediment-declaration form to provide express notice of these crimes. *Id.* § 2 (new Tex. Elec. Code § 63.001(i)(1)).

Importantly, just like perjury, *see* Tex. Penal Code § 37.02(a), § 63.0013's crime for making a false statement on a reasonable-impediment declaration requires *intent*: "A person commits an offense if the person intentionally makes a false statement or provides false information on a declaration executed under Section 63.001(i)." SB 5 § 3 (new Tex. Elec. Code § 63.0013(a)). Section 63.0013's offense is a "state jail felony."[6] *Id.* (new Tex. Elec. Code § 63.0013(b)). Section 63.0013 thus confirms what Texas law already provided before SB 5: Individuals who *intentionally* make a false entry on a government form (including a reasonable-impediment declaration) can be prosecuted for a state jail felony.[7]

---

[6] State jail felonies for making a false statement on a reasonable-impediment declaration are punishable by jail for 180 days to 2 years and an optional fine up to $10,000. Tex. Penal Code § 12.35. Class A misdemeanors are punishable by jail up to 1 year and/or a fine up to $4,000. *Id.* § 12.21. Perjury—a distinct crime from making a false statement on a government record with intent to induce an election official to allow voting—is a Class A misdemeanor. *Id.* § 37.02(b).

[7] Under Texas law existing before SB 5, individuals who "knowingly make[] a false entry in . . . a governmental record" commit the crime of "Tampering with Governmental Record", Tex. Penal Code § 37.10(a), and the punishment when this crime is committed *intentionally* is a "state jail felony," *id.* § 37.10(c)(1). The requisite intent is an "intent . . . to defraud or harm another." *Id.* "[C]ourts have recognized that 'intent to defraud' has been defined as 'the intent to cause another to rely upon the

6

Plaintiffs repeatedly assert that these potential penalties for committing the crimes of perjury or making a false statement intentionally to induce an election official to allow voting—both of which require intent—somehow perpetuate a discriminatory effect. D.E. 1051 at 7, 15, 16-17. As an initial matter, South Carolina has similar penalties for making false statements on the reasonable-impediment-declaration for voting without photo ID, and that reasonable-impediment-declaration procedure was precleared by a three-judge federal court. *South Carolina v. United States*, 898 F. Supp. 2d 30, 36-37 & nn.5, 39, 42 (D.D.C. 2012) (mem. op.).[8] More fundamentally, if a voter falsely *and intentionally* claims a reasonable impediment to obtaining photo ID without actually having a reasonable impediment, then that voter—by definition—faces no material burden on voting or any discriminatory effect. After all, "the discriminatory effect" found by the Fifth Circuit only extends to "voters who do not have SB 14 ID *or are unable to reasonably obtain such identification*." *Veasey v. Abbott*, 830 F.3d 217, 271 (5th Cir. 2016) (en banc) (emphasis added). In contrast, a voter who actually has a reasonable impediment—or even a voter who inaccurately asserts

---

falsity of a representation, such that the other person is induced to act or refrain from acting.'" *Hunter v. State*, 14-13-00847-CR., 2014 WL 6923116, at *3 (Tex. App.—Houston [14th Dist.] Dec. 9, 2014, pet. ref'd) (mem. op.) (quoting *Wingo v. State*, 143 S.W.3d 178, 187 (Tex. App.—San Antonio 2004), *aff'd*, 189 S.W.3d 270 (Tex. Crim. App. 2006)). A person intentionally falsifying a reasonable-impediment declaration is intending to induce an election official into allowing the person to vote.

[8] *See* Act No. 27, R 54, 119th Leg., R.S. § 5, S.C. Laws, H3003 (ratified May 17, 2011) (codified at S.C. Code § 7-13-710 (D)(1)) (precleared requirement that affidavit listing a reasonable impediment be executed under penalty of perjury); S.C. Code § 7-25-20(3) (fraudulent voting under false pretenses as to circumstances affecting qualification to vote is punishable by up to one year in prison); S.C. Code § 16-9-10(B)(2) (perjury is a misdemeanor punishable by up to six months in prison).

a reasonable impediment *without an intent to deceive*—does not commit perjury or violate § 63.0013 and will not be deterred from voting.

Plaintiffs suggest that "facing 'any type of law enforcement'" to vote is unlawful. D.E. 1051 at 17. That cannot possibly be correct, because it would prevent governments from ever enforcing election laws.

**F. Both allow regular ballots to be cast without any mechanism for invalidating these votes cast.** Finally, SB 5, just like the interim remedy, allows voters using the reasonable-impediment exception to cast *regular* ballots with only one trip to the polls—without any mechanism for those ballots to be invalidated.

