IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13-cv-193 (NGR) |
| | ) | [Lead Case] |
| GREG ABBOTT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UNITED STATES'S RESPONSE BRIEF REGARDING REMEDIES

As amended by S.B. 5, Texas's voter ID law achieves the United States's objectives in bringing this suit: it ensures that Texas law comports with Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and preserves the rights of Texas voters to free and fair elections. Compl. Prayer ¶ 1; U.S.'s Brief Regarding Remedies at 1–4 (ECF No. 1052). The Texas Legislature enacted S.B. 5 in direct response to the *en banc* Fifth Circuit's invitation that it adopt a legislative remedy "to cure the infirmities" that this Court found in S.B. 14. *Veasey v. Abbott*, 830 F.3d 216, 269 (5th Cir. 2016) (en banc). S.B. 5 not only largely tracks the Court's interim remedy to which all parties agreed and which was used in the 2016 general election, but also eradicates any "discriminatory effect" or intent that the Court found in S.B. 14. *Id.* at 269.

Bedrock principles of federalism and comity require the United States (in bringing enforcement actions) and this Court (in deciding cases) to defer to both Texas's "legitimate policy objectives," *Veasey*, 830 F.3d at 269, and its "constitutionally and legally valid" legislative remedy in S.B. 5, *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 406 (5th Cir. 1991); *see also Wise v. Lipscomb*, 437 U.S. 535, 540 (1978); *Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109, 1124 (5th Cir. 1991). Indeed, this rule of federal judicial deference

1

to state legislative prerogatives is so strong that this Court may not "substitut[e]" even an "objectively superior" judicial remedy for S.B. 5. *Operation Push*, 932 F.2d at 406–07; ECF No. 1052 at 1–4. This governing law, the *en banc* Fifth Circuit's directions, and the record require deferring to the Texas Legislature, vacating the agreed interim remedy as of January 1, 2018, and declining the requested remedies of an injunction, declaratory judgment, and retention of jurisdiction.[1]

## ARGUMENT

### I. S.B. 5 FULLY REMEDIES ANY DISCRIMINATORY EFFECT IN TEXAS'S VOTER ID LAW

S.B. 5 codifies a reasonable impediment procedure that largely tracks the procedure in the Court's agreed interim remedy. *See* ECF No. 1052 at 4–10. S.B. 5 thus permits voters to vote in person if they have one of seven broadly defined reasonable impediments to obtaining S.B. 14 identification and present an acceptable form of non-photographic identification such as a voter registration certificate. *See id.* The State has publicly committed to conduct a comprehensive statewide voter education and training program to ensure full implementation of S.B. 5's protections of Texas voters. *See id.* In at least two significant respects, this program exceeds the program required by the interim remedy because it will involve written notice to every active

---

[1] Private Plaintiffs have suggested in passing, with no citation to authority, that the United States is "precluded from participating in this stage of proceedings" related to remedies on the discriminatory-purpose claim. Br. Of Private Plaintiffs Proposing A Briefing Procedure at 2 (ECF No. 1040). That is simply incorrect. First, the United States remains a party in this case. Second, even if the United States were not a party, it still could file briefs and present argument on all outstanding remedial issues. As Private Plaintiffs are aware, 28 U.S.C. § 517 authorizes the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States," even where the United States is not a party to the suit or claim. The discriminatory-purpose claim implicates the interpretation and application of Section 2 of the Voting Rights Act, a statute over which Congress has accorded the Attorney General broad enforcement authority. *See* 52 U.S.C. § 10308(d). The United States has a substantial interest in ensuring Section 2's proper interpretation and uniform enforcement across the county.

registered Texas voter and expenditure of $4 million over the next two years. *See id.* S.B. 5 therefore fully remedies any discriminatory effect in Texas's voter ID law, creates a "constitutionally and legally valid" legislative remedy for the violations that the Court found, *Operation Push*, 932 F.2d at 406, and precludes entry of any additional remedies, *e.g.*, *United States v. W.T. Grant & Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations."); *Veasey*, 830 F.3d at 269–72; *Operation Push*, 932 F.2d at 406–07; ECF No. 1052 at 4–10.

Private Plaintiffs nonetheless ask the Court to override S.B. 5 with judicial remedies because, in their view, S.B. 5 fails to "*completely* cure[]" the discriminatory effect that the Court found in S.B. 14. Br. of Private Pls. Regarding the Proper Remedies at 11 (ECF No. 1051) (emphasis in original). But Private Plaintiffs' various criticisms of S.B. 5 fail to establish that S.B. 5 is "constitutionally [or] legally" invalid under the Fourteenth Amendment or the Voting Rights Act. *Operation Push*, 932 F.2d at 406. Rather, Private Plaintiffs are inviting the Court to "substitut[e]" a remedy they view as "superior" for the Texas Legislature's chosen remedy. *Id.* at 406–07. None of their five arguments justifies entry of an injunction or declaratory judgment.

First, Private Plaintiffs point to the fact that S.B. 5 does not codify any provision "for education and training." ECF No. 1051 at 14. But the State has made a public commitment to implement a voter education and training program that exceeds the program required by the agreed interim remedy. *See id.*; *see also* ECF No. 1052 at 7–9. There is no requirement that the State's voter education and training program be memorialized in statute. Moreover, in all events, any concerns regarding the State's completion of its voter education and training efforts provide no occasion to "substitut[e]" a permanent injunction or declaratory judgment for S.B. 5. *Operation Push*, 932 F.2d at 406. Instead, the only remedy available would be for the Court to retain

jurisdiction for a limited time and for the sole purpose of ensuring that the State performs appropriate voter education and training. *See, e.g.*, *Veasey*, 830 F.3d at 271–72; ECF No. 895 ¶¶ 10–12; ECF No. 1052 at 8–9.

Second, Private Plaintiffs point out that S.B. 5 allows voters using the reasonable impediment procedure to present "'domestic' birth certificates" but not foreign birth certificates, which they allege "is likely to discriminate against Latino voters who are disproportionately naturalized citizens born outside the United States." ECF No. 1051 at 15. S.B. 5, however, does not require any voter to present a birth certificate. *See* S.B. 5 § 5. Rather, it allows voters using the reasonable impediment procedure to present one of a variety of forms of non-photographic identification, including voter registration certificates. *See id.* And Private Plaintiffs embrace voter registration certificates as a remedy for the violations that the Court found in S.B. 14 precisely because, among other things, those certificates *"avoid . . . the problems of non-traditional and out-of-state birth certificates."* ECF No. 1051 at 14 (emphasis added); S.B. 5 § 5. In Private Plaintiffs' own words, voter registration certificates are "secure document[s]," are "sent in a nondiscriminatory fashion, free of charge, to every registered voter," and "potentially provide[] a substantial cure for the discriminatory and disproportionate impact" that the Court found. *Id.* Thus, under their own reasoning, S.B. 5's list of acceptable non-photographic identification cures, rather than inflicts, any discriminatory effect upon minority voters. *See id.* at 14–15.

Third, Private Plaintiffs point out that S.B. 5 "eliminates" the fill-in-the-blank "Other" reasonable impediment option that the agreed interim order provided, and contend in a footnote that S.B. 5 "foreclose[s] voters with impediments other than those listed—who are disproportionately Latino and Black voters—from using the" reasonable impediment procedure. *Id.* at 15 & 16 n.10. Private Plaintiffs, however, present no evidence from the reasonable

4

impediment declarations and cite nothing for the assertion that minority voters "disproportionately" used the "Other" option in the 2016 general election. *See id.* Moreover, the Texas Legislature had "legitimate policy objectives," *Veasey*, 830 F.3d at 269, for removing the "Other" option based upon its experience during the 2016 general election. Defs.' Br. On Remedies at 10 (ECF No. 1049).

Fourth, Private Plaintiffs object to S.B. 5's criminal penalties provision, which "increases the penalty" for an intentionally false statement on a reasonable impediment declaration to "a state jail felony." ECF No. 1051 at 16–17. Yet the agreed interim remedy already attached the "penalty of perjury," a Class A misdemeanor, to an intentionally false affidavit. ECF No. 895 at 6. Moreover, even the new penalty of a state jail felony is substantially lower than the maximum federal penalty for submission of false information in registering or voting in a federal election. *See* 52 U.S.C. § 10307(c); *see also id.* § 20507(a)(5)(B) (requiring notice of penalties when registering through federally mandated mechanisms). In all events, there is nothing in the record regarding any prosecutions for false statements under the agreed interim remedy, or to suggest that the possibility of other criminal penalties under S.B. 5 "intimidate[s]" or "chill[s]" anyone, ECF No. 1051 at 17, discriminates against minority voters, or is "constitutionally [or] legally" invalid, *Operation Push*, 932 F.2d at 406.

Finally, Private Plaintiffs argue, without any citation to authority, that "Texas has failed to meet its burden to show that SB 5 completely cures the results violation." ECF No. 1051 at 11. The burden falls on challengers of the State's preferred remedy "to offer objective proof" that S.B. 5 perpetuates the violations the Court found. *Operation Push*, 932 F.2d at 407. The Court should defer to the Texas Legislature, vacate the agreed interim remedy effective January 1, 2018, and decline any further remedies.

## II. S.B. 5 PRECLUDES ENTRY OF AN INJUNCTION OR DECLARATORY JUDGMENT ON THE DISCRIMINATORY-PURPOSE CLAIM

S.B. 5 also eliminates any "ongoing violation of federal law" on Private Plaintiffs' discriminatory-purpose claim and, thus, precludes entry on that claim of a declaratory judgment or permanent injunction prospectively invalidating Texas's amended voter ID law. *Green v. Mansour*, 474 U.S. 64, 67 (1985); *see also W.T. Grant & Co.*, 345 U.S. at 633; ECF No. 1052 at 9–11. In the first place, S.B. 5's elimination of the discriminatory effect that the Court found in S.B. 14 alone forecloses entry of the requested injunctive and declaratory remedies. *See* ECF No. 1052 at 9–11; *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979); *Hunter v. Underwood*, 471 U.S. 222, 233 (1985); *Cotton v. Fordice*, 157 F.3d 388, 391-92 & n.8 (5th Cir. 1998). Moreover, S.B. 5 makes "meaningful alterations" to Texas's voter ID law that "render the [amended] law valid." *Chen v. City of Houston*, 206 F.3d 502, 521 (5th Cir. 2000); ECF No. 1052 at 9–11.

Private Plaintiffs have never asserted that the Texas Legislature enacted S.B. 5 with discriminatory intent. *See* ECF No. 1052 at 4–11. They nonetheless offer four arguments for enjoining Texas's amended voter ID law on their discriminatory-purpose claim, all of which fail. First, they argue that "[a] full and permanent injunction is the *only* appropriate remedy when a court finds that a law was motivated by discriminatory intent." ECF No. 1051 at 4 (emphasis original). Under this view, however, a legislative amendment—even one that cured the alleged discriminatory effect or intent or even both—could never remedy a statute that a court has found to be tainted with discriminatory intent because an injunction would always be required. *Id.* This conclusion would turn the rule of federal judicial deference to state legislative remedies on its head because it would *require* courts to "substitut[e]" an injunction for an "otherwise constitutionally and legally valid" remedy "enacted by the appropriate state government unit." *Operation Push*,

6

932 F.2d at 406–07; *see also Wise*, 437 U.S. at 540; *Perry v. Perez*, 565 U.S. 388 (2012); ECF No. 1052 at 2–4. The Court should reject that result, particularly in light of the Fifth Circuit's specific invitation that the Legislature enact a "legislative fix" here. *Veasey*, 830 F.3d at 271.

None of the cases Private Plaintiffs cite holds that a court is required to override a valid legislative remedy with an injunction. In fact, none involved a legislative amendment to the challenged state law, let alone an amendment whose "meaningful alterations" cured the alleged violations. *Chen*, 206 F.3d at 521; *see, e.g.*, *City of Richmond v. United States*, 422 U.S. 358, 378 (1975) (involving violation of Section 5 of the Voting Rights Act); *Hunter*, 471 U.S. at 233 (involving law whose "original enactment was motivated by a desire to discriminate against blacks on account of race and [that] continues to this day to have that effect"); *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 470 (1982) (law tainted by discriminatory intent that "imposes substantial and unique burdens on racial minorities"). Instead, each of those cases involved an ongoing violation of federal law that had not been cured by legislation. *See City of Richmond*, 422 U.S. at 378; *Hunter*, 471 U.S. at 233; *Washington*, 458 U.S. at 470. They therefore did not even implicate the rule of federal judicial deference to state legislative remedies.

Moreover, to the extent that Private Plaintiffs argue that the Legislature's alleged "discriminatory intent" in enacting S.B. 14 alone warrants a permanent injunction and declaratory judgment even though S.B. 5 has cured any discriminatory effect, *see* ECF No. 1051 at 4, that argument is wrong. As explained, the Court may enter a permanent injunction and declaratory judgment on the discriminatory-purpose claim only if Texas's amended voter ID law continues to have a discriminatory effect. *See* ECF No. at 9–11; *Arlington Heights*, 429 U.S. at 266; *Personnel Adm'r*, 442 U.S. at 279; *Hunter*, 471 U.S. at 233; *Cotton*, 157 F.3d at 391–92 & n.8. Even Private Plaintiffs' cited cases involving entry of a permanent injunction invalidating a state law confirm

7

as much. *See, e.g.*, *Hunter*, 471 U.S. at 233 (involving ongoing discriminatory "effect"); *Washington*, 458 U.S. at 470 (involving ongoing "substantial and unique burdens on racial minorities"); *Louisiana v. United States*, 380 U.S. 145, 154–55 & n.17 (1965) (involving injunction to "eliminate the discriminatory effects of the past" that carried over to the new test).

The Supreme Court's decision in *City of Richmond*, *see* ECF No. 1051 at 4, does not hold otherwise. That case addressed the denial of preclearance under the retrogressive-purpose prong of Section 5 of the Voting Rights Act, which did not require a showing of discriminatory effect. *See City of Richmond*, 422 U.S. at 378. *City of Richmond* therefore did not hold that a court may enter a permanent injunction prospectively invalidating a state law on a discriminatory-purpose claim under Section 2 or the Constitution in the absence of an ongoing discriminatory effect. *See id.*; *see also City of Port Arthur v. United States*, 459 U.S. 159, 168 (1982) (involving retrogressive-purpose prong of Section 5).

Second, Private Plaintiffs argue that because S.B. 5 does not repeal S.B. 14, it "does not place persons unconstitutionally denied an opportunity or advantage in 'the position they would have occupied in the absence of [discrimination].'" ECF No. 1051 at 6 (quoting *United States v. Virginia*, 518 U.S. 515, 547 (1996)). Private Plaintiffs thus assume that but for the discriminatory intent and effect the Court found, the Texas Legislature would not have enacted a voter ID law at all. *See id.* Yet the record demonstrates that, in the but-for world, the Texas Legislature would have adopted its voter ID law as amended by S.B. 5 rather than no law at all. In the first place, the Texas Legislature that enacted S.B. 14 in 2011 was deeply committed to enacting a voter ID law on its fourth attempt to do so. *See, e.g.*, *Veasey v. Perry*, 71 F. Supp. 3d 627, 645–46 (S.D. Tex. 2014), *aff'd in part and rev'd in part*, *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc). Moreover, when the Texas Legislature revisited its voter ID law with the benefit of this Court's

8

findings earlier this year, it chose to amend that law with S.B. 5 rather than to repeal it. Thus, because Texas's amended voter ID law is constitutionally and legally valid, it *already* places Texas voters "in the position they would have occupied in the absence of" the discrimination the Court found. *Virginia*, 518 U.S. at 547.

Third, Private Plaintiffs attempt to distinguish *Cotton v. Fordice* because the Texas Legislature did not "reenact SB 14, but merely amend[ed] it" through S.B. 5. *See* ECF No. 1051 at 10. This is form over substance: neither *Cotton* nor any other case holds that, in order to cure the violations the Court found, the Texas Legislature was required to repeal and replace S.B. 14 rather than amend it. *See Cotton*, 157 F.3d at 391–92 & n.8; *Operation Push*, 932 F.2d at 406–07; *Wise*, 437 U.S. at 540; *Perez*, 565 U.S. 388; ECF No. 1052 at 2–4. To the contrary, as explained, *Cotton* requires deference to the Legislature's chosen remedy because that remedy "superseded the previous provision and removed the discriminatory taint associated with" S.B. 14. *Cotton*, 157 F.3d at 391; *see also* ECF No. 1052 at 10–11.

Finally, Private Plaintiffs' reliance on the Fourth Circuit panel majority's decision in *N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016), is misplaced. In the first place, the law challenged in that case, unlike S.B. 14, "imposed a number of voting restrictions" that the panel majority found harmed minority voters, such as reductions in early voting, elimination of registration tools, and elimination of out-of-precinct voting. 831 F.3d at 216. The panel majority held that the reasonable impediment amendment to the voter ID provision of the law did not remedy the effect or purpose of these other restrictions. *See id.* at 240.

To be sure, the panel majority further posited that North Carolina's reasonable impediment amendment did not remove the discriminatory "burden" of the voter ID provision in the original law because completing the reasonable impediment procedure required "undertak[ing] a multi-

step process." *Id.* But Private Plaintiffs cannot be heard to suggest that a reasonable impediment procedure like the one established in S.B. 5 creates a discriminatory burden on Texas's voters. After all, all parties, including Private Plaintiffs, agreed that the reasonable impediment procedure created in the Court's agreed interim remedy was an appropriate interim remedy for the discriminatory effect finding of this Court and the Fifth Circuit.

In all events, the Fourth Circuit panel majority's reasoning in *N.C. State Conference* runs counter to the *en banc* Fifth Circuit's directions in this case, where it invited Texas to adopt a legislative remedy and indicated that a "reasonable impediment" procedure might be such an "appropriate amendment[]." *Veasey*, 830 F.2d at 269. In fact, one member of the Fourth Circuit panel dissented from the majority's reasoning because "a superseding statute" can remedy "an unconstitutional law" and foreclose any additional "judicial remedy." *N.C. State Conference*, 831 F.3d at 242 (Motz, J., dissenting). The Court should defer to the Texas Legislature and the *en banc* Fifth Circuit's instructions and decline to enter an injunction or a declaratory judgment here.

## III. THE COURT SHOULD DECLINE TO RETAIN JURISDICTION TO REVIEW FUTURE LEGISLATION

Private Plaintiffs request only in passing that the Court retain jurisdiction "to review any legislation to determine whether it properly remedies the violations." ECF No. 1051 at 2, 19. To the extent that they seek judicial preclearance of future Texas laws, such relief is available only under Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c), which the Court has agreed, at their request, to address at a later time and which the United States has reserved the right to address then. *See* Order at 2 (ECF No. 1044); ECF No. 1052 at 11–12.

Moreover, to the extent that Private Plaintiffs request retention of jurisdiction for any other purpose, they have failed to present any argument in support of this relief and have therefore waived it. *See, e.g.*, ECF No. 1051 at 2, 19; *Marco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d

10

864, 877 (5th Cir. 2009); *United States v. Scroggins*, 599 F.3d 443, 446–47 (5th Cir. 2010) (stating that "[i]t is not enough to merely mention or allude to a legal theory" and concluding that the failure to brief an argument sufficiently results in its waiver). In all events, as the United States has explained, no such relief is available here. *See* ECF No. 1052 at 12. Even the Fourth Circuit panel in *N.C. State Conference* unanimously denied a request for similar relief because that relief would unduly "bind[] the State's hands" to exercise its constitutional authority to enact new voting and election laws without judicial oversight. *See* 831 F.3d at 241.

## CONCLUSION

The Court should vacate the agreed interim remedy as of the January 1, 2018 effective date for S.B. 5 and should decline to enter an injunction, declaratory judgment, or retention of jurisdiction to review future legislation.

Date: July 17, 2017

Respectfully submitted,

ABE MARTINEZ  
Acting United States Attorney  
Southern District of Texas

JOHN M. GORE  
Deputy Assistant Attorney General  
Civil Rights Division

*/s/ John M. Gore*  
T. CHRISTIAN HERREN, JR.  
RICHARD DELLHEIM  
DANIEL J. FREEMAN  
Attorneys, Voting Section  
Civil Rights Division  
U.S. Department of Justice  
950 Pennsylvania Ave. NW  
Washington, D.C. 20530

*Counsel for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

                                                  */s/ Daniel J. Freeman*
                                                  Daniel J. Freeman
                                                  U.S. Department of Justice
                                                  950 Pennsylvania Ave., N.W.
                                                  Washington, D.C. 20530