IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>               Plaintiffs,<br><br>      v.<br><br>GREG ABBOTT, *et al.*,<br><br>               Defendants. | Civil Action No. 2:13-cv-193 (NGR) |

**PRIVATE PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO ISSUE SECOND INTERIM REMEDY OR TO CLARIFY FIRST INTERIM REMEDY**

On June 28, 2016, Texas filed a motion that is nothing more than an attempted end-run around this Court's order on procedure for addressing remedies. Doc. 1047. Despite its representations to the contrary, the motion presents no urgent issues that justify any further acceleration of this Court's already accelerated remedy schedule.

As the United States' response reinforces, *see* Doc. 1057, Texas's requested relief regarding the 2017 elections is superfluous and unnecessary because no parties dispute that the interim remedy already applies to 2017 elections. Texas's requested relief regarding SB 5 also presents no emergency. SB 5, by its own terms, does not go into effect until 2018. The 2018 elections are not imminent. The "exigency" Texas presents is its desire to train officials now regarding 2018 procedures. This exigency is entirely self-created and is no exigency at all since Texas submits that it "intend[s] to train their election officials on SB 5, in the alternative, beginning in July 2017." Doc. 1047 at 5.

Meanwhile, Texas's motion requires the Court to address one of the key issues at the heart of the remedial briefing: whether SB 5 provides an adequate and complete remedy for SB 14's purposeful discrimination against minority voters in violation of the Voting Rights Act and the Fourteenth and Fifteenth Amendments and SB 14's accompanying unlawful discriminatory results in violation of the Voting Rights Act.[1] Therefore, this Court should resolve Texas's duplicative motion at the same time that it issues its final decision on a permanent remedy.[2]

Because the issues presented by Texas's request regarding SB 5 in this motion are identical to the issues addressed in Private Plaintiffs' opening and responsive briefs on remedies, Private Plaintiffs incorporate those briefs in full and do not repeat those arguments here. As described in those briefs, SB 5 is built on, and incorporates the discriminatory framework of, SB 14 and therefore cannot survive this Court's discriminatory purpose finding. Moreover, SB 5's failure to include an education or training plan and increased threat of intimidation, among other defects, make it an insufficient remedy for the Section 2 results violation alone. Therefore, in due course, Private Plaintiffs respectfully request the Court deny this motion with respect to SB 5, enjoin SB 14 *and* SB 5, and enter the final and permanent remedies Private Plaintiffs request.

---

[1] As Private Plaintiffs discuss in their briefs on remedies, it does not.

[2] The United States has also suggested that this Court defer ruling on Texas's requested relief until this Court makes a determination regarding the appropriate final remedy for both the intent and purpose claims. Doc. 1057 at 3. Plaintiffs concur on that limited point. But for all of the reasons described in Private Plaintiffs' remedy briefs, Private Plaintiffs do not concur with the United States' position that the Court should "ultimately grant [Texas'] request at the conclusion of remedy proceedings." Doc. 1057 at 2. The United States' position that this Court should not grant *any* further relief despite this Court's finding of discriminatory purpose—including retention of jurisdiction to ensure that there is no ongoing discrimination—is alarming and inconsistent with the United States' past position in this matter. For example, the United States previously asserted that the "appropriate remedy" for the intent violation is a "permanent and final injunction precluding implementation of the voter identification provisions of SB 14," which should lead to Texas's "enforcing the voter identification requirements for in-person voting in effect immediately prior to the enactment and implementation of SB 14." Doc. 610 at ¶¶ 176, 179. Also, contrary to the position that it presses now, the United States unequivocally stated that the Court had the inherent power to retain jurisdiction to review future legislative action. USA Br. at 71, *Veasey v. Abbott*, No. 14-21127 (5th Cir. Mar. 3, 2015).

I. **ALL PARTIES AGREE THAT THE INTERIM REMEDY APPLIES TO 2017 ELECTIONS, AS THIS COURT HAS ALREADY ORDERED.**

First, Texas asks this Court to order (1) that the interim remedy applies to 2017 elections and (2) that the State may begin training election officials on the interim remedy for 2017 elections. But all parties agree that this Court's August 2017 interim remedial order governs 2017 elections. Doc. 1057 at 2 ("No clarification or further order is necessary for Texas to use the procedures set forth in the Interim Remedial Order for remaining elections in 2017 and for Texas to train its election officials on these procedures."). Paragraph 14 of the Court's interim remedial order makes this plain. Doc. 895 ("These procedures shall remain in place until further order of this Court."). Indeed, Texas has implemented the procedures in the Court's order for every election thereafter, including elections on May 6, 2017, the uniform election date used by many local jurisdictions across the State. Therefore, it is not clear why Texas now seeks this unnecessary clarification. Those requests for relief present no live dispute for this Court's resolution.

II. **TEXAS'S REMAINING REQUESTS MUST BE RESOLVED DURING THE REMEDY PROCEEDINGS ALREADY UNDERWAY.**

Texas's remaining requests for relief concern the implementation of SB 5, the sufficiency of which is at the core of these ongoing proceedings on remedies. In fact, the remedy that Texas recommends in its briefing mirrors the request in their pending motion. *Compare* Doc. 1047 (asking for an order that "this new order will end as of January 1, 2018, when recently enacted Senate Bill 5 ("SB 5") takes effect, because SB 5 adopts virtually the same reason- able-impediment procedure as in the first interim remedy order") *with* Doc. 1058 ("Defendants respectfully request that the Court enter the following remedy, and only this remedy: "The reasonable-impediment-declaration procedure contained in this Court's August 10, 2016 agreed

3

Case 2:13-cv-00193 Document 1061 Filed on 07/19/17 in TXSD Page 4 of 11

interim remedy, *see* D.E. 895, shall be used in Texas elections through December 31, 2017—and this remedy dissolves on January 1, 2018.").

This Court has set a reasonable and expedited schedule for addressing remedies that will provide Texas with notice of the permanent remedy for SB 14's violations in short order. The parties submitted their responsive briefs on remedies on July 17 and the briefing on those issues is now complete. Since both the motion and the remedy briefing are fully briefed and pending before the Court and both address the same issues, the Court should resolve them together.

Ultimately, this motion was nothing more than an attempt to circumvent the Court's schedule for addressing remedies by filing ahead of schedule and seeking an immediately appealable order prior to this Court's final remedial order. *See* 28 U.S.C. § 1292. At this point, with both the motion and remedy briefing before the Court addressing the same issues, it would make little sense to address one before the other.

### III. THE REASONABLE IMPEDIMENT DECLARATIONS DEMONSTRATE PROPER USE OF THE "OTHER" BOX.

While Private Plaintiffs will not repeat their fully briefed arguments regarding the appropriate remedy here, *see* Docs. 1051, 1059, Texas's motion and briefs on remedies rely on extra-record evidence regarding the usage of the "other" box on the reasonable impediment declaration in the 2016 elections that requires correction. Texas's motion and briefing cites only the handful of declarations where, as Texas characterizes, a voter provided "statements simply denigrating the law" as their reasons for not showing SB 14 ID. Doc. 1047 at 12-13. Putting aside whether any of those responses are improper, Texas does not contend that any of these individuals were not eligible to vote or were not who they represented themselves to be. Therefore, it is unclear why Texas believes that it needs to be able to challenge the validity of

4

those ballots and why the absence of that option requires the elimination of the "other" box. *Id.* at 14.

Meanwhile, Texas asserts that "plaintiffs have not pointed to any record evidence of even a single Texas voter who would have a reasonable impediment that is not covered by one of the seven grounds enumerated in SB 5" and that there is "no basis in or outside the record to conclude that" such other reasonable impediments exist. Doc. 1058 at 4. This is not true. Private Plaintiffs did not cite to the reasonable impediment declarations in their remedy briefing because the Court specifically admonished the parties not to rely on documents outside the record in that briefing, an admonishment that Texas ignored. *See, e.g.,* Doc. 1049 at 11-12, Ex. B to Doc. 1049, Doc. 1058 at 3.

Nonetheless, a review of the reasonable impediment declarations from 2016 shows that many Texas voters made good faith use of the "other" box to describe the reasons that they lacked SB 14 ID. A number of voters explained that they had just recently relocated to Texas and therefore did not yet have the opportunity to obtain a Texas photo ID even though they may have an out-of-state ID. *See, e.g.,* Ex. A at 1 ("just moved here"), at 2 ("Just became resident-don't drive in Texas."), at 3 ("Just moved to TX, haven't gotten TX license yet."). Some voters used the "other" box to cite a financial hardship in accessing the necessary SB 14 ID. *See, e.g.,* Ex. A at 4 ("financial hardship"), at 5 ("unable to afford TX DL"), at 6 ("Lack of funds"). Some voters used the "other" box to explain that they are Texas students from out-of-state that may rely on their student IDs as Texas identification. *See, e.g.,* Ex. A at 7 ("out of state college student"); Ex. B (Defendants' Bates Number DEF_RID_0010102)[3] ("Student ID [redacted] driver's license").

---

[3] Several of Private Plaintiffs' counsel experienced technical difficulties accessing four of the referenced documents in this response and converting them to a format to file with the Court. Private Plaintiffs' counsel expect to resolve those difficulties and file an Exhibit B with those four documents to supplement this response on the morning of July 20.

And still some other voters used the "other" box on the reasonable impediment declaration to explain their specific hardships in obtaining a SB 14 ID. *See, e.g.,* Ex. A. at 8 ("[redacted] driver's license – attempted to get Texas EIC but they wanted a long-form birth certificate"); Ex. B (Defendants' Bates Number DEF_RID_0010113)[4] ("My mother passed away and I cannot locate my SS card and other personal info that she possessed."); Ex. B (Defendants' Bates Number DEF_RID_0010139)[5] ("Daughter doesn't want him driving at age 85"); Ex. B (Defendants' Bates Number DEF_RID_00 10189)[6] ("99 years old no ID"). Thus, the "other" box was clearly useful to voters using the reasonable declaration process. It gave voters the opportunity to sign the declaration and vote even if they did not feel that their reasonable impediment lined up directly with any of the seven specifically listed options. Texas's interest in avoiding a few stray remarks that, as they characterize it, "denigrat[e] the law"[7] is minimal and cannot outweigh the benefits of the flexibility that this option provides to the voters that must sign the declaration under penalty of perjury to vote.

## CONCLUSION

For the foregoing reasons, Private Plaintiffs respectfully request that the Court address this motion at the same time that it issues its permanent remedial order. Private Plaintiffs further request that the Court deny this motion with respect to SB 5, enjoin SB 14 *and* SB 5, and enter the final and permanent remedies Private Plaintiffs request.

Date: July 19, 2017                    Respectfully submitted,

                                       /s/ Danielle M. Lang

---

[4] *See supra* note 3.
[5] *See supra* note 3.
[6] *See supra* note 3.
[7] Once again, it is worth reiterating that there is no claim of voter fraud or that any of these voters were ineligible or improperly voted. Texas objects to what they chose to write in the "other" section of the declaration.

J. GERALD HEBERT
DANIELLE M. LANG*
Campaign Legal Center
1411 K Street NW Suite 1400
Washington, DC 20005
*Admitted in New York and California Courts only; Practice limited to U.S. Courts and federal agencies.

CHAD W. DUNN
K. SCOTT BRAZIL
BRAZIL & DUNN
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068

ARMAND G. DERFNER
Derfner & Altman
575 King Street, Suite B
Charleston, S.C. 29403

NEIL G. BARON
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539

DAVID RICHARDS
Richards, Rodriguez & Skeith, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701

*Counsel for Veasey/LULAC Plaintiffs*

LUIS ROBERTO VERA, JR.
Law Office of Luis Roberto Vera Jr.
111 Soledad, Ste 1325
San Antonio, TX 78205

*Counsel for LULAC*

JON M. GREENBAUM
EZRA D. ROSENBERG
BRENDAN B. DOWNES
Lawyers' Committee for
Civil Rights Under Law
1401 New York Avenue NW Suite 400
Washington, D.C. 20005

7

WENDY WEISER
MYRNA PÉREZ
The Brennan Center for Justice at NYU Law School
120 Broadway, Suite 1750
New York, New York 10271

SIDNEY S. ROSDEITCHER
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
 AMY L. RUDD
LINDSEY B. COHAN
Dechert LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701

NEIL STEINER
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Drive
San Antonio, Texas 98209

DANIEL GAVIN COVICH
Covich Law Firm LLC
Frost Bank Plaza
802 N Carancahua, Ste 2100
Corpus Christi, Texas 78401

GARY BLEDSOE
Potter Bledsoe, LLP
316 W. 12th Street, Suite 307
Austin, Texas 78701

VICTOR GOODE
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215

ROBERT NOTZON
The Law Office of Robert Notzon

1502 West Avenue
Austin, Texas 78701

*Counsel for the Texas State Conference of NAACP Branches and the Mexican American Legislative Caucus of the Texas House of Representatives*

/s/ Janai Nelson
SHERRILYN IFILL
JANAI NELSON
CHRISTINA A. SWARNS
COTY MONTAG
LEAH C. ADEN
DEUEL ROSS
NAACP Legal Defense and Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

JONATHAN PAIKIN
KELLY P. DUNBAR
TANIA FARANSSO
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel for Imani Clark*

/s/ Rolando L. Rios
ROLANDO L. RIOS
115 E. Travis, Suite 1645
San Antonio, Texas 78205

*Counsel for the Texas Association of Hispanic County Judges and County Commissioners*

/s/ Robert W. Doggett
ROBERT W. DOGGETT
SHOSHANA J. KRIEGER
Texas RioGrande Legal Aid
4920 N. IH-35
Austin, Texas 78751

JOSE GARZA
Texas RioGrande Legal Aid
1111 N. Main Ave.
San Antonio, Texas 78212

9

*Counsel for Lenard Taylor, Eulalio Mendez Jr., Lionel Estrada, Estela Garcia Espinoza, Margarito Martinez Lara, Maximina Martinez Lara, and La Union Del Pueblo Entero, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 19, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

      /s/ Danielle M. Lang
Danielle M. Lang
Campaign Legal Center
1411 K Street NW Suite 1400
Washington, DC 20005
*Admitted in New York and California Courts only; Practice limited to U.S. Courts and federal agencies.*