**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

MARC VEASEY, *et al.*,

    Plaintiffs,

   v.

GREG ABBOTT, *et al.*,

    Defendants.

Civil Action No. 2:13-cv-193 (NGR)

**PRIVATE PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR RECONSIDERATION**

After failing to convince this Court that SB 5 should or could affect this Court's

discriminatory purpose ruling *prior* to the Court ruling on that issue, *see* Doc. 1022, Texas now

asks this Court to reconsider its discriminatory purpose liability finding in light of SB 5, *see* Doc.

1050.  Texas provides no sound reason why the passage of SB 5 should or could change this

Court's determination regarding the Legislature's intent in passing SB 14 *in 2011*.  That is

because there is none.[1]

On April 10, 2017, this Court concluded that the 2011 Texas Legislature enacted SB 14

with discriminatory intent.  Doc. 1023 at 10.[2]  That finding was based on abundant evidence

including the law's racially disparate impact, the Legislature's adoption of unduly harsh photo

---

[1] Private Plaintiffs have briefed the impact of SB 5 to this Court in several contexts and, for the
sake of brevity, will not repeat all of those arguments here.  Private Plaintiffs herein incorporate
all of their briefing regarding SB 5, mootness, and appropriate remedies.  *See* Docs. 1010, 1019,
1040, 1051, 1059, 1061.

[2] This was the second time that this Court ruled that Texas enacted SB 14 with discriminatory
intent.  *See* Doc. 628.  Following an appeal of its original decision, and consideration on remand
of the evidence adduced at trial, as well as a hearing on the issues, this Court reached the same
conclusion again.

identification requirements and rejection of ameliorative amendments without justification,

contemporaneous history of racial discrimination, recent demographic shifts, racially polarized

voting patterns, dramatic departures from the normal legislative process, the Legislature's

shifting rationales for SB 14, and the tenuous relationship between SB 14's strict terms and any

legitimate state objectives.  *See generally id.*

This Court has already held:  "It is well-settled that new legislation does not ipso facto

eliminate the discriminatory intent behind older legislation and moot a dispute regarding the

violation of law."  Doc. 1022 at 3.  SB 5's passage in 2017 does not change or disrupt any of the

abundant evidence that led this Court to determine that SB 14 was enacted in 2011 with the

discriminatory intent.  Thus SB 5 cannot alter the liability finding.  Nor does SB 5 render the

issue moot.[3]  As this Court already determined:

> Here, Plaintiffs allege that they were intentionally discriminated against
> when the Texas legislature passed SB 14. In that event, they suffered
> injuries with respect to voting in elections that have already closed and can
> never be reopened. While the only relief they can obtain is prospective, the
> injuries are not eliminated as a result of a single provision that ameliorates
> the harshest effect of the law. And the Voting Rights Act remedies,
> including imposing the requirement of preclearance, are meant to address
> injuries more harsh and lasting than those addressed by SB 5.

*Id*. at 6-7; *see also Perez v. Abbott*, No. SA-11-CV-360, 2017 WL 1787454, at *3 (W.D. Tex.

May 2, 2017) ("Plaintiffs should not have to jump through additional hoops to prove that the

2011 mapdrawers' intent carried forward to the 2013 [Texas] Legislature when Plaintiffs'

fundamental claims are that the 2011 mapdrawers acted with discriminatory intent, Plaintiffs are

---

[3] Private Plaintiffs also reiterate that SB 5 cannot moot this case because even if that legislation
provided a complete remedy for the effects of SB 14—which it does not—there remains the
danger of recurrence.  *See* Doc. 1010 at 16-17; Doc. 1019 at 12-13.  The danger of recurrence is
especially present where, as here, the Texas Legislature intentionally violated the law and
adopted SB 5 only after it spent years litigating SB 14 and lost.

still being harmed by the districts drawn with that intent, and Plaintiffs have potential relief

available under § 3(c) for that harm."). Therefore, this Court should deny Defendants' motion.

In the remedies phase of this case and in the Texas redistricting trial regarding the 2013

maps (*Perez v. Abbott*, No. SA-11-CV-360), Texas has argued that courts should not rely on

evidence of prior discriminatory intent in 2011 laws to inform the potential intent of new

purportedly remedial laws passed years later in response to litigation. Here, Texas argues that, in

fact, new allegedly remedial laws—like SB 5—should somehow also *eliminate* the intent of past

legislative enactments—like SB 14. Texas's proposal defies common sense.[4] Moreover, logic

dictates a result that is the exact opposite of what Texas proposes. The Supreme Court has long

recognized that past acts can and should inform a court's analysis of a law's intent. *See*

*Arlington Heights v. Metro. Hous. Dev. Cor.*, 429 U.S. 252, 266-68 (1977) ("The historical

background of the decision is one evidentiary source. The specific sequence of events leading up

to the challenged decision also may shed some light on the decisionmaker's purposes.").

However, *subsequent* legislative acts rarely, if ever, are probative of past intent. *Consumer*

*Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) ("[T]he views of a

subsequent [legislature] form a hazardous basis for inferring the intent of an earlier one.").

Texas cites only one authority, *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 524

(3d Cir. 2003),[5] for its proposition that SB 5 should somehow magically eliminate the

discriminatory intent behind SB 14. But *Ansell* does not support Texas's position. *Ansell* is an

---

[4] *See, e.g*, Brian Greene, *The Fabric of the Cosmos: Space, Time, and the Texture of Reality* 13 (2005) ("[T]here is a direction to the way things unfold in time. Eggs break, but they don't unbreak; candles melt, but they don't unmelt; memories are of the past, never of the future; people age, but they don't unage. These asymmetries govern our lives; the distinction between forward and backward in time is a prevailing element of experiential reality.").

[5] *Cotton v. Fordice* and *Hunter v. Underwood* are cases about the intent of the subsequent law, not the prior one. For the reasons discussed in Plaintiffs' remedial briefs, *see infra* n.1, they also do not apply.

employment age discrimination case where the plaintiff objected to the introduction of any

subsequent acts by the employer and the Third Circuit upheld some admission of those acts.  But

even in those starkly different circumstances, the court stressed that subsequent acts "may be less

probative of an employer's intent than prior actions because the logical relationship between the

circumstances and [the act at issue] is attenuated." *Ansell*, 347 F.3d at 525.  The court further

noted, "changed circumstances may also affect whether or not a subsequent good act is relevant."

*Id.* (citing *United States v. Hill,* 40 F.3d 164, 168–69 (7th Cir.1994) (excluding evidence offered

by defendant, who was accused of stealing a check from the mail, that she failed to steal

valuables placed before her by postal inspectors in a sting operation occurring five months after

the offense; passage of time, combined with defendant's awareness that she was a suspect,

rendered her failure to commit a similar crime "only tangentially relevant")).

The circumstances here only reinforce SB 5's irrelevance to this Court's finding that SB

14 was passed with discriminatory intent.  SB 5 was passed six years after SB 14.  Most of the

2017 legislators who considered SB 5 are different than those who considered SB 14 in 2011.

Indeed, some or most of the authors or others intimately involved in the consideration of SB 14

in 2011 are no longer in the Legislature in 2017.  Moreover, the Texas Legislature was made

aware of SB 14's sharp and unjustifiable racially discriminatory impact repeatedly:  during the

2012 preclearance trial, during the trial before this Court, and during years of appeals thereafter

when, on two separate occasions, the Fifth Circuit affirmed this Court's finding that SB 14 has

discriminatory results and also a super-majority of the Fifth Circuit Court, sitting en banc,

concluded that the evidence in the case could support a finding of discriminatory purpose.  Yet

the Texas Legislature did not act to remedy the discriminatory harms during that time.  Instead,

SB 5 was passed only after the Texas Legislature had exhausted *all* of its legally available

4

options for defending SB 14.  And when Texas finally adopted legislation purportedly to address the legal findings of discrimination, it adopted SB 5, a law that maintains SB 14's discriminatory photo ID provisions, heightens the threat of intimidation by providing for potential criminal (felony) prosecution, and fails to address numerous defects outlined in this Court's opinion and the en banc Fifth Circuit opinion.  *See, e.g.,* Docs. 1051, 1059 (Private Plaintiffs' briefs on remedies); *see also* Doc. 1022 (Order on Mootness) ("And the imposition of the reasonable impediment affidavit requirement has not been demonstrated to eliminate all of the adverse effects of SB 14.").[6]

Under these circumstances, it is obvious that SB 5 provides no basis to disturb this Court's well-supported finding that Texas acted with discriminatory intent when it adopted SB 14 in 2011.  *See Northeastern Fla. Chapter of Assoc. Gen. Contractors of Amer. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) ("The new ordinance may disadvantage them to a lesser degree than the old one, but . . . it disadvantages them in the same fundamental way.").  To the contrary, Texas's long delay in enacting remedial legislation, its recalcitrance in light of multiple court rulings, and its ultimate adoption of SB 5, which itself imposes lingering burdens on minority voters that must be remedied, only provide further support for the Court's ruling on discriminatory purpose.

---

[6] Moreover, as discussed at length in Private Plaintiffs' prior briefing, SB 5 does not cure the effects of SB 14 for several reasons:  it does nothing to address the education and training of election workers and voters, and its Declaration of Reasonable Impediment ("DRI") provision may in fact exacerbate SB 14's discriminatory effects.  *See* Doc. 1051 at 11-14; Doc. 1059 at 11-16.  With respect to the DRI process, SB 5 increases the risk of intimidation by raising criminal penalties and completely does away with the "Other" option on the DRI.  The State continuously trivializes the elimination of the "Other" option in its briefing.  But common sense dictates that the inclusion of the "Other" option is a necessary component of a fair reasonable impediment process to ensure that the victims of discrimination are not confused by the limitation of impediments only to those listed.  For example, a voter may not believe that his or her having just moved into the State or being a student might come under one of the listed reasons.

Ultimately, a subsequent legislature cannot erase a past discriminatory act by a prior legislature; it can only provide a full remedy for that discrimination moving forward. For these reasons, Texas's motion to reconsider this Court's finding of intentional discrimination should be denied. Even if SB 5 provided a complete remedy going forward (which it does not), Private Plaintiffs would still be entitled to declaratory and injunctive relief[7] against SB 14 and to pursue retention of jurisdiction and/or Section 3(c) relief. For the reasons outlined in Private Plaintiffs' remedy briefs, this Court should also enjoin SB 5 because it does not adequately remedy the discriminatory purpose or discriminatory results violations.

Date: July 26, 2017

Respectfully submitted,


/s/ Lindsey B. Cohan
JON M. GREENBAUM
EZRA D. ROSENBERG
BRENDAN B. DOWNES
Lawyers' Committee for
Civil Rights Under Law
1401 New York Avenue NW Suite 400
Washington, D.C. 20005

---

[7] *See United States v. W.T. Grant*, 345 U.S. 629, 633 (1953) ("Both sides agree to the abstract proposition that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot . . . . *The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.* For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right. *The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement.*" (internal citations omitted)). Curiously, *W.T. Grant* was cited by the United States in the remedy briefing for the proposition that an injunction is improper in light of Texas's voluntary actions because "[t]he purpose of an injunction is to prevent future violations." Doc. 1060 at 3 (quoting *W.T. Grant*, 345 U.S. at 633). But just one sentence prior, the decision in *W.T. Grant* entirely undercuts the United States' position: "Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *Id.*

6

WENDY WEISER
MYRNA PÉREZ
The Brennan Center for Justice at NYU Law School
120 Broadway, Suite 1750
New York, New York 10271

SIDNEY S. ROSDEITCHER
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

AMY L. RUDD
LINDSEY B. COHAN
Dechert LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701

NEIL STEINER
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Drive
San Antonio, Texas 98209

DANIEL GAVIN COVICH
Covich Law Firm LLC
Frost Bank Plaza
802 N Carancahua, Ste 2100
Corpus Christi, Texas 78401

GARY BLEDSOE
Potter Bledsoe, LLP
316 W. 12th Street, Suite 307
Austin, Texas 78701

VICTOR GOODE
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215

ROBERT NOTZON
The Law Office of Robert Notzon
1502 West Avenue
Austin, Texas 78701

*Counsel for the Texas State Conference of NAACP Branches and the Mexican American Legislative Caucus of the Texas House of Representatives*

/s/ Danielle M. Lang
J. GERALD HEBERT
DANIELLE M. LANG*
Campaign Legal Center
1411 K Street NW Suite 1400
Washington, DC 20005
*Admitted in New York and California Courts only; Practice limited to U.S. Courts and federal agencies.*

CHAD W. DUNN
K. SCOTT BRAZIL
BRAZIL & DUNN
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068

ARMAND G. DERFNER
Derfner & Altman
575 King Street, Suite B
Charleston, S.C. 29403

NEIL G. BARON
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539

DAVID RICHARDS
Richards, Rodriguez & Skeith, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701

*Counsel for Veasey/LULAC Plaintiffs*

LUIS ROBERTO VERA, JR.
Law Office of Luis Roberto Vera Jr.
111 Soledad, Ste 1325
San Antonio, TX 78205

*Counsel for LULAC*

/s/ Leah Aden
SHERRILYN IFILL
JANAI NELSON
CHRISTINA A. SWARNS
COTY MONTAG
LEAH C. ADEN
DEUEL ROSS
NAACP Legal Defense and Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

JONATHAN PAIKIN
KELLY P. DUNBAR
TANIA FARANSSO
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel for Imani Clark*

/s/ Rolando L. Rios
ROLANDO L. RIOS
115 E. Travis, Suite 1645
San Antonio, Texas 78205

*Counsel for the Texas Association of Hispanic County Judges and County Commissioners*

9

/s/ Robert W. Doggett
ROBERT W. DOGGETT
SHOSHANA J. KRIEGER
Texas RioGrande Legal Aid
4920 N. IH-35
Austin, Texas 78751

JOSE GARZA
Texas RioGrande Legal Aid
1111 N. Main Ave.
San Antonio, Texas 78212

*Counsel for Lenard Taylor, Eulalio Mendez Jr.,
Lionel Estrada, Estela Garcia Espinoza, Margarito
Martinez Lara, Maximina Martinez Lara, and La
Union Del Pueblo Entero, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


/s/ Lindsey B. Cohan
Lindsey B. Cohan