UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| v. § | CIVIL ACTION NO. 2:13-CV-00193 | |
| § | | |
| GREG ABBOTT, *et al.*, § | | |
| § | | |
| Defendants. § | | |

**DEFENDANTS' MOTION FOR A STAY PENDING APPEAL**

By its Order dated August 23, 2017 (D.E. 1071), this Court entered a final injunction directing the State of Texas to cease enforcing any photo-ID requirement for voters and to return to the voter-identification law as it was before the passage of SB14 in 2011. Defendants have filed a notice of appeal to the Fifth Circuit from this order. Pursuant to Fed. R. Civ. P. 62(c) and Fed. R. App. P. 8(a)(1)(A), (C), defendants move the Court to stay its Order pending appeal.

**STANDARD**

Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction." Courts "consider four factors in deciding whether to grant a stay pending appeal: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).

### ARGUMENT

Beginning with the final factors, a stay is justified here because enjoining a state's duly enacted election law on the basis of its purported unconstitutionality is, on its face, a serious legal question, and States necessarily suffer irreparable injury when their statutes are enjoined. *Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers); *see also Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers) ("The presumption of constitutionality which attaches to [legislation] is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of applicants in balancing hardships."). On the other hand, if a stay is granted, private plaintiffs will not suffer substantial harm because the parties agree—and defendants have already stipulated—that this Court's interim remedy and its reasonable-impediment-declaration exception will remain in effect for 2017 elections. The equities all favor granting a stay.

Defendants also are likely to succeed on the merits of their appeal, not only for the reasons stated in their discriminatory-purpose briefing, which is incorporated herein, but also because the Court's remedy order is seriously flawed:

1. The Court erred in removing from plaintiffs their burden to show that SB5 is not an effective remedy for the infirmities found in SB14 and placing it on defendants. Op. 8-9 & n.8. As the Fifth Circuit held in *Operation PUSH* and instructed in

this case, courts must defer to the legislature in the first instance to construct a remedy. *Veasey v. Abbott*, 830 F.3d 216, 269, 271-72 (5th Cir. 2016) (en banc); *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 405 (5th Cir. 1991). But imposing on the State the burden to prove at the remedy stage that its new law will cure all ills renders such deference devoid of meaning and effect. If plaintiffs believe that SB5 is itself unconstitutional or violates the Voting Rights Act, they may file a claim saying so. Until then, unless they can prove that SB5 is ineffective, it must be accepted as a remedy.

*Operation Push* is directly on point. In that case, plaintiffs argued the Mississippi's voter registration system was designed "with the intended purpose of limiting black voter registration." 932 F.2d at 403. The state legislature enacted a new procedure that the plaintiffs "contend[ed] [was] not an effective remedy because it [would] not eliminate the disparity in black and white voter registration rates." *Id.* at 407. The Fifth Circuit rejected this argument because plaintiffs "*failed to offer objective proof* that the new procedures would have inadequate effect on registration rates." *Id.* (emphasis added).

The same scenario is presented here. "Although . . . the legislature" here "could have enacted legislation easing [the election law] even further, the fact that broader relief was possible [does] not authorize the court to invalidate the proffered solution," *id.*, absent proof that the enacted remedial legislation will be ineffective. Because plaintiffs presented no proof that SB5 will be ineffective, it must be accepted. Later on, if plaintiffs acquire proof, they may "bring[] a future challenge to" SB5. But for

3

now, the Court cannot override the Legislature's enacted remedy without any proof that it is ineffective.

2. Relatedly, the Court wholly ignored strong evidence in the record showing that SB5 does constitute an effective remedy. As defendants showed in the briefing, D.E. 1049-3, *all 27 plaintiffs and voter-witnesses* in this case will be able to vote without impediment under SB5. The seven enumerated reasonable impediments in both this Court's interim remedy and SB5's reasonable-impediment exception cover the burdens alleged by these 27 individuals—the individuals whose testimony plaintiffs used to support their discriminatory effect claim in the first place. SB5 completely removed the purported deleterious effect of SB14 on *every* voter that the plaintiffs could find. The Court failed to even acknowledge this evidence, let alone examine it.

3. Another related flaw is the evidence that the Court chose to rely on. The Court relied on inadmissible hearsay evidence in determining that SB5's elimination of an "other" box is harmful. The Court relied on reasonable-impediment declarations submitted by various voters. Op. 17 & n.14. Relying on these declarations for the truth of the matter asserted therein was improper. *See* Fed. R. Evid. 801-02.[1]

---

[1] The Court mistakenly believed that "no party has objected to the submission of these DRIs." Op. 17 n.13. In fact, defendants *did* object to use of these documents to attack SB5 as a proper remedy. D.E. 1063 at 2-4. As defendants have explained, defendants presented abuses of the "other" box simply to show the Legislature's legitimate ameliorative purpose in enacting SB 5, not for the truth of the matter asserted; and the Fifth Circuit held that consideration of ameliorative amendments like SB 5 is proper. *Veasey*, 830 F.3d at 272.

4

Moreover, each of the "other" reasons given in these declarations would already qualify under one of the seven enumerated reasonable-impediment exceptions in SB5—or they were *not* reasonable impediments at all.

Three statements expressly correspond to one of the seven enumerated impediments: "attempted to get Texas EIC but they wanted a long-form birth certificate," D.E. 1061-1 at 9 (lack of birth certificate enumerated impediment, which the person appears to have also checked); "mother passed away & I cannot locate my SS card & other personal info that she possessed," D.E. 1062-1 at 3 (lack of birth certificate or other documents needed to get adequate photo ID); and "daughter doesn't want him driving at age 85," *id.* at 4 (lack of transportation).

The remaining nine statements are too vague to ascertain whether a reasonable impediment exists at all: "student ID Drivers license," id. at 2 (no impediment stated); "99 years old no ID," *id.* at 5 (no impediment stated); "Just moved here"; "Just became resident – don't drive in TX"; "Just moved to TX, haven't gotten TX license yet," D.E. 1061-1 at 2-4 (stating no impediment to getting qualifying ID, although not yet receiving applied-for ID is an enumerated impediment, as are several other reasons that might apply to a person who recently moved to the State, such as family responsibilities or lack of transportation); "Financial hardship," "Unable to afford TX DL," and "Lack of funds," *id.* at 5-7 (financial inability to gather necessary documents, leave family alone, or travel to get a free Election Identification Certificate would all be enumerated reasonable impediments); "Out of State College Student," *id.* at 8 (no impediment stated, as many Texas residents attending college out of state can obtain

5

a free EIC; moreover, nonresidents are not permitted to vote in Texas elections, *see* Tex. Att'y Gen. Op. GA-0141, 2004 WL 228527, at *9 (2004) (citing, among other authorities, Tex. Elec. Code §§ 1.015, 11.001-02)).

The Court also erred in relying on speculation that SB5's threat of punishment for perjury would deter voters and have a disparate impact on minorities. Op. 17. *Operation PUSH* rejected plaintiffs' reliance on expert opinion because they were "purely speculative as to the effect of the" remedial legislation in that case. 932 F.2d at 407. There is even less evidence here.

The Court's conclusion that SB5 "imposes burdens disproportionately on Blacks and Latinos" notwithstanding its provision for a reasonable-impediment declaration, Op. 12, was also "purely speculative," 932 F.2d at 407, and flawed for the same reason.

4. For all the reasons just noted, the Court was wrong to conclude that the Legislature's elimination of an "other" box was "a material change to the interim DRI remedy." Op. 17; *see also* Op. 18 n.15. Once SB5 is effective, every voter identified by plaintiffs will be able to vote without impediment. *See* D.E. 1049-3.

5. The Court also erred in treating SB5 as if it merely builds on SB14's architecture, keeping its discriminatory features. Op. 10, 14. To the contrary, SB5 *wholly waives* the photo-ID requirement for all persons negatively affected by SB14, as shown by the fact that each of the 27 voters plaintiffs identified can now vote without impediment. *See* D.E. 1049-3.

6

6. The Court was also wrong to distinguish the State's penalty for perjury associated with filing a false declaration of a reasonable impediment from similar federal perjury penalties. Op. 20. The Court erroneously believed that a voter's misunderstanding or mistake could lead to a perjury charge. That is incorrect. Perjury requires specific intent to defraud. D.E. 1058 at 6 n.7.

The Court was also mistaken in concluding that SB5 enhanced the penalty for making a false statement on a declaration to a state-jail felony. Under the Court's interim order (without SB5), the penalty for making a false statement in a government document with intent to deceive was already a state-jail felony. *See* Tex. Pen. Code §§ 37.10(a)(1), (c)(1). SB5 simply kept the penalty at that level. It did, however, elevate the level of criminal intent required to prove a violation from "*knowingly* mak[ing] a false entry" under the former law[2] to "*intentionally* mak[ing] a false statement under SB5.

7. Finally, the Court's various criticisms of the reasonable-impediment-declaration procedure, Op. 14-21, would apply to *all* such procedures—not just the particular one enacted by SB5. So no reasonable-impediment exception would be able to cure a potential discriminatory effect. But similar laws have previously been precleared even under VRA §5's more rigorous standard. *See South Carolina v. United States*, 898 F. Supp. 2d 30, 35-43 (D.D.C. 2012). The Court was wrong to conclude that SB5's reasonable-impediment-declaration procedure was an ineffective remedy.

---

[2] Tex. Pen. Code § 37.10(c)(1) (emphasis added).

The Court's reliance, Op. 21, on *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016), *cert. denied sub nom. North Carolina v. North Carolina State Conference of NAACP*, 137 S. Ct. 1399 (2017), was likewise erroneous. Unlike in *McCrory*, the record here *does* reflect that the reasonable-impediment exception "fully cures the harm from the photo ID provision." 831 F.3d at 240; *see* D.E. 1049-3. And Texas, unlike North Carolina, allows *regular* ballots to be cast through its reasonable-impediment exception and does not have a procedure for challenging any ballots cast. So, in Texas, there is no possible "lingering burden," *id.*, whereas in North Carolina, "County Boards of Elections were inconsistent about what they deemed a 'reasonable' impediment," 831 F.3d at 243 (Motz, J., dissenting).

8. Defendants understand the Court's injunction to require implementation of the identification requirements that existed before the Legislature enacted SB14. *See* Op. 22-23. If that is not consistent with the Court's intent, and if the Court denies the motion to stay its Order pending appeal, defendants respectfully request that the Court clarify its Order to inform them what voting procedures may be enforced consistent with the Court's injunction.

## CONCLUSION

The Court should stay its order pending appeal.

Date: August 24, 2017                            Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant
   Attorney General

BRANTLEY D. STARR
Deputy First Assistant
   Attorney General

JAMES E. DAVIS
Deputy Attorney General
   for Litigation

/s/ Angela V. Colmenero
ANGELA V. COLMENERO
Chief, General Litigation Division

MATTHEW H. FREDERICK
Deputy Solicitor General

JASON R. LAFOND
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697

*Counsel for Defendants*

9

**CERTIFICATE OF CONFERENCE**

      I hereby certify that on August 23, 2017, I conferred with counsel of record for all parties about the foregoing motion. Counsel for the private plaintiffs advised that they oppose the motion. Counsel for the United States consents to the motion for a stay of further proceedings in the district court pending appeal.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 24, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO
