Case 2:13-cv-00193 Document 1138 Filed on 09/05/17 in TXSD Page 1 of 11
Case: 17-40884 Document: 00514143426 Page: 1 Date Filed: 09/05/2017

Clerk, U.S. District Court
Southern District of Texas
FILED
SEP 05 2017
David J. Bradley, Clerk of Court

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
September 5, 2017
Lyle W. Cayce
Clerk

No. 17-40884

MARC VEASEY; JANE HAMILTON; SERGIO DELEON; FLOYD CARRIER; ANNA BURNS; MICHAEL MONTEZ; PENNY POPE; OSCAR ORTIZ; KOBY OZIAS; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; JOHN MELLOR-CRUMMEY; DALLAS COUNTY, TEXAS; GORDON BENJAMIN; KEN GANDY; EVELYN BRICKNER,

 Plaintiffs - Appellees

v.

GREG ABBOTT, in his Official Capacity as Governor of Texas; ROLANDO PABLOS, in his Official Capacity as Texas Secretary of State; STATE OF TEXAS; STEVE MCCRAW, in his Official Capacity as Director of the Texas Department of Public Safety,

 Defendants - Appellants

---

UNITED STATES OF AMERICA,

 Plaintiff - Appellee

TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND; IMANI CLARK,

 Intervenor Plaintiffs - Appellees

v.

STATE OF TEXAS; ROLANDO PABLOS, in his Official Capacity as Texas Secretary of State; STEVE MCCRAW, in his Official Capacity as Director of the Texas Department of Public Safety,

 Defendants - Appellants

No. 17-40884

---

TEXAS STATE CONFERENCE OF NAACP BRANCHES; MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES,

       Plaintiffs - Appellees

v.

ROLANDO PABLOS, in his Official Capacity as Texas Secretary of State; STEVE MCCRAW, in his Official Capacity as Director of the Texas Department of Public Safety,

       Defendants - Appellants

---

LENARD TAYLOR; EULALIO MENDEZ, JR.; LIONEL ESTRADA; ESTELA GARCIA ESPINOSA; MAXIMINA MARTINEZ LARA; LA UNION DEL PUEBLO ENTERO, INCORPORATED,

       Plaintiffs - Appellees

v.

STATE OF TEXAS; ROLANDO PABLOS, in his Official Capacity as Texas Secretary of State; STEVE MCCRAW, in his Official Capacity as Director of the Texas Department of Public Safety,

       Defendants - Appellants

---

Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi

---

Before SMITH, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:

2

No. 17-40884

On August 23, 2017, the district court granted permanent injunctions against the enforcement of Sections 1 through 15 and Sections 17 through 22 of Senate Bill 14 (SB 14) and against the enforcement of Senate Bill 5 (SB 5). The State filed an emergency motion to stay these injunctions. The United States filed a response in our court, consenting to a stay pending appeal. The appellees opposed the State's motion.

The district court enjoined the enforcement of SB 14 and SB 5 seven days before the Texas Secretary of State's internal deadline to finalize voter-registration certificates. These certificates must go to the printer by September 18. This deadline ensures that county registrars can issue voter-registration certificates as required by statutory deadlines before scheduled elections. To ensure that all necessary appellate review can be concluded in time for impending local elections, the State seeks a ruling of this court by September 7.

In its August 30 order, the district court granted a limited stay only to allow specific cities and school districts to proceed with, and conclude, their already ongoing elections. However, the district court ordered that no other elections can be conducted under the August 10, 2016 Order Regarding Agreed Interim Plan for Elections (Interim Order) because this August 23, 2017 order superseded its Interim Order.[1]

The Texas Legislature enacted SB 5 in 2016 to cure any statutory and constitutional violations related to SB 14 after *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc).[2] SB 5 allows voters without qualifying photo ID to

---

[1] The Interim Order approved specific voting procedures in light of *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc). There, the district court ordered that the procedures remain in place "until further order of this Court."

[2] When this court remanded the case to the district court, the scope of the mandate only included the discretion to consider "any interim legislative action with respect to SB 14" in fashioning an "interim remedy for SB 14's discriminatory effect." *Veasey*, 830 F.3d at 272 (en banc). We explicitly stated that should the legislature again address the issue of voter identification, "[a]ny concerns about a new bill would be the subject of a new appeal for

3

Case 2:13-cv-00193 Document 1051 Filed on 09/05/17 in TXSD Page 4 of 11
Case: 17-40884 Document: 00514143426 Page: 4 Date Filed: 09/05/2017

No. 17-40884

cast a regular ballot after selecting, under the penalty of perjury, the reason they do not have qualifying photo ID.

We consider four factors in deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425—26 (2009).

The State has made a strong showing that it is likely to succeed on the merits. SB 5 allows voters without qualifying photo ID to cast regular ballots by executing a declaration that they face a reasonable impediment to obtaining qualifying photo ID. This declaration is made under the penalty of perjury. As the State explains, each of the 27 voters identified—whose testimony the plaintiffs used to support their discriminatory-effect claim—can vote without impediment under SB 5.

The State has made a strong showing that this reasonable-impediment procedure remedies plaintiffs' alleged harm and thus forecloses plaintiffs' injunctive relief.

The State has also made an adequate showing as to the other factors considered in determining a stay pending appeal. When a statute is enjoined,

---

another day." *Id.* at 271. By enjoining SB 5 from taking effect on January 1, 2018, the district court went beyond the scope of the mandate on remand. *See Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (stating "the mandate rule requires a district court on remand to effect our mandate and to do nothing else" and that the district court "must implement both the letter and the spirit of the appellate court's mandate"). Puzzlingly, the district court itself noted that it was only considering SB 5 in relation to any remedial effect the bill had on SB 14 and that "[i]t would be premature to try to evaluate SB 5 as the existing voter ID law in Texas because there is no pending claim to that effect before the Court," *Veasey v. Abbott*, 2017 WL 3620639, at *5 n.9 (S.D. Tex. Aug. 23, 2017), but then proceeded to enjoin the enforcement of SB 5. Simply put, whether SB 5 should be enjoined—as opposed to whether it remedies SB 14's ills—was not an issue before the district court on remand.

the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws. *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers); *see also Walters v. Nat'l Ass'n of Radiation Survivors* 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers). Because the State is the appealing party, its interest and harm merge with that of the public. *Nken*, 556 U.S. at 435.

The State has already spent $2.5 million in 2016 to educate voters about the availability of the SB 5 reasonable-impediment procedures, which were used in the November 2016 general election and local elections this year. A temporary stay here, while the court can consider argument on the merits, will minimize confusion among both voters and trained election officials. The dissent's position that we should "carefully consider the importance of preserving the status quo on the eve of an election" only when that election is nationwide or statewide is without support and arguably in tension with our statement in *Veasey* that the impact of a late-issued injunction in "some isolated precincts" raised significant concern. *Veasey v. Perry*, 769 F.3d 890, 894 (5th Cir. 2014).

A temporary stay here is also consistent with our earlier decision to grant a motion to stay the implementation of SB 14 "based primarily on the extremely fast-approaching election date." *Veasey*, 769 F.3d at 892. As the United States explains in its brief, a stay will "retain procedures endorsed by the parties and the district court."

Pursuant to this Order, the district court's Interim Order and its reasonable-impediment procedures will remain in effect for elections in 2017. The parties agreed to these procedures, and the district court approved them. In fact, the dissenting opinion itself appears to agree that the continued use of the parties' agreed-upon remedy, the Interim Order, is the relevant *status quo ante*. Because again we face impending elections, a temporary stay is

Case 2:13-cv-00193 Document 1053 Filed on 09/05/17 in TXSD Page 6 of 11
Case: 17-40884 Document: 00514143426 Page: 6 Date Filed: 09/05/2017

No. 17-40884

appropriate to "suspend[] judicial alteration of the status quo." *Nken*, 556 U.S. at 429.

Given the district court's broad orders permanently enjoining the enforcement of relevant sections of SB 14 and SB 5 and also enjoining upcoming elections pursuant to the Interim Order, a temporary stay will allow this court to hear oral arguments and rule on the merits while preserving the status quo.

We have addressed only the issues necessary to rule on the motion to stay pending appeal, and our determinations are for that purpose and do not bind the merits panel. *See generally Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 704—05 (5th Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

IT IS ORDERED that Appellants' opposed motion for stay pending appeal is GRANTED, the district court's injunction orders are STAYED, until the final disposition of this appeal, in accordance with this opinion, and all proceedings in the district court are STAYED.

The Clerk of the Court is directed to issue an expedited briefing schedule and to calendar this matter for oral argument before a merits panel on the court's next available oral argument docket.

No. 17-40884

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

I dissent from the majority's decision granting the motion to stay. I would deny the motion in its entirety.

## I

The majority's stated goal is preservation of the status quo because "we face impending elections." I agree that preserving the status quo is "an important consideration in granting a stay." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978)). But the stay that the majority imposes does not meet its goal.

*Status quo ante* means "[t]he situation that existed before something else (being discussed) occurred." *Status Quo Ante*, Black's Law Dictionary (10th ed. 2014). The "something else (being discussed)" in this appeal is actually ***two*** things: the district court's final order and the pending implementation of S.B. 5, which is set to take effect on January 1, 2018.

If the *status quo ante* is defined by what ***was***, then it certainly cannot be defined by what ***has never been***, *i.e.*, S.B. 5. The *status quo ante* cannot truly be preserved unless the implementation of S.B. 5 is stayed until this court has had a chance to review the merits of the district court's ruling on that iteration of Texas's voter ID law. *See Whole Woman's Health v. Lakey*, 769 F.3d 285, 308 (5th Cir.) (Higginson, J., concurring in part and dissenting in part) (emphasizing the importance of "preserv[ing] th[e] status quo pending our court's ultimate decision on the correctness of the district court's ruling" in consideration of motion to stay pending appeal), *stay vacated in part*, 135 S. Ct. 399 (2014).

The relevant *status quo ante* should be defined as only the continued use of the parties' agreed-upon interim remedy (the Declaration of Reasonable Impediment) that was implemented in advance of the 2016 presidential election and remained in effect until the district court's August 23rd order—which is now being stayed. Constructing the stay in this manner would maintain the

7

Case 2:13-cv-00193 Document 1051 Filed on 09/05/17 in TXSD Page 8 of 11
Case: 17-40884 Document: 00514143426 Page: 8 Date Filed: 09/05/2017

No. 17-40884

*status quo ante* in Texas as it existed *ante* the district court's order ***and*** *ante* the Legislature's passage and implementation of S.B. 5. *See Barber*, 833 F.3d at 512. Neither side would be irreparably harmed by continuing to operate under the same election procedures they have been operating under for more than a year.

If a stay is granted at all, then it should be comprehensive. In other words, the correct approach would be to stay both the district court's order and the new legislation.

## II

Turning now to the substance of the State's motion, four factors govern consideration: (1) whether the State has made a strong showing that it is likely to succeed on the merits; (2) whether the State will be irreparably injured absent a stay; (3) the balance of hardships; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009). In my view, the State has failed to satisfy any of these factors.

First, the State has not made a sufficiently strong showing that it is likely to succeed on the merits. The Fourth Circuit's decision in *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016), *cert. denied*, 581 U.S. —, 137 S. Ct. 1399 (2017), is instructive. There, the court invalidated North Carolina's voter ID law after finding that the North Carolina legislature unconstitutionally enacted the law with a racially discriminatory intent. The legislature later amended one of the law's provisions to add a reasonable impediment exception. The court refused to consider this amendment and enjoined the entire law because of the law's underlying discriminatory purpose:

> [E]ven if the State were able to demonstrate that the amendment lessens the discriminatory effect of the photo ID requirement, it would not relieve us of our obligation to grant a complete remedy in this case. That remedy must reflect our finding that the challenged

provisions were motivated by an impermissible discriminatory intent and must ensure that those provisions do not impose any lingering burden on African American voters. . . .

While remedies short of invalidation may be appropriate if a provision violates the Voting Rights Act <u>only</u> because of its <u>discriminatory effect</u>, laws passed with <u>discriminatory intent</u> inflict a broader injury and cannot stand.

*Id.* at 240 (citing *Veasey v. Abbott*, 830 F.3d 216, 268 & n.66 (5th Cir. 2016) (en banc), *cert. denied*, 580 U.S. —, 137 S. Ct. 612 (2017)). In other words, because the North Carolina voter ID law was passed with a discriminatory intent, it had to be "eliminated root and branch," and the proposed remediation was squashed. *Green v. Cty. Sch. Bd.*, 391 U.S. 430, 438 (1968). In light of the Fourth Circuit's decision, and considering the similarity of the circumstances underlying the decision and those we face here *vis-à-vis* S.B. 14 and S.B. 5, I am unconvinced that the State is likely to succeed on the merits.

Second, the State has not shown that it will suffer an irreparable injury in the absence of a stay. Both the State and the majority rely on *Maryland v. King*, 567 U.S. —, 133 S. Ct. 1 (2012) (Roberts, C.J., in chambers), in which Chief Justice Roberts, in his capacity as Circuit Justice, explained that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Id.* at 3 (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). *King* is distinguishable. There, the applicants sought to stay a judgment that would have enjoined a Maryland law regarding the collection of defendants' DNA prior to being convicted. Chief Justice Roberts noted that, in the absence of a stay, Maryland would suffer "an ongoing and concrete harm to [its] law enforcement and public safety interests." *Id.* There are no such additional interests at play here. The State argues that a stay would

9

cause it irreparable harm by, in essence, preventing it from enforcing a law that this court has already found *at a minimum* has a discriminatory effect on African American and Latino voters, see *Veasey*, 830 F.3d at 264–65, and that the district court has found was enacted with a discriminatory purpose, *see Veasey v. Abbott*, — F. Supp. 3d —, 2017 WL 1315593 (S.D. Tex. Apr. 10, 2017). It cannot be that the single statement from *King* has the result that a state automatically suffers an irreparable injury when a court blocks any law it has enacted—regardless of the content of the law or the circumstances of its passing. Indeed, because these laws affect—or threaten to affect—the plaintiffs' right to vote, it is the *plaintiffs* who have shown they will suffer an irreparable injury should the stay be implemented. *See Mich. State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 669 (6th Cir. 2016) ("When constitutional rights are threatened or impaired, irreparable injury is presumed. A restriction on the fundamental right to vote therefore constitutes irreparable injury." (citation omitted)).

And finally, the State has not shown that either the balance of hardships or the public interest weighs in its favor. Because the state government of Texas is a litigant in this case, these factors are considered in tandem. *See Nken*, 556 U.S. at 435. The State is correct that the "presumption of constitutionality which attaches to" a state's law is "an equity to be considered in favor of applicants in balancing hardships." *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers). But this statement, like the statement in *King*, does not provide the State an automatic check in its column under balance of hardships. Any hardship purportedly suffered by a state is significantly lessened when that state passes and seeks to enforce a law that impermissibly impinges on "one of the most fundamental rights of our citizens: the right to vote," *Nw. Aus. Mun. Util. Dist. No. 1 v. Holder*, 557 U.S. 193, 202 (2009) (quoting *Bartlett v. Strickland*, 556 U.S. 1, 10 (2009) (plurality op.)), the

protection of which is unequivocally in the public interest. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005) ("[T]he injunction's cautious protection of the [Appellants]' franchise-related rights is without question in the public interest."); *cf. Hobby Lobby Stores, Inc. v. Sibelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012))), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. —, 134 S. Ct. 2751 (2014).

\* \* \*

For the foregoing reasons, the motion to stay should be denied. Because the majority has decided otherwise, I respectfully dissent.