# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT FOR DEFENDANTS ON PLAINTIFFS' CLAIMS

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant
    Attorney General

BRANTLEY D. STARR
Deputy First Assistant
    Attorney General

JAMES E. DAVIS
Deputy Attorney General
    for Litigation

Date: June 27, 2018

ANGELA V. COLMENERO
Chief, General Litigation Division

MATTHEW H. FREDERICK
Deputy Solicitor General

JASON R. LAFOND
Assistant Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697

COUNSEL FOR DEFENDANTS

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. ii

TABLE OF AUTHORITIES ........................................................................... iii

FACTUAL BACKGROUND ........................................................................... 10

ARGUMENT ................................................................................................... 12

   I.  Plaintiffs' Remaining Declaratory Judgment Claims Challenging  SB 14
      Are Moot and Barred by Sovereign Immunity ................................... 13

     A.  Plaintiffs' remaining claims are moot ...................................... 13

     B.  Private Plaintiffs' remaining requests for declaratory relief are barred
        by sovereign immunity ............................................................. 14

  II.  Even Assuming Arguendo that this Court Has Jurisdiction, It Should
      Reject Plaintiffs' Claims for Declaratory Judgment Either Because they
      Serve No Useful Purpose, or Because Plaintiffs Have Not Carried Their
      Burden on the Merits. ......................................................................... 18

     A.  Declaratory judgment concerning the validity of SB 14 is inappropriate.  18

     B.  In the alternative, final judgment should be entered for Defendants on
        the merits of Plaintiffs' claims. ............................................... 21

CONCLUSION ................................................................................................ 25

CERTIFICATE OF SERVICE ....................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez*,
　No. 17-586, 2018 WL 3096311 (U.S. June 25, 2018) ................................... 2, 17, 18

*Abbott v. Veasey*,
　137 S. Ct. 612 (2017) ................................................................................ 15

*Ala. State Conf. of NAACP v. State*,
　264 F. Supp. 3d 1280 (M.D. Ala. 2017) ................................................... 11

*Ala. State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters & Joiners
　of Am. v. McAdory*,
　325 U.S. 450 (1945) .................................................................................. 14

*Am. Ass'n of Cosmetology Schs. v. Riley*,
　170 F.3d 1250 (9th Cir. 1999) .................................................................. 13

*Bd. of Trustees of Univ. of Ala. v. Garrett*,
　531 U.S. 356 (2001) .................................................................................... 9

*Coleman v. Court of Appeals of Maryland*,
　566 U.S. 30 (2012) ...................................................................................... 9

*Comm. on Judiciary of U.S. House of Representatives v. Miers*,
　542 F.3d 909 (D.C. Cir. 2008) .................................................................. 13

*Crawford v. Marion Cty. Elec. Bd.*,
　553 U.S. 181 (2008) .................................................................................. 16

*Davis v. Abbott*,
　781 F.3d 207 (5th Cir. 2015) ...................................................................... 7

*Davis v. Dep't of Labor & Indus.*,
　317 U.S. 249 (1942) .................................................................................. 17

*Edelman v. Jordan*,
　415 U.S. 651 (1974) .................................................................................. 10

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
　824 F.3d 507 (5th Cir. 2016) .................................................................... 13

*Ex parte Young*,
　209 U.S. 123 (1908) ....................................................................... 8, 10, 11

*Feeney v. Pers. Adm'r of Mass.*,
　442 U.S. 256 (1979) .................................................................................... 3

*Frank v. Walker*,
　768 F.3d 744 (7th Cir. 2014) .................................................................... 16

*Golden v. Zwickler,*
  394 U.S. 103 (1969) ................................................................................. 13, 14

*Green v. Mansour,*
  474 U.S. 64 (1985) ................................................................. 8, 9, 10, 11, 12

*Hall v. Louisiana,*
  983 F. Supp. 2d 820 (M.D. La. 2013) .................................................... 11

*Husted v. A. Philip Randolph Inst.,*
  No. 16-980, 2018 WL 2767661 (U.S. June 11, 2018) ......................... 2, 16

*In re Grand Jury Subpoena,*
  438 F.3d 1141 (D.C. Cir. 2006) ............................................................... 1

*Kremens v. Bartley,*
  431 U.S. 119 (1977) .................................................................................. 7

*Lewis v. Bentley,*
  No. 2:16-CV-690-RDP, 2017 WL 432464 (N.D. Ala. Feb. 1, 2017) ........ 10

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) .................................................................................. 6

*Miller v. Johnson,*
  515 U.S. 900 (1995) ................................................................................ 17

*Miss. State Chapter, Operation PUSH, Inc. v. Mabus,*
  932 F.2d 400 (5th Cir. 1991) .................................................................... 7

*Mixon v. State of Ohio,*
  193 F.3d 389 (6th Cir. 1999) .................................................................. 10

*New Left Ed. Project v. Bd. of Regents of Univ. of Tex. Sys.,*
  472 F.2d 218 (5th Cir. 1973), *vacated on other grounds*, 414 U.S. 807 (1973) ........ 7

*Pennhurst State School & Hosp. v. Halderman,*
  465 U.S. 89 (1984) .................................................................................... 9

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.,*
  344 U.S. 237 (1952) ................................................................................ 14

*Purcell v. Gonzalez,*
  549 U.S. 1 (2006) .................................................................................... 16

*San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of P.R.,*
  967 F.2d 683 (1st Cir. 1992) ................................................................... 13

*Sossamon v. Texas,*
  563 U.S. 277 (2011) .................................................................................. 9

*Terrebonne Par. NAACP v. Jindal,*
  154 F. Supp. 3d 354 (M.D. La. 2015) ..................................................... 11

iv

*Tex. Emp'rs' Ins. Ass'n v. Jackson*,
  862 F.2d 491 (5th Cir. 1988) ................................................................ 13

*Texas v. United States*,
  887 F. Supp. 2d 133 (D.D.C. 2012) ...................................................... 18

*Trump v. Hawaii*,
  No. 17-965, 2018 WL 3116337 (U.S. June 26, 2018) .................... 2, 16, 18

*United States v. Microsoft Corp.*,
  138 S. Ct. 1186 (2018) .......................................................................... 7

*Veasey v. Abbott*,
  248 F. Supp. 3d 833 (S.D. Tex. 2017) ............................................ 4, 7, 8

*Veasey v. Abbott*,
  249 F. Supp. 3d 868 (S.D. Tex. 2017) .................................................... 4

*Veasey v. Abbott*,
  265 F. Supp. 3d 684 (S.D. Tex. 2017) .................................................... 5

*Veasey v. Abbott*,
  71 F. Supp. 3d 627 (S.D. Tex. 2014) ............................................ 4, 17, 18

*Veasey v. Abbott*,
  830 F.3d 216 (5th Cir. 2016) ........................................................ 4, 14, 15

*Veasey v. Abbott*,
  888 F.3d 792 (5th Cir. 2018) ........................................................ passim

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ............................................................................ 14

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ............................................................................ 12

## Statutes

29 U.S.C. § 203(x) ...................................................................................... 9

29 U.S.C. § 2611(4)(A)(iii) ......................................................................... 9

29 U.S.C. § 2617(a)(2) ................................................................................ 9

42 U.S.C. § 12202 ....................................................................................... 9

42 U.S.C. § 1983 ....................................................................................... 10

42 U.S.C. § 7543(a) ................................................................................... 11

49 U.S.C. § 41713(b)(1) ............................................................................ 11

52 U.S.C. § 10301 ....................................................................................... 9

52 U.S.C. § 10302 ..................................................................................... 10

VRA § 2 ............................................................................................... 4, 15

VRA § 3(c) ......................................................................................... 1, 4, 5

## Other Authorities

H.J. of Tex., 82d Leg., R.S., 83 (2011) .......................................... 18

James F. Spriggs II & David R. Stras, *Explaining Plurality Decisions*, 99
Georgetown L.J. 515 (2011) ........................................................ 1

## Rules

FED. R.  CIV. P. 7 ................................................................................ 1

FED. R. CIV. P. 12(b)(1), 12(b)(6) .................................................. 1

FED. R. CIV. P. 54 ............................................................................. 3

FED. R. CIV. P. 54(b) ........................................................................ 1

TEX. H.R. 4 ....................................................................................... 18

TEX. H.R. Rule 5, § 53 ..................................................................... 18

## Constitutional Provisions

U.S. Const. amend. XIV § 1 ............................................................ 10

Plaintiffs' complaints collectively seek declaratory, injunctive, and VRA-bail-in relief under various legal theories. The Fifth Circuit has expressly held that Plaintiffs are not entitled to injunctive relief or bail-in under VRA § 3(c). *Veasey v. Abbott*, 888 F.3d 792, 795, 804 (5th Cir. 2018) (*Veasey VII*).[1] And the Fifth Circuit's mandate from that decision has issued. Thus, pursuant to Federal Rules of Civil Procedure 7, 12(b)(1), 12(b)(6), and 54(b), Defendants respectfully move to dismiss all remaining claims because the only possible relief remaining—declaratory relief—is unavailable. In the alternative, were the Court to nonetheless enter a judgment on the merits, Defendants move that the Court enter final judgment for Defendants on the merits of Plaintiffs' claims.

Plaintiffs sued to challenge SB 14, the Texas voter-ID law enacted in 2011. But Texas voter-ID law has now changed significantly; SB 5—enacted in 2017 and effective since January 1, 2018—is now law, and SB 5 "succeeded" in "cur[ing] all the flaws" in SB 14 alleged by Plaintiffs. *Veasey VII*, 888 F.3d at 795. As the Fifth Circuit explained in its latest decision, even assuming that everything Plaintiffs say about SB 14 is true, SB 5 provides them "a generous, tailored remedy." *Id.* at 801. Because Plaintiffs' claims challenge a law that is no longer in effect and the Texas Legislature has cured any harm possibly suffered by Plaintiffs, their claims for declaratory judgment—which are all that remain—must be dismissed as either moot, barred by sovereign immunity, or an inappropriate use of Declaratory Judgment Act discretion.

Moreover, should the Court reach the merits of the remaining claims, any judgment on the merits should be for Defendants in light of intervening precedent.

---

[1] Judge Higginbotham concurred without reservation in Judge Jones's principal opinion, making her opinion the controlling opinion of the Fifth Circuit. *See* 888 F.3d at 804 (Higginbotham, J., concurring). *See generally* James F. Spriggs II & David R. Stras, *Explaining Plurality Decisions*, 99 Georgetown L.J. 515, 519-20 (2011) (footnote omitted); *accord, e.g.*, *In re Grand Jury Subpoena*, 438 F.3d 1141, 1148 (D.C. Cir. 2006) (applying this rule). Because Judge Higginbotham did not concur merely in part, or merely in the judgment, Judge Jones's principal opinion, with two of three votes, is the opinion of the Fifth Circuit and binding on this Court.

First, the Fifth Circuit held that this Court erred in its analysis of Private Plaintiffs' purpose claims by failing to take account of SB 5. *See id.* at 797, 802. Moreover, just a couple of weeks ago, the Supreme Court confirmed that legislative fact-findings concerning voting procedures—in this case, the potential for in-person voter fraud—are not to be second-guessed by courts. *See Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1846-47 (2018). And this week, the Supreme Court issued two opinions that cast irremovable doubt on the discriminatory-purpose finding. In *Abbott v. Perez*, No. 17-586, 2018 WL 3096311 (U.S. June 25, 2018), the Supreme Court rejected a claim that the 2013 Legislature intentionally discriminated against minorities in redistricting. Among other points, that decision reconfirms that a "presumption of legislative good faith" must be accorded to enactments of a state legislature. *Id.* at *14. *Perez* also fatally undermines this Court's conclusion that the pace at which the Legislature considered SB 14 suggests discriminatory purpose. *Id.* at *18 & n.23 And *Perez* shows that actions by the Legislature taken at the behest of opponents—here, the removal of the indigency-affidavit procedure from SB 14—are not evidence of discriminatory purpose. *Id.* at *18 & n.24. In *Trump v. Hawaii*, No. 17-965, 2018 WL 3116337 (U.S. June 26, 2018), the Supreme Court again confirmed that courts are not to "substitute" their "own assessment for the [political branches'] predictive judgments" on policy, and explained that a law's small disproportionate effect on a minority population is not indicative of invidious motive. *Id.* at *23. The actions taken by the Texas Legislature to ameliorate the alleged problems caused by SB 14, the legislative conclusion that in-person voter fraud is a serious risk that SB 14 would effectively address, and the small alleged disproportionate impact of the law—on top of the substantial additional evidence mustered by Defendants—show definitively that SB 14 was not enacted for a discriminatory purpose. *See* DE 966, 976. The latter point has particular relevance to this case, where Plaintiffs' own evidence indicated that the number of white voters allegedly burdened by SB14 (296,000) is

8

approximately the same as the *combined* number of similarly situated African-American voters (128,000) and Hispanic voters (175,000). *See* DE 976 at 26-27; *see also Feeney v. Pers. Adm'r of Mass.*, 442 U.S. 256, 275 (1979) (holding that where men comprised nearly 40% of persons affected by a hiring preference for veterans, "[t]oo many men are affected by [the challenged statute] to permit the inference that the statute is but a pretext for preferring men over women"). Accordingly, should the Court reach the substantive merits of Plaintiffs' purpose claims, it should find that the Texas Legislature did not enact SB 14 for a discriminatory purpose.

## STANDARD

Mootness and sovereign immunity are jurisdictional issues considered de novo. *See, e.g.*, *Glens Falls Ins. Co. v. McVey*, No. 04-CV-2618, 2007 WL 2872472, at *3 (S.D. Tex. Sept. 28, 2007). Various relief requested in this motion may require the Court to revisit or reconsider previous rulings. "The standard of review for reconsideration of interlocutory orders is 'as justice requires.'" *Lexington Ins. Co. v. ACE Am. Ins. Co.*, 192 F. Supp. 3d 712, 714 (S.D. Tex. 2016) (quoting *Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013)); *accord Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 726–27 (5th Cir. 2012) ("[Federal Rule of Civil Procedure] 54 provides district court judges with authority to vacate their own findings."). Given the new legal landscape and clarification recently provided by the Fifth Circuit in *Veasey VII* and the Supreme Court in *Husted*, *Perez*, and *Trump v. Hawaii*, reconsideration is necessary.

## FACTUAL BACKGROUND

Plaintiffs brought claims against SB 14 under the following theories: (1) the law had the effect of making it more difficult for minorities to vote, in violation of VRA § 2 ("effects claim"); (2) the law was enacted with the purpose and effect of burdening minority voters in violation of the 14th and 15th Amendments and VRA § 2 ("purpose claims"); (3) the law was an unconstitutional poll tax ("poll-tax claim"); and (4) the law created an undue burden on voters in violation of the 1st and 14th Amendments ("undue-burden claims"). *See* DE 73 at ¶¶ 106-125; DE 109 at ¶¶ 71-93; DE 150 at ¶¶ 79-86; No. 2:13-CV-263, DE 1 at ¶¶ 66-70. As relief, Plaintiffs sought (1) a declaratory judgment that SB 14 violated the Constitution and VRA § 2; (2) an injunction barring enforcement of SB 14; and (3) an order bailing Texas into preclearance under VRA § 3(c). *See* DE 73 at 27; DE 109 at 31-32; DE 150 at 17; No. 2:13-CV-263, DE 1 at 14. this Court ruled for Plaintiffs on the merits of all claims and entered a permanent injunction against the enforcement of SB 14. DE 633; *see also Veasey v. Abbott*, 71 F. Supp. 3d 627 (S.D. Tex. 2014) (*Veasey I*).

On appeal, the Fifth Circuit vacated this Court's judgment, rendered judgment for Defendants on Plaintiffs' poll-tax and undue-burden claims, vacated this Court's purpose finding, affirmed its effects finding, and remanded for reconsideration of the discriminatory-purpose claim and of an appropriate remedy. *Veasey v. Abbott*, 830 F.3d 216, 272 (5th Cir. 2016) (en banc) (*Veasey III*).

On remand, this Court entered an interim remedy to cure the alleged discriminatory effect of SB 14. DE 895. This Court subsequently denied that a forthcoming replacement for SB 14 would moot Plaintiffs' claims, *Veasey v. Abbott*, 248 F. Supp. 3d 833, 835-37 (S.D. Tex. 2017) (*Veasey IV*), and reaffirmed its discriminatory-purpose finding, *Veasey v. Abbott*, 249 F. Supp. 3d 868 (S.D. Tex. 2017) (*Veasey V*). In the meantime, the United States voluntarily dismissed its purpose claim. *See Veasey IV*, 248 F. Supp. 3d at 834. This Court then considered the proper

10

remedy for the alleged illicit effects and purpose of SB 14. Contemporaneously, the Texas Legislature enacted SB 5 to address the alleged defects in SB 14. *See* DE 1035. This Court then entered a permanent injunction against SB 14 and SB 5. *Veasey v. Abbott*, 265 F. Supp. 3d 684 (S.D. Tex. 2017) (*Veasey VI*). The Court did not enter final judgment. Rather, in the same injunctive order, the Court directed further proceedings on VRA § 3(c) bail-in.

Defendants appealed from this Court's interlocutory order entering an injunction and directing bail-in proceedings. The Fifth Circuit reversed and rendered for Defendants. *See generally Veasey VII*, 888 F.3d 792. Concluding that SB 5 "affords a generous, tailored remedy for the actual violations found" by this Court, the Fifth Circuit vacated this Court's injunction, held that no injunction should issue, and held that Plaintiffs were not entitled to bail-in under VRA § 3(c). *Id.* at 801-04; *see also id.* at 804 (Higginbotham, J., concurring) ("Here we have a case in which prospective relief is at issue and the controlling law has changed. The remedy is no more than applying the new law."). Accordingly, the Fifth Circuit "render[ed]" judgment for Defendants on the "district court's permanent injunction and order for potential further relief" under VRA § 3. *Id.* at 804 (emphasis omitted and capitalization altered).

11

## ARGUMENT

The Fifth Circuit has rejected Plaintiffs' poll-tax and undue-burden claims against SB 14, and it has held that injunctive or bail-in relief are not available on the remaining claims. Hence, the only matter left for this Court's consideration is the propriety of declaratory relief on Plaintiffs' remaining discriminatory-effects and purpose claims against SB 14. As shown below, declaratory relief for Plaintiffs is improper for a number of reasons.

First, as SB 5 has replaced SB 14 and "cure[s] all the flaws" with SB 14 "cited in evidence," *Veasey VII*, 888 F.3d at 795, there is no longer a justiciable case or controversy. Because Plaintiffs suffer no ongoing harm from SB 14, their remaining claims against the law are now moot.

Second, even if they were not moot, Plaintiffs' remaining claims could result only in a declaratory judgment on the validity of a law that is no longer in force. Thus, the only relief potentially available to Plaintiffs is *retrospective* relief, but that is barred by sovereign immunity.

Third, even if SB 14's replacement did not deprive this Court of jurisdiction to consider Plaintiffs' claims, it makes declaratory relief an inappropriate exercise of discretion under the Declaratory Judgment Act. Among other infirmities, there is no longer "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Fourth and finally, if this Court nonetheless decides to entertain the declaratory claims, it should reject Plaintiffs' claims on the merits—especially in light of recent judicial decisions—and enter final judgment for Defendants.

I.     **Plaintiffs' Remaining Declaratory Judgment Claims Challenging SB 14 Are Moot and Barred by Sovereign Immunity.**

There are two jurisdictional defects with Plaintiffs' remaining claims that require dismissal. First, each of Plaintiffs' remaining claims are moot. Second, and independently, Private Plaintiffs' claims are barred by sovereign immunity.

A.     **Plaintiffs' remaining claims are moot.**

SB 5 replaced SB 14, providing a complete remedy for SB 14's alleged discriminatory effect and giving full relief to Plaintiffs. On this Court's prior reasoning, and according to Supreme Court and Fifth Circuit precedent, Plaintiffs' claims are moot.

A substantial change in a challenged law moots the lawsuit. *E.g.*, *United States v. Microsoft Corp.*, 138 S. Ct. 1186, 1187-88 (2018) (per curiam); *Kremens v. Bartley*, 431 U.S. 119, 129 (1977); *Davis v. Abbott*, 781 F.3d 207, 215 (5th Cir. 2015); *New Left Ed. Project v. Bd. of Regents of Univ. of Tex. Sys.*, 472 F.2d 218, 220 (5th Cir. 1973), *vacated on other grounds*, 414 U.S. 807 (1973). This Court rejected application of that rule as applied to SB 5 because it believed that SB 5 did not cure SB 14's alleged deficiencies and that Plaintiffs' were entitled to broader relief. *See Veasey IV*, 248 F. Supp. 3d at 836. The Fifth Circuit has now rejected that premise, concluding that SB 5 "succeeded" in "cur[ing] all the flaws" in SB 14 alleged by Plaintiffs, *Veasey VII*, 888 F.3d at 795, and that Plaintiffs were not entitled to additional relief, *id.* at 801; *id* at 804 (Higginbotham, J., concurring). As a result, there is no longer any basis to deny that Plaintiffs' claims are moot.

The Fifth Circuit's conclusion that the prior *appeal* regarding this Court's then-operative injunction was not moot does not affect this conclusion. *Cf. id.* at 799 (citing *Miss. State Chapter, Operation PUSH, Inc. v. Mabus*, 932 F.2d 400, 412-13 (5th Cir. 1991)). The rule applied by the Fifth Circuit was that a new law enacted as a remedy

for purported deficiencies in the replaced law does not moot judicial consideration on "appeal" of whether the new law is an adequate remedy. *Id.*

That rule has no application here, as the question of SB 5's efficacy is no longer on appeal. Instead, it is now law of the case that SB 5 is a fully effective remedy for the alleged defects in SB 14, such that a judgment in this case could not, at this point, redress any injury alleged by Plaintiffs. Thus, Plaintiffs' claims against SB 14 no longer present a live case or controversy. As a result, even under the broadest interpretation of *Operation Push*, all claims in this case are now moot.

### B.   Private Plaintiffs' remaining requests for declaratory relief are barred by sovereign immunity.

Even if their claims were not moot, Private Plaintiffs' request for declaratory relief would fail for lack of subject-matter jurisdiction because their claims are barred by sovereign immunity. As this Court and the Fifth Circuit have explained, and as Plaintiffs have never disputed, "the only relief [Plaintiffs] can obtain is prospective." *Veasey IV*, 248 F. Supp. 3d at 837; *see Veasey VII*, 888 F.3d at 804 (Higginbotham, J., concurring) (explaining that "[h]ere, we have a case in which prospective relief is at issue"); *see also* DE 88 at 10 n.3 (Private Plaintiffs averring that "only prospective relief is sought"); No. 2:13-CV-348 DE 14 at 24 (additional Private Plaintiffs averring that they "seek prospective . . . rather than retroactive" relief). The reason, at least as far as Private Plaintiffs are concerned, is that sovereign immunity bars retrospective relief. *See Green v. Mansour*, 474 U.S. 64, 68-69 (1985).[2] Only prospective injunctive relief against governmental officials, under *Ex parte Young*, 209 U.S. 123 (1908), is not barred by sovereign immunity. But, with SB 14 no longer in effect, any

---

[2] The United States is not similarly limited by Texas's sovereign immunity. But the United States has voluntarily dismissed its discriminatory-purpose claim. So the only possible relief available to it is a declaration that SB 14 had a discriminatory effect on minorities in violation of VRA § 2. But the United States agrees that SB 5 cured any alleged discriminatory effect. *See* DE 1060. Thus, for the reasons explained above and below, even declaratory relief on that claim would be improper.

14

declaration about its effect or purpose would be retrospective. With SB 14 no longer in effect, any declaration about its effect or purpose would be retrospective. The Court therefore lacks jurisdiction to grant Private Plaintiffs declaratory relief. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) ("[T]he fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.").

Congress may abrogate sovereign immunity, but it must make its intention to do so unmistakably clear. "Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green*, 474 U.S. at 68; *see also Sossamon v. Texas*, 563 U.S. 277, 290 (2011) ("The requirement of a clear statement in the text of the statute ensures that Congress has specifically considered state sovereign immunity and has intentionally legislated on the matter.").[3]

Congress has not abrogated the State's sovereign immunity against private claims for retrospective relief. The only possible source of abrogation in this case— the VRA—has no provision similar to other abrogation clauses. Section 2 of the VRA, on which Plaintiffs rely, merely prohibits certain voting qualifications; it does not authorize suit. *See* 52 U.S.C. § 10301. And while other parts of the VRA contemplate proceedings by private persons "to enforce the voting guarantees of the fourteenth or

---

[3] For example, the Family Medical Leave Act provides for "[a]n action" by "employees" "to recover the damages or equitable relief . . . against any employer (including a public agency)," 29 U.S.C. § 2617(a)(2), and defines "[p]ublic agency" as including both "the government of a State or political subdivision thereof" and "any agency of . . . a State, or a political subdivision of a State," *id.* §§ 203(x), 2611(4)(A)(iii). And the Americans with Disabilities Act expressly provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. Those are unequivocal expressions of Congressional intent to abrogate (although in both instances, Congress acted beyond its delegated powers). *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 35 (2012) (plurality op.); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001).

fifteenth amendment," *id.* § 10302, it does not specifically authorize its own cause of action, as opposed to the already available actions under 42 U.S.C. § 1983 and the *Ex parte Young* doctrine. Because the VRA does not contain an "unequivocal[] express[ion]" of Congressional intent to abrogate, *Green*, 474 U.S. at 68, the States' sovereign immunity remains intact.

This was the holding of a recent well-reasoned decision from the Northern District of Alabama. In *Lewis v. Bentley*, No. 2:16-CV-690-RDP, 2017 WL 432464 (N.D. Ala. Feb. 1, 2017), plaintiffs sued the State of Alabama under the VRA. "In reviewing the relevant portions of the VRA, the court" could "[]not discern any implied, let alone unequivocally expressed, abrogation of sovereign immunity." *Id.* at *10. The court went on to reject the small handful of cases that had found in the VRA an intent to abrogate, observing that "each of the . . . decisions got it wrong not only because they failed to apply the stringent analysis (the proper standard required by [the Supreme Court]), but also because the application of such an analysis makes clear that Congress has not spoken on the issue of abrogation." *Id.* This Court should follow *Lewis* and hold the same.

The lone circuit court decision to hold to the contrary is fundamentally flawed. In *Mixon v. State of Ohio*, 193 F.3d 389 (6th Cir. 1999), the Sixth Circuit found Congressional intent to abrogate merely because VRA § 2 "specifically prohibits 'any State or political subdivision' from discriminating against voters on the basis of race." *Id.* at 398. In addition to the flaws identified by *Lewis*, *Mixon*'s mistaken logic proves too much. The Fourteenth Amendment also expressly prohibits state conduct: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. If *Mixon* is correct, then this is also an abrogation of sovereign immunity, and *Ex parte Young*, 209 U.S. 123 (1908)—a "landmark decision," *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), that allowed plaintiffs to get

around sovereign immunity by seeking prospective relief against a state officer for a violation of the Fourteenth Amendment—was superfluous. And if *Mixon* is correct, any number of federal preemption provisions are also abrogations of sovereign immunity. *See, e.g.*, 49 U.S.C. § 41713(b)(1) ("a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart"); 42 U.S.C. § 7543(a) ("No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."). *Mixon* cannot be correct. The same goes for the cases that rely on *Mixon*. *See Ala. State Conf. of NAACP v. State*, 264 F. Supp. 3d 1280, 1293 (M.D. Ala. 2017); *Terrebonne Par. NAACP v. Jindal*, 154 F. Supp. 3d 354, 359 (M.D. La. 2015); *Hall v. Louisiana*, 983 F. Supp. 2d 820, 829 (M.D. La. 2013).

Because Texas's sovereign immunity remains intact, Private Plaintiffs are limited to suing for prospective injunctive relief under *Ex parte*

*Young*. *See Green*, 474 U.S. at 68; *see also* DE 91 at 22 (Private Plaintiffs invoking *Ex parte Young* in response to Defendants' motion to dismiss for lack of jurisdiction); DE 46-48 (denying Defendants' motion to dismiss; relying on *Ex parte Young*). And *Ex parte Young* is limited to claims against state officers for *prospective* relief. *Green*, 474 U.S. at 68-79.[4] *Green* confirms that because SB 14 is no longer in effect, Plaintiffs' claims are no longer prospective. In *Green*, plaintiffs sued a state official under *Ex parte Young* alleging that Michigan's welfare-payment calculations "violated certain provisions of that federal law." *Id.* at 65. "Before a final

---

[4] Having intervened in the United States' suit against Texas and its officials, one set of Private Plaintiffs adopted the State of Texas as a defendant. DE 73 ¶ 36. Their claims against the State are barred by sovereign immunity in all events.

determination on the merits . . . could be made, Congress amended the relevant statutory provisions. It is undisputed that [Michigan's] calculations thereafter . . . conformed to federal law." *Id.* Plaintiffs pressed on, "claim[ing] that they were entitled to . . . a declaration that respondent's prior conduct violated federal law." *Id.* The Court disagreed; it held in *Green* that a federal court may not "issue a declaratory judgment that state officials violated federal law in the past when there is no ongoing violation of federal law," and that plaintiffs' claims were barred by sovereign immunity. *Id.* at 67-69.

This case is in the same posture as *Green*. The challenged statute has been amended, and it is now law of the case that Private Plaintiffs face no threat of injury. As a result, their request for relief is necessarily limited to a declaratory judgment that state officials violated federal law in the past. *Green* clearly holds that sovereign immunity bars such relief. There is no daylight between *Green* and this case, so the same result should follow.

## II. Even Assuming Arguendo that this Court Has Jurisdiction, It Should Reject Plaintiffs' Claims for Declaratory Judgment Either Because they Serve No Useful Purpose, or Because Plaintiffs Have Not Carried Their Burden on The Merits.

Even assuming Article III jurisdiction to consider Plaintiffs' remaining claims for declaratory relief, these claims should be rejected.

### A. Declaratory judgment concerning the validity of SB 14 is inappropriate.

Under the Declaratory Judgment Act, whether to exercise extant jurisdiction over a request for declaratory relief is a matter within the sound discretion of this Court. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). "[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.*; *see Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,

824 F.3d 507, 523 (5th Cir. 2016) (explaining that declaratory judgment should issue only it will serve a "useful purpose"). There are least three reasons why this Court should decline to exercise any jurisdiction to issue declaratory relief in this case.

First, the Fifth Circuit concluded that Plaintiffs have already received a complete remedy. *Veasey VII*, 888 F.3d at 801-04; *see also id.* at 804 (Higginbotham, J., concurring). The court also rendered judgment for Defendants on the availability of further injunctive relief. *Id.* at 804. But a declaratory judgment against a government official "is the functional equivalent of an injunction." *Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (per curiam). Thus, where an injunction against government officials is barred, so is a declaratory judgment. *See, e.g.*, *Am. Ass'n of Cosmetology Schs. v. Riley*, 170 F.3d 1250, 1255-56 (9th Cir. 1999); *San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of P.R.*, 967 F.2d 683, 684-85 (1st Cir. 1992); *Tex. Emp'rs' Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988) (en banc). Accordingly, this Court cannot, consistent with the Fifth Circuit's mandate, enter declaratory judgment in Plaintiffs' favor.

Second, there is substantial authority for the proposition that declaratory relief is not appropriate to address a challenged law, policy, or contract where there is no threat of enforcement. In *Golden v. Zwickler*, 394 U.S. 103 (1969), for example, the plaintiff sued challenging a New York law that prevented him from "distribut[ing] anonymous literature" about a specific congressman. *Id.* at 104. During the pendency of litigation, however, the congressman left politics with no plans to return. *Id.* at 106. Nonetheless, the district court declared the challenged law unconstitutional. *Id.* at 107. The Supreme Court reversed, holding that the district court should have dismissed the claim. *Id.* at 108, 110. "It was not enough," the Court explained, that the plaintiff desired an "adjudication of unconstitutionality." *Id.* at 109. Rather, because the plaintiff was no longer at risk of being subject to the law, there was no longer "a substantial controversy . . . of sufficient immediacy . . . to warrant the

issuance of a declaratory judgment." *Id.* at 108.[5] Put simply, "[i]t would be an abuse of discretion for this Court to make a pronouncement on the [validity] of a state statute," unless "it plainly appeared" necessary. *Ala. State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters & Joiners of Am. v. McAdory*, 325 U.S. 450, 471 (1945). SB 14's voter-ID requirements are no longer law, so Plaintiffs are no longer subject to them. As a result, it is unnecessary and thus inappropriate to issue a declaratory judgment on the validity of SB 14.

Third, even if this Court concludes that Private Plaintiffs' remaining claims are not barred by sovereign immunity, that issue will remain a substantial constitutional question. And so would the question of discriminatory purpose. The doctrine of constitutional avoidance, which the Fifth Circuit has already relied on to reject claims in this case, *Veasey III*, 830 F.3d at 265, further counsels against granting Private Plaintiffs' claims for declaratory relief, *see, e.g.*, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787 (2000) (construing statute to avoid difficult sovereign immunity question); *cf. Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 247 (1952) ("Declaratory proceedings in the federal courts

---

[5] Numerous courts since, including the Fifth Circuit, have held similarly. *See, e.g.*, *Roark v. S. Iron R1 Sch. Dist.*, 573 F.3d 556, 562 (8th Cir. 2009) (vacating as "superfluous" a declaratory judgment by the district court where the offending practice had been enjoined); *Drayden v. Needville Indep. Sch. Dist.*, 642 F.2d 129, 133 (5th Cir. 1981) (explaining that "[a]ny declaratory . . . relief granted by a district court regarding the cessation of discriminatory practices" following settlement between local and federal parties "would now be . . . redundant and superfluous"), *abrogated other grounds by Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60 (1992); *Charleston Labs., Inc. v. Ameling*, No. 16-CV-200, 2018 WL 1431749, at *5 (E.D. Ky. Mar. 22, 2018) (holding that question of contract's validity and party's violation of that contract was not "a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" where contract was "no longer in effect"); *Humphries v. Los Angeles County*, No. 12-CV-3697, 2012 WL 13014632, at *9 (C.D. Cal. Oct. 17, 2012) (holding "that declaratory relief" concerning validity of state law "is unnecessary" following change in law); *Feliciano v. Jerry's Fruit & Garden Ctr., Inc.*, No. 93-CV-5911, 1994 WL 142963, at *6 (N.D. Ill. Apr. 15, 1994) (refusing to grant declaratory judgment on alleged discrimination because plaintiff no longer worked for defendant).

20

against state officials must be decided with regard for the implications of our federal system.").

> **B.      In the alternative, final judgment should be entered for Defendants on the merits of Plaintiffs' claims.**

If this Court eschews all the above obstacles and sees fit to reach the pending claims for a declaratory judgment, it should enter final judgment for Defendants on the merits of all claims. The Court should reconsider its finding on the purpose of SB 14 and enter judgment for the State. Defendants also continue to maintain—and do not waive—their position that SB 14 did not have a discriminatory effect. *Cf. Abbott v. Veasey*, 137 S. Ct. 612, 613 (2017) (Roberts, C.J., respecting the denial of certiorari) (explaining that Texas asked the Court "to review whether the Texas Legislature enacted SB14 with a discriminatory purpose and whether the law results in a denial or abridgment of the right to vote under § 2," and that it could "raise either or both issues again after entry of final judgment").[6] In any event, SB 14 has no such effect now, as SB 5 provides a complete remedy for any alleged discriminatory effect. If the Court considers the merits of Plaintiffs' claims, it should enter judgment for Defendants.

Four separate, intervening clarifications on legal points show that this Court's previous reasoning on discriminatory purpose was erroneous. First, the Fifth Circuit reclarified that this Court is required to consider subsequent remedial legislation like SB 5 when judging SB 14's purpose. *See Veasey VII*, 888 F.3d at 797 ("[I]n *Veasey [III]*, this court directed the district court to reexamine the discriminatory purpose claim, 'bearing in mind the effect any interim legislative action taken with respect to SB-14 may have.' *Veasey [III]*, 830 F.3d at 272. Nonetheless, the district court proceeded to issue an opinion on the SB 14 discriminatory purpose claim on April 1,

---

[6] Defendants further preserve all other arguments in opposition to Plaintiffs' claims. *See, e.g.*, DE 966, 976, 1015, 1049, 1058.

2017."); *id.* at 802 (reaffirming that "substantial, race-neutral alterations in an old unconstitutional law may remove the discriminatory taint" and that, "because intervening legislation with meaningful alterations may render the current law valid notwithstanding the previous drafter's intent, the state of mind of the subsequent legislature must also be considered.") (quotation marks and alterations omitted). Because SB 5 "cured all the flaws" with SB 14, *id.* at 795, it is powerful evidence that the Texas Legislature did not intend its voter-ID laws to be discriminatory.

Second, the Supreme Court in *Husted* and *Trump v. Hawaii* confirmed that courts are not competent to second-guess fact-finding by the political branches. In *Husted*, plaintiffs challenged Ohio's reliance on a voter's "failure to vote for two years" as an indicator of "a change of residence" as not reliable. 138 S. Ct. at 1846-47. The Court rejected this argument because both the Ohio legislature and Congress had concluded that the two were "sufficiently correlated." *Id.* at 1847; *accord Trump v. Hawaii*, 2018 WL 3116337, at *23 (rejecting challengers' and dissents' questioning law's "effectiveness and wisdom"). *Husted* and *Trump v. Hawaii* thus confirm what the Seventh Circuit held in rejecting a challenge to Wisconsin's Voter-ID law: "[o]n matters of legislative fact, courts accept the findings of legislatures." *Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014). The Texas Legislature's conclusion that in-person voter fraud is a serious concern and that SB 14 would be an effective response is deserving of similar respect. The Legislature relied not just on Texas's own experience with voter fraud, but also the difficulty of detecting voter fraud and the warning bells sounded by Congress, the Supreme Court, and experts. *See* DE 976 at 8-15; *Crawford v. Marion Cty. Election Bd.* (plurality op.), 553 U.S. 181, 194-95 (2008); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam).

Third, the Supreme Court's decision in *Perez* undermines multiple pillars of this Court's finding of discriminatory purpose made in *Veasey I* and readopted in *Veasey V*. The Supreme Court began by reaffirming that "the 'good faith of the state

legislature must be presumed.'" *Perez*, 2018 WL 3096311, at *14 (quoting *Miller v. Johnson*, 515 U.S. 900, 915 (1995)) (alteration omitted). But rather than exercise "extraordinary caution" before labeling the Legislature's purpose for enacting SB 14 invidious, *Miller*, 515 U.S. at 916, this Court's prior opinions reversed the burden of proof and turned the presumption of good faith on its head. Rather than "[g]iv[e] the full weight to the presumption, and resolv[e] all doubts in favor of" SB 14's validity, *Davis v. Dep't of Labor & Indus.*, 317 U.S. 249, 258 (1942), this Court resolved every doubt against the State. This error infected virtually all of this Court's findings. For example, this Court drew a negative inference from the suspension of the Senate's (now formally repealed) two-thirds rule for SB 14. *Veasey I*, 71 F. Supp. 3d at 647-48. But this ignored that suspension of the two-thirds rule was a common tactic to overcome legislative opposition—including later in 2011 to secure passage of a budget. *See* DE 966 at 42-45, 51, 136-38. And the former two-thirds rule did not even apply in special sessions. Instead, this Court credited opponent testimony to the effect that avoiding the two-thirds rule was unusual. *Veasey I*, 71 F. Supp. 3d at 648. With a proper application of the presumption of good faith, this conclusion is untenable. Similarly, this Court ignored proponent legislators' public contemporaneous statements, which demonstrated a valid purpose underlying SB14 and the legislators' belief that SB 14 would *not* disparately impact minorities. *See* DE 966 at 75-84. With a presumption that these statements were made in good faith, they are strong direct evidence that the Legislature's purpose was proper. And, applying the presumption of good faith, this Court could not have concluded that demographic changes motivated SB 14 given the absence of direct evidence supporting this purported motive and the substantial contrary evidence. *See id.* at 104, 113, 125-27.

*Perez* went on to reject the idea of inferring invidious motives from changes to legislation made at the behest of opponents. 2018 WL 3096311, at *18 & n.24. In this case, that eliminates SB 14's lack of an indigency exception as a basis for inferring

discriminatory purpose. *Cf. Veasey I*, 71 F. Supp. 3d at 701. A proposed indigency exception was added to SB 14 in the Senate and excised in the House at the behest of Democratic opponents of the bill led by Representative Anchia. *See* DE 966 at 68-69, 73, 147-48; DE 976 at 35-36, 50-51.[7]

And "in criticizing the Legislature for moving too quickly" on SB 14, this Court committed the same error as the district court in *Perez*. 2018 WL 3096311, at *18 & n.23; *see Veasey I*, 71 F. Supp. 3d at 700. In short, "the brevity of legislative process can[not] give rise to an inference of bad faith." *Perez*, 2018 WL 3096311, at *18. And like the dissent in *Perez*, this Court improperly "downplayed the significant time and effort that went into consideration at" SB 14. *Id.* at *18 n.23; *see Veasey I*, 71 F. Supp. 3d at 700. SB 14 was introduced at the very beginning of the session in January 2011 and was not enacted until the end of the session in May 2011 after adoption of numerous opponent amendments, and followed six years of debate on voter-ID. *See* DE 966 at 41-75, 147, 150; DE 976 at 31-32, 40-41, 47.[8]

Finally, the Supreme Court's decision in *Trump v. Hawaii* shows that if a law's alleged disproportionate effect is small, that effect does not support an inference of invidious purpose. *See* 2018 WL 3116337, at *22 (evaluating fact that "five of the seven nations currently included in the Proclamation have Muslim-majority populations," and concluding that this "fact alone does not support an inference of

---

[7] After the vote, a handful of these opponents, including Representative Anchia, inserted into the House Journal statements to the effect that they had actually intended to vote against eliminating the indigency exception. DE 725-15 at 14-15. These after-the-fact statements have no official effect. *Cf.* Tex. H.R. Rule 5, § 53; H.J. of Tex., 82d Leg., R.S., 83, 132 (2011) (citing Tex. H.R. 4, explaining that permission to change a vote must receive unanimous consent). And they are contrary to Representative Anchia's statement on the floor.

[8] *Perez* also supports Defendants' argument that this Court was wrong to rely on the 2012 decision rejecting preclearance of Texas's 2011 redistricting. *Cf. Veasey I*, 71 F. Supp. 3d at 636 n.23 (citing *Texas v. United States*, 887 F. Supp. 2d 133, 151 (D.D.C. 2012)). As *Perez* observed, "it is important not to forget that the burden of proof in a preclearance proceeding was on the State. Particularly where race and partisanship can so often be confused, . . . the burden of proof may be crucial." *Perez*, 2018 WL 3096311, at *19 n.25 (citation omitted).

religious hostility, given that the policy covers just 8% of the world's Muslim population"). As the Fifth Circuit noted, "over 95% of all Texas voters, irrespective of race, already possess ID satisfactory under SB 14." *Veasey VII*, 888 F.3d at 799. And of that remaining less-than-5%, the number of white voters allegedly burdened by SB 14 (296,000) was approximately the same as the combined number of similarly situated African-American voters (128,000) and Hispanic voters (175,000). DE 976 at 26-27. This effect is too attenuated to support an inference of discriminatory purpose.

The Legislature's enactment of SB 5 and a previous Legislature's judgment that SB 14 was an effective response to a legitimate problem, when added to the remaining substantial evidence relied on by Defendants, *see* DE 966, 976, leave no room for concluding that Legislature enacted SB 14 for an invidious purpose.

## <u>CONCLUSION</u>

The Court should dismiss Plaintiffs' remaining claims or, in the alternative, enter judgment on the merits for Defendants on all claims.

Date: June 27, 2018                    Respectfully submitted.

KEN PAXTON                             /s/ Angela V. Colmenero
Attorney General of Texas              ANGELA V. COLMENERO
                                       Chief, General Litigation Division
JEFFREY C. MATEER
First Assistant                        MATTHEW H. FREDERICK
   Attorney General              Deputy Solicitor General

BRANTLEY D. STARR                      JASON R. LAFOND
Deputy First Assistant                 Assistant Solicitor General
   Attorney General
                                       Office of the Attorney General
JAMES E. DAVIS                         P.O. Box 12548 (MC 059)
Deputy Attorney General                Austin, Texas 78711-2548
   for Litigation                 Tel.: (512) 936-6407
                                       Fax: (512) 474-2697
                                       Counsel for Defendants


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2018, a true and correct copy of the foregoing
document was served via the Court's ECF system to all counsel of record.


                              /s/ Angela V. Colmenero
                              ANGELA V. COLMENERO


26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Now before the Court comes Defendants' Motion to Dismiss Plaintiffs' Claims or, in the Alternative, Enter Final Judgment for Defendants on Plaintiffs' Claims. Having considered the motion, the Court is of the opinion that it should be GRANTED.

IT IS THEREFORE ORDERED that [Plaintiffs' remaining claims are dismissed / final judgment on Plaintiffs' claims will be entered in favor of Defendants on the merits].

**IT IS SO ORDERED.**

Date: _____

_____
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 2:13-CV-00193 |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINAL JUDGMENT**

This Court hereby enters final judgment [dismissing Plaintiffs' claims in their entirety / rejecting Plaintiffs' claims on the merits].

**IT IS SO ORDERED.**

Date: _____

_____
**UNITED STATES DISTRICT JUDGE**