**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| MARC VEASEY , *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-193 (NGR) |
| GREG ABBOTT, *et al.*, | |
| Defendants. | |

# PLAINTIFF TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS (HJ&C) MOTION AND BRIEF FOR REASONABLE ATTORNEY FEES

**Prevailing Party as Basis for Fees:**

Plaintiff Texas Association of Hispanic County Judges and County Commissioners files this motion and brief for attorney's fees and fully supports and associates itself with the brief and motion filed by the Veasey plaintiffs in this case.

Section 19731(e) of the Voting Rights Act provides that "[i]n any action or proceeding to enforce the voting guarantees of the fourteen or fifteenth amendment, the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee, ... and other reasonable litigation expenses as part of the costs." 42 U.S.C.A. § 19731(e); *see also* 42 U.S.C. § 1988 (providing that "the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs"). Thus, "[o]nly 'prevailing parties' may recover attorney's fees

under 42 U.S.C. §§ 1973/ (e), 1988." *Wilson v. Mayor & Bd. of Alderman of St. Francisville, La.*, 135 F.3d 996,999 (5th Cir.1998). In civil rights cases, "[i]f the plaintiff has succeeded on any significant issue in the litigation which achieve[d] some of the benefit the parties sought in bringing the suit, the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Assoc. v. Garland Ind. Sch. Dis/.,* 489 U.S. 782, 791-92 (1989) (quotations omitted). *Hewitt* v. *Helms,* 482 U.S. 755, 760, 96 L. Ed. 2d 654, 107 S.Ct. 2672 (1987).

In this case Plaintiff Intervenor Texas Association of Hispanic County Judges and County Commissioners (HJ&C) succeeded in the litigation invalidated Senate Bill 14, the Texas Voter ID law, as violating the federal law.

Movant qualifies as a prevailing party because of the injunction obtained: it prohibited the use of SB 14 in the upcoming elections. The injunction was based on this Court's finding that the voting rights claims asserted against SB14 under Section 2 of the Federal Voting Rights Act (VRA), 42 USC 1973c were successful.

The court found the following that clearly entitles movant to prevailing party status and eligible for attorney fees:

> "HJ&C also asserts that SB 14 has diverted the organization from its core mission of Hispanic voter turnout because it must now educate its constituents on how to satisfy SB 14 requirements. …The Court finds that each of the remaining Plaintiffs has standing to sue and has stated a legal injury sufficient to support his or her respective claims regarding SB 14 requirements." .(ECF 628 at p 89)

> Plaintiffs have stated viable claims to relief pursuant to Section 2 of the Voting Rights Act.(ECF 628 p. 118)

> The Court finds both that SB 14 imposes a disparate impact on African-Americans and Latinos and that its voter ID requirements interact with social and historical conditions to cause an inequality in voting opportunity (ECF 628 at 119)

… this Court conclude that SB 14 will have a disparate impact on both Hispanics and African-Americans throughout the State of Texas.. (ECF 628 at 120)

The Court hereby enters a permanent and final injunction, enjoining the Defendants from enforcing the voter identification provisions, …(ECF # 633)

The success achieved by the plaintiffs qualifies as a prevailing party entitled to attorney fees, *Texas State Teachers Assoc. v. Garland Ind. Sch. Dis*. Id.

**Amount Requested:**

The Fifth Circuit has provided the following guidance for district courts to determine an appropriate award of attorneys' fees:

> In *Johnson v. Georgia Highway Express, Inc*., 488F.2d 714 (5th Cir. 1974), we establishedtwelve factors which district courts must consider in deciding the amount of attorney's fees to award to a prevailing plaintiff. The twelve factors are considered within the framework outlined in *Copper Liquor, Inc. v. Adolph Coors*, 684F.2d 1087 (5th Cir. 1982) [*Copper Liquor* III]. Under *Copper Liquor* the district court should: (1) ascertain the nature and extent of the services supplied by the attorney; (2) value the services according to the customary fee and quality of the legal work; and (3) adjust the compensation on the basis ofthe other *Johnson* factors that may be of significance, 684 F.2d at 1092. The product of  factors (1) and (2) is called the "lodestar."*See Nisby v. Commissioners Court,* 798 F.2d 134,136-37(5th Cir. 1986);[1]

Subsequent to the opinion in *Johnson*, the Supreme Court held that an award of attorneys' fees under section 1988 should normally be based on multiplying a reasonable number of hours worked by a reasonable rate of compensation. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct.1541,1548, 79 L.Ed.2d 891, 895 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40, 50(1983). The Court noted, however, that the calculation of the lodestar does not end the inquiry and that other considerations may persuade the district court to increase or decrease a fee award. *Hensley,* 461U.S. at 434,103 S.Ct.at 1940, 76 L.Ed.2d at 51. In

---

[1] The *Johnson* factors are addressed directly in the Rios Affidavit filed with this motion.

*Brantley v. Surles,* 804 F.2d 321(5th Cir. 1986), another panel of the court upheld a fee award where the district court did not evaluate each *Johnson* factor because the overall award "me[t] the Supreme Courts guidelines in *Blum and Hensley.*"*Id.* at 326.

Movant seeks fees and costs in the amount of **$220,923.66.** They are summarized as follows[2]:

EXPENSES:

TRAVEL

| | | | |
|---|---|---|---|
| Copies&Faxes | 500 | $0.10 | $50.00 |
| 9/26/2013 | attached travel report | | $120.06 |
| 2/12/2014 | attached travel report | | $205.91 |
| 7/14/2014 | attached travel report | | $278.40 |
| | Total costs | | $654.37 |

| SUMMARY OF BILLING | | | Amount |
|---|---|---|---|
| Attorney   RR | $613.00 | Hrs 359.33 | $220,269.29 |
| Expenses | | | $654.37 |
| Total Fees and Expenses | | | **$220,923.66** |

Total

---

[2] Time sheets and expense records have been filed along with this motion; the rate is supported by the affidavit filed by Attorney Billy Edwards and the brief filed by the Veasey plaintiffs.

**CONCLUSION**

As it is clear that plaintiffs prevailed in all aspects of this case, fees are allowed in a case of this nature so that private Plaintiffs can maintain their ability to adequately represent the interest of the minority community.

DATED:  April 11, 2019                    Respectfully Submitted,

ROLANDO L. RIOS
100 BROADWAY,  Suite 355
San Antonio, Texas 78205
Ph:     (210) 222-2102
Fax:    (210) 222-2898
E-mail:rrios@rolandorioslaw.com

By: *Rolando L. Rios  /s/*
ROLANDO L. RIOS
SBN: 16935900
Attorney for Plaintiff-Intervenor Texas
Association of Hispanic County Judges and
        County Commissioners
The Law Offices of Rolando L. Rios

**CERTIFICATE OF CONFERENCE**

This is to certify that plaintiff's counsel has conferred with defendants counsel and they have indicated that they oppose this motion.

 *Rolando L. Rios /s/*
Rolando L. Rios

## CERTIFICATE OF SERVICE

I certify that on this a true and correct copy of this Plaintiff Intervenor Motion for Attorney Fees and Costs has been served upon the Defendants using the electronic filing system.

_ *Rolando L. Rios /s/* _
Rolando L. Rios

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>GREG ABBOTT, *et al.*,<br><br>    Defendants. | Civil Action No. 2:13-cv-193 (NGR) |

**DECLARATION OF ROLANDO L. RIOS IN SUPPORT OF APPLICATION FOR ATTORNEYS FEES AND COSTS**

I Rolando L. Rios declare under penalty of perjury that the following is true and correct:

1. I am an attorney and a member of the Bar of the State of Texas and am admitted to practice before this court; I am currently in private practice with a substantial portion of my practice dedicated to voting rights cases. I am presenting this declaration in support of Plaintiff Texas Association for Hispanic County Judges and County Commissioners (HJ&C) for Attorney's Fees and Costs.

2. Plaintiffs are prevailing parties in this action and are entitled to attorney's fees and costs as authorized by the Voting Rights Act, 42 U.S.C. §1973*l*(e) as amended in 2006

3. Plaintiff successfully argued that State of Texas' Legislatively adopted Voter ID law (SB14) would discriminate against the Hispanic Community.

4. I have personal knowledge of the matters stated in this declaration, and I could and would

testify competently about them if called to do so.

5. I have over 35 years experience in Federal Civil Rights and the Voting Rights Litigation ; my interest in Voting Rights is based on a sensitivity to civil rights and voting rights, which stems from my background and the difficulties I have encountered in trying to improve the socio-economic, educational, and polictical status of the Mexican-American community

    a) My parents were Mexican American; my father was from Mexico and did not go beyond the 1st grade. My mother completed what was then the equivalent of a 3rd grade education.

    b) Both of my parents, due to language difficulties, were employed as laborers. Because they realized the importance of an education to securing a good job, they continually stressed the necessity to secure a good education.

    c) I grew up on the west side of San Antonio, Texas, which is predominantly a Mexican American Community. In high school, Holy Cross, I focused my attention in securing good grades. With the help of my parents, teachers, and supportive counselors and mentors, I was able to graduate from high school and go on to college. No one else in my family has ever completed one year of college.

    d) As a result of my scholastic record, I was admitted as an undergraduate to St. Mary's University in 1965 and obtained a degree in Mathematics

    e) In 1969, after graduation from college I was immediately drafted to serve in Vietnam. After three months in Vietnam, I was injured and subsequently released from the service as a disabled veteran.

    f) After the service, I started working at the Mexican American Legal Defense and Educational Fund (MALDEF) as a paralegal and simultaneously attended graduate school. My goal was to enter law school and work in civil rights.

    g) In 1975, I was admitted to the Georgetown University Law Center in Washington D.C. In law school, I was very involved in the recruitment and admissions of minority students. As a leader in the Hispanic student bar, I was placed on the Georgetown Admissions Committee.

    h) In 1980, I filed the voting rights lawsuit against the State of New Mexico that challenged the use of registered voters as the basis for the state legislativereopportionment. See *Sanchez v, King,* CV-82-0067-F (D.C.N.M. 1984) That case led to an increase in the number of Latino and Native American elected officials inthe New Mexico Legislature.

i)   In 1982, I testified before both houses of the U.S. Congress in support of the passage of the amended VotingRights Act. I attended the White House reception in which President Reagan signed the bill into law saying "...the right to vote is the most sacred of all our rights because all other rights flow from it."

6.   The experiences described above have convinced me that our democracy stays strong only when our institutions continually attempt to include all members of our society in the democratic process.

7.   Between 1980 and the present I have concentrated most of my professional time on developing an expertise in Federal Voting Rights Litigation – I have filed over 250 voting rights cases throughout Texas, New Mexico, Colorado, Arizona and California. I was involved in numerous significant cases that served as the leading interpretations to the 1982 Amendments to the Voting Rights Act: *Jones v. City of Lubbock*, 727 F, 2d 364, (5th *Cir.1987); LULAC v. Midland Independent School District.,* 812 F. 2d 1494 (5th Cir. 1987*), aff'd* 829 F.2d 546 (5th Cir. 1987); *Campos* v. *City of Baytown,* 840 f. 2d 1240, (5th Cir. 1988), *rehearing* denied, 849 F. 2d 1240, *petition for* certiorari filed Nov. 14, 1988 and *LULAC v. Northeast Independent School District,* 903 F.Supp. 1071 (5th Cir. Sept. 25, 1995). All of these cases involved successful challenges to the uses of at-large elections. Also, I was one of the lead counsel in *LULAC v. Attorney General of Texas,* 111 S. Ct. 2376 (1991) which is the seminal authority for applying the Voting Rights Act to judicial elections; this case was successfully argued in the United States Supreme Court.

8.   During the 2000 Redistricting Cycle, I was the lead counsel in *LULAC v. Perry*, 126 S. Ct. 2594 which successfully challenged the 2003 Texas Congressional Redistricting as violating the Voting Rights Act.

9.  As a result of my voting rights work, I have gained substantial experience as a voting rights litigator. I have successfully secured preliminary injunctions at the trial and appellate court levels; I have successfully prosecuted cases at the trial court level, and I have successfully presented appeals and defended cases before the United States Supreme Court and the United States Court of Appeals for the Fifth, and Ninth Circuits.

10. Further, as a result of my extensive experience in voting rights litigation, other attorneys and organizations often consult me for advice. This advice has ranged from observations on the political access barriers confronting the minority community on a national level to advice involving whether a given political subdivision should be challenged under the Voting Rights Act.

11. I accepted this case as a fee shifting case with a nominal fee for expenses provided by the client. I am totally dependent on the award of attorneys' fees for the survival of my voting rights practice.

12. **TAB A** is a transcript of my actual time sheets that reflect the time I spent on this case and the actual paralegal time and expenses that my office spent on this case. My time records are kept on a daily basis as work is done on the case.  I have reviewed these transcriptions and believe that they are true and accurate reflection of the time spent on this litigation.

13. I am requesting an award of $613.00 per hour for attorney work in this case.  The hours are multiplied by  current  billing rate for this type of case; this rate reflects my expertise in the area of voting rights litigation.[1]

---

[1]  It appears that back in 2012 the State of Texas has paid their outside counsel $520 per hour for this type of litigation, see **TAB B**. A request of $613.00 per hour for successful plaintiff's attorneys is a reasonable request.

a. <u>Time or Labor Required</u>: The amount of time reflected on my time sheets was essential to properly prepare this case and for trial.  The vote dilution that was inflicted upon the Hispanic Community in this case were consistent with what the State of Texas attempts to inflict on the Hispanic Community every time redistricting is done.  This case was tried at the district court level before a three-judge court and entailed an appeal to the United States Supreme Court with the final hearing back at the district court level for the imposition of a remedy.  The case was on a fast track in order to keep up with looming elections schedules.

b. <u>The Novelty and Difficulty of the Questions</u>: The legal and factual issues in this case, as in most voting rights cases, were complex. Successful vote dilution claims against state wide congressional redistricting plans are extremely difficult not only because of the complex nature of the jurisprudence but because of the unlimited resources the state has to defend all claims.  Specifically, this case involved complex questions of federal law and constitutional authority of the state to change voting procedures and what limits, if any, are imposed by the Voting Rights Act and the equal protection clause.  One novel issue that presented itself in this case was whether or not the State change long existing voting procedures without substantive justification.

c. <u>The Skill Requisite to Perform the Legal Services Properly</u>:  These types of cases are uncommon; my over thirty years (35) experience in voting rights litigation was key to the efficient presentation and resolution of the case.  Some of the specific skills required for this type of litigation include: effective use of election data with regression analysis to prove the existence of racially polarized voting; presentation of election data to distinguish between racial and political polarization in voting; use of census data down to the voting precinct level to properly analyze various voting procedures for racial impact;  understanding of the current law on the statutory and constitutional limits of state power in the

area of amending voting procedures.

d. <u>The Preclusion of Other Employment by the Attorney Due to Acceptance of this Case</u>: I am a private practitioner whose practice is totally dependent on the Attorney Fees Act to maintain my voting rights practice. Indeed, my voting rights practice is dedicated to the effective enforcement of the Voting Rights Act. This particular case involved 350 hours of legal work without pay and precluded me from pursuing other employment.

e. <u>The Customary Fee</u>:  Here, Plaintiffs seek attorneys' fees in the amount of $613.00 per hour.  This request is documented as reasonable by local practitioner Ricardo Cedillo for this type of litigation.  Affidavit of Ricardo Cedillo has been filed along with the motion for interim fees and expenses.

f. <u>Whether the Fee is Fixed or Contingent</u>: This is a contingent fee case because the Court award is contingent upon the Plaintiffs prevailing.  I have received no compensation for work done in this case from the client other than an initial nominal fee for expenses paid by the plaintiff.

g. <u>Time Limitations Imposed by Client or the Circumstances</u>. Election schedules always impose time limitation on these types of cases. In prosecuting a case like this, the practitioner must constantly keep in mind pending election schedules. In this case, the court had to hear the merits of the case and issue orders in light of looming election schedules. Then an appeal to the 5th Circuit ensued. Because of the litigation, the Court had amend election procedures in time for the elections. These time limitations impose an additional burden to private practitioners.

h. <u>The Amount involved and Results Obtained</u>. Plaintiffs obtained the relief that was sought – restoring the voting rights of  Hispanic voters through out Texas. Specifically, plaintiffs had to reverse the Texas Legislatures restrictive voter ID

Law and forced the State of Texas to change voting procedures as was suggested by the plaintiffs.  We were finally able to convince the defendants to reach a modification of the voting procedures that minimized the adverse impact on the minority community.

i.  These are extraordinary results that warrant a multiplier of the fee request as allowed by the federal courts. *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983); and *Blum v. Stenson,* 465 U.S. 886, 897 (1984). See also *Flowers v Riley*, 675 R. 2d 704, 707 (1982)( where 5th Cir approved a multiplier of 33%). Plaintiffs see such as multiplier.

j.  The Experience, Reputation and Ability of the Attorney. I specialize in voting rights litigation and have been practicing for over thirty (35) years.  Besides this case,  I have taken other cases to the United States Supreme Court  and the Fifth Circuit Court of Appeals on voting rights issues that have resulted in favorable rulings for my clients: *League of United Latin American Citizens v. Perry*,  126 S. Ct. 2594 (2006)   *League of United Latin American Citizens (LULAC) v. Midland Independent School District*, 648 F. Supp. 596 (W.D. Tex. 1986); *Campos v. City of Baytown*, 840 F. 2d 1240 (5th. Cir.1988); *LULAC v. Clements*, 999 F.2d 831 (5th Cir. 1993); *Balderas v. Texas*, 536 U.S. 919 (2002).  I have also been involved in over 250 successful voting rights cases at the local level that had the effect of enforcing the Federal Voting Rights Act on behalf of Hispanics, African Americans and Native Americans.

k.  The Undesirability of the Case. Civil rights cases are not considered very desirable in Texas. A challenge to the existing political power structure is not looked upon very favorably. Indeed, local attorneys view this type of litigation as adversely affecting potential future business and an obstacle to potential political benefits.

l.  The Nature and Length of the Professional Relationship with the Client:  This legal effort directed at protecting the voting rights of the minorities in Texas has taken some time. Throughout this time, Plaintiffs counsel has had an ongoing relationship with the client and has been in communication with him throughout this case.

m.  Awards in Similar Cases:  The award requested in this case is consistent with the awards made in similar cases in this and other circuits. **TAB B** indicates the defendants paid $520 back in 2012 for their outside counsel in a voting rights case.  Attached as **TAB C** to this Declaration is a court order on the *LULAC v Perry*, SA-06-ca-1046-XR, case on the 2000 congressional redistricting case in which Attorney Rios was awarded $350.00 per hour – this award was close to 10 years ago; given the experience and results obtained, an award of $613 per hour is reasonable.

14. My total request for attorney fees and costs is $220,923.66; attached as TAB A is the time records and expenses.

I certify that the attached time sheet and the cited expenses are true and correct and that the services performed did occur and were necessary for the proper disposition of this matter.

STATE OF TEXAS       §
COUNTY OF BEXAS      §

_____
ROLANDO L. RIOS

SUBSCRIBED AND SWORN TO before. me this 11th day of February, 2019

Commission Expires __02/27/2022__

DIANA CORDOVA
NOTARY PUBLIC - STATE OF TEXAS
ID # 12849579-7
COMM. EXP. 02-27-2022

-8-

# Rolando L. Rios & Associates, PLLC

ATTORNEYS AT LAW

115 E. Travis, Suite 1645

San Antonio, Texas 78205

## TIME & EXPENSE RECORDS

Tex Association of
Hispanic County Judges
and County Commissioner

Voter ID Litigation

### USA v. Texas ( Voter ID challenge)

**Attention: File**

**Re: Texas Voter ID challenge**

TOTAL AMOUNT DUE FOR THE LEGAL SERVICES AND FEES AND
EXPENSES FOR LEGAL SERVICES RENDERED IN THE CAPTIONED
MATTER FROM DATE OF LAST BILL TO AND INCLUDING:
FEES, EXPENSES AND COSTS ARE DESCRIBED BELOW

**Total Due to Date  $220,923.66**

### PROFESSIONAL SERVICES

| Date: | Staff | Hrs | Activity |
|---|---|---|---|
| 8/26/2013 | RR | 5.5 | pleadings - complaint draft; pc with clients and cocounsel |
| 8/27/2013 | RR | 3 | Review findings of Texas v Holder on Voter ID Sec 5 proceeding |
| 8/29/2013 | RR | 4.5 | motion to intervene; complaint in intervention; download USA v Texas |
| 9/4/2013 | RR | 2.8 | Pleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |
| 9/6/2013 | RR | 4.2 | Download pleading from DC case and case in Corpus Christi; Pleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |
| 9/10/2013 | RR | 0.2 | 2 emails |
| 9/11/2013 | RR | 3 | Pleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |

# Rolando L. Rios & Associates,PLLC

| | | | |
|---|---|---|---|
| 9/12/2013 | RR | 4.5 | Download pleading from DC case and case in Corpus ChristiPleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |
| 9/13/2013 | RR | 5 | Pleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |
| 9/17/*13 | RR | 0.3 | 3 emails |
| 9/17/2013 | RR | 4 | Pleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |
| 9/18/2013 | RR | 0.2 | 2 emails |
| 9/20/2013 | RR | 3.5 | Pleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |
| 9/23/2013 | RR | 4 | Pleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |
| 9/24/2013 | RR | 4.5 | Pleadings - Federal and State - motion to intervene, complaint in intervention; State Complaint, M for preliminary injunction, Memo in support; proposed order |
| 9/25/2013 | RR | 4.8 | pc with potential clients; prepare to travel to Edinburrg; work on plaeadings - State and Federal |
| 9/26/2013 | RR | 8 | Travel to Edinburg; confer with clients; travel back to SA |
| 9/27/2013 | RR | 0.1 | 1 email |
| 9/27/2013 | RR | 4.2 | finalize pleadings; file intervention docs (#41) |
| 9/30/2013 | RR | | 9 emails |
| 9/30/2013 | RR | 2.2 | review doc 13, 2 and 7; |
| 10/1/2013 | RR | 0.4 | 4 emails |
| 10/1/2013 | RR | 1 | pc with commissioners (clients) on filing of intervention; calendar upcoming events |
| 10/2/2013 | RR | 0.2 | 2 emails |
| 10/3/2013 | RR | 2 | 20 emails |
| 10/4/2013 | RR | 0.4 | 4 emails |

# Rolando L. Rios & Associates, PLLC

| Date | | Hours | Description |
|---|---|---|---|
| 10/4/2013 | RR | 1.8 | prepare for and participate in the pc with the court and all parties on M to Stay filed by the USA |
| 10/8/2013 | RR | 0.1 | 1email |
| 10/8/2013 | RR | 0.8 | pc with clients on status of case; foia on materials from Edinburg |
| 10/11/2013 | RR | 0.3 | 3 emails |
| 10/17/2013 | RR | 0.1 | 1 email |
| 10/18/2013 | RR | 0.2 | 2 emails |
| 10/18/2013 | RR | 1.5 | prepare for and participate in the pc with the court and all parties on rescheduling after gov shutdown the USA; confer with cocounsel review and calendar events |
| 10/21/2013 | RR | | 1 email |
| 10/21/2013 | RR | 3.5 | #51; continue review and download docs on Tex v USA; review joint appendix filed by state and usa |
| 10/22/2013 | RR | 0.2 | 2 emails |
| 10/22/2013 | RR | 2.5 | proposed protective order, proposed supp order, ESI agreement; #51 |
| 10/24/2013 | RR | 0.6 | 6 emails |
| 10/24/2013 | RR | 2 | Rule 26(f)conference preparations; emails with parties |
| 10/25/2013 | RR | 0.5 | 5 emails |
| 10/28/2013 | RR | 4.5 | pc with state and doj on Rule 26 conf and  data format and exchange; work on PI motion; pc with cocounsel |
| 10/29/2013 | RR | 0.2 | 2 emails |
| 10/29/2013 | RR | 3.5 | Preliminary injunction draft docs |
| 10/30/2013 | RR | 0.4 | 4 emails |
| 10/31/2013 | RR | 0.2 | 2 emails |
| 11/1/2013 | RR | 1 | 16 emails |
| 11/2/2013 | RR | 0.2 | 2 emails |
| 11/4/2013 | RR | 0.8 | 8 emails; #60 |
| 11/5/2013 | RR | 0.7 | 1 email; docs 61- 62 and 6 attachments |
| 11/6/2013 | RR | 0.1 | 1 email |
| 11/7/2013 | RR | 0.1 | 1 email |

# Rolando L. Rios & Associates,PLLC

| 11/8/2013 | RR | 0.1 | 1 email |
|---|---|---|---|
| 11/12/2013 | RR | 0.5 | 5 emails; docs 65 and 66 |
| 11/13/2013 | RR | 0.5 | 5 emails; doc 67 |
| 11/14/2013 | RR | 0.3 | 3 emails; docs 70 and 71 w exhibits |
| 11/21/2013 | RR | 1.5 | prepare for and file initial disclosures; also docs 79 through 84 with 9 attachments |
| 11/22/2013 | RR | 1.2 | prepare for and participate in pc with the court on states advisory requesting modification of the scheduling order |
| 11/25/2013 | RR | 2.8 | docs 86 through 92; resp to motion to dismiss and disclosures |
| 1/3/2014 | RR | 3 | pc with opposing counsel on potential settelemnt; analysis of claims made in state case |
| 1/6/2014 | RR | 5.5 | travel to Edinburg; confer with clients (Judge Garcia and individuals)  travel back to SA; work on draft of Amended complaint. |
| 1/7/2014 | RR | 0.0333 | 1 email |
| 1/9/2014 | RR | 0.0333 | 1 email |
| 1/10/2014 | RR | 0.0999 | 3 emails |
| 1/13/2014 | RR | 0.0666 | 2 emails |
| 1/13/2014 | RR | 3.5 | pc with State on agreement to our motion to file amended complaint; work on amended complaint |
| 1/14/2014 | RR | 0.2331 | 7 emails |
| 1/17/2014 | RR | 0.0333 | 1 email |
| 1/19/2014 | RR | 0.0666 | 2 emails |
| 1/21/2014 | RR | 0.0333 | 1 email |
| 1/22/2014 | RR | 0.0666 | 2 emails |
| 1/23/2014 | RR | 0.0999 | 3 emails |
| 1/24/2014 | RR | 0.1665 | 5 emails |

TAB A                                                                    4

# Rolando L. Rios & Associates, PLLC

| Date | | Hours | Description |
|---|---|---|---|
| 1/27/2014 | RR | 0.0666 | 2 emails |
| 1/28/2014 | RR | 0.2331 | 7 emails |
| 1/28/2014 | RR | 1.2 | Review discovery filed in this case by various parties |
| 1/29/2014 | RR | 2.5 | preapare and serve defendants with HJ&C first set of Request for Production |
| 2/11/2014 | RR | 4.5 | confer with cocounsel to prepare for the hearing scheduled for 2-12-14 in Corpus; travel to Corpus Christi |
| 2/12/2014 | RR | 4 | attend hearing before Judge Ramos; travel back to SA |
| 2/14/2014 | RR | 1.5 | confer with counsel (J. Garza) on potential injunctive relief; phone hearing with the court on M to modify scheduling order - review order denying M |
| 3/3/14 - 6/9/14 | RR | 18.7 | 250 emails |
| 6/12/2014 | RR | 17 | Travel to and from to S. Padre Island to brief clients on status of the case (T-13hrs; prepare and brief 4) |
| 6/13/2014- 6/24/14 | RR | 22.8 | 150 emails |
| 6/24/2014 | RR | 2 | status conference |
| 6/27/2014 | RR | 2.8 | prepare and send document in preparation for deposition of Garcia to local contacts |
| 6/25/2014 - 7/14/14 | RR | 6.7 | 90 emails |
| 7/9/2014 | RR | 3.5 | meeting with Judge Ramon Garcia on his deposition |
| 7/10/2014 | | 1.5 | review judicial notice and join with DOJ M for judicial notice |
| 7/14/2014 | RR | 15 | Travel to and from Edenburg; defend deposition of Judge Ramon Garcia |
| 7/14/2014 | RR | 2 | status conference |
| 7/15/14- 7/21/14 | | 7.5 | 135 email |
| 7/21/2014 | RR | 2 | status conference |
| 7/22/14 - 8/2/14 | RR | 9.5 | 245 emails |
| 8/2/2014 | RR | 4.5 | travel to and from Corpus Christi: opening arguments |

# Rolando L. Rios & Associates, PLLC

| Date | | Hrs | Description |
|---|---|---|---|
| 8/4/14-10/15/14 | RR | 35.9 | 1,110 emails |
| 10/16/2014 | RR | 1.2 | 6 emails including assignment of USCA 14-41127 5th cir court of appeals |
| 10/18/2014 | RR | 1.5 | review Sup Ct. order on the application to vacate; discuss with cocounsel |
| 10/20/2014 | RR | 1 | unopposed motion to hold in abeyence; 7 emails |
| 10/21/2014 | RR | 0.8 | 6 emails;  motion to delay deadline for plaintiffs to seek attorneys fees; |
| 10/22/2014 | RR | 2.2 | Section 3 remedy issues LR and discussions |
| 10/23/2014 | RR | 0.8 | discussion on stay remedy pending resolution of the appeal |
| 10/24/2014 | RR | 1.4 | remedy and Section 3 (c ) to be deferred; submission t the court; 16 emails; order setting pc hearing for 10/27/14 |
| 10/27/2014 - 10/31/14 | RR | 2.5 | 45 emails; |
| 11/7/2014 | RR | 1 | 12 emails; issues with 5th request to file all exhibits through the CM/ECF filing system |
| 11/11/2014 | RR | 1.5 | #660 -678 Exhibits by plaintiffs |
| 11/12/2014 - 11/21/14 | RR | 3.5 | Motion to withdraw Deason as counsel for Defendants; filing trial exhibits ; #681 through #805 sealed filing |
| 11/24/2014 | RR | 0.8 | #806, Defendants Offer of Proof of Section 5 Memorandum |
| 11/25/2014 | RR | 0.8 | motion to withdraw various counsel for the defendants |
| 12/3/2014 | RR | 0.3 | electronic filing of recod on appeal |
| 1/27/2015 | RR | 0.8 | state motion to file sealed appellant's brief |
| 1/27/2015 | RR | 1.5 | letter filing of defendants in 5th circuit; brief on sealed filing; court of appels letter on caption changes |
| 1/28/2015 | RR | 0.5 | redacted unopposed motion filed by Defendants |
| 1/29/2015 | RR | 1.8 | motion to file redacted brief; Appellant brief filed; record excerpts; ltr from Cyle Cayce |
| 1/30/2015 | RR | 1.5 | filing of brief filedin Wisconsin Case, 7th Circuit |
| 2/5/2015 | RR | 1.2 | amicus brief filed by Eagle Forum |
| 2/13/2015 | RR | 0.5 | #826 response to order requiring Def to pay fees and expenses for expet deposition |
| 2/17/2015 | RR | 0.5 | unopposed Motion to view sealed document |

# Rolando L. Rios & Associates, PLLC

| | | | |
|---|---|---|---|
| 2/18/2015 | RR | 0.3 | motion to withdraw counsel for defendants |
| 2/23/2015 | RR | 0.3 | respond to Cam Baker on request to file corrected brief |
| 2/24/2015 | RR | 1.2 | texas bills related to Voter ID sent by Robert Doggett |
| 3/2/2015 | RR | 2.2 | redacted apellants brief |
| 3/4/2015 | RR | 2 | appellee's brief - reviewed and filed; respond to 5th Cir clerk |
| 3/4/2015 | RR | 1.2 | 13 emails, Texas request for additional time issue |
| 3/5/2015 | RR | 1.5 | 6 emails - download briefs |
| 3/6/2015 | RR | 0.8 | 2 emails State Motion to extend time to file reply brief |
| 3/10/2015 | RR | 0.8 | Amicus filed by the ACLU |
| 3/23/2015 | RR | 1 | Cert denied in Wisconsin case; appeals court set for argument |
| 3/31/2015 | RR | 0.5 | #834, USCA notice of appeal 14-41127 |
| 4/6/2015 | RR | 0.5 | supplemental electronic record on appeal certified |
| 4/7/2015 | RR | 0.8 | paper copies of appellant brief |
| 4/9/2015 | RR | 0.5 | #835 transmittal letter |
| 4/16/2015 | RR | 0.8 | legislative bill on photo voter ID HB00535 |
| 5/28/2015 | RR | 0.3 | # 837, motion to withdraw attorney |
| 5/29/2015 | RR | 0.3 | #838 order granting motion to withdraw |
| 5/29/2015 | RR | 0.5 | response filed by Appellee USA to ltr filed by Texas |
| 7/2/2015 | RR | 1.2 | SUPPLEMENTAL AUTHORITIES (FRAP 28j) FILED by Appellees Mexican American Legislative Caucus-Texas House of Representatives and Texas State Conference of NAACP Branches Date of Service: 07/02/2015 via email - |
| 7/7/2015 | RR | 0.8 | SUPPLEMENTAL AUTHORITIES (FRAP 28j) FILED by Appellants Mr. Greg Abbott |
| 7/10/2015 | RR | 0.3 | Unopposed MOTION for Joshua James Bone to Withdraw as Attorney b |
| 7/10/2015 | RR | 0.3 | ORDER granting [842] Motion to Withdraw as Attorney. |
| 8/5/2015 | RR | 2.8 | PUBLISHED OPINION FILED. [14-41127 Affirmed in Part, Vacated in Part, Rendered in Part, Dismissed in Part, and Remanded ] |
| 8/6/2015 | RR | 0.1 | email from clients |
| 8/20/2015 | RR | 0.5 | OPPOSED MOTION filed by Appellee USA to remand case to the District Court Directing It to Enter Interim Relief. |

# Rolando L. Rios & Associates, PLLC

| | | | |
|---|---|---|---|
| 8/20/2015 | RR | 0.3 | Benjamin, |
| 8/31/2015 | RR | 0.8 | PAPER COPIES REQUESTED for the petition for rehearing en banc filed by Appellants State of Texas |
| 8/31/2015 | RR | 0.5 | COURT DIRECTIVE ISSUED requesting a response from appellees the petition for rehearing en banc |
| 9/1/2015 | RR | 0.3 | UNOPPOSED MOTION filed by Appellee USA to extend the time to file a response to the motion to stay |
| 9/1/2015 | RR | 0.3 | Mathew Fredrick motion to stay the mandate pending the filing of a cert. petition |
| 9/2/2015 | RR | | Paper copies of petition for rehearing en banc filed by Appellants State of Texas, |
| 9/2/2015 | RR | 0.5 | LETTER filed by Appellees Mexican American Legislative Caucus-Texas House of Representatives and Texas State Conference of NAACP Branches *and all private plaintiffs and plaintiff-intervenors* referencing motion to extend time to file a response filed by Appellee USA in 14-41127 [8001994-2]. |
| 9/2/2015 | RR | 0.8 | REPLY filed by Appellee USA [8002517-1] to the response/opposition filed by Appellants State of Texas, |
| 9/2/2015 | RR | 0.5 | COURT ORDER carrying with the case motion for limited remand of case filed by Appellee USA [7991956-2]; |
| 9/2/2015 | RR | 0.3 | ORDER granting [844] Motion to Withdraw as Attorney. |
| 9/3/2015 | RR | 0.1 | MOTION for Anna M. Baldwin to Withdraw as Attorney by United States Of America |
| 9/3/2015 | RR | 1.2 | REPLY filed by Appellees Mr. Gordon Benjamin, Ms. Evelyn Brickner, Ms. Anna Burns, Mr. Floyd Carrier, Mr. Sergio DeLeon, Mr. Ken Gandy, Ms. Jane Hamilton, League of United Latin American Citizens, Mr. John Mellor-Crummey, Mr. Michael Montez, Mr. Oscar Ortiz, Mr. Koby Ozias, Ms. Penny Pope and Mr. Marc Veasey [8004196-1] to the response/opposition filed by Appellants State of Texas |
| 9/4/2015 | RR | 0.3 | COURT ORDER GRANTING appellee USA's unopposed motion to extend the time for 2 days, or until September 10, 2015 |
| 9/10/2015 | RR | 0.3 | COURT ORDER granting motion of Eagle Forum Education & Legal Defense Fund to file amicus brief [8005131-2] Judge(s): CH. [14-41127] (RJd) |
| 9/10/2015 | RR | 1.5 | AMICUS CURIAE BRIEF FILED by Eagle Forum Education and Legal Defense Fund. |
| 10/6/2015 | RR | 0.5 | Order of USCA re: [634] Notice of Appeal ; USCA No. 14-41127 |
| 3/9/2016 | RR | 0.5 | COURT ORDER granting petition for rehearing en banc filed by Appellants State of Texas |
| 3/10/2016 | RR | 2 | EN BANC SUPPLEMENTAL BRIEF of Appellants |

# Rolando L. Rios & Associates, PLLC

| Date | | Hrs | Description |
|---|---|---|---|
| 3/18/2016 | RR | 0.5 | OPPOSED MOTION filed by Appellees Mr. Gordon Benjamin, Ms. Anna Burns, Mr. Floyd Carrier, Mr. Sergio DeLeon, Mr. Ken Gandy, Ms. Jane Hamilton, League of United Latin American Citizens, |
| 3/28/2016 | RR | 0.8 | RESPONSE/OPPOSITION filed by Mr. Greg Abbott |
| 3/29/2016 | RR | 0.5 | COURT ACTION withdrawing show cause order failure to submit paper copies filed by Mr. Rolando Leo Rios, I, Esq. [8163874-2] [14-41127] (DMS) |
| 3/29/2016 | RR | 0.5 | reply in opposition to the State's motion to extend the time to file its supplemental en banc brief with the Fifth Circuit |
| 3/29/2016 | RR | 0.5 | OPPOSED MOTION filed by Appellants Mr. Greg Abbott, Mr. Carlos Cascos, Mr. Steve McCraw and State of Texas to extend time |
| 7/21/2016 | | 2.2 | Download and review 5th cir opinion; confer with cocounsel Hebert and Dunn |
| 7/22/2016 | RR | 1.5 | prepare for and participatate in conference with State and cocounsel on agreed order for documents to be used in 2016 elections |
| 7/23/2016 | RR | 2 | confer with cocounsel on documents including spanish languange version of the documents |
| 9/9/2016 | | 1.5 | Download web cites used by State of Texas addressing the education on voter ID ruling |
| 9/10/2016 | RR | 2.5 | preparation for and participate in hearing with the Court on remedy - education plans for voters on affidavit instead of voter ID doc |
| 3/3/2017 | RR | 2.5 | review transcript of hearing held on 2_28_17 private plaintiffs brief regarding USA change position on intent claim |
| 3/8/2017 | RR | 1 | privae plaintiffs brief regarding effect of new voter ID legislation |
| Tot atty hrs | | 359.33 | |

---

**Total Professional Services**                                    **Previous Bala**        **$0.00**

---

**EXPENSES:**

**TRAVEL**

| | | | |
|---|---|---|---|
| Copies&Faxes | 500 | $0.10 | $50.00 |
| 9/26/2013 | 0 | attached travel report | $120.06 |
| 2/12/2014 | 0 | attached travel report | $205.91 |

# Rolando L. Rios & Associates,PLLC

| 7/14/2014 | 0 | attached travel report | | | $278.40 |
|---|---|---|---|---|---|
| | | $0.00 | | Total costs | **$654.37** |

**CURRENT CHARGES:**

SUMMARY OF BILLING                                                          Amount

| Position | **NameRate/Hr** | | **Hrs** | | |
|---|---|---|---|---|---|
| Attorney | **RR** | $613.00 | | 359.33 | $220,269.29 |

|  |  |
|---|---|
| | **$220,269.29** |
| **Charges this period** | **$0.00** |
| **Expenses** | **$654.37** |
| Total | **$220,923.66** |

**Total**

This statement is due upon receipt. Please contact Rolando L. Rios

at 210-222-2102 of this firm if you have questions concerning legal services

convered by this invoice or if you dispute the amount of the statement.      **Tax ID No. 74-2374051**

**Make checks payable to Rolando L. Rios, Esq.**

**Tax ID No. 74-2374051**

# Rolando L. Rios & Associates

ATTORNEYS AT LAW

115 E. Travis, Suite 1645

San Antonio, Texas 78205

**TRAVEL REPORT**

Client:     Hidalgo Co Census

Staff:     RR

Travel Date: 2/11/14

| Date: | Destination | Travel | Lodging | Cab/Rent | Meals | | Other | | |
|-------|-------------|--------|---------|----------|-------|---|-------|---|---|
| 02/11/14 | Hidalgo | $0.00 | $160.91 | $45.00 | $0.00 | | $0.00 | | $205.91 |
| | | | | | | | | | $0.00 |
| Milage | | | 0 | 0.58 | $ | - | | | $0.00 |
| | | | | | | | | | $0.00 |
| | | | | | | | | | $0.00 |
| | | | | | | | | | $0.00 |
| TOTAL | | | | Subtotal | $ | - | | $ | 205.91 |
| | Balance Due This Invoice | | | | | | | **$** | **205.91** |

TAB A                                                                 11



Hampton Inn & Suites - Corpus Christi
917 N. Navigation Blvd • Corpus Christi, TX 78408
Phone (361) 884-4444 • Fax (361) 883-6363



USA
Official Sponsor

| | |
|---|---|
| RIOS, ROLANDO<br>115 EAST TRAVIS<br>SUITE1645<br>SAN ANTONIO, TX 78705<br>US | name<br>address |

| | |
|---|---|
| room number: | 215/NQRQA |
| arrival date: | 2/11/2014   5:28:00PM |
| departure date: | 2/12/2014 |
| adult/child: | 1/0 |
| room rate: | 139.92 |

If the debit/credit card you are using for check-in is attached to a bank or checking account, a hold will be placed on the account for the full anticipated dollar amount to be owed to the hotel, including estimated incidentals, through your date of check-out and such funds will not be released for 72 business hours from the date of check-out or longer at the discretion of your financial institution.

| RATE PLAN | L-GVT |
|---|---|
| HH# | |
| AL: | |
| BONUS AL: | CAR: |

CONFIRMATION NUMBER : 85842325

2/12/2014    PAGE    1

Rates subject to applicable sales, occupancy, or other taxes. Please do not leave any money or items of value unattended in your room. A safety deposit box is available for you in the lobby. I agree that my liability for this bill is not waived and agree to be held personally liable in the event that the indicated person, company or association fails to pay for any part or the full amount of these charges. In the event of an emergency, I, or someone in my party require special evacuation assistance due to a physical disability. Please indicate yes by checking here:  ☐

signature:

| date | reference | description | amount | ♻ |
|---|---|---|---|---|
| 2/11/2014 | 310730 | GUEST ROOM | $139.92 | |
| 2/11/2014 | 310730 | RM - STATE TAX | $8.40 | |
| 2/11/2014 | 310730 | RM - CITY TAX | $12.59 | |
| | | WILL BE SETTLED TO VS *6652 | $160.91 | |
| | | EFFECTIVE BALANCE OF | $0.00 | |

EXPENSE REPORT SUMMARY

|  | 02/11/14 00:00:00 | STAY TOTAL | |
|---|---|---|---|
| ROOM & TAX | | $160.91 | $160.91 |
| DAILY TOTAL | | $160.91 | $160.91 |

Hampton hotels are all over the world. Find us in Canada, Costa Rica, Ecuador, Germany, India, Mexico, Poland, Turkey, United Kingdom, and United States of America. Coming soon in Italy and Romania.

for reservations call 1.800.hampton or visit us online at hampton.com                                        thanks.

| account no. | | date of charge | folio/check no.<br>112083    A |
|---|---|---|---|
| card member name | | authorization | initial |
| establishment no. and location    establishment agrees to transmit to card holder for payment | | purchases & services | |
| | | taxes | |
| | | tips & misc. | |
| signature  of card member<br><br>X | | total  amount | 0.00 |

         

TAB A



**Budget San Antonio**
**430 Sandau Rd.**
**San Antonio, TX 78216**
**(210) 824-0737**

**BREAKDOWN ONLY!:**
**(210) 835-5100**

**RENTAL AGREEMENT AND INVOICE**

RES # 37499289US2RA # 510112
CLASS E        DATE 02/10/2014

hereinafter referred to as Lessor rents the described Equipment to:

| RENTER: ROLAND RIOS | | | | VEHICLE NO.: 12248025 27 | VEHICLE TO BE RETURNED: 02/12/2014 19.00 |
|---|---|---|---|---|---|
| STREET 115 E. TRAVIS SUITE 1645 | CITY: SAN ANTONIO | STATE: TX | ZIP: 78205 | LICENSE NO. | CPJ1937 |
| PHONE NO.: (210) 222-2102 | LICENSE NO.: 03123526 | STATE: TX | EXP. DATE: 10/05/2015 | BIRTHDATE: 10/05/1945 | MODEL SIL CAMRY-XLE |
| ADDITIONAL DRIVER: | | | | DATE/TIME IN | |
| STREET: | CITY: | STATE: | ZIP: | DATE/TIME OUT | 02/10/2014 19.32 |
| PHONE NO.: | LICENSE NO.: | STATE: | EXP. DATE: | BIRTHDATE: | MILEAGE IN |
| LOCAL CONTACT/ADDRESS EXPRESS | | | | MILEAGE OUT | 9,821 |
| BCD # U265646 | | | | MILES DRIVEN | |

Est. Chgs: Excludes Any Mileage Chg. And Is Subject To The Car Returning With A Full Tank Of Gas On The Agreed Date And Time

I AGREE TO RETURN THIS VEHICLE ON OR BEFORE THE INDICATED DUE BACK DATE TO THE SAME LOCATION AT WHICH IT WAS RENTED OR TO THE BUDGET OFFICE SPECIFIED IN THE BOX BELOW. A DROP CHARGE MAY APPLY IF VEHICLE IS RETURNED TO A DIFFERENT RENTING LOCATION.

| DUE BACK BY: 02/12/2014 | TIME 19.00 | AUTHORIZED RETURN: SAT |
|---|---|---|

| MILEAGE CAP (IF ANY) | 150 | Free Miles Per Day |
|---|---|---|
| | 0.00 | Per Excess Mile |

**LOSS DAMAGE WAIVER (LDW)**
Renter may accept or decline the Loss Damage Waiver by his initials below. If Accepted, Renter agrees to the coverage at the rate shown for each day or fraction thereof. If Renter declines LDW, Renter will be responsible for the full value or any loss of or damage to the vehicle regardless of fault. If Renter accepts LDW, Renter will not be responsi-ble for such loss or damage except as provided in Paragraph 9 on the reverse side.

Accepted _____ Declined _____

**SUPPLEMENTAL LIABILITY INSURANCE (SLI)**
Renter may accept or decline SLI for an excess automobile liability insurance policy for coverage for renter and each authorized driver. If accepts, Renter acknowledges to have read an understands the brochure given to Renter at the time of rental which describes the coverage and limits.

Accepted _____ Declined _____

**PERSONAL ACCIDENT INSURANCE (PAI)**
Renter initials to accept or decline PAI for accidental loss of life and medical coverage for Renter and each passen-ger. See Brochure for synopsis of blanket term acciden-tal policy for rate benefits and exclusions.

Accepted _____ Declined _____

**PERSONAL EFFECTS COVERAGE (PEC)**
Renter initials to accept or decline PEC for coverage of personal property of Renter and his immediate family. If accepts, Renter represents to have read and understands the brochure given to him at the time of rental which describes the coverage and limits.

Accepted _____ Declined _____

**TOLLS**
Renter is responsible for paying any and all tolls incurred during the rental term. If, at any time during the rental term, you incur a toll without paying the toll in cash (including on a cashless toll road) or to some other manner permitted by the applicable toll authority, so Budget or its agent must pay the toll(s) on your behalf, you will be charged a convenience fee of $2.95 for each day of the rental term + the maximum undiscounted published toll fee at the time you incur the tolls+ any additional fees charged by the tolling authority. After you return the rental vehicle and any toll or tolls are pro-cessed, Budget or its agent will charge the convenience fee, toll(s), and any other charges as described above to the credit or debit card you provided when you rented the vehicle. The charges will appear as a separate line item on your credit card or bank state-ment.

Initial _____

Unlimited mileage, weekend special, and vacation special rates do not apply if vehicle is returned to a location other than the renting location. Rates do not include gasoline.
**Off paved road use prohibited.**
RENTER AGREES TO PAY FOR FUEL PURCHASE OPTION
RENTER FURNISHES ALL GAS INCLUDING TANK REFILL UPON RETURN
ALL OF BUDGET'S OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING ALL INSURANCE PROVISIONS HEREOF, ARE VOID IF VEHICLE IS USED OR OPERATED IN VIOLATION OF THIS RENTAL AGREEMENT. HOWEVER, RENTER'S OBLIGATIONS AND BUDGET'S RIGHTS ARE STILL IN FORCE. RENTER AUTHORIZES BUDGET TO SUBMIT A CREDIT/DEBIT CARD VOUCHER OR PAYMENT IN RENTER'S NAME FOR A PAY-MENT. RENTER ASSUMES RESPONSIBILITY FOR ANY AND ALL, TOLL FEESPARKING AND TRAFFIC VIOLATIONS DURING THE TERM OF THE RENTAL.

I AGREE TO BE BOUND BY THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS AGREEMENT.

X _____

| RENTING LOCATION: CIC | RA OPENED BY: 11516 |
|---|---|

The Texas personal automobile insurance policy provides coverage for the legal liabilities of the policyholder in connection with the loss of or damage to a rented vehicle except for damages caused intentionally. Therefore, it may not be necessary for the renter to purchase the loss damage waiver. The purchase of a loss damage waiver is not mandatory. The loss damage waiver is not insurance

| Description | Charged | Rate | Chg. Per | Amount |
|---|---|---|---|---|
| Hourly | | 33.00 | hour | .00 |
| Daily | | 219.95 | day | .00 |
| Hourly (sp) | | 33.00 | hour | .00 |
| Daily (sp) | 2 @ | 43.99 | day | 87.98 |
| Weekly (sp) | | 219.95 | week | .00 |
| | | | | |
| Net T&M | | | | 87.98 |
| | | | | |
| Energy Surcharge | 2 @ | .54 | day | 1.08 |
| Prop Tax/Lic Reimb | 2 @ | 1.96 | day | 3.92 |
| Sales Tax | | 10.000 | % | 9.30 |
| Arena Tax | | 5.000 | % | 4.64 |
| FUEL (per Gallon) | | 7.99 | | |
| Subtotal of Other Charges | | | | 18.94 |
| | | | | |
| Estimated Charges | | | | 106.92 |
| | | | | |
| Total Deposits/Payments | | | | .00 |

| RETURN LOCATION: | RA CLOSED BY: |
|---|---|
| METHOD OF PAYMENT: | |

TAB A                    13

# RL Rios & Associates, Travel Report

110 Broadway, Suite 355
San Antonio, Texas 78205

**SERVICES RENDERED TO:**
Hidalgo County

Edinburg

| | |
|---|---|
| INVOICE NUMBER | 7/14/2014 |
| INVOICE DATE | July |
| TERMS | |

| Date | DESTINATION | Miles | Rate | AMOUNT |
|---|---|---|---|---|
| 7/14/2014 | Garcia Depo | 480 | 0.58 | $278.40 |
| | | | | $0.00 |
| | | | | 278.40 |
| | | | | 0.00 |
| | | Pay This Amt | | **$278.40** |

**DIRECT ALL INQUIRIES**
Business Office, Rios Firm
(210) 222-2102
email: srios@rolandorioslaw.com

**MAKE ALL CHECKS PAYABLE TO:**

Law Office of Rilando L. Ros
Attn: Accounts Receivable
110 Broadway, Suite 355
San Antonio, Tx 78205

TAB A                                    14

# Rolando L. Rios & Associates
## ATTORNEYS AT LAW
### 115 E. Travis, Suite 1645
### San Antonio, Texas 78205
**TRAVEL REPORT**

Client:    Hidalgo Co

Staff:    RR

Travel Date: 9/26/13

| Date: | Destination | Travel | Lodging | Cab/Rent | Meals | Other | | |
|---|---|---|---|---|---|---|---|---|
| 09/26/13 | Hidalgo | $0.00 | $0.00 | $59.21 | $0.00 | $60.85 | | $120.06 |
| | | | | | | | | $0.00 |
| Milage | | | 0 | 0.58 | $  - | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| TOTAL | | | | Subtotal | $  - | | $ | 120.06 |
| | Balance Due This Invoice | | | | | | $ | **120.06** |

TAB  A                                                    15

# State's redistricting legal tab nearing $1M

**By Peggy Fikac**

**Updated 12:32 a.m., Thursday, April 5, 2012**

0

[ Like ]      0

in Share

Comments (4)

Larger | Smaller

Printable Version

Email This

Font

Recent Headlines

☐ Plea deal outlined for Texas doctor whose son died
☐ DART announces emergency texts system for help
☐ Hospital food court evacuated in fire
☐ Ex-warden's wife released from Oklahoma prison
☐ Texas mother charged in death of body-in-box son

AUSTIN — As Attorney General Greg Abbott fights for the GOP-championed redistricting plan, Texas taxpayers are spending big money on outside lawyers to help the state's case.

So far, the tally for outside counsel in the redistricting battle is more than three-quarters of a million dollars, according to records released to the San Antonio Express-News under the Public Information Act. That includes bills paid plus amounts that the state has agreed to pay.

The total is expected to grow as the battle continues. Contracts with outside counsel go through August and could be extended. The court battle has pushed back Texas' primary to May 29, with a federal district court in San Antonio ordering interim district lines for the 2012 election. Meanwhile, a federal court in Washington is weighing Abbott's push for preclearance of the maps approved by the Legislature for long-term use.

"I expect the whole thing to top out over a million or so. The political spin on it will depend on to what extent is that viewed as excessive," said Mark Jones, Rice University professor of political science.

Democrats see it as a waste of taxpayer money in defense of a plan they see as unfair and in violation of the Voting Rights Act.

Abbott's spokeswoman says he's fulfilling his responsibility to defend state laws.

The state paid $376,829.91 to the law firm Bancroft PLLC for costs incurred from late November through late January for redistricting help, according to documents from Abbott's office.

Superstar attorney Paul D. Clement, lead attorney in the matter for the firm, is a former U.S. solicitor general who has argued more than 50 cases before the U.S. Supreme Court, Abbott's office noted. Clement is one of several lawyers who billed at $520 an hour.

4/6/2012

A separate contract calls for the state to pay another $395,000 to the law firm Bartlit Beck Herman Palenchar & Scott LLP, where the lead lawyer on the matter is Adam Mortara of the firm's Chicago office. That money hasn't yet been paid, said Abbott spokeswoman Lauren Bean.

Bartlit Beck Herman Palenchar & Scott was hired for the federal lawsuit brought by Abbott seeking preclearance of the legislatively approved redistricting maps.

Bancroft's contract generally says the firm will "provide legal advice and assistance" on redistricting, including appeals. Bancroft's invoices include work in the case brought against the state by entities, including Latino groups, which say newly drawn districts wrongly failed to represent Hispanic growth in Texas.

The tally for outside counsel does not include costs of staff attorneys at the attorney general's office working on the case. It also doesn't include the legal costs of groups that filed the lawsuit, which may be borne by taxpayers if courts find merit in their claims that the GOP-drawn maps were unfair and illegal. "I think he's absolutely wasting taxpayer money to defend maps for political reasons, and to defend maps that do not comply with the Voting Rights Act," said Rebecca Acuña of the Texas Democratic Party.

Bean said, "The Attorney General's Office is fulfilling its obligation to defend state redistricting laws enacted by the Texas Legislature, just as this office defends all duly enacted state laws when they are challenged in court."

Jones said there are instances in which it may make sense to bring in a lawyer with expertise in a matter that doesn't warrant a full-time state employee position. He said Abbott has justification for going all-out to defend legislation approved by lawmakers and signed by Gov. Rick Perry.

At the same time, Jones said, there's political gain to being a standard-bearer for the policies of the Republican majority. The GOP attorney general is considered a potential strong contender for governor.

"In many ways, it's a subsidy to the Abbott 2014 gubernatorial campaign," Jones said.

*pfikac@express-news.net*

*Twitter: @pfikac*

*Austin bureau reporter Gary Scharrer contributed to this report*

Read more: http://www.mysanantonio.com/news/local_news/article/State-s-legal-tab-nearing-1M-3460236.php#ixzz1rBQh6v6r

Rolando L. Rios
Attorney at Law
115 E. Travis, Suite 1645
San Antonio, Texas 78205
210-222-2102
rrios@rolandorioslaw.com

*NOTICE*

The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, covers this electronic message. This message and any attachment thereto contains *CONFIDENTIAL INFORMATION* intended for the exclusive use of the named recipient(s) and may further be *PRIVILEGED and CONFIDENTIAL* **attorney client** *communication, attorney* work product or proprietary information. If you are not an *intended recipient,* you are hereby notified that any use, disclosure, dissemination, distribution, other than to return this message to the addressee(s), notification of its unintended disclosure, and the deletion of all copies is *STRICTLY PROHIBITED AND MAY BE ILLEGAL. If you receive this communication in error, please notify the sender or the person who transmitted the communication immediately by telephone and/or by reply to this communication and delete this message. Persons responsible for delivering this communication to the intended recipient are admonished that this communication not be copied or disseminated except as directed by the intended recipient*

4/6/2012

TAB  B

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

MAY 2 2 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

LEAGUE OF UNITED LATIN )
AMERICAN CITIZENS (LULAC), )
ROSARIO A. VERA, MARIA PENA, )
ROMAN PENA, )
                               )    Civil Action No. SA-06-CA-1046-XR
     Plaintiffs, )
                                 )
VS. )
                                 )
THE STATE OF TEXAS, RICK PERRY )
GOVERNOR, )

     Defendants.

## ORDER

On this date, the Court considered the motion for attorneys' fees and costs made by the

Plaintiffs (League of United Latin American Citizens ("LULAC") et al.) in this litigation, which was

resolved by an unopposed agreed order. Plaintiffs assert that they are prevailing parties and are

therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. §§ 1973*l*(e) and

1988.

### I.     Factual and Procedural Background

The underlying litigation was filed on December 1, 2006. LULAC sought injunctive relief

relating to a special runoff election for Congressional District 23. After no candidate received a

majority of votes case in the general election, Governor Rick Perry and Secretary of State Roger

Williams ordered a run-off election. *See* Tex. Gov. Proclamation No. 41-3061. The proclamation

provided that the run-off election would be held Tuesday, December 12, 2006, and that early voting

would begin December 4, 2006. *Id.* Under section 85.001(a) of the Texas Election Code, early

1

TAB   C

TAB C

voting would then end on December 8, 2006 – four days before the run-off election. TEX. ELEC. CODE § 85.001(a).

On December 1, 2006, LULAC filed an Original Complaint in this Court seeking injunctive relief to alter the December 12, 2006 election date and the corresponding early voting dates. Plaintiffs argued that because December 12, 2006 was a religious holiday for Hispanics and because the early voting dates did not include any weekends, the selected date discriminated against Hispanic voters. Further, the Complaint alleged that the Governor's choice of the December 12 date, as well as the limitations that date would impose on early voting, were a change in election practices that required pre-clearance by the Department of Justice under Section 5 of the Federal Voting Rights Act. 42 U.S.C. § 1973 et seq. The Plaintiffs framed their claims as violations of the Fourteenth Amendment and Section 2 of the Federal Voting Rights Act.

The Order entered by this Court on December 5, 2006 declared that "the early voting period for the December 12, 2006 special run-off election for Texas Congressional District 23 shall extend through Saturday, December 9, 2006." In addition, the Order suspended the 72-hour posting requirement of Texas Election Code § 85.007(c) and the requirement contained in § 85.001(a) that early voting terminate four days before the election. The Order did not enjoin the State from holding the election on December 12, the date selected by the Governor.

On the basis of the December 5, 2006 Order, LULAC has requested an award of attorneys' fees in the amount of $24,380.00. Before any inquiry is made into the reasonableness of this request, it is first necessary to determine whether LULAC is eligible for an award of attorneys' fees at all.

2

TAB  C                                                        2

## II.    The standard of eligibility for attorneys' fees

Section 1973*l* (e) of the Voting Rights Act provides that "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee, ... and other reasonable litigation expenses as part of the costs." 42 U.S.C.A. § 1973*l*(e); *see also* 42 U.S.C. § 1988 (providing that "the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs"). Thus, "[o]nly 'prevailing parties' may recover attorney's fees under 42 U.S.C. §§ 1973*l* (e), 1988." *Wilson v. Mayor & Bd. of Alderman of St. Francisville, La.*, 135 F.3d 996, 999 (5th Cir. 1998).

### A.    "Prevailing party" status under sections 1973*l*(e) and 1988.

In civil rights cases, "[i]f the plaintiff has succeeded on any significant issue in the litigation which achieve[d] some of the benefit the parties sought in bringing the suit, the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Assoc. v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (quotations omitted). That is, to be a prevailing party, "a plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* (citing *Rhodes v. Stewart*, 488 U.S. 1, 3-4 (1988)). "Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award ..., not to the availability of a fee award *vel non*." *Id.* (quotations omitted). However, "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or de *minimis*, a district court would be justified in concluding that ... [this] formulation ... has not been satisfied." *Id.* (quotations omitted).

3

TAB   C                                3

### B. The nature of the December 5, 2006 Order under the *Buckhannon* standard

At the outset, it is necessary to determine whether the December 5, 2006 Order provides a basis upon which attorneys' fees may be awarded under the standard announced in the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598 (2001). This analysis is necessary because the Defendants argue that the actual change in circumstance that occurred after the Original Complaint was filed resulted from a voluntary change in position by the Secretary of State or, in the alternative, that the December 5, Order was something other than a court-ordered consent decree. *See*. Def. Resp. at 7 (arguing that the Plaintiffs' claim rests on the "catalyst theory").

In *Buckhannon*, the Supreme Court considered whether the meaning of the phrase "prevailing party" included a plaintiff that achieved its desired result because the lawsuit brought about a voluntary change in the defendant's conduct. 532 U.S. at 602. This basis of recovery is referred to as the "catalyst theory." *Id.* The Supreme Court rejected the catalyst theory by drawing a line between private settlements on the one hand and enforceable judgments and court-ordered consent decrees on the other. *Id.* In making this distinction, the Court highlighted that "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." *Id.* at 604 n.7. A defendant's voluntary change in conduct will not support an award of attorneys' fees because it "lacks the necessary judicial *imprimatur* on the change." *Id.* at 606.

The Supreme Court has described a consent decree as "an agreement between the parties to

4

TAB C      4

a case after careful negotiation has produced agreement on [its] precise terms." *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 522 (1986) (internal quotations omitted). "A consent decree is not court-imposed; rather, it is a voluntary agreement between the parties involved in litigation that is then evaluated for fairness, and potentially accepted by the Court and entered as a judgment." *Frew v. Hawkins,* 401 F. Supp. 2d 619, 627 (E.D. Tex. 2005). Further, it has been recognized that "any agreed order compromising a dispute is, by its nature, a consent decree." *In re El Paso Refinery, L.P.,* 244 B.R. 613, 622 (Bkrtcy. W.D.Tex. 2000) (citing *Alberti v. Klevenhagen,* 46 F.3d 1347, 1364 (5th Cir.1995) and *Walker v. United States,* 912 F.2d 819, 825 (5th Cir.1990)).

It is difficult to see the December 5 Order as anything other than a "judicially sanctioned change" in the legal relationship between the parties. *See id.* at 605 (noting that judicial approval and oversight are prerequisites to prevailing party status). On December 5, this Court also signed an Order Granting Plaintiffs' Motion to Dismiss, which incorporated by reference the terms of the December 5 Order. These two Orders taken together draw the agreement closer to the essence of a court-ordered consent decree. It is clear that both "settlement agreement[s] enforceable through a consent decree [and] ... court order[s] incorporating a stipulation by the parties are among the acts that create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees in a case under the Voting Rights Act." *Navajo Nation v. Arizona Indep. Redistricting Com'n,* 286 F. Supp. 2d 1087, 1092 (D. Ariz. 2003) (citing *Buckhannon,* 532 U.S. at 603). The Defendants acknowledge that the "unopposed order" that was entered on December 5 was the "product of an agreement between the parties ...." Def. Resp. at 3. Considering the involvement and approval of this Court in the formation of the agreement between the parties, and the fact that

5

TAB C                    5

the agreement was embodied in an Order of the Court, this Court finds that the December 5 Order

provides a basis upon which attorneys' fees may be granted under the *Buckhannon* standard.

> 1) **The December 5th Order materially affected the legal relationship of the parties.**

Having determined that the December 5, 2006 Order was of a nature upon which prevailing

party status may be afforded, it is next necessary to determine whether it altered the legal relationship

of the parties to a sufficient degree. *See Buckhannon*, 532 U.S. at 605 (requiring "that a plaintiff

receive at least some relief on the merits of his claim before he can be said to prevail"). LULAC's

Original Petition sought two alternative forms of relief. Plaintiff sought to enjoin the State from

holding the run-off election on December 12, 2006 and from holding early voting from December

4 through December 8 until those dates were pre-cleared by the Department of Justice under section

5 of the Voting Rights Act. Pl. Org. Comp. at 10. Alternatively, if pre-clearance was obtained,

LULAC sought to enjoin the use of the December 12, 2006 election date and the severe restrictions

on early voting by personal appearance as a violation of section 2 of the Federal Voting Rights Act.

*Id.*

The December 5, 2006 Order declared that "the early voting period for the December 12,

2006 special run-off election for Texas Congressional District 23 shall extend through Saturday,

December 9, 2006." In addition, the Order suspended the 72-hour posting requirement of Texas

Election Code § 85.007(c) and the requirement in § 85.001(a) that early voting terminate four days

before the election. The Order did not enjoin the State from holding the election on December 12,

the date selected by the Governor.

In LULAC's Original Complaint, it argued that "the severe restrictions on Early Voting by

TAB C    6

Personal Appearance make it more difficult for Hispanics to participate in the political process and to elect representatives of their choice." Pl. Org. Comp. at 8. It further argued that the "early voting restrictions ... violate Section 2 of the Federal Voting Rights Act ...." *Id.* In support of this claim, LULAC asserted that "nearly half of the votes in the General Election for District 23 on November 7, 2006 were cast early by personal appearance." *Id.* at 6. In essence, LULAC argued in part that the change of the run-off election date made by Governor's Proclamation No. 41-3061 shortened the early voting period from seventeen to five days and eliminated weekends, thereby discriminating against Hispanic voters. Thus, expanding the window of time available for early voting by personal appearance to include weekend dates was at the heart of the relief sought by LULAC.

Where a change in the legal relationship of the parties has occurred, "the degree of the plaintiff's overall success goes to the reasonableness of the award ..., not to the availability of a fee award *vel non.*" *Texas State Teachers Assoc.*, 489 U.S. at 791-92 (quotations omitted). While the December 5 Order did not provide LULAC with all of the relief sought or resolve all the issues in the litigation, it did provide a palpable degree of judicially sanctioned relief on an issue central to the merits of the litigation.

      2)    **Defendants' arguments that the form of the relief obtained does not allow for an award of attorneys' fees is unpersuasive.**

In response, Defendants argue unpersuasively that LULAC did not obtain any actual relief. The State argues that because it was not enjoined from any action, LULAC cannot be a prevailing party. Def. Resp. at 4. The State incorrectly places emphasis on the fact that the December 5 Order was "unopposed." *Id.* Contrary to the inference that the State wishes this Court to draw, the December 5 Order did not represent a voluntary change of position for which attorneys' fees are not

7

available. Rather, it was issued in conjunction with an order granting the Plaintiff's motion to dismiss in which the December 5, 2006 Order was described as an "Agreed Order modifying early voting dates and times for the special run-off election in Texas Congressional District 23." Order Granting Pl. Mot. to Dismiss. Further, the Defendants argue that since no actions by the State, or any state officials, were invalidated or disapproved by the December 5, 2006 Order, LULAC did not succeed in reversing the decision of the State of Texas on early voting. Def. Resp. at 5. This statement is technically accurate but it misses the point. When the Texas Election Code was applied to the date chosen by the Governor for the run-off election, the result was a five-day early voting period. The December 5 Order suspended provisions of the Texas Elections Code in order to extend the early voting period. Similarly, the State argues that since the statutes that control the original voting dates (sections 85.001(a) and 85.007(c) of the Texas Election Code) were not invalidated but merely "temporarily suspended," no change in the legal relationship between the parties occurred. Def. Resp. at 6. This argument is also misguided. The relevant standard is whether there was a resolution of the dispute that materially altered the legal relationship of the parties. *Tex. State Teachers Assoc.*, 489 U.S. at 792. Whether this court-ordered alteration is in the form of an injunction, temporary suspension, or otherwise is irrelevant.

### 3) Defendants' argument that the type of relief obtained does not allow for an award of attorneys' fees is unpersuasive.

Further, Defendants argue that because the election was held on December 12, 2006 as originally ordered in the Governor's Proclamation and because pre-clearance by the Department of Justice was not required, LULAC is not a "prevailing party." It is true that where a plaintiff's success on a legal claim is purely technical or *de minimis* a court may conclude that the prevailing

8

TAB C                                              8

party standard has not been satisfied. *Texas State Teachers Assoc.*, 489 U.S. at 791-92 . However, that is not the case here. Prevailing party status requires only that the plaintiff has succeeded on "any significant issue in the litigation which achieved some of the benefit the parties sought in bringing the suit." *Id.* It is clear that augmentation of the early voting period was central to LULAC's decision to file its Original Complaint. The fact that it did not receive all of the relief sought does not foreclose it from attaining prevailing party status.

4)   **Defendants' argument that LULAC's claim of attorneys' fees rests on the "catalyst theory" is unpersuasive.**

Defendants assert that LULAC cannot prevail because its claim for attorneys' fees rests on the "catalyst theory." Unlike in *Buckhannon*, the substantive changes in the legal relationship between the parties in this case are contained in a court order. *See* 532 U.S. at 604 (explaining that private settlements are insufficient to deem a plaintiff the prevailing party regardless of the relief obtained). The Court specifically identified the December 5 Order as an "Agreed Order [which] ... the Court has approved ...." Order Granting Plaintiff's Motion to Dismiss. The substantive terms contained in the December 5 Order were crafted by the parties and entered as the judgment of the Court. Accordingly, this Court finds that the December 5 Order contains "the necessary judicial *imprimatur*" required to materially alter the parties' legal relationship. *Buckhannon*, 532 U.S. at 604. Therefore, contrary to the State's assertion, LULAC's claim for attorneys' fees does not rest on the now-defunct catalyst theory.

In sum, the Court finds that the plaintiff has sufficiently pointed "to a resolution of the dispute which changes the legal relationship between itself and the defendant" and therefore LULAC qualifies as a "prevailing party." *Tex. State Teachers Assoc.*, 489 U.S. at 792.

9

TAB   C                                                                                              9

### III. Amount of attorneys' fees and costs

Having determined that LULAC is a prevailing party as to at least part of the claims in its Original Complaint, the Court must next determine the amount of the attorneys' fee that is reasonable to award under the circumstances. LULAC seeks attorneys' fees in the amount of $23,750.00, costs of $272.50 and paralegal fees of $357.50 for a total of $24,380.00.

#### A. Attorneys' Fees

As discussed before, section 1973*l*(e) of the Voting Rights Act and section 1988 of the Civil Rights Attorney's Fees Award Act provide a district court with the discretion to award reasonable attorneys' fees to the prevailing party. *See* 42 U.S.C. §§ 1973*l*(e) & 1988. Courts utilize a two-step analysis for determining the reasonable amount of attorneys' fees.

First, the Court calculates the "lodestar." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *LULAC v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Second, the Court must determine whether the lodestar should be adjusted upward or downward depending on the circumstances of the case by applying the factors provided in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

##### 1) Lodestar calculation – Reasonable number of hours

Plaintiff's seek an award of $24,380.00 which represents 30 hours at $350/hour for attorney Rolando L. Rios; 20 hours at $350/hour for attorney Jose Gaza; 25 hours at $250/hour for attorney

10

TAB C      10

Luis Vera; and 5.5 hours at $65/hour for paralegal work.

To calculate the lodestar amount, the Court must first calculate the number of reasonably compensable hours spent on the case. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). This calculation rests on whether the total number of hours claimed is reasonable and whether specific hours claimed were reasonably expended. *Alberti v. Klevenhagen*, 896 F.2d 927, 933-34 (5th Cir. 1990). Excessive or duplicative time must be eliminated. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The burden to demonstrate the reasonableness of the hours spent is on the fee applicant. *Kellstrom*, 50 F.3d at 324. In addition, Plaintiffs are required to show that billing judgment was exercised in arriving at the amount of attorneys' fees claimed. *Walker v. HUD*, 99 F.3d 761, 769 (5th Cir. 1996). The Plaintiffs have provided documentation representing 109.15 actual hours that were spent working on the case. This amount has been reduced by the Plaintiffs to 80.5 hours – a 26% reduction.

Only time spent pursuing a judicial remedy (whether a judgment on the merits or the equivalent of a court-ordered consent decree) can confer "prevailing party" status. *See Buckhannon*, 532 U.S. at 606 (explaining that "prevailing party" status "requires a judicial *imprimatur*" on the result obtained). It is on the basis of "prevailing party" status that attorneys' fees may be awarded under sections 1973*l*(e) and 1988. 42 U.S.C. §§ 1973*l*(e) & 1988. Thus, the Court declines to award attorneys' fees for time spent pursing extra-judicial remedies, even though those efforts may be aimed at obtaining the same goals ultimately achieved by the underlying litigation. Here, the Plaintiffs spent an extensive amount of time attempting to persuade the Department of Justice to compel the State to pre-clear its selected run-off election date. The time spent attempting to convince the Department of Justice to intervene did not contribute to the Plaintiffs' status as a

11

TAB C                    11

prevailing party. Therefore, those hours are appropriately excluded. In addition, hours spent on the issue of attaining an order from this Court requiring the State to pre-clear its chosen run-off election date are likewise appropriately excluded. Pre-clearance was not required by the December 5 Order and, therefore, Plaintiffs are not a prevailing party on this issue. Accordingly, the Court reduces the number of hours reasonably related to the claims raised in this litigation as follows:

        a)      **Luis Roberto Vera, Jr.**

The time records submitted for Luis Roberto Vera reflect 38 hours actually worked. Pl. Motion for Attorney's Fees Exhibit C. These hours were reduced by the Plaintiffs to 25 as part of their billing judgment adjustment.

The Court has carefully reviewed these time records and eliminated the time related to discussing, researching, and preparing objections requesting the Department of Justice to intervene, as well as time spent developing the Plaintiffs' argument for compelling pre-clearance. The Court finds that 15.25 of the 38 hours recorded by Luis Roberto Vera were related to attaining relief through the underlying litigation and were reasonable and necessary.

        b)      **Rolando L. Rios**

The time records submitted for Rolando L. Rios reflect 44.95 hours actually worked. Pl. Motion for Attorney's Fees Exhibit . These hours were reduced by the Plaintiffs to 30 as part of their billing adjustment.

The Court concludes that fees for time spent conferring with the client and researching various possibilities before the Governor had selected a date for the run-off election are not recoverable. In addition, the Court finds that work hours related to seeking relief through the

12

Department of Justice should be excluded. Considering these factors, the Court concludes that, in the case of the compensation sought for Rolando L. Rios, the billing judgment exercised by the Plaintiffs was sound. The Court finds that 30 of the 44.95 hours recorded by Rolando L. Rios were related to obtaining relief through the underlying litigation and were reasonable and necessary.

### c) Jose Garza

The time records submitted for Jose Garza reflect 26.2 hours actually worked. Pl. Motion for Attorney's Fees Exhibit C. These hours were reduced by the Plaintiffs to 20 as part of their billing judgment adjustment.

After thorough review of the time records submitted, the Court has made adjustments based on the elimination of time related to requesting intervention by the Department of Justice. In addition, the Court further reduced hours spent finalizing and filing pleadings as duplicative of the efforts of the Plaintiffs' other attorneys. Also, the Court reduced the time attributed to "[c]onfer[ing] with co-counsel on status" and "[c]onfer[ing] with client about possible settlement issues" on the basis of the reasonable amount of time necessary for an attorney to complete such tasks. Further still, the Court eliminated hours related to preparing for and submitting a TRO motion, on which the Plaintiffs were ultimately unsuccessful. The Court finds that 13.2 of the 26.2 hours recorded by Jose Garza were related to obtaining relief through the underlying litigation and were reasonable and necessary.

### 2. Lodestar calculation – Reasonable hourly rate

Having determined the number of reasonably compensable hours, the Court must now "select an appropriate hourly rate based on prevailing community standards for attorneys of similar

13

TAB C 13

experience in similar cases." *Alberti v. Klevenhagen*, 927 F.2d 927, 930 (5th Cir. 1990) (quoting *Sims v. Jefferson Downs Racing Ass'n.*, 778 F.2d 1068, 1084 (5th Cir. 1985)).

Plaintiffs argue that $350/hr is a reasonable rate for the type of work done in this case by both Jose Garza and Rolondo L. Rios and that $250/hr is appropriate for Luis Vera, General Counsel for LULAC. In support of this argument, Plaintiffs have included in their motion a document titled "Stipulation Regarding Attorney Fees of Jose Garza and Rolando L. Rios." *See* Pl. Motion for Attorney's Fees (Exhibit C). In this document, which is related to a 2001 case, the attorneys for the State of Texas stipulated that a reasonable fee for Jose Garza and Rolondo L. Rios for similar work was $325/hour and a reasonable paralegal fee was $65/hour. Plaintiffs have also attached an Affidavit of Richard E. Gray, III, who states that he has litigated for over twenty-five years and is familiar with the prevailing market rate for attorneys of the experience and skill of Rios and Garza, and that a reasonable rate would be $375/hour. Defendants have not opposed the requested rates.

Based on the affidavits and evidence submitted by Plaintiffs attorneys, the Court finds that the requested rates are reasonable. Accordingly, the Court calculates the lodestar at $19,290.0:

> Rios: 30 hours x $350 = $10,500
> Garza: 13.2 hours x $350 = $4,620
> Vera: 15.25 x $250 = $3812.50
> paralegal: 5.5 x $65 = 357.50

### 3. *Johnson* factors

The *Johnson* factors include: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee

14

TAB C                    14

is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "The Supreme Court has twice made clear that 'the most critical factor' in determining the reasonableness of a fee award in a civil rights suit 'is the degree of success obtained.'" *Id.*

Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 801 (5th Cir. 2006) (citing *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998)). Considering the relief sought in LULAC's Complaint, this Court finds that the relief obtained through the December 5 Order was "limited." As a result, the Court will compare the result obtained with the relief sought, as well as the fees sought in relation to the result obtained to determine if the lodestar should be adjusted downward for "partial success." *See Migis*, 135 F.3d at 1048.

The December 5 Order did not address LULAC's claims of Fourteenth Amendment or Voting Rights violations. It did not enjoin the state from any action, nor did it alter the December 12, 2006 runoff election date. Further, it did not compel the State to seek pre-clearance through the Department of Justice. However, the December 5 Order did include one weekend date in the early voting by personal appearance period and extend the early voting hours until later in the evening.

15

TAB C                                                          15

This relief is significant because LULAC's primary concern was that Hispanics would be unduly burdened from participating in early voting if it was conducted only on weekdays during business hours.

The Court has already adjusted the lodestar to exclude time spent on unsuccessful claims. In addition, the Court finds that the ratio of the relief sought to the relief rewarded and the ratio of the lodestar amount to the relief rewarded are not disproportionate and do not require a downward adjustment.

Considering the other *Johnson* factors, many were subsumed within the lodestar analysis (*e.g.*, time and labor required, skill required, attorneys' customary fee, time constraints of the case, and the experience, reputation, and ability of the attorneys) and thus will not be used to adjust the lodestar amount. With regard to the novelty and complexity of the issues, the Court finds this to have been a relatively straightforward case in an area with which the attorneys are familiar, and thus this factor does not require an adjustment. As to whether the attorney had to refuse other work to litigate this case, the attorneys may have invested a lot of time on this case during its short duration, but there is no evidence that this work required them to refuse other work or otherwise cost them valuable opportunities. Plaintiffs further argue that the fees in this case were contingent on success, but the Fifth Circuit has stated that the contingent nature of a fee award should not be utilized to adjust the lodestar amount. *Shipes v. Trinity Industries*, 987 F.2d 311, 320 (5th Cir. 1993). Though the attorneys allege that this case is undesirable,[1] there was nothing unusual or extraordinarily

---

[1]Plaintiffs argue that this case is undesirable for four reasons: (1) the expedited trial schedule and multiple forums placed unusual time constraints on the development and preparation of the case; (2) the specialized nature of the actions; (3) significant time and resources were required to properly prosecute the claims; and (4) recovery of a fee and expenses was entirely contingent on success.

16

TAB C                16

undesirable about this case that warrants an adjustment. And, there is nothing about the nature of the type of attorney-client relationship that warrants an adjustment. Last, the Court finds that the award is within the range of fees typically awarded in such cases. *See, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 419 F. Supp. 2d 206 (N.D.N.Y. 2005), *aff'd*, ____ F.3d ___ (2d Cir. 2007) (awarding $113,214.00 in attorneys' fees); *White v. State*, 1998 WL 60938 (M.D. Ala. 1998) (awarding $43,257.32 in attorneys' fees and $901.44 in paralegal fees). Thus, the Court finds no basis for adjusting the lodestar amount.

### B. Costs

Plaintiffs seek an award of $272.50 in costs, which includes a $250 filing fee and $22.50 in copies and faxes (150 pages of copies and/or faxes at $.15 each). Title 28 U.S.C. § 1920 provides for an award of costs to include the fees of the clerk and/or docket fees, and thus the Court will award the $250. The Supreme Court has ruled that expenses not enumerated in section 1920, such as faxes, can be awarded only upon explicit statutory authorization found elsewhere. *Mota v. The Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987)). The Court finds that 42 U.S.C. § 1973l(e) contains the necessary authorization, as it states that the court may award "a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." The Court finds the number and rate of copies and/or faxes to be reasonable, and thus awards the additional $22.50, for a total award of costs of $272.50.

### IV. Conclusion

The Plaintiffs' Motion for Attorney's Fees and Costs (docket no. 12) is granted in part and

TAB C                17

denied in part.[2] Plaintiffs are awarded a reasonable attorneys' fee in the amount of $19,290.00 and costs in the amount of $272.50.

SIGNED this _22nd_ day of May, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[2] The deficient motion for attorney's fees (docket no. 10) is DISMISSED AS MOOT.

18

TAB C                                              18

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| Marc Veasey, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-193 (NGR) |
| RICK PERRY, *et al.*, | |
| Defendants. | |

**DECLARATION OF RICARDO G. CEDILLO** IN **SUPPORT OF REQUEST
FOR ATTORNEYS' FEES AND COSTS**

"My name is Ricardo G. Cedillo. I am over 18 years of age, of s.ound mind, and fully competent to make this declaration. I have personal knowledge of  the facts stated herein and they are all true and correct.

I am     attorney licensed to practice in the State of Texas. In 1979, I obtained a J.D. from Harvard University and was admitted to practice law in the State of Texas. I am admitted to practice before the United States District Courts for the Southern, Northern and Western Districts of Texas, the Fifth Circuit Court of Appeals and the United States Supreme Court. Attached as Exhibit A to this affidavit is a copy of my curriculum vitae. I am qualified by knowledge, skill, experience, training and education to make the statements contained in this declaration.

I have litigated cases as lead counsel in dozens of cases in both state and federal courts across the United States.  I am also currently co-counsel with Jose Garza representing the Mexican American Legislative Caucus, Texas House of Representatives in a

I

redistricting case in the Western District of Texas, styled *Perez, et al., v. Texas, et al.,* Consolidated Action, Civil Action No. 5:11-cv-00360-OLG-JES-XR.

Through these experiences, I am very familiar with the demands that litigation, including Voting Rights cases, makes upon the attorneys and the skills it takes to prosecute such a case from discovery, pre-trial motions, trial and appeal, to a successful completion in the United States District Court.

I have known Rolando Rios for almost 40 years. I have had the opportunity to litigate with Mr. Rios in voting rights cases making me familiar with the high quality of his work. I am also familiar with Mr. Rios' reputation in the legal community and know that he is both a skilled and a respected member of the bar.

I have reviewed the time records of Rolando Rios and I find it was reasonable and necessary that Mr. Rios spent the hours he devoted to the case and prosecuting this matter.

Having litigated for over thirty years in Texas state and federal courts, I am familiar with the prevailing market rate for attorneys of the experience and skill of Rolando Rios. Based on my knowledge and experience of prevailing market rates in the Southern District of Texas and based on my knowledge of his skill, expertise and work product, a rate of $525.00/hour is a reasonable hourly rate for Rolando Rios.

My opinion that the reasonable and necessary fee for Mr. Rios in prosecuting this matter is:

Rolando Rios- 359.33 hours @ $613.00 per hour=$220,269.29

My opinions are based on the following factors:

1.     The novelty and difficulty of the issues involved, the skill required to provide the legal services properly, and the experience, reputation, and expertise of the lawyer or lawyers performing the services;

2.     The time and labor involved to perform the legal services properly;

3.     The fee customarily charged in the community for similar services; and

4.     The results obtained.

I have reviewed the pleadings, orders, and time records of Rolando Rios in preparing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: _Feb. 8, 2019_

Ricardo G. Cedillo

# EXHIBIT A

# DC0M

| HOME | COMMUNITY | RESOURCES | CLIENTS |

## *Attorn  s*



### Ricardo G. Cedillo
### Share holder

rvtC.Orrtis Raza, Suite 500
755 E. M.Jlberry Avenue
San Antonio, Texas 78212
T 210.822.6666
F 210.822.1151
rcedillo@law.dcmcom

Do wnlo ad vCard

About Us

Practice Areas

Attorneys

Success Stories

News & PubLications

Careers

Contact Us

Ricardo founded the firm in 1986 with Russell and Norman Davis. He is a member of the firm's litigation section. His practice focuses primarilyon commercial law and products liability defense.

## Education

- St. Mary's University School of Law, Doctor of Laws, *Honoris Causa*, 2011
- Harvard University, J.D. 1979
- Trinity Universi ty, M.S. 1976
- St. Mary's University, BA *magna cum /aude,* 1974
- .Admitted to practice: Texas, 1979

## Activities and Affiliations

- San Antonio Bar Ass ociation
- Mexican -American Bar Association
- San Antonio American Inns of Court (Master of the Bench)
- American Board of Trial.Advocates
- The As sociation ofTrial Lawyers of America
- Member , Million Dollar .Advocates Forum

## Additional Jurisdictions and Court Admissions

- United States District Court, Western District of Texas
- United States District Court, Southern Dis trict of Texas
- United States District Court , Northern District ofTexas
- United States Fifth Circuit Court of Appeals
- United States Supreme Court

## Community Involvement

- Chai rman, Lawyers' Committee for Civil Rights Under Law of Texas , 2004

## Awards and Honors

- Top Texas Verdicts of 2010, Contract Verdicts, *(Editorial Caballero v. Playboy Enterprises) Verdict Search,* May 2011
- Texas Super Lawyer, *Texas Lawyer,* 2003 -2010
- 25 Greatest Texas Lawyers of the Past Quarter Century, *Texas Lawyer* , June 2010
- Top 100 Attorneys in Texas, Texas tvlonthly's Super Lawyer Section, 2007, 2009 and 2010
- San Antonio's Bet-the-Company Litigator of the Year, "Texas' Lawyers of the Year," *Texas' Best Lawyers.* San Antonio Edition, 2011
- San Antonio's Best Lawyers - Business Litigation, *Scene in S.A.,* August 2008
- "Go-To Lawyer," *Texas Lawyer,* 2007
- Top Commercia l Litigation Lawyer, Litigation 2006
- Top 100 Verdicts of 2006 *(Tetco v. Exxonfvfob il ), Texas Lawyer*
- Litigation Management Lone Star AJI-Stars, 2003
- State Bar of Texas, Certificate of ,t,,ppreciation for Distinguished Service on Faculty of Mvanced Civil Trial Course , August 2003
- State Bar Professional Development Program, Certificate of ,t,,preciation in Recognition of Distinguished Service on Faculty of 19th Annual Mvanced Civil Trial Course , 2003
- Texas Bar CLE, Certificate of ,t,,ppreciation for Distinguished Service on Faculty for "Your Client In Crisis: Strategic Planning, Mermath Management, and Litigation Scenarios," August 2002
- State Bar Professional Development Program, Certificate of ,t,,ppreciation in Recognition of Distinguished Service on Faculty of Mvanced Expert Witness, February 2001
- CLE Masters of Trial, Winning the Mega Verdict Featuring Ricardo as one of the speakers named by The National Law Journal as the Country's Top Ten Trial Attorneys, March 2000
- American Lawyer Big Suits, 1999
- National Law Journal Top Ten Litigators, 1999
- Stromer Educational Services, Inc. Professional Development Program, Certificate of f>,ppreciation in Recognition of Distinguished Service on the Faculty of Evidence Seminar, October 1999
- State Bar Profess ional Development Program? Certificate of ,t,,ppreciation 19th Annual Mvanced Civil Trial Course, August 1996
- Northside Independent School District Gifted and Talented Program Recognizes Ricardo as a Valued Mentor and Mvocate for Gifted Education Through Independent Study Mentorship, 1993-94
- Lulac Rey Feo Scholarship Committee, Inc., Certificate of ,t,,ppreciation for Outstanding Service to Program for Support Made Possible to Award the Largest Ever Number of Scholarships, August 21, 1993
- Texas Bar Foundation Duly Elected Fellow in Recognition of Outstanding Professional Ability and Notable Contributions to the *Mm* inistration of Justice , 1991

## Languages

- Spanish

## Presentations

Ricardo has been an author and speaker at numerous continu ing legal education courses sponsored by the State Bar of Texas and every major law school in Texas on topics including evide nce, procedure, voir dire, expert witnesses, and ethics. His presentations include:

- "Getting Scientific and Expert Testimony Admitted into Evidence," *Evidence and*

*Expert Testimony Best Practices: Supporting Your* Case, CLE - National Business Institute, San Antonio, /lugust, 2008

- "Strategies for Complex Civil Litigation,H CLE - San Antonio Young Lawyers Association, July 2008
- Mastering PowerPoint," *National Conference for the Minority Lawyer,* American Bar Association, San Jose, CA June 2008
- Demonstrative Evidence,U *Anatomy of Civil Trial XII,* CLE - San Antonio Young Lawyers Association, **ril** 2008
- "Practical Tips on Cross Examination of Expert Witnesses," *The Advocate,* Winter 2005 (co-author)
- "How To Keep the Jury's P.ttention: The Power of Technology to Tell The Story," Masters *of Trial,* CLE International, January 2000
- "Special Problems in Damages: Lost Profits, Past & Future Wages, Punitives, and Pain & Suffering," *Ultimate Trial Notebook,* State Bar of Texas, January 2000
- "New Control Plans and Limits on Discovery (Under New Rules)," University of Houston Law Center, January 1999
- "Experts Under the New Rules," *Evidence* & *Procedure Symposium,* University of Texas School of Law, January 1999
- "Controlling and Reducing Discovery Costs," University of Houston Law Center, January 1998
- "Creative Settlement Techniques," *Advanced Civil Trial Law,* State Bar of Texas, January 1996

Unless otherwise speciried, attorneys not certified by tne Texas Board of Legal Specialization.

The offices of Davis, Cedillo & Mendoza. Inc. are located in San Antonio, Texas.

© 2012 Davis, Cedillo & Mendoza. Inc. All rights reserved.            Disclaimer

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF TEXAS

# CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY , *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) |

## ORDER GRANTING ATTORNEY FEES

On this date, the Court considerered Plaintiff-Intervenors Texas Association of Hispanic County Judges and County Commissioners' Motion for Attorneys fees as a prevailing party.

The Court is of the view that the motion is well taken and therefore OREDERS and AWARDS attorney fees and costs in the amount of _____.

Accordingly, it is ORDERED that Plaintiff-Intervenor's Motion is GRANTED.

SIGNED on this _____ day of _____, 2019.

_____
NELVA GONZALES RAMOS
United States District Judge