**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br><br>　　　　Defendants. | Case No. 2:13-cv-193 (NGR)<br><br>**DECLARATION<br>OF NEIL A. STEINER<br>IN SUPPORT OF PLAINTIFFS'<br>MOTION FOR AWARD OF<br>ATTORNEYS' FEES AND EXPENSES** |

**I, Neil A. Steiner**, declare as follows pursuant to 28 U.S.C. § 1746:

1.　　I am a member of the law firm Dechert LLP, one of Plaintiffs' counsel, and work in the firm's office in New York, New York.  I joined Dechert in January 2005 as an associate and became a partner on January 1, 2006.  Prior to joining Dechert, I was an associate with the New York firm Shereff, Friedman, Hoffman & Goodman, LLP and subsequently in the New York office of Swidler Berlin Shereff Friedman, LLP.  I respectfully submit this Declaration in support of the application for an award of attorneys' fees and costs of Plaintiffs Mexican American Legislative Caucus and Texas State Conference of the NAACP (collectively "Plaintiffs").

2.　　I became actively involved in this litigation in approximately late 2014, following the retirement of my partner Ezra Rosenberg, one of the lead lawyers for the private plaintiffs (who joined the Lawyers' Committee for Civil Rights Under Law and continued to play a lead role for private plaintiffs).  Since Mr. Rosenberg's retirement, I have had overall responsibility for Dechert's representation of the Plaintiffs in this matter.

A.　　Background of the Litigation

3.　　Prior to the commencement of this action, a Dechert team led by Mr. Rosenberg served as lead counsel, on a *pro bono* basis, representing Plaintiffs as Intervenors in the Section 5

16987561

litigation over the State of Texas' adoption of its 2011 law requiring voters to present photo identification to vote, commonly referred to SB 14. Following the Supreme Court's decision in *Shelby County v. Holder*, 570 U.S. 529 (2013), Dechert agreed to represent Plaintiffs, again on a *pro bono* basis (with the express agreement that Dechert and the other Plaintiffs' counsel would apply for attorneys' fees and reimbursement of out-of-pocket costs if successful), in the instant challenge to SB 14.

4. In this course of this litigation, Plaintiffs and their attorneys presented pleadings, evidence, and argument to this and other Courts challenging SB 14. As a result of this litigation, SB 14 was enjoined by virtue of an Interim Remedial Order issued by this Court on August 10, 2016 (Doc. No. 895), following this Court's ruling that SB 14 violated the "results" prong of Section 2 of the Voting Rights Act, a ruling that was affirmed by the Fifth Circuit en banc. *Veasey v. Perry*, 71 F. Supp. 3d 627 (S.D. Tex. 2014), *aff'd in part, vacated in part, rev'd in part sub nom. Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc). A review of plaintiffs' pleadings, attachments and argument, together with this Court's orders, including orders regarding interim relief as well as the final judgment, demonstrate plaintiffs' position as prevailing party in this action.

B. <u>Time and Labor Required</u>

5. In accordance with Dechert's standard practices, I contemporaneously recorded all of the time I spent on this action, which my assistant or our word processing department entered into Dechert's electronic billing system. Other lawyers, paralegals, summer associates and other timekeepers at Dechert are likewise required to record their time spent on client matters contemporaneously and to enter or cause their assistants or our word process department to enter accurate time records and descriptions of work performed in the Dechert billing system.

6. During the course of Dechert's representation of Plaintiffs in this matter – and

excluding work performed in connection with representation of Plaintiffs in the earlier Section 5 litigation, much of which was directly relevant to the prosecution of Plaintiffs' claims in this action – a team of approximately 40 partners, associates, summer associates, paralegals and other timekeepers devoted more than 5,200 hours to the highly successful representation of Plaintiffs.

7. Annexed hereto as Exhibit 1 is an Excel spreadsheet generated from Dechert's billing system, which sets forth the time detail of all time expended on this matter by Dechert timekeepers from the inception of Dechert's involvement through November 15, 2016. The time detail accurately reflects the time expended by the timekeepers who recorded time on this matter, and all of the time recorded was actually expended for the purposes listed.

8. I did not necessarily record my time for every instance in which I discussed this case with other lawyers at Dechert or with co-counsel. Other Dechert timekeepers may likewise have determined not to record time in every instance in which he or she discussed this case with other lawyers at Dechert or with co-counsel. Any discrepancy between my reported time and that of others reflects a decision to exercise billing judgment by not recording time, and not an inaccuracy in the time records.

9. In addition, even though I am including in Exhibit 1 all of the time recorded by all Dechert timekeepers through November 15, 2016, in the exercise of my billing judgment, I have determined to limit the application for attorneys' fees and expenses to the time spent by the core team of Dechert attorneys who worked on the matter, and am not seeking reimbursement for time spent by other Dechert attorneys, including myself. Thus, the attorneys' fee application seeks fees for time spent only by the core team of four Dechert lawyers and one paralegal: Ezra Rosenberg, Amy Rudd, Michelle Yeary, Lindsey Cohan and Antonella Capobianco-Ranallo. In addition, as set forth in the accompanying brief, Dechert is limiting its request for attorneys' fees

3

to the time expended (1) litigating this case through the denial of Texas's petition for certiorari from the en banc decision; (2) negotiating, implementing and monitoring the 2016 interim remedial order; and (3) time spent defending against Texas's unwarranted 2018 "motion to dismiss," which asked this Court to re-litigate merits' determinations and overturn the Fifth Circuit's ruling on mootness, Doc. 1107.

10. In a further exercise of billing discretion, I have reviewed and also asked Mr. Rosenberg to review the Dechert billing records. Even though, in my experience, I believe that all of the time expended by Dechert was reasonable and necessary in the representation of Plaintiffs' in this action and in obtaining the exceptional results both at trial and in the Fifth Circuit and that the staffing structure employed by Dechert and Plaintiffs' other counsel in this case is typical of the staffing on multi-year, complex litigation, that includes drafting discovery requests and reviewing responses; briefing numerous motions, a lengthy bench trial and multiple appeals, to address any arguable duplication or inefficiency as a result of the number of lawyers and organizations involved in this action I limited Dechert's fee request to seeking reimbursement for a single person's time associated with performing any particular task or participate in any meeting, deposition or court appearance. Likewise, Dechert is not seeking any reimbursement for travel time, even where the lawyer was actively working on this matter while in transit. And in a further effort to avoid duplication, Plaintiffs' counsel, at Mr. Rosenberg's direction, made every effort to limit the fee request for all lawyers representing Plaintiffs to include only one lawyer participating in any internal conferences, and conferences with counsel for other private plaintiffs, the DOJ and defense counsel. Typically, the time sought was that of the most senior lawyer who participated.

11. During this litigation, Dechert incurred costs and expenses, for filing fees,

transcript fees, travel costs, photocopies, electronic research and similar out-of-pocket expenses ordinarily paid by a fee-paying client. Those expenses are recorded in Dechert's billing system, and annexed hereto as Exhibit 2 is an Excel spreadsheet summarizing the costs and expenses incurred by Dechert, which total $269,053.16.[1] This expense detail accurately reflects the costs and expenses incurred by Dechert in this matter.[2]

C.      Experience, Reputation and Ability

12.     I am a 1997 *magna cum laude* graduate of Harvard Law School with 21.5 years of legal experience. I have spent the entirety of my legal career litigating complex, high-stakes cases in federal and state courts and before arbitral tribunals throughout the United States and defending companies and individuals in governmental and regulatory investigations. I have published nine articles on topics relating to securities litigation and investigations, am the co-author of two chapters in treatises on litigation in federal and New York state courts, and taught a course entitled *Basic Skills for the New Litigating Attorney* for recent graduates of Cardozo Law School. I am also active in *pro bono* matters. In addition to this action, I am currently representing Plaintiffs in a challenge of the Wisconsin voter identification statute (which has reached the Seventh Circuit Court of Appeals three times); an NVRA claim against the Kansas Secretary of State relating to voter registration at the Kansas Department of Motor Vehicles, which resulted in an injunction against the Kansas law following a bench trial (currently on appeal to the Tenth Circuit); an NVRA and constitutional claim against the New York State Board of Elections over the placement of voters on an inactive list; and a claim for violation of

---

[1] Because there can be a lag from the time certain expenses (such as deposition transcripts and travel reimbursement) is incurred and the date an invoice is received by Dechert and entered into our billing system, this total includes all costs entered into the billing system to date.

[2] The costs for payments of outside experts and consultants are split across the categories Consultant Fees, Expert Witness Fees, and Research Fees. The designated category is merely a function of the expense category selected by the employee upon submission of the payment/reimbursement request.

5

the fundamental right to vote against the four counties comprising metropolitan Atlanta. My prior *pro bono* matters included representing Plaintiffs and obtaining favorable settlements in NVRA claims in Ohio (which included arguing *Harkless v. Brunner*, a first-impression case in the Sixth Circuit Court of Appeals), in Georgia and in New York City. In 2018, the *Financial Times* recognized me as one of the ten most innovative lawyers in North America for my *pro bono* work on voting rights cases, and recognized Dechert and our co-counsel at the ACLU with a "standout" ranking in the rule of law category for our work on the Kansas action. I am a member in good standing of the bar of the State of New York, the bars of the United States Courts of Appeals for the Second, Sixth, Seventh and Ninth Circuits, and the bars of the United States District Courts for the Southern, Eastern and Northern Districts of New York, the Eastern District of Michigan and Eastern District of Wisconsin. A copy of my Dechert firm bio is attached hereto as Exhibit 3.

   13. As set forth in his Declaration, Mr. Rosenberg is an accomplished trial lawyer who has been practicing law with leading law firms and public interest organizations for nearly 45 years. Ms. Rudd, who was previously a partner at Dechert during her work on this matter, is an experienced trial lawyer, having taken many complex commercial matters through to verdict. She graduated from the University of Texas School of Law in 2000, joined Dechert in 2008 and became a partner in 2013 before departing and joining another large law firm in 2018. Ms. Yeary is counsel at Dechert LLP and an experienced litigator with particular and extensive experience in coordinating discovery in complex commercial and mass tort litigation both in federal and state court. She graduated from the Rutgers Law School in 1995 and has been with the firm since 2002. Ms. Cohen is an associate at Dechert LLP with extensive trial and case management experience in complex civil litigation matters. She graduated from the University

6

of Texas School of Law in 2009 and joined Dechert LLP in 2012. Ms. Capobianco-Ranallo is a paralegal who has been with the firm since 2001.

D. <u>Hourly Rate</u>

14. I believe that the appropriate hourly rate Dechert lawyers for purposes of this fee request is the rate determined in accordance with the USAO attorney's fees matrix for 2015-2019 in light of recent fee awards in the Southern District of Texas, which are similar to the matrix index. These rates are significantly below the standard hourly rates paid by fee-paying clients. For example, my current standard hourly rate paid by fee-paying clients is $1,200 per hour (compared to $572 per hour rate under the USAO matrix) and Ms. Cohan's currently hourly rate is $885 per hour (compared to the rate sought of $351-$358 per hour under the USAO matrix).

15. The total fees sought for the five Dechert timekeepers for whose work an award of fees is sought is summarized in the table below, including the total hours worked by each timekeeper, the hours charged and the applicable rate. The table below does not include the hours expended by the other Dechert timekeepers for which an award of fees is not being sought, but the number of hours expended and description of work performed is included for those timekeepers in Exhibit 1.

**USAO Rates (Total Fees Sought)**

| Attorney | Law School Year | Rate per Hour | Hours Worked | Hours Charged | Total Fees Sought |
|---|---|---|---|---|---|
| Ezra Rosenberg | 1974 | $613 | 1,298.3 | 1,042.7 | $639,175.10 |
| Michelle Yeary | 1995 | $544 | 772.5 | 630.3 | $342,883.20 |
| Amy Rudd | 2000 | $491/544 | 703.3 | 460.1 | $234,802.50 |
| Lindsey Cohan | 2009 | $351/358 | 981.8 | 752.2 | $267,443.80 |
| Antonella Capobianco | N/A | $166 | 511.9 | 398.7 | $66,184.20 |

| -Ranallo (Paralegal) | | | | | |
|---|---|---|---|---|---|
| **Totals** | | | | **3,284.00** | **$1,550,488.80** |

16. Based on the foregoing, I believe that an appropriate calculation of Dechert's lodestar fees, after exercising billing judgment as described above, is $1,550,488.80. In addition, Dechert advanced costs in the total amount of $269,053.16 for which I believe reimbursement is appropriate.

I declare under penalty of perjury that the forgoing is true and correct. Executed this 11th day of April, 2019.

_____
NEIL A. STEINER