IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>    Defendants. | Civil Action No. 2:13-cv-193 (NGR) |

**DECLARATION OF LEAH C. ADEN IN SUPPORT OF PLAINTIFF-INTERVENOR
CLARK'S MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**

  1.  My name is Leah C. Aden. I am over 18 years of age, of sound mind, and capable of making this declaration. The facts stated in this declaration are based on my personal knowledge or information contained in records that I kept or that have been provided to me.

  2.  Since July 2018, I have served as Deputy Director of Litigation at the NAACP Legal Defense & Educational Fund, Inc. ("LDF"), and previously served as a Senior Counsel and before that Assistant Counsel at LDF, beginning in February 2012.

  3.  I am a 2006 graduate of Howard University School of Law and have been a member of the New York Bar since 2008.

  4.  Immediately following law school, I clerked for the Honorable John T. Nixon of the U.S. District Court for the Middle District of Tennessee (2006-2007), then served as an Education Fellow at the UNC Center for Civil Rights at the UNC School of Law (2007-2009), and a litigation associate through the NAACP LDF/Fried Frank Fellowship at Fried, Frank, Harris, Shriver, & Jacobson LLP (2010-2012).

  5.  As explained in more detail below, between 2013 and the present day, I have served

as counsel to varying degrees in this case. Since the fall of 2016, I have been one of the lead attorneys at LDF representing Ms. Imani Clark, a plaintiff-intervenor in this litigation against Defendants, the State of Texas and others.[1]

6. I was admitted *pro hac vice* in this Court for this case on September 6, 2013. (ECF No. 16).

7. Based on my professional experiences, I am familiar with complex civil litigation and the fees and costs that are reasonable and necessary in such matters. I, therefore, submit this declaration in support of Plaintiff-Intervenor Clark's Motion for Award of Reasonable Attorneys' Fees and Costs. The facts stated herein are true and correct.

8. Though this Court is well positioned to assess the quality of the legal work performed by Plaintiffs' counsel over the duration of this case, I am providing this Court with additional information regarding the background, qualifications, experience, and contribution of LDF, and its individual lawyers who worked on this litigation.

## LDF's Contributions To The Litigation

9. Shortly after the U.S. Supreme Court immobilized Section 5 of the Voting Rights Act through the *Shelby County, Alabama v. Holder*, 133 S. Ct. 2612 (2013), decision, the U.S. Department of Justice ("DOJ") filed a lawsuit in August 2013, challenging Texas's Senate Bill 14 ("SB 14"), once considered the strictest photo identification law in the country, under Section 2 of the Voting Rights Act ("Section 2") and U.S. Constitution.

10. LDF was retained to represent several individual plaintiffs and an organizational

---

[1] In addition to Ms. Clark, LDF and its co-counsel Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") represented plaintiff-intervenors Aurica Washington, Crystal Owens, and Michelle Bessiake, who were withdrawn as plaintiff-intervenors (ECF Nos. 237, 338), and the Texas League of Young Voters Education Fund, which ceased operations well into the litigation and thus withdrew (ECF No. 958).

2

plaintiff to intervene in the above captioned case, raising claims under Section 2 and the U.S. Constitution.[2]

11. LDF played a leading role in all phases of this litigation, bringing to bear its significant expertise in federal civil rights litigation, and trial and appellate advocacy. Indeed, since LDF's founding in 1940 under the leadership of Thurgood Marshall, LDF has worked to eliminate racial discrimination from areas of American life, including in political participation. Thus, LDF has been involved in much of the precedent-setting litigation relating to the voting rights of Black people and other people of color since its founding nearly 80 years ago. LDF also played a significant role in the enactment of the Voting Rights Act of 1965, and its subsequent reauthorizations in 1970, 1975, 1982, and 2006. Since 1965, LDF has relied on the Voting Rights Act to enforce minority voting rights. In 2013, LDF defended the constitutionality of the above-mentioned Section 5 of the Voting Rights Act before the Supreme Court in *Shelby County*.

12. The instant action was a fast-moving case involving multiple plaintiffs and plaintiff-intervenors, beyond those that LDF represented. Consistent with complex Section 2 cases, the costs of litigating this case were especially high, including because of delays related to the production of voter record data and significant discovery battles regarding issues such as legislative privilege. Ultimate success in the case was the product of the contributions of numerous attorneys and civil rights groups, as reflected in the separate motions and supporting documents of other counsel representing other plaintiffs-intervenors. Nonetheless, working with WilmerHale, LDF attorneys made significant and critical contributions to this case, including the following:

    a) factually and legally investigating claims and defenses;

    b) retaining and working with clients;

---

[2] *See supra* note 1.

3

c) drafting complaints (initial and amended) and related intervention papers;

d) opposing Defendants' motions to dismiss (initial and amended complaints) and responding to other papers filed by Defendants;

e) preparing written discovery and responding to discovery disputes;

f) retaining and working to review and finalize the expert reports of witnesses, particularly Dr. Vernon Burton, one of the key expert witnesses for plaintiffs-intervenors, whose opinion this court relied upon in its post-trial findings, and the Brattle Group;

g) preparing for, taking, and defending multiple depositions, including for fact, 30(b)(6), and expert witnesses;

h) preparing proposed findings of fact and conclusions of law, as well as deposition designations to be used at trial;

i) preparing for and participating at trial, including by examining Dr. Burton and a representative of organizational plaintiff-intervenor, Texas League of Young Voters of Education Fund (Blake Greene), putting other key testimony into the record, and presenting a closing statement;

j) revising and finalizing the voluminous post-trial findings of fact and conclusions of law submitted on behalf of Plaintiffs;

k) drafting appellate briefing, including the *en banc* briefing;

l) negotiating and ensuring the implementation of the Court's interim remedial order; and,

m) presenting oral arguments to the Fifth Circuit on multiple occasions.

**LDF'S FEE APPLICATION**

13.     LDF's fee application seeks an award of $904,711.39 for work performed by LDF (1) investigating and litigating this case through the denial of Texas's petition for certiorari from the *en banc* decision; (2) negotiating, implementing, and monitoring the 2016 interim remedial order; and (3) time spent defending against Texas's unwarranted 2018 Motion to Dismiss Plaintiffs' Claims, which asked this Court to re-litigate merits' determinations and overturn the Fifth Circuit's ruling on mootness, ECF No. 1107.

14.     LDF is a nonprofit, non-partisan civil rights organization. As such, LDF litigates cases involving the constitutional and statutory rights of Black and other people of color on a non-fee generating basis. In this and other cases, LDF represents clients at no cost to them. However, a percentage of LDF's budget relies on court awards of attorneys' fees and costs in appropriate cases, such as this one, where plaintiffs are the prevailing parties. We therefore do not bill clients for our legal services, and we will not do so in this case; accordingly, we will obtain no compensation in this case absent a fee and costs recovery. We, thus, have an obligation and statutory authority to seek fees in the above indicated amount of $765,736.3 and costs incurred in connection with this litigation, including expert and court costs, as well as travel and hotel costs incurred to develop this case and participate in trial that total $138,975.09.

15.     In support of the fee application, attorneys and paralegals working under my direction have prepared the attached **Exhibit A** ("LDF Billing Records"). The data in the Billing Records (*i.e.*, attorney name, work date, and time billed) reflect attorney time records. The narrative descriptions, although edited for privilege and cogency, reflect each attorney's descriptions of tasks performed. I have reviewed and approved the time and charges set forth in the Billing Records. At all times, LDF attorneys represented Private-Plaintiffs as efficiently and

5

economically as possible within the bounds of our duty to pursue our clients' claims zealously. LDF coordinated with co-counsel, WilmerHale, and other counsel for Private-Plaintiffs to divide work and avoid duplication.

16. The Billing Records use significantly reduced rates, exclude numerous timekeepers that worked on this matter, and include only a portion of the work actually performed.

    i. <u>Reduced Rates</u>: The rates reflected for each attorney's work in the Billing Records are based on the 2018-2019 rate schedule for attorneys' fees adopted by the United States Attorney's Office for the District of Columbia. *See* https://www.justice.gov/usao-dc/file/796471/download. The rate applied in the Billing Records for each attorney in any given year is based on that attorney's years of experience at the time that the work was performed.

    ii. <u>Excluded Time</u>: Hundreds of hours spent by LDF attorneys, paralegals, law fellows and interns, and technical staff that contributed to Plaintiffs' success in this action have been excluded from the Billing Records.

        1. Indeed, LDF is only seeking fees for work performed by a core team of attorneys: Janai Nelson, Ryan Haygood, Natasha Korgaonkar, Leah Aden, and Deuel Ross, whose backgrounds are discussed in more detail below.[3] Time entries for multiple timekeepers beyond LDF's core team—including LDF's President & Director Counsel, Sherrilyn Ifill, former Director of Litigation, Christina Swarns, Director of Litigation, Samuel Spital, LDF's

---

[3] All team members were simultaneously working on multiple other matters at LDF during the life of the case, and attorneys joined the team as other attorneys departed or took a leave of absence. Throughout the case, I or other senior team members actively managed the work flow to ensure that tasks were efficiently allocated.

assistant counsels, legal fellows and interns, paralegals, and technical support staff—have been excluded.

2. Time entries that appear even arguably to be unnecessarily duplicative (e.g., where more than two LDF attorneys attended the same deposition beyond first or second-chair) have been removed.

3. Travel time, including frequent travel from New York to Texas and vice versa (e.g., to investigate this case, work with clients and fact witnesses to develop this case) has been excluded to the extent that any such time was not spent doing substantive work in connection with this litigation.

4. Of the remaining entries, many time entries have been reduced to reflect a very conservative estimation of reasonable fees. Specifically, within the LDF team, while several of us may have participated in the same calls—with co-counsel at WilmerHale, other Private-Plaintiffs, DOJ, Defendants, and/or this Court—as much as possible, we have limited the charge to as few of us as reasonable.

17. In addition to portions of the time that I expended on this matter, as noted above LDF is seeking fees on behalf of core members of LDF's team. Specifically, Janai Nelson is a 1996 graduate of UCLA School of Law. She became a member of the New York Bar in 1998. She is a former director of LDF's Political Participation Group with extensive experience in complex litigation, with an expertise in litigating voting rights actions. Prior to rejoining LDF's staff in 2014, Ms. Nelson was the Associate Dean for Faculty Scholarship and Associate Director of the Ronald H. Brown Center for Civil Rights and Economic Development at St. John's University School of Law where she also served as a full professor of law and taught

courses in Election Law and Political Participation, Voting Rights, Constitutional Law, and Professional Responsibility. Ms. Nelson is an accomplished scholar and has published several law review articles, including on Section 2 and the vote denial standard. *See, e.g.*, *The Causal Context of Disparate Vote Denial*, 54 B.C. L. Rev. 579 (2013). Prior to joining the academy, she was a Fulbright Scholar in 2005-2006 and was a Litigation Associate at Fried Frank from 1998-2000. Ms. Nelson also clerked for The Honorable Theodore McMillian in 1997-1998 and for The Honorable David Coar in 1996-1997.

18. The background and work of Ryan Haygood on this case is explained in detail in the attached **Exhibit B** ("Haygood Declaration") and **Exhibit C** ("Haygood Billing Record").

19. Natasha Korgaonkar graduated from Columbia Law School in 2007 and became a member of the New York Bar in 2009. In 2011, Ms. Korgaonkar joined LDF as an Assistant Counsel in LDF's Political Participation Group. Prior to that, Ms. Korgaonkar was an associate at Covington & Burling LLP and before that at the Corporation for Civil Action and Education in San Juan, Puerto Rico. From the investigation of this case and filing of the complaint in 2013 through to when this Court entered an order granting her withdrawal from this case on September 12, 2016, ECF No. 931, Ms. Korgaonkar was a lead counsel for Plaintiff-Intervenor Clark. Indeed, Ms. Korgaonkar (1) defended the depositions of Ms. Clark and Blake Greene, an organizational representative for the Texas League of Young Voters Education Fund, a former plaintiff-intervenor, as well as Dr. Vernon Burton, a key expert witness for Private Plaintiffs, and (2) took the depositions of Elizabeth Gholar, a key fact witness in this case, and Tony Rodriguez, as a 30(b)(6) representative of Texas's Department of Public Safety. Moreover, at trial, the testimony of Ms. Clark and Mrs. Gholar was introduced and Ms. Korgaonkar examined and defended Dr. Burton and Mr. Greene. This Court relied upon the testimony of these witnesses in reaching its

Section 2 results ruling. *See, e.g., Veasey v. Abbott (Veasey I)*, 71 F.Supp.3d 627, 634-36, 674, 678, 670, 673 (S.D. Tex. 2014).

20. Deuel Ross is a graduate of the University of Pennsylvania Law School. After receiving his law degree in 2009, Mr. Ross became a member of the New York Bar in 2010. Currently, he serves as Assistant Counsel at LDF since joining the organization in 2014. Prior to that, he served as a litigation associate at Fried, Frank, Harris, Shriver & Jacobson, LLP as a LDF/Fried Frank Fellow, clerked for Judge Roger L. Gregory on the U.S. Court of Appeals for the Fourth Circuit, and worked as a Marvin M. Karpatkin Fellow at the American Civil Liberties Union's Racial Justice Program.

21. In support of the fee application, attorneys and LDF staff working under my direction also have prepared the attached **Exhibit D** ("LDF Costs Record"). The information in LDF's Costs Record reflect costs incurred for court fees, in relation to expert, Dr. Burton, and reasonable travel and hotel costs spent to develop this case, prepare for and attend depositions, client meetings, in-person court appearances, and oral arguments in this case. LDF is not seeking expenses associated with: any meals and car rentals charged during this litigation for attorneys in fulfillment of their responsibilities in this litigation; ordinary Westlaw/LexisNexis research; and office supplies and all in-house copying and printing, telephone, and miscellaneous expenses, related to this case.

## Conclusion

22. In my professional judgment, and for the reasons explained above, LDF's fee application is reasonable.

9

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _April 11_, 2019.

_____
Leah C. Aden