IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>Plaintiffs,<br><br>VS.<br><br>GREG ABBOTT, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 2:13-CV-193 |

**DECLARATION OF JONATHAN E. PAIKIN IN SUPPORT OF PLAINTIFF-INTERVENOR IMANI CLARK'S OPPOSED MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**

1.  My name is Jonathan E. Paikin. I am over 18 years of age, of sound mind, and capable of making this declaration. The facts stated in this declaration are based on my personal knowledge or information contained in my firm's ordinary business records that have been provided to me.

2.  I am a partner in the law firm Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), and am one of the attorneys representing Ms. Imani Clark, a plaintiff-intervenor in this litigation against the State of Texas and others.[1] I have practiced law for more than twenty years and have been a partner at WilmerHale since 2005. I am familiar with complex civil litigation and the fees and costs that are reasonable and necessary in such matters. Throughout the course of this litigation, I was the lead partner responsible for supervising the WilmerHale team.

---

[1] In addition to Ms. Clark, WilmerHale and its co-counsel the NAACP Legal Defense and Educational Fund represented plaintiff-intervenors Auricia Washington, Crystal Owens, and Michelle Bessiake, who were withdrawn as plaintiff-intervenors (ECF Nos. 237, 338), and the Texas League of Young Voters Education Fund, which ceased operations well into the litigation and thus withdrew (ECF No. 958).

**WILMERHALE'S CONTRIBUTIONS TO THE LITIGATION**

3. In August 2013, in the wake of the Supreme Court's invalidation of Section 5 of the Voting Rights Act, the U.S. Department of Justice filed a lawsuit challenging Texas's voter identification law, known as Senate Bill 14 ("SB 14"), under Section 2 of the Act. WilmerHale was engaged in August 2013 to serve as a co-counsel to the NAACP Legal Defense and Educational Fund ("LDF") in filing a complaint as intervenors in support of the Department of Justice.

4. WilmerHale played an important role in all phases of this litigation, bringing to bear its significant expertise in complex litigation matters, civil rights enforcement efforts, and trial and appellate advocacy. This was a fast-moving case involving multiple plaintiffs and plaintiff-intervenors. The costs of litigating this case were especially high, including because of delays related to the production of voter record data and significant discovery battles regarding issues such as legislative privilege. Ultimate success in the case was the product of the contributions of numerous attorneys and groups. Nonetheless, working alongside LDF, WilmerHale attorneys made significant and critical contributions, including the following:

    a. Drafting complaint and intervention filings.

    b. Opposing Texas's motion to dismiss.

    c. Preparing written discovery.

    d. Taking a lead role in briefing issues of legislative privilege.

    e. Assisting in taking and defending multiple depositions. As part of these efforts, WilmerHale took or participated in taking more than a dozen depositions—including the depositions of key legislators, sponsors, and authors of SB 14, and the supervisor of the Special Investigations Unit in the Texas Attorney General's Office—and took the lead in briefing a motion to compel associated

with the latter deposition. Additionally, WilmerHale provided substantive assistance to other plaintiffs' groups for depositions in which WilmerHale did not participate. On the defensive side, WilmerHale was actively involved with LDF in preparing for fact, 30(b)(6), and expert depositions.

f. Providing substantial logistical and substantive support in preparing proposed findings of fact and conclusions of law, as well as deposition designations to be used at trial.

g. Retaining, working with, and preparing for trial an expert witness (Coleman Bazelon of The Brattle Group) who submitted a detailed economic analysis of the burdens and costs imposed by SB 14. This included working with Dr. Bazelon as he prepared multiple amended expert reports and reply reports to incorporate voter record data previously omitted by Texas. *See* ECF Nos. 521, 603, 614.

h. Attending and participating at trial. WilmerHale attorneys, among other things, provided an opening statement; examined Dr. Bazelon at trial, putting key testimony into the record regarding SB 14's discriminatory effect; cross-examined the State's lead witness on voter fraud issues; worked with LDF to prepare a witness for trial testimony regarding the burdens imposed by SB 14 on black students; and assisted LDF in preparing a closing statement.

i. After trial, WilmerHale attorneys took a lead role in drafting and finalizing the voluminous findings of fact and conclusions of law submitted on behalf of Plaintiffs.

j. When Texas appealed this Court's decision to the Fifth Circuit, WilmerHale attorneys contributed significantly to the briefing on appeal (including the *en banc* briefing) and worked to prepare and hone the oral advocacy presented to the Fifth Circuit on behalf of Plaintiffs.

### WILMERHALE'S FEE APPLICATION

5. WilmerHale's fee application seeks an award of $982,787.50 for work performed by the firm from August 2013, when WilmerHale was engaged to begin work on a complaint, through September 2016, when Plaintiffs worked to enforce the Court's interim remedy order.[2] In addition, WilmerHale seeks reimbursement of $25,000 in expert costs.

6. In support of the fee application, attorneys and paralegals working under my direction have prepared the attached Exhibit A ("Billing Records"). The data in the Billing Records (attorney name, date, and time) reflect contemporaneous records of attorney time. The narrative descriptions, although edited for privilege and cogency, reflect each attorney's contemporaneous descriptions of tasks performed. I have reviewed and approved the time and charges set forth in the Billing Records and certify that the time reflected was actually expended on the tasks described in detail therein.

7. The Billing Records utilize significantly reduced rates, exclude numerous timekeepers that worked on this matter, and include only a portion of the work actually performed.

---

[2] Private Plaintiffs' Motion and Memorandum of Law in Support of Motion for Attorneys' Fees, which Ms. Clark joins and which has been filed in conjunction with this fee application, notes (at page 8) that Private Plaintiffs seek fees for certain tasks performed after this Court's entry of the interim remedy order. With the exception of limited tasks related to the implementation of the interim remedy order, WilmerHale is not seeking fees for any tasks it performed after this Court's entry of that order.

4

    a. <u>Reduced Rates</u>: The rates reflected for each attorney's work in the Billing Records are based on the 2018-2019 rate schedule for attorneys' fees adopted by the United States Attorney's Office for the District of Columbia. *See* https://www.justice.gov/usao-dc/file/796471/download. These rates are significantly below the standard rates charged by my firm. WilmerHale's standard rates for its attorneys during the relevant time period, at each level of experience, were generally more than twice the rates reflected in the Billing Records. The rate applied in the Billing Records for each attorney in any given year is based on that attorney's years of experience at the time the work was performed.

    b. <u>Excluded Time</u>: Hundreds of hours spent by attorneys, paralegals, and technical staff that contributed to Plaintiffs' success in this action have been excluded from the Billing Records.

        i. WilmerHale is only seeking fees for work performed by a core team of attorneys: Partners Jonathan Paikin and Danielle Conley; counsel, and later partner, Kelly Dunbar; senior associate, and later counsel, Sonya Lebsack; and Daniel Aguilar, Hasan Ali, Thaddeus Eagles, Lynn Eisenberg, Tania Faransso, Matthew Robinson, Richard Shordt, Gerard Sinzdak, and Matthew Thome, all of whom were associates and/or senior associates during their work on this matter.[3] Time entries for

---

[3]     All team members were simultaneously working on multiple other matters at the firm during the life of the case, and attorneys joined the team as other attorneys departed or took a leave of absence from the firm. Throughout the case, I or other senior team members actively managed the work flow to ensure that tasks were efficiently allocated.

    multiple timekeepers beyond WilmerHale's core team—including attorneys, summer associates, paralegals, and technical support staff—have been excluded.

  ii. Time entries that appear even arguably to be unnecessarily duplicative (e.g., where multiple attorneys attended the same deposition or hearing) have been removed.

  iii. Travel time, including frequent travel from Washington D.C. to Texas and vice versa, has been excluded to the extent that time was not spent doing substantive work in connection with this litigation.

  iv. Time entries associated with participation in meetings or teleconferences internally at WilmerHale, with our co-counsel LDF, or with other plaintiffs' groups regarding substantive matters—including case strategy and preparation for depositions, trial, and hearings—have been excluded.

  v. Of the remaining entries, the hours billed for many time entries have been reduced to reflect a very conservative estimation of reasonable fees.

8. With respect to expert costs, The Brattle Group charged a capped fee of $50,000 for its work on this matter—an amount far less than what it otherwise would have charged based on its standard rates and given the work it performed. Per its agreement with LDF and The Brattle Group, WilmerHale paid 50% of that amount—$25,000—and seeks those costs in addition to its attorneys' fees.

9. WilmerHale is not seeking any other costs it incurred in connection with this litigation, including filing fees, court costs, significant costs incurred during trial, and travel costs. For example, WilmerHale provided technical on-site resources that were shared with other plaintiffs' groups during trial. It is not seeking reimbursement of any of those costs.

10. As a result of the significant reductions detailed above, WilmerHale has reduced the value of the work its attorneys performed on this matter by millions of dollars. In my professional judgment, and for the reasons explained above, WilmerHale's fee application is reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 11, 2019.

                                                                             Jonathan E. Paikin