IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *et al.*,

Plaintiffs,

v.

GREG ABBOTT, *et al.*,

Defendants.

Civil Action No. 2:13-cv-193 (NGR)
(Consolidated Action)

## REVISED DECLARATION OF EZRA D. ROSENBERG IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES

### Background and Prevailing Party

1.      I am co-counsel for Plaintiffs Mexican American Legislative Caucus [MALC] and Texas State Conference of the NAACP [collectively "Plaintiffs"] in the above-styled matter. I am presenting this declaration in support of Plaintiffs' Motion for Attorney's Fees and Costs. Plaintiffs are prevailing parties in this action and are entitled to attorney's fees and costs as authorized by the Voting Rights Act, 52 U.S.C. § 20510(c). Specifically, Plaintiffs and their attorneys presented pleadings, evidence, and argument to this and other Courts challenging the 2011 voter photo ID provisions (commonly referred to as SB 14) enacted by the Texas legislature. As a result of the litigation brought by Plaintiffs, SB 14 was enjoined by virtue of an Interim Remedial Order issued by this Court August 10, 2016 (Doc. No. 895), following this Court's ruling that SB 14 violated the "results" prong of Section 2 of the Voting Rights Act, a ruling that was affirmed by the Fifth Circuit en banc. *Veasey v. Perry*, 71 F. Supp. 3d 627 (S.D. Tex. 2014), *aff'd in part, vacated in part, rev'd in part sub nom. Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc). This relief remained in place until SB 14 was amended by SB 5 to largely incorporate this Court's interim relief into state law. The Fifth Circuit held that this amendment did not moot the case but, by "essentially mirror[ing the] agreed interim order," constituted an acceptable remedy under the Fifth Circuit's

2016 ruling that SB 14 violated Section 2 of the Voting Rights Act. *Veasey v. Abbott*, 888 F.3d 792, 804 (5th Cir. 2018).  A review of Plaintiffs' pleadings, attachments and argument on this cause, together with this Court's orders, including orders regarding the interim relief as well as final judgment, demonstrate Plaintiffs' status as prevailing party in this action.

**Professional Background**

2.      I have been a member of the Bar of the State of New Jersey since 1974, a member of the Bar of the District of Columbia since 1982, and a member of several federal court bars. Throughout my career, my focus has been on complex litigation, first with the Office of the New Jersey Public Defender, where I headed its Special Projects Section; then with the Land and Natural Resources Division of the Department of Justice, where I was a Senior Trial Attorney and Trial Team Leader; and then with the private law firms of Katzenbach, Gildea & Rudner in Trenton, NJ, Fox Rothschild in Lawrenceville, NJ, and Dechert LLP in Princeton, NJ.  At Dechert, I was Co-Chair of the firm's Mass Torts/Products Liability Section which was named as the top products liability defense firm in the country by American Lawyer. I have been consistently ranked among the top litigators nationwide by numerous publications, including Chambers, The Legal 500 United States, Benchmark Litigation, and, in 2014, was named as one of the top 500 lawyers in the nation by Lawdragon. Throughout my career, I have been involved in significant civil rights cases, not only in the Section 2 and Section 5 Texas photo ID cases, but also serving as co-lead trial counsel in a school desegregation case tried in Pitt County, North Carolina in 2013; and supervising the advantageous settlements of a minority profiling case in New Jersey and of a prison conditions case in Passaic County, New Jersey. In 2014, I successfully argued an appeal on behalf of the NJ-ACLU before the New Jersey Supreme Court, dealing with the admissibility of a defendant's rap lyrics in his attempted murder trial, helping to persuade the court to adopt stringent standards before admitting such evidence. In 2014, I was named to The National Law Journal's "Pro Bono Hot List" for my role in significant public interest cases of national importance. In 2015, the New Jersey Legislature passed a Joint Resolution, honoring my pro bono service.

**Description of my role and the role of Dechert LLP and the Lawyers' Committee for Civil Rights in this case:**

    3.     When I began my work in this case, I was a Partner with Dechert LLP, which was asked by the Lawyers' Committee for Civil Rights Under the Law ("Lawyers' Committee") and the Brennan Center for Justice ("Brennan Center") to serve as pro bono counsel on this matter with them, and in association with Gary Bledsoe, Robert Notzon, Victor Goode and Daniel Covich, representing Texas State Conference of NAACP, and Jose Garza, representing MALC. At Dechert, I supervised a number of attorneys and paralegals who worked on this case at Dechert, and whose time is being submitted pursuant to the affidavit of Neil Steiner.

    4.     I retired as a Partner of Dechert on October 31, 2014, and joined the staff of the Lawyers' Committee on November 3, 2014, first as Senior Special Counsel.  On July 1, 2015, I was promoted to Co-Director of the Lawyers' Committee's Voting Rights Project. The Lawyers' Committee is a non-partisan, non-profit organization based in Washington D.C.

    5.     Throughout this case, I served as one of the Lead Trial Counsel for Plaintiffs MALC and Texas NAACP, and as coordinating counsel of all private plaintiff groups ("Private Plaintiffs") — a role I had assumed in the prior Section 5 litigation over SB 14 — whose cases were consolidated for purposes of trial and appeals in this matter. In the role of coordinating counsel, I was one of the prime interfaces with all Private Plaintiffs, coordinating the joint submissions; with the Department of Justice, including coordinating submissions, preparing for trial, and coordinating the presentation of evidence at trial; with the State of Texas, including coordinating many of the evidentiary and witness issues on behalf of the Private Plaintiffs; and with the Court. I participated actively in all substantive events in the case, taking some of the key depositions, including the depositions of Texas's key experts (Milyo and Hood) and legislators. At trial, working with my co-counsel and with the attorneys from the Department of Justice, I was primarily responsible for coordinating the order of witnesses and the presentation of deposition excerpts to ensure that there was no down-time. As the Court may recall, there was never a moment when the plaintiffs were not ready with a witness or deposition testimony for the whole of the trial. At trial, I delivered one of the main opening arguments and one of the main closing arguments, put one of

3

the key expert witnesses for plaintiffs on the stand (Dr. Daniel Chatman), one of the key fact witnesses (Rev. Peter Johnson) on the stand and cross-examined Texas's lone live expert witness (Dr. Trey Hood). I was one of the active drafters of virtually all of the briefs to this Court, including the pretrial and post-trial Findings of Fact and Conclusions of Law; during the appeal stages, all briefs to the Fifth Circuit; and, after the en banc decision, I was one of the primary negotiators of the Interim Remedial Order.

6.      I emphasize that, throughout the life of this case, the presentation of the case by the Private Plaintiffs was very much a group effort. It was the goal of all of counsel among the Private Plaintiffs to avoid as much as possible duplication of effort, and to make it as easy for possible for the Court and for opposing counsel to deal with discovery and trial issues expeditiously and efficiently. To that end, the Private Plaintiffs coordinated their strategies so as to speak with a single voice on virtually every issue.  To do so, Private Plaintiffs would hold weekly coordination calls and numerous other calls and emails between and among them.  Typically, one private plaintiff group or another would undertake primary responsibility for given tasks such as the preparation of the first draft of a key pleading or motion, with a small group from the other Private Plaintiffs reviewing the work product. Similarly, it was decided before-hand, which of Private Plaintiffs' counsel would present argument on given issues to this Court. Rarely, if ever, did Private Plaintiffs submit redundant briefs or present repetitive argument to this Court.

7.      We took the same approach within our own plaintiff group, with one of Myrna Perez, Mark Posner, or I taking the lead on specific tasks, specific witnesses, and the primary hand at the drafting of submissions to the court. While several of us from the Brennan Center, Lawyers' Committee, and Dechert may have participated in the same calls — with the other Private Plaintiffs, with DOJ, with the State, and with the Court — in this fee application, we have generally limited the charge to just one of us (typically me, as I had the largest role on behalf of the group). Exceptions include instances where the participation in the call by more than one attorney was helpful to the performance of certain tasks or the development of important strategy.

8.      As noted above, before I joined the Lawyers' Committee in November 2014, I was

4

a partner at Dechert LLP, and the lead attorney in the firm on this case. As such, I supervised the work of Amy Rudd, Michelle Yeary, Lindsey Cohan, and others. Each of them performed discrete and important tasks. Ms. Cohan, who is an associate in Dechert's Austin office, served as the primary local counsel, preparing and filing papers with the Court on behalf of all Private Plaintiffs for much of the time, and coordinating depositions of experts and fact witnesses (several of which occurred at Dechert's Austin office). Her participation was essential to the coordination among Private Plaintiffs' counsel. Ms. Rudd, who was a partner in Dechert's Austin office, primarily prepared and put on witnesses at trial, and supervised the work of Ms. Cohan. Ms. Yeary, who is Counsel in Dechert's Princeton office, where I worked while at Dechert, supervised much of the work connected with documents for the Private Plaintiffs, aided by a paralegal, Antonella Capobianca, whose time is not being charged as part of this application. The documents in the Section 5 case had been gathered and reviewed by Dechert in the Section 5 case. Although the review of those documents in the Section 5 case entailed thousands of hours and benefited the litigation of this case, my understanding is that Dechert is not charging for the time associated with the review of documents in the Section 5 case.  Ms. Yeary also supervised the responses to written discovery of the Texas NAACP and MALC Plaintiffs. Dechert has given me an opportunity to review Dechert's time records, so that I could recommend whose and what time should be charged as part of this application, and I believe that their application is reasonable for the work done.

9.      In addition to portions of the time I expended on this matter, the Lawyers' Committee is also seeking fees on behalf of Mark Posner. The Lawyers' Committee is not seeking fees on behalf of Bob Kengle and Jon Greenbaum, both of whom participated significantly to this case in their supervisory roles, Mr. Greenbaum as Chief Counsel of the Lawyers' Committee and Mr. Kengle as the former co-Director of the Voting Rights Project of the Lawyers' Committee. Both Mr. Greenbaum and Mr. Kengle had decades of experience in the Department of Justice's Civil Rights Division, Voting Rights Section, and both participated in the setting of strategy in this case, and reviewed and substantively edited every major submission to the Court for which we are seeking fees. The Lawyers' Committee is also not seeking fees for more junior staff attorneys,

including Sonia Gill and Brendan Downes, who recorded significant time on the matter.

10.     The Lawyers' Committee is seeking fees for Mark Posner's time.  Mark Posner is a 1980 graduate of Georgetown University Law School. He served in the Civil Rights Division of the U.S. Department of Justice for 23 years, including 15 years in the Division's Voting Section. He worked on voting rights enforcement for the Lawyers' Committee from 2009 to 2015 as a Senior Special Counsel. Mr. Posner was the principal line attorney for the Lawyers' Committee on this matter during the time in which I was still employed at Dechert. After I joined the Lawyers' Committee, Mr. Posner continued to actively litigate the matter until his retirement in 2015. In this case, Mr. Posner was a key strategist and brief writer, particularly in the preparation of the pretrial and post-trial Findings of Fact and Conclusions of Law, and had significant roles in the development of strategy, the discussion of data issues with the Department of Justice, the preparation of expert witness Chapman, and the 5th Circuit briefing.

**Time**

11.     Time in this case was kept contemporaneously with the work performed and usually recorded on a daily basis, in accordance with the Lawyers' Committee's pre-existing practices. Attached to this Declaration is an accurate itemization for the hours claimed by the Lawyers' Committee staff in this litigation (Attachment A). As reflected in Attachment A, in total, Lawyers' Committee attorneys and a legal assistant spent 3,648.3 hours litigating this case. However, the Lawyers' Committee is seeking recovery of attorney's fees for just 952.37 of those hours (26.1% of the total hours expended). All of the time claimed was expended for the litigation purposes listed.

12.     The Lawyers' Committee is seeking fees only for time expended, as set forth in the accompanying brief, for (1) litigating this case through the denial of Texas's petition for certiorari from the en banc decision; (2) negotiating, implementing and monitoring the 2016 interim remedial order; and 3) time spent defending against Texas's unwarranted 2018 "motion to dismiss," which asked this Court to re-litigate merits' determinations and overturn the Fifth Circuit's ruling on

mootness, Doc. 1107.[1]

**Hourly Rates**

13.     The Lawyers' Committee accepts voting rights cases on behalf of clients, such as the plaintiffs in this case, who are unable to pay for the legal services required to litigate their claims and vindicate their rights. We therefore do not bill clients for our legal services, and we will not do so in this case; accordingly, we will obtain no compensation in this case absent a fee recovery. The appropriate hourly rates for the Lawyers' Committee attorneys have been set in accordance with the USAO attorney's fees matrix for 2015-2019 in light of recent fee awards in the Southern District of Texas, which are similar to the matrix index. The total fees sought under those rates are summarized below.

**Exercise of Billing Judgment**

14.     In the exercise of "billing judgment," *see Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), the hours claimed by Lawyers' Committee staff in this matter exclude certain hours expended in relation to this matter from the lodestar request in order to obviate any question that the time claimed in Attachment A is reasonable. This includes not only time relating to tasks and time periods other than those set forth in paragraph 12 above, but also time that was legitimately spent on tasks for which a fee would be due, but are not being charged in the exercise of my billing judgment.  Attachment A thus excludes the majority of time Lawyers' Committee staff expended on this matter – 2,695.67 hours (compared to the 952.63 hours for which the Lawyers' Committee seeks reimbursement) – including 502.03 hours of my own time and 450.6 hours of Mr. Posner's time. The time of seven other Lawyers' Committee attorneys has also been excluded entirely, including 252.3 hours for Mr. Kengle, 48.2 hours for Mr. Greenbaum, 304 hours for Ms. Gill, 226.25 hours for Mr. Downes, 122.2 hours for Erandi Zamora, 53 hours for Brian Corman, and 16.25 hours for Alejandro Reyes. Madelyn Finucane's time (5.1 hours) as a legal assistant has also been excluded. In total, the time excluded from Attachment A, and thus not sought in this matter,

---

[1] This Court correctly declined that invitation and merely acknowledged that the Fifth Circuit's most recent opinion ended all outstanding merits and remedial questions in the case.

amounts to $1,451,296.61 in attorneys' fees. The total fees sought, and not sought, in this matter, according to USAO rates, are summarized below.

**USAO Rates (Total Excluded and Total Fees Sought)**

| Attorney | Law School Year | Rate per Hour | Hours Not Charged | Total Excluded | Hours Charged | Total Fees Sought |
|---|---|---|---|---|---|---|
| Ezra Rosenberg | 1974 | $613 | 952.37 | $583,802.81 | 502.03 | $307,744.39 |
| Mark Posner | 1980 | $613 | 716.0 | $438,908.00 | 450.6 | $276,217.80 |
| Bob Kengle | 1980 | $613 | 252.3 | $154,659.90 | 0.0 | $0.00 |
| Sonia Gill | 2008 | $358 | 304.0 | $108,832.00 | 0.0 | $0.00 |
| Brendan Downes | 2014 | $307/$340 | 226.25 | $72,164.75 | 0.0 | $0.00 |
| Erandi Zamora | 2011 | $340/$351 | 122.2 | $42,813.00 | 0.0 | $0.00 |
| Jon Greenbaum | 1993 | $544 | 48.2 | $26,220.80 | 0.0 | $0.00 |
| Brian Corman | 2013 | $307 | 53.0 | $16,271.00 | 0.0 | $0.00 |
| Alejandro Reyes | 2005 | $417 | 16.25 | $6,776.25 | 0.0 | $0.00 |
| Madelyn Finucane (Legal Assistant) | N/A | $166 | 5.1 | $846.10 | 0.0 | $0.00 |
| **Totals** | | | **2,695.67** | **$1,451,294.61** | **952.63** | **$583,962.19** |

**Costs**

15.     During this litigation, the Lawyers' Committee incurred expenses including travel costs, copying costs, and courier fees, the type of out-of-pocket expenses ordinarily paid by a fee-paying client. These expenses are recorded in the Lawyers' Committee's accounting system. During the entirety of this matter, Lawyers' Committee staff incurred a total of $16,883.09 in costs and expenses.[2] Attached to this Declaration as Attachment B is an itemized list of these costs and

---

[2] Costs include those incurred for research and case management via PACER and WestLaw. The Lawyers' Committee represents all of its clients on a pro bono basis and typically seeks reimbursement for those costs as part of attorney's fees applications. The specific costs here reflect those connected to a unique internal project code used by Lawyers' Committee attorneys for this case when accessing either service.

expenses.[3]

**<u>Reasonableness of time expended and overall lodestar request</u>**

16.     The overall lodestar request is in my judgment wholly reasonable and necessary in light of the actual work performed in litigating the case, including the results obtained; the importance of this case to the voting rights of the plaintiffs; the significant voting rights issues involved; and the overall time demands of the litigation. While at Dechert, I not only supervised the allocation of work among the Dechert attorneys and paralegal, but also coordinated the work among all of the co-counsel for the Texas NAACP and MALC Plaintiffs, and thus was fully aware of who was doing what work at the Lawyers' Committee.  After coming to the Lawyers' Committee in November 2014, I actively supervised the allocation and division of work within the Lawyers' Committee among the attorneys that worked on this matter from that date through the issuance of the remedial order and subsequent filings. I also sought to ensure an efficient distribution of labor and minimal duplication of work or effort.

17.     In reviewing these time records in preparation for this submission, I personally read each time entry and decided whether and how much of it to bill, taking into consideration the nature, complexity, and importance of the task, the role of the time-keeper in performing the task (e.g., primary drafter, reviewer, etc.), and whether and how many other attorneys were performing similar tasks. As noted above, I decided that we should bill for the time of only myself and Mr. Posner, although others, notably Mr. Kengle and Mr. Greenbaum who are nationally-known experts in the voting rights arena, contributed substantively and meaningfully in this case.  I made judgment calls as to whether the total time devoted to a task, such as the drafting of a specific brief, merited the time spent, in light of the above considerations. I believe that the time recorded accurately reflects the time spent, and my decision to cut the substantial amount of time that I have cut does not reflect any belief that the work done was not necessary. Rather, it is an attempt to exercise reasonable billing judgment in light of these considerations.

---

[3] Also attached to this declaration, as Attachment C, are receipts reflecting costs for the largest costs incurred by the Lawyers' Committee during this litigation.

18.     After discussions with Defendants regarding the Lawyers' Committee's original fee application, we conducted a comprehensive review of our submission. As a result of that review several changes were made, including:   deducting time related to True the Vote's motion to intervene, as well as time related to applications for court admissions, as a result of authority provided by Defendant which convinced us that such time should be deleted from this application; adding time – at 50% of our billable rates – for non-working travel, which we did not originally include, as a result of authority provided by Defendants which convinced us that our discretion should be exercised to include such time; and adding time – at 80% of our billable rates – for time I spent preparing the fee application, which we did not originally include, as a result of authority provided by Defendants which convinced us that our discretion should be exercised to include such time. The Lawyers' Committee continued to play a coordinating role in discussions with the Defendants, and in discussions with the Plaintiffs' groups, regarding the original and amended fee applications. For ease of reference, reductions in the Lawyers' Committee's time are highlighted in red and additions in time are highlighted in green in the attached time records.

19.     In total, as detailed in the affidavits of Neil Steiner, Myrna Perez, Gary Bledsoe, Robert Notzon, and Jose Garza, the Texas NAACP/MALC plaintiff group requests fees as summarized below.

**Revised Total Fees Sought by Texas NAACP/MALC Plaintiff Group**

| Firm/Organization | Hours Billed | Total Fees Sought |
|---|---|---|
| Dechert LLP | 2,885.3 | $1,484,304.60 |
| Lawyers' Committee for Civil Rights Under Law | 952.63 | $583,962.19 |
| Brennan Center | 516.5 | $246,689.90 |
| Texas NAACP | 116.65 | $67,812.95 |
| Mexican American Legislative Caucus | 79.9 | $50,817.70 |
| **Totals** | **4,550.98** | **$2,433,587.34** |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Ezra Rosenberg
Ezra Rosenberg
Attorney for the TX NAACP and MALC