UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARC VEASEY, et al., | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. 2:13-CV-00193 |
| GREG ABBOTT, et al. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

Defendants, Greg Abbott, in his official capacity as Governor of Texas, Ruth R. Hughs, in her official capacity as Secretary of State, and the State of Texas (collectively, the "State Defendants"), file this Response to Plaintiffs' Motion for Attorney's Fees (Doc. Nos. 1144, 1172, 1174, and 1175 ("Mot. Atty's Fees").[1]

## <u>INTRODUCTION</u>

Plaintiffs seek an award of attorney's fees totaling $8,719,440.82 pursuant to the Voting Rights Act, 52 U.S.C. § 10310(e), and 42 U.S.C. § 1988(b)[2]. *See* Doc. No. 1174, at 1. The Court should deny attorney's fees or significantly reduce this fee request by three-fourths because Plaintiffs were not the predominantly prevailing party in this litigation. Further, any award of attorney's fees to Plaintiffs should be

---

[1] State Defendants address all Plaintiffs' motions in this response.  The parties conducted a meet and confer wherein Plaintiffs agreed to review their request for attorney's fees.  All Plaintiffs except the Taylor Plaintiffs submitted revised motions.

[2] Both provisions contain similar language and identical legislative purposes and as such are construed alike. *See Texas v. United States*, 49 F.Supp.3d 27, 35-36 (D.D.C. 2014) <u>aff'd.</u> No. 14-5151, 2015 WL 4910078 (D.C. Cir. Aug. 18, 2015); *Donnell v. United States,* 682 F.2d 240, 245 n. 7 (D.C. Cir. 1982).

reduced because (1) the time entries reflect only limited billing judgment; (2) they seek fees at excessive hourly rates; (3) they seek excessive and duplicative fees; (4) they seek fees for non-compensable clerical work; and (5) their time entries are riddled with block-billing and vague entries.

This case has a long history in the courts. In 2011, the Texas Legislature enacted Senate Bill 14 ("SB 14"). SB 14 required voters to present certain government-issued photo ID when voting in person. Texas began enforcing SB 14 on June 25, 2013. Individual and organizational plaintiffs brought this lawsuit alleging that SB 14 (1) is a poll tax; (2) purposefully abridges the right to vote on account of race; (3) results in abridgement of the right to vote on account of race, in violation of § 2 of the Voting Rights Act; and (4) unconstitutionally burdens the right to vote.

After a nine-day bench trial, this Court entered a judgment adopting every one of Plaintiffs' legal theories and permanently enjoined the State from enforcing SB 14. *Veasey v. Perry*, 71 F. Supp. 3d 627 (S.D. Tex. 2014). State Defendants appealed, and the Fifth Circuit granted their motion to stay the injunction pending appeal. *Veasey v. Perry*, 769 F.3d 890 (5th Cir. 2014).

Thousands of documents were produced along with numerous depositions of legislators. Although the Plaintiffs insisted that direct evidence from legislators was essential to proving the discriminatory-purpose claim, this evidence was later found to be insufficient by the Fifth Circuit to uphold a discriminatory purpose claim. The Fifth Circuit acknowledged that Plaintiffs, despite extensive discovery of legislative materials, failed to offer any direct evidence of discriminatory purpose. *Veasey v.*

*Abbott*, 830 F.3d 216, 231 n.13 (5th Cir. 2016) (en banc) ("The district court here allowed extensive discovery of legislative materials which did not yield a 'smoking gun.'").

A three-judge panel of the Fifth Circuit overturned several aspects of the district court's judgment. *Veasey v. Abbott*, 796 F.3d 487 (5th Cir. 2015), on reh'g en banc, 830 F.3d 216 (5th Cir. 2016). It reversed the district court's conclusion that SB 14 was a poll tax, it was enacted with a discriminatory purpose, and that it substantially burdened voting rights. *Id.* at 503-04, 515, 520. The panel, however, affirmed the district court's holding that SB 14 had a racially discriminatory effect on the right to vote under VRA § 2. *Id.* at 513.

On en banc rehearing, the Fifth Circuit rendered judgment for the State Defendants on the poll-tax claim and dismissed the substantial-burden claim. *Veasey*, 830 F.3d at 268, 272. The Fifth Circuit reversed the district court's judgment that SB 14 was passed with a racially discriminatory purpose and remanded the issue of whether SB 14 was passed with a racially discriminatory purpose to the district court to reconsider the claim in light of circumstantial evidence that could support that finding. *Id.* at 241. The Fifth Circuit then affirmed this Court's finding that SB 14 violated § 2 of the VRA and directed the district court to fashion an interim remedy for the upcoming 2016 general election. *Id.* at 268-272.

In August 2016, the district court entered an interim remedy agreed to by all parties. *Veasey v. Abbott*, 888 F.3d 792, 796 (5th Cir. 2018). During the remand, the Texas Legislature passed Senate Bill 5 (SB 5), which was a legislative remedy

designed to replace and cure the flaws identified by the district court and the Fifth Circuit in SB 14. *Id.* at 796-97.

On remand, the district court entered a permanent injunction against both SB 14 and SB 5 on the unconstitutional discriminatory intent claim. *Veasey v. Abbott,* 265 F. Supp. 3d 684, 700 (S.D. Tex. 2017), *rev'd in part,* 888 F.3d 792 (5th Cir. 2018). The State Defendants requested emergency relief from the Fifth Circuit which reversed and rendered this claim. *Veasey*, 888 F.3d at 796. The Fifth Circuit held that the district court abused its discretion by permanently enjoining SB 5 and found that it served as an effective remedy for the deficiencies identified in SB 14. *Id.* at 801-04. Based on the Fifth Circuit's opinion, this Court dismissed the case. *See* Doc. No. 1125.

## ARGUMENT

### I.      Plaintiffs are Not Prevailing Parties on Their Claims

The Court should deny Plaintiffs' motions for attorney's fees because they do not satisfy either of the two distinct tests for identifying a prevailing party developed by the Fifth Circuit – the *Petteway* requirements and the *Dearmore* requirements.

In the United States, parties are ordinarily required to bear their own attorney's fees – the prevailing party is not entitled to collect from the loser. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 602 (2001).  Although fee-shifting statutes do not define "prevailing party," the Supreme Court has offered guidance on the term. "The touchstone of the prevailing party inquiry…is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v.*

*Wyner*, 551 U.S. 74, 82 (2007) (internal quotation marks and citations omitted).  "A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either pendent lite or at the conclusion of the litigation." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791 (1989). "[A] plaintiff [must] receive at least some relief *on the merits* of his claim before he can be said to prevail." *Hewitt v. Helms,* 482 U.S. 755, 760 (1987) (emphasis added).

Before 2001, many circuit courts of appeals recognized the "catalyst theory" of prevailing-party status. *See, e.g., Foreman v. Dallas Cnty., Tex.,* 193 F.3d 314, 319–21 (5th Cir. 1999) (discussing the Fifth Circuit's application of the catalyst theory). Under the catalyst theory, a plaintiff could obtain attorney's fees if the plaintiff won the relief sought and could demonstrate that the lawsuit itself caused the defendant to alter its conduct. *Id.* at 320. Plaintiffs could satisfy the causation requirement by demonstrating that the lawsuit was "a significant catalyst in motivating the defendants to alter their behavior." *Id.* at 320–21 (internal quotation marks and citation omitted). The Supreme Court rejected this approach. In *Buckhannon,* the Court emphasized that there must be "judicial *imprimatur* on the change" in the legal relationship between the parties. 532 U.S. at 605. Thus, that private settlements and a defendant's voluntary change in conduct no longer satisfied the prevailing-party test. *See id.* at 604 n.7; *see also id.* at 605.

In the wake of *Buckhannon,* the Fifth Circuit developed a three-part test for evaluating prevailing-party status – the *Petteway* requirements – in which every plaintiff must prove:

> (1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered.

*Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013).  The Fifth Circuit also developed the *Dearmore* requirements, which apply whenever a plaintiff argues preliminary relief makes it a prevailing party:

> [T]he plaintiff (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits.

*Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008); *see also Davis v. Abbott*, 781 F.3d 207, 217 (5th Cir. 2015) (applying the *Dearmore* requirements to a request for attorney's fees in the senate redistricting case).  Under both tests, the Plaintiffs "bear[] the burden of establishing entitlement to an award." *Davis*, 781 F.3d at 214 (quoting *Hensley v. Eckerhart,* 461 U.S. 424 (1983)).[3]

Plaintiffs claim that they are prevailing parties because (1) they successfully obtained a finding of liability in their favor that led to the issuance of the Court's interim remedial order that was used during the 2016 general election and subsequent elections; (2) they successfully opposed the State Defendants' petition for certiorari at the United States Supreme Court; and (3) the State amended SB 14 in

---

[3] Although the *Dearmore* test is binding on this Court, State Defendants preserve the argument that preliminary relief is never sufficient to make a plaintiff a prevailing party. *Smyth ex rel. Smyth v. Rivero*, 282 F. 3d 268, 277 (4th Cir. 2002) (holding preliminary injunctive relief is "an unhelpful guide to the legal determination of whether a party has prevailed"); *see also Davis*, 781 F.3d at 217 n.10 (noting the split with the Fourth Circuit); *Dearmore*, 519 F. 3d at 526 n.4 (splitting with the Fourth Circuit).

direct response to the Court's remedial order. *See* Doc. No. 1143-1, at 6-7. The preliminary relief Plaintiffs received does not satisfy the *Dearmore* test – a conclusion that Plaintiffs cannot dispute. Further, at the conclusion of the case, Plaintiffs did not win any relief that could satisfy *Petteway*.

### A. Plaintiffs are Not Prevailing Parties under *Petteway*.

Plaintiffs ultimately did not secure judicially-sanctioned relief on their poll tax, unconstitutional burden, discriminatory intent, or discriminatory results claims at the conclusion of the case as required by *Petteway* to achieve prevailing-party status. *Petteway,* 738 F.3d at 137.The Fifth Circuit vacated all claims except for the discriminatory results claim, *Veasey*, 830 F.3d at 241, reversed all injunctions against SB 14 and SB 5, and subsequently held that SB 5 remedied the deficiencies that this Court identified in SB 14. *Veasey,* 888 F.3d at 801-04. There were no ultimate findings of liability that survived. The Fifth Circuit determined that SB 5 remedied all violations.  This Court issued a final judgment dismissing all claims against the State Defendants. *See* Doc. No. 1125. Accordingly, Plaintiffs have not met their burden of showing that they have prevailing-party status under *Petteway*.

Plaintiffs only received *interim* relief for their discriminatory results claim *prior* to the enactment of SB 5. *See Buckhannon*, 532 U.S. at 600 (holding that a party that has failed to secure judicially-sanctioned relief, "but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," is not a "prevailing party."). However, as discussed *infra,* Plaintiffs are not prevailing parties based on this interim relief.

**B. The Interim Remedy Does Not Make Plaintiffs Prevailing Parties.**

Plaintiffs have not met their burden of showing that the agreed interim remedy, the enactment of SB 5, or the successful opposition to the State Defendants' petition for certiorari at the United States Supreme Court satisfies the *Dearmore* requirements that entitle them to prevailing-party status for preliminary relief.

### 1. The interim remedial order does not satisfy *Dearmore*.

The interim remedial order does not satisfy *Dearmore* because the remedial order was not the result of a preliminary injunction. *Dearmore,* 519 F.3d at 524. The Fifth Circuit found that the § 2 violation – the discriminatory results claim – did not justify enjoining SB 14 in its entirety. *Veasey II*, 830 F.3d at 268-271. Moreover, there is no suggestion that the Court's order implementing the agreed upon interim remedy mooted the action. *Veasey*, 888 F.3d at 796. Despite the use of the interim remedy during the 2016 general election and subsequent elections, Plaintiffs continued to litigate this suit to obtain final relief. As a result, the interim remedial order cannot support prevailing-party status under *Dearmore*. 519 F.3d at 524.

### 2. The enactment of SB 5 does not satisfy *Dearmore*.

Although the Fifth Circuit found that SB 5 remedied the deficiencies testified to in SB 14, *Veasey*, 888 F.3d at 801-04, it did not find—nor did this Court find—that SB 5 mooted the lawsuit as *Dearmore* requires. 519 F.3d at 524. *Veasey*, 888 F.3d at 799; *Veasey v. Abbott,* 248 F. Supp. 3d 833, 834 (S.D. Tex. 2017); *Veasey*, 265 F. Supp. 3d at 698 n.19. Importantly, Plaintiffs denied that the legislative change mooted the case by stating that "no new law could moot this case." *See* Brief of Private Plaintiffs

Regarding Effect of Voter ID Legislation on This Case, Doc. No. 1010, at 13 (filed March 7, 2017).

Plaintiffs further contend that under *Dearmore* they are prevailing parties because "Texas plainly amended SB 14 *in direct response* to this Court's remedial order." *See* Doc. No. 1143-1, at 6. As Plaintiffs articulate, in *Dearmore,* the Fifth Circuit upheld an attorney's fee award where "the district court's grant of the preliminary injunction directly caused the City to amend the offending portion of the Ordinance." 519 F.3d at 525.

The instant case is distinguishable from *Dearmore* because the Fifth Circuit reversed the district court's permanent injunction against both SB 14 and SB 5. *Veasey*, 888 F.3d at 796. State Defendants agree that there is an obvious connection between the agreed interim remedy and SB 5: the Legislature adopted the reasonable-impediment exception from this Court's August 10, 2016 agreed interim remedy in SB 5. *See* Defendants' Brief on Remedies, Doc. No. 1049, at 8 (July 15, 2017). SB 5 remedies any alleged disparate impact of SB 14's photo-ID requirement and allows voting upon showing any of the seven reasonable impediments specified in the Court's interim-remedy order. *Id.* at 14.

Despite Plaintiffs' contentions, legislative changes motivated merely by the existence of litigation (and a desire to end it) cannot support prevailing-party status, as the Supreme Court recognized in rejecting the catalyst theory. *See Buckhannon*, 532 U.S. at 605. Voluntarily adopting the same policy that a court did in granting interim relief – here the reasonable-impediment exception – cannot suffice to

establish liability for attorney's fees. Such a rule would create the same "disincentive . . . to voluntarily change . . . conduct" that *Buckhannon* sought to avoid. *Id.* at 608.

SB 5 is an *ameliorative* change. *See* Doc. No. 1049, at 23. The reasonable-impediment procedure in SB 5 is the precise provision that (1) plaintiffs have sought all along in this litigation, (2) the Obama Administration's DOJ had precleared under VRA § 5 in other States, and (3) the Fifth Circuit here suggested as "appropriate amendments" to remedy any discriminatory effect of SB 14, *Veasey*, 830 F.3d at 270. *See* Doc. 1049, at 23. Additionally, SB 5 expanded the range of expired photo ID that may be used to vote, broadened the acceptable forms of photo-ID to include federally issued passport cards, and required the Secretary of State to establish a program using mobile units to provide free SB-14 compliant election identification certificates, which satisfy the photo-ID requirement for in-person voting. *See id.* at 11-12.  The *ameliorative* changes to SB 14 were implemented to eliminate all of the alleged injuries in this lawsuit. Thus, the enactment of SB 5 cannot support prevailing-party status.

In any event, the Legislature's decision to enact SB 5 could not make Plaintiffs a prevailing party because the Legislature's voluntary action cannot be attributed to the State Defendants. *See, e.g.*, *Am. Bar Ass'n v. F.T.C.*, 636 F.3d 649 (D.C. Cir. 2011) (holding that Congress's action mooting the case could not be attributed to an executive branch agency, the FTC); *see also U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 n.3 (1994) (noting *Munsingwear*'s "implicit conclusion that

repeal of administrative regulations cannot fairly be attributed to the Executive Branch when it litigates in the name of the United States"); *Catawba River-keeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 591 & n.7 (4th Cir. 2016) (following "sister circuits" and "distinguish[ing] the actions of an executive entity from those of the legislature" in considering whether to vacate a district court's judgment on appeal); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1131-32 (10th Cir. 2010); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 452 (1st Cir. 2009); *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 879-80 (9th Cir. 2006); *Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 194-95 (3rd Cir. 2001) (Alito, J.).

However, even if the Legislature's voluntary action could be attributed to the State Defendants, to establish the requisite causal connection between interim relief and legislative action, Plaintiffs would have to show that the Legislature was motivated by both the fact that Plaintiffs had "w[o]n a preliminary injunction" – which they did not – and a desire "to avoid the payment of [Plaintiffs'] attorney's fees." *Dearmore*, 519 F.3d at 524. Plaintiffs cannot make such a showing, and it has not even attempted to do so.

Even if Plaintiffs could make that causal connection, as discussed, supra, the Fifth Circuit's ruling on mootness creates an independent obstacle to prevailing-party status under *Dearmore*. As long as that ruling remains in place, Plaintiffs' claim to prevailing-party status based on the SB 5 legislation necessarily fails. *See Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 796 (5th Cir. 2013) (holding a

plaintiff was not a prevailing party under *Dearmore* because it "ha[d] not explained how it can escape . . . from the district court's conclusion that the July Directive did not moot the case").

> ### 3. Successful opposition to State Defendants' petition for certiorari at the United States Supreme Court does not satisfy *Dearmore*.

Plaintiffs have not shown how a successful opposition to the State Defendants' petition for certiorari at the United States Supreme Court entitles them to prevailing-party status. The petition for certiorari asked the Supreme Court to review whether the Texas Legislature enacted SB 14 with a discriminatory purpose and whether the law results in a denial or abridgment of the right to vote under § 2. *Abbott v. Veasey*, 137 S. Ct. 612, 613 (2017). In issuing its denial, the Supreme Court stated that "[a]lthough there is no barrier to our review, the discriminatory purpose claim is in an interlocutory posture, having been remanded for further consideration. As for the § 2 claim, the District Court has yet to enter a final remedial order. Petitioners may raise either or both issues again after entry of final judgment. The issues will be better suited for certiorari review at that time." *Id.*

Although the Supreme Court ultimately denied the petition for certiorari, "there [wa]s no barrier to [thei]r review" and this did not result in the Plaintiffs becoming a prevailing-party for preliminary relief under *Dearmore*. The successful opposition (1) did not involve a preliminary injunction; (2) it was not based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff; and (3) it did not

cause the State Defendants to moot the action or prevent Plaintiffs from obtaining final relief on the merits. *Dearmore,* 519 F.3d at 524. On the contrary, as discussed *supra,* the litigation proceeded on remand, the State Defendants appealed the district court's rulings to the Fifth Circuit, and this Court ultimately issued a final judgment dismissing all claims against the State Defendants. Accordingly, Plaintiffs have not met their burden of proving any of the *Dearmore* requirements to obtain preliminary relief.

### C. Plaintiffs have Not Met Their Burden that Evidence Developed to Support Losing Claims was Necessary to Litigate Winning Claims.

In the event that the Court finds that Plaintiffs prevailed on their interim relief, Plaintiffs have not met their burden of proving that the time they billed in developing evidence to support their failed poll tax, unconstitutional burden, and discriminatory intent claims was necessary to litigate the the discriminatory results claim, which was the only claim that formed the basis for the interim remedial order.

Plaintiffs contend that under *Hensley* the time they spent on unsuccessful claims is compensable because it involves *related* legal theories seeking similar relief. *See* Doc. No. 1143-1, at 9; *see Hensley,* 461 U.S. at 434. Not so. Plaintiffs' discriminatory results claim centered on the allegedly cost prohibitive factor of obtaining an SB 14-compliant ID. The evidence needed to develop this claim involved the determination of the costs of the underlying documents. Any actual evidence of discriminatory intent by the Legislature in enacting SB 14 was not necessary or relevant for Plaintiffs to prove their Section 2 discriminatory results claim. Intent is not required to show a discriminatory result. Under the amended statute, proof of

intent is no longer required to prove a § 2 violation. Now plaintiffs can prevail under § 2 by demonstrating that a challenged election practice has resulted in the denial or abridgment of the right to vote based on color or race. *Chisom v. Roemer*, 501 U.S. 380, 383–84, 111 S. Ct. 2354, 2358, 115 L. Ed. 2d 348 (1991).  This demonstrates that all the time and effort Plaintiffs expended in pursuing deposition of individual legislators and hundreds of thousands of pages of documents were unnecessary.

Because the time billed on Plaintiffs' failed claims – poll tax, unconstitutional burden, and discriminatory intent – is not intrinsically intertwined or related to the legal theory of their discriminatory results claim, the Court should find that Plaintiff are not prevailing parties.  If the Court finds that they prevailed, the requested fee award is excessive and the Court should either require the Plaintiffs to segregate the fees and expenses, or apply a downward adjustment to the fee award under *Johnson* as discussed *infra*.

## II. Plaintiffs' requested award should be adjusted downward to account for the overall success, including claims upon which Plaintiffs did not prevail

Plaintiffs did not prevail on any claim. However, should the Court find that Plaintiffs obtained preliminary relief under *Dearmore* on the discriminatory results claim, the Court should reduce the overall fee award by 75% to account for the failure to segregate the amount billed and the expenses sought for Plaintiffs' three failed claims. *See Hensley*, 461 U.S. at 435 (when a plaintiff achieves only partial success, attorneys' fees should not be awarded for hours not "expended in pursuit of the ultimate result achieved"); *Lear Siegler Services v. Ensil Int'l Corp*, CIVA SA05-CV-

679-XR, 2009 WL 5195884 (W.D. Tex. Dec, 18, 2008) (applying Texas law) ("The Fifth Circuit follows the general rule that successful and unsuccessful claims should be segregated when calculating attorney's fees.")).

Claims upon which a party did not prevail are not appropriate for awards of attorney's fees.  In awarding attorney's fees, "the district court is required to consider not only the product of the hours worked multiplied by the billing rate, but also whether the plaintiff failed on alternative claims and whether the award is excessive in light of the plaintiff's overall level of success." *Romageura v. Gegenheumer*, 162 F.3d 893, 896 (5th Cir. 1998), *clarified on denial of reh'g*, 169 F.3d 223 (5th Cir. 1999). "When the plaintiff raises several claims and those claims involve a common core of facts or related legal theories, the district court need not attempt to divide counsel's hours among the claims.  Instead, it should focus on 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Id.* (citation omitted).

Given the limited "significance of the overall relief," Plaintiffs' requested award is excessive and should be reduced.  *See Johnson v. Ga.. Hwy Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974); *Romageura,* 162 F.3d at 896; *Hensley,* 461 U.S. at 434. One of the *Johnson* factors – the amount involved and the result obtained – is taken into consideration in whether to adjust the lodestar. *Johnson,* 488 F.2d at 717-19.[4] As

---

[4] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

discussed *supra,* Plaintiffs have the burden to prove that evidence developed to support losing claims was necessary to litigate winning claims, and they have not done so in this case. Thus, this weighs in favor of a downward adjustment.  State Defendants expended considerable resources and taxpayer money to defend against Plaintiffs' failed claims only to now have Plaintiffs request fees for these claims.

Due to the limited overall success obtained by the Plaintiffs, State Defendants request an overall reduction of 75% on account for the failure to segregate.  *See United States Football League v. National Football League*, 887 F.2d 408, 415 (2nd Cir. 1989) (Affirming district court's determination that bill be reduced by 20% to reflect a reasonable fee in light of the limited success achieved); *Myree v. Local 41, Int'l Bhd. of Elec. Workers*, 847 F. Supp. 1059, 1069 (W.D.N.Y.), aff'd sub nom; *Myree v. IBEW*, Local 41, 29 F.3d 620 (2d Cir. 1994) (Reducing Plaintiff's billing statements by 75% because his actual success in the action was limited).  Because the success in this case was substantially limited, the fees should be limited as well.

## III.   Merely Qualifying as a Prevailing Party Does Not Entitle a Party to Any or All of Its Requested Fees and Expenses; Prevailing Parties are Entitled Only to Reasonable Fees.

If the Court finds that Plaintiffs are prevailing parties for purposes of seeking fees, Plaintiffs must still prove that their request for fees is reasonable. *See Hensley*, 461 U.S. at 433. The Fifth Circuit follows a two-step process in making this determination. First, the court calculates the "lodestar" amount by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Rutherford v. Harris Cnty, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999). Second, the Court

considers whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case, and the factors set forth in *Johnson*, 488 F.2d at 714. The party seeking an award of attorney's fees pursuant to the lodestar method bears the burden of justifying any fee award. *See Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F.3d 795, 799 (5th Cir. 2006). Plaintiffs cannot justify the award they request: their request is unreasonable. Therefore, the Court should substantially reduce the fee awarded as discussed in more detail *infra*.

### A. Plaintiffs' Requested Hourly Rates Far Exceed the Prevailing Market Rate in Corpus Christi and Should be Substantially Reduced.

As the fee applicant, Plaintiffs bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Here, Plaintiffs fail to carry their burden of establishing the reasonableness of their proposed hourly rates for their counsel.

Plaintiffs request the Court to adopt the Washington D.C. USAO attorney's fees matrix – also known as the USAO Matrix – for 2018-2019 because they contend that the rates correspond with prevailing rates in the *San Antonio* market. *See* Doc. No. 1143-1, at 13. The Plaintiffs used the rates identified by the matrix for 2018-2019 and applied them to the years of experience of counsel for Plaintiffs at the time of the case. *See id.,* at 14.

The burden is on the Plaintiffs as the fee applicants to produce satisfactory evidence that the requested rates are in line with those prevailing in the community

for similar services by lawyers of reasonably comparable skill, experience, and reputation. *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum*, 465 U.S. at 896 n. 11). The Court should refrain from using the USAO matrix because Plaintiffs have not shown that they are entitled to hourly rates in the District of Columbia and because Plaintiffs have not shown that the rates are in line with hourly rates in Corpus Christi – the relevant community. The Court should further refrain from awarding Plaintiffs 2018-2019 rates for work performed from 2013-2016 to avoid the possibility of a windfall.

### 1.  The USAO Matrix is not appropriate.

The USAO Matrix is maintained and updated by the United States Attorney's Office for the District of Columbia.[5] The hourly rates in the USAO Matrix were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index.[6] Prior to 2015, the methodology used to compute rates in the matrix started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C. Cir. 1984), *cert. denied,* 472 U.S. 1021 (1985), and adjusted the rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington-Baltimore area.[7] The matrix has not been adopted by the Department of Justice generally for use outside the District of

---

[5] *See* USAO Matrix 2015-2019, *available at* https://www.justice.gov/usao-dc/file/796471/download (last accessed Oct. 9, 2019).
[6] *See id.,* at n.2.
[7] *See id.,* at n.4.

Columbia.[8]

      While the majority of the Plaintiffs are based in Texas, and the proceedings in this case were held in Corpus Christi, Texas, the Plaintiffs nonetheless request that the Court to award them attorney's fees based on the prevailing market rate in the Washington D.C. Metropolitan Area. *See* Doc. No. 1143-1, at 13-15. Plaintiffs do not cite any legal authority to support that their in-district legal counsel and out-of-district legal counsel should be paid out-of-district hourly rates based on the Washington D.C. Metropolitan Area legal market. Nor do the Plaintiffs contend that they should be awarded out-of-district rates because of the necessity to hire out-of-state attorneys for this case due to the unavailability of local Texas counsel. On the contrary, the Plaintiffs were represented by several experienced lead Texas counsel.

      "Reasonable fees" under Section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel. *Blum*, 465 U.S. at 895. In general, the "relevant community" for purposes of determining prevailing market rates is the district in which the case was filed. *See McClain*, 649 F.3d at 381. When it is necessary, however, for plaintiffs to retain an attorney from outside the district to ensure that their interests are adequately represented, the attorney's "home" jurisdiction is the relevant community. *Id.* at 382 ("[W]here out-of-district counsel are proven to be necessary to secure adequate representation for a civil-rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation.").

---

[8] *See id.,* at n.1.

In the redistricting litigation in *Davis v. Perry*, the Western District of Texas, San Antonio Division, held that *McClain* instructs the court to determine whether this is one of those "unusual cases" where out-of-district counsel are proven to be necessary to secure adequate representation for plaintiffs. 991 F. Supp. 2d 809, 841 (W.D. Tex. 2014), *supplemented,* CIV. SA-11-CA-788, 2014 WL 172119 (W.D. Tex. Jan. 15, 2014) and *rev'd sub nom. Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015), *cert. denied,* 136 S. Ct. 534 (2015). The *Davis* court, like the Court here, was also presented with the issue of whether to award plaintiffs' counsel rates normally charged to their clients in D.C. *Id.* at 841. The *Davis* court found that, "[a]lthough it might have been reasonable for Plaintiffs to hire D.C. counsel, Plaintiffs have failed to prove that it was necessary, as *McClain* requires." *Id.* at 843-44. The *Davis* court ruled that "local market rates should govern." *Id.* Most recently, the Western District of Texas, Austin Division, held that counsel for Whole Woman's Health will be compensated at the community rates in Austin despite their request for out-of-district rates. *Whole Woman's Health, et al. v. John Hellerstedt, et al.,* Cause No. 1:14-CV-284-LY, Doc. No. 297, at 21-25, August 9, 2019.

Like *Davis* and *Whole Woman's Health,* Plaintiffs have not met their burden of showing the necessity of hiring out-of-district counsel to warrant out-of-district rates. In fact, Plaintiffs do not claim that it was necessary to hire out-of-district counsel, only that the USAO matrix for assessing hourly rates in the Washington D.C. Metropolitan area should be utilized by the Court because the rates are similar to those in the San Antonio market. *See* Doc. No. 1143-1, at 13. This line of argument

fails for two reasons: 1) the relevant community for determining the prevailing market rate is not the District of Columbia or San Antonio because the suit was filed and proceeded through the Southern District in Corpus Christi; and 2) the rates in Corpus Christi are not similar to the rates in the USAO matrix.

### a. The relevant legal market is Corpus Christi.

First, the reasonable hourly rate is determined based on the rate charged in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Blum,* 465 U.S. at 895-96 n. 11; *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999). As the starting point for the lodestar analysis, the Court should use local Corpus Christi rates since the suit was filed and tried in this forum. Plaintiffs have presented no evidence that the relevant community should be San Antonio or the Washington D.C. Metropolitan area.

### b. The declarations from Plaintiffs' legal counsel do not support their rates.

Second, the Plaintiffs as the fee applicants bear the burden of producing satisfactory evidence that their requested rates are aligned with prevailing market rates in Corpus Christi. *See United States v. Cmty. Health Sys., Inc.,* CIV.A. H-09-1565, 2015 WL 3386153, at *8 (S.D. Tex. May 4, 2015), aff'd sub nom. *U.S., ex rel., Cook-Reska v. Cmty. Health Sys., Inc.*, 641 Fed. Appx. 396 (5th Cir. 2016). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum,* 465 U.S. at 896 n.11.

The declarations provided by Plaintiffs to support their proposed rates under the USAO maxtrix do not provide satisfactory evidence. Instead, the declarations are merely conclusory in stating that recent fee awards in the Southern District of Texas are similar to those in the USAO matrix. *See, e.g.,* Doc. No. 1145-1, at 7 (Ezra Declaration); Doc. No. 1145.17, at ¶ 4 (Garza Declaration). None of the declarations cite any recent fee awards in the Southern District, much less the Corpus Christi legal market. Mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate. *See Hensley,* 461 U.S. at 439 n. 15.

To support their requested rates, Plaintiffs rely on historical hourly rates awarded in other districts for work performed on redistricting matters. Although the Western District in *LULAC v. Perry* awarded legal counsel Rolando Rios and Jose Garza $350 per hour in 2007, the State did not dispute this requested rate for the legal market in San Antonio. *See* Doc. No. 1142-1, at 39. Similarly, although the Southern District, Galveston Division, awarded Jose Garza $425 per hour in 2012 in *Petteway v. Galveston, Texas,* 3:11-CV-511, 2012 WL 12877651, at *1 (S.D. Tex. May 22, 2012), the Fifth Circuit reversed the fee award. *Petteway v. Henry*, 738 F.3d 132, 141 (5th Cir. 2013). Moreover, the evidence relied upon by the court in assessing the hourly rate was based on a conclusory statement in a declaration with no supporting documentation of similar type of work in the Galveston legal market. *Petteway,* 2012 WL 12877651, at *1.

Likewise, in 2012, in *Vasquez-Lopez v. Medina Cty., Texas,* the Western District, San Antonio Division, awarded Jose Garza $425 per hour after the

defendants did not dispute the requested rate for the San Antonio legal market. Case No. 5:11-cv-00945-OLG, Doc. No. 18, at 1. While Plaintiffs rely on the State's 2001 stipulated rate of $325 per hour in the Tyler legal market for Jose Garza and Rolando Rios, MALC's counsel, in *Balderas v. Texas,* the State argued that MALC was not a prevailing party and could not be awarded any fees. Case No. 6:01-cv-00158-TJW, Doc. 512, at 3 n.4, April 23, 2002. The *Balderas* court found that the hourly rate of $325 was reasonable based on the State's stipulation, but awarded hourly rates between $175 to $200 as reasonable for legal counsel who's rates had not been stipulated. *Balderas v. State*, 6:01CV158, 2002 WL 32113829, at *1 (E.D. Tex. May 21, 2002).

In 2014, in assessing a reasonable hourly rate, the *Davis* court, in the Western District, San Antonio Division, reviewed the above fee awards from past redistricting litigation[9], the affidavits submitted in support and against the requested hourly rates, the 2011 State Bar of Texas Fact Sheet, awards in commercial cases in the Western District, and an affidavit from Richard Gray – an attorney allegedly familiar with prevailing market rates for voting rights redistricting litigation in Texas – filed in March 2013 in the *Fabela* case. 991 F. Supp. 2d at 845-47. *See Fabela v. City of Farmers Branch*, No. 3:10-CV-1425 (N.D. Tex.). Gray indicated that "$400-$450 an hour has been a more typical award by the federal courts to lawyers with extensive voting rights litigation experience." *Davis,* 991 F.Supp.2d at 845. Based on this

---

[9] Among the historical cases, the *Davis* court discussed hourly rates awarded in *Vera v. Bush,* H-94-0277 (S.D. Tex. Nov. 13, 1996), which awarded up to $400 for an appellate attorney with more than 30 years of experience. *Davis,* 991 F. Supp. 2d at 845. These rates are not applicable because they were awarded for appellate work before the U.S. Supreme Court. *LULAC,* Case No. 2:03-cv-00354-TJW, Doc. 340, at 23-25, August 18, 2006.

documentation, the court awarded an hourly rate of $418 to Gerald Hebert, an attorney with over 41 years of experience also appearing in this case, a reduction from the $650 hourly rate based on the Washington D.C. legal market that he was seeking. *Id.* at 847-48. The *Davis* court also awarded $324 for a senior associate and $252 per hour for a fourth-year associate. *Id.* at 848. Despite the availability of these historical rates, they were based on the San Antonio legal market – which is not the forum for this case – and never awarded based on the Fifth Circuit's reversal of the district court's judgment. *Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015).

Further, the cases cited in the Plaintiffs' motions to support their contention that recent fee awards in the Southern District are comparable to the USAO matrix are inapposite. *See* Doc. No. 1143.1, at 14. The cases do not support a prevailing market rate in Corpus Christi. *See Rouse v. Target Corp.,* 181 F.Supp.3d 379, 385 (S.D. Tex. Jan. 26, 2016) (award of attorney's fees in Galveston)[10]; *Jane Roe/Rachel V. Rose v. BCE Tech. Corp.*, 4:12-CV-1621, 2014 WL 1322979, at *1 (S.D. Tex. Mar. 28, 2014) (award of attorney's fees in Houston); *Preston Expl. Co., LP v. GSP, LLC*, CIV.A. H-08-3341, 2013 WL 3229678 (S.D. Tex. June 25, 2013) (award of attorney's fees in Houston); *Whitney Bank v. Hancock*, CIV.A. H-11-2164, 2013 WL 1404822 (S.D. Tex. Apr. 5, 2013) (award of attorney's fees in Houston).

According to Plaintiffs' expert, William R. Edwards, III, "the same senior lawyers whose rates are $400-$450 in Corpus Christi expect up to $1,000 per hour,

---

[10] The requested hourly rates awarded in *Rouse* - $500 for lead attorney and $300 for associate attorney – were not disputed by defendant Target. *See Rouse,* 181 F. Supp. 3d at 385 n.2. Thus, the rates awarded in *Rouse* do not provide an objective measurement of the prevailing market rate.

or more, when practicing in Houston." *See* Doc. 1143.3, at ¶ 5. Moreover, Plaintiffs admit that the rates in the cases they cite fall below the market rates in Washington, D.C. (where many of Private Plaintiffs' counsel practice) as well as the [LSI] *Laffey* matrix. *See* Doc. 1143-1, at 14-15. Despite this admission, Plaintiffs contend that the Court should award them rates under the USAO matrix, which is also based on the CPI-U for the Washington D.C. Metropolitan area. While the rates in the USAO matrix are lower than those in the LSI *Laffey* matrix, they are still above the rates for Corpus Christi.

Plaintiffs also erroneously state that a request for an hourly rate of $613 is reasonable because the State paid their outside counsel an hourly rate of $520 per hour in 2012 during the redistricting litigation. *See* Doc. No. 1142-1, at ¶ 13 n.1 (Rios Declaration). However, the hourly rate that the State agreed to provide its outside counsel in an appeal to the United States Supreme Court in *Davis* is not relevant to the prevailing market rate in Corpus Christi under a fee shifting statute. Fee shifting does not compel the agreed rate between client and counsel, only a reasonable rate. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) ("[W]e cannot agree that the mere fact that a party and a lawyer have agreed to a contingent fee means that the fee arrangement is in and of itself reasonable for purposes of shifting that fee to the defendant.").

Finally, Plaintiffs naively indicate that "Texas is on notice of the ordinary hourly rates in this matter" based on the District of Columbia's award of $650 an hour to J. Gerald Hebert in 2014 in *Texas v. United States*. *See* Doc. No. 1143.1, at 15

n.14. Plaintiffs do not take into consideration that this hourly rate was based on the legal market in the District of Columbia for the redistricting litigation, nor do they highlight for the Court that in that case the court found the State waived its right to object to the requested hourly rate. *Texas v. United States*, 49 F. Supp. 3d 27, 44 (D.D.C. 2014), aff'd, 798 F.3d 1108 (D.C. Cir. 2015). On the contrary, the State timely objects to the requested hourly rates in this case.

Accordingly, Plaintiffs have not produced affidavits indicating that the rates they seek are within the prevailing market rates for similar services by similar lawyers in Corpus Christi. As discussed *infra,* the prevailing market rate for Corpus Christi is much lower.

### c. Plaintiffs' expert and declarations from other attorneys do not support Plaintiffs' requested rates.

Additionally, the reasonable hourly rate for a particular community can be established through affidavits of other attorneys practicing there. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998) (criticizing the appellant because he "made no effort to show what his services are worth in Houston.")). The weight the court will give to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience; similarity of case and client; and breadth of the sample of which the expert has knowledge. *Cmty. Health Sys., Inc.,* CIV.A. H-09-1565, 2015 WL 3386153, at *8.

Significantly, Plaintiffs' own expert, William Edwards, III, does not support the proposed hourly rates. Instead, the cases cited by Edwards establish a rate much

lower than the proposed rates requested by Plaintiffs. *See* Doc. No. 1143-3 at ¶ 5 (citing cases in which the court found that $400 and $450 per hour was a reasonable rate for senior attorneys). Edwards himself – a local Corpus Christi attorney – requests an hourly rate of $450 as an expert on behalf of the Plaintiffs in this case. *See id.* at ¶ 8. Here, Plaintiffs request hourly rates up to $613 and well above $450 for several of the fee applicants. Neither the declarations from the Plaintiffs' legal counsel, nor Edwards, supports these rates in the Corpus Christi legal market.

Further, the declarations from other attorneys who are not counsel in this case are conclusory and fail to support the requested hourly rates. For instance, the declaration from Ricardo G. Cedillo in support of Rolando Rios' request for an hourly rate of $613 does not cite any similar cases where courts have awarded this type of rate, nor does Cedillo have any personal experience of prevailing rates in Corpus Christi since he practices in San Antonio. *See* Docket No. 1142-2. The declaration is merely conclusory with no supporting facts or documentation. It also appears that Cedillo does not support the $613 requested hourly rate because he indicates that a rate of $525 per hour is reasonable for Rios. *See id.* at 2.

### 2. The Court should not award 2018-2019 rates for work performed from 2013-2016.

Plaintiffs request that the Court award them hourly rates based on 2018-2019 rates, not the rates that were set at the time they performed the work in this case. *See* Doc. No. 1143-1. The majority of the work in this case was performed between 2013-2016.

Plaintiffs rely on *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 283–84 (1989), to support their request for 2018-2019 hourly rates. *See* Doc. 1143-1 n.13. According to *Jenkins,* "[a]n adjustment for delay in payment [i.e. applying current rates] is ... an appropriate factor in the determination of what constitutes a reasonable attorney's fee." 491 U.S. at 284. However, *Jenkins* and its progeny "do not create a presumption that an attorney's current hourly rate should be used in all cases, but rather in those cases where the trial court determines that there is a need to compensate the attorney for a delay in payment of fees." *Pollock v. Wetterau Food Distribution Group*, 11 S.W.3d 754, 774 (Mo. Ct. App. 1999).

Unlike *Jenkins,* Plaintiffs have not presented any evidence to the Court demonstrating a hardship based on the delay in payment. *Id.* at 283 n.6. *See Huber v. Wal-Mart Stores*, 04-2145, 2006 WL 1674306, at *3 (W.D. Ark. Mar. 31, 2006) (denying request for current rates because the facts did not reflect the extreme financial strain experienced by the attorney in *Jenkins*). Additionally, Plaintiffs have made no effort to explain why current rates are appropriate in this case, nor have they provided examples of recent cases in which courts applied current rates for fee awards.

To avoid any possibility of a windfall, plaintiffs' counsel typically seek rates during the time that they actually performed the legal services. *See Whole Woman's Health,* Case No. 1:14-cv-00284-LY, Doc. No. 146, at 8 n.6 (legal counsel for plaintiffs sought only the rates they actually charged clients in prior years to avoid any possibility of a windfall). "[T]he [fee-shifting] statute's purposes are not fulfilled if

counsel reap a windfall at the expense of a defendant by overcharging for their services." *McClain*, 649 F.3d at 383 (citing *Riverside v. Rivera*, 477 U.S. 561,580 (1986) ("Congress intended that statutory fee awards be adequate to attract competent counsel, but not produce windfalls to attorneys.")).

Because the fee award in this case will ultimately be paid by the State's taxpayers, the Court should determine whether it is reasonable and necessary to allow for current rates. "When claims for attorney's fees are brought against the government, courts should exercise special caution in scrutinizing the fee petition. This is because of the incentive which the [agency's] deep pocket offers to attorneys to inflate their billing charges and to claim far more as reimbursement [than] would be sought or could reasonably be recovered from most private parties." *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 54–55 (D.D.C. 2013) (quoting *Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.,* 743 F.2d 932, 941 (D.C. Cir. 1984) (internal quotation marks and citations omitted). *See Ctr. for Biological Diversity v. Norton,* 2005 WL 6127286, at *1 (D.D.C.2005) ("Courts must review fee applications carefully to ensure that taxpayers only reimburse prevailing parties for reasonable fees and expenses that contributed to the results achieved....").

Accordingly, the Court should use its discretion in finding that Plaintiffs have not met their burden of showing that they are entitled to 2018-2019 hourly rates for work performed between 2013-2016.

### 3.  Prevailing market rates in Corpus Christi.

Because the prevailing market rate is that charged for "similar services," the court considers the type of representation and the subject matter of the litigation. *Hoffman*, 2015 WL 3999171, at *2.

### a. *Johnson* factors.

In assessing a reasonable hourly rate, courts typically turn to the *Johnson* factors as a guide in determining the applicable lodestar rate for attorney's fees. *See Davis v. Bd. of Sch. Commissioners of Mobil Cty.,* 526 F.2d 865, 868 (5th Cir. 1976).

Under the *Johnson* factor relating to the novelty and difficulty of the questions, *see Johnson*, 488 F.2d at 718, the court in *Whole Woman's Health* examined other cases that challenged Texas laws as unconstitutional. Cause No. 1:14-CV-284-LY, Doc. No. 297, at 26, August 9, 2019. *See e.g. DeLeon, et al. v. Abbott, et al.,* 687 Fed. Appx. 340 (5th Cir. 2017) (challenge to Texas's prohibition on same-sex marriage in Article I, § 32 of the Texas Constitution and Texas Family Code §§ 2.001(b) and 6.204(b)); *see also American Academy of Implant Dentistry v. Parker,* No. 1:14-CV-00101-SS, 2018 WL 401818 (W.D. Tex. Jan. 11, 2018) (challenge to Texas Administrative Code § 108.54 prohibiting a licensed dentist from advertising as a specialist not recognized by the ADA).

In *Whole Woman's Health,* the plaintiffs challenged the constitutionality of two provisions of 2013 HB2 relating to the regulation of abortion procedures. *Whole Woman's Health v. Hellerstedt*, 833 F.3d 565, 567 (5th Cir. 2016). The court found that "the questions presented in this case were not novel beyond what other district courts in the Western District have addressed" through challenges to Texas laws and

that "[t]he issues, though emotionally charged, are neither difficult nor complex." *Whole Woman's Health,* Cause No. 1:14-CV-284-LY, Doc. No. 297, at 26, August 9, 2019. Based on the assessment of the *Johnson* factors and rates awarded in other cases challenging the constitutionality of Texas laws, the court awarded the legal counsel in *Whole Woman's Health* a maximum hourly rate of $400. *Id.* at 28. *See e.g. DeLeon, et al. v. Abbott, et al.,* Cause No. SA-13-CA-00982-OLG, Doc. No. 135, at 6 (W.D. Tex. Nov. 30, 2015) (awarding maximum hourly rate of $400 to attorney with 40 years of experience for San Antonio, Texas); *American Academy of Implant Dentistry,* 2018 WL 401818 at *3 (awarding maximum hourly rate of $400 to attorney with over 25 years of experience for Austin, Texas).

Here, the Plaintiffs challenged the constitutionality of SB14 and alleged violations of civil rights under the Fourteenth and Fifteenth Amendments and Section 2 of the Voting Rights Act. Similar to *Whole Woman's Health, DeLeon,* and *American Academy of Implant Dentistry,* the claims at issue in this case are solely challenges to actions by the Texas Legislature. Based on the rates awarded in these types of actions, the Court should find that a maximum hourly rate of $400 is applicable.

### b.  Recent hourly rates awarded in Corpus Christi.

The hourly rates requested by Plaintiffs are well outside the customary range of the legal community in Corpus Christi. As recently as 2017, this Court awarded attorneys from the Mexican American Legal Defense and Educational Fund ("MALDEF") hourly rates of $400 for a top supervising attorney with over 19 years of

experience; $300 for a mid-level attorney; and $175-200 for a more recently licensed attorney. In awarding these rates this Court opined that "it has been this Court's experience that this market generally does not bear rates in excess of that amount absent very extraordinary circumstances." *Am. GI Forum of Texas v. Normanna Cemetery Ass'n*, No. 2:16-CV-135, 2017 WL 7731228, at *3 (S.D. Tex. June 28, 2017).

To determine the prevailing market rate, judges – including this Court – regularly take judicial notice of the State Bar of Texas Department of Research and Analysis Hourly Fact Sheet ("Rate Report"). *Alex v. KHG of San Antonio, LLC, No.* 5:13-CV-0728 RCL, 2015 WL 5098327, at *3 (W.D. Tex. Aug. 28, 2015); *See Swiney v. Texas*, No. SA–06–CA–0941 FB NN, 2008 WL 2713756, at *5 (W.D. Tex. July 3, 2008) (noting that "[a] reasonable fee can be determined by examining the State Bar of Texas Hourly Rate Report" and using it to verify the reasonableness of the proposed fee amount). *See also Miller v. Raytheon Co.,* 716 F.3d 138, 149 (5th Cir. 2013) (holding that the district court is entitled to consider state bar surveys, fees in similar cases, and the skills of the attorneys in setting an hourly rate). The Rate Report is widely accepted because it details the hourly rates by years in practice, location, and type of practice. *Alex,* 2015 WL 5098327, at *3.

In 2016, this Court found that $400 is a reasonably hourly rate for partner/shareholder attorneys, $300 for mid-level, $250 for a less experienced attorney, and $115 for paralegals. *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-00295, 2016 WL 4594945, at *7 (S.D. Tex. Sept. 2, 2016). In making this assessment, the Court took into consideration the 2013 Rate Report pertaining to the

median hourly rate for an attorney in Corpus Christi and the median hourly rate range for the specific subject matter, and firm size. *Id.* at *8. As recent as this year, this Court also turned to the Rate Report in awarding a maximum hourly rate of $350 for shareholder/of counsel time and $300 for associate time in a copyright infringement case. *Hacienda Records, LP v. Ramos*, 2:14-CV-19, 2019 WL 93306, at *8 (S.D. Tex. Jan. 3, 2019). In arriving at these hourly rates, the Court examined the median hourly rate in Texas in 2015 and compared the median hourly rates in Houston pertaining to relevant subject matters. *Id.*

Here, the Court should also use the Rate Report as an objective reference point in determining the prevailing hourly rate for Plaintiffs' counsel. The majority of the work performed by Plaintiffs in the underlying case was between 2013 and 2016. According to the 2015–2016 Rate Report[11], the median hourly rate in Corpus Christi was $250, and the overall median hourly rate in Texas was $288. The median hourly rates in Houston for the following practice areas relevant to this case were: commercial litigation $295; business $300; and labor and employment $285. The median hourly rate for an attorney with over 25 years of experience in Corpus Christi was $269. Based on these rates and the rates awarded by this Court in recent cases, a reasonable maximum hourly rate for Plaintiffs' counsel is $400 for senior level attorneys; $300 for mid-level associates; $250 for lower-level associates; and $115 for paralegals.

---

[11] *See* State Bar of Texas Department of Research and Analysis 2015 Hourly Fact Sheet, *available at* https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (last accessed October 9, 2019).

As discussed *supra,* Plaintiffs have not met their burden that their requested hourly rates up to $613 are reasonable and based on the legal market in Corpus Christi. Section 1988's aim is to enforce the covered civil rights statutes, not to provide "a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986), *supplemented,* 483 U.S. 711 (1987). The hourly rate must be "adequate to attract competent counsel," but the "measure is not the rates which lions at the bar may command." *Leroy v. City of Houston,* 906 F.2d 1068, 1079 (5th Cir. 1990).

Based on the 2015-2016 Rate Report and recent awards in this Court, the following table shows the maximum fees recoverable by Plaintiffs' counsel in the Corpus Christi legal market:

| Name of Attorney/Paralegal | Law School Graduation Year | Proposed Hourly Rate | Hours | Total Requested | Hourly Rate Requested | Total Proposed by State Defendants |
|---|---|---|---|---|---|---|
| Armand Derfner (Veasey-LULAC) | 1963 | $613 | 1,204.10 | $738,113.30 | $400 | $481,640.00 |
| J. Gerald Hebert (CLC for Veasey-LULAC) | 1973 | $613 | 473.4 | $290,194.20 | $400 | $189,360.00 |
| Danielle Lang (CLC for Veasey-LULAC) | 2012 | $351 | 206 | $72,306.00 | $250 | $51,500.00 |
| Joshua Bone (CLC for Veasey-LULAC) | 2013 | $307 | 325 | $99,775.00 | $250 | $81,250.00 |
| Emma Simson (CLC for Veasey-LULAC) | 2013 | $307 | 1042 | $319,884.80 | $250 | $260,500.00 |
| Chad Dunn (Brazil & Dunn for Veasey-LULAC) | 2002 | $491 | 999.20 | $490,607.20 | $300 | $299,760 |
| Scott Brazil (Brazil & Dunn for Veasey-LULAC) | 1984 | $572 | 265.40 | $151,808.80 | $400 | $106,160.00 |
| Neil Baron (Veasey-LULAC) | 1986 | $572 | 254.60 | $145,631.12 | $400 | $101,840.00 |
| Rolando Rios (HJ&C) | | $613 | 389.33 | $220,269.29 | $400 | $155,732.00 |
| Jose Garza (Taylor Plaintiffs) | 1978 | $613 | 472.9 | $289,887.70 | $400 | $189,160.00 |
| Marinda Van Dalen (Taylor Plaintiffs) | 1993 | $544 | 1159 | $630,496.00 | $300 | $347,700.00 |
| Robert Doggett (Taylor Plaintiffs) | 1990 | $572 | 149.8 | $83,969.60 | $300 | $44,940.00 |
| Ezra D. Rosenberg (NAACP and MALC) | 1974 | $613 | 469.95 | $288,079.35 | $400 | $187,980 |
| Mark Posner (NAACP and MALC) | 1980 | $613 | 435.7 | $267,084.10 | $400 | $174,280.00 |
| Ezra Rosenberg – MALC and NAACP | 1974 | $613 | 1042.7 | $639,175.10 | $400 | $417,080.00 |
| Michelle Yeary (NAACP) | 1995 | $544 | 630.3 | $342,883.20 | $300 | $189,090.00 |
| Amy Rudd (NAACP) | 2000 | $491/544 | 460.1 | $234,802.50 | $275 | $126,527.50 |

| Name | Year | Rate | Hours | Total | Rate | Total |
|---|---|---|---|---|---|---|
| Lindsey Cohan (NAACP) | 2009 | $351/358 | 752.2 | $267,443.80 | $250 | $188,050.00 |
| Antonella Capobianco (paralegal) (NAACP) | N/A | $166 | 398.7 | $66,184.20 | $100 | $39,870.00 |
| Myrna Perez (NAACP and MALC) | 2003 | $417/491 | 529.7 | $235,702.10 | $250 | $132,425.00 |
| Daniel Covich (NAACP) | 1987 | $572 | 40 | $22,880 | $350 | $14,000 |
| Gary L. Bledsoe (NAACP) | 1976 | $613 | 75.6 | $46,342.80 | $400 | $30,240.00 |
| Robert Notzon (NAACP – Intervenor) | 1997 | $544/ $572 (2017-) | 42.3 | $23,039.20 | $350 | $14,805.00 |
| Jose Garza (MALC) | 1978 | $613 | 82.9 | $50,817.70 | $400 | $33,160.00 |
| Leah C. Aden – (Imani Clark Plaintiff Intervenor) | 2006 | $417 | 212.5 | $86,216.00 | $300 | $63,750.00 |
| Natasha Korgaonkar (Imani Clark Plaintiff Intervenor) | 2007 | $358 | 659.5 | $247,763.40 | $250 | $164,875.00 |
| Deuel Ross (Imani Clark Plaintiff Intervenor) | 2009 | $351 | 231.4 | $81,766.20 | $250 | $57,850.00 |
| Janai Nelson (Imani Clark Plaintiff Intervenor) | 1996 | $544 | 146.7 | $81,766.20 | $300 | $44,010.00 |
| Ryan Haygood (Imani Clark Plaintiff Intervenor) | 2001 | $491 | 547.7 | $268,920.70 | $250 | $136,925.00 |
| Jonathan Paikin (Imani Clark Plaintiff Intervenor) | 1996 | $544 | 29.7 | $16,156.80 | $300 | $8,910.00 |
| Sonya Lebsack (Imani Clark Plaintiff Intervenor) | 2005 | $351 | 256.1 | $90,701.00 | $250 | $64,025.00 |
| Hasan Ali (Imani Clark Plaintiff Intervenor) | 2010 | $340 | 156.1 | $53,316.00 | $250 | $39,025.00 |
| Danielle Conley (Imani Clark Plaintiff Intervenor) | 2003 | $417 | 302.4 | $146,465.60 | $250 | $75,600.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Kelly Dunbar (Imani Clark Plaintiff Intervenor) | 2004 | $417 | 456.8 | $190,840.80 | $250 | $114,200.00 |
| Daniel Aguilar (Imani Clark Plaintiff Intervenor) | 2010 | $340/$351 | 22.4 | $7,858.00 | $250 | $5,600.00 |
| Gerard Sinzdak (Imani Clark Plaintiff Intervenor) | 2008 | $351 | 59.6 | $20,919.60 | $250 | $14,900.00 |
| Richard Shordt (Imani Clark Plaintiff Intervenor) | 2010 | $340 | 636.9 | $220,618.00 | $250 | $159,225.00 |
| Lynn Eisenberg (Imani Clark Plaintiff Intervenor) | 2012 | $307 | 174 | $57,259.20 | $250 | $43,500.00 |
| Tania Faransso (Imani Clark Plaintiff Intervenor) | 2010 | $351 | 389.7 | $136,787.20 | $250 | $97,425.00 |
| Matthew Thome (Imani Clark Plaintiff Intervenor) | 2008 | $358 | 44.2 | $15,823.60 | $250 | $11,050.00 |
| Matthew Robinson (Imani Clark Plaintiff Intervenor) | 2012 | $340 | 63.5 | $21,590.00 | $250 | $15,875.00 |
| Thaddeus Eagles (Imani Clark Plaintiff Intervenor) | 2015 | $307 | 14.5 | $4,451.50 | $250 | $3,625.00 |
| **TOTAL:** | | | **11,695.23** | **8,113,759.43** | | **$4,977,419.50** |

According to the above chart, Plaintiffs' hourly rates substantially exceed the rates under the Rate Report and reflect a difference of $3,127,539.93 in attorney's fees for all 11,655.23 billed hours. In assessing a reasonable hourly rate for the Corpus Christi legal market, the Court should award no more than $4,977,419.50 in attorney's fees.

## B. The Plaintiffs' Counsel Did Not Expend a Reasonable Number of Hours

"The starting point for determining a lodestar fee award is the number of hours "'reasonably expended on the litigation.'" *Hensley,* 461 U.S. at 433. A court is not only required to determine whether the total hours claimed are reasonable, but also whether particular hours claimed were "reasonably expended." *La. Power & Light Co.,* 50 F.3d at 325; *LULAC,* 119 F.3d at 1232. In order to obtain attorney's fees from the State Defendants, Plaintiffs' counsel must meet their burden of justifying their fee award and proving that they exercised billing judgment. *See Saizan*, 448 F.3d at 799; *see also Hensley,* 461 U.S. at 434, 437 ("'[B]illing judgment'" is to be exercised "with respect to hours worked," consistent with the requirement that "'[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'").

Although the Plaintiffs assert that they exercised reasonable billing judgment by reducing their own time entries and eliminating categories of time, the Plaintiffs fail to state how many hours were deducted and, in some instances, the specific categories of time that were deducted. *See* Doc. No. 1174.2 at ¶ 11; Doc. No. 1174.11 at ¶ 5; Doc. No. 1174.16; Doc. No. 1174.20 at ¶¶5-6; Doc. No. 1174.24 at ¶¶7-9. As such, it is impossible to determine whether the Plaintiffs did in fact use billing judgment. Additionally, a review of the fee request demonstrates that Plaintiffs' counsel failed to exercise adequate billing judgment.

### A. The Plaintiffs Cannot Recover For Travel Time and Additional Time Submitted After the Attorneys' Fee Deadline

In an effort to reduce the issues for the Court, Defendants requested to meet and confer with Plaintiffs.  Although Plaintiffs agreed to look at their billing and reduce time for the issues brought up by Defendants, they did not do so.  Instead, Plaintiffs' attorneys *added* time to their billing records to include travel time at half the rate, stating it was at the encouragement of the State Defendants[12]. One Plaintiff added time from submitting his fees to current.  All added submissions are in green while deleted admissions are in red.  It is clear that no billing judgment was exercised when comparing the two.  *See* Doc. No. 1174.3.  This is not only egregious and inaccurate, but untimely and unfair.  State Defendants agreed to an extension of deadlines to allow for updated billing records to reflect a reduction of the time spent billing pro hac vice requests, clerical entries, vague entries, and block billing entries. Not to add additional time.  The following chart shows the difference in hours after the revised rates.  Defendants ask that any increase in time and added entries after the April 11, 2019 deadline be struck.

| Clark | Initial | | Revised | |
|---|---|---|---|---|
| | **Atty Fee** | **Expense** | **Atty Fee** | **Expense** |
| LDF | $765,736.30 | $138,975.09 | $795,439.75 | $136,635.97 |
| WilmerHale | $982,787.50 | $25,000.00 | | $25,000.00 |
| **TOTAL** | **$1,773,523.80** | **$163,975.09** | **$1,803,227.25** | **$161,635.97** |

---

[12] Plaintiffs state they did this, "in compliance with authorities provided by the State in the meet and confer process." Doc. No. 1145-1.  This is disingenuous and completely mischaracterizes the reason for the meet and confer and what was discussed in the process.

| HJ&C | Initial | | Revised | |
|---|---|---|---|---|
| | **Atty Fee** | **Expense** | **Atty Fee** | **Expense** |
| Rolando Rios | $220,269.29 | $654.37 | $220,269.29 | $654.37 |
| **TOTAL:** | **$220,269.29** | **$654.37** | **$220,269.29** | **$654.37** |

| Taylor | Initial | | Revised | |
|---|---|---|---|---|
| | **Atty Fee** | **Expense** | **Atty Fee** | **Expense** |
| TRLA | $220,269.29 | $44,273.62 | | |
| **TOTAL:** | **$1,004,353.30** | **$44,273.62** | | |

| Texas NAACP/MALC | Initial | | Revised | |
|---|---|---|---|---|
| | **Atty Fee** | **Expense** | **Atty Fee** | **Expense** |
| Dechert | $1,550,488.80 | $269,053.16 | $1,484,304.60 | $267,418.95 |
| Lawyers' Committee | $555,163.45 | $16,883.09 | $583,962.19 | $16,883.09 |
| Brennan Center | $235,701.10 | $53,142.08 | $246,689.90 | $51,405.95 |
| Texas NAACP | $69,382.00 | $568.97 | $67,812.95 | $898.75 |
| MALC | $50,817.70 | $2,016.04 | $50,817.70 | $2,016.04 |
| **TOTAL:** | **$2,461,553.05** | **$341,663.34** | **$2,433,587.34** | **$338,622.78** |

| Veasey-LULAC | Initial | | Revised | |
|---|---|---|---|---|
| | **Atty Fee** | **Expense** | **Atty Fee** | **Expense** |
| Campaign Legal Center | $782,160.00 | $114,533.37 | $768,733.14 | $111,003.27 |
| Brazil & Dunn | $642,416.00 | $299,911.64 | $663,834.55 | $299,915.29 |
| Derfner & Altman | $738,113.30 | $13,673.82 | $714,512.80 | $13,623.82 |
| Law Offices of Neil Baron | $145,631.12 | $2,115.83 | $164,078.20 | $2,115.83 |
| William Edwards | | $2,700.00 | | $2,700.00 |
| **TOTAL:** | **$2,308,320.42** | **$430,234.66** | **$2,311,158.69** | **$429,358.21** |

| | Initial | Revised |
|---|---|---|
| **GRAND TOTAL FEES** | **$7,769,020.94** | **$7,772,595.87** |
| **GRAND TOTAL EXPENSES** | **$980,801.08** | **$974,544.95** |

## B. The Plaintiffs are Not Entitled to Recover Their Full Hourly Rates for Hours Billed While Traveling.

Time spent for travel should not be billed at the same hourly rate sought for active legal work and should be reduced by fifty percent. *See Hopwood v. State of Tex.,* 999 F. Supp. 872, 914 (W.D. Tex. 1998) *aff'd in part, rev'd in part sub nom. Hopwood v. State of Texas*, 236 F.3d 256 (5th Cir. 2000) (reducing fees for travel time by fifty

percent); *Bd. of Supervisors of La. State Univ. v. Smack Apparel,* No. 04–1593, 2009 WL 927996, at *6 (E.D. La. Apr.2, 2009) ("[T]ravel time ... in the Fifth Circuit is usually compensated at 50% of actual time."); *cf. Alex v. KHG of San Antonio, LLC, No.* 5:13-CV-0728 RCL, 2015 WL 5098327, at *5 (W.D. Tex. Aug. 28, 2015) (reducing fees for travel time by fifty percent since billing records were unclear whether any work was performed while in transit). The below chart shows the requested fees for travel:

| Name of Attorney/Paralegal | Hrs | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate (50% reduction) | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate (50% reduction) |
|---|---|---|---|---|---|
| Rios, Rolando | 58.5 | $613 | $17,930.25 | $400 | $11,700.00 |
| **TOTAL for Rios and (HJ&C)** | 58.5 | | $17,930.25 | | $11,700.00 |
| Ross, Deuel | 47.7 | $351 | $8,371.35 | $250 | $0 (added after deadline) |
| Aden, Leah | 33.7 | $417 | $7,026.45 | $300 | $0 (added after deadline) |
| Haygood, Ryan | 33.7 | $491 | $8,273.35 | $250 | $0 (added after deadline) |
| Korgaonkar, Natasha | 33.7 | $358 | $6,032.30 | $250 | $0 (added after deadline) |
| **TOTAL for LDF (Imani Clark)** | 148.8 | | $29,703.45 | | $0 (added after deadline) |
| Rosenberg, Ezra (Dechert) | 24 | $613 | $7,356.00 | $400 | $4,800.00 |
| Yeary, Michelle | 12 | $544 | $3,264.00 | $300 | $1,800.00 |
| **TOTAL for Dechert** | **36** | | **$10,620.00** | | **$6,600.00** |
| Posner, Mike | 16.95 | $613 | $5,195.18 | $400 | $3,390.00 |
| Rosenberg, Ezra (LC) | 6 | $613 | $1,839.00 | $400 | $1,200.00 |
| **TOTAL for LC** | **22.95** | | **$7,034.18** | | **$2,360.00** |
| Garza, Jose (MALC) | 11.8 | $613 | $3,616.70 | $400 | $2,360.00 |
| **TOTAL for Gaza-MALC** | **11.8** | | **$3,616.70** | | **$2,360.00** |
| Bledsoe, Gary | 8 | $613 | $2,452.00 | $400 | $1,600.00 |

| | | | | |
|---|---|---|---|---|
| **TOTAL for Bledsoe** | 8 | | **$2,452.00** | | **$1,600.00** |
| **TOTAL for NAACP & MALC** | 78.75 | | $23,722.88 | | $15,150.00 |
| Derfner, Armand | 4 | $613 | $1,226.00 | $400 | $800.00 |
| **TOTAL for Derfner (Veasey-LULAC)** | **4** | | $1,226.00 | | $800.00 |
| Doggett, Robert | 26.8 | $572 | $7,664.80 | $300 | $4,020.00 |
| Garza, Jose | 59.7 | $613 | $18,298.05 | $400 | $11,940.00 |
| Van Dalen, Marinda | 44.8 | $544 | $12,185.60 | $300 | $6,720.00 |
| **TOTAL for TRLA (Taylor)** | **131.3** | | $38,148.45 | | $22,680.00 |
| **GRAND TOTAL** | **421.3** | | $110,731.03 | | $50,330.00 |

*See* Exhibits A-1, B-1, C-1, D-1, and E-1. Based on the above chart, the Court should reduce the fee award for travel to no more than $50,330.00.

### C. The Court Must Reject Purely Clerical Hours.

The Court must review the fee requests and not award fees for "purely clerical or secretarial tasks" regardless of who performs them. *Role Models Am., Inc.,* 353 F.3d at 973 (citing *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 2472 n. 10 (1989)) (denying fees for time spent by associate and legal assistant for filing briefs); *see also Meese,* 907 F.2d at 1203 ("The court ... deducts those charges by both paralegals and law clerks for such tasks as 'delivering' or 'picking up' various documents.... In our view, such tasks are 'purely clerical or secretarial' and thus cannot be billed at paralegal or law clerk rates."); *Democratic Cent. Comm. v. Wash. Metro. Area Transit Comm'n,* 12 F.3d 269, 272 (D.C. Cir. 1994) (per curiam) (paralegal work denied as "unrecoverable overhead expense").

To recover attorney's fees for work performed by legal assistants, "the evidence must establish: (1) the qualifications of the legal assistant to perform *substantive* legal work; (2) that the legal assistant performed *substantive* legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant." *Multi–Moto Corp. v. ITT Commercial Fin. Corp.,* 806 S.W.2d 560, 570 (Tex. App.—Dallas 1990, writ denied) (emphasis added); *El Apple I,* 370 S.W.3d at 248. Paralegal fees have been denied absent such proof. *Id.* (citing *Moody v. EMC Servs., Inc.,* 828 S.W.2d 237, 248 (Tex. App.—Houston [14th Dist.] 1992, writ denied)).

The time entries prepared by the Plaintiffs' counsel contain multiple entries for time such as preparing calendaring, scheduling depositions, downloading and organizing documents, and electronically filing documents, performed by both legal counsel and paralegals. *See* Exhibits A2 through E-2.  This Court has found that these types of tasks are clerical rather than legal in reducing fee awards. *See Martinez v. Refinery Terminal Fire Co.*, 2:11-CV-00295, 2016 WL 4594945, at *6 (S.D. Tex. Sept. 2, 2016) ("Examples of clerical tasks include calendaring, printing, filing, obtaining information about court procedures, and delivering pleadings.") (citing *Ramirez v. Lewis Energy Group, L.P.*, 197 F. Supp. 3d 952, 958 (S.D. Tex. 2016); *Prime Ins. Syndicate, Inc. v. Jefferson*, 547 F. Supp. 2d 568, 575 (E.D. La. 2008)).

Because these types of tasks do not involve *substantive* legal work, they are non-recoverable. *El Apple I,* 370 S.W.3d at 248; *Multi–Moto Corp.,* 806 S.W.2d at 570.

The following table summarizes the approximately 719.5 hours submitted by the Plaintiffs for non-substantive legal work that should be removed from the fee award:

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate |
|---|---|---|---|---|---|
| Brazil, Scott | 3.4 | $572 | $1,944.80 | $400 | $1,360 |
| Dunn, Chad | 58.1 | $491 | $28,527.10 | $300 | $17,430 |
| **TOTAL for Brazil & Dunn** | **61.5** | | **$30,471.90** | | **$18,790** |
| Simson, Emma | 23.2 | $307 | $7,122.40 | $250 | $5,800 |
| Lang, Danielle | .3 | $351 | $105.30 | $250 | $75 |
| **TOTAL for CLC** | **23.5** | | **$7,227.70** | | **$5,875** |
| **TOTAL for Baron, Neil** | **14.7** | **$572** | **$8,408.40** | **$400** | **$5,880** |
| **TOTAL for Veasey-LULAC** | **99.7** | | **$46,108.00** | | **$30,545** |
| **TOTAL for Rios, Rolando (HJ&C)** | **27.8** | **$613** | **$17,041.40** | **$400** | **$11,120** |
| Yeary, Michelle | 2 | $544 | $1,088.00 | $300 | $600 |
| Rudd, Amy | .5 | $491 | $246.00 | $250 | $125 |
| Cohan, Lindsey | 186.3 | $358 | $66,695.00 | $250 | $46,575 |
| Rosenberg, Ezra | 7 | $613 | $4,291.00 | $400 | $2,800 |
| Capobianco, Antonella | 362.2 | $166 | $60,125.00 | $100 | $36,220 |
| **TOTAL for Dechert** | **558** | | **$132,445.00** | | **$86,320** |
| Rosenberg, Ezra (Lawyer's Committee) | 2.4 | $613 | $1,471.00 | $400 | $960 |
| **TOTAL for LC** | **2.4** | | **$1,471.00** | | **$960** |
| **TOTAL for Garza, Jose** | **5.8** | **$613** | **$3,555.00** | **$400** | **$2,320** |
| **TOTAL for NAACP & MALC** | **566.2** | | **$137,472** | | **$89,600** |
| Garza, Jose | 8.5 | $613 | $5,210.50 | $400 | $3,400 |
| Van Dalen, Marinda | 17.3 | $544 | $9,411.20 | $300 | $5,190 |
| **TOTAL for TRLA (Taylor)** | **25.8** | | **$14,621.70** | | **$8,590** |
| **GRAND TOTAL** | **719.5** | | **$215,243.10** | | **$139,855** |

*See* Exhibits A2 through E-2.

Based on the Plaintiffs' requested hourly rates, the Plaintiffs have billed for approximately $215,243.10 in attorney's fees for clerical non-substantive work that the Court should reduce overall from the Plaintiffs' fee award. Based on the State Defendants' proposed hourly rates, Plaintiffs have billed for approximately $139,855 in attorney's fees, which the Court should reduce from the overall fee award.

### D. The Plaintiffs' Fee Request Should be Reduced for Vague, Excessive, and Potentially Duplicative Fees.

In support of their fee request, Plaintiffs' counsel must detail the work performed with enough specificity to allow a court to determine the reasonableness of the hours claimed. *See Hensley*, 461 U.S. at 433; *Ragan v. Comm'r*, 135 F.3d 329, 335 (5th Cir. 1998) (counsel seeking fee award cannot merely submit a broad summary of work performed and the hours logged, but rather must present "adequate evidence of the hours spent on the case and that those hours were reasonably expended"). To determine the reasonable hours spent by counsel, courts should exclude, if the plaintiff has not already, charges for duplicative, excessive, unnecessary, or inadequately documented work. *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993). Only those hours that survive this vetting process are considered hours "reasonably expended on the litigation" and subject to a fee award. *Hensley*, 461 U.S. at 432-34.

### 1. The State Defendants Should Not be Billed for Plaintiffs' Overstaffing.

With no less than 40 attorneys assigned to represent Plaintiffs in this matter, duplication of effort and excessive billing is inevitable. To this end, the Court must exclude hours from the fee award for time "spent in the passive role of an observer while other attorneys performed." *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982). *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (No compensation is due for unproductive time such as where three attorneys are present at a hearing when one would suffice); *see also Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir.

1990) ("Hours which, though actually expended, nevertheless are excessive, redundant, or otherwise unnecessary, or which result from the case being overstaffed, are not hours reasonably expended and are to be excluded" from a fee award.)

Throughout the case, multiple attorneys representing the Plaintiffs attended depositions, trial, and appellate arguments at the Fifth Circuit; yet did not contribute to the record, meaningfully or otherwise. Several attorneys, nevertheless, seek compensation for time "spent in the passive role of an observer." These hours (and corresponding travel expenses) should be disallowed and deducted from Plaintiffs' reimbursement request.

Plaintiffs, as a matter of course, had multiple attorneys attend the court status conferences and hearings, when only a few attorneys participated.[13] By overstaffing with passive observers, Plaintiffs' counsel accumulated an enormous amount of fees (and expenses). Non-participating attorneys, as shown in the chart below, now seek payment for 200.2 hours spent observing and/or not actively participating in hearings, in addition to reimbursement for travel expenses.

The State Defendants request that the Court award only attorney's fees and expenses to the attorney who participated at the hearing.  For example, the court held a hearing on February 12, 2014, which was billed by Dunn, Hebert, Simson, Baron, Rosenberg, and Rios.  However, Hebert, Simson, nor Baron spoke or participated in the hearing.  Since all three attorneys represented the Veasey-LULAC Plaintiffs but did not participate, we ask the Court to eliminate these fee requests

---

[13] *See* Exhibit F, Hearing Dates and Times (data obtained from minute entries on Court's docket report).

from the award. This is also true for the hearings conducted on February 14, March 5, April 1, 8, May 15, 20, 28, June 6, 18, July 24, 30, August 6, and 14, 2014.  Similarly, the same is true for the trial.  Numerous Plaintiffs' attorneys attended the trial but did not have an active role.  This is true for the September 2, 3, 4, 5, 8, 9, 10, and 11, 2014 hearings. Additionally, there are several hours billed by attorneys who did not appear.  For example, Brazil billed for hearings on March 5, 2014 and May 1, 2014, but did not attend; Simson billed for a hearing on June 6, 2014, but is not on record as appearing for that hearing; and Conley billed for a hearing on June 24, 2014, but did not appear on the record. The chart below shows the maximum amount of fees that Plaintiffs Veasey-LULAC and Plaintiff-Intervenor Imani Clark can obtain in a fee award for attendance at hearings and trial:

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate |
|---|---|---|---|---|---|
| Brazil, Scott | 41.2 | $572 | $23,566.40 | $400 | $16,480 |
| **TOTAL for Brazil & Dunn** | **41.2** | | **$23,566.40** | | **$16,480** |
| Hebert, Gerald | 31.8 | $613 | $19,493.40 | $400 | $12,720 |
| Simson, Emma | 46.7 | $307 | $14,336.90 | $250 | $11,675 |
| **TOTAL for CLC** | **78.5** | | **$33,830.30** | | **$24,395** |
| **TOTAL for Baron, Neil** | **5.5** | **$572** | **$3,146** | **$400** | **$2,200** |
| **TOTAL for Derfner, Armand** | **1** | **$613** | **$613** | **$400** | **$400** |
| **TOTAL for Veasey-LULAC** | **126.2** | | **$61,155.70** | | **$43,475** |
| Dunbar, Kelly | 47.5 | $417 | $19,807.50 | $250 | $11,875 |
| Conley, Danielle | 22.1 | $417 | $9,215.70 | $250 | $5,525 |
| **TOTAL for Wilmer Hale** | **69.6** | | **$29,023.20** | | **$17,400** |
| Korgaonkar, Natasha | 2 | $358 | $716 | $250 | $500 |
| **TOTAL for LDF** | **2** | | **$716** | | **$500** |
| **TOTAL for Imani Clark** | **71.6** | | **$29,739.20** | | **$17,900** |
| **GRAND TOTAL** | **197.8** | | $90,894 | | **$61,375** |

*See* Exhibit F.

The State Defendants request that the Court award only attorney's fees and expenses to the attorney who presented or argued at each hearing.  Accordingly, the Court should reduce the overall requested fee to Plaintiffs by $61,375; reduction of $43,475 to Veasey-LULAC Plaintiffs and $17,900 to Imani Clark Intervenor-Plaintiff.[14]

### 2.   Plaintiffs' Fee Request Should be Reduced for Duplicative Billing.

Based on the billing entries, Plaintiffs' counsel also double-billed some of their time. "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized."  *Walker v. United States HUD*, 99 F.3d 761, 768 (5th Cir. 2001).  The Plaintiffs here have many instances of multiple attorneys on multiple phone calls, attending the same hearings, and working on the same sections of briefs.

For example, Myrna Perez has many entries regarding the appellate brief and comments and edits from the Lawyers' Committee.  *See, e.g.*, Exhibit B-3 at p.2.  If multiple attorneys from the Lawyers' Committee have already edited and responded to the draft appellate brief, it seems unnecessary and duplicative for Perez to also respond.  Ryan Haygood also has several examples of attending depositions as second chair, not only is he in a passive role as discussed above, this is a duplication of efforts.  *See* Exhibit C-3 at page 2. Natasha Korgaonkar also billed for reviewing Keith

---

[14] The docket sheet shows that only one attorney for each of the other Plaintiffs appeared at each of the hearings, or not at all. Thus, the State Defendants limit the reduction of the fee award for overstaffing at hearings and trial to the Veasey-LULAC Plaintiffs and Imani Clark Intervenor-Plaintiffs.

Ingram's deposition and attending that deposition as well as Deuel Ross. *Id.* at page 3. She also bills for a passive position in Michelle Bessiake's deposition. *Id.* All of these attorneys also billed for participating in trial, even though only a handful of the attorneys that attended trial actually presented a witness. Janai Nelson and Natasha Korgaonkar both billed for mooting the same fifth circuit oral argument and briefing. *Id.* at page 5. Deuel Ross has many duplicative entries for participating as second chair in depositions and for en banc briefing with many attorneys in the same firm. *Id.* at page 6-7. Armand Derfner billed for drafting the findings of fact and conclusions of law as well as several other attorneys. *See* Exhibit D-3 at page 10. The bulk of the duplicative hours come in the conferences with the Plaintiffs' group. Although they have stated they split up work for efficiency, the hours show a significant amount of time discussing the case as well as working on the same drafts and arguments.

The chart below shows that the Plaintiffs' counsel seek 2683.25 hours of duplicative work:

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate |
|---|---|---|---|---|---|
| Brazil, Scott | 123.1 | $572 | $70,413.20 | $400 | $49,240 |
| Dunn, Chad | 16.4 | $491 | $8,052.40 | $300 | $4,920 |
| **TOTAL Brazil & Dunn** | **139.5** | | **$78,465.60** | | **$54,160** |
| Hebert, Gerald | 93.3 | $613 | $57,192.90 | $400 | $37,320 |
| Simson, Emma | 23.7 | $307 | $7,275.90 | $250 | $5,925 |
| **TOTAL for CLC** | **117** | | **$64,468.80** | | **$43,245** |
| **TOTAL for Baron, Neil** | **4.3** | **$572** | **$2,459.60** | **$400** | **$1,720** |
| **TOTAL for Derfner, Armand** | **100.5** | **$613** | **$61,606.50** | **$400** | **$40,200** |
| **TOTAL for Veasey-LULAC** | **361.3** | | **$207,000.50** | | **$139,325** |
| Dunbar, Kelly | 106.1 | $417 | $44,243.70 | $250 | $26,525 |

| | | | | | |
|---|---|---|---|---|---|
| Conley, Danielle | 17.5 | $417 | $7,297.50 | $250 | $4,375 |
| Ali, Hasan | 3.3 | $340 | $1,122.00 | $250 | $825 |
| Eagles, Thaddeus | 12.8 | $307 | $3,929.60 | $250 | $3,200 |
| Eisenberg, Lynn | 78.2 | $340 | $26,588.00 | $250 | $19,550 |
| Faransso, Tania | 142.7 | $351 | $50,087.70 | $250 | $35,675 |
| Lebsack, Sonya | 208.4 | $358 | $74,607.20 | $250 | $52,100 |
| Paikin, Jonathan | 26 | $544 | $14,144.00 | $300 | $7,800 |
| Robinson, Matthew | 62.8 | $340 | $21,352.00 | $250 | $15,700 |
| Shordt, Richard | 451.6 | $351 | $158,511.60 | $250 | $112,900 |
| Sinzdak, Gerard | 59.6 | $351 | $20,919.60 | $250 | $14,900 |
| Thome, Matthew | 15.4 | $358 | $5,513.20 | $250 | $3,850 |
| **TOTAL for Wilmer Hale (Imani Clark)** | **1184.4** | | **$428,316.10** | | **$297,400** |
| Doggett, Robert | 26.8 | $572 | $15,329.60 | $300 | $8,040 |
| Garza, Jose | 59.7 | $613 | $36,596.10 | $400 | $23,880 |
| **TOTAL for TRLA (Taylor)** | **86.5** | | **$51,925.70** | | **$31,920** |
| Rudd, Amy | 16.3 | $491 | $8,003.30 | $250 | $4,075 |
| Rosenberg, Ezra (Dechert) | 135.1 | $613 | $82,816.30 | $400 | $54,040 |
| Cohan, Lindsey | 13 | $358 | $4,654.00 | $250 | $3,250 |
| **TOTAL for Dechert** | **164.4** | | **$95,473.60** | | **$61,365** |
| Rosenberg, Ezra (Lawyer's Committee) | 174.2 | $613 | $106,784.60 | $400 | $69,680 |
| Posner, Mike | 83.7 | $613 | $51,308.10 | $400 | $33,480 |
| **TOTAL for LC** | **257.9** | | **$158,092.70** | | **$103,160** |
| **TOTAL for Garza, Jose (MALC)** | **26.2** | **$613** | **$16,060.60** | **$400** | **$10,480** |
| **TOTAL for Bledsoe, Gary (NAACP)** | **23.1** | **$613** | **$14,160.30** | **$400** | **$9,240** |
| Perez, Myrna | 141 | $417 | $58,797.00 | $250 | $35,250 |
| **TOTAL for Brennan Center** | **141** | | **$58,797.00** | | **$35,250** |
| Aden, Leah | 74.2 | $417 | $30,941.40 | $300 | $22,260 |
| Haygood, Ryan | 25.5 | $491 | $12,520.50 | $250 | $6,375 |
| Korgaonkar, Natasha | 182.6 | $544 | $99,334.40 | $300 | $54,780 |
| Nelson, Janai | 46.1 | $544 | $25,078.40 | $300 | $13,830 |
| Ross, Deuel | 108.8 | $351 | $38,188.80 | $250 | $27,200 |
| **TOTAL for LDF** | **437.2** | | **$206,063.50** | | **$124,445** |
| **TOTAL for Notzon, Robert** | **1.25** | **$544** | **$680.00** | **$350** | **$438** |
| **TOTAL for NAACP & MALC** | **1051.05** | | **$549,327.70** | | **$344,378** |
| **GRAND TOTAL** | **2683.25** | | $1,236,570.00 | | $813,022.50 |

*See* Exhibits A3 through E3. The fees should be reduced accordingly.

### 3. Plaintiffs' Fee Request Should be Reduced for Excessive Billing.

There are several entries submitted by Plaintiffs that were in excess of the actual hearing times entered by the Court.  *See* Exhibit F, hearing dates and times. State Defendants ask that these hours be reduced to actual time spent at the hearing. For example:

- The Court's hearing on October 4, 2013 was 15 minutes.  Dunn billed for 3.2 hours, Dunbar 1 hour, and Rios 1.8 hours.
- The hearing on October 18, 2013 was 21 minutes.  Dunn recorded 2.9 hours, Baron .5 hours, Rosenberg 2.4 hours, Dunbar .6 hours, and Rios 1.5 hours.
- On May 28, 2014 the hearing was 1 hour and 7 minutes broken up into two time periods.  Dunn participated in the first 20 minutes time period, but the record mentions he was on a plane and did not appear for the rest of the hearing, yet he bills for 4.2 hours.
- During trial Plaintiffs charge 10+ hours for hearings that were 8-9 hours long.

*See* Exhibit H, docket sheet and Exhibit F.

These hours should be appropriately reduced to only the time period that reflects the actual hearing time.  *See Davis v. Perry*, 991 F. Supp. 2d 809, 840 (W.D. Tex. 2014), supplemented, No. CIV. SA-11-CA-788, 2014 WL 172119 (W.D. Tex. Jan. 15, 2014), and rev'd sub nom. *Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015) (reduction of time billed to reflect actual time at hearing).

Additionally, Plaintiffs spent excessive amounts of time on briefs and discovery, which are reflected below.  For example, Simson spent 23.4 hours preparing for the Ingram deposition that she did not attend. See Exhibit D-4 at page 8. Bone spent over 100 hours drafting an appellate brief section that several other attorneys also billed for drafting and revising.  *Id.* at page 7.  Lang spent 65.7 hours

drafting the en banc brief, which was also edited and revised by several other attorneys. Id. at 6. Rosenberg charges over 200 hours in just answering emails and phone calls to other Plaintiffs' counsel, seemingly to reduce any duplicative hours. *See* Exhibit B-4 at pages 5-15.

The chart below summarizes the hours Plaintiffs seek that are excessive:

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate |
|---|---|---|---|---|---|
| Brazil, Scott | 107.6 | $572 | $61,547.20 | $400 | $43,040 |
| Dunn, Chad | 158.4 | $491 | $77,774.40 | $300 | $47,520 |
| **TOTAL for Brazil & Dunn** | **266** | | **$139,321.60** | | **$90,560** |
| Hebert, Gerald | 61.1 | $613 | $37,454.30 | $400 | $24,440 |
| Bone, Joshua | 102.3 | $307 | $31,406.10 | $250 | $25,575 |
| Simson, Emma | 97.7 | $307 | $29,993.90 | $250 | $24,425 |
| Lang, Danielle | 44.8 | $351 | $15,724.80 | $250 | $11,200 |
| **TOTAL for CLC** | **305.9** | | **$114,579.10** | | **$85,640** |
| **TOTAL for Baron, Neil** | **10.6** | **$572** | **$6,063.20** | **$400** | **$4,240** |
| **TOTAL for Derfner, Armand** | **88** | **$613** | **$53,944.00** | **$400** | **$35,200** |
| **TOTAL for Veasey-LULAC** | **670.5** | | **$313,907.90** | | **$215,640** |
| Dunbar, Kelly | 115.3 | $417 | $48,080.10 | $250 | $28,825 |
| Conley, Danielle | 48.4 | $417 | $20,182.80 | $250 | $12,100 |
| Nelson, Janai | 5 | $544 | $2,720.00 | $300 | $1,500 |
| Haygood, Ryan | 8 | $491 | $3,928.00 | $250 | $2,000 |
| Ali, Hasan | 20.3 | $340 | $6,902.00 | $250 | $5,075 |
| Eisenberg, Lynn | 4.6 | $340 | $1,564.00 | $250 | $1,150 |
| Faransso, Tania | 137 | $351 | $48,087.00 | $250 | $34,250 |
| Lebsack, Sonya | 164.3 | $358 | $58,819.40 | $250 | $41,075 |
| Paikin, Jonathan | 26 | $544 | $14,144.00 | $300 | $7,800 |
| Robinson, Matthew | 62.8 | $340 | $21,352.00 | $250 | $15,700 |
| Shordt, Richard | 411.4 | $351 | $144,401.40 | $250 | $102,850 |
| Sinzdak, Gerard | 59.6 | $351 | $20,919.60 | $250 | $14,900 |
| Thome, Matthew | 15.4 | $358 | $5,513.20 | $250 | $3,850 |
| **TOTAL for Wilmer Hale** | **1078.1** | | **$396,613.50** | | **$271,075** |
| Korgaonkar, Natasha | 87.1 | $358 | $31,181.80 | $250 | $21,775 |
| Ross, Deuel | 10.8 | $351 | $3,790.80 | $250 | $2,700 |
| **TOTAL for LDF** | **97.9** | | **$34,972.60** | | **$24,475** |
| **TOTAL for Imani Clark** | **1176** | | **$431,586.10** | | **$295,550** |
| Rios, Rolando | 79.9 | $613 | $48,978.70 | $400 | $31,960 |

| | | | | | |
|---|---|---|---|---|---|
| **TOTAL for Rios (HJ&C)** | **79.9** | | **$48,978.70** | | **$31,960** |
| Rosenberg, Ezra (Lawyer's Committee) | 177.9 | $613 | $109,052.70 | $400 | $71,160 |
| Posner, Mike | 183.8 | $613 | $112,669.40 | $400 | $73,520 |
| **TOTAL for LC** | **361.7** | | **$221,722.10** | | **$144,680** |
| Yeary, Michelle | 202 | $544 | $109,888.00 | $300 | $60,600 |
| Rudd, Amy | 78.7 | $491 | $38,641.70 | $250 | $19,675 |
| Rosenberg, Ezra (Dechert) | 486.6 | $613 | $298,285.80 | $400 | $194,640 |
| Cohan, Lindsey | 28.5 | $351 | $10,003.50 | $250 | $7,125 |
| **TOTAL for Dechert** | 795.8 | | $456,819.00 | | $282,040 |
| **TOTAL for NAACP & MALC** | **1157.5** | | **$678,541.10** | | **$426,720** |
| Garza, Jose | 25.3 | $613 | $15,508.90 | $400 | $10,120 |
| Van Dalen, Marinda | 21.2 | $544 | $11,532.80 | $300 | $6,360 |
| **TOTAL for TRLA (Taylor)** | **46.5** | | **$27,041.70** | | **$16,480** |
| **GRAND TOTAL** | **3130.4** | | **$1,500,055.50** | | **$986,350.00** |

*See* Exhibits A4 through E-4. Accordingly, the Court should reduce the overall fee award by $986,350.

### 4. The Plaintiffs' Fee Request Should be Reduced for Vague and Block-Billed Fees.

In support of their fee request, Plaintiffs' counsel must detail the work performed with enough specificity to allow a court to determine the reasonableness of the hours claimed. *See Hensley*, 461 U.S. at 433; *Ragan v. Comm'r*, 135 F.3d 329, 335 (5th Cir. 1998) (counsel seeking fee award cannot merely submit a broad summary of work performed and the hours logged, but rather must present "adequate evidence of the hours spent on the case and that those hours were reasonably expended"). Courts may reduce or eliminate hours that are "vague or incomplete", *see League of United Latin American Citizens v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1233 (5th Cir. 1997), or contain block-billing. *Edmond v. Oxlite Inc.,* No. CIV.A. 01-2594, 2005 WL 2458235, at *4 (W.D. La. Oct. 5, 2005).

"Litigants take their chances when submitting [vague] fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995); *Leroy v. City of Hous.,* 906 F.2d 1068, 1080 (5th Cir. 1990) (eliminating hours where the task descriptions are "not illuminating as to the subject matter" or are "vague as to precisely what was done"). Similarly, a fee award cannot extend to "block-billed" time entries where attorneys group several different tasks into one-time entry "because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *See Fabela v. City of Farmers Branch, Tex.*, No. 3:10-CV-1425-D, 2013 WL 2655071, at *7 n.14 (N.D. Tex. June 13, 2013).

This Court has found that block billing is disfavored because the required reasonableness determination is difficult to make when the court cannot accurately determine the amount of time spent on any particular task. *Martinez v. Refinery Terminal Fire Co.*, 2:11-CV-00295, 2016 WL 4594945, at *5 (S.D. Tex. Sept. 2, 2016) *citing Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 864 (S.D. Tex. 2011). Although courts may assess across-the-board reductions for block billing, a finding that an attorney engaged in block billing does not automatically lead to a reduction in the amount of time billed. *Davis v. Perry*, 991 F. Supp. 2d 809, 836 (W.D. Tex. 2014) *rev'd on other grounds sub nom Davis v. Abbot*, 781 F.3d 207 (5th Cir.

2015). The court must evaluate whether the applicant's evidence is sufficient to enable it to determine the reasonableness of the hours expended. *Id.*

Recognizing that some law firms bill clients on a daily basis by block-billing, the Fifth Circuit has recommended a reduction in fees claimed rather than excluding all of the time. *Edmond*, 2005 WL 2458235, at *4. *Hensley,* 461 U.S. at 433 (district court may reduce award where documentation of hours is inadequate); *See, e.g., Johnson–Richardson v. Tangipahoa Parish School Bd.,* Civ. A. No. 12–0140, 2013 WL 5671165, at *4 (E.D. La. Oct.15, 2013) (30% reduction for block billing, citing *Verizon Business Global LLC v. Hagan,* No. 07–0415, 2010 WL 5056021, at *5 (E.D. La. Oct.22, 2010) (citing cases showing that reductions for block billing between 15% and 35% have been found reasonable), vacated on other grounds, 467 F. App'x. 312 (5th Cir. 2012).

Overall, Plaintiffs' counsel's time records consist of approximately 3,154.5 hours of vague and block-billed time entries.[15] For instance, the following is a vague, block-billed entry submitted by the Plaintiffs that does not allow a reviewer to determine whether the work performed was reasonable and necessary:

- August 29, 2014 –Yeary, Michelle – 12 hrs – Pretrial filings, finalize exhibit and deposition objections, review objections for "go to the mat" objections, telephone conference with defense counsel negotiating procedure for objections, finalize trial site coordination, telephone conference with DOJ tech team re: video depositions, preparing supplemental exhibit lists. *See* Exhibit B-6 at page 3.

---

[15] Because a large majority of the Plaintiffs' billing entries are block-billed and contain compensable work as well, it is impossible to determine how much of the billed time is related to non-compensable work. For purposes of this response, the State Defendants have included the entire amount of the billed hours in the block-billed entries for all categories that the State Defendants dispute.

- June 19, 2014 – Rosenburg, Ezra – 12 hrs – Prepare for deposition of Rep. Harless; prepare for and conduct calls with all private plaintiffs and with DOJ; review and comment on Chatman revised report.   *See* Exhibit B-6 at page 9.

- September 19, 2016 – Cohan, Linsey – 7 hrs - Attend hearing on motions to enforce remedial order; attend phone conference amongst plaintiffs to discuss strategy for obtaining relief from court; draft and file revised proposed order for clarification of interim remedial order; attend call with DOJ and Wilmer Hale to discuss drafting of findings of fact relating to intent; continue to work on matrix summarizing findings of fact related to intent. *See* Exhibit B-6 at page 16.

- September 2013-September 2014 – Derfner, Altman – 40 hrs - Establishing trial date of 2014 rather than 2015, including study of data needs and databases, legal analysis, consultation and negotiations with U.S. and TX, preparing memoranda and attending court hearings. *See* Exhibit D-6 at page 4.

- 2013 – Haygood, Ryan – 100 hrs - Preparing, taking, and/or defending depositions of clients, experts, and/or fact witnesses. *See* Exhibit C-6 at page 1.

*See* Exhibits A6-E6 and A7-E7.

The Fifth Circuit "frowns" on these types of "vague notations" in Plaintiffs' time entries, as well as "consolidating individual items into one large block of time for each day." *Edmond v. Oxlite Inc.,* No. CIV.A. 01-2594, 2005 WL 2458235, at *4 (W.D. La. Oct. 5, 2005). *See Fabela,* 2013 WL 2655071, at *7 (75.4 hours spent "prepar[ing] the complaint" reduced to 10 hours due to use of vague descriptions and block-billing); *Barrow v. Greenville Independent School Dist.,* No. 3:00-CV-0913-D, 2005 WL 6789456 at *4-5 (N.D. Tex 2005) (court found that it could not accurately determine time spent on particular task when attorney typically compiled into one day's entry discrete tasks such as reviewing notes, preparing for discovery, correspondence, drafting pleadings and conducting legal research); *Fabela v. City of Farmers Branch,*

*Tex.*, No. 3:10-CV-1425-D, 2013 WL 2655071 at *7 and n. 14 (N.D. Tex. 2013) (block billed entries for 10.6 hours to "prepare complaint; pursue strategy," 19.5 hours to "prepare complaint; pursue strategy; prepare filing of materials," and similar hours and descriptions were cut drastically by the court).

Without additional explanation of the type of work performed by Plaintiffs' counsel, the Court should reduce the fee award for all of the identified vague, block-billed entries. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund,* Civ. A. No. 3:09-CV-0752-D, 2011 WL 487754, at *4-5 (N.D. Tex. Feb. 11, 2011) (where there is insufficient evidence to determine whether the hours claimed are reasonable for the work performed, the Court may properly reduce a fee award for block-billing). The Court should make an overall reduction to the fee award by 20% to account for the vague and block-billed entries. *Hagan,* 2010 WL 5056021, at *5.

**E.    Plaintiffs' Fee Request Should be Reduced for Time Spent Preparing Their Motion for Attorneys' Fees.**

Plaintiffs seek 41.2 hours preparing the Motion for Attorney's Fees. *See* Exhibits A5-E5. Although "[t]ime spent for preparing fee applications is generally compensable," *El-Tabech v. Clarke,* 616 F.3d 834, 834-44 (8th Cir. 2010), they should neither be excessive, nor "result in a second major litigation." *Hensley,* 461 U.S. at 436. "Fee applications do not typically involve novel or complex legal issues and the fees claimed for preparing them will be reduced if excessive." *Prater v. Commerce Equities Mgmt. Co., Inc.,* No. H–07–2349, 2008 U.S. Dist. LEXIS 98795, at *20–21, 2008 WL 5140045 (S.D. Tex. Dec.8, 2008). *See, e.g., Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at *9 (E.D. Tex. July 20, 2009) aff'd, 394

F. App'x 38 (5th Cir. 2010) (finding that 81.55 hours for the fee application was excessive and reducing the bill for such work to 20 hours); *West v. Aetna Life Ins. Co.,* 188 F.Supp.2d 1096, 1102 (N.D. Iowa 2002) (finding that 41 hours to prepare a fee motion in an ERISA case was excessive because it is a "routine, largely clerical task"); *Carlson v. United Academics-AAUP/AFT/APEA/AFT–CIO,* No. A98–0141–CV– JKS, 2002 U.S. Dist. LEXIS 11217, 2002 WL 487179, at *4 (D. Alaska Mar.12, 2002) ("In this day and age of computerized records, accounting programs, and computer databases storing briefing records, much of the preparation of a fee application should usually be delegated to a secretary or paralegal. The attorney need only allot such time as is necessary and prudent to review billing records, statements, and affidavits for accuracy.").

The Fifth Circuit has held that an attorney should not request his normal billing rate preparing a motion for fees. *See, e.g., Leroy*, 906 F.2d at 1079 ("Certainly, the base rate for time spent on computing and enforcing attorneys' fees should be less than that allowed for professional services rendered primarily on the merits."); *Hopwood,* 999 F. Supp. at 918 (reducing attorney's hourly rate from $225 to $200 for work preparing application for attorney's fees); *In re Intern. Sys. & Controls Corp. Sec. Litig.*, 94 F.R.D. 640, 642 (S.D. Tex. 1982) (only 80 percent of the base hourly rate was allowed for time spent in preparing the statement of attorney's fees); *United States v. Marengo County Com'n*, 667 F. Supp. 786, 798 (S.D. Ala. 1987) (base rate litigating attorney's fee award should not exceed 80% of the reasonable hourly rate charged for time expended on the merits). The Court should reduce the hourly rates

to no more than 80% of the rates proposed by Plaintiffs. As such the Court should reduce the fees accordingly:

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate w reduction | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate w reduction |
|---|---|---|---|---|---|
| Perez, Myrna | 0.1 | $417 | $33.36 | $250.00 | $20.00 |
| **TOTAL for Brennan Center** | **0.1** | | **$33.36** | | **$20.00** |
| Rosenburg, Ezra (LC) | 2.8 | $613 | $1,373.12 | $400 | $896.00 |
| **TOTAL for LC** | **2.8** | | **$1,373.12** | | **$896.00** |
| Lang, Danielle | 2.3 | $351 | $645.84 | $250 | $460.00 |
| **TOTAL for CLC** | **2.3** | | **$654.84** | | **$654.84** |
| Garza (TRLA) | 42.1 | $613 | $20,645.84 | $400 | $13,472.00 |
| **TOTAL for TRLA** | **42.1** | | **$20,645.84** | | **$13,472.00** |
| **GRAND TOTAL** | **47.3** | | **$22,707.16** | | **$15,042.84** |

Additionally, Plaintiffs Veasey-LULAC submit $2,700 in costs for an attorney, William (Billy) R. Edwards, III to review their fees. *See* Doc. 1143.3, at 3. Plaintiffs should not pass on the cost of their expert onto Defendants. At the very least, the requested $2,700 should be reduced to allow for only 80% of the expert's billing rate. Based on the maximum rate in the prevailing community, the Court should award no more than $2,560.

### F. Plaintiffs' Fee Request Should be Reduced as a Matter of Law for Non-Compensable Time.

Before finalizing Plaintiffs' lodestar calculation, Plaintiffs' fee request must be reduced to account for billings and expenses not permitted by law. A careful review of the Plaintiffs' requested fees shows several categories of work that are not compensable through a proper fee award.

**1. Fees associated with withdrawal, intervention, and pro hac vice admission of Plaintiffs' counsel should be denied.**

Time spent terminating an attorney-client relationship is not considered time spent engaging in "legal services" or rendered on behalf of a client, but time rendered for the counsel's own benefit, which is non-recoverable. *Lee v. Daniels & Daniels*, 264 S.W.3d 273, 281 (Tex. App.—San Antonio 2008, pet. denied). "[N]o lawyer could form a reasonable belief that fees incident to such time spent were reasonable." *Id.* "Recovery of such fees is unconscionable and contravenes Texas public policy as a matter of law." *Id.* (citing Tex. Disciplinary R. Prof'l Conduct 1.04(a) ("[a] fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable")).

Plaintiffs' counsel filed motions to withdraw specific attorneys from the case as counsel. According to the Plaintiffs' time entries, they billed 7.6 hours reviewing, communicating, and filing these motions. *See* Exhibits A5-E5. The State Defendants should not be required to pay for Plaintiffs' time spent terminating an attorney-client relationship. *See Lee*, 264 S.W.3d at 281. Accordingly, the Court should reduce the overall fee award as reflected below:

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate w reduction | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate w reduction |
|---|---|---|---|---|---|
| Rios, Rolando | 1.6 | $613 | $980.80 | $400 | $640.00 |
| **TOTAL for HJ&C** | **1.6** | | **$980.80** | | **$640.00** |
| Cohan, Lyndsay | 0.5 | $358 | $179.00 | $250 | $125.00 |
| **TOTAL for Dechert** | **0.5** | | **$179.00** | | **$125.00** |
| Korgaonkar, Natasha | 3.3 | $358 | $1,181.40 | $250 | $825.00 |
| **TOTAL for LDF** | **3.3** | | **$1,181.40** | | **$825.00** |
| Brazil, Scott | 0.2 | $572 | $114.40 | $400 | $80.00 |
| Dunn, Chad | 2 | $491 | $982.00 | $300 | $600.00 |

| | | | | | |
|---|---|---|---|---|---|
| **TOTAL for Brazil & Dunn** | **2.2** | | **$1,096.40** | | **$680.00** |
| **GRAND TOTAL** | **7.6** | | **3437.6** | | **2270** |

Additionally, time dedicated to motions for admission *pro hac vice* "are an expense that an attorney pays for the privilege of practicing law in a district and should not be taxed to a plaintiff simply because a defendant chooses to be represented by counsel not admitted to practice in the district." *Lofton v. McNeil Consumer & Specialty Pharm.*, 3:05-CV-1531-L, 2011 WL 206165, at *1 (N.D. Tex. Jan. 4, 2011), report and recommendation adopted, 3:05-CV-1531-L, 2011 WL 208391 (N.D. Tex. Jan. 21, 2011). *See Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015) (denying attorney and paralegal fees for Gerald Hebert because fees and time spent in seeking admission pro hac vice should not be recoverable as costs because they are an expense that an attorney pays for the privilege of practicing law in this Court and are not normally charged to a fee-paying client). Plaintiffs charged approximately 17.8 hours reviewing and filing pro hac motions. The Court should reduce the overall fee award to account for this non-compensable time.

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate w reduction | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate w reduction |
|---|---|---|---|---|---|
| Cohan, Lindsay | 15 | $351 | $5,265.00 | $250 | $3,750.00 |
| **TOTAL for Dechert** | **15** | | **$5,265.00** | | **$3,750.00** |
| Hebert, Gerald | 0.9 | $613 | $551.70 | $400 | $360.00 |
| Lang, Danielle | 0.9 | $351 | $315.90 | $250 | **$225.00** |
| **TOTAL for CLC** | **1.8** | | **$867.60** | | **$585.00** |
| Rosenburg, Ezra (LC) | 0.1 | $613 | $61.30 | $400 | $40.00 |
| **TOTAL for LC** | **0.1** | | **$61.30** | | **$40.00** |
| Brazil, Scott | 0.1 | $572 | $57.20 | $400 | **$40.00** |
| Dunn, Chad | 0.8 | $491 | $392.80 | $300 | $400.00 |
| **TOTAL for Brazil & Dunn** | **0.9** | | **$450.00** | | **$400.00** |
| **GRAND TOTAL** | **17.8** | | **$6,643.90** | | **$4,955.00** |

In *Hopwood v. Texas*, the Fifth Circuit recognized that, where State defendants take no position on an intervention, they need not pay attorneys' fees associated with a plaintiff's efforts to oppose that intervention. 236 F.3d 256 (5th Cir. 2000). In such cases, a plaintiff "did not 'prevail' on [the intervention] issue vis-à-vis Texas." *Id.* Whether a plaintiff "prevails" is a statutory prerequisite to obtaining a fee award. *See* 42 U.S.C. § 1988(b). Similarly, "intervention-related fees and expenses ... are not recoverable ... by a prevailing plaintiff against a losing defendant." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 178 (4th Cir. 1994)). Here, significant hours are dedicated to responding to discovery and briefing between Plaintiffs and the intervenor True the Vote in this case. As in *Hopwood*, "[n]either logic nor equity supports taxing Texas under these circumstances." 236 F.3d at 280.   The State Defendants took no stance on fighting the intervenor True the Vote, who ultimately did not prevail.   Plaintiffs billed approximately 8.15 hours by attorneys in connection with True the Vote and should be reduced. The Court should reduce the overall fee award by 20.05 hours and fees reduced as shown in the chart below.

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate w reduction | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate w reduction |
|---|---|---|---|---|---|
| Perez, Myrna | 0.3 | $417 | $125.10 | $250 | $75.00 |
| **TOTAL Brennan Center** | **0.3** | | **$125.10** | | **$75.00** |
| Hebert, Gerald | 3.9 | $613 | $2,390.70 | $400 | $1,560.00 |
| **TOTAL for CLC** | **17.4** | | **$2,390.70** | | **$1,560.00** |
| Aden, Leah | 0.6 | $417 | $250.20 | $300 | $180.00 |
| **TOTAL for LDF** | **1.1** | | **$250.20** | | **$180.00** |
| Baron, Neil | 1.25 | $572 | $715.00 | | $400.00 |
| **TOTAL for Baron** | **1.25** | | **$715.00** | | **$400.00** |
| **GRANDTOTAL** | **20.05** | | **$3,368.41** | | **$2,215.00** |

**2. Fees associated with failed claims.**

Most of the hours billed by Plaintiffs' attorneys are not specific enough to determine which claim was at issue. However, there are some specific billing entries for hours spent drafting or researching for claims lost such as poll tax and unconstitutional discriminatory intent. The Court should reduce the overall fee and award only up to the amount shown for 133.8 hours related to these claims as shown in the chart below. *See* Exhibits A7-E-7.

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate w reduction | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate w reduction |
|---|---|---|---|---|---|
| Rios, Rolando | 4.4 | $613 | $2,697.20 | $400 | $1,760.00 |
| **TOTAL for HJ&C** | **4.4** | | **$2,697.20** | | **$1,760.00** |
| Perez, Myrna | 9.2 | $417 | $3836.40 | $250.00 | $2,300.00 |
| **TOTAL for Brennan Center** | **9.2** | | **$3,836.40** | | **$2,300.00** |
| Rosenburg, Ezra (LC) | 3 | $613 | $1,839.00 | $400 | $1,200.00 |
| **TOTAL for LC** | **3** | | **$1,839.00** | | **$1,200.00** |
| Simson, Emma | 17.4 | $351 | $6,107.40 | $250 | $4,350.00 |
| **TOTAL for CLC** | **17.4** | | **$6,107.40** | | **$4,350.00** |
| Garza (MALC) | 1.3 | $613 | $796.90 | $400 | $520.00 |
| **TOTAL for Garza-MALC** | **1.3** | | **$796.90** | | **$$520.00** |
| Rudd, Amy | 8.7 | $491 | $4,271.70 | $250 | $2,175.00 |
| Cohan, Lindsay | 8.5 | $358 | $3,043.00 | $250 | $2,125.00 |
| **TOTAL for Dechert** | **17.2** | | **$7,314.70** | | **$4,300.00** |
| Notzon | 0.3 | $544 | $163.20 | $350 | $105.00 |
| **TOTAL for Notzon** | **0.3** | | **$163.20** | | **$105.00** |
| Derfner | 81 | $613 | $49,653.00 | $400 | $32,400.00 |
| **TOTAL for Altman-Derfner** | **81** | | **$49,653.00** | | **$32,400.00** |
| **GRAND TOTAL** | **133.8** | | **$72,417.80** | | **$46,935.00** |

### 3. Work done in connection with supporting amicus briefs should be rejected.

As a matter of law, Plaintiffs' counsel may not be compensated for work done in connection with supporting amicus briefs. Plaintiffs' counsel bill for hours spent soliciting and editing amicus briefs. *See* Exhibits A7-E7.

The only circuit court to address this issue prohibited the district court from awarding fees to prevailing parties "for time their counsel spent in connection with amicus briefs supporting their position." *Glassroth v. Moore,* 347 F.3d 916, 918 (11th Cir. 2003).[16] In denying recovery for attorney's fees and expenses for work done in connection with supporting amicus briefs, the court reasoned that "[a]n organization or group that files an amicus brief on the winning side is not entitled to attorney's fees and expenses as a prevailing party, because it is not a party. We will not allow that result to be changed by the simple expedient of having counsel for a party do some or all of the amicus work." *Id.* at 919. Specific examples provided by the *Glassroth* court of non-compensable time include "enlisting various organizations to appear as amici; suggesting potential signatories for the briefs; working on, supervising, and reviewing the amicus briefs; and seeing that they were mailed on time." *Id.* The court found that "[a] reasonable amount of time spent reading and responding to opposing amicus briefs is, of course, compensable." *Id.*

---

[16] The Fifth Circuit addressed this prohibition in Justice Elrod's dissenting opinion in *DeLeon v. Abbott*, 687 Fed. Appx. 340, 346 (5th Cir. 2017). Justice Elrod agreed with the approach in *Glassroth* by opining that "[o]nly prevailing parties may recover under Section 1988, and amici are not parties. *See* 42 U.S.C. § 1988(b)). *Id.* at 347. Justice Elrod held that "prevailing parties may not recover fees for time expended soliciting or coordinating with supporting amici, or reviewing amicus briefs *before* they are filed. This restriction ensures the integrity of Section 1988's limitation, while allowing for recovery in those instances where amici-related work is necessary to the adequate representation of a client."

Based on the ruling in *Glassroth,* the district court in *Bishop v. Smith,* No. 04-CV-848-TCK-TLW, 2015 WL 4086356, at *9 (N.D. Okla. May 1, 2015), adopted fee-shifting rules regarding time spent in connection with supporting amicus briefs. The court held that "pre-filing activities must be carefully scrutinized and are not compensable if they constitute brainstorming potential amici, strategizing regarding potential amici, coordinating potential amici, soliciting potential amici, or drafting/editing an amicus brief." *Id.*  Based on the guidance in *Glassroth* and *Bishop,* Plaintiffs' fee request should be reduced by 31.5 hours as documented in Exhibits A7-E7.

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate w reduction | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate w reduction |
|---|---|---|---|---|---|
| Perez, Myrna | 13 | $417 | $5,421.00 | $250 | $3,250.00 |
| **TOTAL for Brennan Center** | **13** | | **$5,421.00** | | **$3,250.00** |
| Hebert, Gerald | 0.5 | $613 | $306.50 | $400 | $200.00 |
| **TOTAL for CLC** | **.5** | | **$306.50** | | **$200.00** |
| Dunn, Chad | 1.1 | $491 | $540.10 | $300 | $330.00 |
| **TOTAL for Brazil & Dunn** | **1.1** | | **$540.10** | | **$330.00** |
| **GRAND TOTAL** | **31.5** | | **$6,267.60** | | **$3,780.00** |

### 4. Time spent on business development and media is not compensable.

Plaintiffs incurred approximately 87.95 hours in business development as shown in Exhibits A8-E8. These fees consisted of tasks such as contacting potential people who lack ID and recruiting potential clients, that all occurred months before the filing of the Complaint and afterward while still revising the Complaint. These types of tasks are appropriately termed business development and are not

compensable as they were not reasonable and necessary for the prosecution of the suit. The Texas Disciplinary Rules demand that a legal fee be charged only for legal services. The San Antonio Court of Appeals in *Lee v. Daniels & Daniels*, indicated that legal services are services performed or rendered on behalf of a client.  264 S.W.3d 273, 281 (Tex. App. 2008).   Because business development fees are not services performed or rendered on behalf of a client, they are not considered legal services and as such are not compensable.

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate w reduction | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate w reduction |
|---|---|---|---|---|---|
| Rios, Rolando | 4.8 | $613 | $2,942.40 | $400 | $1,920.00 |
| **TOTAL for HJ&C** | **4.8** | | **$2,942.40** | | **$1,920.00** |
| Perez, Myrna | 24.3 | $417 | $10,133.10 | $250.00 | $6,075.00 |
| **TOTAL for Brennan Center** | **24.3** | | **$10,133.10** | | **$6,075.00** |
| Dunn, Chad | 3.7 | $491 | $1,816.70 | $300 | $1,10.00 |
| **TOTAL for Brazil & Dunn** | **3.7** | | **$2,268.10** | | **$1,480.00** |
| Garza (TRLA) | 1.3 | $613 | $796.90 | $400 | $520.00 |
| Doggett | 2 | $572 | $1,144.00 | $300 | $600.00 |
| VanDalen, Marinda | 25.8 | $544 | $14,035.20 | $300 | $7,740.00 |
| **TOTAL for TRLA** | **29.1** | | **$15,976.10** | | **$8,860.00** |
| Korgaonkar, Natasha | 22.3 | $491 | $10,949.30 | $250 | $5,575.00 |
| **TOTAL for LDF** | **22.3** | | **$10,949.30** | | **$5,575.00** |
| Notzon | 2.75 | $544 | $1,496.00 | $350 | $962.50 |
| **TOTAL for Notzon** | **2.75** | | **$1,496.00** | | **$962.50** |
| Derfner | 1 | $613 | $613.00 | $400 | $400.00 |
| **TOTAL for Altman-Derfner** | **1** | | **$613.00** | | **$400.00** |
| **GRAND TOTAL** | **87.95** | | **$43,926.60** | | **$24,902.50** |

Time devoted to media and publicity is also not recoverable. Courts exclude media-related time because time interacting with the media is not, "expended on the litigation." *E.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (affirming district court exclusion of "time spent holding press

conferences"); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994) ("[t]he legitimate goals of litigation are almost always attained in the courtroom, not in the media."). Plaintiff's time should be reduced by 9.3 hours.

| Name of Attorney/Paralegal | Hours | Plaintiffs' Proposed Hourly Rate | Total Based on Plaintiffs' Proposed Rate | Defendants' Proposed Hourly Rate | Total Based on Defendants' Proposed Hourly Rate |
|---|---|---|---|---|---|
| Garza (TRLA) | 1.9 | $613 | $1,164.70 | $400 | $760.00 |
| **TOTAL for TRLA** | **1.9** | | **$1,164.70** | | **$760.00** |
| Rudd, Amy | 6.8 | $491 | $3,338.80 | $250 | $1,700.00 |
| **TOTAL for Dechert** | **6.8** | | **$3,338.80** | | **$1,700.00** |
| Notzon | 0.1 | $544 | $54.40 | $350 | $35.00 |
| **TOTAL for Notzon** | **0.1** | | **$54.40** | | **$35.00** |
| **GRAND TOTAL** | **8.8** | | **$4,557.9** | | **$2,495.00** |

## II.     Litigation Expenses Not Taxable Under 28 U.S.C. § 1920

Beyond an examination of Plaintiffs' lodestar calculation, their fee requests must be scrutinized with an eye toward expenses not permitted by law. Out-of-pocket expenses are recoverable when they are part of the costs normally passed on to a fee-paying client. *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). However, reimbursement requests must be reasonable, and the calculation and award of such costs are committed to the district court's discretion. *See Curtis v. Bill Hanna Ford,* 822 F.2d 549, 553 (5th Cir. 1987). Indeed, a court must give "careful scrutiny" to the items proposed by the prevailing party. *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 335 (5th Cir., 1995) (citing *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 235 (1964). *See Curtis,* 822 F.2d at 553 (5th Cir. 1987) (affirming trial court's decision to review requested expenses item-by-item and disallow expenses that were unnecessary).

In this matter Plaintiffs' attorneys seek the following total costs:

| FIRM[17] | TOTAL |
|---|---|
| Rios | $654.37 |
| **TOTAL for HJ&C** | **$654.37** |
| Campaign Legal Center | $111,003.27 |
| Brazil and Dunn | $299,915.29 |
| Derfner and Altman | $13,623.82 |
| Neil Baron | $2,115.83 |
| William Edwards | $2,700.00 |
| **TOTAL for Veasey-LULAC** | **$429,358.21** |
| LDF | $136,635.97 |
| Wilmer Hale | $25,000.00 |
| **TOTAL for Imani Clark** | **$161,635.97** |
| Dechert LLP | $267,418.95 |
| Lawyers' Committee for Civil Rights Under Law | $16,883.09 |
| Brennan Center for Justice | $51,405.95 |
| TX NAACP | $898.75 |
| MALC | $2,016.04 |
| **TOTAL for NAACP & MALC** | **$338,622.78** |
| TRLA | $44,273.62 |
| **TOTAL FOR Taylor** | **$44,273.62** |
| **GRAND TOTAL** | **$974,544.95** |

Numerous time entries submitted by the Plaintiffs' attorneys are either unduly extravagant, too vague to assess and properly award, and/or flatly non-compensable as a matter of law.

**A. Texas Taxpayers Should Not be Forced to Foot the Bill for Expense Entries for which Reasonableness Cannot be Assessed Due to Vagueness.**

A district court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995); *see also Catholic Leadership Coalition of Texas v. Reisman*, No. A-12-CA-566-SS, 2015 WL 418117, at *8 (W.D. Tex. Jan. 30, 2015) (disallowing an expense for vagueness where the court could not tell what is

---

[17] The data in this chart is obtained from Doc. Nos. 1142.1, 1172.3, 1174.0, 1175.0, 1146.6, 1144.0.

being claimed or why it was needed) Here, numerous expenses fall within this vagueness category.

First, reimbursement requests for conference calls, without providing more detail, negate meaningful review. Dechert seeks $206.89 in expenses based solely on the charge, "telephone" *See* Doc. No. 1174-8, at 2. The absence of any description connecting the expenses directly to this litigation prevents any assessment of whether the calls were actually used to advance this case, as opposed to others. It is entirely plausible that the parties used conference calls to discuss unrelated cases. Accordingly, these expenditures, should be disallowed.

Second, Dechert seeks $630.00 for "duplication charges," $16,206.66 for "outside duplication charges," and $2,284.56 for "miscellaneous expenses." *See* Doc. No. 1174-8, at 2.  These vague descriptions do not indicate which documents were duplicated and why.  Further, receipts were not provided. Generic descriptions like these prevent any assessment of whether the expenses to which they correspond were reasonable and necessary. Accordingly, State Defendants request that $19,121.22 be deducted from Dechert's request for non-taxable expenses.

### 1.  Lack of receipt or, in some instances, lack of itemization, prevents a meaningful assessment of reasonableness.

In numerous instances, Plaintiffs' counsel either failed to attach a receipt or attached receipts that are illegible. *Davis*, 991 F. Supp. 2d at 851 (costs not supported by receipts disallowed).

Imani Clark seeks $16,603.80 in airfare but provides only credit card receipts that are barely legible as to date. *See. e.g.,* Doc. 1172-3 at page 56-74.  Additionally,

as stated *supra*, they overstaffed several hearings and depositions and those costs should be disallowed. For example, Korganoakar charges both hotel and air for meeting *prospective* plaintiffs, before Imani Clark was in the lawsuit totaling $1,221.33. *See* Doc. 1172-3 at page 56. These are business development expenses that should be disallowed. Further, Korganoakar has several entries that do not indicate why she was traveling (deposition, hearing, etc.) totaling $1,111.91. *See, e.g.,* Doc. 1172-3 at page 56. Moreover, Korganoakar appears in person at numerous hearings and depositions as a passive observer where several other Imani Clark attorneys are present. *See, e.g.,* Exhibit C-3 at page 3 and Doc. 1172-3 at page 56. These expenses should be reduced by $2,474.01. This is also true for Haygood's time. There are several instances where there is no record or a reason for travel or overstaffing of depositions. *See, e.g.,* Doc. 1172-3 at page 56. Haygood was second chair for Blake Green in a passive role. *See* Exhibit C-3 at page 2. His expenses should be reduced by $4,029.99. Duel Ross was also the second chair for a deposition from April 30 – May 1, 2014, and further rented the executive suite, which cost extra. *See* Doc. 1172-3 at page 89. His expenses should be reduced. His airfare receipt was not attached for this trip. Since all airfare was only supported by credit card receipts and barely legible, the airfare should be reduced by $16,603.80. Hotel expenses should be reduced by $10,108.27. *See* Doc. 1172-3 at page 75.

Brazil & Dunn request $299,911.64 in expenses but have no breakdown as to why they are asking for that amount. *See* Doc. 1175-2. Without a breakdown of the expenses and with random, barely legible and illegible checks to parties with no

explanation, these expenses should be disallowed.  Further, the receipts provided contain multiple duplicates and it is difficult to determine which receipt goes to which party.  Rather than provide the actual receipts for most of the hotels, vague credit cards are provided with no breakdown of information.  The entirety of these expenses should be disallowed due to insufficient documentation.

Campaign Legal Center charges $22,545.84 for travel but overstaffs many of the hearings and depositions. *See* Doc. 1175-4.  CLC charges $630.40 and $671.17 for two hotel rooms for Emma Simson and Gerald Hebert for April 27, 2014 with no indication as to why or how it relates to the case. *See* Doc. 1175-4 at page 72 and 73. Bone and Hebert submit expenses in the amount of $893.08 for the 5th Circuit argument from April 27-28, 2015. *See* Doc. 1175-4 at page 79.  Additionally, several receipts are provided for Shea Dunn and Victoria Hebert with no indication as to how they relate to the case or why they are submitting reimbursement for these rooms. *See*, *e.g*, Doc. 1175-4, at 102, 105, 112, and 118.  The total for these and overstaffing expenses for CLC should be reduced by $4,837.92.

Armand Derfner requests $13,623.82 with no itemization and only credit card receipts. *See* Doc. 1175-3.  Numerous receipts do not itemize expenses, making it impossible to assess the reasonableness of the purchases to which they correspond. Included in this category are expenses supported only by a credit card statement. If a credit card statement is enough, then counsel in the future need not bother compiling and submitting receipts that are subject to greater scrutiny.  These

expenses should be disallowed due to inadequate documentation and deducted from the parties' non-taxable expense requests.

TRLA provides no receipts for their $44,273.62 in expenses and therefore these fees should not be recoverable. *See* Doc. 1144.0 at page 6.  Included in that cost is a request for $2,120.44 for client outreach and communication. *Id.*  State Defendants should not have to foot the bill for meeting with *prospective* clients before the case even began.

## 2. Absent specificity, Westlaw and LexisNexis charges are not compensable.

District courts in the Fifth Circuit have declined to tax computer assisted research fees as costs or expenses. *See, e.g., Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 581 (W.D. Tex. 2010); *International Marine, LLC v. FDT, LLC*, No. 10-0044, 2015 WL 914898 at *18 (E.D. La. 2015); and *Construction South, Inc. v. Jenkins*, No. 11-1201, 2011 WL 3882271 at *4 (E.D. La. 2011). In *Javelin Investments, LLC v. McGinnis*, No. H-05-3379, 2007 WL 1003856 at *4 (S.D. Tex. 2007), the court noted that charges for computer assisted legal research are arguably recoverable as part of attorney's fees in a copyright infringement case brought pursuant to 17 U.S.C. § 505, but declined to award the fees because the documentation of the charges was inadequate.

While computerized legal research fees are sometimes recoverable, this Court has rejected such a request when the expense report lacks specificity.[18] *Clark v.*

---

[18] Other courts similarly desire specificity before they will award computerized legal research fees. *See In re Schwemmer Hardware Co., Inc.*, 103 B.R. 635, 640 (E.D. Penn. 1989) (requiring for Lexis charges a receipt as well as a specific explanation of the reason why the cost was necessary); *see also Smith v.*

*Centene Corp.*, No. 12-CA-174-SS, 2015 WL 6962894, at *10-11. (W.D. Tex. Nov. 10, 2015) (declining to award computerized legal research fees where plaintiffs "provided no description whatsoever of the research charges other than 'Westlaw'"); *see also Chacon v. City of Austin*, No. A.-12-CA-226-SS, 2015 WL 4138361, at *10-11 (W.D. Tex. July 8, 2015) (declining due to vagueness an award for "Westlaw research" for which no further explanation was given). Bare and conclusory explanations belie a prevailing party's obligation to demonstrate the reasonableness of his or her request. *See Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996) (plaintiff has the burden of showing the reasonableness of billed time).

Additionally, PACER fees with no explanation as to why they were reasonable and necessary for use in the case must be discounted.  See *Martinez v. Refinery Terminal Fire Co.*, 2:11-CV-00295, 2016 WL 4594945, at *11 (S.D. Tex. Sept. 2, 2016) (declining to tax PACER fees as costs because the Plaintiffs did not meet their burden regarding the PACER entries).

Here, Dechert does not sufficiently support its $494.67 request for "Lexis" expenses, $2,394.34 request for "Westlaw" expenses, $787.50 for "Pacer research fees", $925.75 for "legal publication expense," "$45,297.40 and $21.90 for "research fees", and $335.20 for "search fees." *See* Doc. No. 1174-8, at 2. Instead, it merely writes "Legal Research" and "search fees". *Id.* Further, the "documentation" merely lists a name and a date.  This type of incomplete documentation prevents the State

---

*Lexisnexis Screening Solutions, Inc.*, No. 13-CV-10774, 2015 WL 9459724, at *4-6 (E.D. Mich. Dec. 28, 2015) (deferring plaintiff's request for computerized legal research expenses because there was no way to determine (i) whether the charges were incurred in connection with this particular litigation; or (ii) whether each charge was reasonably related to the issues raised).

Defendants from determining whether the $50,256.76 billed by Dechert counsel for legal research was relevant, related to this litigation, and reasonably billed.

Brennan Center also fails to provide specific details as to charges for their research.  Their receipts do not state who did the research, simply putting "contractor 1, 2, 3, 4.." etc. and there is a vague description as to what was researched.  See Doc. No. 1174-13, at 4.  These charges should be reduced by $37,361.02 due to the inability to determine their relevancy to the litigation and whether the charges are reasonably billed.       Additionally, the Plaintiffs fail to state whether these types of expenses are covered by their firm's overhead and whether they have a flat rate contract with the vendors for these services. Accordingly, the Court should disallow recovery of these charges in their entirety.

### 3.  Texas taxpayers should not be forced to foot the bill for extravagant and unnecessary expenses

Although a prevailing party is not limited to the costs set forth in 28 U.S.C. § 1920, non-taxable expenses "must not be awarded when they are extravagant or unnecessary." *Curtis*, 822 F.2d at 553. The court is free to decline to award costs where the expenses are not deemed to be "reasonably necessary" to the litigation. *Alex v. KHG of San Antonio, LLC*, 125 F.Supp.3d 619, 630 (W.D. Tex. 2015); *see, e.g., Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.,* 118 F.3d 245, 257–58 (5th Cir.1997).

Luxurious lodging falls squarely within a category of expenses that are both extravagant and not "reasonably necessary" to the litigation. *Cypress-Fairbanks Indep. Sch. Dist.*, 118 F.3d at 257-58; *see also Fisher Scientific Intern., Inc. v.*

*Modrovich*, No. Civ. A. H-03-0467, 2005 WL 3348901, at *10 (S.D. Tex. Dec. 8, 2005) (bookings at top of the line hotels was not necessary for completion of the activities and the successful prosecution of the plaintiff's case). The Plaintiffs have not shown that there were no other available hotels at cheaper rates. It is the fee applicant's burden to show that these expenses were reasonable. *Walker*, 99 F.3d at 770.

Dechert has several expenses that are exorbitant.  Ezra Rosenberg charges $413 a night for two nights at the W hotel from November 5-7, 2013 in Washington DC with no indication as to why he needed to be there. *See* Doc. 1174-10 at page 9. During that same trip, he charges $99.00 for lunch with no indication as to how it relates to this case. *See Id.* at page 12.  Rosenburg also charges $485.10 a night for a total of $1,115.74 at the W Austin from April 22-24, 2014, and charges $119.05 for dinner (no itemized receipt), again with no indication how this relates to the case. *See* Doc. No. 1174-10, at 126.  Although Lindsey Cohan does not submit billable time for second chairing the deposition of Debbie Riddle on June 18, 2014, since she served a passive role, she does submit her hotel cost of $369.00 plus internet and food at $519.24, which should be deducted. *See* Doc. 1174-10 at page 173.  Further, Rosenberg stayed at the Westin in Houston at $283.05 a night for 3 nights for the same deposition, totaling $1,044.89, which should be reduced. *See* Doc. 1174.10 at page 187. Rosenberg's hotel fees are exorbitant, there are several examples of staying at overly luxurious hotels such as the W at $395 a night or more. *See, e.g.,* Doc. 1174-10 at pages 126, 229, 230, 303, 305.  Rudd stayed at the St. Regis in Houston for $560 a night and The Jefferson in Washington DC at $400 a night. *See id.* at page 231 and

241.   Dechert's fees should be reduced by at least $5,776.81 for these exorbitant expenses.

Brennan Center overstaffs several trips with no indication as to why these trips are necessary in their billing or in their expense sheet.   For example, they have Clark, Minni, and Perez on flights on August 31, 2014 for a total of $3,060.00 in airfare and $2,156.57 in hotel fees. *See* Doc. 1174-13 at page 2-4.   These should be reduced.   Additionally, there is a one-night charge for $725.46 at the Omni Corpus Christi that should be reduced as an exorbitant expense. *See Id.* at page 3.   Similarly, Armand Derfner lists two hotel stays that also seem unreasonably high.   On July 11, 2014, he submits a fee for $1,078.69 for case travel and lodging in Houston, and on August 31, 2014 case travel and lodging for one night to Corpus Christi of $1,597.29. *See* Doc. 1175-3 at page 23.   Further he lists for May 26-May 30, 2015 travel and lodging for $1,472.36 and $1,143,42 on June 8-10, 2016 as Trips-Chs-DEC.   *Id.* at page 24.   This gives Defendants no indication as to what was involved in these expenses and these should be reduced as exorbitant expenses.

### B. Texas Taxpayers Should Not be Forced to Foot the Bill for Non-Compensable Expenses.

In 2015, the Western District stated the following:

> The Court does not agree that postage, shipping costs, and the expenses of purchasing office supplies, issuing press releases, and accessing the federal courts' electronic case filing system (PACER) are properly included in an award of attorneys' fees, as all of these are overhead expenses typical to any law practice.

*Clark v. Centene Corp.*, No. 12-CA-174-SS, 2015 WL 6962894, at *10-11. (W.D. Tex. Nov. 10, 2015). Written in the context of the Fair Labor Standards Act, the court's

evaluation of a party's request for reimbursement of out-of-pocket expenses is no different in the instant context. The burden is on the Plaintiffs to show that these types of expenses are not part of their overhead expenses.  The Plaintiffs have failed to do so. Thus, the following requests should be denied outright:

| OVERHEAD EXPENSES | | |
|---|---|---|
| **Name** | **Expense** | **Total** |
| Dechert | Courier | $329.39 |
| | Document Storage/Retrieval | $403.70 |
| | Supplies | $332.24 |
| **TOTAL for Dechert** | | **$1,065.33** |
| Campaign Legal Center | Postage | $115.00 |
| Brazil and Dunn | Postage | $514.64 |
| **TOTAL for Veasey-LULAC** | | **$629.64** |
| **GRAND TOTAL** | | **$1,694.97** |

## 1.  Copying & Scanning Costs:

Taxable costs may be awarded for copies when they are necessarily obtained for use in a case. 28 U.S.C. § 1920(4). The prevailing party has the burden of showing that the copies were necessary. *Martinez v. Refinery Terminal Fire Co.*, 2:11-CV-00295, 2016 WL 4594945, at *10 (S.D. Tex. Sept. 2, 2016) *citing Fogelman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991). The cost of copies obtained simply for the convenience of counsel are not reimbursable. *Id.*

While it is not expected that a prevailing party will identify every copy made for use in the course of a legal proceeding, courts do require some demonstration that reproduction costs result from the litigation. *Id.* The party against whom costs are taxed should pay for the cost of producing relevant documents and exhibits for use in the case, "but should not be held responsible for multiple copies of documents,

attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines." *Id.*

In this case the Plaintiffs failed to file a Bill of Costs with the Court for their requested taxable costs. Based on this failure to comply with the Court's deadline in its local rules, the Court should disallow all taxable costs in the fee award.

If the Court determines that Plaintiffs' failure to file a Bill of Costs is not detrimental to their request for taxable costs, the Court should determine whether the taxable costs sought by Plaintiffs are reasonable and necessary. The following costs related to duplication and scanning lack any detail showing their connection to the case and their necessity:

- Dechert – duplication charges at $630 and $16,206.66 in "outside duplication costs." Doc. No. 1174.8.
- CLC - $6,987.09 – printing and production. Doc. No. 1175.4.
  - $139.20 – daily copy rate. *Id.* at 152.
  - $359.04 – daily copy rate. *Id.* at 153.
  - $287.04 – daily copy rate. *Id.* at 154.
  - $228.48 – daily copy rate. *Id.* at 155.
  - $405.12 – daily copy rate. *Id.* at 156.
  - $391.68 – daily copy rate. *Id.* at 157.
  - $343.68 – daily copy rate. *Id.* at 158.
  - $360.96 – daily copy rate. *Id.* at 159.
  - $368.64 – daily copy rate. *Id.* at 160.
- HJ&C - $50 copies and faxes.  Doc. No. 1142.1, at 18.

Without some evidence provided by Plaintiffs regarding the nature of the copies and some detail about why they were reasonable and necessary to the litigation, the Court should reduce the copying costs by 25% to account for the possibility that some of the copies were not necessary for the litigation but were

produced for the convenience of the attorneys. *Martinez,* 2:11-CV-00295, 2016 WL 4594945, at *11 (S.D. Tex. Sept. 2, 2016).

### 2.  Deposition, Transcript & Video Costs:

Deposition and transcript costs can also be taxed as costs under § 1920; however, the party seeking the costs has the burden of showing that the various versions of the deposition were reasonably obtained for use in the case. *Baisden*, 793 F. Supp. 2d at 977.  As discussed *supra,* Plaintiffs did not file a Bill of Costs. Thus, all taxable costs under § 1920 should be disallowed in the overall fee award.

Since the Fifth Circuit in this case found that most of the depositions used to show discriminatory purpose were not necessary and the Plaintiffs were not successful with this claim, these costs should not be charged to State Defendants.  *See Veasey v. Abbott*, 830 F.3d 216, 231 n.13 (5th Cir. 2016) (en banc) ("The district court here allowed extensive discovery of legislative materials which did not yield a 'smoking gun.'").

Such costs include:

- LDF - $21,107.92 – deposition and transcripts. *See* Doc.  1172-3.
- Dechert - $1,481.75- deposition, no name or specificity.  *See Doc*. 1174-8.
- Baron - $939.82 - transcript of Ruby Barber/Jimmy Denton. *See* Doc. 1175-1, at page 104.
- Brazil & Dunn – $118.63 - Exceptional Reporting Services.  *See* Doc. 1175-2, at page 108.
    - $939.82 - copy of Ruby Barber/Jimmy Denton transcript – duplicate from Baron. *See* Doc. 1175-2, at page 212.
    - $999.92 - 3-day rush of Gabriel Sanchez.  *See* Doc. 1175-2, at page 213.
    - $493-20 - 2-day rush of Matthew Barreto.  *See* Doc. No. 1175.2, at page 214.
    - $903.59 – copy of Vera Trotter transcript.  *See id*. at page 224.

Plaintiffs also submitted costs for shipping, binding, and handling of the depositions.  These costs are not recoverable. *U.S. ex rel. Long v. GSDMidea City, L.L.C.*, 807 F.3d 125, 133 (5th Cir. 2015).  Several of the receipts for these costs do not include the monetary breakdown.  For example, Doc.1172-3 includes a transcript for a two-day rush of Elizabeth Gholar and Orville Burton, which includes binding and shipping and handling, but does not include the amount for each.  Doc. 1174-10, at 461 also includes a rush fee and shipping and handling for a total for $901.14, but no breakdown of costs.  Other amounts that must be deducted from costs include:

- $270 for expediting Senator Robert Duncan's transcript (Doc. 1172-3)
- $25 processing and handling fee for the deposition of Senator Robert Duncan (Doc. 1172-3)

These costs should be deducted from Plaintiff's overall request for expenses.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should Plaintiffs' requests for attorney's fees and expenses because they are not prevailing parties. In the alternative, the Court should reduce the request for attorneys' fees and expenses by three-fourths based on Plaintiffs' overall result in the case because Plaintiffs prevailed on only one of four claims, and they did not segregate the billed fees and expenses on this claim from their failed claims. State Defendants also request the Court to reduce the award of attorney's fees and expenses to Plaintiffs to reflect only hours reasonably expended and the prevailing market rate in this case.  The below tables summarize the State Defendants' request for reductions to the Plaintiffs' overall request for attorney's fees.

| REDUCTION TO APPLY TOWARDS RIOS (HJ&C) AWARD | | | |
|---|---|---|---|
| **Category** | **Hours** | **Total Based on Plaintiffs' Proposed Rates** | **Total Based on Defendants' Proposed Rates** |
| Travel | 58.5 | $17,930.25 | $11,700.00 |
| Clerical | 27.8 | $17,041.40 | $11,120 |
| Motion to Withdraw | 1.6 | $980.80 | $640.00 |
| Business Development | 4.8 | $2,942.40 | $1,920.00 |
| Lost Claims | 4.4 | $2,697.20 | $1,760.00 |
| Excessive | 79.9 | $48,978.70 | $31,960 |
| TOTAL | 177 | $90,570.75 | $59,100.00 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $44,053.86[19] | $31,146.40 |
| GRAND TOTAL | | **$134,624.61** | **$90,246.40** |

Based on the appropriate hourly rate, $155,732, and the reductions calculated using these rates, $90,246.40, the State Defendants request the Court award Rios no more than $65,485.60.  In the unlikely event that the Court finds that the hourly rates requested by Rios are appropriate, the Court should reduce the total fee requested by Rios ($220,269.29) by $134,624.61 and award Rios no more than $85,644.68.

The Court should apply the following reductions to an award by LDF.

| REDUCTION TO APPLY TOWARDS LDF (IMANI CLARK) AWARD | | | |
|---|---|---|---|
| **Category** | **Hours** | **Total Based on Plaintiffs' Proposed Rates** | **Total Based on Defendants' Proposed Rates** |

---

[19] The 20% reduction is based on Rios' total fee request of $220,269.29.

| | | | $0 (added after deadline) |
|---|---|---|---|
| Travel | 148.8 | $29,703.45 | $0 (added after deadline) |
| Overstaffing | 2 | $716 | $500 |
| Clerical | 437.2 | $206,063.50 | $124,445 |
| Motion to Withdraw | 3.3 | $1,181.40 | $825.00 |
| True the Vote | 1.25 | $715 | $400 |
| Business Development | 22.3 | $10,949.30 | $5,575.00 |
| Excessive | 97.9 | $34,972.60 | $24,475 |
| TOTAL | 712.75 | $284,301.25 | $156,220 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $153,147.26[20] | $93,482.00 |
| **GRAND TOTAL** | | **$437,448.51** | **$249,702.00** |

Based on the appropriate hourly rate, $217,708.00, and the reductions calculated using these rates, $249,702.00, the State Defendants request the Court award LDF no more than $217,708.00. In the unlikely event that the Court finds that the hourly rates requested by LDF are appropriate, the Court should reduce the total fee requested by LDF ($765,736.30) by $437,4483.51 and award LDF no more than $328,287.79.

The Court should apply the following reductions to an award by Wilmer Hale.

| REDUCTION TO APPLY TOWARDS WILMER HALE (IMANI CLARK) AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| Overstaffing | 69.6 | $29,023.20 | $17,400 |

---

[20] The 20% reduction is based on LDF's total fee request of $765,736.30.

| | | | |
|---|---|---|---|
| Duplicative | 1184.4 | $428,316.10 | $297,400 |
| Excessive | 1078.1 | $396,613.50 | $271,075 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $49,139.38[21] | $93,482.00 |
| **GRAND TOTAL** | | **$903,092.18** | **$618,523.00** |

Based on the appropriate hourly rate, $652,960, and the reductions calculated using these rates, $618,523.00, the State Defendants request the Court award Wilmer Hale no more than $34,437.00.  In the unlikely event that the Court finds that the hourly rates requested by Wilmer Hale are appropriate, the Court should reduce the total fee requested by Wilmer Hale ($982,787.50) by $903,092.18 and award Wilmer Hale no more than $79,695.33.

The Court should apply the following reductions to an award by Brennan Center.

| REDUCTION TO APPLY TOWARDS BRENNAN CENTER (NAACP-MALC) AWARD | | | |
|---|---|---|---|
| **Category** | **Hours** | **Total Based on Plaintiffs' Proposed Rates** | **Total Based on Defendants' Proposed Rates** |
| Attorney's Fees | 0.1 | $8.34 | $4.00 |
| Duplicative | 141 | $58,797.00 | $35,250 |
| True the Vote | 0.3 | $125.10 | $75.00 |
| Business Development | 24.3 | $10,133.10 | $6,075.00 |
| Lost Claims | 9.2 | $3,836.40 | $2,300.00 |
| Amicus Briefs | 13 | $5,421.00 | $3,250.00 |
| TOTAL | 187.9 | $78,320.94 | $46,954.00 |

---

[21] The 5% reduction is based on Wilmer Hale's total fee request of $982,787.50.  This reduction is smaller due to the lack of block billed entries and a handful of vague entries.

| | | |
|---|---|---|
| Vague and Block-Billing, 20% Reduction to Total Fee Award | $47,140.22[22] | $26,485.00 |
| **GRAND TOTAL** | **$125,461.16** | **$73,439.00** |

Based on the appropriate hourly rate, $132,425.00, and the reductions calculated using these rates, $73,439.00, the State Defendants request the Court award Brennan Center no more than $58,986.00.  In the unlikely event that the Court finds that the hourly rates requested by Brennan Center are appropriate, the Court should reduce the total fee requested by Brennan Center ($235,701.10) by $125,461.16 and award Brennan Center no more than $110,239.94.

The Court should apply the following reductions to an award by Dechert.

| REDUCTION TO APPLY TOWARDS DECHERT (NAACP-MALC) AWARD | | | |
|---|---|---|---|
| **Category** | **Hours** | **Total Based on Plaintiffs' Proposed Rates** | **Total Based on Defendants' Proposed Rates** |
| Travel | 36 | $10,620.00 | $6,600.00 |
| Clerical | 558 | $132,445.00 | $86,320 |
| Duplicative | 164.4 | $95,473.60 | $61,365 |
| Motion to Withdraw | 0.5 | $179.00 | $125.00 |
| Pro Hac Vice | 15 | $5,265.00 | $3,750.00 |
| Lost Claims | 17.2 | $7,314.70 | $4,300.00 |
| Media | 6.8 | $3,338.80 | $1,700.00 |
| Excessive | 795.8 | $456,819.00 | $282,040 |
| TOTAL | 1593.7 | $711,455.10 | $446,200.00 |

---

[22] The 20% reduction is based on Brennan Center's total fee request of $235,701.10.

| Vague and Block-Billing, 20% Reduction to Total Fee Award | $296,860.92[23] | $192,123.50 |
| **GRAND TOTAL** | **$1,008,316.02** | **$638,323.50** |

Based on the appropriate hourly rate, $960,617.50, and the reductions calculated using these rates, $638,323.50, the State Defendants request the Court award Dechert no more than $322,294.00.  In the unlikely event that the Court finds that the hourly rates requested by Dechert are appropriate, the Court should reduce the total fee requested by Dechert ($1,484,304.60) by $1,008,316.02 and award Dechert no more than $475,988.58

The Court should apply the following reductions to an award by Bledsoe.

| REDUCTION TO APPLY TOWARDS BLEDSOE (NAACP-MALC) AWARD | | | |
|---|---|---|---|
| **Category** | **Hours** | **Total Based on Plaintiffs' Proposed Rates** | **Total Based on Defendants' Proposed Rates** |
| Travel | 8 | $2,452.00 | $1,600.00 |
| Duplicative | 23.1 | $14,160.30 | $9,240 |
| TOTAL | 31.1 | $16,612.30 | $10,840.00 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $9,268.56[24] | $6,048.00 |
| **GRAND TOTAL** | | **$25,880.86** | **$16,888.00** |

Based on the appropriate hourly rate, $30,240.00, and the reductions calculated using these rates, $16,888.00, the State Defendants request the Court

---

[23] The 20% reduction is based on Dechert's total fee request of $1,484,304.60.
[24] The 20% reduction is based on Bledsoe's total fee request of $46,342.80.

award Bledsoe no more than $13,352.00.  In the unlikely event that the Court finds that the hourly rates requested by Bledsoe are appropriate, the Court should reduce the total fee requested by Bledsoe ($46,342.80) by $25,880.86 and award Bledsoe no more than $20,461.94.

The Court should apply the following reductions to an award by Garza (MALC).

| REDUCTION TO APPLY TOWARDS GARZA (NAACP-MALC) AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| Travel | 11.8 | $3,616.70 | $2,360.00 |
| Clerical | 5.8 | $3,555.00 | $2,320 |
| Duplicative | 26.2 | $16,060.60 | $10,480 |
| Lost Claims | 1.3 | $796.90 | $520.00 |
| TOTAL | 45.1 | $24,029.20 | $15,680.00 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $10,163.54[25] | $6,632.00 |
| GRAND TOTAL | | $34,192.74 | $22,312.00 |

Based on the appropriate hourly rate, $33,160.00, and the reductions calculated using these rates, $22,312.00, the State Defendants request the Court award Garza no more than $10,848.00.  In the unlikely event that the Court finds that the hourly rates requested by Garza are appropriate, the Court should reduce

---

[25] The 20% reduction is based on Garza's total fee request of $50,817.70.

the total fee requested by Garza ($50,817.70) by $34,192.74 and award Garza no more than $16,624.96.

The Court should apply the following reductions to an award by Lawyer's Committee.

| REDUCTION TO APPLY TOWARDS LAWYER'S COMMITTEE (NAACP-MALC) AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| Travel | 22.95 | $7,034.18 | $2,360.00 |
| Attorney's Fees | 2.8 | $343.28 | $179.20 |
| Clerical | 2.4 | $1,471.00 | $960 |
| Duplicative | 257.9 | $158,092.70 | $103,160 |
| Pro Hac Vice | 0.1 | $61.30 | $40.00 |
| Lost Claims | 3 | $1,839.00 | $1,200.00 |
| Excessive | 361.7 | $221,722.10 | $144,680 |
| TOTAL | 650.85 | $390,563.56 | $252,579.20 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $111,032.69[26] | $72,452.00 |
| GRAND TOTAL | | $501,596.25 | $325,031.20 |

Based on the appropriate hourly rate, $362,260, and the reductions calculated using these rates, $325,031.20, the State Defendants request the Court award Lawyer's Committee no more than $37,228.80. In the unlikely event that the Court finds that the hourly rates requested by Lawyer's Committee are appropriate, the

---

[26] The 20% reduction is based on Lawyer Committee's total fee request of $555,163.45.

Court should reduce the total fee requested by Lawyer's Committee ($555,163.45) by

$501,596.25 and award Lawyer's Committee no more than $53,567.20

The Court should apply the following reductions to an award by Notzon.

| REDUCTION TO APPLY TOWARDS NOTZON (TX NAACP) AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| Duplicative | 1.25 | $680.00 | $438 |
| Business Development | 2.75 | $1,496.00 | $962.50 |
| Lost Claims | 0.3 | $163.20 | $105.00 |
| Media | 0.1 | $54.40 | $35.00 |
| TOTAL | 4.4 | $2,393.60 | $140.00 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $4,607.84[27] | $2,961.00 |
| GRAND TOTAL | | $7,001.44 | $3,101.00 |

Based on the appropriate hourly rate, $14,805.00, and the reductions

calculated using these rates, $3,101.00, the State Defendants request the Court

award Notzon no more than $11,704.00.  In the unlikely event that the Court finds

that the hourly rates requested by Notzon are appropriate, the Court should reduce

the total fee requested by Notzon ($23,039.20) by $7,001.44 and award Notzon no

more than $16,037.76.

---

[27] The 20% reduction is based on Notzon's total fee request of $23,039.20.

The Court should apply the following reductions to an award by Covich.

| REDUCTION TO APPLY TOWARDS COVICH AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| Covich | 40 | $22,880 | $14,000 |
| TOTAL | | $22,880 | $14,000 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $4,576.00 | $2,800.00 |
| GRAND TOTAL | | $18,304.00[28] | $11,200.00 |

Based on the appropriate hourly rate, $14,000.00, and the reductions calculated using these rates, $2,800.00, the State Defendants request the Court award Covich no more than $11,200.00. In the unlikely event that the Court finds that the hourly rates requested by Covich are appropriate, the Court should reduce the total fee requested by Covich ($22,880.00) by $4,576.00 and award Covich no more than $18,304.00.

The Court should apply the following reductions to an award by Brazil and Dunn.

| REDUCTION TO APPLY TOWARDS BRAZIL & DUNN AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| Overstaffing | 41.2 | $23,566.40 | $16,480 |
| Clerical | 61.5 | $30,471.90 | $18,790 |

---

[28] The 20% reduction is based on Covich's total fee request of $22,880.00.

| Duplicative | 139.5 | $78,465.60 | $54,160 |
| Motion to Withdraw | 2.2 | $1,096.40 | $680.00 |
| Pro Hac Vice | 0.9 | $450 | $400 |
| True the Vote | 1.1 | $540.10 | $330.00 |
| Business Development | 3.7 | $2,268.10 | $1,480.00 |
| Excessive | 266 | $139,321.60 | $90,560 |
| TOTAL | 516.1 | $276,180.10 | $182,880 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $128,483.20[29] | $81,184.00 |
| **GRAND TOTAL** | | **$404,663.30** | **$264,064.00** |

Based on the appropriate hourly rate, $405,920.00, and the reductions calculated using these rates, $264,064.00, the State Defendants request the Court award Brazil and Dunn no more than $141,856.00.  In the unlikely event that the Court finds that the hourly rates requested by Brazil and Dunn are appropriate, the Court should reduce the total fee requested by Brazil and Dunn ($642,416.00) by $404,663.30 and award Brazil and Dunn no more than $237,752.70.

The Court should apply the following reductions to an award by CLC.

| REDUCTION TO APPLY TOWARDS CLC AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| Overstaffing | 78.5 | $33,830.30 | $24,395 |
| Attorney's Fees | 2.3 | $161.46 | $130.97 |
| Clerical | 23.5 | $7,227.70 | $5,875 |

---

[29] The 20% reduction is based on Brazil & Dunn's total fee request of $642,416.00.

| | | | |
|---|---|---|---|
| Duplicative | 117 | $64,468.80 | $43,245 |
| Pro Hac Vice | 1.8 | $867.60 | $585.00 |
| True the Vote | 17.4 | $2,390.70 | $1,560.00 |
| Lost Claims | 17.4 | $6,107.40 | $4,350.00 |
| Amicus Briefs | 17.4 | $306.50 | $200.00 |
| Excessive | 305.9 | $114,579.10 | $85,640 |
| TOTAL | 581.2 | $229,939.56 | $165,981 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $153,746.63[30] | $116,522.00 |
| **GRAND TOTAL** | | **$383,686.19** | **$282,502.97** |

Based on the appropriate hourly rate, $582,610.00, and the reductions
calculated using these rates, $282,502.97, the State Defendants request the Court
award CLC no more than $300,107.03.  In the unlikely event that the Court finds
that the hourly rates requested by CLC are appropriate, the Court should reduce
the total fee requested by CLC ($768,733.14) by $383,686.19 and award CLC no
more than $385,046.95.

The Court should apply the following reductions to an award by Derfner.

| REDUCTION TO APPLY TOWARDS DERFNER-ALTMAN AWARD | | | |
|---|---|---|---|
| **Category** | **Hours** | **Total Based on Plaintiffs' Proposed Rates** | **Total Based on Defendants' Proposed Rates** |
| Travel | 4 | $1,226.00 | $800.00 |
| Overstaffing | 1 | $613 | $400 |
| Duplicative | 100.5 | $61,606.50 | $40,200 |

[30] The 20% reduction is based on CLCL's total fee request of $768,733.14.

| | | | |
|---|---|---|---|
| Business Development | 1 | $613.00 | $400 |
| Lost Claims | 81 | $49,653.00 | $32,400.00 |
| Excessive | 88 | $53,944.00 | $35,200 |
| TOTAL | 275.5 | $167,655.50 | $109,400.00 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $142,902.56[31] | $96,328.00 |
| **GRAND TOTAL** | | **$310,558.06** | **$205,728.00** |

Based on the appropriate hourly rate, $481,640.00, and the reductions calculated using these rates, $205,728.00, the State Defendants request the Court award Derfner no more than $275,912.00. In the unlikely event that the Court finds that the hourly rates requested by Derfner are appropriate, the Court should reduce the total fee requested by Derfner ($714,512.80) by $310,558.06 and award Derfner no more than $403,954.74.

---

[31] The 20% reduction is based on Derfner's total fee request of $714,512.80.

The Court should apply the following reductions to an award by Baron.

| REDUCTION TO APPLY TOWARDS BARON AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| Overstaffing | 5.5 | $33,830.30 | $24,395 |
| Duplicative | 4.3 | $2,459.60 | $1,720 |
| Excessive | 10.6 | $6,063.20 | $4,240 |
| TOTAL | 20.4 | $42,353.10 | $30,355 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | | $29,126.22[32] | $20,368.00 |
| GRAND TOTAL | | $71,479.32 | $50,723.00 |

Based on the appropriate hourly rate, $101,840.00, and the reductions calculated using these rates, $50,723.00, the State Defendants request the Court award Baron no more than $51,117.00.  In the unlikely event that the Court finds that the hourly rates requested by Baron are appropriate, the Court should reduce the total fee requested by Baron ($145,631.12) by $71,479.32 and award Baron no more than $74,151.80.

The Court should apply the following reductions to an award by Taylor.

| REDUCTION TO APPLY TOWARDS TAYLOR AWARD | | | |
|---|---|---|---|
| Category | Hours | Total Based on Plaintiffs' Proposed Rates | Total Based on Defendants' Proposed Rates |
| TRLA | | | |
| Travel | 131.3 | $38,148.45 | $22,680.00 |

---

[32] The 20% reduction is based on Baron's total fee request of $145,631.12.

| | 42.1 | $5,161.46 | $2,694.40 |
|---|---|---|---|
| Attorney's Fees | | | |
| Clerical | 25.8 | $14,621.70 | $8,590 |
| Duplicative | 86.5 | $51,925.70 | $31,920 |
| Business Development | 29.1 | $15,976.10 | $8,860.00 |
| Media | 1.9 | $1,164.70 | $760.00 |
| Excessive | 46.5 | $27,041.70 | $16,480 |
| TOTAL | 363.2 | $154,039.81 | $91,984.40 |
| Vague and Block-Billing, 20% Reduction to Total Fee Award | $200,870.66[33] | | $116,360.00 |
| **GRAND TOTAL** | **$354,910.47** | | **$208,344.40** |

Based on the appropriate hourly rate, $581,800, and the reductions calculated using these rates, $2,800.00, the State Defendants request the Court award Taylor no more than $208,344.40.  In the unlikely event that the Court finds that the hourly rates requested by Taylor are appropriate, the Court should reduce the total fee requested by Taylor ($1,004,353.30) by $354,910.47 and award Taylor no more than $649,442.83.

The following is a summary of expenses that should be reduced from any Plaintiff award:

| REDUCTION TOWARDS EXPENSE AWARD FOR CAMPAIGN LEGAL CENTER | |
|---|---|
| **Category** | **Total** |
| Overstaffing | $4,837.92 |
| Vague Expenses | $9,871.23 |
| Insufficient Documentation | $22,545.08 |
| Overhead | $115.00 |
| **TOTAL DEDUCTIONS** | $37,369.23 |

---

[33] The 20% reduction is based on Taylor's total fee request of $1,004,353.30.

| | |
|---|---|
| **REQUESTED** | $114,533.37 |
| **GRAND TOTAL** | **$77,164.14** |

| REDUCTION TOWARDS EXPENSE AWARD FOR BRAZIL AND DUNN | |
|---|---|
| **Category** | **Total** |
| Non-Itemization (Credit Card Statement) | $299,911.64 |
| **TOTAL** | **$299,911.64** |
| **REQUESTED** | **$299,911.64** |
| **GRAND TOTAL** | $0.00 |

| REDUCTION TOWARDS EXPENSE AWARD FOR DERFNER AND ALTMAN | |
|---|---|
| **Category** | **Total** |
| Non-Itemization (Credit Card Statement) | $13,673.82 |
| **TOTAL** | $13,673.82 |
| **REQUESTED** | $13,673.82 |
| **GRAND TOTAL** | **$0.00** |

| REDUCTION TOWARDS EXPENSE AWARD FOR LDF | |
|---|---|
| **Category** | **Total** |
| Overstaffing | $10,108.27 |
| Insufficient Documentation | $21,107.92 |
| Non-Itemization (Credit Card Statement) | $16,603.80 |
| **TOTAL** | $47,819.99 |
| **REQUESTED** | $138,975.09 |
| **GRAND TOTAL** | **$91,155.10** |

| REDUCTION TOWARDS EXPENSE AWARD FOR DECHERT | |
|---|---|
| **Category** | **Total** |
| Extravagant and Unnecessary Expenses | $5,776.81 |
| Vague Expenses | $20,809.86 |
| Insufficient Documentation | $33,529.76 |
| Overhead | $1,065.33 |
| Copying | $16,836.66 |
| Research Fees | $50,256.76 |
| **TOTAL** | $128,275.18 |
| **REQUESTED** | $267,418.95 |
| **GRAND TOTAL** | **$139,143.77** |

| REDUCTION TOWARDS EXPENSE AWARD FOR LAWYER'S COMMITTEE | |
|---|---|
| **Category** | **Total** |
| Insufficient Documentation | $7,883.09 |
| **TOTAL** | **$7,883.09** |
| **REQUESTED** | **$7,883.09** |
| **GRAND TOTAL** | **$0.00** |

| REDUCTION TOWARDS EXPENSE AWARD FOR BRENNAN CENTER | |
|---|---|
| **Category** | **Total** |
| Overstaffing | $5,216.57 |
| Research | $37,361.02 |
| **TOTAL** | $42,577.59 |
| **REQUESTED** | $51,405.95 |
| **GRAND TOTAL** | **$8,828.36** |

| REDUCTION TOWARDS EXPENSE AWARD FOR TRLA | |
|---|---|
| **Category** | **Total** |
| Insufficient Documentation | $44,273.62 |
| **TOTAL** | $44,273.62 |
| **REQUESTED** | $44,273.62 |
| **GRAND TOTAL** | **$0.00** |

Dated: October 17, 2019                    Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division

*/s/Dominique G. Stafford*
DOMINIQUE G. STAFFORD
Texas Bar No. 24079382
SUMMER R. LEE
Texas Bar No. 24046283
Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2120 PHONE
(512) 320-0667 FAX
Dominique.Stafford@oag.texas.gov
Summer.Lee@oag.texas.gov
*Attorneys for the State of Texas*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on October 17, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

<u>*/s/ Dominique G. Stafford*</u>
DOMINIQUE G. STAFFORD
Assistant Attorney General