IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *et al.*,

Plaintiffs,

v.

GREG ABBOTT, *et al.*,

Defendants.

Civil Action No. 2:13-cv-193 (NGR)
(Consolidated Action)

## TEXAS NAACP AND MALC PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF REGARDING AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

PLEASE TAKE NOTICE that attorneys on behalf of the Mexican American Legislative Caucus of the Texas House of Representatives ("MALC") and the Texas State Conference of NAACP Branches ("Texas NAACP") rely on all Private Plaintiffs' Consolidated Reply Brief in Support of Motion for Attorneys' Fees, Costs, and Expenses, filed by the Veasey Plaintiffs. Additionally, MALC and Texas NAACP attorneys hereby submit attorney-specific reply declarations on behalf of Ezra Rosenberg (Lawyers' Committee for Civil Rights Under Law and Dechert LLP), Jose Garza (MALC), Myna Pérez (Brennan Center for Justice), Gary Bledsoe (Texas NAACP), and Neil Steiner (Dechert LLP).[1]

Texas NAACP/MALC attorneys jointly supplement their reply to Defendants as follows:

As detailed in the original submissions, counsel had already substantially cut the vast

---

[1] Attorneys Robert Notzon and Daniel Covich also rely on the arguments and authorities cited by Private Plaintiffs in their joint reply as well as their initial declarations. Doc. 11174-24; Doc. 1187-1.

majority of hours for which it was seeking fees.  Approximately 40 different attorneys and paralegals at Dechert devoted more than 5,200 hours to this case. Dechert is not seeking fees for any of the paralegal time or the hundreds of hours of document review. Dechert is seeking fees for only four attorneys, whose time, in addition, has been substantially cut by nearly 45 percent. (Steiner Decl., paras. 5 and 6). Nine different attorneys at the Lawyers' Committee worked on this case; but the Lawyers' Committee seeks fees for just two, and for only a little more than a third of the time spent by those two.  (Rosenberg Decl., paras. 5 and 6).  The Brennan Center is seeking an award for only one of its attorneys, despite several others having worked on the matter, and has already cut that one attorney's time by more than 40%.  (Pérez Decl., para. 9). Other counsel had similarly made substantial cuts to their original submissions. (*See, e.g.,* Garza Decl., paras. 1, 7).

Nevertheless, Defendants propose cutting an additional 2,513.02 hours: cutting Dechert's fee request by more than two-thirds; Garza's by more than three-fifths; Bledsoe and Brennan Center's by more than half; and Notzon and Covich's by a significant amount, considering their relatively small ask.  The State's proposed additional cuts would, if adopted in full, cut the already-reduced time of 4,553.98 hours requested by NAACP/MALC attorneys by more than half, with just 2,040.96 hours remaining. And that figure is *before* the State's proposed additional 20% reduction of the total dollar amount of the submissions is applied.

To put this in full perspective, perhaps most astonishingly, Defendants propose reducing the Lawyers' Committee's original fee request of $555,163.45 by $501,596.25, and "request the Court award Lawyers' Committee no more than $37,228.80"! Defendants, in short, propose to compensate the Lawyers' Committee for under 7% of the amount requested.[2]

One of the only two lawyers for whom the Lawyers' Committee is seeking an award is

---

[2] The actual fee requests of some of Texas NAACP/MALC's counsel was amended by supplemental submissions.  As explained in the declarations, counsel submits that the supplemental requests are the controlling requests.  (*See* Perez Decl., para. 2; Rosenberg Decl., p. 5 n.5).

Ezra Rosenberg, who was one of the lead trial attorneys for Texas NAACP/MALC, while at Dechert until October 31, 2014; and, after joining the Lawyers' Committee, continued his role as coordinating counsel, facilitating coordination between and among all private plaintiff groups, DOJ, the State, and this Court.  How is it possible that the Lawyers' Committee, which was a prime participant in all aspects of this case could be entitled to a fee of only $37,228.80 for the entire case?

The answer is that it is not possible, and the reasons why it is not possible explain why Defendants' entire proposal must be given the shortest of shrifts as to all of Texas NAACP/MALC's counsel's fee and costs requests.

### Double-Counting in Defendants' Calculations

First, Defendants made simple mathematical errors that led to massive over-deductions:

Defendants took double-deductions from the totals requested by many Texas NAACP/MALC attorneys, by deducting for both alleged "Excessive" and alleged "Duplicative" time, as well as other alleged deficiencies for the same time entries.  So, for example, Defendants propose deducting both $158,092.70 for "Duplicative" time (257.9 hours) and $221,722.10 for "Excessive" time (361.7 hours) from the Lawyers' Committee's request.  Doc. 1196 at 87-88 (summary). But 210.9 of those hours were labeled as *both* "Duplicative" and "Excessive" by Defendants, and Defendants deducted those 210.9 hours *twice*.  Thus, $129,281.70 – the 210.9 hours at the rates requested by the Lawyers' Committee –  should be added back, even before dealing with the merits of the alleged "Duplicative" or "Excessive" billing.  (*See* Rosenberg Decl., para. 12).

The same happened with Dechert's time, where Defendants seek to deduct 164.4 hours of Dechert's time as "Duplicative" and 795.8 hours of Dechert time as "Excessive," but had double-counted 116.3 hours of Dechert's time as *both* "Duplicative" and "Excessive," necessitating an add-back of $69,590.00 before we even address the merits of the alleged "Duplicative" or

"Excessive" billing.  (Steiner Decl., para. 11).[3]

## Improper Application of Any Across-the-Board Cut

The second reason that Defendants' proposed reductions make no sense – before we even get to the merits – is that they take a 20% reduction across-the board for "Vague and Block Billing" off every plaintiff's requested fee.  This is so even though, in the case of the Lawyers' Committee, they do not allege that any single entry is either "Vague" or "Block" billed; and, in the case of the Brennan Center, they allege that fewer than 3% of its time entries fall in those categories.  Thus, Defendants deduct over $111,000 from the Lawyers' Committee's fee off the top for "Vague" and "Block" billing even though they do not allege that any of the Lawyers' Committee's entries fell in those categories.  Defendants propose similar outsized reductions for the other NAACP/MALC attorneys.

Further, Defendants apply that proposed deduction to the *total* fee request instead of to the sum remaining *after* Defendants' proposed categorical cuts are made. To demonstrate the impact of this error, had Defendants' suggested $500,000 in cuts off the Lawyers' Committee's original submission of $555,163.45, taking 20% off that ($111,032.69), would result in a reduction of the original submission of $555,163.45 by $611,032.69.  (Rosenberg Decl., p. 5, n. 7).  That is essentially what happened here.  In the Lawyers' Committee's case, fixing that error alone would result in restoration of over $50,000, and proportional amounts to all other counsel, even under Defendants' illegitimate across-the-board cut proposal.  (*See, e.g.*, Rosenberg Decl. para. 14; Steiner decl. para. 12; Pérez Decl. paras. 16-18; Bledsoe Decl., para. 5).

As shown in the table below, the effect of the State's mathematical errors on Texas

---

[3] Defendants make other serious mathematical and accounting errors.  For example, they seek to deduct 558 hours of Dechert's time as "Clerical," but 362.2 of this time was already deducted by Dechert in its initial application, and another 15.5 had already been deducted by Dechert as relating to pro hac vice applications and motions to withdraw. (Steiner Decl. at 10, 15).  They also mistakenly flip the number of Mr. Rosenberg's hours they challenge as "excessive" from 468.6 to 486.6, resulting in an $11,034 over-deduction.  (Rosenberg Decl., para. 12). In this Supplemental Reply Brief, we are not setting forth all of our replies to Defendants' proposed cuts.  Those are detailed in the accompanying declarations.

NAACP/MALC's fee request – before dealing with the merits of Defendants' challenge – is

$467,859.69.  (Rosenberg, Decl., para. 4):

**Effect of State's Mathematical Errors on NAACP/MALC Fee Request Before Dealing With Merits of the State's Arguments**

|  | Dechert LLP | Lawyers' Committee | Brennan Center | Garza | Bledsoe | Notzon[4] |
|---|---|---|---|---|---|---|
| Double or Triple Counted Time | $72,517.90 | $129,281.70 | N/A | N/A | N/A | N/A |
| Clerical Time Error | $60,125.20 | N/A | N/A | N/A | N/A | N/A |
| Vague/Block-Billed Error[5] | $115,762.42 | $52,256.31 | $17,061.32 | $5,529.26 | $3,812.86 | $478.72 |
| Transposed Numbers Error | N/A | $11,034.00 | N/A | N/A | N/A | N/A |
| **Erroneous Mathematical Errors per Group** | **$248,405.52** | **$192,572.01** | **$17,061.32** | **$5,529.26** | **$3,812.86** | **$478.72** |
| **GRAND TOTAL OF ERRONEOUS MATHEMATICAL ERRORS (all groups)** | **$467,859.69** |  |  |  |  |  |

Turning to the merits of Defendants' suggested reductions, the primary reasons that they

should be rejected are (1) Defendants have provided absolutely no explanation as to why what

they describe is actually "Duplicative" or "Excessive" – and, further, fail to take into account the

massive deductions already made by counsel; (2) to the extent that Defendants hint at any

explanation, it is belied by the facts; and (3) their allegations of "Block" and "Vague" billing

---

[4] Aside from the proposed 20% reduction, the State does not challenge any of Daniel Covich's time. *See* Doc. 1196 at 89.

[5] All of the amounts in this row are calculated by multiplying the State's proposed categorical reductions by the hourly rate for that attorney, taking 20% of that amount, and subtracting that from the size of Defendants' proposed 20% cut. For example, Defendants propose cutting 31.1 hours of Gary Bledsoe's time and then 20% of his total request. *See* Doc. 1196 at 85. At a rate of $613, those 31.1 hours amount to $19,064.30 in proposed cuts. Mr. Bledsoe's original request was for $46,342.80. $46,342.80 - $19,064.30 = $27,278.50. 20% of that amount is $5,455.70. This should be the amount of Defendants' proposed reduction. Instead, Defendants propose a $9,268.56 reduction. The difference between that number and the correct number, as reflected in the table above, is $3,812.86.

entries make no sense in the context of the time recording narratives provided.

### Alleged "Duplicative" Entries

While claiming massive duplication of effort, with extraordinarily few exceptions, nowhere do Defendants explain *why* any specific challenged time entry duplicated another specific time entry. Specifically, never do they compare one time entry by one time recorder to another's on the same day. (*See, e.g.*, Pérez decl., para. 9). Nor do they take into account anywhere the substantial deductions in time already made by counsel in their original submissions, precisely in order to account for and avoid duplication. (*See, e.g.*, Pérez decl., para. 9; Rosenberg decl. para. 20, 24). By way of example, the lack of any rhyme or reason to Defendants' approach regarding "Duplicative" entries is seen further in their applying that tag to Mr. Rosenberg's time spent preparing the expert witness for a deposition he was himself defending and for preparation for his taking the depositions of Defendants' experts, (Rosenberg, decl. para. 21), and in Mr. Garza's meeting – alone – with a legislative witness and Chairman of MALC. (Garza, decl., para. 7).[6] There is no basis for any deduction for "Duplicative" entries.

### Alleged "Excessive" Entries

Nor is there any basis for deduction for "Excessive" entries. The overwhelming majority of time that Defendants characterize as "Excessive" was recorded by Mr. Rosenberg. Specifically, they purport to strike 664.5 hours of his time (486.6 at Dechert[7] and 177.9 at Lawyers' Committee). This represents almost half the time for which Dechert is requesting a fee for Mr. Rosenberg's hours and about a third of the time for which the Lawyers' Committee is requesting a fee for Mr. Rosenberg's hours.[8] This makes no sense.

---

[6] See also the Brennan Center's response to the "Duplicative" allegation as to its time (Perez Decl., para. 8) and Mr. Bledsoe's lengthy explanation as to why his work was not duplicative. (Bledsoe Decl., para. 5).

[7] In another error, Defendants deduct 486.6 hours of Mr. Rosenberg's Dechert time, but support it with an Exhibit that states the total as 468.6. (Rosenberg Decl., para. 26).

[8] This does not take into account the substantial hours of Mr. Rosenberg's time that both Dechert and the Lawyers' Committee chose not to request compensation for. Counsel had already deducted 1,207.97 hours of Mr. Rosenberg's time (255.6 hours at Dechert and 952.37 at Lawyers' Committee) before the organizations made their original submissions.

For example, in Defendants' view, in the life of the case from its inception through trial and post-trial briefing, i.e., his time at Dechert, Mr. Rosenberg should not have spent more than 555.8 hours, a period that included the preparation of the complaint, the defense against a motion to dismiss, dozens of conferences and hearings on a multitude of discovery disputes (several of which required briefing), the taking of 75 depositions (many of which Mr. Rosenberg attended, and several of which he defended or took), trial preparation, preparation of voluminous proposed findings of fact and conclusions of law, preparation of post-trial briefing, a 70 hour trial (during which Mr. Rosenberg gave one of the primary openings, put on the stand key fact and expert witnesses, cross-examined the only expert witness put on live by Defendants, and gave one of the primary closings). Beyond that, Mr. Rosenberg was the lead coordinating counsel for the Private Plaintiffs, coordinating – and often negotiating – with DOJ and with Defendants; ensuring that the Private Plaintiffs spoke with one voice; and generally easing the administrative burden on all parties and the Court. (*See* Rosenberg Decl., para. 30).  Nevertheless, Defendants argue that Mr. Rosenberg should have spent no more than an average of 40 hours a month on the case during this time.

Nowhere do Defendants explain why.  Indeed, in their brief they make only two mentions of Mr. Rosenberg's time on the issue of "Excessive" billing. First, Defendants note that "Rosenberg charges over 200 hours in just answering emails and phone calls to other Plaintiffs' counsel, seemingly to reduce any duplicative hours."  (Doc. 1196 at 52).  The exhibit pages they cite to, of course, do not support Defendants' description, because the time recording on those pages include dozens of hours for tasks other than emails and telephone calls. (Rosenberg Decl., para. 28).

More to the point, 200 hours on such tasks over the 13-month period from September 2013 through October 2014 barely scratches the surface of the amount of time Mr. Rosenberg spent sending and receiving over 3,500 emails and holding telephone conferences virtually daily and often several times a day with all or some of the Private Plaintiffs, DOJ, the State, and the

Court.  (*Id.*)  That Defendants have not provided a single affidavit from any one of the several attorneys who actually dealt with Mr. Rosenberg and the rest of plaintiffs' counsel during that time is telling.  (Rosenberg Decl., para. 29).

Defendants also provide the Court with a chart showing the amount of time of hearings, and argue that counsel should be limited to that amount of time.  Interestingly, in support of their attempt to strike 664.5 hours of Mr. Rosenberg's time, they cite in their brief specifically to a single block of only 2.4 hours on a hearing date. (Doc. 1196 at 52).  More important, Mr. Rosenberg's time sheets for each of the hearing dates provide a mountain of specificity for tasks other than participating in the particular hearing – including, preparing for the hearings, but also tasks as diverse as taking depositions – which more than supports the reasonableness of the time recorded.  (Rosenberg Decl., para. 32).

Similarly, Defendants would allow an award for only 324.4 hours of Mr. Rosenberg's time for the remainder of the case at the Lawyers' Committee, during which time he was a primary drafter of several briefs, including two Fifth Circuit briefs, was one of the principal negotiators of the Interim Remedial Order, and continued his role of coordinating attorney for the Private Plaintiffs.  (Rosenberg Decl., para. 33).  Nowhere do Defendants even hint at an explanation for their proposed cuts.  Again, there is none.  Defendants' challenge appears to be more a calculated scheme to slice off one of the more expensive portions of counsels' fee applications (given both the legitimate and necessary hours expended by Mr. Rosenberg and his hourly rate based on his seniority and experience) than a reasoned and evidence-based analysis.

### Alleged "Block" and "Vague" Billing

As noted above, Defendants propose applying an overall 20% deduction to all fees requested by plaintiffs to account for "Block" and "Vague" billing.  However, as also noted, each of the counsel has already deducted upwards of 50 to 60% of their time.  An additional across-the-board deduction is not warranted.

Moreover, Defendants are plainly overreaching.  For example, Defendants identify only

14.9 hours out of 516.5 hours sought by Brennan Center as block-billed or vague, yet seek to apply a 20% reduction. (Pérez Decl., para. 16). Similarly, Defendants do not identify a single Lawyers' Committee entry as vague or block-billed, yet seek to apply a 20% reduction against all of the Lawyers' Committee's request. (Rosenberg Decl., para. 39).

Equally important, the entries simply are not vague or block-billed. (*See, e.g.*, Pérez Decl., para. 17; Rosenberg Decl., paras. 35 to 39; Bledsoe Decl., para. 4). Time entries were uniformly made for a specific day, and described with precision what tasks were undertaken. (*See, e.g.*, Pérez Decl., para. 18; Rosenberg Decl., para. 35). The fallacy in Defendants' entire approach on this issue is that they characterize 78 of Mr. Rosenberg's time entries at Dechert as "Block" billed, State Exh. B-6 at 6 to 13, but not a single one of his entries at the Lawyers' Committee as "Block" billed, when the entries were done in precisely the same manner by Mr. Rosenberg at both organizations. There is no credibility to the State's characterization of any of the challenged entries as "Block" or "Vague" billing.[9]

### Other Issues

Plaintiffs have dealt specifically in their declarations with all other issues raised by Defendants, including Rates (Pérez Decl., para. 2 and 3; Steiner, Decl., para. 2); Travel (Steiner Decl. para. 14; Garza, Decl., para. 4; Pérez Decl., para. 5; Bledsoe Decl., para. 3; Rosenberg Decl., para. 16); Clerical (Garza Decl., para. 5; Pérez Decl., para. 6; Rosenberg Decl., para. 18;

---

[9]   Here are a couple of representative examples of what the State describes as "Block" billing by Mr. Rosenberg: 0.40 hours recorded on June 4, 2014 for "Multi calls with E. Westfall re deposition issues; emails to and from A. D'Andrea re deposition issues; conference call with Texas and DOJ re trial protocol issues; emails to plaintiff's group re miscellaneous discovery issues; conference with L. Minnite and M. Perez re expert testimony; review brief and draft opposition re deposition of P. Harless; attend to multiple discovery issues;" 4.30 hours recorded on June 6, 2014 for "Call with A Derfner in preparation for hearing; prepare for hearing; participate in hearing; emails to and from L Minnite; confer with M Yeary re fraud discovery; participate in call re affected persons; call with E Westfall re legislator depositions; emails to and from A D'Andrea re thereto;" and 4.20 hours recorded on July 15, 2014 for "Multi emails and calls re Texas motion for extension of time re experts; conference call with Texas re thereto; emails to court re thereto; multi emails re outstanding discovery issues; review Ansolabehere report; conference call with Chatman re sensitivity analysis." (Doc. 1196-14 at 8, 10).

Steiner Decl., paras. 15-17); Pro Hac Vice Applications (Rosenberg Decl., para. 40; Steiner
Decl., para. 20); Non-Compensable (Garza Decl., para. 8; Pérez Decl., para. 11); Attorney's Fees
Application (Pérez Decl., para. 12; Rosenberg Decl., para. 17); Motion to Intervene (Pérez Decl.,
para. 13); Lost Claims (Pérez Decl., para. 14; Rosenberg Decl., para. 41; Steiner Decl., para. 21);
Amicus Briefs (Pérez Decl., para. 15); Business Development Time/Media (Pérez Decl., para.
20-22; Steiner Decl., para. 22); and Expenses (Pérez Decl., paras. 23-25; Rosenberg Decl., para.
42; Steiner Decl. paras. 23 – 27).

Upon review of Defendants' Response Brief to Plaintiffs' Motion for Attorney's Fees,
Doc. 1196, and accompanying attachments, MALC and Texas NAACP attorneys have noticed a
few time entries and expense items which they have decided to deduct.  The reasons for these
revisions are set forth in the accompanying declarations.  Counsel revise their request for fees
and expenses as follows:

### Total Revised Fees Sought by Texas NAACP/MALC Plaintiff Group

| Firm/Organization | Total Fees Sought |
|---|---|
| Dechert LLP | $1,471,108.00 |
| Lawyers' Committee for Civil   Rights Under Law | $570,684.61 |
| Brennan Center for Justice | $245,953.40 |
| Texas NAACP | $67,812.95 |
| MALC | $48,697.20 |
| **Totals** | **$2,404,256.16** |

### Total Revised Expenses Sought by Texas NAACP/MALC Plaintiff Group

| Firm/Organization | Total Expenses Sought |
|---|---|
| Dechert LLP | $266,942.85 |
| Lawyers' Committee for Civil   Rights Under Law | $16,883.09 |
| Brennan Center for Justice | $51,405.95 |
| TX NAACP | $898.75 |
| MALC | $2,016.04 |
| **Totals** | **$338,146.68** |

Date:  February 7, 2020                    Respectfully submitted,

                                           /s/ Lindsey B. Cohan
                                           JON M. GREENBAUM
                                           EZRA D. ROSENBERG
                                           BRENDAN B. DOWNES
                                           Lawyers' Committee for
                                           Civil Rights Under Law
                                           1401 New York Avenue NW Suite 400
                                           Washington, D.C. 20005

                                           WENDY WEISER
                                           MYRNA PÉREZ
                                           The Brennan Center for Justice at NYU Law School
                                           120 Broadway, Suite 1750
                                           New York, New York 10271

                                           SIDNEY S. ROSDEITCHER
                                           Paul, Weiss, Rifkind, Wharton & Garrison LLP
                                           1285 Avenue of the Americas
                                           New York, New York 10019-6064

                                           LINDSEY B. COHAN
                                           Dechert LLP
                                           500 W. 6th Street, Suite 2010
                                           Austin, Texas 78701

                                           NEIL STEINER
                                           DECHERT LLP
                                           1095 Avenue of the Americas
                                           New York, New York 10036-6797

                                           JOSE GARZA
                                           Law Office of Jose Garza
                                           7414 Robin Rest Drive
                                           San Antonio, Texas 98209

                                           DANIEL GAVIN COVICH
                                           Covich Law Firm LLC
                                           802 N Carancahua, Ste 2100
                                           Corpus Christi, Texas 78401

                                           GARY BLEDSOE
                                           Potter Bledsoe, LLP
                                           316 W. 12th Street, Suite 307

Austin, Texas 78701

VICTOR GOODE
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215

ROBERT NOTZON
The Law Office of Robert Notzon
1502 West Avenue
Austin, Texas 78701

*Counsel for the Texas State Conference of NAACP Branches and the Mexican American Legislative Caucus of the Texas House of Representatives*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2020, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Lindsey B. Cohan
Lindsey B. Cohan
Dechert LLP
300 W. 6th Street, Suite 2010
Austin, Texas 78731
lindsey.cohan@dechert.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *et al.*,

              Plaintiffs,

        v.

GREG ABBOTT, *et al.*,

              Defendants.

Civil Action No. 2:13-cv-193 (NGR)
(Consolidated Action)

## REPLY DECLARATION OF EZRA D. ROSENBERG IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES

### INTRODUCTION

1. This declaration is submitted on behalf of the fee applications of both the Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee) and Dechert LLP. As explained in my original submission, I was a partner at Dechert LLP from the inception of this litigation through October 31, 2014 – a period covering the matter through trial. I then joined the staff of the Lawyers' Committee in November 2014, and remained there through the conclusion of this litigation. Throughout this time, I was one of the lead counsel in this litigation, and served as the primary coordinating counsel, interfacing with the Court, the Defendants, the Department of Justice, and all of the private plaintiffs, so as to allow the matter to proceed most efficiently.

2. Dechert and the Lawyers' Committee supported their fee applications with detailed billing records, describing with reasonable precision the tasks performed each day on the matter. Moreover, as explained in our original submissions, both Dechert and the Lawyers' Committee exercised their reasonable billing judgment in cutting the majority of time recorded on this matter by their attorneys.

1

3. Nevertheless, Defendants characterize 422.3 of the combined Dechert and Lawyers' Committees hours as "Duplicative," without explaining what they are duplicative of, and 1,157.5 of the combined Dechert/Lawyers' Committee hours as "Excessive," without explaining why they are excessive, and never taking into account the thousands of hours already cut by Dechert and the Lawyers' Committee in their original submissions. Further, Defendants propose a 20% across-the-board reduction for "Vague" and "Block-Billed" time, when, as we shall show, the description of the tasks performed are more than adequate to provide this Court with a basis for the fee claimed. In this declaration, we will provide multiple examples of the arbitrariness of Defendants' characterizations of the time recorded.

4. Were this not enough for this Court to reject Defendants' submission in its entirety, we will also explain how Defendants double-counted many of their deductions, and made other substantive mathematical errors, resulting in deducting hundreds of thousands of dollars in error.

## TIME ALREADY CUT

5. At the outset, it is critical to highlight the extent to which both Dechert and the Lawyers' Committee excluded time it expended on this litigation from its fees application.[1] Nine different attorneys at the Lawyers' Committee worked on this matter – the Lawyers' Committee seeks attorneys' fees for just *two*. Doc. 1174-2 at 8.[2]

6. Additionally, the Lawyers' Committee is not even seeking fees for a majority of the time those two attorneys spent on this matter. While those attorneys spent a total of 2,621 hours on this case, we seek fees for just 952.63 hours (or 36.3% of the total time). As for my time specifically, I spent 1,454.4 hours litigating this case while at the Lawyers' Committee and

---

[1] Neil Steiner, a Dechert partner, will be submitting his own declaration discussing these and other issues from Dechert's perspective.

[2] The Lawyers' Committee is a non-profit, non-partisan organization. Fees awarded in this case would go not to the individual attorneys, but to the organization. Such funds are used to continue to litigate civil rights cases on behalf of our clients, all of whom are represented on a *pro bono* basis.

seek fees for just 502.03 hours (34.5% of my total time). *Id.*

7. When including the seven attorneys and one paralegal for which *no* time is sought, the Lawyers' Committee seeks compensation for just 26.0% of the total time spent on this matter (952.63 hours out of a total of 3,658.3).

8. In dollar terms, the Lawyers' Committee excluded $1,451,294.61 from its application and seeks just $583,962.19. We made those cuts, when originally submitting our application — even before Defendants' responsive papers were filed. Nowhere do Defendants mention or acknowledge any reduction made by the Lawyers' Committee, much less the fact that we do not seek compensation for 74.0% of the time we expended on this case.

9. We made those substantial cuts, despite my role as coordinating counsel throughout the litigation, in which, as stated in my original Declaration, I "was one of the prime interfaces with all Private Plaintiffs, coordinating the joint submissions; with the Department of Justice, including coordinating submissions, preparing for trial, and coordinating the presentation of evidence at trial; [and] with the State of Texas, including coordinating many of the evidentiary and witness issues on behalf of the Private Plaintiffs; and with the Court." *Id.* at 3. Nowhere in their brief do Defendants contest or question the critical nature of my role in this litigation.

10. I emphasize that I played this role throughout this litigation — when I was a partner at Dechert, and when — after retiring from Dechert on October 31, 2014 — I became Senior Special Counsel of the Lawyers' Committee on November 3, 2014, and then co-Director of its Voting Rights Project on July 1, 2015. The same justification for the substantial time I spent coordinating this litigation applies for the time I incurred at Dechert as well as for the time I incurred at the Lawyers' Committee.

11. Despite our asking for only slightly more than a quarter of the time expended on this matter,

the State proposes additional, drastic cuts to the Lawyers' Committee's submission. The State insists that Plaintiffs' proposed hourly rates are inflated (a contention which we vehemently oppose in our joint brief),[3] and suggests a series of categorical reductions, which, combined, would result in an award to the Lawyers' Committee of "no more than $37,228.90." Doc. 1196 at 87. Such reductions represent just 6.4% of the amount sought ($37,228.90 / $583,962.19). When considered as a function of the total time the organization spent on this matter (fees for hours excluded from our submission + hours included), the State submits that the Lawyers' Committee should be compensated for no more than 1.8% of the time it expended on this litigation ($37,228.90 / $2,035,256.80). The absurdity of the scope of the reductions should cast doubt on the entirety of Defendants' submission.

## MATHEMATICAL ERRORS

12. The State proposes a series of cuts, by category, to the Lawyers' Committee's request. Doc. 1196 at 87-88 (summary). Yet those cuts alone feature a host of mathematical errors that make Defendants' entire submission incredible, and provide a significant portion of the explanation as to how Defendants can arrive at their ridiculous figure of $37,228.90 for the Lawyers' Committee's fee.  Defendants assert that the Lawyers' Committee's award should be reduced by 257.9 hours because they were "Duplicative" and an additional 361.7 hours because they were "Excessive." *Id.* But 210.9 of those hours were *double counted* in that the State labeled many time entries as both duplicative and excessive and then discounted those entries *twice*. This error alone restores 210.9 hours and, at a rate of $613 per hour, $129,281.70, to the Lawyers' Committee's award.[4]  There is an additional mathematical error in the State's calculations, as their Exh. B-4 (Doc. 1196-12) calculates their proposed

---

[3] All figures in this brief are based on Plaintiffs' proposed hourly rates.
[4] *See* Doc. 1196-11 at 12-20 (hours labeled "Duplicative"); Doc. 1196-21 at 17-24 (hours labeled "Excessive"). All hours labeled both "Duplicative" and "Excessive," 210.9 in total, were double-counted in Defendants' summary of proposed reductions. *See* Doc. 1196 at 87-88. At a rate of $613 per hour, that results in the restoration of $129,281.70.

cut of my Dechert time on this basis at 468.6 hours, but their cumulative table has it at 486.6. At $613 hourly rate, this mathematical mistake adds back $11,034.00 to the base fee, before dealing with the merits of Defendants' arguments.

13. Additionally, Defendants propose a "Vague and Block Billing" reduction of 20% of the Lawyers' Committee's original total submission of $555,163.45.[5] *Id.* First, we note that, nowhere in their supporting Exhibits, do Defendants claim that a single time entry recorded by the Lawyers' Committee was either "Vague" or "Block" billed.  Thus, there is no justification, by their own admission, for even a penny reduction on this basis, let alone a 20% reduction.  That more than $110,000 mistake also goes a substantial way to explaining how Defendants come up with a $37,228.90 figure. That proposed reduction will be discussed in more detail *infra*, but that aspect of Defendants' calculations also features a critical arithmetic error in that the percentage reduction is applied to the *total* fee request instead of on the sum remaining *after* Defendants' proposed categorical cuts are subtracted. Specifically, after subtracting $261,281.56[6] in Defendants' proposed categorical cuts from the original submission of $555,163.45, $293,881.89 of the Lawyers' Committee's submission remains. Instead of taking their proposed (and, to be discussed, unsubstantiated) additional 20% off of that reduced amount, which would be another deduction of $58,776.38, Defendants take off 20% of the original *total* submission and propose a reduction of $111,032.69. This difference of $52,256.31 should be added back to the basis of the

---

[5] While Defendants' assert that only the Lawyers' Committee's original submission of $555,163.45 should be considered, we maintain that the revised submission of $583,962.19, which includes some reductions proposed by the Defendants as well as some additions based on legal authority provided by the Defendants - including the time expended on preparing the fee submissions - should be the baseline in this matter.
[6] This figure is reached by taking Defendants' total categorical cuts figure of $390,563.56 and restoring $129,281.70 of double-counted reductions. With that fix, $261,281.56 of Defendants' proposed categorical reductions remain.

Lawyers' Committee's award even before considering the merits of Defendants' substantive arguments.[7]

14. Leaving aside the lack of basis for any deduction on the basis for "Vague" or "Block" billing, combined, the mathematical errors in Defendants' brief add $192,572.01 to the basis for Lawyers' Committee's award, even before we get to the legitimacy of the substance of Defendants' proposed deductions.

15. The same errors, including time incorrectly deemed "Clerical", appear in the State's response to Dechert's application. Those errors will be detailed in Neil Steiner's declaration, but a summary of the errors in these three categories, as it applies to Dechert and the Lawyers' Committee, appears below

<u>**Summary of State's Mathematical Errors**</u>

|  | **Dechert LLP** | **Lawyers' Committee** |
|---|---|---|
| Double or Triple Counted Time | $72,517.90 | $129,281.70 |
| Clerical Time Error | $60,125.20 | N/A |
| Vague/Block-Billed Error | $115,762.42 | $52,256.31 |
| Transposed Numbers Error | N/A | $11,034.00 |
| **<u>Total Amount of Errors</u>** | **$248,405.52** | **$192,572.01** |

Calculating the 20% mistake for all Texas NAACP/MALC counsel, the total impact on counsel's fee request caused by the State's mathematical errors is $467,859.69, as shown in the table below:

---

[7] To highlight this error, consider a scenario in which the State proposed $500,000 of categorical cuts *plus* 20% of the *total* submission for "Vague and Block Billing" (or $111,032.69). In that example, the State would propose to reduce a $555,163.45 submission by $611,032.69.

**Effect of State's Mathematical Errors on NAACP/MALC Fee Request Before Dealing With Merits of the State's Arguments**

| | Dechert LLP | Lawyers' Committee | Brennan Center | Garza | Bledsoe | Notzon[8] |
|---|---|---|---|---|---|---|
| Double or Triple Counted Time | $72,517.90 | $129,281.70 | N/A | N/A | N/A | N/A |
| Clerical Time Error | $60,125.20 | N/A | N/A | N/A | N/A | N/A |
| Vague/Block-Billed Error[9] | $115,762.42 | $52,256.31 | $17,061.32 | $5,529.26 | $3,812.86 | $478.72 |
| Transposed Numbers Error | N/A | $11,034.00 | N/A | N/A | N/A | N/A |
| **Erroneous Mathematical Errors per Group** | **$248,405.52** | **$192,572.01** | **$17,061.32** | **$5,529.26** | **$3,812.86** | **$478.72** |
| **GRAND TOTAL OF ERRONEOUS MATHEMATICAL ERRORS (all groups)** | **$467,859.69** | | | | | |

**TRAVEL**

16. As for specific categorical reductions, Defendants propose reducing the 22.95 hours Mark Posner and I spent on non-working travel for this matter by 50%. Doc. 1196 at 40-41. Yet Defendants fail to realize that the Lawyers' Committee *already* imposed a 50% reduction on such time, and expressly noted doing so, when it submitted its application. *See* Doc. 1174-2

---

[8] Aside from the proposed 20% reduction, the State does not challenge any of Daniel Covich's time. *See* Doc. 1196 at 89.

[9] All of the amounts in this row are calculated by multiplying the State's proposed categorical reductions by the hourly rate for that attorney, taking 20% of that amount, and subtracting that from the size of Defendants' proposed 20% cut. For example, Defendants propose cutting 31.1 hours of Gary Bledsoe's time and then 20% of his total request. *See* Doc. 1196 at 85. At a rate of $613, those 31.1 hours amount to $19,064.30 in proposed cuts. Mr. Bledsoe's original request was for $46,342.80. $46,342.80 - $19,064.30 = $27,278.50. 20% of that amount is $5,455.70. This should be the amount of Defendants' proposed reduction. Instead, Defendants propose a $9,268.56 reduction. The difference between that number and the correct number, as reflected in the table above, is $3,812.86.

7

at 10.[10] Because of that failure, Defendants, in effect, propose to award 25% of the Lawyers' Committee's travel time. In recognition of this error and the Lawyers' Committee's use of the 50% rate at the outset, the Court should reject Defendants' proposed travel cuts in full.

## FEE APPLICATION

17. The State also argues that 2.8 hours of my time should be billed at 80% because it was spent preparing the fee application. Doc. 1196 at 59, 87. The Lawyers' Committee acknowledges that 2.8 hours of the time I spent on the fee application was not billed at 80%. Thus, a reduction of 0.56 hours is warranted.[11]

## CLERICAL

18. Defendants characterize 2.4 hours of my time at the Lawyers' Committee as "clerical." Doc. 1196 at 44, 87; Doc. 1196-2 at 18. Much of that contested time contains substantive legal work necessary to litigate the case, including discussing briefing issues with co-counsel. Bending over backwards to be reasonable, we have recharacterized 1 hour of my time that was arguable "clerical" as such, and will deduct it from our fee request.

## ALLEGED DUPLICATIVE, EXCESSIVE, VAGUE, AND BLOCK-BILLED TIME

### Alleged "Duplicative" Time

19. The State maintains that the vast majority of Dechert's and the Lawyers' Committee's hours are "Duplicative," "Excessive," "Vague," and/or "Block billed."[12] As discussed *supra*, 210.9 of the Lawyers' Committee's hours are double-deducted by the Defendants, and, as discussed in the declaration of Neil Steiner, 121.8 of Dechert's hours are double or triple deducted due to this same error by Defendants.

---

[10] For example, on August 24, 2014, Mark Posner spent 2.8 hours traveling. The Lawyers' Committee charged 50% or 1.4 hours. The same pattern repeats throughout Defendants' Exhibit B-1. Doc. 1196-9. While Defendants' also propose reducing my non-working travel time on page 41 of their brief, they also failed to itemize *any* of that time in Exhibit B-1.

[11] We note that Defendants expressly assert that time spent on the attorneys' fees application should be billed at 80%. Doc. 1196 at 58-59. Yet, in the summary of their proposed reductions, they incorrectly remove the time in its entirety. *Id.* at 87.

[12] Because virtually all of Defendants proposed reductions in these four categories are labeled with more than one of these adjectives, and because they fail to clearly distinguish between the four categories, we will discuss them jointly in this section.

20. Turning to the merits, as to alleged "Duplicative" billing, the State seeks to strike 164.4 hours of Dechert's time (including 135.1 hours of mine) and 257.6 hours of the Lawyers' Committee's time (174.2 hours of mine and 83.7 hours of Mr. Posner's), without a scintilla of explanation as to why the time was "Duplicative."  Nowhere in the State's discussion of this issue in their brief, Doc. 1196 at 48-50, do they even mention Dechert or the Lawyers' Committee, until they provide the massive total hours that they want stricken on this basis.

21. Most of my alleged "Duplicative" time at Dechert is also deemed "Excessive," (and is double-counted) and will be discussed more fully below.  But the only two times the State describes my Dechert time as "Duplicative" and not as anything else deficient suffice to demonstrate the ridiculousness of the State's description of my time as "Duplicative." The State characterizes my August 20, 2014 time of 11.50 hours as "Duplicative."  Doc. 1196-11 at 9.  But that was for my participation in the witness preparation of Daniel Chatman, the expert whose deposition I defended and put on the stand at trial, and for preparation of my actually taking the depositions of the State's only two experts (Hood and Mihlo).  Similarly, the State characterizes as "Duplicative" my time on August 22, 2014, for appearing at the deposition of Dr. Ansolabehere, one of the most important of DOJ's witnesses, and, again, my continuing to prepare to take the depositions of the State's experts.  What precisely is this time "duplicative" of?  The State has no explanation, because there is none.

22. The State's approach to the "Duplicative" issue for time recorded at the Lawyers' Committee is similarly arbitrary.  For the period from June 2013 through October 2014, Mark Posner is the only person for whose time a fee is being sought by the Lawyers' Committee.  Yet, that is the only time period for which the State alleges Mr. Posner's time is "Duplicative." Further, it is often for tasks that he and he alone was doing. For example, the several items relating to expert Chatman, for whom Mr. Posner was the point person from our team.  (*See, e.g.*, entries for June 24, 2014, July 2, 2104, July 16, 2014, July 21, 2014, Sept. 7, 2014; Doc. 1196-11 at 12-13), or for drafting the pretrial Conclusions of Law, as to which he was one of the primary drafters for the entire private plaintiffs' team.  (*See, e.g.*, entries of August 11,

9

2014, August 15, 20154, August 16, 2014, August 17, 2014; August 18, 2014; August 19, 2014; August 20, 2014; August 21, 2014; September 7, 2014; September 8, 2014; *id.* at 12–14).

23. Then, again arbitrarily, the State stops characterizing any of Mr. Posner's time as "Duplicative" after I joined the Lawyers' Committee staff in November 2014, but, without explanation, characterizes as "Duplicative" much of my time working at the Lawyers' Committee on drafting the post-trial brief, and the successful appellate brief. *Id.* at 15 – 16. Perhaps most bizarrely, the State characterizes as "Duplicative" my having synthesized the comments of the other co-plaintiffs in a single brief – to avoid duplication of effort – as is reflected in a time recording of July 31, 2018, which they challenge. *Id.* at 20. By definition, this is not duplication of effort *per se*.

24. Moreover, as discussed *supra*, Defendants willfully ignore the extent to which Dechert and the Lawyers' Committee *already* made specific and substantial reductions to its submission. For example, Defendants label 6.7 hours of Mark Posner's time working on the complaint as "duplicative." Doc. 1196-11 at 12. But a careful review of the Lawyers' Committee's submission reveals that 12.9 out of the 19.6 hours Mr. Posner spent related to the complaint were not charged *at all*.[13] *See* Doc. 1174-3 at 8-9. That pattern repeats itself throughout the rest of Defendants' critiques in these sections. And again, nowhere do Defendants explain *why* 6.7 hours billed by Mr. Posner – one of the most experienced Voting Rights Act attorneys in the country – on drafting a complaint was "duplicative," nor do they explain they labeled *any* particular entry "duplicative" or what, exactly, that entry was duplicative of.

---

[13] At no point do Defendants question Mr. Posner's qualifications or expertise in voting rights litigation. As discussed in our revised submission, Mr. Posner served in the Department of Justice's Civil Rights Division for 23 years, including 15 in the Voting Section. Doc. 1174-2 at 6. Mr. Posner was the "principal line attorney for the Lawyers' Committee on this matter" before I joined the organization. Before and after I joined, Mr. Posner "was a key strategist and brief writer," particularly in the development of critical filings and Plaintiffs' strategic decisions. Defendants do not contest any of these assertions.

**Alleged "Excessive" Time**

25.        As noted *supra* and in my previously submitted declaration, I was the primary coordinating counsel amongst Private Plaintiffs, with the Department of Justice,  with the State, and with this Court. That role *required* regular communications with each of those groups regarding the critical issues and filings in this case. Were it not for my efforts at coordination – both when at Dechert and at the Lawyers' Committee — the parties — including the State — and indeed this Court — would have had to spend considerably more time on this litigation dealing with individual parties. Throughout the litigation, I worked extremely hard to coordinate the positions of the various plaintiff groups into a single voice, and often communicated that voice to the Department of Justice, the Defendants and the Court. My hours — both at Dechert and the Lawyers' Committee — fairly reflect that necessary work. Nevertheless, the State proposes eliminating virtually all of that time, including the time spent communicating directly with the State itself.[14] In total, State proposes to cut 486.6 hours of my Dechert time and 177.9 of my Lawyers' Committee time as "excessive."

26. As noted above, there is an additional mathematical error in the State's calculations, as their Exh. B-4 (Doc. 1196-12) calculates their proposed cut of my Dechert time on this basis at 468.6 hours, but their cumulative table has it at 486.6.

27. In addition, Dechert, and particularly its attorneys Michelle Yeary and Lindsey Cohan, aided by paralegal Antonella Capobianco (whose time Dechert has not requested a fee for), served as the primary coordinating counsel for discovery for all of the Private Plaintiffs, centralizing control and review of documents, further facilitating the ability of Private Plaintiffs to speak with one voice.

28. The State provides virtually no explanation as to why any of my time recorded was excessive," except noting that "Rosenberg charges over 200 hours in just answering emails

---

[14] *See, e.g.,* Doc. 1196-11 at 18 (entry on August 28, 2015); *id.* at 19-20 (entries on August 1, 2016; August 2; and August 3). All four entries are labeled both duplicative and excessive.

and phone calls to other Plaintiffs' counsel, seemingly to reduce any duplicative hours." Doc. 1196 at 52.  Leaving aside that Defendants' reference to their Exhibit B-4, pages 5-15 does not support that claim, in that the time recording on those pages include dozens of hours for tasks other than emails and telephone calls, the fact is that 200 hours scarcely scratches the surface of the time I spent from September 2013 through October 2014 (the period covered by the pages of that exhibit) on emails and telephone calls.  During the period from September 17, 2013 through October 31, 2014, a little over a year, I sent or received over 3,500 emails relating to this litigation, hundreds of which were substantive and reflected hundreds of long substantive discussions with co-counsel, DOJ attorneys, our experts, and the State itself.  During the three-month period from July 1, 2014 through the end of trial in September alone, I sent approximately 275 emails where a lawyer representing the State (Scott, Clay, Whitley, Aston, D'Andrea, Reid, Wolf) was the primary recipient, and received an equal number of emails from the State's attorneys.  During this same short period, I sent well over 100 emails where DOJ attorneys (Dellheim, Westfall, Baldwin, Freeman) were the primary recipients and received an equal number back.  This is in addition to the hundreds and hundreds of additional emails circulated between me and the Private Plaintiffs counsel in this short period.  These emails and calls dealt with issues ranging from review of expert witness reports, to strategy concerning discovery and depositions, to dealing with the many legislative privilege objections raised by the State, to dealing with complex data and algorithm issues, to judicial notice issues, to massive preparation for the trial, where I coordinated the presentation of the plaintiffs' witnesses to ensure efficient trial days.  Indeed, my records detail numerous discussions with the State's attorneys themselves in the time the State challenges as "excessive".  See, e.g., March 17, 2014 (John Scott); March 27, 2014 (John Scott); April 2, 2014; April 7, 2014; April 10, 2014; April 17, 2014 (Ron Kiester); April 18, 2014; May 22, 2014; May 28, 2014; May 29, 2014; June 2, 2014 (Lindsey Wolf); June 3, 2014 (Arthur D'Andrea); June 4, 2014 (Arthur D'Andrea); June 5, 2014 (S Tatum); June 9, 2014 (Arthur D'Andrea); June 10, 2014; July 15, 2014.  This is in addition to the

many calls where the recipient of the calls were not specifically identified, but the issues were, which many times included the State; and does not include calls with the State for which we did not submit a fee request.   A fee request for 200 hours for the time I spent on emails and telephone calls is not only reasonable, but extremely conservative.

29. The period for the time I was at Dechert spanned the time from the filing of the Complaint through a motion to dismiss, dozens of court hearings, a multitude of complex discovery issues (many of which were briefed), more than 75 depositions, many of which I attended, several of which I defended or took, the preparation of voluminous pre-and post trial findings of fact and conclusions of law,a 70-hour trial, and substantial briefing in opposition to stay applications filed by the State following this Court's decision.   The State would limit my time for all of this work – including the extensive coordination work — to 555 hours, or slightly above 40 hours a month.   I note that the State has not submitted a single declaration or affidavit from any of the lawyers from the State who were actually involved in the pretrial and trial proceedings of this matter, such as John Scott, Reed Clay, Lindsay Wolf, David Whitley, or Arthur D'Andrea, and with whom I had hundreds of substantive calls and discussions, and exchanged hundreds of emails.   Defendants therefore have no basis to opine on the whether time was "excessive."

30. Further, Defendants' characterization of 468.6 hours of my time at Dechert as "excessive" is easily debunked. Specific examples illustrate the point. *See* Doc. 1174-7 (Dechert's hours log); Doc. 1196-12 (hours classified by the State as "Excessive").

    a. For example, how is it "excessive" for me to have spent 26.3 hours over a 12-day period from November 11 to 22, 2013 (or an average of about 3 hours a day) - as opposed to the only 8.0 hours the State would okay after deducting 18.3 hours as "excessive"- working on and finishing a brief in response to a motion to dismiss, discussing possible experts with co-counsel, having numerous calls with the Department of Justice, Defendants, and co-counsel in preparation of a hearing, and participating in a case management conference with the Court?

b. How is it "excessive" for me to have spent 4.70 hours over a 3-day period between December 18 and 20, 2013 - instead of the 0.70 hours the State would okay after deducting 4.0 hours as "excessive" - discussing expert issues with co-plaintiffs, having my first conversation with a person who turned out to be a key expert for plaintiffs, and reviewing draft interrogatories?

c. How is it "excessive" for me to have spent 9.2 hours over a 3 day period between February 4 and 6, 2014, during which time I had numerous calls with Elizabeth Westfall, Jennifer Maranzano and other DOJ attorneys; Chad Dunn, Gerry Hebert, and Neil Baron of the Veasey team; Natasha Kargaonkor of the LDF team, in addition to Michelle Yeary of Dechert, Myrna Perez of the Brennan Center, and Mark Posner of the Lawyers' Committee, all as detailed in my time records – on discovery issues, expert issues, and issues relating to an upcoming hearing, when this sort of activity is essential at the beginning of a complex case?  The State, without an inkling of explanation, deems *all* of this time as "excessive."

d. How is it "excessive" for me to have spent about 62.6 hours over nearly an entire month, from April 2, 2014 to April 28, 2014 - instead of the mere 22.6 (less than an hour a day), after deducting the 40.4 hours the States calls "excessive" - having numerous calls and emails with Defendants, DOJ, all of the co-plaintiffs on issues as diverse as attorney-client privilege, scheduling, discovery issues, trial protocol issues, and depositions, not to mention my drafting of an Advisory to this Court regarding trial protocol, when I was serving in the key coordination role, so as to facilitate discovery and pre-trial proceedings for the Court and the parties?  By way of example of the sorts of activities, I was undertaking during that period are emails exchanged between me and John Scott, then lead counsel for the State, reflecting discussions with the State "earlier in the week," on a series of discovery and trial preparation issues.  Exh. 1. That week included April 7, where the State seeks to exclude 3.20 hours of my time  as "duplicative" and "excessive," which was for,

14

among other things, "Call with DOJ, Texas and other parties re discovery issues . . ."

e.  How is it "excessive" for me to have spent 6 hours on May 1 preparing for and conducting conferences with all counsel, including DOJ, and then preparing for and participating in a hearing with the Court on a motion to quash?

f.  How is it "excessive" for me to have spent about 40.5 hours during an 18-day period from May 12 through May 29, 2014 - instead of the 6.0 hours left after deducting the 34.5 hours that the State arbitrarily and without explanation deems "excessive" - during which time I dealt with common interest issues, which required briefing, judicial notice issues, various discovery and expert issues, discussions with Defendants concerning legislator depositions, various meet and confers with Defendants, and preparation for and participation in a hearing before the Court on data bases and other issues, all as described precisely and at length in Dechert's time records?  Some of these issues and the activities I was undertaking in this period are reflected in the attached emails.  Exh. 2.

g.  How is it "excessive" for me to have spent the 123.5 hours they challenge during the entire month of June 2014 - instead of the 47.4 hours left after the State deducts 76.1 hours, again without explanation, as excessive - during which time I dealt with the briefing of the common interest issue to this Court; multiple calls with the State on legislators' depositions, conducted numerous all plaintiffs calls (including DOJ), participated in hearings before the Court, reviewed a number of expert reports and responses to requests for admission, and prepared for and actually took the depositions of two Texas legislators (Riddle and Harless)?

h.  How is it "excessive" for me to bill 90.3 hours of time for the entire month of July 2014 - instead of less than half that time remaining after the State's deduction of 48.2 hours as "excessive" - during which time I was conducting several calls every day with the plaintiffs and DOJ, reviewing deposition designations in preparation for trial, reviewing issues relating to the DLS data base, and  preparing for and

participating in hearings relating to discovery before this Court, all as detailed in Dechert's time records? A few of the dozens of emails reflecting some of this activity are attached to this declaration as Exhibit 3.

i. How is it "excessive" for me to have spent under 201.7 hours of time during August 2014 - instead of a little more than half that time, after deducting the 90.2 hours that the State deems, arbitrarily, as "excessive" - not only on preparation for the upcoming September 2 trial, but preparing a key expert (Dr. Chatman) for his deposition, defending that deposition, and drafting pre-trial Findings of Fact and Conclusions of Law? By way of examples of the sort of activities I was undertaking during that time, which inured to the benefit of all parties (including the State) and the Court are emails I sent to Brandy Cortez on August 29 (Exh. 4). The first, sent at 2:11 pm, detailed the witness list, including the proposed order of witnesses. The second, sent at 4:15 pm, reflects a conference with the parties concerning objections to exhibits and deposition designations, and provides a negotiated protocol for dealing with those issues. All of this was the result of substantial time spent in discussions with all of the parties, including the State, in order for plaintiffs to present their case effectively and reduce the burden on this Court.

j. And how is it "excessive" for me to have spent 20 hours in September 2014 not only preparing for one of the major closing arguments, but also beginning to prepare the supplemental Post-Trial Findings of Fact and Conclusions of Law?

31. Yet, Defendants, without explanation – because there is none – would strike almost 500 hours of my time at Dechert as "excessive" for these very tasks.

32. The State implies that some of the challenges as to excessiveness is explained by its Exhibit F, which purports to compare the "Actual Time" of hearings with time recorded by the attorneys in this case. First, I note that, while they give as an example for my time only a single entry of 2.4 hours on October 13, 2013, they proceed to attempt to strike over 45.0 hours of my time on this basis. However, in not one of my time entries that the State

challenges in this manner, was my time limited to the hearing, but always for necessary preparation for the hearing, follow-up to events in the hearing, and other tasks such as the participating in depositions, reviewing expert reports, and, of course, the massive amount of coordination I was doing among all of the plaintiffs, including DOJ, and with the State itself. *See* Doc. 1174-7 (Dechert's hours log); Doc. 1196-40 (Defendants' Ex. H – Hearing Dates and Times).

a. They challenge 2.4 hours of my time on October 18, 2013, indicating that a hearing that day lasted only 21 minutes.  But the time I recorded that day was for "Prepare for and participate in conference with court; calls with DOJ in preparation for conference; emails re thereto; call with DOJ after call with court."

b. They challenge 3.0 hours of my time on November 15, 2013, indicating that a hearing that day lasted only 51 minutes. But the time I recorded that day was for "Multi-calls with DOJ, State, LDF regarding hearing; multi emails regarding thereto; miscellaneous emails."

c. They challenge 5.0 hours of my time on February 14, 2014, indicating that the hearing that day lasted only 21 minutes.  But my time recorded that day was for "Multi calls and emails re discovery and other issues; prepare for and participate in hearing with court; review draft survey questions; emails to and from experts re retention; calls with co-counsel re coordination; emails re thereto."

d. They challenge 2.0 hours of my time on April 16, 2014, indicating that the hearing that day lasted only 20 minutes.  But my time recorded that day was for "Participate in hearing with court; emails to and from co-counsel re thereto; conference call with M Bell-Platts and E Westfall and G Hebert re thereto; emails to and form M Posner re thereto."

e. They challenge 6.0 hours of my time on May 1, 2014, indicating that the hearing lasted only 45 minutes.  But my time recorded that day was for "Prepare and conduct conferences with co-counsel, plaintiffs, groups, and DOJ; prepare for and participate

in hearing with Judge Ramos on motion to quash."

f.  They challenge 2.0 hours of my time on May 15, 2014, indicating that the hearing that day lasted only 43 minutes.  But my time recorded that day was for "Final preparation for and participation in status conference and argument before Judge Ramos; confer with DOJ after."

g.  They challenge 7.0 hours of my time on May 28, 2014, indicating that the hearing that day lasted 1 hour, 7 minutes.  But my time recorded that day included "prepare for and participate in hearing before Judge Ramos; prepare for and participate in meet and confer with Texas; prepare for and participate in call with parties on data bases; prepare for and participate in hearing on databases with court."

h.  They challenge 4.0 hours of my time on July 24, 2014, indicating that the hearing that day lasted 1 hour, 20 minutes.  But my time recorded for that day included "Prepare for and participate in hearing; prepare for and conduct calls with all plaintiffs and with DOJ."

i.  They challenge 5.5 hours of my time on July 30, 2014, indicating that the hearing that day lasted 1 hour, 3 minutes.  But my time recorded that day was for "Participate in multi calls in preparation of hearing before Judge Ramos; participate in hearing before Judge Ramos; participate in deposition of DPS 30(b)(6) witness; multi-calls with M Posner; multi emails with M Perez; confer with A Baldwin."

j.  They challenge 5 hours of my time on August 14, 2014, indicating that the hearing that day lasted 1 hour, 1 minute.  But my time recorded that day was for "Participate in hearing; participate in meeting with all counsel; attention to FOF [i.e., preparation of the pretrial Findings of Fact]."

k.  They challenge 3 hours of my time on August 27, 2014, indicating that the hearing that day lasted 1 hour, 32 minutes.  But my time recorded that day was for "Prepare for and participate in pretrial conference; attend to pretrial matters following conference; review material in preparation for trial."

18

33. The same pattern continues as to the State's challenge to Lawyers' Committee time on the ground of "excessive." Nowhere do Defendants explain, for example, why the time I spent working on the brief to the Fifth Circuit during January and February 2015 was excessive, why they challenge the time spent in March 2015 helping the oral advocates prepare for oral argument as excessive, or why they challenge the approximately 40 hours of time on issues relating to the first attempted interim remedial orders from July through September 2015, when I was one of the primary negotiators of those orders, or the approximately 22 hours spent on issues relating to the negotiation of the ultimate interim remedial order or the time challenged as to my work on our successful opposition to Defendants' petition for certiorari and stay motion.[15]  Nor does the State even attempt to explain why any of the time that Mr. Posner spent, particularly on the drafting of the pretrial and post-trial Findings of Fact and Conclusions of Law (*See, e.g.*, August 16, 17, 19, 20, 21; Sept. 7, 8, 13 15, 17; Doc. 1196-12 at 17-18) and on drafting appellate briefs (*See, e.g.*, the time challenged in February and March 2015; *id.* at at 18 -19) was in anyway excessive.  Again, Mr. Posner is one of the most experienced Voting Rights Act attorneys in the country and was a prime drafter of all major portions of all significant briefs on behalf of our clients.

34. And, finally, nowhere does the State take into consideration the fact that both Dechert and the Lawyers' Committee already cut the majority of their time before submitting their fee applications.

### Alleged "Block" and "Vague" Billing

35. Throughout the duration of this litigation, Dechert attorneys and Lawyers' Committee attorneys maintained meticulous records of time spent on this matter. Doc. 1174-7 (Dechert's hours log); Doc. 1174-3 (Lawyers' Committee's hours log). Those logs reveal a high level

---

[15] In my review of my time in response to the claims by Defendants as to "Excessive" billing, I noticed a possible mistake in the 8.0 hours recorded on August 1, 2016. While I am certain that the tasks described there were undertaken, the date seems to be wrong, as I cannot locate emails and outlook schedulers substantiating all but one of those calls (1 hour) and communications described. My best guess is that the 8/1/16 time was a duplicate of the time on 8/2/16. We would therefore reduce the Lawyers' Committee request by 7.0 hours.

of specificity for all time sought. There is no merit to Defendants' proposed reductions here as they pertain to either Dechert or the Lawyers' Committee, especially when both Dechert and Lawyers' Committee already exercised their judgment in drastically reducing time in order to ameliorate the effects of any duplicate, excessive, or vaguely entered time.

36. The lack of substance of the Defendants' position is revealed in that they characterize numerous entries of mine while I was at Dechert as "Block" or "Vague," *see* Doc. 1196-14 at 6-13; Doc. 1196-15 at 6-7, but *none* of my entries at the Lawyers' Committee were included under either label, even though I entered my time the exact same way at both organizations. *Id.* Leaving aside that issue, my Dechert time entries are not vague or block-billed on their face. They provide with great detail what tasks I was performing.[16]

37. The one specific example that the State posits in its brief of my so-called "Block" billing is an entry for the single day of June 19, 2014 (See State Br. at 56), where I recorded 12 hours for "Prepare for deposition of Rep. Harless; prepare for and conduct calls with all private plaintiffs and with DOJ; review and comment on Chatman revised report." That is not "Block" billing. It describes with specificity the many tasks I performed that day.

38. The ludicrousness of the State's position is seen most dramatically in how they handled my trial time (during which I was at Dechert), characterizing it as "Block," and using it as grounds for a 20% across-the-board deduction to Dechert's award.

---

[16] Here are a few representative examples of what the State describes as my "Block" billing: 0.40 hours recorded on June 4, 2014 for "Multi calls with E. Westfall re deposition issues; emails to and from A. D'Andrea re deposition issues; conference call with Texas and DOJ re trial protocol issues; emails to plaintiff's group re miscellaneous discovery issues; conference with L. Minnite and M. Perez re expert testimony; review brief and draft opposition re deposition of P. Harless; attend to multiple discovery issues;" 4.30 hours recorded on June 6, 2014 for "Call with A Derfner in preparation for hearing; prepare for hearing; participate in hearing; emails to and from L Minnite; confer with M Yeary re fraud discovery; participate in call re affected persons; call with E Westfall re legislator depositions; emails to and from A D'Andrea re thereto;" and 4.20 hours recorded on July 15, 2014 for "Multi emails and calls re Texas motion for extension of time re experts; conference call with Texas re thereto; emails to court re thereto; multi emails re outstanding discovery issues; review Ansolabehere report; conference call with Chatman re sensitivity analysis." (Doc. 1196-14 at 8, 10).

a. For September 2, 2014, Dechert requested compensation for 12.5 hours of my time, even though we described it with precision as: "Participate in trial; conduct post-trial day meeting with all co-counsel; confer with State re evidentiary issues; continue preparation of Johnson and Chatman direct examinations; confer with A Rudd re Johnson direct." *See* Doc. 1174-7 at 58.

b. Not only is this not "Block billing," under any reasonable definition of the term, the Court knows from the transcript of the proceedings on September 2, that I was at trial that whole day, which began at 7:58 am and ended at 6:15 pm, which accounts for 10.25 hours of the 12.5 recorded. Indeed, the transcript indicates that I presented the Private Plaintiffs' position on trial evidence to the Court (Tr. 10:3 to 27:3); gave one of the primary opening arguments (Tr. 33:22 to 38:12); and informed the Court of the proposed forthcoming witness schedule (Tr. 263:9-22; 266:18 to 267:5; 299:8-12). Nevertheless, astoundingly, Defendants assert that all of my time on September 2 was impermissibly block-billed.

c. Dechert requested just 2.50 additional hours on that day for a litany of tasks, including conducting a post-trial meeting with all co-counsel to prepare for the next day's witnesses – in order to ensure the efficiency of the trial – and conferring with the State re evidentiary issues – which again ensured that the private plaintiffs would be speaking with one voice – and preparing two witnesses' direct examinations. That amount of time is not only reasonable, but downright conservative. In fact, Dechert had, in the exercise of its billing judgment cut my requested time for September 2 from 16.0 hours to the 12.5 requested.

d. Similarly, Dechert requested compensation for 12 hours of my time for September 3, 2014. *Id.* Trial that day ran from 7:59 am to 5:49 pm, or approximately 9.75 of the time requested. The detailed narrative describes the rest of the day spent conferring with the State re: evidentiary issues; conducting a post-trial meeting with all counsel; meeting with a key fact witness, Rev. Peter Johnson, in preparation for his testimony;

21

and meeting with a key expert witness, Dr. Matt Barreto, in preparation for his testimony – all of which is more than enough to fill up the additional 2.25 hours after trial. In fact, again, Dechert, in the exercise of its billing judgment, had already cut the requested time for September 3 from 14.0 hours to the 12.0 hours requested. Yet, again, Defendants assert that all of this time is block-billed.

e. Dechert requested compensation for 12.5 hours of my time for September 4, 2014, *id.* at 59, a day I was in trial from 7:58 am to 6:10 pm, or about 10.2 hours) and put Dr. Johnson on the stand. (Tr. 6:6 to 22:1). I also informed the Court of progress on issues with Defendants, verifying that I was in constant contact with them after trial hours (Tr. 383:12 to 384:5). The remaining 2.3 hours after trial was spent again conducting a post-trial meeting of all plaintiffs; conferring with the State re: the next day's witnesses and evidence; and meeting with another fact witness, Rep. Anchia, in preparation for his testimony. Again, Defendants maintain that all of this time was block-billed.

f. Dechert requested compensation for 10.5 hours of my time for September 5, 2014, when I was in trial from 7:58 am to 6:16 pm, or 10.25 hours of the 10.5 hour trial day. *See* Doc. 1174-7 at 59. As detailed in the time records, I again conducted a post-trial meeting of all plaintiffs, and conferred with the State re: the next witnesses and evidence, easily consuming the .25 hours after trial. Again, Defendants maintain that all of this time was block-billed.

g. Dechert requested compensation for 12.0 hours of my time for September 8, 2014, a day I was in trial from 7:58 am to 5:57 pm, or 10.0 of those 12.0 hours. *Id.* That day, I put on the stand one of the key Plaintiffs' witnesses, Dr. Daniel Chatman (Tr. 77:6 to 118:16), and also discussed with the Court the remaining witness order. (Tr. 321: 7-10; 357:18 to 358:25). After the trial day ended, as described with precision in Dechert's time records, I conferred at length with the State's primary counsel, John Scott, and DOJ's Elizabeth Westfall, to discuss the possibility of an agreement under

which DOJ would not put its expert Dr. Chandler Davidson on live, and the State would not put its expert, Dr. Milyo, on live. I also had numerous discussions with members of the Veasey plaintiff team in preparation for our final witnesses, activities which easily consumed more than 2.0 hours of the time after trial. Nevertheless, again, Defendants maintain that all of this time was block-billed.

h. Dechert requested compensation for 12.0 hours of my time for September 9, 2014, a day I was in trial from 7:58 am until 6:25 pm, or 10.5 hours of the 12.0 hours requested. *See* Doc. 1174-7 at 60. During that day's proceedings, I advised the Court as to the progress of discussions with Defendants on a complex legal issue that affected the factual basis for testimony given by Plaintiffs' experts, explaining that the parties had met for 40 minutes on the issue, and would continue the discussions after the trial day ended. (Tr. 183:10-17). I also put on the record the terms of a judicial notice. (Tr. 195:8 to 196:3). As described in the detailed time narrative, the remaining 1.5 hours were spent conducting a post-trial meeting of all plaintiffs; preparing for the cross-examination of Defendants' only live expert witness; and meeting with various co-counsel about various evidentiary issues, as we prepared to close our case.  Again, Defendants maintain that all of this time was block-billed.

i. Dechert requested compensation for 9.0 hours of my time for September 10, 2014, a day I was in trial from 7:59 am until 5:50 pm, or 9.7 hours. *See* Doc. 1174-7 at 60. During that trial day, I reported to the Court on discussions with the State on witnesses and evidence (Tr. 7:4 to 11:20; 211:6 to 238:3). After trial, I conducted our last post-trial meeting, and conferred with both the State and DOJ, about tying up loose post-trial ends. Again, Defendants maintain that all of this time was block-billed.

39. Additionally, as that proposed reduction relates to the Lawyers' Committee specifically, Defendants direct the Court to Exhibits B-6 and B-7 for the specific entries they labeled as either vague or block-billed. *See* Doc. 1196 at 56; Doc. 1196-14; Doc. 1196-15. Not a *single*

Lawyers' Committee hour is listed in either exhibit. That failure to do so, by itself, voids Defendants' proposed 20% reduction.

## PRO HAC VICE

40. Defendants challenge 0.1 hours of the Lawyers' Committee's time as dedicated to a pro hac vice filing. Doc. 1196 at 61, 87. The Lawyers' Committee will deduct the disputed time from its application.

## LOST CLAIMS

41. Defendants challenge 3.0 hours of my time  at the Lawyers' Committee as being dedicated to lost claims. Doc. 1196 at 63, 87. However, the State fails to itemize any of those hours for the Lawyers' Committee in Exhibit B-7. *See* Doc. 1196-15. Thus, it is impossible to know what, precisely, the State is objecting to here. As a result, the Court should reject Defendants' proposed lost claims cuts in full.

## COSTS

42. At the end of their brief, Defendants submit that the Lawyers' Committee's costs, totaling $16,883.09, should be reduced by $7,883.09 for "insufficient documentation."[17] Doc. 1196 at 96.[18] Yet, Defendants, in their litany of critiques regarding various expenses in this case, do not once mention the Lawyers' Committee. *See id.* at 67-80. And nowhere is the substance of the proposed Lawyers' Committee reduction detailed in any of Defendants' attachments. As a result, the Lawyers' Committee is unable to respond to this proposal and Defendants' reduction here should be rejected in full.

## REVISED FEES AND COSTS REQUEST

43. In light of Defendants' limited number of valid proposed reductions to the Lawyers' Committee's Revised Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Doc. 1174-2, the Lawyers' Committee revises its request of

---

[17] The Lawyers' Committee detailed its expenses in Doc. 1174-4 and provided receipts in Doc. 1174-5.
[18] Defendants incorrectly state that the Lawyers' Committee's costs totaled $7,883.09. Doc. 1196 at 96. The correct total is $16,883.09. *See* Doc. 1174-2 at 8.

$583,962.19 to deduct an additional 21.66 hours (0.56 for a reduction in time expended regarding attorneys' fees; 1.0 hours for clerical work; 7.0 hours for duplicative/excessive time; and 0.1 hours relating to pro hac vice applications). That reduction results in a revised request of $570,684.61 plus litigation expenses totaling $16,833.09.

44. The State's illegitimate challenges to our fee application have caused all of the counsel for Texas NAACP/MALC to expend many hours in preparing a reply.  I asked Dechert to pull all of my emails relating to this case, and I reviewed them before preparing this response.  I did the same with my Lawyers' Committee's emails.  In addition, Brendan Downes, one of the Counsel at the Lawyers' Committee, spent more than 50 hours drafting a portion of the Joint Brief filed by the Private Plaintiffs, and reviewing data and helping prepare this Declaration.  I have myself spent upwards of 30 hours reviewing emails, reviewing my time records again, reviewing and editing the Private Plaintiffs' Joint Reply Brief, drafting Texas NAACP/MALC's Supplemental Reply Brief, and holding periodic calls with the Private Plaintiffs as part of my coordination responsibilities.  Nevertheless, in an exercise of our reasonable billing judgment, we have decided not to ask for additional fees to cover this work, although we would have been entitled to do so.

45. Neil Steiner will submit a separate declaration, further responding to Defendants' challenges to Dechert's submission, together with revised totals.


        I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

                                                    /s/Ezra Rosenberg_____
                                                    Ezra D. Rosenberg
                                                    Attorney for the TX NAACP and MALC

# Exhibit 1

## Ezra Rosenberg

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Tuesday, April 8, 2014 12:11 PM |
| **To:** | Scott, John |
| **Cc:** | Clay, Reed; Whitley, David; Wilson, Anne; Elizabeth S. Westfall Esq.; EXT Mark Posner; EXT Myrna Perez; EXT Gerry Hebert; EXT Chad Dunn; EXT Neil Baron; EXT Ryan Haygood; EXT Natasha Korgaonkar; EXT Kelly Dunbar; EXT Jose Garza; EXT mvandalen; EXT Rolando L. Rios |
| **Subject:** | Re: Suggestions as to schedule and other matters from non-DOJ plaintiffs and plaintiff-intervenors |

Thanks, John.  The problem with Monday, particularly in the afternoon, is that we're going to have to file something with the court on our position (or, hopefully, a joint position), and we don't want to dump it on the court too late.  Another alternative is to see if we can talk late Thursday.  A third alternative would be for us to go ahead and file something, either before or after we talk on Monday, and, if we're lucky enough to reach agreement or narrow the issues, then we can so advise the court.   Otherwise, we can deal with our differences at Wednesday's call with the court.

Sent from my iPad

On Apr 8, 2014, at 12:03 PM, "Scott, John" <john.scott@texasattorneygeneral.gov> wrote:

> Ezra-
>
> We have reached out to the Gipson, Zgabay, and Ingram.  I am awaiting those responses and will relay that information to you once received.
>
> Friday will not work for me but I am available Monday after 2 CDT to visit.
>
> John
>
> **From:** Rosenberg, Ezra [mailto:ezra.rosenberg@dechert.com]
> **Sent:** Tuesday, April 08, 2014 10:05 AM
> **To:** Scott, John
> **Cc:** Whitley, David; Westfall, Elizabeth (CRT); EXT Gerry Hebert; EXT Chad Dunn; EXT Neil Baron; EXT Mark Posner; EXT Myrna Perez; EXT Ryan Haygood; EXT Natasha Korgaonkar; EXT Kelly Dunbar; EXT Jose Garza; EXT mvandalen; EXT Rolando L. Rios
> **Subject:** FW: Suggestions as to schedule and other matters from non-DOJ plaintiffs and plaintiff-intervenors
>
> Hi, John.  A couple of things:
> 1.  Could you please get back to me on whether those dates for Gipson and Zgabay work?
> 2.  We've coordinated with DOJ, and we are proposing April 22 or 23 for Ingram's deposition.  Can you confirm one of those days.
> 3.  Are you available for a call on Friday morning, say, at 10 CT, to discuss the trial protocol issues in your Advisory and my email below?
> Thanks. - Ezra
>
> **From:** Rosenberg, Ezra
> **Sent:** Friday, April 04, 2014 12:30 PM

1

**To:** John Scott; David Whitley; Reed Clay; Meredith Bell-Platts; Elizabeth S. Westfall Esq.; Daniel Freeman; Jennifer Maranzano; Anna Baldwin; EXT Mark Posner; EXT Myrna Perez; EXT Gerry Hebert; EXT Chad Dunn; EXT Neil Baron; EXT Ryan Haygood; EXT Natasha Korgaonkar; EXT Kelly Dunbar; EXT Rolando L. Rios; EXT Jose Garza; EXT mvandalen
**Subject:** Suggestions as to schedule and other matters from non-DOJ plaintiffs and plaintiff-intervenors

John – As per our discussion earlier in the week, we are setting forth the positions and suggestions of the non-DOJ plaintiffs and plaintiff-intervenors on the outstanding scheduling issues:

Fact discovery – We believe that the extension to June 27 for the conclusion of fact discovery is reasonable, given the importance of the issues in this case and the amount of discovery remaining.   (We note that, if this extension is granted, and (as noted below) Court and parties agree that all depositions may be admitted as if live testimony, then there would not be the need for the additional time for de bene esse depositions in August, thus lessening the burden on the parties when expert depositions will be occurring.)

"Back end" schedule – We propose the following so as to relieve the burden on the Court and parties in the pretrial period:

> a.    All Daubert and in limine motions are preserved until trial, with no need for briefing unless court requests or allows same. (The parties may indicate their intention to file Daubert motions and to make evidentiary objections in their pretrial memoranda.)
> b.    Generally, dispositive motions (including those addressed to standing) may be filed at any time up until 10 days after close of factual discovery.  However, dispositive motions that rely on expert testimony are preserved through trial.

You have also solicited our proposal as to trial protocol, and have indicated that you would provide us with yours.  Our proposal is fairly simple:

> a.    Trial to begin on September 2 and conclude on September 19.
> b.    Plaintiffs and defendants, respectively, each have 45 hours of trial time to share, which includes openings (not mandatory to open), closings, directs, crosses, and arguments.  Plaintiffs will allocate their 45 hours among themselves, and are free to "give" time to each other as the trial progresses.
> c.    Parties are permitted, but not required, to introduce into evidence depositions in lieu of trial testimony (including all non-expert depositions and trial testimony from the Section 5 case), with all rights to object to specific questions and answers (with the exception of hearsay objection to the use of the deposition at trial) reserved.
> d.    Parties are permitted, but not required, to submit an expert's report in lieu of direct testimony, with or without a short oral summary of the report by the expert.

As to the 30(b)(6) depositions, for starters, we would propose that the deposition of Ms. Gipson occur on April 15, 17, or 18; and that the deposition of Ms. Zgabay occur on either April 15, 16, 17 or 18.  Because we do not anticipate that either of these depositions will consume more than a half day, we can schedule them on the same day.  They can occur at Dechert's Austin offices, if that is convenient.  We maintain our position that the depositions of these witnesses are not subject to a cumulative total of 7.0 hours, but, rather, that each deposition is subject to the 7.0 hour rule.  Again, we do not anticipate most, if any, of them taking the full 7.0 hours.  We also

maintain our position that the 30(b)(6) depositions of the DPS witnesses are deemed to be a single deposition for purposes of the 60-deposition limit.  However, as plaintiffs are nowhere near the 60-deposition limit either under our reading or yours, there is no need to bother the Judge with this issue.   DOJ and we will be providing you with suggested dates for the remaining witnesses.

We understand that you will be sending us your position these issues.  Thanks. -- Ezra

Sent from my iPad

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

Exhibit 2

## Ezra Rosenberg

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Tuesday, May 20, 2014 9:56 AM |
| **To:** | John Scott; David Whitley; Reed Clay |
| **Cc:** | Elizabeth S. Westfall Esq.; Richard Dellheim; Daniel Freeman; Jennifer Maranzano; Anna Baldwin; EXT Mark Posner; EXT Myrna Perez; Rudd, Amy; Cohan, Lindsey; EXT Gerry Hebert; EXT Chad Dunn; EXT Neil Baron; EXT Emma Simson; EXT Armand Derfner; EXT Ryan Haygood; EXT Natasha Korgaonkar; EXT Kelly Dunbar; EXT Jose Garza; EXT mvandalen; EXT rdoggett; EXT Rolando L. Rios; EXT Preston E. Henrichson |
| **Subject:** | Section 5 record |

Hi, John -- Here is a proposed stipulation that I believe reflects our discussion yesterday.

Subject to objections based on relevancy, the parties to this action hereby stipulate that the following may be received into evidence in this action:  exhibits admitted into evidence and portions of any transcript of depositions or trial testimony given by any non-expert witness in *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. 2012).

We propose the following schedule for all transcript designations:

August 5:  Simultaneous designations
August 12: Simultaneous objections to designations and counter-designations
August 15: Simultaneous objections to counter-designations


Please let us have your thoughts.  Thanks. - Ezra



Sent from my iPad

1

# Ezra Rosenberg

| | |
|---|---|
| **From:** | Wolf, Lindsey <Lindsey.Wolf@texasattorneygeneral.gov> |
| **Sent:** | Wednesday, May 21, 2014 5:46 PM |
| **To:** | Rosenberg, Ezra; EXT Chad Dunn; EXT Armand Derfner; EXT Neil Baron; EXT Luis Vera Jr; EXT Hasan Ali; EXT mvandalen; EXT Gerry Hebert; EXT Ryan Haygood; EXT Rolando L. Rios; sian@henrichsonlaw.com; EXT Preston E. Henrichson; EXT Scott Brazil; pnoriega@trla.org; knewell@trla.org; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; EXT rdoggett; EXT Emma Simson |
| **Cc:** | EXT Scott Brazil; anna.baldwin@usdoj.gov; robert.berman@usdoj.gov; richard.dellheim@usdoj.gov; elizabeth.westfall@usdoj.gov; avner.shapiro@usdoj.gov; daniel.freeman@usdoj.gov; jennifer.maranzano@usdoj.gov; john.a.smith@usdoj.gov; meredith.bell-platts@usdoj.gov; bruce.gear@usdoj.gov; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah  Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; Rudd, Amy; Yeary, Michelle; ttrainor@bmpllp.com; jnixon@bmpllp.com; jenniferl.clark@nyu.edu; EXT Vishal Agraharkar; EXT Wendy Weiser; EXT Myrna Perez; EXT Erandi Zamora; EXT Mark Posner; EXT Sonia Gill; EXT rdoggett; EXT Rolando L. Rios; EXT Jose Garza; EXT Preston E. Henrichson; EXT Emma Simson; sian@henrichsonlaw.com; pmcgraw@trla.org; bdonnell@dakpc.com; knewell@trla.org; pnoriega@trla.org; Scott, John; Clay, Reed; Whitley, David; Roscetti, Jennifer; Keister, Ronny; Deason, Whitney; Hayes, Kevin; Tatum, Stephen; Wilson, Anne; Ried, Lisa; D'Andrea, Arthur |
| **Subject:** | RE: Common Interest Privilege Asserted by TLYVEF LULAC LUPE HCJCC and Hidalgo County Plaintiffs |

Thank you.  The dial-in is:

Phone #: 888-387-8235
Passcode 7930356#

Regards,
Lindsey

---

**From:** Rosenberg, Ezra [mailto:ezra.rosenberg@dechert.com]
**Sent:** Wednesday, May 21, 2014 4:42 PM
**To:** Wolf, Lindsey; EXT Chad Dunn; EXT Armand Derfner; EXT Neil Baron; EXT Luis Vera Jr; EXT Hasan Ali; EXT mvandalen; EXT Gerry Hebert; EXT Ryan Haygood; EXT Rolando L. Rios; sian@henrichsonlaw.com; EXT Preston E. Henrichson; EXT Scott Brazil; pnoriega@trla.org; knewell@trla.org; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; EXT rdoggett; EXT Emma Simson
**Cc:** EXT Scott Brazil; anna.baldwin@usdoj.gov; robert.berman@usdoj.gov; richard.dellheim@usdoj.gov; elizabeth.westfall@usdoj.gov; avner.shapiro@usdoj.gov; daniel.freeman@usdoj.gov; jennifer.maranzano@usdoj.gov; john.a.smith@usdoj.gov; meredith.bell-platts@usdoj.gov; bruce.gear@usdoj.gov; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; Rudd, Amy; Yeary, Michelle; ttrainor@bmpllp.com; jnixon@bmpllp.com; jenniferl.clark@nyu.edu; EXT Vishal Agraharkar; EXT Wendy Weiser; EXT Myrna Perez; EXT Erandi Zamora; EXT Mark Posner; EXT Sonia Gill; EXT rdoggett; EXT Rolando L. Rios; EXT Jose Garza; EXT Preston E. Henrichson; EXT Emma Simson; sian@henrichsonlaw.com; pmcgraw@trla.org; bdonnell@dakpc.com; knewell@trla.org; pnoriega@trla.org; Scott, John; Clay, Reed; Whitley, David; Roscetti, Jennifer;

1

Keister, Ronny; Deason, Whitney; Hayes, Kevin; Tatum, Stephen; Wilson, Anne; Ried, Lisa; D'Andrea, Arthur
**Subject:** RE: Common Interest Privilege Asserted by TLYVEF LULAC LUPE HCJCC and Hidalgo County Plaintiffs

Lindsey. I believe that the non-US plaintiff and plaintiff-intervenors will be in a position to discuss the common interest privilege at the 3 pm call tomorrow, and we may be in a position to have our position in writing to you in advance of that call. Is there a dial-in set for that call, as I was not on the original email. Thanks. - Ezra

**From:** Wolf, Lindsey [mailto:Lindsey.Wolf@texasattorneygeneral.gov]
**Sent:** Wednesday, May 21, 2014 5:39 PM
**To:** Rosenberg, Ezra; EXT Chad Dunn; EXT Armand Derfner; EXT Neil Baron; EXT Luis Vera Jr; EXT Hasan Ali; EXT mvandalen; EXT Gerry Hebert; EXT Ryan Haygood; EXT Rolando L. Rios; sian@henrichsonlaw.com; EXT Preston E. Henrichson; EXT Scott Brazil; pnoriega@trla.org; knewell@trla.org; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; EXT rdoggett; EXT Emma Simson
**Cc:** EXT Scott Brazil; anna.baldwin@usdoj.gov; robert.berman@usdoj.gov; richard.dellheim@usdoj.gov; elizabeth.westfall@usdoj.gov; avner.shapiro@usdoj.gov; daniel.freeman@usdoj.gov; jennifer.maranzano@usdoj.gov; john.a.smith@usdoj.gov; meredith.bell-platts@usdoj.gov; bruce.gear@usdoj.gov; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; Rudd, Amy; Yeary, Michelle; ttrainor@bmpllp.com; jnixon@bmpllp.com; jenniferl.clark@nyu.edu; EXT Vishal Agraharkar; EXT Wendy Weiser; EXT Myrna Perez; EXT Erandi Zamora; EXT Mark Posner; EXT Sonia Gill; EXT rdoggett; EXT Rolando L. Rios; EXT Jose Garza; EXT Preston E. Henrichson; EXT Emma Simson; sian@henrichsonlaw.com; pmcgraw@trla.org; bdonnell@dakpc.com; knewell@trla.org; pnoriega@trla.org; Scott, John; Clay, Reed; Whitley, David; Roscetti, Jennifer; Keister, Ronny; Deason, Whitney; Hayes, Kevin; Tatum, Stephen; Wilson, Anne; Ried, Lisa; D'Andrea, Arthur
**Subject:** RE: Common Interest Privilege Asserted by TLYVEF LULAC LUPE HCJCC and Hidalgo County Plaintiffs

It would be helpful if those participating on the meet-and-confer call tomorrow with representatives for the Texas League of Young Voters Education Fund and its individual co-plaintiffs, (2) the League of United Latin American Citizens (LULAC), and its individual co-plaintiffs, and (3) *La Union del Pueblo Entero, Inc.* and its individual co-plaintiffs, which is currently scheduled for 3 PM, would be prepared to discuss the common interest issues as well.

As discussed with Mr. Dunn this morning, we also look forward to receiving the written proposal regarding certain of the documents requested from individual Plaintiffs, discussed on the May 12 call, later today.

Thank you,



ATTORNEY GENERAL OF TEXAS
GREG ABBOTT

Lindsey E. Wolf | Assistant Attorney General | Financial Litigation, Tax, and Charitable Trusts Division |300 West 15th Street, 6th Floor, Austin, Texas 78701 | Mail: P O Box 12548 | Austin, TX 78711-2548 | (512) 475-4233 | Fax: (512) 370-9126 | e-mail: **Lindsey.Wolf@texasattorneygeneral.gov**

**From:** Rosenberg, Ezra [mailto:ezra.rosenberg@dechert.com]
**Sent:** Wednesday, May 21, 2014 4:04 PM
**To:** Wolf, Lindsey; EXT Chad Dunn; EXT Armand Derfner; EXT Neil Baron; EXT Luis Vera Jr; EXT Hasan Ali; EXT mvandalen; EXT Gerry Hebert; EXT Ryan Haygood; EXT Rolando L. Rios; sian@henrichsonlaw.com; EXT Preston E. Henrichson; EXT Scott Brazil; pnoriega@trla.org; knewell@trla.org; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; EXT rdoggett; EXT Emma Simson

**Cc:** EXT Scott Brazil; anna.baldwin@usdoj.gov; robert.berman@usdoj.gov; richard.dellheim@usdoj.gov; elizabeth.westfall@usdoj.gov; avner.shapiro@usdoj.gov; daniel.freeman@usdoj.gov; jennifer.maranzano@usdoj.gov; john.a.smith@usdoj.gov; meredith.bell-platts@usdoj.gov; bruce.gear@usdoj.gov; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; Rudd, Amy; Yeary, Michelle; ttrainor@bmpllp.com; jnixon@bmpllp.com; jenniferl.clark@nyu.edu; EXT Vishal Agraharkar; EXT Wendy Weiser; EXT Myrna Perez; EXT Erandi Zamora; EXT Mark Posner; EXT Sonia Gill; EXT rdoggett; EXT Rolando L. Rios; EXT Jose Garza; EXT Preston E. Henrichson; EXT Emma Simson; sian@henrichsonlaw.com; pmcgraw@trla.org; bdonnell@dakpc.com; knewell@trla.org; pnoriega@trla.org; Scott, John; Clay, Reed; Whitley, David; Roscetti, Jennifer; Keister, Ronny; Deason, Whitney; Hayes, Kevin; Tatum, Stephen; Wilson, Anne; Ried, Lisa; D'Andrea, Arthur
**Subject:** RE: Common Interest Privilege Asserted by TLYVEF LULAC LUPE HCJCC and Hidalgo County Plaintiffs

Lindsey.  In that it took Texas more than a week to provide us with the email that was promised on our May 12 call, your providing us with 24 hours to respond is not reasonable, and we are unable to meet your deadline.  The non-US plaintiff and plaintiff-intervenor groups are discussing their response and we will respond to you by close of business tomorrow, May 22.  Thanks. -- Ezra

---

**From:** Wolf, Lindsey [mailto:Lindsey.Wolf@texasattorneygeneral.gov]
**Sent:** Tuesday, May 20, 2014 6:30 PM
**To:** EXT Chad Dunn; EXT Armand Derfner; EXT Neil Baron; EXT Luis Vera Jr; EXT Hasan Ali; EXT mvandalen; EXT Gerry Hebert; EXT Ryan Haygood; EXT Rolando L. Rios; sian@henrichsonlaw.com; EXT Preston E. Henrichson; EXT Scott Brazil; pnoriega@trla.org; knewell@trla.org; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; EXT rdoggett; EXT Emma Simson
**Cc:** EXT Scott Brazil; anna.baldwin@usdoj.gov; robert.berman@usdoj.gov; richard.dellheim@usdoj.gov; elizabeth.westfall@usdoj.gov; avner.shapiro@usdoj.gov; daniel.freeman@usdoj.gov; jennifer.maranzano@usdoj.gov; john.a.smith@usdoj.gov; meredith.bell-platts@usdoj.gov; bruce.gear@usdoj.gov; cswarns@naacpldf.org; EXT Deuel Ross; EXT Leah Aden; EXT Natasha Korgaonkar; EXT Danielle Conley; EXT Richard Shordt; jonathan.paikin@wilmerhale.com; EXT Kelly Dunbar; EXT Gerry Sinzdak; EXT Sonya Lebsack; EXT Lynn Eisenberg; Rudd, Amy; Rosenberg, Ezra; Yeary, Michelle; ttrainor@bmpllp.com; jnixon@bmpllp.com; jenniferl.clark@nyu.edu; EXT Vishal Agraharkar; EXT Wendy Weiser; EXT Myrna Perez; EXT Erandi Zamora; EXT Mark Posner; EXT Sonia Gill; EXT rdoggett; EXT Rolando L. Rios; EXT Jose Garza; EXT Preston E. Henrichson; EXT Emma Simson; sian@henrichsonlaw.com; pmcgraw@trla.org; bdonnell@dakpc.com; knewell@trla.org; pnoriega@trla.org; Scott, John; Clay, Reed; Whitley, David; Roscetti, Jennifer; Keister, Ronny; Deason, Whitney; Hayes, Kevin; Tatum, Stephen; Wilson, Anne; Ried, Lisa; D'Andrea, Arthur
**Subject:** Common Interest Privilege Asserted by TLYVEF LULAC LUPE HCJCC and Hidalgo County Plaintiffs

Counsel,

At the Meet-and-Confer with representatives for (1 )the Texas League of Young Voters Education Fund and its individual co-plaintiffs, (2) the League of United Latin American Citizens (LULAC), and its individual co-plaintiffs, and (3) *La Union del Pueblo Entero, Inc.* and its individual co-plaintiffs, on May 12, 2014, Kevin Hayes and I informed you that we needed to circle back internally, and then we would provide a written proposal regarding Defendants' position on the Common Interest Privilege.  We also referred to such a proposal in our May 12, 2014 Meet-and-Confer with representatives for (1) the Hispanic County Judges and County Commissioners, and its individual co-plaintiff, and (2) Hidalgo County.  This proposal follows.

Defendants understand that Plaintiffs object to requests which seek the production of documents and tangible things relating to communications between them, or between their counsel, regarding SB 14.  SB 14 is defined in the RFPs to include predecessor bills dating back to 2005, and when Defendants refer to SB 14 below, they are using that definition.  Defendants propose the following:

- **Intra-Plaintiff Communications – Section 2 Case:** Communications between plaintiffs to this 2013 lawsuit (the "Section 2 Case") concerning SB 14, dated before or after the date on which each of the participants in each respective communication was added as a party to the Section 2 Case, and which do not involve counsel, are not

3

privileged. Accordingly, these communications should be produced. If any of these communications are alleged to be privileged by any plaintiff to the Section 2 Case on any ground, they must be logged. **Please advise whether you agree that these communications are not privileged. Also, if you claim some or all such communications are privileged, please advise whether you agree that documents withheld on privilege grounds would need to be identified in a privilege log.**

- **Intra-Plaintiff Counsel Communications – Section 2 Case**: Communications between counsel for the parties to the Section 2 Case concerning SB 14, are not privileged or otherwise protected by a common interest privilege, even if they relate to trial strategy or discovery, and, accordingly, should be produced. **Please advise whether you agree that these communications are not privileged. Also, if you claim some or all such communications are privileged, please advise whether you agree that documents withheld on privilege grounds would need to be identified in a privilege log.**

- **Communications Involving a Participant Not Yet a Plaintiff in the Section 2 Case At the Time of the Communication**: Communications between or among parties, including or not including counsel for the parties to the Section 2 Case, which occurred prior to any or all of the participants to the communication being added as either (a) a plaintiff or (b) counsel to a plaintiff in the Section 2 Case, subject to the Section 5 Communications Carve-Out defined *infra*, are not privileged and should be produced. If any of those communications are alleged to be privileged by any Plaintiff on any ground, they must be logged. **Please advise whether you agree that these communications are not privileged. Also, if you claim some or all such communications are privileged, please advise whether you agree that documents withheld on privilege grounds would need to be identified in a privilege log.**

  - o **The Section 5 Communications Carve Out**: Defendants recognize that communications that took place during the 2012 Administrative Preclearance Litigation (the "Section 5 Case"), where each participant to the communication was either a party or counsel to a party in the Section 5 Case, and the Section 5 Case was pending as of the date the communication occurred, may be privileged (the "Section 5 Communications"). Defendants therefore propose limiting requests for production so as not to require Plaintiffs to log such Section 5 Communications to the extent Plaintiffs allege they are privileged.

**Please advise by the close of business on May 21, 2014 whether you agree that the 3 groups of communications identified above are not privileged. Also, if you allege privilege does apply, please advise by that time whether you agree that documents withheld on the grounds of privilege must be logged.**

Defendants are in the process of reaching out to counsel for each of the 5 Plaintiff groups identified above individually, to discuss the remaining outstanding issues discussed at the Meet-And-Confers.

Regards,



ATTORNEY GENERAL OF TEXAS
GREG ABBOTT

Lindsey E. Wolf | Assistant Attorney General | Financial Litigation, Tax, and Charitable Trusts Division |300 West 15th Street, 6th Floor, Austin, Texas 78701 | Mail: P O Box 12548 | Austin, TX 78711-2548 | (512) 475-4233 | Fax: (512) 370-9126 | e-mail: **Lindsey.Wolf@texasattorneygeneral.gov**

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

## Ezra Rosenberg

| | |
|---|---|
| **From:** | D'Andrea, Arthur <Arthur.D'Andrea@texasattorneygeneral.gov> |
| **Sent:** | Thursday, May 22, 2014 7:33 PM |
| **To:** | Rosenberg, Ezra |
| **Cc:** | elizabeth.westfall@usdoj.gov; daniel.freeman@usdoj.gov; EXT Kelly Dunbar; EXT Neil Baron |
| **Subject:** | RE: Legislators' Depositions |

Thanks Ezra.  I certainly understand why you can't negotiate the deposition dates until our motion to quash is filed.  I would do the same thing if I were you. Still I wanted to give you advance notice that we will be filing a motion to quash and therefore will not be producing witnesses on those days.  I will call you after we file to get these dates sorted out.  We will file as soon as possible, either tomorrow or first thing next week.  My attention is unfortunately divided between this case and an oral argument next week (where Texas will be standing shoulder to shoulder with our friends at DOJ).

_____

From: Rosenberg, Ezra [ezra.rosenberg@dechert.com]
Sent: Thursday, May 22, 2014 2:56 PM
To: D'Andrea, Arthur
Cc: elizabeth.westfall@usdoj.gov; daniel.freeman@usdoj.gov; EXT Kelly Dunbar; EXT Neil Baron
Subject: RE: Legislators' Depositions

Hi, Arthur.  I understand that there are depositions currently set for May 28, May 29 and May 30. Until such time as your motions to quash are filed, we're not in a position to lift those dates.  Once your motions are filed, we'll discuss alternative dates for sometime in June, but, under no circumstances can we agree that all of the depositions will be pushed to the last week of discovery.  Let me know if you have any questions.  Thanks. -- Ezra

From: D'Andrea, Arthur [mailto:Arthur.D'Andrea@texasattorneygeneral.gov]
Sent: Wednesday, May 21, 2014 8:52 PM
To: Rosenberg, Ezra
Cc: elizabeth.westfall@usdoj.gov; daniel.freeman@usdoj.gov; EXT Kelly Dunbar; EXT Neil Baron
Subject: RE: Legislators' Depositions


To my friends in opposition:



We have decided to file motions to quash the subpoenas for deposition.  I will file these motions soon, so we can get this issue resolved.  These motions will assert (big surprise) legislative privilege.  See, e.g., Corporacion Insular de Seguros v. Garcia, 709 F. Supp. 288, 297 (D.P.R. 1989) ("It does not follow . . . that because Dr. Aponte's [a legislative aide] documents are discoverable that he himself is automatically subject to a deposition.").  Still, I agree it's prudent to schedule the depositions anyway, in the event we lose the motions.   I agree to offer the legislators for deposition in our office in Austin.  But given the schedule of the legislators and OAG attorneys, and the need for travel, we'd prefer to schedule all the depositions starting the week of June 23rd.  I appreciate your flexibility and patience, and I will return the same.



-Arthur

From: Rosenberg, Ezra [ezra.rosenberg@dechert.com]
Sent: Wednesday, May 21, 2014 4:45 PM
To: D'Andrea, Arthur
Cc: elizabeth.westfall@usdoj.gov<mailto:elizabeth.westfall@usdoj.gov>;
daniel.freeman@usdoj.gov<mailto:daniel.freeman@usdoj.gov>; EXT Kelly Dunbar; EXT Neil Baron
Subject: RE: Legislators' Depositions
Thanks, Arthur.

From: D'Andrea, Arthur [mailto:Arthur.D'Andrea@texasattorneygeneral.gov]
Sent: Wednesday, May 21, 2014 5:45 PM
To: Rosenberg, Ezra
Cc: elizabeth.westfall@usdoj.gov<mailto:elizabeth.westfall@usdoj.gov>;
daniel.freeman@usdoj.gov<mailto:daniel.freeman@usdoj.gov>; EXT Kelly Dunbar; EXT Neil Baron
Subject: RE: Legislators' Depositions


Dear Ezra & Elizabeth:


I am sorry for missing your calls.   I had an oral argument today, and I'm still getting the legislators sorted out.  I'll have
an answer in the next few hours.

From: Rosenberg, Ezra [ezra.rosenberg@dechert.com]
Sent: Wednesday, May 21, 2014 4:38 PM
To: D'Andrea, Arthur
Cc: elizabeth.westfall@usdoj.gov<mailto:elizabeth.westfall@usdoj.gov>;
daniel.freeman@usdoj.gov<mailto:daniel.freeman@usdoj.gov>; EXT Kelly Dunbar; EXT Neil Baron
Subject: Legislators' Depositions
Hi, Arthur.  When we spoke yesterday, you said you'd get back to me last night or today about the legislators'
depositions.  We've not heard from you.    I understand that DOJ has placed calls to you today to discuss this issue also.
Please advise as to the status. Thanks. - Ezra

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not
the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender
and delete the e-mail and any attachments. Thank you.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not
the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender
and delete the e-mail and any attachments. Thank you.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not
the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender
and delete the e-mail and any attachments. Thank you.

## Ezra Rosenberg

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Thursday, May 29, 2014 6:43 AM |
| **To:** | Arthur D'Andrea |
| **Cc:** | Daniel Freeman; EXT Chad Dunn; EXT Neil Baron; EXT Scott Brazil; EXT Kelly Dunbar |
| **Subject:** | Call to discuss dates for legislator depositions |

Hi, Arthur, as per the Court's directive, could you provide us with a time today to discuss dates for legislator depositions. It might speed things up -- and perhaps even obviate the need for a call -- if you provided us with a revised schedule.  As per previous emails, any proposal that would anticipate all the legislator depositions taking place the last week of June will not be acceptable.  Thanks. - Ezra

Sent from my iPad

Exhibit 3

**Ezra Rosenberg**

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Wednesday, July 16, 2014 11:24 AM |
| **To:** | Brandy_Cortez@txs.uscourts.gov |
| **Cc:** | anna.baldwin@usdoj.gov; EXT mvandalen; john.scott@texasattorneygeneral.gov; EXT Ryan Haygood; EXT Chad Dunn; Westfall, Elizabeth (CRT); Whitley, David |
| **Subject:** | RE: Veasey |

Good morning, Ms. Cortez.  An update:  The parties conferred again and are optimistic that they will be able to reach an agreement on this motion.  We hope to have this resolved within the next 24 hours, and will advise the Court as soon as there is resolution.  Please let me know if you have any questions.  Thanks. – Ezra Rosenberg

---

**From:** Rosenberg, Ezra
**Sent:** Tuesday, July 15, 2014 5:34 PM
**To:** 'Brandy_Cortez@txs.uscourts.gov'
**Cc:** anna.baldwin@usdoj.gov; EXT mvandalen; john.scott@texasattorneygeneral.gov; EXT Ryan Haygood; EXT Chad Dunn; Westfall, Elizabeth (CRT); 'Whitley, David'
**Subject:** RE: Veasey

Ms. Cortez – Sorry for the shortness of my note a few minutes ago, but all parties were on the phone discussing this motion.  We have set another call for 10 am CT/11 am ET  tomorrow to follow-up on this discussion, and will report back to you after that call.  Thank you. – Ezra Rosenberg

---

**From:** Brandy_Cortez@txs.uscourts.gov [mailto:Brandy_Cortez@txs.uscourts.gov]
**Sent:** Tuesday, July 15, 2014 5:15 PM
**To:** EXT Chad Dunn; anna.baldwin@usdoj.gov; Rosenberg, Ezra; EXT mvandalen; john.scott@texasattorneygeneral.gov; EXT Ryan Haygood
**Subject:** Veasey

Is this opposed by Plaintiffs?

| 07/14/2014 | 402 PM | MOTION for Extension of Time to File Expert Rebuttal by Steve McGraw, Rick Perry, State Of Texas, John Steen, filed. Motion Docket Date 8/4/2014. (Attachments: # (1) Proposed Order Proposed Order Granting Motion for Extension of Time)(Scott, John) (Entered: 2014-07-14 ) |
|---|---|---|

Thank you,

Brandy Cortez
Case Manager for
Judge Nelva Gonzales Ramos
U.S. District Judge
Corpus Christi Division-Southern District of Texas
361-693-6457

## Ezra Rosenberg

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Tuesday, July 22, 2014 5:29 PM |
| **To:** | Brandy_Cortez@txs.uscourts.gov |
| **Cc:** | Scott, John; Clay, Reed; Whitley, David; Wolf, Lindsey; Ried, Lisa; Berman, Robert (CRT); Westfall, Elizabeth (CRT); Maranzano, Jennifer (CRT); Baldwin, Anna (CRT); Freeman, Daniel (CRT); Gear, Bruce (CRT); All Corpus Christi Section 2 Case Group |

Dear Ms. Cortez:  After discussions with all parties, following are the items the parties ask that the Court address on Thursday's call.  Thanks.  – Ezra Rosenberg

- United States Motion for a Protective Order from Defendants' Rule 30(b)(6) Notice of Deposition to the United States of America (ECF No. 276)
- United States Motion for a Protective Order from Defendants' Rule 30(b)(6) Notice of Deposition to the Department of Justice's Office of the Inspector General (ECF No. 355)
- Defendants Motion for Protection on the Amended Notice of Deposition of Coby Shorter (ECF No. 335), opposed by the United States (ECF No. 401) (Currently the subject on negotiations between the parties – the parties will notify the Court if resolved in advance of the hearing.)
- Texas Young Voter Motion to compel re Mitchell depo (ECF 395)
- Texas motion to compel (ECF 343) (Currently the subject on negotiations between the parties – the parties will notify the Court if resolved in advance of the hearing.)
- Veasey Motion to compel answers to interrogatories (ECF 420) – This motion was recently filed.  Movants seek a short briefing schedule.
- Third party legislators' motion to compel (ECF 348, 386)
- The parties are discussing other issues relating to trial protocol, which, may lead to a brief discussion on a consent addition to the pretrial schedule.
- The State will be filing an Advisory, which it will request the Court to address.  The plaintiffs have not seen the Advisory, so cannot state their position.

**Ezra Rosenberg**

| | |
|---|---|
| **From:** | Scott, John <john.scott@texasattorneygeneral.gov> |
| **Sent:** | Friday, July 25, 2014 4:11 PM |
| **To:** | Rosenberg, Ezra |
| **Subject:** | Re: Veasey v. Perry: discovery issue |

Ezra-

Your words of wisdom were simply heeded.   Thanks.  I hope you have a great weekend.

John

Sent from my iPhone

> On Jul 25, 2014, at 3:08 PM, "Rosenberg, Ezra" <ezra.rosenberg@dechert.com> wrote:
>
> John - thanks for your cooperation. Have a good weekend. - Ezra.
>
> Sent from my iPhone
>
> On Jul 25, 2014, at 2:52 PM, "Scott, John"
<john.scott@texasattorneygeneral.gov<mailto:john.scott@texasattorneygeneral.gov>> wrote:
>
> Ms. Cortez-
>
> The parties have conferred and the issues appear to be resolved.  Thank you and have a great weekend.
>
> John
>
> From: Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>
[mailto:Brandy_Cortez@txs.uscourts.gov]
> Sent: Friday, July 25, 2014 11:41 AM
> To: Baldwin, Anna (CRT)
> Cc: All Corpus Christi Section 2 Case Group; Shapiro, Avner (CRT); Heard, Bradley (CRT); Gear, Bruce (CRT); Freeman,
Daniel (CRT); Whitley, David; Westfall, Elizabeth (CRT); Rosenberg, Ezra; Maranzano, Jennifer (CRT); Scott, John; Clay,
Reed; Dellheim, Richard (CRT); Berman, Robert (CRT); King, Ryan (CRT)
> Subject: RE: Veasey v. Perry: discovery issue
>
> The hearing at 1:30 will be cancelled until I hear from you all.
>
> Thank you,
>
> Brandy Cortez
> Case Manager for
> Judge Nelva Gonzales Ramos
> U.S. District Judge
> Corpus Christi Division-Southern District of Texas
> 361-693-6457
>

>
>
>
> From:     "Baldwin, Anna (CRT)" <Anna.Baldwin@usdoj.gov<mailto:Anna.Baldwin@usdoj.gov>>
> To:      "Scott, John" <john.scott@texasattorneygeneral.gov<mailto:john.scott@texasattorneygeneral.gov>>,
"Rosenberg, Ezra" <ezra.rosenberg@dechert.com<mailto:ezra.rosenberg@dechert.com>>,
"Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>"
<Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>>
> Cc:      All Corpus Christi Section 2 Case Group
<AllCorpusChristiSection2CaseGroup@dechert.com<mailto:AllCorpusChristiSection2CaseGroup@dechert.com>>,
"Shapiro, Avner (CRT)" <Avner.Shapiro@usdoj.gov<mailto:Avner.Shapiro@usdoj.gov>>, "Heard, Bradley (CRT)"
<Bradley.Heard@usdoj.gov<mailto:Bradley.Heard@usdoj.gov>>, "Gear, Bruce (CRT)"
<Bruce.Gear@usdoj.gov<mailto:Bruce.Gear@usdoj.gov>>, "Freeman, Daniel (CRT)"
<Daniel.Freeman@usdoj.gov<mailto:Daniel.Freeman@usdoj.gov>>, "Whitley, David"
<david.whitley@texasattorneygeneral.gov<mailto:david.whitley@texasattorneygeneral.gov>>, "Westfall, Elizabeth
(CRT)" <Elizabeth.Westfall@usdoj.gov<mailto:Elizabeth.Westfall@usdoj.gov>>, "Maranzano, Jennifer (CRT)"
<Jennifer.Maranzano@usdoj.gov<mailto:Jennifer.Maranzano@usdoj.gov>>, "Clay, Reed"
<Reed.Clay@texasattorneygeneral.gov<mailto:Reed.Clay@texasattorneygeneral.gov>>, "Dellheim, Richard (CRT)"
<Richard.Dellheim@usdoj.gov<mailto:Richard.Dellheim@usdoj.gov>>, "Berman, Robert (CRT)"
<Robert.Berman@usdoj.gov<mailto:Robert.Berman@usdoj.gov>>, "King, Ryan (CRT)"
<Ryan.King@usdoj.gov<mailto:Ryan.King@usdoj.gov>>
> Date:     07/25/2014 11:38 AM
> Subject:    RE: Veasey v. Perry: discovery issue
> _____
>
>
>
> Ms. Cortez,
>
> We had requested that Defendants confer with us at 1pm.  If the issues are resolved, we will certainly inform the
Court.  In the event that the issues are not resolved, we will inform the Court to request a hearing be set.
>
> Sincerely,
> Anna Baldwin
>
>
> From: Scott, John [mailto:john.scott@texasattorneygeneral.gov]
> Sent: Friday, July 25, 2014 12:29 PM
> To: Rosenberg, Ezra; Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>; Baldwin, Anna (CRT)
> Cc: All Corpus Christi Section 2 Case Group; Shapiro, Avner (CRT); Heard, Bradley (CRT); Gear, Bruce (CRT); Freeman,
Daniel (CRT); Whitley, David; Westfall, Elizabeth (CRT); Maranzano, Jennifer (CRT); Clay, Reed; Dellheim, Richard (CRT);
Berman, Robert (CRT); King, Ryan (CRT)
> Subject: RE: Veasey v. Perry: discovery issue
>
> Ms. Cortez,
>
> Mr. Rosenberg is partly right. There is, at this point, at least one sticking point which likely would not be resolved by
conferring: whether DPS's deposition should be done on written questions. However, we believe that having a hearing
with the Court before conferring on the twenty-three (23) broad topics, many of which may implicate attorney-client
privilege and work-product, would be a waste of the Court's time, as we would likely need yet another hearing to
resolve disagreements about the topics to be covered in the deposition (regardless of its form).
>

> John
>
> From: Rosenberg, Ezra [mailto:ezra.rosenberg@dechert.com]
> Sent: Friday, July 25, 2014 11:23 AM
> To: Scott, John; Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>; Baldwin, Anna (CRT)
> Cc: All Corpus Christi Section 2 Case Group; Shapiro, Avner (CRT); Heard, Bradley (CRT); Gear, Bruce (CRT); Freeman, Daniel (CRT); Whitley, David; Westfall, Elizabeth (CRT); Maranzano, Jennifer (CRT); Clay, Reed; Dellheim, Richard (CRT); Berman, Robert (CRT); King, Ryan (CRT)
> Subject: RE: Veasey v. Perry: discovery issue
>
> Ms. Cortez – As I understand it, there is one major issue as to which conferring would not be productive: Texas's unilateral refusal to produce a live witness. As to the other issue – the scope of the 30(b)(6) -- the parties are willing to confer at anytime between now and 1:30, to see if the issues as to scope can be narrowed by then. So, with that understanding, is it possible to hold the 1:30 date, given the urgency of the situation.
>
> From: Scott, John [mailto:john.scott@texasattorneygeneral.gov]
> Sent: Friday, July 25, 2014 12:18 PM
> To: Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>; Baldwin, Anna (CRT)
> Cc: All Corpus Christi Section 2 Case Group; Shapiro, Avner (CRT); Heard, Bradley (CRT); Gear, Bruce (CRT); Freeman, Daniel (CRT); Whitley, David; Westfall, Elizabeth (CRT); Maranzano, Jennifer (CRT); Clay, Reed; Dellheim, Richard (CRT); Berman, Robert (CRT); King, Ryan (CRT)
> Subject: RE: Veasey v. Perry: discovery issue
>
> We have not yet conferred.
>
> From: Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>
[mailto:Brandy_Cortez@txs.uscourts.gov]
> Sent: Friday, July 25, 2014 11:17 AM
> To: Baldwin, Anna (CRT)
> Cc: All Corpus Christi Section 2 Case Group; Shapiro, Avner (CRT); Heard, Bradley (CRT); Gear, Bruce (CRT); Freeman, Daniel (CRT); Whitley, David; Westfall, Elizabeth (CRT); Maranzano, Jennifer (CRT); Scott, John; Clay, Reed; Dellheim, Richard (CRT); Berman, Robert (CRT); King, Ryan (CRT)
> Subject: RE: Veasey v. Perry: discovery issue
>
> Counsel,
>
> Have you all conferred on this issue? I do not want to get parties on the phone if you all have not conferred.
>
> Thank you,
>
> Brandy Cortez
> Case Manager for
> Judge Nelva Gonzales Ramos
> U.S. District Judge
> Corpus Christi Division-Southern District of Texas
> 361-693-6457
>
>
>
>
> From:      "Baldwin, Anna (CRT)" <Anna.Baldwin@usdoj.gov<mailto:Anna.Baldwin@usdoj.gov>>

> To:     "Scott, John" <john.scott@texasattorneygeneral.gov<mailto:john.scott@texasattorneygeneral.gov>>,
"Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>"
<Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>>
> Cc:     All Corpus Christi Section 2 Case Group
<AllCorpusChristiSection2CaseGroup@dechert.com<mailto:AllCorpusChristiSection2CaseGroup@dechert.com>>,
"Shapiro, Avner (CRT)" <Avner.Shapiro@usdoj.gov<mailto:Avner.Shapiro@usdoj.gov>>, "Heard, Bradley (CRT)"
<Bradley.Heard@usdoj.gov<mailto:Bradley.Heard@usdoj.gov>>, "Gear, Bruce (CRT)"
<Bruce.Gear@usdoj.gov<mailto:Bruce.Gear@usdoj.gov>>, "Freeman, Daniel (CRT)"
<Daniel.Freeman@usdoj.gov<mailto:Daniel.Freeman@usdoj.gov>>, "Whitley, David"
<david.whitley@texasattorneygeneral.gov<mailto:david.whitley@texasattorneygeneral.gov>>, "Westfall, Elizabeth
(CRT)" <Elizabeth.Westfall@usdoj.gov<mailto:Elizabeth.Westfall@usdoj.gov>>, "Maranzano, Jennifer (CRT)"
<Jennifer.Maranzano@usdoj.gov<mailto:Jennifer.Maranzano@usdoj.gov>>, "Clay, Reed"
<Reed.Clay@texasattorneygeneral.gov<mailto:Reed.Clay@texasattorneygeneral.gov>>, "Dellheim, Richard (CRT)"
<Richard.Dellheim@usdoj.gov<mailto:Richard.Dellheim@usdoj.gov>>, "Berman, Robert (CRT)"
<Robert.Berman@usdoj.gov<mailto:Robert.Berman@usdoj.gov>>, "King, Ryan (CRT)"
<Ryan.King@usdoj.gov<mailto:Ryan.King@usdoj.gov>>
> Date:    07/25/2014 11:12 AM
> Subject:    RE: Veasey v. Perry: discovery issue
>
> _____
>
>
>
>
> John,
>
> Mr. Clay's email last evening took a unilateral position that no live witness would be produced.  ("We will not be
providing a DPS designee to testify on the topics you specified.").  For that reason, and because of the urgency of
resolving this issue, we sought the Court's assistance.  Because Mr. Clay also stated that the Noticed topics were too
broad, but that those deemed to relate to the programming errors at issue could be answered by a deposition on
written questions, we sought—and still seek—to confer with Defendants on scope.  We continue to think that would be
productive.
>
> Anna
>
>
> From: Scott, John [mailto:john.scott@texasattorneygeneral.gov]
> Sent: Friday, July 25, 2014 12:01 PM
> To: Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>; Baldwin, Anna (CRT)
> Cc: All Corpus Christi Section 2 Case Group; Shapiro, Avner (CRT); Heard, Bradley (CRT); Gear, Bruce (CRT); Freeman,
Daniel (CRT); Whitley, David; Westfall, Elizabeth (CRT); Maranzano, Jennifer (CRT); Clay, Reed; Dellheim, Richard (CRT);
Berman, Robert (CRT); King, Ryan (CRT)
> Subject: RE: Veasey v. Perry: discovery issue
>
> Anna-
>
> As you know last night Mr. Clay requested that we meet and confer regarding the topics to be covered and our request
that the deposition be done on written questions pursuant to FRCP 31(a)(4).  It was my understanding that you accepted
the request to meet and confer and proposed such a conference at 1 pm today.  Minutes later you requested a hearing
from the Court that has since been set for 1:30. I am assuming that these subsequent actions mean you no longer wish
to meet and confer. Please correct me if I am mistaken.
>

> John
>
> From: Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>
[mailto:Brandy_Cortez@txs.uscourts.gov]
> Sent: Friday, July 25, 2014 10:46 AM
> To: Baldwin, Anna (CRT)
> Cc: All Corpus Christi Section 2 Case Group; Shapiro, Avner (CRT); Heard, Bradley (CRT); Gear, Bruce (CRT); Freeman,
Daniel (CRT); Whitley, David; Westfall, Elizabeth (CRT); Maranzano, Jennifer (CRT); Scott, John; Clay, Reed; Dellheim,
Richard (CRT); Berman, Robert (CRT); King, Ryan (CRT)
> Subject: Re: Veasey v. Perry: discovery issue
>
> Hearing will be set for 130pm today.  Please forward this to all counsel.
>
> Thank you,
>
> Brandy Cortez
> Case Manager for
> Judge Nelva Gonzales Ramos
> U.S. District Judge
> Corpus Christi Division-Southern District of Texas
> 361-693-6457
>
>
>
>
> From:      "Baldwin, Anna (CRT)" <Anna.Baldwin@usdoj.gov<mailto:Anna.Baldwin@usdoj.gov>>
> To:        "Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>"
<Brandy_Cortez@txs.uscourts.gov<mailto:Brandy_Cortez@txs.uscourts.gov>>
> Cc:        "Clay, Reed" <Reed.Clay@texasattorneygeneral.gov<mailto:Reed.Clay@texasattorneygeneral.gov>>, "Scott,
John" <john.scott@texasattorneygeneral.gov<mailto:john.scott@texasattorneygeneral.gov>>, "Whitley, David"
<david.whitley@texasattorneygeneral.gov<mailto:david.whitley@texasattorneygeneral.gov>>, "All Corpus Christi
Section 2 Case Group"
<AllCorpusChristiSection2CaseGroup@dechert.com<mailto:AllCorpusChristiSection2CaseGroup@dechert.com>>,
"Berman, Robert (CRT)" <Robert.Berman@usdoj.gov<mailto:Robert.Berman@usdoj.gov>>, "Westfall, Elizabeth (CRT)"
<Elizabeth.Westfall@usdoj.gov<mailto:Elizabeth.Westfall@usdoj.gov>>, "Dellheim, Richard (CRT)"
<Richard.Dellheim@usdoj.gov<mailto:Richard.Dellheim@usdoj.gov>>, "Heard, Bradley (CRT)"
<Bradley.Heard@usdoj.gov<mailto:Bradley.Heard@usdoj.gov>>, "Freeman, Daniel (CRT)"
<Daniel.Freeman@usdoj.gov<mailto:Daniel.Freeman@usdoj.gov>>, "Maranzano, Jennifer (CRT)"
<Jennifer.Maranzano@usdoj.gov<mailto:Jennifer.Maranzano@usdoj.gov>>, "Gear, Bruce (CRT)"
<Bruce.Gear@usdoj.gov<mailto:Bruce.Gear@usdoj.gov>>, "Shapiro, Avner (CRT)"
<Avner.Shapiro@usdoj.gov<mailto:Avner.Shapiro@usdoj.gov>>, "King, Ryan (CRT)"
<Ryan.King@usdoj.gov<mailto:Ryan.King@usdoj.gov>>
> Date:      07/25/2014 10:19 AM
> Subject:   Veasey v. Perry: discovery issue
>
>
> _____
>
>
>
>
>

> Ms. Cortez,
>
> There is a discovery issue with which Plaintiffs seek the Court's immediate assistance.
>
> At yesterday's hearing we discussed the fact that Defendants informed the Court and all parties just three days ago that the data produced in February from the Department of Public Safety was incomplete and that some 2.8 million records related to Texas driver licenses and personal identification cards should have been produced to the United States but were not.  The Texas DPS data is a critical component of the database matching conducted to determine which Texas registered voters have a valid SB 14 photo ID.  Months after the initial data production—and nearly a month after plaintiffs produced their expert reports relying on the DPS data produced—Defendants explained that they failed to produce all records of Texans who actually hold DPS driver licenses and personal IDs.  Two days ago, Texas produced the 2.8 million records that it has stated were inadvertently excluded.  From the time that the United States was informed of this problem, we've repeatedly informed Defendants that we would be seeking deposition testimony from DPS about these events.  Deposition testimony is critical to understanding what the records are that DPS produced two days ago, why such records were not produced months ago, and the extent to which the 2.8 million late-produced records should be incorporated into any match/no-match analysis.
>
> As we discussed with the Court yesterday, the United States requested a hearing next Thursday so that we could discuss the impact of Defendants' production errors after reviewing the data file, and after taking a deposition.  During the hearing yesterday, Defendants raised no objection to producing live witnesses.   Subsequent to serving the attached Rule 30(b)(6) Notice to DPS yesterday, Mr. Clay informed the United States that DPS would not be producing a live witness on any topic.  He also objected to the scope of the topics noticed.  Plaintiffs have requested a time to speak with Defendants regarding any scope concerns, but we are seriously concerned about Defendants' refusal to produce a live witness.
>
> We respectfully request a brief conference with Court today or Monday to ensure that these issues are expeditiously resolved.
>
> Sincerely,
>
> Anna M. Baldwin
> Trial Attorney
> Voting Section, Civil Rights Division
> U.S. Department of Justice[attachment "Rule 30(b)(6) Notice to DPS.PDF" deleted by Brandy Cortez/TXSD/05/USCOURTS]
>
> _____
>

> This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.
>
> ********************************************************************
> This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

## Ezra Rosenberg

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Tuesday, July 29, 2014 10:39 AM |
| **To:** | Brandy_Cortez@txs.uscourts.gov |
| **Cc:** | alondon@bishoplondon.com; anna.baldwin@usdoj.gov; beau.eccles@texasattorneygeneral.gov; EXT Chad Dunn; john.scott@texasattorneygeneral.gov; kerry.kircher@mail.house.gov; EXT mvandalen; EXT Ryan Haygood; EXT Rolando L. Rios |
| **Subject:** | RE: Veasey |

I think that would be preferable.  Can we place it there now, and await word from DOJ and the State?  Much appreciated. – Ezra Rosenberg

---

**From:** Brandy_Cortez@txs.uscourts.gov [mailto:Brandy_Cortez@txs.uscourts.gov]
**Sent:** Tuesday, July 29, 2014 10:38 AM
**To:** Rosenberg, Ezra
**Cc:** alondon@bishoplondon.com; anna.baldwin@usdoj.gov; beau.eccles@texasattorneygeneral.gov; EXT Chad Dunn; john.scott@texasattorneygeneral.gov; kerry.kircher@mail.house.gov; EXT mvandalen; EXT Ryan Haygood; EXT Rolando L. Rios
**Subject:** RE: Veasey

I can reset to 2pm on Wednesday if that would help.

Thank you,

Brandy Cortez
Case Manager for
Judge Nelva Gonzales Ramos
U.S. District Judge
Corpus Christi Division-Southern District of Texas
361-693-6457

From:      "Rosenberg, Ezra" <ezra.rosenberg@dechert.com>
To:        "Brandy_Cortez@txs.uscourts.gov" <Brandy_Cortez@txs.uscourts.gov>, EXT Chad Dunn <chad@brazilanddunn.com>, "anna.baldwin@usdoj.gov" <anna.baldwin@usdoj.gov>, EXT mvandalen <mvandalen@trla.org>, "john.scott@texasattorneygeneral.gov" <john.scott@texasattorneygeneral.gov>, EXT Ryan Haygood <rhaygood@naacpldf.org>, "EXT Rolando L. Rios" <rrios@rolandorioslaw.com>, "kerry.kircher@mail.house.gov" <kerry.kircher@mail.house.gov>, "alondon@bishoplondon.com" <alondon@bishoplondon.com>, "beau.eccles@texasattorneygeneral.gov" <beau.eccles@texasattorneygeneral.gov>
Date:      07/29/2014 09:23 AM
Subject:   RE: Veasey

Thank you, Ms. Cortez. I haven't discussed this with DOJ yet (and they may be en route to Texas) or with Texas, but the main purpose of the hearing tomorrow was to see whether there is the need for additional action as a result of the delay in production of the DPS data base, and the parties have agreed to a Rule 30(b)(6) deposition to explore issues relating to that production tomorrow.  Is it possible for the conference with the Court to be scheduled for either the end of the day on Wednesday or on Thursday?  Thank you. – Ezra Rosenberg

**From:** Brandy_Cortez@txs.uscourts.gov [mailto:Brandy_Cortez@txs.uscourts.gov]
**Sent:** Tuesday, July 29, 2014 10:18 AM

1

**To:** EXT Chad Dunn; anna.baldwin@usdoj.gov; Rosenberg, Ezra; EXT mvandalen; john.scott@texasattorneygeneral.gov; EXT Ryan Haygood; EXT Rolando L. Rios; kerry.kircher@mail.house.gov; alondon@bishoplondon.com; beau.eccles@texasattorneygeneral.gov
**Subject:** Veasey

Good Morning Counsel,

The Court needs to move the status conference originally set for Thursday to tomorrow, Wednesday, at 10:00am.

Thank you,

Brandy Cortez
Case Manager for
Judge Nelva Gonzales Ramos
U.S. District Judge
Corpus Christi Division-Southern District of Texas
361-693-6457

---

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**Ezra Rosenberg**

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Wednesday, July 30, 2014 1:24 PM |
| **To:** | Scott, John; Whitley, David; Baldwin, Anna (CRT); Freeman, Daniel (CRT) |
| **Cc:** | EXT Armand Derfner; EXT Mark Posner |
| **Subject:** | Meet and Confer at 1 pm CT/2pm Et |

John and David – Let's talk at 1 pm your time.  Use this number:
866.214.4423
5161200#

Exhibit 4

## Ezra Rosenberg

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Friday, August 29, 2014 2:11 PM |
| **To:** | Brandy_Cortez@txs.uscourts.gov |
| **Cc:** | Richard.Dellheim@usdoj.gov; Elizabeth.Westfall@usdoj.gov; daniel.freeman@usdoj.gov; Jennifer.Maranzano@usdoj.gov; anna.baldwin@usdoj.gov; Bruce.Gear@usdoj.gov; Ryan.King@usdoj.gov; All Corpus Christi Section 2 Case Group |
| **Subject:** | Ex Parte Submission of Witnesses for September 2 and 3 |
| **Sensitivity:** | Confidential |

Ms. Cortez:  As per our discussion on the record this morning, Plaintiffs and Plaintiff-Intervenors are providing the Court ex parte with our intended witness lists for September 2 and 3. (This is our intended order of witnesses also during each day, but that may change slightly depending on when each can get to court.)

Sept. 2:
Sammi Bates (Individual voter, by video)
Calvin Carrier (Plaintiff)
Floyd Carrier (Plaintiff)
Rep. Trey Martinez-Fischer
Stephen Ansolabehere (Expert)
Cong. Marc Veasey
Michael Herron (Expert)
Ramona Bingham (Individual voter, by video)
Elizabeth Gholar (Individual voter, by video)

September 3:
Eulalio Mendez  (Plaintiff)
Estela Espinoza  (Plaintiff)
Yair Ghitza   (Expert)
Matt Barreto (Expert)
Kristina Mora (voter assister)
Dawn White (social worker)
Buck Wood (Expert)
Gabriel Sanchez (Expert)
Leonard Taylor  (Plaintiff)
Gordon Benjamin (Plaintiff)
Blake Green (League of Young Voters representative)
Phyllis Washington (Individual voter by video)

In addition, depending on whether there is time on either of the days, plaintiffs will begin to read in deposition/trial testimony depositions of the following witnesses:
Martin Golando (representative of MALC)
Linda Lydia (representative of Texas NAACP)
Yannis Banks (representative of Texas NAACP)
Juanita Cox (representative of LUPE)
Ruby Barber (Individual voter)
Jim Denton (Individual voter)
Vera Trotter (Individual voter)

Sen. Wendy Davis
Sen. Troy Fraser
Janice McCoy (legislative staff)
Brian Hebert (legislative staff)
Speaker Joe Straus

Please let me know if you or Judge Ramos has any questions.  Thanks. - Ezra

## Ezra Rosenberg

| | |
|---|---|
| **From:** | Rosenberg, Ezra |
| **Sent:** | Friday, August 29, 2014 4:15 PM |
| **To:** | Brandy_Cortez@txs.uscourts.gov |
| **Cc:** | Scott, John; Clay, Reed; Whitley, David; lindsey.wolf@texasattorneygeneral.gov; Richard.Dellheim@usdoj.gov; Elizabeth.Westfall@usdoj.gov; daniel.freeman@usdoj.gov; Jennifer.Maranzano@usdoj.gov; anna.baldwin@usdoj.gov; Bruce.Gear@usdoj.gov; Ryan.King@usdoj.gov; All Corpus Christi Section 2 Case Group |
| **Subject:** | Agreement on exhibits and deposition designations |

Hi, Brandy.  The parties have conferred to figure out a way to reduce the burden on the Court concerning objections to exhibits and deposition/trial testimony designations, and also to avoid eating into the trial time with arguments on objections.  To that end, the parties have agreed to the following protocol, subject of course to the Court's approval (the parties note that a similar approach has worked well in the ongoing Perez redistricting litigation).

1.  The parties agree that all exhibits and deposition/trial testimony designations on any party's filed lists are admitted into evidence, with the opposing party's filed objections, except for those that are submitted to the Court for decision on Tuesday as per paragraph 3 below.  The parties will confer over the weekend to narrow the list of objections to those deemed essential by the parties.
2.  Any objections made in open court or filed with the court pretrial will be reviewed by the Court when it reviews the evidence, with the obligation placed on the parties to highlight to the Court in open court any objections to specific exhibits or deposition/trial testimony that the party believes are of particular importance to it.
3.  The parties may raise with the Court such particular objections prior to the start of evidence on September 2 or the objection to the extent noted, shall be carried.
4. The above procedure would not apply to the deposition designations of the United States 30(b)(6) deposition or the deposition of Sen. Robert Duncan, both of which were taken this past week (which the parties will raise with the Court to the extent necessary during the second week of trial).  Nor does this procedure apply to certain fact stipulations Defendants are in the process of working out with the Veasey-LULAC, Ortiz, and TLYVEF plaintiff groups, to which the parties do not anticipate objections.

Please let us know if the Court is comfortable with this approach.  All of the parties join me in wishing you a great holiday weekend and thanking you for helping to shepherd us through to the trial date.  -- Ezra

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:13-cv-193 (NGR) |
| | (Consolidated Action) |
| GREG ABBOTT, *et al.*, | |
| Defendants. | |

## <u>REPLY DECLARATION OF NEIL A. STEINER IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES</u>

### <u>INTRODUCTION</u>

1.      This declaration is submitted in further support of the fee application of Dechert LLP.  As explained in my original submission, I am a partner at Dechert LLP and became actively involved in this litigation on behalf of Dechert in late 2014, following the retirement of my law partner, Ezra Rosenberg.  During this time, I have had overall responsibility for Dechert's representation of Plaintiffs in this matter.

2.      In its prior submissions, Dechert supported its fee application with detailed billing records, describing with reasonable precision the tasks performed each day on the matter and expenses paid in relation to this matter.  Moreover, as explained in Dechert's prior submissions, Dechert exercised their reasonable billing judgment in cutting the majority of time recorded on this matter by their attorneys.  Finally, the rates charged by Dechert are significantly below that which Dechert would charge clients.  For example, Dechert requests reimbursement of only $613/hour for Ezra Rosenberg, a seasoned litigator, however, a litigation partner with his trial experience would bill a fee-paying Dechert at least $1,285 per hour (my current hourly rate, with 21 years of experience; my 2019 rate was $1,200 per hour, and our highest hourly rate for a litigation partner was $1,475 per hour in 2019 and is $1,550 per hour this year).

3.      Nevertheless, Defendants characterize 164.4 of Dechert's hours as "Duplicative," without explaining what they are duplicative of, and 769.8 of Dechert's hours as "Excessive," without explaining why they are excessive, and never taking into account the thousands of hours already cut by Dechert in their original submissions.  Further, Defendants propose a 20% across-the-board reduction for "Vague" and "Block-Billed" time, despite that the description of the tasks performed are more than adequate to provide this Court with a basis for the fee claimed.

4.      In addition to the myriad examples of the arbitrariness of Defendants' characterizations of the time recorded, Defendants re-deducted time that was already deducted by Dechert from its application, double-counted many of their deductions, and made other substantive mathematical errors, resulting in deducting hundreds of thousands of dollars in error.  The State also mischaracterizes expenses as unsupported despite that receipts underlying those expenses were previously provided by Dechert.

## TIME ALREADY CUT

5.      At the outset, it is critical to highlight the extent to which Dechert excluded time it expended on this litigation from its fees application.  During the course of Dechert's representation in this matter, approximately 40 different attorneys and paralegals at the firm devoted more than 5,200 hours to the successful representation of Plaintiffs.  In its application, however, Dechert seeks attorneys' fees for a core group of just four attorneys.  Doc. 1174-6 at 7.  And, even as to these four attorneys, Dechert has substantially reduced the amount of hours for which it is seeking reimbursement, from 3,755.9 hours to 2,885.3 hours.  *Id*.

6.      Thus, Dechert has already reduced the total amount of time spent on this matter for which it is seeking attorneys' fees by nearly 45 percent (2,885.3 / 5,200).  *Id*.

7.      Nevertheless, the State proposes additional, drastic cuts to Dechert's fee request.  The State insists that Plaintiffs' proposed hourly rates are inflated (a contention that we vehemently

oppose in our joint brief),[1] and suggests a series of categorical reductions, which, combined, would result in an award to Dechert of "no more than $322,294.00." Doc. 1196 at 85. Such reductions represent just 21.7% of the amount sought ($322,294.00 / $1,484,304.60).

8.       The State seeks a further reduction of 1,593.7 hours of Dechert's time from the already substantially reduced 2,885.3 hours submitted by Dechert.  When considered as a function of the total time Dechert spent on this matter (hours excluded from our submission + hours included), the State submits that Dechert should be compensated for just 25% of the total time it expended on this litigation (1291.6 / 5200).

## MATHEMATICAL & ACCOUNTING ERRORS

9.       One of the most critical issues in the State's submission (among many) is a series of mathematical and accounting errors that lead to the deduction of fees not even sought in this case, as well as double and triple counting of the same deductions.

10.       **Mathematical/Accounting Errors to "Clerical" Time**:  Defendants seek to deduct 558 hours of Dechert's time that it characterizes as "Clerical" (Doc. 1196 at 84; Doc. 1196-10 at 1-16), however, most of this time was *already* voluntarily deducted by Dechert from its initial fee application and was never sought in the first place.  For example, Dechert made clear in its initial application that it was not seeking reimbursement for any paralegal time.  *See* Doc. 1174-6 at 8.  Yet the State inexplicably seeks to deduct 362.2 hours of purported "Clerical" time attributable to Dechert's paralegal Antonella Capobianco.  *See* Doc. 1196-10 at 11-16.  These 362.2 hours (totaling $60,125.20) must therefore be restored to Dechert's award.

11.       **Mathematical/Accounting Errors to "Duplicative" & "Excessive" Time**:  Defendants next seek to deduct 164.4 hours of Dechert's time that it characterizes as "Duplicative" and 795.8 hours that it characterizes as "Excessive."  Doc. 1196 at 84; Doc. 1196-11 at 6-10; Doc. 1196-12 at 1-16.  First, 5.5 hours (totaling $2,927.00) were already counted as "Clerical" and cannot

---

[1] All figures in this brief are based on Plaintiffs' proposed hourly rates.

again be deducted as either Duplicative or Excessive. Second, another 116.3 hours (totaling $69,590.90) are double counted as both Duplicative and Excessive and discounted twice. *Id.*[2]

12.    **Mathematical/Accounting Errors to "Vague and Block Billing"**: Defendants propose a "Vague and Block Billing" reduction of 20% of Dechert's original total submission of $1,484,304.60. Doc. 1196 at 84-85. That proposed reduction will be discussed in more detail *infra*, but that aspect of Defendants' calculations also features a critical arithmetic error in that the percentage reduction is applied to the *total* fee request instead of to the sum remaining *after* Defendants' proposed categorical cuts are subtracted. Specifically, after subtracting $578,812.20[3] in Defendants' proposed categorical cuts from the original submission of $1,484,304.60, $905,492.40 of Dechert's submission remains. Instead of taking their proposed (and, to be discussed, unsubstantiated) additional 20% off of that reduced amount (which would total $181,098.48), Defendants take off 20% of the original *total* submission (which totals $296,860.92). This difference of $115,762.42 should be automatically restored to Dechert's award.

13.    Combined, the mathematical errors identified in Defendants' brief restore $248,405.52 to Dechert's award, even before addressing the legitimacy of the substance of Defendants' proposed deductions.

## TRAVEL

14.    As for specific categorical reductions, Defendants propose reducing the 36 hours Dechert spent on non-working travel for this matter by 50%. Doc. 1196 at 41. But as Dechert's initial submission made clear, Dechert is not seeking *any* reimbursement for travel time, *even where*

---

[2] *See* Doc. 1196-11 at 6-10 (hours labeled "Duplicative"); Doc. 1196-21 at 1-16 (hours labeled "Excessive"). All hours labeled both "Duplicative" and "Excessive," 116.3 in total, were double-counted in Defendants' summary of proposed reductions. *See* Doc. 1196 at 84-85. At Plaintiffs' proposed rates for each attorney, that results in the erroneous double-counting of $69,590.90.
[3] This figure is reached by taking Defendants' total categorical cuts figure of $711,455.10 and restoring $132,642.90 of double-counted reductions. With that fix, $578,812.20 of Defendants' proposed categorical reductions remain.

*the lawyer was actively working on this matter while in transit*.  The entries challenged by the State do not reflect "non-working travel" hours, but as is evident from the entries themselves, was time spent on substantive legal work.  Doc. 1196-9 at 5-6.  Given Dechert's judgment in not seeking any reimbursement for travel time, no further deductions are warranted for these entries.

## ALLEGED "CLERICAL" ENTRIES

15.      Defendants characterize 558 hours Dechert's time as "Clerical."  Doc. 1196 at 84; Doc. 1196-2 at 1-16.  As an initial matter, and as previously discussed, 362.2 of these hours were paralegal hours that were not even included in Dechert's fee application and another 15.5 hours have already been deducted by Dechert because they relate to pro hac vice applications or motions to withdraw.  A total of 377.7 hours must therefore should be struck from the State's proposed deductions.  As to the remaining 180.3 hours, it is evident from even a cursory review of these entries that the vast majority of this contested time was substantive legal work.

16.      As primary coordinating counsel for discovery and all legal filings, Dechert's attorneys, and in particular Michelle Yeary and Lindsey Cohan, were responsible for centralizing control and review of documents, including various drafts of filings and discovery materials. Dechert's role in doing so greatly reduced the number of filings submitted by Private Plaintiffs by reconciling to the extent possible Plaintiffs' legal positions in order that they could speak with one voice.  Specific examples highlight this:

  a.    Lindsey B. Cohan, entry dated Nov. 22, 2013:  "Finalize draft and file response to motion to dismiss." [3.6 hours]

  b.    Lindsey B. Cohan, entry dated Feb. 24, 2014:  "Incorporate additional edits received from other intervenors; proof, cite check, and finalize supplemental brief on legislative privilege; file supplemental brief on legislative privilege." [8.2 hours]

  c.    Lindsey B. Cohan, entry dated Apr. 29, 2014:  "Revise and file brief in opposition to motion to quash third party subpoenas."  [4.5 hours]

  d.    Lindsey B. Cohan, entry dated Sept. 10, 2015:  "Prepare filing on behalf of

Texas NAACP, MALC, and LDF adopting response to motion for en banc review."  [1.5 hours]

e.   Lindsey B. Cohan, entry dated May 9, 2016:  "Revise, finalize, and file en banc brief." [6 hours]

Doc. 1196-2 at 4-10.

17.     Moreover, as this Court is aware, nearly 75 expert and fact depositions were taken in this litigation—a discovery effort that took a tremendous amount of coordination.  Dechert was responsible for ensuring efficiency in that process by issuing the majority of the depositions notices and subpoenas, and serving as the liaison with the State for all scheduling and logistical matters—a role that benefitted the State nearly as much as Private Plaintiffs.  Nevertheless, in further exercise of Dechert's considerable judgment in this application, Dechert has reviewed additional entries and agrees to deduct 22.2 additional hours from its fee request.

**ALLEGED DUPLICATIVE, EXCESSIVE, VAGUE AND BLOCK-BILLED TIME**

18.     The State maintains that the vast majority of Dechert's hours are "Duplicative" (164.4 hours), "Excessive" (777.8 hours), "Vague" (365.1 hours), and/or "Block billed" (942.2 hours).  These entries are again plagued by Defendants double- and even triple-counting:

a.   114.9 hours were double-counted as Clerical and already deducted;

b.   516.2 hours were double-counted as some combination of Duplicative, Excessive, Vague and/or Block billed; and

c.   70.9 hours were triple-counted as some combination of Duplicative, Excessive, Vague and/or Block billed.

19.     A substantial portion of the time labeled as Duplicative, Excessive, Vague, and/or Block billed was recorded by Ezra Rosenberg.  For the same reasons discussed in Mr. Rosenberg's declaration, there is no merit to Defendants' proposed reductions, particularly when, as here, Dechert has already exercised considerable judgment in drastically reducing time in order to ameliorate the effects of any duplicate, excessive, or vaguely entered time.

**PRO HAC VICE APPLICATIONS / ATTORNEY WITHDRAWAL MOTIONS**

20.     The State also argues that 15.5 hours of Dechert's time should be deducted because it was spent preparing pro hac vice applications or motions to withdraw counsel.  Doc. 1196 at 60-61, 84.  Dechert acknowledges that 15.5 hours of time were spent preparing these motions and were not deducted.  Thus, a reduction of 15.5 hours is warranted.  However, each of these 15.5 hours were double-counted and also included in Defendants' calculation of "Clerical" billing, and therefore $5,440.50 should be deducted from Defendants' proposed reductions to avoid double counting these entries when calculating Dechert's award.  *See* 1196-13 at 8-9 (entries labeled "Non-Compensable"); 1196-10 at 4-10 (entries labeled "Clerical").

**LOST CLAIMS**

21.     Defendants challenge 17.2 hours of Dechert's time totaling $7,314.70 as being dedicated to lost claims.  Doc. 1196 at 84.   The State, however, fails to itemize any of those hours in Exhibit B-7 as it claims.  *See* Doc. 1196-15.  Thus, it is impossible to know what, precisely, the State is objecting to here.  As a result, the Court should reject Defendants' proposed lost claims cuts in full.

**MEDIA**

22.     Defendants also challenge 6.8 of Dechert's time totaling $ 3,338.80 as being dedicated to media.  Doc. 1196 at 67, 84.4.  But nowhere does the State identify the entries to which this challenge relates.  Thus, it is impossible to know what, precisely, the State is objecting to here and the Court should reject Defendants' proposed media cuts in full.

**COSTS**

23.     Defendants submit that Dechert's costs, totaling $267,418.95, should be reduced by $128,275.18 for various reasons, each of which is without merit.  Doc. 1196 at 96.

24.     Defendants claim that Dechert had $5,776.81 in "Extravagant and Unnecessary Expenses," but fail to provide any itemization for the proposed cuts, which itself should result in the rejection of these proposed cuts.  Doc. 1196 at 96.  Further, many of Defendants' proposed reductions are without merit.  For instance, Defendants point to Mr. Rosenberg's stay at the W

Austin from April 22-24, 2014 for a total of $1,115.74, claiming there is "no indication how this relates to the case," but on April 23, 2014, Mr. Rosenberg attended the deposition of Keith Ingram, Director of Elections for the Texas Secretary of State, and a key witness in this case.  Defendants claim that a $99.00 meal was charged by Mr. Rosenberg on November 7, 2013 with "no indication as to how it relates to the case," but the receipt itself contemporaneously notes that members of both the Lawyers' Committee and Brennan Center were in attendance at that lunch.  Doc. 1174-10 at 12. Similarly, Defendants' claim that there is "no indication as to why" Mr. Rosenberg was present in Washington, DC from November 5-7, 2013 (Doc. 1196 at 75), but as the time records previously provided by Dechert point out, Mr. Rosenberg met with the Lawyers' Committee regarding potential experts on November 7, which is further confirmed by the aforementioned meal receipt on that day. Doc. 1174-7 at 7, 12.  And while Dechert believes there is sufficient justification for the entirety of Mr. Rosenberg's Washington, DC stay, in further exercise of its judgment, Dechert agrees to reduce Mr. Rosenberg's hotel cost by one-half for this trip, resulting in a reduction of Dechert's costs in the amount of $476.10.

25.     Defendants seek to deduct $20,809.86 of Dechert's expenses as "Vague Expenses" and another $33,529.76 for "Insufficient Documentation," but nowhere in its submission does it inventory these challenged expenses and it is thus impossible to determine what precisely Defendants challenge.  This is all the more true given that Dechert has provided Defendants with more than 500 pages worth of receipts in support of its application and therefore it cannot determine without additional information what, if any, expenses the State claims are insufficiently documented. Defendants claim that $206.98 in "Telephone" charges were not adequately described (Doc. 1196 at 69), however, these relate to internet charges incurred by Dechert attorneys while traveling and are accounted for in the various hotel receipts previously submitted.  *See, e.g.*, Doc. 1174-10 at 21 ($9.95 internet access charge); 86 ($9.95 internet access charge); 339 ($9.95 internet access charge); 342 ($14.95 internet access charge).   They also claim that there was no accounting for "miscellaneous" expenses (Doc. 1196 at 69), but disregard, for example, an invoice for the amount of $665.50 for expedited transcript fees that is clearly delineated as a "Miscellaneous Business

Expense[]." Doc .1174-10 at 486-87.

26.     Defendants also double-count appropriately invoiced items.  They request a deduction in the amount of $19,121.22, including $16,836.66 for duplication charges (Doc. 1196 at 69), but then separately request a deduction in the amount of $16,836.66 for "Copying" charges (Doc. 1196 at 78-79, 96).  Moreover, the State ignores that these duplication charges were documents in the hundreds of pages of documented receipts previously provided, and reflect copies made in the weeks before trial.  *See, e.g.*, Doc. 1174-10 at 280 ($4,402.75 invoice dated Aug. 29, 2014); 282 ($223.62 invoice dated Sept. 3, 2014); 286 ($3,407.66 invoice dated Aug. 31, 2014); 288 ($4,601.01 invoice dated Aug. 31, 2014).  As coordinating counsel, Dechert provided a set of materials to all Private Plaintiffs for use at trial to avoid additional copying costs from other Plaintiffs.

27.     Defendants claim that $50,256.76 in "Research Fees" should be deducted from Dechert's costs.  As set forth in Plaintiffs' motion, Pacer, Westlaw, and Lexis requests are routinely compensated in fee awards.  More significantly, however, $45,000.00 of this total amount was paid to Pacific Market Research Group in conjunction with the work performed by Dechert's experts, Drs. Barreto and Sanchez.  Specifically, Pacific Market Research Group was responsible for the survey of voters presented by Drs. Barreto and Sanchez and upon which the Court relied in its decision in this litigation.  Receipts reflecting these payments were provided previously by Dechert in its submission, and there is no basis to exclude this amount from Dechert's award.  Doc. 1174-10 at 26-27, 78-79.

## **REVISED FEES AND COSTS REQUEST**

28.     In light of the limited additional accommodations to Dechert's Revised Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Doc. 1174-2, agreed to above, Dechert revises its request of $1,484,604.60 to deduct an additional 37.7 hours hours (15.5 for a reduction in time expended regarding pro hac applications and motions to withdraw; 22.2 hours for clerical work). Dechert further agrees to reduce litigation expenses request by $476.10.  These reductions result in a revised request of $1,471,108.00 plus litigation expenses totaling $266,942.85.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Neil A. Steiner
Neil A. Steiner
Attorney for the Texas NAACP and MALC

IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF TEXAS CORPUS
CHRISTI DIVISION

MARC VEASEY, *et al.*,

                Plaintiffs,

        v.

GREG ABBOTT, *et al.*,

                Defendants.

Civil Action No. 2:13-cv-193 (NGR)
(Consolidated Action)

## <u>REPLY DECLARATION OF MYRNA PÉREZ IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES</u>

1. I am co-counsel for Plaintiffs Mexican American Legislative Caucus ("MALC") and Texas State Conference of the NAACP (collectively "Plaintiffs") in the above-styled matter. I submit this reply declaration in further support of Plaintiffs' Amended Motion for Attorney's Fees and Costs (dkt. 1174). Some of the issues presented in Defendant's opposition to Plaintiffs' fees motion, such as the appropriate billing rates, are common to all Plaintiffs and are addressed in Plaintiffs' reply brief. In this declaration, I address issues raised by Texas specific to the fees and costs claimed by the Brennan Center for Justice at NYU School of Law ("Brennan Center").

2. Defendant asks this Court to reject the increased fee request in the Plaintiffs' Amended Motion and instead to review the lower fee request in the Plaintiffs' initial motion because, Defendant asserts, the increase is the result of "additional time." Br. at 39. This assertion is incorrect, with respect to the Brennan Center. As I explained in my amended declaration, the Brennan Center reduced the number of hours for which it seeks

1

compensation in the Amended Motion; the roughly $11,000 increase in the fee award is the result of an arithmetic correction. In the initial motion, the Brennan Center accurately stated my hourly rates, but those rates were not correctly applied. The Amended Motion corrects that error. The amended fee request, therefore, more accurately reflects the fees I incurred in this matter. And, although Defendant decries this update as "unfair," *id.*, it articulates no actual prejudice.

3. In addition, throughout its brief, Defendant improperly cites my rate as $417 per hour. Consistent with the USAO Matrix, my rates increased as I obtained additional years of experience. Some of my time is billed at $417 per hour, some at $491 per hour, depending on the year in which it was incurred. Defendant's attempt to use only $417 per hour is improper and should be rejected.

4. As noted below, the Brennan Center concedes that 1.5 hours identified by Defendant, which totals $736.50 at the correct rate, should be excluded. The Brennan Center therefore respectfully requests that the Court award $245,953.40 in fees, reflecting 515 hours billed. In addition, the Brennan Center respectfully maintains its request for $51,405.95 in costs and expenses.

**Attorneys' Fees – Travel Time (Defendant's Exhibit B-1)**

5. Defendant does not claim any reduction in fees for travel time, as to the Brennan Center.

**Attorneys' Fees – Clerical Time (Defendant's Exhibit B-2)**

6. Defendant does not claim any reduction in fees for clerical time, as to the Brennan Center.

**Attorneys' Fees – Duplicative Time (Defendant's Exhibit B-3)**

7. Defendant claims that 141 hours should be deducted from my time as duplicative.

2

8.  In its brief, the only specific duplicative time that Defendant points to for the Brennan Center is time that I spent on "the appellate brief and comments and edits from the Lawyers' Committee." Br. at 48. But reviewing and editing legal documents are core legal tasks that courts have found to be compensable. The time I billed for these tasks was reasonable.

9.  More generally, Defendant's claimed reductions are based on the billing entry descriptions – not on any duplication identified by comparing lawyers' time entries. This approach is untenable in light of the massive reductions Plaintiffs have already made to our time. I am the only Brennan Center lawyer actually claiming time in this matter, and I have already reduced my hours by more than 40% in order to avoid duplication. (I excluded 349.8 hours out of 866.3 hours recorded in this matter.) Defendant's attempt to reduce my hours by another 27% is unjustified and unconnected to any argument about the reasonableness of the overall time claimed given the length and complexity of the matter. As I explained in my opening declaration, the time I am claiming in this case is wholly reasonable and necessary in light of the actual work performed in litigating the case. Defendant's claimed deduction should be rejected.

**Attorneys' Fees – Excessive Time (Defendant's Exhibit B-4)**

10.  Defendant does not claim any reduction in fees for excessive time, as to the Brennan Center.[1]

**Attorneys' Fees – Non-Compensable Time (Defendant's Exhibit B-5)**

---

[1] On the "Duplicative" worksheet (B-3), Defendant marks some of the time entries as "E" – code for "excessive" – in addition to duplicative. Defendant does not explain why any of these time entries are excessive, nor does it specifically claim a deduction based on their being excessive. In this declaration, I address only the arguments and deductions Defendant actually makes, but for avoidance of doubt, I reject Defendant's characterization of these time entries as excessive.

11. In Exhibit B-5, Defendant totals 87.5 hours in what it claims is non-compensable time, but it only actually claims a deduction of 22.6 hours for three categories of non-compensable time in its brief: Attorney's Fees (.1), True the Vote (.3), Lost Claims (9.2), and Amicus Briefs (13). (Defendant's claims regarding so-called "Business Development" expenses are addressed separately below.) I address only the claimed deductions.

12. *Attorney's Fees*. Defendant seeks to deduct .1 hours for time spent on the Attorney's Fees motion, but it does not list any such time in Exhibit B-5, nor did I claim any such time in Plaintiffs' Motion for Attorney's Fees and Costs. While I listed a conference call regarding attorney's fees in the exhibit to the declaration I submitted with our motion, I did not claim any compensation for that call. (To the extent Defendant is referring to a 10/20/2014 time entry "Review and respond to emails re: fee applications," that time, which was incurred years before the filing of Plaintiffs' fees motion, has nothing to do with attorney's fees). Defendant's claimed deduction should be rejected.

13. *True the Vote*. Defendant seeks to deduct .3 hours for time spent on True the Vote's motion to intervene. But I did not I claim any such time. While I listed a time entry that states "Review and respond to emails re: letter to True the Vote (.3)" on 10/11/2013, I did not claim any compensation for that time. Defendant's claimed deduction should be rejected.

14. *Lost Claims*. Defendant seeks to deduct fees associated with what it characterizes as "failed claims," without any supporting argument or citation to legal authority. Specifically, with respect to the Brennan Center, Defendant asserts that 9.2 hours I spent on intentional discrimination and Fourteenth Amendment claims is not compensable. As

4

explained in Private Plaintiffs' reply brief, that is not the law. Defendant's claimed

deduction should be rejected.

15. *Amicus Briefs.* Defendant seeks to deduct 13 hours for time spent on amicus briefs. This

deduction fails as a legal matter, for the reasons explained in Private Plaintiffs' reply

brief.

   a.  Legal argument aside, Defendant's math does not add up. Defendant only

       includes six hours of time spent on amicus briefs in Exhibit B-5. Looking more

       broadly to Appendix A to my opening declaration, there *are* time entries totaling

       13 hours connected to amicus briefs listed – but the Brennan Center only claimed

       compensation for 7.8 of those hours.

   b.  In addition, Defendant appears to double-deduct at least .7 hours of my time as

       both duplicative and related to amicus briefs (entries on 4/21/2016, 4/25/2016,

       4/26/2016, and 4/27/2016).

**Attorneys' Fees – Block-Billed Time (Defendant's Exhibit B-6) and Vague Time (Defendant's Exhibit B-7)**

16. Defendant does not identify *any* block-billed entries for the Brennan Center, and only

    14.9 hours of what it claims are vague time entries. (Note, however, that Defendant *also*

    deducts nearly half of that time, 7.4. hours, as non-compensable "Business Development"

    time.) Despite the paucity of time entries it identifies as block-billed or vague – 14.9

    hours out of 516.5 hours sought – Defendant seeks to apply a ***20% reduction*** to the

    Brennan Center's ***overall*** fee award for block-billed and vague time. The claimed

    deduction should therefore be rejected, with one exception described in paragraph 17.

17. Defendant's approach defies common sense and it is inconsistent with the cases it cites in

    support of the deduction and the law more generally. Here, because any block-billed and

5

vague entries can be identified and segregated, the Court should, at most, apply Defendant's proposed 20% reduction to the vague and block-billed entries only – not to the entire fee award.

18. As I have already noted, Defendant claims 14.9 hours of my time is vague (and none is block-billed) – but most of these entries are plainly adequate. For example, Defendant claims the following entry is vague: "Review and compile internal revisions re: complaint & co-counsel agreement (.3)." So too the following entry: "call with E. Rosenberg, M. Posner, and J. Garza re: complaint & co-counsel agreement (.5)." The Brennan Center concedes that two entries totaling 1.5 hours of time are insufficiently descriptive: (9/17/2014, "Confer with co-counsel for co-counsel (1)" and 5/1/2015, "Confer w/ co-counsel (.5)").

19. In addition, as I already noted, Defendant seeks to deduct 7.4 hours of the time flagged as "vague" as non-compensable "business development." To the extent the Court eliminates any of this time as business development, it should not further deduct 20% of this time as vague.

**Attorneys' Fees – Business Development Time (Defendant's Exhibit B-8)**

20. Defendant seeks to deduct 24.3 hours for time spent on what it characterizes as "Business Development." In its brief, Defendants lists two tasks that it claims fall into this category: "contacting potential people who lack ID and recruiting potential clients" because "they were not reasonable and necessary for the prosecution of the suit." Br. at 65. Terming these tasks "business development" grossly misconstrues both the nature of the work performed and the nature of this case. What's more, even if Defendant's theory were credited, its arithmetic is off – numerous plainly compensable tasks are included in this

claimed deduction. Defendant's claimed deduction should be rejected.

21. The Brennan Center is a 501(c)(3) nonprofit organization that takes on legal cases in the public interest. The U.S. Supreme Court has long recognized a fundamental distinction between recruitment of clients to advance the public interest and solicitation for monetary gain. The suggestion that my outreach to Texans whose right to vote was potentially denied by the state's voter ID law is akin to solicitation for commercial purposes is absurd.

22. Furthermore, even crediting Defendant's argument, only 5.7 hours of my time in Exhibit B-8 refers to plaintiff outreach. Among the erroneously included deductions are the following:

   a. Defendant erroneously includes 8.6 hours unrelated to the tasks it terms business development, simply because that time was incurred on the same day as the so-called business development tasks. For example, it seeks to deduct 1.5 hours of time incurred on 9/12/2013 for "Review and revise complaint (1.5)."

   b. Defendant seeks to deduct 2.7 hours related to the co-counsel agreement and speaking with potential co-counsel. Contrary to Defendant's argument, this time was "reasonable and necessary for the prosecution of the suit." It is compensable.

   c. Defendant seeks to deduct an additional 6.3 hours of time related to individuals "affected" or "impacted" by Texas's voter ID law (or "without SB14 ID"), as well as .5 hours of legal research related to representing a fact witness and .5 hours related to survey research. This time was incurred, at least in part, to develop evidence for trial by investigating the ID law's impacts, identifying potential fact witnesses, and researching my legal obligations to potential fact witnesses. This

time is compensable.

**Expenses**

23. Defendant claims that the Brennan Center's expenses should be reduced by $42,577.59. These reductions fall into two categories: (1) overstaffing and (2) research. All of the expenses incurred by the Brennan Center are compensable and Defendant's claimed deductions should be rejected.

24. *Overstaffing*. Defendant claims a reduction in $5,216.57 in flights and hotel costs for me, my colleague Jennifer Clark, and Plaintiffs' expert witness Lori Minnitte (as Defendant observes in its brief, her name was shortened to "Minni" in the description of the expense). These costs were incurred in connection with our participation in the bench trial in this matter. Ms. Minnitte testified at the trial, and I conducted the examination. Ms. Clark assisted me in the preparation of this critical witness. These expenses are reasonable and compensable.

25. *Research*. Defendant claims a reduction of $37,361.02 for research expenses that the Brennan Center incurred by hiring contractors to assess the impact of the voter ID law in support of Plaintiffs' lawsuit. The contractors with the task description "Affected persons research" sought to identify and speak with persons adversely affected by Texas's voter ID law, largely working on the ground in the state. The contractors with the task description "Provisional ballot research" sought to obtain provisional ballots cast in Texas (in order to assess how many voters had been forced to cast provisional ballots as a result of the voter ID law), largely by sending and processing public records requests. The names of the individual contractors are irrelevant, and I omitted their names on my costs sheet in an effort to protect their privacy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Myrna Pérez
Attorney for the TX NAACP and MALC

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RICK PERRY, *et al.*,<br><br>Defendants. | Civil Action No. 2:13-cv-193 (NGR)<br>(Consolidated Action) |

### Reply Declaration of Jose Garza

I, Jose Garza, submit this Reply Declaration, in accordance with 28 U.S.C. 1746.

1. In my original declaration for the NAACP/MALC Plaintiffs I requested compensation for 82.9 hours devoted to the case. See Dkt. 1145-17. This request represented a substantial reduction of hours, representing about 30% of the total requested. For instance I requested compensation for 82.9 hours spent on the case, while writing off 34.7 hours in the exercise of billing judgment. (total hours devoted to the cause was 117.6, a reduction of over 34.7 hours of my time is about 30%) Defendants have proposed additional major reductions, summarized in their Memorandum, page 87, and itemized in their Exhibits B-1 through B-8. I believe the vast majority of these hours are compensable. This Reply Declaration challenges the most clearly unjustifiable of Defendants' proposed cuts.

2. Based on my challenges of clearly unjustified cuts, which are spelled out below, I believe the maximum justifiable cuts under Defendants' theories is $2,119.80.  At our requested reasonable rate of $613.00/hour, for my time, this means the NAACP/MALC Plaintiffs should receive $48,697.20 for my time.

3. The cuts I specifically challenge are in the following Defendants' categories:  Travel (Def.

1

Ex. B-1); Clerical (Def. B-2); Duplicative (Def. Ex. B-3); Excessive (Def. Ex. E-4); and Non-Compensable (Def. Exh. B-5).

4.      Travel, Def. Ex. B-1.  Defendants propose to cut 11.8 hrs. from my fee request representing travel hours. Yet, the exhibit clearly shows that not only the travel time documented but also other activity claimed in the noted time entries, such as meetings witnesses and clients, testimony preparation during trial by reviewing prior testimony on the same issues by the same witness, and briefing clients are also included in the proposed reductions.  (See e.g. Def. B-1, p. 3 Jose Garza entries for 9-1-14 (client preparation), and 10-12-16 (confer client and its staff and discuss status of case). The total travel time documented in those entries is 5.8 hours not 11.8. Moreover, the fee application has already reduced a substantial number hours in billing judgment. In addition travel time at most should be reduced by 50% or compensated at a reduced rate, not completely eliminated. Since the Defendants failed to filter out non travel time in their requested reduction and since the I have made a 30 % fee reduction to begin with the court should at most, compensate the 5.8 hours at the half rate of $306.50 and make a reduction of $1,777.70 for travel time from my fee application request.

5.      Clerical, Def. Ex. B-2. Defendants propose to cut 5.8 hours described as clerical. However, as with their argument on travel time reductions, the Defendants seek to reduce time entries that include more than potential clerical activities. For example the entries Defendants seek to eliminate include time spent reviewing the House Journal and review of amendments to SB 4. This is legitimate research for this case. Deposition preparation and should be compensated. (See Def. Exh. B-2, p. 017). A careful review of the time entries designated by the Defendants as clerical reveals that at most .7 hours devoted to setting up witness interviews should be compensated at a reduced rate of perhaps $125 per hour paralegal rates. No more than .7 hours should be designated

as such and these hours should not be reduced but rather compensated at a paralegal rate of $125 per hour.

7.    <u>Duplicative, Def. Ex. B-3</u>.   Defendants propose to cut 26.2 hours of my time as "Duplicative", but many  of Defendants' proposed cuts simply are not duplicative activities. For instance, discussions with an associate for whom we claim no time of MALC disclosures simply cannot be duplicative. (See Exh. B-3, entry for 9-21-13). On my entry of 3-13-14 I claim time spent with a legislative witness and Chairman of MALC, the briefing and legal requirements of legislative privilege. No else was in the room, clearly not duplicative. A review of all the time entries for Garza in B-3 do not disclose any "duplicative" time entries. Moreover, as noted above, my initial fee request includes a substantial billing judgment reduction exactly to account for possible duplication. No further reduction for duplication should be made.

8.    <u>Non-Compensable, Def. Exh B-5</u>. Defendants propose to cut 3.3 hours of what is referenced as "non-compensable". The two entries are detailed in my time chronology and clearly describe compensable time entries. 1.3 hours are claimed in an interviewed with Dr. Charles Cotrell, a political scientist and recognized expert on minority vote dilution. His expertise on historical factors regarding voting discrimination and historical facts on intent were helpful in understanding the scope of our presentation on the totality of circumstances and intertwined with our Section 2 obligations. Finally, devoting 2 hours on fee application exhibits is not unreasonable in a case as complicated and complex as this case is. No reduction for "non-compensable" category should be made.

7.    Based on the above, Defendants' cuts should be calculated as follows:

| Category | Def. prop cut | Correct Cut |
|---|---|---|

3

| | | |
|---|---|---|
| Travel, Def. Exh. B-1 | 11.8 | 5.8[1] |
| Clerical, Def. Exh. B-2 | 5.8 | .7 hrs at $125.00 |
| Duplicative, Def. Exh. B-3 | 26.2 | 0 |
| Non-compensable, Def. Ex. B-5 | 3.3 | 0 |

Total reductions: $2,119.80 ($1777.70 for travel reduction and $342.10 for clerical reduction).

Initial Fee Request for Jose Garza: $50,817
Fee Reduced as noted above per Defendant's objections: $2,119.80
Plaintiffs' proposed rate of $613

I therefore request a fee of $48,697.20.


8.      Market Rate. Our expert, Mr. Bill Edwards and Jose Garza have both testified that a prevailing market rate commensurate with the matrix of the USAO of $613.00 per hour, for someone of Mr. Jose Garza's experience, in this case is reasonable. We address the prevailing party issue in the common brief of the Plaintiffs and I adopt those arguments and conclusions. In addition, as Mr. Edwards has testified, the expertise required to successfully prosecute a Voting Rights Act case, such as this, requires some unique experience and expertise. In my estimation, there are perhaps only four attorneys in the San Antonio Division of the Western District of Texas with the kind of unique experience and background in voting rights necessary to litigate this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

                                        __/s/ Jose Garza_____
                                        Jose Garza


---

[1] The travel time should be compensated at half the compensable rate, a reduction here of $1,777.70 for travel time.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |
|---|---|
| MARC VEASEY, *et al.*, <br>              *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br>              *Defendants*. | Civil Action No. 2:13-cv-193 (NGR) <br> (Consolidated Action) |

### <u>SUPPLEMENTARY DECLARATION OF GARY L. BLEDSOE</u>
### <u>IN SUPPORT OF REQUEST FOR ATTORNEY'S FEES</u>

I, Gary Bledsoe, hereby declare as follows:

I have reviewed the State's objections to the fees I have billed for in this case. I believe the fees are appropriate and would ask that the Court grant the request as made.

1.  As per my resume, I was involved in the D.C. case challenging the same voter identification law as well as the recent cases involved in redistricting. I was also involved in the round of redistricting in 2000, including the litigation that commenced in 2003. I had previously been involved in handling redistricting matters in Galveston County and worked on some redistricting and other voting matters when I was previously employed by the Texas Attorney General. I was Acting Dean of the Thurgood Marshall School of Law for approximately two years and then taught a seminar involving Justice Thurgood Marshall where I discussed voting rights and have taught the seminar since leaving the Dean's position. I am the Vice-Chair of the National NAACP Legal Committee.

2. The State contends that the following cuts should be made to my attorney's fee request: $1,600.00 for Travel; $9,240.00 for being Duplicative; and a 20% reduction for Vague and Block-Billing of $6,048.00.  The State would cut my request to an amount of $13,352.00, or if the Court finds the hourly rates requested are appropriate, then to award no more than $20,461.94.  The State objections to my fees can be found on pages 85-86 on Defendant's Response to Plaintiff's Motion for Attorney's Fees. Dkt. 1196.  After changing or modifying the hourly rate the State reduced the amount to be recovered under my fee petition to $30,240.00.  After reducing the amount by this approximately 33 percent, they further reduced the fee request on the basis of duplicative, block and vague billing arguments.

3. In reference to the issue of duplicative and other types of billing the State objects to, I did not submit all of the hours worked nor any hours for any Associate who worked on the case.  Here are some examples of the actual work at issue.  I would submit that the work is important.  In addition, I want to illustrate to the court how some of the issues raised are not appropriate:

   i. When I travelled to Hearne to interview E. Davis, I travelled with our Staff and further prepared for the deposition while travelling.  The travel time was for no more than 3 of the 8 hours but the overall time involved was also greater than the 8 hours that were billed.  During the course of the interview we called upon others to come and provide important details that were important to our interview.  The witness was one of those identified as not having the appropriate identification and she lived in a county that did not have a DPS office where she could obtain an identification card and one that did not have public transportation.  In order to

2

understand her situation better we called upon other citizens to fill in the blanks or confirm what the witness was saying.

ii. I was very active in discussions around how to handle the efforts to enjoin the use of the voter identification law in the 2016 election and discussions about the possible interim remedy and later legislative changes.  I am a Texas lawyer who formerly worked in the office of the Attorney General who was familiar with Texas legal culture and Texas criminal and election law.  I believed that the possible use of affidavits presented potential problems and I also wanted to educate everyone that the law on voting illegally in Texas, depending on the circumstances, included a number of felony laws in addition to those misdemeanor laws that were commonly understood.  Having direct contact with many citizens who worked to help others to vote I talked with many of them and got valuable input about the issues they would face if voters who did not have a specific identification were required to sign affidavits.  This information I believe was informative to the group. I did not bill for all of the hours prepared in researching Texas law to pinpoint the felonies or the calls or meetings with citizens from San Antonio, Huntsville and Houston particularly, but this included 6 additional hours.  One of the duplicative entries involves handling emails and drafting regarding these matters in March of 2017 involving this same issue, when there were issues before the Legislature and the courts. Dkt. 1196-15.

iii. Once the court decided to grant interim relief in terms of how the law would be used in the 2016 election, I reviewed the list of organizations to be notified of the changes that was provided attorneys eyes only by the State. Dkt. 1196-15, p. 001.

3

As a Texas lawyer I would have familiarity with many of them. The court had ordered that various types of notification be disseminated to the public about its ruling that modified how the voter identification law would be implemented in the November 2016 election. The list was truly extensive but I examined the list particularly to see about geographical and racial fairness to try and make sure that the Texas community including minorities would be provided this important information. After scrutinizing the complete list for over 3 hours I came up with a list of areas where I saw deficiencies. I then suggested additional entities to be notified so that the notification efforts would reach more people and therefore be more effective. I also scrutinized the wording that was to be sent out. I only billed 0.3 hours for this important work but it took me more than 5 hours, in part because of the extensiveness of the list.

    iv. The State contends that numerous conference call entries are vague, but these are conference calls with co-counsel about the case involving the issues of the case. There is no need to detail information any further. See Dkt. 1196-15.

4. The State also contended that a number of entries from the declaration attachment submitted were vague. This was discussed on page 85 of Dkt. 1196. I disagree with the State's contention and believe all of the entries submitted were clear:

    i. The State says the billing for reviewing the Attorneys Eyes Only Document is vague. See Dkt. 1196-15, p. 001. I think it should be clear what is being referred to by looking at the context of the email. Further, it is their AEO list that is being referred to. We can recall that voter instructions had become an issue as we were leading up to the 2016 election.

4

ii. Since voter instruction was such a matter of concern, I examined what had occurred in South Carolina to get some idea as to what to be prepared for her as this could be of benefit in ensuring that the proper instructions were to be given.  The State contends that the description of this work on 8/16/2016 was vague.  In regards to the assessment of reviewing the email on 8/16/2016 where they say the description was vague.  Understanding how courts had handled similar matters in similar cases was important to assist in providing the best input on what we should be seeking in Texas in our litigation.

iii. I also drafted affidavits about the consequences of the Voter ID law, the compromise affidavit alternative and the impact of the comments being made by public officials as these were very important to the outcome of the case and particularly to provide the trial court with information needed in making its decision on what kind of order, if any, should be issued.  The emails and comments of course in 2017 that are allegedly vague involve issues pending at the Legislature that had direct bearing on the case.  Dkt. 1196-15, p. 002.  At issue of course was whether the State would remedy the discriminatory law then at issue in the court and secondarily whether any remedy alleged to codify the court's interim order actually did the same.  As we know this became a matter of dispute in this litigation.  There were salient differences of great importance between what the court ordered and what was being proposed to the Legislature.  In addition, there was a new crime being created with a stiff penalty.

      iv. In reference to another entry, they also contended that on 4/29/14 that the description of the activity was duplicative. Dkt. 1196-11, p. 001.  It is clear that we were responding to discovery tendered by the State as they were the Defendants in the case, and that it was in reference to the NAACP's responses.  This was for 1.3 hours and it did not include all of the time I spent on reviewing and helping to prepare the discovery.  I am not sure how they contend this is duplicative

5. The State also contends that various items are duplicative and I disagree as to each of them (see Dkt. 1196-11, p.001):

      i. One area concerned several entries regarding the actual trial and entries for work performed from 9/02 to 9/04 of 2014.  To the extent any would involve work on the same day they would be duplicative.  However, they describe the type of work done at trial and I must concede that the witness preparation was only for the 3rd.

      ii. The State reduces my fee request to $30,240.00 based on what they deem to be the proper hourly rate.  This is a reduction of about 1/3.  They then take the amount of their proposed reductions for being duplicative and reduce my fee request by another 23.1 hours and then they deduct another 20 percent for vagueness and block billing. Each of the 23.1 hours is warranted and the 20 percent deduction is not well founded and is in fact arbitrary in my opinion.  The list for vagueness and block billing included many of the items on the duplicative list.  There were hours that associated worked on the case that are not included in this request.  I would urge the court to consider the methodology used by the State, especially the 20 percent for vagueness and block billing as being arbitrary.

      iii.  I am requesting $46,827.27 to be compensated to me for the work that I performed. This would be for 74.35 hours of work at $613 per hour which equals $45,576.55 and for expenses I would request $1,250.72 for a total of 46,827.27.

These are just some examples of work performed that was not billed for.  I do believe that my fee request is reasonable.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this Declaration was prepared in Houston, Harris County, Texas on February 6, 2020.

/s/Gary L. Bledsoe
Gary L. Bledsoe

7