IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> Defendants. | Civil Action No. 2:13-cv-193 (NGR) <br> (Consolidated Action) |

## REPLY DECLARATION OF EZRA D. ROSENBERG IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES

### INTRODUCTION

1. This declaration is submitted on behalf of the fee applications of both the Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee) and Dechert LLP. As explained in my original submission, I was a partner at Dechert LLP from the inception of this litigation through October 31, 2014 – a period covering the matter through trial. I then joined the staff of the Lawyers' Committee in November 2014, and remained there through the conclusion of this litigation. Throughout this time, I was one of the lead counsel in this litigation, and served as the primary coordinating counsel, interfacing with the Court, the Defendants, the Department of Justice, and all of the private plaintiffs, so as to allow the matter to proceed most efficiently.

2. Dechert and the Lawyers' Committee supported their fee applications with detailed billing records, describing with reasonable precision the tasks performed each day on the matter. Moreover, as explained in our original submissions, both Dechert and the Lawyers' Committee exercised their reasonable billing judgment in cutting the majority of time recorded on this matter by their attorneys.

3. Nevertheless, Defendants characterize 422.3 of the combined Dechert and Lawyers' Committees hours as "Duplicative," without explaining what they are duplicative of, and 1,157.5 of the combined Dechert/Lawyers' Committee hours as "Excessive," without explaining why they are excessive, and never taking into account the thousands of hours already cut by Dechert and the Lawyers' Committee in their original submissions. Further, Defendants propose a 20% across-the-board reduction for "Vague" and "Block-Billed" time, when, as we shall show, the description of the tasks performed are more than adequate to provide this Court with a basis for the fee claimed. In this declaration, we will provide multiple examples of the arbitrariness of Defendants' characterizations of the time recorded.

4. Were this not enough for this Court to reject Defendants' submission in its entirety, we will also explain how Defendants double-counted many of their deductions, and made other substantive mathematical errors, resulting in deducting hundreds of thousands of dollars in error.

**TIME ALREADY CUT**

5. At the outset, it is critical to highlight the extent to which both Dechert and the Lawyers' Committee excluded time it expended on this litigation from its fees application.[1] Nine different attorneys at the Lawyers' Committee worked on this matter – the Lawyers' Committee seeks attorneys' fees for just *two*. Doc. 1174-2 at 8.[2]

6. Additionally, the Lawyers' Committee is not even seeking fees for a majority of the time those two attorneys spent on this matter. While those attorneys spent a total of 2,621 hours on this case, we seek fees for just 952.63 hours (or 36.3% of the total time). As for my time specifically, I spent 1,454.4 hours litigating this case while at the Lawyers' Committee and

---

[1] Neil Steiner, a Dechert partner, will be submitting his own declaration discussing these and other issues from Dechert's perspective.

[2] The Lawyers' Committee is a non-profit, non-partisan organization. Fees awarded in this case would go not to the individual attorneys, but to the organization. Such funds are used to continue to litigate civil rights cases on behalf of our clients, all of whom are represented on a *pro bono* basis.

seek fees for just 502.03 hours (34.5% of my total time). *Id.*

7.  When including the seven attorneys and one paralegal for which *no* time is sought, the Lawyers' Committee seeks compensation for just 26.0% of the total time spent on this matter (952.63 hours out of a total of 3,658.3).

8.  In dollar terms, the Lawyers' Committee excluded $1,451,294.61 from its application and seeks just $583,962.19. We made those cuts, when originally submitting our application — even before Defendants' responsive papers were filed. Nowhere do Defendants mention or acknowledge any reduction made by the Lawyers' Committee, much less the fact that we do not seek compensation for 74.0% of the time we expended on this case.

9.  We made those substantial cuts, despite my role as coordinating counsel throughout the litigation, in which, as stated in my original Declaration,  I "was one of the prime interfaces with all Private Plaintiffs, coordinating the joint submissions; with the Department of Justice, including coordinating submissions, preparing for trial, and coordinating the presentation of evidence at trial; [and] with the State of Texas, including coordinating many of the evidentiary and witness issues on behalf of the Private Plaintiffs; and with the Court." *Id.* at 3. Nowhere in their brief do Defendants contest or question the critical nature of my role in this litigation.

10. I emphasize that I played this role throughout this litigation — when I was a partner at Dechert, and when — after retiring from Dechert on October 31, 2014 — I became Senior Special Counsel of the Lawyers' Committee on November 3, 2014, and then co-Director of its Voting Rights Project on July 1, 2015. The same justification for the substantial time I spent coordinating this litigation applies for the time I incurred at Dechert as well as for the time I incurred at the Lawyers' Committee.

11. Despite our asking for only slightly more than a quarter of the time expended on this matter,

the State proposes additional, drastic cuts to the Lawyers' Committee's submission. The State insists that Plaintiffs' proposed hourly rates are inflated (a contention which we vehemently oppose in our joint brief),[3] and suggests a series of categorical reductions, which, combined, would result in an award to the Lawyers' Committee of "no more than $37,228.90." Doc. 1196 at 87. Such reductions represent just 6.4% of the amount sought ($37,228.90 / $583,962.19). When considered as a function of the total time the organization spent on this matter (fees for hours excluded from our submission + hours included), the State submits that the Lawyers' Committee should be compensated for no more than 1.8% of the time it expended on this litigation ($37,228.90 / $2,035,256.80). The absurdity of the scope of the reductions should cast doubt on the entirety of Defendants' submission.

## MATHEMATICAL ERRORS

12. The State proposes a series of cuts, by category, to the Lawyers' Committee's request. Doc. 1196 at 87-88 (summary). Yet those cuts alone feature a host of mathematical errors that make Defendants' entire submission incredible, and provide a significant portion of the explanation as to how Defendants can arrive at their ridiculous figure of $37,228.90 for the Lawyers' Committee's fee. Defendants assert that the Lawyers' Committee's award should be reduced by 257.9 hours because they were "Duplicative" and an additional 361.7 hours because they were "Excessive." *Id.* But 210.9 of those hours were *double counted* in that the State labeled many time entries as both duplicative and excessive and then discounted those entries *twice*. This error alone restores 210.9 hours and, at a rate of $613 per hour, $129,281.70, to the Lawyers' Committee's award.[4] There is an additional mathematical error in the State's calculations, as their Exh. B-4 (Doc. 1196-12) calculates their proposed

---

[3] All figures in this brief are based on Plaintiffs' proposed hourly rates.

[4] *See* Doc. 1196-11 at 12-20 (hours labeled "Duplicative"); Doc. 1196-21 at 17-24 (hours labeled "Excessive"). All hours labeled both "Duplicative" and "Excessive," 210.9 in total, were double-counted in Defendants' summary of proposed reductions. *See* Doc. 1196 at 87-88. At a rate of $613 per hour, that results in the restoration of $129,281.70.

cut of my Dechert time on this basis at 468.6 hours, but their cumulative table has it at 486.6. At $613 hourly rate, this mathematical mistake adds back $11,034.00 to the base fee, before dealing with the merits of Defendants' arguments.

13. Additionally, Defendants propose a "Vague and Block Billing" reduction of 20% of the Lawyers' Committee's original total submission of $555,163.45.[5] *Id.* First, we note that, nowhere in their supporting Exhibits, do Defendants claim that a single time entry recorded by the Lawyers' Committee was either "Vague" or "Block" billed. Thus, there is no justification, by their own admission, for even a penny reduction on this basis, let alone a 20% reduction. That more than $110,000 mistake also goes a substantial way to explaining how Defendants come up with a $37,228.90 figure. That proposed reduction will be discussed in more detail *infra*, but that aspect of Defendants' calculations also features a critical arithmetic error in that the percentage reduction is applied to the *total* fee request instead of on the sum remaining *after* Defendants' proposed categorical cuts are subtracted. Specifically, after subtracting $261,281.56[6] in Defendants' proposed categorical cuts from the original submission of $555,163.45, $293,881.89 of the Lawyers' Committee's submission remains. Instead of taking their proposed (and, to be discussed, unsubstantiated) additional 20% off of that reduced amount, which would be another deduction of $58,776.38, Defendants take off 20% of the original *total* submission and propose a reduction of $111,032.69. This difference of $52,256.31 should be added back to the basis of the

---

[5] While Defendants' assert that only the Lawyers' Committee's original submission of $555,163.45 should be considered, we maintain that the revised submission of $583,962.19, which includes some reductions proposed by the Defendants as well as some additions based on legal authority provided by the Defendants - including the time expended on preparing the fee submissions - should be the baseline in this matter.

[6] This figure is reached by taking Defendants' total categorical cuts figure of $390,563.56 and restoring $129,281.70 of double-counted reductions. With that fix, $261,281.56 of Defendants' proposed categorical reductions remain.

Lawyers' Committee's award even before considering the merits of Defendants' substantive arguments.[7]

14. Leaving aside the lack of basis for any deduction on the basis for "Vague" or "Block" billing, combined, the mathematical errors in Defendants' brief add $192,572.01 to the basis for Lawyers' Committee's award, even before we get to the legitimacy of the substance of Defendants' proposed deductions.

15. The same errors, including time incorrectly deemed "Clerical", appear in the State's response to Dechert's application. Those errors will be detailed in Neil Steiner's declaration, but a summary of the errors in these three categories, as it applies to Dechert and the Lawyers' Committee, appears below

### Summary of State's Mathematical Errors

|  | Dechert LLP | Lawyers' Committee |
|---|---|---|
| Double or Triple Counted Time | $72,517.90 | $129,281.70 |
| Clerical Time Error | $60,125.20 | N/A |
| Vague/Block-Billed Error | $115,762.42 | $52,256.31 |
| Transposed Numbers Error | N/A | $11,034.00 |
| **Total Amount of Errors** | **$248,405.52** | **$192,572.01** |

Calculating the 20% mistake for all Texas NAACP/MALC counsel, the total impact on counsel's fee request caused by the State's mathematical errors is $467,859.69, as shown in the table below:

---

[7] To highlight this error, consider a scenario in which the State proposed $500,000 of categorical cuts *plus* 20% of the *total* submission for "Vague and Block Billing" (or $111,032.69). In that example, the State would propose to reduce a $555,163.45 submission by $611,032.69.

**Effect of State's Mathematical Errors on NAACP/MALC Fee Request Before Dealing With Merits of the State's Arguments**

| | Dechert LLP | Lawyers' Committee | Brennan Center | Garza | Bledsoe | Notzon[8] |
|---|---|---|---|---|---|---|
| Double or Triple Counted Time | $72,517.90 | $129,281.70 | N/A | N/A | N/A | N/A |
| Clerical Time Error | $60,125.20 | N/A | N/A | N/A | N/A | N/A |
| Vague/Block-Billed Error[9] | $115,762.42 | $52,256.31 | $17,061.32 | $5,529.26 | $3,812.86 | $478.72 |
| Transposed Numbers Error | N/A | $11,034.00 | N/A | N/A | N/A | N/A |
| **Erroneous Mathematical Errors per Group** | **$248,405.52** | **$192,572.01** | **$17,061.32** | **$5,529.26** | **$3,812.86** | **$478.72** |
| **GRAND TOTAL OF ERRONEOUS MATHEMATICAL ERRORS (all groups)** | **$467,859.69** | | | | | |

## TRAVEL

16. As for specific categorical reductions, Defendants propose reducing the 22.95 hours Mark Posner and I spent on non-working travel for this matter by 50%. Doc. 1196 at 40-41. Yet Defendants fail to realize that the Lawyers' Committee *already* imposed a 50% reduction on such time, and expressly noted doing so, when it submitted its application. *See* Doc. 1174-2

---

[8] Aside from the proposed 20% reduction, the State does not challenge any of Daniel Covich's time. *See* Doc. 1196 at 89.

[9] All of the amounts in this row are calculated by multiplying the State's proposed categorical reductions by the hourly rate for that attorney, taking 20% of that amount, and subtracting that from the size of Defendants' proposed 20% cut. For example, Defendants propose cutting 31.1 hours of Gary Bledsoe's time and then 20% of his total request. *See* Doc. 1196 at 85. At a rate of $613, those 31.1 hours amount to $19,064.30 in proposed cuts. Mr. Bledsoe's original request was for $46,342.80. $46,342.80 - $19,064.30 = $27,278.50. 20% of that amount is $5,455.70. This should be the amount of Defendants' proposed reduction. Instead, Defendants propose a $9,268.56 reduction. The difference between that number and the correct number, as reflected in the table above, is $3,812.86.

at 10.[10] Because of that failure, Defendants, in effect, propose to award 25% of the Lawyers'
Committee's travel time. In recognition of this error and the Lawyers' Committee's use of
the 50% rate at the outset, the Court should reject Defendants' proposed travel cuts in full.

## FEE APPLICATION

17. The State also argues that 2.8 hours of my time should be billed at 80% because it was spent
    preparing the fee application. Doc. 1196 at 59, 87. The Lawyers' Committee acknowledges
    that 2.8 hours of the time I spent on the fee application was not billed at 80%. Thus, a
    reduction of 0.56 hours is warranted.[11]

## CLERICAL

18. Defendants characterize 2.4 hours of my time at the Lawyers' Committee as "clerical." Doc.
    1196 at 44, 87; Doc. 1196-2 at 18. Much of that contested time contains substantive legal
    work necessary to litigate the case, including discussing briefing issues with co-counsel.
    Bending over backwards to be reasonable, we have recharacterized 1 hour of my time that
    was arguable "clerical" as such, and will deduct it from our fee request.

## ALLEGED DUPLICATIVE, EXCESSIVE, VAGUE, AND BLOCK-BILLED TIME

### Alleged "Duplicative" Time

19. The State maintains that the vast majority of Dechert's and the Lawyers' Committee's hours
    are "Duplicative," "Excessive," "Vague," and/or "Block billed."[12] As discussed *supra*, 210.9
    of the Lawyers' Committee's hours are double-deducted by the Defendants, and, as
    discussed in the declaration of Neil Steiner, 121.8 of Dechert's hours are double or triple
    deducted due to this same error by Defendants.

---

[10] For example, on August 24, 2014, Mark Posner spent 2.8 hours traveling. The Lawyers'
Committee charged 50% or 1.4 hours. The same pattern repeats throughout Defendants' Exhibit B-
1. Doc. 1196-9. While Defendants' also propose reducing my non-working travel time on page 41 of
their brief, they also failed to itemize *any* of that time in Exhibit B-1.
[11] We note that Defendants expressly assert that time spent on the attorneys' fees application should
be billed at 80%. Doc. 1196 at 58-59. Yet, in the summary of their proposed reductions, they
incorrectly remove the time in its entirety. *Id.* at 87.
[12] Because virtually all of Defendants proposed reductions in these four categories are labeled with
more than one of these adjectives, and because they fail to clearly distinguish between the four
categories, we will discuss them jointly in this section.

20. Turning to the merits, as to alleged "Duplicative" billing, the State seeks to strike 164.4 hours of Dechert's time (including 135.1 hours of mine) and 257.6 hours of the Lawyers' Committee's time (174.2 hours of mine and 83.7 hours of Mr. Posner's), without a scintilla of explanation as to why the time was "Duplicative."  Nowhere in the State's discussion of this issue in their brief, Doc. 1196 at 48-50, do they even mention Dechert or the Lawyers' Committee, until they provide the massive total hours that they want stricken on this basis.

21. Most of my alleged "Duplicative" time at Dechert is also deemed "Excessive," (and is double-counted) and will be discussed more fully below.  But the only two times the State describes my Dechert time as "Duplicative" and not as anything else deficient suffice to demonstrate the ridiculousness of the State's description of my time as "Duplicative." The State characterizes my August 20, 2014 time of 11.50 hours as "Duplicative."  Doc. 1196-11 at 9.  But that was for my participation in the witness preparation of Daniel Chatman, the expert whose deposition I defended and put on the stand at trial, and for preparation of my actually taking the depositions of the State's only two experts (Hood and Mihlo).  Similarly, the State characterizes as "Duplicative" my time on August 22, 2014, for appearing at the deposition of Dr. Ansolabehere, one of the most important of DOJ's witnesses, and, again, my continuing to prepare to take the depositions of the State's experts.  What precisely is this time "duplicative" of?  The State has no explanation, because there is none.

22. The State's approach to the "Duplicative" issue for time recorded at the Lawyers' Committee is similarly arbitrary.  For the period from June 2013 through October 2014, Mark Posner is the only person for whose time a fee is being sought by the Lawyers' Committee.  Yet, that is the only time period for which the State alleges Mr. Posner's time is "Duplicative." Further, it is often for tasks that he and he alone was doing. For example, the several items relating to expert Chatman, for whom Mr. Posner was the point person from our team.  (*See, e.g.*, entries for June 24, 2014, July 2, 2104, July 16, 2014, July 21, 2014, Sept. 7, 2014; Doc. 1196-11 at 12-13), or for drafting the pretrial Conclusions of Law, as to which he was one of the primary drafters for the entire private plaintiffs' team.  (*See, e.g.*, entries of August 11,

2014, August 15, 20154, August 16, 2014, August 17, 2014; August 18, 2014; August 19, 2014; August 20, 2014; August 21, 2014; September 7, 2014; September 8, 2014; *id.* at 12-14).

23. Then, again arbitrarily, the State stops characterizing any of Mr. Posner's time as "Duplicative" after I joined the Lawyers' Committee staff in November 2014, but, without explanation, characterizes as "Duplicative" much of my time working at the Lawyers' Committee on drafting the post-trial brief, and the successful appellate brief. *Id.* at 15 – 16. Perhaps most bizarrely, the State characterizes as "Duplicative" my having synthesized the comments of the other co-plaintiffs in a single brief – to avoid duplication of effort – as is reflected in a time recording of July 31, 2018, which they challenge. *Id.* at 20. By definition, this is not duplication of effort *per se*.

24. Moreover, as discussed *supra*, Defendants willfully ignore the extent to which Dechert and the Lawyers' Committee *already* made specific and substantial reductions to its submission. For example, Defendants label 6.7 hours of Mark Posner's time working on the complaint as "duplicative." Doc. 1196-11 at 12. But a careful review of the Lawyers' Committee's submission reveals that 12.9 out of the 19.6 hours Mr. Posner spent related to the complaint were not charged *at all*.[13] *See* Doc. 1174-3 at 8-9. That pattern repeats itself throughout the rest of Defendants' critiques in these sections. And again, nowhere do Defendants explain *why* 6.7 hours billed by Mr. Posner – one of the most experienced Voting Rights Act attorneys in the country – on drafting a complaint was "duplicative," nor do they explain they labeled *any* particular entry "duplicative" or what, exactly, that entry was duplicative of.

---

[13] At no point do Defendants question Mr. Posner's qualifications or expertise in voting rights litigation. As discussed in our revised submission, Mr. Posner served in the Department of Justice's Civil Rights Division for 23 years, including 15 in the Voting Section. Doc. 1174-2 at 6. Mr. Posner was the "principal line attorney for the Lawyers' Committee on this matter" before I joined the organization. Before and after I joined, Mr. Posner "was a key strategist and brief writer," particularly in the development of critical filings and Plaintiffs' strategic decisions. Defendants do not contest any of these assertions.

### Alleged "Excessive" Time

25.        As noted *supra* and in my previously submitted declaration, I was the primary coordinating counsel amongst Private Plaintiffs, with the Department of Justice,  with the State, and with this Court. That role *required* regular communications with each of those groups regarding the critical issues and filings in this case. Were it not for my efforts at coordination – both when at Dechert and at the Lawyers' Committee — the parties — including the State — and indeed this Court — would have had to spend considerably more time on this litigation dealing with individual parties. Throughout the litigation, I worked extremely hard to coordinate the positions of the various plaintiff groups into a single voice, and often communicated that voice to the Department of Justice, the Defendants and the Court. My hours — both at Dechert and the Lawyers' Committee — fairly reflect that necessary work. Nevertheless, the State proposes eliminating virtually all of that time, including the time spent communicating directly with the State itself.[14] In total, State proposes to cut 486.6 hours of my Dechert time and 177.9 of my Lawyers' Committee time as "excessive."

26. As noted above, there is an additional mathematical error in the State's calculations, as their Exh. B-4 (Doc. 1196-12) calculates their proposed cut of my Dechert time on this basis at 468.6 hours, but their cumulative table has it at 486.6.

27. In addition, Dechert, and particularly its attorneys Michelle Yeary and Lindsey Cohan, aided by paralegal Antonella Capobianco (whose time Dechert has not requested a fee for), served as the primary coordinating counsel for discovery for all of the Private Plaintiffs, centralizing control and review of documents, further facilitating the ability of Private Plaintiffs to speak with one voice.

28. The State provides virtually no explanation as to why any of my time recorded was excessive," except noting that "Rosenberg charges over 200 hours in just answering emails

---

[14] *See, e.g.,* Doc. 1196-11 at 18 (entry on August 28, 2015); *id.* at 19-20 (entries on August 1, 2016; August 2; and August 3). All four entries are labeled both duplicative and excessive.

and phone calls to other Plaintiffs' counsel, seemingly to reduce any duplicative hours." Doc. 1196 at 52.  Leaving aside that Defendants' reference to their Exhibit B-4, pages 5-15 does not support that claim, in that the time recording on those pages include dozens of hours for tasks other than emails and telephone calls, the fact is that 200 hours scarcely scratches the surface of the time I spent from September 2013 through October 2014 (the period covered by the pages of that exhibit) on emails and telephone calls.  During the period from September 17, 2013 through October 31, 2014, a little over a year, I sent or received over 3,500 emails relating to this litigation, hundreds of which were substantive and reflected hundreds of long substantive discussions with co-counsel, DOJ attorneys, our experts, and the State itself.  During the three-month period from July 1, 2014 through the end of trial in September alone, I sent approximately 275 emails where a lawyer representing the State (Scott, Clay, Whitley, Aston, D'Andrea, Reid, Wolf) was the primary recipient, and received an equal number of emails from the State's attorneys.  During this same short period, I sent well over 100 emails where DOJ attorneys (Dellheim, Westfall, Baldwin, Freeman) were the primary recipients and received an equal number back.  This is in addition to the hundreds and hundreds of additional emails circulated between me and the Private Plaintiffs counsel in this short period.  These emails and calls dealt with issues ranging from review of expert witness reports, to strategy concerning discovery and depositions, to dealing with the many legislative privilege objections raised by the State, to dealing with complex data and algorithm issues, to judicial notice issues, to massive preparation for the trial, where I coordinated the presentation of the plaintiffs' witnesses to ensure efficient trial days.  Indeed, my records detail numerous discussions with the State's attorneys themselves in the time the State challenges as "excessive".  See, e.g., March 17, 2014 (John Scott); March 27, 2014 (John Scott); April 2, 2014; April 7, 2014; April 10, 2014; April 17, 2014 (Ron Kiester); April 18, 2014; May 22, 2014; May 28, 2014; May 29, 2014; June 2, 2014 (Lindsey Wolf); June 3, 2014 (Arthur D'Andrea); June 4, 2014 (Arthur D'Andrea); June 5, 2014 (S Tatum); June 9, 2014 (Arthur D'Andrea); June 10, 2014; July 15, 2014.  This is in addition to the

many calls where the recipient of the calls were not specifically identified, but the issues were, which many times included the State; and does not include calls with the State for which we did not submit a fee request.   A fee request for 200 hours for the time I spent on emails and telephone calls is not only reasonable, but extremely conservative.

29. The period for the time I was at Dechert spanned the time from the filing of the Complaint through a motion to dismiss, dozens of court hearings, a multitude of complex discovery issues (many of which were briefed), more than 75 depositions, many of which I attended, several of which I defended or took, the preparation of voluminous pre-and post trial findings of fact and conclusions of law,a 70-hour trial, and substantial briefing in opposition to stay applications filed by the State following this Court's decision.   The State would limit my time for all of this work – including the extensive coordination work — to 555 hours, or slightly above 40 hours a month.   I note that the State has not submitted a single declaration or affidavit from any of the lawyers from the State who were actually involved in the pretrial and trial proceedings of this matter, such as John Scott, Reed Clay, Lindsay Wolf, David Whitley, or Arthur D'Andrea, and with whom I had hundreds of substantive calls and discussions, and exchanged hundreds of emails.   Defendants therefore have no basis to opine on the whether time was "excessive."

30. Further, Defendants' characterization of 468.6 hours of my time at Dechert as "excessive" is easily debunked. Specific examples illustrate the point. *See* Doc. 1174-7 (Dechert's hours log); Doc. 1196-12 (hours classified by the State as "Excessive").

   a. For example, how is it "excessive" for me to have spent 26.3 hours over a 12-day period from November 11 to 22, 2013 (or an average of about 3 hours a day) - as opposed to the only 8.0 hours the State would okay after deducting 18.3 hours as "excessive"- working on and finishing a brief in response to a motion to dismiss, discussing possible experts with co-counsel, having numerous calls with the Department of Justice, Defendants, and co-counsel in preparation of a hearing, and participating in a case management conference with the Court?

13

b.  How is it "excessive" for me to have spent 4.70 hours over a 3-day period between December 18 and 20, 2013 - instead of the 0.70 hours the State would okay after deducting 4.0 hours as "excessive" - discussing expert issues with co-plaintiffs, having my first conversation with a person who turned out to be a key expert for plaintiffs, and reviewing draft interrogatories?

c.  How is it "excessive" for me to have spent 9.2 hours over a 3 day period between February 4 and 6, 2014, during which time I had numerous calls with Elizabeth Westfall, Jennifer Maranzano and other DOJ attorneys; Chad Dunn, Gerry Hebert, and Neil Baron of the Veasey team; Natasha Kargaonkor of the LDF team, in addition to Michelle Yeary of Dechert, Myrna Perez of the Brennan Center, and Mark Posner of the Lawyers' Committee, all as detailed in my time records – on discovery issues, expert issues, and issues relating to an upcoming hearing, when this sort of activity is essential at the beginning of a complex case?  The State, without an inkling of explanation, deems *all* of this time as "excessive."

d.  How is it "excessive" for me to have spent about 62.6 hours over nearly an entire month, from April 2, 2014 to April 28, 2014 - instead of the mere 22.6 (less than an hour a day), after deducting the 40.4 hours the States calls "excessive" - having numerous calls and emails with Defendants, DOJ, all of the co-plaintiffs on issues as diverse as attorney-client privilege, scheduling, discovery issues, trial protocol issues, and depositions, not to mention my drafting of an Advisory to this Court regarding trial protocol, when I was serving in the key coordination role, so as to facilitate discovery and pre-trial proceedings for the Court and the parties?  By way of example of the sorts of activities, I was undertaking during that period are emails exchanged between me and John Scott, then lead counsel for the State, reflecting discussions with the State "earlier in the week," on a series of discovery and trial preparation issues.  Exh. 1. That week included April 7, where the State seeks to exclude 3.20 hours of my time  as "duplicative" and "excessive," which was for,

14

among other things, "Call with DOJ, Texas and other parties re discovery issues . . ."

e.  How is it "excessive" for me to have spent 6 hours on May 1 preparing for and conducting conferences with all counsel, including DOJ, and then preparing for and participating in a hearing with the Court on a motion to quash?

f.  How is it "excessive" for me to have spent about 40.5  hours during an 18-day period from May 12 through May 29, 2014 - instead of the 6.0 hours left after deducting the 34.5 hours that the State arbitrarily and without explanation deems "excessive" - during which time I dealt with common interest issues, which required briefing, judicial notice issues, various discovery and expert issues, discussions with Defendants concerning legislator depositions, various meet and confers with Defendants, and preparation for and participation in a hearing before the Court on data bases and other issues, all as described precisely and at length in Dechert's time records?  Some of these issues and the activities I was undertaking in this period are reflected in the attached emails.  Exh. 2.

g.  How is it "excessive" for me to have spent the 123.5 hours they challenge during the entire month of June 2014 - instead of the 47.4 hours left after the State deducts 76.1 hours, again without explanation, as excessive - during which time I dealt with the briefing of the common interest issue to this Court; multiple calls with the State on legislators' depositions, conducted numerous all plaintiffs calls (including DOJ), participated in hearings before the Court, reviewed a number of expert reports and responses to requests for admission, and prepared for and actually took the depositions of two Texas legislators (Riddle and Harless)?

h.  How is it "excessive" for me to bill 90.3 hours of time for the entire month of July 2014 - instead of less than half that time remaining after the State's deduction of 48.2 hours as "excessive" - during which time I was conducting several calls every day with the plaintiffs and DOJ, reviewing deposition designations in preparation for trial, reviewing issues relating to the DLS data base, and  preparing for and

15

participating in hearings relating to discovery before this Court, all as detailed in Dechert's time records?  A few of the dozens of emails reflecting some of this activity are attached to this declaration as Exhibit 3.

i.   How is it "excessive" for me to have spent under 201.7 hours of time during August 2014 - instead of a little more than half that time, after deducting the 90.2 hours that the State deems, arbitrarily, as "excessive" - not only on preparation for the upcoming September 2 trial, but preparing a key expert (Dr. Chatman) for his deposition, defending that deposition, and drafting pre-trial Findings of Fact and Conclusions of Law?  By way of examples of the sort of activities I was undertaking during that time, which inured to the benefit of all parties (including the State) and the Court are emails I sent to Brandy Cortez on August 29 (Exh. 4).  The first, sent at 2:11 pm, detailed the witness list, including the proposed order of witnesses.  The second, sent at 4:15 pm, reflects a conference with the parties concerning objections to exhibits and deposition designations, and provides a negotiated protocol for dealing with those issues. All of this was the result of substantial time spent in discussions with all of the parties, including the State, in order for plaintiffs to present their case effectively and reduce the burden on this Court.

j.   And how is it "excessive" for me to have spent 20 hours in September 2014 not only preparing for one of the major closing arguments, but also beginning to prepare the supplemental Post-Trial Findings of Fact and Conclusions of Law?

31. Yet, Defendants, without explanation – because there is none – would strike almost 500 hours of my time at Dechert as "excessive" for these very tasks.

32. The State implies that some of the challenges as to excessiveness is explained by its Exhibit F, which purports to compare the "Actual Time" of hearings with time recorded by the attorneys in this case.  First, I note that, while they give as an example for my time only a single entry of 2.4 hours on October 13, 2013, they proceed to attempt to strike over 45.0 hours of my time on this basis.  However, in not one of my time entries that the State

16

challenges in this manner, was my time limited to the hearing, but always for necessary preparation for the hearing, follow-up to events in the hearing, and other tasks such as the participating in depositions, reviewing expert reports, and, of course, the massive amount of coordination I was doing among all of the plaintiffs, including DOJ, and with the State itself. *See* Doc. 1174-7 (Dechert's hours log); Doc. 1196-40 (Defendants' Ex. H – Hearing Dates and Times).

  a.  They challenge 2.4 hours of my time on October 18, 2013, indicating that a hearing that day lasted only 21 minutes.  But the time I recorded that day was for "Prepare for and participate in conference with court; calls with DOJ in preparation for conference; emails re thereto; call with DOJ after call with court."

  b.  They challenge 3.0 hours of my time on November 15, 2013, indicating that a hearing that day lasted only 51 minutes. But the time I recorded that day was for "Multi-calls with DOJ, State, LDF regarding hearing; multi emails regarding thereto; miscellaneous emails."

  c.  They challenge 5.0 hours of my time on February 14, 2014, indicating that the hearing that day lasted only 21 minutes.  But my time recorded that day was for "Multi calls and emails re discovery and other issues; prepare for and participate in hearing with court; review draft survey questions; emails to and from experts re retention; calls with co-counsel re coordination; emails re thereto."

  d.  They challenge 2.0 hours of my time on April 16, 2014, indicating that the hearing that day lasted only 20 minutes.  But my time recorded that day was for "Participate in hearing with court; emails to and from co-counsel re thereto; conference call with M Bell-Platts and E Westfall and G Hebert re thereto; emails to and form M Posner re thereto."

  e.  They challenge 6.0 hours of my time on May 1, 2014, indicating that the hearing lasted only 45 minutes.  But my time recorded that day was for "Prepare and conduct conferences with co-counsel, plaintiffs, groups, and DOJ; prepare for and participate

in hearing with Judge Ramos on motion to quash."

f. They challenge 2.0 hours of my time on May 15, 2014, indicating that the hearing that day lasted only 43 minutes.  But my time recorded that day was for "Final preparation for and participation in status conference and argument before Judge Ramos; confer with DOJ after."

g. They challenge 7.0 hours of my time on May 28, 2014, indicating that the hearing that day lasted 1 hour, 7 minutes.  But my time recorded that day included "prepare for and participate in hearing before Judge Ramos; prepare for and participate in meet and confer with Texas; prepare for and participate in call with parties on data bases; prepare for and participate in hearing on databases with court."

h. They challenge 4.0 hours of my time on July 24, 2014, indicating that the hearing that day lasted 1 hour, 20 minutes.  But my time recorded for that day included "Prepare for and participate in hearing; prepare for and conduct calls with all plaintiffs and with DOJ."

i. They challenge 5.5 hours of my time on July 30, 2014, indicating that the hearing that day lasted 1 hour, 3 minutes.  But my time recorded that day was for "Participate in multi calls in preparation of hearing before Judge Ramos; participate in hearing before Judge Ramos; participate in deposition of DPS 30(b)(6) witness; multi-calls with M Posner; multi emails with M Perez; confer with A Baldwin."

j. They challenge 5 hours of my time on August 14, 2014, indicating that the hearing that day lasted 1 hour, 1 minute.  But my time recorded that day was for "Participate in hearing; participate in meeting with all counsel; attention to FOF [i.e., preparation of the pretrial Findings of Fact]."

k. They challenge 3 hours of my time on August 27, 2014, indicating that the hearing that day lasted 1 hour, 32 minutes.  But my time recorded that day was for "Prepare for and participate in pretrial conference; attend to pretrial matters following conference; review material in preparation for trial."

33. The same pattern continues as to the State's challenge to Lawyers' Committee time on the ground of "excessive." Nowhere do Defendants explain, for example, why the time I spent working on the brief to the Fifth Circuit during January and February 2015 was excessive, why they challenge the time spent in March 2015 helping the oral advocates prepare for oral argument as excessive, or why they challenge the approximately 40 hours of time on issues relating to the first attempted interim remedial orders from July through September 2015, when I was one of the primary negotiators of those orders, or the approximately 22 hours spent on issues relating to the negotiation of the ultimate interim remedial order or the time challenged as to my work on our successful opposition to Defendants' petition for certiorari and stay motion.[15]   Nor does the State even attempt to explain why any of the time that Mr. Posner spent, particularly on the drafting of the pretrial and post-trial Findings of Fact and Conclusions of Law (*See, e.g.*, August 16, 17, 19, 20, 21; Sept. 7, 8, 13 15, 17; Doc. 1196-12 at 17-18) and on drafting appellate briefs (*See, e.g.*, the time challenged in February and March 2015; *id.* at at 18 -19) was in anyway excessive.  Again, Mr. Posner is one of the most experienced Voting Rights Act attorneys in the country and was a prime drafter of all major portions of all significant briefs on behalf of our clients.

34. And, finally, nowhere does the State take into consideration the fact that both Dechert and the Lawyers' Committee already cut the majority of their time before submitting their fee applications.

### Alleged "Block" and "Vague" Billing

35. Throughout the duration of this litigation, Dechert attorneys and Lawyers' Committee attorneys maintained meticulous records of time spent on this matter. Doc. 1174-7 (Dechert's hours log); Doc. 1174-3 (Lawyers' Committee's hours log). Those logs reveal a high level

---

[15] In my review of my time in response to the claims by Defendants as to "Excessive" billing, I noticed a possible mistake in the 8.0 hours recorded on August 1, 2016. While I am certain that the tasks described there were undertaken, the date seems to be wrong, as I cannot locate emails and outlook schedulers substantiating all but one of those calls (1 hour) and communications described. My best guess is that the 8/1/16 time was a duplicate of the time on 8/2/16. We would therefore reduce the Lawyers' Committee request by 7.0 hours.

of specificity for all time sought. There is no merit to Defendants' proposed reductions here as they pertain to either Dechert or the Lawyers' Committee, especially when both Dechert and Lawyers' Committee already exercised their judgment in drastically reducing time in order to ameliorate the effects of any duplicate, excessive, or vaguely entered time.

36. The lack of substance of the Defendants' position is revealed in that they characterize numerous entries of mine while I was at Dechert as "Block" or "Vague," *see* Doc. 1196-14 at 6-13; Doc. 1196-15 at 6-7, but *none* of my entries at the Lawyers' Committee were included under either label, even though I entered my time the exact same way at both organizations. *Id.* Leaving aside that issue, my Dechert time entries are not vague or block-billed on their face. They provide with great detail what tasks I was performing.[16]

37. The one specific example that the State posits in its brief of my so-called "Block" billing is an entry for the single day of June 19, 2014 (See State Br. at 56), where I recorded 12 hours for "Prepare for deposition of Rep. Harless; prepare for and conduct calls with all private plaintiffs and with DOJ; review and comment on Chatman revised report." That is not "Block" billing. It describes with specificity the many tasks I performed that day.

38. The ludicrousness of the State's position is seen most dramatically in how they handled my trial time (during which I was at Dechert), characterizing it as "Block," and using it as grounds for a 20% across-the-board deduction to Dechert's award.

---

[16] Here are a few representative examples of what the State describes as my "Block" billing: 0.40 hours recorded on June 4, 2014 for "Multi calls with E. Westfall re deposition issues; emails to and from A. D'Andrea re deposition issues; conference call with Texas and DOJ re trial protocol issues; emails to plaintiff's group re miscellaneous discovery issues; conference with L. Minnite and M. Perez re expert testimony; review brief and draft opposition re deposition of P. Harless; attend to multiple discovery issues;" 4.30 hours recorded on June 6, 2014 for "Call with A Derfner in preparation for hearing; prepare for hearing; participate in hearing; emails to and from L Minnite; confer with M Yeary re fraud discovery; participate in call re affected persons; call with E Westfall re legislator depositions; emails to and from A D'Andrea re thereto;" and 4.20 hours recorded on July 15, 2014 for "Multi emails and calls re Texas motion for extension of time re experts; conference call with Texas re thereto; emails to court re thereto; multi emails re outstanding discovery issues; review Ansolabehere report; conference call with Chatman re sensitivity analysis." (Doc. 1196-14 at 8, 10).

a. For September 2, 2014, Dechert requested compensation for 12.5 hours of my time, even though we described it with precision as: "Participate in trial; conduct post-trial day meeting with all co-counsel; confer with State re evidentiary issues; continue preparation of Johnson and Chatman direct examinations; confer with A Rudd re Johnson direct." *See* Doc. 1174-7 at 58.

b. Not only is this not "Block billing," under any reasonable definition of the term, the Court knows from the transcript of the proceedings on September 2, that I was at trial that whole day, which began at 7:58 am and ended at 6:15 pm, which accounts for 10.25 hours of the 12.5 recorded. Indeed, the transcript indicates that I presented the Private Plaintiffs' position on trial evidence to the Court (Tr. 10:3 to 27:3); gave one of the primary opening arguments (Tr. 33:22 to 38:12); and informed the Court of the proposed forthcoming witness schedule (Tr. 263:9-22; 266:18 to 267:5; 299:8-12). Nevertheless, astoundingly, Defendants assert that all of my time on September 2 was impermissibly block-billed.

c. Dechert requested just 2.50 additional hours on that day for a litany of tasks, including conducting a post-trial meeting with all co-counsel to prepare for the next day's witnesses – in order to ensure the efficiency of the trial – and conferring with the State re evidentiary issues – which again ensured that the private plaintiffs would be speaking with one voice – and preparing two witnesses' direct examinations. That amount of time is not only reasonable, but downright conservative. In fact, Dechert had, in the exercise of its billing judgment cut my requested time for September 2 from 16.0 hours to the 12.5 requested.

d. Similarly, Dechert requested compensation for 12 hours of my time for September 3, 2014. *Id.* Trial that day ran from 7:59 am to 5:49 pm, or approximately 9.75 of the time requested. The detailed narrative describes the rest of the day spent conferring with the State re: evidentiary issues; conducting a post-trial meeting with all counsel; meeting with a key fact witness, Rev. Peter Johnson, in preparation for his testimony;

and meeting with a key expert witness, Dr. Matt Barreto, in preparation for his testimony – all of which is more than enough to fill up the additional 2.25 hours after trial. In fact, again, Dechert, in the exercise of its billing judgment, had already cut the requested time for September 3 from 14.0 hours to the 12.0 hours requested. Yet, again, Defendants assert that all of this time is block-billed.

e.   Dechert requested compensation for 12.5 hours of my time for September 4, 2014, *id.* at 59, a day I was in trial from 7:58 am to 6:10 pm, or about 10.2 hours) and put Dr. Johnson on the stand. (Tr. 6:6 to 22:1). I also informed the Court of progress on issues with Defendants, verifying that I was in constant contact with them after trial hours (Tr. 383:12 to 384:5). The remaining 2.3 hours after trial was spent again conducting a post-trial meeting of all plaintiffs; conferring with the State re: the next day's witnesses and evidence; and meeting with another fact witness, Rep. Anchia, in preparation for his testimony. Again, Defendants maintain that all of this time was block-billed.

f.   Dechert requested compensation for 10.5 hours of my time for September 5, 2014, when I was in trial from 7:58 am to 6:16 pm, or 10.25 hours of the 10.5 hour trial day. *See* Doc. 1174-7 at 59. As detailed in the time records, I again conducted a post-trial meeting of all plaintiffs, and conferred with the State re: the next witnesses and evidence, easily consuming the .25 hours after trial. Again, Defendants maintain that all of this time was block-billed.

g.   Dechert requested compensation for 12.0 hours of my time for September 8, 2014, a day I was in trial from 7:58 am to 5:57 pm, or 10.0 of those 12.0 hours. *Id.* That day, I put on the stand one of the key Plaintiffs' witnesses, Dr. Daniel Chatman (Tr. 77:6 to 118:16), and also discussed with the Court the remaining witness order. (Tr. 321: 7-10; 357:18 to 358:25). After the trial day ended, as described with precision in Dechert's time records, I conferred at length with the State's primary counsel, John Scott, and DOJ's Elizabeth Westfall, to discuss the possibility of an agreement under

22

which DOJ would not put its expert Dr. Chandler Davidson on live, and the State would not put its expert, Dr. Milyo, on live. I also had numerous discussions with members of the Veasey plaintiff team in preparation for our final witnesses, activities which easily consumed more than 2.0 hours of the time after trial. Nevertheless, again, Defendants maintain that all of this time was block-billed.

h. Dechert requested compensation for 12.0 hours of my time for September 9, 2014, a day I was in trial from 7:58 am until 6:25 pm, or 10.5 hours of the 12.0 hours requested. *See* Doc. 1174-7 at 60. During that day's proceedings, I advised the Court as to the progress of discussions with Defendants on a complex legal issue that affected the factual basis for testimony given by Plaintiffs' experts, explaining that the parties had met for 40 minutes on the issue, and would continue the discussions after the trial day ended. (Tr. 183:10-17). I also put on the record the terms of a judicial notice. (Tr. 195:8 to 196:3). As described in the detailed time narrative, the remaining 1.5 hours were spent conducting a post-trial meeting of all plaintiffs; preparing for the cross-examination of Defendants' only live expert witness; and meeting with various co-counsel about various evidentiary issues, as we prepared to close our case.  Again, Defendants maintain that all of this time was block-billed.

i. Dechert requested compensation for 9.0 hours of my time for September 10, 2014, a day I was in trial from 7:59 am until 5:50 pm, or 9.7 hours. *See* Doc. 1174-7 at 60. During that trial day, I reported to the Court on discussions with the State on witnesses and evidence (Tr. 7:4 to 11:20; 211:6 to 238:3). After trial, I conducted our last post-trial meeting, and conferred with both the State and DOJ, about tying up loose post-trial ends. Again, Defendants maintain that all of this time was block-billed.

39. Additionally, as that proposed reduction relates to the Lawyers' Committee specifically, Defendants direct the Court to Exhibits B-6 and B-7 for the specific entries they labeled as either vague or block-billed. *See* Doc. 1196 at 56; Doc. 1196-14; Doc. 1196-15. Not a *single*

Lawyers' Committee hour is listed in either exhibit. That failure to do so, by itself, voids Defendants' proposed 20% reduction.

## PRO HAC VICE

40. Defendants challenge 0.1 hours of the Lawyers' Committee's time as dedicated to a pro hac vice filing. Doc. 1196 at 61, 87. The Lawyers' Committee will deduct the disputed time from its application.

## LOST CLAIMS

41. Defendants challenge 3.0 hours of my time  at the Lawyers' Committee as being dedicated to lost claims. Doc. 1196 at 63, 87. However, the State fails to itemize any of those hours for the Lawyers' Committee in Exhibit B-7. *See* Doc. 1196-15. Thus, it is impossible to know what, precisely, the State is objecting to here. As a result, the Court should reject Defendants' proposed lost claims cuts in full.

## COSTS

42. At the end of their brief, Defendants submit that the Lawyers' Committee's costs, totaling $16,883.09, should be reduced by $7,883.09 for "insufficient documentation."[17] Doc. 1196 at 96.[18] Yet, Defendants, in their litany of critiques regarding various expenses in this case, do not once mention the Lawyers' Committee. *See id.* at 67-80. And nowhere is the substance of the proposed Lawyers' Committee reduction detailed in any of Defendants' attachments. As a result, the Lawyers' Committee is unable to respond to this proposal and Defendants' reduction here should be rejected in full.

## REVISED FEES AND COSTS REQUEST

43. In light of Defendants' limited number of valid proposed reductions to the Lawyers' Committee's Revised Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Doc. 1174-2, the Lawyers' Committee revises its request of

---

[17] The Lawyers' Committee detailed its expenses in Doc. 1174-4 and provided receipts in Doc. 1174-5.

[18] Defendants incorrectly state that the Lawyers' Committee's costs totaled $7,883.09. Doc. 1196 at 96. The correct total is $16,883.09. *See* Doc. 1174-2 at 8.

$583,962.19 to deduct an additional 21.66 hours (0.56 for a reduction in time expended regarding attorneys' fees; 1.0 hours for clerical work; 7.0 hours for duplicative/excessive time; and 0.1 hours relating to pro hac vice applications). That reduction results in a revised request of $570,684.61 plus litigation expenses totaling $16,833.09.

44. The State's illegitimate challenges to our fee application have caused all of the counsel for Texas NAACP/MALC to expend many hours in preparing a reply.  I asked Dechert to pull all of my emails relating to this case, and I reviewed them before preparing this response.  I did the same with my Lawyers' Committee's emails.  In addition, Brendan Downes, one of the Counsel at the Lawyers' Committee, spent more than 50 hours drafting a portion of the Joint Brief filed by the Private Plaintiffs, and reviewing data and helping prepare this Declaration.  I have myself spent upwards of 30 hours reviewing emails, reviewing my time records again, reviewing and editing the Private Plaintiffs' Joint Reply Brief, drafting Texas NAACP/MALC's Supplemental Reply Brief, and holding periodic calls with the Private Plaintiffs as part of my coordination responsibilities.  Nevertheless, in an exercise of our reasonable billing judgment, we have decided not to ask for additional fees to cover this work, although we would have been entitled to do so.

45. Neil Steiner will submit a separate declaration, further responding to Defendants' challenges to Dechert's submission, together with revised totals.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/Ezra Rosenberg_____
Ezra D. Rosenberg
Attorney for the TX NAACP and MALC