IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF TEXAS CORPUS
CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br><br>Defendants. | Civil Action No. 2:13-cv-193 (NGR)<br>(Consolidated Action) |

### REPLY DECLARATION OF MYRNA PÉREZ IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES

1. I am co-counsel for Plaintiffs Mexican American Legislative Caucus ("MALC") and Texas State Conference of the NAACP (collectively "Plaintiffs") in the above-styled matter. I submit this reply declaration in further support of Plaintiffs' Amended Motion for Attorney's Fees and Costs (dkt. 1174). Some of the issues presented in Defendant's opposition to Plaintiffs' fees motion, such as the appropriate billing rates, are common to all Plaintiffs and are addressed in Plaintiffs' reply brief. In this declaration, I address issues raised by Texas specific to the fees and costs claimed by the Brennan Center for Justice at NYU School of Law ("Brennan Center").

2. Defendant asks this Court to reject the increased fee request in the Plaintiffs' Amended Motion and instead to review the lower fee request in the Plaintiffs' initial motion because, Defendant asserts, the increase is the result of "additional time." Br. at 39. This assertion is incorrect, with respect to the Brennan Center. As I explained in my amended declaration, the Brennan Center reduced the number of hours for which it seeks

1

compensation in the Amended Motion; the roughly $11,000 increase in the fee award is the result of an arithmetic correction. In the initial motion, the Brennan Center accurately stated my hourly rates, but those rates were not correctly applied. The Amended Motion corrects that error. The amended fee request, therefore, more accurately reflects the fees I incurred in this matter. And, although Defendant decries this update as "unfair," *id.*, it articulates no actual prejudice.

3. In addition, throughout its brief, Defendant improperly cites my rate as $417 per hour. Consistent with the USAO Matrix, my rates increased as I obtained additional years of experience. Some of my time is billed at $417 per hour, some at $491 per hour, depending on the year in which it was incurred. Defendant's attempt to use only $417 per hour is improper and should be rejected.

4. As noted below, the Brennan Center concedes that 1.5 hours identified by Defendant, which totals $736.50 at the correct rate, should be excluded. The Brennan Center therefore respectfully requests that the Court award $245,953.40 in fees, reflecting 515 hours billed. In addition, the Brennan Center respectfully maintains its request for $51,405.95 in costs and expenses.

**Attorneys' Fees – Travel Time (Defendant's Exhibit B-1)**

5. Defendant does not claim any reduction in fees for travel time, as to the Brennan Center.

**Attorneys' Fees – Clerical Time (Defendant's Exhibit B-2)**

6. Defendant does not claim any reduction in fees for clerical time, as to the Brennan Center.

**Attorneys' Fees – Duplicative Time (Defendant's Exhibit B-3)**

7. Defendant claims that 141 hours should be deducted from my time as duplicative.

8. In its brief, the only specific duplicative time that Defendant points to for the Brennan Center is time that I spent on "the appellate brief and comments and edits from the Lawyers' Committee." Br. at 48. But reviewing and editing legal documents are core legal tasks that courts have found to be compensable. The time I billed for these tasks was reasonable.

9. More generally, Defendant's claimed reductions are based on the billing entry descriptions – not on any duplication identified by comparing lawyers' time entries. This approach is untenable in light of the massive reductions Plaintiffs have already made to our time. I am the only Brennan Center lawyer actually claiming time in this matter, and I have already reduced my hours by more than 40% in order to avoid duplication. (I excluded 349.8 hours out of 866.3 hours recorded in this matter.) Defendant's attempt to reduce my hours by another 27% is unjustified and unconnected to any argument about the reasonableness of the overall time claimed given the length and complexity of the matter. As I explained in my opening declaration, the time I am claiming in this case is wholly reasonable and necessary in light of the actual work performed in litigating the case. Defendant's claimed deduction should be rejected.

**Attorneys' Fees – Excessive Time (Defendant's Exhibit B-4)**

10. Defendant does not claim any reduction in fees for excessive time, as to the Brennan Center.[1]

**Attorneys' Fees – Non-Compensable Time (Defendant's Exhibit B-5)**

---

[1] On the "Duplicative" worksheet (B-3), Defendant marks some of the time entries as "E" – code for "excessive" – in addition to duplicative. Defendant does not explain why any of these time entries are excessive, nor does it specifically claim a deduction based on their being excessive. In this declaration, I address only the arguments and deductions Defendant actually makes, but for avoidance of doubt, I reject Defendant's characterization of these time entries as excessive.

3

11. In Exhibit B-5, Defendant totals 87.5 hours in what it claims is non-compensable time, but it only actually claims a deduction of 22.6 hours for three categories of non-compensable time in its brief: Attorney's Fees (.1), True the Vote (.3), Lost Claims (9.2), and Amicus Briefs (13). (Defendant's claims regarding so-called "Business Development" expenses are addressed separately below.) I address only the claimed deductions.

12. *Attorney's Fees*. Defendant seeks to deduct .1 hours for time spent on the Attorney's Fees motion, but it does not list any such time in Exhibit B-5, nor did I claim any such time in Plaintiffs' Motion for Attorney's Fees and Costs. While I listed a conference call regarding attorney's fees in the exhibit to the declaration I submitted with our motion, I did not claim any compensation for that call. (To the extent Defendant is referring to a 10/20/2014 time entry "Review and respond to emails re: fee applications," that time, which was incurred years before the filing of Plaintiffs' fees motion, has nothing to do with attorney's fees). Defendant's claimed deduction should be rejected.

13. *True the Vote*. Defendant seeks to deduct .3 hours for time spent on True the Vote's motion to intervene. But I did not I claim any such time. While I listed a time entry that states "Review and respond to emails re: letter to True the Vote (.3)" on 10/11/2013, I did not claim any compensation for that time. Defendant's claimed deduction should be rejected.

14. *Lost Claims*. Defendant seeks to deduct fees associated with what it characterizes as "failed claims," without any supporting argument or citation to legal authority. Specifically, with respect to the Brennan Center, Defendant asserts that 9.2 hours I spent on intentional discrimination and Fourteenth Amendment claims is not compensable. As

4

explained in Private Plaintiffs' reply brief, that is not the law. Defendant's claimed deduction should be rejected.

15. *Amicus Briefs.* Defendant seeks to deduct 13 hours for time spent on amicus briefs. This deduction fails as a legal matter, for the reasons explained in Private Plaintiffs' reply brief.

    a. Legal argument aside, Defendant's math does not add up. Defendant only includes six hours of time spent on amicus briefs in Exhibit B-5. Looking more broadly to Appendix A to my opening declaration, there *are* time entries totaling 13 hours connected to amicus briefs listed – but the Brennan Center only claimed compensation for 7.8 of those hours.

    b. In addition, Defendant appears to double-deduct at least .7 hours of my time as both duplicative and related to amicus briefs (entries on 4/21/2016, 4/25/2016, 4/26/2016, and 4/27/2016).

**Attorneys' Fees – Block-Billed Time (Defendant's Exhibit B-6) and Vague Time (Defendant's Exhibit B-7)**

16. Defendant does not identify *any* block-billed entries for the Brennan Center, and only 14.9 hours of what it claims are vague time entries. (Note, however, that Defendant *also* deducts nearly half of that time, 7.4. hours, as non-compensable "Business Development" time.) Despite the paucity of time entries it identifies as block-billed or vague – 14.9 hours out of 516.5 hours sought – Defendant seeks to apply a ***20% reduction*** to the Brennan Center's ***overall*** fee award for block-billed and vague time. The claimed deduction should therefore be rejected, with one exception described in paragraph 17.

17. Defendant's approach defies common sense and it is inconsistent with the cases it cites in support of the deduction and the law more generally. Here, because any block-billed and

vague entries can be identified and segregated, the Court should, at most, apply Defendant's proposed 20% reduction to the vague and block-billed entries only – not to the entire fee award.

18. As I have already noted, Defendant claims 14.9 hours of my time is vague (and none is block-billed) – but most of these entries are plainly adequate. For example, Defendant claims the following entry is vague: "Review and compile internal revisions re: complaint & co-counsel agreement (.3)." So too the following entry: "call with E. Rosenberg, M. Posner, and J. Garza re: complaint & co-counsel agreement (.5)." The Brennan Center concedes that two entries totaling 1.5 hours of time are insufficiently descriptive: (9/17/2014, "Confer with co-counsel for co-counsel (1)" and 5/1/2015, "Confer w/ co-counsel (.5)").

19. In addition, as I already noted, Defendant seeks to deduct 7.4 hours of the time flagged as "vague" as non-compensable "business development." To the extent the Court eliminates any of this time as business development, it should not further deduct 20% of this time as vague.

**Attorneys' Fees – Business Development Time (Defendant's Exhibit B-8)**

20. Defendant seeks to deduct 24.3 hours for time spent on what it characterizes as "Business Development." In its brief, Defendants lists two tasks that it claims fall into this category: "contacting potential people who lack ID and recruiting potential clients" because "they were not reasonable and necessary for the prosecution of the suit." Br. at 65. Terming these tasks "business development" grossly misconstrues both the nature of the work performed and the nature of this case. What's more, even if Defendant's theory were credited, its arithmetic is off – numerous plainly compensable tasks are included in this

6

claimed deduction. Defendant's claimed deduction should be rejected.

21. The Brennan Center is a 501(c)(3) nonprofit organization that takes on legal cases in the public interest. The U.S. Supreme Court has long recognized a fundamental distinction between recruitment of clients to advance the public interest and solicitation for monetary gain. The suggestion that my outreach to Texans whose right to vote was potentially denied by the state's voter ID law is akin to solicitation for commercial purposes is absurd.

22. Furthermore, even crediting Defendant's argument, only 5.7 hours of my time in Exhibit B-8 refers to plaintiff outreach. Among the erroneously included deductions are the following:

    a. Defendant erroneously includes 8.6 hours unrelated to the tasks it terms business development, simply because that time was incurred on the same day as the so-called business development tasks. For example, it seeks to deduct 1.5 hours of time incurred on 9/12/2013 for "Review and revise complaint (1.5)."

    b. Defendant seeks to deduct 2.7 hours related to the co-counsel agreement and speaking with potential co-counsel. Contrary to Defendant's argument, this time was "reasonable and necessary for the prosecution of the suit." It is compensable.

    c. Defendant seeks to deduct an additional 6.3 hours of time related to individuals "affected" or "impacted" by Texas's voter ID law (or "without SB14 ID"), as well as .5 hours of legal research related to representing a fact witness and .5 hours related to survey research. This time was incurred, at least in part, to develop evidence for trial by investigating the ID law's impacts, identifying potential fact witnesses, and researching my legal obligations to potential fact witnesses. This

time is compensable.

**Expenses**

23. Defendant claims that the Brennan Center's expenses should be reduced by $42,577.59. These reductions fall into two categories: (1) overstaffing and (2) research. All of the expenses incurred by the Brennan Center are compensable and Defendant's claimed deductions should be rejected.

24. *Overstaffing*. Defendant claims a reduction in $5,216.57 in flights and hotel costs for me, my colleague Jennifer Clark, and Plaintiffs' expert witness Lori Minnitte (as Defendant observes in its brief, her name was shortened to "Minni" in the description of the expense). These costs were incurred in connection with our participation in the bench trial in this matter. Ms. Minnitte testified at the trial, and I conducted the examination. Ms. Clark assisted me in the preparation of this critical witness. These expenses are reasonable and compensable.

25. *Research*. Defendant claims a reduction of $37,361.02 for research expenses that the Brennan Center incurred by hiring contractors to assess the impact of the voter ID law in support of Plaintiffs' lawsuit. The contractors with the task description "Affected persons research" sought to identify and speak with persons adversely affected by Texas's voter ID law, largely working on the ground in the state. The contractors with the task description "Provisional ballot research" sought to obtain provisional ballots cast in Texas (in order to assess how many voters had been forced to cast provisional ballots as a result of the voter ID law), largely by sending and processing public records requests. The names of the individual contractors are irrelevant, and I omitted their names on my costs sheet in an effort to protect their privacy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Myrna Pérez
Attorney for the TX NAACP and MALC