IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>    *Defendants*. | Civil Action No. 2:13-cv-193 (NGR)<br>(Consolidated Action) |

**SUPPLEMENTARY DECLARATION OF GARY L. BLEDSOE
IN SUPPORT OF REQUEST FOR ATTORNEY'S FEES**

I, Gary Bledsoe, hereby declare as follows:

I have reviewed the State's objections to the fees I have billed for in this case. I believe the fees are appropriate and would ask that the Court grant the request as made.

1. As per my resume, I was involved in the D.C. case challenging the same voter identification law as well as the recent cases involved in redistricting. I was also involved in the round of redistricting in 2000, including the litigation that commenced in 2003. I had previously been involved in handling redistricting matters in Galveston County and worked on some redistricting and other voting matters when I was previously employed by the Texas Attorney General. I was Acting Dean of the Thurgood Marshall School of Law for approximately two years and then taught a seminar involving Justice Thurgood Marshall where I discussed voting rights and have taught the seminar since leaving the Dean's position. I am the Vice-Chair of the National NAACP Legal Committee.

1

2. The State contends that the following cuts should be made to my attorney's fee request: $1,600.00 for Travel; $9,240.00 for being Duplicative; and a 20% reduction for Vague and Block-Billing of $6,048.00. The State would cut my request to an amount of $13,352.00, or if the Court finds the hourly rates requested are appropriate, then to award no more than $20,461.94. The State objections to my fees can be found on pages 85-86 on Defendant's Response to Plaintiff's Motion for Attorney's Fees. Dkt. 1196. After changing or modifying the hourly rate the State reduced the amount to be recovered under my fee petition to $30,240.00. After reducing the amount by this approximately 33 percent, they further reduced the fee request on the basis of duplicative, block and vague billing arguments.

3. In reference to the issue of duplicative and other types of billing the State objects to, I did not submit all of the hours worked nor any hours for any Associate who worked on the case. Here are some examples of the actual work at issue. I would submit that the work is important. In addition, I want to illustrate to the court how some of the issues raised are not appropriate:

   i. When I travelled to Hearne to interview E. Davis, I travelled with our Staff and further prepared for the deposition while travelling. The travel time was for no more than 3 of the 8 hours but the overall time involved was also greater than the 8 hours that were billed. During the course of the interview we called upon others to come and provide important details that were important to our interview. The witness was one of those identified as not having the appropriate identification and she lived in a county that did not have a DPS office where she could obtain an identification card and one that did not have public transportation. In order to

understand her situation better we called upon other citizens to fill in the blanks or confirm what the witness was saying.

ii. I was very active in discussions around how to handle the efforts to enjoin the use of the voter identification law in the 2016 election and discussions about the possible interim remedy and later legislative changes. I am a Texas lawyer who formerly worked in the office of the Attorney General who was familiar with Texas legal culture and Texas criminal and election law. I believed that the possible use of affidavits presented potential problems and I also wanted to educate everyone that the law on voting illegally in Texas, depending on the circumstances, included a number of felony laws in addition to those misdemeanor laws that were commonly understood. Having direct contact with many citizens who worked to help others to vote I talked with many of them and got valuable input about the issues they would face if voters who did not have a specific identification were required to sign affidavits. This information I believe was informative to the group. I did not bill for all of the hours prepared in researching Texas law to pinpoint the felonies or the calls or meetings with citizens from San Antonio, Huntsville and Houston particularly, but this included 6 additional hours. One of the duplicative entries involves handling emails and drafting regarding these matters in March of 2017 involving this same issue, when there were issues before the Legislature and the courts. Dkt. 1196-15.

iii. Once the court decided to grant interim relief in terms of how the law would be used in the 2016 election, I reviewed the list of organizations to be notified of the changes that was provided attorneys eyes only by the State. Dkt. 1196-15, p. 001.

      As a Texas lawyer I would have familiarity with many of them. The court had ordered that various types of notification be disseminated to the public about its ruling that modified how the voter identification law would be implemented in the November 2016 election. The list was truly extensive but I examined the list particularly to see about geographical and racial fairness to try and make sure that the Texas community including minorities would be provided this important information. After scrutinizing the complete list for over 3 hours I came up with a list of areas where I saw deficiencies. I then suggested additional entities to be notified so that the notification efforts would reach more people and therefore be more effective. I also scrutinized the wording that was to be sent out. I only billed 0.3 hours for this important work but it took me more than 5 hours, in part because of the extensiveness of the list.

   iv. The State contends that numerous conference call entries are vague, but these are conference calls with co-counsel about the case involving the issues of the case. There is no need to detail information any further. See Dkt. 1196-15.

4. The State also contended that a number of entries from the declaration attachment submitted were vague. This was discussed on page 85 of Dkt. 1196. I disagree with the State's contention and believe all of the entries submitted were clear:

   i. The State says the billing for reviewing the Attorneys Eyes Only Document is vague. See Dkt. 1196-15, p. 001. I think it should be clear what is being referred to by looking at the context of the email. Further, it is their AEO list that is being referred to. We can recall that voter instructions had become an issue as we were leading up to the 2016 election.

4

ii. Since voter instruction was such a matter of concern, I examined what had occurred in South Carolina to get some idea as to what to be prepared for her as this could be of benefit in ensuring that the proper instructions were to be given. The State contends that the description of this work on 8/16/2016 was vague. In regards to the assessment of reviewing the email on 8/16/2016 where they say the description was vague. Understanding how courts had handled similar matters in similar cases was important to assist in providing the best input on what we should be seeking in Texas in our litigation.

iii. I also drafted affidavits about the consequences of the Voter ID law, the compromise affidavit alternative and the impact of the comments being made by public officials as these were very important to the outcome of the case and particularly to provide the trial court with information needed in making its decision on what kind of order, if any, should be issued. The emails and comments of course in 2017 that are allegedly vague involve issues pending at the Legislature that had direct bearing on the case. Dkt. 1196-15, p. 002. At issue of course was whether the State would remedy the discriminatory law then at issue in the court and secondarily whether any remedy alleged to codify the court's interim order actually did the same. As we know this became a matter of dispute in this litigation. There were salient differences of great importance between what the court ordered and what was being proposed to the Legislature. In addition, there was a new crime being created with a stiff penalty.

    iv. In reference to another entry, they also contended that on 4/29/14 that the description of the activity was duplicative. Dkt. 1196-11, p. 001. It is clear that we were responding to discovery tendered by the State as they were the Defendants in the case, and that it was in reference to the NAACP's responses. This was for 1.3 hours and it did not include all of the time I spent on reviewing and helping to prepare the discovery. I am not sure how they contend this is duplicative

5. The State also contends that various items are duplicative and I disagree as to each of them (see Dkt. 1196-11, p.001):

    i. One area concerned several entries regarding the actual trial and entries for work performed from 9/02 to 9/04 of 2014. To the extent any would involve work on the same day they would be duplicative. However, they describe the type of work done at trial and I must concede that the witness preparation was only for the 3rd.

    ii. The State reduces my fee request to $30,240.00 based on what they deem to be the proper hourly rate. This is a reduction of about 1/3. They then take the amount of their proposed reductions for being duplicative and reduce my fee request by another 23.1 hours and then they deduct another 20 percent for vagueness and block billing. Each of the 23.1 hours is warranted and the 20 percent deduction is not well founded and is in fact arbitrary in my opinion. The list for vagueness and block billing included many of the items on the duplicative list. There were hours that associated worked on the case that are not included in this request. I would urge the court to consider the methodology used by the State, especially the 20 percent for vagueness and block billing as being arbitrary.

      iii. I am requesting $46,827.27 to be compensated to me for the work that I performed. This would be for 74.35 hours of work at $613 per hour which equals $45,576.55 and for expenses I would request $1,250.72 for a total of 46,827.27.

These are just some examples of work performed that was not billed for. I do believe that my fee request is reasonable.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this Declaration was prepared in Houston, Harris County, Texas on February 6, 2020.

                                        /s/Gary L. Bledsoe
                                        Gary L. Bledsoe