IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *ET AL.*,

PLAINTIFFS,

V.

GREG ABBOTT, *ET AL.*,

DEFENDANTS.

CIVIL ACTION NO. 2:13-CV-193 (NGR)
(CONSOLIDATED ACTION)

<u>SECOND SUPPLEMENTAL DECLARATION OF J. GERALD HEBERT</u>

Pursuant to 28 U.S.C. §1746, I, J. Gerald Hebert, declare that:

1.     I previously submitted a Declaration and Supplemental Declaration with accompanying time records and expenses in support of the Veasey-LULAC motion for an award of attorneys' fees and expenses.

2.     I hereby reaffirm the statements made in those Declarations. In response to Defendants' opposition to the Veasey-LULAC Plaintiffs' motion for an award of attorneys' fees and expenses, I have reviewed the previously submitted time records and expenses. As a result of that review, and despite State Defendants' numerous objections to those entries and expenses, I discovered that only one relatively minor listed expense listed in the time sheets and expenses that I submitted should be removed. I have identified that expense below and it is not included in the final request below. In addition, I have reviewed the time sheets of legal counsel at the Campaign Legal Center (CLC) who worked on this case (*i.e.*, Hebert, Simson, Bone, Lang, and Gaber) and am submitting this Declaration in response to the Defendant's arguments regarding CLC's time entries. My co-counsel (Messrs. Dunn, Brazil, Derfner and Baron) have also conducted a review of their

respective time sheets and expenses in light of the Defendants' opposition to the motion for attorneys' fees. Their detailed replies to Defendants' filing are incorporated into this Declaration so that the Court will have one response to review that summarizes the final attorneys' fees and expenses for all of the Veasey-LULAC legal team. We have done this for the Court's convenience and ease of reference. Their accompanying declarations adopt the responses incorporated herein.

3.      At the outset, I note that the State Defendants, contrary to representations in their opposition, have not engaged in any meaningful "meet and confer" regarding Plaintiffs' motion for attorneys' fees and expenses. *See* Doc. 1196 at 1 and 39. For example, Defendants refused to discuss or negotiate any amount that could settle the issue of attorneys' fees and expenses short of court intervention. It is especially difficult to understand Defendants' refusal to negotiate the amount of any fee award because Defendants' opposition appears to concede that this Court may very well award fees and specifies suggested amounts of fees and expenses in that event. Despite their detailed review and suggested reductions, Defendants refused to negotiate or propose any reduced amount. Texas's unwillingness to negotiate fees and expenses in good faith is contrary to numerous courts' admonitions that attorneys' fees motions should not evolve into additional protracted litigation, as it has here.

4.      Instead, Defendants asked Plaintiffs to review their already reduced time records and eliminate or reduce certain time entries, which Plaintiffs agreed to do and have done. Yet, Defendants' opposition states: "Although Plaintiffs agreed to look at their billing and reduce time for the issues brought up by Defendants, they did not do so." Doc. 1196 at 30. This is false. All members of the Veasey-LULAC legal team reviewed their time sheets at the request of Defendants and deleted numerous time records at their request (such as time spent reviewing *pro hac* vice motions, or time spent on *amici* issues). Nevertheless, Texas now engages in further cherry-picking

of Private Plaintiffs' time records in an effort to substantially reduce any fee award. In doing so, as I explain below, Defendants have made specious arguments about various categories of time records (*e.g.,* excessive, vague, business development, duplicative) and, as shown below, have made a significant number of arithmetic errors (all to their benefit) in their calculations.

5.      In part I below, I detail the responses by CLC attorneys (Hebert, Simson, Bone and Lang) to Texas's opposition to CLC's fees and expenses. In part II below, I detail the responses prepared by my co-counsel Chad Dunn and Scott Brazil to Texas's opposition to Brazil and Dunn's fees and expenses. In part III, I detail the responses prepared by co-counsel Neil Baron to Texas's opposition to Baron's fees and expenses. In part IV below, I detail the responses prepared by co-counsel Armand Derfner to Texas's opposition to Derfner's fees and expenses.[1] Finally, in part V, in light of some minor revisions made by all of the attorneys for the Veasey-LULAC legal team, I summarize the final numbers of expenses and fees sought by the LULAC-Veasey Plaintiffs. The amounts forth in part V are the final submissions this Court should use to review the Veasey-LULAC Plaintiffs' motion for an award of attorneys' fees and expenses.

## I.      ATTORNEYS' FEES AND EXPENSES OF THE CAMPAIGN LEGAL CENTER (HEBERT, SIMSON, BONE, LANG AND GABER)

### TEXAS'S ARITHMETIC ERRORS AND DOUBLE COUNTING

6.      Serious errors infect Texas's table summarizing its proposed reductions to CLC's attorneys' fees. *See* Doc. 1196 at 90–91. Even if this Court were to accept every one of Texas's contentions—it should not—the table's figures are inaccurate due to double counting of deductions

---

[1] My co-counsel have each submitted sworn Declarations stating that the responses they prepared to Texas's opposition to their respective claims for fees and expenses have been accurately incorporated into this Declaration.

and other errors. Fixing those errors yields a markedly different figure, even on Texas's unsupported theories of appropriate attorneys' fees for CLC.

7.     Texas makes three noteworthy errors. First, Texas challenges many time entries on more than one basis (e.g., duplicative, excessive, vague). Its summary table, however, does not correct for double counting. Instead, Texas artificially drives down CLC's attorneys' fees by deducting the same time entries multiple times.[2] Texas's exhibits identify the time entries challenged on multiple grounds, with the exception of its overstaffing argument.[3] But Texas should have counted each disputed time entry only once in its summary table. The table below fixes the double-counting problem.[4]

8.     Second, Texas fails to account for the changes that CLC made in its supplemental filing. For example, in the supplemental filing, CLC chose not to bill for its attorneys' work on True the Vote's intervention (and efforts to participate as *amicus*) and hours spent on *pro hac vice* motions and withdrawals. Doc. 1175-4 at 1. Those figures nevertheless remain in Texas's summary table of deductions. Doc.  1196-28 at 8 (Defs.' Ex. D-5).

---

[2] For example, Texas contests a 1.1-hour entry for J. Gerald Hebert on December 6, 2013 as both duplicative and excessive. The entry appears in both Texas's Exhibit D-3 on duplicative entries and its Exhibit D-4 on excessive entries. Doc. 1196-26 at 7; Doc. 1196-27 at 6. That 1.1-hour entry is combined with others to comprise Texas's overall challenge to Hebert's hours on each ground– –93.3 hours disputed as duplicative, 61.1 hours disputed as excessive. Doc. 1196-26 at 9; Doc. 1196-27 at 6. Texas then adds those figures for Hebert to other CLC attorneys' disputed hours in the sections of Texas's brief explaining its duplication and excessiveness arguments. Doc. 1196 at 49, 52. The same combined double-counted figures then appear in Texas summary table without any adjustment. Doc. 1196 at 90–91.

[3] Texas supports its overstaffing argument with Exhibit F. Three of CLC's entries in Exhibit F are also disputed on other grounds: Hebert's 0.2 hours on 10/18/2013 (duplicative), Hebert's 4.1 hours on 9/11/2014 (excessive), and Simson's 1.0 hour on 6/6/14 (duplicative).

[4] All entries disputed by Texas are challenged as excessive, duplicative, or both, among other arguments. For entries challenged as excessive and on another ground, the entry is counted only as excessive. For all others, the entry is counted only as duplicative.

9.      Third, Texas exacerbates this error by erroneously providing the same 17.4-hour figure for CLC's work on True the Vote's unsuccessful intervention and on *amicus* briefs. The correct figures should actually be zero and 0.5, respectively. Correcting Texas's errors yields the following differences in CLC's hourly reductions as Texas urges:

| Category | Texas's Proposal | Corrected |
|---|---|---|
| Overstaffing | 78.5 | 73.2 |
| Duplicative | 117 | 49.3 |
| Pro Hac Vice | 1.8 | 0 |
| True the Vote | 17.4 | 0 |
| Amicus Briefs | 17.4 | 0.5 |
| **Total Reduction** | **581.2** | **472.1** |
| **Total Hours after Reduction[5]** | **1424.54** | **1533.64** |

Fixing Texas's errors yields the following attorney-specific hour totals and overall award, which differ substantially from the figures in Texas's summary table:

| Attorney | CLC's Hours | Texas's Proposed Hours, Fixed | CLC's Rates | Texas's Proposed Award, Fixed |
|---|---|---|---|---|
| Hebert | 473.4 | 348 | $613 | $213,324.00 |
| Lang | 184.54 | 137.14 | $351 | $48,136.14 |
| Bone | 325 | 222.7 | $307 | $68,368.90 |
| Simson | 1022.8 | 825.8 | $307 | $253,520.60 |
| **Total** | **2005.74** | **1533.64** | | **$583,349.64** |

Thus, even if the Court were to accept *all* of Texas's arguments as to CLC's time entries—it should not—CLC would be entitled to $583,349.64 in attorneys' fees (before any proposed across-the-board reduction).

---

[5] CLC sought a total of 2005.74 hours. Doc. 1175-4.

5

## EXCESSIVE, OVERSTAFFING, AND DUPLICATIVE BILLING CLAIMS

6.     Defendants claim that certain time entries of CLC attorneys reflect excessive billing, duplication, or overstaffing. *See* Doc. 1196 at 51-53.[6] As an initial matter, it is important to note that Texas did not take into account the substantial number of hours CLC chose not to include, although they were reasonably expended on this litigation. CLC excluded over 350 hours of compensable attorney time by myself, Simson, Lang, and Bone in the exercise of billing judgment. Moreover, CLC excluded hundreds of additional hours from Paul Smith, Mark Gaber,[7] legal fellows, paralegals, and other staff, for whom CLC sought no compensation. *See* Doc. 1143-4. Any claims of excessive, duplicative, or overstaffed billing must be viewed in light of the substantial billing judgment already exercise by CLC.

7.     Likewise, they should be viewed in light of the complexity of the case, demonstrated not only by the volume of filings, difficulty of the issues, and levels of appellate review but also by the *many* defense attorneys (at least 19) that appeared in this matter on behalf of State Defendants.

8.     Over 305 hours of CLC attorney time is listed as "excessive." Doc. 1196-27. But a close examination of the time entries for the four CLC attorneys involved do not reflect excessive billing. For example, Defendants claim that attorney Simson spent an excessive amount of time preparing for the deposition of Deputy SOS Keith Ingram. Doc. 1196 at 51. Their basis for this argument is that Ms. Simson did not attend the deposition. *Id.* Simson, as the junior attorney on the team, was assigned to research Ingram's prior testimony in the DC case (and any other case or legislative hearing) and prepare an outline for the deposition. Simply because she did not attend the deposition does not signify that she did not prepare her co-counsel for it. Indeed, her co-counsel (Brazil and

---

[6] As noted above, many of these entries overlap and are reduced in Defendants' filing more than once.

[7] CLC now seeks the time Mr. Gaber spent preparing the reply brief filed today.

Baron) took the Ingram deposition using Ms. Simson's outline. Having counsel based in Texas attend the deposition while Ms. Simpson did the preparatory work for the deposition was to Texas's benefit because an attorney with a lower billing rate performed the preparation while a Texas attorney attended the deposition, thereby saving travel costs.

9.      Defendants also claim that Mr. Bone's time drafting and revising an appellate brief (over 100 hours) is excessive because other attorneys also spent time on this brief. Texas identifies 102.3 of Bone's hours as excessive, of which 74.8 hours were spent in February and March 2015 drafting the Veasey-LULAC Plaintiffs' merits brief to the Fifth Circuit. Doc. 1196-27 at 8. Bone and Armand Derfner are the only attorneys on the Veasey-LULAC legal team to claim substantial drafting hours, and Texas disputes nearly all of Mr. Bone's drafting time. Mr. Bone was a first-year attorney given primary responsibility for much of the brief drafting at CLC. This ensured that an attorney with a lower billing rate conducted the bulk of research and writing necessary for the Fifth Circuit brief. Defendants do not explain why 2.5 weeks of work drafting an appellate brief is *per se* excessive. In any event, Defendants do not explain or justify their choice to eliminate over 75 of those approximately 100 hours.

10.      Texas also complains that attorney Lang spent 65.7 hours on drafting the appellate *en banc* brief, which was edited and revised by several other attorneys. First, 65.7 hours for primary drafting responsibility for the successful *en banc* appellate brief is simply not excessive. To the contrary, it shows an efficient use of time by the most junior attorney on the Veasey-LULAC team (who would ultimately bill at the lowest rate of the legal team). Moreover, the amount of time spent by other counsel was relatively modest. For example, Hebert's time records show he spent only 2 hours reviewing and editing the *en banc* brief (5/6/16 and 5/8/16), and did not charge for 1.5 hours making final edits to the *en banc* brief on 5/9/16. Defendants reduce Ms. Lang's hours

as the primary draft of the *en banc* brief from 65.7 to 20.9 hours, a figure that is absurd on its face. Ms. Lang's hours drafting the *en banc* brief reflects efficiency in producing a winning brief, sound billing judgment, and should not be reduced any further.

11.     Defendants' claims of excessiveness with respect to my time are similarly unsupported. Indeed, Defendants' brief provides no explanation for the over 60 hours of my time—including calls with clients, preparation of filings, discovery matters, and expert witness matters—they claim are excessive.

12.     Defendants also claim that 117 of CLC's billed hours are "duplicative." First, nothing in the Defendants' brief explains why any of CLC's "duplicative" hours are not compensable. While some examples are provided for other parties, none of the examples relate to CLC. Second, the basis for marking these entries as duplicative appears to be nothing more than that it identifies an activity that another attorney also engaged in. But that is not enough. Lawyers work in teams on a regular basis. Defendants do not show that these billing entries as a whole show a number of hours spent on a particular activity that is beyond what would be reasonably necessary and efficient. Absent further explanation, it is far from clear why my editing of the draft complaint, or work on the motion to dismiss, or edits to the motion for an expedited appeal are duplicative. *See* Doc. 1196-26. Indeed, my initial declaration laid out in great detail how we organized our team to avoid duplication. Doc. 1143-4 at 5-8. Texas does not address that explanation whatsoever in its haphazard designation of entries as duplicative.

13.     Finally, Defendants claim that 78.5 hours of CLC's time are not compensable because of "overstaffing." This claim is fundamentally flawed. First, the number in Texas's brief does not match the numbers in their supporting exhibit, and Texas never explains the mismatch. The 78.5-hour figure is the sum of 31.8 allegedly overstaffed hours by Hebert and 46.7 such hours by

Simson. Doc. 1196 at 47. In support, Texas cites its Exhibit F, which has a column of time entries for each attorney. Doc. 1196-40. But these columns add up to more than 31.8 and 46.7, and Texas never explains how it gets from the exhibit's numbers to the brief's numbers. This complete lack of explanation suffices to defeat this claim.

14.    Second, it appears that Defendants seek to reduce any time spent by attorneys in attendance at hearings in which they do not speak. Doc. 1196 at 46. As this Court is well aware, hearings are best run with a limited number of representative speakers. But that does not mean that the attendance of others is redundant. Those lawyers provide support at the hearings to the speakers and also must be present to hear the proceedings so that they can actively participate at later stages. I led our trial team. While I did not speak at every hearing, my presence was not inappropriate, it was *necessary* for me to effectively manage the litigation.

15.    As a result of this flawed logic, it appears Texas believes that I and my colleague Ms. Simson should not have bothered to attend trial at all. The bulk of the hours listed in Exhibit F for myself and Ms. Simson are from the trial, September 2 to 11, 2014. As this Court is aware, I played a central role in the trial. My colleague Ms. Simson did as well—conducting much of the behind the scenes work and presenting a witness. Nothing in Texas's brief remotely justifies the contention that core members of Plaintiffs' legal team need not have attended the trial. Given Texas's unusable numbers and flimsy claims, this Court should reject Texas's overstaffing argument against CLC altogether.

16.    This Court should rely upon the sound billing judgment of CLC and not further diminish CLC's hours on the basis of unsupported excessive, duplication, and overstaffing claims.

## VAGUE AND BLOCK BILLING CLAIMS

17.     Texas proposes a drastic 20 percent across-the-board reduction in CLC's attorneys' fees due to alleged vagueness and block-billing in its time entries, Doc. 1196 at 91, but fails to justify it. First, Texas has not identified a *single* CLC time entry that has been block-billed. *See* Doc. 1196-29. This alone makes a proposed 20 percent reduction of *all hours* unreasonable. Ordinarily, courts apply any generic reduction to the alleged block-billed hours, not all hours.

18.     Second, Texas only identifies hours logged by Ms. Simson as vague. The purportedly vague entries—many of which are doubly deducted as duplicative or excessive—add up to less than 150 hours, about 7% of CLC's hourly total and all from an attorney with the lowest billing rate. Moreover, there seems to be little rhyme or reason to the entries that Texas chose to describe as vague. Entries marked as vague include calls with expert witnesses, calls with co-counsel, discovery-related meetings, preparation of open records requests, phone calls with lay witnesses, and trial preparation. It is a far leap from 150 allegedly vague hours by one entry-level attorney to a 20 percent reduction across-the-board of over 2,000 billed hours. That is particularly true where the attorneys in question have already reduced their fee request by hundreds of hours.

## BUSINESS DEVELOPMENT, AMICUS BRIEFS, AND CLERICAL CLAIMS

19.     Defendants argue that certain time entries of CLC attorneys are for "business development" and therefore should not be compensated. *See* Exhibit D-8. In particular, Defendants list three time entries totaling 1 hour of CLC attorney Simson's time as "business development." Those three time entries involved two telephone calls with co-counsel to discuss adding additional plaintiffs to the lawsuit and telephone calls to these prospective plaintiffs. These calls occurred several months *after* the filing this lawsuit. The Simson time records at issue, from December 2013, preceded by just a week the filing of Veasey-LULAC's amended complaint listing these new named voters as

10

plaintiffs. These phone calls, which allowed Simson to gather the necessary information from plaintiffs and discuss the case with them, are not "business development." They are well within the scope of compensable fees.

20.     Texas's brief also claims that no "work done in connection with supporting amicus briefs" should be compensated.  Texas Brief at pp. 64-65. For the reasons explained in the Plaintiffs' brief, this is inaccurate under the law. However, this is irrelevant for CLC's purposes because our supplemental time sheets clearly show that CLC chose *not* to bill for the time related to amicus matters (which related to a True the Vote attempted intervention or *amicus* participation). *See* Doc. 1175-4 (time records for 9/26/13; 10/25/13; 11/11/13; 12/18/13; and 5/13-16/14). Perhaps Texas mistakenly reviewed Hebert's *original* time sheets and not the amended ones filed on July 15, 2019. These were most certainly time entries for which I could have sought compensation but did not do so. This is just another example of the reasonable and prudent billing judgment by CLC attorneys. My review of my amended time sheets attached to my Supplemental Declaration reveal no time claimed on TTV's intervention and *amicus* efforts.

21.     Finally, Texas argues that 23.5 hours should be excluded for "clerical" tasks performed by attorneys. Once again, many of these entries are plainly compensable. An attorney's drafting and editing of deposition notices, review of document production, request for records, review of the opposing party's proposed finding of facts and conclusions of law, and drafting of stipulations are all plainly tasks for an attorney that fall within the scope of compensable time. Doc. 1196-25.

## **TEXAS'S ARGUMENTS REGARDING "FAILED CLAIMS"**

22.     Texas argues for a three-fourths reduction because the Veasey-LULAC Plaintiffs ostensibly succeeded on only one of four claims. As Plaintiffs explain in their merits brief, this argument is meritless. For the same reasons, this Court should also reject Texas's specific proposal

of a 17.4-hour reduction for CLC time spent on "failed claims." These 17.4 hours were all Ms. Simson's time entries that expressly mention the poll tax claim. *See* Doc. 1196-28 (Ex. D-5) at 11.

23.     All of the Veasey-LULAC's legal claims and legal theories involved a common set of facts and were related. As Texas acknowledges, the poll tax and Section 2 of the VRA claims were interrelated: "Plaintiffs' discriminatory results claim centered on the allegedly cost prohibitive factor of obtaining an SB 14-compliant ID. The evidence needed to develop this claim involved the determination of the costs of the underlying documents." Doc. 1196 at 13. The cost of obtaining documents needed to obtain a photo ID was likewise a central part of the poll tax claim.

## DEFENDANTS' CLAIMS REGARDING LITIGATION EXPENSES

24.     With regard to claimed expenses, Texas acknowledges that expenses that can be identified as reasonable should be allowed. Doc. 1196 at 68-77. With regard to expenses claimed by CLC, Texas lists several objections based on travel, overstaffing, and an inability to identify why hotel receipts related to this case. *Id.* at 77. With one exception, these complaints are all without merit.

25.     First, Texas objects to charges for two hotel rooms for attorneys Simson and Hebert in Houston because there was no indication how they relate to this case. *Id*. I have reviewed these two claimed hotel expenses and have determined that they were erroneously included in our original expense filing. Accordingly, Veasey-LULAC plaintiffs are deleting these two charges in our final accounting, indicated below.

26.     Texas also objects to travel expenses of attorneys Hebert and Bone to attend the Fifth Circuit oral argument in April 2015 but fails to state why these expenses should be disallowed. Nor does Texas claim the travel expenses were excessively high (both Hebert and Bone traveled via coach air tickets). Since Bone and Hebert's time entries show that they both worked on the

brief and their co-counsel (Mr. Dunn) was arguing counsel, it was entirely reasonable for Hebert and Bone to attend the argument and assist with Mr. Dunn's oral argument preparation.

27.     Texas objects that several hotel room receipts provided in the names of Shea Dunn and Victoria Hebert should not be reimbursed because there is no indication as to how they relate to the case or why they are submitting reimbursement for these rooms. *Id.*  These hotel bills, as noted in the submitted receipts, were for hotel rooms in September 2019 when the trial took place in Corpus Christi. Shea Dunn and Victoria Hebert are the spouses of Veasey-LULAC counsel who were asked to handle logistics and hotel reservations for the Veasey-LULAC plaintiffs. Thus, the hotel receipts were in their names. These rooms were used so that counsel and Veasey-LULAC witnesses (expert and fact) would have accommodations at trial. These rooms were indeed allused for Veasey-LULAC attorneys and witnesses. Thus, these expenses were reasonable and are capable of meaningful assessment by this Court.

28.     At the same time that Texas objects to these specific travel expenses, Texas's summary table asserts that $22,545.08 of CLC's expenses had "insufficient documentation." Doc. 1196 at 94–95. This figure, however, appears nowhere else in Texas's brief. It appears to represent CLC's overall travel expenses figure, which CLC adequately supported with receipts. Doc. 1175-4 at 69, 71–148. Thus, it appears that Texas disputes both a portion of those expenses and their entirety, and then appears to add both sums together. As noted above, this is the same impermissible double-counting that Texas has applied to CLC's attorneys' fees.

29.     Defendants object to $6,987.09 in copying costs claimed by CLC. Doc. 1196 at 78. While Defendants object to these costs in their brief, this figure does not appear in the summary table. Doc. 1196 at 94. In any event, these expenses were for daily copy of trial transcripts. *Id*. The invoices for these trial transcripts were attached as Exhibit 3 to the Veasey-LULAC's July 15,

2019, supplemental motion for attorneys' fees and expenses. Trial transcripts were especially important here, where they were needed for proposed findings of fact and preparing responses to stay applications in the Court of Appeals and U.S. Supreme Court. Texas does not make the argument that trial transcripts were unnecessary or not related to the litigation. Since Texas acknowledges that expenses may be compensated where there is "evidence … regarding the nature of the copies and detail about why they were reasonable and necessary to the litigation," CLC's documented invoices for trial transcript expenses should be awarded.[8]

30.     Finally, Texas's summary table also includes $9,871.23 in purportedly "vague expenses," but this figure does not appear anywhere else in Texas's or CLC's submissions. Its origin and meaning are a mystery. To the extent this refers in part or whole to the hotel rooms discussed above, those matters are addressed above.

31.     In sum, CLC's original request reflected the considerable exercise of billing judgment. Doc. 1143-4 at 12–14; Doc. 1175-4 at 1. The following table entails CLC's final fees and costs request, including the deletion of the erroneous hotel cost and the addition of hours spent on drafting this reply.[9]

---

[8] This Court should also reject Texas's absurd claim that this "Court should reduce the copying costs by 25% to account for the *possibility* that some of the copies were not necessary for the litigation but were produced for the convenience of the attorneys." Doc. 1196 at 78-79 (emphasis added and citation omitted).

[9] CLC is billing fifty percent of Mr. Hebert and Ms. Lang's time reviewing Texas's complaints and preparing their reply. CLC is billing as well for Mr. Gaber's preparation of the reply brief filed on behalf of all Plaintiffs.

| Attorney | Original Request | Additional Reply Hours | Reply Hours Billed | Total Hours | CLC's Rates | Proposed Award |
|---|---|---|---|---|---|---|
| Hebert | 473.4 | 22.4 | 11.2 | 484.6 | $613 | $297,059.80 |
| Lang | 184.54 | 12.0 | 6.0 | 190.543 | $351 | $66,870.54 |
| Bone | 325 | n/a | | 325 | $307 | $99,775 |
| Simpson | 1022.8 | n/a | | 1022.8 | $307 | $313,999.60 |
| Gaber | n/a | 9.8 | 9.8 | 9.8 | $417 | $4,086.60 |
| **Total** | | | | | | $781,791.54 |

| | |
|---|---|
| **Initial CLC Costs Request** | $114,533.37 |
| **Erroneous Costs Included** | -$1301.51 |
| **Final CLC Costs Request** | $113,231.86 |

## II. BRAZIL AND DUNN RESPONSES[10]

32.     In my original Declaration (ECF 1143-5), I, Chad Dunn, requested payment for 999.2 hours, while writing off 452.4 additional hours in the exercise of billing judgment. In my Supplemental Declaration (ECF 1175-2), I requested payment for 1,360.3 hours. I revised my time records by eliminating some time for tasks I performed but for which I no longer sought compensation, as further exercise of reasonable billing judgment. I also added travel and other time to be consistent with other Plaintiffs' counsel and in compliance with authorities provided by the State that reflected the State's positions on what time was compensable. My original declaration wrote off 452.4 hours to more than compensate for any erroneous billing, but Texas has ignored this and chosen to nitpick the time and billing entries even further. In response, in my Supplemental Declaration, I eliminated the arguably legitimate nits Texas pointed out, but I also included time of the sort Texas conceded was billable. To do anything else would have resulted in an inequitable accounting of my compensable time.

---

[10] Part II was prepared by Mr. Chad Dunn of Brazil and Dunn, and is incorporated herein for the Court's convenience and ease of reference.

33.     State Defendants have proposed major reductions to Brazil & Dunn's fee award, summarized in their Memorandum, pages 89-90, and itemized in their Exhibits D-1 through D-8. I believe the vast majority of these hours are compensable, and to the extent they are not, are overwhelmingly accounted for in the hundreds of compensable hours that I eliminated in the exercise of billing judgment. No commercial or public client would treat counsel's billing as Texas tries to do in this case and the Court should reject its attempt. The remaining portion of my reply response addresses only the most clearly unjustifiable of Defendant's proposed cuts which are listed below.

### a.  TEXAS'S CLAIM OF "CLERICAL" BILLING

34.     Texas argues that 61.5 hours of Brazil & Dunn's time were spent on "clerical" asks. Texas's Exhibit D-2 plainly includes legal work or work necessary to determine if further legal work is necessary. *See* Doc. 1196-25 at 5-21. It is unclear how Defendant Texas decided which entries they considered clerical. While there are entries disputed for Chad Dunn, the same entry is not disputed for Scott Brazil. Nevertheless, to exercise good billing judgment, I will delete 15.3 hours from the time entries in Brazil & Dunn's final accounting to account for this complaint. Of course, well more than that time has been spent by Mr. Dunn on the attorney fee application process since the last billing declarations were submitted.

### b. TEXAS'S CLAIM OF DUPLICATIVE BILLING

35.     Defendant proposed to cut 139.5 hours as "duplicative," by contending that "plaintiffs here have many instances of multiple attorneys on multiple phone calls, attending the same hearings, and working on the same sections of briefs." Doc 1196 at 48. Due to the numerous parties, the Plaintiffs coordinated their efforts to avoid attending the same hearings and depositions, as well as

duplicating, drafting and filing joint briefs whenever possible. In any event, any such duplicative billing have been more than compensated for in the cuts made by Brazil and Dunn elsewhere.

36.     Also, Defendant's entries are "double-cut" because these cuts are also taken in Exhibit D-2.[11]

### c.   TEXAS'S CLAIMS OF EXCESSIVE BILLING

37.     The largest line item in Texas's challenge to Brazil & Dunn's hours is its claim that 266 hours reflect "excessive billing," the majority for time preparing for and attending court-ordered hearings. Doc. 1196 at 51-53. But Texas arrives at this figure arbitrarily and without justification. Texas cites no legal authority and offers no legal standard for gauging "excess." Texas evidently believed the case required substantial legal assistance with 16 attorneys even without having to meet a burden of proof. Texas likewise fails to explain why the particular entries listed in its Exhibit D-4 should be considered excessive.

38.     Defendant specifically claims that 10.3 hours of Chad Dunn's time billed toward attending hearings on October 4, 2013; October 18, 2013; and May 28, 2014 should be reduced to actual time spent at the hearing. To effectively represent clients, it is imperative to prepare for a hearing before attending no matter how long the hearing or meeting lasts. Thus, the time preparing for hearings are justified and should be included in the calculations. Further, Defendant further proposes cutting six entries of Chad Dunn's time totaling 71.2 hours spent during the actual trial period, September 2-10, 2014. As a central member of the Veasey-LULAC team, Dunn was present and participated during the entire trial, including examining and cross-examining witnesses. He delivered part of the closing argument and therefore was required to attend and observe all of the presentation of evidence, whether or not he was participating counsel. Even if

---

[11] April 8, August 8, September 10, September 11 and November 14, 2014.

the cuts during the immediate pre-trial time are warranted (which I dispute), there is no basis for cutting time during the trial.

39.     Texas contends Scott Brazil did not attend hearings on March 5, 2014 and May 1, 2014. The time entries clearly show that attendance was made by telephone. The docket sheet referred to does not indicate which participants attended by phone. Mr. Brazil was one of the Veasey-LULAC attorneys who attended many of the depositions and although he did not argue the issues presented at those hearings, he was required to know what the Court was hearing and how it was disposing of discovery matters so that his deposition conduct could conform to Court expectations. The fact that Mr. Brazil attended by telephone, as an effort to save time and expense, is given no credit by the state.

40.     Further, Defendant has again "double-cut" entries taken in Exhibit D-3 [12]

41.     Accordingly, this Court should reject Texas's excessiveness argument because Texas fares no better at explaining and justifying its other proposed reductions to my hours on grounds of excess.

### d.  TEXAS'S CLAIMS OF NON-COMPENSABLE ENTRIES

42.     Defendant contends that 23.3 of Brazil & Dunn's hours are "non-compensable." Texas's brief claims that should not be required to pay for Plaintiffs' time spent terminating an attorney-client relationship. Doc. 1196 at 60. In order to effectively represent all clients in such a complex case and not waste taxpayer's money by serving incorrect counsel, the 2.2 hours Brazil and Dunn billed for monitoring the entry and withdraw of counsel and parties are justified.

---

[12] April 8, 2014 of Chad Dunn's time is already cut. All of Scott Brazil's time entries claimed to be excessive are already cut as Duplicative.

43.     Texas's brief also claims that no "work done in connection with supporting amicus briefs" should be compensated. Texas Brief at pp. 64-65. The two cases Texas cites supporting their arguments (*Glassroth* and *Bishop*) relate to time spent seeking and brainstorming *amici* in support of a party's position. Here, however, the *amicus* work related to an effort by True The Vote (TTV), a group that *opposed* the Plaintiffs' position and sought to *intervene* in the case as a party. Furthermore, TTV sought to stay the proceedings in this Court and the Fifth Circuit, a position vehemently opposed by the Veasey-LULAC plaintiffs. Texas states that a total of a mere 1.1 hours of Chad Dunn's time spent on TTV's intervention and *amicus* efforts should be rejected. *Id.*, at 62 and 65. A simple examination of my time sheets shows Texas is mistaken. While Texas fails to cite the specifics of my intervention and *amicus* work they claim should be rejected, it should be noted that Mr. Dunn did not bill for the time spent opposing True The Vote's proposed intervention (or *amicus* participation), as well as the time spent on TTV's motion in the Fifth Circuit to stay the trial proceedings. *See* time sheets attached to Dunn's Supplemental Declaration at 9/23/13; 10/8/13; 10/11/13; 10/30/13; 12/11/13; 1/10/14; 1/13/14; 2/20/14; 5/5/14; 5/9/14; and 6/2/14. If the Court determines to engage in Texas's exercise of nitpicking, and reduce any hours, the Court should add these time entries back because they are clearly compensable. Perhaps Texas's attorneys mistakenly reviewed Brazil & Dunn's original time sheets and not the amended ones filed on July 15, 2019. In any event, these were most certainly time entries for which we could have sought compensation. This is just another example of the reasonable and prudent billing judgment by Brazil & Dunn attorneys and it is why allowing the reductions Texas now requests and not also going through and adding back in hours that were excised in billing judgment is inequitable.

44.     Again, Texas mistakenly reviewed Brazil and Dunn's original time sheets when calculating time spent reviewing *pro hac vice* motions and orders. A simple review of the revised timesheets filed on July 15, 2019 reflects a time entry for Chad Dunn that was inadvertently left in the second round of invoice for a billed amount of 0.1 hours, which Mr. Dunn concedes can be cut from Brazil & Dunn's final total. Of course, the amount of attorney time arguing over this .1 time now well exceeds this reduction by many orders of magnitude.

### e.    TEXAS'S CLAIMS OF VAGUE AND BLOCK BILLING

45.     Texas proposes a 20% across-the-board reduction in Brazil & Dunn's attorneys' fees due to alleged vagueness and block-billing in its time entries, Doc. 1196 at 90, but utterly fails to justify it. Moreover, Texas ignores the hundreds of hours already reduced for billing judgment that more than compensate for any remaining erroneous billing. Texas identifies only a handful of Brazil & Dunn's several hundreds of time entries as block billing in the course of contesting those same entries on other grounds. While there are cases supporting a 20% reduction for block or vague billing, no cases support applying this figure to the entire time spent on a case except where block or vague billing infects the entire claim (which is not the case here). Here, Defendants themselves say only a fraction of my time is in this category. Moreover, Defendants' approach amounts to heavy double-cutting because their 20% would apply to time—all already counted in Texas's brief as clerical or excessive.

### f.    TEXAS'S CLAIMS OF "BUSINESS DEVELOPMENT"

46.     Defendants list thirteen time entries totaling 3.7 hours of Brazil & Dunn's time as "business development" (See Exhibit D-8 to Defendants' brief). Those time entries involved reviewing information regarding potential plaintiffs, telephone calls with co-counsel to discuss the merits of adding additional plaintiffs to the lawsuit and calls to these potential plaintiffs. These calls

occurred several months after filing this lawsuit and thus related specifically to advancing this litigation by ensuring that additional individual plaintiffs who had been harmed by the photo ID law (SB 14) could present their testimony to this Court. These calls also reflect work identifying testifying fact witnesses, whether or not they joined the case as parties and the information learned in these efforts was critical in presenting the matter to the Court. Specifically, this work preceded by just a week or so the filing of Veasey-LULAC's amended complaint listing these new named voters as plaintiffs. Furthermore, several of the named Veasey-LULAC plaintiffs testified at trial (Carrier, Gandy, and Veasey). These telephone conversations thus related specifically to establishing the standing of these new plaintiffs and ensuring that they understood the responsibilities of being a plaintiff (*e.g.*, the potential for long protracted litigation, submitting to a deposition, and testifying at trial). These time entries, therefore, in no way involved any sort of "business development".

### g.  TEXAS'S OVERSTAFFING CLAIMS

47.     Texas challenges 41.2 of Brazil & Dunn's requested hours on the basis of overstaffing, but the number in Texas's brief does not match the numbers in their supporting exhibit, and Texas never explains the mismatch. Texas cites its Exhibit F, which has a column of time entries for each attorney. Doc. 1196-40. There is no rhyme or reason Texas calculates these number nor do they explain how it gets from the exhibit's numbers to the brief's numbers. The mismatch between exhibit and brief is enough on its own to reject Texas's overstaffing argument against Brazil & Dunn. Regardless, there was no overstaffing and if any did occur, Texas has already received hundreds of hours of credit for billable time from Brazil & Dunn and is entitled to no more reductions.

21

### h. **TEXAS'S ARITHMETIC ERRORS AND DOUBLE COUNTING MISTAKES**

48.     Serious errors infect the table in which Texas summarizes its various proposed reductions to Brazil & Dunn's attorneys' fees. *See* Doc. 1196 at 89–90. Even if this Court were to accept every one of Texas's contentions, it should reject the figures in that table due to errors of arithmetic and data entry. Fixing those errors yields a markedly different figure, even on Texas's unsupported theories of appropriate attorneys' fees for Brazil & Dunn.

49.     Texas challenges many time entries on more than one basis (e.g., clerical, duplicative, excessive). Its summary table, however, does not correct for double-counting. Instead, Texas aims to drive down Brazil & Dunn's attorneys' fees by including the same entries in two or more rows of its table.[13] Helpfully, Texas's exhibits identify the time entries challenged on multiple grounds, but Texas should have counted each disputed time entry only once in its summary table. Corrected figures to Texas's proposed cuts are reflected in the final total.

### i. **TEXAS'S CLAIMS REGARDING LITIGATION EXPENSES**

50.     With regard to claimed expenses, Texas appears to acknowledge that expenses that can be identified as reasonable should be allowed. Texas's Brief at pp. 68-77. Yet its complaints about Brazil & Dunn expenses is a complete fabrication. For one, Texas proposes that the entire amount in expenses be disallowed "due to insufficient documentation." (Note that the amount of $299,911.64 is being objected, however, the correct expense amount is $299,915.29 *See* 1175-2).

---

[13] For instance, Texas contests a 6.5-hour entry for Chad Dunn on April 8, 2014 as both duplicative and excessive. The entry appears in both Texas's Exhibit D-3 on duplicative entries and its Exhibit D-4 on excessive entries. Doc. 1196-26 at 3; Doc. 1196-27 at 3. That 6.5-hour entry is combined with others to comprise Texas's overall challenge to Dunn's hours on each ground—16.4 hours disputed as duplicative, 158.4 hours disputed as excessive. Doc. 1196-26 at 4; Doc. 1196-27 at 4. Texas then adds those figures for Dunn to Brazil & Dunn's disputed hours in the sections of Texas's brief explaining its duplication and excessiveness arguments. Doc. 1196 at 49, 52. The same combined double-counted figures then appear in Texas summary table without any reduction or adjustment. Doc. 1196 at 90.

*Id.* at 70-71. Texas claims that there is no breakdown of the expenses when, in fact, the expenses *are* listed, one by one, within the time entries in date order. Also, Texas complains of "barely legible and illegible checks" but offers no examples. Texas, as part of the sham meet and confer process, had Plaintiffs go about locating all kinds of backup documentation to support claimed expenses. This time consuming work, for which Plaintiffs should now be compensated since it is clear Texas never intended to pay any such expenses anyway, resulted in delivery to Texas of pages and pages of expense documentation. If Texas cannot read any such documentation, it could point out the specific pages to counsel and they can likely be located. The fact that Texas gives not a single example for Brazil & Dunn of such illegible or un-compensable "vague credit card" documents, is alone, sufficient to reject this "throw it against the wall and see what sticks" argument. The overwhelming number of expenses are accompanied by actual invoices and often cleared checks and/or credit card statements. Dunn and Brazil's under oath testimony that these expenses were paid easily overcomes Texas's unsubstantiated and unsworn general and non-specific attacks on those payments. Texas also contends that Brazil & Dunn is not entitled to postage costs of $514.64, even though a case of this size clearly had outsize postage requirements.

**SUMMARY**

The following table summarizes my response to Texas's proposed reductions:

| Category | Texas's Original Proposal | Texas's Corrected Proposal | Brazil & Dunn's Response |
|---|---|---|---|
| Overstaffing | 41.2 | 0.0 | 0.0 |
| Clerical | 61.5 | 43.0 | 15.3 |
| Duplicative | 139.5 | 123.7 | 0.0 |
| Motion to Withdraw | 2.2 | 2.2 | 2.2 |
| Pro Hac Vice | 0.9 | 0.1 | 0.1 |
| True The Vote | 1.1 | 0.0 | 0.0 |
| Business Development | 3.7 | 3.7 | 0.0 |
| Excessive | 266.0 | 104.2 | 0.0 |
| **Reduction** | **516.1** | **276.9** | **17.6** |

| Total Hour After Reduction | 791.05 | 1030.25 | 1289.55 |
|---|---|---|---|

## PART III. RESPONSE OF NEIL BARON[14]

51.    I previously submitted a Declaration and Supplemental Declaration with accompanying time records and expenses in support of the Veasey-LULAC motion for an award of attorneys' fees and expenses.

52.    I hereby reaffirm the statements made in those Declarations. I have, however, in response to Defendants' Opposition to the Veasey-LULAC Plaintiffs' motion for an award of attorneys' fees and expenses, reviewed the previously submitted time records and expenses. I am submitting this Second Supplemental Declaration in response to the Defendants' arguments regarding my time entries. This declaration is being inserted as Part III into Gerald Hebert's Second Supplemental Declaration so that the Court can see all of the responses of the lawyers represented the Veasey-LULAC Plaintiffs in one place. Other attorneys that represented the Veasey-LULAC Plaintiffs are submitting separate Declarations responding to Defendants' arguments regarding their respective time entries and claimed expenses. These are also being inserted into Gerald Hebert's Second Supplemental Declaration.

53.    I do not believe that Defendants have entered into any meaningful "meet and confer" regarding Plaintiffs' motion for attorneys' fees and expenses, at least not in regard to my submitted fees and expenses. I am not aware of any member of the defense team making any effort to resolve this dispute with me despite the fact that their response to Plaintiffs' motion for fees appears to concede that my hourly rate should be no less than $400.00 per hour and further concede that many

---

[14] Part III was prepared by my co-counsel Mr. Neil Baron and is incorporated herein for the Court's convenience and ease of reference.

of the hours billed by me during the pursuit of the case were compensable. Please consider the following as a supplemental response to Defendants' inaccurate and confusing effort to nitpick my previously furnished billing records.

## DEFENDANTS' CLAIMS THAT PLAINTIFFS' ARE NOT ENTITLED TO RECOVER THEIR FULL HOURLY RATE FOR HOURS BILLED WHILE TRAVELING

54. Defendants claim that "time spent for travel should be…reduced by fifty percent". *See* Defendants' Response Brief at Page 40. I agree and in fact in my supplemental declaration I added travel time of 64.50 hours "at one-half of my hourly rate of $572.00…in compliance with authorities provided by the State in the meet and confer process". *See* Supplemental Declaration of Neil G. Baron at Doc 1175-1 filed 7-15-19. That total of $18,477.00 constitutes almost the entirety of the difference between my initial attorney fee request of $145,631.12 made in my original declaration and my revised attorney fee request of $164,078.20 made in my supplemental declaration.

## DEFENDANTS' CLAIMS THAT THE COURT MUST REJECT PURELY CLERICAL HOURS

55. Texas also claims that the Court must reject fee requests for clerical tasks that do not involve substantive legal work. Their table on page 44 of their Response Brief claims that 14.7 of my total submitted hours were for clerical non-substantive work. A quick review of Defendants' exhibit D-2, which purports to identify non-substantive clerical work performed by me, demonstrates numerous examples of substantive legal work included in Defendants' attempted reduction claim. These examples include preparing and serving multiple deposition notices (March 24th, 2014, March 31st, 2014), correspondence to clients and experts (June 30th, 2014, July 9th, 2014), public record research (June 16th, 2014, July 11th, 2014), discovery supplementation (June 25th, 2014) and numerous reviews of documents setting and/or resetting various litigation events.

I do not agree that the 14.7 hours identified by Texas as non-substantive legal work constitute non-substantive legal work. Reviewing orders, notices, subpoenas and communicating with clients and experts and preparing and serving deposition notices and conducting public information research is all substantive legal work for which I am entitled to receive reasonable compensation. I do not agree that those 14.7 hours should be removed from the fee award made to me.

### DEFENDANTS' CLAIMS THAT PLAINTIFFS' FEE REQUEST SHOULD BE REDUCED FOR UNNECESSARY ATTENDANCE AT TRIAL AND HEARINGS, EXCESSIVE AND POTENTIALLY DUPLICATIVE FEES

56.     Defendants also appear to claim that I am only entitled to recover a total of 5.5 hours for attendance at hearings and trial. See Defendants' Response to Plaintiffs' Motion for Attorney Fees pg 47 which states that the chart "below shows the maximum amount of fees that Plaintiffs' Veasey-Lulac…can obtain in a fee award for attendance at hearings and trial" and also says to "see Exhibit F".

57.     A quick review of Defendants' Exhibit F titled Hearing Dates and Times indicates that Defendants apparently contend that I am not entitled to recover a single minute for attendance at trial between September 2nd and September 11th even though I was present at trial every day and presented one expert witness, two additional live witnesses and two additional witnesses by video-taped deposition during the trial. Furthermore, Defendants completely ignore the fact that I carefully allocated my billing time for trial between time that I charged for and time, that in the exercise of reasonable billing judgment, I did not charge for. My invoice reflects that I charged for a total of 14 hours for attendance at trial including the time spent by me for presentation of witnesses and did not charge for an additional 28 hours for time that I was present in the courtroom and/or courthouse observing and/or assisting but not actively participating. My invoice properly reflects compensable time that I am entitled to recover for attendance at hearings and trial

identified on Defendants' Exhibit F. Defendants calculation that I am only entitled to recover a total of 5.5 hours for attendance at trial and hearings is inaccurate and raises serious questions about Defendants entire analysis of my time records.

58.     For example, I presented one of our experts, George Korbel, for more than 3 hours of direct and cross-examination at trial on September 8th, 2014 with numerous trial exhibits in an extremely contentious setting along with 4 other witnesses during the course of the trial yet Defendants appear to contend and actually state on page 47 of their Response that I should not be entitled to recover for even a single minute of attendance at trial. Clearly, for reasons set forth above, Defendants' claims that my hearing and/or trial attendance fee requests should be reduced to a total of 5.5 hours are completely without merit and should be denied.

## **DUPLICATIVE**

59.     Defendants also make a claim that a total of 4.3 hours submitted by me are duplicative. Other than listing 4.3 hours on Defendants' Exhibit D-3, Defendants do not provide any evidence in support of that claim. Given the questionable nature of many of the claims made by Defendants with regard to my billing statements as set forth both above and below Defendants' request for reduction of an additional 4.3 hours of duplicative billing by me should be completely disregarded and denied.

## **EXCESSIVE**

60.     Defendants also claim that my fee request should be reduced by 10.6 hours for excessive billing. The one example provided by Defendants with regard to my fee request mentioned a hearing on October 18th, 2013, which lasted for apparently 21 minutes. I billed for .5 hours which is a very reasonable amount of time to bill for a 21-minute hearing which would have required some time to either get into the courthouse and the courtroom or to phone in and be available

telephonically. The fact that Defendants sole example of my alleged excessive billing is the one example where I billed for .5 hours for a 21 minute hearing should be indictive of the validity of the rest of their claims against me for excessive billing as set forth in Exhibit D-4 page 001. All of my billing entries on that exhibit are accurate in time and compensable. Defendants should not be entitled to reduce my fee request for any claims of excessive billing and their request should be denied.

61.     Defendants' claims that my fees should be reduced for unnecessary attendance at hearings and trial, excessive and for alleged duplicative fees contain multiple inaccurate statements and significant omissions. Defendants ignore my actual attendance at trial even on days when I presented live expert witnesses, live fact witnesses and witnesses by video deposition. Defendants fail to notify the Court in their Response that I exhibited billing judgment by voluntarily agreeing not to charge for 28 hours of time spent in attendance at trial while only billing for 14 hours of attendance at trial. Defendants' claims that I also submitted hours that were excessive or duplicative are also without merit as their single complaint that I billed .5 hours for attendance at a 21-minute hearing should amply demonstrate. Defendants' contention that my fee award should be reduced by approximately 23.4 hours for unnecessary attendance at hearings and trial (Defendants' Exhibit F), excessive billing (Defendants' Exhibit D-4) and potentially duplicative billing (Defendants' Exhibit D-3) is demonstrably false and without merit and should be denied.

## VAGUE AND BLOCK BILLING CLAIMS

62.     Texas also proposes a drastic 20% across-the-board reduction in my attorneys' fees due to alleged vagueness and block-billing in its time entries, Doc. 1196 at 91, but utterly fails to justify it. Texas has not and cannot identify a single time entry from me that has been block-billed. I do not block bill and there is not a single time entry presented by me that is block billed therefore

clearly the Court should not reduce my entire fee award by 20% for block billing that I did not submit.

## NONCOMPENSABLE

63.     Texas also claims that I performed a total of 4.85 hours of non-compensable work. See Table D-5, pg 2. The time entries for 9-25 and 9-26 2013 and 1-3-2014 relating to True the Vote's intervention were already not charged by me in the exercise of reasonable billing judgment. The remainder of the time on Defendant's Exhibit D-5 regarding non-compensable hours for me were related to scheduling a deposition of Peggy Draper, working with other parties on the interim remedy and is clearly compensable. Therefore the claim that I performed a total of 4.85 hours of non-compensable work is incorrect unless Texas can somehow substantiate a position that the process of negotiating and creating the interim remedy necessary to correct the numerous findings by the Court during the trial in time for the 2016 Presidential election was non-compensable.

64.     I do agree that Texas got one claim correct in their analysis of my billing invoices. The 1.2 hours of time entries between 9-8 and 9-18 2014 identified by Texas as vague on Exhibit D-7 are vague and I agree that my fee request should be reduced by 1.2 hours or $480.00 if the Court elects to utilize Defendants' proposed hourly rate and $686.40 if the Court honors my request to be compensated at $572.00 an hour.

## DEFENDANTS' CLAIMS REGARDING LITIGATION EXPENSES

65.     With regard to claimed expenses, Texas acknowledges that expenses that can be identified as reasonable should be allowed. Texas's Brief at pp. 68-77. With regard to expenses that I have requested reimbursement for it does not appear as though Texas contests any of the expenses of $2,115.83 itemized on my billing invoice. Almost all of those expenses are for travel and hotel and are supported by normal business receipts. There appears to be one issue with a charge of $939.82

29

for the deposition transcripts of Ruby Barber and Jimmy Denton. *See* Defendants' Response page 79. The deposition transcripts of Barber and Denton were necessary as part of Plaintiffs' evidentiary presentation at trial. I do agree that I am not entitled to receive reimbursement for those charges because I did not pay for those transcripts which is why I did not include them on my attorney fee and expense invoice.

66.     I also only charged approximately $37.00 for facsimiles and a few miscellaneous dollars for postage. The remainder of my expense reimbursement request was for legitimate travel and hotel costs associated with attendance at hearings and trial and the numerous depositions, most of which, were noticed by Defendants. All of my claimed expenses are legitimate, reasonable and supported by proper invoices therefore Defendants should be ordered to reimburse me for expenses in the amount of $2,115.83.

### TEXAS'S ARITHMETIC ERRORS AND DOUBLE COUNTING MISTAKES

67.     I agree with previous observations made by my co-counsel hat there are numerous serious mathematical errors made by Defendants in the tables and other calculations submitted by Texas in their Response. In my opinion, the most blatant of these errors is in the section regarding block billing. In the first place, I did not do any block billing therefore I should not be penalized for block billing. Secondly, Defendants make multiple challenges to different time entries without adjusting for double and triple counting. Basically, Defendants contend the Court should reduce my fee award by 20% in total to account for 1.2 hours of vague billing entries and zero hours of block billed entries and contend that the Court should also remove numerous other hours for non-compensable, clerical, excessive and duplicative hours and refuse to compensate me for attendance at trials and hearings where my attendance and participation were accurately documented. The

result would be a double and possibly triple benefit for Defendants. This Court should clearly reject Defendants contentions.

## CONCLUSION OF NEIL BARON

68.    Defendants' summary in support of their confusing request for a reduction to my attorney fee request is contained on page 93 of their Response to Plaintiffs' Motion for Attorney's fees. It is extremely confusing but it looks like the Defendants are contending that all hours billed by me for attendance at hearings and trials except for 5.5 hours should be deleted, reducing my fee award by either $33,830.30 or $24,395.00 depending on the hourly rate utilized. Defendants further seek to reduce my fee award by an additional 14.9 hours for duplicative and excessive billing and by an additional 20% for vague and block billing. As discussed above my billing for attendance at hearings and trial is accurate, justified and demonstrates clear billing judgment. As further discussed above there is not a single example of a block bill on my entire invoice. Other than the 1.2 hour reduction for vague billing referenced on Defendants' Exhibit D-7 the remainder of my revised fee request in the amount of $164,912.20 is accurate as set forth in the following table. My request for an award of $164,912.20 is based on total justifiable billable hours of 253.4 at $572.00 per hour and an additional 64.50 hours of travel at one-half of the hourly rate or $286.00 per hour. It should be granted in full particularly in light of the flawed and demonstrably false arguments made by Defendants.

| Category | Texas's Corrected Proposal to Cut Hours | NGB's Response |
|---|---|---|
| Clerical | 14.7 | 0.00 |
| Duplicative | 4.3 | 0.00 |
| Unnecessary Attendance at Trial/Hearings | 5.5 | 0.00 |

| | | |
|---|---|---|
| Vague Billing | 1.2 | 1.2 |
| Block Billing | 33.09 | 0.00 |
| Non-Compensable | 4.85 | 0.00 |
| Excessive | 10.6 | 0.00 |
| **Reduction** | **74.24** | **1.2** |
| **Total Hours after Reduction[15]** | **179.16** | **253.4** |
| **Total Hours at one-half hourly rate per hour for Travel** | **64.50** | **64.50** |
| **Total Award from Texas Based on Proposed Rate of $400.00 per hour** | **$84,564.00** | **$114,260.00** |
| **Total Award from Texas Based on Proposed Rate of $572.00 per hour** | **$120,926.52** | **$163,391.80** |

Accepting Neil G. Baron's view would yield the following attorney-specific hour totals, fees and expenses:

| Attorney Baron | Supplemental Request | Revised Request | NG's Rates | Proposed Award |
|---|---|---|---|---|
| Fees | $164,078.20 | $163,391.80 | $572.00 hr | $163,391.80 |
| Expenses | $2,115.83 | $2,115.83 | | $2,115.83 |
| **Total** | **$166,194.03** | **$165,507.63** | | **$165,507.63** |

## PART IV.  RESPONSE OF ARMAND DERFNER[16]

69.     In my original Declaration, I requested payment for 1204.1 hours, as follows:

| Hrs. spent | Written off | Hrs claimed | Rate | Fee requested |
|---|---|---|---|---|
| 1483.1 | 279.0 | 1204.1 | $613 | $738,113 |

---

[16] Part IV was prepared by my co-counsel Mr. Armand Derfner and is incorporated herein for the Court's convenience and ease of reference.

70.     Defendants have proposed major reductions, Def. Memorandum, pages 91-92, and Def. Exhibits D-1 through D-8. This Reply Declaration challenges only the most clearly unjustifiable of Defendants' proposed cuts, in Defendants' categories of Duplicative, Excessive, Lost Claims, and Block/Vague Billing.

### A. TEXAS'S CLAIM OF DUPLICATIVE TIME, DEF. EX. D-3

71.     Defendants propose to cut 1005 hours, but I believe the maximum number of hours cut should be only 37.5. There are three problems with Defendants' proposed cuts. Some of Defendants' entries cut more time than I claimed.,[17] i.e., they cut more than 8.0 hours on a single day, even though my original Declaration shows that I had already cut all time over 8.0 hours on any single day. Also, two of Defendants' entries are "double-cut" because these cuts are also taken in other exhibits.[18] Finally, Defendants propose to cut time I spent preparing the post-trial Findings of Fact and Conclusions of Law,[19] even though I was one of the main draftsmen of those critical documents.

### B. TEXAS'S CLAIM OF EXCESSIVE BILLING, DEF. EX. D-4

72.     Defendants propose to cut 88.0. hours, but I believe the maximum number of hours cut should be 37.0. Defendants propose cuts include seven days during the actual two-week trial period, four days of actual trial time,[20] and three days of preparation.[21] As a central member of the Veasey team, I was present and participated during the entire trial, including examining and cross-examining witnesses. My presence at trial was also important for later work on drafting post-trial Findings and Conclusions and helping prepare the closing argument.

---

[17] July 18, 20 and 21, 2014, and September 15, 16, 17 and 18, 2014. Total for these cuts = 13.0
[18] July 28 and August 5, 2014. Total for these cuts = 10.0
[19] September 15-19, 2014. Total for these cuts = 40.0
[20] September 5, 8, 9 and 10, 2014. Total for these cuts = 32.0
[21] September 1, 6 and 7, 2014. Total these cuts = 19.0

### C. **TEXAS'S CLAIM OF NON-COMPENSABLE (LOST CLAIMS), DEF. EX. D-5**

73.     Defendants propose to cut 81.0 hours, but I believe the maximum number of hours cut should be 0.0. Defendants propose to cut all hours spent on the poll tax and constitutional ("Crawford") theories, but these were simply alternative grounds for pursuing the same claim for relief. The cases make it clear that work on such alternate theories is compensable, as detailed in Private Plaintiffs' Consolidated Reply Brief being filed today.

### D. **TEXAS'S CLAIM OF BLOCK BILLING & VAGUE BILLING, DEF. EX. D-6 & D-7**

73.     Defendants propose to cut 240.8[22] hours, but I believe the maximum "valid" cut should be only 12.9 hours. Defendants apply a 20% reduction (equaling 240.8 hours), but that percentage is applied to all of my time even though Defendants' Ex. D-6 and D-7 identify Block or Vague Billing on only 19 of my 400 time entries, representing a total of 384.5 hours (about one-fourth of all my claimed hours). While there are cases supporting a 20% reduction for block or vague billing, no cases support applying this figure to the entire time spent on a case except where block or vague billing infects the entire claim (which is not the case here). Applying that 20% cut to the 384.5 hours of my time identified by Defendants as Block or Vague Billing would cut 76.9 hours. However, in my original Declaration, I already cut 64.0 hours of this time by taking 20% off the 320 hours spent during the August 2013 – April 2014 time period.[23]

74.     The appropriate reduction for the above categories is 87.0 hours. Defendants also propose to cut 6.0 hours in other categories that I do not challenge, which produces a total of 93.0 hours to

---

[22] For this category, Defendants' Memorandum, at page 92, states the proposed cut for Block and Vague Billing as a percentage of my overall time claim (20%), which amounts to 240.8 hours.
[23] See Exhibits A and A-2 attached to my original Declaration.

be cut from my original claim of 1204.1 hours. The resulting amended claim that I am seeking is shown below:

| Hrs. spent | Written off | Hrs claimed | Rate | Fee requested |
|---|---|---|---|---|
| 1483.1 | 279.0 + 93.0 | 1110.7 | $613 | $680,859 |

75.    I therefore request a fee of $680,859.

76.    With regard to expenses, my original Declaration requested approximately $13,000 for expenses I actually and personally incurred in this case. However, the passage of time – five or six years for most of the expenses – makes it impossible for me to present sufficiently detailed documentation. Therefore, I am withdrawing my request for reimbursement of these expenses.

\* \* \*

The hours and expenses set forth in this Declaration are the final ones being submitted by the Veasey-LULAC legal team and are the ones that this Court should review in ruling on the pending Veasey-LULAC motion for an award of attorneys' fees and expenses.

I declare under penalty of perjury that the foregoing to be true and correct.

Dated: February 7, 2020

/s/ J. Gerald Hebert
J. Gerald Hebert

IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, *ET AL.,* | |
| PLAINTIFFS, | |
| V. | CIVIL ACTION NO. 2:13-CV-193 (NGR (CONSOLIDATED ACTION) |
| GREG ABBOTT, *ET AL.,* | |
| DEFENDANTS. | |

<u>REPLY DECLARATION OF CHAD W. DUNN</u>

Pursuant to 28 U.S.C. §1746, I, Chad W. Dunn, declare that I have provided information for my Reply in support of Plaintiffs' attorneys' fee petition to J. Gerald Hebert, for his incorporation in an omnibus Reply Declaration on behalf of the Veasey team of attorneys. I have examined those portions of Mr. Hebert's omnibus Declaration that report facts relating to my work in this case, and that the facts reported there as well as the facts stated in my second supplemental declaration incorporated into that omnibus declaration are true and correct to the best of my knowledge, information and belief. I so declare under penalty of perjury.

Date: February 6, 2020

_____

CHAD W. DUNN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARC VEASEY, *ET AL.*,

PLAINTIFFS,

V.

GREG ABBOTT, *ET AL.*,

DEFENDANTS.

CIVIL ACTION NO. 2:13-CV-193 (NGR)
(CONSOLIDATED ACTION)

REPLY DECLARATION OF NEIL G. BARON

Pursuant to 28 U.S.C. §1746, I, Neil G. Baron, declare that I have provided information for my Reply in support of Plaintiffs' attorneys' fee petition to J. Gerald Hebert, for his incorporation in an omnibus Reply Declaration on behalf of the Veasey team of attorneys. I have examined those portions of Mr. Hebert's omnibus Declaration that report facts relating to my work in this case, and that the facts reported there as well as the facts stated in my second supplemental declaration incorporated into that omnibus declaration are true and correct to the best of my knowledge, information and belief. I so declare under penalty of perjury.

Date: February 6, 2020

NEIL G. BARON

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Marc Veasey, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:13-cv-193 |
| | ) | |
| Greg Abbott, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### Reply Declaration of Armand Derfner

Pursuant to 28 U.S.C. 1746, I declare that I have provided information for my Reply in support of Plaintiffs' attorneys' fee petition to J. Gerald Hebert, for his incorporation in an omnibus Reply Declaration on behalf of the Veasey team of attorneys, that I have examined those portions of Mr. Hebert's omnibus Declaration that report facts relating to my work in this case, and that the facts reported there are true and correct to the best of my knowledge, information and belief.  I so declare under penalty of perjury.


Date: _Feb. 3, 2020_          Armand Derfner: _[signature]_

1