Case 2:13-cv-00193 Document 1232 Filed on 10/19/21 in TXSD Page 1 of 7

United States Courts
Southern District of Texas
FILED
OCT 19 2021
Nathan Ochsner, Clerk of Court

NATHAN OCHSNER, CLERK
US DIST COURT TXSD
BX 61010
HOUSTON TX 77208

OCT 18 21

I GOT DOC #1220 SEP 30 BRIEFING ORDER ON OCT 8.

RE: VEASEY-ABBOTT 2:13 CV 193 TXSD CORPUS CHRISTI

508 DOCKET ENTRIES ARE FAR MO. I SUGGEST [LIMITED VOTING] FOR [TX & GA HOUSE] EACH CASE VOTER GETTING ONE VOTE FOR ONE CANDIDATE IN HIS [4-TX OR 3-GA HOUSE SEAT SENATE DISTRICT.] - MAKING A [168 (NOT 180) SEAT GA HOUSE.] [HAVE PRIMARY WINNERS CONTEND]

FOR IL I SUGGEST FOR HIS 2-IL HOUSE ICAS SEP DIST — KEEPING A 118 SEAT HOUSE.

FOR KY IN HIS 3-KY HOUSE SEAT SEN DIST — MAKING A 114 SEAT KY HOUSE.

[I WILL BE 84 YEARS OLD] OCT 25 AND MAY NOT KNOW WHETHER MY SUGGESTION [WILL GAIN TRACTION] BEFORE I DIE, BUT EXPECT TO PUSH MY SUGGESTION WHILE I CAN.

[I HAVE A GEORGIA HOUSE ROSTER] WITH ATLANTA ADDRESS & PHONE NUMBERS AND COMMITTEE ASSIGNMENTS.

I CAN NOT PROVIDE TIMESHEETS AND COSTS

MY TYPEWRITER BROKE. I EXPECT TO GET A NEW TYPEWRITER SOON.

INTERVENOR FOR LIMITED VOTING
Robert M Allensworth BR'818
BMREE 27 N IC 37
IRA IC 62876 2419
WARDEN 618 437 5300 FAX 5827

PLEASE MAIL ME A DATE-STAMPED COPY. S A L E ENCLOSED.

ALSO RECENT DOCKET SHEET ENTRIES POSSIBLY RELATED TO LIMITED VOTING OR SIZE OF TEXAS HOUSE OR SENATE.

MORE ON BACK

Jennifer Ochoana, US District Clerk TXSD   Oct 13 21        Page 1 of 2
Bx 61010  Houston TX 77208

My typewriter broke.  I get get a new one soon.

I have a current Georgia photo Drivers with current address

Wilkinson   Speaker David Ralson Dist 7 Block NPGG
            332 Cap Atlanta GA 30334   Tel 656 5020

            Beth Camp - Dist 131  CMRR Mike Gipson
            508-C CLOB  18 CHSA         Tel 656 0298

            David Jenkins Dist 122 Coweta Meriwether Trous
            504-P CLOB                    Tel 656 4188

            Vance Smith Dist 133 Harris Muscogee Trous
            601-CLOB                      Tel 656 0254

            Debbie Buckner Dist 137 Harris Talbot
            464-A CLOB                    Tel 656 0116

            Sammy Beasley Dist 139  Butler Dooly Macon Peach
            607-D CLOB   Tel           Tel Stephen Taylor
                                       Tel 656 0202


    Talbotton New Car & Meriwether Vehicles
    3057 Roosevelt Hwy (near warm springs)
    Manchester GA 31816  6 Tog

Robert Allensworth
IDOC# B14522

7/31/2019
Page 25 of 36

*[Handwritten note at top: Nathan Ochsner, Clerk US Dist CT SDTX Corpus / V Casey-Albert 2:13cv193 Clerus / Sir Docket Copies are faxing No. You may place these pages 25-28 of my / 7/31/19 evaluation in the record for this case. / Robt M Allensworth B14522 BMRCC 251 N Rts Ins Rt 62846]*

not presented any evidence to show his recovery; instead he rehashed issues stemming from older incidents." The judge ruled that he "had not proven his recovery and the court will not hold a new trial on old claims." At that time, he stated, "I want to take it to a jury, and if you don't, then I think you are unduly protective of liars and tricksters." Regarding his previous recovery evaluations and hearings, Mr. Allensworth commented, "I went to court several times. Carich and Stanislaus. I demanded a jury and they said [I was] still dangerous. I wasn't really prepared. But now I read about Allison vs. Snyder case where the court says that if [a] pre-trial detainee refuses to admit to his offenses he's not entitled to treatment."

Mr. Allensworth appears to have few goals and unspecific plans. When asked what he generally plans to do upon his release, he responded, "Oh, uh, um, now I'm pretty far along in the Corpus Christie Texas voting rights case, [so] I want to telephone people about my ideas on that. So that is something I might be useful with." He indicated he has no specific residence plans as he stated, "Oh, I've got money, so I can go anywhere. I can go to hotels, find out where I might be useful." He indicated he has no specific employment plans as he stated, "I've got an inheritance." He said that if he was conditionally released and mandated to attend sex offender treatment, "I'd say that, uh, I'd still say that the kids lied." Mr. Allensworth denied foreseeing any obstacles upon his release as he explained, "Not that I know of. I've got a trust fund, so I've got money." When asked where he sees himself in five years, he responded, "Well, I, uh, not sure what I'll be doing. I'm interested in, uh, voting issues, so I might phone people about my ideas [and] go from there." As mentioned previously, Mr. Allensworth has no support system in the community.

**DIAGNOSTIC CONCLUSIONS:**

Based upon the clinical interview and a review of his criminal record, IDOC file, treatment file, and various other available records, it is my opinion to a reasonable degree of psychological certainty that Mr. Allensworth's diagnoses are:

**Other Specified Paraphilic Disorder, Mixed Features of Hebephilia and Pedophilia, Sexually Attracted to Males**

**Paranoid Personality Disorder**

**Schizoid Personality Disorder**

According to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), the category of Other Specified Paraphilic Disorder applies to presentations in which symptoms characteristic of a paraphilic disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the disorders in the paraphilic disorders class. The DSM-5 defines a paraphilia as "any intense and persistent sexual interest other than sexual interest in genital stimulation or prepatory fondling with phenotypically normal, physically mature, consenting human partners" and defines a paraphilic disorder as "a paraphilia that is currently causing distress or impairment to the individual or a paraphilia whose satisfaction has entailed personal harm, or risk of harm, to others" (American

Psychiatric Association, p. 685). The DSM-5 indicates that a "paraphilia is a necessary but not a sufficient condition for having a paraphilic disorder" (American Psychiatric Association, p. 686).

The evidence suggests Mr. Allensworth has an enduring sexual interest in and a desire for sexual encounters with pubescent and prepubescent males and seeks satisfaction of his paraphilic interest in a manner that entails personal harm, or risk of harm, to others and causes distress or impairment to him. Mr. Allensworth has a criminal history of sexual abuse toward and stalking of prepubescent and pubescent males. Typically, puberty in males usually occurs between age 9 to 14 and by definition they are not "physically mature." Mr. Allensworth committed a sexual offense against a prepubescent male, stalked and followed prepubescent and adolescent males, previously reported sexual acting out with adolescent males, previously reported he looked at and touched the penises of adolescent and younger boys to which he was aroused, previously alluded to having various male victims age 13 to 18, previously admitted to mutual masturbation with younger boys, previously stated he "just like[s] teenagers," previously acknowledged he fantasized mostly about boys, continues to collect and view photographs of children to whom he admits attraction, and ambiguously acknowledges having fantasies about children. His behavior caused him distress or impairment in important areas of functioning (i.e., he has been arrested for, charged with, convicted of, and committed for engaging in sexual behavior with a prepubescent male) and entails personal harm, or risk of harm, to others (his victims experienced sexual harm and psychological harm).

In brief summary, a diagnosis of <u>Paranoid Personality Disorder</u> listed in the DSM-5 is defined as a pervasive mistrust and suspiciousness of others such that their motives are interpreted as malevolent, beginning by early adulthood and present in a variety of contexts, as indicated by four or more of the following symptoms: suspects without sufficient basis that others are exploiting, harming, or deceiving him/her; is preoccupied with unjustified doubts about the loyalty or trustworthiness of friends or associates; is reluctant to confide in others because of unwarranted fear that the information will be used maliciously against him/her; reads hidden demeaning or threatening meanings into benign remarks or events; perceives attacks on his/her character or reputation that are not apparent to others and is quick to react angrily or to counterattack; and has recurrent suspicions without justification regarding fidelity of spouse or sexual partner. During the current interview, Mr. Allensworth reported he has believed that others were out to harm/hurt him or get him and were following him, revealed "I think a lot of people are untrustworthy," and remarked "that's fishy" and "that sounds fishy to me" when he was informed a court-ordered evaluation was dated two months after he thought and when he was informed this evaluator would not communicate with him via telephone or letter. In the 11/3/2004 Psychiatrist Evaluation, he discussed his belief that "some police informants lied to the police about him for attention and profit for several years" because "the police were against him." In a Mental Health Diagnostic and Treatment Note dated 10/16/2011, he disclosed his belief that staff unreasonably attack and harass him. In some of his letters he has written, he refers to the individuals he writes to as "small-minded, liars, tricksters, demonizers, alienists, fellow travelers, bureaucrats, lap dogs, flunkies, stooges." He has consistently provided very vague details and indirect information about his sexual and sex offending history while being described as reluctant to talk, suspicious, paranoid, guarded, and defensive. Previous evaluations/reports indicate Mr. Allensworth has been diagnosed with Paranoid Personality Disorder in the past.

Robert Allensworth
IDOC# B14522
7/31/2019
Page 27 of 36

*[handwritten notes and signature]*

In brief summary, a diagnosis of <u>Schizoid Personality Disorder</u> listed in the DSM-5 is defined as a pervasive pattern of detachment from social relationships and a restricted range of expression of emotions in interpersonal settings, beginning by early adulthood and present in a variety of contexts, as indicated by four or more of the following symptoms: neither desires nor enjoys close relationships, including being part of a family; almost always chooses solitary activities; has little, if any, interest in having sexual experiences with another person; takes pleasure in few, if any, activities; lacks close friends or confidants other than first-degree relatives; appears indifferent to the praise or criticism of others; shows emotional coldness, detachment, or flattened affectivity. During the current interview, Mr. Allensworth acknowledged he is <u>not interested in developing friendships</u>, denied he obtains enjoyment from spending time with others, reported he has no close friends, indicated he is not concerned about whether he is liked or cared about and is not concerned about what others are concerned about, identified as asexual, and exhibited a somewhat blunted affect. He has consistently been described as alienated, isolated, distant, and withdrawn as well as unable to form relationships. He has also been described as displaying a blunted or flat affect as well as inappropriate smiling. Previous evaluations/reports indicate Mr. Allensworth has been diagnosed with Schizoid Personality Disorder in the past.

**RISK ASSESSMENT:**

According to Hanson (1998), there are three general approaches to risk assessment: structured clinical judgment, pure actuarial prediction, and adjusted actuarial assessment. Clinical judgment uses untested hypotheses about which factors predict risk and which combination of risk factors have been determined to best assess risk. The shortcoming of clinical judgment is that some factors that were initially presumably related to risk were later confirmed to have no relationship to risk in research studies and its accuracy is typically only slightly above chance levels. Pure actuarial prediction specifies the items to be considered and provides explicit rules for combining these risk factors into an overall estimation of risk. The shortcoming of pure actuarial prediction is that no actuarial instrument assesses all known or potential risk factors (e.g., stated intentions to reoffend and debilitating medical condition), which should not be excluded entirely from risk assessment. Adjusted actuarial assessment begins with scores derived from actuarial instruments, which may then be adjusted based upon consideration of additional potentially important factors and characteristics.

Social scientific studies have determined the most accurate method to predict the likelihood of sexual offense recidivism among known sex offenders is to use actuarial analysis as opposed to relying solely on the predictions of mental health professionals (e.g., unguided clinical judgment). Clinical research has demonstrated predictive judgments based on actuarial instruments are consistently more accurate than predictive judgments based on clinical knowledge alone. This conclusion does not mean one should completely ignore clinical knowledge and judgment. Rather it suggests the importance of utilizing actuarial analysis to establish a baseline level of risk and then proceed to integrate essential and relevant dynamic risk factors, protective factors, and case specific factors identified in research into an overall risk analysis. This commonly relied upon and best practice method is an adjusted actuarial approach.

Robert Allensworth
IDOC# B14522
7/31/2019
Page 28 of 36

An adjusted actuarial approach was utilized to determine Mr. Allensworth's level of risk. The approach relied upon the results of an actuarial risk assessment instrument in combination with consideration of dynamic risk factors and protective factors.

### STATIC-99R:

Mr. Allensworth was scored on the Static-99R, which is an empirically derived actuarial risk assessment instrument designed to predict recidivism in adult males charged with or convicted of sexual offenses. It consists of 10 items and produces estimates of future risk based upon the number of risk factors present in any one individual. These factors are static (fixed or unchangeable) in nature and are based on commonly available demographic information, criminal history, and victim characteristics. Total scores on the Static-99R can range from minus three (-3) to twelve (12). The recidivism estimates are group estimates based upon re-convictions and do not directly correspond to the recidivism risk of an individual offender. Rather, the offender's risk may be higher or lower than the probabilities estimated in the Static-99R depending on other risk factors not measured by this instrument. Given that the Static-99R was found to fully incorporate the relationship between age at release and sexual recidivism, whereas the original Static-99 scale did not (Helmus, Thornton, Hanson, & Babchishin, 2012), the developers of the Static-99 recommend that the revised version of the scale (Static-99R) replace the Static-99 in all contexts where it is used. The Static-99R has shown moderate accuracy in ranking offenders according to their relative risk for sexual recidivism. Furthermore, its accuracy in assessing relative risk has been consistent across a wide variety of samples, countries, and unique settings (Helmus, 2009). The Static-99R is the most extensively researched and commonly utilized measure of its type in the world.

Mr. Allensworth most closely resembles someone from the High-Risk/High-Needs sample. The Preselected for High-Risk/High-Needs Sample "would include a small minority of offenders selected from routine correctional populations on the basis of risk and need factors external to Static-99R" (Phenix, Helmus, & Hanson, 2012, p. 36). Offenders in this group were referred for services at forensic psychiatric facilities, such as offenders referred as Mentally Disordered Sex Offenders, Sexually Violent Predators/Sexually Dangerous Persons, Not Guilty by Reason of Insanity, or for treatment of a mental disorder (sexual or otherwise). This sample would also include offenders referred to intensive treatment programs reserved for the highest risk offenders and offenders identified as high risk through a quasi-judicial or administrative process examining a range of risk relevant characteristics such as sentence extensions for dangerousness.

Mr. Allensworth scored a four (4) on the Static-99R, which places him in the **Above Average** risk category for being charged with or convicted of another sexual offense. Mr. Allensworth's score places him in the top 79.6 percent of routine samples of adult sexual offenders, which means that out of 100 sexual offenders, 74.3 would have a lower score and 15 would have a higher score. The sexual recidivism rate of sex offenders with the same score as Mr. Allensworth is 1.94 times higher than the rate of typical sex offenders with median scores in the middle of the risk distribution. The Static-99R does not measure all relevant risk factors and Mr. Allensworth's recidivism risk may be higher or lower than that indicated by the Static-99R based on factors not included in this risk tool, which will be discussed in greater detail in the following sections.

R ALLENWORTH B17527 1816
BNRCE IN N IC 35
INA IC 62846 2919

IDOC OFFENDER MAIL
SAINT LOUIS MO 6
14 OCT 2021 PM 9



NATHAN OCHSNER, CLERK
US DIST CT TXSD
BX 61010
HOUSTON TX 77208

United States Courts
Southern District of Texas
FILED
OCT 19 2021
Nathan Ochsner, Clerk of Court

7720861010