Plaintiffs rely heavily on *McCrory*, *id.* at 8-9, but they ignore a key distinction between that North Carolina law and Texas's law. North Carolina's reasonable-impediment exception only allowed "the voter [to] fill out a provisional ballot, which [was] subject to challenge by any registered voter in the county." *McCrory*, 831 F.3d at 241. In contrast, Texas's reasonable-impediment exception allows voters to cast a *regular* ballot, and SB 5 provides: "An election officer may not question the reasonableness of an impediment sworn to by a voter in a declaration described in Subsection (i)." SB 5 § 2 (new Tex. Elec. Code § 63.001(d)). There is no Texas mechanism to invalidate regular ballots cast—including those cast through the reasonable-impediment exception. Thus, Texas's law is now more lax than North Carolina's in *McCrory*—and South Carolina's, which also had a mechanism to invalidate ballots cast through its reasonable-impediment exception, and was nevertheless precleared under VRA § 5 by a three-judge federal district court, *South Carolina*, 898 F. Supp.

2d at 36-37 & nn.5, 39, 42.

So, in Texas, there is no possible "lingering burden," *McCrory*, 831 F.3d at 240, from allegations that "County Boards of Elections were inconsistent about what they deemed a 'reasonable' impediment" and thus which reasonable-impediment ballots these boards were rejecting, *id.* at 243 (Motz, J., dissenting).

## III. BECAUSE SB 5 ELIMINATES ANY DISCRIMINATORY EFFECT, THERE CANNOT POSSIBLY BE ANY ONGOING DISCRIMINATORY-PURPOSE VIOLATION.

Plaintiffs make no allegation that SB 5 was enacted with a discriminatory purpose, and they concede that SB 5 is "remedial legislation." D.E. 1051 at 10. As previously explained by defendants, an ameliorative amendment—like SB 5—eliminates any potential ongoing discriminatory purpose from a previous law. D.E. 1049 at 12-19. So there is no basis to enjoin, under the discriminatory-purpose claim, Texas's photo-ID voting law that includes SB 5's reasonable-impediment exception.

That is so here for at least two reasons. First, SB 5 eliminates any basis for a discriminatory-purpose claim because of the nature of the particular discriminatory-purpose claim alleged by plaintiffs. Plaintiffs alleged a discriminatory purpose from the lack of an exception for poorer voters to vote at the polls without photo ID, but SB 5 provides precisely such an exception. *See id.* at 15. SB 5 thus puts plaintiffs "in the position that they would have been absent the discrimination." D.E. 1051 at 8.

Second, without an ongoing discriminatory effect, there can be no ongoing discriminatory purpose. D.E. 1052 at 9-11 (U.S. remedies brief, collecting cases). An element of a discriminatory-purpose claim is the existence of a discriminatory effect. *See id.*; *see, e.g.*, *Palmer v. Thompson*, 403 U.S. 217, 224 (1971) ("[N]o case in this

9

Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it."); *Cotton v. Fordice*, 157 F.3d 388, 391-92 & n.9 (5th Cir. 1998) (discriminatory-purpose claim requires "effects as well as motive"). And as explained above, SB 5 cures any discriminatory effect.

Plaintiffs rely on inapposite discriminatory-purpose cases[9] that did *not* involve any ameliorative legislative change eliminating the discriminatory effect.[10] For example, *Hunter* invalidated a law because it continued to have a discriminatory *effect*: the law's "original enactment was motivated by a desire to discriminate against blacks on account of race and the section *continues to this day to have that effect*."[11]

---

[9] Plaintiffs cite (D.E. 1051 at 9) *City of Port Arthur v. United States*, but that was a VRA § 5 preclearance case. *See* 459 U.S. 159, 160-61 (1982). VRA § 5 imposes a stricter retrogression standard that differs from § 2's discriminatory-purpose and -effect standards. *South Carolina*, 898 F. Supp. 2d at 51 n.14. *Port Arthur* thus did not involve the proper constitutional or VRA § 2 remedy for discriminatory purpose. *Port Arthur* mentioned in passing that elimination of "the majority-vote element" (requiring runoffs if no one obtained 50% of the vote) "was a reasonable hedge against the possibility that the . . . scheme contained a purposefully discriminatory element," 459 U.S. at 164, 168, but that statement is simply an application of § 5's distinct retrogression standard preventing any potential backsliding when a covered jurisdiction sought to change its election laws. *See Reno v. Bossier Par. Sch. Bd.*, 528 U.S. 320, 335 (2000). *Port Arthur* thus was not considering a case like the one here, where there is no § 5 retrogression standard implicated and the § 2 discriminatory effect has been eliminated.

[10] *See* D.E. 1051 at 2, 4, 9, 10 (relying on *Hunter v. Underwood*, 471 U.S. 222 (1985); *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457 (1982); *City of Richmond v. United States*, 422 U.S. 358 (1975); *Green v. Cty. Sch. Bd. of New Kent Cty.*, 391 U.S. 430 (1968); *Louisiana v. United States*, 380 U.S. 145 (1965)—none of which involved a subsequent ameliorative legislative change that eliminated the discriminatory effect, *see* D.E. 1049 at 15-18).

[11] *Perez v. Abbott*, No. 1:11-CV-360, 2017 WL 1787454 (W.D. Tex. May 2, 2017), was an advisory opinion on a moot issue, so that court lacked Article III jurisdiction to issue that decision. *See Davis v. Abbott*, 781 F.3d 207, 215 (5th Cir. 2015) ("Texas had

471 U.S. at 233 (emphasis added), *quoted in Cotton*, 157 F.3d at 391. And *Louisiana* involved a legislative change, but it was *not* ameliorative. *Louisiana* invalidated a citizenship test for voter registration that "d[id] not provide for a reregistration of voters already accepted by the registrars" so "it would affect only applicants not already registered"; and this perpetuated the discriminatory effect because it "would not disturb the eligibility of the white voters who had been allowed to register while discriminatory practices kept [blacks] from doing so." 380 U.S. at 155. Thus, the Court ordered that Louisiana's "new 'citizenship' test should be postponed . . . until those parishes have ordered a *complete reregistration of voters*, so that the new test will apply alike *to all or to none*." *Id.* (emphases added). Plaintiffs are incorrect in asserting that the law invalidated in Louisiana was "apparently non-discriminatory standing alone."[12] D.E. 1051 at 9.

Plaintiffs try to limit *Cotton* to situations where ameliorative changes occur decades apart, D.E. 1051 at 10, but *Cotton*'s reasoning was not limited to a particular intervening time period. When an ameliorative amendment is made through "a deliberative process" like the legislative process, 157 F.3d at 391—as opposed to "involuntary" amendment made only through the "judicial process," *id.* at 391 n.8—then

---

already mooted the entire lawsuit by repealing the 2011 plan and adopting the interim plan in its place"). The State will be challenging that interlocutory ruling at the appropriate time (the case is still before the district court). Regardless, *Perez*'s (erroneous) conclusion to the contrary rested on a (wrong) finding that the discriminatory effect from the 2011 redistricting plan "persist[ed] in the 2013 plans, though some perhaps to a lesser degree." 2017 WL 1787454, at *1.

[12] In fact, the *Louisiana* footnote that plaintiffs cite makes clear "that the Government ha[d] pending in a lower court a new suit challenging registration procedures in Louisiana 'under the new regime.'" 380 U.S. at 154 n.17; D.E. 1051 at 9.

the "amendment superseded the previous provision *and removed the discriminatory taint associated with the original version,*" *id.* at 391 (emphasis added). Plaintiffs assert that "SB 5 does not even reenact SB 14," D.E. 1051 at 10, but SB 5 amends SB 14 to fundamentally alter SB 14's identification requirement for voting in person. *Id.* at 8. And it is unclear how the formality of including the entire text of a previously enacted statute within a subsequent ameliorative amendment has anything to do with that subsequent remedial amendment's removing discriminatory taint from a previously enacted statute—particularly when *Cotton* itself involved a subsequent "amendment" to the previous statute (broadening that previously existing felon-disenfranchisement statute "by adding 'murder' and 'rape'"), 157 F.3d at 391.

Plaintiffs chide the Legislature for passing SB 5 "while still in the midst of this ongoing litigation."[13] D.E. 1051 at 10. But the Fifth Circuit has made clear that ameliorative legislative amendments are to be encouraged—not shunned. *See, e.g.*, *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408-09 (5th Cir. 1991) (rejecting discriminatory-purpose claim where "[t]he legislature enacted a statute responsive to the district court's order"). Indeed, "courts clearly defer to the legislature in the first instance to undertake remedies for violation of [VRA] § 2," *id.* at 406, and "[the Fifth Circuit] has repeatedly held that it is appropriate to give affected political subdivisions at all levels of government the first opportunity to devise remedies for

---

[13] Contrary to Plaintiffs' statement, the State had not "exhausted all potential legal options." D.E. 1051 at 10. *See Abbott v. Veasey*, 137 S. Ct. 612, 613 (2017) (Roberts, C.J., respecting the denial of certiorari) (any finding of discriminatory purpose or effect "will be better suited for certiorari review" "after entry of final judgment").

violations of the Voting Rights Act," *Westwego Citizens for Better Gov't v. City of West-wego*, 946 F.2d 1109, 1124 (5th Cir. 1991).

## IV. THE STATE HAS ALREADY STIPULATED THAT IT WILL CONDUCT SIGNIFICANT TRAINING OF ELECTION OFFICIALS AND EDUCATION OF VOTERS BEYOND WHAT EVEN THIS COURT'S INTERIM REMEDY ORDERED.

Plaintiffs entirely ignore the fact that the State has already publicly stipulated that it will conduct significant training of election officials and education of voters. *Cf.* D.E. 1051 at 14-17. This training goes beyond even what this Court ordered in the interim remedy (D.E. 895 at 3). *See* D.E. 1052 at 7-9 (U.S. remedies brief).

By the end of 2017, the State will notify each registered voter in writing of the photo-ID voting requirements including SB 5's reasonable-impediment exception, as required by preexisting Texas law. *See* D.E. 1039 at 3 (citing Tex. Elec. Code §§ 14.001(a), 15.001(a), 15.005(a)). The interim remedy did not require such notice. *See* D.E. 895.

The State will spend $4 million on various voter education and outreach efforts over two years. D.E. 1039 at 2. The State already spent $2.5 million on voter education in 2016 under the interim remedy. D.E. 895 at 3. This 2016 education already included significant outreach about the availability of a reasonable-impediment declaration because the interim remedy included such an exception, *id.* at 1-2, just as Texas law now includes under SB 5. And, as SB 5 requires, Texas will continue to use mobile units to provide free EICs to voters. SB 5 § 1 (new Tex. Elec. Code § 31.013(a)).

The State will also train its election officials, update its VoteTexas.gov website, and update training materials for election officials and poll workers. D.E. 1039 at 1-2. It is particularly ironic for plaintiffs to complain about a perceived lack of training

13

of election officials and allege that the "exigency" to "train officials now regarding 2018 procedures" is "entirely self-created" by defendants. D.E. 1051 at 18. It is *plaintiffs themselves* who have objected to defendants' efforts to train election officials this month about not only the interim remedy's but also SB 5's reasonable-impediment exception in the alternative. *See* D.E. 1047 (defendants' pending motion requesting clarification regarding training election officials this month about both reasonable-impediment exceptions); D.E. 1047-2 (Exh. B to that motion, showing plaintiffs' objection: "**The materials SHOULD NOT include any description of SB 5.**"; "Any mention of SB 5 in these educational materials is misleading, confusing, and in contempt of the Court's order.").[14]

Thus, given the previous training and education already conducted under this Court's interim remedy, D.E. 895 at 3, and the State's public stipulation to significant training and education, there is no "necessity" for this Court to enter any remedy "of educational and training efforts." *Veasey*, 830 F.3d at 271-72. Regardless, any remedy about education and training could not possibly alter the substance of Texas's photo-ID voting laws including SB 5.

## V.   THERE IS NO BASIS FOR THIS COURT TO RETAIN JURISDICTION.

Plaintiffs' request (D.E. 1051 at 2, 19) for this Court to retain jurisdiction to review any potential ameliorative photo-ID voting legislation must be denied. *See* D.E. 1052 at 11-12 (U.S. remedies brief). In VRA § 3, Congress restricted when courts

---

[14] Defendants' motion for clarification is thus not a "thinly veiled attempt" to do anything. D.E. 1051 at 18. It is a request to train election officials in a way that plaintiffs expressly objected to and alleged (wrongly) was in contempt of this Court's order.

can order judicial preclearance of election laws. *See, e.g.*, *City of Milwaukee v. Illinois*, 451 U.S. 304, 313-16 (1981) (federal statutes supersede federal common law). Per this Court's order, defendants will address § 3 preclearance at a later date. *See* D.E. 1049 at 19; D.E. 1044 at 2 (order).

The reason why courts have retained jurisdiction in election cases is to give legislatures the first opportunity to remedy violations (as courts are required to do, *see supra* pp.12-13). *See* D.E. 1052 at 12 (citing *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978); *Westwego Citizens*, 946 F.2d at 1124). But, here, the Texas Legislature has now remedied the violation found by the Fifth Circuit.

In all events, any potential retention of jurisdiction would only be proper if an ordinary injunction could not remedy any possible violations. Retention of jurisdiction is "not necessary here in light of [an ordinary] injunction." *McCrory*, 831 F.3d at 241.

## CONCLUSION

For the reasons stated above, defendants respectfully request that the Court enter the following remedy, and only this remedy: "The reasonable-impediment-declaration procedure contained in this Court's August 10, 2016 agreed interim remedy, *see* D.E. 895, shall be used in Texas elections through December 31, 2017—and this remedy dissolves on January 1, 2018." D.E. 1049 at 19.

Date: July 17, 2017                    Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant
   Attorney General

BRANTLEY D. STARR
Deputy First Assistant
   Attorney General

JAMES E. DAVIS
Deputy Attorney General
   for Litigation

/s/ Angela V. Colmenero
ANGELA V. COLMENERO
Chief, General Litigation Division

MATTHEW H. FREDERICK
Deputy Solicitor General

JASON R. LAFOND
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697

*Counsel for Defendants*

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief does not exceed 15 pages, the page limit established by this Court's June 20, 2017 order on procedure for addressing remedies.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO